# Political Constitution of the United Mexican States



Mexican Supreme Court

2010

First edition: August 2005
Second edition: November 2008
Third edition: March 2010
Fourth edition: August 2010
All rights reserved. © Mexican Supreme Court
Av. José María Pino Suárez, No. 2
C.P. 06065, México, D.F.

*Printed in Mexico*

Translators: Dr. José Antonio Caballero Juárez and Lic. Laura Martín del Campo Steta.

Translation updated by: Lic. Sergio Alonso Rodríguez Narváez and Estefanía Vela

The update, edition, and design of this publication was made by the General Management of the Coordination on Compilation and Systematization of Theses of the Mexican Supreme Court.

# Political Constitution of the United Mexican States

Mexican Supreme Court

# Mexican Supreme Court

**Justice Guillermo I. Ortiz Mayagoitia**
President

## First Chamber

**Justice José de Jesús Gudiño Pelayo**
President

**Justice José Ramón Cossío Díaz**
**Justice Olga María Sánchez Cordero de García Villegas**
**Justice Juan N. Silva Meza**
**Justice Arturo Zaldívar Lelo de Larrea**

## Second Chamber

**Justice Sergio Salvador Aguirre Anguiano**
President

**Justice Luis María Aguilar Morales**
**Justice José Fernando Franco González Salas**
**Justice Margarita Beatriz Luna Ramos**
**Justice Sergio A. Valls Hernández**

## Publications, Social Communication, Cultural Diffusion and Institutional Relations Committee

**Justice Guillermo I. Ortiz Mayagoitia**
**Justice Sergio A. Valls Hernández**
**Justice Arturo Zaldívar Lelo de Larrea**

### Editorial Committee

**Mtro. Alfonso Oñate Laborde**
Technical Legal Secretary

**Mtra. Cielito Bolívar Galindo**
General Director of the Theses Compilation
and Systematization Bureau

**Lic. Gustavo Addad Santiago**
General Director of Diffusion

**Judge Juan José Franco Luna**
General Director of the Houses of
Juridical Culture and Historical Studies

**Dr. Salvador Cárdenas Gutiérrez**
Director of Historical Research

# CONTENT

FOREWORD ................................. IX

## TITLE ONE
### CHAPTER ONE
Fundamental rights ........................... 1

### CHAPTER TWO
Mexican nationals ............................ 95

### CHAPTER THREE
Aliens ....................................... 99

### CHAPTER FOUR
Mexican citizens ........................... 101

## TITLE TWO
### CHAPTER ONE
National sovereignty and form of
government ................................. 107

CHAPTER TWO
Parts composing the Federation
and national land territory ............................. 127

TITLE THREE
CHAPTER ONE
The division of Powers ..................................... 131

CHAPTER TWO
The Legislative Branch ................................... 133

   Section First
   Election and installation of Congress ......... 133

   Section Second
   The initiation and enactment of laws ......... 150

   Section Third
   The Powers of Congress ............................... 155

   Section Fourth
   The Permanent Commission ........................ 181

   Section Fifth
   The Federation's Superior
   Supervising Entity ........................................ 184

CHAPTER THREE
The Federal Executive Branch ......................... 193

CHAPTER FOUR
The Judicial Branch ........................................ 205

## TITLE FOUR
The liabilities of public officers ......................... 257

## TITLE FIVE
The States of the Federation and
the Federal District .......................................... 269

## TITLE SIX
Labor and social welfare ................................. 321

## TITLE SEVEN
General provisions ......................................... 347

## TITLE EIGHT
Amendments to the Constitution ..................... 359

## TITLE NINE
The inviolability of the Constitution ................ 361

## TRANSITORY ARTICLES ................... 363

THE FOLLOWING ARTICLES WERE REFORMED ON JUNE 18TH 2008, ACCORDING TO A DECREE OF REFORMS PUBLISHED IN THE OFFICIAL GAZETTE OF THE FEDERATION; HOWEVER, TO SOME EXTENT THEY ARE STILL IN FORCE, SINCE THE NEW CRIMINAL SYSTEM SHALL BE COMPLETELY IN VIGOR WITHIN A TERM OF EIGHT YEARS FOLLOWING THE DATE OF SAID DECREE. THUS

VIII   Political Constitution of the United Mexican States

THEY ARE PRESENTED HERE AS THEY WERE BEFORE THEIR MODIFICATIONS, ALONG WITH THE TRANSITORY ARTICLES OF THE REFORM. ..................................................

DECREE OF REFORMS AND ADITIONS OF SEVERAL ARTICLES OF THE POLITICAL CONSTITUTION OF THE UNITED MEXICAN STATES, PUBLISHED ON THE OFFICIAL GAZETTE OF THE FEDERATION ON JUNE 18TH 2008. ........................................................ 441

BIBLIOGRAPHY ............................. 447

# FOREWORD

Due to the increasing interest shown by foreign institutions and scholars on Mexican law, the Supreme Court of Justice of the Nation decided to make an English translation of the Political Constitution of the United Mexican States. This fourth edition, revised and updated as for July 2010, will allow English speaking readers to better know the Fundamental and Social Rights recognized by our Constitution, as well as the structure of the Branches of Government. This way the reader will be able to know and understand the basic characteristics of the Mexican legal system.

As its previous edition, this one is aimed at those English speaking scholars interested in the

comparison of legal systems. From its reading, they will acknowledge that the Mexican Constitution has been up to the challenges of the 21st century.

Committee of Publications, Social Communication, Cultural Diffusion and Institutional Relations of the Mexican Supreme Court

Justice Sergio A. Valls Hernández

Justice Arturo Zaldívar Lelo de Larrea

Justice Guillermo I. Ortiz Mayagoitia

# TITLE ONE

## CHAPTER ONE
## Fundamental rights[1]

Article 1. In the United Mexican States, all persons shall enjoy the fundamental rights recognized by this Constitution, which may not be abridged nor suspended except in those cases and under such conditions as herein provided.

Slavery is forbidden in the United Mexican States. Slaves who shall step into Mexican territory shall,

---

[1] The term is used here in the sense of constitutional protections, equivalent to the Bill of Rights which comprises the summary of rights and liberties of the people, or the principles of constitutional law deemed essential and which guarantee the rights and privileges to the individual, such as the first Ten Amendments of the Constitution of the United States of America. (Campbell Black, Henry, Black's Law Dictionary, 6th ed., St. Paul, Minnesota, Abridged, West Publishing Co., 1991, p. 113 and 115.)

just by this fact alone, attain their freedom and the protection of the laws.

Every form of discrimination motivated by ethnic or national origin, gender, age, incapacities, sexual preferences, status or any other which attempt on human dignity or seeks to annul or diminish the rights and liberties of the people, is prohibited.

Article 2.[2] The Mexican Nation is one and indivisible.

The Nation has a multicultural composition, originally sustained on its indigenous peoples, who are those regarded as indigenous on account of their descent from the populations that originally inhabited the Country's current territory at the time of colonization, who retain some or all of their own social, economic, cultural and political institutions.

---

[2]   In the translation of this Article the terms selected were those used in the Convention No. 169 of International Labor Organization, Concerning Indigenous and Tribal Peoples in Independent Countries, since this Article was inspired in the aforesaid Convention and it provides better understanding of the meaning.

The fundamental criteria to determine to whom the provisions on indigenous people apply shall be the self-identification of their indigenous identity.

Those communities which constitute a cultural, economic and social unit settled in a territory, that recognize their own authorities according to their uses and customs are the ones that comprise an indigenous folk.

Indigenous people's right to self-determination shall be exercised within a framework of constitutional autonomy safeguarding national unity. The constitutions and laws of the Federal District and of the States shall recognize indigenous people and communities and shall also include the general principles established in the previous paragraphs of this Article, as well as ethnic-linguistic and land settlement criteria.

A. This Constitution recognizes and protects the right to self-determination of indigenous people and communities and, consequently, their right to autonomy, so that they may:

I. Decide the ways of their community life as well as their social, economic, political and cultural organization.

II. Enforce their own legal systems to regulate and solve their internal conflicts, subject to the general principles of this Constitution, respecting constitutional rights, human rights, and in a relevant manner, the dignity and integrity of women. The Law shall establish the cases and validation procedures by the corresponding judges or courts.

III. Elect, in accordance with their traditional rules, procedures and practices, their authorities or representatives to exercise their form of internal government, guaranteeing the participation of women under equitable conditions before men, respecting the Federal Union Pact and the States' sovereignty.

IV. Preserve and promote their languages, knowledge and all those elements that constitute their culture and identity.

V. Maintain and improve their habitat and preserve the integrity of their lands as provided in this Constitution.

VI. Attain preferential use and enjoyment of any natural resources located in the sites inhabited and occupied by the communities, save for the ones pertaining to strategic areas as provided in this Constitution. The foregoing rights shall be exercised respecting the nature and classes of land ownership and land tenure set forth in this Constitution and the laws on the matter, as well as the rights acquired by third parties or by members of the community. To achieve these goals, communities may constitute partnerships under the terms established by the Law.

VII. Elect representatives before town councils in those Municipalities with indigenous population.

The constitutions and laws of the Federal District and the States shall recognize and regulate these rights in Municipalities, with the purpose of strengthening their participation and political

representation in accordance with their traditions and standards.

VIII. To have full access to State jurisdiction. To protect this right, in all trials and procedures to which they are party, individually or collectively, the particularities of their customs and culture must be taken into account, respecting the provisions of this Constitution. Indigenous people have at all times the right to be assisted by interpreters and counselors who are familiar with their language and culture.

The constitutions and laws of the Federal District and the States shall determine those elements of self determination and autonomy that may best express the conditions and aspirations of indigenous people in each State, as well as the provisions for the recognition of indigenous communities as entities of public interest.

B. In order to promote equal opportunities for indigenous people and to eliminate any discriminatory practices, the Federation, the

Federal District, the States and the Municipalities, shall establish the institutions and shall determine the policies needed to guarantee full force and effect of indigenous people's rights and the comprehensive development of their towns and communities. Such policies shall be designed and operated jointly with them.

In order to decrease the needs and lags affecting indigenous towns and communities, authorities are obliged to:

I. Promote regional development in indigenous areas with the purpose of strengthening local economies and improving the quality of life of their people, through coordinated actions among the three levels of government with the participation of the communities. Municipal authorities shall equitably determine the budget allocations that indigenous communities shall directly administer for specific goals.

II. Guarantee and increase educational levels, favoring bilingual and cross-cultural education,

literacy, the conclusion of elementary education by students, technical training and medium and higher education. To establish a scholarship system for indigenous students at all levels. To define and develop educational programs of regional content which recognize the cultural heritage of their peoples in accordance with the laws on the matter and consulting it with indigenous communities. To promote respect for and knowledge of, the diverse cultures in the Nation.

III. Assure effective access to health services by increasing the coverage of the national system of health, but benefiting from traditional medicine, and also to support better nutrition for indigenous people through food programs, especially for children.

IV. Improve indigenous communities' living conditions and their spaces for socializing and recreation through actions facilitating access to public and private financing for housing construction and improvements, and also to extend the coverage of basic social services.

V. Foster the incorporation of indigenous women to development by supporting productive projects, protecting their health, granting incentives to privilege their education and their participation in decision making processes regarding community life.

VI. Extend the communication network enabling the integration of communities, by constructing and expanding transportation routes and telecommunication means. To develop the conditions required so that indigenous people and communities may acquire, operate and manage means of communication, in accordance with the terms set forth by the laws on the matter.

VII. Support productive activities and sustainable development of indigenous communities through actions aimed at, allowing them to attain economic self-reliance, applying incentives for public and private investments which foster the creation of jobs, incorporating technology to increase their own productive capacity, and also insuring equitable access to supply and marketing systems.

**10**   Political Constitution of the United Mexican States

VIII. Establish social policies to protect indigenous migrants in Mexican territory, as well as in foreign countries, through actions designed to guarantee the labor rights of farm workers;[3] to improve health conditions of women, support children and youth of migrant families with special educational and food programs; to ensure that indigenous people's human rights are respected and promote their cultures.

IX. Consult indigenous people when preparing the National Development Plan and the States and Municipalities plans, and if appropriate, to incorporate their recommendations and proposals.

To guarantee compliance with the obligations set forth herein, the House of Deputies of the Congress of the Union, the Federal District and the State Legislatures and Municipal councils,

---

[3] In the context of the Mexican constitution, laborers means workers dedicated not only to farming but also to any other agricultural jobs. (Becerra, Javier F., Dictionary of Mexican Legal Terminology, México, Escuela Libre de Derecho, 1999, p. 766.)

within the scope of their respective jurisdictions, shall establish specific items allotted to the fulfilment of these obligations in the expenditure budgets they shall approve, as well as the procedures enabling communities to participate in the exercise and supervision thereof.

Notwithstanding the rights herein set forth to the benefit of indigenous individuals, their communities and people, any community equated to them shall have, as applicable, the same rights as the indigenous people, as provided by the Law.

Article 3. All people have the right to education. The State (the Federation, the Federal District, the States, and Municipalities) shall provide pre-school, elementary and secondary education. Pre-school, elementary and secondary education are mandatory.

The education provided by the State shall aim to develop harmoniously all human values and shall induce in pupils both, love for the Homeland and a consciousness of international solidarity, in independence and in justice.

**12**   Political Constitution of the United Mexican States

I. The education provided by the State shall be secular and, therefore, shall be maintained entirely apart form any religious doctrine, in accordance with the right of freedom of beliefs set forth under Article 24 herein;

II. The guiding principles for education provided by the State shall be grounded on the results of scientific progress; such education shall also strive against ignorance and its effects, servitudes, fanaticism and prejudices.

Furthermore:

a) It shall be democratic, considering democracy not only as a legal structure and as a political régime, but also as a way of life grounded on the constant economic, social and cultural development of the people;

b) It shall be national in the understanding that it shall address, without hostilities or exclusiveness, the comprehension of the country's problems, the utilization of its resources, the defense of its

political independence, the assurance of its economic independence and the continuity and development of its culture, and;

c) It shall contribute to a better human coexistence both, by the elements it shall provide aiming to strengthen in the pupil, the conviction of the general interest of society along with an appreciation for human dignity and for the integrity of the family, and by the care devoted to sustain the ideals of brotherhood and equality of rights for all men, avoiding privileges by reason of race, creed, groups, sex or individuals;

III. To fully comply with the provisions set forth under paragraph second and under section II, the President of the Republic shall establish the academic curriculum applicable in the Republic for pre-school, elementary and secondary education, as well as for schools of education.[4]

---

[4]   This term refers to schools of education (Normal). "Normales" are the institutions that provide professional education for teachers.

To that end, the President of the Republic shall take into account the opinion of State governments and of the Federal District, as well as the opinions of all groups of society involved in education, under the terms provided by the Law;

IV. All education provided by the State shall be free;

V. Besides providing pre-school, elementary and secondary education as set forth in the first paragraph hereinbefore, the State shall promote and take care of education of all types and levels, including basic and higher education, which are necessary for the development of the Nation; it shall support scientific and technologic research, shall strengthen and promote the country's culture;

VI. Private persons may provide all kinds and all particularities of education. In accordance with the terms set forth by the Law, the State shall grant and withdraw official accreditation to studies conducted in private institutions. In the case of

pre-school, elementary, secondary and schools of education, private persons must:

a) Provide education in accordance with the same purposes and criteria established in paragraph second and section II, as well as to comply with the academic curriculum set forth in section III, and

b) Attain, in every case, a previous authorization from public authorities, under the terms provided by the Law.

VII. Universities and all other higher education institutions upon which the Law has conferred autonomy, shall have the powers and responsibility to govern themselves; they shall carry out their purposes of educating, doing research and promoting culture in accordance with the principles established in this Article, respecting freedom to teach and to do research and freedom to analyze and discuss ideas; they shall determine their academic curriculum; they shall establish the terms for the engagement,

promotion and tenure of their academic personnel; and they shall manage their Estate. Labor relationships both with academic personnel and with management personnel, shall be governed by section A of Article 123 of this Constitution, under the terms and in accordance to the prescriptions established by the Federal Labor Law, subject to the nature pertaining to a specially regulated work,[5] in a manner consistent with the autonomy, freedom of teaching and research and the goals of the institutions referred herein, and

VIII. In order to unify and coordinate education throughout the Republic, the Congress of the Union shall issue the necessary laws to distribute the social duty of educating among the Federation, the Federal District, the States and the Municipalities and shall establish the

---

[5] Mexican labor legislation regulates specifically the particularities of certain types of work, such as railroad employees, employees in graduate schools and universities, and hotel employees, among others.

corresponding financial allocations for such public service and the penalties applicable to such officials who fail to comply or enforce the respective provisions, and to any one infringing them.

Article 4. Man and woman are equal before the Law. The Law shall protect the organization and development of the family.

Every individual has the right to decide in a free, responsible and informed manner the number of children desired and the timing between each of them.

Every person has the right to health protection. The Law shall set forth the rules and conditions to access health services and shall establish the concurrence of the Federation, the Federal District and the States in matters of general public health, as provided in section XVI of Article 73 of this Constitution.

Every person has the right to an environment suited to his development and well being.

**18**   Political Constitution of the United Mexican States

Every family has the right to live in a dignified and decorous housing. The Law shall establish the instruments and supports needed to attain such goal.

Children are entitled to have their food, health, education and recreation necessities fulfilled for their integral development.

Ascendants, tutors and guardians have the duty to preserve these rights. The State shall take the necessary measures to foster respect for the dignity of children and the full exercise of the rights of the child.

The State shall grant facilities to private persons so that they may assist in attaining the fulfillment of the rights of the child.[6]

Every person has the right to access culture and enjoy the goods and services thereof provided by the State, as well as exercising their cultural rights. The State shall promote the means to spread

---

[6]   In the translation of this Article the terms selected were those used in the Convention on the Rights of the Child of 1989.

and develop culture, taking into account the cultural diversity in all its manifestations and expressions, with consideration for creativity. The law shall set forth mechanisms to access and participate in every cultural manifestation.

Article 5. No person may be prevented from engaging in the profession, industry, business or work of his choice, provided it is lawful. The exercise of this freedom may only be banned by judicial resolution, when the rights of third parties are infringed or by government order, issued under the terms set forth by the Law, when the rights of society are offended. No one may be deprived from the product of his work, save by judicial resolution.

In each State, the Law shall establish the professions which require a license for their practice, the qualifications to be met in order to obtain it and the authorities who shall issue it.

No one can be compelled to render personal services without fair compensation and without his full consent, unless the work has been imposed as

a penalty by a judicial authority; in which case, working conditions shall abide by the provisions in sections I and II of Article 123.

Regarding public services, only the following shall be mandatory, subject to the terms established in the respective laws: military and jury services, service as municipal councilman and the discharge of official duties attained through direct or indirect elections. Electoral and census duties shall be mandatory and gratuitous, but a remuneration shall be paid for professional services rendered as provided by this Constitution and any applicable laws. Professional services of a social nature shall be mandatory and remunerated as provided by the Law, with the exceptions set forth therein.

The State cannot permit the execution of any contract, compound or agreement which purpose is the demerit, loss or irrevocable sacrifice of a person's liberty for whatever cause.

Nor is any agreement admissible whereby the person agrees to his own proscription or exile or by which

he temporarily or permanently waives his right to exercise a certain profession, industry or business.

A labor contract shall only oblige to render the service agreed upon during the term set forth by the Law, which may not exceed one year to the detriment of the worker, and in no case may it include the waiver, loss or impairment of any political or civil right.

Failure to perform said contract, by the worker, shall only render him answerable for applicable civil liability, but never may be exerted any coercion against his person.

Article 6. Manifestation of ideas shall not be submitted to judicial or administrative inquiry, except in the case of attempts on moral or third party rights, or if it is a means to commit a felony or disturb public order; opportunity to answer shall be exercised according to law. The State shall guarantee the right to information.

In order to exercise the right to information, the Federation, the States and the Federal District, in

the sphere of their own cognizance, shall be ruled by the following principles:

I. All information in custody of any federal, local or municipal authority, entity, organ or organism, is public and shall be held temporarily due to public interest and according to law. In interpreting this right, principle of maximum publicity shall prevail.

II. Information regarding private life and personal data shall be protected according to law and with the exceptions established therein.

III. Every person, without the need to prove interest or justification, shall have free access to public information, his personal data or its rectification.

IV. Mechanisms of access to information and quick review procedures shall be established. These procedures shall be substantiated before specialized and impartial organs and organisms, autonomous in operation, formalities and decision.

V. Obliged subjects shall preserve their documents in updated administrative files, and by electronic means available shall publish complete and updated information about their management indicators and the exercise of public resources.

VI. The Law shall determine how obligated subjects shall publish information concerning public resources delivered to natural or artificial persons.

VII. Non-fulfillment of dispositions about access to public information shall be penalized according to Law.

Article 7. The freedom to write and publish documents on any subject is unrestricted. No law or authority may establish previous censorship, require bonds from authors or printers, or restrict freedom of printing, which is only limited by respect to private live, to morals and public peace. In no case, printing instruments may be seized as the instrument of a crime.

Organic laws shall include all the provisions required to prevent that, under the pretense of accusations of crimes of the press, newsboys, retailers, workers and any other employees of the workshop that published the denounced writing pretend to be incarcerated, unless their liability is previously demonstrated.

Article 8. Public officers and employees shall respect the exercise of the right of petition provided it is made in writing and in a peaceful and respectful manner; but in political issues, only citizens of the Republic may exercise this right.

Every petition must be decided in writing by the authority to whom it was addressed, who has the duty to reply to the petitioner within a brief term.

Article 9. The right to peacefully associate or to assembly for any licit purpose may not be restricted; but only citizens of the Republic may do so to take part in the political affairs of the country. No armed meeting has the right to deliberate.

No assembly or meeting may be dissolved nor deemed unlawful which shall have for its purpose

to make a petition or to submit an objection against an act or an authority, provided that no insults are uttered against it, or that there is no resort to violence or threats to intimidate or force the decision of such authority in the sense desired.

Article 10. The inhabitants of the United Mexican States have the right to keep arms in their house, for their security and legitimate defense, with the exception of those which are prohibited by Federal Law and those which are reserved for the exclusive use of the Army, Navy, Air Force and National Guard. Federal Law shall establish the cases, conditions, requirements and places where the inhabitants may be authorized to carry weapons.

Article 11. Every person has the right to enter and depart the Republic, to travel through its territory and to change his residence without necessitating a letter of safe passage, a passport, safe-conduct or any other similar requirement. The exercise of this right shall be subordinated to the judiciary, in criminal and civil liability cases, and to those of the administrative authorities when it concerns

limitations imposed by the laws on immigration and general public health of the Republic or in respect to undesirable aliens residing in the country.

Article 12. No titles of nobility, nor prerogatives and hereditary honors shall be granted in the United Mexican States, nor shall any effect be given to the ones granted by any other countries.

Article 13. No one may be tried under private laws or by ad hoc courts. No person or corporation may have any privileges nor enjoy emoluments other than those paid in compensation for public services and which are set forth by the Law. Military jurisdiction prevails for crimes and faults against military discipline; but under no cause and for no circumstance may military courts extend their jurisdiction over persons which are not members of the Armed forces. When a crime or a fault to military law involves a civilian, the case shall be brought before the competent civil authority.

Article 14. No law shall be enforced ex post facto in the detriment of any person.

No one shall be deprived of their freedom, properties, possessions or rights without a fair trial before previously established courts, according to the essential formalities of the proceedings and laws issued beforehand.

In criminal trials it is forbidden to impose, by mere analogy or reasonable belief, any penalty which is not expressly set forth in a law applicable in every respect to the crime in question.

In civil trials, final judgement must be rendered in accordance with the letter of the law, or with legal interpretation and in the absence thereof, in accordance with general principles of law.

Article 15. The celebration of treaties to extradite political convicts, or ordinary criminals considered slaves in the country where they committed the crime, or the agreements or treaties altering the rights established by this Constitution for the people and the citizen shall not be authorized.

Article 16. No one may be disturbed in his person, family, home, papers or possessions, except by written

order of a competent authority, duly grounded in law and fact which sets forth the legal cause of the proceeding.

Every person has the right to the protection of their personal data, to access, rectify and cancel them, as well as to oppose as provided by the law, which shall establish the cases of exception to the principles of data treatment, for reasons of national security, public order regulations, public safety and health or to protect third party rights.

No arrest warrant may be issued except by the judicial authority upon previous accusation or complaint for the commission of an act which is described as a crime by the law, punishable with imprisonment, and unless there is evidence to prove that a crime has been committed and that there are sufficient elements to believe that the suspect committed it or was an accessory.

The authority executing an arrest warrant issued by a court shall bring the suspect before the judge without any delay and under its sole responsibility.

Any contravention to the foregoing shall be punished by criminal law.

In cases of flagrante delicto,[7] any person may detain the suspect bringing him without delay under custody of the nearest authority and the latter, without delay, shall bring him before the Public Prosecutor.[8]

Only in urgent cases, when dealing with a felony qualified as such by the law and under reasonable risk that the suspect could evade the action of justice, should there not be a judicial authority available because of the hour, place or circumstance, the Public Prosecutor may, under his responsibility, order his detention, stating the grounds of law and fact and the circumstantial evidence underlying such decision.

In cases of urgency or flagrante delicto, the judge before whom the person in custody is presented shall immediately confirm the arrest or order his

---

[7]   Flagrante delicto is a crime discovered while in progress.
[8]   Means Ministerio Público depending on the context.

release, subject to the conditions established in the Law.

Judicial authority, at the request of the Public Prosecutor and in the case of felonies committed by organized crime, can decree to put a person into informal detention, as long as that is necessary for the success of the investigation, the protection of people or legally protected goods, or when there is the risk to have the accused avoiding the action of justice. This term can be prolonged, provided the Public Prosecutor proves that the causes that originate it still remain. In any case, the informal detention shall not last more than eighty days.

The term organized crime refers to an organization of three or more people gathered together to commit crimes in a permanent or frequent manner, in the terms provided by the correspondent Law.

No one charged with a crime may be detained by the Public Prosecutor for more than forty eight hours, term whereupon his release shall be ordered or he shall be brought before a judicial authority.

Such term may be duplicated in cases established by the law as organized crime. Any abuse in respect to what has hereinbefore been provided shall be punished by criminal law.

At the request of the Public Prosecutor, only a judicial authority may issue a search warrant which must be in writing. Every search warrant must describe the place to be searched, the person or persons to be detained and the objects to be seized, to which this act shall be exclusively restricted, preparing in site, upon the conclusion of the search, a fact finding report, before two witnesses proposed by the occupant of the place searched or in his absence or refusal, by the acting authority.

Private communications are secret. The law shall punish according to criminal law any action against the liberty and privacy of such communications, except when they are voluntarily given by one of the individual involved in them. A Judge shall assess the implications of such communications, provided they contained information related to the commission of a crime. Communications that violate

the confidentiality duty established by the law shall not be admitted.

Only a federal judicial authority may authorize the intervention of any private communications, upon request by the federal authority empowered by the law or by the Public Prosecutor of the corresponding State, wherefore the competent authority shall, in writing, ground in law and fact the legal causes of the request describing therein the class of intervention required, the subjects and the term thereof. The federal judicial authority may not grant these authorizations when the matters involved are of electoral, fiscal, commercial, civil, labor or administrative nature, nor in the case of communications of the defendant with its attorney.

The judiciaries shall have control judges who shall immediately and by any means solve the requests of cautionary measures, precaution rulings and investigation techniques of the authority that require judicial control, ensuring the rights of the accused and the victims or offended parties. There shall be an authentic registry of all the communications between

judges and the Public Prosecutor and other competent authorities.

Authorized interventions shall be subject to the requirements and limitations set forth in the laws. The results of interventions which do not comply with the aforesaid requirements shall not be admitted as evidence.

Administrative authorities may carry out inspections to private facilities only for ascertaining whether sanitary and police regulations have been complied with; and to require to be shown such books and papers which are indispensable to corroborate that fiscal provisions have been complied with, in which cases such authorities shall be subject to the provisions of the respective laws and to the formalities for search warrants.

The sealed correspondence circulating through the mail shall be exempt from any search and the violation thereof shall be punishable by the Law.

No member of the Army shall in times of peace be quartered in a private house against the will of the owner nor impose any requirements. In times of

war the military can demand lodging, baggage, food and other requirements in the terms set forth by the applicable martial law.

Article 17. No one may take the law unto his own hands, nor resort to violence to enforce his rights.

Every person has the right to petition justice before courts of law which shall be ready to provide it under the terms and conditions set forth by the laws, and shall issue their judgments in a prompt, complete and impartial manner. Their services shall be free and consequently, judicial fees are prohibited.

The Congress of the Union shall issue laws to regulate collective actions. Such laws shall determine how those actions shall be applied, the correspondent judicial procedures and the means to make amends. Federal Judges shall be exclusively competent to solve these procedures and means.

The laws shall provide alternative mechanisms to resolve controversies. In criminal matters they shall

regulate its application, ensure reparations and establish the cases in which judicial supervision shall be required.

Oral proceedings shall end with a sentence which shall be explained in a public hearing before the parties, who shall be previously called.

Federal and local laws shall provide the necessary means to guarantee the independence of the courts and the full enforcement of their judgements.

The Federation, the States and the Federal District shall ensure the existence of a public defenders office for the population, as well as the conditions for a professional career service for the defenders. The defenders' fees shall not be inferior to those of the Public Prosecutor agents.

No one may be imprisoned by debts solely of a civil nature.

Article 18. Pretrial detention may only be applied for crimes punishable by imprisonment. The place of confinement shall be different and shall be separate from the one used for convicted persons.

The prison system shall be organized on the grounds of labor and the training for it, education, health and sports as a means to reinstall the inmate into society and to make sure he does not transgress again, noting the benefits that the law ensures him. Women and men shall be imprisoned in separate places.

The Federation, the States and the Federal District can make agreements to have the inmates accused of crimes within their field of cognizance serve their sentence in prisons under a different jurisdiction.

The Federation, the States and the Federal District shall establish, within the field of their respective cognizance, an integral justice system which shall apply to those accused of a felony according to penal laws and are between twelve and eighteen years of age, in which the fundamental rights recognized for everyone by this Constitution are ensured, as well as those specific rights they are entitled to for their state of development. People under twelve years of age who have committed a crime shall only be subjected to rehabilitation and social assistance.

The management of the system on every level of Government shall correspond to institutions, courts and authorities who are specialized on legal procedures regarding adolescents. In observance of the integral protection and interest of the adolescent, means of orientation, protection and treatment may be applied if the particular case merits it.

If appropriate, alternative forms of justice shall be observed when applying the system. Due process of law and independence among authorities in charge shall be observed whenever an adolescent is prosecuted. Every measure imposed by the authorities shall be proportional to the misconduct and shall seek social and familiar reintegration of the adolescent and the plain development of his person and capacities. Confinement shall only be used as an extreme measure and for a brief period of time, and it shall be applied only to adolescents above fourteen years of age who have committed grave and antisocial deeds.

Convicts of Mexican nationality who are serving imprisonment penalties in foreign countries may be

brought to the Republic to serve their sentences under the grounds of the social readjustment Systems provided in this Article, and convicts of foreign nationality convicted for federal crimes throughout the Republic or for crimes under the local jurisdiction of the Federal District, may be transferred to their countries of origin or of residence, provided that International treaties have been signed for that purpose. State governors may request from the President of the Republic, under the grounds of their respective local laws, the inclusion in said treaties of convicts for crimes under State jurisdiction. Convicts shall only be transferred if they expressly agree to it.

In the cases and conditions provided by the Law, convicts may serve their penalties in the penitentiaries closer to their home, in order to encourage their reintegration to the community as a means of readjustment to society. This disposition shall not be effective in the case of organized crime and regarding inmates who require special security measures.

Special centers shall be destined to preventive imprisonment and the execution of penalties

regarding organized crime. Save for access to their defenders, competent authorities shall restrict communication between the accused and the convicted of organized crime with third parties, and to impose measures of special surveillance on the inmates. This can be applied to other inmates who require special security measures in the terms set forth by the law.

Article 19. No detention before a judicial authority may exceed a term of seventy two hours from the time the defendant is brought under its custody, without a formal order of entailment to process, which must set forth the crime he is charged with, the place, time and circumstances of the crime; as well as the evidence furnished by the preliminary criminal inquiry, which must be sufficient to establish that a crime has been committed and the probable liability of the suspect.

The Public Prosecutor can only request from the Judge preventive prison when other cautionary measures are not enough to ensure the presence of the accused in his trial, the development of the

investigation, the protection of the victim, witnesses or community, as well as when the accused is on trial or had been previously convicted for having committed a deceitful crime. The Judge shall determine ex officio in the case of organized crime, deceitful homicide, rape, kidnap, crimes committed with firearms or explosives, as well as grave crimes against national security, the free development of personality and health.

The Law shall determine the cases in which the Judge shall be able to revoke the liberty granted to the individuals subjected to trial.

The term to deliver the order of entailment to process can be prolonged only at the request of the accused as set forth by the Law. Prolonging the detention to his detriment shall be sanctioned by penal law. The authority in charge of the establishment in which the accused is committed, which in the aforesaid term does not receive authorized copy of the order of entailment and of that which decrees preventive prison, or the request to extend the constitutional term, shall attract the

Judge's attention about the matter as soon as the term ends and, if the said evidence is not received within the next three hours, the accused shall be set free.

Every proceeding shall be compulsorily instituted only for the crime or crimes charged in the order to stand trial in commitment or in the order to stand trial. If within the course of proceedings it should appear that another crime has been committed which is different from the one pursued, it shall be charged on a separate count, notwithstanding that a joinder of both proceedings could thereafter be ordered, if appropriate.

If after the order to stand trial is issued on the grounds of organized crime the accused should evade the action of justice or is put under the custody of a Judge summoning him from abroad, the trial and the terms for the statute of limitation of the criminal action shall be suspended.

Any ill treatment when detaining a person or during confinement, any annoyance without legal

justification, any exaction or contribution laid in jails, constitute an abuse which the laws shall correct and the authorities shall repress.

Article 20. The criminal proceeding shall be accusatory and oral. It shall be ruled by the principles of publicity, contradiction, concentration, continuity and contiguity.

A. On the general principles:

I. Criminal proceedings are meant for clarifying the facts, protecting the innocent, ensuring that the offender does not remain unpunished and redressing the damages caused by the crime;

II. Every hearing shall take place before a Judge, whom shall not be able to delegate in somebody else the clearance and evaluation of evidence, which shall be done in a free and logic manner;

III. Only the evidence cleared and evaluated in the hearing shall be used for the purpose of the sentence. The Law shall set forth the exceptions and requirements to admit on trial the evidence

presented in advance, which by its nature require a previous clearance;

IV. The trial shall take place before a Judge who has not previously tried the case. All arguments and elements of proof shall be presented in a public, contradictory and oral manner;

V. The burden of proof to demonstrate the guilt concerns to the accuser, according to the criminal offence. On equal terms, the parties shall sustain the accusation or the defense, respectively;

VI. No Judge shall try matters on trial with any of the parties without the presence of the other, taking always into account the principle of contradiction, save for the exceptions set forth by this Constitution;

VII. Once the criminal proceeding has begun, and if the defendant allows it, it shall be terminated in advance in the cases and modes established by the Law. If the defendant, voluntarily and aware of the consequences, acknowledges

before the judicial authority his involvement in the crime and there are enough clues to corroborate the charges, the Judge shall call to a sentence hearing. The Law shall establish the benefits granted to the defendant incase he accepts his responsibility;

VIII. The Judge shall convict when the guilt of the accused is certain;

IX. All evidence obtained by violating the fundamental rights shall be null and void, and

X. All principles to which this Article refers shall be observed also on the preliminary hearings of the trial.

B. On the rights of the defendant:

I. The defendant shall be considered presumed innocent until his responsibility is declared by a sentence delivered by a Judge;

II. He has the right to declare or remain silent. From the moment of his arrest he shall be informed of what caused it and of his right to remain silent,

which cannot be used against him. All forms of intimidation, torture or denial of communication are forbidden and shall be sanctioned by the Law. Any confession made without the assistance of a counselor shall have no weight as evidence;

III. At the moment of his arrest, as well as before the Public Prosecutor or the Judge, he shall be informed of the charges against him and his rights. In the case of organized crime, the judicial authority can authorize to keep the accuser's name in secret.

The Law shall establish benefits for the accused, indicted or convict who helps with the investigation of felonies related to organized crime;

IV. All witnesses and any other evidence submitted on his own behalf shall be admitted within the term the Law deems necessary to that end and he shall be assisted in securing the presence of those witnesses whose testimony he may request, in the terms set forth by the Law;

V. He shall be judged in a public hearing by a judge or court. Publicity shall only be restricted in the cases established by the Law, for reasons of national security, public safety, protection of victims, witnesses and minors, whenever the disclosure of legally protected data is jeopardized or when the court considers that it is justified to do so.

In the case of organized crime, all acts performed during the investigation shall have probatory value when they cannot be reproduced during the trial or there is a risk for witnesses or victims. This shall not keep the accused from objecting them and present evidence to them;

VI. He shall be furnished with all the information on record in the proceedings that he shall request for his defense;

The accused and his counselor can access to the investigation records when the accused is under arrest and prepared to make a statement or be interviewed. Also, said records can be

consulted before his first hearing before the Judge in order to prepare his defense. From that moment on the investigation proceedings cannot be kept in secret, save for exceptional cases determined by the Law, whenever that is imperative to ensure the success of the investigation and provided that they are revealed in time for safeguarding the right of the accused to defend himself;

VII. He shall be tried within a term of four months in the case of crimes punishable with a maximum penalty not exceeding two years of imprisonment; and within a term of one year if the crime is punishable with a penalty exceeding such term, unless he shall request a longer term for his defense;

VIII. He shall have the right to an adequate defense by a lawyer, whom he shall freely choose even from the moment of his arrest. If he does not want a lawyer or cannot appoint one, after being told to, the Judge shall appoint a public

defender. He shall also have a right to have his counselor present throughout the trial and the counselor shall be obliged to do it as many times as he is required to, and

IX. Prison or arrest because of lack of payment of lawyer's fees or any other sum of money, or because of civil liability or any other similar motive, cannot be extended.

Preventive prison cannot exceed the time set forth as a maximum punishment according to the Law for the crime that started the trial and it shall not exceed the term of two years, except that its extension is due to the defendant's right to defense. If after said term a sentence has not been delivered, the defendant shall be set free immediately while the trial is taking place; this shall not hinder the imposition of other cautionary measures.

In every prison penalty imposed by a sentence the time of the arrest shall be computed.

C.  On the rights of the victim or the offended party:

I. To receive legal counsel; to be informed of the rights that the Constitution establishes to his benefit and whenever he should so require it, to be informed of the developments of the criminal proceedings;

II. To assist the Public Prosecutor; to be received all the information and evidence that he furnishes, during the preliminary criminal inquiry as well as during proceedings, and for appropriate proceedings to be carried out.

Whenever the Public Prosecutor does not consider necessary to carry out the proceeding, he must state the grounds of law and fact justifying his refusal.

III. To receive urgent medical and psychological attention, from the moment the crime was committed.

IV. To recover damages. Whenever it should be legally admissible, the Public Prosecutor is obliged to require restitution of damages and the Judge

shall not acquit the convict from making restitution if he shall have imposed on him a conviction sentence.

The Law shall set forth swift and speedy procedures to enforce judgments in matters of recovery of damages.

V. To protect his identity and other personal data in the following cases: minors involved; rape, kidnap or organized crime; and whenever the Judge considers it necessary for his protection, always ensuring the right to defense.

The Public Prosecutor shall ensure the protection of victims, offended parties, witnesses and all others who take part in the trial. The Judges shall watch the fulfillment of this obligation;

VI. To require the injunctions and measures provided by the Law for his security and assistance, and

VII. To contest before a judicial authority the Public Prosecutor's omissions at investigating crimes, as well as resolutions on unexercised

criminal prosecution or desisting from it or keeping it as a secret, or the suspension of proceedings before the recovery of damages.

Article 21. The investigation of crimes is exclusive to the Public Prosecutor and the police forces under his authority and command in the exercise of this task.

The exercise of the criminal prosecution is exclusive to the Public Prosecutor. The Law shall determine the cases in which civilians shall exercise criminal prosecution before the judicial authority.

The imposition of penalties, their modification and length are exclusive to the judicial authority.

The imposition of sanctions for infractions to government and police regulations is exclusive to administrative authorities, whose sanctions shall consist solely of fines or incarceration for a term not to exceed thirty six hours. Should the offender not pay the fine imposed, the fine shall be exchanged for the corresponding incarceration term, which shall never exceed thirty six hours.

Should the offender be a laborer, worker or employee, he may not be fined for an amount exceeding the sum of his wages for one day.

Should the offender be a non wage worker, the fine shall not exceed the amount equivalent to one day of his income.

The Public Prosecutor may consider criteria of opportunity for exercising criminal prosecution in the cases and conditions set forth by the Law.

The President of the Republic may, with the approval of the Senate in every case, acknowledge the jurisdiction of the International Criminal Court.

Public security is a function in charge of the Federation, the Federal District, the States and the Municipalities, and it involves the prevention of crimes; the investigation and prosecution to make said security effective, as well as the sanction of administrative infractions, as provided by the Law, in the respective jurisdictions set forth by this Constitution. The performance of the institutions in charge of public security shall be ruled by the

principles of legality, objectivity, efficiency, professionalism, honesty and respect to the human rights acknowledged by this Constitution.

Institutions of public security shall be of a civil, disciplined and professional kind. The Public Prosecutor and the police forces of the three levels of government shall coordinate each other to fulfill the public security's goals and they shall compose the National System of Public Security, which shall be submitted to the following basis:

a) The regulation of selection, admission, training, continuance, evaluation, appreciation and certification of the members of the institutions of public security. The operation and development of these actions shall correspond to the Federation, the Federal District, the States and Municipalities in the field of their respective attributions.

b) The establishment of the basis of criminal and personnel data for the institutions of public security. No one may enter an institution of public security unless he has been duly certified and registered in the system.

c) The formulation of public policies intended for the prevention of crimes.

d) The participation of community shall be determined; it shall contribute, among other things, to the processes of evaluation of policies intended to prevent crime as well as the institutions of public security.

e) The Federation shall deliver funds for public security on a national level; they shall be brought to the States and Municipalities to be destined solely to those ends.

Article 22. Death penalty, mutilation and infamous penalties, as well as branding, flogging, beating with sticks, and torture of any kind, the imposition of excessive fines, confiscation of property and any other cruel, unusual and transcendental punishments are prohibited. Every penalty shall be in proportion to the crime committed and the legally-protected interest.

The attachment of all or of a portion of a person's property for the payment of taxes or fines, or made

under judicial authority to make payment of civil liability resulting from the commission of a crime, shall not be deemed confiscation of property. Nor shall the seizure of property ordered by the judicial authority under the terms provided by Article 109 in case of illicit enrichment, shall be deemed confiscation; nor the seizure of goods whose fee is declared extinct by a sentence. In the case of fee extinction there shall be a procedure according to the following regulations:

I. It shall be jurisdictional and autonomous from the criminal proceedings;

II. It shall take place in the cases of organized crime, crimes against public health, kidnapping, car theft and slave trade, in reference to the following goods:

a) Those that are instrument, object or product of a crime, even though criminal responsibility has not been established by a sentence, as long as there are enough elements to determine that the crimes occurred.

b) Those that are not instrument, object or product of a crime, but that have been used or destined to hide or mix the products of it, provided that the elements established in the previous clause have taken place.

c) Those that are being used for the commission of a crime by a third party, if the owner was aware of it and did not notify to the proper authority or did something to stop it.

d) Those that are the property of third parties, but there are enough elements to conclude that they are the product of patrimonial or organized crime, and the accused of such felonies behaves like the owner.

III. Every person who consider themselves affected can give notice of the respective appeals to demonstrate the licit origin of the goods and their acting in good faith, as well as that they were disabled to be aware of the misuse of their goods.

Article 23. No criminal trial shall have more than three stages. No one can be tried twice for the same

crime, whether he was acquitted or convicted. The practice of acquitting for lack of evidence is prohibited.[9]

Article 24. Every person is free to practice the religious beliefs of his choice and to practice all such ceremonies, devotions or acts of worship pertaining to his respective faith, provided they do not constitute a crime or an offence punishable by the Law.

The Congress of the Union may not enact laws establishing or prohibiting any religion.

Religious acts of public worship must regularly be performed inside the churches. Those eventually performed outside of them shall be subject to the Law.

---

[9]   In Mexican law, when the evidence was inconclusive, the matter could be disposed of by an order of absolución de la instancia, which operated as a dismissal but not as a judgment for or against either party in a civil case, or as an acquittal or conviction in a criminal case. Hence, upon discovery of more evidence the case might be revived. Similar to the Scotch verdict of not proved, and to the Roman non liquet.

Article 25. The State is in charge of directing national development and must guarantee that such development is comprehensive and sustainable, that it strengthens national sovereignty and its democratic régime, and that it enables full exercise of the liberties and dignity of the individuals, groups and social classes, whose safety is protected by this Constitution, by promoting economic growth and employment, and a more just distribution of income and wealth.

The State shall plan, conduct, coordinate and direct national economic activity and shall carry out the regulation and promotion of the activities required by public interest within the framework of liberties granted by this Constitution.

The public, social and private sectors shall concur, with social responsibility, in the economic development of the Nation, without detriment to other forms of economic activity that contribute to the development of the country.

The public sector shall be in charge, in an exclusive manner, of those strategic areas established in

Article 28, paragraph fourth of the Constitution, and the Federal Government shall at all times maintain ownership and control over the entities which may be established, as appropriate.

Likewise, the State may participate by itself or along with the social and private sectors, in accordance with the Law, to foster and organize such areas which are a priority for development.

Enterprises from the social and private sector of the economy shall be supported and encouraged under criteria of social equity and productivity, subject to the particularities required by public interest and to the use, for general benefit, of the productive resources, taking care of their preservation and of the environment.

The Law shall establish mechanisms to facilitate the organization and expansion of economic activity of the social sector: ejidos,[10] workers' organizations,

---

[10]   Ejido it is a concept that does not have translation. Ejido is a class of rural land tenure in the Mexican system, constituted by land communally held in common by the

cooperatives, rural communities, enterprises which are majority or exclusively owned by workers and, in general, of all manners of social organization for production, distribution and consumption of such goods and services which are necessary for society.

The Law shall encourage and protect economic activities carried out by private persons and shall provide the conditions required so that the private sector's development contributes to national economic development, according to the terms set forth by this Constitution.

Article 26.

A. The State shall organize a system of democratic planning for national development that gives

----

ejidatarios (who are the community of peasants who work it), village and cultivation lands that combine collective ownership by the ejido (a rural community) with individual use, to be exploited by the ejidatarios or individual members of the ejido. The disposal and transfer of ejido lands is subject to complex restrictions imposed by the Law. It can not be disposed of by the ejidatario, except upon compliance with certain procedures, involving several ejido and government authorities. It was instituted after the Mexican Revolution, which was the cornerstone of the Mexican land reform. (Becerra, Javier F., op. cit., Note 3, P. 299-300).

solidity, dynamism, permanence and equity to the growth of the economy pursuant to the political, social and cultural independence and democratization of the nation.

The goals of the national project contained in this Constitution shall determine the objectives that guide planning. Planning shall be democratic. The aspirations and requirements of society shall be collected with the participation of diverse social sectors, and shall be incorporated into the development programs and to the plan. There shall be a national plan for development to which the programs of Federal Public Administration shall compulsorily be subject.

The Law shall empower the President of the Republic to establish the participation and popular consultation procedures in respect to the national democratic planning system, and the criteria to prepare, implement, control and assess the development programs and the resulting plan. The Law shall also establish the agencies that shall be responsible for the planning process

and the bases under which the President of the Republic shall coordinate, through agreements with State governments, and shall induce and arrange with private persons the actions to be undertaken to prepare and to carry out the planning process.

The Law shall establish the intervention of the Congress of the Union in the democratic planning system.

B. The State shall dispose of a National System of Statistical and Geographical Information with official data. All data contained in the System shall be mandatory for the Federation, the States, the Federal District and the Municipalities, as provided by the Law.

The System shall be ruled and coordinated by an organism with technical and management autonomy, legal personality and its own patrimony, invested with the necessary faculties to rule the gathering, processing and publication of information and will assure its observance.

The organism shall have a Board composed by five members, one of which shall be its President; the members shall be designated by the President of the United Mexican States with the approval of the Senate or, in its recesses, by the Permanent Commission of Congress.

The Law shall establish the organization and functioning of the National System of Statistical and Geographical Information, according to the principles of access to information, openness, objectivity and independence; the requirements to become a member of the Board, as well as the tenure in office and how it shall be staggered.

The members of the Board shall only be removed by a grave cause and they shall not be permitted any other job, position or commission, except for unpaid services in educational, scientific, cultural or beneficiary institutions; and they shall be subjected to the contents of Title Four of this Constitution.

Article 27. Ownership of lands and waters within the boundaries of national land territory is vested

originally in the Nation, which has had and has, the right to transmit title thereof to private persons, thereby constituting private property.

No expropriations of private property shall be made but for public convenience and necessity, and subject to payment of indemnification.

The Nation shall at all time have the right to impose on private property such restrictions as the public interest may demand, as well as to regulate, for social benefit, the utilization of those natural resources which are susceptible of appropriation, in order to make an equitable distribution of public wealth, to conserve them, to achieve a balanced development of the country and to improve the living conditions of rural and urban population. Consequently, measures shall be issued to order human settlements and to establish adequate provisions, uses, reserves and allocations of lands, waters and forests, to carry out public works and to plan and regulate the creation, maintenance, improvement and growth of population centers; to preserve and restore environmental balance; to divide large landed

estates; to provide, under the terms set forth by the Law, the collective exploitation and organization of the ejidos and communal population centers;[11] to develop small rural property;[12] to promote agriculture, cattle breading, forestry and other economic activities in rural environments, and to prevent the destruction of natural resources and damages that property may suffer to the detriment of society.

---

[11]  Communal population center designated as núcleo de población comunal or comunidades, is a Mexican rural land tenure institution constituted by a settlement of peasants holding land in common, which tenure and disposition is also subject to limitations to protect the peasants' rights. Most of this population centers originated as indigenous rural settlements. Settlers have occupied the land since the times of Spanish colonization. This class of land tenure has also certain particularities and is held in common. Communal population centers are, together with the ejido, institutions of land tenure for the protection of peasants and to prevent land concentrations in the hands of a few. Both institutions constitute the grounds of the Mexican land reform resulting from the 1910 Revolution and are regulated since the inception of this Constitution. (Becerra, Javier F., op. cit., Note 3, P.173)

[12]  Small Rural property designated as pequeña propiedad is the rural land tenure system that is accepted as private property. Its extension is a maximum of 10,000 hectares or its equivalent in other types of land. Larger landed Estates, called Latifundios were prohibited after the Mexican Revolution and are not permitted to be held in ownership by a single individual.

The Nation has full ownership over all natural resources of the continental shelf and the seabed and subsoil of the submarine areas of the islands; over all minerals or substances in veins, layers, masses or ore pockets, constituting deposits which nature is different from the components of the earth, such as the minerals from which metals and metalloids to be used in industry are extracted; beds of precious stones, rock salt and deposits of salts formed by sea water; the products derived from rock decomposition, when their exploit requires underground work; minerals or organic deposits susceptible to be utilized as fertilizers; solid mineral fuels; petroleum and all solid, liquid or gaseous hydrocarbons; and the space located over national land territory, in the extension and under the terms established by International Law.

The Nation has full ownership over the waters of territorial sea in the extension and under the terms set forth by International Law; over internal waters; waters of lagoons and estuaries permanently or intermittently connecting with the sea; those of

natural inland lakes which are directly connected with streams constantly flowing; river waters and their direct and indirect tributaries, from the site of the riverbed where the first permanent, intermittent or torrential waters start to flow, to their mouth in the sea, lakes, lagoons or estuaries owned by the nation; those of constant or intermittent streams and their direct or indirect tributaries, whenever their beds along all the length of its way or in a portion thereof serve as a boundary line of national land territory or between two States,[13] or when they flow from one State to another or cross the Republic's boundary line; those of lakes, lagoons or estuaries whose beds, zones or streams are crossed by boundary lines dividing one or more States or between the Republic and a neighbouring country, or when the stream shoreline serves as a boundary between two States or between the

---

[13]   The Mexican Constitution contains the expression entidades federativas which refers to the States of the Federation and the Federal District. For the purposes of this translation the term States shall mean the States of the Federation and the Federal District, unless otherwise noted. It is also possible to use federal entities instead.

Republic and a neighbouring country; those of springs flowing from beaches, maritime areas, streams, basins, river beds, banks of lakes, lagoons or estuaries owned by the Nation, and the ones extracted from mines; and the streams, beds, or banks of lakes and interior streams in the extensions established by the Law. Underground waters may be freely extracted by artificial works and may be appropriated by the owner of the land, but whenever the public interest should so require it, or whenever other uses are affected, the President of the Republic[14] may regulate its extraction and use and may even establish banned zones, and the same may be done regarding other waters of national ownership. Any other waters not included in the foregoing listing shall be considered as an integral part of the land through which they flow or where their deposits are located, but should they be located in two or more lots, the use of such

---

[14]   The Mexican Constitution contains the term Ejecutivo Federal which in accordance with Article 80 refers to the President of the United Mexican States. Therefore it has been translated as President of the Republic.

waters shall be considered of public convenience and subject to provisions issued by the States.[15]

In the cases established in the two paragraphs hereinbefore, the Nation's dominion is inalienable and not subject to the statute of limitation and the exploitation, use or enjoyment of the resources in question by private persons or by companies incorporated in accordance with Mexican laws, may not be undertaken save by means of concessions granted by the President of the Republic and in accordance with the rules and conditions set forth by the Laws. Legal provisions regarding the exploitation and works in respect to minerals and substances referred in paragraph fourth, shall govern the performance and verification of such exploitation activities and works carried out or that should be carried out, from its effective date, regardless of the date the concessions were granted. Failure to comply therewith shall cause the cancellation of the concessions. The Federal Government has the

---

[15]   The terms used in this paragraph describing the different territorial elements are used as defined in the United Nations Convention of the Sea of 1982.

70   Political Constitution of the United Mexican States

right to establish and suppress national reserves and the corresponding declarations shall be made by the President of the Republic in the cases and under the conditions provided by the Law. In the case of petroleum and solid, liquid or gaseous hydrocarbons, or of radioactive minerals, neither concessions nor contracts shall be granted, nor shall the ones previously granted, if any, survive, and the Nation shall carry out the exploitation of such products under the terms set forth in the respective Law. It pertains exclusively to the Nation to produce, conduct, transform, distribute and supply electric power to provide a public service. In this matter no concessions shall be granted to private persons, and the Nation shall apply the goods and natural resources required to serve such purpose.

The use of nuclear fuels to generate nuclear energy and the regulation of its applications for other purposes pertains to the Nation too. Nuclear energy may only be applied to peaceful use.

Within an exclusive economic zone, situated outside the territorial sea and adjacent thereof, the Nation exercises the sovereign rights and jurisdiction set

forth in the laws enacted by Congress. The exclusive economic zone shall extend to two hundred nautical miles from the baselines from which the territorial sea is measured. In cases where said extension should produce a superposition over the exclusive economic zones of other countries, the boundaries of the respective zones shall be established as needed, through agreements with such countries.

The legal capacity to acquire domain over the Nation's lands and waters shall be governed by the following provisions:

I. Only Mexicans by birth or naturalization and Mexican companies have the right to acquire domain over lands, waters and their appurtenances or to obtain mining or water exploitation concessions. The State may grant the same right to foreigners, provided they agree before the Secretariat of Foreign Relations[16] to consider

---

[16] In international treaties signed by Mexico the term Secretaría de Relaciones Exteriores (Ministry of Foreign Affairs) is translated as Secretariat of Foreign Relations. This translation has elected to use the official term.

themselves as nationals in respect to such property and not to invoke the protection of their governments in reference to said property, under penalty, in case of defaulting the agreement, of forfeiting in benefit of the Nation, the property acquired by virtue thereof. In no case may foreigners acquire direct domain over lands and waters in a zone of one hundred kilometres along the international borders and fifty kilometres along the shore.

The State, according to domestic public interest and to reciprocity principles and at the discretion of the Secretariat of Foreign Relations, may authorize foreign States to acquire, at the site where Federal Powers permanently reside, private ownership over the real estate needed for the direct service of their embassies or delegations.

II. Religious associations created in accordance with the terms provided in Article 130 and its Law, shall have legal capacity to acquire, possess or manage exclusively, such property which is

essential for their purpose, subject to the requirements and restrictions set forth by the Law.

III. Public and private charitable institutions, whose object is to aid the needy, to carry out scientific research, to spread education, or to provide mutual aid to their members, or any other lawful purpose, may not acquire other real estate property than that which is essential to fulfill their object, and which is immediately or directly devoted thereto, subject to the provisions of the Law.

IV. Corporations may own rural lands but only in the extension necessary to fulfill their object.

In no case may such class of companies hold in ownership lands dedicated to agriculture, cattle breading, or forestry activities, in an extension greater than the respective equivalent to twenty five times the limits specified in section XV of this Article. The Law shall determine the capital structure and minimum number of partners of these corporations so that the lands owned

by them do not exceed, in relation to each partner, the limits of small rural property. In this case all individual stock ownership corresponding to rural lands shall be cumulative for computation purposes. Likewise, the Law shall establish the requirements for the participation of foreigners in said corporations.

The Law shall establish the means for registry and control required to comply with the provisions of this section.

V. Banks duly authorized, in accordance with the laws of credit institutions, can have capital imposed over urban and rural properties[17] as provided under said laws, but they may not hold in property as owners or in management, any more real estate than that which is entirely necessary to fulfill their direct object.

VI. The Federal District and the States, as well as the Municipalities of the Republic, shall have

---

[17]   It refers mainly to mortgage loans on urban and rural property.

full legal capacity to acquire and possess all the real estate required for public services.

The laws of Federation and of the States, within their respective jurisdictions, shall establish the cases in which public convenience and necessity require the taking of private property and in accordance with said laws, an administrative authority shall issue the corresponding statement. The price fixed as indemnification for the expropriated property shall be based on its registered value, as it appears in the records of the cadastral bureau or tax collection office, regardless of whether such value was reported by the owner, or tacitly accepted by him, for having paid his taxes according to such base. Only the increased or decreased value of said private property due to any improvements or to any deterioration occurring after the tax appraisal base was set, shall be the portion of its value subject to the assessment of experts and to judicial resolution. The same provision shall apply to any objects which value is not fixed in tax collection offices.

The exercise of actions corresponding to the Nation by virtue of this Article's provisions shall be enforced by judicial proceedings. During said proceedings and by order of the corresponding courts, which shall be issued within a maximum term of one month, administrative authorities shall occupy, manage, auction or sell the lands or waters in question along with their appurtenances. In no case may the said actions be undone by the same authorities who performed them, before a final judgment on the case is issued.

VII. The legal capacity of ejido and communal population centers is recognized and their ownership over the land is protected, whether for human settlements as well as for productive activities.

The Law shall protect the integrity of the lands of native indigenous groups.

The Law, considering the respect due to, and the need to strengthen the community life of,

ejidos and communal population centers, shall protect the land for human settlements and shall regulate the uses of the lands, forests and waters used by the community and the implementation of the promotional actions required to improve the quality of life of their inhabitants.

The Law shall regulate the exercise of comuneros[18] rights over their land and of each ejidatario over his parcel, respecting their will to adopt the conditions which best suit them to profit from the use of their productive resources. The Law shall likewise establish the procedures whereby ejidatarios and comuneros may associate among themselves or with the State or with third parties, and grant the use of their lands; and in the case of ejidatarios, the procedure to transfer their

---

[18] Ejidatario is the individual who is a member of an ejido. He is assigned a parcel of land to work, which transfer is subject to restrictions. Comunero is an individual member of a communal population center who participates in the exploitation of the rural land held in common by the community members, whose land disposition is also subject to restrictions.

parcel rights to members of their rural settlement. It shall also set forth the qualifications and procedures whereby the assembly of the ejido[19] shall grant the ejidatario private rights over his parceled land. In cases of transfer of parceled lands, the rights of first refusal set forth by the Law shall be respected.

Within a same rural settlement, no ejidatario may hold title over more land than the equivalent of five percent of the total land belonging to the ejido. In any case, title over land in favor of one sole ejidatario must adjust to the restrictions set forth in section XV.

The general assembly is the supreme authority of the ejido or communal population center, and it shall be organized and in charge of such duties

---

[19]   The general meeting of ejido members, similar to a corporation's stockholders meeting, is the supreme internal authority of the ejido and is governed by managing board of 3 members called Comisariado Ejidal; the same structure applies to the Indigenous Community. It is called Comisariado de Bienes Comunales, both institutions have also, a 3 member board of examiners called Consejo de Vigilancia.

as the Law establishes. The comisariado ejidal or comisariado de bienes comunales,[20] is a body democratically elected according to the terms provided by the Law. It is representing the population settlement and the one responsible to carry out the resolutions issued by the general assembly.

Restitution of lands, forests and waters to rural settlements shall be done according to the terms provided in the Law.

VIII. The following actions are decreed null and void:

a) All transfers of lands, waters and woodlands belonging to towns, villages, settlements or communities, made by political chiefs, State governors, or by any other State or local authority in contravention to the provisions set forth in the Law of June 25 of 1856, and any other relative laws and provisions;

---

[20]   Ejido o Comunero authority.

b) All concessions, arrangements or sales of lands, waters and woodlands, made by the Secretariat of Promotion or by the Secretariat of the Treasury, or by any other federal authority from the first day of December of 1876 to this date, under which ejidos, lots for distribution to rural communities, or lands of any other kind belonging to towns, villages, hamlets or communities, and rural settlements, shall have been invaded and unlawfully occupied;

c) All survey and demarcation procedures, transactions, transfers or auctions performed during the period referred under the foregoing section, by companies, judges or any other State or federal authorities, under which lands, waters and woodlands of ejidos, lands for common distribution, or lands of any other kind belonging to rural settlements, shall have been invaded or unlawfully occupied.

The only lands excepted from the nullity hereinbefore set forth are those which title deeds were executed in the land distributions made in accordance with the Law of June 25 of 1856

and in respect to which a person, under his own name, has held possession as owner for over ten years, provided the area does not exceed fifty hectares.

IX. The division or distribution made with an appearance of legitimacy among neighbors of a rural settlement and in which there was error or vice, may be annulled at the request of three fourths of the neighbors who are in possession of one fourth of the lands which were subject to the partition, or of one fourth of such neighbours, should they possess three fourths of the land.

X. (Repealed).

XI. (Repealed).

XII. (Repealed).

XIII. (Repealed).

XIV. (Repealed).

XV. Extensive land holdings are prohibited in the United Mexican States.

Small rural property is the land which area does not exceed one hundred hectares of irrigated or wetland prime soil, or its equivalent in other classes of soil, per individual.

For purposes of equivalence, one hectare of irrigated soil shall be equivalent to two of seasonal soil, to four of good quality pastureland and to eight of forest, woodland or pastureland in arid soil lots.

Rural private property is the lot which area does not exceed one hundred and fifty hectares per person when the ground is dedicated to cotton cultivation if the lands are irrigated; and lots of three hundred hectares when dedicated to cultivating banana, sugar cane, coffee, henequen, rubber, palm oil, wine grapes, olives, quinine, vanilla, cacao, agave,[21] prickly pear tree or fruit trees.

---

[21]  Agave is the succulent plant cultivated to produce Mezcal or Tequila, being the latter a designation of origin of a fermented drink constituting an important original Mexican export product.

Private property for grazing is land which shall not exceed an area necessary to maintain up to five hundred heads of large livestock or its equivalent in small livestock, per person, in accordance with the terms set forth by the Law, and subject to the foraging capacity of the soil.

When by reason of works of irrigation, drainage or any other works done by the owners or possessors of a rural private property, the quality of the soil shall have been improved, the land will still be considered small rural property, even if it exceeds, by virtue of the improvements made, the maximum limits set forth in this section, provided that the requirements established by the Law are met.

Whenever improvements are made to the soil of small grazing property whereupon such soil is dedicated to agricultural uses, the area so utilized may not exceed, as the case may be, the limits referred under paragraphs second and third of this section in respect to the quality of said lands before the improvement.

XVI. (Repealed).

XVII. The Congress of the Union and the States Legislatures, in their respective jurisdictions, shall enact laws establishing the procedures to partition and transfer the land extensions which exceed the limits set forth under sections IV and XV of this Article.

The surplus land shall be partitioned and sold by its owner within a term of one year from the date of the corresponding notice. If at the end of such term the surplus land has not been transferred, it shall be sold by public auction. In equal conditions, any pre-emptive rights set forth in the Law shall be respected.

Local laws shall organize the family estate, establishing the properties and goods which must compose it, under the grounds that it shall be inalienable and not subject to any attachments or liens.

XVIII. All contracts and concessions executed by previous governments, from the year of 1876

to date, which have resulted in hoarding of lands, waters and natural resources of the Nation, under one sole person or company are declared subject to review, and the President of the Republic is empowered to declare any of them null and void whenever they imply a serious prejudice to public interest;

XIX. On the grounds of this Constitution, the State shall support legal counseling for peasants and shall establish the measures required to provide agrarian justice in a prompt and honest manner, aiming to guarantee legal certainty in respect to the land tenure of ejidos, communal population centers and small rural property.

All issues pending or arising between two or more population settlements by cause of ejido and communal land boundaries, whatever their origin, are under federal jurisdiction; as well as any issues related to land tenure of ejidos and communal population centers. For this purposes, and in general, for ministering agrarian justice, the Law shall establish tribunals vested with

autonomy and full jurisdiction, composed by Magistrates[22] proposed by the President of the Republic and appointed by the Senate or, in the adjournments thereof, by the Permanent Commission.

The Law shall establish an agency to act as counsel for peasants in matters of agrarian justice, and

XX. The State shall promote the conditions to attain a comprehensive rural development, aimed at creating jobs and guaranteeing the welfare of the peasant population and their participation and integration to national development, and it shall foster agricultural, cattle raising and forestry activities for optimal uses of the land through infrastructure works, raw materials, credits, training services and technical assistance. The State shall likewise issue legislation to plan and organize agricultural

---

[22] The text in Spanish uses the term paraestatal. This term refers to several public agencies and corporations, which are under diverse levels of government control. Some dictionaries translate it as quasi-public corporations.

and cattle production, and the industrialization and marketing thereof, considering these as activities of public interest.

Article 28. In the United Mexican States monopolies, monopoly practices, state monopolies and tax exemptions are prohibited under the terms and conditions set forth by the laws. The same treatment shall be given to prohibitions on account of protections to industry.

Consequently, the Law shall severely punish and the authorities shall efficiently prosecute, any concentration or hoarding, in one or in few hands, of essential consumer products for the purpose of raising prices; any agreement, procedure or combinations, in whatever manner they may be made, of producers, manufacturers, merchants or service providing entrepreneurs, to prevent free market or competition among themselves, in order to force consumers to pay exaggerated prices, and in general, anything constituting an exclusive and undue advantage in favour of one or more specific persons in detriment to the public in general or to any social class.

The laws shall set forth the bases to establish maximum prices for articles, commodities or products considered essential for the country's economy or for popular consumers, as well as to impose the particularities to organize the distribution of said articles, commodities or products, in order to prevent unnecessary or excessive intermediation from causing insufficiencies in supply, as well as price increases. The Law shall protect consumers and encourage them to organize themselves to better protect their interests.

The functions performed in an exclusive manner by the State in the following strategic areas shall not constitute monopolies: postal service, telegraphs and radiotelegraphy; petroleum and any other hydrocarbons; basic petrochemical; radioactive minerals and generation of nuclear energy; electricity and any other activities explicitly established by the laws enacted by the Congress of the Union. Satellite communications and railways are priority areas for national development under the terms provided in Article 25 of this Constitution. The State,

by exercising its direction over them, shall protect the security and sovereignty of the Nation, and when granting concessions or permits, it shall maintain or establish its domain over the respective means of communications and transportation in accordance with relevant statutory laws.

The State shall have the agencies and companies required to efficiently manage the strategic areas are entrusted to it and in those prioritized activities where, according to the laws, it shall participate by itself or along with the private and social sectors.

The State shall have a central bank vested with autonomy in the exercise of its duties and management. Its main objective shall be to foster stability in domestic currency's purchasing power, thus strengthening the guidance of the State in respect to national development. No authority may order the bank to provide financing.

The functions performed in an exclusive manner by the State, through the central bank, in the strategic areas of coining money and issuance of bills, do

not constitute a monopoly. The central bank, under the terms provided by the laws and with the participation of other authorities with competent jurisdiction thereon, shall regulate exchange rates, as well as banking and financial services, and shall have the powers and authority required to carry out such regulating actions and to enforce their compliance. The management of the bank shall be entrusted to the persons appointed by the President of the Republic with approval by the Senate or the Permanent Commission, when applicable. They shall hold office for terms which duration and sequences are best suited to the autonomous exercise of their duties; they may only be removed for a serious cause and may not hold any other employments, offices or commissions, except for those in which they act in the name of the bank, and pro bono activities in teaching, scientific, cultural or charitable organizations. The persons in charge of the central bank may be subject to impeachment trials in accordance with the provisions set forth under Article 110 of this Constitution.

The associations of workers constituted to protect their own interests, and producers' cooperatives or associations that, in defense of their interests or of general interest, sell directly in foreign markets, any domestic or industrial products which are the main source of wealth in the region where they are produced and which are not essential consumer products, shall not constitute a monopoly, provided such associations are under the supervision or protection of Federal or State governments and that they have been previously authorized theretofor by their respective State legislature in each case. Such Legislatures, by themselves or at the proposal of the President of the Republic or the Governor, as appropriate, may repeal when public welfare should so require it, any authorizations granted to constitute the associations in question.

The privileges granted for a certain time to authors and artists for the production of their works and those granted to inventors for the exclusive use of their inventions and improvements, shall not constitute monopoly.

The State may, in accordance with the law and in case of general interest, grant concessions for the provision of public services or for the exploitation, use and profit of property owned by the Federation, save for the exceptions established by the laws. The laws shall set forth the requisites and conditions required to guarantee the efficiency of the services rendered and the social use given to such property, and shall prevent occurrences of hoarding which contravene public interest.

The subjection to a public service régime shall abide by the provisions of the Constitution and may only be carried out through a law.

Subsidies may be granted to economic priority activities, when such subsidies are of a general and temporary nature and do not impact substantially the Nation's finances. The State shall supervise their application and appraise their results.

Article 29. In case of invasion, serious disturbances of public peace, or any other event which may place society in severe danger or conflict, only the

President of the Republic, in accordance with the incumbents of the Secretariats of State and the Attorney General of the Republic, and with approval of the Congress of the Union, or in the latter's adjournments, of the Permanent Commission, may suspend throughout the country or in a certain place thereof, those constitutional rights which may constitute obstacles to rapidly and easily confront the situation; but such suspension must be only for a limited time and it must be issued by means of general provisions which must not be restricted to a certain individual. Should the suspension occur while Congress is in session, the latter shall grant such authorizations as it deems necessary, to enable the President of the Republic to face the situation, but should it take place during an adjournment period, the Congress shall at once be summoned to authorize such measures.

# CHAPTER TWO
## Mexican nationals

Article 30. Mexican nationality is acquired by birth or by naturalization.

A. The Mexican nationals by birth are:

I. Those born in the land territory of the Republic, regardless of their parents' nationality;

II. Those born in a foreign country from Mexican parents born in national land territory, or from a Mexican father born in national land territory, or from a Mexican mother born in national land territory;

III. Those born in a foreign country from Mexican parents by naturalization, or from a Mexican father by naturalization, or from a Mexican mother by naturalization; and

IV. Those born on Mexican vessels or aircrafts, whether war or merchant ones.

B. The Mexicans by naturalization are:

I. Those aliens who obtain from the Secretariat of Foreign Relations a certificate of naturalization.

II. Any alien woman or man who marries a Mexican man or woman, who has or who establishes residence in national land territory and complies with the requirements set forth by the Law for that purpose.

Article 31. Mexicans have the following duties:

I. To see that their children or wards attend public or private schools to obtain pre-school, elementary and high school education and to receive military education in the terms set forth by the Law;

II. To be present on the days and during the hours designated by the City Hall of the place where they reside, to receive civic and military instruction which shall provide them with the abilities to exercise citizen's rights, to be skilled

in handling weapons and knowledgeable in respect to military discipline;

III. To enroll and serve in the National Guard, in accordance with the respective organic law, in order to secure and defend the independence, land territory, honor, rights and interests of their homeland, as well as domestic tranquillity and order; and

IV. To contribute to the public expenditures of the Federation, of the Federal District or of the State and Municipality where they reside, in the proportional and equitable manner provided by the laws.

Article 32. The Law shall regulate the exercise of the rights granted by Mexican legislation to Mexicans who possess other nationality and shall issue provisions to avoid conflicts of double nationality.

The exercise of offices or functions which, as provided in this Constitution, require the incumbent to be a Mexican by birth, is reserved for those who fill such qualification and do not acquire other nationality. This reservation is also applicable to

cases established in other laws enacted by the Congress of the Union.

No alien may serve neither in the Army nor in the police or public security forces in times of peace. Only Mexicans by birth may be active members of the Army in times of peace, and of the Navy or Air Force at any time, or hold any office or commission therein.

The same requirement of being Mexican by birth shall be an indispensable qualification for captains, pilots, chiefs, machinists, and all crew members of any merchant vessel or aircraft under the Mexican flag or insignia. Such status shall also be a necessary qualification to hold the offices of port authority and all steering services, as well as the office of airport commander.

Under equal circumstances Mexicans shall be preferred over aliens for concessions of all sorts and for all government jobs, offices or government commissions where the qualification of citizenship is not indispensable.

## CHAPTER THREE
Aliens

Article 33. Aliens are the ones who do not have the qualifications set forth in Article 30. They are entitled to the constitutional rights granted under Chapter I, Title First of this Constitution; but the President of the Republic shall have the exclusive power to compel any alien whose permanence he may deem inconvenient, to depart from land territory immediately and without any previous hearing.

In no way may aliens intervene in the country's domestic political affairs.

# CHAPTER FOUR
Mexican citizens

Article 34. The Mexican citizens of the Republic are those men and women who have the status of Mexicans, and also fulfil the following requirements:

I. To have attained 18 years of age, and

II. To have an honest way of living.

Article 35. Citizens have the following prerogatives;

I. To vote in popular elections;

II. To be elected for public office and to be appointed for any other job or commission, provided that the qualifications set forth in the Law have been filled;

III. To freely and individually associate to participate in a peaceful manner in the country's political affairs;

IV. To take arms in the Army or the National Guard to defend the Republic and its institutions according to the terms provided by the laws; and

V. To exercise the right to petition in all sorts of issues.

Article 36. The citizens of the Republic have the following duties:

I. To register in the Municipality's cadastre, the property they hold, the industry, profession or job by which they earn their living; as well as to register themselves in the National Registry of Citizens, in accordance with the terms provided by the laws.

The permanent operation and organization of the National Registry of Citizens and the issuance of the document evidencing Mexican citizenship are public interest services, and constitute a duty

both of the State and of the citizens, in the terms provided by the Law;

II. To enroll in the National Guard;

III. To vote in popular elections under the terms set forth by the Law;

IV. To hold popular election offices of the Federation or of the States, which shall never be performed for free; and

V. To hold the office of councilman in the Municipality where he resides, and to perform electoral and jury duties.

Article 37.

A) No Mexican by birth may be deprived of his nationality.

B) Mexican nationality by naturalization shall be forfeited in the following cases:

I. For voluntarily acquiring a foreign nationality, or for representing himself as an alien in any public instrument, for using a foreign passport,

or for accepting or using nobility titles which imply submission to a foreign State, and

II. For residing in a foreign country during five continuous years.

C) Mexican citizenship is forfeited:

I. For accepting or using nobility titles of foreign governments;

II. For voluntarily rendering official services to a foreign government without authorization by the Congress of the Union or its Permanent Commission;

III. For accepting or wearing any foreign medals without permission from Congress of the Union or its Permanent Commission;

IV. For accepting titles or functions from the government of another country without previous authorization by the Congress of the Union or its Permanent Commission, except for literary, scientific or humanitarian titles which may be accepted unrestrictedly;

V. For providing assistance to a foreigner or to a foreign government in any diplomatic claim or before an international tribunal against the Nation; and

VI. In any other cases provided by the laws.

In the case of sections II to IV of this Chapter, the Congress of the Union shall establish in the respective Law, the cases of exception where the authorizations and licenses shall be deemed granted, upon the sole request submitted by the interested party, once the term established theretofor has elapsed.

Article 38. Citizens' rights or prerogatives are suspended:

I. For failure to comply, without justifiable cause, with any of the obligations imposed by Article 36. This suspension shall be for a term of one year and shall be in addition to the imposition of any other penalties set forth by the Law for the same fact;

II. For being subject to criminal proceedings for a crime punished by imprisonment, which suspension shall be computed from the date of the order for commitment;

III. While the imprisonment term imposed is being served;

IV. For vagrancy or habitual drunkenness, determined in accordance with the terms provided by the laws;

V. For being a fugitive from justice, which suspension shall be computed from the date of the warrant of arrest until criminal action is bared by the statute of limitations; and

VI. For final and binding judgement imposing said suspension as a penalty.

The Law shall set forth the cases where citizen's rights are forfeited, and any other cases where said rights are suspended and the manner to reinstate such rights.

# TITLE TWO

## CHAPTER ONE
## National sovereignty and form of government

Article 39. National sovereignty is vested essentially and originally in the people. All public power derives from the people and is instituted for their benefit. The people have at all times the inalienable right to alter or amend their form of government.

Article 40. It is the will of the Mexican people to constitute a representative, democratic and federal Republic composed by States, free and sovereign in all matters concerning their internal affairs; but united in a federation established according to the principles of this fundamental law.

Article 41. The people exercise their sovereignty through the Powers of the Union, in the cases under their jurisdiction, and through the Powers of the

States concerning their internal régimes, in the terms respectively established by this Federal Constitution and the particular constitutions of the States, which may never contravene the provisions of the Federal Pact.

The renewal of the Legislative and Executive Branches shall be made through free, genuine and periodic elections, subject to the following bases:

I. Political parties are entities of public interest; the Law shall determine the ways in which they shall participate in the electoral process. National political parties shall be entitled to participate in State, municipal and Federal District elections.

The purpose of political parties is to promote the participation of the people in democratic life, to contribute to integrate national representation and as citizens' organizations, to enable citizens' access to the exercise of public power in accordance with the programs, principles and ideas they propose and through general, free, secret and direct elections. Only citizens may freely and individually affiliate to

political parties; therefore, it is forbidden the intervention of guild organizations or with a social object different to the creation of parties and any form of corporative affiliation.

Electoral authorities can only intervene in the internal affaires of the political parties in the terms set forth by this Constitution and the Law.

II. The Law shall guarantee that national political parties can count, in an equitable manner, with the resources needed to perform their activities and it shall set forth the regulations to which the financing of political parties and their election campaigns must be subjected, and it must guarantee that public resources prevail over those of private origin.

Public financing for political parties maintaining their registry after each election, shall be composed with the ministrations allotted to sustain their permanent regular activities and the ones tending to obtain votes during election processes and those of specific nature. It shall be granted

in accordance with the following provisions and as established in the law:

a) Public financing for the sustenance of their permanent regular activities shall be established annually, multiplying the total number of citizens registered in the electoral roll by 75% of the daily minimum wages in vigor for the Federal District. The 30% of the resulting amount shall be distributed between the political parties in an equal manner and the remaining 70% according to the percentage of votes which they obtained in the previous Deputies election.

b) Public financing for activities intended to obtain votes during the year in which the President of the Republic, Senators and Federal Deputies are to be elected, shall be equivalent to the 50% of public financing corresponding to each political party for regular activities on that same year; when only Federal Deputies are to be elected, it shall be equivalent to the 30% of said financing for regular activities.

c) Public financing for specific activities related to education, training, socio-economic and political investigation, as well as editorial tasks, shall be equivalent to the 3% of the total sum of the corresponding public financing each year for regular activities. The 30% of the resulting amount shall be distributed between the political parties in an equal manner and the remaining 70% according to the percentage of votes which they obtained in the previous Deputies election.

The Law shall set forth the criteria to determine the limitations for political parties' expenditures in the selection of their candidates and their election campaigns; it shall establish the maximum amounts for monetary contributions from their supporters, whose total amount shall not annually exceed, for each party, the 10% of the expenditures' limit established for the last presidential campaign; it shall also set forth the procedures to control and supervise the origin and use of all the resources available to them and the penalties to be imposed for failure to comply with these provisions.

Likewise, the Law shall establish the procedure for the liquidation of liabilities of the parties that loose their registry and the cases in which their goods and remnants shall be adjudicated to the Federation.

III. National political parties shall have the right to the permanent use of the media.

Subdivision A. The Federal Electoral Institute shall be the only authority for the administration of the time the State shall have on radio and television destined to its own ends and the exercise of the national political parties' rights, according to the following and the provisions of the laws:

a) From the beginning of the pre-campaigns until the day of the election, the Federal Electoral Institute shall have forty eight minutes a day, which shall be distributed in two up to three minutes for each hour of transmission in every radio station and television channel, at the hour referred to in section d) of this Subsection;

b) During their pre-campaigns, the political parties shall have, as a whole, one minute for each hour of transmission on every radio station and television channel; the remaining time shall be used according to the provisions of the Law;

c) During electoral campaigns, at least 85% of the total available time to which refers section a) of this Subsection shall be destined to cover the political parties' right;

d) The transmissions in every radio station and television channel shall be distributed within the programming time between 06:00 and 24:00 hours;

e) The time established as political parties' right shall be distributed between them according to the following: 30% in an equitable way and the remaining 75% according to the results of the previous election for Federal Deputies;

f) Each national political party not represented at the Congress of the Union shall have for radio and television only the corresponding part to the

equitable percentage established in the previous section, and

g) Notwithstanding the previsions of Subsections A and B of this Basis and out of the federal campaigns and pre-campaigns periods, the Federal Electoral Institute shall have up to 12% of the total time the State disposes of in television, according to the laws and under any form; from that total, the Institute shall distribute between the national political parties, in an equal way, 50%; the remaining time shall be used for its own ends or those of other electoral authorities, federal or local. Each national political party shall use its corresponding time in a monthly, five minute long program and the rest in twenty second long individual spots. In any case, the transmissions to which this section refers to shall take place in the hour specified by the Institute according to section d) of this Subsection. In special situations, the Institute shall dispose of the time for parties' messages in favor of one specific party, when it is justified to do so.

In no time the political parties shall be able to hire or acquire, by themselves or through a third party, time in any form of radio and television.

No artificial or natural person, individually or through a third party, can hire radio or television propaganda in order to influence on the people's electoral preferences, nor in favor or against political parties or candidates to popular election office. The transmission throughout the national territory of this sort of messages hired abroad is forbidden.

The dispositions contained in the two previous paragraphs shall be fulfilled in the States and the Federal District according to the applicable laws.

Subsection B. For electoral ends in the States, the Federal Electoral Institute shall administer the times corresponding to the Federal State in radio and television in the stations and channels of the corresponding State, according to the following and the previsions of the Law:

a) In the cases of local electoral processes with electoral journeys coincident with the federal,

the assigned time in each State shall be comprised within the available total according to sections a), b) and c) of Subsection A from this Basis;

b) For the rest of the electoral processes, the assignation shall be made according to the Law, following the criteria from this constitutional Basis, and

c) The distribution of times between the political parties, including the ones with local registry, shall be made according to the criteria established on Subsection A of this Basis and the previsions of applicable laws.

Whenever the Federal Electoral Institute considers that the total time in radio and television to which this and the previous Subsections refer is not enough for its ends or those of other electoral authorities, it shall determine the necessary steps to cover the remaining time, according to the faculties conferred to it by the Law.

Subsection C. In the electoral or political propaganda that they publish, the political

parties shall not use expressions which denigrate the institutions or the parties themselves, or that slander the people.

During the time comprised by the federal and local electoral campaigns, until the end of the respective electoral journey, diffusion of governmental propaganda, whether from the federal and local Powers, or from the Municipalities, government entities of the Federal District, the Delegations thereof and any other public entity, shall be suspended. The only exceptions to this shall be the information campaigns divulged by the electoral authorities, those related to educational or public health services, or the necessary for civil protection in case of an emergency.

Subsection D. Infractions to the previsions of this Basis shall be sanctioned by the Federal Electoral Institute by means of prompt proceedings which can include the order of immediate cancellation of radio and television transmissions, grantees and concessionaires, which violate the Law.

IV. The Law shall establish the terms for the partisan procedures of selection and nomination of candidates to public offices, as well as the regulations for electoral campaigns and pre-campaigns.

The length of the campaigns in the election year for President of the Republic, Senators and Federal Deputies shall be of ninety days; in the year in which only Federal Deputies are to be elected, the campaigns shall last sixty days. In any case the pre-campaigns shall last more than the two thirds of the time of the electoral campaigns.

If the parties or any other natural or artificial person violates these dispositions, they shall be penalized according to the Law.

V. Organizing federal elections is a State function carried out through an autonomous public entity called Federal Electoral Institute; such entity has been vested with legal capacity and patrimony of its own, and is composed with the participation

of the Legislative Branch of the Union, national political parties and citizens, in accordance with the terms provided by the Law. The principles that shall govern the exercise of this State function are: certainty, legality, independence, impartiality and objectivity.

The Federal Electoral Institute shall be an authority in this matter, and shall be independent as to its decisions and operations, and shall be professional in regards to its performance; its structure shall have managing, executive, technical and supervising bodies. The General Council shall be its highest managing body and shall be composed by one Chairman and eight Electoral Councillors, and there shall also be councilors from the Legislative Power, representatives from political parties and an Executive Secretary, all of whom shall be present in the meetings and entitled to be heard but not to vote. The Law shall establish the rules for organizing and operating such bodies, as well as the chain of command among them. Executive and technical bodies shall have the necessary

qualified staff to provide professional election services. A General Comptrollership, technically and operatively autonomous, shall be in charge of supervising all of the Institutes' incomes and expenditures. The provisions in the Election Law and the Statute, which under the grounds of the aforesaid law shall be approved by the General Board, shall govern the labor relations with the employees of the Federal Electoral Institute. The supervising bodies shall be constituted by a majority of representatives of national political parties. The governing boards for voting booths shall be composed by citizens.

The Chairman shall remain in his office for six years and can be reelected once. The Electoral Councillors shall remain in their office for nine years without reelection and shall be renewed in a stepped manner. According to the case, the Chairman and the Councillors shall be elected successively by the vote of two third of the individuals in the Chamber of Deputies, at the proposal of the parliamentary groups preceded by a social consultation. In the complete

absence of the Chairman or any of the Electoral Councillors, the substitute shall be elected to conclude the period of vacancy. The Law shall set forth the corresponding regulations and proceedings.

The Chairman and the Electoral Councillors may not hold any other job, duty or commission with the exception of those where they act in representation of the General Council and the ones performed for academic, scientific, cultural, research, or charitable associations in a pro bono basis. The remuneration received by the Chairman and the Electoral Councillors shall be equal to the one provided for the Justices of the Nation's Supreme Court of Justice.

The Head of the General Comptrollership of the Institute shall be appointed by the Chamber of Deputies by the vote of two thirds of the individuals there at the proposal of public institutions of higher education, in the form and terms provided by the Law. He shall remain in office for six years and can be reelected once.

He shall be administratively ascribed to the chairmanship of the General Council and shall keep the necessary technical coordination with the Supervising Superior Entity of the Federation.

The Executive Secretary shall be proposed by the chairman and selected by the vote of two thirds of the General Council's members at the proposal of the Chairman.

The Law shall establish the qualifications in order to be eligible for the office of Chairman of the General Council, Electoral Councillors and Executive Secretary of the Federal Electoral Institute; those who had held the office of Chairman, Electoral Councillors and Executive Secretary cannot hold, within the next two years after their retirement, offices in the public Power in whose election they participated.

The councillors from the Legislative Power shall be proposed by the parliamentary groups and affiliated to a political party in any of the Houses. There shall only be one councillor for each

parliamentary group, regardless of his recognition by both Houses of the Congress of the Union.

Besides of the activities established by the Law, the Federal Electoral Institute shall be in charge, in a comprehensive and direct manner, of the activities related to civic training and education, election geography, rights and prerogatives of political parties and groups, the registry of qualified electors and list of electors, printing of election material, preparation of the elections, computation of results in accordance with the terms established in the Law, declaration of validity and granting of election certificates for elections of deputies and senators, computation of votes for the election for President of the United Mexican States in each single-member election district, as well as regulating election observers, and public opinion surveys or polls with electoral purposes. The meetings of all directive collegiate bodies shall be public, as provided by the Law.

The supervision of the national political parties' finances shall be in charge of a technical agency

of the General Council of the Federal Electoral Institute, autonomous in operation, whose Head shall be appointed by the vote of the two thirds of the Council itself at the proposal of the Chairman. At the performance of its attributions the technical agency shall not be limited by banking, fiduciary and tax secrecy.

The technical agency shall be the channel so that the proper authorities concerning partisan supervising in the States can overcome the limitation pointed out in the previous paragraph.

The Federal Electoral Institute shall assume by an agreement with the proper authorities of the States who require it, the organization of local electoral processes in the terms set forth by the applicable Law.

VI. To guarantee the constitutional and legal principles in election acts and resolutions, an appeal system shall be established in accordance with the terms set forth by this Constitution and the Law. As provided under Article 99 of this

Constitution, this system shall make final and conclusive, the various stages of the election processes, and shall guarantee protection for citizens' political rights to vote, to be voted for, and to associate.

In election matters, filing any constitutional or legal appeal shall not produce a stay of execution in respect to the resolution or the act contested.

# CHAPTER TWO
# Parts composing the Federation and national land territory

Article 42. National land territory is composed by:

I. The land territory of all the portions constituting the Federation;

II. The territory of the islands, including the reefs and keys in adjacent seas;

III. The territory of the islands of Guadalupe and Revillagigedo located in the Pacific Ocean;

IV. The continental shelf and the seabed and subsoil of the submarine areas of the islands, keys and reefs;

V. The waters of the territorial seas in the extension and under the terms established by International Law and domestic maritime laws;

VI. The air space located above national land territory, in the extension and with the particularities established by International Law.

Article 43. The parts that compose the Federation are the States of Aguascalientes, Baja California, Baja California Sur, Campeche, Coahuila, Colima, Chiapas, Chihuahua, Durango, Guanajuato, Guerrero, Hidalgo, Jalisco, México, Michoacán, Morelos, Nayarit, Nuevo León, Oaxaca, Puebla, Querétaro, Quintana Roo, San Luis Potosí, Sinaloa, Sonora, Tabasco, Tamaulipas, Tlaxcala, Veracruz, Yucatán, Zacatecas and the Federal District.

Article 44. Mexico City is the Federal District, the seat of the Powers of the Union and the Capital city of the United Mexican States. It shall be composed with the territory it currently has and in the event that Federal Powers should relocate elsewhere, it shall become the State of El Valle de Mexico, and shall have the boundaries and extension assigned thereto by the Congress of the Union.

Article 45. The States shall keep their present boundaries and areas, provided no difficulties arise in respect to thereof.

Article 46. The States may settle amongst themselves through amicable agreements their respective boundaries, but such agreement shall not be effective unless authorized by the Senate.

If there is no agreement, any of the parties involved can appeal to the Senate, who shall proceed as provided by Article 76, part eleventh of this Constitution.

Whatever the Senate may resolve it shall be definitive. At the request of the interested party, the Supreme Court of Justice of the Nation shall revise all conflicts brought on by the decree of the Senate through a constitutional controversy.

Article 47. The State of Nayarit shall have the territorial area and boundaries which presently comprise the territory of Tepic.

Article 48. The islands, keys and reefs of adjacent seas belonging to national land territory, the continental shelf, the sea beds of the islands, keys and reefs, the territorial seas, inland marine waters, and the space over national land territory, shall

depend directly from the Government of the Federation, with the exception of those islands over which the States have up to the present, exercised their jurisdiction.

# TITLE THREE

## CHAPTER ONE
### The division of Powers

Article 49. The Supreme Power of the Federation is divided for its exercise into the Legislative, Executive and Judicial branches.

Two or more of these Powers may not be united in one single person or corporation, nor shall the Legislative Branch be vested in one single person, except for the case where extraordinary powers are granted to the President of the Republic as provided in Article 29. In no other case, except as provided under the second paragraph of Article 131, shall extraordinary powers be granted to legislate.

# CHAPTER TWO
## The Legislative Branch

**Article 50.** The Legislative Branch of the United Mexican States is vested in a General Congress which shall be divided into two Houses, one of deputies and the other one of senators.

## Section First
### Election and installation of Congress

**Article 51.** The House of Deputies shall be composed with representatives from the Nation who shall all be elected every three years. For each incumbent deputy, there shall be a substitute.

**Article 52.** The House of Deputies shall be composed by 300 deputies elected by relative majority in single-member election districts and by

200 deputies elected by proportional representation, through the system of Regional Lists in five multi-member election districts.

Article 53. The territorial boundaries of the 300 single-member election districts shall be the result of dividing the total population of the country into the districts selected. The distribution of single-member election districts into the States shall be carried out taking into account the last general population census, but the representation per State shall never be less than two deputies elected by majority vote.

For the election of such 200 deputies in accordance with the principle of proportional representation and Regional Lists system, five multi-member election districts shall be constituted throughout the country. The Law shall set forth the manner to establish the boundaries thereof.

Article 54. The election of 200 deputies under the principle of proportional representation and the apportionment process by Regional Lists, shall be

subject to the following principles and to the provisions set forth by the Law:

I. To register its Regional Lists, a political party must prove it participates with candidates to the House of Deputies to be elected by relative majority in at least two hundred single-member election districts;

II. Every political party attaining at least two percent of the total votes cast for the Regional Lists of multi-member circumscriptions shall be entitled to have deputies under the principle of proportional representation;

III. The political party complying with the foregoing two principles, regardless of and in addition to, the certificates of relative majority obtained by its candidates, shall have appointed, on the grounds of the principle of proportional representation and in proportion to the votes cast in for it throughout the country, the number of representatives in its Regional List corresponding thereto in each multi-member circumscription. The selection for such

appointment shall be made in the order of preference that candidates' names have in the respective lists;

IV. No political party shall have more than 300 deputies under both principles;

V. In no case may a political party have a larger number of deputies under both principles, which would represent a percentage in respect to the House's total, of eight points over its national percentage of votes cast. This principle shall not apply to any political party whose victory in single-member election districts grants it a percentage of seats of the House's total seats, which exceed the sum of the national percentage of votes cast in for it, plus an eight percent; and

VI. Under the terms established in the preceding sections III, IV and V of this Article, the House seats intended for proportional representation deputies, remaining after apportioning the ones corresponding to the political party that qualified as provided in sections IV or V, shall be apportioned to the remaining political parties

entitled thereto in each multi-member circumscription, in direct proportion to the respective national votes, effectively cast in their favor. The Law shall develop the regulations and formulas to these ends.

Article 55. The following qualifications are required in order to be a deputy:

I. To be a Mexican citizen by birth, with legal capacity to exercise his rights;

II. To be at least twenty one years of age by the day of the election;

III. To be a native of the State in which the election is held or a resident thereof, with effective residence there for more than six months prior to the date of the election.

To qualify for registration in the lists of multi-member election circumscriptions, as a candidate to the House of Deputies, it is required to be a native of any of the States comprised within the circumscription where the election shall take place, or a resident thereof, with effective

residence there for more than six months prior to the date of the election.

Residence is not lost in cases where absence is by reason of serving as holder of an elective public office;

IV. Not to be in active service in the federal army nor to hold a command in the police or rural security forces of the district where the election is to be held, at least ninety days before the date of the election;

V.- Not to be incumbent of any autonomous organism as provided by this Constitution, nor to be State Secretary or Undersecretary, nor incumbent of any decentralized body of the federal public administration, unless he has definitely resigned from office ninety days before the day of the election.

Not to be a Justice of the Supreme Court of Justice of the Nation, nor Magistrate or Secretary of the Electoral Tribunal of the Federal Judicial Branch nor Chief Councilor or Electoral Councilor

of the General, local or district counsels of the Federal Electoral Institute, nor Executive Secretary, Executive Director or high rank professional personnel thereof, unless they had resigned definitely from office three years before the day of the election.

The Governors of the States and the Head of Government of the Federal District may never be elected in the States under their respective jurisdiction during their term in office, even if they have definitely resigned from office.

The States' Secretaries of the Interior, the Secretary of the Interior of the Federal District, the Federal or State Magistrates and Judges, the Magistrates and Judges of the Federal District, as well as the Municipal Presidents and incumbents of some political-administrative entity in the Federal District, cannot be elected in the States where they exercise their respective duties, unless they have definitely resigned from office ninety days before the election.

VI. Not to be a minister of any religious creed; and

VII. Not to be subject to any disqualifications set forth in Article 59.

Article 56. The Senate House shall be composed with one hundred and twenty eight senators of whom two shall be elected in each State and in the Federal District under the principle of relative majority and one shall be apportioned to the first minority. To these ends, political parties must register a list with two sets of candidates. The Senate seat for the first minority shall be apportioned to the set of candidates heading the list of the political party that shall have attained by itself, the second place in the number of votes cast in the corresponding State.

The remaining thirty two senators shall be elected under the principle of proportional representation, through the system of lists voted in one sole national multi-member circumscription. The Law shall establish the regulations and formulas for these purposes.

The Senate House shall be totally renewed every six years.

Article 57. For each incumbent senator an alternate one shall be elected.

Article 58. The qualifications necessary to be a senator shall be the same as those necessary to be a deputy, except for the one in respect to age, which requires the candidate to be over 25 years of age on the day of the election.

Article 59. Senators and deputies to the Congress of the Union may not be reelected for the immediately following term.

Alternate senators and deputies may be elected as incumbents for the immediately following term, provided they have not held office as incumbents; but incumbent senators and deputies may not be elected for the immediately following term as alternates.

Article 60. The public entity established under Article 41 of this Constitution, in accordance with the provisions set forth by the Law, shall declare the validity of the elections for deputies and senators in each single-member election district and in each

of the States and the Federal District. It shall grant the respective certificates to the sets of candidates who have obtained a majority of votes and shall designate the senators pertaining to the first minority, as provided in Article 56 of this Constitution and in the Law. Likewise, it shall declare the validity and the designation of deputies under the principle of proportional representation, as provided in Article 54 of this Constitution and in the Law.

The resolutions on the declaration of validity, the issuance of certifications and the designation of deputies or senators may be appealed before the Regional Chambers of the Electoral Tribunal of the Federal Judicial Branch in the terms set forth by the Law.

The resolutions issued by the Houses referred in the preceding paragraph, may be reviewed exclusively by the Superior Chamber of the Electoral Tribunal, through the appeal procedures that political parties may file, only if the election's results can be amended by the grievances alleged. The decisions issued by the House shall be final. The Law shall

set forth the premises, requirements for admissibility and proceedings for these reviews.

Article 61. Deputies and senators shall be privileged from being held accountable for their opinions in the performance of their office and may never be questioned for such opinions.

The speakers of each House shall oversee that their members' constitutional immunity and the inviolability of the legislative Houses where they hold sessions, is respected.

Article 62. During his term in office, no incumbent deputy or senator shall hold any other commission or employment of the Federation or the States for which a salary is paid, without previous authorization from his respective House; but his functions as representative shall thereupon cease during the term he holds the new office. The same rule shall apply to alternate deputies and senators when serving as incumbents. Failure to comply with this provision shall be punishable by removal from the office of deputy or senator.

Article 63. Both Houses shall not open their sessions nor discharge the duties of their office without the attendance, in each House, of more than half of the total number of its members; but those in attendance in either House must assemble on the day appointed by Law and compel the absentees to attend within the next thirty days immediately following, under prevention that, should they not appear, it shall be understood by that sole fact, that they do not accept their office, whereupon their alternates shall be summoned and must appear within an equal term, but should they not appear the office shall be declared vacant.

All the vacancies of deputies and senators of the Congress of the Union at the beginning of the legislature, as well as the vacancies during its exercise, shall covered as follows: vacancies of deputies and senators of the Congress of the Union by relative majority, by the respective House who shall summon to extraordinary elections, in accordance with section IV of Article 77 of this Constitution; a vacant deputy office for a deputy elected under the principle of proportional representation must be filled by the next set of

candidates of the same party who are next in order in their respective regional list, after the deputies initially corresponding to such political party were apportioned; a vacancy for a senator elected under the principle of proportional representation must be filled by the next set of candidates of the same party who are next in order in their respective national list, after the senators initially corresponding to such political party were apportioned; and a vacant senator office for a senator elected under the first minority principle must be filled by the second set of candidates of the same party who are next in order in their respective list for that State.

It is also understood that deputies or senators failing to attend for ten consecutive days, without good cause or previous leave of absence from the Speaker of their respective House, which leave must be notified to the House, shall be deemed to have renounced to attend until the next term, whereupon the alternates shall be summoned to take office.

Should there not be a quorum to install either House or to perform their functions once installed,

the alternates shall be summoned to attend as promptly as possible to discharge the duties of the office while the aforesaid thirty days' term elapses.

Any individual who has been elected deputy or senator and does not attend to discharge the duties of his office without good cause, as determined by his respective House, within the term set forth in the first paragraph of this Article, shall be liable and subject to the penalties established by the Law. National political parties shall also be liable and subject to the penalties set forth by the Law if, after having entered candidates to an election for deputies or senators, they decide its elected members shall not attend to perform their respective elective duties.

Article 64. Deputies and senators who fail to attend a session without good cause or leave of absence from the Speaker of their respective House shall not be entitled to their remuneration for the day of absence.

Article 65. The Congress shall assemble from September 1st of each year, for a first term of regular

sessions and from February 1st of each year for a second term of regular sessions.

In both session terms the Congress shall be devoted to study, discuss and vote the bills submitted thereto and to decide any other affairs pertaining to it according to this Constitution.

In each regular session term the Congress shall preferably devote itself to the issues established by its Organic Law.

Article 66. Each period of regular sessions shall continue for the time necessary to deal with the matters mentioned in the foregoing Article. The first period of sessions may not be extended beyond December 15th of the same year, except when the President of the Republic takes office, in the date provided by Article 83, in which case, the sessions may be extended until December 31st of such year. The second period of session may not be extended beyond April 30th of said year.

Should both Houses not agree on closing the sessions before the dates specified, the President of the Republic shall decide.

Article 67. The Congress or just one of the Houses, when dealing with an issue under its exclusive jurisdiction, shall assemble in extraordinary session each time the Permanent Commission summons them for such purpose; but in both cases, they shall only devote themselves to the issue or issues submitted by the Permanent Commission. These matters shall be set forth in the respective summons.

Article 68. Both Houses shall be located in the same place and shall not relocate to another one without first agreeing on the relocation and on the time and manner to carry it out, designating the same place for the assembly of both Houses. If both Houses have agreed on relocating but defer as to the time, manner or place, the President of the Republic shall decide the question by choosing one of the two proposals. Neither House shall adjourn for more than three days, without the consent of the other one.

Article 69. At the opening of the regular sessions of Congress, the President of the Republic shall provide information in writing on the general state

of the country's public administration. At the opening of extraordinary sessions of the Congress, or only of one of its Houses, the speaker of the Permanent Commission shall inform as to the reasons or causes leading to such summons.

Each of the Houses shall analyze the report and can request to the President of the Republic to expand on the information through written questions and to summon the Secretariats, the Attorney General and the chairmen of decentralized entities, whom shall appear before the Congress to report under oath. The Law and regulations of the Congress shall rule this attribution.

Article 70. Every resolution by the Congress shall have the nature of a law or a decree. Laws or decrees shall be communicated to the President of the Republic signed by the speakers of both Houses and by a secretary of each of them, and shall be promulgated in the following manner: "The Congress of the United Mexican States decrees: (text of the law or decree)".

The Congress shall enact the law that shall govern its internal operations and structure.

The Law shall establish the manners and procedures to group deputies according to their political party affiliation, in order to guarantee free speech to all ideological positions represented in the House of Deputies.

This Law cannot be vetoed nor shall it require promulgation by the President of the Republic to be in force.

## Section Second
### The initiation and enactment of laws

Article 71. The right to initiate laws or decrees corresponds to:

I. The President of the Republic;

II. The deputies and senators to the Congress of the Union; and

III. The States Legislatures.

The bills initiated by the President of the Republic, by the States Legislatures or by the delegations thereof, shall be referred to a committee; those introduced by deputies or senators shall be subject to the procedures set forth by the Rules of Procedure.

Article 72. Bills whose approval into law or decree is not the exclusive right of one of the Houses, shall be discussed successively by both, abiding by the Rules of Procedure in respect to form, intervals and manner to act in debates and casting of votes.

A. After a bill is approved in the House where it originates, it shall pass to the other House for discussion and if approved, it shall be forwarded to the President of the Republic; and if he has no objections, he shall immediately publish it.

B. A bill forwarded to the President of the Republic which is not returned with his objections to the House where it originated within ten business days after it was presented to him, shall be deemed approved; unless during the said term, the Congress shall have closed or adjourned its sessions, whereupon the return shall be made the first business day that Congress next assembles.

C. Any bill rejected in whole or in part by the President of the Republic shall be returned with his objections to the House where it originated, which shall again reconsider it, and if confirmed

by two thirds of the total number of votes, it shall pass again to the other House for review; and if approved by the same majority it shall become a law or decree and return to the President of the Republic for promulgation.

Votes on laws and decrees shall be cast by roll call.

D. Should any bill be rejected in whole by the reviewing House, it shall be returned to the House where it originated with the objections made thereto. It shall be again discussed in said House and if approved by an absolute majority of its members present, it shall return again to the House that rejected it, which shall reconsider it and should it be approved by the same majority, it shall pass to the President of the Republic for the purposes of section A. Otherwise, it shall not be reintroduced in the same period of sessions.

E. If a bill is partially rejected, or amended, or added to, by the reviewing House, the House where it originated shall only debate the portion rejected, or the additions, or the amendments

thereto, and the Articles which were previously approved shall not be altered in any manner. Should the additions or amendments by the reviewing House be approved by the House where it originated through absolute majority of votes of its members present, the bill in whole shall pass to the President of the Republic for the purpose of section A. Should the additions or amendments by the reviewing House not be approved by a majority of votes cast in the House where it originated, the bill in whole shall return to the reviewing House, so that the latter may consider the reasons of the other House. In this second review if the amendments or additions are again rejected by an absolute majority of the reviewing House's members present at the session, the bill, only in the portion approved by both Houses, shall pass to the President of the Republic for the purposes of section A. Should the reviewing House insist in such additions or amendments by an absolute majority of votes of its members present, the bill in whole shall not be reintroduced until the

next period of sessions, unless both Houses agree, by absolute majority of votes of their present members, that the law or decree be issued only with the Articles approved, and that the Articles added to or amended, be reserved to be examined and voted in the next sessions.

F.  The same procedure established to enact laws and decrees shall be followed in the interpretation, amendment or repeal thereof.

G.  Bills rejected in the House where they originated may not be reentered in the sessions of the same year.

H.  The process for the enactment of laws and decrees may be indistinctively initiated in any of the two Houses, except for those bills dealing with loans, imposts or taxes, or recruitment of troops, which shall all be discussed first in the House of Deputies.

I.  Bills shall be preferably discussed in the House where they are introduced, unless one month elapses after having been passed to the

Reporting Committee, without resolution by the latter, whereupon the bill may be presented and discussed in the other House.

J.  The President of the Republic may not make any observations to the resolutions of the Congress or any of the Houses when they act as election body or jury, or whenever the House of Deputies declares there are grounds to impeach a high ranking public officer of the Federation.

Neither may he object the decree summoning to extraordinary sessions issued by the Permanent Commission.

## Section Third
### The Powers of Congress

Article 73. The Congress shall have the powers:

I. To admit new States to the Federal Union;

II. (Repealed).

III. To create new States within the boundaries of the existing ones, for which it is required:

1° The territorial area or areas seeking to become a State must have a population of at least one hundred and twenty thousand inhabitants.

2° To prove to the Congress it has sufficient elements to provide for its political existence.

3° To hear the States Legislatures whose territory is involved, in respect to the convenience or inconvenience of establishing the new State, for which they are required to render their report within six months from the date the respective communication was delivered to them.

4° To hear the President of the Republic, who shall send his report within seven days from the date it was requested from him.

5° The creation of the new State must be approved by the votes of two thirds of the deputies and senators present in their respective Houses.

6° The resolution of the Congress must be ratified by the majority of the States Legislatures, upon previous examination of the file's copy, provided that the States Legislatures which

territory is involved shall have granted their consent.

7° If the States Legislatures whose territory is involved do not grant their consent, the ratification referred in the foregoing section must be made by two thirds of the total of the States' Legislatures.

IV. (Repealed);

V. To change the seat of the Supreme Powers of the Federation;

VI. (Repealed);

VII. To levy the taxes and government excises[1] required to cover the budget;

VIII. To establish the grounds under which the President of the Republic may contract loans

---

[1] Government excises is a concept which includes taxes, levies, imposts, assessments, tributes, government fees, penalties and interests on unpaid taxes, and in general all the charges that government may impose upon the population, to cover its budget.

on the Nation's credit, and to approve said loans, and acknowledge and order the payment of the national debt. No loan may be contracted except for the performance of such works which directly produce an increase in public revenues, save for those executed with the purpose of currency regulation, currency translation transactions, and those contracted during an emergency declared by the President of the Republic under the terms of Article 29. The Congress also has powers to approve annually the amounts of indebtedness to be included in the Income Law, which are required by the Government of the Federal District and its public sector agencies, if any, according to the base provided in the corresponding Law. The President of the Republic shall inform the Congress of the Union annually about the exercise of said debt, wheretofore the Chief of Government of the Federal District shall send his own report in regards to the application he has made of the respective resources. The Chief of Government of the Federal District shall likewise report the

foregoing to the Assembly of the Federal District, when submitting the government's accounts:

IX. To prevent the establishment of restrictions to interstate trade;

X. To legislate for the entire Republic on hydrocarbons, mining, chemical substances, explosives, pyrotechnics, motion picture industry, trade, betting games and lotteries, financial services and banking, nuclear and electric power; and to enact labor laws regulating Article 123;

XI. To create and abolish public offices of the Federation and to establish, increase or reduce their compensations;

XII. To declare war on the grounds of the information submitted by the President of the Republic;

XIII. To enact laws in accordance to which prizes on sea and land must be declared valid or invalid; and to enact statutes concerning the law of the sea for times of peace and war;

XIV. To raise and maintain the armed forces of the Union, namely: the Army, Navy and Air Force of the country, and to regulate their organization and service;

XV. To make regulations with the purpose of organizing, arming and disciplining the National Guard, reserving for the citizens composing it, the appointment of their respective commanders and officers, and to the States, the power to train them in accordance with the discipline established in such regulations;

XVI. To enact laws in regard to nationality, legal status of aliens, citizenship, naturalization, colonization, emigration and immigration and general public health of the Republic.

1° The General Health Council shall depend directly from the President of the Republic, without intervention from any Secretariat, and its general provisions shall be mandatory throughout the country;

2° In case of serious epidemics or danger of strike of exotic diseases throughout the country,

the Secretariat of Public Health shall be required to immediately issue any necessary preventive measures subject to the President of the Republic's subsequent approval.

3° The Public health authority is vested with executive powers, and its provisions shall be obeyed by the country's administrative authorities;

4° The measures that the Council has put into effect in the campaign against alcoholism and the sale of substances that poison individuals or degenerate the human species, as well as those measures adopted to prevent and fight against environmental pollution, shall thereafter be examined by the Congress of the Union in the cases under its jurisdiction.

XVII. To enact laws concerning general means of communication and transportation and in regards to mail and post offices; to enact laws on the use and enjoyment of waters under federal jurisdiction;

XVIII. To establish mints, to set forth the standards of coins, to determine the value of foreign

currencies and to adopt a general system of weights and measures;

XIX. To establish rules for the occupation and alienation of vacant lands and to set their prices;

XX. To enact laws for the organization of Mexican Diplomatic and Consular Service;

XXI. To establish the crimes and felonies against the Federation and set the corresponding penalties; to issue a general law about kidnapping, that describes at least the guilty acts and their penalties, the distribution of competences and the ways of enhancing coordination between the Federation, the Federal District, the States and Municipalities; as well as to pass laws regarding organized crime.

Federal authorities may also take cognizance of crimes under local jurisdiction, when these are connected with federal crimes.

In concurring matters considered in this Constitution, federal laws shall establish the cases in which local authorities shall be able to solve federal crimes;

XXII. To grant amnesties for crimes within the jurisdiction of federal courts;

XXIII. To issue laws regarding the basis of coordination between the Federation, the Federal District, the States and Municipalities, and the foundation and organization of federal public safety institutions, according to Article 21 of this Constitution.

XXIV. To enact the Law regulating the organization of the Federation's Superior Supervising Entity and any others governing the actions, control and assessment of the Powers of the Union and of federal public entities;

XXV. To establish, organize and maintain, throughout the country, rural, elementary, superior, high and professional schools; schools of scientific investigation, fine arts and technical education, practical schools of agriculture and mining, arts and trades, museums, libraries, observatories and other institutes regarding the population's culture and make laws about such

institutions; to legislate on traces or fossilized remains and archaeological, artistic and historical monuments whose conservation is of national interest; as well as to pass laws destined to the convenient distribution among the Federation, States and Municipalities of the exercise of educational function and the economic contributions corresponding to that public service, aiming to unify and coordinate education throughout the country. Degrees issued by said establishments shall take effect throughout the country. To legislate on copyright and other intellectual property figures.

XXVI. To grant leave of absence to the President of the Republic, and to erect itself as an Electoral College and designate the citizen who is to replace the President of the Republic either as interim, provisional or substitute, under the terms set forth by Articles 84 and 85 of this Constitution;

XXVII. To accept the resignation from office of the President of the Republic;

XXVIII. To issue laws about governmental accounting that shall rule public accounting and the uniform presentation of information about finances, incomes and expenditures, as well as patrimonial for the Federation, States, Municipalities, the Federal District and political-administrative organs within their territories, to guarantee their combining with each other nationwide.

XXIX. To establish taxes and government excises:

1° On foreign trade;

2° On the enjoyment and exploitation of those natural resources set forth in paragraphs 4 and 5 of Article 27;

3° On credit institutions and insurance companies;

4° On public services under concession or directly exploited by the Federation; and

5° Excise taxes on:

a) Electric power;

b) Production and consumption of processed tobacco;

c) Gasoline and other products derived from petroleum;

d) Matches;

e) Unfermented juice of the maguey and its fermented products;

f) Forestry exploitation, and

g) Production and consumption of beer.

The States shall participate in the earnings generated by these special taxes in the proportion set forth by federal law. The States Legislatures shall set the percentage corresponding to the municipalities, in their income from tax over electric power service;

XXIX-B. To enact legislation with regard to the elements and use of the National flag, coat of arms and anthem;

XXIX-C. To enact laws establishing the concurrence of the Federal Government, the

States and the municipalities, within their respective jurisdictions, on matters concerning human settlements, in order to comply with the purposes set forth under paragraph third of Article 27 of this Constitution;

XXIX-D. To enact laws in regards to planning the Nation's economic and social development, as well as about statistical and geographical information of national interest.

XXIX-E. To enact laws to program, promote, negotiate, and carry out actions of economic nature, specially the ones related to supply and any others which purpose is to have a sufficient and timely production of socially and nationwide necessary goods and services;

XXIX-F. To enact any laws aimed at promoting Mexican investment, regulating foreign investment, technology transfer and production, diffusion and application of scientific and technologic knowledge required for national development;

XXIX-G. To enact laws establishing the concurrence of the Federal Government, the

States and the municipalities, within their respective jurisdictions, on matters concerning environmental protection and preservation and restoration of ecological balance;

XXIX-H. To enact laws instituting administrative tribunals vested with full autonomy to issue their judgements and in charge of settling disputes between Federal Public Administration and private persons, and to penalize public servants charged with administrative responsibility as provided by the Law, establishing the provisions for their organization, operation, the proceedings and the means to review its resolutions.

XXIX-I. To enact laws establishing the bases in accordance to which the Federation, the States, the Federal District and the municipalities, shall coordinate their actions in matters of civil protection; and

XXIX-J. To legislate on matters concerning sports, establishing general bases to coordinate the concurrent attributions of the Federation, the States, the Federal District and the municipalities;

as well as the participation of the private and social sectors; and

XXIX-K. To enact laws in matters of tourism, establishing general bases to coordinate the concurrent powers of the Federation, States, municipalities, and the Federal District, as well as the participation of the social and private sectors;

XXIX-L. To enact laws establishing the concurrence of the Federal Government, the States and the Municipalities, within their respective jurisdictions, on matters concerning fisheries and aquaculture, as well as the participation of the social and private sectors; and

XXIX-M. To enact laws in matters of national security, establishing the requirements and limits to the corresponding investigations;

XXIX-N. To issue laws regarding the formation, organization, functioning and suppression of cooperatives. These laws shall establish the basis for the concurrence regarding the promotion

and defensible development of cooperative activity of the Federation, States and Municipalities, as well as the Federal District, in the sphere of their cognizance.

XXIX-Ñ. To issue laws that establish the basis on which the Federation, States, Municipalities and the Federal District shall coordinate their actions in matters of culture, except the provision set forth in section XXV of this article. Likewise, they shall establish the way social and private sectors shall participate, in order to fulfill the goals stipulated in article 4, ninth paragraph of this Constitution.

XXIX-O. To issue laws regarding the protection of personal data in custody of private individuals.

XXX. To enact all laws required to make effective the foregoing powers, and any other powers vested on the Powers of the Union by this Constitution.

Article 74. The exclusive powers of the House of Deputies are:

I. To solemnly announce throughout the Republic that the Electoral Tribunal of the Federal Judicial Branch has issued a declaration stating that the President has been elected;

II. To coordinate and asses, without detriment to its technical and operational autonomy, the performance of the Federation's Superior Supervising Entity, in accordance with the terms provided by the Law;

III. (Repealed).

IV.- To annually approve the Federation's Expenditure Budget, upon previous examination, discussion and amendment, if applicable, of the respective bill sent by the President of the Republic, having first approved the taxes and government excises that under its judgment, must be authorized to cover the expenditures, and also to authorize in the said Budget multiannual expenditures for investment projects in infrastructure determined according to the statutory law; those expenditures shall be included in the subsequent Expenditure Budgets.

The President of the Republic shall send to the House of Deputies, the Federation's Income Bill and Expenditure Budget no later than on September 8th. The appropriate State Secretary shall appear thereat to account for said bills. The House of Deputies shall approve the Federation's Expenditure Budget no later than November 15th.

Whenever the President of the Republic takes office in the date set forth in Article 83, he shall send the Federation's Income and Expenditure Budget Bills to the House of Deputies no later than on December 15th.

There shall be no other secret items than those deemed necessary and secret in said Budget; which shall be exercised by the Secretaries upon written authorization by the President of the Republic.

(Fifth paragraph repealed)

(Sixth paragraph repealed)

(Seventh paragraph repealed)

The term to submit the Income Bill and the Expenditures Budget Draft may only be extended upon request by the President of the Republic, which request must be sufficiently justifiable at the judgement of the Houses or the Permanent Commission. The correspondent State Secretary shall appear thereat, in any case, to inform on the causes underlying such request.

V. To declare if it is lawful to file criminal action against those public officers who have committed a crime as provided under Article 111 of this Constitution.

To know of the charges against the public officers referred under Article 110 of this Constitution and to act as a prosecuting body in the impeachment trials brought forth against them;

VI. To review the General Public Accounts of the previous year, in order to evaluate the outcomes of the financial efforts, to corroborate if it has been adjusted to the criteria stated by the Budget and to verify the fulfillment of every objective established in the programs.

The House of Deputies shall review the General Public Account through the Superior Supervising Entity of the Federation. If such agency should find discrepancies amongst the incomes and expenditures, regarding the respective concepts and certificates or if any income or expenditure is not correct or justified, any appropriate responsibilities shall be determined according to Law. When reviewing the fulfillment of the programs' objectives, the audit agency may only issue recommendations to improve such fulfillment, as provided by the Law.

The General Public Account of the correspondent tax year shall be presented at the House of Deputies on the 30th of April of the next year, at the most. Such term can only be prolonged according to part IV, last paragraph, of this article; the extension should not exceed 30 natural days; otherwise, the Superior Supervising Entity of the Federation shall have the same additional time to report the review of the General Public Account.

The House of Deputies shall conclude reviewing the General Public Account on the 30th of September of the year following its presentation, according to the analysis of its content and the technical conclusions of the report delivered by the Superior Supervising Entity of the Federation, described in Article 79 of this Constitution, without impairing the ongoing proceedings of observations, recommendations and actions promoted by the Superior Supervising Entity of the Federation.

The House of Deputies shall evaluate the work of the Superior Supervising Entity of the Federation and to that end it can require it to report about the progress of its auditing procedures.

VII. (Repealed).

VIII. Any other powers explicitly vested upon it by this Constitution.

Article 75. The House of Deputies, when approving the Expenditures Budget shall not fail to set the remuneration pertaining to an office which has

been established by the Law; and in the event that, for any cause, it should fail to set such remuneration, then it shall be understood that the amount set forth in the previous Budget or in the Law which established the office, shall be the one in force.

In any case, such a determination shall respect the bases established in article 127 of this Constitution and the laws that the Congress issues on the matter.

The Legislative, Executive and Judicial Branches as well as organisms with a constitutionally recognized autonomy that use resources from the Expenditures Budget, shall include in their budget projects the tabulators of the remunerations proposed for the public officers. These proposals shall observe the procedure that has been established for the budget approval in section IV of article 74 of this Constitution and other applicable laws.

Article 76. The exclusive powers of the Senate are:

I. To analyze the foreign policy applied by the President of the Republic on the grounds of the annual Information on the State of the

country submitted to the Congress by the President of the Republic and the corresponding State Secretary.

Also, to approve international treaties and diplomatic conventions celebrated by the President of the Republic, as well as his decision of cancelling, withdrawing, suspending, modifying or amending them, or withdrawing reservations or making interpretative declarations about them;

II. To ratify the appointments of the General Attorney of the Republic, Justices of the Supreme Court, diplomatic agents, general consuls, high ranking employees of the Treasury,[2] colonels and other superior chiefs of the Army, Navy and Air Force, made by the President of the Republic, under the terms provided by the Law;

III. To authorize the President of the Republic to allow the deployment of national troops beyond the borders of the country, the passage

---

[2]   Treasury refers to the Secretariat of Finance and Public Credit.

of foreign troops through national land territory, and the sojourn of vessels of other countries for over one month in Mexican waters;

IV. To give its consent, so that the President of the Republic may dispose of the National Guard outside its respective States, and to determine the necessary forces;

V. Whenever the constitutional powers of a State disappear, to declare that it is necessary to appoint a Provisional Governor, who shall summon to elections in accordance with the constitutional laws of said State. The Senate shall appoint such governor chosen from a list of three candidates proposed by the President of the Republic, with the approval of two thirds of its members present in the session, and in the adjournments thereof, by the Permanent Commission according to the same rules. The officer thus appointed cannot be elected Constitutional Governor in the elections held pursuant to the summons he shall have issued. This provision shall govern whenever the constitutions of the States do not provide otherwise;

VI. To settle political issues arising between the powers of a State, whenever any of them shall apply to the Senate theretofore, or when by reason of such issues, the constitutional order has been interrupted through an armed conflict. In such event, the Senate shall issue its resolution subject to provisions establish in the Constitution of the Republic and the constitution of the State involved.

The Law shall regulate the exercise of the two foregoing powers;

VII. To erect itself as a grand jury to take cognizance of impeachment trials for faults or omissions committed by public officers and which result in detriment to fundamental public interests and to their good performance in office, according to the terms established by Article 110 of this Constitution;

VIII. To appoint the Justices of the Nation's Supreme Court of Justice, selecting them from the group of three candidates submitted by the President of the Republic, as well as to grant or

deny its approval to the request for leave of absence or resignation of such Justices submitted by the President of the Republic;

IX. To appoint and to remove the Head of Government of the Federal District in the cases provided by this Constitution;

X. To authorize by decree approved by two thirds of the individuals there, the amicable agreements settled by the States about their own limits.

XI. To definitely solve the conflicts about territorial limits of the States who request it, by a decree approved by two thirds of the individuals there.

XII. Any other powers vested upon it by this Constitution.

Article 77. Each of the Houses may, without the intervention of the other:

I. To issue resolutions in respect to its internal organization;

II. To communicate with the other legislative House and with the President of the Republic through its own internal committees;

III. To appoint the employees of its secretariat and to issue the internal regulations thereof; and

IV. To summon, within a term of thirty days after the date when the vacancy occurs, to extraordinary elections to be held within the following ninety days, in order to fill the vacancies of its respective members referred in article 63 of this Constitution, in the case of vacancies of deputies and senators of the Congress of the Union by relative majority, unless the vacancy shall occur during the last year of the respective legislator's term.

## Section Fourth
### The Permanent Commission

Article 78. During the adjournments of the Congress of the Union there shall be a Permanent Commission composed of 37 members, of which 19 shall be deputies and 18 shall be senators, appointed by

their respective Houses on the eve of the close of the regular session terms. For each incumbent the House shall appoint an alternate from amongst its members in office.

The Permanent Commission, in addition to the powers explicitly vested upon it by this Constitution, shall have the following powers:

I. To give its consent to use the National Guard in the cases mentioned in Article 76, section IV;

II. To take the oath of office of the President of the Republic, as applicable;

III. To decide the issues under its jurisdiction; to receive during the adjournments of the Congress of the Union the bills and proposals addressed to the Houses and to turn them for their resolution to the Committees of the House to which they are addressed, so that they may be acted upon, in the next immediate period of sessions;

IV. To decide on its own motion or upon proposal by the President of the Republic, the summons

to Congress of the Union or to one of the Houses, to extraordinary sessions, requiring in both cases the vote of two thirds of the individuals present. The summons shall include the purpose or purposes of extraordinary sessions;

V. To grant or to deny its ratification to the appointment of the General Attorney submitted by the President of the Republic;

VI. To grant a leave of absence for up to thirty days to the President of the Republic and to appoint the interim alternate to fill such leave;

VII. To ratify the appointments made by the President of the Republic of Justices of the Supreme Court, diplomatic agents, general consuls, high ranking employees of the Treasury, colonels and other superior chiefs of the Army, Navy and Air Force, under the terms provided by the Law; and

VIII. To have cognizance of and decide the requests for, leave of absence submitted by legislators.

## Section Fifth

### The Federation's Superior Supervising Entity

Article 79. The Federation's Superior Supervising Entity of the House of Deputies shall have technical and operating autonomy to exercise its powers and to decide in respect to its internal organization, operations and resolutions, in accordance with the terms provided by the Law.

Auditing function shall be exercised according to the principles of posteriority, annual recurrence, legality, definitiveness, impartiality and reliability.

The Superior Supervising Entity of the Federation shall be in charge of:

I. Supervising income and expenditures made; management, custody and application of funds and resources of the Powers of the Union and Federal Public Entities, as well as the fulfillment of objectives of federal programs, through reports to be rendered under the terms provided by the Law.

It shall also supervise the exercise of federal resources by States, the municipalities, the Federal District and the political-administrative organs within their territories, except for the federal contributions; it shall also supervise the federal resources destined to and exercised by any entity or person, public or private, and those transferred to trusts, mandates, funds or any other legal form, according to the adequate legal proceedings and in spite of other authorities' cognizance and the rights of the financial system users.

Supervised entities described in the previous paragraph shall maintain control and a countable, patrimonial and budget registration of the resources transferred and assigned to them by the Federation, according to Law.

Notwithstanding the principle of annuity, the Superior Supervising Entity of the Federation can request and review, casuistically and concretely, information of tax years previous to that of the General Public Account being revised, which will not mean, for all legal purposes, that the General Public Account

whose data are subject to review is being reopened, exclusively when the program, project or expenditure contained on the revised budget covers, for its execution and payment, several tax years or refers to audits about the fulfillment of the federal program's objectives. Every observation or recommendation handed down by the Superior Supervising Entity of the Federation can only refer to the tax year of those public resources of the General Public Account under audit.

Likewise, notwithstanding the principle of posteriority, in those exceptional situations determined by the Law, derived from formal complaints, the Superior Supervising Entity of the Federation can require from the supervised entities to proceed to the audit during the ongoing tax year, of the reported concepts and submit a report about it. If these requirements were not attended under the terms and forms provided by the Law, there shall be the sanctions due in it. The Superior Supervising Entity of the Federation shall send a specific report to the

House of Deputies and, if appropriate, shall impose the corresponding responsibilities or promote other of those to the proper authorities.

II. To deliver the report on the General Public Account to the House of Deputies no later than on February 20th of the next year after the one when the accounts were submitted, which shall be sent to the consideration of the House of Deputies and shall be public. Said report shall include the audits, the reports of its review, the sections about the supervision about how the supervised entities disposed of federal resources and the verification of the fulfillment of the federal program's objectives, as well as a specific section for observations by the Superior Supervising Entity of the Federation, which shall include all the justifications and explanations delivered by the supervised entities regarding the observations.

To that end, prior to the presentation of the report, the supervised entities shall have access to the results of the audit in that which pertain to them, so that they may deliver the proper

justifications or explanations, which shall be valued by the Superior Supervising Entity of the Federation in order to make the report on the outcome of the General Public Account's review.

The Head of the Superior Supervising Entity of the Federation shall send to the supervised entities, no later than 10 working days after the House of Deputies receives the report on the result, the corresponding recommendations and promoted actions so that, no later than 30 working days, deliver the information and make all appropriate considerations; if they do not fulfill this, they shall be subjected to the sanctions provided by the Law. This prevision shall not apply to the observations and promotions of responsibilities, which shall be subjected to the terms and procedures established by the Law.

The Superior Supervising Entity of the Federation shall pronounce about the responses given by the supervised entities in no less than 120 working days; otherwise it shall be understood that the recommendations and promoted actions were attended.

In case of recommendations about their performance, the supervised entities shall notify precisely all improvements to the Superior Supervising Entity of the Federation or, at all events, to justify their unrighteousness.

On May the 1st and November the 1st each year, the Superior Supervising Entity of the Federation shall deliver to the House of Deputies a report on the situation of all observations, recommendations and raised actions.

The Superior Supervising Entity of the Federation shall keep to itself its actions and observations until the report described in this section is delivered to the House of Deputies; the Law shall establish the applicable sanctions to whoever infringes this disposition.

III. To investigate any actions or omissions implying irregularities or unlawful conduct in regards to income, expenditures, management, custody and allocation of federal funds and resources and to carry out inspections to private facilities only to require that such books,

documents or files which are indispensable to carry out the investigations be produced, subject to the laws and formalities established for searches; and

IV. To determine any damages and losses affecting the Federal Treasury or the estate of Federal Public Entities, and to directly impose over whoever is responsible, the corresponding payment of indemnifications and monetary penalties, as well as to institute the appropriate legal proceedings before authorities with competence to impose other liabilities; to initiate the liability procedures referred under Title Fourth of this Constitution and to file accusations and criminal charges in which procedures it shall participate as provided by the Law.

All sanctions and other resolutions by the Superior Supervising Entity of the Federation can be contested by the supervised entities and, at any case, by every affected public servant thereof, before the Supervising Entity itself or the courts described by Article 73, section XXIX of this Constitution according to the Law.

The House of Deputies shall appoint the head of the Supervising Entity by the vote of two thirds of its members in attendance. The Law shall establish the procedure for said appointment. The head of the Supervising Entity shall hold office for a term of eight years and may be appointed again just for one additional period. He may be removed exclusively for serious misdemeanours set forth by the Law, by the same number of votes required for his appointment, or for the causes and in accordance with the procedures set forth under Title Fourth of this Constitution.

To qualify for the office of head of the Federation's Superior Supervising Entity, it is necessary to fill, besides the qualifications provided under sections I, II, IV, V and VI of Article 95 of this Constitution, any other requirements established by the Law. While holding such office, the incumbent may not be member of any political party, nor hold any other office, employment or commission, except pro bono work in scientific, academic, artistic or charitable associations.

The Powers of the Union, the States and the rest of the supervised entities shall facilitate all the assistance required by the Superior Supervising Entity of the Federation to fulfill its duties; otherwise they shall be sanctioned according to Law. Also, federal and local public servants, as well as any entity, physical or moral person, public or private, trust, mandate or fund, or any other legal form, which receive or exercise federal public funds, shall deliver the information and documentation requested by the Superior Supervising Entity of the Federation, according to the procedures established by the Law and notwithstanding the cognizance of other authorities and the rights of the financial system users. If no information is given, the persons responsible shall be sanctioned according to Law.

The President of the Republic shall carry out administrative execution proceedings to collect the indemnifications and monetary penalties provided under section IV of this Article.

CHAPTER THREE
The Federal Executive Branch

Article 80. The exercise of the Supreme Executive Branch of the Union is vested in a single individual who shall be called the "President of the United Mexican States."

Article 81. The election of the President shall be direct and in accordance with the terms set forth by the electoral law.

Article 82. The following qualifications are required to be President of the Republic:

I. To be a Mexican citizen by birth, with legal capacity to exercise his rights, born of Mexican father or mother and to have resided in the country for at least twenty years;

II. To be thirty five years old at the time of the election;

III. To have resided in the country during the entire year prior to the day of the election. Absence from the country for up to thirty days does not interrupt the term of residence;

IV. Not to be neither a member of the clergy nor a minister of any creed;

V. Not to be in active service, in case of being a member of the army, for a period of six months before the day of the election;

VI.- Not to be a State Secretary or Undersecretary, Attorney General of the Republic, Governor nor Head of Government of the Federal District, unless he leaves that position six months before the day of the election; and

VII. Not to be subject to any disqualifications set forth under Article 83.

Article 83. The President shall begin his term in office on December 1st and shall remain in charge

for a term of six years. Any citizen, who has held the office of President of the Republic, through popular election or as interim, provisional or substitute, shall never, under any circumstance, hold such office again.

Article 84. In case of absolute absence of the President of the Republic during the first two years of the respective term, if the Congress of the Union were in sessions, it shall immediately erect itself as Electoral College, and if there shall be at least two thirds of its total members present, it shall designate by secret ballot and by an absolute majority of votes, an Interim President. The same Congress shall issue, within ten days following the designation of the Interim President, a summons for the election of the President who shall complete the respective term; the date of such election shall be fixed within an interval of no less than fourteen months nor more than eighteen months between the date of the summons and the date set to hold the election.

During the adjournments of the Congress of the Union, the Permanent Commission shall immediately

appoint a Provisional President and shall summon the Congress to extraordinary sessions, so that the latter in turn, may appoint an Interim President and issue summons to presidential elections under the terms provided by the foregoing paragraph.

Should the absence of the President occur during the last four years of the respective term, if the Congress of the Union were in sessions, it shall designate the Substitute President who shall conclude the term; if the Congress were not assembled, the Permanent Commission shall appoint a Provisional President and shall summon the Congress of the Union to extraordinary sessions so that it shall erect itself as Electoral College and elect the Substitute President.

Article 85. If at the beginning of a constitutional term the elected President should not attend, or if the election has not been made and the results declared by December 1st, the President whose term has concluded shall nevertheless cease to hold office, and the Executive Powers shall devolve on the Interim President appointed by the Congress

of the Union, or if Congress were not assembled, on the Provisional President appointed by the Permanent Commission, acting in accordance with the preceding article.

Should the absence of the President be temporary, the Congress of the Union, if it were assembled, or otherwise, the Permanent Commission, shall appoint an Interim President to act accordingly during the period of absence.

Should the absence of the President exceed thirty days and if the Congress were not assembled, the Permanent Commission shall summon the Congress to extraordinary sessions so that it may provide for the leave of absence, and if appropriate appoint an Interim President.

If the temporary absence should become absolute, the procedure provided in the foregoing Article shall apply.

Article 86. The office of President of the Republic can only be resigned for serious cause that shall be qualified by the Congress of the Union, before whom the resignation must be submitted.

Article 87. When taking office, the President shall make the following oath before the Congress of the Union or if in the adjournments thereof, before the Permanent Commission: "I do solemnly swear to uphold and enforce the Political Constitution of the United Mexican States and the laws enacted under its authority, and to faithfully and patriotically execute the office of President of the Republic that the people have vested on me, pursuing in all matters the welfare and prosperity of the Union, and should I not do so, may the Nation demand it from me."

Article 88. The President of the Republic may leave national land territory for up to seven days, previously informing the reasons for his absence to the Senate or the Permanent Commission, if applicable, as well as the outcome of his activities abroad. Whenever his absence is longer than seven days, an authorization by the Senate or the Permanent Commission shall be required.

Article 89. The powers and duties of the President of the Republic are as follows:

I. To promulgate and enforce the laws enacted by the Congress of the Union providing the

means required, within his administrative jurisdiction, for their faithful execution;

II. To appoint and remove State Secretaries at his sole discretion, to remove diplomatic agents and the high ranking employees of the Treasury, and to unrestrictedly appoint and remove all the other employees of the Union, whose appointment or removal is not otherwise provided for in the Constitution or the laws;

III. To appoint Justices of the Supreme Court, diplomatic agents and general consuls, with the approval of the Senate;

IV. To appoint the colonels and other superior chiefs of the Army, Navy and Air Force and high ranking employees of the Treasury, with the approval of the Senate;

V. To appoint all other officers of the Army, Navy and Air Force, as provided by the laws;

VI. To maintain national security, under the terms of the respective law, and to dispose of all permanent military forces of the Army, Navy

and Air Force, for the Federation's interior security and defense;

VII. To dispose of the National Guard for the same purposes mentioned hereinbefore, in accordance with the terms set forth in Section IV of Article 76;

VIII. To declare war in the name of the United Mexican States pursuant to a law previously enacted by the Congress of the Union to that end;

IX. To appoint the General Attorney of the Republic with the ratification by the Senate;

X. To direct foreign policy and to celebrate International treaties, as well as to terminate, denounce, suspend, modify, amend, withdraw reservations and formulate interpretative statements about them, subject to approval by the Senate. In conducting foreign policy, the President of the Republic shall abide by the following guiding principles: self-determination of peoples; non-intervention; pacific settlement of disputes; to refrain in their international

relations from threats or use of force; of equal rights of States; international cooperation for development; and to maintain international peace and security.

XI. To summon the Congress to extraordinary sessions, in accordance with the respective resolution of the Permanent Commission;

XII. To give the Judicial Branch the assistance it requires for the prompt discharge of its duties;

XIII. To enable all sorts of ports, establish maritime and frontier customhouses, and to determine their location;

XIV. To grant, according to the laws, pardons to criminals convicted for crimes under the jurisdiction of federal courts, and to individuals convicted for crimes under the local jurisdiction of the Federal District;

XV. To grant exclusive privileges for a limited time, in accordance with the respective law, to discoverers, inventors, or improvers in any branch of industry;

XVI. When the Senate is not in session, the President of the Republic may make the appointments provided in sections III, IV and

IX, with the approval of the Permanent Commission;

XVII. (Repealed);

XVIII. To submit to the Senate's approval, a proposal of three candidates to make the appointment of Justices of the Supreme Court of Justice, and to also submit thereto the requests for leaves of absence and resignations of said Justices;

XIX. (Repealed);

XX. Any others powers explicitly vested upon him by this Constitution.

Article 90. Federal Public Administration shall be centralized and decentralized, in accordance with the provisions of the Organic Law to be enacted by the Congress, which shall distribute the administrative affairs of the Federation that shall be entrusted to the Secretariats of State and shall

establish the general principles for constituting decentralized agencies and the intervention of the President of the Republic in their operation.

The laws shall set forth the relation between decentralized agencies and the President of the Republic, or between such entities and the Secretariats.

Article 91. To be State Secretary it is required to be a Mexican citizen by birth, with legal capacity to exercise his rights, and to be thirty years old.

Article 92. All the regulations, decrees, rulings and orders of the President, must be countersigned by the State Secretary to whom the matter pertains, and shall not be obeyed unless having fulfilled this requirement.

Article 93. The State Secretaries, as soon as the regular period of sessions is open, shall address the Congress to inform on the state of their respective branches.

Any of the Houses may summon the State Secretaries, the General Attorney of the Republic, as well as the

directors and administrators of federal decentralized agencies and the heads of autonomous organs, to provide information under oath whenever a law is under discussion or a matter is being studied concerning their respective activities or branches.

The Houses, upon request by one fourth of its members, in the case of the House of Deputies and by half of its members in the case of the Senate, have the power to constitute committees to investigate the operation of said federal decentralized agencies and Government controlled corporations. The findings of such investigations shall be communicated to the President of the Republic.

Both Houses can request information or documents to the heads of all agencies and bodies of the federal government, through a written question which shall be answered in no less than 15 calendar days from the moment of its reception.

These attributions shall be exercised according to the Law and regulations of the Congress.

# CHAPTER FOUR
# The Judicial Branch

Article 94. The exercise of the Judicial Branch of the Federation is vested on the Nation's Supreme Court of Justice, in an Electoral Tribunal, in Collegiate and Unitary Circuit Courts, and in District Courts.

Management, supervision and discipline of the Judicial Branch of the Federation, with the exception of the Nation's Supreme Court of Justice, shall be entrusted to the Federal Judicial Council, under the terms established by the Law, in accordance with the bases set forth in this Constitution.

The Nation's Supreme Court of Justice shall be composed with eleven Justices and shall function in Full Court or in Chambers.

In accordance with the terms provided by the Law, the sessions in Full Court and in Chambers shall be public, and by exception, when public interest or public morals should so require it, the sessions shall be secret.

The jurisdiction of the Supreme Court, its operation in Full Court or in Chambers, the jurisdiction of Circuit Courts, District Courts and of the Electoral Tribunal, as well as the liabilities in which the public officers of the Judicial Branch of the Federation may incur, shall be governed by the provisions set forth in the laws, in accordance with the bases established in this Constitution.

The Federal Judicial Council shall establish the number, circuit division, territorial jurisdiction and, as appropriate, the specialization by subject matter of Collegiate Courts, Unitary Circuit Courts and District Courts.

The Supreme Court of Justice in Full Court shall have powers to issue general decrees, with the aim of attaining an adequate distribution among the Chambers, of the affairs under the jurisdiction of

the Court, as well as to remit to Collegiate Circuit Courts those cases where it shall have established binding judicial precedents[3] for their prompt dispatch, or such cases which the Court decides to forward, in accordance with such decrees, for a better dispensation of justice. Said decrees shall be in force upon their publication.

The Law shall determine the terms under which binding judicial precedents established by the courts of the Judicial Branch of the Federation shall be mandatory in respect to the interpretation of the Constitution, federal or local laws and regulations, and international treaties celebrated by the Mexican State, as well as the requirements for its interruption and amendment.

---

[3]   The text in Spanish uses the term Jurisprudencia. This term does not refer to any judicial resolution but only to those that constitute a binding judicial precedent. Articles 94 and 107 of this Constitution regulate the way in which it is created, as well as statutes governing federal procedures. Jurisprudencia or mandatory judicial precedent is created when the Supreme Court of Justice or Collegiate Circuit Courts (Appeal courts of the Federal Judiciary) rule in the same way in five consecutive occasions, in which case all lower federal courts must abide by such holdings. The Electoral Tribunal of the Federal Judicial Branch is also able to produce jurisprudencia.

The remuneration received by the Justices of the Supreme Court, Circuit Magistrates,[4] District Judges and Councillors of the Council of the Federal Judiciary, as well as the Electoral Magistrates, may not be reduced during their term in office.

The Justices of the Supreme Court shall hold their office for a term of fifteen years, and may only be removed therefrom in accordance with the terms set forth by Title Fourth of this Constitution. Justices shall be entitled to a retirement payment at the end of their term.

No individual who has been a Justice may be appointed for a new term, unless he has held the office in a provisional or interim character.

Article 95. To be elected Justice of the Nation's Supreme Court of Justice, it is required:

I. To be a Mexican citizen by birth with legal capacity to exercise his political and civil rights;

---

[4] In the Mexican legal system, Magistrates who belong to the Federal or local Judicial Branches are appeal judges. Magistrates in administrative courts may be both, trial and appeal judges.

II. To be at least thirty five years old on the day of the appointment;

III. To have held on the day of the appointment, a professional Law degree, for a minimum of ten years, issued by an authority or institution legally empowered theretofor;

IV. To have a good reputation and not have been convicted for a crime punishable by imprisonment for more than one year; but should the crime have been robbery, fraud, forgery, embezzlement or any other which would seriously hurt good reputation as the public perceives it, he shall be disqualified for office whatever the penalty may have been;

V. To have resided within the country for the last two years previous to the day of the appointment; and

VI. Not to have been State Secretary, Attorney General of the Republic or Attorney General of the Federal District, Senator, Federal Deputy or Governor of a State or Head of Government of

the Federal District, in the year previous to the day of the appointment.

The appointment of Justices must preferably go to those individuals who have served with efficiency, capacity and honesty in the dispensation of justice, or who have distinguished themselves for their honorability, proficiency and a good professional record in the exercise of legal activities.

Article 96. In order to appoint Justices to the Supreme Court of Justice, the President of the Republic shall submit three candidates to the Senate. The latter, upon previous appearance of the individuals proposed, shall designate the one of them, who shall fill the vacancy. The appointment shall be made by the vote of two thirds of the Senators present in the respective session, within a term of thirty days which may not be extended.[5] Should the Senate not decide within such term, the position shall be filled by the individual

---

[5]   Said term is computed from the date the President submits the list of candidates.

appointed by the President of the Republic from the aforesaid group of three candidates previously submitted.

In the event that the Senate should reject all three candidates proposed, the President of the Republic shall submit a new group of three candidates under the terms of the previous paragraph. Should this second group of candidates be also rejected, the position shall be filled by the individual appointed by the President of the Republic from the aforesaid group of three candidates proposed.

Article 97. Circuit Magistrates and District Judges shall be appointed and assigned to their jurisdiction by the Council of the Federal Judiciary on the grounds of objective criteria and in accordance with the requirements and procedures set forth by the Law. They shall hold office for six years, upon which, should they be ratified or promoted to higher offices, they may only be removed therefrom in the cases and in accordance with the procedures established by the Law.

The Nation's Supreme Court of Justice may appoint any or several of its members, or any District Judge

or Circuit Magistrate, or may appoint one or several Special Commissioners, when it deems convenient or whenever the President of the Republic or any of the Houses of the Congress of the Union, or the Governor of a State should request it, only for the purpose of investigating a fact or facts constituting a serious violation to any constitutional right. It may also require the Federal Judicial Council to investigate the conduct of a Federal Judge or Magistrate.

(Repealed.)

The Supreme Court of Justice shall appoint and remove its clerk and all other officers and employees. The Magistrates and Judges shall appoint and remove their respective officers and employees of Circuit Courts and District Courts, in accordance with the provisions set forth by the Law in respect to the judicial career.

Each fourth year period, the Nation's Supreme Court of Justice in Full Court, shall elect from amongst its members one of them to act as its President, who may not be reelected for the next immediate term.

Each Justice of the Supreme Court of Justice when taking office shall take oath before the Senate in the following manner:

President: "Do you solemnly swear to faithfully and patriotically execute the office of Justice of the Nation's Supreme Court of Justice which has been vested upon you, and to uphold and enforce the Political Constitution of the United Mexican States and the laws enacted under its authority, pursuing in all matters the welfare and prosperity of the Union?"

Justice: "Yes, I do swear."

President: "Should you fail to do so, may the Nation demand it from you."

The Circuit Magistrates and District Judges shall take oath before the Supreme Court of Justice and the Federal Judicial Council.

Article 98. Whenever the absence of a Justice should exceed one month, the President of the Republic shall submit the appointment of an interim Justice to the Senate's approval, under the terms set forth in Article 96 of this Constitution.

Should a Minister be absent by cause of death or for any other final cause of removal, the President shall submit for the Senate's approval a new appointment under the terms set forth in Article 96 of this Constitution.

The resignations of Justices of the Supreme Court of Justice shall only be admitted for serious causes. Resignations shall be submitted to the President of the Republic and if the latter accepts them, he shall send them to the Senate for approval.

The leaves of absence of Justices, when they do not exceed one month, may be granted by the Nation's Supreme Court of Justice. Those exceeding such term shall be granted by the President of the Republic with approval of the Senate. No leave of absence may exceed a term of two years.

Article 99. Except for the provisions in section II of Article 105 of this Constitution, the Electoral Tribunal shall be the highest jurisdictional authority on the subject matter and shall constitute a specialized body of the Judicial Branch of the Federation.

To exercise its powers, the Electoral Tribunal shall operate through a Superior Chamber as well as through Regional Chambers and its sessions to pass judgment shall be public, in accordance with the terms set forth by the Law. The Tribunal shall be staffed with the legal and administrative personnel needed to operate adequately.

The Superior Chamber shall be composed with seven Electoral Magistrates. The Chief Magistrate of the Court shall be elected by the Superior Chamber, from amongst its members, to hold said office for a term of four years.

The Electoral Tribunal shall have the power to decide in a final and incontestable manner, subject to the terms set forth in this Constitution, and abiding by the provisions established by the Law, the following issues:

I. Contests submitted against federal elections for deputies and senators;

II. Contests submitted against the election of the President of the United Mexican States which

shall be decided by the Superior Chamber in one single instance;

The Superior Chamber and the Regional Chambers shall declare the nullity of an election only by the causes expressly established by the laws.

Upon deciding any contests brought forth against the election for President of the United Mexican States, the Superior Chamber shall make the final computations thereof and shall thereafter make the declaration of validity of the election and the declaration of Elected President in respect to the candidate who shall have obtained the largest number of votes;

III. Contests submitted against acts and resolutions by federal electoral authorities, different from the ones set forth in the previous two sections, that infringe constitutional or legal provisions;

IV. Contests submitted against final and conclusive resolutions or acts by State authorities with jurisdiction to organize and qualify elections, or to decide the disputes arising during elections, which outcome may determine the development

of the respective process or the final result thereof. This procedure shall be admissible only when the remedy requested is substantially and legally possible within electoral terms, and provided it is feasible to implement it before the date constitutionally or legally set forth for the installation of the elected government bodies or for the taking of office of the individuals elected;

V. Contests submitted against actions and resolutions infringing the electoral rights[6] of citizens to vote, to be voted, and to freely and pacifically affiliate in order to participate in the political affairs of the country, under the terms provided by this Constitution and the laws;

VI. Labor disagreements or conflicts between the Electoral Court and its employees;

VII. Labor disagreements or conflicts between the Federal Electoral Institute and its employees;

---

[6]   The text in Spanish of the Constitution says derechos político electorales de los ciudadanos. In this translation the term político has been omitted, considering that electoral rights are a species of political rights.

VIII. Determination and imposition of penalties from the Federal Electoral Institute to political groups or parties or natural or artificial persons, national or foreign, who infringe this Constitution and the laws, and

IX. Any others set forth by the Law.

The Chambers of the Electoral Tribunal shall use every necessary means of pressure to have their sentences and resolutions rapidly fulfilled, in the terms set forth by the Law.

Notwithstanding the prevision of Article 105 of this Constitution, the Chambers of the Electoral Tribunal can determine not to apply electoral laws which are contrary to this Constitution. All sentences delivered when exercising this faculty shall refer to the specific case to which the process is about. In such cases the Superior Chamber shall inform the Supreme Court of Justice of the Nation.

When a Chamber of the Electoral Tribunal should uphold a judicial precedent regarding the unconstitutionality of an act or resolution or the

interpretation of a provision of this Constitution and this precedent were inconsistent with another upheld by the Chambers of the Supreme Court of Justice or by the latter operating in Full Court, any of the Justices, the Chambers or the parties, may denounce the contradiction according to the terms established by the Law, so that the Nation's Supreme Court of Justice in Full Court may finally decide which precedent must prevail. The resolutions adjudged in accordance with this premise shall not affect the cases already decided.

The organization of the Tribunal, the jurisdiction of the Chambers, the procedures to decide the affairs under its jurisdiction, as well as the mechanisms to establish binding judicial precedents in the subject matter, shall be the ones established by this Constitution and the laws.

The Superior Chamber can, by itself, at the request of a party or some of the Regional Chambers, to attract the cases tried by said Chambers; also, it can send the matters of its own cognizance to the Regional Chambers to be tried and resolved. The

Law shall set forth the rules and proceeding for exercising such faculties.

In accordance with the terms provided by the Law, the administration, supervision and discipline of the Electoral Tribunal shall pertain to a Committee of the Federal Judicial Council, which shall be composed by the Chief Magistrate of the Electoral Tribunal, who shall act as chairman thereof, one Electoral Magistrate form the Superior Chamber, selected by drawing, and by three members of the Federal Judicial Council. The Electoral Tribunal shall propose its budget to the Chief Justice of the Nation's Supreme Court of Justice, so that it may be included in the Budget Draft of the Judicial Branch of the Federation. Likewise, the Electoral Tribunal shall issue its internal regulations and any general decrees it should require to operate adequately.

The Electoral Magistrates composing the Superior Chamber and the Regional Chambers shall be elected by the vote of two thirds of the Senators present, or in the adjournments thereof, by the Permanent Commission, upon proposal submitted by the Nation's

Supreme Court of Justice. The Law shall establish the corresponding rules and procedure.

The Electoral Magistrates constituting the Superior Chamber must fulfill the requirements established by the Law, which may not be less than those required to hold the office of Justice of the Nation's Supreme Court of Justice, and they shall remain in office for a term of ten years which is non extendible. The resignations, absences and leaves of absence of the Electoral Magistrates of the Superior Chamber shall be processed, covered and granted by said Chamber, as applicable, in accordance with the terms of Article 98 of this Constitution.

The Electoral Magistrates composing the Regional Chambers must comply with the requirements set forth by the Law, which may not be less than those required to be Magistrate of Collegiate Circuit Courts. They shall hold their office for a non extendible term of eight years, unless they are promoted to higher offices.

In case of a definitive vacancy a new Magistrate shall be appointed for the remaining of the time of the original appointment.

The labor relationships of the Tribunal's personnel shall be governed by the provisions applicable to the Judicial Branch of the Federation and by the special rules and exceptions set forth by the Law.

Article 100. The Federal Judicial Council shall be a body of the Judicial Branch of the Federation, which shall have technical and operational independence and shall also be independent to issue its resolutions.

The Council shall be composed by seven members of which, one shall be the Chief Justice of the Supreme Court of Justice, who shall also be the chairman of the Council; by three Councillors appointed by the Supreme Court in Full Court, by a majority of at least eight votes, from amongst the Circuit Magistrates and District Judges; two Councillors appointed by the Senate and one by the President of the Republic.

All the Councillors must comply with the requirements provided under Article 95 of this Constitution and be individuals distinguished for their professional and administrative capacity, their honesty and the

honorable performance of their activities, in the case of the individuals appointed by the Supreme Court, they must also be professionally well reputed within the scope of the judiciary.

The Council shall function in Full Court or in committees. When it is functioning in Full Court it shall decide the designation, adscription, ratification and removal of Magistrates and Judges, as well as any other issues established by the Law.

Save for the chairman of the Council, the remaining Councillors shall hold their office for five years. They shall be replaced in a subsequent manner, and shall not be designated for a new term.

The Councillors do not represent the institutions appointing them, therefore, they shall perform their duties in an independent and impartial manner. During their term in office they may only be removed in accordance with the terms set forth under Title Fourth of this Constitution.

The Law shall establish the principles to improve and advance the professional education and

knowledge of officers, as well as for the development of the judicial career, which shall be governed by the principles of excellence, objectivity, impartiality, professionalism and independence.

According with the provisions established by the Law, the Council shall be empowered to issue general decrees to adequately exercise its duties. The Supreme Court of Justice may request from the Council to issue such general decrees as it deems necessary to ensure an adequate exercise of federal judicial functions. The Court en Banc may also review, and if appropriate, revoke the decrees approved by the Council, by a majority of at least eight votes. The Law shall establish the terms and procedures to exercise these powers.

The Council's decisions shall be final and without further appeal and, therefore, no action or remedy shall be admissible against them, save for the ones referring to the appointment, adscription, ratification and removal of Magistrates and Judges, which may be reviewed by the Supreme Court of Justice, only to verify that they have been adopted in accordance

to the rules established by the respective organic law.

The Supreme Court of Justice shall prepare its own budget and the Council shall prepare it for the rest of the Judicial Power of the Federation, regardless of the provisions set forth in paragraph seventh of Article 99 of this Constitution. The budgets so prepared shall be forwarded by the Chief Justice of the Supreme Court, to be included in the Federation's Expenditure Budget draft. The administration of the Supreme Court of Justice shall pertain to its Chief Justice.

Article 101. The Justices of the Supreme Court of Justice, the Circuit Magistrates, the District Judges and their respective clerks, the Councillors of the Federal Judicial Council, as well as the Magistrates of the Superior Chamber of the Electoral Tribunal, may never, in any case, accept nor hold a job or an office of the Federation, the States, the Federal District, or for private persons, save for pro bono positions in scientific, academic, literary or charitable associations.

The individuals who have held the office of Justice of the Supreme Court, Circuit Magistrate, District Court or Councillor of the Federal Judicial Council, as well as of Magistrate of the Superior Chamber of the Electoral Tribunal may not, within the two years immediately following the date of their retirement, act as counsellors, attorneys or representatives in any proceedings before the bodies of the Judicial Branch of the Federation.

During such term, the individuals who have held the office of Justices, except when having held it in a provisional or interim character, may not hold the offices set forth in section VI of Article 95 of this Constitution.

The disqualifications established in this Article shall be applicable to judicial officers enjoying a leave of absence.

The infraction to the provisions in the previous paragraphs shall be punished with the loss of the respective position within the Judicial Branch of the Federation, as well as with the forfeiture of the considerations and compensations which henceforth

should correspond to said office, regardless of any other penalties provided by the laws.

Article 102.

A. The Law shall organize the duties of the Public Prosecution Office of the Federation, whose officers shall be appointed and removed by the President of the Republic in accordance with the respective law. The Public Prosecution Office of the Federation shall be presided by the Attorney General of the Republic, who shall be appointed by the President of the Republic with ratification by the Senate, or in the adjournments thereof, by the Permanent Commission. To become Attorney General it is required to be a Mexican citizen by birth; to be at least thirty five years of age on the day of the appointment; to have held a professional Law degree for a minimum of ten years; to have a good reputation, and not to have been convicted for an intentional crime. The Attorney General may be freely removed by the President of the Republic.

The prosecution of all federal crimes before the courts pertains to the Public Prosecution Office of the Federation. Therefore, it is the duty of said office to request arrest warrants against suspects of a crime; to procure and submit evidence to prove their liability; to see that trials are conducted with regularity so that the administration of justice may be prompt and efficient, to request the imposition of penalties, and intervene in all matters set forth by the Law.

The Attorney General of the Republic shall personally intervene in all constitutional controversies and actions of unconstitutionality set forth in Article 105 of this Constitution.

In all cases where the Federation is a party; in cases involving diplomatic and general consuls and in any other cases where the Public Prosecution Office of the Federation should intervene, the Attorney General shall do so by himself or through his agents.

The Attorney General of the Republic and his agents shall be liable for any faults, omissions

or violations to the Law in which they incur by cause of their duties.

The duty of legal counsel for Government shall be in charge of an agency under the President of the Republic, which shall be established by the Law for that purpose.

B. The Congress of the Union and the States Legislatures, within their respective jurisdiction, shall establish organisms for the protection of human rights protected by Mexican legal order. Such organisms shall hear complaints against administrative actions or omissions by any authority or public servant infringing these rights, except for complaints pertaining to the Judicial Branch of the Federation.

The organisms referred under the previous paragraph shall produce public recommendations which shall not be binding, and file accusations and complaints before the respective authorities.

These organisms shall not have jurisdiction in electoral, labor and judicial affairs.

The organism so established by the Congress of the Union shall be called National Commission of Human Rights; it shall have autonomy for its operations and management of its budget, as well as its own legal capacity and patrimony.

The National Commission of Human Rights shall have an Advisory Council composed by ten councillors who shall be elected by the vote of two thirds of the members present in the Senate or, in the adjournments thereof, by the Permanent Commission of the Congress of the Union, by the same qualified votes. The Law shall determine the procedures to be followed by the Senate for the submission of the proposals. Each year the two first appointed councillors shall be replaced in office unless they should be proposed or ratified for a second period in office.

The President of the National Commission of Human Rights, who shall also be Chairman of the Advisory Council, shall be elected in the same terms as provided under the foregoing paragraph. He shall hold his office for a period

of five years and may be reelected for one single additional term, and may only be removed from office in accordance with the terms provided by Title Fourth of this Constitution.

The President of the National Commission of Human Rights shall annually present to the Powers of the Union a report of activities, to that end; he shall appear before the Houses of Congress in accordance with the terms provided by the Law.

The National Commission of Human Rights shall hear complaints against the resolutions or omissions of its equivalent organisms in the States.

Article 103. The Courts of the Federation shall decide all disputes concerning:

I. Laws or acts of authority that infringe constitutional rights;

II. Laws or acts of a Federal authority which abridge or encroach on the sovereignty of the States or the jurisdiction of the Federal District; and

III. Laws or acts by authorities of the States or of the Federal District which encroach on the jurisdiction of Federal authorities.

Article 104. The Federal Courts shall have jurisdiction over:

I. All civil or criminal disputes arising out of the application and enforcement of federal laws or international treaties celebrated by the United Mexican States. Whenever such disputes should only affect the interests of private parties, ordinary Judges and courts of the States or of the Federal District may hear them, at the choice of the plaintiff. Judgments of lower courts may be reviewed by the appeal court standing directly above the trial court that issued said judgment;

I-B. Reviews filed against final resolutions issued by the administrative law courts referred under sections XXIX-H of Article 73 and section IV, subsection e) of Article 122 of this Constitution, and only in those cases established by the laws. These reviews which shall be heard by

the Collegiate Circuit Courts will be subject to the review procedures established by the Law Regulating Articles 103 and 107 of this Constitution (hereinafter Amparo Law)[7] for indirect Amparo trial, and no further actions or reviews shall be admissible against resolutions issued therein by Collegiate Circuit Courts;

II. All disputes pertaining to the law of the sea;

III. Those disputes in which the Federation is a party;

IV. Those controversies and actions set forth under Article 105, which shall be exclusively brought forth before the Nation's Supreme Court of Justice;

V. Those disputes arising between a State and one or more residents of another State; and

---

[7]   Amparo Law is written in the Constitution as "Law Regulating Articles 103 and 107 of the Constitution", it is usually referred to as the Amparo Law and is translated as such to avoid confusion, since this is the only Amparo Law there is. (West III, Thomas L., Spanish English Dictionary of Law and Business, Atlanta, Georgia, Protea Publishing, 1999, p. 153-154). Also see the following notes for an explanation of the Amparo trial.

**VI.** All cases involving members of the Diplomatic and Consular Service.

**Article 105.** The Nation's Supreme Court of Justice shall hear, under the terms set forth by the Law, of the following matters:

**I.-** Constitutional controversies, except for the ones referring to electoral matters and the previsions of Article 46 of this Constitution, arising between:

a) The Federation and a State or the Federal District;

b) The Federation and a Municipality;

c) The President of the Republic and the Congress of the Union; the President of the Republic and any of the Houses of the said Congress, or, as the case may be, the Permanent Commission, acting as Federal bodies or as bodies of the Federal District;

d) A State and another one;

e) A State and the Federal District;

f) The Federal District and a Municipality;

g) Two Municipalities from diverse States;

h) Two Powers of the same State, regarding the constitutionality of their actions or general provisions;

i) A State and one of its Municipalities, regarding the constitutionality of their actions or general provisions;

j) A State and a Municipality from another State, regarding the constitutionality of their actions or general provisions; and

k) Two government bodies of the Federal District, regarding the constitutionality of their actions or general provisions.

Whenever controversies should concern general legal provisions issued by the States or the Municipalities and contested by the Federation, or by the Municipalities and contested by the States, or in the cases in subsections c), h) and k) hereinbefore, and the resolution issued by

the Supreme Court of Justice should declare them null and void, such resolution shall have general binding effects when approved by the vote of a majority of at least eight Justices.

In all other cases, the resolutions of the Supreme Court of Justice shall have binding effects only in respect to the parties of the controversy.

II. Actions of unconstitutionality directed to establish a possible contradiction between a general legal provision and this Constitution.

Actions of unconstitutionality may be brought forth, within thirty calendar days immediately following the date of publication of the contested provision, by:

a) The equivalent of thirty three percent of the members of the House of Deputies of Congress of the Union, against Federal laws or laws of the Federal District enacted by the Congress of the Union;

b) The equivalent to thirty three percent of the members of the Senate, against Federal laws or

laws of the Federal District, enacted by the Congress of the Union or against international treaties celebrated by Mexico;

c) The Attorney General of the Republic, against Federal, State and Federal District laws, as well as against international treaties celebrated by Mexico;

d) The equivalent to thirty three percent of the members of any of the State Legislative Bodies, against laws enacted by that same body, and

e) The equivalent of thirty three percent of the members composing the Assembly of the Federal District, against laws enacted by said Assembly;

f) Political parties registered with the Federal Electoral Institute, through their national directorships, against federal or local electoral laws; and political parties registered in a State, through their directorships, exclusively against electoral laws issued by the legislative body of the State that granted their registry.

g) The National Commission of Human Rights, against federal and local laws and those of the Federal District, as well as international treaties celebrated by the President of the Republic with the approval of the Senate, which violate the human rights set forth by this Constitution. Also the equivalent agencies of human rights' protection in the States, against laws delivered by their Congresses, and the Commission of Human Rights of the Federal District against laws delivered by the Assembly.

The only procedure to contest the constitutionality of electoral laws is the one established in this Article.

Electoral federal and local laws must be promulgated and published at least ninety days before the commencement of the electoral process that they will regulate, and during said process there may not be any fundamental amendments thereto.

The resolutions of the Supreme Court of Justice may only declare null and void the provisions

contested, provided that such resolutions are approved by the vote of a majority of at least eight Justices.

III. By its own motion or by motion justified and submitted by the corresponding Unitary Circuit Court or by the General Attorney of the Republic, it may hear appeals against decisions issued by District Judges in proceedings where the Federation is a party and which so merit it, in the light of their interest and transcendence.

The resolutions declaring null and void any of the provisions mentioned under sections I and II of this Article, shall not have retroactive effect, save in criminal matters, where general principles and legal provisions applicable thereto shall govern.

In case of failure to comply with the resolutions provided under sections I and II of this Article, the proceedings established in the first two paragraphs of section XVI of Article 107 of this Constitution shall be applied, as appropriate.

Article 106. The Judicial Branch of the Federation, under the terms provided by the respective law,

shall decide the disputes arising by reason of jurisdiction between the Courts of the Federation, between the latter and State Courts or the Courts of the Federal District, between a State Court and a Court from another State, or between a State Court and a Court of the Federal District.

Article 107. All disputes considered under Article 103 shall be subject to the proceedings and formalities established by the Law, in accordance with the following bases:

I. The Amparo trial[8] must always be initiate at the instance of the injured party.

---

[8]   Amparo trial: called Juicio de Amparo or Juicio de Garantías is a native Mexican legal institution. It is a constitutional remedy to obtain relief against violation of constitutional civil rights committed by the government or by a court of law. Its purposes are: to preserve the rights and freedoms granted by the Federal Constitution to private persons against executive, legislative and court acts and to preserve Federal, State and local sovereignty in interstate or Federal-State disputes. Relief applies only to the petitioner and the decision serves only as a reference for subsequent cases (and does not have the same force and effect as precedent does under US or British law). There are 2 types of Amparo trial proceedings: (i) Amparo Indirecto (Indirect Amparo trial) tried before Federal District Courts against Federal, State

II. The Amparo trial shall be always such that it shall involve only private persons, and it will be limited to granting them relief and protection for the specific case concerned in the complaint, and must refrain from any general declaration about the Law or act on which the complaint is based.

In the Amparo trial deficient complaints must be corrected as provided under the Amparo Law.[9]

Whenever the acts claimed in the Amparo trial deprive or may deprive any ejidos or communal

---

or municipal laws, against regulations issued by the Federal or State Executive branches, against acts of authority committed by Federal, State or municipal government agencies; and (ii) Amparo Directo (Direct Amparo trial), which is tried before Federal Collegiate Circuit Courts against final court decisions that violate the Constitution. In both types of Amparo, the government act contested (acto reclamado) may be subject to a provisional suspension, which is a temporary injunction, upon the filing of the petition, and a permanent injunction (suspensión definitiva) may be issued after a hearing where evidence and legal arguments are presented. The judgment is always directed to the government or court authorities in question and not to the individuals and business or corporate or civil entities which are parties to the proceedings. (Becerra, Javier F., op. cit., Note 3, p. 488)

[9] Federal courts must correct deficiencies found in certain complaints, as provided by Amparo Law.

population center that by law or in fact are organized as a community, or any ejidatario or any comunero,[10] of their ownership, possession and enjoyment of their lands, waters, pastures and woodlands, all evidence that could benefit any of the aforesaid entities or individuals must be obtained at the court's own motion, and any actions or proceedings deemed necessary to determine their agrarian rights, as well as the nature and consequences of the acts claimed from any authority, must be ordered.

In the Amparo trials referred in the preceding paragraph, neither dismissal of the suit for procedural inactivity nor for lapsing of the proceedings shall be admissible to the detriment of ejido or communal population centers, or ejidatarios or comuneros, but either one may be admissible to their benefit. Whenever any of the acts claimed should affect the collective rights of a rural settlement, neither their express motion for dismissal nor having consented the

---

[10]   See Note 19 of Title One.

act claimed shall be admissible, unless such motion is determined by the General Assembly or said consent is granted by the latter.

III. The Amparo trial against acts by judicial, administrative, or labor courts shall only be admissible in the following cases:

a) Against those final judgments or awards and resolutions putting an end to a trial, where no ordinary review is available to amend or to change them, whether the grievance should occur therein or during the course of proceedings, affecting the petitioner's defenses so as to influence the outcome of the judgment; provided that, in civil causes, the grievance was contested during the course of proceedings by any ordinary means for relief provided by the Law and claimed as a grievance before appellate court, if it occurred at trial court. These requisites shall not be required in Amparo trials against judgments issued in disputes regarding marital status actions or actions affecting the order and stability of the family;

b) Against acts during a trial which enforcement would render them impossible to restitute, whether out of court or after the trial's conclusion, upon having exhausted the appropriate remedies; and

c) Against acts affecting persons who are not involved in the lawsuit.

IV. In administrative cases, an Amparo trial may be brought forth also against decisions causing a grievance which cannot be repaired by any remedy, court proceeding or any other lawful means of defense. The exhaustion of such remedies shall not be necessary whenever the Law providing them requires more requisites to obtain an injunction of the act contested[11] than those required by the Amparo Law as a condition therefore.

---

[11] Injunction or stay of execution, as it is used here, is called suspensión del acto reclamado in Mexican law. It is a stay of execution, similar (but not identical) to an injunctive relief in Amparo proceedings whereby the acts of the respondent authority are suspended until a final judgment on the Amparo is reached. (Becerra, Javier F., op. cit., Note 3, P. 743)

V. The Amparo trial against final judgments or awards and resolutions putting an end to the case, whether the grievances have occurred during the course of proceedings or in the judgment itself, shall be filed before the corresponding Collegiate Circuit Court subject to the territorial distribution set forth in the Organic Law of the Judicial Branch of the Federation, in the following cases:

a) In criminal causes, against final judgments issued by federal, ordinary, or military courts;

b) In administrative cases, whenever private persons contest any final judgments or decisions putting an end to the trial, issued by ordinary or administrative courts, which cannot be redressed by any remedy, trial or any other ordinary legal procedure;

c) In civil cases, against any final judgments issued by Federal courts or in commerce trials,[12]

---

[12] In Mexico, commercial laws are federal. Nevertheless, both, federal and state judges have jurisdiction over these cases. The plaintiff usually decides the court where she wants to present her suit.

whether the authority issuing the judgment be federal or local, or in suits under ordinary jurisdiction;

In federal civil cases, judgments may be contested through an Amparo trial by any of the parties, even by the Federation in defense of its own pecuniary interests; and

d) In labor cases, when contesting awards issued by Federal or Local Conciliation and Arbitration Boards or by the Federal Conciliation and Arbitration Board for Government Employees;[13]

The Supreme Court of Justice by its own motion or by motion justified and submitted by the corresponding Collegiate Circuit Court or by the Attorney General of the Republic, may hear Direct Amparo trials[14] in the light of their interest and transcendence.

---

[13]   In Labor Law, a quasi-administrative court charged with the hearing of a deciding upon, labor, employment, and labor union matters. (Becerra, Javier F., op. cit., Note 3, P. 490)

[14]   Article 107 of the Constitution presents two types of Amparo trials. The Direct Amparo trial is regulated in section V and the Indirect Amparo trial are regulated in section VII of said Article.

VI. In the cases provided in the aforesaid section, the Amparo Law shall set forth the proceedings and terms that Collegiate Circuit Courts or the Supreme Court of Justice must abide by to issue their respective judgments.

VII. The Amparo trial against acts during trial, outside court and after trial, or those acts affecting persons who are not involved in the lawsuit, against laws or against acts by any administrative authority, shall be filed before the District Judge under whose jurisdiction is the place where the contested act is carried out or where such act is attempted, and its proceedings shall be limited to the report rendered by the authority, to a hearing which shall be summoned in the same court order requiring the report from the respondent authority. In such hearing the evidence submitted by the parties shall be admitted, their allegations shall be heard, and judgment on the case shall be rendered.

VIII. Appeal for review is admissible against judgments rendered in Amparo trial proceedings

by District Judges or Unitary Circuit Courts. Such review shall be brought before the Supreme Court of Justice:

a) When after having contested in an Amparo trial any federal or local laws, international treaties, regulations issued by the President of the Republic in accordance with section I of Article 89 of this Constitution and regulations of local laws issued by the Governors of the States or by the Head of Government of the Federal District, for considering any of them in direct violation of the Constitution and the issue of constitutionality is still addressed in the appeal for review;

b) In the cases set forth under sections II and III of Article 103 of this Constitution.

The Supreme Court of Justice by its own motion or by motion justified and submitted by the corresponding Collegiate Circuit Court or by the Attorney General of the Republic, may review those Amparo trial judgments it deems relevant in the light of their interest and transcendence.

In any other cases not provided for in the previous paragraphs, the appeal for review shall be brought forth before Collegiate Circuit Courts, whose judgments shall be final and shall not admit any further review.

IX. The judgments rendered in Direct Amparo suits issued by Collegiate Circuit Courts shall not admit any further review, unless they decide on the unconstitutionality of a law or establish a direct interpretation of a provision of the Constitution. In these cases, the Supreme Court of Justice subject to its own general decrees[15] shall decide if a certain judgment implies the establishment of a significant and transcendent criterion. Only under these premises shall the appeal before the Supreme Court of Justice be admissible, but the subject matter of the case in review shall be restricted exclusively to decide issues of a purely constitutional nature.

---

[15] The Supreme Court of Justice in Full Court may issue regulations on several topics such as internal government, jurisdiction and others.

X. Contested acts may be subject to injunction[16] in the cases and under the terms and guarantees set forth by the Law, wheretofore, the judge or magistrate shall take into account the nature of the alleged violation, the difficulty to compensate for damages and losses that the petitioner may suffer if the contested act is executed, and those which the injunction may cause to third parties affected[17] and to public interest.

Said injunction must be granted in final judgments in criminal matters when serving notice that an Amparo trial has been filed. In civil matters, an injunction will be awarded upon indemnity bond provided by the petitioner to answer for damages and losses that such injunction could

---

[16]   In the Amparo Law, this type of injunction is called suspensión and it has several effects, among which are: it can function as a Court order directing the Government defendant do not pursue the action on which relief is being sought and maintain the situation as is, until a final resolution is issued on the Amparo trial; it may also be used to obtain a stay of execution. (Becerra, Javier F., op. cit., Note 3; p. 743)

[17]   Third parties who must be joined in action because their interests would be affected by the decision of the Amparo trial. (Campbell Black, Henry, op. cit., Note 1, p. 714, and Becerra, Javier F., op. cit., Note 3, p. 755)

cause. Said injunction will be cancelled if the other party gives bond to insure the reinstallment of the situation to the state which it would have had should the Amparo be awarded, and to pay for resulting damages and losses.

XI. The injunction shall be requested from the respondent authority,[18] in the case Direct Amparo trials brought forth before Collegiate Circuit Courts, and the respondent authority shall decide the issue. In any case, the petitioner must file the Amparo trial before the respondent authority, attaching copies of the petition for the other parties in the suit, including the Public Prosecutor and one for the court file. In all other cases, the District Courts or Unitary Circuit Courts shall hear and decide on the injunction.

XII. Violations to the constitutional rights provided under Articles 16, in criminal matters,

---

[18] Respondent authority is the authority against whom an Amparo trial was filed, the government defendant held responsible for an unconstitutionally action. (West III, Thomas L., op. cit., Note 28, p. 40).

and 19 and 20, shall be claimed before the appeal court standing directly above the trial court that committed the violation, or before the corresponding District Judge or Unitary Circuit Court, and in either case, the judgments rendered may be reviewed as provided under section VIII.

Should the District Judge or the Unitary Circuit Court not reside in the same place of the respondent authority, the Law shall establish the court or the judge before whom the Amparo trial must be brought forth who may grant a provisional injunction of the contested act, in the cases and terms set forth by law.

XIII. Whenever Collegiate Circuit Courts should hold contradictory judgments in Amparo trials within their jurisdiction, the Justices of the Supreme Court of Justice, the Attorney General of the Republic, the aforesaid Courts or the parties that intervened in the trials where said judgments were held, may denounce the contradiction to the Supreme Court of Justice, so that the latter in Full Court or the respective

Chamber, as appropriate, may decide the judgment that must prevail as binding judicial precedent.

When the Chambers of the Supreme Court of Justice should hold contradictory judgments in the Amparo trials heard under their jurisdiction, any one of said Chambers or the Attorney General of the Republic, or the parties who intervened in the trials where said judgments were held, may denounce the contradiction to the Supreme Court of Justice, who acting in Full Court, shall decide which judgment shall prevail.

The resolution rendered by the Chambers of the Supreme Court of Justice or by the latter acting in Full Court, in the cases provided under the two previous paragraphs, shall only be effective for the purpose of establishing binding judicial precedents and shall not affect the specific legal situation arising from the judgments rendered in trials where the contradiction occurred, and

XIV. Save for the provisions in the last paragraph of section II of this Article, the Amparo trial shall be dismissed or the lapsing of the proceedings

for procedural inactivity of the petitioner or the appellant, respectively, in cases where the contested act is of a civil or of an administrative nature, and in accordance with the terms set forth by the Amparo Law. The lapsing of the proceedings in Amparo trial shall render final and conclusive the judgment under review.

XV. The General Attorney of the Republic or a Federal Public Prosecutor appointed by the former for that purpose, shall be a party in all Amparo suits; but they may abstain from intervening thereon, whenever the case in question should, in their opinion, lack public interest.

XVI. If the Amparo trial has been granted and the respondent authority should insist in repeating the contested act or if it should try to avoid the judgment issued by the Federal authority, and should the Supreme Court of Justice consider that such failure to comply is inexcusable, said authority shall immediately be separated from office and brought to trial before the appropriate

District Judge. Should such failure to comply be excusable, upon rendering a previous declaration of failure to comply or repetition of the contested act, the Supreme Court shall require compliance from the respondent authority and shall grant it a prudent term to comply with the judgment. Should said authority not comply with the judgment within the term granted theretofore, the Supreme Court of Justice shall act in accordance with the terms set forth hereinbefore.

Whenever the nature of the act should permit it, the Supreme Court of Justice, once it has determined failure to comply or repetition of the contested act, may decide on its own motion to substitute the enforcement of the Amparo judgment, when its execution should seriously affect society or third parties in a larger proportion than the economic benefits that the petitioner would obtain. Likewise, the petitioner may request from the appropriate body, to substitute the enforcement of the Amparo

judgment whenever the nature of the act should permit it.

The lack of procedural activity or of motions by an interested party, in procedures pursuing the enforcement of Amparo judgments, shall lead to the lapsing of the proceedings as provided by the Amparo Law.

XVII. The respondent authority shall be accused and brought forth before the appropriate authority, whenever it should not comply with the injunction of the contested act having the duty to do so, and whenever it should admit an insufficient or false bond, in these two last cases, the authority shall be jointly liable with the person offering the bond and with the one providing it.

XVIII. (Repealed).

# TITLE FOUR
## The liabilities of public officers

Article 108. For the purpose of the liabilities to which this Title refers, representatives by popular election, members of the Judicial Branch of the Federation and of the Judicial Branch of the Federal District, officers and employees, and in general any individual holding an office, an employment or a commission of whatever nature in the Congress of the Union, the Assembly of the Federal District or the Federal Public Administration or in the Federal District, as well as the employees of those entities to which this Constitution has granted autonomy, shall be considered public officers, and they shall be liable for any actions or omissions in which they incur in the performance of their respective duties.

**258**  Political Constitution of the United Mexican States

The President of the Republic, during his term in office, may be impeached only for treason against the United Mexican States and high crimes under ordinary jurisdiction.

Governors of States, Deputies of State Legislatures, Magistrates of Superior Courts of Justice of the States and, as appropriate, the members of the Judicial Councils of the States, shall be liable for violations to this Constitution and to Federal laws, as well as for improper handling of Federal funds and resources.

The Constitutions of the States shall specify, in the same terms as the first paragraph of this Article and for the purpose of liabilities, the nature of public officers of those individuals holding an office, employment, or a commission in the States and the Municipalities.

Article 109. The Congress of the Union and the State Legislatures, within the scope of their respective jurisdictions, shall enact liability laws for public officers, and any other provisions aiming

to punish public officers who incur in liabilities according to the following provisions:

I. The penalties established in Article 110 shall be imposed through impeachment proceedings to those public officers referred in said Article, should they incur in actions or omissions in the performance of their duties, affecting fundamental public interests or the proper discharge of their duties in office.

Impeachment proceedings are not admissible just for the sole expression of ideas.

II. The commission of a crime by any public officer shall be prosecuted and punished in accordance with criminal law; and

III. Administrative penalties shall be imposed on public officers for actions or omissions affecting the legality, honesty, loyalty, impartiality and efficiency by which they must abide in the performance of their employments, offices or commissions.

Procedures to impose the penalties mentioned shall be carried out independently. Penalties of the same nature may not be imposed twice for the same act.

The laws shall establish the cases and circumstances where criminal penalties shall be imposed for unjust enrichment, to those public officers who during their term in office, or by reason thereof, by themselves or through third parties, substantially increase their estate, acquire assets or act as owners of such assets, when they cannot justify their licit origin. Criminal laws shall punish such behaviour with the seizure and forfeiture of ownership over said assets, besides any other applicable penalties.

Any citizen, under his strictest responsibility and by submitting the evidence of the case, may press charges before the House of Deputies of the Congress of the Union in respect to the acts referred in this Article.

Article 110. The following offices may be subject to impeachment: Senators and congressmen to the Congress of the Union, Justices of the Nation's

Supreme Court of Justice, Councilors of the Federal Judicial Council, State Secretaries, Representatives of the Assembly of the Federal District, the Head of Government of the Federal District, the Attorney General of the Republic, the Attorney General of the Federal District, Circuit Magistrates and District Judges, Magistrates and Judges of the Federal District, Councilors of the Judicial Council of the Federal District, the Chairman Councilor, the Electoral Councilors and the Secretary of the Federal Electoral Institute, the Magistrates of the Electoral Tribunal, the general managers and their equivalents in decentralized agencies and Government controlled corporations, and other associations assimilated to the latter and public trusts.

State Governors, Deputies of the State Legislatures, Magistrates of Superior Courts of Justice of the States, and if applicable, members of the Judicial Councils of the States, may only be subject to impeachment according to the terms provided in this Title for serious violations to the Constitution and to Federal laws enacted in pursuance thereof,

as well as for unlawful management of Federal funds and resources, but in this case the decision shall be only a declaratory resolution which shall be communicated to the State Legislatures, so that they may take appropriate actions in accordance with their respective faculties.

The penalties that shall apply will be removal from public office, disqualification to perform any public functions, or hold any public offices, employments or commissions of whatever nature.

To enforce the penalties provided herein, the House of Deputies shall submit the respective accusation before the Senate, after previous declaration by an absolute majority of the members present in the session of said House, after carrying out the respective procedure and hearing the accused officer.

The Senate setting itself as grand jury, shall hear the accusation, and shall impose the corresponding penalties in a resolution approved by the vote of two thirds of its members present in the session, once the corresponding procedures have been

carried out and after having heard the accused officer.

The declarations and resolutions of the House of Deputies and the Senate are final.

Article 111. To press criminal charges against deputies and senators of the Congress of the Union, Justices of the Nation's Supreme Court of Justice, Magistrates of the Superior Chamber of the Electoral Tribunal, Councilors of the Federal Judicial Council, State Secretaries, Representatives to the Assembly of the Federal District, the Head of Government of the Federal District, the Attorney General of the Republic, and the Attorney General of the Federal District, as well as Chairman Councilor and the Electoral Councilors of the General Council of the Federal Electoral Institute, for the commission of crimes during their term in office, the House of Deputies shall declare by an absolute majority whether there are or there are not grounds to proceed against the accused.

If the resolution of the House were negative, no further action shall be taken, but that shall not

prevent the imputation for the commission of a crime to continue its course when the accused public officer should have concluded his term in office, since such resolution does not prejudge in respect to the grounds of the imputation.

Should the House declare there are grounds to proceed against the accused, the individual shall be placed at the disposition of the corresponding competent authorities so that they may act in accordance with the Law.

In regards to the President of the Republic, he can only be impeached before the Senate subject to the terms provided by Article 110. In this case, the Senate shall decide on the grounds of the applicable criminal legislation.

To press charges for federal crimes against Governors of the States, deputies of the States Legislatures, Magistrates of the Superior Courts of Justice of the States and, if applicable, against the members of the Judicial Councils of the States, the same procedure established in this Article shall be followed, but in this case, the declaration stating

there are grounds to proceed against the accused shall be issued with the purpose of communicating the decision to State Legislatures so that in exercise of their powers, they may take any appropriate actions.

The declarations and resolutions of the Houses of Deputies and of the Senate are incontestable.

The effects of the declaration stating there are grounds to proceed against the accused shall be his removal from office while he is subject to criminal proceedings. Should such proceedings end with an acquittal the alleged culprit may resume the exercise of his office. Should there be a conviction for a crime committed while holding office, pardon shall not be granted to the convict.

A declaration stating there are grounds to proceed against a public officer shall not be required in civil law actions.

Criminal penalties shall be applied in accordance with the provisions of criminal legislation and in the case of crimes where the perpetrator obtains an economic gain or causes pecuniary damages or

losses, they shall be graduated in accordance with the gains obtained and with the requirements to repair said damages and losses caused by his unlawful conduct.

Economic penalties may not exceed three times the amount of gains obtained or the damages or losses caused.

Article 112. A declaration stating there are grounds to proceed against a public officer shall not be required from the House of Deputies whenever any of the public officers referred in the first paragraph of Article 111, should commit a crime during the term he is not holding office.

Once a public officer has returned to perform the duties of his office or has been appointed or elected to hold a different office, but one of those enlisted under Article 111, the actions taken shall be in accordance with the provisions established in said Article.

Article 113. The laws on administrative responsibilities of public officers, shall establish their obligations so as to safeguard the legality,

honesty, loyalty, impartiality and efficiency in the performance of their functions, employments, offices and commissions; the applicable penalties for actions or omissions in which said officers should incur, as well as the procedures and the authorities to apply such laws. Said penalties, besides the ones set forth by the laws, shall be suspension, removal and disqualification, as well as pecuniary penalties, and they shall be applied in accordance with the economic gains obtained by the public officer liable and for the pecuniary damages and losses caused by his actions or omissions, as set forth under section III of Article 109, but which may not exceed of three times the amount of the gains obtained or of the damages and losses caused.

The State's responsibility for damages caused to the property or rights of private persons, by reason of its irregular administrative activities, will be considered direct and strict responsibility. Private persons shall be entitled to an indemnification according to the bases, limitations and procedures established by the laws.

Article 114. The impeachment procedure may only be initiated during the term in which the public officer holds office and within the next following year. The corresponding penalties shall be applied within a period no to exceed one year from the date the procedure started.

Liability for crimes committed during the term in office by any public officer shall be enforceable in accordance with the terms of the statute of limitations of criminal law, which may never be inferior to three years. The terms of the statute of limitations shall be interrupted while the public officer holds any of the offices referred under Article 111.

The Law shall set forth the cases where the statute of limitations shall be applied to administrative liability, taking into account the nature and consequences of the acts and omissions established in section III of Article 109. Whenever such acts or omissions were of a serious nature, the term of the statute of limitations shall not be inferior to three years.

# TITLE FIVE

## The States of the Federation and the Federal District

Article 115. The States shall adopt for their internal government, the popular representative and republican form of government, having as the basis of their territorial division and political and administrative organization the Free Municipality, in accordance to the following principles:

I. Each Municipality shall be governed by a Municipal Council whose members shall be chosen trough direct election by the people; it shall be composed of a Major and the number of Councilmen and legal representatives established by the Law. The jurisdiction that this Constitution grants to Municipal government shall be exercised by the Municipal Council exclusively and there shall be no intermediate

authority between the latter and the government of the State.

Majors, legal representatives and councilmen of Municipal Councils elected trough direct election by the people, may not be reelected for the next term. The individuals who by indirect election or by appointment of a certain authority, perform duties corresponding to said offices, no matter how they are called, may not be elected for the next term. All the officers previously mentioned, if they shall be incumbents, they cannot be elected for the next term as alternate ones, but the individuals who have been alternate may be elected for the next term as incumbents unless they have exercised the duties of the office.

State Legislatures by resolution of two thirds of their members may suspend Municipal Councils, declare that said councils have disappeared and suspend or revoke the powers of any of its members, for any of the serious causes set forth in State law, provided that its members have

had sufficient opportunity to submit evidence and to submit the arguments they should deem most convenient.

If any of the members should cease to carry out his duties, he shall be replaced by his alternate or action shall be taken in accordance with the Law.

In the event that Municipal Council should be declared dissolved, by cause of resignations or by the absolute absence of the majority of its members, if according to the Law it is not admissible for the alternates to take office, nor to summon to new elections, the State Legislatures shall designate from among the residents, the Municipal Board that shall serve until the end of the respective terms. Such Municipal Boards shall be constituted by the number of members set forth by the Law and must have the qualifications to be eligible which are set forth for councilmen;

II. The Municipalities shall be vested with legal capacity and shall handle their own estate as provided by the Law.

Municipal Councils shall have powers to approve, according to the laws on municipal affairs which the State Legislatures must enact, the police and government ordinances, administrative orders and provisions of general observance within their respective jurisdiction, which shall organize public municipal administration, regulate municipal affairs, procedures, public functions and public services under their jurisdiction and which shall assure the participation of citizens and residents.

The purpose of the laws referred under the foregoing paragraph shall be to establish:

a) The general bases for Municipal public administration and administrative procedure, including review procedures and bodies to decide disputes between said administration and private persons, subject to the principles of equality, publicity, due process and legality;

b) Cases requiring agreement of two thirds of Municipal Council members, in order to issue resolutions affecting Municipal real estate

property and to execute acts or agreements which are binding for the Municipality for a larger term than the term of Municipal Council;

c) General provisions to execute the agreements set forth under sections III and IV of this Article as well as in the second paragraph of section VII of Article 116 of this Constitution;

d) The procedure and conditions for the State government to take upon itself a duty or service that is attributed to the Municipal Council when, not having the corresponding agreement, the State Legislature should consider that it is not possible for the Municipality to perform them or provide them. In this case, it shall be necessary a previous request from the respective Municipal Council, approved by at least two thirds of its members; and

e) Applicable provisions in those Municipalities which do not have the corresponding government ordinances or regulations.

State Legislatures shall issue the provisions establishing the proceedings to solve the

conflicts arising between the Municipalities and the State government or between Municipalities themselves, by cause of actions resulting from the premises under subsections c) and d) hereinbefore;

III. The Municipalities shall be in charge of the following duties and public services:

a) Drinking water, drainage, sewage, treatment and disposal of waste water;

b) Street lightning;

c) Cleaning, collection, transfer, treatment and final disposal of solid waste;

d) Markets and supply centers;

e) Cemeteries;

f) Slaughterhouses;

g) Streets, parks and gardens and their furnishings;

h) Public security, in the terms set forth by Article 21 of this Constitution, Municipal and traffic police; and

i) Any other that State Legislatures shall establish in accordance with the social, economic and territorial conditions of the Municipalities, as well as with their administrative and financial capacity.

Regardless of their constitutional jurisdiction, in the discharge of their duties or the provision of the services entrusted to them, the Municipalities shall abide by the provisions of Federal and State laws.

The Municipalities, upon previous agreement, between their Municipal Councils, may coordinate among themselves and associate in order to provide more efficient public services or to perform their corresponding duties in a better manner. In this case and in the event of an association of Municipalities from two or more States, such Municipalities must have the approval of their respective States Legislatures. Likewise, when the respective Municipal Council should consider it necessary, it may execute agreements with the State so that the latter, in a

direct manner or through the corresponding body, shall take care in a temporary manner, of some of the aforementioned duties and public services, or so that they may be provided or performed in a coordinated manner by the State and the Municipality itself;

Indigenous communities within the Municipal scope may coordinate and establish associations under the terms and for the purposes set forth by the Law.

IV. Municipalities shall freely administer their treasuries, which shall be composed with the revenues of the estates that they own, as well as with such taxes and government charges and any other income that the Legislatures should establish to their benefit and in any case:

a) They shall receive such taxes and duties, including additional rates, which the State shall establish on real estate property, on its division, consolidation, transfer and improvement, as well as any others that result from a change in the value of real estate property.

Municipalities may celebrate agreements with the State so that the latter may perform certain functions related with the management of such taxes and government charges.

b) The Federal grants which shall be covered to Municipalities by the Federation, in accordance with the bases, amounts, and terms which are annually established by the States Legislatures.

c) Income from public services in charge of the Municipality.

Federal laws shall not restrict the powers of the States to establish those taxes and government charges provided under subsections a) and c), nor shall they grant exemptions in relation to thereof. State laws shall not establish exemptions or subsidies in favor of any person or institution in respect to said taxes and government charges. Only the property of the Federation, the States or the Municipalities considered as public domain, shall be exempt, unless they are used by decentralized agencies or Government controlled corporations or by private persons under any

title, for administrative purposes or for purposes different than their public object.

The Municipalities, within the scope of their jurisdiction, shall propose to the State Legislatures the quotas and rates applicable to taxes, duties, public works taxes, and cadastral catalogue of land and constructions values, used as the basis for taxes and government charges on real estate property.

The State Legislatures shall approve the Municipalities' income laws, check and audit their public accounts. The expenditure budgets shall be approved by the Municipal Councils, having as a base the available income. The expenditure budgets shall include each of the tabulators of the remunerations proposed for the Municipal public officers, being subjected to that which article 27 of this Constitution establishes.

The resources constituting the Municipal treasury shall be applied by Municipal Councils or by whoever they shall authorize, in accordance with the Law.

V. Municipalities, under the terms provided by their respective Federal and States laws, shall have the powers to:

a) Prepare, approve and administer the urban municipal development plan and municipal zoning;

b) To participate in the creation and management of their territorial reserves;

c) To participate in the creation of regional development plans which must be in accordance with the general plans on the subject matter. Whenever the Federation or the States should make regional development projects they must assure the Municipalities' participation;

d) To authorize, control and supervise the régime applicable to the use of land, within the scope of its jurisdictions and within its territory;

e) To intervene in the legalization of urban land tenure;

f) To grant construction permits and licenses;

g) To participate in the creation and management of natural preserve areas, and to prepare and apply programs to regulate and organize these issues;

h) To intervene in the preparation and application of programs for public transportation of passengers when these affect the scope of their territory; and

i) To enter into agreements to administrate and guard federal zones.

In all applicable matters and in accordance with the purposes set forth in paragraph third of Article 27 of this Constitution, they shall issue any necessary regulations and administrative provisions.

VI. Whenever two or more urban centers located in the Municipal territories from two or more States, should constitute or tend to constitute a demographic continuity, the Federation, the respective States and the Municipalities, within the scope of their respective jurisdictions, shall

plan and regulate in a joint and coordinated manner, the development of said centers in accordance with provisions of the Federal law on the subject matter.

VII. Preventive police shall be commanded by the Town Hall according to the local Law of Public Safety. Said police shall obey any order given by the Governor in case of force majeure or serious public disturbances.

The President of the Republic shall have command of public forces in the places where he resides regularly or temporarily;

VIII. State laws shall introduce the principle of proportional representation in the election of the Municipal Councils of all the Municipalities.

Labor relationships between the Municipalities and their workers, shall be governed by the laws issued by the State Legislatures on the grounds of the provisions of Article 123 of this Constitution and its regulatory provisions;

IX. (Repealed).

X. (Repealed).

Article 116. The States' government Power is divided for its exercise into Executive, Legislative and Judicial. Two or more of these Powers may not be united in one single person or corporation, nor shall the Legislative Branch be vested in one single individual.

The Branches of the States shall be organized in accordance with the Constitution of each of them, subject to the following provisions:

I. State Governors may not remain in office for more than six years.

The election of State Governors and of the members of State Legislatures shall be direct and subject to the terms provided by their respective electoral laws.

State Governors, who have been chosen by regular or extraordinary election by the people, may never in any case, hold said office again

not even as interims, provisional, alternates or acting governors.

The following persons may never be elected for the subsequent term:

a) The Alternate Constitutional Governor, or the person appointed to conclude the term in the case of absolute absence of the Constitutional Governor, even if the title of office has a different name;

b) The Interim Governor, the Provisional Governor or the citizen, who under any denomination, should fill the temporary absences of the Governor, if he has discharged the duties of Governor during the last two years of the term.

Only a Mexican citizen by birth and native of the respective State, or a person who has effectively resided in such State for no less than five years immediately before the day of the election, and to be at least 30 years old at that time, if such requirement is set forth by the Constitution of the respective State, may be Constitutional Governor.

II. The number of representatives of the States Legislatures shall be proportional to the number of residents of each State. In any case, there may not be less than seven deputies in States whose population is less than 400,000 inhabitants; nine in States whose population exceeds this number but has not reached 800,000 inhabitants; and eleven in States whose population exceeds 800,000.

Deputies to State Legislatures may not be reelected for the subsequent term. Alternates may be elected as incumbents for the subsequent term, provided they have not held office, but incumbents may not be elected as alternates for the subsequent term.

State Legislatures shall be composed by deputies elected according to the principles of relative majority and proportional representation, subject to the terms provided by their laws.

The annual budget approval corresponds to the State legislatures. The establishment of the remunerations to be perceived by public officers

shall be subjected to the bases established in article 127 of this Constitution.

The Legislative, Executive and Judicial Branches, as well as organisms with a constitutionally recognized autonomy that use resources from the Expenditures Budget, shall include in their budget projects each of the tabulators of the remunerations proposed for their public officers. These proposals shall observe the procedure that has been established for the budget approval in section IV of article 74 of this Constitution and other applicable laws.

The Congresses of the States shall have Supervising Entities which shall have technical and operative autonomy to exercise their powers and to decide about their internal organization, functioning and resolutions, as provided by their Laws. The supervising function shall be developed according to the principles of posteriority, annuity, legality, impartiality and reliability.

The Head of the Supervising Entity of the States shall be elected by two thirds of the individuals

present in the local Congresses, to serve no less than seven years, and he should have five years experience in matters of control, financial auditing and liabilities.

III. The Judicial Branch of the States shall be exercised by the Courts established in their respective Constitutions.

The independence of Magistrates and Judges in the performance of their duties must be assured by the Constitutions and the Organic Laws of the States, which shall establish the qualifications for admission, training and permanence of the individuals serving in the State Judicial Branches.

Magistrates composing the State Judicial Branches must comply with the qualifications set forth by sections I to V of Article 95 of this Constitution. Individuals who have held the office of Secretary or its equivalent, Attorney General  or deputy to the State Legislature in their respective States during the year immediately previous to the date of the appointment, may not hold the office of Magistrate.

The appointments of Magistrates and Judges composing the State Judicial Branches shall preferably fall on those individuals who have served efficiently and honestly in the judiciary or upon those who deserve it for their honorability, competence and background in other branches of the legal profession.

Magistrates shall hold their office for the term set forth in the State Constitutions. They may be reelected and in such event, they may only be removed from office in accordance with the terms set forth by the Constitutions and laws of liabilities of public officers of the States.

Magistrates and Judges shall receive an adequate and non waivable remuneration which may not be reduced during their term in office.

IV. In electoral affairs the Constitutions and the laws of the States shall guarantee that:

a) The elections for State Governors, for members of State Legislatures and for members of Municipal Councils shall take place by free, secret and

direct elections; the election day shall take place on the first Sunday of July of the correspondent year. The States whose elections are celebrated on the year of the federal elections and do not coincide on the same date of the federal election, shall not be obligated by the latter disposition;

b) Electoral officers shall carry out their duties in accordance with the principles of legality, impartiality, objectivity, certainty and independence;

c) The authorities in charge of organizing elections and judicial authorities deciding the disputes thereof shall enjoy autonomy in the exercise of their functions and independence in their decisions;

d) The competent electoral authorities of administrative type can agree with the Federal Electoral Institute so that this entity organizes the local electoral processes;

e) The political parties can only be composed by citizens without the intervention of guild

organizations, or with a different corporate purpose and without a corporative affiliation. Also that they have the exclusive right to request the registry of candidates to popular election offices, with the exception of the prevision of Article 2, paragraph A, sections III and VII of this Constitution.

f) The electoral authorities can only intervene in the internal affaires of the parties in the terms expressly pointed out by them;

g) The parties receive equitably public funds for their permanent ordinary activities and those necessary to obtain the public vote during the elections. And to establish the procedure to terminate the parties who loose their registration and the destination of their assets and remnants.

h) The establishment of criteria to determine the limitations to political parties' campaign expenditures for elections, as well as the maximum amounts allowed for monetary contributions from their sympathizers, whose total sum shall

not exceed the ten per cent of the maximum campaign expenditures determined for the election of Governors; the procedures to control and supervise the origin and use of political parties' resources; and to see that penalties are established for failure to comply with the provisions issued in reference to this matter;

i) The political parties have access to radio and television, according to the rules established by Article 41, paragraph B, Third Basis of this Constitution.

j) To set regulations for the electoral campaigns and pre-campaigns of the political parties, as well as the penalties for those who violate them. In any case, the campaigns shall last no longer than ninety days for the election of Governor, nor sixty days when only local deputies and municipal governments are elected; pre-campaigns shall not last more then two thirds of the respective electoral campaigns.

k) Mandatory basis for the coordination between the Federal Electoral Institute and the local

electoral authorities on supervising the political parties' finances are set according to the last two sections of Article 41, Fifth Basis of this Constitution.

l) An impugnation system is established so that all electoral acts and resolutions are invariably subjected to the principle of legality. Also to specify the assumptions and regulations to carry out total or partial recounts of the voting on the administrative and jurisdictional scopes;

m) That causes of nullity for the election of Governor, local Deputies and Municipal Governments be established, as well as the terms to accomplish every impugning instance, taking into account the principle of definitiveness of the different stages of the electoral processes, and

n) That crimes are categorized and misdemeanors determined in electoral matter, as well as the penalties to be imposed because of them.

V. The State Constitutions and laws may institute administrative courts, vesting them with full

autonomy to issue their judgments. These courts shall be in charge of deciding the disputes between State Administration and private persons, establishing the provisions for their organization and operation, the proceedings as well as the remedies against their resolutions.

VI. Labor relationships between the States and their workers shall be governed by the laws enacted by State Legislatures under the grounds of Article 123 of the Political Constitution of the United Mexican States and its regulatory provisions.

VII. The Federation and the States, subject to the Law, may celebrate agreements where a State takes upon itself the exercise of certain functions of the Federation, such as the undertaking and performance of works and the rendering of public services, whenever social and economic development so require it.[1]

---

[1]   The text of the constitution in this section is not clear. Consequently its translation is not literal. It attempts to represent the purpose and meaning of said provision.

The States shall be empowered to celebrate said agreements with their Municipalities so that the latter may assume the provision of public services or the exercise of the functions referred under the preceding paragraph.

Article 117. In no case shall the States:

I. Celebrate alliances, treaties or coalitions with any other States or with foreign powers;

II. (Repealed).

III. Coin money, issue paper money, stamps or stamped paper.

IV. Levy duties on persons or goods passing through their territory.

V. Prohibit or directly or indirectly levy duties upon the entrance or exit into or from their territory of any domestic or foreign goods.

VI. Tax the consumption or circulation of domestic or foreign goods, by imposing taxes or duties, to be collected by local customhouses or subject to inspection or registration of said

merchandise or require it to be accompanied by documents.

VII. Enact or maintain in force tax provisions or laws which impose different duties or requirements between merchandise, foreign or domestic, by reason of their origin, whether this difference is established in respect to similar local products or between similar products of different origin.

VIII. To directly or indirectly contract liabilities or loans with governments of other nations or with foreign corporations or private persons or whenever the payments thereof must be made in foreign currency or outside national land territory.

States and Municipalities may not contract neither liabilities nor loans, except when these are intended for productive public investments. This provision also applies to the loans and liabilities contracted by decentralized agencies or government controlled corporations. All such loans and liabilities agreements must abide by

the bases established by the Legislatures through laws, for the items and only up to the amounts annually set forth in their respective budgets. Governors shall report on the exercise of such loans when submitting the public account.

IX. To levy duties on the production, storage, or sale of tobacco leaves, in a different manner or with greater quotas than those authorized by the Congress of the Union.

The Congress of the Union and State Legislatures shall enact laws intended to combat alcoholism.

Article 118. Nor shall the States without the consent of the Congress of the Union:

I. Establish tonnage dues or any other port charges or levy duties or taxes on imports or exports.

II. Have, at any time, permanent troops or warships.

III. Make war on its own behalf against any foreign power, except in cases of invasion and of danger so imminent that it requires immediate action.

In such cases, notice shall immediately be given to the President of the Republic.

Article 119. The Powers of the Union have the duty to protect the States against any invasion or violence from abroad. In case of domestic upheaval or disturbances, they shall provide the same protection, provided it is solicited by the State Legislature or by the Governor thereof, should the Legislature not be in session.

Each State and the Federal District have the duty to deliver without delay the suspects, defendants or convicted individuals in criminal procedures, as well as to carry out seizures and to deliver any objects, instruments or product of a crime, assisting the authorities of any other State which should require it. These procedures shall be carried out with the intervention of the respective offices of the Attorneys Generals of the States, in accordance with the terms provided by the cooperation agreements celebrated between the States to that end. For those same purposes, the States and the Federal District may celebrate cooperation agreements

with the Federal Government, who shall act through the Office of the Attorney General of the Republic.

Extraditions requested by a foreign State shall be processed by the President of the Republic, with the intervention of judicial authorities as provided in this Constitution, in international treaties celebrated theretofore and in Laws. In such cases, the ruling of the judge ordering to comply with the request shall be sufficient cause to detain the individual for up to sixty calendar days.

Article 120. State Governors are required to publish and enforce federal laws.

Article 121. Complete faith and credit shall be given in each State to the public acts, records and judicial proceedings of all the other States. The Congress of the Union, through general laws, shall establish the manner for proving such acts, records and proceedings and their effect, subject to the following bases:

I. The laws of a State shall have effect only within its own territory and consequently are not binding outside of that State;

II. Real and personal property shall be governed by the laws of the place of their location;

III. Judgments pronounced by the Courts of one State in respect to rights in rem or real estate property located in another State, may only be enforced in the other State when its own laws so provide it.

Judgments in respect to rights in personam shall only be enforced in another State when the defendant who has lost has explicitly or by reason of domicile, submitted himself to the jurisdiction of the courts that issued such judgment and provided that he was summoned to appear in court by notice served in person;

IV. Acts pertaining to marital status according to the laws of one State shall be valid in the other States;

V. Professional degree certificates issued by the authorities of one State, subject to its laws, shall be respected in all other States.

Article 122. Article 44 of this Constitution has established the legal nature of the Federal District;

whose government is entrusted to Federal Powers, and to the Executive, Legislative and Judicial Local organs, according to the terms set forth by this Article.

The local authorities of the Federal District are: the Assembly, the Head of Government and the Superior Court of Justice of the Federal District.

The Assembly of the Federal District shall be composed with the number of deputies elected according to the principles of relative majority and proportional representation, through the system of lists of multi-member election districts, in accordance with the terms provided by this Constitution and the Statute of Government.

The Head of Government of the Federal District shall be in charge of the Executive function and the public administration of the Federal District. This office shall be entrusted to one single individual elected by general, free, direct and secret vote.

The Superior Court of Justice of the Federal District and the Judicial Council, along with the other bodies

established by the Statute of Government shall perform the judicial function for the Federal District's ordinary jurisdiction.

The distribution of jurisdictions between the Powers of the Union and the local authorities of the Federal District shall be subject to the following provisions:

A.  It pertains to the Congress of the Union:

I. To legislate in all subject matters relative to the Federal District, except for those matters explicitly conferred to the Assembly of the Federal District;

II. To enact the Statute of Government of the Federal District;

III. To legislate in matters of public debt of the Federal District;

IV. To issue general legal provisions to ensure an appropriate, opportune and efficient operation of the Powers of the Union; and

V. Any other powers vested upon it by this Constitution.

B. It pertains to the President of the United Mexican States:

I. To initiate laws in the Congress of the Union in all subject matters related to the Federal District;

II. To propose to the Senate the individual who must substitute the Head of Government of the Federal District in the event of his removal;

III. To send annually to the Congress of the Union, the proposal of the amounts of indebtedness necessary to finance the expenditure budget of the Federal District. For that purpose, the Chief of Government of the Federal District shall submit to the President of the Republic the corresponding proposal in accordance with the terms provided by the Law;

IV. To enforce the laws enacted by the Congress of the Union in respect to the Federal District, providing the means required within his administrative jurisdiction, for their faithful execution; and

V. Any other powers vested upon on him by this Constitution, by the Statute of Government of the Federal District and by the laws.

C.  The Statute of Government of the Federal District shall be subject to the following bases:

FIRST BASIS. With respect to the Assembly of the Federal District:

I. Deputies to the Assembly shall be elected every three years by general, free, direct and secret vote, in accordance with the terms provided by the Law, which must take into account, for the organization of elections, the issuance of certificates of election and review procedures on the matter, the provisions of Articles 41, 60 and 99 of this Constitution;

II. The qualifications required to be a deputy to the Assembly of the Federal District shall not be less than the ones required to be a deputy to the Congress of the Union. The provisions under Articles 51, 59, 61, 62, 64 and 77, section IV of this Constitution shall apply to the Assembly

of the Federal District and to its members, in all compatible issues;

III. The political party which has attained for itself the largest number of certificates of election by relative majority and at least a thirty per cent of the votes in the Federal District, shall be apportioned a sufficient number of deputies by proportional representation in order to attain an absolute majority in the Assembly;

IV. The Statute shall establish the dates to hold two regular periods of sessions per year and the composition and powers of the internal government body which shall act during its adjournments. The power to issue summons to extraordinary sessions shall be vested on the aforesaid internal government body, upon request by the majority of its members or by the Head of Government of the Federal District;

V. The Assembly of the Federal District, in accordance with the terms of the Statute of Government shall have the following powers:

a) To enact its organic law, this shall be passed to the Head of Government of the Federal District just for the purpose of ordering its publication;

b) Annually examine, discuss, and approve the expenditure budget and income law of the Federal District, approving first the taxes necessary to cover the expenditures. The establishment of the remunerations to be perceived by public officers shall be subjected to the bases established in article 127 of this Constitution.

The Legislative, Executive, and Judicial organs of the Federal District, as well as the organisms with an autonomy recognized by the Federal District's Statute of Government, shall include in their budget projects each of the tabulators of the remunerations proposed for their public officers. These proposals shall observe the procedure that has been established for the Federal District's budget approval in the Statute of Government and applicable dispositions.

Amounts of indebtedness exceeding the ones previously authorized by the Congress of the

Union to finance the expenditure budget of the Federal District may not be added to the income law.

The power to initiate laws, in regards to the income law and the expenditure budget corresponds exclusively to the Head of Government of the Federal District. The term to submit them ends on November 30th, with the exception of the years when the regular election of the Head of Government of the Federal District takes place, in which case the end term shall be on December 20th.

The Assembly of the Federal District shall prepare annually its expenditure budget draft and shall opportunely send it to the Head of Government of the Federal District so that the latter may include it in his bill.

The provisions under paragraph second of subsection c) in section IV of Article 115 of this Constitution, shall apply to the Treasury of the Federal District in all matters consistent with its nature and organic government system.

c) To revise the General Public Account of the previous year through the Assembly's Supervising Entity of the Federal District, according to the criteria set forth by Article 74, section VI, where applicable.

The public accounts of the previous year must be sent to the Assembly within the first ten days of the month of June. This term as well as the terms established to submit the income law bill and the expenditure budget draft, may only be extended upon request by the Head of Government of the Federal District, which request must be sufficiently justified at the judgment of the Assembly;

The Head of the Supervising Entity of the Federal District shall be elected by two thirds of the individuals of the Assembly for a term of no less than seven years and he should have five year experience in matters of control, auditing and liabilities;

d) To appoint the individual who shall substitute the Head of Government of the Federal District in case of absolute absence of the latter;

e) To issue the legal provisions required to organize the public treasury, the Superior Supervising Entity and the budget, book keeping and public expenditure of the Federal District, and the Supervising Entity invested with technical and operative autonomy to exercise its attributions, and to decide about its internal organization, functioning and resolutions. Supervising function shall be exercised according to the principles of posteriority, annuity, legality, impartiality and reliability;

f) To enact the provisions required to regulate local elections in the Federal District, subject to the principles established in the Statute of Government, which must take into account the principles set forth under subsection b) to i) of section IV of Article 116 of this Constitution, to which the references of subsections j) and m) to Governor, local deputies and Municipal Governments shall be assumed, respectively, for Head of Government, deputies of the Assembly and Chiefs of Delegations.

g) To legislate in matters of local public administration, its internal régime and administrative procedures;

h) To legislate in civil and criminal matters; to regulate the organism for the protection of human rights, citizen participation, office of the public defender, public notaries and the public registry of property and commerce;

i) To regulate civil protection; police and government infractions; security services provided by private corporations; crime prevention and inmates' social readjustment; health and public assistance; and social welfare;

j) To legislate in matters of planning for development; urban development, particularly the uses of the land; environmental preservation and ecological protection; housing, constructions and buildings; public roads and crossways, traffic and parking lots, public works and acquisitions; and the exploitation and use of property under the domain of the Federal District;

k) To regulate the provision and concession of public services; to legislate on urban transportation services, cleaning services, tourism and lodging services, markets, slaughterhouses, supply centers, and cemeteries;

l) To issue provisions in regards to economic promotion and employment protection; development of agriculture and cattle breeding; business and commercial establishments; animal protection; show business; promotion of civic culture and sports; and education as social duty, under the terms provided by section VIII of Article 3 of this Constitution;

m) To enact the organic law of the courts in charge of the judicial function on matters under the ordinary jurisdiction of the Federal District, this shall include the issues relative to liabilities of the public officers of said bodies;

n) To enact the organic law of the Administrative Court of the Federal District;

ñ) To submit law initiatives or decree drafts in matters related to the Federal District, before the Congress of the Union; and

o) Any others explicitly vested upon it by this Constitution.

SECOND BASIS. With respect to the Head of Government of the Federal District:

I. He shall hold office for a term of six years form December 5th of the year of the election, which shall take place in accordance with the provisions set forth in the electoral legislation.

The Head of Government of the Federal District must have the qualifications established by the Statute of Government, among which it must require: to be a Mexican citizen by birth, with legal capacity to exercise his rights; to have resided in the Federal District for the three years previous to the date of the election, if he were a native thereof, or having been born in another State, to have resided in the Federal District for five uninterrupted years previous to the date of

the election; to be at least thirty years of age on the day of the election, and not to have held previously the office of Head of Government of the Federal District, under any title. Residency shall not be interrupted for holding public offices of the Federation in any other jurisdiction.

In the event of removal of the Head of Government of the Federal District, the Senate shall appoint, upon proposal by the President of the Republic, an alternate to conclude the term in office. In case of a temporary absence, the office shall be entrusted to the public officer designated in the Statute of Government. In case of absolute absence, by cause of resignation or by any other cause, the Assembly of the Federal District shall appoint an alternate to finish the term in office. The resignation of the Head of Government of the Federal District shall only be accepted for serious causes. Leaves of absence from office shall be regulated in the aforesaid Statute.

II. The Head of Government of the Federal District shall have the following powers and duties:

a) To comply with and to enforce the laws in relation to the Federal District enacted by the Congress of the Union within the scope of the jurisdiction of the Executive organ under his command or under its agencies;

b) To promulgate, publish and enforce the laws enacted by the Assembly of the Federal District, providing the means required within his administrative jurisdiction, for their faithful execution, issuing the necessary regulations, decrees and executive orders. He may make observations to the bills of laws passed to him by the Assembly for promulgation, within a term not to exceed ten business days. Should the project with observations be confirmed by a qualified majority of two thirds of the deputies present, it must be promulgated by the Head of Government of the Federal District;

c) To submit law initiatives or decree drafts before the Assembly of the Federal District;

d) To appoint and remove at his sole discretion any of the public officers subordinated to the

local executive organ under his command, whose appointment or removal were not otherwise established in this Constitution or the corresponding laws;

e) To exercise the duties and powers pertaining to the directorship of public security services in accordance with the Statute of Government; and

f) Any other powers vested upon him by this Constitution, the Statute of Government and the laws.

THIRD BASIS. In respect to the organization of local public administration in the Federal District:

I. To determine the general guidelines to distribute the duties and powers between central, desconcentrados[2] and decentralized government bodies;

---

[2]   Desconcentrado bodies are those that do not have a separate personality from the centralized administration.

II. To establish the political administrative bodies in each circumscription into which the territory of the Federal District is divided;

To establish criteria to carry out the territorial division of the Federal District, to distribute the jurisdiction of corresponding political administrative bodies, the manner to constitute them, their operation, as well as the relationship of said bodies with the Head of Government of the Federal District.

The incumbents of the political administrative bodies of territorial circumscriptions shall be elected in a general, free, secret and direct manner as provided by the Law.

FOURTH BASIS. In respect to the Superior Court of Justice and the other judicial bodies in charge of the ordinary jurisdiction:

I. To be a Magistrate of the Superior Court, it is required to have the same qualifications which this Constitution establishes for the Justices of the Nation's Supreme Court of Justice; the candidate is also required to have distinguished himself in the exercise of the legal profession

or in the judicial branch, preferably in the Federal District. The Superior Court of Justice shall be composed with the number of Magistrates set forth in the respective organic law;

To fill the vacancies of Magistrates of the Superior Court of Justice, the Chief of Government of the Federal District shall submit a proposal to the Assembly of the Federal District. The Magistrates shall hold their office for a term of six years and may be confirmed by the Assembly; and should they be ratified in their offices, they may only be removed therefrom in accordance with the terms of Title Fourth of this Constitution;

II. The administration, supervision and discipline of the Superior Court of Justice, of the trial courts and any other judicial bodies, shall be in charge of the Council of the Judiciary of the Federal District. Such Council shall have seven members, of whom one shall be the President of the Superior Court of Justice and who shall also preside the Council. The remaining members shall be one Magistrate and two judges chosen by majority of votes from the two thirds of all the

Court's Magistrates; one member appointed by the Chief of Government of the Federal District and the other two appointed by the Assembly of the Federal District. All the Councilors shall have the qualifications required to be a Magistrate and shall be people renowned by their professional and administrative capacities, as well as their honesty and integrity. The Councilors chosen by the Magistrates shall also need recognition of their professional merits in the judicial branch. They shall hold their office for a term of five years, be substituted in a subsequent manner and may not be appointed for another term.

The Council shall appoint the Judges of the Federal District under the terms established to regulate the judicial career. It shall also determine the number and specialization of the Court's chambers and courthouses of the Federal District's judiciary, under the terms issued by the Council itself.

III. The powers and duties and the operating standards of the Judicial Council shall be established taking into account the provisions set forth by Article 100 of this Constitution;

IV. The establishment of the criteria in accordance to which the organic law shall determine the standards to train new members of the judiciary and provide them with continuing education, as well as for the development of the judicial career;

V. The disqualifications and penalties set forth in Article 101 of this Constitution shall be applicable to the members of the Council of the Judiciary, as well as to Magistrates and Judges;

VI. The Judicial Council shall prepare the budget for the Courts of Justice in the Federal District and shall send it to the Head of Government of the Federal District to be included in the expenditure budget draft, which shall be submitted for approval to the Assembly of the Federal District.

FIFTH BASIS. There shall be an Administrative Court which shall have full autonomy to decide the disputes between private persons and the authorities of the Federal District's local public administration.

The standards to create it and the powers and duties thereof shall be established and developed in its organic law.

D. The Office of the Public Prosecutor of the Federal District shall be presided by a Attorney General who shall be appointed in accordance with the terms established by the Statute of Government. Said Statute and the respective organic law shall set forth its organization, jurisdiction and operating standards.

E. The provisions set forth under section VII of Article 115 of this Constitution shall apply to the President of the United Mexican States with respect to the Federal District. The appointment and removal of the public officer in charge of direct command over the police force shall be made in the terms set forth in the Statute of Government.

F. The Senate or in the adjournments thereof, the Permanent Commission may remove the Head of Government of the Federal District by serious causes affecting the relationships with the

Powers of the Union or public order in the Federal District. The request for removal must be submitted by half of the members of the Senate or of the Permanent Commission, if applicable.

G. In order to attain an efficient coordination among the diverse local and municipal jurisdictions and between these and the Federation and the Federal District in respect to planning and carrying out actions in development zones bordering with the Federal District, in accordance with Article 115, section VI of this Constitution, in matters of human settlements; environmental protection; preservation and restoration of ecologic balance; transportation, drinking water and sewage; collection, treatment and disposal of solid wastes and public security, their respective governments may celebrate agreements to create metropolitan commissions where they may concur and participate subject to their laws.

The commissions shall be created by mutual agreement of the participants. The instrument creating them, shall establish the manner to constitute them, their structure and functions.

Through the commissions, it shall be established:

a) The bases to celebrate agreements within the commissions, to establish accordingly, the jurisdictions over the territory and the duties and powers in respect to performance and operation of public works, the rendering of public services, and the actions to take in the matters set forth in the first paragraph of this subsection;

b) The bases to establish, in a coordinated manner by the parties composing the commissions, specific functions in the matters referred, as well as for the joint contribution of such material, human and financial resources necessary for their operation; and

c) Any other rules to regulate jointly and in a coordinated manner for the development of zones bordering with the Federal District, the provision of services, and the performance of actions agreed by the members of the commissions.

H. The prohibitions and restrictions established by this Constitution for the States shall be applied also to the authorities of the Federal District.

# TITLE SIX
## Labor and social welfare

Article 123. Every person has the right to have a dignified and socially useful job; to that end the creation of jobs and the organization of society for work shall be encouraged, in accordance with the Law.

The Congress of the Union, without contravening the following bases, will enact labor laws which shall govern:

A. Between workers, laborers, domestic employees, craftsmen and in general, in every labor contract:

  I. The maximum working shift shall be eight hours;

  II. The maximum working shift on night shall be seven hours. Unhealthy and hazardous work,

nightshifts in industrial enterprises and any other work after ten o'clock at night, are prohibited for minors under sixteen years old;

III. It is forbidden to use the labor of minors under fourteen years of age. Minors over fourteen and under sixteen years old shall have a maximum working shift of six hours;

IV. For every six days of work the worker is entitled to at least, one day of rest;

V. Pregnant women shall not perform jobs which demand considerable effort and endanger their health in respect to their pregnancy. They shall have a mandatory paid time off of six week before the date approximately set for the delivery of their child, and for another six week term thereafter, during which they must be paid their salary in full and shall keep their job and the rights acquired there from. During their nursing period they shall have two additional rest periods per day, of half an hour each, to feed their children;

VI. The minimum wages that workers will enjoy shall be general or occupational. General wages shall govern in fixed geographic areas; occupational wages apply to particular sectors of an industry or commercial activity, or to certain occupations, trades or specialized work.

General minimum wages must be sufficient to satisfy the normal material, social and cultural needs of the head of a household, and to provide for the mandatory education of his children. Occupational minimum wages shall be established considering, in addition, the conditions of the different economic activities.

Minimum wages shall be set by a National Commission constituted by representatives of workers, employers and government, which may be assisted by those special advisory committees it should deem necessary for the better performance of its duties;

VII. The same salary shall be paid for the same work, regardless of sex or nationality;

VIII. Minimum wages shall be exempted from attachments, set-off or discount;

IX. Workers are entitled to participate in the profits of businesses,[1] subject to the following provisions:

a) A National Commission constituted with representatives of workers, employers and the Government shall establish the percentage of profits which must be distributed among the workers;

b) The National Commission shall carry out any necessary and appropriate research and studies to know the general conditions of the country's economy. It shall likewise consider the need to promote the country's industrial development, the reasonable returns that capital must earn and necessary capital reinvestments;

---

[1] The Spanish text refers to businesses in plural (empresas), but it refers only to the company where the employee works. Business means employment, occupation, profession or commercial activities engaged in for gain or livelihood. (Campbell Black, Henry, op. cit., Note 1, p. 136.)

c) Said Commission may review the percentage set should any new research and studies justify it;

d) The Law may exempt newly created companies from the duty of profit sharing during a certain and limited number of years, and may also exempt works of exploration and other activities whenever their nature and particular conditions justify it;

e) The basis to determine the amount of each company's profits will be the taxable income in accordance with the provisions of Income Tax Law. Workers may file before the corresponding office of the Secretariat of Finance and Public Credit,[2] any objections they should deem convenient, subject to the procedure established by the Law;

f) Workers' right to profit sharing does not imply the power to intervene in the management or direction of the business.

---

[2]   See Note 2 of Title Three.

X. Wages must be paid precisely in currency of legal tender, and it is not permitted to pay them with merchandise, coupons, tokens or any other representative sign intended as a substitute for currency;

XI. When, due to extraordinary circumstances, working hours must be extended; the salary to be paid for overtime shall be 100% more than the amount fixed for regular hours. Overtime may never exceed three hours per day nor three consecutive times. Minors under sixteen years old may not be admitted to these types of jobs;

XII. All agricultural, industrial, mining business or any other kind of business shall have the duty, as set forth in Laws, to provide its workers with comfortable and sanitary housing. This obligation shall be discharged with the contributions made by the businesses to a national housing fund with the purpose of constituting deposits to the benefit of their workers and of establishing a financing system to provide the workers with sufficient and inexpensive loans

so that they may acquire in ownership the dwellings mentioned.

The enactment of a law to institute a body constituted by representatives of the Federal Government, the workers and of the employers, to manage the resources of the national housing fund, is of social benefit. Said law shall regulate the formalities and procedures in accordance to which the workers may acquire in ownership the dwellings hereinbefore mentioned.

The businesses referred under paragraph first of this section, which are located outside villages, shall have the duty to establish schools, health clinics and other services necessary for the community.

Additionally, whenever the population in such workplaces shall exceed two hundred inhabitants, a tract of land of no less than five thousand square meters, must be reserved for the establishment of public markets, buildings intended for municipal services and recreation centers.

Establishments that sell liquors and gambling houses are prohibited in all workplaces;

XIII. Businesses, whatever their activity, shall have the duty to provide their workers with skills or training for the job. The Law shall establish the systems, methods and procedures in accordance to which employers must comply with said obligation;

XIV. Employers shall be liable for labor accidents and for occupational diseases suffered by workers in relation or by cause of the profession they exercise or of the job they do. Therefore, employers shall pay the corresponding indemnification, whether for the death or temporary or permanent disability to work, in accordance with the provisions of the Law. This liability shall survive even when the employer shall contract the work through an intermediary;

XV. According to the nature of his business, the employer shall have the duty to comply with legal provisions regarding hygiene and safety in the facilities of his establishment, and to adopt

adequate safeguards to prevent accidents in the use of machines, instruments and materials of labor, as well as to organize labor in such way as to ensure the greatest possible guarantee for the health and safety of workers, and of unborn children, in the case of pregnant women. The laws shall provide, to that end, the appropriate sanctions in each case;

XVI. Workers as well as employers shall be entitled to organize themselves for the defense of their respective interests, by constituting unions, professional associations, etc.;

XVII. The laws recognize strikes and lockouts as rights of workers or employers;

XVIII. Strikes shall be lawful when their purpose is the attainment of balance between the different factors of production, by harmonizing the rights of labor with those of capital. In public services, it shall be mandatory for workers to give notice, ten days in advance, to the Board of Conciliation and Arbitration, in regards to the date established for the suspension of work. Strikes shall be

considered illegal only when the majority of the strikers shall engage in acts of violence against persons or property, and in the event of war, should they work in establishments or services depending of the government;

XIX. Lockouts shall be lawful only when an excess of production shall render it necessary to suspend operations in order to maintain prices at a reasonable level over costs, and subject to the previous approval of the Board of Conciliation and Arbitration;

XX. Conflicts between capital and labor shall be subjected for settlement, to the award issued by the Board of Conciliation and Arbitration, which shall composed by an equal number of representatives of workers and of employers and one of the government;

XXI. Should the employer refuse to submit his disagreements to arbitration or to accept the award rendered by the Board, the labor contract shall be terminated and he shall be obliged to indemnify the worker with three months' wages,

in addition to the liabilities resulting from the dispute. This provision shall not apply in cases of the actions referred under the following section. Should the workers reject the award, the labor contract shall be terminated;

XXII. An employer who dismisses a worker without justifiable cause or for having joined an association or union, or for having taken a part in a lawful strike, shall be required, at the election of the worker, either to perform the contract or to indemnify him with the payment of three months' wages. The Law shall establish the cases where the employer may be exempted from the obligation of performing the contract by paying an indemnity. Likewise, the employer shall be obliged to indemnify the worker with the wages of three months, if the latter shall leave his job on account of the employer's lack of good faith or mistreatment either as to his own person, or that of his spouse, parents, children, or siblings. The employer cannot be exempted from this liability when the mistreatment

is inflicted by subordinates or members of his family acting with his consent or knowledge;

XXIII. Claims of workers for wages or salaries earned during the preceding year and for indemnifications shall have preference over any other claims in cases of bankruptcy or composition;

XXIV. Only the worker is liable for any debts has contracted with his employer, or the latter's associates, family or dependents, and never for any cause may payment there for be exacted from members of the worker's family, nor shall said debts be claimed for an amount exceeding the wages of the worker for one month;

XXV. Employment placement services shall be free of charge for workers, whether they are provided by a municipal office, by employment bureaus or any other public or private agency.

When providing this service the demand for jobs shall be taken into account and, in equal conditions, the individuals who are the only

income source for their family shall have preference;

XXVI. Any labor contract between a Mexican citizen and a foreign employer must be legalized before the competent municipal authority and bear visa by the consul of the nation to which the worker is to go, in the understanding that, in addition to the usual clauses, it shall clearly provide that repatriation expenses shall be born by the contracting employer;

XXVII. The following stipulations shall be null and void and not binding for any of the contracting parties, even if set forth in the contract:

a) Those providing for inhuman working shift on account of its notorious excessiveness, in view of the nature of the work;

b) Those providing for a salary which is not remunerative in the judgment of the Board of Conciliation and Arbitration;

c) Those providing a term of more than one week for the payment of a daily wages;

d) Those providing as the place to pay wages, an amusement place, a restaurant, cafe, tavern, canteen, or store, when the employee does not work in such establishments;

e) Those involving a direct or indirect obligation to purchase consumption goods in certain stores or places;

f) Those permitting to withhold wages by way of fines;

g) Those constituting a waiver by the worker of indemnifications to which is entitled by cause of labor accidents or occupational diseases, damages for breach of contract or for being discharged from a job;

h) Any other provisions implying a waiver of any of the rights vested in the worker by the laws to protect and help workmen;

XXVIII. The laws shall establish what property constitutes the family patrimony. These goods shall be inalienable, not subject to mortgage or

attachment, and may be bequeathed with simplified formalities in succession proceedings;

XXIX. The enactment of a Social Security Law is of public interest and it shall include insurance against disability, old age, life, unemployment, illness and accidents, child day care, and any other intended for the protection and welfare of workers, peasants, non-salaried persons and other social sectors and their families;

XXX. Likewise, cooperative associations for the construction of cheap and sanitary dwelling houses, intended to be acquired in ownership by workers within certain periods, shall be considered of social utility;

XXXI. Enforcement of labor laws pertains to the authorities of the States within their respective jurisdictions, except for the following matters which are under the exclusive jurisdiction of federal authorities:

a) In relation to industrial branches and services:

1. Textile;

2. Electric power;

3. Motion pictures;

4. Rubber;

5. Sugar;

6. Mining;

7. Metallurgical and steel, including exploitation of basic minerals, and their processing and smelting, as well as the manufacture of metallic iron and steel in all their forms and alloys, and the rolled products there of;

8. Hydrocarbons;

9. Petrochemical;

10. Cement;

11. Lime;

12. Automobiles, including electric or mechanical automobile parts;

13. Chemical, including pharmaceutical and medical chemicals;

14. Cellulose and paper;

15. Vegetable oils and fats;

16. Food processing, including only the manufacture of bottled, canned or packed food or of those intended there for;

17. Manufacture of bottled or canned beverages or of those intended there for;

18. Railroads;

19. Basic lumbering, which includes the production of sawmills, and the manufacture of plywood or agglutinated wood products;

20. Glass, exclusively in respect to the manufacture of plain, carved or flat glass, or of glass containers;

21. Tobacco, which includes the processing and manufacture of tobacco products; and

22. Banking and credit services.

b) Business Enterprises:

1. The ones decentralized or administered directly by the Federal Government;

2. Those acting through a federal contract or concession and the industrial enterprises in connection thereto;

3. Those carrying out works in federal zones or zones under federal jurisdiction, in waters of territorial sea, or those comprised within the Nation's exclusive economic zone.

Federal authorities also have under their exclusive jurisdiction: the application of labor provisions in matters relating to conflicts affecting two or more States; collective labor contracts which have been declared mandatory in more than one State;[3] employers' obligations in educational matters, under the terms set forth by the Law; and in respect to employers' duties in matters of job training courses for their

---

[3]   Called Law Contracts, which are agreements entered by a special procedure between one or more unions and one or more enterprises or federations of enterprises in the same industry. They become law upon publication by the Government and are mandatory in all the Country. (Hoagland, Alexander C., Company Formation in Mexico, Section F Labour Laws, London, Lloyds Bank International Ltd., 1980, p. F-17)

workers, as well as safe and sanitary conditions in work centers, for which federal authorities shall have the support of State authorities, when dealing with branches or activities under local jurisdiction, as provided by the corresponding Law.

B. Between the Powers of the Union, the Government of the Federal District and its workers:

I. The maximum working shift and nightshift shall be of eight and seven hours, respectively. Exceeding hours shall be overtime and shall be paid an additional 100% over the remuneration fixed for regular services. In no case may overtime work exceed three hours daily nor three consecutive times;

II. For every six days of work the worker is entitled to at least, one day of rest; with full payment of wages;

III. Workers shall enjoy vacations which shall never be less than twenty days per year;

IV. The salaries shall be established in the budgets, without the possibility of being decreased while said budgets are in force, and shall be subjected to that established in article 127 of this Constitution and the law.

Salaries may never be inferior to general minimum wages for workers in the Federal District and in the States;

V. The same salary shall be paid for the same work, regardless of sex;

VI. Withholdings, discounts, deductions or attachments over wages may only be made in the cases provided by the laws;

VII. The appointment of personnel shall be made by systems which permit the assessment of the skills and aptitudes of applicants. The State shall organize schools of Public Administration;

VIII. Workers shall be entitled to rights of classification scale so that promotions may be made on the grounds of skills, aptitudes and seniority. Under the same conditions, the

individual representing the only source of income for his family shall have preference;

IX. Workers may only be suspended or dismissed for a cause, under the terms provided by the Law.

In the event of wrong discharge the worker has the right to chose between reinstatement in his work or the corresponding severance payment, upon previous legal proceedings. In the case of cancelled posts, the affected workers shall be entitled to obtain another job equivalent to the one cancelled or to the indemnification payment established by the Law;

X. Workers have the right to associate for the defense of their common interests. They may likewise exercise their right to strike upon previous fulfillment of the requirements set forth by the Law, in respect to one or several agencies of Government Powers, whenever the rights vested on them by this Article are infringed in a general and systematic manner.

XI. Social security shall be organized in accordance with the following minimum bases:

a) It shall cover labor accidents and occupational diseases; non-occupation illnesses and maternity; retirement, disability, old age and death.

b) In case of accident or illness, the right to the job shall be retained for the time set forth by the Law.

c) Pregnant women shall not perform jobs which demand considerable effort and endanger their health in respect to their pregnancy. They shall have a mandatory paid time off of one month before the date approximately set for the delivery of their child, and for another two months term there after, during which they must be paid their salary in full and keep their job and the rights acquired there from. During their nursing period they shall have two additional rest periods per day, of half an hour each, to feed their children. In addition they shall enjoy medical and obstetrical attention, medications, nursing aids; and childcare services.

d) Members of the workers' family must be entitled to medical assistance and medications, in the cases and in the proportion established by the Law.

e) Vacation and rehabilitation centers, as well as economy stores for the benefit of workers and their families shall be established.

f) Workers shall be provided with low cost housing for rent or sale in accordance with the programs previously approved there to fore.

Additionally, the State shall establish a national housing fund with the contributions it shall make, with the purpose of constituting deposits to the benefit of said workers and to establish a financing system to provide the workers with sufficient and inexpensive loans so they may acquire in ownership comfortable and sanitary housing, or to build, repair, or improve their home or to pay loans acquired there for.

The contributions for such fund shall be paid to the agency in charge of social security. The

formalities and procedure in accordance to which such fund shall be managed and to which the corresponding credits must be granted and adjudged, shall be govern by its law and by any other applicable laws;

XII. Individual and collective labor disputes, as well as disputes between trade unions must be submitted to the Federal Conciliation and Arbitration Board for Government Employees,[4] which shall be constituted as provided in the Law.

Disputes between the Judicial Branch of the Federation and its employees shall be settled by the Federal Judicial Council. Disputes between the Supreme Court of Justice and its employees shall be decided by the latter;

XIII. Military and Navy personnel, members of the Foreign Service, agents of the Public Prosecutor, police experts and members of police institutions, shall be governed by their own laws.

---

[4]   See Note 9 of Title Three.

The agents of the Public Prosecutor, the experts and members of police institutions of the Federation, the Federal District, the States and the Municipalities, can be dismissed if they do not comply with the requirements that the laws in vigor at the moment determine to stay in such institutions, or removed if they incur in responsibility when performing their duties. If the jurisdictional authority determines that the separation, dismissal, casualty, cessation or any other form of service termination was unjustified, the State shall only be obliged to indemnify and give any other corresponding benefits, which shall not mean to bring the person back to service, whatever the result of the trial or defense measure promoted.

Authorities of the Federation, the States, the Federal District and the Municipalities, in order to strengthen the social security system of the personnel of the Public Prosecutor, police corporations and expert services within the police, and that of their families, shall orchestrate complementary systems of social security.

The State shall provide active members of the Army, Air Force and Navy, the benefits under subsection f) of section XI of Subdivision B of this Article, in similar terms and through the agencies in charge of providing social security services for the members of said institutions;

XIII BIS. The central bank and the agencies of Federal Public Administration which comprise the Mexican Banking System shall govern their labor relations with their employees in accordance to the provisions set forth in this Subdivision;

XIV. The Law shall determine the offices to be considered positions of non-tenure.[5] The individuals holding those positions shall be entitled to salary protection measures and social security benefits.

---

[5]   Confidential employees are subject to special treatment in the Law, these are employees holding a position of confidence who perform managerial, accounting, operational, supervisory functions on behalf of their employer. They may not belong to trade unions and may be discharged if they loose the confidence of their employer, without the right to be reinstated in their job. (Becerra, Javier F., op. cit., Note 3, p. 306, and Hoagland, Alexander C., op. cit., Note 43, pp. F-7 and F-8).

# TITLE SEVEN
**General provisions**

Article 124. All powers not explicitly vested by this Constitution on federal authorities, are reserved to the States.

Article 125. No individual may hold two Federal offices of popular election at the same time, nor one federal and one state office also by popular election, but the individual may choose which of the two he elects to hold.

Article 126. No payment shall be made that is not included in the budget or provided for by a subsequent law.

Article 127. The public officers working for the Federation, States, Federal District, and Municipalities,

their entities and government offices, as well as their state and municipal decentralized administrations, public trust funds, autonomous organisms and institutions, and any other public organ shall receive an adequate and not to be waived reward for the exercise of their function, job, position, or commission, which shall be proportional to his or her responsibilities.

Such a reward shall be determined annually and fairly in the corresponding budgets, in accordance to the following bases:

I. A reward or retribution is all income received in cash or in kind, including diets, Christmas bonuses, gratifications, awards, rewards, bonuses, stimulus, commissions, compensations, and any other of the kind, with the exception of the support and expenses subjected to revision that are proper of the work being done and the traveling expenses corresponding to official duties.

II. No public officer shall be able to receive a remuneration, in the terms of the previous section, for the exercise of his or her function, job,

position, or commission, higher than that established for the President of the Republic in the corresponding budget.

III. No public officer shall be able to receive a remuneration equal or higher than his or her superior in rank; unless the excess is a consequence of the exercise of various public offices, that his or her remuneration is a product of the general working conditions, derived from a qualified technical job or a specialization in his or her function, the sum of said retributions shall not exceed half of the remuneration established for the President of the Republic in the corresponding budget.

IV. No retirement payments, pensions, or other retirement assets shall be conceded or covered, nor liquidations for given services, or loans or credits, without these being assigned by law, legislative decree, collective contract, or general working conditions. These concepts will not be a part of the remuneration. They are excluded from the security services that the public officers require for the exercise of their public office.

V. The remunerations and their tabulators shall be public, and shall specify and differentiate the totality of their fixed and variable elements, both in cash and in kind.

VI. The Congress of the Union, the State Legislatures, and the Legislative Assembly of the Federal District, in their respective competence, shall issue laws to enforce the content of the present article and the pertaining constitutional dispositions, and to sanction criminally and administratively the conducts that imply the violation or elusion by simulation of that which has been established in this article.

Article 128. Before taking office, every public officer without any exception, shall take an oath swearing to uphold the Constitution and the laws enacted in pursuance thereof.

Article 129. In peace times no military authority shall perform any functions other than those exactly related with military discipline. There shall be fixed and permanent military commands only in castles, forts and in warehouses immediately subordinated

to the Government of the Union, or in encampments, barracks, or arsenals established outside towns for the quartering of troops.

Article 130. The historic principle of separation between State and Church is a directive underlying the provisions set forth in this Article. Churches and any other religious groups shall be subject to the Law.

Only the Congress of the Union is empowered to legislate in matters of public worship, churches and religious groups. The respective Law shall develop and detail the following provisions, and shall be of public order:

a) Churches and religious groups shall have legal capacity as religious associations upon having obtained their corresponding registry. The Law shall regulate such associations and establish the conditions and qualifications required for the registry to incorporate them.

b) The authorities shall not intervene in the internal life of religious associations.

c) Mexicans may exercise the ministry of any religion. To that end, Mexicans as well as foreign persons, must satisfy the requirements set forth by the Law.

d) As provided by the Law, church ministers may not hold public offices. As citizens they shall have the right to vote but they may not be elected for public offices. Those who have ceased being church ministers with the anticipation in the manner established by the Law may be elected.

e) Ministers may not associate for political purposes, nor promote in favour of, or against any candidate, political party or any political association. They may not oppose the laws of the country or its institutions, nor in any way offend any national insignia in public meetings, in acts of worship or of religious propaganda, nor in publications of a religious nature.

The constitution of any kind of political group whose denomination should contain any word or indication of whatever nature, relating it to any religious

affiliation is strictly prohibited. Meetings of a political nature may not take place in churches.

The simple promise to say the truth and to comply with the obligations contracted, subjects the person making it, in case of failure to comply, to the penalties established in the Law for such behaviour.

Church ministers, their ascendants, descendants, brothers, sisters and spouses, as well as the religious associations to which they may be affiliated, shall be disqualified to inherit by testament, from the persons to whom such ministers may have provided guidance or spiritual support and who do not have a family relationship of up to forth degree in regards to said ministers.

Acts of marital status of individuals pertain to the exclusive jurisdiction of administrative authorities, in accordance with the terms provided by the laws, and shall have such force and effect as said laws attribute to them.

Federal, State and Municipal authorities shall have, in regards to this matter, the powers and responsibilities set forth by the Law.

Article 131. The Federation has the exclusive power to levy duties on goods that are imported or exported or in transit through national land territory; as well as to regulate at all times, and even to prohibit the circulation for security or police reasons, within the territory of the Republic, of all classes of goods, regardless of their origin. Nevertheless, the Federation itself may not establish nor enact in the Federal District the taxes and laws set forth under sections VI and VII of Article 117.

The President of the Republic may be empowered by the Congress of the Union to increase, decrease or abolish tariff rates on imports and exports imposed by Congress itself, and to establish others; likewise, the President of the Republic may be empowered to restrict and to prohibit the imports, exports and transit of products, articles and goods, when he deems it urgent for the purpose of regulating foreign trade, the economy of the country, the stability of domestic production or for accomplishing any other purpose to the benefit of the country. The President of the Republic himself, when submitting the fiscal Budget to Congress each year,

shall submit to the approval of Congress the exercise he has made of such powers.

Article 132. Forts, barracks, storage warehouses, and all other real estate facilities devoted by the Government of the Union to a public service or for common use, shall be subject to the jurisdiction of Federal Powers in accordance with provisions established in the Law enacted by the Congress of the Union. This law shall regulate the property acquired thereafter within the territory of any State in which case, the consent of the respective local legislature shall be required.

Article 133. This Constitution, the laws of the Congress of the Union which shall be enacted in pursuance thereof and all treaties in accordance therewith, celebrated or which shall be celebrated by the President of the Republic with the approval of the Senate, shall be the supreme law of the Union. The Judges of the Federal District and of the States shall be bound thereby, notwithstanding any provision to the contrary in the local constitutions or local laws.

Article 134. The economic resources available to the Federal Government, the States, the Municipalities, the Government of the Federal District and the political-administrative organs thereof, and to the respective decentralized agencies or government controlled companies, shall be managed with efficiency, effectiveness, economy, openness and honesty in order to comply with the purposes for which they are intended.

The result of the employment of said resources shall be evaluated by the technical instances established by the Federation, the States and the Federal District, respectively, in order to favor the assignation of such resources in the respective budgets as described in the previous paragraph, notwithstanding the prevision of Articles 74, section VI and 79.

Any acquisitions, leases and transfers of any kind of goods, the rendering of services of whatever nature and the engagement of works undertaken, shall be awarded or carried out through public biddings, through the issuance of public summons so that solvent propositions may be submitted in a

closed envelope, which shall be opened in public with the aim of assuring the best conditions available in benefit of the State in regards to price, quality, financing, opportunity and all other pertinent circumstances.

Whenever the biddings referred under the paragraph hereinbefore should not be suitable to assure said conditions, the laws shall establish the bases, procedures, rules, requirements and any other elements to demonstrate the economy, effectiveness, efficiency, impartiality, and honesty required to assure the best terms for the State.

Management of federal economic resources by the States, municipalities, the Federal District and the political-administrative organs thereof, shall be subject to the principles set forth in this Article. The evaluation of the employment of such resources shall correspond to the technical entities of the States to which the second paragraph of this Article refers.

Public officers shall be responsible for complying with these principles in accordance with the terms provided by Title Fourth of this Constitution.

The public servants of the Federation, States and Municipalities, as well as of the Federal District and its delegations, are always obliged to impartially invest the public resources under their care, and not to have any influence on the equity of the competition between the political parties.

The propaganda that the political parties, the autonomous organs, branch offices and entities of the public administration and any other organism of the three branches of Government, spread under any form of social communication, shall be of institutional kind and meant to inform, educate or provide social orientation. Such propaganda shall not include names, images, voices or symbols which imply the promotion of some public servant.

The Laws, within their own field of application, shall guarantee the fulfillment of the previsions of the two previous paragraphs, including the penalty régime that might proceed.

# TITLE EIGHT
## Amendments to the Constitution

Article 135. The present Constitution may be added to or amended, but to become a part of it, such additions or amendments require the approval of the Congress of the Union through the vote of two thirds of the congressmen present, and the approval, thereafter, of the majority of the State Legislatures.

The Congress of the Union or the Permanent Commission, as the case may be, shall count the votes of the Legislatures and shall make the declaration to announce that the additions or amendments in question have been approved.

# TITLE NINE
## The inviolability of the Constitution

Article 136. This Constitution shall not lose its force and effect, even if its observance were interrupted by rebellion. In the event that a government whose principles are contrary to those provided by this Constitution, should become established through any public disturbance, as soon as the people recover their freedom, its observance shall be reestablished. The persons who took part in the government arising from the rebellion as well as those who cooperated with them, shall be judged in accordance with this Constitution and the laws enacted by virtue thereof.

# TRANSITORY ARTICLES

Article First. This Constitution shall be solemnly published and an oath shall be taken to uphold it and to enforce it throughout the Republic; but with the exception of the provisions related to the elections of the Supreme Powers of the Federation and the Federal District and the States, which shall be effective at once, it shall effective as of the first of May of 1917, in which date the Constitutional Congress shall be solemnly installed and the citizen elected in the next elections to the office of President of the Republic must take the oath provided by the Law.

In the elections which must be summoned in accordance with the following Article, the provisions under section V of Article 82 shall not be applicable;

nor shall it be cause for disqualification to hold the office of Deputy or Senator, or to be in active service in the army, provided the command of forces is not in the electoral district in question; neither shall State Secretaries and State Undersecretaries be bared from election to the next Congress of the Union, provided they shall have definitely separated from their positions on the date the respective summons are issued.

Article Second. As soon as this Constitution is published, the citizen entrusted with the office of President of the Republic shall summon to the election of Federal Powers, and he shall take care that the election is carried out in such manner as to enable the Congress to be timely constituted, so that upon having counted the votes cast in the elections for President, it may declare who has been the individual elected to hold the office of President of the Republic, so that he may comply with the provisions set forth in the preceding Article.

Article Third. The next constitutional term for Deputies and Senators shall be computed starting

on September 1st of last year and for the office of President of the Republic, on December 1st of 1916.

Article Fourth. Senators who in the next election have an even number shall hold office only for two years, so that thereafter the Senate may be renewed every two years.

Article Fifth. The Congress of the Union shall elect the Justices of the Nation's Supreme Court of Justice next May, in order that such Body shall be installed by June 1st.

Article 96 shall not govern in this election, with respect to the proposals of candidates by State Legislatures; but the elected candidates shall only hold office for the first two years of the term set forth in Article 94.

Article Sixth. The Congress of the Union shall have an extraordinary session period which shall begin on April 15 of 1917, to set itself up as Electoral College, count the votes and qualify elections for President of the Republic, making the respective declaration; and also to enact the Organic Law for Circuit and District Courts, and the Organic Law

for the Federal District and Territorial Courts, so that the Nation's Supreme Court of Justice may immediately appoint Circuit Magistrates and District Judges, so that the same Congress of the Union may appoint the Judges of First Instance for the Federal District and Territories; it shall also enact all the laws that the President of the Republic shall submit to its opinion.52 Circuit Magistrates and District Judges and Magistrates and Judges of the Federal District and Territories, must take office before July 1st of 1917, at which time those individuals who were appointed by the current incumbent in charge of office of President of the Republic, shall cease in office.

Article Seventh. Only for this first time, the count of votes for Senators shall be made by the Computing Board of the First Electoral District in each State or in the Federal District, which shall be created to count votes for the election of Congressmen. Such Boards shall issue the corresponding certificate to the Senators elected.

Article Eighth. The Nation's Supreme Court of Justice shall decide pending cases of constitutional relief

through the writ of Amparo, subject to the laws currently in force.

Article Ninth. The Citizen Chief Commander of the Constitutional Army,53 entrusted with the office of President of the Republic, is empowered to issue the Electoral Law, in accordance to which the elections shall be held for this once to constitute the Powers of the Union.

Article Tenth. The individuals who have taken part in the Government arising from the rebellion against the legitimate government of the Republic, or those who cooperated with it, taking up arms afterwards, or holding offices or employments with the rebellious fractions that have attacked the Constitutionalist Government, shall be tried under the laws currently in force, unless they have been pardoned by said Government.

Article Eleventh. Until the Congress of the Union and the State Legislatures enact laws in regards to the agrarian and labor problems, the principles established in this Constitution for such laws shall

enter into full force and effect throughout the Republic.

Article Twelfth. Mexicans who have been members of the Constitutionalist Army, and their children and widows, and any other persons who rendered services to the cause of the Revolution or to Public Education, shall have a pre-emptive right to acquire the parcels of land set forth under Article 27 and shall be entitled to the discounts established by the laws.

Article Thirteenth. From the date of this Constitution, any debts that workers shall have contracted by reason of their job, with employers, or the latter's families or intermediaries are hereby extinguished by ministry of law.

Article Fourteenth. The Secretariat of Justice is hereby abolished.

Article Fifteenth. The citizen in charge of the office of President of the Republic is hereby empowered to issue a law of civil liability applicable to the principals, accomplices and accessories of

crimes against the constitutional order during the month of February of 1913 and against the Constitutionalist Government.

Article Sixteenth. The Constitutional Congress during its regular period of sessions which shall start on September 1st of this year shall enact all organic laws of the Constitution which shall not have been already enacted in the extraordinary period referred under transitory Article Sixth and shall give priority to laws relating to Constitutional Rights and to Articles 30, 32, 33, 35, 36, 38, 107 and the last part of Article 111 of this Constitution.

Article Seventeenth. Churches and any other property which in accordance with section II of Article 27 of the Political Constitution of the United Mexican States, as amended by this Decree, are owned by the Nation, shall preserve their current legal status.

Article Eighteenth. (Repealed).

Article Nineteenth. (Repealed).

THE FOLLOWING ARTICLES WERE REFORMED ON JUNE 18TH 2008, ACCORDING TO A DECREE OF REFORMS PUBLISHED IN THE OFFICIAL GAZETTE OF THE FEDERATION; HOWEVER, TO SOME EXTENT THEY ARE STILL IN FORCE, SINCE THE NEW CRIMINAL SYSTEM SHALL BE COMPLETELY IN VIGOR WITHIN A TERM OF EIGHT YEARS FOLLOWING THE DATE OF SAID DECREE. THUS THEY ARE PRESENTED HERE AS THEY WERE BEFORE THEIR MODIFICATIONS, ALONG WITH THE TRANSITORY ARTICLES OF THE REFORM.

Article 16. No one may be disturbed in his person, family, home, papers or possessions, except by written order of a competent authority, duly grounded in law and fact which sets forth the legal cause of the proceeding.

No arrest warrant may be issued except by the judicial authority upon previous accusation or complaint for the commission or omission of an act which is described as a crime by the law, punishable with imprisonment, and unless there is evidence to prove that a crime has been committed and that there are sufficient elements to believe that the suspect is criminally liable.

The authority executing an arrest warrant issued by a court shall bring the suspect before the judge

without any delay and under its sole responsibility. Any contravention to the foregoing shall be punished by criminal law.

In cases of flagrante delicto, any person may detain the suspect bringing him without delay under custody of the nearest authority and the latter, without delay, shall bring him before the Public Prosecutor.

Only in urgent cases, when dealing with a felony qualified as such by the law and under reasonable risk that the suspect could evade the action of justice, should there not be a judicial authority available because of the hour, place or circumstance, the Public Prosecutor may, under his responsibility, order his detention, stating the grounds of law and fact and the circumstantial evidence underlying such decision.

In cases of urgency or flagrante delicto, the judge before whom the person in custody is presented shall immediately confirm the arrest or order his release, subject to the conditions established in the Law.

No one charged with a crime may be detained by the Public Prosecutor for more than forty eight hours,

term whereupon his release shall be ordered or he shall be brought before a judicial authority. Such term may be duplicated in cases established by the law as organized crime. Any abuse in respect to what has hereinbefore been provided shall be punished by criminal law.

Only a judicial authority may issue a search warrant which must be in writing. Every search warrant must describe the place to be searched, the person or persons to be detained and the objects to be seized, to which this act shall be exclusively restricted, preparing in site, upon the conclusion of the search, a fact finding report, before two witnesses proposed by the occupant of the place searched or in his absence or refusal, by the acting authority.

Private communications are secret. The law shall punish according to criminal law any action against the liberty and privacy of such communications. Only a federal judicial authority may authorize the intervention of any private communication, upon request by the federal authority empowered by the law or by the Public Prosecutor of the corresponding

State, wherefore the competent authority shall, in writing, ground in law and fact the legal causes of the request describing therein the class of intervention required, the subjects and the term thereof. The federal judicial authority may not grant these authorizations when the matters involved are of electoral, fiscal, commercial, civil, labour or administrative nature, nor in the case of communications of the defendant with its attorney.

Authorized interventions shall be subject to the requirements and limitations set forth in the laws. The results of interventions which do not comply with the aforesaid requirements shall not be admitted as evidence.

Administrative authorities may carry out inspections to private facilities only for ascertaining whether sanitary and police regulations have been complied with; and to require to be shown such books and papers which are indispensable to corroborate that fiscal provisions have been complied with, in which cases such authorities shall be subject to the provisions of the respective laws and to the formalities for search warrants.

The sealed correspondence circulating through the mail shall be exempt from any search and the violation thereof shall be punishable by the Law.

No member of the Army shall in times of peace be quartered in a private house against the will of the owner nor impose any requirements. In times of war the military can demand lodging, baggage, food and other requirements in the terms set forth by the applicable martial law.

Article 17. No one may take the law unto his own hands, nor resort to violence to enforce his rights.

Every person has the right to petition justice before courts of law which shall be ready to provide it under the terms and conditions set forth by the laws, and shall issue their judgments in a prompt, complete and impartial manner. Their services shall be free and consequently, judicial fees are prohibited.

Federal and local laws shall provide the necessary means to guarantee the independence of the courts and the full enforcement of their judgments.

No one may be imprisoned by debts solely of a civil nature.

Article 18. Pretrial detention may only be applied for crimes punishable by imprisonment. The place of confinement shall be different and shall be separate from the one used for convicted persons.

The governments of the States and of the Federation shall organize the prison system in their respective jurisdictions, under basis of labour, training for work, and education, as a means of social readjustment of the offender. Women shall serve their imprisonment penalties in places separated from those intended for the confinement of men.

State Governors may under the provisions established by their respective local laws, celebrate agreements of a general nature with the Federation, by which offenders convicted for crimes pertaining to State or local jurisdiction may serve their imprisonment penalties in facilities subordinated to the President of the Republic.

The Federation and State governments shall establish special institutions to deal with juvenile offenders.

Convicts of Mexican nationality who are serving imprisonment penalties in foreign countries may be brought to the Republic to serve their sentences under the grounds of the social readjustment systems provided in this Article, and convicts of foreign nationality convicted for federal crimes throughout the Republic or for crimes under the local jurisdiction of the Federal District, may be transferred to their countries of origin or of residence, provided that international treaties have been signed for that purpose. State governors may request from the President of the Republic, under the grounds of their respective local laws, the inclusion in said treaties of convicts for crimes under State jurisdiction.

In the cases and conditions provided by the Law, convicts may serve their penalties in the penitentiaries closer to their home, in order to encourage their reintegration to the community as a means of readjustment to society.

Article 19. No detention before a judicial authority may exceed a term of seventy two hours from the time the defendant is brought under its custody,

without a formal order for commitment in writing, which must set forth the crime he is charged with, the place, time and circumstances of the crime; as well as the evidence furnished by the preliminary criminal inquiry, which must be sufficient to establish that a crime has been committed and the probable liability of the suspect.

Said term may be extended only upon petition by the defendant in the form established by the Law. The extension of the term of detention to his detriment shall be punished by criminal law. If within the term hereinbefore set forth, any authority in charge of the facilities where the defendant is confined, should not receive an authorized copy of the order to stand trial in confinement or a request for an extension of the aforesaid term, said authority shall bring the matter to the attention of the judge immediately upon the end of the term. If said authority should not receive the aforesaid order within the next three hours, it shall release the defendant.

Every proceeding shall be compulsorily instituted only for the crime or crimes charged in the order

to stand trial in commitment or in the order to stand trial. If within the course of proceedings it should appear that another crime has been committed which is different from the one pursued, it shall be charged on a separate count, notwithstanding that a joinder of both proceedings could thereafter be ordered, if appropriate.

Any ill treatment when detaining a person or during confinement, any annoyance without legal justification, any exaction or contribution laid in jails, constitute an abuse which the laws shall correct and the authorities shall repress.

Article 20. In all criminal proceedings, the defendant, the victim or the offended party shall have the following constitutional rights.

A. The defendant:

I. Immediately upon request by the defendant, the judge must set him at liberty on bail, provided the crime he is charged with is not a felony where the Law explicitly prohibits granting it. In case of crimes which are not felonies, the

judge may deny liberty on bail, upon request by the Public Prosecutor, when the defendant has been previously convicted for a felony according to the Law or whenever the Public Prosecutor should submit to the judge, evidence establishing that freeing the accused represents, on account of his preceding behaviour or of the circumstances and nature of the crime committed, a risk for the offended party or for society.

The amount and form of the bail fixed must be accessible for the accused. In certain circumstances set forth by the Law, the judicial authority may modify the amount of the bail. To determine the amount and form of the bail, the judge must consider the nature, particularities and circumstances of the crime, the character of the defendant and the possibilities of complying with his duties in respect to trial; the losses and damages caused to the offended party; as well as the fine which, if applicable, may be imposed upon the accused.

The Law shall determine the serious cases where the judge may revoke liberty on bail;

II. He cannot be forced to declare. Any denial of communication, intimidation or torture is prohibited and shall be punished by criminal law. Any confession made before any authority other than the Public Prosecutor or the judge or even before any of them without the assistance of his counsellor shall have no weight as evidence;

III. He shall be informed in a hearing in open court, and within the next forty eight hours immediately following the filing of charges, the name of his accuser and the cause and nature of the accusation, so that in such hearing, the defendant may know the criminal conduct attributed to him and so that he may respond to the charges against him, in his preliminary statement;

IV. At his request he shall be confronted with the witnesses against him before the judge, except as provided under subsections V of Section B of this Article;

V. All witnesses and any other evidence submitted on his own behalf shall be admitted within the

term the Law deems necessary to that end and he shall be assisted in securing the presence of those witnesses whose testimony he may request, provided they are to be found in the place where the trial is held;

VI. He shall be judged in open court by a judge or by a jury composed of citizens who can read and write and who reside in the place and district where the crime was committed, provided such crime is punishable with more than one year of imprisonment. In any case, crimes committed through the press against public order or against the Nation's foreign or domestic security, shall be tried by a jury;

VII. He shall be furnished with all the information on record in the proceedings that he shall request for his defense;

VIII. He shall be tried within a term of four months in the case of crimes punishable with a maximum penalty not exceeding two years of imprisonment; and within a term of one year if the crime is punishable with a penalty exceeding

such term, unless he shall request a longer term for his defense;

IX. From the commencement of proceedings, he shall be informed of the rights provided to his benefit by this Constitution and of his right to an adequate defense, either by himself, by counsel or by a trusted person. Should he not wish or should he have no one to appoint as counsel for his defense, upon being required to do so, the judge shall appoint him a public defendant. He shall also be entitled to have his attorney present in all actions during the proceedings and he shall have the duty to appear as often as required by the court; and

X. Prison or detention may never be extended for failure to pay attorneys' fees nor any other monetary obligation, on account of civil liability or for any other similar cause.

Nor can pretrial detention be extended beyond the maximum imprisonment term established by the Law as penalty for the crime charged.

Whenever a conviction sentence imposes imprisonment the term thereof shall start running from the moment the defendant is arrested.

The constitutional rights set forth in subsections I, V, VII and IX herein shall also be respected during the preliminary criminal inquiry, subject to the terms and under the requirements and restrictions established by the laws. The provision in subsection II shall not be subject to any condition.

B. The victim or the offended party:

I. To receive legal counsel; to be informed of the rights that the Constitution establishes to his benefit and whenever he should so require it, to be informed of the developments of the criminal proceedings;

II. To assist the Public Prosecutor; to be received all the information and evidence that he furnishes, during the preliminary criminal inquiry as well as during proceedings, and for appropriate proceedings to be carried out.

Whenever the Public Prosecutor does not consider necessary to carry out the proceeding, he must state the grounds of law and fact justifying his refusal.

III. To receive urgent medical and psychological attention, from the moment the crime was committed.

IV. To recover damages. Whenever it should be legally admissible, the Public Prosecutor is obliged to require restitution of damages and the judge shall not acquit the convict from making restitution if he shall have imposed on him a conviction sentence.

The Law shall set forth swift and speedy procedures to enforce judgments in matters of recovery of damages.

V. Should the victim or the offended party be minors, he shall not be required to confront the defendant face to face, when the crime dealt with is rape or kidnapping. In such cases, the depositions shall be taken in the conditions established by the Law; and

VI. To require the injunctions and measures provided by the Law for his security and assistance.

Article 21. The imposition of penalties is an exclusive power to the judiciary. The investigation and prosecution of crimes is exclusive to the Public Prosecutor who shall be assisted theretofore by a police force under his immediate authority and command. The imposition of sanctions for infractions to government and police regulations is exclusive to administrative authorities, whose sanctions shall consist solely of fines or incarceration for a term not to exceed thirty six hours. Should the offender not pay the fine imposed, the fine shall be exchanged for the corresponding incarceration term, which shall never exceed thirty six hours.

Should the offender be a labourer, worker or employee, he may not be fined for an amount exceeding the sum of his wages for one day.

Should the offender be a non wage worker, the fine shall not exceed the amount equivalent to one day of his income.

The decisions by the Public Prosecutor determining not to indict and to withdraw from criminal action may be reviewed by courts under the terms set forth by the Law.

The President of the Republic may, with the approval of the Senate in every case, acknowledge the jurisdiction of the International Criminal Court.

Public security is a function in charge of the Federation, the Federal District, the States and the Municipalities, in their respective jurisdictions as established in this Constitution. The acts of police institutions shall be governed by the principles of legality, efficiency, professionalism and honesty.

The Federation, the Federal District, the States and the Municipalities shall coordinate themselves in the terms set forth by the Law, in order to establish a national public security system.

Article 22. Mutilation and infamous penalties, as well as branding, flogging, beating with sticks, and torture of any kind, the imposition of excessive fines, confiscation of property and any other cruel,

unusual and transcendental punishments are prohibited.

The attachment of all or of a portion of a person's property made under judicial authority to make payment of civil liability resulting from the commission of a crime or for the payment of taxes or fines, shall not be deemed confiscation of property. Nor shall the seizure of property ordered by the judicial authority under the terms provided by Article 109 in case of illicit enrichment, shall be deemed confiscation; nor the seizure of goods owned by a convict for felonies typified as organized crime, or for those goods in respect to which the convict acts like an owner, unless the licit origin of these goods is proven.

The appropriations made in favour of the State of goods it has secured, which are thereafter deemed abandoned, in accordance with the terms of applicable provisions, shall not be deemed confiscation. The judiciary shall decide to take the property in favor of the State those goods secured by cause of an investigation or proceedings for

organized crime, when such investigation o proceedings conclude without any resolution in regards to the goods secured. The judicial decision shall be issued upon previous proceedings where third parties are heard and there is enough evidence to fully establish that a felony typified as organized crime has been committed. Provided, however, that the defendant in such investigation or proceedings possessed, owned or acted as possessor or owner of such goods, even if said goods were transferred to third parties, unless the latter prove to be possessors or owners in good faith.

Article 73. The Congress shall have the powers:

I. To admit new States to the Federal Union;

II. (Repealed).

II. To create new States within the boundaries of the existing ones, for which it is required:

1° The territorial area or areas seeking to become a State must have a population of at least one hundred and twenty thousand inhabitants.

2° To prove to the Congress it has sufficient elements to provide for its political existence.

3° To hear the States Legislatures whose territory is involved, in respect to the convenience or inconvenience of establishing the new State, for which they are required to render their report within six months from the date the respective communication was delivered to them.

4° To hear the President of the Republic, who shall send his report within seven days from the date it was requested from him.

5° The creation of the new State must be approved by the votes of two thirds of the Deputies and Senators present in their respective Houses.

6° The resolution of the Congress must be ratified by the majority of the States Legislatures, upon previous examination of the file's copy, provided that the States Legislatures which territory is involved shall have granted their consent.

7° If the States Legislatures whose territory is involved do not grant their consent; the ratification

referred in the foregoing section, must be made by two thirds of the total of the States' Legislatures.

IV.  (Repealed);

V. To change the seat of the Supreme Powers of the Federation;

VI.  (Repealed);

VII. To levy the taxes and government excises required to cover the budget;

VIII. To establish the grounds under which the President of the Republic may contract loans on the Nation's credit, and to approve said loans, and acknowledge and order the payment of the national debt. No loan may be contracted except for the performance of such works which directly produce an increase in public revenues, save for those executed with the purpose of currency regulation, currency translation transactions, and those contracted during an emergency declared by the President of the Republic under the terms of Article 29. The Congress also has powers to

approve annually the amounts of indebtedness to be included in the Income Law, which are required by the Government of the Federal District and its public sector agencies, if any, according to the base provided in the corresponding Law. The President of the Republic shall inform the Congress of the Union annually about the exercise of said debt, wheretofore the Chief of Government of the Federal District shall send his own report in regards to the application he has made of the respective resources. The Chief of Government of the Federal District shall likewise report the foregoing to the Assembly of the Federal District, when submitting the government's accounts:

IX. To prevent the establishment of restrictions to interstate trade;

X. To legislate for the entire Republic on hydrocarbons, mining, motion picture industry, trade, betting games and lotteries, financial services and banking, nuclear and electric power; and to enact labor laws regulating Article 123;

XI. To create and abolish public offices of the Federation and to establish, increase or reduce their compensations;

XII. To declare war on the grounds of the information submitted by the President of the Republic;

XIII. To enact laws in accordance to which prizes on sea and land must be declared valid or invalid; and to enact statutes concerning the law of the sea for times of peace and war;

XIV. To raise and maintain the armed forces of the Union, namely: the Army, Navy and Air Force of the country, and to regulate their organization and service;

XV. To make regulations with the purpose of organizing, arming and disciplining the National Guard, reserving for the citizens composing it, the appointment of their respective commanders and officers, and to the States, the power to train them in accordance with the discipline established in such regulations;

XVI. To enact laws in regard to nationality, legal status of aliens, citizenship, naturalization, colonization, emigration and immigration and general public health of the Republic.

1° The General Health Council shall depend directly from the President of the Republic, without intervention from any Secretariat, and its general provisions shall be mandatory throughout the country;

2° In case of serious epidemics or danger of strike of exotic diseases throughout the country, the Secretariat of Public Health shall be required to immediately issue any necessary preventive measures subject to the President of the Republic's subsequent approval;

3° The Public health authority is vested with executive powers, and its provisions shall be obeyed by the country's administrative authorities;

4° The measures that the Council has put into effect in the campaign against alcoholism and the sale of substances that poison individuals

or degenerate the human species, as well as those measures adopted to prevent and fight against environmental pollution, shall thereafter be examined by the Congress of the Union in the cases under its jurisdiction.

XVII. To enact laws concerning general means of communication and transportation and in regards to mail and post offices; to enact laws on the use and enjoyment of waters under federal jurisdiction;

XVIII. To establish mints, to set forth the standards of coins, to determine the value of foreign currencies and to adopt a general system of weights and measures;

XIX. To establish rules for the occupation and alienation of vacant lands and to set their prices;

XX. To enact laws for the organization of Mexican Diplomatic and Consular Service;

XXI. To establish the crimes and offences against the Federation and to determine the punishments to be imposed for committing them.

Federal authorities may also take cognizance of crimes under local jurisdiction, when these are connected with federal crimes;

In concurring matters considered in this Constitution, federal laws shall establish the cases in which local authorities shall be able to solve federal crimes;

XXII. To grant amnesties for crimes within the jurisdiction of federal courts;

XXIII. To enact laws establishing the bases for cooperation between the Federation, the Federal District, the States and the municipalities, in matters of public security, as well as in respect to the organization and operation, enrollment, selection, promotion and honors of members of public security institutions under federal jurisdiction;

XXIV. To enact the Law regulating the organization of the Federation's Superior Supervising Entity and any others governing the actions, control and assessment of the Powers of the Union and of federal public entities;

XXV. To establish, organize and maintain throughout the Republic, rural, elementary, higher, secondary and professional education institutions; scientific research, fine arts, and technical education institutions; agriculture and mining practice schools, arts and crafts institutions, museums, libraries, observatories and other institutions concerning the general culture of the Nation's inhabitants and to legislate on all matters concerning such institutions; to legislate on matters concerning ruins or fossil remains, archaeological, artistic and historical monuments, which conservation is of national interest; as well as to enact laws aimed at conveniently distributing between the Federation, the States and municipalities, the exercise of the education function and the appropriations concerning such public service, seeking to unify and coordinate education throughout the Republic. The academic degrees issued by the establishments in question shall be valid throughout the Republic;

XXVI. To grant leave of absence to the President of the Republic, and to erect itself as an Electoral College and designate the citizen who is to replace the President of the Republic either as interim, provisional or substitute, under the terms set forth by Articles 84 and 85 of this Constitution;

XXVII. To accept the resignation from office of the President of the Republic;

XXVIII. To issue laws about governmental accounting that shall rule public accounting and the uniform presentation of information about finances, incomes and expenditures, as well as patrimonial for the Federation, States, Municipalities, the Federal District and political-administrative organs within their territories, to guarantee their combining with each other nationwide;

XXIX. To establish taxes and government excises:

1° On foreign trade;

2° On the enjoyment and exploitation of those natural resources set forth in paragraphs 4 and 5 of Article 27;

3° On credit institutions and insurance companies;

4° On public services under concession or directly exploited by the Federation; and

5° Excise taxes on:

a) Electric power;

b) Production and consumption of processed tobacco;

c) Gasoline and other products derived from petroleum;

d) Matches;

e) Unfermented juice of the maguey and its fermented products;

f) Forestry exploitation, and

g) Production and consumption of beer.

The States shall participate in the earnings generated by these special taxes in the proportion set forth by federal law. The States Legislatures shall set the percentage corresponding to the

municipalities, in their income from tax over electric power service;

XXIX-B. To enact legislation with regard to the elements and use of the National flag, coat of arms and anthem;

XXIX-C. To enact laws establishing the concurrence of the Federal Government, the States and the municipalities, within their respective jurisdictions, on matters concerning human settlements, in order to comply with the purposes set forth under paragraph third of Article 27 of this Constitution;

XXIX-D. To enact laws in regards to planning the Nation's economic and social development, as well as about statistical and geographical information of national interest;

XXIX-E. To enact laws to program, promote, negotiate, and carry out actions of economic nature, specially the ones related to supply and any others which purpose is to have a sufficient and timely production of socially and nationwide necessary goods and services;

XXIX-F. To enact any laws aimed at promoting Mexican investment, regulating foreign investment, technology transfer and production, diffusion and application of scientific and technologic knowledge required for national development;

XXIX-G. To enact laws establishing the concurrence of the Federal Government, the States and the municipalities, within their respective jurisdictions, on matters concerning environmental protection and preservation and restoration of ecological balance;

XXIX-H. To enact laws instituting administrative tribunals vested with full autonomy to issue their judgments and in charge of settling disputes between Federal Public Administration and private persons, and to penalize public servants charged with administrative responsibility as provided by the Law, establishing the provisions for their organization, operation, the proceedings and the means to review its resolutions;

XXIX-I. To enact laws establishing the bases in accordance to which the Federation, the States,

the Federal District and the municipalities, shall coordinate their actions in matters of civil protection; and

XXIX-J. To legislate on matters concerning sports, establishing general bases to coordinate the concurrent attributions of the Federation, the States, the Federal District and the municipalities; as well as the participation of the private and social sectors; and

XXIX-K. To enact laws in matters of tourism, establishing general bases to coordinate the concurrent powers of the Federation, States, municipalities, and the Federal District, as well as the participation of the social and private sectors;

XXIX-L. To enact laws establishing the concurrence of the Federal Government, the States and the Municipalities, within their respective jurisdictions, on matters concerning fisheries and aquaculture, as well as the participation of the social and private sectors; and

XXIX-M. To enact laws in matters of national security, establishing the requirements and limits to the corresponding investigations;

XXIX-N. To issue laws regarding the formation, organization, functioning and suppression of cooperatives. These laws shall establish the basis for the concurrence regarding the promotion and defensible development of cooperative activity of the Federation, States and Municipalities, as well as the Federal District, in the sphere of their cognizance;

XXX. To enact all laws required to make effective the foregoing powers, and any other powers vested on the Powers of the Union by this Constitution.

Article 115. The States shall adopt for their internal government, the popular representative and republican form of government, having as the basis of their territorial division and political and administrative organization the Free Municipality, in accordance to the following principles:

I. Each Municipality shall be governed by a Municipal Council whose members shall be chosen trough direct election by the people; it shall be composed of a Major and the number of Councilmen and legal representatives established by the Law. The jurisdiction that this Constitution grants to Municipal government shall be exercise by the Municipal Council exclusively and there shall be no intermediate authority between the latter and the government of the State.

Majors, legal representatives and councilmen of Municipal Councils elected trough direct election by the people, may not be reelected for the next term. The individuals who by indirect election or by appointment of a certain authority, perform duties corresponding to said offices, no matter how they are called, may not be elected for the next term. All the officers previously mentioned, if they shall be incumbents, they cannot be elected for the next term as alternate ones, but the individuals who have been alternate may be elected for the next term as

incumbents unless they have exercised the duties of the office.

State Legislatures by resolution of two thirds of their members may suspend Municipal Councils, declare that said councils have disappeared and suspend or revoke the powers of any of its members, for any of the serious causes set forth in State law, provided that its members have had sufficient opportunity to submit evidence and to submit the arguments they should deem most convenient.

If any of the members should cease to carry out his duties, he shall be replaced by his alternate or action shall be taken in accordance with the Law.

In the event that Municipal Council should be declared dissolved, by cause of resignations or by the absolute absence of the majority of its members, if according to the Law it is not admissible for the alternates to take office, nor to summon to new elections, the State Legislatures shall designate from among the residents, the Municipal Board that shall serve until the end

of the respective terms. Such Municipal Boards shall be constituted by the number of members set forth by the Law and must have the qualifications to be eligible which are set forth for councilmen;

II. The Municipalities shall be vested with legal capacity and shall handle their own estate as provided by the Law.

Municipal Councils shall have powers to approve, according to the laws on municipal affairs which the State Legislatures must enact, the police and government ordinances, administrative orders and provisions of general observance within their respective jurisdiction, which shall organize public municipal administration, regulate municipal affairs, procedures, public functions and public services under their jurisdiction and which shall assure the participation of citizens and residents.

The purpose of the laws referred under the foregoing paragraph shall be to establish:

a) The general bases for Municipal public administration and administrative procedure, including review procedures and bodies to decide disputes between said administration and private persons, subject to the principles of equality, publicity, due process and legality;

b) Cases requiring agreement of two thirds of Municipal Council members, in order to issue resolutions affecting Municipal real estate property and to execute acts or agreements which are binding for the Municipality for a larger term than the term of Municipal Council;

c) General provisions to execute the agreements set forth under sections III and IV of this Article as well as in the second paragraph of section VII of Article 116 of this Constitution;

d) The procedure and conditions for the State government to take upon itself a duty or service that is attributed to the Municipal Council when, not having the corresponding agreement, the State Legislature should consider that it is not possible for the Municipality to perform them

or provide them. In this case, it shall be necessary a previous request from the respective Municipal Council, approved by at least two thirds of its members; and

e) Applicable provisions in those Municipalities which do not have the corresponding government ordinances or regulations.

State Legislatures shall issue the provisions establishing the proceedings to solve the conflicts arising between the Municipalities and the State government or between Municipalities themselves, by cause of actions resulting from the premises under subsections c) and d) hereinbefore;

III. The Municipalities shall be in charge of the following duties and public services:

a) Drinking water, drainage, sewage, treatment and disposal of waste water;

b) Street lightning;

c) Cleaning, collection, transfer, treatment and final disposal of solid waste;

d) Markets and supply centers;

e) Cemeteries;

f) Slaughterhouses;

g) Streets, parks and gardens and their furnishings;

h) Public security, in the terms set forth by Article 21 of this Constitution, Municipal and traffic police; and

i) Any other that State Legislatures shall establish in accordance with the social, economic and territorial conditions of the Municipalities, as well as with their administrative and financial capacity.

Regardless of their constitutional jurisdiction, in the discharge of their duties or the provision of the services entrusted to them, the Municipalities shall abide by the provisions of Federal and State laws.

The Municipalities, upon previous agreement, between their Municipal Councils, may coordinate among themselves and associate in order to provide more efficient public services or to

perform their corresponding duties in a better manner. In this case and in the event of an association of Municipalities from two or more States, such Municipalities must have the approval of their respective States Legislatures. Likewise, when the respective Municipal Council should consider it necessary, it may execute agreements with the State so that the latter, in a direct manner or through the corresponding body, shall take care in a temporary manner, of some of the aforementioned duties and public services, or so that they may be provided or performed in a coordinated manner by the State and the Municipality itself;

Indigenous communities within the Municipal scope may coordinate and establish associations under the terms and for the purposes set forth by the Law.

IV. Municipalities shall freely administer their treasuries, which shall be composed with the revenues of the estates that they own, as well as with such taxes and government charges and

any other income that the Legislatures should establish to their benefit and in any case:

a) They shall receive such taxes and duties, including additional rates, which the State shall establish on real estate property, on its division, consolidation, transfer and improvement, as well as any others that result from a change in the value of real estate property.

Municipalities may celebrate agreements with the State so that the latter may perform certain functions related with the management of such taxes and government charges.

b) The Federal grants which shall be covered to Municipalities by the Federation, in accordance with the bases, amounts, and terms which are annually established by the States Legislatures.

c) Income from public services in charge of the Municipality.

Federal laws shall not restrict the powers of the States to establish those taxes and government

charges provided under subsections a) and c), nor shall they grant exemptions in relation to thereof. State laws shall not establish exemptions or subsidies in favor of any person or institution in respect to said taxes and government charges. Only the property of the Federation, the States or the Municipalities considered as public domain, shall be exempt, unless they are used by decentralized agencies or Government controlled corporations or by private persons under any title, for administrative purposes or for purposes different than their public object.

The Municipalities, within the scope of their jurisdiction, shall propose to the State Legislatures the quotas and rates applicable to taxes, duties, public works taxes, and cadastral catalogue of land and constructions values, used as the basis for taxes and government charges on real estate property.

State Legislatures shall approve the income laws of the Municipal governments and shall review and supervise their public accounts. The

expenditure budgets shall be approved by Municipal Councils under the grounds of their available income.

The resources constituting the Municipal treasury shall be applied by Municipal Councils or by whoever they shall authorize, in accordance with the Law.

V. Municipalities, under the terms provided by their respective Federal and States laws, shall have the powers to:

a) Prepare, approve and administer the urban municipal development plan and municipal zoning;

b) To participate in the creation and management of their territorial reserves;

c) To participate in the creation of regional development plans which must be in accordance with the general plans on the subject matter. Whenever the Federation or the States should make regional development projects they must assure the Municipalities' participation;

d) To authorize, control and supervise the regime applicable to the use of land, within the scope of its jurisdictions and within its territory;

e) To intervene in the legalization of urban land tenure;

f) To grant construction permits and licenses;

g) To participate in the creation and management of natural preserve areas, and to prepare and apply programs to regulate and organize these issues;

h) To intervene in the preparation and application of programs for public transportation of passengers when these affect the scope of their territory; and

i) To enter into agreements to administrate and guard federal zones.

In all applicable matters and in accordance with the purposes set forth in paragraph third of Article 27 of this Constitution, they shall issue any necessary regulations and administrative provisions.

VI. Whenever two or more urban centers located in the Municipal territories from two or more States, should constitute or tend to constitute a demographic continuity, the Federation, the respective States and the Municipalities, within the scope of their respective jurisdictions, shall plan and regulate in a joint and coordinated manner, the development of said centers in accordance with provisions of the Federal law on the subject matter.

VII. Preventive police shall be under the municipal president's command in the terms of the local Law of Public Security. Said police shall obey the orders given by the Governor of the State in those cases which he considers of superior force or grave alteration of public order.

The President of the Republic shall have command of public forces in the places where he resides regularly or temporarily;

VIII. State laws shall introduce the principle of proportional representation in the election of the Municipal Councils of all the Municipalities.

Labor relations between the Municipalities and their workers, shall be governed by the laws issued by the State Legislatures on the grounds of the provisions of Article 123 of this Constitution and its regulatory provisions;

IX.  (Repealed).

X.  (Repealed).

Article 123. Every person has the right to have a dignified and socially useful job; to that end the creation of jobs and the organization of society for work shall be encouraged, in accordance with the Law.

The Congress of the Union, without contravening the following bases, will enact labor laws which shall govern:

A.  Between workers, laborers, domestic employees, craftsmen and in general, in every labor contract:

I. The maximum working shift shall be eight hours;

II. The maximum working shift on night shall be seven hours. Unhealthy and hazardous work,

nightshifts in industrial enterprises and any other work after ten o'clock at night, are prohibited for minors under sixteen years old;

III. It is forbidden to use the labor of minors under fourteen years. Minors over fourteen and under sixteen years old shall have a maximum working shift of six hours;

IV. For every six days of work the worker is entitled to at least, one day of rest;

V. Pregnant women shall not perform jobs which demand considerable effort and endanger their health in respect to their pregnancy. They shall have a mandatory paid time off of six week before the date approximately set for the delivery of their child, and for another six week term thereafter, during which they must be paid their salary in full and shall keep their job and the rights acquired there from. During their nursing period they shall have two additional rest periods per day, of half an hour each, to feed their children;

VI. The minimum wages that workers will enjoy shall be general or occupational. General wages shall govern in fixed geographic areas; occupational wages apply to particular sectors of an industry or commercial activity, or to certain occupations, trades or specialized work.

General minimum wages must be sufficient to satisfy the normal material, social and cultural needs of the head of a household, and to provide for the mandatory education of his children. Occupational minimum wages shall be established considering, in addition, the conditions of the different economic activities.

Minimum wages shall be set by a National Commission constituted by representatives of workers, employers and government, which may be assisted by those special advisory committees it should deem necessary for the better performance of its duties;

VII. The same salary shall be paid for the same work, regardless of sex or nationality;

VIII. Minimum wages shall be exempted from attachments, set-off or discount;

IX. Workers are entitled to participate in the profits of businesses,46 subject to the following provisions:

a) A National Commission constituted with representatives of workers, employers and the Government shall establish the percentage of profits which must be distributed among the workers;

b) The National Commission shall carry out any necessary and appropriate research and studies to know the general conditions of the country's economy. It shall likewise consider the need to promote the country's industrial development, the reasonable returns that capital must earn and necessary capital reinvestments;

c) Said Commission may review the percentage set should any new research and studies justify it;

d) The Law may exempt newly created companies from the duty of profit sharing during a certain

and limited number of years, and may also exempt works of exploration and other activities whenever their nature and particular conditions justify it;

e) The basis to determine the amount of each company's profits will be the taxable income in accordance with the provisions of Income Tax Law. Workers may file before the corresponding office of the Secretariat of Finance and Public Credit,47 any objections they should deem convenient, subject to the procedure established by the Law;

f) Workers' right to profit sharing does not imply the power to intervene in the management or direction of the business.

X. Wages must be paid precisely in currency of legal tender, and it is not permitted to pay them with merchandise, coupons, tokens or any other representative sign intended as a substitute for currency;

XI. When, due to extraordinary circumstances, working hours must be extended; the salary to

be paid for overtime shall be 100% more than the amount fixed for regular hours. Overtime may never exceed three hours per day nor three consecutive times. Minors under sixteen years old may not be admitted to these types of jobs;

XII. All agricultural, industrial, mining business or any other kind of business shall have the duty, as set forth in Laws, to provide its workers with comfortable and sanitary housing. This obligation shall be discharged with the contributions made by the businesses to a national housing fund with the purpose of constituting deposits to the benefit of their workers and of establishing a financing system to provide the workers with sufficient and inexpensive loans so that they may acquire in ownership the dwellings mentioned.

The enactment of a law to institute a body constituted by representatives of the Federal Government, the workers and of the employers, to manage the resources of the national housing fund, is of social benefit. Said law shall regulate

the formalities and procedures in accordance to which the workers may acquire in ownership the dwellings hereinbefore mentioned.

The businesses referred under paragraph first of this section, which are located outside villages, shall have the duty to establish schools, health clinics and other services necessary for the community.

Additionally, whenever the population in such workplaces shall exceed two hundred inhabitants, a tract of land of no less than five thousand square meters, must be reserved for the establishment of public markets, buildings intended for municipal services and recreation centers.

Establishments that sell liquors and gambling houses are prohibited in all workplaces;

XIII. Businesses, whatever their activity, shall have the duty to provide their workers with skills or training for the job. The Law shall establish the systems, methods and procedures in

accordance to which employers must comply with said obligation;

XIV. Employers shall be liable for labor accidents and for occupational diseases suffered by workers in relation or by cause of the profession they exercise or of the job they do. Therefore, employers shall pay the corresponding indemnification, whether for the death or temporary or permanent disability to work, in accordance with the provisions of the Law. This liability shall survive even when the employer shall contract the work through an intermediary;

XV. According to the nature of his business, the employer shall have the duty to comply with legal provisions regarding hygiene and safety in the facilities of his establishment, and to adopt adequate safeguards to prevent accidents in the use of machines, instruments and materials of labor, as well as to organize labor in such way as to ensure the greatest possible guarantee for the health and safety of workers, and of unborn children, in the case of pregnant women. The

laws shall provide, to that end, the appropriate sanctions in each case;

XVI. Workers as well as employers shall be entitled to organize themselves for the defense of their respective interests, by constituting unions, professional associations, etc;

XVII. The laws recognize strikes and lockouts as rights of workers or employers;

XVIII. Strikes shall be lawful when their purpose is the attainment of balance between the different factors of production, by harmonizing the rights of labor with those of capital. In public services, it shall be mandatory for workers to give notice, ten days in advance, to the Board of Conciliation and Arbitration, in regards to the date established for the suspension of work. Strikes shall be considered illegal only when the majority of the strikers shall engage in acts of violence against persons or property, and in the event of war, should they work in establishments or services depending of the government;

XIX. Lockouts shall be lawful only when an excess of production shall render it necessary to suspend operations in order to maintain prices at a reasonable level over costs, and subject to the previous approval of the Board of Conciliation and Arbitration;

XX. Conflicts between capital and labor shall be subjected for settlement, to the award issued by the Board of Conciliation and Arbitration, which shall composed by an equal number of representatives of workers and of employers and one of the government;

XXI. Should the employer refuse to submit his disagreements to arbitration or to accept the award rendered by the Board, the labor contract shall be terminated and he shall be obliged to indemnify the worker with three months' wages, in addition to the liabilities resulting from the dispute. This provision shall not apply in cases of the actions referred under the following section. Should the workers reject the award, the labor contract shall be terminated;

XXII. An employer who dismisses a worker without justifiable cause or for having joined an association or union, or for having taken a part in a lawful strike, shall be required, at the election of the worker, either to perform the contract or to indemnify him with the payment of three months' wages. The Law shall establish the cases where the employer may be exempted from the obligation of performing the contract by paying an indemnity. Likewise, the employer shall be obliged to indemnify the worker with the wages of three months, if the latter shall leave his job on account of the employer's lack of good faith or mistreatment either as to his own person, or that of his spouse, parents, children, or siblings. The employer cannot be exempted from this liability when the mistreatment is inflicted by subordinates or members of his family acting with his consent or knowledge;

XXIII. Claims of workers for wages or salaries earned during the preceding year and for indemnifications shall have preference over

any other claims in cases of bankruptcy or composition;

XXIV. Only the worker is liable for any debts has contracted with his employer, or the latter's associates, family or dependents, and never for any cause may payment there for be exacted from members of the worker's family, nor shall said debts be claimed for an amount exceeding the wages of the worker for one month;

XXV. Employment placement services shall be free of charge for workers, whether they are provided by a municipal office, by employment bureaus or any other public or private agency.

When providing this service the demand for jobs shall be taken into account and, in equal conditions, the individuals who are the only income source for their family shall have preference;

XXVI. Any labor contract between a Mexican citizen and a foreign employer must be legalized before the competent municipal authority and

bear visa by the consul of the nation to which the worker is to go, in the understanding that, in addition to the usual clauses, it shall clearly provide that repatriation expenses shall be born by the contracting employer;

XXVII. The following stipulations shall be null and void and not binding for any of the contracting parties, even if set forth in the contract:

a) Those providing for inhuman working shift on account of its notorious excessiveness, in view of the nature of the work;

b) Those providing for a salary which is not remunerative in the judgment of the Board of Conciliation and Arbitration;

c) Those providing a term of more than one week for the payment of a daily wages;

d) Those providing as the place to pay wages, an amusement place, a restaurant, cafe, tavern, canteen, or store, when the employee does not work in such establishments;

e) Those involving a direct or indirect obligation to purchase consumption goods in certain stores or places;

f) Those permitting to withhold wages by way of fines;

g) Those constituting a waiver by the worker of indemnifications to which is entitled by cause of labor accidents or occupational diseases, damages for breach of contract or for being discharged from a job;

h) Any other provisions implying a waiver of any of the rights vested in the worker by the laws to protect and help workmen;

XXVIII. The laws shall establish what property constitutes the family patrimony. These goods shall be inalienable, not subject to mortgage or attachment, and may be bequeathed with simplified formalities in succession proceedings;

XXIX. The enactment of a Social Security Law is of public interest and it shall include insurance against disability, old age, life, unemployment,

illness and accidents, child day care, and any other intended for the protection and welfare of workers, peasants, non-salaried persons and other social sectors and their families;

XXX. Likewise, cooperative associations for the construction of cheap and sanitary dwelling houses, intended to be acquired in ownership by workers within certain periods, shall be considered of social utility;

XXXI. Enforcement of labor laws pertains to the authorities of the States within their respective jurisdictions, except for the following matters which are under the exclusive jurisdiction of federal authorities:

a) In relation to industrial branches and services:

1. Textile;

2. Electric power;

3. Motion pictures;

4. Rubber;

5. Sugar;

6. Mining;

7. Metallurgical and steel, including exploitation of basic minerals, and their processing and smelting, as well as the manufacture of metallic iron and steel in all their forms and alloys, and the rolled products there of;

8. Hydrocarbons;

9. Petrochemical;

10. Cement;

11. Lime;

12. Automobiles, including electric or mechanical automobile parts;

13. Chemical, including pharmaceutical and medical chemicals;

14. Cellulose and paper;

15. Vegetable oils and fats;

16. Food processing, including only the manufacture of bottled, canned or packed food or of those intended there for;

17. Manufacture of bottled or canned beverages or of those intended there for;

18. Railroads;

19. Basic lumbering, which includes the production of sawmills, and the manufacture of plywood or agglutinated wood products;

20. Glass, exclusively in respect to the manufacture of plain, carved or flat glass, or of glass containers;

21. Tobacco, which includes the processing and manufacture of tobacco products; and

22. Banking and credit services.

b) Business Enterprises:

1. The ones decentralized or administered directly by the Federal Government;

2. Those acting through a federal contract or concession and the industrial enterprises in connection thereto;

3. Those carrying out works in federal zones or zones under federal jurisdiction, in waters of territorial sea, or those comprised within the Nation's exclusive economic zone.

Federal authorities also have under their exclusive jurisdiction: the application of labor provisions in matters relating to conflicts affecting two or more States; collective labor contracts which have been declared mandatory in more than one State;48 employers' obligations in educational matters, under the terms set forth by the Law; and in respect to employers' duties in matters of on the job training courses for their workers, as well as safe and sanitary conditions in work centers, for which federal authorities shall have the support of State authorities, when dealing with branches or activities under local jurisdiction, as provided by the corresponding Law.

B. Between the Powers of the Union, the Government of the Federal District and its workers:

I. The maximum working shift and nightshift shall be of eight and seven hours, respectively. Exceeding hours shall be overtime and shall be paid an additional 100% over the remuneration fixed for regular services. In no case may overtime work exceed three hours daily nor three consecutive times;

II. For every six days of work the worker is entitled to at least, one day of rest; with full payment of wages;

III. Workers shall enjoy vacations which shall never be less than twenty days per year;

IV. The wages shall be fixed in the respective budgets, and their amount may not be reduced while such budgets are in force;

Salaries may never be inferior to general minimum wages for workers in the Federal District and in the States;

V. The same salary shall be paid for the same work, regardless of sex;

VI. Withholdings, discounts, deductions or attachments over wages may only be made in the cases provided by the laws;

VII. The appointment of personnel shall be made by systems which permit the assessment of the skills and aptitudes of applicants. The State shall organize schools of Public Administration;

VIII. Workers shall be entitled to rights of classification scale so that promotions may be made on the grounds of skills, aptitudes and seniority. Under the same conditions, the individual representing the only source of income for his family shall have preference;

IX. Workers may only be suspended or dismissed for a cause, under the terms provided by the Law.

In the event of wrong discharge the worker has the right to chose between reinstatement in his work or the corresponding severance payment, upon previous legal proceedings. In the case of cancelled posts, the affected workers shall be entitled to obtain another job equivalent to

the one cancelled or to the indemnification payment established by the Law;

X. Workers have the right to associate for the defense of their common interests. They may likewise exercise their right to strike upon previous fulfillment of the requirements set forth by the Law, in respect to one or several agencies of Government Powers, whenever the rights vested on them by this Article are infringed in a general and systematic manner.

XI. Social security shall be organized in accordance with the following minimum bases:

a) It shall cover labor accidents and occupational diseases; non-occupation illnesses and maternity; retirement, disability, old age and death.

b) In case of accident or illness, the right to the job shall be retained for the time set forth by the Law.

c) Pregnant women shall not perform jobs which demand considerable effort and endanger their

health in respect to their pregnancy. They shall have a mandatory paid time off of one month before the date approximately set for the delivery of their child, and for another two months term there after, during which they must be paid their salary in full and keep their job and the rights acquired there from. During their nursing period they shall have two additional rest periods per day, of half an hour each, to feed their children. In addition they shall enjoy medical and obstetrical attention, medications, nursing aids; and childcare services.

d) Members of the workers' family must be entitled to medical assistance and medications, in the cases and in the proportion established by the Law.

e) Vacation and rehabilitation centers, as well as economy stores for the benefit of workers and their families shall be established.

f) Workers shall be provided with low cost housing for rent or sale in accordance with the programs previously approved there to fore.

Additionally, the State shall establish a national housing fund with the contributions it shall make, with the purpose of constituting deposits to the benefit of said workers and to establish a financing system to provide the workers with sufficient and inexpensive loans so they may acquire in ownership comfortable and sanitary housing, or to build, repair, or improve their home or to pay loans acquired there for.

The contributions for such fund shall be paid to the agency in charge of social security. The formalities and procedure in accordance to which such fund shall be managed and to which the corresponding credits must be granted and adjudged, shall be govern by its law and by any other applicable laws;

XII. Individual and collective labor disputes, as well as disputes between trade unions must be submitted to the Federal Conciliation and Arbitration Board for Government Employees,49 which shall be constituted as provided in the Law.

Disputes between the Judicial Power of the Federation and its employees shall be settled by the Council of the Federal Judiciary. Disputes between the Supreme Court of Justice and its employees shall be decided by the latter;

XIII. Military and navy personnel, members of the Foreign Service, 50 agents of the Public Prosecutor and members of police institutions shall be governed by their own laws.

The State shall provide active members of the Army, Air Force and Navy, the benefits under subsection f) of section XI of Subdivision B of this Article, in similar terms and through the agencies in charge of providing social security services for the members of said institutions; and

Members of police agencies of the Municipalities, the States, the Federal District, and the Federation, may be removed from office whenever they do not fill the qualifications to continue in their job, as provided by the laws in force at the moment of their removal. In such event, the reinstatement or restitution in office shall not be admissible,

regardless of the proceeding or remedy brought forth to dispute the removal and only a severance indemnification shall be admissible, if appropriate. The removal of any other public officers referred in this section shall be subject to applicable legal provisions.

XIII BIS. The central bank and the agencies of Federal Public Administration which comprise the Mexican Banking System shall govern their labor relations with their employees in accordance to the provisions set forth in this Subdivision of this Article;

XIV. The Law shall determine the offices to be considered positions of non-tenure. The individuals holding those positions shall be entitled to salary protection measures and social security benefits.

# DECREE OF REFORMS AND ADITIONS OF SEVERAL ARTICLES OF THE POLITICAL CONSTITUTION OF THE UNITED MEXICAN STATES, PUBLISHED ON THE OFFICIAL GAZETTE OF THE FEDERATION ON JUNE 18TH 2008.

SOLE ARTICLE. ARTICLES 16, 17, 18, 19, 20, 21 AND 22; SECTIONS XXI AND XXIII OF ARTICLE 73; SECTION VII OF ARTICLE 115 AND SECTION XIII OF ARTICLE 123, SUBSECTION B), OF THE POLITICAL CONSTITUTION OF THE UNITED MEXICAN STATES, ARE REFORMED AS FOLLOWS:

## TRANSITORY ARTICLES

First. The present Decree shall be enforced the day after it has been published in the Diario Oficial de la Federación, with the exception of that established in the following transitory articles.

Second. The accusatory criminal system established in articles 16, second and thirteenth section; 17, third, fourth, and sixth; 19; 20 and 21, seventh the Constitution, will be enforced when the corresponding ordinary legislation establishes it, without this being able to exceed a term of eight

years, starting the next day of the publication of this Decree.

Therefore, the Federation, States, and Federal District, in their respective jurisdictions, shall issue and enforce the modifications or legal orders that are necessary for the incorporation of the accusatory criminal system. The Federation, States, and Federal District will adopt the accusatory criminal system in the modality they determine, be it regional or according to the crime as defined by Law.

When the legal orders mentioned in the previous paragraph are published, the competent legislative powers or organs shall issue, as well, a declaration that shall be published in the official organs of promotion, which shall explicitly express that the accusatory criminal system has been incorporated to such orders and that, therefore, the guarantees that this Constitution establishes will begin to regulate the form and terms in which criminal proceedings will be carried out.

Third. Regardless of that established in the second transitory article, the accusatory criminal system

established in articles 16, second section and thirteenth; 17, third, fourth, and sixth sections; 19; 20 and 21, seventh section of the Constitution, shall be enforced the day after this Decree has been published in the Diario Oficial de la Federación in the federal entities that already have it incorporated in their current legal systems, being fully valid the procedural acts practiced that are based on such systems, regardless of the time that they went into force. For such an effect, they shall issue the declaration established in the second transitory article.

Fourth. The criminal proceedings initiated prior to the enforcement of the new accusatory criminal system established in articles 16, second section and thirteenth; 17, third, fourth, and sixth section; 19; 20 and 21, seventh section of the Constitution, will be concluded according to the provisions that were in force prior to such an act.

Fifth. The new reintegration system established in the second section of article 18, as well as the regime of modification and duration of penalties

established in the third section of article 21, shall be enforced when the corresponding ordinary legislation establishes it, without this being able to exceed the term of three years, starting the day after the publication of this Decree.

Sixth. Organized crime laws of the federal entities shall continue to be enforced until the Congress of the Union exercises the power established in article 73, subsection XXI, of this Constitution. The criminal proceedings initiated with a base on such laws, as well as the sentences issued with a base on such laws, shall not be affected by the enforcement of the federal legislation. Therefore, they shall be concluded and executed, respectively, according to the provisions that were in force before the enforcement of the latter.

Seventh. The Congress of the Union, within sixth months after this Decree has been published, shall issue the law that establishes the National System of Public Safety. The federal entities shall issue, within a year after this Decree has been published, the laws of this matter.

Eight. The Congress of the Union, the Legislatures of the states, and the legislative organ of the Federal District shall destine the necessary resources to the reform of the criminal justice system. The budget accounts shall be established in the budget that immediately follows the enforcement of this decree and in the subsequent budgets. This budget shall be destined to the design of legal reforms, organizational changes, construction and operation of infrastructure, and the necessary training for judges, agents of the Public Prosecutor, police officers, defenders, experts, and attorneys.

Ninth. Within the two months following the enforcement of this Decree, an instance of coordination shall be created, integrated with representatives of the Executive, Legislative, and Judicial Branches, the academic sector, and civil society, as well as Conferences of Public Safety, Administration of Justice, and Presidents of Courts, which shall have a technical secretariat that will aid and support local and federal authorities whenever they request it.

Tenth. The Federation shall create a special fund for the financing of the activities of the technical secretariat established in the ninth transitory article. The funds shall be assigned based on the abidance of the obligations and the ends established by Law.

Eleventh. As soon as the accusatory criminal system is enforced, the agents of the Public Prosecutor determined by law may petition the judge to order the house arrest of a suspect when it comes to felonies and for a term that does not exceed forty days.

This measure will proceed as long as it is necessary for the success of the investigation, the protection of persons or legal goods, or when there is a founded risk that the suspect will evade the action of justice.

# BIBLIOGRAPHY

Becerra, Javier F., Dictionary of Mexican Legal Terminology, México, Escuela Libre de Derecho, 1999.

Campbell Black, Henry, Black's Law Dictionary, 6th ed., St. Paul, Minnesota, Abridged, West Publishing Co., 1991.

Garner, Bryan A., A Dictionary of Modern Legal Usage, New York, USA, Oxford University Press, 1984.

Hoagland, Alexander C., Company Formation in Mexico, Section F Labour Laws, London, Lloyds Bank International Ltd., 1980.

Solis, Gerardo & Gasteazoro, Raul A., Diccionario Legal Español-Inglés/Inglés-Español, St. Paul, Minnesota, West Publishing, Co., 1992.

**448**   Political Constitution of the United Mexican States

West III, Thomas L., Spanish English Dictionary of Law and Business, Atlanta, Georgia, Protea Publishing, 1999.