**Stipulation Regarding Early Restoration Project for the Deepwater Horizon Oil Spill -
Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the
Florida Panhandle, Alabama, and Mississippi**

This Stipulation Regarding Early Restoration Project for the Deepwater Horizon Oil Spill --
Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida
Panhandle, Alabama, and Mississippi ("Project Stipulation" or "Stipulation"), is made by and
among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as
defined herein (collectively, with the United States Department of Justice, the "Parties") in
accordance with the Framework for Early Restoration Addressing Injuries Resulting from the
Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  This Project
Stipulation is governed by the Framework Agreement and incorporates its terms by reference.
This Project Stipulation will be effective when signed by an authorized representative of each of
the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf
of the following federal trustees of natural resources:  the Secretary of the United States
Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the
United States Environmental Protection Agency ("EPA"), the Administrator of the National
Oceanic and Atmospheric Administration ("NOAA"), and the Secretary of the United States
Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida,
Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following
state trustees of natural resources:  for the State of Alabama, the Alabama Department of
Conservation and Natural Resources and the Geological Survey of Alabama; for the State of
Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife
Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and
Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of
Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana
Department of Natural Resources; for the State of Mississippi, the Mississippi Department of
Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the
Texas General Land Office, and the Texas Commission on Environmental Quality (collectively,
"State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees");
and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater
Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in
a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment
("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions,
to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal
and state laws and authorities.  To date, BPXP has been participating cooperatively in the NRDA
as provided under applicable laws and regulations; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater
Horizon Oil Spill Phase II Early Restoration Plan and Environmental Review ("Phase II Early

Restoration Plan"), dated December 18, 2012, after public notice of the proposed plan, a reasonable opportunity for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in accordance with the Framework Agreement and in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A.  The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project budget, location, and anticipated schedule), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill. On November 6, 2012, the Trustees published for public notice and comment a draft Phase II Early Restoration Plan that included the Early Restoration Project. On December 18, 2012, after considering all public comments received on the draft plan, the Trustees adopted a final Phase II Early Restoration Plan that included the Early Restoration Project. The final Phase II Early Restoration Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.  The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

   i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

   ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

   iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

   iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

   v.   is feasible and cost effective.

C. The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection, Florida Fish and Wildlife Conservation Commission and the United States Department of the Interior ("implementing Trustee(s)").

D. The implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to all Parties describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the implementing Trustee(s) has completed implementation of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  1) January, February, March; 2) April, May, June; 3) July August, September; 4) October, November, December.  The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.  Quarterly status reports will be due within thirty (30) days after the conclusion of the quarter.  The Trustees may group multiple Early Restoration Projects in a single report.

E. All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

F. Prior to signing this Project Stipulation, the implementing Trustee(s) coordinated with the Federal On-Scene Coordinator (FOSC) to ensure that the Early Restoration Project will not obstruct, duplicate or conflict with any ongoing response actions, and ongoing response actions, if any, will not obstruct, duplicate or conflict with the Early Restoration Project.

II.   <u>FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE TRUSTEES</u>

A. BPXP shall provide funding in the amount of $4,420,320 for the Early Restoration Project in accordance with Paragraphs II.C. and II.D. below, absent the entry of a judicial stay or other court order that prevents project implementation or otherwise affects the terms of this Project Stipulation.  All funds provided to any Trustee under this Stipulation shall be paid and deposited in accordance with the instructions provided by the implementing Trustee(s) pursuant to Paragraphs II.C. and II.D. below.   The $4,420,320 shall be distributed between the implementing Trustees as follows:

      i.     Florida Department of Environmental Protection, on behalf of the Florida Trustees, shall receive $2,835,000; and

      ii.    The United States Department of the Interior shall receive $1,585,320.

B.   The Trustees shall use the funds paid under this Stipulation only for implementation of the Early Restoration Project, including oversight, monitoring, corrective actions, and any agreed upon contingencies, except as provided in Paragraphs II.F. and II.G. An estimated budget for the Early Restoration Project is set forth in Appendix A.

C.   Initial Payment: For this Early Restoration Project, instead of the payment schedule in the Framework Agreement, the Parties agree to: Within fifteen (15) days of the filing of this Project Stipulation or receipt of written payment instructions from the implementing Trustee(s), whichever is later, BPXP shall cause the transfer of 50% of the amounts specified for payment to each Trustee in Paragraph II.A. from the Early Restoration Subaccount[1] to the account or accounts and in the manner designated in the payment instructions.

D.   Additional Payments: For this Early Restoration Project, instead of the payment schedule in the Framework Agreement, the Parties agree to: The remaining 50% of the amounts specified for payment to each Trustee in Paragraph II.A. shall be paid from the Early Restoration Subaccount as follows:

      i.     The implementing Trustees elect to perform this Early Restoration Project with the use of contractor(s). Unless other payment arrangements are specified in Appendix A, BPXP shall transfer 50% of the amounts specified for payment to each Trustee in Paragraph II.A. from the Early Restoration Subaccount to the account or accounts designated by the implementing Trustees within thirty (30) days of the filing of this Project Stipulation; such notice shall include written payment instructions.

E.   In addition to the amount specified in Paragraph A of this section, BPXP shall make available contingency funding from the Early Restoration Subaccount of up to $237,798 for the Early Restoration Project, as provided herein ("Contingency Funding"). The Department of the Interior shall be the only implementing Trustee allowed to request Contingency Funding for the Early Restoration Project. Contingency Funding shall only be used for the Early Restoration Project and shall only be used to pay for actual cost overruns, performance monitoring, adaptive management, corrective actions and other implementation costs that are within the scope of the Early Restoration Project. If the implementing Trustee(s), here the Department of the Interior, believes that Contingency Funding will be required, such Trustee shall provide to BPXP a statement, together with supporting materials, demonstrating that the funds received pursuant to Paragraph A of this section have been expended for the Early Restoration Project. Such a statement shall also include an explanation of the need, the amount of funds requested from the Contingency Funding, and a detailed description of the proposed work activities. BPXP shall pay the implementing Trustee(s), here the Department of the Interior, for such

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early restoration projects, as required by the terms of the Framework Agreement.

Contingency Funding, up to a maximum amount of $237,798 within 30 days of receipt of the statement.

F.  Any and all funds transferred pursuant to Paragraph 5 of the Framework Agreement and Paragraphs II.C. and II.D. of this Project Stipulation, along with any accrued interest, that have not been spent and remain unobligated after the implementing Trustee(s) has completed the Early Restoration Project, including all performance monitoring and corrective actions, shall be retained by the Trustees. Such funds may only be used by the implementing Trustee(s) for another restoration project agreed to by all Trustees, provided, however, that such funds may not be used for another project unless and until the implementing Trustee(s) has confirmed in writing that the Early Restoration Project is complete and no funding pursuant to Paragraph II.E. will be required. BPXP shall not be entitled to any additional NRD Offsets or other credits related to any additional restoration work performed with such retained funds.

G.  If implementation of the Early Restoration Project does not commence, as specified in Appendix A, by the end of the eighteenth (18th) month after the date all Parties have signed this Project Stipulation, unless the Parties agree otherwise, the Project Stipulation shall be void and the funds transferred pursuant to Paragraph 5 of the Framework Agreement and Paragraphs II.C. and II.D. of this Project Stipulation that have not been spent and remain unobligated, along with any accrued interest, shall remain in the account or accounts to which they have been transferred and only be used for another project under a new Project Stipulation agreed to by all the Parties under the terms of the Framework Agreement.

H.  Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project exceeds the amount of funding stated in Paragraph II.A. above plus the Contingency Funding, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.


III.  NRD OFFSETS

A.  The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference. Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C. To the extent the Parties anticipate that one or more NRD Offsets are likely to need to be scaled against injuries to one or more natural resources and/or services that are not of the same type or quality, and scaling factors have been agreed upon, Appendix C also includes those scaling factors. NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B.  Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached

hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. The Trustees, collectively and individually, shall credit all NRD Offsets against their assessment of total injury resulting from the Oil Spill as provided in the Framework Agreement.

D. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C as provided in the Framework Agreement.

E. The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project does not achieve the anticipated results.

F. BPXP waives the right to claim that the Early Restoration Project provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

G. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project. Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

H. Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages. To the extent NRD Offsets have been applied as provided in the Framework Agreement by the Trustees in the assessment of total injury, then BPXP is not entitled to any further application of the NRD Offsets in litigation or other proceedings brought by the Trustees.


IV.   EFFECT OF STIPULATION

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court in the form of Appendix E (Notice of Project Stipulation), attached hereto and incorporated by reference.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project.

V.   GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this
Project Stipulation shall not be construed to limit in any way the authority of the Trustees
to perform assessments, engage in any restoration planning, or select and implement
restoration projects; nor shall it require BPXP to fund any of these activities.

B.  This Project Stipulation shall not limit the Trustees' rights to recover costs for reasonable
oversight costs related to assessments, restoration planning activities, selection and
implementation of restoration projects, or other reasonable costs as provided in 33
U.S.C. § 2706 including the Trustees' costs associated with the selection of Early
Restoration Projects, development of the Early Restoration Plan(s), and general non-
project specific administration and monitoring of the early restoration process; provided,
however, nothing in this Project Stipulation shall permit the Trustees to recover
additional costs of implementation of the Early Restoration Project except in accordance
with Paragraph II.H.

C.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this
Project Stipulation does not operate to release BPXP from any potential natural resource
damage or other liability, and the Trustees reserve all other claims against BPXP and/or
other parties related to natural resource damage liability or any other liability arising from
the Oil Spill.

D.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the
Trustees reserve the right to use any appropriate methodologies for assessing natural
resources injuries, for determining the natural resource damages and for planning and
scaling restoration for the Oil Spill.

E.  Except with respect to the Early Restoration Project that BPXP has agreed to fund and
the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and
evidentiary defenses it may have against any claim asserted by any Trustee, including,
without limitation, any defenses related to natural resource damages arising from the Oil
Spill, any natural resource damages assessment associated with the Oil Spill, and any
methodologies the Trustees use to assess natural resources injuries, determine the natural
resource damages claims, and in planning and scaling restoration.  BPXP reserves all
claims, cross-claims or counterclaims it may have against any person or entity not a party
to this Stipulation.

F.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the
Trustees expressly reserve all claims, demands, and causes of action, either judicial or
administrative, past or future, in law or equity, against any person or entity not a party to
this Project Stipulation for any matter arising out of or in any way relating to the Oil
Spill.

G.  The undersigned representative of each Party certifies that he or she is fully authorized to
enter into the terms and conditions of this Project Stipulation and to execute and legally
bind such Party to this document.  This Project Stipulation may be signed in counterparts.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida Panhandle, Alabama, and Mississippi Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____12/19/12_____
Date

IGNACIA S. MORENO
U.S. Department of Justice
Assistant Attorney General
601 D Street, NW
Washington, D.C. 20004


_____
Date

RACHEL JACOBSON
U.S. Department of the Interior
Principal Deputy Assistant Secretary for
Fish, Wildlife and Parks
1849 C Street NW
Washington, D.C. 20240


_____
Date

MARY KAY LYNCH
U.S. Environmental Protection Agency
Legal Counsel to Principal Representative
1200 Pennsylvania Ave., NW
Washington, DC 20460


_____
Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, Washington 98155

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida Panhandle, Alabama, and Mississippi Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:


_____
Date

IGNACIA S. MORENO
U.S. Department of Justice
Assistant Attorney General
601 D Street, NW
Washington, D.C. 20004


12-19-12
_____
Date

RACHEL JACOBSON
U.S. Department of the Interior
Principal Deputy Assistant Secretary for
Fish, Wildlife and Parks
1849 C Street NW
Washington, D.C. 20240


_____
Date

MARY KAY LYNCH
U.S. Environmental Protection Agency
Legal Counsel to Principal Representative
1200 Pennsylvania Ave., NW
Washington, DC 20460


_____
Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, Washington 98155


9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida Panhandle, Alabama, and Mississippi Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:


_____
Date


_____
IGNACIA S. MORENO
U.S. Department of Justice
Assistant Attorney General
601 D Street, NW
Washington, D.C. 20004


_____
Date


_____
RACHEL JACOBSON
U.S. Department of the Interior
Principal Deputy Assistant Secretary for
Fish, Wildlife and Parks
1849 C Street NW
Washington, D.C. 20240


*December 18, 2012*
_____
Date


_____
MARY KAY LYNCH
U.S. Environmental Protection Agency
Legal Counsel to Principal Representative
1200 Pennsylvania Ave., NW
Washington, DC 20460


_____
Date


_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, Washington 98155

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida Panhandle, Alabama, and Mississippi Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:


_____
Date

_____
IGNACIA S. MORENO
U.S. Department of Justice
Assistant Attorney General
601 D Street, NW
Washington, D.C. 20004


_____
Date

_____
RACHEL JACOBSON
U.S. Department of the Interior
Principal Deputy Assistant Secretary for
Fish, Wildlife and Parks
1849 C Street NW
Washington, D.C. 20240


_____
Date

_____
MARY KAY LYNCH
U.S. Environmental Protection Agency
Legal Counsel to Principal Representative
1200 Pennsylvania Ave., NW
Washington, DC 20460


_____12/19/12_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, Washington 98155

12/18/12
---
Date

HARRIS SHERMAN
U.S. Department of Agriculture
Under Secretary for Natural Resources and
Environment
1400 Independence Ave., S.W.
Washington, DC 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida Panhandle, Alabama, and Mississippi Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

_12 - 19 - 12_
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation and
Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, Alabama 36130


Date

BERRY H. TEW, JR.
Geological Survey of Alabama
Alabama State Geologist and Oil and Gas
Supervisor
State Oil and Gas Board of Alabama
P.O. Box 869999
Tuscaloosa, Alabama 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida Panhandle, Alabama, and Mississippi Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

_____
Date

_____
N. GUNTER GUY, JR.
Alabama Department of Conservation and
Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, Alabama 36130

12/19/12
_____
Date

_____
BERRY H. TEW, JR.
Geological Survey of Alabama
Alabama State Geologist and Oil and Gas
Supervisor
State Oil and Gas Board of Alabama
P.O. Box 869999
Tuscaloosa, Alabama 35486-6999

11

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida Panhandle, Alabama, and Mississippi Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

12 | 19 | 12
_____
Date

_____
LARRY MORGAN
Florida Department of Environmental Protection
Chief Deputy General Counsel
3900 Commonwealth Blvd, MS 35
Tallahassee, Florida 32399-3000

12 | 19 | 12
_____
Date

_____
NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida Panhandle, Alabama, and Mississippi Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

_____12/19/12_____
Date

GARRET GRAVES
Louisiana Coastal Protection and Restoration Authority
Chair
P.O. Box 94004,
Baton Rouge, Louisiana 70804-9004

_____
Date

BRIAN WYYNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

_____12/19/12_____
Date

PEGGY HATCH
Louisiana Department of Environmental Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

_____
Date

ROBERT BARHAM
Louisiana Department of Wildlife and Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida Panhandle, Alabama, and Mississippi Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

_____
Date

GARRET GRAVES
Louisiana Coastal Protection and
Restoration Authority
Chair
P.O. Box 94004,
Baton Rouge, Louisiana 70804-9004

_____
Date   12/19/12

BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

_____
Date

PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

_____
Date

ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida Panhandle, Alabama, and Mississippi Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:


_____
Date

GARRET GRAVES
Louisiana Coastal Protection and
Restoration Authority
Chair
P.O. Box 94004,
Baton Rouge, Louisiana 70804-9004


_____
Date

BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896


_____
Date

PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301


*12-18-2012*
_____
Date

ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

12/18/12
_____
Date

_____
STEPHEN CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida Panhandle, Alabama, and Mississippi Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:

__12/18/12_____
Date

TRUDY D. FISHER
Mississippi Department of Environmental Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

15

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida Panhandle, Alabama, and Mississippi Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


19 December 2012
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

LARRY L. LANE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P.O. Box 12873
Austin, Texas 78711-2873


_____
Date

ZAK COVAR
Texas Commission on Environmental Quality
Executive Director
MC-109
P.O. Box 13087
Austin, Texas 78711-3087

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida Panhandle, Alabama, and Mississippi Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____12/20/12_____
Date

_____
LARRY L. LANE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P.O. Box 12873
Austin, Texas 78711-2873

_____
Date

_____
ZAK COVAR
Texas Commission on Environmental Quality
Executive Director
MC-109
P.O. Box 13087
Austin, Texas 78711-3087

16

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida Panhandle, Alabama, and Mississippi Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
LARRY L. LANE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P.O. Box 12873
Austin, Texas 78711-2873


10/20/12
_____
Date

_____
ZAK COVAR
Texas Commission on Environmental Quality
Executive Director
MC-109
P.O. Box 13087
Austin, Texas 78711-3087

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida Panhandle, Alabama, and Mississippi Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC.:

12/19/2012
Date

2/19/2012
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc.:

| | |
|---|---|
| Name: | Jean Martin, *or successor attorney assigned to manage Deepwater Horizon Natural Resource Damage Claims* |
| Address: | BP Legal Department |
| | 501 Westlake Park, Blvd., 16th |
| | Houston, Texas 77079 |
| Telephone Number: | 281-366-6060 |
| Facsimile Number: | 281-366-5901 |

APPENDIX A

**EARLY RESTORATION PROJECT**

# Appendix A: Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida Panhandle, Alabama, and Mississippi

## 1.0    INTRODUCTION

This document describes the Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida Panhandle, Alabama, and Mississippi (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of a Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

The Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida Panhandle, Alabama, and Mississippi will reduce disturbance to nesting and foraging habitat for beach nesting birds in the project areas. The project involves three components: (1) Placing symbolic fencing (signs and posts connected with rope) around sensitive nesting sites of beach nesting birds to indicate the site as off-limits to people, pets, and other sources of disturbance; (2) Increasing predator control to reduce disturbance and loss of eggs, chicks, and adult beach nesting birds at nesting sites, and (3) Increasing surveillance and monitoring of posted nesting sites to minimize disturbance to nesting habitat in posted areas. The project would be implemented in the following Florida counties: Escambia, Santa Rosa, Okaloosa, Walton, Bay, Gulf, and Franklin. In Alabama, the project would be implemented on Bon Secour NWR in Baldwin and Mobile Counties. In Mississippi, the project would be implemented on GUIS – Mississippi District.  Activities associated with this project will be ongoing for five years.



Figure 1. Project locations for the Avian Breeding Habitat Project.

## 3.0   PROJECT IMPLEMENTATION

### 3.1   Performance Criteria, Monitoring and Maintenance

Project performance will be assessed as defined in section 3.3.2.1.3 of the Deepwater Horizon Oil Spill Phase II Early Restoration Plan and Environmental Review ("Plan").

Project implementation will commence upon filing of the Notice of Project Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with section 3.3.2.1.3 of the Plan have been met.

**3.2    Estimated Budget** –Enhanced Management of Avian Breeding Habitat Injured by Response Activities in the Florida Panhandle, Alabama, and Mississippi

| Cost Category | Cost |
|---|---|
| Project Implementation Base Cost (includes, without limitation, project planning, permitting, engineering design, construction, oversight, inspection, monitoring, and adaptive management, consistent with section 3.3.2.1.3 of the Plan) | $4,420,320 |
| Potential Contingency Amount, consistent with the provisions of Paragraph II.E. | Up to $237,798 |
| *Total Potential Project Costs* | *Up to $4,658,118* |

## APPENDIX B

## EARLY RESTORATION PLAN

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Phase II
Early Restoration Plan and Environmental Review (the "Plan"), available at
www.doi.gov/deepwaterhorizon, which was adopted by the Trustees after public review
and comment.  Public comments received on the Plan are summarized in the Plan, and
Trustees' responses to the comments are included.  All public comments received on the
Plan are included in full in the NRDAR Administrative Record for the Plan, which can be
found at the same web address.

## APPENDIX C

## NRD OFFSETS FOR AVIAN BREEDING HABITAT PROJECT

The NRD Offsets are:

A. 1352 discounted service acre years ("DSAYs") of nesting and foraging habitat for beach nesting birds in Florida, applicable to Response Injuries to nesting and foraging habitat for beach nesting birds in Florida, as determined by the Trustees' total assessment of injury for the Oil Spill;

B. 54 DSAYs of nesting and foraging habitat for beach nesting birds on DOI lands in Alabama, applicable to Response Injuries to nesting and foraging habitat for beach nesting birds on DOI lands in Alabama, as determined by the Trustees' total assessment of injury for the Oil Spill; and

C. 272 DSAYs of nesting and foraging habitat for beach nesting birds on DOI lands in Mississippi, applicable to Response Injuries to nesting and foraging habitat for beach nesting birds on DOI lands in Mississippi, as determined by the Trustees' total assessment of injury for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of Response Injury, the Parties agree as follows:

(1) In the event that the Response Injury determination for nesting and foraging habitat for beach nesting birds in Florida, on DOI lands in Alabama and/or on DOI lands in Mississippi is quantified in the Natural Resource Damages Assessment ("NRDA") using a metric other than DSAYs of nesting and foraging habitat for beach nesting birds in Florida, on DOI lands in Alabama and/or on DOI lands in Mississippi, the Trustees agree to a NRD Offset equal to sixty-six percent (66%) increase in the baseline productivity units for beach nesting birds in the project implementation area for the respective state. The productivity units shall be consistent with productivity units used in the NRDA beach nesting bird response injury quantification. Such Offsets shall be calculated by multiplying the baseline beach nesting bird productivity (as defined through the NRDA) in the project implementation area for the respective state by 1.66.

(2) If the Offsets resulting from the projects exceed Response Injury to nesting and foraging habitat for beach nesting birds on DOI lands in Alabama or Mississippi, then any remaining credits (measured in the metric determined by the Trustees) are applicable to Response Injuries to nesting and foraging habitat for beach nesting birds in Alabama or Mississippi, respectively.

(3) The Trustees agree that the comparison of injury to NRD Offsets must account for the baseline condition of the injured resource.

For the purposes of Paragraph III.A. of this Project Stipulation, the Trustees whose resources are addressed by this Early Restoration Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, Alabama Department of Conservation and Natural Resources, Geological Survey of Alabama, Mississippi Department of Environmental Quality, DOI, EPA, NOAA and USDA.

## APPENDIX D

## <u>GLOSSARY OF TERMS</u>

These definitions are not considered to be a comprehensive list for all Early Restoration Projects under the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill executed April 20, 2011.  Future projects may require other definitions, including but not limited to, other definitions for habitats included in this list.

### <u>Avian Breeding Habitat Project Definitions</u>

**Discounted Service Acre Years** is expressed in present value 2010 service acre years.

**Injury** shall have the meaning set forth in 15 C.F.R. § 990.30.

**Nesting Habitat for Beach Nesting Birds** is defined as the shore area between the mean high water line and the water side toe of existing beach dunes in Florida, Alabama, or Mississippi.

**Response** shall have the meaning set forth in 15 C.F.R. § 990.30.

**Response Injury** shall mean Injury resulting from the Response.

## APPENDIX E

## <u>NOTICE OF PROJECT STIPULATION</u>