UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * | MDL NO. 2179 SECTION J JUDGE BARBIER |
| APPLIES TO: No. 12-311 | * * | MAG. JUDGE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFF CAMERON INTERNATIONAL CORPORATION'S FIRST SET OF INTERROGATORIES TO DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.

PLEASE TAKE NOTICE that pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Cameron International Corporation ("Cameron") hereby propounds the following interrogatories to Defendant Liberty Insurance Underwriters, Inc. ("Liberty"). Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Liberty must provide answers to these interrogatories by January 16, 2013.

### DEFINITIONS

All terms not otherwise defined shall have their ordinary and common meanings. Notwithstanding any definition below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1. "BP" shall mean BP Exploration & Production, Inc. and all of its parents, subsidiaries, affiliates, predecessors and successors in interests, and any of its officers, directors, partners, employees, representatives, and agents.

1



1112654v1

EXHIBIT A

2. "BP Settlement" shall mean the Confidential Settlement Agreement, Mutual Releases and Agreement to Indemnify entered into between Cameron and BP on December 15, 2011, including any drafts thereof and negotiations related thereto.

3. "Cameron" shall mean Cameron International Corporation and all of its parents, subsidiaries, affiliates, predecessors and successors in interests, and any of its officers, directors, partners, employees, representatives, and agents.

4. "Cameron Policies" shall mean any and all insurance policies issued to Cameron by Liberty from January 2006 through the present.

5. "Deepwater Horizon Incident" shall mean the April 20, 2010 explosion of Transocean's Deepwater Horizon Mobile Offshore Drilling Unit and consequent release of oil into the Gulf of Mexico.

6. "Liberty," "You," or "Your" shall mean defendant Liberty Insurance Underwriters, Inc. and all of its parents, subsidiaries, affiliates, predecessors and successors in interest, and any of its officers, directors, partners, employees, and agents.

7. "Liberty Policy" shall mean the excess liability insurance policy purchased from Liberty by Cameron for the policy period from July 1, 2009 to July 1, 2010 (policy number LQ1-B71-198583-046).

8. "Transocean" shall mean Transcoean Ltd. and all of its parents, subsidiaries, affiliates, predecessors and successors in interests, and any of its officers, directors, partners, employees, representatives, and agents.

9. "Answer" shall mean Liberty's Affirmative Defenses and Answer to First Amended Complaint, filed September 6, 2012 in the United States District Court for the Eastern District of Louisiana, MDL No. 2179, Case No. 12-00311.

10. "Person" shall mean an individual as well as any entity including any proprietorship, partnership, corporation, firm, committee, or any other organization.

11. "Communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

12. "Document" shall be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term. The term "document" further includes, but is not limited to, any and all forms of recorded information, whether handwritten, printed, typed, or otherwise visually reproduced, electronically recorded or orally recorded, including all originals, revisions, and markups of drafts, and all files, documents, databases, e-mails, and other data maintained in computer-readable form. The term "document" specifically includes, but is not limited to: working papers, communications, including intracompany communications, minutes and records of meetings, letters, facsimile transmissions, telegrams, records, books, summaries or records of personal conversations or interviews, legal pleadings, affidavits, deposition transcripts, trial transcripts, forecasts, statistical statements, agreements, contracts, telephone messages, slips and logs, diary entries, electronic mail and messages of every kind, text messages, calendars, reports, evaluations, assessments, analyses, correspondence, memoranda, notes, video recordings of every kind, audio recordings of every kind, electronic recordings of every kind, drawings, graphics, graphs, maps, diagrams, charts, photographs, tables, indices, recordings, tapes, microfilms, reports of investigations, opinions or reports of consultants, data processing and computer printouts, tapes, disks, and data and information stored in computers or data processing equipment, together with programs and program documentation necessary to utilize or retrieve

such data or information, all other mechanical or electronic means of storing or recording data or information, and any other data compilation from which information can be obtained and translated through detection devices into reasonably usable form.

13. "Identify" when used with respect to: (a) an individual, shall mean to provide the individual's full name, job title, and employer during the period referred to, and current or last-known address and telephone number and business address and telephone number; (b) any entity other than an individual, shall mean to provide the entity's full name and current or last-known address (designating which); (c) a document, shall mean to provide the date, title, subject matter, author(s), recipient(s), and document control number(s); (d) an oral communication or statement, shall mean to state the date, place, each person making or listening to such oral communication or statement, all other persons present at the time, a summary of the substance, and the identities of each document referring or relating to, in whole or in part, such oral communication or oral statement; (e) a piece of equipment or other tangible object besides a document, shall mean to provide sufficient information to identify that object, including any name used to identify the object, its manufacturer, the make and model of the object, its location, and any serial numbers or other identifying numbers; and (f) an act, shall mean to state the substance of the event or events constituting such act, the date, the duration, the location, the persons attending or participating, and each document referring or relating to such act.

14. "Including" or "includes" means "including but not limited to" or "including without limitation."

15. "Relating to" is to be interpreted in the broadest sense and shall mean and include the words concerning, referring to, describing, evidencing, or constituting.

4

16. The words "and" and "or" shall be construed conjunctively or disjunctively necessary to make the request inclusive rather than exclusive.

## INSTRUCTIONS

1. Pursuant to Federal Rule of Civil Procedure 26(e), these interrogatories are continuing and you must revise or supplement your responses whenever new or additional responsive information becomes known.

2. Each interrogatory solicits all information that is known to you or in your possession, custody or control, and all information available to you from your attorneys, agents, investigators, experts, employees, insurers and representatives.

3. Each interrogatory is to be construed independently and not by or with reference to any other paragraph for purposes of limiting the scope of any particular interrogatory.

4. These interrogatories are to be answered in detail. If you cannot answer any interrogatory in full, you should answer it to the extent possible and explain your inability to answer any further.

5. If you claim that the language of any interrogatory is vague or ambiguous, then you must identify the language you believe is ambiguous and describe the different interpretations that you believe may apply to such language. Regardless of any vagueness or ambiguity you claim, you are to answer the interrogatory to the best of your ability.

6. When asked for a date, an exact date should be given if known. If an exact date is not known, an approximate date should be given and identified as such.

7. If any of the answers to these interrogatories are derived from papers, records or documents in your possession or under your control, please attach a copy thereof to your answers

or, in the alternative, please describe each of the documents with specificity and state when and where they will be available to Cameron's counsel for inspection and copying.

8. If you contend that information responsive to any interrogatory is protected from disclosure pursuant to any privilege or work-product doctrine, then you must comply with the requirements of Pre-Trial Order No. 14 and Federal Rule of Civil Procedure 26(b)(5).

9. The relevant time period for each of the interrogatories below shall be the period from January 1, 2006 through the present.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify all persons involved in Liberty's review or assessment of Cameron's claim under the Liberty Policy relating to the Deepwater Horizon Incident.

ANSWER:

### INTERROGATORY NO. 2:

Identify all persons involved in Liberty's decision not to provide payment to or on behalf of Cameron in connection with its claim under the Liberty Policy relating to the Deepwater Horizon Incident.

ANSWER:

### INTERROGATORY NO. 3:

Identify all reasons why Liberty decided in December 2011 not to provide payment to or on behalf of Cameron in connection with its claim under the Liberty Policy relating to the Deepwater Horizon Incident.

ANSWER:

### INTERROGATORY NO. 4:

Identify all documents that support, refute or otherwise relate to the reasons identified in response to Interrogatory No. 3.

ANSWER:

**INTERROGATORY NO. 5:**

State Your interpretation of the word "applies" in the "Other Insurance" provision of the Liberty Policy and identify all facts that support Your interpretation.

ANSWER:

**INTERROGATORY NO. 6:**

State Your interpretation of the following sentence from Section 4.4 of the BP Settlement: "Notwithstanding any other provision of this Agreement, including paragraphs 4.2 and 4.3, Cameron is not releasing any subrogation or other rights of Liberty Insurance Underwriters Inc." and identify all facts that support Your interpretation.

ANSWER:

**INTERROGATORY NO. 7:**

Identify all meetings, telephone calls, discussions, or other oral or written communications between Liberty (including, but not limited to, its counsel) and BP (including, but not limited to, its counsel) relating to Cameron, the Cameron Policies, or the BP Settlement.

ANSWER:

**INTERROGATORY NO. 8:**

Identify all meetings, telephone calls, discussions, or other oral or written communications between Liberty (including, but not limited to, its counsel) and Transocean (including, but not limited to, its counsel) relating to Cameron, the Cameron Policies, or the BP Settlement.

ANSWER:

**INTERROGATORY NO. 9:**

7

Identify all facts that Liberty considered in underwriting the Cameron Policies and state how they affected the premium that Cameron was charged by Liberty.

ANSWER:

**INTERROGATORY NO. 10:**

Identify the person most knowledgeable at Liberty about the "Other Insurance" provision in Liberty Policy form 0100-XS(03 00).

ANSWER:

**INTERROGATORY NO. 11:**

Identify when Liberty Policy form 0100-XS(03 00) was first drafted.

ANSWER:

**INTERROGATORY NO. 12:**

Identify when Liberty first bound an insurance policy based on Liberty Policy form 0100-XS(03 00).

ANSWER:

**INTERROGATORY NO. 13:**

Identify when You first decided that the Liberty Policy had not attached in connection with Cameron's claim under the Liberty Policy relating to the Deepwater Horizon Incident because of its "Other Insurance" provision.

ANSWER:

**INTERROGATORY NO. 14:**

Identify when You first communicated to any of Cameron's other insurers that the Liberty Policy had not attached in connection with Cameron's claim under the Liberty Policy relating to the Deepwater Horizon Incident because of its "Other Insurance" provision.

1112654v1

ANSWER:

**INTERROGATORY NO. 15:**

Identify when You first communicated to Cameron Your position that the Liberty Policy had not attached in connection with Cameron's claim under the Liberty Policy relating to the Deepwater Horizon Incident because of its "Other Insurance" provision.

ANSWER:

**INTERROGATORY NO. 16:**

Identify all reasons why Liberty believes that Section 4.4 of the BP Settlement did not preserve Liberty's subrogation rights.

ANSWER:

**INTERROGATORY NO. 17:**

Identify when Liberty first notified Transocean that Liberty has or might have a potential claim for subrogation relating to Cameron's claim under the Liberty Policy relating to the Deepwater Horizon Incident.

ANSWER:

**INTERROGATORY NO. 18:**

Identify any other instance, at any time, in which Liberty took the position that "Other Insurance," as defined in the Liberty Policy, existed where the source of such "Other Insurance" denied payment to Liberty's insured.

ANSWER:

**INTERROGATORY NO. 19:**

Identify any instance in which Liberty was found liable for acting in bad faith based on its handling of a claim.

ANSWER:

**INTERROGATORY NO. 20:**

Identify any counsel on whose advice you intend to rely in the defense of any claim in this action and describe any such advice.

ANSWER:

Dated:   December 17, 2012          /s/ Phillip A. Wittmann
                                    Phillip A. Wittmann, 13625
                                         pwittmann@stonepigman.com
                                    Carmelite M. Bertaut, 3054
                                         cbertaut@stonepigman.com
                                    Jared Davidson, 32419
                                         jdavidson@stonepigman.com

                                    STONE PIGMAN WALTHER WITTMANN L.L.C.
                                    546 Carondelet Street
                                    New Orleans, Louisiana  70130
                                    504-581-3200
                                    504-581-3361 (fax)

                                    *Attorneys for Cameron International Corporation*

                                         Of Counsel:

                                         WILLKIE FARR & GALLAGHER LLP
                                         Mitchell J. Auslander
                                         Jeffrey B. Korn
                                         787 Seventh Avenue
                                         New York, NY  10019
                                         (212) 728-8000
                                         mauslander@willkie.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiff Cameron International Corporation's First Set of Interrogatories to Defendant Liberty Insurance Underwriters, Inc. has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 17th day of December 2012.

                              /s/   Phillip A. Wittmann

11

1112654v1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * | MDL NO. 2179 SECTION J |
| | * | JUDGE BARBIER |
| **APPLIES TO: No. 12-311** | * | MAG. JUDGE SHUSHAN |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFF CAMERON INTERNATIONAL CORPORATION'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.

PLEASE TAKE NOTICE that pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Cameron International Corporation ("Cameron") hereby requests that Defendant Liberty Insurance Underwriters, Inc. ("Liberty") produce the following documents in accordance with the Definitions and Instructions below, on or before January 16, 2013.

### DEFINITIONS

All terms not otherwise defined shall have their ordinary and common meanings. Notwithstanding any definition below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1.  "BP" shall mean BP Exploration & Production, Inc. and all of its parents, subsidiaries, affiliates, predecessors and successors in interests, and any of its officers, directors, partners, employees, representatives, and agents.

1112656v1

2.    "BP Settlement" shall mean the Confidential Settlement Agreement, Mutual Releases and Agreement to Indemnify entered into between Cameron and BP on December 15, 2011, including any drafts thereof and negotiations related thereto.

3.    "Cameron" shall mean Cameron International Corporation and all of its parents, subsidiaries, affiliates, predecessors and successors in interests, and any of its officers, directors, partners, employees, representatives, and agents.

4.    "Cameron Policies" shall mean any and all insurance policies issued to Cameron by Liberty from January 2006 through the present.

5.    "Deepwater Horizon Incident" shall mean the April 20, 2010 explosion of Transocean Ltd.'s Deepwater Horizon Mobile Offshore Drilling Unit and consequent release of oil into the Gulf of Mexico.

6.    "Liberty," "You," or "Your" shall mean defendant Liberty Insurance Underwriters, Inc. and all of its parents, subsidiaries, affiliates, predecessors and successors in interest, and any of its officers, directors, partners, employees, representatives, and agents.

7.    "Transocean" shall mean Transcoean Ltd. and all of its parents, subsidiaries, affiliates, predecessors and successors in interests, and any of its officers, directors, partners, employees, representatives, and agents.

8.    "Communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

9.    "Document" shall be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term. The term "document" further includes, but is not limited to, any and all forms of recorded

information, whether handwritten, printed, typed, or otherwise visually reproduced, electronically recorded or orally recorded, including all originals, revisions, and markups of drafts, and all files, documents, databases, e-mails, and other data maintained in computer-readable form. The term "document" specifically includes, but is not limited to: working papers, communications, including intracompany communications, minutes and records of meetings, letters, facsimile transmissions, telegrams, records, books, summaries or records of personal conversations or interviews, legal pleadings, affidavits, deposition transcripts, trial transcripts, forecasts, statistical statements, agreements, contracts, telephone messages, slips and logs, diary entries, electronic mail and messages of every kind, text messages, calendars, reports, evaluations, assessments, analyses, correspondence, memoranda, notes, video recordings of every kind, audio recordings of every kind, electronic recordings of every kind, drawings, graphics, graphs, maps, diagrams, charts, photographs, tables, indices, recordings, tapes, microfilms, reports of investigations, opinions or reports of consultants, data processing and computer printouts, tapes, disks, and data and information stored in computers or data processing equipment, together with programs and program documentation necessary to utilize or retrieve such data or information, all other mechanical or electronic means of storing or recording data or information, and any other data compilation from which information can be obtained and translated through detection devices into reasonably usable form.

10. "Including" or "includes" means "including but not limited to" or "including without limitation."

11. "Relating to" is to be interpreted in the broadest sense and shall mean and include the words concerning, referring to, describing, evidencing, or constituting.

1112656v1

12. The words "and" and "or" shall be construed conjunctively or disjunctively necessary to make the request inclusive rather than exclusive.

13. The use of the plural shall also imply the singular and vice versa.

## INSTRUCTIONS

1. You are requested to produce all responsive documents in your possession, custody, or control, wherever located, including, without limitation, those in the custody of your representatives, affiliates and agents (including but not limited to Clyde & Co.).

2. All documents are to be produced in accordance with MDL No. 2179 Pre-Trial Order Nos. 14 and 16, dated November 3, 2010 and November 8, 2010, respectively.

3. If you are withholding a document under a claim of privilege, including pursuant to the work product doctrine, please provide the information set forth in Fed. R. Civ. P. 26(b)(5), including the type of document, the general subject matter of the document, the date of the document, and other such information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document, and where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other, in a manner that, without revealing the information claimed to be protected, will enable Cameron to assess the applicability of the privilege or protection claimed by You.

4. If there is any objection to any Request, or if not all documents responsive to a Request are produced, state with specificity all grounds for each such objection or failure to produce all responsive documents. All documents called for by those portions of the Request to which there is no objection shall be produced.

5. All documents produced in response to these Requests shall be provided in their entirety, notwithstanding the fact that portions thereof may contain information not requested.

All interim as well as final versions of the document shall be produced and all versions or copies that are not identical to the original, whether due to handwritten notations, revisions, enclosures, attachments, underlining, highlighting, or otherwise shall be produced.

6.  These Requests are continuing. If at any time after production of documents hereto, and prior to the time of trial of this action, you obtain or become aware of additional documents or information that is responsive to any of these requests, the disclosure of which may be required pursuant to Fed. R. Civ. P. 26(e), you shall produce in a timely manner such additional documents or information.

7.  Unless otherwise indicated, the relevant time period for each request below shall be the period between January 1, 2006 through the present.

## DOCUMENT REQUESTS

1.  All documents and communications relating to the Cameron Policies.

2.  All documents and communications relating to Cameron's claim for coverage for liabilities arising out of the Deepwater Horizon Incident.

3.  All documents and communications between or among Liberty or Clyde & Co. on the one hand, and any of Cameron's other insurers or their counsel, on the other hand, relating to the Cameron Policies or Cameron's claim for coverage for liabilities arising out of the Deepwater Horizon Incident

4.  All documents and communications between Liberty and Clyde & Co. in connection with the Cameron Policies, Cameron's claim for coverage for liabilities arising out of the Deepwater Horizon Incident, or this action.

5.  All documents in the files of Clyde & Co. relating to the Cameron Policies or Cameron's claim for coverage for liabilities arising out of the Deepwater Horizon Incident.

6. To the extent that Liberty intends to rely on the advice of counsel for any purpose in this action, all documents and communications between Liberty and Martin, Disiere, Jefferson & Wisdom, L.L.P. in connection with the Cameron Policies or Cameron's claim for coverage for liabilities arising out of the Deepwater Horizon Incident.

7. A copy of all policies, agreements, and/or contracts relating to Liberty's reinsurance coverage in connection with the Cameron Policies and any communications with Liberty's reinsurer(s) relating to the Cameron Policies or Cameron's claim for coverage for liabilities arising out of the Deepwater Horizon Incident.

8. All documents and communications relating to the BP Settlement, including but not limited to communications between Liberty (or its counsel) and BP and/or Transocean (or their respective counsel).

9. All documents relating to the Deepwater Horizon Incident that in any way relate to Cameron, including but not limited to all documents and communications relating to BP's or Transocean's obligations to indemnify Cameron for losses relating to the Deepwater Horizon Incident.

10. All documents created at any time relating to the drafting, negotiation and interpretation of Liberty's "Other Insurance" provision in Liberty policy form 0100-XS(03 00).

11. All documents created at any time relating to any instance in which Liberty took the position that "Other Insurance," as defined in policy form 0100-XS(03 00), existed where the source of such "Other Insurance" denied payment to Liberty's insured.

12. All documents created at any time relating to any claim under Liberty policy form 0100-XS(03 00) that Liberty paid despite the existence of an "indemnification" as specified in its "Other Insurance" provision.

13. Documents sufficient to show all of Liberty's policies and/or procedures that relate to claims adjusting.

14. Documents sufficient to show all of Liberty's policies and/or procedures that relate to any "Other Insurance" provisions contained in insurance policies issued by Liberty.

15. Documents sufficient to show all of Liberty's policies and/or procedures that relate to the handling of coverage disputes.

16. All documents and communications relating to any conflicts of interest of Paul R. Koepff and the law firm of Clyde & Co., including but not limited to those relating to Liberty's decision to move for an order withdrawing Mr. Koepff and Clyde & Co. as counsel for Liberty in this action.

17. All personnel files of individuals involved in Liberty's decision to deny payment to or on behalf of Cameron relating to Cameron's claim for coverage for liabilities arising out of the Deepwater Horizon Incident.

18. A copy of Liberty insurance policy number LQ1B71198783046, referenced in Liberty's Rule 26(a) Disclosures, dated September 14, 2012.

Dated: December 17, 2012    /s/ Phillip A. Wittmann
Phillip A. Wittmann, 13625
    pwittmann@stonepigman.com
Carmelite M. Bertaut, 3054
    cbertaut@stonepigman.com
Jared Davidson, 32419
    jdavidson@stonepigman.com

STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
504-581-3200
504-581-3361 (fax)

*Attorneys for Cameron International Corporation*

Of Counsel:

WILLKIE FARR & GALLAGHER LLP
Mitchell J. Auslander
Jeffrey B. Korn
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
mauslander@willkie.com

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Plaintiff Cameron International Corporation's First Set of Requests for Production of Documents to Defendant Liberty Insurance Underwriters, Inc. has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 17th day of December 2012.

/s/   Phillip A. Wittmann

- 8 -

1112656v1