

**DALLAS** HOUSTON PLANO
Plano office by Appointment Only

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
214.939.4400
800.662.8393
214.760.7332  Fax

**www.GodwinLewis.com**

DONALD E. GODWIN, SHAREHOLDER
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:        214.939.4412
DIRECT FAX:         214.939.4803
Don.Godwin@GodwinLewis.com

January 11, 2013

<u>**VIA E-MAIL**</u>

Magistrate Judge Sally Shushan
U.S. District Court
Eastern District of Louisiana
500 Poydras Street
Room B345
New Orleans, LA  70130

   Re: *In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*; MDL No. 2179, United States District Court, Eastern District of Louisiana

Dear Judge Shushan:

  Halliburton Energy Services, Inc. ("HESI") writes in response to the PSC's January 3, 2013 letter ("PSC Letter") and to BP's January 4, 2013 letter ("BP Letter"), both of which seek the Court's permission to call David Calvert ("Calvert"), an expert witness previously retained, designated, and withdrawn by Weatherford, as a live trial witness in the Phase One trial.  The requests by the PSC and BP amount to nothing less than an attempt to designate an additional expert witness to provide testimony at the Phase One trial.  Because neither the PSC nor BP timely identified Calvert as a retained expert witness, and neither the PSC nor BP has established good cause for calling Calvert as a trial witness (whether live or by deposition), the Court should deny the requests to add Calvert as a Phase One trial witness.

    ***1. History of Calvert's Designation as a Witness***

  As an initial matter, and because the PSC continues to assert that it is not required to show good cause for adding Calvert as a Phase One trial witness,[1] a brief review of the actual history of Calvert's designation as a witness in these proceedings is helpful.

---

[1] BP concedes that, pursuant to Pre-Trial Order 54 ("PTO 54"), it is required to show good cause to add Calvert as a trial witness.  *See* BP Letter at p. 1.

2069127 v1-24010/0002 CORR

January 11, 2013
Page 2

This Court carefully managed the Phase One expert witness process, including setting specific deadlines for the filing of expert reports by different classes of parties. *See* Rec. Doc. 3126.[2] The PSC's expert reports were due by August 26, 2011. *Id*. BP's expert reports were due by October 17, 2011. *Id.* All parties had an opportunity to provide rebuttal expert reports by November 7, 2011. *Id*.

In accordance with the Court's expert witness scheduling order, Weatherford identified Calvert as an expert witness by filing his expert report on October 17, 2011. Calvert's expert report primarily and logically addresses float collar issues, but also addresses some cementing issues (as they relate to float collar issues). Calvert's expert deposition occurred on December 19, 2011. During his deposition, and primarily in response to BP's questioning, Calvert, over HESI's objections, offered cementing opinions that he conceded were not included in his report and which were beyond the scope for which he was retained by Weatherford.[3]

Ultimately, on January 20, 2012, Weatherford identified Calvert as an expert witness to provide live Phase One testimony. *See* Rec. Doc. 5313. On that same date, the PSC listed Calvert (along with all other experts identified by all parties) as a will call witness (by deposition only). *See* Rec. Doc. 5314. On January 27, 2012, the PSC provided the Court and the parties a list of expert witnesses to be called at trial that included Calvert as a Weatherford expert witness. *See* Attachment 1. However, on February 10, 2012, the Court dismissed Weatherford as a party. *See* Rec. Doc. 5653. And on February 24, 2012, the parties filed the final comprehensive list of expert witnesses to be called by all parties during the Phase One trial. Calvert was withdrawn and was not included by any party on this list. *See* Rec. Doc 5829-1.

In short, Weatherford retained, identified, and ultimately withdrew Calvert as an expert witness. Calvert was never identified by any other party as a live will call witness on any witness list, including the final expert witness list.[4] At most, the PSC identified Calvert as a witness it would call by deposition, but, as explained below, that identification relied upon Weatherford calling Calvert as a witness.

### 2. *The Court's Ruling Regarding Withdrawn Expert Witnesses*

On February 2, 2012, and in response to extensive communications with the parties (including the PSC and BP), the Court clarified and modified its prior rulings regarding the use of withdrawn expert opinions, holding: "*If a retaining party withdraws an expert* and that expert is not listed on the retaining party's final witness list, *neither the retaining party nor any other*

---

[2] To minimize the attachments to this letter, HESI has not included copies of documents filed in the Court's docket, but has included only unfiled documents as attachments.

[3] HESI has not attached copies of Calvert's expert report or his deposition but will be happy to provide them for review should the Court so desire.

[4] The PSC appears to have abandoned its previous, incorrect argument that Calvert was listed on BP's will call witness list. *See* PSC Letter.

January 11, 2013
Page 3

*party may call that expert to testify at trial or introduce that expert's opinions, report or deposition or any part thereof into evidence for any purpose* including cross-examination of an expert called by the party who withdraws the expert." *See* Rec. Doc 5560 (emphasis added) (the "Expert Witness Order").  This ruling was specifically incorporated into PTO 54.  *See* Rec. Docs. 8080 and 8173 (as amended).  No exception to this absolute rule was made for one party "picking up" the expert witness of another party, and neither the PSC nor BP has ever sought leave to do so with regard to Calvert.[5]

The PSC argues that the intent of the Court's Expert Witness Order was to protect "the retaining party and the expert." *See* PSC Letter at p. 2.  Notably, the PSC offers no authority for this claim and, in fact, the record reveals otherwise.  Prior to entry of the Expert Witness Order, Transocean raised the specific issue of the use of a settling party's expert witness.  *See* Rec. Doc. 5128 ("Transocean raised the issue of the extent to which an expert's deposition testimony could be used at trial if the party offering the expert settles.").  BP then filed a letter brief with the Court regarding "when a party withdraws an expert, whether 'another party can pick up that expert and use his report and portions of his deposition testimony in their case-in-chief.'"  *See* Rec. Doc. 5221 at p. 1.  BP's conclusion on this point was unequivocal: "In short, a party should not be able to rely on the withdrawn expert opinions of another party to support its case-in-chief."  *Id*.  Thus, the Court had before it this very issue prior to its issuance of the Expert Witness Order and opted to include the absolute language contained therein.  The PSC's argument is contrary to the record.

Only Weatherford retained and listed Calvert as a witness prior to the original Phase One trial setting, and Weatherford ultimately withdrew Calvert as a testifying expert.  The Court's Expert Witness Order makes clear that neither the PSC nor BP has any right to call Calvert either live or by deposition at the Phase One trial.

### 3. The Court's Entry of PTO 54

Despite the express wording of the Expert Witness Order, the Court, with input from the parties, entered PTO 54 which provides as follows: "Should a party decide to <u>add</u> a new witness at trial, then the party shall move for leave of court *and make a showing of good cause* no later than January 4, 2013."  *See* Rec. Doc. 8173 at p. 2 (underlined emphasis in original, italicized emphasis added).  While both the PSC and BP purport to avail themselves of this provision, their efforts must fail because neither has shown any good cause to support the addition of Calvert as a Phase One trial witness beyond the Court's original scheduling order for designation of expert witnesses.

---

[5] Interestingly, the PSC has evidenced knowledge of how to adopt the reports of other parties' expert witnesses by, on September 1, 2011, adopting the reports of the experts identified by the United States.  *See* Attachment 2.

January 11, 2013
Page 4

### 4. *Both the PSC and BP Fail to Establish Good Cause*

PTO 54's good cause requirement is governed by Fed. R. Civ. P. 16(b)(4) which requires that a pre-trial scheduling order "may be modified only for good cause and with the judge's consent." *See also Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009). Within this context, good cause has a specific meaning. In determining whether good cause exists for allowing testimony from an untimely designated expert witness, Fifth Circuit precedent requires examination of four factors: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).

Here, however, neither the PSC nor BP has provided any good cause to allow the addition of Calvert as a trial witness. Specifically, the PSC does nothing more than state that Calvert is highly qualified, that his testimony would assist the Court, that Calvert, Weatherford, and BP agree to Calvert's appearance, and that HESI will not be prejudiced if the Court allows his testimony. *See* PSC Letter at pp. 1-2. In fact, the PSC attempts to shift its good cause burden onto HESI, stating that "[t]here is no reason why the Court should not hear . . ." from Calvert. *See* PSC Letter at p. 1. Of course, the relevant inquiry is not the absence of good cause to bar the testimony (though HESI details herein the reasons for disallowing Calvert's testimony), but instead whether the PSC has affirmatively met its good cause burden for allowing the late addition of Calvert as a testifying expert witness, a burden it fails to carry.

Likewise, BP fails to provide any good cause for granting leave to add Calvert as a testifying expert witness. Like the PSC, BP touts Calvert's experience and expertise, notes that he was disclosed by Weatherford and deposed, notes that Calvert and Weatherford consent to Calvert's appearance, and argues that no party will be prejudiced by his addition as a testifying expert witness. *See* BP Letter at p. 3.

### a. *Both the PSC's and BP's Attempts to Establish Good Cause Fail*

Both the PSC's and BP's stated reasons for allowing Calvert to testify (either live or by deposition) fall far short of establishing good cause for several reasons. First, an expert's alleged qualifications and importance do not support a finding of good cause. *Geiserman*, 893 F.2d at 792 ("[Appellant] has not provided a valid reason that would justify excusing him from the deadlines imposed by the lower court. The claimed importance of expert testimony underscores the need for [Appellant] to have timely designated his expert witness so that Attorney could prepare for trial. The importance of such proposed testimony cannot singularly override the enforcement of local rules and scheduling orders.").

Likewise, the agreement between the PSC, BP, Calvert and Weatherford that Calvert will appear voluntarily does not equate to good cause. In fact, even if *all* parties to the proceeding stipulate to the late addition of an expert witness, such stipulation does not satisfy the good cause inquiry. *Hernandez v. Mario's Auto Sales, Inc.*, 617 F. Supp. 2d 488, 492 (S.D. Tex. 2009)

January 11, 2013
Page 5

("Mere stipulations by the parties do not constitute good cause. Neither the parties nor their counsel have the authority to stipulate or otherwise agree to changes in the Court's orders regarding discovery or any other scheduling matter unless expressly authorized to do so by Rule or by Court order.") (internal citations and quotations omitted). If stipulation by all parties to a proceeding does not constitute good cause, an agreement between some parties that does not include the potentially adversely impacted party, here HESI, certainly cannot meet the good cause standard.

Finally, the mere absence of prejudice (which HESI contests) does not constitute good cause. *Porter v. Milliken & Michaels, Inc.*, No. 99-0199-R(3), 2001 U.S. Dist. LEXIS 4972, *3 (E.D. La. Apr. 12, 2001) (citing *Howell v. Standard Motor Products, Inc*. No. 4:99-CV-987-E, 2001 U.S. Dist. LEXIS 2079, *3-4, 2001 WL 196969, *1 (N.D.Tex. Feb. 26, 2001)) ("The 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order. While relevant to an analysis under Rule 15(a), the absence of prejudice to the nonmoving party does not constitute 'good cause' under Rule 16(b).").

The points raised by the PSC and BP fail, as a matter of law and precedent, to satisfy the good cause standard required by this Court and by Fed. R. Civ. P. 16(b)(4) for modification of the Court's scheduling order to allow the addition of Calvert as a Phase One expert trial witness.

>   b.   **The PSC and BP Also Fail to Satisfy the Recognized Good Cause Standard**

In addition, the PSC and BP have failed to even arguably satisfy the properly considered factors for determining the existence of good cause for late designation of an expert witness.

First, neither the PSC nor BP has explained why they have failed to timely amend their designation of expert witnesses. While both the PSC and BP met the deadline set out in PTO 54, BP's Letter indicates that BP retained Calvert as an expert witness in late February 2012. *See* BP Letter at p. 3. In other words, BP has known for almost one year, and certainly prior to the entry of PTO 54, that it had retained a new expert witness to offer testimony against HESI, yet failed to ever seek leave to designate or "add" that witness until required to do so by the Court. Likewise, the PSC has known of the nature of Calvert's testimony at least since his deposition in December 2011, yet failed until now to notify the Court or the parties of any intent to designate or "add" Calvert as its own expert witness. Good cause requires a showing of diligence. *Porter*, 2001 U.S. Dist. LEXIS 4972 at *3 (citing *Howell*, 2001 U.S. Dist. LEXIS 2079 at *3-4, 2001 WL 196969 at *1) ("The 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order . . . [T]he moving party 'may demonstrate "good cause" only by showing that, despite his diligence, he could not have reasonably met the scheduling deadline.'"). The history of this case, and the Court's careful management of the expert witness process, demonstrate that the PSC's and BP's attempts to lay behind the log are anything but diligent, are not in good faith, and should not be rewarded. Both the PSC and BP fail to meet the first prong of the good cause test.

January 11, 2013
Page 6

Second, neither the PSC nor BP has made any attempt to explain the importance of calling Calvert as a witness. All parties had an opportunity to identify and retain expert witnesses. Both the PSC and BP did so. Neither the PSC nor BP has offered any explanation of what Calvert can testify to that one of their previously disclosed and retained witnesses cannot. The proposition that Calvert is unlikely to possess unique knowledge is a position with which BP has previously agreed. *See* Rec. Doc. 5221 at p. 3, 4 ("In this case, the parties had ample opportunity to procure their own experts and elicit any opinions deemed appropriate and necessary. None of the experts who have been withdrawn, *or who may be withdrawn*, have unique knowledge or expertise that would necessitate a party's reliance on them for its affirmative case.") ("Furthermore, because the opinions that have been withdrawn (or may be withdrawn) are cumulative of other experts, exclusion is appropriate because the opinions would add little probative value and would waste judicial resources.") (emphasis added). Thus, neither the PSC nor BP can satisfy the second prong of the good cause test.

Third, despite the PSC's and BP's claims to the contrary, HESI would be prejudiced by allowing Calvert to testify. There is no question that Calvert's original retention by Weatherford was for the purpose of addressing float collar issues. While his report did address some limited cement issues, Calvert himself conceded that many of the issues BP raised during his deposition were beyond his report and beyond the purpose of his retention. Weatherford, the manufacturer of the float collar involved in the Macondo incident, has settled with BP and has been dismissed from this case. It is clear that neither the PSC nor BP intends to call Calvert as a float collar expert. Instead, they intend to call Calvert as a cementing expert. *See* PSC Letter and BP Letter. HESI has prepared for the upcoming Phase One trial based, originally, on the belief that Calvert's focus was on float collars as evidenced by his expert report. Subsequent to Weatherford's withdrawal of Calvert as an expert witness, and pursuant to this Court's Expert Witness Order, HESI has prepared under the belief that Calvert would not testify at all. Less than two months before the beginning of trial, and following a significant realignment of the parties, the PSC and BP seek to alter that landscape to present an improperly resurrected expert witness directly targeted at HESI. This late expert witness designation, which effectively constitutes the allowance of a new expert witness against HESI, has a direct and adverse impact on HESI, creating substantial prejudice. Thus, the PSC and BP fail to establish the lack of prejudice element to the good cause test.

Finally, given the prejudice to HESI, if Calvert is allowed to testify, one possible solution the courts review is the availability of a continuance of the trial setting. While HESI would be willing to consider the possibility of delaying the Phase One trial to allow Calvert to present a revised expert report under BP's and/or the PSC's sponsorship, and to allow HESI to file a responsive report, it is unlikely that the Court will grant such a delay. BP has previously recognized that such a delay would be likely as a result of allowing one party to offer another party's expert witness in their case-in-chief. *See* Rec. Doc. 5221 at p. 6 ("If a party were allowed to offer affirmatively portions of another party's withdrawn expert's report or deposition testimony in its case-in-chief at trial, the decision to withdraw an expert would spark rounds of

January 11, 2013
Page 7

designations, counter-designations, and objections by the parties). Therefore, this final factor also weighs against a finding of good cause.

### 5. The Court Should Deny the PSC's and BP's Requests

Neither the PSC nor BP has any right to call Calvert as a testifying expert witness (either live or by deposition) under this Court's Expert Witness Order. Further, neither the PSC nor BP has established good cause under PTO 54 to allow the addition of Calvert as a testifying expert witness. For these reasons, the Court should deny the relief requested in the PSC Letter and the BP Letter, and rule that Calvert may not be called by any party as a witness (either live or by deposition) at the Phase One trial.

Sincerely,

*Donald E. Godwin*

Donald E. Godwin