# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois  60654

J. Andrew Langan, P.C.
To Call Writer Directly:
(312) 862-2064
alangan@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

January 14, 2013

**Via E-mail**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the Eastern
District of Louisiana
500 Poydras Street, Room B345
New Orleans, Louisiana 70130

> **RE:   In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, MDL No. 2179**

Dear Judge Shushan:

This letter responds to the January 11, 2013 letters of Halliburton and the United States addressing the addition of David Calvert to BP's Phase 1 Good Faith Will Call Witness List.

On December 7, 2012, the Court established a procedure in Pre-trial Order No. 54 ("PTO 54") for modifying the parties' witness lists.  (Rec. Doc. 8080 at 2 ("Should a party decide to add a new witness at trial, then the party shall move for leave of court and make a showing of good cause no later than **January 4, 2013**.").)  Pursuant to the Court's order, BP timely supplemented its witness list with the addition of David Calvert.

This issue lies squarely within the discretion of the Court.  *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 & n.2. (5th Cir. 2007).  For the following reasons, the Court should allow Mr. Calvert to provide live testimony at trial.  ***First,*** Halliburton claims BP did not timely identify Calvert as an expert witness and has not shown good cause for the addition, and cites cases where a party supplements its witness list in violation of a court order.[1]  That is simply not the situation here.  Both the PSC and BP timely disclosed their intent to call Mr. Calvert at trial pursuant to PTO 54.  Indeed, the PSC identified Mr. Calvert as a trial witness on November 27,

---

[1]   The United States similarly objected as to good cause and seeks to hold Mr. Calvert to his prior expert report.   The PSC has indicated the Mr. Calvert will testify consistent with his report and deposition.   BP's description merely notes that Mr. Calvert may further support his opinions with Halliburton documents and testimony received after his report and deposition.  BP's response to Halliburton's objection likewise responds to the United States's good cause argument.

## KIRKLAND & ELLIS LLP

January 14, 2013
Page 2

2012.  This was two weeks after the fairness hearing on the class action settlements and *before* the Court issued its orders approving the settlements on December 21, 2012 and January 11, 2013.  Halliburton relies upon cases that concern a party's failure to comply with court scheduling orders, not a situation of good cause where a party acted *according to* the Court's order.  Moreover, several of these cases do not analyze good cause in the context of expert testimony.[2]  Contrary to the circumstances in the cases cited by Halliburton, BP timely disclosed Mr. Calvert under the Court's explicit timetable and BP does not seek to *modify* or seek leave of any Court order.  Thus, the more stringent "good cause" standard for modifying a court order under Rule 16 does not apply.

*Second,* there is good cause for the addition as set forth in the PSC's and BP's separate filings.  Halliburton does not dispute that Mr. Calvert is a leading expert in his field who can provide scientific and technical knowledge that will help the trier of fact understand the evidence. Nor does it contest Mr. Calvert's credentials or his ability to opine on the issues to be addressed in the Phase 1 trial.  Indeed, the United States's own cement expert, Mr. Benge, recognizes Mr. Calvert as one of the "top five in the world."  (11/18/2011 Benge Dep. Tr. at 486:7-11.)  And the topics that Mr. Calvert will address are at the core of the contested issues in the Phase 1 trial.  Halliburton admits that Mr. Calvert's report "addresses float collar issues, but also addresses some cementing issues (as they relate to float collar issues)."  (Halliburton Opp. at 2.)  Because there are no other cement experts discussing the interaction between the Halliburton cement and the float collar in the case, Mr. Calvert will offer important scientific and technical knowledge that will help the trier of fact understand the evidence relating to the float collar.  Mr. Calvert's testimony is particularly critical because Halliburton's experts opine that the float collar failed to convert and this alleged failure contributed to the blowout.  (*See, e.g.*, Beck Report at 62-79.)

*Third*, there is no prejudice in allowing Mr. Calvert to testify live.[3]  Halliburton bemoans potential prejudice, but identifies no specific prejudice from allowing the Court to hear from one of the top five cementing experts in the world.  Indeed, as stated by the PSC in its January 3,

---

[2]    *See Marathon*, 591 F.3d at 470-71 (denying motion to file amended complaint on eve of trial); *Porter,* 2001 U.S. Dist. LEXIS 4972, *3 (denying motion to further extend deadline for amending pleadings); *Howell*, 2001 U.S. Dist. LEXIS 2079, *3-4 (denying motion to implead after filing deadline and months after obtaining relevant information).  Where Halliburton cites cases addressing expert discovery, the facts involve parties who ignored expert discovery deadlines with the effect of unduly delaying the case.  *Geiserman*, 893 F.2d at 789-91 (plaintiff previously missed two discovery deadlines related to expert witness discovery); *Hernandez*, 617 F. Supp. 2d at 494 (repeated failures to comply with scheduling orders).

[3]    BP states that Mr. Calvert is being compensated at $350 per hour.  Fed. R. Civ. P. 26(a)(2)(B)(vi).

## KIRKLAND & ELLIS LLP

January 14, 2013
Page 3


2013 letter, Calvert "has carefully studied the events surrounding the Macondo cement failure, and detailed his observations and insights consistent with the Federal Rules of Evidence, the Federal Rules of Civil Procedure, and the controlling Pre-Trial Orders regarding expert disclosures and testimony in this case." Halliburton received Mr. Calvert's expert report on time in accordance with the Phase 1 expert schedule and had an opportunity to fully examine Mr. Calvert at his deposition.

In *In re War Admiral, L.L.C.*, No. 09-3217, 2011 WL 5878052, at *3 (E.D. La. Nov. 23. 2011), this Court denied a motion to strike a late expert report under the "good cause" standard where there were still two months before trial to cure any prejudice. The facts here are even more benign than in *War Admiral* because the Calvert report was not late, the PSC notified Halliburton three months before trial, and Halliburton already has Mr. Calvert's report and examined him at his deposition. Additionally, the Court noted that the party seeking to admit the challenged expert testimony had shown no signs of acting in bad faith. *Id.*

The Fifth Circuit's decision in *Betzel v. State Farm Lloyds*, 480 F.3d 704 (5th Cir. 2007), is also instructive. In *Betzel*, the Fifth Circuit found good cause in allowing the plaintiff to designate expert witnesses late (without invitation from the Court) despite the lack of an explanation where the expert testimony was important to the case, and the alleged prejudice could be cured by a continuance or other lesser sanctions. *Id.* at 708-10. Of note, the specific prejudices recognized by the Fifth Circuit were the defendant's claim that it was deprived of an opportunity to prepare summary judgment motions, file *Daubert* challenges and offer rebuttal expert reports. *Id.* at 708. Here, Halliburton suffered no such prejudices as the deadlines for each of these passed before Weatherford was dismissed from the case.

***Fourth,*** Halliburton's argument that Mr. Calvert is barred by the Court's order relating to withdrawn experts is without merit. (*See* Rec. Doc. 5560.) This order prevents a ***non-retaining*** party from calling the withdrawn expert witness of another party. Halliburton itself recognizes that this situation is different in that the PSC and BP have "picked up" a withdrawn expert of a former party to this case, with the consent of the former party. BP is ***not*** seeking to compel another party's expert to testify at trial. Instead, the PSC and BP are now ***retaining*** parties that are calling their own retained expert to testify at trial, after timely disclosing that expert as an additional witness pursuant to PTO 54.[4]

---

[4] Although the Court's order on withdrawn experts is not applicable, BP supplements Halliburton's selective cites by noting that BP's brief clearly states that requests to call another party's expert at trial "should be assessed by the trial court on a case-by-case basis." Rec. Doc. 5487 at 2-3, 6-7.

KIRKLAND & ELLIS LLP

January 14, 2013
Page 4

*Finally*, no continuance is necessary since Mr. Calvert's disclosure is limited to his existing report and deposition, which occurred in 2011 according to the Court's routine Phase 1 expert schedule, as well as material and testimony produced by Halliburton after Mr. Calvert's deposition — which all experts are entitled to review and address.[5]  At Mr. Calvert's deposition, Halliburton had every incentive to challenge his opinions and develop any arguments it may have wanted to use at trial to examine Mr. Calvert.  Further, Halliburton had full opportunity to prepare motions and designate rebuttal experts under the Court's 2011 Phase 1 expert schedule.  *See Corus U.K., Ltd. v. Forest Lines*, No. Civ.A. 04-1553, 2005 WL 1037999, at *3 (E.D. La. April 28, 2005) (finding continuance was a neutral factor where opposing party had an opportunity to prepare for expert testimony at trial).

In short, Calvert's testimony will help resolve important issues in this case, without disrupting the current trial schedule and without prejudice to Halliburton.  For these reasons, and the reasons set forth in the PSC's and BP's motions to supplement, the Court should allow BP to supplement its witness lists with the addition of Mr. Calvert.

Thank you for the Court's consideration of this issue.

Sincerely,

J. Andrew Langan, P.C.

cc:   Liaison Counsel
      States' Coordinating Counsel
      Mike Underhill, Esq.

---

[5] For example, after Mr. Calvert's report and deposition in late 2011, Halliburton produced additional witnesses for depositions, including Jesse Gagliano and Dr. Ravi in February 2012.  Halliburton also produced additional documents during 2012, and continues even this week to produce additional documents pursuant to the Court's Order relating to Halliburton's Land-Offshore Cementing Work Methods.  (Rec. Doc. 8229, filed 1/14/13)