UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | § § § § § | MDL No. 2179<br><br>SECTION:  J<br><br>JUDGE BARBIER |
| Applies to:  No. 10-2771, and All Cases | § § § § | MAG. JUDGE SHUSHAN |

**HALLIBURTON ENERGY SERVICES, INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS ALTERNATIVE MOTION FOR SUMMARY JUDGMENT REGARDING BP'S ASSIGNMENT OF CLAIMS**

**NOW INTO COURT**, comes Halliburton Energy Services, Inc. ("HESI") and respectfully files this Statement of Undisputed Material Facts in Support of its Alternative Motion for Summary Judgment Regarding BP's Assignment of Claims, pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1 (February 2011), and respectfully shows the Court as follows:

1. On April 15, 2009, BP Exploration & Production, Inc. ("BPXP") contracted with HESI to perform cementing operations and provide certain other related support services in the Gulf of Mexico in the Contract for Gulf of Mexico Strategic Performance Unit Offshore Well Services, BPM-09-00255 (the "Contract").

2. Among other provisions in the Contract, the parties agreed to provide certain indemnities to each other, and that "[a]ll exclusions, releases of liabilities and indemnities given under this Clause . . . shall apply whether or not the claim, liability, damage or expense in question is . . . sought directly or indirectly by way of recovery, indemnification, or contribution by any person or entity against . . . Contractor Group."  Contract at § 19.7(b).

HALLIBURTON ENERGY SERVICES, INC.'S STATEMENT OF UNDISPUTED
MATERIAL FACTS IN SUPPORT OF ITS ALTERNATIVE MOTION FOR SUMMARY                PAGE 1
JUDGMENT REGARDING BP'S ASSIGNMENT OF CLAIMS

2068712 v2-24010/0002 PLEADINGS

    3.    The parties further agreed that:

> For the purposes of this Clause 21, the expression "Consequential Loss" shall mean consequential loss or damages under applicable law and/or any indirect, special, incidental, punitive, or consequential losses or damages, including without limitation loss of production, loss of product, loss of use, loss of business and business interruption and loss of revenue, profit or anticipated profit whether direct or indirect arising from or related to the performance of the CONTRACT and whether or not such losses were foreseeable at the time of entering into the CONTRACT except to the extent such consequential, indirect, and/or special damages, loss of profits, loss of production, or loss of use are part of a Third Party claim for which a party is seeking contribution or indemnification pursuant to this CONTRACT.  For purpose of this Clause, "Third Party" shall mean any party which is not a member of COMPANY GROUP or CONTRACTOR GROUP and "Third Party claim" shall mean any claim raised by a Third Party not claiming, directly or indirectly, by or through any member of COMPANY GROUP or CONTRACTOR GROUP.
>
> Notwithstanding any provisions to the contrary elsewhere in the CONTRACT and except to the extent of any agreed liquidated damages or any termination fees provided for in the CONTRACT, COMPANY shall save, indemnify, release, defend and hold harmless CONTRACTOR GROUP from COMPANY GROUP's own Consequential Loss and CONTRACTOR shall save, indemnify, release, defend and hold harmless COMPANY GROUP and SERVICE COMPANY GROUP from CONTRACTOR GROUP's own Consequential Loss. CONTRACTOR's obligation with respect to SERVICE COMPANY GROUP shall be subject to the provisions of Clause 19.9.

Contract at §21.

    4.    The Contract also states:

> COMPANY is entitled to assign the CONTRACT or any part of it or any benefit or interest in or under it to any CO-VENTURER or AFFILIATE of COMPANY. In addition, COMPANY may make any such assignment to any other third-party but only with the prior agreement of CONTRACTOR which shall not unreasonably be withheld or delayed.

Contract at § 8.1.

    5.    The Contract also provides certain indemnities and releases.  Specifically, Section 19.4 provides:

HALLIBURTON ENERGY SERVICES, INC.'S STATEMENT OF UNDISPUTED
MATERIAL FACTS IN SUPPORT OF ITS ALTERNATIVE MOTION FOR SUMMARY    PAGE 2
JUDGMENT REGARDING BP'S ASSIGNMENT OF CLAIMS

2068712 v2-24010/0002 PLEADINGS

(a)     Notwithstanding the provisions of Clause 19.3(a) and except as provided by Clause 19.1(a), Clause 19.1(b) and Clause 19.4(b) COMPANY shall save, indemnify, release, defend and hold harmless CONTRACTOR GROUP from and against any claim of whatsoever nature arising from pollution and/or contamination including without limitation such pollution or contamination from the reservoir or from the property or equipment of COMPANY GROUP arising from or related to the performance of the CONTRACT.

(b)     Notwithstanding the provisions of Clause 19.3(b) and except as provided by Clause 19.2(a) and Clause 19.2(b) CONTRACTOR shall save, indemnify, release, defend and hold harmless COMPANY GROUP and SERVICE COMPANY GROUP from and against any claim of whatsoever nature arising from pollution occurring on the premises of CONTRACTOR GROUP or originating from the property or equipment of CONTRACTOR GROUP located above the surface of the land or water arising from or relating to the performance of the CONTRACT.

6.     Similarly, Section 19.6 provides:

Subject to Clauses 19.1 and 19.4(b), but notwithstanding anything contained elsewhere in the CONTRACT to the contrary, COMPANY shall save, indemnify, release, defend and hold harmless CONTRACTOR GROUP against all claims, losses, damages, costs (including legal costs) expenses and liabilities resulting from:

(a)     loss or damage to any well or hole (including the cost to re-drill);

(b)     blowout, fire, explosion, cratering, or any uncontrolled well condition (including the costs to control a wild well and the removal of debris);

(c)     damage to any reservoir, aquifer, geological formation or underground strata or the loss of oil or gas therefrom. . . .

7.     Section 27.12(a) of the Contract applies to the rights of third parties, providing that "[s]ubject to Clause 27.12(c), the PARTIES intend that no provision of the CONTRACT shall confer any benefit on, nor be enforceable by any person who is not a party to the CONTRACT."

HALLIBURTON ENERGY SERVICES, INC.'S STATEMENT OF UNDISPUTED
MATERIAL FACTS IN SUPPORT OF ITS ALTERNATIVE MOTION FOR SUMMARY      PAGE 3
JUDGMENT REGARDING BP'S ASSIGNMENT OF CLAIMS

2068712 v2-24010/0002 PLEADINGS

8. Pursuant to the terms of the Contract, HESI performed cementing operations and other support services for BP on the Mobile Offshore Drilling Unit *Deepwater Horizon* in the spring of 2010.

9. HESI has not consented to any assignment of claims under the terms of the Contract or otherwise.

10. On April 20, 2010, a loss of well control during temporary abandonment proceedings at the Macondo Well resulted in a blowout and explosion aboard the *Deepwater Horizon* in the Gulf of Mexico, approximately 50 miles off the coast of Louisiana (hereinafter "the Incident").

11. Following the Incident, Plaintiffs in this matter brought claims against BP,[1] HESI, and other defendants for compensatory and punitive damages arising from the Incident and resulting oil spill into the Gulf of Mexico. *See* First Amended Master Complaint, Cross-Claim, and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] Section III (B1) (Dkt. No. 1128) ("B1 Master Complaint");[2] First Amended Master Complaint in Accordance with PTO No. 11 [CMO No. 1] Section III.B(3) ["B3 Bundle"] ("B3 Master Complaint") (Dkt. No. 1812).[3]

---

[1] "BP" refers to BPXP, BP America Production Co., and BP p.l.c.

[2] The B1 Master Complaint sought damages for private economic losses, and also asserted claims against Transocean Ltd., Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater, Inc., Transocean Holdings, LLC, Triton Asset Leasing GmbH (collectively, "Transocean"), M-I, LLC, Cameron International Corporation, Weatherford U.S. L.P., Anadarko Petroleum Corp., Anadarko E&P Co. LP, MOEX Offshore 2007 LLC, MOEX USA Corp., and Mitsui Oil Exploration Co., Ltd.

[3] The B3 Master Complaint sought damages for personal injury and/or medical monitoring for exposure or other injury occurring after the explosion and fire of April 20, 2010  By way of the B3 Master Complaint, Plaintiffs asserted claims against Transocean Ltd., Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater, Inc., Transocean Holdings, LLC, Triton Asset Leasing GmbH, Anadarko Petroleum Corp., Anadarko E&P Co. LP, MOEX Offshore 2007 LLC, MOEX USA Corp., and Mitsui Oil Exploration Co., Ltd., along with various

HALLIBURTON ENERGY SERVICES, INC.'S STATEMENT OF UNDISPUTED
MATERIAL FACTS IN SUPPORT OF ITS ALTERNATIVE MOTION FOR SUMMARY        PAGE 4
JUDGMENT REGARDING BP'S ASSIGNMENT OF CLAIMS

2068712 v2-24010/0002 PLEADINGS

12. Likewise, the defendants filed cross-claims against each other. *See e.g.*, (Dkt. No. 2082) (Cross Claim filed by BP against HESI).

13. In particular, BP's cross-claims against HESI seek contribution, compensatory damages in the form of lost profits and/or diminution in value of the Macondo prospect, and "appropriate damages" in the event "it is established that BP's injury was caused by [HESI's] gross fault or gross negligence." (Dkt. No. 2082 at 44-45).

14. On March 2, 2012, the Plaintiffs and BP announced they had reached agreement on the terms of a proposed class settlement that would be submitted to the court for approval pursuant to Federal Rule of Civil Procedure 23. (Dkt. No. 5955).

15. On April 18, 2012, the PSC and BP filed, among other documents, two settlement agreements, one concerning medical claims and the other concerning economic and property damages.

16. The first agreement, the Medical Benefits Class Action Settlement Agreement, concerns the claims of persons who alleged injury resulting from exposure to oil and oil-dispersing chemicals. (Dkt. 6273).

17. The second agreement, the Economic and Property Damages Settlement Agreement concerns claims for economic damage or property damage as a result of the *Deepwater Horizon* incident and resulting oil spill. (Dkt. No. 6276).

18. On May 1, 2012, the PSC and BP amended the Medical Benefits Class Action Settlement Agreement (the "Medical Agreement"), and on May 2, 2012, amended the Economic

---

defendants participating in post-incident remediation and response or manufacturing chemicals used in post-incident remediation and response efforts. HESI was tendered to Plaintiffs by Transocean pursuant to Fed. R. Civ. P. 14(c). *See* (Dkt. No. 1320). The B3 Plaintiffs and the B1 Plaintiffs are collectively referred to herein as "Plaintiffs."

**HALLIBURTON ENERGY SERVICES, INC.'S STATEMENT OF UNDISPUTED**
**MATERIAL FACTS IN SUPPORT OF ITS ALTERNATIVE MOTION FOR SUMMARY**    **PAGE 5**
**JUDGMENT REGARDING BP'S ASSIGNMENT OF CLAIMS**

2068712 v2-24010/0002 PLEADINGS

and Property Damages Settlement Agreement (the "Economic Agreement"). Both amended Settlement Agreements were filed on May 3, 2012. (Dkt. Nos. 6427, 6430).

19. The Economic Agreement purports to assign BP's claims against HESI to the settlement class contemplated by the Economic Agreement (the "Economic Class"), "as a juridical entity and not to Economic Class Members individually:"

> 1.1.3 Assignment. To the fullest extent allowed by law and applicable contracts, and subject to Sections 1.1.2, 1.1.4, and 1.1.5, upon Preliminary Approval, and subject to occurrence of the Effective Date[4] as a condition subsequent, BP assigns to the Economic Class, only as a juridical entity and not to Economic Class Members individually, the following claims and causes of action against Transocean and Halliburton[5] (but no other party) arising out of, due to, resulting from, or relating in any way to, directly or indirectly, to the Deepwater Horizon Incident, on the terms and conditions set forth herein:
>
> 1.1.3.1 All damages related to the repair, replacement, and/or re-drilling of the MC-252 Well;
>
> 1.1.3.2 All economic damages for the loss of the MC-252 Well, including lost profits, lost hydrocarbons, and diminution in value of the leasehold;
>
> 1.1.3.3 All costs that BP incurred to control the MC-252 Well and/or to respond to, contain, and/or clean up the DWH spill;
>
> 1.1.3.4 All rights to indemnity, contribution, or subrogation for claims paid by BP and/or the GCCF on or before the entry of the Preliminary Approval Order, subject, however, to (a) BP's retention of its right to pursue the payments identified in Section 1.1.4.2, which are expressly retained, and (b) BP's retention of its right to

---

[4] "Effective Date" is defined in the Economic Agreement as "(1) the day following the expiration of the deadline for appealing the entry by the Court of the Final Order and Judgment, if no such appeal is filed, or (2) if an appeal of the Final Order and Judgment is filed, the date upon which all appellate courts with jurisdiction (including the United States Supreme Court by petition for certiorari) affirm such Final Order and Judgment or deny any such appeal or petition for certiorari, such that no future appeal is possible, or (3) such date as the Parties otherwise agree in writing." (Dkt. No. 6430 at §38.62).

[5] "Transocean" is defined in the Economic Agreement as "Transocean Ltd., Transocean, Inc., Transocean Offshore Deepwater Drilling, Inc., Transocean Holdings, LLC, and Triton Asset Leasing GmbH and all of their Affiliates, other than any Natural Person or Entity that is also an Affiliate of any of the Released Parties." (Dkt. No. 6430 at §38.152). "Halliburton" is defined as "Halliburton Energy Services, Inc. and all and any of its Affiliates, other than any Natural Person or Entity that is also an Affiliate of any of the Released Parties." (Dkt. No. 6430 at §38.81).

HALLIBURTON ENERGY SERVICES, INC.'S STATEMENT OF UNDISPUTED
MATERIAL FACTS IN SUPPORT OF ITS ALTERNATIVE MOTION FOR SUMMARY         PAGE 6
JUDGMENT REGARDING BP'S ASSIGNMENT OF CLAIMS

2068712 v2-24010/0002 PLEADINGS

>
> recover from Transocean and Halliburton for the payments identified in Section 1.1.4.2.
>
> 1.1.3.5 All claims or causes of action to pursue reimbursement of Settlement Payment(s) under theories of indemnification, contribution, subrogation, or any other theory of recovery;
>
> 1.1.3.6 All punitive, exemplary, multiple, or non-compensatory damages;
>
> 1.1.3.7 All claims and causes of action to recover the damages, losses, costs, fees and amounts set forth in Sections 1.1.3.1-1.1.3.6, including BP's claims for breach of contract, unseaworthiness, negligence, gross negligence, willful misconduct, fraud, fraudulent concealment, and intentional torts and including BP's claims in the *BP Parties' Counter-Complaint, Cross-Complaint and Third Party Complaint Against Transocean and Claim in Limitation*, Docket No. 2074 in Case 2:10-md-02179-CJB-SS, and *BP's Cross-Complaint and Third-Party Complaint Against Halliburton*, Docket No. 2082 in Case 2:10-md-02179-CJB-SS.

(Dkt. No. 6430 at Exh. 21).

20. However, the Economic Agreement also provides that:

> [i]n the event that the Economic Class or any of the Plaintiffs and/or Economic Class Members is or becomes the beneficiary of any judgment, decision, award, or settlement arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident, including from Assigned Claims and/or Expressly Reserved Claims, the Economic Class and/or such Plaintiffs and/or Economic Class Members shall not accept, execute on, attempt to collect, or otherwise seek recovery of any Damages, to the extent that any Other Party is seeking or may seek to recover such Damages from any Released Party, whether through indemnity, contribution, subrogation, assignment, or any other theory of recovery, by contract, pursuant to applicable law or regulation, or otherwise, directly or indirectly. The Economic Class, Plaintiffs, and/or Economic Class Members may, however, accept, execute on, attempt to collect, or otherwise seek recovery of Damages if and when a court or tribunal of competent jurisdiction has finally determined that Other Parties cannot recover such Damages, whether through indemnity, contribution, subrogation, assignment or any other theory of recovery, by contract, pursuant to applicable law or regulation, or otherwise, directly or indirectly, from any Released Party. For purposes of this Section 1.1.2.4, "finally determined" shall mean the conclusion of any applicable appeals or other rights to seek review by certiorari or otherwise, or the lapse of any and all such rights, or the lapse of any and all applicable limitations or repose periods.

HALLIBURTON ENERGY SERVICES, INC.'S STATEMENT OF UNDISPUTED
MATERIAL FACTS IN SUPPORT OF ITS ALTERNATIVE MOTION FOR SUMMARY            PAGE 7
JUDGMENT REGARDING BP'S ASSIGNMENT OF CLAIMS

2068712 v2-24010/0002 PLEADINGS

(Dkt. No. 6430 at Exh. 21, §1.1.2.4).

21.     BP further agreed that should "part or all of the assignment be held invalid," it would not "seek to pursue such Assigned Claims that were the subject of the invalidated assignment." (Dkt. No. 6430 at Exh. 21, §1.1.4.6).

22.     The Settlement Agreements both state that the payments provided for therein constitute full satisfaction of all compensatory damages against HESI and Transocean. (Dkt. No. 6427 at XVII.A, B.2 & 3) (Dkt. No. 6430 at Exh. 21, § 1.1.1).

23.     HESI and Transocean are specifically excluded from the releases given as part of both Settlement Agreements. (Dkt. No. 6427 at II.MMMM, II.ZZZ) (Dkt. No. 6430 at §10.3).

24.     Both Settlement Agreements provide that the Plaintiffs retain their claims for punitive damages against HESI and Transocean. (Dkt. No. 6427 at §§ XVI.G, II.ZZZ, II.MMMM, XVII.B.2 & 3) (Dkt. No. 6430 at §§ 10.2, 10.3).

25.     The Economic Agreement provides for the payment of Risk Transfer Premiums, defined as:

> the amount paid to a Claimant for any and all alleged damage, including potential future injuries, damages or losses not currently known, which may later manifest themselves or develop, arising out of, due to, resulting from, or relating in any way to the Deepwater Horizon Incident, and any other type or category of damages claimed, including claims for punitive damages.

(Dkt. No. 6430 at §38.126).

26.     This Court preliminarily approved the Settlement Agreements on May 2, 2012. (Dkt. Nos. 6418, 6419).

27.     The Court held a Fairness Hearing on November 8, 2012, and entered its Order and Reasons [Granting Final Approval of the Economic and Property Damages Settlement

HALLIBURTON ENERGY SERVICES, INC.'S STATEMENT OF UNDISPUTED
MATERIAL FACTS IN SUPPORT OF ITS ALTERNATIVE MOTION FOR SUMMARY        PAGE 8
JUDGMENT REGARDING BP'S ASSIGNMENT OF CLAIMS

2068712 v2-24010/0002 PLEADINGS

Agreement] and certifying the Economic Class and Property Class on December 21, 2012. (Dkt. Nos. 8138, 8139). The Court further entered its Order and Reasons [Granting Final Approval of the Medical Benefits Class Action Settlement] on January 11, 2013. (Dkt. Nos. 8217, 8218).

Dated: January 17, 2013.

HALLIBURTON ENERGY SERVICES, INC.'S STATEMENT OF UNDISPUTED
MATERIAL FACTS IN SUPPORT OF ITS ALTERNATIVE MOTION FOR SUMMARY        PAGE 9
JUDGMENT REGARDING BP'S ASSIGNMENT OF CLAIMS

2068712 v2-24010/0002 PLEADINGS

Respectfully Submitted,

**GODWIN LEWIS PC**

**By:** /s/ *Donald E. Godwin*
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
Don.Godwin@GodwinLewis.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
Bruce.Bowman@GodwinLewis.com
Jenny L. Martinez
State Bar No. 24013109
Jenny.Martinez@GodwinLewis.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
Floyd.Hartley@GodwinLewis.com
Gavin E. Hill
State Bar No. 00796756
Gavin.Hill@GodwinLewis.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332
and
R. Alan York
State Bar No. 22167500
Alan.York@GodwinLewis.com
Jerry C. von Sternberg
State Bar No. 20618150
Jerry.VonSternberg@GodwinLewis.com
Misty Hataway-Coné
State Bar No. 24032277
Misty.Cone@GodwinLewis.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

HALLIBURTON ENERGY SERVICES, INC.'S STATEMENT OF UNDISPUTED
MATERIAL FACTS IN SUPPORT OF ITS ALTERNATIVE MOTION FOR SUMMARY       PAGE 10
JUDGMENT REGARDING BP'S ASSIGNMENT OF CLAIMS

2068712 v2-24010/0002 PLEADINGS

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Halliburton Energy Services, Inc.'s Statement of Undisputed Material Facts in Support of its Alternative Motion for Summary Judgment Regarding BP's Assignment of Claims has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this 17th day of January, 2013.

/s/ Donald E. Godwin
Donald E. Godwin

**HALLIBURTON ENERGY SERVICES, INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS ALTERNATIVE MOTION FOR SUMMARY JUDGMENT REGARDING BP'S ASSIGNMENT OF CLAIMS**   PAGE 11

2068712 v2-24010/0002 PLEADINGS