

**DALLAS**   HOUSTON   PLANO
Plano office by Appointment Only

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
214.939.4400
800.662.8393
214.760.7332  Fax

**www.GodwinLewis.com**

CAROLYN R. RAINES, SHAREHOLDER
DIRECT DIAL:     214.939.4452
DIRECT FAX:     214.527.3137
Carolyn.Raines@GodwinLewis.com

January 23, 2013

**BY EMAIL**
The Honorable Sally Shushan
United States Magistrate Judge
500 Poydras Street, Room B345
New Orleans, LA 70130

  Re: *In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, MDL No. 2179

Dear Judge Shushan:

  This letter responds to the PSC's January 22, 2013 letter regarding Roland Chemali's ("Chemali") testimony and custodial file.  On January 21, 2013, Halliburton Energy Services, Inc. ("HESI") notified the parties that it had discovered that a small portion of Chemali's testimony was not accurate.  (*See* C. Raines January 21, 2013 Letter)  Specifically, Chemali had received certain emails in July 2010, attaching portions of Schlumberger's Rt Scanner and other log files.  During his deposition, Chemali stated that he had never received such logs until two days before his deposition.  HESI further notified the parties that it and its vendor were analyzing Chemali's custodial file to determine if any responsive, non-privileged documents were inadvertently not produced, and that it would make any necessary supplemental production.  The PSC immediately demanded:  (1) the emails—all of which have been produced or partially produced, and which HESI already said it would supplement; (2) a forensic analysis of Chemali's custodial file by an outside third party—an exceptional remedy that is clearly not warranted here; and (3) another deposition of Chemali to discuss these emails—two of which were used as deposition exhibits in Chemali's November 3, 2011 deposition.  Throughout this litigation, HESI has promptly notified parties when technology and processing errors resulted in responsive documents not being produced or included in a particular custodial file, and has promptly corrected its productions.  The corrections to Chemali's testimony and custodial file are no different, and the Court should deny the extraordinary relief demanded by the PSC.

1. **Chemali's Testimony and Discovery of Certain July 2010 Emails**

  Chemali, a Chief Petrophysicist at HESI's Sperry Division, did not perform any work related to the Macondo well prior to the blowout.  Chemali was not—as the PSC contends—"tasked by HESI with analyzing the blowout."  Rather, in the months immediately after the Macondo incident, a colleague at HESI asked Chemali to analyze the nature and location of hydrocarbon zones in the Macondo Well.  Pursuant to this request, Chemali asked his colleague to provide him with certain Macondo wireline logs.  His colleague did not provide the logs to Chemali at that time and he ended his early effort to evaluate the Macondo hydrocarbon zones.  In July 2010, other HESI personnel involved in the relief well/intercept efforts requested Chemali's assistance in understanding the

Honorable Sally Shushan
January 23, 2013
Page 2

"electrical anisotropy" around the Macondo well. That request came in email form and attached Rt-Scanner and other logs. Chemali was unavailable to provide assistance at that time, and when he became available, his assistance was no longer required. Thereafter, those emails and attached logs remained on his computer from that time until present. Chemali never analyzed the logs received in July 2010 for purposes of identifying the hydrocarbon zones in the Macondo Well.

Recently, while working on a project for another customer, Chemali discovered the July 2010 emails and attached logs described above. Chemali immediately contacted HESI's counsel to convey that his deposition testimony—that he never received such logs until two days before his deposition—was inaccurate. HESI and its production vendor immediately began analyzing Chemali's custodial file to determine if any responsive, nonprivileged documents had not been produced. As part of that analysis, HESI's vendor discovered that a technology failure resulted in a certain portion of Chemali's custodial file being processed incorrectly. HESI and its vendor will reprocess the portion of Chemali's custodial file that was not processed correctly and supplement its production.

2. **The July 2010 Emails Described in HESI's January 21, 2013 Letter Have All Been Fully or Partially Produced**

The July 2010 emails discussed in HESI's January 21, 2013 letter refer to eight emails, all part of the same email chain, two of which have attachments. With respect to these eight emails: (1) four emails were correctly produced in Chemali's custodial file (*See* HAL_0748200, HAL_0748233 (Depo Exh. 5832), HAL_0748257, and HAL_0748259); (2) one email was partially produced in Chemali's custodial file (*See* HAL_1145970); (3) a duplicate of one email was produced from the custodial files of David Hinz and Ian Mitchell (*See* HAL_0635400 and HAL_0691103); (4) a duplicate of one email was partially produced from the custodial file of Jim Dudley (*See* HAL_1144169); and (5) a duplicate of one email was produced with four of the six attachments from the custodial file of David Hinz (*See* HAL_0635317 (Depo. Exh. 5933)). Duplicates of the remaining two attachments were produced as standalone native files. (See HAL_TR_REL_60021.01605 and HAL_TR_REL_60021.01606). HESI will supplement its production and produce complete copies of the three partially produced emails as soon as possible. In addition, as discussed above, the portion of Chemali's custodial file that was not processed correctly will be reprocessed, and HESI will supplement its production with any additional responsive, non-privileged documents that have not been previously produced.

3. **HESI's Continued Good Faith Efforts to Correct Deposition Testimony and Supplement Its Production**

As the PSC is well aware, throughout this litigation, HESI has made, and continues to make, every effort to rectify any deficiencies with its production as quickly as possible. For example, in August 2012, HESI produced three overlays that updated the custodial metadata information for approximately 5,200 documents. These documents represented a small portion of HESI's overall production of more than 145,000 documents at the time. Several other parties, including BP and the United States, have also produced supplemental or corrective productions and overlays throughout this litigation. On August 31, 2012, BP produced an overlay updating the custodial metadata information for all 147 volumes BP had produced up until that time. BP's overlay updated the metadata for more than 1 million documents. The United States has produced more than 20 overlays throughout the litigation. Four of these overlays took place in August 2012, and updated the custodial metadata information for more than two million U.S. Coast Guard documents.

Honorable Sally Shushan
January 23, 2013
Page 3

Similarly here, promptly after discovering the discrepancy in Chemali's testimony and the processing error in his custodial file, HESI informed the parties of these issues. HESI did not simply serve a cryptic amended errata sheet for Chemali—it described when and why Chemali initially received the emails, how they were later discovered, and why the correction to the testimony was necessary. Likewise, HESI informed the parties that it and HESI's vendor are analyzing Chemali's custodial file to determine if any responsive, non-privileged documents were inadvertently not produced, and that it will make any necessary supplemental production. Contrary to the PSC's characterization, HESI is not refusing to produce responsive information, rather—as it has done with all production issues in this case—it is analyzing the technology error so that it can correctly process certain portions of Chemali's custodial file that were processed incorrectly.

### 4. The PSC's Request To Re-depose Chemali Should Be Denied

Chemali was deposed on November 3, 2011. Counsel for the PSC questioned Chemali for approximately 2.5 hours. All eight of the July 2010 emails were fully or partially produced before Chemali's deposition. Chemali was questioned about two of the eight July 2010 emails (one without attachments) that Chemali recently located on his computer. BP's counsel, Walter Lancaster, specifically questioned Chemali regarding exhibit 5932, an email dated July 22, 2010, from Chemali to other HESI employees regarding Schlumberger's Rt-Scanner and other logs. (*See* Exhibit A[1]) Chemali testified that he sent the email found in exhibit 5932 "...*to help people who were working on the relief well to understand the -- some of the resistivity readings*..." (Exhibit B, Chemali Dep. 139:16-19). Lancaster also specifically asked Chemali whether he used any of the information found in exhibit 5932 for his analysis of hydrocarbon-bearing zones. Chemali answered, "*Again, no, because it was resistivity only*." (*Id.* at 140:4-17).

One of the eight emails, Exhibit 5933, is dated July 26, 2010 from Greg Navarette to Chemali and lists six attachments. (*See* Exhibit C[2]) The listed attachments (not attached to the deposition exhibit) are the Wireline logs Chemali mistakenly testified he had not received until two days before his deposition. Lancaster reminded Chemali that he had a longstanding request for wireline data and asked if Chemali felt this was the occasion to ask Navarette for that information. Chemali could not recall if he requested the information again from Navarette. (Exhibit B, Chemali Dep. 141:21-142:3). Chemali did not realize that the information he had requested in the months immediately after the Macondo incident to analyze the nature and location of hydrocarbon zones in the Macondo Well, was attached to the July 26, 2010 email from Navarette.

The PSC has had more than sufficient time to depose Chemali about the July 2010 emails, and a supplemental deposition is simply not necessary.

---

[1] Exhibit A is designated highly confidential and must be filed under seal.
[2] Exhibit C is designated confidential and must be filed under seal.

Honorable Sally Shushan
January 23, 2013
Page 4

### 5. The PSC'S Request for a Forensic Expert to Scrutinize Chemali's Custodial File Should be Denied

HESI has produced over 146,000 documents and over 1,400,000 pages, from over 174 custodians. Given the volume of documents produced in this case, HESI has had, as have most other parties, technology errors that require corrective overlays or supplemental productions. The remedy the PSC seeks, "scrutiny by a forensic expert" of its files, is generally regarded as an exceptional remedy that requires a strong showing that a party has defaulted in their discovery duties, such as deliberate withholding of information.[3] Here, HESI has not committed any discovery abuses, and continues to correct any deficiencies with its production as quickly as possible. Courts guard against this intrusive and burdensome type of request except in cases of clear discovery abuses.[4] This is clearly not such a case, and HESI's actions certainly do not warrant the "extreme, expensive, or extraordinary"[5] remedy the PSC seeks—a third party forensic analysis of Chemali's custodial file. Indeed, HESI brought the issues regarding Chemali's testimony and custodial file to the parties' attention. The issue with his custodial file was caused by a technology error which can certainly be expected in a case of this size. Once discovered, HESI in good faith notified the parties, corrected the testimony, and will make a supplemental production for Chemali's custodial file.

### Conclusion

HESI's correction of Chemali's testimony and supplement to his custodial file, all done in good faith, simply do not warrant the extraordinary relief demanded by the PSC—a third party forensic analysis of Chemali's custodial file and another deposition of Chemali. For the reasons discussed above, the Court should deny the relief requested by the PSC.

Respectfully submitted,

Carolyn R. Raines

Enclosure

---

[3] *See In Re Ford Motor Co.,* 345 F.3d 1315, 1317 (11th Cir. 2003) (finding abuse of discretion in granting access to electronically stored information where the requesting party could not show a basis for finding that the requested search could recover deleted or hidden materials); *see also Diepenhorst v. City of Battle Creek*, Case No. 1:05-CV-734, 2006 U.S. Dist. LEXIS 28551, at *10 (W.D. Mich. June 30, 2006) ("In the absence of a strong showing that the responding party has somehow defaulted in this obligation, the court should not resort to extreme, expensive, or extraordinary means to guarantee compliance."); *McCurdy Group v. Am. Biomedical Group, Inc.,* 9 Fed. Appx. 822, 831 (10th Cir. 2001) (requesting party's skepticism that a responding party has not produced all responsive information is not sufficient to access to a responding party's devices or files – a "drastic discovery measure."); *J.M. Smith Corp. v. Ciolino Pharm. Wholesale Distribs.,* Case No. 10-1483, 2012 U.S. Dist. LEXIS 184412, at *14 (E.D. La., Nov. 20, 2012) (noting that in addition to showing the examination would not impose undue burden and expense, the requesting party must show the information has not been produced.)

[4] *See Deipenhorst*, 2006 U.S. Dist. LEXIS 28551, at *9- *10.

[5] *Id.* at *10.

2076792 v2-24010/0002 CORR