UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>This Document Relates to: *All Cases*<br><br>(Including No. 10-2771) | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO TRANSOCEAN'S MOTION IN LIMINE TO PRECLUDE THE INTRODUCTION OF EVIDENCE REGARDING INSTANCES OF PRIOR ALLEGED IMPROPER CONDUCT (ALLEGEDLY) <u>UNRELATED TO THE MACONDO WELL INCIDENT</u>**

Plaintiffs respectfully submit the following memorandum in opposition to Transocean's Motion in Limine to Preclude the Introduction of Evidence Regarding Instances of Prior Alleged Improper Conduct (Allegedly) Unrelated to the Macondo Well Incident [Rec. Doc. 8287]:

**MAY IT PLEASE THE COURT:**

Transocean opens its motion by asserting that "[n]early a year ago, this Court made clear that evidence of prior conduct has no place in the Phase I trial." [Rec. Doc. 8287-1 at 1.] But this is not what the Court's Order and Reasons of February 9, 2012 concluded. Rather, the Court explained that "[e]vidence of similar accidents occurring under substantially similar circumstances and involving substantially similar components may be probative." [Rec. Doc. 5634 at 3 (quoting *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1082 (5th Cir. 1986).]

The Court went on to explain that specific evidence proffered by the PSC relating to prior BP process safety failures was not substantially similar to the *Deepwater Horizon* incident and, thus, did not fall within the parameters required by Fifth Circuit jurisprudence. Specifically, the

parties' briefing centered upon three prior process safety failures: (1) the 2005 Texas City refinery explosion, (2) the 2000 Grangemouth petrochemical facility incidents, and (3) the 2006 pipeline rupture in Prudhoe Bay, Alaska.  According to the Court:

> The Texas City disaster involved a ground-level explosion that killed 15 people and injured 80 others.  The incident resulted in BP pleading guilty to felony violations of the Clean Air Act and a $50 million fine. . . .  The Grangemouth facility was the site of three incidents in 2000, none of which involved serious injuries: a power distribution failure, a steam main rupture, and a fire created by an ignited vapor cloud.  The Prudhoe Bay oil spill in northern Alaska released over 200,000 gallons of oil.  BP again pled guilty, this time to criminal CWA [Clean Water Act] violations, and was fined $20 million.

[Rec. Doc. 5634 at 2-3.]  After considering these three incidents, and the similarity of the events to the Macondo spill, the Court concluded that the prior incidents at issue were not substantially similar to the *Deepwater Horizon* explosion because (1) they were remote in time, (2) the prior incidents were land-based, and (3) "the circumstances of oil refinery disasters and a MODU exploratory drilling disaster are vastly different." [*Id.* at 5.]

Such reasoning does not apply to much of the evidence proffered by the PSC and identified by Transocean's motion in limine; to the contrary, the exhibits at issue primarily concern systemic process safety failure aboard Transocean's deepwater drilling rigs.[1]  Some of these safety failures occurred just months before the *Deepwater Horizon* explosion.  The evidence is not only probative, but it is substantially similar and should not be excluded under the reasoning set forth by the Court's Order and Reasons of February 9, 2012.[2]  Plaintiffs

---

[1] The PSC-proffered exhibits at issue are identified in footnote 2 of Transocean's motion [Rec. Doc. 8287-1], and consist of the following: TREX-26003, TREX-26009.a, TREX-26009.b, TREX-26009.c, TREX-26009.d, TREX-26012, TREX-26014, TREX-26017, TREX-26018, TREX-26023, TREX-26025, TREX-26025.b, TREX-26025.c, and TREX-26029. Transocean also identifies other exhibits proffered by the other defendants.

[2] This is, perhaps, why Transocean did not object to the admissibility of the exhibits prior to the previously-scheduled trial date.

respectfully request that the Court apply this reasoning to the exhibits at hand, and deny Transocean's motion.

> **A.  The Evidence Identified In Transocean's Motion In Limine Concerns Process Safety Failures That Are Substantially Similar In Time and Substance To The *Deepwater Horizon* Explosion.**

One of Transocean's central failures aboard the *Deepwater Horizon*—indeed, a failure for which it has pled guilty and admitted to its criminal negligence—was the corporation's violation of its duty to exercise well control in accordance with the industry's standard of care. *See United States v. Transocean Deepwater Inc.*, Cr. No. 13-001 (E.D. La.) [Rec. Doc. 3-2 ¶ 14 (admitting that Transocean "violated its duty to exercise well control in accordance with the standard of care applicable in the deepwater oil exploration industry")]. Transocean has admitted that its negligence was a proximate cause of the blowout on April 20, 2010. [*Id.* ¶ 15.] Although Transocean's motion makes no mention of its criminal plea, the facts admitted therein are crucial to the instant disposition, for much of the evidence Transocean now wishes to exclude centers upon substantially similar event scenarios: to wit, Transocean's failure to comport its conduct to industry standards and its subsequent loss of well control on deepwater drilling rigs. Furthermore, Transocean's safety lapses largely occurred in close proximity to the time its crew was operating the *Deepwater Horizon*.

TREX-26025, TREX-26025.b, and TREX-26025.c concern a summer 2009 well control event aboard the *Deepwater Expedition*, a deepwater drilling rig operating in the Bay of Bengal. According to the Executive Summary of Transocean's draft report on the event, "[s]ignificant well control issues were experienced throughout both the drilling of this section and during attempts to POOH. . . . Multiple actions taken during the course of this section were contrary to Transocean well control policy and could have resulted in a serious escalation of events."

3

[TREX-26025.c at TRN-MDL-04742166.] Several of the improper actions identified by the report center upon Transocean's failure to appropriately deal with high gas pressures experienced during the deepwater drill. [*See, e.g.*, *id.* (identifying, *inter alia*, failure to appropriately respond to "high gas levels," failing to shut in the well when influxes detected, and knowingly circulating an influx above the BOP resulting in gas breaking out at surface).] As Transocean's guilty plea makes clear, its criminal negligence aboard the *Deepwater Horizon* stems from the failure to appropriately react to abnormal gas pressures during the negative pressure test. *See United States v. Transocean Deepwater Inc.*, Cr. No. 13-001 (E.D. La.) [Rec. Doc. 3-2 ¶¶ 10-13]. Thus, the events aboard the *Deepwater Expedition*, which occurred mere months before the *Deepwater Horizon* explosion, involve conduct similar to that for which Transocean has admitted criminal liability—failure to maintain well control aboard a deepwater drilling operation. The evidence is therefore probative, substantially similar, and should be admitted.

TREX-26003 documents another failure to maintain well control aboard a Transocean-operated rig just months before the *Deepwater Horizon* explosion. The exhibit is a series of emails attaching and commenting upon a September 14, 2009 article from *Forbes India* that describes the event. According to the article, after Transocean lost well control, the rig's blowout preventer failed, and the crew was unable to stop mud from escaping the well. One Transocean employee attempts to downplay the event by calling the article "dramatic." Nonetheless, it illustrates a well control failure aboard a deepwater rig approximately six months prior to April 20, 2010. This exhibit is simply another documentation of the systemic safety shortcomings that are substantially similar to those at issue in this case. TREX-26003 is probative, it is substantially similar, and it should be admitted.

4

TREX-26009.a, TREX-26009.b, TREX-26009.c, TREX-26009.d, and TREX-26014, while further removed in time from the *Deepwater Horizon* explosion, nonetheless document well control failures aboard Transocean's drilling rig the *Jim Cunningham*. TREX-26009.a, for example, chastises "key personnel" aboard the rig, who "did not provide leadership and competent oversight and guidance to ensure all parties fulfilled their respective responsibilities," thus leading to the loss of well control. Team leadership "did not heed clear and specific warnings." And key personnel failed to properly "monitor the well," ultimately resulting in a blowout. These same lapses underlie the admissions contained in Transocean's guilty plea—a failure by Transocean leadership to appropriately respond to well control events in a manner that conformed to the industry standard. In sum, these exhibits are probative, substantially similar, and they should be permitted.

TREX-26023 is a series of emails exchanged in April 2010—the very month of the *Deepwater Horizon* explosion. This correspondence discusses "systemic problems" aboard Transocean's *Arctic 1* in Brazil. According to one correspondent discussing these systemic problems,

> A recent internal audit on *Arctic 1* confirmed that the rig does not comply with Transocean's HSE management system in many areas and there are serious gaps in critical safety equipment and maintenance, certification and register. When we deepened our investigations following the audit, it become [sic] obvious that this problem is endemic. It is almost in every area and has been accepted by Transocean leadership offshore and onshore for a long time.

[*Id.*] The PSC has alleged in its complaint, and will show during the trial, that critical safety lapses—attributable to Transocean—occurred aboard the *Deepwater Horizon* and contributed to the ultimate explosion. TREX-26023 demonstrates that safety lapses were "endemic" aboard other Transocean rigs at the very same time that the *Deepwater Horizon* exploded. What is

5

more, TREX-26012 demonstrates that Transocean's on-board safety problems date back at least to 2008. In that exhibit, a Transocean employee discussing safety lapses observes that "people don't just die on our rigs—we kill them." Together, these exhibits are pieces of a puzzle that, when assembled, show that Transocean systemically ignored safety protocols aboard its deepwater rigs. Ultimately, this systemic ignorance contributed to the *Deepwater Horizon* explosion on April 20, 2010. In short, this evidence is probative, substantially similar, and should be admitted.[3]

### B. The Exhibits At Issue Are Also Admissible In This Limitation Proceeding To Show Transocean's Privity and Knowledge.

In addition to the above, the exhibits at issue are admissible against Transocean for reasons that were inapplicable to the motion practice involving BP—namely, this is a Limitation proceeding in which Transocean is entitled to limitation only if it is without privity or knowledge of the cause of the loss. *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 504 (5th Cir. 1994). Where the ship owner is a corporation, knowledge is judged by what the corporation's managing agents knew or should have known with respect to the conditions or actions likely to cause the loss. *Id.* Most importantly, the burden is on the ship owner to prove lack of knowledge of the negligent activity or unseaworthy condition that caused the accident. *Id.*

To prove that it lacked privity or knowledge, the law imposes a high burden of diligence upon the shipowner to detect and correct faults. *See In re Hellenic Inc.*, 252 F.3d 391, 394 (5th Cir. 2001). At this juncture, however, the parties have no way of knowing what evidence Transocean will proffer in an attempt to carry its burden. At the very least, the parties should not

---

[3] While the PSC contends that the remaining exhibits at issue—TREX-26017, TREX-26018, and TREX-26029—are admissible, it acknowledges that the documents do not concern safety failures that are substantially similar to the *Deepwater Horizon* incident. Precluding these exhibits before any party may place them in context, however, is premature. *See Auenson v. Lewis*, Civ. A. No. 94-2734, 1996 WL 457258, at *1 (explaining that "motions in limine are disfavored," and that "[s]uch evidentiary rulings should be reserved until trial so that questions of foundation, competency, relevancy, and potential prejudice may be resolved in the proper context").

6

be deprived the use of evidence that may counter the evidence Transocean sets forth to show its alleged lack of privity or knowledge.  In attempting to exclude this evidence, Transocean essentially seeks to ease its burden by precluding the use of exhibits that show its corporate leadership had knowledge (or should have had knowledge) that employees were systemically failing to adhere to the industry standard for well control.  The Court should reject the motion for this reason alone.

      **C.**    **The Evidence In Question Is Limited In Quantity and Will Not Cause Undue Delay.**

In its Order and Reasons of February 9, 2012, the Court expressed concern that even if evidence of BP's prior process safety failures were admissible, it would cause undue delay of the trial proceedings. [*See* Rec. Doc. 5634 at 4-5.]  The Court thus held that the evidence was therefore excludable under Federal Rule of Evidence 403. [*Id.* at 5.]  Here, however, the quantity of evidence at issue is limited.  Indeed, Transocean objects to only thirteen PSC trial exhibits.  These trial exhibits, in turn, refer to discrete incidents that are close in proximity to the *Deepwater Horizon* explosion.  The incidents are highly probative and substantially similar to the lapses for which Transocean has admitted criminal liability.  Moreover, because this is a bench trial, the Court can reasonably restrict the breadth of testimony that may be offered regarding each incident.  In sum, Plaintiffs respectfully submit that this evidence should be heard, and that doing so will not unreasonably delay the trial.

## Conclusion

For the above and foregoing reasons, Plaintiffs respectfully request that the Court deny Transocean's Motion in Limine to Preclude the Introduction of Evidence Regarding Instances of Prior Alleged Improper Conduct Unrelated to the Macondo Well Incident.

Dated:  January 25, 2013

Respectfully submitted,

| | |
|---|---|
| /s/   Stephen J. Herman | /s/ James Parkerson Roy |
| **Stephen J. Herman**, La. Bar No. 23129 | **James Parkerson Roy**, La. Bar No.11511 |
| **HERMAN HERMAN & KATZ LLC** | **DOMENGEAUX WRIGHT ROY & EDWARDS LLC** |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhklawfirm.com | E-Mail: jimr@wrightroy.com |
| *Plaintiffs Liaison Counsel* | *Plaintiffs Liaison Counsel* |

### PLAINTIFFS' STEERING COMMITTEE

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office:  (850) 435-7045
Telefax: (850) 436-6187
E-Mail:  bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office:  (757) 670-3888
Telefax: (757) 670-3895
E-Mail:  jbreit@bdbmail.com

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY  10003
Office:  (212) 558-5802
Telefax: (212) 344-5461
E-Mail:  rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office:  (334) 269-2343
Telefax: (334) 954-7555
E-Mail:  rhon.jones@beasleyallen.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Office: (415) 956-1000
Telefax: (415) 956-1008
E-Mail: ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Office: (504) 394-9000
Telefax: (504) 394-9110
E-Mail: pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL 36660
Office: (251) 471-6191
Telefax: (251) 479-1031
E-Mail: rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail: mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA 70726
Office: (225) 664-4193
Telefax: (225) 664-6925
E-Mail: calvinfayard@fayardlaw.

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH,
LLP
501 Broad Street
Lake Charles, LA 70601
Office: (337) 439-0707
Telefax: (337) 439-1029
E-Mail: mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA 70801-1910
Office: (225) 344-3735
Telefax: (225) 344-0522
E-Mail: mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Office: (504) 588-1500
Telefax: (504) 588-1514
E-Mail: sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Office: (214) 521-3605
Telefax: (214) 599-1172
E-Mail: ssummy@baronbudd.com

Mikal C. Watts
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail: mcwatts@wgclawfirm.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail: ervin@colson.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that the above and foregoing Memorandum will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pre-Trial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 25th day of January, 2013.

/s/ James Parkerson Roy and Stephen J. Herman