**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179 |
| | | SECTION J |
| This document relates to: | * | Judge Barbier |
| *Nos. 10-4239; 10-4240; 10-4241* | * * | Magistrate Judge Shushan |

**DEFENDANTS' JOINT LOCAL RULE 56.2 STATEMENT
CONTROVERTING THE LOCAL RULE 56.1
<u>STATEMENT OF THE MEXICAN STATES</u>**

Defendants BP, Transocean, Halliburton and Cameron ("Defendants") jointly submit this Statement to comply with Local Rule 56.2 and in particular to controvert propositions advanced in the Statement of Undisputed Material Facts in Support of the Mexican States of Quintana Roo's, Tamaulipas', and Veracruz', Motion for Summary Judgment Regarding the Issue of Proprietary Interests in the Matters Asserted in Their Complaints, Doc. 8178-4 (the "LR 56.1 Statement").

<u>General Controverting Statements</u>

The Mexican States' LR 56.1 Statement is largely comprised of legal contentions and paraphrased translations of Mexican law that speaks for itself rather than statements of fact. Except as noted in this responsive Statement or in their summary judgment briefs (filed or to be filed), Defendants dispute all the contentions contained in the LR 56.1 Statement.

To the extent that the LR 56.1 Statement contains actual statements of fact, the applicable law in many instances makes those facts immaterial to resolution of the pending summary judgment motions in the Mexican States' cases.  Resolving issues of Mexican law entails "a ruling on a question of law" under FED. R. CIV. P. 44.1.  As the Defendants explain – in the briefs

1

supporting their summary judgment motions (Rec. Docs. 8169-1, 8176-1, and 8179-1), supported in detail by their own reports on and translations of Mexican law (Rec. Docs. 8165-5 through 11) - the Mexican States do not hold proprietary interests under Mexican law, so that their claims fail under the *Robins Dry Dock* rule of admiralty law.   Additionally, it is well settled that "differences of opinion among experts on the content, applicability, or interpretation of foreign law do not create a genuine issue as to any material fact under Rule 56." *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 713 (5th Cir. 1999) (citation omitted). Accordingly, Defendants submit that there are no genuine issues of material fact that would preclude summary judgment in Defendants' favor, and submit this responsive Statement subject to that caveat.

Out of an abundance of caution, however, Defendants specifically controvert the LR 56.1 Statement by numbered paragraph as follows.

<u>**Specific Controverting Statements**</u>

1.      The first sentence of Paragraph 1 does not contain a statement of material fact. The Mexican Constitution as it has been amended over time, and the timing of those amendments, speak for themselves.

The second sentence of Paragraph 1 does not contain a statement of material fact, and is incorrect as a matter of Mexican law.  The Mexican Constitution establishes that the Mexican States are not independent of the national government.  *See, e.g.,* Article 2 (the "Mexican Nation is one and indivisible"); Article 40 (Mexico is "united in a federation").  *See also* Doc. 8167-10, Exhibit 3 (Mexican Supreme Court decision holding that "[t]he Nation cannot be mistaken for a state").

Moreover, in all respects material to the pending summary judgment motions, the Mexican Constitution makes the state governments subservient to the federal government and federal law.  *See, e.g.,* Articles 27 ("inalienable" national property); 42 (national territory); 48 (national control over coastal and Gulf resources); 49 (the governing power of the national Federation is "supreme"); 73, Section XXIX-G (the national legislature is empowered to enact laws governing the participation of state governments in environmental administrative matters); 133 (the Mexican Constitution is the supreme law of Mexico and overrides inconsistent provisions in state constitutions).

2.      Paragraph 2 of the LR 56.1 Statement is not a statement of fact but a description of an opinion professed in one of the reports on Mexican law submitted by the Mexican States, and misconstrues Mexican law.  *See, e.g.,* Mexican Constitution Articles 27 ("inalienable" national property); 42 (national territory); 48 (national control over coastal and Gulf resources); 49 (the governing power of the federal government is "supreme"); 73, Section XXIX-G (the Mexican Congress is empowered to enact laws governing the participation of state governments in environmental administrative matters); 133 (the Mexican Constitution is the supreme law of Mexico and overrides inconsistent provisions in state constitutions).

Moreover, the use of the phrase "rights and jurisdiction" in paragraph 2 demonstrates the Mexican States' attempt to apply irrelevant concepts to the analysis applicable to the pending summary judgment motions.  As a matter of U.S. maritime law, "proprietary interests" involve property ownership, not the alleged Mexican state governmental "rights, powers, enforcement authority or jurisdiction" discussed in paragraph 2 of the LR 56.1 Statement.

3.      The first sentence of paragraph 3 of the LR 56.1 Statement is not a statement of fact, but appears to be an attempt to paraphrase or explain the first paragraph of Article 27 of the

Mexican Constitution.  That paragraph speaks for itself: "Ownership of lands and waters within the boundaries of national land territory is vested originally in the Nation, which has had and has, the right to transmit title thereof to private persons, thereby constituting private property."  Doc. 8186-2 at 63-64.  As correctly stated in the first sentence of paragraph 3 of the LR 56.1 Statement, the "Mexican Nation is" indeed the "sole owner" of this national property (unless and until it conveys real estate to private persons).  Additionally, conveyance of national property is prohibited as set forth in Mexican Constitutional Article 27, Paragraphs 4 and 5, and Article 48.

The second sentence of paragraph 3 is not a statement of fact but a legal contention, and is demonstrably incorrect.  The term "Mexican Nation", as used in the Mexican Constitution, does not refer to the Mexican States.  Doc. 8167-10, Exhibit 3 (Mexican Supreme Court decision holding that "[t]he Nation cannot be mistaken for a state" and that the Nation "is unique and represented by its federal agencies.").  As set forth in the Mexican Constitution, the Mexican Nation, is "one" and "indivisible" (Article 2), and is vested originally with "ownership" of the national property at issue (Article 27).  Doc. 8186-2 at 2, 63-64.

Under the unambiguous provisions of the Mexican Constitution and Mexican Supreme Court precedent, the Mexican States are decidedly not "instrumental and organic trustees" of national property as contended in the second sentence of paragraph 3 of the LR 56.1 Statement.

4.      Paragraph 4 of the LR 56.1 Statement is not a statement of fact but a legal contention that is contrary to Mexican law.  Paragraph 4 contends that Articles 39, 42, and 115 of the Mexican Constitution "state" certain matters about "the 'Mexican Nation.'"  To the contrary, the phrase "Mexican Nation" does not appear in any of these Articles.  Doc. 8186-2 at 107, 127-28, 269-82.  The Mexican Nation is "indivisible," and cannot be equated with the Mexican States.  Doc. 8167-10, Exhibit 3 (Mexican Supreme Court decision holding that "[t]he Nation

4

cannot be mistaken for a state" and that the Nation "is unique and represented by its federal agencies.").

The Mexican Constitution establishes that the Mexican States are not independent of the national government.  *See, e.g.,* Article 2 (the "Mexican Nation is one and indivisible"); Article 40 (Mexico is "united in a federation").  *See also* Doc. 8167-10, Exhibit 3 (Mexican Supreme Court decision holding that "[t]he Nation cannot be mistaken for a state").

Articles 2 and 27 appear in Chapter I of Title One of the Constitution, concerning "rights."  *Id.* at 1.  Article 27, therefore, plainly establishes the property rights of the Nation.  By contrast, Articles 39 and 42 appear in Chapter One of Title Two of the Constitution, concerning the "form of" the national "government" (the "Federation") and its "sovereignty," *id.* at 107 (*see also* Article 41 ("the people must exercise their sovereignty through the Powers of the Union"); and Article 115 appears in Title V, concerning the form of the state governments and their sovereignty, *id.* at 269.  Consequently, Articles 39, 42, and 115 relate to governmental powers rather than property ownership, and are thus not material to establish ownership of Mexican natural resource assets, particularly in the face of the express provisions of Article 27 vesting "inalienable" property rights in the "Nation."

5.      Paragraph 5 of the LR 56.1 Statement is not a statement of fact but offers paraphrased translations of selected portions of Article 27 of the Mexican Constitution insinuating that "private persons" may acquire ownership of  any national property.  This insinuation is contrary to Mexican law.  Certain national property is inalienable and imprescriptible and thus, may not be conveyed.  *See, e.g.,* Article 27, Mexican Constitution ("inalienable" national property); Article 13, General Law on National Assets (the federal maritime zone, and all "assets subject to the Federal Government's public domain regime are

inalienable, imprescriptible and unseizable" national property).  "Lands reclaimed from the sea" are owned by the Nation, but may be conveyed to the owner of the adjacent beachfront property only after such lands are disincorporated from the public domain by Executive decree (*see* Article 6, Paragraph IX, General Law on the National Assets).

6.      Paragraph 6 of the LR 56.1 Statement is not a statement of fact but offers paraphrased translations of selected portions of Article 27 of the Mexican Constitution insinuating that "private persons" may acquire ownership of all national property.  This insinuation is contrary to Mexican law.  Certain national property is inalienable and imprescriptible and thus, may not be conveyed.  *See, e.g.,* Article 27, Mexican Constitution ("inalienable" national property); Article 13, General Law on National Assets (the federal maritime zone, and all "assets subject to the Federal Government's public domain regime are inalienable, imprescriptible and unseizable" national property).  "Lands reclaimed from the sea" are owned by the Nation, but may be conveyed to the owner of the adjacent beachfront property only after such lands are disincorporated from the public domain by Executive decree (*see* Article 6, Paragraph IX, General Law on the National Assets).

Additionally, the first and third sentences of Paragraph 6 are false in that the first paragraph of Article 27 of the Mexican Constitution does not establish the mechanisms by which the federal government might transfer property to private owners.  Moreover, the second sentence of Paragraph 6 is false in that the first paragraph of Article 27 of the Mexican Constitution has not been amended since its approval in 1917.

7.      Paragraph 7 of the LR 56.1 Statement is not a statement of fact but offers a translation of a portion of Article 40 of the Mexican Constitution concerning the formation of the Mexican government as a Federal Republic.  Article 40, which must be read as a whole and in

6

context, speaks for itself.  Moreover, the form of the Mexican government is not material to establish ownership of Mexican natural resource assets.

8.      Paragraph 8 of the LR 56.1 Statement is not a statement of fact but offers a translation of Article 42 of the Mexican Constitution concerning the components that together constitute Mexico's "national territory."   Article 42, which must be read as a whole and in context, speaks for itself.  Moreover, the form of the Mexican government is not material to establish ownership of Mexican natural resource assets.

9.       Paragraph 9 of the LR 56.1 Statement is not a statement of fact but offers a translation of portions of Articles 43 and 46 of the Mexican Constitution with respect to the constituency of the Federation and certain agreements among the Mexican States concerning state borders.  Article 43 and 46, which must be read as a whole and in context, speak for themselves.  Moreover, the unremarkable proposition that a federal republic is comprised in part of its constituent states is not material to establish ownership of Mexican natural resource assets.

10.      Paragraph 10 of the LR 56.1 Statement is not a statement of fact but offers a translation of a portion of Article 48 of the Mexican Constitution concerning state "jurisdiction" over certain unidentified islands.  Article 48, which must be read as a whole and in context, speaks for itself.  Moreover, according to the translation submitted in paragraph 10, Article 48 concerns who is "in charge" of certain territory; in other words, it allocates "police power" or governmental authority over described geographic areas among the three levels of government. *See also* Doc. 8186-2 at 129-30. Article 48, therefore, is not material to establish ownership of Mexican natural resource assets.

11.      The first sentence of Paragraph 11 of the LR 56.1 Statement is not a statement of fact but offers a paraphrase of a portion of Article 73 of the Mexican Constitution concerning the

power of the Mexican Congress to enact national legislation.  Article 73, Section XXIX-G of the Mexican Constitution provides that only the Mexican national congress is empowered to "enact laws establishing the concurrence of the Federal Government, the States, and the municipalities, within their respective jurisdictions, on matters concerning environmental protection and preservation and restoration of ecological balance."

The second sentence of Paragraph 11 is not a statement of fact but a misrepresentation of Mexican law coupled with baseless assertions regarding alleged acts of the Mexican states.  The Mexican Supreme Court has confirmed that under Article 73, Section XXIX-G, the Mexican States are dependent on, and subordinate to, the federal government in the area of environmental administrative matters. Doc. 8167-10 at 44 (Exhibit 2) (*Concurrent Powers in the Mexican Legal System.  Their General Characteristics*, 9th Era; Plenary; S.J.F.; XV; Pag. 1042 (Record No. 187982)).

Moreover, the legislative power of the Mexican Congress is not material to establish ownership of Mexican natural resource assets.  Although the Mexican federal government may expressly grant concurrent jurisdiction of certain environmental administrative matters to the Mexican States, such grants neither convey ownership of any natural resource under Mexican law, nor do they grant any interest in Mexican natural resources to the Mexican States that would be considered equivalent to ownership.

12.      Paragraph 12 of the LR 56.1 Statement is not a statement of fact but a misrepresentation of Mexican law.  As noted in preceding paragraph 11 of this Statement, the language of Article 73, Section XXIX of the Mexican Constitution and Mexican Supreme Court precedent plainly refute the accuracy of the statements made in Paragraph 12 of the LR 56.1 Statement.  Moreover, Articles 73, 116 and 124 of the Mexican Constitution do not grant

20007433.1

1116025v1

ownership of any national asset to any Mexican State.  Article 116 concerns the functional operation of the state governments.  Doc. 8186-1 at 282-93.  Similarly, Article 124 vests certain governmental powers in the states, but only those "powers not explicitly vested by the Constitution on federal authorities." *Id.* at 347.  The Mexican Supreme Court has explicitly held that because power over environmental administrative matters is vested in the federal authorities by Article 73, Section XXIX-G, "it shall be the Congress of the Union [to be] the one to determine the manner and the terms of participation by [the Mexican States] through a general law."  Doc. 8167-10 at 44 (Exh. 2).  This authoritative interpretation of Articles 124 and 73 directly controverts the contentions of Paragraph 12 that the Mexican States can or must act independently of national authorities or general laws on environmental administrative matters, or that the States could have interests in national ecological resources that the national general laws of Mexico steadfastly refuse to grant them.  In general, the contents of the Defendants' reports on Mexican law and opening summary judgment briefs – Docs. 8165-7, 10, and 11, 8169-1, 8176-1, and 8179-1 – explain in greater detail why the arguments in paragraph 12 are incorrect by reason of the national laws of Mexico that do determine the manner and terms of the participation of the Mexican States in the conservation of, and their lack of proprietary interest in, Mexican natural resource assets.

13.     Paragraph 13 of the LR 56.1 Statement is not a statement of fact but an apparent summary of an incorrect legal argument about "constitutional theory" and concurrency propounded in the Guabardi report, as well as an incomplete translation of Mexican Supreme Court precedent.  *See* Doc. 8167-10 at 44 (Exhibit 2) (*Concurrent Powers in the Mexican Legal System.  Their General Characteristics*, 9th Era; Plenary; S.J.F.; XV; Pag. 1042 (Record No. 187982)) (full opinion translation).  As noted in the preceding paragraphs 11 and 12 of this

20007433.1

1116025v1

Statement, such theories are refuted by Mexican law.  Moreover, even this theoretical discussion makes it abundantly clear that the concept of concurrency in governmental action is not material to establish ownership of Mexican natural resource assets.

14.     Paragraph 14 of the LR 56.1 Statement is not a statement of fact but continues the Mexican States' unsupported legal argument regarding concurrency.  As noted in paragraphs 11-13 of this Statement, the Mexican States' theory is incorrect under Mexican law and is not material to establish ownership of Mexican natural resource assets.

15.     Paragraph 15 of the LR 56.1 Statement is not a statement of fact but legal arguments unsupported by Mexican law.  First, as noted above in paragraphs 11-14 of this Statement, the Mexican States' theories regarding concurrency are refuted by Mexican law.  Second, Article 133 provides that, because federal law is supreme, no provision of a state constitution can override (a) the Nation's "sole" ownership of national resources identified in the Mexican Constitution and general laws, or (b) the federal government's environmental authority under Article 73, Section XXIX-G.  Third, the Mexican States have produced no documents evidencing transfer of ownership of Mexican natural resource assets to the Mexican States.

16.     Paragraph 16 of the LR 56.1 Statement purports to describe the content of numerous Administrative Agreements between the Mexican national government and others discussed in the Guabardi Report.  The Mexican States have produced no documents evidencing transfer of ownership of Mexican natural resource assets to the Mexican States.  Additionally, the agreements referenced by the Mexican States have neither been submitted as part of the summary judgment record nor verified as proper summary judgment evidence.  Defendants therefore contest the statement of paragraph 16 as without support in the summary judgment record under FED. R. EVID. 1002, 1003.

17.     Paragraph 17 of the LR 56.1 Statement is not a statement of fact.  It contains legal arguments and purports to provide more detailed descriptions of the supposed contents of the Administrative Agreements first alluded to in Paragraph 16 of the LR 56.1 Statement.  The introductory sentence of Paragraph 17 misrepresents the parties to and nature of the agreements, the ability of the Mexican federal government to transfer land (*see* Paragraph 6 of this Statement above), and the rights and powers conveyed by the agreements.  The Mexican States have produced no documents evidencing transfer of ownership of Mexican natural resource assets to the Mexican States.

Moreover, the agreements referenced by the Mexican States have neither been submitted as part of the summary judgment record nor verified as proper summary judgment evidence.  Defendants therefore contest the statement of paragraph 16 as without support in the summary judgment record under FED. R. EVID. 1002, 1003.

Further, contrary to statements in Paragraph 17, none of the Mexican States is a party to many of the agreements referenced in Paragraph 17.  Certain of the agreements involve property and private parties (Tamaulipas ## 2-9, Veracruz ## 1-8, Quintana Roo ## 1-4).  Certain of the agreements authorize municipalities to establish public beach clubs (Tamaulipas # 10, Quintana Roo ## 5-36).  None of these agreements with private parties or municipalities establish ownership by any of the Mexican States.

In those cases for which paragraph 17 does claim that a Mexican State is a party to an agreement, several are intergovernmental agreements for "regional progress," "tourism," or environmental protection (Tamaulipas ## 12-16, Veracruz # 9, Quintana Roo ## 38-43).  One establishes a "national" protected area (Tamaulipas # 1).  Even as described in paragraph 17, none of these agreements purports to convey any ownership interest to one of the Mexican

States.  In sum, the "facts" purportedly disclosed by the contents of these agreements (which are not in evidence) are not material to establish ownership of Mexican natural resource assets.

18.     The first sentence of Paragraph 18 of the LR 56.1 Statement is not a statement of fact but offers a translation of a portion of the Tamaulipas State Constitution concerning the geographic extent of state territory.  The geographic extent of state territory described in a state constitution is not material to establish ownership of Mexican natural resource assets.

The second sentence of Paragraph 18 is not a statement of a fact but a conclusory allegation about purported state exercise of police powers unsupported by admissible evidence. The historic exercise of state police powers is not material to establish ownership of Mexican natural resource assets.

The third sentence of Paragraph 18 is not a statement of fact but an argument comprised of unsupported legal contentions coupled with baseless allegations of purported national inaction in certain unidentified circumstances.  Article 133 of the Mexican Constitution provides that, because federal law is supreme, no provision of a state constitution can override (a) the Nation's "sole" ownership of national resources identified in the Mexican Constitution and general laws, or (b) the federal government's environmental authority under Article 73, Section XXIX-G. Regardless, the alleged crisis response of the Mexican States is not material to establish ownership of Mexican natural resource assets.

19.     The first sentence of Paragraph 19 of the LR 56.1 Statement is not a statement of fact but offers a translation of a portion of the Veracruz State Constitution concerning the geographic extent of state territory.  The geographic extent of state territory described in a state constitution is not material to establish ownership of Mexican natural resource assets.

20007433.1

1116025v1

The second sentence of Paragraph 18 is not a statement of a fact but a conclusory allegation about purported state exercise of police powers unsupported by admissible evidence. The historic exercise of state police powers is not material to establish ownership of Mexican natural resource assets.

Article 133 of the Mexican Constitution provides that, because federal law is supreme, no provision of a state constitution can override (a) the Nation's "sole" ownership of national resources identified in the Mexican Constitution and general laws, or (b) the federal government's environmental authority under Article 73, Section XXIX-G.

20. The first sentence of paragraph 20 of the LR 56.1 Statement is not a statement of fact but offers a translation of a portion of the Quintana Roo State Constitution concerning the geographic extent of state territory. The geographic extent of state territory described in a state constitution is not material to establish ownership of Mexican natural resource assets.

The second sentence of paragraph 20 a is not a statement of a fact but a conclusory allegation about purported state exercise of police powers unsupported by admissible evidence. The historic exercise of state police powers is not material to establish ownership of Mexican natural resource assets.

Article 133 of the Mexican Constitution provides that, because federal law is supreme, no provision of a state constitution can override (a) the Nation's "sole" ownership of national resources identified in the Mexican Constitution and general laws, or (b) the federal government's environmental authority under Article 73, Section XXIX-G.

21. Paragraph 21 of the LR 56.1 Statement is not a statement of fact but purports to describe the authority of state Governors to act for their states under state constitutional provisions. Article 133 of the Mexican Constitution provides that, because federal law is

supreme, no provision of a state constitution can override the federal government's environmental authority under Article 73, Section XXIX-G.  As explained in Paragraphs 11-15 of this Statement, by the terms of the Mexican Constitution as authoritatively interpreted by the Mexican Supreme Court, states may only participate in administrative environmental matters in the manner and under the terms prescribed by federal laws of Mexico.  Accordingly, the mere state created authority of state governors to act for their states cannot controvert federal laws, and is not material to establish ownership of Mexican natural resource assets.

22.    Paragraph 22 of the LR 56.1 Statement is not a statement of fact but a transparently erroneous legal argument that nothing in the Mexican Constitution prohibits states from representing themselves in domestic or international affairs.  Contrary to the assertion in the first sentence of Paragraph 22, numerous Mexican Constitutional and federal statutory provisions limit Mexican state powers in domestic and foreign affairs.  Per Article 133 of the Mexican Constitution, the Mexican Constitution and federal laws are "the supreme law" of Mexico.  For example, Mexican Constitutional Articles 73 and 124 limit the powers of the Mexican States.  As explained in Paragraphs 11-15 of this Statement, by the terms of the Mexican Constitution as authoritatively interpreted by the Mexican Supreme Court, states may only participate in environmental administrative matters in the manner and under the terms prescribed by federal laws of Mexico under Article 73.

Moreover, the General Law of Ecological Balance and Environmental Protection, clearly establishes in its Article 5, Section III that the Mexican federal government, not the Mexican States, is empowered with:

> III. Attending to matters affecting the ecological balance in the national territory or in the areas subject to the Nation's sovereignty and jurisdiction, originating in the territory or areas subject to other States' sovereignty and jurisdiction, or in areas beyond the jurisdiction of any State;

14

Article 119 of the Mexican Constitution also limits the power of the Mexican States as follows:

> Article 119. It is the duty of the Powers of the Union to protect the States against all invasions or outside violence.  In each case of internal uprising or disruption, the same protection shall be provided, as long as they are motivated by the Legislature of the State of by its Executive, if the former is not assembled.

Regarding the second sentence of Paragraph 22, it also misrepresents Mexican law.  The Mexican Constitution provides in Article 117 as follows: "In no case shall the States: I. Celebrate alliances, treaties or coalitions with any other States or with foreign powers."   Doc. 8186-2 at 293.

Per the Mexican Statute on the Signing of Treaties, the Mexican States may execute "Inter-institutional Agreements" under two limitations:

> a)      The material sphere of the inter-institutional agreements shall be restricted exclusively to the own attributes of the decentralized agencies and entities of the aforementioned levels of government signing them.

> b)      Require prior ruling from the Department of Foreign Affairs regarding the merits of signing said agreement  (*see* Article 7. "The decentralized agencies and entities of the Federal, State or Municipal Public Administration shall keep the Department of Foreign Affairs informed about any inter-institutional agreement intended to be executed with foreign government entities or international organizations.  The Department shall prepare the corresponding ruling about the merits of signing it and, when applicable, shall record it in the respective Registry.")

Nevertheless, state powers to represent their interests domestically and internationally, as constricted by the federal Mexican law, is not material to establish ownership of Mexican natural resource assets.

23.      Paragraph 23 is not a statement of fact but offers erroneous arguments regarding unidentified "decrees" and the application of Articles 22 and 23 of the Mexican Statute for the Use and Enjoyment of the Territorial Sea, Navigable Water Ways, Beaches, The Federal Maritime Land Zone and Lands Reclaimed from the Sea.  The contention that Mexican States are

granted exclusive rights or control of federal lands is unsupported and contrary to Mexican law.

Use of federal Mexican assets is governed by federal Mexican law.

Articles 22 and 23 of the Mexican Statute for the Use and Enjoyment state:

**ARTICLE 22.** The Department by means of the corresponding order, shall assign to the service of the agencies and entities of the Federal Public Administration, of the state or municipal governments the areas of the federal maritime-land zone or of the land reclaimed from the sea or any other deposit of maritime waters required to be used, utilize or exploit.

The agencies or entities of the Federal Public Administration or of the state or municipal governments, which for fulfilling of the public purposes they are charged with require to have areas of the federal maritime-land zone or of land reclaimed from the sea or any other deposit of maritime waters assigned to their service, shall file a written application with the Department, specifying the area they require, as well as the use, utilization or exploitation they intend to carry out, attaching a location diagram thereof, as well as the projects and works plats to be executed and other requisites necessary pursuant to the laws and regulations.

**ARTICLE 23.** Agencies and entities of the Federal Public Administration, or the governments of the states or municipalities meeting the requirements provided for in the Law and the Regulation, shall have the right of first refusal over private parties for using, utilizing or exploiting the federal maritime-land zone, land reclaimed from the sea or any other deposit of maritime waters.

When the areas required for public purposes have been concessioned or licensed, should the Department deem the causes alleged by the applicants to have merits, it may issue a rescue declaration or revoke the permit, in accordance to the provisions of the Law.

These statutes, which must be read as a whole and in conjunction with the Mexican Constitution and other general laws like the General Law on National Assets, do not convey exclusive rights of use and control.

And according to the Guabardi Report submitted by the Mexican States themselves, "administrative agreements granting the benefit on federal assets only transfer the right to use them but do not transfer the property on the same or create any other real rights on such assets

16

and hence cannot be transferred to anyone else." Doc. 8178-5 at 94-95 & n. 373. The Guabardi Report further explains that under Article 35 of this statute, "concessions . . . do not create real rights upon federal land zones, land reclaimed from the sea or any other deposit of maritime waters." *Id.* n. 379. As explained in more detail in the reports and briefs already submitted by the Defendants, such concessions and administrative agreements do not transfer ownership rights in Mexican natural resource assets.

24.     Paragraph 24 of the LR 56.1 Statement is not a statement of material fact. It purports to describe an agreement to which Tamaulipas is a party concerning a public beach at "La Pesca" and misrepresents the rights conveyed in the agreement. Defendants note that the agreement has neither been submitted as part of the summary judgment record nor verified as proper summary judgment evidence. Defendants therefore contest the statements of paragraph 24 as without support in the summary judgment record under FED. R. EVID. 1002, 1003.

> Nevertheless, as explained in Article 2 of the document at issue,
>
> This Order only grants to the Government of the State of Tamaulipas the right to use the surface assigned for achieving the purpose indicated in article one of this instrument, does not assign ownership nor does it create any real right to the recipient.

Thus, if the Mexican States included the agreement as summary judgment evidence, the Defendants submit that the terms of the agreement would flatly contradict the arguments made in paragraph 24. The document only permits the right to use certain land as a public beach. Nowhere does it grant exploitation, control, or possession as the Mexican States assert. Article 2 further clarifies that the document does not assign ownership of the land at issue to the Mexican States.

The Guabardi Report submitted by the Mexican States also refutes the assertions of Paragraph 24. It notes that agreement was entered into pursuant to identified Mexican laws precluding the transfer of an ownership interest to the state. Guabardi Report, Doc. 8178-5, at

93-96 and nn. 363, 373, 375.  As quoted in the Guabardi Repot, select laws governing this agreement provide as follows:

> "assets under the public domain [of the Nation] shall not be transferable, cannot be acquired by adverse possession and cannot be seized nor be subject to restoration of the property actions or definitive or provisional possessor actions, by third parties," n. 365 (paraphrase of Article 13 of the General Law on National Assets);

> "administrative agreement[s] granting the benefit upon federal assets only transfer the right to use them but do not transfer the property on the same or create any other real rights on such assets and hence cannot be transferred to anyone else," n. 373 (paraphrase of Article 5 of the Regulation for the Use and Benefit of the Territorial Sea, Waterways, Beaches, Federal Land Zone and Land Reclaimed from the Sea);

> "concessions . . . do not create real rights upon federal land zones, land reclaimed from the sea or any other deposit of maritime waters," n. 379 (paraphrase of Article 35 of the Regulation for the Use and Benefit of the Territorial Sea, Waterways, Beaches, Federal Land Zone and Land Reclaimed from the Sea).

As the Guabardi Report dutifully explains, therefore, this agreement, even if part of the record, does not involve the transfer of ownership interest in the land at issue to Tamaulipas.

25.     Paragraph 25 of the LR 56.1 Statement is not a statement of material fact. It continues to misrepresent the nature of the grant conveyed in the agreement first addressed in Paragraph 24.  As noted, that agreement has not been submitted as proper summary judgment evidence.  Defendants therefore contest the statements of paragraph 24 as without support in the summary judgment record under FED. R. EVID. 1002, 1003.  Additionally, as explained in the foregoing paragraph 24 of this Statement and in the Guabardi Report, the document only permits the right to **use** the land at issue as a public beach, and nowhere did it grant exploitation, control, or possession as the Mexican States assert.  Moreover, the document does not assign ownership of the land at issue to the Mexican States.

26.     Paragraph 26 of the LR 56.1 Statement is not a statement of material fact.  It is a legal argument that the state "exercises proprietary interest rights" in the property addressed in the agreement raised in Paragraph 24.  This legal argument is not based on a document in the summary judgment record.  Moreover, as explained in paragraph 24 of this Statement above and in the Guabardi Report, the document only permits the right to **use** the land at issue as a public beach, and nowhere did it grant exploitation, control, or possession as the Mexican States assert.  Moreover, the document does not assign ownership of the land at issue to the Mexican States.  Accordingly, the terms of the agreement if properly included in the record would refute the legal argument advanced in paragraph 26.

27.     Paragraph 27 of the LR 56.1 Statement is not a statement of material fact. It purports to discuss and quote from a coordination agreement concerning joint management of beaches by the national government, Veracruz and Veracruz municipalities.  However, that agreement has neither been submitted as part of the record nor verified as proper summary judgment evidence.  Defendants therefore contest the statements of Paragraph 27 as without support in the summary judgment record under FED. R. EVID. 1002, 1003.

Even by the description contained in Paragraph 27 and the Guabardi Report, that agreement does not purport to convey an ownership in any beach, and requires management of beaches for public use.  In any event, such an agreement is subject to the provisions of the Mexican General Statute on National Assets and Regulation for the Use and Benefit of the Territorial Sea, Waterways, Beaches, Federal Land Zone and Land Reclaimed from the Sea set out in paragraph 24 above, and the other laws of Mexico that would forbid transfer of national assets to Veracruz.  Even if properly included as summary judgment evidence, the described agreements do not convey ownership of the land at issue to Veracruz.

20007433.1

1116025v1

Moreover, as conceded in the Guabardi Report, Doc. 8178-5- at 215, n. 1134, this agreement was made explicitly subject to the provisions of Article 27 of the Mexican Constitution, under which the Nation's proprietary interests in coastal and Gulf resources are "inalienable." According to the terms of this agreement, no ownership of assets is transferred. If this agreement were properly in the record, therefore, its very terms would disprove that Veracruz holds any ownership in the beaches covered by this intergovernmental management agreement.

28.     Paragraph 28 of the LR 56.1 Statement is not a statement of material fact. It purports to note additional terms of the agreement first addressed in Paragraph 27. Again, Defendants contest the statements of paragraph 28 because the agreement is not properly part of the summary judgment record. Moreover, by the Mexican States' descriptions, the agreement does not purport to convey ownership, but expressly invokes Article 27 of the Mexican Constitution precluding such a transfer of ownership. Additionally, none of the provisions of the Agreement grant to the State of Veracruz "operational management functions and control of the beaches, federal maritime land zone and zones reclaimed from the sea." According to the terms of the agreement produced in discovery, none of its provisions provide for management and control by Tamaulipas as contended in Paragraph 28.

29.     Paragraph 29 of the LR 56.1 Statement is not a statement of material fact. It purports to discuss and quote from a coordination agreement among the federal government, Tamaulipas, and Tamaulipas municipalities regarding governmental action relating to public use of beaches. However, that agreement, which would speak for itself, has neither been submitted as part of the summary judgment record nor verified as proper summary judgment evidence.

20007433.1

1116025v1

Defendants therefore contest the statements of paragraph 29 as without support in the summary judgment record.

Even by the description contained in paragraph 29 and the Guabardi Report, that agreement does not purport to convey ownership interest in any beach, and requires management of beaches for public use.  (Although the Statement references page 210 of the Guabardi Report, it is clearly discussing the coordination agreement discussed from pages 206-10 of the Guabardi Report, Doc. 8178-5.)  Even if properly included as summary judgment evidence, it would not be material to establish ownership of the Mexican natural resource assets at issue.

Moreover, as conceded in the Guabardi Report, Doc. 8178-5 at 207 n. 1108, this agreement was made explicitly subject to the provisions of Article 27 of the Mexican Constitution, under which the Nation's proprietary interests in coastal and Gulf resources are "inalienable."  According to the terms of this agreement as provided in discovery, no ownership of assets is transferred.  Even if this agreement were properly in the record, therefore, its terms would disprove that Veracruz holds any ownership in the land at issue.

30.    Paragraph 30 of the LR 56.1 Statement purports to note further terms of the agreement first addressed in paragraph 27 concerning public use of beaches in Veracruz.  Again, Defendants contest the statements of paragraph 30 because the agreement is not properly part of the summary judgment record.  Moreover, by the Mexican States' descriptions, the agreement does not purport to convey ownership, but expressly invokes Article 27 of the Mexican Constitution precluding such a transfer of a proprietary interest.  According to the terms of this agreement as provided in discovery, no ownership of assets is transferred.  Even if this agreement were properly in the record, therefore, its terms would disprove that Veracruz holds any ownership interest.

31.     Paragraph 31 of the LR 56.1 Statement discusses a supposed agreement concerning creation of a turtle camp in Veracruz.  However, that agreement, which would speak for itself, has neither been submitted as part of the summary judgment record nor verified as proper summary judgment evidence.  Paragraph 31 says that the agreement is discussed at page 214 of the Guabardi Report, but the agreement discussed at page 214 of the Guabardi Report is instead the "beach management" agreement addressed in paragraph 27 of the LR 56.1 statement. Doc. 8178-5 at 214.  So far as Defendants can tell, the agreement described in paragraph 31 is not even addressed in the Guabardi report.  Defendants therefore contest the statements of paragraph 31 as wholly without support in the summary judgment record.

Because the agreement involves reclaimed federal property in the maritime zone, moreover, it is necessarily governed by the Mexican laws governing natural resource assets that foreclose a transfer of ownership.  *See* paragraph 24 above.

32.     Paragraph 32 of the LR 56.1 Statement discusses and offers translations of portions of a Decree setting aside a portion of coastal waters as a "national protected area."  The agreement speaks for itself, but it only grants the states the right to "take part" in conservation efforts related to the area.  It does not purport in any way to transfer any ownership interest in the area.  The agreement is clearly not material to establish a proprietary interest held by any of the Mexican States in the "national" resources to be protected.

33.     Paragraph 33 of the LR 56.1 Statement continues to discuss the Decree identified in paragraph 32.  Again, the agreement speaks for itself, but it is clearly not material to establish ownership interest held by any of the Mexican States in the pertinent national resources.

20007433.1

1116025v1

34.     Paragraph 34 of the LR 56.1 Statement is not a statement of fact but an argument regarding the Mexican States' alleged role in wildlife issues.  Contrary to their assertions, Article 14 of the General Law of Wildlife provides that:

> Article 14. When by reason of the matter and in accordance with the Organic Law of the Public Federal Administration or other applicable provisions, the intervention by other entities, the Department shall exercise its powers in coordination therewith.
>
> The agencies and entities of the Federal Public Administration exercising the powers granted thereto by other laws whose provisions are related to the purpose of this Law, shall adjust exercise thereof to the national wildlife policy established in this Law and in the General Law of Ecological Balance and Environmental Protection, as well as to the provisions derived therefrom.

The federal laws are the "supreme" law of the land.  Nothing in the Act supports the Mexican States' assertions.  These wildlife statute sections speak for themselves, but are not material to establish an ownership interest in wildlife held by anyone, much less any of the Mexican States.

35.     Paragraph 35 of the LR 56.1 Statement is not a statement of fact but an argument regarding the extent to which the Mexican General Statute on Sustainable Fisheries and Aquaculture authorizes the states to participate in limited administrative functions thereunder. Contrary to the Mexican States' arguments, however, Articles 13 and 15 of this law confirm that the Mexican States' limited authorization to participate in environmental administrative procedures are subordinate to and dictated by this national law.  The statute speaks for itself, but is not material to establish an ownership interest held by the Mexican States in national fisheries or aquatic wildlife.

36.     Paragraph 36 of the LR 56.1 Statement purports to describe agreements by which the national government has sold alleged coastal property to private individuals and corporations. Additionally, this Paragraph makes overbroad, misleading statements regarding what federal land may be transferred to private ownership, and how such transfers are accomplished.  The

federal maritime zone, and all "assets subject to the Federal Government's public domain regime are inalienable, imprescriptible and unseizable" property of the Nation that may not be conveyed. Article 13, General Law on National Assets.   Regarding "lands reclaimed from the sea", according to Article 70 of the General Law on National Assets, such gained lands are owned by the Nation, but may be conveyed to the owner of the adjacent beachfront property only after such lands are disincorporated from the public domain by Executive decree (*see* Article 6, Paragraph IX, General Law on the National Assets).

Again, those agreements listed in Paragraph 36, which would speak for themselves, have neither been submitted as part of the summary judgment record nor verified as proper summary judgment evidence.   Defendants therefore contest the statement of paragraph 36 as without support in the summary judgment record under FED. R. EVID. 1002, 1003.

And once again, none of these agreements, even if in the record, would be material to establish the Mexican States' ownership interest in natural resource assets.

37.     Paragraph 37 purports to describe the guilty plea entered by BP Exploration and Production, Inc., in connection with the explosion on the *Deepwater Horizon* and resulting oil spill.   However, the guilty plea, which speaks for itself, is not material to establish ownership interest in Mexican natural resource assets.

38.     Paragraph 38 of the LR 56.1 Statement is not a statement of fact but an incorrect legal contention that the BP guilty plea proves a violation of the Convention for the Protection of Migratory Birds and Game Mammals.   The Convention, which speaks for itself, is an agreement among nations that does not itself govern private party conduct.   The Convention is not material to establish ownership interest in Mexican natural resource assets.

39.     Paragraph 39 of the LR 56.1 Statement purports to quote from the BP guilty plea. However, the guilty plea speaks for itself and is not material to establish ownership interest in Mexican natural resource assets.

40.     Paragraph 40 of the LR 56.1 Statement purports to quote from the BP guilty plea. However, the guilty plea speaks for itself and is not material to establish ownership interest in Mexican natural resource assets.

41.     The first part of paragraph 41 of the LR 56.1 Statement is not a sentence and is therefore not a statement of fact that can be controverted.  The second half of paragraph 41 states that there is no ownership of GTT by any of the Mexican States.  Paragraph 41 is not material to establish the Mexican States' ownership interest in Mexican natural resource assets.

42.     The first part of paragraph 42 of the LR 56.1 Statement is not a sentence and is therefore not a statement of fact that can be controverted.  The second part of paragraph 42 contains statements concerning the involvement of Tamaulipas in the development, apparently by GTT, of a beach and tourism project on the Gulf of Mexico.  Although Defendants must controvert the statements in Paragraph 42 absent the opportunity for discovery, those statements are not material to establish the Mexican States' ownership interest in Mexican natural resource assets.

43.     Paragraph 43 of the LR 56.1 Statement purports to describe plans for the La Pesca development and planned participation by Tamaulipas in the development.  Paragraph 43 states that the project was to be developed over "beachfront property owned by GTT and other private entities and natural persons."  Although Defendants must controvert the other statements in Paragraph 43 absent the opportunity for discovery, those statements about a project owned by

private parties are not material to establish the Mexican States' ownership interest in Mexican natural resource assets.

44.     Paragraph 44 of the LR 56.1 Statement purports to describe purchases of real estate by GTT.  Although Defendants must controvert the statements in Paragraph 44 absent the opportunity for discovery, those statements are not material to establish the Mexican States' ownership interest in Mexican natural resource assets.

45.     Paragraph 45 of the LR 56.1 Statement purports to describe private ownership of real estate acquired by GTT.  Although Defendants must controvert the statements in Paragraph 45 absent the opportunity for discovery, those statements are not material to establish the Mexican States' ownership interest in Mexican natural resource assets.

46.     Paragraph 46 of the LR 56.1 Statement purports to describe some details about the real estate transactions completed by GTT.  Although Defendants must controvert the statements in Paragraph 46 under FED. R. EVID. 1002 and 1003 and absent the opportunity for discovery, those statements are not material to establish the Mexican States' ownership interest in Mexican natural resource assets.

47.     Paragraph 47 of the LR 56.1 Statement purports to describe permit documents obtained by GTT.  Although Defendants must controvert the statements in Paragraph 47 under FED. R. EVID. 1002 and 1003 and absent the opportunity for discovery, those statements are not material to establish the Mexican States' ownership interest in Mexican natural resource assets.

48.     Paragraph 48 of the LR 56.1 Statement purports to describe an agreement between Tamaulipas and GTT concerning GTT's development activities.  Although Defendants must controvert the statements in Paragraph 48 under FED. R. EVID. 1002 and 1003 and absent

20007433.1

1116025v1

the opportunity for discovery, those statements and the purported agreement are not material to establish the Mexican States' ownership interest in Mexican natural resource assets.

49.     Paragraph 49 of the LR 56.1 Statement purports to describe a construction authorization and another agreement between GTT and Tamaulipas concerning initiation of construction.  Although Defendants must controvert the statements in Paragraph 48 under FED. R. EVID. 1002 and 1003 and absent the opportunity for discovery, those statements are not material to establish the Mexican States' ownership interest in Mexican natural resource assets.

Respectfully submitted,

                                                                    /s/ Phillip A. Wittmann
David J. Beck, T.A.                          Phillip A. Wittmann, 13625
  dbeck@beckredden.com                         pwittmann@stonepigman.com
Joe W. Redden, Jr.                           Carmelite M. Bertaut, 3054
  jredden@beckredden.com                        cbertaut@stonepigman.com
David W. Jones                               Jared Davidson, 32419
  djones@beckredden.com                         jdavidson@stonepigman.com
Geoffrey Gannaway                            STONE PIGMAN WALTHER
  ggannaway@beckredden.com                     WITTMANN L.L.C.
BECK REDDEN LLP                              456 Carondelet Street
One Houston Center                           New Orleans, Louisiana  70130
1221 McKinney St., Suite 4500                Phone: (504) 581-3200
Houston, TX  77010                           Fax: (504) 581-3361
Phone:  (713) 951-3700
Fax:  (713) 951-3720

*Attorneys for Cameron International Corporation*

By:    _s/ Brad D. Brian_____
          Brad D. Brian
          Michael R. Doyen
          Daniel B. Levin
MUNGER TOLLES &OLSON LLP
355 So. Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel: (213) 683-9100
Fax: (213) 683-5180
Email: brad.brian@mto.com
          michael.doyen@mto.com
          daniel.levin@mto.com

By:    _s/ Steven L. Roberts_____
          Steven L. Roberts
          Rachel Giesber Clingman
          Sean D. Jordan
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Tel: (713) 470-6100
Fax: (713) 354-1301
Email: steven.roberts@sutherland.com
          rachel.clingman@sutherland.com
          sean.jordan@sutherland.com

By:    _s/ Edwin G. Preis_____
          Edwin G. Preis, Jr.
PREIS &ROY PLC
Versailles Blvd., Suite 400
Lafayette, LA 70501
(337) 237-6062
_and_
601 Poydras Street, Suite 1700
New Orleans, LA 70130
(504) 581-6062

By:    _s/ Kerry J. Miller_____
          Kerry J. Miller
FRILOT, LLC
110 Poydras St., Suite 3700
New Orleans, LA 70163
Tel: (504) 599-8194
Fax: (504) 599-8154
Email: kmiller@frilot.com

John M. Elsley
ROYSTON, RAYZOR, VICKERY & WILLIAMS LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
(713) 224-8380

_Counsel for Defendants Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater
Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH_

r

**GODWIN LEWIS PC**

**By:** _/s/ Donald E. Godwin_

| | |
|---|---|
| Donald E. Godwin | R. Alan York |
| *Attorney-in-charge* | State Bar No. 22167500 |
| State Bar No. 08056500 | Alan.York@GodwinLewis.com |
| Don.Godwin@GodwinLewis.com | Jerry C. von Sternberg |
| Bruce W. Bowman, Jr. | State Bar No. 20618150 |
| State Bar No. 02752000 | Jerry.VonSternberg@GodwinLewis.com |
| Bruce.Bowman@GodwinLewis.com | Misty Hataway-Coné |
| Jenny L. Martinez | State Bar No.  24032277 |
| State Bar No. 24013109 | Misty.Cone@GodwinLewis.com |
| Jenny.Martinez@GodwinLewis.com | 1331 Lamar, Suite 1665 |
| Floyd R. Hartley, Jr. | Houston, Texas 77010 |
| State Bar No. 00798242 | Telephone:  713.595.8300 |
| Floyd.Hartley@GodwinLewis.com | Facsimile:  713.425.7594 |
| Gavin E. Hill | |
| State Bar No.  00796756 | |
| Gavin.Hill@GodwinLewis.com | |
| Renaissance Tower | |
| 1201 Elm, Suite 1700 | |
| Dallas, Texas 75270-2041 | |
| Telephone: (214) 939-4400 | |
| Facsimile: (214) 760-7332 | |

*Attorneys for Defendant Halliburton Energy Services, Inc.*

20007433.1

1116025v1

|  | */s/ Don K. Haycraft* |
|---|---|
| Richard C. Godfrey, P.C. | Don K. Haycraft (Bar #14361) |
| J. Andrew Langan, P.C. | R. Keith Jarrett (Bar #16984) |
| Catherine Fitzpatrick | Liskow & Lewis |
| Elizabeth A. Larsen | 701 Poydras Street, Suite 5000 |
| Kirkland & Ellis LLP | New Orleans, Louisiana 70139-5099 |
| 300 North LaSalle Street | Telephone:  504-581-7979 |
| Chicago, IL 60654 | Facsimile:  504-556-4108 |
| Telephone:  312-862-2000 | |
| Facsimile:  312-862-2200 | Jeffrey Bossert Clark |
| | Kirkland & Ellis LLP |
| Allison Rumsey | 655 Fifteenth Street, N.W. |
| S. Zachary Fayne | Washington, D.C. 20005 |
| Arnold & Porter LLP | Telephone:  202-879-5000 |
| 555 Twelfth Street, NW | Facsimile:  202-879-5200 |
| Washington, DC  20004-1206 | |
| E-Mail:  Allison.Rumsey@aporter.com | Robert C. "Mike" Brock |
| Telephone:  202-942-5000 | Covington & Burling LLP |
| Facsimile:  202-942-5999 | 1201 Pennsylvania Avenue, NW |
| | Washington, DC 20004-2401 |
| | Telephone:  202-662-5985 |
| | Facsimile:  202-662-6291 |

*Attorneys for BP Exploration & Production Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Defendants' Joint Local Rule 56.2 Statement Controverting the Local Rule 56.1 Statement of the Mexican States has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 4th day of January, 2013.

*/s/     Phillip A. Wittmann*

20007433.1

1116025v1