**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER<br>MAGISTRATE JUDGE |
| …………………………………………... | : | SHUSHAN |

**BP'S MEMORANDUM IN OPPOSITION TO TRANSOCEAN'S MOTION IN LIMINE TO PRECLUDE THE INTRODUCTION OF EVIDENCE REGARDING INSTANCES OF PRIOR ALLEGED IMPROPER CONDUCT UNRELATED TO THE INCIDENT**

Transocean's Motion[1] attempts to take the Court's prior February 9, 2012 Order,[2] which excluded evidence of ***non-drilling*** prior accidents dissimilar to the facts of this case, and expand it to exclude evidence of Transocean's prior offshore drilling accidents that were ***substantially similar*** to the events encountered at Macondo.  Transocean has requested an order "precluding parties from introducing evidence (including but not limited to, testimony, documents, and expert opinions) concerning prior incidents in which Transocean's conduct was allegedly unsafe, negligent, or otherwise inappropriate."  (Transocean Mot. at 5.)  Thus, the order requested by Transocean would exclude any evidence of prior incidents, regardless of the similarity between those accidents and the Macondo accident.

As explained more fully below, unlike the evidence excluded by the Court's February 2012 Order, the evidence that Transocean seeks to exclude through its Motion relates to incidents that occurred under substantially similar circumstances and involved substantially

---

[1] Transocean's Mot. in Limine to Preclude the Introduction of Evidence Regarding Instances of Prior Alleged Improper Conduct Unrelated to the Macondo Well Incident, Jan. 18, 2013 (Rec. Doc. 8287).

[2] Order and Reasons Regarding Mots. *In Limine* to Exclude Instances of Prior Alleged Improper Conduct and Prior Adverse Criminal, Civil, or Regulatory Proceedings Feb. 9, 2010 (Rec. Doc. 5634) ("February 2012 Order").

similar components as those involved in the Macondo incident.   Specifically, the other incidents of which Transocean seeks to exclude evidence took place on offshore drilling rigs, each of which were owned by Transocean and operated by its rig personnel.   Because of the similarities between the incidents discussed in the materials Transocean seeks to exclude and the issues that will be tried in Phase I, the materials Transocean seeks to exclude do not present a risk of undue delay, waste of time, or the presentation of cumulative evidence that drove the Court's February 2012 Prior Incidents ruling.   (Feb. 2012 Order at 4-5.)   Unlike the documents relating to land-based incidents excluded by the February 2012 Order, the evidence Transocean seeks to exclude relates to precisely the same kind of operations (*i.e.*, offshore drilling activities) as those undertaken by the *Deepwater Horizon* at Macondo.   These Transocean prior incidents speak directly to the expectations and responsibilities of Transocean personnel on these very same types of rigs, engaged in these very same kind of operations, as at Macondo.

For example, the exclusion Transocean has requested would potentially apply to evidence of the history of kicks taken across Transocean's fleet as well as numerous prior accidents where Transocean rigs — working for operators other than BP — failed to detect kicks, lost control of wells, and had drilling mud "unload" out of the drilling riser and on to the rig floor.   In these documents Transocean seeks to exclude, it admits the prevalence of kicks in offshore drilling irrespective of the operator, admits the scope of its own responsibilities for well control during those drilling events, and admits what relevant portions of Transocean's operative training and well control policies apply (the same drilling policies that applied to Macondo), thus admitting the operative standard of care for a drilling contractor on a deepwater drilling rig to detect and respond to a kick.

All of this evidence bears directly on disputed matters before the Court, and directly responds to Transocean's attempt to minimize or shift responsibilities that it readily admits in its own documents.  Moreover, the majority of the evidence that Transocean seeks to exclude has been present in the case *before* February 2012, and there is not a proper basis for Transocean to bring its motion now.  Transocean's motion should be denied for two reasons:

*First*, Transocean's motion is untimely.  The basis for Transocean's motion is not new: this same motion could have been made prior to the first trial setting.  Although certain of the documents Transocean cites in its Motion were added to the Trial Exhibit List in the parties' recent supplements, numerous examples of similar documents were on the Trial Exhibit List when the trial was continued last February.  The motion is therefore barred by Paragraph 4 of Pre-trial Order 54 (Dec. 7, 2012, Rec. Doc 8080) ("December 2012 Order") ("no new pre-trial motions or motions in limine shall be filed concerning any witness, exhibit, or matter that was produced or identified prior to the February 27, 2012 first trial setting").

*Second*, in contrast to BP's prior motion and the Court's February 2012 Order, which addressed evidence *unrelated* to drilling a deepwater well, Transocean's motion seeks to exclude evidence that *bears directly* on Transocean's conduct with regard to drilling operations and safety — circumstances substantially similar to those at issue in this case.  There is no basis to exclude this evidence, which bears directly on Transocean's responsibilities and actions (and its admissions of the same) as a drilling contractor both generally and with respect to actions taken leading up to and during offshore well control events.

## BACKGROUND

Transocean was the drilling contractor on the *Deepwater Horizon* at the Macondo well. At Macondo, Transocean had primary responsibility for well control on the rig, and

Transocean's safety management system controlled on the rig. Those facts are fundamental to the Phase One Trial, but are disputed by Transocean. Transocean's motion seeks to exclude a number of documents where Transocean admits those precise responsibilities with respect to prior similar well control drilling accidents. The documents contain admissions by Transocean about its experience as a drilling contractor, the standard of care applicable to Transocean in that capacity, the duties and responsibilities of the Transocean crew -- including Transocean's admissions as to its expectations of its own personnel in a well control situation – and lessons learned by Transocean in the course of incidents that took place under circumstances substantially similar to Macondo. The following are examples of exhibits that were *on the original Trial Exhibit List in February 2012*, but would be encompassed within what Transocean now seeks to exclude by its motion:

**Transocean's Summary of Kick Events on All Rigs from 2005 to 2009 and Six Riser Unloading Events in 2009:** TREX-004255, Ex. A, is a July 12, 2010 email from Barry Braniff to Bill Ambrose attaching Transocean's Well Control Events and Statistics, Annual Report 2009. This document demonstrates the prevalence of kicks in deepwater drilling -- *185* of them between 2005 and 2009 -- their relative size, and the operator for whom the rig was working when the kick took place. *(Id.* at TRN-INV-01143146). In the report, Transocean admits that: "*Failure to limit a kick to less than 20bbls is less than ideal*. … These can be avoided through the *application of fundamental well control practices such as treating every positive indicator as a kick, shutting in quickly and taking returns through the choke whenever in any doubt whatsoever*." *(Id.* at TRN-INV-01143147-48) (emphasis added). In addition, the document describes that there were six kicks in 2009 that developed into riser unloading events on Transocean rigs between December 2008 and December 2009. Transocean comments

specifically regarding the risk of these events, and the standard of care owed by Transocean for

mitigating                                                                                         them:

> **2.2    Riser unloading events, 2009**
>
> Before reviewing the data related to actual kick events for 2009 in the next section, it is worth briefly mentioning the increasing trend seen in 2009 of drilling risers being either partially or completely evacuated (or unloaded) due to gas being circulated above subsea BOP stacks.
>
> From December 2008 until year-end 2009, this type of event occurred 6 times on Transocean rigs. It is particularly hazardous due to the uncontrolled release of mud and gas through the rotary table and the potential for ignition, either on the rig floor or further down the flow line in the shaker house.
>
> **NOTE**
> - Rigs that experienced riser unloading events include ATN, 702, MGH, DD1, DAS & 711.
> - Oil-based or synthetic-based mud was being used in 4 of the 6 events.
>
> Riser unloading events can be avoided through the application of fundamental well control practices such as treating every positive indicator as a kick, shutting in quickly and taking returns through the choke whenever in any doubt whatsoever.

In this document, Transocean admits that these well control principles are fundamental

to Transocean's core mission as a drilling contractor, and that the mitigation of a riser unloading

event is "the application of fundamental well control practices."  (Ex. A at TRN-INV-01143154).

This same admission is present in TREX-007842, in which a Transocean employee states:

"There should be no reason whatsoever that we would continue to experience well control issues

as we have with several of the recent incidents. ***Drilling wells is what we do, and while well***

***control might not be a normal daily activity, it is a common hazard, to which we train***

***ourselves to take precautions and manage the risks***." *Id.* The document also contains the

statement that "***Whether drilling, tripping, logging or conducting any other well activity we***

***should be continuously alert to the signals from the well***." *Id.*

**Transocean's April 2010 Advisory About the December 2009 Sedco 711 Drilling**

**Accident:**  Just one week before the Macondo incident, Transocean issued an Operations

Advisory to its fleet regarding the loss of well control created as a result of the Sedco 711 (a

North Sea well) control event while operating for Shell.  The topics discussed in that advisory

5

track the issues at the core of this dispute.  The immediate causes of the incident discussed there
were: 1) "failure of the down-hole barrier;" 2) "failure to identif'y the initial influx;" and 3)
"failure to close in the well prior to the influx reaching the BOPs."  (TREX-001520 at TRN-
OIG-00258938 (attached as Exhibit B).)  Other documents issued by Transocean regarding that
same Sedco 711 incident alerted its personnel to the importance of monitoring the well control
integrity of mechanical barriers in the well (TREX-001523) and emphasized that "*[t]ested
barriers can fail*," high vigilance is required when "going underbalanced," and highlighted
"*what the kick indicators are when not drilling*."  (TREX-001525; TREX-047235; *see also*
TREX-007533 (emphasis added; attached as Exhibits C, D, E and F, respectively).)   This
"lessons learned" advisory of April 5, 2010, was intended to be transmitted to Transocean's Gulf
of Mexico rigs, including *Deepwater Horizon*, but through a manager's error it was not sent.
Were the Court to grant Transocean's motion, these documents would be excluded even though
they bear directly on issues at the core of this litigation and contain admissions by Transocean
that it understood the nature and implications of the types of operations being undertaken at
Macondo at the time of the accident.

**Transocean's February 20, 2009 Well Control Incident Where Pumps Were Off and
Use of the Diverter Was Identified as a Transocean Rig Training and Well Control Manual
Issue:** On February 20, 2009, Transocean had a well control incident with the riser unloading on
the *M.G. Hulme Jr.* rig, where a kick occurred with the drilling pumps off and there was a failure
to use the rig's overboard diverter.  Transocean would seek to exclude documents relating to this
incident, including TREX-048092, where Transocean's Steve Hand observed as to the *Hulme*
incident that: "*I agree they did not notice the original kick that occurred when the pumps were
off.  When the well started to flow (riser and well unloading as the gas expended in the riser),*

*as far as the driller knows this is the kick . . . . so his first action should be to close the BOP as per his posted procedure*." (Attached as Exhibit G.)

Similarly, in TREX-005650, a March 26, 2009 Incident-Investigation Report relating to the February 20, 2009 *M.G. Hulme Jr.* well control incident, Transocean highlights the importance of training regarding the use of the diverter and the need for Transocean to improve in this area of its training, indicating:  "Well Control training and Well Control manual does not adequately cover the procedures for closing in a well during a blowout situation; also the use of the diverter is not adequately covered."  (Ex. G at TRN-INV-01143048) Transocean also seeks to exclude TREX-02194, a May 20, 2009 email from Larry McMahan -- a Transocean executive who will testify live at this trial on related topics -- who stated with respect to the *M.G. Hulme Jr.* incident:  "It amazes me that as a company we [Transocean] are even talking about equipment as simple and fundamental is [sic] Flow Show Indicators. . . . *These are the basics and if we cannot get this correct, we are never going to be the world premier drilling contractor we expect to be*."

Additional documents cited in Transocean's motion reflect Transocean's admissions as to its own safety and well control responsibilities on the rig under circumstances substantially similar to those at issue in this litigation.  These include:

- <u>**Transocean's Identification of Complacency As A Well Control Issue:**</u>
  TREX-026009.a-d, TREX-026014, and TREX-048183 discuss a blowout that occurred on the *Jim Cunningham* rig at a well off the coast of Northern Egypt in August 2004.  (Attached as Exhibits H, I and J, respectively.)  These exhibits include a discussion of Transocean's recognition of "an overall complacent attitude" on the rig and conclusion that "key personnel did not provide leadership and competent oversight and guidance to ensure all parties fulfilled their respective responsibilities.  This put the personnel and rig at extreme risk, and is considered gross negligence."  Similar statements can be made of the failings of the Transocean rig crew at Macondo; these documents show that when it discusses such failings internally, Transocean concedes that this type of performance falls short of fulfilling its duties as the drilling

contractor.  Specifically, like the Macondo drill crew, the team did not "heed clear and specific warnings in the drilling program. . . . It is rig managements and key drilling personnel's responsibility to review well programs and properly address known risks." (*Id.*)

- **Transocean's Admission of the need for "Strict Adherence" to its Procedures to Avoid Well Control Incidents**. TREX-026025; TREX-026025.b-c;  TREX-063187;  TREX-063188;  TREX-063189 and TREX-063190 relate to a well control incident on the *Deepwater Expedition* while drilling a well off the eastern shore of India in July and August 2009.  These exhibits discuss the  lessons learned from that incident, which included that "[a]ctions taken during the course of this section were contrary to Transocean well control policy and could have resulted in a serious escalation of events," and that "*[s]trict adherence to the procedures contained within the Transocean well control handbook is not optional.*  Any deviation to the well control procedures must be addressed using the Transocean management of change process." (TREX 026025, 063188)  So too here: the evidence and testimony is consistent in highlighting that had the Transocean rig crew acted upon the anomalies seen in the well data during the final hour prior to the blowout, that this accident could have been avoided.

- Also included among Transocean's cited exhibits are e-mails regarding another well-control incident in the North Sea in 2004 (TREX-026029), a BOP failure off the coast of India (TREX-026003), and several HSE documents relating to various fatalities and injuries on Transocean rigs (TREX-026012;  TREX-048249;  TREX-026017;  TREX-026018;  TREX-026023; TREX-063193; TREX-048200).

## ARGUMENT

## I.    **Transocean's Motion is Untimely.**

Transocean's motion could and should have been made prior to the February 2012 trial setting.  Only two of the several exhibits Transocean cites in its Motion were produced after February 27, 2012, and as set forth above, numerous examples of documents relating to Transocean's prior incidents have been on the Trial Exhibit List since well before the continuation of the first trial date.  The Court's December 2012 Order is clear:  "[N]o new pre-trial motions or motions *in limine* shall be filed concerning any witness, exhibit, or matter that was produced or identified prior to the February 27, 2012 first trial setting.  The Court will only entertain pre-trial motions and motions in limine concerning witnesses, exhibits, and matters

which were identified, produced, or arose after February 27, 2012." (*Id.* at 3)   Transocean's motion does not meet the Court's criteria.

## II.      Unlike BP's Prior Motion, Transocean's Motion Seeks to Exclude Relevant, Admissible Evidence.

Transocean suggests that its motion is merely a reprise of BP's motion and this Court's Order on prior incidents.  The Court's February 2012 Order and BP's prior motion are expressly to the contrary.  BP's motion concerned evidence relating to a fire at a chemical plant, incidents at a petrochemical facility, and a pipeline rupture – the basis for BP's request to exclude this information and the reason articulated by the Court in doing so is that ***none of that information related to the drilling of an oil well***.  As this Court observed in the February 2012 Order: "The prior incidents and the Macondo incident are remote in time.  The prior incidents were all land-based, while the Macondo incident occurred in the Gulf of Mexico."  (Feb. 2012 Order at 5.)

The Fifth Circuit has recognized that "[e]vidence of similar accidents occurring under substantially similar circumstances and involving substantially similar components may be probative . . . ." *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1082 (5th Cir. 1986).  The evidence Transocean seeks to exclude in its Motion concerns much of the very same types of conduct at issue with regard to Transocean's role and responsibilities on the *Deepwater Horizon* at Macondo.  In its motion, Transocean cherry picks a few aspects of certain documents that discuss individual personal injuries and minor accidents and then argues that these facts are irrelevant.  These arguments are red herrings.

As the documents described above show, Transocean's motion is not actually directed at these one-off examples, but at a number of documents that discuss and otherwise illustrate Transocean's specific and continuing responsibilities with regard to well control on underwater drilling rigs and the processes and procedures its employees are (or should be) instructed to

9

follow with regard to monitoring, kicks, activation of a BOP, and other specific issues highly relevant to what occurred on the *Deepwater Horizon*.  Simply put, Transocean is **not** seeking to exclude irrelevant evidence.  It is seeking to exclude highly probative information that goes well beyond both the "slip and fall" documents it describes, and the unrelated land-based incidents that gave rise to BP's motion.

Moreover, the evidence Transocean seeks to exclude does not raise the same concerns that drove the Court's ruling on BP's motion.  In the case of BP's motion, the Court was concerned that it would engender "a trial within a trial" as the parties jousted as to what occurred in the other incidents and who was responsible – whether BP acted improperly and whether those incidents made it more likely BP had acted improperly at the Macondo well.  (Feb. 2012 Order at 5)  The evidence Transocean seeks to exclude is different.  The documents and other evidence Transocean seeks to exclude are not being introduced to show that Transocean's conduct caused other incidents, but that ***Transocean itself, in the wake of these incidents, described its own role and responsibility with respect to well control and safety in a manner contrary to the position it has taken in this litigation***.  The statements in these documents reveal that under substantially similar circumstances, when Transocean personnel failed to detect the signs of a kick or take appropriate actions to shut in a well, Transocean management condemned this conduct as falling short of Transocean's responsibilities as the drilling contractor and its training of its personnel.  These e-mails, reports, and other evidence, in which Transocean admits how its employees should have acted to prevent or better control these incidents, directly contradicts Transocean's claim in this case that it had no responsibility for such events or could not have been expected to recognize them.

In sum, evidence of Transocean's acknowledgment of responsibility for well control and safety on other Transocean rigs is highly relevant to this case, and is not barred by FED. R. EVID. 403.  BP (and others) do not seek to admit this evidence to prove Transocean was negligent elsewhere, and is therefore negligent now.   BP simply seeks to introduce admissions by Transocean that bear directly upon Transocean's responsibilities on the *Deepwater Horizon*, its relevant policies, and its recommended actions with respect to kick detection and well control incidents.

## CONCLUSION

BP respectfully requests that the Court deny Transocean's motion to exclude evidence related to other Transocean incidents.


Dated:  January 25, 2013                        Respectfully submitted,

                                                /s / Don K. Haycraft

                                                Don K. Haycraft (Bar #14361)
                                                R. Keith Jarrett (Bar #16984)
                                                LISKOW & LEWIS
                                                One Shell Square
                                                701 Poydras Street, Suite 5000
                                                New Orleans, Louisiana 70139-5099
                                                Telephone: (504) 581-7979
                                                Facsimile: (504) 556-4108

                                                and

                                                J. Andrew Langan, P.C.
                                                (andrew.langan@kirkland.com)
                                                Timothy A. Duffy, P.C.
                                                (tim.duffy@kirkland.com)
                                                Kirkland & Ellis LLP
                                                300 North LaSalle Street
                                                Chicago, IL 60654
                                                Telephone: (312) 862-2000
                                                Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration &*
*Production Inc. & BP America Production*
*Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 25th day of January, 2013.

/s/  Don K. Haycraft__