Buscar

INICIO   MAPA DE SITIO   VÍNCULOS   CONTÁCTANOS

CONSULTA TRADICIONAL   GLOBAL   TEMÁTICA   ESPECIALES   ÍNDICES   CONSULTA POR CIRCUITO   AYUDA

**Consulta tradicional. Ejecutorias.**

Actualizado a noviembre 2012

| Ejecutoria: P./J. 127/2005 | Semanario Judicial de la Federación y su Gaceta | Novena Época | **19199** | 1 de 1 |
|---|---|---|---|---|
| | | Pág. 1887 | | |

**CONTROVERSIA CONSTITUCIONAL 14/2001. MUNICIPIO DE PACHUCA DE SOTO, ESTADO DE HIDALGO.**

MINISTRA PONENTE: OLGA SÁNCHEZ CORDERO DE GARCÍA VILLEGAS.
SECRETARIAS: MARIANA MUREDDU GILABERT Y CARMINA CORTÉS RODRÍGUEZ.

México, Distrito Federal. Acuerdo del Tribunal Pleno de la Suprema Corte de Justicia de la Nación, correspondiente al día siete de julio de dos mil cinco.

VISTOS; Y,
RESULTANDO:

PRIMERO. Mediante oficio presentado el veinticinco de mayo de dos mil uno, en la Oficina de Certificación Judicial y Correspondencia de esta Suprema Corte de Justicia de la Nación, Miguel Ángel Ortega Jiménez, quien se ostentó con el carácter de síndico del Ayuntamiento de Pachuca de Soto, Estado de Hidalgo, promovió controversia constitucional en la que demandó la invalidez de las normas que más adelante se precisan, emitidas por las autoridades que a continuación se

indican:

II. Órganos demandados: 1. H. Congreso Constitucional del Estado Libre y Soberano de Hidalgo, con domicilio conocido en carretera México-Pachuca Km. 84.5, Centro Cívico, Pachuca de Soto, Hidalgo. 2. Gobernador Constitucional del Estado Libre y Soberano de Hidalgo, con domicilio conocido en Palacio de Gobierno del Estado, Plaza Juárez s/n, Pachuca de Soto, Hidalgo. 3. Secretario de Gobierno del Estado Libre y Soberano de Hidalgo, con domicilio conocido en Palacio de Gobierno del Estado, Plaza Juárez s/n, Pachuca de Soto, Hidalgo. 4. Director del Periódico Oficial del Gobierno del Estado Libre y Soberano de Hidalgo, con domicilio conocido en Palacio de Gobierno del Estado, Plaza Juárez s/n, Pachuca de Soto, Hidalgo. IV. Actos cuya invalidez se demanda: 1. La aprobación, sanción, promulgación, publicación, vigencia e indebida aplicación del artículo 148 de la Constitución Política del Estado Libre y Soberano de Hidalgo, mismo que a su letra dice: 'La Ley Orgánica Municipal determinará la organización y funcionamiento de las dependencias administrativas del Ayuntamiento, así como los requisitos, facultades obligaciones de sus titulares.'. También se reclama la falta de adecuación del citado artículo 148 constitucional local respecto a la reforma del artículo 115 de la Constitución Política de los Estados Unidos Mexicanos, publicada el 23 de diciembre de 1999 y que entró en vigor parcialmente el 23 de marzo del año 2000 y en pleno vigor el 23 de marzo de 2001. 2. La aprobación, sanción, promulgación, publicación y vigencia del Decreto 213 de la LVII Legislatura del H. Congreso Constitucional del Estado Libre y Soberano de Hidalgo que contiene La Ley Orgánica Municipal del Estado de Hidalgo, publicada mediante alcance al Periódico Oficial del Estado de Hidalgo, de fecha 16 de abril de 2001, y en lo particular los artículos señalados en el concepto de invalidez.

SEGUNDO. Los antecedentes que aduce la parte actora son los siguientes:

1. El día 26 de marzo de 2001, se aprobó por el H. Congreso del Estado de Hidalgo, el Decreto 213 de la LVII Legislatura que contiene la Ley Orgánica Municipal del Estado de Hidalgo, enviándose al Ejecutivo para su sanción y publicación, hecho del cual tuvimos conocimiento hasta la publicación de la misma en el Periódico Oficial del Estado de Hidalgo en los términos y fechas que se señalan en el punto siguiente. 2. En fecha no conocida con exactitud, se publicó en el Periódico Oficial del Gobierno del Estado de Hidalgo, una edición de alcance al Periódico Oficial de fecha 16 de abril de 2001, en donde aparece el Decreto 213 de la LVII Legislatura del H. Congreso Constitucional del Estado Libre y Soberano de Hidalgo que contiene la Ley Orgánica Municipal de Hidalgo, sancionado, promulgado y publicado por el gobernador de dicha entidad federativa. No dejamos de señalar la trampa del Poder Ejecutivo consistente en publicar materialmente en fecha posterior al 16 de abril de 2001 el mencionado decreto, mismo al que tuvimos acceso hasta después del 25 de abril de 2001. Lo anterior se aclara porque la publicación efectiva se retrotrae a una fecha en que la misma no existía materialmente (16 de abril de 2001), bajo

la trampa jurídica de la figura del 'alcance', misma que si bien señala la fecha que se 'alcanza' (16 de abril de 2001), no indica la fecha en la que dicho alcance se realiza materialmente; ello, con la única intención de acortar o dejar fuera de término a quien tuviera interés jurídico en impugnar dicha ley. Empero y a manera de protección, vengo a presentar la presente controversia dentro de los 30 días hábiles contados a partir de la fecha indebidamente alcanzada por la publicación de marras que lo es el 16 de abril de 2001.

TERCERO. Los conceptos de invalidez que aduce la parte actora son los siguientes:

Único. El Decreto 213 de la LVII Legislatura del H. Congreso Constitucional del Estado Libre y Soberano de Hidalgo que contiene la Ley Orgánica Municipal de Hidalgo y particularmente los artículos que adelante se señalan, violan en su conjunto el artículo 115 de la Constitución Política de los Estados Unidos Mexicanos vigente; así como el artículo segundo transitorio del decreto que aprobó la reforma del artículo 115 constitucional, publicada en el Diario Oficial de la Federación el 23 de diciembre de 1999, por las siguientes razones. La reforma constitucional al artículo 115 de 1999, creó la figura de 'leyes estatales en materia municipal', con el propósito de delimitar el alcance y contenido de las mismas para precisamente ampliar la facultad reglamentaria de los Municipios. Por tanto, no se trata de una facultad legislativa enunciativa como se encontraba dicho dispositivo constitucional antes de 1999, sino que fue intención del Constituyente Permanente acotar los contenidos de la ley municipal expedida por los Congresos Locales para favorecer la vida reglamentaria municipal y con ello, su autonomía. Dicha ley estatal en materia municipal, como es de su conocimiento, se encuentra prevista y delimitada en la propia Constitución en el nuevo artículo 115 constitucional, cuya fracción II dice lo siguiente: 'II. ... Los Ayuntamientos tendrán facultades para aprobar, de acuerdo con las leyes en materia municipal que deberán expedir las Legislaturas de los Estados, los bandos de policía y gobierno, los reglamentos, circulares y disposiciones administrativas de observancia general dentro de sus respectivas jurisdicciones, que organicen la administración pública municipal, regulen las materias, procedimientos, funciones y servicios públicos de su competencia y aseguren la participación ciudadana y vecinal. El objeto de las leyes a que se refiere el párrafo anterior será establecer: a) Las bases generales de la administración pública municipal y del procedimiento administrativo, incluyendo los medios de impugnación y los órganos para dirimir las controversias entre dicha administración y los particulares, con sujeción a los principios de igualdad, publicidad, audiencia y legalidad; b) Los casos en que se requiera el acuerdo de las dos terceras partes de los miembros de los Ayuntamientos para dictar resoluciones que afecten el patrimonio inmobiliario municipal o para celebrar actos o convenios que comprometan al Municipio por un plazo mayor al periodo del Ayuntamiento; c) Las normas de aplicación general para celebrar los convenios a que se refieren tanto las fracciones III y IV de este artículo, como el segundo párrafo de la fracción VII del artículo 116 de esta Constitución; d) El procedimiento y condiciones para que el Gobierno Estatal asuma una función o servicio municipal

cuando, al no existir el convenio correspondiente, la Legislatura Estatal considere que el Municipio de que se trate esté imposibilitado para ejercerlos o prestarlos; en este caso, será necesaria solicitud previa del Ayuntamiento respectivo, aprobada por cuando menos las dos terceras partes de sus integrantes; y e) Las disposiciones aplicables en aquellos Municipios que no cuenten con los bandos o reglamentos correspondientes. Las Legislaturas Estatales emitirán las normas que establezcan los procedimientos mediante los cuales se resolverán los conflictos que se presenten entre los Municipios y el Gobierno del Estado, o entre aquéllos, con motivo de los actos derivados de los incisos c) y d) anteriores.'. De la disposición descrita en relación con el tema que nos ocupa, podemos deducir que se generan los siguientes principios: 1. La ley estatal en materia municipal que prevé la fracción II del artículo 115 constitucional, se trata de una ley de objeto limitado, es decir, su contenido no debe rebasar los incisos a) al e), establecidos en dicha fracción, para así propiciar el robustecimiento de la actividad reglamentaria municipal. 2. El exceso respecto del principio anterior, genera su inconstitucionalidad, particularmente si invade materias de reglamentación municipal conforme al decreto del nuevo segundo párrafo de la fracción II del 115, y el espíritu del mismo ya transcrita en párrafos anteriores. Por tanto, es de competencia municipal que se expidan reglamentos: Que organicen la administración pública municipal. Que regulen el funcionamiento interno del Ayuntamiento (Cabildo). Que regulen las materias (fracción III del 115 C.), procedimientos, funciones y servicios públicos de su competencia. Aseguren la participación ciudadana y vecinal. En esta inteligencia, es inconstitucional la ley que invade tales materias, en perjuicio de la autonomía del Ayuntamiento para autorregularlas. 3. La ley debe prever las bases de la administración pública y de procedimiento administrativo, no así la organización específica de los Ayuntamientos. 4. Quedó reservado para el ámbito reglamentario todo lo relativo a la organización y funcionamiento del Ayuntamiento, así como la participación ciudadana, etc. 5. En materia de mayorías calificadas del Ayuntamiento, éstas sólo son posibles de establecerse en la ley, tratándose de disposición de bienes muebles (sic), o actos jurídicos que obliguen al Ayuntamiento más allá de su periodo de gobierno. Por tanto, es indebido imponer a los Ayuntamientos la toma de decisiones a partir de mayoría calificada fuera de estos temas. (Inmobiliario y actos jurídicos que comprometan a los Ayuntamientos más allá de su periodo constitucional). Asimismo, en esta materia, no es válido que las legislaturas actúen como resolutores en lugar de los Ayuntamientos. Lo anterior no se surte sólo de la lectura del decreto en cita, sino de los propios considerandos y motivos del dictamen de la reforma al 115 constitucional aprobados en la Cámara de Diputados el 17 de junio de 1999 y en la de Senadores el 25 de junio del mismo año, que a continuación volvemos a citar para ilustrar el anterior acierto: '4.2 La intención de esta Comisión Dictaminadora, consiste en fortalecer al ámbito de competencia municipal y las facultades de su órgano de gobierno. Por ello se propone tal y como lo plantean los autores de las iniciativas antes descritas, delimitar el objeto y los alcances de las leyes estatales que versan sobre cuestiones municipales. Lo que se traduce en que la competencia reglamentaria del Municipio, implique de forma exclusiva, los aspectos fundamentales para su desarrollo. De ahí que se defina y modifique en la fracción II, el concepto de bases normativas, por el de leyes estatales

en materia municipal, conforme a las cuales los Ayuntamientos expiden sus reglamentos, y otras disposiciones administrativas de orden general. Dichas leyes se deben orientar a las cuestiones generales sustantivas y adjetivas, que le den un marco normativo homogéneo a los Municipios de un Estado, sin intervenir en las cuestiones específicas de cada Municipio. En consecuencia, queda para el ámbito reglamentario como facultad de los Ayuntamientos, todo lo relativo a su organización y funcionamiento interno y de la administración pública municipal; así como para la regulación sustantiva y adjetiva de las materias de su competencia a través de los bandos, reglamentos, circulares y demás disposiciones de carácter general; mientras que las leyes estatales en materia municipal, contemplarán lo referente al procedimiento administrativo, conforme a los principios que enunciaren los nuevos incisos, y demás aspectos que contienen lo siguiente: 4.2.1 En el inciso a) se establecen los medios de impugnación y los órganos correspondientes, para dirimir controversias entre los particulares y la administración pública municipal, los cuales deberán conducir a la observancia de los principios de igualdad, publicidad, audiencia y legalidad. Se deja a salvo para cada Ayuntamiento decidir, a través de disposiciones reglamentarias, formas y procedimientos de participación ciudadana y vecinal. La ley, sólo contemplará los principios generales de este rubro. 4.2.2 En el inciso b), se establece que la ley deberá prever el requisito de mayoría calificada de los miembros de un Ayuntamiento en las decisiones relativas a la afectación de su patrimonio inmobiliario y la firma de convenios que por su trascendencia lo requieran; sin embargo, en dichas decisiones la Legislatura Estatal ya no intervendrá en la toma de la decisión a los Ayuntamientos. 4.2.3 En el inciso c), se señala que las leyes estatales incluirán normas de aplicación general para la celebración de convenios de asociación entre dos o más Municipios, entre uno o varios Municipios y el estudio incluyendo la hipótesis a que se refiere la fracción VII del artículo 116 constitucional, para fines de derecho público ... 4.2.4 En el inciso d), se prevé que la ley estatal contemple, con base en el ámbito de competencia exclusiva municipal, el procedimiento y las condiciones para que el Ayuntamiento transfiera la prestación de un servicio público o el ejercicio de una función a su cargo, en favor del Estado. Ello mediante la solicitud del Ayuntamiento a la legislatura, cuando no haya convenio con el Gobierno Estatal de que se trate. 4.2.5 En el inciso e), se establece que las Legislaturas Estatales expedirán las normas aplicables a los Municipios que no cuenten con los reglamentos correspondientes. Es decir, la norma que emita el Legislativo para suplir en estos casos, la falta de reglamentos básicos y esenciales de los Municipios, será de aplicación temporal en tanto el Municipio de que se trate emita sus propios reglamentos. Por último, la comisión considera necesario prever en un nuevo párrafo cuarto de la fracción II en análisis, que las Legislaturas Estatales establezcan las normas de procedimiento para resolver los conflictos que pudieran surgir entre los Gobiernos Estatales y los Municipios con motivo de la realización de los actos que se refieren los incisos b) y d) de la fracción segunda en comento. Para dirimir tales diferencias, el órgano competente será la Legislatura Estatal correspondiente. Esta previsión desde luego, se entiende sin perjuicio del derecho de los Gobiernos Estatales y de los Municipios de acudir en controversia constitucional en los términos del artículo 105 constitucional y su ley reglamentaria.'. Visto lo anterior, resulta que la ley aprobada parte de un error de

origen, al señalar como su objeto un concepto que no es el permitido por la Constitución, ya que el artículo 1o. de la ley impugnada, indica que su objeto es regular la organización y funcionamiento de los Municipios, en contravención con el 115, que señala que el objeto de la ley será establecer las bases generales de la administración pública y de procedimiento administrativo, dejando claro que precisamente el tema de la organización y funcionamiento interno de los Ayuntamientos es materia de la facultad reglamentaria municipal. Lo anterior no es un simple juego de palabras, ya que la ley aprobada a partir de tan erróneo objeto, violenta la autonomía municipal para auto-organizarse, y para determinar su régimen y funcionamiento interno, pues la citada ley regula prácticamente toda la vida municipal, desde sus dependencias, participación ciudadana, procedimientos particulares, pasando por generar un organigrama que mete en camisa de fuerza al Ayuntamiento. Bajo esta perspectiva, lo único salvable de la ley son los artículos que realmente se refieren a generalidades de la administración pública y a los incisos del a) al e) de la fracción II del artículo 115 vigente. Como se observa, en virtud de los principios que arroja la reforma al artículo 115 constitucional de 1999, consistentes en la delimitación de los alcances de la ley sobre materia municipal, así como el haber garantizado que el tema organizacional y de funcionamiento interno quedó para el ámbito reglamentario municipal, y si bien el ámbito de la Legislatura Estatal no desaparece, sí se acota favoreciendo el ensanchamiento y robustecimiento de la capacidad autonormativa (autonomía) de los Ayuntamientos, dada su naturaleza colegiada. A mayor abundamiento, debe decirse que la reforma genera un concepto novedoso de facultad reglamentaria autónoma. Autonomía es un término que proviene del latín auto (propio) y nomos (norma) y que consiste en la atribución de un organismo o persona jurídica para darse a sí misma normatividad con valor jurídico en un ámbito específico de competencia. Así, la reforma al artículo 115 de la Constitución Política de los Estados Unidos Mexicanos publicada en el Diario Oficial de la Federación el 23 de diciembre de 1999, atribuye a los Municipios mexicanos no sólo un ámbito propio de acción exclusivo, sino la facultad de normarlo por sí mismo a través de sus órganos de gobierno (Ayuntamientos), las materias de su competencia que van desde la organización de la administración pública municipal y el funcionamiento interno del Ayuntamiento, hasta la regulación sustantiva y adjetiva de las materias de su exclusiva competencia, pasando desde luego por la regulación de las relaciones del Gobierno Municipal con sus gobernados en materia de participación ciudadana y vecinal. Nace así la reglamentación municipal autónoma que se distingue de los reglamentos tradicionales en los que solamente se provee a la exacta observancia de la ley en la esfera administrativa. En efecto, los reglamentos autónomos tienen la característica de ser producidos por los Ayuntamientos en ejercicio pleno de una función materialmente legislativa en donde pueden crear derechos, obligaciones, procedimientos, sanciones, etc. Asimismo, su relación con la ley general es relativa exclusivamente a los datos comunes que deben tener en ciertos aspectos los Municipios de un mismo Estado. Sin embargo, tal como lo establece la fracción II del artículo 115 en cita, dichas leyes marco, al estar limitadas en su objeto a ciertas generalidades, nos da como resultado el que los Municipios puedan cuasilegislar a través de reglamentos u ordenanzas municipales, los aspectos necesarios para un desarrollo autónomo y

subsidiario de la vida municipal en las materias de su exclusiva competencia. De lo anterior se traduce que existirán dos dimensiones o estratos reglamentarios municipales: El autónomo que ya hemos explicado y el directivo que es la facultad reglamentaria tradicional en donde los Municipios se limitan a proveer en la esfera administrativa a la exacta observancia de una ley. En este último caso estamos ante materias que no son del ámbito exclusivo municipal, sea porque la Constitución Federal o la Local no lo hayan atribuido con tal carácter y entonces, la facultad normativa se ve limitada a tan sólo proveer la concreción de la ley pero sin poder crear derechos y obligaciones espontáneamente, sujetándose en todo el tiempo a la naturaleza jurídica y alcances de la ley especial de la materia que se trate. Por tanto, en la medida que la ley impugnada invade pues, en doble esquema los principios ya explicados, ya que por una parte va más allá de los que limitativamente les permite la Constitución a los Congresos Estatales en esta materia, y a la vez materialmente invaden temas como el de la organización y funcionamiento interno del Ayuntamiento al máximo detalle, no obstante ser materias que elConstituyente Permanente reservó para la función reglamentaria municipal; en tal grado de inconstitucionalidad se encuentran los artículos de la Ley Orgánica Municipal del Estado de Hidalgo cuya invalidez se solicita, mismos que adelante se señalan. Como se observará, la cantidad de artículos indebidamente estipulados hacen inviable e inconsistente la ley, misma que no acude al espíritu y sentido correcto de la reforma constitucional municipal de 1999. Para demostrar lo anterior, a continuación señalamos uno a uno los artículos de dicha ley y el principio o principios de la reforma al artículo 115 constitucional de 1999 que violentan, conforme a los párrafos precedentes del presente concepto de invalidez, en el entendido que los artículos parte de ellos que queden en puntos suspensivos ... son válidos y por ello no los transcribimos siquiera, mientras que el texto transcrito de los artículos se identificará con el o los principios que a nuestro juicio se conculcan. Decreto que contiene la Ley Orgánica Municipal del Estado de Hidalgo. Título primero. Disposiciones generales. Capítulo primero. Del Municipio. 'Artículo 1o. Las disposiciones de la presente ley son de orden público y de interés social, tienen por objeto regular la organización y funcionamiento de los Municipios, de acuerdo con lo dispuesto en los artículos 115 de la Constitución Política de los Estados Unidos Mexicanos y 115 al 148 de la Constitución Política del Estado de Hidalgo. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 2o. ...'. 'Artículo 3o. Los Municipios del Estado, estarán organizados y regularán su funcionamiento de acuerdo con lo dispuesto por la presente ley, en lo interno se regirán por su propia reglamentación que se ajustará a los principios establecidos en la Constitución Política de los Estados Unidos Mexicanos, en la del Estado, en esta ley y en las correlativas, así como en lo siguiente: I. Los Ayuntamientos quedan facultados para aprobar los bandos de gobierno y de policía, reglamentos, circulares y disposiciones administrativas de observancia general dentro de sus respectivas jurisdicciones, que organicen la administración pública municipal, regulen las materias, procedimientos, funciones y servicios públicos de su competencia y promuevan la participación de la sociedad. II. En los Municipios en los que no existan los bandos y reglamentos a que se refiere la fracción anterior, los Ayuntamientos aplicarán

las reglas que fije ésta u otra ley que se expidan en materia municipal, a fin de permitirles cumplir sus fines y ejercer todas las atribuciones establecidas en el artículo 115 de la Constitución Política de los Estados Unidos Mexicanos, el título IX de la Constitución Política del Estado de Hidalgo. III. Para dirimir las controversias que se generen entre la administración pública municipal y los particulares, en relación a los recursos administrativos, se sujetarán a lo dispuesto por el título octavo, capítulo tercero de esta ley, a partir de los principios de igualdad, publicidad, audiencia y legalidad. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 4o. ...'. 'Artículo 5o. Los Municipios no tendrán ningún superior jerárquico, serán independientes entre sí y no habrá ninguna autoridad intermedia entre éstos y los Poderes del Estado. Asimismo, podrán coordinarse y asociarse en los términos de la presente ley, para la más eficaz prestación de los servicios públicos o el mejor ejercicio de las funciones que les correspondan. Los acuerdos de coordinación o asociación serán aprobados por las dos terceras partes de los integrantes del Ayuntamiento. Cuando la asociación esté referida a Municipios de dos o más entidades federativas, se requerirá de la aprobación de las dos terceras partes de los miembros del Congreso del Estado. (Viola el (los) principio(s) marcado(s) como número(s) 5 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 6o. ...'. 'Artículo 7o. ...'. 'Artículo 8o. ...'. 'Artículo 9o. ...'. Capítulo segundo. De la población del Municipio. 'Artículo 10. Esta ley es obligatoria para todos los habitantes de los Municipios del Estado de Hidalgo, así como para los que se encuentren temporal o transitoriamente dentro de su territorio. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3, 4 y 5 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones en virtud de que hace aplicable la totalidad de la ley, sin excepción).'. 'Artículo 11. ...'. 'Artículo 12. ...'. 'Artículo 13. ...'. 'Artículo 14. ...'. 'Artículo 15. ...'. 'Artículo 16. ...'. 'Artículo 17. ...'. 'Artículo 18. ...'. 'Artículo 19. ...'. 'Artículo 20. ...'. Capítulo tercero. De la participación ciudadana. 'Artículo 21. ... (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 22. La organización, desarrollo y procedimientos de las anteriores figuras, se llevarán de conformidad a lo que establezca la ley de la materia o reglamentos municipales correspondientes, que al efecto se expidan. Son nulas de pleno derecho las convocatorias a plebiscito o referéndum, cuyo objeto pudiera conculcar garantías individuales. (Viola el (los) principio(s) marcado(s) como número(s) 2 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, en la medida en que faculta a que la organización, desarrollo y procedimientos de la participación ciudadana se regulen indistintamente en ley estatal o reglamento municipal, cuando su regulación sólo puede ser de reglamento municipal).'. Título segundo. Del Gobierno Municipal. Capítulo primero. De los Ayuntamientos. 'Artículo 23. ...'. 'Artículo 24. ...'. 'Artículo 25. ...'. 'Artículo 26. ...'. 'Artículo 27. ...'. 'Artículo 28. ...'. 'Artículo 29. ...'. 'Artículo 30. ...'. 'Artículo 31. ...'. 'Artículo 32. ...'. 'Artículo 33. ...'. 'Artículo 34. ...'. 'Artículo 35. ...'. 'Artículo 36. ...'. 'Artículo 37. Los Ayuntamientos deberán resolver los asuntos de su competencia colegiadamente y podrán funcionar con la asistencia de la mayoría de sus integrantes. Los miembros del Ayuntamiento

tendrán iguales derechos y sus acuerdos se tomarán por mayoría de votos, salvo en los casos en que la ley exija la asistencia total o mayoría absoluta o calificada de votos de los regidores. En las sesiones del Ayuntamiento sólo tendrán derecho a voz y voto, el presidente municipal, los síndicos y los regidores. Los Ayuntamientos celebrarán sesiones públicas ordinarias o extraordinarias e itinerantes, previo acuerdo de la mayoría de sus integrantes; las sesiones podrán ser privadas cuando así lo aprueben las dos terceras partes de sus integrantes. Podrán convocar a sesión extraordinaria las dos terceras partes de los regidores, cuando se requiera. En sesión extraordinaria, sólo se tratarán los asuntos objeto de la convocatoria. Las sesiones del Ayuntamiento, serán presididas por el presidente municipal y moderadas por quien designe el Ayuntamiento. Para la atención de los asuntos internos y la correspondencia, los Ayuntamientos podrán contar con un oficial mayor, nombrado mediante acuerdo de la mayoría de sus integrantes. El presupuesto de egresos contemplará la remuneración que le corresponda. Los Ayuntamientos, no podrán revocar sus acuerdos, sino en aquellos casos en que deban acatar sentencias jurisdiccionales, al resolver recursos administrativos o se advierta que se oponen a las demás leyes y reglamentos en vigor, o afecten el interés de la sociedad. Compete al presidente municipal, ejecutar los acuerdos del Ayuntamiento. Carecen de facultades de ejecución y de ejercicio de jurisdicción, las comisiones, los síndicos y los regidores. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3, 4 y 5 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 38. Las sesiones de los Ayuntamientos, constarán en un libro de actas en el cual deberán asentarse la denominación de los asuntos tratados, un extracto de ellos, así como el resultado y sentido de la votación. Cuando se refieran a normas de carácter general que sean de observancia municipal o reglamentos, se harán constar íntegramente en el libro de actas, las que deberán ser firmadas en ambos casos, por los miembros del Ayuntamiento. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 39. Para lo no previsto en esta ley, sobre el funcionamiento de los Ayuntamientos, se estará a las disposiciones de su respectivo reglamento interior o las demás leyes de la materia. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 40. Las facultades otorgadas por la Constitución Política del Estado de Hidalgo y esta ley al presidente municipal, deberán ejercitarse directa y personalmente bajo su estricta responsabilidad. Podrá delegar facultades en funcionarios municipales para proveer en la esfera administrativa al exacto cumplimiento de sus atribuciones, en los términos que fija la presente ley, los bandos de gobierno y de policía, y los reglamentos de la administración pública municipal. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 41. ...'. 'Artículo 42. ...'. Capítulo tercero. De las Juntas de Acción Cívica y Cultural. 'Artículo 43. En cada Municipio se integrará una Junta de Acción Cívica y Cultural, que tendrá como objetivos fundamentales los de organizar actos cívicos en las fechas históricas tradicionales y desarrollar eventos o actividades que tiendan a fomentar la educación cívica y la superación cultural de sus habitantes. (Viola el (los) principio(s)

marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 44. La Junta de Acción Cívica y Cultural, se integrará por el presidente municipal, dos secretarios vocales, un tesorero y sus respectivos suplentes. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 45. Los secretarios vocales, el tesorero y los suplentes, serán designados por el Ayuntamiento en el mes de enero de cada año, a propuesta del presidente municipal. Para su designación, preferentemente se tomará en cuenta su vinculación con el sector educativo o su pertenencia a las asociaciones o colegios de profesionistas y técnicos. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 46. Los Ayuntamientos, solventarán los gastos que eroguen las Juntas de Acción Cívica y Cultural, con los fondos que se destinen para ese objeto y con los que se arbitren por aportaciones públicas, sin que puedan dar inversión distinta a los fondos así recaudados, salvo el caso en que los Ayuntamientos de acuerdo con las Juntas de Acción Cívica, los apliquen en la construcción de obras materiales o la prestación de un servicio de notorio beneficio para el Municipio. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 47. El tesorero de la junta, administrará los fondos de ésta, rendirá en los meses de junio y diciembre de cada año un informe al Ayuntamiento, que contenga la lista de los donantes y el monto de lo recaudado por medio distinto, los gastos erogados, así como la declaración de que quedan los comprobantes a la vista del público para su examen. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 48. Los cargos de miembros de las Juntas de Acción Cívica y Cultural serán honoríficos. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. Capítulo cuarto. Facultades y obligaciones de los Ayuntamientos. 'Artículo 49. Son facultades y obligaciones de los Ayuntamientos: I. Proveer en la esfera administrativa lo necesario para la aplicación de esta ley, así como el mejor desempeño de las funciones que le señalen ésta u otras leyes, bandos y reglamentos. El Ayuntamiento y sus comisiones, podrán ser asistidos por los órganos administrativos municipales a fin de cumplir con sus atribuciones; II. Elaborar y aprobar, de acuerdo con esta ley y las demás que en materia municipal expida la Legislatura del Estado, los bandos de gobierno y de policía, reglamentos, circulares y disposiciones administrativas de observancia general dentro de sus respectivas jurisdicciones, que organicen el funcionamiento del Ayuntamiento y de la administración pública municipal, regulen las materias, procedimientos, funciones y servicios públicos de su competencia y aseguren la participación de la sociedad. En lo conducente y de conformidad a los fines señalados en el párrafo tercero del artículo 27 de la Constitución Política de los Estados Unidos Mexicanos, expedirán los reglamentos y disposiciones administrativas que fueran necesarios; III. Para el mejor cumplimiento de las funciones del Gobierno Municipal, los reglamentos que organizan y regulan la administración pública municipal y los servicios, podrán contemplar el

establecimiento de unidades de apoyo técnico en cada una de sus principales dependencias y tendrán como referente las que dispone la presente ley; así mismo, los Municipios establecerán en su presupuesto de egresos, una partida destinada a desarrollar programas para la formación, capacitación y actualización de los miembros del Ayuntamiento y de la administración municipal, a fin de mejorar sus capacidades de gobierno, técnicas y administrativas; las administraciones municipales, conforme a sus recursos económicos, establecerán un sistema de profesionalización para la gestión de recursos humanos, a través del desarrollo de metodologías de selección, capacitación y evaluación de funcionarios, a efecto de propiciar una mayor eficiencia y eficacia en el cumplimiento de sus funciones. (Viola el (los) principio (s) marcado (s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones). IV. ... V. ... VI. ... VII. ... VIII. ... IX. ... X. ... XI. ... XII. ... XIII. ... XIV. ... XV. ... XVI. ... XVII. Enajenar, a título gratuito u oneroso, los inmuebles de dominio privado del Municipio, únicamente cuando así lo aprueben las dos terceras partes de los integrantes del Ayuntamiento y previa localización y medición de la propiedad y avalúo por peritos; la venta se efectuará en los términos de la autorización y conforme a lo previsto por la ley de la materia. La donación de inmuebles sólo procederá, cuando se destinen a la ejecución de obras de beneficio común y mediante el acuerdo de las dos terceras partes de los integrantes del Ayuntamiento. (Viola el (los) principio(s) marcado(s) como número(s) 5 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones). XVIII. ... XIX. ... XX. ... XXI. ... XXII. ... XXIII. ... XXIV. ... XXV. ... XXVII. ... XXVIII. ... XXIX. ... XXX. ... XXXI. ... XXXII. (sic) Proponer al Congreso del Estado, en el ámbito de su competencia, las cuotas y tarifas aplicables a impuestos, derechos, productos, aprovechamientos, contribuciones de mejoras y las tablas de valores unitarios de suelo y construcciones que sirvan de base para el cobro de las contribuciones sobre la propiedad inmobiliaria; así como las tasas de las contribuciones adicionales. Los ingresos obtenidos por tasas adicionales, deberán destinarse íntegramente al objeto de su establecimiento y en ningún caso, por sí o de manera conjunta, rebasarán el 10% del monto que arroje la contribución base. Los Ayuntamientos y, en su caso, el Congreso del Estado, podrán solicitar los criterios técnicos de las dependencias del Poder Ejecutivo Estatal, a fin de respaldar sus proyectos y resoluciones (Nota: la parte actora señala la fracción XXXII, cuando el texto que transcribe corresponde a la fracción XXXI). (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, así como la libertad de hacienda ampliada en los términos de la reforma a la fracción IV del artículo 115, cuyo espíritu estableció en el considerando 4.4. del dictamen que no sería válido el acto del Congreso u otra autoridad que predeterminara el gasto de los egresos municipales al establecer el ingreso como indebidamente se establece en esta fracción). XXXIII. (sic) Formular y aprobar anualmente su presupuesto de egresos, el cual deberá ser aprobado por las dos terceras partes del Ayuntamiento (Nota: la parte actora señala la fracción XXXIII, cuando el texto que transcribe corresponde a la fracción XXXII). (Viola el (los) principio(s) marcado(s) como número(s) 5 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, así como el principio de libertad hacendaria que se robusteció en la nueva

fracción IV del artículo 115 constitucional). XXXIV. ... XXXV. ... XXXVI. ... XXXVII. ... XXXVIII. (sic) Autorizar, mediante el voto aprobatorio de las dos terceras partes de sus integrantes, las solicitudes de expropiación de bienes por causa de utilidad pública, como lo previene la Constitución Política del Estado de Hidalgo (Nota: la parte actora señala la fracción XXXVIII, cuando el texto que transcribe corresponde a la fracción XXXVII). (Viola el (los) principio(s) marcado(s) como número(s) 5 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones). XXXIX. ... XL. ... XLI. ... XLII. ... .'. 'Artículo 50. ...'. Capítulo quinto. Facultades y obligaciones de los presidentes municipales. 'Artículo 51. El presidente municipal, asumirá la representación jurídica del Ayuntamiento en los litigios en que éste fuera parte, cuando el síndico esté impedido legalmente para ello, o no la asuma por cualquier causa. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 52. Son facultades y obligaciones de los presidentes municipales, las siguientes: I. Sancionar y ordenar la publicación de bandos y reglamentos aprobados por el Ayuntamiento, así como publicar las leyes y reglamentos que se le encomienden. Para la sanción de los bandos y reglamentos, podrá convocar a referéndum en los términos previstos por los artículos 21 y 22 de esta ley; II. Convocar y presidir las sesiones del Ayuntamiento, conforme a esta ley; III. Dentro de su competencia, cumplir y hacer cumplir las disposiciones contenidas en las leyes y reglamentos federales, estatales y municipales; así como los acuerdos del Ayuntamiento; IV. Rendir al Ayuntamiento, en sesión pública, informe anual sobre la administración pública municipal y las labores realizadas, el 16 de enero de cada año; cuando por causas de fuerza mayor no fuera posible en esta fecha se hará en otra, previo acuerdo de la mayoría del propio Ayuntamiento, en el que se señalará fecha y hora para este acto, sinque exceda del día 31 de enero en los términos previstos en la Constitución Política del Estado de Hidalgo. En el caso de haberse designado Consejo Municipal, en los términos previstos en esta ley, el presidente del mismo, tendrá la representación del consejo y la obligación de rendir a éste, el informe anual sobre la administración pública municipal y las labores realizadas; V. Nombrar y remover al secretario general municipal, tesorero y demás funcionarios que se requieran, para el eficaz desempeño de la administración municipal; VI. Extender los nombramientos y tomar protesta a los delegados y subdelegados, electos por los pueblos, comunidades, colonias, fraccionamientos y barrios; así como suspenderlos por incumplimiento de sus funciones o por la comisión de delitos de los fueros común o federal y separarlos en definitiva cuando fueren encontrados responsables. Cuando faltare el delegado o subdelegado, solicitará a los vecinos una nueva elección. Nombrar y remover a los alcaides y al personal de seguridad y administrativo de acuerdo con las disposiciones aplicables, así como cuidar que las dependencias y oficinas municipales se integren y funcionen con eficiencia; VII. Vigilar la recaudación en todas las ramas de la hacienda municipal y que la inversión de los fondos municipales se apliquen con estricto apego al presupuesto; VIII. Autorizar a la Tesorería Municipal, en unión del secretario general, las órdenes de pago que sean, conforme al presupuesto; IX. Constituir el Comité de Planeación del Desarrollo Municipal, con la participación de representantes de los sectores público, social y privado, y de profesionistas y técnicos, que residan dentro de su territorio;

así como el Comité de Desarrollo Urbano Municipal, en los mismos términos; X. Cumplir con el plan estatal de desarrollo, el del Municipio y los programas sectoriales, regionales y especiales aprobados, respecto a lo que se refiere a su Municipio. A más tardar, noventa días después de tomar posesión de su cargo, el presidente municipal deberá presentar un plan de desarrollo municipal congruente con el plan estatal; XI. Visitar los poblados del Municipio, a fin de supervisar la obra pública y los servicios, así como para conocer su problemática e informar al Ayuntamiento o consejo para que sean tomadas las resoluciones y providencias correspondientes; XII. Auxiliar a las autoridades federales en la aplicación y cumplimiento de las disposiciones previstas en los artículos 27 y 30 de la Constitución Política de los Estados Unidos Mexicanos; XIII. Vigilar que los funcionarios y comisiones encargadas de los diferentes servicios municipales, cumplan puntualmente con su cometido; XIV. Recabar la autorización de la mayoría de los integrantes del Ayuntamiento, para el nombramiento del conciliador municipal y los titulares de las Unidades Técnicas de la Administración Municipal; XV. Mandar fijar las placas distintivas en las calles, jardines, plazas y paseos públicos, cuya nomenclatura haya sido aprobada por el Ayuntamiento; XVI. Tener bajo su mando los cuerpos de seguridad para la conservación del orden público, con excepción de las facultades que se reservan al presidente de la República y al gobernador del Estado, conforme a lo establecido por la fracción VII del artículo 115 de la Constitución Política de los Estados Unidos Mexicanos; XVII. Solicitar la autorización del Ayuntamiento para ausentarse del Municipio por más de quince días, si el plazo excediere de treinta días conocerá y resolverá el Congreso del Estado; XVIII. Enviar a las autoridades municipales y estatales, así como a las bibliotecas del Municipio, los ejemplares que contengan las leyes y reglamentos y demás disposiciones vigentes en materia municipal, con la debida oportunidad; XIX. Promover lo necesario para que los oficiales y funcionarios por delegación del Registro del Estado Familiar, desempeñen en el Municipio los servicios que les competen, en los términos establecidos en la Constitución Política del Estado y demás leyes de la materia y vigilar su cumplimiento; XX. Obligar crediticiamente al Municipio en forma mancomunada con el secretario general y el tesorero municipal. Cuando el pago de estas obligaciones vaya más allá del periodo de su ejercicio, el acuerdo deberá ser aprobado por las dos terceras partes de los integrantes del Ayuntamiento; XXI. Crear, o en su caso, modificar y suprimir las dependencias necesarias para el desempeño de los asuntos del orden administrativo y para la eficaz prestación de los servicios públicos municipales, previo acuerdo del Ayuntamiento y en los términos del reglamento correspondiente; XXII. Proponer al Ayuntamiento, la división administrativa del territorio municipal en delegaciones, subdelegaciones, sectores, secciones y manzanas o la modificación de la existente, así como reconocer la denominación política de las poblaciones y solicitar la declaratoria de nuevas categorías políticas al Congreso del Estado; XXIII. Solicitar, con el acuerdo de la mayoría de los integrantes del Ayuntamiento, la expropiación de bienes por causa de utilidad pública, como lo previene la Constitución Política del Estado de Hidalgo; XXIV. Formular anualmente la iniciativa de la Ley de Ingresos y remitirla al Congreso del Estado para su aprobación, previa autorización acordada por la mayoría del Ayuntamiento, a más tardar en la primera quincena del mes de noviembre; XXV. Formular anualmente el presupuesto de egresos y someterlo a la aprobación

del Ayuntamiento; XXVI. Publicar mensualmente, en el diario o periódico de mayor circulación local o en los estrados de la presidencia municipal, el balance de los ingresos y egresos del Ayuntamiento; XXVII. Otorgar o denegar, en su ámbito de competencia, licencias y permisos de uso del suelo, construcción y alineamiento, con observancia de los ordenamientos respectivos; XXVIII. Vigilar y fijar, en su caso, las condiciones que deban reunir todos los establecimientos industriales, comerciales y de servicios cuyo inadecuado funcionamiento pueda ocasionar daños o molestias a la comunidad y dar cuenta a la autoridad competente cuando corresponda; autorizar, denegar o suspender, con el acuerdo de las dos terceras partes de los integrantes del Ayuntamiento, los establecimientos donde se consuman bebidas alcohólicas y aquellos cuyas características coincidan con las referidas en el párrafo anterior y ajustar sus actos a lo establecido por la fracción XXVII del artículo 49 de esta ley; XXIX. Otorgar o denegar permisos para el establecimiento de mercados, tianguis y ferias, conforme a la normatividad vigente; XXX. Otorgar o denegar permisos, de acuerdo a la normatividad en vigor, para la realización de actividades mercantiles en la vía pública y designar su ubicación; XXXI. Proporcionar los servicios de seguridad a la población en general y mantener el orden en espectáculos, festividades, paseos y lugares públicos; XXXII. Conceder licencias y autorizar los precios a las empresas que promuevan espectáculos públicos y vigilar que en ellas se desarrollen los programas anunciados y autorizados conforme a las leyes y reglamentos de la materia; XXXIII. Ejercitar, por medio del síndico o apoderados especiales las acciones judiciales que competan al Municipio; XXXIV. Destinar los bienes del Ayuntamiento a aquellos fines que sean más adecuados para la buena administración municipal, previa autorización del mismo; XXXV. Nombrar representante jurídico en negocios judiciales que atañen al Municipio, cuando el síndico esté impedido legalmente para ello, o no la asuma por cualquier causa; XXXVI. Proveer en la esfera administrativa todo lo necesario, para la creación y sostenimiento de los servicios municipales; XXXVII. Disponer las transferencias de partidas que reclamen los servicios municipales, previa autorización de las dos terceras partes de los integrantes del Ayuntamiento, y observar las prioridades del desarrollo social y las Leyes de Planeación y la de Asentamientos Humanos y Desarrollo Urbano; XXXVIII. Conceder licencias y autorizaciones municipales para el funcionamiento de giros industriales, comerciales, turísticos y de servicios profesionales, con observancia de los ordenamientos respectivos, así como cancelarlas temporal o definitivamente por mal uso de ellas, o por violar las disposiciones reglamentarias; XXXIX. Informar al Ayuntamiento en forma oral o por escrito cuando fuese requerido para ello, independientemente del informe anual, sobre las labores realizadas durante el transcurso del año y del Estado que guarde la hacienda municipal; XL. Admitir o rechazar renuncias o licencias de los funcionarios y empleados municipales; XLI. Imponer administrativamente a los empleados y funcionarios de la administración municipal, las sanciones que correspondan de acuerdo con el reglamento interno de la administración municipal y la ley de la materia o lo dispuesto por las condiciones generales de trabajo; XLII. Ejercer las funciones del Registro del Estado Familiar o delegarlas en el funcionario idóneo que designe; XLIII. Proponer al Ayuntamiento las medidas que estime pertinentes para realizar las obras necesarias en el Municipio, en la inteligencia de que antes de principiar cualquier obra nueva, deberá terminar o

continuar las que haya recibido de la administración anterior como inconclusas o iniciadas, salvo que por circunstancias especiales fundadas o motivadas, se estime conveniente que dichas obras no se terminen o continúen; en cuyo caso, es necesario acuerdo expreso de las dos terceras partes de los integrantes del Ayuntamiento, previo dictamen de la unidad de obras públicas municipales; XLIV. Ejercer las funciones de presidente de la Junta Municipal de Reclutamiento y proceder a la inscripción de los jóvenes en edad militar, organizar el sorteo correspondiente y entregar el personal a las autoridades militares el primer domingo del mes de enero, de acuerdo con la Ley del Servicio Militar Nacional; XLV. Elaborar en coordinación con el síndico y por conducto del personal responsable, inventario minucioso de todos los bienes municipales, muebles e inmuebles. Este inventario se hará en un libro especial y en el mes de enero de cada año se revisará, para hacer constar las modificaciones que haya habido en el curso del año anterior; XLVI. Cuidar de la conservación del orden público, para lo cual dictará las medidas que a su juicio requieran las circunstancias; XLVII. Reunir oportunamente los datos estadísticos del Municipio; XLVIII. Cuidar de la conservación y eficacia de los servicios públicos y dictar las medidas que el caso amerite; XLIX. Exigir de los funcionarios y empleados municipales, el cumplimiento de sus obligaciones; L. Calificar las infracciones cometidas a las leyes, reglamentos y disposiciones municipales de observancia general y resolver sobre el recurso de revocación; LI. Expedir constancias de vecindad; LII. Conceder permisos para manifestaciones públicas, siempre y cuando se llenen los requisitos que para este efecto señala el artículo 9o. de la Constitución Política de los Estados Unidos Mexicanos; LIII. Celebrar contratos con particulares o instituciones oficiales en los términos señalados por la Constitución Política del Estado de Hidalgo, esta ley y las demás relativas; LIV. Someter a plebiscito los proyectos para la concesión de servicios públicos a cargo del Municipio, conforme a lo dispuesto en esta ley; LV. Resolver los recursos interpuestos en contra de sus acuerdos y resoluciones; LVI. Proponer al Ayuntamiento, la integración de Comisiones de Gobierno y Administración; LVII. Presentar ante la Contaduría Mayor de Hacienda del Congreso del Estado, su declaración patrimonial inicial, dentro de los sesenta días hábiles siguientes a la toma de posesión; de modificación anual, durante el mes de mayo de cada año; y de conclusión de encargo, dentro de los treinta días hábiles siguiente a ésta y LVIII. Las demás que le señalen la Constitución Política de los Estados Unidos Mexicanos, la Constitución Política del Estado de Hidalgo, esta ley y los demás ordenamientos de la materia. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 53. Para los efectos de la fracción I del artículo anterior, cuando se apruebe por el Ayuntamiento un reglamento o decreto y sea enviado al presidente para su sanción y publicación, dentro de diez días podrá devolverlo con observaciones procedentes para ser discutido nuevamente por aquél y si fuere confirmado por las dos terceras partes de sus miembros volverá al presidente quien deberá publicarlos sin más trámites y proveer en la esfera administrativa su debido cumplimiento. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 54. Se tendrá por aprobado como reglamento o decreto, el no devuelto dentro de los diez días siguientes a su

envío. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones). 'Artículo 55. Los presidentes municipales, se encuentran impedidos para: I. Aplicar los fondos, valores y bienes municipales a fines distintos a los que están destinados y excederse en el ejercicio del presupuesto de egresos. La transferencia de partidas, sólo podrá realizarse con la aprobación de las dos terceras partes de los integrantes del Ayuntamiento; II. Imponer contribución o sanción alguna que no esté señalada en las leyes, reglamentos y otras disposiciones legales vigentes; III. Ausentarse del Municipio por más de quince días sin licencia del Ayuntamiento; IV. Cobrar personalmente o por interpósita persona o empleado que no se encuentre facultado, multa o arbitrio alguno; V. Consentir o autorizar que alguna oficina distinta de la Tesorería Municipal, conserve o retenga fondos municipales; VI. Residir habitualmente durante su gestión fuera del territorio municipal que representa y VII. Abstenerse, con excepción de su esposa que podrá fungir como presidenta y directora del Desarrollo Integral de la Familia municipal, de intervenir o participar indebidamente en la selección, nombramiento, designación contratación, o promoción de familiares o parientes consanguíneos hasta el cuarto grado, por afinidad o civiles. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 56. ...'. 'Artículo 57. ...'. 'Artículo 58. ...'. 'Artículo 59. ...'. Título segundo. Del Gobierno Municipal. Capítulo sexto. De los síndicos. 'Artículo 60. Los síndicos de los Ayuntamientos, tendrán las siguientes facultades y obligaciones: I. La procuración, defensa y promoción de los intereses municipales; II. La representación jurídica del Ayuntamiento, en los litigios en que éste fuera parte; III. Cuidar que se observen escrupulosamente las disposiciones de esta ley, para el efecto de sancionar cualquier infracción que se cometa; IV. Presidir la Comisión de Hacienda Municipal, revisar y firmar la cuenta pública que mensualmente deberá remitirse al Congreso del Estado e informar por escrito al Ayuntamiento; vigilar y preservar el acceso a la información, que sea requerida por los miembros del Ayuntamiento; V. Revisar y firmar los cortes de caja de la Tesorería Municipal, y cuidar que la aplicación de los gastos, se haga con todos los requisitos legales y conforme al presupuesto respectivo; VI. Intervenir en la formación del inventario general de los bienes que integran el patrimonio del Municipio, a que se refiere el artículo 87 de esta ley; VII. Legalizar la propiedad de los bienes municipales; VIII. Demandar ante las autoridades competentes la responsabilidad en que incurran en el desempeño de sus cargos, los funcionarios y empleados del Municipio; IX. Vigilar los negocios del Municipio, a fin de evitar que se venzan los términos legales y hacer las promociones o gestiones que el caso amerite; X. Intervenir en la formulación y actualización del inventario general de bienes muebles e inmuebles propiedad del Municipio y hacer que se inscriban en un libro especial con expresión de sus valores y características de identificación, así como el destino de los mismos; XI. Vigilar que las multas que impongan las autoridades municipales, se haga de acuerdo a las tarifas establecidas e ingresen a la tesorería previo el comprobante que debe expedirse en cada caso; XII. Asistir a los remates públicos que se verifiquen, en los que tenga interés el Municipio, para procurar que se finquen al mejor postor y que se cumplan los términos y demás formalidades prevenidas por la ley; XIII. Tramitar las expropiaciones que por causa de

1/25/13 2:07 PM

utilidad pública fueren necesarias, por los medios que estime convenientes y previa autorización del Ayuntamiento; XIV. Dar cuenta al presidente y al Ayuntamiento del arreglo definitivo que se hubiese logrado en los asuntos, del Estado que guarden los mismos, a fin de dictar las providencias necesarias y XV. Las demás que le concedan o le impongan la ley, los reglamentos y acuerdos del Ayuntamiento. Los síndicos, concurrirán a las sesiones del Ayuntamiento, con voz y voto; percibirán su dieta de asistencia que señale el presupuesto de egresos del Municipio y no podrán, en ningún caso, desempeñar cargos, empleos o comisiones remuneradas en la administración pública municipal. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 61. ...'. Capítulo séptimo. De los regidores. 'Artículo 62. Son facultades y obligaciones de los regidores, las siguientes: I. Vigilar y atender el ramo de la administración municipal que le sea encomendado por el Ayuntamiento; así como los acuerdos y disposiciones tomadas y dictadas en las sesiones correspondientes; II. Estudiar y proponer soluciones y emitir su voto acerca de las medidas convenientes para la debida atención de los diferentes ramos de la administración municipal; III. Concurrir a las ceremonias cívicas y a los demás actos a que fueren convocados por el presidente municipal; IV. Vigilar que los actos de la administración municipal, se desarrollen en apego a los dispuesto por las leyes y normas de observancia municipal; V. Recibir, analizar y emitir su voto, respecto de las materias siguientes en: a) Los proyectos de acuerdo para la aprobación de los bandos, reglamentos, decretos y circulares de observancia general en el Municipio, que le sean presentados por el presidente municipal, los síndicos, los regidores o los vecinos del Municipio, refrendar aquellos que hayan sido sometidos a referéndum y cuidar que las disposiciones no invadan las competencias reservadas para el Estado o la Federación; b) Las solicitudes de expropiación por causa de utilidad pública, así como disponer la indemnización a sus propietarios, en cumplimiento a lo dispuesto por la fracción V del artículo 115 de la Constitución Política de los Estados Unidos Mexicanos y la fracción XVII del artículo 141 de la Constitución Política del Estado de Hidalgo y por la ley de la materia; c) La enajenación de bienes inmuebles del dominio privado del Municipio y observar las previsiones establecidas por la Constitución Política del Estado de Hidalgo; d) Los proyectos de acuerdo para celebrar contratos que comprometan el patrimonio del Municipio u obliguen económicamente al Ayuntamiento, en los términos de esta ley; e) Los proyectos de acuerdo para la firma de convenios de asociación con los Municipios del Estado, cuya finalidad sea el mejor cumplimiento de sus fines. Cuando la asociación se establezca para el mismo propósito con Municipios de otras entidades federativas, el Ayuntamiento deberá turnar el acuerdo de referencia al Congreso delEstado, para su autorización; f) Los proyectos de acuerdo para convenir con el Estado, el cobro de determinadas contribuciones o la administración de servicios municipales, cuando los motivos sean de carácter técnico o financiero y cuya finalidad sea obtener una mayor eficacia en la función administrativa; g) Los proyectos de acuerdo para la municipalización de servicios públicos o para aprobar las convocatorias para celebrar plebiscitos, a fin de concesionarlos, como lo refieren los artículos 21 y 22 y el título séptimo de esta ley; h) Las propuestas para el nombramiento del conciliador municipal, así como de los titulares de las unidades técnicas de las dependencias de la administración pública

municipal e i) Las propuestas de modificación de categorías correspondientes a los poblados y localidades del Municipio; VI. Solicitar al presidente municipal la información técnica, jurídica o financiera, a que hubiera lugar, para resolver los recursos de revisión de los particulares que se inconformen por una disposición administrativa, la inadecuada prestación de un servicio o la negación de un permiso o licencia; VII. Solicitar al presidente municipal, información sobre los proyectos de desarrollo regional y los de las zonas conurbadas, convenidos con el Estado, o los que, a través de él, se convengan con la Federación y los que se realicen por coordinación o asociación con otros Municipios; VIII. Vigilar que las peticiones realizadas a la administración pública municipal, se resuelvan oportunamente; IX. Solicitar información a los síndicos, respecto de los asuntos de su competencia, cuando lo consideren necesario; X. Vigilar que el presidente municipal cumpla con los acuerdos y resoluciones del Ayuntamiento; XI. Recibir, analizar y aprobar, en su caso, el informe anual que rinda el presidente municipal o el presidente del Consejo Municipal; XII. Cumplir con las funciones inherentes a sus comisiones e informar al Ayuntamiento de sus resultados; XIII. Realizar sesiones de audiencia pública, para recibir peticiones y propuestas de la comunidad; XIV. Acompañar al presidente municipal a los recorridos de supervisión de obras que realice y XV. Las demás que les otorguen las leyes y reglamentos. Los regidores, concurrirán a las sesiones del Ayuntamiento, con voz y voto; percibirán su dieta de asistencia que señale el presupuesto de egresos del Municipio y no podrán, en ningún caso, desempeñar cargos, empleos o comisiones remuneradas en la administración pública municipal. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. Capítulo octavo. De las comisiones. 'Artículo 63. Para estudiar, examinar y elaborar proyectos para solucionar los problemas municipales, así como vigilar que se ejecuten las disposiciones y acuerdos del Ayuntamiento, podrán designarse comisiones entre sus miembros, en la primera sesión ordinaria y en su caso, inmediatamente que sea necesario, sin que exceda de treinta días. Las actividades que desempeñarán las comisiones, estarán de acuerdo con la naturaleza del nombre que se les asigne, las cuales serán permanentes y especiales y contarán con todo el apoyo y facilidades de las autoridades y funcionarios municipales, quienes en ningún caso podrán negar la información que se les requiera y observarán lo dispuesto por el reglamento interior del Ayuntamiento. La Comisión de Hacienda Municipal, vigilará la recaudación en todas las ramas de la hacienda municipal y que la inversión de los fondos municipales se apliquen con estricto apego al presupuesto. Cada comisión estará conformada de tres integrantes, a excepción de la Comisión de Hacienda Municipal. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 64. Las comisiones se dividirán en permanentes y especiales: I. Son permanentes: a) De Hacienda Municipal; b) De Policía Preventiva, Tránsito y Vialidad; c) De Derechos Humanos y Prevención Social; d) De Gobernación, Bandos, Reglamentos y Circulares; e) De Asentamientos Humanos, Fraccionamientos, Licencias y Regulación de la Tenencia de la Tierra; f) De Salud y Sanidad; g) De Educación, Cultura y Fomento Deportivo y h) De Protección Civil. La Comisión de Hacienda Municipal, deberá estar integrada por el síndico y

cuando menos un regidor de cada fracción y II. Serán especiales, las que designe el Ayuntamiento, de acuerdo con las necesidades del Municipio. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 65. Las comisiones propondrán al Ayuntamiento, los proyectos de solución a los problemas de su conocimiento a efecto de atender todos los ramos del gobierno y la administración pública municipal. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 66. Las comisiones carecerán de facultades ejecutivas y podrán incorporarse a ellas, únicamente con voz, los vecinos que señale el Ayuntamiento y acepten voluntariamente. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. Capítulo noveno. Suplencia de autoridades municipales. 'Artículo 67. ...'. 'Artículo 68. ...'. 'Artículo 69. ...'. 'Artículo 70. ...'. Capítulo décimo. De la suspensión y revocación del mandato a los miembros del Ayuntamiento. 'Artículo 71. ...'. 'Artículo 72. ...'. 'Artículo 73. ...'. Título tercero. De los órganos auxiliares y de colaboración municipales. Capítulo primero. De las autoridades auxiliares. 'Artículo 74. Para los efectos de esta ley, son autoridades auxiliares municipales, los delegados y subdelegados. Para ser delegado o subdelegado municipal, se requiere ser ciudadano de la comunidad, saber leer y escribir, tener como mínimo dieciocho años de edad, cumplidos al día de su elección, no pertenecer al estado eclesiástico y tener un modo honesto de vivir. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 75. Las autoridades auxiliares municipales, actuarán en sus respectivas jurisdicciones, como delegados de los Ayuntamientos y tendrán las atribuciones siguientes: I. Cuidar el orden, la seguridad y la sanidad básica de los vecinos del lugar y reportar ante los cuerpos de seguridad o los titulares de Servicios Públicos y de Salud las acciones que requieren de su intervención; II. Vigilar el cumplimiento de las disposiciones reglamentarias que expida el Ayuntamiento y reportar, ante el órgano administrativo correspondiente, las violaciones a los mismos; III. Elaborar, revisar y tener actualizado el censo de población de la demarcación correspondiente; IV. Gestionar ante el presidente municipal, la satisfacción de los requerimientos fundamentales de la comunidad; V. Organizar el trabajo comunitario; VI. Auxiliar en todo lo que requiera el presidente municipal para el mejor cumplimiento de sus funciones, salvo en los asuntos político-electorales, por no ser competencia de éstos y VII. Las demás que le otorguen los reglamentos respectivos. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 76. Los delegados y subdelegados, serán electos por los vecinos de la localidad en el primer mes de cada año, durarán en su cargo un año y podrán ser removidos por causa justificada, a consideración de los vecinos de la comunidad. El nombramiento y remoción de delegados y subdelegados, se ajustará a lo previsto por las disposiciones legales vigentes y pueden ser ratificados por una sola ocasión. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de

repeticiones).'. Capítulo segundo. De los Consejos de Colaboración Municipal. 'Artículo 77. En cada Municipio, funcionará uno o varios Consejos de Colaboración Municipal, según lo acuerde el Ayuntamiento. El presidente municipal, con el acuerdo de la mayoría de los integrantes del Ayuntamiento, convocará públicamente a los vecinos del pueblo, comunidad, zona, demarcación, colonia, fraccionamiento o barrio, para la integración de los Consejos de Colaboración Municipal. Las organizaciones y agrupaciones representativas de los principales sectores sociales de la comunidad, podrán acreditar a su representante dentro de los consejos. Los delegados y subdelegados, están facultados para presidir los Consejos de Colaboración Municipal, si así lo aprueba la mayoría de los vecinos del pueblo, comunidad, zona, demarcación, colonia, fraccionamiento o barrio, en primera convocatoria pública, o los que asistan, en segunda convocatoria. En la organización, funcionamiento y supervisión de los Consejos de Colaboración Municipal, sólo podrá intervenir el Ayuntamiento. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 78. Los Consejos de Colaboración Municipal, serán órganos de participación social y podrán cumplir funciones de consulta, promoción y gestoría, los que tendrán a su cargo las siguientes facultades y obligaciones: I. Coadyuvar para el cumplimiento eficaz de los planes, programas, acciones y servicios municipales; II. Promover la participación y colaboración de los habitantes y vecinos, en todos los aspectos de beneficio social; III. Presentar propuestas al Ayuntamiento, para fijar las bases de los planes y programas municipales o para modificarlos en su caso y IV. Realizar funciones de contraloría social respecto de obras, acciones o servicios a cargo de la comunidad, en la forma y procedimientos que establezca la ley o reglamento correspondiente. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 79. Los Consejos de Colaboración Municipal, se integrarán con vecinos del Municipio en la forma y términos que determine el reglamento interior del Ayuntamiento. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 80. Los Consejos de Colaboración Municipal, tendrán la obligación de informar oportunamente al Ayuntamiento sobre sus actividades. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 81. El presidente municipal, con el visto bueno del síndico, podrá autorizar a los Consejos de Colaboración, la recepción de aportaciones económicas de la comunidad, para la realización de sus fines sociales. En este caso, los recibos serán autorizados y controlados por la Tesorería Municipal y sus fondos, se aplicarán al cumplimiento del fin acordado. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 82. Cuando uno o más de los miembros del Consejo de Colaboración Municipal, no cumplan con sus obligaciones y tengan suplentes, serán sustituidos por éstos; en caso contrario, el presidente municipal podrá solicitar a los vecinos, a las organizaciones sociales o agrupaciones civiles la designación de los sustitutos. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de

invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. Título cuarto. Capítulo único. De los organismos descentralizados y empresas de participación municipal. 'Artículo 83. ...'. 'Artículo 84. ...'. 'Artículo 85. ...'. 'Artículo 86. ...'. Título quinto. Capítulo único. Del patrimonio y la hacienda pública municipal. 'Artículo 87. ...'. 'Artículo 88. Los bienes de dominio público, son inalienables, imprescriptibles e inembargables y no están sujetos a acción reivindicatoria o de posesión definitiva o provisional, mientras no varíe su situación jurídica. Los bienes de dominio privado, podrán ser enajenados mediante acuerdo de las dos terceras partes de los integrantes del Ayuntamiento, previo avalúo que presente la Unidad de Obras Públicas, en términos de lo previsto por la Ley de Bienes del Estado de Hidalgo. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 89. ...'. 'Artículo 90. ...'. Título sexto. Régimen administrativo. Capítulo primero. De la Secretaría General Municipal. 'Artículo 91. En cada Ayuntamiento, para auxiliar en sus funciones al presidente municipal, se tendrá una Secretaría General Municipal. La Secretaría General Municipal, estará encomendada a un secretario que no será miembro del Ayuntamiento y su designación la hará el presidente municipal. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 92. Para ser secretario general municipal, se requiere: I. Ser hidalguense en pleno uso de sus derechos políticos y civiles; II. Ser vecino del Municipio, con residencia efectiva por lo menos de un año; III. Tener la formación académica o experiencia administrativa necesaria, así como capacidad y honestidad reconocidas; IV. Ser de reconocida honorabilidad; V. No haber sido condenado en proceso penal, por delito intencional y VI. No ser ministro de ningún culto religioso. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 93. Son facultades y obligaciones del secretario general municipal: I. Tener a su cargo el cuidado y dirección de la oficina y el archivo del Ayuntamiento; II. Controlar la correspondencia oficial y dar cuenta diaria de los asuntos al presidente para acordar el trámite; III. Estar presente en todas las sesiones del Ayuntamiento con voz informativa; IV. Expedir las copias, credenciales y demás certificaciones y documentos que acuerde el presidente municipal; V. Refrendar con su firma todos los documentos oficiales emanados del presidente municipal; VI. Formular y presentar al presidente municipal, relación mensual de expedientes que se hayan resuelto en dicho lapso en la presidencia, o se encuentren pendientes de resolución, con mención sucinta del asunto en cada caso; VII. Con la intervención del síndico, elaborar el inventario general y registro en libros especiales de los bienes muebles e inmuebles, propiedad del Municipio, de dominio público y de dominio privado, expresando todos los datos de identificación, valor y destino de los mismos; VIII. Formar y conservar actualizada una colección de leyes, decretos, reglamentos, circulares, Periódico Oficial del Gobierno del Estado, y en general de todas las disposiciones legales de aplicación en el Municipio y en el Estado; IX. Desempeñar la función de secretario de la Junta Municipal de Reclutamiento; X. Suplir las faltas del presidente municipal, en los términos de esta ley; XI. Distribuir entre los empleados de la secretaría a su cargo, las labores que deban desempeñar; XII.

Desempeñar los cargos y comisiones oficiales, que le confiere el presidente; XIII. Cuidar que los empleados municipales, concurran a las horas de despacho y que desempeñen sus labores con prontitud, exactitud y eficacia; XIV. Cumplir y hacer cumplir en la esfera de su competencia, los bandos de gobierno y de policía, el Reglamento Interior de la Administración y los Reglamentos de Seguridad Pública y Tránsito Municipal, el de Protección Civil y todas las normas legales establecidas y los asuntos que le encomiende el presidente municipal, para la conservación del orden, la protección de la población y el pronto y eficaz despacho de los asuntos administrativos municipales y XV. Comparecer ante el Ayuntamiento, cuando se le requiera. Para el desempeño de sus funciones y el desahogo de los asuntos legales, el secretario general municipal, estará asistido de una Unidad Técnica Jurídica a cargo de un profesionista o pasante de la licenciatura en derecho, que acredite satisfactoriamente sus estudios y cuyo nombramiento deberá ser autorizado por la mayoría de los integrantes del Ayuntamiento. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 94. El secretario general municipal, será suplido por la persona que designe el presidente municipal.'. Capítulo segundo. De la Tesorería Municipal. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones). Capítulo segundo. De la Tesorería Municipal. (Los siguientes artículos, del 95 al 125 inclusive, violan los principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, en razón de que se ocupan indebidamente de organizar toda la administración pública municipal, procedimientos para su integración y redistribución de competencias municipales, mismas que conforme a lo dicho y alegado, son de competencia reglamentaria municipal). 'Artículo 95. La Tesorería Municipal, es el único órgano de recaudación de los recursos financieros municipales, con las excepciones expresamente señaladas por la ley. Esta dependencia, estará a cargo de un tesorero municipal que será designado por el presidente.'. 'Artículo 96. Para ser tesorero municipal, se requiere: I. Ser ciudadano en pleno goce de sus derechos políticos y civiles; II. Tener conocimiento y la capacidad técnica suficiente para desempeñar el cargo; III. Ser de reconocida honorabilidad y honradez; IV. No haber sido condenado por delitos intencionales; V. Caucionar el manejo de los fondos y cumplir con los requisitos que señalen otras leyes protectoras de la hacienda municipal y VI. No ser ministro de algún culto religioso.'. 'Artículo 97. Los tesoreros municipales, tomarán posesión de su cargo, previo el corte de caja y auditoría que se practique, el cual será revisado por el presidente municipal y el síndico del Ayuntamiento y firmado por quien entregue y por quien reciba la Tesorería Municipal. En la misma diligencia, se entregarán y recibirán, respectivamente y por inventario, el archivo, los muebles, los útiles de la dependencia, los libros de registro anotados al día y la relación de deudores de todos los ramos de ingresos, así como la relación de obras en proceso, considerando el avance fiscal y financiero. El acta, la auditoría, los cortes de caja e inventarios que con tal motivo se levanten, se formularán por quintuplicado, para distribuir los respectivos ejemplares en la siguiente forma: Archivo de la tesorería, uno a las personas que entreguen, uno al tesorero que reciba, uno al presidente municipal y

uno al síndico. Para el desempeño de sus funciones, el tesorero municipal estará asistido por una Unidad Técnica de Finanzas y Contabilidad, cuya responsabilidad deberá recaer en un profesionista o pasante de las carreras de economía, administración o contaduría, que acredite satisfactoriamente sus estudios, cuyo nombramiento deberá ser autorizado por la mayoría de los integrantes del Ayuntamiento; el responsable del área referida, refrendará con su firma los documentos oficiales suscritos por el titular de la Tesorería Municipal.'. 'Artículo 98. El tesorero municipal, tendrá como facultades y obligaciones, las siguientes: I. Verificar, por sí mismo o por medio de sus subalternos, la recaudación de las contribuciones y toda clase de ingresos municipales, cobrar los créditos que correspondan a la administración pública municipal, de acuerdo con las disposiciones legales; II. Cuidar, que se haga con puntualidad el cobro de los créditos fiscales municipales, con exactitud las liquidaciones, con prontitud el despacho de los asuntos de su competencia, en orden y debida comprobación las cuentas de ingresos y egresos; III. Tener al día los libros de caja, diario, cuentas corrientes y los auxiliares y de registro que sean necesarios para la debida comprobación de los ingresos y egresos; IV. Llevar, por sí mismo, la caja de la tesorería, cuyos valores estarán siempre bajo su inmediato cuidado y exclusiva responsabilidad; V. Activar el cobro de los adeudos a favor del Municipio, con la debida eficiencia y cuidar que los rezagos no aumenten; VI. Proporcionar oportunamente al Ayuntamiento, todos los datos e informes que sean necesarios para la formulación del proyecto de Ley de Ingresos Municipales y del presupuesto de egresos, así como vigilar que dichos ordenamientos se ajusten a las disposiciones de esta ley; VII. Verificar, que las multas impuestas por las autoridades municipales, ingresen a la Tesorería Municipal; VIII. Solicitar se hagan a la Tesorería Municipal, visitas de inspección o auditoría; IX. Glosar oportunamente las cuentas del Ayuntamiento; X. Proponer al Ayuntamiento, las medidas o disposiciones que tiendan a sanear y aumentar la hacienda pública del Municipio; XI. Dar pronto y exacto cumplimiento a los acuerdos, órdenes y disposiciones del Ayuntamiento y del presidente municipal, que le sean comunicados en los términos de esta ley. Cuando el Ayuntamiento o el presidente municipal, ordene algún gasto que no reúna los requisitos legales, el tesorero se abstendrá de pagarlo, fundando y motivando por escrito su abstención. Si aquellos insistieren en la orden, también por escrito, el tesorero hará el pago bajo la responsabilidad del que dicte dicha orden; XII. Realizar junto con el síndico, las gestiones oportunas en los asuntos en que tenga interés el erario municipal; XIII. Remitir a la Contaduría Mayor de Hacienda del Congreso del Estado, las cuentas, informes contables y financieros mensuales dentro de los primeros quince días del mes siguiente; XIV. Presentar mensualmente al Ayuntamiento, el corte de caja de la Tesorería Municipal con el visto bueno del síndico; XV. Contestar oportunamente, las observaciones que haga la Contaduría Mayor de Hacienda del Congreso del Estado, en los términos de la ley respectiva; XVI. Cuidar que el despacho de la oficina, se haga el día y hora fijada por el reglamento interior o señalados por el Ayuntamiento o el presidente municipal; XVII. Comunicar al presidente municipal, las faltas oficiales en que incurran los empleados de su dependencia; XVIII. Cuidar bajo su responsabilidad el Estado y conservación de inmuebles, muebles, archivos, mobiliario, equipo de oficina, de cómputo y parque vehicular; XIX. Expedir copias certificadas de los documentos a su cuidado, en los

términos y condiciones que señale el acuerdo expreso del Ayuntamiento, o del presidente municipal; XX. Informar oportunamente al Ayuntamiento y al presidente municipal, sobre las partidas que estén próximas a agotarse, para los efectos que procedan; XXI. Realizar el padrón de contribuyentes municipales; XXII. Informar al Ayuntamiento y al presidente municipal, de los datos que le pidan y respecto de los arbitrios que tienen; XXIII. Comparecer ante el Ayuntamiento, cuando sea requerido; XXIV. Practicar, diariamente, corte de caja de primera operación en el libro respectivo e informar al presidente municipal; XXV. Emplear la facultad económico coactiva, para hacer efectivo los créditos fiscales y XXVI. Las demás que le asignen las leyes y reglamentos.'. 'Artículo 99. La inspección de la hacienda pública municipal, compete al Ayuntamiento, por conducto del síndico, en los términos de esta ley, o a la Contaduría Mayor de Hacienda del Congreso del Estado, cuando el Ejecutivo del mismo, sea aval de empréstitos o créditos concedidos a los Ayuntamientos o sea acreedor de estos últimos. El Congreso del Estado o la Diputación Permanente, podrán en cualquier tiempo, solicitar a la Contaduría Mayor de Hacienda, la práctica de visita de inspección, supervisión o auditoría.'. 'Artículo 100. La inspección de la hacienda pública municipal, se contraerá a lo siguiente: I. Examinar si la contabilidad se lleva en forma adecuada, legal y técnicamente y si se encuentra al corriente; II. Averiguar si se defraudan los intereses del erario municipal y las causas de que no se recaude lo que corresponde, y confrontar en la tesorería las partidas de entrada con los recibos que se hayan expedido a los contribuyentes y cotejarlos con los comprobantes formulados al efecto, por la presidencia municipal; III. Conocer el monto de los rezagos y los motivos por los cuales no se hicieron oportunamente los cobros y exigir que se hagan desde luego con las medidas de apremio que marca la ley; IV. Investigar si tanto el tesorero como sus empleados, cumplen con sus obligaciones y atienden al público con la debida diligencia; V. Examinar si se han cometido irregularidades en perjuicio del fisco municipal o de los contribuyentes y en su caso, señalar a los responsables; VI. Revisar el archivo de la tesorería, cerciorándose de que los expedientes se encuentren en orden y la correspondencia al corriente; VII. Observar el estado que guardan los muebles, útiles y enseres de la oficina; VIII. Tomar las medidas necesarias, para el aseguramiento de bienes en los casos de fraude al erario municipal, en tanto se hace la consignación correspondiente; IX. Examinar y hacer constar: a) Si hay raspaduras, enmendaduras o notas entre renglones en los asientos; b) Si los libros están autorizados y rubricados por quien corresponda; c) Si en las operaciones aritméticas y contables hay errores; d) Si los asientos de los diversos libros de la tesorería, concuerdan entre sí; e) Si los comprobantes del débito, justifican las respectivas partidas; si se cobraron impuestos que las leyes no autorizan y si se hicieron gastos que no están debidamente comprobados; f) Si los pagos se hicieron con puntualidad o hay algún adelanto o atraso en ellos y si las adquisiciones se hicieron de conformidad con la ley de la materia y g) Si los asientos se llevan al corriente; X. Las demás facultades que, en relación con la hacienda municipal, sean conferidas a la propia Contaduría Mayor de Hacienda del Congreso del Estado, en la ley orgánica respectiva.'. 'Artículo 101. Se concede acción popular, para denunciar ante el Ayuntamiento o el presidente municipal, la malversación de fondos municipales y cualquier otro hecho que se estime en contra de la hacienda municipal.'. Capítulo tercero. De la contraloría.

'Artículo 102. En cada Ayuntamiento, habrá una contraloría que tendrá por objeto la vigilancia y evaluación del desempeño de las distintas áreas de la administración municipal, para promover la productividad, eficiencia y eficacia, a través de la implantación de sistemas de control interno, adecuado a las circunstancias, así como vigilar, en su ámbito, el cumplimiento de la Ley de Responsabilidades de Servidores Públicos.'. 'Artículo 103. La contraloría, tendrá las siguientes facultades y obligaciones: I. Vigilar el exacto cumplimiento de las disposiciones legales y reglamentarias que regulen las funciones del Ayuntamiento; II. Vigilar la observancia de los procedimientos establecidos para el control interno del Ayuntamiento; III. Vigilar, en su ámbito, el cumplimiento de las normas establecidas por los organismos de control del Estado, como son: la Secretaría de Contraloría del Gobierno del Estado de Hidalgo y la Contaduría Mayor de Hacienda del Congreso del mismo; IV. Coordinar las auditorías generales o especiales, que deban realizarse por acuerdo del presidente municipal, en todas las áreas de la administración pública municipal; V. Estudiar y proponer, conjuntamente con el secretario general municipal, a las diversas dependencias de la administración pública municipal, mejoras a los sistemas de administración y control, que se consideren convenientes; VI. Dar seguimiento a programas de Gobierno Municipal; VII. Investigar cualquier situación de orden administrativo, que le solicite el presidente municipal; VIII. Rendir informe de sus actividades al presidente municipal; IX. Recabar las declaraciones patrimoniales de los servidores públicos que deban presentarla, de conformidad con la ley de la materia y X. Las demás que le señalen las leyes, reglamentos y acuerdos del Ayuntamiento, e instrucciones del presidente municipal. El titular de la Contraloría, deberá contar con estudios de educación media superior o su equivalente en la rama contable administrativa, como mínimo, debidamente acreditados ante el Ayuntamiento.'. Capítulo cuarto. De los servicios públicos. 'Artículo 104. Los Municipios, organizarán y reglamentarán la administración, funcionamiento, conservación o explotación de los servicios públicos. Se consideran, enunciativa y no limitativamente como tales, los siguientes: I. Agua potable, drenaje, alcantarillado, tratamiento y disposición de aguas residuales; II. Alumbrado público; III. Limpia, recolección, traslado, tratamiento y disposición final de residuos; IV. Mercado y centrales de abasto; V. Panteones; VI. Rastro; VII. Registro del Estado Familiar; VIII. Calles, parques y jardines y su equipamiento; IX. Seguridad pública, en los términos del artículo 21 de la Constitución Política de los Estados Unidos Mexicanos, Policía Preventiva Municipal y Tránsito; X. Protección de la flora, la fauna y el medio ambiente; XI. Los sistemas necesarios para la seguridad civil de la población; XII. Asistencia social; XIII. Sanidad municipal; XIV. Obras públicas; XV. Conservación de obras de interés social; XVI. Fomentar el turismo y la recreación; XVII. Proporcionar, reglamentar y vigilar toda clase de espectáculos y XVIII. Los demás que la Legislatura del Estado determine, según las condiciones territoriales y socioeconómicas de los Municipios; así como sus capacidades técnicas administrativas y financieras. Estos servicios, podrán prestarse con el concurso del Gobierno del Estado, cuando así lo soliciten las autoridades municipales, previa aprobación del Ayuntamiento y mediante convenio, en los términos de ley.'. 'Artículo 105. La prestación de los servicios públicos a cargo de los Ayuntamientos, podrá concesionarse; particularmente, aquellos que no afecten la estructura y organización municipal, ni a las personas físicas o morales. En

igualdad de circunstancias se preferirá a los vecinos del Municipio para otorgar la concesión. No serán objeto de concesión, los servicios de seguridad pública, tránsito, protección civil, Registro del Estado Familiar y sanidad.'. 'Artículo 106. Cuando los servicios públicos sean prestados directamente por el Ayuntamiento, serán administrados con la vigilancia del presidente o por la de los órganos municipales respectivos, en la forma que determinen esta ley, sus reglamentos, el Ayuntamiento o el presidente municipal.'. 'Artículo 107. Cuando los servicios públicos municipales, sean concesionados a particulares, se sujetarán a las disposiciones de esta ley, sus decretos y reglamentos, a las contenidas en la concesión y a las que determine el Ayuntamiento.'. Capítulo quinto. De las dependencias encargadas de los servicios públicos. 'Artículo 108. El presidente municipal, tendrá facultades para proponer, de acuerdo con las necesidades administrativas y con la disponibilidad de recursos financieros, las dependencias que sean indispensables para la buena marcha de los servicios públicos. La creación de cada dependencia, deberá hacerse por acuerdo que expida el Ayuntamiento, el cual señalará las funciones y competencias a que deban sujetarse. Las dependencias de la administración municipal, que no estén comprendidas en esta ley, estarán consideradas en el reglamento interior de la administración municipal o en el acuerdo respectivo.'. 'Artículo 109. Las dependencias encargadas de los servicios públicos en los términos de la presente ley, deberán contar con el personal suficiente para el desempeño de sus funciones.'. 'Artículo 110. Para ser jefe de una dependencia municipal, serán requisitos indispensables los siguientes: I. Ser ciudadano hidalguense; II. Ser de reconocida honestidad y honorabilidad; III. No tener antecedentes penales; IV. Contar con los conocimientos inherentes para el buen desempeño de su cargo y V. Tener instrucción secundaria, cuando menos.'. 'Artículo 111. El oficial del Registro del Estado Familiar, llevará a cabo los actos que le correspondan de conformidad con la ley de la materia y deberá observar las formalidades, el protocolo y los requisitos que se establecen para ellos. Los actos del Registro del Estado Familiar, podrán verificarse en horas ordinarias o extraordinarias, dentro o fuera de sus oficinas, pero no fuera de su jurisdicción.'. 'Artículo 112. El presidente municipal, vigilará que del Registro del Estado Familiar, se remita a la Dirección del Registro del Estado Familiar del Gobierno del Estado, dentro de los primeros quince días del mes de enero de cada año, el duplicado de los libros correspondientes.'. 'Artículo 113. Al titular de Obras Públicas, le corresponde: I. Llevar a cabo la planeación y programación de las obras que deba realizar el Ayuntamiento y su ejecución, cuando no deban ser sometidas a concurso; II. Hacer los estudios y presupuestos de las obras a cargo del Municipio; III. Intervenir en la forma en que el presidente municipal le indique, en las obras que el Municipio realice con participación del Estado o la Federación o en coordinación o asociación con otros Municipios; IV. Autorizar el uso del suelo y licencias de fraccionamiento que deba extender el presidente municipal, en los términos de las leyes federales y estatales en la materia; para ello, deberá observar las disposiciones correspondientes al desarrollo regional; así como expedir permisos para la construcción, ampliación o remodelación de casas, edificios, banquetas, bardas, conexiones de drenaje, etcétera y cuidar que los interesados observen los requisitos señalados por las leyes y reglamentos correspondientes, así como de que se cubran las contribuciones que se causen; V. Sancionar a las

personas que sin permiso o sin observar los demás requisitos se encuentren con obras en construcción; VI. Realizar avalúos; VII. Expedir constancia de alineamiento y números oficiales; VIII. Responder, personalmente, por las deficiencias que tengan las obras municipales que bajo su dirección se lleven a cabo; IX. Intervenir en la elaboración de los estudios y proyectos para el establecimiento y administración de las reservas territoriales del Municipio; X. Intervenir en la regularización de la tenencia de la tierra urbana y preservar el entorno ecológico, en las obras que se realicen; XI. Elaborar la propuesta de valores unitarios a que se refiere el último párrafo del artículo 50 de esta ley; XII. Comparecer ante el Ayuntamiento, cuando sea requerido y XIII. Asistir al presidente municipal, en las funciones técnicas del Comité de Planeación del Desarrollo Municipal. El titular de Obras Públicas de los Municipios, deberá ser un profesionista o técnico en la materia o, en su caso, deberá contar con el apoyo de una Unidad Técnica de Diseño, Cálculo y Ejecución de Obras, cuyo responsable acredite satisfactoriamente sus estudios y, en este caso, su nombramiento deberá ser autorizado por la mayoría de los integrantes del Ayuntamiento; el responsable de la unidad referida, refrendará con su firma los documentos oficiales, suscritos por el titular de Obras Públicas.'. 'Artículo 114. Los Ayuntamientos, por conducto de su presidente municipal o de las dependencias municipales de obras públicas o de planeación y urbanismo, ejercerán las funciones relativas a la planeación y urbanización de los centros y zonas destinados a los asentamientos humanos de su jurisdicción, con las atribuciones que les asignen las leyes federales y estatales en la materia y demás disposiciones legales aplicables.'. 'Artículo 115. El titular de Planeación y Urbanización, tendrá las siguientes facultades y obligaciones: I. Presentar propuestas al Ayuntamiento para la elaboración de planes y programas de urbanismo y formular la zonificación y el plan de desarrollo urbano, en su ámbito de competencia, conforme a la ley de la materia; II. Participar en la formulación de planes de desarrollo urbano y regional sustentables, en los que intervenga la Federación, el Estado u otros Municipios, en concordancia con los planes generales de la materia; III. Formular recomendaciones al Ayuntamiento para mejorar la administración municipal o la prestación de servicios públicos municipales; IV. Realizar estudios y aceptar información y opiniones de los grupos sociales que integren la comunidad, respecto a la elaboración de los planes municipales sobre asentamientos humanos; V. Comparecer ante el Ayuntamiento, cuando sea requerido; VI. Gestionar, ante el Ayuntamiento, la expedición de los reglamentos y las disposiciones administrativas tendientes a regular el funcionamiento de su dependencia y dar operatividad a los planes de desarrollo municipal, en concordancia con la legislación federal y estatal en la materia y VII. Asistir al presidente municipal y al titular de Obras Públicas, en las funciones técnicas del Comité de Planeación para el Desarrollo Municipal. El titular de Planeación y Urbanización, deberá ser profesionista o técnico con conocimientos en la materia, que acredite satisfactoriamente sus estudios y su nombramiento deberá ser autorizado por la mayoría de los integrantes del Ayuntamiento; el responsable del área referida, refrendará con su firma los documentos oficiales suscritos por el titular de Obras Públicas. Cuando un Ayuntamiento no cuente con esta dependencia, las funciones correspondientes serán asumidas por la Unidad de Obras Públicas.'. 'Artículo 116. El titular de Comercio y Mercados, funcionará de acuerdo con el reglamento correspondiente y

tendrá a su cargo el control de la actividad mercantil de su competencia.'. 'Artículo 117. El titular de Limpia y Transporte, tendrá como función: I. Mantener en estado de limpieza y buena presentación las calles, plazas, jardines y establecimientos públicos de la ciudad; II. Conservar en buen estado los camiones recolectores de basura, que deberán pasar en forma periódica en todas las calles, para la prestación del servicio; III. Proponer en coordinación con el titular de Obras Públicas, los lugares apropiados para plantas tratadoras, rellenos sanitarios y basureros y IV. Las demás que le impongan las leyes y los reglamentos correspondientes.'. 'Artículo 118. Corresponde al titular del Rastro Municipal, procurar que la matanza del ganado y aves se realice bajo su control, con observancia de las disposiciones sanitarias, vigilar que se paguen las contribuciones y se ponga el sello correspondiente para la circulación de carnes. Vigilar el adecuado funcionamiento de los rastros operados por particulares y procurar que se cumpla con la hacienda municipal y las demás disposiciones vigentes.'. 'Artículo 119. El jefe de la Oficina de Alumbrado Público, deberá conservar en buen estado las redes de distribución, realizar los estudios para las ampliaciones y mejoras correspondientes, cuidar que en su oportunidad se repongan las lámparas fundidas, prender y apagar a la hora indicada el alumbrado público, llevar un minucioso registro del consumo de energía eléctrica y comunicar al tesorero municipal o al titular de Obras Públicas, lastomas clandestinas que afecten las redes a cargo del Municipio.'. 'Artículo 120. Al jefe de Parques y Jardines, le corresponde la vigilancia, conservación y equipamiento de los parques y lugares públicos de recreo, así como procurar que estos lugares sean un ornato atractivo para la población.'. 'Artículo 121. El titular de la Unidad de Reglamentos, tendrá a su cargo, la aplicación y observancia de los reglamentos municipales expedidos por el Ayuntamiento y las leyes que expida la Legislatura del Estado y levantar las infracciones que correspondan.'. 'Artículo 122. Al titular de Sanidad Municipal, le compete vigilar el cumplimiento de las disposiciones del código en la materia y su reglamento, para crear nuevas y mejores condiciones de higiene y salud para los habitantes del Municipio.'. 'Artículo 123. El jefe de Espectáculos, tendrá como función, vigilar que en los lugares donde se desarrollen todo tipo de espectáculos o diversiones, no se falte a la moral y las buenas costumbres; así mismo, le corresponde autorizar los permisos y cuidar que se paguen las contribuciones respectivas al Municipio.'. 'Artículo 124. El responsable del Panteón Municipal, tendrá a su cargo la administración del mismo, el control y vigilancia de la inhumación y exhumación de cadáveres, siempre y cuando se cumplan los requisitos legales correspondientes.'. Capítulo sexto. De la asistencia social. 'Artículo 125. La administración municipal, en el sector central o paramunicipal, contará con una unidad encargada de prestar los servicios de asistencia social con la denominación de Junta Municipal para el Desarrollo Integral de la Familia. Para financiar su operación, el Ayuntamiento establecerá, conforme a sus recursos, la partida presupuestal correspondiente, no podrá ser ésta de un monto menor al 3% del total del presupuesto de egresos, independientemente de los recursos federales y estatales que se le transfieran. La Junta Municipal para el Desarrollo Integral de la Familia, estará regida por un patronato, presidido por la persona que designe el presidente municipal y una dirección, con las unidades administrativas o dependencias que establezca el acuerdo o reglamento correspondiente o sus propios requerimientos. El

titular del Desarrollo Integral de la Familia municipal, deberá contar con el apoyo de una unidad técnica, cuyo responsable deberá ser un profesionista o técnico con conocimientos en las materias de derecho, administración o ramas afines a éstas, que acredite satisfactoriamente sus estudios ante el Ayuntamiento. El responsable de la unidad referida, refrendará con su firma los documentos oficiales suscritos por el titular del Desarrollo Integral de la Familia municipal. (Los anteriores artículos, del 95 al 125, violan los principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, en razón de que se ocupan indebidamente de organizar toda la administración pública municipal, procedimientos para su integración y redistribución de competencias municipales, mismas que conforme a lo dicho y alegado son de competencia reglamentaria municipal). Capítulo séptimo. De los actos administrativos municipales. 'Artículo 126. ... (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3, 4 y 5 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, particularmente en razón de la forma enunciativa en que se deja la posibilidad de que las leyes establezcan diversos casos en los que el Ayuntamiento debe acudir en autorización ante el Congreso del Estado, lo cual perjudica su autonomía).'. 'Artículo 127. ...'. 'Artículo 128. ...'. 'Artículo 129. ...'. 'Artículo 130. ...'. 'Artículo 131. ...'. 'Artículo 132. Los Ayuntamientos, por ningún motivo harán donación bajo ningún título, de los bienes muebles e inmuebles propiedad del Municipio, excepto cuando se trate de realización de obras de beneficio colectivo; en este caso, se observará lo dispuesto por la fracción XVII del artículo 49 de esta ley. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3, 4 y 5 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, así como el principio de libertad de hacienda, ya que en todo caso los límites al destino del haber municipal se determina en el presupuesto que aprueba libremente el Ayuntamiento conforme a su plan de desarrollo).'. 'Artículo 133. ...'. 'Artículo 134. Los contratos y actos realizados en contravención a lo dispuesto por esta ley, son nulos de pleno derecho. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 135. ...'. Capítulo octavo. De la Policía Preventiva Municipal. 'Artículo 136. ...'. 'Artículo 137. La prestación de los servicios de policía preventiva y tránsito, estarán encomendados a los agentes de vigilancia municipales, cuya dirección corresponde a un secretario, director, jefe o comandante de Policía y Tránsito, en forma conjunta o separada, que serán designados por el presidente municipal y sólo podrán ser removidos por él mismo. El titular de la Policía Preventiva y Tránsito Municipal, deberá ser ciudadano hidalguense y no deberá haber sido condenado en proceso penal, por delito intencional. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, así como la fracción VII del artículo 115 que encomienda a un reglamento municipal el ejercicio de la función preventiva municipal).'. 'Artículo 138. El titular de Policía y Tránsito acordará directamente con el presidente municipal, por lo menos una vez a la semana. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, así como la fracción VII del artículo 115 que

encomienda a un reglamento municipal el ejercicio de la función preventiva municipal). 'Artículo 139. El titular de Policía y Tránsito, tendrá las siguientes facultades y obligaciones: I. Preservar la seguridad de las personas, de sus bienes y la tranquilidad de éstas y hacer cumplir el bando de policía o Reglamento de Policía y Tránsito Municipal; II. Organizar la fuerza pública municipal, de tal manera, que preste eficientemente sus servicios de policía preventiva y tránsito, especialmente en los días y lugares que por causas específicas requieran una vigilancia y auxilio mayor; III. Cumplir con lo establecido en las leyes y reglamentos en la esfera de su competencia; IV. Rendir diariamente al presidente municipal un parte de policía y de los accidentes de tránsito, de daños y lesiones originadas, así como de las personas detenidas e indicar la hora exacta de la detención y la naturaleza de la infracción; V. Coordinarse con los cuerpos de Policía y Tránsito de la Federación, el Estado y de los Municipios circunvecinos, con fines de cooperación, reciprocidad y ayuda mutua e intercambiar con los mismos, datos estadísticos, fichas, informes, etcétera, que tiendan a prevenir la delincuencia, en cumplimiento de los convenios de coordinación suscritos por el Ayuntamiento y de conformidad con lo establecido en los párrafos cinco, seis y siete del artículo 21 de la Constitución Política de los Estados Unidos Mexicanos, la Ley que establece las Bases de Coordinación en Materia de Seguridad Pública, la Constitución Política del Estado de Hidalgo y la demás legislación aplicable; VI. Procurar dotar al cuerpo de policía y tránsito, de mejores recursos y elementos técnicos que le permitan actuar sobre bases científicas en la prevención de infracciones y delitos; VII. Organizar ciclos de academia para su personal, cuando no exista institución especial de capacitación policial o celebrar convenios con el Estado, para mejorar el nivel cultural de sus miembros, técnicas de investigación y demás actividades encaminadas a ese fin y VIII. Las demás que le asignen las leyes y reglamentos, el Ayuntamiento y el presidente municipal. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, así como la fracción VII del artículo 115 que encomienda a un reglamento municipal el ejercicio de la función preventiva municipal).'. Título séptimo. De la municipalización y concesión de los servicios públicos. Capítulo primero. De la municipalización. 'Artículo 140. ...'. 'Artículo 141. ...'. 'Artículo 142. ...'. 'Artículo 143. ...'. 'Artículo 144. ...'. 'Artículo 145. ...'. Capítulo segundo. Del otorgamiento, cancelación y caducidad de las concesiones. 'Artículo 146. ...'. 'Artículo 147. ...'. 'Artículo 148. ...'. 'Artículo 149. El otorgamiento de las concesiones sobre bienes y servicios públicos municipales, se sujetarán a las siguientes bases: I. Contar con el acuerdo del Ayuntamiento, respecto de la imposibilidad de modernizar y mejorar la prestación del servicio, el que deberá publicarse, en el Periódico Oficial del Estado y en el periódico de mayor circulación en la localidad; II. Cumplir con los requisitos previstos en la ley de la materia; III. Determinar el régimen a que deberán estar sometidas las concesiones, así como el término de las mismas, las causas de caducidad, cancelación y forma de vigilancia por parte del Municipio en la prestación del servicio. Si la recuperación de la inversión así lo requiere y no represente un demérito en las finanzas de futuras administraciones de los Municipios, el término de la concesión podrá otorgarse hasta por un periodo de quince años; IV. Señalar las condiciones, bajo las cuales se garantice la seguridad, suficiencia y regularidad del servicio y V.

Establecer las condiciones y formas en que deberán otorgarse las garantías para responder de los derechos y obligaciones que genere la concesión del servicio público o este mismo. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 150. Procede la cancelación de concesiones de los servicios públicos, en los casos siguientes: I. Cuando se constate que el servicio, se presta en forma distinta a los términos de la concesión, no se cumpla con las obligaciones contraídas o no se preste el servicio concesionado regularmente a excepción de hechos de fuerza mayor; II. Cuando el concesionario pierda capacidad económica o carezca de los elementos materiales o técnicos para la prestación del servicio; III. Cuando se constate que el concesionario no conserva los bienes e instalaciones en buen estado o cuando éstos sufran deterioro por su negligencia, con perjuicio para la prestación normal del servicio; IV. Porque el concesionario no otorgue las garantías que se fijen y V. Por cualquier otra causa similar a las anteriores. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 151. El Ayuntamiento, podrá acordar administrativamente y en cualquier tiempo, la cancelación de la concesión, en los casos señalados por el artículo anterior. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 152. Las concesiones, caducan: I. Cuando no se inicie la prestación del servicio, dentro del plazo señalado en la concesión y II. Por la conclusión del término de su vigencia. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 153. Para acordar la caducidad, se oirá previamente al concesionario, salvo las excepciones previstas en esta ley y al efecto, se hará de su conocimiento la causa de la caducidad y se le concederá un término de cinco días hábiles para que exprese lo que a su derecho corresponda. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. 'Artículo 154. Las causas de caducidad consistentes en la conclusión del término de su vigencia, operan de pleno derecho por el simple transcurso del tiempo y en este caso, no es necesario oír previamente al concesionario, quien dentro del término de quince días, antes de la culminación del plazo, deberá expresar por escrito su deseo de continuar con la concesión, en caso de no hacerlo, se considerará que no desea continuar con ella. La solicitud de renovación de la concesión no obliga al Ayuntamiento a concesionar de nueva cuenta el servicio a la misma persona. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones).'. Título octavo. De la justicia administrativa. Capítulo primero. De la conciliación municipal. 'Artículo 155. ...'. 'Artículo 156. ...'. 'Artículo 157. ...'. 'Artículo 158. ...'. Capítulo segundo. De las sanciones y medidas de seguridad. 'Artículo 159. ...'. 'Artículo 160. ...'. 'Artículo 161. ...'. 'Artículo 162. ...'. Capítulo tercero. De los recursos administrativos. 'Artículo 163. ...'. 'Artículo 164. ...'. 'Artículo 165. ...'. 'Artículo 166. ...'. 'Artículo 167. ...'. 'Artículo 168. ...'. Título noveno. Legislación municipal. Capítulo único. De los bandos de gobierno y de policía, reglamentos, circulares y disposiciones administrativas de

observancia general. 'Artículo 169. ...'. 'Artículo 170. ...'. 'Artículo 171. ...'. Título décimo. Capítulo único. Del Comité de Planeación del Desarrollo Municipal. 'Artículo 172. En los Municipios que conforman al Estado de Hidalgo, funcionará un Comité de Planeación del Desarrollo Municipal (Copladem) que estará sujeto a lo dispuesto por la Constitución Política del Estado de Hidalgo, la Ley Estatal de Planeación y la normatividad municipal respectiva. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, particularmente por el hecho de que la planeación del desarrollo es un asunto fundamental de participación ciudadana, misma que debe quedar regulada en un ordenamiento municipal conforme a los citados principios y sin la intervención del gobierno o Congreso del Estado).'. 'Artículo 173. El Comité de Planeación del Desarrollo Municipal, funcionará como órgano desconcentrado dependiente del presidente municipal, el que contará con las siguientes atribuciones: I. Promover y coadyuvar con la autoridad municipal, con la colaboración de los sectores que actúan a nivel local, en la elaboración del plan de desarrollo municipal y los programas sectoriales, en congruencia con los que formulen los Gobiernos Federal y Estatal; II. Observar las disposiciones de coordinación entre los Gobiernos Federal, Estatal y Municipal y la cooperación de los sectores social y privado, para la ejecución en el ámbito local de los planes del sector público; III. Coordinar el control y evaluación de los planes, programas y proyectos de desarrollo del Municipio, los que estarán adecuados a los que formulen los Gobiernos Federal y Estatal, y coadyuvar al oportuno cumplimiento de sus objetivos y metas; IV. Formular y presentar a la consideración de los Gobiernos Federal, Estatal y Municipal, propuestas de programas de inversión, gasto y financiamiento públicos para el Municipio. Dichas propuestas deberán presentarse respecto de obras o servicios claramente jerarquizados, fundamentalmente a partir de las prioridades señaladas en el programa de Gobierno Municipal; V. Proponer a los Gobiernos Federal y Estatal, programas y acciones a concertar, con el propósito de coadyuvar al desarrollo del Municipio. Así mismo, evaluar la ejecución de dichos programas y acciones, e informar periódicamente a dichos órdenes de gobierno; VI. Promover la celebración de acuerdos de cooperación entre el sector público y los sectores social y privado, que actúen localmente, a efecto de que sus acciones concurran al logro de los objetivos del desarrollo del Municipio; VII. Promover la coordinación con otros comités municipales para coadyuvar en la formulación, instrumentación, control y evaluación de planes y programas para el desarrollo de zonas intermunicipales, y solicitar al Ayuntamiento pida la intervención del Gobierno del Estado, para tales efectos; VIII. Fungir como órganos de consulta de los Gobiernos Federal, Estatal y Municipal, sobre la situación socioeconómica del Municipio y IX. Proponer a los Gobiernos Federal, Estatal y Municipal, medidas de carácter jurídico, administrativo y financiero necesarias para el cumplimiento de las funciones y la consecución de los objetivos del propio comité. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, particularmente por el hecho de que la planeación del desarrollo es un asunto fundamental de participación ciudadana, misma que debe quedar regulada en un ordenamiento municipal conforme a los citados principios y sin la intervención del gobierno o Congreso del Estado).'. 'Artículo 174. El Comité de

Planeación del Desarrollo Municipal, se integrará por una asamblea general y un consejo directivo. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, particularmente por el hecho de que la planeación del desarrollo es un asunto fundamental de participación ciudadana, misma que debe quedar regulada en un ordenamiento municipal conforme a los citados principios y sin la intervención del gobierno o Congreso del Estado).'. 'Artículo 175. La asamblea general, estará integrada por los representantes de los sectores público, social y privado. Este órgano tiene carácter consultivo para la elaboración de los programas y proyectos de obras, acciones o servicios a cargo del Municipio. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, particularmente por el hecho de que la planeación del desarrollo es un asunto fundamental de participación ciudadana, misma que debe quedar regulada en un ordenamiento municipal conforme a los citados principios y sin la intervención del gobierno o Congreso del Estado).'. 'Artículo 176. Podrán ser miembros de la asamblea general: I. Los funcionarios de mayor jerarquía del Ayuntamiento; II. Los titulares de los órganos de las dependencias del Gobierno del Estado y los representantes de las entidades de la administración pública federal, cuyos programas, acciones o servicios, incidan en el desarrollo del Municipio; III. Los diputados federales y locales que incidan en el Municipio; IV. Los representantes de las organizaciones y asociaciones de empresarios, profesionistas, obreros y campesinos, así como de las sociedades cooperativas que actúen en el Municipio y que estén debidamente registradas ante las autoridades correspondientes; V. Las autoridades educativas y los directivos de las instituciones más representativas del sector de educación; VI. Los delegados municipales y subdelegados; VII. Los presidentes de los consejos de colaboración municipal; VIII. Los presidentes de los comisariados ejidales y de bienes comunales y IX. Otros representantes de los sectores social y privado, que el coordinador del comité estime pertinente. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, particularmente por el hecho de que la planeación deldesarrollo es un asunto fundamental de participación ciudadana, misma que debe quedar regulada en un ordenamiento municipal conforme a los citados principios y sin la intervención del gobierno o Congreso del Estado).'. 'Artículo 177. El consejo directivo, estará integrado por: I. Un coordinador que será el presidente municipal; II. Una Secretaría Técnica, que estará a cargo del titular de Planeación o el de Obras Públicas y III. Las comisiones de trabajo que se consideren necesarias. Los cargos de la asamblea general y del consejo directivo del Comité de Planeación del Desarrollo Municipal, tendrán carácter honorífico. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, particularmente por el hecho de que la planeación del desarrollo es un asunto fundamental de participación ciudadana, misma que debe quedar regulada en un ordenamiento municipal conforme a los citados principios y sin la intervención del gobierno o Congreso del Estado).'. 'Artículo 178. El Comité de Planeación, contará con el apoyo técnico que en cada caso se convenga con las entidades de la administración pública federal y estatal,

para su adecuada operación. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3 y 4 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, particularmente por el hecho de que la planeación del desarrollo es un asunto fundamental de participación ciudadana, misma que debe quedar regulada en un ordenamiento municipal conforme a los citados principios y sin la intervención del gobierno o Congreso del Estado).'. 'Título undécimo. Capítulo único. De las responsabilidades de las autoridades municipales. 'Artículo 179. ...'. 'Artículo 180. ... '. 'Artículo 181. ...'. 'Artículo 182. ...'. 'Artículo 183. ...'. Título duodécimo. De la colaboración entre el Municipio y el Estado. Capítulo único. Asesoría municipal. 'Artículo 184. ...'. 'Artículo 185. ...'. Artículos transitorios. Primero. La presente ley, entrará en vigor al día siguiente de su publicación en el Periódico Oficial del Gobierno del Estado. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3, 4 y 5 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, particularmente en virtud de que le da viabilidad integral para que los artículos impugnados de inconstitucionales tengan vida jurídica). Segundo. Se abroga la Nueva Ley Orgánica Municipal del Estado de Hidalgo, publicada en el Periódico Oficial del Gobierno del Estado, el 21 de noviembre de 1983 y sus reformas subsecuentes. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3, 4 y 5 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, particularmente en virtud de que le da viabilidad integral para que los artículos impugnados de inconstitucionales tengan vida jurídica). Tercero. Se derogan todas las disposiciones legales secundarias que se opongan a esta ley. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3, 4 y 5 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, particularmente en virtud de que le da viabilidad integral para que los artículos impugnados de inconstitucionales tengan vida jurídica). Cuarto. Los Municipios deberán de expedir sus reglamentos respectivos, dentro del término de ciento ochenta días, a partir de la entrada en vigor de este ordenamiento. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3, 4 y 5 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, particularmente en virtud de que le da viabilidad integral para que los artículos impugnados de inconstitucionales tengan vida jurídica). Quinto. ... Sexto. ... Séptimo. La obligación de elaborar el plan de desarrollo municipal a que se refiere la fracción X del artículo 52 de esta ley, entrará en vigor el 16 de enero del año 2003. (Viola el (los) principio(s) marcados(s) como número(s) 1, 2, 3, 4 y 5 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, particularmente en virtud de que le da viabilidad integral para que los artículos impugnados de inconstitucionales tengan vida jurídica). Octavo. Las autoridades administrativas referidas en los artículos 93, 98, 113 y 115 de esta ley, tendrán la obligación de comparecer ante el Ayuntamiento cuando éste los requiera, a partir del 1o. de enero del año 2002. (Viola el (los) principio(s) marcado(s) como número(s) 1, 2, 3, 4 y 5 en el presente concepto de invalidez, mismos a los que nos remitimos en obvio de repeticiones, particularmente en virtud de que le da viabilidad integral para que los artículos impugnados de inconstitucionales tengan vida jurídica)."

CUARTO. La parte actora estima violados los artículos 115 de la Constitución Política de los Estados Unidos Mexicanos, así como el segundo transitorio del decreto que aprobó la reforma de ese precepto constitucional, publicado en el Diario Oficial de la Federación el veintitrés de diciembre de mil novecientos noventa y nueve.

QUINTO. Por acuerdo de treinta y uno de mayo de dos mil uno, el presidente de esta Suprema Corte de Justicia de la Nación ordenó formar y registrar el expediente relativo a la controversia constitucional, al que le correspondió el número 14/2001, y por razón de turno designó como instructora a la Ministra Olga María del Carmen Sánchez Cordero de García Villegas.

Mediante auto de cinco de junio de dos mil uno, la Ministra instructora tuvo por admitida la demanda de controversia constitucional; como autoridades demandadas únicamente al Congreso y al gobernador del Estado de Hidalgo, a quienes ordenó emplazarlas para la formulación de su respectiva contestación y dar vista al procurador general de la República para que manifestara lo que a su representación correspondiera.

SEXTO. El Congreso del Estado de Hidalgo al contestar la demanda, en síntesis, manifestó:

1) Que es cierto que el veintiséis de marzo de dos mil uno aprobó el Decreto Número 213, que contiene la Ley Orgánica Municipal del Estado de Hidalgo.

2) Que es cierto que la reforma al artículo 115 constitucional amplió las facultades de los Municipios sobre rubros diversos, dentro de las cuales se encuentran las establecidas en la fracción II, donde se señala la facultad de los Ayuntamientos para aprobar sus bandos de policía y gobierno y demás disposiciones que organicen, entre otras cosas, a la administración pública municipal; sin embargo, en dicha fracción se establece que los bandos y disposiciones referidas se aprobarán de acuerdo a las leyes que en materia municipal deberán expedir las Legislaturas de los Estados, en el caso, el Congreso del Estado de Hidalgo.

3) Que el artículo 115 constitucional señala que las leyes que expedirán las legislaturas establecerán las bases generales de la administración pública municipal; y esto comprende de manera general las dependencias que van a desarrollar la función administrativa con la finalidad de satisfacer las necesidades de la colectividad, motivo por el cual la Ley Orgánica Municipal, cumpliendo con lo que la Constitución Federal dispone en la fracción II del artículo 115 constitucional, se limita a establecer las bases de la administración pública municipal, salvaguardando la facultad reglamentaria que tienen los Municipios para darse sus propios bandos y disposiciones administrativas que tendrán aplicación dentro de sus jurisdicciones.

4) Que no es indebido imponer una mayoría calificada para otros asuntos en los que tenga injerencia el Municipio, fuera de los temas relativos a inmobiliario y actos jurídicos que comprometan a los Ayuntamientos más allá de su periodo constitucional, ni que las legislaturas actúen como resolutores en lugar de los Ayuntamientos, en razón de que es a la Legislatura Local a quien corresponde expedir las leyes en materia municipal que determinen las bases sobre las cuales los Ayuntamientos expedirán sus bandos y demás disposiciones administrativas. Además, lo que se buscó en la Ley Orgánica Municipal fue establecer las bases para que los Ayuntamientos lleven a cabo sus funciones y evitar futuras controversias; máxime cuando existen todavía Municipios que no cuentan con sus propios bandos y reglamentos.

5) Que no obstante que existen facultades materialmente legislativas, ejecutivas y judiciales, atribuidas a autoridades distintas a las que formalmente deban desempeñarlas, quien tiene por mandato constitucional la facultad de expedir leyes es el Poder Legislativo, tanto a nivel federal como a nivel local, respectivamente; por tanto, no puede estimarse que el hecho de que el Congreso del Estado de Hidalgo haya expedido la Ley Orgánica Municipal donde regula los aspectos relacionados con los Municipios, signifique que se ha violado la autonomía municipal, máxime cuando dicha ley se reformó con base en los planteamientos establecidos por el artículo 115 constitucional.

6) Que aunque en la reforma al artículo 115 constitucional se amplían las facultades de los Ayuntamientos, también se debe recordar cuál es la naturaleza del reglamento y cuál es la de la ley; en síntesis, el reglamento es un acto formalmente administrativo y materialmente legislativo; partícipe de los atributos de la ley aunque ambos ordenamientos son de naturaleza impersonal, general y abstracta. El reglamento emana del Ejecutivo, a quien incumbe proveer en la esfera administrativa a la exacta observancia de la ley, y es una norma subalterna que tiene su medida y justificación en la ley; lo anterior, de conformidad con la tesis jurisprudencial: "REGLAMENTOS ADMINISTRATIVOS. FACULTAD DEL PRESIDENTE DE LA REPÚBLICA PARA EXPEDIRLOS. SU NATURALEZA."

7) Que derivado de lo previsto por el artículo segundo transitorio del Decreto por el que se reformó el artículo 115 constitucional, publicado en el Diario Oficial de la Federación el veintitrés de diciembre de mil novecientos noventa y nueve, las Legislaturas Locales debieron adecuar sus Constituciones y leyes secundarias en el plazo de un año a partir de la entrada en vigor del decreto de referencia (veintidós de marzo de dos mil) el cual venció el veintidós marzo de dos mil uno. En este contexto, las reformas de adecuación de la Constitución Política del Estado de Hidalgo al decreto mencionado fueron aprobadas por el Congreso del Estado en sesión extraordinaria de veintidós de febrero de dos mil uno y publicadas en el Periódico Oficial del Gobierno del Estado de veintiséis de febrero del mismo año.

8) Que para la reforma a la Ley Orgánica Municipal es importante hacer la aclaración de que la sesión extraordinaria dentro de la cual se inició el procedimiento legislativo para su reforma, fue el veintidós de marzo de dos mil uno, declarándose por acuerdo del Pleno del Congreso del Estado un receso para que la Comisión de Legislación y Puntos Constitucionales pudiera analizar y dictaminar sobre las iniciativas de ley presentadas, y que dicho receso fuera a partir del día de su inicio (veintidós de marzo de dos mil uno) y que se continuaría con la lectura del dictamen el veintiséis de marzo del mismo año, fecha en la cual fue aprobada la Ley Orgánica Municipal para el Estado de Hidalgo, publicada en el Periódico Oficial del Gobierno del Estado el dieciséis de abril de dos mil uno.

El gobernador del Estado de Hidalgo no contestó la demanda, no obstante que se le emplazó para tal efecto, como se desprende de la constancia de notificación que obra agregada a fojas doscientos tres de este expediente, por lo que por auto de veinte de agosto de dos mil uno, se declaró precluído su derecho para contestar la demanda.

SÉPTIMO. El procurador general de la República respecto de la demanda de controversia constitucional interpuesta, en síntesis, señaló:

1) Que esta Suprema Corte de Justicia de la Nación es competente para sustanciar y resolver la presente controversia constitucional.

2) Que el síndico del Ayuntamiento de Pachuca de Soto, Estado de Hidalgo, está legitimado para representar a ese órgano municipal en el presente juicio, en términos de lo dispuesto por el artículo 11 de la Ley Reglamentaria del Artículo 105 de la Constitución Federal.

3) Que resulta extemporánea la presentación de la demanda por lo que hace a la aprobación, sanción, promulgación y publicación del artículo 148 de la Constitución del Estado de Hidalgo, ya que el texto impugnado corresponde a la reforma publicada en el Periódico Oficial de la entidad el nueve de mayo de mil novecientos noventa y ocho, derogado con las reformas y adiciones realizadas a la Constitución Local publicadas el veintiséis de febrero de dos mil uno.

4) Que respecto del Decreto 213, que contiene la Ley Orgánica Municipal del Estado de Hidalgo, la presentación de la demanda es oportuna.

5) Que no obstante la extemporaneidad de la demanda con respecto al artículo 148 de la Constitución Local, el texto de este precepto que la actora señaló, corresponde a la reforma publicada en el Periódico Oficial de la entidad el nueve de mayo de mil novecientos noventa y ocho, derogado con las reformas y adiciones realizadas a la Constitución Local, publicadas el veintiséis de febrero de dos mil uno, por lo que no existe la norma impugnada, por lo que debe sobreseerse la controversia constitucional respecto de dicho numeral, con fundamento en la fracción III del artículo 20, en relación con la fracción VIII del numeral 19, ambos de la ley reglamentaria de la materia.

6) Que en la fracción II del artículo 115 constitucional, se delimitan el objeto y alcances que deben contener las normas estatales, con el propósito de otorgar al Municipio autonomía y de mantener uniformidad en la vida institucional municipal, por lo que se otorgó al Municipio la facultad reglamentaria consistente en expedir disposiciones administrativas de observancia general; sin embargo, tal potestad la deberá desarrollar de acuerdo a las leyes que en materia municipal emitan las Legislaturas de los Estados, las que deben contener bases generales que sirvan de marco normativo a los Ayuntamientos.

7) Que las bases generales de las leyes estriban precisamente en no dirigirse a un Municipio o Municipios de manera particular o legislar aspectos específicos y particulares de su administración y, como segunda limitante, que deberán emitirse respetando el orden jurídico mexicano establecido en la Constitución Federal, de tal manera que observe los principios consagrados en la Constitución Política de los Estados Unidos Mexicanos y en la Local de la entidad a la que pertenezcan, de lo que se concluye que la Constitución Federal otorga a los Ayuntamientos la facultad reglamentaria consistente en expedir toda clase de disposiciones administrativas de observancia general, ya sean sustantivas y/o adjetivas, pero siempre bajo un marco normativo emitido por el Congreso de la entidad a la que pertenezcan.

8) Que el artículo 115, fracción II, constitucional, emplea dos términos distintos en contenido y alcance: establecer y organizar. Sobre el término "establecer" que atribuye a las legislaturas, va enderezado a facultarlas para crear, determinar o instituir los elementos que integran la administración pública municipal. El término "organizar" que se atribuye a los Municipios, debe entenderse no como una facultad de crear, determinar o instituir la administración pública, sino de dar orden a lo establecido por la Legislatura Local, en todo lo referente a la administración pública.

9) Que la adecuación del artículo 148 de la Constitución Política del Estado de Hidalgo a las reformas del artículo 115 constitucional, ya fue realizada en las disposiciones correspondientes de la Constitución Local y publicada en el Periódico Oficial de la entidad el veintiséis de febrero de dos mil uno, por lo que deviene inoperante la manifestación que al respecto formula la actora.

10) Que el Decreto 213 que contiene la Ley Orgánica Municipal del Estado de Hidalgo, así como la mayoría de sus supuestos normativos no vulneran los "cinco principios" que según la parte actora se derivan de la fracción II del artículo 115 constitucional, porque los lineamientos que contiene el ordenamiento orgánico municipal en cuestión son de carácter general al no aplicarse a casos concretos, es decir, no especifica con detalle cómo debe funcionar y organizarse el Municipio, ni las actividades concretas que debe realizar para alcanzar sus fines, así como tampoco las relaciones que surjan con motivo de sus actividades, desprendiéndose la necesidad de crear disposiciones secundarias por parte de los Ayuntamientos, para con ellas regular concretamente su organización, funcionamiento y relaciones jurídicas.

11) Que de lo previsto por los numerales 1o., 3o., fracciones I, II y II (sic), 5o., 10, 21, 22, 37, 38, 39, 40, 43, 44, 45, 46, 47, 48, 49, fracciones I, II, III, XVII, XXXI y XXXVII, 51, 52, 53, 54, 55, 60, fracciones III a XV, 62, 63, 64, 65, 66, 74, 75, 76, 77, 78, 79, 80, 81, 82, 88, 91, 92, 93, 94, 95 a 124, 126, fracción V, 132, 134, 137, 138, 139, 149, 150, 151, 152, 153, 154, 172, 173, 174, 176, 177, 178, primero, segundo, tercero, cuarto, séptimo y octavo transitorios de la Ley Orgánica Municipal del Estado de Hidalgo, se puede advertir que las reformas y adiciones que ahí se contienen y que se impugnan por la presente vía, corresponden a una adecuación a lo preceptuado en el artículo 115, fracción II, de la Constitución Política de los Estados Unidos Mexicanos, en beneficio de la categoría de orden de gobierno que les fue otorgado a los Ayuntamientos, para garantizar en su ámbito el desarrollo municipal en coordinación y cooperación con los Gobiernos Federal y Estatal; que son disposiciones orientadas a colegiar las decisiones más importantes de los Ayuntamientos respecto de su hacienda, patrimonio y deuda, con plenas facultades sobre la materia y de las atribuciones relacionadas con la planeación y ordenamiento del desarrollo urbano y regional.

12) Que de acuerdo con lo expresado en el dictamen de la Comisión de Gobernación y Puntos Constitucionales de la Cámara de Diputados, en su capítulo de "Consideraciones" a la reforma del artículo 115 de la Constitución Federal, a través de ésta se busca que el alcance de las leyes estatales orienten las cuestiones sustantivas y adjetivas de los Municipios de un Estado con el propósito de dar un marco normativo homogéneo entre ellos, sin intervenir en las cuestiones específicas de cada Municipio, dejando la facultad de ámbito reglamentario al Ayuntamiento; es decir, el objetivo es dotar de una base general que sirva para la organización y funcionamiento del Municipio, a efecto de que logre sus fines, lo que requiere que tenga una estructura y determinados órganos, su competencia y atribuciones, estableciendo los requisitos a satisfacer por las personas que integran esos órganos, los que deben de estar contenidos en la Ley Orgánica Municipal del Estado, en la que se salvaguarde la facultad de los Ayuntamientos para expedir sus respectivos reglamentos interiores en uso de sus atribuciones constitucionales.

13) Que a través de la expedición de la Ley Orgánica Municipal del Estado de Hidalgo, se establece la facultad expresa de los Ayuntamientos para expedir bandos de policía y buen gobierno, reglamentos, circulares y otras disposiciones administrativas de observancia general dentro de sus jurisdicciones; se establece la competencia municipal en cuanto a funciones y servicios públicos básicos, los que la autoridad municipal deberá prestar; además, se le otorgan facultades específicas en materia de zonificación, desarrollo urbano, de reservas territoriales, de utilización del suelo y regularización de la tenencia de la tierra, así como para otorgar licencias y permisos de construcción y participar en cuestionesrelativas a la creación y administración de reservas ecológicas; de igual forma, cuenta con un patrimonio propio integrado por los bienes y recursos que le sean necesarios para atender sus responsabilidades con la comunidad, entre otros.

14) Que en los preceptos impugnados se dispone que con el previo acuerdo de los Ayuntamientos y con sujeción a la ley, podrán asociarse y coordinarse para la más eficaz prestación de los servicios públicos que les corresponden; y que cuando esa asociación se dé entre Municipios de dos o más Estados, se deberá contar para ello con la aprobación de las respectivas legislaturas; así como que también podrán celebrar convenios con el Estado para que éste de manera directa o a través del organismo correspondiente se haga cargo temporalmente de dichos servicios, o bien, se prevé la coordinación entre el Estado y el propio Municipio.

15) Que en el decreto impugnado se contemplan órganos auxiliares y de colaboración municipal, que tienen por objeto llevar a cabo tareas de auxilio y apoyo en las funciones del Gobierno Municipal, con diversas funciones y denominaciones, coadyuvando al desarrollo de los Municipios, a los que compete directamente su organización y funcionamiento.

16) Que la ley combatida norma de manera general la participación ciudadana, y lejos de pugnar con la Constitución Federal, cumple con lo establecido en el primer párrafo de la fracción II del artículo 115 constitucional, ya que en todo régimen democrático los instrumentos por los que se consolida la democracia semidirecta, entre otros, son la iniciativa popular, el referéndum y el plebiscito, los cuales se ejercen para asegurar la participación ciudadana vecinal al permitírsele la expresión de su voluntad en los actos de gobierno, o bien, en la expedición de normas; por lo que en el caso, la norma impugnada establece dichas figuras jurídicas señalando únicamente su definición y aclarando que se aplicarán conforme a lo dispuesto en los reglamentos municipales correspondientes. Asimismo, no se desprende que se imponga a los Ayuntamientos adoptar el sentido en que la ciudadanía se deba pronunciar, ni que se obligue a los Municipios a que se apeguen a los resultados de la conducta ciudadana, por lo que de ninguna manera implica una invasión a su esfera competencial.

17) Que por todo lo anterior, el Congreso de la entidad emitió la norma impugnada en el ejercicio de su potestad soberana que le confiere la Constitución Federal, en específico, la de emitir leyes en materia municipal, y como se puede advertir, contiene disposiciones de carácter general, sin que del texto mismo de los preceptos se infiera la violación a algún principio consagrado en la Constitución Federal.

18) Que los órganos que se establecen en la ley combatida son necesarios en la administración pública de los Municipios, pues favorecen el buen desempeño de las funciones que tienen encomendadas, entre ellas, la prestación directa de los servicios públicos, sin perjuicio de que los Municipios puedan crear otras dependencias a las que se les encomiende la prestación de servicios públicos municipales, con fundamento en las bases generales de administración que establezcan las Legislaturas de los Estados, por lo que no se vulnera precepto alguno de la Constitución Federal.

19) Que respecto de que el principio de mayoría calificada debe establecerse únicamente en los casos que traten de la disposición de bienes inmuebles o actos jurídicos que obliguen al Ayuntamiento más allá de su periodo de gobierno, cabe señalar que en el inciso b), fracción II, del numeral 115 de la Constitución Federal, no se limita la facultad de imponerla para otros asuntos en los que tenga injerencia el Municipio, en razón de que corresponde al Constituyente Local expedir las leyes en materia municipal que determinen las bases sobre las cuales los Ayuntamientos deben expedir sus bandos y demás disposiciones administrativas; por tanto, los numerales impugnados en esta controversia constitucional no violentan la facultad reglamentaria de los Ayuntamientos en cuanto a su organización y funcionamiento, prevista en el artículo 115, fracción II, incisos a), b), c), d) y e), de la Constitución Política de los Estados Unidos Mexicanos.

20) Que la Legislatura Estatal en uso de sus atribuciones emitió la ley impugnada de acuerdo con lo dispuesto por la Constitución Federal, es decir, señaló las bases generales de la organización, administración y procedimientos municipales de manera enunciativa, dio un marco normativo homogéneo a los Municipios del Estado y dejó a salvo los detalles para los reglamentos y manuales en que se debe desarrollar la administración pública municipal en el ámbito de su competencia.

21) Que el artículo 125 de la Ley Orgánica Municipal del Estado de Hidalgo, al establecer que las Juntas Municipales para el Desarrollo Integral de la Familia con las que cuente cada Municipio serán financiadas por el Ayuntamiento, el que para tal efecto deberá aprobar un presupuesto que no puede ser menor del 3% del total del presupuesto de egresos, vulnera el principio de libre ejercicio de la hacienda pública, consagrado en el artículo 115, fracciones II, primer párrafo y IV, párrafos primero y último, de la Constitución Política de los Estados Unidos Mexicanos, porque predetermina y compromete parte del presupuesto de egresos de los Municipios del Estado de Hidalgo.

22) Que la actora arguye violaciones en el procedimiento legislativo al haberse emitido el Decreto 213, que contiene la Ley Orgánica Municipal local; sin embargo, no señaló en qué consisten, ni formuló argumentos tendentes a demostrar la invalidez del acto impugnado, por lo que es imposible opinar a este respecto.

23) Que conforme al artículo segundo transitorio del decreto de reformas al numeral 115 de la Constitución Federal, publicado el veintitrés de diciembre de mil novecientos noventa y nueve, y toda vez que tal reforma entró en vigor el veintitrés de marzo de dos mil, la adecuación de las Constituciones y leyes locales al contenido del numeral constitucional referido, debió ser a más tardar el veintidós de marzo de dos mil uno; y que con el fin de cumplir con las reformas constitucionales en comento, la Quincuagésima Séptima Legislatura aprobó reformas y adiciones a diversos artículos de la Constitución Política del Estado de Hidalgo, contenidas en el título IX, relativo a los Municipios, mediante el cual traslada al ámbito estatal lo dispuesto por la Constitución Federal en la reforma mencionada.

24) Que con objeto de dar cumplimiento a lo dispuesto por el artículo segundo transitorio del decreto de reformas al artículo 115 constitucional, el gobernador y diputados de una fracción parlamentaria del Estado de Hidalgo, el catorce de marzo de dos mil uno enviaron al Congreso Local las iniciativas de creación de la Ley Orgánica Municipal, la cual fue aprobada el veintiséis de marzo de dos mil uno y publicada en el Periódico Oficial del Gobierno del Estado mediante Decreto 213, de diecisiete de abril del mismo año, por lo que dentro del año a que se refiere dicho precepto constitucional, se cumplió con lo ordenado por el mismo.

OCTAVO. Agotado el trámite respectivo, en términos de los artículos 29 y 34 de la Ley Reglamentaria de las Fracciones I y II del Artículo 105 de la Constitución Política de los Estados Unidos Mexicanos, se llevó a cabo la audiencia respectiva, en la que se hizo relación de los autos, se tuvieron por exhibidas las pruebas ofrecidas, por presentados los alegatos y se puso el expediente en estado de resolución.

CONSIDERANDO:

PRIMERO. Este Tribunal Pleno de la Suprema Corte de Justicia de la Nación es competente para conocer de la presente controversia constitucional, de conformidad con lo dispuesto por los artículos 105, fracción I, inciso i), de la Constitución Política de los Estados Unidos Mexicanos y 10, fracción I, de la Ley Orgánica del Poder Judicial de la Federación, en virtud de que se plantea un conflicto entre el Estado de Hidalgo a través de sus Poderes Legislativo y Ejecutivo y el Municipio de

Pachuca de Soto del mismo Estado.

SEGUNDO. Por razón de orden y por ser objeto de controversia, en primer lugar se analizará la existencia del artículo 148 de la Constitución del Estado de Hidalgo, cuya aprobación, sanción, promulgación y publicación, impugna la parte actora.

El procurador general de la República aduce al respecto que el texto del artículo 148 de la Constitución del Estado de Hidalgo que impugna la actora, corresponde al que fue derogado con las reformas y adiciones realizadas a la Constitución Local, publicadas el veintiséis de febrero de dos mil uno, por lo que no existe la norma impugnada y, por ende, debe sobreseerse al respecto, con fundamento en la fracción III del artículo 20 de la ley reglamentaria de la materia.

El artículo 20, fracción III, de la ley reglamentaria de la materia dispone:

"Artículo 20. El sobreseimiento procederá en los casos siguientes:

"...

"III. Cuando de las constancias de autos apareciere claramente demostrado que no existe la norma o acto materia de la controversia, o cuando no se probare la existencia de ese último."

De lo transcrito se advierte que ante la inexistencia claramente demostrada de la norma o acto materia de la controversia constitucional, o ante la falta de prueba de su existencia procederá el sobreseimiento del juicio.

En el caso, el Municipio actor impugna el artículo 148 de la Constitución del Estado de Hidalgo y precisa que su texto es: "La Ley Orgánica Municipal determinará la organización y funcionamiento de las dependencias administrativas del Ayuntamiento, así como los requisitos, facultades y obligaciones de sus titulares."

Cabe precisar que el texto del numeral en comento, estuvo vigente hasta antes de las reformas y adiciones a la Constitución del Estado de Hidalgo, publicadas el veintiséis de febrero de dos mil uno.

Por su parte, el artículo 148 de la Constitución del Estado de Hidalgo, en vigor a partir del veintisiete de febrero del dos mil uno, dispone:

"Artículo 148. Las relaciones de trabajo entre los Municipios y sus trabajadores, se regirán por la ley que expida la Legislatura del Estado con base en lo dispuesto en el artículo 123 de la Constitución Política de los Estados Unidos Mexicanos."

De lo anotado se concluye que el texto del artículo 148 de la Constitución Política del Estado de Hidalgo que impugna la parte actora, es aquel que dejó de existir en virtud de las reformas y adiciones realizadas a esa Constitución, publicadas el veintiséis de febrero de dos mil uno; por tanto, la disposición legal impugnada no existe en cuanto al texto que señala el actor; consecuentemente, se actualiza la hipótesis prevista por la fracción III del artículo 20 de la ley reglamentaria de la materia, y por ello, con fundamento en este último numeral, se debe sobreseer en la presente controversia constitucional respecto del artículo 148 de la Constitución Local impugnado.

En virtud del sobreseimiento anotado, sólo será materia de estudio en la presente controversia constitucional, lo relativo a la inconstitucionalidad planteada respecto de los preceptos contenidos en la Ley Orgánica Municipal del Estado de Hidalgo vigente.

TERCERO. A continuación se analizará si la demanda de controversia constitucional fue promovida oportunamente.

En el caso se impugna la aprobación, sanción, promulgación y publicación del Decreto 213, que contiene la Ley Orgánica Municipal del Estado de Hidalgo, publicada mediante alcance al Periódico Oficial del Estado de Hidalgo de dieciséis de abril de dos mil uno, y en particular los artículos 1o., 3o., 5o., 10, 21, segundo párrafo, 22, primer párrafo, 37 a 40, 43 a 49, fracciones I, II, III, XVII, XXXI, XXXII y XXXVII, 51 a 55, 60, fracciones III a XV, 62 a 66, 74 a 82, 88, 91 a 126, fracción V, 132, 134, 137 a 139, 149 a 154, 172 a 178 y primero, segundo, tercero, cuarto, séptimo y octavo transitorios de la Ley Orgánica Municipal del Estado de Hidalgo, por tanto, se trata de una norma general.

Se debe aclarar que la parte actora señala como impugnado el artículo 49 de la Ley Orgánica Municipal del Estado de Hidalgo, en sus fracciones XXXII, XXXIII y XXXVIII; sin embargo, del contenido que de tales fracciones invoca, se advierte que la cita es equivocada, pues el relativo a la fracción XXXII, corresponde a la fracción XXXI, el de la fracción XXXIII, se refiere al de la fracción XXXII, y el de la fracción XXXVIII es el relativo a la fracción XXXVII; por tanto, se debe concluir que en el caso se impugnan las fracciones XXXI, XXXII y XXXVII del artículo 49 mencionado.

El artículo 21, fracción II, de la ley reglamentaria de la materia señala:

"Artículo 21. El plazo para la interposición de la demanda será:

"...

"II. Tratándose de normas generales, de treinta días contados a partir del día siguiente a la fecha de su publicación, o del día siguiente al en que se produzca el primer acto de aplicación de la norma que dé lugar a la controversia."

De acuerdo con lo dispuesto por la fracción II del artículo 21 transcrito, tratándose de normas generales, el plazo para la promover de la demanda de controversia constitucional será de treinta días contados a partir del día siguiente:

a) a la fecha de su publicación; o,

b) al en que se produzca el primer acto de aplicación de la norma que dé lugar a la controversia.

La Ley Orgánica Municipal del Estado de Hidalgo que contiene los preceptos impugnados, se publicó en el Periódico Oficial del Estado de Hidalgo, de dieciséis de abril de dos mil uno, como se advierte de la documental que obra agregada a fojas ciento treinta y siete a ciento noventa y cuatro de este expediente.

En razón de lo anterior, y toda vez que la norma referida se impugna por su publicación, de conformidad con lo dispuesto por el artículo 21, fracción II, de la ley reglamentaria de la materia, el plazo de treinta días hábiles para promover dicha demanda transcurrió del martes diecisiete de abril al martes veintinueve de mayo de dos mil uno, debiéndose descontar del cómputo respectivo los sábados veintiuno y veintiocho de abril, cinco, doce, diecinueve y veintiséis de mayo, los domingos veintidós y veintinueve de abril, seis, trece, veinte y veintisiete de mayo, así como el martes primero de mayo, por ser inhábiles, de conformidad con lo dispuesto por el artículo 2o. de la Ley Reglamentaria de las Fracciones I y II del Artículo 105 de la Constitución Federal, en relación con el artículo 163 de la Ley Orgánica del Poder Judicial de la Federación.

Por lo anterior, al haberse presentado la demanda de controversia constitucional a estudio el veinticinco de mayo de dos mil uno, como se advierte del sello que obra estampado al reverso de la última foja del oficio de demanda, esto es, al vigésimo octavo día hábil del plazo, debe concluirse que respecto de la Ley Orgánica Municipal impugnada fue promovida

oportunamente.

CUARTO. Enseguida, se analiza la legitimación de quien promueve la presente controversia constitucional.

El estudio de la legitimación de la parte promovente deberá realizarse conforme lo dispone el artículo 11, primer párrafo, de la Ley Reglamentaria de las Fracciones I y II del Artículo 105 de la Constitución Federal, que prevé:

"Artículo 11. El actor, el demandado y, en su caso, el tercero interesado deberán comparecer a juicio por conducto de los funcionarios que, en términos de las normas que los rigen, estén facultados para representarlos. En todo caso, se presumirá que quien comparezca a juicio goza de la representación legal y cuenta con la capacidad para hacerlo, salvo prueba en contrario."

De lo transcrito se desprende que este órgano jurisdiccional debe analizar, primeramente, si la representación de quien promueve a nombre de la entidad, poder u órgano, se encuentra consignada en ley; en caso contrario, podrá presumirse dicha representación y capacidad, salvo prueba en contrario.

En el presente caso, Miguel Ángel Ortega Jiménez promueve la controversia constitucional, ostentándose con el carácter de síndico del Ayuntamiento del Municipio de Pachuca de Soto, Estado de Hidalgo, y como representante de ese Ayuntamiento.

El promovente acredita tal carácter con la copia certificada de la constancia de mayoría relativa a la elección de Ayuntamientos para el periodo dos mil-dos mil tres, expedida por el presidente del Concejo General del Instituto Estatal Electoral del Estado de Hidalgo, el dos de diciembre de mil novecientos noventa y nueve, que obra agregada a fojas setenta y siete de este expediente.

Toda vez que la norma materia de impugnación en esta controversia es la Ley Orgánica Municipal del Estado de Hidalgo vigente, al caso resulta aplicable el contenido de la ley anterior a la vigente, que en su artículo 49, fracción II, disponía:

"Artículo 49. El síndico del Ayuntamiento, tendrá las siguientes facultades y obligaciones:

"...

"II. La representación jurídica del Ayuntamiento en los litigios en que éste fuere parte."

De lo anterior se advierte que corresponde al síndico la representación jurídica de los Ayuntamientos.

En estas circunstancias, de conformidad con lo dispuesto por el artículo 11, primer párrafo, de la ley reglamentaria de la materia, el síndico promovente tiene la representación legal del Ayuntamiento y, por ende, el Municipio actor está legitimado para acudir a la presente controversia constitucional, de conformidad con lo dispuesto por el artículo 105, fracción I, inciso i), de la Constitución Federal.

QUINTO. A continuación se estudia la legitimación pasiva, condición necesaria para la procedencia de la acción, ya que la parte demandada debe ser la obligada por la ley a satisfacer la exigencia que se demanda.

Las autoridades demandadas en la presente controversia constitucional son el Congreso y el Poder Ejecutivo del Estado de Hidalgo.

En representación del Congreso del Estado de Hidalgo, comparece Angélica García Arrieta, en su carácter de presidenta de la Diputación Permanente de ese órgano legislativo, lo cual acredita con la copia certificada de la declaratoria de instalación de dicha Diputación Permanente, de veintiocho de junio de dos mil uno, que aparece agregada a fojas doscientos treinta y uno a doscientos treinta y ocho de este expediente.

Los artículos 38, 57 y 59 de la Constitución del Estado de Hidalgo prevén:

"Artículo 38. El Congreso tendrá durante el año, dos periodos ordinarios de sesiones, como sigue:

"El primero se iniciará el primero de abril y concluirá el último de junio. El segundo comenzará el primero de octubre y termina el treinta y uno de diciembre.

"Los periodos no podrán prorrogarse más allá de la fecha de su terminación."

"Artículo 57. Durante los recesos del Congreso habrá una Diputación Permanente, compuesta de siete diputados con el

carácter de propietarios y otros dos como suplentes."

"Artículo 59. Son facultades de la Diputación Permanente:

"I. Convocar a sesiones extraordinarias por sí o a solicitud formulada por el gobernador del Estado;

"II. Conceder licencia al gobernador del Estado cuando sea por un lapso mayor de un mes y a los diputados, Magistrados del Tribunal Superior de Justicia, del Tribunal Fiscal Administrativo y del Tribunal Electoral, así como al procurador general de Justicia y al subprocurador de Asuntos Electorales, cuando sea por un periodo mayor de tres meses;

"III. Recibir la protesta al cargo de gobernador, Magistrados del Tribunal Superior de Justicia, del Tribunal Fiscal Administrativo y del Tribunal Electoral, así como al procurador general de Justicia y al subprocurador de Asuntos Electorales;

"IV. Resolver asuntos de su competencia y recibir durante el receso del Congreso del Estado las iniciativas de ley y proposiciones que le dirijan, turnándolas para dictamen a fin de que se despachen en el periodoinmediato de sesiones;

"V. Conocer las propuestas de nombramiento de los consejeros ciudadanos del Consejo General del Instituto Estatal Electoral y las de los Magistrados del Tribunal Electoral del Estado y de su licencia o renuncia, en los términos que establezca la ley de la materia;

"VI. Nombrar con carácter interino a los empleados de la Contaduría Mayor de Hacienda;

"VII. Nombrar gobernador provisional en los casos previstos por esta Constitución;

"VIII. Conocer en su caso, la propuesta del Ejecutivo para nombrar a los Magistrados del Tribunal Superior de Justicia y Tribunal Fiscal Administrativo, de la renuncia de éstos a su encargo. Así como la lista de propuestas que presente el titular del Ejecutivo para el nombramiento de procurador general de Justicia del Estado y de subprocurador de Asuntos Electorales, y de su renuncia o remoción;

"IX. Autorizar cualquier tipo de enajenación de los bienes inmuebles propiedad del Estado;

"X. Las demás que le confiere expresamente esta Constitución."

Por su parte, los artículos 129 y 131 de la Ley Orgánica del Poder Legislativo del Estado de Hidalgo prevén:

"Artículo 129. La Comisión Permanente ejercerá sus funciones durante los periodos de receso del Congreso."

"Artículo 131. Las facultades y obligaciones de la Comisión Permanente son las que le confiere el artículo 59 de la Constitución Política del Estado."

De lo transcrito se advierte que el Congreso del Estado de Hidalgo tendrá durante el año dos periodos ordinarios de sesiones; el primero se iniciará el primer día de abril y concluirá el último de junio, y el segundo comenzará el primero de octubre y terminará el treinta y uno de diciembre, y que durante los recesos del Congreso habrá una Diputación Permanente.

De esta forma se deduce que los periodos de receso de ese órgano legislativo comprenden del primero de julio al treinta de septiembre siguiente, y del primero de enero al treinta y uno de marzo siguiente.

Del análisis integral de los preceptos de la Constitución Política y de la Ley Orgánica del Poder Legislativo, ambas del Estado de Hidalgo, que regulan la actividad y facultades de la Diputación Permanente de dicho poder y de sus integrantes, se advierte que no prevén quién ejerce la representación legal de tal diputación; por tanto, al haberse presentado el oficio de contestación de demanda por la presidenta de la Diputación Permanente en comento, el diecinueve de julio de dos mil uno, esto es, durante el periodo de receso del Congreso Local, en términos del primer párrafo del artículo 11 de la Ley Reglamentaria de las Fracciones I y II del Artículo 105 de la Constitución Política de los Estados Unidos Mexicanos, transcrito en el considerando anterior, se debe presumir que quien comparece a contestar la demanda goza de la representación legal para hacerlo, al no existir en autos prueba en contrario que impida dicha presunción.

En las circunstancias anotadas, el referido Congreso cuenta con legitimación pasiva para comparecer a la presente controversia constitucional, ya que fue quien expidió la norma impugnada, como se advierte de la documental que obra agregada a fojas ciento treinta y siete a ciento noventa y cuatro de este expediente.

Ahora, no obstante que respecto del gobernador del Estado de Hidalgo, por auto de veinte de agosto de dos mil uno, se

tuvo por precluído su derecho para contestar la demanda de controversia constitucional, debe analizarse si esta autoridad es la obligada por la ley a satisfacer la exigencia que se demanda.

Del oficio de demanda se aprecia que al referido gobernador se le imputa la publicación de la Ley Orgánica Municipal del Estado de Hidalgo.

El artículo 61 de la Constitución Política del Estado de Hidalgo dispone:

"Artículo 61. Se deposita el ejercicio del Poder Ejecutivo en un ciudadano que se denominará Gobernador Constitucional del Estado de Hidalgo, quien durará en su encargo 6 años, debiendo tomar posesión el 1o. de abril del año correspondiente y nunca podrá ser reelecto."

De lo anterior se advierte que el ejercicio del Poder Ejecutivo del Estado de Hidalgo se deposita en el gobernador de la entidad, por tanto, dicha autoridad tiene legitimación pasiva para intervenir en la presente controversia constitucional, máxime que fue quien promulgó y ordenó la publicación de la ley impugnada, como se advierte de la documental que obra agregada a fojas sesenta y cinco a ciento nueve de este expediente.

SEXTO. En virtud de que las partes en la presente controversia constitucional no hacen valer ninguna causal de improcedencia o motivo de sobreseimiento diverso al analizado en el considerando segundo, ni este Alto Tribunal advierte que en el presente caso se actualice alguno de los señalados en los artículos 19 y 20 de la ley reglamentaria de la materia, se procede al análisis de los conceptos de invalidez expuestos en la demanda de controversia constitucional.

SÉPTIMO. En los conceptos de invalidez que se hacen valer, la parte actora aduce, esencialmente, que los preceptos de la Ley Orgánica Municipal del Estado de Hidalgo impugnados, son violatorios del artículo 115, fracciones I, II, incisos a), b), c), d) y e), III y IV, de la Constitución Política de los Estados Unidos Mexicanos.

A fin de estar en posibilidad de contestar dichos argumentos, es menester ubicar al Municipio dentro del orden jurídico de nuestra nación, pues sólo determinando su lugar en dicho sistema normativo, será posible definir con claridad las normas jurídicas que afectan la vida municipal, las facultades que les corresponden a cada uno de los niveles de gobierno en este ámbito, así como proporcionar un criterio de delimitación entre las facultades de creación normativa de las legislaturas y las que competen a los Ayuntamientos.

Por principio, hay que dejar sentado que todo orden jurídico es un sistema de normas que constituyen una unidad, la cual está determinada por el hecho de que la creación o el contenido de la de grado más bajo se encuentra establecida por otra de grado mayor y así sucesivamente hasta llegar a la norma de rango superior, que es la Constitución, en la cual se funda la validez de todo el ordenamiento jurídico.

La Constitución Federal es la norma suprema en nuestro país; a través de ella se imponen deberes, se crean limitaciones, se otorgan facultades y se conceden derechos. Nada ni nadie puede estar sobre ella, pues su naturaleza niega la posibilidad de que esté sometida a otro cuerpo normativo superior. Esto se traduce en la subordinación hacia ella de todas las normas del ordenamiento jurídico y en el hecho de que todos y cada uno de los actos de autoridad deben, asimismo, estar de acuerdo con ella.

Estos principios fundamentales del orden jerárquico normativo del derecho mexicano encuentran su fundamento en el artículo 133 de la Constitución Federal, concretamente, en la parte que expresa que: "Esta Constitución, las leyes del Congreso de la Unión que emanen de ella y todos los tratados que estén de acuerdo con la misma, celebrados y que se celebren por el presidente de la República, con aprobación del Senado, serán la Ley Suprema de toda la Unión."

Ahora bien, nuestra Constitución adoptó como forma de Estado, el sistema federal, y como forma de gobierno, el sistema republicano, democrático y representativo; de ello precisamente deriva la determinación constitucional de los ámbitos competenciales de cada orden jurídico parcial.

Al respecto, el artículo 40 de la Constitución de los Estados Unidos Mexicanos establece que: "Es voluntad del pueblo mexicano constituirse en una República representativa, democrática, federal, compuesta de Estados Libres y Soberanos en todo lo concerniente a su régimen interior; pero unidos en una Federación establecida según los principios de esta Ley Fundamental."; y por su parte, el artículo 41 dispone que: "El pueblo ejerce su soberanía por medio de los Poderes de la Unión, en los casos de la competencia de éstos, y por los de los Estados, en lo que toca a sus regímenes interiores, en los términos respectivamente establecidos por la presente Constitución Federal y las Particulares de los Estados, las que en ningún caso podrán contravenir las estipulaciones del Pacto Federal. ..."

Aunado a lo anterior, el artículo 44 de la propia Constitución define la naturaleza y territorio del Distrito Federal, que es la entidad federativa donde se asientan los Poderes Federales, y el artículo 122 prevé el régimen conforme al cual se debe

regir dicha entidad.

Por otro lado, el artículo 115 de este mismo cuerpo normativo fundamental expresa que los Estados tendrán como base de su división territorial y de su organización política y administrativa al Municipio Libre.

De lo anterior podemos desprender que en nuestro país existen varios órdenes normativos, esto es, un orden constitucional y diversos órdenes parciales.

A la luz del texto constitucional previo a la reforma de mil novecientos noventa y nueve al artículo 115, este Tribunal Pleno emitió el criterio contenido en la jurisprudencia P./J. 95/99, publicada en el Semanario Judicial de la Federación y su Gaceta, Novena Época, Tomo X, septiembre de 1999, página 709, conforme al cual determinó que dichos órdenes eran los siguientes: el orden constitucional, el orden federal, el orden local o estatal y el orden del Distrito Federal. La jurisprudencia invocada es del tenor siguiente:

"CONTROVERSIA CONSTITUCIONAL. LOS DIVERSOS ÓRDENES JURÍDICOS ESTABLECIDOS EN LA CONSTITUCIÓN FEDERAL TIENEN AUTONOMÍA FUNCIONAL Y ASIGNACIONES COMPETENCIALES PROPIAS. Del contenido de los artículos 1o., 40, 41, primer párrafo, 43, 44, 49, 105, fracción I, 115, fracción I, 116, primero y segundo párrafos, 122, primero y segundo párrafos, 124 y 133, de la Constitución Federal, puede distinguirse la existencia de cuatro órdenes jurídicos dentro del Estado mexicano, a saber: el federal, el local o estatal, el del Distrito Federal y el constitucional. Cada uno de ellos cuenta con asignaciones competenciales propias que, por lo general, son excluyentes entre sí, contando con autonomía para su ejercicio a cargo de las autoridades correspondientes."

El criterio anterior se sustentó en las siguientes consideraciones:

"Por principio de cuentas, debe subrayarse la existencia de los diferentes órdenes jurídicos que conforman el Estado mexicano, previstos en la propia Constitución Federal, cuya interrelación normativa se explica a continuación, para lo cual es preciso atender al contenido de los artículos 1o., 40, 41, primer párrafo, 43, 44, 49, 105, fracción I, 115, fracción I, 116, primero y segundo párrafos, 122, primero y segundo párrafos, 124 y 133, de la propia Ley Fundamental:

"...

"De los preceptos anteriores puede distinguirse la existencia de cuatro órdenes jurídicos dentro del Estado mexicano, con asignaciones competenciales propias y, por regla general, excluyentes entre sí, que implican descentralización y autonomía en cuanto a su ejercicio a cargo de las autoridades correspondientes, cuyas características esenciales, en relación con la cuestión que ocupa a este tribunal, se enumeran enseguida:

"a) Orden jurídico federal. Su existencia se encuentra sustentada en el artículo 40 de la Carta Magna, que consagra la unión de todos los Estados con autonomía hacia su interior, que se integran dentro de una Federación, la cual constituye un orden jurídico distinto. En su aspecto funcional, el numeral 49 dispone el principio de división de poderes para el ejercicio de las atribuciones de autoridad en el ámbito federal, desarrollando la competencia específica de cada uno de ellos en los artículos subsecuentes, que comprenden hasta el 107, destacando que las autoridades tienen jurisdicción sobre todo el territorio nacional, que abarca las treinta y un entidades federativas y el Distrito Federal, cuyas denominaciones y límites están descritos en los artículos 43 y 44. Se resalta también, como principio fundamental en la asignación de atribuciones competenciales en favor de los Poderes Federales, que las facultades de las autoridades de este orden jurídico deben encontrarse expresamente previstas a su favor en la Constitución Política del Estado mexicano, en términos de lo dispuesto en el numeral 124.

"b) Orden jurídico estatal o local. La existencia de este orden jurídico tiene apoyo en el artículo 40 constitucional, en cuanto prevé la existencia de Estados Libres y Soberanos en su régimen interior, enumerados en el artículo 43 de la propia Ley Fundamental. Las reglas con base en las cuales deberá estructurarse la división de poderes a cargo de las autoridades estatales se encuentran descritas en el numeral 116, siendo que la materia sustantiva sobre la cual tienen autonomía funcional se obtiene por exclusión de las atribuciones consagradas expresamente en favor de la Federación por la Constitución General, atento a la regla prevista en el artículo 124.

"Así, el régimen regulador de la unión de los Estados federales, señalado en los artículos 40 y 41 constitucionales, se encuentra cimentado en dos principios fundamentales y complementarios entre sí:

"1) La existencia de entidades federativas con libertad de autodeterminación en cuanto hace a su régimen interno, y

"2) Que el ejercicio de la autonomía estatal respete las prevenciones de la Constitución Federal.

"De acuerdo con los principios anteriores, debe ser la propia Carta Magna el documento que detalle el campo de

atribuciones que tiene la Federación y cada una de las entidades federativas, situación que se ve cumplida, de modo general, con lo consagrado en su artículo 124, cuyo ejercicio, aunque autónomo y discrecional, deberá respetar los postulados de la Constitución Federal. Así, la distribución de competencias se rige por el principio consagrado en el artículo 124 constitucional, conforme al cual se otorgan facultades expresas a los funcionarios federales, entendiéndose reservadas las demás a los Estados de la República, es decir, que la delimitación de competencias entre el orden federal y el de los Estados -miembros- se resuelve a base de listar expresamente las facultades de aquél, reservándose a las entidades federativas las que no lo estén. Los funcionarios federales, pues, no pueden realizar acto ninguno fuera del ámbito que la Constitución Federal señala; por su parte, los Estados ejercitan todas las facultades no asignadas a los órganos federales.

"En síntesis, la interpretación armónica de los artículos 124, 40 y 41 constitucionales lleva a concluir, como premisa, que las entidades federativas tendrán plena autonomía para que, sin transgredir los principios establecidos en la Constitución, resuelvan con libertad en las materias que la propia Carta Magna les ha reservado competencia, al no señalarlas de manera expresa en la competencia de la Federación.

"Es de destacarse, especialmente, que dentro del orden jurídico estatal aparece la figura del Municipio Libre, estructura de gobierno que si bien tiene como Norma Fundamental la autonomía funcional para la prestación de los servicios públicos a su cargo y el ejercicio del gobierno dentro de los límites territoriales que le corresponde, a través de los Ayuntamientos, conforme a lo establecido en el artículo 115, también guarda nexos indisolubles con los Poderes Locales que impide considerarlos como un orden jurídico independiente del local.

"Tomando en consideración la importancia que tienen las relaciones entre los Estados y sus Municipios, con base en el principio de la libertad que deben tener éstos en cuanto a su gestión, por ser la célula de poder que tiene un contacto más cercano con la población, en el artículo 115 de la Constitución se han regulado actos de trascendencia referidos a la injerencia de las autoridades estatales en el ámbito municipal, que ejemplificativamente se enumeran a continuación:

"Suspensión y desaparición de Ayuntamientos, o de sus gobiernos, por causas graves establecidas en la ley local, respetando el derecho de defensa de los funcionarios municipales (art. 115, fracción I, párrafo tercero).

"Designación de los miembros de los Consejos Municipales en el caso de la hipótesis anterior, cuando no puedan entrar en funciones los suplentes (art. 115, fracción I, párrafo tercero).

"Concurso de los Estados con los Municipios en servicios públicos, con base en lo establecido en la ley local (art. 115, fracción III).

"Establecimiento de contribuciones municipales sobre ciertos rubros (art. 115, fracción IV).

"Cumplimiento de convenios en relación con la administración de contribuciones municipales (art. 115, fracción IV).

"Establecimiento de participaciones federales a los Municipios con base en la ley estatal (art. 115, fracción IV).

"Concordancia de las Leyes de Ingresos municipales con los presupuestos de egresos presentados por los Ayuntamientos (art. 115, fracción IV).

"Administración y planificación de zonas de desarrollo municipal con base en la ley estatal y federal (art. 115, fracción V).

"Cumplimiento de convenios de regulación de territorios municipales y estatales limítrofes (art. 115, fracción VI).

"De los ejemplos anteriores se deduce la razón de que la pertenencia de los Municipios a un Estado autónomo sujeta también a los primeros a someter sus diferencias con otros Municipios, en principio, a la decisión de las autoridades de Gobierno Locales, por estar comprendidos todos dentro de un mismo orden normativo.

"...

"c) Orden Jurídico del Distrito Federal. El fundamento de su autonomía estructural y funcional, en relación con los órdenes jurídicos estudiados con antelación, es el artículo 122 constitucional, dispositivo que establece las prevenciones correspondientes a la coexistencia de los órganos de gobierno a quienes se encomienda ejercer el poder político de la entidad, sobre el espacio territorial descrito en el artículo 44 de la Carta Magna. Sus características son diversas a las del orden jurídico estatal, pero ello resulta ajeno a la presente controversia.

"d) Orden jurídico constitucional. Según puede apreciarse de las precisiones relativas a los demás órdenes jurídicos, el constitucional es el que establece, en su aspecto orgánico, el sistema de competencias al que deberán ceñirse la Federación, Estados y Municipios, y Distrito Federal. En lo que se conoce en la doctrina como aspecto dogmático, el orden jurídico

constitucional previene las obligaciones que deben ser respetadas, sin distinción, por las autoridades de los tres órdenes jurídicos anteriores.

"El orden jurídico constitucional tiende, además de establecer las reglas con base en las cuales deben ejercer sus funciones competenciales las autoridades de los demás órdenes normativos, a preservar la regularidad en dicho ejercicio, consistente en que éste se lleve a cabo dentro del marco de las atribuciones establecidas, sin nunca rebasar los principios rectores previstos en la Constitución Federal, ya sea en perjuicio de los gobernados, por violación de garantías individuales, o bien afectando la esfera de competencia que corresponde a las autoridades de otro orden jurídico.

"Para lograr obtener lo anterior, los Poderes Constituyente y Reformador han establecido diversos medios de control de la regularidad constitucional referidos a los órdenes jurídicos federal, estatal y del Distrito Federal, entre los que se encuentran las controversias constitucionales, cuya resolución se ha encomendado a esta Suprema Corte, en su carácter de tribunal constitucional, encargado de velar que la actuación de las autoridades se ajuste a lo establecido en la Carta Magna, encontrando sustento jurídico en el artículo 105, fracción I, antes transcrito.

"La razón de ser de esos medios de control radica en que en el sistema constitucional del Estado federal, donde coexisten los órdenes jurídicos descritos con antelación, el ordenamiento que debe darles unidad ycohesión es la propia Constitución. De este modo, el orden jurídico constitucional se erige como un orden total, al extender su validez y eficacia normativa de una manera absoluta sobre los órdenes jurídicos parciales.

"En consecuencia, es de concluirse que el ejercicio de control de la regularidad constitucional es una actividad jurídica que no puede ser ubicada, estrictamente, como función propia de ninguno de los órdenes parciales, federal o locales, pues si la pretensión del referido control es la salvaguarda del orden primario o total, la función interpretativa y de decisión sobre si un acto de autoridad está o no apegado a la Norma Fundamental, debe reputarse como una función de carácter constitucional, que no es susceptible de equipararse a ninguno de los órdenes inmediatamente subordinados a la Constitución -el federal propiamente dicho y los órdenes estatales-, en virtud de que las hipótesis de control contempladas en la Carta Magna permiten que los actos de autoridad, provenientes tanto de la Federación como de las entidades que la componen, puedan ser anulados por una determinación de uno de los órganos del Poder Judicial Federal, en este caso la Suprema Corte, en ejercicio, como se dijo, de una función de orden constitucional, superior a los restantes órdenes jurídicos parciales."

Resulta importante hacer notar que respecto del Municipio, este Alto Tribunal sostuvo en la resolución que se citó anteriormente, lo siguiente:

"Es de destacarse, especialmente, que dentro del orden jurídico estatal aparece la figura del Municipio Libre, estructura de gobierno que si bien tiene como Norma Fundamental la autonomía funcional para la prestación de los servicios públicos a su cargo y el ejercicio del gobierno dentro de los límites territoriales que le corresponde, a través de los Ayuntamientos, conforme a lo establecido en el artículo 115, también guarda nexos indisolubles con los Poderes Locales que impide considerarlos como un orden jurídico independiente del local."

Es preciso aclarar que las consideraciones anteriores fueron emitidas por este Alto Tribunal con anterioridad a la reforma constitucional al artículo 115 de veintitrés de diciembre de mil novecientos noventa y nueve, razón por la cual resulta necesario ponderar el contenido de dicha reforma constitucional y su trascendencia, para efectos de determinar su impacto en el esquema de órdenes jurídicos que existen en nuestro país.

El texto del artículo 115 que derivó de la aludida reforma del año de mil novecientos noventa y nueve, señala lo siguiente:

"Artículo 115. Los Estados adoptarán, para su régimen interior, la forma de gobierno republicano, representativo, popular, teniendo como base de su división territorial y de su organización política y administrativa el Municipio Libre, conforme a las bases siguientes:

(Reformado primer párrafo, D.O.F. 23 de diciembre de 1999)
"I. Cada Municipio será gobernado por un Ayuntamiento de elección popular directa, integrado por un presidente municipal y el número de regidores y síndicos que la ley determine. La competencia que esta Constitución otorga al Gobierno Municipal se ejercerá por el Ayuntamiento de manera exclusiva y no habrá autoridad intermedia alguna entre éste y el Gobierno del Estado.

"Los presidentes municipales, regidores y síndicos de los Ayuntamientos, electos popularmente por elección directa, no podrán ser reelectos para el periodo inmediato. Las personas que por elección indirecta, o por nombramiento o designación de alguna autoridad desempeñen las funciones propias de esos cargos, cualquiera que sea la denominación que se les dé, no podrán ser electas para el periodo inmediato. Todos los funcionarios antes mencionados, cuando tengan el carácter de propietarios, no podrán ser electos para el periodo inmediato con el carácter de suplentes, pero los que tengan el carácter

1/25/13 2:07 PM

de suplentes sí podrán ser electos para el periodo inmediato como propietarios a menos que hayan estado en ejercicio.

"Las Legislaturas Locales, por acuerdo de las dos terceras partes de sus integrantes, podrán suspender Ayuntamientos, declarar que éstos han desaparecido y suspender o revocar el mandato a alguno de sus miembros, por alguna de las causas graves que la ley local prevenga, siempre y cuando sus miembros hayan tenido oportunidad suficiente para rendir las pruebas y hacerlos (sic) alegatos que a su juicio convengan.

(Reformado, D.O.F. 23 de diciembre de 1999)
"Si alguno de los miembros dejare de desempeñar su cargo, será sustituido por su suplente, o se procederá según lo disponga la ley.

(Reformado, D.O.F. 23 de diciembre de 1999)
"En caso de declararse desaparecido un Ayuntamiento o por renuncia o falta absoluta de la mayoría de sus miembros, si conforme a la ley no procede que entren en funciones los suplentes ni que se celebren nuevas elecciones, las Legislaturas de los Estados designarán de entre los vecinos a los Consejos Municipales que concluirán los periodos respectivos; estos consejos estarán integrados por el número de miembros que determine la ley, quienes deberán cumplir los requisitos de elegibilidad establecidos para los regidores;

"II. Los Municipios estarán investidos de personalidad jurídica y manejarán su patrimonio conforme a la ley.

(Reformado, D.O.F. 23 de diciembre de 1999)
"Los Ayuntamientos tendrán facultades para aprobar, de acuerdo con las leyes en materia municipal que deberán expedir las Legislaturas de los Estados, los bandos de policía y gobierno, los reglamentos, circulares y disposiciones administrativas de observancia general dentro de sus respectivas jurisdicciones, que organicen la administración pública municipal, regulen las materias, procedimientos, funciones y servicios públicos de su competencia y aseguren la participación ciudadana y vecinal.

(Adicionado, D.O.F. 23 de diciembre de 1999)
"El objeto de las leyes a que se refiere el párrafo anterior será establecer:

"a) Las bases generales de la administración pública municipal y del procedimiento administrativo, incluyendo los medios de

impugnación y los órganos para dirimir las controversias entre dicha administración y los particulares, con sujeción a los principios de igualdad, publicidad, audiencia y legalidad;

"b) Los casos en que se requiera el acuerdo de las dos terceras partes de los miembros de los Ayuntamientos para dictar resoluciones que afecten el patrimonio inmobiliario municipal o para celebrar actos o convenios que comprometan al Municipio por un plazo mayor al periodo del Ayuntamiento;

"c) Las normas de aplicación general para celebrar los convenios a que se refieren tanto las fracciones III y IV de este artículo, como el segundo párrafo de la fracción VII del artículo 116 de esta Constitución;

"d) El procedimiento y condiciones para que el Gobierno Estatal asuma una función o servicio municipal cuando, al no existir el convenio correspondiente, la Legislatura Estatal considere que el Municipio de que se trate esté imposibilitado para ejercerlos o prestarlos; en este caso, será necesaria solicitud previa del Ayuntamiento respectivo, aprobada por cuando menos las dos terceras partes de sus integrantes; y

"e) Las disposiciones aplicables en aquellos Municipios que no cuenten con los bandos o reglamentos correspondientes.

(Adicionado, D.O.F. 23 de diciembre de 1999)
"Las Legislaturas Estatales emitirán las normas que establezcan los procedimientos mediante los cuales se resolverán los conflictos que se presenten entre los Municipios y el Gobierno del Estado, o entre aquéllos, con motivo de los actos derivados de los incisos c) y d) anteriores;

(Reformado primer párrafo, D.O.F. 23 de diciembre de 1999)
"III. Los Municipios tendrán a su cargo las funciones y servicios públicos siguientes:

(Reformado, D.O.F. 23 de diciembre de 1999)
"a) Agua potable, drenaje, alcantarillado, tratamiento y disposición de sus aguas residuales;

"b) Alumbrado público.

(Reformado, D.O.F. 23 de diciembre de 1999)

"c) Limpia, recolección, traslado, tratamiento y disposición final de residuos;

"d) Mercados y centrales de abasto.

"e) Panteones.

"f) Rastro.

(Reformado, D.O.F. 23 de diciembre de 1999)
"g) Calles, parques y jardines y su equipamiento;

(Reformado, D.O.F. 23 de diciembre de 1999)
"h) Seguridad pública, en los términos del artículo 21 de esta Constitución, Policía Preventiva Municipal y Tránsito; e

"i) Los demás que las Legislaturas Locales determinen según las condiciones territoriales y socio-económicas de los Municipios, así como su capacidad administrativa y financiera.

(Reformado, D.O.F. 23 de diciembre de 1999)
"Sin perjuicio de su competencia constitucional, en el desempeño de las funciones o la prestación de los servicios a su cargo, los Municipios observarán lo dispuesto por las leyes federales y estatales.

(Adicionado, D.O.F. 23 de diciembre de 1999)
"Los Municipios, previo acuerdo entre sus Ayuntamientos, podrán coordinarse y asociarse para la más eficaz prestación de los servicios públicos o el mejor ejercicio de las funciones que les correspondan. En este caso y tratándose de la asociación de Municipios de dos o más Estados, deberán contar con la aprobación de las Legislaturas de los Estados respectivas. Así mismo cuando a juicio del Ayuntamiento respectivo sea necesario, podrán celebrar convenios con el Estado para que éste, de manera directa o a través del organismo correspondiente, se haga cargo en forma temporal de algunos de ellos, o bien se presten o ejerzan coordinadamente por el Estado y el propio Municipio;

(Adicionado, D.O.F. 14 de agosto de 2001)
"Las comunidades indígenas, dentro del ámbito municipal, podrán coordinarse y asociarse en los términos y para los efectos

que prevenga la ley.

"IV. Los Municipios administrarán libremente su hacienda, la cual se formará de los rendimientos de los bienes que les pertenezcan, así como de las contribuciones y otros ingresos que las legislaturas establezcan a su favor, y en todo caso:

"a) Percibirán las contribuciones, incluyendo tasas adicionales, que establezcan los Estados sobre la propiedad inmobiliaria, de su fraccionamiento, división, consolidación, traslación y mejora así como las que tengan por base el cambio de valor de los inmuebles.

"Los Municipios podrán celebrar convenios con el Estado para que éste se haga cargo de algunas de las funciones relacionadas con la administración de esas contribuciones.

"b) Las participaciones federales, que serán cubiertas por la Federación a los Municipios con arreglo a las bases, montos y plazos que anualmente se determinen por las Legislaturas de los Estados.

"c) Los ingresos derivados de la prestación de servicios públicos a su cargo.

(Reformado, D.O.F. 23 de diciembre de 1999)
"Las leyes federales no limitarán la facultad de los Estados para establecer las contribuciones a que se refieren los incisos a) y c), ni concederán exenciones en relación con las mismas. Las leyes estatales no establecerán exenciones o subsidios en favor de persona o institución alguna respecto de dichas contribuciones. Sólo estarán exentos los bienes de dominio público de la Federación, de los Estados o los Municipios, salvo que tales bienes sean utilizados por entidades paraestatales o por particulares, bajo cualquier título, para fines administrativos o propósitos distintos a los de su objeto público.

(Reformado, D.O.F. 23 de diciembre de 1999)
"Los Ayuntamientos, en el ámbito de su competencia, propondrán a las Legislaturas Estatales las cuotas y tarifas aplicables a impuestos, derechos, contribuciones de mejoras y las tablas de valores unitarios de suelo y construcciones que sirvan de base para el cobro de las contribuciones sobre la propiedad inmobiliaria.

(Adicionado, D.O.F. 23 de diciembre de 1999)
"Las Legislaturas de los Estados aprobarán las Leyes de Ingresos de los Municipios, revisarán y fiscalizarán sus cuentas

públicas. Los presupuestos de egresos serán aprobados por los Ayuntamientos con base en sus ingresos disponibles.

(Adicionado, D.O.F. 23 de diciembre de 1999)
"Los recursos que integran la hacienda municipal serán ejercidos en forma directa por los Ayuntamientos, o bien, por quien ellos autoricen, conforme a la ley;

(Reformada, D.O.F. 23 de diciembre de 1999)
"V. Los Municipios, en los términos de las leyes federales y estatales relativas, estarán facultados para:

"a) Formular, aprobar y administrar la zonificación y planes de desarrollo urbano municipal;

"b) Participar en la creación y administración de sus reservas territoriales;

"c) Participar en la formulación de planes de desarrollo regional, los cuales deberán estar en concordancia con los planes generales de la materia. Cuando la Federación o los Estados elaboren proyectos de desarrollo regional deberán asegurar la participación de los Municipios;

"d) Autorizar, controlar y vigilar la utilización del suelo, en el ámbito de su competencia, en sus jurisdicciones territoriales;

"e) Intervenir en la regularización de la tenencia de la tierra urbana;

"f) Otorgar licencias y permisos para construcciones;

"g) Participar en la creación y administración de zonas de reservas ecológicas y en la elaboración y aplicación de programas de ordenamiento en esta materia;

"h) Intervenir en la formulación y aplicación de programas de transporte público de pasajeros cuando aquéllos afecten su ámbito territorial; e

"i) Celebrar convenios para la administración y custodia de las zonas federales.

"En lo conducente y de conformidad a los fines señalados en el párrafo tercero del artículo 27 de esta Constitución, expedirán los reglamentos y disposiciones administrativas que fueren necesarios;

"VI. Cuando dos o más centros urbanos situados en territorios municipales de dos o más entidades federativas formen o tiendan a formar una continuidad demográfica, la Federación, las entidades federativas y los Municipios respectivos, en el ámbito de sus competencias, planearán y regularán de manera conjunta y coordinada el desarrollo de dichos centros con apego a la ley federal de la materia.

(Reformada, D.O.F. 23 de diciembre de 1999)
"VII. La Policía Preventiva Municipal estará al mando del presidente municipal, en los términos del reglamento correspondiente. Aquélla acatará las órdenes que el gobernador del Estado le transmita en aquellos casos que éste juzgue como de fuerza mayor o alteración grave del orden público.

"El Ejecutivo Federal tendrá el mando de la fuerza pública en los lugares donde resida habitual o transitoriamente;

(Reformada, D.O.F. 17 de marzo de 1987)
"VIII. Las leyes de los Estados introducirán el principio de la representación proporcional en la elección de los Ayuntamientos de todos los Municipios.

"Las relaciones de trabajo entre los Municipios y sus trabajadores, se regirán por las leyes que expidan las Legislaturas de los Estados con base en lo dispuesto en el artículo 123 de esta Constitución, y sus disposiciones reglamentarias.

"IX. (Derogada, D.O.F. 17 de marzo de 1987)

"X. (Derogada, D.O.F. 17 de marzo de 1987)."

A fin de determinar con precisión cuál es el contenido y alcance que debe atribuirse al precepto transcrito y concluir si a raíz del texto reformado puede considerarse que el Municipio tiene un orden jurídico propio, es necesario acudir al método genético-teleológico, pues sólo así es posible contar con los elementos suficientes para interpretarlo correctamente. Este método de interpretación ha sido explicado por el Pleno de este Alto Tribunal en la tesis P. XXVIII/98, publicada en el Semanario Judicial de la Federación y su Gaceta, Novena Época, Tomo VII, abril de 1998, página 117, que a la letra dice:

"INTERPRETACIÓN DE LA CONSTITUCIÓN. ANTE LA OSCURIDAD O INSUFICIENCIA DE SU LETRA DEBE ACUDIRSE A LOS MECANISMOS QUE PERMITAN CONOCER LOS VALORES O INSTITUCIONES QUE SE PRETENDIERON SALVAGUARDAR POR EL CONSTITUYENTE O EL PODER REVISOR. El propio artículo 14 de la Constitución Política de los Estados Unidos Mexicanos autoriza, frente a la insuficiencia u oscuridad de la letra de la ley, utilizar mecanismos de interpretación jurídica. Al desentrañar el sentido y alcance de un mandato constitucional deben privilegiarse aquellos que permitan conocer los valores o instituciones que se quisieron salvaguardar por el Constituyente o el Poder Revisor. Así, el método genético-teleológico permite, al analizar la exposición de motivos de determinada iniciativa de reforma constitucional, los dictámenes de las Comisiones del Congreso de la Unión y el propio debate, descubrir las causas que generaron determinada enmienda al Código Político, así como la finalidad de su inclusión, lo que constituye un método que puede utilizarse al analizar un artículo de la Constitución, ya que en ella se cristalizan los más altos principios y valores de la vida democrática y republicana reconocidos en nuestro sistema jurídico."

Al respecto, este Alto Tribunal ya ha sostenido en la controversia constitucional 19/2001, promovida por el Municipio de Santa Catarina, Nuevo León, resuelta el dieciocho de marzo de dos mil tres, por mayoría de ocho votos, lo siguiente:

"El desarrollo legislativo e histórico que ha tenido el artículo 115 constitucional, dedicado al Municipio Libre, es revelador de que esta figura es, en el Estado mexicano, la piedra angular sobre la cual se construye la sociedad nacional, en tanto es la primera organización estatal en entrar en contacto con el núcleo social. Los diversos documentos que integran los procesos legislativos de las reformas sufridas por ese numeral durante su vigencia así coinciden.

"Empero, ha sido muy largo el camino que el Municipio ha tenido que recorrer para hacer realidad su 'libertad', que fue incluso bandera emblemática de las luchas revolucionarias. No obstante su elevación a rango constitucional en mil novecientos diecisiete, fueron muchas las limitaciones y el cercenamiento que la propia Constitución impuso al Municipio, obligándolo o sometiéndolo a la voluntad del Ejecutivo Estatal o del Legislativo también estatal o, en el mejor de los casos, rodeándole de un contexto jurídico vulnerable.

"En esa evolución se pueden identificar tres momentos determinantes del Municipio Libre, partiendo de la importante consagración constitucional que en mil novecientos diecisiete se dio de esta figura:

"1) La reforma municipal de mil novecientos ochenta y tres, misma que, incluso, fue objeto de interpretación por parte de la

anterior integración de esta Suprema Corte; destacando aquella interpretación efectuada con motivo del amparo en revisión 4521/91, fallado por este Tribunal Pleno el siete de noviembre de mil novecientos noventa y nueve, en el que se sostuvo que la intención del legislador fue fortalecer de tal manera al Municipio con esta reforma, que ello permitía colegir que, para efectos de la legitimación activa de las controversias constitucionales, se podía admitir en el Municipio un carácter de Poder de los Estados; legitimación que le estaba, aparentemente, soslayada por el entonces texto del artículo 105 constitucional.

"2) La reforma judicial de mil novecientos noventa y cuatro, ejercicio legislativo que, si bien dedicado a lo judicial federal, llegó a trastocar la vida jurídico institucional del Municipio, en tanto le reconoció expresamente legitimación activa para acudir en defensa jurisdiccional de sus facultades y ámbito competencial ante esta Suprema Corte en vía de controversia constitucional. De alguna manera parece advertirse que el legislador ponderó la situación de indefensión municipal advertida y superada por el criterio antes referido, pues el Poder Reformador recogió y superó todo aquello puesto en evidencia con aquella interpretación judicial. Esta reforma ha sido de suma importancia para el Municipio, básicamente por los siguientes motivos:

"Primero, el número de juicios de esta naturaleza iniciadospor Municipios, en comparación con los iniciados por otros entes políticos, es revelador del enorme impacto que esta reforma constitucional tuvo en la vida municipal y de la eficacia de la norma constitucional reformada; y

"Segundo, porque a partir de los fallos que ha venido emitiendo esta Suprema Corte en dichos juicios, fue advirtiéndose que muchas injerencias o interferencias de los Estados, ya sea del Ejecutivo o Legislativo Estatal, en la vida administrativa, política o jurídica de los Municipios se han hecho merced de licencia constitucional para ello. Esto es, si los Municipios no podían hacer realidad su autonomía, era porque la propia Constitución General autorizaba una serie de limitaciones a la misma a favor de las autoridades estatales.

"3) La reforma de mil novecientos noventa y nueve, conforme a la cual se avanzó en pro de la consolidación de la autonomía municipal y de su fortalecimiento, particularmente frente a las injerencias de los Gobiernos Estatales, y se superaron algunas de las limitaciones antes referidas."

La reforma constitucional a la que se refiere en último término el texto transcrito, se gestó entre los años de mil novecientos noventa y siete a mil novecientos noventa y nueve, tiempo durante el cual fueron presentándose a la Cámara de Diputados

nueve iniciativas por parte de distintos grupos parlamentarios que proponían modificaciones al artículo 115.

Cuando finalmente se agendó la reforma municipal, estas nueve propuestas se estudiaron de manera conjunta por la comisión encargada de dictaminarlas y, como resultado de su trabajo, se elaboró un proyecto único de reforma constitucional que fue el que, a la postre, se discutió y aprobó por ambas Cámaras.

Los principales puntos de la reforma de veintitrés de diciembre de mil novecientos noventa y nueve al artículo 115 de la Constitución Federal pueden sintetizarse de la siguiente forma:

a) El reconocimiento expreso del Municipio como ámbito de gobierno que se realizó en la fracción I, al sustituir el término "administrado" por "gobernado";

b) El fortalecimiento de su facultad reglamentaria en los temas referidos en la fracción II, además de la limitación del contenido de las leyes estatales sobre cuestiones municipales;

c) El reconocimiento de competencias exclusivas en materia de servicios y funciones públicas en la fracción III, sustituyéndose el concurso del Estado en dicha competencia por la posibilidad de celebrar convenios para la asunción de una función o servicio público por parte del Estado, siempre y cuando medie solicitud del Ayuntamiento, así como el incremento del catálogo de funciones y servicios, además de la posibilidad de coordinación intermunicipal para estos temas, existiendo incluso posibilidad de asociación entre Municipios de diversos Estados;

d) Facultad de iniciativa en lo referente a tributos relacionados con la propiedad inmobiliaria en la fracción IV, limitando los supuestos de exención determinados constitucionalmente respecto de las contribuciones municipales;

e) En lo concerniente al catálogo de facultades que en el sistema constitucional de concurrencia regula la fracción V del artículo 115, además de las facultades de las que ya gozaban en materia de aprobación y administración de los planes de desarrollo urbano, se adicionó la de participar en la formulación de planes de desarrollo regional, así como la obligación de la Federación y del Estado de asegurar la participación de los Municipios en ésta; autorizar el uso del suelo adicionalmente a las facultades de control y vigilancia que ya tenía; participar en la elaboración y aplicación de programas de ordenamiento de zonas de reservas ecológicas, además de sus facultades de creación y administración de éstas; intervenir en la formulación y aplicación de programas de transporte público de pasajeros cuando aquéllos afecten su ámbito territorial y

celebrar convenios para la administración y custodia de las zonas federales; y,

f) La transmisión del mando de la Policía Preventiva Municipal del gobernador al presidente municipal, quien sólo acatará las órdenes del primero en los casos que aquél juzgue como de fuerza mayor o alteración grave del orden público, así como la habilitación al reglamento municipal en esta materia en la fracción VII.

La relación anterior pone de manifiesto que la reforma aumentó de forma significativa las atribuciones de los Municipios y consolidó su ámbito de gobierno. A continuación se procede al análisis de algunos de los anteriores puntos con más detalle.

Por cuanto atañe al reconocimiento expreso del Municipio como ámbito de gobierno, es de señalarse que en el dictamen de la Comisión de Gobernación y Puntos Constitucionales, se estimó que era necesario reformar la fracción I del artículo 115 constitucional, en su primer párrafo, con la intención de reconocer expresamente el carácter del Municipio como ámbito de gobierno. Para ello se consideró conveniente sustituir en ese párrafo la frase "cada Municipio será administrado por un Ayuntamiento de elección popular directa", por la que dice que "cada Municipio será gobernado por un Ayuntamiento de elección popular directa", para dejar clara la naturaleza del Ayuntamiento como órgano de Gobierno del Municipio.

Una de las novedades de la reforma de mil novecientos noventa y nueve, por tanto, consistió en caracterizar de manera explícita al Municipio como órgano de gobierno, culminando así una evolución que de alguna manera venía experimentando el Municipio desde las reformas constitucionales de mil novecientos ochenta y tres y mil novecientos noventa y cuatro, cuyo contenido y trascendencia ya fue referido en líneas anteriores. A lo largo de esta evolución, los Municipios asistieron a un progresivo desarrollo y consolidación de varias de sus facultades, como la de emitir su propia normatividad, a través de bandos y reglamentos, aun cuando estaba limitada al mero desarrollo de las bases normativas establecidas por los Estados, o como la de acudir a un medio de control constitucional a fin de defender una esfera jurídica de atribuciones propias y exclusivas. Estas notas son las que permitían concebir al Municipio como un ente cuyo desempeño iba más allá del de un órgano de administración por región.

El carácter de órgano de gobierno del Ayuntamiento ya le había sido reconocido, inclusive, por esta Suprema Corte de Justicia en diversas tesis de jurisprudencia y aisladas, de las que puede inferirse que desde antes de la reforma de mil novecientos noventa y nueve al artículo 115 constitucional, el Municipio ya contaba con autonomía funcional y asignaciones competenciales propias.

Las tesis referidas son las publicadas en la Novena Época, Pleno y Segunda Sala, Semanario Judicial de la Federación y su Gaceta, Tomos X, septiembre de 1999; VIII, diciembre de 1998; VII, febrero de 1998; XI, febrero de 2000; P./J. 96/99; P. LXXIII/98; 2a. XIII/98; P./J. 10/2000; páginas 705, 790, 337 y 509, respectivamente, y son las siguientes:

"CONTROVERSIA CONSTITUCIONAL. EL ORDEN JURÍDICO ESTATAL COMPRENDE LAS RELACIONES ENTRE LOS PODERES LOCALES Y SUS MUNICIPIOS. Dentro del orden jurídico estatal se consagra la figura del Municipio Libre, estructura de gobierno que si bien tiene como Norma Fundamental la autonomía funcional para la prestación de los servicios públicos a su cargo y el ejercicio del gobierno dentro de los límites territoriales que le corresponde, a través de los Ayuntamientos, conforme a lo establecido en el artículo 115, fracción I, de la Constitución Federal, también guarda nexos jurídicos indisolubles con los Poderes Locales que impide considerar a los Municipios como un orden independiente del local, entre los cuales se pueden citar los siguientes: creación, suspensión o desaparición de Municipios y Ayuntamientos, revocación del mandato de alguno de sus miembros por la Legislatura Estatal, sujeción de la normatividad y actuación municipal a las bases legales que establezca el Congreso Local, aprobación del Gobierno Estatal de los ingresos y revisión de los egresos municipales, entre otras. De lo anterior se deduce que la pertenencia de los Municipios a un Estado autónomo sujeta a los primeros a someter sus diferencias con otros Municipios, en principio, a la decisión de las autoridades de Gobierno Locales, por estar comprendidos todos dentro de un mismo orden normativo.

"Controversia constitucional 31/97. Ayuntamiento de Temixco, Morelos. 9 de agosto de 1999. Mayoría de ocho votos. Ausente: José Vicente Aguinaco Alemán. Disidentes: José de Jesús Gudiño Pelayo y Guillermo I. Ortiz Mayagoitia. Ponente: Mariano Azuela Güitrón. Secretario: Humberto Suárez Camacho."

"CONTROVERSIA CONSTITUCIONAL. LEGITIMACIÓN ACTIVA Y LEGITIMACIÓN PASIVA. De la finalidad perseguida con la figura de la controversia constitucional, el espectro de su tutela jurídica y su armonización con los artículos 40, 41 y 49, en relación con el 115, 116 y 122 de la Constitución Política de los Estados Unidos Mexicanos, se desprende que podrán tener legitimación activa para ejercer la acción constitucional a que se refiere la fracción I del artículo 105 de la propia Ley Suprema, de manera genérica: la Federación, una entidad federada, un Municipio y Distrito Federal (que corresponden a los niveles de gobierno establecidos en la Constitución Federal); el Poder Ejecutivo Federal, el Congreso de la Unión, cualesquiera de las Cámaras de éste o la Comisión Permanente (Poderes Federales); los poderes de una misma entidad federada (Poderes Locales); y por último, los órganos de gobierno del Distrito Federal, porque precisamente estos órganos primarios del Estado, son los que pueden reclamar la invalidez de normas generales o actos que estimen violatorios del ámbito competencial que para ellos prevé la Carta Magna. En consecuencia, los órganos derivados, en ningún caso, podrán

tener legitimación activa, ya que no se ubican dentro del supuesto de la tutela jurídica del medio de control constitucional. Sin embargo, en cuanto a la legitimación pasiva para intervenir en el procedimiento relativo no se requiere, necesariamente, ser un órgano originario del Estado, por lo que, en cada caso particular deberá analizarse ello, atendiendo al principio de supremacía constitucional, a la finalidad perseguida con este instrumento procesal y al espectro de su tutela jurídica.

"Solicitud de revocación por hecho superveniente en el incidente de suspensión relativo a la controversia constitucional 51/96. Gabriel Hinojosa Rivero y Marcial Benigno Felipe Campos y Diez, en su carácter de presidente municipal y síndico, respectivamente, del Ayuntamiento del Municipio de Puebla, del Estado de Puebla, contra el gobernador y el Congreso del propio Estado. 16 de junio de 1998. Unanimidad de diez votos (impedimento legal Mariano Azuela Güitrón). Ponente: Sergio Salvador Aguirre Anguiano. Secretario: Roberto Lara Hernández."

"CONTROVERSIAS CONSTITUCIONALES. EL ANÁLISIS PARA RESOLVER EL CONFLICTO SUSCITADO ENTRE DOS NIVELES DE GOBIERNO IMPLICA EL ESTUDIO TANTO DE LOS PRINCIPIOS CONSTITUCIONALES RELATIVOS, COMO DE LA MOTIVACIÓN Y CAUSA GENERADORA QUE LLEVÓ AL LEGISLADOR A ELEVARLOS A RANGO CONSTITUCIONAL. Acorde con su propia y especial naturaleza, las controversias constitucionales constituyen una acción cuyo objetivo esencial es permitir la impugnación de los actos y disposiciones generales que afecten las respectivas facultades de cualquiera de los diferentes niveles de gobierno, o que de alguna manera se traduzcan en una invasión a su ámbito competencial provocada por otro nivel de gobierno; todo esto con el fin de que se respeten las facultades y atribuciones que a cada uno corresponde, de tal manera que cada nivel de gobierno esté en aptitud de llevar a cabo y agotar en sus términos, todas aquellas que el propio sistema federal le otorga a través de la Carta Magna. Con este propósito, al resolver el fondo, se tendrán que analizar los principios rectores elevados a rango constitucional, que determinan los respectivos ámbitos de competencia de cada nivel de gobierno y en los que se precisan las facultades y atribuciones de cada uno de éstos, lo cual debe hacerse también considerando la propia motivación y causa generadora que llevó al legislador a la inclusión de dichos principios e instituciones fundamentales como lineamientos de nuestro sistema federal, de tal manera que se aprecie en forma cierta el sentido y teleología de éstos para una correcta interpretación y aplicación de los mismos en beneficio de la sociedad.

"Recurso de reclamación en la controversia constitucional 51/96. Ayuntamiento del Municipio de Puebla, Estado de Puebla. 5 de septiembre de 1997. Unanimidad de cuatro votos. Ausente: Sergio Salvador Aguirre Anguiano. Ponente: Genaro David Góngora Pimentel. Secretario: Osmar Armando Cruz Quiroz."

"AUTORIDAD INTERMEDIA. INTERPRETACIÓN DE LA FRACCIÓN I DEL ARTÍCULO 115 DE LA CONSTITUCIÓN FEDERAL. El

artículo 115, fracción I, de la Constitución Federal, establece que cada Municipio será administrado por un Ayuntamiento y no habrá ninguna autoridad intermedia entre éste y el Gobierno del Estado. El análisis de los antecedentes históricos, constitucionales y legislativos que motivaron la prohibición de la autoridad intermedia introducida por el Constituyente de mil novecientos diecisiete, lo cual obedeció a la existencia previa de los llamados jefes políticos o prefectos, que política y administrativamente se ubicaban entre el gobierno y los Ayuntamientos y tenían amplias facultades con respecto a estos últimos, puede llevar a diversas interpretaciones sobre lo que en la actualidad puede constituir una autoridad de esta naturaleza. Al respecto, los supuestos en que puede darse dicha figura son los siguientes: a) Cuando fuera del Gobierno Estatal y del Municipal se instituye una autoridad distinta o ajena a alguno de éstos; b) Cuando dicha autoridad, cualquiera que sea su origen o denominación, lesione la autonomía municipal, suplantando o mediatizando sus facultades constitucionales o invadiendo la esfera competencial del Ayuntamiento; y, c) Cuando esta autoridad se instituye como un órgano intermedio de enlace entre el Gobierno del Estado y del Municipio, impidiendo o interrumpiendo la comunicación directa que debe haber entre ambos niveles de gobierno.

"Controversia constitucional 4/98. Ayuntamiento del Municipio de Puebla, Puebla y otros del mismo Estado. 10 de febrero de 2000. Unanimidad de nueve votos. Ausentes: Mariano Azuela Güitrón y José de Jesús Gudiño Pelayo. Ponente: Sergio Salvador Aguirre Anguiano. Secretario: Osmar Armando Cruz Quiroz."

Derivado de lo anterior, puede sostenerse a manera de corolario, lo siguiente:

• A partir de la reforma constitucional que se gestó en el año de mil novecientos ochenta y tres, los Municipios asistieron a un progresivo desarrollo y consolidación de varias de sus facultades, como la de emitir su propia normatividad, a través de bandos y reglamentos, aun cuando estaba limitada al mero desarrollo de las bases normativas establecidas por los Estados.

• Asimismo, como consecuencia de la reforma de mil novecientos noventa y cuatro del artículo 105 de la Constitución Federal, se le otorgó al Municipio la facultad de acudir a un medio de control constitucional (la controversia constitucional), a fin de defender una esfera jurídica de atribuciones propias y exclusivas.

• Por último, la reforma constitucional de mil novecientos noventa y nueve trajo consigo, entre otras innovaciones, la sustitución en el primer párrafo, de la fracción I del artículo 115 constitucional, de la frase "cada Municipio será administrado por un Ayuntamiento de elección popular directa", por la que dice "cada Municipio será gobernado por un Ayuntamiento de elección popular directa", lo que no es otra cosa sino el reconocimiento expreso de una evolución que ha

venido sufriendo el Municipio desde las reformas constitucionales de mil novecientos ochenta y tres y mil novecientos noventa y cuatro.

Los puntos antes reseñados permiten a este Tribunal Pleno concluir la existencia de un orden jurídico municipal.

En efecto, el carácter de órgano de gobierno del Ayuntamiento está relacionado con la facultad reglamentaria que se le otorgó desde mil novecientos ochenta y tres, la cual es inherente a todo poder de mando, así como con la existencia de un ámbito de atribuciones municipales exclusivas susceptibles de ser salvaguardadas a través de un medio de control constitucional, lo cual, como ha sostenido este Alto Tribunal, es singular y característico de las relaciones entre distintos niveles de gobierno.

La conceptualización del Municipio como órgano de gobierno conlleva además el reconocimiento de una potestad de auto-organización, en virtud de la cual, si bien el Estado regula un cúmulo de facultades esenciales del Municipio, quedan para el Ayuntamiento potestades adicionales que le permiten definir la estructura de sus propios órganos de administración, sin contradecir aquellas normas básicas o bases generales que expida la legislatura. Lo anterior queda confirmado tan pronto se concatena este concepto explícito del Municipio como "órgano de gobierno" con el contenido que la reforma otorgó a la facultad reglamentaria municipal, según se verá a continuación.

En efecto, por cuanto se refiere al fortalecimiento de la facultad reglamentaria del Municipio, es necesario recordar que desde mil novecientos ochenta y tres, se le había reconocido constitucionalmente una facultad reglamentaria. Su ejercicio, sin embargo, se supeditaba a ser un mero desarrollo de las bases normativas que establecían las Legislaturas Estatales, sin que los Municipios pudieran emitir reglamentos susceptibles de atender verdaderamente a sus respectivas particularidades, pues actuaban simplemente como reglamentos de detalle de la ley. Lo anterior trajo como consecuencia que, en la práctica, la facultad reglamentaria de los Municipios quedara disminuida, pues las Legislaturas Estatales a través de las referidas bases normativas, condicionaban totalmente su alcance y eficacia.

A raíz de la situación descrita, el Órgano Reformador de la Constitución, en mil novecientos noventa y nueve, decidió modificar el segundo párrafo de la fracción II del artículo 115 constitucional, con un doble propósito: delimitar el objeto y alcances de las leyes estatales en materia municipal y ampliar la facultad reglamentaria del Municipio en determinadas materias.

Dicha delimitación fue realizada en el artículo 115, fracción II, de la Constitución Federal, que dispone:

"Artículo 115. Los Estados adoptarán, para su régimen interior, la forma de gobierno republicano, representativo, popular, teniendo como base de su división territorial y de su organización política y administrativa el Municipio Libre, conforme a las bases siguientes:

"...

"II. Los Municipios estarán investidos de personalidad jurídica y manejarán su patrimonio conforme a la ley.

(Reformado, D.O.F. 23 de diciembre de 1999)
"Los Ayuntamientos tendrán facultades para aprobar, de acuerdo con las leyes en materia municipal que deberán expedir las Legislaturas de los Estados, los bandos de policía y gobierno, los reglamentos, circulares y disposiciones administrativas de observancia general dentro de sus respectivas jurisdicciones, que organicen la administración pública municipal, regulen las materias, procedimientos, funciones y servicios públicos de su competencia y aseguren la participación ciudadana y vecinal.

(Adicionado, D.O.F. 23 de diciembre de 1999)
"El objeto de las leyes a que se refiere el párrafo anterior será establecer:

"a) Las bases generales de la administración pública municipal y del procedimiento administrativo, incluyendo los medios de impugnación y los órganos para dirimir las controversias entre dicha administración y los particulares, con sujeción a los principios de igualdad, publicidad, audiencia y legalidad;

"b) Los casos en que se requiera el acuerdo de las dos terceras partes de los miembros de los Ayuntamientos para dictar resoluciones que afecten el patrimonio inmobiliario municipal o para celebrar actos o convenios que comprometan al Municipio por un plazo mayor al periodo del Ayuntamiento;

"c) Las normas de aplicación general para celebrar los convenios a que se refieren tanto las fracciones III y IV de este artículo, como el segundo párrafo de la fracción VII del artículo 116 de esta Constitución;

"d) El procedimiento y condiciones para que el Gobierno Estatal asuma una función o servicio municipal cuando, al no existir el convenio correspondiente, la Legislatura Estatal considere que el Municipio de que se trate esté imposibilitado para ejercerlos o prestarlos; en este caso, será necesaria solicitud previa del Ayuntamiento respectivo, aprobada por cuando menos las dos terceras partes de sus integrantes; y

"e) Las disposiciones aplicables en aquellos Municipios que no cuenten con los bandos o reglamentos correspondientes.

(Adicionado, D.O.F. 23 de diciembre de 1999)
"Las Legislaturas Estatales emitirán las normas que establezcan los procedimientos mediante los cuales se resolverán los conflictos que se presenten entre los Municipios y el Gobierno del Estado, o entre aquéllos, con motivo de los actos derivados de los incisos c) y d) anteriores."

El texto reformado del artículo 115 constitucional, modificó el término "bases normativas" utilizado en la redacción anterior, por el de "leyes estatales en materia municipal", lo que obedeció a la necesidad de limitar el margen de actuación de las Legislaturas Estatales respecto de los Municipios, para acotarlo al establecimiento de un catálogo de normas esenciales tendentes a proporcionar un marco normativo homogéneo que asegure el funcionamiento regular del Ayuntamiento, pero sin permitir a dichas legislaturas intervenir en las cuestiones propias y específicas de cada Municipio.

Para entender en su exacta magnitud esta reforma, es conveniente acudir a su procedimiento de creación y, en específico, al dictamen emitido por la Comisión de Gobernación y Puntos Constitucionales de la Cámara de Diputados, documento cuyo análisis debe privilegiarse para efectos de la interpretación, en el que se expresó lo siguiente:

"4.2 La intención de esta Comisión Dictaminadora, consiste en fortalecer al ámbito de competencia municipal y las facultades de su órgano de gobierno. Por ello se propone tal y como lo plantean los autores de las iniciativas antes descritas, delimitar el objeto y los alcances de las leyes estatales que versan sobre cuestiones municipales. Lo que se traduce en que la competencia reglamentaria del Municipio, implique de forma exclusiva, los aspectos fundamentales para su desarrollo. De ahí que se defina y modifique en la fracción II, el concepto de bases normativas, por el de leyes estatales en materia municipal, conforme a las cuales los Ayuntamientos expiden sus reglamentos, y otras disposiciones administrativas de orden general.

"Dichas leyes se deben orientar a las cuestiones generales sustantivas y adjetivas, que le den un marco normativo

homogéneo a los Municipios de un Estado, sin intervenir en las cuestiones especificas de cada Municipio.

"En consecuencia, queda para el ámbito reglamentario como facultad de los Ayuntamientos, todo lo relativo a su organización y funcionamiento interno y de la administración pública municipal; así como para la regulación sustantiva y adjetiva de las materias de su competencia a través de bandos, reglamentos, circulares y demás disposiciones de carácter general; mientras que las leyes estatales en materia municipal, contemplarán lo referente al procedimiento administrativo, conforme a los principios que se enuncian en los nuevos incisos, y demás aspectos que contienen lo siguiente:

"4.2.1 En el inciso a) se establecen los medios de impugnación y los órganos correspondientes, para dirimir controversias entre los particulares y la administración publica municipal, los cuales deberán conducir a la observancia de los principios de igualdad, publicidad, audiencia y legalidad. Se deja a salvo para cada Ayuntamiento decidir, a través de disposiciones reglamentarias, formas y procedimientos de participación ciudadana y vecinal. La ley, sólo contemplará los principios generales en este rubro.

"4.2.2 En el inciso b), se establece que la ley deberá prever el requisito de mayoría calificada de los miembros de un Ayuntamiento en las decisiones relativas a la afectación de su patrimonio inmobiliario y la firma de convenios que por su trascendencia lo requieran; sin embargo, en dichas decisiones la Legislatura Estatal ya no intervendrá en la toma de la decisión a los Ayuntamientos.

"4.2.3 En el inciso c), se señala que las leyes estatales incluirán normas de aplicación general para la celebración de convenios de asociación entre dos o más Municipios, entre uno o varios Municipios y el Estado, incluyendo la hipótesis a que se refiere la fracción VII del artículo 116 constitucional, para fines de derecho público.

"4.2.4 En el inciso d), se prevé que la ley estatal contemple, con base en el ámbito de competencia exclusiva municipal, el procedimiento y las condiciones para que el Ayuntamiento transfiera la prestación de un servicio público o el ejercicio de una función a su cargo, en favor del Estado. Ello mediante la solicitud del Ayuntamiento a la legislatura, cuando no haya convenio con el Gobierno Estatal de que se trate.

"4.2.5 En el inciso e), se establece que las Legislaturas Estatales expedirán las normas aplicables a los Municipios que no cuenten con los reglamentos correspondientes. Es decir, la norma que emita el legislativo para suplir en estos casos, la falta de reglamentos básicos y esenciales de los Municipios, será de aplicación temporal en tanto el Municipio de que se trate,

emita sus propios reglamentos.

"Por último, la comisión considera necesario prever en un nuevo párrafo cuarto de la fracción II en análisis, que las Legislaturas Estatales establezcan las normas de procedimiento para resolver los conflictos que pudieran surgir entre los Gobiernos Estatales y los Municipios con motivo de la realización de los actos a que se refieren los incisos b) y d) de la fracción segunda en comento. Para dirimir tales diferencias, el órgano competente será la Legislatura Estatal correspondiente. Esta previsión desde luego se entiende sin perjuicio del derecho de los Gobiernos Estatales y de los Municipios de acudir en controversia constitucional en los términos del artículo 105 constitucional y su ley reglamentaria."

De la lectura del punto 4.2 del dictamen transcrito, se pueden inferir los siguientes puntos:

1) La intención de fortalecer el ámbito de competencia municipal y las facultades del Ayuntamiento, delimitando el objeto y los alcances de las leyes estatales que versan sobre cuestiones municipales, de ahí que se modifique el concepto de "bases normativas" por el de "leyes estatales en materia municipal", lo que implica una delimitación de los ámbitos competenciales de las legislaturas y de los Ayuntamientos.

2) Que las leyes estatales en materia municipal están limitadas a los temas que se enuncian en cinco incisos.

3) Que dichas leyes deben orientarse a las cuestiones generales sustantivas y adjetivas que le den un marco normativo homogéneo a los Municipios de un Estado, sin intervenir en las cuestiones específicas de cada Municipio.

4) Que lo anterior se traduce en que la competencia reglamentaria Municipal implique "de forma exclusiva los aspectos fundamentales para su desarrollo".

5) Que, en consecuencia, queda para el ámbito reglamentario de los Ayuntamientos todo lo relativo a su organización y funcionamiento interno y de la administración pública municipal, así como para la regulación sustantiva y adjetiva de las materias de su competencia a través de bandos, reglamentos, circulares y demás disposiciones de carácter general.

6) Que las Legislaturas Estatales pueden expedir las normas aplicables en los Municipios que no cuenten con los reglamentos correspondientes, es decir, las normas que emita el Legislativo podrán suplir la falta de reglamentos básicos y esenciales de los Municipios; sin embargo, serán de aplicación temporal y su eficacia estará sujeta a que los Municipios

emitan sus propios reglamentos.

Si, como destacan los puntos referidos, con anterioridad a la reforma de mil novecientos noventa y nueve, los Ayuntamientos no podían hacer una aportación normativa propia que respondiera a sus distintas necesidades y realidad social, a partir de la misma se fortalece y consolida el ámbito municipal, reconociéndose a los Ayuntamientos de manera expresa el carácter de órganos de gobierno, ampliando su esfera de atribuciones y facultándolos para emitir una nueva categoría de reglamentos que les permiten fungir con su nuevo carácter, en la medida en la que ahora les corresponde normar lo relativo a la organización y funcionamiento interno del Municipio, en lo que atañe a las cuestiones específicas que les corresponden, con la condición de que tales reglamentos respeten el contenido de las leyes en materia municipal.

La reforma constitucional de mil novecientos noventa y nueve disminuyó, por tanto, la extensión normativa de las leyes en materia municipal, ampliando la de los reglamentos expedidos por los Ayuntamientos con fundamento en la fracción II del artículo 115.

En efecto, en el texto del artículo 115 reformado en mil novecientos ochenta y tres, se establecía lo siguiente:

"Artículo 115. Los Estados adoptarán, para su régimen interior, la forma de gobierno republicano, representativo, popular, teniendo como base de su división territorial y de su organización política y administrativa el Municipio Libre, conforme a las bases siguientes:

"...

"II. Los Municipios estarán investidos de personalidad jurídica y manejarán su patrimonio conforme a la ley.

"Los Ayuntamientos poseerán facultades para expedir de acuerdo con las bases normativas que deberán establecer las Legislaturas de los Estados, los bandos de policía y buen gobierno y los reglamentos, circulares y disposiciones administrativas de observancia general dentro de sus respectivas jurisdicciones."

Como se advierte, antes de la reforma de mil novecientos noventa y nueve, los reglamentos emitidos por los Municipios tenían como único objeto detallar las bases normativas establecidas por las legislaturas, sin que existiera alguna limitación constitucional en cuanto a la extensión y contenido de las mencionadas bases.

A raíz de la multicitada reforma, sin embargo, los órganos legislativos estatales cuentan ahora con límites expresos a su producción normativa, y el Ayuntamiento goza de un ámbito más amplio de reglamentación garantizado constitucionalmente, a través del cual puede decidir las particularidades de su organización, de las materias de su competencia exclusiva, así como de las cuestiones de policía y gobierno, con el propósito de ajustarlas a su propio entorno.

Así, podemos señalar que, al establecer el Órgano Reformador que "Los Ayuntamientos tendrán facultades para aprobar de acuerdo con las leyes en materia municipal que deberán expedir las Legislaturas de los Estados", su intención es establecer una delimitación competencial según la cual la ley estatal tiene un contenido especificado en cinco incisos y el Municipio puede dictar "bandos de policía y gobierno, los reglamentos, circulares y disposiciones administrativas de observancia general dentro de sus respectivas jurisdicciones, que organicen la administración pública municipal, regulen las materias, procedimientos, funciones y servicios públicos de su competencia y aseguren la participación ciudadana y vecinal", en aquello orientado a atender a sus necesidades particulares. El propósito del Órgano Reformador, en otras palabras, es que el ámbito municipal y el ámbito estatal no se contrapongan, sino que guarden una relación de concordancia y complementariedad, dado que el Municipio forma parte de la entidad federativa. Por ello, conforme al artículo 115, la ley estatal sólo establece bases generales y los Municipios deben atenderlas, pero pueden regular ya en lo particular las demás cuestiones que requieran para su eficaz organización y gobierno.

La nueva categoría de reglamentos a que se ha venido haciendo referencia, son de fuente constitucional y tienen un contenido material propio que no puede contradecir el de las leyes en materia municipal a que se refiere la fracción II del artículo 115 constitucional, que fija ciertos lineamientos o bases generales, pero sí puede contener disposiciones que permitan a cada Municipio adoptar una variedad de formas adecuadas para regular su vida municipal, su organización administrativa y sus competencias constitucionales exclusivas, atendiendo a sus características sociales, económicas, biogeográficas, poblacionales, urbanísticas, etcétera.

El Constituyente Permanente, en consecuencia, trata de establecer un equilibrio competencial en el que no prevalezca la regla de que un nivel de autoridad tiene facultades mayores o de mayor importancia que el otro, sino un esquema en el que cada uno tenga las que constitucionalmente le corresponden: al Estado le corresponde sentar las bases generales a fin de que exista similitud en los aspectos fundamentales en todos los Municipios del Estado, y al Municipio le corresponde dictar sus normas específicas, sin contradecir esas bases generales, dentro de su jurisdicción.

Por lo anterior, es posible concluir que la intención fundamental de la reforma de mil novecientos noventa y nueve, en lo que se refiere a la fracción II del artículo 115 constitucional, es la siguiente: los Municipios deben ser iguales en lo que es consustancial a todos, lo cual se logra con la emisión de las bases generales que emite la Legislatura del Estado, pero tienen el derecho derivado de la Constitución Federal de ser distintos en lo que es propio de cada uno de ellos, lo cual se consigue a través de la facultad normativa exclusiva que les confiere la citada fracción II del artículo 115 constitucional.

Ahora, si bien es cierto que el Municipio tiene la posibilidad de crear normas jurídicas en virtud de una asignación competencial propia, también lo es que tiene relación con los otros órdenes jurídicos y que está sujeto al orden jurídico nacional, debiendo respetar, por tanto, el reparto de facultades previsto en la Constitución Federal y, en su caso, en las Estatales; lo cual en nada menoscaba el espacio de actuación que tiene asegurado por la primera, en el que no podrán intervenir directamente los Estados, salvo en el caso previsto por la fracción II, inciso e), es decir, ante la ausencia de normas reglamentarias expedidas por el Ayuntamiento, so pena de inconstitucionalidad por incompetencia del órgano que legisle en tales materias.

Así, la fracción II del artículo 115 constitucional, en realidad opera una delimitación competencial consistente en que la ley estatal tiene un contenido acotado y el Municipio puede dictar "reglamentos, circulares y disposiciones administrativas de observancia general dentro de sus respectivas jurisdicciones, que organicen la administración pública municipal, regulen las materias, procedimientos, funciones y servicios públicos de su competencia y aseguren la participación ciudadana y vecinal"; es decir, que al haberse delimitado el objeto de las leyes municipales, ha aumentado el contenido de la facultad reglamentaria de los Municipios.

En efecto, en la reforma de mil novecientos noventa y nueve el Órgano Reformador de la Constitución tuvo como objetivo esencial proporcionar un criterio de delimitación entre los ordenamientos que competen a los Ayuntamientos y los que corresponden a las leyes que en materia municipal emiten las legislaturas, por el cual se produce una expansión del ámbito de las normas reglamentarias municipales, pues los Ayuntamientos pueden ahora, a través de éstas y de acuerdo con las leyes estatales en materia municipal de contenido constitucionalmente delimitado, emitir disposiciones de policía y gobierno, organizar la administración pública municipal, regular las materias, procedimientos, funciones y servicios públicos de su competencia, y asegurar la participación ciudadana y vecinal, atendiendo a las particularidades que requiera su situación concreta.

La conclusión anterior se confirma con la interpretación del inciso e) de la fracción II del artículo 115 constitucional, el cual

señala lo siguiente:

"Artículo 115. ...

"II. ...

"El objeto de las leyes a que se refiere el párrafo anterior será establecer:

"...

"e) Las disposiciones aplicables en aquellos Municipios que no cuenten con los bandos o reglamentos correspondientes."

Como destacó el dictamen de la Comisión de Gobernación y Puntos Constitucionales de la Cámara de Diputados, el inciso e) de la fracción II es precisamente una de las piedras angulares en la construcción de una competencia material de las normas reglamentarias municipales que se distingue de la estatal. En efecto, este inciso reconoce indirectamente la entidad jurídica de la facultad reglamentaria municipal, al prever la existencia de normas que, en su ausencia, eviten la existencia de un vacío jurídico en los Municipios, en el entendido de que tales disposiciones serán de eficacia temporal hasta en tanto cada Municipio dicte sus propias normas.

Al respecto, el dictamen referido expresamente señala lo siguiente:

"4.2.5 En el inciso e), se establece que las Legislaturas Estatales expedirán las normas aplicables a los Municipios que no cuenten con los reglamentos correspondientes. Es decir, la norma que emita el Legislativo para suplir en estos casos, la falta de reglamentos básicos y esenciales de los Municipios, será de aplicación temporal en tanto el Municipio de que se trate, emita sus propios reglamentos."

El sistema de supletoriedad que prevé el inciso e), confirma que es facultad del Municipio expedir reglamentos con un contenido material propio, de tal suerte que si por alguna razón faltasen los mismos, la aplicación de las normas estatales será temporal, esto es, en tanto el Municipio expida las disposiciones relativas.

Como quedó señalado con anterioridad, hasta antes de la reforma de mil novecientos noventa y nueve las, legislaturas

tenían una facultad sin límites materiales para regular la vida municipal, por lo cual el marco de actuación del reglamento del Municipio se restringía a desarrollar el contenido de éstas. La reforma referida amplió la facultad reglamentaria de los Ayuntamientos -lo que implica la posibilidad de emitir su propia normatividad de acuerdo con su realidad, necesidades, proyectos y objetivos- y redujo la extensión normativa que pueden tener las leyes estatales en materia municipal, las cuales deben dejar espacio para el despliegue de la facultad reglamentaria de los reglamentos, o deben especificar que, en todo caso, lo ocupan de forma supletoria.

Ahora bien, como se señaló con anterioridad, este Tribunal Pleno se ha pronunciado en el sentido de que existe un orden jurídico, cuando un órgano de gobierno cuenta con asignaciones competenciales propias derivadas de la Constitución Federal que, por lo general, son excluyentes entre sí, contando con autonomía para su ejercicio.

En esta tesitura, toda vez que el esquema normativo antes desarrollado incluye el ejercicio por parte de los Ayuntamientos de asignaciones competenciales propias, debe concluirse que el Municipio tiene un orden jurídico propio.

Este reconocimiento a un orden jurídico propio del Municipio, de ninguna manera soslaya su relación con los otros órdenes jurídicos, lo que significa que el Municipio está sujeto al orden nacional, es decir, debe respetar la Constitución Federal, lostratados internacionales y las leyes federales, así como las Constituciones y leyes estatales.

En conclusión, la Constitución considera al Municipio Libre como un ámbito de gobierno y le atribuye facultades normativas con carácter exclusivo en determinados ámbitos, de lo que deriva su reconocimiento como orden jurídico parcial del Estado mexicano. Dicho orden se integra por las normas que a continuación se expresan:

a) Por la Constitución Política de los Estados Unidos Mexicanos;

b) Por los tratados internaciones, las leyes federales y sus reglamentos;

c) Por las Constituciones Locales;

d) Por las leyes locales y sus reglamentos; y,

e) Por los reglamentos municipales.

Lo anterior puede esquematizarse de una manera ilustrativa de la manera siguiente:

Ver esquema

A continuación se procede a desarrollar con detalle el contenido del cuadro sinóptico anterior, a fin de explicar con claridad la relación que existe entre las normas generadas por las entidades federativas y las emitidas por los Municipios.

Para ello, iniciaremos con el análisis del ámbito de las normas estatales (leyes locales y sus reglamentos), sin hacer un desarrollo sobre los siguientes órdenes: 1) Constitución Federal; 2) Tratados internacionales y leyes federales; y, 3) Constituciones Locales; respecto de la primera ya se ha hablado, y respecto de los últimos no se considera indispensable abundar para resolver la litis planteada en esta controversia.

Atendiendo a su ámbito de validez, las leyes expedidas por las autoridades estatales pueden clasificarse de la siguiente manera:

a) Normas que derivan del contenido de la Constitución Federal, que son aquellas que, incidiendo en el ámbito del Municipio, son expedidas por la Legislatura Estatal: 1) en acatamiento de una disposición expresa de la Constitución, incluyendo las que derivan del ejercicio de facultades concurrentes y de coordinación con la Federación; 2) en aplicación de un principio constitucional derivado de su interpretación, o bien, 3) que reproducen literal o casi literalmente el texto constitucional, esto es, son normas que encuentran la fuente de su ejercicio y sus límites en la propia Constitución Federal.

Al respecto, resulta conveniente abundar sobre la naturaleza jurídica de las facultades coincidentes, las cuales se definen como aquellas que tanto la Federación como las entidades federativas pueden realizar por disposición constitucional, y están establecidas en una forma amplia y en una forma restringida: llamando "amplia" a aquella modalidad en la cual no se faculta a la Federación o a las entidades federativas a expedir las bases o un cierto criterio de división entre ambos órdenes jurídicos y "restringida" cuando se confiere tanto a la Federación como a las entidades federativas, pero se concede a una de ellas la atribución para fijar bases o un cierto criterio de división de esa facultad.

Vale la pena aclarar que cuando se dice que la Federación o un Estado tienen competencias "coincidentes en un sentido amplio", está diciéndose que ambas partes realizan una porción de una cierta actividad (tratamiento de menores

infractores, por ejemplo), lo que en modo alguno significa que realicen la misma facultad. En el caso de la "coincidencia en un sentido restringido", se está ante una situación en la que la competencia para emitir las normas generales iniciales corresponde a la Federación, y es sólo a partir de lo que sus órganos legislativos dispongan que los Estados pueden conocer los alcances de sus competencias. Aquí es importante señalar que éstas no podrán ser sobre la misma materia, pues la misma la diferencia el órgano federal al emitir la ley, ni tampoco sobre la emisión de la ley, pues ello es competencia exclusiva de la Federación.

Por otro lado, las "facultades coexistentes" son definidas como aquellas que una parte de la misma facultad compete a la Federación y la otra a las entidades federativas; sin embargo, hay que tomar en consideración que no es posible hablar de la existencia de una misma facultad, por ejemplo, en materia de vías generales de comunicación, para luego considerar que la parte general de la misma corresponde a la Federación, y la parte no general a los Estados. En este caso, lo que puede ser un tema en el que se den ciertas relaciones materiales, no significa que se trate de una misma facultad, sino sencillamente de dos facultades: una de ellas, la federal otorgada expresamente, y otra de ellas por vía residual.

Finalmente, es necesario proporcionar ejemplos de las normas estatales que derivan del contenido de la Constitución Federal, como lo son aquellas que establecen las causas graves para la desaparición de los Ayuntamientos y la suspensión o revocación de alguno de los integrantes del Cabildo (artículo 115, fracción I, constitucional); las normas de elección de los miembros del Ayuntamiento (artículo 115, fracción I, párrafo segundo y fracción VIII constitucional); las normas relativas a la aprobación de la Ley de Ingresos y a las contribuciones municipales, las normas relativas a la distribución de las participaciones federales, la fiscalización de las cuentas públicas, la coordinación de las comunidades indígenas dentro del ámbito municipal (artículo 115, fracción IV, de la Constitución Federal); el régimen de responsabilidades de los servidores públicos (artículos 109 y 113 constitucionales); la protesta de respeto a la Constitución Federal (artículo 128 constitucional); los derechos y obligaciones de los ciudadanos mexicanos (artículos 34 a 36 constitucionales); las normas de planeación (artículos 26 y 115 constitucionales); las normas que regulan, dentro del marco legal expedido por la Federación, facultades concurrentes como asentamientos humanos, salud, equilibrio ecológico, educación, protección civil, turismo, etcétera (artículos 3o., 4o., 73, fracciones XVI, XXIX-C, XXIX-G, XXIX-J y XXIX-K); las normas relativas al sistema nacional de coordinación de seguridad pública (artículos 21 y 115, fracción VIII); la creación de un sistema de profesionalización de los servidores públicos (artículo 115, fracción VIII, en relación con el 123, apartado B y el 116, fracción VII); la creación de organismos de protección de los derechos humanos en nivel estatal (artículo 102, apartado B); la regulación de la deuda pública municipal (artículo 117), etcétera.

b) Normas derivadas del artículo 124 de la Constitución Federal, que son aquellas que emite la Legislatura Estatal en el ámbito de competencia que dicho precepto le reconoce como propio, y en ejercicio del cual los Estados pueden conceder a los Municipios facultades o recursos distintos a los que expresamente les otorga la Constitución Federal, o ampliar el ámbito de los mismos pero sin contradecir el texto de la Constitución Federal.

Verbigracia, cuando las legislaturas facultan a los Municipios para asumir un servicio público no previsto en el artículo 115 constitucional, o bien, cuando les autorizan el ejercicio de la función pública relativa al Registro Civil, o bien, el establecimiento de un sistema estatal de coordinación fiscal y la distribución de participaciones a los Municipios derivadas de los ingresos obtenidos por contribuciones estatales.

c) "Leyes en materia municipal", que son aquellas cuya denominación y fuente proviene específicamente de la fracción II del artículo 115 constitucional, y cuyo objeto, por disposición expresa de este precepto, está limitado a los siguientes puntos:

1. Las bases generales de administración pública municipal y del procedimiento administrativo, incluyendo los medios de impugnación y los órganos para dirimir las controversias entre dicha administración y los particulares, con sujeción a los principios de igualdad, publicidad, audiencia y legalidad;

2. Los casos que requieren el acuerdo de las dos terceras partes de los miembros del Ayuntamiento para dictar resoluciones que afecten el patrimonio inmobiliario municipal o para celebrar actos o convenios que comprometan al Municipio por un plazo mayor al periodo del Ayuntamiento;

3. Las normas de aplicación general para que el Municipio celebre convenios con otros Municipios o con el Estado sobre la prestación de servicios públicos y administración de contribuciones;

4. El procedimiento y condiciones para que el Gobierno Estatal asuma una función o servicio municipal cuando, al no existir el convenio correspondiente, la Legislatura Estatal considere que el Municipio de que se trate está imposibilitado para ejercerlos o prestarlos; en este caso será necesaria solicitud previa del Ayuntamiento respectivo aprobada por cuando menos las dos terceras partes de sus integrantes;

5. Las normas aplicables a falta de reglamentación municipal.

A continuación se procederá a la explicación de cada uno de los supuestos que integran el concepto de "leyes en materia municipal".

1. Bases generales de la administración pública municipal.

Como se ha afirmado con anterioridad, la reforma a la fracción II del artículo 115 de la Constitución General, de veintitrés de diciembre de mil novecientos noventa y nueve, sustituyó el concepto de "bases normativas" que utilizaba el texto anterior, por el de "leyes en materia municipal".

Esta modificación de la terminología utilizada en la Constitución atiende al propósito del Órgano Reformador de ampliar el ámbito competencial del Municipio y delimitar el objeto de las leyes estatales en materia municipal, a fin de potenciar la capacidad reglamentaria de los Ayuntamientos mediante la limitación de las facultades legislativas en materia municipal de los Congresos Locales.

En esta tesitura, como ya hemos subrayado, el término "bases generales de la administración pública municipal" no puede interpretarse en el sentido de que concede a las Legislaturas de los Estados una libertad ilimitada para legislar en materia municipal.

Sin embargo, tampoco puede interpretarse como una liberalidad total a favor de la facultad reglamentaria municipal, pues los Municipios tendrán que respetar el contenido de estas bases generales de la administración pública municipal, ya que al dictar sus normas reglamentarias no deben contradecir lo establecido en dichas bases que les resultan plenamente obligatorias por prever un marco que da uniformidad a los Municipios de un Estado en aspectos fundamentales.

En efecto, es menester partir de dos premisas esenciales que ya se han dejado sentadas: 1) Que la reforma de mil novecientos noventa y nueve tuvo por objeto ampliar y fortalecer el ámbito de competencia municipal; y, 2) Que fue objeto de dicha reforma en términos de lo establecido por el dictamen de la Comisión de Gobernación y Puntos Constitucionales de la Cámara de Diputados "delimitar el objeto y los alcances de las leyes estatales que versan sobre cuestiones municipales. Lo que se traduce en que la competencia reglamentaria del Municipio, implique de forma exclusiva los aspectos fundamentales para su desarrollo".

En ese sentido, en dicho dictamen se dispuso expresamente que:

"Dichas leyes se deben orientar a las cuestiones generales sustantivas y adjetivas, que le den un marco normativo homogéneo a los Municipios de un Estado, sin intervenir en las cuestiones específicas de cada Municipio. En consecuencia, queda para el ámbito reglamentario como facultad de los Ayuntamientos, todo lo relativo a su organización y funcionamiento interno y de la administración pública municipal; así como para la regulación sustantiva y adjetiva de las materias de su competencia a través de bandos, reglamentos, circulares y demás disposiciones de carácter general; mientras que las leyes estatales en materia municipal, contemplarán lo referente al procedimiento administrativo, conforme a los principios que se enuncian en los nuevos incisos ..."

De lo anterior se desprende que:

1) Las bases de la administración pública municipal que dicten las Legislaturas Estatales deben orientarse a regular sólo cuestiones generales del Municipio, tanto sustantivas como adjetivas;

2) El establecimiento de dichas cuestiones generales tendrá por objeto únicamente establecer un marco normativo homogéneo a los Municipios de un Estado, que debe entenderse como el caudal normativo indispensable que asegure el funcionamiento del Municipio, pero únicamente en los aspectos que requieran dicha uniformidad;

3) La competencia reglamentaria del Municipio implica la facultad exclusiva para regular los aspectos medulares de su propio desarrollo;

4) No es aceptable que con apoyo en la facultad legislativa con que cuenta el Estado para regular la materia municipal, intervenga en las cuestiones específicas de cada Municipio, toda vez que esto le está constitucionalmente reservado a éste.

Esto es, las bases generales de la administración pública municipal no pueden tener una extensión temática tal que anule la facultad del Municipio para reglamentar sus cuestiones específicas.

5) En consecuencia, queda para el ámbito reglamentario, como facultad exclusiva de los Ayuntamientos, lo relativo a policía y gobierno, su organización y funcionamiento interno, lo referente a la administración pública municipal, así como la facultad para emitir normas sustantivas y adjetivas en las materias de su competencia exclusiva, a través de bandos, reglamentos, circulares y demás disposiciones de carácter general, en todo lo que se refiera a las cuestiones específicas de

cada Municipio.

En efecto, la administración pública municipal requiere de un marco jurídico adecuado con la realidad, que si bien debe respetar lineamientos, bases generales o normas esenciales, también debe tomar en cuenta la variedad de formas que puede adoptar una organización municipal, atendiendo a las características sociales económicas, biogeográficas, poblacionales, urbanísticas, etcétera, de cada Municipio; de ello se sigue que no es posible establecer una organización interna única y definitiva para los diversos Municipios que integren una entidad federativa. En respeto de esa capacidad de organización y gobierno, los Municipios cuentan ahora con un ámbito de competencia propia, referido a la regulación de estas cuestiones particulares.

6) En ese sentido, las leyes estatales en materia municipal derivadas del artículo 115, fracción II, inciso a), de la Constitución Federal, esto es, "las bases generales de la administración pública municipal", esencialmente comprenden aquellas normas indispensables para el funcionamiento regular del Municipio; del Ayuntamiento como su órgano de gobierno y de su administración pública; las normas relativas al procedimiento administrativo, conforme a los principios que se enuncian en los nuevos incisos incluidos en la reforma, así como la regulación de los aspectos de las funciones y los servicios públicos municipales que requieren uniformidad para efectos de la posible convivencia y orden entre los Municipios de un mismo Estado.

En atención a todo lo anterior, en el dictamen de la Comisión de Gobernación y Puntos Constitucionales de la Cámara de Diputados se dijo expresamente que "Municipios con mayor libertad y autonomía, serán fuentes de creatividad y de nuevas iniciativas; Municipios con mayores responsabilidades públicas, serán fuentes de mayores gobiernos".

Por tanto, debe considerarse que las leyes estatales en materia municipal derivadas del artículo 115, fracción II, inciso a), de la Constitución Federal, esto es, "las bases generales de la administración pública municipal", esencialmente comprenden: lo referente al establecimiento de una serie de normas esenciales relacionadas con la estructura del Ayuntamiento y sus elementos, los derechos y obligaciones de sus habitantes, los aspectos esenciales de funcionamiento de la administración pública municipal vinculados con la transparencia en el ejercicio de gobierno, los procedimientos de creación normativa del Ayuntamiento, los aspectos que requieren ser uniformes respecto de las funciones y los servicios públicos municipales, etcétera.

En consecuencia, de manera enunciativa más no limitativa, pueden señalarse como bases generales de administración

pública municipal, las siguientes:

a) La regulación de las funciones esenciales de los órganos municipales establecidos en la Constitución Federal, es decir, del Ayuntamiento, del presidente municipal, de los síndicos y de los regidores, en la medida en que no interfieran con las cuestiones específicas de cada Municipio. Lo anterior, sin perjuicio de que cada Ayuntamiento pueda, a través de su facultad reglamentaria, establecer nuevas facultades y funciones a estos órganos, que le impriman un carácter individual a cada Municipio.

b) La regulación de las funciones esenciales de los órganos municipales cuya existencia es indispensable para el desenvolvimiento regular y transparente de la administración pública municipal, esto es, del secretario del Municipio y del órgano encargado de la tesorería municipal.

c) Las normas que regulen la población del Municipio en cuanto a su identidad, pertenencia, derechos y obligaciones básicas (por ejemplo: quiénes tienen la calidad de habitante o residente de un Municipio, cómo se pierde la residencia, qué derechos otorga la vecindad, la clasificación de núcleos de población en ciudades, pueblos, villas, comunidades, rancherías, etcétera).

d) La denominación de las autoridades auxiliares del Ayuntamiento.

e) Las normas relativas a la representación jurídica de los Ayuntamientos.

f) Las normas que establezcan la forma de creación de los reglamentos, bandos y demás disposiciones generales de orden municipal y su publicidad.

g) Las normas que establezcan mecanismos para evitar el indebido ejercicio del gobierno por parte de los munícipes.

h) Las normas que regulen la obligación de llevar un inventario de los bienes municipales.

i) Las normas que establezcan los principios generales en cuanto a la participación ciudadana y vecinal, respetando que corresponde al "Ayuntamiento decidir, a través de disposiciones reglamentarias, formas y procedimientos de participación ciudadana y vecinal", según se aclara en el multirreferido dictamen.

j) El periodo de duración del Gobierno Municipal y su fecha y formalidades de instalación, así como las normas que determinan las formalidades de entrega y recepción de los Ayuntamientos entrante y saliente.

k) El régimen de licencias, permisos e impedimentos de los funcionarios del Ayuntamiento.

l) Las formalidades esenciales de acuerdo con las cuales deben llevarse a cabo las sesiones del Cabildo.

m) La rendición de informes periódicos por parte de los munícipes al Cabildo.

n) El establecimiento de reglas en materia de formulación del presupuesto de egresos que faciliten la respectiva fiscalización, o los supuestos relativos a la falta de aprobación por el Ayuntamiento de dicho presupuesto en tiempo.

o) Sanciones y medidas de seguridad.

p) Las normas que se refieren al procedimiento administrativo.

q) Las normas relativas a la transparencia y al acceso a la información gubernamental.

r) La regulación de los aspectos de las funciones y los servicios públicos municipales que requieren uniformidad, para efectos de la posible convivencia y orden entre los Municipios de un mismo Estado, etcétera.

2. Los casos que requieren el acuerdo de las dos terceras partes de los miembros del Ayuntamiento.

En el inciso b) de la fracción II del artículo 115 constitucional, se otorgan facultades a la Legislatura Estatal para determinar los casos en que se requiera el acuerdo de las dos terceras partes de los miembros del Ayuntamiento.

Dicha fracción se refiere, en primer lugar, al establecimiento de una votación calificada de los miembros de los Ayuntamientos para dictar resoluciones que afecten el patrimonio inmobiliario municipal. Esta porción normativa, debe interpretarse en el sentido de que la legislatura tiene la facultaddiscrecional para establecer todos aquellos casos relativos al patrimonio inmobiliario municipal, en los que se requiera ese elevado quórum de votación. Esta facultad discrecional deberá

ejercitarse tomando como base un criterio de importancia y trascendencia en relación con la afectación que podría sufrir el patrimonio inmobiliario municipal y que, por tanto, justifique la existencia de una votación calificada.

Lo anterior no implica que las Legislaturas Estatales o cualquier otro ente ajeno al Ayuntamiento se conviertan en instancias de decisión directa e inmediata respecto de los bienes inmuebles del Municipio, como lo ha interpretado ya este Alto Tribunal en la tesis P./J. 36/2003, publicada en el Semanario Judicial de la Federación y su Gaceta, Novena Época, Tomo XVIII, agosto de 2003, página 1251, que a la letra indica:

"BIENES INMUEBLES DEL MUNICIPIO. CUALQUIER NORMA QUE SUJETE A LA APROBACIÓN DE LA LEGISLATURA LOCAL SU DISPOSICIÓN, DEBE DECLARARSE INCONSTITUCIONAL (INTERPRETACIÓN DEL ARTÍCULO 115, FRACCIÓN II, INCISO B), DE LA CONSTITUCIÓN FEDERAL, ADICIONADO POR REFORMA PUBLICADA EN EL DIARIO OFICIAL DE LA FEDERACIÓN EL 23 DE DICIEMBRE DE 1999). El desarrollo legislativo e histórico del artículo 115 de la Constitución Política de los Estados Unidos Mexicanos, revela que el Municipio Libre es la base sobre la que se construye la sociedad nacional, como lo demuestran los diversos documentos que integran los procesos legislativos de sus reformas, tales como la municipal de 1983, la judicial de 1994 y la municipal de 1999, siendo esta última donde destaca la voluntad del Órgano Reformador en pro de la consolidación de su autonomía, pues lo libera de algunas injerencias de los Gobiernos Estatales y lo configura expresamente como un tercer nivel de gobierno, más que como una entidad de índole administrativa, con un ámbito de gobierno y competencias propias y exclusivas, todo lo cual conlleva a determinar que la interpretación del texto actual del artículo 115 debe hacer palpable y posible el fortalecimiento municipal, para así dar eficacia material y formal al Municipio Libre, sin que esto signifique que se ignoren aquellas injerencias legítimas y expresamente constitucionales que conserven los Ejecutivos o las Legislaturas Estatales. Atento lo anterior, el texto adicionado del inciso b) de la fracción II del artículo 115 constitucional debe interpretarse desde una óptica restrictiva en el sentido de que sólo sean esas las injerencias admisibles de la Legislatura Local en la actividad municipal, pues así se permite materializar el principio de autonomía y no tornar nugatorio el ejercicio legislativo realizado por el Constituyente Permanente, sino más bien consolidarlo, lo que significa que el inciso citado sólo autoriza a las Legislaturas Locales a que señalen cuáles serán los supuestos en que los actos relativos al patrimonio inmobiliario municipal requerirán de un acuerdo de mayoría calificada de los propios integrantes del Ayuntamiento, mas no las autoriza para erigirse en una instancia más exigible e indispensable para la realización o validez jurídica de dichos actos de disposición o administración, lo cual atenta contra el espíritu de la reforma constitucional y los fines perseguidos por ésta; de ahí que cualquier norma que sujete a la aprobación de la Legislatura Local la disposición de los bienes inmuebles de los Municipios, al no encontrarse prevista esa facultad en la fracción citada, debe declararse inconstitucional."

1/25/13 2:07 PM

En un segundo plano, la fracción en comento se refiere a los casos en los que se requiera el acuerdo de las dos terceras partes de los miembros de los Ayuntamientos para celebrar actos o convenios que comprometan al Municipio por un plazo mayor al periodo del Ayuntamiento.

A su vez, en el inciso d) de la propia fracción II, se establece como imperativo esa misma mayoría calificada para que el Ayuntamiento pueda solicitar al Gobierno Estatal que este último asuma una función o servicio municipal. Sobre el contenido y alcances de este inciso se abundará más adelante.

Por último, resulta pertinente señalar que del contenido del artículo 115 de la Constitución Federal, en el cual se contienen atribuciones expresas de las Legislaturas de los Estados para regir la vida municipal, en relación con el artículo 124 de la Carta Magna, que establece las facultades que de manera residual corresponden a las entidades federativas, se concluye que no existe prohibición alguna para que los Congresos Locales puedan determinar casos distintos a los señalados en la fracción II, incisos b) y d), del artículo 115, que se analiza, en los que se requiera que las decisiones de los Ayuntamientos se adopten por una mayoría de las dos terceras partes de sus integrantes.

3. Las normas de aplicación general para celebrar convenios sobre la prestación de servicios públicos y la administración de contribuciones.

En el inciso c) de la fracción II del artículo 115 de la Constitución Federal, se le otorgan facultades a las legislaturas para expedir las normas relativas a la celebración de los convenios a que se refieren tanto las fracciones III y IV de este artículo, como el segundo párrafo de la fracción VII del artículo 116 de la misma Norma Fundamental:

"Artículo 115.

"...

"El objeto de las leyes a que se refiere el párrafo anterior será establecer:

"...

"c) Las normas de aplicación general para celebrar los convenios a que se refieren tanto las fracciones III y IV de este artículo, como el segundo párrafo de la fracción VII del artículo 116 de esta Constitución."

Para interpretar el contenido de la fracción en estudio se debe atender al texto de las porciones normativas a las que este inciso alude:

"Artículo 115. ...

"III. Los Municipios tendrán a su cargo las funciones y servicios públicos siguientes:

"...

"Los Municipios, previo acuerdo entre sus Ayuntamientos, podrán coordinarse y asociarse para la más eficaz prestación de los servicios públicos o el mejor ejercicio de las funciones que les correspondan. En este caso y tratándose de la asociación de Municipios de dos o más Estados, deberán contar con la aprobación de las Legislaturas de los Estados respectivas. Así mismo cuando a juicio del Ayuntamiento respectivo sea necesario, podrán celebrar convenios con el Estado para que éste, de manera directa o a través del organismo correspondiente, se haga cargo en forma temporal de algunos de ellos, o bien se presten o ejerzan coordinadamente por el Estado y el propio Municipio;

"...

"IV. Los Municipios administrarán libremente su hacienda, la cual se formará de los rendimientos de los bienes que les pertenezcan, así como de las contribuciones y otros ingresos que las legislaturas establezcan a su favor, y en todo caso:

"a) Percibirán las contribuciones, incluyendo tasas adicionales, que establezcan los Estados sobre la propiedad inmobiliaria, de su fraccionamiento, división, consolidación, traslación y mejora así como las que tengan por base el cambio de valor de los inmuebles.

"Los Municipios podrán celebrar convenios con el Estado para que éste se haga cargo de algunas de las funciones relacionadas con la administración de esas contribuciones."

"Artículo 116. El poder público de los Estados se dividirá, para su ejercicio, en Ejecutivo, Legislativo y Judicial, y no podrán reunirse dos o más de estos poderes en una sola persona o corporación, ni depositarse el Legislativo en un solo individuo.

"Los Poderes de los Estados se organizarán conforme a la Constitución de cada uno de ellos, con sujeción a las siguientes normas:

"...

"VII. La Federación y los Estados, en los términos de ley, podrán convenir la asunción por parte de éstos del ejercicio de sus funciones, la ejecución y operación de obras y la prestación de servicios públicos, cuando el desarrollo económico y social lo haga necesario.

"Los Estados estarán facultados para celebrar esos convenios con sus Municipios, a efecto de que éstos asuman la prestación de los servicios o la atención de las funciones a las que se refiere el párrafo anterior."

De lo anterior se infiere que en términos del referido inciso c) de la fracción II del artículo 115 de la Constitución Federal, las leyes municipales contendrán las normas de carácter general para celebrar los convenios: 1) De coordinación o asociación entre Municipios para la prestación conjunta de los servicios públicos que les correspondan, destacando que el texto constitucional permite la asociación de Municipios de diversos Estados; 2) Entre la entidad federativa y sus Municipios, para que aquélla se haga cargo de alguna de las funciones realizadas con la administración de las contribuciones derivadas de la propiedad inmobiliaria; y, 3) Entre la entidad federativa y sus Municipios, a efecto de que la primera asuma la prestación de los servicios, o bien, alguna de las funciones, ejecución y prestación de obras cuando el desarrollo económico y social lo hagan necesario.

En atención a que la reforma constitucional de mil novecientos noventa y nueve eliminó la concurrencia de la prestación de servicios públicos entre el Estado y sus Municipios para sustituirla por una fórmula de exclusividad de competencia en favor del Municipio consagrada en la fracción III del artículo 115 de la Constitución Federal, y del mismo modo fortaleció el ámbito hacendario del Municipio al darle mayores atribuciones respecto de las contribuciones relacionadas con la propiedad inmobiliaria, el nuevo texto constitucional prevé la posibilidad de la celebración de convenios entre dichos entes, dejando a la legislatura la regulación de las bases sobre las cuales se celebrarán tales convenios.

4. El procedimiento y condiciones para que el Gobierno Estatal asuma una función o servicio municipal cuando no exista convenio.

El inciso d) de la fracción II del artículo 115 del texto constitucional dispone lo siguiente:

"II. ...

"El objeto de las leyes a que se refiere el párrafo anterior será establecer:

"...

"d) El procedimiento y condiciones para que el Gobierno Estatal asuma una función o servicio municipal cuando, al no existir el convenio correspondiente, la Legislatura Estatal considere que el Municipio de que se trate esté imposibilitado para ejercerlos o prestarlos; en este caso, será necesaria solicitud previa del Ayuntamiento respectivo, aprobada por cuando menos las dos terceras partes de sus integrantes."

Para llegar a la correcta interpretación del precepto transcrito es menester acudir, de nueva cuenta, al dictamen de la Comisión de Gobernación y Puntos Constitucionales de la Cámara de Diputados, en específico en lo referente a la reforma de la fracción III del artículo 115 de la Constitución Federal:

"4.3 Una de las reformas más importantes que se introducen en el presente decreto es, sin duda, la referente a la fracción III que contiene un catálogo de competencias exclusivas.

"Este aspecto, está planteado en las iniciativas en estudio, por lo cual, la comisión que suscribe estima procedente eliminar el concurso de los Estados en las funciones y servicios establecidos en la nueva fracción III, para que queden con dicho doble carácter (función y servicio público), las materias descritas en los incisos correspondientes en calidad de competencias municipales exclusivas, sin perjuicio del mecanismo de transferencia previsto en los incisos c) y d) de la ya explicada nueva fracción II.

"...

"De todo lo anterior, se debe concluir que se trata de funciones y servicios del ámbito municipal, para que se ejerzan o se presten exclusivamente por su órgano de gobierno: el Ayuntamiento y la administración pública municipal que le deriva."

Asimismo, por cuanto se refiere al contenido de la fracción II, inciso d), del artículo 115, objeto de la interpretación, se señaló:

"4.2.4 En el inciso d), se prevé que la ley estatal contemple, con base en el ámbito de competencia exclusiva municipal, el procedimiento y las condiciones para que el Ayuntamiento transfiera la prestación de un servicio público o el ejercicio de una función a su cargo, en favor del Estado. Ello mediante la solicitud del Ayuntamiento a la legislatura, cuando no haya convenio con el Gobierno Estatal de que se trate."

De la lectura de los antecedentes legislativos transcritos, deriva que para salvaguardar el ámbito competencial del Municipio y hacer posible la transferencia al Estado de la prestación de un servicio público o el ejercicio de una función pública municipal, es indispensable que exista una solicitud previa del Ayuntamiento involucrado, aprobada por lo menos por la mayoría calificada de las dos terceras partes de sus miembros.

En esta tesitura, el precepto en estudio debe interpretarse en el sentido de que cuando no exista convenio entre un Estado y sus Municipios en relación con la prestación de funciones o servicios públicos, el Ayuntamiento, por acuerdo de las dos terceras partes de sus integrantes, podrá solicitar a la legislatura que el Gobierno Estatal asuma la función o servicio público de que se trate, quedando para la legislatura la emisión de normas que regulen los términos de la asunción de éstos por parte del Gobierno del Estado, así como el dictamen correspondiente que califique la imposibilidad del ejercicio de la función o de la prestación del servicio por el Ayuntamiento, sin que haya lugar a interpretar que la legislatura puede determinar oficiosamente tal circunstancia de manera unilateral, pues la solicitud respectiva es un derecho exclusivo del Ayuntamiento.

5. Las normas aplicables a falta de reglamentación municipal.

Por último, el inciso e) de la fracción II del artículo 115 del texto constitucional, establece lo siguiente:

"II. ...

"El objeto de las leyes a que se refiere el párrafo anterior será establecer:

"...

"e) Las disposiciones aplicables en aquellos Municipios que no cuenten con los bandos o reglamentos correspondientes."

Como se dijo con anterioridad, el dictamen de la Comisión de Gobernación y Puntos Constitucionales, expresamente señala lo siguiente:

"4.2.5 En el inciso e), se establece que las Legislaturas Estatales expedirán las normas aplicables a los Municipios que no cuenten con los reglamentos correspondientes. Es decir, la norma que emita el Legislativo para suplir en estos casos, la falta de reglamentos básicos y esenciales de los Municipios, será de aplicación temporal en tanto el Municipio de que se trate, emita sus propios reglamentos."

De ello se sigue que si bien en este inciso se otorga a la legislatura una facultad muy amplia para emitir todo tipo de normas relativas al funcionamiento municipal, lo cierto es que la aplicación de estas normas será únicamente supletoria en los Municipios que no cuenten con la reglamentación correspondiente, razón por la cual, como lo expresa el dictamen, su aplicación será temporal, esto es, en tanto el Municipio expida las disposiciones relativas.

En otras palabras, el Municipio puede reivindicar para sí la facultad de regular en aquellas materias en las que ya lo hizo el Estado de manera subsidiaria, y cuando esto acontezca deberá inaplicarse inmediatamente la normativa estatal.

En este sentido, como quedó señalado con antelación, la reforma de mil novecientos noventa y nueve amplió la facultad reglamentaria de los Ayuntamientos, para el efecto de que en comunión con las bases generales establecidas por el Estado, emitan su propia normatividad de acuerdo con su realidad, necesidades, proyectos y objetivos.

Ante la asimetría de los Ayuntamientos que forman nuestro país, el Órgano Reformador previó la posibilidad de que algunos de ellos no contaran con la infraestructura suficiente para emitir, de manera inmediata, los reglamentos respectivos, razón por la cual creó esta disposición que establece la posibilidad de que los Ayuntamientos fundamenten su actuación en la legislación estatal hasta en tanto emitan sus normas reglamentarias. De esta forma se evitan lagunas normativas en el ámbito de Gobierno Municipal, pues la legislación emitida con detalle por las Legislaturas Estatales, en virtud de esta

autorización constitucional, impedirá la paralización de funciones de los Ayuntamientos pequeños o insuficientemente regulados, que podría ocurrir ante la ausencia de un marco normativo debido a la exigencia del principio de juridicidad, conforme al cual, los actos de autoridad deben encontrar su fundamento en una norma jurídica.

Ciertamente, el Órgano Reformador previó que la mera ampliación de atribuciones a nivel constitucional, no era suficiente para cambiar la realidad histórica del Ayuntamiento y de su esfera restringida de actuación o para acortar por sí las profundas desigualdades que existen entre los distintos Municipios que integran el país, por lo cual creó la obligación de que las legislaturas emitan este tipo de normas de carácter temporal.

A la luz de la norma en estudio, se justifica que las legislaturas expidan disposiciones que rijan detalladamente la vida municipal, siempre y cuando tengan un carácter supletorio y temporal, cuya vigencia estará supeditada a la emisión de las normas reglamentarias que emita el Ayuntamiento.

En este tenor, resulta indispensable señalar que es prácticamente imposible que la Legislatura Estatal pueda emitir normas específicas para cada uno de los Municipios que lo integran, razón por la cual será un marco normativo genérico que regulará tanto a los Municipios con un elevado nivel de desarrollo, como a los que no lo tienen.

Lo anterior conllevará que en la norma local se regulen cuestiones que no sean aplicables a todos los Municipios, por contar éstos con distintas necesidades y realidades sociales. Así, se regularán órganos cuya existencia se justifique y cuyo funcionamiento se pueda sufragar en un Municipio desarrollado o de alta concentración demográfica, pero que en otro tipo de Municipios sean figuras innecesarias o inviables dadas las limitaciones financieras del Municipio o su realidad social, biogeográfica, demográfica o cultural; o bien, por lo que respecta a la elegibilidad de algunas autoridades, habrá cargos para los que en algunos Municipios la ley contemple requisitos que sean imposibles de cumplir, dado el rezago educacional que ahí se presente, en tanto que en otros Municipios no existirá este problema.

En esta tesitura, y atendiendo al principio de fortalecimiento municipal, esta Suprema Corte considera que este tipo de normas constituye un marco normativo auxiliar del cual podrá ir haciendo uso cada Ayuntamiento, en la medida en que sea necesario para cumplir con sus atribuciones constitucionales y carezca del reglamento respectivo, razón por la cual deberá existir una flexibilidad en su aplicación que dependerá de las necesidades de cada Municipio y de las decisiones que, como su órgano de gobierno, tome el Ayuntamiento.

De lo expuesto se puede concluir que este tipo de leyes en materia municipal tiene una vertiente instrumental, cuyo objetivo es evitar un vacío de legalidad ante la ausencia de la norma reglamentaria respectiva, permitiendo que el Ayuntamiento aplique de manera supletoria la legislación local de acuerdo con su propia realidad.

Asimismo, se debe señalar que en la medida en que el Ayuntamiento decida realizar determinados actos o instituir alguna figura jurídica y no cuente con el reglamento correspondiente, o bien, su regulación sea deficiente, podrá acudir a la legislación estatal respectiva, pues el objetivo de ésta es que el Ayuntamiento pueda cumplir con sus funciones y no quede paralizado.

Por otro lado, también debe quedar sentado que en ejercicio de su libertad de auto-organización, el Ayuntamiento puede decidir que no necesita de una determinada figura jurídica, situación en la cual la legislación supletoria que verse sobre dicha figura no tendrá el carácter de obligatoria para ese Municipio.

Lo anterior de ninguna manera significa que el Municipio pueda dictar actos que no tengan fundamento jurídico, pues todos sus actos deben descansar en una norma jurídica, en atención al principio de legalidad tutelado en los artículos 14 y 16 de la Constitución Federal.

Como corolario, es posible sostener que la fracción II del artículo 115 constitucional otorga a las Legislaturas Estatales dos atribuciones en materia municipal que conviene resaltar en este apartado: La primera es que emitan las bases generales sobre el Gobierno Municipal y sus atribuciones; es decir, que las legislaturas emitan la ley marco en materia municipal, que establezca los lineamientos esenciales de los cuales no se puede apartar la actuación del Municipio. La segunda consiste en que las legislaturas emitan disposiciones de detalle sobre esas mismas materias municipales, aplicables solamente en aquellos Municipios que no cuenten con la reglamentación correspondiente, con la característica antes precisada de que en el momento en que el Municipio emita sus propios reglamentos quedará desvinculado automáticamente de la ley.

Ahora bien, este Alto Tribunal considera que la localización física de estas últimas normas dentro de los diferentes cuerpos legislativos locales, constituye como tal un problema de técnica legislativa que las Legislaturas Estatales podrían resolver de diferentes maneras: Podrían emitir, por ejemplo, una ley marco que contuviera las disposiciones de las cuales no podría apartarse el Municipio, por haberlas emitido el Estado en ejercicio de las atribuciones que la propia Constitución Federal le confiere en materia municipal y, por separado, una ley complementaria aplicable solamente en aquellos Municipios que carezcan de disposiciones municipales. Esto daría lugar a la existencia de dos cuerpos normativos separados que permitirían

ubicar con mayor precisión a los dos tipos de normas a que se ha venido haciendo referencia.

Otra opción sería que el Congreso Estatal emitiera una sola Ley Orgánica Municipal, en la que precisara cuáles son las normas que constituyen la ley marco y cuáles son aplicables supletoriamente por los Municipios que no tengan su reglamentación específica.

Una tercera opción podría ser que el Congreso Estatal emitiera una sola ley marco y, por separado, diversas disposiciones aplicables de manera supletoria a los Municipios, las cuales, a su vez, se encontrarían agrupadas por categorías de Municipios, basándose en el número de habitantes de cada uno de ellos, su crecimiento económico, características territoriales o en cualquier otra circunstancia que la legislatura estimara pertinente.

Lo anterior demuestra la existencia de una variedad de posibilidades para que la legislatura elija libremente la técnica legislativa más adecuada para ejercer sus facultades constitucionales en esta materia. Sin embargo, esta Suprema Corte de Justicia de la Nación estima que independientemente de la técnica que adopte la legislatura para regular la vida municipal, lo importante es que el legislador estatal distinga claramente las normas que considera obligatorias para el Municipio, en tanto que con ellas procura homogeneizar a los Municipios del Estado, de aquellas que sólo son aplicables de manera supletoria.

Habiendo quedado expuesto el tema relativo a las leyes locales, corresponde ocuparse ahora de los reglamentos municipales, como parte del orden jurídico municipal esquematizado en el cuadro sinóptico plasmado en este considerando.

Reglamentos municipales.

Históricamente, a los cuerpos normativos que emanaban de los Ayuntamientos, para distinguirlos de las leyes que provenían de las Cortes, se les denominó ordenanzas u ordenanzas municipales. Ante la carencia de órganos informativos regulares, durante mucho tiempo dichos ordenamientos se dieron a conocer a los interesados a grito vivo, dándoles lectura en lugares estratégicos y concurridos de las poblaciones mediante bandos solemnes u ordinarios (del verbo "bandir", que a su vez se origina del vocablo visigodo bandwjan, que significa pregonar o hacer público algo). Con el transcurso de los años y la repetición de los actos, el nombre del instrumento se utilizó como sinónimo de la materia. Por eso, en la actualidad a esos complejos normativos se les denomina genéricamente bandos.

Ahora bien, el artículo 115, fracción II, de la Constitución Federal, no sólo faculta a los Municipios a expedir bandos, sino también reglamentos, circulares y disposiciones de observancia general que tienen las siguientes características:

a) Se trata de verdaderos ordenamientos normativos, esto es, tienen la característica de estar compuestos por normas generales, abstractas e impersonales.

b) Normalmente no se trata de ordenamientos rígidos, toda vez que pueden ser modificados o derogados por el propio Ayuntamiento que los expidió, sin más formalidades que las que se hayan seguido para su emisión.

No obstante lo anterior, los Ayuntamientos, en ejercicio de su facultad regulatoria, deben respetar ciertos imperativos, a saber:

1) Los bandos y reglamentos no pueden estar en oposición a la Constitución General ni a las de los Estados, así como tampoco a las leyes federales o locales; y,

2) Deben versar sobre materias, funciones o servicios que le correspondan constitucional o legalmente a los Municipios.

Como ha quedado señalado con anterioridad, es necesario recordar que desde mil novecientos ochenta y tres se había reconocido constitucionalmente al Municipio una facultad reglamentaria; sin embargo, su ejercicio se supeditaba a desarrollar las bases normativas que debían establecer las Legislaturas de los Estados, sin que los Municipios pudieran emitir reglamentos susceptibles de ajustarse a sus respectivas particularidades, pues sólo actuaban como reglamentos para detallar la ley. La reforma constitucional de mil novecientos noventa y nueve, amplió la esfera de competencia del Municipio en lo referente a su facultad reglamentaria en los temas a que se refiere el párrafo segundo de la fracción II del artículo 115 de la Constitución Federal, esto es, "bandos de policía y gobierno, los reglamentos, circulares y disposiciones administrativas de observancia general dentro de sus respectivas jurisdicciones, que organicen la administración pública municipal, regulen las materias, procedimientos, funciones y servicios públicos de su competencia y aseguren la participación ciudadana y vecinal".

Bajo este tenor, se advierte que los Ayuntamientos pueden expedir dos tipos de normas reglamentarias:

a) El reglamento tradicional de detalle de las normas, que funciona de manera similar a los reglamentos derivados de la

fracción I del artículo 89 de la Constitución Federal y de los expedidos por los gobernadores de los Estados, en los cuales la extensión normativa y su capacidad de innovación se encuentra limitada, puesto que el principio de subordinación jerárquica exige que el reglamento esté precedido por una ley cuyas disposiciones desarrolle, complemente o pormenorice y en las que encuentre su justificación y medida.

Entre estos reglamentos encontraríamos, por ejemplo, aquellos que versando sobre materias distintas a la fracción II del artículo 115 de la Constitución Federal, tienen el fundamento de su existencia bien sea en disposición constitucional o en habilitación realizada por el legislador federal o local en favor del reglamento municipal.

Esto se ve muy claramente en las materias concurrentes. Así, por ejemplo, en la materia de protección al ambiente y preservación y restauración del equilibrio ecológico, regulada tanto en la fracción XXIX-G del artículo 73, como en la fracción V del artículo 115 de la Constitución Federal, así como por la Ley General del Equilibrio Ecológico y la Protección al Ambiente, que en su artículo 10 dispone:

"Artículo 10. Los Congresos de los Estados, con arreglo a sus respectivas Constituciones y la Asamblea Legislativa del Distrito Federal, expedirán las disposiciones legales que sean necesarias para regular las materias de su competencia previstas en esta ley. Los Ayuntamientos, por su parte, dictarán los bandos de policía y buen gobierno, los reglamentos, circulares y disposiciones administrativas que correspondan, para que en sus respectivas circunscripciones, se cumplan las previsiones del presente ordenamiento.

"En el ejercicio de sus atribuciones, los Estados, el Distrito Federal y los Municipios, observarán las disposiciones de esta ley y las que de ella se deriven."

De lo anterior se infiere que en este caso la facultad reglamentaria es de detalle y se encuentra completamente subordinada a las disposiciones tanto de la ley marco, como de las leyes locales.

De manera similar ocurre en la materia de asentamientos humanos regulada tanto en la fracción XXIX-C del artículo 73, como en la fracción V del artículo 115 de la Constitución Federal, así como por la Ley General de Asentamientos Humanos, que en su artículo 8o., fracción I, faculta a las entidades federativas para legislar en materia de ordenamiento territorial de los asentamientos humanos y de desarrollo urbano de los centros de población. Así, el Municipio con fundamento en la ley marco y en la local, emitirá los reglamentos que permitan implementar las medidas tendentes a desarrollar la ley en los

aspectos relativos a su jurisdicción, así como las facultades expresamente conferidas en la fracción V del artículo 115 constitucional.

También se puede expedir este tipo de reglamento en las cuestiones relativas al patrimonio, pues el primer párrafo de la fracción II remite a la ley en dicho aspecto, como se ve a continuación:

"Artículo 115. Los Estados adoptarán, para su régimen interior, la forma de gobierno republicano, representativo, popular, teniendo como base de su división territorial y de su organización política y administrativa el Municipio Libre, conforme a las bases siguientes:

"...

"II. Los Municipios estarán investidos de personalidad jurídica y manejarán su patrimonio conforme a la ley."

De lo anterior se infiere que las legislaturas regularán la cuestión patrimonial del Municipio; sin embargo, éste podrá emitir los reglamentos de detalle de dicha ley para el manejo de su patrimonio.

Por último, también podemos mencionar a los reglamentos de las condiciones generales de trabajo que detallan lo relativo a los derechos laborales consignados en el artículo 123 de la Constitución Federal y la respectiva ley burocrática estatal.

b) Los reglamentos derivados de la fracción II del artículo 115 constitucional, esto es, "bandos de policía y gobierno, los reglamentos, circulares y disposiciones administrativas de observancia general dentro de sus respectivas jurisdicciones, que organicen la administración pública municipal, regulen las materias, procedimientos, funciones y servicios públicos de su competencia y aseguren la participación ciudadana y vecinal", que tienen una mayor extensión normativa y en donde los Municipios pueden regular más ampliamente aquellos aspectos específicos de la vida municipal en el ámbito de sus competencias.

Es importante destacar, nuevamente, que si bien esta nueva categoría de reglamentos municipales tiene un contenido material propio, el mismo no puede contradecir a la Constitución Federal ni a las de los Estados, así como tampoco a las leyes federales o locales.

También resulta pertinente recapitular que dentro de las leyes locales que deben ser respetadas se encuentran las leyes en materia municipal a que se refiere la fracción II del artículo 115 constitucional, que tienen por objeto la fijación de ciertos lineamientos o bases generales que establezcan un marco normativo homogéneo a los Municipios de un Estado, el cual debe entenderse como el caudal normativo indispensable que asegure el funcionamiento del Municipio, pero únicamente en los aspectos que requieran dicha uniformidad.

A su vez, las normas reglamentarias derivadas de la fracción II, segundo párrafo, del artículo 115 constitucional, tienen la característica de la expansión normativa, es decir, permiten a cada Municipio adoptar una variedad de formas adecuadas para regular su vida interna, tanto en lo referente a su organización administrativa y sus competencias constitucionales exclusivas, como en la relación con sus gobernados, atendiendo a las características sociales, económicas, biogeográficas, poblacionales, culturales urbanísticas, etcétera.

Como se dijo con anterioridad, los Municipios deben ser iguales en lo que es consustancial a todos, lo cual se logra con la emisión de las bases generales que emite la Legislatura del Estado, pero tienen el derecho derivado de la Constitución Federal de ser distintos en lo que es propio de cada uno de ellos, lo cual se consigue a través de la facultad normativa exclusiva que les confiere la multicitada fracción II del artículo 115.

Por último, resulta importante destacar que el ejercicio de la facultad reglamentaria del Municipio no es obligatoria, mientras que la Constitución Federal, dentro del concepto de leyes en materia municipal, ha contemplado como obligación para las legislaturas la expedición de normas detalladas que actúen de manera supletoria y temporal en aquellos Municipios que no cuenten con estos ordenamientos.

Ejemplificaremos ahora algunos de los tipos de reglamentos que se pueden emitir con fundamento en esta fracción.

El reglamento interior se encarga de la composición y estructura del Ayuntamiento, así como de las atribuciones y deberes de cada uno de sus miembros. Los principales aspectos que puede contemplar en este reglamento son: residencia e instalación del Ayuntamiento; derechos y obligaciones de sus integrantes; sesiones de Cabildo; comisiones; votaciones para los acuerdos y para su revocación; funcionarios esenciales de la administración pública municipal; licencias y permisos de los servidores de la administración pública, etcétera.

Para que la administración municipal trabaje de manera adecuada es preciso que se expidan reglamentos que detallen la

estructura administrativa, estableciendo sus órganos y dependencias, así como la administración pública centralizada y paramunicipal, las bases para manejar sus recursos y su personal, así como un sistema que controle y evalúe sus actividades. Para estos propósitos pueden expedirse los siguientes ordenamientos: el reglamento interno de la administración, en el cual se detallan los órganos que conforman la administración, sus funciones y responsabilidades, y el reglamento de control de gestión que permite supervisar, evaluar y controlar las actividades de las dependencias municipales, así como normar la contraloría.

Los reglamentos de servicios públicos, por otro lado, regularán las actividades municipales que constitucionalmente se han declarado como tales, o bien, de los servicios que transfiera al Municipio el legislador local. Entre los reglamentos que normalmente se expiden para los servicios públicos están los de mercados, limpia, alumbrado público, rastros, panteones, parques y jardines, agua potable y alcantarillado. En este tipo de reglamentos se establece también cuál es la forma en que se puede prestar el servicio público correspondiente, sea de manera directa, en colaboración o concesionado a particulares.

Asimismo, también existen los reglamentos relativos a las funciones públicas, como son el de seguridad pública, el cual deberá respetar los lineamientos del sistema de seguridad pública, policía preventiva, tránsito y protección civil.

Es importante reiterar que si bien el Estado podrá regular aquellos aspectos que sean esenciales sobre el ejercicio de las funciones y la prestación de los servicios públicos municipales en la medida en que ello requiera de una regulación homogénea, corresponderá sin embargo al Municipio emitir las normas relativas a su ámbito de actuación, como son las relativas a la organización y prestación del servicio. Así lo ha interpretado el Pleno de este Alto Tribunal en la tesis P./J. 137/2001, publicada en el Semanario Judicial de la Federación y su Gaceta, Novena Época, Tomo XV, enero de 2002, página 1044, que a la letra indica:

"TRÁNSITO EN EL ESTADO DE CHIHUAHUA. LA EXPEDICIÓN DE LA LEY RELATIVA POR LA LEGISLATURA ESTATAL NO QUEBRANTA EL ARTÍCULO 115, FRACCIONES II Y III, INCISO H), DE LA CONSTITUCIÓN POLÍTICA DE LOS ESTADOS UNIDOS MEXICANOS, NI INVADE LA ESFERA COMPETENCIAL DEL MUNICIPIO DE JUÁREZ. Si bien el artículo 115, fracción III, inciso h), constitucional reserva al tránsito como una de las funciones y servicios públicos a cargo de los Municipios, ello no significa que las Legislaturas de los Estados estén impedidas para legislar en esa materia, porque tienen facultades para legislar en materia de vías de comunicación, lo que comprende al tránsito y, conforme al sistema de distribución de competencias establecido en nuestra Constitución Federal, tal servicio debe ser regulado en los tres niveles de gobierno: Federal, Estatal y Municipal. La interpretación congruente y relacionada del artículo 115, fracciones II, segundo párrafo, y III, penúltimo

párrafo, que establecen las facultades de los Ayuntamientos para aprobar, de acuerdo con las leyes en materia municipal que deberán expedir las legislaturas, los bandos de policía y gobierno, reglamentos, circulares y disposiciones administrativas dentro de sus respectivas jurisdicciones y la sujeción de los Municipios en el desempeño de las funciones y la prestación de los servicios públicos a su cargo conforme a lo dispuesto por las leyes federales y estatales, junto con la voluntad del Órgano Reformador de la Constitución Federal manifestada en los dictámenes de las Cámaras de Origen y Revisora del proyecto de reformas del año de 1999 a dicho dispositivo, permiten concluir que corresponderá a las Legislaturas Estatales emitir las normas que regulen la prestación del servicio de tránsito para darle uniformidad en todo el Estado mediante el establecimiento de un marco normativo homogéneo (lo que implica el registro y control de vehículos, la autorización de su circulación, la emisión de las placas correspondientes, la emisión de las calcomanías y hologramas de identificación vehicular, la expedición de licencias de conducir, así como la normativa general a que deben sujetarse los conductores y peatones, las conductas que constituirán infracciones, las sanciones aplicables, etcétera), y a los Municipios, en sus respectivos ámbitos de jurisdicción, la emisión de las normas relativas a la administración, organización, planeación y operación del servicio a fin de que éste se preste de manera continua, uniforme, permanente y regular (como lo son las normas relativas al sentido de circulación en las avenidas y calles, a las señales y dispositivos para el control de tránsito, a la seguridad vial, al horario para la prestación de los servicios administrativos y a la distribución de facultades entre las diversas autoridades de tránsito municipales, entre otras). Atento a lo anterior, la Ley de Tránsito del Estado de Chihuahua no quebranta el artículo 115, fracciones II y III, inciso h), de la Constitución Federal, ni invade la esfera competencial del Municipio de Juárez, pues fue expedida por el Congreso del Estado en uso de sus facultades legislativas en la materia y en las disposiciones que comprende no se consignan normas cuya emisión corresponde a los Municipios, sino que claramente se precisa en su artículo 5o. que la prestación del servicio público de tránsito estará a cargo de los Municipios; en su numeral 7o. que la aplicación de la ley corresponderá a las autoridades estatales y municipales en sus respectivas áreas de competencia y en el artículo cuarto transitorio que los Municipios deberán expedir sus respectivos reglamentos en materia de tránsito."

Por último, hay que subrayar que los particulares efectúan muchas actividades que el Municipio no puede ignorar, por lo que deconformidad con las leyes federales o locales existentes sobre cada materia específica, debe encauzarlas jurídicamente de manera apropiada por ser un órgano de gobierno electo democráticamente, a fin de que exista orden y gobernabilidad en el ámbito del Municipio.

Por ello, será habitual el establecimiento de derechos y obligaciones de los particulares en diferentes reglamentos y bandos de policía y gobierno en materias como: justicia cívica municipal, diversiones y espectáculos públicos; anuncios y letreros;

bebidas alcohólicas, cantinas, bares y depósitos de cerveza; aparatos electromecánicos y sonoros; expendios de carne y aves; premio al mérito civil en el Municipio; establecimiento, operación y funcionamiento de establos; mediación; establecimientos mercantiles, industriales y de servicios; protección de animales; control de la fauna canina y felina; informadores de los servicios de hospedaje; comercio en la vía pública; para la apertura y funcionamiento de molinos de nixtamal y tortillerías; de bomberos; promoción a la cultura; patronato para las ferias municipales; estacionamientos; espectáculos taurinos; vecindades; box y lucha; promoción a la vivienda; participación ciudadana; zonas peatonales; crónica municipal; de espacios recreativos; músicos; jaripeos; juegos de video, futbolitos y similares; otorgamiento de becas económicas; control de la prostitución y actividades de alto riesgo para la propagación de enfermedades de transmisión sexual; funcionamiento de ambulancias; etcétera.

En el texto del precepto constitucional cuyos rasgos principales hemos venido desarrollando se hace también alusión a las circulares y disposiciones administrativas de observancia general que pueden expedir los Ayuntamientos.

En las circulares se contienen normalmente instrucciones o reglas dirigidas por los órganos superiores a los inferiores para especificar interpretaciones de normas, decisiones o procedimientos. Las circulares pueden ser internas, si únicamente se refieren a asuntos de la competencia interna de las unidades administrativas, o externas, si van dirigidas a los particulares.

Las circulares y las disposiciones generales a que alude la norma constitucional sirven a los Municipios para llevar en detalle y a la práctica las disposiciones generales de los reglamentos. De este modo pueden señalarse en ellas, por ejemplo, los días del año que tienen el carácter de feriados para el comercio establecido, los horarios en que normalmente funcionarán determinados servicios públicos o los lugares en que éstos se prestarán, las horas límite en que pueden realizar sus actividades ciertos expendios o funcionar determinados negocios, etcétera.

A la luz del marco jurídico descrito con anterioridad, a continuación se procede al análisis de los conceptos de invalidez específicos.

OCTAVO. Previamente al examen de constitucionalidad, resulta necesario analizar una de las instituciones procesales del juicio de controversia constitucional, a saber, la suplencia de la deficiencia de la demanda, prevista en el artículo 40 de la Ley Reglamentaria de las Fracciones I y II del Artículo 105 de la Constitución Federal.

Lo anterior es así, porque en el asunto a estudio el Municipio actor señaló como acto impugnado a la Ley Orgánica Municipal

del Estado de Hidalgo, según se advierte de la transcripción de la demanda que obra a foja dos de esta ejecutoria, sin embargo, sólo formuló conceptos de invalidez en relación con preceptos muy específicos de la misma ley.

En efecto, aun cuando es cierto que el Municipio actor en la presente controversia constitucional señaló en el capítulo de actos impugnados de su demanda a la Ley Orgánica Municipal del Estado de Hidalgo, también lo es en el capítulo de conceptos de invalidez sólo enderezó argumentos jurídicos tendentes a demostrar la inconstitucionalidad de los artículos 1o., 3o., 5o., 10, 21, 22, 37, 38, 39, 40, 43, 44, 45, 46, 47, 48, 49, fracciones I, II, III, XVII, XXXI, XXXII, XXXVII, 51, 52, 53, 54, 55, 60, 62, 63, 64, 65, 66, 74, 75, 76, 77, 78, 79, 80, 81, 82, 88, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 132, 134, 137, 138, 139, 149, 150, 151, 152, 153, 154, 172, 173, 174, 175, 176, 177 y 178 de la Ley Orgánica Municipal del Estado de Hidalgo, por lo que sólo esos preceptos se tendrán como actos impugnados de manera destacada.

De ahí que la primera interrogante por resolver consiste en determinar si en una controversia constitucional, en la que se señala como acto reclamado todo un cuerpo normativo y, posteriormente, en los conceptos de invalidez sólo se combaten expresamente algunos de sus preceptos, la institución de la suplencia en la deficiencia de la queja obliga a este Alto Tribunal a estudiar todos los preceptos de la ley controvertida, o bien, si debe circunscribirse el estudio a aquellos en relación a los cuales existe una causa de pedir, aunque ésta sea mínima.

Para resolver esta cuestión, conviene precisar, en primer lugar, que en la controversia constitucional, a la parte actora le corresponde el inicio del proceso, en términos del artículo 10, fracción I, de la Ley Reglamentaria de las Fracciones I y II del Artículo 105 Constitucional, y a la parte demandada formular su réplica o contestación.

El referido artículo 10, fracción I, establece lo siguiente:

"Artículo 10. Tendrán el carácter de parte en las controversias constitucionales:

"I. Como actor, la entidad, poder u órgano que promueva la controversia."

Conviene mencionar cuáles son los requisitos que deben contener tanto la demanda como la contestación de la controversia constitucional, según lo dispuesto en los artículos 22 y 23 de la ley de la materia, por resultar ampliamente ilustrativos para efectos del presente estudio:

"Artículo 22. El escrito de demanda deberá señalar:

"I. La entidad, poder u órgano actor, su domicilio y el nombre y cargo del funcionario que los represente;

"II. La entidad, poder u órgano demandado y su domicilio;

"III. Las entidades, poderes u órganos terceros interesados, si los hubiere, y sus domicilios;

"IV. La norma general o acto cuya invalidez se demande, así como, en su caso, el medio oficial en que se hubieran publicado;

"V. Los preceptos constitucionales que, en su caso, se estimen violados;

"VI. La manifestación de los hechos o abstenciones que le consten al actor y que constituyan los antecedentes de la norma general o acto cuya invalidez se demande, y

"VII. Los conceptos de invalidez."

"Artículo 23. El escrito de contestación de demanda deberá contener, cuando menos:

"I. La relación precisa de cada uno de los hechos narrados por la parte actora, afirmándolos, negándolos, expresando que los ignora por no ser propios o exponiendo cómo ocurrieron, y

"II. Las razones o fundamentos jurídicos que se estimen pertinentes para sostener la validez de la norma general o acto de que se trate."

De la transcripción anterior, se desprende que el legislador previó, en su carácter de carga procesal, que el actor iniciara la controversia constitucional y que en su escrito inicial señalara cuáles son los conceptos de invalidez, esto es, los razonamientos jurídicos que estimara pertinentes para sostener la inconstitucionalidad de la norma general o acto impugnado.

Este es un deber del cual no se le puede relevar al actor, por disposición expresa de la ley, lo que permite considerar a la controversia constitucional como un procedimiento dispositivo y no inquisitivo, toda vez que el órgano de control constitucional no puede iniciar de oficio el proceso.

En tal virtud, el órgano de control constitucional debe valorar si los citados conceptos de invalidez, como tales, son o no fundados. Sin embargo, el análisis de tales conceptos no puede realizarse a la luz de un rígido principio de estricto derecho, pues el artículo 40 de la propia ley reglamentaria de la materia establece la figura jurídica de la suplencia de la queja deficiente.

El referido precepto legal dispone lo siguiente:

"Artículo 40. En todos los casos la Suprema Corte de Justicia de la Nación deberá suplir la deficiencia de la demanda, contestación, alegatos o agravios."

Para abordar los alcances de la figura en análisis, conviene remitirse al dictamen de la Cámara de Diputados, emitido con motivo de la iniciativa presidencial de la ley reglamentaria que nos ocupa:

"En atención al alto interés que se ventila en las controversias constitucionales, que no sólo atañen a los órganos del poder público actuantes, sino que involucran el equilibrio jurídico-político del Estado de derecho, se estima conveniente que en la parte relativa a las sentencias, se obligue a la Suprema Corte de Justicia de la Nación a corregir errores en la cita de los preceptos que se invoquen y a suplir las deficiencias de la demanda, contestación, alegatos y agravios, dado que no se trata de resolver sobre la mayor o menor capacidad y conocimientos de las partes, sino salvaguardar el texto constitucional y los valores que del mismo se desprenden."

Del texto anterior, se desprende que es obligación de la Suprema Corte de Justicia de la Nación suplir la deficiencia de la demanda, pues el propósito que se persigue es el de salvaguardar el texto de la Constitución y los valores que de ella se desprenden.

Sin embargo, no debe perderse de vista que la suplencia de la queja deficiente en controversia constitucional es una institución procesal, que si bien fue establecida con la finalidad de hacer prevalecer la Constitución como Ley Suprema, tampoco puede ignorar las normas y cargas procesales que permean al litigio constitucional y que se encuentran previstas

en el mismo sistema legal, por tanto, tal suplencia se encuentra sujeta a ciertos parámetros mínimos que permiten su funcionalidad.

En primer lugar, es necesario puntualizar que la suplencia de la deficiencia de la demanda se entiende referida, básicamente, a los conceptos de invalidez, es decir, a la materia misma del juicio de controversia constitucional, pues tal suplencia se debe traducir, en última instancia, en la salvaguarda del texto constitucional y los valores que de él emanan.

Ahora bien, debido a que el control jurisdiccional se presenta en un juicio en el que el juzgador debe resolver la contienda existente entre las partes, conforme a la litis que se conformó al presentar la demanda y la contestación, el tribunal constitucional debe limitar su estudio a los puntos planteados por las partes sin poder invocar otros respecto de los cuales la actora no hubiere señalado, en el contexto del proceso, que le asiste algún interés legítimo ni hubiera denunciado su posible transgresión a la Carta Magna.

Esta afirmación armoniza con el texto del artículo 40 de la ley reglamentaria, cuando dispone que debe suplirse la deficiencia de la demanda, mas no suplir la ausencia de queja, de tal modo que no sería papel de esta Suprema Corte de Justicia de la Nación procurar en la sentencia razonamientos jurídicos ante la completa ausencia de conceptos de invalidez. De no entenderlo así, se estaría transformando el proceso dispositivo de la controversia constitucional en un proceso inquisitivo, en el que la Suprema Corte, como poseedora del control constitucional, no tendría límites en la resolución de los juicios de esta naturaleza, de tal suerte que podría resolver sobre cuestiones no planteadas, escudándose bajo el argumento de la regularidad constitucional, lo cual rompería con la naturaleza procesal de este medio de control, pues en ese orden de ideas de nada serviría emplazar a la autoridad para que contestara la demanda y ofreciera pruebas, ya que con independencia de lo que manifestara y probara, el órgano de control adoptaría la resolución que estimara conveniente.

De ahí entonces que todo análisis constitucional que emprenda este tribunal, exige de un planteamiento jurídico formulado por la parte actora, introducido por ella como materia de la litis y con respecto al cual se hubiere formulado algún concepto de invalidez, en términos del artículo 22, fracción VII, de la ley reglamentaria de la materia.

No hay que perder de vista que los conceptos de invalidez formulados por el actor deben constituir, idealmente, un planteamiento lógico jurídico relativo al fondo del asunto, aunque este Alto Tribunal bien pueda admitir como tal todo razonamiento que, cuando menos, contenga la expresión clara de la causa de pedir a través de la cual la parte actora busque acreditar la existencia del interés legítimo que le asiste para interponer el juicio de controversia constitucional, así

como para demostrar la inconstitucionalidad de la norma o actos impugnados.

Por tanto, en el concepto de invalidez se deberá expresar, cuando menos, cuál es la lesión o agravio que el actor estima le causa el acto o ley impugnada y los motivos que originaron ese agravio, para que este Alto Tribunal pueda estudiarlos, sin que sea necesario que tales conceptos de invalidez guarden un apego estricto a la forma lógica del silogismo, pues será suficiente que en alguna parte del escrito se exprese con claridad la causa de pedir.

Finalmente, es preciso aludir al contenido del artículo 41, fracción IV, de la ley reglamentaria de la materia, el cual dispone:

"Artículo 41. Las sentencias deberán contener:

"...

"IV. Los alcances y efectos de la sentencia, fijando con precisión, en su caso, los órganos obligados a cumplirla, las normas generales o actos respecto de los cuales opere y todos aquellos elementos necesarios para su plena eficacia en el ámbito que corresponda. Cuando la sentencia declare la invalidez de una norma general, sus efectos deberán extenderse a todas aquellas normas cuya validez dependa de la propia norma invalidada."

De la interpretación sistemática del citado precepto con los restantes del mismo ordenamiento legal, bien puede concluirse lo siguiente: cuando un precepto legal que no fue expresamente impugnado en una controversia constitucional pero guarda una relación de interdependencia evidente respecto de otro que sí fue impugnado y respecto del cual ya existe una determinación de inconstitucionalidad por parte de este Alto Tribunal, entonces tal inconstitucionalidad, por congruencia, deberá extenderse al primero.

Tal declaratoria de inconstitucionalidad, admisible en vía de consecuencia lógica, no rompe de modo alguno con las limitaciones de la suplencia de la deficiencia de la demanda antes apuntadas, pues como se ha mencionado, exige como condición suficiente y necesaria que exista un planteamiento de inconstitucionalidad o concepto de invalidez previo con respecto a una norma específica, y que existan otros preceptos que, aunque no específicamente impugnados, contienen normas que resultan una simple especificación, desarrollo de la primera o respecto de las cuales la primera represente una premisa lógicamente inseparable.

Por tal motivo, la presente controversia constitucional se ocupará única y exclusivamente del análisis de los preceptos de la Ley Orgánica Municipal en cita, que fueron expresamente impugnados en el capítulo de conceptos de invalidez de la demanda y con respecto a los cuales se formularon argumentos jurídicos tendentes a demostrar su inconstitucionalidad, en la inteligencia de que si la invalidez de alguno de ellos afecta a algún otro precepto del mismo sistema jurídico estatal, pero que no fue impugnado expresamente por el actor, este Alto Tribunal estará en condiciones de declarar, en vía de consecuencia, su respectiva inconstitucionalidad.

NOVENO. Como quedó precisado en el considerando séptimo de esta ejecutoria, la fracción II del artículo 115 constitucional otorga a las Legislaturas Estatales dos atribuciones en materia municipal: una, la de emitir las bases generales necesarias para conferir una homogeneidad básica al Gobierno Municipal, que establezcan los lineamientos esenciales de los cuales no se puede apartar en el ejercicio de sus competencias constitucionales; y otra, la de emitir disposiciones de detalle sobre esa misma materia municipal, aplicables solamente en los Municipios que no cuenten con la reglamentación correspondiente, con la característica antes precisada de que en el momento en que el Municipio emita sus propios reglamentos dichas disposiciones resultarán automáticamente inaplicables.

Pues bien, de la revisión y análisis exhaustivos de la norma impugnada, se aprecia que el legislador estatal emitió una Ley Orgánica Municipal en la que no distingue cuáles son bases generales de administración tendentes a establecer un marco normativo homogéneo a los Municipios del Estado, de conformidad con lo dispuesto en el artículo 115, fracción II, inciso a), y cuáles son normas de aplicación supletoria por ausencia de reglamento municipal, en términos del artículo 115, fracción II, inciso e), lo que genera graves inconvenientes a los Municipios, toda vez que no se encuentran en posibilidad de determinar cuál es el ámbito en el que sus facultades para regular en materia municipal fueron respetadas y en el que puede emitir reglamentos, bandos, circulares y normas administrativas de carácter municipal. En tal situación, la autonomía jurídica del Municipio actor queda afectada puesto que no le es posible distinguir cuáles normas le son imperativas, por constituir bases generales cuya reglamentación es competencia del Estado, y cuáles otras resultan de aplicación únicamente supletoria, en ausencia de sus propios reglamentos.

Ahora bien, como ha quedado asentado en líneas anteriores, es facultad exclusiva de las Legislaturas Estatales hacer la distinción entre las normas que son bases generales de administración y normas aplicables por ausencia de reglamentos. En ese orden de ideas, no es atribución de este Alto Tribunal sustituirse en el papel de la Legislatura Estatal y clasificar en primera instancia cada una de las normas que se contienen en el cuerpo normativo impugnado, máxime que con ello se corre el riesgo de darles una categoría que no necesariamente coincidiría con la que la legislatura le hubiera querido

imprimir, lo que daría lugar a que esta Suprema Corte de Justicia se sustituyera en el ejercicio de funciones que, de acuerdo a lo previsto en el artículo 115, fracción II, de la Constitución Federal, son propias y exclusivas de la Legislatura Estatal.

Por ello, tomando en cuenta que con el contenido de esta ejecutoria, específicamente con lo señalado en el considerando séptimo, en el que se determinó el alcance del artículo 115, fracción II, de la Carta Magna, es factible que a través de un nuevo acto legislativo el Congreso Estatal lleve a cabo esa decantación o clasificación de normas y desempeñe su función legislativa a cabalidad, pues precisamente en respeto al régimen federalista que rige al Estado mexicano, el Constituyente Permanente estableció que fueran las Legislaturas de los Estados las que establecieran las reglas a que se refiere el precepto constitucional mencionado, para lo cual deberán tomar como lineamientos los derivados de la interpretación realizada por este Alto Tribunal al respecto.

En esa tesitura, toda vez que en términos del artículo 115, fracción II, de la Constitución Federal, corresponde a las Legislaturas Estatales establecer las bases generales de administración pública municipal, así como las normas que sean supletorias ante la ausencia del reglamento correspondiente que deberá emitir el Municipio, se debe declarar la invalidez relativa de los artículos 21, 22, 37, 38, 39, 40, 43, 44, 45, 46, 47, 48, 49, fracción XXXVII, 51, 52, fracciones I, II, IV, V, VI, primer párrafo, VII, VIII, IX, XI, XII, XIII, XIV, XVII, XVIII, XXIII, XXIV, XXV, XXVI, XXVIII, XXIX, XXX, XXXII, XXXIII, XXXIV, XXXV, XXXVI, XXXVII, XXXVIII, XXXIX, XL, XLIII, XLV, XLVII, XLVIII, L, LI, LII, LIII, LIV, LV, LVI,LVIII; 55, fracciones I, III, IV, V, VI y VII, 60, fracciones I, II, IV, V, VI VII, IX, X, XI, XII, XIII, XIV, XV, 62, fracciones I, II, III, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, 63, 64, 65, 66, 74, 75, 76, 77, 78, 79, 80, 81, 82, 91, 92, 93, 94, 95, 96, 97, 98, 99, 101, 103, último párrafo, 105, 106, 107, 108, 109, 110, 113, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 126, fracciones IV y V, 134, 137, 138, 139, 149, 150, 151, 152, 153 y 154 de la Ley Orgánica Municipal del Estado de Hidalgo, reclamados por el Municipio actor, sólo para el efecto de que se considere que no le son imperativos y que, por ello, puede dictar sus propios reglamentos, aun en contra de lo que los preceptos reclamados antes reseñados establezcan, pues ante la falta de precisión de la naturaleza de las normas impugnadas referidas, debe declararse que el Municipio actor se encuentra en libertad de decidir aplicarlas de forma supletoria, o bien, de emitir sus propias normas para regir su desarrollo municipal, sin que con lo anterior se prejuzgue sobre la constitucionalidad del reglamento que pudiera emitir el Municipio, pues en todo caso ello sería objeto de un diverso análisis, tanto a través de una controversia constitucional, o bien, en su caso, del juicio de amparo.

Por último, cabe reiterar que lo anterior no afecta en modo alguno la facultad de la Legislatura Estatal para que en cumplimiento a lo dispuesto en el artículo segundo transitorio del decreto por el cual se reformó el artículo 115 de la Constitución Federal, publicado en el Diario Oficial de la Federación el veintitrés de diciembre de mil novecientos noventa y

nueve, emita una nueva ley en la que distinga la calidad de las normas a que se refiere, precisamente, el artículo 115, fracción II, de la Constitución Federal.

El citado artículo transitorio dispone:

"Artículo segundo. Los Estados deberán adecuar sus Constituciones y leyes conforme a lo dispuesto en este decreto a más tardar en un año a partir de su entrada en vigor. En su caso, el Congreso de la Unión deberá realizar las adecuaciones a las leyes federales a más tardar el 30 de abril del año 2001.

"En tanto se realizan las adecuaciones a que se refiere el párrafo anterior, se continuarán aplicando las disposiciones vigentes."

En conclusión, las normas precisadas en este considerando se declaran inconstitucionales, en virtud de que con su contenido se viola lo dispuesto expresamente por el artículo 115, fracción II, incisos a) y e), de la Constitución Federal, de tal modo que no serán obligatorias para el Municipio actor.

DÉCIMO. A continuación, se procede al estudio de los preceptos impugnados expresamente por el Municipio actor, los cuales, contrariamente a lo señalado en los conceptos de invalidez, se estima que no son violatorios de la Constitución Federal, como a continuación se pasa a demostrar.

El actor señala que el artículo 1o. de la ley impugnada, al establecer que su objeto es regular la organización y funcionamiento de los Municipios, violenta la autonomía municipal para auto-organizarse, con lo cual transgrede lo dispuesto en el artículo 115 constitucional que señala que el objeto de la ley será establecer las bases generales de la administración pública y de procedimiento administrativo, dejando como materia de la facultad reglamentaria municipal lo relativo a la organización y funcionamiento internos de los Ayuntamientos.

El artículo impugnado se encuentra dentro del capítulo I, denominado "Del Municipio", y señala:

"Artículo 1o. Las disposiciones de la presente ley son de orden público y de interés social, tienen por objeto regular la organización y funcionamiento de los Municipios, de acuerdo con lo dispuesto en los artículos 115 de la Constitución Política de los Estados Unidos Mexicanos y 115 al 148 de la Constitución Política del Estado de Hidalgo."

Por su estrecha vinculación con el artículo 3o., que también fue impugnado, resulta conveniente analizarlos de manera conjunta. Este último precepto establece:

"Artículo 3o. Los Municipios del Estado, estarán organizados y regularán su funcionamiento de acuerdo con lo dispuesto por la presente ley, en lo interno se regirán por su propia reglamentación que se ajustará a los principios establecidos en la Constitución Política de los Estados Unidos Mexicanos, en la del Estado, en esta ley y en las correlativas, así como en lo siguiente:

"I. Los Ayuntamientos quedan facultados para aprobar los bandos de gobierno y de policía, reglamentos, circulares y disposiciones administrativas de observancia general dentro de sus respectivas jurisdicciones, que organicen la administración pública municipal, regulen las materias, procedimientos, funciones y servicios públicos de su competencia y promuevan la participación de la sociedad.

"II. En los Municipios en los que no existan los bandos y reglamentos a que se refiere la fracción anterior, los Ayuntamientos aplicarán las reglas que fije ésta u otra ley que se expidan en materia municipal, a fin de permitirles cumplir sus fines y ejercer todas las atribuciones establecidas en el artículo 115 de la Constitución Política de los Estados Unidos Mexicanos, el título IX de la Constitución Política del Estado de Hidalgo.

"III. Para dirimir las controversias que se generen entre la administración pública municipal y los particulares, en relación a los recursos administrativos, se sujetarán a lo dispuesto por el título octavo, capítulo tercero de esta ley, a partir de los principios de igualdad, publicidad, audiencia y legalidad."

De lo expuesto en el marco jurídico municipal, se desprende que a pesar de que el artículo 1o. de la ley impugnada señale como objetivo regular la organización y funcionamiento de los Municipios, y no el establecer las bases generales de la administración pública y de procedimiento administrativo, como se asienta en la fracción II, inciso a), del artículo 115 constitucional, no puede considerarse como violatorio de dicho precepto, toda vez que, como ha quedado expuesto, la legislatura tiene múltiples facultades en relación con el Municipio que la propia norma constitucional prevé en diversos artículos, no sólo en el 115, ni tampoco únicamente en su fracción II, facultades que constituyen normas derivadas de la Constitución, cuya regulación, por derivar de ésta, no puede considerarse inconstitucional. Incluso el artículo 3o. de la ley indica que los Municipios regularán su funcionamiento de acuerdo con lo dispuesto por la presente ley y en lo interno se

regirán por su propia reglamentación que se ajustará a los principios establecidos en la Constitución Política de los Estados Unidos Mexicanos lo que, desde luego, no se limita al artículo 115.

Además, para verificar si la ley se apega o no a lo dispuesto en la Constitución Federal, es menester analizar individualmente cada uno de los artículos que la integran, pues el contenido de los preceptos en estudio es una declaración genérica que enuncia el objeto de la ley, el cual depende del contenido de la norma en su integridad, razón por la cual el concepto de invalidez debe declararse infundado.

Ahora, respecto del artículo 5o., el Municipio actor aduce que invade la esfera de su competencia, pues se refiere a cuestiones de la administración pública municipal que corresponde determinar a cada Ayuntamiento.

El precepto señalado, indica lo siguiente:

"Artículo 5o. Los Municipios no tendrán ningún superior jerárquico, serán independientes entre sí y no habrá ninguna autoridad intermedia entre éstos y los Poderes del Estado.

"Asimismo, podrán coordinarse y asociarse en los términos de la presente ley, para la más eficaz prestación de los servicios públicos o el mejor ejercicio de las funciones que les correspondan. Los acuerdos de coordinación o asociación serán aprobados por las dos terceras partes de los integrantes del Ayuntamiento. Cuando la asociación esté referida a Municipios de dos o más entidades federativas, se requerirá de la aprobación de las dos terceras partes de los miembros del Congreso del Estado."

El artículo anteriormente reproducido, en términos generales, es una norma derivada del artículo 115, fracción I, primer párrafo y fracción III, penúltimo párrafo, de la Constitución Federal, que establecen:

"Artículo 115. Los Estados adoptarán, para su régimen interior, la forma de gobierno republicano, representativo, popular, teniendo como base de su división territorial y de su organización política y administrativa el Municipio Libre, conforme a las bases siguientes:

"I. Cada Municipio será gobernado por un Ayuntamiento de elección popular directa, integrado por un presidente municipal y el número de regidores y síndicos que la ley determine. La competencia que esta Constitución otorga al Gobierno

Municipal se ejercerá por el Ayuntamiento de manera exclusiva y no habrá autoridad intermedia alguna entre éste y el Gobierno del Estado.

"...

"Los Municipios, previo acuerdo entre sus Ayuntamientos, podrán coordinarse y asociarse para la más eficaz prestación de los servicios públicos o el mejor ejercicio de las funciones que les correspondan. En este caso y tratándose de la asociación de Municipios de dos o más Estados, deberán contar con la aprobación de las Legislaturas de los Estados respectivas. Así mismo, cuando a juicio del Ayuntamiento respectivo sea necesario, podrán celebrar convenios con el Estado para que éste, de manera directa o a través del organismo correspondiente, se haga cargo en forma temporal de algunos de ellos, o bien se presten o ejerzan coordinadamente por el Estado y el propio Municipio."

Las normas constitucionales reproducidas establecen que el Gobierno del Municipio se ejerce con exclusividad por el Ayuntamiento y, asimismo, la prohibición de que exista autoridad intermedia entre éste y el Estado, así como la posibilidad de que se celebren convenios entre los Municipios de un mismo Estado para la prestación de servicios públicos o el mejor ejercicio de las funciones que les correspondan y, además, la posibilidad de asociación entre Municipios de dos o más entidades federativas, previa aprobación de la Legislatura Local.

Bajo este tenor, toda vez que la norma impugnada reproduce casi en su integridad el texto del artículo 115, fracción I, primer párrafo y fracción III, penúltimo párrafo, no puede considerarse inconstitucional y, por tanto, el concepto de invalidez en relación con los párrafos primero y segundo, parte primera, del artículo 5o. de la ley impugnada, resulta infundado.

Manifiesta el Municipio actor que el artículo 10 de la ley en estudio vulnera el ámbito de atribuciones que le reconoce la Constitución Política de los Estados Unidos Mexicanos.

El precepto en cuestión, que se contiene en el capítulo "De la población del Municipio", señala:

"Artículo 10. Esta ley es obligatoria para todos los habitantes de los Municipios del Estado de Hidalgo, así como para los que se encuentren temporal o transitoriamente dentro de su territorio."

El precepto anotado establece el ámbito personal y espacial de validez de la Ley Orgánica Municipal del Estado de Hidalgo, en tanto establece que la misma obliga a los habitantes del Estado de Hidalgo y a quienes se encuentren en su territorio.

Bajo este tenor, la ley no puede considerarse inconstitucional por sí misma, puesto que tendría que acudirse al estudio individualizado de cada norma impugnada para estar en posibilidad de determinar lo conducente.

Dentro del capítulo de conceptos de invalidez, señala el Municipio actor que el artículo 49, relativo a las facultades y obligaciones de los Ayuntamientos, en sus fracciones I, II y XXXII, atenta contra lo dispuesto en el artículo 115 de la Constitución Política de los Estados Unidos Mexicanos, porque invade la esfera de competencias que dicho precepto constitucional otorga a los Municipios.

El referido artículo 49, en las fracciones impugnadas antes precisadas, expresa lo siguiente:

"Artículo 49. Son facultades y obligaciones de los Ayuntamientos:

"I. Proveer en la esfera administrativa lo necesario para la aplicación de esta ley, así como el mejor desempeño de las funciones que le señalen esta u otras leyes, bandos y reglamentos. El Ayuntamiento y sus comisiones, podrán ser asistidos por los órganos administrativos municipales a fin de cumplir con sus atribuciones;

"II. Elaborar y aprobar, de acuerdo con esta ley y las demás que en materia municipal expida la Legislatura del Estado, los bandos de gobierno y de policía, reglamentos, circulares y disposiciones administrativas de observancia general dentro de sus respectivas jurisdicciones, que organicen el funcionamiento del Ayuntamiento y de la administración pública municipal, regulen las materias, procedimientos, funciones y servicios públicos de su competencia y aseguren la participación de la sociedad.

"En lo conducente y de conformidad a los fines señalados en el párrafo tercero del artículo 27 de la Constitución Política de los Estados Unidos Mexicanos, expedirán los reglamentos y disposiciones administrativas que fueren necesarios;

"...

"XXXII. Formular y aprobar anualmente su presupuesto de egresos, el cual deberá ser aprobado por las dos terceras partes

del Ayuntamiento."

A continuación, se procederá a analizar una a una las fracciones impugnadas, con objeto de determinar su naturaleza y su apego o desapego al texto constitucional.

La fracción I del artículo 49 de la Ley Orgánica Municipal del Estado de Hidalgo, consagra la facultad de los Municipios para proveer en la esfera administrativa lo necesario para la aplicación de las leyes y reglamentos, así como la posibilidad de que tanto el Ayuntamiento como sus comisiones, puedan ser asistidos por órganos administrativos municipales.

Esta disposición es una norma derivada de las fracciones I, primer párrafo y II, segundo párrafo, del artículo 115 de la Constitución Federal, en tanto que establece, por un lado, la facultad del Ayuntamiento para ejecutar las leyes y los reglamentos estatales y municipales que les sean aplicables y de auxiliarse de los órganos administrativos municipales que requiera, lo cual es parte esencial de sus funciones administrativas y de gobierno, y por el otro, la atribución para dictar los bandos, circulares y reglamentos que resulten necesarios para el correcto desempeño de dichas funciones, a la cual hace especial referencia el segundo párrafo de la fracción II del citado precepto constitucional.

La fracción II del artículo 49 en comento, consagra, en específico, la atribución del Ayuntamiento para dictar los bandos de gobierno y de policía, reglamentos, circulares y disposiciones administrativas de observancia general dentro de sus respectivas jurisdicciones.

Tal como quedó expresado en el estudio previo, sobre este particular, Salvador Valencia Carmona (Derecho Municipal, Porrúa-UNAM, México, 2003) expresa que los reglamentos municipales se han clasificado en la doctrina, según su materia, en cuatro tipos, a saber: a) para regular la organización y funcionamiento interno del Ayuntamiento; b) para regular la organización y funcionamiento de la administración municipal; c) para normar los servicios públicos y las formas en que se prestan; y d) para regular las actividades de los particulares.

Corresponde al reglamento interior encargarse de la composición y estructura del Ayuntamiento, así como de las atribuciones y deberes de cada uno de sus miembros. Los principales aspectos que son menester contemplar en este reglamento son: residencia e instalación del Ayuntamiento; derechos y obligaciones de sus integrantes; sesiones de Cabildo; comisiones y votación para los acuerdos y para su revocación.

Para que la administración municipal trabaje de manera adecuada, es preciso que se expidan reglamentos que detallen la estructura administrativa, las bases para manejar sus recursos y su personal, así como un sistema que controle y evalúe sus actividades. Para estos propósitos deben expedirse cuando menos los siguientes ordenamientos: el reglamento interno de la administración, en el cual se detallan los órganos que conforman la administración, sus funciones y responsabilidades; el reglamento de control de gestión, que permite supervisar, evaluar y controlar las actividades de las dependencias municipales, así como normar la contraloría, cuya actividad es muy importante en tales cometidos.

Los reglamentos de servicios públicos regulan las actividades municipales que constitucionalmente se han declarado como tales, por lo cual pueden llegar a ser muy numerosos y heterogéneos. Entre los reglamentos que normalmente se expiden para los servicios públicos, están los de mercados, limpia pública, rastros, panteones, parques y jardines, seguridad pública, agua potable y alcantarillado. En este tipo de reglamentos, se establece también cuál es la forma en que se puede prestar el servicio público correspondiente, sea de manera directa, en colaboración o concesionado a particulares.

Los particulares, por último, efectúan muchas actividades que el Municipio no puede ignorar y debe encauzar jurídicamente de manera apropiada. Para tal efecto, señala derechos y obligaciones a los particulares en diferentes reglamentos, entre otros: los de fraccionamientos; construcción; establecimientos industriales; establecimientos comerciales; ambulantes; diversión y espectáculos públicos; anuncios y letreros; cantinas, bares y depósitos de cervezas; y aparatos electromecánicos y sonoros.

Por último, conviene señalar que en las circulares se contienen normalmente instrucciones o reglas dirigidas por los órganos superiores a los inferiores para especificar interpretaciones de normas, decisiones o procedimientos. Las circulares pueden ser internas, si únicamente se refieren a asuntos de la competencia interna de las unidades administrativas, o externas, si van dirigidas a los particulares. Pueden mencionarse de manera específica en este rubro, las relativas al comercio establecido, los días del año que tienen el carácter feriado, los horarios en que normalmente funcionarán determinados servicios públicos o los lugares en que éstos se prestarán, las horas límite en que pueden realizar sus actividades ciertos expendios o funcionar determinados negocios, etcétera.

De alguna manera, todas estas premisas doctrinarias son recogidas por la fracción II del artículo 49 de la Ley Orgánica Municipal para el Estado de Hidalgo.

En efecto, debe estimarse que dicha fracción también es una norma derivada de la fracción II, segundo párrafo, del artículo

115 de la Constitución Federal, en tanto que no hace sino reproducir la Norma Constitucional relativa a la facultad de los Ayuntamientos para emitir normas generales.

No está por demás insistir en que el Constituyente Permanente que reformó el artículo 115 constitucional, para quedar en los términos en que actualmente se encuentra consignado, tuvo la intención de fortalecer el ámbito de competencia municipal y las facultades de sus órganos de gobierno. Por ello, se delimitó el objeto y los alcances de las leyes estatales que versan sobre cuestiones municipales, lo que se traduce en que la competencia reglamentaria del Municipio implique, de forma exclusiva, los aspectos fundamentales para su desarrollo. De ahí precisamente que se haya modificado en la fracción II del artículo 115 de la Constitución General de la República, el concepto de bases normativas por el de leyes estatales en materia municipal, conforme a las cuales los Ayuntamientos expidan su normatividad propia.

Lo anterior está contenido en el punto 4.2 del dictamen de la Comisión de Gobierno y Puntos Constitucionales de la Cámara de Diputados del Congreso de la Unión, en los términos siguientes:

"La intención de esta Comisión Dictaminadora, consiste en fortalecer el ámbito de competencia municipal y las facultades de su órgano de gobierno. Por ello sepropone tal y como lo plantean los autores de las iniciativas antes descritas, delimitar el objeto y los alcances de las leyes estatales que versan sobre cuestiones municipales. Lo que se traduce en que la competencia reglamentaria del Municipio, implique de forma exclusiva, los aspectos fundamentales para su desarrollo. De ahí que se defina y modifique en la fracción II, el concepto de bases normativas, por el de leyes estatales en materia municipal, conforme a las cuales los Ayuntamientos expidan sus reglamentos, y otras disposiciones administrativas de orden general."

Ahora bien, el Municipio actor manifiesta que la fracción XXXII del mismo artículo 49, que establece que el Ayuntamiento está facultado para formular y aprobar anualmente su presupuesto de egresos, el cual deberá ser aprobado por las dos terceras partes del Ayuntamiento, es inconstitucional.

Sin embargo, conforme al cuarto párrafo del inciso c) de la fracción IV del artículo 115 constitucional, el Ayuntamiento tiene la facultad de formular y aprobar su presupuesto de egresos anual, por lo que, en ese aspecto, no puede sostenerse que la norma impugnada sea inconstitucional, pues sólo reitera el contenido de la Carta Magna. No pasa desapercibido que el artículo controvertido dispone que el presupuesto de egresos "deberá ser aprobado por las dos terceras partes del Ayuntamiento", pues como se mencionó en el considerando séptimo de esta resolución, del contenido del artículo 115 de la

Constitución Federal, en el cual se contienen atribuciones expresas de las Legislaturas de los Estados para regir la vida municipal, en relación con el artículo 124 de la Carta Magna, que establece las facultades que de manera residual corresponden a las entidades federativas, se concluye que no existe prohibición alguna para que los Congresos Locales puedan determinar casos distintos a los señalados en la fracción II, incisos b) y d), del artículo 115 constitucional, en los que se requiera que las decisiones de los Ayuntamientos se adopten por una mayoría de las dos terceras partes de sus integrantes.

En sus conceptos de invalidez, el Municipio actor también señala que los artículos 52, fracciones II, VI, X, XV, XVI, XIX, XX, XXI, XXII, XXVII, XXXI, XLI, XLII, XLIV, XLVI, XLIX y LVII, y 55, fracción II, de la Ley Orgánica Municipal del Estado de Hidalgo, insertos dentro del capítulo relativo a las facultades y obligaciones de los presidentes municipales, transgreden el artículo 115 constitucional, toda vez que invaden la esfera competencial del Municipio que dicho precepto les otorga, además de que, según su propio dicho, "en materia de mayorías calificadas del Ayuntamiento, éstas sólo son posibles de establecerse en la ley, tratándose de disposición de bienes muebles (sic), o actos jurídicos que obliguen al Ayuntamiento más allá de su periodo de gobierno. Por tanto, es indebido imponer a los Ayuntamientos la toma de decisiones a partir de mayoría calificada fuera de esos temas".

Para dar contestación a los argumentos de la parte actora, conviene transcribir y analizar, uno por uno, los preceptos mencionados.

Por lo que se refiere al artículo 52 impugnado, este dispone lo siguiente:

"Artículo 52. Son facultades y obligaciones de los presidentes municipales, las siguientes:

"...

"III. Dentro de su competencia, cumplir y hacer cumplir las disposiciones contenidas en las leyes y reglamentos federales, estatales y municipales; así como los acuerdos del Ayuntamiento;

"...

"VI. Extender los nombramientos y tomar protesta a los delegados y subdelegados, electos por los pueblos, comunidades,

colonias, fraccionamientos y barrios; así como suspenderlos por incumplimiento de sus funciones o por la comisión de delitos de los fueros común o federal y separarlos en definitiva cuando fueren encontrados responsables. Cuando faltare el delegado o subdelegado, solicitará a los vecinos una nueva elección.

"Nombrar y remover a los alcaides y al personal de seguridad y administrativo de acuerdo con las disposiciones aplicables, así como cuidar que las dependencias y oficinas municipales se integren y funcionen con eficiencia;

"...

"X. Cumplir con el plan estatal de desarrollo, el del Municipio y los programas sectoriales, regionales y especiales aprobados, respecto a lo que se refiere a su Municipio. A más tardar, noventa días después de tomar posesión de su cargo, el presidente municipal deberá presentar un plan de desarrollo municipal congruente con el Plan Estatal;

"...

"XV. Mandar fijar las placas distintivas en las calles, jardines, plazas y paseos públicos, cuya nomenclatura haya sido aprobada por el Ayuntamiento;

"XVI. Tener bajo su mando los cuerpos de seguridad para la conservación del orden público, con excepción de las facultades que se reservan al presidente de la República y al gobernador del Estado, conforme a lo establecido por la fracción VII del artículo 115 de la Constitución Política de los Estados Unidos Mexicanos;

"...

"XIX. Promover lo necesario para que los oficiales y funcionarios por delegación del Registro del Estado Familiar, desempeñen en el Municipio los servicios que les competen, en los términos establecidos en la Constitución Política del Estado y demás leyes de la materia y vigilar su cumplimiento;

"XX. Obligar crediticiamente al Municipio en forma mancomunada con el secretario general y el tesorero municipal. Cuando el pago de estas obligaciones vaya más allá del periodo de su ejercicio, el acuerdo deberá ser aprobado por las dos terceras partes de los integrantes del Ayuntamiento;

"XXI. Crear, o en su caso, modificar y suprimir las dependencias necesarias para el desempeño de los asuntos del orden administrativo y para la eficaz prestación de los servicios públicos municipales, previo acuerdo del Ayuntamiento y en los términos del reglamento correspondiente;

"XXII. Proponer al Ayuntamiento, la división administrativa del territorio municipal en delegaciones, subdelegaciones, sectores, secciones y manzanas o la modificación de la existente, así como reconocer la denominación política de las poblaciones y solicitar la declaratoria de nuevas categorías políticas al Congreso del Estado;

"...

"XXVII. Otorgar o denegar, en su ámbito de competencia, licencias y permisos de uso del suelo, construcción y alineamiento, con observancia de los ordenamientos respectivos;

"...

"XXXI. Proporcionar los servicios de seguridad a la población en general y mantener el orden en espectáculos, festividades, paseos y lugares públicos;

"...

"XLI. Imponer administrativamente a los empleados y funcionarios de la administración municipal, las sanciones que correspondan de acuerdo con el reglamento interno de la administración municipal y la ley de la materia o lo dispuesto por las condiciones generales de trabajo;

"XLII. Ejercer las funciones del Registro del Estado Familiar o delegarlas en el funcionario idóneo que designe;

"...

"XLIV. Ejercer las funciones de presidente de la Junta Municipal de Reclutamiento y proceder a la inscripción de los jóvenes en edad militar, organizar el sorteo correspondiente y entregar el personal a las autoridades militares el primer domingo del

mes de enero, de acuerdo con la Ley del Servicio Militar Nacional;

"...

"XLVI. Cuidar de la conservación del orden público, para lo cual dictará las medidas que a su juicio requieran las circunstancias;

"XLVII. Reunir oportunamente los datos estadísticos del Municipio;

"...

"XLIX. Exigir de los funcionarios y empleados municipales, el cumplimiento de sus obligaciones;

"...

"LVII. Presentar ante la Contaduría Mayor de Hacienda del Congreso del Estado, su declaración patrimonial inicial, dentro de los sesenta días hábiles siguientes a la toma de posesión; de modificación anual, durante el mes de mayo de cada año; y de conclusión de encargo, dentro de los treinta días hábiles siguientes a ésta."

Para analizar la constitucionalidad de un precepto tan amplio por referirse a las facultades y obligaciones de los presidentes municipales, a continuación se procede a agrupar aquellas fracciones que guardan una naturaleza jurídica similar entre sí.

Conviene ahora referirse a la naturaleza jurídica de las fracciones III, VI, segundo párrafo, X, XV, XVI, XIX, XX, XXXI, XLI, XLII, XLIV, XLVI, XLIX y LVII del artículo 52 impugnado, pues todas ellas, como se pasará a demostrar a continuación, constituyen normas derivadas de diversos preceptos de la Constitución Federal y que, por ende, no la contrarían.

La fracción III establece la facultad y obligación del presidente municipal de aplicar las normas federales, estatales y municipales, así como los acuerdos del Ayuntamiento. Dicha facultad encuentra apoyo directo en el artículo 128 constitucional, el cual dispone lo siguiente:

"Artículo 128. Todo funcionario público, sin excepción alguna, antes de tomar posesión de su encargo, prestará la protesta

de guardar la Constitución y las leyes que de ella emanen."

Por tanto, el referido precepto es una norma derivada de la Constitución Federal y en nada invade la autonomía municipal.

Por su parte, las fracciones X, XIX, XLII, LI y LII, encuentran su apoyo en el artículo 124 de la Constitución Federal, el cual dispone lo siguiente:

"Artículo 124. Las facultades que no están expresamente concedidas por esta Constitución a los funcionarios federales, se entienden reservadas a los Estados."

En efecto, la fracción X que establece que es obligación del presidente municipal cumplir con los planes de desarrollo aplicables a su Municipio, así como elaborar su propio plan de desarrollo, es una norma derivada del artículo 124 y del artículo 115, fracción V, constitucional, porque la Norma Suprema reserva a las Legislaturas Estatales expedir las normas relativas a la planeación del desarrollo estatal y faculta a los Municipios para establecer su plan de desarrollo municipal.

No sobra decir que las entidades federativas deben garantizar la participación del Municipio en la formulación de planes de desarrollo regional, en términos del artículo 115, fracción V, inciso c), de la Constitución Federal, el cual establece lo siguiente:

"Artículo 115. ...

"V. Los Municipios, en los términos de las leyes federales y estatales relativas, estarán facultados para:

"...

"c) Participar en la formulación de planes de desarrollo regional, los cuales deberán estar en concordancia con los planes generales de la materia. Cuando la Federación o los Estados elaboren proyectos de desarrollo regional deberán asegurar la participación de los Municipios."

Por lo que se refiere a la fracción XIX, que establece como facultad del presidente municipal promover lo necesario para que los funcionarios del Registro del Estado Familiar desempeñen sus funciones en el Municipio y a la fracción XLII, que faculta a

dicho funcionario para ejercer las funciones del Registro del Estado Familiar y delegarlas en el funcionario que designe, debe decirse que también son normas derivadas del artículo 124 constitucional, porque el Registro Civil es una función esencialmente estatal, como se desprende del propio artículo 121, fracción IV, de la Constitución Federal:

"Artículo 121. En cada Estado de la Federación se dará entera fe y crédito a los actos públicos, registros y procedimientos judiciales de los otros. El Congreso de la Unión, por medio de leyes generales, prescribirá la manera de probar dichos actos, registros y procedimientos, y el efecto de ellos, sujetándose a las bases siguientes:

"...

"IV. Los actos del estado civil ajustados a las leyes de un Estado, tendrán validez en los otros."

De ahí que si las funciones del Registro Civil son competencia de las entidades federativas, estas últimas pueden delegarlas en los Municipios y establecer las condiciones en las que se deberán desempeñar, sin que ello sea inconstitucional o vulnere la esfera de competencia originariamente asignada a los Municipios, pues ello también coincide con el contenido del artículo 115, fracción III, inciso i), de la Constitución Federal.

En resumen, del contenido de las fracciones X, XIX y XLII del artículo 52 impugnado, se advierte que se trata de funciones que originariamente les corresponden a los Estados, mismas que de alguna manera delegan total o parcialmente en los Municipios. Por tanto, si su ejercicio es estatal, no puede decirse que con ellas se esté invadiendo la esfera de competencia de los Municipios, sino que por el contrario, se está ampliando su esfera de atribuciones con funciones que constitucionalmente no les son reconocidas, pero que por un acto de autonomía del Estado les son atribuidas mediante un ordenamiento emanado de la Legislatura Local, en consecuencia, tales fracciones tampoco son inconstitucionales y resultan infundados los conceptos de invalidez que tienen como propósito acreditarlo.

Por último, por lo que hace a la fracción XX del artículo 52, debe decirse que se trata de una norma de derivada del artículo 117, fracción VIII, constitucional, en cuanto a que prevé que es facultad de los Municipios contraer obligaciones o empréstitos cuando se destinen a inversiones públicas productivas, conforme a las bases que establezcan las legislaturas.

En efecto, resulta conveniente señalar que el empréstito como fuente de financiamiento del gasto del Ayuntamiento, surge como una alternativa ante la insuficiencia financiera de los Municipios y, por el otro lado, la responsabilidad de atender,

entre otras cuestiones, la prestación de los servicios públicos municipales y el desarrollo de sus comunidades.

A raíz de la insuficiencia de los ingresos percibidos en el Municipio, tanto por la vía de sus contribuciones como de las participaciones y aportaciones federales y estatales, se generan reacciones diversas en la población municipal, que perciben la incapacidad del Municipio de proporcionar los servicios públicos más indispensables, o bien, de impulsar el desarrollo en sus comunidades, hasta el riesgo latente de estallido social por insatisfacción de sus necesidades primarias.

Las alternativas de solución resultan ser cada vez más escasas, y entre ellas, una de las más válidas desde el punto de vista jurídico y social, consiste en la obtención de recursos a través de empréstitos que los Municipios puedan obtener valiéndose de los organismos oficiales creados con esa finalidad o de aquellas instituciones o grupos con posibilidad de ofrecer financiamiento ventajoso para las obras municipales.

Esta situación ha sido recogida en nuestra Constitución Federal, en el artículo 117, fracción VIII, que regula lo siguiente:

"Artículo 117. Los Estados no pueden, en ningún caso:

"...

"VIII. Contraer directa o indirectamente obligaciones o empréstitos con gobiernos de otras naciones, con sociedades o particulares extranjeros, o cuando deban pagarse en moneda extranjera o fuera del territorio nacional.

"Los Estados y los Municipios no podrán contraer obligaciones o empréstitos sino cuando se destinen a inversiones públicas productivas, inclusive los que contraigan organismos descentralizados y empresas públicas, conforme a las bases que establezcan las legislaturas en una ley y por los conceptos y hasta por los montos que las mismas fijen anualmente en los respectivos presupuestos. Los Ejecutivos informarán de su ejercicio al rendir la cuenta pública."

Del texto anterior se desprende que los Municipios podrán acceder al crédito, siempre y cuando cumplan con las bases que establezca la ley y, además, dichos recursos se destinen a inversiones públicas productivas, por lo cual no puede considerarse inconstitucional la fracción en comento.

Además, la exigencia que prevé el numeral en cuestión consistente en exigir el acuerdo de las dos terceras partes de los

integrantes del Ayuntamiento cuando el pago de esas obligaciones vaya más allá del periodo del presidente municipal, tiene su fundamento en el artículo 115, fracción II, inciso b), de la Constitución Federal.

Mención especial merece la fracción XLIII que, entre otras cosas, establece que para la suspensión o terminación de obras públicas que se hubiesen iniciado durante el periodo del Ayuntamiento anterior, será necesario obtener el acuerdo expreso de las dos terceras partes de los integrantes del Ayuntamiento. Lo anterior porque si bien es cierto que el inciso b) de la fracción II del artículo 115 constitucional, establece dicha mayoría calificada únicamente para obtener la autorización para iniciar una obra cuya realización se prolongue más allá del periodo del Ayuntamiento, también lo es que por igualdad de razón debe imperar la misma regla cuando, como en el caso, se trata de suspender o terminar anticipadamente la realización de una obra pública ordenada por la administración municipal anterior.

Aunado a lo anterior, debe decirse que mediante el contenido de la fracción XLIII también se pretende brindar un marco genérico con el que se cumplan los principios de transparencia, eficiencia y eficacia que requiere la toma de decisiones en materia de obras públicas, todo lo cual le da un amplio sustento constitucional.

Con respecto al contenido de la fracción XV, que establece la facultad de mandar fijar las placas distintivas en las calles, jardines, plazas y paseos, debe decirse que se trata de la aplicación directa del artículo 115, fracción III, inciso g), de la Constitución Federal, el cual dispone que:

"Artículo 115. ...

"III. Los Municipios tendrán a su cargo las funciones y servicios públicos siguientes:

"...

"g) Calles, parques y jardines y su equipamiento."

De donde se advierte que si el legislador estatal estableció una facultad relacionada con las calles, plazas y jardines, sólo está llevando al detalle el contenido del artículo constitucional antes transcrito, razón por la cual no resulta invasor de la esfera competencial del Municipio.

Por lo que respecta a la fracción VI, segundo párrafo, que otorga al presidente municipal la facultad de nombrar y remover a los alcaldes y al personal de seguridad; la fracción XVI, que se refiere a la facultad para tener bajo su mando a los cuerpos de seguridad; la fracción XXXI, que le otorga las atribuciones necesarias para proporcionar los servicios de seguridad a la población; y la fracción XLVI, que autoriza a dicho funcionario para llevar a cabo medidas tendentes a conservar el orden público, debe decirse que se trata de la aplicación directa del artículo 115 constitucional, fracción VII, de la Constitución Federal, el cual dispone lo siguiente:

"Artículo 115. ...

"VII. La Policía Preventiva Municipal estará al mando del presidente municipal, en los términos del reglamento correspondiente. Aquélla acatará las órdenes que el gobernador del Estado le transmita en aquellos casos que éste juzgue como de fuerza mayor o alteración grave del orden público.

"El Ejecutivo Federal tendrá el mando de la fuerza pública en los lugares donde resida habitual o transitoriamente."

Como deriva de lo anterior, las fracciones referidas no son más que la aplicación de la facultad constitucional que tienen los presidentes municipales de tener a su cargo a la policía preventiva y, por tanto, asumir la función de preservar el orden público y proveer sobre la seguridad de la población municipal, de ahí que igualmente deban considerarse acordes con el texto constitucional.

Por cuanto hace a la fracción XLI, que faculta al presidente municipal a sancionar administrativamente a los empleados y funcionarios de la administración pública municipal; la fracción XLIX, que faculta a dicho presidente a exigir a esos mismos funcionarios y empleados el cumplimiento de sus obligaciones; y la fracción LVII, que obliga a dicho munícipe a presentar sus declaraciones patrimoniales ante la Contaduría Mayor de Hacienda del Congreso del Estado, se trata de normas cuyo contenido se haya inscrito en elmarco de los artículos 109, primer párrafo, fracción III y 113 constitucionales, mismos que disponen en sus términos lo siguiente:

"Artículo 109. El Congreso de la Unión y las Legislaturas de los Estados, dentro de los ámbitos de sus respectivas competencias, expedirán las leyes de responsabilidades de los servidores públicos y las demás normas conducentes a sancionar a quienes, teniendo este carácter, incurran en responsabilidad, de conformidad con las siguientes prevenciones:

"...

"III. Se aplicarán sanciones administrativas a los servidores públicos por los actos u omisiones que afecten la legalidad, honradez, lealtad, imparcialidad y eficiencia que deban observar en el desempeño de sus empleos, cargos o comisiones."

"Artículo 113. Las leyes sobre responsabilidades administrativas de los servidores públicos, determinarán sus obligaciones a fin de salvaguardar la legalidad, honradez, lealtad, imparcialidad y eficiencia en el desempeño de sus funciones, empleos, cargos y comisiones; las sanciones aplicables por los actos u omisiones en que incurran, así como los procedimientos y las autoridades para aplicarlas. Dichas sanciones, además de las que señalen las leyes, consistirán en suspensión, destitución e inhabilitación, así como en sanciones económicas, y deberán establecerse de acuerdo con los beneficios económicos obtenidos por el responsable y con los daños y perjuicios patrimoniales causados por sus actos u omisiones a que se refiere la fracción III del artículo 109, pero que no podrán exceder de tres tantos de los beneficios obtenidos o de los daños y perjuicios causados. ..."

Es decir, a través de las fracciones impugnadas, la Legislatura Local está legislando en materia de responsabilidades de los servidores públicos y, en uso de esa misma facultad, otorga al presidente municipal la potestad de sancionar administrativamente tanto a los funcionarios como a los empleados municipales. Por su parte, el presidente municipal está obligado a presentar sus declaraciones patrimoniales, a través de las cuales podría advertirse un enriquecimiento injustificado o un beneficio económico a costa del erario público, en abierta transgresión a los principios de legalidad, honradez, lealtad, imparcialidad y eficiencia en el desempeño de sus funciones.

Bajo ese esquema, puede concluirse que las fracciones XLI, XLIX y LVII del artículo 52 impugnado, son preceptos que encuentran apoyo directo en los artículos 109 y 113 constitucionales, razón por la cual no invaden la esfera de competencia del Municipio.

Por lo que respecta a las normas de esta naturaleza, debe decirse que la fracción XLIV del mencionado artículo 52, también es una norma que desarrolla de manera directa el contenido de la Constitución Federal, en este caso, el artículo 31, fracción II, de la Carta Magna. En efecto, la fracción impugnada faculta al presidente municipal a ejercer las funciones de presidente de la Junta Municipal de Reclutamiento y proceder a la inscripción de los jóvenes de edad militar, por su parte, el precepto constitucional dispone lo siguiente:

"Artículo 31. Son obligaciones de los mexicanos:

"...

"II. Asistir en los días y horas designados por el Ayuntamiento del lugar en que residan, para recibir instrucción cívica y militar que los mantenga aptos en el ejercicio de los derechos de ciudadanos, diestros en el manejo de las armas, y conocedores de la disciplina militar."

De donde se advierte que si bien es cierto que los Ayuntamientos del Estado de Hidalgo deberán constituir su Junta Municipal de Reclutamiento, en estricta consonancia con el precepto constitucional antes citado, la labor de inscripción y reclutamiento se llevará a cabo a través del presidente municipal, todo lo cual encuentra sustento en la Norma Suprema y, por ende, no puede ser tildado de inconstitucional.

Por último, en cuanto se refiere a las fracciones XXI, XXII y XXVII, relativas a la facultad de los presidentes municipales para organizar y dividir política, administrativa y territorialmente al Municipio, éstas constituyen el reconocimiento, por parte de la legislatura, de la facultad de los Ayuntamientos para organizar su administración pública municipal, lo que conlleva la posibilidad de crear las dependencias, entidades u organismos que estimen necesarios para su adecuado funcionamiento, justamente en cumplimiento del contenido de la fracción II del artículo 115 constitucional, por lo cual no se puede considerar que con el contenido de dichas fracciones se esté vulnerando la esfera competencial del Municipio.

Conviene referirse ahora al contenido del artículo 55, únicamente por lo que hace a la fracción II de la ley impugnada, pues respecto a las restantes fracciones que lo integran ya se formuló un pronunciamiento de invalidez relativa, en términos del considerando noveno de la presente ejecutoria.

El referido precepto establece, en la fracción II, lo siguiente:

"Artículo 55. Los presidentes municipales, se encuentran impedidos para:

"...

"II. Imponer contribución o sanción alguna que no esté señalada en las leyes, reglamentos y otras disposiciones legales

vigentes."

La fracción mencionada impide al presidente municipal imponer contribución o sanción alguna que no esté señalada en las leyes, reglamentos u otras disposiciones vigentes. En dicha disposición se consigna el principio de legalidad previsto en los artículos 14 y 31, fracción IV, constitucionales, pues toda contribución o sanción debe fundarse en una ley en sentido formal y material, mas no en un acto unilateral que no tenga apoyo en esta última. Por tal motivo, la norma en comento no es inconstitucional, sino que deriva inmediatamente de la Carta Magna y, por tanto, no vulnera la autonomía municipal, por lo que en ese aspecto es infundado el concepto de invalidez que se hace valer.

En su concepto de invalidez, el Municipio actor señala que el artículo 60, fracciones III y VIII, de la Ley Orgánica Municipal del Estado de Hidalgo, inserto dentro del capítulo relativo a los síndicos, es inconstitucional, toda vez que invade la esfera competencial del Municipio prevista en el artículo 115, fracción II, constitucional, que lo faculta para autogobernarse, desarrollar esta función de manera exclusiva y para aprobar todas las disposiciones que organice la administración pública municipal.

El artículo 60, en lo conducente, dispone lo siguiente:

"Artículo 60. Los síndicos de los Ayuntamientos, tendrán las siguientes facultades y obligaciones:

"...

"III. Cuidar que se observen escrupulosamente las disposiciones de esta ley, para el efecto de sancionar cualquier infracción que se cometa;

"...

"VIII. Demandar ante las autoridades competentes la responsabilidad en que incurran en el desempeño de sus cargos, los funcionarios y empleados del Municipio."

Las fracciones de referencia se refieren a la facultad del síndico para vigilar que se observen las disposiciones de la ley orgánica que ahora se combate, así como demandar ante las autoridades competentes la responsabilidad en que incurran

en el desempeño de sus cargos, los funcionarios y empleados del Municipio. La circunstancia de que la Legislatura del Estado haya establecido tales atribuciones a favor del síndico municipal, no constituyen más que una aplicación directa de los artículos 109 y 113 de la Constitución Federal, en los cuales se establece que será facultad de las entidades federativas determinar a través de la ley cuál será el régimen de responsabilidad al que se sujetarán los servidores públicos del propio Estado y, por supuesto, del Municipio, según se advierte de la siguiente transcripción:

"Artículo 109. El Congreso de la Unión y las Legislaturas de los Estados, dentro de los ámbitos de sus respectivas competencias, expedirán las leyes de responsabilidades de los servidores públicos y las demás normas conducentes a sancionar a quienes, teniendo este carácter, incurran en responsabilidad, de conformidad con las siguientes prevenciones:

"...

"III. Se aplicarán sanciones administrativas a los servidores públicos por los actos u omisiones que afecten la legalidad, honradez, lealtad, imparcialidad y eficiencia que deban observar en el desempeño de sus empleos, cargos o comisiones. ..."

"Artículo 113. Las leyes sobre responsabilidades administrativas de los servidores públicos, determinarán sus obligaciones a fin de salvaguardar la legalidad, honradez, lealtad, imparcialidad y eficiencia en el desempeño de sus funciones, empleos, cargos y comisiones; las sanciones aplicables por los actos u omisiones en que incurran, así como los procedimientos y las autoridades para aplicarlas. Dichas sanciones, además de las que señalen las leyes, consistirán en suspensión, destitución e inhabilitación, así como en sanciones económicas, y deberán establecerse de acuerdo con los beneficios económicos obtenidos por el responsable y con los daños y perjuicios patrimoniales causados por sus actos u omisiones a que se refiere la fracción III del artículo 109, pero que no podrán exceder de tres tantos de los beneficios obtenidos o de los daños y perjuicios causados. ..."

Por tanto, la circunstancia de que la Legislatura Estatal previera que el síndico se convierta en un vigilante y denunciante del incumplimiento de la norma, así como de los principios que rigen el ejercicio de la función pública, en nada atenta a la capacidad de autogobierno del Municipio, pues la propia Constitución Federal faculta a la legislatura para ello. Por lo anterior, en este aspecto resulta infundado el concepto de invalidez que plantea el Ayuntamiento actor.

En su concepto de invalidez, el Municipio actor señala que el artículo 62, fracción IV, de la Ley Orgánica Municipal del Estado de Hidalgo, inserto dentro del capítulo relativo a las facultades y obligaciones de los regidores es inconstitucional, toda vez

que invade la esfera competencial del Municipio prevista en el artículo 115, fracción II, constitucional, que lo faculta para autogobernarse, desarrollar esta función de manera exclusiva y para aprobar todas las disposiciones que organicen la administración pública municipal. Asimismo, la parte actora invocó como argumento el relativo a que en materia de mayorías calificadas del Ayuntamiento, éstas sólo son posibles de establecerse en una ley, tratándose de la disposición de bienes inmuebles o de la celebración de actos jurídicos que obliguen al Ayuntamiento más allá de su periodo de gobierno.

El texto del artículo 62, fracción IV, es el siguiente:

"Artículo 62. Son facultades y obligaciones de los regidores, las siguientes:

"...

"IV. Vigilar que los actos de la administración municipal, se desarrollen en apego a lo dispuesto por las leyes y normas de observancia municipal."

Dicha fracción establece la obligación de los regidores de vigilar que los actos de la administración municipal se desarrollen con apego a lo dispuesto por las leyes y normas de observancia general, cabe decir que también se trata de una norma derivada de los artículos 109 y 113 de la Constitución Federal, los cuales establecen que las leyes de los Estados determinarán el régimen de responsabilidad de los servidores públicos. Es decir, a través de la fracción impugnada, el Estado de Hidalgo está legislando en materia de responsabilidades de los servidores públicos y, en uso de esa misma facultad, otorga al regidor, a través de una ley, la potestad de vigilar que los actos de la administración se apeguen a los principios de legalidad, honradez, lealtad, imparcialidad y eficiencia que exige la Constitución.

Bajo ese esquema, puede concluirse que la fracción IV, encuentra apoyo directo en los artículos 109 y 113 constitucionales, razón por la cual no invade la esfera de competencia del Municipio.

La parte actora señala que el artículo 88 de la ley impugnada, es violatorio del artículo 115 constitucional, toda vez que invade la esfera de competencia de los Municipios al transgredir la facultad que tienen los Ayuntamientos para autogobernarse y para desarrollar esta función de manera exclusiva.

El artículo impugnado es del tenor literal siguiente:

"Artículo 88. Los bienes de dominio público, son inalienables, imprescriptibles e inembargables y no están sujetos a acción reivindicatoria o de posesión definitiva o provisional, mientras no varíe su situación jurídica.

"Los bienes de dominio privado, podrán ser enajenados mediante acuerdo de las dos terceras partes de los integrantes del Ayuntamiento, previo avalúo que presente la Unidad de Obras Públicas, en términos de lo previsto por la Ley de Bienes del Estado de Hidalgo."

Por cuanto se refiere al primer párrafo, tenemos que es una norma derivada de la fracción II, primer párrafo, del artículo 115 de la Constitución Federal, que indica:

"Artículo 115. Los Estados adoptarán, para su régimen interior, la forma de gobierno republicano, representativo, popular, teniendo como base de su división territorial y de su organización política y administrativa el Municipio Libre, conforme a las bases siguientes:

"...

"II. Los Municipios estarán investidos de personalidad jurídica y manejarán su patrimonio conforme a la ley."

Ciertamente, en términos de la norma constitucional citada, corresponde a las Legislaturas Locales la determinación del régimen patrimonial de los bienes del Municipio, sin embargo, no podrá intervenir en la administración y decisiones que el Ayuntamiento tome con respecto al destino de esos bienes, pues la Constitución limita sus atribuciones en el inciso b) de la fracción II del artículo 115, que circunscribe el objeto de las leyes en materia municipal, al establecimiento de los casos en los que se requiera la votación de las dos terceras partes del Ayuntamiento para la afectación del patrimonio inmobiliario municipal.

En efecto, en el dictamen de la Comisión de Gobernación y Puntos Constitucionales de la Cámara de Diputados, en el punto 4.2.2 se señaló lo siguiente:

"En el inciso b), se establece que la ley deberá prever el requisito de mayoría calificada de los miembros de un Ayuntamiento en las decisiones relativas a la afectación de su patrimonio inmobiliario y la firma de convenios que por su

trascendencia lo requieran; sin embargo, en dichas decisiones la Legislatura Estatal ya no intervendrá en la toma de la decisión a los Ayuntamientos."

Ahora bien, por cuanto se refiere al segundo párrafo del precepto en estudio, mismo que establece la necesidad de una votación calificada para la enajenación de los bienes de dominio privado, debe realizarse una interpretación conforme con el inciso b) de la fracción II del artículo 115 constitucional, en virtud de que ésta se refiere a que la legislatura podrá establecer que se requiera la mayoría calificada de los miembros del Cabildo, únicamente tratándose de la afectación de bienes inmuebles.

En consecuencia, el segundo párrafo del presente artículo debe interpretarse en el sentido de que al referirse a bienes de dominio privado, lo hace únicamente respecto a los inmuebles.

Bajo este tenor y toda vez que la norma que se impugna es conforme con la Constitución Federal, el concepto de invalidez respectivo deviene en infundado.

El Municipio actor señala en su concepto de invalidez, que las disposiciones relativas a la inspección de la hacienda pública municipal invaden la esfera de competencias del Ayuntamiento, puesto que se refiere a cuestiones de organización del Municipio que le corresponde regular a cada uno.

A fin de poder dar contestación al concepto de invalidez antes reseñado, resulta indispensable acudir al texto del artículo 100, pues es el único con respecto al cual subsiste el problema de constitucionalidad:

"Artículo 100. La inspección de la hacienda pública municipal, se contraerá a lo siguiente:

"I. Examinar si la contabilidad se lleva en forma adecuada, legal y técnicamente y si se encuentra al corriente;

"II. Averiguar si se defraudan los intereses del erario municipal y las causas de que no se recaude lo que corresponde y confrontar en la tesorería las partidas de entrada con los recibos que se hayan expedido a los contribuyentes y cotejarlos con los comprobantes formulados al efecto, por la presidencia municipal;

"III. Conocer el monto de los rezagos y los motivos por los cuales no se hicieron oportunamente los cobros y exigir que se

hagan desde luego con las medidas de apremio que marca la ley;

"IV. Investigar si tanto el tesorero como sus empleados, cumplen con sus obligaciones y atienden al público con la debida diligencia;

"V. Examinar si se han cometido irregularidades en perjuicio del fisco municipal o de los contribuyentes y en su caso, señalar a los responsables;

"VI. Revisar el archivo de la tesorería, cerciorándose de que los expedientes se encuentren en orden y la correspondencia al corriente;

"VII. Observar el estado que guardan los muebles, útiles y enseres de la oficina;

"VIII. Tomar las medidas necesarias, para el aseguramiento de bienes en los casos de fraude al erario municipal, en tanto se hace la consignación correspondiente;

"IX. Examinar y hacer constar:

"a) Si hay raspaduras, enmendaduras o notas entre renglones en los asientos;

"b) Si los libros están autorizados y rubricados por quien corresponda;

"c) Si en las operaciones aritméticas y contables hay errores;

"d) Si los asientos de los diversos libros de la tesorería, concuerdan entre sí;

"e) Si los comprobantes del débito, justifican las respectivas partidas; si se cobraron impuestos que las leyes no autorizan y si se hicieron gastos que no están debidamente comprobados;

"f) Si los pagos se hicieron con puntualidad o hay algún adelanto o atraso en ellos y si las adquisiciones se hicieron de conformidad con la ley de la materia y

"g) Si los asientos se llevan al corriente.

"X. Las demás facultades que, en relación con la hacienda municipal, sean conferidas a la propia Contaduría Mayor de Hacienda del Congreso del Estado, en la ley orgánica respectiva."

Dicho artículo se refiere a la posibilidad del Congreso del Estado o la Diputación Permanente de solicitar en cualquier momento a la Contaduría Mayor de Hacienda, la práctica de visitas de inspección, supervisión o auditoría, así como a la materia a la que se deberá contraer la inspección de la hacienda municipal, se sostiene que deben ser consideradas como normas que derivan del artículo 115, fracción IV, penúltimo párrafo, de la Constitución Federal, atento a lo siguiente.

El artículo 115, fracción IV, de la Constitución Federal establece:

"Artículo 115. Los Estados adoptarán, para su régimen interior, la forma de gobierno republicano, representativo, popular, teniendo como base de su división territorial y de su organización política y administrativa el Municipio Libre, conforme a las bases siguientes:

"...

"IV. Los Municipios administrarán libremente su hacienda, la cual se formará de los rendimientos de los bienes que les pertenezcan, así como de las contribuciones y otros ingresos que las legislaturas establezcan a su favor, y en todo caso:

"a) Percibirán las contribuciones, incluyendo tasas adicionales, que establezcan los Estados sobre la propiedad inmobiliaria, de su fraccionamiento, división, consolidación, traslación y mejora así como las que tengan por base el cambio de valor de los inmuebles.

"Los Municipios podrán celebrar convenios con el Estado para que éste se haga cargo de algunas de las funciones relacionadas con la administración de esas contribuciones.

"b) Las participaciones federales, que serán cubiertas por la Federación a los Municipios con arreglo a las bases, montos y plazos que anualmente se determinen por las Legislaturas de los Estados.

"c) Los ingresos derivados de la prestación de servicios públicos a su cargo.

(Reformado, D.O.F. 23 de diciembre de 1999)
"Las leyes federales no limitarán la facultad delos Estados para establecer las contribuciones a que se refieren los incisos a) y c), ni concederán exenciones en relación con las mismas. Las leyes estatales no establecerán exenciones o subsidios en favor de persona o institución alguna respecto de dichas contribuciones. Sólo estarán exentos los bienes de dominio público de la Federación, de los Estados o los Municipios, salvo que tales bienes sean utilizados por entidades paraestatales o por particulares, bajo cualquier título, para fines administrativos o propósitos distintos a los de su objeto público.

(Reformado, D.O.F. 23 de diciembre de 1999)
"Los Ayuntamientos, en el ámbito de su competencia, propondrán a las Legislaturas Estatales las cuotas y tarifas aplicables a impuestos, derechos, contribuciones de mejoras y las tablas de valores unitarios de suelo y construcciones que sirvan de base para el cobro de las contribuciones sobre la propiedad inmobiliaria.

(Adicionado, D.O.F. 23 de diciembre de 1999)
"Las Legislaturas de los Estados aprobarán las Leyes de Ingresos de los Municipios, revisarán y fiscalizarán sus cuentas públicas. Los presupuestos de egresos serán aprobados por los Ayuntamientos con base en sus ingresos disponibles.

(Adicionado, D.O.F. 23 de diciembre de 1999)
"Los recursos que integran la hacienda municipal serán ejercidos en forma directa por los Ayuntamientos, o bien, por quien ellos autoricen, conforme a la ley."

Del precepto en cita, destacan los siguientes elementos:

a) La libre administración de la hacienda municipal.

b) La facultad de las Legislaturas Locales para establecer las contribuciones y otros ingresos que han de percibir los Municipios (Leyes de Ingresos).

c) La facultad de los citados órganos para fiscalizar las cuentas públicas municipales.

d) La facultad de los Ayuntamientos para aprobar sus presupuestos de egresos.

Así pues, el citado precepto con claridad faculta a las Legislaturas de los Estados para fiscalizar las cuentas públicas de los Ayuntamientos y, por tanto, la reglamentación de dicha facultad debe establecerse en las Constituciones y leyes locales.

Ahora bien, respecto de la facultad que constitucionalmente poseen las Legislaturas Locales para fiscalizar las cuentas públicas municipales, debe destacarse lo siguiente:

El maestro Felipe Tena Ramírez, señala que:

"... la cuenta pública es un instrumento legal, destinado a comprobar una operación pretérita ... en un régimen efectivamente democrático, la revisión de la cuenta pública debe de significar el juicio crítico, imparcial y objetivo, de la obra realizada por el ejecutor del presupuesto, señalándole las deficiencias si las hubiere, principalmente el desbordamiento en gastos no autorizados ..."

Asimismo, es menester destacar que la reforma de mil novecientos noventa y nueve al artículo 115 de la Constitución Federal, agregó en la fracción IV, penúltimo párrafo, el término "fiscalizarán", refiriéndose a la actuación de la legislatura respecto de la cuenta pública municipal. En el dictamen de la Comisión de Gobernación y Puntos Constitucionales de la Cámara de Diputados, se explicó la razón de tal adición de la siguiente manera:

"A juicio de la comisión suscrita, la incorporación del término fiscalización atiende el sentido que anima la reforma constitucional en curso de su artículo 79, misma que daría lugar a la creación de la entidad de fiscalización superior."

Cabe hacer notar que este Tribunal Pleno de la Suprema Corte de Justicia de la Nación, ha considerado que la citada facultad junto con la de aprobación de Leyes de Ingresos y determinación del presupuesto de egresos municipales, tienen, entre otras finalidades, la de revelar el Estado de las finanzas públicas, así como asegurar la realización transparente de los planes de desarrollo y sus programas, lo cual se logra mediante la verificación de la asignación adecuada de los recursos disponibles, el control, vigilancia y fincamiento de responsabilidades correspondientes. La jurisprudencia a que se alude es la P./J. 72/2000, que derivó de un caso análogo y fue publicada en el Semanario Judicial de la Federación y su Gaceta, Novena Época, Tomo XII, agosto de 2000, página 964, que a la letra indica:

"CONTROVERSIA CONSTITUCIONAL. LOS ARTÍCULOS 45 Y 58, FRACCIÓN VI, DE LA CONSTITUCIÓN POLÍTICA DEL ESTADO DE TAMAULIPAS, QUE FACULTAN AL CONGRESO DE ESA ENTIDAD PARA REVISAR Y CALIFICAR LAS CUENTAS PÚBLICAS MUNICIPALES, NO TRANSGREDEN EL ARTÍCULO 115, FRACCIÓN IV, DE LA CONSTITUCIÓN FEDERAL. El artículo 45 de la Constitución Política del Estado de Tamaulipas que faculta al Congreso Local para examinar las cuentas de recaudación y aplicación de los fondos públicos municipales, con el objeto de determinar si las cantidades percibidas y gastadas están de acuerdo con las partidas respectivas de los presupuestos; si se actuó de conformidad con las leyes de la materia; si los gastos están justificados y si ha lugar a exigir alguna responsabilidad; y el diverso artículo 58, fracción VI, del propio ordenamiento que dispone que corresponde al citado Congreso, por conducto de la Contaduría Mayor de Hacienda, realizar la revisión y calificación de la cuenta pública municipal, no transgreden el artículo 115, fracción IV, de la Constitución Federal. Si bien es cierto que conforme a lo dispuesto por este precepto constitucional, las Legislaturas de los Estados tienen la facultad genérica de aprobar las Leyes de Ingresos de los Ayuntamientos y revisar sus cuentas públicas, ello es con la finalidad de revelar el Estado de las finanzas públicas municipales, así como asegurar la realización transparente de los planes municipales de desarrollo y sus programas por medio de la verificación de la asignación adecuada de los recursos disponibles, el control, vigilancia y fincamiento de responsabilidades, por lo que las atribuciones concedidas en los artículos 45 y 58, fracción VI, de la citada Constitución Local, no contrarían o exceden las conferidas por el precepto de la Constitución Federal de referencia."

En conclusión, la Constitución Federal establece la facultad en favor de las Legislaturas Estatales de aprobar las Leyes de Ingresos de los Municipios y de revisar las cuentas públicas municipales, razón por la cual el establecimiento de los procedimientos, las facultades de los órganos de inspección, así como la delimitación del objeto de revisión por parte de las Legislaturas de los Estados, no es más que el desarrollo de la fracción IV, penúltimo párrafo, del artículo 115 de la Constitución Federal y, consecuentemente, debe ser considerada como una norma derivada de aquélla y, por tanto, no pueden ser invasores de la esfera de competencia del Municipio, por lo que los respectivos argumentos de invalidez deben considerarse infundados.

En diverso concepto de invalidez, el Municipio actor señala que la Legislatura Estatal invade su esfera de competencias al obligar a los Ayuntamientos a contar con una Contraloría Municipal.

Los artículos 102 y 103 que prevén lo relativo a la Contraloría Municipal, señalan lo siguiente:

1/25/13 2:07 PM

"Artículo 102. En cada Ayuntamiento, habrá una contraloría que tendrá por objeto la vigilancia y evaluación del desempeño de las distintas áreas de la administración municipal, para promover la productividad, eficiencia y eficacia, a través de la implantación de sistemas de control interno, adecuado a las circunstancias, así como vigilar, en su ámbito, el cumplimiento de la Ley de Responsabilidades de Servidores Públicos."

"Artículo 103. La contraloría, tendrá las siguientes facultades y obligaciones:

"I. Vigilar el exacto cumplimiento de las disposiciones legales y reglamentarias que regulen las funciones del Ayuntamiento;

"II. Vigilar la observancia de los procedimientos establecidos para el control interno del Ayuntamiento;

"III. Vigilar, en su ámbito, el cumplimiento de las normas establecidas por los organismos de control del Estado, como son: la Secretaría de Contraloría del Gobierno del Estado de Hidalgo y la Contaduría Mayor de Hacienda del Congreso del mismo;

"IV. Coordinar las auditorías generales o especiales, que deban realizarse por acuerdo del presidente municipal, en todas las áreas de la administración pública municipal;

"V. Estudiar y proponer, conjuntamente con el secretario general municipal, a las diversas dependencias de la administración pública municipal, mejoras a los sistemas de administración y control, que se consideren convenientes;

"VI. Dar seguimiento a programas de Gobierno Municipal;

"VII. Investigar cualquier situación de orden administrativo, que le solicite el presidente municipal;

"VIII. Rendir informe de sus actividades al presidente municipal;

"IX. Recabar las declaraciones patrimoniales de los servidores públicos que deban presentarla, de conformidad con la ley de la materia y

"X. Las demás que le señalen las leyes, reglamentos y acuerdos del Ayuntamiento, e instrucciones del presidente municipal.

"El titular de la Contraloría, deberá contar con estudios de educación media superior o su equivalente en la rama contable administrativa, como mínimo, debidamente acreditados ante el Ayuntamiento."

Los citados preceptos establecen la obligación de que en cada Ayuntamiento exista una contraloría que se encargue de la vigilancia y evaluación de la administración pública municipal, así como del cumplimiento de la Ley de Responsabilidades de Servidores Públicos, además, prevé lo relativo a las facultades y obligaciones de dicho órgano y su último párrafo establece los requisitos para ocupar el cargo de contralor.

Ahora bien, el título cuarto de la Constitución Federal, aborda lo relativo a las responsabilidades de los servidores públicos, facultando en los artículos 108, 109 y 113 de la misma a que las Legislaturas Locales regulen dicha materia. Para mayor claridad, se transcriben de nueva cuenta los preceptos citados:

(Reformado primer párrafo, D.O.F. 22 de agosto de 1996)
"Artículo 108. Para los efectos de las responsabilidades a que alude este título se reputarán como servidores públicos a los representantes de elección popular, a los miembros del Poder Judicial Federal y del Poder Judicial del Distrito Federal, los funcionarios y empleados, y, en general, a toda persona que desempeñe un empleo, cargo o comisión de cualquier naturaleza en la administración pública federal o en el Distrito Federal, así como a los servidores del Instituto Federal Electoral, quienes serán responsables por los actos u omisiones en que incurran en el desempeño de sus respectivas funciones.

(Reformado, D.O.F. 28 de diciembre de 1982)
"El presidente de la República, durante el tiempo de su encargo, sólo podrá ser acusado por traición a la patria y delitos graves del orden común.

(Reformado, D.O.F. 31 de diciembre de 1994)
"Los gobernadores de los Estados, los diputados a las Legislaturas Locales, los Magistrados de los Tribunales Superiores de Justicia Locales y, en su caso, los miembros de los Consejos de las Judicaturas Locales, serán responsables por violaciones a esta Constitución y a las leyes federales, así como por el manejo indebido de fondos y recursos federales.

(Reformado, D.O.F. 28 de diciembre de 1982)
"Las Constituciones de los Estados de la República precisarán, en los mismos términos del primer párrafo de este artículo y

1/25/13 2:07 PM

para los efectos de sus responsabilidades, el carácter de servidores públicos de quienes desempeñen empleo, cargo o comisión en los Estados y en los Municipios."

"Artículo 109. El Congreso de la Unión y las Legislaturas de los Estados, dentro de los ámbitos de sus respectivas competencias, expedirán las leyes de responsabilidades de los servidores públicos y las demás normas conducentes a sancionar a quienes, teniendo este carácter, incurran en responsabilidad, de conformidad con las siguientes prevenciones:

"I. Se impondrán, mediante juicio político, las sanciones indicadas en el artículo 110 a los servidores públicos señalados en el mismo precepto, cuando en el ejercicio de sus funciones incurran en actos u omisiones que redunden en perjuicio de los intereses públicos fundamentales o de su buen despacho.

"No procede el juicio político por la mera expresión de ideas.

"II. La comisión de delitos por parte de cualquier servidor público será perseguida y sancionada en los términos de la legislación penal; y

"III. Se aplicarán sanciones administrativas a los servidores públicos por los actos u omisiones que afecten la legalidad, honradez, lealtad, imparcialidad y eficiencia que deban observar en el desempeño de sus empleos, cargos o comisiones.

"Los procedimientos para la aplicación de las sanciones mencionadas se desarrollarán autónomamente. No podrán imponerse dos veces por una sola conducta sanciones de la misma naturaleza.

"Las leyes determinarán los casos y las circunstancias en los que se deba sancionar penalmente por causa de enriquecimiento ilícito a los servidores públicos que durante el tiempo de su encargo, o por motivos del mismo, por sí o por interpósita persona, aumenten sustancialmente su patrimonio, adquieran bienes o se conduzcan como dueños sobre ellos, cuya procedencia lícita no pudiesen justificar. Las leyes penales sancionarán con el decomiso y con la privación de la propiedad de dichos bienes, además de las otras penas que correspondan.

"Cualquier ciudadano, bajo su más estricta responsabilidad y mediante la presentación de elementos de prueba, podrá formular denuncia ante la Cámara de Diputados del Congreso de la Unión respecto de las conductas a las que se refiere el presente artículo."

1/25/13 2:07 PM

"Artículo 113. Las leyes sobre responsabilidades administrativas de los servidores públicos, determinarán sus obligaciones a fin de salvaguardar la legalidad, honradez, lealtad, imparcialidad, y eficiencia en el desempeño de sus funciones, empleos, cargos y comisiones; las sanciones aplicables por los actos u omisiones en que incurran, así como los procedimientos y las autoridades para aplicarlas. Dichas sanciones, además de las que señalen las leyes, consistirán en suspensión, destitución e inhabilitación, así como en sanciones económicas, y deberán establecerse de acuerdo con los beneficios económicos obtenidos por el responsable y con los daños y perjuicios patrimoniales causados por sus actos u omisiones a que se refiere la fracción III del artículo 109, pero que no podrán exceder de tres tantos de los beneficios obtenidos o de los daños y perjuicios causados.

(Adicionado, D.O.F. 14 de junio de 2002)
"La responsabilidad del Estado por los daños que, con motivo de su actividad administrativa irregular, cause en los bienes o derechos de los particulares, será objetiva y directa. Los particulares tendrán derecho a una indemnización conforme a las bases, límites y procedimientos que establezcan las leyes."

De la lectura de las invocadas disposiciones de la Carta Magna, se advierte, en primer lugar, la intención del Constituyente de regular a ese alto rango la vigilancia de todos los servidores públicos a fin de garantizar la transparencia de su conducta en el ejercicio de sus funciones, dejando claramente definida la necesidad de responsabilizarlos mediante los lineamientos generales cuyo desarrollo y especificación encomienda a las Constituciones Locales y a las leyes, tanto federales como estatales.

También se advierte que la Constitución General de la República prevé, en los artículos transcritos, tres distintas formas de responsabilidad: una política, cuando en el ejercicio de sus funciones, los servidores públicos adopten conductas que perjudiquen los intereses públicos básicos o el buen despacho de los asuntos respectivos; otra de carácter penal, por los delitos perpetrados por dichos servidores; y una más de índole administrativa, por los actos u omisiones que afecten la legalidad, honradez, lealtad, imparcialidad y eficiencia que los servidores públicos deben cumplir en sus cargos; estas responsabilidades, como ya se indicó, son reglamentadas en las leyes secundarias, siendo importante destacar para efectos de este asunto que los funcionarios públicos al servicio del Municipio, sin excepción, están sujetos a dichas responsabilidades políticas, penales y administrativas y, asimismo, que el propio artículo 108 constitucional ordena a los Constituyentes y Legislaturas Locales la expedición de las normas relativas, tanto en relación con los servidores del Estado como en lo atinente a los de los Municipios.

En este tenor, si la Constitución Federal faculta a las Legislaturas Estatales para regular lo relativo a las responsabilidades públicas tanto de los servidores públicos del Estado como los de los Municipios, así como los procedimientos y autoridades encargadas de la aplicación de estas normas, es claro que se trata del desarrollo de los artículos 108, 109 y 113 de la Constitución Federal y, consecuentemente, la creación de la contraloría y el establecimiento de sus facultades deben ser consideradas como normas derivadas de aquélla, a excepción del último párrafo del artículo 103 y, por tanto, no pueden ser invasoras de la esfera de competencia del Municipio, por lo que los respectivos argumentos de invalidez deben considerarse infundados.

Resulta aplicable, por analogía, la jurisprudencia de este Tribunal Pleno, número P./J. 33/2000, publicada en el Semanario Judicial de la Federación y su Gaceta, Novena Época, Tomo XI, abril de 2000, página 819, que a la letra indica:

"MUNICIPIOS DEL ESTADO DE NUEVO LEÓN. LOS MIEMBROS DE LOS AYUNTAMIENTOS RESPONDEN CONSTITUCIONALMENTE DEL EJERCICIO INDEBIDO DE SU ENCARGO. La Ley de Responsabilidades de los Servidores Públicos para el Estado de Nuevo León, reformada en 1991, impone a los funcionarios municipales electos popularmente la obligación de formular sus declaraciones patrimoniales ante la Contraloría del Estado, pero es infundada la pretensión de que, con ello, se invada la esfera de competencia que el artículo 115 de la Constitución Federal reserva a los Municipios, ya que, por lo contrario, el establecimiento de dicho régimen responde al sistema constitucional de responsabilidades. Así, de los artículos 108, 109 y 113 de la Constitución Política de los Estados Unidos Mexicanos, se advierte la intención del Constituyente de regular a ese alto rango las funciones de vigilancia de todos los servidores públicos, a fin de garantizar la transparencia en el ejercicio de la función pública y definir la necesidad de fincar responsabilidades cuando esta función se ejerza en forma indebida; tales disposiciones de la Carta Magna, estatuyen la responsabilidad: política, cuando en el ejercicio de sus funciones, los servidores públicos adopten conductas que perjudiquen los intereses públicos básicos o el buen despacho de los asuntos de su legal competencia; la de carácter penal, por los delitos perpetrados por dichos servidores; y la de índole administrativa, por los actos u omisiones que afecten la legalidad, honradez, lealtad, imparcialidad y eficiencia inherentes al ejercicio del encargo. Cuando estas responsabilidades son del fuero local, de acuerdo con el artículo 108 constitucional, son materia de las Constituciones Locales y deben ser desarrolladas por las leyes secundarias que al efecto expidan las Legislaturas Locales, tanto en relación con los servidores de los Estados, como de los Municipios. En el Estado de Nuevo León, las normas correspondientes se encuentran plasmadas en los artículos 63, fracción V, 105, 107, 110, 112 y 115 de su Constitución Política, así como en los artículos 2o. y 24, fracciones VII y XIII, de la Ley Orgánica de la Administración Pública del Estado, 26, inciso a), fracción VII, 160 y 161 de la Ley Orgánica de la Administración Pública

Municipal del Estado, y 2o., 3o., 41, 45 y 46 de la Ley de Responsabilidades de los Servidores Públicos para el Estado de Nuevo León, de cuya relación concordante se infiere que el régimen de lasresponsabilidades en que pueden incurrir los servidores del Estado de Nuevo León y de sus Municipios, se apega al sistema constitucional."

Por lo que respecta a los requisitos para ser contralor contenidos en el último párrafo del artículo 103, este Alto Tribunal ya se pronunció en el considerando noveno de esta ejecutoria sobre la invalidez relativa de dicha porción normativa, por no precisar si se trata de una base general de administración pública municipal o una norma por ausencia de reglamento, en términos del artículo 115, fracción II, inciso e), constitucional, por lo que no es necesario hacer referencia a ella en este apartado.

Señala el Municipio actor que la Legislatura Estatal invade su esfera de competencias al prever de manera exhaustiva todo lo relacionado con los servicios públicos, aun cuando dichas cuestiones fueron reservadas por la Constitución Federal a los Municipios.

El artículo 104 de la Ley Orgánica Municipal del Estado de Hidalgo dispone:

"Artículo 104. Los Municipios, organizarán y reglamentarán la administración, funcionamiento, conservación o explotación de los servicios públicos. Se consideran, enunciativa y no limitativamente como tales, los siguientes:

"I. Agua potable, drenaje, alcantarillado, tratamiento y disposición de aguas residuales;

"II. Alumbrado público;

"III. Limpia, recolección, traslado, tratamiento y disposición final de residuos;

"IV. Mercado y centrales de abasto;

"V. Panteones;

"VI. Rastro;

"VII. Registro del Estado Familiar;

"VIII. Calles, parques y jardines y su equipamiento;

"IX. Seguridad pública, en los términos del artículo 21 de la Constitución Política de los Estados Unidos Mexicanos, policía preventiva municipal y tránsito;

"X. Protección de la flora, la fauna y el medio ambiente;

"XI. Los sistemas necesarios para la seguridad civil de la población;

"XII. Asistencia social;

"XIII. Sanidad municipal;

"XIV. Obras públicas;

"XV. Conservación de obras de interés social;

"XVI. Fomentar el turismo y la recreación;

"XVII. Proporcionar, reglamentar y vigilar toda clase de espectáculos y

"XVIII. Los demás que la Legislatura del Estado determine, según las condiciones territoriales y socioeconómicas de los Municipios; así como sus capacidades técnicas administrativas y financieras.

"Estos servicios, podrán prestarse con el concurso del Gobierno del Estado, cuando así lo soliciten las autoridades municipales, previa aprobación del Ayuntamiento y mediante convenio, en los términos de ley."

A fin de analizar el artículo anterior, es menester atender al contenido del artículo 115, fracción III, de la Constitución Federal, que dispone lo siguiente:

1/25/13 2:07 PM

"Artículo 115. Los Estados adoptarán, para su régimen interior, la forma de gobierno republicano, representativo, popular, teniendo como base de su división territorial y de su organización política y administrativa el Municipio Libre, conforme a las bases siguientes:

"...

"III. Los Municipios tendrán a su cargo las funciones y servicios públicos siguientes:

(Reformado, D.O.F. 23 de diciembre de 1999)
"a) Agua potable, drenaje, alcantarillado, tratamiento y disposición de sus aguas residuales;

"b) Alumbrado público;

(Reformado, D.O.F. 23 de diciembre de 1999)
"c) Limpia, recolección, traslado, tratamiento y disposición final de residuos;

"d) Mercados y centrales de abasto;

"e) Panteones;

"f) Rastro;

(Reformado, D.O.F. 23 de diciembre de 1999)
"g) Calles, parques y jardines y su equipamiento;

(Reformado, D.O.F. 23 de diciembre de 1999)
"h) Seguridad pública, en los términos del artículo 21 de esta Constitución, Policía Preventiva Municipal y Tránsito; e

"i) Los demás que las Legislaturas Locales determinen según las condiciones territoriales y socio-económicas de los Municipios, así como su capacidad administrativa y financiera.

(Reformado, D.O.F. 23 de diciembre de 1999)
"Sin perjuicio de su competencia constitucional, en el desempeño de las funciones o la prestación de los servicios a su cargo, los Municipios observarán lo dispuesto por las leyes federales y estatales.

(Adicionado, D.O.F. 23 de diciembre de 1999)
"Los Municipios, previo acuerdo entre sus Ayuntamientos, podrán coordinarse y asociarse para la más eficaz prestación de los servicios públicos o el mejor ejercicio de las funciones que les correspondan. En este caso y tratándose de la asociación de Municipios de dos o más Estados, deberán contar con la aprobación de las Legislaturas de los Estados respectivas. Así mismo cuando a juicio del Ayuntamiento respectivo sea necesario, podrán celebrar convenios con el Estado para que éste, de manera directa o a través del organismo correspondiente, se haga cargo en forma temporal de algunos de ellos, o bien se presten o ejerzan coordinadamente por el Estado y el propio Municipio;

(Adicionado, D.O.F. 14 de agosto de 2001)
"Las comunidades indígenas, dentro del ámbito municipal, podrán coordinarse y asociarse en los términos y para los efectos que prevenga la ley."

De lo anterior, tenemos que las fracciones I, II, III, IV, V, VI, VIII, IX y XVIII, último párrafo, que, respectivamente, regulan los servicios públicos de agua potable, drenaje, alcantarillado, tratamiento y disposición de aguas residuales; alumbrado público; limpia, recolección, traslado, tratamiento y disposición final de residuos; mercado y centrales de abasto; panteones; rastro; calles, parques y jardines y su equipamiento; seguridad pública, en los términos del artículo 21 de la Constitución Política de los Estados Unidos Mexicanos, y Policía Preventiva Municipal y Tránsito, así como la posibilidad de que los servicios públicos sean prestados con el concurso del Gobierno del Estado a solicitud de las autoridades municipales y previa autorización del Ayuntamiento correspondiente, deben ser consideradas normas derivadas de la fracción III del artículo 115 de la Constitución Federal, en tanto reproducen literalmente el texto previsto en los incisos a) al h) y el penúltimo párrafo de dicho precepto.

Por lo que se refiere a la fracción XIV del artículo 104 que se analiza, y que se refiere a obra pública, debe señalarse lo siguiente.

En principio, es menester precisar que las obras públicas son aquellas que son de uso y aprovechamiento general, así como

las construcciones destinadas a servicios y funciones públicas que estén a cargo de la Federación, los Estados, o bien, los Municipios. Ciertamente, la obra pública se refiere a inmuebles que al sufrir una transformación material por el ejercicio de una titularidad administrativa, se traducen en una afectación final del mismo que redundará en el uso y aprovechamiento de la generalidad.

Bajo este tenor, la facultad de los Municipios de realizar obra pública también debe considerarse como una norma derivada del artículo 115, fracción III, de la Constitución Federal, pues está implícita dentro de la naturaleza de los servicios y funciones públicas, toda vez que consiste en la creación y mantenimiento de la infraestructura indispensable para su prestación.

Por último, en cuanto a la fracción XVII que establece la facultad de los Municipios de proporcionar, reglamentar y vigilar toda clase de espectáculos, debe señalarse igualmente que deriva del artículo 115, fracción II, de la Constitución Federal, que dispone:

"Artículo 115. Los Estados adoptarán, para su régimen interior, la forma de gobierno republicano, representativo, popular, teniendo como base de su división territorial y de su organización política y administrativa el Municipio Libre, conforme a las bases siguientes:

"...

"II. Los Municipios estarán investidos de personalidad jurídica y manejarán su patrimonio conforme a la ley.

(Reformado, D.O.F. 23 de diciembre de 1999)
"Los Ayuntamientos tendrán facultades para aprobar, de acuerdo con las leyes en materia municipal que deberán expedir las Legislaturas de los Estados, los bandos de policía y gobierno, los reglamentos, circulares y disposiciones administrativas de observancia general dentro de sus respectivas jurisdicciones, que organicen la administración pública municipal, regulen las materias, procedimientos, funciones y servicios públicos de su competencia y aseguren la participación ciudadana y vecinal."

El artículo 115, fracción II, de la Constitución Federal, faculta expresamente a los Ayuntamientos para expedir los reglamentos de policía y gobierno.

Hasta antes de la reforma de mil novecientos noventa y nueve, se hablaba de la expresión "policía y buen gobierno". El término de policía se emplea en el sentido amplio que le da el derecho público, refiriéndose a las actividades administrativas, tanto de carácter preventivo como represivo, que tienden a asegurar o a restaurar el orden y la paz pública en una ciudad determinada. El buen gobierno se refiere a que esas mismas actividades deben tener como finalidad beneficiar los intereses de los ciudadanos en lo general o, incluso, cuando así proceda, a su particular provecho. Ahora se emplea el término de policía y gobierno.

Los reglamentos de policía y gobierno tienen como finalidad regular la conducta de los particulares, teniendo como objetivo la tranquilidad, la seguridad y el bienestar de la colectividad, es decir, se trata de facultades con las que cuentan los gobernantes para limitar los derechos y la posibilidad de actuación de los particulares en beneficio del interés general y con base en el orden público.

En este orden de ideas, debe considerarse que el contenido de la fracción XVII, se traduce en la particularización de la facultad concedida por la Constitución Federal en favor de los Municipios de expedir bandos de policía y gobierno al ámbito específico de los espectáculos, en la medida de que su realización no importe perjuicios a la comunidad, razón por la cual debe considerarse una norma derivada del artículo 115, fracción II, de la Constitución Federal.

Este Alto Tribunal ha sostenido la existencia de reglamentos autónomos de policía y buen gobierno desde principios del siglo pasado, tal como se desprende de la siguiente tesis de la Segunda Sala, publicada en el Semanario Judicial de la Federación, Quinta Época, Tomo LXXII, página 1639, que indica:

"MISCELÁNEAS. Existen reglamentos autónomos que no guardan relación con la ley y su existencia la reconoce el artículo 21 constitucional, al establecer la posibilidad de que la autoridad administrativa dicte reglamentos gubernativos o de policía y establezca sanciones en ellos. Ahora bien, un reglamento que establezca que un miscelánea no debe vender pan, sino que tiene que transformarse en expendio de ese artículo; que sólo puede establecerse a determinada distancia respecto de otro expendio y que tiene que observar tales o cuales regulaciones respecto del precio a que vende, etc., ya no constituye simples medidas de policía o buen gobierno, de acuerdo con el concepto tradicional que tienen estas expresiones, sino que legisla en materia de comercio, y entonces, la autoridad administrativa rebasa los límites de la facultad que le concede dicho artículo 21, porque invade las funciones propias del Poder Legislativo. Por tanto, el amparo que se pida contra la expedición, promulgación y publicación del Reglamento de la Industria del Pan, en el Distrito Federal, debe concederse.

"Amparo administrativo en revisión 885/42. Espinosa viuda de Gil Emilia. 20 de abril de 1942. Mayoría de tres votos. Ausente: Octavio Mendoza González. Disidente: Alfonso Francisco Ramírez. La publicación no menciona el nombre del ponente. Engrose: Gabino Fraga."

En conclusión, en todas las fracciones referidas, la legislatura no otorga al Municipio derechos u obligaciones distintos a los que la Constitución Federal directamente asigna a éste, razón por la cual su actuación no puede considerarse invasora de la esfera de competencias del Municipio y, por tanto, el concepto de invalidez resulta infundado respecto de dichas fracciones.

Ahora bien, por cuanto respecta a las fracciones X, XI, XIII y XVI del artículo 104 de la ley impugnada, que establecen la facultad de los Municipios para proteger la flora, la fauna y el medio ambiente; el establecimiento de los sistemas necesarios para la seguridad civil de la población; la sanidad municipal; y el turismo y la recreación; debe destacarse que las mismas también son normas derivadas de la Constitución Federal, específicamente del artículo 73, fracciones XXIX-G, XXIX-I y XVI, este último en relación con el artículo 4o., párrafo tercero y XXIX-K, que regulan como materias concurrentes las relativas a protección, preservación y restauración del ambiente y equilibrio ecológico; protección civil; salubridad general y turismo, respectivamente.

Respecto de las facultades concurrentes, el Pleno de este Alto Tribunal ha sostenido la jurisprudencia P./J. 142/2001, publicada en el Semanario Judicial de la Federación y su Gaceta, Novena Época, Tomo XV, enero de 2002, página 1042, que a la letra dice:

"FACULTADES CONCURRENTES EN EL SISTEMA JURÍDICO MEXICANO. SUS CARACTERÍSTICAS GENERALES. Si bien es cierto que el artículo 124 de la Constitución Política de los Estados Unidos Mexicanos establece que: 'Las facultades que no están expresamente concedidas por esta Constitución a los funcionarios federales, se entienden reservadas a los Estados.', también lo es que el Órgano Reformador de la Constitución determinó, en diversos preceptos, la posibilidad de que el Congreso de la Unión fijara un reparto de competencias, denominado 'facultades concurrentes', entre la Federación, las entidades federativas y los Municipios e, inclusive, el Distrito Federal, en ciertas materias, como son: la educativa (artículos 3o., fracción VIII y 73, fracción XXV), la de salubridad (artículos 4o., párrafo tercero y 73, fracción XVI), la de asentamientos humanos (artículos 27, párrafo tercero y 73, fracción XXIX-C), la de seguridad pública (artículo 73, fracción XXIII), la ambiental (artículo 73, fracción XXIX-G), la de protección civil (artículo 73, fracción XXIX-I) y la deportiva (artículo 73, fracción XXIX-J). Esto es, en el sistema jurídico mexicano las facultades concurrentes implican que las entidades federativas,

incluso el Distrito Federal, los Municipios y la Federación, puedan actuar respecto de una misma materia, pero será el Congreso de la Unión el que determine la forma y los términos de la participación de dichos entes a través de una ley general."

Ahora bien, toda vez que las facultades concurrentes implican que por disposición constitucional el Congreso de la Unión fije el reparto de competencias entre la Federación, Estados y Municipios, a través de una ley, es menester acudir a las respectivas leyes marco, a fin de determinar si la Legislatura Local es respetuosa de éstas y, en consecuencia, de lo dispuesto por los artículos 73 y 115 de la Constitución Federal.

Por cuanto se refiere a la materia de protección, preservación y restauración del ambiente y equilibrio ecológico, el legislador federal expidió como ley marco, la Ley General del Equilibrio Ecológico y la Protección al Ambiente, en cuyos artículos 7o. y 8o. dispuso lo siguiente:

"Artículo 7o. Corresponden a los Estados, de conformidad con lo dispuesto en esta ley y las leyes locales en la materia, las siguientes facultades:

"I. La formulación, conducción y evaluación de la política ambiental estatal;

"II. La aplicación de los instrumentos de política ambiental previstos en las leyes locales en la materia, así como la preservación y restauración del equilibrio ecológico y la protección al ambiente que se realice en bienes y zonas de jurisdicción estatal, en las materias que no estén expresamente atribuidas a la Federación;

"III. La prevención y control de la contaminación atmosférica generada por fuentes fijas que funcionen como establecimientos industriales, así como por fuentes móviles, que conforme a lo establecido en esta ley no sean de competencia federal;

"IV. La regulación de actividades que no sean consideradas altamente riesgosas para el ambiente, de conformidad con lo dispuesto en el artículo 149 de la presente ley;

"V. El establecimiento, regulación, administración y vigilancia de las áreas naturales protegidas previstas en la legislación local, con la participación de los Gobiernos Municipales;

"VI. La regulación de los sistemas de recolección, transporte, almacenamiento, manejo, tratamiento y disposición final de los residuos sólidos e industriales que no estén considerados como peligrosos de conformidad con lo dispuesto por el artículo 137 de la presente ley;

"VII. La prevención y el control de la contaminación generada por la emisión de ruido, vibraciones, energía térmica, lumínica, radiaciones electromagnéticas y olores perjudiciales al equilibrio ecológico o al ambiente, proveniente de fuentes fijas que funcionen como establecimientos industriales, así como, en su caso, de fuentes móviles que conforme a lo establecido en esta ley no sean de competencia federal;

"VIII. La regulación del aprovechamiento sustentable y la prevención y control de la contaminación de las aguas de jurisdicción estatal; así como de las aguas nacionales que tengan asignadas;

"IX. La formulación, expedición y ejecución de los programas de ordenamiento ecológico del territorio a que se refiere el artículo 20 BIS 2 de esta ley, con la participación de los Municipios respectivos;

"X. La prevención y el control de la contaminación generada por el aprovechamiento de las sustancias no reservadas a la Federación, que constituyan depósitos de naturaleza similar a los componentes de los terrenos, tales como rocas o productos de su descomposición que sólo puedan utilizarse para la fabricación de materiales para la construcción u ornamento de obras;

"XI. La atención de los asuntos que afecten el equilibrio ecológico o el ambiente de dos o más Municipios;

"XII. La participación en emergencias y contingencias ambientales, conforme a las políticas y programas de protección civil que al efecto se establezcan;

"XIII. La vigilancia del cumplimiento de las normas oficiales mexicanas expedidas por la Federación, en las materias y supuestos a que se refieren las fracciones III, VI y VII de este artículo;

"XIV. La conducción de la política estatal de información y difusión en materia ambiental;

"XV. La promoción de la participación de la sociedad en materia ambiental, de conformidad con lo dispuesto en esta ley;

"XVI. La evaluación del impacto ambiental de las obras o actividades que no se encuentren expresamente reservadas a la Federación, por la presente ley y, en su caso, la expedición de las autorizaciones correspondientes, de conformidad con lo dispuesto por el artículo 35 BIS 2 de la presente ley;

"XVII. El ejercicio de las funciones que en materia de preservación del equilibrio ecológico y protección al ambiente les transfiera la Federación, conforme a lo dispuesto en el artículo 11 de este ordenamiento;

"XVIII. La formulación, ejecución y evaluación del programa estatal de protección al ambiente;

"XIX. La emisión de recomendaciones a las autoridades competentes en materia ambiental, con el propósito de promover el cumplimiento de la legislación ambiental;

"XX. La atención coordinada con la Federación de asuntos que afecten el equilibrio ecológico de dos o más entidades federativas, cuando así lo consideren conveniente las entidades federativas respectivas, y

"XXI. La atención de los demás asuntos que en materia de preservación del equilibrio ecológico y protección al ambiente les conceda esta ley u otros ordenamientos en concordancia con ella y que no estén otorgados expresamente a la Federación."

(Reformado, D.O.F. 13 de diciembre de 1996)
"Artículo 8o. Corresponden a los Municipios, de conformidad con lo dispuesto en esta ley y las leyes locales en la materia, las siguientes facultades:

"I. Laformulación, conducción y evaluación de la política ambiental municipal;

"II. La aplicación de los instrumentos de política ambiental previstos en las leyes locales en la materia y la preservación y restauración del equilibrio ecológico y la protección al ambiente en bienes y zonas de jurisdicción municipal, en las materias que no estén expresamente atribuidas a la Federación o a los Estados;

"III. La aplicación de las disposiciones jurídicas en materia de prevención y control de la contaminación atmosférica

generada por fuentes fijas que funcionen como establecimientos mercantiles o de servicios, así como de emisiones de contaminantes a la atmósfera provenientes de fuentes móviles que no sean consideradas de jurisdicción federal, con la participación que de acuerdo con la legislación estatal corresponda al Gobierno del Estado;

"IV. La aplicación de las disposiciones jurídicas relativas a la prevención y control de los efectos sobre el ambiente ocasionados por la generación, transporte, almacenamiento, manejo, tratamiento y disposición final de los residuos sólidos e industriales que no estén considerados como peligrosos, de conformidad con lo dispuesto por el artículo 137 de la presente ley;

"V. La creación y administración de zonas de preservación ecológica de los centros de población, parques urbanos, jardines públicos y demás áreas análogas previstas por la legislación local;

"VI. La aplicación de las disposiciones jurídicas relativas a la prevención y control de la contaminación por ruido, vibraciones, energía térmica, radiaciones electromagnéticas y lumínica y olores perjudiciales para el equilibrio ecológico y el ambiente, proveniente de fuentes fijas que funcionen como establecimientos mercantiles o de servicios, así como la vigilancia del cumplimiento de las disposiciones que, en su caso, resulten aplicables a las fuentes móviles excepto las que conforme a esta ley sean consideradas de jurisdicción federal;

"VII. La aplicación de las disposiciones jurídicas en materia de prevención y control de la contaminación de las aguas que se descarguen en los sistemas de drenaje y alcantarillado de los centros de población, así como de las aguas nacionales que tengan asignadas, con la participación que conforme a la legislación local en la materia corresponda a los Gobiernos de los Estados;

"VIII. La formulación y expedición de los programas de ordenamiento ecológico local del territorio a que se refiere el artículo 20 BIS 4 de esta ley, en los términos en ella previstos, así como el control y la vigilancia del uso y cambio de uso del suelo, establecidos en dichos programas;

"IX. La preservación y restauración del equilibrio ecológico y la protección al ambiente en los centros de población, en relación con los efectos derivados de los servicios de alcantarillado, limpia, mercados, centrales de abasto, panteones, rastros, tránsito y transporte locales, siempre y cuando no se trate de facultades otorgadas a la Federación o a los Estados en la presente ley;

"X. La participación en la atención de los asuntos que afecten el equilibrio ecológico de dos o más Municipios y que generen efectos ambientales en su circunscripción territorial;

"XI. La participación en emergencias y contingencias ambientales conforme a las políticas y programas de protección civil que al efecto se establezcan;

"XII. La vigilancia del cumplimiento de las normas oficiales mexicanas expedidas por la Federación, en las materias y supuestos a que se refieren las fracciones III, IV, VI y VII de este artículo;

"XIII. La formulación y conducción de la política municipal de información y difusión en materia ambiental;

"XIV. La participación en la evaluación del impacto ambiental de obras o actividades de competencia estatal, cuando las mismas se realicen en el ámbito de su circunscripción territorial;

"XV. La formulación, ejecución y evaluación del programa municipal de protección al ambiente, y

"XVI. La atención de los demás asuntos que en materia de preservación del equilibrio ecológico y protección al ambiente les conceda esta ley u otros ordenamientos en concordancia con ella y que no estén otorgados expresamente a la Federación o a los Estados."

De lo anterior, tenemos que la ley otorga a las Legislaturas Locales un carácter regulatorio que se debe ejercer a través de ley y a los Municipios un carácter esencialmente ejecutivo, por cuanto se refiere al cumplimiento de la norma local, razón por la cual la atribución relativa a la protección de la flora, la fauna y el medio ambiente no resulta invasora de la esfera municipal.

En segundo lugar, por cuanto atañe a la protección civil, el legislador federal expidió la Ley General de la Protección Civil, en cuyo artículo 15 asentó:

"Artículo 15. Es responsabilidad de los gobernadores de los Estados, del jefe de Gobierno del Distrito Federal y de los presidentes municipales, la integración y funcionamiento de los sistemas de protección civil de las entidades federativas y

1/25/13 2:07 PM

de los Municipios respectivamente, conforme a lo que establezca la legislación local en la materia.

"Para tal efecto, promoverán la instalación de Consejos Estatales de Protección Civil, y el establecimiento de las Unidades Estatal y Municipales de Protección Civil, o en su caso, de la Unidad de Protección Civil del Distrito Federal y de las delegaciones que correspondan.

"Los Consejos Estatales y Municipales se integrarán y tendrán las facultades que les señalen las leyes y disposiciones locales."

De lo anterior se desprende que la ley marco faculta a los Municipios para establecer un sistema de protección civil municipal, conforme a lo dispuesto por la ley local, razón por la cual el hecho de que la Legislatura Local atribuya al Municipio la materia de protección civil, no resulta violatorio de su esfera competencial.

En cuanto al tema de sanidad municipal, es necesario destacar que el legislador federal expidió la Ley General de Salud, en cuyos artículos 393 y 403 dispuso:

"Artículo 393. Corresponde a la Secretaría de Salud y a los gobiernos de las entidades federativas, en el ámbito de sus respectivas competencias, la vigilancia del cumplimiento de esta ley y demás disposiciones que se dicten con base en ella.

"La participación de las autoridades municipales estará determinada por los convenios que celebren con los gobiernos de las respectivas entidades federativas y por lo que dispongan los ordenamientos locales."

"Artículo 403. Son competentes para ordenar o ejecutar medidas de seguridad, la Secretaría de Salud y los gobiernos de las entidades federativas, en el ámbito de sus respectivas competencias.

"La participación de los Municipios estará determinada por los convenios que celebren con los gobiernos de las respectivas entidades federativas y por lo que dispongan los ordenamientos locales."

De lo anterior tenemos que los Ayuntamientos ejercerán la competencia del Municipio, de acuerdo con lo que disponga la ley local, razón por la cual el hecho de que la Legislatura Local atribuya al Municipio la materia de sanidad, no resulta violatorio de su esfera competencial.

Por último, en cuanto se refiere a la fracción XVI, que establece la facultad del Municipio de fomentar el turismo y la recreación, debe señalarse que con fecha veintinueve de septiembre de dos mil tres, se publicó en el Diario Oficial de la Federación una adición al artículo 73 de la Constitución Federal, por medio de la cual se agregó la fracción XXIX-K, que establece la concurrencia de la Federación, Estados y Municipios en materia de turismo. El texto al que se hace referencia es el siguiente:

"Artículo 73. El Congreso tiene facultad:

"...

"XXIX-K. Para expedir leyes en materia de turismo, estableciendo las bases generales de coordinación de las facultades concurrentes entre la Federación, Estados, Municipios y el Distrito Federal, así como la participación de los sectores social y privado."

Toda vez que el artículo impugnado se expidió con anterioridad a la reforma constitucional y no se ha reformado la Ley Federal de Turismo a la cual le corresponde ahora la calidad de ley marco, este tribunal constitucional no cuenta con elementos suficientes para determinar si la ley es inconstitucional, razón por la cual debe prevalecer un principio de presunción de constitucionalidad de la norma.

Bajo este tenor, toda vez que las fracciones estudiadas son respetuosas del sistema de facultades concurrentes previsto por la Constitución Federal en las materias antes referidas, debe concluirse que no existe una invasión a la esfera de competencia del Municipio y, en consecuencia, resulta infundado el respectivo concepto de invalidez.

Por último, en relación con las fracciones VII, XII, XV y XVIII del artículo que se analiza, en las que se establece la facultad de los Municipios de llevar el Registro del Estado Familiar, asistencia social y la conservación de obras de interés social, es menester destacar que las mismas derivan de lo regulado en la fracción III, inciso i), del artículo 115 de la Constitución Federal, que establece la posibilidad de que las Legislaturas Locales determinen según las condiciones territoriales y socioeconómicas de los Municipios, así como su capacidad administrativa y financiera, otorguen al Municipio facultades diversas a las establecidas por la Constitución Federal.

Atento a lo anterior, las fracciones en estudio no pueden considerarse invasoras de la esfera competencial del Municipio.

Independientemente de lo anterior, este Alto Tribunal considera que al atribuir nuevas facultades para prestar funciones o servicios públicos al Municipio, la legislatura deberá prever que los ingresos respectivos se incorporen a la hacienda pública municipal, de acuerdo con lo dispuesto en el inciso c) de la fracción IV del artículo 115 de la Constitución Federal, que indica:

"Artículo 115. Los Estados adoptarán, para su régimen interior, la forma de gobierno republicano, representativo, popular, teniendo como base de su división territorial y de su organización política y administrativa el Municipio Libre, conforme a las bases siguientes:

"...

"IV. Los Municipios administrarán libremente su hacienda, la cual se formará de los rendimientos de los bienes que les pertenezcan, así como de las contribuciones y otros ingresos que las legislaturas establezcan a su favor, y en todo caso:

"...

"c) Los ingresos derivados de la prestación de servicios públicos a su cargo."

Al respecto, resultan ilustradoras las jurisprudencias de este Tribunal Pleno, con los números P./J. 6/2000 y P./J. 53/2002, publicadas en el Semanario Judicial de la Federación y su Gaceta, Novena Época, publicadas, respectivamente, en el Tomo XI, febrero de 2000, página 514, y el Tomo XVII, enero de 2003, página 1393, que indican:

"HACIENDA MUNICIPAL. CONCEPTOS SUJETOS AL RÉGIMEN DE LIBRE ADMINISTRACIÓN HACENDARIA (ARTÍCULO 115, FRACCIÓN IV, DE LA CONSTITUCIÓN FEDERAL). El artículo 115, fracción IV, de la Constitución Federal, establece que la hacienda municipal se formará de los rendimientos de los bienes que les pertenezcan, así como de las contribuciones y otros ingresos que las legislaturas establezcan a su favor, y en todo caso: a) Percibirán las contribuciones, incluyendo tasas adicionales, que establezcan los Estados sobre la propiedad inmobiliaria, de su fraccionamiento, división, consolidación, traslación y mejora así como las que tengan por base el cambio de valor de los inmuebles; b) Las participaciones federales, que serán cubiertas por la Federación a los Municipios con arreglo a las bases, montos y plazos que anualmente se determinen por las Legislaturas de los Estados; y, c) Los ingresos derivados de la prestación de servicios públicos a su cargo.

De una interpretación armónica, sistemática y teleológica de la disposición constitucional, se concluye que la misma no tiende a establecer la forma en que puede integrarse la totalidad de la hacienda municipal, sino a precisar en lo particular aquellos conceptos de la misma que quedan sujetos al régimen de libre administración hacendaria, toda vez que, por una parte, la hacienda municipal comprende un universo de elementos que no se incluyen en su totalidad en la disposición constitucional y que también forman parte de la hacienda municipal y, por otra, la disposición fundamental lo que instituye, más que la forma en que se integra la hacienda municipal, son los conceptos de ésta que quedan comprendidos en el aludido régimen de libre administración hacendaria."

"HACIENDA MUNICIPAL. LAS CONTRIBUCIONES QUE ESTABLEZCAN LAS LEGISLATURAS DE LOS ESTADOS SOBRE LA PROPIEDAD INMOBILIARIA SE ENCUENTRAN TUTELADAS BAJO EL RÉGIMEN DE LIBRE ADMINISTRACIÓN HACENDARIA, POR LO QUE ESOS RECURSOS PERTENECEN EXCLUSIVAMENTE A LOS MUNICIPIOS Y NO AL GOBIERNO DEL ESTADO (INCONSTITUCIONALIDAD DEL ARTÍCULO 1o., FRACCIÓN I, DE LA 'LEY DE INGRESOS Y PRESUPUESTO DE INGRESOS, PARA EL EJERCICIO FISCAL DE 2002' DEL ESTADO DE SONORA). El artículo 115, fracción IV, de la Constitución Federal, establece la forma en que se integra la hacienda municipal, señalando que se formará de los rendimientos de los bienes que les pertenezcan, así como de las contribuciones y otros ingresos que las legislaturas establezcan a su favor; por su parte, los incisos a), b) y c), de la fracción IV mencionada, se refieren a los conceptos que estarán sujetos al régimen de libre administración hacendaria. El indicado inciso a), dispone que, en todo caso, los Municipios percibirán las contribuciones, incluyendo tasas adicionales que establezcan los Estados sobre la propiedad inmobiliaria, su fraccionamiento, división, consolidación, traslación y mejora así como las que tengan por base el cambio de valor de los inmuebles, luego, esos recursos, forman parte de la hacienda municipal y están sujetos al régimen de libre administración hacendaria, lo que hace patente que dichos recursos pertenecen a los Municipios de forma exclusiva y no al Gobierno del Estado; por lo tanto, si en la Ley de Ingresos Estatal se establece que el Gobierno del Estado percibirá los ingresos provenientes del 'impuesto predial ejidal', ello vulnera lo dispuesto por el artículo 115, fracción IV, inciso a), de la Constitución Federal. Como consecuencia de lo anterior, la Legislatura Local, tampoco puede establecer disposición alguna que indique a los Municipios el destino de esos recursos, ya que se encuentran bajo el régimen de libre administración hacendaria y en libertad de ocuparlos de acuerdo con sus necesidades, siempre que se apliquen al gasto público."

Por otro lado, los artículos 111 y 112 de la ley orgánica que se analiza, disponen:

"Artículo 111. El Oficial del Registro del Estado Familiar, llevará a cabo los actos que le correspondan de conformidad con la ley de la materia y deberá observar las formalidades, el protocolo y los requisitos que se establecen para ellos.

"Los actos del Registro del Estado Familiar, podrán verificarse en horas ordinarias o extraordinarias, dentro o fuera de sus oficinas, pero no fuera de su jurisdicción."

"Artículo 112. El presidente municipal, vigilará que del Registro del Estado Familiar, se remita a la Dirección del Registro del Estado Familiar del Gobierno del Estado, dentro de los primeros quince días del mes de enero de cada año, el duplicado de los libros correspondientes."

Los preceptos antes señalados disponen la forma en que deberá actuar el oficial del Registro del Estado Familiar y que el presidente municipal será el encargado de vigilar que el Registro del Estado Familiar sea remitido al registro estatal en el término que establece la propia norma.

A este respecto, resulta conveniente señalar que el Registro del Estado Familiar es una función pública delegada por el Estado al Municipio con fundamento en el artículo 115, fracción III, inciso i), constitucional, que establece la facultad de que las entidades federativas deleguen a favor de los Municipios, algunos servicios y funciones públicos diversos a los concedidos por la Constitución Federal, lo anterior se traduce en que, como ya quedó señalado con anterioridad, la Legislatura Estatal en uso de la autonomía que le otorga el artículo 124 constitucional, puede imponer diversos requisitos y modalidades que deberá cumplir el Municipio de que se trate para la adecuada prestación del servicio concedido.

En esta tesitura, el hecho de que la Legislatura del Estado hubiera determinado que para el manejo del Registro del Estado Familiar se debe cumplir con los requisitos que le imponen los artículos 111 y 112 antes transcritos, no está invadiendo la esfera de competencias del Municipio actor, sino que está haciendo uso de la facultad antes señalada, la cual le fue otorgada constitucionalmente y, por la cual, no puede ser considerada inconstitucional.

Por otro lado, el artículo 114 impugnado dispone lo siguiente:

"Artículo 114. Los Ayuntamientos, por conducto de su presidente municipal o de las dependencias municipales de obras públicas o de planeación y urbanismo, ejercerán las funciones relativas a la planeación y urbanización de los centros y zonas destinados a los asentamientos humanos de su jurisdicción, con las atribuciones que les asignen las leyes federales y estatales en la materia y demás disposiciones legales aplicables."

El artículo anterior prevé el marco jurídico que regirá a las funciones de obra pública o de planeación y urbanismo que deberán ser ejercidas por el presidente municipal o por la dependencia correspondiente.

A su vez, el artículo 115 constitucional, fracción V, dispone:

"Artículo 115. Los Estados adoptarán, para su régimen interior, la forma de gobierno republicano, representativo, popular, teniendo como base de su división territorial y de su organización política y administrativa el Municipio Libre, conforme a las bases siguientes:

"...

"V. Los Municipios, en los términos de las leyes federales y estatales relativas, estarán facultados para:

"a) Formular, aprobar y administrar la zonificación y planes de desarrollo urbano municipal;

"b) Participar en la creación y administración de sus reservas territoriales;

"c) Participar en la formulación de planes de desarrollo regional, los cuales deberán estar en concordancia con los planes generales de la materia. Cuando la Federación o los Estados elaboren proyectos de desarrollo regional deberán asegurar la participación de los Municipios;

"d) Autorizar, controlar y vigilar la utilización del suelo, en el ámbito de su competencia, en sus jurisdicciones territoriales;

"e) Intervenir en la regularización de la tenencia de la tierra urbana;

"f) Otorgar licencias y permisos para construcciones;

"g) Participar en la creación y administración de zonas de reservas ecológicas y en la elaboración y aplicación de programas de ordenamiento en esta materia;

"h) Intervenir en la formulación y aplicación de programas de transporte público de pasajeros cuando aquellos afecten su

ámbito territorial; e

"i) Celebrar convenios para la administración y custodia de las zonas federales.

"En lo conducente y de conformidad a los fines señalados en el párrafo tercero del artículo 27 de esta Constitución, expedirán los reglamentos y disposiciones administrativas que fueren necesarios."

Asimismo, resulta indispensable acudir al contenido del artículo 73, fracción XXIX-C, que dispone:

"Artículo 73. El Congreso tiene facultad:

"...

"XXIX-C. Para expedir las leyes que establezcan la concurrencia del Gobierno Federal, de los Estados y de los Municipios en el ámbito de sus respectivas competencias, en materia de asentamientos humanos, con objeto de cumplir los fines previstos en el párrafo tercero del artículo 27 de esta Constitución."

Anteriormente, quedó precisado que respecto de las facultades concurrentes, el Pleno de este Alto Tribunal ha sostenido la jurisprudenciaP./J. 142/2001, publicada en el Semanario Judicial de la Federación y su Gaceta, Novena Época, Tomo XV, enero de 2002, página 1042, que a la letra dice:

"FACULTADES CONCURRENTES EN EL SISTEMA JURÍDICO MEXICANO. SUS CARACTERÍSTICAS GENERALES. Si bien es cierto que el artículo 124 de la Constitución Política de los Estados Unidos Mexicanos establece que: 'Las facultades que no están expresamente concedidas por esta Constitución a los funcionarios federales, se entienden reservadas a los Estados.', también lo es que el Órgano Reformador de la Constitución determinó, en diversos preceptos, la posibilidad de que el Congreso de la Unión fijara un reparto de competencias, denominado 'facultades concurrentes', entre la Federación, las entidades federativas y los Municipios e, inclusive, el Distrito Federal, en ciertas materias, como son: la educativa (artículos 3o., fracción VIII y 73, fracción XXV), la de salubridad (artículos 4o., párrafo tercero y 73, fracción XVI), la de asentamientos humanos (artículos 27, párrafo tercero y 73, fracción XXIX-C), la de seguridad pública (artículo 73, fracción XXIII), la ambiental (artículo 73, fracción XXIX-G), la de protección civil (artículo 73, fracción XXIX-I) y la deportiva (artículo 73, fracción XXIX-J). Esto es, en el sistema jurídico mexicano las facultades concurrentes implican que las entidades federativas,

incluso el Distrito Federal, los Municipios y la Federación, puedan actuar respecto de una misma materia, pero será el Congreso de la Unión el que determine la forma y los términos de la participación de dichos entes a través de una ley general."

Ahora bien, toda vez que las facultades concurrentes implican que por disposición constitucional el Congreso de la Unión fije el reparto de competencias entre la Federación, Estados y Municipios, a través de una ley, es menester acudir a la respectiva ley marco, a fin de determinar si la Legislatura Local es respetuosa de éstas y, en consecuencia, de lo dispuesto por los artículos 73 y 115 de la Constitución Federal.

Así pues, la Ley General de Asentamientos Humanos, en lo que interesa prevé:

"Artículo 6o. Las atribuciones que en materia de ordenamiento territorial de los asentamientos humanos y de desarrollo urbano de los centros de población tiene el Estado, serán ejercidas de manera concurrente por la Federación, las entidades federativas y los Municipios, en el ámbito de la competencia que les determina la Constitución Política de los Estados Unidos Mexicanos."

"Artículo 8o. Corresponden a las entidades federativas, en el ámbito de sus respectivas jurisdicciones, las siguientes atribuciones:

"I. Legislar en materia de ordenamiento territorial de los asentamientos humanos y de desarrollo urbano de los centros de población, atendiendo a las facultades concurrentes previstas en la Constitución Política de los Estados Unidos Mexicanos;

"II. Formular, aprobar y administrar el programa estatal de desarrollo urbano, así como evaluar y vigilar su cumplimiento;

"III. Promover la participación social conforme a lo dispuesto en esta ley;

"IV. Autorizar la fundación de centros de población;

"V. Participar en la planeación y regulación de las conurbaciones, en los términos de esta ley y de la legislación estatal de desarrollo urbano;

"VI. Coordinarse con la Federación, con otras entidades federativas y con sus Municipios, para el ordenamiento territorial de los asentamientos humanos y el desarrollo urbano de los centros de población;

"VII. Convenir con los sectores social y privado la realización de acciones e inversiones concertadas para el desarrollo regional y urbano;

"VIII. Participar, conforme a la legislación federal y local, en la Constitución y administración de reservas territoriales, la regularización de la tenencia de la tierra urbana, la dotación de infraestructura, equipamiento y servicios urbanos, así como en la protección del patrimonio cultural y del equilibrio ecológico de los centros de población;

"IX. Convenir con los respectivos Municipios la administración conjunta de servicios públicos municipales, en los términos de las leyes locales;

"X. Apoyar a las autoridades municipales que lo soliciten, en la administración de la planeación del desarrollo urbano;

"XI. Imponer medidas de seguridad y sanciones administrativas a los infractores de las disposiciones jurídicas y de los programas estatales de desarrollo urbano, conforme lo prevea la legislación local;

"XII. Coadyuvar con la Federación en el cumplimiento del programa nacional de desarrollo urbano, y

"XIII. Las demás que les señalen esta ley y otras disposiciones jurídicas federales y locales."

"Artículo 9o. Corresponden a los Municipios, en el ámbito de sus respectivas jurisdicciones, las siguientes atribuciones:

"I. Formular, aprobar y administrar los planes o programas municipales de desarrollo urbano, de centros de población y los demás que de éstos deriven, así como evaluar y vigilar su cumplimiento, de conformidad con la legislación local;

"II. Regular, controlar y vigilar las reservas, usos y destinos de áreas y predios en los centros de población;

"III. Administrar la zonificación prevista en los planes o programas municipales de desarrollo urbano, de centros de población y los demás que de éstos deriven;

"IV. Promover y realizar acciones e inversiones para la conservación, mejoramiento y crecimiento de los centros de población;

"V. Proponer la fundación de centros de población;

"VI. Participar en la planeación y regulación de las conurbaciones, en los términos de esta ley y de la legislación local;

"VII. Celebrar con la Federación, la entidad federativa respectiva, con otros Municipios o con los particulares, convenios y acuerdos de coordinación y concertación que apoyen los objetivos y prioridades previstos en los planes o programas municipales de desarrollo urbano, de centros de población y los demás que de éstos deriven;

"VIII. Prestar los servicios públicos municipales, atendiendo a lo previsto en la Constitución Política de los Estados Unidos Mexicanos y en la legislación local;

"IX. Coordinarse y asociarse con la respectiva entidad federativa y con otros Municipios o con los particulares, para la prestación de servicios públicos municipales, de acuerdo con lo previsto en la legislación local;

"X. Expedir las autorizaciones, licencias o permisos de uso de suelo, construcción, fraccionamientos, subdivisiones, fusiones, relotificaciones y condominios, de conformidad con las disposiciones jurídicas locales, planes o programas de desarrollo urbano y reservas, usos y destinos de áreas y predios;

"XI. Intervenir en la regularización de la tenencia de la tierra urbana, en los términos de la legislación aplicable y de conformidad con los planes o programas de desarrollo urbano y las reservas, usos y destinos de áreas y predios;

"XII. Participar en la creación y administración de reservas territoriales para el desarrollo urbano, la vivienda y la preservación ecológica, de conformidad con las disposiciones jurídicas aplicables;

"XIII. Imponer medidas de seguridad y sanciones administrativas a los infractores de las disposiciones jurídicas, planes o programas de desarrollo urbano y reservas, usos y destinos de áreas y predios en los términos de la legislación local;

"XIV. Informar y difundir permanentemente sobre la aplicación de los planes o programas de desarrollo urbano, y

"XV. Las demás que les señale esta ley y otras disposiciones jurídicas federales y locales.

"Los Municipios ejercerán sus atribuciones en materia de desarrollo urbano a través de los Cabildos de los Ayuntamientos o con el control y evaluación de éstos."

De lo anterior se desprende que la ley marco faculta a los Municipios para establecer un sistema de planeación y regulación de asentamientos humanos, conforme a lo dispuesto por la ley local, lo que es conforme con el artículo 115, fracción V, de la Constitución Federal, que dentro del marco de la concurrencia tiene la función de otorgarle al Municipio una esfera mínima de derechos constitucionalmente garantizada.

Ahora bien, el artículo 115, fracción I, de la Constitución Federal, dispone lo siguiente:

"Artículo 115. Los Estados adoptarán, para su régimen interior, la forma de gobierno republicano, representativo, popular, teniendo como base de su división territorial y de su organización política y administrativa el Municipio Libre, conforme a las bases siguientes:

(Reformado primer párrafo, D.O.F. 23 de diciembre de 1999)
"I. Cada Municipio será gobernado por un Ayuntamiento de elección popular directa, integrado por un presidente municipal y el número de regidores y síndicos que la ley determine. La competencia que esta Constitución otorga al Gobierno Municipal se ejercerá por el Ayuntamiento de manera exclusiva y no habrá autoridad intermedia alguna entre éste y el Gobierno del Estado."

La norma constitucional citada dispone que la competencia que la Constitución otorga al Gobierno Municipal debe ejercerse por el Ayuntamiento de manera exclusiva, razón por la cual, si determinadas facultades en materia de asentamientos humanos tiene reconocimiento constitucional como una competencia a favor de los Municipios, es inconcuso que las mismas deben ejercerse por el Ayuntamiento de forma exclusiva y, en todo caso, la decisión de si el conocimiento de tales atribuciones debe ejercerse por el Ayuntamiento en pleno, por una comisión, o bien, por una dirección municipal, es una cuestión que le corresponde de manera autónoma al Municipio, en términos de lo regulado por la fracción II del artículo 115 de la Constitución Federal.

Por tanto, el artículo 114 al contemplar que son los Ayuntamientos los que ejercerán las funciones relativas a la planeación y urbanización de los centros y zonas destinadas a los asentamientos humanos, es una norma derivada directamente del artículo 115, fracción V, de la Constitución Federal. No obstante lo anterior, la porción normativa que establece "... por conducto de su presidente municipal o de las dependencias municipales de obras públicas o de planeación y urbanismo ...", debe interpretarse conforme al artículo 115, fracción II, inciso e), y considerarse como una norma por ausencia de reglamento municipal, que será aplicable en tanto el Ayuntamiento no emita su propia normatividad en la que decida si depositará el ejercicio de esa función en un diverso órgano o miembro del Ayuntamiento.

Mientras tanto, el Ayuntamiento podrá actuar en pleno en tales funciones, pues su competencia deriva directamente de las fracciones I y V del artículo 115 de la Constitución Política de los Estados Unidos Mexicanos.

El Municipio actor manifiesta que la Legislatura Estatal carece de facultades para emitir normas como la contenida en el artículo 125 de la ley impugnada y que, por tanto, al hacerlo invade su esfera de competencias.

El artículo antes referido establece:

"Artículo 125. La administración municipal, en el sector central o paramunicipal, contará con una unidad encargada de prestar los servicios de asistencia social con la denominación de Junta Municipal para el Desarrollo Integral de la Familia. Para financiar su operación, el Ayuntamiento establecerá, conforme a sus recursos, la partida presupuestal correspondiente, no podrá ser ésta de un monto menor al 3% del total del presupuesto de egresos, independientemente de los recursos federales y estatales que se le transfieran.

"La Junta Municipal para el Desarrollo Integral de la Familia, estará regida por un patronato, presidido por la persona que designe el presidente municipal y una dirección, con las unidades administrativas o dependencias que establezca el acuerdo o reglamento correspondiente o sus propios requerimientos.

"El titular del Desarrollo Integral de la Familia municipal, deberá contar con el apoyo de una unidad técnica, cuyo responsable deberá ser un profesionista o técnico con conocimientos en las materias de derecho, administración o ramas afines a éstas, que acredite satisfactoriamente sus estudios ante el Ayuntamiento. El responsable de la unidad referida, refrendará con su firma los documentos oficiales suscritos por el titular del Desarrollo Integral de la Familia municipal."

En la primera parte del primer párrafo del artículo que se analiza, se establece que la administración municipal deberá contar con una unidad que prestará los servicios de asistencia social, así como la denominación que le corresponderá. Asimismo, en el segundo y tercer párrafos se prevé que la Junta Municipal para el Desarrollo Integral de la Familia, deberá estar regida por un patronato y los requisitos de la persona que deberá ocupar el cargo de la unidad técnica de apoyo a dicha dependencia.

Los fragmentos del precepto reclamado señalados deben ser considerados como normas derivadas de la fracción III, inciso i), del artículo 115 constitucional, toda vez que se trata de una función pública concedida por la Legislatura Estatal a favor del Municipio y, en este sentido, ha quedado precisado con antelación que en este tipo de servicios públicos en los que es la Legislatura Estatal la que los encarga directamente al Municipio, ésta puede, en uso de la autonomía que le otorga el artículo 124 constitucional, establecer requisitos, modalidades y hasta dependencias, siempre y cuando prevea el presupuesto para tal efecto.

En este sentido, es claro que lo dispuesto por el artículo impugnado en los fragmentos referidos no es violatorio de la esfera competencial del Municipio, pues al tratarse de una función pública otorgada por la propia Legislatura Estatal a favor de éste, es claro que le puede imponer una serie de modalidades y requisitos que tiendan a la adecuada prestación de la función de que se trata.

Por otro lado, en la segunda parte del primer párrafo del precepto transcrito, se establece la obligación del Ayuntamiento de establecer conforme a sus recursos la partida presupuestal correspondiente, que no podrá ser de un monto menor al 3% del total del presupuesto de egresos independientemente de los recursos federales y estatales que se les transfieran; sin embargo, este Tribunal Pleno se reservará el pronunciamiento de constitucionalidad respectivo, para ser abordado en el siguiente considerando.

La parte actora también impugnó el artículo 126, en relación con el cual sólo es necesario pronunciarse respecto de las fracciones I, II y III, mismas que se transcriben a continuación:

"Artículo 126. Los Ayuntamientos necesitan autorización del Congreso del Estado, para:

"I. Establecer los valores catastrales base, equiparables al valor comercial, para la aplicación del impuesto a la propiedad

inmobiliaria;

"II. Suscribir convenios de asociación con Municipios de otras entidades federativas;

"III. Contratar empréstitos cuando funja como avalista el Estado, conforme a la ley de la materia."

Cabe precisar que el artículo 126 señala que los Ayuntamientos necesitan autorización del Congreso del Estado para realizar determinados actos, y de su contenido se advierte que se trata de normas derivadas de los artículos 31, fracción IV, 115, fracciones III y IV, antepenúltimo párrafo, y artículo quinto transitorio del decreto de reformas a la Constitución Federal, publicado en el Diario Oficial de la Federación el veintitrés de diciembre de mil novecientos noventa y nueve, así como el artículo 117, fracción VIII, segundo párrafo, de la misma Carta Magna, los cuales se transcriben a continuación:

"Artículo 31. Son obligaciones de los mexicanos:

"...

(Reformada, D.O.F. 25 de octubre de 1993)
"IV. Contribuir para los gastos públicos, así de la Federación, como del Distrito Federal o del Estado y Municipio en que residan, de la manera proporcional y equitativa que dispongan las leyes."

"Artículo 115. Los Estados adoptarán, para su régimen interior, la forma de gobierno republicano, representativo, popular, teniendo como base de su división territorial y de su organización política y administrativa el Municipio Libre, conforme a las bases siguientes:

"...

"III. Los Municipios tendrán a su cargo las funciones y servicios públicos siguientes:

(Reformado, D.O.F. 23 de diciembre de 1999)
"a) Agua potable, drenaje, alcantarillado, tratamiento y disposición de sus aguas residuales;

"b) Alumbrado público;

(Reformado, D.O.F. 23 de diciembre de 1999)
"c) Limpia, recolección, traslado, tratamiento y disposición final de residuos;

"d) Mercados y centrales de abasto;

"e) Panteones;

"f) Rastro;

(Reformado, D.O.F. 23 de diciembre de 1999)
"g) Calles, parques y jardines y su equipamiento;

(Reformado, D.O.F. 23 de diciembre de 1999)
"h) Seguridad pública, en los términos del artículo 21 de esta Constitución, Policía Preventiva Municipal y Tránsito; e

"i) Los demás que las Legislaturas Locales determinen según las condiciones territoriales y socio-económicas de los Municipios, así como su capacidad administrativa y financiera.

(Reformado, D.O.F. 23 de diciembre de 1999)
"Sin perjuicio de su competencia constitucional, en el desempeño de las funciones o la prestación de los servicios a su cargo, los Municipios observarán lo dispuesto por las leyes federales y estatales.

(Adicionado, D.O.F. 23 de diciembre de 1999)
"Los Municipios, previo acuerdo entre sus Ayuntamientos, podrán coordinarse y asociarse para la más eficaz prestación de los servicios públicos o el mejor ejercicio de las funciones que les correspondan. En este caso y tratándose de la asociación de Municipios de dos o más Estados, deberán contar con la aprobación de las Legislaturas de los Estados respectivas. Así mismo cuando a juicio del Ayuntamiento respectivo sea necesario, podrán celebrar convenios con el Estado para que éste, de manera directa o a través del organismo correspondiente, se haga cargo en forma temporal de algunos de ellos, o bien se presten o ejerzan coordinadamente por el Estado y el propio Municipio;

(Adicionado, D.O.F. 14 de agosto de 2001)
"Las comunidades indígenas, dentro del ámbito municipal, podrán coordinarse y asociarse en los términos y para los efectos que prevenga la ley.

"IV. Los Municipios administrarán libremente su hacienda, la cual se formará de los rendimientos de los bienes que les pertenezcan, así como de las contribuciones y otros ingresos que las legislaturas establezcan a su favor, y en todo caso:

"a) Percibirán las contribuciones, incluyendo tasas adicionales, que establezcan los Estados sobre la propiedad inmobiliaria, de su fraccionamiento, división, consolidación, traslación y mejora así como las que tengan por base el cambio de valor de los inmuebles.

"Los Municipios podrán celebrar convenios con el Estado para que éste se haga cargo de algunas de las funciones relacionadas con la administración de esas contribuciones.

"b) Las participaciones federales, que serán cubiertas por la Federación a los Municipios con arreglo a las bases, montos y plazos que anualmente se determinen por las Legislaturas de los Estados.

"c) Los ingresos derivados de la prestación de servicios públicos a su cargo.

(Reformado, D.O.F. 23 de diciembre de 1999)
"Las leyes federales no limitarán la facultad de los Estados para establecer las contribuciones a que se refieren los incisos a) y c), ni concederán exenciones en relación con las mismas. Las leyes estatales no establecerán exenciones o subsidios en favor de persona o institución alguna respecto de dichas contribuciones. Sólo estarán exentos los bienes de dominio público de la Federación, de los Estados o los Municipios, salvo que tales bienes sean utilizados por entidades paraestatales o por particulares, bajo cualquier título, para fines administrativos o propósitos distintos a los de su objeto público.

(Reformado, D.O.F. 23 de diciembre de 1999)
"Los Ayuntamientos, en el ámbito de su competencia, propondrán a las LegislaturasEstatales las cuotas y tarifas aplicables a impuestos, derechos, contribuciones de mejoras y las tablas de valores unitarios de suelo y construcciones que sirvan de base para el cobro de las contribuciones sobre la propiedad inmobiliaria.

(Adicionado, D.O.F. 23 de diciembre de 1999)
"Las Legislaturas de los Estados aprobarán las Leyes de Ingresos de los Municipios, revisarán y fiscalizarán sus cuentas públicas. Los presupuestos de egresos serán aprobados por los Ayuntamientos con base en sus ingresos disponibles.

(Adicionado, D.O.F. 23 de diciembre de 1999)
"Los recursos que integran la hacienda municipal serán ejercidos en forma directa por los Ayuntamientos, o bien, por quien ellos autoricen, conforme a la ley."

"Artículo 117. Los Estados no pueden, en ningún caso:

"...

(Reformada, D.O.F. 21 de abril de 1981)
"VIII. Contraer directa o indirectamente obligaciones o empréstitos con gobiernos de otras naciones, con sociedades o particulares extranjeros, o cuando deban pagarse en moneda extranjera o fuera del territorio nacional.

"Los Estados y los Municipios no podrán contraer obligaciones o empréstitos sino cuando se destinen a inversiones públicas productivas, inclusive los que contraigan organismos descentralizados y empresas públicas, conforme a las bases que establezcan las legislaturas en una ley y por los conceptos y hasta por los montos que las mismas fijen anualmente en los respectivos presupuestos. Los Ejecutivos informarán de su ejercicio al rendir la cuenta pública."

"Transitorios

"Artículo quinto. Antes del inicio del ejercicio fiscal de 2002, las Legislaturas de los Estados, en coordinación con los Municipios respectivos, adoptarán las medidas conducentes a fin de que los valores unitarios de suelo que sirven de base para el cobro de las contribuciones sobre la propiedad inmobiliaria sean equiparables a los valores de mercado de dicha propiedad y procederán, en su caso, a realizar las adecuaciones correspondientes a las tasas aplicables para el cobro de las mencionadas contribuciones, a fin de garantizar su apego a los principios de proporcionalidad y equidad."

De la lectura de los preceptos constitucionales, se advierte que la facultad de fijar contribuciones es exclusiva de las

1/25/13 2:07 PM

Legislaturas de los Estados, en atención al principio de reserva de ley en materia tributaria; asimismo, cuando se trate de la celebración de convenios de asociación con Municipios de otras entidades federativas, es la propia Constitución la que establece la exigencia de contar con la aprobación de las Legislaturas de los Estados a los cuales pertenecen, y finalmente, las Legislaturas Estatales tendrán las facultades para fijar en una ley cuáles son las condiciones bajo las cuales pueden contraer obligaciones o empréstitos, por lo que en el caso específico se torna indispensable contar con su autorización si se trata de fungir como avales de los Municipios.

En relación con el Comité de Planeación del Desarrollo Municipal que prevé la ley impugnada, el Municipio actor controvierte los artículos 172 a 178, por estimar que invaden la esfera de atribuciones que le concede la Constitución Política de los Estados Unidos Mexicanos y que consagran una autoridad intermedia de las prohibidas por el artículo 115 de dicha Norma Fundamental.

Los citados preceptos, que integran el título décimo, capítulo único, de la ley impugnada, denominado "Del Comité de Planeación del Desarrollo Municipal", prevén lo siguiente:

"Artículo 172. En los Municipios que conforman al Estado de Hidalgo, funcionará un Comité de Planeación del Desarrollo Municipal (Copladem) que estará sujeto a lo dispuesto por la Constitución Política del Estado de Hidalgo, la Ley Estatal de Planeación y la normatividad municipal respectiva."

"Artículo 173. El Comité de Planeación del Desarrollo Municipal, funcionará como órgano desconcentrado dependiente del presidente municipal, el que contará con las siguientes atribuciones:

"I. Promover y coadyuvar con la autoridad municipal, con la colaboración de los sectores que actúan a nivel local, en la elaboración del plan de desarrollo municipal y los programas sectoriales, en congruencia con los que formulen los Gobiernos Federal y Estatal;

"II. Observar las disposiciones de coordinación entre los Gobiernos Federal, Estatal y Municipal y la cooperación de los sectores social y privado, para la ejecución en el ámbito local de los planes del sector público;

"III. Coordinar el control y evaluación de los planes, programas y proyectos de desarrollo del Municipio, los que estarán adecuados a los que formulen los Gobiernos Federal y Estatal, y coadyuvar al oportuno cumplimiento de sus objetivos y

metas;

"IV. Formular y presentar a la consideración de los Gobiernos Federal, Estatal y Municipal, propuestas de programas de inversión, gasto y financiamiento públicos para el Municipio. Dichas propuestas deberán presentarse respecto de obras o servicios claramente jerarquizados, fundamentalmente a partir de las prioridades señaladas en el Programa de Gobierno Municipal;

"V. Proponer a los Gobiernos Federal y Estatal, programas y acciones a concertar, con el propósito de coadyuvar al desarrollo del Municipio. Así mismo, evaluar la ejecución de dichos programas y acciones, e informar periódicamente a dichos órdenes de gobierno;

"VI. Promover la celebración de acuerdos de cooperación entre el sector público y los sectores social y privado, que actúen localmente, a efecto de que sus acciones concurran al logro de los objetivos del desarrollo del Municipio;

"VII. Promover la coordinación con otros comités municipales para coadyuvar en la formulación, instrumentación, control y evaluación de planes y programas para el desarrollo de zonas intermunicipales, y solicitar al Ayuntamiento pida la intervención del Gobierno del Estado, para tales efectos;

"VIII. Fungir como órganos de consulta de los Gobiernos Federal, Estatal y Municipal, sobre la situación socioeconómica del Municipio; y

"IX. Proponer a los Gobiernos Federal, Estatal y Municipal, medidas de carácter jurídico, administrativo y financiero necesarias para el cumplimiento de las funciones y la consecución de los objetivos del propio comité."

"Artículo 174. El Comité de Planeación del Desarrollo Municipal, se integrará por una asamblea general y un consejo directivo."

"Artículo 175. La asamblea general, estará integrada por los representantes de los sectores público, social y privado. Este órgano tiene carácter consultivo para la elaboración de los programas y proyectos de obras, acciones o servicios a cargo del Municipio."

"Artículo 176. Podrán ser miembros de la asamblea general:

"I. Los funcionarios de mayor jerarquía del Ayuntamiento;

"II. Los titulares de los órganos de las dependencias del Gobierno del Estado y los representantes de las entidades de la administración pública federal, cuyos programas, acciones o servicios, incidan en el desarrollo del Municipio;

"III. Los diputados federales y locales que incidan en el Municipio;

"IV. Los representantes de las organizaciones y asociaciones de empresarios, profesionistas, obreros y campesinos, así como de las sociedades cooperativas que actúen en el Municipio y que estén debidamente registradas ante las autoridades correspondientes;

"V. Las autoridades educativas y los directivos de las instituciones más representativas del sector de educación;

"VI. Los delegados municipales y subdelegados;

"VII. Los presidentes de los Consejos de Colaboración Municipal;

"VIII. Los presidentes de los comisariados ejidales y de bienes comunales y

"IX. Otros representantes de los sectores social y privado, que el coordinador del comité estime pertinente."

"Artículo 177. El consejo directivo, estará integrado por:

"I. Un coordinador que será el presidente municipal;

"II. Una Secretaría Técnica, que estará a cargo del titular de Planeación o el de Obras Públicas y

"III. Las comisiones de trabajo que se consideren necesarias.

1/25/13 2:07 PM

"Los cargos de la asamblea general y del consejo directivo del Comité de Planeación del Desarrollo Municipal, tendrán carácter honorífico."

"Artículo 178. El Comité de Planeación, contará con el apoyo técnico que en cada caso se convenga con las entidades de la administración pública federal y estatal, para su adecuada operación."

Los numerales transcritos señalan la organización y funcionamiento de los Comités de Planeación del Desarrollo Municipal.

A fin de poder determinar la constitucionalidad de las normas anteriormente transcritas, resulta indispensable explicar la naturaleza de los referidos Comités de Planeación de Desarrollo Municipal.

A partir del año de mil novecientos ochenta y dos, la Constitución, en sus artículos 25 y 26, faculta al Ejecutivo Federal para establecer un Plan Nacional de Desarrollo por medio del cual el Estado organizará un sistema de planeación democrática del desarrollo nacional que imprima solidez, dinamismo, permanencia y equidad al crecimiento de la economía, para asegurar la independencia y democratización política, social y cultural de la nación. Los objetivos de la planeación, determinados por los fines del proyecto nacional contenido en la Constitución, incluían la participación de los diversos sectores sociales con el fin de recoger sus demandas e incorporarlas tanto en el plan de desarrollo, como en los programas específicos que en él se contuvieran.

Los artículos antes citados, textualmente señalan lo siguiente:

"Artículo 25. Corresponde al Estado la rectoría del desarrollo nacional para garantizar que éste sea integral y sustentable, que fortalezca la soberanía de la nación y su régimen democrático y que, mediante el fomento del crecimiento económico y el empleo y una más justa distribución del ingreso y la riqueza, permita el pleno ejercicio de la libertad y la dignidad de los individuos, grupos y clases sociales, cuya seguridad protege esta Constitución.

(Reformado, D.O.F. 3 de febrero de 1983)
"El Estado planeará, conducirá, coordinará y orientará la actividad económica nacional, y llevará a cabo la regulación y fomento de las actividades que demande el interés general en el marco de libertades que otorga esta Constitución.

(Reformado, D.O.F. 3 de febrero de 1983)

1/25/13 2:07 PM

"Al desarrollo económico nacional concurrirán, con responsabilidad social, el sector público, el sector social y el sector privado, sin menoscabo de otras formas de actividad económica que contribuyan al desarrollo de la nación.

(Reformado, D.O.F. 3 de febrero de 1983)
"El sector público tendrá a su cargo, de manera exclusiva, las áreas estratégicas que se señalan en el artículo 28, párrafo cuarto de la Constitución, manteniendo siempre el Gobierno Federal la propiedad y el control sobre los organismos que en su caso se establezcan.

(Reformado, D.O.F. 3 de febrero de 1983)
"Así mismo podrá participar por sí o con los sectores social y privado, de acuerdo con la ley, para impulsar y organizar las áreas prioritarias del desarrollo.

(Reformado, D.O.F. 3 de febrero de 1983)
"Bajo criterios de equidad social y productividad se apoyará e impulsará a las empresas de los sectores social y privado de la economía, sujetándolos a las modalidades que dicte el interés público y al uso, en beneficio general, de los recursos productivos, cuidando su conservación y el medio ambiente.

(Reformado, D.O.F. 3 de febrero de 1983)
"La ley establecerá los mecanismos que faciliten la organización y la expansión de la actividad económica del sector social: de los ejidos, organizaciones de trabajadores, cooperativas, comunidades, empresas que pertenezcan mayoritaria o exclusivamente a los trabajadores y, en general, de todas las formas de organización social para la producción, distribución y consumo de bienes y servicios socialmente necesarios.

(Reformado, D.O.F. 3 de febrero de 1983)
"La ley alentará y protegerá la actividad económica que realicen los particulares y proveerá las condiciones para que el desenvolvimiento del sector privado contribuya al desarrollo económico nacional, en los términos que establece esta Constitución."

(Reformado, D.O.F. 3 de febrero de 1983)
"Artículo 26. El Estado organizará un sistema de planeación democrática del desarrollo nacional que imprima solidez, dinamismo, permanencia y equidad al crecimiento de la economía para la independencia y la democratización política,

social y cultural de la nación.

"Los fines del proyecto nacional contenidos en esta Constitución determinarán los objetivos de la planeación. La planeación será democrática. Mediante la participación de los diversos sectores sociales recogerá las aspiraciones y demandas de la sociedad para incorporarlas al plan y los programas de desarrollo. Habrá un plan nacional de desarrollo al que se sujetarán obligatoriamente los programas de la administración pública federal.

"La ley facultará al Ejecutivo para que establezca los procedimientos de participación y consulta popular en el sistema nacional de planeación democrática, y los criterios para la formulación, instrumentación, control y evaluación del plan y los programas de desarrollo. Así mismo determinará los órganos responsables del proceso de planeación y las bases para que el Ejecutivo Federal coordine mediante convenios con los gobiernos de las entidades federativas e induzca y concierte con los particulares las acciones a realizar para su elaboración y ejecución.

"En el sistema de planeación democrática, el Congreso de la Unión tendrá la intervención que señale la ley."

Como puede advertirse de la transcripción anterior, la Constitución faculta al Ejecutivo Federal para que determine los criterios para la formulación, ejecución, control y evaluación de dicho plan y de los programas de desarrollo que abarque y para que señale los órganos responsables del proceso de planeación, así como las bases para que éste coordine su acción con los gobiernos de las entidades federativas mediante convenios, concierte con los particulares las acciones que éstos deben realizar durante la elaboración y ejecución de dicho proceso, e induzca su actividad de acuerdo con los objetivos del desarrollo.

A fin de ejecutar el plan nacional de desarrollo a que obliga la Constitución General de la República, se consideró indispensable fortalecer la capacidad de los tres niveles de gobierno para conducir la planeación del desarrollo en sus distintos ámbitos, a través de la coordinación de las actividades entre la Federación, los Estados y los Municipios.

En ese sentido, cabe señalar que la participación de las autoridades, instituciones y grupos implicados en el plan nacional de desarrollo ocurre de manera distinta, a saber: es obligatoria respecto a las dependencias de la administración pública federal y a las entidades paraestatales; se da en forma coordinada entre las autoridades federales y estatales; y se produce de manera inducida o concertada en lo relativo a los sectores social y privado.

Es por esta razón que las acciones en las que intervienen los tres niveles de gobierno (Federación, Estados y Municipios) son reguladas por los convenios de desarrollo social celebrados entre el Ejecutivo Federal y los Gobiernos Estatales, siendo éstos el instrumento que rige las acciones que en materia de planeación realizan las dependencias de la administración pública federal con los gobiernos de las entidades federativas.

Dichos convenios celebrados entre el Gobierno Federal y cada uno de los Estados, tienen una vigencia anual y comprenden los programas ubicados dentro del contexto del Plan Nacional de Desarrollo, además, constituyen un acuerdo pactado entre las autoridades federales y las estatales, para regir el desarrollo de la inversión coordinada en proyectos específicos ejecutados con cargo al presupuesto federal, y en ellos se contienen las reglas para que ambos niveles de gobierno participen en la planeación nacional y coadyuven a la consecución de los objetivos de ésta.

Ahora, si bien es cierto que la razón de ser de los Comités de Planeación de Desarrollo Municipal se encuentra, precisamente, en los convenios de desarrollo social que celebran las entidades federativas con las autoridades federales, y que su objetivo esencial es coordinar las acciones y programas de ambas instancias de gobierno, a fin de que sean congruentes con las que derivan del Plan Nacional de Desarrollo, también lo es que dicha coordinación no debe llevarse al extremo de imponer a los Municipios a través de las leyes orgánicas municipales que emiten las Legislaturas de los Estados, la obligación de contar con una autoridad intermedia, tal como lo aduce el Municipio actor.

A efecto de precisar lo anterior, es necesario determinar previamente lo que debe entenderse por autoridad intermedia para los efectos del artículo 115, fracción I, constitucional, ya que dicha figura no se encuentra expresamente definida en el texto constitucional y, por ello, su determinación resulta compleja.

El citado dispositivo fundamental, en su fracción I, establece:

"Artículo 115. Los Estados adoptarán, para su régimen interior, la forma de gobierno republicano, representativo, popular, teniendo como base de su división territorial y de su organización política y administrativa el Municipio Libre, conforme a las bases siguientes:

"I. Cada Municipio será gobernado por un Ayuntamiento de elección popular directa, integrado por un presidente municipal y el número de regidores y síndicos que la ley determine. La competencia que esta Constitución otorga al Gobierno Municipal se ejercerá por el Ayuntamiento de manera exclusiva y no habrá autoridad intermedia alguna entre éste y el

Gobierno del Estado."

De la disposición constitucional transcrita, se advierte que cada Municipio será gobernado por un Ayuntamiento de elección popular directa, que las competencias que la Constitución Federal otorga al Gobierno Municipal se ejercerá por el propio Ayuntamiento de manera exclusiva y que no habrá ninguna autoridad intermedia entre éste y el Gobierno del Estado.

Sobre este tema, el Tribunal Pleno de la Suprema Corte de Justicia de la Nación ha emitido las tesis jurisprudenciales números P./J. 26/97, P./J. 48/97 y P./J. 50/97, visibles a fojas 133, 395 y 343, respectivamente, del Tomo V, correspondiente a los meses de abril y junio de 1997, Novena Época del Semanario Judicial de la Federación y su Gaceta, que dicen:

"CONTROVERSIA CONSTITUCIONAL. EL INSTITUTO ESTATAL DE DESARROLLO MUNICIPAL DEL ESTADO DE OAXACA NO ES AUTORIDAD INTERMEDIA ENTRE EL GOBIERNO ESTATAL Y EL MUNICIPIO. La prohibición de autoridad intermedia entre Estado y Municipio, a que se refiere la fracción I del artículo 115 de la Constitución Política de los Estados Unidos Mexicanos, pretende evitar la subsistencia de sistemas viciados que elevaban a ciertas personas 'de confianza', como los llamados 'jefes políticos', a la calidad de intercesores que, válidos de su influencia con los gobernadores, predominaban sobre los mandatarios electos popularmente en el Municipio. En el caso del Instituto Estatal de Desarrollo Municipal del Estado de Oaxaca, de los artículos 1o., 3o. y 4o. del Decreto Número 75 que lo creó, así como de las demás disposiciones que lo integran, que prevén su organización, objetivos y atribuciones, se advierte que tal organismo no tiene una posición de supremacía frente a los Municipios, sino que, por lo contrario, sólo es de mera coordinación y apoyo, pues no se le otorgan facultades unilaterales de decisión o ejecutividad que le permitan actuar por encima de los Municipios; es, básicamente, un órgano descentralizado por servicio, que únicamente actúa a instancia de éstos y aunque forma parte de la administración pública paraestatal dentro de la esfera de competencia del Poder Ejecutivo Estatal, en términos de lo dispuesto por los artículos 2o., 4o. y 42 de la Ley Orgánica delPoder Ejecutivo, no constituye autoridad intermedia entre el Estado y el Municipio, por ser parte del propio Gobierno del Estado y por no contar con facultades unilaterales de decisión que afecten o impidan la comunicación directa entre ambos niveles de gobierno."

"CONTROVERSIA CONSTITUCIONAL. AUTORIDADES INTERMEDIAS ENTRE EL ESTADO Y LOS MUNICIPIOS, NO LAS CONSTITUYEN LAS JUNTAS DE MEJORAMIENTO MORAL, CÍVICO Y MATERIAL EN EL ESTADO DE NUEVO LEÓN. De conformidad con lo dispuesto en los artículos 1o. y 2o. de la Ley que crea las Juntas de Mejoramiento Moral, Cívico y Material en el Estado de Nuevo León, los fines que persiguen éstas quedan limitados a encauzar y fomentar la cooperación de los particulares en lo moral, cívico y material, y las atribuciones que se les otorgan se reducen a pugnar por inculcar un

claro concepto de los derechos y obligaciones de los ciudadanos para que actúen con justicia social, con nobleza y con dignidad, así como para fomentar el culto a los héroes que han forjado la patria. Atento a ello, las Juntas de Mejoramiento no constituyen autoridad intermedia y, por ende, los preceptos citados no transgreden lo dispuesto en la fracción I del artículo 115 de la Constitución Política de los Estados Unidos Mexicanos, ya que no se les permite actuar en forma independiente, unilateral o con decisión que implique obstrucción u obstaculización en la comunicación directa entre gobierno y Municipio, o que signifique sometimiento, sustitución o arrogación de facultades de alguno de estos niveles de gobierno, ni invaden su esfera de competencia."

"CONTROVERSIA CONSTITUCIONAL. AUTORIDAD INTERMEDIA PROHIBIDA EN EL ARTÍCULO 115, FRACCIÓN I, DE LA CONSTITUCIÓN POLÍTICA DE LOS ESTADOS UNIDOS MEXICANOS. CARACTERÍSTICAS GENERALES QUE LA IDENTIFICAN. El Constituyente de 1917 impuso la prohibición de 'autoridad intermedia' a que se refiere la fracción I del artículo 115 de la Constitución Política de los Estados Unidos Mexicanos, en atención a situaciones de hecho, según informa la historia, en virtud de las cuales se creaban, por debajo de los Gobiernos Estatales, personas conocidas como 'jefes políticos' que detentaban un poder real y de hecho reconocido por el gobernador, en virtud del cual se cumplían las órdenes de éste y servía para que la autoridad tuviera medios inmediatos de acción y centralización. Tomando en consideración lo anterior, debe establecerse que una autoridad, ente, órgano o persona de que se trate, no debe tener facultades o atribuciones que le permitan actuar de manera independiente, unilateral y con decisión, que no sea resultado o provenga de manera directa de los acuerdos o decisiones tomados por los diferentes niveles de gobierno dentro del ámbito de sus respectivas facultades, a efecto de impedir que la conducta de aquéllos se traduzca en actos o hechos que interrumpan u obstaculicen la comunicación directa entre el Gobierno Estatal y el Municipio, o que impliquen sustitución o arrogación de sus facultades."

Asimismo, este Alto Tribunal al resolver la controversia constitucional 4/98, promovida por el Ayuntamiento del Municipio de Puebla, Puebla y otros del mismo Estado, resuelta el diez de febrero de dos mil, sostuvo que en términos del párrafo primero de la fracción I del artículo 115 constitucional y de los antecedentes históricos del mismo, podría decirse que la prohibición se refiere a que fuera del Gobierno Estatal y el Municipal, no debe existir una autoridad distinta o ajena a alguno de éstos, o bien, que dicha autoridad, cualquiera que sea su origen o denominación, lesiona la autonomía municipal, suplantando o mediatizando sus facultades constitucionales o invadiendo la esfera competencial del Ayuntamiento, o finalmente, que la prohibición únicamente pretenda impedir que dentro de la relación que debe existir entre el Gobierno del Estado y el Municipio, dadas sus respectivas facultades en ciertas materias, no debe haber un órgano intermedio que impida la comunicación directa entre ambos niveles de gobierno, de tal forma que no haya un ente de enlace o que pueda

interrumpir esa comunicación.

Precisado lo anterior, se pasa al análisis del caso concreto a la luz de las tres posturas que dan una distinta interpretación de lo que debe entenderse por autoridad intermedia, en relación con los Comités de Planeación para el Desarrollo Municipal que prevé la ley impugnada.

1. Primera postura. La prohibición de autoridad intermedia se refiere a que fuera del Gobierno Estatal y el Municipal, no debe existir una autoridad distinta o ajena a alguno de éstos.

Estos comités se califican como de desarrollo municipal y se trata de un órgano desconcentrado del Municipio que, por ende, se ubica dentro de la administración municipal.

En efecto, el primer párrafo del artículo 173 de la ley impugnada señala que dicho comité "funcionará como órgano desconcentrado dependiente del presidente municipal".

En consecuencia, debe considerarse que dichos comités constituyen una autoridad que no está al margen del gobierno de los Municipios, por lo que, conforme a la postura que se analiza, no deben considerarse como autoridades intermedias.

2. Segunda postura. Interpretación en el sentido de que autoridad intermedia es aquella que cualquiera que sea su origen o denominación, lesiona la autonomía municipal, suplantando o mediatizando sus facultades constitucionales o invadiendo la esfera competencial del Ayuntamiento.

A este respecto, resulta conveniente acudir al texto del artículo 173 de la ley que se revisa, que dispone:

"Artículo 173. El Comité de Planeación del Desarrollo Municipal, funcionará como órgano desconcentrado dependiente del presidente municipal, el que contará con las siguientes atribuciones:

"I. Promover y coadyuvar con la autoridad municipal, con la colaboración de los sectores que actúan a nivel local, en la elaboración del plan de desarrollo municipal y los programas sectoriales, en congruencia con los que formulen los Gobiernos Federal y Estatal;

"II. Observar las disposiciones de coordinación entre los Gobiernos Federal, Estatal y Municipal y la cooperación de los sectores social y privado, para la ejecución en el ámbito local de los planes del sector público;

"III. Coordinar el control y evaluación de los planes, programas y proyectos de desarrollo del Municipio, los que estarán adecuados a los que formulen los Gobiernos Federal y Estatal, y coadyuvar al oportuno cumplimiento de sus objetivos y metas;

"IV. Formular y presentar a la consideración de los Gobiernos Federal, Estatal y Municipal, propuestas de programas de inversión, gasto y financiamiento públicos para el Municipio. Dichas propuestas deberán presentarse respecto de obras o servicios claramente jerarquizados, fundamentalmente a partir de las prioridades señaladas en el programa de Gobierno Municipal;

"V. Proponer a los Gobiernos Federal y Estatal, programas y acciones a concertar, con el propósito de coadyuvar al desarrollo del Municipio. Así mismo, evaluar la ejecución de dichos programas y acciones, e informar periódicamente a dichos órdenes de gobierno;

"VI. Promover la celebración de acuerdos de cooperación entre el sector público y los sectores social y privado, que actúen localmente, a efecto de que sus acciones concurran al logro de los objetivos del desarrollo del Municipio;

"VII. Promover la coordinación con otros comités municipales para coadyuvar en la formulación, instrumentación, control y evaluación de planes y programas para el desarrollo de zonas intermunicipales, y solicitar al Ayuntamiento pida la intervención del Gobierno del Estado, para tales efectos;

"VIII. Fungir como órganos de consulta de los Gobiernos Federal, Estatal y Municipal, sobre la situación socioeconómica del Municipio y

"IX. Proponer a los Gobiernos Federal, Estatal y Municipal, medidas de carácter jurídico, administrativo y financiero necesarias para el cumplimiento de las funciones y la consecución de los objetivos del propio comité."

De conformidad con la disposición transcrita, los aludidos comités constituyen órganos encargados, entre otras cosas, de coadyuvar en la elaboración del plan de desarrollo municipal, de controlar y evaluar los planes, programas y proyectos de

1/25/13 2:07 PM

desarrollo del Municipio, y de proponer a los Gobiernos Federal y Estatal programas y acciones, así como evaluar la ejecución de los mismos e informar de ello periódicamente tanto al Gobierno Federal como al Estatal, destacando ante todo que se trata de órganos consultivos más que de ejecución.

De las facultades antes precisadas, se desprende que los Comités de Planeación para el Desarrollo Municipal constituyen instancias encargadas de planear las obras y acciones del Municipio, controlar y evaluar la ejecución de dichos planes y, asimismo, de informar a las autoridades federales y estatales de todo ello.

Acorde con lo anterior, es evidente que los referidos comités no constituyen autoridades intermedias conforme a la segunda postura que se analiza, ya que no se les dota de facultades tales que invaden la esfera de competencia de los Ayuntamientos, pues no realizan el plan de desarrollo municipal, ni intervienen en su administración y ejecución directa, sino que pretenden coadyuvar en la planeación armónica de los recursos federales, estatales y municipales.

En efecto, no debe soslayarse que considerando la naturaleza propia de estos organismos de planeación, su función debe limitarse a apoyar y coordinar a las autoridades estatales y municipales, así como a los particulares, para que los sectores públicos, sociales y privados concurran en el desarrollo social de los Municipios, pero no para la toma de decisiones en estas materias cuya competencia es exclusiva en el ámbito municipal de los Ayuntamientos, quienes si bien están obligados a dar intervención a cada sector, ello no implica darles poder de decisión y ejecución, pues de otra manera el Ayuntamiento se constituiría en mero ejecutor de las decisiones de dichos comités.

3. Tercera postura. Son autoridades intermedias las que impiden la comunicación directa entre el Municipio y el Gobierno del Estado.

Como quedó precisado con anterioridad, en términos del artículo 173 de la ley en estudio, los Comités de Planeación para el Desarrollo Municipal tienen, entre otras atribuciones, la de proponer a los Gobiernos Federal y Estatal, programas y acciones a desarrollar, así como informar de ello periódicamente tanto al Gobierno Federal como al Estatal, además de fungir como órgano de consulta de los Gobiernos Federal y Estatal sobre la situación económica del Municipio.

Sin embargo, tales comités no impiden la comunicación directa entre el Municipio y el Gobierno del Estado, ya que la ley no los contempla como vínculo entre aquéllos, sino como una instancia de participación social que coadyuva en la planeación municipal y que resulta una instancia importante de opinión en la planeación regional que realizan la Federación, los

1/25/13 2:07 PM

Estados y los Municipios.

En conclusión, los comités a que se refiere la norma impugnada no impiden la comunicación directa entre el Municipio y el Gobierno del Estado, ya que la ley no los contempla como vínculo entre aquéllos, sino como una instancia de participación social que coadyuva en la planeación municipal y que resulta una instancia importante de opinión en la planeación regional que realizan la Federación, los Estados y los Municipios.

Consecuentemente, procede reconocer la constitucionalidad de los artículos 172 a 178 de la Ley Orgánica Municipal para el Estado de Hidalgo, que prevén dichos Comités de Planeación para el Desarrollo Municipal.

Finalmente, es preciso pronunciarse en relación con la constitucionalidad de los artículos primero, segundo, tercero, cuarto, séptimo y octavo transitorios, que fueron impugnados expresamente por el Municipio actor. Dichos preceptos son del tenor siguiente:

"Primero. La presente ley, entrará en vigor al día siguiente de su publicación en el Periódico Oficial del Gobierno del Estado."

"Segundo. Se abroga la Nueva Ley Orgánica Municipal del Estado de Hidalgo, publicada en el Periódico Oficial del Gobierno del Estado, el 21 de noviembre de 1983 y sus reformas subsecuentes."

"Tercero. Se derogan todas las disposiciones legales secundarias que se opongan a esta ley."

"Cuarto. Los Municipios, deberán de expedir sus reglamentos respectivos, dentro del término de ciento ochenta días, a partir de la entrada en vigor de este ordenamiento."

"Séptimo. La obligación de elaborar el plan de desarrollo municipal a que se refiere la fracción X del artículo 52 de esta ley, entrará en vigor el 16 de enero del año 2003."

"Octavo. Las autoridades administrativas referidas en los artículos 93, 98, 113 y 115 de esta ley, tendrán la obligación de comparecer ante el Ayuntamiento, cuando éste los requiera, a partir del 1o. de enero del año 2002."

Los artículos transcritos señalan la fecha de entrada en vigor de la norma; la abrogación de la Ley Orgánica Municipal del

Estado de Hidalgo anterior a la vigente; la derogación de todas las disposiciones legales secundarias que se opongan a la Ley Orgánica Municipal vigente; el plazo para que los Municipios expidan sus reglamentos respectivos; la obligación de elaborar el plan de desarrollo municipal; y la obligación de diversas autoridades administrativas de comparecer ante el Ayuntamiento cuando éste lo requiera.

De esta forma, el hecho de que en los artículos transitorios primero, segundo, tercero, cuarto, séptimo y octavo de la Ley Orgánica Municipal del Estado de Hidalgo se señalen diversas cuestiones relacionadas con la fecha de entrada en vigor de la ley, así como con las consecuencias de su vigencia, como son la abrogación o derogación de las disposiciones legales correspondientes, sólo constituyen cuestiones consustanciales a la norma que por sí solas no resultan inconstitucionales, pues sólo se refieren al ámbito espacial y temporal de validez de la misma, por tanto, los artículos transitorios impugnados en comento no son violatorios de los principios que se desprenden de la fracción II del artículo 115 constitucional.

El Municipio actor también aduce que si la ley cuya invalidez se demanda resulta inconstitucional por su falta de adecuación al decreto y espíritu de la reforma del artículo 115 de la Constitución Federal, publicada el veintitrés de diciembre de mil novecientos noventa y nueve, es obvio que se conculca permanentemente el artículo segundo transitorio de dicha reforma, en tanto la adecuación no satisfaga los extremos del precepto constitucional mencionado.

El artículo segundo transitorio en comento, señala:

"Artículo segundo. Los Estados deberán adecuar sus Constituciones y leyes conforme a lo dispuesto en este decreto a más tardar en un año a partir de su entrada en vigor. En su caso, el Congreso de la Unión deberá realizar las adecuaciones a las leyes federales a más tardar el 30 de abril del año 2001.

"En tanto se realizan las adecuaciones a que se refiere el párrafo anterior, se continuarán aplicando las disposiciones vigentes."

De lo transcrito se advierte, en la parte que interesa, la obligación de los Estados de adecuar sus Constituciones y leyes conforme a lo dispuesto en las reformas al artículo 115 de la Constitución Federal, publicadas en el Diario Oficial de la Federación de veintitrés de diciembre de mil novecientos noventa y nueve, a más tardar en un año a partir de su entrada en vigor.

Por su parte, el artículo 1o. de la Ley Orgánica Municipal del Estado de Hidalgo señala:

"Artículo 1o. Las disposiciones de la presente ley son de orden público y de interés social, tienen por objeto regular la organización y funcionamiento de los Municipios, de acuerdo con lo dispuesto en los artículos 115 de la Constitución Política de los Estados Unidos Mexicanos y 115 al 148 de la Constitución Política del Estado de Hidalgo."

Lo transcrito revela que la Ley Orgánica Municipal del Estado de Hidalgo se emitió con el objeto de regular la organización y funcionamiento de los Municipios, de acuerdo con lo ordenado, entre otros, por el artículo 115 de la Constitución Federal.

En las circunstancias anotadas, si la Legislatura del Estado de Hidalgo emitió la Ley Orgánica Municipal que contiene los preceptos impugnados, con el objeto de adecuarla a lo dispuesto por el artículo 115 de la Constitución Federal, con la emisión de esta norma buscó cumplir desde un punto de vista estrictamente formal con lo ordenado por el artículo segundo transitorio en comento, sin que sea óbice a lo anterior que en el caso, de acuerdo con el estudio realizado, se haya declarado la inconstitucionalidad de diversos preceptos de la referida Ley Orgánica Municipal, por considerar que desde un punto de vista material no se satisfacen las exigencias o alcances de la mencionada reforma, ello no trae consigo la invalidez, per se, del artículo transitorio mencionado, pues esto no depende de que se declare o no tal inconstitucionalidad, sino de que la Legislatura Estatal emita la norma respectiva, con el propósito de adecuarla materialmente a lo dispuesto por el artículo 115 de la Constitución Federal, obligación con la que desde un plano formal cumplió el Congreso Local.

En virtud de lo anotado, no existe la violación al artículo segundo transitorio del decreto de reformas al artículo 115 de la Constitución Federal, publicado el veintitrés de diciembre de mil novecientos noventa y nueve.

DÉCIMO PRIMERO. A continuación se procede al análisis de los preceptos impugnados expresamente por el Ayuntamiento actor y que no han sido materia de pronunciamiento, porque el actor los considera directamente violatorios de algún precepto de la Constitución Federal, distinto al artículo 115, incisos a) y e), de la misma Carta Magna.

• Artículo 49, fracción III.

Dentro del capítulo de conceptos de invalidez, señala el Municipio actor que el artículo 49, relativo a las facultades y obligaciones de los Ayuntamientos, en su fracción III, atenta contra lo dispuesto en el artículo 115 de la Constitución Política de los Estados Unidos Mexicanos porque invade la esfera de competencias que dicho precepto constitucional otorga a los

Municipios.

El referido artículo 49, en la fracción impugnada antes precisada, expresa lo siguiente:

"Artículo 49. Son facultades y obligaciones de los Ayuntamientos:

"...

"III. Para el mejor cumplimiento de las funciones del Gobierno Municipal, los reglamentos que organizan y regulan la administración pública municipal y los servicios, podrán contemplar el establecimiento de unidades de apoyo técnico en cada una de sus principales dependencias y tendrán como referente las que dispone la presente ley; así mismo, los Municipios establecerán en su presupuesto de egresos, una partida destinada a desarrollar programas para la formación, capacitación y actualización de los miembros del Ayuntamiento y de la administración municipal, a fin de mejorar sus capacidades de gobierno, técnicas y administrativas;

"Las administraciones municipales, conforme a sus recursos económicos, establecerán un sistema de profesionalización para la gestión de recursos humanos, a través del desarrollo de metodologías de selección, capacitación y evaluación de funcionarios, a efecto de propiciar una mayor eficiencia y eficacia en el cumplimiento de sus funciones."

A continuación, se procederá a analizar una a una las fracciones impugnadas, con el objeto de determinar su naturaleza y su apego o desapego al texto constitucional.

La fracción III del artículo 49 de la Ley Orgánica Municipal del Estado de Hidalgo, consagra tres normas distintas, a saber: a) la facultad de los Ayuntamientos para establecer unidades de apoyo técnico en cada una de sus principales dependencias; b) la obligación de establecer en sus presupuestos de egresos una partida especial destinada a desarrollar programas para la formación, capacitación y actualización de los miembros del Ayuntamiento y de la administración municipal; y, c) la obligación de establecer un sistema de profesionalización para la gestión de recursos humanos, a efecto de propiciar una mayor eficiencia y eficacia en el cumplimiento de las funciones de los funcionarios municipales. A continuación se hará referencia a cada una de ellas por separado.

La facultad de los Ayuntamientos para establecer unidades de apoyo técnico en sus dependencias, es una norma derivada

de la fracción II, segundo párrafo, del artículo 115 de la Constitución Federal, toda vez que de acuerdo con dicho precepto constitucional, el Ayuntamiento tiene facultades para reglamentar todo lo relativo a su organización, funcionamiento interno y administración pública y, por ende, para crear cualquier unidad de apoyo o, en general, órgano administrativo que requiera para el correcto ejercicio de sus funciones. Todo lo anterior, en el entendido de que independientemente de que la legislatura le conceda o no esta facultad, el Ayuntamiento cuenta con ella, pues se la otorga la propia Norma Fundamental.

Caso distinto lo constituye la obligación del Ayuntamiento de establecer en sus presupuestos de egresos una partida especial destinada a desarrollar programas para la formación, capacitación y actualización de los miembros del Ayuntamiento y de la administración municipal, puesto que dicha norma resulta inconstitucional en atención a que viola el principio de libertad presupuestaria del Municipio consagrada en la fracción IV del artículo 115 de la Norma Fundamental, en virtud de que la Legislatura Local no puede imponer a los Municipios la obligación de contemplar partidas presupuestales específicas, salvo cuando ello provenga de aportaciones federales o estatales y en los términos de la regulación correspondiente.

Lo anterior encuentra sustento en las tesis P./J. 8/2000, P./J. 7/2000, P./J. 6/2000, visibles en las páginas 509, 630 y 514 del Tomo XI, febrero de 2000, Pleno, Novena Época del Semanario Judicial de la Federación y su Gaceta, que a la letra dicen:

"APORTACIONES FEDERALES. CARACTERÍSTICAS. Estos fondos son de naturaleza federal y corresponden a una partida que la Federación destina para coadyuvar al fortalecimiento de los Estados y Municipios en apoyo de actividades específicas; se prevén en el presupuesto de egresos de la Federación, regulándose en el capítulo V de la Ley de Coordinación Fiscal, resultando independientes de los que se destinan a los Estados y Municipios por concepto de participaciones federales."

"PARTICIPACIONES FEDERALES. CARACTERÍSTICAS. La característica particular de estos ingresos consiste en que tanto la Federación como los Estados pueden gravar la misma fuente, pero convienen para que no se dé una doble tributación; los montos que se obtengan se entregan a la Federación quien a su vez los redistribuye, participando así de ellos. Por lo mismo, como el Congreso de la Unión y las Legislaturas de los Estados pueden establecer contribuciones sobre las mismas fuentes por tener facultades concurrentes, el legislador estableció la celebración de convenios de coordinación fiscal por virtud de los cuales los Estados, a cambio de abstenerse de imponer gravámenes sobre las materias que también prevén las leyes federales, podrán beneficiarse de un porcentaje del Fondo General de Participaciones formado con la recaudación de gravámenes locales o municipales que las entidades convengan con la Federación, en términos de lo dispuesto por la Ley de Coordinación Fiscal y del presupuesto de egresos de la Federación. A las Legislaturas Locales corresponde establecer su

distribución entre los Municipios mediante disposiciones de carácter general."

"HACIENDA MUNICIPAL. CONCEPTOS SUJETOS AL RÉGIMEN DE LIBRE ADMINISTRACIÓN HACENDARIA (ARTÍCULO 115, FRACCIÓN IV, DE LA CONSTITUCIÓN FEDERAL). El artículo 115, fracción IV, de la Constitución Federal, establece que la hacienda municipal se formará de los rendimientos de los bienes que les pertenezcan, así como de las contribuciones y otros ingresos que las legislaturas establezcan a su favor, y en todo caso: a) Percibirán las contribuciones, incluyendo tasas adicionales, que establezcan los Estados sobre la propiedad inmobiliaria, de su fraccionamiento, división, consolidación, traslación y mejora así como las que tengan por base el cambio de valor de los inmuebles; b) Las participaciones federales, que serán cubiertas por la Federación a los Municipios con arreglo a las bases, montos y plazos que anualmente se determinen por las Legislaturas de los Estados; y, c) Los ingresos derivados de la prestación de servicios públicos a su cargo. De una interpretación armónica, sistemática y teleológica de la disposición constitucional, se concluye que la misma no tiende a establecer la forma en que puede integrarse la totalidad de la hacienda municipal, sino a precisar en lo particular aquellos conceptos de la misma que quedan sujetos al régimen de libre administración hacendaria, toda vez que, por una parte, la hacienda municipal comprende un universo de elementos que no se incluyen en su totalidad en la disposición constitucional y que también forman parte de la hacienda municipal y, por otra, la disposición fundamental lo que instituye, más que la forma en que se integra la hacienda municipal, son los conceptos de ésta que quedan comprendidos en el aludido régimen de libre administración hacendaria."

Por último, en relación con la última parte de la fracción III en estudio, en la cual se dispone que el Ayuntamiento tendrá la obligación de establecer un sistema de profesionalización para la gestión de recursos humanos a efecto de propiciar una mayor eficiencia y eficacia en el cumplimiento de las funciones de los funcionarios municipales, debe decirse que se trata de una norma derivada de la fracción VIII, segundo párrafo, del artículo 115, relacionado con el artículo 123, apartado B, ambos de la Constitución Federal. Lo anterior, en virtud de que de la lectura de los preceptos referidos se desprende que los Municipios deben regular las relaciones de trabajo entre ellos y sus trabajadores en términos de las leyes que expidan las Legislaturas de los Estados, con base en lo dispuesto en el artículo 123 mencionado.

En orden a todo lo anterior, lo procedente es declarar sólo la inconstitucionalidad parcial de la fracción III del artículo 49 de la Ley Orgánica Municipal del Estado de Hidalgo, en la porción normativa que dice "así mismo, los Municipios establecerán en su presupuesto de egresos, una partida destinada a desarrollar programas para la formación, capacitación y actualización de los miembros del Ayuntamiento y de la administración municipal, a fin de mejorar sus capacidades de gobierno, técnicas y administrativas", por lo que dicha fracción, para efectos de la presente controversia constitucional y en lo que atañe a su

aplicación futura al Municipio actor, deberán leerse de la siguiente manera:

"III. Para el mejor cumplimiento de las funciones del Gobierno Municipal, los reglamentos que organizan y regulan la administración pública municipal y los servicios, podrán contemplar el establecimiento de unidades de apoyo técnico en cada una de sus principales dependencias y tendrán como referente las que dispone la presente ley ...

"Las administraciones municipales, conforme a sus recursos económicos, establecerán un sistema de profesionalización para la gestión de recursos humanos, a través del desarrollo de metodologías de selección, capacitación y evaluación de funcionarios, a efecto de propiciar una mayor eficiencia y eficacia en el cumplimiento de sus funciones."

• Artículo 49, fracción XVII.

El Municipio actor también impugna la fracción XVII del artículo 49 de la ley en comento, la cual dispone lo siguiente:

"Artículo 49. Son facultades y obligaciones de los Ayuntamientos:

"...

"XVII. Enajenar, a título gratuito u oneroso, los inmuebles de dominio privado del Municipio, únicamente cuando así lo aprueben las dos terceras partes de los integrantes del Ayuntamiento y previa localización y medición de la propiedad y avalúo por peritos; la venta se efectuará en los términos de la autorización y conforme a lo previsto por la ley de la materia. La donación de inmuebles sólo procederá, cuando se destinen a la ejecución de obras de beneficio común y mediante el acuerdo de las dos terceras partes de los integrantes del Ayuntamiento."

Este precepto legal consagra, esencialmente, la facultad del Ayuntamiento para enajenar los inmuebles de dominio privado del Municipio y los requisitos conforme a los cuales los Ayuntamientos podrán donar bienes inmuebles.

En lo referente a la primera parte de esta fracción, debe decirse que se trata de una ley en materia municipal, de las que establecen los casos en que se requiere el acuerdo de las dos terceras partes de los miembros del Ayuntamiento para afectar el patrimonio inmobiliario municipal, que regula el artículo 115, fracción II, inciso b), de la Constitución Federal. En ese sentido, se trata de una disposición que no va en contra del texto constitucional, porque dicho precepto faculta a las

Legislaturas de los Estados para establecer los casos en que se requiera el acuerdo de las dos terceras partes de los miembros de los Ayuntamientos para dictar resoluciones que afecten el patrimonio inmobiliario municipal o para celebrar actos o convenios que comprometan al Municipio por un plazo mayor al periodo del Ayuntamiento, y la disposición impugnada únicamente se concreta a establecer, dentro de los límites constitucionales, uno de tales casos.

Sin embargo, por lo que hace a la segunda parte de la referida fracción XVII del artículo 49 en análisis, conforme a la cual: "La donación de inmuebles sólo procederá, cuando se destinen a la ejecución de obras de beneficio común y mediante el acuerdo de las dos terceras partes de los integrantes del Ayuntamiento ...", debe señalarse que la parte subrayada resulta inconstitucional al excederse del contenido del artículo 115, fracción II, inciso b), la que si bien establece como facultad de la legislatura la determinación de los casos en que se requiere mayoría calificada para la afectación del patrimonio inmobiliario del Municipio, no otorga a dicho Congreso Local la atribución de establecer restricciones a la disposición de los bienes inmuebles del Municipio por parte del Ayuntamiento.

No está por demás señalar que si bien es cierto que no le asiste la razón a la parte actora cuando manifiesta, respecto de esta fracción, que resulta inconstitucional porque establece mayorías calificadas de votación para la toma de decisiones del Cabildo, pues en este caso específico es claro que la norma se ajusta perfectamente a lo dispuesto por el artículo 115, fracción II, inciso b), de la Constitución Federal, también lo es que la fracción impugnada que se analiza, en la porción normativa que establece "La donación de inmuebles sólo procederá ... mediante el acuerdo de las dos terceras partes de los integrantes del Ayuntamiento ..." cuando se destinen a la ejecución de obras de beneficio común sí es parcialmente inconstitucional, por las razones antes expresadas.

En orden a lo anterior y dada la declaración de inconstitucionalidad parcial antes expresada, la fracción XVII del artículo 49 de la Ley Orgánica Municipal del Estado de Hidalgo, para efectos de la presente controversia constitucional y en lo que atañe a su aplicación futura al Municipio actor, deberá leerse de la siguiente manera:

"XVII. Enajenar, a título gratuito u oneroso, los inmuebles de dominio privado del Municipio, únicamente cuando así lo aprueben las dos terceras partes de los integrantes del Ayuntamiento y previa localización y medición de la propiedad y avalúo por peritos; la venta se efectuará en los términos de la autorización y conforme a lo previsto por la ley de la materia. ..."

• Artículo 49, fracción XXXI.

1/25/13 2:07 PM

Pasando a otro punto, el Municipio actor también se inconforma respecto de la fracción XXXI del artículo 49 en comento, la cual establece lo siguiente:

"Artículo 49. Son facultades y obligaciones de los Ayuntamientos:

"...

"XXXI. Proponer al Congreso del Estado, en el ámbito de su competencia, las cuotas y tarifas aplicables a impuestos, derechos, productos, aprovechamientos, contribuciones de mejoras y las tablas de valores unitarios de suelo y construcciones que sirvan de base para el cobro de las contribuciones sobre la propiedad inmobiliaria; así como las tasas de las contribuciones adicionales. Los ingresos obtenidos por tasas adicionales, deberán destinarse íntegramente al objeto de su establecimiento y en ningún caso, por sí o de manera conjunta, rebasarán el 10% del monto que arroje la contribución base. Los Ayuntamientos y, en su caso, el Congreso del Estado, podrán solicitar los criterios técnicos de las dependencias del Poder Ejecutivo Estatal, a fin de respaldar sus proyectos y resoluciones."

Dicho precepto prevé, en esencia, que es facultad del Ayuntamiento proponer a la Legislatura del Estado, en el ámbito de su competencia, las cuotas y tarifas aplicables a impuestos, derechos, productos, aprovechamientos, contribuciones de mejoras y las tablas de valores unitarios de suelo y construcciones que sirvan de base para el cobro de las contribuciones sobre la propiedad inmobiliaria, así como las tasas de las contribuciones adicionales. Dicha fracción también establece como obligación de los Ayuntamientos, el que los ingresos obtenidos por tasas adicionales deban destinarse íntegramente al objeto de su establecimiento y que en ningún caso, por sí o de manera conjunta, rebasen el diez por ciento del monto que arroje la contribución base.

La primera parte del precepto en comento, es una norma derivada del párrafo tercero del inciso c) de la fracción IV del artículo 115 constitucional, pues dicho precepto expresamente establece la facultad de las Legislaturas de los Estados para aprobar las Leyes de Ingresos de los Municipios, revisar y fiscalizar sus cuentas públicas y aprobar sus presupuestos de egresos, por lo que las atribuciones que dicha porción normativa de la fracción XXXI del artículo 49 de la Ley Orgánica Municipal del Estado de Hidalgo le confiere a la Legislatura Estatal, son plenamente conformes con dicha facultad y, desde luego, con el texto constitucional.

No obstante lo anterior, la segunda parte de dicho precepto legal sí resulta contraria a la Norma Fundamental pues, por una parte, el hecho de que la legislatura disponga en la ley en estudio que los ingresos obtenidos por tasas adicionales deberán, necesaria e indefectiblemente, dedicarse de manera íntegra al objeto de su establecimiento, afecta el principio de libre administración hacendaria consagrado en el artículo 115, fracción IV, primer párrafo, de la Constitución, al predeterminar el destino que deben tener sus ingresos.

Además, la parte en la que dicha fracción XXXI establece que en ningún caso, por sí o de manera conjunta, tales tasas adicionales podrán rebasar el diez por ciento del monto que arroje la contribución base, viola la libertad de iniciativa del Municipio en materia de contribuciones a la propiedad inmobiliaria, pues de conformidad con la propia fracción IV del artículo 115 constitucional, los Municipios tienen el derecho de proponer lo que consideren pertinente para su hacienda pública en lo referente a materia inmobiliaria, en la inteligencia de que será facultad exclusiva de la legislatura el aprobar, modificar o, en su caso, rechazar la iniciativa del Municipio al momento de discutir la correspondiente Ley de Ingresos.

Vale la pena mencionar que este Alto Tribunal ha sostenido desde la Séptima Época que las tasas adicionales constituyen, en realidad, una elevación en el monto del cobro del impuesto que les sirve de base, por lo que tienen exactamente la misma naturaleza contributiva que el impuesto primario.

La jurisprudencia que contiene el criterio anterior, es visible en la página 242 de los Volúmenes 181-186, Primera Parte, Séptima Época, Pleno del Semanario Judicial de la Federación, y es del siguiente tenor:

"IMPUESTO DEL 15% ADICIONAL SOBRE EL PAGO DE LOS IMPUESTOS Y DERECHOS QUE ESTABLEZCA LA LEY DE INGRESOS DEL DEPARTAMENTO DEL DISTRITO FEDERAL. EL ARTÍCULO 931 DE LA LEY DE HACIENDA DEL DEPARTAMENTO DEL DISTRITO FEDERAL ES CONSTITUCIONAL. El artículo 931 de la Ley de Hacienda del Departamento del Distrito Federal, que establece que es objeto del impuesto adicional del 15% el pago de los derechos que establezca la Ley de Ingresos del Departamento del Distrito Federal, legalmente debe considerarse igual a aquel sobre el que se cause, ya que, en realidad, al ser de la misma naturaleza, viene a constituir un aumento fijo a la propia tarifa del impuesto en cuestión y, en esas condiciones, el objeto impositivo del impuesto adicional no lo constituye el cumplimiento de una obligación, como lo es el pago de los impuestos o derechos, sino que, al constituir un aumento a la tarifa respectiva, el objeto es el mismo del impuesto o derecho sobre el que se causa, por lo que, en estas condiciones, el impuesto del 15% adicional sí mira a la capacidad contributiva del causante, pues tiene la misma fuente impositiva que aquél y, por ende, no carece del elemento fuente y, consecuentemente, es constitucional."

Por ende, no es válido, como lo pretende la norma impugnada, dar a las tasas adicionales un tratamiento distinto al de las contribuciones base, con el propósito de destinar el monto recaudado a un fin exclusivo, esto es, al objeto de su establecimiento.

No está por demás señalar que la última parte de la fracción XXXI que establece que tanto los Ayuntamientos como el Congreso del Estado podrán solicitar los criterios técnicos de las dependencias del Poder Ejecutivo Estatal, a fin de respaldar sus proyectos y resoluciones, no constituye una norma obligatoria porque establece una facultad potestativa y, por lo mismo, no atenta contra el ámbito de atribuciones que la Constitución Federal le confiere al Municipio.

En orden a todo lo anterior, lo que procede es declarar la inconstitucionalidad de la fracción XXXI del artículo 49 de la Ley Orgánica Municipal del Estado de Hidalgo, en la porción normativa en la que expresa que "Los ingresos obtenidos por tasas adicionales, deberán destinarse íntegramente al objeto de su establecimiento y en ningún caso, por sí o de manera conjunta, rebasarán el 10% del monto que arroje la contribución base.", con lo cual dicha fracción, para efectos de la presente controversia constitucional y en lo que atañe a su aplicación futura al Municipio actor, deberá leerse de la siguiente manera:

"XXXI. Proponer al Congreso del Estado, en el ámbito de su competencia, las cuotas y tarifas aplicables a impuestos, derechos, productos, aprovechamientos, contribuciones de mejoras y las tablas de valores unitarios de suelo y construcciones que sirvan de base para el cobro de las contribuciones sobre la propiedad inmobiliaria; así como las tasas de las contribuciones adicionales. ... Los Ayuntamientos y, en su caso, el Congreso del Estado, podrán solicitar los criterios técnicos de las dependencias del Poder Ejecutivo Estatal, a fin de respaldar sus proyectos y resoluciones."

• Artículos 53 y 54.

Los numerales impugnados disponen lo siguiente:

"Artículo 53. Para los efectos de la fracción I del artículo anterior, cuando se apruebe por el Ayuntamiento un reglamento o decreto y sea enviado al presidente para su sanción y publicación, dentro de diez días podrá devolverlo con observaciones procedentes para ser discutido nuevamente por aquél y si fuere confirmado por las dos terceras partes de sus miembros volverá al presidente quien deberá publicarlos sin más trámites y proveer en la esfera administrativa su debido

cumplimiento."

"Artículo 54. Se tendrá por aprobado como reglamento odecreto, el no devuelto dentro de los diez días siguientes a su envío."

Según se advierte de la lectura del artículo 53 antes transcrito, se le confiere al presidente municipal la facultad para realizar observaciones sobre los reglamentos o decretos que apruebe el Ayuntamiento, esto es, podrá devolver dichos ordenamientos dentro de los diez días a partir del en que los haya recibido, con las observaciones que considere procedentes para que sean discutidos nuevamente por el Ayuntamiento, lo que en la doctrina se conoce como "derecho de veto".

Al respecto, este Alto Tribunal considera que dicha facultad es inconstitucional, en atención a los siguientes razonamientos:

a. El artículo 115, fracción I, primer párrafo, establece la tipología de los funcionarios integrantes del Ayuntamiento como cuerpo colegiado al establecer que deberá estar conformado por el presidente municipal y el número de regidores y síndicos que la ley determine. El precepto en mención, en la parte que interesa, dispone:

"Artículo 115. ...

"I. Cada Municipio será gobernado por un Ayuntamiento de elección popular directa, integrado por un presidente municipal y el número de regidores y síndicos que la ley determine. La competencia que esta Constitución otorga al Gobierno Municipal se ejercerá por el Ayuntamiento de manera exclusiva y no habrá autoridad intermedia alguna entre éste y el Gobierno del Estado."

b. De la lectura del texto anterior y, en general, del artículo 115 constitucional, se concluye que no existe ningún rango jerárquico entre los miembros del Ayuntamiento, esto es, todos los munícipes actúan en un plano de igualdad y que la única diferencia que pudiera establecerse entre ellos es por razón de competencia.

c. Si el Ayuntamiento es un órgano colegiado, entonces se sobreentiende que sus decisiones también las adopta de manera colegiada, ya sea por una mayoría simple o calificada, decisiones en las cuales interviene el presidente municipal como miembro del Cabildo. En este supuesto, deben encontrarse los reglamentos y decretos municipales competencia de los

Ayuntamientos, cuya emisión constituye una de las principales prerrogativas de los Ayuntamientos, según lo dispone la fracción II, primer párrafo, del artículo 115 constitucional.

d. De ahí entonces que si el presidente municipal ha tenido intervención en la elaboración de un reglamento o decreto y ha ejercido su derecho de voz y voto en la toma de esa decisión colegiada, entonces resulta excesivo que se le confiera el derecho de veto sobre tales decisiones. Máxime que, en términos del artículo 53 impugnado, se requiere de una votación calificada para superar las observaciones que en su caso formule el presidente.

Con lo anterior se advierte que el precepto impugnado otorga un rango de superioridad al presidente municipal por lo que respecta a la elaboración de normas, lo cual constituye, en el caso concreto, un contrasentido con la naturaleza jurídica del Ayuntamiento como órgano colegiado, máxime porque la Constitución Federal no reconoce en favor del presidente municipal algún privilegio en la toma de decisiones, ni lo coloca en una posición jerárquicamente superior en relación con los demás integrantes del Ayuntamiento.

Bajo esa tesitura, debe declararse inconstitucional el artículo 53 en la porción normativa que dice "dentro de diez días podrá devolverlo con observaciones procedentes para ser discutido nuevamente por aquél", con lo cual, para efectos de la presente controversia constitucional y en lo que atañe a su aplicación futura al Municipio actor, deberá leerse de la siguiente manera:

"Artículo 53. Para los efectos de la fracción I del artículo anterior, cuando se apruebe por el Ayuntamiento un reglamento o decreto y sea enviado al presidente para su sanción y publicación ... y si fuere confirmado por las dos terceras partes de sus miembros volverá al presidente quien deberá publicarlos sin más trámites y proveer en la esfera administrativa su debido cumplimiento."

En vía de consecuencia, debe declararse inconstitucional el artículo 54 de la ley impugnada, pues en él se establece que se tendrá por aprobado el reglamento o decreto que no sea devuelto por el presidente municipal dentro de los diez días siguientes a su envío, esto es, que siendo el veto una facultad discrecional, en caso de que no se ejercite se tendrá por aprobado el reglamento o decreto. Tal determinación encuentra su apoyo en el artículo 41, fracción IV, de la Ley Reglamentaria de las Fracciones I y II del Artículo 105 Constitucional, el cual establece lo siguiente:

"Artículo 41. Las sentencias deberán contener:

"...

"IV. ... Cuando la sentencia declare la invalidez de una norma general, sus efectos deberán extenderse a todas aquellas normas cuya validez dependa de la propia norma invalidada.

• Artículo 125.

El Municipio actor manifiesta que la Legislatura Estatal carece de facultades para emitir normas como la contenida en el artículo 125 de la ley impugnada y que, por tanto, al hacerlo invade su esfera de competencias.

El artículo antes referido establece:

"Artículo 125. La administración municipal, en el sector central o paramunicipal, contará con una unidad encargada de prestar los servicios de asistencia social con la denominación de Junta Municipal para el Desarrollo Integral de la Familia. Para financiar su operación, el Ayuntamiento establecerá, conforme a sus recursos, la partida presupuestal correspondiente, no podrá ser ésta de un monto menor al 3% del total del presupuesto de egresos, independientemente de los recursos federales y estatales que se le transfieran.

"La Junta Municipal para el Desarrollo Integral de la Familia, estará regida por un patronato, presidido por la persona que designe el presidente municipal y una dirección, con las unidades administrativas o dependencias que establezcan el acuerdo o reglamento correspondiente o sus propios requerimientos.

"El titular del Desarrollo Integral de la Familia municipal, deberá contar con el apoyo de una unidad técnica, cuyo responsable deberá ser un profesionista o técnico con conocimientos en las materias de derecho, administración o ramas afines a éstas, que acredite satisfactoriamente sus estudios ante el Ayuntamiento. El responsable de la unidad referida, refrendará con su firma los documentos oficiales suscritos por el titular del Desarrollo Integral de la Familia municipal."

En la primera parte del primer párrafo del artículo que se analiza, se establece que la administración municipal deberá contar con una unidad que prestará los servicios de asistencia social, así como la denominación que le corresponderá. Asimismo, en el segundo y tercer párrafos se prevé que la Junta Municipal para el Desarrollo Integral de la Familia, deberá

1/25/13 2:07 PM

estar regida por un patronato y los requisitos de la persona que deberá ocupar el cargo de la unidad técnica de apoyo a dicha dependencia.

Los fragmentos del precepto reclamado señalados deben ser considerados como normas derivadas de la fracción III, inciso i), del artículo 115 constitucional, toda vez que se trata de una función pública concedida por la Legislatura Estatal a favor del Municipio y, en este sentido, ha quedado precisado con antelación que en este tipo de servicios públicos en los que es la Legislatura Estatal la que los encarga directamente al Municipio, ésta puede, en uso de la autonomía que le otorga el artículo 124 constitucional, establecer requisitos, modalidades y hasta dependencias, siempre y cuando prevea el presupuesto para tal efecto.

En este sentido, es claro que lo dispuesto por el artículo impugnado en los fragmentos referidos no es violatorio de la esfera competencial del Municipio, pues al tratarse de una función pública otorgada por la propia Legislatura Estatal a favor de éste, es claro que le puede imponer una serie de modalidades y requisitos que tiendan a la adecuada prestación de la función de que se trata.

Por otro lado, en la segunda parte del primer párrafo del precepto transcrito, se establece la obligación del Ayuntamiento de establecer conforme a sus recursos la partida presupuestal correspondiente que no podrá ser de un monto menor al 3% del total del presupuesto de egresos independientemente de los recursos federales y estatales que se les transfieran.

Esta parte de la disposición resulta violatoria de la fracción IV del artículo 115 constitucional, que prevé:

"Artículo 115. Los Estados adoptarán, para su régimen interior, la forma de gobierno republicano, representativo, popular, teniendo como base de su división territorial y de su organización política y administrativa el Municipio Libre, conforme a las bases siguientes:

"...

"IV. Los Municipios administrarán libremente su hacienda, la cual se formará de los rendimientos de los bienes que les pertenezcan, así como de las contribuciones y otros ingresos que las legislaturas establezcan a su favor, y en todo caso:

"a) Percibirán las contribuciones, incluyendo tasas adicionales, que establezcan los Estados sobre la propiedad inmobiliaria,

de su fraccionamiento, división, consolidación, traslación y mejora así como las que tengan por base el cambio de valor de los inmuebles.

"Los Municipios podrán celebrar convenios con el Estado para que éste se haga cargo de algunas de las funciones relacionadas con la administración de esas contribuciones.

"b) Las participaciones federales, que serán cubiertas por la Federación a los Municipios con arreglo a las bases, montos y plazos que anualmente se determinen por las Legislaturas de los Estados.

"c) Los ingresos derivados de la prestación de servicios públicos a su cargo.

(Reformado, D.O.F. 23 de diciembre de 1999)
"Las leyes federales no limitarán la facultad de los Estados para establecer las contribuciones a que se refieren los incisos a) y c), ni concederán exenciones en relación con las mismas. Las leyes estatales no establecerán exenciones o subsidios en favor de persona o institución alguna respecto de dichas contribuciones. Sólo estarán exentos los bienes de dominio público de la Federación, de los Estados o los Municipios, salvo que tales bienes sean utilizados por entidades paraestatales o por particulares, bajo cualquier título, para fines administrativos o propósitos distintos a los de su objeto público.

(Reformado, D.O.F. 23 de diciembre de 1999)
"Los Ayuntamientos, en el ámbito de su competencia, propondrán a las Legislaturas Estatales las cuotas y tarifas aplicables a impuestos, derechos, contribuciones de mejoras y las tablas de valores unitarios de suelo y construcciones que sirvan de base para el cobro de las contribuciones sobre la propiedad inmobiliaria.

(Adicionado, D.O.F. 23 de diciembre de 1999)
"Las Legislaturas de los Estados aprobarán las Leyes de Ingresos de los Municipios, revisarán y fiscalizarán sus cuentas públicas. Los presupuestos de egresos serán aprobados por los Ayuntamientos con base en sus ingresos disponibles.

(Adicionado, D.O.F. 23 de diciembre de 1999)
"Los recursos que integran la hacienda municipal serán ejercidos en forma directa por los Ayuntamientos, o bien, por quien ellos autoricen, conforme a la ley."

1/25/13 2:07 PM

Como se desprende de la fracción V del artículo 115 constitucional antes transcrita, los Ayuntamientos gozan de libertad para administrar su hacienda y corresponde a éstos aprobar su presupuesto de egresos.

Ahora bien, la libre administración de la hacienda municipal corresponde al régimen que estableció el Poder Revisor de la Constitución con el propósito expreso de fortalecer la autonomía y autosuficiencia económica de los Municipios, de tal manera que estas entidades políticas tengan libertad en la aplicación de los recursos que les son propios, para la satisfacción de sus necesidades.

Este criterio ha sido sostenido por el Pleno de esta Suprema Corte de Justicia de la Nación, en la jurisprudencia número P./J. 5/2000, que aparece publicada en la página 515 del Tomo XI, febrero de dos mil, del Semanario Judicial de la Federación y su Gaceta, Novena Época, que dice:

"HACIENDA MUNICIPAL Y LIBRE ADMINISTRACIÓN HACENDARIA. SUS DIFERENCIAS (ARTÍCULO 115, FRACCIÓN IV, DE LA CONSTITUCIÓN FEDERAL). En términos generales puede considerarse que la hacienda municipal se integra por los ingresos, activos y pasivos de los Municipios; por su parte, la libre administración hacendaria debe entenderse como el régimen que estableció el Poder Reformador de la Constitución a efecto de fortalecer la autonomía y autosuficiencia económica de los Municipios, con el fin de que éstos puedan tener libre disposición y aplicación de sus recursos y satisfacer sus necesidades, todo esto en los términos que fijen las leyes y para el cumplimiento de sus fines públicos."

Igualmente, en la exposición de motivos de la reforma constitucional efectuada al artículo 115, el tres de febrero de mil novecientos ochenta y tres, se asentó:

"Dentro de estos grandes lineamientos, como consecuencia de los estudios realizados y como corolario de la intensa consulta popular efectuada, consideramos como medida fundamental para robustecer al Municipio, piedra angular de nuestra vida republicana y federal, hacer algunos cambios al artículo 115, de la Constitución, tendientes a vigorizar su hacienda, su autonomía política ...

"Se atribuyen igualmente a los Municipios los rendimientos de sus bienes propios, así como de las otras contribuciones y los otros ingresos que las legislaturas establezcan a su favor y fundamentalmente también los ingresos provenientes de la prestación de los servicios públicos a su cargo. ..."

Por otro lado, el concepto de hacienda, en un sentido amplio, puede entenderse como el conjunto de bienes organizados para el ejercicio de la actividad económica de un ente, que bien puede ser de naturaleza privada o, como en el caso, pública. Lo que permite calificar a un conjunto de bienes como hacienda es, justamente, el destino o fin al que se encuentran afectos, es el elemento que le da cohesión y permite identificarla como una unidad económica.

Algunos autores distinguen entre el patrimonio y la hacienda municipal. Esto es, el patrimonio de un Municipio se refiere a todos los bienes, materiales e inmateriales, muebles e inmuebles, etcétera, que le pertenecen y sobre los cuales ejerce dominio. Bajo esta noción, el patrimonio municipal es más amplio que su hacienda.

La hacienda municipal se conforma con los recursos económicos con los que cuenta el Municipio para cumplir con sus funciones y proporcionar los servicios públicos que tiene a su cargo.

En este contexto, la libre administración de la hacienda municipal debe entenderse exclusivamente como la facultad de organizar, esto es, ordenar económicamente los recursos del Municipio disponibles y utilizarlos para proveer a la satisfacción de los intereses y necesidades sociales, así como a prestar los servicios públicos que tenga a su cargo, siempre que se apliquen al gasto público.

Así las cosas, la regulación de un destino para los ingresos públicos preconfigurado por la ley, constituye una limitación a la libre administración de la misma que violenta la fracción IV del artículo 115 de la Constitución Federal. En este tenor, el supuesto jurídico previsto en la segunda parte del primer párrafo del artículo 125 de la ley impugnada, que dispone la obligación de que el Ayuntamiento destine en la partida presupuestal correspondiente a asistencia social un monto no menor al 3% del total del presupuesto de egresos, independientemente de los recursos federales y estatales que se les transfieran, resulta inconstitucional, toda vez que atenta contra el régimen de libre administración hacendaria, razón por la cual debe declararse su invalidez.

Sirve de apoyo a lo antes expuesto, la jurisprudencia P./J. 53/2002, publicada en el Semanario Judicial de la Federación y su Gaceta, Novena Época, Tomo XVII, enero de 2003, página 1393, que a la letra indica:

"HACIENDA MUNICIPAL. LAS CONTRIBUCIONES QUE ESTABLEZCAN LAS LEGISLATURAS DE LOS ESTADOS SOBRE LA PROPIEDAD INMOBILIARIA SE ENCUENTRAN TUTELADAS BAJO EL RÉGIMEN DE LIBRE ADMINISTRACIÓN HACENDARIA, POR LO QUE ESOS RECURSOS PERTENECEN EXCLUSIVAMENTE A LOS MUNICIPIOS Y NO AL GOBIERNO DEL ESTADO

(INCONSTITUCIONALIDAD DEL ARTÍCULO 1o., FRACCIÓN I, DE LA 'LEY DE INGRESOS Y PRESUPUESTO DE INGRESOS, PARA EL EJERCICIO FISCAL DE 2002' DEL ESTADO DE SONORA). El artículo 115, fracción IV, de la Constitución Federal, establece la forma en que se integra la hacienda municipal, señalando que se formará de los rendimientos de los bienes que les pertenezcan, así como de las contribuciones y otros ingresos que las legislaturas establezcan a su favor; por su parte, los incisos a), b) y c), de la fracción IV mencionada, se refieren a los conceptos que estarán sujetos al régimen de libre administración hacendaria. El indicado inciso a), dispone que, en todo caso, los Municipios percibirán las contribuciones, incluyendo tasas adicionales que establezcan los Estados sobre la propiedad inmobiliaria, su fraccionamiento, división, consolidación, traslación y mejora así como las que tengan por base el cambio de valor de los inmuebles, luego, esos recursos, forman parte de la hacienda municipal y están sujetos al régimen de libre administración hacendaria, lo que hace patente que dichos recursos pertenecen a los Municipios de forma exclusiva y no al Gobierno del Estado; por lo tanto, si en la Ley de Ingresos Estatal se establece que el Gobierno del Estado percibirá los ingresos provenientes del 'impuesto predial ejidal', ello vulnera lo dispuesto por el artículo 115, fracción IV, inciso a), de la Constitución Federal. Como consecuencia de lo anterior, la Legislatura Local, tampoco puede establecer disposición alguna que indique a los Municipios el destino de esos recursos, ya que se encuentran bajo el régimen de libre administración hacendaria y en libertad de ocuparlos de acuerdo con sus necesidades, siempre que se apliquen al gasto público."

Consecuentemente, debe declararse la inconstitucionalidad del primer párrafo del artículo 125 impugnado, en la porción normativa que dice "Para financiar su operación, el Ayuntamiento establecerá, conforme a sus recursos, la partida presupuestal correspondiente, no podrá ser ésta de un monto menor al 3% del total del presupuesto de egresos, independientemente de los recursos federales y estatales que se le transfieran.", razón por la cual, para efectos de la presente controversia constitucional y en lo que atañe a su aplicación futura al Municipio actor, deberá leerse de la siguiente manera:

"Artículo 125. La administración municipal, en el sector central o paramunicipal, contará con una unidad encargada de prestar los servicios de asistencia social con la denominación de Junta Municipal para el Desarrollo Integral de la Familia."

• Artículo 132.

La parte actora aduce que el artículo 132 de la Ley Orgánica Municipal del Estado de Hidalgo impugnado, viola el principio de libertad hacendaria, ya que limita el destino del haber municipal, cuando esto sólo es posible hacerlo a través del presupuesto, el cual lo determina libremente el Ayuntamiento conforme a su plan de desarrollo.

Procede ahora transcribir el artículo 132 impugnado:

"Artículo 132. Los Ayuntamientos, por ningún motivo harán donación bajo ningún título, de los bienes muebles e inmuebles propiedad del Municipio, excepto cuando se trate de realización de obras de beneficio colectivo; en este caso, se observará lo dispuesto por la fracción XVII del artículo 49 de esta ley."

Por su parte, la fracción IV del artículo 115 de la Constitución Federal, señala:

"Artículo 115. Los Estados adoptarán, para su régimen interior, la forma de gobierno republicano, representativo, popular, teniendo como base de su división territorial y de su organización política y administrativa el Municipio Libre, conforme a las basessiguientes:

"...

"IV. Los Municipios administrarán libremente su hacienda, la cual se formará de los rendimientos de los bienes que les pertenezcan, así como de las contribuciones y otros ingresos que las legislaturas establezcan a su favor, y en todo caso:

"a) Percibirán las contribuciones, incluyendo tasas adicionales, que establezcan los Estados sobre la propiedad inmobiliaria, de su fraccionamiento, división, consolidación, traslación y mejora así como las que tengan por base el cambio de valor de los inmuebles.

"Los Municipios podrán celebrar convenios con el Estado para que éste se haga cargo de algunas de las funciones relacionadas con la administración de esas contribuciones.

"b) Las participaciones federales, que serán cubiertas por la Federación a los Municipios con arreglo a las bases, montos y plazos que anualmente se determinen por las Legislaturas de los Estados.

"c) Los ingresos derivados de la prestación de servicios públicos a su cargo.

"Las leyes federales no limitarán la facultad de los Estados para establecer las contribuciones a que se refieren los incisos a)

y c), ni concederán exenciones en relación con las mismas. Las leyes estatales no establecerán exenciones o subsidios en favor de persona o institución alguna respecto de dichas contribuciones. Sólo estarán exentos los bienes de dominio público de la Federación, de los Estados o los Municipios, salvo que tales bienes sean utilizados por entidades paraestatales o por particulares, bajo cualquier título, para fines administrativos o propósitos distintos a los de su objeto público.

"Los Ayuntamientos, en el ámbito de su competencia, propondrán a las Legislaturas Estatales las cuotas y tarifas aplicables a impuestos, derechos, contribuciones de mejoras y las tablas de valores unitarios de suelo y construcciones que sirvan de base para el cobro de las contribuciones sobre la propiedad inmobiliaria.

"Las Legislaturas de los Estados aprobarán las Leyes de Ingresos de los Municipios, revisarán y fiscalizarán sus cuentas públicas. Los presupuestos de egresos serán aprobados por los Ayuntamientos con base en sus ingresos disponibles.

"Los recursos que integran la hacienda municipal serán ejercidos en forma directa por los Ayuntamientos, o bien, por quien ellos autoricen, conforme a la ley."

La disposición anotada prevé la libre administración hacendaria por parte de los Municipios y la forma en que se integra la hacienda municipal; los casos en que las leyes federales no pueden establecer contribuciones sobre los conceptos que corresponden a los Municipios; la prohibición para que en las leyes locales no se establezcan exenciones o subsidios respecto de las mismas contribuciones; la facultad de las Legislaturas Estatales para aprobar las Leyes de Ingresos de los Ayuntamientos y para revisar sus cuentas públicas, así como la facultad de tales Ayuntamientos para aprobar sus presupuestos de egresos.

El numeral a estudio, es decir, el artículo 132 de la Ley Orgánica Municipal del Estado de Hidalgo, dispone que los Ayuntamientos por ningún motivo harán donación de los bienes e inmuebles propiedad del Municipio, excepto que se trate de realización de obras de beneficio colectivo y que en este caso se observará lo dispuesto por la fracción XVII del artículo 49 de la misma ley, es decir, mediante el acuerdo de las dos terceras partes de los integrantes del Ayuntamiento.

Como quedó sentado con anterioridad, el "patrimonio y hacienda municipales" son conceptos que con frecuencia se confunden o, en otros casos, se usan como sinónimos, porque ambos vocablos se refieren al mismo tema. Se habla de patrimonio del Estado, por ende, del Municipio, haciendo alusión a todo tipo de bienes, materiales o inmateriales, que le pertenecen y sobre los que tiene dominio. En este sentido, el concepto de patrimonio es más amplio que el de hacienda,

pues en el concepto de patrimonio se debe incluir también el de la hacienda.

En cuanto al concepto de hacienda, implica fundamentalmente la idea de recursos económicos, esto es, del numerario con el que cuenta la municipalidad para proveer a su propia existencia y para atender sus funciones. La hacienda, por tanto, es una parte del patrimonio y no a la inversa.

El texto del artículo 115 constitucional distingue los dos conceptos en cuestión. La fracción II señala que los Municipios estarán investidos de personalidad jurídica y manejarán su patrimonio conforme a la ley. Por otra parte, el párrafo inicial de la fracción IV, indica que los Municipios administrarán libremente su hacienda.

Se aprecia de lo anterior que el Constituyente Permanente tuvo cuidado de separar los conceptos a fin de no confundir las respectivas facultades que, en consecuencia, tocan al Municipio.

En general, las legislaciones estatales determinan los diversos tipos de bienes que pertenecen al Municipio siguiendo la clasificación doctrinaria de bienes del dominio público y bienes del dominio privado.

En la actual fracción IV del artículo 115 constitucional, se establece la enumeración de fuentes de ingresos propias para los Municipios, así como diversas garantías y reglas de carácter fiscal y presupuestario que fortalecen a los Ayuntamientos.

Se forma la hacienda municipal, puntualiza el párrafo primero de la fracción IV del artículo 115 constitucional, de los rendimientos de los bienes que les pertenezcan, así como de las contribuciones y otros ingresos que las legislaturas establezcan en su favor y, en todo caso, por: a) contribuciones sobre la propiedad inmobiliaria, incluyendo tasas adicionales, o las provenientes de su fraccionamiento, división, consolidación, traslación, mejora o cambio de valor de los inmuebles; b) las participaciones federales, que se cubrirán por la Federación a los Municipios en los términos determinados por la legislatura; c) ingresos derivados de las prestaciones de servicios públicos a su cargo; y, d) rendimientos de los bienes que le pertenezcan. Todo lo anterior, sin perjuicio de que las legislaturas puedan establecer en favor de los Municipios otro tipo de contribuciones y de ingresos.

Cabe recordar, en primer lugar, que esta enumeración de las fuentes de ingresos es de carácter enunciativa y no limitativa, en virtud de que el concepto de hacienda municipal se integra por otros elementos que no están mencionados en la enumeración que se comenta.

Respecto de los conceptos que integran la hacienda municipal y que el Municipio administrará libremente, esta Suprema Corte de Justicia de la Nación ha sustentado la tesis P./J. 6/2000, publicada a páginas quinientos catorce del Tomo XI, febrero de dos mil, Pleno, Novena Época, Semanario Judicial de la Federación y su Gaceta, que señala:

"HACIENDA MUNICIPAL. CONCEPTOS SUJETOS AL RÉGIMEN DE LIBRE ADMINISTRACIÓN HACENDARIA (ARTÍCULO 115, FRACCIÓN IV, DE LA CONSTITUCIÓN FEDERAL). El artículo 115, fracción IV, de la Constitución Federal, establece que la hacienda municipal se formará de los rendimientos de los bienes que les pertenezcan, así como de las contribuciones y otros ingresos que las legislaturas establezcan a su favor, y en todo caso: a) Percibirán las contribuciones, incluyendo tasas adicionales, que establezcan los Estados sobre la propiedad inmobiliaria, de su fraccionamiento, división, consolidación, traslación y mejora así como las que tengan por base el cambio de valor de los inmuebles; b) Las participaciones federales, que serán cubiertas por la Federación a los Municipios con arreglo a las bases, montos y plazos que anualmente se determinen por las Legislaturas de los Estados; y, c) Los ingresos derivados de la prestación de servicios públicos a su cargo. De una interpretación armónica, sistemática y teleológica de la disposición constitucional, se concluye que la misma no tiende a establecer la forma en que puede integrarse la totalidad de la hacienda municipal, sino a precisar en lo particular aquellos conceptos de la misma que quedan sujetos al régimen de libre administración hacendaria, toda vez que, por una parte, la hacienda municipal comprende un universo de elementos que no se incluyen en su totalidad en la disposición constitucional y que también forman parte de la hacienda municipal y, por otra, la disposición fundamental lo que instituye, más que la forma en que se integra la hacienda municipal, son los conceptos de ésta que quedan comprendidos en el aludido régimen de libre administración hacendaria."

En cuanto a la libre administración hacendaria, se debe agregar que este concepto debe entenderse como un régimen que estableció el Poder Reformador de la Constitución y que ha sido motivo de múltiples reformas constitucionales a efecto de fortalecer la autonomía y autosuficiencia económica de los Municipios, con el fin de que éstos puedan tener libre disposición y aplicación de sus recursos y satisfacer sus necesidades. Todo esto en los términos que fijen las leyes y para el cumplimiento de sus fines públicos, de tal manera que atendiendo a sus necesidades propias y siendo éstos los que de mejor manera y en forma más cercana las conocen, puedan priorizar la aplicación de sus recursos sin que se vean afectados por intereses ajenos o por cuestiones que, por desconocimiento u otra razón, los obligaran a ejercer sus recursos en rubros no prioritarios o distintos de sus necesidades reales.

La consideración anterior encuentra apoyo, en lo conducente, en la tesis jurisprudencial número P./J. 5/2000, publicada en

la página 515, Tomo XI, febrero de dos mil, Pleno, Novena Época del Semanario Judicial de la Federación y su Gaceta, que señala:

"HACIENDA MUNICIPAL Y LIBRE ADMINISTRACIÓN HACENDARIA. SUS DIFERENCIAS (ARTÍCULO 115, FRACCIÓN IV, DE LA CONSTITUCIÓN FEDERAL). En términos generales puede considerarse que la hacienda municipal se integra por los ingresos, activos y pasivos de los Municipios; por su parte, la libre administración hacendaria debe entenderse como el régimen que estableció el Poder Reformador de la Constitución a efecto de fortalecer la autonomía y autosuficiencia económica de los Municipios, con el fin de que éstos puedan tener libre disposición y aplicación de sus recursos y satisfacer sus necesidades, todo esto en los términos que fijen las leyes y para el cumplimiento de sus fines públicos."

La hacienda pública municipal es un elemento esencial del Municipio. Sin su concurso sería imposible que se cumplieran los objetivos de esta institución ni tampoco se podrían satisfacer los servicios que los ciudadanos esperan de ella. Para la hacienda municipal, la norma constitucional hace dos declaraciones terminantes; en el encabezado de la fracción IV subraya que los Municipios la "administrarán libremente", en tanto que en el párrafo primero de la fracción II se indica que los Municipios "manejarán su patrimonio conforme a la ley".

Comprende la hacienda municipal cuatro principales elementos de carácter financiero, a saber: a) los ingresos municipales; b) los egresos municipales; c) el patrimonio municipal; y, d) la deuda pública municipal.

Ahora bien, los Municipios al igual que la Federación y los Estados cuentan con una doble fuente de recursos, la más importante de la que deriva el grueso de sus entradas, son las contribuciones y participaciones que fija a su favor la ley; la otra, las rentas y los productos de los bienes que integran su patrimonio. Por disposición constitucional ejercen su actividad hacendaria mediante tres instituciones fundamentales: el presupuesto, Ley de Ingresos y cuenta anual, y además existe una complementaria, los empréstitos.

Las cuatro instituciones existen por un doble imperativo: uno, que deriva de la Constitución Federal, consignado en el artículo 115, fracción IV, último párrafo; y otro, que deriva de las Constituciones y leyes locales. Presupuesto e ingresos están estrechamente unidos, dependen uno del otro, los gastos se autorizan con base en ingresos determinados, los impuestos se recaban para alcanzar los objetivos establecidos en el presupuesto.

Es menester recordar que este Tribunal Pleno al resolver las controversias constitucionales 18/2001 y 19/2001, en un asunto

similar sostuvo lo siguiente:

"SÉPTIMO. Sentado lo anterior, se procede al estudio del inciso b) de la fracción II del artículo 115 constitucional, inciso que es precisamente producto de la reforma constitucional de diciembre de mil novecientos noventa y nueve, para así estar en condiciones de determinar si los párrafos séptimo, noveno y décimo del reformado artículo 23 de la Constitución de Nuevo León lo violentan o no. La normatividad constitucional señalada establece:

"'Artículo 115. Los Estados adoptarán, para su régimen interior, la forma de gobierno republicano, representativo, popular, teniendo como base de su división territorial y de su organización política y administrativa el Municipio Libre, conforme a las bases siguientes:

"'...

"'II. Los Municipios estarán investidos de personalidad jurídica y manejarán su patrimonio conforme a la ley.

"(Reformado, D.O.F. 23 de diciembre de 1999)
"'Los Ayuntamientos tendrán facultades para aprobar, de acuerdo con las leyes en materia municipal que deberán expedir las Legislaturas de los Estados, los bandos de policía y gobierno, los reglamentos, circulares y disposiciones administrativas de observancia general dentro de sus respectivas jurisdicciones, que organicen la administración pública municipal, regulen las materias, procedimientos, funciones y servicios públicos de su competencia y aseguren la participación ciudadana y vecinal.

"(Adicionado, D.O.F. 23 de diciembre de 1999)
"'El objeto de las leyes a que se refiere el párrafo anterior será establecer:

"'...

"'b) Los casos en que se requiera el acuerdo de las dos terceras partes de los miembros de los Ayuntamientos para dictar resoluciones que afecten el patrimonio inmobiliario municipal o para celebrar actos o convenios que comprometan al Municipio por un plazo mayor al periodo del Ayuntamiento.'

"Respecto a este nuevo texto de la Constitución General, pueden identificarse tres antecedentes destacables del proceso legislativo.

"a) Como primer antecedente, la iniciativa presentada por diputados de la fracción parlamentaria del Partido Acción Nacional el treinta y uno de marzo de mil novecientos noventa y nueve ante la Cámara de Diputados, en tanto fue en dicho documento donde primero se propuso establecer una limitación expresa a las legislaturas respecto de los actos de disposición del patrimonio inmobiliario de los Municipios. Dicha iniciativa, en el aspecto aquí en estudio, se sustentó en las siguientes consideraciones:

"'Al Municipio, a través de su Ayuntamiento se le confirieron facultades reglamentarias, mas no existe limitación alguna para que las Legislaturas Estatales y Federales, encuentren una frontera entre sus atribuciones y las del Municipio de tal manera, que sea efectiva la capacidad cuasilegislativa de los Ayuntamientos que de modo incipiente, ya les ha reconocido la Suprema Corte de Justicia de la Nación.

"'Se les reconoce personalidad jurídica pero hoy por hoy, los Gobiernos Estatales y las Legislaturas Locales afectan el ámbito municipal, tomando decisiones en su nombre, sobre todo de carácter administrativo de tal manera que dejan a los Ayuntamientos como entidad de despacho o ejecución en asuntos trascendentes.

"'Se les confiere patrimonio propio mas éste esta sujeto a decisiones de las Legislaturas Estatales como si no existiera la madurez, ni la legitimidad política para que los Ayuntamientos tomen decisiones sobre el uso y destino de sus bienes, dando en los casos que lo ameriten la participación ciudadana pertinente.

"'Se les confiere libertad para el manejo de su hacienda, al mismo tiempo que las legislaturas la limitan a ultranza y sobre manera, fundados en el reenvío que a los Congresos Locales hizo el propio Constituyente, al referir sin la menor previsión, el que esta libertad se ejercerá conforme a la ley.

"'...

"'e) Finalmente, se adiciona un inciso d) a dicha fracción II facultando a las legislaturas para establecer en las bases normativas municipales, las decisiones que por su trascendencia, en todo caso deberán ser tomadas por mayoría calificada de los miembros del Ayuntamiento, haciendo especial énfasis en la desincorporación de bienes del dominio público

municipal, venta de inmuebles o cambio de destino, así como las resoluciones administrativas o relaciones contractuales que comprometan al Municipio más allá del término de la gestión del Ayuntamiento o Consejo Municipal que se trate, sin que en ningún caso puedan las legislaturas, como perversamente hoy sucede, ser la instancia de resolución en materia patrimonial o administrativa de los Municipios.'

"b) Como segundo antecedente, la iniciativa presentada por diputados del Partido de la Revolución Democrática, el treinta de abril de mil novecientos noventa y nueve, propuesta que, en lo que a este punto atañe, recogió lo que antes se había propuesto en la iniciativa antes referida.

"c) Esta proposición fue finalmente recogida en la propuesta única que preparó la Comisión Dictaminadora de la Cámara de Origen, misma que abundó en razones para tal efecto, de las que destacan las que fueron transcritas páginas atrás; y que, como ya se dijo, eventualmente hizo suyas expresamente la Cámara Revisora.

"En atención a lo anterior, se estima que los incisos contenidos en la fracción II del artículo 115, deben interpretarse desde una óptica restrictiva conforme a la cual sean sólo esas las intervenciones admisibles de la legislación local respecto a la actividad municipal, pues esa óptica restrictiva permite materializar el principio de autonomía municipal y no tornar nugatorio el ejercicio legislativo realizado por el Constituyente Permanente, sino más bien consolidarlo.

"Esto significa que el inciso b) de dicha fracción constitucional sólo autoriza a las Legislaturas Locales a que señalen cuáles serán los supuestos en que los actos relativos al patrimonio inmobiliario municipal requerirán de un acuerdo de mayoría calificada de los propios integrantes del Ayuntamiento, mas no le autoriza para erigirse en una instancia más exigible e indispensable para la realización o para la validez jurídica de dichos actos de disposición o administración. Eso atenta contra el espíritu de la reforma constitucional y los fines perseguidos por ésta.

"Interpretación esta última que se confirma no sólo con la letra de la Constitución y de su procedimiento legislativo, lo que es suficiente para sustentarla (al que antes se ha hecho alusión), sino también con diversas opiniones de personas que intervinieron en dicho procedimiento y de estudiosos del debate municipal.

"Así, el diputado Juan Marcos Gutiérrez González, entonces presidente de la Comisión de Fortalecimiento Municipal, al sintetizar los puntos clave de la reforma constitucional en comento, destaca respecto de este tema:

"'Se crea la figura de leyes estatales en materia municipal, delimitadas a un objeto cuyo contenido se enumera en cinco incisos, de lo que se destaca que la ley no va a poder ir más allá del objeto constitucional, propiciando el robustecimiento de las capacidades reglamentarias (cuasilegislativas o materialmente legislativas) de los Ayuntamientos.

"'En este aspecto destaca por ejemplo que para la desincorporación y disposición del patrimonio inmobiliario municipal o la realización de actos que comprometan al Municipio más allá del periodo del Ayuntamiento de que se trate, dichas determinaciones no serán a cargo de la legislatura sino de las dos terceras partes de los miembros de un Ayuntamiento.' (Reflexiones en torno a la reforma municipal del artículo 115 constitucional, Miguel Ángel Porrúa, México, 2000).

"Por otra parte, Miguel Pérez López y Juvenal Núñez Mercado (La nueva estructura del derecho municipal mexicano, notas sobre la reformaconstitucional en materia municipal de 1999, en Cuestiones constitucionales, Revista Mexicana de Derecho Constitucional, Número 4, enero-junio de 2001), indican:

"'La reforma municipal de 1999 tiende a señalar principios y contenidos de la legislación municipal, siempre en un sentido general y orientador. Los incisos agregados a la fracción II procuran cumplir ese cometido a partir de la experiencia recabada por el ejercicio práctico, la legislación elaborada y la jurisprudencia emitida. ...

"'C. Decisiones sobre el patrimonio inmobiliario municipal y celebración de actos y convenios.

"'Con el inciso b) se establece un requisito de mayoría calificada ... en la toma de decisiones concernientes a la afectación de su patrimonio inmobiliario o para la celebración de actos o convenios que comprometan al Municipio más allá del periodo que corresponda al Ayuntamiento, con el fin de evitar que quienes resulten electos para una gestión no tengan que enfrentar cargas o gravámenes que comprometan o limiten seriamente su desempeño. También se evita que las legislaturas intervengan de cualquier forma en una decisión que corresponde en forma exclusiva a los Ayuntamientos.'

"En esta misma línea argumentativa, debe agregarse que cuando la disposición constitucional en estudio habla 'de resoluciones que afecten el patrimonio inmobiliario municipal', debe entenderse por 'afectar', no lo que gramaticalmente puede significar, sino lo que significa conforme al contexto en el que está inserto dicho verbo y conforme arrojan los antecedentes del proceso legislativo que dieron lugar a esa redacción; por ello, puede afirmarse que 'afectar', en esta norma constitucional, tiene un significado amplio, que comprende todo aquel acto jurídico por el cual se dispone del patrimonio inmueble, como sería desincorporar, enajenar, gravar, etcétera.

"En efecto, en la propuesta presentada por los diputados del Partido Acción Nacional, antes referida en esta resolución, se hablaba de desincorporación para venta u otro destino; la propuesta de los diputados del Partido de la Revolución Democrática se refirió a 'desincorporación' y, finalmente, la Comisión Dictaminadora optó por 'afectación'. Esta elección de la comisión, aunado a lo dicho en los documentos que informan el proceso legislativo, corroboran lo antes dicho.

"Ahora bien, los párrafos impugnados del artículo 23 de la Carta Neoleonense estatuyen:

"'Artículo 23. La propiedad de las personas no puede ser ocupada, sin su consentimiento sino por causa de utilidad pública y mediante indemnización. El precio que se fijará como indemnización a la cosa expropiada, se basará en la cantidad que como valor fiscal de ella figure en las oficinas catastrales o recaudadoras, ya sea que este valor haya sido manifestado por el propietario o simplemente aceptado por él de un modo tácito por haber pagado sus contribuciones con esta base. El exceso de valor o el demérito que haya tenido la propiedad particular por las mejoras o deterioros ocurridos con posterioridad a la fecha de la asignación del valor fiscal, será lo único que deberá quedar sujeto a juicio pericial y a resolución judicial. Esto mismo se observará cuando se trate de objetos cuyo valor no está fijado en las oficinas rentísticas.

"'...

"'El Estado de Nuevo León y sus Municipios tienen derecho para adquirir, poseer y administrar bienes raíces, y esta clase de bienes sólo podrán enajenarse, gravarse o desincorporarse, cualquiera que sea su origen, su destino y carácter, mediante decreto del Congreso del Estado que así lo autorice.

"'...

"'Los convenios mediante los cuales se comprometa el libre uso de los bienes inmuebles municipales, se sujetarán a los términos que fijen las leyes, y requerirán de la aprobación de las dos terceras partes de los integrantes de los Ayuntamientos.

"'...

"'Serán inexistentes las enajenaciones, actos, convenios y contratos que no se ajusten a lo preceptuado por este artículo y la

ley.'

"Como se desprende de esta transcripción, la Constitución reformada de Nuevo León faculta a la Legislatura Local para aprobar o rechazar aquellos actos relativos a la enajenación, gravamen o desincorporación del patrimonio inmobiliario de los Municipios de ese Estado, so pena de la inexistencia jurídica de los mismos, pues exige decreto de autorización para tal efecto (párrafo séptimo en relación con el décimo), lo cual, conforme a lo que se ha explicado en torno al inciso b) de la fracción II del artículo 115, va mucho más allá de lo que ésta permite, de ahí su inconstitucionalidad.

"Esto es, mientras que la Constitución General reconoce a los Municipios la facultad de manejar su patrimonio inmueble, con la sola limitante de que las decisiones que a ese respecto se tomen por el Ayuntamiento, sean por acuerdo de las dos terceras partes de sus integrantes y no más ..."

De lo anterior, tenemos que la facultad del Ayuntamiento de manejar el patrimonio de los Municipios proviene directamente de la Constitución Federal y sólo puede ser restringida o limitada por la Legislatura Estatal, cuando en uso de las facultades que le otorga la propia fracción II, inciso b), del artículo 115 de la Constitución Federal, estatuye como requisito para el acto de manejo del patrimonio municipal, la aprobación de una mayoría de las dos terceras partes del Ayuntamiento, sin que la actuación de la legislatura pueda exceder este marco.

Por tanto, debe declararse la plena inconstitucionalidad del artículo 132 mencionado, pues está impidiendo que el Ayuntamiento disponga de su patrimonio, excediendo con ello las facultades que la Constitución Federal le otorga en el artículo 115, fracción II, inciso b), que se reducen a la regulación de mayorías calificadas para efectos de la disposición de bienes del Municipio.

DÉCIMO SEGUNDO.-Por último, conviene precisar los efectos de la declaratoria de invalidez de los preceptos declarados inconstitucionales por este Alto Tribunal.

En primer lugar, conviene mencionar que por lo que se refiere a los artículos con respecto a los cuales se declaró la invalidez relativa, este Tribunal Pleno ya precisó los alcances y efectos de tal declaratoria, según se desprende de la lectura del considerando noveno de esta ejecutoria.

En consecuencia, a continuación se precisarán los efectos de la declaratoria de invalidez de los artículos de la Ley Orgánica

1/25/13 2:07 PM

Municipal para el Estado de Hidalgo que fueron declarados inconstitucionales, por las razones expresadas en el considerando anterior.

Dichos preceptos son los siguientes:

• Artículo 49, fracción III, en la parte que dice: "así mismo, los Municipios establecerán en su presupuesto de egresos, una partida destinada a desarrollar programas para la formación, capacitación y actualización de los miembros del Ayuntamiento y de la administración municipal, a fin de mejorar sus capacidades de gobierno, técnicas y administrativas"

• Artículo 49, fracción XVII, en la parte que dice: "La donación de inmuebles sólo procederá, cuando se destinen a la ejecución de obras de beneficio común y mediante el acuerdo de las dos terceras partes de los integrantes del Ayuntamiento"

• Artículo 49, fracción XXXI, en la parte que dice: "Los ingresos obtenidos por tasas adicionales, deberán destinarse íntegramente al objeto de su establecimiento y en ningún caso, por sí o de manera conjunta, rebasarán el 10% del monto que arroje la contribución base"

• Artículo 53, en la parte que dice: "dentro de diez días podrá devolverlo con observaciones procedentes para ser discutido nuevamente por aquél"

• Artículo 54.

• Artículo 125, primer párrafo, en la porción normativa que dice: "Para financiar su operación, el Ayuntamiento establecerá, conforme a sus recursos, la partida presupuestal correspondiente, no podrá ser ésta de un monto menor al 3% del total del presupuesto de egresos, independientemente de los recursos federales y estatales que se le transfieran."

• Artículo 132.

Lo anterior, en atención a lo dispuesto en la fracción IV del artículo 41 de la ley reglamentaria de la materia, que prevé:

"Artículo 41. Las sentencias deberán contener:

"...

"IV. Los alcances y efectos de la sentencia, fijando con precisión, en su caso, los órganos obligados a cumplirla, las normas generales o actos respecto de los cuales opere y todos aquellos elementos necesarios para su plena eficacia en el ámbito que corresponda. Cuando la sentencia declare la invalidez de una norma general, sus efectos deberán extenderse a todas aquellas normas cuya invalidez dependa de la propia norma invalidada."

A este respecto, el artículo 105, fracción I, penúltimo y último párrafos, de la Constitución Política de los Estados Unidos Mexicanos y el artículo 42 de su ley reglamentaria, prevén:

"Artículo 105. La Suprema Corte de Justicia de la Nación conocerá, en los términos que señale la ley reglamentaria, de los asuntos siguientes:

"I. De las controversias constitucionales que, con excepción de las que se refieran a la materia electoral, se susciten entre:

"...

"Siempre que las controversias versen sobre disposiciones generales de los Estados o de los Municipios impugnadas por los Estados, o en los casos a que se refieren los incisos c), h) y k) anteriores, y la resolución de la Suprema Corte de Justicia las declare inválidas, dicha resolución tendrá efectos generales cuando hubiera sido aprobada por una mayoría de por lo menos ocho votos.

"En los demás casos, las resoluciones de la Suprema Corte de Justicia tendrán efectos únicamente respecto de las partes en la controversia."

"Artículo 42. Siempre que las controversias versen sobre disposiciones generales de los Estados o de los Municipios impugnadas por la Federación, de los Municipios impugnadas por los Estados, o en los casos a que se refieren los incisos c), h) y k) de la fracción I del artículo 105 constitucional, y la resolución de la Suprema Corte de Justicia las declare inválidas, dicha resolución tendrá efectos generales cuando hubiera sido aprobada por una mayoría de por los menos ocho votos.

"En aquellas controversias respecto de normas generales en que no se alcance la votación mencionada en el párrafo anterior, el Pleno de la Suprema Corte de Justicia declarará desestimadas dichas controversias. En estos casos no será aplicable lo dispuesto en el artículo siguiente.

"En todos los demás casos las resoluciones tendrán efectos únicamente respecto de las partes en la controversia."

De acuerdo con los preceptos reproducidos, la declaratoria de invalidez decretada en esta ejecutoria tiene efectos exclusivamente entre las partes, toda vez que en el presente caso fue el Municipio de Pachuca, el que demandó a la Legislatura del Estado de Hidalgo la invalidez de la Ley Orgánica Municipal de esa misma entidad federativa, por lo que se coloca dentro de los supuestos previstos en el último párrafo de la fracción I del artículo 105 constitucional, así como el último párrafo del artículo 42 de la ley reglamentaria de la materia.

Por último, la declaratoria de invalidez surtirá efectos a partir de su publicación en el Diario Oficial de la Federación, por lo que las disposiciones generales declaradas inválidas ya no podrán aplicarse a partir de entonces al Municipio actor, en la inteligencia de que si dichas normas generales ya produjeron efectos, no operará la invalidez decretada respecto de éstos, de conformidad con lo dispuesto por el artículo 45, párrafo segundo, de la citada ley reglamentaria, que dispone que la declaración de invalidez de las sentencias no tendrá efectos retroactivos, salvo en materia penal.

Por lo expuesto y fundado, se resuelve:

PRIMERO.-Es procedente y parcialmente fundada la controversia constitucional promovida por el Municipio de Pachuca de Soto, Estado de Hidalgo, a través del síndico municipal.

SEGUNDO.-Se sobresee respecto del artículo 148 de la Constitución Política del Estado Libre y Soberano de Hidalgo, en términos del considerando segundo de esta ejecutoria.

TERCERO.-Se reconoce la validez de los artículos 1o., 3o., 5o., 10, 49, fracciones I, II, III, XVII, XXXI y XXXII, 52, fracciones III, VI, segundo párrafo, X, XV, XVI, XIX, XX, XXI, XXII, XXVII, XXXI, XLI, XLIX, XLII, XLIV, XLVI y LVII, 55, fracción II, 60, fracciones III y VIII, 62, fracción IV, 88, 100, 102, 103, salvo el último párrafo, 104, 111, 112, 114, 125, salvo el primer párrafo en la parte conducente, 126, fracciones I, II y III, 172, 173, 174, 175, 176, 177 y 178, y de los artículos transitorios primero, segundo, tercero, cuarto, séptimo y octavo de la Ley Orgánica Municipal del Estado de Hidalgo.

CUARTO.-Se declara la invalidez relativa de los artículos 21, 22, 37, 38, 39, 40, 43, 44, 45, 46, 47, 48, 49, fracción XXXVII, 51, 52, fracciones I, II, IV, V, VI, primer párrafo, VII, VIII, IX, XI, XII, XIII, XIV, XVII, XVIII, XXIII, XXIV, XXV, XXVI, XXVIII, XXIX, XXX, XXXII, XXXIII, XXXIV, XXXV, XXXVI, XXXVII, XXXVIII, XXXIX, XL, XLIII, XLV, XLVII, XLVIII, L, LI, LII, LIII, LIV, LV, LVI, LVIII; 55, fracciones I, III, IV, V, VI y VII, 60, fracciones I, II, IV, V, VI, VII, IX, X, XI, XII, XIII, XIV, XV, 62, fracciones I, II, III, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, 63, 64, 65, 66, 74, 75, 76, 77, 78, 79, 80, 81, 82, 91, 92, 93, 94, 95, 96, 97, 98, 99, 101, 103, último párrafo, 105, 106, 107, 108, 109, 110, 113, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 126, fracciones IV y V, 134, 137, 138, 139, 149, 150, 151, 152, 153 y 154 de la Ley Orgánica Municipal del Estado de Hidalgo, en términos del considerando noveno de esta ejecutoria.

QUINTO.-Se declara la invalidez de los artículos 49, fracción III, primer párrafo, en la parte que dice: "... así mismo, los Municipios establecerán en su presupuesto de egresos, una partida destinada a desarrollar programas para la formación, capacitación y actualización de los miembros del Ayuntamiento y de la administración municipal, a fin de mejorar sus capacidades de gobierno, técnicas y administrativas ..."; fracción XVII, en la parte que dice: "La donación de inmuebles sólo procederá, cuando se destinen a la ejecución de obras de beneficio común y mediante el acuerdo de las dos terceras partes de los integrantes del Ayuntamiento ...", fracción XXXI, en la parte que dice: "Los ingresos obtenidos por tasas adicionales, deberán destinarse íntegramente el objeto de su establecimiento y en ningún caso, por sí o de manera conjunta, rebasarán el 10% del monto que arroje la contribución base."; 53, en la parte que dice: "... dentro de diez días podrá devolverlo con observaciones procedentes para ser discutido nuevamente por aquél ..."; 54, 125, primer párrafo en la porción normativa que dice: "Para financiar su operación, el Ayuntamiento establecerá, conforme a sus recursos, la partida presupuestal correspondiente, no podrá ser ésta de un monto menor al 3% del total del presupuesto de egresos, independientemente de los recursos federales y estatales que se le transfieran."; y 132 de la Ley Orgánica Municipal del Estado de Hidalgo, en términos del considerando décimo primero de esta ejecutoria.

SEXTO.-Publíquese esta resolución el Diario Oficial de la Federación, en el Periódico Oficial del Estado Libre y Soberano de Hidalgo y en el Semanario Judicial de la Federación y su Gaceta.

Notifíquese; haciéndolo por medio de oficio a las partes y, en su oportunidad, archívese el expediente.

Así lo resolvió el Pleno de la Suprema Corte de Justicia de la Nación, el proyecto modificado se aprobó por unanimidad de diez votos, de los señores Ministros: Aguirre Anguiano, Cossío Díaz, Luna Ramos, Díaz Romero, Góngora Pimentel, Ortiz

Mayagoitia, Valls Hernández, Sánchez Cordero, Silva Meza y presidente Azuela Güitrón, excepto por lo que hace al reconocimiento de validez de los artículos del 172 al 178 de la Ley Orgánica Municipal del Estado de Hidalgo, propuesto en el resolutivo tercero, el que se aprobó por mayoría de seis votos de los señores Ministros Cossío Díaz, Luna Ramos, Góngora Pimentel, Ortiz Mayagoitia, Sánchez Cordero y Silva Meza; los señores Ministros Aguirre Anguiano, Díaz Romero, Valls Hernández y presidente Azuela Güitrón, votaron en contra y reservaron su derecho de formular voto de minoría; y el resolutivo cuarto, que se aprobó por mayoría de ocho votos de los señores Ministros Aguirre Anguiano, Cossío Díaz, Luna Ramos, Díaz Romero, Ortiz Mayagoitia, Valls Hernández, Sánchez Cordero y presidente Azuela Güitrón; los señores Ministros Góngora Pimentel y Silva Meza, votaron en contra; la señora Ministra Sánchez Cordero y el señor Ministro Góngora Pimentel formularon salvedades respecto de las consideraciones contenidas en los considerandos séptimo y octavo; los señores Ministros Góngora Pimentel y Silva Meza formularon salvedades respecto de las consideraciones contenidas en el considerando noveno. La señora Ministra Sánchez Cordero reservó su derecho de formular voto concurrente y los señores Ministros Silva Meza y Góngora Pimentel, reservaron su derecho de formular voto de minoría.

El señor Ministro presidente Azuela Güitrón declaró que el asunto se resolvió en los términos precisados y de conformidad con lo dispuesto en el artículo 44, primer párrafo, de la Ley Reglamentaria de las Fracciones I y II del Artículo 105 de la Constitución Política de los Estados Unidos Mexicanos, ordenó que la resolución se publique en el Diario Oficial de la Federación, en el Periódico Oficial del Gobierno del Estado Libre y Soberano de Hidalgo y en el Semanario Judicial de la Federación y su Gaceta. Por estar disfrutando de vacaciones, no asistió el señor Ministro José de Jesús Gudiño Pelayo.

Suprema Corte de Justicia de la Nación: Pino Suárez 2, Colonia Centro, Delegación Cuauhtémoc, C.P. 06065, México, D.F.
IDS-18

 

(55) 4113-1000

http://ius.scjn.gob.mx/paginas/DetalleGeneralScroll.aspx?id=19199&Clase=DetalleTesisEjecutorias                                    Page 222 of 222