Buscar

INICIO   MAPA DE SITIO   VÍNCULOS   CONTÁCTANOS

CONSULTA TRADICIONAL   GLOBAL   TEMÁTICA   ESPECIALES   ÍNDICES   CONSULTA POR CIRCUITO   AYUDA

**Consulta tradicional. Ejecutorias.**

Actualizado a noviembre 2012



| **Ejecutoria:** P./J. 93/99 | Semanario Judicial de la Federación y su Gaceta | Novena Época | **6215** 1 de 1 |
| --- | --- | --- | --- |
| | | Pág. 665 | |

**CONTROVERSIA CONSTITUCIONAL 31/97. AYUNTAMIENTO DEL MUNICIPIO DE TEMIXCO, MORELOS.**

PONENTE: MARIANO AZUELA GÜITRÓN.
SECRETARIO: HUMBERTO SUÁREZ CAMACHO.

México, Distrito Federal. Acuerdo del Tribunal Pleno de la Suprema Corte de Justicia de la Nación, correspondiente al día nueve de agosto de mil novecientos noventa y nueve.

VISTOS; Y,
RESULTANDO:

PRIMERO. Por escrito presentado el dieciséis de octubre de mil novecientos noventa y siete, ante la Oficina de Certificación Judicial y Correspondencia de la Suprema Corte de Justicia de la Nación, Antonio Domínguez Jarillo, Jorge Luis Lagunas González, Miguel Ángel Tovar Martínez, Héctor Cruz Gutiérrez, Beatriz Nieto Hernández, Rafael Juárez Solís, Juana Ocampo Domínguez, Gloria Morales Hernández, Leticia Delgado Morante, María del Carmen Romero Nápoles y José Luis García Salas, presidente municipal, síndico y regidores del Ayuntamiento de Temixco, Morelos, respectivamente, plantearon, a

nombre de éste, controversia constitucional en contra del Congreso y gobernador del Estado de Morelos, demandando lo siguiente:

IV. Norma general o acto de invalidez. Del Congreso del Estado de Morelos, se demanda la invalidez del Decreto Número Noventa y Dos mediante el cual se reconoce la jurisdicción del Municipio de Cuernavaca, Estado de Morelos, en las áreas geográficas que contiene dicha resolución, publicado en el Periódico Oficial 'Tierra y Libertad', Órgano del Gobierno del Estado de Morelos, de fecha tres de septiembre de mil novecientos noventa y siete. Del titular del Poder Ejecutivo Estatal, demandamos la invalidez de la publicación del Decreto Número Noventa y Dos emitido por el Congreso del Estado, toda vez que el artículo primero transitorio establece: Que dicho decreto iniciará su vigencia al día siguiente de su publicación en periódico oficial, con lo que al ordenarse su inclusión en el órgano oficial del Gobierno del Estado de Morelos iniciaron los efectos del acto cuya invalidez demandamos del Poder Legislativo del Estado de Morelos.

SEGUNDO. El Ayuntamiento actor invocó como preceptos violados los artículos 14 y 16 de la Constitución General de la República, señaló como tercero interesado al Ayuntamiento de Cuernavaca, Morelos, y precisó como hechos de su demanda los siguientes:

1. Mediante Decreto Número Setenta y Seis, publicado en el Periódico Oficial del Estado de Morelos, de fecha 5 de marzo de 1933, se creó el Municipio Libre de Temixco, integrado por los pueblos de Tetlama, Cuentepec, Acatlipa y el mismo Temixco, como cabecera municipal. Lo que acreditamos con la fotocopia del citado documento, que exhibimos como anexo uno. 2. Con el transcurso del tiempo, dentro del territorio con que inicialmente se dotó al Municipio de Temixco, han surgido nuevos centros de población, cuya adscripción municipal no ha quedado debidamente establecida, por lo que se ha requerido la constante intervención del honorable Congreso del Estado para que éste determine y declare bajo qué jurisdicción territorial municipal deben quedar los habitantes. Sirve de ejemplo el Decreto Número Ciento Setenta y Seis, publicado en el Periódico Oficial con fecha 31 de mayo de 1931, por el cual se declara que el centro de población fundado con el nombre de Palmira, con la nueva denominación de 'Pueblo Nuevo del Puente' se adiciona al Municipio de Temixco; y el Decreto Número Setenta y Cinco, publicado en el Periódico Oficial con fecha 22 de febrero de 1978, por el cual se declara que la colonia 'Lomas de Cuernavaca', pertenece al Municipio de Temixco, Morelos. Exhibimos dichas documentales, la primera en fotocopia y la segunda en ejemplar del Periódico Oficial, como anexos dos y tres. En los considerandos del Periódico Oficial de fecha 22 de febrero de 1978 se hace referencia a otro caso semejante, que nos permitimos transcribir para mejor apreciación: '... Que por Decreto 156 del 13 de noviembre de 1935 publicado el 2 de febrero de 1936 se eleva a la categoría de ranchería el centro de población denominado «Pueblo Viejo» y se adiciona al Municipio de Cuernavaca y en

el artículo 3o., se reforma el artículo 9o., de la Ley de División Territorial del Estado señalando que corresponde a la circunscripción del Municipio de Cuernavaca, diversos centros de población sin incluir Palmira; que por Decreto Número 12 del 13 de julio de 1956 publicado el 8 de agosto del mismo año, segrega de Cuernavaca el Centro de Población denominado «Pueblo Viejo» y se anexa a Temixco ...'. 3. Como se desprende de las documentales antes mencionadas, los conflictos que por falta de una adecuada delimitación territorial han tenido los Municipios de Cuernavaca y Temixco datan desde la creación del que representamos, lo que afecta directamente al Municipio de Temixco desde varios aspectos como son el político, el hacendario, el de prestación de servicios públicos y, principalmente el patrimonial, que nosotros como Ayuntamiento estamos obligados a defender. 4. Con fecha 12 de diciembre de 1996 el entonces, secretario general de Gobierno del Estado de Morelos, Lic. Guillermo Malo Velasco, remitió al Congreso del Estado de Morelos una iniciativa de decreto por el que se reconoce la jurisdicción del Municipio de Cuernavaca, Morelos, en las áreas geográficas a que se refiere dicha resolución. En la iniciativa de referencia el Gobernador Constitucional del Estado, establece que la Ley de División Territorial para el Estado de Morelos, vigente desde el 23 de abril de 1934 no resuelve con exactitud los límites territoriales de los Municipios de Cuernavaca y Temixco, lo que ha originado confusión entre las autoridades de ambos gobiernos municipales, por lo que somete el contenido de su iniciativa de decreto a la soberanía del Poder Legislativo para que con base en las facultades que la ley le asigna, resuelva en definitiva respetando el derecho de audiencia de los Ayuntamientos involucrados y escuchando la opinión del Poder Ejecutivo Local. 5. Con fecha 25 de agosto de 1997, el Congreso del Estado de Morelos, remitió al Gobernador Constitucional del Estado de Morelos el Decreto Número Noventa y Dos para su publicación en el Periódico Oficial. 6. Con fecha 3 de septiembre de 1997 se publicó en el Periódico Oficial 'Tierra y Libertad', Órgano del Gobierno del Estado Libre y Soberano de Morelos, el Decreto Número Noventa y Dos por el 'que se reconoce la jurisdicción del Municipio de Cuernavaca, Estado de Morelos, en las áreas geográficas a que se refiere esta resolución ...'. 7. Con fecha 23 de septiembre del año en curso, por oficio de fecha 19 del mismo mes, ese Congreso notificó, exclusivamente, al presidente municipal de Temixco, el decreto a que nos hemos referido, para que éste le dé el debido cumplimiento y efectos legales correspondientes. Como se aprecia de la lectura de dicha documental, una vez más el Poder Legislativo insiste en no darle audiencia al Ayuntamiento, pues sólo notifica al presidente municipal.

TERCERO. El Ayuntamiento actor expresó los conceptos de invalidez que a continuación se reproducen:

Primero: El Decreto Número Noventa y Dos, debe ser invalidado porque viola en perjuicio de nuestra representada lo dispuesto por el artículo 14 de la Constitución Política de los Estados Unidos Mexicanos, en la parte que refiere que 'Nadie podrá ser privado de la vida, de la libertad o de sus propiedades, posesiones o derechos, sino mediante juicio seguido ante los tribunales previamente establecidos, en el que se cumplan las formalidades esenciales del procedimiento ...'. En la

especie, y como se desprende del contenido del Decreto Número Noventa y Dos, el Congreso del Estado de Morelos, sin cumplir con la garantía de audiencia al Ayuntamiento de Temixco, le priva de diversas superficies de terreno como son las precisadas en el cuerpo de dicha resolución en la parte que a continuación se transcribe: '... Se reconoce dentro de la jurisdicción de Cuernavaca, de esta entidad federativa, las áreas geográficas ubicadas al sur de la ciudad de Cuernavaca, Morelos, correspondiente al ex-ejido de Chipitlán, con superficies de 134,562.00 metros cuadrados, 520,724.00 metros cuadrados, 47,830.00 metros cuadrados, 381,770.00 metros cuadrados, 1,081,507.00 metros cuadrados y 290,233.00 metros cuadrados ...'. La afirmación en el sentido de que no se respetó la garantía de audiencia al Ayuntamiento de Temixco tiene su fundamento en lo dispuesto por el artículo 7o. de la Ley Orgánica Municipal del Estado de Morelos, que a la letra dice: 'Artículo 7o. La creación y supresión de Municipios, modificación de sus territorios, cambios de residencia de sus cabeceras municipales y las cuestiones que se susciten sobre límites intermunicipales, serán resueltas por la Legislatura del Estado, con audiencia de los Ayuntamientos afectados y opinión del Ejecutivo Estatal.'. El artículo 115 fracción III de la Constitución Política del Estado Libre y Soberano de Morelos, dice: 'El gobierno del Municipio se ejercerá por un Ayuntamiento de elección popular directa que se renovará cada tres años. Los Ayuntamientos se integrarán con un presidente municipal y un síndico; además con los regidores electos en el número que determine la ley ...'. El artículo 31 de la Ley Orgánica de los Municipios del Estado de Morelos, establece: 'Los Ayuntamientos, que se renovarán cada tres años, se integrarán con un presidente municipal y un síndico electos por el sistema de mayoría relativa y, además, con los regidores electos por el principio de representación proporcional ...'. Como se desprende de la lectura del considerando único del Decreto Número Noventa y Dos que se impugna, la demandada reconoce que '... deben ser escuchados en audiencia, por el Congreso del Estado, Ayuntamientos afectados, finalmente se determina que el Congreso debe de recibir la opinión del titular del Poder Ejecutivo, respecto de los conflictos de límites territoriales entre Municipios del Estado, esta soberanía apegada al orden jurídico vigente, en su oportunidad, de manera respetuosa hizo comparecer ante el seno de la misma, a los señores presidentes municipales de Cuernavaca y de Temixco, Sergio Estrada Cajigal Ramírez y Antonio Domínguez Jarillo, respectivamente, quienes fueron escuchados en audiencia en dos ocasiones ...'. Como se desprende de la transcripción que antecede, en el trámite realizado por el Congreso del Estado de Morelos, por el cual se determinó que las distintas superficies de terreno que se reconocieron al Municipio de Cuernavaca, por el Decreto Número Noventa y Dos, publicado en el Periódico Oficial el 3 de septiembre de 1997, no se respetó la garantía de audiencia al Ayuntamiento de Temixco, el cual se integra no solamente por el presidente municipal, sino también por el síndico y por los regidores, por lo que, a pesar de que se hubiera convocado al primero, si no se escucha a todos los integrantes del Ayuntamiento, el procedimiento resulta ilegal y nulo en todas sus partes, ya que no se cumple con disposiciones de orden público, como es la garantía que otorga el precepto que se viola en perjuicio de nuestra representada. Son aplicables al presente caso las jurisprudencias que ha sustentado la Suprema Corte de Justicia de la Nación, que a continuación transcribimos: 'AUDIENCIA,

GARANTÍA DE. CARGA DE LA PRUEBA PARA LA AUTORIDAD RESPONSABLE. La afirmación del quejoso en el sentido de que no se le citó ni se le oyó en defensa, que integra una negativa, obliga a las responsables a demostrar lo contrario, para desvirtuar la violación del artículo 14 constitucional que se reclama. Sexta Época, Tercera Parte: Vol. VIII, pág. 10. A.R. 5804/57. Santiago Nieto Lara y coagraviados. Unanimidad de 4 votos. Séptima Época, Tercera Parte: Vol. 61, pág. 25. A.R. 3494/73. J. Jesús Barragán Valencia y otros. 5 votos. Vol. 62, pág. 25. A.R. 2667/73. Samuel Mondragón Quezadas. 5 votos. Vol. 63, pág. 24. A.R. 1917/73. Vicente Brambila Albertos. Unanimidad de 4 votos. Vol. 66, pág. 49. A.R. 4055/73. Otilia Flores Cabrera. 5 votos.'. 'AUDIENCIA, GARANTÍA DE. ACTOS ADMINISTRATIVOS. Dentro de nuestro sistema constitucional no basta que una autoridad tenga atribuciones para dictar alguna determinación, para que ésta se considere legal e imperiosamente obedecible; máxime cuando tal determinación es revocatoria de otra anterior otorgada en favor de algún individuo. Los artículos 14 y 16 de la Constitución General de la República imponen a todas las autoridades del país la obligación de oír en defensa a los posibles afectados con tales determinaciones, así como la de que éstas, al pronunciarse, se encuentren debidamente fundadas y motivadas. Sexta Época, Tercera Parte: Vol. XV, página 33. A.R. 7225/57. Benjamín Romero Villa. 4 votos. Vol. XIX, página 47. A.R. 5501/58. Laboratorios Doctomex, S.A. 4 votos. Vol. XXIII, página 9. A.R. 5723/98. Laboratorios Liomont, S.A. 5 votos. Vol. XXXII, página 35. A.R. 2988/59. Meade Johnson de México, S.A. 4 votos. Vol. XXXIII, página 21. A.R. 2125/59. Antonio García Michel. 5 votos.'. 'AUDIENCIA, GARANTÍA DE. DEBE RESPETARSE AUNQUE LA LEY EN QUE SE FUNDE LA RESOLUCIÓN NO PREVEA EL PROCEDIMIENTO PARA TAL EFECTO. La circunstancia de que no exista en la ley aplicable precepto alguno que imponga a la autoridad responsable la obligación de respetar a alguno de los interesados la garantía de previa audiencia para pronunciar la resolución de un asunto, cuando los actos reclamados lo perjudican, no exime a la autoridad de darle oportunidad de oírlo en defensa, en atención a que, en ausencia de precepto específico, se halla el mandato imperativo del artículo 14 constitucional que protege dicha garantía a favor de todos los gobernados, sin excepción. Sexta Época. Tercera Parte: Vol. 26, pág. 122. A.R. 2462/70. Poblado «Villa Rica», Municipio de Actopan, Ver. 5 votos. Vol. 26, pág. 122. A.R. 4722/70. Poblado de las Cruces, hoy Francisco I. Madero, Municipio de Lagos de Moreno, Jalisco. 5 votos. Vol. 63, pág. 25. A.R. 3372/73. Carmen Gómez de Mendoza. 5 votos. Vol. 63, pág. 25. A.R. 2422/73. Adolfo Cárdenas Guerra. 5 votos.'. Segundo: Igualmente el acto impugnado debe ser invalidado porque viola en nuestro perjuicio lo dispuesto por el artículo 14 constitucional, ya que no cumple con las formalidades que exige la ley, puesto que en el presente caso el Congreso del Estado no respeta la disposición de orden público y obligatoria que establece el propio artículo 7o. de la Ley Orgánica de los Municipios del Estado de Morelos, el cual exige que el conflicto sobre límites intermunicipales será resuelto con audiencia de los Ayuntamientos y 'opinión del Ejecutivo Estatal'. En el presente asunto el Congreso del Estado no cumple con la formalidad antes indicada, incurriendo en violación a lo dispuesto por el precepto antes citado, ya que la opinión del Ejecutivo Estatal debe ser posterior al ofrecimiento y desahogo de las pruebas que ofrezcan los Ayuntamientos en conflicto, después de que hubieran argumentado lo que a sus derechos

conviniera, y no antes de dicha etapa, de lo que resulta que al establecer la responsable que '... en virtud de que la iniciativa que busca resolver el conflicto de límites territoriales, entre Cuernavaca y Temixco, fue presentada por el titular del Poder Ejecutivo, consideramos innecesario solicitar su opinión, ya que por lógica, si el titular del Ejecutivo presentó la iniciativa, en la misma se contiene su opinión ...', incurre en nuevas violaciones a la garantía de legalidad procesal. A mayor abundamiento, debe decirse que la demandada hace una incorrecta interpretación de lo dispuesto por el artículo 7o. de la Ley Orgánica de los Municipios del Estado de Morelos, pues al considerar que la opinión del Ejecutivo Estatal ya no es necesaria porque ésta se contiene en la iniciativa de decreto que él envía, prejuzga acerca de lo que pudiera manifestar una vez que los presidentes municipales fueron escuchados en audiencia. Tercero: También se considera como concepto de invalidez el hecho de que el decreto multimencionado ocasiona agravios a nuestra representada toda vez que no se cumplieron las formalidades esenciales del procedimiento para que se dictara una resolución por la cual se priva al Municipio de Temixco de una gran parte de su territorio. A saber, el Congreso no hace un correcto análisis y valoración de las pruebas que se ofrecieron por el presidente municipal de Temixco para acreditar que el territorio que se reconoce en el decreto como del Municipio de Cuernavaca, en realidad pertenece a Temixco, pues solamente se limitan a enunciar las documentales unilaterales que le fueron presentadas por el presidente de Cuernavaca, sin que expresen qué valor probatorio les merecen, y sin que establezcan por qué las pruebas que ofreció el de Temixco carecen de valor o no son de tomarse en consideración. Como se desprende del decreto que se impugna, el Congreso le otorga un valor preponderante a las documentales con números 1, 2 y 4, de las cuales la demandada hace una tergiversación respecto al manejo que hace la autoridad federal al otorgar tierras al poblado de Chipitlán, como se aprecia del texto siguiente: '1. Acta de posesión y deslinde, al Ejido de Chipitlán del 12 de febrero de 1936, donde se dice que pertenece al Municipio de Cuernavaca ...'. El texto original dice: 'Primero. Es procedente la ampliación de ejido solicitada por los vecinos del poblado de Chipitlán, Municipio de Cuernavaca, del Estado de Morelos ...'. De lo anterior resulta que el ejido de Chipitlán no es lo mismo que el Poblado de Chipitlán, además que, la experiencia nos dicta que existen ejidos que abarcan territorio de más de un Municipio, por lo que no es determinante que el ejido se denomine Chipitlán o que la dotación de tierras se haga a los habitantes de dicho poblado, lo que sí puede ser determinante y que la demandada no tomó en consideración es que las tierras de que se dispuso para el ejido y su posterior ampliación provienen íntegramente de la antigua Hacienda de 'Temixco', lo que sirve para señalar que los territorios que han quedado asignados a Cuernavaca, por virtud del Decreto Número Noventa y Dos, realmente pertenecen al Municipio de Temixco y no considerarlo así viola la garantía que señalamos, pues se priva a nuestra representada del territorio que le corresponde en un procedimiento donde no se cumplen las formalidades esenciales. Las documentales que aquí mencionamos y que no se exhiben, obran en el archivo de la demandada, por lo que deberán aportarse por ésta al momento de dar contestación a la demanda. Cuarto: El Congreso del Estado hoy demandado viola en nuestro perjuicio la garantía de fundamentación y motivación establecida por el artículo

16 de la Constitución Federal, que precisa: '... Nadie puede ser molestado en su persona, familia, domicilio, papeles o posesiones, sino en virtud de mandamiento escrito de la autoridad competente, que funde y motive la causa legal del procedimiento ...'. En el caso que nos ocupa, la demandada no cumple con dicha disposición constitucional, pues como se aprecia de la lectura del decreto que emite no expone los fundamentos jurídicos directamente aplicables al trámite que realiza y mucho menos expresa los razonamientos lógico-jurídicos que le hacen arribar a la conclusión en el sentido de que las diversas fracciones de tierra pertenecen al Municipio de Cuernavaca. Consideramos que las expresiones contenidas en el Decreto Noventa y Dos que se impugna no satisfacen el requerimiento constitucional contenido en el artículo 16, al respecto son de aplicarse las siguientes jurisprudencias y tesis: 'FUNDAMENTACIÓN Y MOTIVACIÓN, GARANTÍA DE. Para que la autoridad cumpla la garantía de legalidad que establece el artículo 16 de la Constitución Federal en cuanto a la suficiente fundamentación y motivación de sus determinaciones, en ellas debe citar el precepto legal que le sirva de apoyo y expresar los razonamientos que la llevaron a la conclusión de que el asunto concreto de que se trata, que las origina,encuadra en los presupuestos de la norma que invoca. Sexta Época, Tercera Parte: Vol. CXXXII, pág. 49. A.R. 8280/67. Augusto Vallejo Olivo. 5 votos. Vol. CXXXIII, pág. 63. A.R. 9598/67. Óscar Leonel Velasco Casas. 5 votos. Vol. CXXXIII, pág. 63. A.R. 7228/67. Comisariado Ejidal del Poblado San Lorenzo Tezonco, Ixtapalapa, D.F. y otros. 5 votos. Séptima Época, Tercera Parte: Vol. 14, pág. 37. A.R. 3717/69. Elías Chaín. 5 votos. Vol. 28, pág. 111. A.R. 4115/68. Emeterio Rodríguez Romero y coag. 5 votos.'. 'MOTIVACIÓN, CONCEPTO DE. La motivación exigida por el artículo 16 constitucional consiste en el razonamiento, contenido en el texto mismo del acto autoritario de molestia, según el cual quien lo emitió llegó a la conclusión de que el acto concreto al cual se dirige se ajusta exactamente a las prevenciones de determinados preceptos legales. Es decir, motivar un acto es externar las consideraciones relativas a las circunstancias de hecho que se formula la autoridad para establecer la adecuación del caso concreto a la hipótesis legal. Sexta Época, Tercera Parte: Vol. LXXVI, pág. 44. A.R. 4862/59. Pfizer de México, S.A. 5 votos.'. De acuerdo con lo expuesto en el presente escrito, la demandada emitió un acto que lesiona los derechos patrimoniales del Municipio de Temixco, Morelos, que los suscritos integrantes del Ayuntamiento de ese lugar, tenemos la obligación de proteger, sin que se haya apegado totalmente a derecho, conculcándole las garantías constitucionales establecidas en los artículos 14 y 16, por lo que debe declararse inválida dicha resolución, ordenando que se realice el procedimiento respectivo respetando la garantía de audiencia y de legalidad que hasta el momento no se han respetado."

CUARTO. Por acuerdo de veintiuno de octubre de mil novecientos noventa y siete, el presidente de la Suprema Corte de Justicia de la Nación mandó formar y registrar el expediente relativo a la presente controversia constitucional. Asimismo, ordenó entregar los autos al Ministro Mariano Azuela Güitrón, a quien le correspondió actuar como instructor del procedimiento.

En proveído de veintitrés de octubre de mil novecientos noventa y siete, el Ministro instructor designado admitió la demanda en la vía de controversia constitucional propuesta; ordenó emplazar mediante oficio, a través de los despachos correspondientes, a las autoridades demandadas y entidad tercero interesada, así como dar vista con la demanda al procurador general de la República. En el mismo proveído ordenó formar por separado el incidente de suspensión respectivo.

QUINTO. En escritos presentados el veintisiete de noviembre de mil novecientos noventa y siete (fojas 133 a 145 y 146 a 159), Jorge Carrillo Olea, gobernador del Estado de Morelos, y Emma Margarita Alemán Olvera, en su carácter de presidenta del Congreso de dicha entidad federativa, respectivamente, dieron contestación a la demanda promovida en contra de las autoridades mencionadas.

Asimismo, por escrito de veintiuno del mes y año citados, David Jaime Campos Gómez Marín, síndico procurador del Ayuntamiento de Cuernavaca, Morelos, realizó diversas manifestaciones a nombre de dicha entidad, en su carácter de tercero interesado (fojas 160 a 166).

SEXTO. Por auto de siete de enero de mil novecientos noventa y ocho, el Ministro instructor dio vista al Ayuntamiento actor, al tercero interesado y al procurador general de la República con la contestación de las autoridades demandadas.

El Ayuntamiento actor desahogó la vista en términos de su escrito presentado el veintinueve de enero de mil novecientos noventa y ocho (fojas 178 a 180).

SÉPTIMO. El procurador general de la República desahogó las vistas concedidas por el Ministro instructor, mediante escrito presentado el treinta de enero de mil novecientos noventa y ocho (fojas 182 a 237), en que solicitó sobreseer la controversia respecto de los regidores del Ayuntamiento de Temixco, Morelos, declarar infundados los conceptos de invalidez propuestos por el actor, constatar la validez del decreto impugnado y que, una vez que sean fijados los límites territoriales a que se refiere dicho acto, sean llevados a la Ley de División Territorial y Bandos de Policía y Buen Gobierno de los Municipios en conflicto.

El cuatro de marzo de mil novecientos noventa y ocho tuvo verificativo la audiencia prevista en los artículos 29 y 34 de la Ley Reglamentaria de las Fracciones I y II del Artículo 105 de la Constitución Política de los Estados Unidos Mexicanos, tras lo cual, se pasaron los autos al Ministro instructor para la elaboración del proyecto de resolución relativo.

CONSIDERANDO:

PRIMERO. Este Tribunal Pleno de la Suprema Corte de Justicia de la Nación es competente para conocer y resolver la presente controversia constitucional, de conformidad con lo dispuesto por los artículos 105, fracción I, inciso i), de la Constitución Política de los Estados Unidos Mexicanos, 1o. de la Ley Reglamentaria de las Fracciones I y II de dicho precepto, y 10, fracción I, de la Ley Orgánica del Poder Judicial de la Federación, en virtud de que se plantea un conflicto entre un Estado y uno de sus Municipios.

SEGUNDO. La demanda de controversia constitucional fue presentada en tiempo, por las razones que a continuación se expresan.

Conforme al artículo primero transitorio del Decreto Número Noventa y Dos que se impugna, publicado en el Periódico Oficial del Estado de Morelos el tres de septiembre de mil novecientos noventa y siete, su vigencia correría a partir del día siguiente, esto es, el cuatro del citado mes y año. Asimismo, el Ayuntamiento actor manifiesta que le fue notificado personalmente el decreto que impugna el veintitrés de dicho mes y año, manifestación que se corrobora con la copia certificada de la correspondiente notificación, que obra en la foja 124 de autos.

Sobre el particular, cabe destacar que si bien el decreto que se controvierte no reviste el carácter de norma general en sentido formal, sino de una resolución que dirime un conflicto, como sus efectos se traducen en reconocer una extensión territorial como parte del Municipio de Cuernavaca, sobre la cual había ejercido su jurisdicción el Ayuntamiento actor, puede decirse que también tiene la naturaleza de un acto que produce efectos generales, dado que éstos afectan directamente a los habitantes del territorio relativo, al no estar ya sujetos a la jurisdicción del Municipio de Temixco sino al de Cuernavaca.

Respecto de la oportunidad de la demanda, el artículo 21, fracciones I y II, de la Ley Reglamentaria de las Fracciones I y II del Artículo 105 de la Constitución Federal, textualmente establece:

"Artículo 21. El plazo para la interposición de la demanda será:
"I. Tratándose de actos, de treinta días contados a partir del día siguiente al en que conforme a la ley del propio acto surta efectos la notificación de la resolución o acuerdo que se reclame; al en que se haya tenido conocimiento de ellos o de su ejecución; o al en que el actor se ostente sabedor de los mismos;

"II. Tratándose de normas generales, de treinta días contados a partir del día siguiente a la fecha de su publicación, o del día siguiente al en que se produzca el primer acto de aplicación de la norma que dé lugar a la controversia."

Dados los plazos establecidos en la ley para la promoción de la controversia constitucional, con independencia de la naturaleza jurídica que se le atribuya al Decreto Número 92 que contiene la resolución al conflicto de límites entre los Municipios de Cuernavaca y Temixco, debe concluirse que la demanda presentada en la oficialía de partes de la Suprema Corte de Justicia de la Nación el dieciséis de octubre del propio año, invariablemente se interpuso en tiempo, pues aun de considerarla como una norma general se advierte su oportunidad, dado que el cómputo realizado conforme a la fracción II, del precepto transcrito, revela su presentación en el vigésimo noveno día hábil, dentro del plazo de treinta días hábiles que se establece para tal efecto debiéndose descontar en el cómputo respectivo los días seis, siete, trece, catorce, quince, dieciséis, veinte, veintiuno, veintisiete y veintiocho de septiembre, cuatro, cinco, once y doce de octubre, por haber sido inhábiles en este Alto Tribunal. Por consiguiente, de estimar que el decreto impugnado se trata de un acto concreto, debe tomarse como fecha de su conocimiento por el actor el veintitrés de septiembre del citado año, conforme a lo dispuesto en la fracción I del precepto en comento, fecha posterior a su publicación y entrada en vigor, por lo que igualmente la promoción del juicio resulta oportuna bajo esta óptica.

TERCERO. Por razón de orden lógico, se examina en primer término la procedencia de la controversia constitucional, en cuanto a la representación de quienes promueven a nombre del Ayuntamiento actor, de conformidad con lo dispuesto en el último párrafo del artículo 19 de la Ley Reglamentaria de las Fracciones I y II del Artículo 105 de la Constitución Política de los Estados Unidos Mexicanos.

Para tal efecto, se atiende, en primer lugar, a las consideraciones que, en torno a la representación de la parte actora, expresa el procurador general de la República:

"1. El Municipio de Temixco, Morelos, comparece a juicio por medio del presidente, síndico y regidores del Ayuntamiento. La representación jurídica del Municipio recae en el presidente y síndico municipales, atento a lo dispuesto por los artículos 55, fracción I y 60, fracción III, de la Ley Orgánica Municipal del Estado de Morelos, que a la letra dicen: 'Artículo 55. El presidente municipal es el representante político, jurídico y administrativo del Ayuntamiento ... I. a XXX. ...', 'Artículo 60. Los síndicos de los Ayuntamientos tendrán las siguientes atribuciones: I. a II. ... III. Asumir la representación jurídica del Ayuntamiento para el eficaz desempeño de sus funciones; IV. a IX. ...'. Por otra parte, el artículo 63 de la mencionada ley, en

ningún momento le confiere la representación jurídica del Municipio a los regidores. En opinión del suscrito, la representación legal del Municipio de Temixco, Morelos, está plenamente comprobada, por lo que hace al presidente y síndico municipales, pero deberá sobreseerse en la demanda respecto de los regidores del Municipio."

En las manifestaciones transcritas, se establece que el Ayuntamiento actor se encuentra debidamente representado a través del presidente y síndico municipales, pero como la demanda fue firmada también por sus regidores, deberá existir pronunciamiento de este Alto Tribunal en el sentido de sobreseer respecto de estos funcionarios, al no conferirles la ley atribuciones de representación.

Con objeto de examinar la objeción aludida, se hace necesario distinguir entre legitimación en la causa y legitimación en el proceso. La legitimación en la causa se suele identificar con la vinculación que existe entre quien invoca un derecho sustantivo y el derecho mismo, que hace valer ante los órganos jurisdiccionales cuando ese derecho es violado o desconocido; la segunda es un presupuesto procesal que se refiere a la capacidad de las partes para ejecutar válidamente actos procesales y, por tanto, es condición para la validez formal del juicio.

La legitimación en la causa se traduce, pues, en la afirmación que hace una parte sobre la existencia de un derecho sustantivo cuya aplicación y respeto pide al órgano jurisdiccional por encontrarse frente a un Estado actual. Por su parte, la legitimación procesal se identifica con la capacidad para realizar actos jurídicos de carácter procesal en un juicio determinado, frecuentemente en nombre y representación de otra persona.

Al respecto, son aplicables la tesis relacionada a la jurisprudencia número 1030, visible a fojas 1664, Segunda Parte, Salas y Tesis Comunes, del Apéndice al Semanario Judicial de la Federación 1917-1988, y la XV/97, sustentada por la Primera Sala de esta Suprema Corte, que respectivamente dicen:

"LEGITIMACIÓN PROCESAL ACTIVA. CONCEPTO. Por legitimación procesal activa se entiende la potestad legal para acudir al órgano jurisdiccional con la petición de que se inicie la tramitación del juicio o de una instancia. A esta legitimación se le conoce con el nombre de ad procesum y se produce cuando el derecho que se cuestionará en el juicio es ejercitado en el proceso por quien tiene aptitud para hacerlo valer, a diferencia de la legitimación ad causam que implica tener la titularidad de ese derecho cuestionado en el juicio. La legitimación en el proceso se produce cuando la acción es ejercitada en el juicio por aquel que tiene aptitud para hacer valer el derecho que se cuestionará, bien porque se ostente como titular de ese derecho o bien porque cuente con la representación legal de dicho titular. La legitimación ad procesum es requisito para la

procedencia del juicio, mientras que la ad causam, lo es para que se pronuncie sentencia favorable."

"CONTROVERSIAS CONSTITUCIONALES. LEGITIMACIÓN EN LA CAUSA Y EN EL PROCESO. La legitimación en la causa, entendida como el derecho sustantivo para poder ejercer la acción, y la legitimación en el proceso, entendida como la capacidad para representar a una de las partes en el procedimiento, son aspectos de carácter procesal que, para el caso de las controversias constitucionales, se cumplen de la siguiente manera: 1. Conforme a lo dispuesto por el artículo 10, fracción I, de la Ley Reglamentaria del Artículo 105 de la Constitución Federal, solamente tienen derecho para acudir a la vía de controversia constitucional las entidades, poderes u órganos a que se refiere el citado precepto fundamental; de esto se sigue que son estos entes públicos a los que, con tal carácter, les asiste el derecho para ejercer la acción de referencia; y 2. De conformidad con lo dispuesto por el primer párrafo del artículo 11 de la ley reglamentaria, atento el texto de la norma y el orden de los supuestos que prevé, el órgano jurisdiccional, primero debe analizar si la representación de quien promueve a nombre de la entidad, poder u órgano, se encuentra consignada en ley y, en todo caso, podrá entonces presumirse dicha representación y capacidad, salvo prueba en contrario."

Ahora bien, la demanda aparece suscrita por el presidente municipal constitucional, el síndico procurador y los regidores integrantes del Ayuntamiento de Temixco (foja 8).

Cabe destacar que conforme a los artículos 55 y 60 de la Ley Orgánica Municipal del Estado de Morelos, transcritos en el pedimento del procurador general de la República, la representación jurídica de los Ayuntamientos recae tanto en el presidente como en el síndico procurador municipales, por lo que procede concluir que dichos funcionarios que suscriben la demanda cuentan con la legitimación procesal que justifica su actuación formal en representación del Municipio actor.

No ocurre lo mismo con los regidores del Ayuntamiento de Temixco, pues del contenido de los preceptos a que se alude en el párrafo anterior no se aprecia que cuenten con facultades de representación jurídica de la entidad, sin que ninguna otra disposición les faculte a actuar con tal carácter, lo que lleva a declarar fundada la objeción en cuanto a su legitimación procesal. Sin embargo, la conclusión anterior no conduce a sobreseer en el juicio respecto de dichas autoridades como propone el procurador general de la República.

En efecto, en el asunto que se resuelve, la parte actora resulta ser únicamente el Ayuntamiento de Temixco, Morelos, y no sus miembros integrantes de manera individual, tal y como se advierte del proemio de la demanda y del acuerdo que la admitió a trámite el veintitrés de octubre de mil novecientos noventa y siete, y siendo el sobreseimiento una declaratoria

referida a la legitimación en la causa, por cuanto produce el efecto jurídico de dejar sin resolver la acción intentada por la actora, tal decisión no puede dirigirse a las personas que no han justificado la representación con que se ostentan, porque las determinaciones que lleguen a tomarse en la controversia constitucional deberán tener efectos solamente en relación con las entidades demandante y demandadas, mas no pueden alcanzar también a quienes promueven en nombre de la primera, como propone el representante social, dado que ellas no tienen un derecho sustantivo propio que deducir y, por tanto, no son parte en el juicio.

En las apuntadas condiciones y tomando en consideración que entre las autoridades que suscribieron la demanda se encuentran el presidente municipal y el síndico procurador del Ayuntamiento de Temixco, Morelos, quienes acreditaron que ocupan los cargos con que se ostentan, en términos de la relación de los miembros de los Ayuntamientos y al Congreso del Estado de Morelos, electos el dieciséis de marzo de mil novecientos noventa y siete, publicada en el Periódico Oficial de la entidad de treinta de mayo siguiente (fojas 10 a 13), debe concluirse que se encuentra debidamente acreditada la legitimación procesal de la parte actora en relación con lo dispuesto en el artículo 11 de la Ley Reglamentaria de las Fracciones I y II del Artículo 105 de la Constitución Federal.

CUARTO. Para continuar con el examen de la procedencia del juicio, se atiende al escrito de contestación de la demanda a cargo del gobernador del Estado de Morelos, en que se refirió a los antecedentes de la demanda en la forma que a continuación se transcribe:
"1. Es cierto que con fecha 5 de marzo de 1933, se creó el Municipio de Temixco, Estado de Morelos, con los pueblos denominados Tetlama, Cuentepec, Acatlipa y Temixco. Al respecto se hace notar a ustedes señores Ministros que los demandantes están confesando qué pueblos constituyen al Municipio de Temixco, luego entonces, el poblado de Chipitlán, Morelos, no pertenece a dicho Municipio, sino todo lo contrario como se señaló en el decreto atacado de invalidez, forma parte del Municipio de Cuernavaca, Morelos, lo cual deberá de tomarse en consideración al momento de resolver. 2. Por cuanto a este hecho el mismo es cierto en parte, dado que con el crecimiento ésta ha buscado nuevos espacios donde habitar, lo que origina desde luego, el nacimiento de nuevos centros de población, particularmente en el área conurbada de Cuernavaca y Temixco, por lo cual efectivamente ya se ha decretado a la fecha el centro de población de Palmira, con la denominación de Pueblo Nuevo del Puente y la colonia Lomas de Cuernavaca, puntualizando que dichas poblaciones efectivamente se encuentran dentro de la jurisdicción del Municipio de Temixco, Morelos, como ya se ha decretado oportunamente; ahora bien, se aclara que tal caso no ocurre con el área ubicada entre la calle Bugambilias y el ejido de Chipitlán, donde actualmente se asienta la colonia 'Los Pilares', con una superficie de 134,562 metros cuadrados; también el área ubicada entre la avenida Morelos Sur y la colonia El Polvorín donde actualmente se asienta la colonia Ampliación

Lázaro Cárdenas (Los Guayabos), con una superficie de 47,830 metros cuadrados; igualmente, el área ubicada entre la avenida Morelos Sur y barranca del Pollo, donde actualmente se asienta la colonia 'Adolfo López Mateos', con una superficie de 381,770 metros cuadrados; asimismo, el área geográfica ubicada entre la calle Gloria Almada de Bejarano, Barranquilla y la autopista México-Acapulco en la que actualmente se asienta la colonia Lázaro Cárdenas, con una superficie de 1'081,507.00 metros cuadrados; y por último, el área ubicada entre la autopista México-Acapulco y el río Apatlaco, donde actualmente se asienta la colonia 'Loma Bonita' (segunda ampliación Lázaro Cárdenas), con una superficie de 290,233 metros cuadrados, centros de población que se encuentran precisamente dentro de la jurisdicción del Municipio de Cuernavaca, Morelos, lo cual fue analizado, motivado y fundado en el decreto de fecha 28 de agosto de 1997, por tanto, la aseveración quehacen los demandantes en este hecho no significa que dichas poblaciones pertenezcan por el solo antecedente anterior al Municipio de Temixco, sino todo lo contrario pertenecen al Municipio de Cuernavaca, Morelos. 3. Efectivamente, como consecuencia de la incertidumbre de los habitantes de los centros de población antes citados y de los respectivos actos de autoridad de los Ayuntamientos de Cuernavaca y Temixco, del Estado de Morelos, los habitantes de las 7 colonias materia del decreto, solicitaron al Ejecutivo del Estado su intervención y esta autoridad hizo lo propio al Congreso del Estado y previos los estudios y pruebas aportadas por los respectivos Ayuntamientos se emitió el contenido del Decreto Número 92 en donde se decreta que todos los actos, permisos, licencias o autorizaciones o cualquier otra resolución que hubiere emanado de las autoridades municipales de los Ayuntamientos de Cuernavaca y Temixco, dictados o ejecutados dentro de dicha área geográfica y hasta antes de la vigencia del decreto, se consideran legalmente válidas; al igual que los pagos realizados ante dichas autoridades y por los gobernados en dicha circunscripción, por el tiempo que amparen tales resoluciones o determinen los ordenamientos respectivos, por tanto, las autoridades administrativas competentes del Ayuntamiento de Temixco, Morelos, entregarán en un plazo no mayor de 10 días naturales a partir de la vigencia del decreto al Ayuntamiento de Cuernavaca, Morelos, todas las solicitudes de que conozcan y se encuentren en trámite relacionadas a los pobladores de la extensión territorial a que se refiere el decreto, lo que evidencia que todo lo relacionado al área administrativa incluyendo recursos, materia jurisdiccional (sic) deberá de conocer el Ayuntamiento de Cuernavaca, Morelos, lo que evidencia que dicha determinación no debe de afectar en lo político, hacendario, y prestación de servicios públicos al Ayuntamiento de Temixco, Morelos, porque jurisdiccionalmente dichos centros de población no pertenecen a dicho Municipio, por tanto, no se afecta su esfera jurídica, política e inclusive hacendaria, dado que si de hecho se hacía con anterioridad se hacía indebidamente dado que territorialmente los citados centros de población no pertenecían a su jurisdicción, luego entonces no se afecta la esfera de los demandantes. 4. Este hecho es cierto en parte, dado que efectivamente en el mes de diciembre de 1996 el gobernador del Estado, remitió al Congreso del Estado de Morelos iniciativa de decreto por el que se reconoce la jurisdicción del Municipio de Cuernavaca, Morelos, en las áreas geográficas que se han precisado en los puntos que anteceden que aquí se dan por íntegramente reproducidos como si literalmente se

insertasen a la letra, determinando con superficie, medidas y colindancias los centros de población que se incorporaron al Municipio de Cuernavaca, Morelos, contrariamente a lo sustentado por los demandantes, resultando obviedad que esa es la opinión del Ejecutivo del Estado, de lo cual se oyó a los respectivos Ayuntamientos de Cuernavaca y Temixco, Morelos, es por ello que se destaca de la motivación del decreto que se combate, razón por la cual el hecho que se contesta es cierto en parte ya que no se está redactando en forma histórica cómo acontecieron los hechos (sic). 5. Este hecho es cierto e inclusive el secretario general de Gobierno del Estado de Morelos, hizo la publicación del decreto con las facultades que la ley confiere respecto del decreto que se combate mediante el Periódico Oficial Número 3876, de fecha 3 de septiembre de 1997, por tanto queda fuera de debate. 6. Por cuanto a este hecho el mismo es cierto, el secretario general de Gobierno en su calidad de director del Periódico Oficial 'Tierra y Libertad' publicó el decreto a que se refieren los demandantes, es por ello que este hecho debe de quedar fuera de debate. 7. Por cuanto a este hecho el mismo es cierto, sin embargo, cabe destacar que la parte demandante hace una interpretación errónea al oficio de fecha 19 de septiembre del año en curso, mediante el cual los secretarios de la diputación permanente del Congreso del Estado, notifican a Antonio Domínguez Jarillo, presidente municipal de Temixco, Morelos, el contenido del decreto materia de esta controversia a fin de que se diera cumplimiento al mismo, tan es así que dicho oficio fue recibido por el Ayuntamiento constitucional de Temixco, Morelos, en donde aparece el sello que indica la recepción de dicho documento y que se recibió precisamente a las 12:30 horas del día 23 de septiembre de 1997; ahora bien, al respecto los demandantes pasan por alto el contenido del artículo 55 de la Ley Orgánica Municipal del Estado, que establece lo siguiente: 'Artículo 55. El presidente municipal es el representante político, jurídico y administrativo del Ayuntamiento ...'; evidencia esta que demuestra que el presidente municipal de Temixco, Morelos, es el representante político, jurídico y administrativo del Ayuntamiento, luego entonces, la notificación fue hecha en tiempo y forma a dicha autoridad, tan es así que inclusive también la autoridad municipal una vez que recibió dicha notificación la dio a conocer obviamente al Ayuntamiento de Temixco, Morelos; de ahí que en tiempo y forma haya interpuesto la presente demanda de controversia constitucional, lo cual en ningún momento afecta su esfera jurídica. Ahora bien, si nos referimos al proceso legislativo, mediante escrito de fecha 4 de julio de 1997 el presidente municipal y síndico procurador del Ayuntamiento de Temixco, Morelos, hicieron manifestaciones e inclusive ofrecieron pruebas, lo cual también es reconocido plenamente por los miembros del Ayuntamiento al narrar la demanda de controversia constitucional en el capítulo VII referente a los conceptos de invalidez en su punto tercero, en donde se motiva lo siguiente '... Que el H. Congreso no hace un correcto análisis y valoración de las pruebas que se ofrecieron por el presidente municipal de Temixco ...', lo que significa que fueron escuchados los demandantes también en el proceso legislativo, luego entonces en ningún momento han quedado en estado de indefensión, razón por la cual es errónea la apreciación de la parte actora."

Asimismo, el titular del Ejecutivo Estatal hizo valer los siguientes argumentos en torno a la procedencia de la controversia

constitucional:

"Por cuanto a la norma general o acto de invalidez. Los demandantes señalaron como acto de invalidez precisamente el Decreto Número 92, mediante el cual se reconoce la jurisdicción del Municipio de Cuernavaca, Estado de Morelos, en las áreas geográficas que contiene dicha resolución, publicado en el Periódico Oficial 'Tierra y Libertad', Órgano del Gobierno del Estado de Morelos, de fecha 3 de septiembre de 1997, dicho acto fue reclamado al Congreso del Estado, no obstante lo anterior la parte promovente en ningún momento puntualiza en qué consiste el acto de invalidez, limitándose a señalar que el acto de invalidez lo es el Decreto Número 92 citado, ahora bien, al respecto se puntualiza a ustedes señores Ministros que en sí el decreto no es inválido porque observó todas las formalidades de ley, luego entonces, es inoperante la invalidez planteada. Se hace notar que el demandante en ningún momento precisa qué parte del decreto adolece de invalidez, sino todo lo contrario, se alega que el acto de invalidez es el decreto, mas no la parte considerativa del acto, razón por la cual resulta improcedente la reclamación planteada. Por otro lado, se reclama del Ejecutivo del Estado, la invalidez de la publicación del Decreto Número 92, emitido por el Congreso del Estado, toda vez que el artículo 1o. transitorio establece: Que dicho decreto iniciará su vigencia al día siguiente de su publicación en el Periódico Oficial, y agrega que al ordenarse su inclusión en el órgano oficial del Gobierno del Estado de Morelos iniciaron los efectos del acto cuya invalidez del Poder Legislativo del Estado de Morelos. De nueva cuenta la parte actora señala como acto de invalidez 'la invalidez de la publicación del Decreto Número 92 emitido por el Congreso del Estado', lo anterior evidencia que de nueva cuenta la parte actora está atacando la publicación del decreto a la cual le atribuye un acto de invalidez, cuando ésta reúne todos los requisitos que establece la ley y es publicada por quien se encuentra legitimado para tal efecto, luego entonces, por el solo hecho de la publicación no le causa agravio a la parte actora, es por ello que en ningún momento es inválido el acto, y en estricto sentido lo que le causa agravio a la parte demandante es precisamente los efectos que produce la publicación, mas no la mera publicación, y al no señalarse en tal sentido el acto de invalidez, resulta improcedente lo que se demanda. Por cuanto a los preceptos constitucionales violados. La parte actora argumenta que se violan en su perjuicio los artículos 14 y 16 constitucionales, empero como se plantea el acto de invalidez, por sí solo no se le causa perjuicio alguno, esto es, el Decreto 92 en forma literal no le causa ningún perjuicio, ni mucho menos la publicación literal del decreto, esto es al demandante no se le causa perjuicio por cuanto a la forma del acto sino el contenido del acto y sus efectos que produce, y al no alegarse en tal sentido resulta notorio que no se violan en su perjuicio los preceptos constitucionales que se mencionan."

Por su parte, la diputada presidente del Congreso del Estado de Morelos dio contestación a la demanda en los términos siguientes:

"1. Es cierto que con fecha 5 de marzo de 1933, se creó el Municipio de Temixco, Estado de Morelos, con los pueblos denominados Tetlama, Cuentepec, Acatlipa y Temixco. 2. Es cierto que con el crecimiento de la población, ésta ha buscado nuevos espacios donde habitar, lo que origina desde luego, el nacimiento de nuevos centros de población, particularmente en el área conurbada de Cuernavaca y Temixco, originando con ello, incertidumbre entre la población, al no poder determinar a qué Municipio pertenecen, razón por la que este Congreso se ha visto en la necesidad de determinar a qué Municipio pertenecen, como acertadamente lo manifiesta la contraria. 3. Efectivamente, como consecuencia de la incertidumbre de los habitantes de los nuevos centros de población y particularmente las siete colonias materia del decreto impugnado, este Congreso ha tenido que determinar la jurisdicción de esos centros de población, puesto que los propios habitantes pidieron al Ejecutivo del Estado su intervención, mismo que solicitó a esta soberanía determinara a qué Municipio pertenecen, ante la falta de prestación de servicios públicos por parte del Ayuntamiento de Temixco, Morelos. 4. Es cierto, por lo que queda fuera de controversia. 5. Es cierto. 6. Es cierto. 7. Es cierto, sin embargo cabe aclarar que la contraria hace una interpretación errónea al citado oficio, cierto es, que el oficio a que hace referencia, menciona al presidente municipal, sin embargo, olvidan el contenido del artículo 55 de la Ley Orgánica Municipal del Estado que me permito transcribir para una mejor apreciación: 'Artículo 55. El presidente municipal es el representante político, jurídico y administrativo del Ayuntamiento ...'; evidentemente, esta parte no se encuentra obligada a citar a todos y cada uno de los integrantes del Ayuntamiento, porque la disposición es clara, es decir, basta que se cite al presidente municipal, como representante del Ayuntamiento, para que tenga plena eficacia legal, más aún, conocen a la perfección el contenido del decreto emitido por esta soberanía, por lo que no pueden alegar ignorancia en su beneficio. Contestados los antecedentes o hechos de la demanda de controversia constitucional, a continuación se hacen valer las siguientes razones que estima esta parte pertinentes, para sostener la validez del acto reclamado. Genéricamente, es improcedente y carente de fundamento la demanda de controversia constitucional que se interpone en contra del Congreso del Estado, por las supuestas violaciones a los artículos 14 y 16 constitucionales en la aprobación y expedición del Decreto Número 92, publicado en el Periódico Oficial 'Tierra y Libertad', Órgano Oficial del Gobierno del Estado, de fecha 3 de septiembre de 1997, lo anterior es así porque la actora se concreta a manifestar que el acto impugnado es inválido, pero no esgrime agravio alguno, además de que no menciona en qué consiste la invalidez, por lo consiguiente esta parte sostiene su constitucionalidad, lo que se hace en los siguientes términos: 'Antes de pasar a referirme a los argumentos de la contraria, se hace notar, que la demanda impugna el decreto manifestándose que es inválido, pero a la parte considerativa del acto no hacen manifestación alguna, por lo que resulta a todas luces improcedente la demanda. Más aún, los conceptos de invalidez que hacen valer no contienen ninguna objeción formulada en contra de los considerandos que rigen el decreto reclamado, aun y cuando señalen los artículos del ordenamiento que consideran violados, por lo tanto si no refieren, ni precisan argumentos que estén en relación directa e inmediata con los fundamentos contenidos en esa parte del acto reclamado; así como, si no

hacen la concordancia necesaria entre éstos y los dispositivos legales que estiman infringidos, es indiscutible que el decreto sigue firme y por lo mismo, continúan rigiendo los puntos decisorios respectivos, por lo tanto es improcedente la demanda de inconstitucionalidad planteada. La parte actora, manifiesta que se violan en su perjuicio los artículos 14 y 16 constitucionales, pero como se plantea el acto de invalidez, por sí solo no les causa perjuicio alguno, esto es, el Decreto 92, en forma literal no le causa ningún perjuicio por cuanto a la forma del acto, sino al contenido y sus efectos que produce, y al no alegarse nada al respecto, resulta notorio que no se violan en su perjuicio los preceptos constitucionales que menciona ...'. En mérito de lo anterior, resulta a todas luces improcedente el juicio de controversia constitucional y así deberá resolverse en la sentencia que llegue a dictarse."

En sus escritos de contestación, tanto el gobernador como la representante del Congreso del Estado de Morelos, afirman, en esencia, tras reconocer como ciertos los antecedentes expresados por el Ayuntamiento actor, que si bien éste precisó como acto del que pretende la declaración de invalidez, el Decreto Número Noventa y Dos, que reconoce la jurisdicción del Municipio de Cuernavaca en las áreas que se especifican, sólo se limitó a decir que no se observaron las formalidades legales y a solicitar la invalidez de su publicación, sin señalar agravios o la parte considerativa del decreto que adolece de invalidez, siendo que su sola publicación no le afecta, por lo que debe decretarse la improcedencia de la reclamación, dado que se observaron todas las formalidades durante su proceso de creación.

Asimismo, se dice que el aludido decreto no afecta la esfera jurídica de la parte actora, en sus aspectos hacendario, político y de prestación de servicios, en virtud de que los centros de población que comprende no pertenecen al Municipio de Temixco, por lo que si de hecho tenía injerencia en aquéllos ésta era indebida, y porque si su presidente municipal ofreció pruebas ante la Legislatura Estatal es inconcuso que carece de interés jurídico para reclamar las violaciones de procedimiento que aduce.

Por lo que hace a los razonamientos expresados en el sentido de que la falta de expresión de argumentos de inconstitucionalidad en contra de las consideraciones de fondo del decreto impugnado debe motivar la improcedencia de la reclamación, debe decirse, contrariamente a lo que se aduce, que la parte actora, además de las violaciones a las formalidades esenciales del procedimiento de creación del acto legislativo a que aluden las demandadas, también hizo valer razonamientos tendientes a demostrar transgresión a la Constitución Federal, por ausencia de fundamentación y motivación, las cuales serán materia de estudio por este Tribunal Pleno en los subsecuentes considerandos, lo que acredita que sí se expresaron argumentos dirigidos a demostrar la inconstitucionalidad del Decreto Número Noventa y Dos que se impugna, no sólo en su aspecto procedimental, sino también en lo tocante a las formalidades que debe revestir dicho acto

en cuanto al fondo.

Con independencia de lo anterior, cabe resaltar también que, aun en el evento de que la parte actora no hubiese expresado conceptos de invalidez, tal situación no puede acarrear la improcedencia de la controversia constitucional, en virtud de que esta Suprema Corte tiene la obligación de suplir los argumentos expuestos por las partes, sin que pueda considerarlos deficientes, de conformidad con lo establecido en el artículo 40 de la Ley Reglamentaria de las Fracciones I y II del Artículo 105 Constitucional, así como en la jurisprudencia 68/96, publicada en el Semanario Judicial de la Federación y su Gaceta, Tomo IV, correspondiente a noviembre de 1996, página 325, que dice:

"CONTROVERSIA CONSTITUCIONAL. EN ELLA NO ES POSIBLE JURÍDICAMENTE CONSIDERAR DEFICIENTES LOS CONCEPTOS DE INVALIDEZ PLANTEADOS. De acuerdo con lo establecido por los artículos 39 y 40 de la Ley Reglamentaria de las Fracciones I y II del Artículo 105 de la Constitución Política de los Estados Unidos Mexicanos, tratándose de controversias constitucionales la Suprema Corte corregirá los errores en la cita de los preceptos invocados, examinará en su conjunto los razonamientos de las partes para resolver la cuestión efectivamente planteada y deberá suplir la deficiencia de la demanda, contestación, alegatos y agravios. De ello se sigue, necesariamente, que no es posible jurídicamente que se establezca que los argumentos hechos valer por el promovente de la controversia o conceptos de invalidez puedan considerarse deficientes, pues ello en nada afectará el estudio que deba realizarse conforme a las reglas establecidas en los preceptos mencionados."

Por otra parte, también deben desestimarse los argumentos de improcedencia en que se sostiene la falta de interés jurídico del Ayuntamiento actor, por haber sido observadas todas las formalidades del procedimiento en la creación del decreto controvertido, dado que la constatación de que el procedimiento en cuestión se llevó a cabo conforme a la ley es un aspecto que atañe al fondo y no a la improcedencia de la controversia constitucional a examen, por lo que resulta inoperante.

Robustece la conclusión anterior, el contenido de la tesis número XXVII/98, sustentada por este Tribunal Pleno, al resolver, por unanimidad de nueve votos, el amparo en revisión 2639/96, promovido por Fernando Arreola Vega, que literalmente es como sigue:

"IMPROCEDENCIA DEL JUICIO DE AMPARO. SI SE HACE VALER UNA CAUSAL QUE INVOLUCRA EL ESTUDIO DE FONDO, DEBERÁ DESESTIMARSE. En reiteradas tesis este Alto Tribunal ha sostenido que las causales de improcedencia del juicio deben ser claras e inobjetables, de lo que se desprende que si se hace valer una causal donde se involucre una

argumentación en íntima relación con el fondo del negocio, debe desestimarse y declararse la procedencia, si no se surte otra causal, y hacer el estudio de los conceptos de violación relativos a las cuestiones constitucionales propuestas."

Finalmente, en lo relativo a que el decreto que se impugna no afecta los intereses jurídicos del Ayuntamiento actor, para ocuparse de este aspecto, conviene atender a los antecedentes legislativos e históricos referentes a las cuestiones de límites territoriales que se han suscitado entre los Municipios de Cuernavaca y Temixco, que son enumerados en el pedimento del procurador general de la República (fojas 190 a 199):

"1. Decreto Número 6571, publicado el 17 de abril de 1869, del presidente de la República, Benito Juárez, por elque se erige en Estado de la Federación, con el nombre de 'Morelos' la porción de territorio del antiguo Estado de México, comprendida en los Distritos de Cuernavaca, Cuautla, Jonacatepec, Tetecala y Yautepec, que formaron el Tercer Distrito Militar, creado por Decreto de 7 de junio de 1862. 2. Decreto del gobernador del Estado, publicado en el Periódico Oficial de la entidad el 20 de octubre de 1921, por el que se eleva a la categoría de congregación al poblado del barrio de Chipitlán, como parte integrante del Municipio Libre de Cuernavaca. 3. Ley de División Territorial del Estado de Morelos del 7 de diciembre de 1932, en la que establece como uno de los 29 Municipios en que se dividía el Estado, el de Cuernavaca, cuya jurisdicción se componía entre otros centros de población con el 'Chipitlán'. 4. Decreto Número 66 del Congreso del Estado de Morelos, publicado en el Diario Oficial del Estado el 5 de marzo de 1953, por el que crea el Municipio de Temixco, que establece: 'Decreto Número 66: Artículo 1o. Se crea el Municipio Libre de Temixco con jurisdicción en los poblados de Tetlama, Cuentepec, Acatlipa y el mismo Temixco, como cabecera municipal, pueblos que conservarán la denominación y límites que actualmente tienen. Artículo 2o. Para la integración de este nuevo Municipio quedan segregados: del Municipio de Jiutepec, el pueblo de Temixco; del Municipio de Xochitepec, los pueblos de Tetlama y Cuentepec y del Municipio Emiliano Zapata, el pueblo de Acatlipa. Artículo 3o. Se modifica en los términos que expresan los artículos anteriores, la Ley de la División Territorial del Estado. Transitorios ...'. 5. Ley de División Territorial del Estado de Morelos del 17 de abril de 1934. Dispone que son 30 los Municipios en que se divide el Estado, dentro de los cuales se encuentra el de Cuernavaca y el de Temixco, cuya jurisdicción la compone por lo que hace al primero (art. 9o.), los centros de población Acatzingo, Ahuatepec, Alameda, Amatitlán, Buenavista del Monte, Cantarranas, Cuernavaca, cabecera del Municipio, Chamilpa, Chapultepec, Chipitlán, El Salto, Felipe Neri, Francisco Leyva, Las Huertas, Ocotepec, Tetela del Monte y Tlaltenango. Respecto al Municipio de Temixco, la ley establece (art. 20), que lo componen los centros de población denominados Acatlipa, Cuentepec, Temixco, Cabecera del Municipio de Tetlama. Por último, el artículo 35 dispone que tanto los Municipios como los Ayuntamientos municipales que los integran, conservan sus límites actuales reconocidos por la costumbre mientras que la triangulación geodésica pueda determinarlos con precisión. Sin embargo, es conveniente mencionar que dicho ordenamiento ha tenido

reformas y en la actualidad, son 33 los Municipios que componen el Estado de Morelos. 6. Decreto Número 156, del Ejecutivo Local, publicado en el Diario Oficial del Estado el 2 de febrero de 1936, por el que se eleva a la categoría de ranchería el centro de población denominado 'Pueblo Viejo', adicionándose al Municipio de Cuernavaca y en el artículo 3o. del decreto se reforma el artículo 9o. de la Ley de División Territorial del Estado, señalando que corresponden a la circunscripción del Municipio de Cuernavaca, diversos centros de población sin incluir el de Palmira. 7. Acta de posesión y deslinde del Ejido de Chipitlán del 12 de febrero de 1936, donde se dice que pertenece al Municipio de Cuernavaca. 8. Diario Oficial de la Federación del 20 de abril de 1936, que contiene la resolución presidencial al expediente de ampliación de ejidos, al poblado de Chipitlán, Estado de Morelos, donde se expresa que pertenece al Municipio de Cuernavaca. 9. Decreto Número 176, del Ejecutivo Local, publicado en el Periódico Oficial del Estado, el 31 de mayo de 1936, por el que el centro de población Palmira o Pueblo Nuevo del Puente, se adiciona al Municipio de Temixco, ordenándose se reforme también la Ley de División Territorial del Estado en su artículo 20, que se refiere a la jurisdicción que comprende dicho Municipio. 10. Decreto Número 12, del Congreso del Estado, publicado en el Periódico Oficial del Estado, el 8 de agosto de 1956, por el cual se segrega del Municipio de Cuernavaca, el centro de población denominado 'Pueblo Viejo' y se anexa a Temixco. En el mismo decreto, se ordena la reforma al artículo 9o. de la Ley de División Territorial vigente en el Estado, correspondiéndole a la jurisdicción del Municipio de Cuernavaca los centros de población denominados: Acapantzingo, Ahuatepec, Alameda, Amatitlán, Buena Vista del Monte, Cantarranas, Cuernavaca, Cabecera del Municipio, Chamilpa, Chapultepec, Chipitlán, El Salto, Felipe Neri, Francisco Leyva, Las Huertas, Ocotepec, Tetela del Monte y Tlaltenango. Asimismo, se reformó el artículo 20 del ordenamiento citado, en el que se establece que el Municipio de Temixco comprende los centros de población: Acatlipa, Cuentepec, Pueblo Nuevo del Puente, Temixco, Cabecera del Municipio, Tetlama y Pueblo Viejo. 11. El Bando de Policía y Buen Gobierno del Municipio de Cuernavaca, Morelos, del año de 1966, en su artículo 1o., estableció: 'Artículo 1o. De acuerdo con lo dispuesto por el artículo 3o. de la Ley Orgánica de los Municipios del Estado de Morelos, el Municipio de Cuernavaca conserva la extensión territorial comprendida dentro de los siguientes límites: partiendo del Cerro de Zempoala en dirección noroeste en línea recta, hasta llegar al lugar conocido como Ojo de Agua y Texcapa; de este lugar se sigue en dirección del norte y sureste en línea recta hasta llegar al lugar conocido como Nolinaltepec; de este lugar, siguiendo en dirección este y en línea quebrada, pasando por los lugares denominados Chilpanam, Cuatatapaxco, La Palma y Piedra Larga, en este lugar y lindero toma en dirección sur en línea quebrada, dejando al poniente el cerro de La Herradura, tocando el punto conocido como Transacción, continuando el lindero hasta el punto conocido como Segundo Apantongo y después de Apantongo, hasta llegar al vértice en que está el ejido de Tejalpa; de este lugar, partiendo en línea sinuosa primero hacia el oeste y luego hacia el sur, hasta alcanzar el vértice suroeste del ejido de Tejalpa; de este lugar, se continúa en dirección oeste y dando vuelta hacia el norte hasta llegar al poblado de Atlacomulco, continuando en dirección suroeste, en línea sinuosa, siguiendo luego en dirección sur hasta colindar con el ejido de Atlacomulco, para continuar el lindero del

Municipio con los linderos de los mismos ejidos en dirección este hasta llegar al vértice noroeste del propio ejido con los terrenos comunales del Municipio de Jiutepec, de este punto se continúa hacia el sur y en línea recta hasta llegar al vértice noroeste y oeste de los terrenos comunales de Emiliano Zapata, para continuar la línea limítrofe en dirección general oeste, colindando con el ejido de Emiliano Zapata, propiedades de Ezequiel Padilla y terrenos del ejido de Temixco, hasta llegar al vértice suroeste del ejido de Palmira; de este punto siguiendo hacia el punto noroeste en línea quebrada, colindando con el ejido de Pueblo Viejo, hasta llegar al vértice noroeste del ejido de Pueblo Viejo y continuando en dirección general oeste en línea quebrada, pasando por el vértice unión al norte del ejido de Pueblo Viejo y ampliación de Acatlipa, colindando con dicha ampliación y el ejido de Pueblo Viejo, hasta llegar al vértice noroeste del ejido de Pueblo Viejo con el ejido de Cuentepec, del Municipio de Miacatlán y continuando en línea recta en dirección noroeste hasta llegar al ejido de Santa María Ahuacatitlán y la barranca de Mexicapa hasta llegar al punto de partida, o sea el cerro de Zempoala.'. 12. El Bando de Policía y Buen Gobierno del Municipio de Temixco, Morelos, del año de 1976, en su numeral 2o., estableció: 'Artículo 2o. Se fijan como límites del Municipio de Temixco, Morelos, los siguientes: partiendo del cerro denominado del Aire o Zinzontecomatl, ubicado al norte de este Municipio y colindando con el Estado de México, sigue con dirección al sureste, colindando con el Municipio de Cuernavaca en línea recta hasta llegar a la barranca de Panocheras, siguiendo en la misma dirección cruzando por las barrancas Colorada y del Pollo: de este punto con rumbo al oriente, cruzando la barranca de Pilcaya hasta llegar a la carretera con destino a Acapulco y el puente que libra la autopista que conduce al mismo puerto, incluyendo la zona conocida como El Polvorín; de este punto con dirección al noroeste, hasta cruzar la avenida Palmira en la última glorieta de norte a sur y siguiendo el mismo rumbo hasta el entronque con la barranca de Amanalco; de este punto partiendo con dirección al Sur hasta llegar a los límites norte del fraccionamiento Lomas de Cuernavaca y siguiendo dichos límites hasta el oriente hasta llegar a la mojonera que limita los Municipios de Jiutepec, Zapata y Temixco, ubicada en el cerro denominado Cerro Pelón; partiendo de este punto en dirección hacia el sur, siguiendo una cerca de piedra, límites con el Municipio de Emiliano Zapata hasta llegar al punto denominado Palo Escrito continuando con la misma dirección sobre las aguas de Barranquilla que forma ese manantial, pasando por los límites del lado oriente del fraccionamiento de Granjas Mérida, hasta llegar a la vértice (sic) que forma el límite de este Municipio con el de Xochitepec, de este punto cambiando de rumbo hacia el poniente colindando con los terrenos ejidales del Puente de Xochitepec, del Municipio de Miacatlán, pasado al sur de las ruinas de Xochicalco y los cerros denominados Los Perritos y El Gaucho siguiendo la misma dirección hacia el norte en línea recta hasta llegar al cerro de la Culebra, y de este punto en dirección al noroeste, colindando con el Municipio de Ocula, Estado de México y pasando sobre el cerro de Ajuchitlán hasta llegar al punto de partida que es el cerro del Aire o Zinzontecomatl.'. 13. Oficio 124-VI del 15 de marzo de 1968, dirigido al Ing. Felipe Rivera Crespo, presidente municipal de Cuernavaca, firmado por el Lic. Fausto Galván Campos, en su carácter de secretario general de Gobierno, el cual dice en su inciso a) La ayudantía de Chipitlán siempre se ha considerado como perteneciente a la ciudad de Cuernavaca,

Morelos; b) El lugar denominado El Polvorín, se encuentra ubicado dentro de la jurisdicción de la ayudantía de Chipitlán. Esto se encuentra notificado a Juan Vargas Hernández, presidente municipal de Temixco, en referencia a su oficio número 979, expediente 02, del 27 de febrero de 1968. 14. Decreto Número 75 del 22 de febrero de 1978, del Congreso del Estado de Morelos, por el cual se establece que la colonia Lomas de Cuernavaca, pertenece al Municipio de Temixco. 15. Acuerdo del 10 de octubre de 1985, del Ejecutivo del Estado, por el cual se instala formalmente la Comisión de Límites del Estado, como órgano ejecutivo y de vigilancia en todo lo concerniente a los límites territoriales. 16. Diario Oficial del 12 de diciembre de 1991, en el que se publica decreto presidencial expropiatorio al Ejido de Chipitlán y en el que en repetidas ocasiones se menciona 'Ejido de Chipitlán, Municipio de Cuernavaca.'. 17. Dictamen del 12 de junio de 1995, de la Comisión de Límites Territoriales del Estado, en el cual se concluye que las colonias Adolfo López Mateos Sur, Lázaro Cárdenas (El Polvorín), Ampliación Chipitlán Mina 5, colonia los Pilares, colonia Loma Bonita Segunda Ampliación, Lázaro Cárdenas y la colonia Ampliación Lázaro Cárdenas (El Polvorín), pertenecen al Municipio de Cuernavaca. Dictamen que incluye levantamiento topográfico de la zona de conflicto. 18. Oficio constancia dirigido a la Comisión de Límites Territoriales del Estado, del 14 de febrero de 1996, suscrito por Javier Atrisco Meneses, secretario del Comisariado Ejidal de Chipitlán, en el que se pide que la colonia Adolfo López Mateos Sur, pertenezca al Municipio de Cuernavaca, y en donde se menciona que todos los servicios los recibe de dicho Municipio. 19. Bando de Policía y Buen Gobierno del Municipio de Temixco, Morelos, del 28 de mayo de 1997, en donde se establece en sus artículos 9o. y 10, el territorio que pertenece al Municipio de Temixco y las colonias que lo componen, respectivamente. El territorio que se menciona en el artículo 9o., que compone el Municipio de Temixco, es el mismo a que se hace referencia en el artículo 2o., del Bando de Policía y Buen Gobierno del Municipio del año de 1967. Respecto al artículo 10, dispone que las colonias que conforman el Municipio son: Adolfo López Mateos, Aeropuerto, Alta Palmira, Azteca, 10 de Abril, El Estribo, Emiliano Zapata, Las Ánimas, Lázaro Cárdenas, Lomas de Guadalupe, Lomas del Carril, Los Laureles, Los Presidentes, Miguel Hidalgo, Morelos, Río Escondido, Rubén Jaramillo, Santa Úrsula, Solidaridad, Vergel Santa Cruz, Benito Juárez, Ampliación Adolfo López Mateos, Las Rosas, Bugambilias, Casa Blanca, Lomas de Acatlipa, La Rivera y Lauro Ortega. Como fraccionamientos menciona a Las Brisas de Cuernavaca, Burgos de Cuernavaca, Granjas Mérida, Junto al Río, Lomas de Cuernavaca, Río Apatlaco, Los Arcos, y por último los poblados de Acatlipa, de Cuentepec, de Pueblo Viejo y de Tetlama. 20. Se han elaborado a través del tiempo diversos planos del territorio a que alude el decreto materia de la litis, los cuales consisten en: 20.1. Plano de la Hacienda de Temixco del siglo pasado, que marca los límites de los terrenos que poseía dicha hacienda y que fueron indemnizados en los primeros años del presente siglo (1923), por la caja de ahorros del Gobierno Federal, a los propietarios de la misma. 20.2. Plano de la ampliación definitiva al ejido de Chipitlán, Municipio de Cuernavaca, formado por la Secretaría de la Reforma Agraria en mayo de 1936. 20.3. Plano del Municipio de Cuernavaca, formulado por la administración municipal, encabezada por el Lic. Lorenzo Jiménez Figueroa, del 8 de julio de 1959. 20.4. Plano elaborado por la Comisión de Límites Territoriales del

Municipio de Cuernavaca de 1985. 21. Carta General del Estado de Morelos de 1990, elaborada por la Comisión de Límites, donde se marcan los 33 Municipios que lo componen, incluyendo los de Temixco y Cuernavaca. 22. Carta General del Estado de Morelos de 1993, elaborada por la Dirección General de Catastro y Regularización del Gobierno del Estado, donde se marcan los 33 Municipios que lo componen, incluyendo los de Temixco y Cuernavaca."

Como puede observarse de la relación anterior, la indefinición jurídica y material en cuanto a si el centro de población denominado "Chipitlán" pertenece al Municipio de Cuernavaca o al de Temixco, provocó que habitantes de las colonias "Adolfo López Mateos Sur", "Ampliación Chipitlán Mina 5", "Ampliación Lázaro Cárdenas 'Polvorín'", "Los Pilares" y "Loma Bonita Segunda Ampliación Lázaro Cárdenas" que forman parte de aquél, solicitaran a la autoridad administrativa reconocer su pertenencia al primer Municipio citado, entre otras causas, por recibir de éste los servicios públicos relativos (fojas 169 a 225 del cuaderno de pruebas).

En respuesta a la solicitud descrita, el secretario general de Gobierno, con fundamento en lo dispuesto en el artículo 27, fracción XXVI, de la Ley Orgánica de la Administración Pública del Estado de Morelos, presentó al Congreso Local la iniciativa del decreto que se impugna, el trece de diciembre de mil novecientos noventa y seis, al que adjuntó informe que le presentó la Comisión de Límites Territoriales el doce de junio de mil novecientos noventa y cinco (fojas 174 a 188 del cuaderno de pruebas).

Cabe destacar también, que el decreto controvertido tiene como fundamento, entre otros, el artículo 7o. de la Ley Orgánica Municipal del Estado de Morelos, que dispone lo siguiente:

"Artículo 7o. La creación y supresión de Municipios, modificación de sus territorios, cambios de residencia de sus cabeceras municipales y las cuestiones que se susciten sobre límites intermunicipales, serán resueltas por la Legislatura del Estado, con audiencia de los Ayuntamientos afectados y opinión del Ejecutivo Estatal."

Por todo lo anterior, si el decreto que se impugna deriva del procedimiento seguido ante la Legislatura Estatal y tiene como efecto jurídico resolver la cuestión de límites sometida a su consideración y determinar que los territorios que se describen estarán bajo la jurisdicción del Municipio de Cuernavaca, siendo que el Municipio de Temixco estima que a él corresponde su ejercicio, resulta evidente que el acto legislativo afecta el interés jurídico del Ayuntamiento actor, tan es así que fue notificado como parte obligada al cumplimiento del citado decreto (foja 327 del cuaderno de pruebas), destacando que la determinación de si la injerencia que había tenido en el territorio relativo era o no incorrecta, así como de que si su

presidente municipal ofreció pruebas durante el referido procedimiento, son también cuestiones que se relacionan con el fondo de la decisión, por lo que no pueden producir la improcedencia de la presente controversia constitucional, con base en el criterio de este Pleno anteriormente transcrito.

En este mismo orden de ideas, la conclusión sobre la demostración del interés jurídico del Municipio actor se refuerza atendiendo al contenido del artículo 115, en su epígrafe y fracción I, párrafo primero, de la Constitución Federal, que erigen como base de la división territorial y organización política del régimen interior de los Estados, al Municipio Libre, en los siguientes términos:

"Artículo 115. Los Estados adoptarán, para su régimen interior, la forma de gobierno republicano, representativo, popular, teniendo como base de su división territorial y de su organización política y administrativa, el Municipio Libre, conforme a las bases siguientes:

"I. Cada Municipio será administrado por un Ayuntamiento de elección popular directa y no habrá ninguna autoridad intermedia entre éste y el Gobierno del Estado ..."

Ahora bien, como ha quedado destacado con los antecedentes descritos a lo largo de este considerando, la afectación al Ayuntamiento actor es clara y actual con el decreto impugnado, pues al reconocer el territorio en disputa como perteneciente al Municipio tercero interesado, impide al primero ejercer su autonomía jurídica e imperio político en dicha extensión territorial, con lo cual le es restringida su competencia constitucional como ente de administración del Municipio, en términos de lo dispuesto por el artículo 115, en las partes transcritas.

En las apuntadas condiciones, al resultar inoperantes los motivos de improcedencia invocados por las demandadas y, al no hacerse valer otros ni advertirse de oficio por este Tribunal Pleno, se impone examinar los conceptos de invalidez hechos valer por el Ayuntamiento actor.

QUINTO. Este Tribunal Pleno estima indispensable dejar asentado el marco de atribuciones de decisión que comprende la encomienda establecida en la Constitución, relacionada con la capacidad de estudio de los conceptos de invalidez que puedan plantearse en las controversias constitucionales, medio de impugnación previsto en el artículo 105, fracción I, de la Carta Magna.

El dispositivo anterior, en su inciso i), consagra la procedencia de las controversias constitucionales entre un Estado y uno de sus Municipios 'sobre la constitucionalidad' de sus actos o disposiciones generales. Para determinar el alcance de tal expresión y delimitar la materia de lo que es susceptible de ser abordado en este tipo de juicios, debe realizarse el análisis siguiente.

Por principio de cuentas, debe subrayarse la existencia de los diferentes órdenes jurídicos que conforman el Estado mexicano, previstos en la propia Constitución Federal, cuya interrelación normativa se explica a continuación, para lo cual es preciso atender al contenido de los artículos 1o., 40, 41, primer párrafo, 43, 44, 49, 105, fracción I, 115, fracción I, 116, primer y segundo párrafos, 122, primer y segundo párrafos, 124 y133, de la propia Ley Fundamental:

"Artículo 1o. En los Estados Unidos Mexicanos todo individuo gozará de las garantías que otorga esta Constitución, las cuales no podrán restringirse ni suspenderse, sino en los casos y con las condiciones que ella misma establece."

"Artículo 40. Es voluntad del pueblo mexicano constituirse en una República representativa, democrática, federal, compuesta de Estados libres y soberanos en todo lo concerniente a su régimen interior; pero unidos en una Federación establecida según los principios de esta Ley Fundamental."

"Artículo 41. El pueblo ejerce su soberanía por medio de los Poderes de la Unión, en los casos de la competencia de éstos, y por los de los Estados, en lo que toca a sus regímenes interiores, en los términos respectivamente establecidos por la presente Constitución Federal y las particulares de los Estados, las que en ningún caso podrán contravenir las estipulaciones del Pacto Federal ..."

"Artículo 43. Las partes integrantes de la Federación son los Estados de Aguascalientes, Baja California, Baja California Sur, Campeche, Coahuila, Colima, Chiapas, Chihuahua, Durango, Guanajuato, Guerrero, Hidalgo, Jalisco, México, Michoacán, Morelos, Nayarit, Nuevo León, Oaxaca, Puebla, Querétaro, Quintana Roo, San Luis Potosí, Sinaloa, Sonora, Tabasco, Tamaulipas, Tlaxcala, Veracruz, Yucatán, Zacatecas y el Distrito Federal."

"Artículo 44. La Ciudad de México es el Distrito Federal, sede de los Poderes de la Unión y capital de los Estados Unidos Mexicanos. Se compondrá del territorio que actualmente tiene y en el caso de que los Poderes Federales se trasladen a otro lugar, se erigirá en el Estado del Valle de México con los límites y extensión que le asigne el Congreso General."

"Artículo 49. El Supremo Poder de la Federación se divide, para su ejercicio, en Legislativo, Ejecutivo y Judicial.

"No podrán reunirse dos o más de estos poderes en una sola persona o corporación, ni depositarse el Legislativo en un individuo, salvo el caso de facultades extraordinarias al Ejecutivo de la Unión, conforme a lo dispuesto en el artículo 29. En ningún otro caso, salvo lo dispuesto en el segundo párrafo del artículo 131, se otorgarán facultades extraordinarias para legislar."

"Artículo 105. La Suprema Corte de Justicia de la Nación conocerá, en los términos que señale la ley reglamentaria, de los asuntos siguientes:

"I. De las controversias constitucionales que, con excepción de las que se refieran a la materia electoral, se susciten entre:

"a) La Federación y un Estado o el Distrito Federal;

"b) La Federación y un Municipio;

"c) El Poder Ejecutivo y el Congreso de la Unión; aquél y cualquiera de las Cámaras de éste o, en su caso, la Comisión Permanente, sean como órganos federales o del Distrito Federal;

"d) Un Estado y otro;

"e) Un Estado y el Distrito Federal;

"f) El Distrito Federal y un Municipio;

"g) Dos Municipios de diversos Estados;

"h) Dos poderes de un mismo Estado, sobre la constitucionalidad de sus actos o disposiciones generales;

"i) Un Estado y uno de sus Municipios, sobre la constitucionalidad de sus actos o disposiciones generales;

"j) Un Estado y un Municipio de otro Estado, sobre la constitucionalidad de sus actos o disposiciones generales, y

"k) Dos órganos de Gobierno del Distrito Federal, sobre la constitucionalidad de sus actos o disposiciones generales.

"Siempre que las controversias versen sobre disposiciones generales de los Estados o de los Municipios impugnadas por la Federación, de los Municipios impugnadas por los Estados, o en los casos a que se refieren los incisos c), h) y k) anteriores, y la resolución de la Suprema Corte de Justicia las declare inválidas, dicha resolución tendrá efectos generales cuando hubiera sido aprobada por una mayoría de por lo menos ocho votos.

"En los demás casos, las resoluciones de la Suprema Corte de Justicia tendrán efectos únicamente respecto de las partes en la controversia."

"Artículo 115. Los Estados adoptarán, para su régimen interior, la forma de gobierno republicano, representativo, popular, teniendo como base de su división territorial y de su organización política y administrativa, el Municipio Libre conforme a las bases siguientes:

"I. Cada Municipio será administrado por un Ayuntamiento de elección popular directa y no habrá ninguna autoridad intermedia entre éste y el gobierno del Estado.

"Los presidentes municipales, regidores y síndicos de los Ayuntamientos electos popularmente por elección directa, no podrán ser reelectos para el periodo inmediato. Las personas que por elección indirecta, o por nombramiento o designación de alguna autoridad desempeñen las funciones propias de esos cargos, cualquiera que sea la denominación que se les dé, no podrán ser electas para el periodo inmediato. Todos los funcionarios antes mencionados cuando tengan el carácter de propietarios, no podrán ser electos para el periodo inmediato con el carácter de suplentes, pero los que tengan el carácter de suplentes, sí podrán ser electos para el periodo inmediato como propietarios a menos que hayan estado en ejercicio.

"Las Legislaturas Locales, por acuerdo de las dos terceras partes de sus integrantes, podrán suspender Ayuntamientos, declarar que éstos han desaparecido y suspender o revocar el mandato a alguno de sus miembros, por alguna de las causas graves que la ley local prevenga, siempre y cuando sus miembros hayan tenido oportunidad suficiente para rendir las pruebas, y hacer los alegatos que a su juicio convengan.

"En caso de declararse desaparecido un Ayuntamiento o por renuncia o falta absoluta de la mayoría de sus miembros, si

conforme a la ley no procediere que entraren en funciones los suplentes ni que se celebraren nuevas elecciones, las legislaturas designarán entre los vecinos a los Concejos Municipales que concluirán los periodos respectivos.

"Si alguno de los miembros dejare de desempeñar su cargo, será sustituido por su suplente, o se procederá según lo disponga la ley.

"II. Los Municipios estarán investidos de personalidad jurídica y manejarán su patrimonio conforme a la ley.

"Los Ayuntamientos poseerán facultades para expedir de acuerdo con las bases normativas que deberán establecer las legislaturas de los Estados, los Bandos de Policía y Buen Gobierno y los reglamentos, circulares y disposiciones administrativas de observancia general dentro de sus respectivas jurisdicciones.

"III. Los Municipios, con el concurso de los Estados cuando así fuere necesario y lo determinen las leyes, tendrán a su cargo los siguientes servicios públicos:

"a) Agua potable y alcantarillado;

"b) Alumbrado público;

"c) Limpia;

"d) Mercados y centrales de abasto;

"e) Panteones;

"f) Rastro;

"g) Calles, parques y jardines;

"h) Seguridad pública y tránsito, e

"i) Los demás que las Legislaturas Locales determinen según las condiciones territoriales y socio-económicas de los

Municipios, así como su capacidad administrativa y financiera.

"Los Municipios de un mismo Estado, previo acuerdo entre sus Ayuntamientos y con sujeción a la ley, podrán coordinarse y asociarse para la más eficaz prestación de los servicios públicos que les corresponda.

"IV. Los Municipios administrarán libremente su hacienda, la cual se formará de los rendimientos de los bienes que les pertenezcan, así como de las contribuciones y otros ingresos que las legislaturas establezcan a su favor, y en todo caso:

"a) Percibirán las contribuciones, incluyendo tasas adicionales, que establezcan los Estados sobre la propiedad inmobiliaria, de su fraccionamiento, división, consolidación, traslación y mejora así como las que tengan por base el cambio de valor de los inmuebles.

"Los Municipios podrán celebrar convenios con el Estado para que éste se haga cargo de algunas de las funciones relacionadas con la administración de esas contribuciones.

"b) Las participaciones federales, que serán cubiertas por la Federación a los Municipios con arreglo a las bases, montos y plazos que anualmente se determinen por las legislaturas de los Estados.

"c) Los ingresos derivados de la prestación de servicios públicos a su cargo.

"Las leyes federales no limitarán la facultad de los Estados para establecer las contribuciones a que se refieren los incisos a) y c), ni concederán exenciones en relación con las mismas. Las leyes locales no establecerán exenciones o subsidios respecto de las mencionadas contribuciones, en favor de personas físicas o morales, ni de instituciones oficiales o privadas. Sólo los bienes del dominio público de la Federación, de los Estados o de los Municipios estarán exentos de dichas contribuciones.

"Las legislaturas de los Estados aprobarán las leyes de ingresos de los Ayuntamientos y revisarán sus cuentas públicas. Los presupuestos de egresos serán aprobados por los Ayuntamientos con base en sus ingresos disponibles.

"V. Los Municipios, en los términos de las leyes federales y estatales relativas, estarán facultados para formular, aprobar y administrar la zonificación y planes de desarrollo urbano municipal; participar en la creación y administración de sus reservas territoriales; controlar y vigilar la utilización del suelo en sus jurisdicciones territoriales; intervenir en la

regularización de la tenencia de la tierra urbana; otorgar licencias y permisos para construcciones, y participar en la creación y administración de zonas de reservas ecológicas. Para tal efecto y de conformidad a los fines señalados en el párrafo tercero del artículo 27 de esta Constitución, expedirán los reglamentos y disposiciones administrativas que fueren necesarios.

"VI. Cuando dos o más centros urbanos situados en territorios municipales de dos o más entidades federativas formen o tiendan a formar una continuidad demográfica, la Federación, las entidades federativas y los Municipios respectivos, en el ámbito de sus competencias, planearán y regularán de manera conjunta y coordinada el desarrollo de dichos centros con apego a la ley federal de la materia.

"VII. El Ejecutivo Federal y los gobernadores de los Estados tendrán el mando de la fuerza pública en los Municipios donde residieren habitual o transitoriamente.

"VIII. La leyes de los Estados introducirán el principio de la representación proporcional en la elección de los Ayuntamientos de todos los Municipios.

"Las relaciones de trabajo entre los Municipios y sus trabajadores, se regirán por las leyes que expidan las legislaturas de los Estados con base en lo dispuesto en el artículo 123 de esta Constitución, y sus disposiciones reglamentarias."

"Artículo 116. El poder público de los Estados se dividirá para su ejercicio, en Ejecutivo, Legislativo y Judicial, y no podrán reunirse dos o más de estos poderes en una sola persona o corporación, ni depositarse el legislativo en un solo individuo.

"Los poderes de los Estados se organizarán conforme a la Constitución de cada uno de ellos, con sujeción a las siguientes normas: ..."

"Artículo 122. Definida por el artículo 44 de este ordenamiento la naturaleza jurídica del Distrito Federal, su gobierno está a cargo de los Poderes Federales y de los órganos Ejecutivo, Legislativo y Judicial de carácter local, en los términos de este artículo.

"Son autoridades locales del Distrito Federal, la Asamblea Legislativa, el jefe de Gobierno del Distrito Federal y el Tribunal Superior de Justicia ..."

"Artículo 124. Las facultades que no están expresamente concedidas por esta Constitución a los funcionarios federales, se entienden reservadas a los Estados."

"Artículo 133. Esta Constitución, las leyes del Congreso de la Unión que emanen de ella y todos los tratados que estén de acuerdo con la misma, celebrados y que se celebren por el presidente de la República, con aprobación del Senado, serán la Ley Suprema de toda la Unión. Los Jueces de cada Estado se arreglarán a dicha Constitución, leyes y tratados a pesar de las disposiciones en contrario que pueda haber en las Constituciones o leyes de los Estados."

De los preceptos anteriores puede distinguirse la existencia de cuatro órdenes jurídicos dentro del Estado mexicano, con asignaciones competenciales propias y, por regla general, excluyentes entre sí, que implican descentralización y autonomía en cuanto a su ejercicio a cargo de las autoridades correspondientes, cuyas características esenciales, en relación con la cuestión que ocupa a este tribunal, se enumeran enseguida:

a) Orden jurídico federal. Su existencia se encuentra sustentada en el artículo 40 de la Carta Magna, que consagra la unión de todos los Estados con autonomía hacia su interior, que se integran dentro de una Federación, la cual constituye un orden jurídico distinto. En su aspecto funcional, el numeral 49 dispone el principio de división de poderes para el ejercicio de las atribuciones de autoridad en el ámbito federal, desarrollando la competencia específica de cada uno de ellos en los artículos subsecuentes, que comprenden hasta el 107, destacando que las autoridades tienen jurisdicción sobre todo el territorio nacional, que abarca las treinta y un entidades federativas y el Distrito Federal, cuyas denominaciones y límites están descritos en los artículos 43 y 44. Se resalta también, como principio fundamental en la asignación de atribuciones competenciales en favor de los poderes federales, que las facultades de las autoridades de este orden jurídico deben encontrarse expresamente previstas a su favor en la Constitución Política del Estado mexicano, en términos de lo dispuesto en el numeral 124.

b) Orden jurídico estatal o local. La existencia de este orden jurídico tiene apoyo en el artículo 40 constitucional, en cuanto prevé la existencia de Estados libres y soberanos en su régimen interior, enumerados en el artículo 43 de la propia Ley Fundamental. Las reglas con base en las cuales deberá estructurarse la división de poderes a cargo de las autoridades estatales se encuentran descritas en el numeral 116, siendo que la materia sustantiva sobre la cual tienen autonomía funcional se obtiene por exclusión de las atribuciones consagradas expresamente en favor de la Federación por la Constitución General, atento a la regla prevista en el artículo 124.

Así, el régimen regulador de la unión de los Estados federales, señalado en los artículos 40 y 41 constitucionales, se encuentra cimentado en dos principios fundamentales y complementarios entre sí:

1) La existencia de entidades federativas con libertad de autodeterminación en cuanto hace a su régimen interno, y

2) Que el ejercicio de la autonomía estatal respete las prevenciones de la Constitución Federal.

De acuerdo con los principios anteriores, debe ser la propia Carta Magna el documento que detalle el campo de atribuciones que tiene la Federación y cada una de las entidades federativas, situación que se ve cumplida, de modo general, con lo consagrado en su artículo 124, cuyo ejercicio, aunque autónomo y discrecional, deberá respetar los postulados de la Constitución Federal. Así, la distribución de competencias se rige por el principio consagrado en el artículo 124 constitucional, conforme al cual se otorgan facultades expresas a los funcionarios federales, entendiéndose reservadas las demás a los Estados de la República, es decir, que la delimitación de competencias entre el orden federal y el de los Estados -miembros- se resuelve a base de listar expresamente las facultades de aquél, reservándose a las entidades federativas las que no lo estén. Los funcionarios federales, pues, no pueden realizar acto ninguno fuera del ámbito que la Constitución Federal señala; por su parte, los Estados ejercitan todas las facultades no asignadas a los órganos federales.

En síntesis, la interpretación armónica de los artículos 124, 40 y 41 constitucionales lleva a concluir, como premisa, que las entidades federativas tendrán plena autonomía para que, sin transgredir los principios establecidos en la Constitución, resuelvan con libertad en las materias que la propia Carta Magna les ha reservado competencia, al no señalarlas de manera expresa en la competencia de la Federación.

Es de destacarse, especialmente, que dentro del orden jurídico estatal aparece la figura del Municipio Libre, estructura de gobierno que si bien tiene como norma fundamental la autonomía funcional para la prestación de los servicios públicos a su cargo y el ejercicio del gobierno dentro de los límites territoriales que le corresponde, a través de los Ayuntamientos, conforme a lo establecido en el artículo 115, también guarda nexos indisolubles con los poderes locales que impide considerarlos como un orden jurídico independiente del local.

Tomando en consideración la importancia que tienen las relaciones entre los Estados y sus Municipios, con base en el principio de la libertad que deben tener éstos en cuanto a su gestión, por ser la célula de poder que tiene un contacto más cercano con la población, en el artículo 115 de la Constitución se han regulado actos de trascendencia referidos a la

injerencia de las autoridades estatales en el ámbito municipal, que ejemplificativamente se enumeran a continuación:

Suspensión y desaparición de Ayuntamientos, o de sus gobiernos, por causas graves establecidas en la ley local, respetando el derecho de defensa de los funcionarios municipales (art. 115, fracción I, párrafo tercero).

Designación de los miembros de los Concejos Municipales en el caso de la hipótesis anterior, cuando no puedan entrar en funciones los suplentes (art. 115, fracción I, párrafo tercero).

Concurso de los Estados con los Municipios en servicios públicos, con base en lo establecido en la ley local (art. 115, fracción III).

Establecimiento de contribuciones municipales sobre ciertos rubros (art. 115, fracción IV).

Cumplimiento de convenios en relación con la administración de contribuciones municipales (art. 115, fracción IV).

Establecimiento de participaciones federales a los Municipios con base en la ley estatal (art. 115, fracción IV).

Concordancia de las leyes de ingresos municipales con los presupuestos de egresos presentados por los Ayuntamientos (art. 115, fracción IV).

Administración y planificación de zonas de desarrollo municipal con base en la ley estatal y federal (art. 115, fracción V).

Cumplimiento de convenios de regulación de territorios municipales y estatales limítrofes (art. 115, fracción VI).

De los ejemplos anteriores se deduce la razón de que la pertenencia de los Municipios a un Estado autónomo sujeta también a los primeros a someter sus diferencias con otros Municipios, en principio, a la decisión de las autoridades de gobierno locales, por estar comprendidos todos dentro de un mismo orden normativo.

Como ejemplo de las situaciones de nexo de relación entre Municipios y su respectivo Estado, en algunos de los aspectos que se describen en el párrafo precedente, aplicables a Morelos, se enumeran las previstas en los artículos 40, fracciones XI y XII, y 41 de la Constitución de dicha entidad federativa:

"Artículo 40. Son facultades del Congreso:

"...

"XI. Crear nuevos Municipios dentro de los límites de los existentes, previos los siguientes requisitos:
"A) Que en el territorio que pretenda erigirse en Municipio existirá una población de más de 30,000 habitantes;

"B) Que se pruebe ante el Congreso que dicho territorio integrado por las poblaciones que pretenden formar los Municipios tienen potencialidad económica y capacidad financiera para el mantenimiento del gobierno propio y de los servicios públicos que quedarían a su cargo;

"C) Que los Municipios del cual trata de segregarse el territorio del nuevo Municipio, puedan continuar subsistiendo;

"D) Que el Ayuntamiento del Municipio que se trata de desmembrar rinda un informe sobre la conveniencia o inconveniencia de la erección de la nueva entidad municipal;quedando obligado a dar un informe dentro de los 30 días siguientes a aquel en que le fuere pedido;

"E) Que igualmente se oiga al Ejecutivo del Estado, quien enviará su informe dentro del término de 10 días contados desde la fecha en que se le remita la comunicación relativa;

"F) Que la erección del nuevo Municipio sea aprobada por las dos terceras partes de los diputados presentes.

"XII. Suprimir alguno o algunos de los Municipios existentes, incorporándolos a los más inmediatos, siempre que se demuestre plenamente ante el Congreso que no llenan los requisitos a que se refieren los incisos A) y B) de la fracción anterior, previo informe del Ayuntamiento o Ayuntamientos de los Municipios que se trate de suprimir, y del Ejecutivo del Estado, dentro de los términos señalados en el inciso C) y D), y observándose lo dispuesto en el inciso E) de la misma fracción."

"Artículo 41. El Congreso del Estado, por acuerdo cuando menos de las dos terceras partes de sus integrantes podrá declarar la desaparición de Ayuntamientos, suspenderlos en su totalidad, suspender a alguno de los integrantes de los propios

Municipios, siempre y cuando los afectados hayan tenido oportunidad suficiente para rendir las pruebas y hacer los alegatos que a su juicio convenga, en los siguientes casos:

"...

"II. Podrá dictar la suspensión definitiva de un Ayuntamiento en su totalidad, en los siguientes casos:
"...

"III. Ordenará la suspensión definitiva de uno de los miembros del Ayuntamiento en lo particular, cuando el munícipe de que se trate se coloque en cualquiera de los siguientes supuestos:

"...

"IV. Acordará la revocación del mandato a alguno de los integrantes del Ayuntamiento, en el supuesto de que éste no reúna los requisitos de elegibilidad previstos para el caso.

"En caso de declararse desaparecido algún Ayuntamiento o por renuncia o falta absoluta de la mayoría de sus miembros cuando no procediere que entraren en funciones los suplentes ni que se celebrasen nuevas elecciones, el Congreso del Estado designará entre los vecinos a los Concejos Municipales que concluirán los periodos respectivos. Cuando el Congreso se encuentre en receso, la Diputación Permanente lo convocará a fin de verificar que se han cumplido las condiciones establecidas por esta Constitución."

De esta manera, se observa que existen actos de relación política entre el Estado y sus Municipios que se encuentran previstos en la Constitución Federal y otros que se han encomendado a cada entidad para que, en ejercicio de su autonomía interna, determine a qué autoridad corresponde su conocimiento. Tal es el caso de las facultades señaladas en favor del Congreso por el artículo 41 de la Constitución Local transcrito.

c) Orden jurídico del Distrito Federal. El fundamento de su autonomía estructural y funcional, en relación con los órdenes jurídicos estudiados con antelación, es el artículo 122 constitucional, dispositivo que establece las prevenciones correspondientes a la coexistencia de los órganos de gobierno a quienes se encomienda ejercer el poder político de la entidad, sobre el espacio territorial descrito en el artículo 44 de la Carta Magna. Sus características son diversas a las del

orden jurídico estatal, pero ello resulta ajeno a la presente controversia.

d) Orden jurídico constitucional. Según puede apreciarse de las precisiones relativas a los demás órdenes jurídicos, el constitucional es el que establece, en su aspecto orgánico, el sistema de competencias al que deberán ceñirse la Federación, Estados y Municipios, y Distrito Federal. En lo que se conoce en la doctrina como aspecto dogmático, el orden jurídico constitucional previene las obligaciones que deben ser respetadas, sin distinción, por las autoridades de los tres órdenes jurídicos anteriores.

El orden jurídico constitucional tiende, además de establecer las reglas con base en las cuales deben ejercer sus funciones competenciales las autoridades de los demás órdenes normativos, a preservar la regularidad en dicho ejercicio, consistente en que éste se lleve a cabo dentro del marco de las atribuciones establecidas, sin nunca rebasar los principios rectores previstos en la Constitución Federal, ya sea en perjuicio de los gobernados, por violación de garantías individuales, o bien afectando la esfera de competencia que corresponde a las autoridades de otro orden jurídico.

Para lograr obtener lo anterior, los Poderes Constituyente y Reformador han establecido diversos medios de control de la regularidad constitucional referidos a los órdenes jurídicos federal, estatal y del Distrito Federal, entre los que se encuentran las controversias constitucionales, cuya resolución se ha encomendado a esta Suprema Corte, en su carácter de tribunal constitucional, encargado de velar que la actuación de las autoridades se ajuste a lo establecido en la Carta Magna, encontrando sustento jurídico en el artículo 105, fracción I, antes transcrito.

La razón de ser de esos medios de control radica en que en el sistema constitucional del Estado federal, donde coexisten los órdenes jurídicos descritos con antelación, el ordenamiento que debe darles unidad y cohesión es la propia Constitución. De este modo, el orden jurídico constitucional se erige como un orden total, al extender su validez y eficacia normativa de una manera absoluta sobre los órdenes jurídicos parciales.

En consecuencia, es de concluirse que el ejercicio de control de la regularidad constitucional es una actividad jurídica que no puede ser ubicada, estrictamente, como función propia de ninguno de los órdenes parciales, federal o locales, pues si la pretensión del referido control es la salvaguarda del orden primario o total, la función interpretativa y de decisión sobre si un acto de autoridad está o no apegado a la norma fundamental, debe reputarse como una función de carácter constitucional, que no es susceptible de equipararse a ninguno de los órdenes inmediatamente subordinados a la Constitución -el federal propiamente dicho y los órdenes estatales-, en virtud de que las hipótesis de control contempladas

en la Carta Magna permiten que los actos de autoridad, provenientes tanto de la Federación como de las entidades que la componen, puedan ser anulados por una determinación de uno de los órganos del Poder Judicial Federal, en este caso la Suprema Corte, en ejercicio, como se dijo, de una función de orden constitucional, superior a los restantes órdenes jurídicos parciales.

Ahora bien, el cometido de este Alto Tribunal al resolver controversias constitucionales, consiste en preservar los dos principios que sustentan las relaciones jurídicas y políticas de los órdenes jurídicos parciales señalados con anterioridad, a saber, salvaguardar el federalismo y la supremacía constitucional.

Las anteriores consideraciones se refuerzan si se atiende también a la exposición de motivos de la iniciativa de reforma constitucional de 31 de diciembre de 1994 que, en su parte conducente, señala:

"La Constitución es el ordenamiento supremo que, surgido de nuestras luchas históricas y de nuestros más amplios consensos, recoge la voluntad nacional de los mexicanos y da sustento a nuestro Estado de derecho. La Constitución ha orientado la construcción del país, señala las pautas para avanzar en la democracia hacia la convivencia justa y segura que todos anhelamos y expresa nuestra voluntad de mantener la unidad de la República en un pacto federal que garantice a sus integrantes, Federación, Estados y Municipios, una vida justa y armónica. ...

"Debemos fortalecer tu Estado de derecho que otorgue certidumbre a todos y permita la más cabal expresión de las potencialidades de cada quien y de la sociedad en su conjunto. Fortalecer el Estado de derecho requiere mejores instrumentos para asegurar la plena vigencia de nuestra Constitución, mayor capacidad para aplicar la ley, sancionar a quienes la violan y dirimir las controversias. Los mexicanos queremos un Estado de derecho que asegure una convivencia civilizada, armónica y pacífica, un Estado que haga de la norma jurídica el sustento de la cohesión social y de la suma de nuestros esfuerzos. ...

"En la Suprema Corte de Justicia la voluntad popular ha depositado la función fundamental de mantener el equilibrio entre los Poderes de la Unión, dirimiendo las controversias que pudieran suscitarse entre el Ejecutivo y el Legislativo. Así también, la Suprema Corte es depositaria del supremo mandato de velar por la Unión de la República, dirimiendo las controversias entre Estados, Municipios, el Distrito Federal y la Federación. En la Suprema Corte reside asimismo el mandato de asegurar a los individuos que todo acto de autoridad se apegue estrictamente al orden que la Constitución consagra. De ahí que un régimen de plena vigencia del Estado de derecho y un sistema de administración de justicia y seguridad pública justo y

eficiente, requiere de un Poder Judicial más independiente y más fuerte. ...

"Consolidar a la Suprema Corte como tribunal de constitucionalidad exige otorgar mayor fuerza a sus decisiones, exige ampliar su competencia para emitir declaraciones sobre la constitucionalidad de leyes que produzcan efectos generales, para dirimir controversias entre los tres niveles de gobierno y para fungir como garante del federalismo. Al otorgar nuevas atribuciones a la Suprema Corte, se hace necesario revisar las reglas de su integración a fin de facilitar la deliberación colectiva entre sus miembros, asegurar una interpretación coherente de la Constitución, permitir la renovación periódica de criterios y actitudes ante las necesidades cambiantes del país, y favorecer el pleno cumplimiento de su encargo. ...

"Esta iniciativa de reformas a la Constitución forma parte de un conjunto de acciones que fortalecerán el orden público y la seguridad individual, familiar y patrimonial. Se trata de una reforma profunda que parte de la voluntad de los mexicanos de vivir en un Estado fundado en la soberanía nacional, la democracia, la división de poderes, el federalismo y el respeto a las garantías individuales. Su objetivo último es el fortalecimiento del equilibrio de poderes y del Estado de derecho. ...

"Las controversias constitucionales.

"El artículo 105 del texto original de la Constitución le otorga competencia exclusiva a la Suprema Corte de Justicia para conocer de las controversias que se susciten entre dos o más Estados, entre uno o más Estados y el Distrito Federal, entre los poderes de un mismo Estado y entre órganos de Gobierno del Distrito Federal sobre la constitucionalidad de sus actos. Los mencionados supuestos del artículo 105 no prevén muchos de los conflictos entre los órganos federales, estatales y municipales que la realidad cotidiana está planteando.

"Una de las demandas de nuestros días es la de arribar a un renovado federalismo. Ello hace indispensable encontrar las vías adecuadas para solucionar las controversias que en su pleno ejercicio pueda suscitar. Por este motivo, se propone la modificación del artículo 105 a fin de prever en su fracción primera las bases generales de un nuevo modelo para la solución de las controversias sobre la constitucionalidad de actos que surjan entre la Federación y un Estado o el Distrito Federal, la Federación y un Municipio, el Poder Ejecutivo y el Congreso de la Unión, aquél y cualquiera de las Cámaras de éste o, en su caso la Comisión Permanente, sea como órganos federales o del Distrito Federal, dos Estados, un Estado y el Distrito Federal, el Distrito Federal y un Municipio, dos Municipios de diversos Estados, dos poderes de un mismo Estado, un Estado y uno de sus Municipios, y dos órganos del Distrito Federal o dos Municipios de un mismo Estado. ...

"El gran número de órganos legitimados por la reforma para plantear las controversias constitucionales es un reconocimiento a la complejidad y pluralidad de nuestro sistema federal. Todos los niveles de gobierno serán beneficiados con estas reformas."

Por su parte, la exposición de motivos de la iniciativa correspondiente a la Ley Reglamentaria de las Fracciones I y II del Artículo 105 de la Constitución Federal, publicada en el Diario Oficial de la Federación el once de mayo de mil novecientos noventa y cinco, informa lo siguiente:

"Mediante los procedimientos de controversia constitucional y de acciones de inconstitucionalidad será posible garantizar plenamente la supremacía de la Constitución de una manera general, y no como hasta ahora había acontecido en nuestro orden jurídico, sólo por la vía del juicio de amparo en el caso de la violación de garantías individuales. ...

"Debido a la variedad de posibilidades de control de constitucionalidad que se abrieron con la reforma y a las importantes atribuciones con que para resolverlas cuenta la Suprema Corte de Justicia, cabe afirmar que la misma se ha constituido en un auténtico tribunal constitucional. Ello redunda, necesariamente, en el fortalecimiento del Estado de derecho y en el desarrollo del régimen federal que los mexicanos estamos empeñados en consolidar. En efecto, desde el momento en que la Suprema Corte de Justicia cuenta con nuevas atribuciones para revisar la regularidad de las normas establecidas por los poderes u órganos públicos la actuación de esos poderes u órganos se somete de un modo preciso al derecho y, particularmente, a nuestra Constitución Política."

Del texto de las anteriores iniciativas se desprende que el Constituyente Permanente, al dotar a esta Suprema Corte de facultades para resolver los conflictos que se pudieran suscitar entre los órdenes jurídicos parciales, con tal determinación le asignó el carácter de tribunal constitucional para realizar el control de la regularidad respecto de actos de poder e imperio, que si bien tienen una connotación política, también producen efectos en el sistema jurídico nacional, que son susceptibles de afectar a los habitantes de cada uno de los órdenes parciales sobre los que se ejerce ese control.

De este modo, en el ejercicio del control constitucional no es la connotación política del acto de poder el problema central de la hermenéutica que debe realizarse, pues partiendo del hecho de que el texto constitucional refleja un sistema de valores que en ocasiones pueden presentar ambigüedades, fórmulas genéricas de contenido indeterminado o muy discutibles e incluso contradictorias, el órgano de control está llamado a actualizar e integrar los valores imperantes en la Constitución, salvaguardando el lugar en que se encuentran dentro del sistema jurídico nacional, pues será siempre la decisión del tribunal constitucional una opción jurídica, aun cuando tenga un contenido político, pues la resolución siempre

tendrá que emitirse y apegarse al derecho primario.

Con lo anterior queda satisfecho también el propósito del Constituyente Permanente y del legislador ordinario de fortalecer el federalismo mexicano, que supone la unión de diversas entidades para adquirir una mayor fuerza política, sin que dicha unión importe renuncia alguna a su autonomía, que es denominada por el artículo 40 de la Constitución como "soberanía interna", cuyo ejercicio, se reitera, debe ceñirse necesariamente al marco normativo establecido en la Carta Magna Federal, por lo que dejar fuera del control a alguno de los actos previstos en los medios relativos bajo el cobijo de una malentendida autonomía o soberanía estatal, permitiría la subsistencia de actuaciones arbitrarias que si bien inciden en los diversos niveles de gobierno, en última instancia, a quienes afectan primordialmente es a los habitantes de ellos, que son quienes resienten las consecuencias jurídicas de una decisión o acto de connotación política a cargo de las entidades de poder.

Sentadas las premisas anteriores y retomando el caso concreto, debe recordarse que la Constitución ha establecido las bases del Municipio Libre que deben ser respetadas por las legislaturas y autoridades estatales, dejando a su autonomía interna decidir jurídicamente sobre las cuestiones de su competencia, siempre respetando los postulados establecidos en la Constitución.

Asimismo, debe realizarse un análisis de los criterios sustentados por este Alto Tribunal al resolver previas controversias constitucionales entre Estados y sus Municipios.

Así, en la controversia constitucional número 3/93, resuelta en sesión de seis de noviembre de mil novecientos noventa y cinco, que fue planteada por el presidente municipal, secretario y síndico segundo del Ayuntamiento de San Pedro Garza García, Nuevo León, en contra del Congreso, gobernador y secretario de la Contraloría General, de dicha entidad federativa, en donde se hizo valer la incompetencia de este Alto Tribunal, apoyándose en el hecho de que, conforme a lo dispuesto en el artículo 8o. de la Ley Orgánica de la Administración Pública Municipal del Estado de Nuevo León, respecto de las controversias que se presentaran entre un Municipio y el propio Estado o entre Municipios, tocaba conocer a la Legislatura Local, y toda vez que el Municipio demandante se había sometido a la jurisdicción del Congreso del Estado y este último resolvió mediante decreto de fecha cinco de octubre de mil novecientos noventa y tres, resultaba incongruente que se ocurriera ante la Suprema Corte para dirimir el conflicto.

En la resolución correspondiente -foja 326-, el Pleno sostuvo que el artículo octavo de la citada ley orgánica, visto a la luz de los artículos 105, 115 y 124 de la Constitución Federal, permitía considerar que cuando se refería a "controversias de

cualquier índole", la intervención de la Legislatura Local se limitaba a aquellas cuestiones que surgieran por violaciones o afectaciones en detrimento de la Constitución Estatal, de leyes locales o de disposiciones municipales, empero, no podía referirse a las controversias donde el Municipio planteara violaciones a preceptos constitucionales de orden federal, de lo que se desprendía la competencia de la Suprema Corte para conocer de la controversia planteada, en este aspecto, por estar en el supuesto del artículo 105 de la Constitución Federal, en su texto anterior a las reformas que entrarían en vigor el 1o. de enero de 1995, en cuanto ya reservaba a este Alto Tribunal el conocimiento de las controversias que se suscitaran sobre cuestiones relacionadas con la Constitución Federal.

En dicha resolución -foja 351-, únicamente se atendió a los conceptos de invalidez que se referían a violaciones a la Constitución Federal, y no así a las que importaban transgresiones a la Constitución Local, por no trascender éstas al ámbito constitucional federal.

Asimismo, este Tribunal Pleno, en sesión de veintidós de febrero de mil novecientos noventa y nueve, emitió resolución en la controversia constitucional número 32/97, planteada por el Ayuntamiento del Municipio de Valle de Bravo, Estado de México, en que se demandó la invalidez de la solicitud de revocación y resolución en tal sentido, respecto del mandato del presidente municipal de dicho Ayuntamiento, por haber considerado que tal solicitud violaba la autonomía municipal y transgredía los artículos 115, fracción I, párrafo último, y 133 de la Constitución Federal.

En virtud de lo anterior, se determinó que el origen del acto materia de la controversia, fue la solicitud de revocación del mandato del presidente municipal por haber convocado a sesión de Cabildo al síndico y a varios regidores suplentes (lo que motivó que los propietarios, al estimar que ese acto se traducía implícitamente en una destitución, acudieran a inconformarse al Tribunal de lo Contencioso Administrativo y al gobernador del Estado) por lo que el problema de fondo del asunto se centró en determinar si el presidente municipal, al emitir dicha convocatoria, incurrió en faltas graves que ameritaran la revocación de su mandato.

En relación a todos los actos reclamados, las demandadas adujeron que la actora planteó violaciones al marco jurídico estatal y no a la Constitución Federal, estimando que la controversia resultaba improcedente de acuerdo con lo dispuesto por los artículos 105, fracción I, inciso i), de la Constitución y 19, fracción VIII, de la Ley Reglamentaria del Artículo 105 Constitucional, argumento que fue desestimado porque se consideró que existía un planteamiento de violación al artículo 115 del primer ordenamiento, procediendo a examinar el fondo de la controversia y concluir que se configuraba la violación aducida, en cuanto a que la Legislatura Local indebidamente admitió a trámite la solicitud del gobernador y la declaró

fundada con posterioridad, aun cuando los actos realizados por el presidente municipal no se ubicaban en las hipótesis que la Ley Orgánica Municipal del Estado de México establece como causas graves que pueden dar lugar a la revocación del mandato y que son las únicas que la Constitución Federal señala para que el Congreso del Estado pueda proceder a dicha revocación.

De lo anterior se desprende que la violación que se adujo afectó directamente a uno de los elementos esenciales de los Municipios como es su órgano de gobierno, que por mandato constitucional, debe ser producto de elecciones y sólo puede ser modificado en los términos que el propio artículo 115 establece como facultad excepcional de las Legislaturas Locales consistente, entre otras, en la de revocar el mandato de alguno de los miembros del Ayuntamiento por alguna de las causas graves que la ley local prevenga, por lo que si la misma Constitución remite a la ley local para la determinación de las causas graves, para analizar si la Legislatura Estatal se apegó al precepto constitucional, fue necesario examinar si los hechos que dieron lugar a la determinación de revocación del mandato, colmaban las hipótesis consagradas en la norma secundaria.

En estas condiciones, el planteamiento realizado tanto en la demanda inicial, como en su ampliación, se relacionó con la violación al artículo 115 constitucional, en la parte señalada, aunque para su estudio debió analizarse la adecuación de la actuación del Congreso a la Ley Orgánica Municipal, pues ello resultó indispensable para la determinación de la existencia de la violación constitucional aducida.

Así, se señaló que el artículo 115, establece, en su fracción I, primera parte, una de las prerrogativas básicas del Municipio y que es una clara expresión de democracia, a saber, que "será administrado por un Ayuntamiento de elección popular directa". En la propia fracción, en su párrafo tercero, previene una situación excepcional que da lugar a un mecanismo para suspender Ayuntamientos, declarar que han desaparecido y suspender o revocar el mandato de alguno de sus miembros. Esto significa que frente al principio democrático aludido, el propio texto constitucional previene una excepción.

De lo anterior resulta que la conclusión anterior implicaba que es una prerrogativa de los Municipios consignada en la Constitución Federal, que cuando se dé el caso de excepción especificado, se haga dentro del estricto marco señalado en la Norma Fundamental, que hace una remisión a la ley local en cuanto a la determinación de las causas graves que pueden dar lugar a la decisión de la legislatura. De ahí que cuando se cuestiona la decisión de una legislatura consistente en revocar el mandato de un presidente municipal, se tenga que analizar la adecuación a lo dispuesto en la ley local, pero ello no constituye propiamente una cuestión de legalidad, sino de constitucionalidad, puesto que, como se ha dicho, ese requisito emana de modo directo del artículo 115 de la Constitución.

En la solución descrita, el Tribunal Pleno consideró que no se trataba de entrar al estudio de una cuestión de legalidad, sino de constitucionalidad, dado que la propia Constitución Federal señalaba la excepción al principio democrático referente a que el Municipio sería administrado por un Ayuntamiento de elección popular directa, como lo es el de revocar el mandato de alguno de sus miembros por alguna de las causas graves que la ley local prevenga.

Por otro lado, cabe resaltar que este Alto Tribunal también ha sostenido que es procedente el estudio de los argumentos en que se aduzcan violaciones indirectas a la Constitución Federal, relacionadas con disposiciones secundarias, siempre que, de resultar fundadas, sean aptas para provocar la invalidación del acto impugnado, lo cual se traduce en que, en esta instancia, puede verificarse el procedimiento de formación del acto impugnado, para determinar si se dio o no cumplimiento a las formalidades esenciales previstas en la normatividad que lo origina y que por su inobservancia, por vía de consecuencia, resultarían transgresoras de algún dispositivo de la Constitución Federal que prevenga tales formalidades, siendo que, de no ser así, procederá decretar su nulidad, ante la falta de observancia de esos requisitos formales.

La jurisprudencia 23/97, visible en el Semanario Judicial de la Federación, Tomo V, correspondiente a abril de 1997, página 134, es la tesis que contiene el razonamiento sobre la procedencia del examen de violaciones indirectas de naturaleza formal, a la luz de lo estatuido por el artículo 16 constitucional, de la manera siguiente:

"CONTROVERSIA CONSTITUCIONAL. ES PROCEDENTE EL CONCEPTO DE INVALIDEZ POR VIOLACIONES INDIRECTAS A LA CONSTITUCIÓN POLÍTICA DE LOS ESTADOS UNIDOS MEXICANOS, SIEMPRE QUE ESTÉN VINCULADAS DE MODO FUNDAMENTAL CON EL ACTO O LA LEY RECLAMADOS. Resulta procedente el estudio del concepto de invalidez invocado en una controversia constitucional, si en él se alega contravención al artículo 16 de la Constitución Federal, en relación con otras disposiciones, sean de la Constitución Local o de leyes secundarias, siempre que estén vinculadas de modo fundamental con el acto o la ley reclamados, como sucede en el caso en el que se invocan transgresiones a disposiciones ordinarias y de la Constitución Local dentro del proceso legislativo que culminó con el ordenamiento combatido que, de ser fundadas, lo invalidarían. Lo anterior es acorde con la finalidad perseguida en el artículo 105 de la Carta Magna, de someter a la decisión judicial el examen integral de validez de los actos impugnados."

En los argumentos que sustentaron el criterio anterior, este Tribunal Pleno estableció que la conclusión a que se llegó obedecía al hecho de que la apertura en el examen de conceptos de invalidez propiamente de legalidad, estaba autorizado por la finalidad de decisión judicial en cuanto al análisis integral de la validez del acto impugnado, tal y como sucede cuando

1/23/13 11:31 AM

se aducen transgresiones ocurridas durante el proceso legislativo, previo a la formación de la norma.

Lo anterior revelaba que, en las controversias constitucionales, lo estrechamente vinculado a lo constitucional, cuando no se trate de disposiciones de la parte orgánica que regulen expresamente la relación entre entes de poder o sus atribuciones, debía circunscribirse únicamente a lo relacionado con las formalidades que prevé la Carta Magna para la validez de todo acto de autoridad, como por ejemplo, si durante la formación del acto se siguieron las formalidades esenciales requeridas por el procedimiento, si fue emitido por una autoridad competente o si está fundado y motivado.

Una nueva reflexión y análisis de los criterios reseñados, confrontada con la finalidad de la reforma constitucional vigente a partir de mil novecientos noventa y cinco, consistente en fortalecer el federalismo y erigir a esta Suprema Corte como tribunal constitucional, garante de la supremacía de la Carta Magna, lleva a apartarse de las tesis que ha venido sosteniendo, en las que se soslaya el análisis de conceptos de invalidez que no guarden una relación directa e inmediata con preceptos o formalidades previstos en la Constitución Federal, por las razones que a continuación se exponen.

Partiendo de la base de que una de las finalidades del control constitucional consiste en dar unidad y cohesión a los diferentes órdenes jurídicos parciales, en las relaciones de las entidades u órganos de poder que las conforman, tal situación justifica que una vez que en el texto de la Constitución se ha consagrado un medio de control para dirimir conflictos entre dichos entes, dejar de analizar ciertas argumentaciones sólo por sus características formales o su relación mediata o inmediata con la norma fundamental, produciría, en numerosos casos, la ineficacia del medio de control de que se trate, impidiendo salvaguardar la armonía y el ejercicio pleno de las libertades y competencias de cada uno de ellos.

En efecto, de acuerdo con las iniciativas de las reformas constitucional y legal que quedaron transcritas con anterioridad, lo que se pretende es que la Suprema Corte de Justicia sirva como baluarte en la defensa del Estado de derecho, pues si las controversias constitucionales se instituyeron como un medio de defensa entre poderes y órganos de poder, cuyo sentido final es lograr el bienestar de la población que se encuentra bajo el imperio de aquéllos, resultaría contrario al propósito señalado, así como al fortalecimiento del federalismo, cerrar la procedencia del citado medio de control por interpretaciones técnicas, lo que implícitamente podría autorizar arbitrariedades que redundarían en la transgresión del orden constitucional que se pretende salvaguardar.

Conviene destacar que la afirmación contenida en el párrafo anterior de que si bien las controversias constitucionales se instituyeron como un medio de defensa entre poderes y órganos de poder, su sentido final es lograr el bienestar de la

persona humana que se encuentra bajo el imperio de aquéllas, encuentra claro sustento en el análisis relacionado en todos los preceptos de la Constitución Política de los Estados Unidos Mexicanos.

El título primero, que comprende sus primeros veinticuatro artículos se ocupa de las garantías individuales que constituyen una barrera infranqueable para todas las autoridades que, de violentarlos, podrán ser señaladas como responsables en un juicio de amparo que promueva un gobernado que estime que se incurrió en esa arbitrariedad, todo ello, con fundamento en el artículo 107 de la Constitución. En el artículo 16 se establece la garantía de legalidad que exige que las autoridades sólo puedan hacer lo que la ley les permite, lo que significa que no pueden actuar fuera de su competencia. En el artículo 14 se previene la garantía de debido proceso legal, lo que obliga a cumplir con los procedimientos que las leyes establezcan antes de emitir una resolución que pueda producir una afectación.

Vinculados con estos principios se encuentran los artículos 39, 40, 41 y 49 de la propia Carta Fundamental. En el primero se reconoce el principio de soberanía popular, conforme al cual todo poder público dimana del pueblo y se constituye para beneficio de éste. En el segundo, se previene que es voluntad del pueblo mexicano constituirse en una República representativa, democrática, federal, compuesta por Estados libres y soberanos. En el tercero, se precisa que el pueblo ejerce su soberanía por medio de los Poderes de la Unión, en los casos de la competencia de éstos y por los de los Estados en lo que toca a sus regímenes interiores, regulándose en su parte restante los principios de derecho electoral que tienden a salvaguardar el ejercicio de la democracia. En el cuarto, finalmente, se reconoce el principio de la división de poderes, técnica de carácter jurídico-político que busca evitar la concentración del poder y a través del equilibrio de los tres poderes - Legislativo, Ejecutivo y Judicial-, logra el control y limitación recíproca entre ellos.

En los artículos 115 y 116 se consagra el Municipio Libre como base de la división territorial y de la organización política y administrativa de los Estados, reconociéndoles a aquéllos prerrogativas específicas y estableciendo a dichos Estados su marco jurídico de actuación.

De acuerdo con este esquema de carácter constitucional, que la Suprema Corte de Justicia de la Nación debe salvaguardar, siempre se encuentra latente e implícito el pueblo y sus integrantes, que constituyen el sentido y razón de ser de las partes orgánica y dogmática de la Constitución, lo que justifica ampliamente que los mecanismos de control constitucional que previene, entre ellos las controversias constitucionales, deben servir para salvaguardar el respeto pleno del orden primario, sin que pueda admitirse ninguna limitación que pudiera dar lugar a arbitrariedades que en esencia irían en contra del pueblo soberano.

De acuerdo con el panorama descrito, aun cuando la materia fundamental sobre la que versen las decisiones de las controversias constitucionales se relacionen con actos de carácter político, si su expresión tiene también una connotación jurídica, son susceptibles de ser examinados por esta Suprema Corte de Justicia, dado que por la naturaleza total que tiene el orden constitucional, en cuanto tiende a establecer y proteger todo el sistema de un Estado de derecho, su defensa a través de los medios de control de su regularidad debe ser también integral, independientemente de que pueda tratarse de la parte orgánica o la dogmática de la Norma Suprema, sin que se pueda parcializar este importante ejercicio por meras construcciones interpretativas.

Ciertamente, la doctrina ha establecido que las garantías individuales benefician, en su carácter de derechos públicos subjetivos, a los gobernados, quienes pueden oponerlos a los actos de autoridad; sin embargo, las prevenciones constitucionales que establecen esas normas fundamentales generales disponen también obligaciones que deben cumplir las autoridades en su actuar, siendo que no existe razón jurídica para dejar de requerirlas cuando su destinatario sea otra autoridad, órgano o ente de poder, perteneciente al mismo u otro orden jurídico parcial, pues basta con que el acto de que se trate sea susceptible de afectar el ejercicio competencial de la entidad para que este Alto Tribunal pueda determinar, sin cortapisas y en su integridad, su apego al Estado de derecho, lo que se traduce en la salvaguarda de la supremacía constitucional, como orden jurídico total.

Llevando los razonamientos expuestos al caso que se examina, es de concluirse que cuando una legislatura dirime un conflicto de límites entre Municipios, respetando siempre los principios contenidos en la Constitución Federal, ejercita plenamente su autonomía, ejercicio que es susceptible de examen integral por esta Suprema Corte para evitar arbitrariedades, pues de lo contrario se podría estar reconociendo y autorizando implícitamente la comisión de infracciones a la Norma Suprema, violaciones que no serían susceptibles de purgarse con posterioridad.

Efectivamente, declarar la improcedencia de la controversia constitucional, bajo la óptica de que examinar cualquier acto proveniente de la Legislatura Estatal para con sus Municipios, vulneraría la autonomía local, en virtud de que en esta clase de conflictos sólo son susceptibles de estudio los aspectos sobre invasión de esferas competenciales o de cuestiones meramente formales, conduciría prácticamente a derogar el artículo 105, fracción I, inciso i), de la Constitución, puesto que solamente reduciría la procedencia y examen de fondo en las controversias constitucionales a un reducido número de supuestos, con lo que quedarían soslayadas del control, hipótesis que pudieran presentarse en las relaciones políticas entre Estados y Municipios, en que las autoridades estatales, teniendo facultades constitucionales para realizar actos que inciden

sobre la esfera de atribuciones de las autoridades municipales y cubriendo los requisitos formales previstos en la Constitución Federal, cometan arbitrariedades o emitan actos incongruentes que redundan en la desarmonía y desajuste del orden normativo del orden jurídico parcial estatal.

De este modo, de admitir la opinión contraria a la que en esta resolución se sustenta, quedaría cumplido, sólo en apariencia, el principio de autonomía interna (soberanía) de las entidades federativas, pues se permitiría que las autoridades estatales incumplieran con la obligación de respetar los postulados de la Carta Magna Federal, deber impuesto precisamente a los Estados por el artículo 40 de dicho ordenamiento.

En efecto, si como se ha establecido, el control ejercido por la Suprema Corte es una función constitucional, derivada directamente de las normas constitucionales, siendo su materia la totalidad de los actos autoritarios federales y locales enumerados en el artículo 105, fracción I, constitucional, cuya finalidad consiste en preservar los dos principios que sustentan las relaciones jurídicas y políticas de los órdenes jurídicos parciales señalados con anterioridad, a saber, salvaguardar el federalismo y la supremacía constitucional, no debe existir una limitante conceptual para examinar los aspectos propuestos como conceptos de invalidez, porque la actualización de una arbitrariedad, cualquiera que sea su connotación, al incidir en la armonía en la relación entre entidades de diferentes órdenes jurídicos parciales, u órganos pertenecientes a uno de ellos, provoca el desajuste de todo el orden jurídico total, cuyo fortalecimiento es el objetivo de este medio de control, en detrimento de los gobernados a los que, en esencia, se trata de servir.

Por todo lo expresado en el presente considerando, procede concluir que esta Suprema Corte de Justicia no sólo se encuentra autorizada por la Constitución para examinar cualquier planteamiento propuesto como concepto de invalidez en las controversias constitucionales, sino que tiene el deber de hacerlo para responder con fidelidad a la responsabilidad que se le ha conferido, de vigilar celosamente a través de los diferentes medios de control de rango constitucional, que el orden supremo que la Constitución previene no sea vulnerado.

Con base en todas las consideraciones expuestas se procede a continuación a examinar los argumentos que en la especie hace valer el Ayuntamiento actor.

SEXTO. En su primer concepto de invalidez, el Ayuntamiento de Temixco expresa que durante el procedimiento seguido por la Legislatura Estatal no se observó la garantía de audiencia, porque conforme al artículo 7o. de la Ley Orgánica Municipal del Estado de Morelos, debe permitirse oír en defensa a los Ayuntamientos afectados, siendo que, en la especie, solamente

se hizo comparecer al presidente municipal de la actora, debiendo haberse escuchado también al síndico y a los regidores, toda vez que éstos igualmente forman parte del Ayuntamiento, por lo que la omisión en emplazarlos al procedimiento que culminó con el decreto impugnado, transgredió lo dispuesto en el artículo 14, segundo párrafo, de la Constitución Federal.

El invocado artículo 7o. de la Ley Orgánica Municipal del Estado de Morelos consagra los lineamientos esenciales del procedimiento cuando, entre otros supuestos, se trate de la solución a cuestiones de límites entre Municipios a cargo del Congreso del Estado de Morelos, estableciendo la previa audiencia de los Ayuntamientos afectados.

Lo anterior revela que el requisito de permitir oír en defensa a los Ayuntamientos que pudieran verse afectados con la resolución a la controversia por límites territoriales, es una formalidad esencial prevista en la ley que regula el procedimiento aplicable al acto impugnado, cuya omisión produciría una transgresión a la norma legal susceptible de invalidar el decreto legislativo, porque, de no observarse dicho requisito, se dejaría inaudita a una de las partes involucradas en la controversia de límites territoriales, lo que se traduce en una violación que pudiese incidir de modo trascendente en la resolución a cargo de la legislatura, pues ésta no contaría con los argumentos y pruebasaportados por aquélla.

Al respecto, en las contestaciones a cargo del gobernador de la entidad y de la representante del Congreso Estatal, así como en el escrito presentado por el Municipio de Cuernavaca, parte tercero interesada, se precisa que la formalidad requerida por la ley se encuentra satisfecha con el emplazamiento al presidente municipal del Ayuntamiento de Temixco, pues dicha autoridad tiene la representación política, jurídica y administrativa de la entidad, en términos de lo establecido en el artículo 55 de la Ley Orgánica Municipal, además de que ejerció su derecho de defensa a través de las pruebas que aportó al procedimiento que culminó con la emisión del decreto que se impugna.

El contenido del precepto legal que invocan las partes demandada y tercero interesada es el siguiente:

"Artículo 55. El presidente municipal es el representante político, jurídico y administrativo del Ayuntamiento, deberá residir en la cabecera municipal durante el lapso de su periodo constitucional y, como órgano ejecutor de las determinaciones del Ayuntamiento, tiene las siguientes facultades y obligaciones: ..."

Tal y como lo aducen las autoridades demandadas, el precepto transcrito establece que se depositan en el presidente municipal las facultades de representación del Ayuntamiento, en todos sus ámbitos, destacando que es el político el que atañe al caso a examen, pues el decreto impugnado incide sobre la jurisdicción territorial del Municipio de Temixco.

Ahora bien, para determinar si el emplazamiento al presidente municipal del Ayuntamiento actor, para que compareciera al procedimiento seguido ante el órgano legislativo, satisface el requisito previsto en el artículo 7o. de la Ley Orgánica Municipal, se hace hincapié, en primer término, en la existencia del oficio recibido por dicha autoridad el treinta y uno de enero de mil novecientos noventa y cinco (foja 225 del cuaderno de pruebas), que textualmente dice:

"C. César Cruz Ortiz. Presidente de Temixco. Presente.

"Con toda atención me dirijo a usted para comunicarle que el pasado 6 de diciembre, esta dependencia a mi cargo recibió el oficio No. 31/994, expedido por el Comité Social de Base del Movimiento Territorial de la Colonia Adolfo López Mateos Sur, con anexos de 312 firmas.

"En el oficio descrito se le solicita a esta Comisión de Límites Territoriales, la intervención correspondiente, ya que manifiestan pertenecer por hecho y derecho al Municipio de Cuernavaca.

"Es de vital importancia comunicarle a usted, que antes de profundizar las investigaciones con los elementos históricos y geográficos con que cuenta esta dependencia, necesitamos que tenga usted a bien nombrar a quien represente a ese H. Ayuntamiento, para que nos haga llegar a la mayor brevedad posible la documentación que tengan y así iniciar pláticas, las cuales nos llevan a agilizar y dirimir este asunto que a juicio del Gobierno del Estado, podría crear un conflicto social, el cual podríamos evitar entre los dos Ayuntamientos y sus habitantes, tanto de Cuernavaca como de Temixco.

"En espera de su pronta intervención, aprovecho la oportunidad para enviarle un cordial saludo. Atentamente. Ing. Alejandro Fco. Tola Vázquez. Temixco, Mor. Vocal Ejecutivo de la Comisión de Límites Territoriales del Estado."

Asimismo, se atiende al contenido del oficio de emplazamiento al procedimiento por cuestión de límites territoriales entre Municipios, recibido en la sede del presidente municipal el diez de junio de mil novecientos noventa y siete (foja 165 del cuaderno de pruebas), que dice:

"Cuernavaca Morelos, junio 10, 1997.

"Antonio Domínguez Jarillo.

"Presidente municipal de Temixco,

"Presente.

"Por este conducto y atento al artículo 12 párrafo segundo, de la Ley Orgánica Municipal, en razón del conflicto limítrofe suscitado entre este Municipio y el de Cuernavaca, Morelos, y siendo de interés social, político y legal, solucionar dicho conflicto entre estos Municipios y con el objeto de que esta soberanía tenga información directa de los hechos, solicitamos de usted señor presidente, tenga a bien asistir ante la Comisión de Puntos Constitucionales y Legislación de este Honorable Congreso, para aclarar este punto.

"A efecto de llevarse a cabo esta presentación, se ha señalado el día viernes 13 de junio del presente año, a las 11:00 horas en el salón de comisiones de esta soberanía.

"Sabiendo de su interés por la solución de este problema, contamos con su presencia a nuestra invitación.

"Atentamente.

"Sufragio efectivo. No reelección.

"Presidente de la Comisión de Puntos Constitucionales y Legislación.

"Dip. Lic. Víctor Manuel Saucedo Perdomo (rúbrica)."

El contenido del artículo 55 de la Ley Orgánica Municipal y los oficios en que el vocal ejecutivo de la Comisión de Límites Territoriales del Estado hizo del conocimiento del presidente municipal de Temixco la investigación sobre los elementos necesarios a fin de dar respuesta a la petición de los habitantes de la colonia Adolfo López Mateos Sur, y el emplazamiento para que compareciera, ante el Congreso Estatal, a la primera audiencia relativa a la cuestión de límites con el Municipio de Cuernavaca, demuestran que se observó la formalidad del procedimiento prevista en el numeral 7o. del ordenamiento legal, pues si el presidente municipal tiene la representación política del Ayuntamiento, y en la notificación para que dicha autoridad concurriera ante la legislatura, se especifica que se trata de un asunto que atañe a los intereses de la entidad municipal en el ámbito político, como lo es el procedimiento de la cuestión de límites con el Municipio de Cuernavaca, es

evidente que no era necesario especificar que el emplazamiento se hacía a todo el Ayuntamiento, porque si es a través del presidente municipal, en su carácter de representante político, como la entidad puede defender sus intereses en lo tocante a su extensión territorial, bastaba con que a él se le requiriera comparecer ante el Congreso Local a manifestar los argumentos y ofrecer las pruebas que beneficiaran a la entidad que representa.

La conclusión anterior en ningún momento implica que los restantes miembros que integran el Ayuntamiento no pudiesen ser escuchados en el procedimiento legislativo, puesto que, ante una situación como la que se presentó, susceptible de afectar la jurisdicción que la entidad ejercía sobre la que considera parte de su territorio, la cual se puso en conocimiento del presidente municipal desde mil novecientos noventa y cinco, resulta patente que dicho funcionario se encontraba en plena aptitud de dar cuenta, en sesión de Cabildo, a los miembros del Ayuntamiento, para discutir y acordar las medidas a adoptar en relación con el procedimiento seguido ante el Congreso Estatal, atribución que se encuentra contemplada como obligación a cargo de aquél, en la fracción III del artículo 55 de la Ley Orgánica Municipal del Estado de Morelos, que dice:

"El presidente municipal ... tiene las siguientes facultades y obligaciones:

"...

"III. Presidir las sesiones del Ayuntamiento, con voz y voto en las discusiones y voto de calidad en caso de empate, así como convocar a los miembros del Ayuntamiento para la celebración de las sesiones extraordinarias."

Con independencia de los razonamientos anteriores, del examen de las pruebas aportadas por las demandadas, aparece que el presidente municipal del Ayuntamiento actor realizó las manifestaciones y ofreció las pruebas que estimó favorables a los intereses de la entidad que representa, tal y como se observa del escrito de cuatro de julio de mil novecientos noventa y siete (fojas 62 a 66 del cuaderno de pruebas), que a continuación se transcribe en su parte conducente:

"H. Ayuntamiento de Cuernavaca, Morelos.

"H. Ayuntamiento de Temixco, Morelos.

"Expediente número:

"Juicio conflicto de límites territoriales.

"H. Congreso del Estado Libre y Soberano de Morelos.

"Presente.

"Ingeniero Antonio Domínguez Jarillo y Jorge Luis Lagunas González, promoviendo el primero en mi carácter de Presidente Constitucional del Municipio de Temixco, Morelos, y el segundo de síndico procurador del Ayuntamiento de Temixco, Morelos; señalando como domicilio para oír y recibir notificaciones el sitio en avenida Emiliano Zapata número del centro de Temixco, Morelos; designando al licenciado en derecho Alejandro Jarillo Gama, quien ejerce con cédula profesional número 1511018 debidamente requisitada como abogado patrono. Con el debido respeto comparecemos para exponer: Que por medio del presente ocurso estando en tiempo y forma venimos a desahogar la vista que se nos diera, en los siguientes términos: En cuanto a la prestación pretendida negamos que le asista el derecho al Ayuntamiento de Cuernavaca, Morelos, para reclamar los territorios a que hace alusión en su solicitud en este conflicto, por las razones que pasamos a exponer a continuación:

"En cuanto a la contestación al capítulo de hechos manifestamos lo siguiente:

"1. Con fecha 12 de marzo de 1997, Lya Gutiérrez Quintanilla, entonces director general de Relaciones Públicas del Gobierno del Estado, dirigió información al licenciado Alfonso Sandoval Camunas, en su carácter entonces de presidente municipal de Cuernavaca, Morelos, consistente en la petición que se le hacía al licenciado Jorge Carrillo Olea, Gobernador Constitucional del Estado de Morelos, a fin de dar solución al presente asunto, respecto a las colonias Lázaro Cárdenas, Adolfo López Mateos, Mina 5, Pilares, Parota, Loma Bonita, Apatzingán, Los Guayabos, Chipitlán, y otros que se agregaron posteriormente.

"2. Cabe hacer mención que en la audiencia llevada a cabo en los recintos del Congreso del Estado, la comisión comisionada para este asunto, nos hizo llegar el dictamen en materia de topografía, suscrito por el ingeniero Alejandro Tola, en su carácter de director de Límites Territoriales del Gobierno del Estado de Morelos, en el que informa entre otras cosas, precaria y parcialmente a favor del Ayuntamiento de Cuernavaca, Morelos, sin tomar en cuenta pruebas documentales obrantes en favor del Ayuntamiento de Temixco, Morelos, así mismo resulta, la determinación no apegada a la verdad y al derecho por lo que desde ahora impugnamos dicho dictamen.

"Cabe hacer mención que el dictamen a que hace alusión, el ingeniero Alejandro Tola, para empezar, no considera el Bando de Policía y Buen Gobierno del Honorable Ayuntamiento de Temixco, Morelos, de 1967-1970 de fecha 14 de agosto de 1967, el que bien dice y sin temor a equivocación literalmente se transcribe a continuación: (se transcriben los límites territoriales del Municipio de Temixco según el referido bando).

"Como es de verse ésta es una resolución aprobada de tiempo y forma, de tal manera que observó la Ley Orgánica de los Municipios del Estado en su artículo 23 por lo que se publica y se hace obligatoria el día 14 de agosto de 1967, publicada en el Periódico Oficial del Estado al que no interpusieron recurso alguno el Ayuntamiento de Cuernavaca, por sí o a través de representantes legales, es decir, al no haber sido impugnada tiene fuerza legal.

"3. A mayor abundamiento cito la Ley de División Territorial del Estado de Morelos, suscrita por el entonces Gobernador Constitucional del Estado de Morelos Vicente Estrada Cajigal, que el Congreso del Estado Libre y Soberano de Morelos, expide con fecha 17 de abril de 1934, en su artículo 9o. mismo que se transcribe a continuación literalmente: 'Artículo 9o. Corresponde a la jurisdicción del Municipio de Cuernavaca, los siguientes centros de población: Acapantzingo, Ahuatepec, Alameda, Amatitlán, Buena Vista del Monte, Cantarranas, Cuernavaca, Chamilpa, Chapultepec, Chipitlán, El Salto, Felipe Neri, Francisco Leyva, Las Huertas, Ocotepec, Tetela del Monte y Tlaltenango.'.

"Cabe agregar que es verdad jurídica y por lo tanto este Congreso ha tenido a bien resolver desde antiquísimos tiempos el conflicto de límites territoriales que hoy nos ocupa y por ende es asunto totalmente concluido, y es el caso que de nueva cuenta el Ayuntamiento de Cuernavaca, pretende hacer renacer el asunto mismo que ya se concluyó, sobre las colonias a que hace alusión, por lo que es idéntico el presente asunto al que ya se resolvió, es decir las mismas partes, los mismos reclamos y los mismos pueblos, en que dicha determinación debe de ser entendida, sin mayor objeción.

"4. El Periódico Oficial 'Tierra y Libertad' Órgano del Estado Libre y Soberano de Morelos, en que publica leyes y decretos que son obligatorios, cuyo director es el licenciado Jorge Morales Barud, hoy secretario general de Gobierno, con fecha 28 de mayo de 1997, sexta época, número 3861, su artículo 9o. que a la letra dice mismo que literalmente se transcribe a continuación (se transcribe el artículo que contiene los límites del Municipio de Temixco).

"Para resolver el presente conflicto deben tomarse en consideración pruebas documentales oficiales entendiéndose como cosa juzgada, debiéndosele dar crédito y fe a ese Congreso.

"Respecto al dictamen, realizado por el ingeniero Alejandro Tola, debe quedar sin efectos en virtud de los documentos invocados y ahora exhibidos se encuentra debidamente delimitado ambos territorios municipales, a más de que es impugnado por los mismos motivos.

"Pruebas.

"Se ofrecen como tales las siguientes:

"1. Testimonial, a cargo de Celio Huicochea Suárez, expresidente municipal de Temixco, en virtud de que gobernó en los Municipios ahora en conflicto según oficio de fecha 30 de agosto de 1984.

"2. Testimonial, a cargo de Flumencio Sánchez Beltrán, quien interviniera en la elaboración de límites territoriales con relación al decreto promulgado por el entonces gobernador Vicente Estrada Cajigal.

"3. Testimonial, a cargo de Eligio Castañeda, vecino honorable y originario de Temixco, Morelos.

"4. Documental, de fecha 30 de agosto de 1984, suscrito por Cecilio Huicochea Suárez, entonces presidente municipal de Temixco, Morelos, en el que comunica (sic).

"5. Documental, en el Bando de Policía y Buen Gobierno del Honorable Ayuntamiento de Temixco, Morelos, de 1967-1970 de fecha 14 de agosto de 1967, en el que se determinan los límites territoriales de Temixco, Morelos.

"6. Documental, consistente en el Periódico Oficial 'Tierra y Libertad' Órgano del Estado Libre y Soberano de Morelos, en que publica leyes y decretos que son obligatorios, cuyo director es el licenciado Jorge Morales Barud, hoy secretario general de Gobierno, con fecha 28 de mayo de 1997, sexta época, número 3861, en el que se determina los límites territoriales de Temixco, Morelos.

"7. Dictamen pericial, consistente en el que ya es obrante en los presentes autos de los límites territoriales que forman parte de los diferentes decretos.

"Defensas y excepciones.

"Opongo desde luego la de cosa juzgada, en virtud de los decretos mencionados como pruebas 5 y 6 del presente ocurso, por lo que solicitamos se suspenda el presente conflicto, en virtud de lo obvio de las actuaciones que anteceden al presente.

"Por lo anteriormente expuesto y fundado,
"A ustedes integrantes del Congreso del Estado Libre y Soberano de Morelos.

"Pedimos atentamente se sirva:

"Primero. Tenernos por presentados con la personalidad que ostentamos, en tiempo y forma desahogando la vista que nos diera.

"Segundo. Tenernos en tiempo y forma dando contestación a la demanda entablada en nuestra contra oponiendo defensas y excepciones.

"Tercero. Tener como pruebas de nuestra parte las que se ofrecen en su totalidad, mismas que relacionados con todos y cada uno de los puntos de la contestación y de la verdad de los hechos.

"Cuarto. Tenernos designando como mi abogado patrono al profesionista en cita.

"Quinto. Tenernos señalando como domicilio para oír y recibir notificaciones el indicado, y así como persona autorizada para los mismos efectos.

"Protestamos lo necesario.

"Sufragio efectivo. No reelección.

"Presidente Constitucional del Municipio de Temixco, Morelos.

"Síndico procurador del Ayuntamiento de Temixco, Morelos.

"Ing. Antonio Domínguez Jarillo.

"Jorge Luis Lagunas González.

"Cuernavaca, Morelos, a 04 de julio de 1997."

En las referidas condiciones, dado que el presidente municipal es el representante político del Ayuntamiento actor, a quien se emplazó al procedimiento relativo a la iniciativa de decreto legislativo que resolvió la cuestión de límites con el Ayuntamiento tercero interesado, habiendo realizado, conjuntamente con el síndico procurador, las manifestaciones y ofrecido las pruebas para defender los intereses de su representado, es de concluirse que no existe la violación a la formalidad procedimental que se aduce, debiendo desestimar por infundado el concepto de invalidez hecho valer sobre el particular.

SÉPTIMO. En el segundo concepto de invalidez, el actor aduce la existencia de una diversa violación procedimental consistente en que, con posterioridad al ofrecimiento y desahogo de pruebas por los Ayuntamientos afectados, la Legislatura Estatal no recabó la opinión del titular del Ejecutivo, como lo dispone la parte final del artículo 7o. de la Ley Orgánica Municipal.

Al igual que en lo relativo a la audiencia de los Ayuntamientos, la opinión del gobernador de la entidad constituye una formalidad procedimental prevista en la ley secundaria, por lo que corresponde determinar si su eventual inobservancia es susceptible o no de producir la invalidez del decreto que se controvierte.

El artículo 7o. de la Ley Orgánica Municipal de la entidad establece que las cuestiones que se susciten sobre límites entre Municipios "... serán resueltas por la Legislatura del Estado, con audiencia de los Ayuntamientos afectados y opinión del Ejecutivo Estatal.".

La previsión anterior lleva a este Tribunal Pleno a concluir que la eventual omisión de la legislatura en recabar la opinión a cargo del gobernador en el procedimiento sobre conflicto de límites entre Municipios, no constituye una violación que sea apta para declarar la invalidez del decreto impugnado, porque como tal opinión sólo constituye una manifestación del parecer del titular del Ejecutivo Estatal, en torno a la controversia planteada, carente de fuerza vinculativa para condicionar el sentido de la resolución, cuyo dictado corresponde exclusivamente al Congreso, quien puede legalmente adoptar o rechazar lo expresado en la aludida opinión, debe concluirse que su ausencia en nada puede condicionar la validez del

decreto impugnado.

Sirven de apoyo a la anterior determinación, las tesis jurisprudencial y aislada sustentadas por la anterior Segunda Sala de este Alto Tribunal, así como el criterio emitido por el Pleno de la Suprema Corte, publicadas, respectivamente, en la compilación de 1995, Tomo III, página 155, en el Semanario Judicial de la Federación, Séptima Época, Tomo 31, Tercera Parte, página 18, y Sexta Época, Tomo CXXXV, Primera Parte, página 11, aplicables por analogía al caso que se resuelve, por cuanto a que consagran la irrelevancia de la rendición de opiniones en procedimientos cuya resolución corresponde a autoridades que no están jurídicamente vinculadas con la manifestación relativa, que respectivamente dicen:

"COMISIÓN AGRARIA MIXTA. NO ES AUTORIDAD PARA LOS EFECTOS DEL AMPARO AL RENDIR DICTAMEN SOBRE PROCEDENCIA DE DOTACIÓN DE TIERRAS. No reviste la característica de ser un acto de autoridad para los efectos del juicio de amparo, el dictamen que rinden las Comisiones Agrarias Mixtas sobre la procedencia o improcedencia de una dotación de tierras, de conformidad con los artículos 237 del Código Agrario y 291 de la Ley Federal de Reforma Agraria, porque constituyen una simple opinión que tales órganos someten al Ejecutivo Local, la cual puede adoptarse o rechazarse por el gobernador del Estado en la resolución que dicte de conformidad con los artículos 238 delCódigo Agrario y 292 de la Ley Federal de Reforma Agraria; por lo que, al actuar las Comisiones Agrarias Mixtas en cumplimiento de la citada función, no tienen el carácter de autoridades para los efectos del juicio de amparo."

"AGRARIO. RESOLUCIÓN PRESIDENCIAL. SENTENCIA QUE AMPARA. QUE OMITA EL ESTUDIO DE LA OPINIÓN DEL CUERPO CONSULTIVO NO CONDUCE A SU REVOCACIÓN. El agravio consistente en que el Juez de Distrito omitió estudiar en su sentencia la opinión del cuerpo consultivo agrario que dio origen a la resolución presidencial combatida, resulta ineficaz para revocar la mencionada sentencia, porque el Juez de amparo no tenía por qué tomar en cuenta dicho dictamen, que, por una parte, es una simple opinión y, por otra, el hecho de que la resolución no coincida con lo dicho en el dictamen no proporciona base alguna para llegar a una conclusión diversa a la sustentada en la sentencia por el Juez de Distrito."

"AGRARIO. CONFLICTO DE LÍMITES. LA OPINIÓN DE LA DIRECCIÓN GENERAL DE ASUNTOS INDÍGENAS NO TIENE RELEVANCIA. Si durante el procedimiento suscitado por un conflicto de límites y titulación de terrenos comunales, no se dio a conocer a la Dirección General de Asuntos Indígenas, dependiente de la Secretaría de Educación Pública, el proyecto de dictamen para que formulara su opinión, con la consiguiente violación del artículo 138 del Código Agrario, debe decirse que la omisión del requisito que fija ese precepto, en la parte relacionada con la intervención que debía darse al extinto Departamento de Asuntos Indígenas (cuyas funciones fueron asumidas parcialmente por la mencionada dirección), carece

de trascendencia sobre el proyecto de resolución definitiva que formula el Departamento de Asuntos Agrarios y Colonización, ya que la opinión que llegue a emitirse no puede modificar el proyecto en cuestión, facultad que exclusivamente corresponde al C. Presidente de la República, a cuya decisión se somete el sobredicho proyecto."

En las relacionadas condiciones, dado que la falta de opinión a cargo del gobernador del Estado de Morelos no es una irregularidad del procedimiento susceptible de producir la invalidez del acto legislativo impugnado, porque no condiciona en forma alguna el sentido de la resolución a cargo de la Legislatura Local, debe desestimarse el concepto de invalidez propuesto sobre este particular.

OCTAVO. Enseguida se examina el cuarto concepto de invalidez, en que el Ayuntamiento actor sostiene que el decreto que controvierte es violatorio del artículo 16 constitucional porque la Legislatura Estatal no expresó los fundamentos legales ni los razonamientos lógicos y jurídicos para llegar a la conclusión de que los territorios que enumera pertenecen al Municipio de Cuernavaca.

En la especie, como el decreto impugnado tiene como efecto jurídico producir, con fuerza obligatoria, que los habitantes de los territorios que comprende el acto legislativo, pertenezcan al Municipio de Cuernavaca, debe cumplir con los requisitos de fundamentación y motivación a que alude la garantía de legalidad prevista en la Ley Fundamental.

Sobre el particular, el Pleno de este Alto Tribunal ha establecido que los requisitos de fundamentación y motivación previstos en el artículo 16 constitucional, cuando se trata de actos provenientes de una autoridad legislativa, se satisfacen si el Congreso relativo se encuentra constitucionalmente facultado para emitirlos y se abordan cuestiones sociales que requieren ser jurídicamente reguladas, tal y como se advierte de la jurisprudencia consultable en la compilación de 1995, Tomo I, Materia Constitucional, página 149, que dice:

"FUNDAMENTACIÓN Y MOTIVACIÓN DE LOS ACTOS DE AUTORIDAD LEGISLATIVA. Por fundamentación y motivación de un acto legislativo, se debe entender la circunstancia de que el Congreso que expide la ley, constitucionalmente esté facultado para ello, ya que estos requisitos, en tratándose de actos legislativos, se satisfacen cuando aquél actúa dentro de los límites de las atribuciones que la Constitución correspondiente le confiere (fundamentación), y cuando las leyes que emite se refieren a relaciones sociales que reclaman ser jurídicamente reguladas (motivación); sin que esto implique que todas y cada una de las disposiciones que integran estos ordenamientos deben ser necesariamente materia de una motivación específica."

Sin embargo, en el caso que se resuelve, si bien el acto cuya invalidez se reclama constituye un decreto expedido por la Legislatura del Estado de Morelos, que produce efectos generales, al reconocer jurisdicción al Municipio de Cuernavaca sobre las áreas que describe, como también tiene la característica de ser un acto materialmente jurisdiccional, por resolver un conflicto por límites territoriales entre el citado Municipio y el de Temixco, debe concluirse que, en respeto a la seguridad jurídica que merecen las partes involucradas en dicha controversia, también deben expresarse los fundamentos jurídicos y razones específicas que llevaron al Congreso a decidir en ese sentido.

Por lo que hace a las facultades para emitir el decreto impugnado, debe decirse que conforme a lo dispuesto en los artículos 40, fracciones II y XLIX, de la Constitución del Estado de Morelos, 7o. y 12, segundo párrafo, de la Ley Orgánica Municipal de dicha entidad, es potestad de la Legislatura Local la expedición de decretos que resuelvan en definitiva cuestiones que se susciten por diferencias en lo tocante a límites intermunicipales, lo que lleva a concluir que la autoridad demandada se encontraba legalmente facultada para emitir el acto cuya invalidez se demanda. El contenido de tales dispositivos se reproduce a continuación:

"Artículo 40. Son facultades del Congreso:

"...

"II. Expedir, aclarar, reformar, derogar o abrogar las leyes, decretos y acuerdos para el gobierno y administración interior del Estado;

"...

"XLIX. Expedir las leyes orgánicas y la de división territorial municipal con sujeción a lo establecido por esta Constitución."

"Artículo 7o. La creación y supresión de Municipios, modificación de sus territorios, cambios de residencia de sus cabeceras municipales y las cuestiones que se susciten sobre límites intermunicipales, serán resueltas por la Legislatura del Estado, con audiencia de los Ayuntamientos afectados y opinión del Ejecutivo Estatal."

"Artículo 12. Las diferencias que se susciten entre los Municipios, siempre que no tengan carácter contencioso, serán

subsanadas en la vía administrativa por el gobernador del Estado.

"Cuando dichas diferencias impliquen conflictos intermunicipales que no admitan solución en la vía conciliatoria, serán sometidas a la consideración del Congreso, el que con audiencia de las entidades afectadas y opinión del Ejecutivo, resolverá en definitiva.

"Los conflictos de carácter político que se susciten entre los Municipios y el Poder Ejecutivo serán resueltos por el Congreso del Estado."

En lo referente a la fundamentación del decreto impugnado, en dicho acto se citan los preceptos jurídicos aplicables en la forma siguiente:

"La Honorable Cuadragésima Séptima Legislatura del Congreso Constitucional del Estado Libre y Soberano de Morelos, en el ejercicio que le confiere el artículo 40 fracciones II y XLIX de la Constitución Política Local ...

"... de conformidad con lo que señala el artículo 124 de la Constitución Federal de los Estados Unidos Mexicanos, la distribución de competencia de los Gobiernos Federal y Estatales, es muy clara; lo que no esté reservado expresamente en la Constitución, a las autoridades federales, debe entenderse que están reservadas a las entidades federativas del país, en este orden de ideas, se desprende que el resolver problemas de límites territoriales, dentro de un Estado, es competencia del mismo, y en el caso particular, del Estado de Morelos, de conformidad con lo que señala el artículo 40, fracción XLIX; es facultad del Poder Legislativo del Estado, expedir la Ley de la División Territorial de los Municipios del Estado de Morelos ...

"... de conformidad con lo establecido por el artículo 7o. de la Ley Orgánica Municipal del Estado de Morelos, las cuestiones que se lleguen a presentar, sobre límites territoriales entre los Municipios, serán resueltas por la Legislatura del Estado ...

"... con fundamento en lo dispuesto por el artículo 124 de la Constitución Federal, los artículos 40 fracción XLIX, de la Constitución del Estado, y el artículo 115, fracción I, de la propia Constitución morelense; asimismo con base en el artículo 7o. de la Ley Orgánica Municipal del Estado de Morelos; así como en los artículos 9o. y 35 de la Ley de la División Territorial del Estado de Morelos. Tiene a bien expedir el siguiente: Decreto Número Noventa y Dos ..."

De igual manera, la expresión de los razonamientos y motivos que sustentan la resolución contenida en el decreto impugnado, es la que a continuación se reproduce:

"... en su oportunidad, de manera respetuosa hizo comparecer ante el seno de la misma, a los señores presidentes municipales de Cuernavaca y de Temixco, Sergio Estrada Cajigal Ramírez y Antonio Domínguez Jarillo, respectivamente; quienes fueron escuchados en audiencia en dos ocasiones; asimismo, se recibieron documentos de las dos partes, con sus respectivas argumentaciones; en virtud de que la iniciativa, que busca resolver el conflicto de límites territoriales entre Cuernavaca y Temixco, fue presentada por el titular del Poder Ejecutivo, consideramos innecesario solicitar su opinión, ya que por lógica, si el titular del Ejecutivo, presentó la iniciativa, en la misma se contiene su opinión, respecto del conflicto; ya que por otra parte, en la iniciativa se propone una medida de solución. Desde el punto de vista histórico, vale la pena apuntar que de acuerdo a información histórica y geográfica, recabada por la Comisión de Límites Territoriales del Estado, existen documentos de los cuales se desprende; que las áreas geográficas en conflicto, pertenecen al Municipio de Cuernavaca; los siguientes documentos son muy ilustrativos y contundentes, respecto al asunto que hoy se analiza: 1. Acta de posesión y deslinde, al ejido de Chipitlán del 12 de febrero de 1936, donde se dice que pertenece al Municipio de Cuernavaca. 2. Diario Oficial del 20 de abril de 1936, conteniendo resolución presidencial, al expediente de ampliación de ejidos, al poblado de Chipitlán, Estado de Morelos, donde se expresa que pertenece al Municipio de Cuernavaca. 3. Oficio de fecha 15 de marzo de 1968, dirigido al C. Ing. Felipe Rivera Crespo, presidente municipal de Cuernavaca firmado por el C. Lic. Fausto Galván Campos, en su carácter de secretario general de Gobierno, oficio registrado con el número 124-VI y el cual dice en su inciso A) La ayudantía de Chipitlán siempre se ha considerado como perteneciente a la ciudad de Cuernavaca. B) El lugar denominado El Polvorín se encuentra ubicado dentro de la jurisdicción de la ayudantía de Chipitlán, mencionada; esto se encuentra notificado al C. Juan Vargas Hernández, Presidente Municipal Constitucional de Temixco, en referencia a su oficio número 979 expediente 02 de fecha 27 de febrero de 1968. 4. Diario Oficial del 12 de diciembre de 1991, en el que se publica decreto presidencial expropiatorio al ejido de Chipitlán y en el que en repetidas ocasiones, se menciona 'Ejido de Chipitlán Municipio de Cuernavaca'. 5. Oficio constancia, dirigido a la Comisión de Límites Territoriales, de fecha 14 de febrero de 1996, en el que se hace constar y se pide que la colonia Adolfo López Mateos Sur, pertenezca al Municipio de Cuernavaca, pues todos los servicios los recibe de dicho Municipio, este documento lo firma el C. Javier Atrisco Meneses, secretario del Comisariado Ejidal de Chipitlán. Por otra parte, existen planos, de los que se desprende que las áreas geográficas en conflicto, pertenecen al Municipio de Cuernavaca, como los siguientes:

"1. Plano de la Hacienda de Temixco, del siglo pasado que nos marca los límites de los terrenos que poseía dicha hacienda y que fueron indemnizados en los primeros años del presente siglo (1923) por la caja de ahorros del Gobierno Federal, a los propietarios de esa hacienda.

"2. Plano de la ampliación al ejido definitivo de Chipitlán, Municipio de Cuernavaca, formado por la Secretaría de Reforma Agraria en mayo de 1936.

"3. Plano del Municipio de Cuernavaca, formado por la administración municipal encabezada por el Lic. Lorenzo Jiménez Figueroa, 8 de julio de 1959.

"4. Plano elaborado por la Comisión de Límites Territoriales del Municipio de Cuernavaca, de 1985; y,

"5. Carta General del Estado, de la Comisión de Límites Territoriales año de 1990, en donde se marcan los 33 Municipios incluyendo el de Temixco y Cuernavaca.

"Consideramos oportuno, señalar que de acuerdo a lo manifestado por vecinos de la colonia en conflicto, y de conformidad con documentación oficial que el presidente municipal de Cuernavaca hizo llegar a la comisión que dictaminó; los servicios públicos municipales que reciben las familias ubicadas en las áreas ya mencionadas, los reciben por parte del Ayuntamiento de Cuernavaca.

"En 1978, el Poder Legislativo del Estado, aprobó el Decreto Número 75, publicado en el Periódico Oficial del Estado Número 2845, por medio del cual se resolvió un problema de límites territoriales entre Cuernavaca y Temixco, declarándose que la colonia Lomas de Cuernavaca, pertenece a Temixco.

"Como se puede observar, jurídicamente, es facultad de este Congreso, resolver las controversias que se presenten, con motivo de límites territoriales, entre Municipios del Estado.

"Por otra parte, en un Estado de derecho, en el que tenemos que sujetarnos a la legalidad, la comisión que suscribió, escuchó a los señores presidentes municipales, de Cuernavaca y Temixco, para que mediante documentación, y de viva voz, manifestaran todo lo relacionado con el conflicto en cuestión, y de esta forma, este Congreso, enriqueciera su juicio, para estar en posibilidades de tomar una resolución, apegada al derecho; como se puede observar, de conformidad con los límites reconocidos por la costumbre, entre los Municipios en conflicto, y de acuerdo con la documentación, a la que ya se hizo referencia, esta soberanía considera de suma importancia, se resuelva en definitiva, un conflicto que mantiene en incertidumbre jurídica, a cientos de ciudadanos, en virtud de que no saben con precisión a qué Municipio pertenecen, y por otra parte, los servicios públicos municipales, que deben ser proporcionados por los Ayuntamientos, de acuerdo a lo

señalado en el artículo 115 de la Constitución Federal, no tienen definición, por la no precisión de los límites territoriales entre los Municipios antes mencionados.

"Por todas las anteriores consideraciones y ante la demanda permanente de ciudadanos, de las colonias, Lázaro Cárdenas 'El Polvorín', Ampliación Chipitlán, Mina 5, Los Pilares, Loma Bonita, Ampliación Lázaro Cárdenas, y Ampliación Lázaro Cárdenas 'El Polvorín', todos del ejido de Chipitlán, en el sentido de que esta soberanía popular resuelva en definitiva y con precisión, la jurisdicción territorial de las colonias antes mencionadas, a efecto de que tengan certidumbre jurídica, y por otra parte; conozcan a qué Municipio pertenecen y por lo mismo, puedan recibir con eficiencia y oportunidad, los servicios públicos del Ayuntamiento, al que sean adscritos en definitiva.

"Del análisis exhaustivo de los antecedentes jurídicos, los levantamientos topográficos sobre las áreas geográficas en cuestión y la legislación vigente; este H. Congreso, con fundamento en lo dispuesto por el artículo 124 de la Constitución Federal, los artículos 40 fracción XLIX, de la Constitución del Estado, y el artículo 115, fracción I, de la propia Constitución morelense; asimismo con base en el artículo 7o. de la Ley Orgánica Municipal del Estado de Morelos; así como en los artículos 9o. y 35 de la Ley de la División Territorial del Estado de Morelos. Tiene a bien expedir el siguiente:

"Decreto Número Noventa y Dos

"Por el que se reconoce la jurisdicción del Municipio de Cuernavaca, Estado de Morelos; en las áreas geográficas a que se refiere esta resolución.

"Artículo único. Con fundamento en lo dispuesto en los artículos 6o. y 40 fracción II de la Constitución Política del Estado de Morelos y artículos 7o. y 12 de la Ley Orgánica Municipal del Estado de Morelos, se reconoce dentro de la jurisdicción del Municipio de Cuernavaca, de esta entidad federativa, las áreas geográficas ubicadas al sur de la ciudad de Cuernavaca, Morelos, correspondientes al ex-ejido de Chipitlán, con superficies de 134,562.00 metros cuadrados, 520,724.00 metros cuadrados, 47,830,00 metros cuadrados, 381,770.00 metros cuadrados, 1,081,507.00 metros cuadrados y 290,233.00 metros cuadrados; porciones cuyas medidas y colindancias se identifican a continuación: ..."

En las citadas condiciones, como de conformidad con los preceptos de la Constitución y Ley Orgánica Municipal del Estado de Morelos antes transcritos, el Congreso de dicha entidad es el competente para resolver, a través del decreto controvertido, la cuestión de límites territoriales entre los Municipios de Cuernavaca y Temixco, sometida a su

conocimiento, y en los párrafos anteriores aparece la expresión de los fundamentos jurídicos y motivos que lo condujeron a determinar que el territorio que comprende el decreto impugnado corresponde al primero de ellos, deviene infundado el concepto de invalidez que sostiene la ausencia de tales requisitos formales, situación que conduce a desestimarlo.

NOVENO. Finalmente, este Tribunal Pleno se ocupa del examen del tercer concepto de invalidez, en que el Ayuntamiento actor aduce que el Congreso demandado no realizó un correcto análisis y valoración de las pruebas ofrecidas durante el procedimiento, en razón de que se limitó a enunciar las documentales aportadas por el Municipio de Cuernavaca, sin expresar el valor probatorio que le merecen, ni tampoco señalar por qué las ofrecidas por el Municipio de Temixco no son de tomarse en cuenta, agregando que la legislatura maneja indistinta e indebidamente los términos "Ejido de Chipitlán" y "poblado de Chipitlán", cuando analiza las documentales marcadas con los números 1, 2 y 4, siendo que existen ejidos que comprenden el territorio de más de un Municipio, por lo que no es determinante la denominación de aquéllos ni que la dotación se haya hecho a los habitantes de cierto poblado, soslayando el hecho de que las tierras y su ampliación provienen íntegramente de la antigua Hacienda de Temixco, lo que demuestra que pertenecen al Municipio del mismo nombre.

De los razonamientos expresados por la autoridad demandada en la resolución cuya validez se impugna, transcritos en el considerando anterior, puede apreciarse que el Congreso del Estado de Morelos estableció que de acuerdo a la información histórica y geográfica recabada por la Comisión de Límites Territoriales de la entidad, existen documentos y planos de cuyo contenido y expresiones se desprende que el área geográfica en conflicto pertenece al Municipio de Cuernavaca, los cuales se enumeran a continuación:

1. Acta de posesión y deslinde al ejido de Chipitlán del 12 de febrero de 1936 (fojas 227 a 234 del cuaderno de pruebas).

2. Diario Oficial del 20 de abril de 1936, conteniendo resolución presidencial al expediente de ampliación de ejidos al poblado de Chipitlán, Estado de Morelos (fojas 247 a 248 del cuaderno de pruebas).

3. Oficio de 15 de marzo de 1968, firmado por Fausto Galván Campos, en su carácter de secretario general de Gobierno, y dirigido a Felipe Rivera Crespo, presidente municipal de Cuernavaca (fojas 239 a 240 del cuaderno de pruebas), que expresa literalmente lo siguiente:

"A) La ayudantía de Chipitlán siempre se ha considerado como perteneciente a la ciudad de Cuernavaca. B) El lugar denominado ElPolvorín se encuentra ubicado dentro de la jurisdicción de la ayudantía de Chipitlán, mencionada."

4. Diario Oficial del 12 de diciembre de 1991, en el que se publica decreto presidencial expropiatorio al ejido de Chipitlán y en el que en repetidas ocasiones, se menciona "Ejido de Chipitlán Municipio de Cuernavaca" (fojas 241 a 244 del cuaderno de pruebas).

5. Oficio constancia, emitido por Javier Atrisco Meneses, secretario del Comisariado Ejidal de Chipitlán, dirigido a la Comisión de Límites Territoriales, de fecha 14 de febrero de 1996, en el que se hace constar y se pide que la colonia Adolfo López Mateos Sur, pertenezca al Municipio de Cuernavaca, pues todos los servicios los recibe de dicho Municipio.

6. Plano de la Hacienda de Temixco, del siglo XIX, que marca los límites de los terrenos que poseía dicha hacienda y que fueron indemnizados en 1923 por la Caja de Ahorros del Gobierno Federal, a los propietarios de esta hacienda.

7. Plano de la ampliación al ejido definitivo de Chipitlán, Municipio de Cuernavaca, formado por el Departamento de Asuntos Agrarios y Colonización en mayo de 1936 (foja 252 del cuaderno de pruebas).

8. Plano del Municipio de Cuernavaca, formado por la administración municipal encabezada por Lorenzo Jiménez y Figueroa de 8 de julio de 1959 (foja 249 del cuaderno de pruebas).

9. Plano elaborado en 1985 por la Comisión de Límites Territoriales del Municipio de Cuernavaca (foja 561 del cuaderno de pruebas).

10. Carta General del Estado, de la Comisión de Límites Territoriales de 1990, en donde se marcan los 33 Municipios incluyendo el de Temixco y Cuernavaca (foja 251 del cuaderno de pruebas).

La legislatura también agregó, en su resolución, que de conformidad con lo manifestado por vecinos de la colonia en conflicto, los servicios públicos municipales los reciben las familias por parte del Ayuntamiento de Cuernavaca y que en 1978 se había aprobado el Decreto 75 que resolvió un problema de límites entre los mismos Municipios, declarando que la colonia Lomas de Cuernavaca pertenece a Temixco, lo que evidencia que en la especie se trata de un conflicto de suma importancia que requiere resolverse en definitiva por mantener en incertidumbre jurídica a cientos de ciudadanos, al no encontrarse definida la prestación de los servicios públicos dada la imprecisión de los límites territoriales.

Cabe destacar también que el Municipio actor ofreció como pruebas documentales de su parte, durante el procedimiento seguido ante la Legislatura Estatal, las siguientes:

a) Documental de 30 de agosto de 1984 suscrita por el presidente municipal de Temixco, Morelos, en que comunica al director general de Seguridad Pública y Servicios Sociales del Estado los límites de la parte norte de dicho Municipio (foja 72 del cuaderno de pruebas).

b) Bando de Policía y Buen Gobierno del Ayuntamiento de Temixco de 1967 a 1970, que señala, en su artículo 2o., los límites de dicho Municipio (fojas 73 a 92 del cuaderno de pruebas).

c) Bando de Policía y Buen Gobierno del Ayuntamiento de Temixco, publicado en el Periódico Oficial del Estado el 28 de mayo de 1997, que señala, en sus artículos 9o. y 10, los límites y ayudantías de dicho Municipio (fojas 93 a 113 del cuaderno de pruebas).

Ahora bien, del examen de los elementos reseñados a lo largo del presente considerando, se concluye, tal y como lo aduce el Ayuntamiento actor, que la legislatura demandada omitió expresar las razones que la condujeron a desestimar las pruebas documentales ofrecidas por dicho Municipio, puesto que en ninguna parte de la resolución impugnada se alude a ellas, toda vez que se limitó a otorgar valor probatorio pleno al resto de los elementos de convicción, sin tampoco señalar las razones específicas por las cuales comprueban que el territorio materia del conflicto pertenece al Municipio de Cuernavaca, dado que sobre el particular sólo se asienta que de las documentales y planos relacionados se desprende esa situación, pero sin expresar la valoración que de esos medios de prueba la llevó a esa determinación.

En tal virtud, tanto la falta de estudio de las pruebas ofrecidas por el Ayuntamiento actor, como la omisión de expresar las razones por las cuales les otorgó valor probatorio a las documentales ofrecidas por el Municipio tercero perjudicado, al tratarse de la solución a un procedimiento de carácter contencioso entre órganos de poder, que por tanto tiene una naturaleza jurisdiccional, constituyen vicios de la resolución que se traducen en violación a los artículos 14 y 16 constitucionales, por transgresión a las formalidades esenciales del procedimiento y legalidad, dada la falta de exhaustividad y motivación de la resolución impugnada, de conformidad también con la jurisprudencia sustentada por el Tribunal Pleno, publicada en la compilación de 1995, Tomo VI, página 279, aplicable por analogía a la presente controversia constitucional, al tratarse de una resolución a un procedimiento de límites territoriales entre Municipios, donde los interesados tuvieron la oportunidad de ofrecer pruebas, las cuales debieron ser valoradas de manera razonada por la autoridad resolutora, criterio

que literalmente dice:

"PRUEBAS, FALTA DE ESTUDIO DE LAS.-Si el juzgador omite estimar las pruebas allegadas por una de las partes, tal hecho importa una violación a los artículos 14 y 16 constitucionales, y por ello procede conceder la protección federal, a fin de que, al dictarse nueva sentencia, se tomen en consideración las pruebas que no fueron estimadas."

Corolario de todo lo expuesto en el presente considerando es declarar fundado el concepto de invalidez hecho valer por el Ayuntamiento actor, debiendo en consecuencia, con fundamento en el artículo 41, fracción IV, de la ley de la materia, declarar la invalidez del Decreto Número Noventa y Dos, emitido por el Congreso del Estado de Morelos, publicado en el Periódico Oficial de la entidad el tres de septiembre de mil novecientos noventa y siete, para el efecto de que dicha autoridad, dentro de un plazo de treinta días hábiles contados a partir de que quede legalmente notificada de la presente sentencia, emita una nueva resolución al conflicto de límites territoriales entre los Municipios de Temixco y Cuernavaca, en la que, de manera fundada y motivada, examine integralmente el material probatorio aportado a dicho procedimiento, e incluso el que oficiosamente pudiera recabar para mejor proveer, o a través de la ponderación de hechos notorios o circunstancias particulares del caso, en ejercicio de las facultades que, en materia de solución de conflictos de carácter territorial entre Municipios, le confieren los artículos 124 de la Constitución Federal, 40, fracciones II y XLIX, de la Constitución del Estado de Morelos, 7o. y 12, segundo párrafo, de la Ley Orgánica Municipal de dicha entidad, y emita la resolución que en derecho corresponda, con el fin de dar, jurídica y políticamente, la mejor solución al conflicto limítrofe que dio origen a la presente controversia.

Al resultar fundado el concepto de invalidez a estudio, resulta innecesario ocuparse del restante, donde se aduce que la legislatura se equivocó al equiparar el ejido Chipitlán con el poblado del mismo nombre, toda vez que ese argumento tiene que ver con la valoración del material probatorio que deberá realizar el Congreso Estatal en cumplimiento de la presente ejecutoria.

Apoya la conclusión precedente, la jurisprudencia sustentada por la Segunda Sala, publicada en la compilación de 1995, Tomo VI, página 113, aplicable analógicamente a las controversias constitucionales, por tratarse, al igual que el amparo, de juicios donde al declararse la inconstitucionalidad del acto impugnado, dicha determinación hace innecesario el examen de otros capítulos de queja:

"CONCEPTOS DE VIOLACIÓN. CUANDO SU ESTUDIO ES INNECESARIO.-Si el amparo que se concede por uno de los capítulos

de queja, trae por consecuencia que se nulifiquen los otros actos que se reclaman, es inútil decidir sobre éstos."

Por todo lo dicho en el presente y anteriores considerandos, se impone determinar que carecen de legitimación procesal los regidores del Ayuntamiento de Temixco, Estado de Morelos, que la presente controversia es procedente, y declarar, para los efectos precisados, la invalidez del Decreto Número Noventa y Dos, emitido por el Congreso del Estado de Morelos, publicado en el Periódico Oficial de la entidad el tres de septiembre de mil novecientos noventa y siete.

Por lo anteriormente expuesto y fundado, se resuelve:

PRIMERO.-Carecen de legitimación procesal los regidores del Ayuntamiento de Temixco, Estado de Morelos, en términos del considerando tercero de esta resolución.

SEGUNDO.-Es procedente la controversia constitucional planteada por el Ayuntamiento de Temixco, Estado de Morelos.

TERCERO.-El actor probó su acción.

CUARTO.-Se declara la invalidez de los actos que se atribuyen a la Legislatura y gobernador del Estado de Morelos, precisados en el resultando primero de esta resolución y para los efectos señalados en el último considerando de la misma.

Notifíquese, por medio de oficio a las partes, publíquese íntegramente en el Semanario Judicial de la Federación y, en su oportunidad, archívese el expediente.

Así, lo resolvió la Suprema Corte de Justicia de la Nación, funcionando en Pleno, por mayoría de ocho votos de los señores Ministros: Sergio Salvador Aguirre Anguiano, Mariano Azuela Güitrón, Juventino V. Castro y Castro, Juan Díaz Romero, Humberto Román Palacios, Olga María Sánchez Cordero, Juan N. Silva Meza y presidente Genaro David Góngora Pimentel; los señores Ministros José de Jesús Gudiño Pelayo y Guillermo I. Ortiz Mayagoitia votaron en contra y por la improcedencia de la controversia constitucional. El señor Ministro José de Jesús Gudiño Pelayo manifestó que formulará voto particular. No asistió el señor Ministro José Vicente Aguinaco Alemán, previo aviso a la presidencia.

Nota: Los rubros a que se alude al inicio de esta ejecutoria corresponden a las tesis P./J. 91/99, P./J. 92/99, P./J. 93/99 y P./J. 98/99, publicadas en el Semanario Judicial de la Federación y su Gaceta, Novena Época, Tomo X, septiembre de 1999,

páginas 706, 710, 704 y 703, respectivamente. De la misma resolución también derivaron las tesis P./J. 94/99, P./J. 95/99, P./J. 96/99, P./J. 97/99, P./J. 99/99, P./J. 100/99 y P./J. 101/99, de rubros: "CONTROVERSIA CONSTITUCIONAL. LA FALTA DE OPINIÓN DEL GOBERNADOR DEL ESTADO DE MORELOS, EN EL PROCEDIMIENTO PARA RESOLVER CONFLICTOS DE LÍMITES ENTRE MUNICIPIOS ANTE LA LEGISLATURA ESTATAL, NO ES UNA VIOLACIÓN QUE PRODUZCA LA INVALIDEZ DE LA RESOLUCIÓN RESPECTIVA.", "CONTROVERSIA CONSTITUCIONAL. LOS DIVERSOS ÓRDENES JURÍDICOS ESTABLECIDOS EN LA CONSTITUCIÓN FEDERAL TIENEN AUTONOMÍA FUNCIONAL Y ASIGNACIONES COMPETENCIALES PROPIAS.", "CONTROVERSIA CONSTITUCIONAL. EL ORDEN JURÍDICO ESTATAL COMPRENDE LAS RELACIONES ENTRE LOS PODERES LOCALES Y SUS MUNICIPIOS.", "CONTROVERSIA CONSTITUCIONAL. LOS OBJETIVOS DEL ORDEN JURÍDICO CONSTITUCIONAL SON LA ASIGNACIÓN DE COMPETENCIA Y EL CONTROL DE SU EJERCICIO POR LAS AUTORIDADES DE LOS DEMÁS ÓRDENES JURÍDICOS.", "CONTROVERSIA CONSTITUCIONAL. LA FALTA DE ESTUDIO DE PRUEBAS EN UN PROCEDIMIENTO DE NATURALEZA JURISDICCIONAL, ENTRE ENTIDADES U ÓRGANOS DE PODER, CONSTITUYE UNA VIOLACIÓN A LOS ARTÍCULOS 14 Y 16 DE LA CONSTITUCIÓN.", "CONTROVERSIA CONSTITUCIONAL. ESTUDIO INNECESARIO DE CONCEPTOS DE INVALIDEZ." y "CONTROVERSIA CONSTITUCIONAL. LA FINALIDAD DEL CONTROL DE LA REGULARIDAD CONSTITUCIONAL A CARGO DE LA SUPREMA CORTE DE JUSTICIA DE LA NACIÓN INCLUYE TAMBIÉN DE MANERA RELEVANTE EL BIENESTAR DE LA PERSONA HUMANA SUJETA AL IMPERIO DE LOS ENTES U ÓRGANOS DE PODER.", publicadas en las páginas 707, 709, 705, 709, 706, 705 y 708, respectivamente, de esa misma publicación.

La tesis P. XXVII/98, de rubro: "IMPROCEDENCIA DEL JUICIO DE AMPARO. SI SE HACE VALER UNA CAUSAL QUE INVOLUCRA EL ESTUDIO DE FONDO, DEBERÁ DESESTIMARSE.", citada en esta ejecutoria, aparece publicada en el Semanario Judicial de la Federación y su Gaceta, Novena Época, Tomo VII, abril de 1998, página 23.

Suprema Corte de Justicia de la Nación: Pino Suárez 2, Colonia Centro, Delegación Cuauhtémoc, C.P. 06065, México, D.F.
IDS-18

 

(55) 4113-1000

http://ius.scjn.gob.mx/paginas/DetalleGeneralScroll.aspx?id=6215&Clase=DetalleTesisEjecutorias

Page 70 of 70