

# Código para el Desarrollo Sustentable del Estado de Tamaulipas

**Ultima modificación aplicada del 14 de agosto de 2008.**

**LA SEXAGESIMA LEGISLATURA DEL CONGRESO CONSTITUCIONAL DEL ESTADO LIBRE Y SOBERANO DE TAMAULIPAS, EN USO DE LAS FACULTADES QUE LE CONFIERE EL ARTICULO 44 DE LA CONSTITUCION POLITICA LOCAL; Y EL ARTICULO 119 DE LA LEY SOBRE LA ORGANIZACION Y FUNCIONAMIENTO INTERNOS DEL CONGRESO DEL ESTADO DE TAMAULIPAS, TIENE A BIEN EXPEDIR EL SIGUIENTE:**

**D E C R E T O  No. LX-18**

**MEDIANTE EL CUAL SE EXPIDE EL CODIGO PARA EL DESARROLLO SUSTENTABLE DEL ESTADO DE TAMAULIPAS.**

**CÓDIGO PARA EL DESARROLLO SUSTENTABLE DEL ESTADO DE TAMAULIPAS**

**LIBRO PRIMERO**
**DE LAS DISPOSICIONES GENERALES**

**TÍTULO PRIMERO**
**DE LOS ASPECTOS GENERALES**
**CAPÍTULO I**
**DEL OBJETO**

**ARTÍCULO 1.**

Las disposiciones de este Código son de orden público e interés social y son obligatorias en el ámbito territorial del Estado. Sus normas emanan de los principios dispuestos en los artículos 4, párrafo cuarto, 27, párrafo tercero y 73, fracción XXIX, inciso g, de la Constitución Política de los Estados Unidos Mexicanos, y tienen por objeto regular las materias señaladas a continuación:

I. La protección ambiental;

II. La prevención y gestión integral de los residuos;

III. Las áreas naturales protegidas estatales y municipales; y

IV. La flora y fauna silvestres;

**ARTÍCULO 2.**

1. Este Código integra en un cuerpo normativo las diversas disposiciones ambientales, con el propósito de afirmar la conexidad de temas, la transversalidad para su atención y el debido cumplimiento de las mismas.

2. El desarrollo sustentable es un proceso integral que exige compromisos y responsabilidades individuales y sociales de toda persona.

3. Las materias comprendidas en este Código se regulan con el fin de impulsar y promover la conservación, la preservación, la rehabilitación, la remediación, el mejoramiento y el mantenimiento de los ecosistemas; la recuperación y restauración del equilibrio ecológico, la prevención del daño a la salud; el deterioro a la biodiversidad y los elementos que la componen en su conjunto; la gestión y el fomento de la protección al medio ambiente y la planeación ambiental; el aprovechamiento y el uso sustentable de los elementos y recursos naturales y de los bienes ambientales; la internalización y la distribución en forma justa de los beneficios y costos derivados, sustentados en proporcionar certidumbre a los mercados en el marco de las políticas establecidas para el desarrollo sustentable en el Estado.

**ARTÍCULO 3.**
Son objetivos de este Código sentar las bases para:

I. Garantizar el derecho de toda persona a vivir en un ambiente adecuado para su salud, desarrollo y bienestar;

II. Formular y vigilar el cumplimiento de los instrumentos y programas de política ambiental, recursos naturales y desarrollo sustentable para la preservación y desarrollo de la flora, fauna y recursos naturales renovables y normar su aprovechamiento en conjunto;

III. Regular y promover el cumplimiento de las disposiciones legales y administrativas estatales en materia de medio ambiente, protección y gestión integral de los residuos, áreas naturales protegidas y vida silvestre;

IV. Garantizar y regular que ante la existencia de peligro de daño grave o irreversible al medio ambiente o de emergencia en donde exista una afectación continua y grave al mismo, se adopten medidas eficaces de manera inmediata y se realicen las acciones necesarias para impedir su degradación;

V. Formular, ejecutar, evaluar, vigilar y modificar los programas de ordenamiento ecológico del territorio de competencia estatal;

VI. Regular y promover, en el ámbito de su competencia, el tratamiento, almacenamiento, transporte y eliminación de los residuos sólidos, y el tratamiento y disposición final de contaminantes;

VII. Proteger, conservar, preservar y regular los aprovechamientos sustentables que se hagan de las áreas naturales protegidas y parques estatales;

VIII. Coordinar las acciones en materia de protección, conservación y restauración de los recursos naturales, relativos al agua, suelo y aire, considerándose la atinente a áreas naturales protegidas y zonas de amortiguamiento;

IX. Promover y fomentar el desarrollo y uso de energías, tecnologías y combustibles alternativos;

X. Promover y fomentar las investigaciones ecológicas, la participación de la sociedad en la formulación de las políticas de desarrollo sustentable y ambiental del Estado y la formación de la cultura  de la sustentabilidad en la realización de toda actividad que utilice recursos naturales;

XI. Establecer los mecanismos de coordinación, inducción y concertación entre autoridades y de éstas con los sectores social y privado, en materia ambiental; y

XII. Establecer medidas de control y seguridad, así como las sanciones administrativas para garantizar el cumplimiento y aplicación del presente Código y los reglamentos que del mismo se deriven.

## ARTÍCULO 4.

Para efectos de este Código se entenderá por:

I. Agencia Ambiental: La Agencia Ambiental para el Desarrollo Sustentable del Estado de Tamaulipas;

II. Aprovechamiento sustentable: La utilización de los elementos y recursos naturales en forma que se respete la integridad funcional y las capacidades de carga de los ecosistemas de los que forman parte dichos elementos y recursos por periodos indefinidos;

III. Áreas naturales protegidas: Las zonas del territorio del Estado sujetas al régimen previsto en el Código, o en otros ordenamientos o decretos vigentes, en donde los ambientes originales no han sido significativamente alterados por la actividad del ser humano o que requieren ser preservadas y restauradas;

IV. Área verde: La superficie de uso público destinada para la conservación ambiental ubicada en parques, jardines, plazas públicas u otros relativos al esparcimiento;

V. Biodiversidad: La variabilidad de organismos vivos de cualquier fuente, incluidos, entre otros, los ecosistemas terrestres, marinos y otros ecosistemas acuáticos y los complejos ecológicos de los que forman parte; comprende la diversidad dentro de cada especie, entre las especies y de los ecosistemas;

VI. Código: El Código para el Desarrollo Sustentable del Estado de Tamaulipas;

VII. Consejo: El Consejo de Gobierno para el Desarrollo Sustentable;

VIII. Conservación: El conjunto de políticas y medidas para mantener dinámicamente las condiciones que propicien la permanencia de los elementos naturales, a través de la planeación ambiental del desarrollo; protegiendo, cuidando, manejando, manteniendo y, en su caso, aprovechando los ecosistemas, los hábitat, las especies y las poblaciones de vida silvestre dentro o fuera de sus entornos naturales, de manera que salvaguarden las condiciones naturales para su permanencia a largo plazo;

IX. Contaminación: La presencia en el ambiente de uno o más contaminantes o de cualquier combinación de ellos que cause desequilibrio ecológico;

X. Contaminación por ruido: Las emisiones sonoras que rebasan los límites máximos establecidos en las Normas Oficiales Mexicanas y Normas Ambientales Estatales, de acuerdo a los valores de concentración máxima permisibles para el ser humano;

XI. Contaminación visual: La alteración nociva de las cualidades de la imagen o del orden de un paraje natural o urbano, causado por uno o más elementos que únicamente tengan la finalidad de ser vistos, incluyéndose dentro de estos a las estructuras, anuncios, objetos o imágenes fijas o móviles, que por su colocación o número, impidan al espectador apreciar a plenitud las características del entorno, o distraigan la atención de las personas, creando situaciones de riesgo para las mismas;

XII. Contaminantes: La materia o energía, en cualesquiera de sus estados físicos y formas, que al incorporarse o actuar en la atmósfera, agua, suelo, flora, fauna o cualquier elemento natural, altere o modifique su composición y condición natural;

XIII. Contingencia ambiental: La situación derivada de actividades humanas o fenómenos naturales que puede poner en riesgo o peligro la integridad de uno o varios ecosistemas;

XIV. Criterios ecológicos: Los lineamientos de carácter obligatorio establecidos en el presente Código para orientar las acciones de conservación, preservación y restauración del equilibrio ecológico, el aprovechamiento sustentable de los elementos y recursos naturales y la protección al medio ambiente que tendrán carácter de instrumentos de política ambiental;

XV. Daño ambiental: La alteración relevante que modifique negativamente el medio ambiente, sus recursos, el equilibrio de los ecosistemas, la salud humana o los bienes o valores ambientales colectivos;

XVI. Desarrollo sustentable: El proceso evaluable mediante criterios e indicadores de carácter ambiental, económico y social que tiende a mejorar la calidad de vida y la productividad de las personas, que se funda en medidas apropiadas de preservación del equilibrio ecológico, protección del medio ambiente y aprovechamiento de recursos naturales, de manera que no se comprometa la satisfacción de las necesidades de las generaciones futuras;

XVII. Desastre: El evento determinado en tiempo y espacio en el cual, la sociedad o una parte de ella, sufre daños severos tales como: pérdida de vidas humanas, lesiones a la integridad física de las personas, daño a la salud, afectación de la planta productiva, daños materiales, daños al medio ambiente, imposibilidad para la prestación de servicios públicos; de tal manera que la estructura social se desajusta y se impide el cumplimiento normal de las actividades de la comunidad;

XVIII. Desequilibrio ecológico: La alteración de las relaciones de interdependencia entre los elementos naturales que conforman el medio ambiente, que afecta negativamente la existencia, transformación y desarrollo del ser humano y demás seres vivos;

XIX.- Ecosistema: La unidad funcional básica de interacción de los organismos vivos entre sí y de éstos con el medio ambiente, en un espacio y tiempo determinados;

XX. Educación ambiental: El proceso de formación dirigido a toda la sociedad, tanto en el ámbito escolar como en el extraescolar, para facilitar la percepción integrada del medio ambiente a fin de lograr conductas más racionales a favor de éste y del desarrollo social. La educación ambiental comprende la asimilación de conocimientos, la formación de valores y el desarrollo de competencias y conductas con el propósito de garantizar la preservación de la vida;

XXI.- Equilibrio ecológico: La relación de interdependencia entre los elementos que conforman el medio ambiente que hace posible la existencia, transformación y desarrollo del ser humano y demás seres vivos;

XXII.- Elemento natural: Los elementos físicos, químicos y biológicos que se presentan en un tiempo y espacio determinado sin la inducción del hombre;

XXIII. Emergencia ecológica: La situación derivada de actividades humanas o fenómenos naturales que al afectar severamente a sus componentes pone en peligro a uno o varios ecosistemas;

XXIV. Estado: El Estado Libre y Soberano de Tamaulipas;

XXV. Evaluación de impacto ambiental: El procedimiento científico y técnico a través del cual las autoridades estatales y los organismos calificados identifican y prevén los efectos que una acción o proyectos específicos ejercerán sobre el medio ambiente, con objeto de determinar la procedencia ambiental de dicha acción o proyecto y las condiciones a las que se sujetarán los mismos, para la realización de las obras, actividades o aprovechamientos, a fin de evitar o reducir al mínimo sus consecuencias negativas en el equilibrio ecológico en el medio ambiente o la biodiversidad;

XXVI. Explotación: El uso de los recursos y elementos naturales renovables y no renovables que tiene como consecuencia un cambio significativo en el equilibrio de los ecosistemas;

XXVII. Libro Primero: El Libro Primero de este Código, sobre las Disposiciones Generales;

XXVIII. Libro Segundo: El Libro Segundo de este Código, sobre la Protección Ambiental;

XXIX. Libro Tercero: El Libro Tercero de este Código, sobre la Prevención y Gestión Integral de los Residuos del Estado;

XXX. Libro Cuarto: El Libro Cuarto de este Código, sobre las Áreas Naturales Protegidas;

XXXI. Libro Quinto: El Libro Quinto de este Código, sobre la Vida Silvestre del Estado;

XXXII. Libro Sexto: El Libro Sexto de este Código, de los Procedimientos ante la Agencia Ambiental;

XXXIII. Libro Séptimo: El Libro Séptimo de este Código, de los Procedimientos Especiales y las Sanciones;

XXXIV. Libro Octavo: El Libro Octavo de este Código, de los Medios de Impugnación;

XXXV. Ley General: La Ley General del Equilibrio Ecológico y la Protección al Ambiente;

XXXVI. Ley General de Residuos: La Ley General para la Prevención y Gestión Integral de los Residuos;

XXXVII. Ley de Vida Silvestre: La Ley General de Vida Silvestre;

XXXVIII. Medio Ambiente: El conjunto de elementos naturales y artificiales o inducidos por el hombre que hacen posible la existencia y desarrollo de los seres humanos y demás organismos vivos que interactúan

Case 2:10-md-02179-CJB-DPC   Document 8368-5   Filed 01/25/13   Page 6 of 114

en un espacio y tiempo determinados;

XXXIX. Ordenamiento ecológico: El instrumento de política ambiental cuyo objetivo es regular o inducir el buen uso del suelo y las actividades productivas en el territorio del Estado, con el fin de lograr la protección, el uso, la conservación, la preservación de la biodiversidad y el aprovechamiento sustentable de los elementos y recursos naturales, a partir del análisis de las tendencias de deterioro y las potencialidades de aprovechamiento de los mismos;

XL. Pago por servicios ambientales: La retribución directa a través de instrumentos financieros eficientes a quienes se ocupan de manejar, resguardar, conservar y mejorar los ecosistemas que brindan servicios ambientales para el bienestar de la sociedad;

XLI. Prevención: El conjunto de disposiciones y medidas anticipadas para evitar el deterioro del medio ambiente;

XLII. Protección al medio ambiente: El conjunto de políticas y medidas para preservar, recuperar, restaurar, remediar, rehabilitar, ordenar y conservar el medio ambiente, previniendo y controlando su deterioro;

XLIII. Reciclaje: El proceso por el cual algunos materiales de desecho son transformados en productos nuevos, de tal manera que los desechos originales pierden su identidad y se convierten en materia prima para los nuevos productos;

XLIV.  Recurso natural: El elemento natural susceptible de ser aprovechado en beneficio del ser humano o de contribuir al equilibrio ecológico;

XLV. Relleno sanitario: La instalación que cuenta con sitios y condiciones para el depósito permanente de los residuos sólidos urbanos y de manejo especial, con el propósito de prevenir o al menos,  reducir la liberación de contaminantes al ambiente, la formación de lixiviados en suelos, la generación de procesos de combustión no controlada, la emisión de malos olores, la proliferación de fauna nociva y demás problemas sanitarios y  ambientales;

XLVI. Residuo: El material o producto generado en los procesos de extracción, beneficio, transformación, producción, consumo, utilización, control o tratamiento de bienes o cosas, cuya calidad no permita usarlo nuevamente en el proceso que lo generó y cuyo propietario o poseedor desecha. Puede encontrarse en estado sólido, semisólido, líquido o gaseoso, contenido en recipientes o depósitos, ser susceptible de valorización económica, al tiempo de sujetarse a tratamiento o disposición final conforme a lo dispuesto en este Código y demás ordenamientos aplicables;

XLVII.- Restauración: El  conjunto de actividades tendientes a la recuperación y restablecimiento de las condiciones que propician la evolución y continuidad de los procesos naturales;

XLVIII. Riesgo: La probabilidad de que al liberar al medio ambiente o exponerse a un material o residuo se ocasionen efectos adversos a la salud humana, en los demás organismos vivos, en el agua, en el aire, en el suelo, en los ecosistemas o en los bienes y propiedades pertenecientes a los particulares;

XLIX. Riesgo ambiental: El daño potencial a la población, sus bienes y al medio ambiente derivado de actividades humanas o fenómenos naturales en caso de presentarse un accidente o un evento extraordinario: y

L. Secretaría Federal: La Secretaría de Medio Ambiente y Recursos Naturales; y

LI. Servicios ambientales: Los que brindan los ecosistemas de manera natural o por medio del manejo sustentable de los recursos naturales que los integran, tales como: la provisión del agua en calidad y cantidad; la captura de bióxido de carbono, de contaminantes y componentes naturales; la generación de oxígeno; el amortiguamiento del impacto de los fenómenos naturales; la modulación o regulación climática; la protección de la biodiversidad, los ecosistemas y las formas de vida; la protección y recuperación de suelos; y el paisaje y la recreación, entre otros.

## CAPÍTULO II
### DE LA LEGALIDAD Y SUPLETORIEDAD

**ARTÍCULO 5.**

1. Al ejercer las atribuciones previstas en este Código las autoridades estatales y municipales tienen como misión asegurar el interés público, mediante el respeto y la promoción de los principios de legalidad, honradez, lealtad, imparcialidad y eficiencia en el desempeño de sus funciones.

2. Asimismo, dichas autoridades buscarán coordinar y estimular la cooperación social para impulsar, de manera solidaria y subsidiaria, la satisfacción de las necesidades de la población del Estado y del Municipio.

**ARTÍCULO 6.**

1. En todo lo no previsto en este Código se aplicará en lo conducente y de manera supletoria, la Ley General, la Ley General de Residuos, la Ley General de Vida Silvestre, la Ley Estatal de Planeación, la Ley Orgánica de la Administración Pública del Estado, la Ley de Transparencia y Acceso a la Información Pública del Estado, el Código Civil para el Estado y el Código de Procedimientos Civiles del Estado. A falta de disposiciones jurídicas se aplicarán los principios generales del derecho.

## CAPÍTULO III
### DE LA UTILIDAD PÚBLICA Y EL INTERÉS SOCIAL EN EL DESARROLLO SUSTENTABLE

**ARTÍCULO 7.**

Se considera de utilidad pública:

I. La formulación y ejecución de los planes de ordenamiento ambiental del Estado para la conservación de los ecosistemas, el aprovechamiento sustentable de los recursos y la aplicación de tecnologías y modelos adecuados de uso de suelo;

II. Las acciones en materia de prevención y control de la contaminación atmosférica, de los mantos freáticos y demás cuerpos de agua, así como del suelo en el territorio estatal;

III. El establecimiento y regulación de zonas intermedias de salvaguarda;

IV. La formulación y ejecución de acciones de protección y preservación de la biodiversidad del territorio del Estado, así como el aprovechamiento sustentable de recursos genéticos;

V. Las medidas necesarias para evitar el deterioro o la destrucción que los elementos naturales puedan sufrir, en perjuicio de la colectividad, por la liberación de contaminantes al medio ambiente;

VI. La ejecución de obras destinadas a la prevención, conservación y protección del medio ambiente, así como para la remediación de sitios contaminados cuando las mismas sean imprescindibles para reducir riesgos a la salud;

VII. La protección y preservación de áreas específicas dentro de la superficie en la cual se distribuya una especie o población en riesgo al momento de ser listada, en las cuales se desarrollen procesos biológicos esenciales para su conservación;

VIII. La protección y preservación de áreas específicas del territorio donde se abarque una significativa concentración de diversidad biológica, donde debido a los procesos de deterioro ha disminuido drásticamente su superficie;

IX. La protección y preservación de áreas específicas en las que existe un ecosistema en riesgo de desaparecer si siguen actuando los factores que lo han llevado a reducir su superficie histórica; y

X. La protección y preservación de áreas naturales protegidas de jurisdicción estatal, así como de zonas

Case 2:10-md-02179-CJB-DPC   Document 8368-5   Filed 01/25/13   Page 8 of 114

de preservación ecológica de los centros de población.
**ARTÍCULO 8.**

Se considera de interés social:

I. La formulación y ejecución de las declaratorias de áreas naturales protegidas de jurisdicción estatal y de zonas de preservación ecológica de los centros de población, conforme a lo previsto en la Ley General, incluidos sus planes de manejo y recuperación;

II. El otorgamiento o negativa, revocación o cancelación de las licencias, autorizaciones o concesiones respecto de obras y actividades que se pretendan realizar dentro del Estado o afecten al mismo;

III. La autorización, negativa y, en su caso, la revocación de licencias, autorizaciones o concesiones de las actividades u obras a cielo abierto y subterráneas  de materiales pétreos y suelo, así como la protección y conservación de la seguridad del suelo y la rehabilitación de éste, al término de las faenas extractivas;

IV. La promoción de la educación ambiental, tanto en las instituciones incorporadas al Sistema Educativo Estatal, como no formal, dirigida a todos los sectores de la población;

V. Las medidas de emergencia que las autoridades apliquen en caso fortuito o fuerza mayor, tratándose de contaminación; y

VI. Las acciones de emergencia para contener los riesgos a la salud derivados de cualquier tipo de contaminación.

**TÍTULO SEGUNDO**
**DE LAS AUTORIDADES**
**CAPÍTULO  I**
**DE LAS PREVISIONES GENERALES**

**ARTÍCULO 9.**
Corresponde la aplicación del presente Código:

I. Al Ejecutivo del Estado, por conducto de la Agencia Ambiental;

II. A los Municipios a través de los Ayuntamientos; y

III. A las demás dependencias y entidades estatales o municipales, cuando así lo disponga la legislación aplicable.

**ARTÍCULO 10.**

Son atribuciones generales de las autoridades estatales y municipales a que se refiere el presente Código en las materias que les corresponde, las siguientes:

I. Aplicar para todos los efectos las disposiciones de este Código;

II. Formular, conducir, vigilar y evaluar políticas y proyectos ajustándose en su actuación al Plan Estatal de Desarrollo, al Programa Estatal de Desarrollo Sustentable y a los Planes  Municipales de Desarrollo y Programas Municipales de Desarrollo Sustentable dentro del ámbito y marco legal aplicables;

III. Realizar las acciones de protección al medio ambiente con base en el principio de  transversalidad de la política ambiental estatal;

IV. Impulsar y aplicar programas de mejora regulatoria;

V. Expedir Normas Ambientales Estatales en los casos previstos en el presente Código;

VI. Autorizar a terceros para auxiliarse en el cumplimiento de sus atribuciones;

VII. Celebrar convenios y acuerdos de coordinación;

VIII. Promover la participación de la sociedad, mediante la celebración de convenios de concertación con los sectores social y privado;

IX. Garantizar el principio de transparencia y el derecho de acceso a la información pública;

X. Vigilar y ejecutar la aplicación de las disposiciones del presente Código y de las que se deriven del mismo; realizar visitas de verificación; y ordenar y ejecutar medidas de seguridad aplicando las sanciones previstas en este Código, buscando orientar, concientizar y educar a los infractores;

XI. Coadyuvar entre sí para vigilar el cumplimiento de las disposiciones del presente Código, y cuando se encuentren irregularidades que constituyan violaciones a dichas disposiciones, hacerlas del conocimiento de la autoridad competente.

XII. Propiciar la suscripción de convenios con las autoridades educativas a fin de promover en las instituciones educativas del Estado, la incorporación de contenidos para el desarrollo de culturas ambiental y de desarrollo sustentable;

XIII. Ejercitar las acciones que se desprendan de este Código; y

XIV. Las demás que establezcan el presente ordenamiento y demás disposiciones aplicables.

## CAPÍTULO II
## DE LA COORDINACIÓN DE COMPETENCIAS

**ARTÍCULO 11.**
1. El Ejecutivo Estatal, por conducto de la Agencia Ambiental y, en su caso, con la intervención de otras dependencias y entidades de la administración estatal, podrá celebrar acuerdos de coordinación con el Ejecutivo Federal, con las demás entidades federativas y con los Ayuntamientos, a fin de concertar acciones o transferir facultades en materia de aprovechamiento sustentable, preservación y restauración del equilibrio ecológico y protección al medio ambiente, así como aquellos tendientes a la atención y resolución de problemáticas comunes, debiéndose ajustar a las siguientes bases:

I. Se celebrarán a iniciativa del Gobierno del Estado de Tamaulipas o a propuesta recibida;

II. Se definirán con precisión las materias y actividades que constituyan el objeto del convenio o acuerdo;

III. Se deberá guardar congruencia  con la política ambiental nacional y estatal;

IV. Se describirán los bienes y recursos que aporten las partes, esclareciéndose cuál será su destino específico y su forma de administración;

V. Se especificará la vigencia del convenio o acuerdo, sus formas de solución de controversias y de terminación y en su caso, de prórroga;

VI. Se definirá el órgano u órganos que llevarán a cabo las acciones que resulten de los convenios o acuerdos de coordinación, incluyendo las de evaluación; y

VII. Se contendrán las demás estipulaciones que las partes consideren necesarias para el correcto cumplimiento del convenio o acuerdo.

2. La parte suscriptora del convenio o acuerdo a la cual se le confiera el desarrollo de actividades o

acciones, deberá contar con los medios necesarios, personal capacitado, recursos materiales y financieros, así como la estructura institucional específica para llevar a cabo la actividad encomendada.
3. Los convenios a que se refiere el presente artículo, se publicarán en el Periódico Oficial del Estado para los efectos correspondientes.

## ARTÍCULO 12.

De acuerdo con las bases descritas en el artículo anterior, los Ayuntamientos, con la participación del Ejecutivo del Estado, en su caso, podrán celebrar acuerdos o convenios de coordinación con:

I. La Federación, para realizar actividades o ejercer facultades en bienes y zonas de jurisdicción federal, o para los mismos efectos en el Estado;

II. Otros Estados o los Municipios de éstos, con la participación que corresponda a la Federación, para la realización de acciones en las materias de la Ley General y el presente Código; y

III. Los Ayuntamientos de otros Municipios del Estado para la realización de acciones conjuntas en los términos y materias que señala el presente Código.

## ARTÍCULO 13.

El Estado, por conducto de la Agencia Ambiental, promoverá ante la Federación la celebración de convenios o acuerdos de coordinación que permitan a las autoridades estatales y municipales asumir, según corresponda:

I. La administración y vigilancia de las áreas naturales protegidas competencia de la Federación, conforme a lo establecido en el programa de manejo respectivo y demás disposiciones del presente ordenamiento;

II. La vigilancia y control en el Estado del cumplimiento de las disposiciones legales federales que tiendan a prevenir las contingencias ambientales y emergencias ecológicas;

III. El control de los residuos peligrosos considerados de baja peligrosidad, conforme a las disposiciones establecidas en la Ley General de Residuos;

IV. La evaluación del impacto ambiental de las obras o actividades a que se refiere el artículo 28 de la Ley General, con excepción de lo establecido en el artículo 11 fracción III del mismo ordenamiento legal;

V. La protección y preservación del suelo, la flora y fauna silvestres terrestres y los recursos forestales;

VI. El control de acciones para la protección, preservación y restauración del equilibrio ecológico y la protección al medio ambiente en la zona federal marítimo terrestre, así como en la zona federal de los cuerpos de agua considerados como nacionales;

VII. La prevención y control de la contaminación de la atmósfera, proveniente de fuentes fijas o móviles de competencia federal y, en su caso, la expedición de las autorizaciones correspondientes;

VIII. La prevención y control de la contaminación ambiental originada por ruido, vibraciones, energía térmica, lumínica, radiaciones electromagnéticas y olores perjudiciales para el equilibrio ecológico y el medio ambiente, proveniente de fuentes fijas o móviles de competencia federal y, en su caso, la expedición de las autorizaciones correspondientes;

IX. La elaboración, manejo y control de programas de coordinación de acciones para prevenir las contingencias y emergencias ambientales;

X. La formulación, implementación y control de programas que tiendan a la restauración de las áreas y recursos naturales afectados por las contingencias o emergencias ambientales;

Case 2:10-md-02179-CJB-DPC   Document 8368-5   Filed 01/25/13   Page 11 of 114

XI. La autorización y el control de las actividades realizadas por los microgeneradores de residuos peligrosos de conformidad con las Normas Oficiales Mexicanas correspondientes;

XII. El control de los residuos peligrosos que estén sujetos a los planes de manejo, de conformidad con lo previsto en la Ley General de Residuos;

XIII. El establecimiento y actualización de los registros que correspondan a las fracciones XI y XII anteriores;

XIV. La imposición de las sanciones aplicables relacionadas con las fracciones XI, XII y XIII anteriores; y

XV. Las previstas en el artículo 15 de la Ley de Desarrollo Forestal Sustentable para el Estado de Tamaulipas; o las demás facultades concurrentes que en términos de las disposiciones legales sean susceptibles de asumirse por el Estado.

**ARTÍCULO 14.**

1. Los Ayuntamientos podrán promover ante el Estado, por medio de la Agencia Ambiental, la celebración de convenios o acuerdos de coordinación que les permita asumir facultades específicas de las que se demande su participación, de conformidad a los principios previstos en el presente Código y en la Ley General.

2. En materia de regulación, control y evaluación del impacto ambiental, se promoverá la coordinación de funciones respecto a aquellas obras y actividades que, por sus características y dimensiones, la participación del Municipio facilite su atención.

**ARTÍCULO 15.**

En las zonas conurbadas declaradas por el Ejecutivo Estatal, la realización de acciones en materia ambiental se llevarán a cabo de manera coordinada entre el Estado y los Municipios involucrados en la declaratoria de conurbación correspondiente.

**TÍTULO TERCERO**
**DE LA POLÍTICA AMBIENTAL ESTATAL**
**CAPÍTULO UNICO**
**DE LAS PREVISIONES GENERALES**

**ARTÍCULO 16.**

La interpretación y aplicación del presente Código, y de toda otra norma a través de la cual se ejecute la política de desarrollo sustentable, se ceñirán al cumplimiento de los siguientes principios:

I. De congruencia: las normas sobre desarrollo sustentable se adecuarán a las previsiones del presente Código; en caso de que no fuere así, se privilegiarán las disposiciones de éste;

II. De prevención: las causas y las fuentes de los problemas que afecten el desarrollo sustentable se atenderán en forma prioritaria e integrada, tratando de prevenir los efectos negativos que se pueden producir sobre el medio ambiente y los recursos naturales;

III. Precautorio: cuando haya peligro de daño grave o irreversible, la ausencia de información o certeza científica no deberá utilizarse como razón para postergar la adopción de medidas eficaces, en función de los costos, para impedir la degradación del medio ambiente y los recursos naturales;

IV. De equidad intergeneracional: los responsables de la protección ambiental deberán velar por el uso y goce apropiado del ambiente por parte de las generaciones presentes y futuras;

V. De progresividad: los objetivos ambientales deberán ser logrados en forma gradual, a través de metas interinas y finales, proyectadas en el tiempo para facilitar la adecuación correspondiente de las actividades relacionadas con esos objetivos;

VI. De responsabilidad: el generador de efectos degradantes del medio y del desarrollo sustentable, actuales o futuros, es responsable de los costos de las acciones preventivas y correctivas de recomposición, sin perjuicio de la vigencia de los sistemas de responsabilidad que correspondan;

VII. De subsidiariedad: el Estado, a través de las distintas dependencias y entidades de la administración pública, tiene la obligación de colaborar y, de ser necesario, participar en forma complementaria en las acciones de los sectores social y privado para la preservación y protección del medio ambiente y los recursos naturales;

VIII. De sustentabilidad: el desarrollo económico y social y el aprovechamiento de los recursos naturales deberán realizarse a través de una gestión apropiada del ambiente, de manera tal que no comprometa las posibilidades de las generaciones presentes y futuras;

IX. De solidaridad: el Estado y los Ayuntamientos serán responsables de la prevención y mitigación de los efectos ambientales transfronterizos adversos de su propio accionar, así como de la minimización de los riesgos ambientales sobre los sistemas ecológicos compartidos;

X. De cooperación: los recursos naturales y los sistemas ecológicos compartidos serán utilizados en forma equitativa y racional, el tratamiento y mitigación de las emergencias ambientales de efectos transfronterizos serán desarrollados en forma conjunta; y

XI. De transversalidad: las acciones a favor del desarrollo sustentable rigen la actuación de la administración estatal, misma que actuará conforme a los instrumentos de la planeación del desarrollo.

**ARTÍCULO 17.**

El Estado y los Municipios atenderán los principios de política ambiental que formule la Federación, dentro del ámbito de su competencia.

**TÍTULO CUARTO**
**DE LOS INSTRUMENTOS DE POLÍTICA AMBIENTAL**
**CAPÍTULO I**
**DE LA PLANEACIÓN AMBIENTAL**

**ARTÍCULO 18.**

1. La planeación ambiental es el proceso a través del cual se establecen prioridades y programas para la realización de actividades en materia ambiental por parte de las autoridades, de conformidad con la política de desarrollo sustentable del Estado, sin perjuicio de lo que disponga la Ley Estatal de Planeación.

2. La planeación ambiental se hará de manera congruente entre el Gobierno del Estado y los Ayuntamientos, de acuerdo a lo dispuesto en el presente Código y demás disposiciones aplicables.

**ARTÍCULO 19.**

El Estado promoverá la participación de los distintos grupos sociales en la elaboración de los programas que tengan por objeto el aprovechamiento sustentable de sus recursos naturales, la preservación y restauración del equilibrio ecológico y la protección al medio ambiente.

**ARTÍCULO 20.**

1. El Ejecutivo Estatal, en el seno del Consejo de Gobierno para el Desarrollo Sustentable, por conducto de la Agencia Ambiental, instituirá la política ambiental mediante el Programa Estatal de Desarrollo

Sustentable, en el que se establecerán objetivos, metas y lineamientos estratégicos generales y particulares.

2. El Programa Estatal de Desarrollo Sustentable tomará en consideración los elementos que aporten el diagnóstico ambiental de la entidad, el ordenamiento y los criterios ecológicos del territorio.

## CAPÍTULO II
## DE LOS INSTRUMENTOS ECONÓMICOS

### ARTÍCULO 21.

1. Son instrumentos económicos de este ordenamiento los supuestos y procedimientos de carácter fiscal, financiero o de mercado, mediante los cuales las personas asumen los beneficios y costos ambientales que generen sus actividades, conduciéndolas a realizar acciones que favorezcan el medio ambiente.

2. Son instrumentos económicos de carácter fiscal, los estímulos relacionados con el cumplimiento de obligaciones fiscales que incentiven la observancia de los objetivos de la política ambiental. La Agencia Ambiental asesorará a toda persona que realice actividades normadas por este Código, sobre la posibilidad de obtener estímulos fiscales.

3. Son instrumentos financieros los créditos, las fianzas, los seguros de responsabilidad civil, los fondos y los fideicomisos, cuando sus objetivos estén dirigidos a la conservación de los recursos naturales y el medio ambiente, así como al financiamiento de programas, proyectos, estudios e investigación científica y tecnológica para la preservación del equilibrio ecológico y la protección del medio ambiente.

4. Son instrumentos de mercado las concesiones, autorizaciones, licencias y permisos que corresponden a volúmenes preestablecidos de emisiones de contaminantes en el aire, agua o suelo, o bien, que establecen los límites de aprovechamiento de recursos naturales, o de construcción en áreas naturales protegidas o en zonas cuya preservación y protección se considere relevante desde el punto de vista ambiental.

5. Las prerrogativas derivadas de los instrumentos económicos de mercado serán transferibles, no gravables y quedarán sujetas al interés público y al aprovechamiento sustentable de los recursos naturales.

6. La Agencia Ambiental, con la participación que corresponda a las demás dependencias y entidades estatales, y sin demérito de la creación de otros instrumentos, propiciará la creación y administrará los Fideicomisos para la administración, protección, conservación y restauración de los recursos naturales; de fomento e incentivos al cumplimiento a la normatividad ambiental  y, en general de, toda actividad vinculada con el desarrollo sustentable del Estado.

### ARTÍCULO 22.

La Agencia Ambiental promoverá el otorgamiento de estímulos fiscales, financieros y  de mercado a quienes:

I.   Adquieran, instalen u operen las tecnologías, sistemas, equipos y materiales o realicen las acciones que acrediten prevenir o reducir las emisiones contaminantes establecidas por las Normas Oficiales Mexicanas y las Normas Ambientales Estatales; o prevengan o reduzcan el consumo de agua o de energía; incorporen sistemas de recuperación y reciclamiento de las aguas de desecho, o que utilicen aguas tratadas o de reuso para sus funciones productivas, de conformidad con los programas que al efecto se establezcan;

II.   Realicen e impulsen el desarrollo tecnológico y de ecotecnias viables cuya aplicación demuestre prevenir o reducir las emisiones contaminantes, la producción de grandes cantidades de residuos sólidos urbanos, el consumo de agua o el consumo de energía, en los términos de los programas que al efecto se expidan; o

III. Lleven a cabo actividades que garanticen la conservación sustentable de los recursos naturales.

**ARTÍCULO 23.**

El Estado, en el ámbito de su competencia, a través de la Agencia Ambiental, diseñará, desarrollará y aplicará   instrumentos económicos que incentiven el cumplimiento de los objetivos de las políticas ambiental y de desarrollo sustentable,  mediante los cuales se buscará:

I. Promover una cultura ambientalista en las personas que realicen actividades productivas, de tal manera que el interés colectivo de protección ambiental y de desarrollo sustentable forme parte de sus responsabilidades de planeación económica;

II. Fomentar la incorporación de información confiable y suficiente sobre las consecuencias, beneficios y costos ambientales al sistema de precios de la economía;

III. Otorgar incentivos a quien realice acciones para la protección, preservación o restauración del equilibrio ecológico. Asimismo, actuará para que quienes dañen el medio ambiente, hagan un uso indebido de recursos naturales o alteren los ecosistemas, asuman los costos respectivos;

IV. Promover una mayor equidad social en la distribución de costos y beneficios asociados a los objetivos de las políticas ambiental y  de desarrollo sustentable;

V. Impulsar la participación de los sectores social y privado en proyectos de preservación, conservación y aprovechamiento sustentable de los recursos naturales y medio ambiente de competencia estatal; y

VI. Procurar su utilización conjunta con otros instrumentos de política ambiental, en especial cuando se trate de observar umbrales o límites en la utilización de ecosistemas, de tal manera que se garantice su integridad y equilibrio, la salud y el bienestar de la población.

**ARTÍCULO 24.**

1. La Agencia Ambiental con la participación, en su caso, de otras dependencias podrá diseñar, instrumentar y aplicar programas temporales de fomento a la regularización voluntaria del cumplimiento de la normatividad, cuyo objeto será incentivar y promover entre los diversos sectores de la sociedad los beneficios de la certidumbre jurídica para sus obras o actividades, así como de la participación en el desarrollo sustentable.

2. La incorporación por parte de los particulares a estos programas no representará la exención del cumplimiento de la normatividad, sino el acceso a los beneficios que contengan, por lo que será atribución de la Agencia Ambiental aplicar en todo momento las disposiciones que correspondan, sujetándose a los procedimientos y acciones legales que establece este Código.

3. Los programas de regularización se instrumentarán a través de las bases que para tal efecto establezca la Agencia Ambiental, para lo cuál publicará sus especificaciones en el Periódico Oficial del Estado.

**TÍTULO QUINTO**
**DE LAS NORMAS AMBIENTALES ESTATALES**
**CAPÍTULO ÚNICO**

**ARTÍCULO 25.**

Las Normas Ambientales Estatales determinarán los parámetros dentro de los cuales se garanticen las condiciones necesarias para el bienestar de la población y para asegurar la preservación y restauración del equilibrio ecológico y la protección al medio ambiente en el Estado.

**ARTÍCULO 26.**

La Agencia Ambiental emitirá las Normas Ambientales Estatales que tendrán por objeto:

I. Establecer los requisitos, especificaciones, condiciones, procedimientos, metas, parámetros y límites permisibles que deberán observarse en regiones, zonas, cuencas o ecosistemas, en aprovechamiento de

recursos naturales, en el desarrollo de actividades económicas, en el uso y destino de bienes, en insumos y en procesos;

II. Considerar las condiciones necesarias para el bienestar de la población y la preservación o restauración de los recursos naturales y la protección al medio ambiente;

III. Estimular o inducir a los agentes económicos para reorientar sus procesos y tecnologías a la protección del medio ambiente y al desarrollo sustentable;

IV. Otorgar certidumbre de largo plazo a la inversión e inducir a los agentes económicos a asumir los costos de la afectación ambiental que ocasionen; y

V. Fomentar actividades productivas en un marco de eficiencia y sustentabilidad.

**TÍTULO SEXTO**
**DE LA INFORMACIÓN AMBIENTAL**
**CAPÍTULO I**
**DEL SISTEMA ESTATAL DE INFORMACIÓN AMBIENTAL**

**ARTÍCULO 27.**

1. La Agencia Ambiental desarrollará un Sistema Estatal de Información Ambiental y de Recursos Naturales que tendrá por objeto registrar, organizar, actualizar y difundir la información ambiental estatal, el cual estará disponible para su consulta.

2. En dicho Sistema, la Agencia Ambiental deberá integrar, entre otros, los siguientes elementos:

I. La información relativa a los inventarios de recursos naturales existentes en el territorio estatal, a los mecanismos y resultados obtenidos del monitoreo de la calidad del agua, del suelo y del aire, así como del ordenamiento ecológico del territorio;

II. Un registro de emisiones y transferencia de contaminantes al aire, agua, suelo y subsuelo, materiales y residuos de su competencia y de aquellas sustancias que determine la autoridad correspondiente. La información de este registro incorporará datos y documentos contenidos en las autorizaciones, cédulas, informes, reportes, licencias, permisos y concesiones que en materia ambiental se tramiten ante la Agencia, o en su caso ante la autoridad competente de los Municipios. Las personas físicas y morales responsables de fuentes contaminantes están obligadas a proporcionar la información, datos y documentos necesarios para la integración del presente registro, el cual se integrará con datos desagregados por sustancia y por fuente, anexando nombre y dirección de los establecimientos sujetos a registro; y

III. La información correspondiente a los registros, programas y acciones que se realicen para la preservación del equilibrio ecológico y la protección al medio ambiente.

3. La Agencia Ambiental reunirá informes y documentos relevantes que resulten de las actividades científicas, académicas, trabajos técnicos o de cualquier otra índole en materia ambiental y de preservación de recursos naturales, realizados en el Estado por personas físicas o morales, nacionales o extranjeras, los que serán remitidos al Sistema Estatal de Información Ambiental y de Recursos Naturales.

4. El Estado  participará con la Secretaría Federal en la integración del Sistema Nacional de Información Ambiental y de Recursos Naturales, a través del acuerdo de coordinación que al efecto se celebre.

5. Los Municipios deberán participar con la Agencia Ambiental en la integración del Sistema Estatal de Información Ambiental y de Recursos Naturales, a través de los acuerdos de coordinación que al efecto se celebren.

**ARTÍCULO 28.**

1. La información a que se refiere la fracción II del párrafo 2 del artículo anterior se integrará, sistematizará y difundirá por medio del Registro Estatal Ambiental.

2. En específico se mantendrán los datos sobre las sustancias emitidas al medio ambiente o transferidas a sistemas de tratamiento o disposición, que puedan ocasionar un impacto significativo sobre la salud humana y los ecosistemas.

## ARTÍCULO 29.

1. Están obligados a inscribirse en el Registro Estatal Ambiental, las personas físicas o morales que realicen actividades de competencia estatal, conforme a lo dispuesto por el presente Código.

2. La Cédula de Operación Anual deberá ser presentada ante la Agencia Ambiental por el representante autorizado de quienes realicen actividades comprendidas por la competencia estatal.

## ARTÍCULO 30.

1. La información proporcionada en la Cédula de Operación Anual deberá actualizarse durante el primer cuatrimestre de cada año, respecto de la emisión y transferencia de contaminantes ocurridos durante el año anterior.

2. La Cédula de Operación Anual deberá llenarse conforme a los siguientes lineamientos, los cuales serán obligatorios de acuerdo a la empresa o actividad de que se trate:

Sección Primera. Información Técnica General, que comprende la operación y funcionamiento, materias primas e insumos, productos y consumo energético del establecimiento.

Sección Segunda. Contaminación Atmosférica, que describe la generación de contaminantes, parámetros normados y las emisiones anuales del establecimiento.

Sección Tercera. Aprovechamiento de Agua y Descarga de Aguas Residuales, que describe el aprovechamiento de agua, datos generales de descarga y las características de las descargas de aguas residuales del establecimiento;

Sección Cuarta. Generación, Tratamiento y Transferencia de Residuos, que se refiere a la generación de residuos peligrosos, almacenamiento de los mismos dentro del establecimiento y transferencia y el tratamiento de dicho tipo de residuos;

Sección Quinta. Emisión y Transferencia Anual de los Contaminantes o grupos de contaminantes, que describe el uso e identificación de esas sustancias dentro del establecimiento, cantidad anual consumida, almacenada, producida o emitida a cualquier otro medio y los derivados de accidentes, contingencias o emisiones fugitivas.

Sección Sexta. Generación de Emisión de Ruido o Vibraciones.

3. La información anterior será para efectos de control en el cumplimiento de las disposiciones aplicables y para fines estadísticos, independientemente de la competencia municipal, estatal o federal que corresponda.

## ARTÍCULO 31.

Para obtener el Registro Estatal Ambiental, se seguirá el siguiente procedimiento:

I. El establecimiento promovente solicitará a las autoridades ambientales estatales el formato de la Cédula de Operación Anual, o bien podrá obtenerlo vía electrónica en la página de Internet de la Agencia Ambiental;

II. Llenado el formato, el establecimiento promovente entregará físicamente la base de datos generada por el programa de reporte de la Cédula de Operación Anual.

## ARTÍCULO 32.

1. En caso de que alguna persona física o moral tenga dos o más plantas en predios distintos, deberá obtener un Registro Estatal Ambiental por cada establecimiento.

2. La Agencia Ambiental recibirá la información del reporte y verificará el llenado de los campos del formato.

3. Llenado correctamente el formato de la Cédula de Operación Anual, la Agencia Ambiental emitirá un oficio de conformidad en el cual se incluye el número que corresponda al Registro Estatal Ambiental del establecimiento.

4. En caso de que el llenado de los campos de la Cédula de Operación Anual esté incompleto o haya sido incorrectamente llenado, la Agencia Ambiental, enviará una notificación al establecimiento promovente indicando las razones de devolución y otorgándole un plazo de 5 días hábiles para que presente el formato debidamente corregido.

## ARTÍCULO 33.

1. La Agencia Ambiental, evaluará la información contenida en la Cédula de Operación Anual, en un plazo no mayor de 60 días hábiles, y hará el asiento correspondiente en el Registro Estatal Ambiental. A su vez generará un reporte anual de la condición ambiental de la entidad.

2. En caso que de los informes recibidos se desprenda el incumplimiento de leyes, reglamentos y normas de competencia estatal, el establecimiento deberá apegarse al proceso de regulación, a través del procedimiento administrativo correspondiente, sin demérito de las sanciones a que se haga acreedor.

## ARTÍCULO 34.

La Agencia Ambiental deberá elaborar y publicar un informe detallado de la situación general existente en el Estado en materia de equilibrio ecológico y protección al medio ambiente, por lo menos con una periodicidad de cada dos años.

**CAPÍTULO II**
**DE LA TRANSPARENCIA Y  EL ACCESO A LA INFORMACIÓN AMBIENTAL**

## ARTÍCULO 35.

1. Toda persona tendrá derecho a que la Agencia Ambiental o, en su caso, los Municipios, pongan a su disposición la información ambiental que les soliciten, debiendo formular el requerimiento en términos de la Ley de Transparencia y Acceso a la Información Pública del Estado de Tamaulipas.

2. La Agencia Ambiental y, en su caso, los Ayuntamientos, se abstendrán de  entregar la información cuando el contenido de la misma se encuentre clasificada como información de acceso restringido, de acuerdo a lo previsto por la Ley de Transparencia y Acceso a la información Pública del Estado de Tamaulipas.

3. Los promoventes, en la presentación de datos, manifestaciones, contestaciones, informes y, en general, toda documentación, podrán solicitar que se mantenga en reserva aquella información que, de hacerse pública pudiera afectar sus derechos de propiedad industrial y la confidencialidad de la información comercial que contengan. Dicha solicitud será resuelta por el titular de la Unidad de

Información Pública de la Agencia Ambiental, de acuerdo con la Ley de Transparencia y Acceso a la Información Pública del Estado de Tamaulipas.


**TÍTULO SÉPTIMO**
**DE LA CONCIENTIZACIÒN SOCIAL**
**CAPÍTULO I**
**DE LA INVESTIGACIÓN Y  EDUCACIÓN AMBIENTAL**

**ARTÍCULO 36.**

1. El Estado y los Municipios, en coordinación con los sectores público, social y privado promoverán la incorporación de contenidos que fomenten las culturas ambiental y de desarrollo sustentable, a través del Sistema Educativo Estatal y de la formación cívica.

2. Asimismo, propiciarán el fortalecimiento de la responsabilidad ambiental, a través de campañas de sensibilización y concientización.

3. La Agencia Ambiental alentará la adopción de programas extracurriculares en el Sistema Educativo Estatal, para promover la importancia,  protección y mejoramiento del medio ambiente.

4. La Agencia Ambiental, asimismo, promoverá la participación de los medios de comunicación masiva en el fortalecimiento de la conciencia ecológica y las políticas para el desarrollo sustentable en el Estado.

**ARTÍCULO 37.**

La Agencia Ambiental promoverá ante las instituciones de educación superior incorporadas al Sistema Educativo Estatal  y los organismos dedicados a la investigación científica y tecnológica del Estado, el desarrollo de programas para la formación de profesionales en la materia y para la investigación de las causas y efectos de los fenómenos ambientales en el ámbito local; así como programas para el desarrollo de técnicas y procedimientos que permitan prevenir, controlar y abatir la contaminación y proteger  los servicios ambientales, ecosistemas y recursos naturales de Tamaulipas.

**CAPÍTULO II**
**DE LOS SISTEMAS DE MANEJO AMBIENTAL**

**ARTÍCULO 38.**

 Los poderes Ejecutivo, Legislativo y Judicial del Estado, los Ayuntamientos, así como los organismos autónomos, implementarán sistemas de manejo ambiental en todas sus dependencias, entidades y oficinas, así como programas de capacitación y mejoramiento ambiental en la prestación de los servicios públicos, los que tendrán por objeto prevenir y minimizar la generación de residuos y aprovechar su valor, a través de:

I. La promoción de una cultura de responsabilidad ambiental en los servidores públicos;

II. La disminución del impacto ambiental generado por las actividades administrativas de sus dependencias, entidades y oficinas; y

III. La eficiencia administrativa por medio del consumo racional y sustentable de los recursos naturales, energéticos,  materiales y financieros.

2. Asimismo, promoverán que en sus procesos de adquisiciones de bienes para la prestación de sus servicios y cumplimiento de sus funciones, se opte por la utilización y el consumo de productos compuestos total o parcialmente de materiales valorizables.

3. La Agencia Ambiental prestará su apoyo a los poderes Legislativo y Judicial del Estado, los Ayuntamientos y a los organismos autónomos en la formulación de los sistemas de manejo ambiental. A su vez, en el ámbito del poder Ejecutivo establecerá los criterios para la implementación de estos sistemas.

**TÍTULO OCTAVO**
**DE LA PARTICIPACIÓN SOCIAL**
**CAPÍTULO ÚNICO**

**ARTÍCULO 39.**

El Estado, a través de la Agencia Ambiental, promoverá la participación de la sociedad en la formulación de la política ambiental y de desarrollo sustentable de la entidad federativa, en la aplicación de sus instrumentos, en las acciones de información, vigilancia y, en general, en los programas ambientales que emprenda, para lo cual podrá:

I. Convocar a los particulares, a las organizaciones de los sectores social y privado y de carácter académico y cívico, para que manifiesten su opinión y propuestas;

II. Celebrar, con la participación de las autoridades competentes, con organizaciones obreras y grupos sociales, comunidades agrarias y demás organizaciones campesinas, organizaciones empresariales, instituciones educativas y académicas, organizaciones civiles e instituciones privadas no lucrativas, representaciones sociales y, en general, particulares interesados en la conservación y restauración del medio ambiente en el Estado, convenios de colaboración para: la protección del medio ambiente y los recursos naturales; el establecimiento, administración y manejo de áreas naturales protegidas de competencia estatal; asesoría ambiental en las actividades relacionadas con el aprovechamiento y desarrollo sustentable de los recursos naturales; la realización de estudios e investigaciones en materia ambiental, de desarrollo sustentable, así como para la capacitación en la materia; la planeación y ejecución de acciones conjuntas y demás actividades convenientes a favor del desarrollo sustentable;

III. Celebrar convenios con los medios de comunicación masiva para la difusión, información y promoción de acciones a favor de la formación de las culturas ambiental y de desarrollo sustentable en el Estado;

IV. Promover el establecimiento de reconocimientos a los esfuerzos más destacados de la sociedad en el Estado para preservar y restaurar el medio ambiente en el mismo;

V. Impulsar el fortalecimiento de la conciencia ambiental, a través de la realización de acciones conjuntas con la comunidad, grupos e instituciones interesadas para la conservación y mejoramiento del medio ambiente y el correcto manejo de residuos en la entidad; al efecto, la Agencia Ambiental podrá, en forma coordinada con los Ayuntamientos, celebrar convenios de colaboración con comunidades urbanas y rurales, así como con diversas organizaciones sociales en el Estado; y

VI. Concertar acciones e inversiones con los particulares y con organizaciones de los sectores social y privado y de carácter académico y cívico para la conservación y restauración del medio ambiente en la entidad.

**ARTÍCULO 40.**

1. La Agencia Ambiental otorgará anualmente el Premio al Desarrollo Sustentable en coordinación con otras autoridades, a aquellas personas físicas o morales que hayan realizado acciones o creado programas relevantes y factibles para la protección, preservación o restauración del equilibrio ecológico y la sustentabilidad del desarrollo.

2. El premio consistirá en un reconocimiento público y conllevará un incentivo económico que será previsto anualmente en el presupuesto de egresos de la dependencia.

**LIBRO SEGUNDO**

**DE LA PROTECCIÓN AMBIENTAL**

**TÍTULO PRIMERO**
**DISPOSICIONES GENERALES**
**CAPÍTULO ÚNICO**

**ARTÍCULO 41**

Las disposiciones de este Libro tienen por objeto la protección del medio ambiente, propiciar un desarrollo sustentable en la entidad y establecer las bases para:

I.El aprovechamiento sustentable, la conservación, restauración y mejoramiento del medio ambiente, en bienes y zonas de jurisdicción del Estado;

II. La regulación de la conservación y protección de la biodiversidad;

III. La prevención y el control del deterioro del aire, agua y suelo, en los casos no reservados a la Federación; y

IV. La regulación de obras o actividades de carácter público o privado de competencia local, que puedan causar deterioro ambiental o rebasar los límites y condiciones establecidos en las disposiciones aplicables para proteger, preservar y restaurar los diversos ambientes naturales y antropogénicos, a fin de evitar o reducir al máximo sus efectos negativos.

**ARTÍCULO 42.**

1. Para los efectos de este Libro se entiende por:

I. Aguas de jurisdicción estatal: las existentes dentro del territorio del Estado, siempre que no estén comprendidas en algunos de los casos de jurisdicción nacional o de propiedad particular, que se señalan en el artículo 27 de la Constitución Política de los Estados Unidos Mexicanos;

II. Aguas residuales: las aguas de composición variada, provenientes de las descargas de usos público urbanos, doméstico, industrial, comercial de servicios, agrícola, pecuario de las plantas de tratamiento y en general de cualquier uso, así como la mezcla de ellas;

III. Cuerpo receptor: la corriente o depósito natural de agua, presas, cauces, zonas marinas o bienes estatales donde se descargan aguas residuales, así como los terrenos en donde se infiltran dichas aguas, cuando puedan contaminar los suelos, subsuelo o acuíferos;

IV. Descarga de aguas residuales: la acción de verter, infiltrar, depositar o inyectar aguas residuales a un cuerpo receptor;

V. Emisión: la descarga directa o indirecta a la atmósfera de olores, partículas sólidas, vapores, gases y cualquiera de sus combinaciones y, en general, toda sustancia que no sea agua en su forma no combinada;

VI. Estudio de daño ambiental: el análisis de la relación causal entre hechos, naturales o no, actos u omisiones, y el impacto negativo al medio ambiente, que define sus cualidades, cuantificación y medidas de compensación y, en el caso de que ésta no sea posible, la reparación del daño ambiental causado;

VII. Estudio de riesgo: el análisis de los riesgos inherentes a las acciones previstas para el desarrollo de la obra o actividad y los efectos potenciales al medio ambiente, así como las medidas de seguridad tendientes a evitar, minimizar o controlar estas afectaciones en caso de accidente;

VII. Fuente fija de contaminación atmosférica: todo medio operativo estable que genere o puede generar emisiones contaminantes a la atmósfera;

VIII. Fuente móvil de contaminación atmosférica: todo medio operativo móvil que genere o puede generar emisiones contaminantes a la atmósfera;

IX. Infiltración de aguas residuales: el proceso natural o inducido, mediante el cual las aguas residuales llegan al subsuelo;

X. Manifestación del impacto ambiental: el documento mediante el cual se da a conocer, con base en estudios, el impacto ambiental, significativo y potencial que generaría una obra o actividad, así como la forma de evitarlo o atenuarlo en caso de que sea negativo;

XI. Medidas de prevención y mitigación: las disposiciones que tienen por objeto prevenir o reducir los impactos ambientales que pudieran ocurrir en cualquier etapa de desarrollo de una obra o actividad;

XII. Ruido: todo sonido estridente provocado por cuerpos fijos o móviles, susceptible de causar molestia, riesgos o perjuicios a las personas, al medio ambiente o a los ecosistemas, conforme a las Normas Oficiales Mexicanas o las Normas Ambientales Estatales;

XIII. Sistema de drenaje y alcantarillado urbano o municipal: el conjunto de dispositivos o instalaciones que tienen como propósito recolectar y conducir aguas residuales o municipales, pudiendo incluir la captación de aguas pluviales; y

XIV. Tratamiento de aguas residuales: el proceso al cual se someten las aguas residuales, con el objeto de disminuir o eliminar los contaminantes que contengan.

2. En los casos no previstos por este Libro, se considerarán supletoriamente las definiciones establecidas por la Ley General y demás legislación general y local aplicable.

**TÍTULO SEGUNDO**
**DE LA DISTRIBUCIÓN Y COORDINACIÓN DE COMPETENCIAS**
**CAPÍTULO I**
**DE LA DISTRIBUCIÓN DE COMPETENCIAS**

**ARTÍCULO 43.**

1. La aplicación del presente Libro corresponde al Ejecutivo del Estado, por conducto de la Agencia Ambiental, y a los Municipios a través de sus Ayuntamientos y las dependencias de los mismos, dentro del ámbito de sus respectivas competencias.

2. En el cumplimiento de sus funciones, el Estado y los Ayuntamientos deberán observar los principios, políticas y criterios de desarrollo sustentable, previstos en el presente Código, así como en las Normas Oficiales Mexicanas y las Normas Ambientales Estatales, a fin de proteger el medio ambiente y asegurar la sustentación del desarrollo.

**ARTÍCULO 44.**

Corresponden al Estado, por conducto de la Agencia Ambiental, las siguientes atribuciones:

I. Aplicar y hacer cumplir lo dispuesto en este Libro;

II. Proponer los elementos al Consejo de Gobierno para el Desarrollo Sustentable para la formulación de la política ambiental estatal y de los criterios ecológicos particulares en el territorio de la entidad federativa así como conducir su ejecución;

III. Proponer y ejecutar el Programa Estatal de Desarrollo Sustentable, así como los instrumentos de política ambiental previstos en las leyes estatales en la materia, para la preservación y restauración del equilibrio ecológico y la protección al ambiente que se realice en bienes y zonas de jurisdicción estatal, en las materias que no estén expresamente atribuidas a la Federación;

IV. Aplicar los instrumentos de política ambiental previstos en las leyes locales en la materia, así como prevenir y restaurar el equilibrio ecológico y la protección al medio ambiente que se realice en bienes y zonas de jurisdicción estatal, en las materias que no estén expresamente atribuidas a la Federación:

V. Prevenir y controlar la contaminación atmosférica, generada por fuentes fijas que funcionen como establecimientos industriales, que conforme a la Ley General no sean de competencia federal;

VI. Integrar, actualizar permanentemente y publicar el inventario de fuentes fijas de contaminación atmosférica de su competencia;

VII. Prevenir y controlar la contaminación de la atmósfera proveniente de fuentes móviles que no sean de competencia federal;

VIII. Establecer, operar, regular y, en su caso, concesionar y supervisar, previo estudio justificativo de conveniencia, los sistemas de verificación de emisiones de contaminantes de la atmósfera de las fuentes móviles que circulen en el territorio estatal;

IX. Certificar los niveles de emisión de contaminantes a la atmósfera;

X. Regular el aprovechamiento sustentable de los recursos naturales, prevenir y controlar la contaminación de las aguas de jurisdicción estatal, así como de las aguas nacionales que el Estado tengan asignadas;

XI. Prevenir y controlar la contaminación generada por la emisión de ruido, vibraciones, energía térmica, lumínica, radiaciones electromagnéticas y olores perjudiciales al medio ambiente, proveniente de fuentes fijas que funcionen como establecimientos industriales;

XII. Regular y controlar las actividades consideradas riesgosas, que no sean competencia de la Federación, cuando afecten o puedan afectar al medio ambiente, el equilibrio ecológico de los ecosistemas, o exista un riesgo por la gravedad de los efectos que puedan generar en la salud de las personas dentro del territorio del Estado;

XIV. Realizar acciones de protección al medio ambiente, coordinadamente con las demás dependencias y entidades de la administración pública o con los sectores social y privado para garantizar la transversalidad de la política ambiental estatal;

XV. Regular y controlar con fines ecológicos, el aprovechamiento de los minerales o sustancias no reservadas a la Federación, que constituyan depósitos naturales como roca o productos de su descomposición y que se utilicen para la fabricación de materiales para la construcción u ornamento;

XVI. Prevenir la generación y participar en emergencias y contingencias ambientales, conforme a las políticas y programas de protección civil que al efecto se establezcan;

XVII. Formular, expedir y ejecutar los programas de ordenamiento ecológico regional con la participación de los Ayuntamientos respectivos, y atender los asuntos que afecten el equilibrio ecológico o el medio ambiente de dos o más municipios;

XVIII. Vigilar el cumplimiento de las Normas Oficiales Mexicanas expedidas por la Federación, en las materias y supuestos que se encuentren dentro de la esfera de su competencia así como formular, actualizar, aplicar y verificar el cumplimiento de las Normas Ambientales Estatales, en su caso;

XIX. Formular y conducir la política estatal de información y difusión en materia ambiental, así como coadyuvar con la Secretaría de Educación en el establecimiento y ejecución de la educación de dicha materia;

XX. Promover la participación de la sociedad en materia ambiental, de conformidad con lo dispuesto en este Código;

XXI. Regular el impacto ambiental de las obras o actividades que no se encuentren expresamente reservadas a la Federación;

XXII. Formular, ejecutar y evaluar el Programa Estatal de Desarrollo Sustentable, en los términos de la Ley Orgánica de la Administración Pública del Estado y la Ley Estatal de Planeación;

XXIII. Emitir recomendaciones a las autoridades competentes en materia de desarrollo sustentable, con el propósito de promover el cumplimiento de la legislación que regula esta materia;

XXIV. Atender coordinadamente con la Federación asuntos que afecten el equilibrio ecológico del territorio estatal;

XXV. Atender cuestiones que afecten el equilibrio ecológico o el medio ambiente del territorio del Estado y de otra u otras entidades, coordinándose con la Federación cuando su naturaleza así lo requiera;

XXVI. Coordinar la política estatal sobre cambio climático, de protección a la capa de ozono y de atención y reversión a los problemas de gases efecto invernadero;

XXVII. Instrumentar, aplicar y administrar el cobro y pago de servicios ambientales en el Estado;

XXVIII. Denunciar ante el Ministerio Público los hechos u omisiones considerados como delitos contra el medio ambiente y los recursos naturales;

XXIX. Diseñar, instrumentar y aplicar programas temporales de fomento a la regularización voluntaria del cumplimiento a la normatividad ambiental;

XXX. Expedir y controlar el Registro de Prestadores de Servicios Técnicos en Materia Ambiental;

XXXI. Formular y publicar los listados de las actividades riesgosas, así como de las obras o actividades que generen un impacto ambiental y que deben sujetarse a la presentación de una manifestación para su evaluación;

XXXII. Clausurar y suspender las obras o actividades cuando violenten las disposiciones de este Código y, en su caso, solicitar la revocación y cancelación de las licencias de construcción y uso de suelo;

XXXIII. Aplicar las medidas correctivas y de seguridad, así como las  sanciones administrativas que procedan, por infracciones a este Código;

XXXIV. Establecer y operar el Sistema de Ventanilla Única en materia ambiental;

XXXV. Formular, expedir y ejecutar  los programas de ordenamiento ecológico regional, con la participación de los Ayuntamientos respectivos;

XXXVI. Formular, establecer y evaluar los sistemas de manejo ambiental de la administración pública estatal;

XXXVII. Atender los demás asuntos que se prevén en este Libro y otros ordenamientos concordantes con el mismo, y que no se encuentren otorgados expresamente a la Federación; y

XXXVIII. Las demás que le señalen las leyes, reglamentos y otras disposiciones jurídicas.

## ARTÍCULO 45.

Corresponden a los Municipios por conducto de los Ayuntamientos las siguientes atribuciones:

I. Preservar, restaurar y proteger el medio ambiente en sus respectivas circunscripciones territoriales, salvo que se trate de asuntos de competencia del Estado o de la Federación;

II. Formular, conducir y evaluar la política ambiental municipal y el Programa Municipal de Desarrollo Sustentable, en forma coherente con las políticas federal y estatal;
III. Aplicar los instrumentos de política ambiental previstos en las leyes locales en la materia y preservar y restaurar el equilibrio ecológico y la protección al medio ambiente en ámbitos de competencia municipal, en las materias que no estén expresamente atribuidas a la Federación o al Estado;

IV. Formular y expedir los programas de ordenamiento ecológico local del territorio en los términos previstos en el presente Libro, así como controlar y vigilar el uso y cambio de uso del suelo, establecidos en dichos programas, atendiendo lo dispuesto por la Ley para el Desarrollo Urbano del Estado;

V. Vigilar, en forma coordinada con la Agencia Ambiental, el cumplimiento de las disposiciones jurídicas de fuentes fijas que funcionen como establecimientos comerciales o de servicios, así como de emisiones de contaminantes a la atmósfera provenientes de fuentes móviles que no sean  de competencia federal;

VI. Ejercer medidas de prohibición  a la circulación de los vehículos automotores, cuyos niveles de emisión de contaminantes a la atmósfera rebasen ostensiblemente los límites máximos permisibles, que determinen los reglamentos y normas vigentes,  y de conformidad con los acuerdos que para tal efecto suscriban con la Agencia Ambiental;

VII. Aplicar medidas de tránsito y vialidad necesarias, dentro de la circunscripción municipal correspondiente, para reducir los niveles de emisión de contaminantes a la atmósfera de los vehículos automotores;

VIII. Identificar, promover y ordenar, en su caso, medidas correctivas y acuerdos de regularización voluntaria con quienes realicen actividades contaminantes que sean de su competencia y, en su caso, requerirles la instalación de equipos de control de emisiones, sin demérito de la aplicación de sanciones que les competa;

IX. Construir y operar los sistemas de monitoreo de la contaminación atmosférica en el Municipio, con apego a las Normas Oficiales Mexicanas y en su caso las Normas Ambientales Estatales;

X. Vigilar el cumplimiento de las Normas Oficiales Mexicanas expedidas por la Federación y en su caso de las Normas Ambientales Estatales, en las materias y supuestos a  que se refiere este Libro;

XI. Formular y conducir  la política municipal de información y difusión en materia ambiental, así como coadyuvar con la Secretaría de Educación en el establecimiento y ejecución de la educación en dicha materia;

XII. Participar, de conformidad con lo previsto por este Código, en la evaluación del impacto ambiental de obras o actividades de competencia estatal, cuando las mismas se realicen en el ámbito de su circunscripción territorial;

XIII. Elaborar y difundir en la comunidad un informe semestral sobre el estado del medio ambiente en el Municipio, así como los resultados del monitoreo de la calidad del aire, integrándolos al Sistema de Información Estatal a cargo de la Agencia Ambiental;

XIV. Aplicar las disposiciones jurídicas en materia de prevención y control de la contaminación de las aguas que se descarguen en los sistemas de drenaje y alcantarillado de los centros de población, en el ámbito de su competencia, así como de las aguas nacionales que tengan asignadas, con la participación que conforme a la legislación en la materia corresponda al Estado;

XV. Ordenar, en los términos de este Código, la instalación de sistemas de tratamiento de aguas a quienes exploten, usen o aprovechen en actividades económicas, aguas federales concesionadas a los

Municipios para la prestación de servicios públicos, así como a quienes descarguen aguas residuales en los sistemas municipales de drenaje y alcantarillado, que no satisfagan las Normas Oficiales Mexicanas y, en su caso, las Normas Ambientales Estatales correspondientes;

XVI. Implementar  y operar los sistemas municipales de tratamiento de aguas residuales, de conformidad con las Normas Oficiales Mexicanas y en su caso las Normas Ambientales Estatales aplicables;
XVII. Aplicar en las obras e instalaciones municipales destinadas al tratamiento de aguas residuales, los criterios que emitan las autoridades federales y Estatales correspondientes, a efecto de que las descargas en cuerpos y corrientes de agua que pasen al territorio de otro Municipio u otra entidad federativa satisfagan las Normas Oficiales Mexicanas y, en su caso, las Normas Ambientales Estatales aplicables;

XVIII. Tratar, antes de su descarga en cuerpos receptores, y controlar la disposición de las aguas residuales de origen particular que se descarguen en los sistemas de drenaje y alcantarillado de su competencia, así como requerir el pago de los derechos correspondientes;

XIX. Conformar y actualizar el Registro Municipal de las Descargas a las redes de drenaje y alcantarillado que administren, cuyos datos serán integrados al Registro Estatal de Descargas de Aguas Residuales a cargo de la Agencia Ambiental y, a su vez, al Registro Nacional de Descargas de Aguas Residuales;

XX. Prevenir y controlar la contaminación originada por ruido, vibraciones, energía térmica, radiaciones electromagnéticas, energía lumínica y olores perjudiciales al equilibrio ecológico o al medio ambiente, proveniente de fuentes fijas que funcionen como establecimientos mercantiles o de servicios, así como la vigilancia del cumplimiento de las disposiciones que, en su caso, resulten aplicables a las fuentes móviles excepto las que, conforme a la Ley General, sean consideradas de competencia federal;

XXI. Regular y controlar la contaminación visual, siguiendo los lineamientos de este Libro;

XXI. Prevenir y restaurar el equilibrio ecológico y la protección ambiental en los centros de población, en relación con los efectos derivados de los servicios de drenaje, alcantarillado, limpia, mercados, centrales de abasto, panteones, rastros, tránsito y transportes locales, siempre y cuando no se trate de facultades otorgadas a la Federación o al Estado;

XXII. Participar en la prevención y control de emergencias y contingencias ambientales, conforme a las políticas y programas de protección civil que al efecto se establezcan;

XXIII. Atender los asuntos que afecten el equilibrio ecológico del Municipio y, en su caso, con otro u otros, con la participación que corresponde al Estado;

XXIV. Expedir los reglamentos municipales y disposiciones administrativas para el cumplimiento de este Código; y

XXV. Las demás que le señalen las leyes, reglamentos y otras disposiciones aplicables.

**CAPÍTULO II**
**DEL ORDENAMIENTO ECOLÓGICO**

**ARTÍCULO 46.**

1. El ordenamiento ecológico del Estado es el instrumento que regula e induce el uso de suelo y las actividades productivas, con el fin de lograr la protección y preservación del medio ambiente, así como el aprovechamiento sustentable de los recursos naturales, a partir del análisis de las tendencias de deterioro y sus potencialidades de aprovechamiento.

El ordenamiento ecológico del estado, se llevará a cabo mediante programas de:

I. Ordenamiento regional, que podrán comprender la totalidad o una parte del  territorio del Estado;  y

II. Ordenamiento local, que comprende la totalidad o una parte de territorio de un Municipio.

**ARTÍCULO 47.**

En la formulación del ordenamiento ecológico del Estado se deberán considerar los siguientes criterios:

I. La naturaleza y características de los ecosistemas existentes en el territorio del Estado;

II. La vocación de cada zona o región, en función de los recursos naturales, la distribución de la población y las actividades económicas predominantes;

III. Los desequilibrios existentes en los ecosistemas por efecto de los asentamientos humanos, de las actividades económicas o de otras actividades humanas o fenómenos naturales;

IV. El equilibrio que debe existir entre los asentamientos humanos y sus condiciones ambientales; y

V. El impacto ambiental de  nuevos asentamientos humanos y sus condiciones ambientales.

**ARTÍCULO 48.**

Los programas de ordenamiento ecológico regional deberán contener, por lo menos:

I. La determinación del área o región a ordenar, describiendo sus atributos físicos, bióticos y socioeconómicos, así como el diagnóstico de sus condiciones ambientales y las tecnologías utilizadas por los habitantes del área;

II. La determinación de los criterios de regulación ecológica para la preservación, protección, restauración y aprovechamiento sustentable de los recursos naturales que se localicen en la región de que se trate, así como para la realización de actividades productivas y la ubicación de asentamientos humanos; y

III. Los lineamientos para su ejecución, evaluación y seguimiento.

**ARTÍCULO 49.**

Los programas de Ordenamiento Ecológico Local, serán expedidos por las autoridades municipales,  de conformidad con lo establecido en el presente Código y el Reglamento de este Libro y tendrán por objeto;

I. Determinar las distintas áreas ecológicas que se localicen en la zona o región de que se trate, describiendo sus atributos físicos, bióticos y socioeconómicos, así como el diagnóstico de sus condiciones ambientales, y de las tecnologías utilizadas por los habitantes del área de que se trate;

II. Regular, fuera de los centros de población, los usos del suelo con el propósito de proteger el ambiente y preservar, restaurar y aprovechar de manera sustentable los recursos naturales respectivos, fundamentalmente en la realización de actividades productivas y la localización de asentamientos humanos; y

III. Establecer los criterios de regulación ecológica para la protección, preservación, restauración y aprovechamiento sustentable de los recursos naturales dentro de los centros de población, a fin de que sean considerados en los planes o programas de desarrollo urbano correspondientes.

**ARTÍCULO 50.**

1. Para la formulación, aprobación, expedición, evaluación y modificación de los programas de ordenamiento ecológico regional, local, las autoridades competentes contemplarán lo dispuesto en las siguientes bases:

I. El principio de congruencia entre los programas de ordenamiento ecológico regional y local y el general del territorio, y la atención de los criterios que al efecto señale el Estado, a través de la Agencia Ambiental;

II. Los programas de ordenamiento ecológico local cubrirán una extensión geográfica cuyas dimensiones permitan regular el uso del suelo, de conformidad con lo previsto en este Código;

III. Las previsiones contenidas en los programas de ordenamiento ecológico local del territorio, mediante las cuales se regulan los usos del suelo, se referirán únicamente a las áreas localizadas fuera de los límites de los centros de población. Cuando en dichas áreas se pretenda la ampliación de un centro de población o la realización de proyectos de desarrollo urbano, se estará a lo que establezca el programa de ordenamiento ecológico respectivo, el cual sólo podrá modificarse mediante las previsiones de este Libro;

IV. Las autoridades estatales y municipales, harán compatibles los programas de ordenamiento ecológico regional y locales y la ordenación y regulación de los asentamientos humanos, incorporando las previsiones correspondientes en dichos programas, así como en los programas de desarrollo urbano que resulten aplicables; así mismo, los programas de ordenamiento ecológico regional y locales, prevendrán los mecanismos de coordinación entre las distintas autoridades involucradas en la formulación y ejecución de los programas;

V. Cuando un programa de ordenamiento ecológico local incluya un área natural protegida, competencia de la Federación o del Estado, o parte de ellas, el programa será elaborado y aprobado en forma conjunta por la Secretaría Federal, la Agencia Ambiental y por los Ayuntamientos según corresponda;

VI. Los programas de ordenamiento ecológico local, regularán los usos del suelo, incluyendo a ejidos, comunidades y pequeñas propiedades, expresando las motivaciones que lo justifiquen; y

VII. Para la elaboración, actualización y modificación de los programas de ordenamiento ecológico local, se deberán cumplir los mecanismos que garanticen la participación de los particulares, los grupos y organizaciones sociales y empresariales y demás interesados, considerando procedimientos de difusión y consulta pública de los planes respectivos.

2. El Reglamento de este Libro desarrollará las normas para el cumplimiento de estas bases,  así como sobre el procedimiento para la emisión de los programas de ordenamiento ecológico regional. Estas últimas previsiones se aplicarán en lo conducente por los Ayuntamientos en tanto emitan el Reglamento municipal correspondiente.

**ARTÍCULO 51.**

1. Los programas de ordenamiento ecológico a que se refiere el presente capítulo serán considerados en forma obligatoria por las autoridades administrativas dentro de sus correspondientes ámbitos de competencia, cuando resuelvan acerca del aprovechamiento sustentable de los recursos naturales, del uso del suelo, de la localización de las actividades productivas y de los asentamientos humanos, conforme a lo establecido por este Código, su Reglamento y demás ordenamientos aplicables.

2. Una vez expedidos los programas de Ordenamiento Ecológico por parte del Estado, en coordinación con los Ayuntamientos respectivos, se publicarán en forma abreviada en el Periódico Oficial del Estado.

3. Para la modificación de los programas de ordenamiento ecológico, se requerirá el mismo procedimiento que se establece para su formulación y expedición.

**CAPÍTULO III**
**DE LA REGULACIÓN AMBIENTAL DE LOS ASENTAMIENTOS HUMANOS**

**ARTÍCULO 52.**

La regulación ambiental de los asentamientos humanos consiste en el conjunto de normas, disposiciones y medidas en los ámbitos del desarrollo urbano y la vivienda, para mantener, mejorar o restaurar el equilibrio de los asentamientos humanos con los elementos naturales y asegurar el mejoramiento de la calidad de vida de la población. Dichas acciones serán llevadas a cabo por el Ejecutivo Estatal, a través de la Agencia Ambiental, y los Ayuntamientos y, en su caso, con la participación de la Federación.

**ARTÍCULO 53.**

Los principios y objetivos que en materia de asentamientos humanos emanen de las políticas ambiental y de desarrollo sustentable del Estado serán considerados en:

I. El Sistema Estatal de Planeación e Información;

II. Las declaratorias de provisiones, reservas, usos y destinos que expida el Ejecutivo Estatal; y

III. Los diversos instrumentos que se expidan para ordenar y regular el desarrollo urbano y rural en el Estado.

**ARTÍCULO 54.**

1. En las áreas declaradas por el Ejecutivo Estatal o los Ayuntamientos como espacios dedicados a la conservación natural en los términos de la Ley para el Desarrollo Urbano del Estado de Tamaulipas, la urbanización será restringida y sólo se autorizarán aquellas construcciones y obras que aseguren servicios de beneficio social o de uso común.

2. Para la regulación ambiental de los asentamientos humanos y del uso y cambio de uso del suelo, las dependencias y entidades de la administración pública estatal y municipales deberán considerar los siguientes criterios:

I. La vinculación con la planeación urbana y su aplicación;

II. La corrección de aquellos desequilibrios que deterioren la calidad de vida de la población;

III. La previsión de las tendencias de crecimiento de los asentamientos humanos para mantener una correlación entre la disponibilidad y la conservación de los recursos ambientales y la población, procurando el equilibrio de los factores ambientales; y

IV. El fortalecimiento de las previsiones de carácter ambiental para proteger y elevar la calidad de vida, mediante:

a) El respeto a los espacios geográficos que sean considerados como áreas verdes de acuerdo con la Ley para el Desarrollo Urbano del Estado; y

b) La previsión de zonas intermedias de salvaguarda dentro del predio donde se pretendan realizar obras o actividades que por sus características o riesgos así lo requieran.

**ARTÍCULO 55.**

1. La construcción de la vivienda que autoriza el Ayuntamiento dentro de las zonas de expansión de los asentamientos humanos, deberá considerar las áreas verdes requeridas para la convivencia social, en los términos establecidos por la Ley para el Desarrollo Urbano del Estado.

2. El Estado y el Municipio, conforme a sus respectivas competencias, promoverán mediante concertación e inducción con los sectores social y privado:

I. La incorporación al proyecto de construcción de vivienda de criterios ambientales, tanto en su diseño como en la tecnología aplicada para mejorar la calidad de vida;

II. El empleo de dispositivos y sistemas de ahorro del agua potable, así como de captación, almacenamiento y utilización de las aguas pluviales;

III. La prevención de las descargas de aguas residuales domiciliarias a los sistemas de drenaje y alcantarillado o fosas sépticas;

IV. Las acciones de prevención y control del correcto almacenamiento, traslado y disposición de los residuos domiciliarios;

V. Los diseños que permitan el óptimo aprovechamiento de la luz y la ventilación naturales así como de la energía eléctrica; y

VI. La utilización de materiales en cuya fabricación y uso exista el menor impacto ambiental.

## CAPÍTULO IV

## LA EVALUACIÓN DEL IMPACTO AMBIENTAL Y LA AUTORIZACIÓN DE OBRAS Y ACTIVIDADES

**ARTÍCULO 56.**

1. La Agencia Ambiental, a través de la evaluación del impacto ambiental, autorizará, negará o condicionará la realización de obras o actividades que se pretendan desarrollar en el territorio estatal, que puedan causar desequilibrio ecológico o rebasar los límites y condiciones establecidos en las disposiciones aplicables para proteger el medio ambiente y preservar y restaurar los ecosistemas, a fin de evitar o reducir al mínimo sus efectos negativos ambientales.

2. Toda obra o actividad que se pretenda desarrollar en el territorio estatal, en términos de este Libro, deberá contar con la autorización respectiva en materia de impacto ambiental.

3. La evaluación del impacto ambiental se realizará mediante los estudios que al efecto presenten los interesados en desarrollar la obra o la actividad contenida en este Capítulo y se sujetará  a las modalidades que defina el Reglamento de este Libro.

4. Además de los estudios señalados en el párrafo anterior, en materia de evaluación de impacto ambiental se podrá requerir un estudio de riesgo.

**ARTÍCULO 57**

1. Cualquier persona que pretenda realizar obras o actividades, ya sea públicas o privadas, deberá contar previamente con autorización de impacto ambiental,  en los siguientes supuestos:

I. Obra pública que no corresponda a la competencia de la Federación;

II. Obras hidráulicas en aguas de jurisdicción estatal o municipal;

III. Zonas y parques industriales en los que no se prevean realizar actividades altamente riesgosas;

IV. Carreteras, caminos y puentes estatales, tanto urbanos como rurales;

V. Explotación, extracción, procesamiento y beneficio de minerales o substancias no reservadas a la Federación y aquellas cuyos productos se deriven de la descomposición de las rocas y cuya explotación se realice preponderantemente por medio de trabajos a cielo abierto, entre otras;

VI. Estaciones de servicio, carburación, almacenamiento, transferencia o cualquier otra obra o actividad cuya materia sean los productos derivados del petróleo o combustibles fósiles, siempre que se encuentren por debajo de los volúmenes y cantidades establecidas como competencia de la Federación;

VII. Instalaciones de tratamiento, recuperación y disposición final de residuos sólidos urbanos, así como de residuos de manejo especial;

VIII. Instalaciones de tratamiento de aguas residuales de procedencia municipal;

IX. Las instalaciones destinadas al reciclaje de residuos sólidos urbanos y de manejo especial, incluidos los que se dediquen a la compra y venta de partes usadas de vehículos automotores;

X. Zonas comerciales;
XI. Desarrollos Turísticos;

XII. Obras y actividades en áreas naturales protegidas de jurisdicción estatal o municipal;

XIII. Obras o actividades destinadas a la prestación de un servicio público;

XIV. Actividades consideradas como riesgosas en los términos previstos en este Libro, así como en el listado que al efecto se expida, cuando no sean consideradas como competencia de la Federación;

XV. Conjuntos habitacionales, fraccionamientos y nuevos centros de población;

XVI. Cambios de uso de suelo, de manera previa al otorgamiento de su autorización; y

XVII. Las demás que, aun cuando sean distintas a las anteriores, puedan causar impactos ambientales significativos de carácter adverso y que por razón de la obra, actividad o aprovechamiento de que se trate, no sean de regulación federal.

2. Para el caso de la fracción XV y XVI del párrafo 1 de este artículo, en lo que corresponda se deberá atender lo dispuesto por la Ley para el Desarrollo Urbano del Estado.

3. Además de la autorización en materia de impacto ambiental, se requerirá de autorización en materia de riesgo por parte de la Agencia Ambiental, cuando la obra o actividad pretendida involucre el uso, almacenamiento o manejo de sustancias consideradas como altamente riesgosas, en cantidades inferiores a las de reporte competencia de la Federación, conforme a las disposiciones de observancia general. El procedimiento de su evaluación se hará conforme a lo previsto para el impacto ambiental.

4. El estudio de riesgo consistirá en incorporar a la manifestación de impacto ambiental lo siguiente:

I. Escenarios y medidas preventivas resultantes del análisis de los riesgos ambientales relacionados con el proyecto;

II. Descripción de las zonas de protección en torno a las instalaciones y la verificación de su propiedad; y

III. Señalamiento de las medidas de seguridad en materia ambiental.

5. Para los efectos a que se refiere la fracción XVII del párrafo 1 del presente artículo, la Agencia Ambiental notificará a los interesados su determinación para que sometan al procedimiento de evaluación de impacto ambiental la obra o actividad que corresponda, explicando las razones que lo justifiquen, con el propósito de que aquéllos presenten los informes, dictámenes y consideraciones que juzguen convenientes, en un plazo no mayor a diez días. Una vez recibida la documentación, en un plazo no mayor a quince días, la Agencia Ambiental comunicará si procede o no una manifestación de impacto ambiental u otro estudio. Transcurrido el plazo indicado, se entenderá que no se requiere la presentación de manifestación o estudio alguno.

6. El Reglamento del presente Libro determinará las obras o actividades a que se refiere este artículo, que por su ubicación, dimensiones, características o alcances no produzcan impactos ambientales significativos, no causen o puedan causar desequilibrios ecológicos, ni rebasen los límites y condiciones

establecidos en las disposiciones jurídicas referidas a la preservación del equilibrio ecológico y la protección al medio ambiente, y que por lo tanto no deban sujetarse al procedimiento de evaluación de impacto ambiental previsto en este ordenamiento.

**ARTÍCULO 58.**

1. La formulación de la manifestación de impacto ambiental y del estudio de riesgo deberá efectuarse por persona física o moral, respetando los lineamientos que dicte el Reglamento del presente Libro.

2. La Agencia Ambiental, por sí o mediante el apoyo de las instituciones académicas o de investigación ambiental en el Estado, instrumentará el Registro de Prestadores de Servicios Técnicos en materia ambiental y regulará las certificaciones de los interesados.

3. Cuando el responsable de la obra o actividad que gestione la autorización del impacto ambiental o cualquier otro estudio, utilice los servicios técnicos de un prestador de servicios, este último será solidaria y subsidiariamente responsable de los mismos y de sus efectos adversos al medio ambiente.

**ARTÍCULO 59.**

1. En la realización de obras y actividades a que se refiere el artículo 57 de este Libro, se requerirá la presentación de un informe preventivo y no de una manifestación de impacto ambiental, cuando:

I. Existan Normas Oficiales Mexicanas o Normas Ambientales Estatales u otras disposiciones que regulen sus emisiones, descargas, aprovechamiento y, en general, todos los impactos ambientales relevantes que puedan producir las obras o actividades;

II. Las obras o actividades de que se trate, estén expresamente previstas por un Programa de Desarrollo Urbano o Programa de Ordenamiento Ecológico que haya sido evaluado por la Agencia Ambiental, debidamente aprobado y publicado en el Periódico Oficial del Estado; o

III. Se trate de instalaciones que pretendan ubicarse en desarrollos turísticos, parques industriales o zonas comerciales previamente autorizados.

2. Cuando las características de la obra o actividad pretendida así lo requieran, la Agencia Ambiental podrá acordar de manera fundada y motivada la presentación del estudio de impacto ambiental conforme a lo previsto en este Libro, aún cuando se actualice alguno de los supuestos señalados en el mismo, cuando la obra o actividad represente un efecto negativo sobre el medio ambiente y los recursos naturales.

3. En el caso de que un programa parcial de desarrollo urbano o de ordenamiento ecológico del territorio prevean el desarrollo de obras o actividades de las señaladas en el artículo 57, los Ayuntamientos podrán presentar dichos programas a la Agencia Ambiental, para su evaluación, a fin de que ésta emita su autorización en materia de impacto ambiental respecto del conjunto de obras o actividades que se prevean realizar bajo los términos previstos en este precepto.

4. Las obras o actividades que en términos del presente ordenamiento no requieran someterse a los procedimientos de evaluación de impacto ambiental, estarán sujetos al resto de a las disposiciones de este Código, de sus Reglamentos, las Normas Oficiales Mexicanas, las Normas Ambientales Estatales, en su caso, así como a la obtención de las autorizaciones, permisos, licencias o concesiones que requiera.

5. En los casos previstos en el párrafo 1 de este artículo, la Agencia Ambiental, una vez analizado el informe preventivo, determinará en un plazo de quince días naturales contados a partir de la recepción del mismo, si procede o no la presentación de una manifestación de impacto ambiental. Transcurrido el plazo sin que la Agencia Ambiental emita su determinación, se entenderá que no es necesaria la presentación de una manifestación de impacto ambiental y se continuará con la dictaminación respecto al informe preventivo.

**ARTÍCULO 60.**

1. El Estado, a través de la Agencia Ambiental, expedirá las guías y lineamientos para la elaboración y presentación de las manifestaciones de impacto ambiental y los estudios correspondientes, que contendrán los lineamientos mínimos a que deberán sujetarse los responsables de las acciones.

2. En todo caso, deberán contener por lo menos:

I.    Descripción de los posibles efectos en el o los ecosistemas por la obra o actividad, tanto en su etapa constructiva como operativa;

II.   Medidas Preventivas;

III.  Medidas de Mitigación;

IV.  Medidas de Compensación; y

V. La protesta de decir verdad, respecto a los datos manifestados, a las medidas propuestas y a que en su contenido se integran las mejores técnicas y metodologías existentes.

**ARTÍCULO 61.**

1. Quedan exentas de presentar la manifestación del impacto ambiental, las acciones de emergencia que sean necesarias para mitigar los daños causados en las zonas de desastre.

2. Sin perjuicio de lo anterior y una vez superados las condiciones de emergencia, el responsable de las acciones a que se refiere este artículo, deberá presentar a la Agencia Ambiental un informe detallado del impacto causado para  su evaluación.

**ARTÍCULO 62.**

1. En el análisis y evaluación del impacto ambiental que realice la Agencia Ambiental sobre obras o actividades que por su relevancia, dimensiones o complejidad así lo requieran, se solicitará, dentro de los cinco días hábiles inmediatos a la radicación del expediente, la opinión de las autoridades municipales competentes, para que manifiesten en un término de diez días hábiles su opinión fundada y motivada sobre la viabilidad de la obra o actividad. Una vez transcurrido dicho plazo sin que el municipio hubiese manifestado su opinión, se entenderá que no existe objeción o comentarios al proyecto presentado.

2. El requerimiento de la opinión de las autoridades municipales, se hará de manera fundada y motivada.

**ARTÍCULO 63.**

1. La Agencia Ambiental podrá requerir al promovente aclaraciones, rectificaciones, ampliaciones, documentos, estudios o información adicional al contenido de la manifestación de impacto ambiental, al estudio de riesgo o al informe preventivo que le sea presentado. El requerimiento suspenderá  el término, sin que en ningún caso tal suspensión pueda ser por más de  una ocasión ni exceda de 30 días hábiles contados a partir de que ésta sea acordada por la Agencia Ambiental. Transcurrido el plazo otorgado, sin que el promovente subsane el requerimiento, la Agencia Ambiental declarará la caducidad del procedimiento mediante resolución que deberá ser notificada al promovente.

2. En la evaluación del impacto ambiental, la Agencia Ambiental podrá solicitar opiniones técnicas de otras dependencias o entidades de la administración pública estatal o de las dependencias y entidades, federales o municipales, o de los sectores de investigación, social y académico,  para allegarse mayores elementos de valoración.

3. Una vez recibida la información adicional solicitada y realizada la evaluación de los mismos, con base a los estudios de su competencia, la Agencia Ambiental emitirá la resolución correspondiente, debidamente fundada y motivada, en la que podrá:

I. Autorizar la realización de la obra o actividad de que se trate, en los términos solicitados;

II. Autorizar de manera condicionada la obra o actividad de que se trate, a la modificación del proyecto o al establecimiento de medidas adicionales de prevención y mitigación, a fin de que se eviten, atenúen o compensen los impactos ambientales adversos susceptibles de ser producidos en la construcción, operación normal y en caso de accidente. Cuando se trate de autorizaciones condicionadas, la Agencia Ambiental señalará los requerimientos que deban observarse en la realización de la obra o actividad prevista; o

III. Negar la autorización solicitada, cuando:

a) Se contravenga lo establecido en este Código, sus reglamentos, las Normas Oficiales Mexicanas, las Normas Ambientales Estatales, los programas de ordenamiento ecológico, territorial y demás disposiciones aplicables;

b) La obra o actividad de que se trate pueda propiciar que una o más especies sean declaradas como amenazadas o en peligro de extinción o cuando se afecte a una de dichas especies;

c) La información proporcionada por los promoventes resulte falsa respecto de los impactos ambientales de la obra o actividad de que se trate, sin perjuicio de las sanciones a que se haga acreedor conforme a lo establecido por el presente Código;

d) Los estudios presentados no cumplan con las disposiciones establecidas en el Reglamento correspondiente; o

e) Existan riesgos fundados de que se pudieran afectar el equilibrio ecológico o pudieren causar daños al medio ambiente, a las personas, a los recursos naturales o se ponga en riesgo la salud pública, en caso de autorizarse la obra o actividad respectiva.

4. La Agencia Ambiental resolverá en un término de sesenta días hábiles a partir de la recepción formal del documento, salvo en los casos excepcionales en que por la complejidad y dimensiones del proyecto, se acuerde la ampliación del plazo para su evaluación, hasta por un plazo igual, debiendo notificar al promovente la justificación de su acuerdo.

5. En caso de transcurrir el término fijado conforme al párrafo anterior sin que la Agencia Ambiental resuelva, se entenderá la negativa ficta.

**ARTÍCULO 64.**

1. En la resolución del impacto ambiental procedente, se señalará el plazo máximo de que dispone el solicitante para iniciar las obras o actividades proyectadas. Fenecido el término concedido expirará la vigencia de la aprobación, debiendo, en su caso solicitarse una nueva.

2. El inicio de la obra o actividad pretendida estará sujeto a la autorización que emita la Agencia Ambiental en virtud del cumplimiento probado de las condiciones que en su caso contenga el resolutivo respectivo.

3. Cuando se realicen modificaciones al proyecto de obra o actividad durante el procedimiento de evaluación o en su etapa de desarrollo, el promovente deberá informarlo a la Agencia Ambiental, la que en un término no mayor a diez días determinará:

I. Si es necesaria la presentación de una nueva manifestación de impacto ambiental;

II.   Solicitar información adicional; o,

III. Si la autorización, en su caso, requiere ser modificada con objeto de imponer nuevas condiciones a la realización del proyecto.

4. Durante la evaluación, seguimiento y verificación del cumplimiento de las autorizaciones otorgadas, la Agencia Ambiental podrá ordenar alguna de las acciones mencionadas en el párrafo anterior, cuando se determine que las condiciones originales de operación o de desarrollo de la obra o actividad han sido modificadas o existan mejores técnicas de mitigación o compensación.

**ARTICULO 65.**

1. La presentación de los estudios o informes a los que se refieren estas disposiciones no supone su autorización, por lo que la Agencia Ambiental podrá, en cualquier momento, aplicar las disposiciones en materia de procedimiento de aplicación de sanciones y de inspección y vigilancia previstos en este Código. Una vez autorizada la obra o actividad, el responsable de la misma deberá implementar en tiempo y forma las medidas de prevención o mitigación, así como las demás  condicionantes, en su caso, que le haya ordenado la Agencia Ambiental.

2. Los promoventes de las obras o actividades y los titulares de los inmuebles en los que se pretende su desarrollo, deberán sujetarse a las condiciones y limitaciones que señale la autorización respectiva.

3. La titularidad de una resolución podrá ser transferida mediante la autorización expresa de la Agencia Ambiental, bajo los criterios que disponga el Reglamento de este Libro.

4. En el desarrollo en sus diversas etapas de la obra o actividad, la Agencia Ambiental, tendrá al promovente y, en su caso, al  prestador de servicios, como solidariamente responsables, quienes deberán presentar informes periódicos del cumplimiento de las condiciones y obligaciones derivadas de la autorización.

**ARTÍCULO 66.**

1. La Agencia Ambiental, sin demérito de las obligaciones en materia de responsabilidad civil, podrá exigir el otorgamiento de seguros, fianzas o garantías respecto del cumplimiento de las condicionantes establecidas en la autorización y, en su caso, al riesgo ambiental que represente la obra o actividad autorizada, cuando se trate de obras o actividades cuya realización pueda producir afectaciones a la salud de las personas, a los ecosistemas o los recursos naturales.

2. La Agencia Ambiental publicará la solicitud de autorización en materia de impacto ambiental y podrá ordenar al promovente que, a su costa, se publique en los medios de comunicación un extracto del proyecto y de la manifestación de impacto ambiental o de los estudios de riesgo.

3. Cuando se trate de obras o actividades que puedan generar desequilibrios ecológicos graves o daños a la salud de las personas o a los ecosistemas, la Agencia Ambiental podrá iniciar el proceso de consulta pública respectivo, suspendiendo el procedimiento de evaluación.

**ARTÍCULO 67.**

1. La Agencia Ambiental podrá objetar el desarrollo de la obra o actividad en cualquier fase, si no se cumple  con la resolución del impacto ambiental y adoptará las medidas pertinentes en términos de este Código para la suspensión y eventual revocación.

2. El seguimiento, evaluación, vigilancia y verificación del cumplimiento de las autorizaciones en materia de impacto ambiental se realizarán de conformidad con los procedimientos de inspección y vigilancia previstos en este Código.

## CAPÍTULO V
## DE LA AUTORREGULACIÓN Y LAS AUDITORIAS AMBIENTALES

**ARTÍCULO 68.**

1. Los productores, empresas y organismos de los sectores social o privado, así como el sector público, podrán desarrollar procesos voluntarios de autorregulación ambiental a través de los cuales obtengan un historial de excelencia ambiental en el Estado, respetando la legislación y normatividad vigentes en la materia, comprometiéndose a superar o cumplir mayores niveles, metas o beneficios en materia de protección ambiental en Tamaulipas.

2. En consecuencia, la Agencia Ambiental fomentará programas de autorregulación y auditoría ambiental y promoverá la aplicación de incentivos fiscales, a quienes participen en dichos programas. Al efecto inducirá y concertará:

I. El desarrollo de procesos productivos adecuados y compatibles con el medio ambiente, así como sistemas de protección y restauración en la materia, convenidos con organizaciones de los sectores social y privado y de carácter académico y cívico;

II. El cumplimiento de normas voluntarias o especificaciones técnicas en materia ambiental, que sean más estrictas que las normas ambientales federales o estatales, o que se refieran a aspectos no previstos por éstas, las cuales serán establecidas de común acuerdo con particulares o con asociaciones u organizaciones que los representen; y

III. Las demás acciones que induzcan a las empresas a alcanzar objetivos de la política ambiental superiores a los previstos en la normatividad ambiental establecida.

**ARTÍCULO 69.**

1. Los responsables del funcionamiento de una empresa podrán en forma voluntaria y concertada con la Agencia Ambiental, a través de la auditoría ambiental, realizar el examen metodológico de sus operaciones, respecto de la contaminación y el riesgo que generan, el grado de cumplimiento de la normatividad ambiental y de los parámetros internacionales, las buenas prácticas de operación e ingeniería aplicables, con objeto de definir las medidas preventivas y correctivas necesarias para proteger el medio ambiente e impulsar el desarrollo sustentable en el Estado.

2. El desarrollo de la auditoría ambiental es de carácter voluntario y no limita las facultades que este Código confiere a las autoridades en materia de inspección y vigilancia.

**ARTÍCULO 70.**

1. La Agencia Ambiental desarrollará programas dirigidos a obtener un reporte propio de las empresas y a fomentar la realización de auditorias ambientales en la esfera de su competencia, por parte de las empresas que se ubiquen en el territorio del Estado y podrá supervisar su ejecución.

2. Con relación a las atribuciones del párrafo anterior, la Agencia Ambiental:

I. Elaborará los términos de referencia que establezcan la metodología para la realización de las auditorías ambientales y la forma y términos como se efectuará el propio reporte;

II. Desarrollará programas de capacitación en materia de peritajes y auditorías ambientales;

III. Instrumentará un sistema de reconocimientos y estímulos que permita identificar a las industrias ubicadas en el territorio del Estado, que cumplan oportunamente los compromisos adquiridos en las auditorías ambientales;

IV. Promoverá la creación de centros regionales de apoyo a la mediana, pequeña y micro industria, con el fin de facilitar la realización de auditorías en dichos ramos;

V. Convendrá o concertará con personas físicas o morales, públicas o privadas, la realización de auditorías ambientales;

VI. Establecerá periódicamente programas de incentivos al cumplimiento de las obligaciones ambientales bajo las premisas establecidas en el presente Libro para el cumplimiento voluntario de obligaciones ambientales; y

VII. Podrá eximir de la obligación de realizar verificaciones en determinados períodos, a las empresas que realicen auditorías ambientales voluntarias, en los casos en que así lo considere conveniente. En este supuesto, esa circunstancia deberá constar en resolución por escrito, debidamente fundada y motivada.

**ARTÍCULO 71.**

1. La Agencia Ambiental pondrá a disposición de quienes resulten o puedan resultar directamente afectados, los programas preventivos y correctivos derivados de las auditorías ambientales, así como el diagnóstico básico del cual derivan.

2. En todo caso, deberán observarse las disposiciones legales relativas a la confidencialidad de la información industrial y comercial.

**TÍTULO TERCERO**
**DEL APROVECHAMIENTO SUSTENTABLE DE**
**LOS RECURSOS NATURALES**
**CAPÍTULO I**
**DISPOSICIONES GENERALES**

**ARTÍCULO 72.**

1. Para el aprovechamiento sustentable de los recursos naturales, la Agencia Ambiental podrá establecer programas para:

I. La conservación, protección, mejoramiento y restauración del suelo agrícola, forestal y el destinado a usos pecuarios;

II. La creación y desarrollo de viveros, criaderos, laboratorios, estaciones experimentales y reservas de flora y fauna silvestres, así como de jardines botánicos y parques zoológicos;

III. La captación y aprovechamiento de aguas pluviales;

IV. La reutilización e intercambio de aguas residuales tratadas; y

V. El uso racional del agua por las industrias, establecimientos comerciales y de servicios y de uso doméstico en general.

2. Podrán establecerse, además, programas en materia de saneamiento de aguas en los términos que lo establecen las leyes aplicables, en coordinación, en su caso, con los Ayuntamientos, ya sea por estos mismos o a través de los organismos operadores del servicio de agua potable.

3. La Agencia Ambiental impulsará y participará en la celebración de convenios con particulares, ejidatarios, instituciones académicas y de investigación, clubes y demás asociaciones que no persigan fines de lucro, con objeto de llevar a cabo programas para el estudio, conservación, restauración y desarrollo de especies de fauna y flora silvestres, en los ranchos y ejidos cinegéticos y en los centros de rehabilitación de fauna que al efecto se establezcan.

**CAPÍTULO II**
**DEL AGUA**

**ARTÍCULO 73.**

1. El Estado, por conducto de la Agencia Ambiental y con la participación de las dependencias o entidades estatales inherentes al recurso agua, y los Ayuntamientos, en la esfera de sus respectivas competencias, regulará el aprovechamiento sustentable y prevendrá y controlará la contaminación de las aguas de jurisdicción estatal y las nacionales sobre las que tenga su asignación, considerando los siguientes principios:

I. El agua es un bien de dominio público, vital, vulnerable y finito, con valor social, económico y ambiental, cuya preservación en cantidad y calidad corresponde al poder público y a la sociedad, como prioridad y asunto de seguridad para la Nación y el Estado;

II. El agua proporciona servicios ambientales que deben reconocerse, cuantificarse y compensarse, en términos de este Código;

III. El aprovechamiento del agua debe realizarse de manera eficiente, sin afectar el equilibrio ambiental de los ecosistemas, al tiempo de promoverse su reuso;

IV. El uso doméstico y el uso público urbano tendrán preferencia en relación con cualquier otro uso; y

V. El poder público aplicará sistemas de tratamiento de aguas residuales para su reuso y los promoverá en el ámbito de la sociedad.

2. La prevención y control de la contaminación del agua le corresponderá:

I. Al Ejecutivo, por medio de la Agencia Ambiental, para lo cual deberá;

a) Llevar el control, con el apoyo de los Ayuntamientos, de las descargas de aguas residuales a los sistemas de drenaje y alcantarillado que operen en la Entidad;

b) Requerir a quienes deseen descargar en dichos sistemas y no cumplan con las Normas Oficiales Mexicanas, o las Normas Ambientales Estatales, en su caso, la instalación de sistemas de tratamiento de sus aguas residuales y la aceptación del Ayuntamiento respectivo;

c) Determinar el monto de los derechos que deberán pagar quienes descarguen sus aguas en los sistemas de drenaje y alcantarillado para que la dependencia o entidad estatal competente o los Ayuntamientos puedan llevar a cabo el tratamiento necesario y, en su caso, proceder a la imposición de las sanciones a que haya lugar; y

d) Promover y regular la aplicación de tecnologías apropiadas para el reciclado y reuso de aguas residuales generadas en viviendas y unidades habitacionales principalmente donde no existan sistemas de alcantarillado; y

II. A los Ayuntamientos, para lo cual deberán:

a) Llevar y actualizar el registro de las descargas en las redes y alcantarillado que administren, y proporcionarlo a la Agencia Ambiental con la periodicidad que ésta señale, para ser integrado al Registro Estatal de Descargas de Aguas Residuales;

b) Observar el cumplimiento de las condiciones generales de descarga que fijen la Agencia y las dependencias federales respectivas, para las aguas residuales vertidas por los sistemas de drenaje y alcantarillado en los cuerpos receptores propiedad de la Nación; y

c) Promover el reuso en la industria y agricultura de aguas residuales tratadas, derivadas de aguas nacionales asignadas o concesionadas para la prestación de servicios públicos, así como las que provengan de los sistemas de drenaje y alcantarillado siempre que cumplan con las normas técnicas de calidad.

## CAPÍTULO III
## DE LOS MINERALES NO RESERVADOS A LA FEDERACIÓN

**ARTÍCULO 74.**

La Agencia Ambiental ejercerá sus atribuciones con relación al impacto ambiental, sobre el aprovechamiento de los minerales o substancias del subsuelo no reservadas a la Federación, que constituyan depósito de naturaleza semejante a los componentes de los terrenos sobre la base de la sustentación de los servicios ambientales.

**ARTÍCULO 75.**

En la realización de las actividades de aprovechamiento de los recursos del subsuelo no reservados a la Federación, se observarán las disposiciones del presente Libro, sus reglamentos y las Normas Oficiales Mexicanas y las Normas Ambientales Estatales, sobre el aprovechamiento racional de los recursos no renovables y otras específicas.

**ARTÍCULO 76.**

Corresponde a la Agencia Ambiental:

I. Promover la racional explotación de los recursos minerales o sustancias no reservadas a la Federación, para efectos de la preservación del equilibrio ecológico; y

II. Otorgar concesiones a particulares para la explotación y aprovechamiento de los recursos minerales o sustancias no reservadas a la Federación y de las que se encuentren en dos o más Ayuntamientos, observando lo dispuesto en el  presente Libro.

**ARTICULO 77.**

1. La explotación de bancos de materiales para la construcción, de materiales no concesionables por la Federación, no metálicos, así como las actividades análogas que se realicen preponderantemente por medio de trabajos a cielo abierto dentro del territorio del Estado, requerirán de la autorización previa de la Agencia Ambiental. Las personas físicas o morales que pretendan llevar a cabo deberán:

I.    Contar con autorización de la Agencia para su operación, así como para la ampliación o modificación de sus actividades;

II.   Presentar la manifestación de impacto ambiental;

III.  Prevenir la emisión o el desprendimiento de polvos, humos, gases o ruidos que pudieran dañar el medio ambiente;

IV.  Controlar y disponer adecuadamente de sus residuos y evitar su propagación fuera de los predios en los que se lleven a cabo;

V.   Aplicar las disposiciones que en materia de control de contingencias ambientales establezca la Agencia Ambiental, de conformidad a la autorización que emita; y

VI.  Presentar y ejecutar un proyecto para la rehabilitación del área en donde se desarrollen.

2. Así mismo, el aprovechamiento estará sujeto a las siguientes previsiones:

I. Se cumplirá con la Norma Ambiental Estatal correspondiente;

II. No deberá alterar o dañar los elementos naturales del área de influencia, así como tampoco la infraestructura existente en su entorno;

III. Se llevará a cabo a cielo abierto en ladera, prohibiéndose efectuarla en forma de túneles; la inclinación de taludes deberá corresponder al ángulo de reposo natural del material que se esté explotando y a sus condiciones de saturación de humedad; y

IV. Se dejará libre de explotación una franja no menor de veinte metros de ancho en todo el perímetro de las colindancias del predio, o mayor según fueren las características del material; cuando en el predio o en alguno de sus linderos, se encuentre una zona de restricción federal o estatal, dicha franja se contará a partir del límite del derecho de vía o zona.

## ARTÍCULO 78.

El titular de la autorización para la explotación tendrá, entre otras, las obligaciones siguientes:

I. Ejecutar los trabajos de explotación de materiales geológicos conforme a la resolución respectiva;

II. Mantener en buenas condiciones de seguridad, estabilidad e higiene el predio donde se efectúen los trabajos;

III.  Dar aviso a la Agencia Ambiental de la conclusión de sus actividades, dentro de los tres días hábiles siguientes a la terminación de los trabajos;

IV. Pagar los derechos correspondientes, conforme a las disposiciones aplicables;

V. Rendir a la Agencia Ambiental con la periodicidad que para cada caso ésta señale, los informes sobre el desarrollo de los trabajos de explotación, volúmenes de material extraído y de material desechado; y

VI. Realizar las obras de mejoramiento ambiental que se indiquen en la resolución respectiva.

## ARTÍCULO 79.

1. La resolución para la explotación de un banco de materiales, así como para toda otra actividad que se realice preponderantemente por medio de trabajos a cielo abierto, tendrá la vigencia que en la misma se determine.

2. La solicitud de prórroga de la autorización deberá presentarse con una anticipación equivalente al menos al 10 por ciento del período para que fenezca la vigencia a que se refiere el párrafo anterior  y contendrá lo siguiente:

I. Etapa y frente de explotación por iniciar, así como el volumen del material por extraerse en el período que corresponda a la prórroga, conforme a los planos de nivelación y seccionamiento correspondientes; y

II. Firma del solicitante y del respectivo perito.

3. A la solicitud deberá acompañarse copia de la autorización original y, en su caso, de la prórroga anterior; los planos de nivelación y seccionamiento y el estado del avance del cumplimiento de las condicionantes impuestas en la resolución.

4. Dentro de los diez días hábiles siguientes a la presentación de la solicitud, la Agencia Ambiental procederá a efectuar la verificación correspondiente y una vez realizada ésta, expedirá la orden para el pago de derechos dentro de los tres días hábiles siguientes. Una vez entregado el correspondiente comprobante por el solicitante, la Agencia Ambiental emitirá la autorización dentro de los cinco días hábiles siguientes.

5. La autorización a que se refiere el presente Capítulo podrá tramitarse conjuntamente con la solicitud de autorización en materia de impacto ambiental.

**ARTÍCULO 80.**

Procederá la revocación de la autorización para la explotación en los siguientes casos:

I. Se detecten, a través del procedimiento de inspección previsto en este Código, la falta de ejecución, en su caso, de las obras que garanticen la estabilidad de la explotación, la protección y conservación del medio ambiente o la seguridad de los operarios, contempladas en el proyecto y memoria explicativa o en la autorización respectiva, o exigidos por la autoridad en el transcurso del laboreo del banco;

II. Cuando en el desarrollo de las actividades de explotación, existan riesgos que no puedan ser remediados en forma alguna;

III. Se detecte incumplimiento a las disposiciones de este Libro, sus reglamentos, a los términos y condiciones de la autorización o concesión respectiva y a la normatividad ambiental vigente; o

IV. Se hubiere falseado la información en la correspondiente solicitud y sus anexos, sin perjuicio de la adopción por parte de la autoridad de las medidas de seguridad y aplicación de sanciones que procedan.

**ARTÍCULO 81.**

Corresponden, al Estado y a los Ayuntamientos, en sus respectivas competencias, vigilar que los responsables de la exploración, explotación y aprovechamiento de los recursos minerales o substancias a que se refiere este Capítulo, cumplan con las disposiciones que sobre la materia señala el presente Libro, así como en torno del aprovechamiento de los recursos minerales o substancias reservadas a la Federación, cuando el mismo cause desequilibrio ambiental.

**TÍTULO CUARTO
DE LA PROTECCIÓN Y REGULACIÓN AMBIENTAL
CAPÍTULO I
DE LA PREVENCIÓN Y CONTROL DE LA CONTAMINACIÓN DE LA ATMÓSFERA**

**ARTÍCULO 82.**

Para la aplicación de las disposiciones contenidas en el presente Capítulo se considerarán como:

I. Fuentes emisoras de competencia estatal:

a) Aquellas industrias y subsectores específicos, que por exclusión del artículo 111 Bis de la Ley General no sean de competencia federal;

b) Aquellas de carácter fijo que funcionen como establecimientos industriales o de carácter móvil que no sean de competencia federal, como el parque vehicular de servicio público y el particular que circule dentro del territorio del Estado; y

c) Las señaladas en otras disposiciones legales aplicables y cuya regulación no corresponda a la competencia federal.

II. Fuentes emisoras de competencia municipal:

a) Los establecimientos mercantiles o de servicios dentro de la circunscripción territorial del municipio; y

b) En general todas aquellas que no sean de competencia estatal o federal.

**ARTÍCULO 83**.

Para la protección de la atmósfera se considerará que la calidad del aire sea satisfactoria en todos los asentamientos humanos y las regiones de la entidad y que las emisiones de contaminantes a la atmósfera, de fuentes artificiales o naturales, fijas o móviles, sean reducidas y controladas.

## ARTÍCULO 84.

No deberán emitirse contaminantes a la atmósfera que ocasionen o puedan ocasionar desequilibrios ecológicos o daños al medio ambiente, salvo que sean emisiones a la atmósfera conformes con las previsiones de este Libro y sus disposiciones reglamentarias, así como las Normas Oficiales Mexicanas y, en su caso, las Normas Ambientales Estatales.

## ARTÍCULO 85.

En materia de prevención y control de la contaminación atmosférica, el Estado y los Ayuntamientos, de conformidad con sus atribuciones previstas en la Ley General, y anteponiendo la salud de las personas, tendrán a su cargo:

I. Controlar la contaminación del aire en los bienes y zonas de sus respectivas competencias, así como en fuentes fijas que funcionen como establecimientos industriales, comerciales y de servicios, siempre que no estén comprendidos en el artículo 111 bis de la Ley General;

II. Aplicar los criterios generales para la protección a la atmósfera en los programas de desarrollo urbano de su competencia, definiendo las zonas en que sea permitida la instalación de industrias contaminantes;

III. Requerir a los responsables de la operación de fuentes fijas de competencia estatal, el cumplimiento de los límites máximos permisibles de emisión de contaminantes, de conformidad con lo dispuesto en el Reglamento del presente Libro, las Normas Oficiales Mexicanas, las Normas Ambientales Estatales en su caso;

IV. Integrar y mantener actualizado el inventario de fuentes de contaminación;

V. Establecer y operar sistemas de verificación de emisiones de automotores en circulación;

VI. Establecer y operar, con el apoyo técnico, en su caso, de la Agencia Ambiental, sistemas de monitoreo de la calidad del aire; los gobiernos municipales remitirán a la Agencia Ambiental los reportes de monitoreo atmosférico, a fin de que aquélla los integre al Sistema Estatal de Información Ambiental;

VII. Establecer requisitos y procedimientos para regular las emisiones del transporte público, excepto el federal, y las medidas de tránsito y , en su caso, la suspensión de circulación, en casos graves de contaminación;

VIII. Aplicar las medidas preventivas necesarias para evitar contingencias ambientales por contaminación atmosférica;

IX. Elaborar los informes sobre el estado del medio ambiente en la entidad o municipio correspondiente, estos últimos conforme a los acuerdos de coordinación que celebren;

X. Imponer sanciones y medidas por infracciones a este Libro y demás disposiciones aplicables;

XI. Formular y aplicar programas de gestión de calidad del aire, de conformidad con las Normas Oficiales Mexicanas y las Normas Ambientales Estatales en la materia; y

XII. Ejercer las demás atribuciones que les confieren las disposiciones legales y reglamentarias aplicables.

## ARTÍCULO 86.

1. Considerando el dictamen técnico que formule, la Agencia Ambiental establecerá los sistemas de monitoreo de la calidad del aire en los términos de los criterios contenidos en este Código y  la Ley General.

2. Los Ayuntamientos podrán operar estos sistemas y cumplirán los requisitos y Normas Oficiales Mexicanas correspondientes así como, en su caso, las Normas Ambientales Estatales.

3. Los resultados del monitoreo se incorporarán al Sistema Estatal de Información Ambiental a cargo de la Agencia Ambiental.

## ARTÍCULO 87.

Las actividades y proyectos que constituyan fuentes fijas de contaminación atmosférica de competencia estatal, quedarán afectos a las obligaciones siguientes:

I. Integrar un inventario de sus emisiones y proporcionar toda la información y documentos que le solicite la autoridad en ejercicio de sus facultades;

II. Instalar equipos o sistemas para el control de las emisiones contaminantes, conforme a lo establecido en la normatividad ambiental federal y estatal, y conforme a las medidas técnicas fijadas por la Agencia Ambiental en los términos y plazos establecidos en el presente Libro y sus disposiciones reglamentarias;

III. Medir sus emisiones contaminantes a la atmósfera conforme a los parámetros y periodicidad señalados en el Reglamento respectivo y en la normatividad ambiental vigente, así como registrar los resultados en el formato que determine la Agencia Ambiental;

IV. Llevar a cabo el monitoreo perimetral de sus emisiones contaminantes a la atmósfera, cuando la fuente de que se trate se localice en zonas urbanas o suburbanas, cuando colinde con áreas naturales protegidas   o cuando por sus características de operación o por sus materias primas, productos o subproductos, puedan causar deterioro a los ecosistemas;

V. Dar aviso anticipado a la Agencia Ambiental del inicio de operación de sus procesos en el caso de paros programados y de inmediato en el caso de que éstos sean circunstanciales, si los niveles de contaminantes son superiores a los valores normales por un periodo de tiempo, que se establecerá en el Reglamento de este Libro;

VI. Dar aviso inmediato a la autoridad competente en caso de descompostura o falla de los equipos de control, para que ésta determine lo conducente; y

VII. Llevar la bitácora de operación y mantenimiento de sus equipos de proceso y de control, así como dar cumplimiento a las demás obligaciones señaladas a los responsables en el presente Libro y sus disposiciones reglamentarias.

2. Adicionalmente, las actividades y proyectos a que se refiere el párrafo anterior se sujetarán a los criterios siguientes:

I. En las zonas próximas a áreas habitacionales en las que estén permitidas actividades industriales, según los respectivos programas de desarrollo urbano, sólo podrán establecerse industrias medianas o ligeras que por su tecnología y tipo de combustible, garanticen no rebasar los límites de emisión establecidos por la normatividad ambiental federal y estatal; y

II. Las empresas públicas y privadas que pretendan realizar el cambio de sus sistemas de combustión para adoptar procedimientos de menor impacto al medio ambiente, deberán comunicarlo previamente a la Agencia Ambiental, a efecto de que ésta cuente con la información que le permita emitir el dictamen correspondiente.

3. En todo caso, los responsables de las fuentes fijas emisoras de contaminantes de competencia estatal requerirán permiso de operación, por parte de la Agencia Ambiental o el Ayuntamiento que corresponda, conforme al procedimiento respectivo y previa la satisfacción de los requisitos establecidos en el Reglamento de este Libro, sin perjuicio de las autorizaciones que deban expedir otras autoridades competentes.

**ARTÍCULO 88.**

Una vez otorgado el permiso de operación, el responsable de las emisiones deberá actualizarlo ante la autoridad competente, dentro de la fecha que señale la misma y conforme a los procedimientos que determinen los reglamentos aplicables.

**ARTÍCULO 89.**

1. Las emisiones contaminantes a la atmósfera generadas por fuentes fijas de competencia estatal, deberán canalizarse a través de ductos o chimeneas de descarga; cuando esto no sea posible por razones de índole técnica, el responsable de la fuente emisora deberá presentar un estudio justificativo ante la Agencia Ambiental o ante la autoridad municipal que corresponda, a fin de que se resuelva lo conducente.

2. Queda prohibida la emisión de contaminantes a nivel de piso que no estén debidamente canalizados, así como de emisiones fugitivas en equipos de proceso y control.

**ARTÍCULO 90.**

1. La Agencia Ambiental podrá expedir conforme a los procedimientos y previa la satisfacción de los requisitos establecidos en el Reglamento del presente Libro, permisos de operación temporales para aquellas fuentes emisoras estacionarias que permanezcan en operación un término no mayor de sesenta días naturales en el mismo sitio.

2. Los responsables de dichas fuentes deberán apegarse a las disposiciones previstas en este Código, así como a las relativas a impacto ambiental para la elaboración del manifiesto cuando por su actividad se requiera.

3. Los responsables de fuentes fijas de competencia estatal o municipal, están obligados a presentar sus evaluaciones de emisiones con la periodicidad que se señale en el Reglamento de este Libro y en la normatividad ambiental vigente.

**ARTÍCULO 91.**

1. Por excepción se permitirá la combustión a cielo abierto en zonas urbanas cuando se efectúe con permiso del Ayuntamiento, para adiestrar y capacitar al personal encargado del combate de incendios y en las actividades previstas por la Ley de Desarrollo Forestal Sustentable para el Estado.

2. Para obtener el permiso a que se refiere el párrafo anterior, el interesado deberá presentar al Ayuntamiento la solicitud por escrito, cuando menos con diez días hábiles de anterioridad a la fecha en que se tenga programada la acción, con la siguiente información y documentación:

I. Croquis de localización del predio, indicando el lugar preciso en el que se efectuarán las combustiones, así como las construcciones y colindancias más próximas, además de las condiciones que imperen en el lugar;

II. Programa calendarizado en el que se precise la fecha y horarios en los que tendrá lugar la combustión; y

III. Tipos y cantidades del combustible que se incinerará.

3. El Ayuntamiento podrá suspender de manera temporal o definitiva el permiso a que se refiere este artículo, cuando se presente alguna contingencia ambiental en la zona.

**ARTÍCULO 92.**

1. La Agencia Ambiental o los Ayuntamientos, en el ámbito de sus respectivas competencias establecerán los mecanismos para evitar o prohibir:

I. La descarga de contaminantes a la atmósfera cualquiera que sea la fuente de su emisión, que provoquen o puedan ocasionar deterioro ambiental, daños o molestias a la salud de las personas y, en general, a los ecosistemas;

II. La circulación de vehículos automotores cuyos niveles de emisión de contaminantes a la atmósfera, rebasen los límites máximos permisibles por la normatividad ambiental;

III. La quema de cualquier tipo de desecho y residuo sólido o líquido; y

IV. Las prácticas de roza, tumba y quema con fines de desmonte o deshierbe de terrenos, excepto aquellas que se encuentren sujetas a la observancia y cumplimiento de la normatividad aplicable.

2. Quienes realicen actividades agrícolas, ganaderas, forestales o similares en áreas ubicadas fuera de los centros de población, por sí o a través de las asociaciones o grupos en que se encuentren constituidos, elaborarán un plan de prevención de contingencias ambientales, mismo que deberán presentar a la Agencia Ambiental para su evaluación, previamente a la ejecución de cualquier quema a cielo abierto. Lo anterior sin demérito de las atribuciones del Ayuntamiento en la materia.

**ARTÍCULO 93.**

La certificación o constatación de los niveles de emisión de contaminantes a la atmósfera que respecto de fuentes emisoras en lo particular lleve a cabo la Agencia Ambiental, se efectuará con arreglo a las Normas Oficiales Mexicanas formuladas al respecto.

**ARTÍCULO 94.**

1. Los vehículos automotores que circulen en la circunscripción territorial del Estado deberán ser objeto de verificación periódica de manera semestral, con el propósito de controlar las emisiones contaminantes mediante los sistemas estatales que establezca la Agencia Ambiental, o en los lugares autorizados para ese efecto.

2. Los vehículos automotores cuyos niveles de emisión de contaminantes a la atmósfera rebasen los límites máximos permisibles establecidos en las Normas Oficiales Mexicanas, no podrán circular en el territorio del Estado.

3. La Agencia Ambiental regulará, desarrollará y controlará el Sistema Estatal de Verificación Vehicular, de conformidad a las previsiones del reglamento respectivo.

**ARTÍCULO 95.**

Los propietarios de vehículos destinados al transporte público en el Estado adoptarán las medidas necesarias, para controlar y reducir las emisiones vehiculares de contaminantes a la atmósfera, de conformidad con la normatividad aplicable.

**CAPÍTULO II**
**DE LA CONTAMINACIÓN POR RUIDO, VIBRACIONES, OLORES,**
**ENERGÍA TÉRMICA Y LUMÍNICA Y VISUAL**

**ARTÍCULO 96.**

1. Quedan prohibidas las emisiones de ruido, vibraciones, energía térmica y lumínica y la generación de contaminación visual, en cuanto rebasen los límites máximos establecidos en las Normas Oficiales Mexicanas o en su caso las Normas Ambientales Estatales.

2. La Agencia Ambiental y los Ayuntamientos, dentro del ámbito de sus respectivas competencias, llevarán a cabo la inspección, vigilancia y aplicación de medidas para exigir el cumplimiento de las disposiciones en la materia.

3. En la realización de obras o actividades susceptibles de producir los efectos contaminantes previstos en el párrafo 1 de este artículo, se efectuarán las acciones preventivas y correctivas necesarias para evitar y mitigar los efectos nocivos de tales contaminantes en los ecosistemas y en el medio ambiente.
**ARTÍCULO 97.**

En materia de prevención y control de la contaminación visual, cuando se genere en zonas o por fuentes de competencia federal y afecte áreas de competencia estatal o municipal, las autoridades estatales o municipales promoverán su prevención y control.

**ARTÍCULO 98.**

En términos de este Código, los Ayuntamientos regularán y controlarán la contaminación visual provocada por estructuras o la colocación de espectaculares de carácter publicitario hacia las vías públicas, a través de las disposiciones reglamentarias y bandos que expidan en la materia.

**ARTÍCULO 99.**

1. Para prevenir la contaminación visual, los Ayuntamientos sólo otorgarán licencias para la instalación de estructuras o la colocación de espectaculares de carácter publicitario, considerando distancias, alturas, sitios, tamaños pretendidos y demás características generales, de los elementos visibles desde la vía pública, cuando:

I. Estén en armonía con las características de la estética e imagen urbana, conforme a las Normas Ambientales Estatales que correspondan;

II. Se ubiquen en zonas o áreas permitidas conforme al programa de desarrollo urbano correspondiente; y

III. Se cumpla con la normatividad aplicable en materia urbanística.

2. Queda prohibida la instalación de estructuras, la colocación de espectaculares de carácter publicitario o elementos visibles, en los siguientes casos:

I. En áreas naturales protegidas o en zonas clasificadas como habitacionales;

II. En sitios y monumentos considerados de patrimonio histórico, arquitectónico o cultural;

III. Cuando afecten o impacten nocivamente el paisaje natural o urbano;

IV. Cuando generen o proyecten imágenes o símbolos distractores;

V. Cuando ocasionen riesgo o peligro para la población, o cuando obstaculicen en forma alguna la visibilidad de los señalamientos que permiten a las personas transitar y orientarse dentro de los centros de población;

VI. Cuando obstruyan la visibilidad en túneles, puentes, pasos a desnivel, vialidades o señalamientos de tránsito;

VII. Cuando se pretendan colocar en espacios, monumentos o edificios públicos, en elementos del equipo urbano carretero o ferroviario, o en accidentes geográficos; o

VIII. Contravengan este Código u otros ordenamientos aplicables a la materia.

3. Los Ayuntamientos deberán incorporar en sus bandos de policía y buen gobierno y reglamentos, disposiciones que regulen obras, actividades y elementos publicitarios, a fin de evitar el deterioro del paisaje rural y urbano,  y evitar la contaminación visual,  procurando crear una imagen armónica de los centros de población.

## CAPÍTULO III
## DE LA PREVENCIÓN Y CONTROL DE LA CONTAMINACIÓN DEL AGUA

**ARTÍCULO 100.**

1. Para la prevención y control de la contaminación de las aguas de jurisdicción estatal, y las que tuviera asignadas el Estado conforme a la legislación nacional aplicable se deberán aplicar las disposiciones de este Código, observando lo dispuesto en la Ley de Aguas del Estado, las Normas Oficiales Mexicanas y las Normas Ambientales Estatales, y demás ordenamientos aplicables. En esta materia se observarán los siguientes criterios:

I. La prevención y control de la contaminación del agua es fundamental para evitar que se reduzca su disponibilidad en calidad y cantidad, y para proteger los ecosistemas del Estado;

II. El aprovechamiento del agua en actividades productivas susceptibles de generar contaminación, conlleva la responsabilidad del usuario para realizar el tratamiento de las descargas, para reintegrarla en condiciones adecuadas con el fin de reutilizarla  en otras actividades y mantener el equilibrio de los ecosistemas;

III. Los ríos, cuencas, vasos y demás depósitos o corrientes de agua, incluyendo las del subsuelo, no deberán recibir aguas residuales sin su previo tratamiento; y

IV. Las aguas residuales de origen urbano deben recibir tratamiento previo a su descarga en ríos, cuencas, vasos, aguas marinas y demás depósitos o corrientes de agua, incluyendo las aguas del subsuelo.

2. Corresponde al Estado, prevenir y controlar la contaminación de las aguas que se encuentren dentro de su territorio, así como las que les fueren asignadas por la Federación, en coordinación con la Comisión Nacional del Agua.

3. El Estado y los Ayuntamientos propiciarán la participación y corresponsabilidad de la sociedad considerando que es condición indispensable para evitar la contaminación del agua.

**ARTÍCULO 101.**

La prevención y control de la contaminación del agua corresponderá:

I. Al Estado, a través de la Agencia Ambiental y con la participación que corresponda a otras dependencias o entidades estatales con competencia en materia de aguas:

a) Las aguas de jurisdicción federal que tengan asignadas para la prestación de servicios públicos diversos a los señalados en el artículo 115 de la Constitución Política de los Estados Unidos Mexicanos;

b) Las aguas de jurisdicción del Estado; y

c) Las aguas residuales que se descarguen en los sistemas de drenaje y alcantarillado de su competencia.

II. A los Ayuntamientos, con la participación que corresponda a los organismos municipales operadores del servicio de agua potable y alcantarillado:

a) Las aguas de jurisdicción federal que tengan asignadas; y

b) Las aguas que se descarguen en los sistemas de drenaje y alcantarillado de los centros de población;

**ARTÍCULO 102.**

Las descargas de aguas residuales en los sistemas de drenaje y alcantarillado municipales requieren la autorización del Ayuntamiento respectivo, el cual podrá exigir el previo tratamiento de los contaminantes que contenga.

**ARTÍCULO 103.**

La Agencia Ambiental y los Ayuntamientos en la esfera de sus respectivas competencias, podrán verificar que las aguas residuales provenientes de usos públicos urbanos y las de usos industriales o agropecuarios que se descarguen en los sistemas de drenaje y alcantarillado de las poblaciones o en las cuencas, ríos, cauces, vasos y demás depósitos o corrientes de agua, así como las que por cualquier medio se infiltren en el subsuelo y, en general, las que se derramen en los suelos, reúnan las condiciones necesarias para prevenir:

I. La contaminación de los cuerpos receptores;

II. Interferencias en los procesos de depuración de las aguas; y

III. Trastornos, impedimentos o alteraciones en los correctos aprovechamientos, o en el funcionamiento adecuado de los sistemas, y en la capacidad hidráulica en las cuencas, cauces, vasos, mantos acuíferos y demás depósitos de propiedad nacional, así como de los sistemas de alcantarillado.

**ARTÍCULO 104**.

1. En materia de prevención y control de la contaminación del agua, corresponden al Estado y a los Ayuntamientos, por sí o a través de los organismos operadores del recurso agua, de conformidad con la distribución de competencias establecidas en la Ley de Aguas Nacionales, este Código y sus reglamentos y la Ley General:

I. El control de las descargas de aguas residuales a los sistemas de drenaje y alcantarillado;

II. La vigilancia de las Normas Oficiales Mexicanas correspondientes, así como requerir a quienes generen descargas a dichos sistemas y no cumplan con éstas, la instalación de sistemas de tratamiento;

III. Determinar el monto de los derechos correspondientes para que la autoridad estatal respectiva o el Ayuntamiento, en su caso, pueda llevar a cabo el tratamiento necesario y cuando así proceda, a la imposición de las sanciones a que haya lugar; y

IV. Llevar y actualizar el registro de las descargas a los sistemas de drenaje y alcantarillado que administren, el que será integrado al Registro Estatal de Descargas a cargo de la Agencia Ambiental.

2. Para la protección integral de los ecosistemas del Estado, los usuarios del agua de los sectores público, social o privado que descarguen aguas residuales directamente en cuerpos de agua de jurisdicción federal deberán informar lo conducente a la Agencia Ambiental.

**ARTÍCULO 105.**

1. Todas las descargas en las redes colectoras, ríos, acuíferos, cuencas, cauces, vasos, aguas marinas y demás depósitos o corrientes de agua y los derrames de aguas residuales en los suelos o su infiltración

en terrenos, deberán cumplir con las Normas Oficiales Mexicanas y las Normas Ambientales Estatales, en su caso.

2. Corresponderá a quien genere dichas descargas, realizar por sí o por terceros el tratamiento previo requerido.

**ARTÍCULO 106.**

Para el diseño, operación o administración de equipos y sistemas de tratamiento de aguas residuales, deberán observarse las disposiciones previstas en el presente Código, en los reglamentos de la materia y en las Normas Oficiales Mexicana y en su caso, en las Normas Ambientales Estatales.

**ARTÍCULO 107.**

Las aguas residuales derivadas de aguas nacionales asignadas a los Municipios para la prestación de servicios públicos, podrán reusarse si se someten al tratamiento que cumpla con las Normas Oficiales Mexicanas y, en su caso, con las Normas Ambientales Estatales. El reuso de dichas aguas se hará mediante el pago de las cuotas de derechos que fijen las disposiciones estatales y municipales correspondientes y podrá llevarse a cabo hasta antes de la descarga final en bloque de las aguas residuales en los cuerpos receptores competencia de la Federación.

**ARTÍCULO 108.**

Los responsables de las descargas de aguas residuales podrán solicitar a los Ayuntamientos que tomen a su cargo el tratamiento de las mismas, previo el pago de las cuotas que se fijen en las disposiciones aplicables.

**ARTÍCULO 109.**

1. Quienes realicen descargas de aguas residuales provenientes de actividades industriales, comerciales, de servicios y agropecuarias que se viertan a los sistemas de drenaje y alcantarillado, deberán ser registradas ante la autoridad municipal correspondiente y ante la Agencia Ambiental. Mediante la cédula de operación anual, el Ayuntamiento y la Agencia Ambiental llevarán el conocimiento actualizado de las descargas.

2. Los datos provenientes del Registro Municipal de Descargas de Aguas Residuales, serán integrados al Registro Estatal de Descargas que opere la Agencia Ambiental.

**ARTÍCULO 110.**

1. El Estado y los Ayuntamientos, en coordinación con la Federación, establecerán y operarán el sistema de monitoreo de la calidad de las aguas de jurisdicción estatal y nacionales que tengan asignadas, así como las residuales que se descarguen a los sistemas de drenaje y alcantarillado.

2. Para ese efecto, el Estado podrá coordinarse con los Ayuntamientos cuando se trate de aguas nacionales que los Municipios tengan asignadas para la prestación de servicios públicos o de aguas residuales que se descarguen en los sistemas de drenaje y alcantarillado.

**CAPÍTULO IV**
**DE LA CONTAMINACIÓN DEL SUELO Y SUBSUELO**

**ARTÍCULO 111.**

Los Ayuntamientos promoverán la protección y restauración de los suelos y deberán exigir la presentación de resoluciones favorables de  manifestaciones de impacto ambiental con antelación al

otorgamiento de autorizaciones para efectuar cambios de uso de suelo, de conformidad al artículo 57 de este Código.

## ARTÍCULO 112.

Con relación a las áreas que presenten procesos de degradación y desertificación, la Agencia Ambiental promoverá los acuerdos necesarios con la Federación y con el Ayuntamiento competente, a fin de establecerlas como zonas de restauración ambiental, ajustándose a los lineamientos de la Ley General.

## CAPÍTULO V
## DE LAS ACTIVIDADES RIESGOSAS

## ARTÍCULO 113.

1. En la determinación de los usos del suelo que lleven a cabo las autoridades competentes, de conformidad con las disposiciones locales sobre el desarrollo urbano y rural, se especificarán las zonas en las que será permitido el establecimiento de industrias, comercios o servicios clasificados como riesgosos por la gravedad de los efectos que puedan generar en la salud de las personas, los ecosistemas o en el medio ambiente del Estado.

2. Para lo dispuesto por el párrafo anterior deberán considerarse:

I. Las condiciones topográficas, meteorológicas y climatológicas de las zonas, de manera que se facilite la rápida dispersión de contaminantes;

II. La proximidad a centros de población, previendo las tendencias de expansión del respectivo asentamiento y la creación de nuevos centros de población;

III. Los impactos que tendría un posible evento extraordinario de la industria, comercio o servicio de que se trate sobre los centros de población y sobre los recursos naturales;

IV. La compatibilidad con otras actividades de la zona;

V. La infraestructura existente y necesaria para la atención de emergencias ecológicas;

VI. La infraestructura para la dotación de servicios básicos; y

VII. La disposición de zonas intermedias de salvaguarda en el predio en el que se pretenden desarrollar obras o actividades riesgosas o altamente riesgosas, que impliquen el uso, manejo o almacenamiento de sustancias peligrosas.

## ARTÍCULO 114.

1. El Estado regulará, a través de la Agencia Ambiental, la realización de actividades que no sean consideradas altamente riesgosas, cuando éstas afecten el equilibrio de los ecosistemas o el medio ambiente dentro de la circunscripción territorial correspondiente, de conformidad con las Normas Oficiales Mexicanas y las Normas Ambientales Estatales que resulten aplicables.

2. El Estado y los Ayuntamientos coordinarán con la Federación sus acciones respecto de las actividades a que se refiere este precepto.

## TÍTULO QUINTO
## DE LAS EMERGENCIAS ECOLÓGICAS Y LAS CONTINGENCIAS AMBIENTALES

**CAPÍTULO ÚNICO**

**ARTÍCULO 115.**

1. En caso de contingencia ambiental o de una emergencia ecológica por la afectación grave al medio ambiente, la Agencia Ambiental deberá adoptar, de manera inmediata, las medidas necesarias para impedir y mitigar la degradación de los recursos naturales y el ecosistema.

2. Si la contingencia ambiental o la emergencia ecológica representa un riesgo inminente para la población en general o para la salud humana, la Agencia Ambiental establecerá los procedimientos de coordinación pertinente con las autoridades de protección civil y de salud, con base en la política de desarrollo sustentable del Estado.

**ARTÍCULO 116.**

1. Cuando la magnitud o gravedad del riesgo de desequilibrios ecológicos o daños al medio ambiente rebasen la circunscripción territorial, los Ayuntamientos asumirán las tareas de prevención y el control de emergencias ecológicas y contingencias ambientales, sin demérito de la acción del Estado conforme al artículo anterior o de la Federación, cuando así resulte necesario para atender esos eventos.

2. En todo caso, los Ayuntamientos solicitarán la participación del Estado por conducto de la Agencia Ambiental. Esta propondrá, cuando lo estime necesario, la asistencia de la Federación.

**ARTÍCULO 117.**

Cuando para la atención de estas situaciones deban intervenir dos o más dependencias estatales, la Agencia Ambiental promoverá la coordinación correspondiente.

**LIBRO TERCERO**
**DE LA PREVENCIÓN Y GESTIÓN INTEGRAL DE LOS**
**RESIDUOS DEL ESTADO**

**TÍTULO PRIMERO**
**DISPOSICIONES GENERALES**
**CAPÍTULO ÚNICO**
**DEL OBJETO**

**ARTÍCULO 118.**

1. Las disposiciones de este Libro tienen por objeto propiciar el desarrollo sustentable por medio de la prevención de la generación de los residuos sólidos urbanos y de manejo especial; la gestión integral de los mismos a través de su minimización, valorización y aprovechamiento, en su caso; y la prevención de la contaminación y la remediación de suelos contaminados con estos residuos.

2. En la aplicación del presente Libro, el Ejecutivo del Estado y los Ayuntamientos, en el ámbito de sus respectivas competencias, deberán observar los principios contenidos en la Ley General de Residuos.

**ARTÍCULO 119.**

Para los efectos del presente Libro, se observarán las definiciones contenidas en la Ley General de Residuos y demás ordenamientos jurídicos aplicables, así como las siguientes:

I. Acopio: La acción de reunir residuos temporalmente en un lugar determinado y apropiado para prevenir riesgos a la salud y al medio ambiente, a fin de facilitar su recolección y manejo;

II. Almacenamiento: La retención temporal de los residuos en lugares propicios para evitar su liberación y que causen o puedan causar daños a la salud de las personas, al medio ambiente o los recursos naturales, hasta en tanto se procesen para su aprovechamiento, se les aplique un tratamiento, se transporten o se disponga finalmente de ellos;

III. Aprovechamiento de residuos: El conjunto de acciones cuyo objetivo es recuperar el valor económico de los residuos mediante su reutilización, remanufactura, rediseño, reciclado y recuperación de materiales secundarios o de energía;

IV. Composteo: El proceso de descomposición aerobia de la materia orgánica mediante la acción de microorganismos específicos, que permite el aprovechamiento de los residuos sólidos orgánicos como mejoradores de suelos;

V. Contenedor: El recipiente destinado al depósito ambientalmente adecuado y de forma temporal de residuos sólidos urbanos o de manejo especial, durante su acopio, almacenamiento, recolección y traslado;

VI. Caracterización de sitios contaminados: La determinación cualitativa y cuantitativa de los contaminantes presentes, provenientes de materiales o residuos regulados por este Libro, para estimar la magnitud y tipo de riesgos que conlleva dicha contaminación;

VII. Diagnóstico básico: El estudio que identifica la situación de la generación y manejo de los residuos que considera la cantidad y composición de los mismos, así como la infraestructura para manejarlos integralmente;

VIII. Estación de transferencia: La instalación en la cual se almacenan residuos con el fin de transportarlos a otro lugar para su aprovechamiento, valorización, tratamiento o disposición final;

IX. Evaluación del riesgo por residuos: El proceso metodológico para determinar la posibilidad de que se produzcan efectos adversos como consecuencia de la exposición de los seres vivos y los recursos naturales a las sustancias contenidas en los residuos regulados por el presente Libro;

X. Gran generador: La persona física o moral que al año genere una cantidad igual o mayor a diez toneladas en peso bruto de residuos;

XI. Manejo integral: Las actividades de reducción en la fuente, separación, reutilización, reciclaje, co-procesamiento, tratamiento biológico, químico, físico o térmico, acopio, almacenamiento, transporte y disposición final de residuos, individualmente realizadas o combinadas de manera apropiada, para adaptarse a las condiciones y necesidades de cada lugar, cumpliendo objetivos de valorización y eficiencia sanitaria, ambiental, tecnológica, económica y social;

XII. Microgenerador de residuos peligrosos: Es la persona física y moral que genera al año, una cantidad de hasta cuatrocientos kilogramos de residuos peligrosos o su equivalente en otra unidad de medida;

XIII. Minimización: El conjunto de medidas dirigidas a disminuir la generación de residuos y aprovechar el valor de aquellos cuya generación no sea posible evitar;

XIV. Pequeño generador: La persona física o moral que al año genere una cantidad igual o mayor a cuatrocientos kilogramos y menor a diez toneladas en peso bruto total de residuos o su equivalente en otra unidad de medida;

XV. Plan de manejo: El instrumento cuyo objetivo es minimizar la generación y maximizar el aprovechamiento y valorización de residuos sólidos urbanos, residuos de manejo especial y residuos peligrosos específicos, bajo criterios de eficiencia ambiental, tecnológica, económica y social, con fundamento en el diagnóstico básico para la gestión integral de residuos, diseñado bajo los principios de responsabilidad compartida y manejo integral, que considera el conjunto de acciones, procedimientos y medios viables e involucra a productores, importadores, exportadores, distribuidores, comerciantes, consumidores, usuarios de subproductos y grandes generadores de residuos, según corresponda, así como a los tres órdenes de gobierno;

XVI. Prestador autorizado para el servicio de manejo de residuos: La persona física o moral registrada y autorizada por la Agencia Ambiental para prestar servicios a terceros, a fin de que realicen cualquiera de las etapas comprendidas en el manejo integral de los residuos de manejo especial y de aquellas etapas del manejo integral de residuos sólidos urbanos susceptibles de autorización;

XVII. Recolección: La acción de recoger los residuos sólidos urbanos o de manejo especial de sus generadores y trasladarlos a las instalaciones autorizadas para su posterior manejo;

XVIII. Residuo: El material o producto cuyo propietario o poseedor desecha y que se encuentra en estado sólido o semisólido, o es un líquido o gas contenido en recipientes o depósitos, y que puede ser susceptible de valorización o requiere sujetarse a tratamiento o disposición final conforme a lo dispuesto en este Código y demás ordenamientos que deriven del mismo;

XIX. Residuos de manejo especial: Aquellos generados en los procesos productivos, que no reúnen las características para ser considerados como peligrosos o como residuos sólidos urbanos, o que son producidos por grandes generadores de residuos sólidos urbanos, así como los suelos mezclados con éstos o sus lixiviados;

XX. Residuos inorgánicos: Aquellos que por sus características no son biodegradables;

XXI. Residuos orgánicos: Aquellos que por sus características son biodegradables;

XXII. Residuos sólidos urbanos: Aquellos generados en las casas habitación, que resultan de la eliminación de los materiales que utilizan en sus actividades domésticas, de los productos que consumen y de sus envases, embalajes o empaques; los que provienen de cualquier otra actividad dentro de establecimientos o en la vía pública que genere residuos con características domiciliarias, y los resultantes de la limpieza de las vías y lugares públicos, así como los suelos mezclados con éstos o sus lixiviados, siempre que no sean considerados por la Ley General  de Residuos como residuos de otra índole;

XXIII. Sistema de manejo ambiental: El conjunto de medidas adoptadas para incorporar a  criterios ambientales en las actividades cotidianas de las personas físicas y morales, con el propósito de minimizar su impacto negativo al medio ambiente, mediante el ahorro y consumo eficiente de agua, energía y materiales, y que alienta la prevención de la generación de residuos, su aprovechamiento y su manejo integral;

XXIV. Sitio contaminado: El lugar, espacio, suelo, cuerpo de agua, instalación o cualquier combinación de éstos que ha sido contaminado con materiales o residuos que, por sus cantidades y características, pueden representar un riesgo para la salud humana, los organismos vivos y al aprovechamiento de los bienes o propiedades de las personas;

XXV.- Transportación de Residuos: La acción de trasladar los residuos para su correcta valorización o, en su caso, disposición final;

XXVI. Tratamiento: El procedimiento mecánico, físico, químico, biológico o térmico, mediante el cual cambian las características de los residuos y se reduce su volumen o, de ser el caso, su  peligrosidad, sin poner en peligro la salud de las personas y utilizándose métodos que produzcan el menor impacto al medio ambiente; y

XXVII. Valorización: El principio y conjunto de acciones asociadas cuyo objetivo es recuperar el valor remanente o el poder calorífico de los materiales que componen los residuos, mediante su reincorporación en procesos productivos, bajo criterios de responsabilidad compartida, manejo integral y eficiencia ambiental, tecnológica y económica.

## TÍTULO SEGUNDO
## FACULTADES Y COORDINACIÓN DE LAS AUTORIDADES
## CAPÍTULO ÚNICO

## DE LAS AUTORIDADES Y SUS FACULTADES

**ARTÍCULO 120.**

El Ejecutivo del Estado, por conducto de la Agencia Ambiental, tendrá las siguientes atribuciones:

I. Formular, conducir y evaluar la política ambiental estatal en materia de residuos;

II. Vincular e integrar la política de gestión integral de residuos, con base en los Programas Nacionales para la Prevención y Gestión Integral de los Residuos y de Remediación de Sitios Contaminados con Residuos;

III. Establecer y evaluar el Programa Estatal para la Prevención y Gestión Integral de los Residuos, que incluirá los de manejo especial y en su caso, los programas regionales o especiales en estos rubros;

IV. Regular y establecer las bases para el cobro de la prestación de servicios relacionados con el manejo integral de los residuos de manejo especial;

V. Promover, en coordinación con la Federación y los Ayuntamientos, la creación de infraestructura para el manejo integral de residuos sólidos urbanos, de manejo especial y peligrosos en el Estado, con la participación de los sectores social y privado;

VI. Promover la investigación, el desarrollo y la aplicación de tecnologías, equipos, sistemas y procesos que eliminen, reduzcan o minimicen la liberación al medio ambiente y la transferencia de uno a otro de sus elementos, de contaminantes provenientes del manejo integral de los residuos sólidos urbanos y de manejo especial;

VII. Participar en el establecimiento y operación, en el marco del Sistema Nacional de Protección Civil y en coordinación con la Federación, de un sistema para la prevención y control de contingencias ambientales y emergencias ecológicas derivadas de la gestión de residuos de manejo especial;

VIII. Promover la educación y capacitación continua de personas de todos los sectores de la sociedad con objeto de contribuir al cambio de hábitos en materia de prevención y gestión integral de residuos, a favor del desarrollo sustentable;

IX. Coadyuvar con la Federación en la integración de los subsistemas de información nacional sobre la gestión integral de residuos de su competencia;

X. Diseñar, proponer y gestionar el establecimiento y aplicación de los instrumentos económicos, fiscales, financieros y de mercado que tengan por objeto prevenir o reducir la generación de residuos, su valorización y su gestión integral y sustentable;

XI. Establecer y mantener actualizado el registro de planes de manejo de residuos de manejo especial, conforme a los lineamientos que se determinen en el presente Código;

XII. Evaluar, proponer y establecer los residuos de manejo especial que puedan agregarse al listado de las Normas Oficiales Mexicanas, por considerarse sujetos a planes de manejo; emitir las Normas Ambientales Estatales con relación a la operación, recolección, transporte, almacenamiento, reciclaje, tratamiento, industrialización y disposición final de residuos sólidos y residuos de manejo especial; y establecer las condiciones de seguridad, requisitos y limitaciones en el manejo de los residuos sólidos que presenten riesgo para el ser humano, los recursos naturales, el medio ambiente y los ecosistemas;

XIII. Otorgar, negar, suspender, prorrogar o revocar autorizaciones para el manejo integral, en cualquiera de sus fases, de residuos de manejo especial y registrar los planes que se sometan a su consideración, así como establecer y ejercer las acciones para la verificación del cumplimiento de sus términos y condiciones;

XIV. Elaborar un padrón de prestadores autorizados para el servicio de manejo de residuos;

XV. Determinar los indicadores que permitan evaluar la aplicación del presente ordenamiento, e integrar los resultados al Sistema Estatal de Información Ambiental y de Recursos Naturales;

XVI. Realizar los estudios y proyectos de obras de infraestructura para el manejo de residuos sólidos urbanos y de manejo especial;

XVII. Emitir opinión sobre el diseño, construcción, operación, cierre de estaciones de transferencia, plantas de selección, de tratamiento, y sitios de disposición final de residuos, sin demérito de sus atribuciones en materia de impacto ambiental;

XVIII. Requerir a las autoridades municipales, a los generadores y a las empresas de servicios de manejo, la información necesaria para realizar los diagnósticos básicos de residuos que sirvan para la elaboración de los programas de su competencia;

XIX. Promover programas de prevención y de gestión integral de los residuos sólidos urbanos y de manejo especial, con la participación de los interesados y coadyuvar en la realización de estudios para sustentar el otorgamiento de concesiones para la prestación del servicio de recolección, traslado y disposición final de residuos sólidos urbanos y de manejo especial, en coordinación con los Ayuntamientos cuando tengan competencia para ello;

XX. Proponer al titular del Ejecutivo del Estado la expedición de los ordenamientos jurídicos que permitan la gestión integral de residuos de manejo especial, la prevención de la contaminación de sitios con dichos residuos y su remediación, las Normas Ambientales Estatales con relación al manejo integral de residuos sólidos urbanos, y para establecer las condiciones de seguridad, requisitos y limitaciones en el manejo de los residuos sólidos urbanos que presenten riesgo para el ser humano, los recursos naturales, el medio ambiente y los ecosistemas;

XXI. Participar en la autorización y control de las actividades realizadas por los microgeneradores de residuos peligrosos, así como en el establecimiento y actualización de los registros de éstos de acuerdo a la normatividad aplicable con base a los convenios que se suscriban con la Federación y, en su caso, con los Ayuntamientos conforme a lo dispuesto por este Código;

XXII. Coadyuvar en la promoción de la prevención de la contaminación de sitios con residuos peligrosos y su remediación de acuerdo con los ordenamientos aplicables;

XXIII. Verificar el cumplimiento de las disposiciones jurídicas y los instrumentos en materia de residuos de manejo especial;

XXIV. Inspeccionar y vigilar el manejo integral de los residuos de manejo especial, así como verificar el cumplimiento de las disposiciones jurídicas  contenidas en la Ley General de Residuos, el presente Código y los demás preceptos de su competencia y en los instrumentos que deriven de aquéllos, e imponer las sanciones y medidas de seguridad que resulten aplicables;

XXV. Imponer las sanciones y medidas de seguridad que procedan de acuerdo con la normatividad aplicable y lo que establezcan los convenios que se suscriban con la Federación y con los Ayuntamientos, conforme a lo dispuesto por este Código; y

XXVI. Las demás que se establezcan en la Ley General de Residuos, este Código y otros ordenamientos aplicables.

## ARTÍCULO 121.

El Municipio, por conducto del Ayuntamiento tendrá las siguientes atribuciones:

I. Formular por sí o con el apoyo de la Agencia Ambiental y con la participación de representantes de los distintos sectores social y privado, los programas municipales para la prevención y gestión integral de los residuos sólidos urbanos, los cuales deberán observar lo dispuesto en el Programa Estatal para la Prevención y Gestión Integral de los Residuos;

II. Expedir los reglamentos y demás disposiciones jurídico-administrativas de observancia general dentro de su competencia, a fin de dar cumplimiento a lo establecido en el presente Libro y en la Ley General de Residuos;

III. Establecer  políticas, criterios e instrumentos para llevar a cabo  la separación de la fuente de residuos orgánicos e inorgánicos y los mecanismos para promover su aprovechamiento;

IV. Propiciar la minimización de residuos sólidos urbanos y controlar el manejo integral de los mismos;
V. Capacitar a los servidores públicos que intervienen en la prestación del servicio público de limpia, recolección, traslado, tratamiento y disposición final de residuos;

VI. Concesionar de manera total o parcial la prestación del servicio público de limpia, recolección, traslado, tratamiento y disposición final de residuos sólidos urbanos, los cuales  forman parte del manejo integral, con base en las disposiciones del Código Municipal para el Estado;

VII. Autorizar aquellas etapas del manejo integral de residuos sólidos urbanos que no sean consideradas como servicio público;

VIII. Establecer y mantener actualizado el registro de grandes generadores de residuos sólidos urbanos e informarlo a la Agencia Ambiental, en los términos de este Código;

IX. Verificar el cumplimiento de las disposiciones de este Libro, de las Normas Oficiales Mexicanas, las Normas Ambientales Estatales y demás ordenamientos en materia de residuos sólidos urbanos e imponer las sanciones y medidas de seguridad que resulten aplicables;

X. Participar en el control de los residuos peligrosos generados o manejados por microgeneradores, así como imponer las sanciones que procedan de acuerdo con la normatividad aplicable y lo que establezcan los convenios que se suscriban entre el Estado y la Federación, de conformidad con lo establecido en la Ley General de Residuos  y este Código;

XI. Coadyuvar en la prevención de la contaminación de sitios con residuos peligrosos y su remediación, de acuerdo con los ordenamientos aplicables;

XII. Determinar con la asistencia técnica de la Agencia Ambiental, los costos de las distintas etapas de la operación de los servicios de manejo integral de residuos sólidos urbanos;

XIII. Proponer al Congreso del Estado, al presentar anualmente la iniciativa de Ley de Ingresos del Municipio, las tarifas aplicables al derecho por la prestación del servicio público de limpia, recolección, traslado, tratamiento y disposición final de residuos, sobre la base del manejo integral de los residuos sólidos urbanos, y efectuar su cobro;

XIV. Sancionar a los responsables de los tiraderos a cielo abierto o sitios no controlados de residuos sólidos urbanos;

XV. Difundir y promover entre la población, las prácticas de separación, reutilización y reciclaje de residuos, conforme a las políticas, criterios e instrumentos en la materia que establezca la Agencia Ambiental, así como fomentar y practicar el reconocimiento a estas acciones;

XVI. Instalar en la vía pública equipamiento para el depósito por separado residuos sólidos urbanos, distinguiéndose entre orgánicos e inorgánicos;

XVII. Promover y dar seguimiento a la formulación, implementación y evaluación del sistema de manejo ambiental en las dependencias y entidades de la administración pública municipal; y

XVIII. Las demás que se establezcan en la Ley General de Residuos, este Código y otros ordenamientos que resulten aplicables.

**TÍTULO TERCERO**
**INSTRUMENTOS DE LA POLÍTICA DE PREVENCIÓN**
**Y GESTIÓN INTEGRAL DE LOS RESIDUOS**
**CAPÍTULO I**
**DE LOS PROGRAMAS ESTATAL Y MUNICIPALES PARA LA PREVENCIÓN Y GESTIÓN INTEGRAL**
**DE LOS RESIDUOS**

**ARTÍCULO 122.**

1. El Ejecutivo del Estado, a través de la Agencia Ambiental y con base en las directrices que emanen del Programa Estatal de Desarrollo Sustentable, establecerá el Programa Estatal para la Prevención y Gestión Integral de los Residuos, de conformidad con este Libro, las demás disposiciones aplicables y el diagnóstico básico para la gestión integral de residuos sólidos urbanos y de manejo especial.

2. El Programa Estatal para la Prevención y Gestión Integral de los Residuos deberá formularse en concordancia con lo que establezca el Programa Nacional de la materia, considerando los siguientes lineamientos:

I. Aplicar los principios de valorización, responsabilidad compartida y manejo integral de residuos;

II. Armonizar las políticas de ordenamiento ecológico y de desarrollo urbano con el manejo integral de residuos, identificando las áreas apropiadas para la realización de obras de infraestructura para su almacenamiento, tratamiento y disposición final;

III. Promover la cultura, educación y capacitación ambientales, así como la participación de los sectores público, social y privado para el manejo integral de los residuos;

IV. Planear y prever la infraestructura necesaria para asegurar que los residuos se manejen de manera ambientalmente adecuada;

V. Adoptar medidas para la minimización y valorización de residuos, su separación en la fuente de origen, así como su adecuado aprovechamiento, tratamiento y disposición final;

VI. Prever la liberación de los residuos que puedan causar daños al medio ambiente o a la salud de las personas y la transferencia de contaminantes de un medio a otro;

VII. Promover la reducción de la cantidad de los residuos que lleguen a disposición final;

VIII. Promover medidas para evitar el acopio de residuos en áreas o en condiciones no autorizados por la autoridad competente;

IX. Establecer las medidas adecuadas para reincorporar al ciclo productivo residuos reutilizables o reciclables, así como promover el desarrollo de mercados de subproductos para la valorización de los residuos;

X. Determinar las medidas conducentes para evitar la disposición final de residuos que sean incompatibles y puedan provocar reacciones que liberen gases, provoquen incendios o explosiones o que no hayan sido sometidos a procesos de tratamiento; y

XI. Los demás que establezcan este Código, sus Reglamentos y demás ordenamientos aplicables.

**ARTÍCULO 123.**

1. En el Programa para la Prevención y Gestión Integral de los Residuos la Agencia Ambiental formulará las previsiones para la prevención y gestión integral de los residuos de manejo especial.

2. El Ayuntamiento formulará e instrumentará el Programa Municipal para la Prevención y Gestión Integral de los Residuos Sólidos Urbanos. Para tal fin podrá solicitar el apoyo técnico de la Agencia Ambiental, observándose en todo caso la congruencia con los Programas Nacional y Estatal en materia de residuos.

**ARTÍCULO 124.**

Los programas a que hace referencia el artículo anterior deberán contener, al menos, lo siguiente:
I. El diagnóstico básico;

II. La política en materia de residuos sólidos urbanos y de manejo especial, según corresponda;

III. La definición de objetivos y metas para la prevención de la generación y el mejoramiento de la gestión de los residuos sólidos urbanos y de manejo especial, así como las estrategias, líneas de acción y plazos para su cumplimiento;

IV. Los medios de financiamiento de las acciones consideradas en los programas;

V. Los mecanismos para fomentar la vinculación entre los programas correspondientes, a fin de crear sinergias; y

VI. Las previsiones para su evaluación y actualización.

**CAPÍTULO II**
**DE LOS PLANES DE MANEJO**

**ARTÍCULO 125.**
Los planes de manejo de residuos sólidos urbanos y de manejo especial deberán estar encaminados, entre otros a los propósitos siguientes:

I. Identificar formas de prevenir o minimizar su generación a través de su valorización y aprovechamiento;

II. Establecer modalidades de manejo en los que aplique el principio de responsabilidad compartida de los distintos sectores involucrados y que respondan a las particularidades de los residuos y de los materiales que los constituyen;

III. Establecer mecanismos para reutilizar, reciclar o aprovechar los residuos cuya generación no se pueda evitar, de conformidad con las disposiciones legales aplicables y en la medida en que esto sea ambientalmente adecuado, económicamente viable y tecnológicamente factible;

IV. Reducir el volumen y riesgo en el manejo de los residuos que no se puedan valorizar de conformidad con las disposiciones legales aplicables;

V. Alentar la innovación de procesos, métodos y tecnologías para lograr un manejo integral de los residuos, que sea económicamente factible; y

VI. Disponer en un depósito legalmente autorizado con carácter de final, los residuos que no puedan ser susceptibles de valorizarse.

**ARTÍCULO 126.**

El contenido de los planes de manejo se sujetará a lo previsto en el Reglamento de este Libro, las Normas Oficiales Mexicanas, las Normas Ambientales Estatales y demás ordenamientos aplicables.

**ARTÍCULO 127.**

Estarán obligados a la formulación y ejecución de los planes de manejo los grandes generadores y los productores, importadores, exportadores y distribuidores de los productos que al desecharse se convierten en residuos sólidos urbanos o de manejo especial que se incluyan en los listados de residuos sujetos a planes de manejo, de conformidad con las Normas Oficiales Mexicanas correspondientes. Así mismo, esta obligación se extiende a aquellas fuentes generadoras que se encuentren en las Normas Ambientales Estatales o listados que para tal efecto determine la Agencia Ambiental y que por las características de los materiales que los integran sean residuos que así lo requieran.

**ARTÍCULO 128.**

 La determinación de residuos que podrán sujetarse a planes de manejo se llevará a cabo con base en lo que establezcan las Normas Oficiales Mexicanas y las Normas Ambientales Estatales, a partir de los siguientes criterios mínimos:

I. El volumen de generación de los residuos resulte significativo para la sustentabilidad del medio ambiente;

II.  El riesgo potencial que represente para la salud de las personas; y

III.  Los materiales que los componen tengan un valor económico.

**ARTÍCULO 129.**

Los grandes generadores de residuos sólidos urbanos y de manejo especial, deberán integrar una propuesta para sustentar el desarrollo de cada uno de los planes de manejo, que se entregará a la Agencia Ambiental para su validación y en la cual se asentarán, entre otras cuestiones, las siguientes:

I. El nombre, la denominación o razón social de quien presente la propuesta y del representante legal, en su caso; el nombre de los autorizados para recibir notificaciones; el órgano administrativo al que se dirijan y el lugar y fecha de formulación. La propuesta deberá estar firmada por el interesado o su representante legal;

II. Los residuos generados que serán objeto de los planes de manejo;

III. Los procedimientos, métodos o técnicas que se emplearán para el manejo integral de los residuos;

IV. Las empresas autorizadas y registradas como prestadoras de servicios que se ocuparán del manejo integral de los residuos sujetos a los planes de manejo, en cualquiera de sus etapas;

V.  El cronograma enunciando los objetivos, las principales actividades y sus fechas de implantación, así como la periodicidad para la evaluación de resultados y la entrega de actualizaciones;

VI. Los responsables de la implantación y seguimiento de los planes de manejo correspondientes;

VII. La solicitud específica,  en su caso, de qué parte de la información proporcionada a la Agencia Ambiental requiere se manejada de manera confidencial por tratarse de información privilegiada de valor comercial para el promovente; y

VIII. Los indicadores para evaluar el desempeño del plan de manejo.

**ARTÍCULO 130.**

1. La Agencia Ambiental convocará  a los productores de bienes de consumo que al desecharse se conviertan en residuos   de manejo especial, susceptibles de ser objeto de planes de manejo de conformidad con las disposiciones de la Ley General de Residuos, las Normas Oficiales Mexicanas, las Normas Ambientales Estatales y este Libro.

2. En su caso, la Agencia Ambiental podrá actuar conjuntamente con los Ayuntamientos en términos de los acuerdos o convenios de colaboración suscritos.

3. En el establecimiento de los planes de manejo previstos en el supuesto del párrafo 1 de este precepto, la Agencia Ambiental actuará conforme a lo siguiente:

I. Dará a conocer que son prioritarios para su atención por el grado de dificultad que implica el manejo de los residuos correspondientes o los problemas ambientales que se han visto asociados a las formas de disposición final comunes de los mismos;

II. Propondrá la formulación de proyectos piloto que de manera gradual permitan la devolución de los residuos por los consumidores, a fin de que sean éstos quienes se ocupen de su reciclaje, tratamiento o disposición final;

III. Identificará conjuntamente las alianzas y redes de colaboración que sea necesario establecer, en el marco de la responsabilidad compartida pero diferenciada, a fin de contar con el apoyo necesario de las partes interesadas para facilitar la formulación e implantación de los proyectos piloto a los que hace referencia la fracción anterior;

IV. Identificará el tipo de instrumentos económicos o de otra índole que permitirán sustentar el costo del manejo de los residuos en su fase post-consumo, así como de facilidades administrativas, incentivos o reconocimientos que podrán implantarse para alentar el desarrollo de los planes de manejo;

V. Identificará los medios y mecanismos a través de los cuales se podrá hacer del conocimiento público la existencia de los proyectos pilotos y las formas en las que se espera que los consumidores participen en los planes de manejo de los residuos;

VI. Identificará las necesidades de infraestructura para el manejo integral de los residuos devueltos por los consumidores y la capacidad instalada en el Estado o en el país para ello;

VII. Identificará las necesidades a satisfacer para crear o fortalecer los mercados del reciclaje de los materiales valorizables que puedan recuperarse de los residuos sujetos a los planes de manejo; y

VIII. Identificará nuevos medios y tecnologías viables para el manejo integral de los residuos.

## ARTÍCULO 131.

En ningún caso los planes de manejo podrán plantear formas de manejo contrarias a los objetivos y a los principios en los que se basa la normatividad aplicable a la prevención y reducción de riesgos del residuo de que se trate, ni realizarse a través de empresas que no estén autorizadas ante las autoridades competentes.

## ARTÍCULO  132.
El Ejecutivo del Estado, por conducto de la Agencia Ambiental,  publicará en el Periódico Oficial del Estado y en diarios de circulación local, la relación de los residuos sujetos a planes de manejo.

**TÍTULO CUARTO**
**DEL MANEJO INTEGRAL DE LOS RESIDUOS**
**CAPÍTULO I**
**DISPOSICIONES GENERALES**

**ARTÍCULO 133.**

Los residuos de manejo especial deberán ser manejados conforme a lo dispuesto por este Código, las Normas Oficiales Mexicanas, las Normas Ambientales Estatales, el Reglamento de este Libro y demás disposiciones aplicables. Para su manejo se observarán los principios establecidos en este Código.

**ARTÍCULO 134.**

1. Quienes generen residuos de manejo especial son responsables de su manejo y disposición final. La transferencia de los mismos por la contratación de prestadores autorizados para el servicio de manejo de residuos,  implica una responsabilidad solidaria en su manejo integral, para el prestador, en lo que respecta a la etapa del manejo para la que esté autorizado.
2. El manejo que se haga de los residuos de manejo especial y peligrosos que tenga asignados el Estado deberá realizarse de manera segura y ambientalmente adecuada conforme a los términos de la Ley General de Residuos, este Código y las condicionantes contenidas en las autorizaciones respectivas.

**ARTÍCULO 135.**
Es obligatorio gestionar y obtener la autorización de la Agencia Ambiental para la prestación de servicios en materia de manejo integral de residuos. En caso contrario se aplicarán las sanciones previstas en este Código, independientemente de la  responsabilidad penal que pudiere derivarse.

**CAPÍTULO II**
**DE SU CLASIFICACIÓN**

**ARTÍCULO 136.**

1. Salvo cuando se trate de residuos considerados como peligrosos por la Ley General de Residuos y en las Normas Oficiales Mexicanas correspondientes, los residuos de manejo especial se clasifican como sigue:

I. Residuos de las rocas o los productos de su descomposición que sólo puedan utilizarse para la fabricación de materiales de construcción o se destinen para este fin, así como los productos derivados de la descomposición de las rocas, excluidos de la competencia federal conforme a las fracciones IV y V del artículo 5 de la Ley Minera;

II. Residuos de servicios de salud, generados por los establecimientos que realicen actividades médico-asistenciales a las poblaciones humanas o animales y centros de investigación, con excepción de los biológico-infecciosos;

III. Residuos generados, en cualquiera de sus etapas, por las actividades, agrícolas, ganaderas, forestales, silvícolas, avícolas o piscícolas, incluyendo los residuos de los insumos utilizados en esas actividades;

IV. Residuos industriales no peligrosos generados en instalaciones con dichas características o por procesos industriales, extractivos o de exploración, que no presentan las características de peligrosidad, conforme a la normatividad ambiental vigente y de acuerdo con la determinación de sus características y concentración de las sustancias contenidas en ellos, incluyendo a los lodos o recortes de perforación provenientes de la extracción de combustibles fósiles;

V. Residuos de los servicios de transporte, así como los generados a consecuencia de las actividades que se realizan en puertos, aeropuertos, terminales ferroviarias y portuarias y en las aduanas;

VI. Residuos consistentes en lodos provenientes del tratamiento de aguas residuales;

VII. Residuos generados por instalaciones industriales, comerciales y de servicios;

VIII. Residuos de la construcción, mantenimiento y demolición en general;

IX. Residuos tecnológicos provenientes de las industrias de la informática, fabricantes de productos electrónicos o de vehículos automotores y otros que al transcurrir su vida útil, por sus características, requieren de un manejo específico;

X. Residuos generados, acopiados, almacenados o dispuestos para su valorización y aprovechamiento en depósitos de metales, de reciclado, chatarrería, disposición final de vehículos usados, y afines;

XI. Residuos que, en su punto de generación no reúnan las características para clasificarlos como peligrosos, en términos de lo dispuesto por el artículo 16 de la Ley General de Residuos o que por sus volúmenes o concentración de sustancias,  no excedan características de corrosividad, reactividad, explosividad, toxicidad e inflamabilidad o que contengan agentes infecciosos que les confieran el carácter de peligrosos;

XII. Los lodos de perforación, provenientes de la extracción de combustible fósiles, que no sean competencias de la federación;

XIII. Los residuos sólidos urbanos producidos por grandes generadores; y

XIV.- Todos los demás generados en los procesos productivos, que no reúnen las características para ser considerados como peligrosos o como residuos sólidos urbanos.

 2. La Agencia Ambiental, mediante determinación fundada y motivada, podrá establecer otras categorías para la clasificación de los residuos de manejo especial.

 **ARTÍCULO 137.**

Los residuos sólidos urbanos podrán subclasificarse en orgánicos e inorgánicos, con objeto de facilitar su separación primaria y secundaria, de conformidad con el Programa Estatal para la Prevención y Gestión Integral de los Residuos, los programas municipales para la prevención y gestión integral de los residuos sólidos urbanos y demás ordenamientos legales aplicables.

**CAPÍTULO III**
**DE LAS OBLIGACIONES GENERALES**

**ARTÍCULO 138.**

1. Toda persona que genere residuos tiene la propiedad y responsabilidad de su manejo integral hasta su disposición final.

2. Toda persona física o moral que produzca mercancía y que para su comercialización utilice envolturas, empaques, envases, recipientes, embalajes o cualquier otro material inherente al producto final, y que resulten eliminados por sus consumidores por no ser parte de su aprovechamiento, uso o consumo, es generador de residuos y tendrá la responsabilidad que establece este Código para su manejo integral hasta su disposición final.

3. Esta prohibido el abandono o manejo incontrolado de los residuos y toda mezcla que dificulte su manejo integral. La responsabilidad inherente para el generador de los residuos subsiste aún cuando el generador transfiera los residuos a prestadores autorizados de servicio de manejo o a los Ayuntamientos o los depositen en los contenedores o sitios autorizados para tal efecto por las autoridades competentes.

4. Los residuos sólidos urbanos y de manejo especial que sean generados en el Estado, deberán ser manejados conforme a lo dispuesto en el presente Libro y demás disposiciones que resulten aplicables.

**ARTÍCULO 139.**

1. Es obligación de toda persona generadora de residuos sólidos urbanos y de manejo especial:

I. Minimizar la generación de residuos y llevar a cabo su separación;

II. Fomentar la reutilización y reciclaje de los residuos;

III. Cumplir con las disposiciones y normas técnicas aplicables al manejo integral de los residuos sólidos que genere;

IV. Poner en conocimiento de las autoridades competentes las infracciones que se estimen se hubieran cometido contra la normatividad de los residuos; y

V. Las demás que establezcan los ordenamientos jurídicos aplicables.

2. Para el cumplimiento de estas obligaciones la Agencia Ambiental y los Ayuntamientos conforme a sus respectivas atribuciones ejercerán las acciones de verificación, inspección y vigilancia de conformidad con este Código.

## ARTÍCULO 140.

Los grandes generadores de residuos sólidos urbanos y los generadores de residuos de manejo especial, están obligados a:

I. Registrarse ante la Agencia Ambiental y obtener autorización para el manejo de los residuos que generen;

II. Presentar planes de manejo, solicitar su validación, modificación y actualización, así como registrarlos ante la Agencia Ambiental;

III. Utilizar el sistema de manifiestos que establezca la Agencia Ambiental, para hacer el seguimiento de la generación y formas de manejo integral de sus residuos a lo largo de su ciclo de vida;

IV. Formular y mantener actualizadas las bitácoras en las que registren el volumen y tipo de residuos generados y la forma de manejo a la que fueron sometidos;

V. Operar el manejo integral de sus residuos por sí o a través de empresas de servicio de manejo, de conformidad con las disposiciones de este Libro y otros ordenamientos que resulten aplicables;

VI. Presentar a la Agencia Ambiental un informe anual de los volúmenes de generación y formas de manejo de los residuos de manejo especial generados; y

VII. Contar con un seguro ambiental, cuando así lo requiera la Agencia Ambiental.

## ARTÍCULO 141.

1. Las personas consideradas como microgeneradores de residuos peligrosos, en los términos de la Ley General de Residuos, una vez formalizados los convenios a que se refieren los artículos 12 y 13 de la misma, estarán obligadas a:

I. Registrarse ante la Agencia Ambiental y obtener autorización de los planes de manejo de los residuos que generen;

II. Sujetar los residuos peligrosos que generen, a los programas y planes de manejo que se establezcan para tal fin y a las condiciones que fije la Agencia Ambiental;

III. Trasladar sus residuos peligrosos a los centros de acopio autorizados o enviarlos a través de transportación autorizada, de conformidad con las disposiciones aplicables; y

IV. Cumplir las demás obligaciones dispuestas en este Código, la Ley General de Residuos y demás ordenamientos aplicables.

2. Una vez formalizado el convenio respectivo,  la Agencia Ambiental y, en su caso, los Ayuntamientos, podrán ejercer las acciones de verificación del cumplimiento de las normas de desarrollo sustentable.

**ARTÍCULO 142.**

De conformidad con lo que establece la Ley General de Residuos, una vez formalizado el convenio de coordinación respectivo, los residuos peligrosos que se generen en los domicilios y en oficinas públicas o privadas en cantidades iguales o mayores a las que generan los microgeneradores, deberán ser manejados de acuerdo con los programas y planes de manejo según lo dispuesto en este Libro.

**TÍTULO QUINTO**
**DE LAS ETAPAS DEL MANEJO INTEGRAL DE RESIDUOS**
**CAPÍTULO I**
**DE LAS AUTORIZACIONES**

**ARTÍCULO 143.**

1. El manejo integral de los residuos comprende las siguientes etapas:

I. Reducción en la fuente;

II. Separación;

III. Aprovechamiento, incluyendo la reutilización y el reciclaje;

IV. Limpia o barrido;

V. Acopio;

VI. Recolección;

VII. Almacenamiento;

VIII. Traslado o transportación;

IX. Valorización;

X. Co-procesamiento;

XI. Tratamiento; y

XII. Disposición final.

2. La etapa de limpia o barrido se excluye del manejo integral de residuos de manejo especial.

3. Tratándose de los residuos sólidos urbanos, las etapas de limpia o barrido, recolección, traslado o transportación, tratamiento y disposición final estarán a cargo de los Ayuntamientos, sujetándose a las disposiciones del Código Municipal para el Estado de Tamaulipas y demás ordenamientos aplicables.

4. En caso de que los Ayuntamientos promuevan sitios de disposición final de residuos sólidos urbanos, deberán contar con la previa autorización de la Agencia Ambiental, en los términos de este Código.

**ARTÍCULO  144.**

1. Se requiere autorización de la Agencia Ambiental para llevar a cabo las etapas del manejo integral de residuos de manejo especial establecidas en las fracciones II, III y de la V a la XII del párrafo 1 del artículo anterior.

2. Los Ayuntamientos podrán autorizar las etapas del manejo integral de los residuos sólidos urbanos señaladas en las fracciones III, V, VII y X del párrafo 1 del artículo anterior.

3. Las autorizaciones deberán otorgarse por tiempo determinado y podrán ser prorrogadas si se solicitan con una anticipación a su vencimiento de, al menos, la décima parte de su vigencia y se demuestra que se han cumplido con las disposiciones aplicables.

## ARTÍCULO 145.

1. Para el otorgamiento de autorizaciones se requiere:

I. Ubicarse en lugares que reúnan los criterios que establezca la normatividad aplicable cuando los mismos sean requeridos para la etapa que se gestiona la autorización; así como acreditar las condiciones requeridas para cada una de las etapas específicas, tales como vehículos apropiados, equipo, tecnología, capacitación, conocimiento de la gestión integral de los residuos y, en general, los recursos humanos, técnicos y financieros que garanticen el óptimo manejo de los mismos;

II. Presentar un plan de manejo registrado ante la Agencia Ambiental para la operación segura y ambientalmente adecuada de los residuos;

III. Contar con programas para prevenir y responder a contingencias ambientales o emergencias ecológicas y accidentes y, en su caso, presentar a la Agencia Ambiental el seguro que ampare la reparación por responsabilidad civil y de restauración ambiental;

IV. Contar con personal capacitado y continuamente actualizado;

V. Otorgar garantías para asegurar que al cierre de las operaciones de sus instalaciones, éstas queden libres de residuos y no presenten niveles de contaminación que puedan representar un riesgo para la salud de las personas, los recursos naturales , el medio ambiente y los ecosistemas; y

VI. Obtener una autorización en materia de impacto ambiental, en caso de que sea necesario en términos de las disposiciones aplicables.

2. Además de los requisitos señalados en este artículo, la persona física o moral deberá atender las condiciones de carácter técnico que por la naturaleza del servicio le sean exigibles por la Agencia Ambiental, mismas que formarán parte de la autorización.

## ARTÍCULO 146.

Durante la vigencia de la autorización, la empresa de servicio de manejo deberá presentar informes acerca de los residuos recibidos y las formas de manejo a los que fueron sometidos en los términos de aquella.

## ARTÍCULO 147.

1. Son causas de revocación de las autorizaciones:

I. La falsedad en la información proporcionada a la Agencia Ambiental;

II. La contravención a la normatividad aplicable en las actividades de manejo integral de los residuos;

III. La ausencia de renovación de las garantías otorgadas;

IV. El incumplimiento en la reparación del daño ambiental que se cause con motivo de las actividades autorizadas; y

V. El incumplimiento de las obligaciones establecidas en la autorización, en el presente Código y demás disposiciones aplicables.

2. Para la revocación se ejercerán las disposiciones contenidas en este Código.

**ARTÍCULO 148.**

Las etapas que comprenden el manejo integral de residuos se deberán llevar a cabo conforme a lo que establezca este Libro y demás disposiciones aplicables.

**CAPÍTULO II**
**DE LA REDUCCIÓN, SEPARACIÓN Y APROVECHAMIENTO**

**ARTÍCULO 149.**

1. Es responsabilidad de todo generador de residuos sólidos urbanos y de manejo especial, buscar opciones e implementar acciones para reducir o minimizar la generación o, en su caso, procurar la biodegradabilidad de los mismos.

2. Todo generador de residuos deberá llevar a cabo su separación con objeto de evitar que se mezclen con otros generados en las actividades que realice, y propiciará su reutilización, reciclaje y no contaminación.

**ARTÍCULO 150.**

1. El Ejecutivo del Estado y los Ayuntamientos instrumentarán sistemas de separación primaria y secundaria de los residuos sólidos urbanos y de manejo especial.

2. Asimismo, realizarán campañas para fomentar la separación de residuos desde la fuente de su generación.

**ARTÍCULO 151.**

Los contenedores que se coloquen en la vía pública deberán ser diferenciados y fácilmente identificables para distinguir aquellos destinados a los residuos sólidos urbanos orgánicos e inorgánicos.

**ARTÍCULO 152.**

1. Toda persona tendrá la obligación de buscar el mejor aprovechamiento y utilidad de los residuos.

2. Para tal efecto en sus actividades domiciliarias, industriales, comerciales o de servicios buscará reutilizar los residuos que genere.

**ARTÍCULO 153.**

La limpieza o barrido de áreas y vialidades públicas, así como la recolección de residuos sólidos urbanos y su traslado o transportación compete a los Ayuntamientos, sin detrimento de las disposiciones reglamentarias y sin perjuicio de las concesiones que otorguen y los términos de las mismas.

**ARTÍCULO 154.**

1. La recolección de residuos sólidos urbanos se realizará de acuerdo con los programas administrativos que adopten los Ayuntamientos, los que deberán darse a conocer en el Periódico Oficial del Estado, estableciéndose cuando menos las rutas, lugares, días y horarios en que se realizará.

2. El acopio y el almacenamiento de residuos sólidos urbanos deberán observar las disposiciones administrativas que determine el Ayuntamiento, a fin de que el lugar y la actividad cumplan con las previsiones de este Código, siempre que no se trate de una estación de transferencia, la cual será competencia de la Agencia Ambiental.

## CAPÍTULO III
## DE LA RECOLECCIÓN Y TRANSPORTE

**ARTÍCULO 155.**

La recolección de residuos de manejo especial es obligación de sus generadores, quienes podrán contratar la realización de esta etapa con un prestador autorizado de servicio de manejo de residuos.

**ARTÍCULO 156.**

Los vehículos destinados a la recolección y traslado o transportación de residuos, deberán contar con contenedores distintos que hagan factible su acopio por separado.

**ARTÍCULO 157.**

1. La transportación de residuos sólidos urbanos y de manejo especial en el Estado, se realizará con la autorización de la Agencia Ambiental y los Ayuntamientos, conforme a sus respectivas competencias.

2. Para la transportación de residuos sólidos urbanos y de manejo especial se deberán considerar:

I. Las condiciones necesarias para el transporte, de acuerdo con el tipo de residuos de que se trate;

II. Las medidas de seguridad en el transporte, tanto para la salud de las personas, el medio ambiente y el desarrollo sustentable; y

III. Las mejores rutas de transporte, dependiendo de los lugares de salida y destino de los residuos.

**ARTÍCULO 158.**

Los sitios destinados al tratamiento y disposición final de residuos sólidos urbanos y de manejo especial, además de cumplir con los requisitos señalados en el presente Libro, deberán contar con la autorización de impacto ambiental en los términos que se establecen en el Libro Segundo de este Código y demás ordenamientos aplicables.

## CAPÍTULO IV
## DE LA VALORIZACIÓN DE LOS RESIDUOS
## SECCIÓN PRIMERA
## DEL RECICLAJE

**ARTÍCULO 159.**
Los productores y comercializadores cuyos productos y servicios generen residuos susceptibles de valorización mediante procesos de reciclaje, instrumentarán planes de manejo que establezcan las acciones para minimizar la generación de sus residuos, prever su manejo responsable y orientar a los consumidores sobre las oportunidades y beneficios de aprovechamiento con base en dicha valorización.

**ARTÍCULO 160.**

La Agencia Ambiental, con la participación de la Secretaría de Desarrollo Económico y del Empleo, en coordinación con los Ayuntamientos, y de conformidad con el Programa Estatal para la Prevención y Gestión Integral de los Residuos, instrumentarán programas para la utilización de materiales o

subproductos provenientes de los residuos, a fin de promover mercados para su aprovechamiento, vinculando a los sectores social y privado.

**ARTÍCULO 161.**

Los residuos que hayan sido seleccionados para su reciclaje y que por sus características no puedan ser procesados, deberán enviarse para su tratamiento o, en su caso, disposición final, conforme a lo dispuesto por el Reglamento del presente Libro.

**SECCIÓN SEGUNDA**
**DEL COMPOSTEO**

**ARTÍCULO 162.**

1. Los Ayuntamientos diseñarán, construirán y operarán centros de composteo de residuos sólidos urbanos orgánicos, de conformidad con lo que se establezca en el Programa Estatal para la Prevención y Gestión Integral de los Residuos y en los Programas Municipales correspondientes.

2. Para tal efecto, podrán solicitar el apoyo técnico de la Agencia Ambiental.

3. La Agencia Ambiental y los Ayuntamientos fomentarán esta actividad a través de programas específicos en donde se expongan sus beneficios, se incentive su realización y se genere la importancia del aprovechamiento y valorización de los residuos.

**ARTÍCULO 163.**

1. Los lineamientos sobre las características apropiadas de los residuos para la producción de composta o criterios para cada tipo de composta, se fijarán en las Normas Ambientales Estatales que al efecto se expidan.

2. La composta que no pueda ser aprovechada deberá ser enviada a los rellenos sanitarios para su disposición final.

**ARTÍCULO 164.**
Toda persona que lleve a cabo procesos de tratamiento de residuos sólidos urbanos orgánicos para composta, deberá cumplir con las disposiciones que establecen las Normas Oficiales Mexicanas y las Normas Ambientales Estatales en la materia.



**TÍTULO SEXTO**
**PREVENCIÓN, CONTROL Y REMEDIACIÓN DEL SUELO CONTAMINADO**
**CAPÍTULO I**
**DE LA PREVENCIÓN Y CONTROL DE SITIOS**

**ARTÍCULO 165.**
Toda persona que genere y maneje residuos es responsable de los daños que esas actividades puedan causar a la salud de las personas, al medio ambiente y al desarrollo sustentable.

**ARTÍCULO 166.**
La selección, operación y clausura de sitios de disposición final de los residuos se deberá realizar de acuerdo a la Ley General, Ley General de Residuos, este Código, las Normas Oficiales Mexicanas, las Normas Ambiéntales Estatales y demás disposiciones aplicables.

**ARTÍCULO 167.**
En los sitios de disposición final se deberá:

I. Evitar el confinamiento de residuos líquidos o semilíquidos; y

II. Evitar el confinamiento de residuos mezclados que sean incompatibles y que puedan provocar afectaciones al medio ambiente.

## CAPÍTULO II
## DE LA REMEDIACIÓN DE SITIOS CONTAMINADOS

**ARTÍCULO 168.**
Quienes resulten responsables de la contaminación de sitios, así como de daños a la salud de las personas como consecuencia de aquélla, sin demérito de las sanciones  administrativas o penales que procedan, estarán obligados a:

I. Llevar a cabo las acciones necesarias para remediar las condiciones de los sitios, de acuerdo a lo establecido en las disposiciones aplicables, y,

II. Reparar el daño causado a terceros o al medio ambiente, de conformidad con la legislación aplicable en caso de que la remediación no fuere posible.

**ARTÍCULO 169.**
Los propietarios, poseedores y operadores de sitios contaminados con residuos regulados por el presente Libro, serán responsables solidarios de la reparación de los daños ocasionados, a la salud de las personas,  a la calidad de vida de la población, a los recursos naturales y a los ecosistemas.

**ARTÍCULO 170.**
1. La Agencia Ambiental, en coordinación con la Secretaría de Salud, establecerá los lineamientos generales para llevar a cabo la evaluación del riesgo ambiental y la caracterización de sitios contaminados con residuos regulados por este Código.

2. La Agencia Ambiental dispondrá, con base en dichos lineamientos, las acciones de remediación que procedan.

3. Los lineamientos a los que se refiere el párrafo 1 de este artículo se publicarán en el Periódico Oficial del Estado.

**ARTÍCULO 171.**
Las acciones de remediación de sitios contaminados previstas en este Capítulo, se llevarán a cabo mediante programas elaborados y autorizados por la Agencia Ambiental y la Secretaría de Salud, de conformidad con los lineamientos a los que se refiere el párrafo 2 del artículo anterior.

**ARTÍCULO 172.**
La regulación del uso del suelo, los programas de ordenamiento ecológico y las características hidrológicas del sitio, deberán ser considerados al determinar el grado de remediación de sitios contaminados con residuos regulados por este Código.

**ARTÍCULO 173.**
1. En caso de que no sea posible identificar al responsable de la contaminación por residuos de un sitio, coordinadamente la Agencia Ambiental y los Ayuntamientos llevarán a cabo las acciones necesarias para su remediación, conforme a la disposición presupuestal con que cuenten.

2. Si el Estado o los Ayuntamientos llevan a cabo la remediación a que se refiere el párrafo anterior, trasladarán las erogaciones presupuestales al propietario o poseedor a quien beneficiaron esas acciones.

## LIBRO CUARTO
## DE LAS ÁREAS NATURALES PROTEGIDAS

### ESTATALES Y MUNICIPALES

### TÍTULO PRIMERO
### DISPOSICIONES GENERALES
### CAPÍTULO ÚNICO
### DEL OBJETO

**ARTÍCULO 174.**
El presente Libro tiene por objeto normar el establecimiento, administración y manejo de las áreas naturales protegidas de competencia estatal y municipal.

**ARTÍCULO 175.**
1. Todo el territorio del Estado es sujeto de preservación, restauración y protección. En específico se protegerán:
I. Aquellas  áreas naturales en las que los ambientes y sus recursos naturales originales no hayan sido significativamente alterados por la actividad del ser humano; y

II. Aquellas áreas naturales en las que a pesar de ya haber sido afectadas, requieran, por su especial relevancia para el Estado o su población, ser sometidas a programas de preservación, conservación, remediación, recuperación, rehabilitación o restauración.

2. Las autoridades competentes emitirán las declaratorias de las áreas naturales protegidas, en las cuales no se permitirá la realización de obras o actividades distintas de aquellas que se encuentren expresamente contempladas en el decreto que las creó y en el programa de manejo que para el efecto se emita, de conformidad con lo establecido en el presente Código.

3. La autorización de obras o actividades dentro de las áreas naturales protegidas estatales y municipales estará sujeta a la presentación de la manifestación de impacto ambiental correspondiente, en la cual se deberá demostrar, entre otras cuestiones, la congruencia con los criterios que dieron origen a la creación del área natural protegida, su programa de manejo, la compatibilidad con el Programa del Ordenamiento Ecológico del Estado, los Programas de Desarrollo Urbano Municipal, así como del beneficio que las obras o actividades generarían a la comunidad sin detrimento de la integridad del ecosistema o los servicios ambientales que nos prestan.

**ARTÍCULO 176.**
Para los efectos de este Libro se entiende por:

I. Declaratoria: El decreto expedido por el titular del Ejecutivo del Estado mediante el cual se establece un área natural protegida.

II. Monitoreo: El proceso sistemático de evaluación de factores ambientales y parámetros biológicos;

III. Patrimonio natural: Los monumentos naturales constituidos por formaciones físicas y biológicas o por grupos de esas formaciones que tengan un valor excepcional desde el punto de vista estético o científico. Estos incluyen las formaciones geológicas y fisiográficas y las zonas estrictamente delimitadas que constituyan el hábitat de especies animal y vegetal amenazadas;

IV. Programa de manejo del área natural protegida: El instrumento rector de planeación y regulación que establece las actividades, acciones y lineamientos básicos para el manejo y la administración del área natural protegida respectiva;

V. Zona de influencia: Las superficies aledañas a la poligonal de un área natural protegida que mantienen una estrecha interacción social, económica y ambiental con ésta.

### TÍTULO SEGUNDO
### DE LAS AUTORIDADES
### CAPÍTULO ÚNICO

**ARTÍCULO 177.**
El Ejecutivo del Estado, por conducto de la Agencia Ambiental tendrá las siguientes atribuciones:

I. Proponer el estudio correspondiente a la declaración de áreas naturales protegidas estatales y proponer la expedición del decreto correspondiente;

II. Realizar los estudios justificativos para la expedición de declaratorias para el establecimiento de áreas naturales protegidas estatales, considerándose la participación de los sectores público, social, privado y académico;

III. Formular el proyecto de decreto de declaratoria de áreas naturales protegidas estatales y en su caso, llevar a cabo su ejecución;

IV. Administrar el Sistema Estatal de Áreas Naturales Protegidas;

V. Manejar, administrar y vigilar las áreas naturales protegidas estatales así como el cobro de los derechos que sean aplicables por su uso, goce o aprovechamiento;

VI. Elaborar, expedir y aplicar  los programas de manejo de las áreas naturales protegidas estatales, así como participar con carácter de coadyuvante en la realización de los programas de las áreas protegidas de competencia municipal;

VII. Coordinar y ejercer las acciones en materia de protección, verificación y vigilancia de las áreas naturales protegidas estatales;

VIII. Regular y controlar el uso y aprovechamiento de los recursos naturales en las actividades productivas que se pretendan realizar dentro de las áreas naturales protegidas estatales;

IX. Fomentar, instrumentar, construir, administrar y aplicar los instrumentos económicos para la compensación de servicios ambientales generados en las áreas naturales protegidas estatales, en coordinación con las demás dependencias y entidades de la administración  pública estatal que correspondan;

X. Participar en la elaboración del padrón de prestadores de servicios de turismo que compete formular a la Secretaría de Turismo, a fin de que se incorporen aquellos que desarrollan actividades en las áreas naturales protegidas estatales;

XI. Propiciar el acceso del Estado a financiamiento público y privado para la administración, manejo, protección, conservación, preservación y restauración de las áreas naturales protegidas estatales, así como para los incentivos económicos y estímulos fiscales para las personas y organizaciones que participen en el manejo de dichas áreas;

XII. Promover ante el Ejecutivo Federal, en términos de lo dispuesto por la Ley General,  la incorporación de criterios ambientales y, específicamente de áreas destinadas a la preservación de los ecosistemas y su biodiversidad, para la distribución de las participaciones a los Estados y los Municipios;

XIII. Coadyuvar en el establecimiento, administración y manejo de las áreas naturales protegidas de competencia de la Federación, así como en la administración y vigilancia de las mismas, previo convenio de coordinación con ese ámbito de competencia;

XIV. Regular el impacto ambiental conforme a las atribuciones previstas en el Libro Segundo de este Código, por obras y actividades que se pretendan desarrollar en las áreas naturales protegidas, de conformidad con la declaratoria de su establecimiento y su programa de manejo; y

XV. Las demás que le confieran la Ley General, este Código, sus Reglamentos y demás disposiciones aplicables.

**ARTÍCULO 178.**
La determinación de áreas naturales protegidas estatales tendrá como objeto:

I. Preservar los ambientes naturales representativos de las diferentes regiones biogeográficas y ecológicas y de los ecosistemas más frágiles para asegurar el equilibrio y la continuidad de los procesos evolutivos, biológicos y ecológicos que se tutelan en este Código y demás disposiciones que del mismo emanen;

II. Preservar y conservar los ambientes naturales dentro de las zonas de los asentamientos humanos y su entorno para mantener el equilibrio ecológico, asegurar el desarrollo sustentable y contribuir a mejorar la calidad de vida de la población;

III. Asegurar que el aprovechamiento racional de los ecosistemas y sus elementos, así como el cuidado de la biodiversidad del territorio del Estado se realice de manera sustentable, garantizando la preservación de las especies que están en peligro de extinción, las amenazadas, las endémicas, las raras y las que se encuentran sujetas a protección especial, de conformidad con las disposiciones jurídicas aplicables, mismas que en ningún caso serán objeto de aprovechamiento para fines comerciales;

IV. Salvaguardar la integridad genética de las especies silvestres que habitan en las áreas naturales protegidas y sus entornos, particularmente las endémicas, las amenazadas o en peligro de extinción;

V. Proporcionar un campo propicio para la investigación científica, el estudio y monitoreo de los ecosistemas, su equilibrio y la educación sobre el medio natural y la biodiversidad;

VI. Generar, rescatar y divulgar conocimientos, prácticas y tecnologías tradicionales o nuevas que permitan el aprovechamiento sustentable de la biodiversidad dentro del territorio del Estado;

VII. Proteger los elementos y entornos naturales de zonas, monumentos y vestigios arqueológicos, históricos y artísticos, zonas turísticas y otras áreas de importancia para la recreación, la cultura e identidad nacional y estatal, así como de las comunidades autóctonas asentadas en el territorio del Estado;

VIII. Proteger poblados, vías de comunicación, instalaciones industriales, aprovechamientos agrícolas, mediante zonas forestales en montañas en donde se originen torrentes; el ciclo hidrológico en cuencas así como las demás que tiendan a la protección de elementos circundantes con los que se relacionen medio ambientalmente el área; y

IX. Proteger la biodiversidad, el medio ambiente y la generación de los servicios ambientales.

**ARTÍCULO 179.**
1. Las áreas naturales protegidas se constituirán en zonas representativas de uno o más ecosistemas, en las que habitan especies o se produzcan servicios ambientales de importancia para el Estado.

2. Las autoridades municipales no podrán someter a categoría de protección, ningún área natural que se encuentre dentro del perímetro de una ya protegida por las autoridades estatales.

3. Las áreas naturales protegidas estatales constituyen en su conjunto el Sistema Estatal de Áreas Naturales Protegidas.

4. La Agencia llevará el registro de las áreas integrantes del Sistema Estatal de Áreas Naturales Protegidas en el que consignarán los datos de su inscripción en el Registro Público de la Propiedad Inmueble y del Comercio o en su caso ante los Registros respectivos.

**ARTÍCULO 180.**

1. Los propietarios, poseedores o titulares de derechos sobre tierras, aguas y bosques comprendidos dentro de áreas naturales protegidas, deberán sujetarse a las declaratorias por las que se constituyan dichas áreas, así como a las demás previsiones contenidas en el programa de manejo y en los programas de ordenamiento ecológico que correspondan.

2. Todos los actos, convenios o contratos relativos a la propiedad, posesión o cualquier derecho relacionado con bienes inmuebles ubicados en áreas naturales protegidas estatales deberán contener referencia de la declaratoria correspondiente y de sus datos de inscripción en el Registro Público de la Propiedad Inmueble y del Comercio o de los demás Registros competentes.

**ARTÍCULO 181.**
Las áreas naturales podrán ser objeto de protección bajo las siguientes categorías:

I. De competencia estatal:

a) Áreas ecológicas protegidas;

b) Parques estatales;

c) Zonas especiales sujetas a conservación ecológica;

d) Zonas de restauración;

e) Paisajes naturales;

f) Reservas naturales comunitarias o privadas;

g) Los santuarios del agua; y

h) Áreas destinadas voluntariamente a la conservación.

II. De competencia municipal:

a) Parques urbanos;

b) Jardines naturales;

c)   Zonas de conservación ecológica; y

d) Las demás que determinen otras disposiciones aplicables.

**ARTÍCULO 182.**
Para el cumplimiento de las disposiciones del presente Libro, en relación a las áreas naturales protegidas, se realizará una división y subdivisión que permita identificar y delimitar las porciones del territorio que la conforman, acorde con sus elementos biológicos, físicos y socioeconómicos, los cuales constituyen un esquema integral y dinámico, por lo que cuando se realice la delimitación territorial de las actividades en las áreas naturales protegidas, ésta se llevará a cabo a través de la siguientes zonas, de acuerdo a su categoría de manejo:

I. Las zonas núcleo: tendrán como principal objetivo la preservación de los ecosistemas a mediano y largo plazos, en donde se podrán autorizar las actividades de preservación de los ecosistemas y sus elementos, de investigación y de colecta científica y educación ambiental, y limitarse o prohibirse aprovechamientos que alteren los ecosistemas; y

II. Las zonas de amortiguamiento: tendrán como principal objetivo la conservación de los ecosistemas a largo plazo, a través de la orientación de las actividades de aprovechamiento que ahí se lleven a cabo.

**ARTICULO. 183.**
Las zonas núcleo podrán estar conformadas por las siguientes subzonas:

I. De protección: aquellas superficies dentro del área natural protegida que han sufrido muy poca alteración, así como ecosistemas relevantes o frágiles y fenómenos naturales que requieren de un cuidado especial para asegurar su conservación a largo plazo.

En las subzonas de protección sólo se permitirá realizar actividades de monitoreo del ambiente y de investigación científica que no implique la extracción o el traslado de especímenes, ni la modificación del hábitat.

II. De uso restringido: Aquellas superficies en buen estado de conservación donde se busca mantener las condiciones actuales de los ecosistemas, e incluso mejorarlas en los sitios que así se requieran, y en las que se podrán realizar excepcionalmente actividades de aprovechamiento que no modifiquen los ecosistemas y que se encuentren sujetas a estrictas medidas de control.
En las subzonas de uso restringido sólo se permitirán la investigación científica y el monitoreo del ambiente, las actividades de educación ambiental y turismo de bajo impacto ambiental que no impliquen modificaciones de las características o condiciones naturales originales, y la construcción de instalaciones de apoyo, exclusivamente para la investigación científica o el monitoreo del ambiente.

**ARTICULO 184.**
1. Las zonas de amortiguamiento podrían estar conformadas básicamente por las siguientes subzonas:

I. De preservación: aquellas superficies en buen estado de conservación que contienen ecosistemas relevantes o frágiles, o fenómenos naturales relevantes, en las que el desarrollo de actividades requiere de un manejo específico, para lograr su adecuada conservación.

En las subzonas de preservación sólo se permitirán la investigación científica y el monitoreo del ambiente, las actividades de educación ambiental y las actividades productivas de bajo impacto ambiental que no impliquen modificaciones sustanciales de las características o condiciones naturales originales, promovidas por las comunidades locales o con su participación, y que se sujeten a una superficie constante de los posibles impactos negativos que ocasionen, de conformidad con lo dispuesto en los ordenamientos jurídicos y reglamentarios que resulten aplicables.

II. De uso tradicional: aquellas superficies en donde los recursos naturales han sido aprovechados de manera tradicional y continua, sin ocasionar alteraciones significativas en el ecosistema. Están relacionadas particularmente con la satisfacción de las necesidades socioeconómicas y culturales de los habitantes del área protegida.

En dichas zonas no podrán realizarse actividades que amenacen o perturben la estructura natural de las poblaciones y ecosistemas o los mecanismos propios para su recuperación. Sólo se podrán realizar actividades de investigación científica, educación ambiental y de turismo de bajo impacto ambiental, así como la infraestructura de apoyo que se requiera, utilizando ecotécnicas y materiales tradicionales de construcción propios de la región, aprovechamiento de los recursos naturales para la satisfacción de las necesidades económicas básicas y de autoconsumo de los pobladores, utilizando métodos tradicionales enfocados a la sustentabilidad, conforme lo previsto en las disposiciones legales y reglamentarias aplicables.

III. De aprovechamiento sustentable de los recursos naturales: aquellas superficies en las que los recursos naturales pueden ser aprovechados, y que por motivos de uso y conservación de sus ecosistemas a largo plazo, es necesario que todas las actividades productivas se efectúen bajo esquemas de aprovechamiento sustentable.

En dichas subzonas se permitirán exclusivamente el aprovechamiento y manejo de los recursos naturales renovables, siempre que estas acciones generen beneficios preferentemente para los pobladores locales, la investigación científica, la educación ambiental y el desarrollo de actividades turísticas de bajo impacto ambiental.

Asimismo, el aprovechamiento sustentable de la vida silvestre podrá llevarse a cabo siempre y cuando se garantice su reproducción controlada o se mantengan o incrementen las poblaciones de las especies aprovechadas y el hábitat del que dependen; y se sustenten en los planes correspondientes autorizados por la Agencia, conforme a las disposiciones legales y reglamentarias aplicables.

IV. De aprovechamiento sustentable de los ecosistemas: aquellas superficies con usos agrícolas y pecuarios actuales.

En dichas subzonas se podrán realizar actividades agrícolas y pecuarias de baja intensidad que se lleven a cabo en predios que cuenten con aptitud para este fin, y en aquellos en que dichas actividades se realicen de manera cotidiana, así como actividades de agroforestería y silvopastoriles, siempre y cuando sean compatibles con las acciones de conservación del área y contribuyan al control de la erosión y a evitar la degradación de los suelos.

La ejecución de las prácticas agrícolas, pecuarias, agroforestales y silvopastoriles que no estén siendo realizadas en forma sustentable, deberán orientarse hacia la sustentabilidad y a la disminución del uso de agroquímicos e insumos externos para su realización.

V. De aprovechamiento especial: aquellas superficies generalmente de extensión reducida, con presencia de recursos naturales que son esenciales para el desarrollo social, y que deben ser explotadas sin deteriorar el ecosistema, modificar el paisaje de forma sustancial, ni causar impactos ambientales irreversibles en los elementos naturales que conformen.

En dichas subzonas sólo se podrán ejecutar obras públicas o privadas para la instalación de infraestructura o explotación de recursos naturales, que generen beneficios públicos, guarden armonía con el paisaje, no provoquen desequilibrio ecológico grave y estén sujetos a estrictas regulaciones de uso sustentable de los recursos naturales.

VI. De uso público: Aquellas superficies que presentan atractivos naturales para la realización de actividades de recreación y esparcimiento, en donde es posible mantener concentraciones de visitantes, en los límites que se determinen con base en la capacidad de carga de los ecosistemas.

En dichas subzonas se podrán llevar a cabo exclusivamente la construcción de instalaciones para el desarrollo de servicios de apoyo al turismo, a la investigación y monitoreo del ambiente, y la educación ambiental, congruentes con los propósitos de protección y manejo de cada área natural protegida.

VII. De asentamiento humano: Aquellas superficies donde se ha llevado a cabo una modificación sustancial o desaparición de los ecosistemas originales, debido al desarrollo de asentamientos humanos, previos a la declaratoria del área protegida; y

VIII. De recuperación: Aquellas superficies en las que los recursos naturales han resultado severamente alterados o modificados, y que serán objeto de programas de recuperación y rehabilitación.

Para su rehabilitación en estas subzonas deberán utilizarse preferentemente especies nativas de la región o, en su caso, especies compatibles con el funcionamiento y la estructura de los ecosistemas originales.

2. En las zonas de amortiguamiento deberán tomarse en consideración las actividades productivas que lleven a cabo las comunidades que ahí habiten al momento de la expedición de la declaratoria respectiva, basándose en lo previsto tanto en el Programa de Manejo respectivo como en los Programas de Ordenamiento Ecológico que resulten aplicables.

**ARTÍCULO 185.**
En las zonas núcleo de las áreas naturales protegidas queda expresamente prohibido:

I. Verter o descargar contaminantes en el suelo, subsuelo y cualquier clase de cauce, vaso o acuífero, así como desarrollar cualquier actividad contaminante;

II. Interrumpir, rellenar, desecar o desviar los flujos hidráulicos;

III. Realizar actividades cinegéticas o de explotación y aprovechamiento de especies de flora y fauna silvestres, sin la autorización correspondiente; y

IV. Ejecutar acciones que contravengan lo dispuesto por este Código, la declaratoria respectiva y las disposiciones que de ella se deriven o los demás ordenamientos aplicables.

**ARTÍCULO 186.**
1. Las áreas ecológicas y los parques  estatales se constituirán conforme a lo dispuesto por este Libro y demás disposiciones aplicables, sobre la base de que se trate de representaciones biogeográficas, a nivel estatal, de uno o más ecosistemas que sean significativos por su belleza escénica, su valor científico, educativo o de recreo, su valor histórico o por otras razones ambientales de interés general.

2. Dichas áreas serán de uso público y en ellas podrá permitirse la realización de actividades relacionadas con su protección, el incremento de su flora y fauna y su preservación, así como actividades de educación ambiental, turísticas y recreativas.

**ARTÍCULO 187.**
1. Corresponde a la Agencia Ambiental la organización, administración, manejo  y vigilancia de las áreas naturales y los parques  estatales, los que podrán coordinarse con las dependencias y entidades federales o municipales, o las demás dependencias o entidades estatales, así como con instituciones públicas y privadas no lucrativas, para la conservación, fomento y debido aprovechamiento.

 2. Los aprovechamientos forestales en áreas naturales protegidas se autorizarán en cuanto exista, a juicio de las instancias competentes, dictamen de la conveniencia del mismo en términos ambientales.

**ARTÍCULO 188.**
1. Las zonas especiales sujetas a conservación ecológica, son aquellas constituidas en zonas circunvecinas a los asentamientos humanos, en las que existen uno o más ecosistemas en buen estado de conservación, destinadas a preservar los elementos naturales indispensables al equilibrio ecológico y al bienestar general.

2. En dichas áreas podrá permitirse la realización de actividades relacionadas con la preservación, repoblación, propagación, aclimatación, refugio e investigación de las especies mencionadas dentro del programa de manejo respectivo, así como las relativas a la educación y difusión de la materia.

3. Asimismo, podrá autorizarse el aprovechamiento de los recursos naturales a las comunidades que ahí habiten en el momento de la expedición de la declaratoria respectiva, o que resulten posibles según los estudios que se realicen, pero en todo momento deberán  sujetarse a las Normas Oficiales Mexicanas, las Normas Ambientales Estatales y los usos de suelo que al efecto se establezcan en la propia declaratoria o en las resoluciones que las modifiquen.

**ARTÍCULO 189.**
En el establecimiento, administración y manejo  de las áreas naturales protegidas a que se refiere el párrafo 3 del artículo anterior, participarán habitantes de los asentamientos humanos de la región, de conformidad con los convenios de concertación que al efecto se celebren, con objeto de propiciar el desarrollo integral de la comunidad y asegurar la protección de las áreas naturales protegidas de competencia estatal y municipal.

**ARTÍCULO 190.**
1. Los paisajes naturales se establecerán conforme a este Libro y al Reglamento del mismo, en áreas que contengan uno o varios elementos naturales de importancia estatal, que unan dos o mas áreas

naturales protegidas, consistentes en lugares u objetivos naturales que por su carácter único y excepcional, interés estético, valor histórico o científico se resuelva incorporar a un régimen de protección, aunque no tengan la variedad de ecosistemas ni la superficie necesaria para ser incluidos en otras categorías de manejo.

2. En los paisajes naturales se permitirán las actividades propias de las comunidades previamente asentadas, así como las relativas a la recreación, la cultura, la preservación de sus ecosistemas y aspectos arquitectónicos, siempre y cuando sean congruentes con el programa de manejo que al efecto se emita y los objetivos de protección de la declaratoria correspondiente.

**ARTÍCULO 191.**
1. Las reservas naturales comunitarias o privadas, podrán ser constituidas de manera voluntaria por sus propietarios o legítimos poseedores, sobre cualquier tipo de terreno, quienes podrán imponer, con base en estudios que así lo justifiquen, las medidas de protección que consideren pertinentes.

2. La administración, manejo y vigilancia de estas áreas naturales correrán por cuenta de los propietarios o poseedores, mientras que el plan de manejo se hará de manera conjunta con las autoridades.

3. Las autoridades estatales o municipales, según corresponda, prestarán la colaboración necesaria para la consecución de los objetivos por los que se haya constituido el área correspondiente.

**ARTÍCULO 192.**
Los santuarios del agua se establecerán conforme este Libro y su Reglamento en lugares que sean necesarios para preservar las condiciones naturales que permitan la continuidad del ciclo hidrológico, entendiendo éste como el proceso de lluvia-evaporación-escurrimiento-infiltración-lluvia, siendo esencial para el hombre y los ecosistemas y que además son espacios que albergan a la biodiversidad acuática y terrestre.

**ARTÍCULO 193.**
Los parques urbanos son aquellas áreas de uso público, constituidos en los centros de población para obtener y preservar el equilibrio de los ecosistemas urbanos y los elementos de la naturaleza, de manera que se proteja un ambiente sano, el esparcimiento de la población y valores artísticos, históricos y de belleza natural que sean significativos para la localidad.

**ARTÍCULO 194.**
Los jardines naturales estarán integrados por camellones, andadores, jardines escolares y, en general, cualquier área de uso público en zonas industriales o circunvecinas de los asentamientos humanos, en las que existan ecosistemas en buen estado, que se destinen a preservar los elementos naturales indispensables para el equilibrio ambiental y el bienestar de la población.

**ARTÍCULO 195.**
Las zonas de restauración ambiental, se constituirán en las áreas que presenten procesos acelerados de deterioro del suelo que impliquen la pérdida de recursos naturales de difícil regeneración, recuperación o afectaciones irreversibles a los ecosistemas o sus elementos.

**TÍTULO TERCERO**
**DE LAS DECLARATORIAS Y ADMINISTRACIÒN DE ÁREAS NATURALES PROTEGIDAS**
**CAPÍTULO I**
**DE LAS DECLARATORIAS**

**ARTÍCULO 196.**
1. Corresponde al Ejecutivo del Estado la expedición y publicación en el Periódico Oficial del Estado de las declaratorias que establezcan o modifiquen las áreas naturales protegidas estatales, conforme a lo dispuesto en este Código, Reglamento de este Libro y los estudios técnicos que así lo fundamenten.

2. Los Ayuntamientos establecerán las áreas naturales protegidas municipales, conforme a lo dispuesto por este Código, el Reglamento de este Libro y demás disposiciones aplicables.


**ARTÍCULO 197.**
1. Previamente a la expedición de las declaratorias para el establecimiento de las áreas naturales protegidas a que se refiere el párrafo 1 del artículo anterior, la Agencia Ambiental deberá realizar los estudios que lo justifiquen en términos del presente Libro, los cuales deberán ser puestos a disposición del público.

2. Asimismo, se deberá solicitar la opinión de:

I. Los gobiernos municipales en cuyas circunscripciones territoriales se localizará el área natural de que se trate;

II. Las dependencias y entidades de la administración pública estatal que conforme a sus atribuciones deban brindarla;

III. Las organizaciones de los sectores social y privado, y demás personas físicas o morales interesadas, y

IV. Las universidades e instituciones educativas del Sistema Educativo Estatal que realicen actividades académicas en áreas del conocimiento relacionadas con el medio ambiente, los recursos naturales y el desarrollo sustentable.

3. La Agencia Ambiental deberá considerar los comentarios y opiniones recibidos y poner a disposición de los interesados la respuesta respectiva**.**

**ARTÍCULO 198.**
1. Las declaratorias para el establecimiento, administración, manejo y vigilancia de las áreas naturales protegidas estatales, deberán contener los siguientes elementos:

I. La delimitación precisa del área, señalando la superficie, ubicación, deslindes y en su caso, zonificación correspondiente;

II. Las limitaciones, condiciones y modalidades a que se sujetarán las actividades o aprovechamientos de sus recursos naturales en general o específicamente de aquellas sujetas a protección;

III. Los lineamientos generales para su administración, el establecimiento de órganos que concurrirán en ello y la creación de fondos y fideicomisos, en su caso;

IV. Las disposiciones para la coordinación de las acciones destinadas a su preservación, restauración, aprovechamiento y vigilancia; y

V. Los lineamientos para la elaboración del programa de manejo.

2. Las declaratorias se inscribirán en el Registro Público de la Propiedad Inmueble y del Comercio y en los demás Registros competentes.

**ARTÍCULO 199.**
Cuando en la realización de los estudios previos para el establecimiento de áreas naturales protegidas deban intervenir diversas dependencias de la administración pública estatal, la coordinación de dichos estudios y la formulación de la propuesta de declaratoria respectiva corresponderá a la Agencia Ambiental.

**ARTÍCULO 200.**

Cuando el establecimiento de un área natural protegida pueda implicar la imposición de modalidades a la propiedad federal, el Estado formulará el planteamiento correspondiente a la Federación, con objeto de adoptar la determinación correspondiente sin demérito del régimen aplicable a dichas áreas.

**ARTÍCULO 201.**
Las autoridades estatales y municipales podrán participar en el establecimiento, manejo, administración y vigilancia de las áreas naturales protegidas federales, en los términos que se señalen en  la Ley General y de conformidad con los acuerdos de coordinación que al efecto se celebren.

**ARTÍCULO 202.**
1. Una vez establecida un área natural protegida estatal o municipal, sólo podrá ser modificada su extensión y, en su caso, los usos del suelo permitidos o cualquiera de sus disposiciones, por la autoridad que la haya establecido, siguiendo las mismas formalidades previstas en este Código para la expedición de la declaratoria respectiva.

2. En los programas de ordenamiento urbano deberán considerarse los decretos para el establecimiento de áreas naturales protegidas estatales o municipales.

3. El Ejecutivo Estatal y los Ayuntamientos, a través de las dependencias competentes, fomentarán programas de regulación de la tenencia de la tierra en las áreas naturales protegidas de su jurisdicción con  objeto de promover la seguridad jurídica en los predios en ellas comprendidos.

**CAPÍTULO II**
**DEL SISTEMA ESTATAL DE ÁREAS NATURALES PROTEGIDAS**

**ARTÍCULO 203.**
1. El Sistema Estatal de Áreas Naturales Protegidas tiene como propósito  unificar las regulaciones y criterios para su establecimiento, administración, manejo  y vigilancia.

2. La Agencia Ambiental llevará el Sistema Estatal de las Áreas Naturales Protegidas.

3.En dicho sistema se registrarán los datos relacionados con el establecimiento del área de que se trate y los contenidos de la declaratoria respectiva, así como los programas de manejo.

4. La Agencia Ambiental promoverá que el programa de manejo incluya la conservación, administración, desarrollo y vigilancia de las áreas integrantes del Sistema.

**ARTÍCULO 204.**
El Ejecutivo Estatal, a través de la Agencia Ambiental, con la participación de las demás dependencias estatales competentes y  los Ayuntamientos que así lo convengan, promoverá:

I. Las inversiones públicas, privadas y sociales para el establecimiento y manejo de las áreas naturales protegidas estatales;

II. La utilización de mecanismos para captar recursos económicos y financiar o apoyar el manejo de las áreas naturales protegidas estatales; y

III. Los incentivos económicos y los estímulos fiscales para las personas y organizaciones públicas, sociales o privadas que participen en la administración y vigilancia de las áreas naturales protegidas estatales, así como para quienes aporten recursos económicos para tales fines o destinen sus predios a acciones de preservación en términos del presente Código.

**ARTÍCULO 205.**
1. En el otorgamiento o expedición de permisos, licencias, concesiones, o en general, de autorizaciones a que se sujeten la exploración, explotación o aprovechamiento de recursos en áreas naturales protegidas estatales, se observarán las disposiciones del presente Código, de las leyes en que se

fundamenten las declaratorias de creación correspondientes, las prevenciones de las propias declaratorias, los programas de manejo y las demás disposiciones que resulten aplicables.

2. En tales casos el solicitante deberá demostrar ante la autoridad competente, su capacidad técnica y económica para llevar a cabo la exploración, explotación o aprovechamiento de que se trate mediante los procedimientos que este Código contempla para que se expida la autorización pertinente. Además, la Agencia Ambiental podrá exigir, previo al otorgamiento de las autorizaciones de las actividades mencionadas, la contratación de seguros o fianzas para garantizar las posibles afectaciones a los ecosistemas integrantes de las áreas naturales protegidas estatales.

3. La Agencia Ambiental prestará a ejidatarios, comuneros y pequeños propietarios, la asesoría técnica necesaria para el cumplimiento de lo dispuesto en el párrafo anterior.

4. La Agencia Ambiental podrá realizar la cancelación o revocación del permiso, licencia, concesión o autorización correspondiente, cuando exista incumplimiento en los términos de su otorgamiento, sin demerito de solicitar la actuación de cualquier otra autoridad competente.


**ARTICULO 206.**
1. Los pueblos indígenas, organizaciones sociales, personas morales, públicas o privadas, y demás personas interesadas en destinar voluntariamente a la conservación predios de su propiedad podrán establecer, administrar y manejar dichas áreas, conforme a lo dispuesto por este Libro.

2. Las áreas destinadas voluntariamente a la conservación se establecerán mediante certificado que expida la Agencia Ambiental, en el cual las reconozca como áreas naturales protegidas. Los interesados en obtener dicho certificado presentarán una solicitud que contenga:

I. Nombre del propietario;

II. Documento legal que acredite la propiedad del predio;

III. En su caso, la resolución de la asamblea ejidal o comunal en la que se manifieste la voluntad d destinar sus predios a la conservación;

IV. Nombre de las personas autorizadas para realizar actos de administración en el área;

V. Denominación, ubicación, superficie y colindancia del área;

VI. Descripción de las características físicas y biológicas generales del área;

VII. Estrategia de manejo que incluya la zonificación del área, y

VIII. Plazo por el que se desea certificar el área, el cual no podrá ser menor a quince años.

3. Para la elaboración de la estrategia de manejo a que se refiere este artículo, la Agencia otorgará la asesoría técnica necesaria, a petición de los promoventes.

4. En las áreas privadas y sociales destinadas voluntariamente a la conservación de competencia de la Federación, podrán establecerse todas las subzonas previstas en el presente Libro, así como cualesquiera otras decididas libremente por los propietarios.

5. El certificado que expida la Agencia Ambiental deberá contener:

I. Nombre del propietario;

II. Denominación, ubicación, superficie y colindancias del área;

III. Características físicas y biológicas generales y el estado de conservación del predio, que sustentan la emisión del certificado;

IV. Estrategia de manejo;

V. Deberes del propietario, y

VI. Vigencia mínima de quince años.

6. La Agencia Ambiental podrá establecer diferentes niveles de certificación en función de las características físicas y biológicas generales y el estado de conservación de los predios, así como el plazo por el que se emite el certificado y su estrategia de manejo, para que, con base en estos niveles, las autoridades correspondientes definan y determinen el acceso a los instrumentos económicos que tendrán los propietarios de dichos predios. Asimismo, dichos niveles serán considerados por las dependencias competentes, en la certificación de productos o servicios.

7. Las áreas destinadas voluntariamente a la conservación se administrarán por su propietario y se manejarán conforme a la estrategia de manejo definida en el certificado. Cuando dichas áreas se ubiquen dentro del polígono de otras áreas naturales protegidas previamente declaradas como tales por la Federación o los Ayuntamientos, la estrategia de manejo observará lo dispuesto en las declaratorias y los programas de manejo correspondientes.

8. Asimismo, cuando el Ejecutivo Federal, el Estado o los Ayuntamientos establezcan un área natural protegida cuya superficie incluya total o parcialmente una o varias áreas destinadas voluntariamente a la conservación, tomarán en consideración las estrategias de manejo determinadas en los certificados que expida la Agencia Ambiental.

9. Cuando en las áreas destinadas voluntariamente a la conservación se realice el aprovechamiento sustentable de recursos naturales, los productos obtenidos podrán ostentar un sello de sustentabilidad expedido por la Agencia Ambiental conforme al procedimiento previsto en el Reglamento. Lo previsto por este párrafo no aplica para el aprovechamiento de recursos forestales cuyos productos se certificarán con base en la legislación para el desarrollo forestal sustentable.

10. El Reglamento establecerá los procedimientos relativos a la modificación de superficies de manejo, así como la transmisión, extinción o prórroga de los certificados expedidos por la Agencia Ambiental.

**CAPITULO III**
**DE LOS PROGRAMAS DE MANEJO**

**ARTÍCULO 207.**
1. El programa de manejo de las áreas naturales protegidas es el instrumento de planeación y normatividad que contendrá, entre otros aspectos, las líneas de acción, criterios, disposiciones y, en su caso, actividades específicas a realizar y deberá contener lo siguiente:

I. El diagnóstico y las características físicas, biológicas, sociales y culturales del área natural protegida estatal, en el contexto nacional, regional y local, así como el análisis de la situación que guarda la tenencia de la tierra en la superficie respectiva;

II.Las estrategias, componentes, zonificación de las actividades, administración y finanzas, mecanismos de seguimiento y evaluación, estructura organizativa, estudios de capacidad de carga turística, prevención y control de contingencias, vigilancia y las demás que se requieran por las características propias del área;

III. Las acciones a realizar a corto, mediano y largo plazos, estableciéndose su vinculación con la política estatal de desarrollo sustentable, así como con los programas sectoriales correspondientes. Dichas acciones comprenderán, entre otras, las siguientes: de investigación y educación ambiental; de

protección y aprovechamiento sustentable de los recursos naturales, la flora y la fauna; de desarrollo de actividades recreativas, turísticas, obras de infraestructura y demás actividades productivas; de financiamiento para la administración del área; de prevención y control de contingencias; de vigilancia, y las demás que se requieran por las características propias del área natural protegida estatal;

IV. La forma en que se organizará la administración del área y los mecanismos de participación de los individuos y comunidades asentadas en la misma, así como de todas aquellas personas, instituciones, grupos y organizaciones sociales interesadas en su protección y aprovechamiento sustentable;

V. Los objetivos específicos del área natural protegida estatal;

VI. La referencia a las Normas Oficiales Mexicanas y las Normas Ambientales Estatales  aplicables a todas y cada una de las actividades a que esté sujeta el área;

VII. Los inventarios biológicos existentes y los que se prevea realizar; y

VIII. Las reglas de carácter administrativo a que se sujetarán las actividades que se desarrollen en el área natural protegida de que se trate.

2. La Agencia Ambiental deberá publicar en el Periódico Oficial del Estado un resumen del programa de manejo respectivo y el plano de localización del área.

3. En tanto se expide el programa de manejo correspondiente, la Agencia Ambiental emitirá mediante acuerdo administrativo, las normas y criterios que deben observarse para la realización de cualquier actividad dentro de las áreas naturales protegidas estatales, conforme a lo dispuesto en el presente Código, el Reglamento de este Libro y la declaratoria respectiva.

**ARTÍCULO 208.**
La Agencia Ambiental promoverá la participación convergente de sus habitantes, propietarios o poseedores y demás organizaciones sociales, públicas y privadas, en el establecimiento, administración y manejo de las áreas naturales protegidas estatales o municipales a que se refieren los artículos anteriores, con objeto de propiciar el desarrollo integral de la comunidad y asegurar la protección y conservación de los ecosistemas.

**ARTÍCULO 209.**
1. La Agencia Ambiental podrá, una vez que se cuente con el programa de manejo respectivo, otorgará a los Ayuntamientos, así como a ejidos, comunidades agrarias, grupos y organizaciones sociales y demás personas físicas o jurídicas colectivas interesadas, la administración y, en su caso, vigilancia de las áreas naturales protegidas estatales. Para tal efecto, se deberán suscribir los convenios correspondientes, sujetándose a lo establecido por este Código.

2. Quienes en virtud de lo dispuesto por el presente artículo adquieran la responsabilidad de administrar y vigilar las áreas naturales protegidas estatales, estarán obligados a sujetarse a las previsiones contenidas en este Código, el Reglamento de este Libro, las Normas Oficiales Mexicanas y las Normas Ambientales Estatales que se expidan en la materia, así como a cumplir los decretos por los que se establezcan dichas áreas y los programas de manejo respectivos.

3. La Agencia Ambiental supervisará y evaluará el cumplimiento de los convenios a que se refiere este precepto.

**TÍTULO CUARTO**
**DE LAS DISPOSICIONES COMPLEMENTARIAS**
**CAPÍTULO ÚNICO**

**ARTÍCULO 210.**
El Ejecutivo Estatal podrá promover ante la Federación el establecimiento de áreas naturales protegidas federales, así como convenir con aquélla la transferencia y manejo de éstas.

**ARTÍCULO 211.**
A la Agencia Ambiental, en materia de áreas naturales protegidas, le corresponden las atribuciones siguientes:

I. Fomentar y desarrollar actividades tendentes a la conservación de los ecosistemas y su biodiversidad en las áreas naturales protegidas estatales y  en sus zonas de influencia;

II. Formular, ejecutar y evaluar los programas de subsidios para fomentar el desarrollo de actividades prioritarias de interés general que permitan proteger, manejar y restaurar los ecosistemas y su biodiversidad a través de las comunidades rurales ubicadas en zonas marginadas dentro de las áreas naturales protegidas estatales o  en sus zonas de influencia;

III. Ejecutar y promover en las áreas naturales protegidas estatales y en sus zonas de influencia los programas especiales, productivos o de cualquier otra naturaleza que se prevean en el sistema estatal de planeación;

IV. Formular, promover, ejecutar y evaluar proyectos para la conservación, recuperación de especies y poblaciones consideradas como prioritarias, con la participación, en su caso, de las personas que manejen dichas especies o poblaciones y demás involucrados, así como de otras unidades administrativas de la Agencia Ambiental, dependencias y entidades de la administración pública estatal, y de los Ayuntamientos;

V. Promover la captación de donativos, aportaciones, asignaciones y demás recursos, en numerario o en especie, que sean necesarios para apoyar las obras, acciones e inversiones que se requieran para la conservación de los ecosistemas y su biodiversidad, así como para la conservación de las especies prioritarias, de conformidad con las disposiciones aplicables;

VI. Proponer al Ejecutivo Estatal la adopción de estímulos e incentivos económicos destinado a la conservación de los ecosistemas y su biodiversidad, así como para la atención de las especies y poblaciones prioritarias para la conservación;

VII. Participar con las autoridades competentes en la promoción y definición de acciones y programas de conocimiento y cultura para la conservación;

VIII. Promover y participar, con las autoridades competentes, en acciones de capacitación y asistencia técnica en materia de áreas naturales protegidas estatales para fortalecer  el desarrollo de las comunidades rurales;

IX. Promover la participación de la sociedad en materia de áreas naturales protegidas estatales; y

X.  Las demás previstas en los ordenamientos jurídicos aplicables.

**LIBRO QUINTO**
**DE LA VIDA SILVESTRE**
**TÍTULO I**
**DISPOSICIONES PRELIMINARES**
**CAPÍTULO ÚNICO**

**ARTÍCULO 212.**
1. Las disposiciones de este Libro tienen por objeto sentar las bases para la conservación y aprovechamiento sustentable de la vida silvestre y su hábitat en el territorio del Estado.

2. La vida silvestre está conformada por la fauna y la flora que coexiste en condiciones naturales, temporales o permanentes, o en cautiverio, y únicamente pueden ser objeto de apropiación particular o privada y de comercio mediante las disposiciones contenidas en este Código y las disposiciones de otros ordenamientos relacionados aplicables.

3. El aprovechamiento sustentable de recursos maderables y no maderables será regulado por la Ley Forestal.

**ARTÍCULO 213.**
En materia de vida silvestre, la concurrencia del Estado y de los Ayuntamientos tendrá los siguientes propósitos:

I. Garantizar la unidad de propósitos y la congruencia en la acción de los distintos órdenes de gobierno relativa a la ejecución de los lineamientos de la política estatal en materia de vida silvestre;

II. Desarrollar las facultades del Estado para coordinar la definición, regulación y supervisión de las acciones de conservación y de aprovechamiento sustentable de la diversidad biológica que compone la vida silvestre y su hábitat;

III. Reconocer a esos ámbitos de competencia sus atribuciones para ejecutar las acciones relativas al cumplimiento de los lineamientos de la política estatal en materia de vida silvestre y su hábitat dentro de su territorio;

IV. Especificar las atribuciones que a ambas esferas de competencia les corresponde ejercer de manera exclusiva en la materia; y

V. Establecer los mecanismos de coordinación necesarios para señalar la adecuada colaboración entre los distintos órdenes de gobierno en las materias que regula el presente Libro, cuidando no afectar la continuidad e integridad de los procesos ecosistémicos asociados a la vida silvestre.

**ARTÍCULO 214.**
En todo lo no previsto en el presente Libro se aplicarán las disposiciones de la Ley de Vida Silvestre y de otros ordenamientos relacionados sobre la materia.

**ARTÍCULO 215**.
Para los efectos de este Libro se entenderá por:

I. Aprovechamiento extractivo: la utilización de ejemplares, derivados o partes de especies silvestres a través de la captura, colecta o actividades cinegéticas;

II. Aprovechamiento no extractivo: las actividades directamente relacionadas con la vida silvestre en su hábitat natural que no impliquen la remoción de ejemplares, sus partes o derivados y que de no ser adecuadamente reguladas pudieran causar impactos significativos sobre eventos biológicos, poblaciones o hábitats de las especies silvestres;

III. Aprovechamiento y uso sustentable: la utilización de los recursos de vida silvestre en forma que se respete la integridad funcional y las capacidades de carga de los ecosistemas de los que forman parte por periodos indefinidos;

IV. Bioma: la gran comunidad unitaria caracterizada por el tipo de animales y plantas que alberga;

V. Biotopo: el territorio o espacio vital cuyas condiciones ambientales son las adecuadas para que en él se desarrolle una determinada comunidad de seres vivos;

VI. Capacidad de carga: la estimación de la tolerancia de un ecosistema al uso de sus componentes y que no rebase su capacidad de recuperarse en el corto plazo, sin la aplicación de medidas de restauración o recuperación para restablecer el equilibrio ecológico;

VII. Captura: la extracción de ejemplares vivos de fauna silvestre del hábitat en que se encuentran;

VIII. Caza: la actividad que consiste en dar muerte a un ejemplar de fauna silvestre a través de medios permitidos;

IX. Caza furtiva: la acción que consiste en dar muerte a uno o varios ejemplares de fauna silvestre, a través de cualquier medio no permitido y sin permisos o licencias emitidos por la autoridad correspondiente;

X. Caza deportiva o actividad cinegética: la actividad que consiste en la búsqueda, persecución o acecho para dar muerte a través de medios permitidos a un ejemplar de fauna silvestre, cuyo aprovechamiento haya sido autorizado con el propósito de obtener una pieza o trofeo;

XI. Colecta: la extracción de ejemplares, partes o derivados de vida silvestre del hábitat en que se encuentran;

XII. Comisión: la Comisión Estatal para la Conservación y Aprovechamiento Económico de la Vida Silvestre;

XIII. Conservación: la protección, restauración, cuidado, manejo y mantenimiento de los ecosistemas, los hábitats, las especies y las poblaciones de la vida silvestre dentro o fuera de sus entornos naturales, de manera que se salvaguarden las condiciones naturales para su permanencia a largo plazo;

XIV. Desarrollo de poblaciones: las prácticas planificadas de manejo de poblaciones de especies silvestres en vida libre que se realizan en áreas delimitadas dentro de su ámbito de distribución natural, dirigidas expresamente a garantizar la conservación de sus hábitats, así como a incrementar sus tasas de supervivencia de tal manera que se asegure la permanencia de la población bajo un manejo adecuado;

XV. Derivados: los materiales generados por los ejemplares a través de procesos biológicos cuyo aprovechamiento no implica la destrucción de los ejemplares o partes. Para estos efectos se considerarán productos los derivados no transformados, y subproductos aquellos que han sido sujetos a algún proceso de transformación;

XVI. Duplicados: cada uno de los ejemplares de una especie o partes de ellos producto de una misma colecta científica;

XVII. Ejemplares o poblaciones exóticas: aquellas que se encuentran fuera de su ámbito de distribución natural, lo que incluye a los híbridos y modificados;

XVIII. Ejemplares o poblaciones ferales: las pertenecientes a especies domésticas que al quedar fuera del control del ser humano se establecen en el hábitat natural de la vida silvestre;

XIX. Ejemplares o poblaciones nativas: aquellas pertenecientes a especies silvestres que se encuentran dentro de su ámbito de distribución natural;

XX. Ejemplares o poblaciones que se tornen perjudiciales: las pertenecientes a especies silvestres o domésticas que por modificaciones a su hábitat o a su biología o que por encontrarse fuera de su área de distribución natural tengan efectos negativos para el medio ambiente, otras especies o el ser humano y requieran de la aplicación de medidas especiales de manejo o control;

XXI. Especies y poblaciones en riesgo: las identificadas por la Secretaría Federal, por las Normas Oficiales Mexicanas y las Normas Ambientales Estatales, en su caso;

XXII. Especies y poblaciones prioritarias para la conservación: las identificadas por la  Secretaría, las Normas Oficiales Mexicanas y las Normas Ambientales Estatales en su caso;

XXIII. Especies y poblaciones migratorias: aquellas que se desplazan latitudinal, longitudinal o altitudinalmente de manera periódica como parte de su ciclo biológico;

XXIV. Estudio de poblaciones: aquel que se realiza con el objeto de conocer sus parámetros demográficos tales como el tamaño y densidad, la proporción de sexos y edades y las tasas de natalidad, mortalidad y crecimiento durante un período determinado, así como la adición de cualquier otra información relevante;

XXV. Fauna silvestre: los animales vertebrados e invertebrados, residentes o migratorios que viven en condiciones naturales en el territorio del Estado y que no requieren del cuidado del ser humano para su supervivencia. La clasificación de las especies se establecerá en el Reglamento del presente Libro;

XXVI. Flora silvestre: el conjunto de plantas vasculares y no vasculares existentes en el territorio del Estado que viven en condiciones naturales y las cuales se indicarán en el Reglamento de este Libro;

XXVII. Hábitat: el sitio específico en un medio ambiente físico ocupado por un organismo, población, especie o comunidades de especies en un tiempo determinado;

XXVIII. Licencia de caza deportiva o para actividades cinegéticas: el documento mediante el cual la Comisión acredita que una persona está calificada, tanto por sus conocimientos sobre los instrumentos y medios de las actividades cinegéticas, como de las regulaciones en la materia para realizar la caza deportiva en el territorio del Estado;

XXIX. Legítimo poseedor: el poseedor de buena fe en los términos del Código Civil para el Estado de Tamaulipas;

XXX. Manejo: la aplicación de métodos y técnicas para la conservación y aprovechamiento sustentable de la vida silvestre y su hábitat;

XXXI. Manejo en vida libre: aquel que se hace con ejemplares o poblaciones de especies que se desarrollan en condiciones naturales sin imponer restricciones a sus movimientos;

XXXII. Manejo intensivo: aquel que se realiza sobre ejemplares o poblaciones de especies silvestres en condiciones de cautiverio o confinamiento;

XXXIII. Manejo de hábitat: aquel que se realiza sobre la vegetación, el suelo y otros elementos o características fisiográficas en áreas definidas con metas específicas de preservación, conservación, mantenimiento, mejoramiento o restauración;

XXXIV. Manejo integral: aquel que considera de manera relacionada aspectos biológicos, sociales, económicos y culturales vinculados con la vida silvestre y su hábitat;

XXXV. Marca: el método de identificación aprobado por la Comisión que, conforme a lo establecido en la Ley Federal sobre Metrología y Normalización, puede demostrar la legal procedencia de ejemplares, partes o derivados;

XXXVI. Muestreo: el levantamiento sistemático de los datos que indican las características generales, la magnitud, la estructura y las tendencias de una población o de su hábitat con el fin de diagnosticar su estado actual y proyectar los escenarios que podría enfrentar en el futuro;

XXXVII. Parte: la porción, fragmento o componente de un ejemplar. Para estos efectos se considerarán productos las partes no transformadas, y subproductos aquéllas que han sido sujetas a algún proceso de transformación;

XXXVIII. Plan de Manejo de Vida Silvestre: el documento técnico operativo de las unidades de manejo para la conservación de vida silvestre, sujeto a aprobación de la Comisión, que describe y programa actividades para el manejo de especies silvestres particulares y sus hábitats, y  establece metas e indicadores de éxito en función de las poblaciones y el hábitat;

XXXIX. Población: el conjunto de individuos de una especie silvestre que comparten el mismo hábitat. Se considera la unidad básica de manejo de las especies silvestres en vida libre;

XL. Predio: La unidad territorial delimitada por un polígono que puede contener cuerpos de agua o ser parte de ellos;

XLI. Recuperación: el restablecimiento de los procesos naturales y de los parámetros genéticos, demográficos o ecológicos de una población o especie para evitar el deterioro y propiciar el retorno a un hábitat sano que incremente la diversidad biológica;

XLII. Recursos forestales no maderables: la parte no leñosa de la vegetación de un ecosistema forestal, susceptible de aprovechamiento o uso, incluyendo líquenes, musgos, hongos y resinas;

XLIII. Reintroducción: la liberación o reforestación planificada al hábitat natural de ejemplares de una especie o subespecie silvestre que se realiza con objeto de restituir una población desaparecida;

XLIV. Repoblación: la liberación o reforestación planificada al hábitat natural de ejemplares de una especie o subespecie silvestre con objeto de reforzar una población disminuida;

XLV. Reproducción asistida: la forma de reproducción de ejemplares de la vida silvestre en confinamiento, consistente en un conjunto de técnicas encaminadas a la inducción, aceleración o modificación de ciertas fases de sus procesos reproductivos;

XLVI. Reproducción controlada: el manejo planificado de ejemplares, poblaciones o hábitats de la vida silvestre para asegurar el incremento en el número de individuos, que se realiza bajo condiciones de protección y de seguimiento sistemático permanente o de reproducción asistida;

XLVII. Tasa de aprovechamiento: la cantidad de ejemplares, partes o derivados que se pueden extraer dentro de un área y un período determinados de manera que no se afecte el mantenimiento del recurso y su potencial productivo en el largo plazo;

XLVIII. Traslocación: la liberación planificada al hábitat natural de ejemplares de una especie o subespecie, que se realiza para sustituir poblaciones desaparecidas;

XLIX. Trasiego: la acción de mudar de lugar una especie o especies determinadas;

L. Unidades de manejo para la conservación de vida silvestre: los predios e instalaciones debidamente registrados que operan de conformidad con un plan de manejo aprobado y dentro de los cuales se da seguimiento permanente al estado del hábitat de poblaciones o ejemplares que ahí se distribuyen; y

LI. Vida silvestre: los organismos que subsisten sujetos a los procesos de evolución natural y que se desarrollan libremente en su hábitat, incluyendo sus poblaciones menores e individuos que se encuentran bajo el control del hombre, así como los ferales.

## TÍTULO SEGUNDO
## DE LAS AUTORIDADES
## CAPÍTULO ÚNICO

**ARTÍCULO 216.**
Corresponden al Estado, por conducto de la Agencia Ambiental, de conformidad con lo dispuesto en el presente Libro y  las demás disposiciones aplicables, las siguientes atribuciones:

I. Formular y conducir la política estatal sobre la preservación, conservación, remediación, rehabilitación, restauración, recuperación y aprovechamiento sustentable de la vida silvestre, misma que guardará congruencia con los lineamientos de la política nacional en la materia;

II. Formular propuestas en materia de vida silvestre a las autoridades competentes, con el propósito de promover el cumplimiento de la legislación, sobre su conservación y aprovechamiento sustentable;

III. Conducir la política estatal de información y difusión en materia de vida silvestre; así como la integración, seguimiento y actualización de la información de la vida silvestre en el Sistema Estatal de Información sobre la Vida Silvestre, en compatibilidad e interrelación con el Subsistema Nacional de Información sobre la Vida Silvestre, en el ámbito de su jurisdicción territorial; y
IV. Inspeccionar el cumplimiento de la normatividad en materia de vida silvestre, con base en sus atribuciones y las que mediante convenio le transfiera la Federación.

**ARTÍCULO 217.**
Corresponden al Estado, por conducto de la Comisión, las siguientes atribuciones:

I. Regular el manejo, control y remediación de los problemas asociados a ejemplares y poblaciones ferales, así como aplicar  las disposiciones en la materia;

II. Compilar la información sobre los usos y formas de aprovechamiento de ejemplares, partes y derivados de la vida silvestre con fines de subsistencia por parte de las comunidades rurales, y  promover la organización de los distintos grupos y su integración a los procesos del desarrollo sustentable en los términos de este Libro;

III. Apoyar, asesorar técnicamente y capacitar a las comunidades rurales para el desarrollo de actividades de preservación y aprovechamiento sustentable de la vida silvestre; elaborar  planes de manejo de vida silvestre; desarrollar  estudios de poblaciones de vida silvestre y atender las solicitudes de autorización en estas materias;

IV. Crear y administrar el Registro Estatal de Organizaciones relacionadas con la conservación y aprovechamiento sustentable de la vida silvestre;

V. Crear y administrar el Registro Estatal de Prestadores de Servicios vinculados a la transformación, tratamiento, preparación, aprovechamiento y comercialización de ejemplares, partes y derivados de la vida silvestre, así como llevar a cabo la supervisión  de sus actividades;

VI. Crear y administrar el Padrón Estatal de Mascotas de Especies Silvestres y Aves de Presa;

VII. Ejercer las atribuciones previstas en los convenios de asunción de funciones en materia de vida silvestre;

VIII. Coordinar la participación social en las actividades que incumben a las autoridades estatales; y

IX. Vigilar el cumplimiento de la normatividad en materia de vida silvestre, con base en sus atribuciones.

**ARTÍCULO 218.**
1. El Estado podrá convenir con los Ayuntamientos la transferencia del ejercicio de atribuciones propias o convenidas con la Federación para su desempeño, sobre la base de la capacidad de la autoridad municipal para su realización. En todo caso, se privilegiarán los criterios de sustentabilidad del desarrollo y la eficacia en el cumplimiento de las funciones.

2. Dichas atribuciones serán ejercidas conforme a lo dispuesto en este Libro y demás disposiciones aplicables.

**ARTÍCULO 219.**
1. Cuando por razón de la materia y de conformidad con la Ley Orgánica de la Administración Pública del Estado u otras disposiciones aplicables se requiera de la intervención de otras dependencias, la Agencia Ambiental y la Comisión ejercerán sus atribuciones en coordinación con las mismas.

2. Las dependencias y entidades de la administración pública estatal que ejerzan atribuciones que les confieren otros ordenamientos cuyas disposiciones se relacionen con el objeto del presente Libro, ajustarán su ejercicio a la política estatal sobre la vida silvestre establecida en este ordenamiento y  las disposiciones que de éste se deriven.

**TÍTULO TERCERO
DE LA CONCERTACIÓN Y PARTICIPACIÓN SOCIAL
CAPÍTULO ÚNICO**

**ARTÍCULO 220.**
Conforme a los criterios generales que establezca la Agencia Ambiental, la Comisión promoverá la participación de las personas y sectores involucrados en la formulación y aplicación de las medidas para la conservación y aprovechamiento sustentable de la vida silvestre, que estén dentro del ámbito de su competencia.

**ARTÍCULO 221.**
Para alcanzar los objetivos de la política estatal sobre vida silvestre, la Comisión podrá celebrar convenios de concertación con las personas físicas y jurídicas interesadas en el fomento, conservación y aprovechamiento sustentable de la vida silvestre.

**TÍTULO CUARTO
DE LA CONSERVACIÓN DE LA VIDA SILVESTRE
CAPÍTULO I
DE LAS ESPECIES Y POBLACIÓN EN RIESGO Y
PRIORITARIAS PARA LA CONSERVACIÓN**

**ARTÍCULO 222.**
1. La  Comisión identificará, a través de listas y catálogos, las especies o poblaciones en riesgo de conformidad con lo establecido por las Normas Oficiales Mexicanas y las Normas Ambientales Estatales correspondientes, señalando el nombre científico y el nombre común más utilizado de las especies; la información relativa a las poblaciones, tendencias y factores de riesgo; la justificación técnica-científica de la propuesta, y la metodología empleada para obtener la información.
2. Las listas y catálogos respectivos serán revisados y, de ser necesario, actualizados cada tres años o antes si se presenta información suficiente para la inclusión, exclusión o cambio de categoría de alguna especie o población. Las listas y catálogos y sus actualizaciones indicarán el género, la familia, la especie y, en su caso, la subespecie. A su vez, serán publicadas en el Periódico Oficial del Estado.

**ARTÍCULO 223.**
Cualquier persona, de conformidad con lo establecido en el Reglamento de este Libro y en las Normas Oficiales Mexicanas y las Normas Ambientales Estatales, podrá presentar a la Comisión propuestas de inclusión, exclusión o cambio de categoría de riesgo para especies silvestres o poblaciones, a las cuales deberá anexar la información mencionada en el párrafo 1 del artículo anterior.

**ARTÍCULO 224.**
1. Entre las especies y poblaciones en riesgo estarán comprendidas las que se identifiquen como:

I. En peligro de extinción: aquellas cuyas áreas de distribución o tamaño de sus poblaciones en el territorio estatal han disminuido en forma tal que pongan en riesgo su viabilidad biológica en todo su hábitat natural, debido a factores  como la destrucción o modificación del hábitat, aprovechamiento y uso no sustentable y enfermedades o depredación, entre otros;

II. Amenazadas: aquellas que podrían llegar a encontrarse en peligro de desaparecer a corto o mediano plazos si siguen operando los factores que inciden negativamente en su viabilidad, al ocasionar el deterioro o modificación de su hábitat, o disminuir directamente el tamaño de sus poblaciones; y

III. Sujetas a protección especial: aquellas que podrían llegar a encontrarse amenazadas por factores que inciden negativamente en su viabilidad.

2. En los casos de las fracciones del párrafo anterior, la Comisión determinará la necesidad de propiciar su recuperación y conservación, o la recuperación y preservación de poblaciones de especies asociadas.

**ARTÍCULO 225.**
Los ejemplares confinados de las especies probablemente extintas en el medio silvestre serán destinados exclusivamente al desarrollo de proyectos de conservación, restauración, reproducción, repoblación y reintroducción, así como de investigación y educación ambiental autorizados por la Comisión.

**ARTÍCULO  226.**
1. La Agencia Ambiental, con la participación de la Comisión, promoverá, fomentará e impulsará la conservación, preservación y protección de las especies y poblaciones en riesgo por medio del desarrollo de proyectos de conservación, reproducción y recuperación, el establecimiento de medidas especiales de manejo y conservación de hábitat críticos y de áreas de refugio para proteger especies acuáticas, la coordinación de programas de muestreo y seguimiento permanente, así como de la certificación del aprovechamiento sustentable con la participación de las personas que manejen dichas especies o poblaciones y demás involucrados.

2. El programa de certificación deberá seguir los lineamientos establecidos en el Reglamento de este Libro y en las Normas Oficiales Mexicanas o las Normas Ambientales Estatales que para tal efecto se elaboren.

3. La Agencia Ambiental suscribirá convenios y acuerdos de concertación y coordinación con el fin de promover la recuperación y conservación de especies y poblaciones en riesgo.

**ARTÍCULO 227.**
1. Para la elaboración de las listas de especies y poblaciones prioritarias de conservación, la Comisión considerará, al menos los siguientes supuestos;

I. La importancia estratégica para la conservación de hábitats y de otras especies;

II. La importancia de la especie o población para el mantenimiento de la biodiversidad, la estructura y el funcionamiento de un ecosistema o parte de él;

III. El carácter endémico cuando se trate de especies o poblaciones en riesgo; y

IV. El alto grado de interés social, cultural, científico o económico de las especies o publicaciones.

2. Las listas a que se refiere este artículo se publicarán en el Periódico Oficial del Estado y serán revisadas y, de ser necesario, actualizadas cada tres años o antes si se considera necesario.

**ARTÍCULO 228.**
La Comisión promoverá el desarrollo de proyectos para la conservación y la recuperación de especies y poblaciones prioritarias con la participación de las personas que manejen dichas especies o poblaciones y demás interesados.

**CAPÍTULO II**
**DEL HABITAT CRÍTICO PARA LA CONSERVACIÓN DE LA VIDA SILVESTRE**

**ARTÍCULO 229.**
1. La conservación del hábitat natural de la vida silvestre es de utilidad pública.

2. La Agencia Ambiental, previa opinión de la Comisión podrá proponer al Ejecutivo del Estado el establecimiento de hábitats críticos para la conservación de la vida silvestre, mediante la emisión de Acuerdo Gubernamental.

**ARTÍCULO 230.**

1. La Comisión podrá acordar con los propietarios o legítimos poseedores de predios en los que existan hábitats críticos, medidas especiales de manejo y conservación.

2. La realización de cualquier obra o de aquellas actividades que puedan afectar la protección, recuperación y restablecimiento de los elementos naturales en los hábitats críticos deberá quedar sujeta a las condiciones que se establezcan como medidas especiales de manejo y conservación en los planes de manejo  de vida silvestre de que se trate, así como del informe preventivo correspondiente de conformidad con lo establecido en el Reglamento de este Libro.

3. El Ejecutivo podrá imponer limitaciones a los derechos de dominio en los predios que abarquen dicho hábitat con el objeto de dar cumplimiento a las medidas necesarias para su manejo y conservación.

## CAPÍTULO III
## DE LAS ÁREAS DE REFUGIO PARA PROTEGER LAS ESPECIES ACUÁTICAS

**ARTÍCULO 231.**

La Agencia Ambiental, con la opinión de la Comisión, podrá proponer al Ejecutivo del Estado el establecimiento de áreas de refugio mediante la emisión de Acuerdo Gubernamental, para proteger especies nativas y endémicas de la vida silvestre que se desarrollan en el medio acuático, aguas y terrenos inundables, con objeto de conservar y contribuir, a través de medidas de manejo y conservación, al desarrollo de dichas especies, así como para conservar y proteger sus hábitats. Al efecto elaborará los programas de protección correspondientes.

**ARTÍCULO 232.**

1. Las áreas de refugio para proteger especies acuáticas podrán ser establecidas en sitios claramente definidos en cuanto a su ubicación y deslinde, mediante el instrumento que las crea.

2. Las áreas de refugio para proteger especies acuáticas podrán ser establecidas para la protección de:

I. Todas las especies nativas de la vida silvestre presentes en el sitio, que se desarrollen en medio acuático;

II. Aquellas especies nativas de la vida silvestre que se desarrollen en medio acuático, mencionadas en el instrumento correspondiente;

III. Aquellas especies nativas de la vida silvestre que se desarrollen en medio acuático, no excluidas específicamente por dicho instrumento; y

IV. Los ejemplares con características específicas de poblaciones, especies o grupos de especies nativas de la vida silvestre que se desarrollen en medio acuático y que sean afectados en forma negativa por el uso de determinados medios de aprovechamiento.

3. Previo a la expedición del Acuerdo, la Comisión elaborará los estudios justificativos, mismos que deberán contener información general, diagnóstico, descripción de las características físicas del área, justificación y aspectos socioeconómicos, de conformidad con lo establecido en el Reglamento de este Libro.

**ARTÍCULO 233.**

1. Cuando la superficie de alguna de las áreas de refugio para proteger especies acuáticas coincida con el polígono de algún área natural protegida, el programa de protección respectivo deberá compatibilizarse con los objetivos generales establecidos en la declaratoria correspondiente y en el programa de manejo del área natural protegida en cuestión.

2. En los casos a que se refiere el párrafo anterior, corresponderá a la Agencia Ambiental llevar a cabo la coordinación de las medidas de manejo y conservación establecidas en el programa de protección.

**ARTÍCULO 234.**
La realización de cualquier obra o de aquellas actividades que puedan afectar la protección, recuperación y restablecimiento de los elementos naturales en áreas de refugio para proteger especies acuáticas, deberá quedar sujeta a las condiciones que se establezcan como medidas de manejo y conservación en los programas de protección de que se trate, así como del informe preventivo correspondiente de conformidad con lo establecido en el Reglamento de este Libro.

**CAPÍTULO IV**
**DE LA RESTAURACIÓN, REHABILITACIÓN Y**
**RECUPERACIÓN.**

**ARTÍCULO 235.**
Cuando se presenten problemas de destrucción, contaminación, degradación, desertificación o desequilibrio del hábitat de la vida silvestre, la Agencia Ambiental, con la colaboración de la Comisión, formulará y ejecutará a la brevedad posible programas de prevención, de atención de emergencias y de restauración para la recuperación, remediación, rehabilitación y restablecimiento de las condiciones que propician la evolución y continuidad de los procesos naturales de la vida silvestre, tomando en cuenta lo dispuesto en los artículos 78, 78 bis y 78 bis 1 de la Ley General, y de conformidad con lo establecido en el Reglamento de este Libro y las demás disposiciones aplicables.

**CAPÍTULO V**
**DE LAS VEDAS**

**ARTÍCULO 236.**
1. La Comisión podrá establecer limitaciones al aprovechamiento de poblaciones de la vida silvestre incluyendo las vedas, su modificación o levantamiento, de acuerdo con lo previsto en el artículo 81 de la Ley General, cuando a través de otras medidas no se pueda lograr la conservación o recuperación de las poblaciones.

2. En casos de desastres naturales o derivados de actividades humanas, la Comisión podrá establecer vedas temporales al aprovechamiento como medida preventiva y complementaria a otras medidas con la finalidad de evaluar los daños ocasionados, permitir la recuperación de las poblaciones y evitar riesgos a la salud de las personas.

3. Las vedas podrán establecerse, modificarse o levantarse a solicitud de las personas físicas o morales interesadas, las que deberán presentar los estudios de población correspondientes de conformidad con lo establecido en el Reglamento de este Libro. La Comisión evaluará estos antecedentes y la información disponible sobre los aspectos biológicos, sociales y económicos involucrados y resolverá lo que corresponda.

**LIBRO SEXTO**

**DE LOS PROCEDIMIENTOS**
**ANTE LA AGENCIA AMBIENTAL**

**TÍTULO PRIMERO**
**DEL PROCEDIMIENTO ADMINISTRATIVO AMBIENTAL**

**CAPÌTULO PRIMERO**
**DISPOSICIONES GENERALES**

**ARTÍCULO 237.**

1. Las disposiciones de este Título se aplicarán a los actos, procedimientos y resoluciones que se tramiten ante la Agencia Ambiental, a excepción de la regulación que se encuentre prevista de manera expresa en el presente Código.

2. La actuación administrativa en el procedimiento se desarrollará con arreglo a los principios de economía, celeridad, eficacia, legalidad, publicidad y buena fe.

3. El procedimiento administrativo ambiental podrá iniciarse de oficio o a petición de parte interesada.

**ARTÍCULO 238.**
Los escritos regulados por este Libro deberán ser presentados ante la Agencia Ambiental, de manera personal, por correo o mediante mensajería, salvo el caso en que se encuentre previsto de manera expresa en el presente Código.

**CAPÍTULO II**
**DEL ACTO ADMINISTRATIVO AMBIENTAL**

**ARTÍCULO 239.**
Son elementos y requisitos del acto administrativo ambiental:

I. Ser expedido por órgano competente, a través de servidor público y que reúna las formalidades de la ley o decreto para emitirlo;

II. Tener objeto que pueda ser materia del mismo; determinado o determinable; preciso en cuanto a las circunstancias de tiempo y lugar, y previsto por la ley;

III.- Cumplir con la finalidad de interés público regulado por las normas en que se concreta, sin que puedan perseguirse otros fines distintos;

IV. Hacer constar por escrito y con la firma autógrafa de la autoridad que lo expida, salvo en aquellos casos en que el Código autorice otra forma de expedición;

V. Estar fundado y motivado;

VI. Ser expedido sujetándose a las disposiciones relativas a los procedimientos administrativos previstos en este Código;

VII. Mencionar el órgano del cual emana;

VIII. Ser expedido sin que medie error respecto a la referencia específica de identificación del expediente, documentos o nombre completo de las personas;

IX. Ser expedido señalando lugar y fecha de emisión;

X. Tratándose de actos administrativos que deban notificarse deberá hacerse mención de  la oficina en que se encuentra y puede ser consultado el expediente respectivo;

XI. Tratándose de actos administrativos recurribles deberá hacerse mención de los recursos que procedan; y

XII. Ser expedido atendiendo los puntos planteados por el promovente o que estén establecidos por el Código.

**ARTÍCULO 240.**
Los actos administrativos de carácter general, que expida la Agencia Ambiental, deberán publicarse en el Periódico Oficial del Estado.

## CAPÍTULO III
### DE LA EFICIENCIA DEL ACTO ADMINISTRATIVO.

**ARTÍCULO 241.**
El acto administrativo será válido hasta en tanto su invalidez no haya sido declarada por autoridad administrativa o jurisdiccional, según sea el caso.

**ARTÍCULO 242.**
1. El acto administrativo válido será eficaz y exigible a partir de que surta efectos la notificación legalmente efectuada.

2. Se exceptúa de lo dispuesto en el párrafo anterior, el acto administrativo por el cual se otorgue un beneficio al particular, caso en el cual su cumplimiento será exigible por éste a la Agencia Ambiental desde la fecha en que se dictó o aquélla que tenga señalada para iniciar su vigencia; así como los casos en virtud de los cuales se realicen actos de inspección, investigación y vigilancia conforme a las disposiciones de este Código, los cuales son exigibles a partir de la fecha en que  la Agencia Ambiental los efectúe.


## CAPÍTULO IV
### DEL PROCEDIMIENTO ADMINISTRATIVO.

**ARTÍCULO 243.**
1. Las promociones deberán hacerse por escrito y  en las cuales se precisará lo siguiente:

I. El nombre, denominación o razón social de quién o quiénes promuevan, y en su caso de su representante legal;

II. El domicilio para recibir notificaciones, así como nombre de la persona o personas autorizadas para recibirlas;

III. La petición que se formula, los hechos o razones que dan motivo a la petición,

IV. La autoridad administrativa a que se dirigen; y

V. El lugar y fecha de su emisión.

2. El escrito deberá estar firmado por el interesado o su representante legal, a menos que no sepa o no pueda firmar, caso en el cual se imprimirá su huella digital.

3. La persona que promueva deberá adjuntar a su escrito los documentos que acrediten su personalidad.

**ARTÍCULO  244.**
1. Los escritos y sus anexos deberán presentarse en original y copia para que se le acuse recibo.

2. Cuando en un procedimiento se tenga que dar vista a terceros, los interesados estarán obligados a proporcionar datos y a entregar juegos adicionales de los documentos necesarios a la autoridad ante la cual realicen el trámite correspondiente.

**ARTÍCULO 245.**
La Agencia Ambiental, en sus relaciones con los particulares, tendrá las siguientes obligaciones:

I. Solicitar la comparecencia de éstos, previa citación en la que se hará constar expresamente el lugar, fecha, hora y objeto de la comparecencia, así como los efectos de no atenderla;

II. Requerir informes, documentos y otros datos, cuando así sea pertinente para el ejercicio de las atribuciones previstas en este Código;

III. Hacer del conocimiento de éstos, en cualquier momento, del estado de la tramitación de los procedimientos en los que tengan interés jurídico, y a proporcionar copia de los documentos contenidos en ellos;

IV. Hacer constar en las copias de los documentos que se presenten junto con los originales, la presentación de los mismos;

V. Admitir las pruebas permitidas por el Código y recibir alegatos, los que deberán ser tomados en cuenta al dictar resolución;

VI. Abstenerse de requerir documentación o solicitar información que ya se encuentren en el expediente que se está tramitando;

VII. Proporcionar información y orientar acerca de los requisitos jurídicos o técnicos que las disposiciones legales vigentes en materia ambiental impongan a los proyectos, actuaciones o solicitudes que se propongan realizar;

VIII. Permitir el acceso a sus registros y archivos en los términos previstos en este Código u otras leyes;
IX. Facilitar el ejercicio de sus derechos y el cumplimiento de sus obligaciones; y

X. Dictar resolución expresa sobre cuantas peticiones le formulen, dentro del plazo que este Titulo establezca.

**ARTÍCULO 246.**
1. Salvo que ya se encuentre previsto de manera expresa en el presente Código, no podrá exceder de tres meses el tiempo para que la Agencia Ambiental resuelva lo que corresponda.

2. Transcurrido el plazo referido o el aplicable, se entenderá que la falta de resolución entraña la negativa, salvo que en forma expresa se determine la afirmativa en éste Código.

3. A petición del interesado, se deberá expedir constancia de que ha transcurrido el plazo legal para resolver dentro de los dos días hábiles siguientes a la presentación de la solicitud respectiva ante la autoridad competente.

**ARTÍCULO 247.**
1. Cuando los escritos que presenten los interesados no contengan los datos o no cumplan con los requisitos aplicables, la Agencia Ambiental deberá prevenir a los interesados, por escrito y por una sola vez, para que subsanen la omisión. Transcurrido el plazo correspondiente sin desahogar la prevención, se desechará el trámite.

2. La prevención de información faltante deberá hacerse dentro del primer tercio del plazo de respuesta o, de no requerirse resolución alguna, dentro de los diez días hábiles siguientes a la presentación del escrito correspondiente. La fracción de día que en su caso resulte de la división del plazo de respuesta se computará como un día completo. En caso de que la resolución del trámite sea inmediata, la prevención de información faltante también deberá hacerse de manera inmediata a la presentación del escrito respectivo.

3. De no realizarse la prevención mencionada en el párrafo anterior dentro del plazo aplicable, no se podrá desechar el trámite argumentando que está incompleto. En el supuesto de que el requerimiento de información se haga en tiempo, el plazo para que la dependencia correspondiente resuelve el trámite se suspenderá y se reanudará a partir del día hábil inmediato siguiente a aquel en el que el interesado conteste.

**ARTÍCULO 248.**

Salvo disposición expresa en contrario, los plazos para que la autoridad conteste empezarán a correr al día hábil inmediato siguiente a la presentación del escrito correspondiente.

**ARTÍCULO 249.**
El procedimiento administrativo continuará de oficio, sin perjuicio del impulso que puedan darle los interesados. En caso de corresponderle a estos últimos y no lo hicieren, operará la caducidad en los términos previstos en el presente Código.

**CAPÍTULO V**
**DE LOS PROMOVENTES**

**ARTÍCULO 250.**
1. Los promoventes con capacidad de ejercicio podrán actuar por sí o por medio de representante o apoderado.

2. La representación de las personas físicas o morales ante la Agencia Ambiental para formular solicitudes, participar en el procedimiento administrativo, interponer recursos, desistirse y renunciar a derechos, deberá acreditarse mediante instrumento público, y en el caso de personas físicas, también mediante carta poder firmada ante dos testigos y ratificadas las firmas del otorgante y testigos ante las propias autoridades o fedatario público, o declaración en comparecencia personal del interesado.

**ARTÍCULO 251.**
Sin perjuicio de lo anterior, el interesado o su representante legal mediante escrito firmado podrá autorizar a la persona o personas que estime pertinente para oír y recibir notificaciones, realizar trámites, gestiones y comparecencias que fueren necesarios para la tramitación de tal procedimiento, incluyendo la interposición del recurso de revisión.

**ARTÍCULO 252.**
Cuando en una solicitud, escrito o comunicación figuren varios interesados, las actuaciones a que den lugar se efectuarán con el representante común o interesado que expresamente hayan señalado y, en su defecto, con el que figure.

**CAPÍTULO VI**
**DE LOS TÉRMINOS Y PLAZOS**

**ARTÍCULO 253.**
Las actuaciones y diligencias administrativas se practicarán en días y horas hábiles. Los días considerados como inhábiles serán los sábados y domingos; los que se señalen como de descanso obligatorio por las disposiciones de la Ley Federal del Trabajo y los días en que se tengan vacaciones generales o así se determine en virtud de las disposiciones de la Ley del Trabajo de los Servidores Públicos del Estado de Tamaulipas.

**ARTÍCULO 254.**
1. Los términos podrán suspenderse por causa de fuerza mayor o caso fortuito, debidamente fundada y motivada por la Agencia Ambiental.

2. Cuando así lo requiera la Agencia Ambiental podrá habilitar días inhábiles.

**ARTÍCULO 255.**
1. En los plazos establecidos por periodos se computarán todos los días; cuando se fijen por mes o por año se entenderá que el plazo concluye el mismo número de día del mes o año de calendario que corresponda, respectivamente; cuando no exista el mismo número de día en el mes de calendario correspondiente, el término será el primer día hábil del siguiente mes de calendario.

2. Si el último día del plazo o la fecha determinada son inhábiles o las oficinas ante las que se vaya a hacer el trámite permanecen cerradas durante el horario normal de labores, se prorrogará el plazo hasta el siguiente día hábil.

3. Cuando el último día del plazo sea inhábil, se entenderá prorrogado hasta el día hábil siguiente.

**ARTÍCULO 256.**
1. Las diligencias o actuaciones del procedimiento administrativo se efectuarán en un horario de 8:00 a 16:00 horas. Una diligencia iniciada en horas hábiles podrá  concluirse en día y hora inhábiles sin afectar su validez.

2. Cuando así lo requiera, la Agencia Ambiental podrá habilitar horas inhábiles.

**ARTÍCULO 257.**
La Agencia Ambiental, podrá ampliar los términos y plazos establecidos en éste Código, sin que dicha ampliación exceda en ningún caso de la mitad del plazo previsto originalmente, cuando así lo exija el asunto y no se perjudiquen los derechos de los interesados o de terceros.

**ARTÍCULO 258.**
Para efectos de las notificaciones, citatorios, emplazamientos, requerimientos, visitas e informes, a falta de términos o plazos establecidos en el presente Código, estos no excederán de diez días.

**CAPÍTULO VII**
**DEL ACCESO A LA DOCUMENTACIÓN E INFORMACIÓN.**

**ARTÍCULO 259.**
1. Los promoventes en un procedimiento administrativo tendrán derecho de acceder a la documentación e información que obre en el expediente relacionado con el trámite de que se trate.

2. Los promoventes podrán solicitar que les sea expedida a su costa, copia certificada de los documentos contenidos en el expediente administrativo en el que se actúa.

**CAPÍTULO VIII**
**DE LA TRAMITACIÓN Y LAS PRUEBAS**

**ARTÍCULO 260.**
1. En el despacho de los expedientes se guardará y respetará el orden riguroso de tramitación en los asuntos de la misma naturaleza; la alteración del orden sólo podrá realizarse cuando exista causa debidamente motivada de la que quede constancia.

2. El incumplimiento a lo dispuesto en el párrafo anterior, será causa de responsabilidad para el servidor público infractor.

**ARTÍCULO 261.**
1. En los procedimientos administrativos ambientales se admitirán toda clase de pruebas, excepto la confesional de las autoridades y la testimonial. No se considerará comprendida en esta prohibición la petición de informes a las autoridades administrativas, respecto de hechos que consten en sus expedientes o de documentos agregados a ellos.

2. La Agencia Ambiental podrá allegarse los medios de prueba que considere necesarios, sin más limitaciones que las establecidas en la ley.

3. La Agencia Ambiental acordará sobre la admisibilidad de las pruebas ofrecidas. Sólo podrá rechazar las pruebas propuestas cuando no fuesen ofrecidas conforme a derecho, no tengan relación con el fondo

del asunto, sean improcedentes e innecesarias o contrarias a la moral y al derecho. Tal resolución deberá estar debidamente fundada y motivada.

**ARTÍCULO 262.**
1. El desahogo de las pruebas ofrecidas y admitidas se realizará dentro de un plazo no menor a tres ni mayor a quince días contados a partir de su admisión.

2. Si se ofreciesen pruebas que ameriten ulterior desahogo, se concederá al interesado un plazo no menor a ocho ni mayor a quince días para tal efecto.

3. Las pruebas supervenientes podrán presentarse siempre que no se haya emitido la resolución definitiva.

**ARTÍCULO 263.**
La Agencia Ambiental notificará a los interesados, con una anticipación de tres días, el inicio de las actuaciones necesarias para el desahogo de las pruebas que hayan sido admitidas.

**ARTÍCULO 264.**
Cuando las disposiciones legales así lo establezcan o se juzgue pertinente para la Agencia Ambiental, se solicitarán los informes u opiniones necesarios para resolver el asunto, citándose el precepto que lo exija o motivando, en su caso, la conveniencia de solicitarlos.

**ARTÍCULO 265.**
1. Los informes u opiniones de otros órganos administrativos podrán ser de obligatoria solicitud para la Agencia Ambiental cuando así se señale en éste Código, los demás tendrán carácter de solicitud discrecional.

2. Los informes u opiniones sólo serán vinculatorios cuando así lo establezca expresamente éste Código.

3. En todo caso, los informes u opiniones solicitados deberán incorporarse al expediente.

4. A la autoridad administrativa a la cual se le solicite un informe u opinión, deberá emitirlo dentro del plazo de quince días, salvo que alguna disposición establezca un plazo distinto. En éste supuesto se ampliará en quince días el plazo previsto por el Código para la emisión de la resolución correspondiente.

5. Si transcurrido el plazo a que se refiere el párrafo anterior, no se recibiese el informe u opinión, cuando se trate de informes u opiniones obligatorios o vinculantes, se entenderá que no existe objeción a las pretensiones del interesado.

**ARTÍCULO 266.**
1. Concluida la tramitación del procedimiento administrativo y antes de dictar resolución se pondrán las actuaciones a disposición de los interesados para que, en su caso, formulen alegatos, los que serán tomados en cuenta por la Agencia Ambiental al dictar la resolución.

2. En un plazo no mayor a cinco días los interesados podrán presentar por escrito sus alegatos.

3. Si antes del vencimiento del plazo los interesados manifestaran su decisión de no presentar alegatos, se tendrá por concluido el procedimiento.

**CAPÍTULO IX**
**DE LA TERMINACIÓN.**

**ARTÍCULO 267.**
Ponen fin al procedimiento administrativo:

I. La resolución del mismo;

II. El desistimiento;

III. La renuncia al derecho en que se funde la solicitud, cuando tal renuncia no esté prohibida por el ordenamiento jurídico;

IV. La declaración de caducidad; y

V. La imposibilidad material de continuarlo por causas supervenientes.

**ARTÍCULO 268.**
1. En el procedimiento administrativo ambiental iniciado a instancia del interesado, cuando se produzca su paralización por causas imputables al mismo durante un periodo de 45 días, se producirá la caducidad del mismo. La Agencia Ambiental hará el asiento correspondiente en el expediente y acordará el archivo de las actuaciones, notificándoselo al interesado. Contra la resolución que declare la caducidad procederá el recurso previsto en este Código.

2. La  caducidad no producirá por sí misma la prescripción de las acciones del particular, pero los procedimientos caducados no interrumpen ni suspenden el plazo de prescripción.

3. Cuando se trate de procedimientos administrativos ambientales iniciados de oficio, se entenderán caducados y se procederá al archivo de las actuaciones, a solicitud de parte interesada o de oficio, en el plazo de 45 días contados a partir de la expiración del plazo para dictar resolución.

**TITULO SEGUNDO**
**DEL PROCEDIMIENTO POR DAÑO AMBIENTAL.**
**CAPÍTULO ÚNICO**

**ARTÍCULO 269.**
1. Sin demérito de las responsabilidades penales, civiles y administrativas que procedan, quienes infrinjan daños ambientales causados en el territorio estatal, por acción u omisión, serán sujetos al procedimiento de cuantificación y compensación por daño ambiental.

2. En lo aplicable, el procedimiento por daño ambiental se tramitará conforme a las disposiciones del Título Primero de éste Libro.

**ARTÍCULO 270.**
Serán sujetos del procedimiento a que se refiere este Título:

I. Los responsables de las obras o actividades que hayan iniciado labores de construcción u operación, sin contar con la autorización correspondiente;

II. Quien o quienes, sin contar con la autorización expresa que se requiere de la Agencia Ambiental, aproveche, use, goce, disponga y, en general, utilice, con fines de lucro o sin él, los recursos naturales, flora y fauna silvestres o los recursos bióticos de las áreas naturales protegidas de competencia estatal;

III. Los responsables de emisiones a la atmósfera, descargas, acopio, disposición o manejo de contaminantes, aguas residuales o residuos de manejo especial, sin el permiso o autorización de la Agencia Ambiental, cuando sean requeridos en términos del presente Código, o aún contando con el permiso o autorización, se produzcan efectos ambientales excedentes de los parámetros autorizados;

IV. El que contando con un permiso o autorización o en la gestión para obtenerla, proporcione datos falsos a la Agencia Ambiental en informes, manifestaciones, reportes, registros, cédulas y, en general, cualquier información a la que estén obligados en términos de este Código, siempre que  de tal falsedad se pueda presumir la existencia de un daño ambiental;

V. El que contamine o deteriore el ambiente o afecte los recursos naturales o la biodiversidad y cuya consecuencia sea un daño ambiental; y

VI. El que por acción u omisión genere un daño ambiental.

**ARTÍCULO 271.**
El procedimiento por daño ambiental podrá ser iniciado por la Agencia Ambiental, la cual ordenará las medidas de seguridad, correctivas o de urgente aplicación que procedan.

**ARTÍCULO 272.**
1. Sin demérito de las facultades de la Agencia Ambiental, los responsables de las obras o actividades referidas en el artículo 270, podrán solicitar voluntariamente de la Agencia Ambiental la evaluación de un estudio de daños ambientales bajo los lineamientos que para tal efecto formule la propia Agencia.

2. El estudio deberá contener, por lo menos:

I. Evidencia de la condición ambiental que prevalecía en el sitio previo a la realización de las obras o actividades;

II. Análisis, cuantificación y valorización de los impactos generados por la obra o actividad, así como de los impactos sinérgicos generados;

III. Análisis, en su caso, del riesgo; y

IV. Propuesta de medios de mitigación y compensación a los impactos identificados.
**ARTÍCULO 273.**
En cualquier momento del procedimiento de evaluación del daño ambiental, la Agencia Ambiental podrá suspender las obras o actividades iniciadas, cuando el impacto adverso ocasionado haya atentado, atente o pueda ocasionar afectaciones contra la salud de las personas, o riesgo para el equilibrio ecológico, los ecosistemas o los recursos que lo integran, y los bienes y propiedades pertenecientes a los particulares.

**ARTÍCULO 274.**
1. La recepción del estudio para la evaluación por daño ambiental a cargo de la Agencia Ambiental no presupone la autorización de la obra o actividad causante del daño; sin embargo, el interesado podrá solicitar autorización para continuar con la misma durante el procedimiento de su evaluación, para lo cual deberá garantizar fehacientemente, a juicio de la Agencia Ambiental, la reparación del probable daño ambiental causado o que pudiere causar y las sanciones por las violaciones al Código en las que hubiere incurrido.

2. La solicitud referida en el párrafo anterior deberá presentarse bajo protesta de decir verdad, conteniendo la descripción de los actos y omisiones que causaron el procedimiento.

3. Una vez presentada y autorizada la garantía, la Agencia Ambiental podrá acordar la continuación de la obra o la actividad, siempre que la misma no implique:

I. La Contravención del interés público;

II. La presunción de una afectación grave o irreversible al medio ambiente, los ecosistemas o la biodiversidad conforme los elementos de juicio de que se disponga;

III. La pretensión de un objeto distinto del uso del suelo al autorizado por la autoridad competente;

IV. El desarrollo de actividades riesgosas competencia del Estado;

V. El aprovechamiento de fauna o flora silvestres o de recursos forestales; y

VI. La actuación en áreas naturales protegidas.

**ARTÍCULO 275.**
1. Una vez recibido el estudio por daño ambiental, la Agencia Ambiental, lo evaluará y, considerando la gravedad del daño ambiental, el lucro obtenido por el responsable, los beneficios o perjuicios al desarrollo sustentable regional que pudiera generar la obra o actividad de que se trate, el impacto ambiente ocurrido previamente a la causal del procedimiento y la reincidencia del responsable, podrá:

I. Autorizar la obra o actividad;

II. Autorizar la obra o actividad de manera condicionada; y

III. Negar definitivamente la autorización para la obra o actividad.

2. Así mismo, el dictamen contendrá los montos, conceptos, condiciones y alcances técnicos de la reparación del daño ambiental causado.

3. En todo caso, se aplicará la garantía presentada por el particular para la autorización provisional de la continuación de la obra o actividad.

**ARTÍCULO 276.**
En los casos en que la Agencia Ambiental tenga conocimiento de actos u omisiones que pudieran constituir delitos, conforme a lo previsto en el Código Penal para el Estado, deberá formular y presentar la denuncia ante la autoridad competente de procuración de justicia.

**ARTÍCULO.277.**
En los casos de personas morales responsables de daños ambientales o contra la gestión ambiental, sus representantes serán subsidiaria y solidariamente responsables, de conformidad a las disposiciones legales correspondientes.

**LIBRO SÉPTIMO**

**DE LOS PROCEDIMIENTOS ESPECIALES Y LAS SANCIONES**

**TÍTULO I**
**DE LA DENUNCIA POPULAR**
**CAPITULO ÚNICO**

**ARTÍCULO 278.**
1. Toda persona, grupo social, organización no gubernamental, asociación y sociedad, por sÍ o mediante un representante común, podrán denunciar ante la Agencia Ambiental, cualquier hecho, acto u omisión que produzca o pueda producir desequilibrio ecológico o daños al medio ambiente o a los recursos naturales, o contravenga las disposiciones del presente Código y de los demás ordenamientos que regulen materias relacionadas con la protección al ambiente y la preservación y restauración del equilibrio ecológico.

2. Cuando una autoridad estatal o municipal sin competencia en la materia reciba una denuncia de las referidas en el párrafo anterior, deberá turnarla a la autoridad competente para su atención y desahogo en un plazo que no exceda los diez días hábiles contados a partir de la fecha en que se recibió la misma.

**ARTÍCULO 279.**

1. La denuncia popular podrá interponerse por cualquier persona, bastando que se presente por escrito y contenga:

I. El nombre o razón social, domicilio, teléfono si lo tiene, del denunciante y, en su caso, de su representante legal;

II. Los actos, hechos u omisiones denunciados;

III. Los datos que permitan identificar al presunto infractor o localizar la fuente contaminante; y

IV. Las pruebas que,  en su caso,  ofrezca.

2. Asimismo, podrá formularse la denuncia por vía telefónica o por los medios electrónicos de comunicación, en cuyo supuesto el servidor público que la reciba levantará acta circunstanciada y el denunciante deberá ratificarla por escrito, cumpliendo con los requisitos establecidos en el presente artículo, en un término de cinco días hábiles siguientes a la formulación de la denuncia, sin perjuicio de que la autoridad competente investigue de oficio los hechos constitutivos de la misma.

3. No se admitirán denuncias notoriamente improcedentes o infundadas, o aquéllas en las que se advierta mala fe, lo cual se notificará al denunciante.

4. El denunciante podrá solicitar a la autoridad correspondiente, guardar secreto respecto de su identidad, por razones de seguridad, sin perjuicio del seguimiento de la denuncia conforme a las atribuciones que le otorgan el presente Código y demás disposiciones jurídicas aplicables.

### ARTÍCULO 280.
Con base en la recepción de la denuncia en términos de los supuestos del articulo anterior, la Agencia Ambiental o, en su caso, el Ayuntamiento, llevarán a cabo las diligencias necesarias para la comprobación de los hechos denunciados y realizará la evaluación correspondiente.

### ARTÍCULO 281.
1. La Agencia Ambiental con base en sus atribuciones,  iniciará las acciones que procedan, ante las autoridades competentes, cuando conozca de actos, hechos u omisiones que constituyan violaciones a la legislación vigente.

2. Lo anterior sin demérito de lo que corresponda a los procesos de inspección y vigilancia.

### ARTÍCULO 282.
1. La Agencia Ambiental o el Ayuntamiento, en su caso, dispondrá las acciones de inspección procedentes con la celeridad que amerite los hechos denunciados conforme las disposiciones de este Libro, al practicar la notificación a la persona o personas a quienes se imputen los hechos denunciados o a quienes pueda afectar el resultado de la acción emprendida.

2. Hecha la notificación el presunto responsable deducirá sus derechos en términos de las disposiciones de inspección y vigilancia de este Libro.

### ARTÍCULO 283.
La Agencia Ambiental, a más tardar dentro de los quince días hábiles siguientes a la presentación de la denuncia, hará del conocimiento del denunciante, el trámite que se haya dado a aquélla y, en su oportunidad, el resultado de la verificación de los hechos objeto de la denuncia, así como de las medidas y sanciones impuestas, en su caso, dentro de la resolución correspondiente.

### TÍTULO II
### DE LA INSPECCIÓN Y VIGILANCIA
### CAPÍTULO ÚNICO

### ARTÍCULO 284.
Las disposiciones de este Libro se aplicarán en la realización de actos de inspección y vigilancia, ejecución de medidas de seguridad, determinación de infracciones administrativas y sus sanciones, según corresponda, cuando se trate de asuntos regulados por el presente Código.

**ARTÍCULO 285.**
1. Las autoridades competentes podrán realizar, por conducto del personal debidamente autorizado, visitas de inspección para verificar el cumplimiento de este ordenamiento.

2. Dichas visitas podrán ser ordinarias, que se efectuarán en días y horas hábiles, y extraordinarias, que podrán efectuarse en todo momento.

**ARTÍCULO 286.**
1. Para practicar una visita, los inspectores deberán contar con identificación vigente con fotografía, emitida por la autoridad administrativa correspondiente que los acredite para desempeñar dicha función, así como estar provistos de orden escrita con firma autógrafa expedida por la autoridad competente, debidamente fundada y motivada, en la que deberá señalarse zona o el lugar que habrá de inspeccionarse, el objeto de la visita y el alcance que deba tener ésta.

2. Los propietarios, responsables, encargados u ocupantes de establecimientos objeto de inspección, estarán obligados a permitir el acceso y dar facilidades e informes a los inspectores para el desarrollo de su labor.

3. Al iniciar la visita, el inspector deberá identificarse debidamente y entregar copia autógrafa de la orden de inspección al propietario, responsable, encargado u ocupante del establecimiento y con dicha persona se entenderá la visita de inspección.

**ARTÍCULO 287.**
1. Al iniciarse la inspección se levantará acta circunstanciada, en presencia de dos testigos propuestos por la persona con quien se entienda la visita; si éstos no son designados o los designados no aceptan servir como tales, los inspectores los designarán. Los designados como testigos pueden ser sustituidos en cualquier tiempo por no comparecer al lugar donde se esté llevando a cabo la inspección, por ausentarse de él antes de que concluya la diligencia o por manifestar su voluntad de dejar de ser testigos, en tales circunstancias la persona con la que se entienda la inspección deberá designar de inmediato otros y ante la negativa o impedimento de los designados, los inspectores podrán designar a quienes deban sustituirlos.

2. La sustitución, concurrencia o ausencia de los testigos no afectará la validez de la visita, ni el acta, siempre y cuando el verificador haga constar la circunstancia en esta última.

3. Se dejará copia del acta circunstanciada a la persona con quien se entendió la diligencia, aunque se hubiere negado a firmar, lo que no afectará la validez de la misma ni del documento de que se trate.

4. En las actas se hará constar:

I. Nombre, denominación o razón social del inspeccionado;

II. Hora, día, mes y año en que se inicie y concluya la diligencia;

III. Calle, número, población, colonia, o alguna otra referencia para establecer su ubicación geográfica, así como, teléfono u otra forma de comunicación disponible, además; Municipio y código postal en que se encuentre ubicado el lugar donde se practique la visita;

IV. Número y fecha del oficio que contenga la orden, así como autoridad que la expide;

V. Nombre y cargo de la persona con quien se entendió la diligencia;

VI. Nombre, domicilio y forma de identificación de las personas que fungieron como testigos;

VII. Hechos circunstanciados referentes a la actuación;

VIII. Manifestación del visitado, en su caso, si quiere hacerla o razón de su negativa; y,

IX. Nombre y firma de quienes intervinieron en la diligencia incluyendo los de quien o quienes la hubieren llevado a cabo. Si se negaran a firmar el visitado o su representante legal, ello no afectará la validez del acta, debiendo el verificador asentar la razón relativa, en su caso.

5. La persona con quien se entienda la visita, podrá formular observaciones al final de la misma, las cuales deberán quedar asentadas en el acta; asimismo, podrá ofrecer pruebas en relación a los hechos contenidos en ella, o bien ofrecerlas por escrito dentro del término de cinco días hábiles siguientes a la fecha en que se hubiere levantado.

**ARTÍCULO 288.**
La Agencia Ambiental o los Ayuntamientos, en su caso, de conformidad con las disposiciones aplicables podrán verificar bienes, personas y vehículos de transporte con el objeto de comprobar el cumplimiento de las disposiciones legales, para lo cual se deberán cumplir, en lo conducente, las formalidades previstas para las visitas de verificación.

**ARTÍCULO 289.**
La autoridad competente podrá solicitar el auxilio de la fuerza pública para efectuar la visita de inspección, cuando alguna o varias personas obstaculicen o se opongan a la practica de las misma, sin demérito  a las sanciones que correspondan.

**ARTÍCULO 290.**
1. Recibida el acta de inspección por la autoridad ordenadora, se requerirá al interesado, mediante notificación personal o por correo certificado con acuse de recibo, para que adopte de inmediato las medidas correctivas o urgentes necesarias para cumplir con las disposiciones jurídicas aplicables, así como con los permisos, licencias, autorizaciones o concesiones respectivas, fundando y motivando el requerimiento, señalando el plazo que corresponda, y para que dentro del término de quince días hábiles exponga lo que a su derecho convenga y, en su caso, aporte las pruebas que considere procedentes, en relación con la actuación de la Agencia Ambiental o los Ayuntamientos, cuando les corresponda.

2. El tiempo para el desahogo de pruebas será de quince días. De ser el caso, y cuando la naturaleza de las pruebas lo amerite, la Agencia Ambiental o los Ayuntamientos, según corresponda, podrán acordar la ampliación para el desahogo de las pruebas.

3. Admitidas y desahogadas las pruebas ofrecidas por el interesado, o habiendo transcurrido el plazo a que se refiere el párrafo anterior, sin que haya hecho uso de ese derecho, se pondrán a su disposición las actuaciones, para que en un plazo tres días hábiles, presente por escrito sus alegatos. Sin importar que el interesado haya hecho uso o no de su derecho de ofrecer pruebas, la autoridad deberá acordar lo conducente.

4. Una vez oído al presunto infractor, recibidas y desahogadas las pruebas que ofreciere, en caso de que el interesado no haya hecho uso del derecho que le concede el párrafo anterior dentro del plazo mencionado, se procederá a dictar la resolución administrativa que corresponda, dentro de los treinta días hábiles siguientes, misma que se notificará al interesado personalmente o por correo certificado.

**ARTÍCULO 291.**
1. En la resolución administrativa correspondiente se señalarán o, en su caso, adicionarán las medidas que deberán llevarse a cabo para corregir las deficiencias o irregularidades observadas, el plazo otorgado al infractor para satisfacerlas y las sanciones a que se hubiere hecho acreedor conforme a las disposiciones aplicables.

2. Dentro de los cinco días hábiles que sigan al vencimiento del plazo otorgado al infractor para subsanar las deficiencias o irregularidades observadas, éste deberá comunicar por escrito y en forma detallada a la autoridad ordenadora haber dado cumplimiento a los términos del requerimiento respectivo. En los casos en que el infractor cumpla con las medidas ordenadas por la autoridad, o subsane las irregularidades que

motivaron la imposición de la sanción, la autoridad podrá modificar o revocar la sanción impuesta. Para ello, el infractor no deberá ser reincidente.

**ARTÍCULO 292.**
Cuando así proceda, la Agencia Ambiental o los Ayuntamientos, en su caso,  harán del conocimiento del Ministerio Público la realización de actos u omisiones constatados en el ejercicio de sus facultades que pudieran configurar uno o más delitos.

**TÍTULO TERCERO**
**CAPÍTULO ÚNICO**
**DE LAS MEDIDAS DE SEGURIDAD**

**ARTÍCULO 293.**
1. En casos donde se presenten emergencias ecológicas o contingencias ambientales que no rebasen el territorio del Estado y no requieran de la acción exclusiva de la Federación o en casos de contaminación con repercusiones peligrosas para la salud humana, la biodiversidad, los ecosistemas y sus componentes,  el titular de la Agencia Ambiental y los Ayuntamientos podrán ordenar como medida de seguridad la retención de sustancias o materiales contaminantes, la clausura temporal, parcial o total de las fuentes contaminantes y promoverán ante las autoridades competentes en los términos de las disposiciones aplicables, la ejecución de las medidas de seguridad que se establezcan para tal efecto.

2. Cuando los ordenamientos a que se refiere el párrafo anterior, no incluyan medidas de seguridad para hacer frente a los riesgos de desequilibrio ecológico, la Agencia Ambiental o los Ayuntamientos previa opinión de las autoridades competentes, emitirán las disposiciones conducentes.

**ARTÍCULO 294.**
1. Cuando la Agencia Ambiental o los Ayuntamientos, en caso de su competencia, estimen que existe riesgo inminente de desequilibrio ecológico, de daño o deterioro graves a los elementos y recursos naturales; casos de contaminación con repercusiones peligrosas para la salud de las personas, los ecosistemas o sus componentes, podrán ordenar alguna o algunas de las medidas de seguridad siguientes:

I. La clausura temporal parcial o total, de las fuentes contaminantes, de las instalaciones en que se manejen o almacenen productos o subproductos de sustancias contaminantes, o se desarrollen las actividades que den lugar a los supuestos a que se refiere el presente artículo;

II. El aseguramiento precautorio de materiales que se manejen en la realización de actividades riesgosas, así como de especímenes, bienes, vehículos, utensilios e instrumentos directamente relacionados con la conducta que dé lugar a la imposición de la medida de seguridad;

III. La neutralización o cualquier acción análoga para impedir que materiales que se manejen en la realización de actividades riesgosas, generen los efectos previstos en este artículo; y

IV. La suspensión de obras o actividades.

2. La Agencia Ambiental  o los Ayuntamientos, en su caso, podrán promover ante la autoridad competente la ejecución de alguna o algunas de las medidas de seguridad que se establezcan en otros ordenamientos.

**ARTÍCULO 295.**
Cuando la autoridad competente ordene alguna de las medidas de seguridad a que se refiere el artículo anterior, indicará al interesado las acciones que deberán llevarse a cabo para subsanar las irregularidades, así como los plazos para su realización a fin de que una vez cumplidas se ordene el retiro de la medida de seguridad impuesta.

**TITULO CUARTO**
**DE LAS INFRACCIONES Y SANCIONES ADMINISTRATIVAS**

**CAPITULO I**
**DISPOSICIONES GENERALES.**

**ARTÍCULO 296.**
1. Para la imposición de las sanciones por infracciones a este Código, se tomará en cuenta:

I. La gravedad de la infracción, considerando principalmente los siguientes criterios: impacto en la salud de las personas; generación de desequilibrios ecológicos; la afectación de recursos naturales o de la biodiversidad; y, en su caso, los niveles en que se hubieran rebasado los límites establecidos en las Normas Oficiales Mexicanas o las Normas Ambientales Estatales aplicables;

II. Las condiciones económicas del infractor;

III. La reincidencia, si la hubiere;

IV. El carácter intencional o negligente de la acción u omisión constitutiva de la infracción;

V. El beneficio directamente obtenido por el infractor por los actos que motiven la sanción; y

VI. El cumplimiento voluntario de las obligaciones ambientales.

**ARTÍCULO 297.**
1. Solo tratándose del pago de multas la autoridad competente, podrá otorgar al infractor la opción para pagarla o de realizar inversiones equivalentes en la adquisición e instalación de equipo para evitar contaminación o en la que se deberá indicar al infractor las protección, preservación o restauración del medio ambiente y los recursos naturales, siempre y cuando se garanticen las obligaciones del infractor.

2. En los casos de infracciones a este Código que impliquen la reparación del daño causado al medio ambiente, la Agencia Ambiental o los Ayuntamientos, en su caso, no podrán establecer ninguna excepción o condonación al cumplimiento de las obligaciones correlativas.

**ARTÍCULO 298.**
Cuando proceda como sanción la clausura temporal o definitiva, total o parcial, el personal comisionado para ejecutarla procederá en el acto a levantar acta circunstanciada de los hechos u omisiones encontrados en la que se deberá indicar al infractor las medidas correctivas o de urgente aplicación, las acciones que deberá llevar a cabo para subsanar las irregularidades que motivaron dicha sanción y los plazos para su realización.

**ARTÍCULO 299.**
1. Las infracciones a las disposiciones de este Código que no cuenten con una sanción en específico, serán resueltas mediante la amonestación y en caso de reincidencia, se aplicará multa de 100 a 500 días de salario mínimo vigente en la capital del Estado.

2. Los Ayuntamientos regularán las sanciones administrativas por violaciones a los reglamentos que expidan en esta materia.

**ARTÍCULO 300.**
1. La Agencia y los Ayuntamientos, en su caso, podrán establecer programas para el cumplimiento voluntario de las obligaciones ambientales fuera de los plazos señalados por los ordenamientos aplicables. Dicho cumplimiento no eximirá de la responsabilidad contraída por el infractor y de que, a través del procedimiento administrativo pertinente se le imponga la sanción que corresponda. En caso de que proceda la imposición de una multa esta podrá ser reducida entre un treinta a un sesenta por ciento en su monto de acuerdo a lo previsto en el presente Código, sobre la base de las características y gravedad de las obligaciones incumplidas.

2. Se considerará que el cumplimiento no es voluntario en los siguientes casos:

I. Exista cualquier procedimiento administrativo abierto por el cumplimento específico de dichas obligaciones;

II. Se encuentre dentro del término de cinco días otorgados para manifestar lo que a su derecho convenga después de practicada una visita de inspección por parte de la Agencia Ambiental o los Ayuntamientos, en su caso;

III. Se le haya dejado citatorio por parte de la Agencia Ambiental o el Ayuntamiento, en su caso, en el que se le informe la fecha y hora en la que se va practicar una visita de inspección;

IV. Después de iniciado un trámite donde sea necesario o la autoridad le requiera comprobante del cumplimento de la obligación ambiental;

V. Existan obligaciones incumplidas en materia de impacto ambiental; y

VI. Cualquier otra que señale la legislación aplicable.

3. La amonestación escrita, la multa y el arresto administrativo podrán ser conmutados por trabajo comunitario en actividades de conservación de la vida silvestre y su hábitat natural.

**ARTÍCULO 301.**
1. La Agencia Ambiental podrá solicitar a instituciones de educación superior, centros de investigación y de expertos reconocidos en la materia, la elaboración de dictámenes que serán considerados en la emisión de las resoluciones que pongan fin a los procedimientos administrativos a que se refiere este Código, así como en otros actos que realice la propia Agencia Ambiental.

2. En caso de se acredite la infracción, el costo del dictamen solicitado será considerado al momento de establecer la sanción pecuniaria, cuando así proceda.

**ARTÍCULO 302.**

A solicitud de los interesados, la Agencia Ambiental y los Ayuntamientos, en su caso,  podrán celebrar convenios en los que pongan fin a un procedimiento en concreto, siempre que concurran las siguientes condiciones:

I. Impliquen el incumplimiento de una norma imperativa, para la protección de la salud humana, el medio ambiente y el desarrollo sustentable;

II. No sean contrarios al interés público; y

III. No sean contrarios a la ley.

**ARTÍCULO 303.**
Los ingresos que se obtengan de las multas por infracciones a lo dispuesto en este Código, sus Reglamentos y demás disposiciones aplicables, así como los que se obtengan del remate en subasta pública o la venta directa de los bienes decomisados, se destinarán a la integración de los fondos y fideicomisos establecidos en el presente ordenamiento para desarrollar programas vinculados con los objetos materia del mismo.

**CAPÍTULO II**
**DE LAS SANCIONES POR ACTOS EN CONTRA DEL**
**MEDIO AMBIENTE.**
**ARTÍCULO 304.**
Las violaciones a los preceptos de este Código, constituyen infracción y serán sancionadas administrativamente por la Agencia Ambiental o los Ayuntamientos, en el ámbito de sus competencias, de la siguiente forma:

I. Amonestación a quien;

a) No presente información solicitada por autoridad competente en materia ambiental; y

b) Incumpla con la presentación en tiempo y forma de la cédula de operación anual.

II. Multa equivalente de 20 a 100 días de salario mínimo vigente en la capital del Estado a quien:

a) Incumpla las medidas de ahorro de agua potable;

b) Habiendo sido amonestado haga caso omiso a las disposiciones establecidas por el Estado o los Ayuntamientos;

c) No cumpla con las disposiciones establecidas en materia de emisiones a la atmósfera generadas por fuente móvil; o

d) Trasplante un árbol público o afecte negativamente áreas verdes o jardineras públicas, incluyendo las localizadas en banquetas y camellones, sin la autorización previa de la autoridad competente.

III. Multa equivalente de 100 a 500 días de salario mínimo vigente en la capital del Estado a quien:

a) Rebase los límites permisibles de ruido, vibraciones, energía térmica, y lumínica, vapores, gases u olores;

b) No respete los límites o disposiciones establecidos por autoridad competente, en materia de emisiones a la atmósfera por fuente fija;

c) Posterior a la amonestación, no presente la cédula de operación anual en los términos solicitados por la Agencia Ambiental o los Ayuntamientos, cuando les corresponda;

d) Opere sistemas o plantas de tratamiento sin cumplir con las condiciones particulares de descarga de aguas residuales;

e) Construya una obra nueva, amplíe una existente o realice nuevas actividades industriales, comerciales o de servicios, que puedan ocasionar un daño al medio ambiente, sin contar con resolutivo en materia de impacto ambiental o haga caso omiso a las condicionantes establecidas en dicha disposición;

f) Obstruya la labor del personal autorizado al realizar la inspección ambiental fundamentada por orden escrita; o

g) Se conduzca con falsedad en los informes preventivos, manifestaciones de impacto ambiental, estudios de riesgo o estudios de daños ambientales.

IV. Multa equivalente de 1,000 a 5,000 días de salario mínimo vigente en la capital del Estado a quien no aplique las medidas de urgente aplicación en tiempo y forma, impuestas como resultado de procedimiento de inspección ambiental;

V. Multa equivalente de 5,000 a 20,000 días de salario mínimo vigente en la capital del Estado a quien:

a) Realice obras o actividades que dañen gravemente el medio ambiente o que pongan en peligro la salud de las personas; o

b) Se abstenga de reparar cuando se realicen obras o actividades afectadas de exploración, explotación o manejo de minerales o cualquier depósito del subsuelo, los daños ecológicos causados al suelo, subsuelo y estructuras geomorfológicas.

VI. Clausura temporal o definitiva, parcial o total, cuando:

a) El infractor hubiere incumplido dentro de los plazos y condiciones impuestos por la autoridad, con las medidas correctivas o de urgente aplicación ordenadas;

b) En casos de reincidencia cuando las infracciones generen efectos adversos al ambiente o a la salud de las personas o al medio ambiente; o

c) En casos de incumplimiento en tres o más ocasiones, a alguna o algunas medidas correctivas o de urgente aplicación impuestas por la autoridad.

VII. Arresto administrativo hasta por treinta y seis horas, en los siguientes casos:

a) Cuando derivado de dos o más visitas de inspección en el transcurso de un año, el propietario, poseedor o responsable del establecimiento hubiere incumplido con las medidas técnicas y de seguridad que la autoridad respectiva haya decretado, y que con tal omisión se causara o hubiese causado grave deterioro ambiental con repercusiones graves para la salud de las personas o los ecosistemas; o

b) Cuando habiéndose decretado como medida de seguridad una suspensión temporal parcial o total en los casos previstos por el presente Código, el propietario, poseedor o responsable del establecimiento no hubiese acatado tal medida, inclusive para el caso de rompimiento de sellos de clausura, sin perjuicio de la denuncia en su caso ante el Ministerio Público por el delito o delitos que resulten o pudiesen resultar.

VIII. La revocación del permiso, licencia o autorización que en el ámbito de su competencia hubieren otorgado, cuando así lo amerite la naturaleza y gravedad de la infracción; y

IX. La reparación del daño ambiental, bajo los términos que la autoridad ambiental competente establezca para su cumplimiento.

2. A su vez, la autoridad ambiental competente podrá solicitar a quien los hubiere otorgado, la suspensión, revocación, o cancelación de la concesión, permiso, licencia y, en general, de toda autorización otorgada para la realización de actividades comerciales, industriales o de servicios o para el aprovechamiento de recursos naturales que haya dado lugar a la sanción impuesta en términos de este artículo.

3. La autoridad ordenadora podrá conmutar el arresto impuesto por multa, siempre y cuando se garantice, a juicio de la dependencia respectiva, el cumplimiento de las medidas correctivas que se hubiesen decretado.

4. En el caso de reincidencia, el monto de la multa podrá ser hasta por dos veces el monto originalmente impuesto, sin exceder el doble del máximo permitido, así como la clausura definitiva. Son reincidentes las personas declaradas infractoras por haber incurrido en igual acto u omisión en un lapso no mayor de cinco años.

**CAPÍTULO III**
**DE LAS SANCIONES POR EL MANEJO DE**
**RESIDUOS.**

**ARTÍCULO 305.**
Las violaciones a los preceptos del Libro Tercero del presente ordenamiento, constituyen infracción y serán sancionadas administrativamente por la Agencia Ambiental o los Ayuntamientos, en el ámbito de sus competencias, de la siguiente forma:

I. Multa equivalente de 20 a 100 días de salario mínimo vigente en la capital del Estado a quien, deposite, incentive, abandone, derrame o queme residuos sólidos urbanos en bienes de uso común, caminos, carreteras, derechos de vía, lotes baldíos, predio de propiedad privada y cuerpos o corrientes de agua de competencia estatal;

II. Multa equivalente de 100 a 500 días de salario mínimo vigente en la capital del Estado a quien:

a) No respete los límites o disposiciones establecidos por autoridad competente, en materia de descargas de aguas residuales o que como consecuencia de su acción se perjudiquen las redes de drenaje y alcantarillado o cuerpos receptores de los Municipios; o

b) Opere sistemas o plantas de tratamiento sin cumplir con las condiciones particulares de descarga de aguas residuales.

III. Multa equivalente de 1,000 a 5,000 días de salario mínimo vigente en la capital del Estado a quien:

a) Genere, maneje o disponga residuos de manejo especial sin previa autorización;

b) Deposite, incentive, abandone, derrame o queme residuos de manejo especial en bienes de uso común, caminos, carreteras, derechos de vía, lotes baldíos, predio de propiedad privada y cuerpos o corrientes de agua de competencia estatal; o

c) Autorice el uso para la disposición de residuos de manejo especial o sólidos urbanos sin la autorización de la Agencia Ambiental.

## CAPÍTULO IV
## DE LAS INFRACCIONES Y SANCIONES ADMINISTRATIVAS POR
## ACTOS EN CONTRA DE LAS ÁREAS NATURALES PROTEGIDAS

**ARTÍCULO 306.**
Las violaciones a los preceptos del Libro Cuarto del presente ordenamiento, constituyen infracción y serán sancionadas administrativamente por la Agencia Ambiental o los Ayuntamientos, en el ámbito de sus competencias, de la siguiente forma:

I. Multa equivalente de 1,000 a 5,000 días de salario mínimo vigente en la capital del Estado a quien, realice obras o actividades de explotación o aprovechamiento de recursos, que no estén autorizadas, en áreas naturales protegidas de competencia estatal; y

II. Multa equivalente de 5,000 a 20,000 días de salario mínimo vigente en la capital del Estado a quien, ocasione, como consecuencia de su acción, un daño sobre cualquier área natural protegida de competencia estatal.

## CAPÍTULO V
## DE LAS INFRACCIONES Y SANCIONES ADMINISTRATIVAS POR
## ACTOS EN CONTRA DE LA VIDA SILVESTRE

**ARTÍCULO 307.**
Las violaciones a los preceptos del Libro Quinto del presente ordenamiento, constituyen infracción y serán sancionadas administrativamente por la Agencia Ambiental o los Ayuntamientos, conforme a lo que se establezca en los Convenios de Colaboración y Coordinación que estos celebren con la Federación, referentes a la materia de protección a la Vida Silvestre.

## LIBRO OCTAVO
## DE LOS MEDIOS DE IMPUGNACIÓN

## TÍTULO ÚNICO
## CAPÍTULO I
## DEL RECURSO DE REVISIÓN

**ARTÍCULO 308.**
1. Los actos y resoluciones dictados con motivo de la aplicación de este Código, sus reglamentos y demás disposiciones relativas, podrán ser recurridas por los interesados en el término de quince días hábiles siguientes a la fecha de su notificación.

2. El recurso se presentará ante el órgano o la unidad administrativa que emitió el acto o resolución.

**ARTÍCULO 309.**
El recurso de revisión se interpondrá por escrito debiendo el promovente depositar fianza de garantía suficiente para garantizar el acto o la resolución impugnada, ante el titular de la Agencia Ambiental, en el caso del Estado, y ante el Presidente Municipal respectivo, en el caso de los Ayuntamientos, sin perjuicio de lo que en esta materia dispongan los bandos, ordenanzas, reglamentos municipales, personalmente o por correo certificado con acuse de recibo, en cuyo caso se tendrá como fecha de presentación la del día en que el escrito correspondiente se haya depositado en el Servicio Postal Mexicano.

**ARTÍCULO 310.**

En el escrito de interposición del recurso de revisión, el interesado deberá expresar lo siguiente:

I. El órgano administrativo a quien se dirige;

II. El nombre del recurrente; y del tercero perjudicado si lo hubiere, así como el domicilio que señale para oír y recibir notificaciones y documentos;

III. El acto o resolución administrativo que impugna, así como la fecha en que fue notificado de la misma o bien tuvo conocimiento de esta;

IV. La autoridad emisora de la resolución que recurre;

V. La descripción de los hechos antecedentes de la resolución que se recurre;

VI. Los agravios que le causan y los argumentos de derecho en contra de la resolución que se recurre; y
VII.  Las pruebas que se ofrezcan, relacionándolas con los hechos que se mencionan.

**ARTÍCULO 311.**
Con el recurso de revisión se deberán acompañar los siguientes documentos:

I. Los  que acrediten la personalidad del promovente, cuando actúe en nombre de otro o de persona moral;

II. La notificación del acto impugnado; si la notificación fue por edictos se deberá acompañar la última publicación o la manifestación bajo la protesta de decir verdad de la fecha en que tuvo conocimiento de la resolución;

III. Aquellos en los que conste el acto o la resolución recurrida, cuando dicha actuación haya sido por escrito, o tratándose de actos que por no haberse resuelto en tiempo se entiendan negados, deberá acompañarse por escrito de iniciación del procedimiento, o el documento por el cual no hubiere recaído resolución alguna; y

IV. Las pruebas que se acompañen, junto con el pliego de posiciones, en su caso.

**ARTÍCULO 312.**
1. El promovente podrá ofrecer como medios de prueba, los que  estime conducentes a la demostración de sus pretensiones, salvo la confesional de la autoridad y los testimoniales siendo admisibles cualesquiera que sean adecuados para que produzcan convicción en el titular de la Agencia Ambiental o el Presidente Municipal, en su caso.

2. Son admisibles los siguientes medios de prueba:

I. Documentos públicos y privados;

II. Dictámenes periciales;

III. Reconocimiento, examen o inspección del titular de la Agencia Ambiental o el Presidente Municipal, cuando le corresponda;

IV. Fotografías, copias fotostáticas, registros dactiloscópicos, reproducciones, experimentos y, en general, todos aquellos elementos aportados por la ciencia;

V. Informes de las autoridades; y,

VI. Presunciones.

**ARTÍCULO 313.**
1. Dentro de los diez días hábiles siguientes, contados a partir de la presentación del recurso, el titular de la Agencia Ambiental y el Presidente Municipal, en caso de los Ayuntamientos, deberá proveer sobre la admisión, prevención o desechamiento del recurso, lo cual deberá notificársele al recurrente personalmente.

2. Si se admite el recurso a trámite, deberá pronunciarse respecto al desahogo y en su caso admisión de las probanzas ofrecidas.

3. Se desechará el recurso, cuando:

I. El escrito de interposición no contenga la firma autógrafa o huella digital del promovente;

II. En caso de no haberse presentado en el tiempo establecido para hacerlo;

III. Si encontrare motivo manifiesto de improcedencia; y
IV. Cuando prevenido el recurrente para que aclare o complete el recurso, no lo hiciere.

**ARTÍCULO 314.**
1. La interposición del recurso suspenderá la ejecución del acto impugnado, siempre y cuando:

I. Lo solicite expresamente el recurrente;

II. Se admita el recurso;

III. No contravenga disposiciones de orden público;

IV. No se ocasionen daños o perjuicios a terceros, a menos que se garanticen éstos para el caso de no obtener resolución favorable; y

V. Tratándose de la imposición de sanciones económicas, el recurrente garantice su importe en términos de lo previsto por la legislación aplicable.

2. Tratándose de medidas de seguridad no procederá la suspensión de las mismas en caso de interposición del recurso.

**ARTÍCULO 315.**
Es improcedente el recurso:

I. Contra actos o resoluciones que hayan sido impugnados en un anterior recurso administrativo o en un proceso jurisdiccional;

III.  Contra actos o resoluciones que no afecten intereses jurídicos del recurrente;

III. Contra actos o resoluciones que se hayan consentido expresamente por el recurrente, mediante manifestaciones escritas de carácter indubitable;

IV. Cuando de las constancias de autos se desprende que no existe el acto impugnados; y

V. Por haber dejado de existir el objeto o materia del mismo.

**ARTÍCULO 316.**
Será sobreseído el recurso cuando:

I. El recurrente se desista expresamente;

II. Durante el procedimiento sobreviniere alguna de las causas de improcedencia del recurso;

III. El recurrente fallezca durante el procedimiento, siempre que el acto sólo afecte sus derechos estrictamente personales;

IV. La autoridad haya satisfecho claramente las pretensiones del recurrente; y

V. En los demás casos en que por disposición legal haya impedimento para emitir resolución que decida el asunto planteado.

**ARTÍCULO 317.**
1. El titular de la Agencia Ambiental o el Presidente Municipal, en el caso de los Ayuntamientos, emitirá la resolución del recurso dentro de los 20 días hábiles siguientes al término del periodo para la formulación de los alegatos.

2. La resolución que confirme, modifique o revoque el acto o la resolución recurrida, se fundarán en derecho y examinará todos los agravios hechos valer por el recurrente. Cuando uno de los agravios sea suficiente para desvirtuar la validez del acto impugnado, bastará con el examen de dicho punto.

3. Dicha resolución se notificará al interesado, personalmente o por correo certificado.

**CAPÍTULO II**
**DEL JUICIO DE NULIDAD ANTE EL TRIBUNAL FISCAL DEL ESTADO**

**ARTÍCULO 318.**
Contra el acuerdo o la resolución del recurso de revisión que ponga fin al mismo, emitidos por la autoridad administrativa correspondiente, el interesado podrá interponer el juicio de nulidad ante el Tribunal Fiscal del Estado.

**ARTÍCULO 319.**
1. El juicio de nulidad se interpondrá dentro de los quince días siguientes aquél en el cual surta efectos la notificación de la resolución impugnada.

2. El recurrente presentará la demanda de juicio de nulidad ante la autoridad que le haya notificado la resolución, teniendo esta la obligación de remitirlo al Tribunal Fiscal del Estado en un plazo no mayor de tres días hábiles siguientes al de su presentación. En estos casos se tendrá como fecha de presentación del escrito respectivo la del día en que se haga a la autoridad que efectuó la notificación.

**ARTÍCULO 320.**
Para la tramitación del juicio de nulidad se estará a lo dispuesto por el Código Fiscal del Estado, en lo relativo al mismo.

**T R A N S I T O R I O S**

**ARTÍCULO PRIMERO.-** El presente Código se publicará en el Periódico Oficial del Estado y entrará en vigor a los 90 días siguientes al de su publicación.

**ARTÍCULO SEGUNDO.-** El artículo 156 del presente Código entrará en vigor a los tres años posteriores a su publicación. Los Ayuntamientos deberán promover programas de concientización para la creación de una cultura de separación de los residuos sólidos entre la población.

**ARTÍCULO TERCERO.-** Se abroga la Ley de Protección Ambiental para el Desarrollo Sustentable del Estado de Tamaulipas, expedida por Decreto No. LVIII-858 del 19 de octubre de 2004 de la Quincuagésima Octava Legislatura, publicada en el Periódico Oficial del Estado con fecha del 29 de diciembre de 2004, y sus reformas y adiciones contenidas en los Decretos No. LIX- 39, del 7 de septiembre de 2005 de la Quincuagésima Novena Legislatura, publicado en el Periódico Oficial del Estado No. 122, del 12 de octubre del 2005, y el Decreto No. LIX-568, del 27 de septiembre de 2006 de la Quincuagésima Novena Legislatura, publicado en el Periódico Oficial del Estado No. 127, del 24 de octubre del 2006.

**ARTÍCULO CUARTO.-** Se abroga el Decreto Gubernamental mediante el cual se establece el Registro Estatal Ambiental (REA), publicado en el Periódico Oficial del Estado No. 102, del 22 de agosto del 2002.

**ARTÍCULO QUINTO.-** Todos los asuntos que se encuentren en trámite al entrar en vigor el presente Código se desahogarán en los términos previstos por la ley o leyes vigentes al momento de su inicio. Los trámites que se hayan iniciado durante la vigencia de la Ley de Protección Ambiental para el Desarrollo Sustentable del Estado de Tamaulipas deberán concluirse atendiendo dicha ley.

**ARTÍCULO SEXTO.-** En términos de las atribuciones que le confieren las normas constitucionales aplicables, el Ejecutivo del Estado contará con 180 días a partir de la publicación del presente Código para expedir las disposiciones reglamentarias a que se refiere este Código, conforme a los estudios que realicen en torno a la operatividad de sus preceptos.

**ARTÍCULO SÉPTIMO.-** Se derogan todas las disposiciones que se opongan al presente Código.


**SALON DE SESIONES DEL H. CONGRESO DEL ESTADO.- Cd. Victoria Tam., a 2 de junio del año 2008.- DIPUTADO PRESIDENTE.- JOSE MANUEL ABDALA DE LA FUENTE.-** Rubrica**.- DIPUTADO SECRETARIO.- JUAN CARLOS ALBERTO OLIVARES GUERRERO.-** Rubrica**.- DIPUTADO SECRETARIO.- GELACIO MARQUEZ SEGURA.-** Rubrica**".**

Por tanto, mando se imprima, publique, circule y se le dé el debido cumplimiento.

Dado en la residencia del Poder Ejecutivo, en Ciudad Victoria, Capital del estado de Tamaulipas, a los tres días del mes de junio del año dos mil ocho..

**ATENTAMENTE -**"SUFRAGIO EFECTIVO. NO REELECCIÓN". **EL GOBERNADOR CONSTITUCIONAL DEL ESTADO.- EUGENIO FLORES HERNANDEZ.-**Rúbrica**.- SECRETARIO GENERAL DE GOBIERNO.- ANTONIO MARTINEZ TORRES-** Rúbrica.

**CODIGO PARA EL DESARROLLO SUSTENTABLE DEL ESTADO DE TAMAULIPAS**
Decreto No. LX-18, del 2 de junio de 2008.
P.O. No. 69, del 5 de junio de 2008.
En el apartado segundo transitorio establece que el artículo 157 del propio código entrara en vigor a los tres años posteriores a su publicación.
En su artículo tercero transitorio, abroga la Ley de Protección Ambiental para el Desarrollo Sustentable del Estado de Tamaulipas, expedida por Decreto No. LVIII-858 del 19 de octubre de 2004 de la Quincuagésima Octava Legislatura, publicada en el Periódico Oficial del Estado con fecha del 29 de diciembre de 2004, y sus reformas y adiciones contenidas en los Decretos No. LIX- 39, del 7 de septiembre de 2005 de la Quincuagésima Novena Legislatura, publicado en el Periódico Oficial del Estado No. 122, del 12 de octubre del 2005, y el Decreto No. LIX-568, del 27 de septiembre de 2006 de la Quincuagésima Novena Legislatura, publicado en el Periódico Oficial del Estado No. 127, del 24 de octubre del 2006.

        a)**.-** P.O. No. 99, del 14 de agosto de 2008.
           Fé de erratas al **Decreto No. LX-18**, publicado en el P.O Número 69 del 5 de junio de 2008,  mediante el cual se expide el Código para el Desarrollo Sustentable del Estado de Tamaulipas.

