UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER<br>MAGISTRATE JUDGE |
| …………………………………………………... | : | SHUSHAN |

**BP'S REPLY IN SUPPORT OF ITS MOTION TO CLARIFY THE COURT'S ORDER REGARDING THE DEEPWATER HORIZON STUDY GROUP REPORT**

The only party to oppose BP's motion regarding the so-called Berkeley Report is the PSC. Its arguments, however, underscore the reasons why the Berkeley Report is inadmissible.

**I.    BP's Request for Clarification Is Proper.**

BP (and others) argued for the exclusion of the Berkeley Report prior to last year's trial setting. On December 5, 2011, Transocean (Rec. Doc. 4812), Halliburton (Rec. Doc. 4894), and Cameron (Rec. Doc. 4811) filed motions to exclude various non-governmental reports, including reports prepared by the parties (BP and Transocean) and others (including the Berkeley Report).[1] BP responded to these motions on December 12, 2011, and clearly stated its position that while reports prepared by the parties as part of established post-incident analysis procedures were admissible as business records and/or party admissions, reports – including the Berkeley Report – prepared by other non-governmental entities, were not:

> [R]eports by other non-governmental entities that were not involved in the drilling of the Macondo Well should not be admitted into evidence. None of these arguments supporting the admission of the Bly Report, and potentially other party-generated reports, apply to reports generated by entities that played no role in events at issue. Such reports are neither relevant to, nor probative of, the conduct of any party to this case. BP therefore does not oppose the motions to the

---

[1] The PSC also mistakenly says that BP's motion is limited to the "final" report of the Deepwater Horizon Study Group. (Rec. Doc. 8359 at 1 n.1.) But BP's memorandum expressly stated it was addressed to all the "reports" generated by the DWH Study Group ("DHSG"). (Rec. Doc. 8293-1 at 2 n.2) ("BP Motion")

1

>extent they seek to exclude non-governmental reports prepared by others, such as the so-called Berkeley Report, to which BP intends to object in due course.

(Rec. Doc. 4869 at 1 n.1)  The PSC responded, arguing that the Berkeley Report qualified as a business record of the "Center for Catastrophic Risk Management" ("CCRM") and as evidence of its expert's "investigation and analysis." (Rec. Doc. 4873 at 9-10)

The Court's February 24, 2012 Order found both the parties' internal reports and the Berkeley Report admissible as business records.  (Rec. Doc. 5834)  BP intended to seek clarification of the Court's Order during the February 27, 2012 trial.  With the adjournment of the trial, however, BP elected to raise the issue in connection with any other evidentiary issues as per the Court's schedule for doing so in advance of the current trial setting, which BP has now done.  There was no practical reason for BP to raise this issue before required by the Court's scheduling orders, and BP's filing of this motion now works no unfair prejudice to the PSC.  Indeed, the PSC now maintains that BP never filed a motion and the Court therefore never ruled on its argument, so presumably BP could have waited until trial to raise these issues.  BP's current motion thus gives more advance notice to the PSC than required and provides an appropriate opportunity to clarify this issue prior to the upcoming trial.

**II.    The Berkeley Report is Hearsay, Regardless of Professor Bea's (or Anyone Else's) Retention as an Expert.**

The PSC's primary argument is that because Professor Robert Bea is one of its testifying experts and because he was also one of the "primary authors" of the Report, the Report is not hearsay because it is a prior writing of a testifying expert.  Realizing, however, that the Report is actually composed of the observations of dozens of individuals working together – as opposed to a document authored solely by Professor Bea – and thus does not represent the view of a single testifying expert, the PSC also argues that the Report is also admissible as expert reliance material under Rule 703.

Neither of these arguments holds up.  The PSC cites to no case or Rule of Evidence for the proposition that a document prepared by a large group of individuals, some of whom were later retained as party experts in the litigation, suddenly becomes non-hearsay simply by dint of the fact that a party hires someone involved in the document's creation.  Certainly, in specific contexts, experts' prior writings may come into issue (*e.g.*, as a basis for impeachment), but there is no legal basis for the PSC's argument that the Report is admissible simply because one of its testifying experts played a role in its creation.  Were this true, everything any expert had ever written would automatically qualify as admissible non-hearsay evidence (as opposed to fodder for cross-examination):  an absurd result.  The Berkeley Report is an out-of-court statement being offered to prove the truth of the matter asserted, and is thus classic hearsay – regardless of whether Professor Bea or any of its other authors testifies.

The PSC's fall-back argument, that the admitted hearsay in the Report contributed by others is nonetheless admissible because Professor Bea relies upon it, is also erroneous.  Rule 703 permits an expert's report to be based upon otherwise inadmissible material where that material is routinely relied upon by experts in the field, but that does not make everything an expert relies upon admissible into evidence.[2]  The Berkley Report is neither a Rule 26 expert report nor reasonable reliance material, for many of the same reasons it is not a trustworthy business record and for its hearsay content.  In any event, however, it must independently meet the criteria for some exception to the hearsay rule, which it does not.

At bottom, the PSC's argument is that any document *associated with* its expert's Rule 26 report somehow becomes admissible.  In making this overreach, the PSC betrays its motivation for admitting the Berkeley Report into evidence; namely, to lend a false sheen of credibility to its

---

[2] *See e.g. Lear Automotive Dearborn, Inc. v. Johnson Controls Inc.*, 789 F. Supp. 2d 777, 785 (E.D. Mich. 2011) ("[M]aterials do not become admissible merely because the expert actually relies on them. . . .") (citing *Gong v. Hirsch*, 913 F.2d 1269, 1273 (7th Cir. 1990)).

expert witnesses, who can then claim to have "relied" on "evidence" that is, in fact, simply a hodge-podge of their own (and others') self-serving out-of-court statements. As the PSC admits, the Berkeley Report is hearsay in the first instance. And as BP has shown, no exception to the rule qualifies it as admissible.

**III.     The Berkeley Report Does Not Qualify for Admission Under the Rule 803(6) Hearsay Exception**.

In response to BP's assertion that the Report was not the product of a business duty to report as required for admissibility under Rule 803(6), the PSC argues that the authoring group "was formed for a singular purpose as an independent, scholarly endeavor" and that "[i]ts 'duty' . . . w[as] to engage in an exhausting and time consuming scientific analyses of the cause." (Rec. Doc. 8359 at 7)  But as the case law confirms, scholarly commitments and intensity of purpose do not establish a *duty* to report that provides the necessary circumstantial guarantee of trustworthiness that undergirds courts' willingness to admit documents under Rule 803(6).

In response to BP's assertion that the Report lacks the essential quality of *regularity*, the PSC responds that some members of the DWH Study Group bore institutional affiliations with the CCRM and that the DWH Study Group conducted regular meetings. (Rec. Doc. 8359 at 7) This fails to grasp the essential point of both BP's argument and the applicable case law. The presence of soft institutional ties and the willingness of an *ad hoc* group to attempt to set a meeting schedule do not overcome the inherent fact that the Report was a one-off exercise by a group of interested, loosely affiliated professionals. By definition such a document could not be the product of the *ordinary*, *regular*, and *routine* business process contemplated by Rule 803(6).

Finally, the PSC attempts to rebut BP's challenges to the Report's trustworthiness due to issues of competing influences on several of the Report's key authors by claiming that DWH Study Group's "trustworthiness is found in its independence." (Rec. Doc. 8359 at 7)  But the

mere fact that the DWH Study Group claims to have been organizationally independent does nothing to address the trustworthiness concerns raised by the ties and contacts between the PSC and certain of the authors of the Berkeley Report (Pritchard, Bea, and Gale) as the Report was readied for publication; the PSC's response does not rebut these concerns.

**IV.    The Double Hearsay and Otherwise Prohibited Content of the Berkeley Report Significantly Affect Its Admissibility.**

The PSC suggests in its response that all issues of double hearsay are moot, since they will be addressed through "objections at trial[]" per the Court's February 24 Order.  (*See* Rec. Doc. 8359 at 7-8)  That suggestion presupposes that the Report is admissible in the first instance.  As to whether it is admissible in the first instance, the sheer volume of double hearsay weighs against the Report's admission, particularly where, as here, the party moving for its introduction has failed to provide affirmative bases to allow in the second layers of hearsay as required under Rule 805.  *See*, *e.g.*, *Phillips v. Potter*, Civil. Action No. 7-815, 2009 WL 3271238, at *2 (W.D. Pa. Oct. 9, 2009).

The PSC unconvincingly attempts to explain away the Report's inclusion of content that this Court has deemed inadmissible through its prior orders, by glibly claiming this information is "redundant" and that "BP is merely arguing citations."  (Rec. Doc. 8359 at 7)  This does not address the fact that the Report incorporates content that the Court has declared to be prohibited from this trial, such as information and conclusions from the reports of the Marine Board's Joint Investigation, the National Commission, and the Chemical Safety and Hazard Investigation Board reports.

**CONCLUSION**

BP respectfully requests that the Court clarify its prior Order and rule that the so-called Berkeley Report (including the final Report and all preliminary Reports) is inadmissible.

5

Dated: January 28, 2013

Respectfully submitted,

/s / Don K. Haycraft.

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration & Production Inc. & BP America Production Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 28th day of January, 2013.

                                                                   /s/ Don K. Haycraft__