UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" In the GULF OF MEXICO on April 20, 2010 | * | MDL NO. 2179 |
| | * | SECTION: J |
| | * | JUDGE BARBIER |
| Applies to: *All Cases* | * | MAG. JUDGE SHUSHAN |

**TRANSOCEAN'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE TO PRECLUDE THE INTRODUCTION OF EVIDENCE REGARDING INSTANCES OF PRIOR ALLEGED IMPROPER CONDUCT UNRELATED TO THE MACONDO WELL INCIDENT**

In an effort to avoid Federal Rule of Evidence 404(b) and this Court's February 9, 2012 Prior Incidents Order (Rec. Doc. 5634) that excluded evidence of prior conduct from the Phase I trial, the PSC, BP, and HESI argue that (1) Transocean's prior incidents are all "substantially similar" to the Macondo incident because they all took place on a Transocean rig drilling an offshore well, and (2) they do not seek to use the prior incidents to demonstrate negligence at the time of this tragic incident.[1]  As set forth in Transocean's initial memorandum and explained further below, the prior events at issue, which range from a man overboard incident in the Caspian Sea (TREX-26018), to eight-year-old well control events in the North Sea (TREX-26029) and India (TREX-26009.a, TREX-26009.b, TREX-26009.c, TREX-26009.d, TREX-26014, and TREX-048183), to a variety of presentations on hand and finger injuries and dropped

---

[1] The United States also filed a Response to Transocean's Motion "solely as a protective action in the event the settlement between the United States and Transocean does not become final, in which case the United States reserves the right to file a supplemental opposition." (Rec. Doc. 8352 at 2 n.1).  Transocean similarly reserves the right to file a supplemental reply in the event the settlement between the United States and Transocean does not become final and the United States files a supplemental opposition.

1

objects (TREX-26012, TREX-26017, TREX-048200, TREX-048249), are factually dissimilar to and temporally, operationally and geographically removed from the events that occurred on the Macondo Well.  No party has established that any of these events is substantially similar to Macondo, nor has any party established a permissible purpose for admitting this evidence.  Moreover, no party has explained why evidence regarding these prior events will not cause undue delay, waste time or present of cumulative evidence.

I.  ARGUMENT

    A.  **Transocean's Motion Is Timely**

BP is incorrect in arguing that Transocean's motion is untimely.  Transocean reiterates that the following exhibits fall within the purview of its motion: (1) from the Plaintiff's Combined Exhibit List—TREX-26003, TREX-26009.a, TREX-26009.b, TREX-26009.c, TREX-26009.d, TREX-26012, TREX-26014, TREX-26017, TREX-26018, TREX-26023, TREX-26025, TREX-26025.b, TREX-26025.c, and TREX-26029; (2) from BP's list—TREX-048200, TREX-048249; and (3) from HESI's list—TREX-048183, TREX-063187, TREX-063188, TREX-063189, TREX-063190, TREX-063193.  Both BP and HESI express some confusion relating to the scope of the motion, and argue against exclusion of evidence of all non-Macondo events such as *Sedco 711*.  *See* BP Opp. (Rec. Doc. 8365) at 3 ("[T]he majority of the evidence that Transocean seeks to exclude has been present in the case before February 2012, and there is not a proper basis for Transocean to bring it now."); HESI Opp. (Rec. Doc. 8369) at 2 n.2 ("It is unclear whether Transocean is asking the Court to exclude only the incidents listed in its Motion, or all evidence relating to all non-Macondo incidents, as broad statements in its Motion suggest.")).  Transocean understands that parties have alleged that the distribution of the lessons learned from *Sedco 711* may be relevant to the events of Macondo.  Though Transocean

2

disagrees with that position, it has not moved to exclude evidence related to *Sedco 711*, *M.G. Hulme*, or any other exhibits that were on the exhibit list in February 2012. BP and HESI's arguments regarding such exhibits are irrelevant for the purposes of Transocean's Motion. Similarly, BP and HESI's arguments that Transocean's Motion is untimely lack merit because the current Motion relates only to exhibits added to exhibit after February 2012.

**B.     The Prior Incidents at Issue Are Not Substantially Similar to Macondo**

In their respective oppositions, BP, the PSC and HESI attempt to avoid the Court's February 9, 2012 Prior Incidents Order by arguing that Transocean's prior events are substantially similar to Macondo because each took place over water and on a Transocean rig. *See* BP Opp. (Rec. Doc. 8365) at 2 ("Unlike the documents relating to land-based incidents excluded by the February 2012 Order, the evidence Transocean seeks to exclude relates to precisely the same kind of operations (*i.e.*, offshore drilling activities) as those undertaken by the *Deepwater Horizon* at Macondo."); PSC Opp. (Rec. Doc. 8358 at 2) (arguing that the reasoning of the Court's Prior Incidents ruling "does not apply to much of the evidence proffered by the PSC and identified by Transocean's motion in limine; to the contrary, the exhibits at issue primarily concern systemic process safety failures aboard Transocean's deepwater drilling rigs."); HESI Opp. at 8-9 (arguing that incidents occurring on different rigs in different parts of the world are nonetheless sufficiently similar to Macondo).

The position advanced by BP, the PSC and HESI is vastly overbroad: with the exception of shore-based corporate and administrative functions, everything Transocean does takes place on a drilling rig or vessel over water. That fact alone cannot be sufficient to render every event

that occurs on a Transocean rig "substantially similar" to Macondo.[2] If that were the standard, there would be nothing to preclude the Phase I trial from becoming a series of mini trials of every incident that has ever occurred on a Transocean rig. Clearly that is not consistent with this Court's prior ruling.[3]

All three parties focus on language in this Court's February 9, 2012 Prior Incidents Order, noting that those prior incidents were shore based: "The prior incidents were all land-based, while the Macondo incident occurred in the Gulf of Mexico." (Rec. Doc. 5634 at 5). In so doing, they ascribe an overly narrow reading to the Court's articulation of the requirement of "substantial similarity" between prior incidents and the Macondo incident and conveniently ignore the "Gulf of Mexico" language.[4] That the BP Texas City, Grangemouth, and Prudhoe Bay incidents were land-based is just one of the factors that the Court acknowledged as distinguishing those events from Macondo. The Court also noted that "[t]he prior incidents and

---

[2] It is also worth noting that in addition to the fact that each of the prior incidents at issue in Transocean's motion occurred on a different rig, working for another operator, they are not even all well control events, but instead range from a dropped object in South America, to a man overboard in the Caspian Sea, to a well control event in Egypt that preceded Macondo by 6 years.

[3] Further, BP and the PSC overread *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1082 (5th Cir. 1986), to support a finding that the prior incidents at issue were "substantially similar" to Macondo, and therefore the proffered evidence is admissible. The holding in *Jackson* was that, *in a product liability case*, "[e]vidence of similar accidents occurring under substantially similar circumstances and involving substantially similar components *may be probative of defective design*." 788 F.2d at 1082 (emphasis added). In this regard, *Jackson* is consistent with longstanding Fifth Circuit precedent that evidence of prior, "substantially similar" incidents is admissible when those incidents concern (1) failures of the same or similar piece of defective equipment, or (2) a preexisting, unsafe condition that caused prior accidents at the same location. *See, e.g., Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334, 339 (5th Cir.1980) (collapse of similar mast on offshore oil rig two years earlier erroneously excluded, since the first accident was relevant to the manufacturer's "notice of the defect, its ability to correct the defect, the mast's safety under foreseeable conditions, the strength of the mast, and, most especially, causation"); *Young v. Illinois Cent. Gulf Ry. Co.*, 618 F.2d 332, 339 (5th Cir.1980) (two recent prior accidents at grade crossing admissible to show that "a reasonably prudent railroad…would have taken precautions"). Fifth Circuit case law simply does not support BP and the PSC's theory that evidence of various alleged operational errors, involving equipment on different rigs, manned by different personnel, and in different locations, meets the "substantial similarity" standard applied in *Jackson* and other products liability and premises condition cases.

[4] The purely textual reading of the Court's February 9, 2012 order suggested by the PSC, BP, and HESI would exclude evidence of all prior incidents that occurred outside the Gulf of Mexico.

the Macondo incident are remote in time" and "the circumstances of oil refinery disasters and a MODU exploratory drilling disaster are vastly different." (Rec. Doc. 5634 at 5). Moreover, the Court dismissed the PSC and U.S. argument "that the similarity between prior incidents and Macondo is that they are all large-scale, process-safety caused industrial accidents" as "an over-generalization" because "the specific failures at a refinery are different from those on a MODU." *Id.* BP, the PSC and HESI have engaged in a similar over-generalization by arguing that all incidents on a Transocean rig are substantially similar. Transocean operates more than one hundred offshore drilling rigs and vessels, each of which is a unique industrial facility operating in a unique environment with a different crew. Each of Transocean's rigs and vessels operate over water. It does not follow that an event on one Transocean vessel is substantially similar to another simply because both occur over water or while over a well.

BP's land vs. water argument is especially specious in light of its prior positions in this litigation. Long before it moved to exclude evidence of its own prior incidents, BP fought to preclude, and succeeded in precluding discovery related to its own prior *offshore* incident in the Caspian Sea,[5] which is widely reported to have been substantially similar to Macondo.[6]

Similarly, HESI's position in its Opposition to Transocean's Motion in Limine directly contradicts the position it took in its own Motion to Exclude Evidence Relating to Credit on the Kodiak No. 2 Well for Non-Productive Time Related to Downhole Tool Issues, where it argued that "[t]his lawsuit involves acts and omissions on the Macondo well, not the Kodiak No. II or prior wells." (Rec. Doc. 5139 at 2). HESI's position also contradicts the position advanced in its Motion to Exclude Evidence Relating to Testing of Cement Blends Using Non-Rig Samples that

---

[5] *See* Rec. Doc. 2578 (denying the PSC's request for discovery from BP concerning its analysis of a September 17, 2008 well control incident in the Caspian Sea).

[6] *See* Rec. Doc. 2535 [sealed].

"[e]vidence related to tests using materials that were not obtained from the *Deepwater Horizon* and used in the Macondo well are irrelevant to the issues presented for trial." (Rec. Doc. 5138 at 1). In arguing that any probative value of such evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, or needless presentation of cumulative evidence," HESI cited "a well-accepted principle in the oil & gas industry that cement blends are unique and that, once blended and/or transported to a rig, they begin to develop their own unique chemical properties. Each cement blend is chemically different, even blends derived from the same bulk plant, and blends can change over time based on the environmental and storage conditions to which they are subjected." *Id.* at 1-2. HESI's argument that each cement blend used in offshore drilling is unique necessarily recognizes that each offshore well is unique. HESI should not now be heard to argue otherwise.[7]

If there is one thing this tragic incident has established, it is that not every well is the same. While Transocean can prepare for and train its crews to drill offshore wells, it cannot prepare for or train its crews to drill an offshore well for an operator that makes a series of grossly negligent decisions without performing proper risk assessments and then keeps Transocean in the dark regarding those decisions. Transocean has never drilled a well in circumstances remotely similar to Macondo where BP, despite being aware that the well was problematic, continually took shortcuts and failed to inform Transocean of any of the following issues:

---

[7] HESI also demonstrated a different understanding of this Court's February 9, 2012 Prior Incidents Order than that advanced in its Opposition to Transocean's Motion *in Limine* in its Reply in Support of Its Motion to Exclude Testimony of Expert Witnesses and to Strike Expert Reports, where lists the Texas City refinery explosion, the Grangemouth petrochemical incident, or the Prudhoe Bay, Alaska oil spill as mere examples of evidence of prior incidents that this Court has excluded from the Phase One trial: "In its Limine Order, the Court made clear that it was concerned with the potential for undue delay, waste of time, and presentation of cumulative evidence, and accordingly ordered the exclusion of evidence of prior incidents from the Phase One trial (*e.g.* the Texas City refinery explosion, the Grangemouth petrochemical incident, or the Prudhoe Bay, Alaska oil spill)." (Rec. Doc. 5758 at 2).

1. BP sent late, multiple and inconsistent procedures to the rig for the Negative Pressure Test;

2. In spite of being advised by HESI that absent additional centralizers, the well had a high probability of gas flow, BP decided not to use the planned number of centralizers;

3. BP decided not to wait for the cement job's foam stability test;

4. BP decided not to confirm the proper conversion of the float equipment;

5. BP decided not to wait for the cement job to fully cure;

6. BP decided to place sole reliance on the float equipment and shoetrack cement to isolate the bottom of the production casing;

7. BP decided not to run a cement bond log;

8. BP decided to use an untried experimental spacer concoction made from left over lost circulation materials;

9. BP decided to displace the riser before setting a cement plug;

10. BP decided to displace the well to more than 8,000 feet below the rig;

11. BP decided not to install additional physical barriers during temporary abandonment;

12. BP decided not to circulate a full bottoms-up prior to cementing;

13. BP's Well Site Leader on the rig (Don Vidrine) and onshore Operations Engineer (Mark Hafle) decided to continue with displacement after having identified that the Negative Pressure Test had failed.

None of this information was relayed to the drilling crew. This makes Macondo a very unique well unless this is how BP treats all wells and all drilling contractors.

> **C. The Parties Cannot Avoid Rule 404(b) By Arguing The Prior Incidents Are Part of Some "Systematic" Safety Problem**

In order to avoid Federal Rule of Evidence 404(b), the PSC, BP and HESI attempt to demonstrate a permissible use of evidence of Transocean incidents unrelated and dissimilar to Macondo in a variety of ways.[8] No matter how worded, each of these arguments is based on the faulty premise that Transocean's past conduct or responsibilities is probative of its conduct and responsibilities with respect to the Macondo well. In response to nearly identical arguments, BP argued more than a year ago that its conduct, actions, and decisions on the Macondo well must be established by evidence related to BP's conduct on Macondo, not at other times in other contexts:

> The Macondo Well incident may or may not have been caused by a failure of "process safety" at BP. But that must be established based on BP's conduct – its "process safety" decision, actions, and conduct – ***with regard to the Macondo Well***, not based on how its management, employees, and "systems" acted or did not act at other times and in other contexts. Starkly put, even assuming, as the other parties claim, that "BP failed to learn from and correct known systemic and management-level causes of these previous incidents," Rule 404(b) prohibits the use of this fact to prove that these alleged "systemic and management-level causes" triggered the Macondo Well incident. Such "proof" does not "complete the story." Rather, it substitutes unsubstantiated inference and undue prejudice for evidence probative of BP's conduct regarding the Macondo Well.

(Rec. Doc. 4743 at 1).

The same holds true for Transocean—the issues of whether Transocean ignored safety protocols on the *Deepwater Horizon*, whether Transocean management failed to take safety

---

[8] Perhaps most creatively, the PSC argues that "the exhibits at issue are admissible against Transocean…[because] this is a Limitation proceeding in which Transocean is entitled to limitation only if it is without privity or knowledge of the cause of the loss." PSC Opp. (Rec. Doc. 8358) at 6. The PSC does not explain how the exhibits at issue demonstrate Transocean's privity or knowledge *of the cause of the loss*. Even assuming that the PSC is correct that Transocean had "knowledge (or should have had knowledge) that employees were systematically failing to adhere to the industry standard for well control," that does not mean Transocean had "privity or knowledge of the cause of the loss" unless the "cause of the loss" was the alleged systematic failure to adhere to the industry standard for well control. This tautology adds nothing to the analysis. The relevant "knowledge" for purposes of the Phase I trial is knowledge specific to Macondo.

concerns seriously, and whether Transocean's conduct on the Macondo well met its responsibilities must be established by evidence of Transocean's conduct and responsibilities with respect to the Macondo well, not prior events. The PSC and HESI's efforts to offer evidence of other incidents to show how safety-related "failures" led to the Macondo Well incident, and BP's efforts offer evidence that Transocean allegedly accepted responsibility for prior incidents are precisely the kind of propensity evidence that Rule 404(b) prohibits: using prior acts to prove a party acted in the same manner in a subsequent case.

>   **D.   Evidence Regarding Prior Incidents Will Cause Undue Delay, Waste Time, and Result in the Presentation of Cumulative Evidence.**

In its February 9, 2012 Prior Incidents Order, the Court expressed that it was "greatly concerned about considerations of 'undue delay, waste of time, and presentation of cumulative evidence.'" (Rec. Doc. 5634 at 4). Other than conclusory statements, no party has explained why evidence of Transocean's prior events is any less likely to cause delay, waste of time, or presentation of cumulative evidence here, than the evidence excluded in the Prior Incidents Order.

To the extent the PSC, BP or HESI is allowed to introduce prior safety-related incidents on other rigs, the Court will have to permit Transocean an opportunity to present evidence to "both (1) defend its conduct regarding those instances and (2) prove those instances' dissimilarity to the facts of this case, so as to demonstrate the inapplicability of the exceptions to Rule 404(b)." (Rec. Doc. 5634 at 5). The result will be a series of mini-trials about different rigs, operating under different conditions and at different times, and manned by different crews. This will be an enormous waste of time, in what already will a lengthy and complex trial. Moreover, if there were merit to the PSC, BP and HESI argument that all Transocean prior incidents are "substantially similar" to Macondo because all occurred on an offshore rig, the

9

potential universe of evidence is enormous given that Transocean operated on 4,966 wells from 2005 to 2009.  (Rec. Doc. 8369 at 5).

## II. CONCLUSION

Transocean respectfully requests that the Court enter an Order excluding from evidence all documents and testimony concerning the past Transocean incidents that are the subject of this Motion.

DATED:  January 28, 2013

Respectfully submitted,

By: /s/ Brad D. Brian
Brad D. Brian
Michael R. Doyen
Daniel B. Levin
Susan E. Nash
MUNGER TOLLES & OLSON LLP
355 So. Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel:  (213) 683-9100
Fax:  (213) 683-5180
Email:  brad.brian@mto.com
           michael.doyen@mto.com
           daniel.levin@mto.com
           susan.nash@mto.com

By: /s/ Steven L. Roberts
Steven L. Roberts
Rachel Giesber Clingman
Sean Jordan
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Tel:  (713) 470-6100
Fax:  (713) 354-1301
Email:  steven.roberts@sutherland.com
           rachel.clingman@sutherland.com
           sean.jordan@sutherland.com

By:  /s/ Kerry J. Miller
Kerry J. Miller
FRILOT, LLC
110 Poydras St., Suite 3700
New Orleans, LA 70163
Tel:  (504) 599-8194
Fax:  (504) 599-8154
Email: kmiller@frilot.com

By:  s/ John M. Elsley
John M. Elsley
ROYSTON, RAYZOR, VICKERY & WILLIAMS LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
(713) 224-8380

By:  /s/  Edwin G. Preis
Edwin G. Preis, Jr.
PREIS & ROY PLC
Versailles Blvd., Suite 400
Lafayette, LA 70501
(337) 237-6062

    *and*

601 Poydras Street, Suite 1700

New Orleans, LA 70130
(504) 581-6062

*Counsel for Defendants Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH.*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on January 28, 2013, I electronically filed the foregoing with the Court's CM/ECF system and service on all counsel of record by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

                                                    /s/ Kerry J. Miller
                                                        Kerry J. Miller