U. S. DISTRICT COURT
Eastern District of Louisiana

IN THE UNITED STATES DISTRICT COURT **FILED**   JAN 2 9 2013 ᵂᴾ
FOR THE EASTERN DISTRICT OF LOUISIANA

**LORETTA G. WHYTE**
Clerk

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 <br><br> SECTION J |
| This document relates to all actions | * * * * * | HONORABLE CARL J. BARBIER <br><br> MAGISTRATE JUDGE SHUSHAN |

---

| | | |
|---|---|---|
| Bon Secour Fisheries, Inc., et al., on behalf of themselves and all others similarly situated, | * * * * | Civil Action No. 12-970 <br><br> SECTION J |
| Plaintiffs, | * * | |
| v. | * * * | HONORABLE CARL J. BARBIER |
| BP Exploration & Production.: BP America Production Company; BP p.l.c., | * * * | MAGISTRATE JUDGE SHUSHAN |
| Defendants. | * | |

---

*MOTION*

~~COMPLAINT~~ OF REVIEW
and
**MOTION OF CLARIFICATION**

**NOW INTO COURT** comes the claimant, H. Freddie Boothe, Jr., Architect, in proper person, who brings this Complaint of Review which is verifiable and documented entirely by the recorded actions of the Reviewer(s). Claimant files this Complaint of Review in accordance with the terms and conditions of Court Document 6430 in which the Court maintains supervisory[1] capacity over the Settlement Process; to wit:

Claimant, H. Freddie Boothe, Jr., Architect also files a Motion For Clarification, which is not a motion to amend, but, is an effort to obtain advisory opinion from the court on the issues defined herein. The Court, through declaration in the Court Ruling, maintains authority over the settlement

---

[1]  Court Doc. 6430-1 (18) (18.1) Continuing Jurisdiction.  & Case 2:10-md-02179-CJB-SS Document 6418, Page 6 :
"The Proposed Settlement would replace the GCCF with a "Court Supervised Settlement Program" ("Settlement Program").

1



____ Fee _____
____ Process _____
_X_ Dktd _____
_X_ CtRmDep _____
Doc No. _____

process, wherein the issues defined herein manifest. The Motion for Clarification is filed under Rule 60 to ascertain a definitive explanation of the true intent of the Court and in particular, Document 6430-12 page 6 Art 5 which states, *"An RTP shall apply to claimant's Spill-Related Cancellation Compensation consistent with the claimant's industry and/or zone"*. Wherein the claimant establishes a dispute between the parties which is not reconcilable and is based entirely on the issues contained within the Court Document 6430 et. Sequential, and, consequently the claimant request the Court to intervene to establish specific intent of the Court Document 6430 et. Seq. In regards to the issues presented herein which issues form the basis of the dispute., to wit;

## FACTS

### Erroneous "Insufficient Documentation Determination

A.      On or about October 23, 2012 the claimant received an e-mail from the Deepwater Horizon Economic and Damages Review entitled "Reminder Regarding Documentation Requirements for Business Economic" claimants. As evidenced by Document No. 6175361, No. 6175413 and No. 6175429.      Further, the reviewer believes the claims as presented are lacking documentation, such as, tax returns for the years 2009, 2010 and 2011. Claimant believes the reviewer has not carefully studied the contents of the claim(s) and makes the demand for tax returns erroneously, See Exhibit 1, attached hereto.

B.      On or about October 27, 2012 the claimant received notification through the web portal the reviewer had made a determination all claims submitted by the claimant were lacking pertinent information, "Incompleteness Notice", regarding the financial status of the claimant, inclusive of, but, not necessarily limited to, tax returns relative to the years 2009, 2010 and 2011. This in itself is proof the reviewer had not comprehended the integrity of the claim(s) as presented. The claims clearly rest within the context of Court Document 6430, 4E[2] and contain sufficient documentation to establish this fact, inclusive of the causation requirements identified therein. An astute review would have easily

---

2  Case 2:10-md-02179-CJB=SS, Document 6418, Page 6: "The Proposed Settlement explains how compensation is determined and what documentation is required to support a claim.

recognized the elements required by the Court Doc. 6430 were present in the claim structure.   On November 28, 2012 the claim was moved to "Claim Closed" status.   Consequently, on or about December 2, 2012 the claimant tendered Document No. 6756752, attached hereto as Exhibit 1, through the web portal a review of the entire claim which includes within the text pertinent reference to Court Doc. 6430 to establish clearly the "lack of documentation" was erroneous as such documents are not required for claims meeting the criteria established in Court Doc. 6430, 4E.   Document No. 6756752 is designed to aid the reviewer by including pertinent facts which exist in each claim and which are directly attached to the independent claims as identified, Claim 5095, Claim 0327 and Claim 9328.   Consequently, the claim moved from "Claim Closed" to "In Claims Review, and within several days moved to "Accountant Review".   Claims 5095 and 9328 were assigned a status of "Duplicate Claim" once again on December 6, 2012 and subsequently "closed" on December 17 , 2012.   This activity on the part of the reviewer clearly establishes a failure to ascertain the factual foundation of the claims as presented.   Further, this activity clearly indicates the original claim documents have not been properly reviewed prior to making the status change.

C.      Subsequently, the claimant has been notified by the review department, claims 5095 and 9328 have been combined with claim 9327 to form one claim.

## I      At Issue:

A.      Claimant contends the Business Economic Loss claim filed is a valid claim(s) in accordance with the Court Document 6430-12   Exhibit 4E[3], and, in particular, claimant meets the criteria for eligibility as established in Document 6430-12 4E(A)[4] as evidenced by the provision of appropriate documentation tendered with the initial filing of the claim(s).   Claimant further contends the claim as filed meets the criteria established in Document 6430-12, 4E(B)(1) as evidenced by the filing of the "contract"[5] and the notice of "cancellation" with the initial filing of the claim(s).   Claimant contends the

---

3    Doc 6430-12 4E Addendum to Compensation for Business Economic Loss Claims:  Compensation for Spill-Related Cancellations.
4    Doc 6430-12 4E (A) Eligibility:  This Addendum sets forth the exclusive compensation methodology for business claimants that provide appropriate documentation and which establish causation by demonstrating (a) a Spill-Related Cancellation pursuant to Causation For Business Economic Loss Claims Section II.D or Section III.D, or (b) the Modified V-Shaped Revenue Pattern *and* a contract cancellation pursuant to Causation for Business Economic Loss Claims Section II.B or Section III.B.
5    Doc 6430-12 Page 1 Footnote 1:  As used in this Addendum, "contracts" shall refer to agreements entered in the normal course of business and shall specifically exclude contracts for the sale of real property, fixed assets, non-operating assets, or for all or a portion of the business itself.

compensation method of determination as defined in Document 6430-12, 4E(C)(1)(a)[6] is appropriate

for evaluation of the compensation defined within the context of the claim documents submitted by the

Claimant at the initial filing of the claim(s).  Claimant contends the information and documentation

submitted for review is sufficient to meet the criteria established in Document 6430-12 4E(C) (1)[7], and

(2)[8] and Doc 6430-12 4E(C)(2)(a)[9].  Claimant contends the information tendered in the initial filing of

the claim(s) and subsequent information submitted for review is sufficient to determine the claimants

loss(es).  All contracts contained in each of the claims are between the same parties, the architect and

the obligatory are identical on each.

B.      Further, Claimant contends The Request for Additional Documentation is erroneous and lacks

merit on the following grounds:

        1.      Document 6430-9, Exhibit 4B, IIID for causation establishes, "The claimant

        provides contemporaneous written evidence of the cancellation of a contract as the direct

        result of the spill that claimant was not able to replace.  Proof of a spill-related contact

        cancellation only establishes causation for the specific contract substantiated by the

---

6   Doc 6430-12 4E1(a):   a. "Lost Contract Revenue" shall be the amount that a claimant would have been paid by a customer between April 21, 2010 and December 31, 2010 in connection with a Canceled Contract, had that contract not been canceled as a result of the DWH Spill.
7   Doc 6430-12 4E (1):  1. Determine lost revenue from the Canceled Contract or Canceled Reservation. a. "Lost Contract Revenue" shall be the amount that a claimant would have been paid by a customer between April 21, 2010 and December 31, 2010 in connection with a Canceled Contract, had that contract not been canceled as a result of the DWH Spill.
8   Doc 6430-12 4E (2):  Determine lost profit associated with the Canceled Contract or Canceled Reservation. "Lost Contract Profit" shall be the amount that a claimant would have earned between April 21, 2010 and December 31, 2010 in connection with a Canceled Contract, had that contract not been canceled as a result of the DWH Spill. ..... If (I) the Canceled Contract or Canceled reservation documentation either specifies costs to be incurred by the claimant, or specifies a profit margin in connection with the Canceled Contract or Canceled Reservation, or (ii) the claimant is otherwise able to provide a specific estimate of the profit expected from the Canceled Contract or Canceled Reservation based on specific accounting for prior events that took place after January 1, 2007 and were comparable in terms of type, size, and revenue, the claimant's lost profits associated with the Canceled Contract or Canceled Reservation shall be determined according to (a) below.  Otherwise the claimant's lost profits associated with the Canceled Contract or Canceled Reservation shall be determined according to (b) below.
9   Doc. 6430-12 4E (2)(a):   a.   Canceled Contract or Canceled Reservations with Explicit Cost Information.   For Canceled Contracts and/or Canceled Reservations with explicit cost information, Lost Contract Profit and Lost Reservation Profit shall be determined as follows:
        i.  Identify the variable expenses that would have been incurred (but were not actually incurred) by the claimant in carrying out the Canceled Contract or Canceled Reservation according to either (I) the information set forth in the Canceled Contract or Canceled Reservation documentation, or (ii) documentation provided by the claimant regarding variable expenses incurred in connection with prior events which were comparable in terms of type, size and revenue and took place after January 1, 2007. The total variable expenses shall also include any commissions or bonuses that would have been paid to sales or other staff had the Canceled Contract or Canceled Reservation not been canceled.
        ii. Sum (a) total variable expenses associated with the Canceled Contract or Canceled Reservation and (b) any cancellation fees, non-refundable deposits or other amounts received by the claimant in connection with the Canceled Contract or Canceled reservation and © the liquidation or salvage value of any product which remains unsold as of the claim filing date.
        iii. Subtract the sum of (ii) from the Lost Contract Revenue or Lost Reservation Revenue as applicable.

4

claimant and may result in recovery only of damages solely associated with such contract." Consequently, and simultaneously meets eligibility for causation under Doc.6430-12, 4E(A) which in turn negates the requirement of tax returns to determine revenue trends and/or losses. (refer to footnote 5 on page 3)

2.     Reviewer continued a request for Tax Returns. Claimant submitted tax returns for the years 2009 and 2010. A verbal request for Profit and Loss statements was requested. Claimant has previously stated and states again, "there are no cost associated with the contract(s) which pass to the claimant. All contracts include language which establishes parameters for cost to be incurred only by the Owner and no cost shall pass to the claimant. Further, this information is irrelevant in determination of losses for a claim which has a) a contract, b) a written cancellation of contract due to the DWH Spill and c) causation as determined for eligibility to the Addendum to Compensation for Business Economic Loss (BEL) claimants which provide appropriate documentation.

3.     Claimant contends the nature of the claim(s) as presented as Claim No. 5095, Claim No. 9327 and Claim No. 9328 fall completely within the parameters of Doc.6430, 4E which amends the Doc.6430 and provides procedures for establishing the claim LOSS. Therein, there is no ideology within the Court Doc. 6430 which requires an accounting analysis based on the information which would be contained within a Tax Return to establish claimant loss in regards to any particular claim submitted by the claimant and claimant meets the causation requirement of 6430 4B IIID.

4. Claimant further contends, the review of the claim does not warrant analysis of a) a review period or benchmark period, b) a Modified V-Shaped Revenue Pattern, and/or c) tax returns of the claimant. All data for determining loss is derived from the Contracts themselves in view of the fact the claimant meets all criteria established for assessment of claim delineated in 6430, 4E while reviewers continue to dispute this evidential claim of the claimant. Doc. 6430-9, 4B, III Causation Requirements for Zone D requires one of

5

the following; A. "V-Shaped Revenue Pattern **OR** B. Modified V-Shaped Revenue Pattern **OR** C. Decline-Only Revenue Pattern **OR D. Proof of Spill-Related Reservation Cancellations OR** E. For Claimant's defines as "Seafood Retailers" (including restaurants)". The Claimant meets "D. Proof of Spill-Related Reservation Cancellations" and the cancellation notification was included with the original filing of the claim.

5.      The contract addresses the issue of cost and, therefore, are cost explicit with no attributable cost carry over to the claimant. The claimant has repeatedly informed the reviewer(s) through the web portal there are no variable expenses which can be borne by the claimant.

## II.  Failure to Comprehend 6430; 4E

A.      Upon astute review of the documents presented with the filing of the claims and a comparison to the Court Document 6430 it becomes apparent the claim(s) fit directly into 6430, 4E. Reviewer(s) continuously have required documents from the claimant which are not required of claims which meet the criteria established by the Court and fully delineated in 6430, 4E, refer to Exhibit **2**, attached hereto for a complete analysis of the claim characteristics as prepared by the claimant. The documents presented on the web portal by the reviewers clearly establish a failure on the part of the reviewer(s) to properly ascertain the merit of all the claims presented by the claimant, a failure to comprehend the integrity of the Court Document 6430 in regards to the processing of claims under Exhibit 4B and constitute an unfairness committed against the claimant and places the valid claims of the claimant in an unwarranted jeopardy. The requested documents were subsequently tendered to the Claims Office for review *under duress*.

B.      Claimant contends the reviewer(s) have consistently failed to comprehend the meaning of the statement found in 6430-12 page 6 Art 5. wherein the claimant contends the reference, "consistent with the claimant's industry" is the Standard Industry Classification of 8712[10] (Architectural Services) which is found in the NAICS Code 541310. See Exhibit 3. The reviewer believes, "the claimant's

---

10 This Standard Industry Classification (SIC) is shared by many governmental agencies and private enterprises throughout the US, inclusive of OSHA as the definitive classification for industry.

6

industry and the zone are one and the same". Claimant contends the preceding statement constitutes a wrongful interpretation of the true meaning of the Court doctrine and the reviewer(s) do not understand the NAICS Code[11].

1. The claimant has tendered to the reviewer at the Chef Highway Claims Office, a document which attempts to explain the North American Industry Classification System, (NAICS Code) to establish the proper industry classification to use in determining *claimant's Spill-Related Cancellation Compensation*[12] *consistent with the claimant's industry* to allow computation of compensation as directed by the Court in Court Doc. 6430 4E 5. These efforts have fallen on deaf ears as evidenced by the response of the reviewer;

> "*Your response to Mr. Boothe should be as follows:*[13]
>
> *Our teams have reviewed your correspondence, the documentation you submitted, and the Settlement Agreement. We are reviewing your claim and all supporting documentation , Based on the documentation on file, we are reviewing your business in line with the terms of the Settlement Agreement. Your claim is properly identified with a Non-Tourism Industry Designation and Zone D Economic Loss Zone*[14], *and as a result 0.25 is the proper RTP for this claim. Your correspondence references Table 1 in Exhibit 6 as further support for an increase in the RTP of your claim. Exhibit 6 only applies to Failed Business Economic Loss claims, therefore the MVIC multiple provided in Exhibit 6 does not apply to your General Business Economic Loss claims.*"

2. The claimant did not indicate in any correspondence Doc. 6430-14 (Exhibit 6) had any bearing on the issues of claimant's filed claim, but, indicated the Table[15] found in this section as a

---

11  NAICS Code Designation is primarily a US, Canada and Mexico initiative to categorize industrial groups responsive to the economies of the collaborative countries. ISIC remains the Industrial Classification for the United Nations and many domestic companies and company initiatives.

12  Total Compensation Amount shall mean the Compensation Amount, plus any RTP and *any other amounts* due for any Claim less any applicable offsets under this Agreement or its Frameworks – 38.147 of 6430-1.

13  Claimant was allowed to read this statement at the Claim Office on Chef Menteur Hwy on Wednesday, January 23, 2013.

14  6430-1 38.174, 38.175, 38.176 – Zone A, B, & C shall mean geographic area set forth in Exhibits 1A-1C; 38.177 – Zone D shall mean the residual portions of the Gulf Coast Areas outside of Zones A-C.

15  The table sited here is not representative of the actual multiplier as the multiplier adjust every three months depending on the status of the US Economy. Example: the Avg for the year 2007 for NAICS Code Designation 541310 – Industry Classification 8712 was 4.52; for 2008 = 3.32 and for 2009 (claimant's Benchmark Period) was 2.92. (*Source – Pratt's Stats Private Deal Update Newsletter 1ˢᵗ Quarter 2010.*)

reference only to the multiplier value contained therein. In fact, claimant fully explains the origination of the claimant's industry classification in the text of the correspondence, which coincides with the direction of the Court when stating, " *consistent with the claimant's industry*". Further, the instant claim is not a **General** Business Loss claim, but, rather a special claim which exist under 6430-4E which states, "*This addendum sets forth the* **exclusive compensation methodology**[16] *for business claimants that provide appropriate documentation and which establish causation by demonstrating (a) a Spill-Related Cancellation pursuant to Causation for Business Loss Claims Section II.D or Section III.D, or (b) Modified V-Shaped Revenue Pattern and a contract cancellation pursuant to Causation for Business Loss Claims Section II.B or Section III.B.*

3.      The reviewer has failed to appropriate any compensation consistent with the claimant's industry to the claim. The reviewer has instead chosen to only apply a RTP for "zone" compensation and states, "*Your claim is properly identified with a Non-Tourism Industry Designation.*" The Doc. Court 6430-12, 4E gives the reviewer an option of either applying compensation consistent with the claimant's industry and/or zone. Claimant contends the *compensation consistent with the claimant's industry* is greater[17] (higher) than the compensation consistent with the claimant's zone and therefore should be used and/or both should be applied.    Court Doc. 6430 – Exhibit 15 does not limit a claim compensation singularly to Exhibit 15, in fact Court Doc. 6430-1 38.126, as well as, Exhibit 15 specifically states, "*To the extent that an RTP is to be paid to a claimant, it shall be a factor which is multiplied with those Compensation Amounts which the Exhibits to this Agreement specify are eligible for an RTP to calculate a sum which is added to the Compensation Amount*[18] *paid to the Claimant.*" The foregoing statement does not limit damages compensation to the RTP factor. Further Exhibit 15 does not use the claimant's industry classification to determine a multiplier relative to the Zone, but,

---

16 Claimant believes the Court recognizes the special characteristics of Business Economic Loss claims which meet the Eligibility (4E.B) requirements of 4E and consequently sets these claims apart from other Economic Business Loss claims and therefore, provides special compensation methods peculiar to other BEL claims.

17 Court Doc. 6430-1, 4.3, 4.3.8 – The Claims Administration Vendors shall evaluate and process the information in the completed Claim Form and all supporting documentation under the terms in the Economic Damage Claim to produce the greatest Economic Damage Compensation Amount that such information and supporting documentation allows under the terms of the Economic Damage Claim Framwork.

18 Claimant Loss (Base compensation) plus compensation consistent with the claimant's industry.

uses the Claim Type, i.e., Business Economic Loss Claims; Start-up Business Claims; Failed Business Claims; etc., in essence there is no relationship to the claimant's industry classification to determine an RTP for zones.  Exhibit 2 of 6430 uses the NAICS Code Designation to identify groups of business enterprises which are grouped under one NAICS Code Designation, but, does not give the specific industry classification, i.e., 447110 -   Gasoline Stations with Convenience Stores – this category contains two industry classifications under this particular NAICS Code; Industry 5411 – Convenience Stores Selling Gasoline and 5541 Gasoline Stations with Convenience Stores. Consequently the vagueness of Exhibit 2 cannot be used to determine an accurate industry classification in regards to industry multipliers representative of the value of a particular business to the US economy.  Consequently, relative to the claimant's industry, the claimant contends the Court was not referring to Exhibit 2 nor Exhibit 15 in the statement, *"An RTP shall apply to claimant's Spill-Related Cancellation Compensation consistent with the claimant's industry and/or zone"*, but, the specific industry classification found within the particular NAICS Code Designation which identifies each specific industry with a SIC industry code (Refer to Exhibit 5) attached hereto.

4.      Claimant further contends the statement from the Reviewer included in paragraph 1 above is factual evidence the reviewer has not included any Spill-Related Cancellation compensation consistent with the claimant's industry in placing a value on the claim, and, in fact intends only to include a compensation for zone.

5. Claimant contends the term " *consistent with the claimant's industry*[19], in the statement does not refer to the Tourism[20] and/or Non-Tourism status of the industry designation, but, rather the industry classification, which is found inside the NAICS Industry Designation of 541310 to be the Standard Industry Classification of 8712[21] – Architectural Services which in turn references an Industry

---

19 Exhibit 4E of 6430 makes no reference to Exhibit 2 which list business Tourism and Non-Tourism groups.
20 Exhibit 2 of 6430 only serves to list businesses which are categorized in Tourism and Non-Tourism groups and makes no reference to the actual industry classification. The NAICS Code number simply identifies the industry designation.
21 8712 – Architectural Services further breaks down into :  8712-02 – Architects; 8712-07 Architects & Builders Service; 8712-05 Architects & Engineers; 8748-85 Architects Service Bureau; 5049-01 Architects Supplies; 3952-01 Architects Supplies-Manufacturers; 8712-06 Architectural & Constr Specifications; 3446-98 Architectural & Ornamental Metal Work; 8712-17 Architectural Designers; 8712-04 Architectural Illustrators; 8712-18 Architectural Models; 8712-98 Architectural Services

Group (87) which in turn references a variable multiplier for compensation. The multiplier is a variable (See Exhibit 6) depending on the industry specific classification and industry group, See Exhibit 4. The Tourism and Non-tourism is only considered relative to the business economic loss zone location used in determination of the "zone" RTP. Although Court Doc 6430, Exhibit 6 includes a Table which delineates the industry multiplier and the Table is not included in 6430, Exhibit 4E. The claimant's industry classification will lead to the Table of multiplier (which is a variable, as stated in Footnote 11 on page 7) for compensation evaluation, as well as, provides evidence the Court was aware of the industry classification multiplier which would be applied consistent with compensation determinations of Exhibit 4E in regards to the claimant's industry. The "reviewer" has steadfastly insisted the claimant's industry is the same as the zone designation and the claimant believes this to be an erroneous assumption. The NAICS Code Designation can contain many industries under the single NAICS number. (Refer to Exhibit 3, 541360 and find Industry 1081, Industry 1362, Industry 1481, and Industry 8713, all of which co-exist under the single NAICS Code Designation.) To be more specific, NAICS Code Designation 541360 – *Geophysical surveying & mapping services* includes the following Industry Classifications: 1081 *Geophysical surveying services only for metal mining, contract basis*; 1382 *Geophysical surveying services for oil & gas fields, contract basis*; 1481 *Geophysical surveying services for nonmetallic minerals (except fuels)*; 8713 *Geophysical surveying*. Consequently, to cite only the NAICS Code Designation 541360 would be erroneous if the purpose was to identify *Geophysical surveying* only. The proper cite would be, NAICS 541360 – *Geophysical surveying & mapping services* – 8713 – *Geophysical Surveying*. In the instant claim the proper cite is NAICS 541310 – 8712 *Architectural Services*. The importance of the actual industry classification is there may be more than one industry classification within the single NAICS Code Designation and each may have a different multiplier. Consequently, the proper evaluation for compensation concurring with the Court Doc. 6430-4E, *"An RTP shall apply to claimant's Spill-Related Cancellation Compensation consistent with the claimant's industry and/or zone"* would be."

(Base Compensation amount[22]) plus (Claimant's Industry Classification multiplier[23] times the Base Compensation amount[24]) (plus) and/or aggregate amount of compensation times RTP for "zone".

### III. Transparency

A.      Claimant is concerned with the transparency of the review process[25]. As evidenced by Exhibit 7 attached hereto the documents uploaded by the claimant have not been logged into the system as "Document Type" is blank, as well as, the "Page From" & "Page To" commencing on December 20, 2012 through January 28, 2013.   After December 20th the only documents which show "Type and Page" data are the documents delivered to the claims center by the claimant.   Claimant believes the processing of this claim has been somewhat awkward, having gone from three (3) claim reviewers, each review one of the three claims to one reviewer for all three claims.   The claims have been moved from "In Claim Review" to "Accountant Review" to QA to "Claim Closed" to "Claim Review", repeatedly. Claimant's position has been in opposition to the reviewers and claimant would like to guard against reprisal.   These claims are starting to show some age as Claim 5095 is a transition claim from GCCF and Claims 9327 and 9328 were filed in June of 2012.

### IV. Clarification

A.      Claimant/mover ask the Honorable Court review the merits of this document and should the Court find in favor of the claimant/mover herein to:

> 1.  Issue a clarification in regards to the issue of providing financial documents when the claimant meets eligibility as defined in Exhibit 4E of Court Doc. 6430; and,
>
> 2.  Issue a clarification as to the exact meaning of the sentence, "*An RTP shall*

---

22  An amount determined by analysis consistent with 6430-12  C.1.a, C.2.a .

23  A variable amount.  If Benchmark Period selected is 2009 the multiplier would be 2.92x.  (Source = *Pratt's Stats Private Deal Update Newsletter 1st Quarter 2010.) (*For 2010 multiplier = 2.71x and for 2011 multiplier = 2.96x.  *Source – Pratt's Stats Summary Data*).

24  An amount determined by analysis consistent with 6430-12 C.5.

25  Court Doc. 6430-1, 4.3, 4.3.7 - ........ The Settlement Program, including the Claims Administrator and Claims Administration Vendors, shall use its best efforts to provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of the Agreement.

apply to claimant's Spill-Related Cancellation Compensation consistent with the

claimant's industry and/or zone".

**Finally**, the claimant, H. Freddie Boothe, Jr., Architect, prays upon the Honorable Court to intervene,

and after full review of the documents, protect the claimant, and all others equally harmed, from the

complete incompetence demonstrated by the Reviewer(s) of claims against BP Deepwater Horizon

Spill incident, as same is guaranteed within the context of Court Document 6418 and Document 6430.

Respectfully Submitted,

/s/ H. Freddie Boothe, Jr., Architect

In proper person
14248 Highway 1077
Folsom, Louisiana 70437
504-473-9502

**Certificate of Service**
I hereby certify that I have served a copy of this
document on all counsel of record either in person
or my mailing it postage prepaid on this
_29_ day of _January_, 20_13_

Signature

NOTICE OF SUBMISSION

A hearing will be held before Judge Barbier on the
13 day of February 2013 @ 9:30 Am

pro se
14248 Heghway 1077
Folsom, LA 70437
archwave @ bellsouth.net

**Please Serve:**

Stephen J. Herman, La. Bar No. 23129
HERMAN HERMAN KATZ & COTLAR LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 569-6024
Lead Economic and Property Damages
Class Counsel

James Parkerson Roy, La. Bar No. 11511
DOMENGEAUX WRIGHT ROY &
EDWARDS LLC
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233-3033
Fax No. (337) 233-2796
Lead Economic and Property Damages Class
Counsel

### *ECONOMIC AND PROPERTY DAMAGES CLASS COUNSEL*

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Telefax: (843) 216-9290

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, LA 70360
Office: (985) 876-7595
Telefax: (985) 876-7594

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office: (850) 435-7045
Telefax: (850) 436-6187

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY 10003
Office: (212) 558-5802
Telefax: (212) 344-5461

Jeffrey A. Breit
BREIT DRESCHER IMPREVENTO &
WALKER, P.C.
999 Waterside Drive, Suite 1000
Norfolk, VA 23510

Office: (757) 670-3888
Telefax: (757) 670-3895

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office: (334) 269-2343
Telefax: (334) 954-7555

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Office: (415) 956-1000
Telefax: (415) 956-1008

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA 70601
Office: (337) 439-0707
Telefax: (337) 439-1029

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Office: (504) 394-9000
Telefax: (504) 394-9110

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGÉ
618 Main Street
Baton Rouge, LA 70801-1910
Office: (225) 344-3735
Telefax: (225) 344-0522

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL 36660
Office: (251) 471-6191
Telefax: (251) 479-1031

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Office: (504) 588-1500
Telefax: (504) 588-1514

Alphonso Michael "Mike" Espy

MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Office: (214) 521-3605
Telefax: (214) 599-1172

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA 70726
Office: (225) 664-4193
Telefax: (225) 664-6925

Mikal C. Watts (PSC)
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444

James J. Neath
Mark Holstein
BP AMERICA INC.
501 Westlake Park Boulevard
Houston, TX 77079
Telephone: (281) 366-2000
Telefax: (312) 862-2200

Daniel A. Cantor
Andrew T. Karron
Ellen K. Reisman
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Telephone: (202) 942-5000
Telefax: (202) 942-5999

Jeffrey Lennard
Keith Moskowitz
SNR DENTON
233 South Wacker Drive
Suite 7800
Chicago, IL 60606
Telephone: (312) 876-8000

Telefax: (312) 876-7934

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Andrew B. Bloomer, P.C.
Wendy L. Bloom
R. Chris Heck
Christopher J. Esbrook
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Telefax: (312) 862-2200

Jeffrey Bossert Clark
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Telefax: (202) 879-5200

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 662-5985
Telefax: (202) 662-6291