# Exhibit 1

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

July 19, 2012

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

      Re:    MDL 2179 — United States Challenges to Schedule I Privilege Documents; Order Regarding *In Camera* Inspection of BP's Claimed Privilege in Schedule I

Dear Judge Shushan:

      On July 13, 2012, the Court ruled on the United States', Halliburton's, Transocean's, and Louisiana's challenges to BP's assertion of attorney-client privilege and work product protection. (Dkt. No. 6904.)

      As discussed on the recent calls of July 17 and July 19, there were several documents for which BP asserted attorney-client privilege and work-product protection, but the United States challenged only BP's assertion of work product, and the Court did not address BP's attorney-client claim. For example, for *In Camera* Submission No. 28, a document for which BP asserted attorney-client privilege, the Court stated that "BP does not argue that the document is protected by the attorney-client privilege." (Dkt. No. 6904, at 27.) BP noted its attorney-client privilege assertion for No. 28 in an attachment BP submitted to the Court and the parties via Rob Gasaway's email of June 26, 2012, at 11:42 pm CT (the "Attachments").[1] (*See* Ex. 1, Document Showing BP's Claim of Attorney Client Privilege on No. 28, Included as Attachment to R.

---

[1] BP noted all privileges claimed over each of the challenged documents in the three attachments it submitted to the Court on June 27, 2012: BP Responses to US-LA AC Challenges (documents for which the United States and Louisiana had challenged attorney-client privilege); BP Responses to US-LA WP Challenges (documents for which the United States and Louisiana had challenged work product protection); and BP Responses to HESI-TO Challenges (documents for which Halliburton and Transocean had challenged attorney-client privilege or work product protection). BP's attorney-client privilege and work product protection assertions are included here as Exhibit 1.

Chicago    Hong Kong    London    Los Angeles    Munich    New York    Palo Alto    San Francisco    Shanghai

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 19, 2012
Page 2

Gasaway's Email on June 26, 2012). However, considering the large size of the parties' submissions and attachments, the Court may not have noticed all the privilege assertions in this attachment, thus explaining the Court's statement that "BP does not argue that the document is protected by the attorney-client privilege." (Dkt. No. 6904, at 27.) On this basis, the Court ordered BP to produce No. 28, although the attorney-client privilege assertion had not been addressed.

Similarly, for a number of other documents for which BP asserted both attorney-client privilege and work-product protection, but the United States challenged only work product, the Court did not address the attorney-client privilege issue, and ordered that at least some[2] of the documents be produced. The documents at issue are Nos. 26, 28, 30, 45, 46, 51, and 54. Citing Document No. 28, the United States asserts in its letter of July 18: "This appears to be an isolated issue related to this one document." Respectfully, this is speculative. The fact that the Court did not state that BP did not assert a privilege claim does not mean that the Court considered such a claim. For each document, only the Court knows whether it considered (1) the *challenges* asserted by the U.S.; or (2) also all of BP's privilege *assertions*, which were attached to Rob Gasaway's email of June 26, 2012, at 11:42 pm CT (and are attached hereto as Exhibit 1).

Given the procedural history of the representative privilege challenges, there is a significant difference between the United States' challenges to representative documents and BP's assertions. The Court's May 11, 2012 Order limited the United States to 50 representative challenge documents for attorney-client privilege, and 50 for work product production. (Dkt. No. 6510, at 4.) On June 16, 2012 the United States provided with its brief a list of 81 representative documents, and broke those documents into two non-overlapping lists — representative challenges to BP's claims of attorney-client privilege and representative challenges to BP's claims of work-product protection. (*See* Exhibit 2, Document Listing Representative Challenges by the United States.) The United States could have covered its bases by challenging both attorney-client privilege and work-product protection for each document—which would have limited the number of BP documents at issue to approximately 50—but the United States chose not to. Under the alternative strategy the United States adopted, it covered a significantly greater range of BP documents (81 instead of 50), but could not challenge both attorney-client privilege and work-product protection for each sample document, given the limits of the May 11, 2012 Order.

---

[2] It is not always clear. *Compare* Order at 29 ("Document 51 is not protected from disclosure.") *with id.* ("Document 54 is not protected from disclosure by the work-product doctrine.") *and* Order at 26 ("For the reasons discussed with Document 25, Document 46 is not protected as work-product.").

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 19, 2012
Page 3

On the parties' July 18 call, the United States claimed for the first time that for each of the 81 representative documents, the United States on June 16 actually challenged all privileges asserted by BP, even where the United States expressly challenged only work product for a particular document. For example, Exhibit 2 shows that on June 16 the United States only expressly challenged BP's work-product assertion for Doc. No. 28, although the United States now claims it was contemporaneously challenging attorney-client privilege for Doc. No. 28 and every other document on the list. BP disagrees with the United States' position. If the United States on June 16 challenged attorney-client privilege even where it only expressly challenged work-product protection, this would have meant that the United States exceeded the Court's Order by challenging attorney-client privilege for 81 representative documents, and by challenging work product for 81 representative documents. But the Court's Order only permitted 50 representative challenges for work product, and 50 for attorney-client privilege. The United States should not be permitted to have more representative challenges than the Court's Order allowed.

In any event, the United States indicated on the call this morning that it does challenge BP's assertion of attorney-client privilege with respect to Doc. No. 28, and believes the balance of the documents should be produced. Assuming *arguendo* that the Court considers the submission of representative attorney-client challenges to these documents to be appropriate as part of the pre-extrapolation process, BP requests that the Court proceed to the merits of the claims and rule that documents 26, 28, 30, 45, 46, 51, and 54 are attorney-client privileged.[3] (BP suggests that the United States be permitted to file a response on July 24, 2012, and that BP be permitted to reply on July 27.)

## I. Documents for Which BP Claimed Attorney-Client Privilege But The U.S. Did Not Challenge Attorney-Client Privilege

### A. Documents Relating to Congressional Responses

The following are documents relating to Congressional responses for which: (1) BP claimed attorney-client privilege and work-product protection (as set forth in one of BP's Attachments submitted with Mr. Gasaway's June 26 email, which is attached as Exhibit 1 hereto); (2) the United States challenged only work-product protection (Exhibit 2); and (3) the Court ruled only on the work-product challenge and did not address the claim of attorney-client privilege.

---

[3] In that event, BP also requests that the Court rule that Document No. 11 is protected by the work-product doctrine.

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 19, 2012
Page 4

- **Document No. 30** – May 22, 2010 email from Jeffrey Morgheim to Trevor Hill. (Morgheim's role as the primary person tasked to assist the lawyers working on congressional responses is discussed below.) The redacted portion of this document contains a request from Morgheim, which he again indicates is being made "at the direction of counsel for BP" as part of the process of gathering information relevant to the May 24 response to Congressman Markey. This communication is covered by the attorney-client privilege.

- **Document No. 46** – May 22, 2010 email chain between Morgheim and Hill. The initial email in this chain is the same as Document No. 30. Following the request that Morgheim made on behalf of counsel in connection with the Markey response, Hill provided information for Morgheim to evaluate for potential use in constructing the response to Congressman Markey.

- **Document No. 26** – Hard copy document from David Rainey's custodial files. The redacted portion of this document is on the first page; it contains Rainey's draft answer to Request No. 4 in Congressman Markey's May 14 request. Rainey drafted this answer after Morgheim emailed him for assistance with the Markey response; in the email to Rainey, Morgheim explicitly stated that he was working "at the direction of counsel for BP." Rainey sent his draft answers, prepared following the request from counsel transmitted by Morgheim, to Rainey, Kirkland & Ellis attorney Brian Kavanaugh, BP attorney Frank Monago, and BP employee Doug Suttles. Rainey's draft answers were then forwarded to other attorneys working on the May 24 response to Congressman Markey.

- **Document No. 45** – May 25, 2010 email chain. In the initial email in the chain, in connection with preparing a response to Congressman Cassidy, Morgheim wrote to Mike Mason, with a copy to Kirkland & Ellis attorney Mark Nomellini, with the subject line: "ATTORNEY-CLIENT PRIVELEDGE [sic] – Urgent: Congressional response" and a request "[o]n direction of counsel." Mason then forwarded the request Morgheim made on behalf of BP's counsel to Hill.

- **Document No. 28** – June 22, 2010 email chain. A WilmerHale attorney, Tonya Robinson, emailed a draft letter regarding Representative Markey's release of two pages related to worst-case discharge calculations that were attachments to BP's May 24 response to Congressman Markey. Robinson sent the draft letter for comment to a BP attorney, Kevin Bailey, and three BP non-attorneys, Elizabeth Reicherts, Morgheim, and Kathleen Lucas, all of whom were involved in the process of preparing congressional responses. The email also copied two other

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 19, 2012
Page 5

WilmerHale attorneys. The chain includes responses from Lucas and Bailey providing comments on the draft letter. In the final email, Morgheim forwarded the email chain and the draft response to another BP employee, Rainey, and requested that Rainey also review the letter. The drafting and review of a letter to Congress by and at the direction of counsel falls within the protections of the attorney-client privilege.

Below, in summary form, are key points regarding why Document Nos. 26, 28, 30, 45, and 46 are attorney-client privileged (assuming again that the Court does not adopt BP's argument that the U.S. was limited to 50 representative challenges for attorney-client privilege):

- During the relevant period in which these documents were created, oil was still flowing from the damaged Macondo well. BP's energies were focused primarily on efforts to cap the well and contain the spill. Engineers with relevant expertise, along with 40,000 other BP employees and personnel from the government and other companies in the oil industry, were working around-the-clock in that effort. At the same time, BP was receiving a steady stream of requests for information from members of Congress and other public officials. In May 2010 alone, BP received more than 70 requests from members or committees of Congress, and the Company was already facing dozens of lawsuits and many government investigations.

- BP retained several law firms, including WilmerHale and Kirkland & Ellis, shortly after the incident to assist in various respects with responding to these many lawsuits, investigations, and information requests. Congressional requests received by the company in this time period were handled through a process organized and directed by lawyers in which information was gathered from personnel within the company. Congressional responses were then drafted in a collaborative process led by WilmerHale and involving both in-house and external lawyers along with appropriate BP personnel. Although not every communication regarding the effort to collect information and to respond to requests involved the direct participation of an attorney, the overall process was a lawyer-directed effort seeking to ensure that BP received appropriate legal advice with respect to the requests and the company's responses.

- Given the number and urgency of the requests BP received, lawyers at and for the company had to rely on non-attorney BP employees, who were familiar with BP's operations and personnel, to facilitate the collection of potentially responsive information. Communications by and to these individuals as part of that process were made for the purpose of securing or providing legal advice and are covered by the

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 19, 2012
Page 6

attorney-client privilege, just as they would be if made directly by or to an attorney.[4] Most relevant to the documents discussed herein, Jeffrey Morgheim was the primary non-attorney who was tasked to work with counsel in connection with congressional responses. At the time, Morgheim was BP's Director of Climate Change and had no independent reason to participate in the effort aside from his efforts to assist the attorneys coordinating these responses, including the May 24 letter to Congressman Markey that BP sent in response to a May 14 request from the Congressman.

- In his role as an agent of the attorneys, Morgheim contacted BP employees who may have had relevant information to respond to Markey's May 14 request, including David Rainey and Trevor Hill. Rainey was at the time BP vice president for Gulf of Mexico Exploration and BP's Deputy Incident Commander within the Unified Command, and Hill was heavily involved in efforts to address the spill; thus, Morgheim's participation helped to ensure that responding to Congress did not interfere with BP's primary mission of stopping the leak and containing the spill.

### B. Document Nos. 51 and 54

The documents listed in Section A above relate to Congressional responses. There are two non-Congressional documents (Document Nos. 51 and 54) for which: (1) BP claimed attorney-client privilege and work product protection (*see* Exhibit 1); (2) the United States

---

[4] *See, e.g., United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961) (given the "complexities of modern existence," attorney-client privilege "'must include all the persons who act as the attorney's agents'"). *See also, e.g., Gucci America, Inc., v. Guess?, Inc.*, 271 F.R.D. 58, 70-74 (S.D.N.Y. 2010) (discussing principles and collecting cases regarding roles of in-house counsel, outside counsel, and non-attorney agents for purposes of attorney-client privilege); *id.* at 71 (privilege applied where employee was "deputized to gather information from [client] employees to assist in the litigation"); *Ferko v. National Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 134 (E.D. Tex. 2003) (when an attorney "'direct[s] the client . . . to tell his story in the first instance to an [agent, in this case, an accountant] engaged by the lawyer . . . so that the lawyer may better give legal advice, communications by the client reasonably related to th[ose] purpose[s] ought to fall within the privilege.'" (quoting *Kovel*, 296 F.2d at 922 (certain alterations in original) (internal quotation and citation omitted)).

Even where a document or information is itself not privileged, BP is entitled to protect from disclosure the fact that a particular piece of information or document was shared with the attorney for the purpose of seeking legal advice or collected by one client-representative from another for the same reason. *See, e.g., United States v. Hankins*, 631 F.2d 360, 364-65 (5th Cir. 1980) (attorney-client privilege prevented disclosure of what documents client sent lawyer for examination, even where no privilege was claimed over the documents themselves).

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 19, 2012
Page 7

challenged only work-product protection (*see* Exhibit 2); and (3) the Court ruled only on the work-product challenge and did not address the claim of attorney-client privilege.

- **Document No. 51** - September 21, 2010 draft of a presentation by Doug Suttles to the National Commission. Document No. 51A is an email from a BP attorney, Stephen Palmer, circulating an earlier draft version of the presentation to attorneys from BP, WilmerHale, and Kirkland & Ellis. Mr. Palmer states: "I am attaching the draft written statement for Doug's appearance before the Presidential Commission . . . ."

- **Document No. 54** - BP sought approval from the Coast Guard for the Top Hat procedure and another option. Document No. 54 is a draft of the letter which was prepared by BP attorney Karen Westall. The Court ruled that "Document 54 is not protected from disclosure by the work-product doctrine." (July 13 Order at 29.)

When BP employees were required to make official responses to the many inquiries from other government entities, such as the U.S. Coast Guard or the Presidential Commission, they sometimes sought legal advice from both BP attorneys and outside counsel. BP attorneys and outside counsel were intimately involved in drafting and revising such submissions. Such drafts, as in the case of Document Nos. 51 and 54, are covered by the attorney-client privilege under applicable law.[5]

## II. Document For Which BP Claimed Work-Product Protection But the United States Did Not Challenge Work Product

The Court has ruled that the "Flow Rate Team" was an attorney-directed project that began on July 18, 2010, and that it was an "attorney-client privileged investigation" entitled to work product protection. (Dkt. No. 6904, at 14-24.)

---

[5] *See, e.g.*, July 13, 2012 Order, (Dkt. No. 6904), at 27 ("An attorney's editorial changes to such documents" intended for eventual public disclosure "should be privilege protected"); *In re Vioxx Products Liability Litigation*, 501 F. Supp. 2d 789, 802-803 (E.D. La. 2007) (noting that, in the context of responding to warning notices from a Government regulator, attorney-client privilege covers "(1) the attorney's drafts of those responses, (2) communications in which the attorney sought information from corporate employees in her efforts to prepare those drafts, and (3) the responsive comments solicited from the corporate employees on the drafts. Following the trigger of the warning letter, every communication to and from the attorney and among corporate employees that were primarily in furtherance of legal assistance on that matter were considered privileged, *even if the initial draft of the response was prepared for the lawyer by a non-lawyer*.") (emphasis added) (footnotes omitted).

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 19, 2012
Page 8

The following is a document for which: (1) BP claimed attorney-client privilege and work product protection (*see* Exhibit 1); (2) the United States challenged only attorney-client privilege (*see* Exhibit 2); and (3) the Court ruled only on the attorney-client privilege challenge, but not on BP's assertion of work product protection.

- **Document No. 11** - Document No. 11A is an October 15, 2010, email from Tim Lockett to Kurt Mix, copying BP attorney Stephen Palmer, and BP non-attorneys Trevor Hill and Farah Saidi. Hill and Saidi were initial members of the privileged flow rate estimation team, and Lockett joined later. The email contains "[p]rivileged and confidential" in the subject line, and Lockett asked Mix for information about top kill mud for the flow rate work he was performing with Hill and Saidi. Document No. 11B includes a reply to 11A from Mix, indicating that Daryl Patterson and Bonsall Wilton may have relevant information. It demonstrates that a meeting between these individuals was scheduled for that day. Document No. 11 is an October 18-20, 2010, email string beginning with an email from Lockett to Mix, including Patterson and Wilton, and copying Saidi, Hill, and Palmer, concerning Top Kill mud. It references a previous discussion. It includes a specific request for information from Add Energy. On October 18, 2010, Mix emailed Ole B. Rygg of Add Energy (a third-party contractor for BP in the effort to control the well), highlighting Lockett's specific request for information from Add Energy. On October 20, Rygg replied. BP asserted work product, but the U.S. did not challenge BP's work product assertion, and the Court did not address BP's work product assertion in its ruling.

Assuming *arguendo* that a work-product protection challenge to this document is properly included in the representative sample, the work-product assertion should be sustained:

- In not adopting BP's attorney-client privilege assertion, the Court ruled that any privilege was waived because the document was shared with Add Energy, a third-party contractor to BP. (Dkt. No. 6904, at 22.) However, unlike the attorney-client privilege, the work product doctrine is not waived by virtue of a document being shared with a third party: "[M]ore than once, the Fifth Circuit has held that the mere voluntary disclosure of work-product to a third person is insufficient in itself to waive the work product privilege." *PBC Mgmt., Inc. v. Roberson*, No. 10-798, 2010 WL 4553507, at *2 n.2 (E.D. La. Oct. 28, 2010) (citing *In re Grand Jury Proceedings*, 43 F.3d 966, 970 (5th Cir. 1994); *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989).

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 19, 2012
Page 9

- Indeed, the Court found that the United States has not waived work product protection for certain communications with third-party members of the FRTG plume team (not all of whom, to BP's knowledge, were then retained experts) and over which the United States claimed work-product protection. *See, e.g.*, Dkt. No. 6905, at 2 (discussing NOA023-001598). The Court's Order described NOA023-001598 as an email string "concerning a lawyer's request for a category of information." Similarly, Document No. 11 is a request for a category of information for use in preparation for litigation by Tim Lockett, an internal BP expert, who copies two attorneys. That request is then forwarded to a third-party contractor for BP.

\* \* \*

For the foregoing reasons, we respectfully request that the Court find that BP does not have to produce representative documents 11, 26, 28, 30, 45, 46, 51, and 54.

We would be pleased to answer any questions the Court has about this letter at the Court's convenience.

Sincerely,

Robert R. Gasaway

Exhibits

cc (via electronic mail):

| | |
|---|---|
| R. Michael Underhill | Thomas A. Benson |
| Steven O'Rourke | Joel M. Gross |
| Sarah D. Himmelhoch | Allison B. Rumsey |
| Scott M. Cernich | Don K. Haycraft |
| A. Nathaniel Chakeres | Plaintiffs' Liaison Counsel |
| Bethany Engel | Defense Liaison Counsel (dsc2179@liskow.com) |

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 19, 2012
Page 10