# Exhibit 16

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

January 18, 2013

By Electronic Mail

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

Re: MDL 2179 — BP's Limited Motion for Reconsideration on the Court's January 2, 2013 Order Regarding BP Rule 30(b)(6) Witnesses, (Rec. Doc. 8149)

Dear Judge Shushan:

BP writes regarding the Court's January 2, 2013 Order regarding BP Rule 30(b)(6) witnesses, (Rec. Doc. 8149).

As mentioned at this morning's Working Group Conference, BP and the United States are meeting and conferring about implementing the Order. The meet-and-confer process to date has been met with some success, but is not yet complete. As further described below, BP offered on January 11, 2013, to provide the United States with the non-privileged testimony on behalf of the company the Court's Order envisions, and to do so in an efficient, cost-effective fashion. (Attachment 1.) As of this morning's Working Group Conference the United States had not yet responded to this proposal, but this evening, the United States did finally respond with a brief letter rejecting BP's proposals and renewing its requests. (Attachment 2.)

Ideally, BP would continue discussions with the United States in an effort to reach further agreement on the Court's Order. To this end, BP appreciates the Court's offer of an additional extension of time to move for reconsideration so that BP might continue the meet-and-confer process with the United States.

But, with the close of the fact-discovery period quickly approaching, BP writes to respectfully request reconsideration of the Order to the extent it could be interpreted to seek

Chicago    Hong Kong    London    Los Angeles    Munich    New York    Palo Alto    San Francisco    Shanghai

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
January 18, 2013
Page 2

relief beyond that which BP has offered to provide. In short, and for reasons stated below, BP stands by its January 11 offer to the United States of further fact discovery, (Attachment 1), and seeks reconsideration of the Court's Order only to the extent it requires BP to provide discovery beyond the scope of that offer. Of course, the filing of this motion for reconsideration is prompted by the Court's fact discovery deadlines, not from any desire by BP to short-circuit its ability to reach agreement with the United States.

## Discussion

In an effort to move forward, BP sought to implement the Court's order in efficient fashion, beginning with the Court's ruling regarding the Hill deposition. As the Court knows, this relief was granted after the United States had raised an issue about testimony it contended was wrongfully denied; filed extensive (and sometimes accusatory) briefing; consumed the Court's time preparing an Order; engaged in extended negotiations with BP; and secured 50 additional minutes to question Mr. Hill as a Rule 30(b)(6) witness regarding work Mr. Hill did critiquing Professor Wereley's analysis and the basis for this work. (Rec. Doc. 8149, at 4.)

At Mr. Hill's deposition, however, the United States, surprisingly, used less than half of its hard-won 50 minutes of Rule 30(b)(6) questioning time to inquire about this topic or to ask the questions Dr. Williams allegedly was unable to answer at her prior 30(b)(6) deposition. (*See* Attachment 3, Hill Dep. Tr. 251-280.) As Mr. Hill's deposition demonstrates, the discovery the Court has directed BP to provide often can be efficiently supplied with little or no additional deposition testimony.

Against this backdrop, BP proposes that some — but not all — of the discovery that the January 2 Order contemplates be provided via deposition testimony and that the rest be provided via written discovery.

### Sanders

BP continues to be willing to provide a Rule 30(b)(6) witness to testify by deposition (for no more than two hours) on the subject of the Bottom Kill — a contemplated, but unused method for dynamically killing the well.

During a Tuesday, January 8, 2013 meet-and-confer discussion, the United States specifically mentioned an interest in determining (i) whether BP personnel performed any "flow rate modeling" in connection with a possible Bottom Kill operation — in addition to any modeling performed by Wild Well Control and Add Energy — and (ii) BP's opinion of modeling Wild Well Control and Add Energy performed as part of the operation. As stated in

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
January 18, 2013
Page 3

our January 11 letter, BP is willing to put forward a Rule 30(b)(6) witness to testify as to these subjects.

As the United States has appeared to recognize, however, employees of Wild Well Control and Add Energy were in charge of and largely staffed the dynamic kill team; hence, identifying an appropriate witness and preparing the person to testify has proved somewhat challenging. BP understands the Court has set February 8, 2013, as the date for concluding all fact depositions, and BP is working hard to meet this goal. Nonetheless, BP may need some additional time to identify and prepare an appropriate witness to testify.

Under no circumstances, however, will the United States have the opportunity to disagree with the witness BP designates or otherwise guide the designation process. Meet and confer discussions about the appropriate relief regarding the Sanders Rule 30(b)(6) deposition are thus concluded.

**Devers**

BP understands from its January 8 discussion with the United States, that the United States seeks testimony regarding any "design phase" analysis of flow rates "into" the RITT and Top Hat devices.

The important point here, however, is that Mr. Devers has already provided testimony on this subject. Significantly, Mr. Devers was the leader of the RITT and Top Hat teams, (Attachment 4, Devers Dep. Tr. 32:20-33:11), and therefore has direct personal knowledge of the design process. Moreover, Mr. Devers has specifically testified that there was no such design phase consideration of flow rates.

> Q. (By Mr. Dart) As a spokesman for BP, were any such analyses done in preparation for or in consideration of or execution of the cofferdam, the RITT, or the Top Hat?
> MR. BENTSEN: Objection, form.
> A. Not by me. And I'm not aware of others that -- that may have.
> Q. (By Mr. Dart) So BP says there was no consideration of flow rate in the cofferdam, RITT, and Top Hat; is that right?
> MR. BENTSEN: Objection, form.
> Q. (By Mr. Dart) Is that BP's position?
> MR. BENTSEN: Same objection.
> A. From -- from a cofferdam, RITT, Top Hat, I believe that to be true.
> (Attachment 4, Devers Dep. Tr. 429:3-430:17.)

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
January 18, 2013
Page 4

\*   \*   \*

> Q.   (By Mr. Bentsen) Is the collection limit of the RITT based on the design of the RITT itself or on the surface collection capacity?
> MR. DART: Object to the form.
> A.   On the surface collection capacity.
> Q.   (By Mr. Bentsen) Is that the same with the cofferdam?
> A.   It is.
> MR. DART: Objection, form.
> Q.   (By Mr. Bentsen) Is the collection limit of the Top Hat based on surface collection capacity? A. It is.
> Q.   And what happens if a -- each of those devices reach their collection capacity at the surface?
> A.   Then excess fluids would be discharged to the environment.
> Q.   All right. Did the Team developing and designing and implementing the RITT use flow rate estimates in its design or implementation?
> A.   We did not.
> Q.   Same question as to the cofferdam?
> A.   They did not.
> Q.   Same question as to the Top Hat?
> A.   We did not.
> Q.   You were asked some questions just a little bit ago about a letter from Mr. Suttles to the Unified Area Command. Was Mr. Suttles involved in the design of the Top Hat?
> A.   He was not on the Team, so, no. All right. And did that letter that you were asked questions predate or postdate the design and implementation of the Top Hat?
> A.   It postdated the implementation of the Top Hat.
> (*Id.* at 501:18-503:3.)

Any additional testimony the United States seeks is therefore likely to be limited, and in this context, an additional deposition is an unnecessary and inefficient way to cover this familiar ground.

As the Court knows, other disagreements between parties about the need for Rule 30(b)(6) deposition testimony have been addressed successfully via interrogatories. (*See* June 13, 2012 Working Group Order, Rec. Doc. 6664, at 4-6.) As the Court will remember, both Halliburton's proposed Rule 30(b)(6) Topic as regards M57 sands and the PSC's pursuit of the "Cost Topics" regarding BP's response costs have been successfully addressed through interrogatories, rather than through deposition testimony. In fact the United States, in its January

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
January 18, 2013
Page 5

16, 2013 letter on *its* witnesses has offered to provide interrogatories *in lieu* of additional deposition testimony sought by BP.

BP thus proposes to follow these precedents and address the portion of the Court's order regarding the Devers deposition (Rec. Doc. 8149, at 3-4) via interrogatories. BP requests that the Court order that the United States may serve an additional interrogatory for each Source Control Method — for a total of up to two interrogatories — questioning BP as to any "design phase" analysis of flow rates "into" the RITT and Top Hat that may have been performed by BP.

### Williams (Topic 9)

As previously reported to the Court, BP and the United States successfully negotiated a resolution regarding the Trevor Hill deposition and Topic 4. The last issue regarding the Williams deposition, then, is the Court's ruling on Topic 9 — awarding the United States some additional testimony regarding BP's May 24, 2010 response to Congressman Markey.

The discussions between BP and the United States regarding this aspect of the Court's ruling, and the testimony the United States is seeking, indicate that for several reasons little or no additional testimony is in order.

At the outset, BP has not previously had an opportunity to address this requested testimony either in a meet-and-confer context or before the Court. The United States' meet-and-confer letter on BP's Rule 30(b)(6) witnesses neither mentioned BP's response to Congressman Markey nor cited to the very limited portions of the deposition transcript containing questioning on this submission. (Attachment 5, at 5-8.)

But now that the Court's Order has nonetheless mentioned this testimony, the United States acknowledged, during the January 8 meet-and-confer discussion, that BP's corporate representative has already testified with knowledge regarding the observational evidence work attached to the letter to Congressman Markey. The United States further clarified that it is not interested in additional testimony regarding this observational evidence work itself — for example, the work performed by Mr. David Rainey.

Rather, the United States explained that what it seeks under this heading of the Court's ruling is a BP Rule 30(b)(6) witness to testify regarding the deliberative process used in connection with the drafting of the May 24, 2010 letter sent to Congressman Markey.

But as BP has explained to the United States, and as the Court has previously recognized, this drafting process is privileged. As the Court knows, the United States and BP each submitted extensive briefing this summer as part of the Schedule 1 privilege challenges process on

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
January 18, 2013
Page 6

documents related to the drafting of BP's response to Congressman Markey. (*See* Rec. Docs. 7009 to 7011.) As part of this briefing, BP's July 19, 2012 submission explained as follows:

> Congressional requests received by the company in this time period were handled through a process organized and directed by lawyers in which information was gathered from personnel within the company. Congressional responses were then drafted in a collaborative process led by WilmerHale and involving both in-house and external lawyers along with appropriate BP personnel. Although not every communication regarding the effort to collect information and to respond to requests involved the direct participation of an attorney, the overall process was a lawyer-directed effort seeking to ensure that BP received appropriate legal advice with respect to the requests and the company's responses.

(Attachment 6, Rec. Doc. 7009, at 5.)

The Court ruled in light of the parties' submissions that the specific documents at issue related to the drafting of BP's response to Congressman Markey are protected by attorney-client privilege. (*See* Attachment 7, July 30, 2012 Order, Rec. Doc. 7012 (upholding BP's privilege claims on Document Nos. 26, 28, 30, 45, and 46).)

In sum, testimony about the actual estimation work contained in the submission is the material arguably relevant to the Phase 2 Quantification case. But the United States, by its own admission, already received relevant testimony on this subject.

On the other hand, testimony about the deliberative process used to draft a letter to Congress is only remotely relevant, if at all, and has already been determined to be privileged.

The United States confirmed, in its response today, that it recognizes this additional deposition will largely implicate privileged information. The United States nevertheless claims it requires an additional Rule 30(b)(6) examination "to obtain specific objections or responses … [and] to probe … the circumstances surrounding the privilege assertion." (Attachment 2.)

But arranging a new deposition to obtain a very limited amount of non-privileged information would be unnecessarily inefficient (as well as potentially contentious). Even more so when the United States already has elicited much of the non-privileged information it could ever hope to learn about the drafting of the Markey letter, including through the recent deposition of Trevor Hill. (*See* Attachment 3, Hill Dep. Tr. 310-318.)

Indeed, the potential for an additional deposition of this nature to be inefficient is underscored by the United States' decision at Mr. Hill's deposition not to use its hard-won Rule 30(b)(6) examination time to question Mr. Hill on the topics for which it sought additional testimony. (*See* Attachment 3, Hill Dep. Tr. 251-280.)

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
January 18, 2013
Page 7

BP respectfully submits that the Court likely does not envision an additional Rule 30(b)(6) deposition, whose primary purpose is to elicit information about a privileged drafting process. Especially so, since it is now clear, that the United States seeks testimony similar to the deposition testimony that it sought regarding the privileged drafting of BP's submission to the Presidential Commission — a deposition request this Court appropriately denied. (Rec. Doc. 8149, at 4.)

The extensive privilege issues implicated by this discovery, and any related discussions about those privilege issues, are undoubtedly most efficiently addressed by attorneys, and in writing, rather than during or after a deposition that yields little to no substantive testimony. BP therefore proposed that the United States submit an agreed-upon interrogatory or written question that BP would answer in writing and on behalf of the Company — to the extent privileged information is not called for as part of the response.

\* \* \*

For the foregoing reasons, BP respectfully requests the Court order that its Order of January 2, 2013, is herby clarified and/or reconsidered as appropriate to provide the relief described above.

Sincerely,

Robert R. Gasaway

cc (by electronic mail):

Michael O'Keefe
United States' MDL Counsel
Plaintiffs' Liaison Counsel
Defense Liaison Counsel
Joel M. Gross