IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:   Oil Spill by the Oil Rig | * | |
| "Deepwater Horizon" | * | MDL No. 2179 |
| in the Gulf of Mexico, | * | |
| on April 20, 2010, | * | Section: J |
| | * | |
| **This Document Relates to:** | * | Judge Barbier |
| | * | |
| *No. 10-4239; No. 10-4240; No. 10-4241* | * | Magistrate Judge Shushan |
| | * | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

REPLY IN SUPPORT OF BP DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AGAINST THE MEXICAN STATES OF
VERACRUZ, TAMAULIPAS, AND QUINTANA ROO ON THE ISSUE OF
WHETHER THE MEXICAN STATES HAVE A PROPRIETARY INTEREST
IN THE MATTERS ASSERTED IN THEIR COMPLAINTS

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Catherine Fitzpatrick
Elizabeth A. Larsen
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Telephone:  312-862-2000
Facsimile:  312-862-2200

Allison Rumsey
S. Zachary Fayne
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC  20004-1206
E-Mail:  Allison.Rumsey@aporter.com
Telephone:  202-942-5000
Facsimile:  202-942-5999

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA  70139-5099
Telephone:  504-581-7979
Facsimile:  504-556-4108

Jeffrey Bossert Clark
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  202-879-5000
Facsimile:  202-879-5200

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone:  202-662-5985
Facsimile:  202-662-6291

*Attorneys for BP Exploration & Production Inc.*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ...................................................................................................................1

ARGUMENT ...........................................................................................................................1

I. THE MEXICAN STATES DO NOT HAVE PROPRIETARY INTERESTS ....................1

II. THE MEXICAN STATES' ATTEMPTS TO AVOID THE CONCLUSION THAT THEY DO NOT HAVE PROPRIETARY INTERESTS ARE UNAVAILING ..................................................................................................................5

III. THE MEXICAN STATES' GENERAL MARITIME CLAIMS AGAINST BP— AN OPA RESPONSIBLE PARTY—ARE DISPLACED BY OPA ..................................8

CONCLUSION ........................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Domar Ocean Trans., Ltd. v. M/V Andrew Martin*,
   754 F.2d 616 (5th Cir. 1985) ................................................................................................ 2

*Robins Dry Dock & Repair Co. v. Flint*,
   275 U.S. 303 (1927) ............................................................................................................... 5

**United States Statutes**

33 U.S.C. § 2701 ............................................................................................................................ 1

33 U.S.C. § 2707 ..................................................................................................................... 9, 10

33 U.S.C. § 2713(a) ..................................................................................................................... 10

**Mexican Constitutional Provisions**

Mexican Const. Art. 27 .................................................................................................................. 2

Mexican Const. Art. 73(XXIX-G) ................................................................................................. 4

**Mexican Statutes**

General Law of National Assets ("GLNA") ......................................................................... passim

Regulations for the Use and Enjoyment of Territorial Seas, Waterways, Beaches, Federal
   Maritime Terrestrial Zones, and Land Reclaimed from the Sea ......................................... 7

## INTRODUCTION

The parties have submitted numerous briefs on the narrow legal issue of whether the Mexican States possess a proprietary interest in the natural resources and wildlife allegedly injured by the *Deepwater Horizon* oil spill. In BP's Memorandum in Support of its Motion for Summary Judgment Against the Mexican States ["BP's Memorandum"] (Rec. Doc. 8176-1), BP demonstrated that (i) the Mexican States do not own, and therefore cannot have a proprietary interest in, the relevant natural resources and wildlife; and (ii) the Mexican States' general maritime claims are displaced by the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq*. And in BP's Opposition to the Joint Motion for Summary Judgment Regarding Proprietary Interests Filed by the Mexican States ["BP's Opposition"] (Rec. Doc. 8350), BP further explained that even if the Court applies some lesser standard whereby ownership is not strictly required, the Mexican States do not possess an interest in the relevant property that is so substantial as to be "tantamount to ownership."

In large part, BP has already addressed the issues raised in the Mexican States' Opposition. Therefore, BP fully incorporates herein by reference its Memorandum (Rec. Doc. 8176-1) and Opposition (Rec. Doc. 8350). To further assist the Court, the following Argument provides a summary of the key points and demonstrates that (1) the Mexican States do not possess the requisite proprietary interest; and (2) consistent with this Court's prior orders, the Mexican States' general maritime claims are displaced by OPA.

## ARGUMENT

**I.     THE MEXICAN STATES DO NOT HAVE PROPRIETARY INTERESTS**

As explained more fully in BP's Memorandum and Opposition, the Mexican States do not have a proprietary interest in the lands, waters, natural resources, and wildlife allegedly injured by the *Deepwater Horizon* oil spill. This is true for the following reasons:

*First*, in the Fifth Circuit, a plaintiff must own the relevant property in order to have a proprietary interest. *See* BP Mem. at 5-6; BP Opp. at 2. Indeed, the Fifth Circuit has *never* found a non-owner to possess a proprietary interest. *Id.* Notably, despite filing multiple briefs on the narrow legal issue of whether the Mexican States have a proprietary interest, the Mexican States have pointed to no Fifth Circuit case in which a non-owner was deemed to actually have a proprietary interest in the allegedly damaged property.[1]

*Second*, the Mexican States do not own the lands, waters, and natural resources allegedly impacted by the oil spill. Rather, the Mexican Constitution and the General Law of National Assets ("GLNA") explicitly and unequivocally grant ownership over these resources to the Mexican federal government. *See* BP Mem. at 6-11; BP Opp. at 10-12. As explained in greater detail in prior briefing, Article 27 of the Mexican Constitution grants to the Mexican federal government (the "Nation") original domain over all Mexican lands and waters, and further provides that certain categories of lands and waters—such as the territorial seas, inland marine waters, and the natural resources of the continental shelf—are inalienable and thus *exclusively* owned by the federal government. Const. Art. 27, ¶¶ 1, 4, 5, 6 (Rec. Doc. 8167-8, at 2-3). Likewise, the GLNA establishes a category of "assets" that are "subject to the Federal Government's public domain regime." GLNA, Art. 6 (Rec. Doc. 8167-8, at 27). Such assets— which include the beaches, the federal maritime zone, and the Mexican Exclusive Economic

---

[1] The Mexican States cite only one Fifth Circuit case, *Domar Ocean Trans., Ltd. v. M/V Andrew Martin*, 754 F.2d 616 (5th Cir. 1985), for the proposition that actual title is not necessary to hold a proprietary interest. The Mexican States describe *Domar* as follows: "owner of damaged barge who had lease on undamaged tug could recover economic damages for the loss of the use of the tug." Mex. States Opp. at 23. However, this description is both misleading and inaccurate. In *Domar*, the plaintiff owned a barge and chartered a tug to tow the barge (the plaintiff also installed a $350,000 pilothouse on the chartered tug). *Id.* at 617-18. The Fifth Circuit found that the barge and the tug functioned as an integrated unit. *Id.* at 619. Thus, when the barge, which the plaintiff *owned*, was damaged, the court allowed the plaintiff to recover economic damages for the loss of use of the barge/tug unit, stating that the plaintiff "had a proprietary interest in the [barge] and the [tug] as a unit." *Id.* at 619. There was no dispute in *Domar* that the plaintiff owned the physical property that was damaged. Thus, it was the plaintiff's *ownership* of the barge and subsequent integration with the tug that created the proprietary interest.

2

Zone, among others—are "inalienable" and "exclusively under the jurisdiction of the Federal Powers." GLNA, Arts. 9, 13 (Rec. Doc. 8167-8, at 28-29). The Mexican States' lack of an ownership interest in the relevant lands, waters, and natural resources is dispositive and precludes a finding of a proprietary interest in this case.

*Third*, under Mexican law, with limited exceptions not relevant here, wildlife may not be owned by any sovereign. *See* BP Mem. at 15. Accordingly, the Mexican States do not own, and cannot have a proprietary interest in, Mexican wildlife allegedly injured by the oil spill.

*Fourth*, even if the Court applies some lesser standard whereby absolute ownership is not required, the Mexican States have not demonstrated that they possess an interest in the relevant resources and wildlife that is even *tantamount* to ownership. As explained above, the Mexican States do not own the relevant resources and wildlife. If not dispositive (and BP submits that it is), the Mexican States' lack of ownership at the very least creates a presumption that the Mexican States lack a proprietary interest. Indeed, it is worth reiterating that the Fifth Circuit has *never* found a proprietary interest to exist absent ownership of the damaged property. Thus, even under a tantamount-to-ownership standard, the Mexican States face a high burden to show that, even though they do not own the relevant property, they nevertheless possess an interest in the property that is so substantial as to be tantamount to ownership. *See* BP Opp. at 4-6.

The Mexican States fall far short of meeting this burden. In attempting to overcome their lack of ownership of the relevant natural resources and wildlife, the Mexican States point to two general categories of Mexican law that they allege demonstrate the existence of a proprietary interest: (1) Mexico's system of concurrent jurisdiction; and (2) administrative agreements between the Mexican federal government and various other parties.

3

As explained previously, that Mexico utilizes a system of concurrent jurisdiction is wholly insufficient to demonstrate that the Mexican States possess the level of virtual ownership necessary to constitute a proprietary interest under even a tantamount-to-ownership standard. *See* BP Mem. at 11-13, 15-16; BP Opp. at 12-14.  In this respect, the Mexican States repeatedly misinterpret the principle of concurrent jurisdiction embodied in the Mexican Constitution. Specifically, Article 73 (XXIX-G) does not, as the Mexican States assert, grant the Mexican States the right to enact environmental legislation; rather, that provision merely authorizes, but does not require, the Mexican *federal government* to grant the States jurisdiction over certain environmental matters.  *See* BP Mem. at 11-12; BP Opp. at 13-14.  Notably, the Mexican States have pointed to no instance in which the Mexican federal government has granted the States broad authority over federal lands, waters, natural resources, or wildlife.  To the contrary, as BP has demonstrated, the Mexican federal government retains primary (and often exclusive) jurisdiction over these resources and wildlife.  *See* BP Mem. at 11-13, 15-16; BP Opp. at 12-14.

Likewise, under Mexican law, administrative agreements cannot transfer ownership or an interest that is even tantamount to ownership.  *See* BP Mem. at 13-14; BP Opp. at 14-15.  Rather, such agreements grant the beneficiary, at most, a limited right to use, enjoy, and exploit property for a specific purpose.  *See, e.g.*, GLNA, Arts. 16, 70 (Rec. Doc. 8167-9, at 6).  Moreover, the vast majority of administrative agreements cited by the Mexican States are in actuality agreements between the federal government and either (a) private parties or (b) municipalities.[2]

---

[2] For example, the Mexican States argue that they "have the authority, right, and power to excavate and physically alter the beaches and coastal waters in their exploitation of same," citing only a declaration submitted by a legal representative of Grupo Turístico Tamaulipas ("GTT").  *See* Mex. States Opp. at 26.  The Mexican States' citation to the GTT declaration as support for their alleged proprietary interest is curious given that the GTT declaration explicitly states that: (1) "GTT's shares are all privately owned by individuals and other investors, and there is no ownership of GTT's shares by any governmental entity or body"; (2) the properties discussed in the declaration are "acquired by GTT"; and (3) "GTT owns these parcels of land and holds legal title to same."  (Rec. Doc. 8178-11, ¶¶ 1, 10, 12.)  Although BP disputes the veracity of certain statements made in the GTT declaration, it is clear that

Footnote continued on next page

In fact, only *two* of these agreements are between the federal government and a Mexican State. *See* Decl. of L. Burguete-Stanek, at 12-17 (Rec. Doc. 8167-7). As a general matter, administrative agreements cannot create a proprietary interest, but it is also certainly the case that the Mexican States cannot obtain any sort of proprietary interest from an administrative agreement to which they are not even a party.

Accordingly, for the reasons described above, the Mexican States do not, and indeed cannot, have a proprietary interest in the lands, waters, natural resources, and wildlife allegedly injured by the *Deepwater Horizon* oil spill, and their claims should be dismissed.

## II. THE MEXICAN STATES' ATTEMPTS TO AVOID THE CONCLUSION THAT THEY DO NOT HAVE PROPRIETARY INTERESTS ARE UNAVAILING

As mentioned above, BP has already addressed in its Memorandum (Rec. Doc. 8176-1) and Opposition (Rec. Doc. 8350) many of the issues raised in the Mexican States' Opposition. Nevertheless, certain issues raised therein are addressed briefly below.

*First*, the Mexican States again argue that *Robins Dry Dock* does not apply because of BP's admission of criminal conduct. Mex. States Opp. at 5-7. As previously explained, this argument is entirely without merit because (1) the Court has already rejected an essentially identical argument; (2) the Mexican States allege only negligence and gross negligence, and do not allege any facts that would lead to the inference that BP intended either the oil spill or the alleged harm to the Mexican States; and (3) BP's criminal plea sounds largely in negligence, and the only intentional conduct raised therein is wholly unrelated to the damages alleged by the Mexican States. *See* BP Opp. at 17-19.

---

Footnote continued from previous page
GTT's purported ownership and management of certain lands is in no way indicative of a proprietary interest held by the Mexican States and thus is not a material fact for purposes of resolving BP's Motion for Summary Judgment.

*Second*, the Mexican States argue that the Defendants "wrongly apply and misinterpret the concept of the 'Nation.'" Mex. States Opp. at 13. As previously explained, the term "Nation" in the Mexican Constitution refers to the Mexican federal government. *See* BP Mem. at 7-8; BP Opp. at 10-11. In arguing to the contrary, the Mexican States are confusing the general concept of a nation, which is made up of several constituent parts (including states and municipalities), and the specific term "Nation" as that term is used in the Mexican Constitution. Although the Mexican States are correct that opinions of the Mexican Supreme Court are not binding until repeated in five subsequent opinions, the case cited by BP is the *only* case directly on point (perhaps because it is clear that the term "Nation" in the Mexican Constitution must refer to the federal government), and thus it is instructive on this issue. Moreover, the cases cited by the Mexican States, *see* Mex. States Opp. at 13-14, which stand for the unremarkable proposition that there are multiple "legal orders" (*i.e.*, spheres of jurisdiction) in the Mexican legal system, are entirely irrelevant to understanding the meaning of the term "Nation" as that term is used in the Mexican Constitution.

*Third*, the Mexican States incorrectly assert that "Defendants reach the patently false conclusion that the Mexican Federal Government is the owner *of all the land*, seas and territory *at all times* and forever." Mex. States Opp. at 12 (emphasis in original). BP has never asserted that the Mexican federal government owns all Mexican lands in perpetuity. Rather, BP has clearly articulated that the Mexican federal government is the original owner of all Mexican lands and waters, and is authorized to transmit title to such lands and waters to private persons, thereby constituting private property. *See, e.g.*, BP Mem. at 7. However, the Mexican Constitution explicitly states that *certain categories* of lands and waters, as described herein, are inalienable and exclusively owned by the Mexican federal government. *Id.* at 8-9. The lands,

6

waters, and natural resources allegedly impacted by the oil spill fall within these categories, and thus are exclusively owned by the Mexican federal government.

*Fourth*, the Mexican States assert that "BP's own expert agrees, 'Mexican Law allows for a system under which the States [Plaintiffs] may be permitted to *manage, control*, enjoy, *exploit*, or use the beaches, waters, and other natural resources . . . .'" Mex. States Opp. at 8 (quoting Decl. of L. Burguete-Stanek, at 6) (emphasis in Mex. States Br.).  Seizing on this quote and ignoring, among other things, the "may be permitted" part of the sentence, the Mexican States argue that "BP's expert opines [that] the Mexican States are 'in charge of' [*i.e.*, managing] the geographical areas" and therefore the Mexican States have proprietary interests. *Id.* at 9.

However, the sentence quoted by the Mexican States is (1) taken completely out of context; and (2) subsequently extended beyond all recognition (*e.g.*, one must take a significant logical leap to conclude that, because the States may be *permitted* by the federal government to manage certain areas, the States are therefore "in charge of" those areas).  Contrary to the Mexican States' flawed reading of Mr. Burguete-Stanek's declaration, it is clear that the Mexican States possess only a right to use, enjoy, and exploit certain federal lands and waters, and even then only when the federal government explicitly grants the States those rights. *See, e.g.*, GLNA, Arts. 16, 70.  Mr. Burguete-Stanek's declaration as a whole (including the three paragraphs preceding the quoted sentence) clearly demonstrates that the Mexican States do *not* have a general right to manage and control the natural resources potentially at issue in this case. In fact, the Regulations for the Use and Enjoyment of Territorial Seas, Waterways, Beaches, Federal Maritime Terrestrial Zones, and Land Reclaimed from the Sea, which Mr. Burguete-Stanek was describing in the quoted sentence, explicitly state: (a) "The concessions, destinations or permits do not create proprietary rights in favor of their holders, they only grant the right to

7

use, enjoy or exploit" the subject property; and (b) "The Ministry [of Environment and Natural Resources] will supervise . . . the use, enjoyment or exploitation of the assets referred to by these Regulations . . . ." *Id.* at Arts. 35, 36 (Rec. Doc. 8167-6, at 19).  Thus, the Mexican States' attempt to cherry-pick a single sentence from Mr. Burguete-Stanek's declaration is unavailing.

*Finally*, the Mexican States also make the broad and unsupported assertion that they have the right to "exploit" natural resources.  Mex. States Opp. at 9, 25, 26.  Although an administrative agreement can grant the beneficiary the right to "exploit" specified natural resources, one cannot turn to a dictionary, as the Mexican States do, to interpret the meaning of the term "exploit."  Rather, pursuant to Article 16 of the GLNA, the scope of the right to exploit federal lands, waters, and natural resources under an administrative agreement is specifically defined by the corresponding title of the administrative agreement.  *See* GLNA, Art. 16 (Rec. Doc. 8167-9, at 6) ("Concessions, permits and authorizations . . . simply grant . . . the right to make use, utilization or exploitation, in accordance with . . . the corresponding title of concession, permit or authorization.").  Thus, although the federal government can permit the Mexican States to exploit certain federal resources for a specified purpose, the Mexican States *do not* have a generalized right to exploit such resources.  And importantly, although the federal government has the authority to grant the right to exploit such resources, the Mexican States have pointed to no concession, decree, or other administrative agreement granting one of the Mexican States the right to exploit lands, waters, and natural resources owned by the Mexican federal government.  *See, e.g.*, Decl. of L. Burguete-Stanek, at 12-17 (Rec. Doc. 8167-7).

**III.    THE MEXICAN STATES' GENERAL MARITIME CLAIMS AGAINST BP—AN OPA RESPONSIBLE PARTY—ARE DISPLACED BY OPA**

As explained in BP's Memorandum, the Mexican States' general maritime claims for negligence and gross negligence against BP are displaced by OPA.  *See* BP Mem. at 16-18.  In

8

response, the Mexican States argue that (1) if OPA does not apply to remedy the Mexican States' alleged injuries, then OPA cannot "apply" to preclude their claims under general maritime law; and (2) OPA only displaces general maritime law with respect to the procedural requirement of presentment, and the Mexican States complied with the presentment requirement. Mex. States Opp. at 26-27. The Mexican States are incorrect on both counts.

First, in rejecting the Mexican States' OPA claims, this Court did not hold that OPA was inapplicable, as the Mexican States suggest. By its plain terms, OPA applies to the claims of "foreign claimants" such as the Mexican States.[3] *See* 33 U.S.C. § 2707. Thus, this Court dismissed the Mexican States' OPA claims not because OPA was inapplicable, but because the Mexican States had failed to comply with one of OPA's procedural requirements—specifically, the requirement that the States demonstrate that recovery would be authorized in their country. (Rec. Doc. 4585, at 11.) Furthermore, it is not unfair, as the Mexican States suggest, that the Mexican States be left with no remedy in U.S. courts. To the contrary, Congress clearly intended through its enactment of section 2707(a)(1) of OPA that foreign claimants not be afforded a remedy in U.S. courts if a U.S. claimant would not be afforded a similar remedy in the courts of the foreign claimant's country. Because the Mexican States have not demonstrated that Mexico provides a comparable remedy for U.S. claimants, the Mexican States are not entitled to recover for alleged harm caused by an oil spill in U.S. courts.

Second, the Mexican States' assertion that they complied with OPA's presentment requirement is both incorrect and inapposite. As a threshold matter, the Mexican States did not

---

[3] The Mexican States seem to imply that they do not meet the definition of "foreign claimant." This argument requires little response, as the Mexican States, which are political subdivisions of the United Mexican States, are indisputably "foreign claimants" within the meaning of OPA. *See* 33 U.S.C. § 2707(c)(3) (defining "foreign claimant" to include "(1) a person residing in a foreign country; (2) the government of a foreign country; and (3) an agency or political subdivision of a foreign country").

9

properly present their claims to BP. Rather, as evident from the face of the Mexican States' own exhibit, the Mexican States presented their claims to BP only *after* initiating litigation against BP. (Rec. Doc. 8367-10.) OPA requires that claims for damages be presented to the Responsible Party prior to the initiation of litigation. *See* 33 U.S.C. § 2713(a).[4] In addition, as discussed above, the Mexican States failed to comply with the *additional* OPA procedural requirement that they demonstrate that "recovery is authorized by a treaty or executive agreement between the United States and the claimant's country, or the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." *Id.* § 2707(a)(1). As this Court held previously, "maritime causes of action against a Responsible Party are displaced by OPA," such that all claims against a Responsible Party for damages covered by OPA must comply with OPA's procedural requirements. (Rec. Doc. 3830, at 26.) Because the Mexican States have failed to comply with OPA's procedural requirements, their general maritime claims are barred and should be dismissed.

## CONCLUSION

For the reasons stated herein and in BP's Memorandum (Rec. Doc. 8176-1) and Opposition (Rec. Doc. 8350), BP respectfully requests that the Court grant its motion for summary judgment against the Mexican States of Veracruz, Tamaulipas, and Quintana Roo, and dismiss the Mexican States' general maritime claims in their entirety.

---

[4] In addition, BP does not concede that the Mexican States' attempt at presentment was otherwise proper.

Dated: January 31, 2013                                  Respectfully submitted,


                                                         /s/ Don K. Haycraft
Richard C. Godfrey, P.C.                                 Don K. Haycraft (Bar #14361)
J. Andrew Langan, P.C.                                   R. Keith Jarrett (Bar #16984)
Catherine Fitzpatrick                                    LISKOW & LEWIS
Elizabeth A. Larsen                                      701 Poydras Street, Suite 5000
KIRKLAND & ELLIS LLP                                     New Orleans, LA  70139-5099
300 North LaSalle                                        Telephone:  504-581-7979
Chicago, IL  60654                                       Facsimile:  504-556-4108
Telephone:  312-862-2000
Facsimile:  312-862-2200                                 Jeffrey Bossert Clark
                                                         KIRKLAND & ELLIS LLP
Allison Rumsey                                           655 Fifteenth Street, N.W.
S. Zachary Fayne                                         Washington, D.C. 20005
ARNOLD & PORTER LLP                                      Telephone:  202-879-5000
555 Twelfth Street, NW                                   Facsimile:  202-879-5200
Washington, DC  20004-1206
E-Mail:  Allison.Rumsey@aporter.com                      Robert C. "Mike" Brock
Telephone:  202-942-5000                                 COVINGTON & BURLING LLP
Facsimile:  202-942-5999                                 1201 Pennsylvania Avenue, NW
                                                         Washington, DC 20004-2401
                                                         Telephone:  202-662-5985
                                                         Facsimile:  202-662-6291

*Attorneys for BP Exploration & Production Inc.*

11

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 31st day of January, 2013.

Dated: January 31, 2013                                         Respectfully submitted,

                                                                */s/ Don K. Haycraft*
                                                                Don K. Haycraft