IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179  SECTION J |
| This document relates to: | * * | Judge Barbier |
| *Nos. 10-4239; 10-4240; 10-4241* | * * | Magistrate Judge Shushan |

**REPLY BRIEF OF DEFENDANT CAMERON INTERNATIONAL CORPORATION IN SUPPORT OF ITS MOTION FOR COMPLETE SUMMARY JUDGMENT IN THE MEXICAN STATES' CASES**

Cameron International Corporation ("Cameron") respectfully submits this reply brief to address the Mexican States' Response and Opposition to Defendant's Cameron International Corporation Motion for Summary Judgment, Doc. 8366 ("Mexican States' Opposition").

## INTRODUCTION

The Mexican States' Opposition makes no meaningful attempt to refute the arguments advanced by Cameron in support of its summary judgment motion, Doc. 8169-1.  Instead, the Mexican States' Opposition tracks almost word for word the arguments made in their "separate" oppositions to the motion of BP and the joint motion of Transocean and Halliburton.  *Compare* Doc. 8366, pp. 4-26, *with* Doc. 8367, pp. 4-26, and Doc. 8368, pp. 4-26.

Before demonstrating the lack of merit in the few new arguments advanced in the Mexican States' Opposition, Cameron will briefly review (a) Cameron's arguments that the Mexican States do not refute; (b) the Opposition arguments that do not apply to Cameron; and (c) the Opposition arguments that Cameron has already addressed and refuted.

1

## THE CAMERON ARGUMENTS NOT ADDRESSED

The Mexican States' Opposition does not dispute the following points made in Cameron's opening summary judgment brief:

1.  This Court may reach its own conclusions about the content of Mexican law based on primary sources of Mexican law translated by the parties.  Doc. 8169-1 at 2-3; *see also* Doc. 8363 at 4-5.

2.  Under the Mexican Constitution (according to the official translation of the Mexican Supreme Court, Doc. 8186-2), "full" and "inalienable" "ownership" of Gulf waters and coastal property is "vested" in the "one and indivisible" Mexican "Nation."  Doc. 8169-1 at 3-4, 6.

3.  Under the Mexican General Law of National Assets, the Mexican "territorial sea," "inland marine waters," the "seabed and subsoil of the territorial sea and inland marine waters," "beaches," and "other assets of common use" are all "exclusively" national assets that are "inalienable" and cannot be acquired by limitations or adverse possession.  Public entities like the Mexican States may "only acquire" rights with respect to any such national assets subject to conditions imposed by the federal government and concessions from the federal government "do not create proprietary rights ['*derechos reales*']."  *See* Doc. 8169-1 at 4-5; Doc. 8363 at 5-7.

4.  This last statutory principle is repeatedly embraced in one of the reports on Mexican law submitted by the Mexican States themselves:

> "***administrative agreements***" with public authorities like the Mexican States "*granting the benefit upon federal assets only transfer the right to use them but do not transfer the property on the same or create any other real right son [sic] such assets*."

Doc. 8169-1 at 8 & n.3, quoting Doc. 8178-5.

### THE ARGUMENTS HAVING NO BEARING ON CAMERON

The Mexican States' Opposition makes arguments that simply do not apply to the State's claims against Cameron. At pages 5-7, for example, the Opposition invokes the criminal pleas of BP and Transocean. The other defendants' plea agreements clearly have no bearing on the Mexican States' remaining negligence claims against Cameron. *See* Doc. 8363 at 15; *see* Doc. 7526 at 5-6 (rejecting analogous attempt of Sellno plaintiffs to evade *Robins Dry Dock*).

The Mexican States' Opposition, at pages 8-11 and 13, argues that isolated statements in other Defendants' reports on Mexican law concerning the ability of the States to participate in the Mexican system for governing Mexican national property somehow suggest that the Mexican States have proprietary interests. However, this is no answer to Cameron's arguments on the content of Mexican law, which are based directly on unambiguous language in primary sources of Mexican law. Docs. 8169-1 at 2-3; 8363 at 4-5.

Moreover, fairly read in their entirety, the reports on Mexican law submitted by the other Defendants, just like Cameron's opening summary judgment brief, explain in cogent detail why the Mexican States do **not** have any proprietary interests as a consequence of pertinent Mexican law. Doc. 8165-5, 10, and 11; Doc. 8169-1 at 3-8.

### THE ARGUMENTS ALREADY CONCLUSIVELY REFUTED BY CAMERON

Cameron's prior submissions already refute much of the Mexican States' Opposition.

- The Opposition at page 1 purports to incorporate by reference the Local Rule 56.1 Statement and summary judgment exhibits submitted by the Mexican States. However, the Local Rule 56.2 Statement submitted jointly by Defendants, Doc. 8361, thoroughly refutes the legal arguments in the Rule 56.1 statement, properly contests the admissibility of most of the submitted evidence, and demonstrates that there is no genuine issue of material fact.

3

- Contrary to the argument of the Mexican States' Opposition at 7-8, courts look to local law to determine the character of the pertinent interest in property.  Doc. 8363 at 3-4.

- Contrary to the argument of the Mexican States' Opposition at pages 12-13, conveyance by the Nation of beachfront property to "private persons" does not create a proprietary interest in the Mexican States.  Doc. 8363 at 8.

- Contrary to the argument of the Mexican States' Opposition at pages 14-15, provisions of the Constitution dealing with the form of the Mexican Government do not alter the nature of the "full" and "inalienable" "ownership" of the singular and "indivisible" that is vested in the Nation under Articles 2 and 27 of the Constitution.  Doc. 8363 at 7-8; Doc. 8179-1 at 3-4.

- Contrary to the argument of the Mexican States' Opposition at pages 15-17, the Mexican States' participation in governmental functions involving the environment does not constitute a proprietary interest.  Doc. 8363 at 8-10; Doc. 8169-1 at 7.

- Contrary to the argument of the Mexican States' Opposition at page 18, Article 133 of the Mexican Constitution precludes state constitutions from overriding the provisions of the Constitution vesting "full" and "inalienable" property "ownership" in the Mexican "Nation." Doc. 8363 at 11.

- Contrary to the argument of the Mexican States' Opposition at page 20, Cameron's position on *Robins Dry Dock* is not based on the technicalities of "title" to property.  Doc. 8363 at 11; Doc. 8169-1 at 9-10.

- Contrary to the argument of the Mexican States' Opposition at pages 20-26, the *Robins Dry Dock* rule is completely grounded in substantive property "ownership."  Doc. 8363 at 12-15; *see* Doc. 8169-1 at 9-10.

- Contrary to the implications of the argument in the Mexican States' Opposition at pages 20-26, the Fifth Circuit has never allowed a plaintiff to evade the ownership requirement of *Robins Dry Dock* merely by pointing to circumscribed interests in allegedly damaged property when local law ascribes ownership of that property to another and precludes the owner from conveying an ownership interest to the plaintiff. Doc. 8363 at 13-14.

## THE NEW ARGUMENTS ALL FAIL

The new arguments appearing in the Mexican States' Opposition fare no better.

The Mexican States' Opposition, at page 1, claims that there are genuine issues of material fact. To the contrary, the Fifth Circuit has held that "differences of opinion among experts on the content, applicability, or interpretation of foreign law do not create a genuine issue as to any material fact under Rule 56." *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 713 (5th Cir. 1999) (citation omitted). Accordingly, "summary judgment is appropriate to determine the content of foreign law." *Id.* (citation omitted).

Moreover, the Mexican States' Opposition studiously ignores the undisputed and unambiguous provisions of the Mexican General Law of National Assets that (a) identify Gulf and coastal assets that are subject to "full" and "inalienable" National ownership under Article 27 of the Constitution, and (b) by explicit statutory terms preclude State ownership in any of those National assets – namely Mexican Gulf and coastal property. Consistent with that undeniable Mexican law, the Mexican States have produced numerous agreements concerning nationally owned property, but the Mexican States' Opposition cannot point to a single document that evidences an **ownership** interest in any of that property held by one of the States.

To be sure, plaintiffs who have been conveyed real estate interests by lease, like a bareboat charter who becomes owner *pro hac vice* of a vessel, hold substantive ownership rights.

A real property lessee is conveyed virtually *all* the meaningful proprietary rights of the lessor, just as a bareboat charterer obtains virtually *all* ownership rights in the vessel.  Each has complete possession and exclusive control over the property, and may exclude all other persons from using the property without permission.  It is therefore no surprise that the law would treat a lessee or bareboat charterer as the "owner" of the property.

But these *ownership* interests have nothing to do with the interests of the Mexican States.  The Mexican States rely instead on their limited rights to participate in governmental functions with respect to national property.  Based entirely on those governmental functions, the Mexican States' Opposition, at page 25, argues that the Mexican States' rights "go far beyond those of a demise charterer of a lessor of property."  However, that argument goes nowhere under *Robins Dry Dock*.  In a certain sense, rights of governments to participate in governmental functions do "go beyond" the rights of private persons who are real estate lessees or bareboat charterers.  But that is precisely because *rights to participate in governance are <u>not</u> ownership or proprietary rights*.  Private persons do not have government rights.  But by the same token, the Mexican States do *not* have the ownership rights of a dock lessee or a bareboat charterer.

The Mexican States have even *less* of a *proprietary right* in allegedly injured Mexican Gulf and coastal property than the time charterers in *Robins Dry Dock* had in the broken propeller. Doc. 8363 at 14-15, 8169-1 at 9-10.  During much of the time covered by the charter, time charterers have exclusive control over the use of a vessel for their own cargo delivery purposes.  In stark contrast, under Mexican law and the undisputed terms of their intergovernmental agreements, the Mexican States must make available for "common use" the Gulf and coastal property that is "fully" owned by the Mexican Nation.

**OBJECTIONS TO SUBMITTED EVIDENCE**

Pursuant to FED. R. CIV. P. 56(c)(2), Cameron objects as follows to the documents submitted by the Mexican States, Docs. 8366-2 to 13.

Documents 8366-2, 3, and 12 are documents entirely in Spanish. By agreement, the parties were obligated to provide translations of any such document. In addition, the documents appear to be reports of legal decisions, not documents admissible in evidence.

Document 8366-4 is an affidavit comprised of opinions about Mexican law. It contains no statements that are admissible in evidence.

Documents 8366-5 and 8 are documents entirely in Spanish. By agreement, the parties were obligated to provide translations of any such document. In addition, the documents appear to be statutes, not documents admissible in evidence.

Documents 8366-6 and 7 are self-serving affidavits of State officials. To the extent the affidavits describe activities of a Mexican State, they are immaterial. To the extent they purport to state opinions of law about "proprietary interests," they are inadmissible.

Document 8366-9 is an affidavit about subsea plumes and oil supposedly collected somewhere in or near Mexico. The affidavit does not establish that the affiant oceanographer has any personal knowledge where others spotted the subsea plumes or collected any oil. Nor is the affiant the chemist who supposedly conducted the chemical analysis in an attempt to fingerprint the collected oil. The affiant is therefore not competent to make any of the statements concerning collection, location or chemical analysis, which must therefore be inadmissible hearsay. Even then, the affiant only claims that "subsea plumes of oil reached shore," an illogical statement, presumably meaning that "subsea" plumes were spotted in waters near the coastline; and that actual oil was collected "near" a Tamaulipas beach and "in La Pesca." The

7

summary judgment evidence proves that La Pesca is a privately held resort property. Subsea plumes in Gulf waters or oil collected "near" a beach or "in" a private development, even if shown by admissible evidence, are not probative of injury to property owned by Tamaulipas or any other Mexican State. The conclusory opinion that Macondo oil might be in Mexican Gulf waters undeniably owned by the Mexican Nation is no evidence of injury to property owned by any Mexican State. Accordingly, the substantive statements in the affidavit are inadmissible as incompetent, hearsay, irrelevant, and/or invalid under FED. R. EVID. 702.

Document 8366-10 is a newspaper article in Spanish. Since it is not translated, it is improper summary judgment evidence and is inadmissible hearsay in any event.

Document 8366-11 is a Mexican statute, only portions of which are translated. Because the statute pertains to the government functions of the States, as limited by the statute, the statute is not material to the issue of "proprietary interests." It is a statute, not admissible evidence.

Document 6366-13 is a plea agreement to which Cameron is not a party. It is not relevant to the claims against Cameron. As against Cameron, any factual statements contained in the agreement would be inadmissible hearsay in any event.

## CONCLUSION

Disputes about foreign law do not create fact issues. Summary judgment is appropriate to resolve issues under foreign law. Under the undisputed and unambiguous terms of Mexican law that are not contradicted by any material fact in the summary judgment record, the Mexican States hold no proprietary interest in allegedly damaged Mexican property that could satisfy *Robins Dry Dock.*

1116626v1

Respectfully submitted,

/s/ Phillip A. Wittmann

| | |
|---|---|
| David J. Beck, T.A. | Phillip A. Wittmann, 13625 |
|   dbeck@beckredden.com |   pwittmann@stonepigman.com |
| Joe W. Redden, Jr. | Carmelite M. Bertaut, 3054 |
|   jredden@beckredden.com |   cbertaut@stonepigman.com |
| David W. Jones | Jared Davidson, 32419 |
|   djones@beckredden.com |   jdavidson@stonepigman.com |
| Geoffrey Gannaway | STONE PIGMAN WALTHER |
|   ggannaway@beckredden.com |   WITTMANN L.L.C. |
| BECK REDDEN LLP | 456 Carondelet Street |
| One Houston Center | New Orleans, Louisiana  70130 |
| 1221 McKinney St., Suite 4500 | Phone: (504) 581-3200 |
| Houston, TX  77010 | Fax: (504) 581-3361 |
| Phone:  (713) 951-3700 | |
| Fax:  (713) 951-3720 | |

*Attorneys for Cameron International Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply Brief of Defendant Cameron International Corporation in Support of its Motion for Complete Summary Judgment in the Mexican States' Cases has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 31st day of January, 2013.

/s/ Phillip A. Wittmann

1116626v1