IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | § § § § § | MDL NO. 2179 SECTION J JUDGE BARBIER |
| THIS DOCUMENT RELATES TO: CASE NOS. 10-4239, 10-4240, 10-4241, BUNDLE C, AND 10-2771 | § § § | MAGISTRATE JUDGE SHUSHAN |

**TRANSOCEAN'S REPLY BRIEF SUPPORTING ITS
MOTION FOR COMPLETE SUMMARY JUDGMENT
REGARDING ALL REMAINING MEXICAN STATES' CLAIMS**

Transocean Offshore Deepwater Drilling Inc., Transocean Holding LLC, Transocean Deepwater Inc., and Triton Asset Leasing GmbH (collectively "Transocean"), respectfully submit this reply to the Mexican States' Response and Opposition (Rec. Doc. 8368) to Transocean's motion for summary judgment.[1]

## ARGUMENT

I. <u>The Mexican States Do Not Have Proprietary Interests In The Natural Resource Assets At Issue</u>.

The Mexican States have failed to establish that they have a proprietary interest in the allegedly injured waters, coastal areas, and wildlife at issue as required by *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927). TO HESI Mem. at 5-10 (Rec. Doc. 8179-1); TO HESI Opp. at 3-6; 15-20 (Rec. Doc 8370). In the Fifth Circuit, the proprietary interest rule of *Robins Dry Dock* bars "recovery for economic loss if that loss resulted from physical damage to the

---

[1] Because the Mexican States' primary opposition arguments were addressed by Transocean in previous pleadings filed in this summary judgment proceeding (Rec. Docs. 8179-1; 8361; 8370), Transocean incorporates them here. Additionally, due to the voluminous material inappropriately submitted in Spanish by the Mexican States without translation (*see* Mex. Sts. Opp. Exs. N, O, Q, T, W, X, Y, Z), Transocean also incorporates Defendants' Joint Motion to Strike these materials (Rec. Doc. 8424), and objects to them on the ground that such are inadmissible hearsay (Ex. W) or inadmissible legal opinions or statutes (remainder).

1

property of another." *Catalyst Old River Hydroelectric Ltd. P'ship. v. Ingram* ("*Catalyst*"), 639 F.3d 207, 210 (5th Cir. 2011). Contrary to the Mexican States' assertions, Mexican law is determinative of the Mexican States' proprietary interests, and such law confirms that the Mexican States do not own the assets at issue. *See* TO HESI Mem. at 5-16; TO HESI Opp. at 5-20. Because they improperly complain of "physical damage to the property of another," the Mexican States' claims should be dismissed. *Catalyst*, 639 F.3d at 210.

Nevertheless, the Mexican States continue to assert that there is no requirement of ownership to establish proprietary interest under *Robins Dry Dock*, and that proprietary interest can be established by meeting a lower threshold of "'actual possession or control, responsibility for repair, and responsibility for maintenance.'" Mex. Sts. Opp. at 21 (Rec. Doc. 8368) (cit. omitted). They seek recovery for all allegedly damaged natural resource assets within their geographic boundaries, regardless of the ownership thereof.[2] Mex. Sts. Opp. at 18. The Fifth Circuit has not applied factors other than ownership to situations similar to the instant action where Mexican law confirms ownership in another party. *See* TO HESI Opp. at 3-5. Ownership is the standard applicable here.

Even if the Court applied a standard less than ownership to determine the Mexican States' proprietary interests, the Mexican States cannot meet either standard because Mexican law establishes that (1) the Mexican States do not own the relevant waters, coastal areas or wildlife, and (2) the Mexican federal government has primary control of or responsibility for national natural resource assets. Therefore, the Mexican States lack proprietary interest in the

---

[2] In support of their damage allegations, the Mexican States recently submitted a declaration by an oceanographer that is disputed and objectionable on the grounds that it is rife with inadmissible hearsay (FED. R. EVID. 802), lacks foundation (FED. R. EVID. 602), references documents not in evidence (or even submitted in these proceedings), and is irrelevant to the issue of the Mexican States' proprietary interests. Mex. Sts. Opp. at Ex. U. Accordingly, such declaration should be disregarded.

Mexican natural resource assets at issue as a matter of U.S. and Mexican law, and Transocean's motion for summary judgment should be granted.

In their effort to avoid dismissal of their claims, the Mexican States disregard Mexican federal law (1) identifying property that is owned by the Mexican federal government, and (2) establishing that the Mexican States are dependent on, and subordinate to, the Mexican federal government on environmental administrative matters. *See* TO HESI Mem. at 5-13. Instead, they continue to rely on misguided interpretations of Mexican federal agreements and Mexican federal and state law to support their claims. Mex. Sts. Opp. at 11-20. As noted in Transocean's opposition to the Mexican States' motion for summary judgment and supporting brief, such efforts are in vain. TO HESI Opp. at 6-20.

  A. <u>The Mexican States' cited federal agreements concerning natural resource assets do not convey proprietary interest therein to the Mexican States.</u>

None of the federal agreements produced or referenced by the Mexican States, including agreements regarding tax coordination, concessions, destinations, and concurrency, support their claims. *See* TO HESI Mem. at 6-9; 13-16; TO HESI Opp. at 7-8; 10-12. Dr. José Juan González Márquez, a respected expert on Mexican environmental law,[3] reviewed each of the agreements produced by the Mexican States in discovery, and concluded that "none of the records regarding property produced by the Mexican States transfer an ownership interest to the Mexican States under Mexican law." Report of José Juan González Márquez, Ph.D. attached at

---

[3] Dr. Gonzalez holds a Ph.D. in Environmental Law from Universidad de Alicante (Spain). He is the author of a recent treatise on Mexican environmental law and has extensive legislative experience, including serving as an advisor to the Environmental Commission of the Mexican Senate for the Analysis and Approval of the Wildlife Act (the final version of which is cited by all parties in this summary judgment proceeding). *See* Ex. 1 (González Curriculum Vitae at pp. 11-15).

Exhibit 1 hereto for convenience ("González Rpt.") at ¶ 30. *See also id.* at pp. 17-36 (listing the more than 130 agreements reviewed).

Nevertheless, the Mexican States surprisingly attempt to support their position by (1) referencing agreements concerning conveyances of land to private citizens and corporations, and (2) erroneously asserting that "a pivotal underpinning" of Transocean's position is that "the Federal Government is the owner of all the land, seas and territory at all times and forever." Mex. Sts. Opp. 12.[4]

First, agreements concerning conveyances to private persons are immaterial to the Mexican States' claims. Second, contrary to their assertion, Transocean has consistently distinguished between federal property that may not be conveyed, and lands reclaimed from the sea that may be disincorporated from the public domain for sale to private citizens. TO HESI Mem. at 6-9; 14; TO HESI Opp. at 7-8; 10-12. Transocean has also consistently noted that the Mexican States have failed to proffer a single document evincing their ownership of any property allegedly injured by Macondo hydrocarbons. *Id.*

For example, the Gabuardi report submitted by the Mexican States purports to describe nineteen administrative agreements (not in evidence) on disincorporating lands reclaimed from the sea for the "benefit of *private individuals and corporations*," and authorizing sale thereof. Gabuardi Rpt. at 2-3; 43-80 (emphasis added). Per Gabuardi's descriptions, the Mexican States are not party to any of these agreements. Gabuardi Rpt. at 2-3; 43-80. Additionally, no private

---

[4] The Mexican States also attempt to bolster their position by cherry picking statements from Transocean's and other defendants' reports on Mexican law concerning the ability of the States to participate in the Mexican system for governing Mexican national property to somehow suggest that the Mexican States have proprietary interests. Mex. Sts. Opp. at 8-11 and 13. This attempt is futile in the face of the unambiguous language in the Mexican Constitution and federal law promulgated thereunder. Additionally, read in their entirety, the Defendants' reports on Mexican law and supporting briefs explain in detail why the Mexican States do not have any proprietary interests as a matter of Mexican law. *See, e.g.,* González Rpt,; TO HESI Mem.; TO HESI Opp.

4

individuals or corporations are parties to the instant actions, and the Mexican States do not have standing to represent them here. TO HESI Mem. at 15-16. These agreements regarding conveyances of property to private persons do not create a proprietary interest in the Mexican States.

Similarly, the additional agreements upon which the Mexican States rely, as referenced in the Gabuardi report and the declaration of Gabriel Maldonado Pumarejo (Mex. Sts. Opp. at Ex. H),[5] also do not create a proprietary interest in the Mexican States. For example, the "La Pesca" property referenced in the Maldonado declaration concerns property acquired by Grupo Turísto Tamaulipas, S.A. de C.V. ("GTT"), not the Mexican States. Mex. Sts. Opp. at Ex. H, ¶ 10. Additionally, the remaining agreements described in the Gabuardi report, including administrative agreements and federal coordination agreements (Gabuardi Rpt. 92-226), do not reference conveyance of ownership to the Mexican States, and refute the Mexican States' allegation that they have control of or responsibility over such property superior to that of the Mexican federal government.

Regarding the administrative agreements permitting use of national property (Gabuardi Rpt. at 92-204), the agreements provide that (1) such use is explicitly granted by the *federal* government pursuant to *federal* statutes; (2) the property remains *federal* land that is not transferable; and (3) the property remains under the jurisdiction of the *federal* government (*see e.g.*, Gabuardi Rpt. at 93, nn. 360-365 (discussion of agreement with State of Tamaulipas)). Likewise, the coordination agreements (Gabuardi Rpt. at 206-226) are agreements with the

---

[5] The declaration of Mr. Maldonado, is disputed and objectionable as containing inadmissible hearsay (FED. R. EVID. 802), lacking foundation (FED. R. EVID. 602), referencing documents not in evidence (or even submitted in these proceedings), and is irrelevant to the issue of the Mexican States' proprietary interests. Accordingly, such declaration should be disregarded.

5

*federal* government concerning *federal* property regarding matters over which the Mexican States would be powerless to act absent such agreements (*see e.g.*, Gabuardi Rpt. at 222-23 (discussion of agreement with State of Quintana Roo regarding federal funds for prevention of natural disasters)).

In light of the foregoing, the Mexican States have failed to point to any agreement establishing that the Mexican States own the property at issue. TO HESI Mem. at 4-5; TO HESI Opp. at 5-6. As noted by Transocean throughout these summary judgment proceedings, the Mexican States improperly complain of "physical damage to the property of another" as barred by the *Robins Dry Dock* rule.[6] *Id.*

> B. The Mexican States' cited provisions from Mexican law do not convey proprietary interest to the Mexican States.

Like the Mexican States' arguments regarding the various federal agreements, their arguments concerning the Mexican federal and state law, are also unavailing. For example, contrary to the Mexican States' assertions (Mex. Sts. Opp. at 14-15), provisions of the Mexican Constitution addressing the form of the Mexican Government do not alter the "inalienable" "ownership" of property outlined in Article 27 of the Mexican Constitution and General Law of National Assets. TO HESI Mem. at 5-8. Additionally, although the Mexican States desire otherwise (Mex. Sts. Opp. at 18), Article 133 of the Mexican Constitution precludes state constitutions from overriding the provisions of the federal constitution. TO HESI Mem. at 12-14.

---

[6] Although the Mexican States contend that they "own" their islands, Article 48 of the Mexican Constitution does not support this allegation. Mex. Sts. Opp. at 20. Article 48 concerns local governance rather than property rights. Legal Auth. at 15. The Mexican States point to no evidence establishing that they exercised jurisdiction over such islands before 1917. Moreover, even if these lands were owned by the states, the federal maritime zones, beaches, lands reclaimed from the sea, waters, and other natural resources thereon, as outlined in the Mexican Constitution and General Law of National Assets, are owned by the federal government.

Moreover, the "National" property referenced in the Mexican Constitution is vested in the federal government despite the Mexican States' creative arguments to the contrary (Mex. Sts. Opp. at 7).[7] Further, Article 73, Section XXIX-G of the Mexican Constitution precludes the Mexican States' involvement in administrative environmental matters without express grants of concurrent jurisdiction by the Mexican federal congress. TO HESI Mem. at 11-13. Thus, the constitutional authority upon which the Mexican States rely does not support their claims.

Finally, the Mexican States' alleged participation in governmental functions pursuant to federal and state statutes (Mex. Sts. Opp. at 15-17),[8] including environmental administrative functions as determined by the federal government, does not constitute a proprietary interest. *See* TO HESI Mem. at 12-20. Rights to participate in such functions do not confer or constitute ownership rights. In sum, Mexican law refutes the Mexican States' proprietary interest claims, and Transocean's motion for summary judgment should be granted.

---

[7] The Mexican States cite no Mexican Supreme Court authority contradicting the precedent translated at Rec. Doc. 8167-10, Exhibit 3 (Mexican Supreme Court decision holding that "[t]he nation cannot be mistaken for a state" and that the nation "is unique and represented by its federal agencies."). Mex. Sts. Opp. at 13-14. Such rulings are persuasive authority unless and until the Supreme Court rules otherwise. *See* Exhibit 2 (translated legal opinions supporting same). Even the plain language of Article 27, Paragraph 6 of the Mexican Constitution establishes that such "national" property is vested in the federal government, and that only the Federal Executive empowered to grant concessions for use on such property. Legal Auth. at 8.

[8] In support of their arguments to the contrary, the Mexican States reference numerous exhibits (including documents not in evidence), and the purportedly "undisputed" declarations of two new witnesses interjected into the proceedings last week, Mr. Raul Gonzalez Castilla, Quintana Roo's Minister of the Environment (Mex. Sts. Opp. at Ex. R), and Salvador Trevino Garza, Tamaulipas's Minister of Urban Development and the Environment (*id.* at Ex. S). Mex. Sts. Opp. at 12. These declarations, are disputed, self-serving statements of state government officials containing inadmissible hearsay (FED. R. EVID. 802), lacking foundation (FED. R. EVID. 602), referencing documents not in evidence (or even submitted in these proceedings), and are irrelevant to the issue of the Mexican States' proprietary interests. Accordingly, such declarations should be disregarded.

II. *Robins Dry Dock* Applies To The Mexican States' Claims Of Negligence And Gross Negligence And Transocean's and BP's Plea Agreements Are Irrelevant.

There is no merit to the Mexican States' argument that the economic loss doctrine of *Robins Dry Dock* does not apply due to Transocean Deepwater Inc.'s or BP's plea agreement. Mex. Sts. Opp. at 5-7. First, BP's admissions of criminal conduct are irrelevant to the Mexican States' surviving negligence claims against Transocean. Moreover, Transocean has not pled guilty to any felony or misdemeanor requiring intentional conduct. In the plea agreement cited by the Mexican States (which has not yet been accepted by the Court), Transocean Deepwater Inc. pled guilty to a Clean Water Act misdemeanor violation and agreed that its employees, in working under and at the direction of BP, failed to properly interpret a negative pressure test. Mex. Sts. Opp. at Ex. W. The Clean Water Act violation at issue specifically sounds in negligence. *See id.* at ¶ 1.

Further, there are no allegations of intentional conduct sufficient to support the Mexican States' argument for removal of its claims from the *Robins Dry Dock* rule. Just as the Court found that the *Robins Dry Dock* rule applied to the Sellno plaintiffs' claims despite their allegations of intentional acts (Rec. Doc. 7526), *Robins Dry Dock* similarly applies to the Mexican States' maritime negligence claims here. Like the Sellno plaintiffs, the Mexican States allege no "facts that would lead to the inference that the Defendants intended either the oil spill" or the alleged harm to the Mexican States.[9] Thus, the Mexican States' maritime negligence claims are subject to the rule of *Robins Dry Dock*.

---

[9]*See* Rec. Doc. 7526 at 5-6 (noting that "'intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.' *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998) (citing Restatement (Second) of Torts § 8A, Comment a, p.15 (1964)). Having reviewed the B1 Master Complaint and the Sellno Plaintiffs' complaint, the Court finds that neither plausibly allege facts that would take the Pure Stigma Claims outside the *Robins Dry Dock* rule. For example, although the Sellno Plaintiffs' repeatedly refer to Defendants' 'intentional acts,' they do not allege facts that would lead to the reasonable inference that the Defendants intended

The cases cited by the Mexican States do not support a different result. Contrary to the Mexican States' assertions, the scope of any intentional conduct exception to the rule of *Robins Dry Dock* is not clear in the Fifth Circuit. Despite references in some Fifth Circuit cases distinguishing intentional from negligent conduct under *Robins Dry Dock*, Transocean has not found a Fifth Circuit decision permitting a plaintiff to proceed because it alleged intentional rather than negligent conduct. Regardless of an intentional conduct exception to *Robins Dry Dock*, the exception does not apply here where the Court has already rejected an essentially identical argument in similar circumstances, and the plea at issue sounds in negligence.

III. The Mexican States' General Maritime Claims Fail Under OPA.

In an attempt to escape the demise of their maritime claims, the Mexican States assert two groundless arguments: (1) because they allegedly do not meet the definition of "foreign claimants" under OPA, they should be permitted to pursue OPA claims, and (2) because they allegedly met OPA's presentment requirement, their maritime claims are not displaced by OPA. Mex. Sts. Opp. at 27. *First*, the Mexican States provide no explanation for their astounding implication that they are not "foreign claimants" under OPA (*see* 33 U.S.C. § 2707(c)(3)).[10] As political subdivisions of the United Mexican States, the Mexican States fall squarely within OPA's definition of "foreign claimants." *Second*, contrary to the Mexican States' wishes, their general maritime claims cannot be salvaged by a non-eligible foreign claimant allegedly meeting

---

either the oil spill or the purported diminution in property value. *See Iqbal*, 556 U.S. at 678 (2009) ('A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.' (internal quotations omitted)). Thus, the Sellno Plaintiffs' argument regarding intentional conduct is unavailing.") (footnote omitted).

[10] "Foreign claimant" is defined as "(1) a person residing in a foreign country; (2) the government of a foreign country; and (3) an agency or political subdivision of a foreign country")).

9

OPA's presentment requirement. Even if the Mexican States were OPA-eligible foreign claimants, which they are not, there is no evidence that the Mexican States met OPA's presentment requirement as to Transocean.[11] As this Court held previously, "maritime causes of action against a Responsible Party are displaced by OPA," such that all claims against a Responsible Party for damages covered by OPA must comply with OPA's procedural requirements. Rec. Doc. 3830, at 26. Because the Mexican States failed to comply with OPA's procedural requirements, the Mexican States' general maritime claims are barred and should be dismissed.

## CONCLUSION

The Mexican States' maritime negligence and gross negligence claims fail under *Robins Dry Dock* and OPA. Accordingly, Transocean respectfully requests that this Court deny the Mexican States' motion and grant Transocean's cross-motion for summary judgment (Rec. Doc. 8179) dismissing all remaining claims brought by the Mexican states of Quintana Roo, Tamaulipas, and Veracruz.

DATED: January 31, 2013                                   Respectfully Submitted,

By:   *s/ Brad D. Brian*                                By:   *s/ Steven L. Roberts*
      Brad D. Brian                                            Steven L. Roberts
      Michael R. Doyen                                         Rachel Giesber Clingman
      Daniel B. Levin                                          Sean D. Jordan
MUNGER TOLLES & OLSON LLP                           SUTHERLAND ASBILL & BRENNAN LLP

---

[11] In the Order addressing the motions to dismiss the Bundle C claims, the Court did "not reach the parties' arguments regarding [the Mexican States' alleged] presentment under OPA." (Rec. Doc. 4845 at 11). However, the Mexican States now place this issue front and center. In this summary judgment proceeding, the Mexican States only contend that they met presentment requirements as to BP. Mex. Sts. Opp. at 27. There is no mention of the Mexican States meeting these requirements as to Transocean. Moreover, the Mexican States have no evidence of presentment as to Transocean. Further, as noted in Transocean's brief supporting its motion to dismiss on this point (Rec. Doc. 2657-1 at 4), the Mexican States failed to even allege any claims of presentment regarding Transocean. *See, e.g.,* Bundle C Complaint at ¶ 668.

| | |
|---|---|
| 355 So. Grand Avenue, 35th Floor<br>Los Angeles, CA 90071<br>Tel: (213) 683-9100<br>Fax: (213) 683-5180<br>Email: brad.brian@mto.com<br>       michael.doyen@mto.com<br>       daniel.levin@mto.com | 1001 Fannin Street, Suite 3700<br>Houston, Texas 77002<br>Tel: (713) 470-6100<br>Fax: (713) 354-1301<br>Email: steven.roberts@sutherland.com<br>       rachel.clingman@sutherland.com<br>       sean.jordan@sutherland.com |
| By: *s/ Edwin G. Preis*<br>      Edwin G. Preis, Jr.<br>PREIS &ROY PLC<br>Versailles Blvd., Suite 400<br>Lafayette, LA 70501<br>(337) 237-6062<br>*and*<br>601 Poydras Street, Suite 1700<br>New Orleans, LA 70130<br>(504) 581-6062 | By: *s/ Kerry J. Miller*<br>      Kerry J. Miller<br>FRILOT, LLC<br>110 Poydras St., Suite 3700<br>New Orleans, LA 70163<br>Tel: (504) 599-8194<br>Fax: (504) 599-8154<br>Email: kmiller@frilot.com |

John M. Elsley
ROYSTON, RAYZOR, VICKERY & WILLIAMS LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
(713) 224-8380

*Counsel for Defendants Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC,* and *Triton Asset Leasing GmbH*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2013, I electronically filed the foregoing with the Court's CM/ECF system and service on all counsel of record by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

                                            /s/ Kerry J. Miller
                                              Kerry J. Miller