# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | § § § § § § | MDL NO. 2179<br><br>SECTION J<br><br>JUDGE BARBIER |
| THIS DOCUMENT RELATES TO:<br>CASE NOS. 10-4239, 10-4240, 10-4241, | § § § | MAGISTRATE JUDGE SHUSHAN |

## HESI'S REPLY IN SUPPORT OF HESI AND TRANSOCEAN'S JOINT MOTION FOR COMPLETE SUMMARY JUDGMENT REGARDING ALL REMAINING MEXICAN STATES' CLAIMS

Halliburton Energy Services, Inc. ("HESI") respectfully submits this Reply in Support of the Joint Motion by Transocean and HESI for Complete Summary Judgment Regarding All Remaining Mexican States' Claims (the "Reply"). HESI incorporates by reference its related briefing and objections regarding the Mexican States' allegations of proprietary interest. *See* Rec. Docs. 8179, 8361, 8370, and 8424. Because HESI's prior briefing and objections addressed most of the issues raised in the Mexican States' Response and Opposition to Defendants' Transocean and HESI Joint Motion for Summary Judgment (the "Response") (Rec. Doc. 8368) this Reply is limited to certain arguments and issues raised in the Response.[1]

---

[1] Pursuant to the Court's September 11, 2012 Order, the parties were to target their cross-motions for summary judgment "solely at the issue of whether the Mexican States have a proprietary interest in the matters asserted in their complaints." Rec. Doc. 7367 at 2. In their Joint Motion for Complete Summary Judgment Regarding all Remaining Mexican States' Claims, HESI and Transocean pointed out that, in addition to the fact that the Mexican States did not suffer a physical injury to a proprietary interest, their claims fail under the Oil Pollution Act of 1990 ("OPA"). *See* 33 U.S.C. §2701, *et seq*. HESI specifically noted its position that "OPA also displaces claims against non-Responsible Parties." Given the Court's holding to the contrary in its Order and Reasons [As to Motions to Dismiss the B1 Master Complaint] and the specificity of the Court's Order as to the subject of the parties' current briefing, HESI does not address this issue further, but relies on its prior briefing regarding the applicability and exclusivity of OPA under the circumstances of this case and does not waive its right to further brief these issues.

## INTRODUCTION

The Mexican States' Reply is riddled with unsupported conclusions and erroneous leaps in logic. The "evidence" and conclusory arguments contained in the Reply fail to raise a genuine issue of material fact regarding the Mexican States' alleged proprietary interest in the subject waters, coastal areas and wildlife. To the contrary, the Reply reveals that the Mexican States are exactly the type of claimant for which the Supreme Court intended to deny recovery. Accordingly, the Court should grant Defendants' Motion (Rec. Doc. 8179) and dismiss all of the Mexican States' remaining claims.

## ARGUMENT

### I. Under *Robins Dry Dock*, The Mexican States Must Demonstrate Ownership Of The Relevant Natural Resource Assets At Issue To Have A Proprietary Interest.

In their Response, the Mexican States cite numerous cases for the proposition that ownership is not necessary to establish a proprietary interest under *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (U.S. 1927). *See* Rec. Doc. 8368 at 20-26. None of these cases allowed a non-owner to recover for alleged damages to natural resources. Additionally, none of the cases are Fifth Circuit opinions allowing a non-owner to recover economic damages absent a clear contractual provision transferring such rights from an owner to a non-owner. The Response fails to identify any agreement between the federal government and the Mexican States transferring *in rem* or ownership rights to the subject waters, coastal areas, and wildlife. Accordingly, even assuming *arguendo* that *Robins Dry Dock* allows a non-owner to recover for

---

*See*, *e.g*., Rec. Doc. 1784 (HESI's Memorandum in Support of its Motion to Dismiss and, Alternatively, for a More Definite Statement).

damage to the property of another, the Mexican States have not produced any evidence to raise a genuine issue of material fact.

## II. The Mexican States Admit That They Should Seek Recovery For Their Alleged Injuries From The Mexican Federal Government.

Based upon the Supreme Court's guidance in *Robins Dry Dock*, non-owners suffering economic losses from alleged damage to property must seek recovery from the actual owners of the allegedly injured property. *Robins Dry Dock*, 275 U.S. at 308 ("The question is whether the respondents have an interest protected by the law against unintended injuries inflicted upon the vessel by third persons who know nothing of the charter. If they have, it must be worked out through their contract relations with the owners, not on the postulate that they have a right *in rem* against the ship"). The Mexican States admit that their claims should be resolved between the Mexican federal government and the States –

> Plaintiffs submit that the issue of whether the Plaintiff States have the authority to bring suit is a 'red herring.' At best it is a political issue to be resolved among the various entities (and people) of Mexico and one in which this United States federal court should not interject itself. In other words, it is a matter that should be determined politically in Mexico.

Rec. Doc. 8368 at 18-19.[2] HESI agrees, and accordingly, the Mexican States cannot seek recovery from HESI under *Robins Dry Dock*.

## III. The Mexican States Attempt to Cover-up their Failure to State a Genuine Issue of Material Fact By Obfuscation And With Illogical and Unsupported Conclusions.

---

[2] *Robins Dry Dock* limits the number of unforeseeable plaintiffs entitled to recovery for a defendant's negligence. The Mexican States allege that they are entitled to recovery because they, along with all residents of Mexico, municipalities, and the national territory, are constituent parts of the Mexican "Nation" under the Mexican Constitution, and thus "own" the natural resource assets at issue. Rec. Doc. 8178 at 11-12, Rec. Doc. 8368 at 14-15. If this proposition is true, then literally all 100 million or so of the Mexican people and all Mexican municipalities have proprietary interests in the natural resources, and the door would be open for all political subdivisions and each resident of Mexico to recover under *Robins Dry Dock*. This limitless recovery is precisely the concern that *Robins Dry Dock* seeks to address.

The Mexican States' "evidence", which consists of 1,672 pages of unlabeled exhibits, reveals their strategy to defeat summary judgment by obfuscation. None of this "evidence", however, establishes that the Mexican States have a proprietary interest in waters, coastal areas, and wildlife.

> A. **The Mexican States' Imprecise Citations to Exhibits Fail to Raise a Genuine Issue of Material Fact.**

Throughout their Response, the Mexican States cite to hundreds of pages of alleged authority, leaving the Court and HESI to determine which of these hundreds of pages, if any, support the proposition claimed. For example, they cite to Exhibits "B, C, H, K, L, R, S" for the proposition that their alleged "proprietary interests are much more extensive than Defendants admit." *See* Rec. Doc. 8368 at 11. Exhibits B, C, H, K, L, R, and S comprise <u>296 pages</u>. *See* Rec. Docs. 8178-5, 8178-6, 8178-11, 8178-13, 8178-14, 8368-6, and 8368-7. As another example, they cite to Exhibits "H and B" for the proposition that "beach property and other coastal lands are sold by the government to private individuals who then have the rights to sell them to others who also have the right to resell the property to others." *See* Rec. Doc. 8368 at 12-13. Exhibits H and B comprise <u>260 pages</u>. *See* Rec. Docs. 8178-11 and 8178-5. In the Fifth Circuit, imprecise references, such as these, cannot support a claim and raise a genuine issue of material fact. *Smith ex. Rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1536-37 (5th Cir. 1994) (stating that the appellants did not identify the specific portions of the summary judgment evidence to support their claim when they "offered only vague, conclusory assertions that their 'evidentiary materials'" supported their claim and raised a genuine issue of fact)). Indeed, as this Court recognized in *Ballard v. Bunge N. Am., Inc.*, No. 07-343, 2008 U.S. Dist. LEXIS 41170, at *12 n.5 (E.D. La. May 22, 2008), "[a]

district court is not required to scour the record for information that would support the non-movant." *Id*. (citing *Smith*, 391 F.2d at 625).

### B. The Mexican States Illogical and Unsupported Conclusions Do Not Raise a Genuine Issue of Material Fact.

A ten-page reply brief cannot identify each of the Mexican States' illogical and unsupported conclusions. However, HESI points out four examples below of the Mexican States' erroneous leaps in logic and/or conclusory statements that do nothing to establish a genuine issue of material fact. *See Burton v. Buckner Children & Family Servs*., 104 Fed. Appx. 394, 395 (5th Cir. 2004) (conclusory allegations and speculation are insufficient to establish a genuinely contested issue of material fact); *see also Michaels v. Avitech, Inc*., 202 F.3d 746, 754 (5th Cir. 2000) (mere conclusions and unsupported inferences are inadequate to defeat summary judgment motion).

(1) **The Mexican States inexplicably conclude that being part of a nation automatically grants them all of the property rights of the nation**. The Mexican States argue that because they are "constituent elements" of the Nation, along with the Mexican people and the municipalities, they have the same rights, interests, and ownership of the Nation. Rec. Doc. 8368 at 15 ("'Nation' is simply then a collective description of the components that integrate the Mexican System, and the States are clearly one of those components. Therefore, when the Constitution speaks in terms of the "Nation" having rights or ownership, it is declaring that the States as a component of the "Nation" have those same rights, interests, and ownership"). The Mexican States fail, however, to cite any authority or evidence establishing that simply being part of the Nation entitles them, the municipalities, and the people to the same ownership rights as the Nation. To the contrary, under the Mexican Constitution, full and inalienable ownership of the Gulf waters and coastal property is vested in the "one and indivisible" Mexican Nation.

**HESI'S REPLY IN SUPPORT OF HESI AND TRANSOCEAN'S
JOINT MOTION FOR COMPLETE SUMMARY JUDGMENT
REGARDING ALL REMAINING MEXICAN STATES' CLAIMS** Page 5

(2) **The Mexican States confuse the Mexican Congress' power to grant concurrent jurisdiction with an actual grant of such jurisdiction.** The Mexican States erroneously claim that they have a proprietary interest in wildlife because "Article 7 of the General Statute on Wildlife, provides for concurrency on all matters pertaining to wildlife among the Municipalities, States, Federal District, and Federal governments." Rec. Doc. 8368 at 17-18. HESI disputes that the right to participate in governance amounts to ownership or proprietary interest. Regardless, the Mexican States fail to cite to any such jurisdiction granted to them by the Federal government. The fact that the Constitution gives the Mexican Congress the power to grant concurrent jurisdiction to the States, does not automatically vest the States with custody, possession, control and ownership of *res* (things) that are in fact owned by the federal government and that are constitutionally "inalienable."

(3) **The Mexican States consistently ignore the Mexican Constitution's Supremacy Clause and read state laws in a vacuum.** The Mexican States claim that their ability to legislate is only limited in the matters of currency, transit of people, and merchandise across the territory, foreign trade, and taxes. Rec. Doc. 8368 at 15. This claim completely ignores Article 73 of the Mexican Constitution, which provides that "in fields such as environmental protection and taxation where Mexican law provides for concurrent governmental authority, the role of the Mexican states is **limited and secondary to** that of the federal government." Rec. Doc. 8167-11 at ¶3.4 (emphasis added); *see* Rec. Doc. 8186-2 at 167-168.

(4) **The Mexican States misquote David Lopez's expert report.** In an attempt to establish that Lopez "agrees" that they have proprietary interests, the Mexican States quote from Lopez's Report as follows: "the Plaintiff States possess the following rights: 'the right to use, enjoy, or *exploit* those assets.'" *See* Rec. Doc. 8368 at 10. However, the States fail to include the

first part of Lopez's sentence which provides "Article 16 of the GLNA states that: "[C]oncessions, permits and authorizations over assets subject to the public domain of the Federal Government *do not create in rem rights*; . . ." Rec. Doc. 8167-11 at 12 (emphasis added). Similarly, the Mexican States quote Lopez as stating that they possess "the right to use, enjoy and *exploit* the marine-land zone and land reclaimed from the sea." *Id.* (citing Rec. Doc. 8167-11 at 13). Again, the States fail to include the first part of the sentence which provides "Article 35 of the Regulation provides that the concessions, assignments and permits granted by the federal government pursuant to the Regulation *do not create in rem rights* in favor of their holders. . ." Rec. Doc. 8167-11 at 13 (emphasis added); *see also* Rec. Doc. 8167-11 at 14-15 (Lopez states no less than six times that the statutes discussed do not transfer proprietary interests to the States). The Mexican States' assertion that Lopez agrees that they have proprietary interests is simply unsupported by Lopez's actual statements and opinions.

## OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

Pursuant to FED. R. CIV. P. 56(c)(2), HESI objects as follows to Exhibits N through Z submitted by the Mexican States, Docs. 8368-2 to 14.

Exhibit N, O, Y, and Z Rec. Docs. 8368-2, 8368-3, 8368-12 and 8368-13, are documents entirely in Spanish. By agreement, the parties were obligated to provide translations of any such document. In addition, the documents appear to be reports of legal decisions, not documents admissible in evidence.

Exhibit P, Rec. Doc. 8368-4, is an affidavit comprised of opinions about Mexican law. It contains no statements that are admissible in evidence.

Exhibit Q and T, Rec. Docs. 8368-5 and 8368-8, are documents entirely in Spanish. By agreement, the parties were obligated to provide translations of any such document. In addition, the documents appear to be statutes, not documents admissible in evidence.

Exhibits R and S, Rec. Docs. 8368-6 and 8368-7, are self-serving affidavits of State officials. To the extent the affidavits describe activities of a Mexican State, they are immaterial. To the extent they purport to state opinions of law about "proprietary interests," they are inadmissible.

Exhibit U, Rec. Doc. 8368-9, is an affidavit about subsea plumes and oil supposedly collected somewhere in Mexico. The affidavit does not establish that the affiant oceanographer has any personal knowledge where the subsea plumes were spotted or where any oil was collected. Nor is the affiant the chemist who supposedly conducted the chemical analysis in an attempt to fingerprint the collected oil. The affiant is therefore not competent to make any of the statements concerning collection location or chemical analysis, which must therefore be inadmissible hearsay. Even then, the affiant only claims that "subsea plumes of oil reached shore," an illogical statement, presumably meaning that "subsea" plumes were spotted in waters near the coastline; and that actual oil was collected "near" a Tamaulipas beach and "in La Pesca." The summary judgment evidence proves that La Pesca is a privately held resort property. Subsea plumes in Gulf waters or oil collected "near" a State beach or "in" a private development, even if shown by admissible evidence, are not probative of injury to property owned by Tamaulipas or any other Mexican State. The conclusory opinion that Macondo oil might be in Mexican Gulf waters undeniably owned by the Mexican Nation is no evidence of injury to property owned by any Mexican State. Accordingly, the substantive statements in the

affidavit are inadmissible as incompetent, hearsay, irrelevant, and/or invalid under F.R. EVID. 702.

Exhibit V, Rec. Doc. 8368-10, is a letter from a BP lawyer to the lawyer for the Mexican States about OPA compliance. It has nothing to do with the non-OPA claims against HESI.

Exhibit W, Rec. Doc. 8368-14, is a plea agreement to which HESI is not a party. It is not relevant to the claims against HESI. As against HESI, any factual statements contained in the agreement would be inadmissible hearsay in any event.

Exhibit X, Rec. Doc. 8368-11, is a newspaper article in Spanish. Since it is not translated, it is improper summary judgment evidence and is inadmissible hearsay in any event.

Exhibit Y, Rec. Doc. 8368-12, is a Mexican statute, only portions of which appear to be translated. Because the statute pertains to the government functions of the States, as limited by the statute, the statute is not material to the issue of "proprietary interests." It is a statute, not admissible evidence.

## CONCLUSION

The Mexican States fail to raise any genuine issues of material fact supporting their allegation that they have proprietary interest in the subject waters, coastal lands or wildlife. Therefore, the States maritime negligence and gross negligence claims fail under *Robins Dry Dock*. Accordingly, HESI respectfully requests that this Court grant Defendants' Motion for Summary Judgment (Rec. Doc. 8179) and dismiss all remaining claims brought by the Mexican States of Quintana Roo, Tamaulipas, and Veracruz.

Respectfully submitted,
**GODWIN LEWIS PC**

**By:** /s/ *Donald E. Godwin*
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
Don.Godwin@GodwinLewis.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
Bruce.Bowman@GodwinLewis.com
Jenny L. Martinez
State Bar No. 24013109
Jenny.Martinez@GodwinLewis.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
Floyd.Hartley@GodwinLewis.com
Gavin E. Hill
State Bar No. 00796756
Gavin.Hill@GodwinLewis.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332
and
R. Alan York
State Bar No. 22167500
Alan.York@GodwinLewis.com
Jerry C. von Sternberg
State Bar No. 20618150
Jerry.vonSternberg@GodwinLewis.com
Misty Hataway-Coné
State Bar No. 24032277
Misty.Cone@GodwinLewis.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: (713) 595-8300
Facsimile: (713) 425-7594

**ATTORNEYS FOR DEFENDANT HALLIBURTON ENERGY SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing HESI's Reply in Support of the Joint Motion for Complete Summary Judgment Regarding All Remaining Mexican States' Claims has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this 31st day of January, 2013.

/s/ Donald E. Godwin
Donald E. Godwin