1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3

4

5   IN RE:  OIL SPILL BY THE OIL RIG      *    10-MD-2179-CJB-SS
                DEEPWATER HORIZON IN THE      *
6           GULF OF MEXICO ON                 *
            APRIL 20, 2010                    *    August 3, 2012
7                                             *
                                              *
8   Applies to:  All Cases                    *    9:30 a.m.
    * * * * * * * * * * * * * * * * * * *

9

10

11                    WORKING GROUP CONFERENCE
               BEFORE THE HONORABLE SALLY SHUSHAN
12                UNITED STATES MAGISTRATE JUDGE

13

14  Appearances:

15  For the Plaintiffs:          Domengeaux Wright Roy
                                   & Edwards, LLC
16                               BY: JAMES P. ROY, ESQ.
                                 Post Office Box 3668
17                               556 Jefferson Street
                                 Suite 500
18                               Lafayette, Louisiana 70502

19

20
    For the Plaintiffs:          Williamson & Rusnak
21                               BY:  JIMMY WILLIAMSON, ESQ.
                                 4310 Yoakum Boulevard
22                               Houston, Texas 77006

23

24

25

              JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
                     UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA

1   APPEARANCES CONTINUED:

2   For the Plaintiffs:              Levin Papantonio Thomas Mitchell
                                        Rafferty & Proctor
3                                    BY:  BRIAN H. BARR, ESQ.
                                     316 South Baylen Street
4                                    Suite 600
                                     Post Office Box 12308
5                                    Pensacola, Florida 32591

6

7
    For the Plaintiffs:             Williams Law Group, LLC
8                                    BY: CONRAD "DUKE" WILLIAMS, ESQ.
                                     435 Corporate Drive
9                                    Suite 101
                                     Houma, Louisiana 70360
10

11

12  For the Plaintiffs:             Irpino Law Firm
                                     BY:  ANTHONY IRPINO, ESQ.
13                                   One Canal Place
                                     365 Canal Street
14                                   Suite 2990
                                     New Orleans, Louisiana  70130
15

16

17  For the Federal                 U.S. Department of Justice
    Government Interests:           Torts Branch, Civil Division
18                                   BY:  SARAH D. HIMMELHOCH, ESQ.
                                     450 Golden Gate Avenue
19                                   Rm. 7-5395
                                     San Francisco, California 94102
20

21

22  For the Federal                 U.S. Department of Justice
    Government Interests:           Torts Branch, Civil Division
23                                   BY:  STEPHEN G. FLYNN, ESQ.
                                     PO Box 14271
24                                   Washington, DC 20044

25

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

1    APPEARANCES CONTINUED:

2    For the United              Environmental Enforcement Section
     States of America:          U.S. Department of Justice
3                                BY:  A. NATHANIEL CHAKERES, ESQ.
                                 BY:  SCOTT CERNICH, ESQ.
4                                P.O. Box 7611
                                 Washington, D.C. 20044
5

6

7    For the State of            Attorney General of Alabama
     Alabama:                    BY:  COREY L. MAZE, ESQ.
8                                500 Dexter Avenue
                                 Montgomery, Alabama 36130
9

10

11   For the State of            Kanner & Whiteley
     Louisiana:                  BY:  DOUGLAS R. KRAUS, ESQ.
12                               701 Camp Street
                                 New Orleans, Louisiana 70130
13

14

15   For BP:                     Kirkland & Ellis
                                 BY: ROBERT R. GASAWAY, ESQ.
16                               655 Fifteenth Street, N.W.
                                 Washington, D.C. 20005
17

18

19   For BP:                     Kirkland & Ellis, LLP
                                 BY:  MARK J. NOMELLINI, ESQ.
20                               300 N. Lasalle
                                 Chicago, Illinois 60654
21

22

23   For Transocean:             Sutherland Asbill & Brennan, LLP
                                 BY:  RACHEL G. CLINGMAN, ESQ.
24                               1001 Fannin Street
                                 Suite 3700
25                               Houston, Texas 77002

1   <u>APPEARANCES CONTINUED</u>:

2   For Transocean:                 Sutherland Asbill & Brennan, LLP
                                    BY: DAVID A. BAAY, ESQ.
3                                   1001 Fannin Street
                                    Suite 3700
4                                   Houston, Texas 77002

5

6
    For Halliburton:                Godwin Ronquillo, PC
7                                   BY:  DONALD E. GODWIN, ESQ.
                                    1201 Elm Street, Suite 1700
8                                   Dallas, Texas 75270

9

10
    For Halliburton:                Godwin Ronquillo, PC
11                                  BY:  R. ALAN YORK, ESQ.
                                    1331 Lamar, Suite 1665
12                                  Houston, Texas 77010

13

14
    For Anadarko:                   Bingham McCutchen, LLP
15                                  BY:  WARREN ANTHONY FITCH, ESQ.
                                    2020 K Street NW
16                                  Washington, DC 20006

17

18
    For Cameron:                    Beck, Redden & Secrest, LLP
19                                  BY:  GEOFFREY GANNAWAY, ESQ.
                                    One Houston Center
20                                  1221 McKinney Street
                                    Suite 4500
21                                  Houston, Texas 77010-2010

22

23

24

25

1  APPEARANCES CONTINUED:

2  Official Court Reporter:      Jodi Simcox, RMR, FCRR
                                 500 Poydras Street
3                                Room HB-406
                                 New Orleans, Louisiana 70130
4                                (504) 589-7780
                                 Jodi_Simcox@laed.uscourts.gov
5

6  Proceedings recorded by mechanical stenography using
   computer-aided transcription software.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

<u>I N D E X</u>

2                                                                      <u>Page</u>

3

SHOW AND TELL                                            7

4

PHASE TWO STIPULATIONS                                   8

5

BOP & CAPPING STACK                                      8

6

HALLIBURTON MODELING                                    11

7

PSC REQUEST FOR TRANSOCEAN DEPOSITIONS                  12

8

CLASS ACTION SETTLEMENTS                                14

9

PHASE TWO STIPULATIONS                                  14

10

SCHEDULE I                                              16

11

SCHEDULE II                                             17

12

SCHEDULE III                                            18

13

BP'S CHALLENGE TO LOUISIANA'S DPP ENTRIES               18

14

SCHEDULE IV PRIVILEGE LOGS                              20

15

SHAREPOINT DISPUTE BETWEEN U.S. AND BP                  21

16

LATER PHASES                                            21

17

CUSTODIAL FILE PRODUCTION FOR ALL PARTIES               24

18

COSTS FOR COMPLIANCE WITH SUBPOENAS                     30

19

ATTORNEYS FOR THIRD-PARTIES - PRO HAC VICE              30

20

DEPOSITION LOGISTICS FOR PHASE TWO                      31

21

SCHEDULING DEPOSITIONS                                  31

22

LETTER BRIEFS                                           54

23

SCHEDULING DEPOSITIONS                                  55

24

25

1                        **PROCEEDINGS**

2                      **(August 3, 2012)**

3                          **\*\*\*\*\*\***

4                  **(COURT CALLED TO ORDER)**

5          **THE DEPUTY CLERK:**  All rise.

6          **THE COURT:**  All right.  Good morning, everybody.

7               So who is that?

8          **ALL LAWYERS:**  Gabby.

9          **THE COURT:**  Gabby.  Can you believe that?  Please

10   have a seat.

11               What I want is I want the rest of the litigation

12   to go like this, okay?  Just float like a butterfly.  What do

13   you think?

14          **MR. MAZE:**  I think we just all need to work on

15   smiling like that on Fridays first.

16          **THE COURT:**  Well, you looked like that in your

17   wedding picture.

18          **MR. MAZE:**  Thank you.  I did.

19          **THE COURT:**  You did.

20               So, Mike, we're going to put Gabby back up, but

21   I want to go ahead and put this, also, up.

22               Mike, you're in front of the camera.  Corey,

23   could you help Mike, please?

24          **MR. MAZE:**  I know he can do it.

25          **THE COURT:**  Corey, could you help Mike, please?

 1              Okay.  We've got to see the title.  Oh, hooray.
 2         **MR. MAZE:**  First of all, this is stipulations --
 3         **THE COURT:**  Stipulations concerning source control
 4    events.
 5         **MR. MAZE:**  And this is the judge's --
 6         **THE COURT:**  And this is a piece of artwork done by
 7    me.  Hooray.
 8              Thank you all for working so hard on the
 9    stipulations.  They are in the can.
10              Sharon, I don't know if you're on the phone, but
11    thank you for persevering on getting that done.  If you'll go
12    ahead and put that in final -- and I don't think Sharon is on
13    the phone --
14         **MS. HIMMELHOCH:**  I'll make sure she knows, Your
15    Honor.
16         **THE COURT:**  Thank you, Sarah.  You can't see it, but
17    I'm very happy about the stipulations.
18              All right.  Oh, and we can go ahead and put
19    Gabby back up, if you all would like that for the rest of
20    the -- yeah.  Don't you think that's the way we should proceed?
21              Thanks, Nat.
22              Let's see.  We got from David Grassmick last
23    night a revised protocol for the work that's being conducted
24    and has been conducted out at NASA.  We're going to go ahead
25    and enter an order approving that today.

1                We also got a letter from David yesterday

2    evening about a proposal for further testing and moving

3    equipment.  I am going to ask for, pretty quickly, a more

4    detailed listing of what's intended so that other parties can

5    make preparations for their experts if they want them to come

6    in and any other items that they want to be moved into the

7    air-conditioned area.

8                Air-conditioned.  Listen to that, guys.  Your

9    experts probably will be interested because it will be

10   air-conditioned.  So, you know, the sooner the better, guys.

11               The other thing I want to discuss with everyone,

12   and probably put on the agenda for next week, is starting to

13   think about setting deadline dates for expert reports and all

14   the other commensurate dates.  That would also entail setting a

15   deadline for completion of all BOP inspection and testing.

16               So it seems to me at some point we need to bring

17   it to a halt.  So just start thinking about that and we will

18   have it on next week's agenda for discussion.

19               Also, in David Grassmick's letter was a proposal

20   to perform destructive testing on material removed from the

21   riser.  It's currently stored in a bucket.  If anyone has any

22   concerns or issues about that, would you all, please, let us

23   know what your concerns and issues are before next Friday's

24   conference so we can get a heads-up on that.

25               Anything at all to report on the lease or

1   anything to do with that?

2            Good morning, Rob.

3        **MR. GASAWAY:**  Good morning, Your Honor.  Rob Gasaway

4   for BP.

5            I'm glad you mentioned that.  What we would like

6   to do is go ahead and execute the lease on Monday.  Obviously,

7   we're approaching the end of the fiscal year.

8        **THE COURT:**  Right.

9        **MR. GASAWAY:**  As, you know, Your Honor, David did

10  circulate that to the Court and to all parties.  I wanted to

11  report that we've had no comments on that, so we feel like

12  everybody has signed off on that.

13           I wanted to let the Court and parties know that

14  we are planning to go ahead and execute that on Monday.  If

15  anybody wants to hit the brakes at the last minute, this is

16  your last chance.  But barring objection, we'll go ahead and

17  execute it on Monday.

18           I guess that's an objection, Your Honor.

19       **THE COURT:**  I think, Rob, that was an objection.

20           Phone participants, if you all are doing other

21  things other than quietly listening, please put your phones on

22  mute.  Thank you.

23           Yeah.  That will be fine, Rob.  Unless we hear

24  from someone by noon today, go forward on Monday.

25       **MR. GASAWAY:**  Thank you very much, Your Honor.

1          **THE COURT:**  Okay.  Thank you.

2          **MR. GASAWAY:**  And while I'm at the podium, can I just

3     mention two things briefly?

4                One of them was the Court was asking about sort

5     of a breakout of the variable costs having to do with the

6     testing over the various fiscal years, in particular this most

7     recent fiscal year.

8                We did go back and talk to NASA about that,

9     getting a further breakdown of costs.  And I think we can do

10    that.

11         **THE COURT:**  Good.

12         **MR. GASAWAY:**  So our plan right now is to wait until

13    the end of the fiscal year at the end of September and submit a

14    report shortly thereafter.

15         **THE COURT:**  Perfect.

16         **MR. GASAWAY:**  Okay.  And then the final thing is:  I

17    just wanted to say we've had an exchange of correspondence with

18    Transocean on the capping stack ownership issue.  We continue

19    to delve into that paperwork.  The process is moving forward,

20    but we don't have a resolution or a final report for the Court

21    today.

22         **THE COURT:**  Okay.  Thank you.

23         **MR. GASAWAY:**  Thank you, Your Honor.

24         **THE COURT:**  We received from BP yesterday evening a

25    request for further relief from Halliburton regarding the

1    Halliburton modeling.  Halliburton has requested next Thursday
2    as the day that they will make their reply.  So that's
3    underway.
4              Anything we need to add to that?
5              **MR. GASAWAY:**  Again, good morning, Your Honor.  Rob
6    Gasaway for BP.
7              Don and I talked this morning and Don has
8    graciously allowed a reply from BP which will be submitted on
9    Tuesday, August 14th.
10             **THE COURT:**  Another gnarly issue.
11             **MR. GASAWAY:**  Another gnarly issue, Your Honor.
12             **THE COURT:**  Okay.  Thank you.
13             **MR. GASAWAY:**  Thank you, Your Honor.  And thank you,
14   Don.
15             **MR. GODWIN:**  You're welcome.  Thank you.
16             **THE COURT:**  We've gotten further submissions relative
17   to the Transocean documents that the PSC and Transocean have
18   been discussing.
19             Duke, anything to report on that?
20             **MR. WILLIAMS:**  Unfortunately, no, Your Honor.
21             **THE COURT:**  Okay.  So it's --
22             **MR. WILLIAMS:**  Well, we're making progress, but -- we
23   made a little bit, but not much.  We may get some clarification
24   on who is actually going to be called live at trial this
25   morning, which will make a difference at least with respect to

1  our request for further depositions.

2          THE COURT:  Okay.

3          MR. WILLIAMS:  But the documents we still seem to

4  have some fundamental disagreements.  We've -- I mean, we've

5  made, you know, an honest effort to try and resolve them.  It's

6  all been done in a friendly way, we just, unfortunately,

7  haven't made any progress.

8          THE COURT:  Well, should I wait to hear about your

9  discussions on who will be called live at trial before we take

10 up the issue of the request for further depositions?

11         MR. WILLIAMS:  Well, we can -- I mean, I think we

12 probably should address the whole kit and caboodle this

13 morning.  I really do.

14         THE COURT:  This morning?

15         MR. WILLIAMS:  Yeah.

16         THE COURT:  No, you want me to go ahead and --

17         MR. WILLIAMS:  I don't think it will take that long.

18 I think we need to get it out on the table and just figure

19 out -- I mean, if they agree -- we would like to know who

20 they're going to call live or at least have a confirmation of

21 that fact.

22              If they're going to call Mr. Newman live and I

23 guess Mr. McMahan, I think, who was listed as a may call/will

24 call or will call/may call, that would help.  We still have

25 issues with regard to the documents, though.

1      THE COURT:  Why don't you come sit up in the box with

2 them and have a little chat.

3      MR. WILLIAMS:  Okay.

4      THE COURT:  You all make room for Duke.

5           Okay.  We'll come back to that.

6           Nothing to report on the request by Louisiana

7 and Halliburton to conduct discovery with regard to the class

8 action settlements.  Judge Barbier will rule on that and we'll

9 take it from there.

10           I think I've already thanked you for the Phase

11 Two stipulations.

12      MS. HIMMELHOCH:  We'll take another round of thank

13 you, Your Honor.

14      THE COURT:  Thank you, Sarah.  And make sure Sharon

15 knows I'm thanking her.

16      MS. HIMMELHOCH:  I did and she e-mailed me back,

17 "Yea."

18      THE COURT:  Well, I said *hooray*, but okay.

19      MR. FLYNN:  Your Honor, Stephen Flynn for the United

20 States.

21           With regard to the stipulations, in terms of

22 filing them, do you want that to just proceed apace; in other

23 words, forthwith?

24      THE COURT:  Yeah.  I think we can go ahead and put

25 them in final and file them.

1          MR. FLYNN:  Okay.

2          THE COURT:  And then if we modify them later on --

3          MR. FLYNN:  All right.  So we'll put them in final,

4    we'll get them out to everyone.  Presumably, we'll need

5    permission from everyone to sign them on behalf of their client

6    before we file them.  So I think we need a deadline for that.

7          THE COURT:  Well, I'll tell you what to do:  It is my

8    understanding that everyone has signed off on them.

9          MR. FLYNN:  I agree.

10          THE COURT:  So if by the close of business on Monday,

11   you have not heard that anyone objects, then by default, you

12   have permission to sign.

13          MR. FLYNN:  Thank you.

14          THE COURT:  How's that?

15          MR. FLYNN:  And we will file them on Tuesday.

16          THE COURT:  Perfect.

17          MR. BARR:  Your Honor, I'll try to stay quiet until

18   Monday.

19          THE COURT:  If there is any communication from the

20   PSC, it had better be that they have authority to sign on

21   behalf of the PSC.  You'll think about it?

22          MR. BARR:  Ah, maybe.

23          THE COURT:  Okay.  Let's see.  We are going to,

24   pretty quickly, get to the deliberative process privilege

25   challenge decision, hopefully, early next week.  With that,

1  hopefully, that's behind us.  I'm looking for some forward

2  motion on privilege challenges.  So, hopefully, that will be

3  done next week, subject, of course, to any appeals.

4                Schedule I.  We've reached agreement that BP and

5  the United States will extrapolate all rulings on Schedule I by

6  August the 6th; and production of documents that are not

7  privilege will also take place on August the 6th.

8                Let's see.  As far as provision -- and, Sarah, I

9  know you're listening, and Rob is at the podium -- as far as

10 provision of a privilege log of Schedule I documents, do we

11 have a deadline on that?

12            MS. HIMMELHOCH:  I don't think we've explicitly

13 discussed it, Your Honor.  But if we have to complete the

14 extrapolation by the 6th and have produced all the documents,

15 it seems to me that to get the log out either the 6th or give

16 us two days to proofread.

17            THE COURT:  Yeah.  I think that's reasonable.  So if

18 it's the 6th -- and I don't know what day of the week that is.

19 Is that next week?

20            MS. HIMMELHOCH:  That's a Monday.

21            THE COURT:  Yeah.  So close of business Wednesday,

22 the 8th?

23            MS. HIMMELHOCH:  Yes.

24            MR. GASAWAY:  Your Honor, just a brief correction.  I

25 think the extrapolation will be complete on the 6th, but the

1    production of documents, and I don't know what the date was,

2    but it was -- I think we proposed the 13th, we may have agreed

3    to the 10th, but this production of documents shortly

4    thereafter.

5              THE COURT:  Is that right?  Is that right, Nat?

6              MR. GASAWAY:  It was the 10th.

7              THE COURT:  Thank you, Nat.

8                   So the 10th is the production of documents.

9              MR. GASAWAY:  Is the production of documents.

10                   And, obviously, the privilege logs, maybe if

11   they're going to be shortly thereafter the production of

12   documents.  But they'll know what they're getting by Monday and

13   then they'll get the actual documents the 10th and then the

14   updated privilege logs shortly thereafter.

15             THE COURT:  Sarah, does that meet with your A-OK?

16             MS. HIMMELHOCH:  That's fine with me.

17             MR. O'KEEFE:  Why don't we say the 13th for the

18   privilege logs, so that will be the Monday, a week.

19             THE COURT:  Yeah, the 13th.

20             MR. GASAWAY:  Okay.

21             THE COURT:  Okay.

22                   So after that's done, we will go ahead and

23   randomly select documents for verification of extrapolation,

24   and that should take care of that issue, hopefully.

25                   We have no issues with Schedule II.

1          As far as Schedule III, let's see.  That covers
2     privilege logs from June 1 through June 22nd, served by U.S.,
3     BP and all other parties as well.
4          We've got the U.S. challenging eight BP
5     privilege claims.  So that's -- and we got a reply yesterday
6     from the U.S.
7          **MR. GASAWAY:**  That's correct, Your Honor.
8          **THE COURT:**  All right.
9          We've got deadlines for BP's challenge to
10    Louisiana's --
11         Where did that come from?  Is that our system?
12         So we're in the process of Louisiana's DPP
13    entries.
14         **MR. GASAWAY:**  Your Honor, if I could give some good
15    news on that we'll confirm by letter --
16         **THE COURT:**  Good.
17         **MR. GASAWAY:**  -- we've had a very productive back and
18    forth with Louisiana.  Louisiana provided some declarations.
19    We've greatly narrowed the scope of documents.  And I think
20    Louisiana and the Court will get a letter from BP today saying
21    that all of the issues have been resolved.
22         We'll note a couple of special issues there just
23    for the record.  But I think in terms of the Court's time,
24    there won't be any required on that issue.
25         **THE COURT:**  Great.

1          **MR. GASAWAY:**  But look for our letter later today.

2          **THE COURT:**  Good.  That's another *hooray*.

3          **MR. GASAWAY:**  Thank you.

4          **THE COURT:**  All right.

5          **MR. GASAWAY:**  And I did just want to mention on the

6     U.S. briefing that you just mentioned, as you know, and as we

7     talked about it with the U.S. and the Court, the U.S. did say

8     that it's important to get those dates right.  BP agrees with

9     us and is making the offer on the record that, you know, should

10    the Court have any interest in further follow-up on that, we'd

11    be happy to.

12              But we believe the record is, obviously, very

13    complete as it stands, and if the Court's comfortable with

14    that, we're comfortable with that, too.  But I just wanted to

15    say that on the record, Your Honor.

16          **THE COURT:**  All right.  Thank you.  I appreciate

17    that.

18              Scott?

19          **MR. CERNICH:**  Scott Cernich for the United States,

20    Your Honor.

21              As we discussed, the United States challenged

22    these documents -- actually, initially challenged 10 documents

23    on BP's privilege log.  BP came back and told the United States

24    that two of those documents were misdated.  We believe BP

25    should have gone back and checked the dates on all of the

1   documents when they were submitted.

2              We appreciate, and think it is worthwhile to

3   make sure that we get the dates right.  The United States is

4   concerned about additional submissions to the Court,

5   particularly additional in camera ex parte submissions that the

6   United States does not have an opportunity to reply to.

7              And we would hope that whatever showings that BP

8   intends to make regarding these additional documents regarding

9   the dates would be public submissions that all of the parties

10  can see.

11              THE COURT:  Yeah.  I think dates are the kind of

12  thing that we don't need to have in camera submissions over.

13  If all we're doing is correcting dates, it's not a problem.

14              MR. CERNICH:  Thank you, Your Honor.

15              THE COURT:  All right.  Schedule IV privilege logs;

16  that is logs served by the United States after June 22nd and

17  through July 31st.

18              Let's see.  Where are we on that?  Rob, you got

19  something to say on this one?

20              MR. GASAWAY:  Good morning, Your Honor.

21              THE COURT:  Good morning, Rob.

22              MR. GASAWAY:  I was just going to say that as a first

23  step on that, we had committed to the Court and the United

24  States that we would take the June 22nd to July 31st logs and

25  we would have our challenges, if any, to the United States by

1    Monday, August the 6th.

2              **THE COURT:**  Good.

3              **MR. GASAWAY:**  The plan from there was that they would

4    review the scope of those challenges, respond to them, and we'd

5    kind of work out a meet and confer and a briefing schedule as

6    necessary after they have the opportunity to see if this looks

7    tractable or intractable.

8              **THE COURT:**  Right.  Exactly.  So we'll work on that

9    next week.  Thank you.

10             On the SharePoint issue between the United

11   States and BP, I think we've reached -- we've received enough

12   communications on that, let's call it quits.  That's under

13   submission.

14             **MR. O'KEEFE:**  The U.S. reply is due on August 6th.

15             **THE COURT:**  Yeah, except for the U.S. reply.  Thank

16   you.  But I think we've got it and we'll get on that as soon as

17   the briefing is completed.

18             We had some discussion this week with regard to

19   the *later phases* issue.  The first brief on this is due on

20   Monday, August 6th, and we'll take it from there.

21             Nat, have you got something on that?

22             **MR. CHAKERES:**  Yes, Your Honor.  The United States

23   and BP met and conferred yesterday regarding the United States'

24   challenges to other phases and irrelevant documents.  I think

25   we've made a lot of progress.  There's a few outstanding

1   questions.  We asked for slightly more information from BP

2   regarding some of the documents.

3            So I can't say that, you know, the United States

4   challenges are completely resolved, but the scope is narrowed

5   considerably to under 10 documents and it may well be narrowed

6   further from that.

7            **THE COURT:**  Good.  That's great.  Thank you.

8            **MS. HIMMELHOCH:**  Your Honor, this is Sarah

9   Himmelhoch.  Can we go back to the post-June 22nd privilege log

10  issue for a moment?

11           **THE COURT:**  Sure.

12           **MS. HIMMELHOCH:**  No?

13           **THE COURT:**  Yeah.  I said *sure*.  Sure, sure.

14           **MS. HIMMELHOCH:**  I just had a -- I mean, we've worked

15  out a schedule with BP, but I wonder whether it's possible

16  to -- if we're going to go through, try and resolve all

17  privilege challenges before depositions, if we can just make it

18  clear that all the parties who may wish to challenge the U.S.

19  privilege logs post-June 22nd have a deadline to raise those

20  issues with us.

21           **THE COURT:**  Okay.

22           **MS. HIMMELHOCH:**  So that if the goal is *peace for all*

23  *time*, I'd like it *peace for all time* with all the parties.

24           **THE COURT:**  Well, I think that's correct.  Why don't

25  you share the agreement that you have with the U.S. as far as

1  briefing and we can put everybody on that same schedule.

2            Does anybody know whether they have any

3  challenges that have not been asserted by BP to the United

4  States post-June 22nd privilege logs?  Rob?

5            **MR. GASAWAY:**  I was just going to make a suggestion

6  in that regard, Your Honor.  I think what we did for some of

7  the other batches of briefing was we gave other parties a

8  couple days after one of the parties with the most knowledge

9  had submitted their challenges.

10            So, by that rule, what we might do is say BP's

11  challenges to the United States logs are coming in on Monday

12  August 6th, maybe we could give other parties a couple more

13  days to the 8th or 9th to look at BP's challenges, which we'll

14  send to the United States and all parties, and then if they

15  want to pile on after seeing BP's, they can do that.

16            Knowing that the door swings both ways and that

17  sometimes people pile on to challenges coming at BP, we would

18  encourage them to go easy on the challenges to the United

19  States.

20            We're going to take a very careful look at the

21  United States' logs, I can assure anybody.  And if there's

22  anything there that needs to be challenged, I'm sure BP will do

23  it.  So I would encourage people to be sparing, but I think we

24  should give them a couple days, in fairness.

25            **THE COURT:**  Well, I think that's right.  This is not

1    an invitation to pile on; this is informational, that I want to

2    resolve all privilege challenges.  It's my thought that BP is

3    very thorough in reviewing the United States' privilege logs.

4    I would be shocked if other parties have considerably more

5    challenges.

6              But when we rule, we want to rule on it all and

7    move on.  So, good suggestion, Rob.  All other parties will

8    have until the close of business on Wednesday, the 8th, to

9    assert any additional challenges to those logs, and then you

10   all will be on the same briefing schedule as we will implement

11   for the United States and BP.

12            MR. GASAWAY:  That sounds like a good plan, Your

13   Honor.

14              Again, in terms of the briefing schedule, we are

15   hoping the meet and confer process might resolve this, just

16   like the one that we're having with Nat now.

17            THE COURT:  Right.

18            MR. GASAWAY:  So we'll see how that works out after

19   the United States sees what we challenge.

20            THE COURT:  Okay.  That's great.

21              Custodial file production for all parties.  Let

22   me start with something that I caught today.  I don't know

23   whether I originally said 15 days for custodial file production

24   or whether I said 15 working days, and I'm not in a position to

25   go back and retrace my steps.

1          I want it to be 15 working days, which is 21

2  calendar days, and I want to be clear about that because I want

3  to avoid breaking your neck getting ready for depositions.  So

4  the rule will be 21 calendar days, which is easier to figure

5  than working days.

6          So custodial file production will be governed by

7  that rule from here on.

8          Okay.  Now --

9      **MR. NOMELLINI:**  Your Honor, it's Mark Nomellini.

10     **THE COURT:**  Hey Mark.

11     **MR. NOMELLINI:**  Hi.  That sounds good for the 15

12 working days, 21 calendar days.

13         We also had a good discussion involving a lot of

14 parties yesterday afternoon regarding the scope of the search

15 criteria that will be run.  We agreed to run criteria for

16 Mr. Vincent and for some others that people wanted added.  So

17 we circulated the revised version with the additional search

18 criteria we agreed to and I think we're in pretty good shape.

19         If anybody has any further comments or additions

20 they want to make, please let me know.

21     **THE COURT:**  Good.  I appreciate that.  Thank you.

22         I was going to ask:  Have all parties done that?

23 Have all parties identified similar witnesses and search

24 criteria?

25         It looks like we're getting an affirmative or we

1   don't have such people.  So that's good.

2           MR. FITCH:  Judge, Tony Fitch for Anadarko.

3               We still need to do so.  Our notice was formally

4   served just yesterday and we still need to do so.  We'll do so

5   expeditiously.

6           THE COURT:  I appreciate that, Tony.

7               But has anybody else not done it besides

8   Anadarko?

9               Good.

10          MR. BAAY:  Your Honor --

11          THE COURT:  Mr. Baay.

12          MR. BAAY:  -- David Baay for Transocean.

13              We have submitted it for our lone designee.

14   When we ran our initial search, we included Phase Two terms.

15   So unless there are additional requests by the parties, we

16   don't intend to have a supplemental production for Mr. Turlak.

17          THE COURT:  Okay.  Good.

18              Scott?

19          MR. FITCH:  And, Judge, Anadarko is largely in that

20   situation, but we'll confirm all the foregoing for the

21   information of all the other parties.

22          THE COURT:  Good.  Thank you, Tony.

23              Scott?

24          MR. CERNICH:  Your Honor, Scott Cernich for the

25   United States.

1                On a related issue, we'd like to discuss the
2    issue of changing 30(b)(6) designees, the witnesses, prior to
3    the deposition.  There were some problems with that, I think,
4    in Phase One, as all the parties recognize.  We think that the
5    switching of the 30(b)(6) designee, the deadline for that
6    should be -- should coincidence with the document production
7    date; in other words --
8                THE COURT:  21 calendar days?
9                MR. CERNICH:  Yes, yes.  So that we will be assured
10   of getting the custodial production from whoever is substituted
11   for that deposition.
12               THE COURT:  Does anybody have any problem with that
13   proposal?
14               MR. GASAWAY:  Your Honor, here's what I worry about:
15   I think, obviously, you're going to need a document production
16   for any witness 21 days beforehand.  There are a lot of
17   different situations that could cause for switching.  The
18   problem with that is that if you're switching out that late,
19   it's obviously a big step for the party who's doing the switch
20   because they're going to have to reorient their schedule, too.
21   You can't understand what that's going to be.
22               So I think that any time there's going to be a
23   switch by any party that's within that 21-day window, that
24   party isn't going to come in and say, oh, as a matter of
25   course, we were supposed to get together and depose Ms. Jones

1  on Monday and it turns out it's Ms. Smith.

2          THE COURT:  Well, it turns out that Ms. Jones died.

3  Okay.

4          MR. GASAWAY:  There's got to be an explanation.

5              Or is sick.

6          THE COURT:  Right.

7          MR. GASAWAY:  We've heard these excuses -- not

8  excuses, these explanations.  And from time to time, the Court

9  has accepted those explanations.  I hope none of those are

10  necessary in Phase Two.  There may be.

11          What I would suggest is -- Mr. Cernich,

12  obviously, has a good point -- if you're substituting in a new

13  witness, particularly one that does not have a document

14  production, you shouldn't be able to gain the 21-day rule, by

15  saying, "Oh, well, wait a minute.  We've got a new witness."

16  Then you would have to give 21 days for the new witness.

17          THE COURT:  Right.

18          MR. GASAWAY:  I could also agree that if we're

19  getting down that close to the deposition, everybody on both

20  sides is preparing, and it wouldn't be sort of as a matter of

21  course, "Oh, gee whiz, it turns out it's going to be somebody

22  else."

23          So I would say, you know, there would have to be

24  an explanation and the parties should have that explanation.

25          THE COURT:  Illness, death, that kind of thing, which

 1   there's nothing we can do about it, hopefully, we will keep

 2   that to a minimum.  Would you please instruct your witnesses

 3   accordingly?

 4          MR. GASAWAY:  Exactly.

 5              So, with that understanding, is that we'll have

 6   an explanation if it's within the time.

 7          THE COURT:  Okay.  That's right, Rob.

 8          MR. GASAWAY:  Okay.

 9          THE COURT:  Thank you.

10          MR. GASAWAY:  Thank you.

11          THE COURT:  Okay.

12          MR. CHAKERES:  Your Honor, Nat Chakeres for the

13   United States.

14          THE COURT:  Yes, Nat.

15          MR. CHAKERES:  If I could just briefly address, I

16   think what Rob says, there's some of that.  We certainly think

17   it makes a lot of sense.  I think there's one aspect to this

18   that we want to nail down and that's let's say you have

19   Mr. Jones and Ms. Smith are two designees on two different

20   topics and then a week before there's a decision, "Oh, we'll

21   flip this one topic from Mr. Jones to Ms. Smith."  They'll both

22   still be witnesses, but the 30(b)(6) deposition is changed and

23   that also creates disruption.

24              So it's not something that we don't have the

25   documents, but it's somebody who's been preparing for this

1   deposition for this witness, all of a sudden it creates mayhem
2   in the system.  So we also would like a deadline for that as
3   well.  I think that's a separate issue from a witness becomes
4   unavailable.
5           THE COURT:  All right.  Rob, any thoughts on that
6   one?
7           MR. GASAWAY:  Point well taken, Your Honor.  Any
8   scheduling changes within the 21-day window will require good
9   cause shown explanation to the Court, whether it's a new
10  witness coming in or a reshuffling of old witnesses.
11          THE COURT:  Okay.  Good.  But, otherwise, I mean, the
12  general rule default is 21 days.  Okay?
13          All right.  We've been having a discussion over
14  costs for compliance with subpoenas to third parties.  We
15  raised the issue last week and I just asked you all to be
16  thinking about it.  Has anybody got any comments or can we just
17  go ahead and pass this for the time being?
18          Okay.  We have the issue of attorneys who may be
19  making appearances in this case for various reasons, whether
20  they're representing third parties, whether they're
21  representing non-parties responding to subpoenas, the issue
22  being whether they have to enroll *pro hac vice* and enroll local
23  counsel or whether they could make appearances.
24          They do not have to enroll *pro hac vice*.  We've
25  got Pretrial Order No. 1, Rec Doc 2 at page 9, that waives that

 1  requirement.  So as you all are working with some of these
 2  parties, you can let them know that we're not going to bar
 3  their attorneys from making appearances.
 4              Anything to report on deposition logistics?
 5  Anything that anybody has on their mind as far as trying to get
 6  that organized?
 7              MR. BAAY:  Your Honor, David Baay for Transocean.
 8              I just wanted to make sure that we have our
 9  first deposition on next Tuesday, the 7th, that the logistics
10  for the court reporter and everything is in place, or if I need
11  to talk to someone about making sure that is in place.
12              THE COURT:  We're going to have Mr. Brian Barr
13  respond to that question.
14              MR. BARR:  Your Honor, Brian Barr for the PSC.
15              Everything is in place.  We've implemented the
16  same vehicle and everything that was in place for Phase One.
17  We've got a room, I don't know if you all got notice of it, but
18  I can send it around to you, there's a room, everything for the
19  deposition on Tuesday.
20              THE COURT:  At the Pan Am building?
21              MR. BARR:  Yes, ma'am.
22              THE COURT:  Okay.
23              MR. BAAY:  And I guess the follow-up question to that
24  is time allocation.  Mr. Barr sent a letter last night,
25  globally, but maybe we should just take up Mr. Brainard today.

1  That's my suggestion.

2          **THE COURT:**  Well, I think we should.  Let's see.  I

3  have to admit, I have not looked at detail at the proposal.

4                  What time did you send this, Brian?

5          **MR. BARR:**  About 11:00.

6          **THE COURT:**  About 11:00.

7                  Did you get a chance to look at it in detail?

8          **MR. BAAY:**  I looked at it on the airplane, yeah.

9          **MR. BARR:**  It's a short letter.

10         **THE COURT:**  It is a short letter, but a long list.

11                 So tell us, as we look at the list that is

12  attached to your letter, Brian, where -- oh, it's on page 2 of

13  your list --

14         **MR. BARR:**  Yeah.  Mr. Brainard would fall under

15  "Third-Party Source Control."

16         **THE COURT:**  -- "Third-Party Source Control."  So if

17  you all have that letter, it's going to be on page 2 of the

18  attached list, "Third-Party Source Control."  And phone

19  participants, hopefully, you have your copies in front of you

20  as well.

21         **MR. BARR:**  And Mr. Baay has already -- we've spoken

22  about Mr. Brainard before and he's told me some of his thoughts

23  on time that TO wants for that deposition and we're happy to

24  work with you.  If we were to implement this type of a

25  structure, I'm happy to work with you on that deposition to

1  give you the time you want.

2          THE COURT:  Okay.  Well, let's talk about this

3  because it seems to me what I'm going to do is I need to look

4  at the entire scheme and I need to let everybody else have a

5  little input into it.  But I agree that we need to get him done

6  for today.

7                So, David, what are you looking for that is

8  different than what Brian is proposing?

9          MR. BAAY:  Well, Brian has proposed 25 minutes for us

10  in this deposition and we had requested, or I think I mentioned

11  to Brian on the phone, that we'd like 120 minutes, two hours,

12  for Mr. Brainard.

13          THE COURT:  Okay.

14          MR. BARR:  And the PSC would be willing to give TO 70

15  minutes of our time.

16          MR. WILLIAMSON:  Give me an hour.  Give me an hour.

17          THE COURT:  All right.  We've got other people who

18  want to comment, and this is just for this particular witness.

19          MR. KRAUS:  Yeah.  This is Doug Kraus for the State

20  of Louisiana.

21          THE COURT:  Yeah, Doug.

22          MR. KRAUS:  For this deposition only, we're willing

23  to give Transocean 30 minutes.  But we do need to revisit the

24  structure, and I don't know if we want to go into all of that

25  today --

1        **THE COURT:**  We don't.

2        **MR. KRAUS:**  -- which I'm seeing you shaking your head

3   no.

4        **THE COURT:**  Yeah, no, we don't.

5        **MR. KRAUS:**  But I think I might suggest that all the

6   parties meet and confer sometime early next week on this

7   structure before we bother Your Honor with it.  But, yeah, 30

8   minutes for the deposition on Tuesday, but that is not our

9   position globally.  And that's Mr. Maze and myself.

10       **THE COURT:**  Okay.  So with that, with the PSC

11  donating 70 and Louisiana 30, you're take taken care of, David.

12       **MR. BAAY:**  Great.  Yeah.

13            Thank you, Doug.

14       **MR. KRAUS:**  You're welcome.

15       **THE COURT:**  So David's taken care of.

16            Now, Rob, what have you got?

17       **MR. GASAWAY:**  Your Honor, I think -- I didn't see

18  Brian's e-mail.  I'm sorry.  It came in late last night.  He

19  proposed 120 minutes for BP.

20       **THE COURT:**  He did.

21       **MR. GASAWAY:**  If I could just take a save and promise

22  to get back to him within a couple of hours.  I've just sent an

23  e-mail out and we'll get a reaction to that.

24            More globally, I think that Brian's proposal is

25  a good starting point.  Let me make one substantive comment and

1    one process comment.  I think it may make sense to take what I

2    would call some technical third parties that are closely

3    aligned with one of the parties, particularly BP and the United

4    States, and sort of look at them as perhaps the functional

5    equivalent of a BP or United States witness.

6                    I mean, for instance, we're talking to Woods

7    Hole.  Our deposition of Woods Hole would be functionally

8    similar to our deposition of some of the people who are at the

9    National Labs in the sense that they were closely aligned with

10   that effort.  You know, to a certain extent, the United States

11   may feel that way about some source control people on the BP

12   side or some quantification people on the BP side, like BPI.

13   We're interested in BPI because they were working closely with

14   BP.

15                   So maybe some of the technical third parties we

16   can wrap into our allocation for people for BP or the United

17   States.  That's an idea.

18                   What I'd like to do, given Brian's helpful

19   starting of the conversation last night, is promise to get back

20   to Brian and all the parties and the Court with some reactions,

21   let's say, by, you know, mid-day Tuesday or something like

22   that, and then that would allow the rest of the week for meet

23   and confer on kind of global default allocations.  And then

24   maybe all parties would be ready to have a further discussion

25   with Your Honor next Friday.

 1              **THE COURT:**  Okay.  Does that -- that doesn't take
 2    care of everybody.  I think the schedule you just proposed,
 3    Rob, is fine.
 4                     I'm still trying to work on Monday's deposition.
 5              **MR. GASAWAY:**  Okay.
 6              **MR. GANNAWAY:**  Your Honor, Geoff Gannaway on behalf
 7    of Cameron.
 8                     In Mr. Barr's letter, Cameron's not allotted
 9    time for any of the witnesses.
10              **THE COURT:**  Well, go figure.
11              **MR. GANNAWAY:**  In some instances, it's good to be
12    ignored, Your Honor; but, in fairness to our client, we wanted
13    to, at least today, address for purposes of Mr. Brainard's
14    Tuesday deposition, we would ask for a specific allotment for
15    Cameron, whether it comes from the pool of 30 minutes allotted
16    to others or what have you, 10 to 15 minutes for Tuesday's
17    deposition.
18              **THE COURT:**  Okay.  Mr. Barr, you'll work on that?
19              **MR. BARR:**  Your Honor, unless somebody else has
20    comments, I mean, I don't see why Cameron couldn't take the
21    other allotment of --
22              **THE COURT:**  Well, I don't think they even need the
23    other allotment.  Why don't we give them 15 minutes of the
24    other allotment, leaving 15 lagniappe.  Okay?  So we're
25    ready -- oh, we're not ready for Monday.  Hello.

 1             **MR. GODWIN:**  Hi, Judge.  Don Godwin for Halliburton.

 2             Judge, I spoke to Brian this morning about

 3  Third-Party Source Control.  Of course, while I'm of the view

 4  that Halliburton really doesn't have a stake in the Phase Two

 5  discovery and depositions --

 6             **THE COURT:**  I'm of the same view.

 7             **MR. GODWIN:**  Well, we're in agreement on that for

 8  sure.

 9             But as you'll recall, here in this very

10  courtroom, Brian stood up and said that Halliburton as well as

11  TO were very much a target of the PSC with regard to Phase Two.

12  So I spoke to Brian this morning concerning that and I

13  suggested that for Third-Party Source Control, in view of his

14  position, unless it's retracted, that HESI be given 45 minutes

15  rather than 20.

16             However, if the PSC says, "Well, we now retract

17  that, HESI's no longer a target in Phase Two," then I'm not

18  going to need the 20 minutes, and may not need that.

19             **THE COURT:**  That's good, Don.

20             **MR. GODWIN:**  Thank you, Judge.  But I do need some

21  more time as it presently stands.

22             **THE COURT:**  I tell you what we're going to do:  We're

23  going to give you 10 more minutes from the other, leaving 5

24  minutes of lagniappe.  So you're going to get yourself a full

25  30 minutes.

1        **MR. GODWIN:**  How about let me have five more minutes
2   from the PSC, give me 35, Judge, in view of Brian starting this
3   fight?
4        **THE COURT:**  No.  You're going to get yourself 30
5   minutes, Don.  If you take out a couple of *thank yous*, that
6   will save you some time.
7        **MR. GODWIN:**  Thank you, Judge.
8        **THE COURT:**  Okay.  So we're ready for Monday.
9        **MR. BAAY:**  One more issue.
10       **MR. O'KEEFE:**  No, we're not.  We don't have BP lined
11  up yet.
12       **THE COURT:**  Oh, we don't.  Go ahead, David.  David,
13  go ahead.
14       **MR. BAAY:**  Well, BP's given 120 minutes.  Is that
15  something that needs to be adjusted?  I don't know.
16       **MR. GASAWAY:**  Your Honor, I just want to check with
17  the team that will be there.  I think 120 minutes will be fine.
18  I think we're ready and I want to come back and just reconfirm.
19       **THE COURT:**  Okay.
20       **MR. GASAWAY:**  And you're right, I should have seen
21  that late last night, but I didn't get the e-mail out and back.
22       **MR. BAAY:**  So one more issue for Tuesday's
23  deposition, I guess it's batting order.  Do we need to agree
24  upon who goes first, second, third?
25       **THE COURT:**  I thought that this covered batting

1  order.  Didn't it, Brian, or did it not?

2       **MR. BARR:**  It's a -- I would say it's a loose attempt

3  to cover batting order.  I mean, it --

4       **THE COURT:**  It's a loose attempt to cover batting

5  order.  So let's now discuss batting order only for Monday's

6  deposition --

7       **MR. O'KEEFE:**  Tuesday, August the 7th.

8       **THE COURT:**  I'm sorry.  Tuesday's deposition.

9       **MR. BARR:**  I mean, I do think, given that the PSC,

10  the states and the U.S. have the burden of proof, that we

11  should continue to go first, and that we should continue to be

12  able to close the deposition, as a general rule, given the

13  burden of proof in the case.

14       **THE COURT:**  Okay.  Scott, you got something to say on

15  this?

16       **MR. CERNICH:**  The United States agrees with Mr. Barr

17  on that point regarding the order.

18            I'd also say that for this deposition on

19  Tuesday, the United States is comfortable with the 30 minutes

20  allotted, but just for this deposition.

21            I believe, and David can correct me if I'm

22  wrong, I believe that RRB was a BP contractor here?  Is that

23  correct?

24       **MR. BAAY:**  That's true.

25       **MR. CERNICH:**  So that may be something to take into

1    account regarding the allocation of time.

2              THE COURT:  Okay.  So, David, on the batting order,

3    have you got something that you want to raise?

4              MR. BAAY:  No, I'm happy with what Brian proposed.

5              THE COURT:  Okay.  Anybody else?

6              MR. BAAY:  For just this witness.

7              THE COURT:  Okay.

8              MR. GASAWAY:  And, Your Honor, just this witness, BP

9    has no objection to batting order.  But we will be addressing

10   batting order more globally in the Tuesday response to Mr. Barr

11   that I described earlier.

12             THE COURT:  Okay.  That's great.  But that's at least

13   a running start, and I have to thank Brian for undertaking to

14   do this.

15             MR. BARR:  I'm turning into a consensus builder.

16             THE COURT:  Well, it is a change, I have to say.

17             MR. O'KEEFE:  Your Honor, may I suggest that if Brian

18   doesn't have it tied down by Monday morning, that he let us

19   know so then we can issue an order first thing Monday if

20   there's some --

21             THE COURT:  Well, I think it's tied down.

22             MR. O'KEEFE:  Yeah.  Well, just to make sure.  Okay.

23             THE COURT:  Okay.  I'll tell you what, Brian, why

24   don't you circulate what you believe the changes are, if you

25   don't mind, and if there is any problem at all, by noon on

1   Monday, you all raise the problem with us and we'll get an
2   order out resolving whatever the issue might be.  But I think
3   it's tied down.
4                      Scott?
5            MR. CERNICH:  I think this is an easy one, Your
6   Honor.  Scott Cernich for the United States.
7                      I just wanted to confirm that as with the Phase
8   One fact depositions, the parties would be able to cede time to
9   each other.
10           THE COURT:  Yes.  I don't have a problem with that.
11   We ran into some issues last time, but I don't even recall what
12   they were.  We kept ceding time, as I recall, regardless of
13   what those few issues were.  So if you've got time left and
14   somebody needs it, we can do it.
15           MR. CERNICH:  Great.  Thank you.
16           THE COURT:  You're welcome.
17                      Okay.  David?
18           MR. BAAY:  Your Honor, I just wanted to use this
19   chance that I have the microphone in my hand to pass it to
20   Ms. Clingman to maybe address their Phase One witness issue.
21                      Do you want to do that right now?
22           THE COURT:  I wasn't listening.
23           MR. BAAY:  That's how persuasive I am.
24           MS. CLINGMAN:  Duke and I have spoken, so if you want
25   our response.

1          THE COURT:  Oh, yeah.  Come on back up, Duke.  Let's
2  talk.
3          MS. CLINGMAN:  Rachel Clingman for Transocean.
4          THE COURT:  How have you been, Rachel?
5          MS. CLINGMAN:  I've been good.  Thank you.  It's good
6  to see you --
7          THE COURT:  Good.
8          MS. CLINGMAN:  -- but for the fact that we're here to
9  reopen Phase One, which we don't agree.
10          But, no, Duke and I spoke, and so if you want to
11  tell her where we are.
12          MR. WILLIAMS:  Okay.  Correct me if I'm wrong, okay?
13          Duke Williams for the PSC.  Good morning, Judge.
14          THE COURT:  Good morning.
15          MR. WILLIAMS:  We did speak and I think we have an
16  agreement on the majority of the experts, three -- I'm sorry, a
17  majority of the witnesses, three of the -- I meant exhibits.
18          THE COURT:  Start over again.
19          MR. WILLIAMS:  I had that problem over there.
20          THE COURT:  Start over again.
21          MR. WILLIAMS:  I'm just going to talk about exhibits
22  right now regardless of what I say after that general
23  statement.
24          I think we're okay on the exhibits.  Three of
25  them we withdraw our tender because they are, in fact,

1   identical copies of ones that were produced earlier.

2                    With respect to the others, there are a few that

3   BP maintains are related strictly to Phase Two.  I think we

4   disagree with that, but we're going to talk about it.

5                    **THE COURT:**  Okay.

6                    **MR. WILLIAMS:**  Now, with respect to the other

7   exhibits, the majority of the other exhibits, and I don't know

8   what the exact number is, but I'm confident that that's not

9   going to be an issue.  There is an agreement that we can use

10  them or supplement our exhibit list and they will stipulate to

11  authenticity.  There's no confidentiality issue.  However,

12  there is no stipulation as to admissibility.

13                   **THE COURT:**  Okay.

14                   **MR. WILLIAMS:**  I think Rachel, and she'll address it,

15  is concerned about the parameters, you know, if they agree to

16  allow us to supplement the exhibit list.  I mean, we think

17  clearly given the circumstances, they were late produced

18  documents -- forget about relevancy all those other

19  arguments -- that that's good cause to take these 30-some-odd

20  exhibits and consider it good cause to supplement our exhibit

21  list.

22                   Obviously, if we had seen these, at least this

23  is the way we feel, when we were getting the trial in the can

24  the first time, they would have been on our exhibit list.  I

25  don't think that's an issue anymore.

1          **THE COURT:** No, it doesn't sound like it is.

2          **MR. WILLIAMS:** I'll let her address that and then we

3    can go on to the depositions.

4          **THE COURT:** Okay. Rachel, is that a problem? It

5    sounds like you've agreed that they may supplement the list.

6          **MS. CLINGMAN:** Not exactly, Your Honor.

7          Rachel Clingman for Transocean.

8          We do agree, as we always have, that we'll make

9    reasonable positions on confidentiality and authenticity. We

10   have no objection on either basis here.

11         With respect to supplementing the exhibit list,

12   Mr. Williams raised the right point, which is we do not agree

13   to that, in part, because we would then struggle to define what

14   *in the can* means with respect to the exhibit list, and I'm sure

15   we and other parties would also like to tweak and add and

16   change things that are in the can.

17         So I would propose, at a minimum, there would be

18   a good cause standard. Here, we have a few documents that the

19   PSC's admitted that they've had for a long period of time. We

20   have others that we would contend are completely irrelevant and

21   somewhat of a red herring to be added to an exhibit list at

22   this point.

23         There was always rolling production. So

24   everyone had a little bit of a disadvantage in both the later

25   depositions and the exhibit list and things like that. But

1  just as an example, one of these documents is related to a 2004

2  incident in India.  And if we're going to start to ferret

3  around and add things like that, I just wanted guidance from

4  the Court of what *in the can* does mean.

5            We are prepared to, in mind-numbing detail, go

6  through each of these documents and why they're not

7  particularly relevant and/or were previously produced should

8  Your Honor desire us to do that.

9            But my bigger philosophical question is:  Are we

10 no longer in the can; and if so, what's the parameters on that?

11       **THE COURT:**  Duke, anything further?  Or do you want

12 me to talk about *in the can*?

13       **MR. WILLIAMS:**  I may have to go to the can after

14 you're done with this.

15            No, go ahead, Judge.  I'll reserve --

16       **THE COURT:**  As far as I'm concerned, we are in the

17 can in Phase One.

18            Now, if there are relevant documents produced

19 after we seal the can, then the can will have to be unsealed

20 only for those purposes and to revise your exhibit list to

21 include late-produced relevant documents.

22            So then the issue is:  How do we decide what are

23 the late-produced relevant documents?

24       **MR. WILLIAMS:**  Well, this, in a nutshell, is how we

25 view it:  With respect to relevancy, Transocean's

1  counter-argument is:  We don't think they're relevant.  Well,

2  you know, I guess relevance, like beauty, is in the eye of the

3  beholder.

4          These -- and we'll talk -- they talk about what

5  we marked in this illustrative book that we delivered Wednesday

6  evening.  We marked tab one.  And they spent some time talking

7  about it, so we'll just use that as an example.  We're not

8  going to go through the mind-numbing exhibit-by-exhibit

9  exercise.  We'll be here all day.

10          This is what their response is and, of course,

11  this is a PowerPoint presentation that was produced late after

12  we had a chance to look at it, consider it for depositions or

13  anything else.  And it says in the PowerPoint:  "This is Bob

14  Long" -- the CEO of the company for four or five years before

15  Mr. Newman was passed the baton a few weeks before the

16  *DEEPWATER HORIZON* disaster.

17          And in this PowerPoint it says, Bob Long says:

18  "People do not just die on our rigs; we kill them."  Now, I

19  don't know why that isn't relevant from a gross negligence or a

20  punitive damage standpoint.  The whole point of a punitive

21  damage claim -- I mean, an element of it is the history of

22  process safety, how that works in a company, and you can't do

23  it with a snapshot.

24          They want to define it geographically and

25  temporally.  I don't think you can do that.  In a punitive

1   damage case, I just don't think -- we're not going to talk
2   about what happened in India concretely, but it's a similar
3   incident, how the company reacted to that incident.
4            And I got to tell you, as BP will admit, you
5   know, Transocean and the PSC spent hours trying to drive that
6   spike into BP's head during all of the Phase One depositions.
7            I think it's clearly relevant.  They disagree.
8   I don't know that you need to decide relevance today.  I'll
9   tell you the best way to decide it is take Mr. Long's
10  deposition and ask him, "Hey, guy, was this a joke?  Or if it
11  wasn't, what did it mean?"
12           They say things like they're not even sure that
13  he wrote it, even though in the PowerPoint it said Bob Long
14  said.  They say it wasn't in quotation marks so that suggests
15  that maybe somebody else said it.
16           I don't know.  But, I mean, that's the kind of
17  thing that we think is critically important.  We reviewed
18  thousands and thousands of these late-produced documents.
19  We're not suggesting that they were produced late on purpose.
20           **THE COURT:**  All right.
21           **MR. WILLIAMS:**  But out of those thousands, we've come
22  up with about 30 that we think are relevant and critically
23  important.  They disagree on some of them.  The mere fact that
24  there's a disagreement -- I think they're relevant on their
25  face, but the mere fact that there's a disagreement, I think

1  cries out for some sort of resolution, or at least we need to

2  be afforded the opportunity to avail ourselves of some process

3  to test these things.

4           We're not going on a fishing expedition.  We've

5  all been through this.  You know what we've been through.

6           **THE COURT:**  And you want to do it again, huh?

7           **MR. WILLIAMS:**  No, we don't want to do it again.

8           We've got Phase Two.  We're working hard on

9  that.  We don't want to revisit Phase One.  On the other hand,

10 we've got a trial to put on in January, and we're going to do

11 it, and these are, you know, just a -- you know, a tenth of a

12 one percent of the late-produced documents.

13          We think, you know, that they're clearly

14 relevant and that we ought at least be afforded the opportunity

15 to test that assertion by Transocean.  That's all.

16          **MS. CLINGMAN:**  Your Honor, just one brief

17 clarification is, that we're not standing on, "Is it relevant

18 or not?"  That's not the sole and determining factor here.

19          To us, it is a matter of good cause, which would

20 include, "Was there notice of this before?  Was there notice of

21 things like this?"  And we've presented jagillions of documents

22 on prior events, well control events history, good performance,

23 bad performance, everything.

24          So, but, you know, is this substantively new and

25 different and impactful and relevant, I think is a decision

1   that, at least we would propose, the Court needs to make on a

2   document-by-document basis, or give us the guidance that it's a

3   free-for-all and we'll go into our set as well.

4            THE COURT:  Okay.  Well, we'll take a look at it.

5   We've not studied what came in -- was it yesterday or the day

6   before?  So we'll take a look at it --

7            MR. WILLIAMS:  Well, let me suggest --

8            MR. NOMELLINI:  Your Honor?

9            THE COURT:  Yeah?  Yeah?

10           MR. NOMELLINI:  Your Honor, Mark Nomellini.  If I

11  could just speak up briefly, because I've spent more time than

12  I care to admit on exhibit list issues.

13           I am concerned in terms of relevance or

14  responsiveness.  You know, the parties have always been of the

15  view that, you know, we were adding relevant documents to

16  exhibit lists, but we've never had to pre-clear that with the

17  other parties.  Otherwise, that's going to add a huge -- a huge

18  amount of burden when we're doing Phase Two exhibit lists.

19           So we all make our own subjective determinations

20  of relevance; and then, you know, in terms of documents

21  contested at trial for relevance, that's another story.  But I

22  think the "adding to exhibit lists stage," once good cause is

23  met, I don't think we need to take on that extra burden.

24           THE COURT:  Well, I agree with you on Phase Two.

25           On Phase One, maybe we are using the word

1   improperly.  What I think that I mean by *relevant* is that the

2   nature of the content of the document has not previously been

3   produced so that it's duplicative of information the PSC had

4   prior to the cutoff.  But that's something I have to go through

5   and look at a on a document-by-document basis.

6                    But you're right on Phase Two.  I'm not going to

7   make any kind of pre-exhibit list determination of whether your

8   exhibit list contains solely relevant documents.

9               **MR. WILLIAMS:**  Judge, let me --

10              **MR. NOMELLINI:**  Thank you, Your Honor.

11              **MR. WILLIAMS:**  If I could just suggest this and maybe

12  save you and Mike a little bit of time:  Based on my

13  conversations with Rachel and Carter this morning, I think it

14  would be a waste of time probably to go through each of these

15  documents.

16                   I think if we'll try it one more time, and I'm

17  confident we'll be able to do it, we can narrow the universe,

18  it sounds like, pretty significantly.

19              **THE COURT:**  Okay.

20              **MR. WILLIAMS:**  There may, in the end, only be five or

21  six documents that you actually have to examine and make a

22  determination on.  So rather than go through the big book,

23  we'll get you an even smaller book jointly.

24              **MS. CLINGMAN:**  I agree completely.  I was going to

25  say the same thing.  I wouldn't take on the current list as it

1  is.

2          THE COURT:  Perfect.

3          MR. WILLIAMS:  And we'll get you that by -- do you

4  think we can do that by Tuesday --

5          THE COURT:  That's fine.

6          MR. WILLIAMS:  -- at the close of business?  Is that

7  enough time?

8          MS. CLINGMAN:  We say yes.

9          MR. WILLIAMS:  Okay.

10         THE COURT:  Okay.  Thanks.

11         MR. WILLIAMS:  Okay.  We still have the issue of the

12 depositions.

13         THE COURT:  Right.  We do.

14             So let's make our determination on the documents

15 and then decide what to do with the depositions.

16         MR. WILLIAMS:  Would you like us to provide our

17 written reasons or an explanation of why we believe the

18 depositions --

19         THE COURT:  Don't I already have a letter on that?

20         MR. WILLIAMS:  Well, you got multiple letters on

21 it --

22         MS. CLINGMAN:  Don't you want another?

23         MR. WILLIAMS:  -- but since we're cutting it down.

24         THE COURT:  Do I want more letters on that?

25         MR. WILLIAMS:  Well, you know, I'm just --

1        **THE COURT:**  If you all want to give it one more

2   round -- Duke, you're going first -- based on slim-downed

3   documents -- or based on the universe that you've agreed to

4   plus the contested documents and why you need the depositions

5   for that universe, I'm happy to go one more round with you.

6        **MR. WILLIAMS:**  Well, if you don't think it's

7   necessary.

8        **THE COURT:**  No.  I mean, if you're going to slim it

9   down.  I mean, I understand what the issue is.  I was a little

10  surprised by the length of time you thought you needed.

11       **MR. WILLIAMS:**  I mean, we're willing to -- you know,

12  we may have -- we can be flexible on that.

13       **THE COURT:**  Okay.

14       **MS. CLINGMAN:**  Your Honor, I'll put down the marker

15  that you would anticipate, which is, obviously, we are strongly

16  in opposition to depositions, particularly of people who were

17  not ever requested the first go-round, or the three who were

18  deposed for hours and hours on everything, including process,

19  safety, prior events and every other topic that could have been

20  covered.

21            But that's, I think, for -- we can do that at a

22  later time, if needed.

23       **THE COURT:**  Okay.

24       **MR. WILLIAMS:**  Two of them have been listed as live

25  witnesses.  If they're not called by the parties, we -- I mean,

1    I think the rule is that other parties are notified and we have

2    an opportunity to do that.

3            THE COURT:  Right.

4            MR. WILLIAMS:  The problem is Mr. McMahan, for

5    instance, is listed by BP as a live witness.  And the question

6    is:  Is he actually going to be there live?  He's a Transocean

7    employee.  But we'll see if we can't figure that out with them.

8            THE COURT:  Well, why don't you all have the meet and

9    confer and then why don't we do another round of letters based

10   on your discussions and where you then are.

11           MR. WILLIAMS:  Okay.  Fair enough.

12           THE COURT:  And we'll take it up.  When you tell us

13   it's under submission, we'll take it up promptly.

14           MR. WILLIAMS:  Thank you very much.

15           MS. CLINGMAN:  Thank you.  Sounds good.

16           THE COURT:  Okay.  All right.

17           MS. CLINGMAN:  Your Honor, I think there are probably

18   no more Phase Ones.  Would you mind if I'm excused?

19           THE COURT:  Not at all.

20           MS. CLINGMAN:  Thank you.  Although, the deposition

21   time and batting order is very interesting.

22           THE COURT:  Yeah.  We're ready for Monday.  I take it

23   you're defending Monday's deposition?

24           MS. CLINGMAN:  I feel sorry for the witness who was

25   the subject of that much debate, but . . .

1     THE COURT:  Good point.

2          Okay.  Thanks, Rachel.

3     MS. CLINGMAN:  Thank you.

4     THE COURT:  Hello, Rob.

5     MR. GASAWAY:  Hello, Your Honor.

6          Notwithstanding, the PSC's attempts to drive

7  spikes into BP in Phase One, we are ready to embrace the PSC's

8  new consensus-building approach and we hereby agree to the 120

9  minutes suggested allocation for Tuesday's deposition.

10     THE COURT:  Man.  Thank Andy for that fast response.

11     MR. GASAWAY:  We have been in contact with our team.

12  So I think we may be done, Your Honor.

13     THE COURT:  Okay.  Good.  Thank you.

14          All right.  Let's see.  On the issue of giving

15  me more letter briefs, let's talk about that.  When we give

16  you, say, a ten-page limitation on briefs, it's not a ten-page

17  single-spaced letter brief, that's based on a double-spaced

18  brief.  So if you're going to do a letter brief to me, that

19  translates to five pages.

20          Does everybody agree with that?  I know not

21  everybody might like it, but that's how it translates to me.

22  So when we give you a page limitation, that's how it

23  translates.  Because I think that some of us have gone over the

24  page limitation by putting it in letter brief.  And I don't see

25  any point in requiring brief briefs because I think letter

 1   briefs are more efficient, but let's all play by that rule.

 2              Okay.  So scheduling depositions.  We've taken

 3   care of Monday's deposition.

 4              Come on up, Rob.  You've got some good news for

 5   us?

 6         **MR. GASAWAY:**  I think I do, your Honor.

 7         **THE COURT:**  Okay.  Let's hear it.

 8         **MR. GASAWAY:**  Mr. Eisert sent out a new BP deposition

 9   schedule late last evening.  I'm sure that not everybody has

10   had a chance to review it.

11              We had gotten some feedback from various parties

12   saying that they would prefer it if we filled out the roster of

13   names and witnesses.  There was a feeling that it impeded

14   preparations not knowing which witnesses were going to be with

15   which topics.

16         **THE COURT:**  Correct.

17         **MR. GASAWAY:**  So we prioritized the identification of

18   witnesses and as of last night we have a complete roster.  I'd

19   like to go through the additions that we have.

20              I'm sure the parties will notice that there's

21   some TBDs that are still on our paper.  That has to do with the

22   dates that each witness will testify, and there's a couple

23   nuances on the roster, but I'd just like to quickly go through

24   the changes and tell everybody this is intended to be a

25   complete roster of BP witnesses.  We hope it's helpful for

 1  those parties.

 2           **THE COURT:**  Good.  Take us through it.

 3           **MR. GASAWAY:**  Okay.  There are changes to six

 4  different topics.  And this will just -- there will be a lot of

 5  TBDs here.

 6                But on Topic 1, we're designating Mr. Mark

 7  Patteson on Top Kill and Junk Shot.  Unfortunately, we don't

 8  have dates for Mr. Patteson, but he will be handling the Top

 9  Kill and Junk Shot aspects of that.

10                In a switch -- this goes a little bit to our

11  earlier discussion about switching one witness for another --

12  Mr. Robert Sanders will be taking the relief well aspects of

13  Topic 1.  So we had thought that Gavin Kidd would do that, but

14  it's now Robert Sanders.

15                On Topic 3, Mr. Marvin Miller will handle that

16  topic to the extent that there are relevant source control

17  events.

18                What we'd like to do is schedule a meet and

19  confer with all the parties about whether there are relevant

20  prior events.  I won't get into the nuance here, but the idea

21  was to look at prior events in the Gulf and see if we could get

22  relevant information from that.

23                Depending on how you parse the particular

24  language of the deposition topic, there may or may not be.

25  Rather than parsing language, what we'd like to do is have a

1  meet and confer with the various parties, say what those
2  relevant events would be, if he would testify, and then
3  Mr. Barr and others can tell us whether they would want that
4  testimony.
5          THE COURT:  Okay.
6          MR. BARR:  I'm agreeable.
7          THE COURT:  Good.  Thank you, Brian.
8          MR. GASAWAY:  The next new designee, Your Honor, is
9  on Topic 5 and that's Mr. Yun Wang.  Again, we're going to have
10  to get back to you on dates for Mr. Wang.
11          The next new designee is on Topic 9, Ms. Ellen
12  Williams.  Ms. Williams had been previously designated for
13  other topics, but now we're going to add Topic 9 to her list
14  and we'll get back to you with dates on that.
15          THE COURT:  Yeah.  You've also got her down for 16.
16  That was a prior designation?
17          MR. GASAWAY:  No, 16 is another new one, Your Honor.
18  I think she was previously designated for Topic 4.  So 16 is
19  also new.
20          THE COURT:  Okay.  Got it.
21          MR. GASAWAY:  Then on Topic 12, we're going to add
22  those topics which basically have to do, Your Honor, with the
23  flow rate interaction with source control.  And we talked
24  before under Topic 1 last week about how BP has to talk about
25  the, quote/unquote, factors that went into source control

1  methods.

2  So given that you added the factors onto Topic

3  1, we don't know if flow rate is a factor or not, but what

4  we're going to do is just put up the same roster of witnesses

5  and then that will be moot.

6  So whether it's a factor under Topic 1 or the

7  flow rate topic on Topic 12, they'll be under the deposition

8  and that can all be asked at the same time.

9  So the roster recreating Topic 1 will be

10  Mr. Hughes on BOP intervention, Mr. Devers on cofferdam, RITT,

11  and Top Hat.  Mr. Patteson on Top Kill and Junk Shot, and

12  Mr. Trevor Smith on BOP and capping stack, and then Mr. Sanders

13  on relief wells.  The same line-up as under No. 1.

14  And we'll, obviously, work -- we have some dates

15  for some of those people, dates to be determined for others,

16  and we'll work with the parties to get those dates on file.

17  **THE COURT:**  Perfect.

18  Okay.  The dates that you do have were

19  circulated with this letter?

20  **MR. GASAWAY:**  That's correct.

21  **THE COURT:**  So --

22  **MR. GASAWAY:**  So I'm sure the parties are going to

23  say, "There's still some holes in the letter.  Now we've got a

24  complete roster of witnesses, BP, but we need to fill out the

25  dates."  We recognize that.  Again, the parties had asked to

1  get the names of the witnesses out there quickly.  We didn't

2  withhold the names because they want to begin preparing.  Now

3  they have the names and we'll work on the dates and we'll

4  update the Court and parties next week.

5          **THE COURT:**  Very good.  Thank you.

6              Okay.  So you guys will take what Rob circulated

7  as far as the new dates that he has pinned down and recirculate

8  the calendar to everybody?

9          **MR. CERNICH:**  There's no new dates, Your Honor.

10         **MR. MAZE:**  There's no new dates.

11         **THE COURT:**  I thought you said there were some with

12 new dates.

13         **MR. GASAWAY:**  No.  They're just new witnesses without

14 dates.

15         **THE COURT:**  All right.  I thought you had filled in

16 some of the dates.

17         **MR. GASAWAY:**  No.  I think it's the same dates but

18 new witnesses.  Because we were hearing requests to know the

19 names of our witnesses.

20         **THE COURT:**  Okay.  Good enough.  Well, that's

21 helpful.  At least we've got the roster.  We'll start working

22 on dates next week, huh?

23             If you get dates before next Friday, why don't

24 you circulate them so they can be added to the list.

25         **MR. GASAWAY:**  We will, Your Honor.

60

1        THE COURT:  Great.  Thank you.

2        MR. GASAWAY:  Could I mention one other thing?

3              And I know this is a part of a larger discussion

4    that we're going to have to have in terms of how many dates for

5    particular witnesses.  And I know sometimes BP has put a

6    witness down for one day, other parties have said two days.

7              In talking internally, there's one particular

8    witness that we know we would like for a second day.  That's

9    Mr. Griffiths of the United States.  He's currently down for

10   October 16th.  Mr. Ratzel is down for the 17th and 18th.  So a

11   second date for Mr. Griffiths would double track with

12   Mr. Ratzel.  You know, from our standpoint, obviously, that's

13   doable.

14             I don't know if Mr. Griffiths has a second date

15   if the United States would want to rejigger things so there was

16   no overlap with Mr. Ratzel.  So for that very important two-day

17   deposition, we just wanted to ask for that second date and put

18   that out there quickly in case the United States had a reaction

19   to that.

20             We'll get further feedback on scheduling of that

21   sort.  We wanted to throw that one out there immediately.

22        THE COURT:  Okay.  Nat, you don't need to make any

23   snap decisions since it's just been raised, but . . .

24        MR. CHAKERES:  No, Your Honor.  I would just -- you

25   know, we will go back and look at the calendar.  He's designee

1    for one part of one topic and I think, generally speaking,

2    there are a number of topics on which BP said they wanted one

3    day and while we were putting them on the calendar we said, "We

4    think they might be two days."

5             I think it's probably the most equitable thing,

6    that if the parties think they need a certain amount of time

7    that within, probably not going outside of two days, absent

8    unbelievably extraordinary circumstances, that that's probably

9    our guess is where you're probably going to lean.

10            But we will look at Mr. Griffiths.  Again, he

11   had the fewest topics of anybody.  He had the part of one

12   topic, but we will go back and confer with BP on that.

13        **THE COURT:**  Okay.  Good enough.

14            I think I've said this before, but now that

15   we're rounding out the roster and you all are going to be able

16   to sit down and look at the designees and what they're

17   designated for, would you all please start thinking about

18   whether one day will be enough, which is the hope, whether

19   you're going to want two days with a particular witness, and

20   then start communicating with each other on that issue.

21            Don?

22        **MR. GODWIN:**  Thank you, Your Honor.  Don Godwin,

23   Halliburton.

24            When we were here last week, Judge, just to make

25   sure that we've got on it on the calendar, we talked about

1    Richard Vargo and the discussion was, "Would he be a one or
2    two-day?"  We put him down for one on August 23rd, per the
3    calendar.  We've since reached an agreement with Brian and the
4    PSC that he be a two-day, and those two days will be
5    August 22nd and 23rd, unless there's been a change with Brian
6    or the others.
7              But if they're agreeable to that, that's when
8    Mr. Vargo can be available here in New Orleans.
9              THE COURT:  Good.  Thank you, Don.  I appreciate
10   that.
11             MR. GODWIN:  One other change, Judge, is last week we
12   offered Mr. Rick Pellerin, P-E-L-L-E-R-I-N, and we suggested
13   that he be available on September 6th.
14             MR. MAZE:  He is there.
15             MR. GODWIN:  Oh, okay.  He's there.
16             MR. CHAKERES:  We missed that last week and we stuck
17   it in.
18             MR. GODWIN:  Yeah.  We see it there now.  Okay.
19             With that, Judge, we're fine with our 30(b)(6)s.
20             THE COURT:  Good.  Thank you.
21             MR. GODWIN:  You're welcome, Your Honor.
22             MR. FITCH:  Judge, Tony Fitch --
23             THE COURT:  Yeah, Tony.
24             MR. FITCH:  -- for Anadarko.
25             The third Anadarko witness will be Bob Quitzau.

1          THE COURT:  Could you speak up just a little bit,

2  please?

3          MR. FITCH:  A third Anadarko 30(b)(6) witness will be

4  Robert Quitzau, Q-U-I-T-Z-A-U.  I think most of the parties are

5  familiar with him from Phase One depositions.  He's available

6  on October 31st or November 1st.

7          THE COURT:  Okay.

8          MR. FITCH:  So just if the PSC would tell me which

9  one.

10          THE COURT:  Looks to me like the 1st would be better,

11  Brian.

12          MR. BARR:  That looks great.

13          THE COURT:  Yeah.  The 1st looks better,Tony.

14          MR. FITCH:  Okay.  That's fine with us.

15          He'll be testifying on what are topics in the

16  Anadarko notice on E, F -- I'm sorry, 1E, 1F, 1G, and also two

17  other topics, which used to be 19 and 24, but their numbers

18  have changed in the final notice.  So I propose to distribute

19  an e-mail to the usual list sometime next week and setting out

20  the information relating to witness and topics for Quitzau and

21  O'Donnell and O'Neill, who I mentioned earlier.

22          THE COURT:  Okay.  Thank you.

23          MR. FITCH:  And, finally, if you'll recall that

24  Anadarko -- or two more things.  A witness, Dawn Peyton, who is

25  our witness on topic 4A, if you'll recall, we think she's

1    repetitive from her Phase One testimony, but you've ruled

2    against us on that.  Her deposition may have to be in Houston.

3    I'll keep the parties notified of that.  She has a newborn.

4              And, finally, now that we have the final

5    deposition notice, we will conform our declaration about topics

6    on which we have no information to the new numbering in the

7    notice, get that signed by my partner, Nancy Wilms, who, as the

8    parties will recall, defends our depositions, and get that

9    distributed to the parties next week when Ms. Wilms gets back

10   in town, probably on Wednesday.

11             THE COURT:  Okay.  Good enough.

12             Scott?

13             MR. CERNICH:  Scott Cernich for the United States.

14             One follow-up on that while Tony's discussing

15   Anadarko's declarations.  We believe that those declarations

16   should be signed by an officer of the company, not by counsel

17   for Anadarko.  That would be the equivalent of providing a

18   30(b)(6) witness on the topic.  And we believe that those

19   declarations should be based and should recite the measures

20   that Anadarko took to explore whether or not it had information

21   on those topics.

22             THE COURT:  Tony, do you --

23             MR. FITCH:  Judge, that makes sense.  And Ms. Wilms

24   worked closely with Alan O'Donnell, and I expect that

25   Mr. O'Donnell, whom the parties know also, I think will be the

1  declarant.

2          **MR. CERNICH:**  Thank you, Tony.

3          **THE COURT:**  Good.  Thank you, Tony.

4                  So I don't think we're going to have any more

5  scheduling, Corey, as far as putting things on the calendar.

6  Are we, guys?  Anything new to put on?

7                  All right.  So I think you're off duty.

8          **MR. O'KEEFE:**  Wait.  Cameron.

9          **THE COURT:**  We've got a report?

10         **MR. GANNAWAY:**  Cameron and the United States have

11 been working on some additional documents that have been

12 requested of Cameron.  We had search terms submitted to us by

13 Mr. Cernich today and we'll work to produce those documents.

14 And once we've done that, we'll produce Cameron's scheduled

15 deposition date for 30(b)(6).

16         **THE COURT:**  Good enough.  Thank you.

17                 So let's go through where we're headed with

18 those -- unless, Scott, you've got something else.

19         **MR. CERNICH:**  Yes, Your Honor.  The United States

20 would request that the Court require BP to provide the dates

21 for its witnesses next week.  As we discussed on the Tuesday

22 call, BP intended to make the United States and the Court

23 happy.  Unfortunately, the United States is still not happy.

24 The United States --

25         **THE COURT:**  I'm much happier.  I got to tell you.

1    **MR. CERNICH:**  Well, I will admit that there has been

2 progress made.

3    **THE COURT:**  Yes.

4    **MR. CERNICH:**  But the United States provided all of

5 its dates, all of its witnesses.  On March 9th, as the Court is

6 aware, the United States provided dates and topics.  The Court

7 said that there would be a mutual exchange of the names of BP

8 and the U.S. designees for quantification.  That did not

9 happen, that mutual exchange.

10        The United States has been prejudiced, continues

11 to be prejudiced, not knowing the dates or the names of all of

12 BP's witnesses.  While it appears that all of the names have

13 been disclosed now, we do not have dates.  Everyone else,

14 including BP, has been able to plan accordingly based on the

15 United States' witnesses and dates.

16        Halliburton has provided dates and witnesses;

17 Transocean has provided dates and witnesses; Anadarko has

18 provided dates and witnesses; and numerous non-parties to the

19 case have also provided their dates.  We are waiting on

20 witnesses for them, but at least we have their dates.

21        We respectfully request that the Court require

22 BP to disclose the date -- provide the dates for its witnesses

23 by next Tuesday; if not, then before the working group

24 conference next Friday.

25    **THE COURT:**  Okay.  Rob, is that doable?

1          **MR. GASAWAY:**  Your Honor, as I said before,

2   obviously, we understand the United States and the other

3   parties are eagerly looking forward to the dates for all of

4   these witnesses.

5          Obviously, we understand the need for planning

6   for fitting them into the deposition schedules and attorney

7   schedules.  So we agree with the United States that, obviously,

8   getting the dates is very important and we heard what you said

9   before about, "Don't sit on the dates.  If you have updates,

10  send them out as soon as possible."

11         So this is job number one for us and we'll try

12  to get them to the Court as soon as possible, if that's

13  agreeable.

14         **THE COURT:**  Okay.

15         **MR. GASAWAY:**  Thank you.

16         **THE COURT:**  All right.  Let's see.  Next up -- Scott?

17         **MR. CERNICH:**  Your Honor, we've been hearing for

18  months now what BP is going to try to do.  We want dates with

19  the witnesses so that we can prepare for depositions that are

20  coming up.

21         **THE COURT:**  I'm with you.  I expect that we're going

22  to have them next week.  So if we don't, we will have to ramp

23  up the -- the deadline status, but I think we're going to have

24  it, so . . . I'm looking at the glass half full.

25         **MR. CERNICH:**  And one more thing, Your Honor --

 1   another topic.  I'll move on.

 2                  We hear you loud and clear regarding the brief

 3   thing.  But I would note that BP filed a ten-page single-paced

 4   letter brief last night regarding the SharePoint issue.

 5            **THE COURT:**  That may have prompted my remark.

 6            **MR. CERNICH:**  And the United States respectfully

 7   requests that it have three single-spaced pages to reply to

 8   BP's letter brief.

 9            **THE COURT:**  Granted.

10            **MR. CERNICH:**  Thank you, Your Honor.

11            **THE COURT:**  You're welcome.

12                  So, moving right along.  Let's see.  Wild Well

13   is next up on our current deposition calendar.  Any issues with

14   document production?

15                  Good.

16            **MS. HIMMELHOCH:**  Actually, Your Honor, I think we're

17   still trying to work out some PTO compliance issues.  We have

18   the documents.  We just need some assistance from them, but I

19   don't think it's anything you need to address.

20            **THE COURT:**  Good.  Thank you, Sarah.

21                  We should be in good shape for Woods Hole.

22                  Oh, I'm sorry, Jimmy.

23            **MR. WILLIAMSON:**  No, Judge.  I didn't understand that

24   last comment by Sarah, but I do agree that Wild Well, to my

25   knowledge, is not problematic.

1    THE COURT:  Yeah.  Sarah, do you want to --

2           I'm sorry.  Scott, do you want to clarify

3    Sarah's remark?

4    MR. CERNICH:  Well, we've been working with Mr. Dills

5    (phonetic) from the PSC.  Wild Well Control produced the

6    documents to the PSC for further production to the remaining

7    parties.  There are, as Sarah noted, some PTO 16 compliance

8    issues there, metadata problems, custodian problems.

9           Also, as we understand, Wild Well Control said

10   that they would produce Mr. Campbell's e-mails 14 days before

11   the deposition, and I'd just like to ensure that we're still on

12   track for that.

13   MR. WILLIAMSON:  That's what Ms. Mince told me and

14   she agreed to that.  I now understand Sarah's comment, Your

15   Honor.

16   THE COURT:  Good.

17   MR. WILLIAMSON:  When -- it's not important.  Yes, it

18   will be worked out.

19   MR. CERNICH:  Thank you.

20   THE COURT:  Thank you, both.

21          Okay.  I assume we're in very good shape with

22   Woods Hole.

23          Moving on to PENCOR.  Any issue with status of

24   document production there?  They are scheduled for

25   September 10th.

1          **MR. CHAKERES:**  Your Honor, Nat Chakeres for the
2    United States.  Those documents are in hand and have been
3    produced to the parties.
4          **THE COURT:**  Good.  Thank you.
5              If there's not an issue, we'll just pass over
6    it; if we know that there is an issue, let's discuss.
7              We had an issue last week -- Nat, you may want
8    to stay up -- for the United States, Mr. Paul Hsieh.  It's
9    H-S-I-E-H.
10         **MR. CHAKERES:**  Hsieh is how it's pronounced, Your
11   Honor.
12         **THE COURT:**  Hsieh.  Okay, Hsieh.  We've identified
13   him for Topic No. 28 and there was some issues on clarification
14   with BP.  Has that been resolved?
15         **MR. CHAKERES:**  Yes, Your Honor.  We understand
16   that -- in our mind, we've corrected the questions that BP had
17   on all of their questions.  We had some -- I'll take the blame
18   for those -- had some mistakes transcribing names and dates
19   onto the various charts.
20         **THE COURT:**  Plenty of blame to go around.  You need
21   not take it.
22             Okay.  So Isotek.  Is there any problem with
23   document production there?  Anybody know of any issues?
24         **MR. CERNICH:**  I don't believe we've received
25   documents from Isotek yet, but they have been cooperative.

1      **THE COURT:**  Good.

2      **MR. CERNICH:**  I'll also note that, and we discussed

3  this a bit, I believe, yesterday on our call, deposition

4  notices have been served on Intertek, Isotek and Weatherford,

5  along with document requests; and WOM, World Oilfield Machine,

6  a subpoena for documents has been served on WOM and it's still

7  outstanding as to whether or not a deposition will be

8  necessary.

9           In all those cases, counsel agreed to accept

10  service on behalf of their clients.  At least Intertek, Isotek

11  and WOM were also filed on File and Serve yesterday.  So all of

12  the parties should have the final -- the final notices for

13  those parties.

14           And we are making progress as far as document

15  productions from all of them and will provide those to the

16  parties when we receive them.

17      **THE COURT:**  Good, good, good.

18           Next up on my list was the issue of the ROV

19  video from Oceaneering.  Have we made any further progress on

20  those discussions?

21      **MR. CERNICH:**  Your Honor issued an order and the

22  United States is going to pay for the ROV video copies as we

23  discussed.  I would want to point out, though, that I believe

24  the order says that the United States serve the subpoena on

25  Oceaneering.  It was actually the PSC and it's one of those

 1   that was served on behalf of the parties generally.  This isn't

 2   one that the United States picked on its own to focus on.  So I

 3   just want to note that in the record.

 4             THE COURT:  Yeah.  It's noted, we'll correct it.  And

 5   that will be one that we need to discuss allocation on, huh?

 6             MR. CERNICH:  Yes, Your Honor.  We discussed that a

 7   bit last week and it sounded like it would be a long and

 8   torturous process to try to negotiate that out as to what ROV

 9   video we had or we didn't have.  So the United States is going

10   to go ahead and pay for that video.  If other parties want

11   copies of it or are interested in it, then we would expect some

12   contribution.

13             THE COURT:  Okay.  All right.

14                  Anybody who wants -- go ahead.  Come on up,

15   Alan.

16             MR. YORK:  Good morning, Your Honor.  Alan York for

17   Halliburton.

18                  On the Wild Well Control 30(b)(6), we went past

19   that just a moment ago, but our document team has let us know

20   there are a couple of technical issues relating to the

21   production of documents with Wild Well.  We're reaching out to

22   counsel and to Wild Well to try to address those.  But we just

23   wanted to put down a placeholder that there are some technical

24   issues, perhaps, with the production of those documents.

25             THE COURT:  Good.  Thank you.

1            On the ROV video, if anybody wants copies of

2    that ROV video, please let the United States know because you

3    will be sharing costs.

4            Okay.  I think --

5            MR. CERNICH:  While I assume there won't be many

6    parties clamoring for that video, if they would let us know

7    quickly if anyone is interested because Oceaneering can provide

8    a second copy at a lower price and more efficiently than it

9    would be to try to reproduce the one copy that's received by

10   the United States.

11           THE COURT:  When are they doing this for you?  Do you

12   know?

13           MR. CERNICH:  I'll have to check, Your Honor.

14           THE COURT:  Why don't you all let Scott know by the

15   close of business on Tuesday if you all want to participate in

16   the ROV video sharing process.

17           MR. CERNICH:  Thank you.

18           THE COURT:  Okay.  I am down to *other*.

19           MS. HIMMELHOCH:  I have one little advisory for you,

20   Your Honor.

21           THE COURT:  Okay.  Go ahead, Sarah.

22           MS. HIMMELHOCH:  We've received a subpoena from the

23   Mexican states having to do with their efforts to brief the

24   jurisdictional issues, as I understand it.  The original

25   subpoena we received is very, very broad, and I'm engaged in

1  meet and confer efforts with the Mexican states on the breadth

2  of that subpoena.

3          I'm hopeful that we'll be able to work it out,

4  but given that there's a short return date of August 24th, it

5  may be something that I'm asking you for a call between you, I

6  and the counsel for the Mexican states in the relatively near

7  future on.

8          THE COURT:  Not a problem, and thank you for alerting

9  me to it.  We have to move through all of that quickly.

10          Rob?

11          MR. GASAWAY:  Your Honor, one comment on that.

12  Obviously, BP is interested in the general Mexican states

13  issue, so if we can be kept apprised on that.

14          I just wanted to say in terms of a housekeeping

15  issue, I wanted to let Transocean know that in some of the

16  recent discussions, it appears that the Transocean 30(b)(6) was

17  never formally finalized and served.  We're going to pick up

18  that slack and formally serve with you the a 30(b)(6) notice

19  we've all been working on today.

20          Obviously, from a cost standpoint, not one dime

21  from BP to Transocean in terms of the cost, but we will be

22  taking the administrative task of just getting that out today.

23          THE COURT:  Okay.  Good enough.  Thank you for

24  clarifying that.  I thought it had been long ago issued.

25          MR. CERNICH:  And I believe it was yesterday, Nat,

1   the United States served -- formally served BP's 30(b)(6)

2   notice.

3           **THE COURT:**  Good.  Thank you.

4           Anthony?

5           **MR. IRPINO:**  Judge, Anthony Irpino for the PSC.

6           We have agreement from the parties on the

7   proposed pretrial order relative to third-party confidentiality

8   logistics.

9           **THE COURT:**  Good.  Thank you.

10          **MR. IRPINO:**  I think everybody's in agreement that

11  the address that we've used is DSC2179@liskow.com.  I've left a

12  blank there for the Court if you wanted to add any other

13  addresses or whatever.

14          I will e-mail it around in Word version.  It's

15  already been sent around to the parties.  My thanks to Alan

16  Pixton, Jenny Martinez, Carter and Amber.  Everybody was

17  wonderful and we have it done.  I have physical copy for you

18  here, but I will e-mail a Word version later.

19          **THE COURT:**  Perfect.  Thank you.  That's the best

20  report we've had all day.  Thank you, Anthony.

21          Any other *others*?

22          All right.  Going once --

23          **MR. IRPINO:**  Do we have a location --

24          **THE COURT:**  Well, we're waiting to hear about that.

25          **MR. IRPINO:**  -- for the 16th?

1          **THE COURT:**  We're waiting to hear about that.

2          **MR. IRPINO:**  That's a little disconcerting.

3          **THE COURT:**  It will come out by e-mail.  I'm certain

4    we will hear soon.  I'm certain.

5                    Okay.  Going, once, twice, thank you.  Have a

6    good weekend.

7                    (WHEREUPON, the proceedings were concluded.)

8                                    *****

9                             <u>CERTIFICATE</u>

10         I, Jodi Simcox, RMR, FCRR, Official Court Reporter

11   for the United States District Court, Eastern District of

12   Louisiana, do hereby certify that the foregoing is a true and

13   correct transcript, to the best of my ability and

14   understanding, from the record of the proceedings in the

15   above-entitled and numbered matter.

16

17

18          S/ Jodi Simcox, RMR, FCRR
             Jodi Simcox, RMR, FCRR
19           Official Court Reporter

20

21

22

23

24

25