1

1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF LOUISIANA

3

4

5   IN RE:  OIL SPILL BY THE OIL RIG      *   10-MD-2179-CJB-SS
               *DEEPWATER HORIZON* IN THE      *
6          GULF OF MEXICO ON               *
           APRIL 20, 2010                  *   September 21, 2012
7                                          *
                                           *
8   Applies to:  All Cases                 *   9:30 a.m.
    * * * * * * * * * * * * * * * * * * *

9

10

11               WORKING GROUP CONFERENCE
          BEFORE THE HONORABLE SALLY SHUSHAN
12           UNITED STATES MAGISTRATE JUDGE

13

14  Appearances:

15  For the Plaintiffs:          Levin Papantonio Thomas Mitchell
                                    Rafferty & Proctor
16                               BY:  BRIAN H. BARR, ESQ.
                                 316 South Baylen Street
17                               Suite 600
                                 Post Office Box 12308
18                               Pensacola, Florida 32591

19

20
    For the Plaintiffs:          Williams Law Group, LLC
21                               BY: CONRAD "DUKE" WILLIAMS, ESQ.
                                 435 Corporate Drive
22                               Suite 101
                                 Houma, Louisiana 70360
23

24

25

JODI SIMCOX, RMR, FCRR – OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

1    APPEARANCES CONTINUED:

2    For the Plaintiffs:          Lewis, Kullman, Sterbcow &
                                    Abramson
3                                 BY:   PAUL M. STERBCOW, ESQ.
                                  2615 Pan American Life Center
4                                 601 Poydras Street
                                  New Orleans, Louisiana 70130
5

6

7    For the Plaintiffs:          Breit Drescher Imprevento & Walker
                                  BY:   JEFFREY BREIT, ESQ.
8                                 1000 Dominion Tower
                                  999 Waterside Drive
9                                 Norfolk, Virginia  23510

10

11

12   For the Plaintiffs:          Irpino Law Firm
                                  BY:   ANTHONY IRPINO, ESQ.
12                                One Canal Place
                                  365 Canal Street
13                                Suite 2990
                                  New Orleans, Louisiana  70130
14

15

16

     For the Federal              U.S. Department of Justice
17   Government Interests:        Torts Branch, Civil Division
                                  BY:   SARAH D. HIMMELHOCH, ESQ.
18                                450 Golden Gate Avenue
                                  Rm. 7-5395
19                                San Francisco, California 94102

20

21

22

23

24

25

1   APPEARANCES CONTINUED:

2   For the United              Environmental Enforcement Section
    States of America:          U.S. Department of Justice
3                               BY:  A. NATHANIEL CHAKERES, ESQ.
                                BY:  SCOTT CERNICH, ESQ.
4                               P.O. Box 7611
                                Washington, D.C. 20044
5

6
    For the State of            Attorney General of Alabama
7   Alabama:                    BY:  COREY L. MAZE, ESQ.
                                500 Dexter Avenue
8                               Montgomery, Alabama 36130

9

10  For BP:                     Kirkland & Ellis
                                BY: ROBERT R. GASAWAY, ESQ.
11                              655 Fifteenth Street, N.W.
                                Washington, D.C. 20005
12

13
    For BP:                     Kirkland & Ellis, LLP
14                              BY:  J. ANDREW LANGAN, ESQ.
                                BY:  MARK J. NOMELLINI, ESQ.
15                              300 N. Lasalle
                                Chicago, Illinois 60654
16

17
    For Transocean:             Frilot, Partridge, Kohnke
18                                & Clements
                                BY:  KERRY J. MILLER, ESQ.
19                              1100 Poydras Street
                                Suite 3600
20                              New Orleans, Louisiana 70163

21

22  For Transocean:             Sutherland Asbill & Brennan, LLP
                                BY:  CARTER L. WILLIAMS, ESQ.
23                              BY:  RACHEL G. CLINGMAN, ESQ.
                                1001 Fannin Street
24                              Suite 3700
                                Houston, Texas 77002
25

1   APPEARANCES CONTINUED:

2   For Transocean:                Sutherland Asbill & Brennan, LLP
                                   BY: DAVID A. BAAY, ESQ.
3                                  1001 Fannin Street
                                   Suite 3700
4                                  Houston, Texas 77002

5

6
    For Halliburton:               Godwin Ronquillo, PC
7                                  BY:  DONALD E. GODWIN, ESQ.
                                   1201 Elm Street, Suite 1700
8                                  Dallas, Texas 75270

9

10
    For Anadarko:                  Bingham McCutchen, LLP
11                                 BY:  WARREN ANTHONY FITCH, ESQ.
                                   2020 K Street NW
12                                 Washington, DC 20006

13

14
    Official Court Reporter:       Jodi Simcox, RMR, FCRR
15                                 500 Poydras Street
                                   Room HB-406
16                                 New Orleans, Louisiana 70130
                                   (504) 589-7780
17                                 Jodi_Simcox@laed.uscourts.gov

18
    Proceedings recorded by mechanical stenography using
19  computer-aided transcription software.

20

21

22

23

24

25

# I N D E X

Page

SHOW-N-TELL                                              7

TRANSOCEAN MOTION FOR PROTECTIVE ORDER                   8

COURTHOUSE SPACE FOR TRIAL OF PHASE ONE                 10

OTHER PREPARATIONS FOR TRIAL OF PHASE ONE               10

INSPECTION OF BOP, CAPPING STACK AND EQUIPMENT          15

DEADLINE FOR BOP TESTING                                18

PHASE TWO DOCUMENT PRODUCTION                           19

DPP ENTRIES ON PRIVILEGE LOGS SERVED AFTER 8/31         19

DPP ENTRIES ON PRIVILEGE LOG NOS. 58 AND 59             19

CUSTODIAL FILE PRODUCTION                               21

THIRD PARTY PRODUCTION                                  21

UNSCHEDULED FACT DEPOSITIONS                            26

THIRD PARTY FRTG SUBPOENAS                              26

COAST GUARD CUSTODIAL METADATA                          30

LENGTH OF DEPOS/ALLOCATION/SEQUENCE OF EXAM TIME        34

OTHER DEPOSITION MATTERS                                34

SCHEDULED FACT DEPOSITIONS                              41

**PROCEEDINGS**

**(September 21, 2012)**

\*\*\*\*\*\*

**(COURT CALLED TO ORDER)**

1    
2    
3    
4    
5    **THE DEPUTY CLERK:**  All rise.

6    **THE COURT:**  Good morning.  Have a seat.

7    Corey, could I see you?

8    **MR. MAZE:**  Absolutely.

9    **THE COURT:**  Phone participants?

10   **MS. HIMMELHOCH:**  Good morning, Your Honor.

11   **THE COURT:**  Hey, Sarah, how are you doing?

12   **MS. HIMMELHOCH:**  So far so good.

13   **THE COURT:**  Good, Sarah.  Good.

14   Okay.  Well, let's get started.  Mr. Maze, could

15   you put photo No. 1 up?

16   **MR. MAZE:**  Photo No. 1.

17   **THE COURT:**  This is the flyover of the last shuttle

18   over Michoud this week.  It's not as clear on the projector as

19   we would like, but if you all want to come up and take a look

20   at it after the conference, quite interesting.

21   And then, Mr. Maze, could we see photo No. 2?

22   This is a picture of our intrepid Captain

23   Englebert at NASA with the shuttle behind.  And you have to

24   admit she looks like she's off of Star Trek.  She's quite the

25   character, huh?

1              So, anyway, she invited us out to go, but Mike

2  and I decided you all had made matters too busy for us to

3  participate.  So we declined the invitation.

4              Okay.  Let's get going.  Let's see.  First up on

5  my list today is Phase One outstanding issues.  Transocean has

6  a motion for protective order and we were supposed to hear from

7  the PSC when they would like to file their opposition and

8  then --

9              Oh, it's -- oh, I don't believe it.  Where have

10 you been, Mr. Sterbcow.

11         **MR. STERBCOW:**  I've been on an extended leave of

12 absence, Your Honor.

13         **THE COURT:**  Have you?

14         **MR. STERBCOW:**  Yeah.

15         **THE COURT:**  Mental?

16         **MR. STERBCOW:**  They put me away, but I'm back now.

17         **THE COURT:**  Mental leave?

18         **MR. STERBCOW:**  Yeah, I'm okay now.  It's all okay.

19         **THE COURT:**  All right.  Have you spoken to

20 Transocean?

21         **MS. HIMMELHOCH:**  Is the shuttle taking off again?

22         **THE COURT:**  Yeah.  Thank you, Sarah.  That's a very

23 good question.

24              Phone participant who is either out in the wind

25 or out in traffic, could you put your phone on mute for us,

1  please?

2          **MR. BREIT:**  That was Jeffrey, and I'm under the

3  Oceana Air Base in Virgina Beach, which Duke would appreciate,

4  but I'll figure out how to do mute here in a second.

5          **MR. DUKE WILLIAMS:**  Could we just hang up on him?

6          **THE COURT:**  Duke has suggested we just hang up on

7  you, so either mute it --

8          **MR. BREIT:**  Well, that will do.  Judge, save me a

9  seat at trial, please.

10         **THE COURT:**  So figure out how to mute it.  That would

11 be good.  But that was quite interesting in view of our shuttle

12 discussion.

13         **MR. BREIT:**  Yes, that's why I did it.

14         **THE COURT:**  Okay.  Paul, what you got?

15         **MR. STERBCOW:**  In terms of the opposition, we intend

16 to file one on behalf of the PSC on Monday.

17         **MR. DUKE WILLIAMS:**  Monday.

18         **THE COURT:**  All right.

19                 And, Transocean, when would you like to reply?

20         **MR. BAAY:**  I think Carter Williams is on the phone

21 for this.  This is David Baay for Transocean, Your Honor.

22         **MR. CARTER WILLIAMS:**  Good morning, Your Honor.  If

23 we could have, you know, until the end of next week, I think

24 that would be fine.

25         **THE COURT:**  Okay.  No problem.

1           Now, Duke thinks it's a long time.

2           **MR. CARTER WILLIAMS:**  Well, if you want us, we

3  reply -- if we get it Monday, we can reply Wednesday and maybe

4  take it up at the next conference.

5           **MR. DUKE WILLIAMS:**  That's perfect.

6           **THE COURT:**  That sounds good to Duke.

7           **MR. CARTER WILLIAMS:**  Okay.  We'll do that.

8           **THE COURT:**  Okay.  Thank you.

9           All right.  We are checking on courthouse space.

10  We've had two dropouts as far as space goes.  We have had GSA

11  tell us that the seventh floor availability for space is gone.

12  So we're trying to work out space.  I can't guarantee it to

13  everyone, but we're going to use our best efforts.

14           So we'll, hopefully, get an update to you next

15  Friday on what we've been able to scrounge up.  If we can't get

16  it all, then those people with offices in the immediate

17  vicinity might be the victims of the GSA reshuffle.  But don't

18  panic yet.

19           What else do we want to cover?  Bobo, thank you

20  for taking the initiative on getting that memo out.  Most

21  helpful.  We looked at it this week.

22           **MR. STERBCOW:**  Your Honor, what we were going to

23  suggest is that we give everybody a chance to digest it.  If

24  anybody has any comments or wants to get together with us,

25  we're happy to do it.

1              And from that effort -- I mean, I can tell you

2    the PSC feels like 90 percent of this stuff has been covered

3    and we don't need to rehash what's been done.  Having said

4    that, if there are issues, we're happy to talk, as long as we

5    get to the end of the discussion quickly so we all know where

6    we're going.

7              **THE COURT:**  I agree.  And I would say that the

8    percentage is higher than 90.

9              **MR. STERBCOW:**  Excellent.  I was just trying to be

10   conservative.

11             **THE COURT:**  Okay.  And if you turn around, you will

12   see that Andy Langan is in line to comment on your comment.

13             **MR. LANGAN:**  Your Honor, Andy for BP.

14             We are grateful to Bobo and the PSC for putting

15   this together.  We will have some comments.  And we were hoping

16   to have an opportunity -- it sounds like we're going to have

17   one -- to maybe prepare some modest suggestions to what's been

18   done.  There might be some additional points to make.

19             We don't necessarily agree with how everything's

20   been characterized, and we can talk that through.  But in terms

21   of advancing the ball, the ball's clearly been advanced and

22   we're grateful for that as well.

23             **THE COURT:**  Absolutely.  Very helpful.

24             **MR. LANGAN:**  All right.  So maybe, like, by this time

25   next week, we'll have produced and all commented on the draft

1   or something.

2            THE COURT:  Perfect.

3            MR. STERBCOW:  We'll just bring it up again next

4   Friday.

5            THE COURT:  Yeah.  Sounds good.

6            MR. LANGAN:  Just a -- for instance, with the

7   dismissal of some parties now that have occurred, will that

8   change the fact witness list in this sort of will call fact

9   witness list?  I mean, that's an issue that's out there.

10            Because, as Bobo's memo points out, I think the

11   Court contemplated that if somebody was listed as a will call,

12   there was an obligation to produce.  Is that still going to be

13   the case for dismissed parties?  I mean, there's some issues

14   like that.  And the same with experts.

15            THE COURT:  Yeah.  That's absolutely right, and so

16   let's raise those issues and get everybody's thought process

17   going.

18            When you say that, you know, it wouldn't be bad

19   if other parties were not at the table in January as well.

20            MR. LANGAN:  I gather -- I take your point there.

21            THE COURT:  Yeah.  So, you know . . .

22            Look, Mr. Godwin's not listening.

23            MR. GODWIN:  I'm listening.  I just thought it was

24   better to keep my head down, Judge.

25            THE COURT:  Well, it was noticeably down, Don.

1        **MR. GODWIN:**  But I was listening, Judge.

2        **MR. STERBCOW:**  Thank you, Judge.

3        **MR. GODWIN:**  But I do agree with you, Judge, that a

4   dismissal would have us not at the table in January.

5        **THE COURT:**  Well, yeah, that's right.  There's

6   different ways to skin that cat, though, you know.  So there

7   you have it.

8             I still, for some reason, have a memo from Corey

9   on dragon boat racing up on my desk.

10        **MR. MAZE:**  Did I have a deadline for a memo?

11        **THE COURT:**  On dragon boat racing.

12        **MR. MAZE:**  Oh, you have that.  Yes, I gave that to

13   you.  It's still up there?

14        **THE COURT:**  Yes.  In the pile of things I wanted to

15   talk to everybody about.

16             Okay.  So I think we've discussed as much as we

17   want to discuss today about further preparation for Phase One.

18   We'll take it up again next week after we've heard from BP.

19             (MUSIC PLAYING FROM A PHONE PARTICIPANT.)

20        **THE COURT:**  Okay.  Who was that?

21        **MS. HIMMELHOCH:**  I thought that was you announcing

22   the completion of the discussion.

23        **THE COURT:**  No.  I thought -- and, Sarah, I thought

24   that was you waiving the flag on behalf of the United States.

25        **MS. HIMMELHOCH:**  Well, I don't usually do it with

1  musical accompaniment.

2       **THE COURT:**  Well, that's exactly correct.  Let's see

3  who's on the line that I can guess.  Let's see here.  It could

4  be Rachel Clingman, but I would bet you it is Mr. Jeff Breit.

5       **MS. CLINGMAN:**  No, Judge.  I did stand up and salute.

6  I thought it was you also.

7       **THE COURT:**  Mr. Breit, are you on the line?

8       **MR. BREIT:**  I am still on the line.  I didn't know

9  how to un-mute.  But I did not play a band in here.  It was

10  just jets.

11       **THE COURT:**  Okay.  All right.  It's a nice touch,

12  whoever did it.

13       **MR. MILLER:**  Your Honor, it's Kerry Miller, and I

14  promise it wasn't me, but I have a Phase One question following

15  up from Andy Langan's comment.

16       **THE COURT:**  Okay.

17       **MR. MILLER:**  And that is:  I think Andy's, you know,

18  right to point out the fact and expert witness list.  And I had

19  planned to walk down, but I got stuck on another call, and,

20  frankly, my office is nice and cool, so I'm staying here.

21             And I'm looking at fact and expert witness lists

22  that were filed back on February 24th, 2012.  It's document

23  No. 5829.  And it could be helpful maybe next week if we get

24  that document out because it helps focus you on who the

25  witnesses are and who the associated party is and whether or

1  not that party is dismissed and then, ultimately, whether we

2  can scratch those witnesses off the list.

3          THE COURT:  Okay.  We'll undertake to get that out

4  this afternoon.

5          MR. MILLER:  Sounds good.

6          THE COURT:  All right.  Anything else on that issue,

7  guys?  Anybody have any bright ideas or want to comment?

8               All right.  Back to Phase Two.

9               The equipment is in the climate-controlled

10  viewing area.  Captain Englebert says to remind you all that

11  that means that the pipes, the rams, the bonnets, the capping

12  stack gate valves are now inside and very nicely laid out for

13  easy examination.  This is your very, very best chance for a

14  last inspection.

15               So if you want to come out, if you want people

16  on your team to come out, this is the time.  It will be

17  available through October 5th.  If you want to go, make

18  appointments with Captain Englebert.

19               We've thought about the issue of whether or not

20  Judge Barbier should take advantage of this viewing

21  opportunity.  We don't want an en masse bus ride out there.

22  What we would propose to do would be as follows:

23               If Judge Barbier wants to go out, he would be

24  accompanied by Captain Englebert.  Captain Englebert would

25  point out the pieces of equipment to him with no editorial

 1   comment and that would be the scope of the inspection.

 2             That way he would not have to be accompanied by

 3   masses of attorneys and experts, et cetera, but would have an

 4   idea of the scope and size of the equipment so that when you

 5   all present expert testimony, models and pictures, he might

 6   have a better idea of what we're talking about.

 7             Would you all, please, think about that?  And I

 8   would ask that maybe by the close of business on Tuesday, you

 9   let us know whether you have an objection to that taking place.

10   If there's an objection, it probably won't take place, is kind

11   of how our thinking is going right now.

12             Okay.  But it would be really that simple.

13   We've had a request for Admiral Allen to go out next Tuesday to

14   look at the equipment.  It's my understanding, based on an

15   e-mail that we got this morning, that will take place after his

16   deposition.

17             His deposition is scheduled for when?

18             **MR. CHAKERES:**  His deposition is Monday/Tuesday.

19             **THE COURT:**  Monday/Tuesday.

20             **MR. CHAKERES:**  We don't want to mislead people that

21   he's not going to be in his deposition.

22             **THE COURT:**  He will be in his deposition, but he has

23   requested one last opportunity, in climate-controlled

24   conditions, to go out there and look at it.  I, personally,

25   have no problem with that; but if anyone does have a problem,

 1   please let me know by close of business today, I guess.

 2              Captain Englebert will be there to escort him,

 3   and that will, again, be the scope of his review.  He just

 4   wants to go out and take a look.

 5              Okay.  Do we have anything to report on the

 6   laser scan issue?

 7              Good morning, Rob.

 8          MR. GASAWAY:  Good morning, Your Honor.

 9          THE COURT:  How are you?

10          MR. GASAWAY:  I'm doing good.

11              Good morning.  Rob Gasaway for BP.

12              On the laser scan issue, Your Honor, we're going

13   to start on Monday the 24th using our hand-held scanner.

14   Nothing more to report there.  We're just going to be

15   proceeding according to the protocol we already submitted.

16              I did also want to mention two timing issues

17   with respect to the destructive testing of the materials that

18   we're taking from the riser, et cetera.

19              First of all, we'd like to get that protocol in

20   to the Court sooner rather than later, and the parties.  We're

21   working on that now.  We think there will be about 100 samples

22   or so.

23              And so this might be an issue where, just for

24   purposes of informing everybody what the protocol looks like,

25   if we finish that up late today or on Saturday, can we have

1  dispensation from e-mail-free Saturday just for purposes of
2  disseminating that to the Court and the parties?
3          THE COURT:  Yeah.  I think that's fair.  Nobody will
4  be offended by that?
5              Okay.  Yes.
6          MR. GASAWAY:  Okay.  So it'll just be the protocol.
7              And then, you know, because it's coming in --
8  the protocol is coming in a little bit later than we had
9  originally hoped, we are going to be proposing to start the
10 actual work on October 8th.  So that will give people a little
11 bit more time to comment on the protocol.
12             Again, there will be about 100 samples or so.
13 We're looking at the final number.  So we did want to give
14 people adequate time look at that protocol when it comes in on
15 Saturday, or shortly thereafter.
16         THE COURT:  Okay.  Yeah.  I did get an update from
17 Captain Englebert on that this week.  She said that you all
18 were being very methodical in your review and she has no
19 problems with your proposal.  So that's good.
20         MR. GASAWAY:  Okay.  Excellent.  Thank you, Your
21 Honor.
22         THE COURT:  Thank you.
23             Okay.  We all know -- oh, we do have a
24 modification to the deadline for testing of the equipment out
25 at Michoud.  The captain tells us that she will be unavailable

1    beyond Thursday, October the 25th.  So we're going to move that

2    date forward a little bit, and I hope that doesn't cause anyone

3    any problems.  So instead of the 31st, it will be the 25th.

4              All right.  Phase Two document production.  I

5    feel like we're making some serious progress.  Mike and I have

6    been working hard; you guys have been working hard.  I think

7    everybody knows what the schedules are for in camera

8    submissions.  No need to cover that.

9              Let's see.  On DPP entries on privilege logs

10   served after August 31st, we have not received a list of

11   entries or privilege logs.

12        **MR. O'KEEFE:**  No, we did get those, Your Honor.

13        **THE COURT:**  We did get them?

14        **MR. O'KEEFE:**  On 58 and 59.

15        **THE COURT:**  Oh, 58 and 59, we got them.  I'm sorry.

16        Sarah, never mind.

17        **MS. HIMMELHOCH:**  Okay.  Because I was sitting at

18   attention.

19        **THE COURT:**  Okay.  Well, relax again.

20        I do have a question for you, though.

21        **MS. HIMMELHOCH:**  Yes.

22        **THE COURT:**  At some point we're going to reach the

23   end of the privilege log production by the United States;

24   right?

25        **MS. HIMMELHOCH:**  God willing and the creek don't

1 | rise, yes.

2 |      **THE COURT:**  Okay.  Can you, per chance, give us a

3 | projection on when you think that might be?

4 |      **MS. HIMMELHOCH:**  Your Honor, I think that we are done

5 | with the exception of clawback lists and potentially some

6 | additional de-corrupted files as we sliced back the custodians

7 | who have been designated as 30(b)(6) witnesses.

8 |      So whatever comes from this point forward, I

9 | anticipate being very small and would be complete by 21 days

10 | before the last 30(b)(6) U.S. designee.

11 |      **THE COURT:**  Well, that's a good report.  And so it's

12 | really just cleanup, huh?

13 |      **MS. HIMMELHOCH:**  Yes.  At this point we believe we're

14 | in the cleanup phase.  And we have -- we started with the

15 | things we thought were most likely to generate large quantities

16 | of potential problems and now we're down to things where I

17 | think it's a problem and then we examine it and it's not and we

18 | don't have to do a log or identify new documents.

19 |      So I anticipate that whatever comes out now in

20 | terms of logs will be very small and any deliberative process

21 | privilege assertions we make will be on documents that are

22 | parts of e-mail chains that have already been on previous logs

23 | and things like that.

24 |      **THE COURT:**  Good.  Okay.  That sounds good.

25 |      All right.  Anything to report or are there any

1    issues on the custodial file production?  If there's not, I'm

2    happy.

3                 Good.

4                 Any update on third-party production of

5    documents, most importantly University of California?

6                 **MR. GASAWAY:**  Good morning, Your Honor.  Rob Gasaway

7    for BP.

8                 Let me run this down, I guess, starting from the

9    conversation that we had with the Court on Monday.  And the

10   first point was that was a very productive conversation.  That

11   really got the ball rolling.  We had a follow-on conversation

12   on Tuesday.  And on Wednesday, Professor Leifer tried to send

13   all of the documents that we were interested in, including the

14   30,000-some e-mails for Federal Express delivery by hard drive

15   on Thursday morning.

16                The problem came in on Thursday morning when

17   they went to our vendor, E-Docs.  As you know this drill from

18   other things, what they do is they look at the data, they run

19   search terms, they try to see what's relevant and not relevant

20   and then they produce it to us.

21                When they opened the disk drive that they got

22   from Professor Leifer, it turned out that not 31- or 32,000

23   documents, but only 1,700 got there.  And, you know, right now

24   we have no idea why that is.  Professor Leifer is on travel.

25   We're scrambling back with the University of California.

1           We have practically zero confidence that this is
2   going to be an issue that's going to be resolved quickly.  I'm
3   sure it's some technical issue where he was trying to copy
4   32,000 and only 1,700 of them got through.
5           What we would propose is a couple of things to
6   be determined after the issue is resolved and we get all of the
7   32,000 e-mails, which, again, are over-inclusive.  We've got to
8   run search terms.
9           Counsel for the United States said last week
10  that they didn't want to delay the Possolo deposition.  We
11  agree with that.  We think that one of two things, or both,
12  would be appropriate depending on what we get:  Either leaving
13  the record open at the Possolo deposition for follow-up on
14  those documents and/or a deposition of Professor Leifer
15  himself.
16          You remember that we originally requested the
17  deposition; you said to come back to the Court after all the
18  documents were in.  And this will be the last group documents.
19  So that was going to be ripe anyway.
20          And once we get this technical issue resolved,
21  we will take a look at, you know, Professor Leifer and then the
22  other five people whose documents we already have and see which
23  of those we need depositions for.
24          But I don't think it's productive for us to say,
25  because right now, again, we haven't seen any e-mails, we don't

 1  even know how many of them are relevant or not, and we don't
 2  know what they say.
 3          THE COURT:  Okay.  Good enough.  Thank you.
 4          MR. GASAWAY:  Thank you, Your Honor.
 5          THE COURT:  Anybody from the U.S. want to comment?
 6          MS. HIMMELHOCH:  I'm sure someone in the room will
 7  comment on the Possolo deposition, but I just do want to note
 8  for the record that we did collect from Professor Leifer as
 9  part of the United States production of documents.
10          So the corpus of documents that were within the
11  United States' possession, custody or control, or arguably so,
12  with respect to Dr. Leifer's work on the FRTG have been
13  collected and produced long ago.
14          THE COURT:  Right.  And I'm sure --
15          MS. HIMMELHOCH:  And that should go into any calculus
16  analyzing what goes -- what happens going forward with respect
17  to the additional production from the university directly.
18          THE COURT:  Okay.  Good.  And I'm sure that BP's
19  going to take that into consideration as well.
20          MR. CHAKERES:  Your Honor, Nat Chakeres for the
21  United States.
22          With respect to the Possolo deposition, you
23  know, we've clarified over a series of communications with BP
24  this week that that deposition is going to cover the work that
25  individuals of Possolo's organization missed-performed [*SIC*]

1  and it's not going to go into additional uncertainty analysis

2  that Mr. Leifer performed.

3          Any interaction that Professor Leifer-- excuse

4  me, Dr. Possolo had, it's in Dr. Possolo's file.  It was

5  produced 21 days before his deposition.  We would object to

6  leaving that deposition open.  We want to, you know, work with

7  BP to make sure they have an opportunity to depose all the

8  witnesses as needed.

9          But I think on this one, we're not seeing a need

10  to call Dr. Possolo back.

11          THE COURT:  Okay.  Well, everybody knows my rule:

12  For good cause shown, we'll consider anything.  Is that a fair

13  rule?

14          Okay.  But I appreciate you all working together

15  to make sure that the depo goes forward, we don't upset that

16  apple cart.  And after the fact, we can figure out what to do.

17          Good morning.

18          MR. CERNICH:  Good morning, Judge Shushan.

19          THE COURT:  How are you today?

20          MR. CERNICH:  Good.  You?

21          THE COURT:  It's Friday.

22          MR. CERNICH:  You're here right?  It's Friday.

23          Just a couple of other updates on document

24  productions.  Intertek, those documents have -- the issues

25  there have been resolved.  And I think it's on the Court's

1   working order -- last working group order from last week --

2        THE COURT:  Uh-huh.  Right.

3        MR. CERNICH:  -- but November 1st is the deposition

4   for Intertek, just so we're clear on that.

5        THE COURT:  Right.

6        MR. CERNICH:  Wild Well Control, we're still working

7   on the documents there.  We received an overlay from Wild Well

8   Control.  I know Halliburton's also been working with Wild Well

9   Control.  There's still some additional issues, and the

10  metadata for the paper production is still outstanding.  So

11  we're still trying to work through those.

12           I don't know if Alan has any better information

13  than me at the moment?

14        THE COURT:  No.  He's indicating no.

15        MR. CERNICH:  Great.  Thank you.

16           Stress Engineering, we have their documents.

17  We're taking a look at the production to make sure that

18  that's -- that it's complete and we have what we need.

19           While I'm here, I can talk about the deposition

20  scheduling for those, if you want --

21        THE COURT:  That would be great.  Yeah.

22        MR. CERNICH:  -- or would you prefer to hold off on

23  that?

24        THE COURT:  No.  We might as well cover that.

25        MR. CERNICH:  Okay.  Stress Engineering has asked

1  for, basically, ten depositions in seriatim for their 30(b)(6)

2  because they had 10 different engineers who headed up the 10

3  different modeling efforts that they performed.

4                    We don't have any particular objection to that,

5  but we're trying to find -- they want to do them all in -- over

6  the course of a week or two, one day after the other.  We're

7  not clear whether they're looking at doing more than one on a

8  particular day.  So we'll come back to the Court with that.

9  That will probably be sometime in the second half of October,

10  but we'll get back to you on dates for that.

11                    THE COURT:  Okay.  Good.

12                    MR. CERNICH:  And then as far as Cameron goes, we've

13  set aside November 15th and 16th for the Cameron deposition.

14                    THE COURT:  Great.  Perfect, perfect.  I think that

15  gets us up to snuff.

16                    MR. CERNICH:  I think so.

17                    THE COURT:  Yep.  Thank you.  I appreciate it.

18                    All right.  Let's see.  We had the issue come

19  up -- and, Sarah, I think this is you.  You raised the issue

20  with us -- about third-party FRTG subpoenas and whether it is

21  sufficient for the United States just to provide notice of

22  third parties' documents and the retention of third parties and

23  your ability to withhold documents.

24                    You raised that with us this week.

25                    MS. HIMMELHOCH:  Yes.  In the letter I sent

1    containing the statement of -- well, let me put a little

2    background on it just to make sure we're all talking about the

3    same thing.

4             **THE COURT:**  Yes.

5             **MS. HIMMELHOCH:**  When we were talking about the

6    United States' concerns regarding BP's subpoena to the third

7    parties, one of the issues we raised was the date range covered

8    by the subpoena and our concern that it would result in the

9    third party producing documents that were generated at the

10   direction of the United States as part of an expert or

11   consulting agreement for purposes of the litigation rather than

12   for purposes of the response.

13             And that we felt that being obliged to log work

14   done at the direction of counsel, but that were not direct

15   communications of counsel, would provide BP with insight into

16   our litigation strategy, and that that seemed to be an unfair

17   advantage and unnecessary to meet BP's agreement -- desire for

18   factual information about the work that these FRTG members did.

19             What I understood our agreement to be as a

20   result of that is reflected in the e-mail exchange that I

21   attached to my letter to you.  Which was my understanding was

22   that the agreement between BP and U.S. was we would not be

23   required to produce those documents and we would not be

24   required to log those documents, but we would need to submit to

25   the Court an in camera statement saying what we -- the

1    categories of what we have withheld, which experts they were

2    related to and when we retained those experts.

3              The letter that I sent to you is that statement.

4    The reason I raised the question was because the working group

5    order from last week's conference, which I admit I didn't

6    attend, said that we were required to submit the documents

7    withheld in camera.

8              And I, frankly, based on my understanding of the

9    agreement, had simply not even collected these documents from

10   the experts.  We put those in a separate category that we

11   talked through with them how to categorize or what they would

12   withhold.

13             We looked at some samples for one of the third

14   parties to make sure that they were understanding our

15   instructions correctly.  But we didn't actually ever get

16   possession of the documents that were being withheld on this

17   principle and, therefore, I can't instantaneously provide an in

18   camera review of those documents; and, frankly, that wasn't

19   what I understood our agreement to be.

20        **THE COURT:**  Okay.  So we've got Rob ready to respond

21   and see if he agrees with you.

22             Rob?

23        **MR. GASAWAY:**  Your Honor, I do agree with Sarah.

24   That was our agreement, is to the extent that they're

25   litigation experts, we just wanted her to let the Court know in

1  camera that they were being -- this was being withheld as work
2  product of litigation experts.
3           THE COURT:  And, frankly, that entry was your penalty
4  for not attending last week's conference.  So beware.
5                But I agree with you, Sarah, that was the
6  intent, and your statement that it is sufficient for the United
7  States to provide notice and a general description of what was
8  withheld is sufficient.
9           MS. HIMMELHOCH:  Thank you very much.
10          THE COURT:  You're welcome.
11          MR. GASAWAY:  Your Honor, I would just say that Sarah
12  had two letters on Wednesday and the other one regarded
13  privilege log 59, and that was the one we had a little bit of
14  different recollection.  We referred you to your May 1 order.
15                So in terms of her two letters, we agree with
16  this letter from Wednesday; and the other letter was the
17  privilege log 59, we responded by that in writing.  No need to
18  say more on that.
19          THE COURT:  Right.  Okay.
20          MR. GASAWAY:  Okay.  Thanks.
21          MS. HIMMELHOCH:  And, Your Honor, to avoid having to
22  submit another letter you have to read, I am not adamantly
23  opposed if you want to do an in camera check on our
24  extrapolation.  I will note for the record that we've had a
25  pretty good track record when you've checked our extrapolations

1   so far.

2            And at some point I think you've verified enough

3   that you can trust.  But if you feel that Mike needs to read

4   some more of our documents, we do not strongly object to your

5   running a random selection of the 59 documents -- the log 59

6   documents to us and we'll send you those in camera.

7            **THE COURT:**  Okay.  I agree with you, your track

8   record has been very good.  And the only exception I take is

9   that it would be Mike and me reviewing your documents.  So

10  we'll take a look at it, Sarah, and let you know.

11           **MS. HIMMELHOCH:**  Okay.

12           **THE COURT:**  Anything to report on Coast Guard

13  metadata?

14            May I take that off the agenda?

15           **MR. NOMELLINI:**  Your Honor, it's Mark Nomellini.

16            I think the latest was Alan Pixton sent a letter

17  to Tom Benson.  Tom indicated he was going to look into it and

18  get back to us.  So I think that's where we are right now.

19  We're hoping that one day we can remove it as an item, but,

20  unfortunately, we're not there yet.

21           **THE COURT:**  I was hopeful.  Okay.

22           **MS. HIMMELHOCH:**  And, Your Honor, I wonder if -- and

23  this is just positing a question -- whether the parties want to

24  pick a date by which challenges to the format of production for

25  documents that have been produced as of a certain date are done

1    and over?  Because I think the parties have had a lot of our

2    production for a long time, they've had a lot of BP's

3    production for a long time.

4              Obviously, new productions can have new issues

5    and the parties should not be precluded from raising those.

6    But if we're striving for finality of document production,

7    which I think is a great goal for the Court and for the

8    parties, picking a date by which if you've got a problem with

9    the format of our production for anything produced, say, before

10   August 31st, you've got to let us know, and then we can look at

11   what the problems are and set a deadline for finishing

12   addressing those, or raising them with you might be a way to

13   go.

14             I throw that out for the parties' consideration

15   and maybe we can talk about it at next week's working group

16   conference.

17             **THE COURT:**  Okay.  Rob?

18             **MR. GASAWAY:**  Yeah.  I was just going to say, in

19   terms of both BP and the United States, I don't think that

20   these sort of end-of-process deadline approach is what we've

21   been doing.  Certainly, on our side, we've been raising things

22   as we see them, as you know, with all of these issues.

23             So I would not want people to sort of say, "Oh,

24   there's a deadline.  Let's go back and see what we can complain

25   about about BP's productions."  Because, obviously, they've

1  been out there for a long time.  They've been used for the

2  depositions and so forth.

3          As far as our issues with the United States'

4  productions, what we're doing is just following up on issues

5  that we've been talking about for a long time.  So we agree

6  that, you know, these open items we should probably do a list

7  of any -- any challenges that are underway and a reasonable

8  time to sort of wrap them up.

9          I agree that the metadata issue is one.  There's

10 some others.  But we should probably just do that.  But I don't

11 want people to think that, "Geez, it's okay.  It's now open

12 season on Phase Two productions."  Because certainly, from BP's

13 perspective, we would have hoped if anybody had any issues they

14 would have brought them to our attention before now.

15         **THE COURT:**  Yeah.  Sarah, think about that and let's

16 revisit it next week.  But I think that you're correct, I would

17 like to bring it to a close; on the other hand, by setting a

18 deadline, I don't want everybody to go back and revisit things

19 that have not been a problem so far.

20         **MS. HIMMELHOCH:**  And I think part of the reason why

21 Rob and I differ in our initial take on this is I would say

22 that there are issues that were raised we believed were

23 resolved and are coming back now.

24         And so at some point we want a final answer from

25 BP whether they are satisfied or not satisfied with certain

1   corrections we've undertaken or accommodations that we've

2   undertaken to address their interpretation of the orders.

3           THE COURT:  Okay.  And I think that's certainly fair.

4   I mean, I don't think BP disagrees with that.  We do need to

5   bring the outstanding issues to a close; if they have

6   reemerged, we need to bring them to a close also.

7           Anthony, have you got something?

8           MR. IRPINO:  Yeah.  Anthony Irpino for the PSC, Your

9   Honor.

10          To the extent any other parties have anything, I

11  certainly do agree that we've been going a long time and have

12  had many, many meetings and meet and confers to deal with all

13  the issues.  If everybody wants to have one final call with the

14  primaries only of the people who have been doing this and

15  confirm that there's nothing, maybe that can be helpful.

16          But I really do think we've --

17          THE COURT:  We've come beyond that?

18          MR. IRPINO:  Yeah.

19          THE COURT:  Well, why don't you send out an e-mail,

20  Anthony, if you don't mind, to the primaries and say, "Do you

21  all have anything you'd like to discuss?"

22          MR. IRPINO:  Sure.

23          THE COURT:  Rather than invite discussion.

24          MR. IRPINO:  Absolutely.  And I'll be specific about

25  it because some people like discussing things that don't need

 1 | to be discussed.

 2 |         **THE COURT:**  Thank you.

 3 |         **MR. IRPINO:**  All right.

 4 |         **THE COURT:**  All right.  We had an inquiry this week

 5 | from Kym Fontana, a blast from the past, that a question was

 6 | raised during the deposition of Allan O'Donnell about a party

 7 | being able -- the first questioner being able to reserve time

 8 | at the end of the deposition.

 9 |         The rule is:  Clearly, for a one-day deposition,

10 | the first questioner may reserve 30 minutes; for a two-day

11 | deposition, the questioner may reserve 60 minutes.  And he is

12 | now so advised to enforce the rule.

13 |         Any questions?

14 |         All right.

15 |         Okay.  We appreciate BP and the United States

16 | working together to resolve the two-day deposition issue.

17 |         Anything on that, Rob?

18 |         **MR. GASAWAY:**  Your Honor, just one follow-up on that.

19 | I do think we've got that resolved.  This is the issue that

20 | Mr. O'Rourke raised.  And let me also say that Mr. Chakeres has

21 | been very helpful in going back and forth with us this week and

22 | clarifying the scope of certain depositions.

23 |         And I just wanted to belabor an obvious point,

24 | if I could, that has arisen out of those clarifications:  This

25 | is Phase Two, and these are Phase Two depositions.  Just like

 1    on the privilege challenges that we've been working with with

 2    Sarah, there is such a thing as later phases documents.

 3              **THE COURT:**  Right.

 4              **MR. GASAWAY:**  There are, obviously, later phases

 5    factual testimony and later phases 30(b)(6) testimony.

 6              And this has come up in the context of

 7    Mr. Possolo's deposition and Mr. Miller's deposition.  They

 8    both worked on something called the oil budget calculator,

 9    which is, basically:  A bunch of oil came out of the well,

10    where is it now?  And they sort of the say so much of it was

11    eaten by bugs, so much of it was dispersed, et cetera.

12              Obviously, this document, which appears in Topic

13    89 of our 30(b)(6) notice, has relevance both for

14    quantification and for fate and transport.  You know, the fate

15    of the oil, was it eaten by bugs or is it still in the Gulf of

16    Mexico?

17              And I just wanted to make the point as the

18    drafter of that 30(b)(6) notice, we're not going to be talking

19    about all issues that we think are relevant with Mr. Miller and

20    Mr. Possolo.  We're going to be talking about the Phase Two

21    issues, the quantification issues, that are relevant, and we're

22    going to leave the fate and transport aspect of that as not

23    within our notice or not within the factual testimony that

24    we're eliciting now.

25              So we're sort of viewing this the way Your Honor

1    handled the issue with respect to some of the source control

2    between Phase One and Phase Two, where you allowed Phase Two

3    deps to go forward.  And we're not going to -- unless you tell

4    us differently, planning on asking about, you know, Phase Three

5    issues that -- factual issues that they may have.  And we

6    certainly don't consider the Phase Three aspects of this

7    document as within our notice.

8             We were just going to focus our deposition on

9    the Phase Two aspect.

10             **THE COURT:**  Okay.

11             Nat?

12             **MR. CHAKERES:**  Your Honor, Nat Chakeres for the

13   United States.

14             We appreciate that clarification and, you know,

15   we welcome that limitation.  I think, you know, this issue did

16   come up in terms of the overlap between Phase One and Phase Two

17   depositions and we've sort of tried to steer a course through

18   those.

19             And to the extent there is questioning from any

20   party, you know, BP or any other party, regarding Phase Three

21   issues of Mr. Possolo or Mr. Miller, we would -- we'll, you

22   know, consider those questions covered by those individuals.

23   And we don't want to have to bring back witnesses to cover

24   ground they've already covered, but hopefully that won't

25   happen, and it sounds like if BP does this that it won't happen

1  from them.

2          So that's welcome news.  Thank you.

3          **THE COURT:**  Good.  All right.  If anybody wants to

4  chime in on that issue, would you get us something this week?

5  If not, I don't see it as being an issue.

6          Come on back up.

7          **MR. CERNICH:**  Judge Shushan, on the one-day versus

8  two-day issue, you received, I guess, Rob's letter with the

9  clarification on the one-day versus two-day?

10         **THE COURT:**  On the seven witnesses?

11         **MR. CERNICH:**  Correct.

12         **THE COURT:**  Yes.

13         **MR. CERNICH:**  Yeah.  I just wanted to make sure.

14  Because the working group order from last week had some of the

15  two-day witnesses as one-day witnesses and I just wanted to --

16         **MR. O'KEEFE:**  We changed it in this one.

17         **THE COURT:**  Yes.  We hadn't gotten that, I don't

18  think --

19         **MR. CERNICH:**  No, you hadn't.  And I just didn't

20  know --

21         **THE COURT:**  We'll catch up with you.

22         **MR. CERNICH:**  -- whether we wanted to go over that

23  now or whether the letter --

24         **MR. O'KEEFE:**  No, the letter will do it.

25         **THE COURT:**  The letter will do it, and hopefully

1    we'll catch up with you this week.

2            **MR. CERNICH:**  Thank you.

3            **THE COURT:**  Mr. Barr?

4            **MR. BARR:**  Good morning, Your Honor.  Brian Barr for

5    the PSC.

6            **THE COURT:**  How are you?

7            **MR. BARR:**  I'm doing great.

8            **THE COURT:**  Good.

9            **MR. BARR:**  Following up on what Rob just said, and I

10   guess I hadn't thought about it too much, but given that

11   Admiral Allen's deposition is coming up on Monday, I think it's

12   of concern.

13           There are two topics that Admiral Allen has been

14   designated for that deal specifically with dispersants.  Maybe

15   the subsea dispersant could be a source control issue, but the

16   surface dispersant I've always viewed as a fate and transport

17   issue that we would address in a later phase.

18           And given what Rob just said, you know, one of

19   the topics is the EPA approval of dispersants and those types

20   of things that Admiral Allen is going to talk about.  I don't

21   know how we split that baby on the fate and transport issues.

22           And, I mean, I guess it doesn't really matter to

23   me one way or the other if we go forward with it.  I don't know

24   if the states feel differently.  But if we are trying to split

25   that, I think we need clarity for purposes of Monday.

1          THE COURT:  Okay.  Let's hear what Rob has to say.
2     I've got a thought on that one.
3          MR. GASAWAY:  Your Honor, my thought was that we
4     would just go forward with Admiral Allen.  I think it's a
5     little bit different situation.
6               The oil budget calculator report is,
7     essentially, we think, the majority, if I can say, a Phase
8     Three report, and we're definitely going to want, in Phase
9     Three, to talk to people who are knowledgeable -- to talk to a
10    corporate representative about that document, which may be the
11    key fate and transport document, or certainly one of a set of
12    key fate and transport documents, as well as people who have
13    factual knowledge.
14              So I wanted to carve that off because it's so
15    essential to Phase Three.  I think Admiral Allen presents a
16    different situation.  He's, obviously, a distinguished retired
17    admiral.  I don't know if we would be wanting, you know,
18    necessarily what his -- our needs for him are in Phase Three;
19    but as long as that's there, I think we should just go forward
20    on Admiral Allen is my initial instinct.
21         THE COURT:  Yeah.  And let me hear from Corey.
22              Corey, I assume that you are prepared to go
23    forward in full with Admiral Allen.
24         MR. MAZE:  Yes.  In fact, Doug and I just talked.
25    But our understanding -- or our plan is, as the states, we're

1  going to ask fate and transport questions of every witness we

2  can unless told otherwise; and if that happens, we would ask

3  for the ability to call that same witness back later.

4          So, yes, we intend to ask Admiral Allen fate and

5  transport questions like we do every witness unless we hear

6  from you that we can't.

7          **THE COURT:**  You're not hearing from me.

8          **MR. MAZE:**  Okay.  Then I think that -- then we're

9  okay with that.

10          **THE COURT:**  Okay.

11          **MR. BARR:**  Mea culpa for raising the issue.

12          **THE COURT:**  No problem.  And we've got it straight,

13  so no problem.

14          Okay.  How do we stand on resolving the

15  Gutherie/Griffiths conflict?

16          **MR. CHAKERES:**  Your Honor, we have located some dates

17  that we think we might be able to move one of those

18  individuals.  We do not have confirmation yet with the witness

19  and we will report to the parties as soon as we do.

20          **THE COURT:**  Sounds very good.

21          All right.  Thank you for working together on

22  that.

23          On the topic of "thank you for working

24  together," I want to thank Jeff Prieto and the United States on

25  their professionalism this week in a deposition of Graham

1   Vinson, raising the issue about a clawback before the document

2   was used during the deposition.  It all worked out fine and

3   we're appreciative that it was not a big dispute.

4              So thank you very much.  Jeff's not on the

5   phone.  If you all would let him know that we gave him a

6   shout-out.

7              **MS. HIMMELHOCH:**  Thank you, Your Honor, I will.

8              **THE COURT:**  Okay.  Good.

9              Everybody has the current schedule and you all

10  are neck-deep in depositions at this point.

11             Can somebody give me the name of Mr.  Guthrie,

12  who we continue to carry on our agenda as "Blank Guthrie"?

13             **MR. CERNICH:**  It's George, Your Honor.

14             **THE COURT:**  Thank you.  That bugs me every week.

15             All right.  I hear that the depositions are

16  scintillating.  Is that a fair statement?

17             **MR. MAZE:**  All of them.

18             **THE COURT:**  Would you like to report on that, Duke?

19             **MR. DUKE WILLIAMS:**  No.  I've stayed away from them,

20  Your Honor.

21             **THE COURT:**  Okay.  Well, I didn't know whether you

22  were participating or not.

23             **MR. DUKE WILLIAMS:**  No.  I've heard the same thing,

24  Your Honor.

25             **THE COURT:**  Yeah.  Everybody's been having a great

1  time.

2          Let's talk about the draft time line.  Mike and

3  I spent some time looking at it this week.  I'm going to throw

4  out some more ideas and let you all stew on it in the coming

5  week, comment, and then we'll take it up again next week.

6  Sooner or later we'll have a time line.

7          We were thinking about having the parties submit

8  a preliminary good faith fact witness list by October the 30th.

9  That would include no more than 35 fact witnesses.  Not

10  including, I believe, people who are being deposed as 30(b)(6)

11  witnesses and also fact witnesses.

12          No, that's not true.  That would include them.

13          MR. O'KEEFE:  No.  I included them in there.

14          THE COURT:  That would include them, the 35 would,

15  giving us at that same time a preliminary good faith witness

16  list, and at that time, only in camera, a list of experts who

17  you believe are likely to be providing expert reports for Phase

18  Two.

19          MR. O'KEEFE:  Your Honor, you may have misspoke

20  yourself.  I believe it was a preliminary good faith exhibit

21  list in addition to the 35.

22          THE COURT:  Oh, I'm sorry.  That's what I thought I

23  was going to say, but okay.  Exhibit lists.

24          MR. O'KEEFE:  Yeah.  I think you said *witness list*.

25          THE COURT:  Oh, I'm sorry.  Okay.  Preliminary good

1  faith fact witness lists that would be limited to no more than

2  35 witnesses, because we're dealing with some lists that are

3  200 or so, and that doesn't help anyone; second, a good faith

4  exhibit list; third, an in camera list of experts who are

5  likely to provide reports.  Okay?

6            Next up, we thought that December 3rd -- that's

7  a date we've spoken about before -- we would go back to a

8  simultaneous exchange of the additional witnesses.  We had

9  talked about the five witnesses.  We're thinking that the

10  United States and BP could each designate five, the PSC and the

11  states could designate two, and defendants other than BP, two.

12        **MR. BARR:**  Do you want us to comment now or do you

13  want to wait until we get through here?

14        **THE COURT:**  Later.

15            Remember, you were limited to five before?

16        **MR. BARR:**  Now, I'm limited to two.

17        **THE COURT:**  Well, that's true.

18        **MR. MAZE:**  Speak now and it goes to zero.

19        **THE COURT:**  That's right.  Speak now and it goes

20  down.

21        **MR. FITCH:**  Judge, Tony Fitch.

22            You kind of faded away on those numbers.  Could

23  you list them again, please?

24        **THE COURT:**  Sure.  The U.S. and BP would each be

25  entitled to designate five, the PSC and the states jointly

1   designate two, and the defendants other than BP jointly

2   designate two.

3           **MR. FITCH:**  Thank you.

4           **THE COURT:**  You know, the general caveat for good

5   cause shown, we would consider other potential fact witnesses.

6               Let me see what else I wanted to point out to

7   you.  All right.  We would complete all fact depositions by

8   January the 11th.

9               We are still maintaining that expert reports

10  with the parties with the burden of proof have to go on

11  February the 4th; responding expert reports February 25th;

12  reply expert reports by March 11th.

13              And then we can work from deadlines from there.

14  But that's the revisions that we thought about this week.  Why

15  don't you send us comments on that by close of business on

16  Tuesday.  We don't need lengthy ones, just tell us what's the

17  problem there and then we'll try to hash out a final during the

18  week concluding, hopefully, on Friday.

19          **MR. LANGAN:**  So by Tuesday?  You want to hear from us

20  by Tuesday?

21          **THE COURT:**  Yeah.

22          **MR. LANGAN:**  Your Honor, just to be --

23          **THE COURT:**  Okay.  You want to make it noon on

24  Wednesday?

25          **MR. LANGAN:**  That would be fine.

1      **THE COURT:**  Noon on Wednesday.

2      **MR. LANGAN:**  So just to make sure I'm clear:  By

3  October 30th, preliminary good faith fact witness lists and

4  exhibit lists and in camera list of experts who will likely

5  provide reports?

6      **THE COURT:**  In camera, in camera.

7      **MR. LANGAN:**  Okay.

8      **THE COURT:**  We don't -- you know, how we did that

9  before with the scheduling of experts?

10     **MR. LANGAN:**  Yes.  With areas.  I think you had areas

11 too, didn't you?

12     **THE COURT:**  We did.  Oh, absolutely.

13         When you give us the in camera submissions with

14 regard to your experts, we'd like to know what their areas are

15 so that we can start trying to figure out the scheduling, who

16 goes when and what group, et cetera, like we did for Phase One.

17 It's not way different than what we've done before, although we

18 do have new participants for Phase Two.

19     **MR. LANGAN:**  Your Honor, and this probably is in the

20 original time line.  In addition to the original fact witness

21 list, does Your Honor contemplate a final trial type one?

22     **THE COURT:**  A final, yes.  Absolutely.

23     **MR. LANGAN:**  Okay.  That's probably on your list

24 anyway.

25     **THE COURT:**  Well, I think it is.  I think we're going

1    to want to discuss that further next week.

2            **MR. LANGAN:**  And June 15th still -- which, by the

3    way, I think may be a Saturday.

4            **THE COURT:**  Do you have a problem with that?

5            **MR. LANGAN:**  Not necessarily.

6            **THE COURT:**  It's a judge trial.

7            **MR. LANGAN:**  Good point.  Okay.  We're open to that.

8    But, anyway, if we are, we're --

9            **THE COURT:**  We expect a Monday start of the trial.

10   So another *whoops* moment.  We'll take a look at that and adjust

11   it, the draft time line.  We'll try to get another draft out

12   maybe Thursday of next week for you all to chew on so we can

13   have a nice discussion on Friday.  Okay?

14           Okay.  I think we're ready to throw the floor

15   open to anything else.

16           Rob?  I thought we were going to make it

17   through, but go ahead.

18           **MR. GASAWAY:**  Nothing, Your Honor.  We'll make --

19           **THE COURT:**  Oh, no, no.

20           **MR. GASAWAY:**  Oh, no.  I can save it.

21           **THE COURT:**  Duke appreciates that.  Duke appreciates

22   it.

23           Anybody have anything else at all?  If not,

24   thank you very much.  Everybody have a good weekend and we'll

25   see you next week.

1      **MS. HIMMELHOCH:**  Thank you, Your Honor.

2      **THE COURT:**  Thank you, Sarah.

3      (WHEREUPON, the proceedings were concluded.)

4                         *****

5                     <u>**CERTIFICATE**</u>

6          I, Jodi Simcox, RMR, FCRR, Official Court Reporter

7   for the United States District Court, Eastern District of

8   Louisiana, do hereby certify that the foregoing is a true and

9   correct transcript, to the best of my ability and

10  understanding, from the record of the proceedings in the

11  above-entitled and numbered matter.

12

13

14                      S/ Jodi Simcox, RMR, FCRR
                        Jodi Simcox, RMR, FCRR
15                      Official Court Reporter

16

17

18

19

20

21

22

23

24

25