1

1        UNITED STATES DISTRICT COURT

2        EASTERN DISTRICT OF LOUISIANA

3

4                                    *
   IN RE:  OIL SPILL BY THE OIL RIG   *   Docket 10-MD-2179
5           *DEEPWATER HORIZON* IN THE   *
           GULF OF MEXICO ON           *   Section J
6           APRIL 20, 2010             *
                                       *   New Orleans, Louisiana
7                                       *
                                       *   November 30, 2012
8                                       *
   Applies to:  All Cases              *   9:30 a.m.
9                                       *
   * * * * * * * * * * * * * * * * * *

10               WORKING GROUP CONFERENCE BEFORE
11                THE HONORABLE SALLY SHUSHAN
                 UNITED STATES MAGISTRATE JUDGE
12

13   APPEARANCES:

14   For the Plaintiffs:        Domengeaux Wright Roy
                                  & Edwards, LLC
15                              BY:  JAMES P. ROY, ESQ.
                                Post Office Box 3668
16                              556 Jefferson Street
                                Suite 500
17                              Lafayette, Louisiana 70502

18

19
     For the Plaintiffs:        Herman Herman Katz & Cotlar, LLP
20                              BY:  STEPHEN J. HERMAN, ESQ.
                                BY:  SOREN GISLESON, ESQ.
21                              820 O'Keefe Avenue
                                New Orleans, Louisiana 70113
22

23

24

25

1    APPEARANCES:

2    For the Plaintiffs:          Levin Papantonio Thomas Mitchell
                                      Rafferty & Proctor, PA
3                                 BY:  BRIAN H. BARR, ESQ.
                                  Post Office Box 12308
4                                 316 South Baylen Street
                                  Suite 600
5                                 Pensacola, Florida 32591

6
     For the Plaintiffs:          Irpino Law Firm
7                                 BY:  ANTHONY IRPINO, ESQ.
                                  2216 Magazine Street
8                                 New Orleans, Louisiana 70130

9
     For the Plaintiffs:          Lewis, Kullman, Sterbcow &
10                                   Abramson
                                  BY: PAUL M. STERBCOW, ESQ.
11                                2615 Pan American Life Center
                                  601 Poydras Street
12                                New Orleans, Louisiana 70130

13
     For the Plaintiffs:          Williamson & Rusnak
14                                BY:  JIMMY WILLIAMSON, ESQ.
                                  4310 Yoakum Boulevard
15                                Houston, Texas 77006

16
     For the Plaintiffs:          Breit Drescher Imprevento & Walker
17                                BY: JEFFREY BREIT, ESQ.
                                  1000 Dominion Tower
18                                999 Waterside Drive
                                  Norfolk, Virginia 23510
19
20   For the State of             Office of the Attorney General
     Alabama:                     BY:  WINFIELD J. SINCLAIR, ESQ.
21                                501 Washington Avenue
                                  Montgomery, Alabama 36104
22
23   For the State of             Kanner & Whiteley, LLC
     Louisiana:                   BY:  DOUGLAS R. KRAUS, ESQ.
24                                701 Camp Street
                                  New Orleans, Louisiana 70130
25

1   APPEARANCES:

2   For the United States         U.S. Department of Justice
    of America:                   Environmental Enforcement Section
3                                 BY:   A. NATHANIEL CHAKERES, ESQ.
                                  BY:   TOM BENSON, ESQ.
4                                 BY:   STEVEN O'ROURKE, ESQ.
                                  Post Office Box 7611
5                                 Washington, DC 20044

6
    For the United States         U.S. Department of Justice
7   of America:                   Torts Branch, Civil Division
                                  BY:   SARAH D. HIMMELHOCH, ESQ.
8                                 BY:   R. MICHAEL UNDERHILL, ESQ.
                                  7-5395 Federal Bldg., Box 36028
9                                 450 Golden Gate Avenue
                                  San Francisco, California 94102
10

11  For Transocean Holdings       Frilot, Partridge, Kohnke &
    LLC, Transocean Offshore        Clements
12  Deepwater Drilling Inc.       BY:   KERRY J. MILLER, ESQ.
    Transocean Deepwater Inc.:    1100 Poydras Street
13                                Suite 3600
                                  New Orleans, Louisiana 70163
14

15  For Transocean Holdings       Sutherland Asbill & Brennan, LLP
    LLC, Transocean Offshore      BY:   STEVEN L. ROBERTS, ESQ.
16  Deepwater Drilling Inc.,      1001 Fannin Street, Suite 3700
    Transocean Deepwater Inc.:    Houston, Texas 77002
17

18  For Transocean Holdings       Munger Tolles & Olson, LLP
    LLC, Transocean Offshore      BY:   GRANT DAVIS-DENNY, ESQ.
19  Deepwater Drilling Inc.,      BY:   BRAD D. BRIAN, ESQ.
    Transocean Deepwater Inc.:    335 S. Grand Avenue, 35th Floor
20                                Los Angeles, California 90071

21

22

23

24

25

1    APPEARANCES:

2    For BP America Inc.,              Liskow & Lewis, APLC
     BP America Production            BY:  DON K. HAYCRAFT, ESQ.
3    Company, BP Company              701 Poydras Street, Suite 5000
     North America Inc.,              New Orleans, Louisiana 70139
4    BP Exploration &
     Production Inc., BP
5    Holdings North America
     Limited, BP Products
6    North America Inc.:

7
     For BP America Inc.,              Kirkland & Ellis, LLP
8    BP America Production            BY:  ROBERT R. GASAWAY, ESQ.
     Company, BP Company              BY:  JOSEPH A. EISERT, ESQ.
9    North America Inc.,              BY:  MICHAEL A. PETRINO, ESQ.
     BP Exploration &                655 Fifteenth Street, NW
10   Production Inc., BP              Washington, DC 20005
     Holdings North America
11   Limited, BP Products
     North America Inc.:

12

13   For BP America Inc.,              Kirkland & Ellis, LLP
     BP America Production            BY:  J. ANDREW LANGAN, ESQ.
14   Company, BP Company              BY:  MARK J. NOMELLINI, ESQ.
     North America Inc.,              BY:  RYAN S. BABIUCH, ESQ.
15   BP Exploration &                BY:  R. ALLAN PIXTON, ESQ.
     Production Inc., BP              300 North Lasalle
16   Holdings North America          Chicago, Illinois 60654
     Limited, BP Products
17   North America Inc.:

18
     For Individual Investors:        Mithoff Law Firm
19                                    BY:  WILLIAM J. STRADLEY, ESQ.
                                      3450 One Allen Center
20                                    500 Dallas Street
                                      Houston, Texas  77002
21

22   For Cameron International        Stone Pigman Walther Wittmann, LLC
     Corporation:                     BY:  CARMELITE M. BERTAUT, ESQ.
23                                    546 Carondelet Street
                                      New Orleans, Louisiana 70130
24

25

```
1  APPEARANCES:

2  For Cameron International        Beck Redden & Secrest
   Corporation:                    BY: DAVID W. JONES, ESQ.
3                                  One Houston Center
                                   1221 McKinney Street
4                                  Suite 4500
                                   Houston, Texas 77010
5

6  For Halliburton Energy          Godwin Ronquillo, PC
   Services, Inc.:                 BY:   DONALD E. GODWIN, ESQ.
7                                  BY:   JENNY L. MARTINEZ, ESQ.
                                   BY:   SEAN W. FLEMING, ESQ.
8                                  BY:   LAUREN L. MITCHELL, ESQ.
                                   BY:   ALLISON BATTISTE, ESQ.
9                                  BY:   ERIKA TOLEDO, ESQ.
                                   BY:   BRUCE W. BOWMAN, JR., ESQ.
10                                 1201 Elm Street, Suite 1700
                                   Dallas, Texas 75270
11

12 For Halliburton Energy:         Godwin Ronquillo, PC
   Services, Inc.:                 BY:  R. ALAN YORK, ESQ.
13                                 BY:  GWEN E. RICHARD, ESQ.
                                   1331 Lamar, Suite 1665
14                                 Houston, Texas 77010

15

16 For Anadarko Petroleum          Bingham McCutchen, LLP
   Corporation, Anadarko           BY:  WARREN A. FITCH, ESQ.
17 E&P Company LP:                 2020 K Street, NW
                                   Washington, DC 20006

18

19 For Anadarko Petroleum          Kuchler Polk Schell
   Corporation, Anadarko             Weiner & Richeson, LLC
20 E&P Company LP:                 BY: SARAH IIAMS, ESQ.
                                   1615 Poydras Street
21                                 Suite 1300
                                   New Orleans, Louisiana 70112

22

23

24

25
```

1    APPEARANCES:

2    Official Court Reporter:        Jodi Simcox, RMR, FCRR
                                     500 Poydras Street
3                                    Room HB-406
                                     New Orleans, Louisiana 70130
4                                    (504) 589-7780
                                     Jodi_Simcox@laed.uscourts.gov
5

6
     Proceedings recorded by mechanical stenography using
7    computer-aided transcription software.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           **I N D E X**

2                                                      <u>Page</u>

3
 SHOW AND TELL                                           9
4
 ROV INSPECTION                                         10
5
 PHASE ONE EXHIBITS                                     12
6
 PRETRIAL ORDER FOR PHASE ONE TRIAL                     13
7
 ADVERSE INFERENCES FIFTH AMENDMENT MOTIONS             25
8
 BOP                                                    26
9
 OPEN ISSUES BETWEEN BP AND U.S.                        26
10
 PROFESSOR LEIFER DOCUMENT PRODUCTION                   32
11
 PHASE TWO FACT DEPOSITIONS                             32
12
 PHASE TWO EXPERT REPORT DEADLINES                      50
13
 PHASE TWO DEADLINES                                    60
14

15

16

17

18

19

20

21

22

23

24

25

| | | |
|---|---|---|
| 09:17:02 | 1 | **PROCEEDINGS** |
| 09:17:02 | 2 | **(November 30, 2012)** |
| 09:17:02 | 3 | ****** |
| 09:17:02 | 4 | (OPEN COURT) |
| 09:29:23 | 5 | **THE COURT:**  There you go.  We've got the phone on? |
| 09:29:26 | 6 | Good morning, phone participants.  Nomellini? |
| 09:29:34 | 7 | **MS. HIMMELHOCH:**  Good morning, Your Honor. |
| 09:29:35 | 8 | **THE COURT:**  Good morning, Sarah.  How are you doing? |
| 09:29:41 | 9 | Nomellini, are you on the line? |
| 09:29:43 | 10 | **MR. NOMELLINI:**  I am, Your Honor, but I'm getting |
| 09:29:45 | 11 | some echo. |
| 09:29:46 | 12 | **THE COURT:**  Yeah, we hear that. |
| 09:29:47 | 13 | **MS. HIMMELHOCH:**  You sound like you're on an ROV |
| 09:29:49 | 14 | looking at the bottom of the well, Your Honor. |
| 09:29:53 | 15 | **THE COURT:**  That doesn't sound good, Sarah. |
| 09:29:57 | 16 | Have we got it too loud?  Do you think that's |
| 09:29:57 | 17 | what it is? |
| 09:30:04 | 18 | **MS. HIMMELHOCH:**  Now we can only hear that you're |
| 09:30:06 | 19 | speaking, but not what you're saying. |
| 09:30:07 | 20 | **THE COURT:**  Can you hear me now? |
| 09:30:08 | 21 | **MS. HIMMELHOCH:**  Yes, I can hear you now, Your Honor. |
| 09:30:10 | 22 | **THE COURT:**  Okay.  Good.  Good morning. |
| 09:30:12 | 23 | Mark, we have on the projector a picture of -- |
| 09:30:18 | 24 | 2, 4, 6, 8, ten -- 11 boys sitting around a sofa.  Would you |
| 09:30:28 | 25 | like to tell us what that is and which are your two? |

| | | |
|---|---|---|
| 09:30:33 | 1 | **MR. NOMELLINI:**  They're watching Notre Dame defeat |
| 09:30:37 | 2 | USC to secure a spot in the BCS National Championship.  My two |
| 09:30:44 | 3 | are Mark, in the bottom wearing the No. 6 jersey.  He's 3.  And |
| 09:30:52 | 4 | then Emmett is in the blonde hair towards the top, kind of |
| 09:30:57 | 5 | looking down.  He's 6.  And John, who is not in the picture, |
| 09:31:01 | 6 | was also watching the game.  He is 7.  And those are their |
| 09:31:07 | 7 | friends from school over to watch the game. |
| 09:31:11 | 8 | **THE COURT:**  Wow.  So you had a house full of kids. |
| 09:31:16 | 9 | So the young man at the very top is yours as well? |
| 09:31:24 | 10 | **MR. NOMELLINI:**  Well, the young -- the man sort of to |
| 09:31:26 | 11 | the -- the young man to the right wearing the camouflage shirt, |
| 09:31:29 | 12 | kind of sitting on the couch. |
| 09:31:31 | 13 | **THE COURT:**  Oh, I see.  Straddling the couch? |
| 09:31:34 | 14 | **MR. NOMELLINI:**  You got it, that's Emmett. |
| 09:31:36 | 15 | **THE COURT:**  Gotcha. |
| 09:31:36 | 16 | **MR. NOMELLINI:**  And then Mark is at the very bottom, |
| 09:31:38 | 17 | the little guy on the bean bag there looking over toward the |
| 09:31:43 | 18 | game. |
| 09:31:44 | 19 | **THE COURT:**  Well, all I got to say is I'm glad I |
| 09:31:47 | 20 | wasn't there to clean up. |
| 09:31:51 | 21 | All right.  Anybody else have anything to |
| 09:31:54 | 22 | report? |
| 09:31:58 | 23 | **MR. HERMAN:**  Were there any little troublemakers |
| 09:32:00 | 24 | rooting for USC? |
| 09:32:01 | 25 | **THE COURT:**  Did you hear that? |

09:32:02   1          **MR. NOMELLINI:**  You know, there was one guy -- one
09:32:03   2   brave, young guy did announce he was rooting for USC.
09:32:08   3          **THE COURT:**  And so did he leave alive?
09:32:11   4          (NO RESPONSE.)
09:32:15   5          **THE COURT:**  It sounds like he didn't.
09:32:18   6          **MR. IRPINO:**  Talk about adverse inference.
09:32:20   7          **THE COURT:**  Okay.  Let's get rolling.  Let's see.
09:32:25   8   Let's get a report -- I guess, Andy, this is you -- on the ROV
09:32:37   9   inspection that we're contemplating.
09:32:41  10          **MR. LANGAN:**  Okay, Your Honor.  Andy Langan for BP.
09:32:45  11          So, as I explained in the letter we sent to the
09:32:47  12   Court yesterday morning, this goes back to, I think, the
09:32:50  13   October 9th notice of federal interest that followed the
09:32:54  14   observance of a sheen on the Gulf of Mexico around the MC252
09:33:00  15   block.  BP and Transocean have been working with the Coast
09:33:04  16   Guard for some time on this.
09:33:06  17          The latest is that, at the direction of the
09:33:09  18   Coast Guard, that we want to undertake a survey of the rig
09:33:14  19   itself through remote operated vehicles, ROVs.  They're,
09:33:20  20   obviously, launched from a ship.
09:33:23  21          The present plan is to do that, I believe,
09:33:26  22   starting December 10th now.  There's been a delay because of
09:33:30  23   weather and getting the proper ship to the right -- Port
09:33:36  24   Fourchon, I think it is, or something.
09:33:40  25          **THE COURT:**  Fourchon, yeah.

09:33:41  1        **MR. LANGAN:**  Okay.  So we'd like permission to do it.

09:33:44  2   And this time -- although there have been surveys before, this

09:33:49  3   time we thought it was appropriate to seek Your Honor's

09:33:51  4   permission for a couple of reasons.

09:33:52  5              Number one, there's a possibility that in

09:33:53  6   surveying the rig the ROV may encounter equipment or wires and

09:33:58  7   cables in which the ROV could be entangled and, therefore, it

09:34:01  8   would be good to have the Court know that that could happen and

09:34:04  9   we'd need to take steps to untangle that might involve cutting

09:34:10  10  cable.

09:34:10  11             I don't think there's any real issue about

09:34:12  12  evidence and that sort of thing.  But it may be necessary to do

09:34:15  13  that.  The Coast Guard knows that, but we wanted the Court to

09:34:18  14  be aware of that and have your permission, given the

09:34:22  15  preservation obligations we're all under.

09:34:25  16             And number two, we're working, and TO's working,

09:34:27  17  quite closely with the Coast Guard in the unlikely event that

09:34:31  18  human remains are encountered.  There will be a protocol, that

09:34:34  19  we're still working the details out.  Whatever that protocol we

09:34:38  20  work out with the Coast Guard is, TO and BP will follow it.  I

09:34:41  21  don't think it's going to happen, but if it did, we would

09:34:44  22  strictly follow that protocol.

09:34:47  23             With that, absent any objection or questions

09:34:47  24  from Your Honor, we'd respectfully request permission to

09:34:50  25  proceed in this fashion.

09:34:52  1          THE COURT:  Okay.  I have not heard any objections,

09:34:56  2  and your letter was sent to everybody.  So I'm going to go

09:35:01  3  ahead and enter that order today.

09:35:03  4          MR. LANGAN:  Thank you.  Thank you, Your Honor.  As I

09:35:04  5  said, it may not start until December 10th now, I'm told, which

09:35:08  6  is a little different.  But there are -- you know, these things

09:35:10  7  are always in flux, but that's the latest.

09:35:12  8          THE COURT:  Okay.  I thank you for the update.

09:35:15  9          MR. LANGAN:  Thank you.

09:35:16  10          THE COURT:  All right.  Let's see.  Alan, have you

09:35:21  11  got anything you want to report on Phase One exhibits?  Getting

09:35:31  12  all the proposed fixes.

09:35:33  13          MR. YORK:  Good morning, Your Honor.  Alan York for

09:35:37  14  Halliburton.

09:35:37  15          Progress continues to be made.  The last report

09:35:40  16  that I got, we're actually down to 15 that we need to get some

09:35:43  17  resolution on.  And at that point, the proposed fixed list will

09:35:47  18  be sent out to all the parties and everybody will have all the

09:35:49  19  information.

09:35:50  20          THE COURT:  That's great.  Now, don't go away.  That

09:35:52  21  is good.  Down to 15 is very good.

09:35:54  22          Now, give us a report on how much weight you've

09:35:57  23  lost.

09:35:58  24          MR. YORK:  Well, this is a bad week, Your Honor,

09:35:59  25  because Thanksgiving was last week.

| | | |
|---|---|---|
| 09:36:01 | 1 | **THE COURT:**  Oh, that's right.  That's right.  So the |
| 09:36:03 | 2 | total has not increased?  Because it looks like it has. |
| 09:36:06 | 3 | **MR. YORK:**  The total has not increased.  In fact, I |
| 09:36:09 | 4 | think there has been a little bit of reversion over the last |
| 09:36:12 | 5 | week. |
| 09:36:13 | 6 | **THE COURT:**  Uh-oh, uh-oh. |
| 09:36:13 | 7 | **MR. YORK:**  So we're going to get back on track. |
| 09:36:20 | 8 | **THE COURT:**  Good. |
| 09:36:22 | 9 | Okay.  Pretrial order for the Phase One trial. |
| 09:36:25 | 10 | Let's talk about that and see if we can't get ourselves in gear |
| 09:36:30 | 11 | for that.  We have the dueling Phase One, and just a couple of |
| 09:36:36 | 12 | outstanding, issues, as I understand it. |
| 09:36:40 | 13 | Steve, do you want to lead us off? |
| 09:36:42 | 14 | **MR. HERMAN:**  Yeah.  I think they're pretty narrow, |
| 09:36:44 | 15 | Your Honor.  Steve Herman for the plaintiffs. |
| 09:36:46 | 16 | **THE COURT:**  Yeah. |
| 09:36:47 | 17 | **MR. HERMAN:**  One thing I wanted to note, not really |
| 09:36:49 | 18 | in the pretrial order itself, but it was in our letter to the |
| 09:36:52 | 19 | Court and counsel that prefaced our proposed revisions.  And I |
| 09:36:58 | 20 | just wanted to kind of confirm this, if I could, I didn't hear |
| 09:37:01 | 21 | any real objections or anything since then. |
| 09:37:03 | 22 | But as the Court knows, there are a number of |
| 09:37:07 | 23 | deposition designations/bundles, whatever you want to call |
| 09:37:10 | 24 | them, that were not sent to Judge Barbier, as a convenience to |
| 09:37:14 | 25 | the Court.  He's got enough to read.  Why should he read the |

09:37:19   1   cuts when the witnesses might appear at trial or there might be

09:37:22   2   some adverse inference ruling that might moot it or whatever?

09:37:26   3              At the same time, we feel it's important that we

09:37:28   4   be able to put those cuts into the record in our case in chief

09:37:33   5   so that if there is a directed verdict motion when we rest,

09:37:37   6   that testimony can be considered with respect to those directed

09:37:42   7   verdict motions.

09:37:43   8              Of course, as those witnesses actually appear

09:37:46   9   and testify at trial during the defendant's cases, we would

09:37:49  10   substitute the deposition designations with their live trial

09:37:53  11   testimony.

09:37:53  12         THE COURT:  Right.  You'd just withdraw the

09:37:55  13   depositions.

09:37:56  14         MR. HERMAN:  And I assume that that's okay with the

09:37:59  15   Court, if not the defendants.

09:38:01  16         THE COURT:  Well, it's okay with me, and I didn't

09:38:03  17   hear anybody objecting.  It seems like an easy way to solve

09:38:11  18   your problem and at the same time not put Judge Barbier through

09:38:16  19   the burden of reading depositions that he's going to hear live

09:38:19  20   testimony on.

09:38:21  21              So does anybody have a problem with the PSC's

09:38:26  22   proposal?

09:38:28  23              Steve?  Steve Roberts.

09:38:33  24         MR. ROBERTS:  Steve Roberts for Transocean.

09:38:34  25              I don't have a problem, but I assume we'll have

| | | |
|---|---|---|
| 09:38:37 | 1 | to do our submissions as well and, similarly, withdraw our |
| 09:38:41 | 2 | submissions.  If we're going to pretend that these submissions |
| 09:38:44 | 3 | constitute the original testimony for purposes of direct, we'll |
| 09:38:48 | 4 | have to do our submissions as well; and then if the witnesses |
| 09:38:52 | 5 | appear, withdraw those submissions as well. |
| 09:38:55 | 6 | THE COURT:  Okay.  I hadn't thought about Transocean. |
| 09:39:01 | 7 | MR. ROBERTS:  All right. |
| 09:39:01 | 8 | MR. HERMAN:  They're a petitioner, too.  So I guess |
| 09:39:04 | 9 | the same rule -- |
| 09:39:05 | 10 | MR. ROY:  I'll turn the microphone back off. |
| 09:39:07 | 11 | THE COURT:  No.  But you're correct.  Because of the |
| 09:39:13 | 12 | nature of the proceeding, you go first, huh? |
| 09:39:20 | 13 | MR. MILLER:  Well, we have the burden on limitation. |
| 09:39:22 | 14 | THE COURT:  Well, that's right.  Thank you, Kerry. |
| 09:39:24 | 15 | You said it better than I. |
| 09:39:27 | 16 | So I guess so.  I guess that does -- that would |
| 09:39:30 | 17 | apply to you.  For anyone who moves for a directed verdict, you |
| 09:39:35 | 18 | want to avoid that. |
| 09:39:40 | 19 | MR. ROBERTS:  It would be nice. |
| 09:39:43 | 20 | MR. HAYCRAFT:  We don't object to -- |
| 09:39:45 | 21 | THE COURT:  I'll think about it in Transocean's case. |
| 09:39:47 | 22 | MR. LANGAN:  Your Honor, I don't think we necessarily |
| 09:39:49 | 23 | object to what Mr. Herman's proposed.  As you know, we have a |
| 09:39:52 | 24 | broader issue about the bundles and the material in the bundles |
| 09:39:55 | 25 | that's been subject to prior rulings of the Court. |

| | | |
|---|---|---|
| 09:39:58 | 1 | **THE COURT:**  Right, right. |
| 09:39:58 | 2 | **MR. LANGAN:**  And we just have a fundamental |
| 09:39:59 | 3 | disagreement with the PSC on that.  I'm sure Your Honor's going |
| 09:40:01 | 4 | to tell us how to resolve it at some point, but we do maintain |
| 09:40:06 | 5 | that issue both -- for all the depositions. |
| 09:40:10 | 6 | **THE COURT:**  Right. |
| 09:40:10 | 7 | **MR. LANGAN:**  Okay. |
| 09:40:10 | 8 | **THE COURT:**  So it seems to me there's two things that |
| 09:40:13 | 9 | we want to talk about.  Thing number one is, I don't have a |
| 09:40:16 | 10 | problem with, procedurally, Transocean and the PSC putting in |
| 09:40:23 | 11 | deposition bundles as a formality in order to avoid someone |
| 09:40:30 | 12 | like Don Godwin moving for a directed verdict because no |
| 09:40:35 | 13 | testimony has been presented as to, for example, Halliburton. |
| 09:40:42 | 14 | **MR. GODWIN:**  Would you grant it, Your Honor? |
| 09:40:44 | 15 | **THE COURT:**  But then withdrawing those depositions at |
| 09:40:49 | 16 | the time that the live testimony is presented.  Okay.  Does |
| 09:40:53 | 17 | that help you, Steve? |
| 09:40:56 | 18 | **MR. ROBERTS:**  Yes, ma'am. |
| 09:40:56 | 19 | **THE COURT:**  Okay.  So that's thing number one. |
| 09:40:59 | 20 | And you didn't raise anything else that -- let's |
| 09:41:02 | 21 | see.  No, that was your cover letter.  So that takes care of |
| 09:41:07 | 22 | your cover letter. |
| 09:41:09 | 23 | **MR. HERMAN:**  But then I think Andy started to |
| 09:41:11 | 24 | introduce what is, I guess, a pretrial order issue on the |
| 09:41:15 | 25 | bundles. |

09:41:16  1          THE COURT:  It is.  It is.  So let's talk about that.
09:41:19  2   It seems to me that the way we resolve the bundles issue is:
09:41:26  3   Is it inexpensive enough to do or not?  What I'd like you to do
09:41:38  4   is talk to Jordan at InData and find out what would be
09:41:49  5   involved.  If it's cost prohibitive, I don't think we should do
09:41:53  6   it; and if it's not cost prohibitive, maybe we'll consider it.
09:41:59  7          MR. HERMAN:  Your Honor, we're happy to do whatever
09:42:01  8   the Court directs.  I think there's a bigger issue, though,
09:42:04  9   because I think that BP assumes that it's going to be very
09:42:06 10   objective and easy to go through and identify what specifically
09:42:10 11   has been ruled out.
09:42:13 12          And I can foresee us looking at a lot of
09:42:17 13   deposition testimony and saying that -- two things:  First of
09:42:22 14   all, "This doesn't really fall within the judge's ruling," and
09:42:25 15   BP's saying, "Yes, it does," and then that's a whole dispute
09:42:28 16   that has to be resolved before you can even get to the
09:42:31 17   mechanics of taking the bundle apart.
09:42:34 18          But then, in addition to that, I can see
09:42:37 19   situations where we might look at the testimony and say, "Okay.
09:42:40 20   Let's assume, we'll give you the benefit of the doubt, that
09:42:43 21   that might fall under the judge's ruling for these purposes,
09:42:47 22   but we still think this evidence is admissible, this testimony
09:42:51 23   is admissible for X, Y or Z purposes."
09:42:55 24          So what I think we're -- you know, there's lots
09:42:57 25   of reasons why I think it would be a waste of time, money and

| | | |
|---|---|---|
| 09:43:00 | 1 | effort to do, from a mechanical standpoint, especially since |
| 09:43:04 | 2 | this is a bench trial.  But in addition to that, I think that |
| 09:43:08 | 3 | we would set upon a journey that would take these next pretrial |
| 09:43:13 | 4 | months into a lot of time spent without very much resolution. |
| 09:43:17 | 5 | And I think the last thing the Court would want |
| 09:43:20 | 6 | to have to deal with in addition to just -- I mean, based on |
| 09:43:22 | 7 | everything that Judge Barbier's indicated to us, you know, he |
| 09:43:25 | 8 | seems to feel capable of reading through these and deciding |
| 09:43:29 | 9 | what's admissible and what isn't. |
| 09:43:31 | 10 | THE COURT:  You think? |
| 09:43:32 | 11 | MR. HERMAN:  I doubt that he would want to rule on |
| 09:43:34 | 12 | fights that are collateral fights about the limine fights that |
| 09:43:38 | 13 | we've already had.  It just doesn't make sense to do that |
| 09:43:42 | 14 | pretrial in addition to the mechanical issues. |
| 09:43:44 | 15 | THE COURT:  And the cost issues.  Okay. |
| 09:43:47 | 16 | MR. UNDERHILL:  Mike Underhill, the U.S. |
| 09:43:49 | 17 | And add to one layer -- an extra layer to what |
| 09:43:51 | 18 | Steve talked about -- and I agree with everything he said -- I |
| 09:43:54 | 19 | think there's even a deeper issue and that's an appellate |
| 09:43:57 | 20 | issue. |
| 09:43:58 | 21 | That in the event that we go to trial, we get a |
| 09:44:02 | 22 | judgment and any party appeals on any side of the fence, that |
| 09:44:04 | 23 | if we take these out of the bundles now, then we're not going |
| 09:44:08 | 24 | to have on the record for appeal the dispute that some party |
| 09:44:11 | 25 | might want to preserve, and at this point it's hypothetical |

09:44:14   1   because we don't know what we're talking about.

09:44:16   2                  But I don't think any party, whether it's

09:44:18   3   defendant or plaintiff's side of the fence, or petitioner, in

09:44:20   4   Transocean's case, wants to at this point waive blindly an

09:44:24   5   appellate right for an issue that may be important later on.

09:44:28   6   So I think that even trumps the immediate problems that Steve

09:44:31   7   has outlined.

09:44:32   8                  THE COURT:  Okay.  Andy?

09:44:34   9                  MR. LANGAN:  Your Honor, Mr. Nomellini can perhaps

09:44:37   10   refresh us all, but I think that the motion we filed last

09:44:41   11   March 1st, document number 5936 and 5936-1 --

09:44:46   12                  THE COURT:  Yeah, I have it right here.

09:44:47   13                  MR. LANGAN:  -- it was an example of an effort to do

09:44:53   14   what we're suggesting ought to be done.  And maybe one way to

09:44:58   15   approach this is to resolve that motion.  Because we feel

09:45:03   16   pretty strongly about this.  I hear what other counsel are

09:45:05   17   saying.  But, I mean, that -- maybe we just ought to resolve it

09:45:10   18   that way.  So it's just a thought.

09:45:12   19                  THE COURT:  Okay.

09:45:13   20                  MR. LANGAN:  We think it's capable of being done, we

09:45:15   21   think it ought to be done, but I think what most -- what we

09:45:17   22   probably want more than anything is clarity.

09:45:20   23                  THE COURT:  Okay.  Fair enough.

09:45:22   24                  MR. LANGAN:  Thank you.

09:45:23   25                  THE COURT:  All right.  The other thing that we had

09:45:27   1   on the pretrial order was the date for exchange of

09:45:35   2   demonstratives.  And BP thought that the latest version that

09:45:43   3   the PSC had circulated didn't allow enough time for review and

09:45:52   4   objection and resolution of the objection prior to the

09:45:55   5   commencement of trial.  For that first week is all we're

09:46:02   6   talking about.

09:46:06   7          MR. HERMAN:  I'm not sure if Mr. Roy's on the phone.

09:46:08   8   He might want to address this further.  But from our point of

09:46:11   9   view, this is largely a re-deadline of something that I think

09:46:18   10  was already done in large part.

09:46:20   11          I can't imagine -- you know, I think that there

09:46:23   12  had been a long discussion last time before trial where both

09:46:28   13  Mr. Roy and Mr. Beck had made the point, and I think it was

09:46:33   14  agreed to by pretty much everyone and ultimately the Court,

09:46:36   15  that there was a fundamental difference between, for example,

09:46:38   16  the big diagram of the blowout preventer -- and I think all

09:46:44   17  those demonstratives may have been exchanged already --

09:46:47   18          THE COURT:  I think they have.

09:46:50   19          MR. LANGAN:  They have been.

09:46:50   20          MR. HERMAN:  -- versus what you would normally have

09:46:52   21  in trial on a blackboard, so to speak, where you're just doing

09:46:56   22  bullet points with witnesses, et cetera.

09:46:59   23          THE COURT:  Right.

09:46:59   24          MR. HERMAN:  And for the diagram-type things,

09:47:01   25  everybody should get those in advance.  I think largely they

09:47:04  1   have.  But there needed to be flexibility during the trial when

09:47:07  2   you have cross and direct and on witnesses to who, you know, "I

09:47:13  3   realized something today, I'd like to do something, you know,

09:47:15  4   with this witness tomorrow," and particularly on cross, but

09:47:19  5   even on direct.

09:47:19  6           And that those things would be done, you know,

09:47:23  7   because of the mechanics that we're doing this electronically

09:47:27  8   rather than on a blackboard, I guess some accommodation has to

09:47:31  9   be made.  But, in general, I think it's more of a scope issue

09:47:34  10  than a timing issue.

09:47:36  11          And just we want to reconfirm -- I mean, we

09:47:38  12  don't really care what the first deadline is because we think

09:47:41  13  that we've already complied with the deadline, whatever it was.

09:47:44  14  We just want to make sure that the rule, for lack of a better

09:47:47  15  word, hasn't changed.  That there's a fundamental distinction

09:47:51  16  between the blackboard-type demonstrative/bullet-point-type

09:47:57  17  demonstrative versus the diagram-type demonstrative.

09:48:01  18          I don't know if Mr. Roy's on the phone or wants

09:48:03  19  to address this further.

09:48:04  20          **THE COURT:**  No, he's not and the meeting will go much

09:48:07  21  faster if he's not.

09:48:09  22          **MR. HERMAN:**  Okay.  I've done my best.

09:48:13  23          **THE COURT:**  I think that the procedure itself is not

09:48:15  24  in dispute.

09:48:16  25          Andy, do you agree with that?

09:48:20   1                    It's just -- the only issue remaining is the

09:48:22   2    deadline for exchange of that first week if, indeed, there are

09:48:26   3    new demonstratives.

09:48:29   4            MR. LANGAN:  That is my understanding, too.  I agree

09:48:30   5    with Your Honor.

09:48:31   6            THE COURT:  Okay.  So I'll take care of that, too.

09:48:34   7            MR. GODWIN:  Judge.

09:48:35   8            MR. LANGAN:  I'm sorry.  One more thing and then

09:48:37   9    Mr --

09:48:37  10            MR. GODWIN:  Yeah.  Go ahead, Andy.

09:48:38  11            MR. LANGAN:  So I just wanted to note that

09:48:40  12    paragraph 8 we did also propose pushing off the date for the

09:48:43  13    revised seating chart for the 21st of December rather than have

09:48:46  14    it on Monday.

09:48:47  15            THE COURT:  I saw that, yes.

09:48:49  16            MR. LANGAN:  Because I will be the first to admit, I

09:48:50  17    have not started it.  So if it's due Monday, I've got a

09:48:54  18    problem.

09:48:55  19            THE COURT:  No, it's not a problem.  I think we've

09:48:57  20    got plenty of time for a seating chart.

09:49:00  21                    Don Godwin probably wants to be front and

09:49:03  22    center.

09:49:04  23            MR. GODWIN:  Not at all, Judge.

09:49:06  24            MR. LANGAN:  We've handled that.

09:49:08  25            MR. GODWIN:  I'd like that we don't even have to be

09:49:10   1   there, Judge.

09:49:11   2              Don Godwin for Halliburton.

09:49:13   3              Your Honor, I agree with what Steve's saying and

09:49:16   4   Andy.  I would like to clarify and make certain, though, that

09:49:18   5   these demonstratives that may come up on cross of any witness

09:49:22   6   will be those that will be prepared during the trial as opposed

09:49:25   7   to having been prepared before trial and then just brought up

09:49:28   8   at a time when we're in the middle of a witness or trial,

09:49:32   9   somebody says, "Well, I've got a demonstrative that we've

09:49:36   10  prepared.  I'd like to put it up."

09:49:38   11             If they have been prepared before trial starts,

09:49:40   12  we'd like to see those in advance, as I'm sure everyone would.

09:49:44   13  But, obviously, as Steve suggests, as we're in the middle of

09:49:49   14  it, the night before if we need to do a demonstrative, or

09:49:51   15  somebody wants to get one ready for two or three days later, I

09:49:53   16  mean, we all understand that's the way it's done.

09:49:53   17             Is that what Steve's talking about?

09:49:55   18        **MR. HERMAN:**  Yes.

09:49:56   19        **THE COURT:**  Yeah, I think it is.  The order on

09:49:58   20  page 4, paragraph 5 currently reads:  "The parties have agreed

09:50:01   21  to exchange any additional demonstrative aids to be utilized

09:50:05   22  for direct examination of a prospective witness 48 hours before

09:50:09   23  the day the demonstrative aids are to be used for the first

09:50:13   24  time.  Demonstrative aids to be used in cross-examination will

09:50:17   25  be exchanged no later than 8:00 p.m. on the night before they

```
09:50:22   1   are to be used for the first time."
09:50:24   2           MR. GODWIN:  That's fine with us, Judge.  I just
09:50:25   3   wanted to make sure I understood that.  And I do agree with
09:50:28   4   what Steve was recommending, so long as they don't want me to
09:50:31   5   give them a surprise demonstrative that I've had two months
09:50:36   6   before, nor do I want to see one either.
09:50:38   7           THE COURT:  That's right.
09:50:38   8           MR. GODWIN:  Thank you, Your Honor.
09:50:38   9           THE COURT:  Okay.  You're welcome.
09:50:41   10          MR. ROY:  Judge, this is Jim Roy.  I have a question
09:50:44   11  for you.
09:50:44   12          THE COURT:  What would that be, Jim?  You weren't on
09:50:48   13  the original telephone list, so I'm not sure you're entitled to
09:50:51   14  speak today, but go ahead.
09:50:53   15          MR. ROY:  I asked to be on the telephone list and
09:50:55   16  spoke to Marie.  I don't understand that.
09:50:58   17          THE COURT:  I don't either.  Ooh, Jim Roy . . .
09:51:00   18          MR. ROY:  My question is:  It doesn't seem that a
09:51:03   19  demonstrative, in any meaning of the word, would be a direct
09:51:11   20  quote, an excerpt, from testimony, for example, a deposition.
09:51:19   21  It's an aid to the Court.  But unless somebody fraudulently
09:51:25   22  misrepresents -- and I can't imagine any lawyer in that
09:51:29   23  courtroom would because they would suffer the humiliation and
09:51:35   24  embarrassment of the Court -- no one can plead surprise.  It is
09:51:40   25  what it is.
```

| 09:51:41 | 1 | Just so we're clear on that.  Anybody disagree |
| 09:51:44 | 2 | with that? |
| 09:51:47 | 3 | THE COURT:  There is silence in the room.  I think |
| 09:51:49 | 4 | that use of depositions during trial is not demonstrative.  I |
| 09:51:59 | 5 | think you use them -- |
| 09:52:00 | 6 | MR. ROY:  Right.  But I'm not talking about the |
| 09:52:02 | 7 | actual picture of the deposition, Judge.  I'm talking about |
| 09:52:05 | 8 | making the print a little bit bigger so it could be seen from |
| 09:52:09 | 9 | the bench.  I still don't think that's a demonstrative if it's |
| 09:52:12 | 10 | a direct quote, nothing's changed from the deposition.  That's |
| 09:52:15 | 11 | my point. |
| 09:52:16 | 12 | THE COURT:  We got your point.  Thanks. |
| 09:52:19 | 13 | Does anybody disagree with that?  I didn't think |
| 09:52:25 | 14 | so.  Okay.  You're in business, Jim. |
| 09:52:27 | 15 | MR. ROY:  Thank you, ma'am. |
| 09:52:28 | 16 | THE COURT:  You're welcome. |
| 09:52:32 | 17 | All right.  The adverse inferences Fifth |
| 09:52:37 | 18 | Amendment motions are under submission.  Again, a judge trial. |
| 09:52:44 | 19 | Does anybody think that these have to be decided sooner rather |
| 09:52:49 | 20 | than later?  Okay. |
| 09:52:58 | 21 | Let's get an update -- Rob, good morning -- on |
| 09:53:04 | 22 | the BOP and how we're coming on that data. |
| 09:53:08 | 23 | MR. GASAWAY:  Good morning. |
| 09:53:10 | 24 | THE COURT:  By the way, your haircut looks nice. |
| 09:53:13 | 25 | MR. GASAWAY:  Thank you, Your Honor.  If you had to |

| | | |
|---|---|---|
| 09:53:14 | 1 | compare my haircut with Alan York's weight loss, which do you |
| 09:53:18 | 2 | think is making more progress? |
| 09:53:20 | 3 | THE COURT:  Alan. |
| 09:53:25 | 4 | MR. GASAWAY:  Your Honor, on the testing for |
| 09:53:28 | 5 | Intertek, we did see the revised Phase Two time line and the |
| 09:53:32 | 6 | December 14th.  So we're going to comply with that deadline. |
| 09:53:36 | 7 | We're going to get as many test results as we can by then. |
| 09:53:40 | 8 | We're up and running on the multiple sites and, obviously, |
| 09:53:43 | 9 | whatever we can get done, we'll have distributed by the 14th. |
| 09:53:47 | 10 | THE COURT:  Okay.  Good, good, good.  Stay where you |
| 09:53:49 | 11 | are. |
| 09:53:50 | 12 | Anything to report with you and Sarah that we |
| 09:53:57 | 13 | need to talk about on open issues? |
| 09:53:59 | 14 | MR. GASAWAY:  Your Honor, from our standpoint, we're |
| 09:54:00 | 15 | continuing to talk on a couple of open issues.  She sent us a |
| 09:54:04 | 16 | letter on November 20th on what I would call the non-DOE data |
| 09:54:09 | 17 | loss issues.  We're going to get a letter back to her on that |
| 09:54:11 | 18 | today. |
| 09:54:12 | 19 | We're also continuing to narrow the issues on |
| 09:54:16 | 20 | the data loss remedial order.  I understand that Sarah's going |
| 09:54:25 | 21 | to provide an analysis to the analysis we sent to her today. |
| 09:54:28 | 22 | So we're going to look forward to getting that analysis and |
| 09:54:31 | 23 | taking a look at it and going forward with that. |
| 09:54:35 | 24 | So I don't think there's anything to be resolved |
| 09:54:37 | 25 | today. |

09:54:37  1           THE COURT:  Good.  Okay.  Sarah, any --

09:54:37  2           MS. HIMMELHOCH:  Your Honor, this is Sarah.  I agree

09:54:39  3  with Rob that on the non-DOE recollection, we're -- my

09:54:43  4  understanding is we've just got one -- I owed him two things.

09:54:47  5  I sent him one yesterday, which was the stipulations to

09:54:50  6  authenticity on the Coast Guard documents they identified.

09:54:54  7           And the other thing I owe them is an analysis of

09:54:56  8  a couple of documents that had extremely large families.  So I

09:55:03  9  think we're almost done with everything but the DOE

09:55:06  10  recollection order.

09:55:07  11           I think we're very close -- we're extremely

09:55:10  12  close to resolving the alternatives to fighting about whether

09:55:16  13  Brandon Leatha's analysis is accurate.  I think we're down to

09:55:20  14  two paragraphs in the order.

09:55:22  15           And my thought is if we can't work out the terms

09:55:25  16  of the order before we go into briefing the whole question of,

09:55:28  17  "Was there data loss, and should there be any sanctions as a

09:55:31  18  result of that?" it might be worth for you to get a red line

09:55:35  19  from us and an explanation of why we think the order should

09:55:39  20  read this way, and a red line from BP saying -- with an e-mail

09:55:43  21  saying why they think the order should be their way and then we

09:55:47  22  have a call about the order.

09:55:50  23           Because from our perspective, we entered into

09:55:53  24  the discussions about the order in order to try and avoid

09:55:56  25  having to brief and argue about the spoliation issue.  I still

09:56:00  1   think there's a great deal of possibility that with your

09:56:02  2   guidance we could come to a resolution on that order if we

09:56:07  3   can't do it by ourselves and avoid everybody having to brief

09:56:11  4   and litigate the larger issue of whether or not, in fact, there

09:56:14  5   was a data loss.

09:56:16  6          That being said, we do plan to send them a

09:56:18  7   preliminary analysis of BP's -- what they've called the "Leatha

09:56:24  8   analysis" this afternoon or late this evening.  I reserve the

09:56:28  9   right to all of the day, including up to and including

09:56:30  10  11:59:59, but they will get it today and that will free them up

09:56:37  11  to brief if they'd rather brief than try and work out the rest

09:56:41  12  of the order.

09:56:42  13         MR. GASAWAY:  Your Honor, we'd like to see what the

09:56:43  14  analysis is.  Obviously, without getting into the weeds, one of

09:56:49  15  the fundamental questions that we have that has caused us to

09:56:53  16  not be able to close the gap is just, "Are there any holes in

09:56:57  17  the Leatha analysis?"  And in our view, the Leatha analysis is

09:57:02  18  pretty conclusive.  We shared that with them maybe three, maybe

09:57:06  19  four weeks ago.

09:57:07  20         If we're incorrect in that premise, then the

09:57:10  21  world looks a little different; if we are correct in that

09:57:13  22  premise, then the world looks as we think it does today.  So

09:57:16  23  before we sort of make any commitments about next steps, we're

09:57:23  24  really anxious to see the counter on the Leatha analysis.

09:57:28  25         I will say by way of introduction that, although

09:57:31  1   the differences in language between the two parties are narrow,

09:57:34  2   we -- each side, I think, has put forward multiple options.  I

09:57:38  3   think we were up to five.  We said, "Pick them."  Any of the

09:57:45  4   options we've ever proposed are still on the table.  We haven't

09:57:49  5   been able to close the remaining gap, I think because of just

09:57:53  6   this fundamental difference in point of view, where we think

09:57:56  7   the Leatha analysis is conclusive, they think the Leatha

09:58:02  8   analysis may have holes in it.

09:58:04  9           So before we can resolve that issue, we'd like

09:58:07  10  to see what they say.  But going into any resolution of the

09:58:10  11  Court, I think that's really the fundamental question:  Is the

09:58:13  12  Leatha analysis correct and conclusive, or is it incorrect and

09:58:17  13  not conclusive?

09:58:17  14          It's not really a drafting issue, because we've

09:58:20  15  tried five different options on the drafting.  So I think

09:58:23  16  having a little bit of background might be helpful to the Court

09:58:26  17  on why we either still do think the Leatha analysis is

09:58:29  18  conclusive or why we've been convinced by what we're going to

09:58:32  19  see at 11:59:59 this evening.

09:58:38  20          MS. HIMMELHOCH:  Your Honor, I could not more

09:58:40  21  fundamentally disagree with Rob on the point of the centrality

09:58:43  22  of the Leatha analysis.

09:58:44  23          We have, for purposes of negotiating this order,

09:58:47  24  accepted the idea that BP believes that it has established data

09:58:54  25  loss at the Sandia National Laboratories as a result of the

| | | |
|---|---|---|
| 09:58:59 | 1 | deletion of two corporate mailboxes after those individuals had |
| 09:59:02 | 2 | certified, not once, but twice, that they had turned over all |
| 09:59:08 | 3 | relevant information. |
| 09:59:09 | 4 | We do not believe, and we believe that we will |
| 09:59:11 | 5 | be able to show, Judge, with our preliminary analysis, that the |
| 09:59:16 | 6 | Leatha analysis is both -- double counts what is quote/unquote |
| 09:59:21 | 7 | a unique e-mail, it treats as substantive e-mails that are not |
| 09:59:26 | 8 | substantive e-mails, and it has some fundamental flaws in its |
| 09:59:31 | 9 | basic design. |
| 09:59:32 | 10 | But we entered into discussion of the draft |
| 09:59:36 | 11 | order on the assumption that we weren't going to fight about |
| 09:59:39 | 12 | whether or not there had been loss of data at DOE.  The |
| 09:59:42 | 13 | difference between the parties is, "How far beyond the Sandia |
| 09:59:44 | 14 | National Laboratories do you extend the release in light of |
| 09:59:49 | 15 | what they claim as data loss at one laboratory out of all of |
| 09:59:55 | 16 | the agencies and offices with all their different |
| 09:59:58 | 17 | infrastructures and all their different document management |
| 10:00:01 | 18 | practices?" |
| 10:00:01 | 19 | It's a question of how far do you extrapolate, |
| 10:00:05 | 20 | not whether or not you accept the premise of the Leatha |
| 10:00:08 | 21 | analysis in the first place when you're talking about the |
| 10:00:10 | 22 | negotiation of the order. |
| 10:00:11 | 23 | THE COURT:  Okay.  I've gotcha on that.  Why don't we |
| 10:00:13 | 24 | do this:  Why don't we go ahead and look at the United States' |
| 10:00:17 | 25 | response, that we expect to get sometime this evening, and |

| | | |
|---|---|---|
| 10:00:23 | 1 | let's maybe have a phone call next week between you and Sarah |
| 10:00:27 | 2 | and see where we are at that point. |
| 10:00:29 | 3 | **MR. GASAWAY:**  Okay.  We're happy to do that.  We'll |
| 10:00:32 | 4 | follow-up with Sarah next week. |
| 10:00:35 | 5 | **THE COURT:**  Okay.  Good, good, good.  So we'll take |
| 10:00:37 | 6 | that up offline. |
| 10:00:37 | 7 | **MR. GASAWAY:**  Okay.  Thank you. |
| 10:00:37 | 8 | **THE COURT:**  Okay.  Thanks. |
| 10:00:38 | 9 | **MS. HIMMELHOCH:**  Thank you, Your Honor. |
| 10:00:39 | 10 | **THE COURT:**  You're welcome, Sarah. |
| 10:00:43 | 11 | **MR. CHAKERES:**  Your Honor, this is Nat Chakeres.  I |
| 10:00:45 | 12 | just had one thing I wanted to ask about the Michoud work that |
| 10:00:49 | 13 | BP was doing. |
| 10:00:49 | 14 | **THE COURT:**  Sure. |
| 10:00:52 | 15 | **MR. CHAKERES:**  We have noticed in BP's recent |
| 10:00:53 | 16 | productions that they've begun sending some either scans or |
| 10:00:57 | 17 | other data associated with the work that was being done at |
| 10:01:00 | 18 | Michoud.  And we -- you know, this was identified in their |
| 10:01:04 | 19 | cover letters and then it sort of -- just the files are in the |
| 10:01:08 | 20 | same production as everything else that they're producing. |
| 10:01:12 | 21 | It would be easier for us to sort that out and |
| 10:01:16 | 22 | segregate it if there could be sort of specific productions of |
| 10:01:20 | 23 | the Michoud data and scans as opposed to mixing that with |
| 10:01:28 | 24 | documents for fact witnesses that are coming out right now. |
| 10:01:34 | 25 | **MR. NOMELLINI:**  Hey, Nat, it's Mark.  Happy to sort |

10:01:36   1   through that with you.  I'll give you a call when the
10:01:38   2   conference is over and we can figure out a way to isolate
10:01:42   3   those.
10:01:42   4              MR. CHAKERES:  Thanks.  We appreciate it.
10:01:45   5              THE COURT:  Thanks, Mark.
10:01:46   6              I've got a report on the University of
10:01:48   7   California Santa Barbara.  As recently as 9:46 this morning,
10:01:56   8   Captain Englebert believes that she is getting traction and we
10:02:04   9   think that more documents will be being released today and,
10:02:10  10   perhaps after a long weekend, Monday, is the projected
10:02:16  11   schedule.
10:02:17  12              So I think she's targeting next Wednesday as a
10:02:22  13   deadline.
10:02:23  14              MR. GASAWAY:  That would be wonderful, Your Honor, if
10:02:25  15   we could get all the documents by next Wednesday.  We really do
10:02:29  16   appreciate the Court and Captain Englebert's very deep-dive
10:02:32  17   involvement here to finally move this issue forward.  It's been
10:02:37  18   a lengthy process.
10:02:39  19              THE COURT:  It has been.  But we're hopeful that
10:02:43  20   we're going -- we're on track and we're going to get it taken
10:02:46  21   care of this week.
10:02:49  22              On the Intertek deposition, we extended BP's
10:02:57  23   designated time by 30 minutes, and that's without prejudice to
10:03:05  24   BP's right to acquire further time through the "hustle method."
10:03:12  25   We came up with that one.  And we've reserved both the U.S. and

| | | |
|---|---|---|
| 10:03:18 | 1 | BP's right to seek a Phase Three deposition later on. |
| 10:03:25 | 2 | MR. GASAWAY:  That's correct, Your Honor.  I just |
| 10:03:27 | 3 | wanted to say, we appreciate you and Mike getting on the phone |
| 10:03:30 | 4 | yesterday.  I do think we've hustled up some additional time |
| 10:03:34 | 5 | via the "hustle method."  We appreciate the ability to kind of |
| 10:03:38 | 6 | not reallocate and the additional time, and the deposition |
| 10:03:44 | 7 | started earlier and I think all is well.  So thanks for getting |
| 10:03:44 | 8 | on the phone. |
| 10:03:45 | 9 | THE COURT:  What upsets me is I was going to have a |
| 10:03:47 | 10 | slide of the hustle today and I've forgot it.  We'll have to do |
| 10:03:53 | 11 | that for another week. |
| 10:03:55 | 12 | MR. GASAWAY:  Next week, Your Honor. |
| 10:03:58 | 13 | MS. HIMMELHOCH:  Your Honor, before we move on to |
| 10:03:59 | 14 | further deposition topics, there's just one issue I'd like to |
| 10:04:03 | 15 | put on the table for discussion between BP and us and |
| 10:04:08 | 16 | potentially you, which is:  We're still getting additional |
| 10:04:13 | 17 | document productions from BP from custodians who were Phase One |
| 10:04:16 | 18 | and Phase Two custodians who have already been deposed. |
| 10:04:21 | 19 | We'd like at some point to get a report from BP |
| 10:04:23 | 20 | on why these documents are still coming out; and if they're |
| 10:04:30 | 21 | going through a QA/QC process like the U.S. went through, when |
| 10:04:34 | 22 | they believe that will be completed.  Because we're getting a |
| 10:04:38 | 23 | little bit concerned that we're seeing some documents, and not |
| 10:04:42 | 24 | in small numbers, documents coming in that we believe should |
| 10:04:46 | 25 | have been produced a while ago. |

```
10:04:49   1              We'd just like to get a sense of what's
10:04:51   2   happening on the BP production so that we can make decisions
10:04:53   3   about whether it's something we want to raise further.
10:04:57   4              THE COURT:  Okay.
10:04:59   5              MR. NOMELLINI:  Your Honor, it's Mark.
10:05:01   6              There are, you know, documents that are still
10:05:04   7   being produced.  For example, from Michoud, for example, from
10:05:08   8   the certifications that are being made in connection with
10:05:11   9   upcoming depositions.  We're happy to talk to Sarah about any
10:05:15  10   concerns that she has with respect to any documents and we can
10:05:20  11   figure out exactly where they're coming from.
10:05:23  12              THE COURT:  Okay.
10:05:24  13              MS. HIMMELHOCH:  Okay.
10:05:25  14              THE COURT:  Why don't you all tee that up for a
10:05:29  15   discussion at some point today while Sarah's not working on the
10:05:37  16   11:59:59 submission.
10:05:43  17              MS. HIMMELHOCH:  Will do, Your Honor.
10:05:45  18              MR. NOMELLINI:  That sounds good.
10:05:46  19              THE COURT:  Great.  Let me know if there's a problem.
10:05:49  20              Oh, Mr. O'Rourke, good morning.
10:05:51  21              MR. O'ROURKE:  Good morning, Your Honor.  Steve
10:05:52  22   O'Rourke for the United States.
10:05:57  23              I just want to be a little more precise about
10:05:59  24   something about the Intertek deposition in case our language
10:06:02  25   was not as precise as it should have been.  There's no such
```

| | | |
|---|---|---|
| 10:06:06 | 1 | thing as Phase Three.  So -- |
| 10:06:09 | 2 | **THE COURT:**  Well, Mike and I were not sure we were up |
| 10:06:12 | 3 | to snuff on what Phase Three was, but we went with the flow. |
| 10:06:19 | 4 | **MR. O'ROURKE:**  Yeah.  So just in the interest of not |
| 10:06:20 | 5 | having this thrown in my face next year, there's no such thing |
| 10:06:25 | 6 | as Phase Three; and if there is a Phase Three, nobody knows |
| 10:06:28 | 7 | what it's about yet. |
| 10:06:29 | 8 | **THE COURT:**  Well, I think Andy thinks there's a Phase |
| 10:06:29 | 9 | Three. |
| 10:06:29 | 10 | **MR. O'ROURKE:**  So we're reserving our right with |
| 10:06:32 | 11 | Intertek to seek an additional deposition of a witness related |
| 10:06:35 | 12 | to later phases or -- and other matters. |
| 10:06:37 | 13 | **THE COURT:**  I think that's fair -- |
| 10:06:38 | 14 | **MR. O'ROURKE:**  Thank you. |
| 10:06:38 | 15 | **THE COURT:**  -- because we weren't sure what Phase |
| 10:06:40 | 16 | Three was, but it didn't bother us for the purposes of our |
| 10:06:44 | 17 | discussion yesterday. |
| 10:06:45 | 18 | **MR. O'ROURKE:**  Thank you. |
| 10:06:46 | 19 | **THE COURT:**  So thank you for the clarification, that |
| 10:06:48 | 20 | makes us feel better. |
| 10:06:52 | 21 | Let's see.  We have tentative dates for |
| 10:06:56 | 22 | Oceaneering, but that was dependent on implementation of |
| 10:07:01 | 23 | rolling document production.  Steve, have you got an update on |
| 10:07:05 | 24 | how we're coming there? |
| 10:07:07 | 25 | **MR. O'ROURKE:**  Yes, ma'am.  So the dates that had |

| | | |
|---|---|---|
| 10:07:08 | 1 | been previously proposed were December 17th and 18th, two |
| 10:07:10 | 2 | different witnesses. |
| 10:07:12 | 3 | THE COURT:  Correct. |
| 10:07:14 | 4 | MR. O'ROURKE:  They are not going to make the 21 days |
| 10:07:16 | 5 | in advance of those dates.  The last update I got was that the |
| 10:07:18 | 6 | documents would come to us in three, four days. |
| 10:07:22 | 7 | THE COURT:  And what was that, five days ago? |
| 10:07:25 | 8 | MR. O'ROURKE:  No, that was this morning.  At this |
| 10:07:28 | 9 | point, the U.S. is willing to go forward with the 17th and |
| 10:07:32 | 10 | 18th and waive the 21-day advance document production |
| 10:07:39 | 11 | requirement if other people are willing to do that. |
| 10:07:43 | 12 | If it turns out the documents don't roll out at |
| 10:07:45 | 13 | the current estimate -- |
| 10:07:47 | 14 | THE COURT:  So you're basically looking at production |
| 10:07:49 | 15 | maybe next Wednesday or Thursday? |
| 10:07:52 | 16 | MR. O'ROURKE:  That's as of the e-mail from the |
| 10:07:53 | 17 | attorney for Oceaneering that I got this morning. |
| 10:07:57 | 18 | THE COURT:  Okay. |
| 10:07:58 | 19 | MR. O'ROURKE:  That's probably right.  So that's the |
| 10:08:00 | 20 | beginning of December for depositions on December 17th and |
| 10:08:02 | 21 | 18th. |
| 10:08:03 | 22 | THE COURT:  On the 17th and 18th.  So would you all |
| 10:08:04 | 23 | think about that and let Steve know whether you all are willing |
| 10:08:10 | 24 | to waive the 21-day rule and keep it on the 17th and 18th if, |
| 10:08:16 | 25 | indeed, the document production is completed this coming week? |

10:08:22   1          MR. O'ROURKE:  That's right.  If it's not completed
10:08:23   2   this coming week, I'm not sure whether we're going to want --
10:08:27   3   whether the U.S. is going to want to go forward on the 17th and
10:08:30   4   18th --
10:08:31   5          THE COURT:  I understand.
10:08:31   6          MR. O'ROURKE:  -- or whether we're going to try to
10:08:32   7   ask permission to bump it a little later, probably not 21 days
10:08:37   8   between the documents and the depositions anyway.
10:08:39   9          THE COURT:  Right.  Okay.  Fair enough.
10:08:41  10          MR. O'ROURKE:  Thank you.
10:08:46  11          THE COURT:  Now, we've got a schedule of a lot of
10:08:52  12   fact witnesses coming up where they are, by default, put down
10:09:01  13   for two days, but we're not certain that we need two days with
10:09:05  14   all of them.  I wanted to get going on talking about that and
10:09:11  15   seeing if you all can reach agreement on who is one and who is
10:09:17  16   two and just put it out there for discussion, whether you all
10:09:24  17   have started those discussions or not.
10:09:28  18              Everybody has blank faces.
10:09:32  19          MR. O'ROURKE:  Your Honor, before we move on -- so
10:09:36  20   you're talking about the 18 witnesses at this point?
10:09:37  21          THE COURT:  Yes.
10:09:38  22          MR. O'ROURKE:  Yeah.  Before we move on to that --
10:09:41  23          THE COURT:  Yes, sir.
10:09:41  24          MR. O'ROURKE:  -- I would just like to briefly
10:09:43  25   mention Wild Well Control.

| | | |
|---|---|---|
| 10:09:46 | 1 | THE COURT:  Oh, good.  Thank you. |
| 10:09:46 | 2 | MR. O'ROURKE:  So you beat me up on the two-day thing |
| 10:09:49 | 3 | last week, so it's going to be a one day.  We still don't have |
| 10:09:52 | 4 | a date from Ms. Mince.  We believe the witness would be |
| 10:09:55 | 5 | Mr. Barnett. |
| 10:09:58 | 6 | THE COURT:  Barnett. |
| 10:09:59 | 7 | MR. O'ROURKE:  We asked -- now that it's so close, we |
| 10:10:02 | 8 | asked if it could be during the week of the 10th.  Alabama has |
| 10:10:04 | 9 | asked for it to be the 10th or the 13th.  Ms. Mince has still |
| 10:10:08 | 10 | not provided a date. |
| 10:10:10 | 11 | THE COURT:  All right. |
| 10:10:10 | 12 | MR. O'ROURKE:  Thank you. |
| 10:10:10 | 13 | THE COURT:  And it's Mr. Barnett? |
| 10:10:16 | 14 | MR. O'ROURKE:  That's my understanding.  I don't know |
| 10:10:17 | 15 | his first name off the top of my head. |
| 10:10:21 | 16 | THE COURT:  We will undertake to speak to Ms. Mince |
| 10:10:24 | 17 | today. |
| 10:10:25 | 18 | MR. O'ROURKE:  Thank you. |
| 10:10:25 | 19 | THE COURT:  And either of those dates is fine, huh? |
| 10:10:27 | 20 | MR. BARR:  I'm good with anything. |
| 10:10:28 | 21 | THE COURT:  There you go.  It's an all new day, isn't |
| 10:10:31 | 22 | it? |
| 10:10:32 | 23 | MR. BARR:  I've seen the light. |
| 10:10:38 | 24 | MR. STERBCOW:  I wouldn't go that far. |
| 10:10:40 | 25 | MR. O'ROURKE:  Now, returning to the question that |

10:10:41  1  you had actually asked me.

10:10:43  2      **THE COURT:**  Yeah, yeah, yeah.

10:10:45  3      **MR. O'ROURKE:**  You mentioned whether all the 18

10:10:47  4  witnesses should be two days or one day.  I think seven of

10:10:50  5  those witnesses are federal employees or federal affiliates.

10:10:55  6      Our proposal for Secretary of Energy, Steven

10:10:57  7  Chu, is zero days, what with him being a cabinet secretary, and

10:11:02  8  we're prepared to make a motion to quash that deposition.  In

10:11:08  9  such a motion, we would agree that he could be replaced by a

10:11:11  10  new witness.

10:11:13  11      Having said that, if the other parties are

10:11:16  12  willing to make extraordinary procedural changes to the way

10:11:22  13  it's going forward, we're willing to take that back to the

10:11:26  14  Secretary's office and see if he's amenable.

10:11:28  15      For example, it has to be in D.C.  It has to be

10:11:32  16  on turf that he's comfortable on and won't even be one day

10:11:36  17  long.  If the parties are amenable to something like that, then

10:11:40  18  we could refrain from filing the motion.  I mentioned this to

10:11:42  19  Mr. Gasaway to take back to his team.

10:11:44  20      **THE COURT:**  Okay.

10:11:45  21      **MR. O'ROURKE:**  Another idea would be we're not that

10:11:46  22  happy with the idea of him being interrogated seriatim in short

10:11:52  23  increments by a bunch of different lawyers.  So I don't have a

10:11:56  24  specific concrete proposal right now, but it would probably be

10:11:59  25  something along the lines of, if the parties are willing to

| | | |
|---|---|---|
| 10:12:02 | 1 | limit it to five hours in D.C. with one attorney doing the |
| 10:12:07 | 2 | examination, or perhaps two, then we will take it back to the |
| 10:12:11 | 3 | Secretary's -- to the General Counsel's office at Energy and |
| 10:12:14 | 4 | see if they'll let us not make the motion. |
| 10:12:16 | 5 | THE COURT:  Okay.  All right. |
| 10:12:19 | 6 | MR. O'ROURKE:  Thank you. |
| 10:12:19 | 7 | Then on other witnesses for the U.S. |
| 10:12:24 | 8 | THE COURT:  Yes. |
| 10:12:24 | 9 | MR. O'ROURKE:  The two Coast Guard guys who are -- |
| 10:12:29 | 10 | who Rob has suggested are probably source control, they |
| 10:12:32 | 11 | probably are source control.  And we think maybe they have |
| 10:12:37 | 12 | limited knowledge.  They might be candidates for one-day |
| 10:12:41 | 13 | depositions.  But for today's purposes, I'd say those three |
| 10:12:47 | 14 | names, reserve our rights on the other people and would like to |
| 10:12:52 | 15 | see what BP has to say. |
| 10:12:54 | 16 | We certainly have opinions about which of BP's |
| 10:12:56 | 17 | witnesses are definitely two days.  So . . . |
| 10:12:59 | 18 | THE COURT:  Okay. |
| 10:13:00 | 19 | MR. O'ROURKE:  Thank you. |
| 10:13:01 | 20 | THE COURT:  So, Rob, hold on just a second. |
| 10:13:03 | 21 | The ones that I'm particularly concerned about |
| 10:13:05 | 22 | are the ones that are already on the calendar.  For example, |
| 10:13:13 | 23 | Steve Carmichael and Mr. Watson, December 18th, 19th, 19th, and |
| 10:13:20 | 24 | 20th.  Then we have -- |
| 10:13:31 | 25 | MR. O'KEEFE:  And Tim Lockett on the 18th and 19th. |

10:13:34  1         **THE COURT:**  Yeah.  That's good.  Thank you, Mike.
10:13:36  2    Tim Lockett.  Those are the ones that I think we probably need
10:13:40  3    to agree on ASAP.  Of course, the others are all marked
10:13:46  4    December/January, so we don't have dates for them.  Many of
10:13:51  5    them are in January, so we don't have to worry as much.
10:13:55  6         **MR. O'ROURKE:**  Right.  Earlier this week -- or
10:13:59  7    recently, I sent to you a letter and cc'd the other parties
10:14:04  8    setting out dates for our -- proposed dates for several of our
10:14:06  9    witnesses.  I'm going to send a letter soon updating those
10:14:12 10    dates.  One of them has changed and some of them we've narrowed
10:14:17 11    from a range to a specific date.
10:14:18 12         **THE COURT:**  Okay.  And most of those --
10:14:20 13         **MR. O'ROURKE:**  Were in January.
10:14:21 14         **THE COURT:**  -- were in January.
10:14:23 15         **MR. O'ROURKE:**  Yes, ma'am.
10:14:23 16         **THE COURT:**  So we have time to work on those.  The
10:14:25 17    ones that I'm concerned about are the ones that are scheduled
10:14:28 18    for December --
10:14:28 19         **MR. O'ROURKE:**  Yes, ma'am.
10:14:28 20         **THE COURT:**  -- and I definitely want to reach a
10:14:30 21    resolution on those.
10:14:31 22         **MR. O'ROURKE:**  Right.  And you mentioned Admiral
10:14:33 23    Watson.  I believe he's now "Retired Admiral Watson."  He's one
10:14:37 24    of the Coast Guard witnesses who we think is probably source
10:14:40 25    control.  I think Mr. Gasaway's recent summary of who's who

| | | |
|---|---|---|
| 10:14:43 | 1 | agreed that he was source control. |
| 10:14:46 | 2 | **THE COURT:**  Yes. |
| 10:14:46 | 3 | **MR. O'ROURKE:**  I think Mr. Barr might agree that he's |
| 10:14:48 | 4 | source control.  He's one of the witnesses that I just said was |
| 10:14:52 | 5 | probably a candidate for one day based on his limited topics. |
| 10:14:57 | 6 | I haven't had a chance to talk to BP about, or any other party, |
| 10:15:01 | 7 | about whether they agree with that. |
| 10:15:03 | 8 | **THE COURT:**  All right.  So let's get rolling, |
| 10:15:05 | 9 | especially on the December witnesses; and not to say put off |
| 10:15:07 | 10 | the others, but let's make sure that we are either on the same |
| 10:15:12 | 11 | page or you let us know that we're not on the same page for the |
| 10:15:15 | 12 | December people. |
| 10:15:16 | 13 | **MR. O'ROURKE:**  Thank you. |
| 10:15:17 | 14 | **THE COURT:**  Thanks. |
| 10:15:17 | 15 | Okay.  Rob? |
| 10:15:19 | 16 | **MR. O'KEEFE:**  Excuse me, Your Honor.  Is there going |
| 10:15:21 | 17 | to be a deadline for them to do that, because we don't have |
| 10:15:23 | 18 | another conference until December 14th? |
| 10:15:26 | 19 | **THE COURT:**  Why don't you all -- yeah.  That's a good |
| 10:15:28 | 20 | point.  Let's talk about that right now. |
| 10:15:31 | 21 | Next week we don't have a conference.  I know |
| 10:15:36 | 22 | you all will be disappointed to hear that.  And then on the |
| 10:15:40 | 23 | 14th, we decided not to have a conference because Andy |
| 10:15:46 | 24 | brilliantly pointed out that you all are having a meeting with |
| 10:15:54 | 25 | Judge Barbier that day, so our work group -- |

| 10:15:58 | 1 | **MR. LANGAN:**  No, on the 18th. |

10:15:58   1              MR. LANGAN:  No, on the 18th.
10:16:00   2              THE COURT:  Yeah, on the 18th.  I'm sorry.
10:16:01   3              MR. LANGAN:  So, therefore, maybe do your conference
10:16:03   4    after his on the 18th.
10:16:06   5              THE COURT:  So our conference will be on the 18th.
10:16:09   6              MR. LANGAN:  Which is a Tuesday.
10:16:11   7              THE COURT:  Which is a Tuesday.
10:16:12   8              MR. LANGAN:  It seems to make sense, if everybody
10:16:14   9    agrees, and Your Honor agrees.
10:16:16  10              THE COURT:  I agree.
10:16:18  11              I'm sorry, phone participant?
10:16:22  12              MR. LANGAN:  And we're not doing the 7th then?
10:16:25  13              THE COURT:  We're not doing the 7th.  I'm going to be
10:16:27  14    in the U.S. Virgin Islands.
10:16:31  15              Phone participant, please mute your phone if
10:16:34  16    you're talking to someone else.
10:16:53  17              Telephone participant, please mute your phone if
10:16:55  18    you're not speaking to us.  Thank you.
10:17:00  19              All right.  Go ahead, Rob.
10:17:02  20              MR. GASAWAY:  A couple things on the scheduling.
10:17:07  21    We'll obviously --
10:17:07  22              (INTERRUPTION BY A TELEPHONE PARTICIPANT.)
10:17:09  23              THE COURT:  Just pretend like it's not happening.
10:17:14  24              MR. GASAWAY:  Okay, Your Honor.  We'll obviously want
10:17:16  25    to see the production that we're going to get from Oceaneering

| | | |
|---|---|---|
| 10:17:20 | 1 | on Wednesday before we go through.  Because of this revised |
| 10:17:23 | 2 | conference schedule, we're not going to have time to come back |
| 10:17:27 | 3 | before you and decide whether there's too much too late to go |
| 10:17:28 | 4 | forward. |
| 10:17:28 | 5 | So that would be one thing I would put a marker |
| 10:17:30 | 6 | down on -- |
| 10:17:30 | 7 | THE COURT:  Right. |
| 10:17:30 | 8 | MR. GASAWAY:  -- that Steve and I should work out. |
| 10:17:32 | 9 | And with regard to Mr. Lockett, Admiral Watson, |
| 10:17:37 | 10 | others on the December schedule, let me and Steve have an |
| 10:17:40 | 11 | offline conversation before we get into that particular issue. |
| 10:17:43 | 12 | THE COURT:  No problem.  Why don't we set a close of |
| 10:17:48 | 13 | business Tuesday to let us know whether there's a problem or |
| 10:17:52 | 14 | whether you've agreed. |
| 10:17:55 | 15 | MR. GASAWAY:  Okay.  That would work, Your Honor. |
| 10:17:55 | 16 | THE COURT:  Whatever you agree to is fine by us. |
| 10:17:58 | 17 | MR. GASAWAY:  Is that okay with you? |
| 10:17:59 | 18 | MR. O'ROURKE:  Sure.  Are you going to do another |
| 10:18:01 | 19 | topic? |
| 10:18:02 | 20 | MR. GASAWAY:  Well, I was going to talk briefly about |
| 10:18:05 | 21 | Secretary Chu and just sort of let you know where this was |
| 10:18:08 | 22 | going. |
| 10:18:09 | 23 | Obviously, in terms of logistics, we're more |
| 10:18:12 | 24 | than happy to do the deposition in Washington.  We're more than |
| 10:18:15 | 25 | happy to accommodate his schedule, include one of the days as a |

10:18:19   1   deposition day on Saturday if that helps him, as we saw on the
10:18:23   2   schedule for experts.  Obviously, he's a quasi-expert in this
10:18:28   3   case, and that's part of the issue.  It's not the typical
10:18:30   4   cabinet secretary role that he played, both on the source
10:18:35   5   control and the response side.
10:18:38   6          Obviously, they've said, "We've got a Nobel
10:18:40   7   Prize winner who's a federal employee.  Let's not just put him
10:18:47   8   on the bench and let him coach, let's get him out on the floor,
10:18:51   9   let him get out his calculator and really play."
10:18:53  10          So on this issue, I think it can be easily
10:18:58  11   divided into two buckets:  Accommodation, which we're going to
10:19:01  12   be incredibly flexible on in terms of doing it in Washington
10:19:04  13   and adjusting the time, et cetera; quashing, I don't think,
10:19:07  14   given his role and given the testimony referencing to him on so
10:19:12  15   many different levels, you know, the timing of putting the
10:19:15  16   capping stack on, the 10 percent margin of error, et cetera,
10:19:19  17   we're ever going to get to the point where we can really do
10:19:22  18   without his testimony, or the Court will want to do without his
10:19:25  19   testimony.
10:19:25  20          So I'll just say that right now, if that saves a
10:19:28  21   lot of conversations within the government or with the
10:19:31  22   Secretary in terms of preliminary back and forth.  That's kind
10:19:35  23   of where we're going:  Lots of flexibility on accommodation,
10:19:38  24   but not on the motion to quash.
10:19:41  25          THE COURT:  Okay.  Why don't we put that on your

| | | |
|---|---|---|
| 10:19:44 | 1 | offline discussion to see if you all can agree to the |
| 10:19:50 | 2 | accommodation and protocol; if you can't, we'll have a |
| 10:19:58 | 3 | conference on Wednesday -- |
| 10:20:00 | 4 | MR. GASAWAY:  Okay.  That works, Your Honor. |
| 10:20:01 | 5 | THE COURT:  -- before I leave town. |
| 10:20:03 | 6 | I would like the defendants to see if they can't |
| 10:20:08 | 7 | agree that BP will be the questioner.  If you've got questions, |
| 10:20:13 | 8 | if you will have things that you want to make sure is covered, |
| 10:20:18 | 9 | why don't you coordinate with BP so that it goes very smoothly, |
| 10:20:23 | 10 | one questioner, no hassle, no muss. |
| 10:20:28 | 11 | MR. GASAWAY:  We'll work with the defendants on that, |
| 10:20:29 | 12 | too. |
| 10:20:29 | 13 | THE COURT:  How does that sound -- |
| 10:20:31 | 14 | MR. LANGAN:  Can that be expanded to all the |
| 10:20:32 | 15 | depositions, Your Honor? |
| 10:20:35 | 16 | THE COURT:  Why don't you file a motion on that, |
| 10:20:38 | 17 | Andy. |
| 10:20:39 | 18 | Does that help, Steve? |
| 10:20:41 | 19 | MR. O'ROURKE:  Yes, very much.  Thank you very much. |
| 10:20:43 | 20 | THE COURT:  You're welcome. |
| 10:20:45 | 21 | MR. O'ROURKE:  A related topic on these 18 witnesses. |
| 10:20:50 | 22 | We got last night, I think maybe, Rob's letter on which -- |
| 10:20:53 | 23 | whether these witnesses are source control, quantification or a |
| 10:20:56 | 24 | hybrid. |
| 10:20:58 | 25 | THE COURT:  Yes. |

10:20:58   1              MR. O'ROURKE:   A preliminary question is whether

10:20:59   2    those allocations apply to the 18 at all.  We had created those

10:21:05   3    for the 30(b)(6) topics.  So for today's purposes, I'm just

10:21:10   4    putting out the marker that we don't automatically agree that

10:21:13   5    those are the allocations for these 18 witnesses.

10:21:16   6              Having said that, their list of the

10:21:19   7    categorizations of those witnesses at first blush seems

10:21:23   8    rational.  Mr. Barr disagrees with respect to Trevor Hill, who

10:21:30   9    should be hybrid, not quantification.  I don't know if we agree

10:21:34  10    with him or not.  So we'll talk about that with Rob on

10:21:38  11    Tuesday -- by Tuesday also.

10:21:40  12              THE COURT:   Okay.  Put that on the list.  That's

10:21:41  13    good.

10:21:42  14              MR. O'ROURKE:   Thanks.

10:21:41  15              THE COURT:   Rob, do you want to comment on that?

10:21:47  16              MR. GASAWAY:   Just briefly.  In terms of time

10:21:49  17    allocations, Your Honor, we thought that using the 30(b)(6) was

10:21:52  18    actually going to be more advantageous to the other parties.

10:21:57  19    Because if you really think about it, when we were recognizing

10:22:00  20    some witnesses, for instance, Secretary Chu, as hybrid or

10:22:05  21    others as source control, we're giving a lot of time for those

10:22:09  22    witnesses under the old orders to other parties.

10:22:12  23              And these are witnesses, for instance, in the

10:22:14  24    case of Secretary Chu, where BP, and not those other parties,

10:22:17  25    spent one of their precious chips to bring them into the

10:22:24   1   deposition as it could be.

10:22:24   2              So, I guess, our only point was, as we reread

10:22:27   3   the order, we thought it was broad enough to be interpreted to

10:22:31   4   carry over.  We weren't sure the Court would want to go through

10:22:34   5   the same process we went through before.  But if we do reopen

10:22:38   6   that order, we would say that the most important consideration

10:22:40   7   is which party spent one of their scarce chips to bring that

10:22:44   8   person to deposition in the first place.

10:22:47   9              So for Secretary Chu, if we could take him out

10:22:49  10   of the hybrid category and get all of the time, and that's

10:22:53  11   separate and apart from this, or Admiral Watson, or some of the

10:22:58  12   others, by saying that they're source control, we're giving a

10:23:01  13   big chunk of the time to the PSC; but, again, we were the

10:23:05  14   people who brought them into the case in the first place.

10:23:08  15              THE COURT:  Right, right.

10:23:10  16              MR. GASAWAY:  So those were our thinking.  We were

10:23:12  17   aware of the issue that Steve is raising.  We thought that

10:23:14  18   maybe the Court might appreciate just starting out with

10:23:16  19   something that's kind of rough justice and that's why we put in

10:23:20  20   the letter what we did.

10:23:22  21              THE COURT:  Well, frankly, it hadn't occurred to me.

10:23:25  22   I thought that if we categorized them as source control, then

10:23:28  23   the allocation would be the same.

10:23:29  24              MR. O'ROURKE:  Again, this is Steve O'Rourke.

10:23:31  25              I'm not saying that you're wrong --

| | | |
|---|---|---|
| 10:23:34 | 1 | **THE COURT:**  Right. |
| 10:23:33 | 2 | **MR. O'ROURKE:**  -- I'm just not saying that -- |
| 10:23:35 | 3 | **THE COURT:**  That I'm right. |
| 10:23:37 | 4 | **MR. O'ROURKE:**  -- we automatic- -- we got this letter |
| 10:23:37 | 5 | last night.  We want to sleep on it another night. |
| 10:23:41 | 6 | **THE COURT:**  I'm with you.  I'm with you.  Okay. |
| 10:23:44 | 7 | Mr. Barr? |
| 10:23:46 | 8 | **MR. BARR:**  This is quick. |
| 10:23:49 | 9 | **THE COURT:**  Okay. |
| 10:23:50 | 10 | **MR. BARR:**  I think we actually -- we're okay with |
| 10:23:52 | 11 | maintaining the same allocations -- |
| 10:23:55 | 12 | **THE COURT:**  Good. |
| 10:23:55 | 13 | **MR. BARR:**  -- given the lay of the land and how it |
| 10:23:58 | 14 | is.  But we'll talk about the Trevor Hill issues.  He was |
| 10:24:01 | 15 | certainly heavily involved in some source control aspects and |
| 10:24:06 | 16 | under the hybrid -- under the quantification rules, we get |
| 10:24:08 | 17 | very, very little time. |
| 10:24:10 | 18 | **THE COURT:**  Maybe you could engage in the "hustle." |
| 10:24:13 | 19 | **MR. BARR:**  The "hustle" hasn't worked out real well |
| 10:24:16 | 20 | for us lately.  But we'll -- |
| 10:24:17 | 21 | **THE COURT:**  In phase One you were very good at it. |
| 10:24:20 | 22 | **MR. BARR:**  Yeah.  But phase Two, I don't know what |
| 10:24:22 | 23 | happened.  Maybe it's me.  But we'll have that conversation. |
| 10:24:28 | 24 | **THE COURT:**  Okay. |
| 10:24:29 | 25 | **MR. O'ROURKE:**  It's him. |

| | |
|---|---|
| 10:24:32 | 1 |
| 10:24:37 | 2 |
| 10:24:40 | 3 |
| 10:24:41 | 4 |
| 10:24:43 | 5 |
| 10:24:46 | 6 |
| 10:24:51 | 7 |
| 10:24:56 | 8 |
| 10:25:04 | 9 |
| 10:25:07 | 10 |
| 10:25:09 | 11 |
| 10:25:12 | 12 |
| 10:25:16 | 13 |
| 10:25:19 | 14 |
| 10:25:23 | 15 |
| 10:25:26 | 16 |
| 10:25:26 | 17 |
| 10:25:28 | 18 |
| 10:25:28 | 19 |
| 10:25:33 | 20 |
| 10:25:37 | 21 |
| 10:25:37 | 22 |
| 10:25:40 | 23 |
| 10:25:41 | 24 |
| 10:25:43 | 25 |

              **THE COURT:**  Mr. Sterbcow, you've been standing for
some time, have you got something to add to our conversation?

              **MR. STERBCOW:**  Two quick things, Your Honor.  Paul
Sterbcow for the PSC.

                    One is actually a Phase Two issue that impacts
Phase One.  It deals with expert report deadline.  In dealing
with Dr. Bea this week, he is very concerned about his ability
to produce a Phase Two report by March 8th, 2013, because he's
going to be preparing to testify the week of February 25th in
Phase One.

                    He's just not sure how he's going to get all of
this done and meet that deadline and I want to throw that out
there.  I'm not suggesting a new date.  I don't want to -- I
have no involvement in Phase Two, I don't "hustle," I don't do
all that stuff -- well, I "hustled" before, but I'm not
"hustling" now.

              **THE COURT:**  You've given it up.

              **MR. STERBCOW:**  I've given "hustling" up, correct.
But I just wanted to let the Court know, in all candor, he's
very concerned about his ability to meet that deadline.

              **THE COURT:**  Okay.  That's something we're going to
have to think about.

              **MR. STERBCOW:**  So it's out there.

                    The second issue, and I just wanted to raise
this to make sure everybody is aware, it's in our letter, our

10:25:48  1  intent to change our witness list.  It comes about as a result,

10:25:51  2  obviously, of the settlement -- the class settlement.  The PSC

10:25:55  3  has held off on this because of the necessities of class

10:25:59  4  action, fairness hearings, settlement approval, et cetera, but

10:26:04  5  we felt it incumbent upon us to alert the parties now rather

10:26:09  6  than wait for a ruling from Judge Barbier on the class action

10:26:13  7  settlement.

10:26:13  8          If the settlement is not approved, this is

10:26:15  9  obviously a moot point, we'll go back to where we were.

10:26:20  10  Assuming the settlement is going to be approved, though, it

10:26:22  11  impacts the way we need to carry our burden of proof at trial,

10:26:25  12  and we've laid out what we'd like to do.  It does not add new

10:26:27  13  witnesses.  It deals with witnesses who have either been

10:26:30  14  previously subpoenaed, an expert who's been previously named.

10:26:34  15  The only one out there who may be an issue is Mr. Probert,

10:26:38  16  although he is on Halliburton's may call witness and he is an

10:26:41  17  officer.

10:26:42  18          I just wanted to make sure if there's anything

10:26:44  19  we need to do further other than alert the parties of our

10:26:47  20  intent, we're prepared to do that.

10:26:49  21          THE COURT:  Okay.  Any comments from anybody on that,

10:26:51  22  what I call, *reshuffling*?

10:26:53  23          MR. STERBCOW:  Right.

10:26:55  24          THE COURT:  Okay.

10:26:56  25          MR. STERBCOW:  Okay.  Thank you.

| | | |
|---|---|---|
| 10:26:56 | 1 | **THE COURT:**  Okay.  Thank you for pointing it out. |
| 10:27:05 | 2 | We also wanted to cover the fact that some of |
| 10:27:09 | 3 | the depositions are not going to be in New Orleans.  We got a |
| 10:27:14 | 4 | letter from Rob either today or yesterday on that.  Has |
| 10:27:22 | 5 | everybody seen that?  We've got a few witnesses in London and |
| 10:27:29 | 6 | one in Houston.  So I'm just highlighting that for you. |
| 10:27:33 | 7 | January in London is not tantalizing to me, so |
| 10:27:38 | 8 | we won't have that problem. |
| 10:27:42 | 9 | **MR. GASAWAY:**  Your Honor, I just wanted to mention |
| 10:27:43 | 10 | that we are going to try with respect to the London deponents, |
| 10:27:49 | 11 | they sort of grouped naturally on their dates.  They're pretty |
| 10:27:53 | 12 | good as it stands, the Liao deposition and the Hill deposition |
| 10:27:58 | 13 | are on a Thursday/Friday. |
| 10:27:59 | 14 | And then the following Monday/Tuesday, the |
| 10:28:02 | 15 | Clarkson deposition.  Obviously, he's a ranking BP official |
| 10:28:06 | 16 | based in London.  That's the following week.  So we're going to |
| 10:28:09 | 17 | take a little bit of a look and see if there's any way we can |
| 10:28:13 | 18 | make it easier on folks with respect to that. |
| 10:28:16 | 19 | **THE COURT:**  Okay.  Good enough.  I don't think that's |
| 10:28:17 | 20 | a concern.  I just wanted to point it out in case you all had |
| 10:28:25 | 21 | missed that one. |
| 10:28:34 | 22 | Okay.  We're working currently on tracks for |
| 10:28:39 | 23 | Phase Two expert depositions.  We now know who is out there and |
| 10:28:45 | 24 | what their categories of testimony are.  We're working on that |
| 10:28:51 | 25 | now.  It's not going to be pretty. |

| | | |
|---|---|---|
| 10:28:59 | 1 | **MR. FITCH:**  Judge, I have a deposition issue to take |
| 10:29:01 | 2 | up at some point. |
| 10:29:02 | 3 | **THE COURT:**  Come on up, Tony. |
| 10:29:04 | 4 | **MR. FITCH:**  Well, two, actually. |
| 10:29:06 | 5 | **THE COURT:**  Two?  Two? |
| 10:29:07 | 6 | **MR. FITCH:**  The one you're thinking of, but another |
| 10:29:09 | 7 | one. |
| 10:29:10 | 8 | **THE COURT:**  Okay. |
| 10:29:10 | 9 | **MR. FITCH:**  The one you're thinking of, I submitted a |
| 10:29:13 | 10 | letter yesterday for your consideration and it bounced back |
| 10:29:17 | 11 | from -- even though it's only 25 pages -- from a few of |
| 10:29:22 | 12 | counsel.  So if anybody needs a copy, Sarah and I have copies |
| 10:29:25 | 13 | here.  But I think Steve and Nat and Scott all got it. |
| 10:29:31 | 14 | **MS. HIMMELHOCH:**  Tony, we did receive your letter |
| 10:29:33 | 15 | regarding the 30(b)(6) depositions. |
| 10:29:35 | 16 | **MR. FITCH:**  And I think Steve wants a week or some |
| 10:29:37 | 17 | time to respond -- |
| 10:29:40 | 18 | **THE COURT:**  Okay. |
| 10:29:40 | 19 | **MR. FITCH:**  -- but it needs to be addressed. |
| 10:29:40 | 20 | Is that okay? |
| 10:29:41 | 21 | **MR. O'ROURKE:**  That sounds great. |
| 10:29:44 | 22 | **MR. FITCH:**  But whatever makes sense in terms of |
| 10:29:46 | 23 | eventually getting it scheduled if it happens. |
| 10:29:49 | 24 | **THE COURT:**  Okay.  Good enough. |
| 10:29:50 | 25 | **MS. HIMMELHOCH:**  Then, Your Honor, I guess I should |

10:29:52  1    also note that we are in the meet and confer stages with BP

10:29:56  2    about several of their 30(b)(6) designees related to the flow

10:30:01  3    rate topics.  We are still in the meet and confer stages.

10:30:05  4              But since today is officially the last day of

10:30:07  5    30(b)(6), I did want you to be aware that there's a possibility

10:30:11  6    we're going to be coming to you for some additional time with

10:30:14  7    some BP designees if we can't resolve it with BP.

10:30:19  8              THE COURT:  Okay.  Good enough.  All right.

10:30:20  9              Tony, what's the other issue?

10:30:22  10             MR. FITCH:  Judge, the other one is that, as

10:30:25  11   reflected in your order -- your last order, on page 3, BP and

10:30:29  12   the U.S. orally request a reconsideration of the order granting

10:30:34  13   BP's request for the UCSB deposition and denying the request

10:30:39  14   for Kelkar and Purdue.  And I briefly indicated I might want to

10:30:43  15   add one or two thoughts on that, and I do.

10:30:46  16             I don't know much about Mr. Kelkar, but I do, I

10:30:50  17   think probably to everybody's astonishment, know a little bit

10:30:54  18   about Wereley.  Keeping all these reports and these teams

10:30:58  19   separate is a trick.  There's a Science Team that Secretary Chu

10:31:03  20   put together, and that was done by three different labs, and

10:31:06  21   then the one chap gets ill and he does a separate report, the

10:31:11  22   guy, Griffiths, who I refer to, about it.

10:31:15  23             And then there are the teams that the FRTG put

10:31:18  24   together a little bit later and one of those teams has five

10:31:22  25   sub-teams from the five labs, and so on and so forth.

| | | |
|---|---|---|
| 10:31:28 | 1 | And there's the Plume Calculation Team, which |
| 10:31:30 | 2 | uses this PIV method, this Particle Image Velocimetry.  Which I |
| 10:31:37 | 3 | know, but I think velocimetry simply is velocity measurement. |
| 10:31:43 | 4 | And what they're doing is they're taking TV -- video and |
| 10:31:47 | 5 | they're watching little particles go from one frame to another |
| 10:31:51 | 6 | frame and then they do some mathematics and they come up -- |
| 10:31:54 | 7 | it's somewhat recognized -- or they used an eel at one point in |
| 10:31:56 | 8 | time, apparently. |
| 10:31:57 | 9 | And that's where Professor Wereley comes in. |
| 10:32:02 | 10 | His story is, A, he's, I recognize, a pretty well regarded |
| 10:32:10 | 11 | figure in this field, and I think he would modestly tell you |
| 10:32:14 | 12 | so.  He's a co-author of a book on PIV and all of that.  He |
| 10:32:19 | 13 | gets contacted in May, on May 6th or 7th, whatever, by an NPR |
| 10:32:28 | 14 | reporter and says, "Hey, there's video running around and I'm a |
| 10:32:31 | 15 | science reporter from NPR and I happen to know you know |
| 10:32:35 | 16 | something about PIV.  Can you do something?" |
| 10:32:38 | 17 | So he writes an e-mail to his colleague two and |
| 10:32:41 | 18 | a half hours later saying, "I got contacted.  I've spent two |
| 10:32:46 | 19 | hours on this and I've come up with a figure.  I'm going to get |
| 10:32:49 | 20 | back with the NPR guy."  He gets back to him.  The story hits |
| 10:32:53 | 21 | the next day, and that's the 79,000 stuff that set off their |
| 10:32:57 | 22 | huge dispute between original estimates and that. |
| 10:33:01 | 23 | As the Chief Counsel's report has now noted, |
| 10:33:05 | 24 | Professor Wereley's gone above the gas/oil ratio, gas going |
| 10:33:11 | 25 | poof and oil going in the water.  So you really don't know |

| | | |
|---|---|---|
| 10:33:14 | 1 | whether his est- -- |
| 10:33:14 | 2 | **THE COURT:**  Is *poof* a scientific term? |
| 10:33:16 | 3 | **MR. FITCH:**  It is a technical term that we |
| 10:33:19 | 4 | cognoscenti tend to use. |
| 10:33:22 | 5 | And so you don't know from his initial report |
| 10:33:25 | 6 | whether it's really 79,000, which has some significance for |
| 10:33:29 | 7 | some of us, or whether it's half of 79,000, for example, |
| 10:33:34 | 8 | 35,000, which has a different significance for some of us. |
| 10:33:38 | 9 | Well, that report hits on the 13th.  Six days |
| 10:33:43 | 10 | later, he's testifying before Congressman Markey.  Three or |
| 10:33:48 | 11 | four days later after that, FRTG gets informed and he's brought |
| 10:33:52 | 12 | into the Plume Calculation PIV Team, and that report consists |
| 10:33:58 | 13 | of a short report and 8 appendixes. |
| 10:34:02 | 14 | The last appendixes is this chap Possolo who |
| 10:34:08 | 15 | does the uncertainty analysis that's really pretty |
| 10:34:09 | 16 | controversial right now for Nodal's team, another team, and for |
| 10:34:13 | 17 | this team. |
| 10:34:14 | 18 | Two of the other, and the more important, |
| 10:34:17 | 19 | appendixes in that overall report are our friend Leifer and |
| 10:34:26 | 20 | Wereley.  And Wereley's report, unlike Leifer's, no matter what |
| 10:34:31 | 21 | else we say about Leifer, Wereley's report is nine pages.  You |
| 10:34:37 | 22 | can't, to use another technical term, tell diddly about that |
| 10:34:40 | 23 | report. |
| 10:34:42 | 24 | But it is -- he is a guy who carries a lot of |
| 10:34:44 | 25 | weight.  His work has carried a lot of weight.  He's probably |

10:34:49   1    going to be a pretty good witness.  He likes the spotlight.
10:34:52   2    Some of his self-promotion materials show all the press
10:34:56   3    conferences, the interviews, he's done from Al Jazeera to WWL
10:34:59   4    here to Brian Williams and, you know, Katmandu and everything
10:35:04   5    else.  This guy's really a pretty important witness and so I do
10:35:08   6    ask you to reconsider that.
10:35:10   7              The United States has made a point, finally,
10:35:14   8    that these depositions of these researchers may have, with
10:35:19   9    respect to them or to others, a chilling effect.  As Jimmy
10:35:25  10    Williamson once said of one of my arguments here, and he may
10:35:29  11    have been right, that's really nonsense.
10:35:34  12              MR. WILLIAMSON:  Judge, I've said that about more
10:35:36  13    than one of his arguments.
10:35:40  14              MR. FITCH:  That's correct.  Always to my face.
10:35:44  15              All of this has been an opportunity for these
10:35:47  16    researchers to -- A, it's important -- was and is an important
10:35:52  17    issue; and, B, they did the right thing by getting involved;
10:35:55  18    and, C, it's an opportunity for the academicians and the other
10:36:02  19    professorial types, like at Woods Hole, to get publications and
10:36:04  20    do publications and get out there and get recognition.
10:36:07  21              So I suggest there's a chilling effect, really.
10:36:11  22    A, there's no data to prove it; but, B, it really doesn't make
10:36:15  23    a lot of sense.
10:36:17  24              Thanks, Judge.
10:36:18  25              THE COURT:  Okay.  Thanks, Tony.

58

| | | |
|---|---|---|
| 10:36:20 | 1 | **MR. CHAKERES:**  Your Honor, this is Nat Chakeres for |
| 10:36:22 | 2 | the United States. |
| 10:36:23 | 3 | **THE COURT:**  Okay.  Nat, go ahead. |
| 10:36:26 | 4 | **MR. CHAKERES:**  Just to respond to Tony's points. |
| 10:36:30 | 5 | These were all points that BP raised and that were briefed and |
| 10:36:35 | 6 | that you ruled on weeks ago.  I'm not sure what caused Tony now |
| 10:36:40 | 7 | to try to reopen the Court's ruling, but we would ask that |
| 10:36:45 | 8 | you -- you know, you've already looked at every single one of |
| 10:36:47 | 9 | these points.  BP vigorously fought for and briefed all of |
| 10:36:52 | 10 | these issues.  It does not need to be -- it does not need to be |
| 10:36:56 | 11 | reopened. |
| 10:36:57 | 12 | Everything that Tony says about Steve Wereley |
| 10:37:00 | 13 | was known prior to the Marsha McNutt deposition and Tony |
| 10:37:06 | 14 | asked -- I don't have the transcript in front of me, but he had |
| 10:37:09 | 15 | the opportunity to ask Marsha McNutt about anything he wanted |
| 10:37:13 | 16 | with respect to Steve Wereley. |
| 10:37:14 | 17 | If he was saying that, quote, Steve Wereley is a |
| 10:37:16 | 18 | good witness, I think that's a -- again, a sign that we've |
| 10:37:22 | 19 | indicated there's a concern he's trying to drag Steve Wereley |
| 10:37:26 | 20 | in as an individual, as a non-retained expert, essentially, |
| 10:37:32 | 21 | which was another point that, again, we and BP went around on |
| 10:37:35 | 22 | and briefed. |
| 10:37:36 | 23 | And I guess the last point I'd make is this: |
| 10:37:42 | 24 | These people came in and tried to do their best on behalf of |
| 10:37:44 | 25 | the government because they were asked to come up with a flow |

```
10:37:49   1    rate calculation because BP wasn't doing that, or at least
10:37:52   2    wasn't doing it publically.
10:37:55   3              And Woods Hole -- Tony said there's no evidence,
10:37:57   4    that there's a chilling effect.  Woods Hole has announced to
10:38:01   5    the scientific community that they felt chilled; and they're
10:38:05   6    warning everybody else that, if you go into a case where
10:38:10   7    there's damage and liability, do so at your own peril.
10:38:16   8              So I don't think you need to consider this
10:38:17   9    request; if you do, I think that all of the arguments have been
10:38:20  10    previously raised and we're prepared to rest on our previous
10:38:25  11    papers.
10:38:26  12              THE COURT:  On your laurels?
10:38:30  13              MR. CHAKERES:  Not that, Your Honor.
10:38:31  14              THE COURT:  Okay.  Nat, thank you.
10:38:33  15              All right.  Guys, what else do we have to cover
10:38:37  16    today?  We got out -- oh, I'm sorry.  Go ahead, Rob.
10:38:48  17              MR. GASAWAY:  Your Honor, just a quick word on that.
10:38:49  18    The motion for reconsideration that I had made last week that
10:38:53  19    Tony just briefly seconded was basically that BP get to pick.
10:38:58  20    And in that conversation that I recounted for you and for
10:39:01  21    Bethany Engel yesterday, when Mr. Fitch called me up, he said,
10:39:07  22    "Look, would you amend your motion if I feel passionately about
10:39:11  23    one rather than the another, just to make it a motion for
10:39:14  24    Wereley as opposed to BP gets to pick?"
10:39:17  25              And without diminishing in any way the
```

10:39:20  1    importance of Mr. Kelkar, but just to align where Tony is
10:39:25  2    passionately coming from, we amend our previous motion so that
10:39:29  3    it's now just a motion for reconsideration with respect to
10:39:32  4    Wereley and without in any way diminishing what we've said
10:39:37  5    before about the importance of Kelkar, but to make it more
10:39:40  6    streamline.
10:39:40  7                   That's the simple motion that's on the floor now
10:39:43  8    from both BP, as amended, and from Anadarko.
10:39:46  9                   THE COURT:  Okay.  Good enough.  Thank you.
10:39:50  10                  We distributed yesterday the draft Phase Two
10:39:58  11   deadlines.  I've rerun it and I'll get it out to you all today,
10:40:04  12   but I've rerun it without the Work Group Conferences being on
10:40:07  13   the time line, which I think makes it much easier to look at.
10:40:17  14                  I'm wondering whether you guys would like to
10:40:22  15   give me some preliminary comments today since we're not meeting
10:40:25  16   again until the 18th or whether you all want to give us some
10:40:31  17   comments during the coming week so that we can take it into
10:40:37  18   account and try to get something confected.
10:40:40  19                  MR. LANGAN:  Your Honor, I know that one thing that
10:40:42  20   our team spotted was the idea that when we got down to some of
10:40:48  21   the trial related deadlines, such as demonstrative exchanges,
10:40:53  22   we tried to mirror the Phase One model, which I think was a
10:40:58  23   more staggered model, as opposed to simultaneous.
10:41:02  24                  THE COURT:  Right.
10:41:04  25                  MR. LANGAN:  We'll be able to get you some detail on

10:41:05   1   that, but I think that was one comment we had, and we may have

10:41:07   2   a few others like that.

10:41:10   3               THE COURT:  Okay.

10:41:10   4               MR. LANGAN:  Okay.

10:41:10   5               THE COURT:  Steve?

10:41:11   6               MR. O'ROURKE:  Good morning, Your Honor.  Steve

10:41:12   7   O'Rourke for the United States.

10:41:14   8                    First off, thank you.  This came from a request

10:41:17   9   that we made to extend the Phase Two deadlines to take some of

10:41:20   10  the pressure off and we very much appreciate that you did that

10:41:25   11  in your efforts here.

10:41:28   12               THE COURT:  And notice this is draft, draft, draft.

10:41:31   13               MR. O'ROURKE:  Right.  Thank you.

10:41:31   14                    So we want to think about it, obviously, and

10:41:33   15  we'll get you more specific comments.

10:41:35   16                    I'd say the only thing that jumped out at us a

10:41:40   17  little bit like a sore thumb was the 10 expert depos per week,

10:41:44   18  including Saturdays for the month of May.  I can't say that

10:41:47   19  makes me feel warm and fuzzy.

10:41:49   20               THE COURT:  Do you remember when a minute ago I told

10:41:52   21  you it was ugly?  We're going to have to try to see how we're

10:41:56   22  going to work this out and I think I revealed the number of

10:42:02   23  experts, didn't I?

10:42:03   24               MR. O'ROURKE:  Yes.  52 is what you said.

10:42:07   25               THE COURT:  I thought it was 58, huh?

| | | |
|---|---|---|
| 10:42:07 | 1 | **MR. O'KEEFE:**  52, 58, something like that. |
| 10:42:08 | 2 | **MR. O'ROURKE:**  Then there's the question of, of |
| 10:42:09 | 3 | those, which are two days? |
| 10:42:12 | 4 | **THE COURT:**  Exactly. |
| 10:42:13 | 5 | **MR. O'ROURKE:**  So is it 104 days or is it somewhere |
| 10:42:17 | 6 | between 52 and 104? |
| 10:42:20 | 7 | **THE COURT:**  We've been looking at it as two days and |
| 10:42:23 | 8 | our computations are two days.  Aren't they, Mike? |
| 10:42:29 | 9 | **MR. O'KEEFE:**  Yeah, we looked at -- I think almost |
| 10:42:32 | 10 | everyone agrees that source control experts would be one track. |
| 10:42:36 | 11 | And so I think there's -- we figured with two days, there'd be |
| 10:42:40 | 12 | 28 to 30 days for source control experts, lining them one up |
| 10:42:47 | 13 | right after the other so you could have the same team |
| 10:42:50 | 14 | participating in examination.  And allowing for some conflicts, |
| 10:42:55 | 15 | five weeks seemed it was the bare minimum. |
| 10:42:59 | 16 | **THE COURT:**  Well, but that's presuming, as Steve |
| 10:43:01 | 17 | points out, two days.  And source control, we've got over 200 |
| 10:43:07 | 18 | stipulations in the can.  So with source control, they may not |
| 10:43:12 | 19 | have to be two days. |
| 10:43:16 | 20 | So I would like you to start looking and |
| 10:43:19 | 21 | thinking about that.  I know that you don't know who else is |
| 10:43:22 | 22 | out there, but start thinking about with the stipulations |
| 10:43:26 | 23 | whether or not we can go to a one-day model with an exception |
| 10:43:31 | 24 | for a few people on source control. |
| 10:43:35 | 25 | Quantification, I don't know.  We have looked at |

10:43:39   1    it, Steve, as a two-day model.  But, again, if we can make it

10:43:44   2    one day, I'm happy, happy.

10:43:46   3            MR. O'ROURKE:  Well, we're happy to have the U.S.

10:43:49   4    experts go for one day.

10:43:52   5            THE COURT:  Well, let's hear from either of the BP

10:43:55   6    attorneys in the room and see what they think about that.

10:44:04   7            MR. O'ROURKE:  Obviously, I'm joking.

10:44:05   8            THE COURT:  I knew you were.

10:44:08   9            MR. GASAWAY:  Your Honor, I think that we are going

10:44:09   10   to need the full allotment of time, six days a week, five days.

10:44:14   11   I hope that --

10:44:15   12           THE COURT:  For quantification, not necessarily

10:44:16   13   source control?

10:44:18   14           MR. GASAWAY:  For source control, I think there's

10:44:19   15   going to be fewer experts; but, obviously, we don't know what

10:44:22   16   the other side is going to do.  I think that what you have here

10:44:28   17   is reasonable.

10:44:29   18               One thing that I think might help would be if in

10:44:32   19   some form you could just clarify your thinking on the

10:44:35   20   March 12th, the April 2nd and the May 23rd dates.  So it looks

10:44:40   21   like you're going to announce a partial schedule for 1, 2 and 3

10:44:46   22   after the reports come in from the side with the burden of

10:44:49   23   proof; and then shortly after the next group of reports come

10:44:51   24   in, you're going to announce the schedule for 3, 4, 5.

10:44:55   25               So, presumably, for weeks 1 and 2 and the first

| | | |
|---|---|---|
| 10:44:58 | 1 | three days of week 3, you're going to have a schedule, then |
| 10:45:01 | 2 | you're going to have a partial schedule for the last three days |
| 10:45:05 | 3 | of weeks 3, and 4 and 5. |
| 10:45:08 | 4 | Then on the 23rd, you say, "Announce final |
| 10:45:10 | 5 | schedule for 1 through 5," which I guess is going to be after |
| 10:45:13 | 6 | we get all the reports in, including the rebuttal reports, and |
| 10:45:17 | 7 | we get the first few weeks under our belt, you know, we're |
| 10:45:20 | 8 | going to go, final, final. |
| 10:45:22 | 9 | So that makes sense to me, generally.  And as |
| 10:45:25 | 10 | we've discussed many times, for those of us who do not have the |
| 10:45:30 | 11 | burden of proof and who are going second, it's a little bit of |
| 10:45:34 | 12 | a crap shoot in the sense, particularly on the quantification |
| 10:45:37 | 13 | side, that you've got all sorts of analysis and all sorts of |
| 10:45:41 | 14 | testimony in the government documents with many, many, many, |
| 10:45:48 | 15 | different methodologies. |
| 10:45:49 | 16 | If the government wanted to, they could come in |
| 10:45:52 | 17 | with one witness, one methodology and say, "This is our number, |
| 10:45:55 | 18 | this is our methodology, we're riding this horse."  That would |
| 10:45:58 | 19 | greatly constrain the case. |
| 10:46:00 | 20 | On the other hand, they could take every |
| 10:46:02 | 21 | appendix for any FRTG report, any published paper that anybody |
| 10:46:08 | 22 | involved with the government has ever published, trying to |
| 10:46:10 | 23 | bring in expertise to defend all of those, trying to have |
| 10:46:13 | 24 | people reconcile those, in which case we've got a sprawling |
| 10:46:18 | 25 | quantification. |

10:46:18    1          THE COURT:  Right.

10:46:19    2          MR. GASAWAY:  And I don't know if there's any way for

10:46:21    3   people who sit on our side of the fence to really know which

10:46:23    4   it's going to be until we see their expert reports.

10:46:26    5          THE COURT:  Yeah.  And I anticipate that you might

10:46:28    6   cut your number down depending on what you see from the U.S.

10:46:33    7   And Steve's paying attention because he doesn't want to kill

10:46:39    8   himself in the month of May 2013.  And speaking of which,

10:46:43    9   Steve, let me talk to you real briefly on that topic

10:46:46   10   afterwards.  But we don't know yet and it does look like a big

10:46:55   11   task.

10:46:57   12          Steve, we will look at the schedule to see if we

10:47:00   13   can broaden the time within which the depositions are being

10:47:05   14   taken.  There's not a lot of room there to do that, but we'll

10:47:09   15   take a look at it.  So I hear what you're saying.  You're

10:47:13   16   right, for you, you're shooting in the dark right now.

10:47:16   17          MR. GASAWAY:  That's correct, Your Honor.

10:47:17   18          One more comment, just to follow-up on what Andy

10:47:20   19   said.  A question for you, it occurred us to as we were looking

10:47:27   20   at this overnight that you had underlined the word *all* with

10:47:31   21   respect to the demonstrative exchanges on July 16th and

10:47:35   22   July 24th.  That could be interpreted in a couple of ways, all

10:47:39   23   parties, interrogatories -- or demonstratives, excuse me; or

10:47:44   24   alternatively, all demonstratives throughout the trial.

10:47:47   25          And I think what Andy was trying to say is in

10:47:52  1   Phase One, and you know this better, there was this rolling

10:47:55  2   process whereby, you know, week one in the opening, but then,

10:47:58  3   as we heard earlier today, you roll them out.

10:48:01  4         THE COURT:  Correct.

10:48:01  5         MR. GASAWAY:  So if this means all parties week one

10:48:03  6   in opening, then that clarification would be helpful.  But,

10:48:08  7   obviously, if we're not going to go with the rolling process

10:48:12  8   along Phase One, that's a much different --

10:48:13  9         THE COURT:  I think everybody's happy with the

10:48:14  10  rolling process, don't you?

10:48:16  11        MR. GASAWAY:  Okay.

10:48:16  12        THE COURT:  Let me see the PSC.

10:48:17  13        There you go.

10:48:22  14        Mr. O'Rourke?

10:48:24  15        MR. O'ROURKE:  Your Honor, I just want to point out

10:48:26  16  that the U.S. is also shooting in the dark with respect to

10:48:30  17  these expert reports, which I've mentioned several times

10:48:32  18  before.  We could come in with one expert and one number.  That

10:48:35  19  doesn't mean anything about what BP's going to do.

10:48:38  20        Are they going to come in with five experts with

10:48:41  21  a different number?  We don't know.  Or are they just going to

10:48:44  22  try to rebut our guy?  And they could do anything.

10:48:46  23        THE COURT:  Well, once we know that, Steve, it seems

10:48:49  24  to me we all stop, take a look at what we have, and maybe at

10:48:54  25  that point both BP and the United States could say, "Okay.  We

10:49:00  1    see the cards, let's agree to withdraw this card and withdraw

10:49:05  2    that card."

10:49:08  3              MR. O'ROURKE:  We'll have to wait and see what pans

10:49:10  4    out --

10:49:11  5              THE COURT:  No, you are.

10:49:12  6              MR. O'ROURKE:  -- but I just wanted to make sure that

10:49:15  7    we also -- we have no idea if they're going to propose a

10:49:19  8    number.  No idea.  Obviously, we are.  But are they going to

10:49:20  9    propose a counter number, or are they just going to take

10:49:24  10   potshots at our guys?  So we are also --

10:49:29  11             THE COURT:  In the dark.

10:49:31  12             MR. O'ROURKE:  -- in the dark.

10:49:32  13             And with respect to the comment you just made,

10:49:34  14   how are we going to squeeze all those depos in within the time

10:49:38  15   period?  We are the plaintiffs, we want the case to go forward

10:49:43  16   promptly -- and so far it's been unbelievable how promptly this

10:49:45  17   case has gone forward -- but we don't see any magic in it being

10:49:49  18   exactly a certain number of weeks after Phase One.

10:49:51  19             Now, I think -- now maybe this is coming from

10:49:52  20   Judge Barbier, I just want to make sure it's not coming from us

10:49:56  21   that it has to be July 15th rather than August 1st or what have

10:49:58  22   you.  So you extended it by, I think, exactly six weeks.  We

10:50:04  23   don't think it has to be exactly a six week-extension.  If you

10:50:07  24   need to pad more time in there, we would not be opposed to

10:50:11  25   that.

| | | |
|---|---|---|
| 10:50:12 | 1 | If you're trying to accommodate the plaintiff -- |
| 10:50:13 | 2 | the U.S. as plaintiff by forcing that date, thank you, but we |
| 10:50:17 | 3 | can live with extra time.  Not another year, but . . . |
| 10:50:20 | 4 | THE COURT:  Let me make it clear that my intent is |
| 10:50:23 | 5 | not to kill anybody in the process.  That includes you. |
| 10:50:30 | 6 | MR. O'ROURKE:  That's the second time you've |
| 10:50:31 | 7 | mentioned me killing myself or getting killed.  Now I'm afraid |
| 10:50:34 | 8 | to come back to talk to you afterwards. |
| 10:50:37 | 9 | THE COURT:  No, but that is not the intent.  So why |
| 10:50:39 | 10 | don't you all take a look and chew on that.  We'll take into |
| 10:50:42 | 11 | account the comments we got today.  If you have more comments |
| 10:50:45 | 12 | that you want to send us in the next, let's say, week, I'd like |
| 10:50:52 | 13 | to go ahead and get another draft out to you toward the end of |
| 10:50:57 | 14 | next week and then finalize it the week after, is kind of the |
| 10:51:01 | 15 | track I'm on. |
| 10:51:02 | 16 | Okay.  Are we okay and on track on the clawbacks |
| 10:51:22 | 17 | spreadsheet, Anthony?  Everybody's on track? |
| 10:51:25 | 18 | MR. IRPINO:  It's on track. |
| 10:51:26 | 19 | THE COURT:  On track, good.  Good report.  Thank you. |
| 10:51:28 | 20 | MR. IRPINO:  I don't know if we're on track for the |
| 10:51:30 | 21 | Christmas party, but -- |
| 10:51:31 | 22 | THE COURT:  Yeah, we got to talk about that. |
| 10:51:33 | 23 | MR. IRPINO:  -- the clawbacks are on track. |
| 10:51:36 | 24 | THE COURT:  We got to talk about that. |
| 10:51:36 | 25 | That is the end of my agenda.  Does anybody have |

10:51:38   1   anything else they want to raise today?

10:51:44   2                  Well, I won't see you next week, I won't see you

10:51:47   3   on the 14th.  I will next see you all on the 18th.  Have a

10:51:53   4   great weekend.

10:51:58   5                  (WHEREUPON, the proceedings were concluded.)

10:51:58   6                               *****

10:51:58   7                            **CERTIFICATE**

10:51:58   8          I, Jodi Simcox, RMR, FCRR, Official Court Reporter

10:51:58   9   for the United States District Court, Eastern District of

10:51:58  10   Louisiana, do hereby certify that the foregoing is a true and

10:51:58  11   correct transcript, to the best of my ability and

10:51:58  12   understanding, from the record of the proceedings in the

10:51:58  13   above-entitled and numbered matter.

10:51:58  14
10:51:58
10:51:58  15
10:51:58
10:51:58  16          *s/Jodi Simcox, RMR, FCRR*
10:51:58               Jodi Simcox, RMR, FCRR
10:51:58  17           Official Court Reporter
10:51:58

          18

          19

          20

          21

          22

          23

          24

          25

JODI SIMCOX, RMR, FCRR – OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA