# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

In re: Oil Spill by the Oil Rig          **MDL NO. 2179**
      "Deepwater Horizon" in the Gulf
      of Mexico, on April 20, 2010        **SECTION J**

Applies to: *All Cases*              **JUDGE BARBIER**
                             **MAGISTRATE JUDGE SHUSHAN**

## AMENDED ORDER

**[Regarding Phase One Exhibits (Rec. docs. 8320, 8299, 8225, 8329 and 8343)]**

The parties present issues concerning Phase One exhibits: 1) The PSC filed a motion to strike Halliburton's New Objections to Phase One exhibits.  Rec. doc. 8320.  2) The plaintiffs oppose Halliburton's objections to certain exhibits identified on the plaintiffs' combined Phase One exhibit list dated, January 11, 2013.  Rec. doc. 8299.  3) BP moved to add certain exhibits produced after February 20, 2012 to the final exhibit list for good cause.  Rec. doc. 8225.  4) BP objected to Transocean's third supplemental and amended exhibit list.  Rec. doc. 8329.  5) BP raised issues regarding confidentiality, including the TIMS database.  Rec. doc. 8343.

## Background

MDL 2179 has presented unique issues which prevent it from proceeding like a typical case. The trial was divided into Phases.  Phase One is concerned with the blow-out, spill, limitation and related issues.  The trial of Phase One was originally set for February 27, 2012.  Rec. doc. 569.  It was not possible to complete all document production and written discovery before depositions. Alternatives, for example custodial file production, were required.  Despite the best efforts of the parties, it was not possible to complete all document production relating to Phase One prior the February 27, 2012 trial date.  On February 26, 2012, the trial of Phase One was adjourned to March

5, 2012 to permit the parties to make further progress in settlement negotiations.  Rec. doc. 5887.

Because BP and the PSC reached agreement on a proposed settlement, the trial set for March 5, 2012

was adjourned.  Rec. doc. 5955.  It was reset for February 25, 2013.

*   *   *

On May 9, 2011, the parties were required to file preliminary exhibit lists for Phase One.

The running index from the depositions satisfied the requirement for a preliminary exhibit list.

On September 2, 2011, an order was issued regarding Phase One exhibits and expert

discovery production.  Rec. doc. 3916.  Putting aside information relating to experts ("consideration

materials" and "reliance exhibits"), there were two categories: (1) deposition exhibits - documents

used as exhibits in any deposition taken through November 4, 2011; and (2) other exhibits - "any

exhibit other than a Deposition or Reliance Exhibit which is identified on a party's final exhibit list."

Id. at 2.

By November 14, 2011, the parties were required to file "good faith" final exhibit lists.  For

good cause shown, the order provided that "the parties may be permitted to add exhibits after this

date."  Id. at 3.  Issues regarding records of regularly conducted activity and other substantive

objections were divided into two stages.  In the first stage the PSC was to produce a sample of 300

documents which would be on its final exhibit list.  Deadlines were set for objections to the 300

exhibits, a meet-and-confer period and motions for unresolved objections.  Id. at 4.  In the second

stage, December 30, 2011 was the deadline for all objections to the November 14, 2011 final lists

of exhibits.  The parties were to extrapolate rulings on the unresolved objections to the final exhibit

lists.  The order provided that,

> The Court will revisit the process at this stage to determine the best course for
> resolving any remaining disputes regarding objections to exhibits, depending on the

2

number and nature of outstanding objections.

Rec. doc. 3916 at 5.

At the October 7 Working Group Conference ("WGC"), questions were raised about objections to exhibits and the deposition designation process. The order states:

> 2.   When a party files its objections to the final exhibit lists on December 30, 2011, it should note whether the document is or will be subject to a motion *in limine* filed on or before January 23, 2012. If the objection is not noted by December 30, 2011, it is waived.
>
> 3.   An objection noted on the final exhibit list is sufficient to preserve the objection. If the party believes it is necessary, it may additionally file a motion *in limine.* The point of a motion *in limine* is to call to Judge Barbier's attention those objections that a party believes are so important that the Judge requires briefing.

Rec. doc. 4280 at 7.

At the October 14 WGC the Court reported that the October 17, 2011 deadline for filing motions *in limine* was suspended. Rec. doc. 4303 at 65-66. The Court stated:

> The thought with regard to the 300 was to help crystalize in your mind and in our mind what the issues are and hopefully bring before the Court issues that can be defined, is what we've talked about as in-globo issues.

Rec. doc. 4303 at 66. One of the *in globo* issues concerned emails which the PSC contended were business records. Id. at 72. At this conference there was discussion of "deposition exhibits . . . that were marked as exhibits but actually multiple documents with a single exhibit number for deposition purposes." Id. at 74. In order to convert these deposition exhibits into trial exhibits, Transocean stated:

> And what we said last week was that we would separate those, separate the deposition exhibit into multiple exhibits such that deposition Exhibit 1 was actually four documents. So it would not be trial Exhibit 1A, 1B, 1C, 1D.

Id. at 74.

The PSC filed its letter brief regarding the admissibility of email strings on October 17, 2011. Rec. doc. 4340.  On November 2, 2011 a scheduling order for the motions *in limine* was entered. Briefing on the motion regarding e-mail strings was to be completed on November 16, 2011.  Rec. doc. 4468.  On November 11, 2011, Halliburton responded to the PSC letter on email strings.  Rec. doc. 4567.  Briefing was not completed until December 2, 2011.  Rec. doc. 4964.

On November 14, 2011, the parties filed their Phase One good faith trial exhibit lists.[1] November 23 was the deadline for all parties to make "clean-up" revisions to the November 14 good faith exhibit lists. "As the pretrial schedule proceeds, including the deposition designation process, the parties are encouraged to further refine the good faith exhibit list with deletions and, if necessary, additions."  Rec. doc. 4690 at 3.

On December 14, 2011, the Phase One deadlines for exhibits were revised as follows:

01-13-2012   Parties shall exchange final exhibit lists, including all impeachment exhibits, and witness lists. Except for good cause shown, the parties will not be permitted to add exhibits or witnesses after this date.

01-20-2012   Deadline for all remaining objections to exhibits.

Rec. doc. 4901 at 10-11.  These deadlines were repeated in the orders for the December 16, 2011 WGC and January 6, 2012 WGC.  Rec. doc. 4966 at 3 and 5128 at 4.

On January 11, 2012, Judge Barbier issued a ruling on email strings.  If the parties could not resolve their issues regarding emails and email strings with the guidance provided by his ruling, they parties had until January 30, 2012 to file a brief with the Court.  Rec. doc. 5143 at 12.

On January 13, 2012, the parties filed final exhibit lists.[2]  At the January 13 WGC, the

---

[1]  Rec. docs. 4576, 4581, 4582, 4583, 4585, 4589, 4594, 4604 and 4607.

[2]  Rec. docs. 5195, 5200 and 5203-5210.

following exchange occurred between counsel for BP (Mark Nomellini) and the Court.

BP:     The Court issued a very thorough opinion on hearsay and the business records exception and e-mail strings (Referring to Judge Barbier's January 11 Ruling [Rec. doc. 5143]).

Court: Yes.

BP:     We want to make sure that we're fully taking that into account with respect to the exhibit objection process.  The latest exhibit lists are going to be exchanged today (January 13).  I just wanted to get some clarity in terms of, you know, the date that the objections are going to be due.  There was originally a January 20th date on the calendar, and I think that the Court's e-mail strings order spoke of a January 30th date.

Court:  Right.  I talked to Judge Barbier about that, and I want to give the parties an opportunity to meet confer with regard to this issue, which is a tough issue; and, rather than impose the 20th on you, give you further time to look at the issue and see if we can work through it.

BP:     Very much, very much appreciate that, Judge.  You know, it's possible, and we'll do our best, but there are, you know, many tens of thousands of exhibits.  We'll do our best to incorporate the Court's very thorough thinking on this by the 30th.  If possible, we may come back and seek more time, but we'll do everything we can to stick to the 30th.

Court: Well, if there is a problem, Mark, let us know, and we certainly will consider whatever reasonable request you might have.

Rec. doc. 5232 at 69-70.

At the January 19 WGC, the following exchange occurred between the Court and BP (Mr. Nomellini).

Court: Okay.  Deadlines for objections to final exhibit lists is Friday, January 20th, and then the e-mail string issue which is coming back our way, that deadline is Friday, January 30th, and so you've got that period to meet and confer.

BP:     Your Honor, I have a question about the e-mail string issue.

Court:  Yes, sir.

BP:     Is that January 30th date, is that for the e-mail strings on the plaintiffs' list of

> three hundred or is that for all of the e-mail strings that are on anybody's exhibit list?

Court:  I think we're going to work on the three hundred.  It's a good question.  But if you can get the three hundred under your belt, hopefully the rest will fall into place.

BP:     Okay, Your Honor.

Court:  Is that your thought, Mark?

BP:     Yes, I think that makes sense.  I think that's right.  I think that a lot of the, a lot of the objections ultimately will relate to e-mails, so I think this process hopefully will, with the three hundred will help to sort things out.

Court:  Okay. Good. Thank you for raising the issue. It's an important one.

The order for the January 19 conference simply provided:

> The deadline for all parties (except for Anadarko and MOEX) for objections to final exhibit lists is Friday, January 20. Because of some confusion, the deadline for Anadarko and MOEX is Monday, January 23.
>
> Judge Barbier's January 11, 2012 order (Rec. doc. 5143) requires the parties to meet-and confer to stipulate regarding the admissibility of emails and email strings. If they cannot agree as to individual emails on the PSC's list of 300 exhibits, they shall submit briefs to Judge Shushan by Monday, January 30, 2012.

Rec. doc. 5327 at 3.

On January 20, 2012, Halliburton filed its "Objections to Non-Email Exhibits Designated by Other Parties."  Rec. doc. 5320.  With regard to emails and email strings, Halliburton stated:

> HESI's spreadsheet does not include its objections to emails and email strings. *See* Rec. Doc. 5143. Instead, as the Court directed, HESI will confer with the other parties regarding the admissibility of emails identified in the PSC's list of top 300 exhibits.  If the parties cannot reach an agreement by January 30, 2012, HESI will provide a brief that identifies the objectionable exhibits and the basis for HESI's objections to the same. *See* Rec. Doc. 5143, 5272.

Rec. doc. 5320 at 3.  The January 20, 2012 objections by BP (Rec. doc. 5316) and Transocean (Rec.

doc. 5312) did not exclude objections to emails and email strings.

6

The order for the January 27 WGC conference provided that Judge Barbier's deadline for the submission of briefs to the Court on unresolved issues regarding emails was extended to February 1, 2012. Rec. doc. 5476 at 5. The transcript demonstrates that the parties were given the extra briefing time to narrow the number of exemplar emails on which rulings were required. Rec. doc. 5558 at 46-52. The order for the January 27 WGC conference also provided that for objections to exhibits proffered at trial, the parties were to keep track of the exhibits used during the trial and objections to the exhibits would be resolved during the trial. Rec. doc. 5476 at 5.

The order contained a section on confidential information at the trial. Id. at 7-8. Excerpts of an exchange among the Court, the U.S. (Mike Underhill) and BP (Andy Langam) are as follows:

US:    And, to partially respond to that letter (January 26, 2012 from Andy Langam to Judge Shushan) about confidentiality issues, the United States in fact is under two statutory commands, the Privacy Act as well as the statute that protects the MMS database.

*    *    *

US:    And what we did was push them out the door so that BP, at BP's request, could get them in a very expeditious manner. And we did that in a way that we didn't have to review the Privacy Act material and the MMS database. . . . We don't care if they come in. We only care because they're protected information. One example, BP has requested the entire MMS database for all its competitors as proprietary information, trade secret information. They got it because of the confidentiality. . . . We've narrowed down that list of documents, I think it's-- I believe it's actually around 300. And I think our cut to date indicates that it's probably even only fewer than 100. And most of those are the well data for BP and its competitors. . . . And we're trying to figure out . . . if a party wants to introduce the exhibit . . . perhaps to redact any information that would show parties may have interest, too.

Court:  Good.

BP     But I understand the point about the MMS database and the competitors, and we'll work with Mike on that.

Rec. doc. 5558 at 38-42.

On February 1, 2012, the PSC and the U.S. submitted a joint motion *in limine* to admit seven representative emails.  Rec. doc. 5559.  BP (Rec. doc. 5536), Halliburton (Rec. doc. 5561), and Transocean (Rec. doc. 5555) submitted letter briefs.

Parties continued to amend and supplement their exhibit lists.  For example, Weatherford filed such a list on February 2, 2012.  Rec. doc. 5569.  On February 2, Judge Barbier granted Halliburton leave to file a fifth amended exhibit.  Halliburton found a processing error in its fourth amended list.  Judge Barbier concluded that there was good cause of the filing of the fifth amended list.  The motion was unopposed.  Rec. doc. 5570.

The final pretrial conference was held on February 3, 2012.  At the end of every trial week, the exhibits used during that week were to be compiled and made public.  Rec. doc. 5583 at 1.  The order for the February 3 WGC provides that:

> On the business records  exception to the hearsay rule, BP awaits a ruling on the email strings which were submitted to the Court pursuant to Judge Barbier's order. BP, Halliburton and Transocean were given until Monday, February 6, to submit responses to the PSC/U.S. arguments on the emails.  After the ruling, BP will meet and confer with the PSC in an effort to resolve the business records issue.

*   *   *

> Although the exhibit list is nearly final, there will be additional exhibits as result of the remaining depositions (Gagliano, Crook, Ravi and Lt. Cmdr. Houck).

Rec. doc. 5609 at 2-3.  If there were any exhibits which would cause serious competitive harm to a party or to a competitor of a party, the parties were to bring such to the attention of the Court February 8.  Id. at 5 and Rec. doc. 5611.

On February 8, 2012, a report and recommendation was issued regarding plaintiffs' joint motion *in limine* to admit into evidence representative email communication exhibits.  Rec. doc. 5615.  On February 10, it was adopted by Judge Barbier.  Rec. doc. 5643.

Regarding the exhibit list, the order for the February 10 WGC provides that:

> Although the exhibit list is nearly final, there will be additional exhibits as a result of the remaining depositions (Gagliano, Crook, Ravi and Lt. Cmdr. Houck). Prior to February 26, the PSC will prepare a final exhibit list. Thursday, February 16, is the deadline for the parties to notify the PSC of any additions to the exhibit lists, except for exhibits added because of the deposition of Dr. Ravi.
>
> At the February 17 conference consideration will be given as to how the exhibit list may be supplemented after the start of the trial on February 27. For example, if additional documents are produced by Halliburton in response to BP's Gagliano motion or additional emails are produced from Lt. Cmdr. Houck, what provision will be made for adding them to the exhibit list.

Rec. doc. 5719 at 3-4.

On February 16, Transocean (Rec. doc. 5729), BP (Rec. doc. 5730), and Halliburton (Rec. doc. 5731) filed amended exhibit lists. On February 20, 2012, BP filed an amended exhibit list to add: (1) documents relating to the Ravi deposition; and (2) documents added for "good cause," including documents from Phase I productions recently made by parties including Transocean. Rec. doc. 5787 at 1. Cameron filed an amended list on February 21, 2012. Rec. doc. 5790.

Regarding trade secret information at the trial, the order for the February 17 WGC provided that:

> The discussion focused on the manuals which Transocean contends should be accorded trade secret status. The Court stressed that the entire manuals were not going to be admitted into evidence.
>
> *   *   *
>
> Transocean identified some deposition testimony which it contends should be protected as trade secrets. The parties were asked to meet-and-confer on this deposition testimony.
>
> The Court asked the parties to review the proposed trade secret exhibits to determine what parts they intended to use with live witnesses. If these parts do not raise the trade secret issue, then there is no issue to be resolved.

9

> There was agreement that personal information for witnesses (address, phone number, etc.) would be redacted.
>
> A telephone conference was set for . . . to follow-up with the parties on the trade secret issues.
>
> \*   \*   \*
>
> The trade secret requests from Anadarko, Cameron, Halliburton, BP and the U.S. were reviewed.

Rec. doc. 5895 at 4-5.

On February 22, 2012, there was a telephone conference, where trade secrets information relating to Transocean, Anadarko, Cameron, M-I, the U.S., Halliburton and BP was discussed.  The Court's notes regarding the U.S. reflect that BP (Mark Nomellini) requested that it be permitted to provide the U.S. with 2 days notice of MMS pages it proposed to use and BP and the U.S. could work through the regulation issues at that time.  The 2 day notice procedure was acceptable to the Court.  BP was to redact certain identifying information from the pages it proposed using.

On February 24, 2012, BP filed an amended Phase One exhibit list to add  6 documents from documents produced by Transocean on February 15 and other documents.  Rec. doc. 5881.  On that same day, BP filed objections to trial exhibits lists filed by other parties.  Rec. doc. 5884.

At the WGC on March 9, 2012, the Court confirmed that to the extent there were briefs due relating to Phase One, for example briefs due on demonstratives and exhibits, the briefing and response due the week of March 5 were suspended.

On July 11, 2012 (four months after the adjournment of the trial), the PSC contended that Transocean did not produce documents relevant to the punitive/privity claims until afer January 12, 2012.  It sought the depositions of four Transocean employees and the amendment of the exhibit list for Phase One.  Rec. doc. 7234.  The request was discussed at the August 3 WGC.  The order states:

> After another meet-and-confer, the PSC and Transocean shall make brief submissions detailing only current disagreements.

> The Court commented that the exhibit lists for Phase One are complete. Where good cause is demonstrated, late-produced documents may be added to the exhibit lists.

Rec. doc. 7055 at 2.  At the August 3 WGC, the Court commented that Phase One exhibits lists could be revised to include "late-produced relevant documents."  Relevant referred to the nature of the content of the document as not previously been produced.  The Court referred to a document-by-document review.

Transocean consented to the amendment of the PSC's exhibit list.  Rec. doc. 7268.  Based on the review of ten documents, the PSC was permitted to take short deposition of Steve Newman. Rec. doc. 7268.  The order was affirmed by Judge Barbier with the caveat that he did not intend to permit discovery to be further reopened with respect to Phase One issues.  Rec. doc. 7437.

On January 4, 2013 and in preparation for the February 25, 2013 Phase One trial, Amended Pre-Trial Order No. 54 was issued.  With regard to exhibits, it provides, in part:

> A list of all trial exhibits was filed by the parties on or before January 13, 2012 in preparation of the initial setting of the Phase One Trial. . . .  Each party may add up to 35 exhibits to its Exhibit List without showing "good cause" by **January 11, 2013.**  The parties may also move for leave of court by **January 11, 2013** to add documents or materials first produced after February 20, 2012 to the Exhibit List with good cause shown.  Oppositions to any proposed additions must be filed no later than **January 18, 2013** with any Reply due no later than **January 21, 2013**.

Rec. doc. 8173.

11

<u>Discussion</u>

1.    <u>**The PSC's Motion to Strike Halliburton's Objections.**</u>

The PSC moves to strike three categories of objections by Halliburton.  Rec. doc. 8320.[3]

A.    **The PSC's Motion to Strike Halliburton's Objections to Emails.**

On January 14, 2013, Halliburton filed its first amended objections to Phase One exhibits designated by other parties.[4]  Rec. doc. 8242.  The PSC moved to strike the objections to 192 emails on the PSC's Phase One exhibit list.  Halliburton's objections are untimely.  The objections should have been filed on January 20, 2012.  The Court does not agree that the briefing related to the motions *in limine* for emails created a separate track for objections to emails.  **The PSC's motion to strike Halliburton's objections to 192 emails (Rec. doc. 8320) is granted.**

B.    **The PSC's Motion to Strike Halliburton's Objections to Parties' Newly Identified Exhibits.**

The PSC also seeks an order striking Halliburton's objections to 23 newly identified exhibits.  Rec. doc. 8321 at 4.  The PSC concedes that there is no deadline to object to exhibits introduced after January 20, 2012 after the depositions of Gagliano, Ravi, and Crook.  **The PSC's motion to strike (Rec. doc. 8320) Halliburton's objections to the newly identified exhibits is denied.**

C.    **The PSC's Motion to Strike Halliburton's Inadvertently Omitted Objections.**

Halliburton objected to 51 non-email exhibits that were inadvertently omitted from its January 20, 2012 objections.[5]  In a case of this magnitude some allowance must be made for

---

[3]  The objections are at rec. doc. 8242.  Halliburton replied to the PSC's motion, rec. doc. 8321, and the PSC responded.  Rec. doc. 8345.

[4]  The list also combined objections to Phase Two exhibits designated by other parties.

[5]  Of the 51, other parties timely objected to 28 so the PSC is on notice that the exhibits are objected to; 14 are objections to exhibits of other parties.

inadvertent errors.  **The PSC's motion to strike (Rec. doc. 8320) is denied as to Halliburton's 51 objections which it omitted from its January 20, 2012 objections.**

2.      **Halliburton's Objections to Certain Exhibits Identified on Plaintiffs' Combined Phase One Exhibit List Dated January 11, 2013.**

On January 11, 2013, the Plaintiffs (PSC, the U.S. and the States) submitted a combined Phase One exhibit list.  Rec. doc. 8221.  Halliburton reports that, in addition to identifying 35 exhibits as permitted by Amended PTO 54 (rec. doc. 8173), the plaintiffs identified 125 new exhibits without a demonstration of good cause and Halliburton objected to their addition.  Rec. doc. 8297. The PSC contends that the February 10, 2012 WGC order provided for the addition of post-January 13, 2012 exhibits arising from the depositions of Gagliano, Crook, Ravi and Houck.  Rec. doc. 5719 at. 3-4.  It urges that it is not required to provide good cause for the exhibits from Gagliano, Crook, Ravi and Houck.  Rec. doc. 8299.

The PSC demonstrates that the 125 exhibits were on a February 24, 2012 master list which the PSC circulated to all parties.  Accordingly, while Halliburton and the other parties were aware that the PSC was listing these exhibits, the exhibits were not included on a list filed with the Court before the adjournment of the trial in March 2012.  Rec. doc. 8390.

**Halliburton's objections to certain exhibits identified on the plaintiffs combined Phase One exhibit list, dated January 11, 2013 (Rec. doc. 8297) are overruled.**

3.      **BP's Motion to Add Exhibits for Good Cause.**

On January 11, 2013, BP filed a motion for leave to add certain exhibits produced after February 20, 2012 for good cause.  Rec. doc. 8225.  The U.S. and Transocean object to the addition of 67 exhibits.  Rec. docs. 8276 and 8288.  BP and the U.S. submitted further briefs.  Rec. docs. 8319, 8384 and 8428.  The U.S. and Transocean object that BP has not complied with Amended

PTO 54. BP argues that it has demonstrated good cause for the additional exhibits.

The issue turns on the meaning of the following provision in Amended PTO 54: "[t]he parties may also move for leave of court by January 11, 2013 to add documents or materials first produced after February 20, 2012 to the Exhibit List with good cause shown." Rec. doc. 8173 at 2.

It is undisputed that the documents were produced after February 20, 2012. BP contends that the U.S. and Transocean do not dispute its assertion that the documents contain materially different information from anything produced prior to February 20, 2012. Rec. doc. 8319 at 5. BP additionally supports that with the affidavit from Yates French. Id. Exhibit 1. That is a sufficient demonstration that the documents contain information which is not duplicative of information in its possession before February 20, 2012 and therefore establishes good cause.

**BP's motion for leave to add exhibits for good cause (Rec. doc. 8225) is granted.**

**4.     BP's Objections to Transocean's Summarized Exhibits.**

Pursuant to Amended PTO 54, Transocean listed 35 exhibits. BP contends that 8 of them improperly combine multiple documents produced before February 20 and that circumvents the 35 exhibit limitation. Rec. doc. 8329. Transocean responds that: (1) there is no bar to including more than one document in a single trial exhibit; and (2) summaries of records are admissible under Fed. R. Evid. 1006, where the underlying documents are available. It urges that summaries are admissible regardless of whether the underlying documents are offered into evidence. Rec. doc. 8332. BP replies that it does not object to summaries of records where the underlying records are not admitted. It argues, however, that the underlying records must be identified on the exhibit list. It urges that when Amended PTO 54 permits parties to up to 35 exhibits without good cause, each exhibit in the list of 35 should consist of one document. Rec. doc. 8389.

The Court agrees with BP's analysis of Amended PTO 54. **BP's objections to Transocean's third supplemental and amended exhibit list (Rec. doc. 8329) are sustained.**

5.      **TIMS Database.**

On January 22, 2013, the PSC attempted to summarize its understanding relative to confidential matters for the Phase One trial. Rec. doc. 8323. Halliburton reported its general agreement with the PSC's position. BP objected to the PSC position on expert report confidentiality. It also commented on other issues, including the TIMS Database. Rec. doc. 8343. It stated:

> With respect to trial exhibits from the eWell/TIMS database, the Court ruled that BP needs to redact certain identifying information regarding a well, but not the operator's name. BP also will attempt to give the United States two days' notice prior to using any documents from the eWell/TIMS database in Court.

Rec. doc. 8343 at 3. The U.S. and BP submitted further letter briefs concerning the TIMS database. Rec. docs. 8391 and 8434.

The U.S. contends that the TIMS Data base raises an issue under Amended PTO 54. It contends that BP's TREX-45482 and 45483 are "placeholders" for tens of thousands of unidentified exhibits. It urges that with the passage of a year since the February 25, 2012 trial was adjourned, BP should have been able to determine which of the TIMS database documents it would use. It objects to the 2 day notice procedure which was accepted at the February 22, 2012 telephone conference concerning trade secrets information. Id.

BP responds that: (1) the U.S. produced the TIMS database with a single bates number; (2) it should not be required to number the documents within TIMS database; and (3) its identification of the TIMS database on its exhibit list was sufficient. Rec. doc. 8434.

The Court does not agree with the analysis by the U.S. of Amended PTO 54. The U.S. does raise a significant problem with respect to the TIMS database. On February 22, 2012, it was agreed

15

that BP be permitted to provide the U.S. with 2 days notice of intent to use MMS pages.  At that time there was no discussion of the identification of the MMS pages or the fact that the TIMS database was produced under a single bates number.

BP is not required to number each page of the MMS data base.  It must identify the pages from the TIMS database that it proposes to use.  This identification must be shown when it provides the 2 days notice.  **By Monday, February 11, 2013, BP shall report how it proposes to identify these pages from the TIMS database**.

*   *   *

IT IS ORDERED that the deadline for appeal of this order is **Friday, February 8, 2013.**

New Orleans, Louisiana, this 1st day of February, 2013.

**SALLY SHUSHAN**
**United States Magistrate Judge**