# Exhibit D



| | U.S. Department of Justice |
|---|---|
| | **Civil Division, Torts Branch** |
| | **Aviation/Admiralty Litigation** |
| | **P.O. Box 36028** |
| | **450 Golden Gate Avenue** |
| | **San Francisco, CA 94102-3463** |
| | *Overnight Delivery Address:* |
| Telephone: (415) 436-6648 | *7th Floor, Room 7-5395* |
| Facsimile: (415) 436-6632 | *450 Golden Gate Avenue* |
| Email: mike.underhill@usdoj.gov | *San Francisco, CA 94102-3463* |

Via E-Mail                                                                                  January 11, 2013

The Honorable Sally Shushan
United States Magistrate Judge
500 Poydras Street, Room B-345
New Orleans, Louisiana 70130

Re:   Response to BP Request to Add Will-Call Witnesses

Dear Magistrate Judge Shushan:

This letter responds to BP's letter of January 4, 2013, seeking to amend BP's Phase 1 Good Faith Will Call Witness List. The United States objects to BP's adding Frank Patton to the witness list.

Pretrial Order 54 requires that BP move for leave of court and make a showing of good cause to add a witness at this date. (Rec. Doc. 8173, ¶ 1.) BP has failed to show good cause because it knew about Mr. Patton's action in approving its temporary abandonment application, which included the negative pressure testing steps, well before Mr. Patton's deposition. Mr. Patton was deposed for two days, July 13-14, 2011.

BP has represented to the Court:

[I]t did not have a full opportunity to depose Mr. Patton on all of the relevant topics within his knowledge because a number of *significant* documents were produced after Mr. Patton's deposition as well as after the original Phase 1 trial date. As one important example, *certain documents that the United States produced after BP submitted its witness list reveal the bases for Mr. Patton's approval of the APM that included the negative pressure test procedure.* As a result, BP was not able to depose Mr. Patton regarding these material documents and therefore seeks Mr. Patton's testimony live at trial.

(Langan Letter, Jan. 4, 2013, at 2, emphasis added.) This is incorrect, as Mr. Patton testified extensively about the temporary abandonment application and the negative pressure testing.

By way of background, BP employee Heather Powell electronically submitted to Mr. Patton the application for the temporary abandonment, which contained the proposed negative pressure testing, on April 16, 2010. She also sent Mr. Patton an e-mail on April 16, asking whether they could get approval "today." Mr. Patton reviewed BP's submission and approved it that day. Mr. Patton had no communication with BP about the Macondo well after April 16, 2010, four days before the blowout. These facts and documents were well known to BP in advance of Mr. Patton's deposition. Mr. Patton testified about the submitted plan and his approval of it, including the negative pressure testing. (Attachment A, Patton Dep. at 243-51, 294-317, 327, 343-49, 425-26.) BP has identified no new issues about the subject that could not have been raised at Mr. Patton's deposition.

The United States asked BP, by letter on January 6, 2013, to identify the documents upon which it bases its argument that it was prejudiced in its deposition of Mr. Patton. In response, BP listed 26 somewhat random documents (approximately 100 pages) produced from the Zantaz archive,[1] as well as one non-Zantaz document. (Attachment B, Langan Letter, Jan. 7, 2013.) These 27 documents will be provided to the Court in a binder at the conference on January 11, 2013. These documents were produced by the United States to BP within the time period set by the Court during discovery. None of these documents was authored by Frank Patton or sent directly to him. Only two of them contain his name (as a carbon copy to an email). Only *one* of these documents appears to address negative pressure testing, while the rest cover a smattering of issues, from 2007 to 2010, such as the MMS SAFE Award, ways to calculate Maximum Anticipated Surface Pressure (MASP),[2] documents concerning a well drilled by Marathon Oil in 2007, an article from *Drilling Contractor* magazine from 2009, and so on. The lack of connection between these documents and Mr. Patton (let alone the lack of connection with the negative pressure test) shows that the United States properly produced Mr. Patton's documents before his deposition and that BP had an opportunity to question him fully.

---

[1] The Zantaz archive is a large email collection that the Department of Interior created for other litigation. Documents from this archive were searched and produced here pursuant to Court order after Mr. Patton's deposition.

[2] Generally speaking, the MASP is a number derived by inserting pore pressure and depth into a mathematical formula. It is submitted by the operator as part of its application for a drilling permit. The agency uses the MASP calculation as a tool to help determine if the operator is testing the blowout preventer to the proper test pressure, as well as determining whether the well casing is sized correctly. (Saucier Dep. at 34-36, available upon request.)

2

The non-Zantaz document, which is the only one that discusses the negative pressure test, is a one-page document dated November 9, 2010, from Dr. Walter Cruickshank, Deputy Director of BOEMRE, to five BOEMRE employees, seeking information about the temporary abandonment procedure approved for the Macondo well to allow Dr. Cruickshank to respond to questioning during the post-accident investigation. (IMS176-051916.) The response to that email came from District Manager David Trocquet, discussing the lockdown sleeve and the negative pressure test. This is not a new issue -- at his deposition, Mr. Patton testified about the lockdown sleeve and the negative pressure test. (Attachment A, Patton Dep. at 306-11.) Further, this document was produced to BP on July 18, 2011, two months before Mr. Trocquet's deposition and well in advance of BP's submission of the witness list on January 20, 2012. BP could have asked David Trocquet about his email during Mr. Trocquet's deposition on September 23, 2011. Mr. Trocquet, who testified as a Rule 30(b)(6) witness, testified about the temporary abandonment application and the negative pressure testing. (Trocquet Dep. at 147-57, 203-05, 259-62, 266-67, available upon request.) One of Mr. Trocquet's 30(b)(6) topics included the agency's policies on temporary abandonment procedures. (Trocquet Dep. at 31.) Thus, this email does not support adding Mr. Patton to the witness list.

At least 6 of the 27 documents listed by BP as bases for adding Mr. Patton to the witness list are about the MMS's SAFE Award.[3] Mr. Patton testified that he did not know who was nominated for the award, did not know who won, and that he was not involved in nominating companies for the award. (Attachment A, Patton Dep. at 177-79.) It is thus unlikely that any live testimony by Mr. Patton about other peoples' documents discussing the SAFE Award would provide any relevant evidence, let alone provide good cause for naming Mr. Patton to the witness list at this date.

BP further claims that a memorandum filed by the United States (Rec. Doc. 7114) "presumably highlights the positions that the United States now intends to take at the trial," so Mr. Patton's testimony "takes on increased relevance in light of the United States's standard of care allegations." (Langan Letter, Jan. 4, 2013, at 2.) The United States has made no secret about its position in this case since the filing of its Complaint in December 2010. Expert reports illuminated the United States' position, such as the report of expert petroleum engineer Richard Heenan, which was served on BP five months before BP's submission of its witness list. (Attachment C, Heenan Rep., Aug. 11, 2012.) For example, Mr. Heenan opines that the misinterpretation of the negative pressure test in this case "was a gross and extreme departure from the standards of Good

---

[3] ZAN055-044875, ZAN037-070571, ZAN037-010013, ZAN038-233988, ZAN038-292712, ZAN055-017528. The SAFE Award is an award presentation for different categories of operators and contractors based on activities of the previous year, such as operational considerations, a company's record of events, and technology. (Saucier Dep. at 199, available upon request.)

3

Oilfield Practice." (Attachment C at 4.) The United States has not changed its position on this issue; thus, BP lacks good cause to add Mr. Patton for that reason.

The "good cause" standard generally requires the moving party to show that it could not have met the original deadline with due diligence, considering factors such as the moving party's explanation, the importance of the testimony, potential prejudice in allowing the testimony, and the availability of a continuance to cure such prejudice. *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997); *S & W Enters., L.L.C. v. S. Trust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003); 6A Charles A. Wright *et al.*, Federal Practice & Procedure § 1552.2 (3d ed. 2012). A shift in strategy due to a party's settling is not "good cause." Moreover, Mr. Patton's testimony is not critical to the issue of negative pressure testing, as his approval came four days before the blowout, and the approval was for a procedure that undisputedly differed from the procedure BP actually employed. BP may use Mr. Patton's deposition testimony to establish any relevant points about the approval of the temporary abandonment, as Mr. Patton testified about his actions.

We note finally that at the Working Group Conference held on Friday, January 4th, the Court asked the parties about their intention to add or remove witnesses. BP, unlike other parties who answered the Court's question, remained silent – and later the same day sent their letter (after COB). We believe we understand the timing tactic: BP feared that if post-deposition production of deponent-related documents were to be considered sufficient rationale to add "will call" witnesses, it would have invited a cascade of requests *for additional BP witnesses*. Regardless of the application of such a rule to BP-employed witnesses, the documents cited by BP demonstrate that it has no application to Mr. Patton. It is precisely for that reason that the United States has provided to the Court each of the documents cited by BP, *i.e.*, we shall let the Court judge for itself the relevance of the documents to the reasons cited by BP.

Accordingly, the United States requests that the Court deny BP's request to add Frank Patton to the will-call witness list.

Respectfully submitted,

R. Michael Underhill
Attorney in Charge
Dept. of Justice, Torts Branch
West Coast and Pacific Rim Office

4

cc: (via e-mail)
    PSC Liaison Counsel
    Defendants' Liaison Counsel
    States' Coordinating Counsel
    Steve O'Rourke, DOJ ENRD