**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010. | § § § § § | MDL No. 2179 SECTION "J" |
| | § | JUDGE BARBIER |
| This Document Relates to: | § § | MAGISTRATE SHUSHAN |
| 10-4239 10-4240 10-4241 | § § § § | |

<u>PLAINTIFFS' STATE OF TAMAULIPAS', VERACRUZ', AND QUINTANA
ROO'S RESPONSE AND OPPOSITION TO DEFENDANTS'
JOINT MOTION TO STRIKE CERTAIN OF THE MEXICAN STATES'
SUMMARY JUDGMENT EXHIBITS</u>

COME NOW Plaintiffs, The States of Tamaulipas, Veracruz, and Quintana Roo and file this their Plaintiffs' (States Of Tamaulipas', Veracruz', And Quintana Roo's) Response To Defendants' Joint Motion To Strike Certain Of The Mexican States' Summary Judgment Exhibits, and in support thereof, would respectfully show the Court as follows:

1. **PRELIMINARY.**

Defendants' Joint Motion To Strike Certain Of The Mexican States' Summary Judgment Exhibits ("Defendants' Motion to Strike") is devoid of any factual or legal merit and should be denied in all respects. Contrary to Defendants' unsupported assertions, the exhibits they seek to strike are neither "late filed" nor "untranslated." (See discussion below). However, prior to discussing the particulars of the exhibits, it is useful to note several factors that set the appropriate context herein and that also warrant denial of Defendants' Motion.

In effect, Defendants object to a complete and correct presentation of the applicable law to this Court. Plaintiffs' exhibits do not raise any issues concerning untimely identification of *factual* witnesses, other *factual* evidence, or tangible things. Instead, all but one of the exhibits at issue (Ex. W, a newspaper article) are either judicial opinions or well-known statutes that are readily available to anyone reviewing Mexican law. In fact, Defendants themselves have cited and relied upon some of these in their Motions for Summary Judgment. Plaintiffs respectfully submit that the unstated, yet true, reasons for Defendants objections are that these legal sources clearly establish that the law in Mexico is *not* what Defendants have represented it to be.

With respect to the newspaper article in which the Governor of Tamaulipas announces publicly the State's decision to sue BP and others for the devastation caused to the State's shores and waters, Plaintiffs need only note that this newspaper article is not within the types of legal authorities that were covered by the Court's disclosure deadline and translation requirement. The Court's order related to "… treatises, laws, statutes or other legal authorities …". (Par. 1, p. 2--Order of 9/11/12, Doc. 7367). Plaintiffs do not present the newspaper article as a treatise, law, statute, or legal authority and, obviously it is not of that nature. Therefore, any claim that it was untimely submitted is unfounded since it is not covered by the order at all. Moreover, Plaintiffs hereby translate the part of the newspaper article they rely upon: "TAMAULIPAS SUES BP FOR SPILL."

Furthermore, Defendants do not raise any claims of prejudice or harm. Indeed, under the circumstances herein, none can even be envisioned, particularly in the context of the procedural status of this matter. No trial date has been set and no deadline for completing discovery has been established, much less violated. Furthermore, although the

parties were required to make their initial disclosures by October 3, 2012 and provide expert reports by October 26, 2012 (Order of Sept. 11, 2012; Doc. No. 7367), there is no deadline for supplementation of said disclosures, prohibition of any supplementation, or preclusion of rebuttal material. In fact, under Rule 26 (a)(3)(B), Fed. R. Civ. P., Plaintiffs would have until thirty days before trial to supplement. The absence of any harm or prejudice is further underscored by the fact that Defendants have had ample time to research and opine on their version of Mexican law, and they have submitted reports on Mexican law by their designated experts. Therefore, no claim of unfair surprise or prejudice is tenable—or even claimed by Defendants. In short, Plaintiffs' presentation of additional legal sources herein is no different than the normal course of legal argument where a party directs a court to an additional case or statute when the applicable law is in dispute.

With respect to Defendants' unsubstantiated complaint of untranslated documents, it only be noted that Plaintiffs have, in fact, provided translated excerpts of those portions upon which they rely. In any event, Defendants have identified three purported experts in Mexican law who presumably speak Spanish. Although all of the legal sources have been translated into English, any claim by Defendants that they are placed at a disadvantage because a document is in Spanish (and translated in the body of Plaintiffs' response) would only serve to highlight deficiencies in the qualifications of Defendants' experts. Additionally, as lawyers reportedly versed in Mexican law, Defendants' experts could readily obtain the legal matters at issue. Presumably, they would have done so in preparation of their reports, especially since some of the sections relied upon by Plaintiffs were part of the statutes that Defendants' experts opined upon.

Plaintiffs respectfully submit that instead of "hiding" the law, Defendants should have advised the Court of same even though these sections eviscerate Defendants' arguments.

Under these circumstances, Rule 44.1 Fed. R. Civ. P. is pertinent: "…. In determining foreign law, the court may consider any relevant material or source, including testimony, *whether or not submitted by a party or admissible under the Federal Rules of Civil Procedure.*" (emphasis added). *Pittway Corp. v. U.S.,* 88 F.3d 501, 504 (7th Cir. 1996); *see, Ramirez v. Autobuses Blancos Flecha Roja, S.A. de C.V.*, 486 F. 493, 497 n. 11 (5th Cir. 1973). Even in the absence of a disclosure by a party, the foregoing federal rule contemplates independent consideration of legal sources by a court in its efforts to determine the applicable legal principles. Accordingly, and alternatively, should this Court find that the exhibits at issue are not properly presented through Plaintiffs' Response, Plaintiffs respectfully request that this Court take judicial notice of the judicial opinions and statutes contained and identified in Plaintiffs' Exhibits N, O, Q, T, Y, and "Z" as labeled by Defendants, but in actuality Exhibit Y. Plaintiffs further request that this Court take judicial notice of the newspaper publication contained in Plaintiffs' Exhibit W.

Defendants no doubt recognize the serious flaws in the bases and reasoning of their experts' conclusions. When Plaintiffs sought to depose the experts in accordance with this Court's order (U.S. Magistrate Order of Sept. 11, 2012, Doc. 7367, to further highlight these fatal deficiencies and explore additional information that might be necessary for Plaintiffs' claims, Defendants immediately moved to shield their experts from the embarrassment of having their conclusions unraveled through a deposition. Defendants convinced the Court that Defendants' experts should not be deposed. (Judge

Shusan's Order of November 19, 2012, Doc. No. 7943). Defendants undertook this extraordinary measure even though the Court's previous order and the Federal Rules of Civil Procedure provided Plaintiffs with the right to take the depositions. (Order 9/11/12, Doc. 7367; FRCP Rule 30 (depositions allowed without leave of court) and 26(b)(4)(A) (expert depositions permitted); *Salter v. Upjohn Co.,* 593 F.2d. 649, 651 (5th Cir. 1979); *Investment Properties Int'l, Ltd. v. IOS, Ltd.,* 459 F. 2d 705 (2d Cir. 1972); *Bucher v. Richardson Hospital Authority,* 160 F.R.D. 88, 92 (N.D. Tex. 1994); *Bockweg v. Anderson*, 117 F.R.D. 563, 565 (M.D. N.C. 1987). As a result of the thwarting of the depositions of Defendants' experts, Plaintiffs have been unable to anticipate all of the additional legal sources necessary to rebut Defendants' erroneous legal opinions.

2.      **THE EXHIBITS AT ISSUE.**

        **A.      Exhibit "Z" [mislabeled by Defendants][1]: Defendants' description of this Exhibit as "Jurisprudence 187773" reflects that the document to which Defendants object is actually Plaintiffs' Ex. Y.  (Jurisprudence No. 187773 is a holding by Mexican Supreme Court regarding prerequisites for rendering a prior decision effective.**

        This exhibit is a legal document setting forth the requirements necessary to make a decision of the Mexican Supreme Court binding judicial precedent. As evident from this exhibit, Mexican law requires that a holding by the Mexican Supreme Court be repeated in at least five subsequent opinions before it can be considered binding or "good law." (Pls' Resp., Ex. "P" pg. 1; Ex. Y). It is not a surprising or byzantine

---

[1]      Defendants inexplicably criticize Plaintiffs alleged failure to label their exhibits. (fn. 1, p. 2—Ds. Motion). A quick review of Plaintiffs' filings reveals that contrary to Defendants' contention, Plaintiffs did designate their additional exhibits as Exhibits N to Z). Accordingly, Defendants' statement that they had to guess at the exhibit numbers is just another misstatement of the facts herein.

requirement—every good lawyer in Mexico should know it. However, Defendants' experts apparently were not aware of this simple, fundamental requirement or, for reasons of their own, failed to advise the Court of its existence. In violation of the legal requirements in Exhibit Y, Defendants attempt to rely on a case that is not good law, thereby presenting unsound legal contentions to this Court. (See Halliburton's Lopez report, Ex. 11,Par. 4.3). The judicial decision upon which Defendants rely is a non-binding, isolated opinion of the 2d chamber of the Mexican Supreme Court issued in 1937. Its holding has not been repeated five times in subsequent Supreme Court decisions as required to make it a valid precedent. (Pls' Ex. P).

Understandably, Defendants seek to exclude Exhibit "Z's" basic provisions since they undermine the core of Defendants' legal contentions herein. Yet, to accede to Defendants' efforts to hide these legal mandates from the Court would be the equivalent of hiding from a foreign court the existence of the United States Federal Rules of Civil Procedure or the significance of "overruled," "vacated," or "withdrawn" when considering the validity of a cited judicial opinion. Moreover, as seen below, Defendants' purported legal precedent has also been superseded and, in effect, overruled by subsequent Mexican Supreme Court decisions contained in Plaintiffs' Exhibits N and O, see discussion below.

In short, the need for this exhibit could not have been anticipated since Plaintiffs did not envision Defendants would attempt to distort and otherwise obscure Mexican law by presenting and relying upon a judicial opinion that is not binding or effective. As noted above, throughout these proceedings, Defendants have sought to shield their experts from deposition so that the misleading flaws in their opinions would not be

revealed to this Court. Plaintiffs' Exhibit Y (mislabeled by Defendants as Exhibit Z) promotes justice by correcting Defendants' misstatements of law and misrepresentations as to the validity of a case they rely upon. The only "surprise" to Defendants is that they "got caught" in an egregious "oversight" that renders their positions fatally deficient.

Additionally, to the extent relied upon by Plaintiffs, this legal source was translated into English in the Declaration of Carlos Gabuardi attached to Plaintiffs' Response as Exhibit "P."

Moreover, as noted above, Rule 44.1 Fed. R. Civ. P. permits and contemplates a Court's consideration of foreign legal sources, "*whether or not submitted by a party or admissible under the Federal Rules of Civil Procedure.*" Clearly, Defendants' Motion to Strike should be denied as being without merit.

**B.      Exhibit N**: **Opinion from the Mexican Supreme Court ("Temixco Morelos Constitutional Controversy").**

As noted above, the opinion on which Defendants hinge their legal arguments is simply not good law. It is also evident that whatever persuasive value that case might arguably have had back in 1937 (which Plaintiffs submit is none), its holding and reasoning have been superseded by more recent binding decisions of the Mexican Supreme Court (*E.g.,* Ex. P, N, O).  These more recent Supreme Court opinions recognize that the States of Mexico (Plaintiffs) have jurisdictional autonomy and powers, as do the Federal and Local Governments. The relevant portion of this opinion quoted in Plaintiffs' Response (**in English**) reads as follows:

**CONTITUTIONAL CONTROVERSY.  <u>THE SEVERAL LEGAL ORDERS SET FORTH IN THE FEDERAL CONSTITUTION HAVE FUNCTIONAL AUTONOMY AND JURISDICTIONAL ATTRIBUTES OF THEIR OWN.</u>** … **there can be identified four legal orders in the Mexican System, namely: the federal, the local or state, the one of the Federal District and the**

**Constitutional.**  Each one has attributes of their own that, generally speaking, are non-inclusive among them, having autonomy for the enforcement belonging to each one of the appropriate agencies.   Exhibit "N" and "P", *Constitutional Controversy 31/97.  City Counsel of Temixco, Morelos.  August 9, 1999.  Eight Vote Majority.  Register No. 193 262 (j); 9th Era Plenary, Gazette, Volume X September 1999, Page 709).*

(See, *e.g.,* p. 14 of Plaintiffs' Response to HESI presenting the case summary **in English).**

Defendants' contention that the judicial opinion was not translated into English is quite remarkable since the above, as well as the language quoted in Plaintiffs' Response, is definitely English. As a convenience to Defendants and to provide full disclosure, Plaintiffs attached the entire opinion to their response. However, only the portions translated into English are relied upon by Plaintiffs.

Plaintiffs submit that this case demonstrates the "legal orders" (local, state, and federal branches) and the autonomous nature of the Plaintiff States. This case is readily available through legal research in Mexico and, therefore, available to Defendants and their experts. Consideration of this case is crucial since it serves to rebut Defendants' legal "authority" by demonstrating that Defendants' case is ineffective and, in essence, overruled—a matter which Defendants themselves should have noted to the Court.

**C.    Exhibit O: Opinion from the Mexican Supreme Court ("City of Pachuca De Soto, State of Hidalgo").**

Here again, Defendants' claims that the document was submitted only in Spanish are clearly erroneous. The relevant portions of the holding have been translated into English and incorporated into Plaintiffs' Response. (See, *e.g.,* p. 14 of Plaintiffs' Response to HESI's MSJ and Ex. P and O to same). As a convenience to Defendants, Plaintiffs attached the entire opinion to their Response, although only the translated

sections in Plaintiffs' Response are relied upon. As quoted on page 14 of Plaintiffs' Response to HESI, the opinion provides:

> **MEXICAN STATE, LEGAL ORDERS WITHIN.** … **we found that there are five legal orders in the Mexican State, namely: the federal, the local or state, the municipal, the one for the Federal District and the Constitutional. (Exhibit O** and P, *Constitutional Controversy 14/2001. Municipality of Pachuca de Soto, Hidalgo. July 7, 2005. Ten Vote Unanimous Majority. Register No. 177 006 (j); 9th Era Plenary, JFW Gazette, Volume XXII, October 2005, Page 2062).*

This case further confirms the "legal orders" (local, state, and federal branches) and the autonomous nature of Plaintiff States. This case, like Exhibit N, is readily available through legal research and, therefore, available to Defendants and their experts. As noted earlier, Defendants misleadingly relied on a case that was neither effective precedent nor "good law." The opinion in Exhibit O, like the one in Exhibit N, demonstrates that Defendants' authority has been, in essence, overruled and serves to rebut Defendants' misstatement of the law.

**D.      Exhibit Q**: **Code for Sustainable Development of the State of Tamaulipas [a state statute of the State of Tamaulipas]**.

Defendants' arguments with respect to this exhibit are completely frivolous. Defendants have been aware of Plaintiffs' reliance on this statute since Plaintiffs' first disclosures on October 3, 2012. (Item 7 of Plaintiffs' Initial Disclosures; see attached as Exhibit "aa"). Furthermore, the pertinent portions of the statute were translated **into English** and incorporated into the initial expert report of Julio Cesar Cruz Chavira (one of Plaintiffs' experts) that was provided to Defendants on October 26, 2012. (Pls' Ex. L, pp. 18-19, 25, and 26—all translated into English). Therefore, this statute is not a newly presented legal source as Defendants erroneously claim since Defendants have had it since Plaintiffs' initial disclosures. Additionally, in their Plaintiffs' Response, Plaintiffs

*again* provided a translated portion of the statute. (*E.g.,* pp. 16-17, Pls' Resp.to HESI). This Response merely reiterated what had previously been submitted to Defendants months earlier. Therefore, Defendants' arguments that this exhibit is "new," "late filed," and/or untranslated are simply not true and their Motion to Strike should be denied.

E.    **Exhibit T**: **General Law of Wildlife.**

Contrary to Defendants' unsupported argument herein, this is not a new or late filed legal source.  Plaintiffs gave notice of their reliance on this statute as early as October 3, 2012 through Plaintiffs' first disclosures. (Item 7 of Plaintiffs' Initial Disclosures—a true and correct copy of the relevant portions is hereby attached as Exhibit "aa"). Furthermore, on October 26, 2012, Plaintiffs presented Defendants with a translation of the pertinent portions of the statute through the initial expert report of (Plaintiffs' experts) that incorporated these provisions. (Carlos A. Gabuardi—Pls' Ex. B; see, Julio Cesar Cruz Chavira--Pls' Ex. L, p. 21 also referencing the statute). This statute is not a newly presented legal source since Defendants have had it (**translated into English**) since Plaintiffs' initial disclosures. The  frivolous  nature  of  Defendants' objection to this statutory source is further evident from the fact that Defendants themselves have relied upon this statute in their expert reports (See, BP's Expert Leopoldo Burgete-Stanek item 8, pg.9 of Expert Report) and in Defendants' Motion for Summary Judgment. Under the circumstances, Defendants' motion to strike is clearly frivolous and should be denied.

F.    **Exhibit X: [Mislabeled by Defendants as Ex. Y] General Law of Ecological Equilibrium.**

This statute is **not** a newly presented legal source since Plaintiffs disclosed it to Defendants through Plaintiffs' initial disclosures. (See Item 6 attached hereto as Exhibit

"aa"). Furthermore, on October 26, 2012 Plaintiffs presented Defendants with a translation of the pertinent portions of the statute through the initial expert report of (Plaintiffs' experts) that incorporated these provisions. (Julio Cesar Cruz Chavira--Pls' Ex. L, p. 14). Plaintiffs' Response merely incorporated what had already been provided to Defendants—in English.

Moreover, Defendants have used this statute themselves in their Motions, thereby belying any claim of prejudice or "surprise." (See, p.16 of BP's MSJ). Under the circumstances, Defendants' motion to strike is clearly frivolous and should be denied. Accordingly, Defendants' contentions are completely frivolous.

G.      Exhibit "X" (as Labeled by Defense "W" as filed by Plaintiff's): Article from El Bravo.

Plaintiffs included as Exhibit "W", a newspaper article in which the Governor of Tamaulipas announces publicly the State's decision to sue BP and others for the devastation caused to the State's shores and waters. Plaintiffs' translation of the part of the newspaper article they rely upon follows: "TAMAULIPAS SUES BP FOR SPILL." The public announcement by the Governor of Tamaulipas establishes the legal, executive, and political power, right, and authority of the States to bring this suit. Contrary to Defendants' erroneous assertions, this newspaper article was not untimel produced. This newspaper article is not among the types of legal authorities that were covered by the Court's disclosure deadline and translation requirement, *i.e.,* "… treatises, laws, statutes or other legal authorities …". (Par. 1, p. 2--Order of 9/11/12, Doc. 7367). Therefore, any claim that it should have been produced by the Court's October 3, 2012 deadline is without merit since it is only a newspaper article and it, obviously, is not a

treatise, law, statute, or legal authority. Therefore, any claim that it was untimely submitted is unfounded since it is not covered by the order at all.

     **H.**     **Exhibit Z: Transocean's Guilty Plea Agreement.**

     As noted above, Defendants have objected to Plaintiffs' Exhibit Z, which, in fact, is Transocean's guilty plea. Out of an abundance of caution and in the event that Defendants are referring to this exhibit rather than to Plaintiffs' Exhibit Y, Plaintiffs oppose Defendants' efforts to strike this exhibit and respond as follows:

     Inexplicably, Defendants object to Exhibit Z—a document that is in English. Plaintiffs note that Defendant Transocean Deepwater, Inc. and Transocean Ltd executed a Cooperation Guilty Plea Agreement whereby Transocean Deepwater, Inc. admitted to federal criminal violations of the Clean Water Act, 33 U.S.C. §§ 1319 (c) (1) (A) and 1321 (b)(3).This guilty plea agreement was executed on January 3, 2013, a date much later than the date disclosures were due. Therefore, it would have been impossible to have designated this document at an earlier date. Transocean's guilty plea is also a document of public record, within the filings of the federal district court in the Eastern District of Louisiana, and one that has received widespread publicity. Certainly, the Court could take judicial notice of such guilty plea agreement and Plaintiffs request, alternatively, that if their Exhibit Z is stricken, that this Court take judicial notice of Transocean's guilty plea. Moreover, there is no indication from Defendants' notice that they have suffered any prejudice from the presentation of this public document and, in fact, none can be envisioned since all Defendants, especially Transocean, were aware of the events and facts leading up to the execution of the guilty plea and its entry. Accordingly, Defendants' motion to strike this exhibit is frivolous and should be denied.

3.      **CONCLUSION.**

Therefore, Defendants Motion to Strike Plaintiffs exhibits should be denied in all respects. As noted above, all of the materials have been presented in English to the extent relied upon by Plaintiffs. Moreover, to the extent that they could be anticipated, Plaintiffs previously submitted or disclosed the legal sources they rely upon. Through submission of the legal sources attached to Plaintiffs' Response, Plaintiffs seek not only to rebut Defendants' mischaracterizations of Mexican law, but also promote justice by the simple means of presenting relevant legal authority for their position—authority that no doubt is also known to Defendants or their reported experts. Moreover, with respect to Exhibit "W", the newspaper article, it is not a legal source of a nature encompassed by the October 3, 2012 disclosure deadline. Although Plaintiffs submit that Defendants' Motion to Strike should be denied in its entirety, Plaintiffs alternatively request that should the Court find otherwise, that it take judicial notice of the statutes and judicial opinions reflected and referenced in Plaintiffs' exhibits, as well as the newspaper article. More specifically, Plaintiffs request that the Court take judicial notice of the following:

A.      Exhibit "Z" [mislabeled by Defendants]: Defendants' description of this Exhibit as "Jurisprudence 187773" reflects that the document to which Defendants object is actually Plaintiffs' Ex. Y.  (Jurisprudence No. 187773 is a holding by Mexican Supreme Court regarding prerequisites for rendering a prior decision effective.

B.      Exhibit N: Opinion from the Mexican Supreme Court ("Temixco Morelos Constitutional Controversy." belonging to each one of the appropriate agencies.", *Constitutional Controversy 31/97.  City Counsel of Temixco, Morelos.  August 9, 1999. Eight Vote Majority.  Register No. 193 262 (j); 9th Era Plenary, Gazette, Volume X September 1999, Page 709).*

C.      Exhibit O: Opinion from the Mexican Supreme Court ("City of Pachuca De Soto, State of Hidalgo"). *Constitutional Controversy 14/2001.  Municipality of Pachuca de Soto, Hidalgo.  July 7, 2005.  Ten Vote Unanimous Majority.  Register No. 177 006 (j); 9th Era Plenary, JFW Gazette, Volume XXII, October 2005, Page 2062).*

D.      Exhibit Q: Code for Sustainable Development of the State of Tamaulipas [a state statute of the State of Tamaulipas].

E.      Exhibit T: General Law of Wildlife.

F.      Exhibit X: [Mislabeled by Defendants as Ex. Y] General Law of Ecological Equilibrium.

G.      Exhibit "X": Article from El Bravo – "W" by Plaintiff's.

H.      Exhibit Z: Transocean's Guilty Plea Agreement

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that

Defendants' Joint Motion To Strike Certain Of The Mexican States' Summary Judgment

Exhibits be denied in all respects.

Dated: February 8, 2013

Respectfully submitted,

**SERNA & ASSOCIATES PLLC**

/s/ Enrique G. Serna
Enrique G. Serna
enrique@serna-associates.com
20985 IH 10 W
San Antonio, Texas
Telephone: 210.472.2222
Facsimile: 210.228.0839

<u>**CERTIFICATE OF SERVICE**</u>

I hereby Certify that the above and foregoing pleading **PLAINTIFFS' STATE OF TAMAULIPAS', VERACRUZ', AND QUINTANA ROO'S RESPONSE AND OPPOSITION TO DEFENDANTS' JOINT MOTION TO STRIKE CERTAIN OF THE MEXICAN STATES' SUMMARY JUDGMENT EXHIBITS**, has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No.12, and that the foregoing was electronically filed by

using the CM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this the 8th of February 2013.

/s/ Enrique G. Serna
Enrique G. Serna