**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG | * | |
|        "DEEPWATER HORIZON" | * | MDL NO. 2179 |
|        IN THE GULF OF MEXICO, | * | |
|        ON APRIL 20, 2010, | * | SECTION: J |
| | * | |
| THIS DOCUMENT RELATES TO: | * | JUDGE BARBIER |
| | * | |
| 10-4536 | * | MAGISTRATE JUDGE SHUSHAN |
| | * | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**BP'S RESPONSE TO UNITED STATES' UNOPPOSED MOTION FOR**
**(1) ENTRY OF AND (2) AMENDMENT OF PARTIAL CONSENT DECREE**
**WITH THE TRANSOCEAN DEFENDANTS**

BP does not oppose the proposed settlement between the United States and the Transocean Defendants as requested by the United States' Unopposed Motion for (1) Entry of and (2) Amendment of Partial Consent Decree with the Transocean Defendants [Rec. Doc. 8502 (the "Motion")].

To the contrary, BP supports the entry of settlements that are fair, reasonable, and serve to simplify this extraordinarily complex multi-district litigation.  BP specifically agrees with the United States that "[p]ublic policy strongly encourages the settlement of cases."  U.S. Mem. in Supp. at 6 (quoting *Ho v. Martin Marietta Corp.*, 845 F.2d 545, 547 n.2 (5th Cir. 1988)).  And in fact, BP itself has endeavored to settle claims in this multi-district litigation, and entered into two settlements with the Plaintiffs' Steering Committee, both of which were recently approved by this Court.  [*See* Rec. Docs. 8138, 8217.]

In addition, BP appreciates that the United States and the Transocean Defendants have addressed its comments regarding paragraph 13 of the proposed Partial Consent Decree by modifying the language to clarify that the Transocean Defendants may not seek indemnity or

reimbursement for their civil penalties from any other defendant or "any corporate affiliates of such defendants."

BP nonetheless submits this short response to comment on statements that appear in the United States' Memorandum in Support of the Motion [Rec. Doc. 8502-1 (the "Memorandum")]. Specifically, with respect to the proposed settlement of Clean Water Act ("CWA") civil penalty claims against the Transocean Defendants, the Memorandum makes certain inaccurate assertions about how the CWA penalty provisions operate and certain references to the United States' unsettled civil penalty claim against BP. Some of these assertions may well be in dispute once the United States' penalty claim against BP becomes ripe for adjudication, which will not be the case until Phase Two of the presently scheduled trial is completed and, following the Phase Two trial, there has been a period of discovery related to the CWA penalty factors discussed below. While the Court need not, and BP respectfully submits should not, reach any of these disputed issues to approve the proposed settlement between the United States and the Transocean Defendants, we address them now so that that the Court will have the benefit of BP's position should it nonetheless conclude that any of these issues are relevant to the pending Motion.

*First,* the United States asserts: "The CWA imposes a penalty based on the number of barrels of oil discharged." *Id.* at 10. This statement, strictly speaking, is not accurate. Rather, the quantity of oil discharged, in combination with the degree of culpability, establishes the *maximum* penalty that may be imposed. The penalty *actually* imposed, which can be anywhere from zero to the statutory maximum, is to be determined by the Court in its discretion based on consideration of eight statutory penalty factors. *See* 33 U.S.C. § 1321(b)(7)-(8).

*Second*, the United States suggests that the Court, in assessing a CWA penalty, should start at the statutory maximum and make downward adjustments from there (the so-called "top-

down" approach).  *See id.*  But such an approach would not be appropriate in assessing a penalty under § 311 of the CWA.  Rather, in assessing a penalty in this case, the Court should consider all of the statutory penalty factors and select an appropriate penalty in the range between zero and the statutory maximum.  This approach was recently used by Judge Haik in the *Citgo* CWA oil spill enforcement case in the Western District of Louisiana.  *See United States v. Citgo Petroleum Corp.*, No. 08-893 (W.D. La. Sept. 29, 2011), appeal pending No. 11-31117 (5th Cir.).

*Third*, the United States implies that it has greater litigation risk on the gross negligence issue with respect to the Transocean Defendants "in light of the view of the United States as to BP's central role in the disaster."  U.S. Mem. at 12.  While BP has acknowledged and apologized for its role in this tragedy, BP vigorously disputes that its conduct was grossly negligent.  As has been widely recognized, including in official reports issued following government investigations, the *Deepwater Horizon* oil spill was a multi-causal, multi-party incident involving Transocean and others, with Transocean as the vessel owner and petitioner in limitation in a central role in this maritime case.

As the United States acknowledges, the specific causes of the incident and the various defendants' relative degrees of culpability for the incident will be litigated in the Phase One trial. As part of that trial, Transocean's actions and inactions, including its failure to (a) monitor the Macondo well for obvious signs of an influx of hydrocarbons, (b) timely shut in the well and (c) adequately maintain the rig's blowout preventer, will be carefully evaluated by this Court, as will the causal conduct of other defendants.  For these reasons, among others, the extent of BP's involvement need not be considered here in the context of evaluating the proposed settlement between the United States and the Transocean Defendants.

*Fourth*, the United States asserts that "references in the press and in public comments to CWA penalty amounts of $20 billion may not be meaningfully relevant for a settlement with the Transocean Defendants." *Id.* at 14.  Any implication that such references *are* relevant to BP is equally misplaced.  First, this action should be adjudicated based on the facts and the law, not "references in the press."  Beyond that, even if $20 billion were a realistic statutory maximum, which it is not,[1] the statutory maximum only sets the range within which the Court is permitted to assess a civil penalty (*i.e.*, the Court can assess a penalty between zero and the statutory maximum).  As a matter of practice, courts routinely assess penalties that are merely a fraction of the statutory maximum.  *See, e.g.*, *United States v. Citgo Petroleum Corp.*, No. 08-893 (W.D. La. Sept. 29, 2011) (in a case where the United States was seeking a penalty from Citgo for a large oil spill from Citgo's Lake Charles Refinery, the court applied the penalty factors and assessed a penalty of $111 a barrel, which was 10% of the $1100 per barrel statutory maximum); *United States v. Smithfield Foods, Inc.*, 972 F. Supp. 338 (E.D. Va. 1997) (penalty assessed by court was 7.2% of statutory maximum); *United States v. Mun. Auth. of Union Twp. ("Dean Dairy")*, 929 F. Supp. 800 (M.D. Penn. 1996) (penalty assessed by court was 8.8% of statutory maximum). Further, as these precedents show, in setting any CWA penalty involving BP, this Court is not faced with a binary choice between a penalty amount based on $1100 per barrel versus a penalty amount based on $4300 per barrel (depending on the degree of culpability), and instead has broad discretion in setting the penalty based upon the eight statutory factors.[2]

---

[1] In order for the statutory maximum penalty to be $20 billion, the Court would have to (i) agree with the United States' public estimate of 4.9 million barrels of oil discharged (which will be contested by BP at the Phase Two trial); (ii) find that the approximately 800,000 barrels of oil that were collected directly from the source of the discharge and never released into the waters of the Gulf of Mexico are subject to civil penalties (an issue on which BP has a pending motion for summary judgment); and (iii) find that BP acted with gross negligence and/or willful misconduct (which will be strongly contested by BP at the Phase One trial).

[2] Likewise, the United States asserts that "$1 billion is not a small sum for the Transocean Defendants." U.S. Mem. at 14.  BP submits that $1 billion is not a small sum for *any* defendant.  By way of example, Transocean's civil

Footnote continued on next page

*Fifth*, in supporting the settlement, the United States repeatedly references the RESTORE Act.  To the extent that the United States is suggesting that the RESTORE Act is relevant to application of the statutory penalty factors or the assessment of a civil penalty under the CWA, BP vigorously disagrees.  The RESTORE Act may be relevant to the United States' decision to settle civil penalty claims so as to expedite payments to the Gulf Coast for use in restoration efforts.  However, the RESTORE Act, which was enacted after the underlying conduct in this case took place, cannot, consistent with Due Process, be used to increase the penalty that will be assessed against any party as a result of the incident.

In short, the civil penalty to be assessed against BP and how that penalty will compare to the penalty to be paid by the Transocean Defendants (whether it should be higher, lower, or the same) should be decided solely in the context of the claims between the United States and BP.  Accordingly, BP respectfully requests that the Court limit its consideration of the Motion and Memorandum to the only question properly before the Court at this time — namely, an evaluation and approval decision regarding the proposed settlement between the United States and the Transocean Defendants.

With the above understandings, and recognizing that issues regarding the United States' penalty claims against BP are not now before the Court, BP does not oppose the proposed settlement between the United States and the Transocean Defendants.

---

Footnote continued from previous page

penalty of $1 billion is more than the *total* sum of *all* civil penalties recovered by the United States on behalf of the U.S. Environmental Protection Agency under *all* federal environmental statutes in the last *ten years*.  *See* http://www.epa.gov/compliance/data/results/annual/index.html.

Dated: February 13, 2013

Respectfully submitted,

/s/ Don K. Haycraft

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Telephone:  312-862-2000
Facsimile:  312-862-2200

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA  70139-5099
Telephone:  504-581-7979
Facsimile:  504-556-4108

Joel M. Gross
Allison B. Rumsey
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC  20004-1206
E-Mail:  Allison.Rumsey@aporter.com
Telephone:  202-942-5000
Facsimile:  202-942-5999

Robert R. Gasaway
Jeffrey Bossert Clark
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  202-879-5000
Facsimile:  202-879-5200

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone:  202-662-5985
Facsimile:  202-662-6291

**Attorneys for BP Exploration & Production Inc.**

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 13th day of February, 2013.

Dated: February 13, 2013                          Respectfully submitted,


                                                  */s/ Don K. Haycraft*_____
                                                  Don K. Haycraft