**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **In re: Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf of Mexico, on April 20, 2010** | **MDL No. 2179** |
| | **SECTION: J** |
| **This document applies to:** *All Cases* | **JUDGE BARBIER** |
| | **MAGISTRATE SHUSHAN** |

**DONALD VIDRINE'S RESPONSE TO**
**"INTERROGATORIES TO DONALD VIDRINE" SERVED BY TRANSOCEAN**

Now through his undersigned counsel comes Donald Vidrine and hereby responds to the statements contained in "Interrogatories to Donald Vidrine" served by e-mail on January 29, 2012, by counsel for Transocean Offshore Deepwater Drilling, Inc., Transocean Holdings LLC, Transocean Deepwater Inc., and Triton Asset Leasing GmbH (collectively, "Transocean").

**PRELIMINARY STATEMENT**

Donald Vidrine makes this preliminary statement in accordance with the Court's May 26, 2011 Order Regarding Invocation of the Fifth Amendment [Doc. 2555]:

As noted in the recently-filed Joint Consent Motion of Donald Vidrine and the Transocean Defendants to Vacate Order Dated February 14, 2012, as Amended by and the Order Dated February 24, 2012 (the "Motion to Vacate") [Doc. 8254] , "Vidrine has resisted Transocean's efforts to depose him on the grounds that his physicians have concluded that Vidrine is unable, for medical reasons, to give a deposition." *See* Motion to Vacate at 1. The Court required Vidrine to submit to an examination by a Court-appointed psychiatrist who was to

then report to the Court on whether Vidrine is able to submit to a deposition. *Id*. Vidrine appealed the Court's orders. *Id*. at 2.

During the pendency of that appeal, on November 14, 2012, a grand jury returned a superseding indictment against Vidrine in the matter entitled "*United States of America v. Robert Kaluza and Donald Vidrine*", No. 12-265, Section "K", on the docket of this Court. Consequently, and as noted in the Motion to Vacate, "so as to avoid forcing Vidrine to submit to an examination by the Court-appointed expert, and to avoid the later possibility of forcing Vidrine to submit to deposition upon live testimony, Transocean has agreed to instead propound written interrogatories to Vidrine, and Vidrine has agreed to respond to such interrogatories, without objection, within fourteen (14) days of service. This agreement is based on the understanding that Vidrine intends to invoke his Fifth Amendment rights in response to the interrogatories . . . ." *Id*. at 2. This Court granted the Motion to Vacate. *See* January 22, 2013 Order, Doc. 8305.

Vidrine's response to Transocean's "Interrogatories to Donald Vidrine" is made in accordance with the aforementioned agreement and this Court's order granting the Motion to Vacate. Although all of the statements contained in "Interrogatories to Donald Vidrine" are declaratory statements that are followed by a question mark and are not questions, and many of these statements are compound in nature or suffer from other defects, in accordance with his agreement with Transocean, Vidrine will respond to these statements without objection, but his response is without waiver of or prejudice to, and is made while expressly reserving, all legal rights available to Donald Vidrine under the United States Constitution or otherwise in this or any other proceeding. Further, Donald Vidrine will follow the advice of his counsel and, in response to each of the statements in Transocean's "Interrogatories to Donald Vidrine", he will

exercise his Fifth Amendment right and will respectfully decline to give answers or furnish information in response to the interrogatories. Donald Vidrine expressly notes that the United States Supreme Court has “never held . . . that the [Fifth Amendment] privilege is unavailable to those who claim innocence. To the contrary, we have emphasized that one of the *Fifth Amendment’s* ‘basic functions . . . is to protect *innocent* men . . . “who otherwise might be ensnared by ambiguous circumstances.”’” *Ohio v. Reiner*, 532 U.S. 17, 21 (2001) (citations omitted; emphasis in original).

**RESPONSES TO THE SEPARATELY-NUMBERED STATEMENTS**

**INTERROGATORY NO. 1**

On April 20, 2010, you were one of two BP Well Site Leaders aboard the Deepwater Horizon?

**RESPONSE TO INTERROGATORY NO. 1:**

On the advice of my counsel, I respectfully decline to answer or to furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 2**

On April 20, 2010, the other BP Well Site Leader aboard the Deepwater Horizon was Robert Kaluza?

**RESPONSE TO INTERROGATORY NO. 2:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 3**

Before the NEGATIVE PRESSURE TESTING, BP had not given YOU formal training on how to perform a NEGATIVE PRESSURE TEST?

**RESPONSE TO INTERROGATORY NO. 3:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 4**

Before the NEGATIVE PRESSURE TESTING, BP had not given YOU formal training on how to interpret a NEGATIVE PRESSURE TEST?

**RESPONSE TO INTERROGATORY NO. 4:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 5**

Before the NEGATIVE PRESSURE TESTING, BP had not given YOU a written procedure detailing how to conduct a NEGATIVE PRESSURE TEST?

**RESPONSE TO INTERROGATORY NO. 5:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 6**

Before the NEGATIVE PRESSURE TESTING, BP had not given YOU a written procedure detailing how to interpret a NEGATIVE PRESSURE TEST?

**RESPONSE TO INTERROGATORY NO. 6:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 7**

Before April 20, 2010, YOU had previously performed a NEGATIVE PRESSURE TEST on the Deepwater Horizon by monitoring for pressure and/or flow on the drill pipe?

**RESPONSE TO INTERROGATORY NO. 7:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 8**

Before April 20, 2010, YOU had not previously performed a NEGATIVE PRESSURE TEST on the Deepwater Horizon by monitoring for pressure and/or flow on the kill line?

**RESPONSE TO INTERROGATORY NO. 8:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 9**

Prior to conducting the NEGATIVE PRESSURE TESTING, you read the NEGATIVE PRESSURE TEST procedure outlined in the APM?

**RESPONSE TO INTERROGATORY NO. 9:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 10**

The APM required that a NEGATIVE PRESSURE TEST be conducted prior to displacing the well to seawater down to a depth of 8367'?

**RESPONSE TO INTERROGATORY NO. 10:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 11**

The APM required that a second NEGATIVE PRESSURE TEST be conducted after displacing the well to seawater to a depth of 8367'?

**RESPONSE TO INTERROGATORY NO. 11:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 12**

On April 20, 2010, YOU instructed the TRANSOCEAN DRILL CREW in words or substance to conduct the SECOND NEGATIVE PRESSURE TEST by monitoring the kill line for pressure and/or flow?

**RESPONSE TO INTERROGATORY NO. 12:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 13**

On April 20, 2010, prior to the start of the SECOND NEGATIVE PRESSURE TEST, you communicated with Robert Kaluza about a call to the on-shore BP engineers in Houston to tell them a second NEGATIVE PRESSURE TEST would be conducted?

**RESPONSE TO INTERROGATORY NO. 13:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 14**

You were aware that Robert Kaluza in fact called the BP on-shore engineers in Houston to advise them that a second NEGATIVE PRESSURE TEST would be conducted?

**RESPONSE TO INTERROGATORY NO. 14:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 15**

On April 20, 2010, before the BLOWOUT, YOU observed pressure on the drill pipe during the NEGATIVE PRESSURE TESTING?

**RESPONSE TO INTERROGATORY NO. 15:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 16**

The Company Man for BP has the responsibility for calculating or estimating the volume of fluid expected to bleed back during NEGATIVE PRESSURE TESTING?

**RESPONSE TO INTERROGATORY NO. 16:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 17**

Prior to conducting the NEGATIVE PRESSURE TESTING on April 20, 2010, YOU did not calculate the volume of fluid expected to bleed back to the cement unit during any NEGATIVE PRESSURE TESTING?

**RESPONSE TO INTERROGATORY NO. 17**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 18**

Prior to conducting the NEGATIVE PRESSURE TESTING on April 20, 2010, no BP personnel on the rig calculated the volume of fluid expected to bleed back to the cement unit during any NEGATIVE PRESSURE TESTING?

**RESPONSE TO INTERROGATORY NO. 18:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 19**

Prior to conducting the NEGATIVE PRESSURE TESTING on April 20, 2010, YOU did not communicate to any TRANSOCEAN DRILL CREW member or HESI personnel manning the cement unit the volume of fluid calculated or expected to bleed back during any NEGATIVE PRESSURE TESTING?

**RESPONSE TO INTERROGATORY NO. 19:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 20**

On April 20, 2010, YOU instructed the TRANSOCEAN DRILL CREW in words or substance to conduct the SECOND NEGATIVE PRESSURE TEST by monitoring the kill line for pressure and/or flow because the APM required that the test be monitored on the kill line?

**RESPONSE TO INTERROGATORY NO. 20:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 21**

On April 20, 2010, before the BLOWOUT, YOU believed that the pressure on the drill pipe during the NEGATIVE PRESSURE TESTING was caused by a "bladder effect"?

**RESPONSE TO INTERROGATORY NO. 21:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 22**

On April 20, 2010, before the BLOWOUT, YOU believed that the pressure on the drill pipe during the NEGATIVE PRESSURE TESTING was caused by "annular compression"?

**RESPONSE TO INTERROGATORY NO. 22:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 23**

On April 20, 2010, YOU were present on the drill floor at the time the SECOND NEGATIVE PRESSURE TEST was completed?

**RESPONSE TO INTERROGATORY NO. 23:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 24**

On April 20, 2010, during the SECOND NEGATIVE PRESSURE TEST, you observed no fluid flowing from the kill line for a period of 30 minutes?

**RESPONSE TO INTERROGATORY NO. 24:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 25**

On April 20, 2010, before the BLOWOUT, YOU believed the SECOND NEGATIVE PRESSURE TEST was successful?

**RESPONSE TO INTERROGATORY NO. 25:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 26**

On April 20, 2010, before the BLOWOUT, YOU told Jimmy Harrell in words or substance that YOU believed the NEGATIVE PRESSURE TESTING was successful?

**RESPONSE TO INTERROGATORY NO. 26:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 27**

On April 20, 2010, before the BLOWOUT, YOU told Jason Anderson in words or substance that YOU believed the NEGATIVE PRESSURE TESTING was successful?

**RESPONSE TO INTERROGATORY NO. 27:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 28**

On April 20, 2010, before the BLOWOUT, YOU told Dewey Revette in words or substance that YOU believed the NEGATIVE PRESSURE TESTING was successful?

**RESPONSE TO INTERROGATORY NO. 28:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 29**

On April 20, 2010, before the BLOWOUT, YOU told Vincent Tabler in words or substance that YOU believed the NEGATIVE PRESSURE TESTING was successful?

**RESPONSE TO INTERROGATORY NO. 29:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 30**

On April 20, 2010, before the BLOWOUT and after the SECOND NEGATIVE PRESSURE TEST, YOU spoke to Mark Hafle via telephone?

**RESPONSE TO INTERROGATORY NO. 30:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 31**

On April 20, 2010, before the BLOWOUT, YOU told Mark Hafle in words or substance that there was pressure on the drill pipe during the NEGATIVE PRESSURE TESTING?

**RESPONSE TO INTERROGATORY NO. 31:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 32**

On April 20, 2010, before the BLOWOUT and after the SECOND NEGATIVE PRESSURE TEST, YOU told Mark Hafle that the NEGATIVE PRESSURE TESTING was “squirrelly”?

**RESPONSE TO INTERROGATORY NO. 32:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 33**

On April 20, 2010, before the BLOWOUT, YOU told Mark Hafle in words or substance that there was zero pressure on the kill line during the NEGATIVE PRESSURE TESTING?

**RESPONSE TO INTERROGATORY NO. 33:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 34**

On April 20, 2010, before the BLOWOUT, Mark Hafle told YOU in words or substance that you cannot have pressure on the drill pipe and zero pressure on the kill line in a NEGATIVE PRESSURE TEST that is properly lined up?

**RESPONSE TO INTERROGATORY NO. 34:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 35**

On April 20, 2010, before the BLOWOUT, YOU told Mark Hafle in words or substance that if there had been a kick in the hole YOU would have seen it?

**RESPONSE TO INTERROGATORY NO. 35:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 36**

On April 20, 2010, before the BLOWOUT, Mark Hafle told YOU in words or substance that if there had been a kick in the hole we would have seen it?

**RESPONSE TO INTERROGATORY NO. 36:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 37**

On April 20, 2010, after completion of the SECOND NEGATIVE PRESSURE TEST, Mark Hafle did not instruct YOU to conduct another NEGATIVE PRESSURE TEST?

**RESPONSE TO INTERROGATORY NO. 37:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 38**

On April 20, 2010, after completion of the SECOND NEGATIVE PRESSURE TEST, YOU did not tell any member of the TRANSOCEAN DRILL CREW to conduct another NEGATIVE PRESSURE TEST?

**RESPONSE TO INTERROGATORY NO. 38:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 39**

On April 20, 2010, after completion of the SECOND NEGATIVE TEST, Mark Hafle did not tell YOU to stop the displacement?

**RESPONSE TO INTERROGATORY NO. 39:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 40**

On April 20, 2010, after speaking with Mark Hafle, YOU did not tell the TRANSOCEAN DRILL CREW to stop the displacement?

**RESPONSE TO INTERROGATORY NO. 40:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 41**

On April 20, 2010, after completion of the SECOND NEGATIVE PRESSURE TEST, Mark Hafle told YOU in words or substance that he was watching the Insite data from the Macondo well?

**RESPONSE TO INTERROGATORY NO. 41:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 42**

On April 20, 2010, at approximately 9:00 p.m., you were in the drill shack at the time the sheen test was conducted?

**RESPONSE TO INTERROGATORY NO. 42:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 43**

On April 20, 2010, after the flow check conducted at approximately 9:00 p.m., YOU believed everything regarding the Macondo well looked fine?

**RESPONSE TO INTERROGATORY NO. 43:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 44**

On April 20, 2010, after the flow check conducted at approximately 9:00 p.m., YOU believed that the well was not flowing?

**RESPONSE TO INTERROGATORY NO. 44:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 45**

After 9:30 p.m. on April 20, 2010, YOU received a call from Jason Anderson?

**RESPONSE TO INTERROGATORY NO. 45:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 46**

After 9:30 p.m. on April 20, 2010, Jason Anderson told YOU that they were getting mud back?

**RESPONSE TO INTERROGATORY NO. 46:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 47**

After 9:30 p.m. on April 20, 2010, Jason Anderson told YOU that they were closing the annular?

**RESPONSE TO INTERROGATORY NO. 47:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 48**

After 9:30 p.m. on April 20, 2010, Jason Anderson told YOU that they were diverting returns to the gas buster?

**RESPONSE TO INTERROGATORY NO. 48:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 49**

After 9:30 p.m. on April 20, 2010, YOU attempted to go to the drill floor?

**RESPONSE TO INTERROGATORY NO. 49:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 50**

After 9:30 p.m. on April 20, 2010, YOU saw mud and/or seawater blowing out of the rotary?

**RESPONSE TO INTERROGATORY NO. 50:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

**INTERROGATORY NO. 51**

Despite Vincent Tabler's recommendation of a full bottoms up circulation prior to the production casing cement job, YOU conveyed to Vincent Tabler that BP was not going to do a full bottoms up circulation?

**RESPONSE TO INTERROGATORY NO. 51:**

On the advice of my counsel, I respectfully decline to answer or furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution.

/s/ Robert N. Habans, Jr.
Robert N. Habans, Jr. (La. Bar No. 6395)
Habans & Carriere
10843 N. Oak Hills Parkway
Baton Rouge, Louisiana 70810
Telephone: (225) 757-0225
Fax: (225) 757-0398
Email: bobhab@bellsouth.net
**ATTORNEYS FOR DONALD VIDRINE**

**CERTIFICATE OF SERVICE**

I do hereby certify that on this 8th day of February, 2013, I served by e-mail a copy of the foregoing document on counsel of record for Transocean Offshore Deepwater Drilling, Inc., Transocean Holdings LLC, Transocean Deepwater Inc., and Triton Asset Leasing GmbH.

/s/ Robert N. Habans, Jr.
Robert N. Habans, Jr.