# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois  60654

| | | |
|---|---|---|
| Mark J. Nomellini<br>To Call Writer Directly:<br>(312) 862-2410<br>mark.nomellini@kirkland.com | (312) 862-2000<br><br>www.kirkland.com | Facsimile:<br>(312) 862-2200 |

February 22, 2013

**Via Email**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

> Re: MDL 2179 – BP's Letter Brief in Response to the United States'
> Motion *in Limine* for Admission of Nine Trial Exhibits (Rec. Doc. 8587)

Dear Magistrate Judge Shushan:

The United States' Motion *in Limine* for Admission of Nine Trial Exhibits (Rec. Doc. 8587) requests a ruling on nine sample exhibits, seven of which were objected to by BP on various grounds.[1]  Four of these exhibits were addressed during the parties' meet-and-confer process. The other three exhibits, TREX-003220, TREX-008804, and TREX-010468, are all inadmissible, in whole or in part, under the Court's previous rulings and the Federal Rules of Evidence.

**TREX-003220**

As this Court knows, hearsay is an out-of-court statement offered for the truth of the matter asserted.  Fed. R. Evid. 801(c).  Once a party makes a hearsay objection to the admissibility of evidence, the burden shifts to the proponent of the evidence (here, the United States) to show by a preponderance of evidence that the evidence falls within an exclusion or exception to the hearsay rule.  *See Sowders v. TIC United Corp.*, No. SA-05-CA-309-OG, 2007 WL 3171797, at *1 (W.D. Tex. Aug. 15, 2007).

TREX-003220 begins with the following statement by BP employee Mike Mason:  "I just read an article in CNN (May 14, 2010 1:00 pm) stating that a researcher at Purdue believes that the Macondo well is leaking up to 70,000bopd and that BP stands by a 5,000 bopd figure."  Even

---

[1] The two exhibits objected to by other parties are not addressed here.

Hong Kong     London     Los Angeles     Munich     New York     Palo Alto     San Francisco     Shanghai     Washington, D.C.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
February 22, 2013
Page 2

if one were to assume that the written statements by Mr. Mason could constitute a party admission by BP (and thus not hearsay under the Rules of Evidence), this would not provide a basis for the document's admissibility because it contains two other levels of hearsay: (1) statements by CNN concerning (2) statements by "a researcher at Purdue."

First Level of Hearsay - Statements in Unidentified CNN Article

News reports are "classic, inadmissible hearsay." *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) ("The plaintiffs provide only newspaper articles-classic, inadmissible hearsay.")  CNN is not a party to this case.  Thus, the referenced statements from the unidentified CNN article are classic, inadmissible hearsay.

Second Level of Hearsay - Statements by an Unidentified "Researcher at Purdue"

The CNN article, in turn, recites statements by an unidentified "researcher at Purdue," who "believes that the Macondo well is leaking up to 70,000bopd."  Statements by this unidentified researcher constitute a second level of hearsay.

Because it contains hearsay (unidentified CNN article) and hearsay-within-hearsay (unidentified researcher at Purdue), TREX-003220 is inadmissible.

The United States focuses on a third issue – that is, whether the document constitutes three levels of hearsay (hearsay-within-hearsay-within-hearsay) because it also contains statements by Mike Mason, a BP employee.  But if Mr. Mason's statements are party admissions and not hearsay, that only removes one of the three layers of hearsay.  Because two levels of hearsay remain, the United States' arguments – even if accepted[2] – would not mean that this hearsay is admissible.  Fed. R. Evid. 805; Jan. 11, 2012 Order, p. 9 (Rec. Doc. 5143) (discussing business records exception, noting that although outer hearsay may be admissible under a hearsay exception, "the 'inner hearsay'… must likewise fall under a hearsay exception . . . to be admissible.").

---

[2] The United States argues that Mr. Mason sent the email at issue in TREX-003220 "as part of his role during the spill to investigate flow rates and flow scenarios ***at the request of top BP executives***."  U.S. Mem. 5 (emphasis added).  But the United States points to no support for the contention that BP executives asked Mr. Mason to review and comment on the CNN article, nor that it is within the scope of Mr. Mason's employment to review and analyze internet news articles discussing third-party research about the spill.  (*See* Order, Feb. 8, 2012 (Rec. Doc. 5615)) (discussing requirement that admissions be "within the scope of [the BP employee's] agency or employment").  In any event, the Court need not reach this third level of hearsay, given that there are two other levels of hearsay that the United States does not address.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
February 22, 2013
Page 3

**TREX-008804**

TREX-008804 is the March 10, 2011 Report ("Report") from the Flow Rate Technical Group ("FRTG"). BP objects that the document (which includes six sub-reports) is hearsay (and thus cannot be offered into evidence *en masse* by the United States), but that portions of the document can be used against the United States as party admissions.

The FRTG Report should not be admitted *en masse* for three reasons: (1) it is inadmissible for the reasons set forth in the Court's February 9, 2012 Order regarding the National Commission Report and the Chief Counsel's Report; (2) it does not meet the requirements of Federal Rule 803(8); and (3) the Report itself states that "all the calculations and conclusions is this report are preliminary, and intended for the purpose, and only for the purpose, of aiding the response team in assessing the extent of the spilled oil for ongoing response efforts." Report Appendix D, p. 1.

The National Incident Command's Interagency Solutions Group established the FRTG in mid-May 2010. Report at 1. The FRTG managed the work of several teams comprised of academics, government researchers, and engineers from the oil and gas industry. These teams created six sub-reports that each assessed flow rate using different methodologies. *See id.* at Appendices A-F. These six sub-reports are compiled and summarized within the Report.

The United States indicates that the Court has ruled that certain documents created by public offices may constitute "public records" admissible under FRE 803(8), but reserves for a footnote the fact that this Court went on to exclude those potential public records because they contain hearsay-within-hearsay. *See* U.S. Mem. 13 n.2; *see also* Feb. 9, 2012 Order, p. 3 (Rec. Doc. 5635). As the Court stated in its February 9, 2012 Order excluding the National Commission Report and the Chief Counsel's Report:

> Although these reports may qualify as public records that are exempt from the hearsay rule under FRE 803(8), they contain multiple instances of inner hearsay that would have to be addressed at trial when a party seeks to introduce a portion of the reports. For example, the inner hearsay of other entities that provided information to the National Commission does not become admissible just because it is within a public record. *See Romero-Baldazo v. Pan-Amer. Assur. Co.*, 1999 WL 824563, at *1 (5th Cir. 1999) ("Federal Rule of Evidence 803(8) applies to observations or findings of a government official, not to hearsay statements made by private actors which are contained in the report."); *see also Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1309-10 (5th Cir. 1991) (although government reports' reliance in part on hearsay evidence does not mandate exclusion, the

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
February 22, 2013
Page 4

> appellate court noted that on remand, the district court "need not admit the entire investigatory file").
>
> The Court is concerned by undue delay resulting from the need to conduct in-depth examinations to sift out the "inner hearsay" within otherwise admissible public records. This can be a valid ground for exclusion of any of the reports. See *John McShain, Inc. v. Cessna Aircraft Co.*, 563 F.2d 632, 636 (3d Cir. 1977) (stating that admission of reports "would have involved a lengthy attempt to sift out admissible hearsay, as well as an inquiry into the 'circumstances bearing on . trustworthiness,'" which may have caused "undue delay or waste of time" during a lengthy trial). Just the first phase of the limitation trial is anticipated to last several months. Considering the volume of evidence and testimony which the parties plan to seek to introduce, much of which will likely be cumulative of that contained in the report, the Court does not intend to spend a great deal of time attempting to sort the wheat from the chaff. These reports are excluded from Phase I.
>
> Order, Feb. 9, 2012, p. 3 (Rec. Doc. 5635).

Thus, even though the Court concluded that the Chief Counsel's Report and the National Commission Report may qualify as "public records," the Court excluded them because of concerns about inner hearsay.

Similarly, and by way of example, the FRTG Report contains the following hearsay-within-hearsay:

- Six sub-reports.

- Statements attributed to unidentified individuals (e.g. "After the May 12 public release of videos showing the plume of hydrocarbons escaping from the damaged riser in the deep sea, many scientists insisted that the flow rate was much higher than 5000 BPD." Report, p 5; *and* "Most of the experts, using the limited data available and with a small amount of time to process that data, concluded that the best estimate for the average flow rate for the leakage prior to the insertion of the RITT was between 25 to 30 thousand bbl/day." Report Appendix D at 3.)

- Data provided to the FRTG by other parties and included in the Report (e.g. "[t]he percentages of total ocean surface oil coverage considered to be "thick" (2 percent), "dull"

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
February 22, 2013
Page 5

(10 percent), or "sheen" (88 percent) were provided by NOAA and the USCG." Report Appendix B at 2.)

- The verbatim quotes from unspecified reviewers at the end of the Mass Balance Team Report (e.g. "Reviewer 1: in the next iteration of the OFR, I would like to see a comparison of the amount of surface oil detected with other sensors such as: WorldView 2, RadarSat2, TerrSAR-X, SPOT." Report Appendix B.)

These are examples only. The 134 page Report including its sub-reports and its various appendices contain many more examples of hearsay-within-hearsay. As in the case of the Chief Counsel's Report and the National Commission Report, the report as a whole should not be admitted, "considering the volume of evidence and testimony which the parties plan to seek to introduce, much of which will likely be cumulative of that contained in the report." Order, Feb. 9, 2012, p. 3. While portions of the report may indeed be used against the United States as party admissions,[3] the Court's previous rulings confirm that a report like this one is not admissible in its entirety.

Besides being subject to exclusion because it contains hearsay-within-hearsay, the FRTG Report should not be admitted *en masse* for a second reason – namely, it does not meet the requirements of Rule 803(8). Rule 803(8) only applies to "a record or statement of a public office." Yet, page 108 of TREX-008804 states: "The views and opinions of authors expressed herein ***do not necessarily state or reflect those of the United States Government or any agency thereof***." Report Appendix F (emphasis added). The United States points to no cases holding that a document can be "a record or statement of a public office" under Rule 803(8), even though the report expressly provides that it does "not necessarily state or reflect [the views and opinions] of the United States Government or any agency thereof."[4]

Finally, Rule 803(8)(B) provides that the rule does not apply where "the source of information [or] other circumstances indicate a lack of trustworthiness." Here, the FRTG Report itself states that: "All the calculations and conclusions is [sic] this report are preliminary, and

---

[3] An admission under Fed. R. Evid. 801(d)(2) is only admissible against the party making the statement. *See* Jan. 11, 2012 Order, p. 9 (Rec. Doc. 5143) ("statement is not hearsay if it was made by a party **and is offered against that party**) (emphasis added); *see also* Stalbosky v. Belew, 205 F.3d 890, 894 (6th Cir. 2000) ("[u]nder Rule 801(d)(2)(A), a party's statement is admissible as non-hearsay only if it is offered against that party.")

[4] The issue is not whether the report was prepared by government employees or private contractors (which is not dispositive in and of itself in this particular instance); rather, the issue is that the Report states that it does not necessarily reflect the views of the United States

**KIRKLAND & ELLIS LLP**

The Honorable Sally Shushan
February 22, 2013
Page 6

intended for the purpose, and *only for the purpose*, of *aiding the response team* in assessing the extent of the spilled oil *for ongoing response efforts*. Other applications of this report are not authorized and are *not considered valid*." Report Appendix D, p. 1 (emphasis added); *see also* Report Appendix B, p. 1.  Thus, the FRTG Report itself states that its use should "not be considered valid" for "purposes" other than "aiding the response team." Litigation is one such invalid other "purpose." Because the report by its own terms is "not considered valid" for litigation, the "circumstances indicate a lack of trustworthiness" under Rule 803(8), which constitutes a third, separate and independent reason why the report should not be admitted *en masse*.

### TREX-010468

The United States contends that TREX-010468 is not hearsay because Schlumberger employee John Dribus made an adoptive admission of statements made in an Oil & Gas Journal article.  The article states: "BP PLC has provided the US Coast Guard with plans to collect 40,000-53,000 b/d of oil by June 30 from the deepwater Macondo blowout well on Mississippi Canyon Block 252 in the Gulf of Mexico."  John Dribus forwarded the email and stated: "All, according to this O&G Journal article below, BP PLC has provided the US Coast Guard with plans to collect 40,000-53,000 b/d of oil by June 30 from the deepwater Macondo blowout well. That appears to be their admission that this well is flowing at a rate of greater than 50,000 b/d!"

The O&G Journal article is hearsay.  Indeed, as discussed above, newspaper articles generally are "classic, inadmissible hearsay." *Roberts*, 397 F.3d at 295.

Contrary to the United States' suggestion, TREX-010468 does not contain an "adoptive admission."  The Court has stated that "a forwarded email is only an adoptive admission if it is *clear* that the forwarder adopted the content or believed in the truth of the content." Jan. 11, 2012 Order, p. 10 (Rec. Doc. 5143) (emphasis added).  Here, it is not "clear" that Mr. Dribus believed in the truth of the content of the O&G Journal Article or adopted it.  To the contrary, Mr. Dribus stated:  "*according to this O&G Journal article below*, BP PLC . . . ."

Second, although the United States bears the burden of proving admissibility, *Sowders*, 2007 WL 3171797, at *1, the United States has not shown that the scope of Mr. Dribus's employment involved work on the Macondo incident – it only states that Mr. Dribus was Schlumberger's top geologist. U.S. Mem. 8.  But assuming *arguendo* that Mr. Dribus did work on the Macondo well, in order for his statement to be attributable to Schlumberger, it would still need to be within the scope of his employment with Schlumberger.  Schlumberger's 30(b)(6) representative and Vice President of Sales, Bud DeCoste, testified at his deposition that Mr. Dribus's comments were "speculation."  DeCoste Dep., 164:2, Dec. 5, 2012.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
February 22, 2013
Page 7

      Third, to be an admission, not only does the employee's statement have to be within the scope of his employment with the contractor, but it must also be within the scope of the contractor's work for BP. Order, July 15, 2011, p. 3 (Rec. Doc. 3346). The United States has not demonstrated that the statement was within the scope of Schlumberger's work for BP. To the contrary, according to Mr. DeCoste, Schlumberger was hired "to mobilize the . . . well testing equipment that would be used to contain and either capture or burn the maximum amount of oil possible . . . ," in addition to wireline logging, PVT work, and performing wax and asphaltene testing on reservoir fluid samples. DeCoste Dep., 23:1–23:4; 23:17–24:1; 94:15–22. According to Mr. DeCoste, Schlumberger had "no way of knowing" what the flow rate was on June 15, 2010, the date of Mr. Dribus's email. DeCoste Dep., 164:7.

      Because the newspaper article is classic hearsay, because it is not "clear" that Mr. Dribus adopted the truth of the statement that "BP PLC has provided the USC Coast Guard with plans to collect 40,000-53,000 b/d of oil," because the United States has offered no evidence that Mr. Dribus worked on the Macondo well, because the United States has offered no evidence that providing views on flow rate was within the scope of Mr. Dribus' employment at Schlumberger, and because the United States has offered no evidence that offering views on flow rate was within the scope of Schlumberger's role, the document is inadmissible hearsay.

\* \* \* \* \* \*

      The United States contends that the three trial exhibits discussed above, TREX-003220, TREX-008804, and TREX-010468, are admissible for their truth, notwithstanding the rule against hearsay evidence. U.S. Mem. 15. As demonstrated above, that is not the case, and they are not admissible for the truth of the matter asserted.

      As a fallback argument, the United States claims that both TREX-003220 and TREX-010468 (but not TREX-008804) are admissible for purposes other than the truth of the matter asserted.

      The United States claims that the statements about a CNN news article regarding a Purdue researcher in TREX-003220 are relevant to "BP's credibility in its flow rate contentions in this litigation; BP's source control efforts; and the Clean Water Act penalty factors. . . ." U.S. Mem. 14-15. But what (1) BP executives believed or noticed about (2) one BP employee's (Mike Mason's) thoughts about (3) a CNN article about (4) a Purdue researcher's claims regarding flow rate as of May 14, 2010, is not relevant to Phase Two issues. The United States' alternative theory for the admissibility of TREX-003220 is not relevant to the scientific accuracy or credibility of BP's soon-to-be-offered expert opinions regarding the quantification of total discharge from the reservoir (from which 810,000 barrels will be subtracted as the United States

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
February 22, 2013
Page 8


and BP have stipulated (Rec. Doc. 8620)).  Likewise, the United States long ago disclaimed interest in the Source Control portion of Phase Two.  (Mar. 16, 2012 WGC Tr. 17:21-18:3.)  Finally, even if the United States' alternative theory for the admissibility of TREX-003220 is relevant to a future "Penalty Phase" of this multi-district litigation (BP would argue that it is not), that phase remains yet to be scheduled and discovery for that phase has not commenced.  In sum, the United States non-truth-related theory for the admissibility of TREX-003220 has no relevance to any of the purposes of Phase Two.

The United States also claims that TREX-010468 "shows what Schlumberger's 'top geologist' understood from news reports about BP's increased collection."  U.S. Mem. 14.  Again, the United States has not demonstrated that this Schlumberger employee was involved with the Macondo well or qualified to opine on flow rate issues.  What that Schlumberger employee believed about an Oil and Gas Journal article is not relevant to Phase Two issues, for the reasons discussed above.

Finally, even if these two documents (TREX-003220 and TREX-010468) were admissible for these alternative non-truth purposes (they are not), BP respectfully requests that the Court rule that they are not admissible for the truth of the matter asserted.

### TREX-008865, TREX-010346, TREX-010518, and TREX-010622

With respect to exhibits TREX-008865, TREX-010346, TREX-010518, and TREX-010622, BP stated on February 8, 2013 that these "documents may be impacted by the Court's July 15, 2011 Order as to the admissibility of the Boots & Coots Report, and ***BP notes objections to these documents for preservation purposes***."  U.S. Mem., Attach. 3 (emphasis added).  Because the Court already addressed the Boots and Coots/agency issue in its July 15, 2011 Order, and BP is noting its objection solely for preservation purposes, there is no need to belabor the points here.


Respectfully submitted,

/s/ Mark Nomellini

Mark Nomellini

cc (via electronic mail):

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
February 22, 2013
Page 9

    Andrew Langan
    Don K. Haycraft
    R. Michael Underhill
    Steven O'Rourke
    Sarah D. Himmelhoch
    Steve Herman
    Anthony Irpino
    Defense Liaison Counsel
    Corey Maze
    Luther Strange