**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig | MDL No. 2179 |
| *Deepwater Horizon* in the Gulf of Mexico, on April 20, 2010 | SECTION: J |
| This document applies to: *All Cases* | JUDGE BARBIER MAGISTRATE SHUSHAN |

**TRANSOCEAN'S REPLY IN SUPPORT OF THE UNITED**
**STATES' MOTION TO COMPEL PRODUCTION OF PREVIOUSLY-**
**WITHHELD DOCUMENTS PURSUANT TO THE CRIME-FRAUD**
**EXCEPTION TO THE ATTORNEY-CLIENT PRIVILEGE**

I.    **Introduction**

The United States' motion to compel (which Transocean joined) established that,

under the crime-fraud exception to the attorney-client privilege, BP must produce all

documents reasonably related to the furtherance of the misrepresentations in (1) BP's

statements to Congress on May 4, 2010, and BP's correspondence with Congress on May

24 and June 25, 2010; (2) the May 19, 2010 email from BP's Doug Suttles to Admiral

Landry, attaching the David Rainey memo; and (3) the Forms 6-K that BP furnished to

the SEC on April 29 and 30 and May 4, 2010.[1]  *See* U.S. Memo. at 17, 24.

In its opposition, BP Exploration & Production ("BP") contends that the crime-

fraud exception should encompass at most a narrow subset of attorney-client

communications in furtherance of the crime it pled guilty to: misrepresentations and

omissions made by one of its officers – its former Vice President of Exploration, David

Rainey – in correspondence to Congress on May 24 and June 25, 2010 and to Admiral

---

[1] Transocean has joined in the United States' motion, and files this reply, without prejudice to its right to file a further motion to compel the production of a wider scope of documents, if warranted by the facts.

Landry on May 19, 2010.  According to BP, even for this narrow subset of flow rate representations, communications in furtherance of its crime are not discoverable unless Rainey was an "active participant" in the attorney-client communication, by which BP appears to mean that Rainey must have authored the communication.  BP Opp. at 1-2.

But the scope of the crime-fraud exception does not depend on the fact or extent of Rainey's involvement in a communication, or on the communication having a connection to a misrepresentation or omission that BP has acknowledged in a guilty plea.  Instead, as discussed below, the exception extends to *any* communication by BP or its attorneys (not just by Rainey) that is reasonably related to the furtherance of a fraud (not solely acts that were criminal).  All that is required is that the movant provide evidence sufficient to establish a *prima facie* case that a client (here, BP) intended to further an ongoing crime or fraud during the attorney-client relationship (a level of proof that does not require admissions of criminal conduct).  Under a proper application of that legal standard, it is clear that BP must produce the full range of documents that the United States has requested in its motion.

## II.    Legal Standard

The legal standard in the Fifth Circuit governing the test for and scope of the crime-fraud exception is settled.  In order to invoke the crime-fraud exception, the movant must only make a *prima facie* showing that "the client intended to further an ongoing crime or fraud during the attorney-client relationship."  *In re Grand Jury Subpoena*, 419 F.3d 329, 346 (5th Cir. 2005).  A *prima facie* showing, in turn, requires only "evidence such as will suffice until contradicted and overcome by other evidence" or proof that is sufficient to "support [a] finding if evidence to the contrary is disregarded."  *Id*. at 336 (internal quotations omitted).   Once the movant produces

2

evidence sufficient to establish a *prima facie* case, the crime-fraud exception applies and encompasses all attorney-client communications that are "reasonably related to the furtherance of the ongoing or future crime or fraud at issue." *Id.* at 347.

From the crime-fraud standard, two points are clear. First, the crime-fraud exception extends to all attorney-client communications "reasonably related to the furtherance" of the crime or a fraud, regardless of who participates in the communication. It is not limited to documents authored by the lead actor in a crime or fraud – here, Rainey – or even to documents in which the lead actor is involved. The crime-fraud exception undoubtedly includes communications involving Rainey, but his participation in a communication is not necessary for the exception to apply to BP.

Second, the crime-fraud exception, as its name suggests, is not limited to crimes; rather, it applies to any "ongoing or future crime *or fraud*." *Id.* (emphasis added). Thus, while communications in furtherance of the misrepresentations BP admitted to establish a factual basis for its guilty plea unquestionably fall within the exception, so too do communications in furtherance of a fraud regardless whether those communications might support a criminal conviction.

## III.   All Communications In Furtherance Of The Misrepresentations Identified In The United States' Motion Must Be Produced.

BP attempts to narrow the scope of the documents that fall within the crime-fraud exception in two ways. First, although BP acknowledges (as it must) that it made criminal misrepresentations in its May 24 and June 25 letters to Congress – and all but concedes it made fraudulent ones in its May 19 communication to Admiral Landry – it contends that only communications in which Rainey was "an active participant" were "intended to further" that crime or fraud, and thus that only those documents must be

produced.  BP Opp. at 1-2, 17.  Second, BP argues that, because it has not admitted criminal behavior with respect to the May 4, 2010 congressional briefing or the three SEC Forms 6-K at issue, no documents related to its representations in those communications must be produced.  *Id.*  BP is wrong on both counts.

> **A.    All Previously-Withheld Communications In Furtherance Of BP's May 19, May 24, and June 25 Misrepresentations Must Be Produced—Not Just Those In Which Rainey Was An "Active Participant."**

BP has indicated its intent to submit an *in camera* privilege log with documents related to its May 19, May 24, and June 25, 2010 communications regarding flow rate. BP intends to segregate those documents into five categories that vary based on the extent of Rainey's involvement in the communication.  The Court should reject BP's five-category framework and the notion that the scope of the crime-fraud exception turns on the extent of Rainey's involvement in a communication.

> **1.    BP Indisputably Must Produce Documents In Which Rainey Is An "Active Participant" And That Relate To The Matters In The Guilty Plea.**

BP states in its opposition brief that it "would fully understand . . . a court order requiring the production of documents" that BP categorizes as being ones "in which Mr. Rainey is an active participant and that relate to the matters in BP's guilty plea allocution."  BP Opp. at 1-2.

There is good reason for BP to understand why such an order should be entered. It has pled guilty to making misrepresentations to Congress based on Rainey's flow rate representations in May 24 and June 25, 2010 communications to Congress.  U.S. Ex. 7 (BP Plea Agreement), Ex. A ¶¶ 1-6.  And it has previously acknowledged that those communications were part of a "lawyer-directed effort . . . in a collaborative process . . .

involving both in-house and external lawyers along with appropriate BP personnel."  U.S. Ex. 1 (July 19, 2012 Letter From R. Gasaway to Judge Shushan, Dkt. No. 7009) at 5. These facts more than suffice to establish a *prima facie* case that the crime-fraud exception applies.

However, the crime-fraud exception's scope extends beyond documents that BP considers related to the guilty plea and "in which Mr. Rainey is an active participant."

> **2.     BP Must Also Produce Documents Related To The May 19, May 24, and June 25 Flow Rate Representations In Which Rainey Was Not An "Active Participant."**

Under the applicable standard, communications in which Rainey was not an "active participant" but which were nonetheless "reasonably related to the furtherance" of BP's crime or fraud must be produced.  *In re Grand Jury Subpoena*, 419 F.3d at 347.

The following situations illustrate why the extent of Rainey's involvement is neither a touchstone nor a useful proxy for whether a communication is "reasonably related to the furtherance" of BP's crime or fraud.

First, suppose counsel, in response to a request from Rainey's supervisor, sends a communication to Rainey regarding whether he should include BP's 96,000 bopd estimate in his May 19 memo.  Rainey would not be the sender of the message and thus not what BP deems to be an "active participant," but the message would be "reasonably related to the furtherance" of BP's crime or fraud and thus would fall within the crime-fraud exception.

Second, assume the outside counsel sends a similar message to Rainey's colleague, who then transmits the advice to Rainey by phone.  Although Rainey would not be a sender or a recipient of the message, the communication is no less reasonably related to the furtherance of BP's crime or fraud than the first example.

Third, assume BP employees working at the direction of counsel contact BP employee Trevor Hill and ask him for flow rate data to be used in Rainey's memo. Although Rainey was not a sender or recipient of the communication and indeed may never have received the communication in any form, it is nevertheless reasonably related to the furtherance of BP's crime or fraud and therefore discoverable.

In short, Rainey's activity level in an attorney-client communication about BP's flow rate representations is not the benchmark for whether a communication falls within the crime-fraud exception. The appropriate scope of production must extend beyond BP's "Category A" documents to encompass all communications "reasonably related to the furtherance of the ongoing or future crime or fraud" regarding the May 19, May 24, and June 25 flow rate representations. *In re Grand Jury Subpoena*, 419 F.3d at 347.

### B. The United States Has Made A *Prima Facie* Case That The Crime-Fraud Exception Applies To BP's SEC Submissions And The May 4 Congressional Briefing.

On April 29 and 30 and May 4, 2010, BP represented to the SEC that its current flow rate estimates were "up to 5,000 bopd," or that 5,000 bopd was its current estimate. U.S. Ex. 13 (SEC Complaint) ¶ 5; *see also* BP Opp. Exs. 2-4. Also on May 4, 2010, BP reported to the House Subcommittee on Energy and Environment that 5,000 bopd was the most accurate flow rate estimate. U.S. Ex. 6 (Criminal Information ) ¶ 46.

BP contends that its representations were not fraudulent because the United States government had announced similar figures on April 28, 2010. BP Opp. at 18. BP also argues that the United States has failed to establish a *prima facie* case that these representations are within the crime-fraud exception because none of them has been "the subject of admissions of criminal behavior by BP." *Id.* at 17-20. Finally, BP contends that "'an erroneous judgment made in good faith'" is not fraudulent. *Id.* at 18 (quoting

*RCA Corp. v. Data General Corp.*, No. 84-270, 1986 WL 15684, at *2 (D. Del. Oct. 27, 1986).  None of BP's contentions has merit.

That the United States Government announced a flow rate estimate of 5,000 bopd on April 28, 2010 does nothing to alleviate the fraudulent nature of BP's statements to the SEC and Congress, much less to show the absence of a *prima facie* case.  Indeed, the Government's announcement is evidence that BP's fraud was succeeding.  Shortly before that Government announcement, BP's Chief Operating Officer and the head of its Macondo response effort, Doug Suttles, ██████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ Ex. 1 (Deposition of Mary Landry, Oct. 22-23, 2012) at 25:5-26:6; Ex. 2 (Dep. Ex. 9628) ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████ *See* Ex. 3 (Dep. Ex. 3213) ████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████ In other words, when the Government announced the 5,000 bopd estimate, it did not know what BP knew – ████████████████████████████████████████████

████ The Government's April 28 announcement thus proves nothing more than that the Government relied on BP's false, incomplete, and misleading flow rate information.

BP's second point – that its late April and early May flow rate representations were not part of the guilty plea – fails because a *prima facie* case does not require "admissions of criminal behavior" by the party asserting the privilege.  Instead, the test is whether the movant has come forward with evidence sufficient to "support [a] finding if evidence to the contrary is disregarded.'"  *In re Grand Jury Subpoena*, 419 F.3d at 336 (internal citations and quotations omitted).  Regardless of whether BP is willing to accept criminal responsibility for its flow rate misrepresentations in late April and early May, it is quite clear that they were fraudulent.  As part of its plea agreement, BP admitted to withholding from its May 24 letter "internal flow-rate estimates [Rainey] prepared using the Bonn Agreement analysis, that showed flow rates far higher than 5,000 BOPD, and that went as high as 92,000 BOPD."  U.S. Ex. 7 (BP Plea Agreement), Ex. A. ¶ 2.



Just as BP's May 24, 2010 representations to Congress were false and misleading when BP failed to disclose Rainey's Bonn Agreement estimates of up to 92,000 bopd,

while representing that "the flow of oil from the well" is "currently estimated at *up to*

---

[2] As set forth in Transocean's recently-filed amended pleadings,

*See, e.g.*, Dkt. No. 8722-2 ¶¶ 33-44.

*5,000 barrels a day*." BP Opp. Ex. 3 (April 30, 2010 SEC Form 6-K) (emphasis added).

And because the crime-fraud exception applies to fraudulent, as well as criminal, acts, all

attorney-client communications "reasonably related to the furtherance" of those

omissions by BP must therefore be produced.[3]

       BP's final argument – that a good-faith but erroneous judgment does not show

fraudulent intent – does not aid BP in rebutting the existence of a *prima facie* case. BP

stops short of claiming that its ████████████████████████████████ and its

representations in late April and early May constituted a mere erroneous judgment, let

alone one made in good faith. Indeed, any such argument by BP would be impossible to

reconcile with BP's concession in the plea allocution that the failure to disclose Rainey's

92,000 bopd estimate on May 24, 2010 was either an "omission[]" or a "false and

misleading statement[]." U.S. Ex. 7 (BP Plea Agreement). BP's representation that the

flow rate was "estimated at up to 5,000 barrels a day" was no mistake of judgment, good

faith or otherwise; it was simply false and BP knew it.

---

[3] BP also asserts that allegations in the SEC pleading cannot provide evidence sufficient to support a *prima facie* case. Neither of the cases BP cites is on point. *In re Grand Jury Subpoena* addressed the general evidentiary significance of complaints, but did not decide whether a party's agreement "not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint," U.S. Ex. 14 (SEC Consent) ¶13, could give the complaint evidentiary value for purposes of the crime-fraud exception. 419 F.3d at 336. *In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03 Civ. 8208, 2006 WL 1008138, at *4-5 (S.D.N.Y. Apr. 18, 2006), concerned the question of whether SEC statements in a settlement agreement "were legal precedents" that were binding on a court in subsequent litigation. Again, that is a very different question from whether factual allegations, which the withholding party has agreed not to publicly dispute (subject to a right to contest the allegation in subsequent litigation), can be evidence sufficient to support a *prima facie* case. In any event, as explained in the body of this brief, a *prima facie* case exists regardless of whether the allegations in the SEC Complaint are considered.

**IV.     BP Is Not Due Further Process Prior To Disclosure Of Documents Falling Within The Crime-Fraud Exception.**

Finally, BP errs in arguing that it is due further process prior to the disclosure of documents within the crime-fraud exception.  BP Opp. at 16-17.  The law of the Fifth Circuit is directly to the contrary.  In *In re Grand Jury Subpoenas*, the appellants complained that they had not been allowed to submit evidence to the district court in opposition to the government's crime-fraud motion.  561 F.3d 408, 413 (5th Cir. 2009).  The Fifth Circuit rejected this argument, calling it "difficult to comprehend."  *Id.*  The court explained that appellants had the opportunity "to present a substantial brief that appears to have given them more than enough opportunity to make their arguments," that the district court had properly made its decision based on an *in camera* review of the documents, and that appellants were due nothing more.  *Id.*

**V.     Conclusion**

For the reasons stated above, Transocean respectfully requests that the Court enter an order requiring BP to immediately produce all attorney-client communications reasonably related to the furtherance of the misrepresentations in (1) BP's statements to Congress on May 4, 2010, and BP's correspondence with Congress on May 24 and June 25, 2010; (2) the May 19, 2010 email from BP's Doug Suttles to Admiral Landry, attaching the Rainey memo; and (3) the Forms 6-K that BP furnished to the SEC on April 29 and 30 and May 4, 2010.  If BP asserts that attorney-client communications concerning those misrepresentations are not reasonably related to the furtherance of a crime or fraud, those communications should be submitted to the Court for *in camera* review and production if the Court determines they are, in fact, reasonably related to the furtherance of a crime or fraud.

DATED:  March 7, 2013

By:   s/ Brad D. Brian
Brad D. Brian
Michael R. Doyen
Grant A. Davis-Denny
David A. Taylor
MUNGER TOLLES & OLSON LLP
355 So. Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel:  (213) 683-9100
Fax:  (213) 683-5180
Email: brad.brian@mto.com
        michael.doyen@mto.com
        grant.davis-denny@mto.com
        david.taylor@mto.com

Respectfully submitted,

By:   s/ Steven L. Roberts
Steven L. Roberts
Rachel Giesber Clingman
Sean D. Jordan
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Tel:  (713) 470-6100
Fax:  (713) 354-1301
Email: steven.roberts@sutherland.com,
        rachel.clingman@sutherland.com
        sean.jordan@sutherland.com

By:   s/ Kerry J. Miller
Kerry J. Miller
FRILOT, LLC
110 Poydras St., Suite 3700
New Orleans, LA 70163
Tel:  (504) 599-8194
Fax:  (504) 599-8154
Email: kmiller@frilot.com

John M. Elsley
ROYSTON, RAYZOR, VICKERY & WILLIAMS LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
(713) 224-8380

*Counsel for Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC,* and *Triton Asset Leasing GmbH.*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on this 7th day of March, 2013, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

/s/  Kerry J. Miller

12