UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER<br>MAGISTRATE JUDGE |
| …………………………………………….. | : | SHUSHAN |

## BP'S RESPONSE IN OPPOSITION TO MOTIONS FOR ADVERSE INFERENCES BASED ON ASSERTIONS OF THE FIFTH AMENDMENT BY DONALD VIDRINE

Defendants, BP Exploration & Production Inc. and BP America Production Company (collectively "BP"), file this Response In Opposition to Motions For Adverse Inferences Based On Assertions of the Fifth Amendment By Donald Vidrine by the PSC, Transocean, Halliburton, and the United States (collectively, the "Requesting Parties.")  *See* Doc. No. 8601 ("PSC's Mot."); Doc. No. 8672 ("Transocean's Mot."); Doc. No. 8678 ("HESI's Mot."); and Doc. No. 8672 ("US's Mot.").

## BACKGROUND

The PSC filed its Motion for Adverse Inferences from Fifth Amendment Invocations By Donald Vidrine on February 18, 2013.  *See* Doc. No. 8601-1 ("PSC's Mot.").  Transocean, Halliburton, and the United States followed on February 22, 2013.  *See* Doc. No. 8672 ("Transocean's Mot."); Doc. No. 8678 ("HESI's Mot."); and Doc. No. 8672 ("US's Mot."). Each of the Requesting Parties seeks adverse inferences against BP based on invocations of the Fifth Amendment by Donald Vidrine in response to fifty-one (51) written interrogatories served on him by Transocean.  *See* Doc. No. 8601-2 ("Donald Vidrine's Response to 'Interrogatories to Donald Vidrine' Served By Transocean").

1

As background, Mr. Vidrine was a BP Well Site Leader onboard the *Deepwater Horizon* at the time of the incident. For medical reasons, he has been unable to sit for deposition. On February 14, 2012, this Court entered an order requiring him to submit to an examination by a Court-appointed psychiatrist, who would then report to the Court on whether he is able to appear for a deposition. (Rec. Doc. 5681). Mr. Vidrine appealed and the Fifth Circuit affirmed the Court's Order. On November 14, 2012, a grand jury returned a superseding indictment against him in the matter entitled *United States of America v. Robert Kaluza and Donald Vidrine,* No. 12-265, Section "K". Mr. Vidrine was charged in a 23-count indictment that includes eleven counts of felony Involuntary Manslaughter, eleven counts of felony "Seaman's Manslaughter," and a negligence-based misdemeanor Clean Water Act violation.

On January 16, 2013, Mr. Vidrine and Transocean filed a Joint Consent Motion to Vacate the February 14, 2012 Order. (Rec. Doc. 8254). In their Joint Consent Motion, Transocean and Mr. Vidrine agreed that Transocean would propound written interrogatories to Vidrine, and Vidrine would respond without objection to those interrogatories within fourteen (14) days of service. *Id.* Transocean propounded its interrogatories by email on January 29, 2013, and Mr. Vidrine responded to each of the interrogatories on February 8, 2013 by invoking his Fifth Amendment rights. *See* Doc. No. 8601-2 ("Donald Vidrine's Response to 'Interrogatories to Donald Vidrine' Served By Transocean"). More specifically, Mr. Vidrine answered each interrogatory as follows: "On the advice of my counsel, I respectfully decline to answer or to furnish information in response to this interrogatory on the basis of the protections provided to me by the Fifth Amendment to the United States Constitution."

The Requesting Parties now ask the Court to draw adverse inferences *against BP* based on Mr. Vidrine's invocation of the Fifth Amendment in response to each interrogatory. BP opposes the Requesting Parties' motions.

## **LEGAL STANDARD**

In *Baxter v. Palmigiano*, the Supreme Court held that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them. . . ." 425 U.S. 308, 318 (1976). In order to secure such an inference, however, "the party urging the use of the inference must show that the circumstances of the particular case justify the imputation of the negative inference." *State Farm Mut. Auto. Ins. Co. v. Abrams*, 96 C 6365, 2000 WL 574466, at *6 (N.D. Ill. May 11, 2000). The Court is required to evaluate the proposed inferences on a case-by-case basis. *F.D.I.C. v. Fid. & Deposit Co. of Md.*, 45 F.3d 969, 978 (5th Cir. 1995).

But before engaging in this case-by-case analysis, the Court must undertake a threshold two-step inquiry. *U.S. ex rel. DRC, Inc. v. Custer Battles, LLC*, 415 F. Supp. 2d 628, 633 (E.D. Va. 2006). "First, it is necessary to determine whether there was a valid basis for the witness' invocation of the privilege." *Id.* "To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177 (2004). "The second step in the analysis requires an assessment whether the requested inferences, which are a form of evidence, comply with the Federal Rules of Evidence." *U.S. ex rel. DRC, Inc.*, 415 F. Supp. 2d at 634. Thus, only after the Court has determined that an invocation of the Fifth Amendment was valid, and has weeded out any question and suggested inference that does not comply with the Federal Rules of Evidence, can it engage in the case-by-case analysis described in *FDIC* and other decisions.

The case-by-case analysis must be thorough.  To curb abuse, courts have articulated a number of guidelines and factors to help evaluate whether a particular inference should be drawn.  First, "[b]efore an adverse inference may be drawn from a party's refusal to testify in a civil case, there must be independent corroborative evidence to support the negative inference beyond the invocation of the privilege."  *Kontos v. Kontos*, 968 F. Supp. 400, 408 (S.D. Ind. 1997); *Baxter*, 425 U.S. at 315 ("It is thus undisputed that an inmate's silence in and of itself is insufficient to support an adverse decision by the Disciplinary Board."); *United States v. White*, 589 F.2d 1283, 1286-87 (5th Cir. 1979) (quoting *Baxter*).  In addition, a court should not draw an inference if there is enough other evidence and testimony to decide the issue without the aid of the inference.  *Abrams*, 2000 WL 574466, at *7 (deciding summary judgment motion "without relying on Fifth Amendment adverse inferences" because it could); *Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 210-11 (5th Cir. 1983) (refusing to draw an adverse inference where "the defendant ha[d] ample opportunity to impeach its witness by other means").

This Court has also agreed that the non-exclusive factors articulated in *LiButti v. United States*, 107 F.3d 110 (2d Cir. 1997), should be used to help evaluate the propriety of an adverse inference.  These factors include: (1) the nature of the relationship between the party against which the inference is sought and the witness; (2) the degree of control the party against which the inference is sought has over the witness; (3) the compatibility of interests of the party against whom the inference is sought and the witness in the outcome of the litigation; (4) the role of the invoker in the litigation.  *Id.* at 123-24.  This Court noted that the fourth factor, in particular, is consistent with Fifth Circuit precedent.  *See* Court's February 14, 2012 Order ("Court's Order").  Ultimately, the trial court's "***overarching concern is fundamentally whether the adverse***

*inference is trustworthy under all of the circumstances and will advance the search for the truth.*" *Id.* at 124 (emphasis added).

Even if the Court decides to allow some inferences against the parties, that does not mean that the parties "are entitled to adverse inferences from dozens of questions asked . . . ." *U.S. ex rel. DRC, Inc.*, 415 F. Supp. 2d at 636. The purpose of all of these guidelines and factors is to guard against the very real possibility that Fifth Amendment witnesses will be subjected to a "systematic interrogation by . . . counsel who knows they will assert the privilege against self-incrimination." *See RAD Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 277-78 (3d Cir. 1986) (quoting *Brink's Inc. v. City of New York*, 717 F.2d 700, 715-16 (2d Cir. 1983) (Winter, J., dissenting)). By denying inferences from self-serving, fact-specific questions, the Court prevents the examining attorney from improperly testifying for the invoking witness. *Id.* at 278.

## ARGUMENT

### I. INFERENCES THAT ARE UNSUPPORTED BY CORROBORATING EVIDENCE SHOULD BE REJECTED.

"Before an adverse inference may be drawn from a party's refusal to testify in a civil case, there must be independent corroborative evidence to support the negative inference beyond the invocation of the privilege." *Kontos v. Kontos*, 968 F. Supp. 400 at 408. As a threshold matter, the PSC's and US's motions should be denied outright as neither identify any corroborating evidence for the inferences sought. Similarly, Transocean's motion cites generally to just two exhibits as evidence of Mr. Vidrine's role in the incident and not in support of any particular inference. *See* Doc. No. 8672 ("Transocean's Mot.") at nn. 13 and 14.

Halliburton cited evidence to support some, but not all of its requested inferences. As with the PSC, US and TO Motions, those inferences Halliburton failed to support with corroborating evidence should be denied outright. But even where Halliburton purported to

5

identify evidence in support of an inference, the evidence often failed to actually corroborate the inference. For example, Halliburton cites to Vincent Tabler's deposition testimony as support for an inference that Mr. Vidrine told him "in words or substance that he believed the Negative Pressure Testing was successful." *See* Doc. No. 8678 ("HESI's Mot.") at 9. But Mr. Tabler testified that he did not talk to Mr. Vidrine. 06/14/2011 V. Tabler Dep. at 492:18-24. Mr. Tabler testified that Transocean Driller Dewey Revette told him "they were calling [the negative test] successful because of the bladder effect" and "they" referred Transocean and BP personnel, including Driller Dewey Revette. 06/14/2011 V. Tabler Dep. at 492:2-10; 492:18-493:8.

As set forth in detail in the attached Exhibit A, even where Halliburton (and in a few instances Transocean) attempted to support their requested inferences with citations to the record, the evidence identified does not support the inferences and the inferences are, in fact, contradicted by the record.[1] Accordingly, the Requesting Parties' motions should be denied.

## II.  INFERENCES THAT WOULD CIRCUMVENT THE RULES OF EVIDENCE MUST BE REJECTED.

The Court must reject several of the inferences sought by Requesting Parties for the additional reason that the questions posed to Mr. Vidrine failed to comply with the Federal Rules of Evidence. As a form of evidence, adverse inferences are only admissible if they "comply with the Federal Rules of Evidence." *U.S. ex rel. DRC, Inc.,* 415 F. Supp. 2d at 634; *see also F.D.I.C.*, 45 F.3d at 977. Thus, no adverse inferences may be drawn from an invocation of the Fifth Amendment where the witness has no personal knowledge or otherwise lacks a proper foundation to answer the questions put to him. *U.S. ex rel. DRC, Inc.,* 415 F. Supp. 2d at 634

---

[1]  On a related note, in light of the volume and breadth of discovery in this case, the Court need not permit any particular inference. *See, e.g.*, *Abrams*, 2000 WL 574466, at *7 (deciding summary judgment motion "without relying on Fifth Amendment adverse inferences" because it could); *Farace v. Indep. Fire Ins. Co.*, 699 F.2d at 210-11 (refusing to draw an adverse inference where "the defendant ha[d] ample opportunity to impeach its witness by other means").

(citing Fed. R. Evid. 602).  Similarly, the Court may not draw an inference where the witness's invocation answered a "broad form," compound, or ambiguous question.  *Chishty v. Texas Department of Aging & Disability Services*, 562 F. Supp. 2d 790, 796-97 (E.D. Tex. 2006)..

There is no reason to differentiate between these rules and any other rule of evidence, such as inadmissible hearsay under Rule 802 or opinion testimony under Rule 701.  Again, adverse inferences are a form of evidence, and are thus subject to ***all*** of the rules.  *F.D.I.C.*, 45 F.3d at 977 ("Because there is no constitutional bar to the admission of this evidence, it is admissible if it is relevant ***and not otherwise prohibited by the rules.***") (emphasis added); *see also S.E.C. v. Monterosso*, 746 F. Supp. 2d 1253, 1262 (S.D. Fla. 2010) (holding that "all evidence must conform to the requirements of the Federal Rules of Evidence" in the context of adverse inferences).  Thus, any time a question or the answer it was meant to elicit run afoul of the Federal Rules of Evidence, the Court may not draw an inference against BP.

Several of the inferences sought by the Requesting Parties are based on questions that do not comport with the Federal Rules of Evidence and should therefore be rejected.  For example, Interrogatory No. 16 asks, "The Company Man for BP has the responsibility for calculating or estimating the volume of fluid expected to bleed back during NEGATIVE PRESSURE TESTING?"  But the question is overly broad and not limited to the Macondo well or even the *Deepwater Horizon*; Requesting Parties have not laid any foundation that Mr. Vidrine has knowledge to testify about the responsibilities of a BP Company Man globally and without regard for time period.  In other instances, the interrogatories are vague and undefined.  For example, some interrogatories ask Mr. Vidrine about "formal training" without defining the term in any way.  *See, e.g.*, Doc. No. 8601-2 ("Donald Vidrine's Response to 'Interrogatories to Donald Vidrine' Served By Transocean") at Interrogatories Nos. 3 and 4.

More problematic still, Transocean's interrogatories go so far as to try to establish the meaning of certain documents by way of an adverse inference. For example, the Requesting Parties seek an inference that the APM required that a Negative Pressure Test be conducted prior to displacing the well to seawater down to a depth of 8367'. *See id.* at No. 10. But the document speaks for itself, and it—not an adverse inference based on a self-serving question posed to Mr. Vidrine—is the Best Evidence of what the APM required. *See* F.R.E. 1001. Knowing full well that Mr. Vidrine would invoke his Fifth Amendment rights when it crafted the interrogatories, Transocean cannot use the artifice of an adverse inference to circumvent the Best Evidence rule and establish the meaning of documents that the Court is quite capable of reviewing and interpreting on its own.

For these additional reasons, as set forth in the attached Exhibit A, the Requesting Parties' motions should be denied.

## III. INFERENCES THAT ARE UNTRUSTWORTHY AND WILL NOT ADVANCE THE SEARCH FOR THE TRUTH SHOULD BE REJECTED.

Even if all the questions posed to Mr. Vidrine complied with the Federal Rules of Evidence and the requested inferences derived from those questions were corroborated by independent evidence, the Court still must evaluate each inference on a case-by-case basis. As described above, courts have established a number of guidelines to determine whether an adverse inference should be drawn under the particular facts and circumstances presented. These guidelines and factors clearly demonstrate that the inferences sought against BP are untrustworthy and will not advance the search for the truth.

Refusing to admit adverse inferences drawn from invocations of employee witnesses, such as Mr. Vidrine, is not unprecedented. *See, e.g.*, *Akinyemi v. Napolitano*, 347 F. App'x 604, 607 (2d Cir. 2009); *U.S. v. Zerjav*, 4:08CV00207 ERW, 2009 WL 912821 (E.D. Mo. Mar. 31,

2009); *Miller v. Pilgrim's Pride Corp.*, 5:05CV00064, 2008 WL 178473 (W.D. Va. Jan. 16, 2008). In *Akinyemi*, the court rejected the inferences because "there was insufficient information to determine that an adverse inference against [the company] would have been 'trustworthy under all of the circumstances.'" *Akinyemi* 347 F. App'x at 607 (citing *LiButti*, 107 F.3d at 123-124). Similarly, in *Zerjav* the court refused to draw inferences because it could not "draw any conclusions regarding [the former employee's] interests in the litigation or the level of control, if any, that Defendants [had] over [him]" as a former employee. *U.S. v. Zerjav*, 2009 WL 912821 at *33. And in *Pilgrim's Pride*, the court refused to draw inferences from an employee ***in an upper management position*** because she was no longer employed by the company at the time of her testimony at trial and the company no longer exercised any control over her after she was terminated. *Pilgrim's Pride Corp.*, 2008 WL 178473 at *9.

The situation here is similar: when Mr. Vidrine responded to these interrogatories, BP did not have control over him or the answers. Further, Mr. Vidrine was not proffered as corporate representative of BP. None of BP's ***twenty-two*** corporate-representative deponents invoked the Fifth Amendment, and no witness in this case did so at the request or urging of BP. BP encouraged its employees to cooperate with investigations, and it ultimately acknowledged that each employee must decide for himself or herself whether to testify or invoke his or her rights under the Fifth Amendment to the U.S. Constitution.

Thus, this case is similar to *Emerson v. Wembley USA, Inc.*, where the defendant's former employee invoked the Fifth Amendment to virtually all questions at his deposition because he was awaiting a separate criminal trial. 433 F. Supp. 2d 1200, 1209. (D. Colo. 2006). In *Emerson*, the plaintiff argued that this deponent "would have" made statements supporting her claims against the defendants, and thus she was entitled to an adverse inference against the

defendants on each unanswered question. *Id.* at 1211. The court, however, refused to admit any adverse inferences because the plaintiff sought inferences on all of the questions the deponent refused to answer, making the scope of the request overbroad and unreasonable. *Id.* at 1213-14. Moreover, the deponent was not the sole source of the answer to several of Plaintiff's questions. *Id.*

In refusing to admit any adverse inferences, the *Emerson* court upheld the two primary guideposts of the adverse inference analysis: first, that a court should only draw adverse inferences which are trustworthy and advance the search for the truth; and second, that no witness is subjected to a systematic interrogation by counsel who knows the witness will assert the privilege against self-incrimination.

In this case, in light of Mr. Vidrine's indictment, Transocean knew when crafting its interrogatories that Mr. Vidrine would invoke the Fifth Amendment in response to each interrogatory posed. As Transocean admitted in its Joint Consent Motion to Vacate the Court's February 14, 2012 Order, its agreement to propound interrogatories to Mr. Vidrine rather than submit him to an examination by the Court-appointed expert was "based on the understanding that Vidrine intends to invoke his Fifth Amendment rights in response to the interrogatories . . . ." (Rec. Doc. 8254). Armed with that knowledge, Transocean was free to craft a set of questions designed to bolster its contentions in the case without fear that the witness would disagree or provide answers that hurt Transocean's case. This is precisely the situation that courts are to guard against by refusing to permit adverse inferences when the truth-seeking function of the discovery process is circumvented. For this additional reason, the Court should decline to entertain adverse inferences based on the written interrogatories propounded to Mr.

Vidrine after Transocean's counsel was informed that Mr. Vidrine would invoke the Fifth Amendment in response to any questions posed.

## IV.     THE COURT SHOULD DEFER RULING ON ADVERSE INFERENCES.

As in previous briefing, BP again respectfully urges the Court to defer ruling on the propriety of specific adverse inferences until after it has an opportunity to receive and review the Phase One trial evidence.  (*See, e.g.*, Doc. No. 5112 ("BP's MIL"); Doc. No. 5112-1 ("BP's MIL Mem." at 9-10)); *see also In re WorldCom, Inc. Sec. Litig.*, 02 CIV 3288 DLC, 2005 WL 375315 at *5 (S.D.N.Y. Feb. 17, 2005) (deferring a ruling on adverse inferences until it was possible to judge on a complete record the evidence available to all parties).  BP agrees with Halliburton that the Court will receive a significant volume of evidence during Phase One trial and deferring a ruling on adverse inferences would be the most efficient and effective use of the Court's time.  Once the trial evidence is received, the Court will be in a better position to weigh the accuracy and need for the requested inferences.

## CONCLUSION

BP respectfully requests that the Court deny the Requesting Parties' motions for adverse inferences against BP based on invocations of the Fifth Amendment by Donald Vidrine.

Dated: March 11, 2013				Respectfully submitted,


						/s / Don K. Haycraft.


						Don K. Haycraft (Bar #14361)
						R. Keith Jarrett (Bar #16984)
						LISKOW & LEWIS
						One Shell Square
						701 Poydras Street, Suite 5000
						New Orleans, Louisiana 70139-5099
						Telephone: (504) 581-7979
						Facsimile: (504) 556-4108

						and

						Richard C. Godfrey, P.C.
						(richard.godfrey@kirkland.com)
						J. Andrew Langan, P.C.
						(andrew.langan@kirkland.com)
						Kirkland & Ellis LLP
						300 North LaSalle Street
						Chicago, IL 60654
						Telephone: (312) 862-2000
						Facsimile: (312) 862-2200

						and

						Robert C. "Mike" Brock
						(mbrock@cov.com)
						Covington & Burling LLP
						1201 Pennsylvania Avenue, NW
						Washington, DC 20004-2401
						Telephone: (202) 662-5985

						*Attorneys for the BP Exploration &
						Production Inc. & BP America Production
						Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 11th day of March, 2013.

                                                /s/ Don K. Haycraft
                                                Don K. Haycraft