**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | **MDL NO. 2179** |
| | **SECTION J** |
| **Applies to:** ***All Cases*** | **JUDGE BARBIER**<br>**MAGISTRATE JUDGE SHUSHAN** |

**ORDER**

**[Regarding Ira Leifer's Voice Notes]**

BP seeks an order requiring production of Dr. Ira Leifer's voice notes. The motion is opposed by the University of California at Santa Barbara ("UCSB").[1]

**Background**

On April 22, 2010, the Macondo Well explosion occurred. Ira Leifer, PhD., is an Associate Researcher III, Marine Science Institute and Institute for Crustal Studies, UCSB. The National Incident Command, Interagency Solutions Group established the Flow Rate Technical Group ("FRTG) to generate a preliminary estimate of the flow rate from the Macondo well and use multiple, peer-reviewed methodologies to later generate a final estimate of the flow rate and volume of oil released. Rec. doc. 8587 (Attachment 1 - Exhibit 8804).

On March 10, 2011, the FRTG issued its Assessment of Flow Rate Estimates for the Deepwater Horizon/Macondo Well Oil Spill ("FRTG Assessment"). Id. There were 6 appendices to the FRTG Assessment including Appendix B - Mass Balance Team Report and Appendix D - Plume Calculation Team 2010 - Particle Image Velocimetry Report. Dr. Leifer is not identified as

---

[1] BP submitted a letter brief in support of its request. Rec. doc. 8810. UCSB submitted an opposition. The unredacted version is sealed at Rec. doc. 8876. The redacted version is at Rec. doc. 8875. BP submitted a reply on March 8, 2013. The unredacted version is sealed at Rec. doc. 8874. The redacted version is at Rec. doc. 8873.

an author of the Mass Balance Team Report. Id. at 58. He is identified as a member of the Plume Calculation Team which prepared a report to Dr. Marcia McNutt. Id. at 25. Dr. Leifer participated in the work of both groups.

In his February 21-22 deposition, Dr. Leifer described the arrangements under which he worked for the FRTG. He testified that: (1) he did the FRTG work as *pro bono* scientific work that UCSB expected would be done as a service to the United States (Leifer Depo. at 393);[2] (2) the FRTG work was done as part of his duties as a UCSB employee (Id. at 395-396); (3) when he worked for the FRTG, his salary was paid by UCSB (Id. at 393); and (4) he was not under a contract for the FRTG work (Id. at 393).

On October 31, 2010, Dr. Leifer, through his firm, Bubbleology Research International, LLC, invoiced NOAA for $27,440.00 for oil spill consulting services, including work for the FRTG (Leifer Depo. at 394-395 and Exhibit 11370). Notwithstanding the invoice, Dr. Leifer testified that at the time he did the work there was no understanding regarding compensation (Id. at 395).

Dr. Leifer testified that: (1) a few days before or after he began working for the FRTG, he recorded voice notes (Id. at 35-36); (2) he stopped recording them in the fall of 2013 (Id. at 34); (3) he made his best efforts to record notes every day (Id. at 35); (4) some days, for example when he traveled, were not recorded (Id. at 35); (5) he recorded the notes on his personal digital recorder on his own time, almost always on his afternoon commute (Leifer Decl. at para. 3);[3] (6) they are in a compressed archive format (Leifer Depo. at 33); (7) one copy of the voice notes is on Dr. Leifer's

---

[2] BP and UCSB submitted portions of Dr. Leifer's deposition with their letter briefs. These are collectively referred to as Leifer Depo. followed by the page from the deposition.

[3] With its opposition, UCSB submitted a declaration from Dr. Leifer. Rec. doc. 8875 (Exhibit 1). It is referred to as Leifer Decl. followed by a paragraph number.

personal computer (Id. at 34); (8) a second copy is maintained on the UCSB computer system (Id. at 34); and (9) the notes exist just as he recorded them originally (Id. at 35).

Dr. Leifer recorded the voice notes while doing work for the plume calculation team and while working on the mass balance analysis (Id. at 36). Some of the voice notes refer to Dr. Leifer's work with the plume team, his mass balance analysis and his other work relating to the oil spill, for example work for NASA (Leifer Depo. at 36-37, 392-393 and 396). The notes also contain information on other federal government projects, Congressional projects, foreign government projects, projects for private sector companies and purely personal matters (Leifer Decl. at para. 4). Dr. Leifer testified that he did not maintain the notes as part of the work he was doing for the FRTG (Id. at 392).

**UCSB Response to BP Subpoena**

BP sought the depositions of 6 entities that worked on the FRTG, including UCSB. It was authorized to subpoena documents from UCSB and the other entities. The order provided that, "[i]f issues arise with non-party document production, the issues must be brought to the attention of the Court as promptly as possible." Rec. doc. 6808 at 2. On June 29, 2012, BP caused a subpoena to be served on UCSB. It sought all documents related to analysis of data regarding the flow of hydrocarbons from the DWH incident and the effort to measure the flow of hydrocarbons resulting from the incident. Rec. doc. 8810 (Attachment C).

On September 7, 2012, BP raised the issue of whether documents sought from UCSB would be produced in time for the deposition of a person designated by the U.S. to testify on topics related to Dr. Leifer's FRTG work. Rec. doc. 7379 at 4. A conference call was scheduled for September 17 with counsel for UCSB. (Rec. doc. 7426 at 4). BP's vendor, E-Docs, was enlisted to assist

UCSB with the document production. Rec. doc. 7472 at 3-4.

On November 2, 2012, there was a telephone conference with counsel for the U.S., BP and UCSB. A procedure was established to address Dr. Leifer's concerns that documents unrelated to the FRTG work which reflected confidential and privileged matters would be produced to BP. Special Master Captain Englebert was designated to make sure that there was compliance with the Court's orders and that Dr. Leifer's concerns were addressed. Rec. doc. 7883 at 2.

On November 15, 2012, BP's request for the UCSB deposition was granted. Rec. doc. 7907. On December 13, 2012, there was a telephone conference with counsel for UCSB, the U.S. and BP. An order was issued for the completion of the privilege review by UCSB and Dr. Leifer. Rec. Doc. 8093.[4] It was necessary to issue supplemental orders. Rec. docs. 8095, 8161, 8211, 8263, 8344, 8372, and 8455.

**UCSB's Position**

At Dr. Leifer's deposition, UCSB's counsel reported that UCSB did not review the voice notes (Leifer Depo. at 391). UCSB had concluded that: (1) the voice notes were not responsive to the BP subpoena (Id. at 390); (2) while they relate to work that Dr. Leifer did for the FRTG, their purpose was personal (Id. at 398); (3) the notes were recorded for a project Dr. Leifer was considering down the road which had nothing to do with his work for the FRTG (Id. at 398); (4) they are in Dr. Leifer's possession and custody, but not through the course and scope of any work he did as a university employee (Id. 391-392); (5) the notes are in his possession and custody in his individual capacity (Id. at 391-392); (6) they are not a UCSB record (Id. at 391); and (7) they are

[4] Notably, the voice notes were not listed on any privilege log or otherwise disclosed to the undersigned or counsel for BP.

not within UCSB's custody and possession (Id. at 391).

From the nature of this litigation and the fact that the voice notes contain relevant, if not highly relevant information, it should have been obvious to counsel for UCSB that when their existence was revealed BP would attempt to secure their production. At no time during the lengthy discovery process which involved frequent contact with the undersigned and counsel for BP, did either counsel for UCSB or Dr. Leifer reveal to the Court the existence of the voice notes. The failure of counsel for UCSB to do so is inexcusable.[5] This issue should have been resolved before Dr. Leifer's deposition. Discovery from UCSB should have been concluded within (at most) a few months of service of the subpoena. Instead, it has taken more than eights months to reach this point where Dr. Leifer's deposition has been taken without the availability of his voice notes relating to the very matters he was deposed about. The delay is entirely attributable to UCSB and Dr. Leifer.

## Analysis

UCSB describes the voice notes as an audio journal. It argues that: (1) it is a private diary and not a UCSB document; (2) it was not made for any work purpose; (3) it was not the source of any information used in Dr. Leifer's work; and (4) UCSB's policy concerning incidental personal use of the University's computer gave Dr. Leifer a reasonable expectation of privacy for the copy stored on the UCSB computer system. Rec. doc. 8875 at 3-5.

Both parties cite the Court's March 28, 2011 order regarding the marital privilege asserted by Brian Morel. Rec. doc. 1777. Morel and his wife were BP employees. They exchanged emails on the BP system. Morel contended that 93 emails were protected from disclosure by the marital

---

[5] Whether a discovery violation or a lack of candor to the Court, the omission by counsel should be reviewed. This issue will be reserved until after the discovery process is completed.

privilege. The issue was whether BP's policies were sufficient to defeat the assertion of the marital privilege. Id. at 2. BP's policy announced that Brian Morel's emails could be monitored and accessed by BP and were subject to compulsory disclosure by subpoena. The undersigned found there was no reasonable expectation of privacy. Id. at 4.

Dr. Leifer worked for the FRTG as a UCSB employee (Leifer Depo at 395-396). Contrary to the assertion by UCSB, Dr. Leifer's work for the FRTG was in fact UCSB work. Copies of the voice notes were stored on the UCSB computer system as well as Dr. Leifer's personal computer (Id. at 34). The voice notes contain information relevant to his UCSB work including his thoughts and impressions of his FRTG work. The UCSB policy provided that such documents were subject to subpoena and review to determine whether they were public records subject to disclosure by the California Public Records Act.[6] Rec. doc. 8875 at 5 (Exhibit 3 at 8). Dr. Leifer did not possess a reasonable expectation of privacy where the stored documents contained information relevant to his UCSB work for the FRTG.

However, and regardless of where the notes were stored, they were created as part of his work as a University employee working with the FRTG. The notes were therefore University property and clearly subject to the subpoena as "documents" (defined as including "audible") related to Dr. Leifer's work concerning the flow of hydrocarbons resulting from the Deepwater Horizon incident.

**Conclusion**

The voice notes are discoverable subject to procedures similar to that employed with UCSB's prior production in response to the BP subpoena. The voice notes cover a period of about 30 months

---

[6] And presumably in response to a federal court subpoena.

or approximately 900 days. The parties (UCSB, BP and the U.S.) shall agree on a limited number of days for preliminary examination. If agreement is not reached, Captain Englebert will set the number. After there is agreement or a ruling on the number of days, BP shall select the specific days for the preliminary examination. By **Friday, March 22, 2013**, the parties shall report on the procedures and schedule for the preliminary examination. UCSB shall bear all costs of the preliminary examination. Captain Englebert shall assist the parties regarding reasonable protection for portions of the voice notes that may be confidential or privileged. However, in no event shall there be any further delay while either Dr. Leifer or employees of the University's legal department pre-review the voice notes. This will not occur again. Rather, this will be an expedited procedure directed by Captain Englebert as supervised by the undersigned.

The following issues are reserved until after a report of the preliminary examination: (1) whether BP can require production beyond the preliminary examination days; (2) further costs of production; and (3) whether the burden of full production of the voice notes outweighs the benefit.

IT IS ORDERED that: (1) BP's request for production of Dr. Leifer's voice notes (Rec. doc. 8810) is GRANTED in PART and DENIED in PART as provided herein; (2) the deadline for an appeal of this order is **5:00 p.m. CDT on Wednesday, March 20, 2013**; and (3) the order will not be suspended pending appeal unless ordered by Judge Barbier.

New Orleans, Louisiana, this 13th day of March, 2013.

                                          **SALLY SHUSHAN**
                                          **United States Magistrate Judge**

**Clerk to serve:**
1) Matthew J. Schenck
   Paul, Plevin, Sullivan & Connaughton LLP
   101 West Broadway, Ninth Floor
   San Diego, California  92101
   **mschenck@paulplevin.com**

2) Angela T. Mullins
   Paul, Plevin, Sullivan & Connaughton LLP
   101 West Broadway, Ninth Floor
   San Diego, California  92101
   **amullins@paulplevin.com**

3) Michael R. Goldstein
   Senior Counsel
   University of California - Santa Barbara
   **Michael.Goldstein@ucop.edu**

4) Captain Suzanne Englebert
   **sueenglebert@sseeservices.com**