# EXHIBIT 8



**DALLAS** HOUSTON

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
214.939.4400
800.662.8393
214.760.7332 Fax

**GodwinRonquillo.com**

DONALD E. GODWIN - SHAREHOLDER
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:     214.939.4412
DIRECT FAX:      214.939.4803
dgodwin@godwinronquillo.com

July 15, 2010

**VIA EMAIL DAVID.DYKES@MMS.GOV**

Mr. David Dykes
Co-Chairman, Marine Board of Investigation
1201 Elmwood Park Blvd
New Orleans, Lousiana 70123-2394

      Re:     Subpoena to Donald E. Godwin dated July 2, 2010 (the "Subpoena"), from the
                 United States Coast Guard and the Bureau of Ocean Energy Management,
                 Regulation, and Enforcement (together, the "Joint Investigation").

Dear Mr. Dykes:

      This letter shall serve as Halliburton Energy Services, Inc.'s ("HESI") response to the
Subpoena, which commands HESI to produce (1) a list of additives Halliburton used for the
Macondo well and (2) a fifty-gram representative sample of the cement used in the Macondo
well. Attached as Exhibit 1 are the relevant portions of cement lab results for the eight casing
points cemented by HESI in the Macondo well. The sections titled Cement Information –
Primary Design list the cement ingredients for each casing point.

      With regard to the Joint Investigation's second request, there are two federal court orders
and directives from the U.S. Department of Justice and five state Attorneys General prohibiting
the alteration or destruction of evidence related to the Deepwater Horizon incident. As set forth
below, HESI cannot comply with the Subpoena because its production of any "sample" materials
it may have in its possession will violate these orders and directives.

*1.     The United States Department of Justice's letter.*

      On May 3, 2010, the U.S. Department of Justice issued a letter to Halliburton Company
commanding it to note:

                      the ongoing requirement that your respective clients as well as
                      their respective employees, officers, directors, agents, affiliates,

Mr. David Dykes
July 15, 2010
Page 2

> contractors, and subsidiary and parent companies *take all steps necessary to identify, retain, and preserve "potentially relevant information" relating to the fire and explosion at the Deepwater Horizon* and resulting spill including, but not limited to, for any events leading up to and subsequent to this fire, explosion and spill, and any release or threatened release of oil or other substances, costs and damages.

A true and correct copy of the U.S. Department of Justice letter is attached hereto as Exhibit 2 (emphasis added). "Potentially relevant information" includes "any tangible thing such as physical materials". *Id.* at pg. 2. The letter further provides that "[t]he preservation obligation should be interpreted broadly, because knowing destruction of records even in anticipation of a federal investigation could result in obstruction of justice pursuant to 18 U.S.C. §§ 1505 and 1519." *Id.*

## 2. *The Honorable Kurt Englehardt's Preservation Order.*

On May 5, 2010, the Honorable Kurt D. Englehardt, presiding over the United States District Court for Eastern District of Louisiana, entered a Preservation Order requiring HESI to "reasonably refrain and resist from any changing, alteration and/or destruction of . . . any and all physical evidence of any kind in any way connected with the [Deepwater Horizon incident]." A true and correct copy of Judge Englehardt's Preservation Order is attached hereto as Exhibit 3.

## 3. *The Honorable Lynn N. Hughes' Preservation Order.*

On June 18, 2010, the Honorable Lynn N. Hughes, presiding over the United States District Court for the Southern District of Texas, entered a Preservation Order requiring HESI to "preserve all documents and other physical evidence" in connection with the Deepwater Horizon incident. A true and correct copy of the Preservation Order is attached hereto as Exhibit 4.

## 4. *The Letters from Gulf Coast State Attorneys General*

The Attorneys General for the states of Alabama, Louisiana, Florida, Mississippi, and Texas have directed HESI to "preserve any documents, data compilations, . . . tangible objects or other information relevant to the explosion of the Deepwater horizon oil rig, the resulting oil spill or the clean-up *in the form in which they currently exist* until further notice." A true and correct copy of the Attorneys General letter is attached hereto as Exhibit 5 (emphasis added).

The attached documents demonstrate that any production of a portion or "sample" of any tangible evidence in HESI's possession that relates to the Deepwater Horizon incident will constitute the alteration, and perhaps, the destruction of such evidence. While we do not believe your request for a "representative sample of the cement used on the Macondo well" is intended to

Mr. David Dykes
July 15, 2010
Page 3

violate the court orders or government directives, the Subpoena on its face seeks the "alteration" or "destruction" of evidence. HESI has been fully cooperative and will continue to cooperate with the Joint Investigation. However, HESI will not violate any court orders and will not take any action that may be viewed as anything other than 100% preservation of the evidence.

After you have had an opportunity to review the attached documents, please let me know if you have any questions or concerns about HESI's position.

Very truly yours,

Donald E. Godwin

JLM

cc:     Jason Mathews (*via email*)



**Bp America Prod Co-sorac/gom Ebiz
PO Box 22024 - Do Not Mail
Tulsa, Oklahoma 74121-2024**

Macondo Prospect 1

United States of America

# 28" Casing Post Job Report

Prepared for: Mark Hafle, Brian Morel, & Trent Fleece

Version: 1
October 21, 2009

Submitted by:
Jesse Gagliano
Halliburton
10200 Bellaire Blvd
Houston, Texas 77072-5299

**HALLIBURTON**

**EXHIBIT**

tabbies®

Proprietary and Confidential - Do Not Copy

# HALLIBURTON

## *Lab Results: 28" Tail Cement*

# HALLIBURTON
**Cementing Gulf of Mexico, Broussard**

**LAB RESULTS - Tail**

## Job Information

| Request/Slurry | 49394/2 | **Rig Name** | | **TRANSOCEAN MARIANAS Date** | | October 5th 2009 |
|---|---|---|---|---|---|---|
| **Submitted By** | Jesse Gagliano | **Job Type** | | 28" Conductor Casing | **Bulk Plant** | Fourchon-C-Port I, La, USA |
| **Customer** | BP | **Location** | | Mississippi Cny | **Well** | Mississippi Canyon 252 OCS-G-32306 Macondo #1 |

## Well Information

| **Casing/Liner Size** | 28" | **Depth MD** | 6275 ft | **BHST** | 65 F |
|---|---|---|---|---|---|
| **Hole Size** | 32 1/2" | **Depth TVD** | 6275 ft | **BHCT** | 60 F |

## Drilling Fluid Information

| **Mud Company** | Baroid | **Type** | **WBM** | **Density** | 12.5 PPG | **PV/YP** | |
|---|---|---|---|---|---|---|---|

## Cement Information - Tail Design

| Conc | UOM | Cement/Additive | Sample Type | Sample Date | Lot No. | Cement Properties | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Slurry Density | 16.741 | PPG |
| 100.00 | % BWOC | Lafarge Class H | Bulk | Sep 29, 2009 | BULK BLEND | Slurry Yield | 1.06 | FT3 |
| | | | | | | Water Requirement | 4.02 | GPS |
| 0.07 | % BWOC | EZ-FLO | Bulk | Sep 29, 2009 | | Total Mix Fluid | 4.28 | GPS |
| 1.88 | lb/sk | KCl (Potassium Chloride) Salt | Bulk | Sep 29, 2009 | | Foam Density | 14.496 | PPG |
| | | | | | | Foam Quality | 13.05 | % |
| 0.07 | gps | ZoneSealant 2000 | Lab | Mar 15, 2009 | | | | |
| 0.26 | gps | CaCl2 (Calcium Chloride) Liquid | Lab | Feb 16, 2009 | | Water Source | Sea Water | |
| 4.02 | gps | Sea Water | Lab | Jan 02, 2009 | Pilot | Water Chloride | 21500 | ppm |

## Operation Test Results Request ID 49394/2

### Thickening Time: Request Test ID:561485

| Temp (°F) | Pressure (psi) | Reached in (min) | 70 Bc (hh:mm) |
|---|---|---|---|
| 60 | 3,068 | 34 | 04:03 |

### Mixability (0 - 5) - 0 is not mixable, Request Test ID:561489

Mixability rating (0 - 5)

5

### Crush Compressive Strength, Request Test ID:561487

| Curing Temp (°F) | Time 1 (hrs) | Strength 1 | Time 2 (hrs) | Strength 2 |
|---|---|---|---|---|
| 65 | 12 | 500 | 24 | 1,290 |
| Foamed to 14.5 ppg | | | | |

### UCA Comp. Strength, Request Test ID:561486

| End Temp (°F) | Pressure (psi) | 50 psi (hh:mm) | 500 psi (hh:mm) | 12 hr CS (psi) | 24 hr CS (psi) |
|---|---|---|---|---|---|
| 65 | 5,000 | 05:13 | 21:51 | 246 | 549 |

Proprietary and Confidential - Do Not Copy

# HALLIBURTON

## *Lab Results: 28" Lead Cement*

# HALLIBURTON
### Cementing Gulf of Mexico, Broussard

**LAB RESULTS - Lead**

## Job Information

| Request/Slurry | 49393/1 | Rig Name | TRANSOCEAN MARIANAS | Date | October 5th 2009 |
|---|---|---|---|---|---|
| Submitted By | Jesse Gagliano | Job Type | 28" Conductor Casing | Bulk Plant | Fourchon-C-Port I, La, USA |
| Customer | BP | Location | Mississippi Cny | Well | Mississippi Canyon 252 OCS-G-32306 Macondo #1 |

## Well Information

| Casing/Liner Size | 28" | Depth MD | 6275 ft | BHST | 65 F |
|---|---|---|---|---|---|
| Hole Size | 32 1/2" | Depth TVD | 6275 ft | BHCT | 60 F |

## Drilling Fluid Information

| Mud Company | Baroid | Type | WBM | Density | 12.5 PPG | PV/YP | |
|---|---|---|---|---|---|---|---|

## Cement Information - Lead Design

| Conc | UOM | Cement/Additive | Sample Type | Sample Date | Lot No. | Cement Properties | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Slurry Density | 16.741 | PPG |
| | | | | | | Slurry Yield | 1.06 | FT3 |
| 100.00 | % BWOC | Lafarge Class H | Bulk | Sep 29, 2009 | BULK BLEND | Water Requirement | 4.02 | GPS |
| 0.07 | % BWOC | EZ-FLO | Bulk | Sep 29, 2009 | | Total Mix Fluid | 4.28 | GPS |
| 1.88 | lb/sk | KCl (Potassium Chloride) Salt | Bulk | Sep 29, 2009 | | Foam Density | 13.503 | PPG |
| | | | | | | Foam Quality | 19.01 | % |
| 0.07 | gps | ZoneSealant 2000 | Lab | Mar 15, 2009 | | | | |
| 0.26 | gps | CaCl2 (Calcium Chloride) Liquid | Lab | Aug 25, 2009 | | Water Source | Sea Water | |
| | | | | | | Water Chloride | 21500 | ppm |
| 4.02 | gps | Sea Water | Lab | Jan 02, 2009 | Pilot | | | |

## Operation Test Results Request ID 49393/1

### Thickening Time: Request Test ID:560575

| Temp (°F) | Pressure (psi) | Reached in (min) Start BC | | 30 Bc (hh:mm) | 40 Bc (hh:mm) | 50 Bc (hh:mm) | 70 Bc (hh:mm) |
|---|---|---|---|---|---|---|---|
| 60 | 3,068 | 34 | 17 | 01:39 | 02:04 | 02:34 | 04:03 |

### Mixability (0 - 5) - 0 is not mixable. Request Test ID:558261

**Mixability rating (0 - 5)**

5

### Crush Compressive Strength. Request Test ID:558274

| Curing Temp (°F) | Time 1 (hrs) | Strength 1 | Time 2 (hrs) | Strength 2 |
|---|---|---|---|---|
| 65 | 12 | 390 | 24 | 780 |
| Foamed to 13.5 ppg | | | | |

### Static Gel Strength (SGS). Request Test ID:563653

| Temp (°F) | Pressure (psi) | Time to 100 lb/100ft2 (hh:mm) | Time to 500 lb/100ft2 (hh:mm) | Test speed [deg/min] | Stirring time (min) | Transition time (hh:mm) |
|---|---|---|---|---|---|---|
| 60 | 3,068 | 00:01 | 01:28 | 0 | 174 | 01:27 |

Proprietary and Confidential - Do Not Copy

MC 252_Macondo BoD_22 in Casing_Post J... report.pdf (Attachment 7 of 8)



### Bp America Prod Co-sorac/gom Ebiz
### PO Box 22024 - Do Not Mail
### Tulsa, Oklahoma 74121-2024

Macondo Prospect 1

United States of America

# 22" Casing Post Job Report

Prepared for: Mark Hafle, Brian Morel, & Trent Fleece

Version:
October 29, 2009

Submitted by:
Jesse Gagliano
Halliburton
10200 Bellaire Blvd
Houston, Texas 77072-5299

## HALLIBURTON

Proprietary and Confidential - Do Not Copy

# HALLIBURTON

## *Lab Results: 22" Lead 1 Cement*

# HALLIBURTON
### Cementing Gulf of Mexico, Broussard

**LAB RESULTS – Lead 1**

## Job Information

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Request/Slurry Submitted By** | 49408/3 Jesse Gagliano | **Rig Name** **Job Type** | TRANSOCEAN MARIANAS 22" Surface Casing | **Date** **Bulk Plant** | October 5th 2009 Fourchon-C-Port I, La, USA | | |
| **Customer** | BP | **Location** | Mississippi Cny | **Well** | Mississippi Canyon 252 OCS-G-32306 Macondo #1 | | |

## Well Information

| | | | | | | |
|---|---|---|---|---|---|---|
| **Casing/Liner Size** | 22" | **Depth MD** | 8000 ft | **BHST** | 89 F | |
| **Hole Size** | 26" | **Depth TVD** | 8000 ft | **BHCT** | 77 F | |

## Drilling Fluid Information

| | | | | | | |
|---|---|---|---|---|---|---|
| **Mud Company** | Baroid | **Type** | WBM | **Density** | 12.5 PPG | **PV/YP** |

## Cement Information - Lead Design

| Conc | UOM | Cement/Additive | Sample Type | Sample Date | Lot No. | Cement Properties | |
|---|---|---|---|---|---|---|---|
| | | | | | | Slurry Density | 16.741 PPG |
| 100.00 | % BWOC | Lafarge Class H | Bulk | Sep 29, 2009 | BULK BLEND | Slurry Yield | 1.05 FT3 |
| 0.07 | % BWOC | EZ-FLO | Bulk | Sep 29, 2009 | | Water Requirement | 4.2 GPS |
| 1.88 | lb/sk | KCl (Potassium Chloride) Salt | Bulk | Sep 29, 2009 | | Foam Density | 13.503 PPG |
| 0.07 | gps | ZoneSealant 2000 | Lab | Oct 23, 2008 | | Foam Quality | 19.01 % |
| 4.20 | gps | Sea Water | Rig | Oct 07, 2009 | | Water Source | Sea Water |
| | | | | | | Water Chloride | N/A ppm |

## Operation Test Results Request ID 49408/3

### Thickening Time, Request Test ID:565171

| Temp (°F) | Pressure (psi) | Reached in (min) | Start BC | 30 Bc (hh:mm) | 40 Bc (hh:mm) | 50 Bc (hh:mm) | 70 Bc (hh:mm) |
|---|---|---|---|---|---|---|---|
| 77 | 4,215 | 41 | 21 | 02:13 | 02:32 | 04:04 | 05:22 |

### Mixability (0 - 5) - 0 is not mixable, Request Test ID:565174

Mixability rating (0 - 5)

5

### Crush Compressive Strength, Request Test ID:565172

| Curing Temp (°F) | Time 1 (hrs) | Strength 1 | Time 2 (hrs) | Strength 2 | Foam quality |
|---|---|---|---|---|---|
| 89 Foamed to 13.5 ppg | 12 | 278 | 24 | 800 | 0 |

### Static Gel Strength (SGS), Request Test ID:566014

| Temp (°F) | Pressure (psi) | Time to 100 lb/100ft2 (hh:mm) | Time to 500 lb/100ft2 (hh:mm) | Test speed [deg/min] | Stirring time (min) | Transition time (hh:mm) |
|---|---|---|---|---|---|---|
| 77 Good Test. | 4,215 | 00:01 | 00:08 | 0 | 206 | 00:07 |

6 / 27

Proprietary and Confidential - Do Not Copy

MC 252_Macondo BoD_22 in Casing_Post J         port.pdf (Attachment 7 of 8)

# HALLIBURTON

## *Lab Results: 22" Lead 2 Cement*

# HALLIBURTON
### Cementing Gulf of Mexico, Broussard

**LAB RESULTS – Lead 2**

### Job Information

| | | | | | | |
|---|---|---|---|---|---|---|
| Request/Slurry | 49411/1 | Rig Name | | TRANSOCEAN MARIANAS Date | | October 5th 2009 |
| Submitted By | Jesse Gagliano | Job Type | | 22" Surface Casing | Bulk Plant | Fourchon-C-Port I, La, USA |
| Customer | BP | Location | | Mississippi Cny | Well | Mississippi Canyon 252 OCS-G-32306 Macondo #1 |

### Well Information

| | | | | | |
|---|---|---|---|---|---|
| Casing/Liner Size | 22" | Depth MD | 8000 ft | BHST | 89 F |
| Hole Size | 26" | Depth TVD | 8000 ft | BHCT | 77 F |

### Drilling Fluid Information

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Mud Company | Baroid | Type | WBM | Density | 12.5 PPG | PV/YP | |

### Cement Information - Lead Design

| Conc | UOM | Cement/Additive | Sample Type | Sample Date | Lot No. | Cement Properties | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Slurry Density | 16.741 | PPG |
| 100.00 | % BWOC | Lafarge Class H | | | | Slurry Yield | 1.06 | FT3 |
| 0.07 | % BWOC | EZ-FLO | | | | Water Requirement | 4.11 | GPS |
| | | | | | | Total Mix Fluid | 4.24 | GPS |
| 1.88 | lb/sk | KCl (Potassium Chloride) Salt | | | | Foam Density | 13.503 | PPG |
| 0.07 | gps | ZoneSealant 2000 | | | | Foam Quality | 19.01 | % |
| 0.13 | gps | CaCl2 (Calcium Chloride) Liquid | | | | Water Source | Sea Water | |
| 4.11 | gps | Sea Water | | | | Water Chloride | N/A | ppm |

### Operation Test Results Request ID 49411/1

**Thickening Time, Request Test ID:558396**

| Temp (°F) | Pressure (psi) | Reached in (min) | 70 Bc (hh:mm) |
|---|---|---|---|
| 77 | 4,215 | 41 | 04:02 |

**Mixability (0 - 5) : 0 is not mixable, Request Test ID:558399**

Mixability rating (0 - 5)

4

**Crush Compressive Strength, Request Test ID:558397**

| Curing Temp (°F) | Time 1 (hrs) | Strength 1 | Time 2 (hrs) | Strength 2 | Foam quality |
|---|---|---|---|---|---|
| 89 | 12 | 495 | 24 | 520 | 0 |
| Foamed to 13.5 ppg | | | | | |

**Static Gel Strength (SGS), Request Test ID:558398**

| Temp (°F) | Pressure (psi) | Time to 100 lb/100ft2 (hh:mm) | Time to 500 lb/100ft2 (hh:mm) | Test speed [deg/min] | Stirring time (min) | Transition time (hh:mm) |
|---|---|---|---|---|---|---|
| 77 | 4,215 | 00:03 | 00:10 | 0 | 151 | 00:07 |
| JPT = 2:31 | | | | | | |

8 / 27

Proprietary and Confidential - Do Not Copy

# HALLIBURTON

## Lab Results: 22" Tail Cement

# HALLIBURTON
Cementing Gulf of Mexico, Broussard

LAB RESULTS - Tail

## Job Information

| Request/Slurry Submitted By | 49414/1 Jesse Gagliano | Rig Name | TRANSOCEAN MARIANAS | Date | October 5th 2009 |
|---|---|---|---|---|---|
| | | Job Type | 22" Surface Casing | Bulk Plant | Fourchon-C-Port I, La, USA |
| Customer | BP | Location | Mississippi Cny | Well | Mississippi Canyon 252 OCS-G-32306 Macondo #1 |

## Well Information

| Casing/Liner Size | 22" | Depth MD | 8000 ft | BHST | 89 F |
|---|---|---|---|---|---|
| Hole Size | 26" | Depth TVD | 8000 ft | BHCT | 77 F |

## Drilling Fluid Information

| Mud Company | Baroid | Type | WBM | Density | 12.5 PPG | PV/YP | |
|---|---|---|---|---|---|---|---|

## Cement Information - Tail Design

| Conc | UOM | Cement/Additive | Sample Type | Sample Date | Lot No. | Cement Properties | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Slurry Density | 16.741 | PPG |
| 100.00 | % BWOC | Lafarge Class H | | | | Slurry Yield | 1.06 | FT3 |
| 0.07 | % BWOC | EZ-FLO | | | | Water Requirement | 4.11 | GPS |
| 1.88 | lb/sk | KCl (Potassium Chloride) Salt | | | | Total Mix Fluid | 4.24 | GPS |
| 0.07 | gps | ZoneSealant 2000 | | | | Foam Density | 14.496 | PPG |
| 0.13 | gps | CaCl2 (Calcium Chloride) Liquid | | | | Foam Quality | 13.05 | % |
| 4.11 | gps | Sea Water | | | | Water Source | Sea Water | |
| | | | | | | Water Chloride | N/A | ppm |

## Operation Test Results Request ID 49414/1

### Thickening Time, Request Test ID:558406

| Temp (°F) | Pressure (psi) | Reached in (min) | 70 Bc (hh:mm) |
|---|---|---|---|
| 77 | 4,215 | 41 | 04:02 |

### Mixability (0 - 5) -0 is not mixable, Request Test ID:558409

Mixability rating (0 - 5)
4

### Crush Compressive Strength, Request Test ID:558407

| Curing Temp (°F) | Time 1 (hrs) | Strength 1 | Time 2 (hrs) | Strength 2 | Foam quality |
|---|---|---|---|---|---|
| 89 | 12 | 435 | 24 | 1,270 | 0 |
| Foamed to 14.5 ppg | | | | | |

### UCA Comp. Strength, Request Test ID:558413

| End Temp (°F) | Pressure (psi) | 50 psi (hh:mm) | 500 psi (hh:mm) | 12 hr CS (psi) | 24 hr CS (psi) |
|---|---|---|---|---|---|
| 89 | 5,000 | 04:16 | 07:39 | 1,114 | 2,232 |

### Static Gel Strength (SGS), Request Test ID:558408

| Temp (°F) | Pressure (psi) | Time to 100 lb/100ft2 (hh:mm) | Time to 500 lb/100ft2 (hh:mm) | Transition time (hh:mm) |
|---|---|---|---|---|
| 77 | 4,215 | 00:16 | 00:29 | 00:13 |

10 / 27

Proprietary and Confidential - Do Not Copy

MC 252_Macondo BoD_22 in Casing_Post J   eport.pdf (Attachment 7 of 8)

# HALLIBURTON
## *Lab Results: 22" Squeeze*

# HALLIBURTON
Cementing Gulf of Mexico, Broussard

**LAB RESULTS – 22" Squeeze**

## Job Information

| Request/Slurry | 50385/3 | Rig Name | TRANSOCEAN MARIANAS | Date | October 13th 2009 |
|---|---|---|---|---|---|
| Submitted By | Jesse Gagliano | Job Type | 22" Shoe Squeeze | Bulk Plant | Fourchon-C-Port I, La, USA |
| Customer | BP | Location | Mississippi Cny | Well | Mississippi Canyon 252 OCS-G-32306 Macondo #1 |

## Well Information

| Casing/Liner Size | 22" | Depth MD | 7947 ft | BHST | 89 F |
|---|---|---|---|---|---|
| Hole Size | 26" | Depth TVD | 7947 ft | BHCT | 79 F |

## Drilling Fluid Information

| Mud Company | Baroid | Type | SOBM | Density | 10.5 PPG | PV/YP | |
|---|---|---|---|---|---|---|---|

## Cement Information - Squeeze Design

| Conc | UOM | Cement/Additive | Sample Type | Sample Date | Lot No. | Cement Properties | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Slurry Density | 16.399 | PPG |
| 100.00 | % BWOC | Lafarge Class H | Bulk | Sep 29, 2009 | BULK BLEND | Slurry Yield | 1.08 | FT3 |
| | | | | | | Water Requirement | 4.33 | GPS |
| 0.07 | % BWOC | EZ-FLO | Bulk | Sep 29, 2009 | | Total Mix Fluid | 4.43 | GPS |
| 1.88 | lb/sk | KCl (Potassium Chloride) Salt | Bulk | Sep 29, 2009 | | | | |
| 0.06 | gps | HALAD-344EXP | Lab | Jul 27, 2009 | | | | |
| 0.04 | gps | HR-6L | Lab | Sep 18, 2009 | 162 | Water Source | Fresh Water | |
| 4.33 | gps | Fresh Water | Lab | Sep 22, 2009 | | Water Chloride | N/A | ppm |

## Operation Test Results Request ID 50385/3

### Thickening Time, Request Test ID:571326

| Temp (°F) | Pressure (psi) | Reached in (min) | Start BC | 30 Bc (hh:mm) | 40 Bc (hh:mm) | 50 Bc (hh:mm) | 70 Bc (hh:mm) |
|---|---|---|---|---|---|---|---|
| 79 | 6,835 | 19 | 19 | 03:25 | 03:43 | 03:59 | 04:20 |

### Mixability (0 - 5) - 0 is not mixable, Request Test ID:571328

Mixability rating (0 - 5)

5

### Mud Balance Density, Request Test ID:571329

Density (ppg)

16.4

### UCA Comp. Strength, Request Test ID:573239

| End Temp (°F) | Pressure (psi) | 50 psi (hh:mm) | 500 psi (hh:mm) | 12 hr CS (psi) | 24 hr CS (psi) |
|---|---|---|---|---|---|
| 89 | 6,835 | 06:18 | 09:24 | 1,151 | 2,116 |

Proprietary and Confidential - Do Not Copy

Macondo_MC 252 #1_11 875 in Liner_Post J      port.pdf (Attachment 3 of 8)

# HALLIBURTON

### Bp America Prod Co-sorac/gom Ebiz
### PO Box 22024 - Do Not Mail
### Tulsa, Oklahoma 74121-2024

Macondo #1
MISSISSIPPI CANYON Blk: 252

United States of America

# 11 7/8" Liner Post Job Report

Prepared for:     Brian Morel

April 25, 2010
Version: 1

Submitted by:
Jesse Gagliano
Halliburton
10200 Bellaire Blvd
Houston, Texas 77072-5299

## HALLIBURTON

1 / 8

Proprietary and Confidential - Do Not Copy

# **HALLIBURTON**

## *Lab Results: 11 7/8" Liner*

# **HALLIBURTON**
## Cementing Gulf of Mexico, Broussard

**LAB RESULTS - Lead**

## Job Information

| Request/Slurry | 70793/2 | Rig Name | TRANSOCEAN HORIZON | Date | March 22nd 2010 |
|---|---|---|---|---|---|
| Submitted By | Jesse Gagliano | Job Type | 11 7/8" Drilling Liner | Bulk Plant | Fourchon-C-Port I, La, USA |
| Customer | BP | Location | Mississippi Cny | Well | Mississippi Canyon 252 OCS-G-32306 Macondo #1 |

## Well Information

| Casing/Liner Size | 11 7/8" | Depth MD | 15300 ft | BHST | 133 F |
|---|---|---|---|---|---|
| Hole Size | 14 1/2" | Depth TVD | 15300 ft | BHCT | 93 F |

## Drilling Fluid Information

| Mud Company | MI | Type | SOBM | Density | 13.8 PPG | PV/YP | |
|---|---|---|---|---|---|---|---|

## Cement Information - Lead Design

| Conc | UOM | Cement/Additive | Sample Type | Sample Date | Lot No. | Cement Properties | |
|---|---|---|---|---|---|---|---|
| | | | | | | Slurry Density | 16.399 PPG |
| 100.00 | % BWOC | Lafarge Class H | Rig | Mar 08, 2010 | Blend | Slurry Yield | 1.06 FT3 |
| 0.07 | % BWOC | EZ-FLO | Rig | Mar 08, 2010 | Blended | Water Requirement | 4.24 GPS |
| 0.08 | gps | HALAD-344EXP | Lab | Feb 14, 2010 | | Total Mix Fluid | 4.37 GPS |
| 0.05 | gps | HR-6L | Lab | Nov 04, 2009 | 165 | | |
| 4.24 | gps | Field (Fresh) Water | Rig | Mar 04, 2010 | LOCATION | | |
| | | | | | | Water Source | Field (Fresh) Water |
| | | | | | | Water Chloride | 0 ppm |

## Operation Test Results Request ID 70793/2

### Thickening Time

| Temp (°F) | Pressure (psi) | Batch Mix (min) | Reached in (min) | Start BC | 30 Bc (hh:mm) | 40 Bc (hh:mm) | 50 Bc (hh:mm) | 70 Bc (hh:mm) |
|---|---|---|---|---|---|---|---|---|
| 93 | 12,116 | 0 | 53 | 14 | 03:27 | 03:31 | 03:34 | 03:36 |

### Mud Balance Density

Density (ppg)

16.4

### Mixability (0 - 5) - 0 is not mixable

Mixability rating (0 - 5)

5

### UCA Comp. Strength

| End Temp (°F) | Pressure (psi) | 50 psi (hh:mm) | 500 psi (hh:mm) | 12 hr CS (psi) | 24 hr CS (psi) |
|---|---|---|---|---|---|
| 133 | 12,116 | 02:56 | 03:55 | 1,892 | 2,176 |

5 / 8

Proprietary and Confidential - Do Not Copy

MC 252_Macondo BoD_16 in Liner_Post Job ‏ ‎rt.pdf (Attachment 5 of 8)



**Bp America Prod Co-sorac/gom Ebiz**
**PO Box 22024 - Do Not Mail**
**Tulsa, Oklahoma 74121-2024**

Macondo Prospect 1

United States of America

# 16" Liner Post Job Report

Prepared for: Brian Morel

March 27, 2010
Version: 1

Submitted by:
Jesse Gagliano
Halliburton
10200 Bellaire Blvd
Houston, Texas 77072-5299

**HALLIBURTON**

1 / 16

Proprietary and Confidential - Do Not Copy

# HALLIBURTON

## *Lab Results: 16" Liner Lead Slurry*
# HALLIBURTON
### Cementing Gulf of Mexico, Broussard

**LAB RESULTS - Primary**

### Job Information

| Request/Slurry | 66259/3 | Rig Name | TRANSOCEAN HORIZON | Date | February 18th 2010 |
|---|---|---|---|---|---|
| Submitted By | Jesse Gagliano | Job Type | 16" Intermediate Liner | Bulk Plant | Fourchon-C-Port I, La, USA |
| Customer | BP | Location | Mississippi Cny | Well | Mississippi Canyon 252 OCS-G-32306 Macondo #1 |

### Well Information

| Casing/Liner Size | 16" | Depth MD | 12250 ft | BHST | 135 F |
|---|---|---|---|---|---|
| Hole Size | 20" | Depth TVD | 12250 ft | BHCT | 84 F |

### Drilling Fluid Information

| Mud Company | MI | Type | SOBM | Density | 11.8 PPG | PV/YP | |
|---|---|---|---|---|---|---|---|

### Cement Information - Primary Design

| Conc | UOM | Cement/Additive | Sample Type | Sample Date | Lot No. | Cement Properties | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Slurry Density | 16.399 | PPG |
| 100.00 | % BWOC | Lafarge Class H | Rig | Feb 05, 2010 | LOCATION | Slurry Yield | 1.09 | FT3 |
| | | | | | | Water Requirement | 4.29 | GPS |
| 0.07 | % BWOC | EZ-FLO | Rig | Feb 05, 2010 | LOCATION | Total Mix Fluid | 4.43 | GPS |
| 0.25 | % BWOC | D-Air 3000 | Rig | Feb 05, 2010 | LOCATION | | | |
| 1.88 | lb/sk | KCl (Potassium Chloride) Salt | Rig | Feb 05, 2010 | LOCATION | Water Source | Field (Fresh) Water | |
| 0.08 | gps | HALAD-344EXP | Lab | Feb 14, 2010 | | Water Chloride | 999 | ppm |
| 0.06 | gps | HR-6L | Lab | Nov 04, 2009 | 165 | | | |
| 4.29 | gps | Field (Fresh) Water | Rig | Feb 11, 2010 | | | | |

### Operation Test Results Request ID 66259/3

**Thickening Time, Request Test ID:733624**

| Temp (°F) | Pressure (psi) | Reached in (min) | Start BC | 30 Bc (hh:mm) | 40 Bc (hh:mm) | 50 Bc (hh:mm) | 70 Bc (hh:mm) |
|---|---|---|---|---|---|---|---|
| 84 | 8,428 | 44 | 9 | 04:06 | 04:50 | 05:00 | 05:16 |

**Mud Balance Density, Request Test ID:733628**

Density (ppg)

16.4

**Mixability (0 - 5), 0 is not mixable, Request Test ID:733626**

Mixability rating (0 - 5)

5

4 / 16

MC 252_Macondo_18 Liner_Post Job Report    ?.pdf (Attachment 6 of 8)



## Bp America Prod Co-sorac/gom Ebiz
## PO Box 22024 - Do Not Mail
## Tulsa, Oklahoma 74121-2024

Macondo Prospect 1

United States of America

# 18" Liner Post Job Report

Prepared for: Brian Morel

Version: 2
March 22, 2010

Submitted by:
Jesse Gagliano
Halliburton
10200 Bellaire Blvd
Houston, Texas 77072-5299

**HALLIBURTON**

1 / 20

Proprietary and Confidential - Do Not Copy

# HALLIBURTON

## *Lab Results: 18" Liner*

# HALLIBURTON
Cementing Gulf of Mexico, Broussard

**LAB RESULTS - Tail**

## Job Information

| Request/Slurry | 51879/1 | Rig Name | | TRANSOCEAN MARIANAS | Date | | October 26th 2009 |
|---|---|---|---|---|---|---|---|
| Submitted By | Jesse Gagliano | Job Type | | 18" Drilling Liner | Bulk Plant | | Fourchon-C-Port I, La, USA |
| Customer | BP | Location | | Mississippi Cny | Well | | Mississippi Canyon 252 OCS-G-32306 Macondo #1 |

## Well Information

| Casing/Liner Size | 18" | Depth MD | 8970 ft | BHST | 105 F |
|---|---|---|---|---|---|
| Hole Size | 22" | Depth TVD | 8970 ft | BHCT | 93 F |

## Drilling Fluid Information

| Mud Company | Baroid | Type | SOBM | Density | 9.8 PPG | PV/YP | |
|---|---|---|---|---|---|---|---|

## Cement Information - Tail Design

| Conc | UOM | Cement/Additive | Sample Type | Sample Date | Lot No. | Cement Properties | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Slurry Density | 16.399 | PPG |
| 100.00 | % BWOC | Lafarge Class H | Bulk | Oct 16, 2009 | | Slurry Yield | 1.08 | FT3 |
| 0.07 | % BWOC | EZ-FLO | Bulk | Oct 16, 2009 | | Water Requirement | 4.33 | GPS |
| 0.25 | % BWOC | D-Air 3000 | Bulk | Oct 16, 2009 | | Total Mix Fluid | 4.42 | GPS |
| 1.88 | lb/sk | KCl (Potassium Chloride) Salt | Bulk | Oct 16, 2009 | | | | |
| 0.08 | gps | HALAD-344EXP | Lab | Jul 27, 2009 | | Water Source | | Fresh Water |
| 0.01 | gps | HR-6L | Lab | Sep 18, 2009 | 162 | | | |
| 4.33 | gps | Fresh Water | Lab | Sep 22, 2009 | | Water Chloride | N/A | ppm |

## Operation Test Results Request ID 51879/1

### Thickening Time, Request Test ID 583973

| Temp (°F) | Pressure (psi) | Batch Mix (min) | Reached in (min) | Start BC | 30 Bc (hh:mm) | 40 Bc (hh:mm) | 50 Bc (hh:mm) | 70 Bc (hh:mm) |
|---|---|---|---|---|---|---|---|---|
| 93 | 5,289 | 0 | 35 | 11 | 03:14 | 03:34 | 03:41 | 03:50 |

### Mixability (0 - 5) - 0 is not mixable, Request Test ID 583975

Mixability rating (0 - 5)

5

### Mud Balance Density, Request Test ID 583994

Density (ppg)

16.4

### UCA Comp. Strength, Request Test ID 583974

| End Temp (°F) | Pressure (psi) | 50 psi (hh:mm) | 500 psi (hh:mm) | 12 hr CS (psi) | 24 hr CS (psi) |
|---|---|---|---|---|---|
| 105 | 5,289 | 04:31 | 06:32 | 1,723 | 2,571 |

5 / 20

Proprietary and Confidential - Do Not Copy

# HALLIBURTON

## *Lab Results: 18" Squeeze*

# HALLIBURTON
Cementing Gulf of Mexico, Broussard

**LAB RESULTS - Squeeze**

### Job Information

| | | | | | |
|---|---|---|---|---|---|
| **Request/Slurry** | 65503/1 | **Rig Name** | TRANSOCEAN HORIZON | **Date** | February 13th 2010 |
| **Submitted By** | Jesse Gagliano | **Job Type** | 18" Shoe Squeeze | **Bulk Plant** | Fourchon-C-Port I, La, USA |
| **Customer** | BP | **Location** | Mississippi Cny | **Well** | Mississippi Canyon 252 OCS-G-32306 Macondo #1 |

### Well Information

| | | | | | |
|---|---|---|---|---|---|
| **Casing/Liner Size** | 18" | **Depth MD** | 9085 ft | **BHST** | 130 F |
| **Hole Size** | 22" | **Depth TVD** | 9085 ft | **BHCT** | 100 F |

### Drilling Fluid Information

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Mud Company** | MI | **Type** | SOBM | **Density** | 10,6 PPG | **PV/YP** | |

### Cement Information - Squeeze Design

| Conc | UOM | Cement/Additive | Sample Type | Sample Date | Lot No. | Cement Properties | |
|---|---|---|---|---|---|---|---|
| | | | | | | Slurry Density | 16.399 PPG |
| | | | | | | Slurry Yield | 1.09 FT3 |
| 100.00 | % BWOC | Lafarge Class H | Rig | Feb 05, 2010 | LOCATION | Water Requirement | 4.3 GPS |
| 0.07 | % BWOC | EZ-FLO | Rig | Feb 05, 2010 | LOCATION | Total Mix Fluid | 4.43 GPS |
| 0.25 | % BWOC | D-Air 3000 | Rig | Feb 05, 2010 | LOCATION | | |
| 1.88 | lb/sk | KCl (Potassium Chloride) Salt | Rig | Feb 05, 2010 | LOCATION | Water Source | Field (Fresh) Water |
| 0.08 | gps | HALAD-344EXP | Lab | Dec 29, 2009 | | Water Chloride | 999 ppm |
| 0.05 | gps | HR-6L | Lab | Oct 14, 2008 | 153 | | |
| 4.30 | gps | Field (Fresh) Water | Rig | Feb 11, 2010 | | | |

### Operation Test Results Request ID 65503/1

**Thickening Time, Request Test ID 723504**

| Temp (°F) | Pressure (psi) | Reached in (min) | Start BC | 30 Bc (hh:mm) | 40 Bc (hh:mm) | 50 Bc (hh:mm) | 70 Bc (hh:mm) |
|---|---|---|---|---|---|---|---|
| 100 | 7,503 | 22 | 13 | 04:15 | 04:20 | 04:23 | 04:28 |

**Mud Balance Density, Request Test ID 723507**

| Density (ppg) |
|---|
| 16.2 |

**Mixability (0 - 5), 0 is not mixable, Request Test ID 723506**

| Mixability rating (0 - 5) |
|---|
| 4 |

**UCA Comp. Strength, Request Test ID 723505**

| End Temp (°F) | Pressure (psi) | 50 psi (hh:mm) | 500 psi (hh:mm) | 12 hr CS (psi) | 24 hr CS (psi) |
|---|---|---|---|---|---|
| 130 | 7,503 | 05:43 | 06:31 | 2,659 | 3,220 |

Circulate before pouring C.S. for 1 Hrs

Proprietary and Confidential - Do Not Copy

Macondo_MC 252_13.625 in Liner_Post Job      rt.pdf (Attachment 4 of 8)

# HALLIBURTON

### Bp America Prod Co-sorac/gom Ebiz
### PO Box 22024 - Do Not Mail
### Tulsa, Oklahoma 74121-2024

Macondo 1
MISSISSIPPI CANYON Blk: 252

United States of America

# 13 5/8" Liner Post Job Report

Prepared for: Brian Morel

April 25, 2010
Version: 1

Submitted by:
Jesse Gagliano
Halliburton
10200 Bellaire Blvd
Houston, Texas 77072-5299

# HALLIBURTON

1 / 8

Proprietary and Confidential - Do Not Copy

Macondo_MC 252_13.625 in Liner_Post Job      rt.pdf (Attachment 4 of 8)

# HALLIBURTON

## *Lab Results: 13 5/8" Liner*

# HALLIBURTON
### Cementing Gulf of Mexico, Broussard

**LAB RESULTS - Lead**

## Job Information

| | | | | | | |
|---|---|---|---|---|---|---|
| **Request/Slurry Submitted By** | 70309/2 Jesse Gagliano | **Rig Name** | TRANSOCEAN HORIZON | **Date** | March 19th 2010 | |
| | | **Job Type** | 13 5/8" Drilling Liner | **Bulk Plant** | Fourchon-C-Port I, La, USA | |
| **Customer** | BP | **Location** | Mississippi Cny | **Well** | Mississippi Canyon 252 OCS-G-32306 Macondo #1 | |

## Well Information

| | | | | | |
|---|---|---|---|---|---|
| **Casing/Liner Size** | 13 5/8" | **Depth MD** | 13150 ft | **BHST** | 145 F |
| **Hole Size** | 16 1/2" | **Depth TVD** | 13150 ft | **BHCT** | 121 F |

## Drilling Fluid Information

| | | | | | | |
|---|---|---|---|---|---|---|
| **Mud Company** | MI | **Type** | SOBM | **Density** | 12,4 PPG | **PV/YP** |

## Cement Information - Lead Design

| Conc | UOM | Cement/Additive | Sample Type | Sample Date | Lot No. | Cement Properties | |
|---|---|---|---|---|---|---|---|
| 100.00 | % BWOC | Lafarge Class H | Rig | Mar 08, 2010 | Blend | Slurry Density | 16.399 PPG |
| 0.07 | % BWOC | EZ-FLO | Rig | Mar 08, 2010 | Blended | Slurry Yield | 1.06 FT3 |
| 0.08 | gps | HALAD-344EXP | Lab | Feb 14, 2010 | | Water Requirement | 4.23 GPS |
| 0.06 | gps | HR-6L | Lab | Nov 04, 2009 | 165 | Total Mix Fluid | 4.37 GPS |
| 4.23 | gps | Field (Fresh) Water | Rig | Mar 04, 2010 | 64833 | | |
| | | | | | | Water Source | Field (Fresh) Water |
| | | | | | | Water Chloride | 504 ppm |

## Operation Test Results Request ID 70309/2

### Thickening Time, Request Test ID: 773430

| Temp (°F) | Pressure (psi) | Batch Mix (min) | Reached in (min) | Start BC | 30 Bc (hh:mm) | 40 Bc (hh:mm) | 50 Bc (hh:mm) | 70 Bc (hh:mm) |
|---|---|---|---|---|---|---|---|---|
| 121 | 9,457 | 0 | 46 | 18 | 02:47 | 02:52 | 02:53 | 02:55 |

Need 3 - 4 Hrs., HR-6L. Lot #165 Ok'd by Jesse

### Mud Balance Density, Request Test ID: 773435

| Density (ppg) |
|---|
| 16.4 |

### Mixability (0 - 5) - 0 is not mixable, Request Test ID: 773432

| Mixability rating (0 - 5) |
|---|
| 5 |

### UCA Comp. Strength, Request Test ID: 773431

| End Temp (°F) | Pressure (psi) | 50 psi (hh:mm) | 500 psi (hh:mm) | 12 hr CS (psi) | 24 hr CS (psi) |
|---|---|---|---|---|---|
| 145 | 9,457 | 05:04 | 06:40 | 1,232 | 1,610 |

Proprietary and Confidential - Do Not Copy

Macondo_MC 252 #1_9 58 Liner_Post Job R    .pdf (Attachment 2 of 8)

# **HALLIBURTON**

## *Bp America Prod Co-sorac/gom Ebiz*
## *PO Box 22024 - Do Not Mail*
## *Tulsa, Oklahoma 74121-2024*

Macondo 1
MISSISSIPPI CANYON Blk: 252

United States of America

# 9 7/8" Liner Post Job Report

Prepared for: Brian Morel

April 25, 2010
Version: 1

Submitted by:
Jesse Gagliano
Halliburton
10200 Bellaire Blvd
Houston, Texas 77072-5299

**HALLIBURTON**

1 / 10

Proprietary and Confidential - Do Not Copy

Macondo_MC 252 #1_9 58 Liner_Post Job R    .pdf (Attachment 2 of 8)

# HALLIBURTON

## *Lab Test: 9 7/8" Liner Cement*

# HALLIBURTON
### Cementing Gulf of Mexico, Broussard

**LAB RESULTS - Lead**

## Job Information

| | | | | | | |
|---|---|---|---|---|---|---|
| **Request/Slurry** | 71774/1 | **Rig Name** | TRANSOCEAN HORIZON | **Date** | March 29th 2010 | |
| **Submitted By** | Jesse Gagliano | **Job Type** | 9 7/8" Drilling Liner | **Bulk Plant** | Fourchon-C-Port I, La, USA | |
| **Customer** | BP | **Location** | Mississippi Cny | **Well** | Mississippi Canyon 252 OCS-G-32306 Macondo #1 | |

## Well Information

| | | | | | |
|---|---|---|---|---|---|
| **Casing/Liner Size** | 9 7/8" | **Depth MD** | 17200 ft | **BHST** | 134 F |
| **Hole Size** | 12 1/2" | **Depth TVD** | 17200 ft | **BHCT** | 106 F |

## Drilling Fluid Information

| | | | | | | |
|---|---|---|---|---|---|---|
| **Mud Company** | MI | **Type** | SOBM | **Density** | 14,1 PPG | **PV/YP** |

## Cement Information - Lead Design

| Conc | UOM | Cement/Additive | Sample Type | Sample Date | Lot No. | Cement Properties | |
|---|---|---|---|---|---|---|---|
| | | | | | | Slurry Density | 16.399 PPG |
| 100.00 | % BWOC | Lafarge Class H | Bulk | Mar 04, 2010 | | Slurry Yield | 1.06 FT3 |
| 0.07 | % BWOC | EZ-FLO | Bulk | Mar 04, 2010 | | Water Requirement | 4.23 GPS |
| 0.08 | gps | HALAD-344EXP | Lab | Feb 14, 2010 | | Total Mix Fluid | 4.37 GPS |
| 0.06 | gps | HR-6L | Lab | Nov 04, 2009 | 165 | | |
| 4.23 | gps | Field (Fresh) Water | Rig | Mar 04, 2010 | LOCATION | Water Source | Field (Fresh) Water |
| | | | | | | Water Chloride | 0 ppm |

## Operation Test Results Request ID 71774/1

### Thickening Time, Request Test ID:786668

| Temp (°F) | Pressure (psi) | Batch Mix (min) | Reached in (min) | Start BC | 30 Bc (hh:mm) | 40 Bc (hh:mm) | 50 Bc (hh:mm) | 70 Bc (hh:mm) |
|---|---|---|---|---|---|---|---|---|
| 106 | 13,859 | 0 | 59 | 18 | 03:07 | 03:31 | 03:34 | 03:37 |

Need 3 - 4 Hrs

### Mud Balance Density, Request Test ID:786667

**Density (ppg)**

16.4

Composited from 68819

### Mixability (0 - 5) - 0 is not mixable, Request Test ID:786648

**Mixability rating (0 - 5)**

5

### UCA Comp. Strength, Request Test ID:786805

| End Temp (°F) | Pressure (psi) | 50 psi (hh:mm) | 500 psi (hh:mm) | 12 hr CS (psi) | 24 hr CS (psi) |
|---|---|---|---|---|---|
| 134 | 13,859 | 07:26 | 08:15 | 1,782 | 2,523 |

Circulate before pouring C.S. for 1 1/2 Hrs

5 / 10

Proprietary and Confidential - Do Not Copy

BP_M.C. 252_Macondo #1 - 9.875 x 7 in For   Casing Post Job Summary ver 2.pdf (Attachment 1 of

# HALLIBURTON

**BP America**
**PO Box 22024**
**Tulsa, Oklahoma  74121-2024**

OCS-G-32306 , Macondo #1
Mississippi Canyon Block 252
Offshore Gulf of Mexico
United States of America

Rig Name:  Transocean Horizon

# 9.875" x 7" Foamed Production Casing Post Job Report

Prepared for: Jesse Gagliano

April 20, 2010

Submitted by:
Nathaniel Chaisson
Technical Professional
100 Capital Dr Ste 200
Lafayette, LA 70508

Proprietary and Confidential - Do Not Copy

# HALLIBURTON
**Cementing Gulf of Mexico, Broussard**

**LAB RESULTS - Primary**

## Job Information

| | | | | | | |
|---|---|---|---|---|---|---|
| **Request/Slurry** | 73909/2 | **Rig Name** | | TRANSOCEAN HORIZON | **Date** | April 12th 2010 |
| **Submitted By** | Jesse Gagliano | **Job Type** | | 9 7/8" X 7" Prod Casing | **Bulk Plant** | Fourchon-C-Port I, La, USA |
| **Customer** | BP | **Location** | | Mississippi Cny | **Well** | Mississippi Canyon 252 OCS-G-32306 Macondo #1 |

## Well Information

| | | | | | | |
|---|---|---|---|---|---|---|
| **Casing/Liner Size** | 7" | **Depth MD** | 18360 ft | | **BHST** | 210 F |
| **Hole Size** | 9 7/8" | **Depth TVD** | 18360 ft | | **BHCT** | 135 F |

## Drilling Fluid Information

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Mud Company** | MI | **Type** | SOBM | **Density** | 14,1 PPG | **PV/YP** | |

## Cement Information - Primary Design

| Conc | UOM | Cement/Additive | Sample Type | Sample Date | Lot No. | Cement Properties | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Slurry Density | 16.741 | PPG |
| 100.00 | % BWOC | Lafarge Class H | Rig | Apr 05, 2010 | Tank # 8 | Slurry Yield | 1.37 | FT3 |
| | | | | | | Water Requirement | 4.93 | GPS |
| 0.07 | % BWOC | EZ-FLO | Rig | Apr 05, 2010 | | Total Mix Fluid | 5.02 | GPS |
| 0.25 | % BWOC | D-Air 3000 | Rig | Apr 05, 2010 | | Foam Density | 14.496 | PPG |
| 1.88 | lb/sk | KCl (Potassium Chloride) Salt | Rig | Apr 05, 2010 | | Foam Quality | 12.98 | % |
| 20.00 | % BWOC | SSA-1 (Silica Flour) - PB | Rig | Apr 05, 2010 | | Water Source | | Fresh Water |
| 15.00 | % BWOC | SSA-2 (100 Mesh) - PB | Rig | Apr 05, 2010 | | Water Chloride | N/A | ppm |
| 0.20 | % BWOC | SA-541 | Rig | Apr 05, 2010 | | | | |
| 0.11 | gps | ZoneSealant 2000 | Lab | Mar 15, 2009 | | | | |
| 0.09 | gps | SCR-100L | Lab | Oct 22, 2009 | 6264 | | | |
| 4.93 | gps | Fresh Water | Lab | Apr 12, 2010 | FRESH WATER | | | |

## Operation Test Results Request ID 73909/2

### Thickening Time, Request Test ID:812338

| Temp (°F) | Pressure (psi) | Reached in (min) | Start BC | 30 Bc (hh:mm) | 40 Bc (hh:mm) | 50 Bc (hh:mm) | 70 Bc (hh:mm) |
|---|---|---|---|---|---|---|---|
| 135 | 14,458 | 83 | 14 | 07:25 | 07:34 | 07:36 | 07:37 |

### Mud Balance Density, Request Test ID:811529

**Density (ppg)**

16.7

from part 1

### Mixability (0 - 5) - 0 is not mixable, Request Test ID:811524

**Mixability rating (0 - 5)**

4

This report is the property of Halliburton Energy Services and neither it nor any part thereof, nor a copy thereof, is to be published or disclosed without first securing the expressed written approval of Halliburton. It may however be used in the course of regular business operations by any person or concern receiving such report from Halliburton. This report is for information purposes only and the content is limited to the sample described. Halliburton makes no warranties, expressed or implied, as to the accuracy of the contents or results. Any user of this report agrees Halliburton shall not be liable for any loss or damage regardless of cause, including any act or omission of Halliburton, resulting from the use hereof.



**U.S. Department of Justice**

May 3, 2010

Robert Bondy
General Counsel
BP plc
501 Westlake Park Boulevard
Houston, TX 77079

Eric B. Brown
General Counsel
Transocean Ltd.
4 Greenway Plaza
Houston, TX 77046

Bert Cornelison
General Counsel
Halliburton Co.
3000 N. Sam Houston Pkwy E.
Houston, TX 77032

> Re: Preservation of Potentially Relevant Information
> Fire and Explosion at Deepwater Horizon, April 20, 2010

Dear Counsel:

As you know, on or about April 20, 2010, a fire and explosion occurred on a mobile offshore drilling unit, the "Deepwater Horizon," located in the Gulf of Mexico about 50 miles from the Louisiana shore. Lives were lost. The resulting oil spill is causing massive and potentially unprecedented environmental damage. The oil leak is ongoing. An important priority is protection of human health and the environment and minimization of damage resulting from the spill.

We believe it prudent to note the ongoing requirement that your respective clients as well as their respective employees, officers, directors, agents, affiliates, contractors, and subsidiary and parent companies take all steps necessary to identify, retain, and preserve "potentially relevant information" relating to the fire and explosion at the Deepwater Horizon and resulting spill including, but not limited to, for any events leading up to and subsequent to this fire, explosion and spill, and any release or threatened release of oil or other substances, costs and damages.



**EXHIBIT**

tabbies

2

"Potentially relevant information" includes any tangible thing such as physical materials, documents and electronically stored information. Electronically stored information must be maintained and preserved in its original "native" format. The preservation obligation should be interpreted broadly, because the knowing destruction of records even in anticipation of a federal investigation could result in obstruction of justice pursuant to 18 U.S.C. §§ 1505 and 1519.

Among the potentially relevant information that must be preserved is all such information related to any potential claim or defense pursuant to the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701 et seq., the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331 et seq., the Clean Water Act, 33 U.S.C. §§ 1251 et seq., and any other applicable law relating to this matter, including without limitation information relating to:

a. The events leading up to and causes of and responses to the fire, explosion, discharges, releases, damages, as well as any other aspects of this subject;

b. The steps necessary to abate the discharges, releases and damages, and the costs associated with such steps;

c. The damages caused by the discharges and releases, including damages to natural resources;

d. Any violation of federal law associated with the fire, explosion, discharges, releases or other aspects of this subject;

e. Any economic benefit derived from any violation of federal law associated with the fire, explosion, discharges, releases or other aspects of this subject;

f. The financial status of any party who committed any such violation;

g. The efforts of any such party to comply with the law;

h. Any other factor that might be relevant to determining liability, damages, penalties or cost recovery related to the fire, explosion, discharges, releases or other aspects of this subject;

i. Any potential defense in any potential action pursuant to the statutes listed above or others; and

j. Any information or communications relating to (i) the federal lease including seeking the lease; and (ii) installation, operation and maintenance of the Deepwater Horizon including safety measures.

Consistent with the Sedona Principles, the following persons are points of contact from our offices for potential discussions about retention obligations:

Sarah Himmelhoch
Senior Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
(202) 514-0180
sarah.himmelhoch@usdoj.gov

Stephen G. Flynn
Assistant Director
Aviation and Admiralty Litigation Section
Torts Branch, Civil Division
(202) 616-4070
stephen.flynn@usdoj.gov

Thank you for your immediate attention to this important matter.

Sincerely,

John C. Cruden
Deputy Assistant Attorney General
Environment & Natural Resources Division

Ann Ravel
Deputy Assistant Attorney General
Civil Division

cc:   Thomas H. Milch
      Joel M. Gross

3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ACY J. COOPER, JR. AND RONNIE LOUIS
ANDERSON, ETC.

CIVIL ACTION

VERSUS

NO. 10-1229

BP, plc, ET AL

SECTION "N" (1)

## O R D E R

Subject to further orders of the Court, **IT IS ORDERED** that Plaintiffs' request for a Protective Order is hereby **GRANTED** in the following respects:

### I. PRESERVATION ORDER

1.    The Defendants, Transocean Offshore Deepwater Drilling, Inc., Deepwater Horizon, BP Products North America, Inc., Halliburton Energy Services, Cameron International Corporation d/b/a Cameron Systems Corporation and MI SWACO, through their officers, agents, employees, and subcontractors, are ordered:

(a) To reasonably refrain and resist from any changing, alteration and/or destruction of any documents pertaining to the April 20, 2010 explosion or subsequent efforts expended in connection with such event, including all information stored, held or maintained in electronic format or via the internet; and to take immediate action to prevent the automatic and/or systematic programmed deletion or discarding of such documents.

1



**EXHIBIT**

_3_

     (b)  To reasonably refrain and resist from any changing, alteration and/or destruction of any and all tools, instrumentalities, and/or devices which may have been used by workers, in any capacity, as well as any work authorizations or other documents indicating status of work at the time of the event in question as well as any and all physical evidence of any kind in any way connected with the accident and/or accident scene in question.

     2.   This order shall **not** be construed in any way to restrict the direction or activities of any of the Defendants or any local, state or federal governmental entity or agency in their investigation, recovery, well control, remedial or rescue efforts.

     3.   Except for good cause shown, each Defendant shall create and maintain and promptly update a confidentiality/privilege log in a searchable electronic format that can be used with commercially available database software (e.g., Microsoft Access) identifying the following information for each document produced or made available in this litigation: the documents (a) beginning and ending Bates numbers; (b) date; (c) title; (d) document type; (e) author(s); (f) recipient(s); and (g) confidentiality status (e.g., Confidential, Highly Confidential, or Non--Confidential, as defined hereinbelow). Each Defendant shall update the confidentiality/privilege log on the first business day of each month. Each confidentiality/privilege log shall reflect all documents produced or declared confidential by the Defendant by the fifteenth day of the prior month. Documents designated "Confidential-Subject to Protective Order" or "Highly Confidential-Subject to Protective Order" that inadvertently do not appear on the confidentiality/privilege log are nonetheless "Confidential" or "Highly Confidential Information" under this Order.

4.    Such confidentiality/privilege log shall be subject to prompt production at a future date and time pursuant to further Order of the Court. Production of such confidentiality/privilege log shall be made within seven (7) days of any such order, and the confidentiality/privilege log produced shall be complete up through the fifteenth day of the month prior to that in which it is produced.

5.    It is expressly understood by and between the parties that in identifying and designating Confidential Information or Highly Confidential-Restricted Information in this litigation, the parties shall be relying upon the terms and conditions of this Protective Order.

6.    No provisions of this Protective Order shall restrict any party's counsel from rendering advice to its clients with respect to this Action and, in the course thereof, relying upon Confidential or Highly Confidential Information, provided that in rendering such advice, counsel shall not disclose any other party's Confidential or Highly Confidential Information other than in a manner provided for in this Protective Order.

7.    By written agreement of the parties, or upon motion and order of the Court, the terms of this Protective Order may be amended, modified, superseded or vacated. This Protective Order shall continue in force until amended or superseded by express order of the Court, and shall survive any final judgment or settlement in this Action.

## II. PROTECTIVE ORDER

8.    **IT IS FURTHER ORDERED** that, for purposes of this Order, the Designation of Confidential or Highly Confidential-Restricted Information are defined and treated as follows:

(1)    *"Confidential Information"* as used herein means any information that the Producing Party believes in good faith constitutes, reflects, discloses, or contains information subject to protection under Fed. R. Civ. P. 26(c) or other applicable law, whether it is a document (electronic or otherwise), information contained in a document, information revealed during a deposition or other testimony, information revealed in an interrogatory response, or information otherwise revealed. In designating discovery materials as Confidential Information, the Producing Party shall do so in good faith consistent with the provisions of this Protective Order and the rulings of the Court, and shall not be overly broad in designating information as Confidential Information under this Protective Order.

Specific documents and discovery responses produced by a Producing Party shall be designated as Confidential Information by marking the pages of the document that contain Confidential Information as follows: "CONFIDENTIAL  —  SUBJECT TO PROTECTIVE ORDER."

(2)    *"Highly Confidential-Restricted Information"* as used herein means any information that the Producing Party believes in good faith constitutes, reflects, discloses, or contains information subject to protection under Fed. R. Civ. P. 26(c) or other applicable law, and that contain highly sensitive and competitive information, the disclosure of which to persons other than those designated in this Protective Order would pose a substantial risk of serious harm, economic or otherwise, to the Producing Party.    In designating discovery materials as Highly Confidential-Restricted Information, the Producing Party shall do so in good faith consistent with

4

the provisions of this Protective Order and the rulings of the Court, and shall not be overly broad in designating information as Confidential Information under this Protective Order.

Specific documents and discovery responses produced by a Producing Party shall be designated as Highly Confidential-Restricted Information by marking the pages of the document that contain Confidential Information as follows: "HIGHLY CONFIDENTIAL — RESTRICTED — SUBJECT TO PROTECTIVE ORDER."

(3)   Where the Producing Party is a defendant, "Competitor" as used herein shall mean any other defendant that provides the same or similar services as the Producing Party.

(4)   Information, other than .tiff images, produced in electronic form (including but not limited to electronic files, databases, programs, tapes, discs or other electronic information) ("Electronic Material") not physically marked as otherwise required under Paragraphs (1) and (2) above, may be designated as Confidential or Highly Confidential-Restricted by marking the outside of the storage medium on which the information is produced or by making the designation in writing. The Receiving Party shall mark any hard copy print-outs and the storage medium of any permissible copies of Electronic Material designated as Confidential or Highly Confidential-Restricted with the appropriate "CONFIDENTIAL  —  SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL-RESTRICTED — SUBJECT TO PROTECTIVE ORDER" legend.

(5)   Information disclosed at a deposition taken in connection with this Action may be designated by the Producing Party as Confidential Information or Highly Confidential-Restricted Information by designating the portions of the transcript in a letter to be served on the court reporter and all counsel within seven (7) business days of the date the court reporter makes the transcript

5

available for the Producing Party's review. The letter shall direct the court reporter to indicate the portions designated as Confidential Information or Highly Confidential-Restricted Information and segregate them as appropriate. Designations of transcripts will apply to audio, video, or other recordings of the testimony. The court reporter shall clearly mark any transcript released prior to the expiration of the seven (7) day period as "Confidential-Subject to Further Confidentiality Review" or "Highly Confidential-Restricted Information." Such transcripts will be treated as Confidential Information or Highly Confidential-Restricted Information and shall be fully subject to this Protective Order, until the expiration of the seven (7) days after the transcript was made available by the court reporter. If the Producing Party does not serve a designation letter within the seven (7) day period, then the entire transcript will be deemed not to contain Confidential Information or Highly Confidential-Restricted Information. The parties may agree to a reasonable extension of the seven (7) day period for serving the designation letter.

(6)   A party in this Action may designate as Confidential or Highly Confidential-Restricted any document or information produced, or testimony given, by any other person or entity that the party reasonably believes qualifies as such party's Confidential or Highly Confidential Information pursuant to this Protective Order. If any third party produces information that any party in good faith believes constitutes its Confidential or Highly Confidential-Restricted Information, the party claiming confidentiality shall designate the information as such within seven (7) days of its receipt of such information. Any party receiving information from a third party shall treat such information pursuant to this Protective Order during this seven (7) day period while all parties have an opportunity to review the information and determine if it should be designated as Confidential or

6

Highly Confidential-Restricted Information. Any party designating third party information as Confidential or Highly Confidential-Restricted shall have the same rights as a Producing Party under this Order with respect to such information.

(7) Subject to Paragraph (11) below, the Receiving Party may disclose Confidential Information only to the following people:

(a)     Counsel for the Receiving Party, including any in-house counsel employed by such party, and the attorneys, paralegals, stenographic, and clerical staff employed by such counsel who are working on the Action under the direction of such counsel and to whom it is necessary that the Confidential Information be disclosed for purposes of the Action;

(b)     With respect to any Confidential Information produced by any plaintiff or third party with respect to plaintiff, any employee of the Defendants to whom it is necessary to disclose such information for the purpose of assisting in, or consulting with respect to, the preparation of this Action;

(c)     Stenographic employees, court reporters, and videographers recording or transcribing testimony in this Action;

7

(d)     The Court, any Special Master appointed by the Court, and any members of their staffs to whom it is necessary to disclose the Confidential Information;

(e)     Subject to Paragraph (5), any witness during a deposition;

(f)     Counsel for claimants in other pending litigation alleging property damage, personal injury, or any economic loss arising from the alleged contamination: (i) already operating under a protective order governing the use of confidential information, or (ii) agrees to be bound by this Order and signs the certification described in Paragraph (9) below;

(g)     Any outside consultant or expert who has signed the certification described in Paragraph (9) below; and

(h)     Any representative of any of the Receiving Party's insurance carriers who has signed the certification described in Paragraph (9) below.

(8) The Receiving Party may disclose Highly Confidential-Restricted Information only to the following people:

(a)     Outside Counsel for Defendants in this Action, including attorneys, paralegals, stenographic and clerical staff employed by such counsel who are working on the Action under the direction of such counsel and to whom it is necessary that the Highly Confidential-Restricted Information be disclosed for purposes of the Action;

8

(b)     In-house attorneys for Plaintiffs who are primarily responsible for the litigation and prosecution of the Action.  In-house attorneys for Plaintiffs who are not responsible for the litigation and prosecution of the Action, including any in-house attorneys with business relationships with any Plaintiff or Defendants or with any other day-to-day interactions with any Plaintiff or Defendants shall not have access to Highly Confidential Documents outside of those produced by the individual Plaintiff;

(c)     In-house attorneys for Defendants who are primarily responsible for the litigation and defense of the Action.  In-house attorneys for Defendants who are not responsible for the litigation and defense of the Action, including any in-house attorneys with business relationships with any Co-Defendant or with any other day-to-day interactions with any Co-Defendant shall not have access to Highly Confidential Documents outside of those produced by Defendants;

(d)     The Court, provided that the Highly Confidential-Restricted documents are filed under seal as set forth in Paragraph (20)(a) below;

(e)     Stenographic employees, court reporters, and videographers recording or transcribing testimony in this Action;

(f)     Any outside consultant or expert that has signed the certification described in Paragraph (9) below;

9

(g)   Subject to Paragraph (10) below, any witness during a deposition. Where a witness was a former employee, consultant, or agent of a Producing Party, and a current employee, consultant, or agent of a "Competitor" as defined in Paragraph (3), the parties shall meet and confer on an appropriate deposition protocol that protects "Highly Confidential" information;

(h)   Counsel for claimants in other pending litigation alleging property damage, personal injury, or any economic loss arising from the alleged contamination, provided that the proposed recipient is: (i) already operating under a protective order governing the use of confidential information, or (ii) agrees to be bound by this Order and signs the certification described in Paragraph (9) below; and

(i)   Any representative of any of the Receiving Party's insurance carriers who has signed the certification described in Paragraph (9) below.

(9) Before disclosing any Confidential Information or Highly Confidential-Restricted Information to any person as permitted by this Order (other than the Court and its staff), such person shall be provided with a copy of this Protective Order, which he or she shall read. Upon reading this Protective Order, such person shall sign a Certification, in the form annexed hereto as Exhibit A, acknowledging that he or she has read this Protective Order and shall abide by its terms. A file of all executed Certifications shall be maintained by outside counsel for the party obtaining them and shall be made available, upon request, for inspection by the Court *in camera*. Persons who come into

10

contact with Confidential Information for clerical or administrative purposes, and who do not retain copies or extracts thereof, are not required to execute Certifications.

(10)  Before disclosing Confidential or Highly Confidential-Restricted Information to any person who is, independent of this litigation, a current director, officer, employee of, consultant to, or counsel for a "Competitor" as defined in Paragraph (3) above, the party wishing to make such disclosure shall give at least ten (10) days advance notice in writing to the counsel for the party who designated such information as confidential, providing the counsel who designated such information as Confidential with information concerning the proposed recipient that does not identify the proposed recipient but is sufficient to permit an informed decision to be made with respect to any potential objection. If there is no consent to the disclosure within ten (10) days, the party wishing to make the disclosure may submit the information to the Court for a determination of whether the disclosure may be made. The objecting party will have opportunities to (1) request that the Court direct the party wishing to make disclosure to produce additional information about the proposed recipient and (2) submit such papers and argument as it may feel necessary to allow the Court to make an informed decision. If a motion is filed objecting to the proposed disclosure, the designated document or item shall not be disclosed unless and until ten days have elapsed after the appeal period from a Court order denying the motion. Because only the party seeking to make the disclosure may know who the proposed recipient is, it is the responsibility of the party seeking to make the disclosure to determine prior to making any disclosure whether the proposed recipient is a person described in this Paragraph.

11

(11)    Disclosure of Confidential Information or Highly Confidential-Restricted Information beyond the terms of this Protective Order may be made only if the Producing Party designating the material as Confidential or Highly-Confidential-Restricted consents in writing to such disclosure, or if the Court, after reasonable notice to all affected parties, orders such disclosure.

(12)  The Receiving Party, and any other persons having knowledge of Confidential Information or Highly Confidential-Restricted Information by virtue of their participation in this action, or by virtue of obtaining documents produced or disclosed in this Action pursuant to this Protective Order, shall use such Confidential Information or Highly Confidential-Restricted Information only as permitted herein.

(13)  This Protective Order does not address the offering of Confidential Information or Highly Confidential-Restricted Information in evidence at trial or any court hearing, but nothing contained in this Protective Order shall preclude any party from moving the Court at an appropriate time for an order that the evidence be received *in camera* or under other conditions to prevent unnecessary disclosure.

(14)  Nothing contained in this Protective Order shall preclude any party from using its own Confidential or Highly Confidential-Restricted Information in any manner it sees fit, without prior consent of any party or the Court.

(15) Counsel shall take all reasonable and necessary steps to assure the security of any Confidential or Highly Confidential-Restricted Information and limit access to those persons authorized by this Order.

(16) Any party that is served with a subpoena, formal written request from any state or federal government agency, or court order compelling the production of discovery materials produced by another party, which discovery materials have been designated as Confidential or Highly Confidential-Restricted Information, must immediately give written notice of such subpoena, formal written request from any state or federal government agency, or court order to the original Producing Party. Upon receiving copies of such requests, the original Producing Party shall bear the burden of opposing, if it deems appropriate, the subpoena or other request on grounds of confidentiality.

(17) If a Receiving Party learns of any unauthorized disclosure of Confidential or Highly Confidential-Restricted Information, it shall immediately upon learning of such disclosure (a) inform the Producing Party in writing of all pertinent facts relating to such disclosure, (b) make all reasonable efforts to prevent disclosure by each unauthorized person who received such information, and (c) make its best efforts to retrieve copies of the Confidential or Highly Confidential-Restricted Information.

(18) Upon the conclusion of any attorney's last case in this Action, including any appeals related thereto, at the written request and option of the Producing Party, all discovery materials produced by the Producing Party and any and all copies, summaries, notes, compilations (electronic or otherwise), and memoranda related thereto, shall be returned within thirty (30) calendar.

13

days to the Producing Party, provided, however, that counsel may retain their privileged communications, work product, certifications pursuant to Paragraph (9), and all court-filed documents even though they contain discovery materials produced by the Producing Party, but such retained privileged communications and work product and court-filed documents shall remain subject to the terms of this Protective Order. At the written request of the Producing Party, any person or entity having custody or control of recordings, notes, memoranda, summaries or other written materials, and all copies thereof, relating to or containing discovery materials produced by the Producing Party shall deliver to the Producing Party an affidavit certifying that reasonable efforts have been made to assure that all such discovery materials produced by the Producing Party and any copies thereof, any and all records, notes, memoranda, summaries, or other written material regarding the discovery materials produced by the Producing Party (except for privileged communications, work product and court-filed documents as stated above) have been delivered to the Producing Party in accordance with the terms of this Protective Order.

(19)  Changes in Designation of Information shall be treated as follows:

(a)  Inadvertent production of any document or information without a designation of confidentiality will not be deemed to waive a later claim to its Confidential or Highly Confidential-Restricted nature or preclude the Producing Party from designating such document or information as Confidential or Highly Confidential-Restricted at a later date.

14

(b)     Any Producing Party may designate as Confidential or Highly Confidential-Restricted, or withdraw such a designation from, any material that it has produced. Such redesignation shall be accomplished by notifying counsel for each party in writing of such redesignation. Upon receipt of any re-designation that designates material as Confidential or Highly Confidential-Restricted, the Receiving Party shall (a) treat such material in accordance with this Order, (b) take reasonable steps to notify any persons known to have possession of any such material of the re-designation under this Protective Order, and (c) promptly endeavor to retrieve all copies of such material from any persons known to have possession of such material who are not authorized to receive it under this Order.

(c)     Any party may object to the propriety of the designation (or re-designation) of specific material as Confidential or Highly Confidential-Restricted by serving a written objection upon the Producing Party's counsel. The Producing Party or its counsel shall thereafter, within ten (10) calendar days, respond to such objection in writing by either: (i) agreeing to remove the designation; or (ii) stating the reasons for such designation. If the Objecting Party and the Producing Party are subsequently unable to agree upon the terms and conditions of disclosure for the material(s) in issue after meeting and

conferring, the Objecting Party may move the Court for an order striking the designation within ten (10) days after written notice that the parties meet and confer efforts have ended.  Counsel may agree to reasonable extensions or reductions of the ten (10) day period, if necessary, and nothing herein shall prevent a party from requesting expedited consideration by the Court.  On such a motion, the Producing Party shall have the burden of proving that good cause exists for the designation at issue and that the material is entitled to protection as Confidential or Highly Confidential-Restricted Information under applicable law.  The material(s) in issue shall continue to be treated in the manner as designated by the Producing Party until the Court orders otherwise.  A Receiving Party does not waive its right to challenge a Confidential or Highly Confidential-Restricted Information designation by electing not to raise a challenge promptly after the original designation is disclosed and may challenge a designation at such time as the Receiving Party deems appropriate.

(20) **IT IS FURTHER ORDERED** Service and Filing of Papers With Confidential or Highly-Confidential-Restricted Information is as follows:

16

(a)    The Parties will use the following procedure for submitting to the Court papers consisting of, relating to, containing, incorporating, reflecting, describing or attaching Confidential or Highly Confidential-Restricted Information: any such material shall be filed in a sealed envelope, labeled with the case name, case number, the motion to which the documents relate, and a listing of the titles of the documents in the envelope, and shall bear the legend: THIS DOCUMENT CONTAINS CONFIDENTIAL OR HIGHLY CONFIDENTIAL-RESTRICTED INFORMATION COVERED BY A PROTECTIVE ORDER OF THE COURT AND IS SUBMITTED UNDER SEAL PURSUANT TO THAT PROTECTIVE ORDER. THE CONFIDENTIAL CONTENTS OF THIS DOCUMENT MAY NOT BE DISCLOSED WITHOUT EXPRESS ORDER OF THE COURT. Such material shall be kept under seal until further order of the Court; however, such materials shall be available to the Court and counsel of record, and to all persons entitled to receive such information under the terms of this Order.

(b)    Within seven (7) business days of the submission of any material under seal, the parties shall confer to determine if the Producing Party objects to the filing of the subject Confidential or Highly Confidential Information in unsealed form. To the extent of the parties agreement

17

concerning the treatment of the subject Confidential or Highly Confidential Information, the filing party may file the subject materials in unsealed form. To the extent the parties are unable to reach agreement, either party may file a motion to address the appropriate treatment of the subject materials. On such a motion, the Supplying Party shall have the burden of proving the material is Confidential or Highly Confidential Information. The material shall remain sealed unless the Court orders otherwise.

(c)     When submitting deposition testimony pursuant to the previous Paragraph that has been designated as Confidential or Highly Confidential-Restricted, the submitting party shall submit, to the extent reasonably possible, only those pages of the deposition transcript that are cited, referred to, or relied on by the submitting party.

Considering the foregoing, **IT IS ORDERED** that the **Motion for Protective Order and Request for Status Conference (Rec. Doc. No. 3)** is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein. At this stage, the Court concludes that a status conference on this issue is unnecessary.

New Orleans, Louisiana, this 5th day of May, 2010.

**KURT D. ENGELHARDT**
**United States District Judge**

18

## EXHIBIT "A"

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

ACY J. COOPER, JR. AND RONNIE LOUIS
ANDERSON, ETC.

CIVIL ACTION

VERSUS

NO. 10-1229

BP, plc, ET AL

SECTION "N" (1)

## CERTIFICATION

I hereby certify that I have read the Protective Order entered in the above-captioned action and that I understand the terms thereof.

I agree to be bound by the Protective Order.

I further agree to submit to the jurisdiction of this Court for purposes of enforcing the Protective Order, and I understand that the Court may impose sanctions on me for any violation of the Protective Order.

19

I understand that these certifications are strictly confidential, that counsel for each party are maintaining the certifications without giving copies to the other side, and that the parties expressly agreed and the Court ordered that except in the event of a violation of this Order, the parties will make no attempt to seek copies of the certifications or to determine the identities of persons signing them. I further understand that if the Court finds that any disclosure is necessary to investigate a violation of this Order, the disclosure will be limited to outside counsel only and outside counsel shall not disclose any information to their clients that could tend to identify any certification signatory unless and until there is specific evidence that a particular signatory may have violated the Order, in which case limited disclosure may be made with respect to that signatory.

**Date:** _____

_____

**(Signature)**

**Name:** _____

**(Typed or Printed)**

20

| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

National Vietnamese American Fishermen §
Emergency Association, *et al.*, §
§
        Plaintiffs, §
§
*versus* §      Civil Action H-10-1607
§
BP, PLC., *et al.*, §
§
        Defendants. §

## Order Protecting Confidentiality

1.    *Purpose.* To preserve the legitimate proprietary and privacy interests of sources of information, this order establishes a procedure for disclosing confidential information, protecting it, and challenging it.

2.    *Information.* Information includes the contents of documents, testimony, answers to interrogatories, admissions, and data derived from objects other than documents.

3.    *Condition.* This order covers information that the source designates confidential. Something may be designated confidential only when the source reasonably believes it is proprietary or otherwise implicates an interest in its security.

4.    *Procedure.*

    A.    *Designation.* To designate information as confidential, a source must mark it or identify it on the record. Either designation may be withdrawn.

    B.    *Marking.* The source must mark each page of documents or each significant component of other objects. The deponent will mark deposition transcripts and the claimant will mark hearing transcripts. A mark similar to these will be used:

ACCESS
RESTRICTED
USDC SDTX

ACCESS RESTRICTED
ATTORNEYS ONLY
USDC SDTX

**EXHIBIT**
4

C.   *Timing*. Documents and other objects must be designated before disclosure. Transcripts must be designated within 30 days of receipt; all transcripts are confidential for 30 days after receipt.

D.   *Application*. This order applies to information in this case (a) furnished by parties and non-parties and (b) derived from confidential information.

E.   *Public*. This order does not apply to information that is public.

F.   *Errors*. Accidental disclosure of information does not waive the confidence; those who knowingly receive an inadvertent disclosure must return the information to the source immediately and make no use of it.

5.   *Who*. Confidential information may be used only by:

A.   Parties,
B.   The court,
C.   Court reporters (including audio and video)
D.   Special masters,
E.   Mediators,
F.   Parties' counsel,
G.   The direct staff of these people, and
H.   Others specifically identified in writing by the source.

6.   *Attorneys Only*.

A.   Access may be further restricted by its being designated for attorneys only. Only the attorneys for the parties and source may use information designated attorneys only.

B.   This designation is limited to confidential information that could cause competitive injury—directly or indirectly.

7.   *Where*. Confidential information must be used only in this case.

8.   *How*.

A.   *Acknowledgment*. People having access to confidential information must sign an acknowledgment of this order in a form similar to appendix A.

B.   *Filings*. No pleading will be sealed If confidential information must be filed, file it under seal as an appendix to the instrument that refers to it. File as little of the source document as possible. References in the instrument must be sufficiently abstract not to disclose the information.

C.   *Hearings.*

    (1)   References to confidential information in pretrial conferences and hearings must be preceded by notice five business days before the court appearance that confidential information will be used.

    (2)   A party may refer to confidential information at trial on cross-examination or rebuttal after requesting a bench conference.

    (3)   The source must mark the transcripts within 30 days of receipt; if the source is not a party, the party using the information must confer with the source in the marking.

D.   *Depositions.*   Deposition testimony is automatically confidential when confidence is asserted at anytime in the deposition; the source must mark the transcripts within 30 days of receipt.

E.   *Subpoenas.* If confidential information is subpoenaed, the source must notify the parties in writing that the subpoena covers confidential information. The source is responsible for protecting subpoenaed information's confidentiality under this order and must respond to the subpoena.

9.   *Challenges.*

A.   *Notice and Response.* If a party reasonably believes that information should not be restricted, it must specify to the source in writing (a) the data and (b) its grounds for questioning the designation. The source must respond in writing within seven business days.

B.   *Rulings.* If the party is still not satisfied, it may move the court to lift the designation. Until the court rules, the designation subsists. If the court rules that the information should not be restricted, the original designation subsists for five business days.

10.   *Return.* This order survives the termination of this case. Within ninety days of termination the parties must (a) return original documents with confidential information and (b) destroy copies of them.

Signed June 4, 2010, at Houston, Texas.

Lynn N. Hughes
United States District Judge

Appendix A.

| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

National Vietnamese American Fishermen §
Emergency Association, *et al.*, §
           Plaintiffs, §
      §
*versus* §       Civil Action H-10-1407
      §
BP, PLC., *et al.*, §
      §
           Defendants. §

## Acknowledgment of Order on Confidentiality

Name: _____

Address: _____

Telephone: _____

Role in Lawsuit:

   ☐ Staff to Counsel   ☐ Consulting Expert   ☐ Testifying Expert

   ☐ Court Reporter   ☐ Other Witness   ☐ Party Employee

Aligned with:

   ☐ This party:_____

   ☐ This non-party:_____

I have read and acknowledge that I am bound by the order on confidentiality entered in this action.

_____      _____

Signature                 Date

    

**Gulf Coast State Attorneys General**

| Troy King | James D. "Buddy" Caldwell | Bill McCollum | Jim Hood | Greg Abbott |
|---|---|---|---|---|
| Attorney General | Attorney General | Attorney General | Attorney General | Attorney General |
| State of Alabama | State of Louisiana | State of Florida | State of Mississippi | State of Texas |

Bert Cornelison
Executive Vice President and General Counsel
Halliburton Energy Services, Inc.
3000 N. Sam Houston Pkwy E.
Houston, Texas 77032

William C. Lemmer
Senior Vice President and General Counsel
Cameron International Corporation
1333 West Loop South, Suite 1700
Houston, Texas 77027

Dear Messrs. Cornelison & Lemmer:

As the Attorneys General for the five Gulf Coast states, we write concerning the Deepwater Horizon oil spill that threatens our coasts and shared natural resources—as well as the livelihood of our coastal citizens and communities.

In the wake of the tragic loss of human life that has already occurred, our top concern now must be the well-being of the precious environmental and wildlife resources of our states. Protecting the fragile coastal ecologies and economies is critical to preserving the ongoing sustainability of our coastal communities. From the fisherman and shrimpers who rely directly upon the Gulf for their income, to the local businesses that are sustained by our fishing communities, and the small businesses that thrive on coastal tourism, this oil spill threatens the health and safety of our coastal communities. In addition, if the oil spill is not fully remediated, it could be an ecological and economic disaster for all of our states.

At a time when local communities are struggling with budget shortfalls, coastal towns and cities cannot afford to fund the necessary mitigation and clean-up efforts. The same is true for each of our states. Yet without the necessary financial resources it will be impossible to both protect and restore the Gulf. As a result, we are focused on working—hopefully cooperatively—with BP and others to ensure that our state and local governments, as well as our citizens and communities, have access to the financial resources necessary to prevent further environmental degradation, mitigate future ecological damage, and fully restore the Gulf to its natural state, as well as to compensate for any economic losses suffered on an individual, corporate, and governmental level.

Despite BP's public assurances of accepting responsibility, we must consider all appropriate measures to preserve taxpayer dollars and maximize the financial resources available to fund this massive clean-up and recovery effort. Both of your organizations were involved in drilling operations at the Mississippi Canyon #252 and therefore may have some liability under the Oil Spill Act of 1990 or other applicable state and federal laws.

Cameron appears to have manufactured and/or supplied the Deepwater Horizon's blow-out-preventers, which failed to operate and thus did not prevent the flow of oil into the Gulf. Halliburton employees were


EXHIBIT
tabbies
5

reportedly engaged in cementing the well and the well cap as recently as 20 hours before the fatal explosion occurred that sunk the Deepwater Horizon.

Because current indications suggest that the magnitude of the damage inflicted and losses expected will very likely exceed the total amount of money currently in the Oil Spill Liability Trust Fund, we must ensure that all available resources are devoted to the clean-up and recovery effort. Specifically, we ask that each company memorialize any commitment it has made to fund this effort.

Additionally, to help facilitate the flow of accurate and timely information, we request that each company assign an individual to serve as our point of contact on this matter. Doing so will ensure that each of our offices can quickly and effectively communicate with you about any problems, concerns or questions that arise during the clean-up effort.

Finally, there are multiple outstanding questions about the cause and ultimate effect of the oil spill. Thus, while all of our efforts are concentrated on the environmental impact of this disaster, it is certainly possible that there may be governmental investigations at some point in the future. Accordingly, we would ask that each company and any of its affected employees or affiliated organizations preserve any documents, data compilations (including electronically recorded and stored data), tangible objects or other information relevant to the explosion of the Deepwater Horizon oil rig, the resulting oil spill or the clean-up effort in the form in which they currently exist until further notice. Regardless of each company's current retention policy, please ensure that the appropriate person within each entity takes all necessary measures to avoid the destruction or modification of any such records.

We look forward to your prompt response on this important matter.

Sincerely,

**Troy King**
**Attorney General**
**State of Alabama**

**James D. "Buddy" Caldwell**
**Attorney General**
**State of Louisiana**

**Bill McCollum**
**Attorney General**
**State of Florida**

**Jim Hood**
**Attorney General**
**State of Mississippi**

**Greg Abbott**
**Attorney General**
**State of Texas**