# Exhibit 09

## DECLARATION OF KEITH MOSKOWITZ

I, Keith Moskowitz, hereby declare and state as follows:

1.     I am over the age of 21 years and a resident of the State of Illinois.  Unless otherwise stated, I have personal knowledge of the facts set forth herein and, if called to do so, could testify truthfully thereto.

2.     I am a Partner at the law firm of SNR Denton (US) LLP and am one of the attorneys representing BP Exploration & Production Inc. and BP America Production Company (collectively "BP") in connection with the Economic and Property Damages Settlement Agreement ("Settlement Agreement").  My responsibilities in connection with this representation include working with the Claims Administrator Patrick Juneau and the Court Supervised Settlement Program ("Settlement Program") on the implementation and administration of the Settlement Agreement.

3.     Since the inception of the Settlement Program and continuing to date, I have had frequent and regular contact and interaction with the Claims Administrator, the Settlement Program and Class Counsel on claims implementation and administration issues.  I have had in-person and/or telephonic meetings with the Claims Administrator and/or representatives of the Settlement Program virtually every week since the commencement of the Settlement Program in June 2012.  Through these in-person and telephonic meetings I have communicated and interacted with the Settlement Program on essentially every aspect of the implementation and administration of the Settlement Agreement.

4.     The Settlement Agreement sets forth and contemplates a transparent and collaborative process between the Claims Administrator, BP and Class Counsel in connection with the implementation and administration of the Settlement Agreement.  The Claims Administrator has implemented a process to present questions and issues related to the Settlement Agreement's implementation and administration to BP and Class Counsel.  At the outset of the claims administration process, the Claims Administrator compiled a spreadsheet of such questions and issues that was updated and presented to BP and Class Counsel for input and resolution.

5.     This process was later refined by the Claims Administrator, but the refined process operates in substantially the same fashion to facilitate the presentation of questions and issues to BP and Class Counsel for consideration and comment prior to the Claims Administrator taking his own final position on the question or issue.  And the Claims Administrator still uses a spreadsheet to catalogue all issues and questions.  Under the refined process, the Claims Administrator issues a written Request for Input from BP and Class Counsel regarding a question or issue identified by the Claims Administrator related to the implementation or administration

of the Settlement. Once BP and Class Counsel respond to the Request for Input, the Claims Administrator issues a written Policy Statement which constitutes the Claims Administrator's position on the question or issue. The Policy Statement is prepared by the Claims Administrator after having received, and with the benefit of, BP's and Class Counsel's responses to a Request for Input. If either BP or Class Counsel disagree with the Claims Administrator's Policy Statement, the parties will convene a Panel Meeting as called for by the terms of the Settlement Agreement. (Settlement Agreement ¶4.3.4)   If the parties reach agreement on or do not object to the Claims Administrator's Policy Statement, or any modified version of the Policy Statement that results from the parties' collaborative efforts, the Claims Administrator issues a Policy Announcement (sometimes referred to as a "policy decision"). The Claims Administrator then gives the parties another opportunity to respond or object to the Policy Announcement before the Claims Administrator makes the Policy Announcement available to Class Members.

6.      To date, the Claims Administrator has presented BP and Class Counsel with over 340 questions or issues related to the implementation and/or administration of the Settlement pursuant to the processes described in Paragraphs 4 and 5 above.[1]  These questions and issues cover every type of claim that can be submitted under the Settlement Agreement (*i.e.,* Business Economic Loss, Individual Economic Loss, etc.) as well as other aspects of the settlement administration such as the appeals process. These questions and issues run the gamut from the more straightforward to the more involved and are both procedural and substantive in nature.[2] The Claims Administrator, BP and Class Counsel have worked together to address or resolve the majority of these questions or issues. Notably, with the exception of the issue discussed below, the Claims Administrator appears to have presented all significant questions or issues to BP as well as to Class Counsel, and followed the processes outlined above, before issuing determinations on substantial numbers of claims impacted by a question or issue of implementation or administration.

7.      On September 28, 2012 BP raised a few questions to the Settlement Program related to how revenue and expenses were being used to calculate compensation in several BEL claim determinations BP had reviewed. (September 28, 2012 e-mail from Daniel Cantor to Michael Juneau, attached as Exhibit A.) Class Counsel sought to prevent BP from even raising these questions, but the Settlement Program allowed BP to present its questions during a short

---

[1] Certain of these questions were raised by Class Counsel and then presented to BP through the Claims Administrator.

[2] An example is the Claims Administrator's October 8, 2012 Policy Statement in which he determined that claimants who prepared profit and loss statements on an accrual basis would not be allowed to restate them on a cash basis to submit claims. The Claims Administrator explained that "such restatement could result in a loss or a greater loss not related to the Spill, but instead as a result only of the timing of cash received."  In reaching this decision, the Claims Administrator went through the process described in Paragraphs 4 and 5 above.

October 2, 2012 teleconference with the Settlement Program and Class Counsel. (September 29, 2012 e-mails between Steve Herman and Michael Juneau attached as Exhibit B.)

8.      The BEL claim determinations began to increase, and accelerate rapidly, in the run-up to the November 8, 2012 Fairness Hearing. From October 1, 2012 to November 8, 2012, the number of eligibility notices with payment offers increased from 414 to 1558. (October 1, 2012 and November 8, 2012 Settlement Program Payment Dashboards attached as Exhibit C.) These BEL claim determinations increased significantly, reaching 2,303 at the end of November 2012 and 2,981 at the end of December 2012. (December 1, 2012 and January 1, 2013 Settlement Program Payments Dashboards attached as Exhibit D.) The BEL payment offers continue to increase through the current date and stand at almost 5,000 as of March 3, 2013. (March 4, 2013 Settlement Program Payment Dashboard attached as Exhibit E.)

9.      After reviewing the increasing number of BEL determinations for construction, professional services and agriculture claims issued through November 2012, BP identified extensive questionable treatment by the Settlement Program and Claims Administrator of revenues and expenses for these claims under the BEL Compensation Framework. As a result, on December 5, 2012, BP requested a meeting with the Settlement Program to fully understand whether the Settlement Program was processing these claims in accordance with the Settlement Agreement, including the BEL Compensation Framework. (December 5, 2012 e-mail from Daniel Cantor to Michael Juneau attached as Exhibit F.) In response, Class Counsel again argued that BP should not be allowed to ask the Settlement Program these questions. (December 6, 2012 e-mail from Steve Herman to Michael Juneau attached as Exhibit G.) The Claims Administrator agreed to a meeting on December 10, 2012, but Class Counsel could not accommodate that date (December 5, 2012 e-mail from Michael Juneau to Steve Herman attached as Exhibit H.) On December 16, 2012, Class Counsel issued a Request for Policy Determination memorandum asking the Claims Administrator to issue a Policy Announcement regarding the determination of compensation awards for construction, law firm and agriculture claims under the BEL Compensation Framework. On December 17, 2012, BP conferred with the Claims Administrator's office about a schedule to respond to Class Counsel's December 16, 2012 Request for Policy Determination and advised the Claims Administrator that, in light of the Class Counsel December 16 Request, the meeting BP requested did not have to go forward because BP would be responding in writing to the December 16 Request.

10.      On December 21, 2012, the Court issued an Order and Reasons Granting Final Approval of the Economic Loss and Property Damages Settlement. (Doc. 8138)

11.      On January 15, 2013, the Claims Administrator issued a Policy Announcement (sometimes referred to as the "BEL policy decision") in response to Class Counsel's December 16, 2012 Request for Policy Determination, and BP's response to Class Counsel's Request.

12.      Unlike the more than 340 other questions and issues that the Claims Administrator presented to BP and Class Counsel, the Claims Administrator did not raise the

issue ultimately addressed in his January 15, 2013 Policy Announcement through the processes described in Paragraphs 4 and 5 above.[3]  Instead, the Claims Administrator only addressed this issue after BP and Class Counsel were in a dispute over how the Claims Administrator already was determining compensation for certain construction, professional services and agriculture claims.  By that point the Claims Administrator had already processed and issued determinations on approximately 3,248 BEL claims for total awards of approximately $764,261,922. (January 15, 2013 Settlement Program Payment Dashboard attached as Exhibit I.)

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  March 15, 2013

Keith Moskowitz

---

[3] After BP and Class Counsel raised the issue in December 2012, the Claims Administrator added the BEL Policy Decision issue to the compendium of more than 340 questions and issues.

- 4 -