# Exhibit 33

*Deepwater Horizon* Economic and Property Damages
Trust Agreement

Among

BP Exploration & Production Inc.
and
BP America Production Company,
as Settlors,

Lead Class Counsel,

Patrick Juneau,
as Claims Administrator and Trustee

and

J.P. Morgan Trust Company of Delaware,
as Directed Trustee

Pursuant to
*Deepwater Horizon* Economic and Property Damages Settlement Agreement
dated April 18, 2012 and as amended May 1, 2012

Dated as of May 4, 2012

## *DEEPWATER HORIZON* ECONOMIC AND PROPERTY DAMAGES TRUST AGREEMENT

This *Deepwater Horizon* Economic and Property Damages Trust Agreement (the "TRUST AGREEMENT") is: (1) entered into pursuant to the SETTLEMENT AGREEMENT, originally filed in the United States District Court for the Eastern District of Louisiana on April 18, 2012 in *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (Rec. Doc. 6726-1), as amended on May 1, 2012, and as may be further amended from time to time ("SETTLEMENT AGREEMENT"); (2) made by and among BP Exploration & Production Inc. and BP America Production Company ("BP PARTIES") as Settlors ("Settlors"); LEAD CLASS COUNSEL; Patrick Juneau (as CLAIMS ADMINISTRATOR and TRUSTEE) and J.P. Morgan Trust Company of Delaware ("DIRECTED TRUSTEE") (BP PARTIES, LEAD CLASS COUNSEL, TRUSTEE and DIRECTED TRUSTEE, collectively the "Trust Agreement Parties"); and (3) made effective on the date of its execution by the Trust Agreement Parties. Any terms in capital letters have the meanings set forth in the SETTLEMENT AGREEMENT. Any terms that have initial capital letters have the meanings set forth in this TRUST AGREEMENT.

## RECITALS

WHEREAS, certain ECONOMIC CLASS REPRESENTATIVES filed the ACTION entitled *Bon Secour Fisheries, Inc. v. BP* against BP PARTIES with the COURT on April 16, 2012, as more particularly described in the SETTLEMENT AGREEMENT;

WHEREAS, BP PARTIES and the ECONOMIC CLASS REPRESENTATIVES, individually and on behalf of the ECONOMIC AND PROPERTY DAMAGES SETTLEMENT CLASS, by and through LEAD CLASS COUNSEL, entered into the SETTLEMENT AGREEMENT for the purpose of settling all RELEASED CLAIMS against the RELEASED PARTIES, which include BP PARTIES;

WHEREAS, this TRUST AGREEMENT is intended to be consistent with, and shall be subject to, the terms and conditions of the SETTLEMENT AGREEMENT, originally filed with the COURT on April 18, 2012, as amended on May 1, 2012, and, in the case of any conflict between such agreements, the SETTLEMENT AGREEMENT shall control;

WHEREAS, on May 2, 2012, the COURT entered a PRELIMINARY APPROVAL ORDER approving the SETTLEMENT AGREEMENT and this TRUST AGREEMENT;

WHEREAS, BP PARTIES, LEAD CLASS COUNSEL, the TRUSTEE and the DIRECTED TRUSTEE hereby create the SETTLEMENT TRUST for the benefit of the ECONOMIC AND PROPERTY DAMAGES SETTLEMENT CLASS, the ECONOMIC CLASS MEMBERS and the ECONOMIC CLASS REPRESENTATIVES on the terms and conditions set forth in this TRUST AGREEMENT, in accordance with the requirements of the SETTLEMENT AGREEMENT; and

WHEREAS, the SETTLEMENT TRUST is intended to meet the requirements of a qualified settlement fund within the meaning of section 468B of the Internal Revenue Code of

1986, as amended from time to time (the "Code"), and section 1.468B-1(c) of the Treasury Regulations promulgated thereunder.

NOW, THEREFORE, in consideration of the foregoing recitals, which are expressly incorporated into this TRUST AGREEMENT and made a part hereof, and in consideration of the agreements, promises, and mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to and on the terms and conditions set forth herein, BP PARTIES, LEAD CLASS COUNSEL, the TRUSTEE and the DIRECTED TRUSTEE hereby agree as follows:

## ARTICLE 1.
## ESTABLISHMENT OF SETTLEMENT TRUST

1.1     Creation and Name.  BP PARTIES, LEAD CLASS COUNSEL, the TRUSTEE, and the DIRECTED TRUSTEE hereby create a trust known as the SETTLEMENT TRUST. The SETTLEMENT TRUST shall be managed by the TRUSTEE, who initially shall be the CLAIMS ADMINISTRATOR, and the DIRECTED TRUSTEE, subject to the terms and conditions set forth in this TRUST AGREEMENT and the SETTLEMENT AGREEMENT.

1.2     Purpose.  The purpose of the SETTLEMENT TRUST is to establish a mechanism to pay SETTLEMENT PAYMENTS and the costs of administering the SETTLEMENT PROGRAM in accordance with the terms of the SETTLEMENT AGREEMENT and this TRUST AGREEMENT, and as required by the COURT.

1.3     Creation of Funds.  The SETTLEMENT TRUST shall initially be comprised of six FUNDS, subject to and to be used solely for such purposes as are set forth in the SETTLEMENT AGREEMENT:  the SEAFOOD COMPENSATION FUND, the GENERAL CLAIMS FUND, the ADMINISTRATIVE FUND, the PROMOTIONAL FUND, the SUPPLEMENTAL INFORMATION PROGRAM FUND, and the ECONOMIC SETTLEMENT TRUST ACCOUNT.  With consent of BP PARTIES and LEAD CLASS COUNSEL and consistent with the terms of the SETTLEMENT AGREEMENT, the TRUSTEE may establish one or more additional funds for the payment of resolved CLAIMS, which shall be considered FUNDS for purposes of the SETTLEMENT AGREEMENT and SETTLEMENT TRUST.

1.4     Transfer of Assets; Trust Estate.  BP PARTIES shall transfer, or cause to be transferred (including by the DEEPWATER HORIZON OIL SPILL TRUST), to the FUNDS of the SETTLEMENT TRUST assets sufficient to provide for the payment of SETTLEMENT PAYMENTS and the costs of administering the SETTLEMENT PROGRAM in accordance with the SETTLEMENT AGREEMENT.  All assets received by the SETTLEMENT TRUST, and any earnings thereon, shall be referred to herein as the "Trust Estate," and shall be held in the FUNDS, and administered and disbursed under the terms of this TRUST AGREEMENT and the SETTLEMENT AGREEMENT.

1.5     Acceptance of Assets and Assumption of Liabilities.  To further the purposes of the SETTLEMENT AGREEMENT, the TRUSTEE and the DIRECTED TRUSTEE agree to accept the assets that BP PARTIES shall transfer, or cause to be transferred, to the SETTLEMENT TRUST, and any earnings thereon, and the TRUSTEE assumes all liability and

responsibility for the administration and distribution of the Trust Estate, in accordance with and subject to the terms of this TRUST AGREEMENT and the SETTLEMENT AGREEMENT.

     1.6   <u>Distributions from Trust</u>.  The TRUSTEE shall make distributions from the FUNDS, and the DIRECTED TRUSTEE (pursuant to Section 2.5) shall make distributions as directed by the CLAIMS ADMINISTRATOR from the ECONOMIC SETTLEMENT TRUST ACCOUNT to the SEAFOOD COMPENSATION FUND, the GENERAL CLAIMS FUND, the ADMINISTRATIVE FUND, the PROMOTIONAL FUND, and the SUPPLEMENTAL INFORMATION PROGRAM FUND, in accordance with the SETTLEMENT AGREEMENT or as otherwise may be required by the COURT.

     1.7   <u>Qualified Settlement Fund</u>.  The SETTLEMENT TRUST is structured and shall be operated in a manner so that it qualifies as a "qualified settlement fund" under section 468B of the Code and Treasury Regulation section 1.468B-1(c).  Specifically, (1) the COURT'S PRELIMINARY APPROVAL ORDER has approved the establishment of the SETTLEMENT TRUST under the terms and conditions of this TRUST AGREEMENT and the SETTLEMENT AGREEMENT; (2) the SETTLEMENT TRUST is subject to the continuing jurisdiction and supervision of the COURT; (3) the SETTLEMENT TRUST is established to resolve or satisfy claims of tort or violation of law arising out of the *DEEPWATER HORIZON* INCIDENT and settled pursuant to the SETTLEMENT AGREEMENT; and (4) the SETTLEMENT TRUST is a trust under Delaware law, and its assets are, and will be, segregated from the general assets of BP and deposited herein.  The SETTLEMENT TRUST is comprised of the FUNDS, which together constitute a single qualified settlement fund.  Consistent with the terms of the SETTLEMENT AGREEMENT and the TRUST AGREEMENT, the TRUSTEE and the DIRECTED TRUSTEE (subject to the provisions of Section 2.5 below) shall take any action or cause the SETTLEMENT TRUST to take any action necessary to create and maintain its status as a qualified settlement fund, and the TRUSTEE and the DIRECTED TRUSTEE (subject to the provisions of Section 2.5 below) agree not to take any action that will adversely affect the qualification of the SETTLEMENT TRUST as a qualified settlement fund.

ARTICLE 2.
POWERS OF TRUST ADMINISTRATION

     2.1   <u>Trustee</u>.  The TRUSTEE and the DIRECTED TRUSTEE are and shall act as the fiduciaries of the SETTLEMENT TRUST in accordance with the provisions of this TRUST AGREEMENT, the SETTLEMENT AGREEMENT, and the PRELIMINARY APPROVAL ORDER.  The TRUSTEE and the DIRECTED TRUSTEE shall at all times administer the SETTLEMENT TRUST and the Trust Estate in accordance with the purpose set forth in Section 1.2 above.  Subject to and limited by this TRUST AGREEMENT, the SETTLEMENT AGREEMENT, and the PRELIMINARY APPROVAL ORDER, the TRUSTEE shall have the power to take any and all actions that in the TRUSTEE'S discretion, to be exercised in conjunction with BP PARTIES and LEAD CLASS COUNSEL where required by this TRUST AGREEMENT or the SETTLEMENT AGREEMENT, as the TRUSTEE determines are necessary and/or appropriate to fulfill the purpose of the SETTLEMENT TRUST, including each power expressly granted in Section 2.4 below, all powers reasonably incidental thereto, and any trust power now or hereafter permitted under the law governing the SETTLEMENT TRUST pursuant to Section 7.8 below.  The TRUSTEE and the DIRECTED TRUSTEE (subject to the

provisions of Section 2.5 below) both agree not to take any action that will adversely affect the qualification of the SETTLEMENT TRUST as a qualified settlement fund or to violate the terms of the SETTLEMENT AGREEMENT.

2.2   Approval.   Except as expressly provided in this TRUST AGREEMENT, the PRELIMINARY APPROVAL ORDER, the SETTLEMENT AGREEMENT, or as otherwise required by the COURT or applicable law, the TRUSTEE and the DIRECTED TRUSTEE need not obtain an order or the approval of the COURT in the exercise of their duties to implement and execute this TRUST AGREEMENT pursuant to the SETTLEMENT AGREEMENT.

2.3   Paying Agent Agreement.   The TRUSTEE and the DIRECTED TRUSTEE shall enter into a PAYING AGENT AGREEMENT, as described in the SETTLEMENT AGREEMENT, in form and substance reasonably satisfactory to BP PARTIES and LEAD CLASS COUNSEL, and approved by the COURT, pursuant to which a federally insured depository institution, approved by the BP PARTIES, LEAD CLASS COUNSEL and the COURT, will serve as the LEAD PAYING AGENT, and Garden City Group, Inc. (or another entity agreed to by the BP PARTIES and LEAD CLASS COUNSEL, with approval of the COURT) will serve as the CLAIMS PAYMENT AGENT. Each such FUND ACCOUNT shall use the same Federal Employer Identification Number as the SETTLEMENT TRUST.

2.4   Powers of the Trustee.   Without limiting the generality of Section 2.1 above, and except as limited herein and in the SETTLEMENT AGREEMENT, the powers of the TRUSTEE shall include the following:

(A)   To receive, hold, and administer the Trust Estate in the FUNDS;

(B)   To invest and reinvest the Trust Estate in the FUNDS in accordance with the terms of Section 5.12.1.6 of the SETTLEMENT AGREEMENT, and Sections 4.1 and 4.2 below;

(C)   To make distributions from the FUNDS pursuant to Section 1.6 above;

(D)   To direct the DIRECTED TRUSTEE to act as authorized in Section 2.5 below;

(E)   To appoint or hire such officers and employees, and engage such legal, financial, accounting, investment, auditing, and other consultants and agents as permitted by and subject to any requirements set forth in the SETTLEMENT AGREEMENT, or as determined by the TRUSTEE, after consultation with BP PARTIES and LEAD CLASS COUNSEL, to be necessary for the proper administration of the SETTLEMENT TRUST and consistent with the terms of the SETTLEMENT AGREEMENT, with the compensation for such officers, employees, consultants and agents to be paid from the ADMINISTRATIVE FUND;

(F)   To enter into such other arrangements with third parties as permitted by and subject to any requirements set forth in the SETTLEMENT AGREEMENT, or as are determined by the TRUSTEE to be necessary in carrying out the purpose of the SETTLEMENT TRUST, consistent with terms of the SETTLEMENT AGREEMENT,

and to compensate such third parties for their services from the ADMINISTRATIVE FUND;

 (G) To hire CLAIMS ADMINISTRATION STAFF and CLAIMS ADMINISTRATION VENDORS, consistent with the terms of the SETTLEMENT AGREEMENT, and to compensate such CLAIMS ADMINISTRATION STAFF and CLAIMS ADMINISTRATION VENDORS for their services from the ADMINISTRATIVE FUND;

 (H) To delegate any or all of the discretionary power and authority herein conferred at any time with respect to the investment of the Trust Estate to any one or more individual or institutional advisors or investment managers determined by the TRUSTEE, and as approved by BP PARTIES and LEAD CLASS COUNSEL, to have demonstrated the experience and qualifications necessary for the responsible exercise of such discretion, and to compensate such advisors and managers for their services from the ADMINISTRATIVE FUND;

 (I) To indemnify any person or entity entitled to indemnification under Section 3.6 below, with any payments to or on behalf of an Indemnitee to be paid from the ADMINISTRATIVE FUND;

 (J) To obtain and pay the premiums for such insurance policies required by this TRUST AGREEMENT and the SETTLEMENT AGREEMENT, or as the TRUSTEE may determine are reasonably necessary or desirable for the protection of the SETTLEMENT TRUST and the TRUSTEE, with such premiums to be paid from the ADMINISTRATIVE FUND;

 (K) To sue, be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding or legal action with respect to the SETTLEMENT TRUST, with the costs of any such proceeding to be paid from the ADMINISTRATIVE FUND; and

 (L) To execute and deliver such documents and instruments as the TRUSTEE determines to be necessary and proper in administering the SETTLEMENT TRUST.

 2.5 Powers of the Directed Trustee. At any time that the SETTLEMENT TRUST or this TRUST AGREEMENT is administered, governed by, construed, and/or enforced according to the laws of the State of Delaware, J.P. Morgan Trust Company of Delaware shall act as the DIRECTED TRUSTEE of the SETTLEMENT TRUST, subject to Section 3.2 below. The DIRECTED TRUSTEE shall act in a fiduciary capacity, but shall have only the duties and authority set forth in this Section 2.5. Accordingly, no reference in this TRUST AGREEMENT to the "TRUSTEE" shall include, or be deemed to refer to, the DIRECTED TRUSTEE. Notwithstanding anything in this TRUST AGREEMENT to the contrary:

 (A) The DIRECTED TRUSTEE shall only have the duty and authority to exercise the following duties and shall only act upon the direction of the TRUSTEE pursuant to a direction of authority under Section 2.4(D) or a delegation of investment

authority under Section 2.4(H), and all actions of the DIRECTED TRUSTEE shall be carried out in the State of Delaware:

      (1)    To exercise the powers of the TRUSTEE under Sections 2.4(A), (B), (C) and (E) above;

      (2)    To originate, facilitate or review SETTLEMENT TRUST accountings, reports and other communications with the TRUSTEE and unrelated third parties, except that the DIRECTED TRUSTEE shall not be responsible for the accuracy of information provided to the DIRECTED TRUSTEE by any third party pursuant to an agreement into which the TRUSTEE has directed the DIRECTED TRUSTEE to enter; and

      (3)    To execute documents and to perform actions necessary to implement any direction of the TRUSTEE.

(B)    Subject to a direction of authority under Section 2.4(D) or a delegation of investment authority under Section 2.4(H), the DIRECTED TRUSTEE is expressly authorized to engage any corporation, partnership, limited liability company or other entity that is a subsidiary or affiliate of a corporate trustee serving hereunder and/or any individual who is a partner, director, officer or employee of any such subsidiary or affiliate (individually and collectively, an "Affiliate"), to act as agent of or render services to this TRUST AGREEMENT and to pay customary fees and compensation to such Affiliate without reduction of any compensation paid to the DIRECTED TRUSTEE; provided, however, that such authorization must comply with the terms of this TRUST AGREEMENT, the SETTLEMENT AGREEMENT, and any order or direction issued by the COURT. The DIRECTED TRUSTEE, and any Affiliate appointed by the DIRECTED TRUSTEE, is hereby authorized to invest and reinvest the Trust Estate in the FUNDS in accordance with the terms of Section 5.12.1.6 of the SETTLEMENT AGREEMENT, and Sections 4.1 and 4.2 below.

(C)    All directions to the DIRECTED TRUSTEE pursuant to Section 2.4(D) shall state that the directions do not violate any provision of this TRUST AGREEMENT, the SETTLEMENT AGREEMENT, or any related document listed in the recitals or anywhere throughout this TRUST AGREEMENT. All such directions to the DIRECTED TRUSTEE shall state that the direction does not adversely affect the qualification of the SETTLEMENT TRUST as a qualified settlement fund. The DIRECTED TRUSTEE need not review whether the TRUSTEE is satisfying its responsibilities hereunder, including whether the direction from the TRUSTEE may adversely affect the qualification of the SETTLEMENT TRUST as a qualified settlement fund.

(D)    Unless the TRUSTEE delegates investment authority to the DIRECTED TRUSTEE under Section 2.4(H), the DIRECTED TRUSTEE shall have no duty or obligation whatsoever to monitor or review the property or investments of this TRUST AGREEMENT for diversification, for the prudence of purchasing, retaining or selling

any such property or investment, for conformity to standards established in this TRUST AGREEMENT or under applicable law, or for any other reason whatsoever.

(E)    Any direction to the DIRECTED TRUSTEE pursuant to 2.4(D) shall be in writing, delivered by mail, courier, facsimile transmission, electronic mail, or otherwise in such form as the DIRECTED TRUSTEE may specify from time to time by written notice to the TRUSTEE. The DIRECTED TRUSTEE shall have no obligation to investigate or confirm the authenticity of directions it receives or the authority of the person or persons conveying them, and the DIRECTED TRUSTEE shall be exonerated from any and all liability in relying on any such direction from a person purporting to be the TRUSTEE without further inquiry by the DIRECTED TRUSTEE.

(F)    Notwithstanding the foregoing provisions of this Section 2.5, the DIRECTED TRUSTEE shall have the following administrative duties, which shall all be performed by the DIRECTED TRUSTEE in the DIRECTED TRUSTEE'S sole discretion in compliance with the terms of the SETTLEMENT AGREEMENT and this TRUST AGREEMENT, and not at the direction of the TRUSTEE:

(1)    To maintain an account or accounts for the purpose of the custody and safekeeping of the Trust Estate, including the ECONOMIC SETTLEMENT TRUST ACCOUNT;

(2)    To maintain evidence of intangible SETTLEMENT TRUST property;

(3)    To maintain administrative records of the SETTLEMENT TRUST;

(4)    To maintain an office for TRUSTEE or DIRECTED TRUSTEE meetings and other SETTLEMENT TRUST business;

(5)    To respond to inquiries from BP PARTIES, LEAD CLASS COUNSEL, the CLAIMS ADMINISTRATOR, the TRUSTEE and the COURT; and

(6)    To execute documents in connection with the performance of the DIRECTED TRUSTEE'S duties under this Section 2.5.

(G)    To the extent the provisions of the SETTLEMENT AGREEMENT or this TRUST AGREEMENT restrict, modify or eliminate the duties and liabilities of the DIRECTED TRUSTEE that would otherwise apply at law, in equity or otherwise, such provisions of the SETTLEMENT AGREEMENT and this TRUST AGREEMENT shall supersede and replace such otherwise applicable duties and liabilities.

2.6    Principal Office. The SETTLEMENT TRUST shall maintain its principal office at such location as the TRUSTEE determines from time to time, in consultation with BP PARTIES and LEAD CLASS COUNSEL.

ARTICLE 3.
TRUSTEE

3.1     Jurisdiction of the Court.  The SETTLEMENT TRUST, the TRUSTEE and the DIRECTED TRUSTEE shall be subject to the continuing jurisdiction and supervision of the COURT.

3.2     Term of Service; Resignation; Removal.  The TRUSTEE and the DIRECTED TRUSTEE shall serve for the duration of the SETTLEMENT TRUST, subject to the incapacity, death, resignation or removal of the TRUSTEE, or dissolution, resignation or removal of the DIRECTED TRUSTEE.  The TRUSTEE or the DIRECTED TRUSTEE may resign by providing at least sixty (60) days' prior written notice of such resignation to BP PARTIES, LEAD CLASS COUNSEL, the COURT, and the TRUSTEE or the DIRECTED TRUSTEE (as the case may be), specifying the date when such resignation shall take effect.  The TRUSTEE may be removed by the COURT.  The DIRECTED TRUSTEE may be removed by joint motion made by BP'S COUNSEL and LEAD CLASS COUNSEL, and granted by the COURT.

3.3     Appointment of Successor Trustee.

(A)     Should the COURT determine at any time that the TRUSTEE or the DIRECTED TRUSTEE needs to be replaced, LEAD CLASS COUNSEL or their designee and BP PARTIES will agree to make a joint recommendation of one or more candidates for appointment by the COURT, as TRUSTEE or as DIRECTED TRUSTEE (as the case may be).  They shall continue the process of joint recommendation as necessary until COURT approval is obtained.

(B)     Immediately upon approval by the COURT of, and acceptance of the office by, any successor TRUSTEE or successor DIRECTED TRUSTEE (as the case may be), all rights, titles, duties, obligations, powers, and authority of the predecessor TRUSTEE or predecessor DIRECTED TRUSTEE (as the case may be) under this TRUST AGREEMENT shall be vested in and undertaken by the successor TRUSTEE or the successor DIRECTED TRUSTEE (as the case may be) without any further act being required.  No successor TRUSTEE or successor DIRECTED TRUSTEE (as the case may be) shall be liable for any act or omission of a predecessor TRUSTEE or predecessor DIRECTED TRUSTEE (as the case may be).

3.4     Compensation and Expenses of Trustee and Directed Trustee.  As set forth in the Undertaking of Patrick Juneau in Furtherance of Court Order Appointing Him Claims Administrator, dated April 9, 2012, the TRUSTEE shall receive reasonable compensation and out-of-pocket costs and expenses related to the performance of the duties described in this TRUST AGREEMENT, in accordance with the terms of the SETTLEMENT AGREEMENT.  As will be set forth in the Joint Retention Agreement with J.P. Morgan Trust Company of Delaware, the DIRECTED TRUSTEE shall receive reasonable compensation related to its performance of its duties described in this TRUST AGREEMENT.

3.5    Limitations on Liability.

(A)    *Limitations on Liability of the Trustee.*  The TRUSTEE shall not be liable for any damages with respect to the TRUSTEE'S actions or omissions regarding the SETTLEMENT TRUST, except for those arising from his intentional or willful misconduct, including fraud.  The TRUSTEE shall not be liable for any damages for any act or omission of any agent or employee of the SETTLEMENT TRUST unless the TRUSTEE acted with intentional or willful misconduct in the selection or ongoing retention of such agent or employee.

(B)    *Limitations on Liability of the Directed Trustee.*  To the fullest extent of the law, including section 3313(b) of Title 12 of the Delaware Code, the DIRECTED TRUSTEE shall incur no liability for any act or failure to act by the TRUSTEE, or for acting on a direction of the TRUSTEE pursuant to Section 2.5 above or with respect to its implementation of any such direction of the TRUSTEE, and the DIRECTED TRUSTEE shall not be liable for any loss resulting from action taken by the TRUSTEE, or taken by the DIRECTED TRUSTEE in accordance with the TRUSTEE'S direction pursuant to Section 2.5 above.  The DIRECTED TRUSTEE shall have no duty to monitor the conduct of the TRUSTEE, provide advice to the TRUSTEE, consult with the TRUSTEE or communicate with, warn or apprise any beneficiary or third party concerning instances in which the DIRECTED TRUSTEE would or might have exercised the DIRECTED TRUSTEE'S own discretion in a manner different from the manner directed by the TRUSTEE.  Furthermore, the DIRECTED TRUSTEE shall have no liability under this TRUST AGREEMENT to any beneficiary of the SETTLEMENT TRUST or any other person whose interest arises under the SETTLEMENT TRUST for the DIRECTED TRUSTEE'S good faith reliance on the provisions of Section 2.5 above or any other provisions of this TRUST AGREEMENT, unless the DIRECTED TRUSTEE has acted with willful misconduct proven by clear and convincing evidence.  The DIRECTED TRUSTEE shall be deemed to have acted within the scope of its respective authority, to have exercised reasonable care, diligence, and prudence, and to have acted impartially as to all interested persons unless the contrary may be proved by clear and convincing evidence.  The DIRECTED TRUSTEE shall not be liable for the acts or defaults of the TRUSTEE or any advisor retained by the TRUSTEE or any other third party.

3.6    Indemnification.

(A)    *Indemnification.*  The SETTLEMENT TRUST shall indemnify, defend and hold harmless the TRUSTEE, the DIRECTED TRUSTEE, any employees of Juneau David, APLC who provide services in support of the TRUSTEE, and any employees, representatives, or agents of the DIRECTED TRUSTEE (collectively, "Indemnitees"), to the full extent lawful, from and against any losses, liabilities, expenses, claims, suits, investigations or proceedings related to or arising out of the appointment of the TRUSTEE or DIRECTED TRUSTEE, or any services performed by the Indemnitees under this TRUST AGREEMENT (collectively, "Losses"), including but not limited to Losses resulting from the Indemnitees' gross negligence, except that the Indemnitees will not be indemnified or held harmless with respect to any Losses that are finally judicially

determined to have resulted solely from the Indemnitees' intentional or willful misconduct, including fraud.

(B)   *Notice.*   If any claim, suit, investigation or proceeding is threatened or commenced as to which any Indemnitee proposes to demand indemnification under this Section 3.6, the Indemnitee will notify BP PARTIES with reasonable promptness, but failure to do so shall not relieve the SETTLEMENT TRUST of any of its obligation to provide indemnification under this Section 3.6 unless BP PARTIES can establish that the delay in receiving such notice actually prejudiced the SETTLEMENT TRUST and then only to the extent of such prejudice.

(C)   *Payment of Expenses.*   Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of an Indemnitee in connection with any action, suit, or proceeding from which the Indemnitee is indemnified by the SETTLEMENT TRUST pursuant to this Section 3.6 shall be paid by the SETTLEMENT TRUST from the ADMINISTRATIVE FUND in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Indemnitee, to repay such amount in the event that it shall be determined ultimately by final order that such Indemnitee is not entitled to be indemnified by the SETTLEMENT TRUST.

(D)   *Insurance.*   The TRUSTEE shall purchase and maintain reasonable amounts and types of insurance on behalf of the SETTLEMENT TRUST, the TRUSTEE, and any individual who is or was an officer, employee, representative, or agent of the TRUSTEE against liability asserted against or incurred by such individual in that capacity or arising from his or her status as an Indemnitee.  Such premiums for insurance related to the SETTLEMENT AGREEMENT are related to this TRUST AGREEMENT and subject to Section 2.4(J) above.

3.7   Bond.  Neither the TRUSTEE nor the DIRECTED TRUSTEE shall be required to post any bond or other form of surety unless otherwise ordered by the COURT.

3.8   Independence.  Any person or entity appointed as TRUSTEE or as DIRECTED TRUSTEE shall be independent of BP PARTIES and LEAD CLASS COUNSEL, except as specifically disclosed and waived by both BP PARTIES and LEAD CLASS COUNSEL, and approved by the COURT.  The TRUSTEE shall not, during the term of its service, act as attorney for BP PARTIES, LEAD CLASS COUNSEL, or any ECONOMIC CLASS MEMBER.

ARTICLE 4.
FINANCIAL MANAGEMENT AND REPORTING

4.1   Management of Trust Estate.  The TRUSTEE shall have the authority to manage and invest the Trust Estate as the TRUSTEE deems advisable to effectuate the purpose of the SETTLEMENT TRUST, subject to the provisions of Section 4.2 below and the terms of the SETTLEMENT AGREEMENT.  The TRUSTEE may, after consultation with BP PARTIES and LEAD CLASS COUNSEL, engage an investment advisor and delegate the TRUSTEE'S investment authority and responsibilities to the investment advisor, and the TRUSTEE shall not be responsible for any loss that might occur from the investment decisions of the investment

advisor unless the TRUSTEE engages in intentional or willful misconduct, including fraud, in connection with its ongoing retention of such investment advisor or violates any provision of this TRUST AGREEMENT or the SETTLEMENT AGREEMENT in connection with any such investment.

4.2    Investments.  Subject to Section 5.12.1.6 of the SETTLEMENT AGREEMENT, the TRUSTEE shall invest the Trust Estate acting as a reasonably prudent fiduciary in a conservative manner designed to assure timely availability of funds, protection of principal and avoidance of concentration risk, subject to the requirements set forth in the SETTLEMENT AGREEMENT. Any income derived from such investments shall be held and used as described in Section 5.12.1.6.3 of the SETTLEMENT AGREEMENT.

4.3    Administrative Expenses and Settlement Payments.  The reasonable and necessary expenses, costs, and expenditures associated with the formation, operation, administration, and termination of the SETTLEMENT TRUST, as provided in the SETTLEMENT AGREEMENT, shall be paid from the ADMINISTRATIVE FUND as ADMINISTRATIVE EXPENSES. Neither the TRUSTEE nor DIRECTED TRUSTEE shall have any liability for the payment of any ADMINISTRATIVE EXPENSES or SETTLEMENT PAYMENTS, except as provided herein.

4.4    Procedures and Controls.  The TRUSTEE and the DIRECTED TRUSTEE (subject to the provisions of Section 2.5 above) shall establish procedures and controls to manage and account for the maintenance and distribution of the Trust Estate held in the FUNDS for the purpose described in Section 1.2 above, and consistent with the duties of the TRUSTEE and the DIRECTED TRUSTEE under this TRUST AGREEMENT and the SETTLEMENT AGREEMENT. BP PARTIES and LEAD CLASS COUNSEL shall have the right to review, and make recommendations regarding improvements to, such procedures and controls.

4.5    Financial Audit.  Beginning on the first January after the EFFECTIVE DATE, and each year thereafter, the TRUSTEE shall cause an audit to be performed by a Certified Public Accountant (engaged as set forth in Section 2.4(E)) upon the financial records of the SETTLEMENT TRUST, which shall reflect amounts received from or on behalf of BP PARTIES in the prior year and payments made in the prior year by the SETTLEMENT TRUST. True and complete copies of all reports resulting from such audits shall be provided to BP PARTIES, LEAD CLASS COUNSEL and the COURT.

4.6    Reporting.  The TRUSTEE shall provide such reports to the COURT, BP PARTIES and LEAD CLASS COUNSEL as are required by the SETTLEMENT AGREEMENT, as well as such other reports as BP PARTIES or LEAD CLASS COUNSEL may reasonably request, or are set forth in this Section 4.6.

(A)    *Reports Requested by the Court.*  The COURT may, in its sole discretion, request reports or information from the TRUSTEE. The TRUSTEE shall be responsible for reporting and providing information to the COURT at such frequency and in such a manner as the COURT directs.

(B)     *Periodic Accounting.*  The TRUSTEE may, in its sole discretion, cause to be prepared an additional periodic accounting of the SETTLEMENT TRUST, including, without limitation, a balance sheet of the SETTLEMENT TRUST, a statement of receipts and disbursements, a statement of profit and loss prepared on an accrual basis, a supplementary schedule of investments and assets, and a statement of significant events.

(C)     *Approval by the Court and Discharge of Liability.*  The TRUSTEE may, after consultation with BP PARTIES and LEAD CLASS COUNSEL, render such periodic accounting to the COURT.  Upon the approval of any periodic accounting by the COURT, and subject to the terms of the order of the COURT granting such approval, the TRUSTEE shall be discharged from any further liability or responsibility as to all matters disclosed in such periodic accounting, and no action arising out of any matter disclosed in such periodic accounting may be brought against the TRUSTEE.

## ARTICLE 5.
## TAX MATTERS

5.1     Administrator.     The TRUSTEE shall serve as the "administrator" of the SETTLEMENT TRUST within the meaning of Treasury Regulation section 1.468B-2(k)(3) and shall be responsible for the undertakings specified in the regulations promulgated under section 468B of the Code, including, but not limited to, the obtaining of an employer identification number for the SETTLEMENT TRUST, the filing of all required federal, state or local tax and information returns, any required withholding of tax, the payment of any federal, state or local taxes (including estimated taxes) and associated tax-related penalties and interest for which the SETTLEMENT TRUST may be liable, responding to any questions from or audits regarding such taxes by the Internal Revenue Service or any state or local tax authority, compliance with any other tax-related requirements, as well as responding to questions from the Department of Labor.

5.2     Taxable Year and Accounting Method.  The taxable year of the SETTLEMENT TRUST shall be the calendar year.  The SETTLEMENT TRUST shall use an accrual method of accounting within the meaning of section 446(c) of the Code.

5.3     Relation-Back Election.  BP PARTIES and the TRUSTEE may join in the filing of a "relation-back election" within the meaning of Treasury Regulation section 1.468B-1(j)(2) with respect to the SETTLEMENT TRUST, where both BP PARTIES and the TRUSTEE determine that doing so is in the best interests of the SETTLEMENT TRUST.  Where such decision is made, the TRUSTEE and BP PARTIES agree to comply with all of the requirements contained in Treasury Regulation section 1.468B-1(j)(2) that apply to such election.

## ARTICLE 6.
## TERMINATION AND WINDING UP

6.1   Termination.   The SETTLEMENT TRUST shall terminate upon termination of the SETTLEMENT AGREEMENT pursuant to Section 21 of the SETTLEMENT AGREEMENT, or upon order of the COURT.

6.2   Winding Up and Disbursement of Remaining Funds.   The TRUSTEE shall wind up the affairs of the SETTLEMENT TRUST following its termination in accordance with Section 6.1 above.  BP PARTIES shall have a reversionary interest in the FUNDS as described in the SETTLEMENT AGREEMENT.

## ARTICLE 7.
## GENERAL PROVISIONS

7.1   Irrevocability.   The SETTLEMENT TRUST shall be irrevocable. Notwithstanding the foregoing, the TRUSTEE may, after consultation with BP PARTIES and LEAD CLASS COUNSEL, apply to the COURT to modify the administrative or distributive provisions of the SETTLEMENT TRUST where as a result of unanticipated circumstances, the purpose of the SETTLEMENT TRUST cannot be achieved absent such modifications. Notwithstanding the foregoing, this TRUST AGREEMENT shall not be amended in any manner that increases any obligation of BP PARTIES, the TRUSTEE or the DIRECTED TRUSTEE without their respective written consents; that reduces the benefits provided pursuant to the SETTLEMENT AGREEMENT to the ECONOMIC AND PROPERTY DAMAGES SETTLEMENT CLASS, the ECONOMIC CLASS MEMBERS or the ECONOMIC CLASS REPRESENTATIVES; that reduces the reversionary interest BP PARTIES have in FUNDS pursuant to the SETTLEMENT AGREEMENT; or that adversely affects the treatment of the SETTLEMENT TRUST as a qualified settlement fund.

7.2   Successors and Assigns.   The provisions of this TRUST AGREEMENT shall be binding upon and inure to the benefit of BP PARTIES, LEAD CLASS COUNSEL, the CLAIMS ADMINISTRATOR, the TRUSTEE and the DIRECTED TRUSTEE, and their respective successors and permitted assigns, and any benefits to such TRUST AGREEMENT and SETTLEMENT AGREEMENT shall inure to the benefit of the ECONOMIC AND PROPERTY DAMAGES SETTLEMENT CLASS, ECONOMIC CLASS MEMBERS and the ECONOMIC CLASS REPRESENTATIVES and their respective successors and permitted assigns.

7.3   Conflict with Settlement Agreement.   In the event of any conflict between the terms of this TRUST AGREEMENT and the terms of the SETTLEMENT AGREEMENT, the terms of the SETTLEMENT AGREEMENT shall control.

7.4   Notices.   All notices required by the SETTLEMENT TRUST shall be sent by overnight delivery and electronic mail.

If to BP PARTIES:

> Richard C. Godfrey, P.C.
> Attn: Deepwater Horizon Economic Settlement Trust
> Kirkland & Ellis LLP
> 300 North LaSalle Street
> Chicago, IL 60654
> rgodfrey@kirkland.com
>
> R. Keith Jarrett
> Attn: Deepwater Horizon Economic Settlement Trust
> Liskow & Lewis
> Suite 5000, One Shell Square
> 701 Poydras Street
> New Orleans, LA 70139
> rkjarrett@liskow.com

If to LEAD CLASS COUNSEL:

> Stephen J. Herman
> Attn: Deepwater Horizon Economic Settlement Trust
> Herman, Herman, Katz & Cotlar LLP
> 820 O'Keefe Avenue
> New Orleans, LA 70113
> Sherman@hhkc.com
>
> James P. Roy
> Attn: Deepwater Horizon Economic Settlement Trust
> Domengeaux Wright Roy & Edwards, LLC
> 556 Jefferson Street, Suite 500
> P.O. Box 3668
> Lafayette, LA 70501
> jimr@wrightroy.com

If to the SETTLEMENT TRUST or TRUSTEE:

> Deepwater Horizon Economic Settlement Trust
> Patrick Juneau, Trustee
> Juneau David, APLC
> 1018 Harding Street, Suite 202
> Lafayette, LA 70503
> paj@juneaudavid.com

If to the DIRECTED TRUSTEE:

>James H. Gavin III
>Attn:  Deepwater Horizon Economic Settlement Trust
>J.P. Morgan Trust Company of Delaware
>500 Stanton Christiana Road, CC Commons
>North/South, Floor 2
>Newark, Delaware 19713-2107
>james.h.gavin@jpmorgan.com

7.5     Severability.  Should any provision of this TRUST AGREEMENT be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this TRUST AGREEMENT.

7.6     Headings, Gender and Number.   The headings used in this TRUST AGREEMENT are inserted for convenience only and shall not affect the construction of any provisions of this TRUST AGREEMENT.  Reference in this TRUST AGREEMENT to any gender includes either masculine or feminine, as appropriate, and reference to any number includes both singular and plural where the context permits or requires.

7.7     Counterparts; Facsimile Signature.  This TRUST AGREEMENT may be executed in counterparts, and a facsimile signature shall be deemed an original signature for purposes of this TRUST AGREEMENT.

7.8     Governing Law.  This TRUST AGREEMENT creates a Delaware trust and all matters pertaining to its validity, construction and trust administration shall be determined, governed by, construed, and enforced according to the laws of the State of Delaware (without application of the principles of conflict of law thereof), except that all matters of federal tax law and the SETTLEMENT TRUST'S compliance with section 468B of the Code and the Treasury Regulations promulgated thereunder shall be governed by federal income tax law.

7.9     Jurisdiction and Venue.  The Trust Agreement Parties submit to the continuing and exclusive jurisdiction of the COURT for purposes of any suit, action or proceeding seeking to interpret or enforce any provision of, or based on any right arising out of, this TRUST AGREEMENT, and the Trust Agreement Parties agree not to commence any such suit, action or proceeding except in the COURT; provided, however, that J.P. Morgan Trust Company of Delaware accepts jurisdiction of the COURT for purposes of this TRUST AGREEMENT.  The Trust Agreement Parties waive any objection to the laying of venue of any such suit, action or proceeding in the COURT and further waive and agree not to plead or claim in the COURT that any such suit, action or proceeding has been brought in an inconvenient forum.

7.10     Entire Agreement; No Waiver.   This TRUST AGREEMENT and the SETTLEMENT AGREEMENT together contain the entire agreement of the Trust Agreement Parties relating to the subject matter of this TRUST AGREEMENT, and other than the SETTLEMENT AGREEMENT, this TRUST AGREEMENT supersedes any prior oral or written agreements concerning the subject matter hereof.  No failure to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver thereof; nor shall

any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof or of any other right, power, or privilege.  The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

[*Remainder of page intentionally left blank; signature page follows.*]

IN WITNESS WHEREOF, this eighteen (18) page TRUST AGREEMENT has been executed by BP Exploration & Production Inc. and BP America Production Company as Settlors, LEAD CLASS COUNSEL, TRUSTEE and DIRECTED TRUSTEE, all as of the date indicated on the cover page above.

**Settlors**

BP Exploration & Production Inc.

By: _____
      Geir Robinson, Vice President

BP America Production Company

By: _____
      Geir Robinson, Vice President

**LEAD CLASS COUNSEL**

By: _____
      Stephen J. Herman

By: _____
      James P. Roy

**TRUSTEE and CLAIMS ADMINISTRATOR**

Patrick Juneau

By: _____
      Patrick Juneau

**DIRECTED TRUSTEE**

J.P. Morgan Trust Company of Delaware

By: _____
      James H. Gavin III

IN WITNESS WHEREOF, this eighteen (18) page TRUST AGREEMENT has been executed by BP Exploration & Production Inc. and BP America Production Company as Settlors, LEAD CLASS COUNSEL, TRUSTEE and DIRECTED TRUSTEE, all as of the date indicated on the cover page above.

**Settlors**

BP Exploration & Production Inc.

By: _____
    Geir Robinson, Vice President


BP America Production Company

By: _____
    Geir Robinson, Vice President


LEAD CLASS COUNSEL

By: _____
    Stephen J. Herman

By: _____
    James P. Roy


**TRUSTEE and CLAIMS ADMINISTRATOR**

Patrick Juneau

By: _____
    Patrick Juneau


**DIRECTED TRUSTEE**

J.P. Morgan Trust Company of Delaware

By: _____
    James H. Gavin III


- 18 -

IN WITNESS WHEREOF, this eighteen (18) page TRUST AGREEMENT has been executed by BP Exploration & Production Inc. and BP America Production Company as Settlors, LEAD CLASS COUNSEL, TRUSTEE and DIRECTED TRUSTEE, all as of the date indicated on the cover page above.

**Settlors**

BP Exploration & Production Inc.

By: _____
    Geir Robinson, Vice President


BP America Production Company

By: _____
    Geir Robinson, Vice President


**LEAD CLASS COUNSEL**

By: _____
    Stephen J. Herman

By: _____
    James P. Roy


**TRUSTEE and CLAIMS ADMINISTRATOR**

Patrick Juneau

By: _____
    Patrick Juneau


**DIRECTED TRUSTEE**

J.P. Morgan Trust Company of Delaware

By: _____
    James H. Gavin III

IN WITNESS WHEREOF, this eighteen (18) page TRUST AGREEMENT has been executed by BP Exploration & Production Inc. and BP America Production Company as Settlors, LEAD CLASS COUNSEL, TRUSTEE and DIRECTED TRUSTEE, all as of the date indicated on the cover page above.

**Settlors**

BP Exploration & Production Inc.

By: _____
    Geir Robinson, Vice President

BP America Production Company

By: _____
    Geir Robinson, Vice President

**LEAD CLASS COUNSEL**

By: _____
    Stephen J. Herman

By: _____
    James P. Roy

**TRUSTEE and CLAIMS ADMINISTRATOR**

Patrick Juneau

By: _____
    Patrick Juneau

**DIRECTED TRUSTEE**

J.P. Morgan Trust Company of Delaware

By: _____
    James H. Gavin III