BP's Memorandum in Support of Motion for Final Approval

August 13, 2012

Doc. 7114-1

| Page | Text |
|---|---|
| 2 | BP also voluntarily assumed the payment of *all compensatory damages* for class members, despite the significant -- indeed substantial -- causal role of other defendants in the incident.  …this settlement's excruciatingly detailed negotiations… |
| 5 | Settlement Negotiations:  …more than 145 days of face-to-face meetings as well as numerous phone calls and WebEX conferences. |
| 6 | Without regard to total payout figures the parties negotiated claims frameworks, programs, and processes including details such as:  (1) what categories of claims would be paid; (2) What types of proof would be required for claimants to receive the Settlement payment; (3) Whether certain claimants should be permitted to benefit from causation presumptions, that BP was willing to accept for settlement purposes; and (4) How Settlement benefits would be calculated.  The negotiations were thus exclusively focused, from the outset, on producing claim frameworks that could be administered fairly, objectively, and consistently.  During this process, PSC and other counsel most familiar with each type of claim advised the negotiators to ensure that the frameworks reflected and were reasonably designed to address the actual situations faced by the claimants falling within each category. |
| 11 | [Discussing the Class Definition:]  Also simplifying this case is the fact that the class definition carefully excludes remote claimants…This deliberately narrow definition of the class…ensures that this class action will remain compact and that class members will be similarly situated (and hence more cohesive). |
| 11 | [Miller Declaration Ex. 15, paragraph 13:]  Among the most important structural features in this settlement is the class definition, which clearly and objectively defines the class in terms of time period, geographic region, and type of claim |
| 11 | *Third*, the class definition takes pains to specify a list of exclusions, for two reasons:  (1) To exclude claims that BP does not believe are even colorably compensable under OPA or maritime law; and (2) To avoid the inclusion of claims that could not be efficiently resolved by a <u>definable</u> and administrable claims framework. |
| 12 | Like any settlement, the settlement that has been reached to resolve this litigation is "a compromise, a yielding of the highest hopes in exchange for certainty and resolution."<br><br>The Settlement stands alone, however, in its substantive generosity to the Class Members in its procedural fairness. |

| 19 | [Richardson Declaration Ex. 6, paragraph 60:] Concluding that the Settlement is "sufficiently simple so that an unreasonable burden is not levied against claimants in filing their claims." |
|---|---|
| 24 | The formulas were negotiated at length by "the Party's counsel, assisted and informed by experts and colleagues with specialized knowledge of various aspects of the litigation and the array of claims categories." These experts, who included economists, accountants, and real estate experts, among others, analyzed and responded to questions posed by both BP and the PSC throughout the negotiation process. |
| 25 | This method of compensation is designed to assess loss that individuals suffered as a result of the Spill. |
| 26 | Discusses Causation Presumption as rational and supported by economic logic. |
| 29 | The Business Economic Damage claimants will be compensated under the settlement for post-spill losses of earnings and profits as with the individual framework. The goal of the business framework is to fairly compensate businesses for their losses suffered as a result of the Spill; It "uses the well-recognized approach of measuring lost, earnings or profits by comparison of the post-DWH Spill Compensation Period to a Benchmark Period…The Framework methodologies generally used pre-Spill benchmark period earnings or revenue data to project expected earnings or revenue in the post-Spill May-December 2010 period, taking into account any reasonably anticipated growth in revenue." |
| 30 | The compensation calculation in the Settlement Agreement for Business Economic Loss Claims is divided into two steps: Step 1 provides compensation for the reduction in variable profit between the Compensation Period and the Benchmark Period. Step 2 provides compensation for increased profits expected to be generated in 2010 but for the Spill. |
| 33 | ….in many ways the causation principles are remarkably favorable to claimants. *See, e.g.*, Sharp Decl. (Ex. 18) ¶ 17 ("[O]nce a business meets the causation requirements, for purposes of quantifying compensation, all revenue and variable profit declines during the claimant-selected compensation period are presumed to be caused by the spill, with no analysis required to determine whether the declines might have been due, at least in part, to other causes."). |