

# MEMORANDUM

**TO:**       **Class Counsel**
              **BP**

**FROM:**     **Patrick A. Juneau, Claims Administrator**

**DATE:**     **September 25, 2012**

**RE:**       **Announcement of Policy Decisions Regarding Claims Administration**

---

      Under the terms of the Deepwater Horizon Economic and Property Damages Settlement Agreement ("Settlement Agreement"), the Claims Administrator is charged with the duty to "faithfully implement and administer the Settlement, according to its terms and procedures, for the benefit of the Economic Class, consistent with this Agreement, and/or as agreed to by the Parties and/or as approved by the Court."  (Section 4.3.1 of the Settlement Agreement).  Further, the Claims Administrator is charged with the responsibility to "work with Economic Class Members . . . to facilitate . . . assembly and submission of Claims Forms, including all supporting documentation necessary to process Claims Forms under the applicable Claims Processes . . . [and to] provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of this Agreement."  (Section 4.3.7 of the Settlement Agreement).

      In furtherance of these responsibilities, the Claims Administrator advises the Parties of the following interpretations of the Settlement Agreement and procedures/policies to be implemented to promote the efficient and timely administration of claims in compliance with the terms of the Settlement Agreement.

      **1.**     ***"Alternate Source Documents" for Revenues and Expenses of Business Economic Loss Claimants.***  Pursuant to Section 4 of Exhibit 4A to the Settlement Agreement, the Claims Administrator has adopted the following interpretations of the Settlement Agreement with regard to the documents required to establish monthly revenues and expenses for the claimed Benchmark Period, 2010, and, if applicable, 2011:

      (a) *Monthly Allocations of Revenues/Expenses:*  If the claimant has submitted documents sufficient to determine the annual revenues and expenses of the business for a year, but no monthly profit and loss statements or other documents showing revenues and expenses by month for that year are available, the Claims Administrator may allocate the total annual revenues and expenses equally over the 12 months or use alternative

414015



methods or documents to allocate the amounts over the 12 months. The reviewing accountants will use their professional judgment to determine the most appropriate means for such allocation under the circumstances of a particular claim. The claimant may be required to submit monthly profit and loss statements or other monthly documents for the year if the Claims Administrator in his discretion determines a need for such documents to resolve questions presented by a particular claim.

(b) *Monthly Allocations of Owner and Officer Payroll:* If the claimant has not submitted documents showing the amounts paid monthly as salary or otherwise to owners and officers during a year, the Claims Administrator may allocate the income shown on the owner's or officer's W-2 annual statement and/or tax return for that year equally over 12 months or use alternative methods or documents to allocate the amounts over the 12 months. The reviewing accountants will use their professional judgment to determine the most appropriate means for such allocation under the circumstances of a particular claim. The claimant may be required to submit monthly profit and loss statements or other documents showing those amounts on a monthly basis if the Claims Administrator in his discretion determines a need for such documents to resolve questions presented by a particular claim.

(c) *Restatement of Profit and Loss Statements:* If the claimant's profit and loss statements for a year were prepared on an accrual basis, the claimant will not be permitted to restate such statements on a cash basis in connection with the submission of a Business Economic Loss claim, for such restatement could result in a loss or a greater loss not related to the Spill but instead as a result only of the timing of cash received. If the claimant's profit and loss statements for a year were prepared on a cash basis, the claimant may be permitted to restate such statements on an accrual basis in connection with the submission of a Business Economic Loss claim.

2.    *Reconciliation of Financial Information of Business Economic Loss Claimants.* Pursuant to Section 4 of Exhibit 4A to the Settlement Agreement, the Claims Administrator may, in his discretion, request additional information or documentation to address discrepancies between amounts reflected in a tax return and comparable items in a profit and loss statement for the same period. Reconciliation of tax returns and profit and loss statements may be performed as deemed most appropriate by the reviewing accountants in the exercise of their professional judgment and given the circumstances of any particular claim, whether at the revenue level only or otherwise.

3.    *Start-Up Businesses and 2012 Tax Returns.* The Claims Administrator interprets Paragraph 3 of Exhibit 4A *not* to include any requirement that Start Up Business Claimants produce 2012 tax returns unless, in his discretion, the Claims Administrator determines a need for such documents to resolve questions presented by a particular claim. The use of 2012 tax returns would be of very limited use when compared to financial statements for only a part of 2012, which by definition, is what any Benchmark Period for 2012 would be. Further, the language of footnotes 2 and 3 as well as the body of Section 3 of Exhibit 4A suggest that 2012 tax returns fall outside the scope of those tax returns that are required. The Claims

414015



Administrator reserves the right to require such documents if in his discretion he determines a need for them to address questions presented by a particular claim.

    4.    *Prior Spill-Related Payments to Seafood Program Claimants.*  With regard to the requirement under the Seafood Program concerning submission of a sworn written statement establishing the amount of any prior Spill-related payments to the claimant, the Claims Administrator will consider the data transferred to the Claims Administrator by the Gulf Coast Claims Facility as the equivalent of the required sworn statement and will not require submission of additional documents on this issue, unless the Claims Administrator in his discretion determines a need for an additional statement and/or documents to resolve questions presented by a particular claim.

    5.    *Sworn Written Statement of Causation for Individual Economic Loss Claimants.*  At this time, the Claims Administrator has determined to continue to require Individual Economic Loss claimants as to whom causation is not presumed to supply an Employer Sworn Written Statement from the claimant's employer attributing the claimant's loss of income during the Compensation Period to the DWH Spill.

    6.    *Total Income of Individual Periodic Vendor or Festival Vendor Claimants.*  At this time, the Claims Administrator has determined to continue to require Individual Periodic Vendor and Festival Vendor claimants to submit documents showing the claimant's total income in 2009 and 2010.

    7.    *Retail and Lodging Information.*  Though the Claims Administrator believes that the following documents do not aid in the process of properly evaluating Business Economic Loss claims and thus are not necessary to process Claim Forms under the applicable Claims Processes, the Claims Administrator interprets the language of Section 5 of Exhibit 4A of the Settlement Agreement to be mandatory, requiring the claimant to produce these documents absent mutual agreement of the Parties to the contrary or unless and until the Court directs otherwise:

    (a) Monthly sales and use tax returns;

    (b) For claimants in the lodging industry, lodging tax returns or occupancy reports or historical rental records; and

    (c) For claimants in the lodging industry, documentation to identify how the property is managed (though for claimants with claims based on vacation rental properties, documentation to identify how the property is managed would likely be useful in any event).

    8.    *Sworn Statement on the Absence of Tax Information Documents or Pay Period Earnings Documentation.*  To facilitate the processing of Individual Economic Loss claims, the Claims Administrator believes that the requirements in Exhibit 8A that claimants submit sworn statements regarding the absence of Tax Returns or Pay Period Earnings Documentation do not

3

414015



aid in the process of properly evaluating Business Economic Loss claims and thus are not necessary to process Claim Forms under the applicable Claims Processes. However, the Claims Administrator interprets the language of Exhibit 8A of the Settlement Agreement to be mandatory in this regard, requiring the claimant to produce either the missing records or the sworn statement, absent mutual agreement of the Parties to the contrary or unless and until the Court directs otherwise.

9. *Specific Dollar Amount Removed from the Individual Release.* The Claims Administrator believes that replacing the specific dollar amount recited in Section 2 of the Individual Release with a general statement of consideration would enhance the efficiency of the administration of claims under the Settlement Agreement and would reduce the confusion experienced by claimants with more than one claim who are asked to sign a Release stating a payable amount based on only one claim. However, the Claims Administrator interprets the language of Section 4.4.10.2 to mandate the use of the Release "set forth in Exhibit 26," which requires the insertion in Section 2 of a dollar amount, absent mutual agreement of the Parties to the contrary or unless and until the Court directs otherwise.

10. *Joint Ownership Issues on Seafood Program Claims.* In any instance where the Claims Information on a particular Seafood Program claim indicates more than one owner or lessee of a vessel or oyster leasehold, or more than one owner of an IFQ, and the Claims Information available on the claim does not permit the Claims Administrator to determine with reasonable certainty the percentage of the claimant's ownership or lease interest, the Claims Administrator will require the claimant to submit a Sworn Written Statement indicating the percentage of the claimant's ownership or lease interest. The Claims Administrator will award such claimant, if otherwise eligible, a corresponding percentage of the compensation payable as to such vessel, oyster leasehold, or IFQ.

11. *Exclusion of a Benchmark Year for Seafood Program Claimants.* In any instance in which Exhibit 10 permits a Seafood Program claimant to request that the Claims Administrator exclude one or more years of the Benchmark Period from the compensation calculation if the claimant earned less-than-normal revenue for the year(s) identified because the claimant could not fish "at the same level of effort . . . due to circumstances beyond the claimant's control," the Claims Administrator will apply the following rules:

(a) The Claims Administrator will grant such an exclusion request for one year, unless the Claim Information available on the claim establishes to a reasonable degree of certainty that the circumstances causing the reduced level of fishing effort were primarily within the claimant's control and reflected a voluntary absence from seafood harvesting without good cause.

(b) If the claimant requests to exclude more than one year from the claimant's Benchmark Period, the claimant must submit documents that establish to a reasonable degree of certainty circumstances causing the claimant's absence from seafood harvesting during the second or later year that were beyond the claimant's control. Such circumstances justifying an absence from seafood harvesting include:

414015



    (1) Medical Conditions:  The claimant's temporary or permanent medical incapacity or disability resulting from physical or mental illness or injury that prevented seafood harvesting activity;

    (2) Major Mechanical Failure:  The claimant experienced the cessation of normal functioning of seafood harvesting vessels and/or equipment that (a) posed a substantial risk to the safety of the operator if not remediated or (b) prevented seafood harvesting activity if not remediated (excluding voluntary mechanical upgrades, cosmetic improvements, or other non-essential restorative efforts);

    (3) Medical Leave:  The claimant was engaged in activity that would entitle an employee to leave under Section 102 of The Family Medical Leave Act; and

    (4) Other Circumstances:  Such other circumstances that the Claims Administrator deems constitute justifiable excuse for absence from seafood harvesting.

    **12.** *Reliance Upon Available Data for Allocation Required in the Seafood Program.* On any claim in the Seafood Program where the Claims Administrator is required to allocate the claimant's revenue by catch type, vessel and landing location, interpreting and applying the language in Exhibit 10 that the claimant must provide "sufficient information" for the Claims Administrator to make such allocation, the Claims Administrator will use the information available on the claim in the following hierarchy of proof, as sufficient to satisfy the proof requirements of Exhibit 10 to the Settlement Agreement:

    (a) If the claimant has submitted federal or state tax returns with supporting documents for the Benchmark Period and the Claims Administrator can determine from the Claim Form or other information available on the claim that the claimant is submitting a claim for only one vessel and one catch type, the Claims Administrator will allocate the revenues from the claimant's tax returns to the one type of catch asserted on the Claim Form, unless documents submitted by the claimant indicate that the revenues reported in the tax returns are not solely related to harvesting the catch type claimed.

    (b) If the claimant is not subject to (a) and has submitted a signed Sworn Written Statement (SWS-1) to allocate the claimant's Benchmark Period revenues shown in tax returns and has indicated in the SWS-1 that the Claims Administrator may rely only on the SWS-1 for such allocation, the Claims Administrator will use the SWS-1 allocation and will not consider trip tickets or other documents for that purpose.

    (c) If the claimant is not subject to (a) or (b) and the Claims Administrator is able to determine the claimant's Benchmark Period revenues using the trip ticket data received by the Claims Administrator from the Louisiana Department of Wildlife and Fisheries, the Claims Administrator will rely on such data to determine such revenues

414015



and their allocation by vessel and catch type and will not consider trip tickets other document for that purpose.

(d) If the Claimant is not subject to (a), (b) or (c), the Claims Administrator will determine the claimant's Benchmark Period revenues and their allocation using trip tickets or their equivalent.

**13.** *Determination of an Excluded Real Estate Developer.*  For purposes of determining those who are excluded from the Class as a Real Estate Developer under Section 2.2.4.7 of the Settlement Agreement, the Claims Administrator interprets the Settlement Agreement to exclude those persons or entities whose primary business is real estate development.  In accord with Exhibit 18 of the Settlement Agreement, the Claims Administrator's determination will be based upon his review of (a) the claimant's 2010 tax return, (b) 2010 business permits or license(s), and/or (c) other evidence of the relevant business's or individual's activities as determined relevant under the circumstances of a particular claim. The Claims Administrator will apply a revenue-based test as follows:

(a) If 50% or more of the claimant's revenues in 2010 were derived from the development of commercial, residential or industrial properties, the claimant will be considered to be a Real Estate Developer excluded from the Settlement Agreement.

(b) If less than 50% of the claimant's revenues in 2010 were derived from the development of commercial, residential or industrial properties, the claimant will not be considered to be a Real Estate Developer excluded from the Settlement Agreement.

(c) Where the information available on the claim of an Individual Economic Loss claimant suggests that the claimant's employer in 2010 was a Real Estate Developer, the Claims Administrator will contact the claimant and determine on a case-by-case basis the appropriate measures to obtain sufficient information and/or documents regarding the claimant's employer as outlined above.

414015