

# MEMORANDUM

TO:   Class Counsel
      BP

FROM:   Patrick A. Juneau, Claims Administrator

DATE:   October 8, 2012

RE:   Revisions to or Clarifications of Selected Policy Decisions Following the October 1, 2012 Panel Meeting

_____

       A Claims Administration Panel meeting was conducted on October 1, 2012, to discuss various of the items set out in the Claims Administrator's September 25, 2012 memorandum, announcing certain policy decisions. In light of the discussion at that Panel meeting, the Claims Administrator sets forth the following clarifications and/or revisions to certain of the issues addressed in his September 25, 2012 memorandum. This memorandum addresses only certain of the policies identified in the September 25, 2012 memorandum. To the extent that any other issues are not addressed herein, the Claims Administrator's policies remain the same as they were announced in the September 25, 2012 memorandum.

1. *"Alternate Source Documents" for Revenues and Expenses of Business Economic Loss Claimants:* Pursuant to Section 4 of Exhibit 4A to the Settlement Agreement, the Claims Administrator has adopted the following interpretations of the Settlement Agreement with regard to the documents required to establish monthly revenues and expenses for the claimed Benchmark Period, 2010 and, if applicable, 2011:

    (a) *Monthly Allocations of Revenues/Expenses:* If the claimant has submitted documents sufficient to determine the annual revenues and expenses of the business for a year, but no monthly profit and loss statements or other documents showing revenues and expenses by month for that year are available, the Claims Administrator may allocate the total annual revenues and expenses equally over the 12 months, or use alternative methods or documents to allocate the amounts over the 12 months. The reviewing accountants will use their professional judgment to determine the most appropriate means for such allocation under the circumstances of a particular claim. The claimant may be required to submit monthly profit and loss statements or other monthly documents for the year if the Claims Administrator in his discretion determines a need for such documents to resolve questions presented by a particular claim. This policy statement refers only to calculations regarding the proper amount of an award for a given claim. This policy statement does not apply to application of causation requirements set

1




out in the Settlement Agreement. For purposes of satisfying causation requirements, a claimant is to provide "monthly and annual profit and loss statements (which identify individual expense line items and revenue categories), or alternate source documents establishing monthly revenues and expenses for the claimed Benchmark Period, 2010, and if applicable, 2011." (Exhibit 4A, Sec. 4).

(b) *Monthly Allocations of Owner and Officer Payroll*: If the claimant has not submitted documents showing the amounts paid monthly as salary or otherwise to owners and officers during a year, the Claims Administrator may allocate the income shown on the owner's or officer's W-2 annual statement and/or tax return for that year equally over 12 months, or use alternative methods or documents to allocate the amounts over the 12 months. The reviewing accountants will use their professional judgment to determine the most appropriate means for such allocation under the circumstances of a particular claim. The claimant may be required to submit monthly profit and loss statements or other documents showing those amounts on a monthly basis if the Claims Administrator in his discretion determines a need for such documents to resolve questions presented by a particular claim. This policy statement refers only to calculations regarding the proper amount of an award for a given claim. This policy statement does not apply to application of causation requirements set out in the Settlement Agreement. For purposes of satisfying causation requirements, a claimant is to provide "monthly and annual profit and loss statements (which identify individual expense line items and revenue categories), or alternate source documents establishing monthly revenues and expenses for the claimed Benchmark Period, 2010, and if applicable, 2011." (Exhibit 4A, Sec. 4).

(c) *Restatement of Profit and Loss Statements:* If the claimant's profit and loss statements for a year were prepared on an accrual basis, the claimant will not be permitted to restate such statements on a cash basis in connection with the submission of a Business Economic Loss claim, for such restatement could result in a loss or a greater loss not related to the Spill but instead is a result only of the timing of cash received. If the claimant's profit and loss statements for a year were prepared on a cash basis, the claimant may be permitted to restate such statements on an accrual basis in connection with the submission of a Business Economic Loss.

11. ***Exclusion of a Benchmark Year for Seafood Program Claimants.*** In any instance in which Exhibit 10 permits a Seafood Program claimant to request that the Claims Administrator exclude one or more years of the Benchmark Period from the compensation calculation if the claimant earned less-than-normal revenue for the year(s) identified because the claimant could not fish "at the same level of effort . . . due to circumstances beyond the claimant's control," the Claims Administrator will consider each request on a case-by-case basis to determine: (1) whether the circumstances presented justified the claimant's absence from seafood harvesting exclusion for one or more years of the



Benchmark Period; and (2) the level of proof required to establish such justification.

12. **Reliance Upon Available Data for Benchmark Revenue Allocation Required in the Seafood Program.** On any claim in the Seafood Program where the Claims Administrator is required to allocate the claimant's Benchmark Period revenue by catch type, vessel and landing location, interpreting and applying the language in Exhibit 10 that the claimant must provide "sufficient information" for the Claims Administrator to make such allocation, the Claims Administrator will use the information available on the claim in the following hierarchy of proof, as sufficient to satisfy the proof requirements of Exhibit 10 to the Settlement Agreement:

   **(a) Single Catch/Single Vessel Claimants:** If the claimant has submitted tax returns with supporting documents for the Benchmark Period and the Claims Administrator can determine from the Claim Form or other information available on the claim that the claimant is submitting a claim for only one vessel and one catch type:

   (1) The Claims Administrator will allocate the revenues from the claimant's tax returns to the one type of catch asserted on the Claim Form, subject to the following.

   (2) The revenues shall be limited to those shown in the applicable tax returns.

   (3) The Claims Administrator will not enter or compute all information regarding trip tickets or their equivalent for the claimant, but will survey the documents available on the claim to note information that conflicts with the allocation assertions in the Claim Form. If such conflict arises, the Claims Administrator will notify the claimant to resolve the issue or take such other steps as are necessary to determine the correct allocation on the claim.

   **(b) SWS-1 Claimants:** If the claimant is not subject to Subsection (a) and has submitted a signed Sworn Written Statement (SWS-1) to allocate the claimant's Benchmark Period revenues shown in tax returns:

   (1) If the claimant has indicated in the SWS-1 that the Claims Administrator may rely only on the SWS-1 for such allocation:

   a) The Claims Administrator will rely upon the SWS-1 allocation and will not consider trip tickets or other documents for that purpose, subject to the following.

   b) The revenues shall be limited to those shown in the applicable tax returns.

414015



c) The Claims Administrator will not enter or compute all information regarding trip tickets or their equivalent for the claimant, but will survey the documents available on the claim to note information that conflicts with the assertions in the SWS-1. If such conflict arises, the Claims Administrator will notify the claimant to resolve the issue or take such other steps as are necessary to determine the correct allocation on the claim.

(2) If the claimant has indicated in the SWS-1 that the Claims Administrator is to use the claimant's trip ticket allocations if they result in a higher award than the SWS-1 allocation:

a) The Claims Administrator will determine the claimant's trip ticket allocation under Subsections (c) or (d) below and will compare the resulting award to that determined using the SWS-1 allocation. The Claims Administrator will base the resulting Eligibility Notice on the higher award.

b) If the award is based upon the SWS-1 allocation, the revenues shall be limited to those shown in the applicable tax returns.

**(c) Louisiana Trip Ticket Database:** If the claimant is not subject to Subsections (a) or (b) and the Claims Administrator is able to determine the claimant's Benchmark Period revenues using the trip ticket data received by the Claims Administrator from the Louisiana Department of Wildlife and Fisheries, the Claims Administrator will rely on such data to determine such revenues and their allocation by vessel and catch type and will not consider trip tickets other document for that purpose. The Claims Administrator will not consider tax return revenues on such claims.

**(d) Specific Trip Tickets or Equivalent:** If the Claimant is not subject to Subsections (a), (b) or (c), the Claims Administrator will determine the claimant's Benchmark Period revenues and their allocation using trip tickets or their equivalent.

13. ***Determination of an Excluded Real Estate Developer.*** At the October 1, 2012 Claims Administration Panel meeting, the Parties confirmed their mutual intent in terms of defining a Real Estate Developer under Section 2.2.4.7 of the Settlement Agreement. The Parties voiced agreement on this issue. Based upon that agreement as confirmed by both Class Counsel and BP at the October 1, 2012 panel meeting, the Claims Administrator shall consider a Real Estate Developer to be any person or entity involved in the business of real estate development to any extent during the year 2010. In accord with Exhibit 18 of the Settlement Agreement, the Claims Administrator's determination will be based upon his review of (a) the claimant's 2010 tax return, (b) 2010 business permits or license(s), and/or (c) other evidence of the relevant business's or individual's activities as determined relevant under the

414015



circumstances of a particular claim, including the revenues and expenses of the business during 2010.  Where the information available on the claim of an Individual Economic Loss claimant suggests that the claimant's employer in 2010 was a Real Estate Developer, the Claims Administrator will contact the claimant and determine on a case-by-case basis the appropriate measures to obtain sufficient information and/or documents regarding the claimant's employer to permit the Claims Administrator to make the necessary analysis of the employer's operations in 2010.

414015