## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG | § | MDL No. 2179 |
| "DEEPWATER HORIZON" | § | |
| in the GULF OF MEXICO, | § | |
| on APRIL 20, 2010 | § | SECTION: J |
| | § | |
| | § | |
| This Document Relates To: | § | Judge Carl J. Barbier |
| *All Cases* | § | Magistrate Judge Sally Shushan |
| *2:10-cv-02771 and 2:10-md-02179* | § | |
| | § | |
| | § | |
| | § | |

## M-I L.L.C'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON PARTIAL FINDINGS

MORGAN, LEWIS & BOCKIUS LLP

**OF COUNSEL:**                                  By:  /s/ Hugh E. Tanner
                                                       Hugh E. Tanner
MORGAN, LEWIS & BOCKIUS LLP                            htanner@morganlewis.com
Denise Scofield                                        Texas Bar No. 19637400
dscofield@morganlewis.com                              1000 Louisiana, Suite 4000
Texas Bar No. 00784934                                 Houston, Texas  77002
1000 Louisiana, Suite 4000                             T.  713.890.5000
Houston, Texas  77002                                  F.  713.890.5001
T.  713.890.5000
F.  713.890.5001                                 **ATTORNEY FOR DEFENDANT**
                                                 **M-I L.L.C.**
**ATTORNEY FOR DEFENDANT**
**M-I L.L.C.**


March 18, 2013

# TABLE OF CONTENTS

**Page**

I.    Introduction ........................................................................................................... 1

II.    Facts ..................................................................................................................... 2

III.    Arguments And Authorities .................................................................................. 3

    A.    Legal Standard ......................................................................................... 3

    B.    The Court Should Enter A Judgment In Favor Of M-I On Plaintiffs' Claims For Negligence Under Maritime Law ........................................... 5

        1.    The Court Should Find For M-I Because There Is No Evidence That M-I Owed A Duty To Plaintiffs .......................................... 5

        2.    The Court Should Find For M-I Because There Is No Evidence That M-I Breached A Duty To Plaintiffs .................................... 9

        3.    The Court Should Find for M-I Because There Is No Evidence That M-I's Acts Or Omissions Caused Plaintiffs' Injuries ..................... 10

    C.    The Court Should Find For M-I On All Of Plaintiffs' Claims For Gross Negligence And Willful And Wanton Misconduct ............................................. 11

        1.    To Prove Gross Negligence And Willful And Wanton Misconduct Under Maritime Law, A Plaintiff Must Show Conscious Indifference To The Consequences ........................................ 12

        2.    The Court Should Find For M-I On All Gross Negligence And Wanton And Willful Misconduct Claims Because There Is No Evidence That M-I Acted With Conscious Indifference To A Known Risk ........................................................................ 14

            a.    M-I Did Not Act With Conscious Indifference With Regard To The LCM Spacer ..................................................... 14

            b.    M-I Did Not Act With Conscious Indifference With Regard To The Displacement Procedure .................................. 14

    D.    The Court Should Dismiss All Remaining Jones Act Claims Against M-I Because The Remaining Plaintiffs In This Case Were Not M-I's Employees ................................................................................................ 16

    E.    The Court Should Dismiss All Remaining Claims Against M-I For Intentional Infliction Of Emotional Distress Because Plaintiffs Have Failed To Establish That M-I Engaged In Any Extreme Or Outrageous Conduct .................................................................................................. 16

    F.    The Court Should Dismiss All Remaining Claims Against M-I For Loss Of Consortium Because Plaintiffs Are Limited To The Recovery Of Pecuniary Damages ................................................................................ 17

# TABLE OF CONTENTS
(continued)

**Page**

G.    The Court Should Dismiss All Remaining Claims Against M-I For
      Product Liability Because Plaintiffs Have Failed To Produce Any
      Evidence That M-I Sold Any Defective Products ............................................... 18

IV.    Conclusion ....................................................................................................... 19

Certificate Of Service ................................................................................................ 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bodin v. Vagshenian*,
  462 F.3d 481 (5th Cir. 2006) ............................................................4

*Bursztajn v. United States*,
  367 F.3d 485 (5th Cir. 2004) ............................................................4

*Canal Barge Co., Inc. v. Torco Oil Co.*,
  220 F.3d 370 (5th Cir. 2000) ............................................................5

*Chavez v. Noble Drilling Corp.*,
  567 F.2d 287 (5th Cir. 1978) ..........................................................10

*Coastal Iron Works, Inc. v. Petty Ray Geophysical Div. of Geosources, Inc.*,
  783 F.2d 577 (5th Cir. 1986) ..........................................................12

*Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC*,
  615 F.3d 599 (5th Cir. 2010) ..........................................................10

*Computalog U.S.A., Inc. v. Blake Drilling & Workover Co., Inc.*,
  No. 95–3009, 1996 WL 720761, at *1
  (E.D. La. Dec. 9, 1996) .............................................................12, 13

*Consolidated Aluminum Corp. v. C.F. Bean Corp.*,
  833 F.2d 65 (5th Cir. 1987) .......................................................5, 6, 13

*Daigle v. L & L Marine Transp. Co.*,
  322 F. Supp. 2d 717 (E.D. La. 2004) ................................................18

*Daigle v. Point Landing, Inc.*,
  616 F.2d 825 (5th Cir. 1980) ............................................................5

*Donaghey v. Ocean Drilling & Exploration Co.*,
  974 F.2d 646 (5th Cir. 1992) ..........................................................10

*Downey v. Denton County*,
  119 F.3d 381 (5th Cir. 1997) ............................................................5

*Drippe v. Gototweski*,
  434 F. App'x 79 (3d Cir. 2011) ........................................................4

*E. River S.S. Corp. v. Transamerica Delaval*,
  476 U.S. 858 (1986) ......................................................................18

## TABLE OF AUTHORITIES
(continued)

**Page**

*In re Enron Corp. Sec., Seaman v. Seacor Marine LLC*,
   564 F. Supp. 2d 598 (E.D. La. 2008) ..............................................................................11

*Evans v. McKinney Marine Inc.*,
   127 F.3d 34 (5th Cir. 1997) ...........................................................................................11

*Exxon Co., U.S.A. v. Sofec, Inc.*,
   517 U.S. 830 (1996) ......................................................................................................11

*Exxon Shipping Co. v. Baker*,
   554 U.S. 471 (2008) ......................................................................................................12

*Frazier v. Callais & Sons, Inc.*,
   No. Civ. A. 99-791, 1999 WL 717666, at *1
   (E.D. La. Sept. 13, 1999) .........................................................................................16, 17

*In re Great Lakes Dredge & Dock Co.*,
   624 F.3d 201 (5th Cir. 2010) ................................................................................ passim

*Hous. Exploration Co. v. Halliburton Energy Servs., Inc.*,
   No. Civ. A. 98-1302, 2000 WL 423909, at *1
   (E.D. La. Apr. 18, 2000) ...............................................................................................13

*Hous. Exploration Co. v. Halliburton Energy Servs., Inc.*,
   269 F.3d 528 (5th Cir. 2001) ........................................................................................13

*Kermarec v. Compagnie Generale Transatlantique*,
   358 U.S. 625 (1959) ......................................................................................................18

*Lewis v. Morehouse Detention Ctr.*,
   No. 09–0332, 2011 WL 1790466, at *1 (W.D. La. Mar. 3, 2011) .................................4, 5

*Lobegeiger v. Celebrity Cruises*,
   No. 11–21620–CIV, 2011 WL 3703329, at *1
   (S.D. Fla. Aug. 23, 2011) .........................................................................................13, 14

*Miles v. Apex Marine Corp.*,
   498 U.S. 19 (1990) ........................................................................................................17

*Millsap v. Booker*,
   18 F.3d 936 (5th Cir. 1994) ............................................................................................4

*Miss. Dep't of Transp. v. Signal Int'l LLC*,
   579 F.3d 478 (5th Cir. 2009) ..........................................................................................5

## TABLE OF AUTHORITIES
(continued)

**Page**

*Myrick v. Gussman*,
 No. 10-1792, 2011 WL 5910385, at *1 (E.D. La. Nov. 21, 2011) ....................................4

*N. Miss. Commc'ns, Inc. v. Jones*,
 792 F.2d 1330 (5th Cir. 1986) ...................................................................................5

*Nichols v. Petroleum Helicopters, Inc.*,
 17 F.3d 119 (5th Cir. 1994) ....................................................................................17

*In re Oil Spill by the Oil Rig DEEPWATER HORIZON*,
 MDL No. 2179, 2011 WL 4829905, at *1 (E.D. La. Oct. 12, 2011)................................9

*Operaciones Tecnicas Marinas S.A.S. v. Diversified Marine Servs., LLC*,
 Civil Action No. 12-1979, 2012 WL 6632509, at *1
 (E.D. La. Dec. 19, 2012) ........................................................................................12

*Plans, Inc. v. Sacramento City Unified Sch. Dist.*,
 752 F. Supp. 2d 1136 (E.D. Cal. 2010) .....................................................................4

*Scarborough v. Clemco Indus.*,
 391 F.3d 660 (5th Cir. 2004) ..................................................................................16

*Shalaby v. Newell Rubbermaid, Inc.*,
 379 F. App'x 620 (9th Cir. 2010) ............................................................................11

*Todd Shipyards Corp. v. Turbine Serv., Inc.*,
 674 F.2d 401 (1982)...............................................................................................12

*U.S. Fid. & Guar. Co. v. Planters Bank & Trust Co.*,
 77 F.3d 863 (5th 1996)............................................................................................5

*Wallis ex rel. Wallis v. Princess Cruises, Inc.*,
 306 F.3d 827 (9th Cir. 2002) ..................................................................................17

*Weber v. Gainey's Concrete Prods., Inc.*,
 No. 97-31267, 1998 WL 699047, at *1
 (5th Cir. Sept. 21, 1998)........................................................................................3, 4

*Withhart v. Otto Candies, L.L.C.*,
 431 F.3d 840 (5th Cir. 2005) ....................................................................................5

### DOCKETED CASE

*Stone v. Transocean Offshore Deepwater Drilling, Inc.*,
 2:10-cv-03168-CJB-SS (E.D. La.).........................................................................18, 19

**TABLE OF AUTHORITIES**
(continued)

**Page**

**RULES AND OTHER AUTHORITIES**

FED. R. CIV. P. 52..............................................................................................................3, 4

BLACK'S LAW DICTIONARY................................................................................................13

RESTATEMENT (SECOND) OF TORTS § 46 (1965)................................................................17

## I.       INTRODUCTION

Throughout this litigation, the Court has dismissed many of the claims filed against Defendant M-I L.L.C. ("M-I").[1]  The purpose of this instant motion is to address all remaining claims against M-I filed by the various plaintiffs, the State of Alabama, and the State of Louisiana (collectively, "Plaintiffs").[2]  Accordingly, M-I files this Memorandum in Support of its Motion for Judgment on Partial Findings on all claims filed against it by Plaintiffs.[3]  As demonstrated below, M-I is entitled to the requested judgment because there is:

- No evidence that M-I owed a duty of ordinary care to Plaintiffs;

- No evidence that M-I's acts or omissions on the *Deepwater Horizon* were negligent;

- No evidence that M-I's acts or omissions caused the explosion and blowout;

- No evidence that M-I acted with gross negligence or wanton and willful misconduct;

- No evidence that M-I violated the Jones Act;

- No evidence that M-I engaged in any extreme or outrageous conduct that could give rise to a cause of action for intentional infliction of emotional distress;

- No evidence that Plaintiffs are entitled to recover damages for loss of consortium; and

- No evidence that M-I sold any defective products.

---

[1] The Court dismissed claims against M-I in the following orders:  ECF No. 3830 (dismissing state law claims, claims for declaratory relief, claims for attorneys' fees under general maritime law, and general maritime claims that do not allege physical damage to a proprietary interest, contained in the Bundle B1 Master Complaint); ECF No. 4578 (dismissing state law claims, and claims for nuisance and trespassing under maritime law, contained in Bundle C); ECF No. 4845 (dismissing state law claims, general maritime claims that do not allege physical damage to a proprietary interest, claims for declaratory relief, Louisiana Parish DA Cases, and Alabama Cities Claims, contained in Bundle C); ECF No. 7526 (dismissing pure stigma claims, BP dealer claims, and recreation claims, contained in Bundle B1).

[2] The Court dismissed all state law claims pending against M-I in Bundle B1, Bundle C, and the complaints filed by Alabama and Louisiana.

[3] This includes claims asserted in the State of Alabama's First Amended Complaint (ECF No. 1872), the State of Louisiana's First Amended Complaint (ECF No. 2031), the Bundle B1 Master Complaint (ECF No. 1128) to the extent any claims remain against M-I that were not included in the Deepwater Horizon Economic Loss and Property Damages Class Action Settlement Agreement, the Bundle C Master Complaint (ECF No. 1510), as well as certain individual Bundle A complaints and/or petitions.

M-I's motion for judgment on partial findings should therefore be granted.

## II.    FACTS

1.      M-I and BP Exploration and Production, Inc. ("BP") entered into the Contract for Gulf of Mexico Strategic Performance Unit Offshore Well Services, effective February 1, 2009, that governed M-I's scope of work on the Macondo well.  ECF No. 5927, Stipulation 161.

2.      M-I recommended a drilling fluids program for the Macondo well to BP based upon information provided by BP and M-I's experience drafting drilling fluids proposals.  BP reviewed, revised, and approved the drilling fluids program for the Macondo well.  ECF No. 5927, Stipulation 162.

3.      The BP/Deepwater Horizon Rheliant Displacement Procedure was based upon information provided by BP and the M-I drilling fluids specialist's experience drafting such procedures on the *Deepwater Horizon*.  The BP/Deepwater Horizon Rheliant Displacement Procedure was approved by BP.  ECF No. 5927, Stipulation 163.

4.      The BP/Deepwater Horizon Rheliant Displacement Procedure was provided to representatives of BP, Transocean, and Halliburton/Sperry-Sun and discussed at a pre-tour meeting before the displacement.  ECF No. 5927, Stipulation 164.

5.      The BP/Deepwater Horizon Rheliant Displacement Procedure implemented on the Macondo well was the second draft of the procedure.  The first draft of the procedure did not include a step requiring the displacement to stop for BP to conduct a negative test.  The step requiring the displacement to stop for BP to conduct a negative test was added to the procedure based on instructions provided by BP.  ECF No. 5927, Stipulation 165.

6.      M-I personnel had no responsibility for determining whether BP would conduct a negative test during the displacement.  ECF No. 5927, Stipulation 183.

7.      M-I personnel had no responsibility for determining the depth to which the well would be displaced to seawater.  ECF No. 5927, Stipulation 166.

8.      BP and M-I discussed using two lost circulation material ("LCM") pills available on the rig in the spacer used during the displacement of the Macondo well to seawater.  ECF No. 5927, Stipulation 167.

9.      BP approved using the two LCM pills in the spacer used during the displacement of the Macondo well to seawater.  ECF No. 5927, Stipulation 168.

10.     No M-I personnel were involved in developing the basis of design for the well design of the Macondo well.  ECF No. 5927, Stipulation 169.

11.     No M-I personnel were responsible for monitoring the Macondo well for well control purposes on the *Deepwater Horizon*.  ECF No. 5927, Stipulation 170.

12.     No M-I personnel were responsible for decisions about when or how to set the surface cement plug for temporary abandonment of the Macondo well.  ECF No. 5927, Stipulation 171.

13.     No M-I personnel were responsible for the cementing process for temporary abandonment of the Macondo well.  ECF No. 5927, Stipulation 172.

14.     No M-I personnel were responsible for conducting or interpreting the negative pressure test on April 20, 2010.  ECF No. 5927, Stipulation 173.

15.     The reason for the zero pressure reading on the kill line during the negative test has not been definitively established.  ECF No. 5927, Stipulation 174.

## III.     ARGUMENTS AND AUTHORITIES

### A.     Legal Standard

In a bench trial, "the appropriate vehicle for dismissing a case as a matter of law at the close of plaintiff's evidence is a Rule 52(c) judgment on partial findings."  *Weber v. Gainey's*

*Concrete Prods., Inc.*, No. 97-31267, 1998 WL 699047, *1 n.1 (5th Cir. Sept. 21, 1998); *see also Millsap v. Booker*, 18 F.3d 936, at *2 (5th Cir. 1994).  According to Rule 52(c), "[i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."[4] FED. R. CIV. P. 52(c); *see also Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006); *Myrick v. Gussman*, No. 10-1792, 2011 WL 5910385, at *3 (E.D. La. Nov. 21, 2011).  The Fifth Circuit has held that a Rule 52(c) motion for judgment on partial findings is the proper mechanism for dismissing a case after the plaintiff has been heard on any issue during the liability phase of a bifurcated bench trial.[5]  *See Bursztajn v. United States*, 367 F.3d 485, 488 (5th Cir. 2004) ("At the close of the plaintiff's case in the liability phase of the bench trial, the district court granted the Army's [Rule 52(c)] motion for jmol."); *see also Drippe v. Gototweski*, 434 F. App'x 79, 82 (3d Cir. 2011) (affirming dismissal pursuant to Rule 52(c) after first phase of bifurcated trial).

"A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a)."  FED. R. CIV. P. 52(c).  A judgment on partial findings may be entered by the Court "at any time it can appropriately make a dispositive finding of fact on the evidence."  FED. R. CIV. P. 52 advisory committee's note.  "Unlike the standard applicable in judgments as a matter of law, when dismissing a case pursuant to Rule 52(c), a court is not required to make any special inferences or review the facts in the light most favorable to the plaintiff."  *Weber*, 1998 WL 699047, *1 n.1; *see also Lewis v. Morehouse Detention Ctr.*, No.

---

[4] M-I's proposed findings of fact and conclusions of law are attached hereto as Exhibit 1.

[5] *Plans, Inc. v. Sacramento City Unified Sch. Dist.*, 752 F. Supp. 2d 1136, 1137 (E.D. Cal. 2010) ("Previously in September 2005, this court commenced a bifurcated trial in this case on the threshold issue of whether anthroposophy is a religion for purposes of the Establishment Clause.  However, before permitting plaintiff to call its first witness, the court required plaintiff to make a proffer as to what evidence it had to make this showing. Finding the proffer wholly insufficient, the court entered judgment in favor of defendants pursuant to Rule 52(c).").

09–0332, 2011 WL 1790466, at *7 (W.D. La. Mar. 3, 2011).  Specifically, a court is "entitled to weigh evidence, make credibility judgments, and draw inferences unfavorable to the plaintiffs." *N. Miss. Commc'ns, Inc. v. Jones*, 792 F.2d 1330, 1333 (5th Cir. 1986); *see also U.S. Fid. & Guar. Co. v. Planters Bank & Trust Co.*, 77 F.3d 863, 865 n.1 (5th 1996).  Judgment is appropriate at the end of a plaintiff's case-in-chief if the plaintiff failed to offer evidence for or otherwise prove an essential element of its case.  *Downey v. Denton County*, 119 F.3d 381, 385–86 (5th Cir. 1997).

### B.     The Court Should Enter A Judgment In Favor Of M-I On Plaintiffs' Claims For Negligence Under Maritime Law

The elements of negligence under general maritime law are essentially the same as land-based negligence under the common law.  *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211 (5th Cir. 2010); *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 842 (5th Cir. 2005).  To establish maritime negligence, a plaintiff must demonstrate that there was (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury sustained by the plaintiff, and (4) a causal connection between the defendant's conduct and the plaintiff's injury.  *Great Lakes*, 624 F.3d at 211; *Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000).  M-I is entitled to judgment on Plaintiffs' negligence claims because Plaintiffs cannot establish all of the necessary elements of those claims.

### 1.     The Court Should Find For M-I Because There Is No Evidence That M-I Owed A Duty To Plaintiffs

"Determination of the tortfeasor's duty is a question of law."  *Miss. Dep't of Transp. v. Signal Int'l LLC*, 579 F.3d 478, 490 (5th Cir. 2009).  "Under maritime law, a plaintiff is owed a duty of ordinary care under the circumstances."  *Great Lakes*, 624 F.3d at 211; *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980).  The determination of the existence and scope of a duty "involves a number of factors, including most notably the foreseeability of the harm

suffered by the complaining party." *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987). Duty "may be owed only with respect to the interest that is foreseeably jeopardized by the negligent conduct." *Great Lakes*, 624 F.3d at 211; *Consolidated Aluminum*, 833 F.2d at 67.

The Fifth Circuit's recent decision in *Great Lakes* is instructive in conducting a duty analysis. In *Great Lakes*, flood victims of Hurricane Katrina sued several dredging companies alleging that the dredging companies' failure to properly dredge the Mississippi River Gulf Outlet was a proximate cause of the damages they suffered when the levee systems protecting the Orleans and St. Bernard Parishes failed. *See* 624 F.3d at 205–06. The district court dismissed the plaintiffs' negligence claims, holding that the dredging companies did not owe any duty to the plaintiffs because the individual dredgers could not have foreseen that discrete acts of negligent dredging could have resulted in the "absolutely devastating and cataclysmic damages that occurred to St. Bernard and Orleans Parishes." *Id.* at 210.

On appeal, the Fifth Circuit agreed that the dredging companies owed no duty to the plaintiffs and affirmed. *Id.* at 212–13. The court explained:

> To show that the individual [dredging companies] are liable in the instant case, the [plaintiffs] would have to show that each [dredging company] reasonably should have foreseen that the sequence of events leading to their damages—the amplification of the storm surge during Hurricane Katrina, the failure of the levee systems, and the subsequent flooding of Orleans and St. Bernard Parishes—would be a probable result of its negligent acts and the marginal erosion to the wetlands caused thereby.

*Id.* at 211–12. The Fifth Circuit held that while it could envision a situation where it would be foreseeable that dredging could create conditions that would result in flooding after a hurricane, it was not foreseeable that the marginal erosion caused by any act of negligence by a dredging company would "substantially affect the impact of the hurricane such that the failure of the levee

systems and subsequent flooding would be the probable result." *Id.* at 213.  Accordingly, the Fifth Circuit held that the dredging companies did not owe a duty to the plaintiffs. *Id.*

Like the dredging companies in *Great Lakes*, M-I could not foresee that its activities on the *Deepwater Horizon* would ultimately lead to the damages suffered by Plaintiffs as a result of the explosion on the *Deepwater Horizon* and the blowout of the Macondo well.  The stipulations preclude the imposition of any duty on M-I related to the blowout of the Macondo well, and each stipulation underscores M-I's lack of responsibility for decisions that ultimately led to the blowout and oil spill.  As discussed above, BP made the ultimate decision to use the LCM spacer and approve the displacement procedure.  ECF No. 5927, Stipulations 163, 168.  Additionally, no M-I personnel were responsible for monitoring the Macondo well for well control purposes, and no M-I personnel were responsible for conducting or interpreting the negative pressure test. ECF No. 5927, Stipulations 170, 173.  Moreover, the experts in this case have uniformly opined that the lack of flow from the kill line during the negative test is irrelevant because the 1400 psi of pressure on the drill pipe during the negative test should have prevented BP's Well Site Leaders from declaring the test a success.  Tr. Tran., Day 7 (3/06/2013), R. Heenan, 2118:22– 2120:17.

Like the dredging companies in *Great Lakes*, assuming *arguendo* that the LCM spacer was inappropriate for the Macondo well, M-I could only foresee the "probab[le]" consequences of using an inappropriate spacer—i.e., possible damage to the wellbore, which might result in lost time spent remediating any damages.  *Great Lakes*, 624 F.3d at 213.  M-I, however, as a reasonable drilling-fluids contractor with no responsibility for any decisions on the *Deepwater Horizon*, could not foresee that any of its activities might have led to the damages caused by the explosion and blowout.  *See Great Lakes*, 624 F.3d at 213 (even assuming that the dredging

companies were negligent, "[n]o reasonable dredger could have anticipated that its negligence would make the difference between the levee systems holding or failing in the event of a hurricane").  Certainly no reasonable fluids company could have foreseen that performing its activities negligently would probably result in the series of events culminating in the catastrophic damages that occurred as a result of the explosion on the *Deepwater Horizon* and the blowout of the Macondo well.  *See Great Lakes*, 624 F.3d at 213 (no "dredger could have foreseen that performing its dredging activities negligently—as opposed to in conformity with the Corps of Engineers' specifications—would probably result in the series of events culminating in the catastrophic damages that occurred during Hurricane Katrina.").

For example, M-I could not reasonably have foreseen that:

- The cement job would fail;

- The negative test would be misinterpreted despite a clear indication that the test had failed;

- The parties monitoring the well would fail to detect the kick during the final displacement;

- Hydrocarbons would reach the rig floor and ignite;

- The blowout preventer would fail to seal the well;

- The Deepwater Horizon would sink; and

- The Macondo well would continue to emit hydrocarbons into the Gulf of Mexico for three months.

Therefore, under the Fifth Circuit's decision in *Great Lakes*, M-I did not owe a duty of ordinary care to Plaintiffs, and the Court should grant M-I's motion for judgment on partial findings on all of Plaintiffs' negligence claims.  *See In re Oil Spill by the Oil Rig DEEPWATER HORIZON*, MDL No. 2179, 2011 WL 4829905, at *6–7 (E.D. La. Oct. 12, 2011) (holding that responders to *Deepwater Horizon* blowout who attempted to extinguish fire by spraying water on rig did not

owe a duty to persons injured by subsequent oil spill because pollution damage was not a reasonably foreseeable result of spraying water on rig).

### 2. The Court Should Find For M-I Because There Is No Evidence That M-I Breached A Duty To Plaintiffs

Even if, unlike M-I here, a defendant owes a duty to the plaintiff, the plaintiff still must prove that the defendant breached that duty to recover on a negligence claim under maritime law. *Great Lakes*, 624 F.3d at 211.  Thus, even assuming *arguendo* M-I owed Plaintiffs a duty of ordinary care, which it did not, there is no evidence that M-I engaged in any conduct that breached that duty.

None of Plaintiffs' experts rendered an opinion that M-I made any decision on the *Deepwater Horizon* that led to the explosion and blowout, and none of their experts conducted any tests to determine if the LCM spacer could have blocked the kill line during the negative test. Additionally, as the parties have stipulated:

- No M-I personnel were responsible for conducting or interpreting the negative pressure test on April 20, 2010, ECF No. 5927, Stipulation 173;[6]

- No M-I personnel were responsible for monitoring the Macondo well for well control purposes on the Deepwater Horizon, ECF No. 5927, Stipulation 170;

- The reason for the zero pressure reading on the kill line during the negative test has not been definitely established, ECF No. 5927, Stipulation 174;

- The BP/Deepwater Horizon Rheliant Displacement Procedure was approved by BP, ECF No. 5927, Stipulation 163; and

- BP approved using the two LCM pills in the spacer used during the displacement of the Macondo well to seawater, ECF No. 5927, Stipulation 168.

Accordingly, because there is no evidence that M-I breached any duty of care owed to Plaintiffs, the Court should grant M-I's motion for judgment on partial findings on all of

---

[6] Furthermore, in the factual allocution attached to the plea in BP's criminal case, the misinterpretation of the negative pressure test was stated to be a proximate cause of the DWH incident.  TREX-89052, Ex. A at 14–15.

9

Plaintiffs' negligence claims. *See Chavez v. Noble Drilling Corp.*, 567 F.2d 287, 289 (5th Cir. 1978) (holding that as a matter of law, defendant breached no duty to the plaintiff).

### 3. The Court Should Find For M-I Because There Is No Evidence That M-I's Acts Or Omissions Caused Plaintiffs' Injuries

In addition to duty and breach of that duty, a plaintiff suing for negligence must also establish causation. *Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 605 (5th Cir. 2010). Here, there is no evidence that any alleged act or omission of M-I caused the explosion on the *Deepwater Horizon*, or the blowout of the Macondo well. M-I is entitled to judgment on Plaintiffs' negligence claims for that independent reason, too.

The Fifth Circuit has held that, under general maritime law, negligence is actionable only if it is the "legal cause" of the injury. *Great Lakes*, 624 F.3d at 213–14; *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992). "Legal cause" is more than mere "but for" causation; the negligence must have been a "substantial factor" in leading to the plaintiff's injury. *Great Lakes*, 624 F.3d at 213–14; *Donaghey*, 974 F.2d at 649.

Here, Plaintiffs have not presented any evidence or expert opinion that establishes, or even suggests, that M-I's alleged acts or omissions were a "but for" cause of the explosion and blowout on the *Deepwater Horizon*, much less a "substantial factor." *See Great Lakes*, 624 F.3d at 213–14; *Donaghey*, 974 F.2d at 649. The stipulations plainly establish that M-I did not engage in any act or omission on the *Deepwater Horizon* that caused the explosion and blowout. In fact, any potential causal connection between M-I's activities on the *Deepwater Horizon* and the explosion and blowout was eliminated by BP's express approval of the displacement procedure and the LCM spacer. ECF No. 5927, Stipulations 163, 168. M-I had no role in conducting or interpreting the negative test and was not responsible for monitoring the well for well control purposes. ECF No. 5927, Stipulations 170, 173.

Furthermore, the parties have stipulated that the "reason for the zero pressure reading on the kill line during the negative test has not been definitely established," which effectively admits that there is no evidence of a causal connection between the LCM spacer and the zero pressure reading on the kill line. *See Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 838 (1996) ("Somewhere a point will be reached when courts will agree that the link has become too tenuous—that what is claimed to be consequence is only fortuity.").

The *Deepwater Horizon* incident was caused by a complex set of events, but no expert in this case has rendered an opinion that M-I made any decision on the *Deepwater Horizon* that led to the explosion and blowout.  Expert testimony is necessary to establish causation in this case because "[d]etermining the cause of the explosion here require[s] exploration and evaluation of complex facts and theory 'beyond common experience.'"  *See Shalaby v. Newell Rubbermaid, Inc.*, 379 F. App'x 620, 622 (9th Cir. 2010) (affirming summary judgment where two experts were excluded and thus unable to opine on explosion of torch); *In re Enron Corp. Sec., Seaman v. Seacor Marine LLC*, 564 F. Supp. 2d 598, 600 (E.D. La. 2008).  Accordingly, the Court should grant M-I's motion for judgment on partial findings on all of Plaintiffs' negligence claims because there is no evidence that any of M-I's acts or omissions caused the explosion on the *Deepwater Horizon* and the blowout of the Macondo well.  *See Great Lakes*, 624 F.3d at 213; *Evans v. McKinney Marine Inc.*, 127 F.3d 34, at *1 (5th Cir. 1997).

### C.   The Court Should Find For M-I On All Of Plaintiffs' Claims For Gross Negligence And Willful And Wanton Misconduct

Plaintiffs have presented no evidence that M-I was grossly negligent or engaged in willful and wanton misconduct on the *Deepwater Horizon*.  Additionally, Plaintiffs have presented no evidence that M-I acted with reckless disregard for the safety of others, and no evidence that M-I acted with conscious disregard of the consequences of its actions, as affecting

the life or property of another.  Accordingly, M-I is entitled to judgment on partial findings on those claims, too.

      **1.**      **To Prove Gross Negligence And Willful And Wanton Misconduct Under Maritime Law, A Plaintiff Must Show Conscious Indifference To The Consequences**

The leading case on this issue is *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), in which the Supreme Court addressed several issues regarding punitive damages, including the scope of awards for punitive damages under general maritime law.  The Court undertook a thorough review of punitive damages under the common law, which provides a source of law for general maritime law, and in doing so, the Court stated that "[t]he prevailing rule in American courts . . . limits punitive damages to cases of . . . 'enormity,' where a defendant's conduct is 'outrageous,' 4 Restatement § 908(2), owing to 'gross negligence,' 'willful, wanton, and reckless indifference for the rights of others,' or behavior even more deplorable, 1 Schlueter § 9.3(A)." *Id.* at 493–94.

In maritime cases, the Fifth Circuit similarly recognizes gross negligence as "harm willfully inflicted or caused by gross or wanton negligence." *Coastal Iron Works, Inc. v. Petty Ray Geophysical Div. of Geosources, Inc.*, 783 F.2d 577, 582 (5th Cir. 1986) (quoting *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401, 411 (1982)).  "Significantly, gross negligence is distinguished from ordinary negligence in that it 'encompasses harm that is willfully inflicted or is caused by the wanton and reckless disregard for the safety of others.'" *Operaciones Tecnicas Marinas S.A.S. v. Diversified Marine Servs., LLC*, Civil Action No. 12-1979, 2012 WL 6632509, at *4 (E.D. La. Dec. 19, 2012) (quoting *Computalog U.S.A., Inc. v. Blake Drilling & Workover Co., Inc.*, No. 95–3009, 1996 WL 720761, at *2 (E.D. La. Dec. 9, 1996)).

When the Court's jurisdiction is grounded in admiralty, it is "guided by general principles of negligence law." *Consolidated Aluminum*, 833 F.2d at 67.  Several courts (including the Eastern District) have looked to Black's Law Dictionary for guidance in defining gross negligence. *See*, *e.g.*, *Computalog U.S.A.*, 1996 WL 720761, at *2.  Black's states that:

> "Ordinary negligence is based on the fact that one ought to have known the results of his acts, while 'gross negligence' rests on the assumption that one *knew* the results of his acts." *Id.* at 1034 (emphasis added).  Willful negligence is an act which must be "accompanied by a conscious indifference to the consequences."

*Id.* (quoting BLACK'S LAW DICTIONARY).  It also defines gross negligence as "'[a] lack of slight diligence or care,' and '[a] conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party.'"  *Hous. Exploration Co. v. Halliburton Energy Servs., Inc.*, No. Civ. A. 98-1302, 2000 WL 423909, at *7 (E.D. La. Apr. 18, 2000) (Barbier, J.) (citing BLACK'S LAW DICTIONARY), *judgment vacated on other grounds by* 269 F.3d 528 (5th Cir. 2001).  In sum, "a review of relevant admiralty case law reveals a general consensus that gross negligence involves some extreme departure from reasonable care coupled with a conscious awareness of the risk of harm." *Lobegeiger v. Celebrity Cruises*, No. 11–21620–CIV, 2011 WL 3703329, at *16 (S.D. Fla. Aug. 23, 2011) (collecting cases, including, *Hous. Exploration Co. v. Halliburton Energy Servs., Inc.*, 269 F.3d 528, 532 (5th Cir. 2001)).  As demonstrated below, M-I is entitled to judgment on Plaintiffs' gross negligence and wanton-and-willful-misconduct claims because there is no evidence sufficient to satisfy that high standard.

2.     **The Court Should Find For M-I On All Gross Negligence And Wanton And Willful Misconduct Claims Because There Is No Evidence That M-I Acted With Conscious Indifference To A Known Risk**

a.     **M-I Did Not Act With Conscious Indifference With Regard To The LCM Spacer**

Plaintiffs have failed to produce any evidence that M-I acted with conscious indifference with regard to the LCM spacer.  To the contrary, the parties have stipulated that BP and M-I discussed using two LCM pills available on the rig in the spacer used during the displacement of the Macondo well to seawater, ECF No. 5927, Stipulation 167, and that BP approved using the two LCM pills in the spacer.  ECF No. 5927, Stipulation 168.  Additionally, the parties have stipulated that the reason for the zero pressure reading on the kill line during the negative test has not been definitively established.  ECF No. 5927, Stipulation 174.  Accordingly, the parties' stipulations alone demonstrate that (1) M-I acted with deliberation and care in discussing the use of the LCM spacer with BP, (2) BP approved of using the LCM pills in the spacer, and (3) there is no evidence that the LCM spacer had any effect on the kill line during the negative pressure test.  In their case-in-chief, Plaintiffs did not produce any evidence to contradict these stipulated facts, nor did they produce any evidence that M-I acted in a manner that constitutes an extreme departure from the standard of reasonable care, coupled with a conscious awareness of the risk of harm.  *See Lobegeiger*, 2011 WL 3703329, at *16.

b.     **M-I Did Not Act With Conscious Indifference With Regard To The Displacement Procedure**

Similarly, Plaintiffs have failed to produce any evidence that M-I acted with conscious indifference when it provided BP with the template for the displacement procedure.  The parties have stipulated that the BP/Deepwater Horizon Rheliant Displacement Procedure was based upon information provided by BP and the M-I drilling fluids specialist's experience drafting such

procedures on the *Deepwater Horizon*.  ECF No. 5927, Stipulation 163.  The parties also stipulated that the displacement procedure implemented on the Macondo well was the second draft, and the first draft did not include a step requiring the displacement to stop for BP to conduct a negative test.  The step requiring the displacement to stop for BP to conduct a negative test was added to the procedure based on instructions provided solely by BP.  ECF No. 5927, Stipulation 165.  BP also approved the final draft of the displacement procedure.  ECF No. 5927, Stipulation 163.

The parties further stipulated that M-I personnel had no responsibility for determining whether BP would conduct a negative pressure test during the displacement, ECF No. 5927, Stipulation 183, and that M-I personnel were not responsible for conducting or interpreting the negative pressure test on April 20, 2010.  ECF No. 5927, Stipulation 173.  The parties also stipulated that the displacement procedure was provided to BP, Transocean, Halliburton/Sperry-Sun and discussed at a meeting before the displacement.  ECF No. 5927, Stipulation 164.

The undisputed and stipulated facts thus demonstrate that M-I did not engage in an extreme departure from the standard of care in providing the displacement procedure template to BP, but instead relied on its "experience drafting such procedures on the Deepwater Horizon." ECF No. 5927, Stipulation 163.  Just as with the LCM spacer, the displacement procedure was a topic of discussion—this time among BP and its various contractors—and ultimately determined by BP.  The stipulated facts show no conscious disregard of the consequences, but a reasoned discussion of the procedure.  To the extent there were issues with the negative pressure test, the stipulated facts show that M-I was not responsible for determining whether to conduct the test during the displacement and played no role in performing or interpreting the negative pressure test.  ECF No. 5927, Stipulations 173, 183.

The facts—as agreed to by all parties and stipulated to this Court—thus establish that M-I did not act with conscious indifference when it provided the template for the displacement procedure to BP.  Certainly Plaintiffs have presented no evidence that M-I acted in a manner that constitutes an extreme departure from the standard of reasonable care.  In fact, the stipulated facts and undisputed evidence demonstrate that M-I acted with care and consideration while working on the *Deepwater Horizon*.  Accordingly, the Court should grant M-I's motion for judgment on partial findings on all of Plaintiffs' gross negligence and willful and wanton misconduct claims.

> **D.      The Court Should Dismiss All Remaining Jones Act Claims Against M-I Because The Remaining Plaintiffs In This Case Were Not M-I's Employees**

To the extent any of the remaining Plaintiffs in this case assert a claim against M-I under the Jones Act, the Court should dismiss those claims because none of the remaining Plaintiffs were employees of M-I.  Claims under the Jones Act can only be brought against a plaintiff's employer.  *Scarborough v. Clemco Indus.*, 391 F.3d 660, 667 (5th Cir. 2004).  There are no currently pending claims asserted against M-I by its employees related to the *Deepwater Horizon* incident.  Accordingly, because the remaining Plaintiffs in this case have not alleged or established that they were employees of M-I at the time of the *Deepwater Horizon* incident, their claims should be dismissed.

> **E.      The Court Should Dismiss All Remaining Claims Against M-I For Intentional Infliction Of Emotional Distress Because Plaintiffs Have Failed To Establish That M-I Engaged In Any Extreme Or Outrageous Conduct**

Plaintiffs' remaining claims for intentional infliction of emotional distress fail as a matter of law.  To prove intentional infliction of emotional distress, a plaintiff must prove that:  (1) the defendant's conduct was so extreme in degree and so outrageous in character that it went beyond all bounds of decency and was utterly intolerable in civilized community; (2) that such conduct

16

caused severe emotional distress; and (3) that defendant intended, by performing the acts complained of, to inflict severe emotional distress on plaintiff, or that defendant knew that such severe emotional distress would be certain or substantially certain to result from the conduct. *Frazier v. Callais & Sons, Inc.*, No. Civ. A. 99-791, 1999 WL 717666, at *5 (E.D. La. Sept. 13, 1999) (citing RESTATEMENT (SECOND) OF TORTS § 46 (1965)).

Intentional infliction of emotional distress has been recognized under general maritime law, but it requires an exceptional showing by a plaintiff.  Thus, "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Wallis ex rel. Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 841 (9th Cir. 2002) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)).  Whether conduct qualifies as outrageous and atrocious can be decided as a matter of law.  *Id.* at 842.  To qualify, the plaintiff must demonstrate that the defendant "went out of [its] way to torment or mistreat the [p]laintiff in a manner that our society would view as utterly deplorable." *Id.*  Plaintiffs did not present any evidence that M-I engaged in any conduct that could be considered extreme or outrageous. Accordingly, the Court should dismiss any remaining claims for intentional infliction of emotional distress.  *See*, *e.g.*, *id.*

### F.     The Court Should Dismiss All Remaining Claims Against M-I For Loss Of Consortium Because Plaintiffs Are Limited To The Recovery Of Pecuniary Damages

Plaintiffs cannot recover against M-I for loss of consortium because they are limited to recovery of pecuniary damages.  *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990).  The only recognized exception to *Miles*—if a longshoreman is injured or killed in territorial waters—does not apply here.  *Nichols v. Petroleum Helicopters, Inc.*, 17 F.3d 119, 123 (5th Cir. 1994).

Because claims for loss of consortium are not permitted under the Jones Act or general maritime law, *id.* at 122–23, any remaining claims against M-I for loss of consortium should be dismissed.

### G. The Court Should Dismiss All Remaining Claims Against M-I For Product Liability Because Plaintiffs Have Failed To Produce Any Evidence That M-I Sold Any Defective Products

Product liability causes of action are recognized under general maritime law. *E. River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 865 (1986). When "based on negligence, they are grounded in principles already incorporated into the general maritime law." *Id.* at 866 (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959)). When based on strict liability, the claim requires proof that the defendant sold a product in a "defective condition unreasonably dangerous to the user" and (1) is a seller engaged in the business of selling such a product, (2) the product was sold to and reaches the user in a defective condition, and (3) the defective product causes the plaintiff's injury. *Daigle v. L & L Marine Transp. Co.*, 322 F. Supp. 2d 717, 727 (E.D. La. 2004).

Plaintiffs have failed to present any evidence that any product provided by M-I on the *Deepwater Horizon* was responsible for the damages suffered by Plaintiffs. The only product sold by M-I that appears to be at issue in this case is the LCM spacer. The parties have already stipulated, however, that the "reason for the zero pressure reading on the kill line during the negative test has not been definitely established." ECF No. 5927, Stipulation 174. Accordingly, Plaintiffs have not presented any evidence to support a causal connection between the LCM

pacer and the zero-pressure reading on the kill line, and the Court should therefore dismiss any remaining claims against M-I for product liability.[7]

## IV.    CONCLUSION

The Court should render a judgment on partial findings in favor of M-I, dismiss all of Plaintiff's claims against M-I, enter a take nothing judgment in M-I's favor, and grant M-I any and all other relief to which it is entitled.

Dated:  March 18, 2013                    Respectfully submitted,

                                          MORGAN, LEWIS & BOCKIUS LLP


**OF COUNSEL:**                           By:  /s/ *Hugh E. Tanner*
                                               Hugh E. Tanner
MORGAN, LEWIS & BOCKIUS LLP                    htanner@morganlewis.com
Denise Scofield                                Texas Bar No. 19637400
dscofield@morganlewis.com                      1000 Louisiana, Suite 4000
Texas Bar No. 00784934                         Houston, Texas  77002
1000 Louisiana, Suite 4000                     T.  713.890.5000
Houston, Texas  77002                          F.  713.890.5001
T.  713.890.5000
F.  713.890.5001                          **ATTORNEY FOR DEFENDANT**
                                          **M-I L.L.C.**
**ATTORNEY FOR DEFENDANT**
**M-I L.L.C.**

---

[7] Some of the plaintiffs, such as the plaintiffs in *Stone v. Transocean Offshore Drilling, Inc., et al.*; Cause No. 2:10-cv-03168-CJB-SS, allege claims for injunctive relief against M-I.  They seek a temporary restraining order to "restrain[] Defendants from changing, altering, or destroying any tangible evidence related to the incident. *Stone v. Transocean Offshore Deepwater Drilling, Inc.*, 2:10-cv-03168-CJB-SS (E.D. La.), ECF No. 1-3, ¶ 21.  The plaintiffs, however, have not presented any evidence to support the issuance of such injunctive relief.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Memorandum in Support of M-I L.L.C.'s Motion for Judgment on Partial Findings has been served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the Court's CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL No. 2179, on this 18th day of March, 2013.

 /s/ *Hugh E. Tanner*
Hugh E. Tanner