# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:   OIL SPILL by the OIL RIG | § | MDL No. 2179 |
| "DEEPWATER HORIZON" | § | |
| in the GULF OF MEXICO, | § | |
| on APRIL 20, 2010 | § | SECTION: J |
| | § | |
| | § | |
| This Document Relates To: | § | Judge Carl J. Barbier |
| *All Cases* | § | Magistrate Judge Sally Shushan |
| *2:10-cv-02771 and 2:10-md-02179* | § | |
| | § | |
| | § | |
| | § | |

## M-I L.L.C'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW FILED IN SUPPORT OF ITS MOTION FOR JUDGMENT ON PARTIAL FINDINGS

M-I L.L.C. ("M-I") hereby submits these proposed findings of fact and conclusions of law in support of its Motion for Judgment on Partial Findings.

I.  **FINDINGS OF FACT**

1. M-I and BP Exploration and Production, Inc. ("BP") entered into the Contract for Gulf of Mexico Strategic Performance Unit Offshore Well Services, effective February 1, 2009, that governed M-I's scope of work on the Macondo well. ECF No. 5927, Stipulation 161.

2. M-I recommended a drilling fluids program for the Macondo well to BP based upon information provided by BP and M-I's experience drafting drilling fluids proposals. BP reviewed, revised, and approved the drilling fluids program for the Macondo well. ECF No. 5927, Stipulation 162.

3. The BP/Deepwater Horizon Rheliant Displacement Procedure was based upon information provided by BP and the M-I drilling fluids specialist's experience drafting such

procedures on the Deepwater Horizon. The BP/Deepwater Horizon Rheliant Displacement Procedure was approved by BP. ECF No. 5927, Stipulation 163.

4. The BP/Deepwater Horizon Rheliant Displacement Procedure was provided to representatives of BP, Transocean, and Halliburton/Sperry-Sun and discussed at a pre-tour meeting before the displacement. ECF No. 5927, Stipulation 164.

5. The BP/Deepwater Horizon Rheliant Displacement Procedure implemented on the Macondo well was the second draft of the procedure. The first draft of the procedure did not include a step requiring the displacement to stop for BP to conduct a negative test. The step requiring the displacement to stop for BP to conduct a negative test was added to the procedure based on instructions provided by BP. ECF No. 5927, Stipulation 165.

6. M-I personnel had no responsibility for determining whether BP would conduct a negative test during the displacement. ECF No. 5927, Stipulation 183.

7. M-I personnel had no responsibility for determining the depth to which the well would be displaced to seawater. ECF No. 5927, Stipulation 166.

8. BP and M-I discussed using two lost circulation material ("LCM") pills available on the rig in the spacer used during the displacement of the Macondo well to seawater. ECF No. 5927, Stipulation 167.

9. BP approved using the two LCM pills in the spacer used during the displacement of the Macondo well to seawater. ECF No. 5927, Stipulation 168.

10. No M-I personnel were involved in developing the basis of design for the well design of the Macondo well. ECF No. 5927, Stipulation 169.

11. No M-I personnel were responsible for monitoring the Macondo well for well control purposes on the *Deepwater Horizon*. ECF No. 5927, Stipulation 170.

12. No M-I personnel were responsible for decisions about when or how to set the surface cement plug for temporary abandonment of the Macondo well. ECF No. 5927, Stipulation 171.

13. No M-I personnel were responsible for the cementing process for temporary abandonment of the Macondo well. ECF No. 5927, Stipulation 172.

14. No M-I personnel were responsible for conducting or interpreting the negative pressure test on April 20, 2010. ECF No. 5927, Stipulation 173.

15. The reason for the zero pressure reading on the kill line during the negative test has not been definitively established. ECF No. 5927, Stipulation 174.

## II. CONCLUSIONS OF LAW

1. There is no evidence that any act or omission of M-I on the *Deepwater Horizon* was a "but for" cause of the explosion and blowout on or about April 20, 2010.

2. There is no evidence that any act or omission of M-I on the *Deepwater Horizon* was a substantial factor in causing the explosion and blowout on or about April 20, 2010.

3. There is no evidence that any act or omission of M-I on the *Deepwater Horizon* was a proximate cause of the explosion and blowout on or about April 20, 2010.

4. There is no evidence that any act or omission of M-I on the *Deepwater Horizon* was a producing cause of the explosion and blowout on or about April 20, 2010.

5. There is no evidence that M-I owed any duty of ordinary care to the Plaintiffs with regard to the damages suffered as a result of the explosion on the *Deepwater Horizon* and the blowout of the Macondo well.

6. There is no evidence that M-I breached any duty of ordinary care owed to the Plaintiffs in connection with its activities and responsibilities on the *Deepwater Horizon*.

7. There is no evidence that M-I was negligent in connection with its activities and responsibilities on the *Deepwater Horizon*.

8. There is no evidence that M-I's activities on the *Deepwater Horizon* constituted any extreme departure from reasonable care coupled with a conscious awareness of the risk of harm.

9. There is no evidence that M-I was grossly negligent in connection with its activities and responsibilities on the *Deepwater Horizon*.

10. There is no evidence that M-I acted with conscious indifference in connection with its activities and responsibilities on the *Deepwater Horizon*.

11. There is no evidence that any remaining Plaintiffs were employees of M-I at the time of the *Deepwater Horizon* incident.

12. Among other requirements, only M-I employees may maintain a claim under the Jones Act against M-I.

13. There is no evidence that M-I engaged in any extreme or outrageous conduct in connection with its activities and responsibilities on the *Deepwater Horizon*.

14. Plaintiffs may not recover loss of consortium damages against M-I because Plaintiffs are limited to the recovery of pecuniary damages and claims for loss of consortium are not permitted under the Jones Act or general maritime law.

15. There is no evidence that M-I sold or manufactured any defective products in connection with its activities and responsibilities on the *Deepwater Horizon*.

Dated:  March 18, 2013                            Respectfully submitted,

                                         MORGAN, LEWIS & BOCKIUS LLP

**OF COUNSEL:**                                    By:  */s/ Hugh E. Tanner*
                                         Hugh E. Tanner
MORGAN, LEWIS & BOCKIUS LLP         htanner@morganlewis.com
Denise Scofield                                         Texas Bar No. 19637400
dscofield@morganlewis.com                  1000 Louisiana, Suite 4000
Texas Bar No. 00784934                        Houston, Texas  77002
1000 Louisiana, Suite 4000                   Telephone:     (713) 890-5000
Houston, Texas  77002                          Facsimile:      (713) 890-5001
Telephone:     (713) 890-5000
Facsimile:      (713) 890-5001                  **ATTORNEY FOR DEFENDANT**
                                         **M-I L.L.C.**

**ATTORNEY FOR DEFENDANT**
**M-I L.L.C.**