**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | **MDL No. 2179** |
| **This Document Relates to:** ***All Cases*** | **SECTION: J** |
| (Including No. 10-2771) | **JUDGE BARBIER** |
| | **MAGISTRATE SHUSHAN** |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR ADVERSE INFERENCES BASED ON ASSERTIONS OF THE FIFTH AMENDMENT BY DONALD VIDRINE**

Plaintiffs, by and through Co-Liaison Counsel and the Plaintiffs Steering Committee, respectfully submit this Reply Brief in response to BP's Opposition and in further support of Plaintiffs' Motion for Adverse Inferences Based on Assertions of the Fifth Amendment by Donald Vidrine [Doc 8601]:

**Legal Standard**

The Fifth Amendment "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976). Evidence that a non-party has invoked the Fifth Amendment is not barred by the Constitution. *FDIC v. Fidelity & Deposit Co. of Maryland,* 45 F.3d 969, 977 (5th Cir. 1995). "Such evidence is admissible if it is relevant and not otherwise prohibited by the rules of evidence." *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.,* No. 04-0997, 2006 U.S. Dist. LEXIS 8723 (E.D. La. Mar. 6, 2006) (citing *FDIC, supra*).

Further, as this Court recognized in its February 14, 2012 Order (Doc. 5682), the Court may draw adverse inferences against parties based on the invocation of the privilege by non-parties. *FDIC,* 45 F.3d at 977 (civil jury can draw a negative inference against party from non-party's invocation of Fifth Amendment); *RAD Services, Inc. v. Aetna Casualty & Surety Co.,* 808 F.2d 271, 275 (3d Cir. 1986) ("policies underlying the privilege . . . allow evidence of a non-party's refusal to testify"); *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 521 (8th Cir. 1984) ("The policies supporting the Fifth Amendment apply with even less force when a non-party witness testifies in a civil proceeding and thus, the Amendment should not work to preclude an adverse inference in this situation."). "A non-party's silence in a civil proceeding implicates Fifth Amendment concerns to an even lesser degree." *RAD Services, Inc.*, 808 F.2d at 275 (citing *Rosebud Sioux Tribe*, 733 F.2d at 521).[1]

"In general, the decision as to whether to admit a person's invocation of the Fifth Amendment into evidence is committed to the discretion of the district court." *Hinojosa v. Butler,* 547 F.3d 285, 291-292 (5th Cir. 2008) (quoting *FDIC,* 45 F.3d at 977); *Farace v. Indep. Fire Ins. Co*., 699 F.2d 204, 210 (5th Cir.1983)). The Court stated in its February 14, 2012 Order (Doc. 5682) that it will make case-by-case determinations as to whether to draw inferences from Fifth Amendment invocations and signaled that it will

[1] In *RAD Services*, a company sued its insurer to recover costs incurred in disposing of hazardous waste materials. The insurer disavowed coverage, asserting that the company violated the law by intentionally dumping the hazardous materials. *Id.* at 272. At trial, the insurer read to the jury deposition transcripts of a company official and a managing employee, in which the deponents invoked their Fifth Amendment rights; it was not clear, however, whether the invoking witnesses were still employed by the company. *Id.* at 273-274. The court instructed the jury that it could infer that the witnesses would have answered the insurer's questions adversely to the company. The Eighth Circuit affirmed, noting that even if the witnesses were no longer employed by the company, the court could draw negative inferences from their invocations. *Id.* at 276-277.

look to the factors set forth in *LiButti v. United States*, 107 F.3d 110 (2d Cir. 1997), which are: (1) the nature of the relevant relationships; (2) the degree of control of the party over the non-party witness; (3) the compatibility of the interests of the party and non-party witness in the outcome of the litigation; and (4) the role of the non-party witness in the litigation. 107 F.3d at 123.

**ARGUMENT**

**I. The Court Is Not Required To Examine The Validity Of The Witnesses' Invocations Before Applying the *Libutti* Factors; Even If It Were Required To Do So, The Invocations At Issue Are Valid Under The Fifth Amendment.**

BP argues that before the Court engages in a case-by-case analysis of the proposed inferences from Vidrine's invocations, the Court must "undertake a threshold two-step inquiry," which includes consideration of whether there were valid bases for the witness' invocation and whether the requested inferences comply with the Federal Rules of Evidence. [Doc. 8870, p.3.] In support of this argument, BP cites *U.S. ex rel. DRC, Inc. v. Custer Battles, LLC*, 415 F. Supp. 2d 628 (E.D. Va. 2006). Contrary to BP's assertion, the *Custer Battles* court did not hold that the Court must determine the validity of an invocation before the *Libutti* factors may be considered. Instead, the *Custer Battles* court stated that this two-step inquiry should be undertaken to determine whether an adverse inference instruction is appropriate in a particular case. Moreover, the Court in *Custer Battles* stated that the validity of an invocation is normally addressed separately in a motion to compel the witness's testimony.

"There is no explicit requirement that the court rule on the validity of a witness' unchallenged invocation of the privilege merely because a party to the litigation asks the Court to draw an adverse inference from it." *Mishkin v. Ensminger (In re Adler, Coleman*

*Clearing Corp.)*, 1998 Bankr. LEXIS 1925, *20-22 (Bankr. S.D.N.Y. Apr. 17, 1998) (denying a motion exclude a witness's Fifth Amendment invocation because the movants never challenged the invocations and never sought to compel the witness's testimony). Having never challenged Vidrine's Fifth Amendment invocations, BP should not be heard now to argue that the invocations were not self-incriminating.

Even if the Court were to inquire into the validity of every invocation before applying the *Libutti* factors, the standard for validity is a low one. "A valid assertion of the privilege requires only the existence of a plausible possibility that the person might be prosecuted…" *Custer Battles,* 415 F. Supp. 2d at 633 (citing *United States v. Sharp*, 920 F.2d 1167, 1170 (4th Cir. 1990) (holding that the 5th Amendment privilege against self-incrimination may be applied in a civil trial "not only to evidence which may directly support a criminal conviction, but to 'information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution.'")); *see Hoffman v. United States*, 341 U.S. 479, 486 (1951) (witness may refuse to answer questions that might "furnish a link in the chain of evidence" that could lead to prosecution); *Allstate Ins. Co. v. Plambeck*, No. 12-175, 2012 U.S. Dist. LEXIS 63649, *15 (E.D. La. May 4, 2012) (Knowles, J.) (noting that "the criminal charges do not have to actually be pending, but a party may invoke the privilege if she has reasonable grounds to believe that her response 'would support a conviction or furnish a link in the chain of [circumstantial] evidence needed to prosecute the claimant for a crime'") (quoting *Zicarelli v. N. J. State Comm'n of Investigation*, 406 U.S. 472, 478 (1972)).

Here, BP has failed to identify any of Vidrine's Fifth Amendment invocations that it deems "invalid." Moreover, Vidrine has been charged in a 23-count indictment that includes eleven counts of felony Involuntary Manslaughter, eleven counts of felony "Seaman's Manslaughter," and a negligence-based misdemeanor Clean Water Act violation. This is proof positive of the validity of Vidrine's concerns and Fifth Amendment invocations.

Accordingly, even if the Court is required to determine whether the inferences sought are adverse or based on incriminating invocations before applying the *Libutti* factors, BP has failed to demonstrate that there is no plausible possibility that responses to the questions posed to Vidrine would lead to prosecution for a crime.

## II. BP Distorts The Corroboration Requirement.

BP argues that there can be no adverse inference on any point for which corroborating evidence does not exist. In support of its assertion, BP relies entirely on *Kontos v. Kontos*, 968 F. Supp. 400, 408-409 (S.D. Ind. 1997). In *Kantos*, the court stated that, "we do not think that the resulting adverse inference would be a sufficient basis upon which a reasonable jury could conclude that Defendant was involved in her husband's murder," and "although inferences based on the assertion of the privilege are permissible, *the entry of judgment* based *only* on the invocation of the privilege and 'without regard to other evidence' exceeds constitutional bounds.'" *Id.* at 408-409 (emphasis added; citations omitted). The court was concerned with whether the invocation of the privilege, by itself, could form the *basis of a judgment*.

The PSC agrees that the Court should consider the adverse inferences together with all other evidence and that judgment cannot be entered against BP based solely on

uncorroborated adverse inferences from Vidrine's Fifth Amendment invocations. It disagrees, however, that every inference must be corroborated by other evidence to be admissible. If corroboration is required for admissibility, the PSC will provide corroboration for the inferences sought.

## III. The Inferences Sought Comply With The Rules Of Evidence.

The PSC agrees that the inferences it seeks must, like any other evidence, comply with the Federal Rules of Evidence. BP has failed to demonstrate, however, that any of the requested inferences circumvent the rules. It claims that several of the inferences sought do not comport with the Rules of Evidence, and gives the example of Interrogatory No. 16, which asks, "The Company Man for BP has the responsibility for calculating or estimating the volume of fluid expected to bleed back during NEGATIVE PRESSURE TESTING?" BP's argument that this interrogatory is overly broad is meritless. Vidrine, as one of two Well Site Leaders on the Deepwater Horizon, was the "Company Man" for BP, and the information requested by the interrogatory falls within his unique knowledge. BP's claim that an inference from this invocation would circumvent the Rules of Evidence should be rejected.

## IV. The Inferences Sought Are Trustworthy And Will Advance The Search For The Truth.

In *FDIC*, the Fifth Circuit observed that, "the fact of present employment serves primarily to reduce the chance that the employee will falsely claim to have engaged in criminal conduct for which the defendant employer is liable." *Id.* at 978 (citing ROBERT HEIDT, *The Conjurer's Circle--The Fifth Amendment Privilege in Civil Cases*, 91 YALE L.J. 1062, 1119-20 n. 214 (1982)). In arguing that any inferences from Vidrine's invocations would not be trustworthy, BP offers the bald assertion that it had no "control"

over Vidrine when he responded to interrogatories. A similar argument was specifically rejected in *N.H. Ins. Co. v. Blue Water Off Shore LLC*, No. 07-0754-WMS-M, 2009, 2009 U.S. Dist. LEXIS 24223 (S.D. Ala., March 23, 2009), where the Court found that the defendant was mistaken in interpreting *Libutti* to require the party's "post-event ability to control the witness's conduct and testimony" before an inference could be drawn from the witness's invocation. *Blue Water, supra* at *8. "On the contrary, this factor addresses the degree of control the party has vested in the non-party witness in regard to the key facts and general subject matter of the litigation' and approximates the analysis for admission of a party opponent under Federal Rule of Evidence 801(d)(2)." *Id.* Further, a lack of proof of continued loyalty cannot, alone, exclude the invocation. As the *RAD Services* Court held and the Fifth Circuit confirmed in *FDIC*, if a witness is truly bent on incriminating a party, he or she is more likely to offer testimony directly to damage the party than to do so via a Fifth Amendment invocation. *RAD Services,* 808 F.2d at 276.

BP's assertion that Vidrine was not among its corporate designees lends no support to its argument. Vidrine was one of two Well Site Leaders on the Deepwater Horizon at the time of the explosion. As such, he has knowledge of facts that cannot be obtained from any other witnesses who are not also invoking the Fifth Amendment. This is particularly true considering that the four BP employees with the most knowledge about the temporary abandonment procedure and the events on the vessel on April 20, 2010, Robert Kaluza, Vidrine, Mark Hafle and Brian Morel have ALL invoked the Fifth Amendment privilege. Plaintiffs' need for the requested presumptions is, therefore, particularly compelling.

BP relies on *Emerson v. Wembley United States, Inc*., 433 F. Supp. 2d 1200, 1212 (D. Colo. 2006). In *Emerson,* an employment discrimination case, the plaintiff sought adverse inferences from invocations taken by an individual who had been in a business relationship with her employer. The deponent had invoked the privilege in response to virtually every question asked, and the adverse inferences the plaintiff sought were "massive in scope." *Id.* She sought an inference in her favor on every question that the deponent refused to answer. Here, the inferences sought are from invocations in response to a limited number of questions crafted by Transocean as interrogatories, and the adverse inferences sought are limited to relevant, probative invocations that meet the requirements of the Federal Rules. Accordingly, BP's reliance on *Emerson* is misplaced. More importantly, BP cannot demonstrate that any lack of control over Vidrine or alignment of interests warrants the refusal of the inferences sought. Thus, the Court should grant the PSC's motion and overrule BP's objection as to the trustworthiness of the invocations.

## V. The Court Should Defer Its Ruling On Adverse Inferences Until The End Of Phase I After The Court Has Heard All Of The Evidence.

The PSC agrees with BP's recommendation that the Court defer its ruling on adverse inferences until it has heard all of the evidence to be presented in Phase One. The Court will be in a better position to rule on BP's objections after it has received and reviewed the Phase One trial evidence. While the PSC has addressed the general arguments and examples that BP raises in its Memorandum, it has not addressed every specific argument raised in the exhibits attached to BP's Memorandum. Until all of the Phase One evidence has been presented, a thorough consideration of all of the objections is not possible.

.

## CONCLUSION

For the foregoing reasons, the PSC respectfully requests that this Court grant its Motion for Adverse Inferences Based on Assertions Of The Fifth Amendment by Donald Vidrine.

Dated: March 18, 2013

Respectfully submitted,

/s/ Stephen J. Herman
**Stephen J. Herman**, La. Bar No. 23129
**HERMAN HERMAN & KATZ LLC**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 569-6024
E-Mail: sherman@hhkc.com
*Plaintiffs Liaison Counsel*

/s/ James Parkerson Roy
**James Parkerson Roy**, La. Bar No.11511
**DOMENGEAUX WRIGHT ROY EDWARDS LLC**
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233-3033
Fax No. (337) 233-2796
E-Mail: jimr@wrightroy.com
*Plaintiffs Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS, MITCHELL, ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office: (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office: (757) 670-3888

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY 10003
Office: (212) 558-5802
Telefax: (212) 344-5461
E-Mail: rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office: (334) 269-2343
Telefax: (334) 954-7555

Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Office: (415) 956-1000
Telefax: (415) 956-1008
E-Mail: ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Office: (504) 394-9000
Telefax: (504) 394-9110
E-Mail: pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL 36660
Office: (251) 471-6191
Telefax: (251) 479-1031
E-Mail: rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail: mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA 70726
Office: (225) 664-4193
Telefax: (225) 664-6925
E-Mail: calvinfayard@fayardlaw.

E-Mail: rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA 70601
Office: (337) 439-0707
Telefax: (337) 439-1029
E-Mail: mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER, HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA 70801-1910
Office: (225) 344-3735
Telefax: (225) 344-0522
E-Mail: mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW & ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Office: (504) 588-1500
Telefax: (504) 588-1514
E-Mail: sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Office: (214) 521-3605
Telefax: (214) 599-1172
E-Mail: ssummy@baronbudd.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail: ervin@colson.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

**CERTIFICATE OF SERVICE**

We hereby certify that the above and foregoing Reply Brief will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 18th day of March, 2013.

/s/ Stephen J. Herman and James Parkerson Roy