UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | § § § § § § § § | MDL No. 2179 SECTION: J JUDGE BARBIER MAG. JUDGE SHUSHAN |
| Applies to: ALL CASES AND 2:10-CV-2771 | | |

**HALLIBURTON ENERGY SERVICES INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR ADVERSE INFERENCES BASED ON DONALD VIDRINE'S ASSERTION OF THE FIFTH AMENDMENT**

Defendant Halliburton Energy Services, Inc. ("HESI") files this Reply Memorandum in Support of Its Motion for Adverse Inferences Based on Donald Vidrine's Assertion of the Fifth Amendment (Rec. Doc. 8678) ("HESI's Motion"). HESI's Motion is based on Donald Vidrine's ("Vidrine") February 8, 2013, Response to Interrogatories propounded by Transocean Offshore Deepwater Drilling, Inc., Transocean Holdings LLC, Transocean Deepwater Inc., and Triton Asset Leasing GmbH (collectively, "Transocean"). BP filed the responsive brief addressed in this reply (Rec. Doc. 8870) ("BP's Response"). In reply to BP's Response, HESI would show the following:

**I.   HESI Is Entitled To Adverse Inferences Against BP Based On Vidrine's Fifth Amendment Invocation.**

  **A.   The Evidence Sought Through Adverse Inferences Against BP is Necessary to Decide the Issues.**

BP misplaces its reliance on case law for its arguments that "[a] court should not draw an inference if there is enough other evidence and testimony to decide the issue without the aid of the inference" and that "in light of the volume and breadth of discovery in this case, the Court need not permit any particular inference." (BP's Response at pp. 4, 6 n.1). BP cites *Abrams*,

where the court ruled on a summary judgment motion "without relying on Fifth Amendment adverse inferences" because the plaintiff offered "enough evidence to create a dispute of material fact." *See State Farm Mut. Auto. Ins. Co. v. Abrams*, No. 96-C-6365, 2000 U.S. Dist. LEXIS 6837, at *25-26 (N.D. Ill. May 11, 2000). BP also cites *Farace*, where the court declined to draw adverse inferences because "[t]he defendant had ample opportunity to impeach its witness by other means" through the use of evidence. *Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 211 (5th Cir. 1983).

Yet the existence and availability of other evidence in *Abrams* and *Farace* renders them inapposite to the instant case, where Vidrine is one of only a few BP employees with unique, personal knowledge of the events that occurred during the temporary abandonment procedures. The other BP employees with knowledge of these issues—Robert Kaluza, Mark Hafle, and Brian Morel—have similarly invoked the Fifth Amendment in lieu of providing responsive testimony. Although BP makes much of the fact that none if its twenty-two corporate representative deponents invoked the Fifth Amendment,[1] it ignores the fact that those representatives lacked personal knowledge of the events that occurred during the temporary abandonment procedures and, thus, could not provide testimony on the subject. As a Well Site Leader, Vidrine played a pivotal role in BP's execution of the temporary abandonment procedures, such as the negative tests, and was heavily involved in BP's interpretation of and reaction to the results of those procedures and tests.

BP also overreaches with its reliance on *Emerson v. Wembley USA, Inc.*, 433 F. Supp. 2d 1200 (D. Colo. 2006). Applying the *LiButti* factors, just as this Court has indicated it intends to do, the *Emerson* court found that the movant did not meet those factors. Based on the particular

---

[1] *See* BP's Response at p. 9.

**HESI'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR ADVERSE INFERENCES BASED ON
DONALD VIDRINE'S ASSERTION OF THE FIFTH AMENDMENT                    Page 2 of 11**

circumstances in *Emerson*, the court declined to make adverse inferences against the defendant, noting that "it is difficult to characterize [the witness] as a key figure in this litigation" and that "[p]laintiff does not assert that… [the witness] directly took any part in the alleged actions that give rise to any of her claims." *Emerson*, 433 F. Supp. 2d at 1213.  The court acknowledged other sources for the evidence sought, stating, "[I]t is difficult to imagine that [the witness] was the only source of the answer to several of Plaintiff's questions....Simply granting an inference would not be trustworthy considering that the circumstances would seem to allow for Plaintiff to find her answers elsewhere." *Id.*  Unlike in *Emerson*, the *LiButti* factors are met with respect to Vidrine in this case.

BP also cites *Emerson* for the proposition that seeking adverse inferences with respect to all the questions for which a witness invokes the Fifth Amendment is an overly broad and unreasonable request.  *See* BP's Response at p. 10 (citing *Emerson* at 1213-14).  To the extent BP implies that this purported rule should be applied to the instant case, HESI's request cannot be properly characterized as overly broad, as HESI does not seek adverse inferences for all of the Interrogatories for which Vidrine invoked the Fifth Amendment.  Regardless, a careful reading of *Emerson* reveals that no such broad rule is prescribed.

Another factor that distinguishes *Emerson* from this case is the plaintiff's failure in *Emerson* to lay a proper foundation for the questions that she asked of the witness.  *Emerson*, 433 F. Supp. 2d at 1214.  The Interrogatories that Transocean propounded on Vidrine were not "…without foundation, and with an alternate source for the answer."  *See id.*  As discussed, *supra*, HESI seeks adverse inferences against BP based on information that is unavailable from other sources and will "advance the search for the truth."  *See LiButti,* 107 F.3d 110 at 124.  Further, BP's expressed concern that Vidrine was "subjected to a systematic interrogation by

counsel who [knew] the witness [would] assert the privilege against self-incrimination"[2] is dubious in light of Vidrine's *agreement* to answer Interrogatories in order to avoid a deposition.

Even with the large volume of discovery in this case, the Court will be unable to determine the extent to which BP's conduct during temporary abandonment contributed to the blowout without testimony from Vidrine or the other BP employees with unique, personal knowledge of the events that occurred during temporary abandonment. Adverse inferences based upon corroborating evidence are necessary to fill in the gaps in the evidence regarding BP's acts and omissions during the temporary abandonment procedures, the knowledge of which is imperative to the Court's findings of fact and conclusions of law.

### B. The Fifth Circuit Does Not Require the Existence of a Current Employment Relationship.

BP cites no authority to support its proposition that adverse inferences are unwarranted because Vidrine was not acting as a corporate representative when he invoked the Fifth Amendment.[3] The Court may, under certain circumstances, draw adverse inferences against parties based on the invocation of the privilege by non-parties. *See FDIC v. Fidelity & Deposit Co. of Maryland*, 45 F.3d 969, 977 (5th Cir. 1995) (a civil jury can draw a negative inference against a party from a non-party's invocation of Fifth Amendment). In *FDIC*, the insurer argued that the non-party witnesses' invocation could not be used against it because they were not its agents or employees. The insurer's "concern" was that "a non-party who stands in no special

---

[2] *See* BP's Response at p. 10.

[3] *See* BP's Response at p. 9. However, in past briefing, BP cited *Curtis v. M&S Petroleum, Incorporated* to support its argument that there should be no adverse inference against BP because the BP witnesses who invoked the Fifth Amendment were not designated as BP corporate representatives. *See* Rec. Doc. 5112 at pp. 6-7 (citing 174 F.3d 661, 674-75 (5th Cir. 1999)). HESI responded that *Curtis* merely stands for the proposition that an adverse inference is permissible against a corporation if its corporate representative invokes the Fifth Amendment in his individual capacity. *See* Rec. Doc. 5227 at pp. 1-2 (citing *Curtis*, 174 F.3d at 673-74). *Curtis* does not, as BP has suggested in past briefing, stand for the proposition that an adverse inference is impermissible against a corporation unless the witness invoking the Fifth Amendment is a corporate representative. *See id*.

relationship to the party at the time of trial may purposefully invoke the privilege solely to discredit the party. The classic example would be a disgruntled former employee who invokes the privilege to hurt his former employer." *Id.* at 978.  The court rejected this argument, citing decisions allowing the admission of invocations by former employees and noting that the "...the lack of proof regarding his continued loyalty to the employer … cannot *per se* exclude from the jury the witness's refusal to testify." *Id.* (quoting *RAD Services, Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 276 (3d Cir. 1986)).  Rather, "...the fact that the invoker of a privilege no longer is an employee of the defendant does not make his refusal to testify any less a vicarious admission of his former employer." *Kontos v. Kontos,* 968 F. Supp. 400, 406 (S.D. Ind. 1997); *see also RAD Services,* 808 F.2d at 273-78 (finding that the trial court properly drew adverse inferences where it was unclear whether the invoking witnesses were still employed by the defendant at the time of their invocation).  Applying *FDIC* here, this Court may draw adverse inferences against BP from the invocations by Vidrine without requiring the demonstration of any relationship between Vidrine and BP at the time of his invocations.

### C. BP Applies the Wrong Standard for the *LiButti* Control Factor.

This Court previously instructed that it would look to the four non-exclusive factors set forth in *LiButti v. United States*, 107 F.3d 110 (2d Cir. 1997), in its case-by-case analysis of whether adverse inferences should be drawn from witnesses' invocations of the Fifth Amendment herein.[4]  (Rec. Doc. 5682 at p. 5).  The second *LiButti* factor analyzes the amount of control the party has "...vested in the non-party witness *in regard to the key facts and general subject matter of the litigation*..."  *LiButti*, 107 F.3d at 123 (emphasis added).  It is not

---

[4] The four *LiButti* factors are: (1) the nature of the relevant relationships; (2) the degree of control of the party over the non-party witness; (3) the compatibility of interests of the party and non-party witness in the outcome of the litigation; and (4) the role of the non-party witness in the litigation.  *See LiButti v. United States*, 107 F.3d 110, 123-24 (2d Cir. 1997).

"...directed to the party's post-event ability to control the witness's conduct and testimony." *New Hampshire Ins. Co. v. Blue Water Off Shore LLC*, No. 07-0754-WMS-M, 2009 WL 792530, at *8 (S.D. Ala. Mar. 23, 2009).

BP's argument that the imposition of adverse inferences based on Vidrine's invocation of the Fifth Amendment is inappropriate because he was not under BP's control on February 8, 2013, when he responded to the Interrogatories propounded by Transocean is in discord with the standard set forth for the *LiButti* "control" factor.  (*See* BP's Response at p. 9) (citing *Miller v. Pilgrim's Pride Corp.*, No. 5:05-CV-00064, 2008 U.S. Dist. LEXIS 3305 (W.D. Va. Jan. 16, 2008)).  The *Pilgrim's Pride* court found that adverse inferences were improper because the employee was no longer employed by the company at the time of trial and, thus, was not under its control; this finding was based on an improper analysis of the control factor of *LiButti*, discussed *supra.  See Pilgrim's Pride*, 2008 U.S. Dist. LEXIS 3305, at *25.  Moreover, BP fails to acknowledge that the *Pilgrim's Pride* opinion also contemplated that the former employee did not exercise control over the subject matter of the litigation, *i.e.*, the decision to terminate the plaintiff.  *See id.* at *26.  The court's refusal to instruct the jury to draw an adverse inference against Pilgrim's Pride was additionally based on its finding that the former employee "asserted her right against self-incrimination relating to her testimony regarding her own background, not with regard to her actions as they related to [the subject matter of the litigation]."  *Id.* at *26-27.  These facts are very different from those surrounding Vidrine, who was at the epicenter of events leading to the Macondo blowout.

BP's reliance on *Akinyemi v. Napolitano*[5] is equally perplexing, as the *Akinyemi* court analyzed the *LiButti* control factor in the same fashion as *Blue Water* and found that an adverse

---

[5] *See* BP's Response at pp. 8-9.

inference was not justified because "...*the witness* had no control over the key facts and issues in the litigation..."  *See* 347 Fed. Appx. 604, 607-08 (2d Cir. 2009) (emphasis added) (citing *LiButti*, 107 F. 3d at 123-24).  Additionally, the *Emerson* court's assessment of this factor led to a finding that the witness was not a key figure in the litigation, as he did not play a controlling role in the underlying aspects of the litigation; the court described him as "[a]t best… a tangential figure to this litigation" due to his lack of involvement in its subject matter.  *Emerson*, 433 F. Supp. 2d at 1213.

The control factor of *LiButti*, as discussed *supra*, does not require an examination of BP's control over Vidrine's decision to invoke the Fifth Amendment.  Instead, this factor refers to the control that BP vested in him during the period of time that is the subject of the litigation.  *See*, *e.g.*, *Blue Water,* 2009 WL 792530, at *8; *Akinyemi*, 347 Fed. Appx. at 607.  Unlike the witnesses in *Pilgrim's Pride* and *Akinyemi*, there is no dispute that Vidrine exercised control over the general subject matter of the litigation—the temporary abandonment of the Macondo well that led to the blowout.  As the Well Site Leader, Vidrine was responsible for ensuring that BP's temporary abandonment procedure was carried out accurately, effectively, and safely.  Further, unlike the witness in *Pilgrim's Pride*, Vidrine invoked the Fifth Amendment in response to questions related to the subject matter of the litigation.  Thus, when correctly applied, the "control" factor in *LiButti* is met with respect to Vidrine.

## II.     Inferences Supported by Corroborating Evidence Should Be Allowed.

BP acknowledges that adverse inferences are proper where independent corroborating evidence exists.[6]  HESI agrees that such evidence must support the inference[7] and has made

---

[6] *See* BP's Response at p. 4.

similar arguments in its own pleadings. (*See*, *e.g.*, Rec. Doc. 5144 at p. 2; 7644-1 at pp. 2-3; 7848 at pp. 3-8). HESI's Motion did not link each and every requested inference with corroborating evidence, rather, it used some of the available corroborating evidence as illustrative examples. HESI did so because it understood from the Court's previous Orders[8] that the Court did not intend for the parties to attach all corroborating evidence to their motions seeking adverse inferences and, further, that the Court will ultimately make its rulings on adverse inferences after it has had an opportunity to receive and review the trial evidence. (*See* HESI's Motion at p. 5 n.2). It is apparent that the PSC, the United States, and Transocean shared HESI's understanding that the parties' motions were not required to support every requested inference with corroborating evidence, because they did not do so themselves.[9] Nor did BP's own motion for adverse inferences against HESI and Transocean set forth corroborating evidence for each and every requested inference.[10]

Indeed, BP's insistence that "those requested inferences which Halliburton failed to support with corroborating evidence should be denied outright" is puzzling in light of its concurrence with HESI's suggestion that the Court will be in a much better position to accurately

---

[7] The Fifth Circuit has recognized that the evidentiary weight of an adverse inference will depend upon the circumstances, but in all cases, the inference cannot stand unsupported. *See Curtis.*, 174 F.3d at 675; *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 119 (5th Cir. 1990). The most important factor in a court's analysis of whether to apply an adverse inference is that the inference sought must be supported by corroborating or independent evidence. *See Gutterman*, 896 F.2d at 119. There must be independent evidence to support the negative inferences beyond the invocation of the privilege against self-incrimination for inferences to be drawn. *See United States v. Stelmokas*, 100 F.3d 302, 311 (3d Cir. 1996) (internal citations omitted).

[8] *See* Rec. Doc. No. 5682 at p. 5 (declining to rule on BP's request to defer ruling on adverse inference requests until all phases of trial are complete, but noting the necessity for the Court to rule on Fifth Amendment invocations for Phase One in the event it decides to issue findings of fact at the conclusion of Phase One).

[9] *See* BP's Response at p. 5 (noting that neither the PSC nor the United States identified any corroborating evidence in their motions for adverse inferences and that Transocean identified only a handful of exhibits regarding Vidrine's role in the incident).

[10] BP's previous Motion for Adverse Inferences Based on Assertions of the Fifth Amendment provides a footnote with a string citation of TREX numbers to corroborate the requested inferences for each witness. However, the TREX numbers are not linked to each requested inference. (*See* Rec. Doc. 7645 at pp. 5-63).

**HESI'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR ADVERSE INFERENCES BASED ON DONALD VIDRINE'S ASSERTION OF THE FIFTH AMENDMENT**                     **Page 8 of 11**

weigh whether sufficient corroborating evidence exists after it receives the Phase One trial evidence. (*See* BP's Response at pp. 5-6, 11). Further, HESI reserved the right to supplement and/or to re-urge its request for adverse inferences at the appropriate time during the Phase One trial. (*See* HESI's Motion at p. 5 n.2). HESI again respectfully urges the Court to defer ruling on the propriety of specific adverse inferences until after it has an opportunity to receive and review the Phase One trial evidence. (*See* HESI's Motion at p. 12; Rec. Doc. 8027 at p. 3). In fact, the Court may find it helpful for the parties to submit additional briefing on the appropriateness of the requested inferences in light of the evidence admitted at trial.

### III.  Conclusion

HESI seeks imposition of the adverse inferences requested in its Motion in response to each of the referenced Interrogatories. In the event the Court does not defer ruling on the issue until after the Phase One trial, HESI submits that it has provided adequate corroborating evidence to support the inferences it seeks against BP based on Vidrine's invocation of the Fifth Amendment and that, for the reasons stated herein, this Court should grant HESI's requested adverse inferences against BP.

Respectfully Submitted,

**GODWIN LEWIS PC**

**By:** /s/ Donald E. Godwin
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
Don.Godwin@GodwinLewis.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
Bruce.Bowman@GodwinLewis.com
Jenny L. Martinez
State Bar No. 24013109
Jenny.Martinez@GodwinLewis.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
Floyd.Hartley@GodwinLewis.com
Gavin E. Hill
State Bar No. 00796756
Gavin.Hill@GodwinLewis.com

Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

R. Alan York
State Bar No. 22167500
Alan.York@GodwinLewis.com
Jerry C. von Sternberg
State Bar No. 20618150
Jerry.VonSternberg@GodwinLewis.com
Misty Hataway-Coné
State Bar No. 24032277
Misty.Cone@GodwinLewis.com

1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing HESI's Memorandum in Support of Its Motion for Adverse Inferences Based on Donald Vidrine's Assertion of the Fifth Amendment has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this 18th day of March, 2013.

                                                  /s/ *Donald E. Godwin*
                                                  Donald E. Godwin