# Exhibit 01B
# Part 3

025496

Wakulla County, FL (Detailed Portion 1)



Case 2:10-md-02179-CJB-SS   Document 6430-25   Filed 05/03/12   Page 143 of 144

Wakulla County, FL (Detailed Portion 2)



Wakulla County, FL (Detailed Portion 3)



Public
Zone A 1
Zone A 2
Zone B 1
Zone B 2

# EXHIBIT 12A

## Compensation Framework for Wetlands Real Property Claims

1. **Eligibility Requirements**

   A. **Eligible Claimants** shall be comprised of claimants who do not fall within the exclusions to the **Economic Loss and Property Class Definition** and who were owners of **Eligible Parcels** during the time period April 20, 2010 to [the date of the Settlement Agreement].

      i. The Claims Administrator shall determine whether an **Eligible Claimant(s)** is the owner of an **Eligible Parcel**.

   B. **Wetlands Real Property Claim Zone** shall be defined as the blue shaded portions of the **Wetlands Real Property Compensation Zone Map** attached as <u>Appendix A</u>. (See <u>Appendix B</u> for a description of the criteria used to establish the "**Wetlands Real Property Claim Zone**").

   C. **Eligible Parcels** shall be defined as parcels located within the **Wetlands Real Property Claim Zone.**

   D. An **Eligible Parcel** shall be placed into one of two **Compensation Categories**:

      **Compensation Category A** shall be defined as those **Eligible Parcels** that were documented as containing the presence of oil by one or more of the following:

      - The published reports of the Deepwater Horizon Unified Command Shoreline Cleanup Assessment Technique teams ("**SCAT**").

      - The Pre-assessments conducted as part of Phase 1 of the Natural Resource Damages Assessment process ("**NRD Pre-assessment**").

      - The Rapid Assessments conducted as part of Phase 1 of the Natural Resource Damages Assessment process (**"NRD Rapid Assessment"**).

      - The Coastal Wetland Vegetation Assessment conducted as part of the Restoration Planning Phase of the Natural Resource Damages Assessment process ("**NRD CWVA**").

      **Compensation Category B** shall be defined as those **Eligible Parcels** that were never documented as containing the presence of oil by any of the following: **SCAT, NRD Pre-assessment, NRD Rapid Assessment, or NRD CWVA.**

      i. An **Eligible Parcel** shall be classified as having the presence of oil (criteria for **Compensation Category A**) if the parcel meets any of the following conditions:

027808

        a.    Any **SCAT Zone**[1] within the parcel has a maximum oiling classification other than "no oil observed." A "**SCAT Zone**" is an area within a SCAT Segment which has a boundary defined by the condition of oil observed during a survey by SCAT assessment teams in the Louisiana wetlands.

        b.    Any **NRD Pre**-assessment conducted within the parcel reported the presence of oil on vegetation and/or sediment.

        c.    Any **NRD Rapid** Assessment conducted within the parcel reported an Oil Thickness Code of anything other than "NA" or recorded a Depth of Penetration greater than zero.

        d.    Any **NRD CWVA** conducted within the parcel reported a Vegetation Oiling Extent Index of greater than zero or a Sediment Surface Oiling Coverage of greater than zero.

    ii.    An **Eligible Parcel** shall be classified as never being documented as containing the presence of oil (criteria for **Compensation Category B**) if the following conditions are met for each assessment conducted within the **Eligible Parcel**:

        a.    No **SCAT** zone within the parcel has a maximum oiling classification other than "no oil observed."

        b.    No **NRD Pre**-assessment conducted within the parcel reported the presence of oil on vegetation and/or sediment.

        c.    No **NRD Rapid** Assessment conducted within the parcel reported an Oil Thickness Code other than "NA" and reported a Depth of Penetration greater than zero.

        d.    No **NRD CWVA** conducted within the parcel reported a Vegetation Oiling Extent Index greater than zero or a Sediment Surface Oiling Coverage greater than zero.

---

[1] For the purposes of calculating the Wetlands Real Property Compensation Amount, the Claims Administrator will use the **SCAT Zone**s defined by the Maximum Oiling Observed file published on the Environmental Resource Management Application (ERMA) Gulf Response website, which was developed jointly by the National Oceanic and Atmospheric Administration (NOAA) Office of Response and Restoration, the University of New Hampshire, and the U.S. Environmental Protection Agency. The Maximum Oiling Observed file can be viewed and downloaded on the ERMA Gulf Response website at http://gomex.erma.noaa.gov/. To access the file, select "SCAT" and then select "Maximum Oiling Observed."

027809

iii. **Administrator's Database**: The Claims Administrator shall maintain a Geographic Information Systems database ("**Administrator's Database**") containing the results of **SCAT, NRD Pre-assessment, NRD Rapid Assessment, NRD CWVA**, and the best available information on parcel boundaries for all real property within the **Wetlands Real Property Claim Zone**. The Claims Administrator shall apply the appropriate **Compensation Category** for each **Eligible Parcel** based upon the information in the **Administrator's Database** and consistent with the criteria in Section 1. D. Attached as Appendix C is a map classifying each known **Eligible Parcel** into a **Compensation Category** by applying the information in the **Administrator's Database** as of the settlement date. This map shall be referred to as the **Eligible Parcel Compensation Category Map**. The **Administrator's Database** is presumed to be the best available evidence, however, that presumption may be rebutted as outlined in Sections E., F., G. and H. below. The use of environmental data (including SCAT and NRDA data) as part of this Compensation Framework shall not constitute an admission or judicial determination related to the admissibility or interpretation of such data for any other purpose, and, further, the use of such data shall have no effect on, and shall be without prejudice to, the use, admissibility and interpretation of such data for any other purpose, including any claims for natural resource damages.

E. A parcel not located within the **Wetlands Real Property Claim Zone** may be added to the **Wetlands Real Property Claim Zone** by the Claims Administrator only if the parcel is documented as containing the presence of oil pursuant to **SCAT** or an official assessment conducted by the Natural Resource Trustees in connection with the DWH Spill. Only parcels located in the following geographic area ("**Area of Potential Eligibility**") are eligible to provide such documentation:

i. As far west as the Louisiana/Texas state line

ii. As far east as the Louisiana/Mississippi state line

iii. As far south as the end of Louisiana state waters

iv. As far north as one half mile inland from the **Wetlands Real Property Claim Zone** (refer to Appendix D for the "**Area of Potential Eligibility Map**")[2]

F. The **Administrator's Database** contains the best available parcel boundary data for real property in the **Wetlands Real Property Claim Zone**. In some instances, this data may be incomplete or out of date. Accordingly, real property located in the **Wetlands Real Property Claim Zone** not identified as a parcel shall nonetheless be classified by

[2] This map shows the boundaries within which parcel owners are eligible to submit additional documentation to become Eligible Parcels.

the Claims Administrator as an **Eligible Parcel** provided the claimant documents the following:

    i.    Actual presence of the parcel in the **Wetlands Real Property Claim Zone**. Documentation of actual presence of a parcel in the **Wetlands Real Property Claim Zone** must consist of an official document provided by the parish tax assessor (such as a 2010 parish tax notice), Clerk of Court, Registrar of Lands, or other governmental lands office or agency, or a professional survey of the parcel.

G.  The **Administrator's Database** contains the best available parcel boundary data for real property in the **Wetlands Real Property Claim Zone**. In some instances, the named owner(s) of a parcel may be inaccurate or out-of-date. Accordingly, a claimant not listed in the **Administrator's Database** will be treated as an **Eligible Claimant** if the claimant provides the following to demonstrate **Eligible Claimant's** ownership of an **Eligible Parcel**:

    i.    An official copy of the deed for the **Eligible Parcel**.

        AND

    ii.   The 2010 property tax assessment notice for the eligible parcel or an official document from the Clerk of Court, Registrar of Lands or other governmental land office or agency showing proving ownership of the **Eligible Parcel** during the time period April 20, 2010 to [the date of the Settlement Agreement].[3]

    iii.  To the extent a state, parish, municipality or other governmental agency agrees to provide the Claims Administrator with access to an official database sufficient for the Claims Administrator to confirm the claimant owned the parcel for which they are seeking compensation, the Claims Administrator need not require from the **Eligible Claimant** an official copy of the deed or official copy of the 2010 property tax assessment notice for the parcel for which they are seeking compensation. Rather, the Claims Administrator is authorized to accept from the claimant the street address and tax identification number or parcel identification number for the **Eligible Parcel** for which they are seeking compensation as sufficient to satisfy this subpart, and the Claims Administrator will use the database to confirm the claimant's valid ownership during the time period April 20, 2010 to [the date of the Settlement Agreement].

---

[3] In some counties, issuance of 2010 tax assessment notices may occur prior to April 20, 2010 such that the correct owner of the eligible parcel may not be reflected, (for example if notices were mailed January 2010 but ownership changed February 2010). In such a case, a claimant may provide other documentation such as a copy of the real estate closing/settlement statement from a sale, in order to prove ownership.

027811

H. An **Eligible Parcel** within the **Wetlands Real Property Claim Zone** may be reclassified by the Claims Administrator into a different **Compensation Category** if the following condition is satisfied:

   i.   An **Eligible Parcel** within the **Wetlands Real Property Claim Zone** shall be reclassified by the Claims Administrator from **Compensation Category B** to **Compensation Category A** if the **Eligible Claimant** provides independent documentation in the form of a government or academic publication or map, not commissioned by the **Eligible Claimant** or the **Eligible Claimant's** attorney or agent, with said independent documentation establishing that a portion of the **Eligible Parcel** contained the presence of oil although no portion of the **Eligible Parcel** is classified as containing the presence of oil pursuant to the published reports of **SCAT, NRD Pre-Assessment, NRD Rapid Assessment or NRD CWVA**.

   ii.  The Claims Administrator shall undertake an investigation to determine whether the information submitted pursuant to this Section satisfies the criteria for reclassification set out H. i. and H. ii.

2. **Compensation for Wetlands Real Property**

   A. An **Eligible Claimant** must submit a **Claim Form**[4], all required supporting documents and a **Verification Statement** to receive compensation for an **Eligible Parcel**. The **Claim Form, Document Requirements** and **Verification Statement** are attached as Appendices E, F and G.

   B. An **Eligible Claimant** who submits a **Claim Form**, all required supporting documents, and a **Verification Statement,** shall be entitled to receive the appropriate Wetlands Real Property Compensation amount ("**Wetlands Real Property Compensation Amount**") based upon the criteria outlined in this section.

   C. The **Wetlands Real Property Compensation Amount** shall be calculated as explained below. See Appendix H for an example calculation of **Wetlands Real Property Compensation Amount** on a hypothetical parcel in **Compensation Category A**.

      i.   An **Eligible Parcel** in **Compensation Category A** shall be compensated for an **Oiled Primary Area**, a **Non-Oiled Primary Area,** and a **Buffer Area**.

      ii.  An **Eligible Parcel** in **Compensation Category B** shall be compensated for a **Non-Oiled Primary Area** only.

---

[4] The Claims Administrator may prepare the final Claim Form consistent with Appendix E. In no case shall the final Claim Form omit the substance of any question contained in Appendix E.

iii. **Oiled Primary Area** shall be defined as an area 50 feet immediately inland from the following:

    a. The **SCAT Zone**(s) documented as containing the presence of oil within an **Eligible Parcel** that is located on the portion of the shoreline assessed by SCAT teams ("**SCAT Line**").

    b. The **SCAT Zone** nearest to the location of any **NRD Pre-assessment, NRD Rapid Assessment,** or **NRD CWVA** which reported the presence of oil within an **Eligible Parcel** if no **SCAT Zone** also within the parcel reported the presence of oil.

iv. **Buffer Area** shall be defined as an area 30 feet immediately inland from the entire length of the **Oiled Primary Area.**

v. **Non-Oiled Primary Area** shall be defined as an area 30 feet immediately inland from **SCAT Zone**(s) documented as not containing the presence of oil within an **Eligible Parcel.**

vi. **Eligible Parcels** in **Compensation Category A** shall be paid a **Wetlands Real Property Compensation Amount** calculated as follows:

    a. The Oiled **Primary Area** shall be compensated at $25,000 per acre ("**Oiled Rate**").

    b. The **Buffer Area** shall be compensated at $10,000 per acre ("**Buffer Rate**").

    c. The **Non-Oiled Primary Area** shall be compensated at $11,000 per acre ("**Non-Oiled Rate**").

vii. **Eligible Parcels** in **Compensation Category B** shall be paid a **Wetlands Real Property Compensation Amount** calculated as follows:

    a. The **Non-Oiled Primary Area** shall be compensated at $4,500 per acre ("**Non-Oiled Rate B**").   See Appendix I for an example calculation of **Wetlands Real Property Compensation Amount** on a hypothetical parcel in **Compensation Category B**.

viii. Appendix J provides examples of the calculation of the **Wetlands Real Property Compensation Amount**.

ix. **Eligible Parcels** shall be entitled to the minimum payments as outlined below. Appendix K provides an example of the calculation for a minimum **Wetlands Real Property Compensation Amount.**

027813

a. Parcels in **Compensation Category A** shall be compensated for a minimum of one acre of **Oiled Primary Area** and a minimum of one acre of **Buffer Area,** equal to a total of $35,000.

b.     Parcels in **Compensation Category B** shall be entitled to compensation for a minimum of one acre of **Non-Oiled Primary Area**, equal to $4,500.

D. An RTP of 2.5 shall be applied to the **Wetlands Real Property Compensation Amount**. For example, a hypothetical **Wetlands Real Property Compensation Amount** of $38,788 (refer to Appendix K), would receive an RTP equal to $96,970 for a total **Wetlands Real Property Compensation Amount** of $135,758 inclusive of RTP.

E. The **Wetlands Real Property Compensation Amount** shall be allocated as follows:

    i.     For an **Eligible Parcel** for which there is only one **Eligible Claimant**, the **Eligible Claimant** shall receive the entire portion of the **Wetlands Real Property Compensation Amount**.

    ii.     For an **Eligible Parcel** for which there is more than one **Eligible Claimant**, the **Wetlands Real Property Compensation Amount** shall be allocated based on the period of legal possession of the particular **Eligible Parcel** by each **Eligible Claimant** between April 20, 2010, and [the date of the Settlement Agreement]. The allocation shall be determined by dividing the **Wetlands Real Property Compensation Amount** by the number of days between April 20, 2010 and [the date of the Settlement Agreement] and then multiplying the result by the number of days each **Eligible Claimant** had legal possession of the **Eligible Parcel.**

    iii.     The Claims Administrator shall determine whether an **Eligible Claimant(s)** is the owner of an **Eligible Parcel**

## 3.  Physical Damage to Real or Personal Property

A. **Physical Damage** shall be defined as any physical damage that occurred to an **Eligible Claimant's** real or personal property located on an **Eligible Parcel(s)** in connection with the DWH Spill response cleanup operations that were consistent with the National Contingency Plan or specifically ordered by the Federal On-Scene Coordinator or delegates thereof, with the exception of any damage claimed for intrusion of oil, dispersant or other substances onto the **Eligible Claimant's Eligible Parcel(s)**. Damages for claims of intrusion of oil, dispersants or other substances on an **Eligible Parcel** are addressed in Section 2. B. above.

027814

       i.    Some examples of **Physical Damage** include but are not limited to **Physical Damage** that occurred to a dock, a building, a structure, appurtenances, a patio, or a deck located on an **Eligible Parcel** caused by a vehicle, machinery or equipment in use for DWH Spill response cleanup operations.

B. An **Eligible Claimant** must provide the Claims Administrator with satisfactory proof of all of the following items below in order to qualify to receive compensation for **Physical Damage**:

     i.    The claimant is an **Eligible Claimant**.

    ii.    The claimed **Physical Damage** occurred on an **Eligible Parcel**.

   iii.    The **Physical Damage** occurred between April 20, 2010 and the date the Economic Injury and Property Claim Settlement Agreement is executed by the parties.

   iv.    The condition of the real or personal property prior to the claimed physical damage.

    v.    The **Eligible Claimant** owned the real or personal property for which **Physical Damaged** is claimed at the time the damage occurred.  The Claims Administrator shall determine whether an **Eligible Claimant**(s) is the owner of the personal property.

   vi.    The **Physical Damage** was caused by DWH Spill response cleanup operations.

  vii.    For an **Eligible Claimant** claiming to have incurred costs to repair or replace the damaged property, evidence to establish that the costs were incurred by the **Eligible Claimant** and that they were reasonable and necessary.

 viii.    For an **Eligible Claimant** seeking compensation for costs not yet incurred to repair or replace the damaged property, a cost estimate and proof the costs are reasonable and necessary.

C. An **Eligible Claimant** must comply with the **Claim Form**, **Document Requirements** and **Verification Statement** listed in Appendices E, F and G in order to qualify to receive compensation for **Physical Damage**.

027815

D. An **Eligible Claimant** who claims **Physical Damage** and satisfies Section 3. A, 3. B and 3. C above shall receive the lesser of the reasonable and necessary costs to repair or replace the damaged property.

    i.    The Claims Administrator shall have the authority to verify the **Eligible Claimant's** estimate of repair and replacement costs, and to undertake an investigation to determine the reasonableness of the costs to repair or replace the damaged property, including obtaining an independent estimate.

    ii.    In no event is an **Eligible Claimant** entitled to receive pursuant to this Section 3 damages for intrusion of oil, dispersants or other substances onto the **Eligible Claimant's Eligible Parcel**(s). Compensation for claims of intrusion of oil, dispersants or other substances on an **Eligible Parcel** are addressed in Section 2. B above.

4. **Federal and State Regulatory Requirements**

A. Nothing in this **Compensation Framework for Coastal Real Property Claim**s shall alter, expand, or reduce BP's obligations for cleanup, removal, spill response and remediation of real property under applicable federal, state, or local laws, regulations, orders, or agreements. **Eligible Claimant** shall acknowledge that any right to require any cleanup or remediation of the parcel shall not lie with the claimant, but solely with governmental authorities, and that the need for any cleanup or remediation, and the standards by which the need for or sufficiency of such remediation is decided, shall be determined by governmental regulators of the executive department in accordance with properly promulgated law, rules, regulations, orders or agreements. Such governmental regulators alone shall make such determinations, and the **Eligible Claimant** shall not employ regulatory proceedings as a means to seek the redress of claims, which are extinguished pursuant to this Settlement Agreement. It is expressly agreed that this acknowledgement of continued potential responsibility for governmental compliance on the part of the BP (and all other parties released) shall not grant the claimant any personal jurisdiction recourse with respect to the regulatory obligations of the released parties. In the event proceedings, formal or informal, occur before governmental authorities, the claimant agrees to cooperate fully with the released parties in addressing questions or concerns presented by such proceedings; the **Eligible Claimant** shall provide full and free access to the **Eligible Parcel** in connection therewith, and shall further cooperate with the released parties in undertaking and proposing by the released parties such remediation that the released parties deem most appropriate, desirable, and/or cost-effective in meeting regulatory requirements, irrespective of any personal claims,

027816

Case 2:10-md-02179-CJB-SS Document 6430-26 Filed 05/03/13 Page 15 of 124

preferences, rights of use or similar considerations of the **Eligible Claimant**, it being understood that such personal claims and considerations fall within the scope of the claims released by the **Eligible Claimant**.

027817

Compensation Framework for Wetlands Real Property Claims
**Appendix A**
**Wetlands Real Property Compensation Zone Map**

The **Wetlands Real Property Compensation Zone Map** is found in a separate document.

027818

## Compensation Framework for Wetlands Real Property Claims
### Appendix B
### Criteria Used to Establish the Wetlands Real Property Claim Zone

The following criteria were used to establish the **Wetlands Real Property Claim Zone**:

1.  Areas directly intersected by the **SCAT Line**, regardless of whether or not the presence of oil was reported on that portion of the **SCAT Line**, depicted below:



2.  Parcels in which an **NRD Pre-assessment**, **NRD Rapid Assessment**, and/or **NRD CWVA** reported the presence of oil, depicted below:



027819

3. Where there is a break in an otherwise continuous portion of a **SCAT Line**, BP and the PSC jointly selected parcels that would have likely been intersected by the **SCAT Line** if it had been continuous.



The zone geography is based on Tobin Digital Ownership maps published by P2 Energy Solutions in Cameron, Calcasieu, Iberia, St. Mary, Iberia, Lafourche, Jefferson, Plaquemines, and St. Bernard Parishes. In Terrebonne Parish, the zone geography is based on parcel boundaries published by the Terrebonne Parish Tax Assessor.

027820

**Compensation Framework for Wetlands Real Property Claims**
**Appendix C**
**Eligible Parcel Compensation Category Map**

The **Eligible Parcel Compensation Category Map** is found in a separate document.

027821

Compensation Framework for Wetlands Real Property Claims
Appendix D
Area of Potential Eligibility Map

The **Area of Potential Eligibility Map** is located in a separate document.

027822

**Compensation Framework for Wetlands Real Property Claims**
**Appendix E**
**Wetlands Real Property Claim Form**

1. Are you claiming you are entitled to compensation for one or more parcels you <u>owned</u> during the time period April 20, 2010 to [the date of the Settlement Agreement] under the **Compensation Framework for Wetlands Real Property Claims**?

    ____ Yes      ____ No

2. If you answered yes to Question 1, are you also claiming you are entitled to compensation for physical damage that occurred to your real or personal property located on your parcel(s) in connection with the DWH Spill response clean-up operations during the time period April 20, 2010 to [the date of the Settlement Agreement]?

    ____ Yes      ____ No

*If you answered yes to any of the questions above, (i) answer the questions below, (ii) provide the documentation required in the* **Document Requirements** *form (Appendix F), and (iii) complete a* **Wetlands Real Property Verification Statement** *(Appendix G).*

3. What is the street address of the parcel(s)?

    _____

    _____

    _____

    _____

4.  What is the tax assessment identification number of the parcel(s)?

_____

_____

_____

_____

_____

5.  What is the parcel identification number of the parcel(s)?

_____

_____

_____

_____

_____

*You __must only__ answer the following questions if you claim you are entitled to compensation for physical damage that occurred to your real or personal property located on your parcel(s).*

6.  Identify and describe the real or personal property that you claim was physically damaged in connection with the DWH Spill response cleanup operations.

_____

_____

_____

_____

_____

027824

7.  Describe the physical damage that you claim occurred to your real or personal property located on your parcel(s) in connection with the DWH Spill response clean-up operations.

_____

_____

_____

_____

_____

8.  Where on your parcel was your real or personal property located when the damage occurred?

_____

_____

_____

_____

_____

9.  When did the physical damage to your real or personal property occur?

_____

_____

_____

_____

_____

027825

10. Describe in detail what caused the physical damage to your real or personal property.

_____

_____

_____

_____

_____

11. If you know, were the DWH Spill response cleanup operations that you claim caused the physical damage to your real or personal property consistent with the National Contingency Plan or specifically ordered by the Federal On-Scene Coordinator or delegates thereof?

_____ Yes      _____ No        _____ I Don't Know

12. If you know, who caused the physical damage to your real or personal property?

_____

_____

_____

_____

_____

13. Describe the condition of the real or personal property prior to the damage you claim occurred.

_____

_____

_____

_____

027826

14. Did you own the real or personal property that you claim was damaged at the time the damage occurred?

                     \_\_\_\_ Yes     \_\_\_ No

15. Have you already incurred the cost to repair or replace the real or personal property that you claim was physically damaged?

                     \_\_\_\_ Yes     \_\_\_ No

16. If your answer to Question 15 is yes, please identify the following:

    a. Was the damaged property repaired or replaced?

      _____

    b. If the damaged property was replaced, state the reasons that the property was replaced instead of being repaired.

      _____

      _____

      _____

    c. If the damaged property was replaced, state the name and address of the individual or business from which the replacement was obtained and the cost you incurred to replace the property.

      _____

      _____

      _____

027827

d. If the damaged property was repaired, state the name and address and telephone number of the individual or business that did the repairs, the cost you incurred to repair the property, and identify the repairs that were done.

_____

_____

_____

_____

_____

17. If the answer to Question 15 is no, please identify the following:

a. State whether the damaged property can be repaired:

_____ Yes        ___ No

b. If the damaged property can be repaired, have you obtained a cost estimate to repair the damaged property?

_____ Yes        ___ No

c. If you have obtained a cost estimate to repair the damaged property, state the name address and phone number of the individual or entity that provided the cost estimate, what repairs are being done and the amount of the cost estimate for the repairs.

_____

_____

_____

_____

_____

027828

Case 2:10-md-02179-CJB-SS   Document 6430-25   Filed 05/03/12   Page 23 of 32

    d.  If you claim that the damaged property cannot be repaired, explain the reasons for your claim.

_____

_____

_____

_____

_____

027829

**Compensation Framework for Wetlands Real Property Claims**
**Appendix F**
**Wetlands Real Property Claim Form**
**Document Requirements**

*To receive compensation under the* **Compensation Framework for Wetlands Real Property Claims** *you* __must__ *provide copies of the documents described below.*

1. Owners of parcel(s) seeking compensation under the **Compensation Framework for Wetlands Real Property Claims** must provide the following:

    a. Official copy of the deed for the parcel for which you are seeking compensation.

        i. To the extent a state, parish, municipality or other governmental agency agrees to provide the Claims Administrator with access to an official database sufficient for the Claims Administrator to confirm the claimant owned the parcel for which they are seeking compensation, the Claims Administrator need not require from the **Eligible Claimant** an official copy of the deed or official copy of the 2010 property tax assessment notice for the parcel for which they are seeking compensation. Rather, the Claims Administrator is authorized to accept from the claimant the street address and tax identification number or parcel identification number for the **Eligible Parcel** for which they are seeking compensation as sufficient to satisfy this subpart, and the Claims Administrator will use the database to confirm the claimant's valid ownership during the time period April 20, 2010 to [the date of the Settlement Agreement].

    b. Official copy of the 2010 property tax assessment notice.[5]

        i. To the extent a state, parish, municipality or other governmental agency agrees to provide the Claims Administrator with access to an official database sufficient for the Claims Administrator to confirm the claimant owned the parcel for which they are seeking compensation, the Claims Administrator need not require from the **Eligible Claimant** an official copy of the deed or official copy of the 2010 property tax assessment notice for the parcel for which they are seeking compensation. Rather, the Claims Administrator is

---

[5] In some counties, issuance of 2010 tax assessment notices may occur prior to April 20, 2010 such that the correct owner of the eligible parcel may not be reflected, (for example if notices were mailed January 2010 but ownership changed February 2010). In such a case, a claimant may provide other documentation such as a copy of the real estate closing/settlement statement from a sale, in order to prove ownership.

027830

authorized to accept from the claimant the street address and tax identification number or parcel identification number for the **Eligible Parcel** for which they are seeking compensation as sufficient to satisfy this subpart, and the Claims Administrator will use the database to confirm the claimant's valid ownership during the time period April 20, 2010 to [the date of the Settlement Agreement].

c. If you believe your parcel should be added to the **Wetlands Real Property Claim Zone** (see Section 1. E.), documentation showing a parcel contains the presence of oil pursuant to **SCAT** or by an official assessment conducted by the Natural Resource Trustees in connection with the DWH Spill.

d. If your parcel is not identified in the **Wetlands Real Property Claim Zone** and should be (see Section 1. F. i.), an official document provided by the county tax assessor, Clerk of Court, Registrar of Lands or other governmental lands office or agency, or a professional survey of the parcel showing actual presence of the parcel within the **Wetlands Real Property Claim Zone.**

e. If you believe the **Administrator's Database** does not list you as the owner of a parcel in the **Wetlands Real Property Claim Zone** that you own (see Section 1. G. i. - ii.), an official copy of the deed and the 2010 property tax assessment notice for the parcel.

f. If you believe your parcel should be reclassified from **Compensation Category B** to **Compensation Category A** (see Section 1. H. i.), independent documentation in the form of a government or academic report, not commissioned by the **Eligible Claimant** or the **Eligible Claimant's** attorney or agent, with said independent documentation establishing that the **Eligible Parcel** contains the presence of oil released by the DWH Spill.

g. Completed **Verification Statement**.

2. Owners of parcel(s) seeking compensation for physical damage to real or personal property pursuant to Section 3. B. of the **Compensation Framework for Coastal Real Property Claims**, <u>must</u> provide the Claims Administrator proof of the items below. Proof may consist of documents, receipts, photographs, videotaped footage, a sworn statement from the claimant and sworn statements from a witness(es).

a. The claimed physical damage to your real or personal property occurred on a parcel listed in the **Claim Form**.

b. The physical damage occurred between April 20, 2010 and [date of settlement agreement].

c.  The condition of the real or personal property prior to the claimed physical damage.

d.  You owned the real or personal property at the time the physical damage occurred.

e.  The physical damage was caused by DWH Spill response cleanup operations.

f.  If you claim to have incurred costs to repair or replace the damaged property, evidence to establish that the costs were incurred by you and that they were reasonable and necessary.

g.  If you are seeking compensation for costs not yet incurred to repair or replace the damaged property, a cost estimate and proof the costs are reasonable and necessary.

027832

**Compensation Framework for Wetlands Real Property Claims**
**Appendix G**
**Wetlands Real Property Verification Statement**

I, _____, owned my parcel during the period April 20, 2010 to [the date of the Settlement Agreement].

I declare and affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Signature

_____
Date

027833

Compensation Framework for Wetlands Real Property Claims
Appendix H
Example of Wetlands Real Property Compensation Amount[6] on Hypothetical Parcel In
Compensation Category A



* The final compensation amount shown in this Appendix is exclusive of an RTP of 2.50.

027834

## Compensation Framework for Wetlands Real Property Claims
### Appendix I
### Example of Wetlands Real Property Compensation Amount[7] on Hypothetical Parcel in Compensation Category B



[7] The final compensation amount shown in this Appendix is exclusive of an RTP of 2.50.

027835

Compensation Framework for Wetlands Real Property Claims
## Appendix J
### Calculation Example of Wetlands Real Property Compensation Amount[8]
#### Example 1 – Compensation Category A: Parcels Documented as Oiled by SCAT

| Key | Field | Formula | Values |
|---|---|---|---|
| A | Oiled SCAT Zone Length (ft) | | 1,500 |
| B | Oiled Primary Area Depth (Section 2. C. iii.) (ft) | | 50 |
| C | Oiled Primary Area ($ft^2$) | A x B | 75,000 |
| D | Oiled Primary Area (acres) | C / 43,560 $ft^2$ | 1.72 |
| E | Oiled Rate (Section 2. C. vi. a.) | | $25,000 |
| F | **Oiled Primary Area Compensation** | D x E | **$43,044** |
| G | Oiled Buffer Primary Area Depth (Section 2. C. iv.) (ft) | | 30 |
| H | Oiled Buffer Primary Area ($ft^2$) | A x G | 45,000 |
| I | Oiled Buffer Primary Area (acres) | H / 43,560 $ft^2$ | 1.03 |
| J | Buffer Rate (Section 2. C. vi. b.) | | $10,000 |
| K | **Oiled Buffer Primary Area Compensation** | I x J | **$10,331** |
| L | Non-Oiled SCAT Zone Length (ft) | | 1,800 |
| M | Non-Oiled Primary Area Depth (Section 2. C. v.) (ft) | | 30 |
| N | Non-Oiled Primary Area ($ft^2$) | L x M | 54,000 |
| O | Non-Oiled Primary Area (acres) | N / 43,560 $ft^2$ | 1.24 |
| P | Non-Oiled Rate (Section 2. C. vi. c.) | | $11,000 |
| Q | **Non-Oiled Primary Area Compensation** | O x P | **$13,636** |
| R | **Wetlands Real Property Compensation Amount** | F+K+Q | **$67,011** |

---

[8] The final compensation amount shown in this Appendix is exclusive of an RTP of 2.50.

Compensation Framework for Wetlands Real Property Claims
### Appendix J
Calculation Example of Wetlands Real Property Compensation Amount[9]
Example 2 – Compensation Category B: Parcels not Documented as Oiled by SCAT

| Key | Field | Formula | Values |
|-----|-------|---------|--------|
| A | Oiled SCAT Zone Length (ft) | | - |
| B | Oiled Primary Area Depth (Section 2. C. iii.) (ft) | | 50 |
| C | Oiled Primary Area (ft$^2$) | A x B | - |
| D | Oiled Primary Area (acres) | C / 43,560 ft$^2$ | - |
| E | Oiled Rate (Section 2. C. vi. a.) | | $25,000 |
| F | **Oiled Primary Area Compensation** | D x E | - |
| G | Oiled Buffer Primary Area Depth (Section 2. C. iv.) (ft) | | 30 |
| H | Oiled Buffer Primary Area (ft$^2$) | A x G | - |
| I | Oiled Buffer Primary Area (acres) | H / 43,560 ft$^2$ | - |
| J | Buffer Rate (Section 2. C. vi. b.) | | $10,000 |
| K | **Oiled Buffer Primary Area Compensation** | I x J | - |
| L | Non-Oiled SCAT Zone Length (ft) | | 2,000 |
| M | Non-Oiled Primary Area Depth (Section 2. C. v.) (ft) | | 30 |
| N | Non-Oiled Primary Area (ft$^2$) | L x M | 60,000 |
| O | Non-Oiled Primary Area (acres) | N / 43,560 ft$^2$ | 1.38 |
| P | Non-Oiled Rate B (Section 2. C. vii. a.) | | $4,500 |
| Q | **Non-Oiled Primary Area Compensation** | O x P | $6,198 |
| R | **Wetlands Real Property Compensation Amount** | F+K+Q | $6,198 |

[9] The final compensation amount shown in this Appendix is exclusive of an RTP of 2.50.

## Compensation Framework for Wetlands Real Property Claims
### Appendix K
### Calculation Example of Minimum Wetlands Real Property Compensation Amount[10]
### Compensation Category A: Parcels Documented as Oiled by SCAT

| Key | Field | Formula | Values |
|---|---|---|---|
| A | Oiled SCAT Zone Length (ft) | | 450 |
| B | Oiled Primary Area Depth (Section 2. C. iii.) (ft) | | 50 |
| C | Oiled Primary Area (ft²) | A x B | 22,500 |
| D | Oiled Primary Area (acres) | C / 43,560 ft² | 0.52 |
| E | Minimum Oiled Primary Area (acres) - If Oiled Primary Area < 1 acre | | 1.00 |
| F | Oiled Rate (Section 2. C. vi. a.) | | $25,000 |
| G | **Oiled Primary Area Compensation** | E x F | **$25,000** |
| H | Oiled Buffer Primary Area Depth (Section 2. C. iv.) (ft) | | 30 |
| I | Oiled Buffer Primary Area (ft²) | A x H | 13,500 |
| J | Oiled Buffer Primary Area (acres) | I / 43,560 ft² | 0.31 |
| K | Minimum Oiled Buffer Primary Area (acres) - If Oiled Primary Area < 1 acre | | 1.00 |
| L | Buffer Rate (Section 2. C. vi. b.) | | $10,000 |
| M | **Oiled Buffer Primary Area Compensation** | K x L | **$10,000** |
| N | Non-Oiled SCAT Zone Length (ft) | | 500 |
| O | Non-Oiled Primary Area Depth (Section 2. C. v.) (ft) | | 30 |
| P | Non-Oiled Primary Area (ft²) | N x O | 15,000 |
| Q | Non-Oiled Primary Area (acres) | P / 43,560 ft² | 0.34 |
| R | Non-Oiled Rate (Section 2. C. vi. c.) | | $11,000 |
| S | **Non-Oiled Primary Area Compensation** | Q x R | **$3,788** |
| T | **Wetlands Real Property Compensation Amount** | G+M+S | **$38,788** |

---

[10] The final compensation amount shown in this Appendix is exclusive of an RTP of 2.50.

027838

# EXHIBIT 12B

Case 2:10-md-02179-CJB-SS   Document 6430-27   Filed 05/03/12   Page 2 of 13

# Appendix A to Compensation Framework for Wetlands Real Property Claims:

# Wetlands Real Property Claim Zone Map

Appendix A: Wetlands Real Property Claim Zone Map

1

0.289.28

# Louisiana (Entire Zone)



Notes:

1. Parcel boundaries are based on Tobin digital ownership maps published by P2 Energy Solutions.

2. Potential claimants can determine whether their parcel is eligible for compensation under the Compensation Framework for Wetlands Real Property Claims by entering their address or location on the settlement website.

Appendix A: Wetlands Real Property Claim
Zone Map

2

0289 29

# Louisiana (Detailed Portion 1)



Appendix A: Wetlands Real Property Claim
Zone Map

# Louisiana (Detailed Portion 2)



Appendix A: Wetlands Real Property Claim
Zone Map

Case 2:10-md-02179-CJB-SS   Document 6430-27   Filed 05/03/12   Page 6 of 13

## Louisiana (Detailed Portion 3)



Appendix A: Wetlands Real Property Claim
Zone Map

## Louisiana (Detailed Portion 4)



Appendix A: Wetlands Real Property Claim
Zone Map

## Louisiana (Detailed Portion 5)



Appendix A: Wetlands Real Property Claim
Zone Map

7
0 28034

# Louisiana (Detailed Portion 6)



Appendix A: Wetlands Real Property Claim
Zone Map

## Louisiana (Detailed Portion 7)



Appendix A: Wetlands Real Property Claim Zone Map

# Louisiana (Detailed Portion 8)



Appendix A: Wetlands Real Property Claim
Zone Map

10

## Louisiana (Detailed Portion 9)



Appendix A: Wetlands Real Property Claim
Zone Map

# Louisiana (Detailed Portion 10)



Appendix A: Wetlands Real Property Claim
Zone Map

# EXHIBIT 12C

# Appendix C to Compensation Framework for Wetlands Real Property Claims:

# Eligible Parcel Compensation Category Map

1

0 2089 40

Appendix C: Eligible Parcel Compensation
Category Map

Case 2:10-md-02179-CJB-SS   Document 6430-28   Filed 05/03/12   Page 3 of 13

Louisiana (Entire Zone)





Zone A

Zone B

Appendix C: Eligible Parcel Compensation
Category Map

Case 2:10-md-02179-CJB-SS   Document 6430-28   Filed 05/03/12   Page 4 of 13

## Louisiana (Detailed Portion 1)



Zone A

Zone B

Appendix C: Eligible Parcel Compensation
Category Map

3

0208.42

Louisiana (Detailed Portion 2)



| | Zone A |
|---|---|
| | Zone B |

Appendix C: Eligible Parcel Compensation
Category Map

Case 2:10-md-02179-CJB-SS   Document 6430-28   Filed 05/03/12   Page 6 of 13

## Louisiana (Detailed Portion 3)





Appendix C: Eligible Parcel Compensation
Category Map

Louisiana (Detailed Portion 4)



Zone A

Zone B

Gulf of Mexico

Appendix C: Eligible Parcel Compensation
Category Map

6

0.209.45

Case 2:10-md-02179-CJB-SS   Document 6430-28   Filed 05/03/12   Page 8 of 13

## Louisiana (Detailed Portion 5)



Appendix C: Eligible Parcel Compensation
Category Map

Case 2:10-md-02179-CJB-SS   Document 6430-28   Filed 05/03/12   Page 9 of 13



Louisiana (Detailed Portion 6)

Zone A
Zone B

Appendix C: Eligible Parcel Compensation
Category Map

Louisiana (Detailed Portion 7)



Zone A

Zone B

Appendix C: Eligible Parcel Compensation
Category Map



Louisiana (Detailed Portion 8)

Appendix C: Eligible Parcel Compensation Category Map

Zone A

Zone B

Case 2:10-md-02179-CJB-SS   Document 6430-28   Filed 05/03/12   Page 12 of 13

## Louisiana (Detailed Portion 9)



Appendix C: Eligible Parcel Compensation Category Map

| Zone A | |
| --- | --- |
| Zone B | |

## Louisiana (Detailed Portion 10)



Zone A
Zone B

Appendix C: Eligible Parcel Compensation
Category Map

12

0.20061

# EXHIBIT 12D

# Appendix D to Compensation Framework for Wetlands Real Property Claims: Area of Potential Eligibility Map

Appendix D: Area of Potential Eligibility Map

0288152

Case 2:10-md-02179-CJB-SS   Document 6430-29   Filed 05/03/12   Page 3 of 13

## Louisiana (Entire Zone)



Louisiana / Mississippi Border

½ mile Inland from Zone

End of Louisiana State Waters

Louisiana / Texas Border

Appendix D: Area of Potential Eligibility
Map

Wetlands Real Property Claim Zone

Area of Potential Eligibility

2

0 209 63

Cameron Parish, LA



Appendix D: Area of Potential Eligibility
Map

Wetlands Real Property Claim Zone

Area of Potential Eligibility

3

0 20054

Case 2:10-md-02179-CJB-SS   Document 6430-29   Filed 05/03/12   Page 5 of 13

Vermilion Parish, LA



Appendix D: Area of Potential Eligibility
Map

Wetlands Real Property Claim Zone

Area of Potential Eligibility

Case 2:10-md-02179-CJB-SS Document 6430-29 Filed 05/03/12 Page 6 of 13

Iberia Parish, LA



Wetlands Real Property Claim Zone

Area of Potential Eligibility

Appendix D: Area of Potential Eligibility
Map

Case 2:10-md-02179-CJB-SS   Document 6430-29   Filed 05/03/12   Page 7 of 13



St. Mary Parish, LA

Appendix D: Area of Potential Eligibility
Map

Wetlands Real Property Claim Zone

Area of Potential Eligibility

Case 2:10-md-02179-CJB-SS   Document 6430-29   Filed 05/03/12   Page 8 of 13

Terrebonne Parish, LA



Appendix D: Area of Potential Eligibility
Map

Wetlands Real Property Claim Zone

Area of Potential Eligibility

Lafourche Parish, LA



Wetlands Real Property Claim Zone

Area of Potential Eligibility

Appendix D: Area of Potential Eligibility
Map

Case 2:10-md-02179-CJB-SS   Document 6430-29   Filed 05/03/12   Page 10 of 13

## Jefferson Parish, LA



Appendix D: Area of Potential Eligibility Map

Wetlands Real Property Claim Zone
Area of Potential Eligibility

## Plaquemines Parish, LA



Appendix D: Area of Potential Eligibility Map

Wetlands Real Property Claim Zone   10

Area of Potential Eligibility

Area of Potential Eligibility

020061

St. Bernard Parish, LA



Appendix D: Area of Potential Eligibility
Map

Wetlands Real Property Claim Zone    11

Area of Potential Eligibility

Wetlands Real Property Claim Zone

Area of Potential Eligibility

0 28062

## St. Tammany Parish and Orleans Parish, LA



Appendix D: Area of Potential Eligibility
Map

Wetlands Real Property Claim Zone

Area of Potential Eligibility

# EXHIBIT 13A

## Compensation Framework for Real Property Sales

1. **Eligibility Requirements**

A. Real Property Sales Compensation Zone shall be defined as Residential Parcels identified in the Real Property Sales Compensation Zone Map as attached as Appendix A.

B. Residential Parcels shall be defined as those parcels within the Real Property Sales Compensation Zone identified in the Real Property Sales Compensation Zone Map for which the county where the parcel is located has designated the parcel as a residential classification.

C. There are two instances in which parcels not identified as Residential Parcels on the Real Property Sales Compensation Zone Map shall nonetheless be treated as Residential Parcels within the Real Property Sales Compensation Zone:

    a. If an Eligible Claimant can document the following: (i) actual presence of a parcel for which there are no parcel lines on the Real Property Sales Compensation Zone Map, (ii) the parcel is located within the geography identified in the Real Property Sales Compensation Zone Map, and (iii) the county where the parcel is located has designated the parcel as a residential classification, then the parcel shall be treated as a Residential Parcel within the Real Property Sales Compensation Zone. Documentation must consist of an official document provided by the county assessor or a professional survey of the parcel.

    b. If an Eligible Claimant can document the following: (i) the parcel is misclassified as non-residential parcel on the Real Property Sales Compensation Zone Map, and (ii) the parcel is located within the geography identified in the Real Property Sales Compensation Zone Map, then the parcel shall be treated as a Residential Parcel within the Real Property Sales Compensation Zone.  Documentation must consist of an official document provided by the county assessor such as a 2010 county tax notice classifying the parcel as residential.

D. Eligible Claimants shall be comprised of sellers of Residential Parcels within the Real Property Sales Compensation Zone who are included in the Economic Injury and Property Claim Settlement Class Definition[1] and who satisfy the following criteria:

    a. owned a Residential Parcel in the Real Property Sales Compensation Zone on April 20, 2010; and

---

[1] Note:  The most current definitions of the Economic Injury and Property Claim Settlement Class Definition are included in the draft Economic Injury and Property Claim Settlement Agreement forwarded by BP to the PSC on December 4, 2011 and in the class definition document bates numbered 005125 to 5128 and dated December 20, 2011.

026375

b. executed a sales contract for the sale[2] of that Residential Parcel that meets the following criteria:

    i. The sales contract was executed on or after April 21, 2010 and the sale closed during the time period April 21, 2010 to December 31, 2010.  OR

    ii. The sales contract was executed before April 21, 2010, but the contract price was reduced as a result of the Deepwater Horizon Spill (DH Spill). Additionally, the sale must have closed during the time period April 21, 2010 to December 31, 2010.

E. Pursuant to sub-sections (A) to (C) above, the following parcel types are not among the parcels for which a claimant is eligible to be compensated in this MDL class settlement:

    a. Residential Parcels within the Real Property Sales Compensation Zone sold before April 21, 2010 or after December 31, 2010;

    b. Residential Parcels within the Real Property Sales Compensation Zone sold during the time period April 21, 2010 to December 31, 2010, but

        i. The sales contract was executed before April 21, 2010 and the contract price was not reduced prior to the closing. OR

        ii. The sales contract was executed before April 21, 2010 and the contract price was reduced but not as a result of the DH Spill

    c. Residential Parcels located outside of the Real Property Sales Compensation Zone;

    d. Non-Residential Parcels located within or outside the Real Property Sales Compensation Zone.

A claim that may exist, if any, with respect to parcels of the type identified in sub-sections (a) to (c) above, is not subject to this Settlement Agreement or barred by the Order approving this Settlement Agreement.

## 2. Compensation for Real Property Sales

A. An Eligible Claimant must submit a claim form and supporting documentation. The Claim Form is attached as Appendix B.

B. A claimant who satisfies the Eligibility Requirements in Section 1 above shall be entitled to receive the Real Property Sales Compensation Amount for the Residential Parcel. The Real Property Sales Compensation Amount shall be calculated as follows:

---

[2] Sales shall not include transfers from borrowers to lenders that take place as part of the foreclosure process, such as deeds in lieu of foreclosure, foreclosure deeds, Sheriff's deeds.

a. The sale price of the Residential Parcel shall be multiplied by the Real Property Compensation Percentage of 12.5%.   A detailed description for calculation of the Real Property Sales Compensation Percentage is contained in Appendix C.

b. Any prior compensation to the claimant from the GCCF or BP for a claim related to the sale of the Residential Parcel shall be deducted.

c. The Real Property Sales Compensation Amount shall be allocated among Eligible Claimants according to their ownership interest.

### Example

An Eligible Claimant who submits a claim form and supporting documentation for a sale of a Residential Parcel with a sale price of $200,000, with no former co-owners, and no prior GCCF or BP payment for the same property damage would receive compensation of $25,000.

**Residential Parcel Sale Price x Real Property Sales Compensation Percentage = Real Property Compensation Amount**

$200,000 x 12.5% = $25,000

# Appendix A
## Real Property Sales Compensation Map

The Real Property Sales Compensation Zone Map is found in a separate document.

## Appendix B
### Real Property Sales Claim Form

1. Did you own a Residential Parcel within the Real Property Sales Compensation Zone identified on the Real Property Sales Compensation Zone Map on April 20, 2010?

                     ____ Yes            ___ No

2. Did you execute a sales contract for the sale of that Residential Parcel?

                     ____ Yes            ___ No

3. Did you close on that sale of that Residential Parcel on or before December 31, 2010?

                     ____ Yes            ___ No

*If you answered yes to all of the questions above, please (A) answer questions 4 through 10 below and (B) provide copies of the documents required below.*

*If you answered no to any of the questions above, you are not eligible for compensation under the Real Property Sales Compensation Framework portion of the Settlement Agreement and you should not complete or submit this form.*

4. What date did you execute your sales contract? _____

5. If you executed your sales contract before April 21, 2010, was the contract price reduced at some point before closing?

                     ____ Yes            ___ No

Case 2:10-md-02179-CJB-SS   Document 6463-50   Filed 05/04/12   Page 82 of 11

6.  If the contract price was reduced at some point before closing, why was the price reduced?

_____

_____

_____

_____

_____

_____

_____

_____

7.  What is the street address of the Residential Parcel? _____

8.  In what county is the Residential Parcel located? _____

9.  What is the parcel identification number for the Residential Parcel? _____

10. What is the tax identification assessment number for the Residential Parcel? _____

026380

## Document Requirements

*If you answered yes to questions 1 through 3 above, please provide copies of the following documents.*

1. Official copy of the deed for the Residential Parcel sale that took place during the time period April 21, 2010 to December 31, 2010.

2. Copy of the signed sales contract(s) for the sale that took place during the time period April 21, 2010 to December 31, 2010.

   - If you answered yes to question number 5 above, provide a copy of both the sales contract executed before April 21, 2010 and a copy of the sales contract executed on or after April 21, 2010.

3. If you answered yes to question number 5 above, provide the supporting documentation to demonstrate why the contract price was reduced. For example, provide the letter from the purchaser or the purchaser's real estate attorney requesting the reduction. If you have no documentation, provide contact information for the purchaser.

4. Copy of the closing statement for the sale that took place during the time period April 21, 2010 to December 31, 2010.

## Appendix C

### Detailed Description

a) Real Property Sales Compensation Zone consists of Residential Parcels identified in Real Property Compensation Map.

b) Real Property Sales Comparison Zone consists of improved residential parcels in the counties in Real Property Compensation Map not in the Real Property Sales Compensation Zone.

c) Sale Price is the actual sale price of the parcel.

d) Benchmark Price is an estimate of the value of the parcel at the time of sale based on the 2010 county appraised value. The formula is for the Benchmark Price is:

2010 County-Appraised Value
x   Sales-Appraised Value Ratio (expressing the value as of 1/1/10)
x   Change in HPI[3] for MSA[4] of parcel (expressing the value as of 3/31/10)
x   Change in HPI for non-Gulf MSA (expressing the value at the date of sale)
=   Benchmark Price

e) Sales to Appraised Value Ratio is calculated as follows. For each arms-length sale of improved residential parcels in the region during 2009 the Sale Price is divided by the 2010 County Appraised value.[5] The Sales to Appraised Value Ratio is the average of these values. A separate Sales-Appraised Value Ratio is calculated for condominiums and single-family homes.

The formula for Sales to Appraised Value Ratio is as follows:

$$\text{Sales} - \text{Appraised Value Ratio} = \frac{\sum_{i=1}^{n} \frac{\text{Adjusted Sales Price}_i}{\text{2010 County Appraised Value}_i}}{n}$$

Where $i$ represents each individual parcel in the region and $n$ represents the total number of parcels in the region.

f) Change in HPI for MSA of parcel is the percentage change from January 1, 2010 to March 31, 2010 in the HPI for that MSA. See Table 1, Pre-Spill column.

---

[3] House Price Index (HPI) is the index of price changes in each MSA, as compiled by the Federal Housing Finance Agency.

[4] Metropolitan Statistical Areas (MSAs) are geographical zones defined by the U.S. Office of Management and Budget. If a sale occurred in a county without an MSA, the most similar surrounding MSA was used. Non-Gulf MSAs are surrounding MSAs that are not on the Gulf coast.

[5] Before a Sales to Appraised Value Ratio is determined, (1) 2009 Sales Prices are adjusted to account for the change in real estate values between the sale of those parcels and January 1, 2010 (See Table 2); and (2) the top and bottom 2.5% of parcels are excluded — based on the ratio of 2009 sales prices to 2010 assessed values.

026382

g) Change in HPI for the Non-Gulf MSA is the percentage change in the HPI for the Non-Gulf MSA that is most similar to the parcel's MSA between March 31, 2010 and the quarter of the date of sale for the parcel. See Table 1, Post-Spill column.

h) Real Property Sales Compensation Zone Percentage is the weighted average percentage difference between Sales Prices and Benchmark Prices for all Real Property Sales Compensation Zone parcels sold in arms-length transactions during April 21, 2010 through December 31, 2010.[6]

The formula for Real Property Sales Compensation Zone Percentage is as follows:

$$\text{Real Property Sales Compensation Zone Percentage}$$
$$= \frac{\sum_{i=1}^{n} \text{Sales Price Real Property Sales Compensation Zone}_i - \text{Benchmark Price Real Property Sales Compensation Zone}_i}{\sum_{i=1}^{n} \text{Sales Price Real Property Sales Compensation Zone}_i}$$

Where $i$ represents each individual parcel and $n$ represents the total number of parcels.

i) Real Property Sales Comparison Zone Percentage is the weighted average percentage difference between sales prices and Benchmark Prices for all improved residential parcels sold in arms-length transactions in the region except Real Property Sales Compensation Zone parcels during April 21, 2010 through December 31, 2010.

The formula for Real Property Sales Comparison Zone Percentage is as follows:

$$\text{Real Property Sales Comparison Zone Percentage}$$
$$= \frac{\sum_{i=1}^{n} \text{Sales Price Real Property Sales Comparison Zone}_i - \text{Benchmark Price Real Property Sales Comparison Zone}_i}{\sum_{i=1}^{n} \text{Sales Price Real Property Sales Comparison Zone}_i}$$

Where $i$ represents each individual parcel and $n$ represents the total number of parcels.

j) Real Property Sales Compensation Amount shall be defined as the Real Property Sales Compensation Zone Percentage subtracted from the Real Property Sales Comparison Zone Percentage plus the Real Property Sales Compensation Zone Adjustment Percentage.

The formula for the Real Property Sales Compensation Amount is as follows:

|   | Real Property Sales Comparison Zone Percentage |
|---|---|
| − | Real Property Sales Compensation Zone Percentage |
| + | Real Property Sales Compensation Zone Adjustment Percentage |
| = | Real Property Sales Compensation Percentage |

---

[6] When calculating average differences between Sales Prices and Benchmark Prices, the top and bottom 2.5% of parcels are excluded — based on the ratio of 2010 sales prices to 2010 assessed values.



026384

# EXHIBIT 13B

# Appendix A: Real Property Sales Compensation Zone Map

Appendix A: Real Property Sales
Compensation Zone Map

LA, MS, AL, FL



Appendix A: Real Property Sales
Compensation Zone Map

Case 2:10-md-02179-CJB-SS   Document 6430-31   Filed 05/03/12   Page 4 of 69

## Hancock County, MS (1)



Appendix A: Real Property Sales
Compensation Zone Map

Case 2:10-md-02179-CJB-SS   Document 6430-31   Filed 05/03/12   Page 5 of 69

Hancock County, MS (2)



Appendix A: Real Property Sales
Compensation Zone Map

Hancock County, MS (3)



Appendix A: Real Property Sales
Compensation Zone Map

Hancock County, MS (4)



Case 2:10-md-02179-CJB-SS   Document 6430-31   Filed 05/03/12   Page 8 of 69

Harrison County, MS (1)



Appendix A: Real Property Sales
Compensation Zone Map

Case 2:10-md-02179-CJB-SS   Document 6430-31   Filed 05/03/12   Page 9 of 69

Harrison County, MS (2)



Appendix A: Real Property Sales
Compensation Zone Map

Harrison County, MS (3)



Appendix A: Real Property Sales
Compensation Zone Map

026316

## Harrison County, MS (4)



Appendix A: Real Property Sales
Compensation Zone Map

10

026317

Harrison County, MS (5)



11

Appendix A: Real Property Sales
Compensation Zone Map

Case 2:10-md-02179-CJB-SS   Document 6430-31   Filed 05/03/12   Page 13 of 69

## Harrison County, MS (6)



Appendix A: Real Property Sales
Compensation Zone Map

026319

Jackson County, MS (1)



Appendix A: Real Property Sales
Compensation Zone Map

13

Case 2:10-md-02179-CJB-SS   Document 6430-31   Filed 05/03/12   Page 15 of 69

Jackson County, MS (2)



Appendix A: Real Property Sales
Compensation Zone Map

Case 2:10-md-02179-CJB-SS   Document 6430-31   Filed 05/03/12   Page 16 of 69

Jackson County, MS (3)



Appendix A: Real Property Sales
Compensation Zone Map

15

026322

Case 2:10-md-02179-CJB-SS   Document 6430-31   Filed 05/03/12   Page 17 of 69

16

Jackson County, MS (4)



Appendix A: Real Property Sales
Compensation Zone Map

Jackson County, MS (5)



Appendix A: Real Property Sales
Compensation Zone Map

Case 2:10-md-02179-CJB-SS   Document 6430-31   Filed 05/03/12   Page 19 of 69

# Mobile County, AL (1)



Appendix A: Real Property Sales
Compensation Zone Map

026326

Mobile County, AL (2)



Appendix A: Real Property Sales
Compensation Zone Map

19

Mobile County, AL (3)



20

Appendix A: Real Property Sales
Compensation Zone Map

026326

## Mobile County, AL (4)



Appendix A: Real Property Sales
Compensation Zone Map

026327

21

Case 2:10-md-02179-CJB-SS   Document 6430-31   Filed 05/03/12   Page 23 of 69

Mobile County, AL (5)



026329

Baldwin County, AL (1)



Appendix A: Real Property Sales
Compensation Zone Map

23

026330

Baldwin County, AL (2)



Appendix A: Real Property Sales
Compensation Zone Map

24

Case 2:10-md-02179-CJB-SS   Document 6430-31   Filed 05/03/12   Page 26 of 69

## Baldwin County, AL (3)



Appendix A: Real Property Sales
Compensation Zone Map

25

026332

## Escambia County, FL (1)



26

Appendix A: Real Property Sales
Compensation Zone Map

026333

Escambia County, FL (2)



Appendix A: Real Property Sales
Compensation Zone Map

27

Escambia County, FL (3)



## Santa Rosa County, FL (1)



Appendix A: Real Property Sales
Compensation Zone Map

026336

30

Santa Rosa County, FL (2)



Appendix A: Real Property Sales
Compensation Zone Map

Case 2:10-md-02179-CJB-SS   Document 6430-31   Filed 05/03/12   Page 31 of 69

## Santa Rosa County, FL (3)



Appendix A: Real Property Sales
Compensation Zone Map

31

026338

Case 2:10-md-02179-CJB-SS   Document 6430-31   Filed 05/03/12   Page 33 of 69

Okaloosa County, FL (1)



32

Appendix A: Real Property Sales
Compensation Zone Map

Case 2:10-md-02179-CJB-SS   Document 6430-31   Filed 05/03/12   Page 34 of 69

Okaloosa County, FL (2)



Appendix A: Real Property Sales
Compensation Zone Map

026340

Case 2:10-md-02179-CJB-SS Document 6430-31 Filed 05/03/12 Page 35 of 69

Okaloosa County, FL (3)



34

Appendix A: Real Property Sales
Compensation Zone Map

Case 2:10-md-02179-CJB-SS   Document 6430-31   Filed 05/03/12   Page 36 of 69

Walton County, FL (1)



Appendix A: Real Property Sales
Compensation Zone Map

026342

Walton County, FL (2)



36

Appendix A: Real Property Sales
Compensation Zone Map

Case 2:10-md-02179-CJB-SS   Document 6430-31   Filed 05/03/12   Page 38 of 69

Walton County, FL (3)



Appendix A: Real Property Sales
Compensation Zone Map