# Exhibit 6

# MEMORANDUM

**To:** Patrick A. Juneau, Esq.
Claims Administrator

**From:** Class Counsel

**Matter:** <u>In re: Deepwater Horizon</u>
MDL No. 2179

**Re:** Request for Formal Policy Statement: Monthly Revenue

**Date:** December 16, 2012

      Despite the focus of the Settlement Agreement negotiated, agreed to, noticed, and submitted for approval by BP, on monthly revenue, and the insistence by BP on the submission of month-by-month profit and loss statements, (or alternate source documents), BP has now questioned the Program,[1] and argued in numerous Appeals,[2] that some Claimants should have their Monthly Revenue averaged out over a number of months, or even years. Further, BP suggests that Costs incurred either before or after the Compensation Period be "matched" to Revenue received during the Compensation Period. And, finally, BP attempts to resurrect its suggestions of an inquiry into potential alternative causation.

      Class Counsel therefore respectfully request a formal Policy Statement.

Specifically:

1. When a business keeps its books on a cash basis, revenue is earned during the month of receipt, irrespective of when the contract was entered or services were performed.

2. When a business keeps its books on an accrual basis, and/or has prepared and submitted its monthly P&Ls on an accrual basis to the Settlement Program, revenue is earned during the month that such revenue is both earned and is realized or realizable.

   For example, if a construction firm receives and books a lump sum payment in Month 1 to cover work performed in Months 1-3, the entire lump sum payment is treated as revenue during Month 1 for purposes of the BEL Causation and Compensation Frameworks.

3. The "corresponding variable expenses" associated with monthly revenue are the expenses that are expended or incurred during the Benchmark and Compensation months in question.

---

[1] *See, e.g.,* E-Mail from Dan Cantor to Mike Juneau, re: "Accountant Questions" (Dec. 11, 2012).

[2] *See, e.g.,* ███████████████████████████

>   For example: If August is a Benchmark / Compensation month for either Causation and/or Compensation Purposes, the variable expenses are the variable expenses that are incurred and booked in August, even if they might arguably relate to revenue that is not received and booked until November.
>
>   For example: Where a claimant retail establishment purchases large amounts of inventory during Month 1, the inventory (Costs of Goods Sold) that was incurred / expended and booked in Month 1 is treated as Month 1 costs, even if the inventory was sold during Months 2-4.
>
>   For example: Claimant is a construction company that maintains its books on a cash basis and purchases $40 in materials in June, and then performs half of the job in July and half in August, incurring $20 dollars in labor costs in each month, and gets paid $100 for the job in September. For purposes of the BEL framework, the $100 revenue is earned in September, while the $40 costs are incurred in June.
>
>   For example: Claimant is a law firm representing a personal injury plaintiff on a contingency fee basis. Attorneys spend $250 to file the case in June, 20 hours and $150 in computer research costs submitting briefs in July, and 30 hours and $500 taking depositions in August. In September, a settlement is reached, and the Firm receives a $10,000 contingency fee payment, plus reimbursement of the $900 in expenses. For purposes of the BEL framework, $250 in costs would be incurred in June; $150 in costs would be incurred in July; $500 in costs would be incurred in August; and $10,900 in revenue would be earned in September.
>
>   For example: Claimant is a farmer who plants his crop in April and books associated labor and material costs of $100 getting the crop in the ground. Between May and September the farmer books $40 in monthly expenses maintaining and nurturing the crop ($200 total for the 5 months), and then incurs and books $100 in labor costs for October when the crop is harvested. The harvested crop is taken to market and sold for $1,000 on November 27 with all revenue recorded in that month against $100 in selling costs. For purposes of the BEL framework, there would be costs of $100 in April; costs of $40 in May, June, July, August and September; costs of $100 in October; costs of $100 in November; and revenue of $1,000 in November.

4.  Where a Claimant ceases a line of business during the Benchmark Period, such revenue from the terminated line of business is included in the BEL calculation.

    For example: Claimant rented commercial properties in 2007 but sold those properties at the beginning of 2008, for the purposes of the BEL Framework, the 2007 revenue from the properties would be included in the Causation and/or Compensation calculation(s).

**Discussion**

Averaging the revenue; attempting to correlate specific revenue to specific expenditures in previous or subsequent months; and/or eliminating revenue based on changes in the Class Member's business:

- Was not suggested by BP during negotiations;

- Is not supported by the terms of the Settlement Agreement;

- Would require substantial documentation and other information beyond what is contemplated or provided for in the Settlement Agreement's Documentation requirements;

- Violates the established Policy precluding an inquiry by the Program into potential "alternative causes";[3]

- Is impractical and unworkable;

- Is inconsistent with BP's prior focus and insistence on Monthly Profit & Loss statements;

- Is inconsistent with the Claims Administrator's Policy regarding the use and restatement of Profit & Loss statements;[4]

- Assumes and/or implies that attorneys only work on one case at a time; that construction firms only work on one project at a time; and that retailers only purchase and sell one batch of inventory at one time;[5]

---

[3] *See* E-MAIL FROM JUDGE BARBIER, RE "MEETING TODAY RE NON-PROFITS AND SIP" Dec. 12, 2012; ANNOUNCEMENT OF POLICY DECISIONS REGARDING CLAIMS ADMINISTRATION, Oct. 10, 2012, No.2; LETTER FROM MARK HOLSTEIN TO PAT JUNEAU, Sept. 28, 2012.

[4] *See* ANNOUNCEMENT OF POLICY DECISIONS REGARDING CLAIMS ADMINISTRATION, Sept. 25, 2012, No.1(c) (If the claimant's profit and loss statements for a year were prepared on a Cash Basis, the claimant may be permitted – but is in no way required – to restate such statements on an Accrual Basis in connection with the submission of a Business Economic Loss claim).

[5] BP's hypotheticals, which implicitly suggest that it's not "fair" to assign revenue and costs to the months in which such revenue was actually earned and such costs actually incurred, ignore the rest of the claimant's business. For example, the attorney will continue to expend costs during the Compensation Period with respect to other cases on which revenue may not be recognized for years, if ever. A construction company may expend costs for new projects even as it collects for work and materials provided in connection with old projects. A retailer will often continue to stock its shelves with different inventories of different product lines that are purchased and sold at different times.

- Doesn't account for the possibility that a business line (and the associated revenue and/or expenses) may have been added by the Claimant prior to or during the Compensation Period;[6] and,

- To the extent unfavorable, is inconsistent with Settlement Agreement Section 4.3.8.

The primary reference to monthly profit and loss statements is in Exhibit 4A to the Agreement, which states that the claimant is required to produce:

> Monthly and annual profit and loss statements (which identify individual expense line items and revenue categories), or alternate source documents establishing monthly revenues and expenses for the claimed Benchmark Period, 2010 and, if applicable, 2011. Profit and loss statements shall identify the dates on which they were created. The Claims Administrator may, in his discretion, request source documents for profit and loss statements. If there is a discrepancy between amounts reflected in a tax return and comparable items reflected in a profit and loss statement for the same period, the Claims Administrator may request the claimant to provide additional information or documentation.[7]

This provision is supplemented by the Definition of "Contemporaneous" which provides that:

> "Contemporaneous" or "Contemporaneously prepared" records or documentation shall mean documents or other evidence generated or received in the ordinary course of business at or around the time period to which they relate; in the case of financial statements, this shall include all periodic financial statements regularly prepared in the ordinary course of business. *In addition, "contemporaneous" or "contemporaneously" prepared evidence or documentation*, even if not proximate in time to the event or occurrence to which it relates, *shall include (1) documentation that is based on or derived from other data, information, or business records created at or about the time of the event, occurrence or item in question,* (2) a statement that is consistent with documentation created at or about the time of the event, occurrence or item in question, or (3) would support a reasonable inference that such event, occurrence, or other item in question

---

[6] BP implicitly complains that revenue associated with a line of business that was discontinued during the Benchmark Period should not be included in the BEL calculation. However, it is just as plausible that a claimant may have added a line of business during the Benchmark Period and/or during the Compensation Period, which would result in additional revenue and expenses during the Compensation Period, as compared with the Benchmark Period.

[7] Exhibit 4A, Item 4.

Page 4

actually occurred.[8]

Nothing in these provisions or elsewhere in the Settlement Agreement specifies the accounting method which must be used to create the monthly profit and loss statements.

While the Settlement Agreement does not necessarily dictate the use of Generally Accepted Accounting Principles, (and, indeed, intentionally departs from GAAP in several respects), it is significant to note in this context that both the cash basis of accounting and the accrual basis of accounting are accepted bases for determining when to book revenue. Both are well recognized methods of accounting. The tax law (Internal Revenue Code) was established essentially under the cash basis, with situations where modified cash or accrual accounting is used. Financial reporting for investors and creditors is primarily accrual based. Under cash basis accounting, revenue is recognized when cash is received. Under accrual accounting, revenue is recognized when it is both (i) earned and is (ii) realized or realizable.

The attempt to "match" expenses to revenue bears resemblance to research and development (R&D) costs. Companies engage in R&D activities (*i.e.* incur expense) knowing that the incidence (and certainly the amount) of future benefit (*i.e.* revenue) is uncertain. Because these expenses cannot be effectively correlated with future revenue, Statement of Financial Accounting Standards No. 2 (1974)  "Accounting for Research and Development Costs"  requires that the R&D expenditures be expensed immediately as incurred.

With respect to attorney contingency fees in particular, the appropriate guidance for such "contingencies" is contained in the source document FASB Statement No. 5  "Accounting for Contingencies"  as well as in the FASB Accounting Standards Codification (which was implemented in 2009) under FASB ASC 450-10. Contingencies are defined as an existing condition, situation, or set of circumstances involving uncertainty as to possible gain (gain contingency) or loss (loss contingency) to an entity that will ultimately be resolved when one or more future events occur or fail to occur. In accordance with these standards, virtually all plaintiff law firms maintain their books on a cash basis; case costs are booked when incurred (irrespective of whether or when they might be recovered from the client and/or defendant); fees (and case cost reimbursements) are booked as revenue (and taxed as income) in the month in which they are received (irrespective of when the work was performed).[9]

A prime failure of BP's proposal is that there is no way to calculate the revenue that should be reported in the relevant periods for cases in which expenses are incurred, but payment has not yet been received. That is, while BP wants to allocate current revenues to prior periods, the fallacy of that methodology is shown by the impossibility of allocating future revenues to current periods.

---

[8] Section 38.38.

[9] *See, e.g.,* FASB STATEMENT NO. 5 (1975), ¶17(a) ("Contingencies that might result in gains usually are not reflected in the accounts since to do so might be to recognize revenue prior to its realization").