# Exhibit 11B

# Economic And Property Damages Settlement – Business Economic Loss ("BEL") Compensation Issue

*January 24, 2013*

**IN CAMERA SUBMISSION BY BP**

# 1. What Is The Problem With How Class Counsel Seek To Implement The Settlement For BEL Claims?

1.  **Class Counsel seek to implement the BEL Compensation Framework (Ex. 4C) contrary to the Settlement's plain terms.**

    –   Stated purpose of the Agreement is to settle Class Claims for economic damages caused by the oil spill ("The purpose of this Agreement is to settle all and only the RELEASED CLAIMS of the Economic Class, PLAINTIFFS, and ECONOMIC CLASS MEMBERS …"). Settlement Agreement at 1.

    –   Each BEL claimant must satisfy documentation, causation, and compensation tests. Exhibits 4A, 4B and 4C.

    –   The Agreement *was not* intended to pay objectively non-existent, fictitious losses, or artificially inflated losses.

2.  **Class Counsel seek to implement the BEL Compensation Framework (Ex. 4C) in an illogical and absurd manner, so that:**

    –   Claimants whose own objective financial data establishes that they have no losses at all during 2010 would be paid for non-existent, fictitious losses.

    –   Claimants whose own objective financial data establishes that they have only a small loss during 2010 would be paid for artificially inflated losses.

    –   Claimants with profits that were greater in 2010 than any prior period would be paid large amounts for non-existent, fictitious losses.

3.  **Class Counsel seek to implement the BEL Framework so that the objective BEL compensation tests improperly use claimants' financial data, and hence do not work as the parties agreed and intended.**

# 2.1. What Real-Life Claims Illustrate The Problem With How Class Counsel Seek To Implement The Settlement For BEL Claims?

▶ **EXAMPLE 1: Construction Claimant** ▇▇▇▇▇▇▇▇ **One Of The Largest Claims To Date**

  – $9.7 million post-RTP offer / $7.7 million pre-RTP offer

  – No actual loss during 2010: May-Dec 2010 revenue was $3.15 million greater than benchmark year, and May-Dec 2010 variable profit was $3.6 million greater than benchmark year

  – Claim (and offer) for non-existent, fictitious losses



3

# 2.2. What Real-Life Claims Illustrate The Problem With How Class Counsel Seek To Implement The Settlement For BEL Claims?

▶ **EXAMPLE 2: Farm Claimant** ███████████

— $435,000 post-RTP offer / $348,000 pre-RTP offer

— No actual loss during 2010: 2010 annual revenue was $1.7 million greater than benchmark year (and 2010 crop year revenue was $1.9 million greater than benchmark year), and 2010 May-Dec variable profit was $1.75 million greater than benchmark year

— Claim (and offer) for non-existent, fictitious loss



4

# 2.3. What Real-Life Claims Illustrate The Problem With How Class Counsel Seek To Implement The Settlement For BEL Claims?

▶ **EXAMPLE 3: Professional Services Claimant** ▮▮▮▮▮▮▮

— $3.7 million post-RTP offer  / $2.9 million pre-RTP offer

— No actual loss during 2010:  May-Dec 2010 revenue was $1.7 million greater than benchmark year, May-Dec 2010 variable profit was $565,000 greater than benchmark year

— Claim (and offer) for non-existent, fictitious loss



# 3. How Prevalent Is This Problem With Class Counsel's Approach To Implementing The Settlement For BEL Claims?

1. **The Settlement Program has done a good job of applying requirements and handling BEL claims.**

   ▶ Processed more than 3,300 BEL claims.

   ▶ BP has appealed only 1.9% of total awards, and 5.5% of BEL awards.

2. **But for some claims, revenue is not properly matched to the corresponding expenses that generated that revenue, as Ex. 4C requires.**

3. **The Settlement Program recognizes this mismatch problem, and that "the result can be disproportionate awards for certain types of claims."   1-15-13 P. Juneau e-mail.**

# 3. How Prevalent Is This Problem With Class Counsel's Approach To Implementing The Settlement For BEL Claims? (cont.)

4. **The revenue-corresponding expense matching problem is prevalent for:**

   ▶ Farming claims: at least 82 farming claimants seeking $43 million.

   ▶ Construction claims:  at least 484 construction claimants seeking $163 million.

   ▶ Professional services claims:  at least 445 professional services claimants seeking $123 million.

5. **The revenue-corresponding expense matching problem has a large potential dollar impact – hundreds of millions of dollars, and increasing.**

7

# 4.1. How Is The BEL Claim Process Supposed To Work Under The Settlement?

1. **BEL Framework requires claimants to satisfy requirements for documentation, causation, and compensation (Exs. 4A, 4B, 4C).**

2. **"The compensation framework for business claimants compares the actual profit of a business during a defined post-spill period in 2010 to the profit that the claimant *might have expected to earn* in the comparable post-spill period of 2010." Ex. 4C at 1 (emph. added).**

3. **Steps to applying BEL test:**

   ► Step 1 "is determined as the difference in Variable Profit between the 2010 Compensation Period selected by the claimant and the Variable Profit over the comparable months of the Benchmark Period."  Ex. 4C at 3.

   ► Step 2 "is intended to compensate claimants for incremental profits the claimant might have been expected to generate in 2010 in the absence of the spill …" Ex. 4C at 4.

# 4.1. How Is The BEL Claim Process Supposed To Work Under The Settlement? (cont.)

4. To calculate variable profit under the Agreement, "[s]um the monthly *revenue* over the period" and "[s]ubtract the *corresponding* variable expenses from revenue over the same time period."  Ex. 4C at 2 (emph. added).

5. The Agreement uses the word "revenue," which as Class Counsel concedes must be measured when "earned."  12/16/12 Class Counsel Memo at 1.  Revenue is earned through work over time, not just at the moment of payment.  Standard accounting economics and literature support this.

6. The Agreement requires identification of "corresponding variable expenses" to measure variable profit.  "Corresponding" means that revenue must be matched with the expenses incurred to generate that revenue.

7. The Agreement also requires identifying the change in variable profit between the 2010 period and the "comparable months" of the benchmark period, as the BEL compensation framework only makes sense if similar economic activities are undertaken in both periods.   Ex. 4C at 2.

# 4.2. What Is The Source Of The Problem With How Class Counsel Seek To Implement The Settlement For BEL Claims?

1.  The problem arises when claimants submit financial data which provides only the date of cash received and spent, without regard to when the revenue was earned or the corresponding expenses to earn that revenue were incurred, and thus does not match revenue and corresponding expenses.

2.  As the Settlement Program recognized in rejecting Class Counsel's earlier proposal to limit the financial data only to cash received and spent with respect to accrual basis financial statements: such an approach *"could result in a loss or a greater loss not related to the Spill but instead is a result only of the timing of cash received."* 10-8-12 Memo. at 2 (emph. added).

# 4.2. What Is The Source Of The Problem With How Class Counsel Seek To Implement The Settlement For BEL Claims? (cont.)

3. **Class Counsel assert that variable profit should be based on (i) the months payment is received, *regardless of when the revenue is actually earned*, minus (ii) expenses paid only in those same months, *regardless of when the expenses to generate that revenue were actually incurred*.  Class Counsel's approach completely disconnects the revenues earned from the corresponding expenses incurred to earn those revenues.**

   ▶ Assume a contractor receives $1000 for a project in June, then spends $200 in each month from June to Sept to perform work on that project.

   ▶ According to Class Counsel the contractor has $800 of profit in June and then $200 in losses for each of the next three months, even though the objective economic and financial data precludes any finding of a loss and establishes that the contractor earned a profit in each month.

11

# 4.2. What Is The Source Of The Problem With How Class Counsel Seek To Implement The Settlement For BEL Claims? (cont.)

4. **Class Counsel assert that the financial data used to compare 2010 and the benchmark period must be limited to cash received and expenses paid in the same months, rather than including comparable business activities (revenues and corresponding expenses), regardless of the disconnect between when the claimants sold the goods or services and incurred the corresponding expenses and charges:**

   ▶ Assume in 2009 a farmer sells her crops in October and earns $1000, but in 2010, the same farmer sold her crops in November and earned $2500.

   ▶ According to Class Counsel, the farmer can select a May-October period for calculating variable profit and thus create a fictitious $1000 loss in 2010 even though the farmer (i) had a record profits year and had no loss, and (ii) only can create a fictitious loss by ignoring objective financial data in the economically comparable period in 2010.

12

# 5. Can The Agreement Be Implemented Properly In A Claimant-Friendly Manner For BEL Claims?

1. **Yes.  Accounting experts have confirmed this, as has the Claims Administrator ("the Claims Administrator acknowledges that the type [of] approach proposed by BP is a reasonable one").  1-15-13 P. Juneau e-mail.**

2. **To avoid improper implementation of the Settlement, BP has proposed—based upon the work of outside accounting experts—simple, specific, and claimant friendly steps to implement the Agreement and avoid the problem.  In this regard:**

   – The triggers rely on claimant-supplied data already entered into the PwC workbook and require no new information from claimants.

   – The triggers and fixes will not deprive any claimant of compensation due to any loss caused by the oil spill.

   – The triggers and fixes in fact will continue to overcompensate many claimants for losses, but will avoid absurd results.

13

# 5. Can The Agreement Be Implemented Properly In A Claimant-Friendly Manner For BEL Claims? (cont.)

3. **BP's approach is required by the Agreement's language stating that revenues must be matched with their "corresponding variable expenses."  Ex. 4C at 2.**

4. **BP's approach is required by the Agreement's language stating that the "compensation framework for business claimants compares the actual profit of a business during a defined post-spill period in 2010 to the profit that the claimant might have expected to earn …"  Ex. 4C at 1.**

14

# 6. What Does The Law Provide Regarding How Contracts Such As The Settlement Agreement Must Be Implemented?

1. **Contracts should never be implemented or interpreted to produce illogical or absurd results.**

   ▶ *Publicker Chem. Corp. v. Belcher Oil Co.*, 792 F.2d 482, 487 (5th Cir. 1986); *Cashio v. Shoriak*, 481 So. 2d 1013, 1015-16 (La. 1986); *see also Nixon v. Mo. Mun. League*, 541 U.S. 125, 132-33, 138 (2004); *Pub. Citizen v. United States Dep't of Justice*, 491 U.S. 440, 454-55 (1989); *DiCola v. Food & Drug Admin.*, 77 F.3d 504, 507 (D.C. Cir. 1996); *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).

2. **Contracts should never be implemented or interpreted to produce results contrary to the parties' stated purpose and intent.**

   ▶ *Highland Crusader Offshore Partners LP v. LifeCare Holdings Inc.*, 377 F. App'x 422, 426 (5th Cir. May 10, 2010); *Makofsky v. Cunningham*, 576 F.2d 1223, 1228-29 (5th Cir. 1978); *Fantastic Fakes, Inc. v. Pickwick Int'l, Inc.*, 661 F.2d 479, 484-85 (5th Cir. 1981); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 804-05 (8th Cir. 2008); *Travelers Ins. Co. v. McDermott Inc.*, 2003 WL 21999354, at *13-14 (E.D. La. Aug. 22, 2003); 11 WILLISTON ON CONTRACTS § 30:9 (4th ed. 1993); *see also* 2A SUTHERLAND STATUTORY CONSTRUCTION § 46:7 (7th ed. 2013).

15

# 6. What Does The Law Provide Regarding How Contracts Such As The Settlement Agreement Must Be Implemented?  (cont.)

3.   **Contracts should never be implemented or interpreted literally if a literal interpretation produces illogical or absurd results.**

   ▶ *Makofsky v. Cunningham*, 576 F.2d 1223, 1229-30 (5th Cir. 1978); *Koch Bus. Holdings, LLC v. Amoco Pipeline Holding Co.*, 554 F.3d 1334, 1338 (11th Cir. 2009); *see also Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 510-11, 527 (1989); *Perry v. Commerce Loan Co.*, 383 U.S. 392, 400 (1966) (quoting *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543 (1940)).

4.   **When faced with two contract interpretations, one which produces illogical or absurd results, and the other which is reasonable, a Court should always adopt the reasonable interpretation and never adopt the absurd or illogical one.**

   ▶ *Express Blower, Inc. v. Earthcare, LLC*, 410 F. App'x 742, 748 (5th Cir. Dec. 9, 2010); *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 442-43 (5th Cir. 2002) (Louisiana law); *S. Cent. Bell Tel. Co. v. Canal Place Ltd. P'ship*, 927 F.2d 867, 869 (5th Cir. 1991); 16 WILLISTON ON CONTRACTS § 49:14 (4th ed. 1993 & suppl.); *see also Corley v. United States*, 556 U.S. 303, 317 (2009); *Johnson v. United States*, 529 U.S. 694, 706 n.9 (2000); 2A SUTHERLAND STATUTORY CONSTRUCTION § 45:21 (7th ed. 2013).

16

# 7. What Are The Consequences If Class Counsel's Approach To Implementing The Settlement For BEL Claims Is Not Fixed?

1. **Class Counsel's approach conflicts with the Settlement Agreement, which will be rewritten if Class Counsel's approach is implemented.**

   ▶ The Class Definition will be rewritten to delete the requirement that a Class Member have a "[l]oss of income, earnings or profits suffered ... as a result of the DEEPWATER HORIZON INCIDENT."  Agreement ¶ 1.3.1.2.

   ▶ The definition of "Economic Damage" will be rewritten to delete the language requiring "loss of profits, income and/or earnings arising in the Gulf Coast Areas or Specified Gulf Waters allegedly arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident ..."  Agreement ¶ 38.57.

   ▶ The BEL Compensation Framework (Ex. 4C) will be deleted and rewritten:

   — Term 1: Will delete description of BEL framework as compensating claimants for "reduction in profit" that "claimant might have expected to earn."  Ex. 4C at 1.

   — Term 2:  "Revenue" in definition of Variable Profit will be deleted and changed instead to "payments received or cash received."  Ex. 4C at 2.

   — Term 3:  "Corresponding" will be deleted from "corresponding variable expenses" in the definition of Variable Profit.  Ex. 4C at 2.

   — Term 4:  Will delete requirement that the 2010 period and benchmark period be "comparable" with respect to matching requirements.  Ex. 4C at 3.

# 7. What Are The Consequences If Class Counsel's Approach To Implementing The Settlement For BEL Claims Is Not Fixed? (cont.)

2. **Class Counsel's approach conflicts with the Class Claims Form, resulting in confusion.**

▶ Business Economic Loss Claim Form states "To make a Business Economic Loss Claim under … (the 'Settlement') *for damages* arising from the Deepwater Horizon Incident on April 20, 2010 …"

▶ Settlement Program website states that "*If you or your business were harmed* by the Deepwater Horizon Oil Spill, you may be able to get payments and other benefits from two separate legal settlements."

**7. What Are The Consequences If Class Counsel's Approach To Implementing The Settlement For BEL Claims Is Not Fixed?  (cont.)**

3.   **Class Counsel's approach will arbitrarily treat identically situated claimants fundamentally differently.**

▶ Whether claimants receive compensation would depend solely on the timing of when they recorded receipts and payments – not upon their objective financial data or their actual revenues and corresponding expenses.

▶ Suppose in 2009 a claimant performs work and incurs $1000 of expenses each month from May to August for a project where it receives payment of $5000 on September 30; and in 2010, the claimant incurs $1000 of expenses each month from May to August for the same project where it is paid $5000 on October 1 – one day later.

— Objectively, and as the settlement agreement provides, a claimant had the same profits on that project in both 2009 and 2010.

— But under Class Counsel's approach, a claimant could select a May to September compensation period.  The claimant would show a profit of $1000 in 2009, but a loss in 2010 – a fictitious loss of $5000 – all due to claimant receiving the cash payment of $5000 one day later than in 2009.

19

# 7. What Are The Consequences If Class Counsel's Approach To Implementing The Settlement For BEL Claims Is Not Fixed?  (cont.)

4. **If adopted, Class Counsel's approach will result in claimants making claims and receiving compensation awards that are absurd and illogical because of the improper application or misuse of financial data when implementing the Agreement's BEL Compensation Framework (Ex. 4C).**

5. **Class Counsel's approach, if adopted, conflicts with standard accounting approaches to evaluating a firm's financial performance.**

   — Farm accounting principles (Expert Charles E. Finch)

   — Construction firm accounting principles (Expert David A. Hall)

   — Professional Services firm accounting principles (Expert Xavier Oustalniol)

**7. What Are The Consequences If Class Counsel's Approach To Implementing The Settlement For BEL Claims Is Not Fixed? (cont.)**

6. Class Counsel's approach, if adopted, would conflict with the Settlement Program's October 8 policy statement against compensating for "a loss or a greater loss not related to the Spill but instead is a result only of the timing of cash received." 10-8-12 Memo. at 2.

# 8. What Has The Settlement Claims Administrator Said About Class Counsel's Approach Of Mismatching Revenues And Corresponding Expenses?

1. **On October 8, 2012, the Claims Administrator properly considered and rejected Class Counsel's approach that the Administrator should allow claimants who prepared their financial statements on an accrual basis to restate them on a cash basis in order to create and recover fictitious losses.**

   – The Claims Administrator recognized that "such restatement could result in a loss or a greater loss not related to the Spill but instead is a result only of the timing of cash received."

   – Exact same rationale applies to financial statements and data originally prepared on a cash basis that mismatch the timing of revenues and corresponding expenses.

2. **On January 15, 2013, when brought to his attention, the Claims Administrator recognized an issue with the awards that could result from Class Counsel's approach and agreed that BP's approach to avoid these results was reasonable.**

   – The Claims Administrator acknowledged that when applying Class Counsel methodology "the result can be disproportionate awards for certain types of claims."

   – The Claims Administrator agreed that BP's specific approach to implement the Settlement Agreement so as to avoid these results "constitute[s] a reasonable approach to evaluating such claims."

# 8. What Has The Settlement Claims Administrator Said About Class Counsel's Approach Of Mismatching Revenues And Corresponding Expenses? (cont.)

3. Nevertheless, while agreeing "that the type [of] approach proposed by BP is a reasonable one," the Claims Administrator questioned whether it was "within his authority to implement such an approach absent agreement of the parties or express direction from the Court."

4. Accordingly, BP requests that the Court enforce the Settlement Agreement and authorize the Claims Administrator to apply BP's reasonable implementation approach, and thus avoid the myriad problems caused by Class Counsel's rewriting of the Agreement.

▶ Revenue – does not simply equal cash received.

▶ Corresponding – has meaning and cannot be ignored.

24