# Exhibit 19H

Excerpts from Declarations Submitted by BP's Experts in Support of Final Approval

| James Henley | Doc. 7114-11 | Certified Public Accountant and Attorney Licensed in good standing in MS, Certified in Financial Forensics |
|---|---|---|
| **Page** | **Paragraph** | **Point** |
| 4 | 6 | The methodologies used in the Compensation Framework for Business Economic Loss (BEL) …are consistent with well-established methodologies for determining economic loss.  They are transparent and objective, relying on mathematical formulas applied to data provided by claimants. |
| 5 | 7 | The documentation requirements are logically related to the information required to evaluate the claims, require submission of documentation and information that should be readily available to claimants, and, in addition, are flexible in permitting documentation alternatives. |
| 5 | 8 | The transparency and objectivity of the frameworks, which rely on expressly stated requirements or mathematical formulas assures that claimants can understand how their claims can be treated under the frameworks. |
| 18 | 23 | The required documents are those claimants would either keep in the ordinary course of business or may readily prepare from records that would be kept in the ordinary course of business. |
| 18 | 24 | The Causation requirements for the BEL Framework appear more than reasonable.  …there is a presumption of causation, which will inevitably include businesses that were not economically or financially affected by the DWH Spill. |
| 19 | 25 | Moreover, the causation tests reflect reasonable expectations about the economic harm the DWH Spill could have caused to a business, and therefore are appropriate tests for the purpose of establishing causation. |
| 21 | 30(a) | Claimants may select one of three Benchmark Period years (2009, average of 2008/2009, average 2007/2009).  This allows a claimant to select the most favorable period for comparison. |
|  | 30(a) | In my experience, if claimants were to litigate, the period used for the benchmark period would be fiercely disputed and the claimants would be unlikely to end up with the most beneficial period.  In fact, it would be unreasonable to allow the claimant to "cherry pick" the period in litigation. |
|  | 30(a) | Under the BEL Framework, the settlement gives claimants |

| | | |
|---|---|---|
| | | whatever Benchmark Period is best for their individual circumstances among the three options. |
| 22 | 30(b) | In addition to having a choice as to Benchmark Period years, claimants also get to choose their Compensation Period for three or more consecutive months. "The three month minimum period is a reasonable requirement because it eliminates the risk that normal month-to-month variations in business performance are not mistaken for a trend of declining performance due to the DWH Spill." |
| 22 | 30(c) | Permitting claimants the flexibility to choose a different three or more month period for compensation and causation maximizes their ability to establish causation and the amount of compensation received. |
| 24-25 | 31 | "The BEL compensation methodology is reasonably designed to make claimants whole for their losses. In addition to compensation for lost profits during the Compensation Period, as explained above, including a growth factor, claimants also receive an RTP multiplier that compensates them for, among other things, any potential risk of future losses (which may or may not occur)." |
| **Geoffrey Miller** | **Doc. 7114-16** | **Expert on Class Actions** |
| **Page** | **Paragraph** | **Point** |
| 7 | 17 | Because PSC attorneys served clients from throughout the region, moreover, all relevant geographic areas were represented in the settlement bargaining |
| 9 | 20 | These entities and persons were excluded for a number of reasons, including that they were not, in general, adversely impacted by the Incident, that their claims were deemed to be marginal, excessively complex, or remote to the main controversy, or that they had executed certain releases in connection with the Incident. |
| 14 | 40 | The parties, moreover, had access to more than 100,000 claims filed pursuant to Transocean's limitation action, which provided general information about the types of claimants and injuries implicated here. |
| **James Richardson** | **Doc. 7114-17** | **Professor of Economics, Louisiana State University** |
| **Page** | **Paragraph** | **Point** |
| 10 | 32 | The most compelling point regarding the fairness of the Economic Damage Claim Frameworks listed in Section 5.3 of the Settlement Agreement is that there are no limits on the total |

| | | |
|---|---|---|
| | | amount to be paid for individual or business economic losses. At the time of the settlement announcement, BP estimated the overall cost of the settlement to BP, including the Seafood Compensation Program, would be $7.8 billion but this is only an estimate and not a limit. |
| 11 | 36 | Given the number of class members and potential claimants and the variety of business types, streamlined administration that, for purposes of a negotiated settlement claims process, presumes causation for certain industry sectors more likely to be impacted by a spill in certain geographic areas is both fair and reasonable. |
| 14 | 40 | …Moreover, given the fact that the first four months of 2010 were sluggish, the use of presumed General Growth and Industry Growth Factors for businesses and certain individuals is quite favorable to the claimants under the Settlement Agreement as the inclusion of such growth factors limits negative growth. |
| 16 | 45 | …Furthermore, the Frameworks provide for a standardized approach for evaluating claims of similarly situated businesses under the Settlement Agreement while also including alternatives that permit the consideration of claimants' specific circumstances. |
| 17 | 47 | Common information is an essential starting point in determining a fair and equitable way of rewarding payments under a settlement. |
| | 47 | It also allows for the process to provide equal treatment for different businesses since businesses are requested to submit a common core of similar data, with certain additional requirements tailored to particular types of businesses. |
| 18 | 48 | …the documents required…are the types of documents that businesses must keep in the ordinary course of business or are readily prepared and produced from a business's books and records… |
| 19 | 50 | …However, it is burdensome to attempt to parse the final cause of a business' failure to recover profits when there are multiple potential factors, and so in the context of this settlement, a presumption that the Oil Spill had at least a partial cause in this sustained downturn is fair and reasonable, even though the failure may have occurred irrespective of the Oil Spill. It also makes the process administratively feasible. |
| 20 | 51 | The Business Economic Loss Frameworks compare the actual profit of the business during a defined post-spill period of their choice in 2010 to the profit the claimant might have expected to earn in the same post-spill period. The claimant is compensated |

| | | |
|---|---|---|
| | | for any reduction in profit between the 2010 compensation period and a comparable benchmark period. |
| 21 | 53 | The Business Economic Loss Claims Framework allow the claimants to choose the Compensation Period of three or more consecutive months between May and December of 2010. |
| | 53 | This allows claimants to tailor the periods to the unique conditions of the business within reasonable constraints and allows beneficial flexibility.  This favors the claimant because the flexibility accounts for variation in income and profit year over year and enables the claimant to select the best possible starting point for the loss calculation within a reasonable constraint. |
| 22 | 54 | …The major difference in this particular framework is that the claimants can use their choice of the number of months between May 2010 and December 2010 in establishing the compensation. This will certainly mean that the claimant will select the most favorable to them or, if the claimant fails to do so, the Settlement Program will select the most favorable outcome for the business. |
| 22 | 54 | This is an unusual feature that favors the claimants. |
| **Holly Sharp** | **Doc. 7114-18** | **Certified Public Accountant (CPA), Certified Fraud Examiner (CFE), and Certified Financial Forensics (CFF)** |
| **Page** | **Paragraph** | **Point** |
| 3 | 6 | I have been asked to render opinions with respect to the economic reasonableness and methodologies of business and individual economic loss under the Settlement Agreement |
| 5 | 9 | …The compensation calculation in the Settlement Agreement for business economic loss claims is divided into two steps:  Step 1 provides compensation for the reduction and variable profit between the Compensation Period and the Benchmark Period. Step 2 provides compensation for increased profits expected to be generated in 2010 "but for" the spill.  The two-step calculation in the Settlement Agreement applies the generally accepted "before and after" method to compensate business claimants for post-spill lost profit. |
| 5 | 10 | …Revenues less variable expenses are calculated for both the Benchmark Period and the Compensation Period, and the difference is measured (Step 1). |
| 8 | 14 | The Settlement Agreement contains causation requirements designed to demonstrate that the claimants business was impacted by the spill. |

| 8 | 15 | …The options to demonstrate causation start with straightforward, reasonable tests of business revenue patterns that show a downturn after the spill and a later upturn… |
|---|---|---|
| 9-10 | 17 | Even though the causation tests assume the observed impact on the business is a function of the spill (rather than undertaking a specific analysis to confirm), once a business meets the causation requirements, for purposes of quantifying compensation, all revenue and variable profit declines during the claimant-selected compensation period are presumed to be caused by the spill, with no analysis required to determine whether the declines might have been due, at least in part, to other causes. In a typical lost profit case, a detailed analysis of the reasons for the revenue and/or variable profit declines is undertaken because it is part of the plaintiff's burden of proof. For this reason, causation is a significant consideration by the expert in lost profit cases because although a plaintiff may have losses relative to expectations, if the losses cannot be shown to be caused (or totally caused) by the actions of the defendant(s), the damages are usually not recoverable or not entirely recoverable. "Recovery of damages for lost profits is subject to the general principle that damages must be proximately caused by the wrongful conduct of the defendant."  Assignment of liability for losses in litigation disputes with multiple causation factors can be a very difficult and hotly contested determination. The Settlement Agreement significantly reduces the need for this complicated determination because once causation requirements are met by a business claimant, all the economic losses are presumed to be as a result of the spill. The business claimant benefits from the causation provisions in the Settlement Agreement by having causation presumed for many, straightforward mathematic tests of causation for others, and no requirement to attribute lost profits to anything other than the spill. The causation provisions in the Settlement Agreement are more favorable to the business claimant than those for a similarly situated plaintiff in a typical litigation dispute. |
| 10 | 18 | …The Compensation Period is three or more months from May through December 2010, selected by the business claimant, and these same months are used for the Benchmark Period.  The business claimant has the choice of using these months in 2009, the average of 2008 and 2009, or the average of 2007 through 2009 as the Benchmark Period. |

| 11 | 20 | The Settlement Agreement provides options to the business claimant in the selection of its Benchmark Period that are more flexible and generous than what would usually be available in litigation.  In litigation, the parties (and their experts) can contest what periods prior to the loss event (and up to three years prior to the loss event is a typical time period to analyze) are most representative of operations immediately prior to the loss event and best to predict operations during the Compensation Period.  In contrast, the Settlement Agreement allows the business claimant to select the Benchmark Period from the standardized options that is most beneficial to the claimant in  terms of establishing causation (if the claimant is not one for which causation is presumed) and loss. |
|---|---|---|
| **Henry Fishkind** | **Doc. 7114-5** | **PhD; Economist; with over 30 years experience in economics and economic forecasting** |
| **Page** | **Paragraph** | **Point** |
| 9-10 | 31 | The compensation calculation formulas in the Economic Damage Claim Frameworks are consistent with well-established methodology for quantifying economic loss. In general, they rely on historical benchmark data supplied by the Claimant, supplemented by a growth factor, to determine what the Claimant's predicted earnings would have been. Those projected earnings during a Claimant-selected post-DWH spill compensation period are compared to actual earnings during that period and the difference is deemed a compensable loss. |
| 31 | 87 | The numerical thresholds for the tests are also economically reasonable. Furthermore, the requirement that the Benchmark and Compensation periods used to measure decline and recovery be measured over at least 3 months is a reasonable means of ensuring that the data reflect a genuine trend in economic performance and not just routine month-to-month variation that any business can expect even absent any unusual event. The specific thresholds in the causation requirements appear reasonable because they are generally consistent with the decline and recovery data for the Tourism and Seafood industries discussed in above. |