# Exhibit 19N



**Mark Holstein**
Managing Attorney
BP Legal – Litigation

BP America Inc.
P.O. Box 3092
Houston, Texas 77253-3092

501 WestLake Park Blvd.
Houston, Texas 77079-2607
Mail Code 17.130

Direct: 281-366-8895
Fax:    281-366-3491
Mark.Holstein@bp.com

**PRIVILEGED & CONFIDENTIAL**
**CONFIDENTIAL SETTLEMENT COMMUNICATION**

September 28, 2012

**Via Electronic Mail**

Patrick Juneau
Claims Administrator
Deepwater Horizon Settlement Program
935 Gravier Street
New Orleans, Louisiana 70130

Re: *Issues Raised By Class Counsel or Settlement Program*

Dear Mr. Juneau:

This letter responds to several issues recently raised by Class Counsel or the Settlement Program. We first provide a short executive summary of BP's positions, followed by a discussion of each issue.

I.   Executive Summary

- BP agrees with Class Counsel that where a vessel damage claimant files a copy of vessel title but not vessel registration, a prescribed sworn written statement (details of content are set forth in BP's September 21 letter) may be filed in lieu of the registration.

- With regard to Michael Juneau's email inquiry of September 25, the BEL causation methodology set forth in the Settlement Agreement governs the determination of causation for BEL claims. If proper application of the methodology with accurate financial data yields a determination that causation is satisfied, BP agrees with Class Counsel that all losses calculated in accordance with Section 3.3 and Exhibits 4C and 19 of the Settlement Agreement are presumed to be attributable to the Oil Spill.

- Where an owner/officer (or part owner) of an entity is also a W-2 employee of the entity and the entity has filed a BEL claim, the owner/officer cannot file an IEL claim for alleged lost wages. The owner/officer's wages are addressed and recovered in the BEL claim, and permitting a separate IEL claim would result in double recovery.

- Where an owner of an entity is also a W-2 employee of the entity and the entity signed a GCCF release, the owner may not file a separate IEL claim in the Settlement Program for alleged lost wages. Any alleged lost wages of the owner were addressed in the resolution

Patrick Juneau
Claims Administrator
September 28, 2012
Page 2 of 6

of the GCCF claim.

- With regard to IEL claims, where the Settlement Program is unable independently to verify the claimant's age, the Settlement Program must seek confirmation from the claimant.

- With regard to seafood claims, SWS-1 is not sufficient standing alone to establish allocation of revenue by vessel, landing and catch type.

- BP notes certain clarifications regarding Items 13 and 14 of the Claims Administrator's Report on Policy Changes Affecting Document Requirements filed on September 24.

- BP will submit a letter invoking the Claims Administration Panel with regard to several positions set forth in the September 25 Announcement of Policy Decisions Regarding Claims Administration.

II. Discussion of Issues

A. Item 11 in September 24 Report

Item 11 of the Claims Administrator's Report on Policy Changes Affecting Document Requirements filed on September 24 provides that claimants making a vessel damage claim who submit a vessel registration but not a vessel title may submit a prescribed sworn written statement in lieu of a copy of the title. As discussed in our email of September 25, we agree with Class Counsel that the converse of this rule also applies, namely that the prescribed sworn written statement may be used where a vessel damage claimant has submitted a copy of vessel title but not vessel registration. Please see our memorandum of September 21 for the required contents of the sworn written statement.

B. Response to Causation Question Posed by Michael Juneau on September 25

On September 25, Michael Juneau posed the following question to the Parties and requested a response by September 28: "As to BEL claims, once a claimant's financial records satisfy the causation standards set out in Exhibit 4B, does the Settlement Agreement mandate and/or allow the Claims Administrator to separate out losses attributable to the oil spill vs. those that are not? Stated another way, once a claimant passes the causation threshold, is the claimant entitled to recovery of *all* losses as per the formula set out in Exhibit 4C, or is some consideration to be given so as to exclude those losses clearly unrelated to the spill?"

BP responded as follows. If a claimant has submitted the required documentation under the Business Economic Loss ("BEL") Documentation Requirements (Ex. 4A), and those documents and any additional detailed information the Settlement Facility has determined is necessary to verify the accuracy of the financial data submitted by the claimant establish that the claim satisfies the requirements of the BEL Causation Framework (Ex. 4B), then Claimant Compensation should be calculated pursuant to the provisions of the BEL Compensation

Patrick Juneau
Claims Administrator
September 28, 2012
Page 3 of 6

Framework (Ex. 4C). If the accurate financial data establish that the claimant satisfies the BEL causation requirement, then all losses calculated in accord with Exhibit 4C are presumed to be attributable to the Oil Spill.[1]

Nothing in the BEL Causation Framework (Ex. 4B) or Compensation Framework (Ex. 4C) provides for an offset where the claimant firm's revenue decline (and recovery, if applicable) satisfies the causation test but extraneous non-financial data indicate that the decline was attributable to a factor wholly unrelated to the Oil Spill. Such "false positives" are an inevitable concomitant of an objective quantitative, data-based test. However, they should be relatively rare.

It is important to emphasize that the Settlement Program must still scrutinize carefully financial information submitted by claimants for anomalous results that may be due to data entry errors or recording of revenues or expenses in the wrong period. Where unusual or surprising results of this sort are noted, the Settlement Program must review the data and additional supporting documents it may deem necessary to determine whether the data are accurate. The documentation requirements of Exhibit 4A, including but not limited to federal income tax returns, certain local hospitality and sales tax documents, and monthly and annual financial statements (see items 3-5) all are intended to facilitate such review for accuracy.

    C.    Prohibition on IEL Claims By Owner/Officer of an Entity That Has Filed BEL Claim

Where the owner/officer (or part owner) of an entity that has filed a business economic loss (BEL) claim is also a W-2 employee of the entity, that individual cannot also pursue a claim for individual economic loss (IEL) due to reduced wages that the claimant and/or other owners decided to implement in the wake of the Spill. Permitting the claimant to do so would result in double recovery.

This would result in double recovery because, in calculating compensation for a BEL claim, owner compensation is excluded from the variable profit calculation that is used to determine the difference in the business's variable profit between the Benchmark Period and the Compensation Period. See Ex. 4C, p. 2 (definition of Variable Profit); Ex. 4D. See also Brown-Greer Spreadsheet response to item 67 (reflecting the Parties' consensus that the Settlement Program must segregate owner/officer compensation from other employee compensation in processing BEL claims). Thus, any reduction in the owner's salary is *not* reflected as a reduction in expense by the BEL claimant and does *not* reduce the decline in variable profit between the Benchmark Period and the Compensation Period and calculated Step 1 compensation amount received by the BEL claimant (which then is affected by the growth factor and multiplied by RTP). To the extent the individual owner suffered a loss in compensation, that amount would be included in the award calculated and awarded under the BEL framework. Accordingly, the

---

[1] Moratoria Losses are excluded from recovery under the Settlement, however. *See* Settlement Agreement § 3.3 & Ex. 19.