# Exhibit 19O



**Mark Holstein**
Managing Attorney
BP Legal – Litigation

BP America Inc.
P.O. Box 3092
Houston, Texas 77253-3092

501 WestLake Park Blvd.
Houston, Texas 77079-2607
Mail Code 17.130

Direct: 281-366-8895
Fax:    281-366-3491
Mark.Holstein@bp.com

**PRIVILEGED & CONFIDENTIAL**
**CONFIDENTIAL SETTLEMENT COMMUNICATION**

September 28, 2012

**Via Electronic Mail**

Patrick Juneau
Claims Administrator
Deepwater Horizon Settlement Program
935 Gravier Street
New Orleans, Louisiana 70130

Re: *September 25 Announcement of Policy Decisions Regarding Claims Administration*

Dear Mr. Juneau:

BP Exploration & Production Inc. ("BP") is in receipt of the September 25 Announcement of Policy Decisions Regarding Claims Administration ("Announcement") issued by the Settlement Program. BP appreciates the enormous efforts of the Settlement Program and its vendors in implementing the Settlement Program, and continues to support your efforts to improve the pace and efficiency of the program.

However, one of the cornerstones of the Settlement Agreement is the use of transparent, objective, data-driven methodologies designed to apply clearly-defined standards to a claimant's contemporaneously-maintained financial data submitted in compliance with documentation requirements. These methodologies and requirements were carefully negotiated by the parties and are set forth in the Settlement Agreement as mandatory requirements. Among other reasons, these methodologies and requirements were negotiated in response to concerns voiced by some that the prior GCCF process was too dependent on accountant judgments that were not transparent.

Some of the policy decisions in the Announcement run counter to both the express terms and the intent of the Settlement Agreement by by-passing the mandated methodologies and replacing them with the "professional judgment" of accounting vendors or the "discretion" of the Claims Administrator. The Settlement Agreement does not allow for the use of professional judgment or discretion as a substitute for expressly articulated standards or requirements. This is not just a theoretical issue. As explained below, unauthorized departures from the methodologies prescribed by the Agreement can materially affect the rights of claimants and BP.

Patrick Juneau
Claims Administrator
September 28, 2012
Page 2 of 9

As discussed below, BP concurs with several of the decisions in the Announcement as practical, claimant-friendly and compliant with the Settlement Agreement. Several Items (Nos. 1, 2, 3, 11, 12, and 13), however, are in direct conflict with the terms of the Settlement Agreement and therefore cannot be implemented as articulated in the Announcement. Pursuant to Section 4.3.4 of the Settlement Agreement, BP has requested that the Claims Administration Panel be convened. We understand that the Claims Administration Panel will meet on October 2 at 1:30 p.m.

We have set forth below BP's responses to each of the items in the Announcement.

I.  Response to Specific Items in the Announcement

   **1.  *The Monthly Financial Data Requirement***

The BEL framework expressly requires monthly profit and loss ("P&L") statements or "alternate source documents establishing monthly revenues and expenses." (*See* Ex. 4A, Item 4) These documents are essential to implementing the BEL frameworks' methodology of evaluating causation and damages based on the actual monthly financial experience of claimants. The decisions in Items 1(a)-(b) of the Announcement violate the requirements of Exhibit 4A of the Settlement Agreement because they substitute accountant discretion in place of mandatory documentation setting forth the actual monthly financial experience of the claimant. BP does not object to the decision in Item 1(c) subject to certain clarifications.

   (a) *Monthly Allocations of Revenues/Expenses*

The Announcement appears to allow the Settlement Program to waive the monthly financial documentation requirements and to instead use annual financial information to create an allocated proxy for monthly performance. The Settlement Program does not have the authority to waive express documentation requirements. The entire BEL framework depends on the input of accurate monthly financial data--that is why they are required. For example, accurate monthly data are required for the causation V-test, calculating compensation, and calculating growth factors. Because the claimant's actual monthly results are the foundation for the causation and compensation evaluations under the BEL framework, use of allocated proxy rather than actual data could severely distort the resulting outcomes, especially (but not limited to) in the tourism industry, which experiences substantial seasonal and monthly fluctuations in revenues and expenses. BP has previously shared this view with you and conditioned its prior agreement to compromises regarding profit and loss statements to maintenance of this critical requirement.

The unauthorized waiver of the mandatory monthly revenues and expenses financial information requirement also creates a substantial risk of fraud by encouraging the omission of the required monthly financial data in claims submissions.

Patrick Juneau
Claims Administrator
September 28, 2012
Page 3 of 9

### (b) *Monthly Allocations of Owner and Officer Payroll*

Similarly, and for the same reasons discussed above, the Settlement Program is not authorized to waive the requirement for monthly owner and officer payroll documentation and to instead use accounting judgment to project possible monthly performance based on annual data. In addition, it is hard to conceive why such a waiver would be needed, even if it were authorized. Even if a business claimant did not maintain monthly financial statements breaking out owner/officer compensation, it would be a simple and quick task to review payroll records or the general ledger to identify and sum such payments.

### (c) *Restatement of Profit and Loss Statements*

BP agrees with the Claims Administrator that a claimant that maintained P&Ls on an accrual basis is not permitted to restate them to cash-basis financial statements. As the Administrator correctly notes, cash basis statements create a risk of distorting actual economic performance of companies, particularly those that have "lumpy" revenue and expenses--*e.g.*, that receive lump-sum payments in one month for work done over several months.

BP also agrees with the Claims Administrator that claimants should be permitted to restate their contemporaneously-maintained financial statements on an accrual basis, provided, however, that the claimant (1) provides a copy of the original cash-basis financial statements and (2) briefly describes the methodology used to prepare the restated financial statements.

In order to accurately apply the Settlement Agreement, it is important that the Settlement Program's accountants investigate apparent anomalies in the data--*e.g.*, unusually large variances in revenue or expense between periods--to ensure that the data have been compiled accurately and consistently across those periods.

### 2. *Reconciliation of Financial Information of Business Economic Loss Claimants*

Reconciliation of both revenue and expenses is required under the Settlement Agreement. The BEL Compensation Framework (Ex. 4C) expressly requires consideration of both revenues and expenses with the federal tax returns that are required documentation under Settlement Agreement Ex. 4A (BEL Documentation) item 3. If expenses are not accurately stated, then the Variable Profit calculation upon which the Compensation Framework depends will also be erroneous. Accordingly, the same logic that led the Settlement Program's accountants to conclude that reconciliation of revenues as reported on the claimant's P&L statements with tax returns is necessary (*see* Aug. 6, 2012 email from L. Greer) requires reconciliation of expenses reported on the P&L statements with tax returns.

Item 2 of the Announcement appears to permit accountants to bypass the reconciliation requirement in their professional judgment. This is not authorized. We reiterate, as previously discussed, that BP does not object to a practical application of the reconciliation requirement that applies reasonable traditional concepts of materiality.