# Exhibit 19X

# DECLARATION OF ALLEN CARROLL

My name is Allen Carroll and I am familiar with the compensation formulas agreed to and approved in the Deepwater Horizon Settlement Program. I am also aware of the argument made by BP in several appeals that the claimant should be obligated to "match" his revenue to expenses. I make this declaration to explain how BP's position is inconsistent with existing accounting principles.

I am a certified public accountant, and have been licensed to practice accountancy in the State of Alabama at all times from 1989 through the present. I am also licensed to practice accountancy in the State of Florida from 2008 through the present. I graduated from the University of South Alabama in 1987, where I received a degree in business administration with a major in accounting.

I am, and have been, a member of the American Institute of Certified Public Accountants ("AICPA") and the Alabama Society of Certified Public Accountants. I am accredited in Business Valuation by the AICPA, Certified in Financial Forensics by the AICPA, Certified as a Valuation Analyst by the National Association of Certified Valuation Analysts, and hold a Certificate of Educational Achievement awarded by the AICPA in Tax Planning and Advising for Closely Held Businesses. I have been employed by Wilkins Miller Hieronymus, LLC, or its predecessor firms, from 1987 to the present. I am a founding member of Wilkins Miller Hieronymus, LLC and am currently its Managing Partner. My practice consists of professional accounting, tax and consulting services. My experience includes over two decades of responsibility for the accounting and tax matters of a variety of businesses including law firms. As part of this experience, I am familiar with most accounting systems used by small and large businesses alike.

I am familiar with the rules and principles of accounting as they relate to the recognition of income and expenses. I am also familiar with the settlement agreement negotiated and approved in this case. Most businesses keep their books using either the cash basis or the accrual basis of accounting. Both the cash basis and the accrual basis of accounting are well recognized measurement bases and have merit depending on the situation. The tax law (Internal Revenue Code) was established essentially under the cash basis. Under cash basis accounting, revenue is recognized when cash is received. A great number of small businesses use the cash method. For most of these small businesses, there would be no verifiable data that would allow them to go back and convert their books to any other method of accounting. If the settlement agreement was construed to prevent these businesses from filing claims based on their existing books, they would be denied any recovery under the settlement.

Alternatively, under accrual accounting, revenue is recognized when it is both (i) earned and is (ii) realized or realizable (FASB Concepts Statement No. 5). Revenue is earned when the business has substantially accomplished what it must do to be entitled to the benefits represented by the revenues. (see exhibit A attached hereto). Both of these accounting methods are generally recognized and approved in the accounting community.

BP is advocating a method of accounting which is contrary to the accrual accounting rules by advocating an additional form of "matching" using some non-defined method. The proposed "matching" as described by BP is not a known or used method of accounting. This type of matching is absolutely inappropriate because it would require the recognition of revenue which could be highly uncertain and contingent on a future event. In other words, the revenue recognition criteria under accepted accounting methods have not been met. I agree with the analysis of this issue offered by Drs. Wilder and Dickinson attached as Exhibit B hereto.

Even for businesses using the accrual method of accounting, it is highly doubtful the business would have the data to "match" the revenues to expenses as argued by BP. The task would require some data to show what order or customer was being worked on at any given time. For example a law firm with contingent fee income typically has no method of tracking the work performed on which case at any given time. Even if the data were available, it would be impossible to accurately match effort to revenue. How would the firm match revenue to work on cases that were lost? The very nature of contingent fee income is the notion that fees in connection with successful cases compensate the firm for cases that are not successful.

There would be similar problems in other contexts where the business does not keep contemporaneous data on what customer work is being performed at any time. There is no known method to account for all of the variations in business models to require this concept. The requirement of matching would necessarily mean that the formula published in the settlement agreement could no longer be applied on a uniform and consistent basis for all claimants.

I declare under penalty of perjury that the foregoing is true and correct.

W. *[signature]*

# Exhibit A

Checkpoint Contents
 Accounting, Audit & Corporate Finance Library
  Standards and Regulations
   FASB Codification
    Codification
     Revenue
      605 Revenue Recognition
       605-10 Overall
        605-10-25 Recognition

Copyright © 2012 by Financial Accounting Foundation, Norwalk, Connecticut

# 605-10-25 Recognition

Click here to link to 605-10-S25.

> **General Note:** The Recognition Section provides guidance on the required criteria, timing, and location (within the financial statements) for recording a particular item in the financial statements. Disclosure is not recognition.

> **General Note for Fair Value Option:** Some of the items subject to the guidance in this Subtopic may qualify for application of the Fair Value Option Subsections of Subtopic 825-10. Those Subsections (see paragraph 825-10-05-5) address circumstances in which entities may choose, at specified election dates, to measure eligible items at fair value (the fair value option). See Section 825-10-15 for guidance on the scope of the Fair Value Option Subsections of the Financial Instruments Topic.

## General

### > Revenue and Gains

**25-1** The recognition of revenue and gains of an entity during a period involves consideration of the following two factors, with sometimes one and sometimes the other being the more important consideration:

   a. Being realized or realizable. Revenue and gains generally are not recognized until realized or realizable. Paragraph 83(a) of FASB Concepts Statement No. 5, *Recognition and Measurement in Financial Statements of Business Enterprises*, states that revenue and gains are realized when products (goods or services), merchandise, or other assets are exchanged for cash or claims to cash. That paragraph states that revenue and gains are realizable when related assets received or held are **readily convertible** to known amounts of cash or claims to cash.

   b. Being earned. Paragraph 83(b) of FASB Concepts Statement No. 5, *Recognition and Measurement in Financial Statements of Business Enterprises*, states that revenue is not recognized until earned. That paragraph states that an entity's revenue-earning activities involve delivering or producing goods, rendering services, or other activities that constitute its ongoing major or central operations, and revenues are considered to have been earned when the entity has substantially accomplished what it must do to be entitled to the benefits represented

by the revenues. That paragraph states that gains commonly result from transactions and other events that involve no earning process, and for recognizing gains, being earned is generally less significant than being realized or realizable.

**25-2**  See paragraphs 605-10-25-3 through 25-4 for the limited circumstances in which revenue and gains may be recognized using the installment or cost-recovery methods.

**25-2A**  See Subtopic 605-28 for guidance on the application of the milestone method of revenue recognition.

## > Installment and Cost Recovery Methods of Revenue Recognition

**25-3**  Revenue should ordinarily be accounted for at the time a transaction is completed, with appropriate provision for uncollectible accounts. Paragraph 605-10-25-1(a) states that revenue and gains generally are not recognized until being realized or realizable and until earned. Accordingly, unless the circumstances are such that the collection of the sale price is not reasonably assured, the installment method of recognizing revenue is not acceptable.

**25-4**  There may be exceptional cases where receivables are collectible over an extended period of time and, because of the terms of the transactions or other conditions, there is no reasonable basis for estimating the degree of collectibility. When such circumstances exist, and as long as they exist, either the installment method or the cost recovery method of accounting may be used. As defined in paragraph 360-20-55-7 through 55-9, the installment method apportions collections received between cost recovered and profit. The apportionment is in the same ratio as total cost and total profit bear to the sales value. Under the cost recovery method, equal amounts of revenue and expense are recognized as collections are made until all costs have been recovered, postponing any recognition of profit until that time.)

**25-5**  In the absence of the circumstances referred to in this Subtopic or other guidance, such as that in Sections 360-20-40 and 360-20-55, the installment method is not acceptable.

END OF DOCUMENT -

© 2012 Thomson Reuters/RIA. All rights reserved.

# Exhibit B

## Accounting Rules for Contingent Fee Revenue Recognition

Dr. W. Mark Wilder, CPA
Dean and KPMG Professor
Patterson School of Accountancy
The University of Mississippi

and

Dr. Victoria Dickinson, CPA
Assistant Professor
Patterson School of Accountancy
The University of Mississippi

### I. Disclaimer and Scope

We have been asked to provide analysis of the ▮▮▮▮▮ settlement claim against BP as it relates to the Deepwater Horizon Spill. Our focus will be to provide discussion of appropriate methods of revenue recognition, particularly as it relates to contingency fee revenues of law firms. We will not speak in any way to the merits of the Settlement Agreement in general, nor to whether particular types of businesses would or would not be affected by the Spill, nor to the role the location of the business should play in terms of impact of the Spill. Also beyond the scope of our discussion will be any consideration of (i) the classification of payroll expenses (such as the dispute related to the October 2009 officer compensation), and (ii) the calculation ▮▮▮▮▮ 2010 financial performance.

1

## II. Revenue Recognition

*Overview*

Both the cash basis and the accrual basis of accounting are well recognized measurement bases and have merit depending on the situation. The tax law (Internal Revenue Code) was established essentially under the cash basis with situations where modified cash or accrual accounting is used. Alternatively, financial reporting for investors and creditors is primarily accrual based. Under cash basis accounting, revenue is recognized when cash is received. Under accrual accounting, revenue is recognized when it is both (i) earned and is (ii) realized or realizable (FASB Concepts Statement No. 5).

*Description of Contingency Fee Revenue Recognition Dispute*

The recognition of contingency fee revenues of a law firm is the revenue topic under dispute with BP's appeal of the ▮▮▮▮▮ settlement claim. BP argues that ▮▮▮▮▮ ▮▮▮▮▮ should essentially recognize contingency fee revenue at the same time that expenses are incurred to generate the revenue. An example is provided on page 7 of their appeal whereby contingency fee revenue would be recognized in June ($333), July ($667), and in August ($1,000) in proportion to the expenses incurred. BP essentially advocates "matching revenues with expenses incurred to generate the revenue" (language on bottom of page 8 of the appeal).[1] This results in a smoothing of the total profit of $1,400 with amounts recognized for June ($233), July ($467), and August ($700) - also on page 7 of their appeal. ▮▮▮▮▮ on the other hand, recognized expenses in the months in which they were incurred, but waited to recognize the revenue until the removal of the contingency through a court judgment or settlement. Per

---

[1] Note that the concept of "matching" in accounting pertains to the timing of expense recognition (i.e., depreciation expense, amortization expense of intangibles, etc.) to coincide with revenue generation. It is highly unusual to see language describing revenues being matched to expenses.

2

BP's example (page 6), this results in no revenue in June, July, and August, but all $2,000 of revenue is recognized in a later month (October). Accordingly, a loss results in June ($100), July ($200), and August ($300), with a profit of $2,000 in October - resulting in total profit of $1,400 as before with BP's example.

*Appropriate Revenue Recognition for Contingency Fees*

It is our strong view that ███████████ have appropriately accounted for contingency fee revenues under both cash and accrual accounting concepts. We certainly acknowledge that the result is a situation where losses occur in certain periods, while all the revenue is recognized (and profit therefore spikes) in the month in which the favorable judgment or settlement is rendered, referred to in accounting terms as contingency-based revenue. While a smoother profit pattern would enhance budgeting and/or planning considerations within a business, this type of smoothing is absolutely inappropriate in the case of contingent fee revenue because the revenues are **highly uncertain** and **contingent** on a future event (i.e., a favorable ruling or settlement); in other words, the revenue recognition criteria have not been met. It could well be the case that the outcome of the case will be unfavorable and therefore no revenues will occur at any point in the future.

Given the highly uncertain nature of contingent fee revenue, the appropriate guidance for such "contingencies" is contained in the source document FASB Statement No. 5 "Accounting for Contingencies," as well as in the FASB Accounting Standards Codification (which was implemented in 2009) under FASB ASC 450-10. Contingencies are defined as an existing condition, situation, or set of circumstances involving uncertainty as to possible gain (gain contingency) or loss (loss contingency) to an entity that will ultimately be resolved when one or

3

more future events occur or fail to occur. For loss contingencies, this Statement requires accrual by a charge to income (and disclosure) for an estimated loss from a loss contingency if two conditions are met: (a) information available prior to issuance of the financial statements indicates that it is probable that an asset has been impaired or a liability has been incurred at the date of the financial statements, and (b) the amount of loss can be reasonably estimated.

While loss contingencies are charged to income under the conditions noted above, GAAP takes a conservative approach in accounting for gain contingencies. Except for tax loss carryforwards, companies do not book as revenue gain contingencies (because to do so might be to recognize revenue before its realization and/or the earnings process in complete). In fact, companies are not to even disclose gain contingencies in the footnote information to the financial statements unless a high probability exists for realizing them. Accordingly, under GAAP, gain contingencies are essentially not to be recognized as revenue until the uncertainty surrounding the contingency is resolved and thus are only recognized when realized.[2]

It is easy to understand why the profession has taken a conservative approach to revenue/gain recognition for contingencies. Powerful incentives exist for companies to accelerate the recognition of revenues. In fact, improper revenue recognition is typically the most frequent item investigated by the Securities and Exchange Commission's Division of Enforcement.

---

[2] "Conservatism" is the accounting convention that when in doubt, the accounting treatment should ensure that income and assets are not overstated. Conservatism results in inconsistent treatments in gain versus loss situations whereby expenses/losses may be recognized immediately whereas gains/revenues are not. Examples of conservatism include contingencies, lower-of-cost or market for inventories, and certain impairments.

4

### *Other Considerations*

In reaching our conclusions, we noted that the "matching" of expenses and revenues when revenues are contingent bears resemblance to research and development (R&D) costs. Companies engage in R&D activities (incur expense) knowing that the incidence (and certainly the amount) of future benefits is uncertain. Because these expenses cannot be properly matched with future benefits (i.e., revenue), Statement of Financial Accounting Standards No. 2 (1974) – "Accounting for Research and Development Costs" requires that the R & D expenditures be expensed immediately as incurred. However, the current recognition of expense does not imply that the revenue is earned on that date, but rather that because any revenue generation is uncertain, the expense recognition cannot be delayed for a potentially indefinite time period. Thus, in the case of uncertain future revenues, the incidence of expense recognition is not a sufficient condition for revenue recognition.

### *Conclusion*

In summary, the argument advanced by BP in the ▓▓▓▓▓▓▓▓ appeal to prematurely recognize contingent fee revenue and to "match" it to expense is inconsistent with established accounting principles for businesses using either the cash or accrual method of accounting. Implementing BP's approach would require the Settlement Administrator to employ accounting methods which are clearly contrary to GAAP principles.