# Exhibit 19ZZF



IN RE: DEEPWATER HORIZON MDL NO. 2179

DECLARATION OF GEORGE J. PANZECA, CPA, CFF, CMA, CFE

I. **Background and Qualifications**

1. Bourgeois Bennett, LLC (Bourgeois Bennett) is a regional public accounting and consulting firm with offices in Metairie, Houma, Thibodeaux and Mandeville, Louisiana. Our firm provides accounting, auditing, tax and advisory services to individuals and businesses located primarily in South Louisiana. Bourgeois Bennett's clients are engaged in a wide variety of businesses that are generally representative of the economy of our geographic service area. One of the oldest professional service firms in Louisiana, Bourgeois Bennett celebrates its ninetieth (90th) year of operations in 2013.

2. I am a Member of Bourgeois Bennett and serve as the Director of our firm's Consulting Services Department and a Member of the firm's Management Committee. I am a Certified Public Accountant (licensed to practice in Louisiana and Mississippi) with more than 30 years of experience in public accounting. In addition to my CPA certification, I hold credentials in financial forensics (CFF), management accounting (CMA) and fraud examination (CFE). My educational background includes a B.S. in Management from the University of New Orleans, and a Master of Business Administration (MBA) degree from Vanderbilt University. I am a member of the American Institute of Certified Public Accountants, the Society of Louisiana CPAs, the Institute of Management Accountants, and the Association of Certified Fraud Examiners. A copy of my resume is attached as Exhibit A to this declaration.

3. Along with my partners and other professionals at Bourgeois Bennett, we have assisted thousands of clients/claimants in connection with the quantification of compensable losses and the development and submission of claims under the DWH Court-supervised Settlement Program (CSSP). We currently employ approximately thirty (30) professionals that are assisting clients with DWH claims, primarily Business Economic Loss (BEL) claims (including multi-facility, start-up, and failed business claims). Located in the heart of the geographic area impacted by the oil spill, Bourgeois Bennett is one of the top firms in the country providing accounting and consulting assistance to claimants in connection with the DWH CSSP.

1

## II.     Scope of Work

4. Bourgeois Bennett has been retained in a consulting capacity by Lead Class Counsel for the Economic and Property Damages Class and Medical Benefits Class conditionally certified for settlement purposes in MDL 2179.

5. Documents relied upon in connection with this assignment include:

   - Deepwater Horizon Economic and Property Damages Settlement Agreement
   - Announcement of Policy Decisions Regarding Claims Administration dated September 25, 2012
   - Class Counsel's Request for Formal Policy Statement: Monthly Revenue, December 16, 2012
   - BP's Response to Class Counsel's December 16, 2012 Request for Policy Determination, January 9, 2013
   - BP's Further Submission in Response to Class Counsel's December 16, 2012 Request for Policy Determination, January 11, 2013
   - Announcement of Policy Decisions Regarding Claims Administration dated January 15, 2013
   - Declaration of Hal Sider dated February 2, 2013

   I also attended the Court-ordered mediation held in connection with this matter on February 14, 2013 where I was provided four example BEL claim recalculations of the Step 1 compensation owed to claimants as proposed by BP, along with a copy of the PWC Workbooks reflecting the claim calculations utilized by the CSSP in connection with the claim determinations issued for each example claimant.

6. Based upon my review of the documents provided and experience as a CPA working with claimants, this Declaration reflects my preliminary conclusions and opinions regarding BP's proposed methodology for the calculation of BEL claims under the Settlement Agreement.

2

### III. The BP Proposal

7. The BP proposal, as reflected in BP's Response to Class Counsel's December 16, 2012 Request for Policy Determination and subsequent submissions by BP, attempts to address perceived issues related to the measurement and matching of revenue and variable expenses, and the associated compensable losses, if any, payable to claimants under the terms of the Settlement Agreement.

8. The BP proposal incorporates the application of certain threshold tests or triggers "to determine whether future matching of revenue to corresponding variable expenses is required."[1] If a claimant's reported financial data does not pass the proposed threshold tests, then the reported revenues and/or expenses would be adjusted or restated in accordance with certain proposed methodologies which vary by industry or type of business.

9. "Additional scrutiny" is proposed by BP for claims which do not meet the following threshold tests:

    - Claims in which the claimant's monthly P&L statements report revenue in one month (or a small number of months) that is in excess of a specified percentage of the claimant's annual total revenue for 2010 and/or any of the Benchmark Period years.
    - Claims in which the claimant's monthly P&L statements report a negative variable profit in any month of 2010 and/or the Benchmark Period years.
    - Claims in which there is a wide variation in the monthly variable profit margin (expressed as a percentage of revenue) within a given year.

10. The methodologies proposed by BP to adjust the claimant's reported financial statement amounts for claims which do not pass one or more of the threshold tests are generally designed to address the variability in reported monthly operating results with the stated goals of determining when revenue is earned and matching revenue earned with corresponding expenses incurred. In all four of the example claim recalculations submitted by BP, the variability in the claimant's reported operating results is reduced via a spreading or realignment of reported revenues over a longer time period, resulting in a significantly reduced compensable loss.

---

[1] BP's Further Submission in Response to Class Counsel's December 16, 2012 Request for Policy Determination, January 11, 2013, p.2.

3

## IV. Discussion and Analysis

11. At its core this dispute revolves around the proper measurement of revenues, expenses and variable profit pursuant to the terms of the Settlement Agreement. These fundamental accounting determinations are made more difficult by the required use of monthly financial data in the calculation of compensable losses under the Settlement Agreement.

12. The proper recognition of revenues and matching of expenses is fundamental to the preparation of financial statements in accordance with General Accepted Accounting Principles (GAAP). However, there is not a stated requirement in the Settlement Agreement for claimants to submit financial statements prepared in accordance with GAAP or for the CSSP to adjust the claimant's reported results of operations to conform to GAAP in determining losses payable under the Settlement Agreement.[2]

13. The "irregularities" complained of by BP may be (and in my opinion generally are) the simple result of the basis of accounting utilized by a BEL claimant to maintain its books of account in the ordinary course of business. BP has acknowledged as much.[3]

14. The vast majority of businesses do not prepare financial statements in accordance with GAAP. Bases of accounting other than GAAP (referred to in authoritative accounting literature as "other comprehensive bases of accounting") are a widely used alternative to the numerous and often complex accounting requirements prescribed by GAAP. Recognized bases of accounting other than GAAP include:

    - Cash Basis (including modified cash basis)
    - Regulatory Basis
    - Tax Basis
    - Contractual Basis

    The cash basis and tax basis methods are the most prevalent in accounting practice.

---

[2] The initial Settlement Agreement filed on 4/18/12 contained a requirement (at Section 4.4.13.4) that retained professionals must attest that they have submitted information in accordance with generally accepted accounting principles. That requirement was eliminated and does not appear in the Amended Settlement Agreement filed on 5/3/12.

[3] See Declaration of Hal Sider, p.3, footnote 2.

15. The prevalent use by claimants of accepted bases of accounting other than GAAP can and frequently does produce variability of the type complained of by BP in the timing of the recognition of revenues and expenses, as compared to claimants that utilize GAAP-based financial reporting. The effect upon claim determinations associated with the use of financial data prepared on an accepted basis of accounting other than GAAP should have been foreseeable and predictable by anyone with even a rudimentary knowledge of accounting and the loss calculations embodied in the Settlement Agreement.

16. BP's proposal is inconsistent with the way that Bourgeois Bennett and I (and all of the other CPAs that I know who are involved in the claims process) have been preparing claim calculations and submissions to the CSSP. Claims are currently evaluated and submitted to the CSSP based upon the claimant's books and records and the method of accounting used by the claimant in the ordinary course of business.

17. BP's proposal also represents a major change to the methodology currently utilized by CSSP to determine compensable losses under the Settlement Agreement. Under BP's proposal the Settlement Program would be required to screen the financial data submitted by all BEL claimants to determine if it passes certain additional threshold tests. If the data submitted by the claimant fails to meet any of the proposed threshold tests, then the Settlement Program would be required to make additional inquiries of the claimant and to request additional documentation from the claimant. Based upon the results of these additional inquiries and the evaluation of the additional documentation provided by the claimant, the Settlement Program would then be required to restate the claimant's financial data (including potential adjustments to reported revenues, expenses and variable profits) in accordance with a proposed series of methodologies which vary by type of industry. Following restatement of the claimant's financial data, the Settlement Program would then be required to recalculate the compensable loss, if any, utilizing the revised financial data. Considerable additional professional judgment would need to be exercised by the accountants working for CSSP in order to give effect to the changes proposed by BP.

18. As currently implemented by the CSSP, the determination of whether a claimant meets the causation test, and the amount of the compensable loss, if any, to be awarded to a claimant, is readily determinable and objectively verifiable. BP's proposal would inject a significant amount of subjectivity into the claim calculation process via the need for the exercise of considerable professional judgment by the accountants employed by the Settlement Program. Accordingly, professional advisors and claimants would no longer be able to ascertain in advance of a determination by the Settlement Program whether they meet the causation requirements of the Settlement Agreement, or to determine with reasonable certainty the amount, if any, to be awarded to a BEL claimant.

19. BP contends that the failure to properly match revenues and expenses results in systematic overcompensation for BEL claimants. Accepting this contention as true for purposes of argument only, what BP has failed to disclose is that the same allegedly faulty accounting data has resulted in an indeterminable number of businesses not filing claims because based upon their accounting records as maintained in the ordinary course of business they did not meet the causation requirements or have a compensable loss under the Settlement. Accordingly, the accounting data utilized by a business (even if BP believes that the data is flawed) can also produce results which are favorable to BP in the form of fewer claims. The results go both ways.

20. While BP's proposal includes provisions for the reallocation of historical Benchmark Period and Compensation Period revenues, it is flawed in that it fails to consider the corresponding adjustment for the receipt of future revenues during the relevant historical time periods. Accordingly, even if BP's proposal is accepted and implemented, the alleged failure to properly match revenues and expenses will still exist, and BP's proposal is flawed according to BP's own definition of what is required by the Settlement Agreement. And, of course, it would be impossible to allocate the receipt of unknown future revenues over the relevant historical time periods that the revenues were earned and expenses were incurred to generate the future unknown revenues.

21. Because of the significance of BP's proposal in terms of its impact upon claimant eligibility and the calculation of compensable loss under the Settlement Agreement, serious implementation issues would arise if the proposal is adopted, including issues related to the treatment of BEL claimants previously paid and claims in process under the CSSP's current calculation procedures. And presumably, all claims previously filed and rejected for failure to meet the causation test would need to be reevaluated based upon the

changed calculation methodology. Depending upon the resolution of these implementation issues, it could be necessary for the CSSP to reevaluate every BEL claim processed thus far in order to determine if the claimant was "overpaid" or "underpaid." It may also be necessary for professional advisors to reevaluate all of the BEL claims and potential claims considered previously on behalf of their clients. The implementation of BP's proposal could result in a significant delay in the processing of claims, and would almost certainly involve a significant investment of additional time and money to fund the Settlement Program, as well as a significant investment of additional time and money by professional advisors and claimants.

## V.     Summary of Conclusions and Opinions

22. At its core this dispute involves the proper measurement of revenues and expenses within the context of the claim calculations required under the Settlement Agreement. BP proposes a relatively complex set of procedures to adjust the reported financial results prepared in the ordinary course of business by BEL claimants to correct for perceived anomalies and irregularities in the recognition and matching of revenues and expenses. Class Counsel argues, among other things, that BP's proposal is contrary to the terms of the Settlement and that no such restatement of revenues or expenses is required by the Settlement Agreement.

23. BP's proposal is inconsistent with the calculation of claims based upon financial statements maintained by claimants in accordance with GAAP or any other accepted basis of accounting, and is inconsistent with the way that claimants maintain their books and records in the ordinary course of business. More than eight months into the Settlement Program, BP now seeks to invent and to inject into the process an entirely new basis of accounting for the calculation of compensable losses under the Settlement Agreement.

24. The anomalies and irregularities complained of by BP are in my opinion largely the result of claimants utilizing an accepted basis of accounting other than Generally Accepted Accounting Principles (GAAP), combined with the Settlement Agreement's requirement to utilize discrete monthly financial data in the calculation of loss. The vast majority of businesses do not maintain their books of account in conformity with the GAAP, electing instead to utilize a simpler and generally less expensive basis of accounting. The two most prevalent accepted bases of accounting in practice are the cash basis and the income tax basis of accounting.

25. The Settlement Agreement does not specify the basis of accounting to be used. The effect upon claim determinations associated with the use of financial data prepared on an accepted basis of accounting other than GAAP should have been foreseeable and predictable by anyone with a rudimentary knowledge of accounting and basic understanding of the workings of the Settlement Agreement.

26. BP's proposal represents a major change to the methodology currently employed to determine compensable losses under the Settlement Agreement. If approved and implemented, BP's proposal will have a material negative impact upon the amounts awarded to a significant number and percentage of all BEL claimants. BP's proposed changes also present significant implementation issues and will almost certainly involve a significant investment of additional time and money, as well as delays in the processing of claims.

27. BP's proposal is conceptually flawed. Even if the proposal is approved and implemented, it will not accomplish BP's stated objective of properly matching revenues and expenses. BP's proposal will not and does not purport to restate claimant submitted financial statements in accordance with GAAP.

28. I do not believe that BP's proposal is practical or workable. If implemented, it will further add significant uncertainty and subjectivity to the claim calculation process, such that it will no longer be possible to ascertain with reasonable certainty whether a BEL claimant passes causation, or the amount that a claimant is due under Settlement, in advance of a determination by the Settlement Program.

I declare under penalty of perjury that the foregoing is a true and correct statement of my analysis and opinions.

George J. Panzeca, CPA/CFF, CMA, CFE
February 18, 2013

**Bourgeois Bennett**
CPAs | CONSULTANTS
A LIMITED LIABILITY COMPANY

# George J. Panzeca, CPA/CFF, CMA, CFE
## Director, Litigation and Forensic Accounting Services

111 VETERANS BOULEVARD, 17TH FLOOR
METAIRIE, LA 70005
504.831.4949    georgep@bb-cpa.com

**EDUCATION/ PROFESSIONAL CERTIFICATIONS**

B.S. Management, University of New Orleans (1977)
M.B.A, Owen Graduate School of Management, Vanderbilt University (1979)

Certified Public Accountant (Licensed in Louisiana and Mississippi)
Certified in Financial Forensics
Certified Management Accountant
Certified Fraud Examiner

**RANGE OF EXPERIENCE**

More than 30 years experience in public accounting, with an emphasis on the provision of financial consulting and forensic accounting services. Representative financial consulting experience includes:

- Feasibility Studies
- Financial Analyses, Forecasts and Projections
- Profit Improvement Studies
- Operational Audits
- Internal Control Reviews
- Due Diligence Assignments
- Business Plans
- Loan Proposals
- Management Audits
- Cost Accounting and Pricing Analyses
- Utility Rate and Regulatory Analyses

In the litigation consulting and forensic accounting area, Mr. Panzeca has assisted attorneys and their clients in all phases of the litigation process from initial discovery through trial or settlement, including the provision of expert testimony in a variety of commercial disputes. Representative litigation assignments include:

- Admiralty / Maritime Claims
- Breach of Contract Action
- Bankruptcy (Chapter 11)
- Business Interruption / Lost Profits
- Construction Claims
- Securities Actions
- Insurance Claims
- Business Valuation
- Intellectual Property
- Franchise Disputes
- Fraud and Embezzlement / Investigation
- Product Liability
- Professional Malpractice
- Court - Appointed Expert / Special Master
- Personal Injury / Wrongful Death
- Community Property Partition

www.bourgeoisbennett.com

## George J. Panzeca - 2

**PRIOR TRIAL TESTIMONY**

- Nicholson & Loup v. Carl E. Woodward, Jefferson Parish, La. (1988)
- Philippe v. Lloyd's Aero Boliviano, Donaldsonville, La. (1995)
- Gulf States PGA v. Whitney National Bank, Orleans Parish, La. (1995)
- Leslie D. Jensen v. C. F. Picou Associates and Courtney F. Picou, Baton Rouge, La. (1997)
- Stanley Muller & Associates v. State of Louisiana, Covington, La. (1998)
- Foret v. Prudential Securities, NASD Arbitration (1998)
- Hearing conducted under auspices of Louisiana Supreme Court re: suitability of candidate for admission to Bar (1998)
- Inquiry into the Prudence of Entergy New Orleans, Inc.'s Natural Gas Contracting Practices, City of New Orleans, Docket No. UD-98-2 (1998)
- Marocco v. Marocco, Hammond, La. (1999)
- Twinstar v. Pearson, et al., Jefferson Parish, La. (1999)
- Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V. et al., Federal Court, Biloxi, Ms. (1999)
- Cruz and Field v. Fidelity Homestead, et al., Jefferson Parish, La. (2000)
- Premier Restaurants, Inc. v. Kenner Plaza Shopping Center, Inc., et al., Jefferson Parish, La. (2000)
- BP Exploration v. American Heavy Lift Shipping, U.S.D.C., Eastern District of Louisiana, Expert report submitted and accepted without live testimony (2000)
- Consorcio Rive, S.A. de C.V. v. Briggs of Cancun, Inc. and David Briggs Enterprises, Inc., U.S.D.C., Eastern District of Louisiana (2001)
- In the Matter of the Complaint of Reverend C.S. Gordon, Jr., et al., Arising out of Alleged Overcharges Passed Through the Fuel Adjustment Clause Filing of Entergy New Orleans, Inc., City of New Orleans Docket No. UD-99-2 (2002)
- Charles Schramm v. Global Insulators and Environmentally Safe Products, Inc., Terrebonne Parish, La. (2002)
- Succession of Barbara Joan Blundell Davis, Services and Testimony as Special Master, Judge Jo Ellen Grant, Jefferson Parish, La. (2002)
- United States of America v. Trident Crusader, in rem, U.S.D.C., Western District of Louisiana, Lafayette (2003)
- In Re: Barnett Marine, Inc. (DIP), Ch. 11 Bankruptcy Proceedings, U.S. Bankruptcy Court, Eastern District of Louisiana (2003)
- Henriques v. Fleming, et al., Orleans Parish, La. (2004)
- Cambridge Realty West, LLC v. Gentilly Shopping Center, LLC, et al., Orleans Parish, La. (2004)
- Dinosaur Entertainment v. State Farm, et al., Orleans Parish, La. (2004)
- Patricia Walker wife of/and Thompson Walker, Jr. v. Kenneth Riddle, et al., Jefferson Parish, La. (2006)
- Peter R. Harvey and Robert F. Lofblad v. Roland J. Joyce and CTC Minerals, Inc., U.S.D.C., Eastern District of Louisiana (2006)
- Walter A. Glod, Jr. v. W. Gregory Baker, et al., Lafayette, La. (2006)
- Betti Moise Presley v. Lumber Liquidators, Inc., Jefferson Parish, La. (2007)
- Graphic Packaging International, Inc. v. Penford Products Company, Ouachita Parish, La. (2007)

## George J. Panzeca - 3

**PRIOR TRIAL TESTIMONY** CONTINUED

- Mississippi Phosphate Corp. v. Furnace and Tube Service, Inc., et al., U.S.D.C., Southern District of Mississippi (2009)
- Advocate Financial, LLC (DIP), Ch. 11 Bankruptcy Proceeding, United States Bankruptcy Court, Middle District of Louisiana. (2010)
- Ronald Graci and Sunkissed Tanning Studios, LLC v. Gasper John Palazzo, Jr., L.L.C., 24th Judicial District Court of Jefferson Parish (2011)
- Chad Doyle v. Shamrock Marine, LLC, 23rd Judicial District Court of Ascension Parish (2011)
- Marketfare St. Claude, L.L.C. and Robert Resources, L.L.C. v. United Fire & Casualty Company, et al., Civil District Court, Parish of Orleans (2012)

**PRIOR DEPOSITION TESTIMONY**

- S&G Press v. Harris Graphics
- Louisiana Home Builders Assoc. v. ADJUSTCO, Inc.
- Kerner v. Salsman and Prudential Insurance Co.
- Nicholls Pointing Coulson v. Transportation Underwriters of La.
- Cajun Electric Bankruptcy / Southern Electric International
- Shappert Engineering v. State of Louisiana
- McGraw v. Allstate Insurance
- Culbertson's Limited v. Shelter Mutual Insurance
- Cruz and Field v. Fidelity Homestead, et al.
- Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V. et al.
- Tessier, et al. v. Moffatt, et al.
- Inquiry Into the Prudence of Entergy New Orleans, Inc.'s Natural Gas Contracting Practices, City of New Orleans, Docket No. UD-98-2
- Premier Restaurants, Inc. v. Kenner Plaza Shopping Center, Inc., et al.
- Associated Terminals, LLC, et al. v. Illinois Central Railmarine Terminal, et al. (Consolidated with Penny Holden, et al. v. Connex - Metalna, et al.)
- Simmons v. Templeton, et al.
- In the Matter of the Complaint of Reverend C.S. Gordon, Jr., et al. Arising out of Alleged Overcharges Passed Through the Fuel Adjustment Clause Filing of Entergy New Orleans, Inc., City of New Orleans, Docket No. UD-99-2 (2001)
- Brown v. U-Haul of Louisiana (2002)
- Broadmoor, L.L.C. v. Jazzland, Inc., et al. (2003)
- East-West Wines, L.L.C. v. Pacific Wine Partners, Ltd. (2003)
- Dinosaur Entertainment v. State Farm, et al. (2003)
- Riverwood International v. Employers Insurance of Wausau (2003)
- Louisiana Clerk's of Court Retirement Fund v. City of New Orleans, et al. (2003)
- Cambridge Realty West, LLC v. Gentilly Shopping Center, et al. (2004)
- Cudd Pressure Control, Inc. v. American Bureau of Shipping, et al. (2004)
- Morales, et al. v. Bayou Concession Salvage, Inc., et al. (2004)
- LaQuinta, Inns, Inc., et al. v. Morton Verges Architects, et al. (2005)
- Walter A. Gold, Jr. v. W. Gregory Baker, et al. (2005)
- Kenneth J. Johnson v. Bayshore Towers, LLC (2005)
- Peter R. Harvey and Robert F. Lofblad v. Roland J. Joyce and CTC Minerals, Inc. (2006)
- Industrial Maritime Carriers (Bahamas), Inc. and Intermarine, Inc. v. Barwil Agencies A.S., et al. (2006)
- Betti Moise Presley v. Lumber Liquidators, Inc. (2007)

## George J. Panzeca - 4

**PRIOR DEPOSITION TESTIMONY CONTINUED**

- Rattler Tools, Inc. v. Bilco Tools, Inc. and William Coyle (2007)
- The Higbee Company v. Greater Lakeside Corp., et al. (2007)
- Graphic Packaging International, Inc. v. Penford Products Company (2007)
- JAS Construction, Inc. v. The NHP Foundation, et al. (2007)
- Pan American Life v. Ronald Jakelis, et al. (2007)
- ECC Operating Services, Inc. v. Omni Pinnacle (2008)
- Ingraham v. Planet Beach Franchising Corp. (2009)
- Mississippi Phosphates Corp. v. Furnace and Tube Service, Inc., et al. (2009)
- Bona Fide Demolition and Recovery, L.L.C. v. Crosby Construction Company of Louisiana, Inc., et al. (2010)
- Ronald Graci and Sunkissed Tanning Studios, LLC v. Gasper John Palazzo, Jr., L.L.C. (2011)
- Anthony Buffone v. Mabel Mangano, Salvador Mangano and Buffman, Inc. (2011)
- Kops v. Lee, Futrell, Perles, et al. (2011)
- Ciolino Pharmacy, Inc., et al. v. J M Smith Corporation d/b/a Smith Drug Company (2011)
- Marketfare St.. Claude, L.L.C. and Robert Resources, L.L.C. v. United Fire and Casualty Company, et al. (2011)
- Gulf Fleet Tiger Acquisition, L.L.C. v. Thoma-Sea Ship Builders, L.L.C. (2011)

**SELECTED SPEECHES AND PUBLICATIONS**

"The BP Claims Process and Forensic Accounting" *Louisiana State Bar Association's 19th Admiralty Symposium, September 2012*

"Embezzlement, Ponzi Schemes, and Other Frauds" *New Orleans Bar Association Taxation and Accounting in Bankruptcy, May 2012*

"Ethics & Professionalism in Litigation & Valuations Services" *Mississippi Society of CPAs Business Valuation & Litigation Conference, November 2010*

"Ethics: Will You Know it When You See It?" *AICPA National Forensic Accounting Conference, October 2010*

"Business Interruption Insurance Claims: Lessons Learned from Hurricane Katrina" *American Institute of Certified Public Accountants/FVS Web Seminar, Dec. 2008*

"Ethics and Professionalism in the Performance of Litigation Services," *Society of Louisiana Certified Public Accountants, Litigation Services Workshop, 2007*

"Public Accountant Review Panels in Louisiana: Lessons Learned from the First Ten Years," *Lagniappe, A publication of the Society of Louisiana Certified Public Accountants, Aug./Sept. 2007*

"Analysis and Quantification of Lost Profits," *Louisiana State Bar Association, CLE and the City: A Multi-Topic CLE Seminar, New York, NY, 2004*

"The Forensic Accountant as Fraud Investigator," *University of New Orleans, Beta Alpha Psi Accounting Lecture Series, 2003 and Tulane University, Business Law Class Guest Lecturer, 2004*

## George J. Panzeca - 5

| | |
|---|---|
| **SELECTED SPEECHES AND PUBLICATIONS** CONTINUED | "Trying the Damage Case," *Panelist, Louisiana State Bar Association's 19th Summer School for Lawyers, 2003*

"Introduction to Forensic Accounting," *Institute of Internal Auditors, New Orleans Chapter; Association of Government Accountants, New Orleans Chapter; Association of Certified Fraud Examiners, Baton Rouge Chapter, 2003*

"Paper Chase: The Role of the Accountant as Consultant and Expert Witness," *University of New Orleans Metropolitan College, Guest Lecturer, 2001-2002*

"Fraud and Embezzlement Investigations," *Louisiana Society of CPAs, Litigation Services Conference, 1997 and Louisiana Society of CPAs Audit and Accounting Workshop, 2001*

"Overview of Litigation and Forensic Accounting Services," *Beta Alpha Psi Continuing Education Program, University of New Orleans, 1998*

"Prevention and Detection of Fraud and Embezzlement," *Institute of Management Accountants, 1998*

"Fraud and White-Collar Crime," *Louisiana Chapter of International Association of Special Investigation Units, 1998*

"Introduction to the Accounting Process and the Role of the CPA as Fraud Examiner," *UNO Metropolitan College, Louisiana Basic Private Investigators Course, Guest Lecture, 1996-1998*

"Professional Standards Applicable to Litigation Services Engagements," *Louisiana Society of CPAs, Litigation Services Workshop, 1995*

"The Problem of Fraud in Our Society: An Introduction," *Civil Fraud and White-Collar Crime Symposium, Louisiana State Bar Association, 1995* |
| **SELECTED PROFESSIONAL/ CIVIC AFFILIATIONS** | American Institute of Certified Public Accountants<br>  *Member of Forensic and Litigation Services Committee (2007-2010)*<br>Society of Louisiana Certified Public Accountants<br>  *Former Member and Past Chairman, Litigation Services Committee*<br>Institute of Management Accountants, New Orleans Chapter,<br>  *Board of Directors (1992-1993)*<br>Association of Certified Fraud Examiners<br>Delgado Community College, Accounting Program Advisory Board<br>Kiwanis Club of New Orleans *(Member and Past President)*<br>Kiwanis Youth Foundation of New Orleans, Inc. *(Member and Past President)*<br>Broadway, Inc./K-Bar-B Youth Ranch *(President, 2006-2008)* |
| **EMPLOYMENT HISTORY** | Bourgeois Bennett, L.L.C., Director and Member, 2001-Present<br>LaPorte, Sehrt, Romig & Hand, Director, 1995-2001<br>Ernst & Young, Litigation and Dispute Resolution Services, 1988-1995<br>Price Waterhouse, Management Advisory Services, 1981-1988<br>Alario & Associates, Inc., Financial Analyst, 1979-1981 |