# Exhibit 19ZZH

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010

MDL No. 2179

SECTION: J
JUDGE BARBIER
MAGISTRATE JUDGE SHUSHAN

## SUPPLEMENTAL DECLARATION OF W. ALLEN CARROLL, JR.

1. My name is Allen Carroll and I am familiar with the causation and compensation formulas agreed to and approved in the Deepwater Horizon Settlement Program. I have also reviewed the Motion to Reconsider and accompanying materials filed by BP and its argument that the claimant should be obligated to "match" its revenue to expenses. I make this supplemental declaration to expand on how BP's position is inconsistent with accounting principles and the Settlement Agreement itself. I incorporate my January 2013 Declaration submitted to the Court which also included my qualifications.

2. I reviewed the Settlement Agreement as soon as it was available. Working with counsel, we developed software to calculate the amount of the claim based on the client's profit and loss statements. As soon as the settlement claims center began accepting claims, we assisted counsel in preparing those claims. As claims determinations were made, we had reviewed the analyses prepared by the claims office and determined that the Settlement Administrator had implemented the settlement formula the same way we prepared the claims. Our conclusion was reached before the November 2012 deadline to opt out of the settlement, and well before the fairness hearing conducted by the Court.

3. I have reviewed claims my firm assisted counsel in preparing which were approved before the opt out date and have confirmed that more than one claim had the triggers BP now states indicate a problem claim. These claims were approved by the Settlement Administrator and BP did not appeal. As of the deadline to opt out, and the fairness hearing, I confirmed we interpreted the Settlement Agreement the same way as the Settlement Administrator. The Settlement Agreement formula is straightforward, clear and objective.

4. We have invested several thousands of hours of work, and our clients have incurred millions of dollars in accounting fees (many of which are not reimbursed by the Program), applying the Settlement Agreement in the straightforward and objective

1

manner confirmed by the Settlement Administrator. My interpretation of the Settlement Agreement has also been confirmed in working with almost 100 CPA firms in the region who have applied the settlement formula to thousands of business claims. None of the CPA's we have worked with questioned the current interpretation of the Settlement Agreement, and they have not raised any of the issues now raised by BP.

5. BP's experts imply that unreasonable damage conclusions are being reached due in part to the flexibility claimants have to select their loss months. This is not a flaw in the implementation of the Settlement Agreement, but a natural function of the Settlement Agreement. The agreement obviously recognized some businesses suffered losses more quickly than others and some businesses recovered more quickly than others. By forcing a reallocation of revenue, this concept is distorted. The reallocation of revenue, as BP proposes, destroys this aspect of the Settlement Agreement which compares losses from month to month.

6. BP's proposal, which applies to both causation[1] and compensation, is complicated and is and not well enough defined to be implemented in an objective way. If BP's proposal is adopted, the Program:

    a. Would require subjective determinations, open to dispute between the claim center accountants and the claimant, regarding when revenue was "earned."
    b. Would require businesses, many of which are struggling, to go to the substantial expense of determining how much of its revenues are earned each month before knowing if it was eligible to make a claim. Under the current version of the settlement formula, a claimant can determine quickly and without significant expense if the claim passes the causation test. Under BP's version of the formula, the entire claim would have to prepared before even a preliminary determination could be made. Because the claims center would be able to completely change the timing of expenses and revenues even after the claim was prepared, the claimant would not be able to know if it had a valid claim.
    c. Preparing a claim would require additional documentation beyond that required by Exhibit 4A, including years before 2007 and after 2011.
    d. Causation will be driven by expenses rather than the timing of revenues. A business that incurred expenses prior to the spill would have revenue attached to those expenses even if it had no revenue in that month.
    e. The moving of expenses and revenues would necessarily mean that the formula published in the Settlement Agreement could no longer be applied on a uniform and consistent basis for all claimants.

---

[1] Hal Sider's February 2, 2013 Declaration, Page 23, paragraph 39

2

7. BP asserts that "matching" of revenue and expenses is such a fundamental concept of accounting that it should be implied into the Settlement Agreement. This is not true. Matching is not an accounting concept widely applied across all bases of accounting. Matching is only a short- hand way to describe the revenue and expense recognition rules that underlie the accrual method of accounting and GAAP financial statements. Matching has no application to the cash basis of accounting. That fact is important for several reasons.

8. First, BP's formula that supposedly "matches" expenses to revenue is contrary to the fact that non GAAP compliant P&L's would be accepted by the Administrator. Assuming that all claimants are subject to the same rules, what BP is proposing would force all claimants to employ a poor method to convert cash statements to accrual statements.

9. Second, if the claimant submitted GAAP compliant P&Ls, there is no basis to require another step of matching.

10. Third, GAAP recognition rules and "matching" most often apply to expense recognition not revenue recognition. Under GAAP, revenue is generally recognized when two conditions have been met: (1) the revenue is realized or realizable (company has exchanged goods and/or services for cash, receivables, or other assets readily convertible to those); and (2) the revenue has been earned (company has done what it needs to do to be entitled to the revenue). For companies with manufacturing or selling activities, these two conditions are generally met at the point of sale/delivery. This is the point in time where most uncertainties are removed and the sales price is known. This is basic accrual accounting.

11. What BP's out of date textbook describes and calls matching is the concept that expenses are recognized in the same period as the revenues that were earned as a result of the expenses. The expenses follow the revenues, not the other way around.

12. Under GAAP, expenses are recognized when obligations are (1) incurred and (2) offset against recognized revenues, which were generated from those expenses, no matter when cash is paid out. For example, a sales commission owed to an employee is based on the amount of a sale. Therefore, commission expense should be recorded in the

3

same accounting period as the sale. Likewise, the cost of inventory delivered to a customer should be expensed when the sale is recognized. A retailer who has a GAAP compliant P&L has to use an inventory method that delays the recognition of the cost of goods sold (COGS) expense until the good is sold. No business moves revenue to assume it occurred when an expense is incurred.

13. BP's proposal to move revenue to match expenses is backwards and violates the very concept referred to as matching in BP's out dated textbook. The formula would artificially assign revenue to non-revenue producing expenses. If a claimant has a significant repair expense in a given month, BP would force them to assign revenue to that event where none existed.

14. The matching approach BP advocates is not matching in any sense recognized in the accounting world, but is merely an allocation formula that artificially moves revenue into months before or after it was earned based on variable expenses. While "matching" generally describes accrual basis financial statements, there is no known accounting principle that uses actual variable expenses incurred during a month to estimate revenues earned for that month. BP's reallocations are speculative and do not reflect the "matching" of monthly revenues earned with expenses as incurred as contemplated by accounting principles.

15. For those claimants that meet certain triggers, BP proposes a fix that estimates monthly revenues earned. (See TAB 1 of BP's Response to Class Counsel's December 16, 2012 Request for Policy Determination and Hal Sider's February 2, 2013 Declaration pg. 20). BP's approach is flawed for many reasons, some of which are:

    a. BP's approach abandons the use of contemporaneous monthly P&Ls in determining damages, which is a key feature in the application of the objective and clear settlement formula.

    b. BP's approach fails to reflect revenues when earned under principles of accounting.

4

    c. BP's "reallocating annual revenues" to each month using actual monthly variable expenses as recorded does not match revenues with expenses; it artificially smooth's revenues because it:
       i. Does not reflect earned revenues.
       ii. Does not take into consideration the variability of profits from job to job or sale to sale.
       iii. Does not consider that losses can occur on jobs.
       iv. Does not consider that some variable expenses are incurred for which there is no direct connection with revenue.
          1. Employee bonuses.
          2. Repairs
          3. Travel and entertainment
          4. Materials and labor on reworked jobs
          5. Donations
          6. Drug Testing
    d. BP's way of allocating revenues can result in revenues being used in the BEL formula before or after they have been earned.
    e. Full application BP's approach would require revenues/fees collected in 2012 to be reallocated with expenses in 2011.
    f. BP's approach also artificially assumes that each year is a distinct profit period. Businesses with greater profits pre spill will be forced to reallocate revenues/profits forward to the post spill period, inappropriately reducing the claim amount.

I declare under penalty of perjury that the foregoing is true and correct.

_W. Allen Carroll_

5