# Exhibit 25

**From:** Godfrey, Richard C. [mailto:rgodfrey@kirkland.com]
**Sent:** Friday, February 17, 2012 11:30 AM
**To:** Rice, Joe; Calvin Fayard
**Cc:** james.neath@bp.com
**Subject:** Rule 408 Settlement Communication: Confidential: Observations about the PSC's Concerns Regarding the "Benchmark Period" in the Compensation Framework for Business Economic Loss Claims document

Friends: I have personally spent time with our PSC colleagues, including Rhon, John and Wally, along with BP's economic and accounting experts, in an effort to understand the concern Joe raised earlier this week regarding the definition of the "Benchmark Period" in the "Compensation Framework" document. I have approached an analysis of the PSC's concerns not only with an open mind, but also as one who was not involved in drafting the document entitled "Compensation Framework for Business Economic Loss Claims." Obviously, I was involved at a general level of discussion with the PSC concerning the goals and basic approach for the Framework in mind, but I had no role in drafting of the Framework. Since Joe raised the PSC's concerns, however, I have spent a fair amount of time reviewing the document's drafting history, as well as listening to the perspectives of Rohn, John and Wally. I wish to express my thanks and deep appreciation for the time which the PSC spent with me explaining its perspective, and am particularly thankful to Rhon for the time he has spent educating me about the PSC's concerns. Finally, I have not cross-examined the BP drafting team about the meaning or intent of the Compensation Framework document. Thus, I did not ask or examine Wendy Bloom, for example, as to what she understood or intended with respect to the Compensation Framework document. Instead, I started with the documents, the drafting history, and once I had digested those, I then met with Andy Karron to walk through my understanding of the documents, and after that, met with Hal Side and then Rhon to walk through and discuss the issues.

Unfortunately, despite spending the better part of the last two days analyzing the PSC's concerns, I have concluded that I do not agree with the PSC's concerns. In this regard, please consider the following points:

1. The term "Benchmark period" is a defined term. Its definition does not change depending upon the paragraph of the Compensation Framework in which it is

used.  Rather, it is a simple, defined term, to be used (and which is used) throughout the several page Compensation Framework document.

2.   The basic concept of the Compensation Framework is to determine compensation for a post-spill loss.  The Compensation Framework is not the "causation test," which determines eligibility to claim that there was a loss *caused by* the oil spill.  Rather, once the causation test has been satisfied (or presumed, as in Zone A for example), the Compensation Framework is designed to determine the compensation amount for a post-spill loss.

3.   The economics or accounting for determining a compensation amount for a post-spill loss is, in simple terms, to compare the *actual financial results* during the defined loss period measured against the profit that the claimant *might or should have been expected to earn* in the comparable post-spill period of 2010.

4.   The Compensation Framework for determining the recoverable loss could be described or calculated in one step.  But, to make it simpler and easier to understand, the parties broke the calculation into two steps:  "Step 1" and "Step 2."  The defined term, "Benchmark Period," is used in describing both Step 1 and in Step 2; this defined term is also used in the calculations of both Steps 1 and 2.

5.   At the top of the Compensation Framework document (page 1, 2nd paragraph), Step 1 is described by both the PSC and BP as follows:  "Compensates claimants for any reduction in profit between the 2010 *Compensation Period selected by the claimant* **and the comparable months of the Benchmark Period.**  Step 1 compensation reflects the reduction in Variable Profit (which reflects the claimant's revenue less its variable costs), over this period."  (PSC 12/19/11 Draft; italics and emphasis added).  The term "Compensation Period" is defined as: "Compensation Period is selected by the Claimant to include three or more consecutive months between May and December 2010."   Put simply:  the Claimant has the right to select three or more consecutive months from the

period May to December 2010 as the Compensation Period.  Thus, if the Claimant selects the months of June, July and August 2010 as the Compensation Period, for example, then that 3-month selected period is measured against "the comparable months of the Benchmark Period"—*i.e.,* June, July and August of the pre-spill Benchmark Period.

6.  At the top of the Compensation Framework document (page 1, 3rd paragraph), Step 2 is described by both the PSC and BP as follows:  "Compensates claimants for incremental profits or losses the claimant might have been expected to generate in the absence of the spill relative to sales from the Benchmark Period.  This calculation reflects a Claimant Factor that captures growth or decline in the pre-spill months of 2010 ***compared to the comparable months of the Benchmark Period*** and a General Adjustment Factor."  (PSC 12/19/11 Draft; italics and emphasis added).  Again, in the description of Step 2, the focus is upon the "comparable months of the Benchmark Period."

7.  The current disagreement between the parties is over the plain English meaning of the defined term "Benchmark Period."  Plaintiffs seek to define it as the ***entire*** 8 month period of May through December of either 2009, or the average of those 8 months for 2008-2009, or the average of those 8 months for the period 2007 to 2009.  BP, on the other hand, believes that the defined term "Benchmark Period" means the "comparable months" to those selected in the Compensation Period.   The history of how this disagreement arose is as follows:

    A.   In BP's draft of 12/13/11, BP had the following definition for the term "Benchmark Period":  "The Benchmark Period is the pre-spill time period corresponding to the months of the Compensation Period that a claimant chooses as the baseline for measuring its historical financial performance.  The claimant can select among the following Benchmark Periods:  2009, the average of 2008-2009, or the average of 2007-2009."   This definition was contained in the same document reflecting the description of Steps 1 and 2 as set forth above, and as used by the

>
> PSC (the PSC did ask for one change in Step 1, not material here, and which is included in the Step 1 quote above.)
>
> B.  In the PSC's response draft of 12/19/11, the PSC made various changes.  The only changes the PSC made, which BP did not view (and does not understand) as substantive with respect to the definition of the term "Benchmark Period," are as follows:  "The Benchmark Period is the pre-spill time period [**DELETED PHRASE:** "corresponding to the months of the Compensation Period that"] [**ADDITIONAL LANGUAGE:**  "including May through December which"] claimant chooses as the baseline for measuring its historical financial performance.  The claimant can select among the following Benchmark Periods:  2009, the average of 2008-2009, or the average of 2007-2009."  In the context of this Compensation Framework document BP did not (and does not) view this change as a substantive one, but rather an attempt at simplifying the defined term.  Accordingly, but not directly in response to the PSC's changed language, BP did--on December 27, 2011—state "BP and the PSC *have agreed upon how to calculate* Step 2…."  As to the Step 2 calculation, however, the PSC did not highlight or suggest that it considered the additional and modified language to constitute a substantive change, and BP likewise did not understand that the proposed simplified definition would change how Step 2 would be calculated.

8.   After the 12/27/2011 communication, there were additional negotiations over the Compensation Framework; eventually, the parties reached accord and on 1/12/12, placed the Compensation Framework's essential terms into the "Done Bucket", although all recognized that the drafts of the Compensation Framework would be matured and simplified to more precisely reflect what the parties had agreed to with respect to the Framework.

9.   On Tuesday of this week, 2/14/12, however, the PSC raised the question of how Step 2 was calculated in light of the definition of the term "Benchmark

Period." The reason the PSC says that it raised the question is because of a document BP sent to the PSC last week. In this regard, as the parties have reached closure on the various deal terms, they have been reviewing the "done bucket" items to simplify them, make them more readable, etc. In that context, BP proposed a number of what it considered to be non-substantive changes to the Compensation Framework document, including language in the Benchmark Period definition. The PSC, in contrast, explained to BP that it viewed the Benchmark Period term and the changes it made on December 19 as fundamentally substantive. According to the PSC, the defined term Benchmark Period is **the entire period of 8 months**—that is, the period May through December—and is not the period of time *comparable* to the three or more month period which the claimant selects for the Compensation Period. In short, the PSC says that in Step 1, the claimant can pick a three or more month period for 2010, but in Step 2, the claimant does not pick any months much less the comparable pre-spill months, but instead, the claimant is compelled to use the entire 8 month period of May through December.

10. With respect, I do not (nor does BP) agree with the PSC's interpretation of the Benchmark Period definition, as it makes no sense—whether evaluated by use of the plain English standard, by use of the defined term throughout the remainder of the Compensation Framework document, or from an accountancy and economic perspective. Thus, to accept the PSC's understanding of the term Benchmark Period, one would have to rewrite fundamental terms and language throughout the Compensation Framework document to both delete and add multiple terms. For example:

   A. The word "*comparable*" and phrase "*comparable months of*" is used throughout the document in the context of comparing the months selected by the Claimant in 2010 to compare against the same months in the Benchmark Period. The use of the word "comparable" and phrase "comparable months," however, makes no sense, has no meaning, and is completely unnecessary because--under the PSC's interpretation--there is nothing to compare—*i.e.*, three or more selected months in 2010 do not by definition "compare" to and are not "comparable

months to" the set 8-month period of a prior year or years.  (*See* PSC 12/19/11 Draft).

B.   In the 2nd paragraph, 1st page, in describing Step 1, the following bolded and italicized language would have to be deleted:  Whereas the Compensation Framework  document states "Compensates claimants for any reduction in profit between the 2010 Compensation Period selected by the claimant and ***the comparable months of*** the Benchmark period", the phrase "the comparable months of the…" would have to be deleted.  That language is unnecessary, has no meaning, and makes no sense under the PSC's interpretation, because according to the PSC, there are no "comparable months of" the Benchmark Period.  (PSC 12/19/11 Draft).

C.   In the 3rd paragraph, 1st page, in describing Step 2, the following bolded and italicized language would have to be deleted:  Whereas the Compensation Framework document states "This calculation reflects a Claimant Factor that captures growth or decline in the pre-spill months of 2010 compared to ***the comparable months of*** the Benchmark Period and a General Adjustment Factor," the phrase "the comparable months of…" would have to be deleted.  That language is both unnecessary and makes no sense because--under the PSC's interpretation--there are no "comparable months of" the Benchmark Period.  (PSC 12/19/11 Draft).

D.   On the bottom of page 1 and top of page 2, with respect to the PSC's language in the defined term "Benchmark Period", the interpretation the PSC offers of the Benchmark Period also does not make sense.  Thus, the definition as modified by the PSC states:  "The Benchmark Period is the pre-spill time period ***including*** May through December which claimant chooses as the baseline for measuring its historical financial performance…."  (Emphasis added)  But under the PSC's interpretation, the word "including" is unnecessary and without meaning; moreover, use of that word is flatly inconsistent with the PSC's interpretation that

the Benchmark Period is the entirety of the 8-month May through December time period.  (PSC 12/19/11 Draft).

E.   On page 3, towards the bottom of the page under Step 1, the Compensation Framework document states:  "Step 1 of the compensation calculation is determined as the difference in Variable Profit between the 2010 Compensation Period selected by the claimant and the Variable Profit over ***the comparable months of*** the Benchmark Period."  The bolded and italicized language is both unnecessary and makes no sense.  There are not going to be any "comparable months" under the PSC's interpretation of the term Benchmark Period because, according to the PSC, the Benchmark Period is a set period of 8 months and is not comparable to the 3 or more specific claimant-selected months in the Compensation Period.  The bolded and italicized language also is contrary to the PSC's interpretation for the same reason.  (PSC 12/19/11 Draft).

F.   On page 4, in the section of the Compensation Framework document entitled "Step 2 Compensation", the following bolded and italicized language would have to be deleted:  Whereas the document reads "Calculate total revenue amount for the ***claimant-selected May through December*** Benchmark Period…., that language is both unnecessary and makes no sense under the PSC's interpretation. The phrase "claimant-selected" is completely unnecessary because--according to the PSC--there is nothing for the claimant to select between the months of May through December.  Instead, the Benchmark Period is always a set time period, the PSC argues, of 8 months—May through December.  Accordingly, if the PSC's interpretation were correct, then the language either should state (i) "Calculate total revenue amount for the Benchmark Period….", or alternatively (ii) "Calculate total revenue amount for the Benchmark Period selected by the claimant…."  Regardless, there is no need for the May through December language as, according to the PSC's interpretation, the Benchmark Period by definition is always May through December.  And

equally important, the claimant-selected language modifies May through December, suggesting a choice, which according to the PSC, the claimant does not have and cannot make.

G.  As you fully appreciate, the law in every jurisdiction is the same that contracts should not (i) be interpreted to render contractual language unnecessary or superfluous, and (ii) should never be interpreted to produce absurd or nonsensical results.  Moreover, the defined term "Benchmark Period" cannot have two very different and irreconcilable and conflicting meanings for use within the same Compensation Framework document.  A definition is a definition—it cannot mean one thing in one part of the document, but something completely and conflictingly different in another part of the same document.  In sum, based upon a review of the PSC's own drafts and the language used in the Compensation Framework document itself, the PSC's interpretation cannot be squared basic principles of contract law, much less with the plain English as used throughout the Compensation Framework document.

H.  But, unfortunately, there are even deeper problems from an economic and accounting standpoint with the PSC's Benchmark Period interpretation—including problems which are detrimental to the class which the PSC seeks to represent.  These problems are illustrated by the following examples, among others:

1.  The PSC's interpretation makes no sense economically, as it will create fictitious losses that do not exist.  Why?  From an accounting and economic standpoint, one will often create artificial losses by comparing three months of revenue data with 8 months of revenue data.  The absence of 5 months of data will, by definition, often result in an artificially created, fictitious loss regardless of the claimant's actual economic performance.  This is illustrated by the example set out in Exhibit 1, sent to you in a separate e-mail.

2. At the same time, however, the PSC's interpretation will result in various claimants who actually suffered losses and who otherwise would be compensated by BP but who, under the PSC's interpretation, will receive less compensation than they should, or even no compensation at all. This is illustrated by the example set out in Exhibit 2, sent to you in a separate e-mail.

Joe and Calvin—I have tried very hard to see the PSC's point of view on this one, because the Business Economic Loss was put in the "done bucket" several weeks ago. But after spending the better part of the last two days reviewing the documents, and analyzing the drafting history, and the economic principles, I cannot and do not agree with the PSC's interpretation. After you have had the opportunity to review this note, and its attachments, we can discuss the issue further.

Rick