# Exhibit 26



**Mark Holstein**
Managing Attorney
BP Legal – Litigation

BP America Inc.
P.O.Box 3092
Houston, Texas 77253-3092

501 WestLake Park Blvd.
Houston, Texas 77079-2607
Mail Code 17.130
Direct: 281-366-8895
Fax:    281-366-3491
Mark.Holstein@bp.com

**PRIVILEGED & CONFIDENTIAL**
**CONFIDENTIAL SETTLEMENT COMMUNICATION**

September 28, 2012

**Via Electronic Mail**

Patrick Juneau
Claims Administrator
Deepwater Horizon Settlement Program
935 Gravier Street
New Orleans, Louisiana  70130

      Re:  *Issues Raised By Class Counsel or Settlement Program*

Dear Mr. Juneau:

      This letter responds to several issues recently raised by Class Counsel or the Settlement Program.  We first provide a short executive summary of BP's positions, followed by a discussion of each issue.

I.    <u>Executive Summary</u>

- BP agrees with Class Counsel that where a vessel damage claimant files a copy of vessel title but not vessel registration, a prescribed sworn written statement (details of content are set forth in BP's September 21 letter) may be filed in lieu of the registration.

- With regard to Michael Juneau's email inquiry of September 25, the BEL causation methodology set forth in the Settlement Agreement governs the determination of causation for BEL claims.  If proper application of the methodology with accurate financial data yields a determination that causation is satisfied, BP agrees with Class Counsel that all losses calculated in accordance with Section 3.3 and Exhibits 4C and 19 of the Settlement Agreement are presumed to be attributable to the Oil Spill.

- Where an owner/officer (or part owner) of an entity is also a W-2 employee of the entity and the entity has filed a BEL claim, the owner/officer cannot file an IEL claim for alleged lost wages.  The owner/officer's wages are addressed and recovered in the BEL claim, and permitting a separate IEL claim would result in double recovery.

- Where an owner of an entity is also a W-2 employee of the entity and the entity signed a GCCF release, the owner may not file a separate IEL claim in the Settlement Program for alleged lost wages.  Any alleged lost wages of the owner were addressed in the resolution

Patrick Juneau
Claims Administrator
September 28, 2012
Page 2 of 6

of the GCCF claim.

- With regard to IEL claims, where the Settlement Program is unable independently to verify the claimant's age, the Settlement Program must seek confirmation from the claimant.

- With regard to seafood claims, SWS-1 is not sufficient standing alone to establish allocation of revenue by vessel, landing and catch type.

- BP notes certain clarifications regarding Items 13 and 14 of the Claims Administrator's Report on Policy Changes Affecting Document Requirements filed on September 24.

- BP will submit a letter invoking the Claims Administration Panel with regard to several positions set forth in the September 25 Announcement of Policy Decisions Regarding Claims Administration.

II.   Discussion of Issues

   A.   Item 11 in September 24 Report

Item 11 of the Claims Administrator's Report on Policy Changes Affecting Document Requirements filed on September 24 provides that claimants making a vessel damage claim who submit a vessel registration but not a vessel title may submit a prescribed sworn written statement in lieu of a copy of the title.  As discussed in our email of September 25, we agree with Class Counsel that the converse of this rule also applies, namely that the prescribed sworn written statement may be used where a vessel damage claimant has submitted a copy of vessel title but not vessel registration.  Please see our memorandum of September 21 for the required contents of the sworn written statement.

   B.   Response to Causation Question Posed by Michael Juneau on September 25

On September 25, Michael Juneau posed the following question to the Parties and requested a response by September 28:  "As to BEL claims, once a claimant's financial records satisfy the causation standards set out in Exhibit 4B, does the Settlement Agreement mandate and/or allow the Claims Administrator to separate out losses attributable to the oil spill vs. those that are not?  Stated another way, once a claimant passes the causation threshold, is the claimant entitled to recovery of *all* losses as per the formula set out in Exhibit 4C, or is some consideration to be given so as to exclude those losses clearly unrelated to the spill?"

BP responded as follows.  If a claimant has submitted the required documentation under the Business Economic Loss ("BEL") Documentation Requirements (Ex. 4A), and those documents and any additional detailed information the Settlement Facility has determined is necessary to verify the accuracy of the financial data submitted by the claimant establish that the claim satisfies the requirements of the BEL Causation Framework (Ex. 4B), then Claimant Compensation should be calculated pursuant to the provisions of the BEL Compensation

Patrick Juneau
Claims Administrator
September 28, 2012
Page 3 of 6

Framework (Ex. 4C). If the accurate financial data establish that the claimant satisfies the BEL causation requirement, then all losses calculated in accord with Exhibit 4C are presumed to be attributable to the Oil Spill.[1]

Nothing in the BEL Causation Framework (Ex. 4B) or Compensation Framework (Ex. 4C) provides for an offset where the claimant firm's revenue decline (and recovery, if applicable) satisfies the causation test but extraneous non-financial data indicate that the decline was attributable to a factor wholly unrelated to the Oil Spill. Such "false positives" are an inevitable concomitant of an objective quantitative, data-based test. However, they should be relatively rare.

It is important to emphasize that the Settlement Program must still scrutinize carefully financial information submitted by claimants for anomalous results that may be due to data entry errors or recording of revenues or expenses in the wrong period. Where unusual or surprising results of this sort are noted, the Settlement Program must review the data and additional supporting documents it may deem necessary to determine whether the data are accurate. The documentation requirements of Exhibit 4A, including but not limited to federal income tax returns, certain local hospitality and sales tax documents, and monthly and annual financial statements (see items 3-5) all are intended to facilitate such review for accuracy.

C. Prohibition on IEL Claims By Owner/Officer of an Entity That Has Filed BEL Claim

Where the owner/officer (or part owner) of an entity that has filed a business economic loss (BEL) claim is also a W-2 employee of the entity, that individual <u>cannot</u> also pursue a claim for individual economic loss (IEL) due to reduced wages that the claimant and/or other owners decided to implement in the wake of the Spill. Permitting the claimant to do so would result in double recovery.

This would result in double recovery because, in calculating compensation for a BEL claim, owner compensation is <u>excluded</u> from the variable profit calculation that is used to determine the difference in the business's variable profit between the Benchmark Period and the Compensation Period. *See* Ex. 4C, p. 2 (definition of Variable Profit); Ex. 4D. *See also* Brown-Greer Spreadsheet response to item 67 (reflecting the Parties' consensus that the Settlement Program must segregate owner/officer compensation from other employee compensation in processing BEL claims). Thus, any reduction in the owner's salary is *not* reflected as a reduction in expense by the BEL claimant and does *not* reduce the decline in variable profit between the Benchmark Period and the Compensation Period and calculated Step 1 compensation amount received by the BEL claimant (which then is affected by the growth factor and multiplied by RTP). To the extent the individual owner suffered a loss in compensation, that amount would be included in the award calculated and awarded under the BEL framework. Accordingly, the

---

[1] Moratoria Losses are excluded from recovery under the Settlement, however. *See* Settlement Agreement § 3.3 & Ex. 19.

Patrick Juneau
Claims Administrator
September 28, 2012
Page 4 of 6

owner/employee must look to the business for the claimant's appropriate share of the BEL award.

      D.    <u>Prohibition on IEL Claim By Owner of Business That Executed A GCCF Release</u>

Where the owner of an entity that has signed a GCCF release is also a W-2 employee of the Entity, that individual <u>cannot</u> pursue a claim for individual economic loss (IEL) due to reduced wages that the claimant and/or other owners decided to implement in the wake of the Spill.  Permitting the claimant to do so would result in double recovery.  It is our understanding that the GCCF similarly took the view that, where an owner submitted a business claim, the owner could not then also submit a separate salary claim and recover twice.

Paragraph 2 of the GCCF Release provides comprehensively that the release is on behalf not only of a business claimant but also the "Claimant's partners, limited partners, members, joint venturers, shareholders . . . ."  Thus, any claim by the owner for reduced salary must be asserted against the business.  This is consistent with the instruction on the release that a Business Claimant where "the business is a sole proprietorship, and you are the owner and you are married, or if the business is jointly owned by you and your spouse, both you and your spouse must sign the Release."  That language, again, makes clear that a release by a business releases its owner's claims related to the business.

      E.    <u>Confirmation of Claimant Age for IEL/IPV/IFV Claims</u>

The Claims Administrator's Report on Policy Changes Affecting Document Requirements filed on September 24 omitted the following statement that appeared in the original draft circulated by Lynn Greer:  "If the Claims Administrator is not able to confirm the claimant's age, only then will we ask the claimant to verify his/her age."  BP assumes this was an oversight and that the claimant will be required to confirm age where the Claims Administrator is unable to do so.  Kindly confirm.

      F.    <u>Item 6 in September 24 Report</u>

Item 6 of the Claims Administrator's Report on Policy Changes Affecting Document Requirements filed on September 24 may be interpreted to leave the impression that the SWS-1 standing alone is sufficient to establish allocation of revenue by vessel, landing and catch type. BP has not agreed to this interpretation, nor is BP aware that the Seafood Neutral has been consulted regarding such an interpretation.  BP noted its objection to such an interpretation in the Excel document attached to an email sent to Mr. Juneau on August 21, 2012 at 11:58 p.m.  This email responded to Mr. Juneau's email dated August 16, 2012, which attached a Settlement Program memorandum regarding Incomplete Claims and Possible Workarounds.  Each Plan in the Seafood Compensation Program sets forth the documentation requirements to establish a claimant's benchmark revenue--trip tickets or tax documents with "sufficient documentation" to identify what portion of their reported earnings should be allocated by vessel, landing and catch type.  (*See, e.g.*, Ex. 10, pg 10, Section B.1(a) and (b)(i)-(iii)).  BP agrees it may be helpful to use

Patrick Juneau
Claims Administrator
September 28, 2012
Page 5 of 6

an SWS in conjunction with tax document and additional supporting documents, but not as the sole source for allocating revenue.

      G.      <u>Items 13 and 14 in September 24 Report</u>

Item 13 of the Claims Administrator's Report on Policy Changes Affecting Document Requirements filed on September 24 refers to "2010 Property Tax Assessment to Prove Value of a Parcel." Claimants are not required to "prove value of a parcel" for the Coastal Real Property framework, or for the wetlands framework. Thus, the description of the document "2010 Property Tax Assessment To Prove Value of Parcel" may be misunderstood. The purpose of the tax assessment is to provide information regarding parcel ownership and parcel boundaries. Also, as previously explained, the Mapping Software does not contain the 2010 Property Tax Assessment, but rather only the tax roll data. There is no pdf of the 2010 tax assessment in the Mapping Software. However, BP has provided the Settlement Program with a list of the web sites from which tax assessments may be obtained directly by the Settlement Program in the event the tax assessment is missing from the claimant's submission. Per Appendix F, a 2010 tax assessment is required for all coastal claimants. It is our understanding that if a claimant has not supplied the 2010 tax assessment, the Claims Administrator will try to locate it in the first instance using the online database links, and only contact the claimant for a copy if the assessment is not located online.

We do recommend that the Settlement Program consider a similar type of policy change for wetlands real property claims. There is likewise in Appendix F of Exhibit 12 this same requirement of all wetland claimants that they provide the 2010 tax assessment.

      H.      <u>Invocation of Claims Administration Panel</u>

BP will be submitting today a letter invoking the Claims Administration Panel with regard to several issues raised in the September 25 Announcement of Policy Decisions Regarding Claims Administration.

***

If you have any questions, we are available to discuss them. Thank you for your attention to this matter.

                                            Sincerely,

                                            <u>/s/ Mark Holstein</u>

                                            Mark Holstein

cc:      Hon. Sally Shushan
           Steven Herman
           James Roy

Patrick Juneau
Claims Administrator
September 28, 2012
Page 6 of 6

  Joe Rice
  Christine Reitano
  Orran Brown
  Lynn Greer