# Exhibit 31

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * * * * * * * | MDL NO. 2179 <br><br> SECTION J <br><br><br> HONORABLE CARL J. BARBIER <br><br> MAGISTRATE JUDGE SHUSHAN |

## DECLARATION OF HOLLY SHARP

I, Holly Sharp, submit this Declaration in support of BP Defendants' position and argument regarding the Claims Administrator's interpretation of the Business Economic Loss Framework in the *Deepwater Horizon* Economic and Property Damages Settlement Agreement As Amended on May 2, 2012 (the "Settlement Agreement"). I am over the age of 18, and the opinions, statements, and conclusions expressed in this Declaration are my own.

### INTRODUCTION

1.     I submitted a Declaration on August 13, 2012 and a supplemental Declaration on October 21, 2012 ("August and October Declarations") in support of final approval of the Settlement Agreement. (Record Documents 7114-18 and 7731-9 respectively.) The Claims Administrator announced a Policy Decision on January 15, 2013 ("Claims Administrator's Policy Decision") regarding Business Economic Loss ("BEL") claims. BP submitted an In Camera Motion on February 18, 2013 requesting the Court to reverse and set aside the Claims Administrator's Policy Decision. A ruling by the U. S. District Court, E.D. La. on March 5,

2013 affirmed the Claims Administrator's Policy Decision and found that "BP's interpretation injects a subjective notion of alternative causation and a degree of complexity that are contrary to the Settlement's terms." This Declaration is based upon my own personal experience, expertise, and analysis, except where otherwise indicated; and if called to testify I could testify to the opinions and analysis I set forth in this declaration. I am a Certified Public Accountant (CPA), Certified Fraud Examiner (CFE), and Certified in Financial Forensics (CFF). I am a Shareholder and Director in LaPorte CPAs and Business Advisors, a CPA firm based in Metairie, Louisiana, where I have practiced for more than 30 years. I have a B.S. in Business Management from Tulane University and a M.S. in Tax Accounting from the University of New Orleans. I am an Adjunct Professor of Taxation at the A.B. Freeman School of Business at Tulane University, where I have taught since 1999. A copy of my curriculum vitae detailing my education and experience is attached as Exhibit A to this Declaration.

2. In my August and October Declarations, I listed the materials I reviewed in order to reach my opinions and which support my analysis and conclusions. A list of the additional materials that I reviewed in order to reach my opinions is attached as Exhibit B to this Declaration.

## OPINIONS, CONCLUSIONS AND ANALYSIS

1. I disagree with the Claims Administrator's Policy Decision. The Claims Administrator's Policy Decision regarding the data to be used for comparison of revenues before the spill and after the spill does not ensure that the amounts are revenues earned during the relevant time period. Nor does it ensure that variable expenses correspond with revenues earned over the same time period. As a result, it is inconsistent with the definition of Variable Profit in the BEL framework. It also fails to assure that a comparable period is used. As a result, the Claims Administrator's Policy Decision does not accurately calculate Variable Profit as defined in the BEL framework and has created a systematic problem plaguing the BEL claims process and undermining the intent, purpose and effectiveness of the Settlement.

2. Accountants are trained to understand the definitions of revenues, expenses, and profits. Revenue is different from the receipt of cash; expenses are different from cash disbursements.[1] The Claims Administrator's policy decision erroneously treats revenue as if it means cash receipts, and expenses as if it means cash disbursements. Applying the BEL framework with no consideration of whether the months contain comparable activity and whether the expenses correspond to the revenues in the applicable months, as proposed by the Claims Administrator's policy decision, is erroneous. This is not an accepted method for calculating lost profits and is contrary to my understanding of the Settlement Agreement when submitting my previous Declarations to the Court as well as all of my experience in lost profits analysis.

---

[1] See Declaration of Roman L. Weil, dated February 18, 2013, p. 3-5, attached as Exhibit 12 to BP's In Camera Motion to Reverse and Set Aside the Claims Administrator's January 15, 2013 Policy Decision Concerning The Business Economic Loss Framework.

3.      The definition of Variable Profit in Exhibit 4C-I to the Settlement Agreement requires corresponding variable expenses to be subtracted from monthly revenue over the same time period. Variable expenses correspond to revenue that is **earned** over the same time period, not revenues that are **collected** over the same time period. The Claims Administrator's Policy Decision states that the Settlement Program will "consider both revenues and expenses in the periods in which those revenues and expenses were recorded at the time."[2] That may serve as a measure of cash flow during the relevant period, but, in many cases, particularly for businesses that do not incur expenses, generate revenue from those expenses and get paid for resulting goods or services within a short time period, it does not equate to the required measurement of Variable Profit. Using cash basis accounting for selected months without appropriate consideration of the earnings activity and matching of revenues and corresponding variable expenses could yield obvious mistakes and often will not produce variable profit, or determine whether there have been lost profits. Consider a simple example. A company purchases raw materials for $200 in April, $200 in May and $200 in June, and pays laborers $100 to combine those materials, package and ship the finished products in each of those same months to fulfill customer orders. Payment for the finished products is then received in July for $1,200. A monthly financial statement that simply records cash payments as expenses and cash receipts as revenue would reflect a loss of $300 in April ($200 of material purchases plus $100 of labor costs), a loss of $300 in May, a loss of $300 in June, and a gain of $1,200 in July, as illustrated in the following table:

---

[2] Memorandum to Class Counsel and BP from Patrick A. Juneau, Claims Administrator dated January 15, 2013.

| Month                 | April      | May        | June       | July        | Total      |
|-----------------------|------------|------------|------------|-------------|------------|
| Revenues              | $0         | $0         | $0         | $ 1,200     | $1,200     |
| Costs                 | $ (300)    | $ (300)    | $ (300)    | $0          | ($900)     |
| Variable Profit (Loss)| $ (300)    | $ (300)    | $ (300)    | $ 1,200     | $300       |

Selecting the months of April, May and June as the Compensation Period and ignoring the $1,200 revenues collected in July that directly result from the $900 of costs is an obvious mistake which, uncorrected, would distort any analysis of lost profits.

4. Also, consider an accounting firm assisting BEL claimants and receiving fees for their services, but these fees are not collected until the BEL claimant receives compensation.[3] The accountants pay salaries and other costs related to the claim calculation, and actually do the contracted work, prior to submission, but the cash payment is not collected until a later date. These accountants certainly understand that the fees, when collected, are revenues that were earned in the month services were provided.

5. It is not unusual for businesses to incur costs long before revenues are collected. Real estate agencies spend money to market a property, but do not receive the associated revenue (their commission) until the property is sold. Farmers typically pay for costs related to their crops many months before the crops are sold. Construction companies typically pay for costs related to jobs before they receive the revenue for the jobs. Cash-basis monthly financial statements usually do not accurately reflect revenues and corresponding variable expenses and thus, are misleading if used in the BEL framework for the purpose of determining BEL compensation, when costs are paid in one or more months, the good or service is provided later, and cash is received for the good or service at a time different than when it was provided. To

---

[3] Section 4.4.13.8 of the Settlement Agreement allows business claimants reimbursement of accounting fees related to the claim, subject to limits.

apply the BEL framework using cash receipts and cash expenditures reported on cash basis monthly statements is erroneous because the analysis will be based on incorrect data and, as such, will yield illogical results.

6. The examples above are not anecdotes or a theoretical issue, but a systematic problem plaguing the BEL claims process and undermining the intent, purpose and effectiveness of the Settlement. As explained in the Declarations of Charles E. Finch, David A. Hall and Xavier Oustalniol, the Claims Administrator's determination of how to calculate variable profit is providing awards to claimants without actual economic harm, and is producing results that are inconsistent among similar class members based solely on incorrect application of accounting concepts of revenue and expenses and the failure to take into account important timing differences. (These Declarations are Exhibits 3 to 8 attached to BP's In Camera Motion to Reverse and Set Aside the Claims Administrator's January 15, 2013 Policy Decision Concerning the Business Economic Loss Framework.) I similarly agree with the Declaration of Professor Richard Dietrich[4] that various of the Settlement Program offers to BEL claimants in the farming, construction and professional services industries are "absurd"[5] and appear to ignore the concepts and terms prescribed by the BEL Framework, and I would hasten to point out the absurd results are not limited to these industries. As presented in the Declaration of Dr. Hal Sider, these distorted awards are more than just "exceptions", but instead are systematic and pervasive. By mandating the use of inaccurate data that reflects only what was recorded in the claimant's books at the time in the BEL calculations, the Claims Administrator's methodology will continue to

---

[4] Declaration of Professor J. Richard Dietrich dated February 18, 2013, attached as Exhibit 2 to BP's In Camera Motion to Reverse and Set Aside the Claims Administrator's January 15, 2013 Policy Decision Concerning the Business Economic Loss Framework.

[5] *Ibid.*, p. 10.

produce illogical results. Indeed, this is what Dr. Sider finds. (Declaration of Hal Sider dated February 18, 2013, attached as Exhibit 2, to BP's In Camera Motion to Reverse and Set Aside the Claims Administrator's January 15, 2013 Policy Decision Concerning the Business Economic Loss Framework.)

7. Importantly, the BEL document requirements specifically allow for the Claims Administrator to request source documents for profit and loss statements and additional information or documentation necessary to properly evaluate a claim.[6] Operating results provided in monthly profit and loss statements combined with the Federal tax returns should generally allow the accounting professionals reviewing claims to identify when revenues were earned and when corresponding variable expenses were incurred to generate those revenues, and when selected periods are or are not comparable between the Benchmark Year(s) and 2010. If necessary, the Claims Administrator can then request additional information or documentation to ensure that claimants are being fairly compensated under the agreement using complete and accurate information. (See Exhibit 4A to the Settlement Agreement, Paragraph 4.) This type of accounting analysis is exactly what an accountant is supposed to do in any damage calculation to ensure that the calculated results are reasonably accurate.

8. Proper implementation of the BEL framework, which is clearly explained in BP's Motion dated February 18, 2013, and many supporting Declarations, including the Declaration of Hal Sider,[7] and the Declaration of J. Lester Alexander, III,[8] requires the Claims Administrator to use accurate financial data and information to calculate BEL claims. I agree with Professor

---

[6] Exhibit 4A, Paragraph 4-4 to the Settlement Agreement.

[7] Declaration of Hal Sider, dated February 18, 2013, p. 23-30, Exhibit 11 to BP's In Camera Motion.

[8] Declaration of J. Lester Alexander, III, dated February 28, 2013, Exhibit 1 to BP's In Camera Motion.

Dietrich that "the Settlement Program accountants should be readily able to implement the required adjustments"[9] and Roman L. Weil that "professional accountants retained by the Claims Administrator can do the computations."[10] Accountants are trained to detect abnormalities and distortions in monthly financial statements and investigate the cause. Revenue that is not matched to corresponding expenses is typical of the types of errors practicing accountants routinely identify and correct when analyzing cash basis monthly financial statements.

9. In summary, it is not consistent with lost profits analysis or the BEL framework for the Settlement Program to calculate lost profits without considering if the months in the Compensation Period are comparable to the Benchmark Period. It is similarly not consistent with lost profits analysis or the BEL framework for the Settlement Program to fail to match revenues to corresponding expenses incurred to generate that revenue. And lost profits analysis and the BEL framework also requires a methodology to ensure that BEL Compensation is based upon the comparison of comparable months in the Benchmark and Compensation Periods. A method that fails to do these things will not accurately measure variable profit as defined in the BEL framework. The Claims Administrator should implement the BEL framework as outlined by BP's interpretation of the Agreement. To do otherwise, will produce illogical awards to claimants who suffered no actual economic loss.

---

[9] Declaration of Professor J. Richard Dietrich, dated February 18, 2013, p 13-14, Exhibit 2 to BP's In Camera Motion.

[10] Declaration of Roman L. Weil, dated February 18, 2013, p. 9-11, Exhibit 12 to BP's In Camera Motion.

I declare under penalty of perjury that the foregoing is a true and correct statement of my opinions and analysis.

Executed this 15th day of March, 2013 in Metairie, Louisiana.

_____
Holly Sharp




111 Veterans Memorial Blvd.
Heritage Plaza Suite 600
Metairie, Louisiana 70005
504.835.5522 | fax 504.835.5535
email | hsharp@laporte.com

# CURRICULUM VITAE

## HOLLY SHARP, CPA, CFE, CFF

| | |
|---|---|
| **POSITION** | Shareholder and Director, LaPorte CPAs and Business Advisors |
| | Adjunct Professor of Taxation, A. B. Freeman School of Business, Tulane University |
| **EDUCATION** | M.S. Tax Accounting, University of New Orleans (1981) |
| | B.S. Business Management, Tulane University (1979) |
| **PROFESSIONAL AFFILIATIONS** | American Institute of Certified Public Accountants |
| |    *Member, Economic Damages Task Force* |
| |    *Member, Litigation and Dispute Resolution Services Committee 1996 - 1999* |
| |    *Chairman, Economic Damages Task Force 1998 - 1999* |
| | Society of Louisiana Certified Public Accountants |
| | New Orleans Estate Planning Council, *Past President* |
| | New Orleans Association of Certified Fraud Examiners, *Past Officer* |
| | Women's Professional Council, *Past President* |
| **CIVIC AFFILIATIONS** | Tulane Association of Business Alumni, *Past President* |
| | Tulane University, *Planned Giving Committee* |
| | Tulane Tax Institute, *Planning Committee* |
| | Preservation Resource Center, *President 2009 - 2010* |
| | Contemporary Arts Center, *Board Member* |
| | New Orleans Science and Math Charter School, *Board Member* |
| | The Cultural Landscape Foundation, *Board Member* |
| | St. Charles Avenue Presbyterian Church, *Elder* |
| **AWARDS** | New Orleans CityBusiness |
| |    *2006 Women of the Year* |
| | A. B. Freeman School of Business, Tulane University |
| |    *2001 Outstanding Accounting Alumnae* |
| | Louise S. McGehee School |
| |    *1994 Outstanding Alumna* |

Holly Sharp, CPA, CFE, CFF
Curriculum Vitae
*Page 2*

| | |
|---|---|
| **RANGE OF EXPERIENCE** | Experience includes extensive consulting work in the areas of taxation for individuals, corporations and other entities, as well as financial planning, estate planning, and business succession planning. Litigation experience includes testimony and forensic accounting services in accounting, financial, economic and business issues. Ms. Sharp is a Certified Public Accountant, Certified Fraud Examiner and Certified in Financial Forensics. |
| **EMPLOYMENT HISTORY** | LaPorte CPAs and Business Advisors............................ 1981- present<br>Tulane University: ............................................................ 1999 - present |
| **FEE SCHEDULE** | Holly Sharp, CPA, CFE, CFF............................................$275 per hour<br>Staff Accountants and Managers........................................$100 to $195 per hour |

**PUBLICATIONS PAST 10 YEARS**

"Personal Injury," *Litigation Support Report Writing,*
John Wiley & Sons, Inc., 2003

*Measuring Damages Involving Individuals: A CPA's Litigation Service Guide with Case Studies,* AICPA, 2004

*Introduction to Litigation Services,* Bisk Education, Inc., 2005.

*Lost Profit Damage Calculation,* Bisk Education, Inc., 2005.

**SELECTED SPEECHES**

" Forensic Accounting: Fraudulent Reporting, Concealed Assets, Computer Theft," *Illinois, Florida, Texas, Michigan and Washington Societies of CPA's,*
various dates

" Business Interruption Losses and Lost Profits Damage Calculations"
*AICPA Conference on Fraud and Litigation Services,* September 28, 2005

" Calculation of Damages in Personal Injury, Wrongful Death and Wrongful Termination cases"
*AICPA National Forensic Accounting Conference,* September 25, 2009

" Personal Injury/ Wrongful Death Damages" *Mississippi Business Valuation & Litigation Support Services Conference,* November 6, 2009

" Taxation for the Non-Taxation Lawyer" *Louisiana State Bar Association Continuing Legal Education,*
October 22, 2010

"Advanced Topics in Personal Injury Calculations" *AICPA Forensic & Valuation Services Conference,*
November 12, 2012.

Holly Sharp, CPA, CFE, CFF
Curriculum Vitae
*Page 3*

**EXPERT WITNESS TESTIMONY**
**PAST 4 YEARS**

| | |
|---|---|
| Forstall-Geotype Inc. d/b/a Forstall Art Supplies v. Lafayette Insurance Co. | Civil District Court for the Parish of Orleans (2008) *deposition testimony* |
| Tatianna Ostrowiecki, et al. v. Aggressor Fleet, Ltd., et al. | U.S.D.C., Eastern District of Louisiana, Case No. 07-6598 (2008) *deposition testimony* |
| Willows Housing Restoration Corporation v. Crum & Forster Specialty Insurance Co. | U.S.D.C., Eastern District of Louisiana, Case No. 06-7602 (2008) *deposition testimony* |
| Jason Michael Young, et al. v. Raytheon Aircraft Company, et al. | State of La., Parish of West Carroll, No. 25,867 "A" (2008) *trial testimony* |
| Adolph Charles Suhren, III v. Cheryl B. Gibert et al. | Civil District Court for the Parish of Orleans No. 04-16113 (2008) *deposition testimony* |
| Quintessa Huey and Caryn L. Fong, et al. v. Super Fresh/ Sav-A-Center, Inc. et al. | U.S.D.C., Eastern District of Louisiana, Case No. 07-1169 (2008) *deposition testimony* |
| Rutter v. Isuzu et al. | U.S.D.C., Eastern District of Louisiana, Case No. 05-6893 (2008) *deposition testimony* |
| Risk Management Services, LLC et al v. Robert W. Moss, III | 24th JDC for the Parish of Jefferson, No. 614-262 (2008) *deposition and trial testimony* |
| R. W. Day & Associates v. The Architectural Studio | AAA No. 69 110 Y 04366 07 (2008) *arbitration testimony* |
| Phyllis Kay Doerr, et al. v. Mobil Oil Corp. and Chalmette Refining, LLC | 34th JDC for the Parish of St. Bernard, No. 83-912 (2009) *trial testimony* |
| Textron Innovations, Inc. and David Brown Union Pumps Co. v. Centrifugal Technology, Inc. et al. | U.S.D.C., Western District of Louisiana, Case No.5:05CV287 (2009) *deposition and trial testimony* |
| Quest Diagnostics, Inc. v. Factory Mutual Insurance Company | USDC, Eastern District of Louisiana, Case No. 07-3877 (2009) *deposition testimony* |
| Cleveland Rogers v. Tyrone J. Elphage and Transport Service Company | 40th JDC, Parish of St. John the Baptist No. 52312 (2009) *trial testimony* |
| Active Solutions, L.L.C. and Southern Electronics Supply, Inc. v. Dell, Inc. et al. | Civil District Court for the Parish of Orleans, No. 2007-3665 (2009) *deposition and trial testimony* |
| Dominion Exploration & Production, Inc. and Pioneer Natural Resources, USA. Inc. v. Ameron International Corporation, et al. | Civil District Court for the Parish of Orleans, No. 2003-6945 (2009) *deposition testimony* |
| Tim Tatum and Richard Hillard, Jr. v. United Parcel Services, Inc., et al. | 24th Judicial District Court for the Parish of Jefferson, No. 653-300 (2009) *deposition and trial testimony* |

**EXPERT WITNESS TESTIMONY** – *Continued*

| | |
|---|---|
| Centofani of Oakwood, Inc. v. Hartford Casualty Insurance Company and J.D. Ellington Insurance, Inc. | 24th Judicial District Court for the Parish of Jefferson, No. 635-197 (2009) *deposition and trial testimony* |
| The Conerly Corporation, et al. v. Regions et al. | USDC, Eastern District of Louisiana, Case No. 08-813 (2010) *deposition testimony* |
| Anna Boone v. Eyemasters | USDC, Middle District of Louisiana, Case No. 09-1001 (2010) *deposition testimony* |
| Downtown Development Group et al. v. Landmark American Insurance, et al. | USDC, Eastern District of Louisiana, Case No. 09-6614 (2010) *deposition testimony* |
| Preventive Maintenance Services, Inc. v. Walters Power International, L.L.C. | Arbitration Proceedings (2011) *Arbitration testimony* |
| Centofani of Oakwood, Inc. v. Hartford Casualty Insurance Company and J.D. Ellington Insurance, Inc. | 24th Judicial District Court for the Parish of Jefferson, No. 635-197 (2011) *deposition and trial testimony* |
| Noble Energy, Inc. v. The Prospective Investment And Trading Company, Ltd. | USDC, Western District of Louisiana, CA No. 2:09-CV-0078 (2011) *deposition testimony* |
| Stephen Brower, et al. v. Progressive Security Insurance Co., et al | Civil District Court for the Parish of Orleans, No. 09-3593 (2011) *deposition and trial testimony* |
| J. Brock Neuenhaus et al. v. Matthew C. Foster, et al. | 24th Judicial District Court, Parish of Jefferson, No. 658-744 "K" (2011) *deposition and trial testimony* |
| SCB Diversified Municipal Portfolio, et al. v. Crews & Associates, Inc., et al | USDC, Eastern District of La., CA NO. 09-7351 "N" (4) (2011) *deposition testimony* |
| Mack Energy Co. et al. v. ExPert Oil & Gas LLD | Arbitration (2012) (2012) *Arbitration testimony* |
| Noble Energy, Inc. v. The Prospective Investment And Trading Company, Ltd. | USDC, Western District of Louisiana, CA No. 2:09-CV-0078 (2012) *trial testimony* |
| Spyridon C. Contogouris and Stephen Baldwin v. Westpac Resources, LLC, Patrick N. Smith, Kevin M. Costner and Rabobank, N.A. | USDC, Eastern District of Louisiana, CA No. 10-4609 "F" (2012) *deposition and trial testimony* |
| Paul Villemarette, et al. v. William C. Gambel, et al. | 24th Judicial District Court for the Parish of Jefferson, No. 545-870 "D" (2012) *deposition testimony* |

# Exhibit B

## MATERIALS AND INFORMATION REVIEWED AND CONSIDERED

- *Deepwater Horizon* Economic and Property Damages Settlement As Amended On May 2, 2012 (Rec. Doc. 6430-1) and Exhibits 4A-E (Rec. Doc. 6430-2);

- Class Counsel's December 16, 2012 Memorandum to the Claims Administrator;

- Court's December 21, 2012 Order and Reasons Granting Final Approval (Rec. Doc. 8138);

- BP's January 8, 2013 Response To Class Counsel's December 16, 2012 Memorandum;

- BP's January 11, 2013 Further Submission to the Claims Administrator in Response to Class Counsel's December 16, 2012 Memorandum;

- The Claims Administrator's January 15, 2013 policy decision concerning the Business Economic Loss Framework;

- The Claims Administrator's January 16, 2013 Referral of Issue from Panel (Matching Revenue and Expenses);

- BP's *In Camera* Motion To Reverse And Set Aside The Claims Administrator's January 15, 2013 Policy Decision Concerning The Business Economic Loss Framework dated February 18, 2013 and all of its exhibits and Declarations;

- Class Counsel's Opposition To BP's Motion For Reconsideration dated February 18, 2013 and all of its exhibits and Declarations;

- The Court's Review of Issue from Panel (Matching of Revenue and Expenses) dated March 5, 2013 (Rec. Doc. 8812).