# Exhibit 08

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | MDL NO. 2179<br><br>SECTION J<br><br><br>HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

### DECLARATION OF JAMES L. HENLEY, JR.

I, James L. Henley, Jr., do hereby declare as follows:

1. I make this declaration in support of in support of the BP Defendants' interpretation of the Business Economic Loss framework of the Economic and Property Damages Settlement Agreement with respect to the meaning of "revenue" and proper calculation of "Variable Profit." This declaration is based upon my own personal knowledge and experience except where otherwise indicated, and if called to testify I could testify to the matters set forth in this declaration.

2. I am an independent expert retained by counsel for BP Exploration & Production Inc. and BP America Production Company (collectively, "BP").  I did not assist and was not involved in any way in the negotiation, drafting, development, or revision of the Settlement or the compensation frameworks incorporated in the Settlement Agreement.  Nor have I provided any advice or consultation to BP in connection with its defense of the above-captioned lawsuit or any other matter relating to the Deepwater Horizon oil spill ("DWH Spill").

3. I submitted a declaration on August 13, 2012 attached as Exhibit 10 in support of final approval of the Deepwater Horizon Economic and Property Damages Settlement

Agreement, as amended (the "Settlement") ("August Declaration") (Rec. Doc. 7114-11). That declaration set forth my professional qualifications and my additional relevant experience. I also submitted a declaration on October 22, 2012 rebutting various objections to the Settlement ("October Declaration") (Rec. Doc. 7731-3).

    4.    I am a certified public accountant and attorney licensed and in good standing in Mississippi. Additionally, I have obtained the CFF (Certified in Financial Forensics) designation from the American Institute of Certified Public Accounting ("AICPA"). In addition to operating a private practice, I also have served as a United States Chapter 13 Bankruptcy Trustee for the Southern District of Mississippi since March 2000. I also have served as an expert witness in connection with business disputes, including those involving business interruption claims and lost profits. In connection with my private practice, work as a Bankruptcy Trustee, and expert witness, I am familiar with preparation of individual and business tax returns, bankruptcy filings, business records and accounting, and analysis of damages. A copy of my curriculum vitae is attached as Exhibit A.

    5.    I am also a pastor at Fresh Start Christian Church in Jackson, Mississippi, a part of Fresh Start Ministries, Inc. In the wake of Hurricane Katrina, the church established a charitable fund for the benefit of victims of Hurricane Katrina. I served as administrator of the fund. In that capacity, I was responsible for developing eligibility criteria and documentation requirements for applicants for benefits from the fund, and for reviewing applications for benefits.

    6.    In this declaration, I address the Claims Administrator's January 15, 2013 policy decision regarding the implementation of the Business Economic Loss ("BEL") framework, the Court's Order on Review of Issue from Panel (Matching of Revenue and Expenses) dated March

5, 2013, and submissions by BP and Class Counsel regarding the Claims Administrator's policy decisions. As discussed below, the Claims Administrator has adopted a policy, now affirmed by the Court, that fails to accurately measure the monthly revenue and variable profits of BEL claimants. Such an approach is contrary to my understanding of how the BEL framework would work as set forth in my prior declarations, which noted that the BEL framework is consistent with standard lost profits methodologies.

7. In connection with preparing this declaration, I have reviewed and considered the entire record including, but not limited to, the following documents listed in Exhibit B.

8. After review of Class Counsel's submissions, BP's submissions and Judge Barbier's opinion related to the Claim Administrators policy on the BEL's framework on making claimants whole for lost profits I have the opinions set forth below.

9. I have reviewed BP's In Camera Motion to Reverse And Set Aside The Claims Administrator's January 15, 2013 Policy Decision Concerning The Business Economic Loss Framework and the exhibits attached thereto. BP's interpretation of the BEL framework is consistent with standard and accepted lost profit analysis used by accountants and with standard definitions understood by accountants for the terms "revenue," "expenses" and "profit." I have reviewed the expert declarations attached to BP's In Camera Motion, and I agree and endorse the analyses set forth in those declarations. Those expert declarations elaborate on the opinions I offer in this declaration and which set forth additional reasons the Claims Administrator's January 15, 2013 Policy Decision is flawed and contrary to well-established principles of accounting and lost profits analysis.

10. The Claims Administrator's Policy Decision approved by the Court is not consistent with the standard and accepted lost profit analysis upon which the BEL Framework is

based.  *See* Rec. Doc. 7114-11 ¶¶ 6, 26-27.  By focusing on monthly cash receipts and cash payments recorded in financial statements, instead of revenues earned from goods or services provided during the month and the corresponding expenses incurred to generate those revenues, the Claims Administrator's Policy Decision substitutes a net cash flow analysis to determine lost profits.  That is not a standard methodology.  Indeed, I am unaware of such a methodology ever being used in lost profits analysis.  The Claims Administrator's Policy Decision will result in systematic payment of artificial losses to BEL claimants.

11.   The distinction between cash flow and profit and loss is fundamental in accounting.  I learned in my first accounting class in college that financial statements include not only a balance sheet and a profit and loss statement but also a cash flow statement.  They are different things.  Cash flows are important for understanding a company's ability to pay for things in the short term.  By measuring cash inflows and payments, companies monitor their ability to maintain operations by paying vendors and employees.  Profits, in contrast, measure the net inflows and outflows of not just cash, but all assets and liabilities.  Profits thus measure economic performance; cash flow does not.  From an economic standpoint, it is irrelevant whether a transaction affects cash immediately or in the future.  Profits capture changes in all assets and liabilities (not just cash), and therefore are the proper way to measure economic performance and compare performance between comparable periods.

12.   The Claims Administrator's approach simply ignores this distinction as well as the plain reading of Settlement Agreement Exhibit 4A ¶4, which requires the submission of "monthly profit and loss statements (and/or other financial records) as they were prepared in the normal course of business."  The Settlement Agreement's language on profit and loss statements

focuses on differences in profit during defined periods (consistent with standard damage analysis), not mere differences in cash flow, which often simply reflect timing differences.

13.  The information required to determine monthly profit and loss is readily available to claimants and, if not contained in the financial statements submitted may be sought by the Claims Administrator pursuant to Exhibit 4A ¶4 ("Claims Administrator . . . may request source documents"). My first accounting job in college was at an engineering construction firm. My job was to develop their job cost accounting system. Later on at IBM one of the primary products I worked with was CMAS (Construction Management Accounting Software). What I learned early on and confirmed from ongoing experience is that the survival of any construction or manufacturing company is based on its ability to determine profitability by job or project. As a result, alternative documents measuring revenues and corresponding expenses to determine profitability are maintained in the ordinary course of business. This ensures that regardless of the period or periods in which expenditures and cash receipts take place those items which correspond to that project are matched against each other for determination of profit. Measurements of this kind directly affect how future projects are evaluated and how those jobs should be bid. This practice is basic to construction, manufacturing, distribution and any operating business regardless of whether the general ledger is maintained on an accrual or cash basis - the revenues and corresponding expenses of a specific job are matched to determine if, where and how the company is making money.. Similar records are maintained in both farming and legal business operations.

14.  The only way to determine actual lost profit is to identify when revenue is earned and match that revenue to corresponding expense items as I believed the BEL Framework required when I submitted my initial declarations. It never occurred to me that the BEL

Framework would be misinterpreted to permit or require comparisons of net cash flow involving unrelated transactions rather than profit; such an approach is contrary to well-established norms in accounting and in calculating lost profits. I am certain that the Settlement Program accountants from PricewaterhouseCoopers and Postlethwaite & Netterville are capable of identifying for BEL claimants when revenue was earned and of matching revenue with corresponding expenses as the BEL framework requires because accountants are trained to do this and such analysis is standard for calculating lost profits.

I declare under penalty of perjury that the foregoing is a true and correct statement of my opinions and analysis.

Executed this 13th day of MARCH, 2013 in Jackson, Mississippi.

_____
James L. Henley, Jr.

# EXHIBIT A

## James L. Henley, Jr., J.D., CPA, CFF
(Certified Public Accountant – Certified in Financial Forensics)
P.O. Box 31464
Jackson, Mississippi 39286-1464

**EDUCATION:**

Doctor of Jurisprudence with Special Distinction, Mississippi College School of Law
May 14, 1994
B.B.A. Accounting, Millsaps College, May 1983
C.P.A. License 3098 - April 26, 1985
Mississippi State Bar License 9909 – September 2004

**LAW EMPLOYMENT HISTORY:**

**The Law Office of James L Henley, Jr.**
P.O. Box 31464
Jackson, Mississippi 39286-1464
December 20, 1995 - Present

**Butler, Snow, O'Mara, Stevens & Cannada, PLLC**
Deposit Guaranty Plaza
Jackson, Mississippi 39201
August 16, 1994 - December 19, 1995

**FINANCIAL EMPLOYMENT HISTORY:**

Currently: **Chapter 13 Trustee, U.S. District for the Southern District of Mississippi**
Appointment Effective: March 1, 2000
Administrator of Chapter 13 Bankruptcy filings in the United States Bankruptcy Court for the Southern District of Mississippi.
Analysis of financial condition of Chapter 13 Plaintiffs.
March 2000 - Present

Currently: **Henley & Company, CPA's**
P.O. Box 31464, Jackson, MS 39286-1464
Position: Partner
Work Experience: Tax and business consultation, review, compilations and analysis of various business areas of clients. Clients include HMO's medical clinics, physicians, pharmacists, podiatrist, dentists, attorneys, and musicians.
December 1991 - Present

**Department of Justice — Office of United States Trustee**
100 W. Capitol Street, Suite 706, Jackson, MS 39269
Position: Bankruptcy Analyst

Work Experience: Examination/analysis of financial information, disclosure statements and plans in Chapter 11 cases. Supervision and monitoring of performance of Chapter 7 and 13 trustees via report reviews and on site reviews.
November 1989 – May 1992

**Performance Evaluation Expenditure Review Committee**
**Joint Legislative Investigative Committee**
P.O. Box 1204, Jackson, MS 39205
Position: Senior Analyst
Work Experience: Investigation, analysis and write-up of various governmental entities who received funding from State of Mississippi. Supervision of staff on projects. Revenue and cost projections of proposed legislation.
May 1988 – October 1989

**Arthur Anderson & Co., CPA's**
201 St. Charles Ave, Suite 4500, New Orleans, LA 70170
Position: Semi-Senior, Audit Division
Work Experience: Audits, reviews and compilations of various industries. Primary areas were (1) Financial Institution audits and, (2) Southern Baptist Hospital audit and review of compliance with construction bond requirements as they related to cost reimbursements.
May 1983 – August 1985

## OTHER EMPLOYMENT HISTORY:

**IBM**
Grand Rapids, Michigan
Position: Systems Analyst
Work Experience: Analysis and review of various industry financial accounting systems. Development and implementation of software solutions to assist management in the evaluation of economic results related to financial operations. Development and presentation of financial solutions. Development and implementation of system conversions.
August 1985 – August 1987

**Jackson State University** — Adjunct Instructor of Entrepreneurship, Business Law and Collective Bargaining.

**Tougaloo College** — Adjunct Instructor of Accounting Principles, Advanced Accounting and Auditing.

**Jackson Public Schools** — Adult Learning Instructor of Introduction to Computers and Small Business Taxes.

## ORGANIZATIONS:

American Bar Association
Mississippi Bar Association
Magnolia Bar Association (Past President)
Magnolia Bar Foundation (Past President)

Mississippi Society of Certified Public Accountants
American Institute of Certified Public Accountants
Omega Psi Phi Fraternity
Board of Directors of Metropolitan Jackson YMCA, Inc. (Former Treasurer & Executive Board Member)
Board of Directors of Bethany Christian Services, Inc. (Former)
Leadership Jackson - Class of 1996
Fresh Start Ministries, Inc. - President

## Exhibit B
## MATERIALS AND INFORMATION REVIEWED AND CONSIDERED

- *Deepwater Horizon* Economic and Property Damages Settlement As Amended On May 2, 2012 (Rec. Doc. 6430-1) and Exhibits 4A-E (Rec. Doc. 6430-2)

- Class Counsel's December 16, 2012 Memorandum to the Claims Administrator

- Court's December 21, 2012 Order and Reasons Granting Final Approval (Rec. Doc. 8138)

- BP's January 8, 2013 Response To Class Counsel's December 16, 2012 Memorandum

- BP's January 11, 2013 Further Submission to the Claims Administrator in Response to Class Counsel's December 16, 2012 Memorandum

- The Claims Administrator's January 15, 2013 policy decision concerning the Business Economic Loss Framework

- The Claims Administrator's January 16, 2013 Referral of Issue from Panel (Matching Revenue and Expenses)

- BP's *In Camera* Motion To Reverse And Set Aside The Claims Administrator's January 15, 2013 Policy Decision Concerning The Business Economic Loss Framework dated February 18, 2013 and all of its exhibits and declarations

- Class Counsel's Opposition To BP's Motion For Reconsideration dated February 18, 2013 and all of its exhibits and declarations

- The Court's Review of Issue from Panel (Matching of Revenue and Expenses) dated March 5, 2013 (Rec. Doc. 8812)