# Exhibit 09

## DECLARATION OF KEITH MOSKOWITZ

I, Keith Moskowitz, hereby declare and state as follows:

1. I am over the age of 21 years and a resident of the State of Illinois. Unless otherwise stated, I have personal knowledge of the facts set forth herein and, if called to do so, could testify truthfully thereto.

2. I am a Partner at the law firm of SNR Denton (US) LLP and am one of the attorneys representing BP Exploration & Production Inc. and BP America Production Company (collectively "BP") in connection with the Economic and Property Damages Settlement Agreement ("Settlement Agreement"). My responsibilities in connection with this representation include working with the Claims Administrator Patrick Juneau and the Court Supervised Settlement Program ("Settlement Program") on the implementation and administration of the Settlement Agreement.

3. Since the inception of the Settlement Program and continuing to date, I have had frequent and regular contact and interaction with the Claims Administrator, the Settlement Program and Class Counsel on claims implementation and administration issues. I have had in-person and/or telephonic meetings with the Claims Administrator and/or representatives of the Settlement Program virtually every week since the commencement of the Settlement Program in June 2012. Through these in-person and telephonic meetings I have communicated and interacted with the Settlement Program on essentially every aspect of the implementation and administration of the Settlement Agreement.

4. The Settlement Agreement sets forth and contemplates a transparent and collaborative process between the Claims Administrator, BP and Class Counsel in connection with the implementation and administration of the Settlement Agreement. The Claims Administrator has implemented a process to present questions and issues related to the Settlement Agreement's implementation and administration to BP and Class Counsel. At the outset of the claims administration process, the Claims Administrator compiled a spreadsheet of such questions and issues that was updated and presented to BP and Class Counsel for input and resolution.

5. This process was later refined by the Claims Administrator, but the refined process operates in substantially the same fashion to facilitate the presentation of questions and issues to BP and Class Counsel for consideration and comment prior to the Claims Administrator taking his own final position on the question or issue. And the Claims Administrator still uses a spreadsheet to catalogue all issues and questions. Under the refined process, the Claims Administrator issues a written Request for Input from BP and Class Counsel regarding a question or issue identified by the Claims Administrator related to the implementation or administration

of the Settlement. Once BP and Class Counsel respond to the Request for Input, the Claims Administrator issues a written Policy Statement which constitutes the Claims Administrator's position on the question or issue. The Policy Statement is prepared by the Claims Administrator after having received, and with the benefit of, BP's and Class Counsel's responses to a Request for Input. If either BP or Class Counsel disagree with the Claims Administrator's Policy Statement, the parties will convene a Panel Meeting as called for by the terms of the Settlement Agreement. (Settlement Agreement ¶4.3.4) If the parties reach agreement on or do not object to the Claims Administrator's Policy Statement, or any modified version of the Policy Statement that results from the parties' collaborative efforts, the Claims Administrator issues a Policy Announcement (sometimes referred to as a "policy decision"). The Claims Administrator then gives the parties another opportunity to respond or object to the Policy Announcement before the Claims Administrator makes the Policy Announcement available to Class Members.

6. To date, the Claims Administrator has presented BP and Class Counsel with over 340 questions or issues related to the implementation and/or administration of the Settlement pursuant to the processes described in Paragraphs 4 and 5 above.[1] These questions and issues cover every type of claim that can be submitted under the Settlement Agreement (*i.e.,* Business Economic Loss, Individual Economic Loss, etc.) as well as other aspects of the settlement administration such as the appeals process. These questions and issues run the gamut from the more straightforward to the more involved and are both procedural and substantive in nature.[2] The Claims Administrator, BP and Class Counsel have worked together to address or resolve the majority of these questions or issues. Notably, with the exception of the issue discussed below, the Claims Administrator appears to have presented all significant questions or issues to BP as well as to Class Counsel, and followed the processes outlined above, before issuing determinations on substantial numbers of claims impacted by a question or issue of implementation or administration.

7. On September 28, 2012 BP raised a few questions to the Settlement Program related to how revenue and expenses were being used to calculate compensation in several BEL claim determinations BP had reviewed. (September 28, 2012 e-mail from Daniel Cantor to Michael Juneau, attached as Exhibit A.) Class Counsel sought to prevent BP from even raising these questions, but the Settlement Program allowed BP to present its questions during a short

---

[1] Certain of these questions were raised by Class Counsel and then presented to BP through the Claims Administrator.

[2] An example is the Claims Administrator's October 8, 2012 Policy Statement in which he determined that claimants who prepared profit and loss statements on an accrual basis would not be allowed to restate them on a cash basis to submit claims. The Claims Administrator explained that "such restatement could result in a loss or a greater loss not related to the Spill, but instead as a result only of the timing of cash received." In reaching this decision, the Claims Administrator went through the process described in Paragraphs 4 and 5 above.

October 2, 2012 teleconference with the Settlement Program and Class Counsel. (September 29, 2012 e-mails between Steve Herman and Michael Juneau attached as Exhibit B.)

      8.     The BEL claim determinations began to increase, and accelerate rapidly, in the run-up to the November 8, 2012 Fairness Hearing. From October 1, 2012 to November 8, 2012, the number of eligibility notices with payment offers increased from 414 to 1558. (October 1, 2012 and November 8, 2012 Settlement Program Payment Dashboards attached as Exhibit C.) These BEL claim determinations increased significantly, reaching 2,303 at the end of November 2012 and 2,981 at the end of December 2012. (December 1, 2012 and January 1, 2013 Settlement Program Payments Dashboards attached as Exhibit D.) The BEL payment offers continue to increase through the current date and stand at almost 5,000 as of March 3, 2013. (March 4, 2013 Settlement Program Payment Dashboard attached as Exhibit E.)

      9.     After reviewing the increasing number of BEL determinations for construction, professional services and agriculture claims issued through November 2012, BP identified extensive questionable treatment by the Settlement Program and Claims Administrator of revenues and expenses for these claims under the BEL Compensation Framework. As a result, on December 5, 2012, BP requested a meeting with the Settlement Program to fully understand whether the Settlement Program was processing these claims in accordance with the Settlement Agreement, including the BEL Compensation Framework. (December 5, 2012 e-mail from Daniel Cantor to Michael Juneau attached as Exhibit F.) In response, Class Counsel again argued that BP should not be allowed to ask the Settlement Program these questions. (December 6, 2012 e-mail from Steve Herman to Michael Juneau attached as Exhibit G.) The Claims Administrator agreed to a meeting on December 10, 2012, but Class Counsel could not accommodate that date (December 5, 2012 e-mail from Michael Juneau to Steve Herman attached as Exhibit H.) On December 16, 2012, Class Counsel issued a Request for Policy Determination memorandum asking the Claims Administrator to issue a Policy Announcement regarding the determination of compensation awards for construction, law firm and agriculture claims under the BEL Compensation Framework. On December 17, 2012, BP conferred with the Claims Administrator's office about a schedule to respond to Class Counsel's December 16, 2012 Request for Policy Determination and advised the Claims Administrator that, in light of the Class Counsel December 16 Request, the meeting BP requested did not have to go forward because BP would be responding in writing to the December 16 Request.

      10.    On December 21, 2012, the Court issued an Order and Reasons Granting Final Approval of the Economic Loss and Property Damages Settlement. (Doc. 8138)

      11.    On January 15, 2013, the Claims Administrator issued a Policy Announcement (sometimes referred to as the "BEL policy decision") in response to Class Counsel's December 16, 2012 Request for Policy Determination, and BP's response to Class Counsel's Request.

      12.    Unlike the more than 340 other questions and issues that the Claims Administrator presented to BP and Class Counsel, the Claims Administrator did not raise the

issue ultimately addressed in his January 15, 2013 Policy Announcement through the processes described in Paragraphs 4 and 5 above.[3] Instead, the Claims Administrator only addressed this issue after BP and Class Counsel were in a dispute over how the Claims Administrator already was determining compensation for certain construction, professional services and agriculture claims. By that point the Claims Administrator had already processed and issued determinations on approximately 3,248 BEL claims for total awards of approximately $764,261,922. (January 15, 2013 Settlement Program Payment Dashboard attached as Exhibit I.)

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 15, 2013

Keith Moskowitz

---

[3] After BP and Class Counsel raised the issue in December 2012, the Claims Administrator added the BEL Policy Decision issue to the compendium of more than 340 questions and issues.

- 4 -

# Exhibit A

## Cantor, Daniel A.

| | |
|---|---|
| **From:** | Cantor, Daniel A. |
| **Sent:** | Friday, September 28, 2012 11:19 AM |
| **To:** | Michael Juneau |
| **Cc:** | charles.r.hacker@us.pwc.com; mstaley@pncpa.com; Christine Reitano; Patrick Juneau; sherman@hhkc.com; jimr@wrightroy.com |
| **Subject:** | RE: phone call with accountants / Tuesday, October 2, 2012--Confidential Settlement Communication |

Dear Mike,

Per your request, I have listed below the questions that we would like to discuss with the accountants during the Tuesday call.  I have also reprinted below for convenience the previously circulated dial in number.  Thanks to all for taking the time out of busy schedules for the call.

Dan

Questions

1.  For industries with specialized accounting or irregularly received revenue, such as construction businesses which receive progress or milestone payments, how does the Settlement Program determine for purposes of applying the BEL methodology when given revenue and expenses are incurred.

2.  How does the Settlement Program determine the accounting methodology used in a claimant's financial statements (e.g., cash, accrual, etc.) and whether it has been applied on a consistent basis in the Benchmark Period and Compensation Period?

3.  Where a claimant has unusually large expense or negative revenue in year-end months (November or December), what does the Settlement Program do to determine whether those amounts relate solely to the period in which they are recorded or are a "true up" of amounts recorded in prior periods?  If the latter, what if any adjustments to financial statements does the Program make for purposes of evaluating causation and/or compensation?

4.  Where a claimant has unusually large revenue or expense in a particular month, particularly where this month appears out of the ordinary compared to the claimant's typical seasonal pattern, what does the Settlement Program do to understand the cause of the spike and ensure the spike is not a function of improper or inconsistent accounting?

Dial In Number

(866) 802-1366

Participant Passcode: 77752634#

**From:** Michael Juneau [mailto:mjuneau@dheclaims.com]
**Sent:** Tuesday, September 25, 2012 2:05 PM
**To:** Cantor, Daniel A.
**Cc:** charles.r.hacker@us.pwc.com; mstaley@pncpa.com; Christine Reitano; Patrick Juneau; sherman@hhkc.com; jimr@wrightroy.com
**Subject:** phone call with accountants / Tuesday, October 2, 2012

Dan:

Your request for a phone call with the accountants for the purpose of obtaining general information about the evaluation process for BEL claims has been routed to me.  We can do a conference call on Tuesday, October 2, 2012 at 10:15 am central time (11:15 am eastern time).   I am copying Steve Herman and Jim Roy on this email so that Class Counsel can have a representative participate in the call if they choose.   In advance of that time /date, please copy all of those noted in the "To" and "cc" lines above with the following:

    (1)  A call-in number / info that we can all use to access the conference call; and
    (2)  A listing of the specific questions that you have.

Thanks.

## Michael J. Juneau
*Special Counsel*

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

**504-934-4999**

**935 Gravier Street, Ste. 1905**
**New Orleans, LA  70112**
**mjuneau@dheclaims.com**

This email (and any attachments) is confidential and is intended for use solely by the properly named addressee. If you are not the intended recipient, any use, dissemination, forwarding, copying or printing of this email without the consent of the originator is strictly prohibited. Although this email (and any attachments) are believed to be free of any virus or other defect, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this email in error, please immediately notify the sender by reply email or by telephone at 504-934-4999.

# Exhibit B

## Moskowitz, Keith

**From:**   Steve Herman [SHERMAN@hhklawfirm.com]
**Sent:**   Saturday, September 29, 2012 10:48 AM
**To:**   'Michael Juneau'
**Cc:**   Patrick Juneau; Christine Reitano; James Roy; Holstein, Mark E; Rick Godfrey; Moskowitz, Keith; Dan Cantor
**Subject:** BP Oil - Phone Call with Accountants

Thanks, Mike.  Understand and agree, generally.  However, in this particular case, there are ongoing discussions at the Claims Administrator level about several of these issues, and therefore it would seem inappropriate to discuss directly with the accountants until such firm Policy decisions have been made. In addition, we have repeatedly requested that Dan identify the specific terms of the Settlement Agreement that he is relying upon;  having failed to get a response, we can only conclude that he is trying to influence the accountants to scrutinize claims in a way that isn't contemplated by the express terms of the Settlement Agreement.  (If we are wring about that, we apologize.)  Finally, I would suggest that Class Counsel stand in a completely different position to the Program than BP in terms of understanding the way that claims are being processed:  We have a responsibility to assist the Class Members in understanding the Program, so that they can submit claims in the most appropriate, complete and efficient way.  Both the Class and the Claims Administrator rely on us as a conduit in that regard.  BP, by contrast, has no interest or responsibility in either answering the questions of claimants or in posing their questions to the Claims Administrator.  All that being said, we understand and appreciate your courtesies, and will have representatives on the call.  Thanks.

**From:** Michael Juneau [mailto:mjuneau@dheclaims.com]
**Sent:** Saturday, September 29, 2012 10:34 AM

Steve:

To clarify, I received a request for such a conference, the purpose of which I understand is simply to understand how the accountants are handling certain processing issues. We are trying to make this process as transparent as possible, to both sides. For that reason, I arranged for Tuesday's conference call and did so in order that both sides could participate equally, receive the same information at the same time. We at times have gotten similar inquiries from Class Counsel about how certain issues are being handled. This is the same type of inquiry though this time from BP. We are trying to deal with all such matters in a fair, balanced and transparent way.  I will be participating personally in Tuesday's conference. This conference will not in any way be a forum for one side or the other to interfere with our office's independent administration of the program. This is merely part of our effort to make this process as transparent as possible, a courtesy that has been extended equally to both sides.

Michael J. Juneau
Special Counsel
Office of the Claims Administrator
Deepwater Horizon Claims Center

Privileged & Confidential
Sent from my iPhone

On Sep 29, 2012, at 10:01 AM, "Steve Herman" <SHERMAN@hhklawfirm.com> wrote:

3/11/2013

For the record, Class Counsel respectfully object to this request as an improper attempt to interfere with the independent administration of the Program in accordance with the terms of the Settlement Agreement.

**From:** Steve Herman
**Sent:** Friday, September 28, 2012 10:15 AM
**To:** Cantor, Daniel A.

Where is your authority under the Settlement Agreement that these issues should be considered?

On Sep 28, 2012, at 10:13 AM, "Cantor, Daniel A." <Daniel.Cantor@APORTER.COM> wrote:

Dear Mike,

Per your request, I have listed below the questions that we would like to discuss with the accountants during the Tuesday call. I have also reprinted below for convenience the previously circulated dial in number. Thanks to all for taking the time out of busy schedules for the call.

Dan

Questions

1.  For industries with specialized accounting or irregularly received revenue, such as construction businesses which receive progress or milestone payments, how does the Settlement Program determine for purposes of applying the BEL methodology when given revenue and expenses are incurred?

2.  How does the Settlement Program determine the accounting methodology used in a claimant's financial statements (e.g., cash, accrual, etc.) and whether it has been applied on a consistent basis in the Benchmark Period and Compensation Period?

3.  Where a claimant has unusually large expense or negative revenue in year-end months (November or December), what does the Settlement Program do to determine whether those amounts relate solely to the period in which they are recorded or are a "true up" of amounts recorded in prior periods? If the latter, what if any adjustments to financial statements does the Program make for purposes of evaluating causation and/or compensation?

4.  Where a claimant has unusually large revenue or expense in a particular month, particularly where this month appears out of the ordinary compared to the claimant's typical seasonal pattern, what does the Settlement Program do to understand the cause of the spike and ensure the spike is not a function of improper or inconsistent accounting?

Dial In Number

(866) 802-1366

Participant Passcode: 77752634#

---

**From:** Michael Juneau [mailto:mjuneau@dheclaims.com]
**Sent:** Tuesday, September 25, 2012 2:05 PM
**Subject:** phone call with accountants / Tuesday, October 2, 2012

Dan:

Your request for a phone call with the accountants for the purpose of obtaining general information about the evaluation process for BEL claims has been routed to me.  We can do a conference call on Tuesday, October 2, 2012 at 10:15 am central time (11:15 am eastern time).   I am copying Steve Herman and Jim Roy on this email so that Class Counsel can have a representative participate in the call if they choose.  In advance of that time /date, please copy all of those noted in the "To" and "cc" lines above with the following:

> (1)   A call-in number / info that we can all use to access the conference call; and
> (2)   A listing of the specific questions that you have.

Thanks.

<image001.png>

935 Gravier Street, Ste. 1905
New Orleans, LA  70112
mjuneau@dheclaims.com

---

CONFIDENTIAL ATTORNEY WORK PRODUCT
This e-mail message contains confidential, privileged information intended
solely for the addressee.  Please do not read, copy, or disseminate it unless
you are the addressee.  If you have received it in error, please call us
(collect) immediately at (504) 581-4892 and ask to speak with the message
sender.  Also, we would appreciate your forwarding the message back to us and
deleting it from your system.  Thank you.


This email (and any attachments) is confidential and is intended for use solely by the properly named addressee. If you are not the intended recipient, any use, dissemination, forwarding, copying or printing of this email without the consent of the originator is strictly prohibited. Although this email (and any attachments) are believed to be free of any virus or other defect, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this email in error, please immediately notify the sender by

reply email or by telephone at 504-934-4999.

CONFIDENTIAL ATTORNEY WORK PRODUCT
This e-mail message contains confidential, privileged information intended
solely for the addressee.  Please do not read, copy, or disseminate it unless
you are the addressee.  If you have received it in error, please call us
(collect) immediately at (504) 581-4892 and ask to speak with the message
sender.  Also, we would appreciate your forwarding the message back to us and
deleting it from your system.  Thank you.

# Exhibit C

DWH Payment Dashboard
(As of 10/1/12)

| Table 1 | DWH Settlement Program Payments | | | | | |
|---|---|---|---|---|---|---|
| | Category | Daily Notices and Payments for 9/30/12 | | Program Totals | | |
| | | Number | Amount | Number | Amount | |
| 1. | Paid on DWH Releases | 145 | $4,592,219 | 1,520 | $57,646,477 | |
| 2. | Paid As 40% Payments to Claimants with Transition Payments | 0 | $0 | 667 | $8,354,653 | |
| 3. | Total | 145 | $4,592,219 | 2,187 | $66,001,130 | |

| Table 2 | Daily Notices and Payments on DWH Releases for 9/30/12 | | | | | |
|---|---|---|---|---|---|---|
| | Claim Type | Eligibility Notices Issued with Payment Offer | | Accepted Offers | | Payments Made | |
| | | Number | Amount | Number | Amount | Number | Amount |
| 1. | Seafood Compensation Program | 11 | $5,069,878 | 14 | $1,550,553 | 7 | $466,777 |
| 2. | Individual Economic Loss | 5 | $30,563 | 3 | $100,775 | 0 | $0 |
| 3. | Individual Periodic Vendor or Festival Vendor Economic Loss | 0 | $0 | 0 | $0 | 0 | $0 |
| 4. | Business Economic Loss | 27 | $2,176,556 | 20 | $3,013,862 | 5 | $918,025 |
| 5. | Start-Up Business Economic Loss | 1 | $50,224 | 0 | $0 | 0 | $0 |
| 6. | Failed Business Economic Loss | 0 | $0 | 0 | $0 | 0 | $0 |
| 7. | Coastal Real Property | 24 | $82,294 | 43 | $284,419 | 55 | $438,643 |
| 8. | Wetlands Real Property | 7 | $518,873 | 1 | $15,750 | 2 | $31,500 |
| 9. | Real Property Sales | 10 | $475,000 | 6 | $277,500 | 2 | $49,375 |
| 10. | Subsistence | 0 | $0 | 0 | $0 | 0 | $0 |
| 11. | VoO Charter Payment | 39 | $1,602,600 | 50 | $1,744,300 | 74 | $2,687,900 |
| 12. | Vessel Physical Damage | 0 | $0 | 0 | $0 | 0 | $0 |
| 13. | Total | 124 | $10,005,989 | 137 | $6,987,159 | 145 | $4,592,219 |









DWH Payment Dashboard
(As of 10/1/12)

| Table 3 | Claim Type | Eligibility Notices Issued with Payment Offer | | Accepted Offers | | Payments Made | |
|---|---|---|---|---|---|---|---|
| | | Number | Amount | Number | Amount | Number | Amount |
| 1. | Seafood Compensation Program | 506 | $67,145,462 | 259 | $40,328,163 | 22 | $928,180 |
| 2. | Individual Economic Loss | 47 | $587,722 | 14 | $253,738 | 3 | $28,842 |
| 3. | Individual Periodic Vendor or Festival Vendor Economic Loss | 0 | $0 | 0 | $0 | 0 | $0 |
| 4. | Business Economic Loss | 410 | $72,932,322 | 220 | $42,190,821 | 37 | $6,613,420 |
| 5. | Start-Up Business Economic Loss | 4 | $869,652 | 0 | $0 | 0 | $0 |
| 6. | Failed Business Economic Loss | 0 | $0 | 0 | $0 | 0 | $0 |
| 7. | Coastal Real Property | 1,448 | $10,148,149 | 1,002 | $6,612,545 | 331 | $2,183,403 |
| 8. | Wetlands Real Property | 61 | $33,504,439 | 17 | $31,760,698 | 3 | $47,250 |
| 9. | Real Property Sales | 124 | $7,090,450 | 90 | $4,845,419 | 46 | $2,861,856 |
| 10. | Subsistence | 0 | $0 | 0 | $0 | 0 | $0 |
| 11. | VoO Charter Payment | 4,030 | $171,776,324 | 3,299 | $143,630,979 | 1,076 | $44,972,700 |
| 12. | Vessel Physical Damage | 3 | $15,588 | 2 | $10,825 | 2 | $10,825 |
| 13. | Total | 6,633 | $364,070,107 | 4,903 | $269,633,188 | 1,520 | $57,646,477 |

**Historical Notices and Payments on DWH Releases** (table header)



Chart 4: Weekly Notices and Payments on DWH Releases



Chart 5: Total Payments on DWH Releases by State
$0.06 Billion



Chart 6: Total Payments on DWH Releases by Claim Type
$0.06 Billion

DWH Payment Dashboard
(As of 10/1/12)











**DWH Payment Dashboard**
(As of 11/8/12)

| Table 1 | DWH Settlement Program Payments | | | | |
|---|---|---|---|---|---|
| | Category | Daily Notices and Payments for 11/7/12 | | Program Totals | |
| | | Number | Amount | Number | Amount |
| 1. | Paid on DWH Releases | 255 | $25,545,530 | 5,840 | $421,506,996 |
| 2. | Paid As 40% Payments to Claimants with Transition Payments | 65 | $386,644 | 1,330 | $16,554,572 |
| 3. | **Total** | **320** | **$25,932,174** | **7,170** | **$438,061,568** |

| Table 2 | Daily Notices and Payments on DWH Releases for 11/7/12 | | | | | | |
|---|---|---|---|---|---|---|---|
| | Claim Type | Eligibility Notices Issued with Payment Offer | | Accepted Offers | | Payments Made | |
| | | Number | Amount | Number | Amount | Number | Amount |
| 1. | Seafood Compensation Program | 55 | $10,142,764 | 31 | $6,642,374 | 43 | $14,692,292 |
| 2. | Individual Economic Loss | 13 | $71,702 | 9 | $126,767 | 4 | $22,592 |
| 3. | Individual Periodic Vendor or Festival Vendor Economic Loss | 0 | $0 | 0 | $0 | 0 | $0 |
| 4. | Business Economic Loss | 51 | $9,535,675 | 40 | $10,655,977 | 38 | $6,753,971 |
| 5. | Start-Up Business Economic Loss | 1 | $417,825 | 0 | $0 | 0 | $0 |
| 6. | Failed Business Economic Loss | 0 | $0 | 0 | $0 | 0 | $0 |
| 7. | Coastal Real Property | 74 | $882,081 | 87 | $457,808 | 70 | $460,054 |
| 8. | Wetlands Real Property | 2 | $31,500 | 6 | $279,856 | 3 | $56,021 |
| 9. | Real Property Sales | 1 | $34,063 | 3 | $107,000 | 5 | $177,250 |
| 10. | Subsistence | 0 | $0 | 0 | $0 | 0 | $0 |
| 11. | VoO Charter Payment | 11 | $393,400 | 33 | $1,347,700 | 90 | $3,351,200 |
| 12. | Vessel Physical Damage | 4 | $58,831 | 2 | $12,944 | 2 | $32,150 |
| 13. | **Total** | **212** | **$21,567,840** | **211** | **$19,630,426** | **255** | **$25,545,530** |



Chart 1: Daily Notices and Payments on DWH Releases



Chart 2: Daily Payments on DWH Releases by State
$25.5 Million



Chart 3: Daily Payments on DWH Releases by Claim Type
$25.5 Million



**DWH Payment Dashboard**
(As of 11/8/12)

| Table 3 | Historical Notices and Payments on DWH Releases | | | | | | |
|---|---|---|---|---|---|---|---|
| | Claim Type | Eligibility Notices Issued with Payment Offer | | Accepted Offers | | Payments Made | |
| | | Number | Amount | Number | Amount | Number | Amount |
| 1. | Seafood Compensation Program | 1,726 | $347,277,015 | 932 | $258,413,586 | 476 | $137,769,100 |
| 2. | Individual Economic Loss | 306 | $3,511,692 | 175 | $2,276,915 | 97 | $1,192,062 |
| 3. | Individual Periodic Vendor or Festival Vendor Economic Loss | 0 | $0 | 0 | $0 | 0 | $0 |
| 4. | Business Economic Loss | 1,532 | $333,956,978 | 1,019 | $242,869,163 | 582 | $103,922,813 |
| 5. | Start-Up Business Economic Loss | 25 | $3,678,875 | 18 | $2,481,078 | 9 | $1,321,031 |
| 6. | Failed Business Economic Loss | 1 | $15,144 | 0 | $0 | 0 | $0 |
| 7. | Coastal Real Property | 3,954 | $25,394,355 | 2,517 | $15,821,983 | 1,404 | $8,958,650 |
| 8. | Wetlands Real Property | 253 | $36,546,328 | 85 | $33,484,795 | 50 | $32,780,167 |
| 9. | Real Property Sales | 187 | $10,266,963 | 166 | $9,082,556 | 118 | $6,346,888 |
| 10. | Subsistence | 0 | $0 | 0 | $0 | 0 | $0 |
| 11. | VoO Charter Payment | 4,884 | $202,920,748 | 4,317 | $184,017,361 | 3,094 | $129,125,630 |
| 12. | Vessel Physical Damage | 66 | $1,187,189 | 33 | $682,376 | 9 | $90,657 |
| 13. | Total | 12,934 | $964,755,287 | 9,262 | $749,129,814 | 5,839 | $421,506,996 |



Chart 4: Weekly Notices and Payments on DWH Releases



Chart 5: Total Payments on DWH Releases by State
$0.42 Billion



Chart 6: Total Payments on DWH Releases by Claim Type
$0.42 Billion

DWH Payment Dashboard
(As of 11/8/12)











# Exhibit D

**DWH Payment Dashboard**
(As of 12/1/12)

| Table 1 | DWH Settlement Program Payments | | | | |
|---|---|---|---|---|---|
| | Category | Daily Notices and Payments for 11/30/12 | | Program Totals | |
| | | Number | Amount | Number | Amount |
| 1. | Paid on DWH Releases | 292 | $16,186,580 | 9,813 | $732,549,887 |
| 2. | Paid As 40% Payments to Claimants with Transition Payments | 2 | $59,556 | 1,577 | $22,008,994 |
| 3. | Total | 294 | $16,246,136 | 11,390 | $754,558,881 |

| Table 2 | Daily Notices and Payments on DWH Releases for 11/30/12 | | | | | |
|---|---|---|---|---|---|---|
| | Claim Type | Eligibility Notices Issued with Payment Offer | | Accepted Offers | | Payments Made | |
| | | Number | Amount | Number | Amount | Number | Amount |
| 1. | Seafood Compensation Program | 44 | $2,723,835 | 33 | $2,998,408 | 21 | $4,449,540 |
| 2. | Individual Economic Loss | 22 | $264,237 | 4 | $29,572 | 4 | $5,788 |
| 3. | Individual Periodic Vendor or Festival Vendor Economic Loss | 0 | $0 | 0 | $0 | 0 | $0 |
| 4. | Business Economic Loss | 33 | $7,042,944 | 36 | $9,140,283 | 51 | $8,715,591 |
| 5. | Start-Up Business Economic Loss | 0 | $0 | 1 | $47,989 | 1 | $902,456 |
| 6. | Failed Business Economic Loss | 0 | $0 | 0 | $0 | 0 | $0 |
| 7. | Coastal Real Property | 131 | $847,205 | 133 | $929,451 | 189 | $1,146,776 |
| 8. | Wetlands Real Property | 4 | $59,651 | 3 | $39,375 | 5 | $77,346 |
| 9. | Real Property Sales | 4 | $113,413 | 1 | $24,875 | 2 | $273,763 |
| 10. | Subsistence | 0 | $0 | 0 | $0 | 0 | $0 |
| 11. | VoO Charter Payment | 46 | $1,801,400 | 15 | $513,200 | 16 | $585,800 |
| 12. | Vessel Physical Damage | 1 | $2,369 | 1 | $24,150 | 3 | $29,521 |
| 13. | Total | 285 | $12,855,053 | 229 | $13,747,303 | 292 | $16,186,580 |



Chart 1: Daily Notices and Payments on DWH Releases



Chart 2: Daily Payments on DWH Releases by State
$16.2 Million



Chart 3: Daily Payments on DWH Releases by Claim Type
$16.2 Million



DWH Payment Dashboard
(As of 12/1/12)

| Table 3 | Claim Type | Historical Notices and Payments on DWH Releases | | | | | |
|---|---|---|---|---|---|---|---|
| | | Eligibility Notices Issued with Payment Offer | | Accepted Offers | | Payments Made | |
| | | Number | Amount | Number | Amount | Number | Amount |
| 1. | Seafood Compensation Program | 2,216 | $424,422,532 | 1,361 | $347,066,306 | 1,075 | $263,678,706 |
| 2. | Individual Economic Loss | 430 | $4,577,178 | 285 | $3,299,084 | 200 | $2,272,138 |
| 3. | Individual Periodic Vendor or Festival Vendor Economic Loss | 0 | $0 | 0 | $0 | 0 | $0 |
| 4. | Business Economic Loss | 2,252 | $503,740,142 | 1,741 | $424,379,479 | 1,256 | $232,584,867 |
| 5. | Start-Up Business Economic Loss | 50 | $11,056,668 | 39 | $8,442,846 | 26 | $5,070,198 |
| 6. | Failed Business Economic Loss | 1 | $15,144 | 0 | $0 | 0 | $0 |
| 7. | Coastal Real Property | 6,111 | $37,978,311 | 4,314 | $27,272,923 | 2,898 | $18,156,422 |
| 8. | Wetlands Real Property | 324 | $38,096,870 | 232 | $35,765,083 | 175 | $34,708,482 |
| 9. | Real Property Sales | 220 | $11,660,837 | 187 | $10,329,944 | 164 | $8,856,131 |
| 10. | Subsistence | 0 | $0 | 0 | $0 | 0 | $0 |
| 11. | VoO Charter Payment | 5,280 | $217,479,950 | 4,684 | $198,255,261 | 3,967 | $166,484,637 |
| 12. | Vessel Physical Damage | 114 | $2,827,654 | 76 | $1,391,656 | 51 | $738,306 |
| 13. | Total | 16,998 | $1,251,855,286 | 12,919 | $1,056,202,581 | 9,812 | $732,549,887 |



Chart 4: Weekly Notices and Payments on DWH Releases



Chart 5: Total Payments on DWH Releases by State
$0.73 Billion



Chart 6: Total Payments on DWH Releases by Claim Type
$0.73 Billion

DWH Payment Dashboard
(As of 12/1/12)



**Chart 7: Number of Payment Offers by Claim Type on DWH Releases**

Legend: Payments | Accepted Offers | Outstanding Offers



**Chart 8: Number of Payment Offers by State of Residence on DWH Releases**

Legend: Payments | Accepted Offers | Outstanding Offers



**Chart 9: Payable Claims by Representation Status**

No 35%
Represented 65%



**Chart 10: Payments Made by Representation Status**

No 33%
Represented 67%



**Chart 11: Payments Notice Delivery Method**

Mail 12%
Portal 88%

**DWH Payment Dashboard**
(As of 1/1/13)

| Table 1 | DWH Settlement Program Payments | | | | | |
|---|---|---|---|---|---|---|
| | **Category** | **Daily Notices and Payments for 12/31/12** | | **Program Totals** | | |
| | | **Number** | **Amount** | **Number** | **Amount** | |
| 1. | Paid on DWH Releases | 0 | $0 | 14,151 | $1,038,253,758 | |
| 2. | Paid As 40% Payments to Claimants with Transition Payments | 0 | $0 | 1,805 | $29,747,693 | |
| 3. | **Total** | **0** | **$0** | **15,956** | **$1,068,001,451** | |

| Table 2 | Daily Notices and Payments on DWH Releases for 12/31/12 | | | | | |
|---|---|---|---|---|---|---|
| | **Claim Type** | **Eligibility Notices Issued with Payment Offer** | | **Accepted Offers** | | **Payments Made** |
| | | **Number** | **Amount** | **Number** | **Amount** | **Number** | **Amount** |
| 1. | Seafood Compensation Program | 9 | $3,153,688 | 24 | $3,208,867 | 0 | $0 |
| 2. | Individual Economic Loss | 1 | $26,822 | 3 | $9,461 | 0 | $0 |
| 3. | Individual Periodic Vendor or Festival Vendor Economic Loss | 0 | $0 | 0 | $0 | 0 | $0 |
| 4. | Business Economic Loss | 22 | $4,087,161 | 18 | $8,823,130 | 0 | $0 |
| 5. | Start-Up Business Economic Loss | 0 | $0 | 0 | $0 | 0 | $0 |
| 6. | Failed Business Economic Loss | 0 | $0 | 0 | $0 | 0 | $0 |
| 7. | Coastal Real Property | 38 | $142,118 | 48 | $259,103 | 0 | $0 |
| 8. | Wetlands Real Property | 5 | $62,237 | 1 | $15,750 | 0 | $0 |
| 9. | Real Property Sales | 5 | $204,375 | 7 | $1,549,060 | 0 | $0 |
| 10. | Subsistence | 0 | $0 | 0 | $0 | 0 | $0 |
| 11. | VoO Charter Payment | 19 | $1,962,198 | 15 | $701,200 | 0 | $0 |
| 12. | Vessel Physical Damage | 3 | $25,556 | 2 | $32,228 | 0 | $0 |
| 13. | **Total** | **102** | **$9,664,155** | **118** | **$14,598,799** | **0** | **$0** |



Chart 1: Daily Notices and Payments on DWH Releases



Chart 2: Daily Payments on DWH Releases by State
$0 Million

No Data Available



Chart 3: Daily Payments on DWH Releases by Claim Type
$0 Million

No Data Available



| Table 3 | Historical Notices and Payments on DWH Releases | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Claim Type | Eligibility Notices Issued with Payment Offer | | Accepted Offers | | Payments Made | | |
| | | Number | Amount | Number | Amount | Number | Amount | |
| 1. | Seafood Compensation Program | 2,722 | $510,647,888 | 1,776 | $429,000,698 | 1,618 | $382,419,160 | |
| 2. | Individual Economic Loss | 601 | $5,929,580 | 447 | $4,811,028 | 358 | $4,022,400 | |
| 3. | Individual Periodic Vendor or Festival Vendor Economic Loss | 1 | $3,200 | 1 | $3,200 | 0 | $0 | |
| 4. | Business Economic Loss | 2,911 | $687,939,864 | 2,395 | $586,954,231 | 1,946 | $367,092,234 | |
| 5. | Start-Up Business Economic Loss | 68 | $16,050,374 | 55 | $14,624,245 | 40 | $7,811,120 | |
| 6. | Failed Business Economic Loss | 2 | $55,699 | 0 | $0 | 0 | $0 | |
| 7. | Coastal Real Property | 7,625 | $51,081,526 | 6,102 | $41,705,247 | 4,858 | $30,244,015 | |
| 8. | Wetlands Real Property | 533 | $45,167,171 | 376 | $42,164,065 | 308 | $37,204,864 | |
| 9. | Real Property Sales | 266 | $16,605,322 | 241 | $14,206,741 | 206 | $11,075,438 | |
| 10. | Subsistence | 0 | $0 | 0 | $0 | 0 | $0 | |
| 11. | VoO Charter Payment | 5,925 | $243,640,233 | 5,266 | $221,299,372 | 4,712 | $196,776,779 | |
| 12. | Vessel Physical Damage | 197 | $4,229,224 | 135 | $2,377,513 | 105 | $1,607,748 | |
| 13. | Total | 20,851 | $1,581,350,081 | 16,794 | $1,357,146,341 | 14,151 | $1,038,253,758 | |



Chart 4: Weekly Notices and Payments on DWH Releases



Chart 5: Total Payments on DWH Releases by State
$1.04 Billion



Chart 6: Total Payments on DWH Releases by Claim Type
$1.04 Billion

DWH Payment Dashboard
(As of 1/1/13)











# Exhibit E

DWH Payment Dashboard
(As of 3/4/13)

| Table 1 | DWH Settlement Program Payments | | | | |
|---|---|---|---|---|---|
| | Category | Daily Notices and Payments for 3/3/13 | | Program Totals | |
| | | Number | Amount | Number | Amount |
| 1. | Paid on DWH Releases | 164 | $6,891,600 | 22,636 | $1,613,766,586 |
| 2. | Paid As 40% Payments to Claimants with Transition Payments | 8 | $105,151 | 2,124 | $33,621,719 |
| 3. | Total | 172 | $6,996,752 | 24,760 | $1,647,388,304 |

| Table 2 | Daily Notices and Payments on DWH Releases for 3/3/13 | | | | | |
|---|---|---|---|---|---|---|
| | Claim Type | Eligibility Notices Issued with Payment Offer | | Accepted Offers | | Payments Made | |
| | | Number | Amount | Number | Amount | Number | Amount |
| 1. | Seafood Compensation Program | 32 | $4,503,396 | 66 | $4,829,789 | 43 | $3,928,846 |
| 2. | Individual Economic Loss | 3 | $20,454 | 9 | $64,856 | 4 | $24,635 |
| 3. | Individual Periodic Vendor or Festival Vendor Economic Loss | 0 | $0 | 0 | $0 | 0 | $0 |
| 4. | Business Economic Loss | 42 | $5,503,265 | 62 | $7,655,860 | 30 | $1,851,105 |
| 5. | Start-Up Business Economic Loss | 7 | $552,687 | 2 | $234,070 | 0 | $0 |
| 6. | Failed Business Economic Loss | 0 | $0 | 0 | $0 | 0 | $0 |
| 7. | Coastal Real Property | 128 | $651,814 | 141 | $769,180 | 63 | $352,070 |
| 8. | Wetlands Real Property | 6 | $33,925 | 43 | $410,349 | 5 | $26,816 |
| 9. | Real Property Sales | 0 | $0 | 0 | $0 | 0 | $0 |
| 10. | Subsistence | 13 | $139,183 | 14 | $141,765 | 3 | $55,128 |
| 11. | VoO Charter Payment | 22 | $819,200 | 30 | $1,151,400 | 16 | $653,000 |
| 12. | Vessel Physical Damage | 2 | $23,041 | 2 | $18,424 | 0 | $0 |
| 13. | Total | 255 | $12,246,965 | 369 | $15,275,693 | 164 | $6,891,600 |



Chart 1: Daily Notices and Payments on DWH Releases



Chart 2: Daily Payments on DWH Releases by State
$6.9 Million



Chart 3: Daily Payments on DWH Releases by Claim Type
$6.9 Million



DEEPWATER HORIZON
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Table 3 | Claim Type | Historical Notices and Payments on DWH Releases | | | | | |
|---|---|---|---|---|---|---|---|
| | | Eligibility Notices Issued with Payment Offer | | Accepted Offers | | Payments Made | |
| | | Number | Amount | Number | Amount | Number | Amount |
| 1. | Seafood Compensation Program | 3,970 | $709,729,576 | 3,115 | $640,122,091 | 2,982 | $617,663,848 |
| 2. | Individual Economic Loss | 1,006 | $10,194,065 | 800 | $8,886,646 | 684 | $7,313,965 |
| 3. | Individual Periodic Vendor or Festival Vendor Economic Loss | 2 | $5,178 | 1 | $3,200 | 1 | $3,200 |
| 4. | Business Economic Loss | 4,801 | $1,135,357,703 | 4,070 | $984,468,990 | 3,369 | $608,963,630 |
| 5. | Start-Up Business Economic Loss | 158 | $29,000,837 | 118 | $23,372,387 | 95 | $19,085,510 |
| 6. | Failed Business Economic Loss | 3 | $78,772 | 1 | $53,628 | 1 | $53,628 |
| 7. | Coastal Real Property | 11,474 | $72,967,944 | 9,751 | $63,171,745 | 8,415 | $51,779,902 |
| 8. | Wetlands Real Property | 907 | $50,404,329 | 787 | $47,612,399 | 699 | $46,604,620 |
| 9. | Real Property Sales | 316 | $18,959,442 | 303 | $18,502,488 | 285 | $17,513,439 |
| 10. | Subsistence | 98 | $907,128 | 24 | $261,813 | 9 | $123,879 |
| 11. | VoO Charter Payment | 6,493 | $264,297,510 | 6,193 | $253,905,837 | 5,842 | $241,172,640 |
| 12. | Vessel Physical Damage | 324 | $7,388,165 | 296 | $5,988,543 | 254 | $3,488,325 |
| 13. | Total | 29,552 | $2,299,290,649 | 25,459 | $2,046,349,768 | 22,636 | $1,613,766,586 |



Chart 4: Monthly Notices and Payments on DWH Releases



Chart 5: Total Payments on DWH Releases by State
$1.61 Billion



Chart 6: Total Payments on DWH Releases by Claim Type
$1.61 Billion

DWH Payment Dashboard
(As of 3/4/13)











# Exhibit F

**Moskowitz, Keith**

| | |
|---|---|
| **From:** | Cantor, Daniel A. [Daniel.Cantor@APORTER.COM] |
| **Sent:** | Wednesday, December 05, 2012 4:30 PM |
| **To:** | pjuneau@dheclaims.com; Mike Juneau; creitano@dheclaims.com; 'dodom@dheclaims.com' |
| **Cc:** | Steve Herman; JIMR@wrightroy.com; Holstein, Mark E; Moskowitz, Keith |
| **Subject:** | Request for Panel Meeting--For Settlement Purposes Only |

Dear Mr. Juneau, Mike, and Christine:

BP respectfully requests that the Claims Administration Panel be convened on the issue of the assignment of revenue to the proper months for purposes of the BEL causation framework and the proper matching of revenue and corresponding expenses for purposes of the BEL compensation framework.  While these issues are relevant to all BEL claims, we have seen particularly significant problems with their application with regard to (i) construction and other contractor claims and (ii) claims of law firms that earn contingency fees.  These are not always easy claims to process.  With regard to both construction and law firm claims, there have been a number of instances  in which the Settlement Program has received from Claimants and entered into the methodology financial data (i) that does not assign construction firm lump sum payments to the months in which the work was actually performed and (ii) that assigns large contingency fees received by a law firm at the end of a multi-year case to the month of receipt rather than across the time period when it was earned.  And determinations have frequently been rendered without matching revenue and corresponding variable expenses, as expressly required by Exhibit 4c.  Still further, in the case of law firm claims, it appears that reimbursable costs are being treated as revenue for purposes of the framework.  Reimbursable  costs are costs that a law firm expends to cover expenses that are ultimately reimbursed by a client.  When the firm receives the reimbursements, it is not earning revenue but simply being repaid for amounts previously expended.

As a first step in the Claims Administration Panel dialogue, BP respectfully requests a meeting with you, Class Counsel, and the accounting vendors in which we can have an open discussion of how these issues are currently being handled.  We then recommend a prompt exchange of positions, followed by a Panel meeting if necessary.  Would it be possible to arrange for the meeting with the accounting vendors for next week?  We believe that prompt resolution is in the interest of all parties as the issues discussed in this email implicate a growing number of claims and appeals.

Thank you in advance for your consideration.

Dan

U.S. Treasury Circular 230 Notice

Any U.S. federal tax advice included in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding U.S. federal tax-related penalties or (ii) promoting, marketing or recommending to another party any tax-related matter addressed herein.

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

--------------------------------------------------------------------
For more information about Arnold & Porter LLP, click here :
http://www.arnoldporter.com

# Exhibit G

**Moskowitz, Keith**

| | |
|---|---|
| **From:** | Steve Herman [SHERMAN@hhklawfirm.com] |
| **Sent:** | Thursday, December 06, 2012 2:59 PM |
| **To:** | Cantor, Daniel A. |
| **Cc:** | Michael Juneau; James Roy; Patrick Juneau; Christine Reitano; Holstein, Mark E; Moskowitz, Keith; Rice, Joe |
| **Subject:** | BP Oil - Request for Panel Meeting |

Not to belabor the point, (particularly in light of Mike's recent email), but Class Counsel and BP do not stand in the same position viz-a-vis these types of inquiries.

We have an obligation to respond, assist, clarify, and otherwise address the questions and concerns of Claimants and their counsel - both for the Class' benefit and for the benefit of the Claims Administrator / Program - during the Claim Determination (and Reconsideration) process.

BP has no such responsibility.

Nor does BP have standing to assert itself into the Claims Process, prior to Determination;  it's remedy is generally limited under the Settlement Agreement to an Appeal.

If BP has an issue with the way that the Program is being interpreted and applied by the Claims Administrator, it can certainly invoke a Panel under (I think it's) 4.3.4.  But that seems different, at least the way I see it, from a meeting with Program accountants to question (and implicitly, if not explicitly, challenge or criticize) the way that such accountants might be processing the claims.

Having said all of that, I don't object to having such a meeting, at the Claims Administrator's availability and discretion.

Thanks.

On Dec 6, 2012, at 3:44 PM, "Cantor, Daniel A." <Daniel.Cantor@APORTER.COM> wrote:

> We are simply trying to understand how the program is approaching these issues.  Everyone agrees that transparency is the governing principle.  You recently made a similar request for a meeting, we did not object, and the meeting was held.  Thanks
>
> Dan
>
> ---
>
> **From:** Steve Herman [mailto:SHERMAN@hhklawfirm.com]
> **Sent:** Thursday, December 06, 2012 3:36 PM
> **To:** Cantor, Daniel A.
> **Cc:** Michael Juneau; James Roy; Patrick Juneau; Christine Reitano; Holstein, Mark E; Moskowitz, Keith; Rice, Joe
> **Subject:** BP Oil - Request for Panel Meeting
>
> Not to be overly contentious, but you presumably know the approach that was taken in the evaluation and determination of the claims that you have appealed.

On Dec 6, 2012, at 3:29 PM, "Cantor, Daniel A." <Daniel.Cantor@APORTER.COM>
wrote:

> Mike,
>
> Thanks.  BP believes that it is important to have a full understanding of the approach
> being implemented by the Settlement Program accountants before submitting
> position papers.  We have been able to rearrange schedules and make next Monday
> work for such a meeting.  May we propose (i) a meeting with the accountants next
> Monday at 1:30 as originally suggested and (ii) BP position paper to be filed next
> Thursday.  Thanks
>
> Dan

---

**From:** Michael Juneau [mailto:mjuneau@dheclaims.com]
**Sent:** Thursday, December 06, 2012 3:06 PM
**To:** Steve Herman
**Cc:** James Roy; Cantor, Daniel A.; Patrick Juneau; Christine Reitano; Holstein, Mark E;
Moskowitz, Keith; Rice, Joe
**Subject:** Re: BP Oil - Request for Panel Meeting

All:

A meeting on Monday on this issue will apparently not work. Please allow this
to confirm that we will NOT meet on Monday, December 10, on this issue.
This issue of spreading out income over different periods other than as booked
in the company's financial statements has been the subject of a previous
conference call wherein the program accountants were questioned about the
procedures we were following. This issue is on appeal on more than one claim
now. Given that history, this seems to be something that both sides already
have some familiarity with.

To try to streamline the process a bit, we will proceed as follows:

(1). BP shall present its written position detailing its objections to the program's
current method of processing these issues and offering whatever support for its
alternative it believes appropriate - by the close of business on Tuesday,
December 11, 2012.

(2). Class Counsel shall present its own position paper in response to the issues
raised by BP - by the noon on Friday, December 14, 2012.

(3). We will select a date for a panel meeting. We will work on this scheduling
issue early next week, hopefully to find an available date before Christmas.

I would appreciate both sides sending me a reply ASAP to confirm that you
have received this email and have notice of this revised schedule.

Michael J. Juneau

Privileged & Confidential
Sent from my iPhone

On Dec 6, 2012, at 10:28 AM, "Steve Herman"
<SHERMAN@hhklawfirm.com> wrote:

> I can attend, but would prefer to do it at a time when Jim
> and Joe are also available.  I am frankly not sure what the
> issue is.  I understand that BP has appealed a number of
> Eligibility Notices based on the general notion, (which,
> as we discussed when we were together last week, seems
> contrary to both BP's opposition to the averaging of
> annual or semi-annual or quarterly financials and to the
> general month-by-month focus of the Settlement
> Agreement), that certain types of monthly revenue or
> expenses should be averaged out across many months, or
> years, rather than the month in which it was paid or
> collected or obtained or accrued.  Class Counsel are
> certainly happy to discuss these issues, but I am not sure
> what specific "Policy" BP is actually opposing or
> advocating.
>
> Thanks.
>
> **From:** Michael Juneau [mailto:mjuneau@dheclaims.com]
> **Sent:** Thursday, December 06, 2012 10:17 AM
> **To:** Rice, Joe
> **Cc:** Steve Herman; James Roy; Cantor, Daniel A.; Patrick Juneau;
> Christine Reitano; Holstein, Mark E; Moskowitz, Keith
> **Subject:** Re: Request for Panel Meeting--For Settlement Purposes Only
>
> All:
>
> I need to get this issue of whether or not a meeting will be held on
> Monday at 1:30 pm resolved this morning.  I have not heard back
> from BP. It seemed that Class Counsel may have a conflict, but
> that was not entirely clear to me. I need to have this confirmed for
> Pat Juneau this morning. Please let me have your "final answer"
> before noon.
>
> In response to Joe Rice's question, we can make a call-in phone
> number available.
>
> Michael J. Juneau
>
> Privileged & Confidential
> Sent from my iPhone

3/11/2013

On Dec 6, 2012, at 10:08 AM, "Rice, Joe"
<jrice@motleyrice.com> wrote:


Will a phone link be available

**Joseph F. Rice** | Attorney at Law | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464
**o.** 843.216.9159 | **f.** 843.216.9290 | jrice@motleyrice.com

**From:** Michael Juneau [mailto:mjuneau@dheclaims.com]
**Sent:** Wednesday, December 05, 2012 9:20 PM
**To:** Steve Herman
**Cc:** James Roy; Cantor, Daniel A.; Patrick Juneau; Christine
Reitano; Holstein, Mark E; Moskowitz, Keith; Rice, Joe
**Subject:** Re: Request for Panel Meeting--For Settlement
Purposes Only

Monday is the only day next week that can work on
our end. Pat Juneau has to be in California a good part
of next week. If we cannot do this Monday, we will
have to look at the week or two after that.

Michael J. Juneau
Juneau David, APLC
P.O. Box 51268
Lafayette, LA  70505
1018 Harding Street, Suite 202
Lafayette, LA  70503
Phone:  337.269.0052
Fax:  337.269.0061
Email:  mjj@juneaudavid.com
Web:  www.juneaudavid.com

Privileged & Confidential
Sent from my iPhone

On Dec 5, 2012, at 8:12 PM, "Steve Herman"
<SHERMAN@hhklawfirm.com> wrote:

> Actually, if we could move to
> Wednesday, it would help me, (as I have
> to preside over an LADB Hearing on
> Tuesday), and would also allow Joe to
> participate.
>
> Steve Herman
>
> On Dec 5, 2012, at 8:27 PM, "James Roy"
> <JIMR@wrightroy.com> wrote:

Mike- would it be possible to do Tuesday or later.  I have conflict that Monday.  Jim

Sent from my iPhone

James P. Roy
Jimr@wrightroy.com
337-278-7892

On Dec 5, 2012, at 5:03 PM, "Michael Juneau" <mjuneau@dheclaims.com> wrote:

All:


BP has asked for a meeting to review issues as outlined in Dan Cantor's email below. Pat Juneau has extremely limited availability.  He has asked me to confirm a meeting for Monday, December 10th at 1:30 pm. He and I will both attend, along with representatives of our accounting team.   BP and Class Counsel should both obviously attend. Please confirm receipt of this email and your availability for this meeting. Thank you.

Michael J.
Juneau


Privileged &
Confidential

Sent from my
iPhone


On Dec 5, 2012,
at 4:30 PM,
"Cantor, Daniel
A."
<Daniel.Cantor@APORTER.COM>
wrote:

> Dear
> Mr.
> Juneau,
> Mike,
> and
> Christine:
>
> BP
> respectfully
> requests
> that
> the
> Claims
> Administration
> Panel
> be
> convened
> on
> the
> issue
> of
> the
> assignment
> of
> revenue
> to
> the
> proper
> months
> for

purposes
of
the
BEL
causation
framework
and
the
proper
matching
of
revenue
and
corresponding
expenses
for
purposes
of
the
BEL
compensation
framework.
While
these
issues
are
relevant
to
all
BEL
claims,
we
have
seen
particularly
significant
problems
with
their
application
with
regard
to (i)
construction
and
other
contractor
claims
and
(ii)
claims

of
law
firms
that
earn
contingency
fees.
These
are
not
always
easy
claims
to
process.
With
regard
to
both
construction
and
law
firm
claims,
there
have
been
a
number
of
instances
in
which
the
Settlement
Program
has
received
from
Claimants
and
entered
into
the
methodology
financial
data
(i)
that
does
not

assign
construction
firm
lump
sum
payments
to
the
months
in
which
the
work
was
actually
performed
and
(ii)
that
assigns
large
contingency
fees
received
by a
law
firm
at
the
end
of a
multi
-
year
case
to
the
month
of
receipt
rather
than
across
the
time
period
when
it
was
earned.
And

determinations
have
frequently
been
rendered
without
matching
revenue
and
corresponding
variable
expenses,
as
expressly
required
by
Exhibit
4c.
Still
further,
in
the
case
of
law
firm
claims,
it
appears
that
reimbursable
costs
are
being
treated
as
revenue
for
purposes
of
the
framework.
Reimbursable
costs
are
costs
that
a
law
firm
expends

to
cover
expenses
that
are
ultimately
reimbursed
by a
client.
When
the
firm
receives
the
reimbursements,
it is
not
earning
revenue
but
simply
being
repaid
for
amounts
previously
expended.

As a
first
step
in
the
Claims
Administration
Panel
dialogue,
BP
respectfully
requests
a
meeting
with
you,
Class
Counsel,
and
the
accounting
vendors
in

which
we
can
have
an
open
discussion
of
how
these
issues
are
currently
being
handled.
We
then
recommend
a
prompt
exchange
of
positions,
followed
by a
Panel
meeting
if
necessary.
Would
it be
possible
to
arrange
for
the
meeting
with
the
accounting
vendors
for
next
week?
We
believe
that
prompt
resolution
is in
the

interest
of
all
parties
as
the
issues
discussed
in
this
email
implicate
a
growing
number
of
claims
and
appeals.

Thank
you
in
advance
for
your
consideration.

Dan

_____

U.S.
Treasury
Circular
230
Notice

Any
U.S.
federal
tax
advice
included
in this
communication
(including
any
attachments)
was
not
intended
or
written
to be
used,
and
cannot
be
used,
for the
purpose

of (i) avoiding U.S. federal tax-related penalties or (ii) promoting, marketing or recommending to another party any tax-related matter addressed herein.

---

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

---------
---------
---------

---------
---------
---------
---------
-------
For more information about Arnold & Porter LLP, click here :
http://www.arnoldporter.com

This email (and any attachments) is confidential and is intended for use solely by the properly named addressee. If you are not the intended recipient, any use, dissemination, forwarding, copying or printing of this email without the consent of the originator is strictly prohibited. Although this email (and any attachments) are believed to be free of any virus or other defect, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by the sender for any loss or damage arising in any way from its use.

If you have
received this
email in error,
please
immediately
notify the sender
by reply email or
by telephone at
504-934-4999.

CONFIDENTIAL ATTORNEY WORK PRODUCT
This e-mail message contains confidential, privileged infor
solely for the addressee.  Please do not read, copy, or dis
you are the addressee.  If you have received it in error, p
(collect) immediately at (504) 581-4892 and ask to speak wi
sender.  Also, we would appreciate your forwarding the mess
deleting it from your system.  Thank you.

This email (and any attachments) is confidential and is
intended for use solely by the properly named
addressee. If you are not the intended recipient, any
use, dissemination, forwarding, copying or printing of
this email without the consent of the originator is
strictly prohibited. Although this email (and any
attachments) are believed to be free of any virus or
other defect, it is the responsibility of the recipient to
ensure that it is virus free, and no responsibility is
accepted by the sender for any loss or damage arising
in any way from its use. If you have received this
email in error, please immediately notify the sender by
reply email or by telephone at 504-934-4999.

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information
contained in this communication is attorney-client privileged and confidential
information/work product. This communication is intended for the use of the
individual or entity named above. If the reader of this communication is not the
intended recipient, you are hereby notified that any dissemination, distribution
or copying of this communication is strictly prohibited. If you have received this
communication in error or are not sure whether it is privileged, please
immediately notify us by return e-mail and destroy any copies--electronic, paper
or otherwise--which you may have of this communication.

This email (and any attachments) is confidential and is intended for
use solely by the properly named addressee. If you are not the
intended recipient, any use, dissemination, forwarding, copying or
printing of this email without the consent of the originator is
strictly prohibited. Although this email (and any attachments) are
believed to be free of any virus or other defect, it is the

responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this email in error, please immediately notify the sender by reply email or by telephone at 504-934-4999.

```
CONFIDENTIAL ATTORNEY WORK PRODUCT
This e-mail message contains confidential, privileged information int
solely for the addressee.  Please do not read, copy, or disseminate i
you are the addressee.  If you have received it in error, please call
(collect) immediately at (504) 581-4892 and ask to speak with the mes
sender.  Also, we would appreciate your forwarding the message back t
deleting it from your system.  Thank you.
```

This email (and any attachments) is confidential and is intended for use solely by the properly named addressee. If you are not the intended recipient, any use, dissemination, forwarding, copying or printing of this email without the consent of the originator is strictly prohibited. Although this email (and any attachments) are believed to be free of any virus or other defect, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this email in error, please immediately notify the sender by reply email or by telephone at 504-934-4999.

---

U.S. Treasury Circular 230 Notice

Any U.S. federal tax advice included in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding U.S. federal tax-related penalties or (ii) promoting, marketing or recommending to another party any tax-related matter addressed herein.

---

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

```
--------------------------------------------------------------------
```
For more information about Arnold & Porter LLP, click here :
http://www.arnoldporter.com

```
CONFIDENTIAL ATTORNEY WORK PRODUCT
This e-mail message contains confidential, privileged information intended
solely for the addressee.  Please do not read, copy, or disseminate it unless
you are the addressee.  If you have received it in error, please call us
(collect) immediately at (504) 581-4892 and ask to speak with the message
sender.  Also, we would appreciate your forwarding the message back to us and
deleting it from your system.  Thank you.
```

---

U.S. Treasury Circular 230 Notice

Any U.S. federal tax advice included in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding U.S. federal tax-related penalties or (ii) promoting, marketing or recommending to another party any tax-related matter addressed herein.

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

------------------------------------------------------------------------
For more information about Arnold & Porter LLP, click here :
http://www.arnoldporter.com

CONFIDENTIAL ATTORNEY WORK PRODUCT
This e-mail message contains confidential, privileged information intended
solely for the addressee.  Please do not read, copy, or disseminate it unless
you are the addressee.  If you have received it in error, please call us
(collect) immediately at (504) 581-4892 and ask to speak with the message
sender.  Also, we would appreciate your forwarding the message back to us and
deleting it from your system.  Thank you.

# Exhibit H

**Moskowitz, Keith**

| | |
|---|---|
| **From:** | Michael Juneau [mjuneau@dheclaims.com] |
| **Sent:** | Wednesday, December 05, 2012 8:20 PM |
| **To:** | Steve Herman |
| **Cc:** | James Roy; Cantor, Daniel A.; Patrick Juneau; Christine Reitano; Holstein, Mark E; Moskowitz, Keith; Joe Rice |
| **Subject:** | Re: Request for Panel Meeting--For Settlement Purposes Only |

Monday is the only day next week that can work on our end. Pat Juneau has to be in California a good part of next week. If we cannot do this Monday, we will have to look at the week or two after that.

Michael J. Juneau
Juneau David, APLC
P.O. Box 51268
Lafayette, LA  70505
1018 Harding Street, Suite 202
Lafayette, LA  70503
Phone:  337.269.0052
Fax:  337.269.0061
Email:  mjj@juneaudavid.com
Web:  www.juneaudavid.com

Privileged & Confidential
Sent from my iPhone

On Dec 5, 2012, at 8:12 PM, "Steve Herman" <SHERMAN@hhklawfirm.com> wrote:

> Actually, if we could move to Wednesday, it would help me, (as I have to preside over an LADB Hearing on Tuesday), and would also allow Joe to participate.
>
> Steve Herman
>
> On Dec 5, 2012, at 8:27 PM, "James Roy" <JIMR@wrightroy.com> wrote:
>
>> Mike- would it be possible to do Tuesday or later.  I have conflict that Monday. Jim
>>
>> Sent from my iPhone
>>
>> James P. Roy
>> Jimr@wrightroy.com
>> 337-278-7892
>>
>> On Dec 5, 2012, at 5:03 PM, "Michael Juneau" <mjuneau@dheclaims.com> wrote:
>>
>>> All:

BP has asked for a meeting to review issues as outlined in Dan Cantor's email below. Pat Juneau has extremely limited availability.  He has asked me to confirm a meeting for Monday, December 10th at 1:30 pm. He and I will both attend, along with representatives of our accounting team.   BP and Class Counsel should both obviously attend. Please confirm receipt of this email and your availability for this meeting. Thank you.

Michael J. Juneau

Privileged & Confidential

Sent from my iPhone

On Dec 5, 2012, at 4:30 PM, "Cantor, Daniel A." <Daniel.Cantor@APORTER.COM> wrote:

Dear Mr. Juneau, Mike, and Christine:

BP respectfully requests that the Claims Administration Panel be convened on the issue of the assignment of revenue to the proper months for purposes of the BEL causation framework and the proper matching of revenue and corresponding expenses for purposes of the BEL compensation framework.  While these issues are relevant to all BEL claims, we have seen particularly significant problems with their application with regard to (i) construction and other contractor claims and (ii) claims of law firms that earn contingency fees.  These are not always easy claims to process.  With regard to both construction and law firm claims, there have been a number of instances  in which the Settlement Program has received from Claimants and entered into the methodology financial data (i) that does not assign construction firm lump sum payments to the months in which the work was actually performed and (ii) that assigns large contingency fees received by a law firm at the end of a multi-year case to the month of receipt rather than across the time period when it was earned. And determinations have frequently been rendered without matching revenue and corresponding variable expenses, as expressly required by Exhibit 4c.  Still further, in the case of law firm claims, it appears that

reimbursable costs are being treated as revenue for purposes of the framework.  Reimbursable  costs are costs that a law firm expends to cover expenses that are ultimately reimbursed by a client.  When the firm receives the reimbursements, it is not earning revenue but simply being repaid for amounts previously expended.

As a first step in the Claims Administration Panel dialogue, BP respectfully requests a meeting with you, Class Counsel, and the accounting vendors in which we can have an open discussion of how these issues are currently being handled.  We then recommend a prompt exchange of positions, followed by a Panel meeting if necessary.  Would it be possible to arrange for the meeting with the accounting vendors for next week?  We believe that prompt resolution is in the interest of all parties as the issues discussed in this email implicate a growing number of claims and appeals.

Thank you in advance for your consideration.

Dan

_____

_____
U.S. Treasury Circular 230 Notice

Any U.S. federal tax advice included in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding U.S. federal tax-related penalties or (ii) promoting, marketing or recommending to another party any tax-related matter addressed herein.

_____
This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

------------------------------------------------------------------------
For more information about Arnold & Porter LLP, click here :
http://www.arnoldporter.com

This email (and any attachments) is confidential and is intended for

use solely by the properly named addressee. If you are not the
intended recipient, any use, dissemination, forwarding, copying or
printing of this email without the consent of the originator is
strictly prohibited. Although this email (and any attachments) are
believed to be free of any virus or other defect, it is the
responsibility of the recipient to ensure that it is virus free, and no
responsibility is accepted by the sender for any loss or damage
arising in any way from its use. If you have received this email in
error, please immediately notify the sender by reply email or by
telephone at 504-934-4999.

CONFIDENTIAL ATTORNEY WORK PRODUCT
This e-mail message contains confidential, privileged information intended
solely for the addressee.  Please do not read, copy, or disseminate it unless
you are the addressee.  If you have received it in error, please call us
(collect) immediately at (504) 581-4892 and ask to speak with the message
sender.  Also, we would appreciate your forwarding the message back to us and
deleting it from your system.  Thank you.


This email (and any attachments) is confidential and is intended for use solely by the properly named
addressee. If you are not the intended recipient, any use, dissemination, forwarding, copying or printing
of this email without the consent of the originator is strictly prohibited. Although this email (and any
attachments) are believed to be free of any virus or other defect, it is the responsibility of the recipient to
ensure that it is virus free, and no responsibility is accepted by the sender for any loss or damage arising
in any way from its use. If you have received this email in error, please immediately notify the sender by
reply email or by telephone at 504-934-4999.

# Exhibit I

**DWH Payment Dashboard**
(As of 1/15/13)

| Table 1 | DWH Settlement Program Payments | | | | |
|---|---|---|---|---|---|
| | **Category** | **Daily Notices and Payments for 1/14/13** | | **Program Totals** | |
| | | **Number** | **Amount** | **Number** | **Amount** |
| **1.** | Paid on DWH Releases | 246 | $18,652,562 | 16,077 | $1,218,916,255 |
| **2.** | Paid As 40% Payments to Claimants with Transition Payments | 12 | $114,867 | 1,896 | $30,656,507 |
| **3.** | **Total** | **258** | **$18,767,429** | **17,973** | **$1,249,572,761** |

| Table 2 | Daily Notices and Payments on DWH Releases for 1/14/13 | | | | | |
|---|---|---|---|---|---|---|
| | **Claim Type** | **Eligibility Notices Issued with Payment Offer** | | **Accepted Offers** | | **Payments Made** |
| | | **Number** | **Amount** | **Number** | **Amount** | **Number** | **Amount** |
| **1.** | Seafood Compensation Program | 32 | $2,737,044 | 19 | $4,516,158 | 42 | $8,062,797 |
| **2.** | Individual Economic Loss | 16 | $125,167 | 11 | $115,933 | 2 | $6,941 |
| **3.** | Individual Periodic Vendor or Festival Vendor Economic Loss | 0 | $0 | 0 | $0 | 0 | $0 |
| **4.** | Business Economic Loss | 41 | $10,308,935 | 26 | $4,040,868 | 33 | $6,409,205 |
| **5.** | Start-Up Business Economic Loss | 0 | $0 | 0 | $0 | 1 | $622,710 |
| **6.** | Failed Business Economic Loss | 0 | $0 | 0 | $0 | 0 | $0 |
| **7.** | Coastal Real Property | 43 | $199,476 | 71 | $436,870 | 106 | $601,166 |
| **8.** | Wetlands Real Property | 4 | $63,342 | 9 | $235,181 | 6 | $401,119 |
| **9.** | Real Property Sales | 2 | $88,275 | 3 | $71,300 | 5 | $965,625 |
| **10.** | Subsistence | 0 | $0 | 0 | $0 | 0 | $0 |
| **11.** | VoO Charter Payment | 18 | $688,700 | 19 | $502,200 | 44 | $1,473,000 |
| **12.** | Vessel Physical Damage | 1 | $1,116 | 2 | $11,411 | 7 | $109,999 |
| **13.** | **Total** | **157** | **$14,212,055** | **160** | **$9,929,922** | **246** | **$18,652,562** |



Chart 1: Daily Notices and Payments on DWH Releases



Chart 2: Daily Payments on DWH Releases by State
$18.6 Million



Chart 3: Daily Payments on DWH Releases by Claim Type
$18.7 Million



| Table 3 | Historical Notices and Payments on DWH Releases | | | | | | |
|---|---|---|---|---|---|---|---|
| | Claim Type | Eligibility Notices Issued with Payment Offer | | Accepted Offers | | Payments Made | |
| | | Number | Amount | Number | Amount | Number | Amount |
| 1. | Seafood Compensation Program | 2,957 | $541,746,075 | 2,007 | $470,901,485 | 1,933 | $441,261,071 |
| 2. | Individual Economic Loss | 715 | $6,812,859 | 516 | $5,437,255 | 403 | $4,269,591 |
| 3. | Individual Periodic Vendor or Festival Vendor Economic Loss | 1 | $3,200 | 1 | $3,200 | 1 | $3,200 |
| 4. | Business Economic Loss | 3,174 | $747,568,832 | 2,659 | $650,502,851 | 2,275 | $459,934,341 |
| 5. | Start-Up Business Economic Loss | 73 | $16,677,946 | 59 | $15,166,402 | 50 | $11,246,540 |
| 6. | Failed Business Economic Loss | 1 | $15,144 | 0 | $0 | 0 | $0 |
| 7. | Coastal Real Property | 8,263 | $54,482,843 | 6,919 | $46,262,707 | 5,636 | $34,935,548 |
| 8. | Wetlands Real Property | 581 | $45,704,497 | 459 | $43,515,131 | 366 | $41,459,353 |
| 9. | Real Property Sales | 274 | $16,915,816 | 262 | $15,902,510 | 235 | $14,392,841 |
| 10. | Subsistence | 0 | $0 | 0 | $0 | 0 | $0 |
| 11. | VoO Charter Payment | 6,083 | $249,390,527 | 5,504 | $230,249,632 | 5,034 | $209,340,832 |
| 12. | Vessel Physical Damage | 240 | $6,333,385 | 174 | $3,915,311 | 144 | $2,072,937 |
| 13. | **Total** | **22,362** | **$1,685,651,125** | **18,560** | **$1,481,856,484** | **16,077** | **$1,218,916,255** |



Chart 4: Monthly Notices and Payments on DWH Releases



Chart 5: Total Payments on DWH Releases by State
$1.22 Billion



Chart 6: Total Payments on DWH Releases by Claim Type
$1.22 Billion

DWH Payment Dashboard
(As of 1/15/13)











DEEPWATER HORIZON
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS