# Exhibit 39

**MEMO**

To:         Christine Reitano
From:       Aaron Ahlquist
            Caroline Fayard
            on behalf of Class Counsel
Date:       February 7, 2013
Re:         Class Counsel's Response to BP's Memo dated January 31, 2013
cc:         Chris Esbrook, BP
            Jim Roy
            Steve Herman
            Calvin Fayard
            Joe Rice
            John Baden

Dear Christine,

Class Counsel has reviewed BP's Memo to the Claims Administrator dated January 31, 2013 addressing two principal items, a) the Claims Administrator's use of a 2011 Tax Assessment Notice; and b) the proper payee of a Wetlands compensation amounts on property subject to a usufruct.  In response Class Counsel submits the following:

**A. Use of the 2011 Tax Assessment Notice**

There is a discrepancy between the Wetlands Compensation Framework as contained in Exhibit 12A of the Settlement Agreement, which *nowhere* makes mention of the 2011 tax assessment as required document (see also Appendix F, Document requirements), and the Wetlands Claim Form and Instructions booklet which lists this document as being required of Claimants.

As a threshold matter it is Class Counsel's considered position that the text of Settlement Agreement and its related Exhibits control.  This is true irrespective of what the Claim Form or Instruction Booklet states.  To that end Class Counsel does *not* agree that the 2011 tax assessment is required or should be, and in fact Class Counsel *never consented* to its inclusion.[1]

---

[1] BP in its proposal regarding the use of the 2011 tax assessment states, "During the last moments of the settlement negotiations, the time period cut off for eligible claimants in the Wetlands Framework was changed from December 31, 2010 to "the date of the Settlement Agreement" to accommodate a request from Class Counsel."  BP email submission to CA dated January 31, 2013.  BP is correct on this point and the parties agreed that this change was to be made.  It was, and the Settlement Agreement, Exh. 12A Section 1.A., reads "Eligible Claimants shall be comprised of claimants who do not fall within the exclusions . . . and who were owners

1

Nevertheless, in keeping with the good faith intent of the parties, Class Counsel submitted a proposal in its January 31, 2013 submission to the Claims Administrator, in an attempt to try to work towards resolution of this issue.  Class Counsel stands by this proposal, and submits the following additional points in favor thereof:

BP attempts to cure its failure to include the 2011 tax assessment into its view of what should be required documents by holding Claimants to the standard of a non-consented to Claim Form rather than the text of the Settlement Agreement.  However, in doing so BP now conflates the intent of the Settlement Agreement and its use of tax assessments.

First, BP argues that the 2011 tax assessment is a necessary required document, despite the fact that Appendix F to Exhibit 12A makes no mention of same. See Appendix F, Document Requirements, Exh. 12A.

Second, BP now argues that the 2011 assessment is some how needed to prove eligibility of a claimant "since the period of eligibility under the Wetlands Framework is nearly two years long, it is certainly possible that an owner of an Eligible Parcel could have sold his or her parcel at some point during that time." Yet BP has already agreed in a joint letter to Mr. Juneau from Class Counsel and BP dated July 10, 2012 "there is no requirement in the Wetlands Framework that an individual must be named on the tax bill in order to be eligible for compensation." See Section I. Proof of Wetlands Parcel Ownership (memo previously provided by BP in its February 7, 2013 response to Class Counsel's January 31, 2013 memo). Indeed both parties as well as the Claims Administrator and his assorted experts, have admitted that one cannot legally rely on tax assessments in Louisiana to prove ownership.   Under the framework eligibility turns on ownership and ownership turns on possession of a deed, a judgment of possession, or other title-conveying document—*not a tax assessment*. [2]

BP is correct when it says: "the Wetlands Framework, specifically contemplates situations in which an owner of a Eligible Parcel sold his or her parcel during the eligible time frame.  In such a case, where there are two owners of an Eligible Parcel that each own it for different time periods, the Framework provides that the "Wetlands Real Property Compensation Amount shall be allocated based on the period of legal

---

of Eligible Parcels during the time period April 20, 2010 to [the date of the Settlement Agreement]."  Importantly, however, Class Counsel *never consented* to the Claims Form or the Instructions Booklet being modified to include the 2011 Tax Assessment as a *required* document.  Rather this change was made on an ex parte basis, via Saturday morning conference call, with only Brown Greer and BP attending.  Please see attached email, Exhibit 1.

[2] Additionally, BP's concern about a claimant having sold their parcel is best answered by examination of a deed or other title documents

2

possession of the particular Eligible Parcel by each Eligible Claimant between April 20, 2010, and [April 18, 2012]."

However it is not "necessary for Settlement Facility to review the 2011 property tax assessment notice to determine whether, and during what time period, a claimant owned an Eligible Parcel," as any change in ownership would be indicated via examination of title. BP's stated goal of "paying the right claimant and [preventing] double payment" is not answered by requiring the 2011 property tax notice.

In any event, Class Counsel has no objection to the Claims Administrator independently procuring the 2011 notice if, *in the Claims Administrator's discretion*, the Claims Administrator deems review of such a notice to be informative. However, per its previous proposal as to the use the of the 2011 tax assessment by the Claims Administrator, in no way should the Claims Administrator's review of this non-required document delay, impede, or otherwise impair processing of wetlands claims.

Accordingly Class Counsel would urge the Claims Administrator to take heed of the parties' previous joint request, per their July 10, 2012 joint submission, wherein reviewers are to be instructed ". . . that they *do not require* that a claimant be named on the tax bill in order to be eligible for compensation and that they *do not deny a claim* solely on the basis that a claimant is not listed on the property tax assessment or deed." See Section III. 1 (emphasis added).

Class Counsel would similarly urge adoption of its previous proposal on this issue per its January 31, 2013 submission to the Claims Administrator.

**B. Class Counsel's Response to BP's January 31, 2013 Proposal re: Usufructs**

BP has taken the position that both Naked Owners and Usufructuaries are class members, owners, and unless otherwise excluded, both qualify as eligible claimants under the Settlement Agreement. See Exh. 12A, Section 1.A. Although BP considers both to be eligible claimants, BP submits that Usufructuaries have the superior claim for compensation. Specifically, Usufructuaries should get paid over Naked Owners. The Usufructuary would then be subject to any duties and obligations to the Naked Owner arising under Louisiana state law that payment would create. Put another way, BP would have the Claims Administrator pay the Usufructuary with the Naked Owner's recourse for compensation being state law claims against the Usufructuary.

To support its position, however, BP does *not* rely on the LeBreton memo dated January 9, 2013 and subsequently adopted by the Claims Administrator. Rather, BP locates this authority in Section 2.E.ii of the Wetlands compensation framework. BP argues that under the Framework, any money owed on an eligible parcel would be pro-rated as between Naked Owner and Usufructuary, depending on the time each claimant

3

was in "legal possession" of the parcel. Importantly the term "legal possession" is not defined in the agreement.

BP further proposes that the Claims Administrator seek an Order from the Court validating BP's approach.

Class Counsel has the following concerns with the position taken by BP relating to claims of Usufructuaries and Naked Owners:

1.  Class counsel notes a contradiction in BP's position as to what law should apply. In the first instance BP wants the Settlement Agreement to control whom the Claims Administrator should pay, and now seeks a Court order to that effect. However, in the second instance, BP points to Louisiana state law in its argument about the recourse available (if any) to the Naked Owner. BP argues that Louisiana state law implicitly protects any claims of the Naked Owner as against the holder of the usufruct in that the Usufructuary would still be subject to any duties and obligations under state law it owes to the Naked Owner, including an accounting, etc. See LeBreton memo, pp. 6-8.[3]

Thus, in a situation where a Naked Owner files a claim on a property, but the Usufructuary never does, this proposal by BP would mean the property claim would go completely uncompensated. Class Counsel finds this possibility unacceptable since, under the terms of the Settlement Agreement, and, as admitted by BP, the Naked Owner is also an "owner." If, as BP argues, the terms of the Settlement Agreement alone apply (and not state law), then a Naked Owner's claim should be compensable on its face and pursuant to the explicit terms of the Settlement Agreement, as the settlement language clearly envisions compensation going to "owners," naked or otherwise.[4]

---

[3] Class counsel notes that while Louisiana law may indeed provide rights and remedies as between the Naked Owner and his usufructuary, it says nothing of protecting the rights and remedies of a Naked Owner as to BP.

[4] In some cases, the only way a Usufructuary may be identified is through proactive research by Rose Lebreton or her team. Class Counsel believes that this exceeds her mandate to determine ownership of title and deny payment to otherwise compensable wetlands property. While the Settlement Agreement provides "[t]he Claims Administrator shall determine whether an Eligible Claimant(s) is the owner of an Eligible Parcel," see Exhibit 12A, Section 1.A.i., class counsel submits that the scope of this authority was intended to be strictly limited to making "ownership" determinations as opposed to "possession" determinations. Similarly Class Counsel also objects to the contention in the LeBreton memo of January 9, 2013 wherein it is stated that in the absence of a term being defined, authority vests in the Claims Administrator to determine the meaning of the term. See LeBreton memo, page 2, Section IV.

While class counsel does not advocate double recovery, we certainly advocate for compensable claims being paid – whether to a Naked Owner with an absent usufruct, or to a usufruct, or some combination thereof.

Class Counsel does not know what constitutes "legal possession" as used in the Settlement Agreement. BP now seeks to rely on this term to pay only usufructuaries. The LeBreton memo does not address this issue, but instead focused on the fact that they are both types of ownership under Louisiana law, and the rights and remedies between them.

2. An important component of compensation is the RTP multiplier applied to wetlands payments. This multiplier compensates for, among other things, the risk of future damages. Class Counsel has concerns with paying a usufructuary for damages that may arise after the termination of the usufruct and thus would rightfully belong to the Naked Owner.

Class Counsel also has concerns for the Class as a whole as a result of BP's proposal. Class Counsel does not see how a Usufructuary can release the claims of a Naked Owner. Again, BP argues that both the usufructary and the Naked Owner are class members and have claims. Thus Class Counsel believes, at a minimum, unless a Naked Owner is on the release, their claims are reserved and not impaired. Correspondingly if, as BP asserts, a Naked Owner is *not* entitled to wetlands compensation through the Settlement, then they are *not* in class and their claims are *reserved*.

For the foregoing reasons, Class Counsel has significant reservations with involving the Court at this stage, and does not support a Court Order. Instead we would rely upon the discretion and informed decisions of the Claims Administrator in handling payments on these claims.