UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BP EXPLORATION & PRODUCTION, INC. and BP AMERICA PRODUCTION COMPANY | * * | NUMBER 13-0492 |
| Plaintiffs | * * | SECTION J |
| versus | * * | |
| | * | JUDGE BARBIER |
| DEEPWATER HORIZON COURT SUPERVISED SETTLEMENT PROGRAM; and PATRICK A. JUNEAU, in his official capacity as Claims Administrator of the *Deepwater Horizon* Economic and Property Damages Settlement Agreement, and in his official capacity as Trustee of the *Deepwater Horizon* Economic and Property Damages Settlement Trust, Defendants. | * * * * * * * * * * | MAG. JUDGE SHUSHAN |

**********************************************

**COMPLAINT IN INTERVENTION**

Plaintiff in Intervention, Gulfcoast Ultrasound Institute, Inc., ("GUI", "Claimant" or "Plaintiff in Intervention"), hereby files this Complaint in Intervention against (i) BP Exploration & Production, Inc. ("BPXP") and (ii) BP America Production Company ("BP America") (collectively "BP" or "BP Defendants in Intervention").

**INTRODUCTION**

1. On or about November 1, 2012, Claimant GUI, which is located at 4615 Gulf Blvd., Ste. 205, St. Pete Beach, Florida, filed a business economic loss claim with the Deepwater Horizon Economic and Property Claims Facility;

2. The Claimant is a Zone A Claimant within the meaning of the First Amended Settlement Agreement in MDL # 2179, In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010;

1

3. On February 13, 2013 the Claims Facility issued an Eligibility Notice, determining that the Claimant had satisfied the requirements of the Settlement Agreement, and awarded the Claimant a Compensation Amount of $435.181.51;

4. On February 26, 2013, prior to the Claimant entering a response to the above Eligibility Notice, the undersigned counsel received a "Notice of BP Appeal," indicating that the BP Defendants in Intervention did not agree with the Settlement Authority's Eligibility Determination. Pursuant to the Notice, the sole reason asserted for the Appeal is an alleged "Calculation Error(s)", which is (presumably) more fully explained in the second paragraph of the Notice, labeled "BP Comment," which states as follows:

> As the basis for the appeal, BP states that it appears that there are significant inconsistencies and anomalies in the financial data provided by the claimant. BP requests that the inconsistencies be resolved and the claim reevaluated. In addition, there are a number of questions and issues regarding trends and financial data that impact the calculation and require resolution. Finally, BP submits that the Compensation Amount was incorrectly calculated. The determination misclassified certain variable expenses and payroll expenses as fixed expenses. The determination should be revised to correct these errors. (*Notice of Appeal, page 1*).

5. On January 15, 2013 the Claims Administrator, Mr. Patrick Juneau, issued a policy decision interpreting certain portions of the Economic Settlement Agreement, and thereby establishing the current terms of the Economic and Property Damage Settlement Agreement as it applies to the calculation of "Variable Profit" for Business Loss Claims. This is the independent, neutral and correct interpretation of the Claims

Administrator. *See* Claims Administrator's ANNOUNCEMENT OF POLICY DECISION (Jan. 15, 2013);

6. The BP Defendants in Intervention then moved the Court to review and reverse that decision, and on March 5, 2013, Judge Barbier denied that motion. *See PACER, 2:10-md-2179-CJB-SS, Rec. Doc. No. 8812*;

7. Claimant notes that BP has intentionally ignored the Court's March 5, 2013 Order in filing its appeal. In BP's Initial Proposal Regarding Claim No. 97490 at Footnote 1, BP specifically stated, "BP is aware of the Court's Order of March 5, 2013. BP respectfully disagrees with this decision and continues to believe that the current implementation of the agreement by the Claims Administrator is contrary to its terms, contrary to fundamental principles of economics and accounting, and contrary to common sense. BP will pursue all available legal options (including all rights of appeal) to challenge this decision and therefore files this brief based on its good-faith belief that the Order is in error and should be reversed."

8. The issues addressed in the Policy Decision, and the issues addressed in the Claimant's Appeal are identical; and,

9. BP's current posture is diametrically opposed to its previous assurances, given to the Court during the litigation and at the Fairness Hearing, replete with supporting expert declarations, stating that: (i) the zones included in the economic loss zone maps logically and reasonably reflect the likelihood of a potential economic effect from the Oil Spill; (ii) the causation tests are objective, reasonable, and consistent with economic reality; (iii) once a claimant meets these objective causation tests, all losses are presumed to have been caused by the Oil Spill with no further inquiry into whether the

declines were due to other non-Oil Spill causes; (iv) the BEL frameworks are consistent with standard business practices in assessing financial losses related to an incident; and (v) The BEL frameworks are based on documents maintained by businesses in the ordinary course.

## I. PARTIES

### A. Plaintiff in Intervention

10. Plaintiff in Intervention, GUI, is a Florida corporation with its principal place of business in St. Pete Beach, Florida and is also a claimant in the Deepwater Horizon Economic Settlement program;

### B. Defendants in Intervention

11. The Defendant in Intervention, BP Exploration & Production Inc., is a Delaware corporation with its principal place of business in Warrenville, Illinois. It is a party to the Settlement Agreement;

12. The Defendant in Intervention, BP America Production Company, is a Delaware corporation with its principal place of business in Houston, Texas. It is a party to the Settlement Agreement;

## II. JURISDICTION AND VENUE

### A. Subject Matter Jurisdiction

13. This Court has subject-matter jurisdiction under several provisions of federal law;

14. The district Court may render declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 2000b *et seq*;

15. The district Courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1131. This action asserts claims, based on federal laws, which arise directly from the Settlement Agreement, and which resolved the underlying federal claims;

16. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, as all plaintiffs are diverse from all defendants and the amount in controversy substantially exceeds $75,000;

17. Jurisdiction also exists in this Court pursuant to 28 U.S.C. § 1333, which provides that the district courts shall have jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." Because the underlying claims resolved by the Settlement Agreement were maritime in nature, for jurisdictional purposes, the Settlement Agreement provides that it shall be interpreted "in accordance with General Maritime Law as well as in a manner intended to comply with [the Oil Pollution Act]." *See* Settlement Agreement (Att. A) ¶ 36.1. The Settlement Agreement is accordingly a maritime contract. This action — which alleges, inter alia, breach of such a maritime contract — arises under maritime law, including under the Admiralty Extension Act. See 46 U.S.C. § 30101(a);

18. Rule 9(h) Election: The claims presented herein are admiralty or maritime claims within the meaning of Rule 9(h). Plaintiff in Intervention hereby designates its claims herein as admiralty or maritime claims pursuant to Rule 9(h) and its interpretive advisory committee notes;

19. The Oil Pollution Act ("OPA"), 33 U.S.C. § 2717, provides that district courts "shall have exclusive original jurisdiction over all controversies arising under this

Act." Because the Settlement Agreement resolves claims arising under OPA and must be interpreted in a manner that complies with OPA, *see, e.g.*, Settlement Agreement ¶ 36.1, this controversy arises under OPA and therefore falls within the original jurisdiction of the district courts;

20. The Outer Continental Shelf Lands Act ("OCSLA") provides that district courts shall have "jurisdiction of cases and controversies arising out of, or in connection with . . . any operation conducted on the Outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the Outer Continental Shelf, or which involves rights to such minerals." 43 U.S.C. § 1349(b)(1). This case arises out of exploratory operations on the Outer Continental Shelf because the claims resolved by this Settlement Agreement would not have arisen but for those exploratory activities;

### B. Venue

21. Venue is proper in this District under 33 U.S.C. § 2717(b) and 43 U.S.C. § 1349(b)(1). Fundamentally, the Settlement Program was created, and the Claims Administrator was appointed, to administer the settlement of a lawsuit that was filed in this judicial district and that remains under the administration of the Honorable Judges who preside in this judicial district. Additionally, damages from the Deepwater Horizon Incident occurred within this District. Moreover, this District is the closest to the area on the Outer Continental Shelf where the Incident occurred, leading ultimately to the settled claims at issue. Claims Administrator Juneau's administration of the Settlement Agreement occurs, in part, within this District and the Settlement Program is located and

operates within this District. Also, the Settlement Agreement was principally negotiated and signed in this District;

### III.     FACTUAL ALLEGATIONS

22.     On April 20, 2010, following a loss of well control at the Macondo well in the MC 252 block in the Gulf of Mexico, an explosion and fire aboard Transocean's drilling rig Deepwater Horizon set in motion a chain of events that tragically caused loss of life and injuries to persons aboard the rig, and also resulted in an oil spill lasting for nearly three months;

23.     On August 10, 2010, the Judicial Panel on Multidistrict Litigation centralized in this District all spill-related federal actions, excluding shareholder suits. The consolidated action is captioned "In re: Oil Spill by the Oil Rig 'DEEPWATER HORIZON' in the Gulf of Mexico, on April 20, 2010.";

24.     On October 19, 2010, the presiding Court organized the numerous cases centralized before it by creating pleading bundles for various claims brought by those claiming injury due to the explosion, the ensuing oil spill, and its aftermath. Among the pleading bundles was the "B1" bundle, encompassing all claims for economic loss and property damage. *See* MDL 2179 Rec. Doc. 569 (Oct. 19, 2010). The cases comprising the B1 bundle were the subject of hotly contested litigation between the parties. See MDL 2179 Rec. Doc. 8138 (Dec. 21, 2012) at 2;

25.     On March 2, 2012, BP and the Plaintiffs' Steering Committee ("PSC") informed the presiding Court that they had reached an Agreement in Principle to settle. A contract was thereafter entered into between Mr. Juneau as Claims Administrator of the Transition Process, BP, and Interim Class Counsel on April 9, 2012. *See* Undertaking of

Patrick Juneau in Furtherance of Court Order Appointing Him Claims Administrator (Att. E to Plaintiffs' Complaint). Under that contract, Mr. Juneau expressly agreed to "undertake the responsibilities of Claims Administrator as set forth in: (a) the Transition Order (and any amendments or modifications thereof); (b) the Agreement-in-Principle Regarding 'Deepwater Horizon' Economic Loss and Property Damages Settlement; (c) a final settlement agreement among the parties, should such agreement be finalized and filed and approved by the Court; and (d) as otherwise ordered by the Court." *Id.* ¶ 1. Mr. Juneau further agreed "that he will comply with all legal and ethical obligations related to his Court appointed role as the Claims Administrator." *Id.*; *see also id.* ¶ 8 ("This Undertaking shall inure to the benefit of and be binding upon Juneau, BP and Interim Class Counsel and shall not be assigned by either party without the prior written consent of the other party.");

26.  On April 18, 2012, BP and the PSC announced that they had reached a comprehensive class action settlement to resolve the vast majority of the private claims for economic loss and property damage arising out of the Deepwater Horizon spill — the Deepwater Horizon Economic and Property Damages Settlement Agreement. The agreement was amended on May 2, 2012;

27.  To facilitate the class certification associated with the Settlement Agreement, the PSC filed in April 2012 the lawsuit entitled <u>Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production Inc., et al.</u>, C.A. No. 12-970 (E.D. La.), which is the case in which the Settlement Agreement received final approval;

28. On May 2, 2012, the Bon Secour Court granted preliminary approval to the Settlement Agreement, preliminarily and conditionally certified the class for settlement purposes, and authorized notice to the class. *See* MDL 2179 Rec. Doc. 6418;

29. Consistent with the terms of the Settlement Agreement, the *Deepwater Horizon* Court Supervised Settlement Program commenced operations on June 4, 2012. BP agreed with the PSC to the start of operations and claims payouts before final approval was granted to the Settlement Agreement so as to facilitate the payment of legitimate claims as rapidly as possible;

30. On or about June 25, 2012, BP, Mr. Juneau, and Lead Class Counsel entered into an amendment to the April 9, 2012, "Undertaking," pursuant to which Mr. Juneau ceased being Claims Administrator of the Transition Process, became Claims Administrator of the preliminarily approved Settlement Agreement, and also assumed the role of Settlement Trustee of the Settlement Trust. See Supplement and Amendment to Undertaking of Patrick Juneau in Furtherance of Court Order Appointing Him Claims Administrator (Att. F to Plaintiffs' Complaint);

31. On December 21, 2012, the Bon Secour Court certified the class for settlement purposes only and granted final approval of the Settlement Agreement. See MDL 2179 Rec. Docs. 8138, 8139. Indeed, and importantly, the Court relied at least in part on the Declaration of John C. Coffee, Jr. where he states "the structural assurances of adequate representations and fair treatment in this case start with the fact that the liability of the BP Parties is uncapped under the Settlement Agreement." Coffee Decl. Pg. 6, (Doc. 7110-3). Furthermore, in support of the approval of the Settlement Agreement,

BP's own lawyer, Mr. Godfrey, touted, *inter alia*, both the Settlement itself and Professor Coffee, in glowing terms, as excerpted herein below:

   1.   "BP agreed, after months of intense, indeed brutal negotiations around the clock . . . to enter into two comprehensive and historic settlement agreements designed to fairly and generously compensate the legitimate claims of those who were injured as a result of the oil spill in this tragic casualty." *Transcript of Fairness Hearing*, pg. 50, lines 2-8;

   2.   "It is a good thing not only for the claimants and for the communities of the Gulf Coast states, but it is good for our system of justice, for BP is committed to this principle." *Id.,* pgs. 50-51, lines 23-25, 1;

   3.   "As the economic loss and property damages settlement makes clear, BP has no intention in this case of allowing justice to be delayed, much less denied . . . ." *Id.,* pg. 51, lines 2-5;

   4.   "… in reaching [the Settlement Agreement] we did one thing also that was unusual … we also went out and retained the nation's leading legal experts, Professors Coffee, Miller, Klonoff and Issacharoff." *Id.,* pg. 52, lines 4-10.

   5.   "The data supports the approval . . . ." *Id.,* pg. 55, line 1;

   6.   "The non-seafood portion of the settlement is uncapped." *Id.,* pg. 55, lines 6-7;

   7. "There are very few valid opt-outs . . . [and the opt-outs and objections filed by Attorney Coon, which total approximately twenty percent (20%) of all opt-outs and objections, are] "not a valid opt-out, doesn't count . . . [and] those objections don't count either. They are not valid objections" because they ostensibly did not comply with "the Court's Order [which] specified what you have to do to object" or opt out, referring to "[t]he Court's Orders[1], Preliminary Approval Order, Paragraph 38 and 39 . . . ." *Id.,* pg. 73, lines 11-22;

   8. "The Court set the rights [lawyers and claimants have] under the Court's Order . . . [and neither the lawyers nor the parties] have the option of ignoring the Court Order." *Id.,* pg. 74, lines 3-5, 13-14.

The statements made by BP's lawyer regarding the settlement and Professor Coffee's assertions were made to induce the Court to approve the Settlement Agreement, but in what can only be seen as an exercise of ultimate hypocrisy, the BP defendants in Intervention now seek to specifically ignore the terms of the very Court Order approving the Settlement they so glowingly praised a scant few months ago;

   32. On January 15, 2013 the Claims Administrator Pat Juneau issued a policy decision interpreting certain portions of the Economic Settlement Agreement, and thereby establishing the current terms of the of the Economic and Property Damage Settlement Agreement as it applies to the calculation of "Variable Profit" for Business Loss Claims. This is the independent, neutral and correct interpretation reached by the

---

[1] Several objectors have filed appeals challenging these orders, which remain pending.

Claims Administrator. *See* Claims Administrator's ANNOUNCEMENT OF POLICY DECISION (Jan. 15, 2013);

33. BP then moved the Court to review and reverse that decision and on February 12, 2013 at the direction of the federal Court in New Orleans, the Claims Administrator placed a hold on the processing of Business Economic Loss ("BEL") claims from the construction, agricultural and professional services industries, pending the Court's ruling. On March 5, 2013 Judge Barbier denied BP's motion. As mentioned herein in Paragraph 7, BP has intentionally ignored the Court's March 5, 2013 Order in filing its appeal. *See PACER, 2:10-md-2179-CJB-SS, Rec. Doc. No. 8812*;

34. On March 15, 2013 the BP Defendants in Intervention filed suit against the Court Supervised Settlement Program, and Patrick A. Juneau, in his official capacity as Claims Administrator of that Program, in what, again, can only be seen as a display of ultimate hypocrisy. *See,* <u>BP Exploration, *et al*. v. *Deepwater Horizon* Court Supervised Settlement Program, *et al.*</u>, 2:13-cv-000492 (E.D. La.). That suit is nothing more than an attempt to circumvent the established appellate procedure via and improper "horizontal appeal." Plaintiff in Intervention, GUI, seeks leave to file this Complaint in Intervention in response to that improvidently-filed lawsuit;

**Causes of Action**

**I.     Declaratory Judgment**

35. The Plaintiff in Intervention, GUI, realleges, adopts, and incorporates by reference the above paragraphs as if fully set forth herein;

36. Case number 2:13-cv-00492 is nothing more than an attempt to circumvent the established appellate procedures to appeal the March 5th denial of the

motion to reconsider the previously issued Policy Interpretation. This is especially troublesome in light of BP's lawyers' own representations that the Settlement Agreement is fair, *inter alia*, because of the uncapped nature of various components of the fund. *Transcript of Fairness Hearing*, pg. 50, lines 2-8; pg. 55, lines 6-7;

37. As such, it should be declared null and void;

## II.   Injunctive Relief

38. The Plaintiff in Intervention, GUI, realleges, adopts, and incorporates by reference the above paragraphs as if fully set forth herein;

39. The Plaintiff in Intervention, GUI, suffers irreparable harm from the BP Defendants in Intervention's actions each day the Claims Facility is not processing and paying Plaintiff in Intervention, GUI's, claims;

40. The Plaintiff in Intervention, GUI, is likely to succeed on the merits of this cause as Judge Barbier has already ruled on the issue, and that ruling favors Plaintiff in Intervention, GUI;

41. The equities favor an injunction against the BP Defendants in Intervention;

42. Not granting an injunction would continue to severely and irreparably harm the Plaintiff in Intervention, GUI, as it will continue to be denied the relief it deserves, which is provided in the Settlement Agreement, and bargained for by the BP Defendants in Intervention of this action, and the Plaintiffs' Steering Committee; and,

43. An injunction would serve the interest as the public, especially those residing within the Eastern District of Louisiana, as well as the rest of the Gulf Coast, as

they have an interest in the vindication of their rights against BP for causing wide-spread destruction which followed the April 20, 2010 Oil Spill.

### III.  Specific Performance

44.     The Plaintiff in Intervention, GUI, realleges, adopts, and incorporates by reference the above paragraphs as if fully set forth herein;

45.     The Settlement Agreement, as interpreted in accordance with the Claims Administrator's ANNOUNCEMENT OF POLICY DECISION (Jan. 15, 2013), is a valid contract to which the Plaintiff in Intervention, GUI, and the BP Defendants in Intervention are both bound, the Plaintiff in Intervention, GUI, has satisfied all its obligations under the Settlement Agreement by performance or by tendering performance, the BP Defendnats in Intervention have breached the Settlement Agreement, and the Plaintiff in Intervention, GUI, has sustained injury and then damaged as a result of the BP Defendnats in Intervention's breach(es);

46.     Additionally, the Plaintiff in Intervention, GUI, is and has always been in compliance with the terms of the Settlement Agreement, and it was (and is) ready, willing and able to perform at all relevant times;

47.     Any damage remedy, which is separate and apart or otherwise distinct from the damage remedy the Plaintiff in Intervention, GUI, is entitled to under the Settlement Agreement, would be insufficient to restore the Plaintiff in Intervention, GUI, to the position it rightfully enjoyed and is entitled to, which existed prior to the BP Defendants in Intervention's breach(es), because the Plaintiff in Intervention, GUI, is entitled to the Compensation Amount awarded to it in the Eligibility Notice, pursuant to the Claims Administrator's reasonable and proper interpretation; and,

48. Because any separate damage remedy would be insufficient, it would not provide a legally tenable substitute to the BP Defendants in Intervention's specific performance.

**WHEREFORE**, the Plaintiff in Intervention, GUI, respectfully requests the following relief from the Court:

A. Declare case action number 2:13-cv-00492 null and void;

B. Enjoin the BP Defendants in Intervention from any further or different attempts, now or at any time in the future, to circumvent the established appellate procedures in an attempt to improperly reverse Judge Barbier's March 5th denial of BP's motion to reconsider Mr. Juneau's previously-made policy interpretations;

C. Order the BP Defendants in Intervention to process payments in the Claims Facility in accordance with all policy interpretations made by the Claims Administrator;

D. Order the specific performance of the Settlement Agreement by the BP Defendants in Intervention in accordance with the Claims Administrator's ANNOUNCEMENT OF POLICY DECISION (Jan. 15, 2013);

E. Grant such other relief as the Court may deem just and proper.

THE PENTON LAW FIRM
209 HOPPEN PLACE
BOGALUSA, LOUISIANA  70427
PHONE        :        (985) 732-5651
FAX             :        (985) 735-5579
E-MAIL       :        fedcourtmail@rgplaw.com

KUYKENDALL & ASSOCIATES, LLC
23937 U.S. HIGHWAY 98, SUITE 3
FAIRHOPE, ALABAMA  36532
PHONE        :        (251) 928-4008
FAX             :        (205) 453-0042
E-MAIL       :        rkuykendall@att.blackberry.net

WILLIAMS KHERKHER
8441 GULF FREEWAY, SUITE 600
HOUSTON, TEXAS  77107-5051
PHONE        :        (713) 230-2200
FAX             :        (713) 643-6226
E-MAIL       :        aeasterby@williamskherkher.com


s/Ronnie G. Penton
Ronnie G. Penton (#10462)
Trial Counsel for Plaintiff in Intervention, GUI

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve, in accordance with Pretrial Order No. 12, and the foregoing was also electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this the 22nd day of March, 2013.

                                                s/Ronnie G. Penton
                                                Ronnie G. Penton