**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| **IN RE:** | **OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010** | * | **MDL NO. 2179** |
| | | * | **SECTION J** |
| | | * | **JUDGE BARBIER** |
| | | * | **MAG. JUDGE SHUSHAN** |

**************************************************************************

**THIS DOCUMENT RELATES TO:**
***Civil Action Number 13-0492 "J"***

**MEMORANDUM OF LEGAL AUTHORITY IN SUPPORT OF MOTION TO INTERVENE**

THE PENTON LAW FIRM
209 HOPPEN PLACE
BOGALUSA, LOUISIANA 70427
PHONE : (985) 732-5651
FAX : (985) 735-5579
E-MAIL : fedcourtmail@rgplaw.com

KUYKENDALL & ASSOCIATES, LLC
23937 U.S. HIGHWAY 98, SUITE 3
FAIRHOPE, ALABAMA 36532
PHONE : (251) 928-4008
FAX : (205) 453-0042
E-MAIL : rkuykendall@att.blackberry.net

s/Ronnie G. Penton
Ronnie G. Penton (#10462)
Trial Counsel for Intervenor

# TABLE OF CONTENTS

Table of Authorities........................................................................3-5

Memorandum in Support of Motion to Intervene.........................................6-19

I. INTRODUCTION............................................................................6-7

II. FACTS..........................................................................................7-8

III. LAW AND ANALYSIS.................................................................9-19

A. FRCP 24 Intervenor Has a Right/Should Be Allowed To Intervene..........................................................................10

1. Intervenor Has a Right to Intervene FRCP 24(a)(2).........................................................11

a. Timeliness...................................................11-13

b, Intervenor Has a Direct And Substantial Interest.........................................................13-14

c. The Outcome of This Suit Could Impair Intervenor's Ability to Protect Its Interest.....15-16

2. Intervenor's Interests Are Not Adequately Represented..............................................................16

3. Intervenor and BP Have Different/Adverse Interests.17-18

B. Alternatively, Rule 24(b) Intervention Should be Granted....18-19

IV. CONCLUSION...................................................................................19

Certificate of Service.........................................................................20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*American Nat'l Bank & Trust Co. of Chicago v.* Bailey, 750 F.2d 577, 585 (7th Cir. 1984)....................10

Atlantis *Development Corp. v. United States*, 379 F.2d 818 (5th Cir. 1967). 17

*Clark v. Putnam County*, 168 F.3d 458 (11th Cir. 1999)....................17

*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996)....................10, 13, 16

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995)....................15

*Fund for Animals v. Norton*, 322 F.3d 728 (D.C. Cir. 2003)....................15

*Haspel, et al v. Board of Comm'rs of the Orleans Levee District,* 493 F.3d 570, 577-580 (5th Cir. 2007).................... 11

*Int'l Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978)....................11

*John Doe No. 1 v. Glickman*, 256 F.3d 371 (5th Cir. 2001)....................12, 13, 17

*Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987)....................18

*Lake Investors Dev. Group v. Egidi Dev. Group*, 715 F.2d 1256, 1258 (7th Cir. 1983)....................10

*McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)....................12

*Natural Res. Def. Council v. Nuclear Regulatory Comm'n,* 578 F.2d 1341 (10th Cir. 1978).................... 15

*Newby v. Enron Corp.*, 443 F.3d 416, 424 (5th Cir. 2006)....................18

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452, 463 (5th Cir. 1984)....................11

*Olden v. Hagerstown Cash Register, Inc.*, 619 F.2d 271 (3rd Cir. 1980).......10, 14

*Oneida Indian Nation v. New York*, 732 F.2d 261,265 (2nd Cir. 1984)..........10

*Ross v. Allstate Tex. Lloys Ins. Co.*, 127 S.Ct. 1125 (2007)..........................10

*Ross v. Marshall*, 426 F.3d 745, 753-54 (5th Cir. 2005)...........................10, 14

*San Juan County v. U.S.*, 503 F.3d 1163 (10th Cir. 2007)............................14

*Sanguine, Ltd. v. United States Department of Interior*, 736 F.2d 1416 (10th Cir. 1984)..........................................................................................15

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994)........................10, 11, 12, 13, 16

*Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001)..........................................................................................10

*Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977)........................11, 12-13

*Trans Chem. Ltd. v. China Nat'l Mach. Import and Export Corp.*, 332 F.3d 815, 822 (5th Cir. 2033)................................................................ 18

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1971)..............................14, 16

*United States v. AT&T*, 642 F.2d 1285, 1291 (D.C. Cir. 1980)......................10

*United States v. Carpenter*, 298 F.3d 1122 (9th Cir. 2002)...........................14

*United States v. Union Electric Co.*, 64 F.3d 1152, 1158 (8th Cir. 1995)..... 10

**FEDERAL RULES**

Fed.R.Civ.P.24..........................................................................................19

Fed.R.Civ.P.24(a)......................................................................................10, 18

Fed.R.Civ.P.24(a)(2)..................................................................1, 14, 15, 16

Fed.R.Civ.P.24(b)......................................................................................10, 18

Fed.R.Civ.P.24(b)(1)(B)................................................................... 18

Fed.R.Civ.P.24(b)(3)......................................................................... 18

**MISCELLANEOUS**

7A.C. Wright & A. Miller §1908, 515-517 (3rd ed.) .....................................17

7C Wright & Miller §1909 (3rd ed.) ..............................................................15

*Cracking Down on Settlement Agreement Appeals*, Kirkland & Ells Website Publication, May 17, 23007 ..............................................................6

Moore's Federal Practice 3D § 24.03[2][c] ..................................................14

Note, The Requirements of Timeliness Under Rule 4 of the Federal Rules of Civil Procedure, 37 Va. L.Rev. 863, 867 (1951) ........................................... 12

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

**MAY IT PLEASE THE COURT:**

**NOW COMES** Gulfcoast Ultrasound Institute, Inc. ("GulfCoast" or "Intervenor"), who respectfully submits that it is entitled, as a matter of law, or alternatively, should be permitted, to intervene herein.

## I. INTRODUCTION

In this improvidently-filed lawsuit (EDLA Docket No. 13:0492), plaintiffs (who are BP defendants in the main action: EDLA Docket No. 10-md-2179) seek to do what they are not permitted by law or court Order to do; namely, appeal horizontally.[1] As shown below, the relevant operative facts are straightforward. The BP defendants (plaintiffs herein), after several unsuccessful attempts to circumvent their obligations of the Settlement Agreement, decided not to take a third direct stab at avoiding the Court's March 5, 2013 Order, *see PACER, 2:10-md-2179-CJB-SS, Document Number 8812*, and instead filed a separate and new action. *See PACER, EDLA 2:13-cv-00492, Document Number 1*. This new lawsuit seeks, among other things, to enjoin the Settlement Program and its Claims Administrator, Patrick Juneau, and thus bypass established legal precedent of the United States District Court and the U.S. Fifth Circuit. The BP Defendants now seek relief from a new Section of this Court, in a new lawsuit seeking injunctive and declaratory relief from the Court's March 5, 2013 Order, which alleges a new cause of action, ignores the previous agreed-upon method of resolution in the Settlement Agreement, ignores proper practice and procedure before the MDL Court, and ignores

[1]Unsurprisingly, this novel and abusive practice is without significant support, except for an article authored by one of the defendants' main law firms in this matter. Article, *Cracking Down On Settlement Agreement Appeals*, Kirkland & Ellis Website Publication, May 17, 2007, *passim*.

this Court's March 5, 2013 Order, *see PACER, 2:10-md-2179-CJB-SS, Document No. 8812*, specifically addressing the issues the BP defendants now assert in this matter.

## II. FACTS

1. On or about November 1, 2012, Gulfcoast Ultrasound Institute, Inc. (sometimes herein after "the Claimant") which is located at 4615 Gulf Blvd., Ste. 205, St. Pete Beach, Florida, filed a business economic loss claim in the Deepwater Horizon Economic and Property Claims Facility;

2. The Claimant is a Zone A Claimant within the meaning of the First Amended Settlement Agreement in MDL # 2179, In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010;

3. On February 13, 2013 the Claims Facility issued an Eligibility Notice, determining that the Claimant had satisfied the requirements of the Settlement Agreement, and awarded the Claimant a Compensation Amount of $435.181.51;

4. On February 26, 2013, prior to the Claimant entering a response to the above Eligibility Notice, the undersigned counsel received a "Notice of BP Appeal," indicating that BP did not agree with the Settlement Program's Eligibility Determination. Pursuant to the Notice, the sole reason asserted for the Appeal is an alleged "Calculation Error(s)", which is (presumably) more fully explained in the second paragraph of the Notice, labeled "BP Comment," which states as follows:

> As the basis for the appeal, BP states that it appears that there are significant inconsistencies and anomalies in the financial data provided by the claimant. BP requests that the inconsistencies be resolved and the claim reevaluated. In addition, there are a number of questions and issues regarding trends and financial data that impact the calculation and require resolution. Finally, BP submits that the Compensation Amount was incorrectly calculated. The determination misclassified certain variable expenses and payroll expenses as fixed expenses. The determination should be revised to correct these errors. (*Notice of Appeal, page 1)*.

5. Meanwhile, on January 15, 2013, Mr. Juneau, in his official capacity as Claims Administrator, issued a policy decision interpreting certain portions of the Economic Settlement Agreement, which correctly interpreted the terms of the Economic and Property Damage Settlement Agreement as it applies to the calculation of "Variable

Profit" for Business Loss Claims. *See Claims Administrator's ANNOUNCEMENT OF POLICY DECISIONS (Jan. 15, 2013);*

6. BP then moved the Court to review and reverse that decision on February 3, 2013. *See Draft In Camera Motion For Reconsideration and Exhibits submitted to Magistrate Judge Shushan and Class Counsel (Feb. 3, 2013);*

7. On March 5, 2013 Judge Barbier denied that motion[2]. *See PACER, 2:10-md-2179-CJB-SS, Document Number 8812*;

8. The issues addressed in the Policy Decision, and the issues addressed in the Claimant's Appeal are identical; and,

9. It is important to note that the Settlement Agreement expressly contemplates a dispute resolution mechanism:

> 4.3.4. A three-person Claims Administration Panel shall be established consisting of the Claims Administrator, one representative designated by Lead Class Counsel and one representative designated by BP. Upon the request of any member of the Claims Administration Panel, it shall address and attempt to resolve unanimously any issues or disagreements that arise regarding the Claims Administrator's oversight responsibilities, Settlement administration, or any other issue involving the Settlement Program. Issues or disagreements that cannot be unanimously resolved by the Claims Administration Panel will be referred to the Court for resolution.

10. Set forth below are numerous averments, attestations and representations BP previously supplied the Court with argument and supporting expert declarations, stating that: (i) the zones included in the economic loss zone maps logically and reasonably reflect the likelihood of a potential economic effect from the Oil Spill; (ii) the causation tests are objective, reasonable, and consistent with economic reality; (iii) once a claimant meets these objective causation tests, all losses are presumed to have been caused by the Oil Spill with no analysis to determine whether the declines were due to other causes; (iv) the BEL frameworks are consistent with standard business practices in assessing financial losses related to an incident; and (v) The BEL frameworks are based on documents maintained by businesses in the ordinary course[3].

---

[2] The BP Defendants have also moved for Reconsideration, which Class Counsel has opposed.     Those Pleadings await resolution by the Court.

[3] *See generally*, Henley Decl. (Ex. 10) ¶ 16(a) ("For many categories of claimants the IEL Framework presumes causation."); Richardson Decl. (Ex. 16) ¶ 68 (similar); Fishkind Decl. (Ex. 4) ¶ 30-30(a) ("The causation requirements of the Economic Damage Claim Frameworks are transparent and consistent with

## III. LAW AND ANALYSIS

Intervenor respectfully submits that it is entitled, both as a matter of right and permissively, pursuant to Fed. R. Civ. Proc. 24, to intervene in this lawsuit, which Intervenor submits is little more than an attempt to circumvent this Court's March 5, 2013 Order, *see PACER, 2:10-md-2179-CJB-SS, Document Number 8812,* as that Order specifically addressed and resolved the very issues BP now seeks to improperly re-litigate in this proceeding. Either way, as shown below, Intervenor should be allowed to participate in this proceeding (either as an intervenor of right or by permission).

---

economic logic and data regarding the impact of the DWH Spill. The use of geographic and industry criteria to establish presumptions of causation for purposes of settlement is economically appropriate and promotes efficiency for both Claimants and claims administration."); Sharp Decl. (Ex. 18) ¶ 51 (describing the causation presumptions as "rational but generous"); Richardson Decl. (Ex. 16) ¶ 40 ("Because of the economic conditions of 2009, it benefits claimants to have the option of including 2007 and 2008 or 2008 in the benchmark years if it is to their advantage."). Depending on the location and/or industry in which the claimant was employed, and the amount of documentation provided, the claimant may be eligible for an RTP multiple of lost earnings. The RTPs "further assure[] that claimants with valid claims will be fully compensated." Henley Decl. (Ex. 10) ¶ 16(f); ." Henley Decl. (Ex. 10) ¶ 26; see also Fishkind Decl. (Ex. 4) ¶ 68 ("Consistent with well-established models for establishing economic loss damages, the Framework methodologies generally use pre-Spill benchmark period earnings or revenue data to project expected earnings or revenue in the post- Spill May-December 2010 period, taking into account any reasonably anticipated growth in revenue."); Richardson Decl. (Ex. 16) ¶ 45 ("The Business Economic Loss Frameworks are consistent with standard business practices in assessing any financial losses related to an incident."); Henley Decl. (Ex. 10) ¶ 30(c); accord Sharp Decl. (Ex. 18) ¶ 20 ("The Settlement Agreement provides options to the business claimant in the selection of its Benchmark Period that are more flexible and generous than what would usually be available in litigation."); Sharp Decl. (Ex. 18) ¶ 12 ("The required business documents are relevant to causation and damages analysis and are the types of documents that businesses must keep in the ordinary course of business, or are readily prepared and produced from a business' books and records."); Richardson Decl. (Ex. 16) ¶ 47 ("Given that companies routinely have this information available, it is reasonable to request it as a part of the Frameworks and should in no way exert an undue burden upon a business."); Fishkind Decl. (Ex. 4) ¶ 30(a) ("In particular, economic logic and available data support the Settlement's use of presumptions of causation for individuals and businesses located close to the tourist beaches, or that are located slightly further from the beach but involved in Tourism, Charter Fishing, and Seafood Distribution, because these industries are most likely to have been affected by the DWH Spill."); see also Landry Decl. (Ex. 13) ¶ 26 ("In general, the Zones are structured to reflect the fact that as distance increases from the coast, the likelihood of damage to tourism businesses is reduced."); id. ¶ 36 ("It is appropriate to consider industry type because certain industries are less likely to have been potentially affected by the Oil Spill."); Richardson Decl. (Ex. 16) ¶ 37; Fishkind Decl. (Ex. 4) ¶ 30(b) ("[I]t is economically reasonable to require Claimants located further from the Gulf and in industries economically less connected to the Gulf to establish that any losses they suffered were caused by the DWH Spill and not by other factors affecting the economy generally . . . ."); and, Richardson Decl. (Ex. 16) ¶ 37 ("[A]s distance increases from the coast, the likelihood of damage is reduced.").

**A. FRCP 24 – Intervenor Has A Right/Should Be Allowed To Intervene**

Fed. R. Civ. Proc. 24(a) allows certain interested parties to intervene as of right, and Fed. R. Civ. Proc. 24(b) allows for the permissive intervention of certain parties also. Although an intervenor must establish its right to intervene, *Olden v. Hagerstown Cash Register, Inc.*, 619 F.2d 271, 273 (3d Cir.1980), Rule 24 is to be construed liberally, and any doubts should be resolved in favor of the putative intervenor. *Oneida Indian Nation v. New York*, 732 F.2d 261, 265 (2d Cir.1984); *see also United States v. Union Electric Co.*, 64 F.3d 1152, 1158 (8th Cir.1995). The fact that an intervention applicant's claim ultimately fails does not affect his status at the time when he first appeared in the suit. *American Nat'l Bank & Trust Co. of Chicago v. Bailey*, 750 F.2d 577, 585 (7th Cir.1984).

"In evaluating the motion to intervene, the district court must accept as true the non-conclusory allegations of the motion and cross-complaint." *Lake Investors Dev. Group v. Egidi Dev. Group*, 715 F.2d 1256, 1258 (7th Cir.1983); *accord United States v. AT & T*, 642 F.2d 1285, 1291 (D.C.Cir.1980); *see also Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir.2001). The U.S. Fifth Circuit has also stated that the inquiry under Rule 24(a)(2) is to be flexible rather than a technical checklist and "should generally be allowed where no one would be hurt and greater justice could be attained." *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir.2005) (citing *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir.1996); *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir.2004)), *rehearing denied*, 456 F.3d 442 (5th Cir.2006), *cert. denied*, *Ross v. Allstate Tex. Lloys Ins. Co.*, 127 S.Ct. 1125 (2007).

**1. Intervenor Has A Right To Intervene – FRCP 24(a)(2)**

Fed. R. Civ. Proc. 24(a)(2) allows for intervention of right when an applicant can meet four requirements: namely, 1) the application for intervention must be timely; 2) the applicant must have an interest relating to the property or transaction which is the subject of the action; 3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and 4) the applicant's interest must be inadequately represented by the existing parties to the suit. *Haspel, et al v. Board of Comm'rs of the Orleans Levee District*, 493 F.3d 570, 577-580 (5th Cir. 2007); *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir.1984) (quoting *Int'l Tank Terminals, Ltd. v. M/V Acadia Forest,* 579 F.2d 964, 967 (5th Cir.1978)). Failure to satisfy any one requirement precludes intervention of right. *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir.1994). Intervenor respectfully asserts that it has, as shown below *in seriatim*, satisfied all four requirements.

**a. Timeliness**

The Fifth Circuit has set forth a four-factor analysis to determine whether a motion to intervene is timely: (1) the length of time that the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice that existing parties may suffer as a result of would-be intervenor's failure to apply for intervention as soon as he knew, or should have known, of his interest; (3) the extent of prejudice that would-be intervenor would suffer if his petition for leave to intervene is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. *Ross,* 426 F.3d at 753-54; *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th

Cir.1977).

The analysis is contextual, and the requirement is not a tool of retribution, but, rather, a guard to insure the original parties are not prejudiced by the failure to apply sooner. *Sierra Club v. Espy,* 18 F.3d at 1205; *McDonald v. E.J. Lavino Co.,* 430 F.2d 1065, 1074 (5th Cir.1970). "Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *John Doe No. 1 v. Glickman,* 256 F.3d 371, 375 (5th Cir.2001); *McDonald,* 430 F.2d at 1074 (quoting Note, The Requirements of Timeliness Under Rule 24 of the Federal Rules of Civil Procedure, 37 Va. L.Rev. 863, 867 (1951)).

There cannot be any legitimate dispute that this Motion is timely, as BP's offending Complaint against the Settlement Program and Mr. Juneau was filed less than a week ago, on March 15, 2013. Within that same time frame, Intervenor has obtained a copy of the offending Complaint, analyzed its contents, researched the apposite facts and law, and now files this Motion to Intervene within a week of BP's Complaint. To Intervenor's knowledge, the Settlement Program and Mr. Juneau have yet to file their Answers, and there are no motions pending in this case. The first factor militates in Intervenor's favor. *See Sierra Club v. Espy,* 18 F.3d at 1206 (holding that a motion was timely when the intervenors filed their motion less than three weeks after they learned that the defendant would not protect their interests).

Likewise, the second factor also militates in Intervenor's favor. The second factor is measured by the prejudice caused by applicant's delay, not by prejudice that may result if intervention is allowed. *Espy,* 18 F.3d at 1206. If the motion is filed promptly, there is no reason to believe that the status of the evidence and memories of the witnesses have changed such that the parties would be prejudiced by the intervention. *Stallworth,* 558

F.2d at 267. Here, with a "delay" of less than a week, it is highly unlikely that the status of the evidence, memories of the witnesses, or conditions of any of the litigants have changed such that BP would be prejudiced. Intervenor's Motion is timely as to factor two.

The third factor also devolves to a grant of Intervenor's Motion, as Intervenor will be prejudiced if its Motion to Intervene is denied. In evaluating whether the movant's interests are adequately represented, the court must take into account the legal rights associated with formal intervention, including briefing of issues, presentation of evidence, and the ability to appeal. *Espy*, 18 F.3d at 1207. Given that the Settlement Program and Mr. Juneau are neutral parties, Intervenor cannot, and should not be required to, rely solely on the Settlement Program and Mr. Juneau to protect Intervenor's interests, and BP certainly is adverse. Lastly, as to the fourth factor, Intervenor asserts that there are no unusual circumstances at issue here, and therefore, this factor weighs neither for nor against intervention. Intervenors respectfully submit that intervention at this nascent stage will not delay this action, nor will it otherwise prejudice the parties. Thus, the facts can only lead to one conclusion; this Motion to Intervene is timely. *See e.g. John Doe No. 1 v. Glickman*, 256 F.3d 371, 375-79 (5th Cir. 2001); *Sierra Club v. Espy*, 18 F.3d at 1206-1207.

**b. <u>Intervenor Has A Direct And Substantial Interest</u>**

"To demonstrate an interest relating to the property or subject matter of the litigation sufficient to support intervention of right, the applicant must have a direct, substantial, legally protectable interest in the proceedings." *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996). To meet this requirement, the applicant should have an interest "which the

*substantive law* recognizes as belonging to or being owned by the applicant[4]." *Ross*, 426 F.3d at 757. This test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* Additionally, courts may judge the interest requirement by a lenient standard if the case involves a substantial public interest. *See San Juan County v. U.S.*, 503 F.3d 1163, 1201 (10th Cir. 2007) (en banc) ("[T]he requirements for intervention may be relaxed in cases raising significant public interests."); Moore's Federal Practice 3D § 24.03[2][c].The existence of a substantial public interest can hardly be denied.

Intervenor also has a substantial interest in any settlement or decision that may result from this litigation, and that provides a basis for intervention of right under Rule 24(a)(2), as well. *See e.g., United States v. Carpenter*, 298 F.3d 1122 (9th Cir. 2002) (reversing a trial court's denial of a motion to intervene, and holding that intervention as of right existed to object to a proposed settlement that was contrary to the intervenors' interests and which was a substantial departure from the position that the defendant (BP in this case) maintained throughout litigation). Given that this lawsuit is primarily focused on the propriety of the Settlement Program and Mr. Juneau's claims handling process, and given that Intervenor has a claim pending within the Class Settlement that will be directly affected by whatever methodology the Settlement Program and Mr. Juneau utilize, one would be more than hard-pressed to truthfully contend that Intervenor has anything other than a direct and substantial interest in this litigation.

---

[4] As the Rule's plain text indicates, intervenors of right need only an "interest" in the litigation-not a "cause of action" or "permission to sue." *See* Fed.R.Civ.P. 24(a)(2). In *Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972), the Supreme Court concluded that the lack of a cause of action does not, in and of itself, bar a party from intervening. *Id.* at 537, 92 S.Ct. at 635-36; *see also Olden v. Hagerstown Cash Register, Inc.*, 619 F.2d 271, 274 (3rd Cir.1980) (assuming that the lack of a private right of action did not bar an insurer from intervening in a wrongful death action to protect its subrogation right)."

c. **The Outcome Of This Suit Could Impair Intervenor's Ability To Protect Its Interests**

An intervenor as of right must be "so situated that the disposition of the action *may* as a practical matter impair or impede the intervenor's ability to protect that interest. Fed. R. Civ. P. 24(a)(2) (emphasis added). The Court should "look to the "practical consequences" of denying intervention … ." *Fund for Animals v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003). Such an inquiry "is not limited to consequences of a strictly legal nature." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995) (*quoting Natural Res. Def. Council v. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)). Intervenor meets this standard.

Intervenor is a participant in the main class-action litigation, bearing Docket Number 2:10-md-2179, which obviously is a pending lawsuit related to the oil spill disaster. Intervening in the instant lawsuit will enable Intervenor to coordinate this litigation with the other various fronts of litigation, and thus ensure that conflicting or inconsistent results are not reached in the litigation. Because of the adverse interests of Intervenor and BP, and the neutral position of the Settlement Program and Mr. Juneau, Intervenor's interests would be impaired by this litigation, should such a novel and non-negotiated award calculation methodology be imposed, *post hoc*. *See Sanguine, Ltd. v. United States Department of Interior,* 736 F.2d 1416, 1419 (10th Cir.1984) (an applicant may meet the burden of showing inadequate representation by showing that the representative has an interest adverse to the applicant); 7C Wright & Miller § 1909 (3rd ed.) ("if all existing parties are adverse to the absentee, then there is no adequate representation").

Intervenor would undoubtedly be negatively affected if BP's newly-espoused methodology, which deviates from the methodology they previously touted in glowing terms, and to which BP voluntarily agreed after intense and protracted negotiations, were to be approved by the Court. Intervenor also has an interest in ensuring that any resolution of this matter adequately protects their interests, holds the responsible parties fully accountable for the injuries they caused to the natural resources of the Gulf of Mexico, and awards damages at a sufficient and acceptable level, as expected of BP prior to their filing of this litigation.

**2. Intervenor's Interests Are Not Adequately Represented**

Under Rule 24(a)(2), an intervenor as a matter of right must show that the existing parties to the litigation do not adequately represent its interests, but that burden is "minimal." *Trbovich*, 404 U.S. at 538 n.10; *Espy*, 18 F.3d at 1207. Although a presumption of adequate representation arises when the putative representative is a governmental body, that presumption is overcome when the applicant shows "that its interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it]." *Edwards*, 78 F.3d at 1005. A presumption of adequate representation also arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit, but that is overcome when the applicant shows "adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id*. Both of these presumptions do not apply to Intervenor in this case, and an application of these standards shows that the BP parties[5] do not adequately represent Intervenor's interests in this case.

[5] Likewise, it is not a foregone conclusion, nor beyond dispute, that the Settlement and/or Mr. Juneau are a governmental entity, and it is not a foregone conclusion, nor beyond dispute, that Intervenor and the

### 3. <u>Intervenor and BP Have Different/Adverse Interests</u>

It cannot be denied that Intervenor and the BP parties have different and/or adverse interests. Public relations palaver aside, the BP parties have an interest in paying as little as they can in the way of damages, and the Intervenor certainly wants to maximize its awards of damages. As such, it would be an understatement to say that the BP parties' interests are adverse to, and different from, the Intervenor's interests, and thus, the BP parties are not able to adequately represent the specific interests of the Intervenor. Similarly, the Settlement Program and Mr. Juneau are neutral parties that do not represent Intervenor (who has legal counsel independent from the PSC), and do not (and should not) have a specific "dog in this hunt", other than to dispatch their respective duties ethically and efficiently. *See Clark v. Putnam County*, 168 F.3d 458, 462 (11th Cir. 1999) ("A greater willingness to compromise can impede a party from adequately representing the interests of a nonparty.").

The existence of such differences is sufficient to establish that representation of Intervenor's interest by the BP parties (or even the Settlement Program/Mr. Juneau) would be inadequate. *See id; see also Glickman*, 256 F.3d at 380-81 (finding intervention of right and concluding that the representation was inadequate given the minimal burden of showing inadequate representation and the government's (Settlement Program/Mr. Juneau's) neutral nature and duty to fairly represent the broad public interest and overall functioning of the settlement/claims process, not just the interests of the Intervenor). *Cf. Atlantis Development Corp. v. United States,* 379 F.2d 818, 826-29 (5th Cir.1967); 7A C. Wright & A. Miller, *supra*, § 1908 at 515-17 (issues of fact and law that are common to

---

Settlement and/or Mr. Juneau have the same ultimate goal; the Settlement/Mr. Juneau are neutral parties and not advocates or representatives of the Intervenor.

the instant case and others and potential *stare decisis* effect support intervention of right). The adversarial relationship between Intervenor and the BP parties strongly militates in favor of intervention as of right.

**B. Alternatively, Rule 24(b) Intervention Should Be Granted**

For the reasons stated above, it is respectfully submitted that Intervenors are entitled to intervene as a matter of right pursuant to Rule 24(a). However, if for any reason this Court determines otherwise, Intervenor requests that it be permitted to intervene pursuant to Fed. R. Civ. P. 24(b)(1)(B). Under this rule, the Court may allow permissive intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3). Also, as "permissive intervention is within a district court's discretion," *Newby v. Enron Corp.*, 443 F.3d 416, 424 (5th Cir. 2006), it is "only subject to reversal if extraordinary circumstances so require." *Trans Chem. Ltd. v. China Nat'l Mach. Import and Export Corp.*, 332 F.3d 815, 822 (5th Cir.2003); *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir.1987).

Intervenor's claims have questions of law and fact in common with the instant litigation. The facts of these claims are described above and plead in Intervenor's concomitant Complaint in Intervention. Intervenor's intervention would very likely aid and enhance the Court's understanding of the underlying legal and factual issues and thereby assist the efficient resolution of this action. Further, Intervenor's intervention will

not unduly delay or prejudice the adjudication of the rights of the original parties. Therefore, allowing permissive intervention would be appropriate.

## IV. CONCLUSION

For the reasons set forth above, Intervenor respectfully submits that it has established sufficient grounds for the requested relief, and thus, also respectfully submit that this Court should grant this Motion to Intervene as a matter of right, or in the alternative, allow Intervenor to permissively intervene in this action.

THE PENTON LAW FIRM
209 HOPPEN PLACE
BOGALUSA, LOUISIANA 70427
PHONE : (985) 732-5651
FAX : (985) 735-5579
E-MAIL : fedcourtmail@rgplaw.com

KUYKENDALL & ASSOCIATES, LLC
23937 U.S. HIGHWAY 98, SUITE 3
FAIRHOPE, ALABAMA 36532
PHONE : (251) 928-4008
FAX : (205) 453-0042
E-MAIL : rkuykendall@att.blackberry.net

s/Ronnie G. Penton
Ronnie G. Penton (#10462)
Trial Counsel for Intervenor

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve, in accordance with Pretrial Order No. 12, and the foregoing was also electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this the 25th day of March, 2013.

s/Ronnie G. Penton
Ronnie G. Penton