**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | § | MDL No. 2179 |
| "DEEPWATER HORIZON" in the | § | |
| GULF OF MEXICO, | § | SECTION:  J |
| on APRIL 20, 2010 | § | |
| | § | JUDGE BARBIER |
| Applies to:    All Cases | § | |
| 2:10-cv-02771 | § | MAG. JUDGE SHUSHAN |
| | § | |
| | § | |

**HALLIBURTON ENERGY SERVICES, INC.'S**
**RESPONSE TO BP'S MOTION FOR SPOLIATION SANCTIONS AND**
**RELATED SUBMISSIONS OF THE PSC AND THE STATES**

# TABLE OF CONTENTS

I.     SANCTIONS ARE NOT ONLY INAPPROPRIATE, BUT UNWARRANTED AS THERE HAS BEEN NO DESTRUCTION OR SPOLIATION OF EVIDENCE..............4

     A.    There is No Basis for the Court to Reconsider its Prior Rulings............................5

     B.    HESI Has Not Spoliated or Destroyed Any Evidence.............................................6

          1.    HESI Satisfied its Preservation Obligations.................................................6

          2.    The Kodiak Blend Was Not Destroyed........................................................7

          3.    The Kodiak Blend is Irrelevant to these Proceedings. .................................8

     C.    There is No Evidence to Support A Finding of Culpability..................................9

          1.    HESI Has Not Acted in Bad Faith..............................................................10

          2.    Movants Have Failed to Show That They Have Suffered Any Prejudice. 11

II.    SHOULD THIS COURT FIND SANCTIONS APPROPRIATE, THE SANCTION MUST RELATE TO THE ALLEGED ABUSE...............................................................14

     A.    An Adverse Inference or Finding is Unwarranted.................................................15

     B.    Movants' Proposed Findings Have No Relation to Any Alleged Abuse or Harm.16

III.   SHOULD THE COURT FIND THAT HESI'S ACTIONS GIVE ANY APPEARANCE OF A DISCOVERY ABUSE, IN LIGHT OF THE DUE PROCESS CONCERNS RAISED BY THE MOTION, THE COURT SHOULD ALLOW AN EVIDENTIARY HEARING TO PROPERLY EVALUATE THE ISSUE...................................................19

IV.   HESI HAS NOT ACTED IN CONTEMPT OF ANY ORDER OF THIS COURT........21

HESI'S RESPONSE TO BP'S MOTION FOR SPOLIATION SANCTIONS AND
RELATED SUBMISSIONS OF THE PSC AND THE STATES

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Airlines, Inc. v. Allied Pilots Ass'n,*
  968 F.2d 523 (5th Cir. 1992) ...............................................................19

*Ashton v. Knight Transp. Inc.,*
  772 F. Supp. 2d 772 (N.D. Tex. 2011) ...................................................13

*Burlington Northern & Santa Fe Ry. Co. v. Grant,*
  505 F.3d 1013 (10th Cir. 2007) ............................................................13

*Chambers v. NASCO, Inc.,*
  501 U.S. 32 (1991).................................................................................19

*Condrey v. SunTrust Bank of Ga.,*
  431 F.3d 191 (5th Cir. 2005) ................................................................15

*Dorsey v. Acad. Moving & Storage, Inc.,*
  423 F. 2d 858 (5th Cir. 1970) .................................................................4

*Hinson v. Mich. Mut. Liab. Co.,*
  275 F.2d 537 (5th Cir. 1960) ................................................................21

*Horner v. Rowan Cos., Inc.,*
  153 F.R.D. 597 (S.D. Tex. 1994)...........................................................19

*Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee,*
  456 U.S. 694 (1982)...............................................................................16

*King v. Ill. Cent. R.R.,*
  337 F.3d 550 (5th Cir. 2003) ................................................................15

*Lamar Fin. Corp. v. Adams,*
  918 F.2d 564 (5th Cir. 1990) ................................................................20

*Morin v. Chevron U.S.A., Inc. et al.,*
  2012 U.S. Dist. LEXIS 81066 (E.D. La. June 11, 2012)...........................4

*Rogal, v. Am. Broad. Cos., Inc.,*
  74 F.3d 40 (3d Cir. 1996) .....................................................................19

*Silvestri v. Gen. Motors Corp.,*
  271 F.3d 583 (4th Cir. 2001) ................................................................14

ii

*Travelers Ins. Co. v. St. Jude Hosp.*,
  38 F.3d 1414 (5th Cir. 1994) ................................................................................................. 19

*United States v. United Mine Workers*,
  330 U.S. 258 (1947) .............................................................................................................. 20

*United States v. Wise*,
  221 F.3d 140 (5th Cir. 2000) ................................................................................................. 15

*Vick v. Tex. Employment Comm'n*,
  514 F.2d 734 (5th Cir. 1975) ................................................................................................. 15

*Yelton v. PHI, Inc.*,
  279 F.R.D. 377 (E.D.La. 2011) ........................................................................................ passim

*Zdanok v. Glidden Company-Durkee Famous Foods Div.*,
  327 F.2d 944 (2d Cir.) ............................................................................................................. 5

*Zubulake v. UBS Warburg LLC*,
  229 F.R.D. 422 (S.D.N.Y. 2004) ..................................................................................... 15, 16

HESI'S RESPONSE TO BP'S MOTION FOR SPOLIATION SANCTIONS AND
RELATED SUBMISSIONS OF THE PSC AND THE STATES

Halliburton Energy Services, Inc. ("HESI") respectfully submits this Response to BP Exploration & Production, Inc. and BP America Production Co.'s (together, "BP") Motion for Sanctions Relating to Halliburton's Destruction and Spoliation of Evidence and Memorandum in Support (Rec. Doc. 8977) (the "Motion"), the PSC's Submission Regarding Halliburton Spoliation Issues (Rec. Doc. 8979), and the States of Louisiana and Alabama's Submission Regarding Halliburton Spoliation Issues (Rec. Doc. 8991).

## SUMMARY OF THE RESPONSE

BP's Motion, which is the latest chapter in its book of finger pointing, seeks to create a mid-trial sideshow to divert attention away from its own egregious acts and omissions that caused the explosions on and the sinking of the *Deepwater Horizon*.  BP's Motion requests essentially a finding of negligent cement design for HESI's alleged "destruction" of evidence and failure to comply with subpoenas issued by the United States.  First, no evidence was destroyed - the Kodiak Blend[1] was preserved and the Court should deny the Motion on this basis alone. With respect to the subpoenas at issue, the United States, after working closely with HESI to identify and take possession of the relevant cement samples, raises no complaint with HESI's compliance.  *See* Rec. Doc. 8992.[2]  BP should not be allowed to complain about HESI's compliance with another party's subpoena; but even if the Court disagrees on this point, BP has not and cannot meet its burden to show that HESI has spoliated relevant evidence.  Accordingly, the Motion should be denied. If the Court is inclined to consider granting BP's requested relief,

---

[1] For purposes of this Response, the "Kodiak Blend" refers to a sample of dry cement blend retrieved from the *Deepwater Horizon* on December 27, 2009 while it was over the Kodiak Well that was labeled as "Kodiak Appraisal" material and electronically logged into HESI's Broussard lab on February 23, 2010.  The "Macondo Blend" refers to a sample of dry cement blend retrieved from the *Deepwater Horizon* on or about April 1, 2010 for the operational testing for the production casing.

[2] The United States, the actual party that issued the subpoenas, argues that the factual findings requested by BP, the PSC, and the States "are factually incorrect and prejudice – for BP's benefit – parties other than Halliburton . . . " Rec. Doc. 8992 at p. 1.

1

HESI'S RESPONSE TO BP'S MOTION FOR SPOLIATION SANCTIONS AND
RELATED SUBMISSIONS OF THE PSC AND THE STATES

HESI requests an evidentiary hearing so that HESI can be heard and its due process rights preserved.

## RELEVANT FACTUAL BACKGROUND

Shortly after April 20, 2010, Tim Quirk, HESI's former lab manager, was instructed to gather and secure all cement materials related to the *Deepwater Horizon* rig.  Ex. 4, Trial Tr. 4756:12-20 (March 19, 2013).  Mr. Quirk placed all such materials in his office.  Mr. Quirk also prepared a list identifying all such materials, which included those related to the Macondo Well at MC 252, the Kodiak Well at MC 727, and the Kaskida Well (the "First List").  Ex. 6, TREX-48002.  Thereafter, believing that the materials associated with the Kodiak and Kaskida wells were unrelated to the Macondo well, Mr. Quirk segregated the Kodiak Blend and other non-Macondo materials, and moved them from his office to a shelf in the lab's secure, climate controlled warehouse.  Ex. 4, Trial Tr. 4805:13-4806:21; Ex. 5, Trial Tr. 4899:14-17 (March 20, 2013).  Mr. Quirk prepared another list of materials identifying those associated with the Macondo well (the "Second List").  Ex. 7, TREX-3110.  The Second List contains all items identified in the First List, with the exception of the materials associated with the Kodiak and Kaskida wells.  The Kodiak Blend remained in HESI's warehouse until it was retrieved by Captain Englebert on March 19, 2013.  Ex. 5, Trial Tr. 4896:12-4898:1.

The First List was produced several times in the litigation, as early as March 11, 2011, as HAL_0502099 - HAL_0502101, from the custodial file of Tim Quirk, ten days before his deposition.  Ex. 8, the First List; Ex. 9, correspondence from counsel for HESI forwarding production.  The Second List was also produced several times, beginning as early as March, 11, 2011, as part of Tim Quirk's custodial file.  Ex. 10, the Second List; Ex. 9, correspondence from counsel for HESI forwarding production; *see also* Exhibit 11, duplicate of the Second List.

Despite having actual knowledge of both the First and Second Lists, neither BP nor any other party questioned Quirk about either list in his deposition.  Nor did any party ever request that HESI's production be expanded to include the Kodiak Blend or other MC 727 materials.

The only "discovery" in this case that sought the identification or turnover of actual rig cement samples related to the *Deepwater Horizon* or the Macondo well are the following subpoenas issued by the United States:

| Issuance Date | Issuing Agency | Specific Request Related to Cement Samples |
|---|---|---|
| 7/2/10 | JIT | (1) a list of additives HESI used in the cement for the Macondo well and (2) a 50 gram representative sample of the cement used in the Macondo well.  Ex. 1. |
| 7/12/10 | U.S. Chemical Safety & Hazard Investigation Board | A list of all physical evidence secured from the *Deepwater Horizon* MODU by HESI. |
| 8/12/10 | JIT | Certain limited quantities of materials identified in Attachment "A" (which is Attachment "C" to HESI's Response to the U.S. Chemical Safety & Hazard Investigation Board's subpoena).  Ex. 2. |
| 8/27/10 | Dept. of Interior, Office of Inspector General | "all cement or cement samples or fragments from the Block 252 Lease or the Deepwater Horizon, including that referenced during the testimony of Jesse Gagliano before the Marine Board [JIT] the week of August 23, 2010...." Ex. 3. |

On September 15, 2010, the Department of Justice and HESI agreed to accept in response to the August 27, 2010 subpoena the materials specifically identified in "Attachment C," (the Second List), which lists only Macondo Well or MC 252 materials.  *See* Ex. 12, Email correspondence between Counsel for HESI and the United States dated September 15, 2010. HESI and the United States subsequently agreed that production of the materials identified in the Second List would satisfy HESI's obligations under the JIT and DOI/OIG subpoenas.  *See id.*

## ARGUMENT AND AUTHORITIES

**I.     SANCTIONS ARE NOT ONLY INAPPROPRIATE, BUT UNWARRANTED AS THERE HAS BEEN NO DESTRUCTION OR SPOLIATION OF EVIDENCE.**

BP seeks discovery sanctions under Federal Rule of Civil Procedure 37 as well as under this Court's inherent authority to control the judicial process and to prevent abuse.  BP contends that sanctions are appropriate because HESI has allegedly violated Pretrial Order No. 1 by destroying evidence.  Motion at 19.  **There has been no destruction or spoliation of evidence**. The Kodiak Blend, which was identified and disclosed during discovery, was secured in HESI's lab until it was turned over to Captain Englebert on March 19, 2013.  Undoubtedly aware of the weakness in its spoliation argument, BP tries to manufacture such action, by rehashing arguments previously considered by the Court.  Motion at 7.

Sanctions under Rule 37, such as those requested by BP, the PSC, and the States (collectively, the "Movants"), must be "predicated upon the presence of such factors as willful disobedience, gross indifference to the right of the adverse party, deliberate callousness, or gross negligence." *Dorsey v. Acad. Moving & Storage, Inc*., 423 F. 2d 858, 860 (5th Cir. 1970); *see also Morin v. Chevron U.S.A., Inc. et al*., 2012 U.S. Dist. LEXIS 81066 at *19 (E.D. La. June 11, 2012) (citing *Marrocco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) ("sanctions are proper upon a finding of willfulness, bad faith, or fault on the part of the noncomplying litigant.")).  Not only have Movants failed to establish that any evidence was spoliated, they have failed to bring forth any evidence that HESI has acted with "gross indifference," "willful disobedience," "deliberate callousness" or "gross negligence."  Accordingly, the Motion should be denied.

4

**A.      There is No Basis for the Court to Reconsider its Prior Rulings.**

On December 5, 2011, BP filed its first Motion for Sanctions for the alleged destruction of notes related to post-incident testing conducted by Rickey Morgan and Tim Quirk, and post-incident computer modeling using HESI's proprietary 3D modeling software. *See* Rec. Doc. 4799. The matter was fully and extensively briefed. *See* Rec. Docs. 4961, 5061, 5058-1. On January 10, 2012, BP filed a "Supplemental" Memorandum in Support of Its Motion for Spoliation Sanctions, wherein it reiterated its arguments concerning the post-incident testing and complained of Tommy Roth's and others' notes regarding that testing. *See* Rec. Doc. 5126.

On January 20, 2012, Magistrate Shushan granted in part and denied in part BP's Motion for Sanctions, ruling that BP was not prejudiced by Morgan or Quirk's post-incident testing, and ordering forensic testing relative to the 3D modeling. Rec. Doc. 5307. On February 2, 2012, this Court overruled BP's objection to Magistrate Shushan's Order. Rec. Doc. 5562. HESI fully cooperated in recreating the 3D modeling and fully complied with the Court's orders related thereto. *See* Ex. 13, correspondence from Captain Englebert dated July 26, 2012.

BP's Motion, which repeats the same arguments previously rejected by this Court, fails to raise any new issue related to the post-incident testing or 3D modeling. During trial, the Movants cross-examined numerous witnesses regarding post-incident testing, Tommy Roth's notes regarding such testing, and the 3D modeling. *See* Ex. 14, Trial Tr. 3279:8-20; 3281:1-2 (March 12, 2013). Neither this testimony nor the existence of the Kodiak Blend have raised a single new issue regarding the post-incident testing or modeling. Accordingly, there should be no "cumulative" effect or consideration of such testing or modeling on any issue concerning the turnover of the Kodiak Blend. The post-incident testing and modeling issues are irrelevant to the Kodiak Blend, and Movants' attempts to "pile on" should be rejected. *Zdanok v. Glidden*

*Company-Durkee Famous Foods Div.*, 327 F.2d 944 (2d Cir.), *cert. den.*, 377 U.S. 934 (1964) ("[Where] litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.").

> **B.      HESI Has Not Spoliated or Destroyed Any Evidence.**

To demonstrate that spoliation has occurred, Movants bear the burden of proving the following two elements by a preponderance of the evidence:

> First, that *relevant evidence was destroyed* after the duty to preserve arose.  Evidence is relevant if it would have clarified a fact at issue in the trial and otherwise would naturally have been introduced into evidence; and
>
> Second, that *if relevant evidence was destroyed* after the duty to preserve arose, the evidence lost would have been favorable to [Movants].

*Yelton v. PHI, Inc.*, 279 F.R.D. 377, 388 (E.D.La. 2011) (emphasis added) (citing *Pension Comm. Of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 496 (S.D.N.Y. 2010)).  Because Movants cannot establish either element, the Motion should be denied.

> **1.      *HESI Satisfied its Preservation Obligations.***

BP incorrectly claims that HESI neglected its preservation duties by implying that HESI merely issued a "litigation hold."  Motion at 1.  BP's claim has absolutely no basis - HESI has fully and properly preserved all evidence relevant to this litigation.

In the days immediately following the incident, HESI's internal legal department issued its initial legal hold.  Ex. 15, Affidavit of Liz Schimmell at ¶ 3.  HESI also circulated a questionnaire asking recipients to identify relevant data sources (files, computers, etc.) and other HESI employees with potentially relevant knowledge and information.  *Id.* at ¶ 3.  As more employees were identified, the legal hold expanded to include approximately 547 HESI

employees.  *Id.* at ¶ 5.  Relevant information was collected from employees and processed for discovery.  *Id.* at ¶ 7.  Each employee subject to the legal hold was asked to certify compliance with the hold and received periodic reminders of their obligations.  *Id*. at ¶ 5.

In addition to the above referenced preservation process, immediately following the incident, HESI identified and segregated all cement and additive samples associated with the *Deepwater Horizon*, including the Kodiak Blend.  *See* Ex. 4, Trial Tr. 4802:12-4803:7.   In response to the Subpoena, HESI turned over all the cement dry blend and additives believed by HESI's lab manager to be related to the Macondo or MC 252 well.  *See* Ex. 16, November 16, 2010 Chain of Custody.  All samples related to the *Deepwater Horizon*, including the Kodiak Blend, were segregated and preserved in the Broussard lab.  *See* Ex. 4, Trial Tr. 4802:12-4803:7. There is no question that HESI undertook great efforts to identify and preserve information relevant to the litigation.  The fact that the Kodiak Blend, though preserved, was not produced in response to the subpoenas does not impugn the diligence of HESI's evidentiary preservation process.

### 2.      *The Kodiak Blend Was Not Destroyed.*

Based upon his belief that the Kodiak Blend was not related to the Macondo Well, Mr. Quirk moved the Kodiak Blend from his office to HESI's secure, climate controlled warehouse. Ex. 4, Trial Tr. 4805:13-4806:21.  Neither the Kodiak Blend nor any other cement materials related to the *Deepwater Horizon* were destroyed.  *Id.* at 4756:12-20; Ex. 5, Trial Tr. 4899:14-17.  Quirk explained what occurred in trial:

> Q: So after you were told to secure everything from the Transocean rig and you had, in fact secured the Transocean rig cement that had been used by Jesse Gagliano on March 7th on the Macondo well . . . it's the exact same chemical ID – are you telling me that everything --- somehow, between April 30th, you decided to move it out, not put it in the locked locker, and somehow up

until last week, Wednesday, is the first time in three years someone from Halliburton realized that the Kodiak Blend that had been used on the Macondo well was sitting on a shelf in a closet?

A: Yes. I did not know that the sample of cement that was labeled "Kodiak," whatever that other location was, was used for Macondo.  I have no way of knowing that by looking at that sample.  All I see is Kodiak from some other location.

Q:  So you moved it?

A:  I was asked to secure the Macondo well Mississippi Canyon sample.  That's what I did.  I misunderstood initially.  He corrected me, so I took those samples, put them back in – **I didn't discard them**.  I put them back in the warehouse and secured the Macondo well cement samples.  I had no way of knowing.

Ex. 4, Trial Tr. 4802:12-4803:7 (emphasis added).  Quirk continued, "I did not know that – I did not – I had no – any – all of my history, if I look at a cement sample labeled a different well and a different location, how am I to assume that that's – it's a different location, a different right?  I see it as a complete – not being the same cement.  That's –that's my –that's the truth."  *Id*. at 4803:19-24.

Movants' claim that HESI is "solely responsible for 'deterioration'" of the Kodiak Blend is simply untrue.  The fact that the chemical composition of a dry blend may change over time due to the organic nature of the ingredients and exposure to elements applies to both to the Kodiak Blend and the Macondo Blend.  This should in no way subject HESI to sanctions.  Moreover, as Quirk testified, the Kodiak Blend was not discarded.  It has been maintained and properly secured since it was isolated from the Macondo Blend.  There is simply no truth to the Movants' complaint that HESI has destroyed or allowed the deterioration of vital evidence.

### 3.      *The Kodiak Blend is Irrelevant to these Proceedings.*

BP claims prejudice based upon HESI's delay in producing the Kodiak Blend.  BP's Motion at 1.  Though HESI cannot agree that Movants have been in any way prejudiced by this

HESI'S RESPONSE TO BP'S MOTION FOR SPOLIATION SANCTIONS AND
RELATED SUBMISSIONS OF THE PSC AND THE STATES

delay, the passage of time is precisely why the Kodiak Blend was not used in the final testing for the Macondo Well production casing, and precisely why the issue concerning the Kodiak Blend is a red herring.

The Kodiak Blend was collected on December 27, 2009. Ex. 5, Trial Tr. 4896:6-4898:6. On or about April 1, 2010, however, in order to obtain the most representative sampling for the final operational testing for the production casing, Jesse Gagliano obtained new samples from the *Deepwater Horizon* (*i.e.* Macondo Blend). Ex. 17, TREX 5801; Ex. 18, Gagliano Depo at 784:4-11. The Macondo Blend was ultimately turned over to the United States pursuant to the subpoenas. Ex. 16. As Gagliano explained, the Kodiak Blend was not appropriate for the final production casing lab tests. Ex. 18, Gagliano Depo at 784:4-12. "That's something you have to keep in mind, and that's their whole reason why they did separate testing to verify whether the cement foam was good and not contaminated because it had been out there two months—you know, a couple of months." *Id.* at 181:9-14. From an operations standpoint, the age of the Kodiak Blend, even in April of 2010, made it less representative than the Macondo Blend.

Because the age of the Kodiak Blend rendered it less representative than the Macondo Blend prior to the Incident, any post incident testing of that blend was and is largely irrelevant to the slurry that was actually pumped into the Macondo well. The Macondo Blend was turned over the United States and was tested. Given the lack of relevance of the Kodiak Blend, spoliation has not occurred.

### C.     There is No Evidence to Support A Finding of Culpability.

Even assuming *arguendo* that naturally occurring changes in chemical composition constitutes "destruction" of evidence, such action is not sufficient for sanctions. *Yelton v. PHI, Inc.*, 279 F.R.D. 377, 391 (E.D. La. 2011). Severe sanctions, such as those requested by

Movants, require bad faith and prejudice. *Id*. (citing *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005)).  Movants have not and cannot show that HESI acted in bad faith or that they have been prejudiced in any way.  Accordingly, the Motion should be denied.

### 1.   *HESI Has Not Acted in Bad Faith.*

At the heart of the Motion is the implication that HESI hid the Kodiak Blend from BP and the other parties to this litigation.  As detailed in Tim Quirk's testimony before this Court, the segregation of the Kodiak Blend from the Macondo Blend was not motivated by malicious intent or bad faith.  There is no evidence that HESI acted deliberately or intentionally, or that the isolation of the Kodiak Blend was the result of anything other than a simple misunderstanding. HESI acted in good faith, and nothing in Movants' briefing establishes otherwise.

The Motion omits that HESI produced the First List, which identified the existence of the Kodiak Blend samples in the Broussard lab, on multiple occasions prior to trial.  The First List has been on BP's Trial Exhibit List since January 13, 2012.  *See* Ex. 19, Rec. Doc. 5207-1 at 311. Movants either failed to compare the two documents before trial, the comparison was made, but no party had any issues with the difference between the two lists, or the comparison was made and one or more of the parties appreciated the differences but elected to wait until trial to see whether they could exploit the error.  What is clear, however, is that the PSC and BP waited until the second week of trial to inform anyone of their complaints about any alleged "just 'discovered'" cement samples.

Further, none of the Movants subpoenaed or sought production of any *Deepwater Horizon* cement materials during discovery.  Nor did the Movants seek any relief after Captain Englebert, the custodian of the samples at Michoud, received the Macondo Blend.

HESI'S RESPONSE TO BP'S MOTION FOR SPOLIATION SANCTIONS AND
RELATED SUBMISSIONS OF THE PSC AND THE STATES

Any characterization that HESI withheld or destroyed critical evidence concerning HESI's cement slurry design is simply unsupported by the facts. The Kodiak Blend was segregated from the Macondo Blend very soon after the incident and, accordingly, was not identified as being responsive to the subpoenas. HESI's document production revealed the existence of the Kodiak Blend as early as March 11, 2011, but no party followed up. After the Macondo Blend was turned over, no party requested that the additional materials be produced. BP's accusation that HESI attempted to conceal the Kodiak Blend rings hollow when the very materials at issue were identified in documents produced long ago.

## 2. *Movants Have Failed to Show That They Have Suffered Any Prejudice.*

BP claims to have been prejudiced by HESI's failure to produce the Kodiak Blend because the material was not available for testing. BP's Motion at 1. Indeed, it states that "because Sample #67314 was 'a very limited amount of sample,' the U.S. Government declined to run certain tests requested by BP." Motion at 10. What BP refers to is its request for a single "high gas content" test, also known as a "60% test." Rec. Doc. 2830-9 at 1-2. What BP fails to disclose, however, is that this 60% test was a non-API testing protocol concocted by BP and that BP failed to request this test after it learned that the OTC did not use all of the Macondo Blend in its possession. Regarding the protocol concocted by BP, the U.S. notified BP that "there is no industry standard" for testing stability for the proposed 60% test, and "such testing is not contemplated by, or provided for in, API RP 10B-4." Rec. Doc. 2830-9, p. 2.

As detailed in Greg Garrison's November 4, 2011 deposition testimony, **the U.S. did not use all of the materials in its possession for testing by OTC:**

> Q.     Okay. Now, seeing as you only tested the MAC4 -- and when I say MAC4, we understand that between us to be a -- the only slurry from the Macondo rig sample that you actually tested, right?

HESI'S RESPONSE TO BP'S MOTION FOR SPOLIATION SANCTIONS AND
RELATED SUBMISSIONS OF THE PSC AND THE STATES

A.      Correct.

Q.      So if I say MAC4, we'll have that understanding?

A.      Yes.

Q.      Okay.  So seeing as you only tested the MAC4 slurry, is there additional rig sample left over in your possession?

A.      Yes.

Q.      How much?  How much dry blend?

A.      An actual weight?

Q.      A rough estimate based on five-gallon barrels.  Half full, what?

A.      Out of a five-gallon bucket, it's probably 20, 25 percent.

Q.      Okay.  So about a quarter of a five-gallon bucket?

A.      Roughly, yes.

Q.      Okay.  Did you ever ask yourself if we're supposed to getting (sic) insights into what happened to the Macondo slurry cement, why you only conducted one test with it?

A.      Of course in being a -- a cementing guy, you wonder but, I mean, it was all -- it all came from -- directly from the JIT to do the one.

Ex. 20, Garrison Depo at 181:4-182:8.  BP never requested additional testing after it learned that

U.S. did not utilize all of the Macondo Blend.

During trial, the United State's expert, Glen Benge, rejected BP's concocted test because

it was neither recommended by the United States nor sanctioned by API.  Ex. 21, Trial Tr.

2464:5-17.  Mr. Benge detailed exactly why BP's concocted 60% test is not reliable:

Q.      Do you see any correlation between the testing protocols used by OTC of 60 percent nitrogen and what actually occurs in the rig?

A.      No, sir, I do not.

12

> Q.      Do you have opinion as to the OTC testing that was done at BP's request on 60 percent foam quality?
>
> A.      Yes, sir.
>
> Q.      What is it?
>
> A.      Well, I've taken samples -- I've taken samples of foam as it's been generated on a rig at much higher and looked at that.  The sheer that you get from a wearing blender versus the sheer that you have from the rig is apples and oranges.  It's quite different.  There is a tremendous amount of sheer on that rig.  So the -- I don't find them comparable.

*Id*. at 2465:4-2466:1.

Simply put, BP wanted OTC to use rig-blend materials to run a test it had concocted that had no correlation with conditions on the rig.  Even setting aside the unreliability of the 60% test, the fact that BP never requested that the remainder of the Macondo Blend be used for its 60% test is fatal to BP's claim of prejudice.

The law is clear: a movant is prejudiced under a spoliation theory where the missing evidence is relevant to the factual or legal issues in the case and the movant's ability to present or defend its case is compromised.  *Ashton v. Knight Transp. Inc.,*  772 F. Supp. 2d 772, 801 (N.D. Tex. 2011).  The movant should put on meaningful evidence that it was "actually, rather than merely theoretically, prejudiced."  *Burlington Northern & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032-33 (10th Cir. 2007).  Movants' manufactured claims of prejudice should be rejected because, even if the Kodiak Blend is relevant and/or responsive to the subpoenas, any turnover delay has not compromised or hindered Movants' ability to develop their claims.  While BP claims "the prejudice in terms of BP's ability to defend itself is severe" it fails to detail how it has been unable to defend itself.  Rig samples of the Macondo Blend and additives were properly turned over to the United States and tested.  Those rig samples were mixed and conditioned into

a slurry that was subsequently identified as being stable.  *See* Ex. 20, Garrison Depo at 176:7-23; 181:4-9; 207:9-13.  BP could have requested additional testing of the leftover Macondo Blend. It did not, and now it cannot complain about the lack of testing of the Kodiak Blend.

Moreover, as discussed *supra*, none of the Movants ever sought discovery or production of cement samples.  Interestingly, the United States, the real party in interest with regard to the subpoenas, filed a submission detailing the potential prejudice that would arise **should the Court grant BP's Motion and grant its requested relief and findings**.  *See* Rec. Doc. 8992.

While HESI contends that it has fully complied with the United States' subpoenas Movants have failed to establish that any prejudice has resulted from any delay in turning over the Kodiak Blend.  Having failed to establish prejudice, the Motion should be denied.

## II.    SHOULD THIS COURT FIND SANCTIONS APPROPRIATE, THE SANCTION MUST RELATE TO THE ALLEGED ABUSE.

While HESI does not agree that sanctions are appropriate, should the Court find otherwise, the measure of an appropriate sanction is whether it "restore[s] the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence[.]"  *Yelton v. PHI, Inc.*, 279 F.R.D. at 393 (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)); *see also Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) ("[T]he applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.") (quoting *West*, 167 F.3d at 779).  BP's requested sanctions have no relation to the turnover of Kodiak Blend, and instead of "restoring" Movants to any alleged pre-prejudice position, the requested findings would effectively result in an ultimate legal conclusion against HESI that not only contradicts the evidence taken thus far in trial, but absolves BP and other parties for their reckless and tortious conduct leading up to the incident.

14

Such a sanction is unwarranted and unsupported under the facts of this case and applicable legal authority.

### A.    An Adverse Inference or Finding is Unwarranted.

In the Fifth Circuit, severe sanctions, including adverse inference instructions, may not be imposed unless there is evidence of bad faith or bad conduct.  *Condrey v. SunTrust Bank of Ga.*, 431 F.3d  191, 203 (5th Cir. 2005); *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003); *United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000).   Mere negligence is not enough to warrant an adverse inference.  *Vick v. Tex. Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975).  The severity of a sanction for failing to preserve evidence must be proportionate to the culpability involved and the prejudice that results.  *Yelton*, 279 F.R.D. at 393.  The sanction should only be as harsh as needed to punish or deter and to address the impact on discovery.  *Id*. "The judge [imposing sanctions] should take pains neither to use an elephant gun to slay a mouse nor to wield a cardboard sword if a dragon looms.  Whether deterrence or compensation is the goal, the punishment should be reasonably suited to the crime."  *Id*. (citing *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 395 (1st Cir. 1990)).

BP's reliance upon the Southern District of New York opinion in *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004) to suggest that adverse findings are warranted, is misplaced.  The main issue in *Zubulake* was the scope of a party's duty to preserve digital evidence during the course of litigation, and a lawyer's duty to monitor a client's compliance with electronic data preservation and production requirements. *Id*. at 424. The court concluded that the defendant acted willfully in deleting emails, and as a result, ordered an adverse inference instruction against defendant. *Id*. at 436-37.  Notably, the court did not sanction the defendant for the loss of backup tapes, "which was merely negligent."  *Id*. at 437 n. 99.

15

The issue in *Zubulake*, willful deletion of emails, is not present here.  Moreover, in *Zubulake*, the material and data at issue were sought by way of "document requests" that were propounded during the discovery period. *Id*. at 424.  In the present case, BP seeks the harshest of sanctions against HESI for an alleged failure to comply with another party's subpoenas.  The willful deletion of evidence apparent in *Zubulake* is clearly absent in this case.  Accordingly, an adverse inference or finding is not warranted.

**B.     Movants' Proposed Findings Have No Relation to Any Alleged Abuse or Harm.**

The crux of this dispute concerns whether HESI complied with the United States' subpoenas and timely produced the Kodiak Blend.  As BP correctly notes, not only must sanctions be "just," "they must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *See Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).  BP's reliance upon *Ins. Corp. of Ir.* for the proposition that its requested findings are "just" and "specifically related" to the particular claim at issue, however, is misplaced.  Motion at 19.  In *Ins. Corp. of Ir., Ltd.*, the Supreme Court held that application of a sanction was just under the circumstances because petitioners had failed to comply with several court orders to produce documents that were material to establishing jurisdiction.  *Id*. at 707-08.  Because defendants failed to comply with the lower court's order, it issued sanctions by holding that minimum contacts had been established. *Id*. at 698-99.  The Court ultimately held that the sanction was just and specifically related to the particular claim at issue, in that the discovery was necessary so that respondent could address petitioners' claim that the district court lacked jurisdiction. *Id*. at 707-709.

Here, BP alleges that HESI's failure to produce the Kodiak Blend should warrant extreme sanctions by way of conclusions of law regarding negligence and causation.  Such sanctions are

16

neither justified nor specifically related to the particular issues surrounding the turnover of the Kodiak Blend.

Specifically, BP seeks an affirmative finding that HESI's final cement design was unstable and caused hydrocarbons to enter the wellbore.  Such a finding is completely unrelated to the turnover of Kodiak Blend and bears no relationship to any prejudice Movants have allegedly suffered, particularly in light of the fact that the Macondo Blend, which is a more representative sample, was turned over and tested.

Further, an adverse finding that unstable cement **caused** hydrocarbons to enter the wellbore is wholly unsupported by the facts because an unstable foam cement is not directly correlated to hydrocarbons entering the wellbore.  BP's suggested sanction seeks to resurrect the stricken expert opinion of Fred Sabins that unstable cement can become highly permeable due to nitrogen bubbles coalescing and rising through the base slurry.  No other designated expert offers such opinions.  Indeed, the evidence does not support this opinion.  The United States' expert Glen Benge's trial testimony explained exactly why Sabins' opinion is wrong.

> Q.    Now, Mr. Regan asked you a question about whether you thought the cement was permeable, do you recall that?
>
> A.    Yes, sir.
>
> Q.    And I believe you answered the question no?
>
> A.    That's correct.
>
> Q.    Can you explain that answer?
>
> A.    Well, I believe the question was if the cement is unstable, does that make it permeable, and if I look at one of these foam cement things or look at foam, if it's unstable and all of the nitrogen comes out or nitrogen starts coming out, the material that's left back in behind is the base slurry. So that – the movement of that nitrogen or the stability of that doesn't go to permeability. It goes to changes in density, changes in properties. But permeability is not -- that would not be a result.

17

Q.      What would be the result?

A.      Well, you wind up -- if I take the Macondo well, at the bottom of the well, you would have higher density. If you took all of the nitrogen out, you would have the tail cement.

Q.      And could that cement have provided a barrier in the bottom of the well?

A.      Yes, sir.

Q.      Only if it was set?

A.      Only if it was set.

Ex. 21, Trial Tr. 2579:11-2580:8.

HESI's expert, Dr. Kris Ravi, agrees with Glen Benge on this issue.  As stated in Dr. Ravi's expert report, "[i]f the formation fluid enters the unset cement and moves the cement aside or ahead and creates a gas flow channel, the pressure in the annulus will quickly equal the formation pore pressure so the gas will be contained. Hence it is difficult to establish continuous gas channels through unset cement, but it may create what is called as gas cut cement, meaning cement could set with pockets of gas around it. **However, if gas bubbles into the unset cement, it would not result in a blowout because of pressure equalization.**" *See* Exhibit 22, Ravi Rebuttal Report, p. 24.  Accordingly, an unstable foam cement is not directly correlated to hydrocarbons entering the wellbore.

Additionally, evidence already developed at trial contradicts the very finding that BP asks this Court to make.  First, as the United States acknowledged in its filing, the cement design on the Macondo well was the product of HESI and BP's collaboration—it was not "HESI's final cement design." *See e.g.,* Ex. 23, Trial Tr. 2617:16-2619:3 (March 7, 2013); *see also* Ex. 24, 2245:13-2246:17; 2283:20-24; 2372:1-9 (March 6, 2013).  Moreover, the finding BP seeks would absolve BP of its role in the cement design process. *See e.g.,* Ex. 21, Trial Tr. 2409:14-2410:9 (BP controls the physics of the cement job, and was responsible for reducing the number

HESI'S RESPONSE TO BP'S MOTION FOR SPOLIATION SANCTIONS AND
RELATED SUBMISSIONS OF THE PSC AND THE STATES

of centralizers to be run, the pump rate and not properly conditioning the mud at the bottom of the hole); Ex. 21, Trial Tr. 2580:21-2581:3 (BP's admission that it did not absolve itself of responsibility for the cement job by relying on Halliburton's services). The proposed finding also contradicts testimony that, even if the foam cement was unstable, it could have provided a barrier in the well if the cement set. *Id.* at 2579:16-2580:8. Thus, not only does the proposed finding contradict evidence taken in this trial, it fails to correct any alleged harm suffered by any delay in turning over the Kodiak Blend.

The second sanction requested, a finding that post-incident tests conducted by Rickey Morgan and Tim Quirk in April/May 2010 establish that the cement used on the Macondo well was not stable, is likewise unrelated to the turnover of the Kodiak Blend. The Kodiak Blend was not used in any post-incident testing. Ex. 25, Trial Tr. 4852:1-11 (March 19, 2013); Ex. 26, Trial Tr. 4903:4-7, 4926:23-4927:13 (March 20, 2013). Moreover, the Court has previously considered and ruled upon BP's prior Motion for Sanctions related to the post-incident testing. There is no basis to award BP a second bite at the apple.

The final sanction requested by BP relates to the admission of opinion deposition testimony from Chevron and OTC witnesses regarding post-incident testing. Because the proposed sanction has no relationship to any alleged prejudice or harm incurred, this requested relief should also be denied.

## III.   SHOULD THE COURT FIND THAT HESI'S ACTIONS GIVE ANY APPEARANCE OF A DISCOVERY ABUSE, IN LIGHT OF THE DUE PROCESS CONCERNS RAISED BY THE MOTION, THE COURT SHOULD ALLOW AN EVIDENTIARY HEARING TO PROPERLY EVALUATE THE ISSUE.

If the Court is inclined to grant BP's requested relief, given the severity of the sanctions sought by BP, and the fact-intensive nature of the inquiry, HESI is entitled to an evidentiary

hearing.  BP essentially requests findings that would eviscerate several of HESI's defenses.  The facts underlying the delayed turnover of the Kodiak Blend are complicated and disputed.

Sanctions should not be entered without notice and an opportunity to be heard.  *See Am. Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 530 (5th Cir. 1992) ("The procedure followed by the court in imposing sanctions under Rule 11 must obviously comply with the requirement of due process."); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) ("A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees.").  The formality of the notice and proceedings must correspond to the level of sanctions imposed.  *Am. Airlines*, 968 F.2d at 530; *see also Rogal, v. Am. Broad. Cos., Inc.*, 74 F.3d 40, 44 (3d Cir. 1996) (explaining circumstances dictate what due process is required in the context of sanctions).  If the Court is inclined to grant the extreme sanctions requested by BP, particularly given the **billions** of dollars at stake in this litigation, HESI has no choice but to request a formal evidentiary hearing.

Moreover, as discussed above, the severe sanctions sought by BP must be predicated on a finding of "willful disobedience," "gross indifference," "deliberate callousness," "gross negligence," or bad faith.  Obviously, the facts surrounding the treatment of the Kodiak Blend, and HESI's actions in connection therewith, are disputed. HESI submits that an evidentiary hearing is necessary to permit the court to make such findings.  *See Horner v. Rowan Cos., Inc.*, 153 F.R.D. 597, 598 (S.D. Tex. 1994) (evidentiary hearing conducted to afford all parties an opportunity to be heard and to create a record from which the Court could make specific factual findings upon which to base the imposition of sanctions); *Travelers Ins. Co. v. St. Jude Hosp.*, 38 F.3d 1414, 1418 (5th Cir. 1994) ("The right to a hearing. . . is limited to cases where a hearing

would assist the court in its decision."). Because the circumstances surrounding the preservation and turnover of the Kodiak Blend are complicated and vital to this Court's imposition of the severe sanctions requested by BP, if it is in any way inclined to grant the Motion, the Court should hold a full evidentiary hearing.

## IV.     HESI HAS NOT ACTED IN CONTEMPT OF ANY ORDER OF THIS COURT.

In the States' Submission, they argue that some form of sanctions "or a finding of contempt" is justified. Rec. Doc. 8991 at 1-3. Without asking for a finding of contempt, the Plaintiffs "leave the question of whether Halliburton should be held in contempt to the sound discretion of the Court." Rec. Doc. 8979 at p. 2. Neither brief sets forth the basis for any finding of contempt. In *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990), the Fifth Circuit Court of Appeals recited the factors delineated in *United States v. United Mine Workers*, 330 U.S. 258, 303 (1947) to be considered in the imposition of a civil contempt sanction: (1) the harm from noncompliance with a court order; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order.[3]

As discussed above, HESI has fully complied with its preservation obligations under Pretrial Order No. 1. Accordingly, none of the foregoing factors have been satisfied, and the imposition of any civil contempt sanction against HESI is inappropriate. In addition, the findings requested by BP would be tantamount to adjudicating questions of law and fact, as

---

[3] HESI has not been given "explicit" and "specific" notice that any contempt allegation against it is criminal in nature, as would be required for a criminal contempt proceeding. *Lamar Fin. Corp.*, 918 F.2d at 567 & n. 2 (citing FED. R. CRIM. P. 42(b), *United States v. Rizzo*, 539 F.2d 458, 463-64 (5th Cir. 1976), and *F.T.C. v. Gladstone*, 450 F.2d 913 (5th Cir. 1971)). Even assuming *arguendo* that any contempt allegations could be construed as criminal in nature (which HESI denies and objects to), the factors for such criminal contempt are not satisfied in this case, namely "the extent of the willful and deliberate defiance of the court's order, the seriousness of the consequences of the contumacious behavior, the necessity of effectively terminating the defendant's defiance as required by the

noted by the submissions filed by the United States and the States (Rec. Docs. 8991, 8992), and rendering a *de facto* default judgment as to causation and dismissal of certain HESI defenses. In reciting Rule 37 of the Federal Rules of Civil Procedure, the Fifth Circuit has noted that "[t]he Advisory Committee in its note to Rule 37 recognizes the impropriety of using such a measure [dismissal] as a punishment for contempt." *Hinson v. Mich. Mut. Liab. Co*., 275 F.2d 537, 538 (5th Cir. 1960). Likewise, BP's request for findings as to causation are not proper as a punishment for any contempt alleged by the PSC and the States.

## PRAYER

HESI prays that upon considering its Response in Opposition to BP Exploration & Production, Inc. and BP America Production Co.'s Motion for Sanctions Relating to Halliburton's Destruction and Spoliation of Evidence and Memorandum in Support (Rec. Doc. 8977), the PSC's Submission Regarding Halliburton Spoliation Issues (Rec. Doc. 8979), and the States of Louisiana and Alabama's Submission Regarding Halliburton Spoliation Issues, the Court deny Movants' motions. In the alternative, HESI requests an opportunity to present evidence supporting its defenses to the Court in an evidentiary hearing. HESI also prays for all other relief, legal and equitable, to which it is justly entitled.

---

public interest, and the importance of deterring such acts in the future." *United States v. United Mine Workers*, 330 U.S. at 303.

HESI'S RESPONSE TO BP'S MOTION FOR SPOLIATION SANCTIONS AND
RELATED SUBMISSIONS OF THE PSC AND THE STATES

Respectfully Submitted,

**GODWIN LEWIS PC**

**By:** /s/ Donald E. Godwin
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
Don.Godwin@GodwinLewis.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
Bruce.Bowman@GodwinLewis.com
Jenny L. Martinez
State Bar No. 24013109
Jenny.Martinez@GodwinLewis.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
Floyd.Hartley@GodwinLewis.com
Gavin E. Hill
State Bar No. 00796756
Gavin.Hill@GodwinLewis.com

1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

R. Alan York
State Bar No. 22167500
Alan.York@GodwinLewis.com
Jerry C. von Sternberg
State Bar No. 20618150
Jerry.VonSternberg@GodwinLewis.com
Misty Hataway-Coné
State Bar No. 24032277
Misty.Cone@GodwinLewis.com

1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Halliburton Energy Services, Inc.'s Opposition to BP's Motion for Spoliation Sanctions has been served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this 26th day of March, 2013.

/s/ Donald E. Godwin
Donald E. Godwin