**KIRKLAND & ELLIS LLP**
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

March 5, 2013

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

Re:   MDL 2179 — *In Camera* Submission for BP's Opposition to United States Motion to Compel (Rec. Docs. 8715)

Dear Judge Shushan:

As described in BP's Opposition to the United States' motion to compel, (Rec. Doc. 8715, at 8, 24), and in line with previous privilege challenges, BP will deliver to Chambers this afternoon an *in camera* submission to assist the Court in adjudicating the United States' motion (Rec. Doc. 8419).

This voluntary submission, described further below, consists of certain documents for *in camera* review and privilege logs corresponding to the five document sets the United States requested. Although the submission is a voluntary one, the United States in a letter to counsel, joined by Transocean, has objected to any *in camera* submission by BP, and particularly the submission described in BP's Opposition. So that the Court is fully apprised of these parties' positions regarding this submission, we attach both the United States and Transocean letters to this one. (Attachments A and B.)

With this letter BP describes its upcoming submission, addresses the United States' objections, and proposes some next steps in light of these objections. Should the Court have questions regarding this submission — or the United States and Transocean's objections to it — BP would be pleased to join a call with the Court and the United States to answer them.

## Background

During BP's and the United States' meet-and-confer exchange of letter correspondence, BP proposed providing the United States with five newly assembled privilege logs — one for

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 5, 2013
Page 2

each document set the United States' motion requests. BP had assumed, as is usual in most discussions of amicably resolving contested issues in litigation, that BP could request and receive confidential treatment for these logs. As part of that meet-and-confer process, BP began assembling the logs in conjunction with the document review described in Attachment C to this letter.

The United States' response to BP's offer stated, however, that unless BP were willing to produce all documents the United States is requesting, the appropriate course would be to complete the briefing. Soon thereafter, the Court set a briefing schedule, and with the meet-and-confer concluded, BP then proceeded to file its Opposition brief.

As BP's Opposition explained, an *in camera* review is required for privilege challenges such as this one brought by the United States and Transocean. Only through a document-by-document review, can a determination be made that the crime-fraud exception applies to any particular document. (Rec. Doc. 8715, at 24.) BP's Opposition described the *in camera* submission that BP planned to, and soon will submit, (*id.* at 24-25), and BP now further describes that submission below.

## I. BP's *In Camera* Submission

As stated in BP's Opposition, BP's *in camera* submission consists of two categories of materials — (1) certain withheld documents related to the five documents sets requested in the United States' motion and (2) five separate privilege logs, each corresponding to one of those five United States' requests. These documents, and the corresponding logs, have been assembled through a good-faith reasonable search of withheld documents responsive to agreed MDL search criteria, as described in Attachment C to this letter. Additionally, BP provides the following information regarding this submission.

### A. Documents Submitted for *In Camera* Review

BP will soon submit to the Court the documents "related to" three of the United States' five requested documents sets, as described in Part II.B of BP's Opposition, specifically documents related to:

- May 19, 2010 Note,
- May 24, 2010 Letter to Congressmen Markey, and
- June 25, 2010 Letter to Congressman Markey.

For reasons stated in Part II.A of BP's Opposition, BP does not believe the United States has even begun to make a *prima facie* showing regarding the following two document sets of the five sets the United States is requesting, specifically documents related to:

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 5, 2013
Page 3

- May 4, 2010 Congressional briefing, and
- April 29, 30 and May 4 SEC submissions on Forms 6-K.

Again, as further explained in BP's Opposition, these documents are not being submitted for review *in camera*, because no *in camera* review of these documents is needed. (*See* Rec. Doc. 8715, at 17-20, 24.)

### B. Voluntarily Assembled Privilege Logs

In the interest of being helpful to the Court and parties, BP has created five new privilege logs — one for each of the United States' five requests.

Because the documents described on these logs were either previously listed on a BP privilege log or were not required to be logged per Pre-Trial Order 14, BP has compiled these logs strictly as a courtesy to the Court and parties. We hope the logs can help further a prompt resolution of the United States' and Transocean's privilege challenges.

These logs will be provided to the Court together with BP's *in camera* submission of documents in two separate sealed envelopes as described blow.

#### 1. Logs for Documents Related to the May 19 Note and the May 24 and June 25 Letters.

The first of the two sealed envelopes will contain three privilege logs marked "Confidential," each corresponding to one of the document sets submitted for *in camera* review described above — (1) May 19, 2010 Note, (2) May 24, 2010 Letter to Congressmen Markey, and (3) June 25, 2010 Letter to Congressman Markey.

Although BP planned to make these logs available to opposing counsel during the meet-and-confer process, legal counsel for certain persons listed on these logs has requested that BP provide the logs to opposing counsel only on a Confidential basis.

The specific concern voiced by individual counsel is that these voluntarily assembled privilege logs may be used in the media (possibly by parties) to ascribe to the persons listed on the log possible participation in a "crime" or "fraud" without the appropriate legal basis for making such a statement.

Rather than withhold these three voluntary logs altogether, BP wishes to share these logs on an appropriately confidential basis with the Court and parties to assist in resolving the United States' motion. BP has therefore marked each of the logs "Confidential" and these logs should be handled in accordance with PTO 13's use of that term.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 5, 2013
Page 4

Neither the United States nor Transocean has indicated whether it objects to these logs' remaining Confidential. Until the Confidential status of these logs is resolved, however, and in light of the objections mentioned in recent correspondence (and out of an abundance of caution), BP will submit the logs to the Court only in a sealed envelope marked "Do not open pending resolution of possible United States and Transcoean objection."

### 2. Logs for Documents Related to SEC Submissions and May 4 Briefing.

The second sealed envelope will contain two logs always intended solely for this Court's information as part of an *in camera* review, each log corresponding to the May 4 Congressional briefing and the April 29, 30, and May 4 SEC Forms 6-K.

As the Court knows, BP has previously provided declarations with *in camera* submissions made in response to United States' privilege challenges. And although the United States has objected to these submissions on multiple occasions, the Court has uniformly overruled these objections. (*See* Aug. 17, 2012 WGC Tr., at 29:17-22; S. Cernich July 3, 2012 Ltr., at 5-6; S. Cernich Aug 2, 2012 Ltr., at 2 & n.3; S. Cernich Aug. 31, 2012 Ltr., at 1.)

In an attempt to avoid the need to resolve similar objections here, BP has slimmed down its *in camera* submission to provide the Court only with privilege logs. These logs were produced voluntarily to aid the Court in resolving the United States' motion and need not be provided at all. *In camera* review of these logs is all the more appropriate in this context where the logs correspond to documents for which the United States has not begun to make a *prima facie* showing.

### C. Further Information About the Organization of BP's *in Camera* Submission.

Finally, we thought the Court might appreciate some further road-mapping regarding the upcoming submission to assist its *in camera* review.

***Categorization of Documents***. Again, three sets of documents are being submitted — those related to the May 19 Note, the May 24 letter, and the June 25 letter.

As described in BP's Opposition, BP has categorized each submitted document family into one of five categories A through E. (Rec. Doc. 8715, at 7-8, 24-25.) These categorizations are indicated on the three privilege logs corresponding to the three sets of documents being submitted.

By referencing the tab numbers in the binders with the "Doc. No." column on the corresponding log, the Court can determine an individual document's placement in a category (A-E) by looking to the appropriate row corresponding to the document and column labeled

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 5, 2013
Page 5

"Category (A-E)" on the appropriate privilege log. For these three document sets, BP has provided all documents in all categories (A-E) to the Court for *in camera* review. To further aid the Court's review, documents for which BP claims privilege in Category A have been printed on yellow paper.

***Document Families***. Each document being submitted for *in camera* review is being submitted as part of a complete document family, as appropriate. This is true notwithstanding that some document family members are not privileged and/or have previously been produced. Accordingly, the three logs corresponding to these three document sets list every document submitted, including non-privileged family members. To further aid the Court's review, the entries corresponding to the non-privileged family members are highlighted in gray on the privilege logs.

BP understands that the Court's privilege rulings may be issued with respect to entire families of documents. Partly for this reason, BP has placed documents in Categories by entire family, not on an individual-document basis. Nevertheless, to the extent the Court addresses the privileged status of individual documents (as opposed to document families), the Court need not address the individual, non-privileged documents highlighted in gray on the privilege logs.

## II.     The United States and Transcocean's Objections

Considering the United States' initial motion, and the attached correspondence, it appears to us that the United States, joined by Transocean, has the following objections to this *in camera* submission. (*See* Attachments B and C.)

*First*, the United States, joined by Transocean, disputes whether *in camera* review is necessary at all because, in its view, the United States is entitled to all of the documents it seeks. The United States' position, however, is premised on clear legal error — the Unites States' mistaken assumption that satisfying a "related to" standard is sufficient for showing the applicability of the crime-fraud exception. Under the correct "in furtherance of" standard, not all documents "related to" the United States' document requests must be produced. As BP's Opposition explains, only through a document-by-document review can the Court determine whether the exception to privilege applies to any particular document. (Rec. Doc. 8715, at 24.)

*Second*, The United States and Transocean have also objected to BP's submitting a "secret brief" *in camera*. (Attachment A, at 2; Attachment B.) This objection should be easily resolved, however, because it appears to be premised on a misunderstanding of the materials to be submitted. As described above, BP is not submitting any *in camera* briefing, or even an *in camera* declaration as we have done in connection with past privilege disputes. Our submission consists of, instead, just the documents and logs described above.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 5, 2013
Page 6

*Finally*, even though the United States (and Transocean) object to the Court's performing any *in camera* review, these parties still demand to see the logs that BP has prepared on a voluntary basis. (Attachment A, at 1; Attachment B.) As stated above, however, because BP was under no obligation to assemble these logs, and because the logs contain significantly less information than previous submissions *in camera*, this demand is without foundation.

Nonetheless, as described in our Opposition, BP is amenable to sharing the three logs regarding the May 19 note, the May 24 letter, and the June 25 letter provided the parties will agree to the common sense proposition that the logs be treated as Confidential.

As for the remaining two logs (May 4 briefing and SEC submission), BP is only submitting them *in camera* to help orient and assist the Court's review. These logs do not contain a categorization of documents (A through E), nor any other information beyond what is typical on an MDL privilege log.

Because the United States' has failed to make a *prima facie* showing regarding these documents, the documents described on these two logs are not yet at issue, and there is no need for further distribution of the logs.

### III. Proposed Next Steps

BP will send to the Court this afternoon the documents and five privilege logs described above.

As in past instances of similar submissions, the documents will be provided in tabbed binders. Here, however, in light of the pending objections BP is providing two sealed envelopes containing the five privilege logs. As noted above, the first sealed envelope contains three logs marked Confidential — one each for documents related to the May 19 note, May 24 letter, and June 25 letter. These logs correspond to the documents submitted and contain the previously described A-E categorization. These logs should aid the Court's *in camera* review of the documents submitted.

The second sealed envelope contains the May 4 and SEC logs, which are being submitted for *in camera* review. BP proposes the Court review these logs in the context of the United States' motion, but has put them in the envelopes in the event the Court wishes to convene a call between the parties before its review.

Finally, BP reiterates its offer to share the three logs in the first envelope (those relating to the May 19, May 24, and June 25 logs) with opposing parties. Assuming the Court agrees that parties should treat as Confidential these three privilege logs, BP will promptly send these logs by email to the parties.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 5, 2013
Page 7

*   *   *

  BP trusts that the submitted materials and the approach outlined above will assist the Court in efficiently and effectively resolving the United States' motion. In particular, BP proposes that the Court perform an *in camera* review of these documents, as it has previously for similar privilege challenges. But should the Court have questions regarding this somewhat complicated submission — or the United States and Transocean's objections to it — BP would be pleased to join a call with the Court and the United States to answer them.

                 Sincerely,

                 Robert R. Gasaway

Attachments

cc (by electronic mail):
Michael O'Keefe
United States' MDL Counsel
Plaintiffs' Liaison Counsel
Defense Liaison Counsel
Joel M. Gross

# Attachment A



**U.S. Department of Justice**

Environment and Natural Resource Division

---

*P.O. Box 7611*
*Washington, DC 20044*
*202-514-5261*
*Thomas.Benson@usdoj.gov*

March 1, 2013

**BY ELECTRONIC MAIL**

Don K. Haycraft
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, LA
dkhaycraft@liskow.com

    Re:    MDL 2179: BP's Opposition to the United States' Motion to Compel Production of Previously-Withheld Documents Pursuant to the Crime-Fraud Exception to the Attorney-Client Privilege

Dear Mr. Haycraft:

    We received the opposition to the United States' Motion to Compel Pursuant to the Crime-Fraud Exception that BP filed last night. In BP's brief, the company states that it will "soon submit privilege logs under seal, together with a submission, made for purposes of *in camera* review, of all documents appearing on the logs relating to May 24 and June 25 letters and May 19 note, respectively." BP Brief at 8; *see also* BP Brief at 24.

    We have two serious concerns with BP's proposal. First, to the extent BP decides to provide privilege logs to the Court, those logs should be served on all counsel, rather than filed under seal with the Court.[1] The logs themselves are not privileged, and we note that BP offered to provide privilege logs to the United States in the meet-and-confer process before changing its mind once a briefing schedule was set. *See* February 13, 2013 R. Gasaway Letter; February 26, 2013 M. Petrino Email.

---

[1] As stated in our brief and previous correspondence, we do not believe *in camera* review is necessary in this situation. *In camera* review is only necessary when needed to determine whether a crime or fraud has occurred. Here, that fact is established by BP's own admissions.

1

Second, we object to BP providing any *in camera* submission to the Court with the privilege logs. The Court set a schedule for BP to file its brief on this matter, and BP has done so. There is no reason for BP to get a second, secret brief on the issue.

Given these objections, we trust that if BP opts to proceed with its stated intention to provide privilege logs to the Court, it will (1) provide those logs to counsel at the same time and (2) not provide any *in camera* submission on the issue. If you do not agree to these parameters, please advise, and we will raise the issue with the Court.

                      Sincerely,

                      /s/ *Thomas A. Benson*
                      Thomas A. Benson

cc:    Counsel of Record via Lexis File & Serve

# Attachment B



SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin, Suite 3700
Houston, Texas 77002
713.470.6100  Fax 713.654.1301
www.sutherland.com

**STEVEN ROBERTS**
DIRECT LINE: 713.470.6192
E-mail: steven.roberts@sutherland.com

March 3, 2013

<u>VIA ELECTRONIC MAIL</u>

Don K. Haycraft
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139

   Re: MDL 2179: BP's Opposition to the United States' Motion to Compel Production of Previously-Withheld Documents Pursuant to the Crime-Fraud Exception to the Attorney-Client Privilege

Dear Mr. Haycraft:

  Transocean joins the position articulated by Mr. Thomas Benson of the Department of Justice in his correspondence to you, dated March 1, 2013. For the reasons outlined by the United States, Transocean also objects to BP's proposal to provide the Court with privilege logs and a submission for *in camera review* in response to the United States' Motion to Compel Production of Previously-Withheld Documents Pursuant to the Crime-Fraud Exception to the Attorney-Client Privilege.

              Sincerely,

              */s/ Steven L. Roberts*
              Steven L. Roberts

SR/rcb

ATLANTA  AUSTIN  HOUSTON  NEW YORK  SACRAMENTO  WASHINGTON DC

# Attachment C

**Attachment C**

The documents referenced on the privilege logs submitted to the Court in two sealed envelopes, as described in the attached cover letter, are "related to" the five separate requests for disclosure of previously withheld documents appearing in the United States' motion. These documents were identified through a reasonable good-faith review, as described below, of documents previously withheld as privileged (whether logged or unlogged per PTO 14) that are responsive to the agreed MDL search criteria.

*First*, an initial group of withheld documents to be examined was delineated by attempting in good faith to identify the withheld documents reasonably related to the five separate requests within the United States motion (*see* Rec. Doc. 8149, at 2). Upon consideration, we determined the following date ranges for each of the five requests were appropriate:

- April 24 and May 4, 2010 (the date of the Unified Command's first announcement of a flow rate estimate and the date of the last of the three SEC filings in question, respectively) (USA request re SEC filings)

- April 24 and May 4, 2010 (the date of the Unified Command's announcement of the 1,000 bpd estimate and the date of the non-public congressional briefing spotlighted in the United States' motion, respectively) (USA request re May 4 congressional briefing)

- May 14 and May 19, 2010 (a conservative early bound for the drafting period for the May 19, 2010 flow rate note, which likely began at least two days later) (USA request re May 19 note)

- May 14 and May 24, 2010, (the date of Congressman Markey's letter to BP and the date of BP's response to that letter, respectively) (USA request re May 24 letter)

- June 20 and June 25, 2010 (the date of Congressman Markey's release of two documents from the May 24, 2010 submission and the date of BP's letter responding to that release, respectively) (USA request re June 25 letter)

The search was performed in a manner designed to capture documents falling within the above date ranges, including documents that had a single family member falling within the above date ranges. BP applied an inclusive definition of "date" to include the Document Date (DOCDATE), Sent Date (TIMESENT), File Created Date (DATECRTD), as well as any date privilege loggers may have manually assigned during the privilege logging process.

*Second*, the documents returned as a result of the above search were reviewed by attorneys one-by-one to determine whether they relate to preparing for the May 4, 2010 hearing or drafting the May 19 note to Admirals Landry and Allen, the May 24 or June 25 letters to Congressman Markey, or the three SEC filings spotlighted in the United States' motion.

***Third***, upon completion of the initial round of review by attorneys, a QC search was performed that was designed to identify additional documents not previously marked as related to one of the five document sets sought by the United States.

For those documents in the April 28 and May 4 timeframe, not marked as relevant, BP performed three searches: **(1)** a search of document text and TO/FROM/CC field for documents involving David Rainey, a **(2)** a document text search for draft versions of the materials filed with the SEC on April 29, April 30 and May 4, and **(3)** a document text search for draft versions of the talking points prepared for the May 4 non-public congressional briefing.

For those documents in the May 14 to May 24 and June 20 to June 25 timeframes not marked as relevant, BP performed two searches, **(1)** a search of document text for "Markey" and **(2)** a search of document text and TO/FROM/CC fields for David Rainey, Jeffrey Morgheim, Trevor Hill, or Mike Mason.

***Fourth***, documents identified by these searches were re-reviewed for documents related to one or more of the United States' five requests.

***Finally***, documents "related to" the United States' five requests were logged in approximately the same manner as documents are normally logged in the MDL.  And those documents related to the May 19 note or the May 24 or June 25 letter were categorized, by document family, according to the categories described in BP's Opposition brief.  (*See* Rec. Doc. 8715, at 1-2.)  Those categories are reprinted here for the Court's and parties' convenience.

- Category A:  Documents in which Mr. Rainey is an active participant and that relate to the matters in BP's guilty plea allocution.

- Category B:  Documents in which Mr. Rainey is a passive recipient of a communication (either as a recipient or as someone on the "cc" line).

- Category C:  Documents in which Mr. Rainey is an active participant in the communication but that do not relate to the matters in BP's guilty plea allocution.

- Category D:  Documents in which Mr. Rainey is not part of the communication but where the participants refer to or recount a prior interaction with Mr. Rainey.

- Category E:  Documents that relate to a communication as to which BP allocuted but that post-date the communication and/or that concern an aspect of the communication that was not the subject of BP's guilty plea allocution.