**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO, ON APRIL 20, 2010 | * | SECTION: J |
| | * | |
| | * | |
| THIS DOCUMENT RELATES TO ALL | * | JUDGE BARBIER |
| CASES | | MAGISTRATE JUDGE SHUSHAN |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**BP'S REPLY MEMORANDUM IN SUPPORT OF MOTION**
**FOR SANCTIONS RESULTING FROM HALLIBURTON'S**
**<u>DESTRUCTION AND SPOLIATION OF EVIDENCE</u>**

Halliburton's response continues to mischaracterize the cement sample at issue (Sample #63981), while confirming that Halliburton spoliated this and other crucial evidence, causing substantial injury to the parties and the Court.

*First*, Halliburton attempts to diminish the significance of Sample #63981 by referring to it as the "Kodiak Blend" and claiming that it was "retrieved from the *Deepwater Horizon* on December 27, 2009 while it was over the Kodiak Well." (HESI Resp. n.1). That is inconsistent with Halliburton's documents and prior disclosures, according to which Sample #63981 was retrieved from the *Deepwater Horizon* and then logged into Halliburton's lab on February 23, 2010, more than three weeks after the *Deepwater Horizon* moved to the Macondo well. (*See* BP Opening Br. Ex. 2 at p. 4 ("Barcode Sample Date: February 23rd, 2010"); Ex. 3 at p. 1 ("A paper label affixed to the bucket identifies it as Sample I.D. #63981, with a 'Date' of '23 02 2010.'") and p. 2 ("Sample ID #63981, which is sent in from rig, is logged into lab" on "February 23, 2010"); Ex. 4 (label with date of "23 02 2010"); Ex. A hereto (TREX 5595, Weigh-Up Sheet)).

*Second*, Halliburton does not dispute that Sample #63981 came from the same batch of cement on the *Deepwater Horizon* that was used to cement the production casing at Macondo.

*Third*, Halliburton does not assert that its attorneys had any communication with Tim Quirk in 2010 about preserving and producing the cement from the *Deepwater Horizon*, or even that Quirk was shown the subpoenas. Halliburton's failure to produce Sample #63981 is much more than "a simple misunderstanding," as Halliburton contends. (HESI Resp. at 10). Rather, Halliburton's failure to oversee adequately Quirk's preservation and production of *Deepwater Horizon* cement samples in 2010 is flatly inconsistent with its obligations under the Federal Rules. *See Yelton v. PHI, Inc.*, 279 F.R.D. 377, 387 (E.D. La. 2011) ("Counsel must oversee compliance

1

with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents.") (internal citation and quotation omitted).

*Fourth*, Halliburton does not dispute that, according to Halliburton's own witnesses, Sample #63981 has deteriorated over time.  Indeed, Halliburton contends that the newly "discovered" Sample #63981 (over 3.75 gallons) is "largely irrelevant" and "less representative" than the sample Halliburton did produce (Sample #67314, 1.5 gallons) due to "the age of the Kodiak Blend."  (HESI Resp. at 9).  But if "age" can render a cement sample "less representative" and "largely irrelevant," as Halliburton claims, then Halliburton's withholding of Sample #63981 for three years constitutes spoliation.

*Fifth,* Halliburton does not dispute that the United States declined to run certain tests requested by BP because of the limited volume of the sample Halliburton produced.  Halliburton instead argues that "BP never requested additional testing after it learned"—during the November 2011 deposition of Greg Garrison—that the "U.S. did not utilize all of the Macondo Blend" in its testing.  (HESI Resp. at 12).  By that date, however, the time for serving Phase 1 discovery requests had passed, initial expert reports had been filed, the February 2012 trial date was approaching, and the sample had further "deteriorated" according to Halliburton's witnesses.

*Sixth,* Halliburton does not dispute that it failed to produce the critical Roth Notes until October 2011, well after Roth's July 2011 deposition, even though Roth testified that he provided his notes to Halliburton's attorneys by at least March 2011.

## I.      Halliburton Cannot Use Its Own Noncompliance With Subpoenas As An Excuse For Spoliation And Destruction Of Evidence.

Halliburton suggests that Sample #63981 was responsive to *four* different subpoenas issued by the United States.  (HESI Resp. at 3).  Halliburton then suggests that the United States agreed that Halliburton, by producing the materials listed in Attachment C of its CSB response (HESI

Resp., Ex. 2 at 6, Rec. Doc. 9022-2) had fulfilled its obligations under those subpoenas despite not producing Sample #63981.  (HESI Resp. at 3).  This statement is not candid.  In Attachment C, Halliburton stated that "HESI has secured the following physical samples from the *Deepwater Horizon* project" but failed to identify Sample #63981.  (*See* Rec. Doc. 9022-2 at 6).  Thus, Attachment C contained Halliburton's incomplete listing of physical samples.  Because Attachment C stated that "HESI has secured the following physical samples from the *Deepwater Horizon* project," Halliburton led the parties to believe that it was turning over everything relevant.  Indeed, Halliburton confirmed to this Court that it had turned over the rig sample in response to the subpoenas.  Judge Barbier asked Halliburton's counsel on March 12, 2013:  "What happened to the sample from the rig, the rig sample itself?"  (Tr. 3172:16-17).  Halliburton's counsel responded: "It is in the possession of the U.S. government."  (Tr. 3173:3-4); *see also* (Rec. Doc. 4961 at 4) (HESI Dec. 2011 response).

Likewise, Halliburton incorrectly asserts that "the United States subsequently agreed that production of the materials identified in the Second List would satisfy HESI's obligations."  (HESI Resp. at 3).  In the September 15, 2010 email cited by Halliburton, however, the United States stated only that "this ***procedure*** will satisfy the Marine Board's subpoena and the IG subpoena." (HESI Resp., Ex. 12 at 2, Email from B. Bowman to S. Smith (September 17, 2010), Rec. Doc. 9022-12) (emphasis added).  With respect to the materials subject to the subpoena, Halliburton's counsel responded:  "Sharon our client will agree to turn over ***all of what it has left over***."  (*Id.*) (emphasis added).  Even more importantly, in statements to this Court, Halliburton represented that it had turned over to the United States the rig sample from the *Deepwater Horizon.*  (*See* BP Opening Br. at 8-9).  Those statements to the Court were not true; Sample #63981 had not been produced to the Government.

3

Halliburton also attempts to excuse its failure to produce Sample #63981 by contending that BP did not request cement samples.  As an initial matter, Halliburton does not dispute that BP requested rig samples only nine days after the April 20, 2010 blowout.  (*See* BP Opening Br., Exhibit 6, Email from J. Lucari to J. Ferguson (April 29, 2010), Rec. Doc. 8977-7).  Moreover, BP served its initial discovery requests on March 25, 2011, long after Halliburton had represented that it had turned over all rig samples to the United States.

Halliburton faults BP and the other parties for not discovering Halliburton's failure to produce Sample #63981, contending that Sample #63981 was referenced in various documents produced in discovery.  (HESI Resp. at 10-11).  In essence, Halliburton argues that it should not be sanctioned because BP and others did not catch Halliburton's discovery misconduct.  Until Halliburton's email on March 13, 2013 announcing its "discovery," however, BP had no reason to suspect that Halliburton's multiple representations to the Court and the parties that it had produced the *Deepwater Horizon* rig sample were untrue.  Unlike BP, Halliburton had the cement sitting in its storage area in a bucket labeled *Deepwater Horizon*.

II.     **Halliburton's Argument That BP Must Show <u>Both</u> Noncompliance With PTO 1 And Bad Faith Is Incorrect.**

Halliburton incorrectly suggests that, in order for sanctions to be awarded, BP must show both noncompliance with PTO 1 ***and*** bad faith.  (HESI Resp. at 9-10).  Halliburton fails to recognize that a showing of bad faith is not required for the Court to award sanctions pursuant to Rule 37.  *See Yelton v. PHI, Inc.*, 279 F.R.D. 377, 385 (E.D. La. 2011) ("In order for this Court to impose sanctions under its inherent power, however, it must find bad faith—which is not required under Rule 37.").  Here, Halliburton violated PTO 1 by destroying the Morgan and Quirk samples, the Quirk notes, the results of the Displace 3D Modeling, and by allowing spoliation to occur with its newly disclosed container of rig blend.  Thus, sanctions under Rule 37 are appropriate.

4

Nor is a showing that Halliburton violated PTO 1 required for the Court to award sanctions pursuant to its inherent authority. *Id.* ("Here, PHI does not allege that Sikorsky violated any discovery order or other directive by the Court. Thus, their motions are properly stated pursuant to this Court's inherent powers, and not Rule 37."). As in *Yelton,* Halliburton's pattern of destruction and spoliation of evidence in connection with post-incident testing—coupled with Halliburton's misrepresentations to the Court here—amply justify a bad-faith finding. *See id.* at 392 (in finding bad faith, Court noted that "on more than one instance, Mr. Potts requested that he delete reference to the S92 data used in his bird strike simulation analysis, and that he complied").

## III.    BP's Requested Sanctions Are Appropriate.

Halliburton and the United States take issue with the specific sanctions requested by BP. In its opening brief, BP explained in detail why its proposed sanctions are related to the conduct at issue. The United States, which has no claims against Halliburton, opposes BP's proposed adverse factual findings because they arguably fail to recognize BP's alleged role in various cementing issues. (Rec. Doc. 8992). To accommodate this concern, BP would not oppose a finding that Halliburton's final cement design was unstable and was <u>a</u> cause of hydrocarbons entering the wellbore. The United States also opposes BP's request that opinion testimony be allowed from the depositions of Gardner and Garrison, contending that the Court has held such opinions are foreclosed by statute. In fact, the Court excluded their opinion testimony because they were not retained experts, and further held their testimony is "not rendered inadmissible by their relationship to the excluded government reports." (Rec. Docs. 5618, 5810).

## <u>Conclusion</u>

For the foregoing reasons, BP respectfully requests that the Court enter an order consistent with the relief sought by BP.

5

March 27, 2013                              Respectfully submitted,


                                            /s/ Don K. Haycraft
                                            Don K. Haycraft (Bar#14361)
                                            R. Keith Jarrett (Bar #16984)
                                            LISKOW & LEWIS
                                            701 Poydras Street, Suite 5000
                                            New Orleans, Louisiana 70139-5099
                                            Telephone: (504) 581-7979
                                            Facsimile: (504) 556-4108

                                            J. Andrew Langan, P.C.
                                            Matthew T. Regan, P.C.
                                            Hariklia Karis, P.C.
                                            Scott W. Fowkes, P.C.
                                            KIRKLAND & ELLIS LLP
                                            300 North LaSalle Street
                                            Chicago, IL 60654
                                            312-862-2000 (Tel)
                                            312-862-2200 (Fax)

                                            Robert C. "Mike" Brock
                                            COVINGTON & BURLING LLP
                                            1201 Pennsylvania Avenue, NW
                                            Washington, DC 20004-2401
                                            202-662-5985

                                            *Attorneys for Defendants BP Exploration & Production Inc. and BP America Production Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 27th day of March, 2013.


/s/ Don K. Haycraft