UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * | MDL NO. 2179<br><br>SECTION J<br><br>JUDGE BARBIER |
| APPLIES TO: No. 12-311 | * * | MAG. JUDGE SHUSHAN |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### PLAINTIFF CAMERON INTERNATIONAL CORPORATION'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.

PLEASE TAKE NOTICE that pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Plaintiff Cameron International Corporation ("Cameron"), by and through its attorneys, hereby propounds the following requests for admission on Defendant Liberty Insurance Underwriters, Inc. ("Liberty"). Liberty must provide answers to these requests for admission within the time specified by the Federal Rules of Civil Procedure.

### DEFINITIONS

1. All terms not otherwise defined shall have their ordinary and common meanings. Notwithstanding any definition below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

2. "Blowout Liability" shall mean liability with respect to pollution, loss of hydrocarbons, damage to reservoirs, loss of hole or other damages associated with blowout or

1118928v1

**Exhibit A**

loss of well control, excluding liability arising from claims brought by Transocean's employees for personal injury, death or property damage.

3. "BP" shall mean BP Exploration & Production, Inc. and all of its parents, subsidiaries, affiliates, predecessors and successors in interests, and any of its officers, directors, partners, employees, representatives, and agents.

4. "BP Settlement" shall mean the Confidential Settlement Agreement, Mutual Releases and Agreement to Indemnify entered into between Cameron and BP on December 15, 2011, including any drafts thereof and negotiations related thereto.

5. "Cameron" shall mean Cameron International Corporation and all of its parents, subsidiaries, affiliates, predecessors and successors in interests, and any of its officers, directors, partners, employees, representatives, and agents.

6. "Deepwater Horizon Incident" shall mean the April 20, 2010 explosion of Transocean's Deepwater Horizon Mobile Offshore Drilling Unit and consequent release of oil into the Gulf of Mexico.

7. "Liberty," "You," or "Your" shall mean defendant Liberty Insurance Underwriters, Inc., including any of its officers, directors, partners, employees, and agents.

8. "Liberty Policy" shall mean the excess liability insurance policy purchased from Liberty by Cameron for the policy period from July 1, 2009 to July 1, 2010 (policy number LQ1-B71-198583-046).

9. "Transocean" shall mean Transocean Ltd. and all of its parents, subsidiaries, affiliates, predecessors and successors in interests, and any of its officers, directors, partners, employees, representatives, and agents.

10. "Including" or "includes" means "including but not limited to" or "including without limitation."

11. "Relating to," "concerning," "regarding" and "in connection with" are to be interpreted synonymously and in the broadest sense, and shall mean and include the words referring to, describing, evidencing, or constituting.

The words "and" and "or" shall be construed conjunctively or disjunctively, as necessary to make the request inclusive rather than exclusive.

## REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Admit that, on or about April 23, 2010, Cameron gave Liberty notice that it had incurred potential liability arising from the Deepwater Horizon Incident that could result in a "loss" under the Liberty Policy.

### RESPONSE TO REQUEST FOR ADMISSION:


### REQUEST FOR ADMISSION NO. 2:

Admit that Liberty, through its counsel, stated that Cameron should offer to settle its disputes with BP related to the Deepwater Horizon Incident for $10 million or less.

### RESPONSE TO REQUEST FOR ADMISSION:


### REQUEST FOR ADMISSION NO. 3:

Admit that Liberty, through its counsel, stated that Liberty did not object to the $250 million settlement amount of the BP Settlement.

1118928v1

**RESPONSE TO REQUEST FOR ADMISSION:**

**REQUEST FOR ADMISSION NO. 4:**

Admit that Cameron responded to all requests for information from Liberty in its investigation into Cameron's potential exposure arising from the Deepwater Horizon Incident.

**RESPONSE TO REQUEST FOR ADMISSION:**

**REQUEST FOR ADMISSION NO. 5:**

Admit that, prior to November 7, 2011, Liberty had concluded that attachment could be an issue, given Cameron's outstanding indemnity claim against Transocean.

**RESPONSE TO REQUEST FOR ADMISSION:**

**REQUEST FOR ADMISSION NO. 6:**

Admit that, prior to November 7, 2011, Liberty did not communicate to Cameron the position that the Liberty Policy's "Other Insurance" provision meant that Liberty did not have to pay Cameron's claim in connection with the Deepwater Horizon Incident until after Transocean fulfilled its purported indemnity obligations to Cameron.

**RESPONSE TO REQUEST FOR ADMISSION:**

**REQUEST FOR ADMISSION NO. 7:**

Admit that, prior to November 7, 2011, Liberty did not communicate to Cameron the position that the Liberty Policy's "Other Insurance" provision was a potential basis to refuse to pay Cameron's claim in connection with the Deepwater Horizon Incident.

4

**RESPONSE TO REQUEST FOR ADMISSION:**

**REQUEST FOR ADMISSION NO. 8:**

Admit that Liberty proposed to pay $8.3 million on December 15, 2011 for Cameron's claim in connection with the Deepwater Horizon Incident, instead of the $50 million in coverage limits of the Liberty Policy.

**RESPONSE TO REQUEST FOR ADMISSION:**

**REQUEST FOR ADMISSION NO. 9:**

Admit that, prior to December 15, 2011, Liberty had denied that it owed any obligation to pay Cameron's claim in connection with the Deepwater Horizon Incident.

**RESPONSE TO REQUEST FOR ADMISSION:**

**REQUEST FOR ADMISSION NO. 10:**

Admit that Liberty is not a party to the BP Settlement.

**RESPONSE TO REQUEST FOR ADMISSION:**

**REQUEST FOR ADMISSION NO. 11:**

Admit that the document attached as Exhibit 1 to these Requests for Admission is a true and correct copy of a letter sent from Paul R. Koepff to Brad Eastman dated November 7, 2011.

**RESPONSE TO REQUEST FOR ADMISSION:**

1118928v1

**REQUEST FOR ADMISSION NO. 12:**

Admit that the document attached as Exhibit 2 to these Requests for Admission is a true and correct copy of a letter sent from Paul R. Koepff to Mitchell J. Auslander dated December 13, 2011.

**RESPONSE TO REQUEST FOR ADMISSION:**

**REQUEST FOR ADMISSION NO. 13:**

Admit that the document attached as Exhibit 3 to these Requests for Admission is a true and correct copy of a letter sent from Paul R. Koepff to Mitchell J. Auslander dated December 14, 2011.

**RESPONSE TO REQUEST FOR ADMISSION:**

**REQUEST FOR ADMISSION NO. 14:**

Admit that the document attached as Exhibit 4 to these Requests for Admission is a true and correct copy of a letter sent from Richard W. Bryan to Paul R. Koepff dated December 14, 2011.

**RESPONSE TO REQUEST FOR ADMISSION:**

**REQUEST FOR ADMISSION NO. 15:**

Admit that Liberty was aware as of December 15, 2011 that Transocean had not acknowledged that it owed indemnity to Cameron for Blowout Liability in connection with the Deepwater Horizon Incident.

1118928v1

**RESPONSE TO REQUEST FOR ADMISSION:**

**REQUEST FOR ADMISSION NO. 16:**

Admit that Liberty was aware as of December 15, 2011 that Transocean had refused to pay Cameron any indemnity for Blowout Liability in connection with the Deepwater Horizon Incident.

**RESPONSE TO REQUEST FOR ADMISSION:**

**REQUEST FOR ADMISSION NO. 17:**

Admit that Liberty was aware as of December 15, 2011 that Transocean had sued Cameron seeking a declaration that it did not owe Cameron any indemnity for Blowout Liability in connection with the Deepwater Horizon Incident.

**RESPONSE TO REQUEST FOR ADMISSION:**

**REQUEST FOR ADMISSION NO. 18:**

Admit that Liberty never provided notice to Transocean that Liberty might have a potential subrogation claim against Transocean under the Liberty Policy.

**RESPONSE TO REQUEST FOR ADMISSION:**

**REQUEST FOR ADMISSION NO. 19:**

Admit that Liberty has never paid any money to Cameron pursuant to the Liberty Policy in connection with Cameron's claim for coverage relating to the Deepwater Horizon Incident.

**RESPONSE TO REQUEST FOR ADMISSION:**

**REQUEST FOR ADMISSION NO. 20:**

Admit that the language of the "Other Insurance" provision in the Liberty Policy is identical to the language of the "Other Insurance" provision in Liberty's policy form 0101-XS(03 00).

**RESPONSE TO REQUEST FOR ADMISSION:**

**REQUEST FOR ADMISSION NO. 21:**

Admit that Liberty did not know as of December 15, 2011 whether Transocean would indemnify Cameron for Blowout Liability in connection with the Deepwater Horizon Incident.

**RESPONSE TO REQUEST FOR ADMISSION:**

**REQUEST FOR ADMISSION NO. 22:**

Admit that on December 12, 2011, Liberty was told that Cameron and BP had reached a tentative settlement agreement that was subject to approval by Cameron's board and Cameron's insurers' consent.

**RESPONSE TO REQUEST FOR ADMISSION:**

1118928v1

Dated:   February 28, 2013           /s/ Phillip A. Wittmann
                                     Phillip A. Wittmann, 13625
                                         pwittmann@stonepigman.com
                                     Carmelite M. Bertaut, 3054
                                         cbertaut@stonepigman.com
                                     Keith B. Hall, 24444
                                         khall@stonepigman.com
                                     Jared Davidson, 32419
                                         jdavidson@stonepigman.com

                                     STONE PIGMAN WALTHER WITTMANN L.L.C.
                                     546 Carondelet Street
                                     New Orleans, Louisiana 70130
                                     504-581-3200
                                     504-581-3361 (fax)

                                     *Attorneys for Cameron International Corporation*

                                         Of Counsel:

                                     WILLKIE FARR & GALLAGHER LLP
                                     Mitchell J. Auslander
                                     Jeffrey B. Korn
                                     787 Seventh Avenue
                                     New York, NY 10019
                                     (212) 728-8000
                                     mauslander@willkie.com

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Plaintiff Cameron International Corporation's First Set of Requests for Admission to Defendant Liberty Insurance Underwriters, Inc. has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 28th day of February 2013.

                              /s/    Phillip A. Wittmann

9

1118928v1



The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: 212 710 3900
Facsimile: 212 710 3950
www.clydeco.us
Paul.Koepff@clydeco.us

November 7, 2011

Brad Eastman
Vice President
Deputy General Counsel
Cameron International Corporation
1333 West Loop South, Suite 1700
Houston, TX 77027
Brad.eastmand@c-a-m.com

  **Re:**
  **Policy Number:** LQ1B71198583046
  **Insured:** **Cameron International Corporation**
  **Incident:** ***Deepwater Horizon* Explosion and Fire**
  **Date/Incident:** **April 10, 2010**

Dear Brad:

  On behalf of Liberty Insurance Underwriters Inc. ("LIU"), we are writing to set forth its position in connection with the request made on November 4, 2011 by Cameron International Corporation ("Cameron") that (1) LIU consent, and/or waive any objections which it has, to the non-financial terms in a draft settlement agreement being demanded by BP Exploration & Production, Inc. ("BP"), and (2) should Cameron need such, LIU would agree to pay its $50 million limits.

  As explained below, LIU does not consent to any non-financial term pursuant to which its subrogation rights would be impaired. In the latest draft of the settlement agreement sent by BP to Cameron and forwarded to LIU, there are several terms that would impair LIU's subrogation rights, including in particular paragraphs 4.2, 4.3, and 4.5, where Cameron would transfer to BP Cameron's rights to contractual indemnity from Transocean Corporation ("Transocean"), Cameron would transfer any other claims which it had against Transocean, and Cameron would

Clyde & Co US LLP is a Delaware limited liability partnership with offices in New Jersey, New York and San Francisco.
Clyde & Co US LLP is affiliated with Clyde & Co LLP, a limited liability partnership registered in England and Wales.
593615v3

tabbies® EXHIBIT 1



Brad Eastman
November 7, 2011
Page 2

transfer, waive and/or release subrogation claims which its insurers had against Transocean or BP. As you know, when it was first advised of these non-financial terms, in various conference calls and at the meeting with Cameron and its insurers in Bermuda, LIU objected to such non-financial terms. LIU continues to object to such non-financial terms.

LIU notes that Cameron contends its insurers, including LIU, have supposedly waived their subrogation rights and claims as a result of a certain provision in the contract between Cameron and Transocean. LIU does not agree it has waived any subrogation rights or claims as against Transocean with respect to Cameron's contractual right to be indemnified or any contribution claims against BP. In this regard, LIU agrees with the factual and legal analysis that there was no pre-loss waiver of subrogation rights and claims that is set forth in the November 1, 2011 letter sent by ACE American and ACE Bermuda to Cameron.

Moreover, LIU declines to offer its policy limits for the following additional reason. The LIU policy has the following Other Insurance provision:

> If other insurance applies to a "loss" that is also covered by this policy, this policy will apply excess of such other insurance. Nothing herein will be construed to make this policy subject to the definitions, terms, conditions and exclusions of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.
>
> Other insurance includes any type of self-insurance, indemnification or other mechanism by which an Insured arranges for funding of legal liabilities.

As the above language clearly provides, the LIU policy is excess not just of the $3M SIR and the limits of the underlying policies of Illinois National ($25M limits), ACE American Insurance ($25M excess of $25M), and XLIC ($50M excess of $50M), but it is also excess of the contractual indemnity provided by Transocean to Cameron. The Master Service Agreement between Cameron and Transocean clearly provides a contractual indemnity pursuant to which

CLYDE&CO
US LLP

Brad Eastman
November 7, 2011
Page 3

Cameron arranged for the funding of its legal liabilities, and thus the LIU policy is excess of that contractual indemnity, within the meaning of the above Other Insurance provision.

LIU understands that Cameron believes there may be "uncertainties" with respect to its contractual right to be indemnified by Transocean, however, that does not negate the fact that Cameron has a contractual right to be indemnified by Transocean. LIU believes that until a court determines that Cameron is not entitled to contractual indemnity, the LIU policy is excess of Cameron's contractual right to be indemnified by Transocean. In this regard, within the last few days, Transocean has filed a motion for partial summary judgment seeking a declaration that BP should indemnify it. LIU urges Cameron to submit appropriate papers in support of this motion.

LIU has no obligation to indemnify unless both underlying limits and Transocean's contractual indemnity to Cameron have been exhausted. At the present time, such exhaustion has not happened.

Therefore, for the reasons set forth above, LIU would reject Cameron's request that LIU offer its $50M policy limits. LIU is not obligated to contribute its policy limits where Cameron has impaired or will be impairing LIU's subrogation rights and claims against Transocean and/or BP and/or all underlying limits and Other Insurance, are not exhausted.

LIU continues to reserve all rights which it has previously reserved, as well as all rights it has under the LIU policy, at law, and in equity.

Sincerely,

*Paul Koepff*
Paul R. Koepff



# CLYDE&CO
## US LLP

The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: 212 710 3900
Facsimile: 212 710 3950
www.clydeco.us

December 13, 2011

Mitchell J. Auslander
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099
mauslander@willkie.com

**Re: Your December 12, 2011 Email**

Dear Mitch:

On behalf of Liberty International Underwriters, Inc. ("LIU"), I am responding to your email of yesterday evening made on behalf of Cameron.

LIU is not in a position to object to the settlement amount of $250M. LIU continues to object to the objectionable non-financial terms for the reasons which it has previously expressed in letters to Cameron, which LIU hereby incorporates in this letter. However, LIU remains willing to discuss separately with Cameron its Other Insurance provision contained in our policy and any of the positions taken herein. Moreover, as previously expressed to Cameron by letter dated November 7, 2011, LIU declines to offer any amounts under its policy because the LIU policy has the following Other Insurance provision:

> If other insurance applies to a "loss" that is also covered by this policy, this policy will apply excess of such other insurance. Nothing herein will be construed to make this policy subject to the definitions, terms, conditions and exclusions of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.
>
> Other insurance includes any type of self-insurance, indemnification or other mechanism by which an Insured arranges for funding of legal liabilities.

Clyde & Co US LLP is a Delaware limited liability partnership with offices in New Jersey, New York and San Francisco.
Clyde & Co US LLP is affiliated with Clyde & Co LLP, a limited liability partnership registered in England and Wales.

621210v5

**EXHIBIT 2**

CLYDE&CO
US LLP

Mitch Auslander
December 13, 2011
Page 2

The language of the LIU policy clearly provides that the LIU policy is in excess of Cameron's $3M SIR, the underlying policies, and the contractual indemnity provided by Transocean to Cameron.

The existence of that contractual indemnity and this resulting policy provision are critical components in underwriting policies, and LIU relies upon the contractual indemnities and this provision in determining policy premiums and assessing its own risks when issuing policies. Pollution indemnities are a common practice in the drilling industry, and LIU took that into account when issuing Cameron's policy. Right now, there has been no determination that Cameron is not entitled to indemnity from Transocean for pollution damages. Without such a decision by the court, it is LIU's position that the LIU policy is excess of that indemnity. By requesting that LIU agree to Cameron waiving any indemnity claim against Transocean and waiving any right of subrogation against BP, Cameron is effectively seeking to lower LIU's attachment point. This request is unacceptable. An insurer cannot be asked to drop down and fill gaps in the insured's coverage that arise from terms and conditions the insured voluntarily assumes through a settlement agreement. It is not reasonable for Cameron to make such a request of LIU and LIU cannot under such circumstances offer to contribute money under the policy.

LIU continues to reserve all rights under the policy, in law, and in equity. LIU welcomes the opportunity to discuss the contents of this letter with Cameron.

Very truly yours,

Paul R. Koepff

cc:   Cameron's Insurers



**CLYDE&CO**
US LLP

The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: 212 710 3900
Facsimile: 212 710 3950
www.clydeco.us

December 14, 2011

Mitchell J. Auslander
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099
mauslander@willkie.com

**Re: Response to your e-mail of today**

Dear Mitch:

On behalf of Liberty International Underwriters, Inc. ("LIU"), I am responding to your email of today regarding the continuing demands of Cameron.

Initially, LIU reiterates its position set forth in my letter of yesterday regarding its non-objection to the settlement amount. LIU is not seeking to stop or interfere with any business decision that Cameron believes it needs to make regarding settlement. Furthermore, if Cameron chooses to settle LIU will not assert that Cameron breached the consent requirements of the policy. Cameron's defense of this litigation and its right to settle has been and remains in Cameron's exclusive control.

Most importantly, LIU has requested repeatedly today that additional time be obtained to further discuss the settlement terms and it also requested the opportunity to have a dialog with Cameron regarding the settlement parameters. LIU desires to negotiate a settlement with Cameron which recognizes the unique coverage issues which you and I have previously discussed and which are set forth in my prior letters on behalf of LIU, including my letter to you of yesterday. The non-economic aspects of the proposed settlement remain problematic for LIU. If Cameron's settlement extinguishes LIU's rights, including subrogation rights, such action will jeopardize any coverage which Cameron might otherwise have under the LIU policy. It is important to note, however, that this is the precise issue which we have sought to discuss with you and/or your clients yesterday and today. Sadly, Cameron has refused and instead has indicated that it will accept nothing short of a complete capitulation on all issues and a tender of all policy limits. We reiterate our prior offer to negotiate a resolution of this dispute with Cameron immediately either through counsel-to-counsel discussions or through principal-to-principal discussions.

Clyde & Co US LLP is a Delaware limited liability partnership with offices in New Jersey, New York and San Francisco.
Clyde & Co US LLP is affiliated with Clyde & Co LLP, a limited liability partnership registered in England and Wales.
622765v1

**EXHIBIT**
3



Mitch Auslander
December 14, 2011
Page 2

    Given Cameron's unwillingness to discuss these issues, LIU must reiterate the positions it has previously taken regarding its other insurance clause. The LIU policy has not yet attached to this loss for the reasons set forth in the other insurance clause. Despite this situation, LIU remains willing to discuss appropriate settlement parameters with Cameron as quickly as it needs to do so. The proverbial ball remains in Cameron's court.

    LIU continues to reserve all of its rights under the policy, in law and in equity.

Very truly yours,

Paul R. Koepff

cc:    Cameron's Insurers



# JACKSON & CAMPBELL, P.C.
*Attorneys and Counselors at Law*

December 14, 2011

**VIA ELECTRONIC MAIL**

Paul R. Koepff, Esquire
Clyde & Co. US LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174

      Re:    Cameron International Corporation
               Deepwater Horizon Incident
               Cameron-BP Settlement In Principle
               Our File No. 279211.03373

Dear Paul:

      We are writing to you on behalf of our clients Illinois National Insurance Company and AIG Excess Liability Insurance International Limited ("CAT Excess"). As you are aware, we were a carbon copy recipient of your various letters sent earlier today to counsel for Cameron, Mitch Auslander, on behalf of XL, ACE, and Liberty respectively, in response to Cameron's settlement agreement in principle with BP. As we understand your various correspondences to Cameron, XL, ACE and Liberty agree that the settlement amount ($250 million) agreed in principle between Cameron and BP is reasonable, but object to the terms and provisions in the agreement in which Cameron releases and waives its rights to seek pass through indemnification against BP (through Transocean) and transfers such rights to BP with regard to the *Deepwater Horizon* incident. Because the indemnification rights against Transocean are contingent and merely pass through rights against BP, the waiver and transfer is little more than a customary agreement by one settling party not to pursue the other settling party to recover the settlement sum.

      Successful prosecution of the indemnification rights against Transocean is by no means a certainty. First, the indemnification is only as good as the ability of Transocean to "pass it through" to Cameron. If Transocean files for bankruptcy, a bankruptcy court would be empowered to compromise or nullify the obligation. Second, Transocean itself has opposed

**EXHIBIT 4**

Mr. Paul R. Koepff, Esq.
December 14, 2011
Page 2

Cameron's motion for summary judgment seeking confirmation of the indemnity obligations of Transocean. Of course, BP has vigorously opposed Cameron and Transocean's motions for summary judgment. Indeed, the U.S. Government has also opposed Transocean's motion. These oppositions are not limited to the gross negligence issue, but attack the validity of the indemnifications more broadly.

We understand from Cameron that both the Cameron and Transocean motions for summary judgment will be heard on Friday, December 16, 2011, and the court may make comments or a ruling from the bench. If the comments or ruling are adverse to Transocean and/or Cameron, we are told that BP will rescind its willingness to settle with Cameron for $250 million.

In light of the magnitude of the risks to Cameron and the uncertainties of the enforceability of the indemnification rights, the willingness of BP to settle for $250 million and provide financially secure, unconditional indemnification can fairly be viewed as substantial consideration for the alleged waiver of your client's so-called subrogation rights. The position of LIU that its Other Insurance condition renders the policy excess of indemnification rights against third parties is hard to grasp in general, but particularly so in the context of a pass through indemnification against a settling party. Of course, we are not informed as to the negotiations or mutual intent of Cameron and LIU in this regard. In any event, CAT Excess and other overlying insurers are entitled to the benefit of any more restrictive terms in an underlying policy, such as LIU's interpretation of its other insurance clause. Yet, each of those insurers is willing to embrace the settlement. In the context of this particular loss and the opportunity to settle with BP, the actions of your clients are an unreasonable and prejudicial impediment to settlement. If this settlement is not concluded due to the actions, omissions, or positions of one or more of your clients, our clients reserve the right to seek recovery of all financial losses and damages incurred as a result thereof.

Sincerely yours,

JACKSON & CAMPBELL, P.C.

/s/

Richard W. Bryan