UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:   Oil Spill by the Oil Rig        "Deepwater Horizon" in the Gulf        Of Mexico, on April 20, 2010  This Document Relates to:            No. 13-492 | *  *  *  *  *  *  *  * | MDL No. 2179  SECTION J  HONORABLE CARL J. BARBIER  MAGISTRATE JUDGE SHUSHAN |
| BP EXPLORATION & PRODUCTION, INC. and BP AMERICA PRODUCTION COMPANY,                      *Plaintiffs*  versus  DEEPWATER HORIZON COURT SUPERVISED SETTLEMENT PROGRAM; and PATRICK A. JUNEAU, in his official capacity as Claims Administrator of the *Deepwater Horizon* Economic and Property Damages Settlement Agreement, and in his official capacity as Trustee of the *Deepwater Horizon* Economic and Property Damages Settlement Trust,                      *Defendants* | *  *  *  *  *  *  *  *  *  *  *  *  *  *  * | CIVIL ACTION NO. 13-0492  SECTION J  HONORABLE CARL J. BARBIER  MAGISTRATE JUDGE SHUSHAN |

**MEMORANDUM IN SUPPORT OF
<u>MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)</u>**

Defendants Deepwater Horizon Court Supervised Settlement Program and Patrick A. Juneau, in his official capacity as Claims Administrator of the Deepwater Horizon Court Supervised Settlement Program administering the Deepwater Horizon Economic and Property Damages Settlement Agreement (the "Settlement Agreement"), and in his official capacity as Trustee of the Deepwater Horizon Economic and Property Damages Settlement Trust, through undersigned counsel, respectfully submit this memorandum in support of their motion to dismiss

1

the Complaint filed by BP Exploration & Production, Inc. and BP America Production Company (collectively, "BP") pursuant to Fed. R. Civ. Proc. 12(b)(6).

## I. INTRODUCTION

BP's suit rests entirely on its allegation that the Defendants are misinterpreting the text of the Settlement Agreement's Business Economic Loss ("BEL") Framework and making erroneous awards to claimants based on their alleged misinterpretation. Setting aside for a moment that, even if true, Mr. Juneau is immune from suit in his official capacities, the allegation ignores the fundamental fact that the Court has issued an order requiring the Defendants to continue to interpret and administer the Settlement Agreement in the precise manner of which BP now complains. Indeed, if the Defendants adopted BP's proposed framework for analyzing a claimant's "Variable Profit" and began awarding and distributing claims based on that alternative formula, the Defendants would be in contempt of the Court's March 5, 2013 ruling and administering the Settlement Agreement contrary to its terms and provisions as explained by the Court in that same ruling. *That* would be a violation of the Defendants' responsibilities to the Parties to the Settlement Agreement (of which Mr. Juneau is not) and to the Court, as the Defendants must implement and administer the Settlement Agreement in accordance with its terms and in the manner approved by the Court.

In sum, BP has not set forth facts that give rise to a viable claim against the Defendants, as the crux of the Complaint is that the Defendants are administering the Settlement Agreement in a manner consistent with the Court's orders. Moreover, Mr. Juneau, in his official capacities as Claims Administrator and Trustee, is absolutely immune from suit.

## II. LAW AND ANALYSIS

### A. Standard for dismissal under Rule 12(b)(6)

When determining whether a plaintiff has stated a claim upon which relief can be granted for purposes of a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts as true. *Kane Enterprises v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) (citing *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986)).  Under the federal standard of notice pleading, a plaintiff is required to allege in the complaint all of the elements supporting their right to recover against a defendant. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).  A complaint must set forth sufficient facts to support the plaintiff's alleged grounds for entitlement to relief. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).  Dismissal is appropriate if the allegations in a complaint could not raise a claim of entitlement to relief. *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

### B. The Complaint should be dismissed against Mr. Juneau, as he is entitled to absolute quasi-judicial immunity from suit.[1]

The doctrine of judicial immunity insulates judges and certain other judicial authorities from civil liability for acts undertaken in furtherance of their judicial functions. *See Mireles v. Waco*, 502 U.S. 9, 11-12, 112 S. Ct. 286, 288 (1991); *Boyd v. Biggers*, 31 F.3d 279, 284-85 (5th Cir. 1994).  Judicial immunity is intended to promote "principled and fearless decision making" by removing any fear that unsatisfied litigants might harass, intimidate, or interfere in other ways with a judge's impartiality and independence. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 113 S. Ct. 2167, 2171 (1993); *Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213 (1967).  The doctrine of judicial immunity provides a public benefit, as it allows judges to be free to exercise

---

[1] Quasi-judicial immunity is properly raised in a motion to dismiss for failure to state a claim. *See Imbler v. Pachtman*, 424 U.S. 409, 416, 96 S. Ct. 984, 988 (1976).

their functions independently without a fear of consequences arising from their decision-making. *Id.* "[T]he 'touchstone' for the doctrine's applicability has been 'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.'" *Antoine*, 508 U.S. at 433 n.8 (quoting *Burns v. Reed*, 500 U.S. 478, 500, 111 S. Ct. 1934 (1991) (Scalia, J., concurring in part and dissenting in part)).

Quasi-judicial immunity, a derivative of judicial immunity, protects individuals other than judges when their actions or functions are "functionally comparable" to those of judges. *Antoine*, 508 U.S. at 435-36, 113 S. Ct. at 2171. Quasi-judicial immunity has been extended to individuals who perform duties "closely associated with the judicial process" and who "perform tasks that inextricably intertwined with the judicial function." *Young v. Selsky*, 41 F.3d 47, 51 (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S. Ct. 496, 500 (1985)); *Nystedt v. Nigro*, 700 F.3d 25, 30 (1st Cir. 2012). The doctrine of quasi-judicial immunity "is rooted in the wise idea that those who perform adjudicative functions 'require' a full exemption from liability.'" *Nystedt*, 700 F.3d at 30 (quoting *Butz v. Economou*, 438 U.S. 478, 508, 98 S. Ct. 2894)).

In extending immunity to individuals other than judges:

> [C]ourts have focused on whether the person derived his powers and responsibilities from judicial appointment; the nature of the appointed duties (whether the court relies on the officer to assist it in its judicial responsibilities); and whether the official's actions were within the scope of his quasi-judicial duties.

*Quitoriano v. Raff & Becker, LLP*, 675 F. Supp. 2d 444, 450 (S.D.N.Y, 2009) (citing *Anderson v. Conboy*, 1997 WL 177890, **6-7 (S.D.N.Y., Apr. 24, 1997); *Dilacio v. N.Y. City Dist. Council of the United Bhd. of Carpenters*, 593 F. Supp. 2d 571, 578-79 (S.D.N.Y. 2008)). In particular, absolute quasi-judicial immunity has been extended to individuals appointed to various positions

4

who serve judicial functions, including bankruptcy trustees,[2] court-appointed guardians *ad litem*,[3] court-appointed commissioners,[4] court-appointed receivers,[5] and court-appointed conservators of estates.[6]

Courts have also extended absolute quasi-judicial immunity to special masters under Fed. R. Civ. Proc. 53 and others, such as Claims Administrators, performing roles and functions similar to those of a special master. *See Nystedt*, 700 F.3d at 30 (holding that court-appointed discovery masters "plainly perform judicial functions" and are entitled to absolute quasi-judicial immunity"); *Atkinson-Baker & Associates, Inc. v. Kolts,* 7 F.3d 1452 (9th Cir. 1993) (finding that court-appointed special master "clearly exercised discretionary judgment as part of his function" and was entitled to immunity from suit); *In re Silicone Gel Breast Implant Products Liability Litigation*, No. Civ. A. 92-10000, 1994 WL 114580 (N.D. Ala., Apr. 1, 1994) (appointing a class action settlement Claims Administrator under Rule 53 and specifying that the Claims Administrator's actions in collecting, collating, processing, evaluating, and paying claims "will constitute judicial actions of this court and be protected, to the maximum extent allowable by law, by the doctrine of judicial immunity"). As the First Circuit has stated, "[t]his immunity makes perfect sense; in its absence, court-appointed [] masters would become 'lightening rod[s] for harassing litigation aimed at judicial orders.'" *Nystedt*, 700 F.3d at 31 (quoting *Kermit Constr. Corp. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976)).[7]

---

[2] *Mullis v. United States Bankruptcy Court, District of Nevada*, 828 F.2d 1385, 1387 (1987).
[3] *Ward v. San Diego County Dept. of Soc. Servs.*, 691 F. Supp 238, 241 (S.D. Cal. 1988).
[4] *Ashbrook v. Hoffman*, 617 F.2d 474, 476-77 (7th Cir. 1980).
[5] *Kermit Constr. Corp. v. Banco Y Ahorro Ponceno*, 547 F.2d 1, 2-3 (1st Cir. 1976).
[6] *Mosher v. Saalfeld*, 589 F.2d 438, 442 (9th Cir. 1978).
[7] Public policy considerations favor this extension of absolute judicial immunity to court-appointed Special Masters, Claims Administrators, and others appointed to similar positions. First, exposing members of the bar who are appointed to such positions to civil liability would likely deter many qualified, competent lawyers from accepting appointments, and, in the context

Another section of this district court similarly has concluded that special masters and others appointed pursuant to Rule 53 are entitled to quasi-judicial immunity.  *See In re Fema Trailer Formaldehyde Products Liability Litigation*, MDL 07-1873, 2011 WL 5038849 (E.D. La., Oct. 24, 2011) (Engelhardt, J.) (explaining that the court-appointed special master would be entitled to absolute quasi-judicial immunity when acting in the capacity as special master).  *See also Wilson v. Bush*, 196 Fed. Appx. 796 (11th Cir. 2006) (holding that special master entitled to judicial immunity for the orders he entered in a state quiet-title action as he was performing a judicial function); *Church of Scientology Int'l v. Kolts,* 846 F. Supp. 873 (C.D. Cal. 1994) (explaining that special master was absolutely immune from suit with respect to his discretionary judicial acts).  Finally, judicial and quasi-judicial immunity from civil suit is not limited to actions involving claims for damages, but extends to actions for injunctive and other equitable relief, as prayed for by BP here.  *See Mullis v. United States Bankruptcy Court, District of Nevada*, 828 F.2d 1385, 1394 (9th Cir. 1987); *Wightman v. Jones*, 809 F. Supp. 474, (N.D. Tex. 1992); *Emerson v. U.S.*, No. Civ.A. 12–884, 2012 WL 1802514, *3 (E.D. La., Apr. 30, 2012 (Knowles, M.J.); *Carr v. Mahone*, No. Civ.A.08-0132, 2008 WL 375501, *4 (S.D. Tex., Feb. 11, 2008); *In re Keenan*, No. Civ.A. 07-451, 2008 WL 878913, *5 (S.D. Cal., Mar. 28, 2008).[8]

---

of class actions and complex, multi-district litigation, these quasi-judicial officers are necessary to facilitate the efficient administration of large and time-consuming matters.  Further, the threat of being sued because a party disagrees with some action taken or opinion rendered could discourage appointees from acting independently and rendering disinterested, objective opinions unaffected by a fear of suit, thereby thwarting the purpose for such appointments.

[8] At the time *Mullis* was decided, there was some debate about whether the doctrine of absolute judicial immunity applied to bar claims for declaratory and injunctive relief, in light of the Supreme Court's opinion in *Pulliam v. Allen*, 466 U.S. 522, 104 S. Ct. 1970 (1984), in which the Court held that federal judges were not immune from suits for declaratory or injunctive relief under § 1983 of the Civil Rights Act.  *See Mullis*, *supra*.  Since that time, Congress abrogated *Pulliam* in part by amending § 1983 to make clear that judicial immunity does preclude most claims for injunctive relief when the action complained of was judicial in nature.  *See Leclerc v. Webb*, 270 F. Supp. 2d 779, 792-93 (E.D. La. 2003) (discussing *Pulliam* and the amendments to

In this matter, Mr. Juneau, in his capacity as Claims Administrator and Settlement Trustee, is performing acts that are judicial in nature and "intimately associated" with the judicial function, including attempting to resolve disputes between the Parties to the Settlement Agreement and implementing its terms according to his best judgment. Specifically, Mr. Juneau was appointed by the Court as Claims Administrator and Trustee *to implement and administer* the Settlement Agreement, including the processing and payment of BEL claims. *See* Settlement Agreement, Exhibit A to Complaint, § 4.3.1.[9] Further, the Claims Administrator is to "engage in supervision and oversight activities designed to ensure the implementation and integrity of the overall Settlement Program." *Id.*, § 4.3.10. In fulfillment of his role, Mr. Juneau is also charged with assisting the Parties in resolving "any issues or disagreements that arise regarding his oversight responsibilities, Settlement Administration, or any other issue involving the Settlement Program." *Id.*, § 4.3.4.

Indeed, BP's Complaint arises directly out of Mr. Juneau's attempted resolution of a disagreement between BP and Class Counsel with respect to the meaning and calculation of "Variable Profit" under the BEL Framework of the Settlement Agreement. *See* Exhibit C to Complaint. In its Complaint, BP contends that Mr. Juneau has deviated from the terms of the Agreement through his interpretation of the BEL Framework. BP does not deny, however, that Mr. Juneau, as the Claims Administrator, was the proper party to interpret and implement the Agreement in the first instance, as the documents at issue and the Court's orders impose that

---

§ 1983). Moreover, as cited above, outside of the context of § 1983 claims, most courts that have addressed this issue agree that absolute immunity bars not only claims for damages but also for injunctive relief.

[9] It is appropriate for the Court to consider these documents, as BP attached the Settlement Agreement and other referenced documents to the Complaint, and those documents are central to BP's claims. *See Collins v. Morgan, Stanley, Dean, Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

7

duty upon him. Complaint, at ¶ 68. Hence, it was contemplated by the Court and the Parties to the Settlement Agreement (of which, as discussed further below, Mr. Juneau is not) that Mr. Juneau, in his capacity as Claims Administrator, would be the proper person to interpret the Settlement Agreement and try to resolve disagreements regarding its implementation. Interpretation and implementation of the Settlement Agreement are undoubtedly functions within the province of the judiciary and constitute judicial acts. Because Mr. Juneau is acting in a quasi-judicial capacity, he is entitled to absolute quasi-judicial immunity with respect to his discretionary acts in interpreting the BEL Framework as part of the Settlement Agreement and processing claims under that framework.

### C. BP has otherwise not stated a claim against the Defendants upon which relief can be granted.

BP contends in its Complaint that the Defendants have breached and continue to breach the Settlement Agreement, Trust Agreement, and the "Undertaking" executed by Mr. Juneau, as a result of Mr. Juneau's interpretation of the BEL Framework – specifically the calculation of "Variable Profit."[10] Complaint, ¶¶ 70, 77, and 90. It further asserts that the Defendants' alleged "deviation" from the terms of the Settlement Agreement and authorizing the awards of supposedly improper payments pursuant to the Settlement Agreement constitute *ultra vires* actions that exceed the Defendants' authority under the various documents at issue. Complaint, ¶

---

[10] Specifically, BP asserts that the Defendants are violating: (1) the Settlement Agreement by allegedly misinterpreting the BEL Framework and the "Variable Profit" calculation (Complaint, ¶ 70); (2) the "Undertaking" and supplemental and amended "Undertaking," in which Mr. Juneau agreed to accept the responsibilities of Claims Administrator and implement and administer the Settlement Agreement as written, by "deviating from the terms of the Agreement" with respect to the analysis being applied to calculate "Variable Profit" (Complaint, ¶ 79); and (3) the Trust Agreement with respect to two sections therein which provide that distributions will be paid in accordance with the Settlement Agreement (Complaint, ¶ 90; *see also* Trust Agreement, Ex. B, at §§ 1.6, 2.4(c)).

97. According to BP, the Defendants' alleged "misinterpretation" of the BEL Framework and *ultra vires* acts give rise to BP's claims for injunctive relief and an order of specific performance.

It should be noted at the outset, however, that neither of the Defendants is a party to the Settlement Agreement, such that they cannot be in breach of that agreement. *See* Exhibit A to Complaint ("This **AGREEMENT** … is made and entered into by and among (i) defendants [BP], by and through their attorneys, and (ii) **PLAINTIFFS**…."). Similarly, the Settlement Program is not a party to any other alleged contract or agreement cited by BP. For that simple reason alone, all of the claims against the Settlement Program should be dismissed along with the first count for breach of the Settlement Agreement against Mr. Juneau.

Regardless, the Settlement Agreement's provisions describing the role and functions of the Claims Administrator (which Mr. Juneau did agree to undertake pursuant to the separate "Undertaking of Patrick Juneau in Furtherance of Court Order Appointing Him Claims Administrator," Exhibit E to Complaint), make clear that the Claims Administrator *shall*:

- "*be responsible to the Court*;"

- "*serve as directed by the Court*;" and

- "*faithfully implement and administer the Settlement*, *according to its terms and procedures*, for the benefit of the Economic Class, consistent with this Agreement, and/or as agreed to by the Parties and/or *as approved by the Court*."

Settlement Agreement, Ex. A to Complaint, at § 4.3.1 (emphasis added). In other words, Mr. Juneau, in his official capacity as the Claims Administrator, is responsible to this Court and must implement and administer the Settlement Agreement, including the BEL Framework, pursuant to the terms of the agreement and as directed and approved by this Court. Mr. Juneau does not have the discretion or authority to interpret and implement the BEL Framework in any other manner, including the manner now suggested by BP, regardless of the alleged equities or

9

inequities involved, as BP's proposed construction of the BEL Framework is contrary to the Settlement Agreement as construed by the Court in its March 5, 2013 ruling. Rec. Doc. 8812.

In fact, that BP disagrees with the Claims Administrator's interpretation and understanding of the calculation of "Variable Profit," as set forth in the Claims Administrator's January 15, 2013 policy decision, *is no longer relevant*. The Court has since determined that the BEL Framework (1) does not require a "matching" of expenses to revenue, the "smoothing" of revenues, or a reallocation of revenues to periods other than those during which the revenues were recorded, and (2) provides that a claimant's "Variable Profit" is to be determined based on the revenue and expenses recorded during the relevant periods selected by the claimant. Rec. Doc. 8812. In the light of the Court's ruling, the Claims Administrator's interpretation is irrelevant, rendering the relief sought here moot, even if a claim for that relief could properly be articulated. Mr. Juneau has no discretion or authority to adopt BP's proposed framework for calculating "Variable Profit," regardless of whether it may be a reasonable approach, because it would be inconsistent with the Court's interpretation of the language of the Settlement Agreement.

Further, the Settlement Agreement sets forth a procedure for resolving any disagreements regarding the Claims Administrator's oversight and administration of the Settlement Agreement. First, the Claims Administrator and other members of the Claims Administration Panel shall attempt to resolve the disagreement unanimously. *See* Settlement Agreement, Ex. A to Complaint, at § 4.3.4. If they are unable to do so, the issue or disagreement "will be referred to the Court for resolution." *Id.* BP's complaint does not allege that this procedure was not properly followed by Mr. Juneau as the Claims Administrator. Nor would

there be any support for such a contention by any Party, as the documents attached to the Complaint demonstrate that the prescribed procedure was indeed followed.

As detailed in the Claims Administrator's response to BP's request for a preliminary injunction, the issues BP raises in its Complaint regarding the application of the Settlement Agreement's BEL Framework were known and discussed by BP and Class Counsel prior to the fairness hearing on the Settlement Agreement, but these issues were not presented to the Court as reasons to withhold approval of the settlement. Nevertheless, after the fairness hearing BP and Class Counsel asked Mr. Juneau to revisit the questions regarding how the BEL Framework should be construed specifically with respect to the analysis and calculation of a claimant's "Variable Profit." When the Claims Administration Panel was unable to agree unanimously on a resolution, the matter was presented to the Court. The Court has now ruled, and the Parties, the Claims Administrator, the Trustee, and the Settlement Program are bound by that ruling.

Mr. Juneau, as the Claims Administrator and Trustee, performed and continues to perform his official functions exactly as outlined in the Settlement Agreement, the Undertaking, and the Trust Agreement. Mr. Juneau's complained-of conduct – analyzing claims for loss of business income pursuant to the Court's instruction and interpretation of the BEL Framework and authorizing payments out of the Settlement Trust in accordance with those calculations – cannot as a matter of law give rise to a breach of contract claim. The Defendants are doing exactly what they are supposed to do pursuant to the various documents at issue.[11] The

---

[11] *See*, *e.g.*, *Simon-Arnold v. EPIQ Class Action & Claims Solutions, Inc.*, 2012 WL 6106411 (D.D.C., Dec. 10, 2012) (dismissing an action filed by a group of unsuccessful claimants to a class settlement against the court-appointed Claims Administrator, finding that there were no factual assertions or evidence indicating that the Claims Administrator had done anything other than carry out his responsibilities consistent with the settlement agreement).

Complaint, thus, wholly fails to state a claim against the Defendants upon which any relief can be granted.

### III.     CONCLUSION

This action should not have been filed against Mr. Juneau, as he is absolutely immune from suit for actions taken in his official capacities as Claims Administrator and Settlement Trustee.  Further, the claims for breach of contract fail on the face of the Complaint, as BP concedes therein that the Defendants are interpreting and administering the Settlement Agreement and making payments in the manner approved by the Court in its March 5, 2013 ruling, which also renders moot the entire relief sought, even if a claim could be stated.  For all of the foregoing reasons, the Complaint should be dismissed and all requests for injunctive relief denied.

Respectfully submitted,

*/s/ Jennifer L. Thornton*
Richard C. Stanley, 8487
Jennifer L. Thornton, 27019
Gina M. Palermo, 33307
Patrick H. Fourroux, 34550
    Of
STANLEY, REUTER, ROSS,
 THORNTON & ALFORD, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone:     (504) 523-1580
Facsimile:      (504) 524-0069

*Attorneys for Deepwater Horizon Court Supervised Settlement Program and Patrick A. Juneau, in his official capacity as Claims Administrator of the Deepwater Horizon Court Supervised Settlement Program administering the Deepwater Horizon Economic and Property Damages Settlement Agreement, and in his official capacity as Trustee of the Deepwater Horizon Economic and Property Damages Settlement Trust*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of April, 2013, I electronically filed the foregoing Memorandum with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Jennifer L. Thornton*
