*A portion of this Exhibit has been redacted to protect information that has been marked as "Highly Confidential Subject to Settlement Discussions Confidentiality Agreement"*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 SECTION J |
| This document relates to all actions. | * * * * * * * | HONORABLE CARL J. BARBIER MAGISTRATE JUDGE SHUSHAN |
| Bon Secour Fisheries, Inc., *et al.*, individually and on behalf of themselves and all others similarly situated, | * * * * | Civil Action No. 12-970 SECTION J |
| Plaintiffs, v. | * * * * * | HONORABLE CARL J. BARBIER |
| BP Exploration & Production Inc.; BP America Production Company; BP p.l.c., Defendants. | * * * | MAGISTRATE JUDGE SHUSHAN |

### AFFIDAVIT OF MARK STALEY

STATE OF LOUISIANA

PARISH OF ORLEANS

     **BEFORE ME**, the undersigned authority, duly commissioned in and for the state and parish aforesaid, came and appeared:

### MARK STALEY

who, after being sworn, did depose and state as follows:

1.    I am a person of the full age of majority, and I am competent to make this affidavit. I am a Director of the Postlethwaite & Netterville accounting firm ("PN"), located at 8550 United Plaza Blvd., Suite 1001, Baton Rouge, LA 70809. Along with other Directors

EXHIBIT B

and employees of PN, I am personally involved in reviewing and processing claims pursuant to the Business Economic Loss Framework of the Economic and Property Damages Settlement Agreement.

2.      In a meeting with the Parties, the Claims Administrator and the Program Vendors on March 28, 2012, Joe Rice requested feedback from the accounting team on the proposed framework for BEL claims.  In conjunction with PricewaterhouseCoopers LLP, PN provided Framework recommendations in a memorandum dated April 4, 2012.   A copy of the memorandum and an email transmitting the memorandum, which was sent to me on April 4, 2012, is attached hereto as Exhibit 1.



3.      On September 28, 2012, we were advised by the Claims Administrator that BP had several questions to pose to the Claims Administrator and its accountants.   Those questions were:

- For industries with specialized accounting or irregularly received revenue, such as construction businesses which receive progress or milestone payments, how does the Settlement Program determine for purposes of applying the BEL methodology when given revenue and expenses are incurred.

- How does the Settlement Program determine the accounting methodology used in a claimant's financial statements (e.g., cash, accrual, etc.) and whether it has been applied on a consistent basis in the Benchmark Period and Compensation Period?

- Where a claimant has unusually large expense or negative revenue in year-end months (November or December), what does the Settlement Program do to

determine whether those amounts relate solely to the period in which they are recorded or are a "true up" of amounts recorded in prior periods? If the latter, what if any adjustments to financial statements does the Program make for purposes of evaluating causation and/or compensation?

- Where a claimant has unusually large revenue or expense in a particular month, particularly where this month appears out of the ordinary compared to the claimant's typical seasonal pattern, what does the Settlement Program do to understand the cause of the spike and ensure the spike is not a function of improper or inconsistent accounting?

4.      A conference call was scheduled on October 2, 2012 to address these questions. Answers were provided to the questions posed by the BP call participants and the call was concluded.

5.      As stated in the October 2, 2012 conference call, the Claims Administrator and accountants typically use information from a claimant's monthly profit and loss statements as presented by the claimant.

6.      Pursuant to the Claim Administrator's January 15, 2013 Policy Announcement, the Claims Administrator reserves the right to adjust the financial statements of claimants, in certain circumstances, if the claimant's statements contain (1) an inconsistent basis of accounting between benchmark and compensation periods, (2) errors in previously recorded transactions, and/or (3) flawed or inconsistent treatments of accounting estimates.  When one of these three circumstances exists, the accounting team may contact a claimant and request that the claimant correct and re-submit the statements.

7.      To my knowledge, the multi-step process proposed by BP to further evaluate claims within the construction, agriculture, and professional services industries for purposes of measuring revenue and matching corresponding variable expenses, was first proposed on January 8, 2013 in BP's submission to the Claims Administrator in response to Class Counsel's request for Formal Policy Statement.  According to the proposal, to implement

such a process may require, in certain instances, additional documentation and data from a BEL claimant to support further analysis by the Claims Administrator and its accountants.

8.        The January 15, 2013 Policy Announcement of the Claims Administrator reflects the manner in which the Settlement Program Accountants treated these issues (*i.e.*, the calculation of Variable Profit under Exhibit 4C and the matching of revenue and expenses) for the purposes of BEL claims.

_____
MARK STALEY

SWORN TO AND SUBSCRIBED
before me, this 27 day
of March, 2013.

_____
Notary Public
Name: _____
La. Bar/Notary No.: _____

**Gina M. Palermo, Esq.**
Notary Public
State of Louisiana
La. Bar Roll No. 33307
La. Notary No. 92682
My Commission is for Life