UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the | * | |
| Gulf of Mexico, on April 20, 2010 | * | SECTION "J" |
| | * | |
| This Document Relates to: 10-3896, 11-826, and | * | Judge Barbier |
| 12-968 | * | |
| * * * * * * * * * * * * * * * | * | Magistrate Judge Shushan |

MEMORANDUM IN SUPPORT OF MOTION
TO RECONSIDER MOTION TO SEVER CLAIM
FROM DEEPWATER HORIZON MDL AND TO SET SCHEDULING
CONFERENCE AND/OR TO VACATE THAT PORTION OF THE
COURT'S COMMENTS AS TO MASON'S STATUS AS A MEMBER
OF THE MEDICAL BENEFITS CLASS AND/OR TO EXTEND THE
DEADLINE FOR OPTING OUT OF THE MEDICAL BENEFITS CLASS
AS THAT DEADLINE PERTAINS TO DUWAYNE MASON

**MAY IT PLEASE THE COURT**:

On July 16, 2012, plaintiff filed his Motion to Sever Claim from Deepwater Horizon

MDL and to Set Scheduling Conference  (Rec. Doc. 6909).  The Court ordered any

opposition to be filed no later than September 5, 2012 (Rec. Doc. 7155).  Following receipt

of defendant's opposition, plaintiff requested leave of Court to file a brief reply, which was

filed on September 11, 2012 (Rec. Doc. 7365).

The Court took the matter under advisement and issued an Order and Reasons on

March 5, 2013 (Rec. Doc. 8811).  The Court denied the motion, concluding that "it appears

that *all* of Mason's claims in the Limitation Action and in *Mason v. Seacor Marine, L.L.C.*

- 1 -

are released under the medical settlement." (Rec. Doc. 8811, p. 3, emphasis original.) However, the Court noted that it has "analyzed the issue of whether Mason is a member of the Medical Benefits Class without the benefit of counsel's briefing." *Id.*, p. 4.

Based upon this ruling, Seacor has recently denied any obligation to pay for major surgery performed on March 27, 2013, concluding that all of Mr. Mason's claims for both maintenance and cure are extinguished by the Medical Benefits Class Action Settlement.[1]

Plaintiff respectfully asks this Honorable Court to reconsider the original Motion to Sever because, as demonstrated below, plaintiff is not a member of the Class, and that even if he theoretically was at some point a member of the Class, he effectively opted out by filing and prosecuting suit prior to Class certification, and by advising the Court and Seacor in writing on July 16, 2012 of his intent not to participate in the class action. Additionally, as shown below, Mason cannot be considered to have been a member of the Class because neither plaintiff nor plaintiff's counsel received any notice of the settlement agreement or its opt-out provisions. Further, as to this plaintiff, the notice is defective, which relieves him of any obligation to have opted out. Finally, even if Mason somehow is a member of the Class, due process considerations mandate the conclusion that Mason's prior inaction be deemed excusable neglect for the untimely filing of plaintiff's formal Notice of Opting Out pursuant to the Notice of Settlement Agreement, as explained below.

---

[1]       See Mason Affidavit, Exhibit "1." Mason underwent major surgery on his lung on March 27, 2013 to minimize some of the effects of the paralyzed diaphragm. See also, Exhibit "3" March 26, 2013 letter from Seacor's counsel denying liability for the surgery.

The original Motion to Sever and the instant Motion are necessary because DuWayne Mason has sustained a permanently paralyzed left hemidiaphragm.[2]  The condition is so serious that he is permanently disabled from working aboard ship with a resulting very large economic loss.  Thus, the Medical Benefits Class cannot fairly compensate this severely injured plaintiff.

**1**.  **Plaintiff is Not a Member of the Medical Benefits Class**

**A.  Mason Opted Out**

Although vigorously denying ever being part of the proposed or actual Class, plaintiff nonetheless made it explicitly clear to the Court and to the defendants herein that he unequivocally chose not to participate as a member of the Class in his Memorandum in Support of Motion to Sever, filed on July 16, 2012:

> Reference to the complaint filed in this maritime action reflects that the only named defendants are the owners and operators of the M/V SEACOR VANGUARD.  Significantly, no claims have been filed against any of those who may have been involved in causing the Deepwater Horizon disaster. DuWayne Mason hereby certifies that he has filed no claim in connection with the BP oil spill nor have any claims been submitted in connection with the Deepwater Horizon medical benefits class action settlement agreement.

> Undersigned counsel has thoroughly investigated the nature of the medical benefits class action settlement agreement and is satisfied that an adequate remedy is not available for his client within the ambit of that settlement.  Undersigned counsel's investigation has been confirmed through detailed discussions with members of the Plaintiffs' Steering Committee handling the MDL.  (Rec. Doc. 6909-1).

---

[2]    See Mason Affidavit, Exhibit "1."  Mason underwent major surgery on his lung on March 27, 2013 to minimize some of the effects of the paralyzed diaphragm.

This written notice to the Court and to all interested defendants placed everyone having any interest in the matter on notice that plaintiff was opting out of the Class. Although plaintiff's communication of his intent to be excluded from the Class Action was not directed to the entity designated in the Notice of Settlement Agreement, such technical defects in the Notice of Exclusion have been overcome where actual notice to the Court and to the defendant is shown. *McCubbery v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62 (N.D. California 1976). Further, Professors Wright & Miller have observed in their discussion of effectively opting out of a class action under Rule 23:

> [C]onsiderable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to be excluded and **any written evidence of that desire should suffice.** . . . The key is that **some communication** of the member's intent must be **received by the court** prior to the entry of judgment. Wright, Miller, and Kane, 7AA Fed. Prac. & Proc. Civ. § 1787 (3d ed.), pp. 520-21, emphasis added, footnotes omitted.

Mr. Mason's written expression to this Court in his July 16, 2012 memorandum (Rec. Doc. 6909-1) clearly and unequivocally expressed his desire not to be a member of the class long before the opt-out deadline.

*McCubbery, supra*, also stands for the proposition that in some circumstances the filing of suit can serve as a formal opt-out of a class action, particularly when, as here, the notice fails to advise the class member that failure to opt out of the class would allow the member's ongoing suit to "evaporate." (As shown below, the Notice says nothing about Seacor, pending claims against Seacor, or pending lawsuits against Seacor.)

- 4 -

Unique to the present case is the fact that Seacor is not a named defendant in the *Plaisance* case.  No reported case could be located in which filing of suit prior to class certification does or does not constitute a valid opt-out of a class in which a released party – such as Seacor in the instant case – was not a defendant in the class action.  While cases exist which hold to the contrary of the holding in *McCubbery*[3], each of those involved a situation where the defendants in the pre-certification separate suit and the defendants in the class action were identical.  Moreover, unlike those cases, in the instant case the Plaintiffs' Steering Committee authorized undersigned counsel to represent to the Court its concurrence in Mason's desire to separate his suit entirely from the Class Action and proceed with a trial against Seacor (Exhibit "2").  Given the fact that Mason told the Court he had not and would not make claim against anyone but Seacor and because Seacor is not a party to the *Plaisance* case, the totality of Mason's actions should be deemed to be an effective opt-out as a matter of fact and law.

**B.     Mason Was Never a Member of the Class**

The payment matrix incorporated in the Class settlement document addresses short-term acute conditions and chronic "upper respiratory conditions."  In the instant case, as shown in Mason's Affidavit (Exhibit "1"), he suffers from a paralyzed left hemidiaphragm.  Because the diaphragm cannot be considered part of the upper respiratory anatomy and because Mason's condition is very severe and chronic (permanently disabling), it is clear that

---

[3]        See *McCubbery*, 71 F.R.D. at 68-70.

it was never contemplated by anyone that he was intended to be included within the Medical Benefits Class.

Further, plaintiff was not a clean-up worker within the definition of the proposed settlement agreement.  That agreement defines a clean-up worker as one who performed Response Activities, defined as the clean-up, remediation efforts, and all other response actions (including the handling of dispersants or decontaminants) relating to the release of oil and other substances from the Macondo Well and/or the Deepwater Horizon oil rig and its appurtenances (equipment) that were done at the direction of the United Command, B.P., or a Federal, State, or local authority (Notice of Settlement Agreement, pp. 5-6).  Although this Honorable Court relied upon the allegations of one of the lawsuits against defendant, which pled that plaintiff was "engaged in collecting the oil and dispersant," such pleading was designed to give a physical reference to the location of the accident and to the general mission of the vessel.  However, as the plaintiff's attached Affidavit (Exhibit "1") shows, he was not involved in the collecting of the oil and dispersant personally; rather, he was assigned to the engine room, where his job was to keep the engines running so that those aboard the vessel could perform the tasks of collecting the oil and dispersant.

As a Jones Act seaman, Duwayne Mason is a ward of this Honorable Court.  The Court is all too familiar with the unique protections within the ambit of the Jones Act.  Moreover, the Medical Benefits Class settlement document specifically states it is to be construed in accordance with maritime law.  Thus, consideration of whether Mason was ever

- 6 -

a member of the Class must be construed in favor of his best interests.

There is case law which, by analogy, supports Mason's contention that he should be viewed by the Court as being outside the Class because he, himself, was not a cleanup worker.  As the Court is aware, the Oceanographic Research Vessels Act (ORVA), 46 U.S.C. §2101, places workers on vessels who are within the ambit of the statute outside the Jones Act.  However, case law has recognized that the statute should not be construed to take away the Jones Act rights of a member of the navigation crew of the vessel and that only scientific workers were meant to be excluded.  See, for example, Judge Rubin's description of the scope and limitations of ORVA in *Sennett v. Shell Oil Co.*, 325 F. Supp. 1 (E.D. La 1971). In the same way that the navigation crew of an ORVA vessel could be within the ambit of ORVA, Mason's theoretical inclusion in the Medical Benefits Class must be narrowly construed so as to preserve his Jones Act rights.

In connection with the foregoing, plaintiff respectfully directs the Court to the Class description, which includes within the definition of "Clean-up Workers" ... captains, crew and other workers employed under the Vessels of Opportunity program (Definition Q). However, the definition of "Clean-up Workers" goes on to specify that said captains or crews be involved in "Response Activities."  The term "Response Activities" is defined as follows:

Responsive Activities shall mean the clean-up, remediation efforts and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the MC252 Well and/or by the *Deepwater Horizon* and its appurtenances that were done under the auspices of the Unified Command, BP or a federal, state or local authority.

Because Mason's work was limited to operating the vessel and because he was not engaged within the "Response Activities" as defined by the Settlement Agreement, he should not be deemed to have ever been a member of the Medical Benefits Class. Any construction of the Settlement Agreement to the contrary serves to unreasonably restrict Mason's Jones Act rights in violation of the mandate that the Settlement Agreement be construed in accordance with maritime law.

### 2. Neither Plaintiff Nor Plaintiff's Counsel Received Notice of the Proposed Settlement Agreement and Opt-Out Provisions

As seen from the attached Affidavits of plaintiff (Exhibit "1") and plaintiff's counsel (Exhibit "2"), no actual notice of the Settlement Agreement was received by plaintiff or plaintiff's counsel.[4]  As the Fifth Circuit has pointed out:

> Rule 23(c)(2) prescribes the type of notice to be used in 23(b)(3) actions. It provides in part that "the court shall direct to the members of the

---

[4]     As specified in Exhibit "2," undersigned counsel never received or reviewed the Settlement Agreement or any writings related to the proposed settlement. In discussions with counsel for Seacor, Gary Hemphill, the latter expressed his client's preference that Mason pursue his relief through the "BP Settlement," which he described as the path of least resistance. Undersigned counsel then spoke to Paul Sterbcow and Steven Herman to inquire about the advisability of following the suggestion of Seacor's counsel. Both Messrs. Sterbcow and Herman advised that the Medical Benefits Settlement was not designed for a seriously injured person such as Mr. Mason. Neither Mr. Sterbcow, Mr. Herman, nor Mr. Jim Ray in a later conversation ever suggested that there was a need for Mason to opt out.

class the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." The United States Supreme Court has declared that subdivision (c)(2) expresses an "unambiguous requirement" that **"individual notice must be provided to those class members who are identifiable through reasonable effort."** *Eisen v. Carlisle & Jacquelin*, 417 U.S. at 175-76, 94 S.Ct. at 2150-51. Further, because **constructive notice has "long been recognized as a poor substitute for actual notice and its justification (is) `difficult at best.`** ' " *Id*. at 175, 94 S.Ct. at 2150, quoting *Schroeder v. City of New York*, 371 U.S. 208, 213, 83 S. Ct. 279, 283, 9 L.Ed.2d 255 (1962), it is to be used only when circumstances make it impracticable to gain the names and addresses of class members and notify them individually of the action's pendency. *Cf. Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed 865 (1950). This approach, which comports with due process standards and facilitates the class actions' *res judicata* effect, see *Eisen v. Carlisle & Jacquelin*, 417 U.S. at 173-77, 94 S.Ct. At 2150-52; Advisory Committee Note, 39 F.R.D. 98, 105, 107 (1966), demands that absentee class members be provided with the **"maximum opportunity for notice."** *Greenfield v. Villager Indus., Inc.*, 483 F.2d 824, 829-31, (3d Cir. 1973); followed, *Girsh v. Jepson*, 521 F.2d 153, 158-59 (3d Cir. 1975).

*Nissan Motor Corp. Anti-Trust Litigation*, 552 F.2d 1088 (5 Cir. 1977), emphasis added.

The *Nissan* Court also observed that notice by publication is not enough with respect to a person whose name and address are known and whose legally protected interests are directly affected by the proceedings in question. *Id.*, at 1097. Although the number of potential class members may be extremely large, the Supreme Court has noted that where the names and addresses of 2.25 million class members were easily ascertainable, there was nothing to show that individual notice could not be mailed to each. *Id.*, F.2d at 1098, citing *Eisen, supra*, at 175, 94 S.Ct. at 2151.

- 9 -

Finally, the Fifth Circuit observed that where the actual address of the plaintiff is known, it should not be left to chance that a plaintiff might receive notice of a potential class action to which he may be a member, and that due process should not be reduced to a mere chance that one might obtain notice through newspaper advertisements:

> That the absentee class member's opportunity to receive their subdivision(c)(2) notice be reduced to mere chance need not arise here. When the chore of examining defendants' RDR cards is juxtaposed to the efforts required to identify the individual *Eisen* class members, it pales by comparison. . . . [A] large class requires a large effort.   Subdivision (c)(2) mandates that each class member be given the best notice practicable under the circumstances.   While the mechanical process of examining the cards may prove to be expensive and time consuming, the individual right of absentee class members to due process makes the cost and effort reasonable. *Id.*, 552 F.2d 1088 at 1100.

Seacor was well aware of the mailing address of its employee and its employee's counsel, yet failed to provide actual notice of the Proposed Settlement Agreement and Opt-Out Provisions to plaintiff or undersigned counsel.  Whether Seacor ever provided notice of Mason's suit to BP is unknown.  However, BP, as a recipient of Lexis/Nexis MDL filings, had actual knowledge of Mason's existence and the identity of his counsel.  Consequently, even if Mason's contact information was not furnished by Seacor to BP, there is no reason, good or otherwise, why written notice was not sent to Mason as required by Rule 23 and the Order of this Honorable Court.

Due process dictates that plaintiff be given the best notice practicable under the circumstances, and that notice was not given here.

### 3.  The Notice of Settlement Agreement is Defective as to the Plaintiff

Rule 23 mandates that the notice "**must clearly and concisely state in plain, easily understood language**: (i) the nature of the action;  (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; . . . [and] (vii) the binding effect of a class judgment on members under Rule 23(c)(3).  Fed. R. Civ. P. Rule 23(c)(2)(B), emphasis added.  Here, the notice mentions nothing about claims against Seacor in general or any claims against Seacor that may arise under the Jones Act, nor does it mention any rights to maintenance and cure as guaranteed by maritime law.  The notice contemplates third party complaints against BP, not claims between Jones Act employees and employers.[5]  Thus, as applied to Mr. Mason's Jones Act claims and claims for maintenance and cure, the notice violates the mandates of subsections (i), (ii), and (iii).  Likewise, nowhere does the notice clearly and concisely state in plain, easily understood language the binding effect of a class judgment on Mr. Mason's Jones Act claims and claims for maintenance and cure.

Even if plaintiff had received a copy of the Notice of Settlement Agreement, he would not have been alerted that he needed to do anything about his pending lawsuit against Seacor. As stated above, Seacor is not a named defendant in the Class Action.  The Notice of Settlement Agreement explains the medical class members' legal rights and options on page

---

[5]In fact, nowhere in the full Settlement Agreement (Rec. Doc. 6427-1) are the terms "Jones Act" or "maintenance and cure" mentioned.

1, explaining that one can submit a claim form, opt out, object, attend the fairness hearing, or do nothing.  The Notice goes on to explain that, if one were to opt out of the class, he would be allowed to file or continue his or her own lawsuit **"against B.P."** about the legal claims involved in this Medical Benefits Settlement.  There is nothing in that explanation of the medical class members' legal rights suggesting that opting out of the class action would have any impact whatsoever upon the rights of Mason, or any other plaintiff, to file or continue to pursue his or her lawsuit against Seacor.  Simply stated, the Notice fails to advise that the effect of the Class Action is to abrogate legal rights against a Jones Act employer who is not a class action defendant.  Having chosen not to institute a claim against BP, the Notice, as written, appears totally irrelevant to one in Mr. Mason's position.  While it may be argued that the intent of the Notice was otherwise, the critical inquiry ought to be whether there was notice *vis-a-vis* plaintiff's claims against his Jones Act employer and that opting out of a case against BP was critical to preserving his Jones Act rights against a non-defendant to the Class Action.

Nevertheless, if such a potential class member were to continue reading the document out of mere curiosity, he might have discovered on page 15 that, unless he or she opted out, he would not be able to start a lawsuit, continue a lawsuit, or be a part of any other lawsuit against B.P. "or the Released Parties" about the claims being released by the Medical Benefits Settlement.  Unfortunately, the Notice of Settlement Agreement does not define who the released parties are.  Nowhere in the entire Notice of Settlement Agreement is Seacor's

- 12 -

name mentioned.  Although there are thirty-five questions indexed and answered in the Notice, none of those questions say "Who is a Released Party?".

Notwithstanding the foregoing, if an over-curious potential class member were to read even further, he or she would see on page 10 of the Notice that the actual Medical Benefits Settlement Agreement provides more detail regarding the release and the Released Parties. Rather than attach an exhibit to the Notice itself, the Notice refers the potential class members to search a website, to talk to defense counsel, or to hire their own lawyer.

In short, this Notice falls woefully short of providing DuWayne Mason with the best practicable notice under the circumstances within the mandates set forth by Rule 23, as interpreted by the Fifth Circuit and the United States Supreme Court.  It also violates Rule 23 by failing to clearly and concisely state in plain, easily understood language the nature of the class action as applied to Jones Act seamen's claims against their non-BP employers; the definition of the class as it relates to Jones Act seamen; whether the class claims, issues, or defenses relate to his claims under the Jones Act or to his claims against Seacor for maintenance and cure; and the binding effect of a class judgment on such claims.

### 4.  In the Final Alternative, There is Excusable Neglect in the Untimely Filing of Plaintiff's Opting Out

In rare cases, courts will allow untimely filing of opt-out claims.   Plaintiff herein requests leave to file an untimely opt-out request and/or to extend the opt-out deadline as it applies to him.

In considering a request for an extension of time for opting out of a class settlement after the expiration of the deadline, the Court must consider the prejudice to the opposing party, the length of delay, and the reason for delay. *Silvercreek Management, Inc. v. Banc of America Securities, L.L.C.*, 534 F.3d 469 (5th Cir. 2008).

As set forth above, prior to the filing of the MBS action, Mason filed suit against his Jones Act employer only. He then told the Court in written pleadings that he had no intention of being involved in the class action, well before the opt-out deadline. Opposing counsel was aware of his participation in a separate lawsuit and made no demand upon plaintiff that he opt out of the class action in order to pursue his individual claim. Compare *McCubbery, supra*, where the plaintiff's attorney and the defense attorneys spoke on numerous occasions and at no time during these communications did the defense attorneys advise plaintiff's counsel that the exclusion period was ticking away and that the separate actions would be forever barred unless the opt-out procedures were followed as outlined in the settlement notice. Although the Court observed that the defense attorneys could easily have alerted plaintiff's counsel to the fact that the defendants did not consider the respondents to have satisfied the exclusion requirements by filing a lawsuit, they did not do so. Had they done so, plaintiff's counsel would certainly have perfected exclusion from the class suit, since the specified period had not yet expired. Rather, plaintiff's counsel relied upon defense counsel's actions and inactions in failing to effect a timely opt-out in *McCubbery.*

- 14 -

Likewise, in the present action, there have been ongoing communications between plaintiff's counsel and defense counsel, and at no point did defense counsel suggest that plaintiff needed to opt out of the Medical Benefits Class in order to preserve his Jones Act rights.

Additionally, plaintiff points out that all memoranda filed in connection with the original July 16, 2012 Motion to Sever were submitted to the Court by September, 2012, while the opt-out deadline was in November of 2012.  Without suggesting any undue delay by the Court in ruling on the motion, plaintiff was completely surprised by the Court's reasoning in the Order and Reasons set forth in the March 5, 2013 Order and Reasons.  Had those reasons been received prior to the opt-out date or had Seacor in its opposition suggested the need to opt out, plaintiff promptly would have done so.

While no one factor alone rises to the level of "excusable neglect," the totality of the circumstances overwhelmingly cry out for an exercise of the Court's discretion in this unusual case.  Summarizing all of the foregoing:

*      Mason received no notice of the settlement or its opt-out provisions;

*      Even if somehow Mason was deemed to be on notice, the notice in question is woefully inadequate as to him because:

       --      The Class membership description does not clearly include him;

       --      The description of covered injuries does not describe his situation and, by its content, seemingly only applies to those who have suffered minor injuries;

- 15 -

--      The notice does not mention any effect of failing to opt out *vis-a-vis* a Jones Act claim or a Jones Act employee;

--      A reasonable interpretation of the Notice is that one could knowingly choose not to opt out without giving up one's Jones Act rights.

\*      Mason's filing of his suit against a party other than a defendant in the Medical Benefits Class settlement prior to the Class certification, coupled with Mason's unequivocal statements of record to this Honorable Court that he was not and would not pursue claims against BP, Trans-Ocean, Halliburton, *et al.* can and should constitute a valid opt-out.

\*      Mason is a ward of the Court and, if he is a member of the Class and cannot opt out, he cannot possibly receive justice through the very limited compensation available under the Medical Benefits Class settlement.

The sum of all of the foregoing is a situation where justice cries out for an exercise of the Court's discretion to extend for DuWayne Mason the deadline for opting out. Compare *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 398, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1994) in which the Supreme Court found excusable neglect where counsel failed to meet a deadline set forth in a "peculiar and inconspicuous" location in an "unusual" court notice.  Although *Pioneer* was a bankruptcy case, the Fifth Circuit has followed its analysis of "excusable neglect" in class action cases.  *Silvercreek Mgmt., Inc. supra,* 534 F.3d at, 472, citing *La. Dep't of Envtl. Quality v. Crystal Oil Co.* (*In re Crystal Oil Co.),* 158 F.3d 291, 298 (5th Cir.1998).  By analogy, if the Supreme Court found excusable neglect in *Pioneer* where an attorney failed to appreciate a deadline that was actually in a notice actually received by the attorney, but in a peculiar location, there is all the more reason to excuse a non-attorney plaintiff from meeting a deadline when he received

no actual notice and when the notice itself fails to specify clearly, simply, and in plain language that his rights against an unnamed, non-defendant might be encompassed by the settlement.

As for the length of the delay, plaintiff makes this request within twenty-eight (28) days of the Court advising that Mr. Mason might be a member of the class, and that his rights under the Jones Act may be precluded thereby, notwithstanding Mr. Mason's representation to the Court on July 16, 2012 that he was effectively opting out of any class should he be deemed to be a member of same.  Thus, Mr. Mason is acting promptly in response to the Court's March 5, 2013 ruling.

The potential prejudice to the named defendants in the class action is non-existent or yet to be proven by Seacor.  Because no defendant to the class action is a defendant to Mr. Mason's Jones Act claim, there is no existing prejudice to any of the *Plaisance* defendants. Should Seacor ever follow through with its threat to implead BP or any of the *Plaisance* defendants in Mr. Mason's case, there might be some actual prejudice to the *Plaisance* defendants, if Seacor can carry its burden of proving any independent fault of the *Plaisance* defendants that was not superseded by Seacor's own negligence in failing to protect its crew members from the dangers that they faced.  Such speculative prejudice to non-named third-party defendants pales when compared to the actual denial of due process facing DuWayne Mason should he not be allowed to pursue his Jones Act claims against Seacor.

- 17 -

### 5.  Reconsideration of the Severance

The evidence that will be introduced at the trial of this case will show that Seacor and Seacor alone is responsible for the failure to provide respiratory protection to its own employees.  Additionally, at significant times to this case, the air conditioner on the Seacor Vanguard was not functioning properly.  As a consequence, one or more large fans were employed to force unpurified outside air into the confined space of the engine room, resulting in Duwayne Mason experiencing long-term exposure to concentrated pollutants.  Even after respiratory protection was later brought aboard the vessel, Seacor failed to establish a meaningful program for the use of the equipment, rendering the equipment ineffectual.  Thus, Seacor's representation that it needs to join BP to the case seems to be devoid of substance. In light of the Court's initial ruling upon the Motion to Sever, Seacor has terminated Mason's Maintenance and Cure.  Plaintiff is in very necessitous financial circumstances and has no meaningful legal recourse but through this case.  By contrast, Seacor and its underwriters can litigate any claims for contribution at a later date.  In this case, justice delayed is justice denied for DuWayne Mason.

### 6.  <u>Relief Sought</u>

The foregoing clearly supports a ruling that DuWayne Mason has effectively opted out or that the opt-out date for him should be extended to permit same.

We have also put before the Court evidence upon which it could be concluded that DuWayne Mason is not and has never been a member of the Class.

The Court now also has in hand sufficient proof to conclude that Mason did not receive proper notification of the Class proceeding, thus violating his due process rights and that, therefore, he is outside the Class or should now be permitted to withdraw.

If the foregoing is premature, we have placed before the Court sufficient proof that warrants the Court retracting that portion of its prior ruling to the extent it contains comments regarding whether Mason is or is not a member of the Class, pending a hearing or trial upon that issue at a later date.  Seacor has terminated Maintenance and Cure in reliance upon the Court's comments which, at the moment, if not erroneous certainly are premature.

For the reasons previously stated, we respectfully request reconsideration of the denial of the request for severance.

In the final alternative, plaintiff respectfully requests that he be granted additional time to file his Notice of Opt-Out in the Class proceedings due to the excusable neglect set forth above, the minimal delay in responding to this Honorable Court's Order of March 5, 2013, and the speculative prejudice to the *Plaisance* defendants, if any, upon the granting of this request.

Respectfully submitted:

SILBERT, GARON, PITRE & FRIEDMAN

*/s Scott E. Silbert*

_____

By:   SCOTT E. SILBERT (12068)
909 Poydras Street, Suite 2130
New Orleans, Louisiana 70112
Telephone: (504) 581-6200
Facsimile: (504) 584-5270
Counsel for plaintiff, Duwayne Mason

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been duly served on all counsel of record by facsimile, electronic mail, hand delivery, and/or by placing a copy of same in the United States Mail, postage prepaid on this 2nd day of April, 2013.

*/s Scott E. Silbert*

_____

SCOTT E. SILBERT