IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179<br><br>SECTION J |
| This document relates to Case Numbers 12-970 and 13-492. | * * * * * * | Honorable CARL J. BARBIER<br><br>Magistrate Judge SHUSHAN |

**BP'S MEMORANDUM IN SUPPORT OF OBJECTION TO AND
MOTION TO STRIKE REFERENCES TO SETTLEMENT COMMUNICATIONS**

BP objects to and moves to strike from the briefs of Class Counsel, the Claims Administrator, and the Settlement Program (the "Opposing Parties") any and all references and arguments based upon settlement communications.  Reliance on these settlement communications breaches the Opposing Parties' express promises and their obligations under the law.  *First*, the PSC / Class Counsel promised in a Settlement Discussion Confidentiality Agreement ("Confidentiality Agreement") that settlement communications would be used solely for the purpose of settlement discussions and for no other purpose, such as attempting to rewrite the Settlement Agreement after it was signed.  Likewise, the Settlement Program accountants designated the relevant settlement communications as being covered by the Confidentiality Agreement.  *Second*, the Settlement Agreement itself states that it supersedes all prior negotiations, rendering prior settlement communications null for purposes of interpreting the Settlement.  *Third*, regardless of the Settlement Agreement's merger and integration clause, the parol evidence rule prohibits the use of settlement communications.  *Fourth*, attempted use of settlement negotiations violates the well-established protections of Federal Rule of Evidence

408. Each of these arguments provides a separate, independent basis for striking settlement communications.

*Finally*, attempted use of settlement communications also violates Federal Rule of Evidence 106, which codifies the rule of completeness and requires admission and introduction of other evidence necessary to prevent single documents from being misleading. For example, Class Counsel cite to a February 17, 2012 e-mail from Richard Godfrey to Joe Rice and Calvin Fayard ("2-17-12 Settlement E-mail"). When the entire history of the 2-17-12 Settlement E-mail is presented and considered, it shows that the E-mail supports BP's position and contradicts what Class Counsel have improperly argued to the Court. Class Counsel unfairly is attempting to cherry-pick a handful of lines from a single communication in the flow of negotiations. The context of those negotiations demonstrates that the 2-17-12 Settlement E-mail had nothing to do with the issues currently under dispute and, as improperly used by Class Counsel, suggests a conclusion that is contrary to the factual record in its entirety. More generally, any settlement communication takes place through numerous back-and-forth discussions and exchanges, and cannot be properly understood apart from that complete context and record. FRE 106 thus provides another basis for striking references and arguments based on settlement communications or, at a minimum, allowing BP an opportunity to admit other portions of the negotiation record.

    **A.**    **Attempted Use Of Settlement Communications Breaches The Settlement Discussion Confidentiality Agreement.**

On June 21, 2011, the PSC (through Messrs. Herman, Roy, Fayard, and Rice) and BP entered into the Confidentiality Agreement to fulfill their "wish to communicate freely and efficiently, and thereby enhance their ability to reach appropriate and mutually acceptable compromises and settlements of the Claims." Confidentiality Agreement (Ex. 1) at 1. That

Confidentiality Agreement defined "Confidential Information" to include "[a]ll settlement discussions, communications, and exchanges of information, documents, data, proposals, and drafts." *Id.* ¶ 1. The parties promised each other that "Confidential Information received or held under this Agreement shall be used solely for the purpose of participation in settlement discussions between BP … and the PSC and for no other purpose." *Id.*

Despite the Confidentiality Agreement, the Opposing Parties seek to introduce settlement communications that took place before the Settlement Agreement was finalized and executed on April 18, 2012. For example, Class Counsel have used the 2-17-12 Settlement E-mail, which plainly is protected by the Confidentiality Agreement. It is a settlement communication, as its substance concerns negotiating the terms of the Settlement. Moreover, it is *expressly* denominated as a "Rule 408 Settlement Communication: Confidential." Rec. Doc. 8963-58 at 1. Other examples of settlement communications the Opposing Parties seek to rely on include, but are not limited to:

- The April 4, 2012 document sent by Charles Hacker to Joe Rice titled "Business Economic Loss Framework Observations" and the portions of the Affidavit of Mark Staley and the Affidavit of Charles R. Hacker, Jr. discussing this document. Rec. Docs. 9069-5, 9069-6. The April 4, 2012 document explicitly states that it is subject to the Confidentiality Agreement, and the response brief of the Claims Administrator and Settlement Program admits that "Portions of this Response have been redacted to protect information that has been marked as 'Highly Confidential Subject to Settlement Discussions Confidentiality Agreement.'" Rec. Doc. 9089 at 1; *see also* Rec. Doc. 9069.

- The Declaration of John E. Tomlinson and the Supplemental Declaration of John E. Tomlinson, which both purport to discuss test cases that Mr. Tomlinson admits were provided "[a]s part of settlement negotiations in late 2011." Rec. Doc. 9082-6 ¶ 3.

- The Declaration of Robert Michael Wallace to the extent that it purports to describe settlement negotiations between BP and the PSC / Class Counsel. Rec. Doc. 8963-84.

Each of these documents, by its plain terms, concerns settlement negotiations occurring before April 18, 2012. Therefore, these communications fall under the umbrella of the Confidentiality Agreement, making them inadmissible for any other purpose. Attempting to use

3

these settlement communications in an effort to rewrite and misconstrue the Settlement's language violates the Confidentiality Agreement.[1]  *See*, *e.g.*, Class Counsel's Opposition, Rec. Doc. 9082-2, at 23; Claims Administrator's Response, Rec. Doc. 9089, at 5-6.

"Violating the terms of this [Confidentiality] Agreement may subject the violator to such sanctions or other relief as deemed proper by an appropriate court."  Confidentiality Agreement (Ex. 1) ¶ 5.  Here, the proper relief is simply to enforce the Confidentiality Agreement, prohibit use of the settlement communications in these proceedings, and strike all references and arguments based upon settlement communications.  *See*, *e.g.*, *Bobbitt v. Broadband Interactive, Inc.*, No. 8:11-CV-2855-T-24, 2012 WL 2872846 at *1 (M.D. Fla. July 12, 2012).

### B. Attempted Use Of Settlement Communications Breaches The Settlement Agreement's Merger And Integration Clause.

The parties to the Settlement Agreement understood that its language superseded all prior discussions and expressly provided that the Settlement Agreement "shall constitute the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, agreements, and understandings relating to the subject matter of this Agreement."  Settlement Agreement ¶ 26.1.  By the parties' agreement and the Court's approval of the Settlement, the parties' prior negotiations or understandings — including any allegedly contained in the settlement communications — have been rendered null and void.  The plain language of the Settlement Agreement is all that remains.

---

[1] Class Counsel had previously attached the 2-17-12 Settlement E-mail to its February 18, 2013 *in camera* submission.  Rec. Doc. 8963-58.  Based on this in camera submission, the Court cited the E-mail in its March 5, 2012 Order on Review of Issue from Panel. Rec. Doc. 8612 at 3.  Class Counsel failed to inform the Court that the E-mail was barred by the Confidentiality Agreement, Settlement Agreement, Federal Rules of Evidence 106 and 408, and the parol evidence rule.  As these submissions were *in camera*, BP believed that filing procedural motions would not have been appropriate or necessary, especially where the Court indicated that all submissions were to be made simultaneously by February 18, 2013.  Rec. Doc. 8963-34.  Now that proceedings are on the record, BP moves to strike the impermissible arguments of the Opposing Parties based on settlement communications.

"By its very definition, an integration or merger clause negates the legal introduction of parol evidence; it is a 'provision in a contract to the effect that the written terms may not be varied by prior or oral agreements because all such agreements have been merged into the written document.'" *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 564 (5th Cir. 2005) (quoting BLACK'S LAW DICTIONARY 683 (6th ed. 1983)); *see also Langhoff Props., LLC v. BP Prods. N. Am. Inc.*, 519 F.3d 256, 262 & n.19 (5th Cir. 2008). Because the settlement communications are parol evidence barred by the Settlement's integration clause, all references and arguments based on settlement communications should be stricken. *See United States v. Bethlehem Steel Co.*, 215 F. Supp. 62, 68 (D. Md. 1962) *aff'd*, 323 F.2d 655 (4th Cir. 1963); *ARM Props. Mgmt. Grp. v. RSUI Indem. Co.*, A-07-CA-718-SS, 2008 WL 5973220 (W.D. Tex. Aug. 25, 2008).

  **C. Attempted Use Of Settlement Communications Independently Violates The Parol Evidence Rule.**

Independent of the Settlement Agreement's merger and integration clause, the parol evidence rule prohibits the use of settlement communications. "In admiralty law, the parol evidence rule is generally stated as follows: When two parties have made a contract and have expressed it in a writing to which they have both asserted as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." *Har-Win, Inc. v. Consol. Grain & Barge Co.*, 794 F.2d 985, 987 (5th Cir. 1986). The Settlement Agreement is a complete and accurate contract and has been approved by this Court. As explained in BP's Memorandum Supporting its Emergency Motion for a Preliminary Injunction, Rec. Doc. 8910-2, the Settlement Agreement's language is unambiguous and the Opposing Parties have not claimed otherwise.

The settlement communications at issue concern "antecedent … negotiations," and thus are inadmissible. *See also Channette v. Neches Gulf Marine, Inc.*, 440 Fed. App'x 258, 261 (5th Cir. 2011) ("Because the Agreement's language is unambiguous, the district court properly excluded the parol evidence."); *Fed. Marine Terminals, Inc. v. Worcester Peat Co.*, 262 F.3d 22, 28 (1st Cir. 2001) (where an agreement is unambiguous, the district court should "refuse[] to consider evidence of any negotiations or extrinsic documents to alter that language."); *Battery S.S. Corp. v. Refineria Panama, S.A.*, 513 F.2d 735, 739-40 (2d Cir. 1975) (the parol evidence rule "renders legally inoperative ... evidence of prior understandings and negotiations which contradicts the unambiguous meaning of a writing which completely and accurately integrates the agreement of the parties").

### D. Attempted Use Of Settlement Communications Violates Federal Rule Of Evidence 408.

Federal Rule of Evidence 408 prohibits the use of "conduct or a statement made during compromise negotiations about the claim" to "prove or disprove the validity or amount of a disputed claim." The settlement communications fall squarely within this prohibition. They concern statements made and documents exchanged during settlement negotiations, as is plainly shown by their substance and designation. The Opposing Parties now are using settlement communications to attempt to prove that BP should be liable for hundreds of millions, and potentially billions, of dollars in non-existent losses. Courts regularly strike material concerning documents such as the settlement communications that violate Rule 408. *See Network of Constr. & Dev. v. Bessamaire Sales, LLC*, No. CV–11–269–RMP, 2012 WL 1565313, at *2 (E.D. Wash. May 2, 2012); *Fidelity Nat'l Title Co. v. Law Title Ins. Co.*, No. 04 C 6382, 2005 WL 1126899, at *5-7 (N.D. Ill. May 3, 2005); *Power Auth. of N.Y. v. United States*, 62 Fed. Cl. 376, 379 (Fed.

Cl. 2004); *see also Ciolli v. Iravani*, 625 F. Supp. 2d 276, 288-89 (E.D. Pa. 2009); *Bergman v. Jefferson–Pilot Life Ins. Co.*, No. 03–4459, 2003 WL 23142155, at *1 (E.D. Pa. Dec. 30, 2003).

>    E.    The Complete Record Establishes That Settlement Documents, Including The 2-17-12 Settlement E-mail, Do Not Support The Interpretation Asserted By The Opposing Parties.

Federal Rule of Evidence 106 "partially codifies the common-law 'rule of completeness'" so as "to permit the contemporaneous introduction of recorded statements that place in context other writings admitted into evidence which, viewed alone, may be misleading." *United States v. Branch*, 91 F.3d 699, 727 (5th Cir. 1996); *see also Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988). It requires admission of omitted documents or portions thereof that are "'necessary to qualify, explain, or place into context the portion already introduced.'" *Branch*, 91 F.3d at 728. Without the context of the surrounding negotiations, receiving only snippets — such as 3 lines in a 9-page, 249 line e-mail — from the months of settlements discussions would be misleading. Rule 106 is a rule of fundamental fairness, in order to prevent precisely what has transpired here: cherry-picked references from a handful of settlement communications to convey impressions that are not supported by the record as a whole. If the reference and arguments based on settlement communications are not stricken, then under Federal Rule of Evidence 106 BP should be provided an opportunity to introduce the full document and other related settlement documents regarding the issues discussed in settlement communications.

Although all settlement communications must be interpreted in light of the record, the 2-17-12 Settlement E-mail exemplifies the fundamental unfairness of removing settlement communications from their context. *First*, the E-mail relates to a different provision of the BEL Compensation Framework than that currently in dispute. The present issue focuses on the proper interpretation of "revenue," "corresponding variable expenses," and "comparable" in Step 1 of

the BEL Compensation Framework. In contrast, the 2-17-12 Settlement E-mail email involved negotiations over a different issue concerning Step 2 of that Framework, which applies a growth factor to certain months in order to provide compensation for incremental 2010 profits that might have been earned as a result of reasonably expected growth that did not occur due to the spill. Settlement Agreement Ex. 4C at 1; Rec. Doc. 8963-58 ¶¶ 6-7, 9.

*Second*, the 2-17-12 Settlement E-mail was written in response to the PSC's position that, for Step 2, the growth factor should be applied not to the three-or-more month 2010 Compensation Period selected for Step 1, but to the entire eight-month period from May-December 2010. As set forth in the E-mail:

> In short, the PSC says that in Step 1, the claimant can pick a three or more month period for 2010, but in Step 2, the claimant does not pick any months much less the comparable pre-spill months, but instead, the claimant is compelled to use the entire 8 month period of May through December.

Rec. Doc. 8963-58 ¶ 9. That is, the PSC was taking the position that Step 2 growth should be applied to the entire 8-month period in 2010, even where a claimant had selected fewer months for the Compensation Period in Step 1.

The central point of the 2-17-12 Settlement E-mail was that comparing a period of 8 months to the 3 months of the Compensation Period could not reasonably be defined as "comparable" months. As Mr. Godfrey observed:

> There are not going to be any "comparable months" under the PSC's interpretation of the term Benchmark Period because, according to the PSC, the Benchmark Period is a set period of 8 months and is not comparable to the 3 or more specific claimant-selected months in the Compensation Period.

*Id.* ¶ 10.E. The email further explained that comparing different numbers of months

> makes no sense economically, as it will create fictitious losses that do not exist. Why? From an accounting and economic standpoint, one will often create artificial losses by comparing three months of revenue data with 8 months of revenue data. The absence of 5 months of data will, by definition, often result in

8

an artificially created, fictitious loss regardless of the claimant's actual economic performance.

*Id.* ¶ 10.H.1.

*Third*, the PSC did not agree with BP's position.  Ultimately, BP was forced to seek the assistance of Magistrate Judge Shushan to resolve the issue.  *See* 2-23-12 E-mail from R. Godfrey to Judge Shushan (Ex. 2).

The dispute was resolved through modifications to the BEL Compensation Framework that show Class Counsel's argument about the meaning of the word "comparable" is wrong.  In this regard, after the 2-17-12 Settlement E-mail a number of changes were made — and not made.  Most importantly, the use of "comparable" for Step 2 of compensation under the BEL Framework was not changed.  Settlement Agreement, Ex. 4C at 1.  But the Step 2 Compensation calculation was modified to provide that a claimant could select from one of three 6-month periods for calculating Step 2 compensation, "[u]nless claimant chose a seven-consecutive-month or eight-consecutive month period in Step 1, in which case that same period of identical consecutive months in 2010 shall be used for Step 2."  Settlement Agreement, Ex. 4C at 4; 2-29-12 E-mail from A. Karron to R. Jones with attachments (Ex. 3); 3-1-12 E-mail from W. Bloom to R. Jones and J. Tomlinson (Ex. 4).  Thus, the language in the final, agreed-upon document with respect to Step 2 made clear that "comparable" did *not* necessarily mean "the same."

In sum, the facts do not support Class Counsel's interpretation of the 2-17-12 E-mail:

- The E-mail did not concern the question under dispute;

- The full communication makes clear that the PSC / Class Counsel did not consider "comparable" months to be the same months but instead could be substantially different periods;

- BP told the PSC / Class Counsel that the BEL framework was not intended to compensate for fictitious "losses";

- The PSC / Class Counsel did not agree with the 2-17-12 Settlement E-mail;

9

- Further discussions and negotiations ensued, including the involvement of Judge Shushan;

- The parties agreed not to change the word "comparable" in the Agreement, as eventually used and as it currently exists, but instead changed another provision, in which the word "identical" was used to solve the problem that the 2-17-12 Settlement E-mail had identified;

- The resolution of the dispute illustrates that when the parties wanted to specify using the "identical" months, they knew how to do so; and

- The final framework language clearly shows that "comparable" does not always mean "the same" or "identical".

## CONCLUSION

Use of settlement communications is barred by the Confidentiality Agreement, the Settlement Agreement, and applicable law. Furthermore, these communications do not support the BEL Policy Decisions. Therefore, BP moves to strike from the Opposing Parties' briefs any and all references and argument based upon settlement communications.

April 3, 2013                                             Respectfully submitted,

                                                             */s/ Richard C. Godfrey, P.C.*

James J. Neath                                            Richard C. Godfrey, P.C.
Mark Holstein                                             J. Andrew Langan, P.C.
BP AMERICA INC.                                           Wendy L. Bloom
501 Westlake Park Boulevard                               Andrew B. Bloomer, P.C.
Houston, TX 77079                                         R. Chris Heck
Telephone: (281) 366-2000                                 KIRKLAND & ELLIS LLP
Telefax: (312) 862-2200                                   300 North LaSalle Street
                                                          Chicago, IL 60654
Daniel A. Cantor                                          Telephone: (312) 862-2000
Andrew T. Karron                                          Telefax: (312) 862-2200
ARNOLD & PORTER LLP
555 Twelfth Street, NW                                    Jeffrey Bossert Clark
Washington, DC 20004                                      Steven A. Myers
Telephone: (202) 942-5000                                 KIRKLAND & ELLIS LLP
Telefax: (202) 942-5999                                   655 Fifteenth Street, N.W.
                                                          Washington, D.C. 20005
Jeffrey Lennard                                           Telephone: (202) 879-5000
Keith Moskowitz                                           Telefax: (202) 879-5200
SNR DENTON
233 South Wacker Drive                                       */s/ Don K. Haycraft*
Suite 7800                                                S. Gene Fendler (Bar #05510)
Chicago, IL 60606                                         Don K. Haycraft (Bar #14361)
Telephone: (312) 876-8000                                 R. Keith Jarrett (Bar #16984)
Telefax: (312) 876-7934                                   LISKOW & LEWIS
                                                          701 Poydras Street, Suite 5000
***OF COUNSEL***                                          New Orleans, Louisiana 70139
                                                          Telephone: (504) 581-7979
                                                          Telefax: (504) 556-4108

                                                          Robert C. "Mike" Brock
                                                          COVINGTON & BURLING LLP
                                                          1201 Pennsylvania Avenue, NW
                                                          Washington, DC 20004
                                                          Telephone: (202) 662-5985
                                                          Telefax: (202) 662-6291

***ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.,
BP AMERICA PRODUCTION COMPANY, AND BP PLC***

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 3rd day of April 2013.

      /s/ Don K. Haycraft
      Don K. Haycraft