# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * <br> * <br> * <br> * <br> * | MDL NO. 2179 <br><br> SECTION J |
| This document relates to 13-492. | * <br> * <br> * <br> * <br> * <br> * <br> * | Honorable CARL J. BARBIER <br><br> Magistrate Judge SHUSHAN |

---

## BP'S MEMORANDUM OF LAW IN OPPOSITION TO SETTLEMENT PROGRAM AND CLAIMS ADMINISTRATOR'S MOTION TO DISMISS

*COUNSEL FOR SUBMITTING PARTIES ARE LISTED AT END OF MEMORANDUM*

## <u>TABLE OF CONTENTS</u>

**Page**

**INTRODUCTION** ....................................................................................................................1

**ARGUMENT** ..........................................................................................................................2

**I.    Judicial Immunity Does Not Bar The Relief BP Seeks.** ..........................................2

    A.    Where It Applies, Judicial Immunity Does Not Bar Prospective Injunctive
          Relief. ....................................................................................................................2

    B.    In Any Event, The Claims Administrator Is Not Entitled To Judicial
          Immunity. ..............................................................................................................6

          1.    Judicial Immunity Does Not Extend To The Claims Administrator
               Under Any Source Of Law. ......................................................................7

          2.    The Claims Administrator Is Acting In An Administrative, Not A
               Judicial, Capacity. ..................................................................................11

**II.    The Settlement Program Is No Less A Juridical Entity Than The Claims
      Administrator In His Official Capacity, Or The Class.  Nor Is There Any
      Other Reason To Dismiss The Settlement Program Out Of This Suit.** ................14

**III.    BP Has Stated A Claim Upon Which Relief May Be Granted.** ...............................16

    A.    The Claims Administrator And Settlement Program Are Bound By The
          Settlement Agreement. ........................................................................................17

    B.    The Court Lacks Authority To Modify The Settlement Agreement; Thus,
          The March 5 Order Cannot Cure The Claims Administrator's Breach. ...............17

**CONCLUSION** .....................................................................................................................19

# **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Conboy,*
No. 94-9159, 1997 WL 177890 (S.D.N.Y. Apr. 14, 1997)................................................. 10, 12

*Antoine v. Byers & Anderson, Inc.,*
508 U.S. 429 (1993) ............................................................................................................ 5

*Bauer v. Texas,*
341 F.3d 352 (5th Cir. 2003)............................................................................................... 3

*Bradley v. Fisher,*
80 U.S. 335 (1871) .............................................................................................................. 6

*Burns v. Reed,*
500 U.S. 478 (1991) ............................................................................................................ 7

*Carr v. Mahone,*
No. 08-132, 2008 WL 375501 (S.D. Tex. Feb. 11, 2008) ................................................. 4

*Cleavinger v. Saxner,*
474 U.S. 193 (1985) .......................................................................................................... 11

*David v. Bayless,*
70 F.3d 367 (5th Cir. 1995)................................................................................................. 3

*Emerson v. United States,*
No. 12-884, 2012 WL 1802514 (E.D. La. Apr. 30, 2012) ................................................. 4

*Evans v. Suter,*
260 F. App'x 726 (5th Cir. 2007)........................................................................................ 5

*Forrester v. White,*
484 U.S. 219 (1988) ................................................................................................... passim

*Hamill v. Wright,*
870 F.2d 1032 (5th Cir. 1989)............................................................................................ 3

*Harlow v. Fitzgerald,*
457 U.S. 800 (1982) ............................................................................................................ 6

*Holloway v. Walker,*
784 F.2d 1294 (5th Cir. 1986)............................................................................................ 3

*In re Keenan,*
No. 07-451, 2008 WL 878913 (S.D. Cal. Mar. 28, 2008) ................................................. 5

*In re Silicone Gel Breast Implant Prods. Liab. Litig.*,
  No. 92-10000, 1994 WL 114580 (N.D. Ala. Apr. 1, 1994) ..................................................... 10

*In re Vioxx Prods. Liab. Litig.*,
  802 F. Supp. 2d 740 (E.D. La. 2011) ................................................................................ 9

*In re: Propulsid Prods. Liab. Litig.*,
  MDL No. 1355, 2004 WL 1541922 (E.D. La. June 25, 2004) .................................................. 9

*Johnson v. Kegans*,
  870 F.2d 992 (5th Cir. 1989) ......................................................................................... 6

*Loumar, Inc. v. Smith*,
  698 F.2d 759 (5th Cir. 1983) ........................................................................................ 19

*Merial Ltd. v. Cipla Ltd.*,
  681 F.3d 1283 (Fed. Cir. 2012) ..................................................................................... 15

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003) .................................................................................... 10, 11

*Morehouse v. Jackson*,
  No. 06-775, 2008 WL 4664075 (M.D. La. Oct. 21, 2008) ...................................................... 4

*Mullis v. U.S. Bankr. Court*,
  828 F.2d 1385 (9th Cir. 1987) ........................................................................................ 4

*Mylett v. Mullican*,
  992 F.2d 1347 (5th Cir. 1993) ........................................................................................ 5

*O'Neil v. Miss. Bd. of Nursing*,
  113 F.3d 62 (5th Cir. 1997) .................................................................................. 6, 7, 8, 13

*Pulliam v. Allen*,
  466 U.S. 522 (1984) ............................................................................................... 2, 5

*Quitoriano v. Raff & Becker, LLP*,
  675 F. Supp. 2d 444 (S.D.N.Y. 2009) .............................................................................. 10

*Schrob v. Catterson*,
  948 F.2d 1402 (3d Cir. 1991) ........................................................................................ 11

*Scruggs v. Moellering*,
  870 F.2d 376 (7th Cir. 1989) ......................................................................................... 5

*Shafer v. Army & Air Force Exch. Serv.*,
  376 F.3d 386 (5th Cir. 2004) ......................................................................................... 9

*Shipula v. Tex. Dep't of Family Protective Servs.*,
    No. 10-3688, 2011 WL 1882521 (S.D. Tex. May 17, 2011) ...................................... 3

*Simon Arnold v. Epiq Class Action & Claims Solutions, Inc.*,
    No. 12-955, 2012 WL 6106411 (D.D.C. Dec. 10, 2012) ..................................... 18

*Sowers v. Darby*,
    No. 07-11, 2009 WL 742730 (N.D. Miss. Mar. 17, 2009) ........................................ 4

*Stafford v. Khoury*,
    No. 09-210, 2010 WL 1524756 (E.D. Tex. Feb. 19, 2010) ...................................... 4

*Stump v. Sparkman*,
    435 U.S. 349 (1978) ........................................................................................ 7

*Switzer v. Coan*,
    261 F.3d 985 (10th Cir. 2001) ........................................................................ 5

*Tubwell v. Almond*,
    42 F.3d 641 (5th Cir. 1994) ........................................................................... 5

*Wightman v. Jones*,
    809 F. Supp. 474 (N.D. Tex. 1992) ................................................................ 4

**Statutes**

42 U.S.C. § 1983 ............................................................................................ 2, 3

Federal Courts Improvement Act of 1996, Pub. L. No. 104-317,110 Stat. 3847 ........................... 3

**Rules**

Fed. R. Civ. P. 53 ......................................................................................... 12

Fed. R. Civ. P. 53(b) ..................................................................................... 8

Fed. R. Civ. P. 53(b)(2)(A) ............................................................................ 8

Fed. R. Civ. P. 53(g) ..................................................................................... 8

Fed. R. Civ. P. 65(d)(2)(C) ........................................................................... 15

**Secondary Sources**

9C CHARLES ALAN WRIGHT, *ET AL.*,
    FED. PRAC. & PROC. § 2602.2 (3d ed. 2012) ............................................... 8

ERWIN CHEMERINSKY, FEDERAL JURISDICTION (6th ed. 2012) ................................ 4, 11

## INTRODUCTION

On March 15, Plaintiffs BP Exploration & Production Inc. and BP America Production Company (collectively, "BP") filed a complaint against the *Deepwater Horizon* Court Supervised Settlement Program and its Claims Administrator, explaining that the Administrator's January 15, 2013 Policy Decision concerning the Business Economic Loss Framework was contrary to the plain text of the Settlement Agreement and was resulting in the payment of hundreds of millions of dollars—steadily mounting higher—of windfall payments that that the settling parties never intended to see awarded.  Following BP's filing of its complaint, the Court scheduled an expedited hearing on BP's request for emergency injunctive relief for tomorrow morning, April 5, at 9:30 a.m.  *See* Rec. Doc. 8949.

The Settlement Program and Claims Administrator have now moved to dismiss BP's complaint.  *See* Rec. Doc. 9066-1 ("Mem.").  Instead of offering a substantive defense of their interpretation of the Settlement Agreement, they instead advance novel, unsupported theories that are designed to deflect the Court from ever reaching the merits of this dispute.  ***First***, they assert that they are immune from this Court's orders, notwithstanding (1) their simultaneous argument that they are bound to follow the Court's orders even if those orders do not comport with the text of the Settlement Agreement, and (2) the abundance of precedential authority providing that judicial immunity does not apply to prospective injunctive relief, among other legal defects in their defenses.  ***Second***, as a fallback position, they contend that they cannot be in breach of the Settlement Agreement as long as they abide by this Court's orders.

In compliance with this Court's Order of April 2, 2013, *see* Rec. Doc. 9085, BP respectfully submits this opposition brief to explain that neither of these arguments holds water.  Whatever outcome the Court reaches on BP's request for a preliminary injunction (and BP submits such relief should be granted) the Court cannot dismiss this case—and deny preliminary

injunctive relief as a consequence—on the grounds advanced by the Claims Administrator.

**ARGUMENT**

**I.      Judicial Immunity Does Not Bar The Relief BP Seeks.**

The Claims Administrator's invocation of judicial immunity lacks merit in two respects. First, even if the Claims Administrator were entitled to such immunity, it would not bar BP's request for prospective injunctive relief.  Second, the Claims Administrator is not entitled to judicial immunity under any source of law.

**A.      Where It Applies, Judicial Immunity Does Not Bar Prospective Injunctive Relief.**

First and foremost, even if it is assumed that the Claims Administrator were entitled to some form of judicial immunity (and BP submits that he is not), that immunity would have no effect in this case because BP is seeking exclusively prospective injunctive relief—not damages. Contrary to certain inapplicable authority that the Claims Administrator has cited, judicial immunity does not bar an action for such relief.

As the Claims Administrator recognizes, the Supreme Court held in *Pulliam v. Allen*, 466 U.S. 522 (1984), that judicial immunity does not extend to claims for prospective injunctive relief under 42 U.S.C. § 1983.  *See* Mem. at 6 n.8.  After surveying hundreds of years of common law history, the *Pulliam* court explained that "injunctive relief against a judge raises concerns different from those addressed by the protection of judges from damages awards," *Pulliam*, 466 U.S. at 537, and that there is "little support in the common law for a rule of judicial immunity that prevents injunctive relief against a judge."  *Id.* at 540.  It accordingly held that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity."  *Id.* at 541-542.

Following *Pulliam*, the Fifth Circuit repeatedly recognized that judicial immunity does

2

not bar claims for prospective injunctive relief.  *See, e.g.*, *David v. Bayless*, 70 F.3d 367, 376 (5th Cir. 1995) ("We note for the purposes of remand that 'judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity.'" (quoting *Pulliam*); *Hamill v. Wright*, 870 F.2d 1032, 1035 (5th Cir. 1989) (similar, citing *Pulliam*); *Holloway v. Walker*, 784 F.2d 1294, 1296 (5th Cir. 1986) (per curiam) (similar, citing *Pulliam*).

In 1996, Congress amended Section 1983 to heighten the requirements for obtaining injunctive relief against a state judicial officer.  *See* Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, 110 Stat. 3847, 3853 § 309.  As amended, Section 1983 now includes language providing that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.  Because BP has obviously not sued the Claims Administrator or Settlement Program under Section 1983, however, this language has no application.  Actions seeking injunctions in federal court (or even in state court as governed by federal law) against **state court judges** raise federalism concerns that it may have been Congress's exclusive intent to avoid in its Federal Courts Improvement Act.  Moreover, while this language clarifies the substantive burden that plaintiffs must meet to obtain relief under Section 1983, it does not even speak in terms of judicial immunity.

In the wake of the Federal Courts Improvement Act, courts—including the Fifth Circuit—have continued to recognize that judicial immunity does not apply to actions against judges for prospective injunctive relief.  *See, e.g.*, *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) ("Absolute judicial immunity, however, ***does not bar prospective relief against a judicial officer***." (emphasis added)); *Shipula v. Tex. Dep't of Family Protective Servs.*, No. 10-3688, 2011 WL 1882521, at *11 (S.D. Tex. May 17, 2011) ("Absolute judicial immunity does not bar

prospective relief against a judge . . . ." (citing *Bauer*)); *Stafford v. Khoury*, No. 09-210, 2010 WL 1524756, at *4 n.6 (E.D. Tex. Feb. 19, 2010) ("As a threshold matter, judicial immunity only applies to claims for damages."); *Sowers v. Darby*, No. 07-11, 2009 WL 742730, at *4 (N.D. Miss. Mar. 17, 2009) ("Both parties cited and this Court acknowledges that judicial immunity is not a bar to federal prospective injunctive relief against a judicial officer."); *Morehouse v. Jackson*, No. 06-775, 2008 WL 4664075, at *4 (M.D. La. Oct. 21, 2008) ("It is well settled that the absolute judicial immunity defense does not apply to suits against state officers sued in their official capacity for declaratory and prospective injunctive relief."); *accord* ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 8.6.2 (6th ed. 2012)  ("For some of the above-mentioned officers, such as judges, the immunity only is for suits for money damages . . . .").

Against this avalanche of authorities, the Claims Administrator can proffer only a handful of inapplicable cases.  Nearly all of these cases address the potential viability of one federal judge entertaining a *Bivens* action against an equal or superior federal judge.  *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1392-93 (9th Cir. 1987) (holding, under *Bivens*, that "[t]o allow a district court to grant injunctive relief against a bankruptcy court or the district court in the underlying bankruptcy case would be to permit, in effect, a 'horizontal appeal' from one district court to another or even a 'reverse review' of a ruling of the court of appeals by a district court"); *Wightman v. Jones*, 809 F. Supp. 474, 479 (N.D. Tex. 1992) (under *Bivens*, "judicial immunity . . . bars injunctive and declaratory relief issued by one federal court against the judge of an equal or superior federal court"); *Emerson v. United States*, No. 12-884, 2012 WL 1802514, at *3 (E.D. La. Apr. 30, 2012) (applying *Wightman* to claims against United States District Judge and United States Magistrate Judge); *Carr v. Mahone*, No. 08-132, 2008 WL 375501, at *4 (S.D. Tex. Feb. 11, 2008) (judicial immunity bars district court from granting

*Bivens* relief against clerks of Fifth Circuit and United States Supreme Court); *cf. In re Keenan*, No. 07-451, 2008 WL 878913, at *5 (S.D. Cal. Mar. 28, 2008) (citing *Mullis* with little analysis).

These cases do not apply here. To begin with, to the extent that any of these cases can be read to bar the availability of prospective relief on the facts of this case, they are inconsistent with the binding authority noted above, including *Bauer*. Moreover, each is—by its own terms—concerned with *Bivens* actions. And this lawsuit is no *Bivens* action.[1]

Most fundamentally, the policy considerations motivating the cases cited by the Claims Administrator do not apply. These cases are concerned with the procedural and hierarchical impropriety of one federal court granting relief against another federal court that either has authority equal to its own or sits above it. While it is far from obvious that judicial immunity is the appropriate lens through which to view that issue, *cf. Scruggs v. Moellering*, 870 F.2d 376, 378 (7th Cir. 1989) (criticizing *Mullis*), *abrogated on other grounds by Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993); *Switzer v. Coan*, 261 F.3d 985, 990 n.9 (10th Cir. 2001) (noting this criticism), the more salient point is that these concerns, however articulated, do not apply here. Rather, in this case, there is no dispute that the Claims Administrator is subordinate to court supervision.[2] Indeed, the Claims Administrator asserts this point himself. *See* Rec. Doc. 9069-3 at 19 ("The Claims Administrator and the Settlement Program have in the past and will continue in the future to follow the Orders of the Court as to interpretation and implementation

---

[1] Moreover, the Fifth Circuit has consistently described the *Mullis* line of cases as standing for ***damages*** immunity. *See, e.g.*, *Evans v. Suter*, 260 F. App'x 726, 727 n.1 (5th Cir. 2007) (per curiam) ("Clerks have absolute quasi-judicial immunity ***from damages*** for civil rights violations when they perform tasks integral to the judicial process." (describing *Mullis*; emphasis added)); *Tubwell v. Almond*, 42 F.3d 641 (5th Cir. 1994) (similar); *Mylett v. Mullican*, 992 F.2d 1347, 1352 n.36 (5th Cir. 1993) (similar). In contrast, the Claims Administrator has not identified a single Fifth Circuit decision adopting the broad and novel theory of judicial immunity that he advances here.

[2] Indeed, that judicial immunity does not bar a court from enjoining an inferior court is inherent in the long-established historical availability of various prerogative writs by one court against another, including the writ of mandamus. *See generally Pulliam*, 466 U.S. at 529-536 (discussing this point).

of the Settlement Agreement.").  Because the Claims Administrator is not actually contending

that the Court is powerless over it, his immunity argument can be rejected out of hand.

**B.      In Any Event, The Claims Administrator Is Not Entitled To Judicial Immunity.**

The Supreme Court has recognized "that a judicial officer, in exercising the authority

vested in him, [should] be free to act upon his own convictions, without apprehension of

personal consequences to himself." *Bradley v. Fisher*, 80 U.S. 335, 347 (1871).  To that end, the

common law developed the doctrine of absolute judicial immunity.  But Courts have always

grounded that immunity in "the *effect* that exposure to particular forms of liability would likely

have on the appropriate exercise of those functions."  *Forrester v. White*, 484 U.S. 219, 224

(1988) (emphasis added); *see also Johnson v. Kegans*, 870 F.2d 992, 996-97 (5th Cir. 1989)

("[A]bsolute immunities prevent the harassment and intimidation that could otherwise result if

disgruntled litigants—*particularly criminal defendants and inmates*, both of whom have their

liberty at stake—could vent their anger by suing . . . the person or persons who rendered an

adverse decision." (emphasis added)).

While it is important to spare judges harassment and free their decisions from fear of

personal liability, immunity comes at a cost.  The Fifth Circuit has noted that "'[a]bsolute

immunity' denies a person whose federal rights have been violated by a government official any

type of remedy, regardless of the conduct."  *O'Neil v. Miss. Bd. of Nursing*, 113 F.3d 62, 65 (5th

Cir. 1997).  For this reason, judicial immunity is not easily invoked.  *See Forrester*, 484 U.S. at

230 ("Absolute immunity . . . is strong medicine, justified only when the danger of officials'

being deflected from the effective performance of their duties is very great." (alterations and

internal quotation marks omitted)); *Harlow v. Fitzgerald*, 457 U.S. 800, 811 (1982) ("[T]his

protection has extended no further than its justification would warrant.").  The official seeking

immunity, therefore, must satisfy two prerequisites: (1) he must have authority to make the decision in question, *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); and (2) the challenged action must be judicial rather than administrative in nature, *Forrester*, 484 U.S. at 230.  The burden of establishing this right to immunity rests on the party seeking it.  *Burns v. Reed*, 500 U.S. 478, 486 (1991).

In the current case, the Claims Administrator fails to carry his burden because (1) he lacks authority to act in a judicial capacity, and (2) his decisions regarding how much to pay claimants under the Economic and Property Damages Settlement Agreement are administrative rather than judicial.  As a private agent administering a private settlement contract pursuant to private undertaking and trust contracts, the Claims Administrator has no claim to the protections of judicial immunity.   Indeed, Mr. Juneau is expressly subject to court supervision—the conceptual antithesis of judicial immunity.

        **1.**        **Judicial Immunity Does Not Extend To The Claims Administrator Under Any Source Of Law.**

If courts are careful about absolute immunity for judges, they are especially careful in applying ***derivative*** absolute immunity to ***non-judges*** like Mr. Juneau.  To enjoy the protection of judicial immunity, quasi-judicial officials must "perform functions essentially similar to those of judges or prosecutors, in a setting similar to that of a court."  *O'Neil*, 113 F.3d at 65.

The most straightforward path to satisfying this requirement is appointment to an office that includes adjudicative responsibilities and procedures.  For example, a state licensing board with statutory authority to conduct disciplinary hearings resembling trials is entitled to quasi-judicial immunity.  *VanHorn v. Oelschlager*, 457 F.3d 844, 847-48 (8th Cir. 2006) (quoting statute empowering board members to take evidence, cross-examine witnesses and require briefing).  Another office that frequently carries quasi-judicial absolute immunity is the position

7

of special master.  Whether a special master enjoys this immunity is a function of the assigned role in the court order appointing him.  *See* Fed. R. Civ. P. 53(b); *see also* 9C CHARLES ALAN WRIGHT, *ET AL.*, FED. PRAC. & PROC. § 2602.2 (3d ed. 2012).  The court's specification of "the master's duties . . . and any limits on the master's authority," Fed. R. Civ. P. 53(b)(2)(A), will largely determine whether the master satisfies *O'Neil*'s standard of "perform[ing] functions essentially similar to those of judges or prosecutors, in a setting similar to that of a court," 113 F.3d at 65.

Administrator Juneau seeks to shoehorn himself into the role of a special master, but that is not his role.  *See* Mem. at 5-6.  His appointment does not satisfy the conditions of Rule 53.  To provide a few examples, appointment of a master requires notice to the parties, Fed. R. Civ. P. 53(b)(1), and an affidavit from the would-be master swearing that he does not have any conflicts of interest, *id.* 53(b)(3)(A).  It also requires that the court "fix the master's compensation on the basis and terms stated in the appointing order."  *Id.* 53(g)(1).[3]  None of these conditions obtains here.  To the contrary, the Claims Administrator serves as a private agent of the parties.  His appointment by the Court does not include any detailed discussion of duties, methods, or compensation.  *See* Rec. Doc. 6418 at 34-36.  Instead, he performs tasks and receives compensation according to a trio of contracts between himself, BP, and Lead Class Counsel.  *See* Undertaking of Patrick Juneau in Furtherance of Court Order Appointing Him Claims Administrator (Compl. Att. E); Supplement and Amendment to Undertaking (Compl. Att. F);

---

[3] One of the principal objectives of the Undertaking agreement was to set the terms for Mr. Juneau's pay.  The fact that such payment arrangements were made by private contract is its own potent evidence that Mr. Juneau was not established as a special master.  The pay of special masters is unilaterally fixed by court order under Federal Rule of Civil Procedure 53(g) and taxed to the parties after a consideration of mandated factors by the appointing court.  *See* Fed. R. Civ. P. 53(g)(3).

and *Deepwater Horizon* Economic & Property Damages Trust Agreement (Compl. Att. B).[4]

In the Fifth Circuit, no one can serve as a special master absent strict compliance with Rule 53. *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 393 (5th Cir. 2004) (reversing a district court decision made in reliance on master's report because, "despite clear language in the Federal Rules requiring such, [there is no] Rule 53 order referring the [contested] claims to the special master."); *see also id.* at 393 n.3 ("Rule 53(b) of the Federal Rules of Civil Procedure mandates that a district court referring a case to a special master must comply with several procedural requirements. Chief among them is the requirement that the court produce a written order referring the case to a special master that states and defines the scope of the master's duties and limits, if any, on his authority."). This Court has entered no order appointing the Claims Administrator a special master under Rule 53. To the contrary, all the particulars governing his duties and compensation originate in private contracts, a fact consistent with his role as an administrative agent of the parties rather than a special master or judicial officer of any kind.

Given the many differences between his role as Claims Administrator and the position of a Rule 53 master, Mr. Juneau's decision to cite two pages of cases involving special masters is curious.[5] *See* Mem. at 5-6. Although the Claims Administrator states that "[c]ourts have also extended absolute quasi-judicial immunity to . . . others, such as Claims Administrators,

---

[4] In fact, if Mr. Juneau were to enjoy derivative absolute judicial immunity, these contracts would effectively be rendered illusory on account of the inability of the other parties to enforce their terms. Since Mr. Juneau voluntarily signed these contracts and made no mention at the time that he believed he was donning a mantle of absolute judicial immunity, the very fact that he entered into these private contracts carrying with them ordinary private enforcement remedies is strong evidence that any claim by Mr. Juneau to judicial immunity is nothing more than a *post hoc* reimagining of the history by which he came into his position and a transparent attempt to avoid this suit on the merits. *Compare* Undertaking (Compl. Att. E), Section 8 ("Each party represents and warrants to the other that the individual executing this Undertaking on behalf of each party has the power and authority to do so, and that this Undertaking constitutes a legal, valid and binding obligation of such party enforceable against such party in accordance with its terms.").

[5] This is especially true in light of Mr. Juneau's prior experience as an actual special master in other cases. *See In re Vioxx Prods. Liab. Litig.*, 802 F. Supp. 2d 740, 767-68 (E.D. La. 2011); *In re: Propulsid Prods. Liab. Litig.*, MDL No. 1355, 2004 WL 1541922 (E.D. La. June 25, 2004).

performing roles and functions similar to those of a special master," **_not one_** of the ensuing cases confers immunity on someone other than a special master.  *Id.*  Moreover, the only case that involves a claims administrator does not support his argument because the administrator in question was also a properly appointed special master with judicial responsibilities.  *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, No. 92-10000, 1994 WL 114580, at *5 (N.D. Ala. Apr. 1, 1994) (explicitly invoking Rule 53 and attempting to establish, at the outset, that the special master would benefit from judicial immunity).[6]

Even if this Court had appointed the Claims Administrator as a special master, departures from the judicially delegated role might also justify denial of immunity.  *See Quitoriano v. Raff & Becker, LLP*, 675 F. Supp. 2d 444, 450 (S.D.N.Y. 2009) ("Nor will the individual receive immunity if he is shown to have acted in a manner outside the scope of his official judicial duties."); *Anderson v. Conboy*, No. 94-9159, 1997 WL 177890, at *7 (S.D.N.Y. Apr. 14, 1997) ("[I]f a court-appointed officer  . . . engaged in activities which the order of appointment neither authorized nor sanctioned, the officer would not be immune from liability, for the same reason that a judge is not immune for acts taken in the total absence of jurisdiction."), *rev'd in irrelevant part by* 156 F.3d 167 (2d Cir. 1998).  Thus, the Claims Administrator—even if appointed to a quasi-judicial office—would not enjoy immunity for actions beyond the purview of his position. And nothing in the Order appointing the Administrator authorizes him to rewrite or fail to comply with the terms of the Settlement Agreement.  Such actions are well "outside the scope of his official judicial duties" and therefore cannot enjoy absolute immunity derived from this

---

[6] Moreover, the *Silicone Gel* court casts doubt on the persuasive force of its own ruling since that court apparently thought it was within its powers to confer judicial immunity **_by fiat_**.  That is not the way judicial immunity doctrine works.  Instead, the doctrine is a function of the role the person claiming immunity fulfills and the effect that recognizing such immunity would create.  *See Forrester*, 484 U.S. at 224 (importance of effects analysis); *Miller v. Gammie*, 335 F.3d 889, 892 (9th Cir. 2003) (importance of role analysis).  Judicial appointments are made to perform particular tasks.  It then becomes a separate legal question whether, under all the circumstances and in light of the parameters of the doctrine, judicial immunity applies.

Court's appointment.

Any attempt to derive absolute immunity from Administrator Juneau's contractual roles or related Court Orders is misplaced. He does not occupy a position with a statutory or regulatory basis for adjudicative action, and he is not a special master under Rule 53.

> **2.      The Claims Administrator Is Acting In An Administrative, Not A Judicial, Capacity.**

Whether invoked by judges or quasi-judicial officers, the doctrine of judicial immunity applies, as its name suggests, to judicial functions alone. Actions that are merely administrative fall outside the protection of judicial immunity. Courts have coalesced around a "functional" test to identify judicial as opposed to administrative, legislative, or investigatory actions. *See, e.g.,* *Miller v. Gammie*, 335 F.3d 889, 892 (9th Cir. 2003) ("[A]bsolute immunity depends on the particular function performed rather than on whether the state officer's position had a general relationship to a judicial proceeding."); *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991); *see also* ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 8.6.2 (6th ed. 2012) ("[T]he focus is on the *function* performed . . . ."). As the Supreme Court explains it, the functional test draws "distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform." *Forrester*, 484 U.S. at 227; *see also* *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985) (critical question is "the nature of the responsibilities of the individual official").

The Claims Administrator's brief ignores the functional test in favor of general statements of the law and policy. *See* Mem. at 4. The brief does not cite—and BP has not located—a single case in which a defendant enjoys derivative immunity ***from his superior*** (a judge, for example) to preclude a challenge that would occur before that same superior judicial officer. Yet, the Claims Administrator invites that very *non sequitur*.

11

The closest the Claims Administrator comes to tendering any authority to support his claim of absolute judicial immunity is his inapposite analogy to a special master.  Even if he were appointed under Rule 53, however, Administrator Juneau's work was nevertheless administrative.  The Advisory Committee comments to Rule 53 include an uncanny example: a master appointed "to perform an accounting or [to] resolve a difficult computation of damages" performs "essentially ministerial determinations."  Fed. R. Civ. P. 53 advisory committee note (2003).  (And in another stroke of contradiction, much of the flavor of Mr. Juneau's defense is that he is a merely ministerial legal actor following Court orders.)  The Claims Administrator performs an important job, but his discretion is closely confined and therefore he does not "exercise the kind of judgment that is protected by the doctrine of judicial immunity."  *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436-37 (1993).

Further demonstrating that the Claims Administrator does not perform a judicial function, his ability to continue administering the Settlement would not suffer from the unavailability of judicial immunity.  *See Forrester*, 484 U.S. at 224 ("[W]e seek to evaluate **the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions**." (emphasis added)).  Unlike the judge or parole board member with whom the Fifth Circuit was concerned in *Johnson* (*see supra*), Claims Administrator Juneau will suffer no impairment to his ability to run the CSSP.  In fact, he personally stands to lose nothing from an injunction requiring accurate computation of business losses.  *See* Part I.A, *supra* (discussing unavailability of immunity in cases seeking injunctive relief).  This is especially true since pursuant to the private Undertaking contract (Compl. Att. E), Mr. Juneau can seek indemnification from BP as to damages obtained against him (which BP is not pursuing here in any event).

12

Even more significantly, Mr. Juneau **sought and negotiated for** some defined sphere of indemnification protections, yet he never explains in his motion how that can be consistent with his newly crafted immunity theory. In other words, the fact that Mr. Juneau was at pains to secure a private indemnification arrangement for his activities as the Claims Administrator strongly suggests that Mr. Juneau did not himself believe at the time he signed the Undertaking that the role he was assuming would come clothed in judicial immunity, or else the indemnity provisions would have been superfluous. At the very least, if Mr. Juneau believed himself soon to be cloaked with immunity he would have sought to reference such claimed immunity in the Undertaking; instead, the Undertaking makes no mention of "absolute judicial immunity." Additionally, the indemnification and other provisions of the Undertaking were agreed to be specifically governed by **Louisiana law**, another provision flatly inconsistent with the notion that absolute judicial immunity as a matter of federal law was understood by Mr. Juneau to attach to the Claims Administrator role. *See* Undertaking (Compl. Att. E), Section 8.[7]

At issue here is the Claims Administrator's task of awarding business economic losses. While connected to a legal proceeding, that task is strictly administrative. The Claims Administrator was not established as the "Settlement Interpreter" but as the Claims **Administrator**. To shield the Administrator's work from litigation is to deny BP (or Lead Counsel) "any type of remedy, regardless of the conduct." *O'Neil*, 113 F.3d at 65. For this reason, and because the Administrator bears the burden of proving immunity, this Court should

---

[7] Finally, any potential claim of immunity based on the Court's preliminary approval order as an intervening event occurring after the Undertaking would fail because in the Supplement and Amendment to [the] Undertaking, the parties expressed an intent to bring the Undertaking agreement up to date and yet still said nothing about judicial immunity. *See* Supplement and Amendment to Undertaking (Compl. Att. F.), Recital F ("Accordingly, the Parties desire to and do hereby enter into this Amendment in order to bring the status of the Undertaking current with the developments which have occurred after its date."). This Supplement also provided additional compensation for Mr. Juneau assuming his Trustee role, which he did via a separate private agreement, and amended the indemnification provisions of the Undertaking to conform to that additional role.

deny the motion.

## II.   The Settlement Program Is No Less A Juridical Entity Than The Claims Administrator In His Official Capacity, Or The Class.  Nor Is There Any Other Reason To Dismiss The Settlement Program Out Of This Suit.

There is simply no merit to the argument that the Settlement Program is not a "juridical entity capable of being sued," Rec. Doc. 9013 (Class Counsel Answer) ¶ 2—a point we wish to make clear, in case counsel for the Settlement Program and Mr. Juneau attempts to adopt Class Counsel's argument.  Under the Settlement Agreement, the Settlement Program was erected as a legal entity.  *See* Settlement Agreement ¶ 4.3.2; *see also id.* ¶ 4.4.7. The Court also imposed certain duties upon the Settlement Program.  *See, e.g., id.* ¶¶ 4.3.7, 4.3.10, 4.4.2, 5.2.1, 5.10.3.1.1.  Finally, the Settlement Agreement repeatedly refers to decisions of the Settlement Program.  *See generally id.* § 6; Rec. Doc. 8138 at 9.  For this reason, the Settlement Program is capable of being sued in this Court (consistent with this Court's retention of exclusive jurisdiction over the Settlement Program), *see* Rec. Doc. 8139 ¶ 17), just as the Claims Administrator may be sued in his official capacity (a proposition he does not question).

If the Settlement Agreement and the Orders approving it do not create the Settlement Program as a juridical entity, then surely they cannot simultaneously be read to vest the Claims Administrator with the full scope of absolute judicial immunity.  In reality, BP submits that the provisions cited above make it more than clear that the parties intended to create the Settlement Program as a juridical entity, but that no corresponding provisions of the Settlement Agreement or orders of this Court reflect an intent to vest the Claims Administrator with judicial immunity (even if this Court's intent on that issue could prove conclusive, which is a suspect legal proposition, *see supra* n.6).  Instead, just as this Court's Final Approval Order of December 21, 2012 created the Class as a juridical entity established by operation of federal law under Federal Rule of Civil Procedure 23, this Court's follow-on Rule 23 Orders concerning the Court

14

Supervised Settlement Program did the same for that entity. *See* Rec. Doc. 6418 (Preliminary Approval Order) at 4; Rec. Doc. 5995 (First Amended Order Creating Transition Process) at 2; Rec. Doc. 5988 (Order Creating Transition Process) at 2.

These same Orders also demonstrate why the Settlement Program's argument that it should be dismissed from this case because it is not a party to the Undertaking or Trust Agreement must be rejected. *See* Mem. at 9 ("[T]he Settlement Program is not a party to any other alleged contract or agreement cited by BP. For that simple reason alone, all of the claims against the Settlement Program should be dismissed along with the first count for breach of the Settlement Agreement against Mr. Juneau."). This misses that BP did not bring suit against the Settlement Program exclusively based on breach-of-contract theories. Instead, BP pleaded that Mr. Juneau and the Settlement Program had acted together in an *ultra vires* fashion. *See* Compl. ¶¶ 95-99. "By deviating from the terms of the Settlement Agreement and authorizing the award of payments that the Agreement does not permit, the Claims Administrator and Settlement Program have exceeded their authority." *Id.* ¶ 97.

Additionally, BP pleaded in its Prayer for Relief, Section F, that it was entitled to an injunction against the Settlement Program for aiding Mr. Juneau's breaches. *See id.* at 30; *id.* ¶ 88. And even if such allegations did not exist explicitly in the Complaint, background principles of law would similarly tie the Settlement Program together with Mr. Juneau. *See* Fed. R. Civ. P. 65(d)(2)(C) (those bound by injunctions include those with actual notice who are "other persons who are in active concert or participation with anyone described in" Rule 65(d)(2)(A)-(B); *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1289, 1304-05 (Fed. Cir. 2012) (affirming default judgment against corporation that acted in concert with a partner, per Rule 65(d)(2)(C), to infringe the plaintiff's patents).

The Settlement Program would be hard-pressed to assert (and the issue is certainly a factual one inconsistent with the requested grant of motion to dismiss at the outset of this case) that it is not "in active concert or participation" with Mr. Juneau.  *See also* Settlement Agreement ¶ 4.3.2 (Claims Administrator will "head the Settlement Program, oversee and supervise the Claims Administration Vendors (including any subcontractors) and staff in the processing and payment of Claims").  Hence, neither the Complaint against the Settlement Program nor Count Five can be dismissed.

Finally, the argument that Count One of the Complaint (alleging contractual breach of the Settlement Agreement) should be dismissed ignores that the combined effect of the Settlement Agreement and the Undertakings of Mr. Juneau (as well as the Trust Agreement) fully and voluntarily bound Mr. Juneau to the Settlement Agreement.  *See, e.g.*, Compl. ¶ 68 ("The Claims Administrator specifically agreed not to violate the Settlement Agreement in his Undertaking as supplemented, in the Trust Agreement, and in accepting the Court's appointment as Claims Administrator.  This fully bound the Claims Administrator to compliance with the Settlement Agreement.").  The Settlement Program is equally bound since it owes its very existence to the Settlement Agreement, being an entity created in obedience both to the Settlement Agreement's terms and to the Court Orders implementing the terms of that contract.  *See id.* (quoting Settlement Agreement ¶ 4.3.10 ("The Settlement Program, under the supervision and direction of the Claims Administrator, shall implement the terms of this Agreement.")); Rec. Doc. 5988 at 2 (referencing the "proposed Court supervised claims program . . . agreed to by the Parties").

## III.   BP Has Stated A Claim Upon Which Relief May Be Granted.

The Claims Administrator further contends that BP has failed to state a claim upon which relief may be granted.  According to the Claims Administrator, because he never signed the Settlement Agreement, he cannot be responsible for breaching it.  The Claims Administrator

further suggests that because he "is responsible to this Court and must implement and administer the Settlement Agreement, including the BEL Framework, pursuant to the terms of the agreement and as directed and approved by the Court," he thus "does not have the discretion or authority to interpret and implement the BEL Framework in any other matter."  Mem. at 9.

### A.    The Claims Administrator And Settlement Program Are Bound By The Settlement Agreement.

To begin with, the Claims Administrator and Settlement Program are obligated to comply with the terms of the Settlement Agreement.   While it is accurate that neither the Claims Administrator nor the Settlement Program signed the Settlement Agreement, *see* Mem. at 9, Mr. Juneau undertook to serve as Claims Administrator under the terms of the Settlement Agreement. *See* Rec. Doc. 6418 (Preliminary Approval Order) ¶ 23.  And under the terms of that Settlement Agreement, the Claims Administrator is bound to "faithfully implement and administer the Settlement, according to its terms and procedures."  Settlement Agreement ¶ 4.3.1.  The Claims Administrator also signed both of the undertakings and the Trust Agreement, which separately and together obligate him to obey the Settlement Agreement as a matter of private law.  *See* Amended Undertaking (Compl. Att. F.) ¶ 1; Trust Agreement (Compl. Att. B) § 2.1.  Indeed, the Claims Administrator forthrightly acknowledges that he "did agree to undertake" "the role and functions of the Claims Administrator" in the Undertaking.  Mem. at 9; *see also* Rec. Doc. 9069-4 (Juneau Affidavit) ¶ 14 ("My role as the Claims Administrator is to implement the terms of the Settlement Agreement ***as agreed to by the Parties*** as set out in the written Settlement Agreement.") (emphasis added).

### B.    The Court Lacks Authority To Modify The Settlement Agreement; Thus, The March 5 Order Cannot Cure The Claims Administrator's Breach.

In response to BP's contention that the Claims Administrator has misconstrued the Settlement Agreement, the Claims Administrator has little to say on the merits.  The Claims

17

Administrator instead contends that because the Court issued an order declining to reverse the Claims Administrator's own policy decision, he is necessarily not in breach of the Settlement Agreement, his undertakings, or the Trust Agreement.

To begin with, the Claims Administrator's argument rests on thin legal support. The sole case cited is *Simon Arnold v. Epiq Class Action & Claims Solutions, Inc.*, No. 12-955, 2012 WL 6106411 (D.D.C. Dec. 10, 2012), but in that case the Court made a specific finding that the claims administrator had "carried out its responsibilities as Claims Administrator properly with respect to each plaintiff ***and consistent with the settlement agreement***." *Id.* at *2 (emphasis added). The case holds simply that where the claims administrator complies with the text of the Settlement Agreement, no relief is available. That may be, but the principle only applies where the Claims Administrator's actions are consistent with the Settlement Agreement. The Claims Administrator's argument accordingly requires the conclusion that the Claims Administrator is not violating the Settlement Agreement, which is precisely the question presented in this lawsuit.

It is not dispositive, we submit, that the Court has previously issued an order upholding the decision of the Claims Administrator. In addition to the fact that the Claims Administrator's responsibility is to faithfully interpret the Settlement Agreement, the Court's March 5 Order does not resolve the meaning of the Settlement Agreement for all purposes and for all time. Rather, that Order may be undermined either by future decisions of this Court or of the United States Court of Appeals for the Fifth Circuit and potential subsequent review.

At bottom, BP does not dispute that ***if*** the Court to date has ***correctly*** upheld the BEL Policy Decisions as an accurate interpretation of the Settlement Agreement, BP cannot obtain permanent injunctive relief against the Claims Administrator. The mere fact that the March 5 Order exists, however, does not itself mean that the Claims Administrator is not in breach of the

Settlement Agreement and the other related agreements.  *See, e.g.*, *Loumar, Inc. v. Smith*, 698 F.2d 759, 762 (5th Cir. 1983) ("Law-of-the-case doctrine is not . . . a barrier to correction of judicial error.  It is a rule of convenience and utility and yields to adequate reason.").  The ultimate question is simply whether the Policy Decisions correctly interpret the Settlement Agreement.  That is the question that is presented in this lawsuit and it cannot be dismissed without the Court providing an answer.

## CONCLUSION

The legal question presented in this case is critically important to BP, which faces the loss of hundreds of millions of dollars—potentially running into the billions—if the Settlement Program and Claims Administrator's breach of the Settlement Agreement continues unabated. Because of the importance of this case and the fundamental defects in the arguments that the Claims Administrator and Settlement Program present for why the Court should not decide it, BP respectfully requests that the motion to dismiss be denied.

April 4, 2013                                    Respectfully submitted,


                                                 _  /s/ Richard C. Godfrey, P.C.  _____
James J. Neath                                   Richard C. Godfrey, P.C.
Mark Holstein                                    J. Andrew Langan, P.C.
BP AMERICA INC.                                  Wendy L. Bloom
501 Westlake Park Boulevard                      Andrew B. Bloomer, P.C.
Houston, TX  77079                               R. Chris Heck
Telephone:  (281) 366-2000                       KIRKLAND & ELLIS LLP
Telefax:  (312) 862-2200                         300 North LaSalle Street
                                                 Chicago, IL 60654
Daniel A. Cantor                                 Telephone:  (312) 862-2000
Andrew T. Karron                                 Telefax:  (312) 862-2200
ARNOLD & PORTER LLP
555 Twelfth Street, NW                           Jeffrey Bossert Clark
Washington, DC 20004                             Steven A. Myers
Telephone:  (202) 942-5000                       KIRKLAND & ELLIS LLP
Telefax:  (202) 942-5999                         655 Fifteenth Street, N.W.
                                                 Washington, D.C. 20005
Jeffrey Lennard                                  Telephone:  (202) 879-5000
Keith Moskowitz                                  Telefax:  (202) 879-5200
SNR DENTON
233 South Wacker Drive                           _  /s/ S. Gene Fendler  _____
Suite 7800                                       S. Gene Fendler (Bar #05510)
Chicago, IL  60606                               Don K. Haycraft (Bar #14361)
Telephone:  (312) 876-8000                       R. Keith Jarrett (Bar #16984)
Telefax:  (312) 876-7934                         LISKOW & LEWIS
                                                 701 Poydras Street, Suite 5000
**OF COUNSEL**                                   New Orleans, Louisiana 70139
                                                 Telephone:  (504) 581-7979
                                                 Telefax:  (504) 556-4108

                                                 Robert C. "Mike" Brock
                                                 COVINGTON & BURLING LLP
                                                 1201 Pennsylvania Avenue, NW
                                                 Washington, DC 20004
                                                 Telephone:  (202) 662-5985
                                                 Telefax:  (202) 662-6291


**ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.**
**AND BP AMERICA PRODUCTION COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 4th day of April, 2013.

<u>/s/ S. Gene Fendler</u>
S. Gene Fendler