IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, On April 20, 2010 | * * * * | MDL No. 2179  Section: J |
| This filing relates to: *All Cases* | * * | District Judge Carl J. Barbier |
| (Including Civil Action No. 12-970) | * * * | Magistrate Judge Shushan |

------------------------------------------------------------------

### RESPONSE BY THE CLAIMS ADMINISTRATOR TO MOTION BY CLAIMANT H. FREDDIE BOOTHE, JR.

The Claims Administrator for the Deepwater Horizon Economic and Property Damages Settlement Agreement (the "Claims Administrator") files this response to Claimant H. Freddie Boothe, Jr.'s Motion of Review and Motion for Clarification (the "Motion"). Mr. Boothe asserts that the information he has submitted on his claim should be sufficient to determine his losses and asks that a Risk Transfer Premium ("RTP") not permitted by the Settlement Agreement be made to apply to his claim. The Claims Administrator has processed Mr. Boothe's claim correctly. Regardless, his Motion should be denied on the ground that he has failed to exhaust the procedural steps available to him under the Settlement Agreement to raise his arguments relating to his claim before seeking judicial review of the outcome on his claim.

### I. FACTUAL AND PROCEDURAL BACKGROUND

**A.  The Settlement Agreement's Procedures for Processing a Claim.**

The Settlement Agreement allows certain Business Claimants to recover for lost revenue based on contracts or reservations canceled because of the Spill (the "Canceled Contract Framework"). *See* Settlement Agreement ("S.A.") Ex. 4E. Claimants must submit certain

documents to support their Business Economic Loss ("BEL") Claim.  *See* S.A. Ex. 4A.  Mr. Boothe has asserted this kind of claim.

The Settlement Agreement requires the Claims Administrator to review each claim to determine whether it is complete.  If it is, the claim undergoes causation analysis and then evaluation for damages.  *See* S.A. Ex. 4A, 4B, 4C.  In calculating the compensation amount to award on the claim, the Claims Administrator uses the applicable RTP multiplier based on the location (or "Zone") and Industry Type assigned to the claim, as prescribed by the Settlement Agreement.  *See* S.A.  § 38.126; Ex. 4C, 4E, 15.

### B.    Administrative Remedies Available to Claimants.

After the Claims Administrator reviews a claim, if the claimant is eligible the Claims Administrator issues the claimant an Eligibility Notice explaining the outcome of the review.  The Claims Administrator and the Settlement Agreement provide four procedural steps for claimants who are dissatisfied with the Claims Administrator's determination on their claim to seek re-review and ultimately judicial review.

First, the Claims Administrator implemented a Re-Review process beginning on January 18, 2013, that provides claimants with the opportunity to request review of their claim within 30 days after an Eligibility Notice or a Denial Notice if they have additional documents to support their claim.  This Re-review leads to a new Eligibility Notice on the claim.

Second, Section 6.1.2.1 of the Settlement Agreement grants claimants the right to Reconsideration of their claim by the Claims Administrator if requested within 30 days after an Eligibility Notice.  Reconsideration is always available to claimants even if they do not have additional documents to submit for a Re-Review if they think that the Settlement Program:  (1) made a Calculation Error; (2) failed to take into account relevant information or data; (3) failed

2

to follow the standards in the Settlement Agreement; (4) made incorrect deductions from prior BP/GCCF payments; or (5) incorrectly calculated Claimant Accounting Support Reimbursement.

Third, Section 6.1.2.3 of the Settlement Agreement provides claimants who remain unhappy after the Reconsideration an appeal to the Appeal Panel.  Claimants may appeal their Reconsideration outcome within 30 days after the Claims Administrator's final determination on the claim.

Fourth, under Section 6.6 of the Settlement Agreement, the Court also maintains the discretionary right to consider a decision by a member of the Appeal Panel on a claim.  Mr. Boothe has not taken advantage of or followed any of these four procedures available to him.

**C.  The Processing of Mr. Boothe's Claims.**

Mr. Boothe is a licensed architect who operates Huston Freddie Booth, Jr. Architect, a firm that provides architectural services.  He claims that he suffered losses from the DWH Oil Spill from the cancellation of three separate contracts to design buildings.  On June 11, 2012, Mr. Boothe submitted three BEL Claim Forms for three canceled contracts.  He is not represented by an attorney.  We assigned Claim IDs 9327, 9328 and 5095 to these claims.

We reviewed the claims and determined that Mr. Boothe had not submitted monthly profit and loss statements detailing revenues and expenses for the business, complete federal tax returns for the selected Benchmark Period, 2010, and 2011, and documentation that shows the ownership and structure of the business, all of which is required by the Settlement Agreement before the Claims Administrator may issue an outcome on the merits of the claim.  We issued Incompleteness Notices to Mr. Boothe on all three of his claims, explaining these requirements and the missing information on October 27, 2012.  The claimant responded to the Incompleteness Notices on October 28, 2012, and provided monthly profit and loss statements

for 2009, 2010, and 2011, but these statements did not include the business's monthly expenses, as required.[1]

A claimant should file one BEL Claim Form to recover damages for any and all canceled business contracts for each business. The Claims Administrator determined that Mr. Boothe had incorrectly submitted three BEL Claim Forms, one for each of his three canceled contracts. The Claims Administrator identified Claim IDs 5095 and 9328 as duplicative BEL Claims because the claims were for the same single Facility architecture business that the claimant operated. We posted a Notice of Duplicate Claim to the claimant's Portal on December 5, 2012, for Claim IDs 9328 and 5095, explaining that the claimed losses were already covered by another claim. The Claims Administrator kept Claim ID 9327 active and consolidated the canceled contracts included in Claim IDs 5095 and 9328 in the review of Claim ID 9327.

Mr. Boothe did not submit all the required documents. A representative from our Claimant Communication Center ("CCC") contacted him on January 3, 2013, to discuss the documentation requirements for canceled contracts, to identify the documents still missing from the file, and to explain the duplicate claim issues and consolidation of the canceled contracts into one active claim. The CCC received a call from Mr. Boothe on January 8, 2013, during which he informed us that he had uploaded his 2009 and 2010 Federal Tax Returns and would do the same with his 2011 Federal Tax Returns later that evening. The CCC agent reminded him also to submit his monthly profit and loss statements as required by the Settlement Agreement. Mr. Boothe refused to submit the profit and loss statements, arguing that he should not have to do so because he asserted he had no business expenses. We reviewed the claim after the call and

---

[1] Law firms representing claimants and unrepresented claimants can communicate with the Claims Administrator instantly using a secure internet interface we refer to as a "portal," rather than exchanging notices and documents in hard copy by mail. Mr. Boothe uses a portal to receive and submit materials in the Settlement Program electronically.

determined that the claim was still incomplete for 2011 tax returns, monthly profit and loss statements for 2009-2011, and documentation that the claimant was unable to replace the canceled contracts, as required by the Settlement Agreement.

On January 9, 2013, the claimant contacted our CCC agent to inform her that he would file a complaint with the Court the next day because he did not think that the Settlement Agreement required him to submit the general documentation requirements for Business Economic Loss claims.  He argued that he is required to submit only the documents relevant to his claim for Spill-Related Cancellations and not all the documents required of him and all BEL claimants.  The CCC agent attempted to explain his Incompleteness Notice and the documentation requirements again, but Mr. Boothe did not waver from his position that the Claims Administrator was not reviewing his claim in accordance with his reading of the Settlement Agreement.

The document requirements for BEL Claims are found in Exhibit 4A.  *See* S.A. § 5.3.2.2. All claimants submitting any kind of BEL claim are required to submit the documents required by Exhibit 4A, including the documents a claimant must submit if he or she is claiming a loss for a Spill-Related Cancellation.  *See* S.A. Ex. 4A § 6(b).  Section 5.3.2.4 of the Settlement Agreement provides that the compensation methodology for BEL Claims is set forth in Exhibits 4C-4E.  Exhibit 4E prescribes the Compensation Methodology for Spill-Related Cancellations that applies to Mr. Boothe's claim for canceled contracts.  As part of the Spill-Related Cancellation analysis, the Claims Administrator must determine whether the claimant was able to replace the canceled contract.  If the claimant was able to replace the canceled contract, then the accountant reviewers must determine the claimant's profits associated with any Replacement Contract or Reservation.  Section D of Exhibit 4E lists the documents that the claimant must

submit pertaining to the Canceled Contract or Reservation and any Replacement Contract or Reservation.  *See* S.A. Ex. 4E § D.  Mr. Boothe argues that he is required to submit only the documents listed in Exhibit 4E and not those mandated by Exhibit 4A.  The documents listed in 4E apply to a specific portion of the Spill-Related Cancellation Compensation Methodology.  They do not replace the general document requirements of Exhibit 4A.  Mr. Boothe's claim remains incomplete because of missing monthly profit and loss statements detailing revenues and expenses, as required by Exhibit 4A.

We determined that an in-person meeting with Mr. Boothe might give us the chance to review the Settlement Agreement and documentation requirements with the claimant in conjunction with the documents he submitted in support of his claim.  We conducted that meeting in the New Orleans East Claimant Assistance Center ("CAC") on January 11, 2013.  Mr. Boothe, the CAC manager, and a BEL team member familiar with the claim attended.  The meeting went well.   When it ended, Mr. Boothe appeared to understand how the Settlement Agreement Canceled Contract Framework applied to his claim.  He submitted a Sworn Written Statement for each of the canceled contracts to address the requirement that he present documentation showing that he was unable to replace the canceled contracts and stated that he would submit the remaining required documentation following the meeting.  At the time, the claim was still missing 2011 Federal Tax Returns and monthly profit and loss statements for 2009-2011.

Mr. Boothe returned to the CAC office on January 17, 2013, to submit additional documentation and a letter in which he requested that we apply an RTP of 5.25 to his claim based solely on his business activities.  He cited Exhibit 2 and Exhibit 6 of the Settlement Agreement as support for his demand for an increase in the RTP on his claim.  He requested that

we place his business in Zone A based on the location of his canceled contracts and not the headquarters of his architectural firm, which is in Zone D.

Mr. Boothe misunderstands how the Settlement Agreement assigns RTPs. Under Exhibit 15, RTPs depend on the claimant's Industry and Zone. It does not assign an RTP based solely on the claimant's Industry Designation. The Claims Administrator places each BEL Claim in one of the Industry Designations prescribed by the Settlement Agreement: Tourism, Non-Tourism, Primary Seafood I, Primary Seafood II, Secondary Seafood, Charter Fishing, and Seafood Program. *See* S.A. § 38.13, Ex. 2 and 3. The Industry Designation of Non-Tourism is correct on this claim because Mr. Boothe's architecture business does not "provide services such as attracting, transporting, accommodating or catering to the needs or wants of persons traveling to, or staying in, places outside their home community." S.A. Ex. 2. The Claims Administrator determined that Zone D is the correct designation based on the physical location of the claimant's business in Zone D at 14248 Highway 1077, Folsom, LA 70437. *See* S.A. Ex. 1A-1C. The Settlement Agreement bases a claimant's Zone on where the claimant is located and not on where the claimant's various projects may be.

An RTP of 0.25 is the only RTP permitted by the Settlement Agreement on the Mr. Boothe's claim. Exhibit 15 mandates that the RTP for a business located in Zone D with an Industry Designation of Non-Tourism is 0.25. Mr. Boothe argues that he should enjoy an RTP of 5.25. To arrive at this number, he adds the RTP of 0.25 from Exhibit 15 to the Industry Multiplier (MVIC) for Engineering, Accounting, Research, Management, and Related Services of 5.0 from Exhibit 6. Exhibit 6 of the Settlement Agreement provides the Causation and Compensation methods for Failed Business Economic Loss claims, not general Business Economic Loss Claims, which is what the claimant filed. The MVIC contained in Exhibit 6

7

applies only to Failed Business Economic Loss claims.  Mr. Boothe has not presented a Failed Business Economic Loss claim.

Mr. Boothe returned to the New Orleans East CAC on January 23, 2013.  We explained the foregoing to him at that time.  He did not agree with this determination and stated that he would move forward with filing a complaint with the Court.

## II. ARGUMENT

Mr. Boothe's claim (Claim ID 9327) is under review with the Accountant Reviewers.[2] The Claims Administrator has not issued a determination on the claim to trigger Re-Review or Reconsideration of the claim.  Instead of following the Settlement Agreement by requesting Re-Review or Reconsideration, or appealing his claim to the Appeal Panel, as provided by the Claims Administrator and the Settlement Agreement, Mr. Boothe has filed the present Motion.  In this Motion, he asks the Court to review his claim, to clarify the financial document requirements for claims that meet the Exhibit 4E eligibility requirements, and to apply a RTP that is not permitted by the Settlement Agreement.  No such procedure is provided under the Settlement Agreement and none should be imposed upon it.

The provisions of the Settlement Agreement on the steps for processing and reviewing claims were extensively negotiated by the parties and carefully crafted to afford claimants multiple opportunities to present materials to the Claims Administrator to ensure the accuracy of Claims Administrator determinations on claims, while also achieving an efficient process for the processing of the thousands of claims that the Claims Administrator would receive.  BP and counsel for all the Class Members agreed this process.  This Court has approved the process in

---

[2] On February 12, 2013, at the direction of the Federal Court in New Orleans, the Claims Administrator placed a hold on the processing of BEL Claims from the construction, agricultural and professional services industries.  The Claims Administrator could not process the claimant's claim during the hold period because the claimant's business is in the professional services industry.  On March 4, 2013, the Court instructed the Claims Administrator to continue to process the held claims and the review of the claimant's claim resumed.

the Settlement Agreement as well. The official Court Notice informed the Class Members that the Settlement provides a process to resolve disagreements if they are not satisfied with their payments.

Mr. Boothe did not opt out of the Settlement and therefore remains a member of the Economic Class, bound by the terms of the Settlement Agreement. He thus agreed to follow the procedures provided by the Settlement Agreement for the processing of his claim and to pursue no further remedies. He cannot now repudiate and ignore that portion of the Settlement Agreement that requires him to seek review of his claim through the steps called for and by the Settlement Agreement.

Claimants cannot by-pass the Court-approved processes in the Settlement Agreement and seek remedies not provided in the Settlement Agreement. Allowing claimants to do so would disrupt the processing of claims under the Settlement Agreement and impair the Claims Administrator from achieving its objective of processing all claims expeditiously and fairly, applying the same rules and procedures to all claimants equally. Following the agreed-upon remedies prescribed by the Settlement Agreement is the most expeditious method to resolve the claimant's objection to the Claims Administrator's processing of his claim.

### III. CONCLUSION

For the foregoing reasons, the Claims Administrator submits that the claimant's Motion should be denied. Mr. Boothe should be directed to follow the procedures of the Settlement Agreement for the processing and final determination of his claim.

/s/
PATRICK A. JUNEAU
CLAIMS ADMINISTRATOR

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of April 2013, the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/EDF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, and has been mailed by first class mail, postage prepaid to the claimant, H. Freddie Boothe, Jr., 14248 Highway 1077, Folsom, LA  70437.

                                               /s/
                                    PATRICK A. JUNEAU
                                    CLAIMS ADMINISTRATOR