UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf Of Mexico, on April 20, 2010 | * * * * | MDL No. 2179 SECTION J |
| This Document Relates to: No. 13-492 | * * * * | HONORABLE CARL J. BARBIER MAGISTRATE JUDGE SHUSHAN |

_____

| | | |
|---|---|---|
| BP EXPLORATION & PRODUCTION, INC. and BP AMERICA PRODUCTION COMPANY, *Plaintiffs* | * * * * | CIVIL ACTION NO. 13-0492 SECTION J |
| versus | * * | HONORABLE CARL J. BARBIER |
| DEEPWATER HORIZON COURT SUPERVISED SETTLEMENT PROGRAM; and PATRICK A. JUNEAU, in his official capacity as Claims Administrator of the *Deepwater Horizon* Economic and Property Damages Settlement Agreement, and in his official capacity as Trustee of the *Deepwater Horizon* Economic and Property Damages Settlement Trust, *Defendants* | * * * * * * * * * * * * | MAGISTRATE JUDGE SHUSHAN |

_____

**REPLY MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Defendants Deepwater Horizon Court Supervised Settlement Program and Patrick A. Juneau, in his official capacity as Claims Administrator of the Deepwater Horizon Court Supervised Settlement Program administering the Deepwater Horizon Economic and Property Damages Settlement Agreement, and in his official capacity as Trustee of the Deepwater Horizon Economic and Property Damages Settlement Trust, through undersigned counsel, respectfully submit this reply memorandum in further support of their motion to dismiss (Rec.

1

Doc. 9066) and to respond to the opposition filed by BP Exploration & Production, Inc. and BP America Production Company (collectively, "BP").

## I. BP has not demonstrated that it stated a claim upon which relief can be granted.

Although BP takes the Defendants to task for the "thin legal support" in their memorandum regarding BP's failure to state a claim,[1] *BP does not cite a single case in its opposition to demonstrate that it has pleaded a viable claim*.  Nor does it direct the Court's attention to allegations in its Complaint that support its contention that the Defendants materially breached any agreement or performed *ultra vires* acts outside of their legal authority.  Rather, it rests on its challenge to the correctness of the Court's March 5, 2013 ruling, and asserts that the Defendants should have ignored that ruling (because BP disagrees with it) and begun to interpret and implement the Settlement Agreement's BEL Framework in the manner BP now proposes. BP does not provide any meaningful explanation, though, as to how, as a matter of law or fact, the Defendants could be in breach of any agreement in this case or be performing unauthorized acts by interpreting and implementing the Settlement Agreement consistently with the Court's order.  It does not, because it cannot.

The Defendants' motion should be granted and the Complaint dismissed based on BP's failure to state a viable claim upon which the relief it requests can be granted.  Solely to the extent the Court concludes that BP has stated a claim, it should still dismiss the Complaint against Mr. Juneau on the ground of quasi judicial immunity.

---

[1]  Opposition, at p. 18.

**II.   Mr. Juneau is entitled to quasi-judicial immunity, as he has been sued in conjunction with his performance of judicial functions, including interpreting the BEL Framework for purposes of implementation of the Settlement Agreement and initially adjudicating disputes between Class Counsel and BP.**

BP contends in its Opposition that the Claims Administrator is not entitled to judicial immunity because: (1) he is subject to ongoing supervision by this Court; (2) he is not a special master and; (3) his actions either fall outside the purview of his position or are purely administrative in nature. First and foremost, to assert that it is "conceptually antithe[tical]" for Mr. Juneau to enjoy quasi-judicial immunity because he is subject to court supervision is, itself, conceptually flawed. Quasi-judicial immunity, as BP points out in its brief, is a form of "***derivative***" immunity. *O'Neil v. Miss. Bd. of Nursing*, 113 F.3d 62 (5th Cir. 1993). Therefore, the immunity must be derived from another source. Here, Mr. Juneau derives his authority and quasi-judicial immunity from the Court by an order appointing him as Claims Administrator.[2] He is therefore bound by the contents of the order and subject to the supervision of the Court in performing his functions as the Claims Administrator. *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995).

Further, BP unnecessarily belabors its argument that Mr. Juneau cannot "serve as a special master" as there was not "strict compliance with Rule 53" in his appointment. Whether or not strict compliance with Rule 53 in appointing a special master is required, BP's argument is unhelpful to the Court here. Mr. Juneau has never claimed to be a special master, nor is he

---

[2] Furthermore, as illustrated by a case heavily relied on by BP, those who enjoy quasi-judicial immunity are often subject to the supervision of and are bound by the orders of the Court from which they received their appointments. *See Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995) ("Court appointed receivers act as arms of the court and are entitled to share the appointing judge's absolute immunity provided that the challenged actions are taken in good faith and ***within the scope of the authority granted*** to the receiver.") *See also Bouillon v. McClanahan*, 639 F.2d 213 (5th Cir. 1981) (discussing derived judicial immunity for bankruptcy trustees who act ***under the supervision of and subject to the orders*** of the bankruptcy court).

3

attempting to "shoehorn" himself into the role of special master as BP alleges. Instead, he simply analogizes his role as Claims Administrator to that of an appointed Rule 53 Master and other court-appointed positions to which judicial immunity has been extended, to illustrate that he, too, should be entitled to that protection as he is performing, essentially, the same type of functions as individuals in those roles.[3] BP's attempt to distinguish Mr. Juneau's role as Claims Administrator from a Rule 53 special master fails in any event, as it only highlights the similarities between Mr. Juneau as the Claims Administrator here and a special master appointed under Rule 53.[4]

Regardless of the title of Mr. Juneau's position, the test to determine whether quasi-judicial immunity applies, as BP correctly points out, is a "function test." *Miller v. Gammie*, 335 F.3d 889, 892 (9th Cir. 2003). As previously explained, this function test distinguishes between purely administrative and judicial acts. *Id*. Although BP asserts that Mr. Juneau "ignores" the function test "in favor of general statements of the law and policy[,]" it barely touches upon any

---

[3] In particular, and as cited in Mr. Juneau's original memorandum, absolute quasi-judicial immunity has been extended to individuals appointed to various positions other than special masters such as court-appointed guardians ad litem, court-appointed commissioners, court-appointed bankruptcy trustees, court-appointed receivers, and court-appointed conservators of estates. *See Mullis v. United States Bankruptcy Court, District of Nevada*, 828 F.2d 1385, 1387 (1987); *Ward v. San Diego County Dept. of Soc. Servs.*, 691 F. Supp 238, 241 (S.D. Cal. 1988); *Ashbrook v. Hoffman*, 617 F.2d 474, 476-77 (7th Cir. 1980); *Kermit Constr. Corp. v. Banco Y Ahorro Ponceno*, 547 F.2d 1, 2-3 (1st Cir. 1976); *Mosher v. Saalfeld*, 589 F.2d 438, 442 (9th Cir. 1978).

[4] Just as a master under Rule 53, Mr. Juneau was appointed by the Court to "perform duties consented to by the parties[,]" "recommend findings of fact on issues to be decided without a jury[,]" and "address…posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Mr. Juneau's position is also similar to that of a Rule 53 Master in that he "regulate[s]…proceedings" and "take[s] all appropriate measures to perform the assigned duties fairly and efficiently[.]" Fed R. Civ. Proc. 53.

of the functions Mr. Juneau performs as Claims Administrator.[5]  Critically, BP fails even to discuss *the particular function that Mr. Juneau performed* for which BP instituted suit,[6] and a very brief summary of the operative facts, reveals that he was, indeed, performing judicial functions.

This suit arises out of a "policy announcement" issued by Mr. Juneau, whereby he exercised *his discretion* in *interpreting* the Settlement Agreement to determine the manner in which the BEL Framework has to be applied. (Complaint, Att. C)  This interpretation was brought about because of a *disagreement* between Class Counsel and BP as to the method of processing claims under the BEL Framework.  The resolution of this disagreement was an *adjudication*, which was subsequently reviewed and upheld by the Court.[7]  (Complaint, Att. D).  Thus, the very *functions performed* which brought about this suit by BP are classic judicial functions, entitling Mr. Juneau to quasi-judicial immunity and his dismissal from this suit.

---

[5] Instead, BP delves into a confusing and convoluted policy argument regarding Mr. Juneau's indemnity rights pursuant to his Undertaking agreement. (Complaint, Att. E).  Moreover, as this case demonstrates, even if the Court determines that judicial immunity applies, Mr. Juneau has still been forced to incur legal fees and expenses in responding to the suit and filing this motion.

[6] *Gammie*, 335 F.3d at 892 ("[A]bsolute immunity depends on *the particular function performed*"); ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 8.6.2 (6TH ED. 2012) ("[T]he focus is on *the function performed*...").

[7] Also, BP mischaracterizes Mr. Juneau's defense by stating to the Court in its Opposition that "in a…stroke of contradiction, much of the flavor of Mr. Juneau's defense is that that he is merely a ministerial legal actor[.]"  To the contrary, Mr. Juneau's defense is not that he is a ministerial legal actor, but that he is bound by the Orders issued by this Court as he is under its supervision.  Contrary to BP's assertions that court supervision negates the discretion required to invoke immunity, this is no different for other court-appointed officers of the Court who have been held to enjoy quasi-judicial immunity.

### III. BP is wrong that there is a bright-line rule of law that judicial immunity cannot bar a claim for injunctive relief.

BP would have the Court believe that it is hornbook law that judicial immunity never extends to claims for prospective injunctive relief and cites *Pulliam v. Allen*, 466 U.S. 522 (1984), as support. But, as explained in the Defendants' original memorandum, in *Pulliam*, the Supreme Court held that judges were not immune from suits for declaratory and injunctive relief under 42 U.S.C. § 1983, such that the case is not dispositive here. As important, although BP acknowledges that Congress amended § 1983 after the *Pulliam* decision, it fails to tell the Court that the amendments were directed specifically at the Supreme Court's holding in *Pulliam* and were meant to legislatively overrule that holding:

> This section restores the doctrine of judicial immunity to the status it occupied prior to the Supreme Court's decision in *Pulliam v. Allen*, 466 U.S. 522 (1984), and has the support of the American Judges Association, the Conference of Chief Judges of the National Center for State Courts, and the American Bar Association.
>
> \* \* \*
>
> In *Pulliam*, ***the Supreme Court broke with 400 years of common-law tradition and weakened judicial immunity protections***.
>
> \* \* \*
>
> *Those statutes are now amended* to preclude awards of costs and attorney's fees against judges for acts taken in their judicial capacity, ***and to bar injunctive relief unless declaratory relief is inadequate***.
>
> \* \* \*
>
> … Section 311 ***restores the full scope of judicial immunity lost in Pulliam*** and will go far in eliminating frivolous and harassing lawsuits which threaten the independence and objective decision-making essential to the judicial process.

Senate Report No. 104-366, P.L. 104-317, Federal Courts Improvement Act of 1996 ("FICA") (emphasis added). It is clear that Congress's "exclusive intent" with respect to the FICA

6

amendments was not to avoid federalism concerns, as BP suggests,[8] but also to address *Pulliam*'s limitation on the scope of judicial immunity.

Moreover, although BP again takes the Claims Administrator to task – this time for citing primarily to *Bivens* actions in which judicial immunity barred injunctive claims – BP cites almost exclusively to § 1983 cases, including cases that pre-date the 1996 FICA amendment discussed above.[9] And a review of the post-FICA cases cited by BP reveals that BP quoted to *dicta* or cases that cited to *Pulliam* but failed to note its partial abrogation or the change in the law since that opinion was rendered.[10] Accordingly, BP's "avalanche of authorities" does not bury Mr. Juneau's motion or end the inquiry. To the contrary, Mr. Juneau has cited several cases to the Court in which claims for injunctive relief were denied based on judicial immunity. *See*, *e.g.*, *In re Keenan*, No. Civ.A. 07-451, 2008 WL 878913, *5 (S.D. Cal., Mar. 28, 2008) (holding that an action for various claims, including for some injunctive relief, against a bankruptcy trustee were barred by quasi-judicial immunity); *Washington Mutual Bank v. Bush*, 220 Fed. Appx. 974, 976, 2007 WL 869047 (11th Cir., Mar. 23, 2007) (rejecting argument that injunctive relief is not barred by judicial immunity); *Knight v. Colens*, No. Civ.A. 06-4538, 2006 WL 2849774 (E.D. La., Oct. 3, 2006) (Barbier, J.) (adopting Magistrate Judge Wilkinson's Report and

---

[8] Opposition, at p. 3.

[9] *Id.* (Citing *David v. Bayless*, 70 F.3d 367, 376 (5th Cir. 1995) (citing *Pulliam*); *Hamill v. Wright*, 870 F.2d 1032, 1035 (5th Cir. 1989) (citing *Pulliam*); *Holloway v. Walker*, 784 F.2d 1294, 1296 (5th Cir. 1986) (citing *Pulliam*)).

[10] For instance, in *Bauer v. Texas*, 341 F.3d 352, 357, the Fifth Circuit cited *Pulliam* in passing for its holding that judicial immunity would not bar prospective relief against a judicial officer, but did not analyze the issue, as the Court ruled on other grounds, including that the plaintiff did not have standing. Notably, in its discussion of the standing issue, the Fifth Circuit acknowledged that, pursuant to the 1996 amendments to § 1983, "injunctive relief against a judicial officer for an act or omission in his judicial capacity **shall not be granted** unless a declaratory degree was violated or declaratory relief was unavailable." *Id.* (Emphasis added). The Court did not reconcile that statement with its earlier citation to *Pulliam*.

Recommendation in which Judge Wilkinson explained that FICA "statutorily overruled" *Pulliam* and concluding that the doctrine of judicial immunity barred the plaintiff's suit for injunctive relief).

Finally, the Ninth Circuit determined in *Mullis v. United States Bankruptcy Court, District of Nevada*, 828 F.2d 1385, 1394 (9th Cir. 1987), that it did not make sense to apply *Pulliam*'s exception to judicial immunity in a *Bivens* action.  The *Mullis* Court's holding and rationale are sound and instructive on the issue here.  The Ninth Circuit explained that, in *Pulliam*, the Supreme Court was focused on the fact that Congress specifically enacted § 1983 without including anything in the statute to suggest that it intended to expand the doctrine of judicial immunity to insulate state judges completely from the federal review it was providing for thereunder.  *Id.* at 1393.  The *Mullis* Court pointed out that "there is no need to carve out an exception to judicial immunity to permit declaratory and injunctive relief against *federal* judicial officers," as "Congress has provided carefully structured procedures for taking appeals, including interlocutory appeals, and for petitioning for extraordinary writs…."  *Id.* at 1394.  The *Mullis* Court, thus, concluded (albeit in a *Bivens* action) that "[t]o allow an action for declaratory and injunctive relief against federal officials who would be entitled to judicial immunity from damages merely engenders unnecessary confusion and a multiplicity of litigation."  *Id.*  Indeed, that is precisely what is occurring here by BP's filing of this new lawsuit.

**IV.** **Conclusion**

BP's Complaint fails both legally and factually.  The Court should grant the Defendants' motion and dismiss this suit.

Respectfully submitted,


*/s/ Jennifer L. Thornton*
Richard C. Stanley, 8487
Jennifer L. Thornton, 27019
Gina M. Palermo, 33307
Patrick H. Fourroux, 34550
    Of
STANLEY, REUTER, ROSS,
 THORNTON & ALFORD, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone:   (504) 523-1580
Facsimile:   (504) 524-0069

*Attorneys for Deepwater Horizon Court Supervised Settlement Program and Patrick A. Juneau, in his official capacity as Claims Administrator of the Deepwater Horizon Court Supervised Settlement Program administering the Deepwater Horizon Economic and Property Damages Settlement Agreement, and in his official capacity as Trustee of the Deepwater Horizon Economic and Property Damages Settlement Trust*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of April, 2013, I electronically filed the foregoing Reply Memorandum with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.


   */s/ Jennifer L. Thornton*