# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C.  20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

April 10, 2013

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

　　　　　Re:　　MDL 2179 — Post-Briefing Submission per Rec. Doc. 9064 on the United
　　　　　　　　States and Transocean's Motion to Compel

Dear Judge Shushan:

　　　　BP writes in response to the Court's April 1, 2013 Order (Rec. Doc. 9064) requesting additional briefing on the United States and Transocean's claims in their March 21 joint post-briefing submission regarding the documents BP identified in response to the motion to compel, (Rec. Doc. 8974, at 5-6).

　　　　That joint submission offered two criticisms of BP's review of withheld documents potentially implicated by the motion to compel. *First*, the United States and Transocean criticized BP for not including in BP's review documents dated between May 4 and May 14, 2010. *Second*, the movants ask how BP treated a hypothetical privileged document about disclosing flow information that does not reference one of the specific five sets of communications addressed in the motion to compel.

　　　　At the outset, it is important to underscore that the choice to define the relevant universe of documents, without more, as those "related to preparation of specified communications by BP" (Mot. 4) was made by the United States — not by BP.  The United States contended in its January 30 motion that it was unable to identify the specific withheld documents that it was seeking (*Id.*), and accordingly BP informed the United States that BP would perform a review to identify the documents.  Not until a March 21 post-briefing submission did the United States (and Transocean) pose the questions at issue here.

　　　　Now these questions are being offered by the United States and Transocean in the form of comments on or criticisms of BP's review — as opposed to the natural result of the framing of

Chicago　　　　Hong Kong　　　　London　　　　Los Angeles　　　　Munich　　　　New York　　　　Palo Alto　　　　San Francisco　　　　Shanghai

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
April 10, 2013
Page 2

the United States' motion and the United States' hesitancy to engage in meet-and-confer discussions. Accordingly, these questions come late in the day. BP nevertheless understands that the Court seeks a resolution of the movants' most recent concerns; hence, BP is concurrently answering related United States questions posed by letter to BP and is also addressing below the concerns voiced in the March 21 filing. (**Part I**.)

Additionally, because of the Court's admonishment that it prefers not to receive further submissions on this topic, this letter also anticipates a broader issue that appears to underlie the specific more immediate concerns addressed in Part I.

Specifically, the United States and Transocean appear to be under a misimpression that the motion to compel requests all withheld documents about rate-of-flow disclosure. The United States' motion to compel made no such request, of course. Had the United States' motion sought a broad ruling on the legal standard for disclosing rate-of-flow information, and had the Court entertained such a request, the resulting proceedings would have been a sprawling, complex trial-within-a-trial long before the start of the Phase 2 trial — proceedings that would necessarily encompass the United States' own practices and conduct relating to rate-of-flow disclosures, which were closely interwoven with BP's.

Rather than divert attention to such a significant undertaking, BP offers reasons why the Court should decline to addresses such issues, which, in any event, are not properly before the Court. (**Part II**.)

## Background

The United States and Transocean's March 21, 2013 joint post-briefing submission invites a conversation about what documents the United States may or may not have requested nearly six weeks earlier when the United States filed the January 30 motion to compel. The "concern[s]" raised in that March 21 submission should be approached with the procedural history of this motion in mind.

### A.    The United States Moves to Compel Production of Documents "Related to" Certain Specified Communications.

The January 30, 2013 motion to compel sought "to compel production of all documents related to preparation of specified communications by BP and withheld on a privilege claim." (Mot. at 4.) The motion echoed the United States' email to BP earlier in the day, requesting that BP produce "documents related to the preparation of" the five familiar communications at issue, else the United States would file its motion. (Attachment 1.)

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
April 10, 2013
Page 3

Neither the United States' motion, nor the preceding email, further specified what types of documents were "related to" the communications listed.  Moreover, once BP had received the United States' email and requested a meet-and-confer discussion about the "nature and scope" of its request, the United States declined to meet and confer before filing its motion, stating that its request for documents "related to the preparation of" certain communications was "*purposely quite clear*."  (*Id.* (emphasis added).)

### B.       BP Performs An Extensive, Good-Faith Review to Locate the Requested Documents.

The law is clear, as stated in BP's Opposition, that documents merely "related to" the communications at issue — but not related to the specific material in BP's guilty plea allocution — do not fall within the proper standard for the crime-fraud exception to privilege.  (Opp. at 2-3, 9-16, 20-25.)

BP nevertheless worked in a forthright manner to identify for the Court and movants "documents related to preparation of specified communications by BP and withheld on a privilege claim," (Mot. at 4).  In fact, the United States essentially requested BP perform this review by claiming "it is not possible for the United States to provide a specified list of all documents subject to this motion to compel."  (*Id.*)

BP began its review as broadly as possible — starting with the universe of all documents responsive to long-agreed MDL search criteria that were withheld for privilege (whether logged or unlogged per PTO 14).  (*See* Attachment 2, R. Gasaway Ltr. to Court, at Attachment C (Mar. 5, 2013).)  We then used three broad date ranges to search for documents created in "preparation of specified communications," (*see* Mot. at 4) — (i) April 24 through May 4, 2010, (ii) May 14 through May 24, 2010, and (iii) June 20 through June 25, 2010.  As BP explained in Attachment C to its March 5, 2013 letter, BP also used an inclusive method to determine the "date" of withheld documents.  BP included in its review withheld documents where any one of several date values fell within the three date ranges.  The review also included documents whose date values were outside the three ranges, if the document had a single family member with any of the various date values inside the relevant three date ranges.  (*See* Attachment 2.)

Through this process, counsel for BP reviewed approximately 6,217 withheld documents.  Not only did BP explain this process for the movants, but BP also prepared logs of the documents located that are "related to preparation of specified communications."  Now that the Court has addressed confidentiality concerns about these voluntary logs, the United States and Transocean have been provided these logs for their review.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
April 10, 2013
Page 4

C.      **After BP's Review Is Completed, The United States and Transocean Inquire About the Scope of the United States' Motion's Initial Request.**

On February 13, 2013, BP informed the United States in a meet-and-confer letter that BP was working to identify the documents the United States requested in its January 30, 2013 motion to compel.  The United States did not then clarify the nature and scope of the motion's request for "documents related to preparation of specified communications by BP."

Moreover, neither the United States nor Transocean expressly stated nor otherwise implied that the motion to compel implicated a future discussion about the scope of the United States' request.  (Indeed, we can find no mention at all of the issue prior to March 21 submission — not in the 27 pages of reply briefing; not in three letters to BP regarding the motion to compel (including the March 5 letter provided to the Court objecting to BP's *in camera* submission); and not in the various emails with the Court and parties.)

Only on March 21, 2013 — after BP had finished applying the United States' "documents related to preparation of specified communications" review criteria — did the movants first suggest a discussion about the nature and scope of the documents they had requested on January 30, 2013.  (Rec. Doc. 8974, at 6.)

### Discussion

I.      **The United States And Transocean's Late-Raised Concerns Are Easily Answered And Should Conclude This Discussion.**

Although presented as questions and concerns about BP's document review, the United States' and Transocean's statements in a paragraph on pages 5 and 6 of their March 21, 2013 joint submission are perhaps better viewed as attempts belatedly to reframe the motion to compel.  The movants' comments on date ranges is readily addressed (and is in fact addressed below).  But the movants' new "concern" about what "related to" means threatens to provide the United States and Transocean with an improper *post hoc* opportunity — after briefing has concluded — to adjust the scope of the motion to compel.

BP nevertheless understands that the Court seeks closure on the specific questions the United States and Transocean posed in their post-briefing submission.  Per the Court's April 1 Order, BP provides the following answers, which we hope will satisfactorily address the United States' and Transocean's concerns.

***First***, the United States and Transocean criticize BP for not reviewing withheld documents from May 4, 2010, through May 14, 2010, because that period might include withheld documents "related to preparation of" (Mot. at 4) David Rainey's flow rate note

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
April 10, 2013
Page 5

provided to Admiral Landry on May 19, 2010, or BP's May 24, 2010 letter to Congressman Markey.  (JS at 5.)

As an initial matter, BP did review documents from May 4 and documents from May 14, so the movants' criticism is better understood as addressing the May 5 to May 13, 2010 date range.  Further, BP's review likely encompassed some withheld documents that have certain date metadata values within that May 5 to May 13, 2010 time period.  For example, a withheld document created on May 5, 2010, that was attached to an email (whether produced or withheld) sent on May 15, 2010, would have been included in BP's review.  This is because, as explained in Attachment C to BP's March 5, 2013 letter, BP defined a document's "date" inclusively to mean any of a number of possible "dates" a given document, or a document's family members, might possess.  (*See* Attachment 2.)

BP did not seek, however, to review withheld documents dated on or between May 5 to May 13, 2010, because the preparation of the May 19 note and the May 24 letter began on or after May 14, 2010.  As the Court has seen from reviewing the "May 19" documents, and as the parties can now see because BP has produced the relevant documents, it appears that David Rainey did not begin drafting the May 19 flow rate note until May 16, 2010, at the earliest.  (*See* Documents Nos. 1.0 - 2.2, Log of "Withheld Documents Related to the May 19, 2010 Note" (BP-HZN-2179MDL07729452 - 9466).)  And as the Court and parties now well know, BP's May 24, 2010 letter to Congressman Markey was prepared in response to Congressman Markey's May 14, 2010 letter to Lamar McKay.  Given these two timelines, BP justifiably did not seek to review documents dated on or between May 5 and May 13, 2010, because the documents in that date range would not "relate to preparation of" the May 19 note or the May 24 letter.

***Second***, the movants' March 21 submission expresses concerns about a hypothetical scenario in which BP perhaps did not submit for *in camera* review a hypothetical "communication from outside counsel on May 15, 2010 that provided BP with advice on what flow rate information [BP] needed to share, but which does not reference a communication specified in the United States' motion to compel."  (JS at 5-6.)

BP agrees, as a general matter, that a document does not need to mention any of the specific communications at issue to be "related to preparation of specified communications by BP and withheld on a privilege claim" (Mot. at 4).

Our MDL counsel team responding to the United States' motion does not presently know, however, of an actual document matching the description of the movants' hypothetical email.  To the best of our current knowledge, BP's reviewers did not knowingly exclude such a hypothetical email from the five lists of relevant documents furnished to the Court and movants or the corresponding document sets provided to the Court for *in camera* review.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
April 10, 2013
Page 6

BP's review of approximately 6,217 withheld documents was a thorough, good-faith, and transparent effort to identify the documents the motion requested on the basis of the criteria then-provided by the United States.  As described in Attachment C to its March 5 letter, BP performed several QC searches, with follow up review, in a good faith effort to locate requested documents. (*See* Attachment 2.)

As the Court and movants will understand, however, as with any demanding document review, reviewers can only apply their best judgment in good faith to identify the relevant documents.  BP cannot guarantee that every last document the movants might think could be responsive to their motion was actually located and identified as such — nor would the United States or Transocean likely so guarantee were they performing such a review.  We have no reason to believe, however, that unique documents requested by the motion to compel were omitted from the lists of documents furnished to the parties and provided to the Court for *in camera* inspection.

***Finally***, BP has also answered today a separate, joint meet-and-confer letter from the United States and Transocean regarding BP's review.  Unlike the March 21 submission, that joint letter did not provide BP with any additional examples of documents the movants believe should have been included in BP's review.  BP therefore hopes and trusts the two late-raised points in the March 21 post-briefing submission are the United States' and Transocean's final word on the scope of the January 30 motion and that the United States and Transocean's joint response to this letter will not raise still further "concern[s]" about the scope of the motion to compel.

II.     **The Court Should Decline To Address The United States' And Transocean's Apparent Request For Rulings On Issues Beyond The Scope Of The Initial Motion.**

The United States and Transocean's specific concerns appear to spring from a more fundamental misimpression about the scope of the motion.

In their March 21 submission (and perhaps also in their respective reply briefs), the movants appear to be taking a position that the motion to compel sought an expansive category of documents containing general legal advice, or containing advice in previously unspecified contexts, related to disclosing or withholding flow information. In fact, however, the motion as filed was expressly tied to BP's allocution and BP's consent agreement with the SEC. Based on the material contained in those two documents, the motion sought a specific ruling regarding privileges asserted over documents related to the preparation of certain communications.

In contrast, the movants' new request for all withheld documents about rate-of-flow disclosure seeks a far broader ruling on the legal question of BP's (or any party's) duty to disclose flow information.  Although the Court has ruled there will be no further proceedings

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
April 10, 2013
Page 7

related to this motion, (Rec. Doc. 9064, at ¶ 7), such a broad, newly presented request for relief would implicate complex proceedings that would constitute, in effect, a premature trial-within-a-trial of certain Phase 2 issues. These complex proceedings about general flow disclosure issues would also naturally implicate the United States' own conduct in the dissemination of rate-of-flow information, conduct that was closely intertwined with BP's.

BP addresses the movants' apparent argument here because BP will not have a reply submission to the movants' April 17 response submission. BP would be glad to learn in that upcoming April 17 submission that the United States and Transocean do not, in fact, claim that the motion to compel seeks such a broad legal ruling for a broad category of documents. Until then, BP respectfully requests that the Court decline to address broad issues of flow disclosure implicated by the United States and Transocean's post-briefing submission, which are not properly before this Court.

## A.      The Motion to Compel Was Limited by Its Terms.

In their joint post-briefing submission, the United States and Transocean request that BP review documents created between May 5 and May 13, when none of the communications at issue were being prepared. The movants also question whether BP identified general legal advice regarding flow rate disclosure that does not reference any of the specific communications. Standing alone, these two items admit of easy responses, and BP has provided those responses above.

Taken broadly, these two points could be read to suggest that the motion to compel seeks all documents containing general legal advice, or containing advice in previously unspecified contexts, related to disclosing or withholding flow information.

In fact, the motion actually filed was more limited in scope. That motion was procedurally occasioned and substantively based solely on BP's allocution and the SEC consent agreement. To this limited motion, Transocean filed a one-sentence joinder offering no additional evidence or allegations of crime or fraud. (Rec. Doc. 8457.)

The United States' motion explained that the issues presented were ripe because BP's plea was accepted — the day before the motion was filed. (Mot. at 3.) The United States claimed the allocution and the SEC consent agreement demonstrated changed circumstances justifying its second motion regarding certain of these documents. (Mot. at 4.) The United States then stated expressly that these two documents were the substantive basis for its *prima facie* case, "As described below, BP's criminal plea and the Consent in the civil case brought by the SEC establish that certain communications by BP were criminal and/or fraudulent." (Mot. at 4.) Throughout the brief, the United States' arguments that it met its burden stemmed from these two documents. (*See generally* US Mot. at 7-12.)

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
April 10, 2013
Page 8

Accordingly, the motion to compel sought only those documents "related to *preparation of specified communications* by BP and withheld on a privilege claim" (Mot. at 4 (emphasis added)) — not all withheld documents providing legal advice in the context of disclosing flow information.

The United States and Transocean cannot now recast their motion, through a post-briefing submission, as a motion to compel all documents providing legal advice about flow disclosure.  Certainly, the motion to compel actually filed does not support such a broad claim.

**B.      The Movants Have Not Supported Their Apparent New Request for Additional Categories of Rate-of-Flow Documents.**

The United States' motion to compel, as filed, does not support a broad request for rate-of-flow documents — nor do the various comments the United States and Transocean have made in subsequent submissions.  All of those various comments about BP's conduct have ready answers.  But all of the issues implicated by the various comments concern matters outside the scope of the motion as filed and thus are not properly before the Court.

Were the Court to wade into broad issues of rate-of-flow disclosure (which it should decline to do), a much more complex proceeding would be required to analyze the information the movants might claim BP should have disclosed, the materiality, if any, of this information, whether or not there was any reasonable reliance on the relevant conduct, and the effect, if any, of such reliance.  Moreover, as the Court knows, BP's rate-of-flow disclosures were closely intertwined with those of the United States through the Unified Area Command and then later the Flow Rate Technical Group.  Any broad determinations about rate-of-flow disclosures would therefore need to account for the United States' own conduct in this regard.

To be sure, BP does not believe these issues are relevant to the motion to compel now before the Court.  But should the movants succeed in obtaining an expansion of their motion over BP's objections, BP would respectfully request that the Court allow BP an extensive reply submission to address the new contentions.

*       *       *

BP hopes that the answers provided above, together with its response today to a separate United States meet-and-confer letter on the same issues, address the movants concerns.  BP looks forward to definitively and favorably resolving this motion to compel.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
April 10, 2013
Page 9

BP respectfully requests that the Court simply review the documents submitted *in camera* and disregard the United States and Transocean's recent efforts to secure broader rulings regarding rate-of-flow disclosure issues than those requested in the original motion.

Sincerely,

Robert R. Gasaway

Attachments

cc (by electronic mail):
Michael O'Keefe
United States' MDL Counsel
Plaintiffs' Liaison Counsel
Defense Liaison Counsel
Joel M. Gross

# **Attachment 1**

| | |
|---|---|
| **From:** | Benson, Thomas (ENRD) [Thomas.Benson@usdoj.gov] |
| **Sent:** | Wednesday, January 30, 2013 3:50 PM |
| **To:** | Petrino, Michael A.; phase2BP@liskow.com |
| **Cc:** | phase2US@liskow.com; *Sarah.Himmelhoch@usdoj.gov; Engel, Bethany (ENRD); O'Rourke, Steve (ENRD); *Mike.Underhill@usdoj.gov |
| **Subject:** | RE: MDL 2179: Request for Action Regarding Previously Privileged Flow Rate Statements |

Mike,

Thanks very much for your email. We were purposely quite clear concerning the broad scope of what BP is required to produce, *i.e.*, "production of documents related to the preparation of the following: (1) BP's statements to Congress on May 4, 2010, and BP's correspondence with Congress on May 24, 2010 and June 25, 2010; (2) the May 19, 2010 email from Doug Suttles to Adm. Landry; and (3) the Forms 6-K furnished to the SEC on April 29 and 30 and May 4, 2010." In other words, if a document is related to such statements and documents and the issues to which they pertain, which would include documents and communications claimed to be privileged, they must be produced. As we also stated, unless BP's answer was an "unequivocal" agreement to produce all such documents, we would proceed with the motion. Not having received such an unequivocal response, we respectfully shall proceed with filing.

Best,

Tom

**From:** Petrino, Michael A. [mailto:michael.petrino@kirkland.com]
**Sent:** Wednesday, January 30, 2013 1:02 PM
**To:** Benson, Thomas (ENRD); phase2BP@liskow.com
**Cc:** phase2US@liskow.com; Himmelhoch, Sarah (ENRD); Engel, Bethany (ENRD); O'Rourke, Steve (ENRD); Underhill, Mike (CIV)
**Subject:** RE: MDL 2179: Request for Action Regarding Previously Privileged Flow Rate Statements

Dear Tom,

As in the past, BP is willing to meet and confer with the United States regarding the United States' privilege challenges.

Unfortunately, the timeline you suggest (BP sending a response to the United States a little over four hours after receiving its request) is not compatible with such a discussion -- nor with what Judge Shushan expects of counsel where privilege challenges are being put forward (as she has indicated in many Orders regarding briefing of privilege challenges).

We encourage you to send BP as a meet-and-confer letter whatever it is that you had been planning to send the Court today regarding these documents -- or alternatively to confer with us by telephone and see if we can understand the nature and scope of what the United States is requesting and mutually resolve the request short of Court involvement.

As you know, we have amicably resolved all of the many privilege disputes with the United States that have arisen since the Court's guide-posting decisions last summer, and we see no reason why we shouldn't try to tackle this one (as the Court has required us to do) through a good faith meet-and-confer.

Best Regards,

**Michael A. Petrino**
Associate

Kirkland & Ellis LLP
655 Fifteenth St. NW   Washington, D.C. 20005
Tel +1-202-879-5170     Fax +1-202-654-9638

Michael.Petrino@kirkland.com

---

**From:** Benson, Thomas (ENRD) [mailto:Thomas.Benson@usdoj.gov]
**Sent:** Wednesday, January 30, 2013 9:15 AM
**To:** phase2BP@liskow.com
**Cc:** phase2US@liskow.com; *Sarah.Himmelhoch@usdoj.gov; Engel, Bethany (ENRD); O'Rourke, Steve (ENRD); *Mike.Underhill@usdoj.gov
**Subject:** MDL 2179: Request for Action Regarding Previously Privileged Flow Rate Statements

Dear Counsel,

Now that BP's guilty plea for obstruction of justice has been accepted by the Court, the United States plans to file a motion to compel production of documents related to the preparation of the following: (1) BP's statements to Congress on May 4, 2010, and BP's correspondence with Congress on May 24, 2010 and June 25, 2010; (2) the May 19, 2010 email from Doug Suttles to Adm. Landry; and (3) the Forms 6-K furnished to the SEC on April 29 and 30 and May 4, 2010.

We will file our motion later today unless, by 1 p.m. central time, BP unequivocally commits to producing the documents described above. Please advise.

Best,

Tom

Thomas A. Benson
Senior Counsel
Environmental Enforcement Section
U.S. Department of Justice
202-514-5261 (ph)
202-616-6584 (fax)

U.S. Mail Address: P.O. Box 7611, Washington, D.C. 20044-7611

Overnight Mail Address: 601 D Street, N.W., Washington, D.C. 20004

************************************************************
IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
************************************************************

# **Attachment 2**

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C.  20005

Robert R. Gasaway
To Call Writer Directly:                                        (202) 879-5000                                        Facsimile:
(202) 879-5175                                                                                                    (202) 879-5200
robert.gasaway@kirkland.com                              www.kirkland.com

March 5, 2013

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

> Re:    MDL 2179 — *In Camera* Submission for BP's Opposition to United
>        States Motion to Compel (Rec. Docs. 8715)

Dear Judge Shushan:

As described in BP's Opposition to the United States' motion to compel, (Rec. Doc. 8715, at 8, 24), and in line with previous privilege challenges, BP will deliver to Chambers this afternoon an *in camera* submission to assist the Court in adjudicating the United States' motion (Rec. Doc. 8419).

This voluntary submission, described further below, consists of certain documents for *in camera* review and privilege logs corresponding to the five document sets the United States requested.  Although the submission is a voluntary one, the United States in a letter to counsel, joined by Transocean, has objected to any *in camera* submission by BP, and particularly the submission described in BP's Opposition.  So that the Court is fully apprised of these parties' positions regarding this submission, we attach both the United States and Transocean letters to this one.  (Attachments A and B.)

With this letter BP describes its upcoming submission, addresses the United States' objections, and proposes some next steps in light of these objections.  Should the Court have questions regarding this submission — or the United States and Transocean's objections to it — BP would be pleased to join a call with the Court and the United States to answer them.

## Background

During BP's and the United States' meet-and-confer exchange of letter correspondence, BP proposed providing the United States with five newly assembled privilege logs — one for

Chicago        Hong Kong        London        Los Angeles        Munich        New York        Palo Alto        San Francisco        Shanghai

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 5, 2013
Page 2

each document set the United States' motion requests.  BP had assumed, as is usual in most discussions of amicably resolving contested issues in litigation, that BP could request and receive confidential treatment for these logs.  As part of that meet-and-confer process, BP began assembling the logs in conjunction with the document review described in Attachment C to this letter.

The United States' response to BP's offer stated, however, that unless BP were willing to produce all documents the United States is requesting, the appropriate course would be to complete the briefing.  Soon thereafter, the Court set a briefing schedule, and with the meet-and-confer concluded, BP then proceeded to file its Opposition brief.

As BP's Opposition explained, an *in camera* review is required for privilege challenges such as this one brought by the United States and Transocean.  Only through a document-by-document review, can a determination be made that the crime-fraud exception applies to any particular document.  (Rec. Doc. 8715, at 24.)  BP's Opposition described the *in camera* submission that BP planned to, and soon will submit, (*id.* at 24-25), and BP now further describes that submission below.

## I.   BP's *In Camera* Submission

As stated in BP's Opposition, BP's *in camera* submission consists of two categories of materials — (1) certain withheld documents related to the five documents sets requested in the United States' motion and (2) five separate privilege logs, each corresponding to one of those five United States' requests.  These documents, and the corresponding logs, have been assembled through a good-faith reasonable search of withheld documents responsive to agreed MDL search criteria, as described in Attachment C to this letter.  Additionally, BP provides the following information regarding this submission.

### A.   Documents Submitted for *In Camera* Review

BP will soon submit to the Court the documents "related to" three of the United States' five requested documents sets, as described in Part II.B of BP's Opposition, specifically documents related to:

- May 19, 2010 Note,

- May 24, 2010 Letter to Congressmen Markey, and

- June 25, 2010 Letter to Congressman Markey.

For reasons stated in Part II.A of BP's Opposition, BP does not believe the United States has even begun to make a *prima facie* showing regarding the following two document sets of the five sets the United States is requesting, specifically documents related to:

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 5, 2013
Page 3

- May 4, 2010 Congressional briefing, and

- April 29, 30 and May 4 SEC submissions on Forms 6-K.

Again, as further explained in BP's Opposition, these documents are not being submitted for review *in camera*, because no *in camera* review of these documents is needed. (*See* Rec. Doc. 8715, at 17-20, 24.)

**B.      Voluntarily Assembled Privilege Logs**

In the interest of being helpful to the Court and parties, BP has created five new privilege logs — one for each of the United States' five requests.

Because the documents described on these logs were either previously listed on a BP privilege log or were not required to be logged per Pre-Trial Order 14, BP has compiled these logs strictly as a courtesy to the Court and parties.  We hope the logs can help further a prompt resolution of the United States' and Transocean's privilege challenges.

These logs will be provided to the Court together with BP's *in camera* submission of documents in two separate sealed envelopes as described blow.

**1.      Logs for Documents Related to the May 19 Note and the May 24 and June 25 Letters.**

The first of the two sealed envelopes will contain three privilege logs marked "Confidential," each corresponding to one of the document sets submitted for *in camera* review described above — (1) May 19, 2010 Note, (2) May 24, 2010 Letter to Congressmen Markey, and (3) June 25, 2010 Letter to Congressman Markey.

Although BP planned to make these logs available to opposing counsel during the meet-and-confer process, legal counsel for certain persons listed on these logs has requested that BP provide the logs to opposing counsel only on a Confidential basis.

The specific concern voiced by individual counsel is that these voluntarily assembled privilege logs may be used in the media (possibly by parties) to ascribe to the persons listed on the log possible participation in a "crime" or "fraud" without the appropriate legal basis for making such a statement.

Rather than withhold these three voluntary logs altogether, BP wishes to share these logs on an appropriately confidential basis with the Court and parties to assist in resolving the United States' motion.  BP has therefore marked each of the logs "Confidential" and these logs should be handled in accordance with PTO 13's use of that term.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 5, 2013
Page 4

Neither the United States nor Transocean has indicated whether it objects to these logs' remaining Confidential.  Until the Confidential status of these logs is resolved, however, and in light of the objections mentioned in recent correspondence (and out of an abundance of caution), BP will submit the logs to the Court only in a sealed envelope marked "Do not open pending resolution of possible United States and Transcoean objection."

## 2.    Logs for Documents Related to SEC Submissions and May 4 Briefing.

The second sealed envelope will contain two logs always intended solely for this Court's information as part of an *in camera* review, each log corresponding to the May 4 Congressional briefing and the April 29, 30, and May 4 SEC Forms 6-K.

As the Court knows, BP has previously provided declarations with *in camera* submissions made in response to United States' privilege challenges.  And although the United States has objected to these submissions on multiple occasions, the Court has uniformly overruled these objections.  (*See* Aug. 17, 2012 WGC Tr., at 29:17-22; S. Cernich July 3, 2012 Ltr., at 5-6; S. Cernich Aug 2, 2012 Ltr., at 2 & n.3; S. Cernich Aug. 31, 2012 Ltr., at 1.)

In an attempt to avoid the need to resolve similar objections here, BP has slimmed down its *in camera* submission to provide the Court only with privilege logs.  These logs were produced voluntarily to aid the Court in resolving the United States' motion and need not be provided at all.  *In camera* review of these logs is all the more appropriate in this context where the logs correspond to documents for which the United States has not begun to make a *prima facie* showing.

## C.    Further Information About the Organization of BP's *in Camera* Submission.

Finally, we thought the Court might appreciate some further road-mapping regarding the upcoming submission to assist its *in camera* review.

***Categorization of Documents***.  Again, three sets of documents are being submitted — those related to the May 19 Note, the May 24 letter, and the June 25 letter.

As described in BP's Opposition, BP has categorized each submitted document family into one of five categories A through E.  (Rec. Doc. 8715, at 7-8, 24-25.)  These categorizations are indicated on the three privilege logs corresponding to the three sets of documents being submitted.

By referencing the tab numbers in the binders with the "Doc. No." column on the corresponding log, the Court can determine an individual document's placement in a category (A-E) by looking to the appropriate row corresponding to the document and column labeled

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 5, 2013
Page 5

"Category (A-E)" on the appropriate privilege log.  For these three document sets, BP has provided all documents in all categories (A-E) to the Court for *in camera* review.  To further aid the Court's review, documents for which BP claims privilege in Category A have been printed on yellow paper.

*Document Families*.  Each document being submitted for *in camera* review is being submitted as part of a complete document family, as appropriate.  This is true notwithstanding that some document family members are not privileged and/or have previously been produced.  Accordingly, the three logs corresponding to these three document sets list every document submitted, including non-privileged family members.  To further aid the Court's review, the entries corresponding to the non-privileged family members are highlighted in gray on the privilege logs.

BP understands that the Court's privilege rulings may be issued with respect to entire families of documents.  Partly for this reason, BP has placed documents in Categories by entire family, not on an individual-document basis.  Nevertheless, to the extent the Court addresses the privileged status of individual documents (as opposed to document families), the Court need not address the individual, non-privileged documents highlighted in gray on the privilege logs.

## II.     The United States and Transcocean's Objections

Considering the United States' initial motion, and the attached correspondence, it appears to us that the United States, joined by Transocean, has the following objections to this *in camera* submission.  (*See* Attachments B and C.)

*First*, the United States, joined by Transocean, disputes whether *in camera* review is necessary at all because, in its view, the United States is entitled to all of the documents it seeks.  The United States' position, however, is premised on clear legal error — the Unites States' mistaken assumption that satisfying a "related to" standard is sufficient for showing the applicability of the crime-fraud exception.  Under the correct "in furtherance of" standard, not all documents "related to" the United States' document requests must be produced.  As BP's Opposition explains, only through a document-by-document review can the Court determine whether the exception to privilege applies to any particular document.  (Rec. Doc. 8715, at 24.)

*Second*, The United States and Transocean have also objected to BP's submitting a "secret brief" *in camera*.  (Attachment A, at 2; Attachment B.)  This objection should be easily resolved, however, because it appears to be premised on a misunderstanding of the materials to be submitted.  As described above, BP is not submitting any *in camera* briefing, or even an *in camera* declaration as we have done in connection with past privilege disputes.  Our submission consists of, instead, just the documents and logs described above.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 5, 2013
Page 6

*Finally*, even though the United States (and Transocean) object to the Court's performing any *in camera* review, these parties still demand to see the logs that BP has prepared on a voluntary basis. (Attachment A, at 1; Attachment B.) As stated above, however, because BP was under no obligation to assemble these logs, and because the logs contain significantly less information than previous submissions *in camera*, this demand is without foundation.

Nonetheless, as described in our Opposition, BP is amenable to sharing the three logs regarding the May 19 note, the May 24 letter, and the June 25 letter provided the parties will agree to the common sense proposition that the logs be treated as Confidential.

As for the remaining two logs (May 4 briefing and SEC submission), BP is only submitting them *in camera* to help orient and assist the Court's review. These logs do not contain a categorization of documents (A through E), nor any other information beyond what is typical on an MDL privilege log.

Because the United States' has failed to make a *prima facie* showing regarding these documents, the documents described on these two logs are not yet at issue, and there is no need for further distribution of the logs.

## III.    Proposed Next Steps

BP will send to the Court this afternoon the documents and five privilege logs described above.

As in past instances of similar submissions, the documents will be provided in tabbed binders. Here, however, in light of the pending objections BP is providing two sealed envelopes containing the five privilege logs. As noted above, the first sealed envelope contains three logs marked Confidential — one each for documents related to the May 19 note, May 24 letter, and June 25 letter. These logs correspond to the documents submitted and contain the previously described A-E categorization. These logs should aid the Court's *in camera* review of the documents submitted.

The second sealed envelope contains the May 4 and SEC logs, which are being submitted for *in camera* review. BP proposes the Court review these logs in the context of the United States' motion, but has put them in the envelopes in the event the Court wishes to convene a call between the parties before its review.

Finally, BP reiterates its offer to share the three logs in the first envelope (those relating to the May 19, May 24, and June 25 logs) with opposing parties. Assuming the Court agrees that parties should treat as Confidential these three privilege logs, BP will promptly send these logs by email to the parties.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 5, 2013
Page 7

*     *     *

BP trusts that the submitted materials and the approach outlined above will assist the Court in efficiently and effectively resolving the United States' motion.  In particular, BP proposes that the Court perform an *in camera* review of these documents, as it has previously for similar privilege challenges.  But should the Court have questions regarding this somewhat complicated submission — or the United States and Transocean's objections to it — BP would be pleased to join a call with the Court and the United States to answer them.

Sincerely,

Robert R. Gasaway

Attachments

cc (by electronic mail):
Michael O'Keefe
United States' MDL Counsel
Plaintiffs' Liaison Counsel
Defense Liaison Counsel
Joel M. Gross

# Attachment A



**U.S. Department of Justice**

Environment and Natural Resource Division

*P.O. Box 7611*
*Washington, DC 20044*
*202-514-5261*
*Thomas.Benson@usdoj.gov*

March 1, 2013

**BY ELECTRONIC MAIL**

Don K. Haycraft
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, LA
dkhaycraft@liskow.com

      Re:    MDL 2179: BP's Opposition to the United States' Motion to Compel Production
of Previously-Withheld Documents Pursuant to the Crime-Fraud Exception to the
Attorney-Client Privilege

Dear Mr. Haycraft:

      We received the opposition to the United States' Motion to Compel Pursuant to the
Crime-Fraud Exception that BP filed last night. In BP's brief, the company states that it will
"soon submit privilege logs under seal, together with a submission, made for purposes of *in
camera* review, of all documents appearing on the logs relating to May 24 and June 25 letters
and May 19 note, respectively." BP Brief at 8; *see also* BP Brief at 24.

      We have two serious concerns with BP's proposal. First, to the extent BP decides to
provide privilege logs to the Court, those logs should be served on all counsel, rather than filed
under seal with the Court.[1] The logs themselves are not privileged, and we note that BP offered
to provide privilege logs to the United States in the meet-and-confer process before changing its
mind once a briefing schedule was set. *See* February 13, 2013 R. Gasaway Letter; February 26,
2013 M. Petrino Email.

---

[1] As stated in our brief and previous correspondence, we do not believe *in camera* review is
necessary in this situation.  *In camera* review is only necessary when needed to determine
whether a crime or fraud has occurred.  Here, that fact is established by BP's own admissions.

Second, we object to BP providing any *in camera* submission to the Court with the privilege logs. The Court set a schedule for BP to file its brief on this matter, and BP has done so. There is no reason for BP to get a second, secret brief on the issue.

Given these objections, we trust that if BP opts to proceed with its stated intention to provide privilege logs to the Court, it will (1) provide those logs to counsel at the same time and (2) not provide any *in camera* submission on the issue. If you do not agree to these parameters, please advise, and we will raise the issue with the Court.

Sincerely,

/s/ *Thomas A. Benson*
Thomas A. Benson

cc:     Counsel of Record via Lexis File & Serve

# Attachment B



SUTHERLAND ASBILL & BRENNAN LLP

1001 Fannin, Suite 3700

Houston, Texas 77002

713.470.6100  Fax 713.654.1301

www.sutherland.com

**STEVEN ROBERTS**
DIRECT LINE: 713.470.6192
E-mail: steven.roberts@sutherland.com

March 3, 2013

<u>VIA ELECTRONIC MAIL</u>

Don K. Haycraft
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139

Re:   MDL 2179: BP's Opposition to the United States' Motion to Compel Production of Previously-Withheld Documents Pursuant to the Crime-Fraud Exception to the Attorney-Client Privilege

Dear Mr. Haycraft:

Transocean joins the position articulated by Mr. Thomas Benson of the Department of Justice in his correspondence to you, dated March 1, 2013. For the reasons outlined by the United States, Transocean also objects to BP's proposal to provide the Court with privilege logs and a submission for *in camera review* in response to the United States' Motion to Compel Production of Previously-Withheld Documents Pursuant to the Crime-Fraud Exception to the Attorney-Client Privilege.

Sincerely,

Steven L. Roberts

SR/rcb

# Attachment C

## Attachment C

The documents referenced on the privilege logs submitted to the Court in two sealed envelopes, as described in the attached cover letter, are "related to" the five separate requests for disclosure of previously withheld documents appearing in the United States' motion. These documents were identified through a reasonable good-faith review, as described below, of documents previously withheld as privileged (whether logged or unlogged per PTO 14) that are responsive to the agreed MDL search criteria.

*First*, an initial group of withheld documents to be examined was delineated by attempting in good faith to identify the withheld documents reasonably related to the five separate requests within the United States motion (*see* Rec. Doc. 8149, at 2). Upon consideration, we determined the following date ranges for each of the five requests were appropriate:

- April 24 and May 4, 2010 (the date of the Unified Command's first announcement of a flow rate estimate and the date of the last of the three SEC filings in question, respectively) (USA request re SEC filings)

- April 24 and May 4, 2010 (the date of the Unified Command's announcement of the 1,000 bpd estimate and the date of the non-public congressional briefing spotlighted in the United States' motion, respectively) (USA request re May 4 congressional briefing)

- May 14 and May 19, 2010 (a conservative early bound for the drafting period for the May 19, 2010 flow rate note, which likely began at least two days later) (USA request re May 19 note)

- May 14 and May 24, 2010, (the date of Congressman Markey's letter to BP and the date of BP's response to that letter, respectively) (USA request re May 24 letter)

- June 20 and June 25, 2010 (the date of Congressman Markey's release of two documents from the May 24, 2010 submission and the date of BP's letter responding to that release, respectively) (USA request re June 25 letter)

The search was performed in a manner designed to capture documents falling within the above date ranges, including documents that had a single family member falling within the above date ranges. BP applied an inclusive definition of "date" to include the Document Date (DOCDATE), Sent Date (TIMESENT), File Created Date (DATECRTD), as well as any date privilege loggers may have manually assigned during the privilege logging process.

*Second*, the documents returned as a result of the above search were reviewed by attorneys one-by-one to determine whether they relate to preparing for the May 4, 2010 hearing or drafting the May 19 note to Admirals Landry and Allen, the May 24 or June 25 letters to Congressman Markey, or the three SEC filings spotlighted in the United States' motion.

**Third**, upon completion of the initial round of review by attorneys, a QC search was performed that was designed to identify additional documents not previously marked as related to one of the five document sets sought by the United States.

For those documents in the April 28 and May 4 timeframe, not marked as relevant, BP performed three searches: **(1)** a search of document text and TO/FROM/CC field for documents involving David Rainey, a **(2)** a document text search for draft versions of the materials filed with the SEC on April 29, April 30 and May 4, and **(3)** a document text search for draft versions of the talking points prepared for the May 4 non-public congressional briefing.

For those documents in the May 14 to May 24 and June 20 to June 25 timeframes not marked as relevant, BP performed two searches, **(1)** a search of document text for "Markey" and **(2)** a search of document text and TO/FROM/CC fields for David Rainey, Jeffrey Morgheim, Trevor Hill, or Mike Mason.

**Fourth**, documents identified by these searches were re-reviewed for documents related to one or more of the United States' five requests.

**Finally**, documents "related to" the United States' five requests were logged in approximately the same manner as documents are normally logged in the MDL.  And those documents related to the May 19 note or the May 24 or June 25 letter were categorized, by document family, according to the categories described in BP's Opposition brief.  (*See* Rec. Doc. 8715, at 1-2.)  Those categories are reprinted here for the Court's and parties' convenience.

- Category A:  Documents in which Mr. Rainey is an active participant and that relate to the matters in BP's guilty plea allocution.

- Category B:  Documents in which Mr. Rainey is a passive recipient of a communication (either as a recipient or as someone on the "cc" line).

- Category C:  Documents in which Mr. Rainey is an active participant in the communication but that do not relate to the matters in BP's guilty plea allocution.

- Category D:  Documents in which Mr. Rainey is not part of the communication but where the participants refer to or recount a prior interaction with Mr. Rainey.

- Category E:  Documents that relate to a communication as to which BP allocuted but that post-date the communication and/or that concern an aspect of the communication that was not the subject of BP's guilty plea allocution.