

**U.S. Department of Justice**
Environment and Natural Resources Division
Environmental Enforcement Section

90-5-1-1-10026
_____

*Steven O'Rourke*                                                                 *Telephone (202) 514-2779*
*U.S. Mail: P.O. Box 7611, Washington, DC  20044-7611*                            *Facsimile (202) 514-2583*
*Overnight Mail:   601 D Street N.W., Washington, DC, 20004*
*E-mail: steve.o'rourke@usdoj.gov*

April 10, 2013

<u>Via E-Mail</u>
The Honorable Carl Barbier
United States District Judge
United States District Court
Eastern District of Louisiana

   Re: MDL 2179:  Objections to Garrison and Gardner

Dear Judge Barbier:

  The United States objects to the admission of certain portions of BP's video clip disclosures for Greg Garrison and Craig Gardner, based on this Court's "Order re Motions in Limine Regarding Joint Investigation Report and Government Reports" [Rec. Doc. 5810] ("Order 5810").  That order merely enforces the express statutory prohibition on admission of evidence from the Joint Investigation Team ("JIT").  The marine casualty investigation statute provides:

> Notwithstanding any other provision of law, no part of a report of a marine casualty investigation conducted under section 6301 of this title, including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence . . . in any civil or administrative proceedings. . . .

46 U.S.C. § 6308(a).

  BP itself moved for an order excluding evidence from the JIT, Rec. Doc. 4511, which the Court granted (in part).  Rec. Doc. 5448 "Order [Regarding Motions in Limine to Exclude Evidence of the Joint Investigation Report and Testimony]."  However, the Court later allowed the admission of purely factual matters, including data and observation.  Rec. Docs. 5572 and 5618.  Accordingly, Order 5810 permitted factual matters such as lab testing, but prohibited admission of expert opinions drawn from such tests. Order 5810 thus expressly permits admission of test results and data, and those data were indeed admitted, as BP states.

  The portions of Dr. Garrison's testimony BP seeks to play are not fact testimony related to Dr. Garrison's observations concerning the OT&C test results; rather they relate to interpretation of those results, including opinions as to whether the results show a "stable" slurry.

1

Additionally, the portions of Mr. Gardner's testimony are not fact testimony related to the Chevron cement test results.[1]

BP now posits four reasons why the Court should change Order 5810 and ignore the will of Congress as expressed in 46 U.S.C. § 6308. None suffice.

**First**, BP notes that Halliburton referred to the inadmissible material in its opening statement. BP's argument that no objections were made during Halliburton's opening is without merit. The opening statements were promises of proof, not proof itself. Moreover, the parties (including BP) had expressly agreed to refrain from any objections during opening statements, and that doing so would not waive any objections to admission of evidence. *See* Transcript of February 22, 2013 Working Group Conference with Judge Shushan, at 24 (Court memorialized a stipulation that "by not making an objection to the use of a demonstrative, a demonstrative aid or testimony or a regular old exhibit in opening is that no one's waiving their evidentiary objections to the use of that demonstrative or exhibit or testimony during the evidence part of the trial.").

**Second**, BP refers to the testimony of Glen Benge, the cement expert for the United States. BP argues that because the United States admitted the OT&C data report, and Mr. Benge referred to it, Order 5810 has somehow been vacated; but the Order expressly contemplates that the data reports would be admitted. BP also asserts that the door was opened during Halliburton's cross exam of Mr. Benge. BP picked the lock and now it claims the door is wide open. If the Court reviews the colloquy between Mr. Hill and Mr. Regan (attached to BP's submission) during BP's cross examination against Mr. Benge's actual testimony, it is clear that Mr. Hill did not open the door for the opinion testimony of Dr. Garrison (or Mr. Gardner). Although Halliburton's objection was overruled at the time, the Court's ruling was not a modification of Order 5810.

**Third**, BP argues that Halliburton also played testimony from Garrison and Gardner. However, when Halliburton circulated their proposed video clips, the United States objected to certain portions based on the Court's Order. Halliburton honored this Court's Order 5810 and agreed not to show those clips. The clips Halliburton played removed the opinion testimony the United States' objected to on the basis of Order 5810 and appropriately limited the testimony to factual matters as required by the Court's Order. BP meanwhile seeks to amend Order 5810 and ignore the statute.

**Fourth**, BP argues that Halliburton did not comply with discovery requests. But the statute applies "Notwithstanding any other provision of law," 46 U.S.C. § 6308(a). Thus Fed. R. Civ. P. 37 should not be used to eviscerate the statute's requirements. *Cf.* Rec Doc. 5448 (in which the Court held that this very "Notwithstanding any other provision of law" language trumps Fed. R. Evid. 703).

---

[1] We notified BP on April 7, 2013 of our objections, and after a meet and confer with BP on April 9, 2013 we were unable to resolve our objections.

2

For the foregoing reasons the Court should exclude the highlighted portions of testimony in the objections of the United States as attached to BP's letter.

                                                Respectfully submitted,

                                                /s/ Steve O'Rourke
                                                Steven O'Rourke

cc:     Ben Allums
        PSC Liaison Counsel
        States Coordinating Counsel
        Defense Liaison Counsel