UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | : : : : | MDL NO. 2179  SECTION J |
| THIS DOCUMENT RELATES TO: | : : | JUDGE BARBIER |
| ALL CASES | : : | MAGISTRATE JUDGE SHUSHAN |

**JOINT UNITED STATES AND TRANSOCEAN MEMORANDUM REGARDING THE SCOPE OF BP'S IDENTIFICATION OF DOCUMENTS RESPONSIVE TO THE CRIME-FRAUD MOTION TO COMPEL**

Review of the materials produced by BP to date, including both privilege logs and the underlying documents ordered produced by the Court, suggests that BP's privilege logs omit many documents responsive to the United States' crime-fraud motion to compel. Moreover, the produced materials confirm that all documents identified by BP are indeed related to the communications at issue in the United States' motion, and that they should be produced. The Parties can then work with the Court to identify and address the additional responsive documents.

Based on the review of the produced materials, United States and Transocean ("Movants") have four primary concerns with BP's identification of documents responsive to the motion. *First*, BP has not included *any* documents from the custodial files of in-house or outside counsel. Given that the motion pierces privilege for what BP has asserted was a lawyer-directed process, ignoring documents in the custody of counsel means ignoring a major source of responsive documents. *Second*, contrary to BP's claim that it could disregard documents dated May 5-May 13, 2010 "because the documents in that date range would not 'relate to preparation of' the May 19 note or the May 24 letter," (April 10, 2013 Letter, R. Gasaway to Judge Shushan

- 1 -

("April 10 Gasaway Letter) at 5), ██████████████████████████████████████

██████████████████████████████████████████ Documents related to that May 10, 2010 letter – as well as any other documents dated May 5-May 13 that were related to the furtherance of BP's fraudulent communications with Congress – are responsive to the motion.  **Third**, common sense and the circumstantial evidence from what BP has produced suggest that BP's identification is too narrow to be credible. ██████████

██████████████████████████████████████████████████████████████████

██████████████ *Fourth*, BP's latest brief suggests that it has omitted documents containing general legal advice on disclosing flow rate information that informed the crime-fraud communications.  In short, BP has failed to identify the full universe of documents responsive to the motion.

The company's overly narrow identification of responsive documents highlights the flaw in the company's procedural approach to the crime-fraud motion to compel.  The United States' motion seeks a ruling from the Court ordering BP to produce all documents related to preparation of (1) fraudulent communications to Congress on May 4, 2010 and fraudulent letters to Congressman Markey dated May 24 and June 25, 2010; (2) a fraudulent statement to Federal On-Scene Coordinator Admiral Mary Landry on May 19, 2010; and (3) fraudulent securities statements on April 29 and 30 and May 4, 2010.  *See, e.g.*, US Initial Brief (Dkt. No. 8417-23) at 2.  Rather than engage on the motion as framed, BP has attempted to turn the motion into a series of decisions on individual, BP-selected documents by directing the Court's attention to the five privilege logs and *in camera* documents identified using BP's overly restrictive process.

The United States and Transocean submit that the better approach – one that tracks how the Court has previously dealt with privilege challenges – would be to grant the United States' motion and order the production of *all* documents identified by BP thus far, thereby establishing

the principle by which documents will be produced.  The Parties can then apply that principle to the appropriate, complete universe of responsive BP documents, with the help of the Court as necessary.  Such an approach tracks the Phase Two privilege challenge process, in which the Court ruled on a set of sample documents to establish principles for the Parties to apply.  The Court then ensured the principles were applied correctly through a verification process.  *See, e.g.*, Doc. # 6510 (setting schedule for challenges, orders, and verification).

I.      **BP's Identification Of Responsive Documents Is Too Narrow**

As with any privilege dispute, the United States and Transocean began this process at a disadvantage because we have not seen the responsive documents BP has withheld.  To the extent the withheld documents involve attorneys, they were omitted from privilege logs as well, pursuant to PTO 14.  Thus, the best Movants can do is draw inferences based on what BP has provided.[1]  Reviewing that material leads to four conclusions.  First, BP has failed to search for responsive documents in the location they are most likely to be found: attorney files.  Second, BP has improperly refused to review, log, or produce documents dated May 5-13, 2010 based on the incorrect assumption that documents from that date range do not relate to the May 19 or May 24 communications.  Third, BP seems to have omitted other responsive documents from its crime-fraud privilege logs.  Finally, BP implies that it has excluded documents containing general discussion about whether and how to disclose flow rate information that informed the crime-fraud communications.

A.      **BP Failed to Search Attorney Files for Responsive Documents**

Although BP never explicitly says as much, it is clear that the company failed to search attorney files for documents responsive to the crime-fraud motion to compel; there are no

---

[1] Movants have two sources of information: (1) The privilege logs of documents BP identified as related to the crime-fraud communications that were provided to the Court on March 5, 2013 and to the Parties on April 1, 2013 pursuant to the Court's order (Dkt. No. 9064); and (2) The 62 documents related to the May 19, May 24, and June 25 communications that the Court already ordered produced (Dkt. No. 9115).

documents logged that were shared exclusively among attorneys.  BP states that it "began its review as broadly as possible – starting with the universe of all documents responsive to long-agreed MDL search criteria that were withheld for privilege."  April 10 Gasaway Letter at 3.  A broad review – one that errs on the side of over-inclusivity – is necessary in this context because BP's stated purpose was to list *all* documents that could be considered related and let the Court decide which must be produced.  *See* March 5, 2013 Letter, R. Gasaway to Judge Shushan ("March 5 Gasaway Letter") at 5.  In describing the search, however, BP never explains that it searched only the preexisting list of custodians, and did not include any attorneys.  At best, BP has engineered a broad search of the preexisting custodians – ignoring many of the custodians most likely to have responsive documents.[2]

BP has made clear that lawyers controlled the process of responding to Congressional requests.  As BP counsel told the Court in an earlier pleading:

> Congressional requests received by the company in this time period *were handled through a process organized and directed by lawyers* in which information was gathered from personnel within the company.  *Congressional responses were then drafted in a collaborative process led by WilmerHale and involving both in-house and external lawyers along with appropriate BP personnel.* Although not every communication regarding the effort to collect information and to respond to requests involved the direct participation of an attorney, *the overall process was a lawyer-directed effort seeking to ensure that BP received appropriate legal advice with respect to the requests and the company's responses.*

July 19, 2012 Letter, R. Gasaway to Judge Shushan, Dkt. No. 7009 at 5 (emphasis added).  While BP's briefing in response to the motion to compel attempts to cast BP Vice President David Rainey as the fulcrum of the criminal or fraudulent communications, the company's

---

[2] We know BP excluded attorneys from its search based on reviewing the crime-fraud logs.  It *may* have excluded other important custodians, such as press officers or technical personnel, who should be searched to establish the universe of responsive documents.

- 4 -

statements before the motion was filed make clear that attorneys were at the heart of preparing the documents at issue for this motion.

The logs and documents BP has produced thus far in response to the motion confirm the centrality of attorneys to the communications at issue.³ 

This record confirms that what BP already told the Court is true: attorneys led the process of responding to Congressional requests and were intimately involved in preparing those communications.

Thus it is highly likely that there are additional communications and documents within the files of the attorneys representing BP that are not included in the crime-fraud privilege logs prepared by BP. Through its criminal or misleading communications, BP nullified the privilege for the preparation of those communications. *See, e.g., United States v. Ballard*, 779 F.2d 287, 292-293 (5th Cir. 1987) (once showing is made, "the confidences within the relationship are no

---

³ As a potential aid to the Court, the Movants include as Attachment A to this brief an alphabetical list of the BP personnel and outside counsel involved in the communications listed on the privilege logs. Citations are provided in Attachment A, but we have not included the cited documents themselves to avoid burying the Court in paper. We will of course provide them if the Court wishes.

⁴ The Movants understand that the Court already has the five privilege logs and the 62 documents that BP produced in response to the Court's order, Dkt. No. 9115. Because BP has claimed all these documents are confidential, and because the Court already had them, we do not submit them with this brief.

longer shielded."). Having done so, BP cannot rely on prior, non-attorney custodian lists to defeat the crime-fraud exception and avoid discovery of its communications.[5]

B.     **BP's Refusal to Review Documents Dated May 5-13 Is Unjustified**

In BP's April 10, 2013 submission, it writes that "BP justifiably did not seek to review documents dated on or between May 5 and May 13, 2010, because the documents in that range would not 'relate to preparation of' the May 19 note or the May 24 letter." April 10 Gasaway Letter at 5,



The 5/10/10 Landry Letter appears to be a reference to Deposition Exhibit 9155, a May 10 letter from BP's Doug Suttles to Federal On Scene Coordinator Admiral Mary Landry. In that letter, Suttles referred to the "currently estimated rate of 5,000 barrels per day," included a graph with a line at 5,000 barrels per day that BP labeled the "Most Likely Model," and claimed that "the estimated unrestricted full-stream capacity of the Well is approximately 55,000 barrels per day." Dep. Ex. 9155 at 2, 4.

---

[5] The custodian lists were developed well before BP's criminal plea and before the United States and Transocean made the crime-fraud showing. There was no reason to include attorneys in the custodial list at that time, and BP certainly would have objected to our doing so. The circumstances are sharply different now that the Court's rulings could establish that there are responsive, non-privileged documents in attorney files.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ That nine day period is sandwiched between two time frames when (1) BP made misrepresentations to investors, the SEC, and Congress in support of a low 5,000 bopd estimate (April 29-May 4), and (2) BP prepared the May 24 submission that, in BP's words, "withheld multiple flow-rate estimates prepared by BP engineers that showed flow rates far higher than 5,000 BOPD, including as high as 96,000 BOPD." *See* Guilty Plea Agreement (Dkt. No. 8417-8) at Ex. A, ¶ 1. It is thus unsurprising that a communication from May 10 – or any other date between May 5 and May 13 – would be related to the furtherance of the May 24 communication.

In short, BP's artificial date restrictions are unjustified. It must review, log, and produce (where appropriate) documents dated on or between May 5 and May 13.[6] The discoverable set of documents would necessarily include any attorney-client communications about Doug Suttles' May 10 letter to Admiral Landry, which was used in furtherance of BP's fraudulent May 24 letter to Congressman Markey.

### C. BP's Identification of Responsive Documents Is Implausibly Limited

In addition to the exclusion of attorney files, a common sense reading of BP's logs and produced documents suggests that other responsive documents have been omitted. Each of the communications at issue in the United States' motion was an important statement by BP, either to the SEC and the public, the government official overseeing the response, or Congress. The paucity of privileged documents identified by BP is simply inconsistent with the critical nature of the communications.

---

[6] It is of course no answer that BP may have incidentally reviewed "some" documents from the May 5 to May 13, 2010 time period just because those documents happened to be attached to a later dated email. *See* April 10 Gasaway Letter at 5. There is no way of knowing what percentage of documents from this period actually were reviewed, nor is there any reason to believe that the documents reviewed (if any) would comprise the complete set of documents that BP would identify if it performed the necessary review.

For example, on April 29, 2010, BP reported to the SEC, and the public, that the Deepwater Horizon caught fire and sank and claimed that the oil flow was "currently estimated at up to 5,000 barrels per day."[7] See Ex. 5 to BP Opposition Brief (Dkt. No. 8715) at 6. █

██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████

   ████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
███████████████████████████████████

While there are more documents on the logs associated with the two letters to Congressman Markey, there are peculiarities there as well that suggest that responsive documents were missed. ██████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████

---

[7] As described in the United States' briefing, this estimate was contradicted by the company's internal analysis. *See, e.g.*, US Reply Brief (Dkt. No. 8868) at 9-10.

seems likely that there were some additional communications relating to the decision to finalize and delay the letter, and that BP failed to include them in its log.

Reviewing the documents that BP has produced lead to the same conclusion: BP omitted documents it should have included even by its own standard. The Movants reviewed the email chains produced by BP on April 9, 2013 and located several instances where (1) we know an email was sent because it is included in the email chain; and (2) the email is not included in the log or production.[8] █████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████ Movants found these missing emails just by looking at the handful of email chains that were produced thus far.[9] Given that BP failed to include these clear examples of communications that are responsive even by the company's own reckoning, it likely missed many more.

---

[8] We omitted instances of emails among attorneys only, since apparently BP did not attempt to log those. *See* Section I.A.

[9] ████████████████████████████████████████████████████████████████
████

Of course, Movants have not seen the potentially responsive documents, and so cannot state with certainty what should have been logged that was not. We note, however, that BP chose to exercise its own attorneys' judgment in deciding what to include on the log. Rather than include *all* previously-withheld documents from the time periods BP determined to be relevant, the company employed two rounds of attorney review to pare down the list to what BP's attorneys decided was related. *See* March 5 Gasaway Letter at Attachment C. Those reviews took the total number of potentially related documents from approximately 6,217 to approximately ▮. *Compare* April 10 Gasaway Letter at 3 (providing BP estimate that it reviewed 6,217 documents) *to* BP's March 5, 2013 privilege logs (adding up the entries on each of the logs yields approximately ▮ entries). Even assuming BP started with the full universe of potentially responsive documents, BP's logs would suggest that ▮ of the those documents withheld in the days leading up to the crime-fraud communications related to those communications. Again, this seems unlikely.

> **D. BP's Latest Brief Implies that It Has Withheld Related Documents by Casting Them as 'Containing General Legal Advice' about whether to Disclose Flow Rate Information**

BP devotes the last third of its brief to arguing that Movants should not be allowed to expand the scope of the original motion to compel. April 10 Gasaway Letter at 6-9. That argument is simply answered: we are not trying to do so. Instead, we are trying to work with the Court to determine what universe of documents is fairly encompassed within the scope of our motion.

However, BP's rhetoric suggests that there are additional documents related to the crime-fraud communications that the company has deliberately excluded from its crime-fraud logs. BP's brief warns that Movants' filings "could be read to suggest that the motion to compel seeks all documents containing general legal advice, or containing advice in previously unspecified

- 10 -

contexts, related to disclosing or withholding flow information." April 10 Gasaway Letter at 6. Movants are not arguing that *all* documents related to disclosing or withholding flow information are responsive to the motion. However, communications concerning whether and how to disclose flow rate information that relate to the crime-fraud communications listed in the United States' motion *are* related to the preparation of those documents and thus responsive to the motion. For instance, a discussion of whether to include a flow rate estimate in the May 4, 2010 Congressional briefing is clearly related to that communication and should be included. A broader discussion about whether BP should include flow rate estimates in *any* external communications, as long as it predated some or all of the crime-fraud communications, would also be related to the preparation of the relevant communications and responsive to the motion. BP cannot exclude documents that are related to a crime-fraud communication simply because they might apply to other communications as well.

\*\*\*

BP's stated intent was to begin its review as broadly as possible and ask the Court to decide which documents are responsive to the crime-fraud motion. *See* Section I.A. Instead, BP has omitted attorney files and appears to have narrowly defined what is related in order to provide a restricted universe to the Court and the Movants. Given the potential that BP has provided an overly limited identification of documents related to the communications at issue, the most sensible approach is for the Court to establish the principles for production rather than simply accepting BP's universe of what is "related" to the motion.

## II.  BP's Production Confirms That Its Rainey-Centric Categorization System Is Irrelevant And That All Identified Documents Should Be Produced

BP provided the United States and Transocean its crime-fraud privilege logs on April 1, 2013 after being ordered to do so by the Court, Doc. # 9064, and well after the conclusion of briefing on the motion. The logs support a finding that *all* documents identified by BP should be

ordered produced and confirm that BP's attempts to limit its production based on the nature of Mr. Rainey's involvement is untenable.

In its opposition brief, BP argued that the United States used the wrong standard for application of the crime-fraud exception. Dkt. No. 8715. In our reply, the United States explained that Fifth Circuit case law establishes that where a communication serves a criminal or fraudulent purpose, the crime-fraud exception applies to documents related to the preparation of that communication. US Reply Brief (Dkt. No. 8868) at 5 (citing *United States v. Dyer*, 722 F.2d 174, 179 (5th Cir. 1983)).

BP's descriptions of the logged documents confirm that they are all related to the preparation of the communication at issue (or reasonably related to the furtherance of the criminal/fraudulent communication, to use BP's preferred formulation of the standard). ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

BP's descriptions confirm that each logged document was part of the process that BP went through to prepare the communication.

In addition, the logs confirm that BP's categorization of documents based on the nature of Mr. Rainey's involvement is not a useful sorting mechanism. First, as BP stated in its April 3, 2013 Letter to the Court, Mr. Rainey played no role in the SEC statements. Even where Mr. Rainey played a role in the preparation of the communication, however, his absence on a particular document does not mean that document is not in furtherance of the criminal or fraudulent act. A closer look at the sequence of documents identified by BP as leading to the

flow rate analysis provided to Admiral Landry on May 19, 2010 illustrates why Mr. Rainey's involvement in a particular communication is immaterial.



---

[10] The Court previously ruled that the Mason email was admissible for Phase Two trial as TREX 3220.  Dkt. No. 8785.

- 13 -

███████████████████████████████████████████████████

They should be produced. This analysis illustrates the United States' and Transocean's point – the degree of Mr. Rainey's involvement is simply not a useful indicator of whether any particular document falls within the scope of the crime-fraud exception.

\*\*\*

Based on BP's crime-fraud logs and the documents produced so far pursuant to Court order, *everything* that BP has identified is related to the preparation of the communications at issue and thus is in furtherance of the criminal or fraudulent communications. All documents identified by BP thus fall within the crime-fraud exception and should be produced.

## CONCLUSION

The limited materials BP has been ordered to provide thus far demonstrate both that BP ignored one of the most likely sources of documents responsive to the motion to compel and was overly narrow in listing documents that it did consider. The produced materials also confirm that the entire set of documents BP has identified so far satisfy the crime-fraud exception and should be produced. Given the known and unknown flaws in BP's identification, the United States and Transocean respectfully request that the Court resolve the issue by granting Movants' motion and ordering production of all documents identified by BP thus far. From there, the Parties, with the assistance of the Court as necessary, can work to ensure production of the appropriate collection of additional documents.


Respectfully submitted,

| | |
|---|---|
| BRIAN HAUCK<br>Deputy Assistant Attorney General<br>Civil Division | IGNACIA S. MORENO<br>Assistant Attorney General<br>Environment & Natural Resources Division |
| PETER FROST<br>Directory, Torts Branch, Civil Division<br>Admiralty and Aviation<br>STEPHEN G. FLYNN<br>Assistant Director<br>MICHELLE DELEMARRE<br>SHARON SHUTLER<br>JESSICA SULLIVAN<br>JESSICA MCCLELLAN<br>MALINDA LAWRENCE<br>Trial Attorneys | SARAH HIMMELHOCH<br>Senior Litigation Counsel<br>NANCY FLICKINGER<br>SCOTT CERNICH<br>THOMAS BENSON<br>Senior Attorneys<br>DEANNA CHANG<br>A. NATHANIEL CHAKERES<br>JUDY HARVEY<br>ABIGAIL ANDRE<br>RACHEL HANKEY<br>BETHANY ENGEL<br>Trial Attorneys |
| /s/ R. Michael Underhill | /s/ Steven O'Rourke |
| R. MICHAEL UNDERHILL, T.A.<br>Attorney in Charge, West Coast Office<br>Torts Branch, Civil Division<br>U.S. Department of Justice<br>7-5395 Federal Bldg., Box 36028<br>450 Golden Gate Avenue<br>San Francisco, CA 94102-3463<br>Telephone:  415-436-6648<br>Facsimile:  415-436-6632<br>E-mail:  mike.underhill@usdoj.gov | STEVEN O'ROURKE<br>Senior Attorney<br>Environmental Enforcement Section<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C. 20044<br>Telephone:  202-514-2779<br>Facsimile:  202-514-2583<br>E-mail:  steve.o'rourke@usdoj.gov<br><br>DANA J. BOENTE<br>United States Attorney<br>Eastern District of Louisiana<br>SHARON D. SMITH<br>Assistant United States Attorney<br>Eastern District of Louisiana<br>650 Poydras Street, Suite 1600<br>New Orleans, LA  70130<br>Telephone:  (504) 680-3000<br>Facsimile:  (504) 680-3184<br>E-mail:  sharon.d.smith@usdoj.gov |

Attorneys for the UNITED STATES OF AMERICA

DATED:  April 17, 2013

By:  s/ Brad D. Brian
Brad D. Brian
Michael R. Doyen
Grant A. Davis-Denny
Bram M. Alden
MUNGER TOLLES & OLSON LLP
355 So. Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel:  (213) 683-9100
Fax:  (213) 683-5180
Email:  brad.brian@mto.com
           michael.doyen@mto.com
           grant.davis-denny@mto.com
           bram.alden@mto.com

By:  s/ Steven L. Roberts
Steven L. Roberts
Rachel Giesber Clingman
Sean D. Jordan
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Tel:  (713) 470-6100
Fax:  (713) 354-1301
Email:  steven.roberts@sutherland.com,
           rachel.clingman@sutherland.com
           sean.jordan@sutherland.com

By:  s/ Kerry J. Miller
Kerry J. Miller
FRILOT, LLC
110 Poydras St., Suite 3700
New Orleans, LA 70163
Tel:  (504) 599-8194
Fax:  (504) 599-8154
Email: kmiller@frilot.com

John M. Elsley
ROYSTON, RAYZOR, VICKERY & WILLIAMS LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
(713) 224-8380

Counsel for Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH.

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179. An unredacted version will be emailed to the Court and the Parties.

Date: April 17, 2013.                                  /s/ Steve O'Rourke
                                                       U.S. Department of Justice