## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THE DELTONA CORPORATION, | ) | |
| | ) | |
| | ) | Civil Action No.: _____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| BP p.l.c., BP EXPLORATION AND | ) | |
| PRODUCTION, INC., BP AMERICA | ) | |
| PRODUCTION COMPANY, TRANSOCEAN, LTD., | ) | |
| TRANSOCEAN OFFSHORE DEEPWATER | ) | |
| DRILLING, INC., TRANSOCEAN DEEPWATER, | ) | |
| INC., TRANSOCEAN HOLDINGS, LLC, | ) | |
| TRITON ASSET LEASING GMBH, M-I, LLC, | ) | |
| CAMERON INTERNATIONAL CORPORATION | ) | |
| F/K/A COOPER-CAMERON CORPORATION, | ) | |
| ANADARKO PETROLEUM CORPORATION CO., | ) | |
| ANADARKO E&P COMPANY LP, | ) | |
| MOEX OFFSHORE 2007 LLC, MOEX USA | ) | |
| CORPORATION, MITSUI OIL EXPLORATION | ) | |
| CO., LTD., AND HALLIBURTON ENERGY | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

The Deltona Corporation ("Deltona" or "Plaintiff") files this complaint and jury demand against BP p.l.c., BP Exploration and Production, Inc., BP American Production Company, BP America, Inc., Transocean, Ltd., Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater, Inc., Transocean Holdings, LLC, Triton Asset Leasing GMBH, M-I, LLC, Cameron International Corporation F/K/A Cooper-Cameron Corporation, Anadarko Petroleum Corporation Co., Anadarko E&P Company LP, MOEX Offshore 2007, LLC, MOEX USA Corp., Mitsui Oil

Exploration Co., Ltd., and Halliburton Energy Services, Inc. (collectively referred to as "Defendants") for cause of action that will show unto the court as follows:

## PRESENTMENT

1.      Plaintiff has finalized presentment of its claims pursuant to 33 U.S.C. § 2713 under the Oil Pollution Act, which states "all claims for removal costs or damages shall be presented first to the responsible party."  Ninety (90) days have expired from Plaintiff's presentment of claims and the claims have not been settled by any person by payment.  33 U.S.C. § 2713(c)(2).  Plaintiff has satisfied the mandatory condition precedent to file this suit.

## NATURE OF ACTION

2.      On April 20, 2010, a blowout, explosion, and multiple fires occurred aboard the mobile offshore drilling rig *Deepwater Horizon*, resulting in the sinking of the *Deepwater Horizon* and an oil spill in the Gulf of Mexico ("the Spill") that has caused, is causing, and will continue to cause, damage to the Plaintiff.  This is an action for damages, penalties, and other relief by the Plaintiff against the parties known to be responsible for the Spill.  The Defendants named in this lawsuit collectively and individually engaged in grossly negligent, wanton, and reckless conduct in the drilling and operation of the Macondo well, the operation of the *Deepwater Horizon*, and the containment of the Spill.

3.      Defendants' actions resulted in the blowout of the Macondo well, caused the explosion, burning, and sinking of the *Deepwater Horizon* rig, and directly resulted in the release of crude oil and other pollutants into the waters of the Gulf of Mexico and of the Plaintiff.  These pollutants have damaged, are damaging, and will continue to damage Plaintiff's coastal environment, communities, property, and economic livelihood.

4.      Plaintiff, by and through its attorneys, brings this enforcement action for a declaratory judgment, to recover the economic damages, as well as for compensatory, punitive, and other damages, to the fullest extent allowed by federal law.

## PARTIES

**A. Plaintiff**

5. Deltona was incorporated in Delaware and has its principal office at 8014 SW 135th Street Road, Ocala, Florida 34473. It also has offices in Marion Oaks, Citrus Springs, Sunny Hills, St. Augustine Shores and Miami. Unless otherwise specified the Deltona, as used herein, refers to The Deltona Corporation and, unless the context otherwise indicates, its wholly-owned subsidiaries.

**B. Defendants**

6. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation BP Exploration & Production, Inc. ("BP Exploration") is a Delaware corporation with its principal place of business in Warrenville, Illinois. BP Exploration was a lease holder and the designated operator in the lease granted by the former Minerals Management Service1 ("MMS") allowing it to perform oil exploration, drilling, and production-related operations in Mississippi Canyon Block 252, the location known as "Macondo" where the Spill originated. BP Exploration was designated as a "Responsible Party" by the U.S. Coast Guard under the Oil Pollution of 1990, 33 U.S.C. § 2714. This court has personal jurisdiction over BP Exploration, because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

7. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation BP America Production Company ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas. BP America was the party to the Drilling Contract with Transocean Ltd.

for the drilling of the Macondo well by the Deepwater Horizon vessel. This Court has personal jurisdiction over BP America, because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

8. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation BP p.l.c is a British public limited company with its corporate headquarters in London, England. BP p.l.c. is the global parent company of the worldwide business operating under the "BP" logo. BP p.l.c. is one of the world's largest energy companies with over 80,000 employees and $239 billion in revenues in 2009. BP p.l.c. operates its various business divisions, such as the "Exploration and Production" division in which BP Exploration and BP America fall, through vertical business arrangements aligned by product or service groups. BP p.l.c.'s operations are worldwide, including in the United States. Defendants BP Exploration and BP America are wholly-owned subsidiaries of BP p.l.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c.'s agents in Louisiana and the U.S. more generally.

9. BP Exploration, BP America, and BP p.l.c. are generally referred to herein collectively as "BP." As lease operator of the Macondo prospect site, BP was responsible for assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and retaining and overseeing the contractors working on the various aspects of the well and the drilling operations.

10. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Transocean Ltd. ("Transocean Ltd.") is a Swiss corporation that maintains substantial U. S. offices in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Ltd. was an owner, managing owner, owner *pro hac vice*, and/or operator of the Deepwater Horizon.

11. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Transocean Offshore Deepwater Drilling, Inc. ("Transocean Offshore") is a Delaware corporation

with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Offshore is affiliated with Transocean Ltd. and was an owner, managing owner, owner *pro hac vice*, and/or operator of the Deepwater Horizon.

12. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Transocean Deepwater, Inc. ("Transocean Deepwater"), is a Delaware corporation with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Deepwater is affiliated with Transocean Ltd. and was an owner, managing owner, owner *pro hac vice*, and/or operator of the Deepwater Horizon.

13. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Transocean Holdings, LLC ("Transocean Holdings") is a Delaware corporation with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Holdings is affiliated with Transocean Ltd. and is a wholly-owned subsidiary of Transocean Offshore. Transocean Holdings is an owner, managing owner, owner *pro hac vice*, and/or operator of the Deepwater Horizon.

14. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Triton Asset Leasing GmbH ("Triton") is a Swiss limited liability company with its principal place of business in Zug, Switzerland. Triton is affiliated with Transocean Ltd. and is an owner, managing owner, owner *pro hac vice*, and/or operator of the Deepwater Horizon.

15. Defendants, Cross-Claim Defendants in Limitation, and/or Third-Party Defendants in Limitation Transocean Ltd., Transocean Deepwater, Transocean Offshore, Transocean Holdings, and Triton are hereinafter referred to collectively as "Transocean."

16. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Halliburton Energy Services, Inc. is a Delaware corporation with its principal place of business in Houston, Texas. Halliburton is registered to do and does business in the State of Louisiana.

Halliburton division Sperry Drilling Services (formerly Sperry Sun Drilling Services) was responsible for mudlogging personnel and equipment on the Deepwater Horizon, including downhole drilling tools. Sperry mudlogging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels, and pressure fluctuations. Throughout this Complaint, Cross-Claim, and Third- Party Complaint, "Halliburton" shall refer to both Halliburton Energy Services, Inc. and its Sperry division.

17. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation M-I, LLC ("M-I") is a Delaware limited liability company with its principal place of business in Wilmington, Delaware, and that at all relevant times was registered to do, and was doing, business in Louisiana and within this district.

18. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Cameron International Corporation f/k/a Cooper-Cameron Corporation ("Cameron") is a Delaware corporation with its principal place of business in Houston, Texas. Cameron is registered to do and does business in the State of Louisiana.

19. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Anadarko Petroleum Corporation Co. ("Anadarko") is a Delaware corporation with its principal place of business in The Woodlands, Texas. Anadarko is registered to do and does business in the State of Louisiana.

20. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Anadarko E&P Company LP ("Anadarko E&P") is a Delaware limited partnership with its principal place of business in The Woodlands, Texas. Anadarko E&P is registered to do and does business in the State of Louisiana.

21. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation MOEX Offshore 2007 LLC ("MOEX Offshore") is a Delaware corporation with its principal place

of business in Houston, Texas. MOEX Offshore does business in the State of Louisiana and/or in state and/or federal waters off the coast of Louisiana.

22. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation MOEX USA Corporation ("MOEX USA") is incorporated in Delaware and has its principal place of business in Houston, Texas. MOEX USA is the parent company of MOEX Offshore.

23. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Mitsui Oil Exploration Co., Ltd. ("MOECO") is incorporated in Japan and has its principal place of business in Tokyo, Japan.

24. Defendants MOEX Offshore, MOEX USA, and MOECO are referred to collectively herein as "MOEX."

25. While BP was the sole lease operator of the *Deepwater Horizon*, Anadarko, Anadarko E&P, and MOEX were considered non-operational leaseholders. On October 1, 2009, BP Exploration, as operator, and MOEX Offshore, as non-operator, entered into the Macondo Prospect Offshore Deepwater Operating Agreement. On December 17, 2009, BP Exploration, MOEX Offshore, Andarko E&P, and Andarko executed a "Joinder" of the Operating Agreement. Subsequently, the parties to the Operating Agreement held the following ownership percentages in the Macondo Prospect: BP Exploration, 65%; MOEX Offshore, 10%; Anadarko E&P, 22.5%; and, Anadarko, 2.5%. According to the MMS's website, effective April 1, 2010, record title interest in the Macondo prospect was held as follows: BP Exploration, 65%; MOEX Offshore, 10%; and, Anadarko, 25%. As joint holders of a leasehold interest in an oil or gas lease on land beneath navigable waters, Defendants Anadarko, Anadarko E&P, and MOEX are jointly, severally, and solidarily liable with their codefendants BP pursuant to the Oil Pollution Act. Anadarko, Anadarko E&P, and MOEX also had access to Halliburton/Sperry Sun INSITE real-time data that was transmitted from the *Deepwater Horizon* on April 20, 2010, and therefore knew or should have known of the red flags indicating a leak in the well in sufficient time to avert the disaster.

26. Drilling Defendants, Cameron, Anadarko, Anadarko E&P, and MOEX are jointly, severally, and solidarily liable under various principles of federal, maritime, and/or applicable State law, and under the Oil Pollution Act.

## JURISDICTION

27. The claims presented in this Complaint are admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction exists pursuant to Article III, Section 2 of the United States Constitution, which empowers the federal judiciary to hear "all Cases of admiralty and maritime jurisdiction."  Jurisdiction also exists pursuant to the Admiralty Extension Act, 46 U.S.C. § 30101, which extends the admiralty and maritime jurisdiction of the United States to cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land.

28. The claims presented invoke the Court's jurisdiction under the Oil Pollution Act, 33 U.S.C. § 2717 (b) (the "OPA").  *See* 28 U.S.C. § 1331.

29. The claims presented invoke the Court's supplemental jurisdiction.  *See* 28 U.S.C. § 1367.

## VENUE

30. Venue is proper in the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. §1391(b) and the MDL Transfer Order.

## ALLEGATIONS

31. Deltona was founded in 1962 and is principally engaged in the development and sale of Florida real estate, through the development of planned communities on land acquired for that

purpose. Deltona offers single-family and multi-family lots and commercial tracts for sale in communities designed by Deltona. Deltona is the developer of fourteen planned communities in Florida and has land inventory in others. Of those planned communities, some are sold out, some are fully developed with available inventory and some are in various stages of development, including Marion Oaks, Citrus Springs, Sunny Hills, Kapes Bayou, St. Augustine Shores (including the neighborhoods of San Savino and Portofino) and Laterra Links. Since 1962, Deltona has sold over 167,000 single-family lots and multi-family and commercial tracts in its communities, in addition to over 14,000 single-family homes and over 4,300 multi-family housing units.

32. Sunny Hills is located in Washington County, in northwest Florida. The community is located approximately 35 miles north of Panama City via State Road #77, which intersects the property, and is 22 mile south of Chipley. The development contains approximately 13,483 acres which are subdivided into approximately 24,059 planned lots.

33. Sunny Hills is a planned community containing single-family and multi-family residential lots and tracts, commercial sites, community service sites, and church, greenbelt, park and recreational areas. Plat maps for Units I through 19 have been recorded in the Public Records of Washington County, Florida between the 18th day of February, 1971 and the 13th day of March, 1972. There is an 18-hole golf course and clubhouse within the community, which was reacquired by Deltona in November 2007. Sunny Hills appealed to a demographic consisting largely of retirees because of its amenities and location, including its accessibility to the previously pristine white sand beaches along the shore of the Florida Panhandle.

34. Following Hurricane Katrina in August 2005, the Florida Panhandle real estate economy as a whole suffered grievously. However, Sunny Hills managed to sustain itself and had over $30,000,000.00 in sales in 2005. Sunny Hills continued to generate sales in the tens of millions of dollars, despite acts of God and economic conditions, until mid-way through the economic

catastrophe of 2008.  By early 2010 monthly sales were doubling and Sunny Hills was poised to return to annual sales volumes in excess of ten million dollars.

35. On April 20, 2010, the largest and most devastating oil spill in United States history occurred.  In a matter of months a vibrant and growing Gulf Coast residential real estate economy had the life sapped out of it.  As a direct cause of the unprecedented amount of released oil, Sunny Hills real estate sales plummeted to zero by August of 2010.  The continued complete absence of sales continued and by the end of 2010 Deltona was forced to cease marketing and selling its lots and housing units in Sunny Hills.

36.  Deltona is an innocent victim of the Defendants' reckless pursuit of profits in disregard of the safety, environmental integrity, and the economic health of an entire region.  Deltona has suffered direct, physical damages as a result of oil discharged by the Deepwater Horizon incident.

37.  The value of Deltona's assets, book or enterprise value, earning power, and worth of its significant land holdings, are all inextricably tied to the continued environmental vitality of the Gulf Coast.

38. Sunny Hills had been marketed to a vacation and/or retirement demographic.  The purchase of a property that one would use for his or her vacation and/or retirement home is typically a one-time decision.  The Macondo 252 spill was a significant contributing, if not the only, factor in the cessation of Deltona's sale of properties in Sunny Hills, as prospective purchasers looked elsewhere for the one-time purchase of a vacation or retirement home, such as beach communities in the Carolinas or the East Coast of Florida that were unaffected by the spill. As a result, the loss of sales resulting from the spill and/or the conduct of the Defendants is, in all probability, permanent unlike the losses in tourism businesses.

39. Deltona's value as an enterprise has been significantly diminished as a result of the spill, by the amount of $300,000,000.00, as nearly as may be determined at this time.

40. Further, or in the alternative, the deferral of sales as a result of the spill described above has resulted in economic loss including, without limitation, expenses, carrying costs, lost profits, loss of use of funds, and lost business opportunities in the amount of $300,000,000.00 as nearly as may be determined at this time.

41. Defendants' gross misconduct on the Deep Water Horizon directly and proximately caused Deltona to sustain significant financial losses. Deltona files this suit seeking to recover damages for the harm caused by defendants and for punitive damages to punish Defendants for their callous indifference for the rights and safety of others.

42. Plaintiff hereby incorporates by reference all of the allegations pertaining to the liability of the Defendants referenced in Document 6412 as if set forth herein: ***Amended Class Action Complaint for Private Economic Losses and Property Damages in Civil Action 12-970, MDL 2179.***

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests that the court enter judgment in Plaintiff's favor and against Defendants, as follows:

a. awarding Plaintiff actual damages, including compensatory and consequential damages, in an amount to be determined at trial;

b. awarding Plaintiff exemplary or punitive damages;

c. awarding Plaintiff pre-judgment and post-judgment interest at the highest lawful rates;

d. awarding Plaintiff such costs and disbursement as are incurred in prosecuting this action, including reasonable attorneys' and experts' fees; and

e. granting Plaintiff such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for any and all claims pleaded herein in which a jury trial is available by law.

Respectfully submitted,

**THE SYDOW FIRM, LLP**

/s/ Michael D. Sydow
Michael D. Sydow
State Bar No. 19592000
1980 Post Oak Boulevard, Suite 2100
Houston, Texas 77056
(713) 622-9700 [Telephone]
(713) 552-1949 [Facsimile]
E-mail:  michael.sydow@thesydowfirm.com

**REICH & BINSTOCK, LLP**

/s/ Dennis C. Reich
Dennis Reich, Esq.
State Bar No. 16739600
4265 San Felipe, Suite 1000
Houston, Texas  77027
(713) 622-7271 [Telephone]
(713) 623-8724 [Facsimile]
E-mail:  dreich@reichandbinstock.com

*ATTORNEYS FOR PLAINTIFF*
*THE DELTONA CORPORATION*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Complaint has been served on All  Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF  system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 19th day of April, 2013.

/s/ Michael D. Sydow
Michael D. Sydow


/s/ Dennis C. Reich
Dennis Reich, Esq.