IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE GULFSIDE ASSOCIATION OF THE UNITED METHODIST CHURCH, INC., RFD CDC, INC., GOOD EARTH BUILDERS, INC., SEA SONG SENIOR LIVING COMMUNITY, LLC, SEA SONG LAND COMPANY, LLC, WOODWARD DESIGN + BUILD, LLC, AND SEASIDE INTERIORS, INC., ) ) ) ) ) ) ) | |
| | Civil Action No.: _____ |
| Plaintiffs, ) ) | |
| v.   ) ) | **JURY TRIAL DEMANDED** |
| BP p.l.c., BP EXPLORATION AND PRODUCTION, INC., BP AMERICA PRODUCTION COMPANY, TRANSOCEAN, LTD., TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., TRANSOCEAN DEEPWATER, INC., TRANSOCEAN HOLDINGS, LLC, TRITON ASSET LEASING GMBH, M-I, LLC, CAMERON INTERNATIONAL CORPORATION F/K/A COOPER-CAMERON CORPORATION, ANADARKO PETROLEUM CORPORATION CO., ANADARKO E&P COMPANY LP, MOEX OFFSHORE 2007 LLC, MOEX USA CORPORATION, MITSUI OIL EXPLORATION CO., LTD., AND HALLIBURTON ENERGY SERVICES, INC., ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

## COMPLAINT

The Gulfside Association of the United Methodist Church, Inc. ("Gulfside"), RFD CDC, Inc. ("RFD CDC"), Good Earth Builders, Inc. ("Good Earth"), Sea Song Senior Living Community, LLC ("Sea Song Senior Living"), Sea Song Land Company, LLC ("Sea Song Land"), Woodward Design + Build, LLC ("Woodward"), and Seaside Interiors, Inc. ("Seaside") (collectively referred to as "Plaintiffs") file this complaint and jury demand against BP p.l.c., BP Exploration and Production,

1

Inc., BP American Production Company, BP America, Inc., Transocean, Ltd., Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater, Inc., Transocean Holdings, LLC, Triton Asset Leasing GMBH, M-I, LLC, Cameron International Corporation F/K/A Cooper-Cameron Corporation, Anadarko Petroleum Corporation Co., Anadarko E&P Company LP, MOEX Offshore 2007, LLC, MOEX USA Corp., Mitsui Oil Exploration Co., Ltd., and Halliburton Energy Services, Inc. (collectively referred to as "Defendants") for cause of action that will show unto the court as follows:

**PRESENTMENT**

1.      Plaintiffs have finalized presentment of their claims pursuant to 33 U.S.C. § 2713 under the Oil Pollution Act, which states "all claims for removal costs or damages shall be presented first to the responsible party." Ninety (90) days have expired from Plaintiffs' presentment of claims and the claims have not been settled by any person by payment. 33 U.S.C. § 2713(c)(2). Plaintiffs have satisfied the mandatory condition precedent to file this suit.

**NATURE OF ACTION**

2.      On April 20, 2010, a blowout, explosion, and multiple fires occurred aboard the mobile offshore drilling rig *Deepwater Horizon*, resulting in the sinking of the *Deepwater Horizon* and an oil spill in the Gulf of Mexico ("the Spill") that has caused, is causing, and will continue to cause, damage to the Plaintiffs. This is an action for damages, penalties, and other relief by the Plaintiffs against the parties known to be responsible for the Spill. The Defendants named in this lawsuit collectively and individually engaged in grossly negligent, wanton, and reckless conduct in the drilling and operation of the Macondo well, the operation of the *Deepwater Horizon*, and the containment of the Spill.

3. Defendants' actions resulted in the blowout of the Macondo well, caused the explosion, burning, and sinking of the *Deepwater Horizon* rig, and directly resulted in the release of crude oil and other pollutants into the waters of the Gulf of Mexico and of the Plaintiffs.  These pollutants have damaged, are damaging, and will continue to damage Plaintiffs' coastal environment, communities, property, and economic livelihood.

4. Plaintiffs, by and through their attorneys, bring this enforcement action for a declaratory judgment, to recover the economic damages, as well as for compensatory, punitive, and other damages, to the fullest extent allowed by federal law.

## PARTIES

**A. Plaintiffs**

5. Gulfside was incorporated in Mississippi and has its principal office at 418 Washington Street, Bay Saint Louis, Mississippi 39520.  Unless otherwise specified, Gulfside, as used herein refers to The Gulfside Association of the United Methodist Church, Inc., and unless the context otherwise indicates, its wholly-owned subsidiaries.

6. RFD CDC was incorporated in North Carolina and has its principal office at 1713 Beechwood Road, Yadkinville, North Carolina 27055.  Unless otherwise specified, RFD CDC, refers to RFD CDC, Inc., and unless the context otherwise indicates, its wholly-owned subsidiaries.

7. Good Earth was incorporated in Mississippi and has its principal office at 721 North Beach, Waveland, Mississippi 39576.  Unless otherwise specified, Good Earth, as used herein refers to Good Earth Builders, Inc., and unless the context otherwise indicates, its wholly-owned subsidiaries.

8. Sea Song Land was incorporated in Mississippi and has its principal office at 102 Johnson Street, Waveland, Mississippi, 39576.  Unless otherwise specified, Sea Song Land, refers to Sea

Song Land Company, LLC, and unless the context otherwise indicates, its wholly-owned subsidiaries.

9. Sea Song Senior Living was incorporated in Mississippi and has its principal office at 950 South Beach Blvd., Waveland, Mississippi, 39576.  Unless otherwise specified, Sea Song Senior Living, refers to Sea Song Senior Living Community, LLC, and unless the context otherwise indicates, its wholly-owned subsidiaries.

10. Woodward was incorporated in Louisiana and has its principal office at 1000 South Jefferson Davis Parkway, New Orleans, Louisiana 70125.  Unless otherwise specified, Woodward, refers to Woodward Design + Build, LLC, and unless the context otherwise indicates, its wholly-owned subsidiaries.

11. Seaside was incorporated in Mississippi and has its principal office at 721 North Beach, Waveland, Mississippi 39576.  Unless otherwise specified, Seaside, refers to Seaside Interiors, Inc., and unless the context otherwise indicates, its wholly-owned subsidiaries.

**B. Defendants**

12. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation BP Exploration & Production, Inc. ("BP Exploration") is a Delaware corporation with its principal place of business in Warrenville, Illinois. BP Exploration was a lease holder and the designated operator in the lease granted by the former Minerals Management Service1 ("MMS") allowing it to perform oil exploration, drilling, and production-related operations in Mississippi Canyon Block 252, the location known as "Macondo" where the Spill originated. BP Exploration was designated as a "Responsible Party" by the U.S. Coast Guard under the Oil Pollution of 1990, 33 U.S.C. § 2714. This court has personal jurisdiction over BP Exploration, because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

13. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation BP America Production Company ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas. BP America was the party to the Drilling Contract with Transocean Ltd. for the drilling of the Macondo well by the Deepwater Horizon vessel. This Court has personal jurisdiction over BP America, because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

14. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation BP p.l.c is a British public limited company with its corporate headquarters in London, England. BP p.l.c. is the global parent company of the worldwide business operating under the "BP" logo. BP p.l.c. is one of the world's largest energy companies with over 80,000 employees and $239 billion in revenues in 2009. BP p.l.c. operates its various business divisions, such as the "Exploration and Production" division in which BP Exploration and BP America fall, through vertical business arrangements aligned by product or service groups. BP p.l.c.'s operations are worldwide, including in the United States. Defendants BP Exploration and BP America are wholly-owned subsidiaries of BP p.l.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c.'s agents in Louisiana and the U.S. more generally.

15. BP Exploration, BP America, and BP p.l.c. are generally referred to herein collectively as "BP." As lease operator of the Macondo prospect site, BP was responsible for assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and retaining and overseeing the contractors working on the various aspects of the well and the drilling operations.

16. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Transocean Ltd. ("Transocean Ltd.") is a Swiss corporation that maintains substantial U. S. offices in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and

within this district. Transocean Ltd. was an owner, managing owner, owner *pro hac vice*, and/or operator of the Deepwater Horizon.

17. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Transocean Offshore Deepwater Drilling, Inc. ("Transocean Offshore") is a Delaware corporation with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Offshore is affiliated with Transocean Ltd. and was an owner, managing owner, owner *pro hac vice*, and/or operator of the Deepwater Horizon.

18. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Transocean Deepwater, Inc. ("Transocean Deepwater"), is a Delaware corporation with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Deepwater is affiliated with Transocean Ltd. and was an owner, managing owner, owner *pro hac vice*, and/or operator of the Deepwater Horizon.

19. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Transocean Holdings, LLC ("Transocean Holdings") is a Delaware corporation with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Holdings is affiliated with Transocean Ltd. and is a wholly-owned subsidiary of Transocean Offshore. Transocean Holdings is an owner, managing owner, owner *pro hac vice*, and/or operator of the Deepwater Horizon.

20. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Triton Asset Leasing GmbH ("Triton") is a Swiss limited liability company with its principal place of business in Zug, Switzerland. Triton is affiliated with Transocean Ltd. and is an owner, managing owner, owner *pro hac vice*, and/or operator of the Deepwater Horizon.

21. Defendants, Cross-Claim Defendants in Limitation, and/or Third-Party Defendants in Limitation Transocean Ltd., Transocean Deepwater, Transocean Offshore, Transocean Holdings, and Triton are hereinafter referred to collectively as "Transocean."

22. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Halliburton Energy Services, Inc. is a Delaware corporation with its principal place of business in Houston, Texas. Halliburton is registered to do and does business in the State of Louisiana. Halliburton division Sperry Drilling Services (formerly Sperry Sun Drilling Services) was responsible for mudlogging personnel and equipment on the Deepwater Horizon, including downhole drilling tools. Sperry mudlogging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels, and pressure fluctuations. Throughout this Complaint, Cross-Claim, and Third- Party Complaint, "Halliburton" shall refer to both Halliburton Energy Services, Inc. and its Sperry division.

23. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation M-I, LLC ("M-I") is a Delaware limited liability company with its principal place of business in Wilmington, Delaware, and that at all relevant times was registered to do, and was doing, business in Louisiana and within this district.

24. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Cameron International Corporation f/k/a Cooper-Cameron Corporation ("Cameron") is a Delaware corporation with its principal place of business in Houston, Texas. Cameron is registered to do and does business in the State of Louisiana.

25. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Anadarko Petroleum Corporation Co. ("Anadarko") is a Delaware corporation with its principal place of business in The Woodlands, Texas. Anadarko is registered to do and does business in the State of Louisiana.

7

26. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Anadarko E&P Company LP ("Anadarko E&P") is a Delaware limited partnership with its principal place of business in The Woodlands, Texas. Anadarko E&P is registered to do and does business in the State of Louisiana.

27. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation MOEX Offshore 2007 LLC ("MOEX Offshore") is a Delaware corporation with its principal place of business in Houston, Texas. MOEX Offshore does business in the State of Louisiana and/or in state and/or federal waters off the coast of Louisiana.

28. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation MOEX USA Corporation ("MOEX USA") is incorporated in Delaware and has its principal place of business in Houston, Texas. MOEX USA is the parent company of MOEX Offshore.

29. Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation Mitsui Oil Exploration Co., Ltd. ("MOECO") is incorporated in Japan and has its principal place of business in Tokyo, Japan.

30. Defendants MOEX Offshore, MOEX USA, and MOECO are referred to collectively herein as "MOEX."

31. While BP was the sole lease operator of the *Deepwater Horizon*, Anadarko, Anadarko E&P, and MOEX were considered non-operational leaseholders. On October 1, 2009, BP Exploration, as operator, and MOEX Offshore, as non-operator, entered into the Macondo Prospect Offshore Deepwater Operating Agreement. On December 17, 2009, BP Exploration, MOEX Offshore, Andarko E&P, and Andarko executed a "Joinder" of the Operating Agreement. Subsequently, the parties to the Operating Agreement held the following ownership percentages in the Macondo Prospect: BP Exploration, 65%; MOEX Offshore, 10%; Anadarko E&P, 22.5%; and, Anadarko, 2.5%. According to the MMS's website, effective April 1, 2010, record title interest in the Macondo prospect was held as follows: BP Exploration, 65%; MOEX Offshore, 10%; and,

Anadarko, 25%. As joint holders of a leasehold interest in an oil or gas lease on land beneath navigable waters, Defendants Anadarko, Anadarko E&P, and MOEX are jointly, severally, and solidarily liable with their codefendants BP pursuant to the Oil Pollution Act. Anadarko, Anadarko E&P, and MOEX also had access to Halliburton/Sperry Sun INSITE real-time data that was transmitted from the *Deepwater Horizon* on April 20, 2010, and therefore knew or should have known of the red flags indicating a leak in the well in sufficient time to avert the disaster.

32. Drilling Defendants, Cameron, Anadarko, Anadarko E&P, and MOEX are jointly, severally, and solidarily liable under various principles of federal, maritime, and/or applicable State law, and under the Oil Pollution Act.

## JURISDICTION

33. The claims presented in this Complaint are admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction exists pursuant to Article III, Section 2 of the United States Constitution, which empowers the federal judiciary to hear "all Cases of admiralty and maritime jurisdiction." Jurisdiction also exists pursuant to the Admiralty Extension Act, 46 U.S.C. § 30101, which extends the admiralty and maritime jurisdiction of the United States to cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land.

34. The claims presented invoke the Court's jurisdiction under the Oil Pollution Act, 33 U.S.C. § 2717 (b) (the "OPA"). *See* 28 U.S.C. § 1331.

35. The claims presented invoke the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367.

**VENUE**

36. Venue is proper in the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. §1391(b) and the MDL Transfer Order.

**ALLEGATIONS**

37. Gulfside is a non-profit corporation whose mission is to provide retreat and meeting facilities to foster, promote, and develop Christian fellowship, evangelism, and education consistent with the doctrines and disciplines of the United Methodist Church. On August 29, 2005, Hurricane Katrina completely destroyed the Gulfside facilities in Waveland, Mississippi. In August 2007, Gulfside made the decision to invest in a beachfront senior housing community called Sea Song at Gulfside ("Project") to be located in Waveland, Mississippi that would be nationally recognized as a ministry to serve the United Methodist Church, organizations, and people in need across the United States and throughout the world.

38. From the second half of 2007 through December 31, 2012, Gulfside incurred significant expenses to develop and market the Sea Song at Gulfside project. Due to the Spill, a significant portion of the expenses were unproductive and wasted. Those expenses through December 31, 2012 totaled $988,019.05. In addition, marketing expenses to revitalize the Project total $1,567,950, as nearly as may be determined at this time.

39. RFD CDC was founded in January 2007 in North Carolina to provide consulting services for rural communities and churches across the United States and engaged in research to project planning, development, and management to construction. RFD CDC was the primary consultant to Gulfside in the development of Sea Song at Gulfside. Following the Spill, funds for the Sea Song at Gulfside project dwindled as clients rescinded their commitments. As a consequence, RFD CDC lost consulting fees and any future earnings. Even so, RFD CDC's efforts did not wane, and the corporation continued to work after the Spill without payment by providing sales and marketing

consultations, meeting with contractors and consultants, and engaging in conference calls and other correspondence to keep the project alive.

40. RFD CDC's loss of income directly correlates to the effects the Spill had on the Sea Song at Gulfside development. As a consultant, RFD CDC's fees are earned as individual buildings are designed, sold, and occupied. Calculation of revenue lost was based on agreements established prior to the Spill, in which RFD CDC would receive a development fee of 2.5% on the retail cost of four Villas and 120 Unit Independent Living Center. Total fees that were earned but uncollected due to the Spill totaled $1,684,071, as nearly as may be determined at this time.

41. Good Earth was established on February 25, 1998 in Waveland, Mississippi by its sole shareholder, Julie Rosson, and is principally engaged in providing residential and commercial development services in the Gulf Coast area. In the aftermath of Hurricane Katrina in August of 2005, the company spent several years rebuilding many of the homes that it had previously constructed. Up until the end of 2007, the company's primary source of revenue was subdivision development. In late 2007, Gulfside and RFD CDC approached Good Earth to join in a partnership to develop Sea Song at Gulfside. Good Earth, Gulfside, and RFD CDC reached an agreement and began planning the Project that was estimated to cost over 300 million dollars.

42. Due to the enormous opportunity and complexity of the Project, Good Earth was solely devoted to the development and creation of Sea Song at Gulfside. Good Earth was unable to earn its expected revenue as a result of the halt in planned construction. Agreements prior to the Spill established that Good Earth would receive 10% of overhead and construction fee based upon the cost of the four Villas, which totaled to $2,850,358.79, as nearly as may be determined at this time.

43. Sea Song Senior Living is the incorporated entity of the Sea Song at Gulfside project. The Project is a cohesive vision by Gulfside, RFD CDC, and Good Earth to become one of the top senior living communities in the Gulf Coast region with a mission to reach seniors in need and

provide them with a comfortable living environment. Millions of dollars were invested in the planning, development, and marketing of the Project.

44. Preliminary construction at Sea Song at Gulfside was about to commence when the Spill struck the shore and devastated its progress. Results from marketing efforts became negative, and commitments in the form of deposits were abysmally low. Additionally, all verbal commitments in the process of being formalized were rescinded. The effect of the Spill on the development, included but was not limited to modification of its construction schedule resulting in loss income, pre-loss expenses incurred that were ineffective due to a change in the "selling" environment of the Project, and post-lost expenses that were incurred. The agreed upon compensation for Sea Song Senior Living was 10% of the sales value. The calculation of loss for Sea Song Senior Living is based upon agreements established prior to the Spill and totals $22,088,797, as nearly as may be determined at this time.

45. Sea Song Land was established in September of 2009 and created as a result of an agreement between adjacent landowners, Gulfside and Julie Rosson of Good Earth. Sea Song would provide the land for occupancy and use by Sea Song at Gulfside community. As a result of the Spill, the property owned by Sea Song Land was never used and occupied, and subsequently, the company did not earn the expected revenue.

46. Pursuant to agreements created prior to the Spill, Sea Song Land was to be paid a pre-established value of the land at the commencement of construction of the Villas and Independent Living Center, which utilized the land. The pre-established value of the land and incurred loss of revenue was $2,043,312.10, as nearly as may be determined at this time.

47. Woodward, founded in 1924, is one of the largest construction organizations in the Gulf Coast region with a reputation for quality and reliability which helped build its large customer base. Its project experience ranges from industrial to high-rise commercial to historic renovation. Woodward was selected to construct Sea Song at Gulfside based on both its stellar reputation and

ability to handle the construction of projects in similar type and size. Woodward's expected revenue was determined to be a percentage of the overhead and construction fee based upon the construction cost of the 120 unit Independent Living Center. Construction at Sea Song at Gulfside halted following the Spill, resulting in lost revenue of $2,727,272, as nearly as may be determined at this time.

48. Seaside was founded in 1997 and functions as an interior design and installation company providing design services and flooring, countertops, and furniture for sale and installation. Seaside contracted with Good Earth to perform interior design services, install flooring and countertops, and furnish the entire Sea Song at Gulfside community which would have provided ongoing work for the company for years. As a result of the Spill, Seaside lost its contract with the the Project as well as anticipated future income resulting in lost profits of $350,000, as nearly as may be determined at this time.

49. On April 20, 2010, the largest and most devastating oil spill in United States history occurred. In a matter of months a vibrant and growing Gulf Coast residential real estate economy had the life sapped out of it. As a direct cause of the unprecedented amount of released oil, the construction schedule for the Sea Song at Gulfside project was modified and eventually stopped and began to incur expenses, and a significant portion of the expenses already incurred were unproductive and wasted. In order to revitalize the project, marketing expenses will have to exceed the original budget to compensate for the negative publicity of the Spill in the Gulf due to health concerns and the economic impact of the Spill on the Gulf region.

50. Prior to the Deepwater Water Horizon explosion and Spill, the Sea Song at Gulfside project was poised for success. The Town of Waveland, Mississippi gave final approval on the community, marketing immediately ramped up, and construction began at the site creating hope for the development of a one-of-a-kind 60-acre master-planned community. Today, Sea Song at Gulfside continues to seek funds for the revival and completion of the project.

51. Plaintiffs are innocent victims of the Defendants' reckless pursuit of profits in disregard of the safety, environmental integrity, and the economic health of an entire region.  Plaintiffs have suffered direct, physical damages as a result of oil discharged by the Deepwater Horizon incident.

52.  Plaintiffs' revenue, earning power, and value of significant land holdings, are all inextricably tied to the continued environmental vitality of the Gulf Coast.

53. Defendants' gross misconduct on the Deep Water Horizon directly and proximately caused Plaintiffs to sustain significant financial losses. Plaintiffs file this suit seeking to recover damages for the harm caused by Defendants and for punitive damages to punish Defendants for their callous indifference for the rights and safety of others.

54. Plaintiffs hereby incorporate by reference all of the allegations pertaining to the liability of the Defendants referenced in Document 6412 as if set forth herein: ***Amended Class Action Complaint for Private Economic Losses and Property Damages in Civil Action 12-970, MDL 2179.***

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs respectfully request that the court enter judgment in Plaintiffs' favor and against Defendants, as follows:

a. awarding Plaintiffs actual damages, including compensatory and consequential damages, in an amount to be determined at trial;

b. awarding Plaintiffs exemplary or punitive damages;

c. awarding Plaintiffs pre-judgment and post-judgment interest at the highest lawful rates;

d. awarding Plaintiffs such costs and disbursement as are incurred in prosecuting this action, including reasonable attorneys' and experts' fees; and

e. granting Plaintiffs such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial for any and all claims pleaded herein in which a jury trial is available by law.

**REICH & BINSTOCK, LLP**

/s/ Dennis C. Reich
Dennis Reich, Esq.
State Bar No. 16739600
4265 San Felipe, Suite 1000
Houston, Texas  77027
(713) 622-7271 [Telephone]
(713) 623-8724 [Facsimile]
E-mail:  dreich@reichandbinstock.com

*ATTORNEY FOR PLAINTIFFS*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Complaint has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 19th day of April, 2013.

/s/ Dennis C. Reich
Dennis Reich, Esq.