UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | CIVIL ACTION<br><br>MDL NUMBER: 2179<br><br>SECTION "J" |
| THIS DOCUMENT RELATES TO:<br><br>10-3896, 11-826, AND 12-968 | JUDGE BARBIER<br>MAGISTRATE SHUSHAN |

**SEACOR'S MEMORANDUM IN OPPOSITION TO
DUWAYNE MASON'S MOTION TO RECONSIDER**

Seacor Holdings Inc., Seacor Offshore LLC, and Seacor Marine LLC (collectively, "Seacor") respectfully submit this opposition to Plaintiff DuWayne Mason's Motion to Reconsider and/or to Vacate and/or to Extend the Deadline for Opting Out of the Medical Benefits Class (Rec. Doc. 9091).[1]

For the reasons set forth below, Mason's motion to reconsider the Court's denial of his prior motion to sever should be denied because Mason has supplied no reason for the Court to change its ruling on the issue of severance. Additionally, Mason has provided no basis for the Court to modify or retract its analysis of the impact of the Medical Benefits Class Action Settlement (hereinafter the "Medical Settlement") on Mason's claims. In fact, because the Court

---

[1] Unless otherwise stated, all references to "Rec. Doc." numbers in this memorandum refer to the master MDL 2179 docket.

correctly concluded that all of Mason's claims will be released under the Medical Settlement upon the settlement's effective date, Seacor intends to seek dismissal of Mason's claims with prejudice via a motion for summary judgment at the appropriate time. Until then, however, Mason's claims should remain stayed pursuant to paragraph 8 of Pretrial Order No. 25 (Rec. Doc. 983).

## I.   Factual & Procedural Background

On April 13, 2011, Mason filed two separate and distinct claims against Seacor in this MDL. First, Mason filed a claim in the M/V SEACOR VANGUARD limitation action (Civil Action No. 10-3896) alleging that he suffered personal injuries as a result of "exposure to chemicals, smoke, heat, and other noxious by-products of the rig fire" during his employment on the VANGUARD in the hours immediately following the explosion and fire on the DEEPWATER HORIZON. *See* Rec. Doc. 1941. Although Mason's limitation claim was not subject to Seacor's motion to dismiss the bulk of the B4 claims (which this Court granted and the Fifth Circuit has affirmed),[2] it nevertheless falls within the B4 pleading bundle. Second, Mason filed a separate lawsuit against Seacor that repeats his B4 allegations but also includes allegations that fall within the B3 pleading bundle, namely that "[d]uring the three to four months after the rig fire was extinguished, the M/V SEACOR VANGUARD and its crew, including plaintiff, were sent to assist in the process of skimming oil and dispersant from the waters of the Gulf of Mexico" and that "[w]hile engaged in collecting the oil and dispersant, plaintiff was exposed to crude oil, chemical components of the crude oil, chemical dispersant and

---

[2] *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, 2011 WL 4829905 (E.D. La. Oct. 12, 2011) (granting joint motion to dismiss the Bundle B4 cases), *aff'd*, 2012 WL 6203601 (5th Cir. Dec. 13, 2012).

other noxious by-products of the . . . oil spill, resulting in severe and permanent damage to his lungs and other parts of his body." *See* Civil Action No. 11-826, Rec. Doc. 1 at ¶¶ 5-6.

Following receipt and review of the Court's March 5, 2013 Order and Reasons (Rec. Doc. 8811) denying Mason's motion to sever, and in response to Mason's request that Seacor pay for contemplated lung surgery, Seacor's counsel sent Mason's counsel an e-mail enclosing a copy of the Court's Order and Reasons and inquiring why Seacor should not consider Mason's claims to have been settled as part of the Medical Settlement for the reasons expressed by the Court. *See* E-mail from Gary Hemphill to Scott Silbert (Mar. 18, 2013), attached hereto as Exhibit A. Mason's counsel responded via e-mail that he had not previously seen the Court's Order and Reasons, that he believed the Court was incorrect, and that he would be "taking steps to challenge all phases of [the] ruling." *See* E-mail from Scott Silbert to Gary Hemphill (Mar. 18, 2013), attached hereto as Exhibit B. Approximately one week later, on March 26, 2013, Seacor's counsel sent a letter to Mason's counsel informing him that Seacor would be discontinuing maintenance and cure as well as the voluntary health insurance payments it had been making to that point. *See* Letter from Gary Hemphill to Scott Silbert (Mar. 26, 2013), attached hereto as Exhibit C. On April 2, 2013, Mason filed the instant motion.

## II.   Applicable Legal Standard for Reconsideration Motions

"The Federal Rules of Civil Procedure do not expressly allow motions for reconsideration of an order." *Francois v. Jefferson Parish Sheriff's Office*, No. 12-1965, 2013 WL 1344671, at *1 (E.D. La. Apr. 3, 2013) (citing *Bass v. U.S. Dep't of Agric.*, 211 F.3d 959, 962 (5th Cir. 2000)). Nevertheless, "[t]he Fifth Circuit treats a motion for reconsideration challenging a prior judgment as either a motion 'to alter or amend' under Federal Rule of Civil Procedure 59(e) or a

3

motion for 'relief from judgment' under Federal Rule of Civil Procedure 60(b)." *Gibson v. Gusman*, No. 11-2929, 2012 WL 3482275, at *1 (E.D. La. Aug. 15, 2012) (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990)). "The difference in treatment is based on timing." *Id.* Because Mason's motion to reconsider was filed exactly twenty-eight days after the Court's March 5, 2013 ruling, it appears that Mason's motion is subject to the standards of Rule 59(e).

It is well-established that "[r]econsideration of a judgment under Rule 59(e) is an 'extraordinary remedy' used 'sparingly' by the courts." *Francois*, 2013 WL 1344671, at *1 (quoting *Templet v. Hydrochem. Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)). Because a motion for reconsideration "calls into question the correctness of a judgment," it is "permitted only in narrow situations, 'primarily to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* (quoting *Templet*, 367 F.3d at 479). Ultimately, as the Court has already recognized in the context of this MDL, "reconsideration must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, 2013 WL 160339, at *1 (E.D. La. Jan. 15, 2013) (denying Malcolm Coco's motion to reconsider the Order & Reasons granting Nalco's summary judgment motion) (internal quotation omitted).

### III. Mason is a Member of the Medical Benefits Class

Although the bulk of Mason's motion to reconsider is devoted to discussing why the Court should either deem Mason to have constructively opted out of the Medical Benefits Class or allow him to file an untimely opt-out request (both of which arguments presuppose that he is a class member), Mason also argues in the alternative that he is not a member of the Medical

4

Benefits Class in the first place.  The Court correctly concluded in its March 5, 2013 Order and Reasons, however, that Mason is a member of the Medical Benefits Class and, thus, Mason cannot show that the Court's conclusion in this respect was manifestly erroneous.

As the Court explained, the Medical Benefits Class includes, among others, "all NATURAL PERSONS who resided in the United States as of April 16, 2012, and who . . . [w]orked as CLEAN-UP WORKERS at any time between April 20, 2010 and April 16, 2012." *See* Rec. Doc. 8811 (quoting Medical Settlement § I.A.1).  Mason argues that he is not a "CLEAN-UP WORKER" because "he was not involved in the collecting of the oil and dispersant personally," but was rather "assigned to the engine room [of the M/V SEACOR VANGUARD], where his job was to keep the engines running so that those aboard the vessel could perform the tasks of collecting the oil and dispersant."  *See* Rec. Doc. 9091-1 at p. 6.

Mason's argument interprets the class definition too narrowly, as the Medical Settlement includes in its definition of "CLEAN-UP WORKERS" the "[c]aptains, crew, and other workers on vessels" that were involved in the response.  *See* Medical Settlement § II.Q (Rec. Doc. 6427-1).  While conceding as he must that he falls within this definition, Mason attempts to avoid the consequences that follow by having the Court in effect re-write the definition to add the caveat that it includes crew members *only* if and to the extent they physically handled the oil or dispersant which allegedly caused injury.  There is no basis for the Court to re-write the Medical Settlement in this way.  In any case, Mason's current attempt to distinguish himself from other B3 claimants is inconsistent with the allegations of his complaint that he "was exposed to crude oil, chemical components of the crude oil, chemical dispersant and other noxious by-products of the . . . oil spill, resulting in severe and permanent damage to his lungs and other parts of his

5

body." *See* Civil Action No. 11-826, Rec. Doc. 1 at ¶¶ 5-6. Mason also ignores the fact that his B4 allegations independently render him a class member as well.

In the course of overruling an objection to the Medical Settlement by the Attorney General of Louisiana, the Court has already implicitly recognized that crew members of vessels engaged in response operations such as Mason are class members:

> The Attorney General argues that the Class Representatives are inadequate because they waived Jones Act claims for those Clean-Up Workers that worked aboard vessels during the Response Activities. Under the Medical Settlement, however, such Class Members (all of whom would be Clean-Up Workers) recoup exactly what they could under the Jones Act—compensatory damages for personal injury—and retain something even more valuable: Back-End Litigation Option rights to sue for future injury and access to the 21-year Periodic Medical Consultation program—both benefits that would not be available through litigation.

Rec. Doc. 8217 at p. 47. Notably, other "crew member" claimants like Mason that were apparently dissatisfied with the settlement benefits have nevertheless recognized that they were putative class members and have timely and properly opted out of the Medical Benefits Class.[3]

Mason advances two additional reasons why he should not be considered a class member—neither of which is persuasive. First, Mason argues that "it is clear that it was never contemplated by anyone that he was intended to be included within the Medical Benefits Class" because his alleged injury is not included in the Medical Settlement's payment matrix. *See* Rec. Doc. 9091-1 at p. 5-6. Of course, whether or not Mason's alleged injury is addressed by the payment matrix is irrelevant to the issue of class membership and, in any event, the Court has

---

[3] For example, tugboat captain John D. Naples has timely and properly opted out and is pursuing an individual lawsuit. *See* Civil Action No. 12-2564; *see also* MDL 2179, Rec. Doc. 7989-14 (master opt-out list). Similarly, Michael Vickers was a crew member onboard a crew boat and has also timely and properly opted out to pursue an individual lawsuit. *See* Civil Action No. 13-456; *see also* MDL 2179, Rec. Doc. 7989-14 (master opt-out list). No doubt there are many more such individuals in this MDL.

6

already recognized that "those with conditions not on the Matrix had the right to opt out and litigate their claims."  Rec. Doc. 8217 at p. 82.  Second, Mason argues that the Oceanographic Research Vessels Act ("ORVA") lends support to the view that he is not a class member.  It does not.  Whether or not Mason is a member of the Medical Benefits Class is governed solely by the terms of the Medical Settlement and, as the Court has itself explained, those terms leave no doubt that Mason is a class member.

### IV.     Mason and His Counsel Received Adequate Notice of the Medical Settlement

Mason next argues that the class action notice program that this Court has already approved was "defective" as to him and that he should therefore be relieved of "any obligation to have opted out."  Rec. Doc. 9091-1 at p. 2.  This attack of the class action notice should be rejected outright.  Moreover, Mason's notice arguments are also undermined by the fact that his counsel received actual notice of the Medical Settlement and then "thoroughly investigated" the settlement agreement.

The Medical Settlement was publicly announced on March 3, 2012.[4]  It was filed with the Court on April 18, 2012.  *See* Rec. Doc. 6273-1.  Some minor amendments were subsequently made to the Medical Settlement and those amendments were executed on May 1, 2012.  The as-amended (and current) version of the Medical Settlement was filed with the Court on May 3, 2012.  *See* Rec. Doc. 6427-1.  The Court granted preliminary approval to the Medical Settlement on May 2, 2012 and, in doing so, also approved the Medical Benefits Settlement Class Notice Plan.  *See* Rec. Doc. 6419.  The original deadline for opting out of the Medical

---

[4] *See* Press Release, BP, BP Announces Settlement with PSC, Subject to Final Written Agreement, to Resolve Economic Loss and Medical Claims from Deepwater Horizon Accident and Oil Spill (Mar. 3, 2012), *available at* http://www.bp.com/genericarticle.do?categoryId=2012968&contentId=7073667.

7

Benefits Class was October 1, 2012.  *Id.*  On August 27, 2012, however, the Court issued an Order extending the opt-out deadline until November 1, 2012.  *See* Rec. Doc. 7176.  The Court granted final approval to the Medical Settlement on January 11, 2013.  *See* Rec. Doc. 8217.

<u>All</u> of these materials were filed on the Court's electronic docket and served on all counsel of record via LexisNexis File & Serve pursuant to Pretrial Order No. 12 (Rec. Doc. 600).  In support of Mason's motion, Mason's counsel has submitted an affidavit in which he states that "I do not receive electronically filed documents from the MDL."  Rec. Doc. 9091-3 at ¶ 4.  But Pretrial Order No. 12 <u>requires</u> that "[a]ll attorneys of record in this litigation . . . shall, within ten days of the entry of this Order, or within ten days of the entry of appearance for a new attorney of record, or the docketing of their transferred case, whichever occurs earliest . . . sign up for electronic service in this litigation by completing the [LexisNexis application]."  Rec. Doc. 600 at ¶ 2.  As noted above, Mason's counsel filed claims on behalf of Mason against Seacor in this MDL over two years ago, on April 13, 2011, and to this day those claims remain consolidated with the MDL.  Thus, it was long ago incumbent upon Mason's counsel to "sign up for electronic service in this litigation."  The failure to comply with the Court's Order in this respect cannot excuse Mason's failure to opt out.

In point of fact, though, Mason received ample notice of the Medical Settlement in several ways.  For example, Seacor filed its opposition to Mason's original motion to sever on September 5, 2012—almost two months before the expiration of the opt-out deadline.  *See* Rec. Doc. 7281.  In that brief, Seacor specifically discussed the Medical Settlement and the fact that it might provide a "prompt resolution" of Mason's claims, while recognizing that it was "of course, Mason's choice" whether or not to participate in the class action settlement.  *Id.* at p. 4.

8

Additionally, as acknowledged in footnote 4 of Mason's memorandum in support of his motion for reconsideration, after Seacor's counsel mentioned the Medical Settlement to Mason's counsel, Mason's counsel spoke to Messrs. Herman, Roy, and Sterbcow (Plaintiffs' Co-Liaison Counsel and a member of the Plaintiffs' Steering Committee, respectively) about the Medical Settlement.  *See* Rec. Doc. 9091-1 at p. 8 n.4.  Although Mason argues that those individuals told him that the Medical Settlement was "not designed" for someone like Mason and never "suggested that there was a need for Mason to opt out," that is not the point.  Rather, the point is that Mason's counsel clearly knew about the existence of the Medical Settlement well before the opt out deadline and then "thoroughly investigated the nature of the medical benefits class action settlement agreement."  Rec. Doc. 6909-1 at p. 3.

Finally, notwithstanding all of the above, extensive publication notice of the Medical Settlement was also provided in this case.  As the Court explained in its Order and Reasons granting final approval to the Medical Settlement:

> Notice was also provided through an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, highly-trafficked websites, and Sunday local newspapers (via newspaper supplements).  Notice was also provided in non-measured trade, business and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming.  The combined measurable paid print, television, radio, and Internet effort reached an estimated 95% of adults aged 18+ in the Gulf Coast region an average of 10.3 times each, and an estimated 83% of all adults in the United States aged 18+ an average of 4 times each.

Rec. Doc. 8217 at p. 70.  Ultimately, the Court held that "the Notice and Notice Plan as implemented satisfied the best notice practicable standard of Rule 23(c) and, in accordance with Rule 23(e)(1), provided notice in a reasonable manner to Class Members who would be bound by the Settlement."  *Id.*  This alone is dispositive of Mason's objections as to notice.

9

## V.     There is No Valid Basis to Excuse Mason's Failure to Opt Out

Mason asks the Court to excuse his failure to opt out of the settlement by either (i) deeming him to have opted out by instituting separate claims and then seeking to have those claims severed from the MDL or (ii) allowing him to submit an untimely opt-out request pursuant to the excusable neglect doctrine.  For several reasons, including the danger of unraveling the entire settlement if exceptions are made to its unambiguous opt-out requirements, the Court should decline Mason's request.

The Medical Settlement provides as follows with respect to the opt-out requirements:

> [T]o OPT OUT validly from the MEDICAL BENEFITS SETTLEMENT CLASS, a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER must submit a written request to OPT OUT stating "I wish to exclude myself from the Medical Benefits Settlement Class" (or substantially similar clear and unambiguous language) to the CLAIMS ADMINISTRATOR on or before such date as ordered by the COURT.  That written request shall also contain the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S printed name, address, phone number, and date of birth and enclose a copy of his or her driver's license or other government-issued identification.  A written request to OPT OUT may not be signed using any form of electronic signature, but must be signed by hand by the NATURAL PERSON seeking to exclude himself or herself from the MEDICAL BENEFITS SETTLEMENT CLASS or, where applicable, his or her AUTHORIZED REPRESENTATIVE.

*See* Medical Settlement § XI.E (Rec. Doc. 6427-1).  The Court's Preliminary Approval Order also set forth the opt-out requirements and made clear that all class members "who do not timely and properly Opt Out from the Medical Benefits Settlement Class shall in all respects be bound by all terms of the Medical Settlement Agreement and the Final Order And Judgment."  Rec. Doc. 6419 at p. 26-27.  The official Court-approved notice similarly informed class members

10

how to exclude themselves from the Medical Benefits Class. *See* Rec. Doc. 6267-2 at p. 123.[5] There is no dispute that Mason failed to comply with these clear and unambiguous opt-out requirements.

Mason's contention that his active pursuit of his separate claims, originally filed before the Medical Settlement had even been negotiated, excuses his non-compliance with the above opt-out requirements and/or amounts to a de facto opt-out request is contrary to well-established precedent. Collecting relevant authorities from around the country (including the Fifth Circuit and the Eastern District of Louisiana), the Middle District of Florida recently summarized the applicable principles as follows:

> [P]ertinent and soundly reasoned authority prescribes that the pendency of a separate individual action neither excuses a litigant from compliance with an applicable "opt out" procedure in a related class action nor obligates any party or court to treat the litigant as unique or different in any respect from other potential class members.
>
> The [plaintiffs] assert that they "opted out" by litigating their claims apart from and notwithstanding the class action, i.e., by filing and actively prosecuting the [individual action] both before and during the 'opt out' period. Significantly, . . . the most recent cases to confront and reject the precise argument advanced by the [plaintiffs] emphasize that the mere pendency and continued prosecution of a separate suit, which the litigant instituted *before* commencement of the "opt out" period in a related class action, neither registers nor preserves a litigant's election to "opt out" of the related class action.

*Demint v. Nationsbank Corp.*, 208 F.R.D. 639, 641 (M.D. Fla. 2002) (citations omitted); *see also Holmes v. CSX Transp.*, No 97-3863, 1999 WL 447087 (E.D. La. June 24 1999) ("Simply continuing with the present lawsuit . . . is not sufficient to provide the court with notice of plaintiff's intent to opt-out of the class.").

---

[5] The language regarding opting out appears on page 12 of the final version of the "detailed notice," which is available at http://www.deepwaterhorizonsettlements.com/Medical/SummaryNotice.aspx.

Against this overwhelming weight of authority, Mason places great reliance on a case from California that is over thirty-five years old. *See McCubbery v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62 (N.D. Cal. 1976). What Mason fails to mention is that the *McCubbery* decision has been limited based on a unique defect in the content of the class notice that was at issue in that case. *See Bowman v. UBS Fin. Servs., Inc.*, No. C-04-3525, 2007 WL 1456037, at *1-2 (N.D. Cal. May 17, 2007). No such defects exist in the Court-approved notice of the Medical Settlement here and, thus, the Court should follow the dominant majority view summarized by *Demint* and disregard the *McCubbery* decision.

The Court should also reject Mason's request to submit an untimely opt-out form pursuant to the excusable neglect doctrine. In evaluating whether a class member should be granted additional time to opt out on the basis of excusable neglect, the Fifth Circuit looks to the "so-called *Pioneer* factors," namely prejudice to the opposing party, length of the delay, reason for the delay, and whether the class member acted in good faith—though courts need not "rigorously apply each of these factors in every case." *Silvercreek Mgmt., Inc. v. Banc of America Sec., LLC*, 534 F.3d 469, 472 (5th Cir. 2008) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Notably, "[a] court may hold a party accountable for the acts and omissions of its counsel" and if "counsel's behavior so thoroughly falls below a certain threshold" then the class member's delay in seeking to opt out will not be excused. *Id.* at 472-73 (citing *Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465, 470 (5th Cir. 1998)).

In *Silvercreek*, plaintiff's counsel had actual notice of a class action settlement and "could have inquired of the court or other counsel as to the opt-out date." *Id.* at 473. In holding that the

12

district court had not abused its discretion in refusing to extend the opt-out date for the plaintiff, the Fifth Circuit held that the case presented a "prime example" of conduct by counsel that "so thoroughly falls below" the threshold required for a finding of excusable neglect. *Id.* As noted above, Mason's counsel also received actual notice of the Medical Settlement from Seacor's counsel, spoke with Plaintiffs' Co-Liaison Counsel and a member of the Plaintiffs' Steering Committee about the Medical Settlement, and then "thoroughly investigated" the settlement agreement.

The adequacy of the notice provisions and the lack of ambiguity about the opt-out procedures is demonstrated by the fact over 1,700 other claimants submitted opt-out requests to the Claims Administrator. *See* Rec. Doc. 8217 at p. 69. And according to the Claims Administrator, 1,638 of those requests "substantially meet the Class Notice and Court's requirements for requesting exclusion from the Settlement Class." Rec. Doc. 7994 at p. 10. Notably, opt-out requests were even received from several individuals that the Claims Administrator determined were not class members. *Id.* at p. 9.

Finally, as the Court stated in its Order and Reasons granting final approval to the Medical Settlement, "[t]he Medical Class is reasonably estimated to consist of as many as 200,000 Class Members." Rec. Doc. 8217 at p. 36. Mason's argument regarding the lack of prejudice fails to recognize that as soon as this Court makes an exception to the opt-out requirements for Mason, there is no telling how many other class members will come forward asserting equally "unique" reasons why they, too, should be allowed to file untimely opt-out requests. Thus, the Court should reject Mason's invitation to open the door to a potential unraveling of the Medical Settlement.

13

**VI.     All of Mason's Claims Against Seacor Will Be Released by the Medical Settlement**

As the Court correctly held in its March 5, 2013 Order and Reasons, all of Mason's claims against Seacor, both those asserted in the SEACOR VANGUARD limitation action and in his separate lawsuit, will be released by the Medical Settlement upon the settlement's effective date.

The Medical Settlement provides that "[a]ll NATURAL PERSONS in the MEDICAL BENEFITS SETTLEMENT CLASS who do not timely and properly OPT OUT from the MEDICAL BENEFITS SETTLEMENT CLASS shall in all respects be bound by all terms of this MEDICAL BENEFITS SETTLEMENT AGREEMENT . . . and shall be barred permanently and forever from commencing, instituting, maintaining, or prosecuting any action asserting any RELEASED CLAIMS against any RELEASED PARTIES in any court of law or equity, arbitration tribunal, or administrative or other forum."  Medical Settlement § XI.F (Rec. Doc. 6427-1). The Medical Settlement defines "RELEASED CLAIMS" to include, among others,

> all claims of any nature whatsoever in law or in equity, past and present, and whether known or unknown, suspected or claimed, relating to or arising under any federal, state, local, or international statute, regulation, or law (including admiralty claims, claims under maritime law, codal law, adjudication, quasi-adjudication, tort claims, contract claims, actions, causes of action, declaratory judgment actions, cross-claims, counterclaims, third-party claims, demands, and claims for damages, compensatory damages, liquidated damages, punitive damages, exemplary damages, multiple damages, and other non-compensatory damages or penalties of any kind, fines, equitable relief, injunctive relief, conditional or other payments or interest of any type, debts, liens, costs, expenses and/or attorneys fees, interest, or liabilities) that have been or could have been brought in connection with:  1) Personal injury or bodily injury (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life), and any progression and/or exacerbation of personal injury or bodily injury, that first manifested by April 16, 2012, where such injury, progression, and/or exacerbation in whole or in part arose from, was due to, resulted from, or was related to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT.

14

Medical Settlement § XVI.A (Rec. Doc. 6427-1). Furthermore, the Medical Settlement defines "RELEASED PARTIES" to include, among others, the "OTHER RELEASED PARTIES," which in turn are defined as "the persons, entities, divisions, and business units listed on Exhibit 6." *See* Medical Settlement §§ II.MMMM and II.ZZZ (Rec. Doc. 6427-1). Seacor Holdings Inc., Seacor Offshore LLC, Seacor Marine LLC, and the M/V SEACOR VANGUARD are all listed on Exhibit 6 to the Medical Settlement as "OTHER RELEASED PARTIES." *See* Exhibit 6 to the Medical Settlement (Rec. Doc. 6427-8).

All of Mason's claims against Seacor satisfy the definition of "RELEASED CLAIMS" because (i) Mason's claims are asserted under admiralty and/or maritime law, (ii) Mason's alleged injuries first manifested by April 16, 2012, and (iii) Mason alleges that his injuries arose from, were due to, resulted from, or were related to the *DEEPWATER HORIZON* INCIDENT. Mason's argument that he is entitled to "unique protections" in this case due to his status as a Jones Act seaman is insupportable. The Court has already addressed this issue in the course of overruling an objection by the Attorney General of Louisiana to the Medical Settlement:

> The Attorney General argues that the Class Representatives are inadequate because they waived Jones Act claims for those Clean-Up Workers that worked aboard vessels during the Response Activities. Under the Medical Settlement, however, such Class Members (all of whom would be Clean-Up Workers) recoup exactly what they could under the Jones Act—compensatory damages for personal injury—and retain something even more valuable: Back-End Litigation Option rights to sue for future injury and access to the 21-year Periodic Medical Consultation program—both benefits that would not be available through litigation.

Rec. Doc. 8217 at p. 47. The Court continued its explanation in a footnote as follows:

> Although some Class Members relinquish the maritime right to maintenance and cure in exchange for Back-End Litigation Option rights and the ability to participate in the Periodic Medical Consultation Program, this is simply the nature

15

of settlement. If there is a Clean-Up Worker who believed that recovery under the Jones Act would be greater than that under the Medical Settlement, he or she was free to opt out and pursue that course.

*Id.* at p. 47 n.17.

Accordingly, the Court correctly concluded in its March 5, 2013 Order and Reasons that all of Mason's claims against Seacor will be released if this Court's approval of the Medical Settlement is affirmed and, thus, the Court should deny Mason's motion for reconsideration.

**VII. Conclusion**

For all of the foregoing reasons, Mason's motion to reconsider the Court's denial of his prior motion to sever should be denied. Mason has supplied no reason for the Court to change its ruling on the issue of severance. Additionally, Mason has provided no basis for the Court to modify or retract its analysis of the impact of the Medical Settlement on Mason's claims. In fact, because the Court correctly concluded that all of Mason's claims will be released under the Medical Settlement upon the settlement's effective date, Seacor intends to seek dismissal of Mason's claims with prejudice via a motion for summary judgment at the appropriate time. Until then, however, Mason's claims should remain stayed pursuant to paragraph 8 of Pretrial Order No. 25 (Rec. Doc. 983).

Respectfully submitted,


/s/ *Gary A. Hemphill*
Gary A. Hemphill, T.A. (LA Bar #6768)
**PHELPS DUNBAR LLP**
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130

Patrick E. O'Keefe (LA Bar #10186)
Joseph P. Tynan (LA Bar #12973)
**MONTGOMERY BARNETT, L.L.P.**
3300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3300
Telephone: (504) 585-3200
Facsimile: (504) 585-7688

Michael J. Lyle (DC Bar #475078, IL Bar #6199227)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
1299 Pennsylvania Ave. NW, Suite 825
Washington, D.C. 20004
Telephone: (202) 538-8166
Facsimile: (202) 538-8100

Theodore E. Tsekerides (NY Bar #2609642)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8218
Facsimile: (212) 310-8007

ATTORNEYS FOR SEACOR HOLDINGS INC., SEACOR OFFSHORE LLC, AND SEACOR MARINE LLC

17

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Seacor's Memorandum in Opposition to DuWayne Mason's Motion to Reconsider has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 30th day of April, 2013.

                                                */s/ Gary A. Hemphill*
                                                GARY A. HEMPHILL