**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | * | **MDL NO. 2179** |
|    "Deepwater Horizon" in the | * | |
|    Gulf of Mexico, on April 20, 2010 | * | **SECTION: J** |
| | * | |
| | * | |
| **This Document Relates To:** | * | **HONORABLE CARL J. BARBIER** |
| | * | |
| **10-3896, 11-826, 12-968** | * | **MAGISTRATE JUDGE SHUSHAN** |
| | * | |
| | * | |
| | * | |

**BP'S RESPONSE IN OPPOSITION TO DUWAYNE MASON'S**
**MOTION TO RECONSIDER COURT'S ORDER DENYING MOTION**
**TO SEVER CLAIM FROM *DEEPWATER HORIZON* MDL, VACATE**
**A PORTION OF THE RULING, AND/OR EXTEND THE OPT-OUT**
**DEADLINE FROM THE MEDICAL BENEFITS CLASS ACTION SETTLEMENT**

*COUNSEL LISTED AT END OF MEMORANDUM*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

I.      LEGAL STANDARD FOR RECONSIDERATION ...........................................................2

II.     MASON IS A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER ....................3

III.    MASON'S CLAIMS ARE COVERED AND RELEASED BY THE SETTLEMENT .......................................................................................................................8

IV.    MASON DID NOT OPT OUT OF THE SETTLEMENT .................................................10

V.     THE COURT-APPROVED SETTLEMENT NOTICE WAS PROPER AND SATISFIED DUE PROCESS ...........................................................................................12

VI.    MASON CANNOT ESTABLISH EXCUSABLE NEGLECT ........................................16

CONCLUSION.................................................................................................................22

## INTRODUCTION

For the past year, DuWayne Mason has attempted to pursue his personal injury exposure[1] claims against his employer in two actions that have been consolidated in MDL 2179, while also maintaining the right to make a claim for benefits as a Class Member.[2]  *See* Mason's Answer and Claim, Rec. Doc. 1941, in Docket No. 10-3896, *In the Matter of Seacor Holdings, Inc., et al.* (hereinafter, "the Limitation Action"); *see also* Complaint, Rec. Doc. 1, in Docket No. 11-826, *Mason v. Seacor Marine, LLC*.  On March 5, 2013, the Court denied Mason's motion to sever his complaint against Seacor Marine, LLC for trial because: (1) as a Clean-Up Worker, Mason is a Class Member, and all of the claims he is asserting in both actions are Released Claims under the Settlement, and (2) Mason's claims fall squarely within the B3 and B4 pleading bundles, and severing his claims for trial would interfere with the Court's case management orders and ability to manage this complex litigation in an efficient and orderly manner.  "March 5, 2013 Order", Rec. Doc. 8811 at 3-4.

On April 2, 2013, Mason moved for reconsideration of the March 5, 2013 Order. "Motion to Reconsider", Rec. Doc. 9091.  He now argues, contrary to the facts alleged in his Complaint and his Answer and Claim, that he is not and never was a Class Member, but in any event, he should be allowed to exercise an untimely opt-out five months after the opt-out deadline.[3]  Mason's Memorandum in Support of Motion to Reconsider ("Mason's Mem."), Rec.

---

[1] Mason alleges that he sustained "severe and permanent damage to his lungs and other parts of his body" as a result of being "continuously exposed to chemicals, smoke, heat and other noxious by-products of the rig fire" (Complaint ¶ 4; *see also* Answer and Claim § IV), as well as from being "exposed to crude oil, chemical components of the crude oil, chemical dispersant and other noxious by-products of the rig fire and oil spill."  Complaint ¶ 6.

[2] Terms with initial capital letters used in this Response have the meanings ascribed to the fully capitalized rendering of such terms in the Medical Benefits Class Action Settlement Agreement, Rec. Doc. 6427-1.  In addition, "Class", "Class Members", "Medical Settlement Agreement" (or "Agreement"), and "Medical Benefits Settlement" (or "Settlement") are also used herein to refer, respectively, to the Medical Benefits Settlement Class, the Medical Benefits Settlement Class Members, the Medical Benefits Class Action Settlement Agreement, and the Medical Benefits Class Action Settlement.

[3] Pursuant to Section XI.E of the Agreement, the Claims Administrator forwarded to BP and Class Counsel an opt-out request that it received on April 1, 2013 from DuWayne Mason.  Ex. 1 (redacted).  Mr. Mason's request is

Doc. 9091-1.  He then continues his attempt to circumvent the Court's case management orders in order to proceed to trial.

The Court's Order denying Mason's motion to sever was entirely correct and there is no basis in law or fact to revisit it.  Mason is a Class Member.  In addition, he has failed to meet the standard for permitting a late opt-out from the Class.  His motion should be denied.

## I.   LEGAL STANDARD FOR RECONSIDERATION

Although the Federal Rules of Civil Procedure do not formally recognize a motion to reconsider, the Fifth Circuit treats motions to reconsider as either motions to alter or amend the judgment pursuant to Rule 59(e) or motions for relief from judgment pursuant to Rule 60, depending on when the motion is filed.  *See Gibson v. Gusman*, Civ. A. No. 11-2929, 2012 WL 3482275, at *1 (E.D. La. Aug. 15, 2012) ("The difference in treatment is based on timing."); *see also Lavespere v. Niagra Machine & Tools Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *rev'd on other grounds*.  Mason's motion for reconsideration was filed on April 2, 2013, twenty-eight days after the Court denied Mason's motion to sever, and thus it is analyzed under Rule 59(e).  *Lumpkins v. Bank of America*, Civ. A. No. 12-9, 2013 WL 1412274, at *2 (E.D. La. Apr. 8, 2013) (Rule 59(e) applies to motions for reconsideration filed no later than twenty-eight days after entry of judgment).  To the extent, however, that Mason challenges the adequacy of notice on due process grounds, that challenge is can be brought under Rule 60(b) or as a collateral attack.  *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1313-14 n.16 (11th Cir. 2012).  Mason's request to file an opt-out can be brought under Rule 6(b)(2), Rule 23(d), or Rule 60(b), but the standard for granting relief under all three provisions is excusable neglect.  *See In re Prudential*

---

clearly postmarked March 27, 2013.  *Id.* at 3.  This is almost five months after the November 1, 2012 (extended) deadline for submitting opt-out requests to the Claims Administrator.  *See* "August 27, 2012 Order," Rec. Doc. 7176 (extending the October 1, 2012 opt-out deadline established by the Court's May 2, 2012 order preliminary approving the Settlement, Rec. Doc. 6419).

*Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368-69 (S.D.N.Y.), *aff'd,* 107 F.3d 3, 1996 WL 739258 (2d Cir. Dec. 27, 1996) (unpublished table decision).

Mason's Motion to Reconsider provides no facts or argument tied to any legal standard that might support such a motion under Rule 59, Rule 60 or any other standard, but "a Rule 59(e) motion — which asks the court to set aside its previous judgment — 'serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence. Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.'" *Ewans v. Wells Fargo Bank, N.A.*, 389 F. App'x 383, 389-90 (5th Cir. 2010) (quoting *Templet v. HydroChem Inc.,* 367 F.3d 473, 479 (5th Cir. 2004)). Mason fails to identify any error of law that would support altering the Court's case-management deadlines for him. He also demonstrates that he is a Class Member and that his untimely attempt to opt out of the Class was due to his and his counsel's inexcusable neglect.

## II.   MASON IS A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER

While Mason attempts to "explain" the facts pleaded in his Complaint in order to argue that he is not a Class Member, nothing contained in his Motion to Reconsider changes the fact that Mason is a Class Member. The Class includes "All Natural Persons who resided in the United States as of April 16, 2012, and who: (a) Worked as Clean-Up Workers at any time between April 20, 2010, and April 16, 2012." Order and Judgment Granting Final Approval of the Medical Benefits Class Action Settlement and Confirming Certification of the Medical Benefits Settlement Class ("Order and Judgment"), Rec. Doc. 8218 ¶ 2. Clean-Up Workers are "all Natural Persons who performed Response Activities, including … (3) Captains, crew, and

other workers on vessels other than VoO who performed Response Activities."[4]   Agreement § II.Q.

Mason, who admits that he was a member of the crew of the M/V SEACOR VANGUARD ("Vessel") (*see* Answer and Claim ¶ 2; *see also* Complaint ¶ 1), performed Response Activities before and after the sinking of the *Deepwater Horizon* rig.  From the time the Vessel arrived on the scene of the *Deepwater Horizon* accident on April 21, 2010, Mason fought the fire by helping pump water on the burning rig until it sank on April 22, 2010.  *See* Answer and Claim § III (Mason "was assigned to assist in the process of fighting the fire at the Deepwater Horizon rig site by pumping water upon the fire"); *see also* Complaint ¶ 3 (Mason "was engaged in the process of pumping water on the burning rig while the [Vessel] was in very close physical proximity to that burning structure.").  Mason asserts that he was injured while performing a responsive action (fighting the fire on the *Deepwater Horizon*) related to the release of oil, other hydrocarbons, and other substances from the MC252 Well and/or the *Deepwater Horizon* and its appurtenances (namely, the chemicals, smoke, heat and other noxious by-products from the rig fire, which Mason claims are a cause of his injury).   *See* Answer and Claim § IV; Complaint ¶ 4.  For this reason alone Mason is a Class Member, and nothing in his Motion to Reconsider alters this fact.

Separately, Mason is a Class Member because he performed Response Activities on the Vessel for several months after the *Deepwater Horizon* rig sank.  After the rig fire was extinguished, the Vessel "and its crew, ***including plaintiff*** [Mason], were sent to assist in the process of skimming oil and dispersant from the waters of the Gulf of Mexico."  Complaint ¶ 5

---

[4] Response Activities are defined as "the clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances that were done under the auspices of the Unified Command, BP, or a federal, state, or local authority."  Agreement § II.OOOO.

(emphasis added).  Mason admits that "**_[w]hile engaged in collecting the oil and dispersant,_**

**_plaintiff_** [he] was exposed to crude oil, chemical components of the crude oil, chemical

dispersant and other noxious by-products of the rig fire and oil spill, resulting in" his alleged

injury.  Complaint ¶ 6 (emphasis added).  Thus, Mason's Complaint clearly establishes that he

claims he was injured while engaged in collecting oil released from the MC252 Well and

dispersant used during the spill response, which constitutes the performance of Response

Activities under the Agreement.

Mason's new-found arguments in his Motion to Reconsider do not change the factual

basis for the Court's conclusion that he is a Clean-Up Worker.  For example, Mason now asserts

in his Affidavit that he did not engage in clean-up activities, remediation activities, or handle

dispersants or decontaminants, but did perform work operating the Vessel.  The Court can weigh

the credibility of Mason's assertions in determining this motion.  *See, e.g., In re Prudential Sec.*

*Inc. Ltd. P'ships Litig.*, 947 F. Supp. 750, 751 (S.D.N.Y. 1996) (in denying a motion to file an

untimely opt-out under Rule 60(b), the Court evaluated the credibility of plaintiff and his counsel

and, contrary to their claims, determined that both had actual knowledge of the existence of the

class action at the time of the settlement).  Even if Mason's new assertions were given full credit,

it is undisputed that he still performed Response Activities after April 22, 2010.  Response

Activities are defined as "the clean-up, remediation efforts, and all other responsive actions

(including the use and handling of dispersants) relating to the release of oil…."  Agreement

§ II.OOOO.  Mason now states that he did not engage in "clean-up operations or remediation

efforts," and did not "handle any dispersants or decontaminates [sic]".  Affidavit of DuWayne

Mason ("Mason Affidavit"), Rec. Doc. 9091-2 § 6.  However, even if Mason did not personally

pick up oil and/or dispersant, there is no dispute that he was "engaged in collecting the oil and

dispersant" as a crewmember of the Vessel.  Complaint ¶ 6.  By "running the engines, pumps, electrical and mechanical components of the" Vessel (*id.*), Mason was performing actions ("assisting in the process of skimming oil and dispersant") responding to the release of oil and/or dispersants, which constitute the performance of Response Activities under the Agreement.

Mason argues that the Court should "narrowly construe" the Agreement to preserve his Jones Act claims and interpret the work he did on the Vessel after April 22, 2010 as not being a Response Activity because that would be in Mason's best interests, and because he is a ward of the Court.  Mason's Mem. at 6-8.  It is not necessary to reach this issue because, as set forth above, Mason is a Class Member by virtue of the work he did on the Vessel before the *Deepwater Horizon* sank.  Moreover, Mason cites no authority for the proposition that the Court can or should alter the plain terms of the Agreement to preserve his Jones Act claims.  Mason's attempt to rely upon the court's holding in *Sennett v. Shell Oil Co.,* 325 F. Supp. 1 (E.D. La. 1971), is unavailing.  Contrary to Mason's argument, the *Sennett* court never indicated that the Oceanographic Research Vessels Act (ORVA), 46 U.S.C. § 2101, should be narrowly construed to protect claims under the Jones Act.  In *Sennett*, the court acknowledged that the Jones Act was not specifically referenced in the ORVA, but did not find that dispositive of the issue of whether the ORVA should be construed to remove scientific personnel aboard an oceanographic research vessel from being considered "seamen" under certain statutes.  The court looked at the specific provisions and the overall purpose of the Jones Act to determine that it was amongst the statutes impliedly referenced by the ORVA.  Accordingly, the court granted Shell's motion for summary judgment and dismissed the plaintiff's Jones Act claims because he was scientific personnel and thus, by operation of the ORVA, not considered a "seaman" under the Jones Act.  *Id.* at 6.  Here,

the plain language of the Agreement makes clear that the Settlement covers ***all*** individuals who performed Response Activities, including Mason.

Further, this Court has already held that the Settlement allows Class Members who may have had Jones Act claims to obtain the same benefit in the Settlement (compensation for a Specified Physical Condition) that they would have been entitled to under the Jones Act had they not been a Class Member (compensatory damages for physical injury), and provides "something even more valuable: Back-End Litigation Option rights to sue for future injury and access to the 21-year Periodic Medical Consultation Program—both benefits that would not be available through litigation."  Order and Reasons Granting Final Approval of the Medical Benefits Class Action Settlement ("Order and Reasons"), Rec. Doc. 8217 at 46-47.  As this Court stated, "[i]f there is a Clean-Up Worker who believed that recovery under the Jones Act would be greater than that under the Medical Settlement, he or she was free to opt out and pursue that course."  *Id.* at n.17.

Mason's argument that he was not intended to be a Class Member because the particular physical condition he alleges is not specifically included in the Matrix is unsupported and incorrect.[5]  All Clean-Up Workers are Class Members.  While Zone A Residents are required to have developed a Specified Physical Condition in order to be a Class Member, Clean-Up Workers have no such requirement.  Order and Judgment ¶ 2.  Similarly, unlike Zone A Residents, Clean-Up Workers are eligible for the Periodic Medical Consultation Program even if they never developed a Specified Physical Condition.  Agreement § IV.B.  The Court, in approving the Settlement, noted that Class Members who had physical conditions not on the Matrix were still Class Members.  Order and Reasons at 82 ("those with conditions not on the

---

[5] Mason may very well be eligible for compensation at some level of the Matrix, though the actual determination of whether he would qualify for compensation for a Specified Physical Condition would be made by the Claims Administrator after reviewing a Proof of Claim Form and all accompanying documentation.  Agreement § V.

Matrix had the right to opt out and litigate their claims."); *see also* Pls' Reply Br. in Resp. to Objections and in Further Supp. of Final Approval of the Medical Benefits Class Settlement, Rec. Doc. 7728 at 22 ("If a class member believes that his condition should be included in the Matrix, but is not, he or she is free to opt out.").

## III.    MASON'S CLAIMS ARE COVERED AND RELEASED BY THE SETTLEMENT

This Court correctly held that Mason's claims against the Seacor entities in Mason's Complaint and the Limitation Action are released under the Settlement, and nothing in Mason's Motion to Reconsider changes that analysis.  March 5, 2013 Order at 3.  The Settlement settles, resolves, and releases ***any and all*** Released Claims against all Released Parties.[6]  *See* Agreement at 1 ("This Medical Settlement Agreement is intended by the Parties fully, finally, and forever to resolve, discharge, and settle all Released Claims against the Released Parties..."); *see also id.* at 2-3 ("[T]he Medical Benefits Class Representatives and Medical Benefits Class Counsel have concluded that it is in the best interests of the Medical Benefits Class Representatives and the Medical Benefits Settlement Class to ***compromise and settle all Released Claims*** asserted by the Medical Benefits Settlement Class ***against the Released Parties*** in consideration of the terms and benefits of this Medical Settlement Agreement.") (emphasis added).

In consideration for the benefits provided in the Settlement, the Class and Class Members provided the comprehensive Release in Section XVI of the Agreement, which this Court held to be "valid and enforceable."  Order and Judgment ¶ 17.  Under the Release, Class Members:

> shall release and forever discharge the Released Parties from ***any liability for all claims of any nature whatsoever*** in law or in equity, past and present, and whether known or unknown, suspected or claimed, relating to or arising under any federal, state, local, or international statute, regulation, or law (***including admiralty claims, claims under maritime law***, codal law, adjudication, quasi-

---

[6] All of the Seacor entities in Mason's Complaint and in the Limitation Action (Seacor Holdings, Inc., Seacor Offshore LLC, Seacor Marine, LLC), as well as the M/V Seacor Vanguard, are Released Parties.  Agreement § II.MMMM; *see also* Agreement Ex. 6 at 3-4.

adjudication, tort claims, contract claims, actions, causes of action, declaratory judgment actions, cross-claims, counterclaims, third-party claims, demands, and claims for damages, compensatory damages, liquidated damages, punitive damages, exemplary damages, multiple damages, and other noncompensatory damages or penalties of any kind, fines, equitable relief, injunctive relief, conditional or other payments or interest of any type, debts, liens, costs, expenses and/or attorneys fees, interest, or liabilities) ***that have been*** or could have been brought in connection with:

> (1) Personal injury or bodily injury (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life), and any progression and/or exacerbation of personal injury or bodily injury, that first manifested by April 16, 2012, where such injury, progression, and/or exacerbation in whole or in part arose from, was due to, resulted from, or was related to, directly or indirectly, the *Deepwater Horizon* Incident, or wrongful death and/or survival actions as a result of such injury, progression, and/or exacerbation.

Agreement § XVI.A (emphasis added); *see also* Agreement § XVI.G ("any heat-related injury shall be a Released Claim").  As the Court has previously explained, the Settlement releases any Jones Act claims and the maritime right to seek maintenance and cure to the extent that individual Clean-Up Workers had such claims or rights.  *See* Order and Reasons at 46-47 n.17 ("Although some Class Members relinquish the maritime right to maintenance and cure in exchange for Back-End Litigation Option rights and the ability to participate in the Periodic Medical Consultation Program, this is simply the nature of settlement.").  All of Mason's claims are expressly and unequivocally covered by the Agreement, and the Settlement makes clear that any and all remedies for such Released Claims are limited to the Settlement.[7]

---

[7] *See* Agreement § XVI.I ("From and after the Effective Date, … all Medical Benefits Settlement Class Members … ***shall not, at any time, institute, cause to be instituted, assist in instituting, or permit to be instituted*** on his, her, or its behalf, … ***any proceeding (1) alleging or asserting any of his or her respective Released Claims against the Released Parties*** in any federal court, any state court, or arbitration, regulatory agency, or any other tribunal or forum, or (2) challenging the validity of the Release.") (emphasis added); *see also, id.* § XX.C ("From and after the Effective Date, … this Medical Settlement Agreement shall be the ***exclusive remedy for any and all Released Claims by or on behalf of any and all Medical Benefits Settlement Class Members against any and all Released Parties***, and, … ***no Medical Benefits Settlement Class Member shall recover, directly or indirectly, any sums from any Released Parties for Released Claims*** other than those received for the Released Claims under the terms of this Medical Settlement Agreement.") (emphasis added); *id.* at § XX.D ("From and after the Effective Date … each and every Medical Benefits Settlement Class Member … will be ***forever barred and enjoined from … prosecuting,***

9

## IV.    MASON DID NOT OPT OUT OF THE SETTLEMENT

Both the Preliminary Approval Order and the Class Notice provided clear and unambiguous instructions regarding the straightforward procedure to be used by Class Members wishing to opt out of the Class:

> The Court directs that any Medical Benefits Settlement Class Member wishing to exclude himself or herself from the Medical Benefits Settlement Class must submit a written request stating "I wish to exclude myself from the Medical Benefits Settlement Class" (or substantially similar clear and unambiguous language), and also containing that Medical Benefits Settlement Class Member's printed name, address, phone number, and date of birth, and enclosing a copy of his or her driver's license or other government-issued identification.  The written request to Opt Out must be signed by the Medical Benefits Settlement Class Member seeking to exclude himself or herself ….  The written request to Opt Out must be sent to the Claims Administrator, properly addressed and postmarked no later than **October 1, 2012**.[8]

"Preliminary Approval Order", Rec. Doc. 6419 at 26; *see also* "Class Notice", Rec. Doc. 7113-1 at 55.  It is undisputed that Mason did not follow these Court-ordered procedures.  Nor did he file any objections to these procedures.  Accordingly, he has waived his right to object and would only be entitled to relief under Rule 60 if he could show (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or misconduct by an opposing party; (4) that the judgment is void; (5) that the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.  Mason cannot meet Rule 60's high standard.

Indeed, Mason's only argument is that despite his failure to opt out in accordance with the Court's order, he effectively opted out through statements in his July 16, 2012 Memorandum

---

*maintaining, or consenting to any judicial, arbitral, or regulatory action against the Released Parties with respect to any and all Released Claims*.") (emphasis added).
[8] The Court later extended the opt-out deadline to November 1, 2012.  *See* August 27, 2012 Order.

in Support of his Motion to Sever (Rec. Doc. 6909-1) and through the filing of his pre-settlement

suit against Seacor.  Mason's Mem. at 3-5.[9]  This argument is entirely without merit.  Mason

relies primarily on a 1976 district court case from California, *McCubbrey v. Boise Cascade*

*Home & Land Corp.*, 71 F.R.D. 62 (N.D. Cal. 1976), which represents a minority position

rejected by the Fifth Circuit.[10]  As the Fifth Circuit has explained, "[t]he cases are persuasive to

the contrary.  A judgment or consent decree entered in a class action can bind the absent class

member even though the member had filed a claim or instituted a personal suit before the

decision in the class action."  *Penson v. Terminal Transport Co.*, 634 F.2d 989, 996 (5th Cir.

1981); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. at 370 ("It is well-

established that 'pendency of an individual action does not excuse a class member from filing a

valid request for exclusion.'") (citation omitted); *In re Prudential-Bache Energy Income P'ships*

*Sec. Litig.*, Civ. A. No. MDL-0888, 1995 WL 20613, at *2 (E.D. La. Jan. 6, 1995); *Holmes v.*

*CSX Transp.*, No. Civ. A. 97-3863, 1999 WL 447087, at *4 (E.D. La. June 24, 1999).[11]

Mason also quotes the Wright & Miller treatise to the effect that "any written evidence of

[the] desire [to opt out] should suffice."  Mason's Mem. at 4 (quoting Wright, Miller, and Kane,

---

[9] Although Mason characterizes his failure to request exclusion from the Class through the procedures required by the Court's order as merely a "technical defect[ ] in the Notice of Exclusion," the Court found in connection with its approval of the Economic and Property Damages Settlement that the Court-specified opt-out procedure, which required signatures from Class Members, was designed "to help ensure that Class Members would not be excluded from the Settlement Class without their express, written consent."  Rec. Doc. 8138 at 67.  Mason has not pointed to a single pleading his counsel filed with this Court that contains Mason's signature and includes his "express, written consent" to exclude himself from the Class.

[10] Mason concedes that "cases exist which hold to the contrary of the holding in *McCubbery*," (Mason's Mem. at 5), but this greatly understates the weight of the authority rejecting that case.

[11] *McCubbrey* is also inapposite because the court found the notice in that case "failed to perform its function of providing an adequate basis for informed decision-making" and that "[n]othing in the detailed 29-page Notice would alert even a careful reader that he must satisfy the exclusion requirements or suffer the consequence of permitting his ongoing litigation to evaporate."  71 F.R.D. at 68.  In contrast, the notice here clearly explained that Class Members who did not opt out would not be able to continue litigation against BP or other Released Parties.  *See* Class Notice at 58 ("And, unless you exclude yourself, you will not be able to start a lawsuit, ***continue with a lawsuit***, or be part of any other lawsuit against BP or the Released Parties about the claims being released by the Medical Benefits Settlement") (emphasis added); *see also In re The Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 240 (D.N.J. 1997) (finding *McCubbrey* inapposite and rejecting argument that class notice was defective where the notice "clearly stated that class members would be barred from continuing their independent actions if they did not opt out.").

7AA Fed. Prac. & Proc. Civ. § 1787 (3d ed.).)  However, the treatise also explains that although it "would be an undue burden on class members to require them to retain counsel and prepare a formal legal document, . . . allowing too much informality might pose problems of authenticity and ambiguity."  7AA Fed. Prac. & Proc. Civ. § 1787.  Here, where a simple, straightforward, and unambiguous procedure for exclusion was ordered by the Court, the Wright & Miller concerns about placing undue burden on class members to exercise their opt out rights simply do not apply.

Moreover, Mason's characterization of his prior actions as an attempt to opt out cannot excuse his failure to follow the clear opt-out procedures established by the Court.  The statement in Mason's July motion to sever that "[u]ndersigned counsel has ***thoroughly investigated the nature of the medical benefits class action settlement agreement***" (July 16, 2012 Mem. in Support of Mot. to Sever at 3) (emphasis added) shows that counsel concedes he likewise had a duty to investigate whether—as is typical with class action settlements—his client would be unable to pursue his individual action if he failed to opt out.[12]  Moreover, the averment of Mason's counsel that "until March 5, 2013, [he] never discussed the potential need to 'opt-out' of the Medical Benefits Class Action with any attorney or anyone else" contradicts his characterization of the statements in the July Motion to Sever as "clearly and unequivocally" expressing Mason's desire to opt out.  Mason's Mem. at 4.

## V.    THE COURT-APPROVED SETTLEMENT NOTICE WAS PROPER AND SATISFIED DUE PROCESS

The Court received no objections to the scope or content of the Notice Program, and found that "the Notice and Notice Plan as implemented satisfied the best notice practicable standard of Rule 23(c) and, in accordance with Rule 23(e)(1), provided notice in a reasonable

---

[12] *See Supermarkets Gen. Corp. v. Grinnell Corp.*, 490 F.2d 1183, 1186 (2d Cir. 1974) (counsel with notice or knowledge of settlement have a duty to stay apprised of developments).

manner to Class Members who could be identified through reasonable effort." Order and Reasons at 70-71. The Court likewise found that "the Notice and Notice Plan satisfied the requirements of Due Process." *Id.* at 71. Again, Mason did not file any timely objection to the Notice, and accordingly has waived any such objections. To obtain relief on that front, he must meet Rule 60's high standard, and has made no attempt to do so.

Given Mason's actual notice of the Settlement as shown by his repeated references to it in his July 2012 Motion to Sever and Memorandum in Support thereof, there can be no violation of due process. "The purpose of Rule 23(c)(2) is to afford members of the class due process, which, in the context of the rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)). Of course, "due process [ ] does not amount to a guarantee of notice to a class member." *Peters*, 966 F.2d at 1486. But here, where Mason's own July 2012 motion papers demonstrate that he and his counsel had ***actual knowledge of the Medical Benefits Settlement Agreement***, there can be no question that the requirements of due process have been met.[13] *See Diaz v. Romer*, 9 F.3d 116, No. 92-1249, 1993 WL 425143, at *1 (10th Cir. Oct. 21, 1993) (unpublished table decision) ("Because [the class member] had actual notice of the settlement agreement [concerning prison conditions], he was not denied due process" even though the settlement agreement was not posted at the prison facility where he was an inmate); *Supermarkets Gen. Corp.*, 490 F.2d at 1186 (rejecting argument that notice was

---

[13] In its September 5, 2012 Memorandum in Opposition to Mason's Motion to Sever, Seacor argued that Mason's "claims appear to fall squarely within the proposed class settlement of the B3 personal injury claims"; that "there is no reason why plaintiff cannot explore a prompt and full consideration of his claims in that context"; and that "the prompt resolution of claims such as this is one of the major factors mitigating in favor of the proposed [medical benefits class] settlement." Rec. Doc. 7281 at 3-4. Despite the fact that Mason himself initially put the Settlement at issue in his Motion to Sever, he did not respond to Seacor's argument that his claims were covered by the Settlement. Rec. Doc. 7365.

defective when defendant's letter to liaison counsel concerning settlement, and liaison counsel's subsequent letter to individual plaintiffs, "put counsel for all individual plaintiffs on notice that a settlement was in the making and imposed on them a duty of diligence to keep abreast of developments"). The law on this point is overwhelming.[14]

Even leaving aside Mason's actual notice of the settlement, any challenge to the Court-approved notice program here must fail. "The proper inquiry is not whether [an individual class member] received the notices but instead whether the method of providing the notices was 'reasonably calculated, under all the circumstances,' to inform him of the pendency of the class action and his right to be excluded from it." *Peters*, 966 F.2d at 1486 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)); *Presidential Life Ins. Co. v. Milken*, 946 F. Supp. 267, 277 (S.D.N.Y. 1996) ("A class action settlement is binding on an absent class member if the notice program is procedurally adequate, even if the absent class member does not receive individual notice."); *In re Auction Houses Antitrust Litig.*, No. 00 Civ. 0648, 2004 WL 3670993, at *3 (S.D.N.Y. Nov. 17, 2004) ("The Objectors argue, however, that even if the notice provision is generally adequate, it is inadequate as to them. However, notice need not be crafted to take into account all possible individual circumstances. Notice passes muster for due process

---

[14] *See, e.g., Eirhart v. Libbey-Owens-Ford Co.*, 1990 WL 223029, at *2 (7th Cir. Dec. 21, 1990) (unpublished table decision) (holding that notice procedures were reasonable and that "[i]n conjunction with [class member's] admission that she had actual notice . . . [prior to deadline to submit claim], the district court did not err in excluding [the class member] from the settlement class" because she did not timely submit a claim form); *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 1996 WL 739258 at *8 (affirming denial of plaintiffs' motion to extend opt out deadline on basis that plaintiffs were not included on class notice mailing list; "Despite the lack of mailed notice, the [plaintiffs'] attorney knew of the class action and settlement, and could have followed up on it."); *In re King Pharms., Inc. Sec. Litig.*, No. 2:03-CV-77, 2007 WL 1100669, at *2 (E.D. Tenn. Apr. 12, 2007) (denying plaintiffs' motion to extend opt out deadline and rejecting argument that plaintiffs were denied due process because they received notice of class settlement after the opt out deadline; "While it appears that [plaintiffs] did not receive the Notice until [after the opt-out deadline], there can be no dispute that they have had notice of the pendency of the action since at least May 2, 2003, when they filed their complaint that was consolidated within this case. Consequently, [plaintiffs] were or should have been aware of the existence of the settlement of the class action and how it could impact their rights."); *Langford v. Devitt*, 127 F.R.D. 41, 44 (S.D.N.Y. 1989) (Rule 23 notice "requirement does not mandate that each and every class member receive notice in the specific form ordered by the court. Rather, the precise content and method of notice to class members is not significant if the goal—notice of the pendency of the lawsuit—is met.").

purposes if it is reasonably designed to reach the members of the class whether or not individual members receive notice."); *In re VMS Sec. Litig.*, No. 89 C 9448, 1992 WL 151692, at *2 (N.D. Ill. June 22, 1992) ("Even assuming that [class members] did not receive the mailed notice, the [class members] nonetheless are bound by the settlement agreement because notice to the class as a whole was adequate.").[15]

Mason's specific challenges to the substance of the Notice are equally without merit. Here, again, Mason failed to file a timely objection to the Settlement and must therefore show a due process violation, which he cannot do.  Mason argues that "the notice fails to advise the class member that failure to opt out of the class would allow the member's ongoing suit to 'evaporate,'" and "nowhere…clearly and concisely state[s] in plain, easily understood language the binding effect of a class judgment" on Mason's claims against Seacor.  Mason's Mem. at 4, 11.  This is simply incorrect.

The Court-approved Class Notice clearly and repeatedly explained that, "[i]f you are a Medical Class Member, and you do not exclude yourself, you give up the right to sue … ***any of the Released Parties for the claims that the Medical Benefits Settlement resolves***," and "***unless you exclude yourself, you will not be able to*** start a lawsuit, ***continue with a lawsuit,*** or be part of any other lawsuit ***against … the Released Parties about the claims being released by the Medical Benefits Settlement***."  Class Notice at 54, 58 (emphasis added).[16]  The Class Notice

---

[15] Putting aside his actual knowledge of the Settlement, if, as Mason claims, he did not receive a copy of the mailed notice, any such omission would have been inadvertent.  BP points out, however, that one of the primary sources of information for the medical notice program were the lists of those claimants in the B3 pleading bundle who filed, as required by Pretrial Order No. 25 (Rec. Doc. 983), a Short Form Joinder (SFJ) or Plaintiff Profile Form (PPF) and alleged a medical injury therein.  A review of those lists indicates that Mason has never filed a SFJ or PPF despite the Court's order to do so.

[16] *See also id.* at 54 ("If you do not want to participate in the Medical Benefits Settlement and ***you want to keep all of your rights to sue … any of the Released Parties about the claims being resolved in the Medical Benefits Settlement, then you must take steps to get out of the Medical Class.  This is called asking to be excluded from the class***, or sometimes called "Opting Out" of the class.  …") (emphasis added); *id.* at 53-54 (explaining that the "If the Medical Benefits Settlement becomes final, all Medical Class Members … will be releasing BP and all of the

likewise clearly explained that "**[t]he Medical Benefits Settlement Agreement provides more detail regarding the Release and the Released Parties and describes the Released Claims with specific descriptions in necessary, accurate legal terminology, so read it carefully**,"[17] and also informed class members that they could "talk to the law firms representing the Medical Class … for free," and could "talk to your own lawyer if you have any questions about the Released Claims or what they mean." Class Notice at 54.

## VI.   MASON CANNOT ESTABLISH EXCUSABLE NEGLECT

The Fifth Circuit applies the "*Pioneer*" factors to determine whether an individual has established "excusable neglect" and should be granted additional time to opt-out of a class action. *See Silvercreek Mgmt., Inc. v. Banc of America Sec., L.L.C.*, 534 F.3d 469, 472 (5th Cir. 2008) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395 (1993)). The Court is to consider prejudice to the opposing party, length of the delay, the reason for the delay in determining whether the claimant's neglect was excusable, and whether the delay was made in good faith. *See Silvercreek*, 534 F.3d at 472. Mason is accountable for his counsel's acts and omissions in determining whether there has been excusable neglect. *See id.* (citing *Pioneer*, 507 U.S. at 396-97.) The burden of establishing excusable neglect is "quite onerous. Inadvertence, ignorance of the rules or mistakes in construing the rules do not usually rise to the level of excusable neglect." *In re Gehl*, 324 B.R. 756, 759 (Bankr. N.D. Iowa 2005); *see also Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366–67 (2d Cir. 2003) ("We have noted that the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule and held

---

"Released Parties" (identified in Section II.MMMM of the Medical Benefits Settlement Agreement) from all of the "Released Claims" described and identified in Section XVI of the Medical Benefits Settlement Agreement. ***This Release means Medical Class Members will no longer be able to sue BP and the Released Parties regarding the medical claims specified in the Medical Benefits Settlement Agreement*** (with the exception of the Back-End Litigation Option process…)" (emphasis added).

[17] Of course, the Settlement itself likewise provides that Mason's claims against Seacor would be released if he failed to opt out. *See supra* § III.

16

that where the rule is entirely clear, we . . . expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." (internal citation and quotation marks omitted)).  Mason does not come close to meeting his burden.

The *Pioneer* factor to be given the greatest weight is the excuse given for the late filing. *See Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000); *see also Demint v. NationsBank Corp.*, 208 F.R.D. 639, 642 (M.D. Fla. 2002) (in cases analyzing excusable neglect, "the starting point and common denominator (indeed, the *sine qua non*) in every case employing an analysis of excusable neglect is an explanation of the reason for the delay.").  None of the reasons asserted demonstrates excusable neglect.

First, Mason asserts that the reason for the delay is that he did not receive a mailed copy of the written class notice.  But it is undisputed that Mason and his counsel had actual knowledge of the Settlement by July 16, 2012, making non-receipt of mailed notice legally irrelevant.  *See, e.g.*, *Gonzalez v. City of New York*, 396 F.Supp. 2d 411, 417-18 (S.D.N.Y. 2005); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. at 370 n.7.  Mason should also be deemed to have constructive notice via publication, given the extensive reach of the Notice Program and the fact that Mason nowhere contends that he did not see or hear the publication notice.  *See* Order and Reasons at 70-71 ("The combined measurable paid print, television, radio, and Internet effort reached an estimated 95% of adults aged 18+ in the Gulf Coast region an average of 10.3 times each, and an estimated 83% of all adults in the United States aged 18+ an average of 4 times each.  All notice documents were designed to be clear, substantive, and informative.") (internal citations omitted); *see also In re Diet Drugs (Phentermine / Fenfluramine / Dexfenfluramine) Prods. Liab. Litig.* ("*In re Diet Drugs*"), MDL No. 1203, 2007 WL 4082994, at *4 n.12 (E.D. Pa. Nov. 15, 2007) (holding that the plaintiff seeking to file an untimely opt-out and her counsel had

constructive notice under a similarly extensive notice program). Even if he did not receive mailed class notice, this does not remove the class member from a settlement class or establish excusable neglect. *See, e.g.*, *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 947 F. Supp. at 755-56 (request to file an untimely opt-out is inadequate as a matter of law where court found the notice program met Rule 23(c)(2) and due process requirements even though claimant and counsel allege never having received written class notice); *see also Klein v. O'Neal, Inc.*, Civ. A. No. 7:03-CV-102-D, 2009 WL 1174638, at *2-*4 (N.D. Tex. Apr. 29, 2009) (constructive notice of class settlement satisfied due process and thus class member was not entitled to opt-out after the court-ordered deadline even though he first received actual written class notice after that deadline); *Sanders v. LVNV Funding, LLC*, No. 1:06-cv-0570-JDT-WTL, 2007 WL 854007, at *4 (S.D. Ind. Feb. 26, 2007) (failure to receive actual written notice does not establish basis to opt-out after court-ordered deadline where class notice satisfied Rule 23 and due process); *In re Diet Drugs*, 2007 WL 4082994, at *4 (where class notice met Rule 23 requirements, fact that a class member did not actually receive written notice did not remove her from settlement class).

Second, Mason asserts that a reason for the delay was that neither opposing counsel nor the Plaintiffs' Steering Committee informed him that he needed to opt-out to continue to pursue his Jones Act claims. It is Mason's responsibility to act with due diligence to discover the opt-out requirements and deadlines, and he could have inquired as to the opt-out date or other requirements for opting-out, but his counsel admits that "until March 5, 2013, [counsel] **_never_** discussed the potential need to 'opt-out' of the Medical Benefits Class Action with any attorney or anyone else." Affidavit of Scott Silbert, Esq., Rec. Doc. 9091-3 ¶ 7; *see, e.g.*, *In re Diet Drugs*, 2007 WL 4082994, at *4-*5; *see also Silvercreek*, 534 F.3d at 473 (counsel's performance fell below threshold where counsel did not take any steps to determine or inquire

about the opt-out date).  Mason relies exclusively on *McCubbrey*, but that reliance is misguided, and as noted *supra* at 11-12, is contrary to Fifth Circuit precedent.  In *McCubbrey*, the court found excusable neglect and permitted plaintiffs to file untimely opt-outs where the class notice did not satisfy constitutional due process as to certain plaintiffs who had initiated suit before the class settlement, such plaintiffs did not receive any informal notice of the class settlement, and defendants' counsel was silent as to the class settlement when discussing routine litigation details and future scheduling in their individual suits.  71 F.R.D. at 67-69.  Here, in contrast, the Court has found that constitutional due process was satisfied, Order and Judgment at 3; Mason and his counsel had actual knowledge of the Settlement; and Mason and his counsel also had informal notice of the Settlement through counsel's conversation with members of the Plaintiffs' Steering Committee and as referenced by Seacor's position in its September 5, 2012 Memorandum in Opposition to Mason's Motion to Sever that Mason's claims were covered by the Settlement, Rec. Doc. 7281, at 3-4.

Third, Mason asserts that he did not know that he needed to opt-out until the Court's March 5, 2013 Order, and at that point it was too late.  Mason cites no authority for the proposition that it is this Court's responsibility to notify every individual of his or her status as a member of a class action settlement in order for that individual to decide whether to opt-out or not.  It was Mason's and his individual counsel's responsibility, not anyone else's, to determine whether or not Mason is a member of the class and to decide whether to opt-out.  Given that his counsel claims to have "thoroughly investigated" the Agreement by July 16, 2012, Mason cannot be heard now to say he did not understand that he needed to opt out or what he needed to do in order to opt out.  He was in the position to exercise due diligence to discover the significance and

potential effects of the Settlement, the legal options of participating in it, and the simple process for opting out.  *See Langford*, 127 F.R.D. at 44-45.

Fourth, Mason asserts that he was unaware of the specific requirements and effects of opting out of the Agreement.  Counsel's misinterpretation or ignorance of the rules "weighs heavily against a finding of excusable neglect."  *Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d. 465, 470 (5th Cir. 1998) (citations omitted).  Even if his counsel's "thorough investigation" of the Agreement did not include apprising him of the opt-out requirements, there is no question that he would have discovered these with a modicum of due diligence.  For example, in addition to his actual knowledge of the Agreement, Mason would have received and had easy access to all of the Settlement-related orders and filings if his counsel had complied with Pretrial Order No. 12 (Rec. Doc. 600) and registered for electronic service.  *See* Class Notice at 55, 58; *see also* Agreement XI.F. ("All Natural Persons in the Medical Benefits Settlement Class who do not timely and properly Opt Out from the Medical Benefits Settlement Class shall in all respects be bound by all terms of this Medical Settlement Agreement and the Final Order And Judgment upon the Effective Date"); Preliminary Approval Order ¶ 29; August 27, 2012 Order.

Fifth, Mason suggests that it was reasonable for him to believe that the pendency of his lawsuit and his July 16, 2012 filing constituted notice of his intention to opt-out of the Settlement.  As set forth *supra*, the case law is clear that the pendency of an individual action does not excuse a class member from complying with the court-ordered requirements for exercising a valid opt-out, and counsel's ignorance of the rules weighs heavily against finding excusable neglect.  *See, e.g.*, *Halicki*, 151 F.3d. at 470.  The Court's Preliminary Approval Order (as well as the Agreement itself) clearly set forth the steps required to opt-out of the Settlement, which over 1,700 individuals did, including some individuals who are excluded from the Class or

who believed that they are not Class Members but nonetheless submitted an opt-out. *See* Preliminary Approval Order ¶ 29; Agreement § XI.E; Declaration of Matthew Garretson, Rec. Doc. 7989-1 ¶¶ 2, 5, 8. Counsel's misunderstanding of the law regarding the need to comply with the Court's order validly to exercise an opt-out is not an excuse. *See, e.g.*, *Halicki*, 151 F.3d at 470; *see also In re Pettle*, 410 F.3d 189, 192 (5th Cir. 2005) (it is abuse of discretion to grant relief for excusable neglect "when the reason asserted as justifying relief is one attributable solely to counsel's carelessness with or misapprehension of the law or the applicable rules of court." (citing *Edward H. Bohlin Co. v. Banning*, 6 F.3d 350, 356-57 (5th Cir.1993))); *see also Midwest Employers Cas. Co. v. Williams*, 161 F.3d 877, 879-80 (5th Cir. 1998) (district court abused discretion by enlarging time to file appeal based on counsel's misunderstanding of the federal rules).

Applying the second *Pioneer* factor, BP would suffer prejudice if Mason were allowed to exercise an untimely opt-out. BP would be denied a central benefit of the Settlement for which it had expressly bargained — the release of all Released Claims as to all Released Parties. *See, e.g.*, *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. at 370; *see also In re Diet Drugs*, 2007 WL 4082994, at *4. It also would prejudice BP by disrupting the Court's carefully calibrated scheduling and requiring BP and other parties to litigate the same issues multiple times — once in the MDL and again in Mason's individual case.

Applying the third *Pioneer* factor, the length of delay and potential impact on the judicial proceedings weighs against a finding of excusable neglect. Allowing Mason to opt-out would undermine the finality of the Court's orders and the Court's administration of any deadlines regarding the Settlement, and discourage settlement generally. *See, e.g.*, *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. at 371-72; *see also In re Diet Drugs*, 2007 WL 4082994, at

*4.  It would also "open the floodgates" for similar motions by other plaintiffs who had pending lawsuits but failed to opt-out, undermining the very basis for the settlement.  *Id.*  In addition, the length of time Mason waited to file his request to opt out (more than five months after the extended November 1, 2012 opt-out deadline) further weighs against permitting him to opt-out. Inexcusable neglect has been found in situations where the delay is much shorter.  *See, e.g.*, *Silvercreek*, 534 F.3d at 471-73 (denying request for an extension of the opt-out deadline where request for an extension of the opt-out deadline and late opt-out were submitted thirty days after the opt-out deadline); *see also In re Adelphia Commc'ns. Corp. Sec. & Derivs. Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008) (no excusable neglect where the party, despite the fact it was aware of the settlement only one day after the opt out deadline, still waited a month to file its motion for an extension of time).

Applying the fourth *Pioneer* factor, Mason's actions clearly do not demonstrate good faith.  By July 2012, Mason's counsel had "thoroughly investigated" the Agreement, and despite having the benefit of that investigation, Mason chose not to opt out of the Settlement.  Mason has not presented a compelling reason for his failure to opt out.  Even if Mason's failure to opt out was the result of merely a lack of due diligence, this does not establish good faith.  *See In re Diet Drugs*, 2007 WL 4082994, at *5; *see also Demint*, 208 F.R.D. at 642 n.5 (absence of an explanation for the failure to timely opt out negates any persuasive value of the plaintiff's assertion that he acted in good faith).

## CONCLUSION

The Court should deny all of the relief Mason requests in his Motion to Reconsider. Mason has not established any error in the Court's reasoning that his claims are part of the B3 pleading bundle and thus are appropriately part of the stay in MDL 2179, the undisputed

evidence establishes that Mason is a Class Member, and Mason's conduct falls well below the threshold to establish excusable neglect.

April 30, 2013

Respectfully submitted,


*/s/ Richard C. Godfrey, P.C.*

James J. Neath
Mark Holstein
BP AMERICA INC.
501 Westlake Park Boulevard
Houston, TX  77079
Telephone:  (281) 366-2000
Telefax:  (312) 862-2200

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Andrew B. Bloomer, P.C.
Elizabeth A. Larsen
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL  60654


Ellen K. Reisman
ARNOLD & PORTER LLP
777 South Figueroa Street
Los Angeles, CA 90017-5844

*/s/ Don K. Haycraft*

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone:  (504) 581-7979
Telefax:  (504) 556-4108

Ethan P. Greene
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004-1206

*Of Counsel*

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 662-5985
Telefax:  (202) 662-6291


**ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.**
**AND BP AMERICA PRODUCTION COMPANY**


24

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, and served via first-class mail, postage prepaid and e-mail upon counsel at the following address:

> Scott E. Silbert, Esq.
> Silbert, Garon, Pitre & Friedman
> 909 Poydras Street, Suite 2130
> New Orleans, LA 70112
> Telephone: (504) 581-6200
> Facsimile: (504) 584-6270
> E-mail:  scott@sgpflaw.com

on this 30th day of April, 2013.

/s/ Don K. Haycraft
Don K. Haycraft