EXHIBIT "A"

## OMNIBUS RETAINER AND CONSULTANT AGREEMENT
## FOR DESTIN POINTE

**THIS RETAINER and CONSULTANT AGREEMENT FOR DEVELOPMENT AND LAND USE REPRESENTATION ("Agreement")** is made and entered into as of the 5th day of October, 2007 (the **"Effective Date"**), by and between RODERIC M. WRIGHT, Esquire, individually, and as real estate broker and development consultant and R.M. WRIGHT & ASSOCIATES (WRIGHT and R.M.WRIGHT & ASSOCIATES referred to hereinafter as "WRIGHT") and AMT, LLC, a Florida limited liability company ("AMT"), ZTF Family, LP, a Missouri limited liability partnership ("ZTF"), and STEPHEN BUNYARD ("BUNYARD") (AMT, LLC, ZTF Family LP and BUNYARD referred hereinafter collectively as "CLIENTS") at such addresses as the parties may hereafter determine from time to time. For convenience all the foregoing persons and entities may be referred hereinafter collectively as the **"Parties"**.

## R E C I T A L S:

**WHEREAS:** Certain business transactions regarding CLIENTS' real properties located in the community known as Destin Pointe, Destin, Florida, have experienced financial and land use difficulties. CLIENTS contacted WRIGHT to secure his services because of his professional reputation and history of success for handling difficult land use problems in and around the Destin, Florida area. WRIGHT has pledged his efforts to assist CLIENTS in obtaining capital and land use approvals for such activities as defined, later in this Agreement. Further, WRIGHT's responsibilities under this Agreement are outlined in Section 2 (SCOPE OF SERVICES) below.

**WHEREAS:** CLIENTS have the authority to enter into this Agreement with WRIGHT and have authorized BUNYARD to execute this Agreement on their behalf. WRIGHT has the authority to enter into this Agreement on his own behalf, individually, as well as, on behalf of R.M.WRIGHT & ASSOCIATES.

**WHEREAS:** The CLIENTS have agreed that BUNYARD is authorized to pledge to WRIGHT, Fifteen percent (15%) of CLIENTS' interest in their Destin Pointe properties (known as PARCEL B, LOT 160 and DESTIN POINTE REALTY, INC. See EXHIBITS "A" AND "B", attached legal descriptions of the Properties which are hereby incorporated into this Agreement as if fully described herein) and agree to pay a cash NON-REFUNDABLE RETAINER FEE to WRIGHT in the amount of $650,000.00 for services already rendered as of the date of this AGREEMENT and to be rendered as defined below in Section 2 (SCOPE OF SERVICES).

**WHEREAS:** The Parties have agreed that the NON-REFUNDABLE RETAINER FEE of $650,000.00 shall be deemed earned upon the execution of this AGREEMENT and is due and payable as funds become available, however, said RETAINER FEE shall be paid in full no later than: (1) the sale of any or all of CLIENTS' DESTIN POINTE properties; or (2) the refinancing of the Jefferson Bank Loan; or (3) at the time a Joint Venture participant enters into an agreement with CLIENTS; or (4) if none of the above occurs, NO LATER THAN October 4, 2011.

**WHEREAS:** The parties have agreed that this AGREEMENT will subsume and satisfy any and all outstanding and unpaid fees involving WRIGHT's representation of CLIENTS that have not been paid as of the effective date of this AGREEMENT.

**NOW, THEREFORE, in consideration of the foregoing and other good and valuable and consideration, the receipt and adequacy of which is hereby acknowledged, the Parties hereby enter into this Retainer and Consultant Agreement and agree that it shall supersede and replace all prior or existing oral or written agreements between the Parties pertaining to the issues and properties as of the Effective Date of this Agreement, as follows:**

## A G R E E M E N T:

**The foregoing recitals are hereby incorporated by reference and made a part of this Agreement, provided however, that any inconsistencies between the recitals and the terms of this Agreement stated below shall be resolved in favor of the terms and conditions of the Agreement.**

1.  **TERMS:** The terms and conditions in this Section 1 shall govern the AGREEMENT.

    A.  CLIENTS will immediately provide the legal descriptions for their DESTIN POINTE PROPERTIES, as well, any documents relating to the properties.

    B.  CLIENTS will execute any additional pledges or other such documents that WRIGHT deems necessary to secure WRIGHT's interest in the properties and CLIENTS' entities involved in this AGREEMENT, including, AMT, LLC, ZTF Family, LP and DESTIN POINTE REALTY, INC. CLIENTS will provide copies of all agreements and Operating Agreements for all entities for WRIGHT's inspection and copying.

    C.  CLIENTS will assist and aid WRIGHT in his representation and responsibilities included or contemplated in this AGREEMENT.

    D.  As outlined in the Recitals above, the Parties have agreed that WRIGHT will receive a NON-REFUNDABLE RETAINER FEE in the amount of $650,000.00 and said fee shall be deemed earned upon the execution of this AGREEMENT. Said RETAINER FEE is due and payable as funds become available, however, the RETAINER FEE shall be paid no later than: (1) the sale of any or all of CLIENTS' DESTIN POINTE properties; or (2) the refinancing of the Jefferson Bank Loan; or (3) at the time a Joint Venture participant enters into an agreement with CLIENTS; or (4) if none of the above occurs, NO LATER THAN October 4, 2011. In the event item 4 occurs, the method to be used for calculating WRIGHT'S contingency fee (which is outlined in (E) below) will be to multiply fifteen percent (15%) times the latest MAI APPRAISAL.

    E.  In addition to the NON-REFUNDABLE RETAINER FEE outlined in

Section 1 (D) above, WRIGHT will be paid a Fifteen percent (15%) contingency fee as additional compensation for services rendered pursuant to Section 2, (SCOPE OF SERVICES) below. CLIENTS acknowledge that the total compensation payable to WRIGHT is directly related to his unique knowledge of CLIENTS' properties and the surrounding properties known as NORRIEGO POINTE. Further, CLIENTS acknowledge that WRIGHT's knowledge was obtained by years of independent research and interaction with various governmental agencies, associations and individuals, such as but not limited to; (1) USACOE, (2) State of Florida Department of Environmental Protection, (3) USAF, (4) USFWL, (5) FDFWL, (6) City of Destin, Florida, (7) Okaloosa County, Florida, (8) United States Secretary of Defense, (9) United States Department of Interior.

F.      In addition to paying the aforementioned fees, CLIENTS will pay all expenses and costs involved in the matters contemplated by this AGREEMENT through and including any appeals of the same. These costs include but are not limited to, application fees, court filing fees, notary fees, deposition fees, expert fees and expenses, research and investigation costs, long-distance telephone charges, messenger services fees, photocopying expenses, process server fees, audit fees in the event litigation is necessary, fees fixed by law or assessed by courts or other agencies, additional consultation fees, travel and other similar items.

G.      WRIGHT will be the lead professional and consultant in all the actions and matters identified in Section 2, below, and may delegate or arrange his schedule as he needs to meet the demands of the activities.

H.      The Parties agree that the matters contemplated under this AGREEMENT may take a number of years to resolve and CLIENTS have placed special confidence in WRIGHT to perform the duties to be accomplished under this AGREEMENT, and WRIGHT agrees that such performance is his personal duty unless or until CLIENTS agree that another professional and/or consultant may be substituted for WRIGHT.

2.      **SCOPE OF SERVICES:** CLIENTS hire WRIGHT and any of his associates, independent attorneys, of counsel attorneys, staff and reasonable third parties under the supervision of WRIGHT to provide professional services in connection with and regarding CLIENTS' properties that are defined in this agreement. Further, CLIENTS authorize, instruct, and empower WRIGHT to take all steps in said matter deemed by WRIGHT to be advisable, including retaining attorneys, CPA's, accountants, administrative staff, other outside companies, and software or services that provide administrative support to assist WRIGHT in the performance of services under this agreement. However, no further costs will be assigned or incurred by CLIENTS unless agreed to in writing. CLIENTS consent to the use of such third-parties including any necessary disclosure of confidential information to any of the above described third parties.

CLIENTS have retained WRIGHT to represent them in all matters that pertain to their properties and affect the "appraised value" or "market value". The Parties acknowledge that the determination of the CLIENTS' properties' value will depend primarily on the "Highest and Best

Use" of each property. Therefore, WRIGHT will be required to determine what that use is for each property and then prepare and oversee a plan to obtain all the necessary land use "Entitlements and Permits".

CLIENTS and WRIGHT acknowledge and agree that one of CLIENTS' properties is negatively impacted by a "Perpetual Easement" held by the Army Corps of Engineers over a portion of the land, a Navigational Servitude claimed by the Army Corps of Engineers, alleged wetlands located on a portion of Parcel B and a possible lack of access. Further, Parcel B must meet various State of Florida DEP Coastal Construction Control Line regulations to determine what if anything can be developed on the property. Further, the Parties understand that the value of Parcel B is directly affected by the above and that if WRIGHT is successful in his efforts he will have dramatically increased its value.

CLIENTS and WRIGHT acknowledge that all efforts to obtain the "Development Rights" for CLIENTS' properties is for accomplishing CLIENTS' main objective of establishing the greatest value possible and to then sell the property to a developer/end user.

3.    **REPRESENTATIONS OF CLIENTS:**

      A.    AMT, LLC is a duly organized and validly existing Florida LLC.

      B.    ZTF Family, LP, is a duly organized and validly existing Missouri limited liability partnership.

      C.    Execution of this Agreement and the pledging of CLIENTS' interest in their real properties and the named entities are allowed by law and this AGREEMENT is binding on CLIENTS, their successors and assigns and is enforceable in accordance with its terms.

      D.    If any issue arises with the pledging of CLIENTS' interest in the named entities, then CLIENTS will execute such other and further documents in favor of WRIGHT to secure the payment of the fees and expenses agreed to by the Parties in this AGREEMENT, and assist WRIGHT in the collection of the same.

4.    **REPRESENTATIONS OF WRIGHT:**

      A.    WRIGHT is authorized to enter into this AGREEMENT on behalf of himself and R.M.WRIGHT & ASSOCIATES and he is ready, willing, and able to undertake the duties set forth herein.

      B.    This AGREEMENT will be binding on WRIGHT, and its successors or assigns.

5.    **SEVERAL OBLIGATIONS:**

      A.    The legal matters and enumerated disputes in this AGREEMENT are separate and independent for purposes of this AGREEMENT and the failure to complete or

resolve one dispute or meet the conditions specified for either party shall not be deemed a default of this AGREEMENT.

6.    **DEFAULT:**

A.  Definition of Default:  As used in this AGREEMENT, the word "**default**" means that a party hereto has breached a term, covenant, or condition contained herein; and, except for the failure to timely cure such party has failed to cure same within thirty (30) days from the effective date of written notice from the other party specifying the nature of the alleged default ("**Cure Period**"). No default shall become actionable until the expiration of the aforesaid Cure Period with the default unremedied. No delay or omission in the exercise of any right or remedy accruing to one party upon any breach by the other party under this Agreement shall impair such right or remedy, or be construed as a waiver of such breach theretofore or thereafter occurring.

B.  Waivers:  The waiver by one party of any condition or of any subsequent breach of the same or any other term, covenant, or condition herein contained shall not be deemed to be a waiver of any other condition, or deemed to be a waiver of any subsequent breach of the same or any other term, covenant or condition contained herein.

7. **NOTICES**: in writing and deemed to have been given if and when hand-delivered or sent by nationally recognized overnight courier service (e.g., Federal Express, United Parcel Service) or certified or registered mail, return receipt requested, through the United States Postal Service with sufficient postage prepaid, to the parties hereto at their respective addresses, or such other address as either party shall designate by notice pursuant to this Section, or faxed to the then current facsimile number of the other party. Copies of all notices, requests, demands or other communications hereunder to the parties may also be sent to their counsel, and copies of all notices, requests, demands or other communications hereunder to Rod M. Wright, 793 Bayou Drive, Destin, Florida 32541 and, copies of all notices, requests, demands or other communications hereunder to CLIENTS shall be sent to CLIENTS, 480 Gulf Shore Drive, Destin, Florida 32541. Notices sent by hand delivery shall be effective on receipt. Notices send by mail shall be effective three business days after they are deposited with the U.S. postal system. Notices sent by overnight courier shall be effective on the next business day following the date on which they are delivered to the courier if they are set up for next day delivery.

It is expressly understood and agreed to between the parties that counsel for the Parties are authorized to give notice on behalf of their respective clients.

8.    **CAPTIONS AND HEADINGS:**  Captions and Section headings contained in this Retainer are for convenience and reference only and in no way define, describe, extend or limit the scope or intent of this AGREEMENT nor the intent of any provision hereof.

9.    **NO WAIVER:**  No waiver of any provision of this AGREEMENT shall be effective unless it is in writing, signed by the party against whom it is asserted and any such written waiver shall only be applicable to the specific instance to which it related and shall not be deemed to be a continuing or future waiver.

10.   **COUNTERPARTS:** This AGREEMENT may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the

same Agreement.  Acceptance by facsimile and facsimile signatures shall be deemed binding.

**11.    BINDING EFFECT:**  This AGREEMENT shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, personal representatives, successors and assigns.

**12.    GOVERNING LAW:** This AGREEMENT shall be construed and interpreted according to the internal laws of the State of Florida.

**13.    GENDER:**  All terms and words used in this AGREEMENT, regardless of the number and gender in which used, shall be deemed to include any other gender or number as the context or the use thereof may require.

**14.    INTERPRETATION:**  This AGREEMENT shall not be construed more strictly against one party than against the other merely by virtue of the fact that it may have been prepared by counsel for one of the parties, it being recognized that both parties have contributed substantially and materially to the preparation of this AGREEMENT.

**15.    ENTIRE AGREEMENT:**  This AGREEMENT and the Exhibits attached hereto contain the entire agreement between the parties with respect to the subject matter of this AGREEMENT and supersede all prior agreements between the parties with respect to the subject matter of this AGREEMENT.  There are no promises, agreements, conditions, undertaking, warranties, or representations, oral or written, express or implied between the parties other than as herein set forth. No amendment or modification of this AGREEMENT shall be valid unless the same is in writing and signed by the parties hereto.   No waiver of any of the provisions of this AGREEMENT or any other agreement referred to herein shall be valid unless in writing and signed by the party against whom enforcement is sought.

**16.    TIME OF THE ESSENCE:**  Time is of the essence in respect to this Agreement.

**17.    VENUE:**    The Parties agree that the venue for any matters arising out of or in connection with this AGREEMENT shall only be in the State or federal courts having jurisdiction over the Counties of Escambia, Santa Rosa, and Okaloosa, in the State of Florida.

**18.    RECORDATION OF AGREEMENT:**  Neither this AGREEMENT, nor any memorandum thereof, shall be recorded in any public records of any County, unless or until the Parties have agreed, in writing, to so do. The preceding sentence does not prohibit the recordation of deeds, assignments, or mortgages executed pursuant to this AGREEMENT.

**19.    ATTORNEYS FEES:** In connection with any litigation including appellate proceedings arising out of this AGREEMENT, the prevailing party shall be entitled to recover from the losing party its reasonable attorneys' fees and costs incurred in enforcing its rights and remedies hereunder, including costs and expenses related thereto incurred prior to instigating litigation. The provisions in this Section shall survive termination of this Agreement, and shall survive the conveyance of the affected Property or an interest in such Property pursuant to this Agreement.

**20.    WAIVER OF JURY TRIAL:** EACH OF THE PARTIES TO THIS AGREEMENT HEREBY WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS AGREEMENT. THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY EACH PARTY AND EACH PARTY EXPRESSLY ACKNOWLEDGES THAT NEITHER THE OTHER PARTY NOR ANY PERSON ACTING ON BEHALF OF THE OTHER PARTY HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. EACH PARTY ACKNOWLEDGES TO THE OTHER THAT HE HAS READ AND UNDERSTANDS THE MEANING AND EFFECT OF THIS WAIVER PROVISION.

**21.    DISPUTE RESOLUTION PROCEDURES:** In the event of any dispute ("**Dispute**") arising out of or in any way related to this AGREEMENT or any of the transactions or occurrences described or contemplated herein, the parties shall be obligated to follow the following dispute resolution procedures:

A.    First, the parties shall attempt to negotiate a resolution of the Dispute by direct discussions. Such negotiation shall be initiated by written demand by one party to another, and the negotiations may occur with or without counsel, as the parties elect.

B.    Thereafter, any Party may give written notice to the other affected Party(ies), notifying the other affected Party(ies) that the Party giving notice has elected to submit the Dispute to binding arbitration ("**Notice of Arbitration**"). Once the Notice of Arbitration is given by one of the Parties with respect to a specified Dispute, the Parties are obligated to submit that Dispute to binding arbitration (unless and until the parties sign a written settlement of the Dispute). The decision of the arbitrator or arbitrators shall be final and binding. The parties shall first attempt to mutually agree to an arbitrator or arbitrators to decide the dispute, and the rules under which the arbitration shall proceed. In the event that they cannot agree within ten (10) days after the Notice of Arbitration is given, the arbitration shall be governed by the rules and procedures for commercial arbitration of the American Arbitration Association then in effect. The costs and expenses of arbitration shall be borne equally by the parties, except that the arbitrator may allocate such costs and expenses among the parties to the arbitration as the arbitrator deems appropriate, including requiring the losing party to pay the costs and expenses, including reasonable attorney's fees, of the prevailing party. Any award rendered by the arbitral tribunal shall be final and binding, and enforceable as a judgment upon confirmation thereof under the Florida Arbitration Code, or the Federal Arbitration Act by any court having jurisdiction. All parties to this Agreement agree that they may be served (in addition to personal service) with papers commencing any proceeding to confirm any arbitration award hereunder by either certified or registered mail, by hand delivery, or by recognized overnight courier.

**22.    DISCLAIMER OF GUARANTEE:** Nothing in this Agreement and nothing in our (WRIGHT) statements to you (CLIENTS) will be construed as a promise or guarantee about the outcome of the matter or services provided pursuant to this AGREEMENT. We make no such promises or guarantees. Nothing in this AGREEMENT and nothing in our (WRIGHT) statements to you (CLIENTS) will be construed as a promise or guarantee and will be considered as expressions of opinions **"ONLY"**.

**IN WITNESS WHEREOF**, the Parties hereto have duly executed this Agreement, as of the day and year first above written.

<u>CONSULTANT</u>

ROD M. WRIGHT

<u>AMT, LLC, a Florida limited liability company</u>

By:

Stephen Bunyard, Manager

<u>ZTF</u>

ZTF Family, LP, a Missouri limited partnership

By ZTF Consulting Group, Inc., its general partner

By:

Stephen Bunyard

<u>BUNYARD</u>

Stephen Bunyard

EXHIBIT "A"

**LEGAL DESCRIPTION OF LOT 160**

**Lot 160**

PARCEL I:
**LEGAL DESCRIPTION:** (PREPARED BY UNDERSIGNED)
LOT 160, DESTIN POINTE, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT
BOOK 14, PAGES 90-93, OF THE PUBLIC RECORDS OF OKALOOSA COUNTY, FLORIDA. BEING
MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGIN AT THE SOUTHERNMOST CORNER OF SAID LOT 160, SAID POINT LYING ON THE
NORTHERLY RIGHT OF WAY LINE OF MELROSE AVENUE (44 FOOT PRIVATE RIGHT OF
WAY); THENCE NORTH 81 DEGREES 39 MINUTES 05 SECONDS EAST ALONG SAID RIGHT OF
WAY A DISTANCE OF 36.52 FEET TO A POINT OF CURVATURE OF A CIRCULAR CURVE TO
THE LEFT; THENCE ALONG SAID RIGHT OF WAY LINE AND SAID CURVE TO THE LEFT
(RADIUS = 106.79 FEET, CHORD = 95.50 FEET, CHORD BEARING = NORTH 55 DEGREES 05
MINUTES 25 SECONDS EAST, DELTA = 53 DEGREES 07 MINUTES 21 SECONDS) A DISTANCE
OF 95.01 FEET TO A POINT OF COMPOUND CURVATURE OF A CIRCULAR CURVE TO THE
LEFT; THENCE ALONG THE WESTERLY RIGHT OF WAY LINE OF WAVERLY CIRCLE (44
FOOT PRIVATE RIGHT OF WAY) AND SAID CURVE TO THE LEFT (RADIUS = 435.00 FEET,
CHORD = 177.19 FEET, CHORD BEARING = NORTH 16 DEGREES 46 MINUTES 39 SECONDS
EAST, DELTA = 23 DEGREES 30 MINUTES 10 SECONDS) A DISTANCE OF 178.44 FEET TO A
POINT OF COMPOUND CURVATURE OF A CIRCULAR CURVE TO THE LEFT; THENCE ALONG
SAID RIGHT OF WAY LINE AND SAID CURVE TO THE LEFT (RADIUS = 175.62 FEET, CHORD =
75.57 FEET, CHORD BEARING = NORTH 07 DEGREES 23 MINUTES 55 SECONDS WEST, DELTA
= 24 DEGREES 50 MINUTES 59 SECONDS) A DISTANCE OF 76.17 FEET; THENCE SOUTH 70
DEGREES 44 MINUTES 25 SECONDS WEST A DISTANCE OF 101.01 FEET; THENCE SOUTH 17
DEGREES 00 MINUTES 00 SECONDS WEST A DISTANCE OF 16.00 FEET; THENCE SOUTH 87
DEGREES 00 MINUTES 00 SECONDS WEST A DISTANCE OF 28.00 FEET; THENCE SOUTH 51
DEGREES 30 MINUTES 00 SECONDS WEST A DISTANCE OF 18.00 FEET; THENCE SOUTH 05
DEGREES 00 MINUTES 00 SECONDS EAST A DISTANCE OF 26.00 FEET; THENCE SOUTH 22
DEGREES 13 MINUTES 40 SECONDS WEST A DISTANCE OF 126.67 FEET; THENCE SOUTH 17
DEGREES 30 MINUTES 00 SECONDS EAST A DISTANCE OF 105.00 FEET TO THE POINT OF
BEGINNING. THE ABOVE DESCRIBED PARCEL CONTAINS 0.904 ACRES, MORE OR LESS, AND
IS SUBJECT TO A 15 FOOT WIDE DRAINAGE EASEMENT LYING ON THE NORTHERLY
PORTION OF THE ABOVE DESCRIBED LOT AS REFLECTED ON THE FACE OF SAID PLAT.

**(The Above legal description was taken from the Destin Guardian Corporation Assignment
to AMT, LLC.)**

## EXHIBIT "B"

## LEGAL DESCRIPTION OF PARCEL B

**Parcel B:**

Parcel II:

COMMENCE AT THE NORTHWEST CORNER OF DESTIN POINTE, A PLANNED UNIT DEVELOPMENT OF A PORTION OF HOLIDAY ISLE, DESTIN, UNDIVIDED TOWNSHIP 2 SOUTH, RANGE 23 WEST, OKALOOSA COUNTY, FLORIDA AS RECORDED IN PLAT BOOK 14 AT PAGES 90 THROUGH 93 OF THE PUBLIC RECORDS OF OKALOOSA COUNTY, FLORIDA; THENCE PROCEED SOUTH 23 DEGREES 31 MINUTES 00 SECONDS WEST ALONG THE WEST LINE OF SAID DESTIN POINTE A DISTANCE OF 439.95 FEET TO THE POINT OF BEGINNING; THENCE CONTINUE ALONG SAID WEST LINE OF DESTIN POINT THE FOLLOWING BEARINGS AND DISTANCES: SOUTH 23 DEGREES 31 MINUTES 00 SECONDS WEST, 218.94 FEET; NORTH 66 DEGREES 29 MINUTES 00 SECONDS WEST, 44.00 FEET; SOUTH 23 DEGREES 31 MINUTES 00 SECONDS WEST, 304.00 FEET; SOUTH 66 DEGREES 29 MINUTES 00 SECONDS EAST, 32.00 FEET; SOUTH 23 DEGREES 31 MINUTES 00 SECONDS WEST 346.24 FEET TO A POINT ON THE NORTH LINE OF AN EXISTING POND AS SHOWN ON THE AFORESAID PLAT OF DESTIN POINTE; THENCE DEPARTING SAID WEST LINE OF DESTIN POINTE, PROCEED ALONG THE NORTH LINE OF SAID POND THE FOLLOWING BEARINGS AND DISTANCES: NORTH 40 DEGREES 45 MINUTES 59 SECONDS WEST, 67.30 FEET; NORTH 80 DEGREES 30 MINUTES 02 SECONDS WEST 51.90 FEET; SOUTH 48 DEGREES 24 MINUTES 40 SECONDS WEST, 38.52; SOUTH 09 DEGREES 21 MINUTES 49 SECONDS WEST, 43.88 FEET; THENCE DEPARTING SAID NORTH LINE PROCEED NORTH 32 DEGREES 29 MINUTES 00 SECONDS WEST A DISTANCE OF 797.93 FEET; THENCE PROCEED NORTH 23 DEGREES 31 MINUTES 00 SECONDS EAST A DISTANCE OF 367.44 FEET; THENCE PROCEED SOUTH 60 DEGREES 28 MINUTES 29 SECONDS EAST A DISTANCE OF 400.00 FEET; THENCE PROCEED NORTH 23 DEGREES 31 MINUTES 00 SECONDS EAST A DISTANCE OF 200.00 FEET; THENCE PROCEED SOUTH 60 DEGREES 28 MINUTES 29 SECONDS EAST A DISTANCE OF 394.41 FEET TO THE POINT OF BEGINNING. LYING IN AND BEING A PORTION OF HOLIDAY ISLE, DESTIN, UNDIVIDED TOWNSHIP 2 SOUTH, RANGE 23 WEST, OKALOOSA COUNTY, FLORIDA AND CONTAINS 11.77 ACRES MORE OR LESS.

**(The Above legal description was taken from the Destin Guardian Corporation Assignment to AMT, LLC.)**

EXHIBIT "B"

## LOAN AGREEMENT OF ROD AND BARBARA WRIGHT
## & ZTF FAMILY, LP  AND ITS AFFILIATES

**THIS MASTER LOAN AGREEMENT** ("**Agreement**") is made and entered into as of the 7th day of September, 2008 (the "**Effective Date**"), by and between ROD M. WRIGHT & BARBARA J. WRIGHT  both having their address of 625 Lagoon Drive, Unit 5, Destin, Florida 32541 (ROD and BARBARA are sometimes collectively referred to as the "Lenders") and AMT, LLC, a Florida limited liability company ("**AMT**" or "**Borrower**"), having the address of 480 Gulf Shore Drive, Destin, Florida 32541, ZTF Family, LP, a Missouri limited partnership ("**ZTF**" or  "**Borrower**"), having the address of 480 Gulf Shore Drive, Destin, Florida 32541 and Stephen Bunyard ("**Bunyard**" or "Borrower") (AMT, ZTF and Bunyard are sometimes collectively referred to as the "**Owners**" or "Borrowers"), having the address of 480 Gulf Shore Drive, Destin, Florida 32541 or such other address or addresses as the parties may hereafter determine from time to time. For convenience, all the foregoing persons and entities may be referred hereinafter collectively as the "**Parties**".

## R E C I T A L S:

**WHEREAS:** Certain capitalized terms used in this Agreement are defined in Section 1 of this Agreement.

**WHEREAS:** **AMT, L.L.C.**, a Florida limited liability company ("**AMT**") leases Parcel B (described hereinafter) under a long-term lease, and owns fee simple title to Lot 160 (described hereinafter).

**WHEREAS:** **ZTF Family, LP**, a Missouri limited partnership ("**ZTF**"), owns 100% of **AMT**. ZTF also owns 100% of Destin Pointe Realty, Inc., a Florida corporation (hereinafter referred to as "**DPRI**").

**WHEREAS:** ZTF, AMT and BUNYARD desire to borrow and **ROD and BARBARA WRIGHT** desire to loan **ZTF, AMT and BUNYARD** the sum of One Million Fifty Thousand Dollars ($1,015,000.00) (the "**Loan Amount**") which was  loaned to "Borrowers" in the manner described hereinafter.

**WHEREAS:** The Parties intend to explore the potential development of Parcel B and Lot 160, and the Parties intend to modify and amend the Operating Agreement of **AMT** (and **ZTF** if necessary) and modify and amend the Bylaws of Destin Pointe Realty, Inc., ("**DPRI**") to reflect the ownership interests of the parties in the event an agreement is made to add "Lender" as new participants.

**WHEREAS:** The Parties have agreed to enter into this Agreement to describe more fully the transactions they intend to pursue that are generally described above.

**NOW, THEREFORE,** in consideration of the foregoing and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties hereby enter into this Agreement and agree that it shall supersede and replace all prior or existing oral or written agreements between the Parties pertaining to the Properties as of the Effective Date of this Agreement, as follows:

### A G R E E M E N T:

**The foregoing recitals are hereby incorporated by reference and made a part of this Agreement, provided however, that any inconsistencies between the recitals and the provisions of this Agreement shall be resolved in favor of the terms and conditions of the Agreement.**

1.     **DEFINITIONS:**  The following terms shall have the following meanings when used in this Agreement:

A.     **AMT** shall mean AMT, LLC, the Florida Limited Liability Company which hold title to Lot 160 and the long-term land lease on Parcel B. AMT, is owned by ZTF, Family LP.

B.     "**DPRI**" shall mean Destin Pointe Realty, Inc.

C.     "**Lot 160**" shall mean the lot identified by the same number within the Destin Pointe PUD that is owned by AMT and described on Exhibit A attached hereto.

D.     "**Lot 160 Project**" shall mean the project to be developed on Lot 160.

E.     "**Parcel B**" shall mean the 11.77 acres of real estate leased by AMT under a long-term lease as more fully described on Exhibit B attached hereto.

F.     "**Pre-development Activities**" shall have the meaning assigned to such term in Section 3.B below.

G.     "**Pre-development Work Product**" shall mean the results of the Pre-development Activities with respect to Parcel B and Lot 160, and includes, but is not limited to, all studies, engineering and architectural plans and specifications, reports, surveys, agreements, permits, development orders, development rights, surveys, title commitments, appraisals, etc.

H.     "**Properties**" shall mean collectively the properties that are the subject of this Agreement, namely Parcel B, Lot 160, and **DPRI**.

I.     "**LOAN AMOUNT**" shall mean the amount of $1,015,000.00.

J.     "**ZTF**" shall mean **ZTF Family, LP**, a Missouri limited partnership ("**ZTF**"), which owns 100% of **AMT**. ZTF also owns 100% Destin Pointe Realty, Inc., a Florida corporation (hereinafter referred to as "**DPRI**").

2.     **TERMS:**  The terms and conditions in this Section 2 as expanded upon throughout the Agreement shall govern the "LOAN" made to the "Borrowers" (AMT, ZTF and BUNYARD).

A.     The principal loan amount of $1,015,000.00, shall accrue annual interest in the amount of 8% (per cent) and shall be all due and payable to Lender when

one of the following occurs: (1) Borrowers refinance the existing loan with Jefferson Bank, or (2) Borrowers obtain funds from a Joint Venture Investor, or (3) Borrowers sell the properties known as Destin Pointe (Parcel B and Lot 160).

B.     Lender acknowledges that Lender has conducted its own due diligence  with respect to Parcel B and Lot 160 prior to making the loan and is satisfied with the results of said due diligence.

C.     In the spirit of this Agreement, the Lender and the Borrowers shall be allowed a grace period of five (5) working days before either Party gives notice to the other Party of a breach of the Agreement. Also, each Party may request further assurances of the other Party's intentions at any time during this Agreement.

D.     No mortgage or security will be required to be given by either Party to the other Party.

### 3.     **DUE DILIGENCE AND PRE-DEVELOPMENT ACTIVITIES:**

A.     Borrowers shall provide Lender with continuing access to ALL Properties and records pertaining to the Properties owned by the Borrowers that are located in Destin Pointe, Destin, Florida.  Lender, Rod M. Wright, has contracted with the Borrowers to perform services pursuant to a "CONSULTANT AGREEMENT" that was executed by the parties on October 5, 2007. Pursuant to that agreement, any and all documents pertaining to the Borrowers' Destin Pointe properties shall be made available for his review.

B. At all times it is acknowledged by all parties that Borrowers and Lender are not acting as developers in this transaction and that their collective interests are directed towards clearing all impediments which currently impact the properties' development potential thereby allowing the Borrowers to sell the properties to a developer.

### 4.     Disclosures.

A.     ZTF and AMT have disclosed to Lender that there are certain matters affecting Parcel B that will have to be resolved by AMT in order to develop Parcel B, including, but not limited to, a perpetual easement held by the Army Corps of Engineers over a portion of the land, a Navigational Servitude claimed by the Army Corps of Engineers, alleged wetlands located on a portion of Parcel B, and a possible lack of access.

B.     The Parties acknowledge and agree that certain developer rights were assigned to AMT pursuant to that certain Developer Rights and Indemnity Agreement dated April 24, 2003 executed by AMT and DGCI (the **"Developer Rights Agreement"**), a copy of which has been provided to Lender. However, AMT makes no representations or warranties to Lender regarding the status of such developer rights, except the rights AMT acquired in its 2003 purchase of Parcel B, Lot 160, and the rights associated with the Destin Pointe PUD.

5.    **Warranties**.

A.    Lender acknowledges that **ZTF AND AMT ARE MAKING NO EXPRESS OR IMPLIED WARRANTIES CONCERNING PARCEL B OR LOT 160**, and that neither ZTF nor AMT, nor anyone affiliated with AMT, shall have any liability to Lender for any defects in or problems with Parcel B or Lot 160, including, but not limited to, any soil, environmental or legal conditions, that may affect the value or use of Parcel B or Lot 160. Without limiting the preceding sentence, Lender agrees that it is relying on its own investigations of Parcel B and Lot 160 and any title information that ZTF and AMT may have provided about Parcel B and Lot 160.

6.    **Representations and Covenants by Borrower.**

A.    AMT is a duly organized and validly existing Florida LLC.

B.    ZTF is a duly organized and validly existing Missouri limited partnership.

C.    Execution of this Agreement has been duly authorized by AMT, ZTF and Bunyard, and this Agreement is binding on AMT, ZTF and Bunyard, their Successors and assigns, and is enforceable in accordance with its terms.

7.    **Representations and Covenants by Lender.**

A. Borrowers are only willing to enter into the transactions described in this Agreement because of their confidence in the experience and expertise of Roderic Wright. Mr. Wright shall at all times be actively involved in the projects described in this Agreement from the Effective Date until such Projects are completed and sold to a developer end user and shall devote such time to such projects as needed from time to time and as required pursuant to the CONSULTANT AGREEMENT referenced above.

B. Execution of this Agreement has been duly authorized by Borrowers, and this Agreement is binding on Borrowers, their successors and assigns time and enforceable in accordance with its terms. .

8.    **Negative Covenants by Borrower.**

The following negative covenants shall apply so long as Lender is not in default with respect to its obligations to Borrowers under this Agreement, and shall also terminate as specifically hereinafter provided.

A.    Each Borrower at its expense shall continue to own, operate and maintain the Property or Properties it currently owns which are the subject of this Agreement in a manner similar to the manner such Property or Properties has been maintained in the past.

B.    No new mortgages shall be recorded against **Parcel B,** or **Lot 160,** by the Borrowers, except as part of the payoff of the principal and interest due under this loan agreement.

C.      No new agreements that would materially affect the development of **Lot 160, or Parcel B** shall be recorded without the prior approval of any such agreements by Lender. However, this restriction shall not apply to any documents that Borrowers are already contractually obligated to sign or which they are required by law to sign.

A.      Each party shall bear the fees and charges of its respective attorneys, consultants, engineers, accountants, architects and other professionals and/or representatives.

B.      Borrowers shall pay the cost of all Pre-development Activities with respect to all of the Properties, including, but not limited to: (a) the cost of any surveys and any letters of reliance from the surveyor; (b) the cost for the Phase I Environmental Assessment and any letters of reliance from the engineer; (c) cost to issue the title commitment and the owner's and title insurance policies, if any; subject, however, to the provisions of Section 3 of this Agreement.

9.      **SEVERAL OBLIGATIONS:**

A.      Notwithstanding any provision in this Agreement to the contrary, ZTF, AMT, and BUNYARD shall only be liable for express covenants pertaining to the express obligations under this Agreement with respect to Parcel B, Lot 160, and DPRI.

B.      Notwithstanding any provision in this Agreement to the contrary, Bunyard shall only be liable for express covenants he has made in this Agreement and any express obligations or warranties he has made with respect to the **AMT, ZTF and DPRI**.

10.     **DEFAULT:**

A.      Default by AMT or ZTF or Bunyard:  If AMT or ZTF or Bunyard shall default in any material respect on any of the covenants and agreements contained herein to be performed by AMT or ZTF or Bunyard within the time for performance as specified herein (including their respective obligation to consummate the transactions contemplated hereby), Lender will be entitled to enforce any indemnities which by their terms are to survive this Agreement, or rights to recover attorney's fees pursuant to Section 27 below.

B.      Limitations for Limitations on Remedies: The limitations on remedies set forth in this Section 11 apply to the remedies available for failure to make any Payment under this Agreement, and do not limit any rights or remedies available with respect to enforcing any entity's operating agreement, or other operating or management documents of AMT, or DPRI, or other entities. Also, the limitations on remedies set forth in this Section 11 shall not limit the Parties rights or remedies available with respect to enforcing any other agreement between any of the parties hereafter entered into. Finally, no part of this Section 11 will be construed to benefit or be enforceable by any third person or entity that is not a party to this Agreement.

C. Definition of Default:  As used in this Agreement, the word **"default"** means that a party hereto has breached a term, covenant, or condition contained herein; and, the party has failed to cure same within thirty (30) days from the effective date of written notice from the other party specifying the nature of the alleged default (**"Cure Period"**). No default shall become actionable until the expiration of the aforesaid Cure Period with the default unremedied. A delay or omission in the exercise of any right or remedy accruing to one party upon any breach by the other party shall not impair such right or remedy.

D. <u>Waivers</u>: The waiver by one party of any condition or of any subsequent breach of the same or any other term, covenant, or condition herein contained shall not be deemed to be a waiver of any other condition, or deemed to be a continuing waiver of any subsequent breach of the same or any other term, covenant or condition contained herein.

11. **BROKERAGE:** Lender and Borrowers each represent and warrant to the other that Roderic M. Wright is the broker or finder in connection with the negotiations of this Agreement and/or the consummation of the agreement contemplated hereby and no other broker or other person, firm or entity is entitled to any commission or fees in connection with this transaction. Borrowers and Lender do each hereby indemnify, defend, protect and hold the other harmless from and against any costs, expenses or liability for compensation, commission or charges which may be claimed by any other broker, finder or other similar party by reason of any actions of the indemnifying party. Furthermore, it is agreed and understood that Roderic M. Wright, is an attorney and real estate broker and shall receive no commission or fee for the consummation of this Agreement and of the transactions described herein, other than the repayment of the loan principal and the interest earned. Further, he is not acting as a loan broker or an attorney in this transaction. Borrowers represent that they have consulted with their respective attorneys regarding this transaction and are executing this agreement on their own independent advice from their attorneys. This Section shall survive termination of this Agreement.

12. **RISK OF LOSS:** The parties recognize that AMT plans to demolish existing improvements on Parcel B and Lot 160. Accordingly, this Section is not intended to apply to Parcel B and Lot 160.

13. **NOTICES:** All notices, requests, demands or other communications hereunder shall be in writing and deemed to have been given only if and when hand-delivered or sent by nationally recognized overnight courier service (e.g., Federal Express, United Parcel Service) or certified or registered mail, return receipt requested, through the United States Postal Service with sufficient postage prepaid, to the parties hereto at their respective addresses set forth at the outset of this Agreement or such other address as either party shall designate by notice pursuant to this Section. Copies of all notices, requests, demands or other communications hereunder to Lender shall also be sent to their counsel, and copies of all notices, requests, demands or other communications hereunder to Rod M. Wright, 625 Lagoon Drive, Destin, Florida 32541 and, copies of all notices, requests, demands or other communications hereunder to AMT and ZTF shall also be sent to Owners, C/O Stephen Bunyard, 480 Gulf Shore Drive, Destin, Florida 32541, or such other address or addresses as the Parties may hereafter notify each other. Notices sent by hand delivery shall be effective on receipt. Notices send by mail shall be effective three business days after they are deposited with the U.S. postal system. Notices sent by overnight courier shall be effective on the next business day following the date on which they are delivered to the courier if they are set up for next day delivery.

It is expressly understood and agreed to between the parties that counsel for the Lender and Borrowers are authorized to give notice on behalf of their respective clients.

14. **FURTHER ASSURANCES:**

A.  The Parties agree that Lender shall have the right to negotiate future uses of Parcel B and Lot 160 with various governmental authorities, provided, however, Lender shall not have authority to bind Owners/Borrowers to any agreements, and any agreements with governmental authorities shall require the prior written approval of the Owners/Borrowers of the affected Property, which approval shall not be unreasonably withheld, conditioned or delayed. The parties are aware of the possible existence of certain "developer rights" that were reserved by Destin Guardian Corporation, Inc. (**"DGCI"**), the predecessor in interest to Parcel B and Lot 160. ZTF and AMT shall cooperate with Rod Wright, at the sole expense of Owners/Borrowers, with (a) the appropriate city, county, state, and national agencies (if any) for obtaining approvals for the proper permitting and development of the Parcel B and Lot 160 as contemplated by the CONSULTANT AGREEMENT referenced above, and (b) DGCI with respect to obtaining any "developer rights" under the Declaration; provided, however, that such cooperation shall not require ZTF and AMT to do anything that would affect the future development of Parcel B or Lot 160 without AMT's prior written approval. ZTF shall be required to cover the expense or liability in connection with its cooperation pursuant to this Section.

B.  In addition to the foregoing, the Parties hereto, at the time and from time to time, upon the request of any Party, agree to do, execute, acknowledge and deliver all such further deeds, assignments, transfers, conveyances, authorizations, filings, consents, and assurances, and other documents as may be reasonably required for the consummation of the transactions referred to in this Agreement.

15.  **CAPTIONS AND HEADINGS:**  Captions and Section headings contained in this Agreement are for convenience and reference only and in no way define, describe, extend or limit the scope or intent of this Agreement nor the intent of any provision hereof.

16.  **NO WAIVER:**  No waiver of any provision of this Agreement shall be effective unless it is in writing, signed by the party against whom it is asserted and any such written waiver shall only be applicable to the specific instance to which it related and shall not be deemed to be a continuing or future waiver.

17.  **COUNTERPARTS:**  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same Agreement. Acceptance by facsimile and facsimile signatures shall be deemed binding.

18.  **BINDING EFFECT:**  This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, personal representatives, successors and assigns.

19.  **GOVERNING LAW:**  This Agreement shall be construed and interpreted according to the internal laws of the State of Florida.

20.  **GENDER:**  All terms and words used in this Agreement, regardless of the number and gender in which used, shall be deemed to include any other gender or number as the context or the use thereof may require.

21.  **INTERPRETATION:**  This Agreement shall not be construed more strictly against one party than against the other merely by virtue of the fact that it may have been

prepared by counsel for one of the parties, it being recognized that **AMT, ZTF, DPRI, BUNYARD and Lender** have contributed substantially and materially to the preparation of this Agreement. Wherever used in this Agreement, "any" means "any and all"; "including" means without limitation; "indemnify" means that the indemnitor will defend, indemnify and hold the indemnitee harmless against any claims, demands, losses or liabilities asserted against or incurred by the indemnitee to any third party because of the subject matter of the indemnity; "may not" and other negative forms of the verb "may" each are prohibitory; and "will", "must" and "should" each are mandatory. Unless this Agreement expressly or necessarily requires otherwise (i) any time period measured in "days" means consecutive calendar days, except that the expiration of any time period measured in days that expires on a Saturday, Sunday or legal holiday automatically will be extended to the next day so that it is not a Saturday, Sunday or legal holiday; (ii) any action is at the sole expense of the party required to take it; (iii) the scope of any indemnity includes any costs and expenses, including reasonable attorneys' fees through all levels of proceedings incurred in defending any indemnified claim, or in enforcing the indemnity, or both.

22.      **ENTIRE AGREEMENT:**  This Agreement and the Exhibits attached hereto contain the entire agreement between the parties with respect to the subject matter of this Agreement, and supersede all prior agreements between the parties with respect to the subject matter of this Agreement. There are no promises, agreements, conditions, undertaking, warranties, or representations, oral or written, express or implied between the parties other than as herein set forth. No amendment or modification of this Agreement shall be valid unless the same is in writing and signed by the parties hereto. No waiver of any of the provisions of this Agreement or any other agreement referred to herein shall be valid unless in writing and signed by the party against whom enforcement is sought.

23.      **TIME OF THE ESSENCE:** Time is of the essence in respect to this Agreement.

24.      **VENUE:**    The Parties agree that the venue for any matters arising out of or in connection with this Agreement shall only be in the State or federal courts having jurisdiction over the County of Okaloosa, State of Florida.

25.      **RECORDATION OF AGREEMENT:** Neither this Agreement, nor any memorandum thereof, shall be recorded in any public records of any County, unless or until the Parties have agreed, in writing, to so do. The preceding sentence does not prohibit the recordation of deeds, assignments and mortgages executed pursuant to this Agreement.

26.      **ATTORNEYS FEES:** In connection with any litigation including appellate proceedings arising out of this Agreement, the prevailing party shall be entitled to recover from the losing party its reasonable attorneys' fees and costs incurred in enforcing its rights and remedies hereunder, including costs and expenses related thereto incurred prior to instigating litigation. The provisions in this Section shall survive termination of this Agreement.

27.      **WAIVER OF JURY TRIAL:**  EACH OF THE PARTIES TO THIS AGREEMENT HEREBY WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS AGREEMENT. THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY EACH PARTY AND EACH PARTY EXPRESSLY ACKNOWLEDGES THAT NEITHER THE OTHER PARTY NOR ANY PERSON ACTING ON BEHALF OF THE OTHER PARTY HAS MADE ANY REPRESENTATIONS OF FACT TO

INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS
EFFECT. EACH PARTY ACKNOWLEDGES TO THE OTHER THAT HE HAS READ AND
UNDERSTANDS THE MEANING AND EFFECT OF THIS WAIVER PROVISION.

28. **DISPUTE RESOLUTION PROCEDURES:** In the event of any dispute
("**Dispute**") arising out of or in any way related to this Agreement or any of the transactions or
occurrences described or contemplated herein, the parties shall be obligated to follow the
following dispute resolution procedures:

A.     First, the Parties shall attempt to negotiate a resolution of the Dispute by
direct discussions.  Such negotiation shall be initiated by written demand by one Party to
another, and the negotiations may occur with or without counsel, as the Parties elect.

B.     Thereafter, any Party may give written notice to the other affected
Party(ies), notifying the other affected Party(ies) that the Party giving notice has elected to
submit the Dispute to binding arbitration ("**Notice of Arbitration**"). Once the Notice of
Arbitration is given by one of the Parties with respect to a specified Dispute, the Parties are
obligated to submit that Dispute to binding arbitration (unless and until the parties sign a written
settlement of the Dispute). The decision of the arbitrator or arbitrators shall be final and binding.
The parties shall first attempt to mutually agree to an arbitrator or arbitrators to decide the
dispute, and the rules under which the arbitration shall proceed. In the event that they cannot do
so within ten (10) days after the Notice of Arbitration is given, the arbitration shall be governed
by the rules and procedures for commercial arbitration of the American Arbitration Association
then in effect. The costs and expenses of arbitration shall be borne equally by the parties, except
that the arbitrator may allocate such costs and expenses among the parties to the arbitration as the
arbitrator deems appropriate, including requiring the losing party to pay the costs and expenses,
including reasonable attorney's fees, of the prevailing party. Any award rendered by the arbitral
tribunal shall be final and binding, and enforceable as a judgment upon confirmation thereof
under the Florida Arbitration Code, or the Federal Arbitration Act by any court having
jurisdiction. All parties to this Agreement agree that they may be served (in addition to personal
service) with papers commencing any proceeding to confirm any arbitration award hereunder by
either certified or registered mail, by hand delivery, or by recognized overnight courier.

29.    **ASSIGNMENT.**

A.     Any Party may form one or more separate entities to own the membership
interest(s) that such Party is entitled to receive in this Agreement.

B.     Lender may assign this Agreement in whole, or in part, to an entity
controlled in part by Rod Wright and Barbara Wright, provided that Rod Wright will continue to
be involved in the projects described in this Agreement. This Agreement may not be assigned by
Lender to an assignee in which Rod Wright is not involved without the prior written consent of
Owners/Borrowers, which consent may be withheld in their sole discretion.

C.     Borrowers may not transfer or mortgage the Properties or entities named
in this Agreement without the knowledge and consent of the Lender and any transferee or
mortgagee shall take its interest subject to the rights of Lender under this Agreement.

D.     An assignment and assumption agreement shall be executed by the
assignor and assignee with respect to any assignment of this Agreement, and a copy of that

executed assignment shall be delivered to the other Parties to this Agreement, along with notice of the assignment and notice of the name and address of the assignee. No assignment shall be binding on a Party hereto until such Party receives written notice of the assignment and a copy of the assignment.

        E.      No such assignment and assumption shall relieve any Party of its obligations under this Agreement.

## 30. SURVIVAL OF PROVISIONS:

**If any term or provision of this Agreement is deemed void, or unenforceable, by a mediator, arbitrator, or court of competent jurisdiction, then such finding shall affect only that specific term or provision, and that term or provision shall be stricken from the Agreement, and the remainder of the Agreement shall continue in full force and effect, and shall be binding on the Parties, their heirs, successors, and assigns.**

## 31. LIST OF EXHIBITS:

**EXHIBIT A:  Legal Description of Lot 160**

**EXHIBIT B:  Legal Description of Parcel B**

**EXHIBIT C:  Properties Data Required From Borrowers**

**(THE REMAINING PART OF THIS PAGE IS INTENTIONALLY LEFT BLANK)**

///

///

///

///

///

///

**IN WITNESS WHEREOF**, the Parties hereto have duly executed this Agreement, as of the day and year first above written.

CONSULTANT

ROD M. WRIGHT

AMT, LLC, a Florida limited liability company

By:

Stephen Bunyard, Manager

LENDER

BARBARA J. WRIGHT

ROD M. WRIGHT

ZTF

ZTF Family, LP, a Missouri limited partnership

By ZTF Consulting Group, Inc., its general partner

By:

Stephen Bunyard

DESTIN POINTE REALTY, INC.

By:

Stephen Bunyard, President

BUNYARD

Stephen Bunyard

Wright, Rod

CMU

# EXHIBIT "C"

1



### COMMITMENT INTENT LETTER DATED MARCH 11, 2010

**DEFTCO.CORP** INTENDS TO PROVIDE THE PROJECT KNOWN AS THE FLORIDA EMERALD COAST OR DESTIN POINTE PROJECT LOCATED AT 11.77 ACRES REFERRED TO AS PARCEL B, WEST END OF HOLIDAY ISLE, OKALOOSA COUNTY,  DESTIN POINTE, FLORIDA. THIS LOAN COMMITMENT INTENT OUTLINES THE GENERAL TERMS AND CONDITIONS UNDER WHICH THE LENDER WILL PROCEED.

**BORROWER:**                   AMT, LLC

**LOAN TERMS:**      24 MONTHS – PREPAID INTEREST FOR 24 MONTHS
                     (THERE WILL NOT BE ANY OTHER PAYMENTS
                     DUE DURING THE 24 MONTHS, PRINCIPAL DUE
                     IN 24 MONTHS.

**GUARANTORS:**                 AMT, LLC

**ADDITIONAL
COLLATERAL:**                   NONE

**LOAN AMOUNT:**                $14,000,000. (FOURTEEN MILLION US DOLLARS)
                                PLUS PRE-PAID    INTEREST, POINTS AND
                                CLOSING COSTS.

**INTEREST RATE:**              11.5%

**PREPAID INTEREST:**           24 MONTHS – Subject to Page 2 of Attached
                                Email from Joseph F. Day, CEO,
**PREPAYMENT PENALTY:**   NONE   which is incorporated herein by
**POINTS PAID TO DEFTCO.CORP:**   6 PERCENT   this reference. MBS

**FUNDING DATE:**   FUNDING ESTIMATED TO BE ON OR BEFORE MARCH 30, 2010
                    PROVIDED THAT ALL DOCUMENTS REQUIRED TO CLOSE ESCROW
                    AND THAT ALL CONDITIONS PRECEDENT HAVE BEEN RELEASED,
                    APPROVED AND/OR WAIVED BY THE ESCROW HOLDER AND THAT
                    ESCROW IS INSTRUCTED TO PROCEED TO CLOSE THIS ESCROW.

## DEFTCO.CORP

**Mailing Address:**        **California Office:**        **Nevada Office:**        **International Offices:**
P.O. Box 421183            73-241 Highway 111           723 South Casino Center Blvd.   Mexico .
San Diego, California 92142   Palm Desert, California 92260   Las Vegas, Nevada 89101       Canada
858-271-8900               760-341-8225                 702-387-1020

**Phone # 800-778-7802**        **WORLD WIDE WEB** http://www.deftco.com        *Fax # 800-866-9755*

2

**COLLATERAL SECURITY:** The loan shall be secured by a first mortgage on the property, an assignment of rents and profits upon the Property and a perfected security interest in ALL personal property and/ or equipment used in connection with this property. The mortgage and security interest shall constitute VALID FIRST LIENS, subject to NO other liens and or encumbrances, on the good leasehold title to subject property. No additional senior or secondary Financing will be permitted during the term of the loan, either secured or unsecured.

**DUE DILIGENCE:** Due Diligence, although may have been done, and yet may include but not limited to Lender completing, to its sole and absolute satisfaction, a complete further review of borrower's financials and credit, the property and surrounding market, title and insurance, Lender reserves the right to order and review an MAI certified appraisal, Phase I environmental report, Structural Engineering Report and any other reports deemed necessary by Lender in it's sole and absolute discretion, All reports will be paid by borrower.

**Guarantee:** 100% of the loan, plus ALL accrued interest, plus ALL costs of enforcement of the loan Plus any and all other sums due to Lender under the loan documents shall be guaranteed by **AMT, LLC** guarantors will be required to execute an environmental indemnity agreement in form and substance to the Lender. All of the above contractual arrangements are subject to the laws of the state of Florida and the state of California.

**DUE DILIGENCE**
**MISSING:** 1. Property, filing against the property Tax ID #00-28-24-000-0022-000A to be 1st Trust Deed filing, LLC operating Articles and in good standing, business financials and taxes (2 years)

This instrument is not valid unless a copy of such commitment intent is dated, signed by Borrower, and returned to Lender with the commitment fee on or before **3/14/2010**.

1. This Mandate is contingent upon its compliance as presently structured with all acceptable **State of California and the state of Florida** rules, regulations and statutes relative to commercial /investment financing transactions. The jurisdiction of **California** courts is acknowledged and agreed to by the Borrower. The laws of the jurisdiction shall govern all loan documents, in any way relating to this instrument, where the mortgage and/or Property is located and all applicable laws of the **United States** of **America**.

2. **Lender and/or Lenders** may, at any time, in its sole discretion, and without notice to or consent of Borrower, assign all of Lenders rights, title and

3

interest under this letter and pertinent loan documents.  Any and all
assignee or successor of Borrower or any subsequent assignee and
successor will be entitled to receive all right, title and interest of
Borrower under the **Lender and/or Lenders** and related loan documents.
Such  assignment, without material alteration may only be given to a legal
organization  operating under U.S. Laws unless approved by the Borrower.

3.          At least five (5) days prior to closing written confirmation from the title
insurer providing the specified and/or required insurance must show that it
has performed a search of all judgments, liens against the Borrower and the
general partner, if any, and the mortgaged Property.  No judgments or liens
are allowed.  Any recorded encumbrance instrument or implied
encumbrance must be fully satisfied for a funding to take place.

4.          The Parties hereto agree that this agreement and all documents, and
contracts regarding this transaction or any subsequent transaction are in
the English language.

**NOTE: There is a required Liquidated Damages fee of $5,000. due upon signing of this
Loan Commitment Intent and sent via Federal Express with delivery signatures required
or wire transfer to: DEFTCO.CORP, WELLS FARGO BANK Routing # 321270742 Account
# 2002695732, located 1121 Las Vegas Blvd., Las Vegas, NV 89104 If for any reason
DEFTCO.CORP is unable to fund or provide funding for this transaction the Liquidated
Damages fee will be refunded. If the borrower does not go forth with the funding, then the
commitment fee will be considered earned.**

THE ABOVE TERMS ARE ACCEPTABLE:

**AGREED:**     AMT, LLC & ZTF FAMILY, LP.                    **DATED:** March 12, 2010

Name & Title     Michael B. Smallwood
                             Manager

**AGREED:**     Joseph Dau, CEO,                    **DATED:** MARCH 6, 2010
                 DEFTCO.CORP