# STONE PIGMAN WALTHER WITTMANN L.L.C.

### COUNSELLORS AT LAW

546 CARONDELET STREET
NEW ORLEANS, LOUISIANA 70130-3588
(504) 581-3200
FAX (504) 581-3361
www.stonepigman.com

CARMELITE M. BERTAUT
DIRECT DIAL: (504) 593-0898
DIRECT FAX: (504) 596-0898
E-Mail: cbertaut@stonepigman.com

OUR FILE NUMBER

46,408

April 30, 2012

Honorable Sally Shushan
Magistrate Judge
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana 70130

Re: *Cameron International Corporation v. Liberty Insurance Underwriters, Inc., et al.*, USDC EDLA Case No. 12-311

Dear Judge Shushan:

Cameron International Corporation ("Cameron") previously submitted correspondence to Your Honor in February 2013 seeking the Court's intervention in connection with several discovery disputes that had emerged between the parties. We are pleased to report that, since that time, we have been able to resolve many of those disputes.[1] As depositions are set to commence in a couple of weeks, Cameron now respectfully seeks the Court's assistance to resolve two issues over which the parties have reached impasse.

Specifically, Cameron seeks the Court's intervention to order Liberty Insurance Underwriters, Inc. ("Liberty") to:

(i) produce in their entirety two non-privileged documents from its non-lawyer claims adjuster that Liberty has produced in substantially redacted form, based on the assertion of the work product doctrine, even though no legal advice or strategy is reflected therein; and

---

[1] While a handful of potential disputes concerning the completeness and format of Liberty's production and the sufficiency of Liberty's discovery responses remain pending, we are optimistic that the parties will reach agreement with respect to those issues without further burdening the Court.

1124653v.1

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE 2

April 30, 2013

    (ii) produce documents sufficient to show Liberty's policies and/or procedures that relate to claims adjusting and the handling of coverage disputes.

**Background of Work Product Claim**

On December 17, 2012, Cameron served on Liberty its First Set of Requests for Production. (*See* Exhibit A annexed hereto.) Following a two-week extension to respond, which Cameron readily granted, Liberty served its responses and objections. (*See* Exhibit B.)

Liberty initially produced only a limited number of documents on January 30, 2013. According to Liberty's privilege log for that production, Liberty withheld two documents (LIU 1602 and LIU 1603) entitled "Case Facts" (the "Roberts Documents") solely on work product grounds. These documents were prepared by a key, percipient witness, Jeffrey Roberts, who is the non-lawyer Liberty claims adjuster who was assigned to the claim at issue in this dispute.

On its privilege log, Liberty describes these documents, respectively, as "'Case Facts' – summary of and settlement negotiations between BP and Cameron and its insurers" and "'Case Facts' – discussion of internal distribution of Precautionary Large Loss Report." (*See* Exhibit C.) After we pressed for these documents, Liberty produced them on February 25, 2013 – but in substantially redacted form. (*See* Exhibit D.)

During a meet and confer on March 21, 2013, Liberty's counsel conceded that the redacted portions of these documents revealed no litigation strategy or legal impressions. Nevertheless, Liberty stands on its work product assertions and has refused to produce these documents in unredacted form.

**Background Of Procedures Manuals Production**

In addition, Cameron served two document requests, Requests for Production Nos. 13 and 15, seeking, respectively, documents "sufficient to show all of Liberty's policies and/or procedures that relate to claims adjusting" and documents "sufficient to show all of Liberty's policies and/or procedures that relate to the handling of coverage disputes."

Liberty objected to those requests on several grounds, including that they sought "information constituting the confidential proprietary business information and trade secrets of Liberty" and were "lacking in relevance."

The parties discussed Liberty's objections to these requests on March 1, 2013. During that meet and confer, Liberty agreed to produce an index of Liberty's policy manuals in the first instance, so that Cameron could determine whether it would be willing to narrow its

requests. Despite numerous follow-ups over the past two months, however, Liberty has still not provided the index. Accordingly, with depositions looming, Cameron has no choice but to seek court intervention.[2]

### Liberty Should Be Required To Produce In Their Entirety The Roberts Documents That Were Improperly Redacted On Work Product Grounds.

Liberty has improperly asserted the work product doctrine to redact potentially critical documents that (1) were authored by a key percipient witness at a key time; (2) Liberty admits contain no litigation strategy or legal impressions; and (3) are described on Liberty's own privilege log as "Case Facts." The work product doctrine does not apply to shield these documents from discovery, and the burden is on Liberty to establish otherwise. *Hodges, Grant & Kaufmann v. U.S. Government, Dept. of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985) ("The burden of establishing that a document is work product is on the party who asserts the claim[.]").

It is well established that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495 (1947). Indeed, "[t]he discovery rules are afforded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials." *Harper v. Wright*, 2012 WL 3779133, at *2 (E.D. La. Aug. 31, 2012). Accordingly, "[n]either the attorney-client privilege nor the work-product doctrine protects underlying facts from discovery." *Bross v. Chevron U.S.A. Inc.*, 2009 WL 854446, at *6 (W.D. La. Mar. 25, 2009); *see also Global Oil Tools, Inc. v. Barnhill*, 2013 WL 1344622, at *6 (E.D. La. Apr. 3, 2013) ("the work product doctrine extends only to documents and tangible things produced by or for an attorney preparing for litigation; the protection does not extend to the underlying relevant facts") (internal quotations omitted).

Instead, the work product doctrine protects against "disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative *concerning litigation*." Fed. R. Civ. P. 26(b)(3)(B) (emphasis added); *see also Kiln Underwriting Ltd. v. Jesuit High School of New Orleans*, 2008 WL 108787, at *4 (E.D. La. Jan. 9, 2008) ("work product protections only apply to materials prepared in anticipation of litigation which set 'forth the attorney's theory of the case and [its] litigation strategy'") (quoting *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975)). In short, a document is only entitled to work product protection if "the primary motivating purpose behind [its creation] was to aid in possible future litigation." *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981); *see also Bonneau v. F&S Marine, Inc.*, 2010 WL 1254552, at *2 (E.D. La. Mar.

---

[2] The first deposition in this action is of a nonparty witness on May 9 and the depositions of defendant employees are tentatively scheduled for later in May.

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE 4

April 30, 2013

25, 2010) ("If the document would have been created regardless of whether litigation was expected to ensue, the document is deemed to have been created in the ordinary course of business and not in anticipation of litigation.").

Here, Liberty has asserted the work product doctrine over documents that Liberty's counsel has conceded do not contain any legal impressions or litigation strategy, and that Liberty has itself described on its privilege log as "Case Facts." These concessions alone are sufficient to disqualify these documents from work product protection. *See Heerden v. Bd. of Supervisors of LSU*, 2011 WL 293758, at *2 n.4 (M.D. La. Jan. 27, 2011) ("The work-product doctrine is designed to guard only against the divulging of an attorney's legal impressions and strategies; it cannot be used to protect the underlying facts found within work-product.").

The Roberts Documents also appear on their face to be routine business documents. They bear the Liberty logo, standardized captions, and an express statement that they are for "Internal Use Only: Not to Be Shared Outside Liberty" – strongly suggesting that they "would have been created regardless of whether litigation was expected to ensue." *Bonneau*, 2010 WL 1254552, at *2. In fact, Liberty has produced other such "Case Facts" in this matter in their entirety, which reveal that the purpose of these documents is to memorialize the claims adjuster's investigation of and knowledge about the claim. (*See, e.g.*, Exhibit E.)

Even if the work product doctrine applied to documents prepared by Liberty's non-lawyer claims adjuster, which Cameron categorically denies, work product protection would never protect the "Case Facts" documents from disclosure. *Piatkowski v. Abdon Callais Offshore, L.L.C.*, 2000 WL 1145825, at *3 (E.D. La. Aug. 11, 2000) (rejecting work product assertion over documents prepared by claims representative, noting that "courts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies"); *PBC Mgmt., Inc. v. Roberson*, 2010 WL 4553507, at *2 (E.D. La. Oct. 28, 2010) (requiring production of "factual notes" that were prepared by a claims adjuster that "reveal no legal impressions, strategies or opinions" and "simply recite the facts").

The only two cases Liberty has cited in support of its position – *PBC Mgmt., Inc. v. Roberson*, 2010 WL 4553507 (E.D. La. Oct. 28, 2010) and *Colony Ins. Co. v. NJC Enters., L.L.C.*, No. 09-763, Order (April 1, 2013 M.D. La.) – are not to the contrary. Indeed, *PBC Management* confirms that the work product doctrine does not protect a claims adjuster's (like Roberts) "factual notes [that] reveal no legal impressions, strategies or opinions." 2010 WL 4553507, at *2. Similarly, the court in *Colony* merely determined – after conducting an *in camera* review – that certain internal communications prompted by communications *from counsel* were entitled to work product protection. *Colony*, Order at *5. Neither case holds – nor even suggests – that descriptions of the relevant facts qualify as protected work product.

1124653v.1

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE 5

April 30, 2013

According to Liberty's privilege log, and as represented during our meet and confer, that is all that is contained here.

Nevertheless, Liberty is standing on its assertions to withhold summaries of facts, prepared by a key percipient witness at a key time, and pertaining to the critical issues in this case. Indeed, Liberty describes LIU 1602 on its privilege log as "'Case Facts' – summary of and settlement negotiations between BP and Cameron and its insurers," which goes to the very heart of this dispute.

Accordingly, Cameron respectfully requests that Your Honor conduct an *in camera* review of these two documents. To the extent the Court determines that these documents are not, in fact, protected by the work product doctrine, Cameron respectfully seeks an order compelling Liberty to promptly produce them in their entirety.

### Liberty Should Be Compelled To Produce Documents Sufficient to Show Liberty's Policies and/or Procedures Regarding Claims Adjusting and the Handling of Coverage Disputes.

No basis exists to withhold Liberty's policies and procedures with respect to claims handling and coverage disputes. As this court has previously held, such documents are directly relevant to bad faith claims. *See Dudenhefer v. State Farm Fire & Cas. Co.*, No. 06-4380, 2007 WL 1521018, at *2 (E.D. La. May 23, 2007) (compelling the production of policies, rules, and procedures used in evaluating, adjusting, and denying the policyholder's claim).

Cameron therefore respectfully requests an order compelling Liberty to produce all such policy manuals. As depositions of Liberty's witnesses are set to commence in the second half of May, Cameron respectfully requests that Liberty be ordered to produce these documents by May 10, which would allow at least a week in advance of these depositions for Cameron to review them.

We are available for a conference to discuss the above matters at Your Honor's convenience.

With kind regards, I remain,

Sincerely,

*Carmelite M. Bertaut*
Carmelite M. Bertaut

CMB:bon
Enclosures

1124653v.1

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE 6

April 30, 2013

cc: Ms. Judy Barrasso (via email)
    Mr. Christopher Martin (via email)
    Mr. Mitchell Auslander (via email)
    Mr. Jeffrey Korn (via email)
    Mr. Douglas Mishkin (via email)
    Mr. Phillip A. Wittmann (via email)

1124653v.1