UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * | MDL NO. 2179 SECTION J |
| | * | JUDGE BARBIER |
| **THIS PLEADING APPLIES TO:** No. 12-311 | * * * | MAG. JUDGE SHUSHAN |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**CAMERON INTERNATIONAL CORPORATION'S REPLY TO LIBERTY'S OPPOSITION TO CAMERON'S MOTION TO COMPEL PRODUCTION OF POLICY/PROCEDURE MANUALS**

Defendant Cameron International Corporation ("Cameron") respectfully submits this reply to Defendant Liberty Insurance Underwriters Inc.'s ("Liberty") Opposition to Cameron's Motion to Compel Production of Policy/Procedure Manuals ("Opposition").

**ARGUMENT**

This discovery dispute is straightforward.  On December 17, 2012, Cameron served on Liberty the following two requests (the "Liberty Policy Requests"):

> Request No. 13.  Documents sufficient to show all of Liberty's policies and/or procedures that relate to claims adjusting.

> Request No. 15.  Documents sufficient to show all of Liberty's policies and/or procedures that relate to the handling of coverage disputes.

(*See* Cameron's Letter to Judge Shushan, dated April 30, 2013, Ex. A.)  In response, Liberty asserted blanket objections and has, to date, produced nothing.  (*Id.*, Ex. B.)

There can be no question that these two document requests seek documents that are directly relevant to Cameron's claim that Liberty acted in bad faith.  Claims manuals and procedure guides are highly relevant in a bad faith action because they may show that the insurer

*deliberately* trained personnel to minimize claims and elevate the insurer's financial interests above the interests of the insured—exactly what happened to Cameron here. For that reason, courts across the country routinely compel discovery of such documents over an insurer's objections. *See Dudenhefer v. State Farm Fire & Cas. Co.*, No. 06-4380, 2007 WL 1521018, at *2 (E.D. La. May 23, 2007) (holding that policies, rules and procedures for evaluating, adjusting, and denying plaintiff's claim in Katrina litigation were relevant and ordering production); *see also Kirschenman v. Auto-Owners Ins.*, 280 F.R.D. 474, 486-87 (D.S.D. 2012) (ordering production of claims guides and training materials in bad faith case); *Ohio Cas. Ins. Co. v. Fireman's Ins. Co.*, 2008 WL 413849, at *1 (E.D.N.C. Feb. 13, 2008) (holding that claims manuals are discoverable and relevant in cases involving bad faith); *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 645-46 (D. Kan. 2007) (same); *Brown v. Great N. Ins. Co.*, 2006 WL 2246408, at *1 (M.D. Pa. Aug. 4, 2006) (same).

Liberty does not dispute that its policies or procedures for adjusting claims (Request No. 13) or for handling coverage disputes (Request No. 15) are relevant to Cameron's bad faith claims and therefore discoverable. Instead, Liberty implies that no such documents exist. In a carefully crafted statement, Liberty asserts: "After a diligent search, Liberty has not identified any generally applicable written policies or procedures in effect between April 2010 and the filing of this suit on January 30, 2012 pertaining to Liberty Insurance Underwriters' adjustment of claims involving coverage disputes." (Opposition at 1.) That statement, with all its qualifications, is highly suspect for several reasons.

*First*, despite months of meeting and conferring, this is the very first time that Liberty has claimed that it has no documents responsive to Request Nos. 13 and 15. To the contrary, counsel for Liberty previously conceded that Liberty has responsive policy manuals

and suggested that Cameron narrow its request after reviewing an index of them. (*See, e.g.*, Email from C. Martin to J. Korn, dated Mar. 6, 2013, Ex. 1 annexed hereto (confirming Liberty's agreement to "check what portions of Liberty's manuals [it] would produce (e.g., an index) in the first instance").) Indeed, Cameron only brought this issue to the Court's attention after patiently waiting for 6 weeks for Liberty to produce the promised indices for documents it now appears to suggest do not even exist.

*Second*, Liberty's statement is a straw man. Cameron did not limit its request to "generally applicable written policies or procedures" pertaining to Liberty's "adjustment of claims involving coverage disputes"—whatever that means. Cameron asked for documents sufficient to show all of Liberty's policies and/or procedures relating to both (1) adjusting claims (Request No. 13) and (2) handling coverage disputes (Request No. 15). This includes, for example, policy and procedure manuals, guidelines, directives from management, training materials, forms used by Liberty personnel, and anything else that shows what policies and/or procedures are followed at Liberty for adjusting claims *or* handling coverage disputes. Liberty's empty representation dances around all these documents. If no responsive documents exist—which Cameron highly doubts, given the above—why not just say so in plain English?

*Third*, on even a quick search, Cameron has located several cases in which affiliates of Liberty were ordered to or agreed to produce claims-handling manuals and related documents. *See, e.g.*, *Atlas Resources, Inc. v. Liberty Mutual Ins. Co.*, 2013 WL 1277878, at *3 (D.N.M. Mar. 28, 2013) (Liberty produced a 500-page claim handling manual); *Republic Servs., Inc. v. Liberty Mutual Ins. Co.*, 2006 WL 1635655 (E.D. Ky. June 9, 2006) (Liberty produced claims handling manuals, reference guides, training and other materials related to workers' compensation claims); *Atiyeh v. Liberty Mutual Ins. Co.*, 2000 WL 1796420, at *2-3 (E.D. Pa.

Nov. 15, 2000) (Liberty agreed to produce claims' handling manuals pertaining to automobile policies). For example, in *Republic Services*, the former Director of Technical Training at Liberty's parent stated in an affidavit that:

> Liberty has developed its own customized claims handling procedures, techniques, processes, methods, systems, and policies that are embodied in Liberty's claims handling manuals and employee training materials . . . that are unique to Liberty. Liberty has made substantial monetary and time investments in the development of its claims handling materials. Liberty's claims handling materials are among Liberty's most valuable assets.

*Republic Servs*, 2000 WL 1796420, at *4. Surely Liberty is not suggesting that its excess casualty employees—who are responsible for some of the largest individual claims facing Liberty, such as Cameron's in this case—adjust claims worth tens, if not hundreds, of millions of dollars without any training or company guidance.

In short, Liberty conspicuously avoids making any real representation as to the existence of documents responsive to the Liberty Policy Requests. Accordingly, Liberty should be compelled to comply with those Requests and have the completeness of its production tested through depositions.

Finally, the three sets of documents that Liberty has selectively provided to the Court for *in camera* review should be produced. Liberty has not claimed they are privileged, nor is there any confidentiality concern in light of the protective order governing this action. The Court's time should not be wasted making basic responsiveness determinations for documents that Liberty itself has identified in response to the Liberty Policy Requests and that are reasonably calculated to lead to the discovery of admissible evidence to support Cameron's bad faith claim for the reasons discussed above.

- 5 -

| | |
|---|---|
| Dated:    May 7, 2013 | Respectfully submitted, |

   */s/ Phillip A. Wittmann*  
Phillip A. Wittmann, 13625  
   pwittmann@stonepigman.com  
Carmelite M. Bertaut, 3054  
   cbertaut@stonepigman.com  
STONE PIGMAN WALTHER WITTMANN L.L.C.  
546 Carondelet Street  
New Orleans, Louisiana  70130  
504-581-3200  
504-581-3361 (fax)

WILLKIE FARR & GALLAGHER LLP  
Mitchell J. Auslander  
Jeffrey B. Korn  
787 Seventh Avenue  
New York, New York  10019  
 (212) 728-8000  
mauslander@willkie.com

*Attorneys for Cameron International Corporation*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Cameron International Corporation's Reply to Liberty's Opposition to Cameron's Motion to Compel has been served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 7th day of May, 2013.

   */s/ Phillip A. Wittmann*