UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179<br><br>SECTION "J," DIVISION 1 |
| Applies to: | JUDGE BARBIER |
| No. 13-1800, *Louisiana Oilfield Divers, LLC v. BP Exploration & Prod. Inc., et al.* | MAGISTRATE SHUSHAN |

### AFFIDAVIT OF VALERIE LEJEUNE POOLE

STATE OF LOUISIANA

PARISH OF ORLEANS

Before me, the undersigned authority, personally came and appeared:

**VALERIE LEJEUNE POOLE**

A person of the full age of majority, who, after being duly sworn by me, Lynn E. Swanson, Notary Public, did depose that:

1.

Affiant is the Manager of Louisiana Oilfield Divers, LLC, and the following facts are within her personal knowledge.

2.

In June of 2006, Louisiana Oilfield Divers, LLC ("LOD"), a full-service subsea construction company, was created for the purpose of supplying workers and divers to companies engaged in the offshore oil and gas industry in the Gulf of Mexico.



3.

Beginning in late 2007, LOD leased a 4-Point Dive Support Vessel from Premier Offshore and provided all the personnel and equipment necessary to man the boat, the M/V Premier Explorer.

4.

The M/V Premier Explorer both met and exceeded all industry standards in its provision of commercial offshore diving and marine services to the oil and gas industry.

5.

LOD performed services including turn-key projects such as structure removal, plug and abandonment, pipeline installation and remediation, and inspection work.

6.

LOD also provided extensive engineering and project management guidance services.

7.

LOD was able to provide the oil and gas industry with rapid mobilization of both personnel and equipment through its strategically placed facilities in Venice, Louisiana.

8.

LOD showed a steady increase in revenue and gross profit from 2007 to 2009 and had a healthy customer mix.

9.

After the Deepwater Horizon exploded in the Gulf of Mexico in April 2010, mandates within the oil and gas industry that were a direct result of the Deepwater Horizon explosion caused LOD to begin to lose its customer base.

10.

LOD suffered an immediate and steep decline in revenue following the Deepwater Horizon catastrophe.

11.

LOD attempted to mitigate its losses by pursuing the contract to assist BP with the Insitu-Burn of oil in the Gulf of Mexico.

12.

After the Deepwater Horizon catastrophe, LOD was never able to re-establish its previous customer mix and by early 2011 had lost almost 95% of its customer base.

13.

LOD attempted to secure work outside the Gulf of Mexico, but those efforts were unsuccessful, and LOD was forced to close its operations on April 30, 2012.

14.

As a result of the massive financial hardships resulting from the Deepwater Horizon catastrophe, LOD's president and owner, Sam McCall Poole, III, took his own life in late 2012, leaving his wife and four year old son.

15.

LOD's claims were excluded from the Deepwater Horizon Economic and Property Damages Agreement.

16.

LOD opted out of the Economic & Property Damages Settlement Class on October 23, 2012.

17.

LOD made presentment of its claim on January 18, 2013, by emailing a copy of its claim to the BP Claims Program.

18.

On April 29, 2013, after initiation of this litigation, the BP Claims Program finally advised LOD that its claim was denied because LOD "has not demonstrated that any losses suffered were related to the Deepwater Horizon Incident."

19.

When confronted with the question of when "OPA Causation Test Cases" would be before the Court, a representative of the Plaintiff Steering Committee ("PSC") advised that its "guess is early 2014" because "the Court has to proceed to a full Phase Two and then a Phase Three penalty stage before he starts trying OPA Causation Test Cases."

20.

The Oil Pollution Act is intended to streamline federal law and "provide quick and efficient cleanup of oil spills, compensate victims of such spills, and internalize the costs of spills with the petroleum industry."

21.

Because the "test case" timeline guess set forth by the PSC does not comport with the purpose of the Oil Pollution Act, as it does not provide a "quick and efficient" mechanism to ensure compensation for LOD's crippling financial damages, LOD has requested that its attorneys endeavor to secure a quick and efficient mechanism, either in the MDL or as a separate lawsuit, to obtain compensation for its financial damages.

Executed at New Orleans, Louisiana, this 14th day of May, 2013.

_____
Valerie LeJeune Poole

Sworn to before me this 14th day of May, 2013.

_____
Notary Public

My Commission expires at death.

LYNN E. SWANSON
NOTARY PUBLIC
STATE OF LOUISIANA
My Commission is issued for Life
Bar Roll Number 22650