**Mishkin, Douglas**

**From:** Korn, Jeffrey
**Sent:** Monday, February 04, 2013 12:49 PM
**To:** 'Judy Barrasso'
**Cc:** martin@mdjwlaw.com; 'Bertaut, Carmelite'; Tozeski, Hayley
**Subject:** RE: Cameron v. LIU - LIU's discovery responses, privilege log, and document production

Thank you. Let's plan on talking at 9:30 a.m. Central on Wednesday. We can use the following dial in:

Dial-in: (866) 339-1399
Meeting #: *212-728-8842*

-----Original Message-----
From: Judy Barrasso [mailto:jbarrasso@barrassousdin.com]
Sent: Monday, February 04, 2013 12:15 PM
To: Korn, Jeffrey
Cc: martin@mdjwlaw.com
Subject: RE: Cameron v. LIU - LIU's discovery responses, privilege log, and document production

Jeff
Chris and I are available Wednesday morning before 11:30 central, Wednesday afternnon between 2-3,and Thursday afternoon from 2-4. Let me know if any of those times work for you.

-----Original Message-----
From: Korn, Jeffrey [mailto:JKorn@willkie.com]
Sent: Friday, February 01, 2013 6:21 PM
To: Catherine F. Giarrusso; pwittmann@stonepigman.com; Bertaut, Carmelite; jdavidson@stonepigman.com; Auslander, Mitchell
Cc: Judy Barrasso; Celeste Coco-Ewing; Gary Pate; martin@mdjwlaw.com; Tozeski, Hayley
Subject: RE: Cameron v. LIU - LIU's discovery responses, privilege log, and document production

Chris, Judy,

We have reviewed Liberty's responses to Cameron's document requests and interrogatories, as well as its document production and privilege log.
Please let us know your availability to meet and confer on Monday or Tuesday (before 2pm EST) of next week. Thank you.

Regards,
Jeff

-----Original Message-----
From: Catherine F. Giarrusso [mailto:cgiarrusso@barrassousdin.com]
Sent: Wednesday, January 30, 2013 5:55 PM
To: pwittmann@stonepigman.com; Bertaut, Carmelite; jdavidson@stonepigman.com; Auslander, Mitchell; Korn, Jeffrey
Cc: Judy Barrasso; Celeste Coco-Ewing; Gary Pate; martin@mdjwlaw.com
Subject: Cameron v. LIU - LIU's discovery responses, privilege log, and document production

EXHIBIT A

<<2013-01-30 LIU responses to ROG.pdf>> I <<2013-01-30 LIU responses to RFP.pdf>> am <<LIU Privilege Log.xls>> attaching LIU's responses to Cameron's First Set of Interrogatories and First Set of Requests for Production of Documents, along with a privilege log. Below is a link to LIU's document production (LIU 00001 to LIU 01539). You will receive in the mail a disk with a second copy of LIU's document production.

https://secure.logmein.com/f?00 mGSV1oheSerRIvyvRT5ATMcr4mSUDPrA0NVBLAij

Thanks very much,

Cassie Giarrusso

Catherine Fornias Giarrusso
Barrasso Usdin Kupperman Freeman & Sarver, L.L.C.
909 Poydras St., Suite 2400
New Orleans, Louisiana 70112
T: (504) 589-9767
F: (504) 589-9967
www.barrassousdin.com

This communication is from a law firm and may be privileged and confidential. It is intended to be reviewed only by the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, any review, copying, or dissemination of this email and its attachments, in whole or in part, is prohibited. This email is for informational purposes only.
The sender's name is not an electronic signature. If you have received the email in error, please notify the sender by reply email immediately and delete the email from your system. Thank you.

Disclaimer added by CodeTwo Exchange Rules
http://www.codetwo.com

************************************************************************

IMPORTANT NOTICE: This email message is intended to be received only by persons entitled to receive the confidential information it may contain.
Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.
************************************************************************

Stone Pigman Walther Wittmann L.L.C.

counsellors at law

546 CARONDELET STREET
NEW ORLEANS, LOUISIANA 70130-3588
(504) 581-3200
FAX (504) 581-3361
www.stonepigman.com

Carmelite M. Bertaut
Direct Dial: (504) 593-0898
Direct Fax: (504) 596-0898
E-mail: cbertaut@stonepigman.com

Our File Number

45,600

February 8, 2013

**VIA EMAIL**

Judy Barrasso
Barrasso Usdin Kupperman Freeman & Sarver, L.L.C.
909 Poydras Street
24th Floor
New Orleans, Louisiana 70112

Christopher W. Martin
Martin, Disiere, Jefferson & Wisdom, L.L.P.
808 Travis St.
Suite 1800
Houston, Texas 77002

Re: Cameron International Corporation v. Liberty Insurance Underwriters, Inc.

Dear Judy and Chris:

I write to follow up on the meet and confer we had on Wednesday over Liberty Insurance Underwriters, Inc.'s ("Liberty") discovery responses, document production, and privilege log. Cameron International Corporation ("Cameron") has serious concerns based on our discussion that Liberty has no intention to comply fully with its discovery obligations in this case.

During our meet and confer, it became obvious that Liberty has not searched for emails, electronic documents, and hard copy documents in the files of relevant custodians in response to the document requests served by Cameron six weeks ago. Instead, it appears Liberty has collected and produced, at most, only its claim and underwriting files—consisting of mostly copies of Cameron's own insurance policies. And, even as to the few documents you thought you had gathered and produced, your production is incomplete—Liberty's underwriting files for 2007 and 2008 are missing from its production.

No electronic searches were conducted, and no other hard copy documents were gathered. In fact, it was apparent that you have not spoken to the relevant Liberty personnel to understand what relevant emails, electronic documents, or other hard copy documents they might have. Your suggestion that this is unnecessary because Liberty generally asks its employees not to use email is odd. Leaving aside that you have an obligation to check, we know for a fact that the relevant custodians communicated about this matter over email since Cameron itself received numerous emails that were sent by or to Liberty personnel. Likewise, it is also no excuse to say that some emails may have been destroyed by Hurricane Sandy, when you do not know (because

you have not checked) whether that is the case, much less whether any affected documents reside on backup servers.

Unfortunately, given that Liberty has not yet undertaken even the most basic and fundamental steps to satisfy its discovery obligations to Cameron, Cameron has grave concerns that Liberty will not provide the documents to which it is entitled. Cameron served its discovery requests six weeks ago and, even after a two week extension, you were unable to answer simple questions about what files Liberty would and would not agree to search. Even today, in response to a request to continue our meet and confer, you did not offer anything other than the vague suggestion that "[w]e will let you know as soon as we are in a position to discuss with you."

Your approach to discovery in this case is unacceptable. The parties agreed upon a discovery schedule with a fact discovery cutoff of April 1, which has been ordered by the Court, and your strategy appears to be to string Cameron along and then give us nothing remotely close to what we need to prepare our case. Accordingly, we ask that you immediately and in no event later than March 4:

- search the files of Jeffrey Roberts, James Engel and Jessica Rogin (each of whom was involved in the adjustment of Cameron's claim), as well as Alan Mandel (who was involved in underwriting Cameron's insurance policy), and produce all non-privileged documents dated from January 1, 2006, through the present that relate to Cameron's insurance policies with Liberty, Cameron's claim for coverage to Liberty for the Deepwater Horizon Incident, and the settlement between BP and Cameron (*see* Document Request Nos. 1-2, 7-9);

- search the files of Denise Morris, the Liberty employee that you identified as the person most knowledgeable about Liberty's "other insurance" provision, and produce all non-privileged documents (regardless of date) relating to the drafting, negotiation and interpretation of Liberty's "other insurance" provision (*see* Document Request No. 10);

- search the files of the Liberty personnel most likely to have documents sufficient to show Liberty's policies and/or procedures that relate to claims adjusting and the handling of coverage disputes (*see* Document Request Nos. 13, 15);

- produce copies of the personnel files of Jeffrey Roberts, James Engel, and Jessica Rogin (Document Request No. 17); and

- obtain and produce copies from Clyde & Co., which assisted Liberty in denying Cameron's claim, of all non-privileged documents dated from January 1, 2006, through the present that relate to Cameron's insurance policies with Liberty,

Cameron's claim for coverage to Liberty for the Deepwater Horizon Incident, and the settlement between BP and Cameron (Document Request Nos. 3-5).1

In addition, Cameron needs to schedule the depositions of Jeffrey Roberts, James Engel, Jessica Rogin, Alan Mandel, and Denise Morris during the weeks of March 18 and March 25. Please let us know when during those two weeks that each of these witnesses is available for deposition in New York. Please also confirm that their documents will be produced to Cameron by March 4 so that we may adequately prepare for these depositions.

Putting aside the inadequacy of Liberty's search for responsive documents, there are several other serious defects with Liberty's discovery responses.

*First*, Liberty has asserted the work product doctrine to withhold documents that are clearly discoverable. Liberty's privilege log lists four documents prepared by Jeffrey Roberts (who does not act in a legal capacity and, tellingly, you did not know if he was a lawyer), two of which are titled "Case Facts" and two of which are referred to as "Precautionary Large Loss Report." We do not understand on what basis these highly probative documents could possibly be withheld on attorney work product grounds. In addition, you have withheld on attorney work product and attorney-client privilege grounds Mr. Roberts' "handwritten notebook." Again, Mr. Roberts' handwritten notes are clearly discoverable, except to the extent they reflect attorney-client communications that may be redacted.

*Second*, Liberty's privilege log purports to identify an untold number of documents that it is withholding on privilege grounds without providing individual log entries for each. Instead, you invoke PTO No. 14, which says that the parties to the MDL are relieved of the obligation to log communications post-April 20, 2010 "exchanged between the Producing Party and their counsel." That date was selected because it is the date of the oil spill and privileged communications after that date were deemed less probative and too numerous to identify. While we would be amenable to an agreement that communications dated after the date this lawsuit was filed need not be logged, any communications prior to that date—like communications prior to April 20, 2010 for the MDL—should be logged.

*Third*, during our discussion, you stated that communications between Liberty (or its current counsel) and Paul Koepff that took place *after* he withdrew from his representation in this matter are nevertheless privileged and will not be produced. As you know, Mr. Koepff withdrew because he had a conflict with Cameron (namely, that his firm simultaneously represented Cameron). If Mr. Koepff continued to communicate with Liberty after his withdrawal, no basis exists to withhold documents reflecting such communications. Indeed, they potentially violate Judge Barbier's order governing his withdrawal. Please immediately produce any

---

1 If any search terms are used to identify documents in the files of relevant custodians, we ask that you describe what terms and what search parameters were used to locate documents.

communications that Liberty (or you) had with Mr. Koepff (or anyone at his firm) after his withdrawal relating to Cameron or this dispute.

*Fourth*, Liberty's responses to Cameron's interrogatories omitted or obfuscated material information to which Cameron is entitled. Please immediately:

- In response to Interrogatories 1 and 2, identify the names of any lawyers that were involved in the review or assessment of Cameron's claim under the Liberty Policy for the Deepwater Horizon Incident as well as any lawyers that were involved in Liberty's decision not to provide payment in connection with that claim. The names of lawyers are not privileged.

- In response to Interrogatory 8, identify all discussions that Liberty (or its counsel) had with Transocean relating to Cameron, the Cameron Policies, or the BP Settlement. While you stated that there were no "meetings or discussions" on those topics between Liberty and BP in response to Interrogatory 7, you conspicuously limit your answer to Interrogatory 8 to "meetings."

- In response to Interrogatories 13 through 15, state when Liberty first decided that the Liberty Policy had not attached in connection with Cameron's claim under the Liberty Policy for the Deepwater Horizon Incident, and when that position was first communicated to Cameron. Your answers, framed in terms of what Liberty knew or communicated "by November 2011," do not provide the requested information.

- In response to Interrogatory 18, identify any other instances in which Liberty took the position that "Other Insurance," as defined in the Liberty Policy, existed where the source of such "Other Insurance" denied payment to Liberty's insured. This is highly probative information and we do not understand why it would be "unduly burdensome" for an insurer like Liberty to know when it has previously invoked the provision on which it relies in this case to deny coverage.

- In response to Interrogatory 19, identify any instances in which Liberty was found liable for acting in bad faith based on its handling of a claim. If there are few such instances, there should be little burden. If there are many, that would be highly probative for the jury to know that Liberty serially engages in bad faith with its insureds.

* * *

After two hours of meeting and conferring, Liberty has not committed to produce any additional document or information. Unless Liberty commits in writing by Wednesday, February 13, 2013, to provide the documents and information requested above and in the

STONE PIGMAN WALTHER WITTMANN L.L.C.
PAGE 5
FEBRUARY 8, 2013

discovery requests served by Cameron in mid-December, we will have no choice but to seek court intervention.

Very Truly Yours,

Carmelite M. Bertaut

CMB/mdk

- 5 -

1117382v1

**Siegert, Renee M.**

**Subject:**                          FW: [FS#438263] FW: Cameron

-----Original Message-----
From: Judy Barrasso [mailto:jbarrasso@barrassousdin.com]
Sent: Wednesday, February 13, 2013 10:33 AM
To: Bertaut, Carmelite
Cc: Giarrusso Catherine; martin@mdjwlaw.com
Subject: Cameron

Carmelite
As i advised last week, i have been out of the office since friday morning and out of town.I will return early afternoon.
We will respond to your letter sent sometime friday afternoon as soon as we can.

Sent from my iPad

This communication is from a law firm and may be privileged and confidential. It is intended to be reviewed only by the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, any review, copying, or dissemination of this email and its attachments, in whole or in part, is prohibited. This email is for informational purposes only. The sender's name is not an electronic signature. If you have received the email in error, please notify the sender by reply email immediately and delete the email from your system. Thank you.

Disclaimer added by CodeTwo Exchange Rules
http://www.codetwo.com

STONE PIGMAN WALTHER WITTMANN L.L.C.

COUNSELLORS AT LAW

546 CARONDELET STREET
NEW ORLEANS, LOUISIANA 70130-3588
(504) 581-3200
FAX (504) 581-3361
www.stonepigman.com

PHILLIP A. WITTMANN
DIRECT DIAL: (504) 593-0804
DIRECT FAX: (504) 596-0804
E-Mail: pwittmann@stonepigman.com

OUR FILE NUMBER

46,408

February 19, 2013

The Honorable Sally Shushan
Magistrate Judge
United States District Court
for the Eastern District of Louisiana
500 Poydras Street, Room B345
New Orleans, LA 70130

*Re:* *Cameron International Corporation v. Liberty Insurance Underwriters, Inc.*, Case No. 2:12-cv-00311

Dear Judge Shushan:

On behalf of Cameron International Corporation ("Cameron"), we write to request the Court's assistance in requiring Liberty Insurance Underwriters, Inc. ("Liberty") to comply with its discovery obligations in the above-referenced action.

With less than six weeks remaining in fact discovery, Liberty has not searched for emails, electronic documents, and hard copy documents in the files of relevant custodians in response to the document requests served by Cameron over eight weeks ago. Nor has Liberty agreed to do so. Liberty has also asserted baseless work product claims to withhold potentially critical documents created by its non-lawyer claims adjuster from its very limited document production. And Liberty has omitted material information from its interrogatory responses.

Accordingly, Cameron respectfully seeks the Court's intervention to order Liberty to:

(i) search for and produce the documents requested by Cameron, as set forth with greater specificity below;

(ii) produce the non-privileged documents from its claims adjuster that Liberty has withheld and provide a privilege log for any other documents that it claims are privileged; and

(iii) supply the missing answers to Cameron's interrogatories.

Moreover, Liberty should be ordered to satisfy the foregoing discovery obligations by March 4 so that Cameron may complete depositions during the weeks of March 18 and March 25 and finish fact discovery by the April 1 deadline.

**Background**

On December 4, 2012, Your Honor entered a Case Management and Scheduling Order ("Scheduling Order") that both Cameron and Liberty agreed should govern the conduct of discovery in this action for Liberty's bad faith breach of its $50 million insurance coverage obligations. (*See* Exhibit A annexed hereto.) Pursuant to the Scheduling Order, fact discovery commenced at that time and is set to conclude by April 1, 2013. (*Id.* ¶ G.)

On December 17, 2012, Cameron served on Liberty its First Set of Requests for Production and its First Set of Interrogatories seeking documents and information tailored to Cameron's claims and Liberty's defenses. (*See* Exhibits B and C annexed hereto.) Following a two-week extension to respond, which Cameron readily granted, Liberty served its responses and objections and made a small document production that purported to be Liberty's complete response to Cameron's document requests and interrogatories. (*See* Exhibits D and E.)

Liberty's document production, however, is far from complete. During an almost two-hour meet and confer on February 6, 2013, it became obvious that Liberty has not searched for emails, electronic documents, and hard copy documents in the files of relevant custodians. Instead, it appears Liberty has collected and produced, at most, only its hard copy claim and underwriting files—consisting of mostly copies of Cameron's own insurance policies. No electronic searches were conducted, and no other hard copy documents were gathered. In fact, it was apparent that counsel had not spoken to the relevant Liberty personnel—of which there are only about five—to understand what relevant emails, electronic documents, or other hard copy documents they might have.

Despite the parties' lengthy meet and confer, Liberty did not even commit to conduct any additional searches or produce any additional documents or information. Cameron accordingly followed up by letter on February 8 seeking assurances that Liberty would produce the documents and information that Cameron needs to prepare its case and requesting dates for the depositions of five Liberty witnesses in the second half of March. (*See* Exhibit F annexed hereto.) Liberty has not responded, saying only that counsel "have been out of the office" and would respond "as soon as we can." (*See* Exhibit G annexed hereto.) This, despite the fact that since the parties' meet and confer Liberty itself has served a battery of discovery on Cameron, Cameron's insurance broker, Transocean, and BP—much of which seeks the very same discovery that Liberty has denied Cameron.

**<u>Liberty Should Be Compelled To Search For And Produce The Documents Requested In Cameron's First Set of Requests for Production of Documents.</u>**

As discussed above, the parties agreed upon and Your Honor ordered a discovery schedule with a fact discovery cutoff of April 1. Cameron has diligently pursued the discovery from Liberty that it needs to develop its case that Liberty breached its insurance obligations and did so in bad faith. Liberty's approach, by contrast, is to string Cameron along and then provide nothing remotely close to what Cameron is entitled.

No excuse exists for Liberty's tactically motivated decision not to undertake even the most basic and fundamental steps to satisfy its discovery obligations this far into fact discovery. Regrettably, given Liberty's recalcitrance, Cameron is left with no choice but to seek the Court's intervention. Accordingly, Cameron asks that Liberty be ordered to do the following:

- Liberty must search the hard copy and electronic files of Jeffrey Roberts, James Engel and Jessica Rogin (each of whom was involved in the adjustment of Cameron's claim), as well as Alan Mandel (who was involved in underwriting Cameron's insurance policy), and produce all non-privileged documents dated from January 1, 2006, through the present that relate to Cameron's insurance policies with Liberty, Cameron's claim for coverage to Liberty for the Deepwater Horizon Incident, and the settlement between BP and Cameron. (*See* Document Request Nos. 1-2, 7-9.)

- Liberty must search the hard copy and electronic files of Denise Morris, the Liberty employee that Liberty identified as the person most knowledgeable about Liberty's "other insurance" provision—the principal basis on which Liberty denied coverage to Cameron—and produce all non-privileged documents (regardless of date) relating to the drafting, negotiation and interpretation of Liberty's "other insurance" provision. (*See* Document Request No. 10.)

- Liberty must search the hard copy and electronic files of the Liberty personnel most likely to have documents sufficient to show Liberty's policies and/or procedures that relate to claims adjusting and the handling of coverage disputes. (*See* Document Request Nos. 13, 15.) These policies and/or procedures are undeniably relevant to Cameron's bad faith claims. *See Dudenhefer v. State Farm Fire & Cas. Co.*, No. 06-4380, 2007 WL 1521018, at *2 (E.D. La. May 23, 2007) (compelling the production of policies, rules, and procedures used in evaluating, adjusting, and denying the policyholder's claim).

- Liberty must produce copies of the personnel files of Jeffrey Roberts, James Engel, and Jessica Rogin. (Document Request No. 17.) Such personnel files are relevant because "the performance evaluation records might assist [Cameron] in discovering other evidence in [Liberty's] possession that would be admissible in support of [Cameron's] claims of bad-faith." *Kessell v. Bridewell*, 872 S.W.2d 837, 842 (Tex. Ct. App. 1994). In addition, personnel files have been the subject of discovery throughout this MDL.

- Liberty must obtain and produce from Clyde & Co., which assisted Liberty in denying Cameron's claim, hard copy and electronic copies of all non-privileged documents dated from January 1, 2006, through the present that relate to Cameron's insurance policies with Liberty, Cameron's claim for coverage to Liberty for the Deepwater Horizon Incident, and the settlement between BP and Cameron. (*See* Document Request Nos. 3-5.) *See In re Papst Licensing GmbH Patent Litig.*, No. 99-MD-1298, 2001 WL 797315, at *21 (E.D. La. July 12, 2001) ("[A]ll parties are directed to produce upon request to them all non-privileged responsive documents or other items in possession of their counsel.").

It is essential that these searches be conducted, and these documents produced, promptly and no later than by March 4. On February 8, Cameron asked Liberty to schedule the depositions of Liberty's witnesses during the weeks of March 18 and March 25—*i.e.*, by the April 1 fact discovery cutoff. Liberty has not responded to this request for depositions, either. To adequately prepare for these depositions, Cameron will need the requested documents by March 4, which is one week *less time* than the three-week period before which custodial files must ordinarily be produced in this MDL.

**<u>Liberty Should Be Required To Produce Documents That Were Improperly Withheld And To Provide An Adequate Privilege Log.</u>**

Liberty has also improperly asserted the work product doctrine and/or attorney-client privilege to withhold potentially crucial documents that were neither prepared by nor communicated to counsel.

According to Liberty's privilege log, annexed hereto as Exhibit H, Liberty withheld four documents—two titled "Case Facts" and two titled "Precautionary Large Loss Reports"—that were authored by Liberty's primary adjuster of Cameron's claim, Jeffrey Roberts, whom Cameron understands is not a lawyer for Liberty. These documents are not communications and Liberty invokes only the attorney work product doctrine to withhold them. On their face, however, these documents do not appear to reflect the thoughts or impressions of any *lawyer* for which a claim of work product protection may colorably be made. No basis

exists, for example, to withhold a discussion of the "Case Facts" prepared by a key non-lawyer witness that describes the "settlement negotiations between BP and Cameron."

In addition, Liberty has also withheld Jeffrey Roberts's "handwritten notebook" on attorney work product and attorney-client privilege grounds. Cameron does not understand how anything in Mr. Roberts' handwritten notes could conceivably be considered attorney work product. That is not a valid basis to withhold the whole notebook, which likely contains highly relevant information about Liberty's plan to deny Cameron's insurance claim for pretextual reasons. To the extent Mr. Roberts's notes reflect communications with counsel, those notations may be redacted and listed on a privilege log which can be tested. Everything else should be produced.

Finally, Liberty failed to log communications between Liberty and its counsel on the basis of Pretrial Order No. 14, which states that parties to the MDL need not log communications post-dating April 20, 2010. That cutoff date was put in place when the parties to the MDL agreed what attorney-client communications would not need to be logged for purposes of the larger MDL. It should not apply here, however, where the conduct at issue occurred after April 20, 2010, and Cameron did not file its complaint until January 30, 2012. As a result, Liberty should be required to individually identify all responsive communications with counsel that predate the filing of Cameron's complaint, with one exception.

The one exception is for post-Complaint communications between Liberty (or its counsel) and Paul Koepff (or his colleagues). As Your Honor may recall, Mr. Koepff withdrew from representation of Liberty in this action as a result of a conflict issue raised by Cameron. Pursuant to an order issued by Judge Barbier, Mr. Koepff was to have no further role in representing Liberty in this matter. Nevertheless, during the parties' meet and confer, Liberty took the remarkable position that its communications *about this dispute* with Mr. Koepff *after* his withdrawal are privileged and will not be produced. While Cameron disagrees with that privilege assertion, at a minimum any such communications must be logged so that they may properly be challenged.

**Liberty Should Be Compelled To Provide Answers To Certain Of Cameron's Interrogatories.**

Liberty failed to provide discoverable information in response to four categories of interrogatories. We address each briefly in turn.

*First*, in Interrogatory Nos. 1 and 2, Cameron asked Liberty to identify all persons involved in the assessment of Cameron's insurance claim and in the decision to deny coverage. Liberty listed some individuals, but invoked the attorney-client privilege and did not identify any

lawyers. (*See* Exhibit E.) The identity of lawyers—as opposed to their advice—is not privileged and must be identified. *See Howell v. Jones*, 516 F.2d 53, 58 (5th Cir. 1975) ("The great weight of authority . . . refuses to extend the attorney-client privilege to the fact of consultation . . . including the component facts of the identity of the client and the lawyer."); *In re Papst Licensing GmbH Patent Litig.*, 2001 WL 797315, at *5-6 (compelling a party to identify the names of all persons with knowledge, including attorneys, in an interrogatory response).

*Second*, Interrogatory No. 8 requested that Liberty identify all meetings and communications with Transocean about this dispute. (*See* Exhibit E.) Liberty stated only that it was not aware of any *meetings* with Transocean, conspicuously omitting any mention of *discussions*. In contrast, in response to Interrogatory No. 7, Liberty stated that there were no "meetings or discussions" between itself (or its lawyers) and BP. Presumably, this choice of words was deliberate and there were, in fact, discussions between Liberty (or its counsel) and Transocean (or its counsel). Liberty must identify those discussions, state who they were with, when they occurred, and what was discussed.

*Third*, Interrogatory Nos. 13, 14, and 15 requested that Liberty state when it first decided that the Liberty Policy had not attached to Cameron's claim and when that position was first communicated to Cameron or others. (*See* Exhibit E.) Liberty couched each of its answers in terms of what it knew or did "[b]y November 2011." This does not answer the questions posed and Cameron is entitled to a full and complete response to those interrogatories. For example, if Liberty had decided earlier in the year to deny coverage on this basis but did not convey that position to Cameron, that would be evidence both of Liberty's waiver of this position and further evidence of its bad faith. *See In re Papst Licensing GmbH Patent Litig.*, 2001 WL 79731, at *5-6 (compelling complete answers where the answers were "incomplete and evasive").

*Fourth*, Interrogatory No. 18 asked Liberty to identify any other instance in which Liberty adopted the interpretation of the "Other Insurance" provision that it advocates in this litigation, and Interrogatory No. 19 asked Liberty to identify any instances in which Liberty was found liable for acting in bad faith. Liberty lodged a laundry-list of objections to these highly probative interrogatories—which go directly to Cameron's claims for both coverage and bad faith. Indeed, if Liberty has never before adopted the position it is taking against Cameron, that would be evidence that Liberty's basis for denying coverage here was purely pretextual. Likewise, other instances in which Liberty has been found liable for acting in bad faith may likely lead to discoverable evidence regarding Liberty's bad faith handling of Cameron's claim here. Liberty should be ordered to provide answers to these interrogatories. *See Dudenhefer*, 2007 WL 1521018, at *3 (compelling the defendant to identify other bad faith claims and judgments).

* * *

As discussed above, Liberty is not taking its discovery obligations in this action seriously. We are now well over two months into the fact discovery period, and less than six weeks before its end, and Liberty has not even begun to conduct document searches—much less review and produce responsive documents from its custodians. Without court intervention, Cameron has grave concerns that Liberty will continue with these tactics and never provide the discovery that Cameron needs to build its case. Cameron therefore respectfully requests that the Court compel Liberty to provide the discovery discussed above by March 4 so that it may conduct depositions and complete its discovery by the Court's April 1 deadline.

We are available for a conference to discuss the above matters at Your Honor's convenience.

Respectfully,

Phil Wittmann

Phillip A. Wittmann

PAW:bon
cc: Ms. Judy Y. Barrasso (via email)
Mr. Christopher Martin (via email)
Mr. Mitchell Auslander (via email)
Mr. Jeffrey Korn (via email)
MDL 2179 Liaison Counsel (via email)

Martin, Disiere, Jefferson & Wisdom L.L.P.
ATTORNEYS AT LAW
808 Travis • Suite 1800 • Houston, Texas 77002 • Phone: 713-632-1700 • Fax: 713-222-0101 • www.mdjwlaw.com

CHRISTOPHER W. MARTIN
PARTNER
Direct: 713-632-1701
e-mail: martin@mdjwlaw.com
Board Certified Labor and Employment Law
Texas Board of Legal Specializations

February 25, 2013

The Honorable Sally Shushan
Magistrate Judge
United States District Court
For the Eastern District of Louisiana
500 Poydras St., Room B345
New Orleans, Louisiana 70130

VIA E-Mail: *shushan@laed.uscourts.gov*

Re: *Cameron International Corporation v. Liberty Insurance Underwriters, Inc., a/k/a Liberty International Underwriters*, MDL No. 2179, USDC EDLA

Dear Magistrate Shushan:

I write in response to Phil Wittmann's letter to you sent after business hours on Tuesday, February 19, 2013. At the outset, please note that we disagree with Cameron's description of Liberty's efforts to respond to the incredibly overbroad and vague discovery propounded by Cameron. Despite the breadth and vagueness of Cameron's requests, Liberty produced thousands of pages of responsive documents and agreed to inquire further after discussions with Cameron's counsel clarified some of the requests. Liberty has and will continue to satisfy its discovery obligations.

Second, as we previously discussed with Cameron's counsel and represented in Supplemental Discovery Responses submitted today, February 25, 2013, Liberty has agreed to provide and/or search for much of the additional information sought by Cameron.



**I. Requests For Production of Documents**

1. As stated in Supplemental Response to Request For Production No. 1, Liberty agreed and is undertaking a search for additional electronically stored information in the computer databases, of the claims personnel, James Engel, Jessica Rogan and Jeff Roberts and underwriting personnel, Alan Mandel and Denise Morris. Liberty also produced additional documents today.

2. As stated in Supplemental Response to Request For Production No. 2, Liberty has agreed to supplement its production to include underwriting documents pertaining to the policies renewed in 2007 and 2008 which were inadvertently omitted.

3. As stated in Supplemental Responses To Request For Production No. 10, Liberty has agreed and is conducting an additional search for documents pertaining to the Policy's Other Insurers provision but as of this time advises that is unaware of any responsive documents.

4. Clyde & Company documents –

(a) As stated in Supplemental Responses To Request For Production Nos. 4 and 5, Liberty has agreed to supplement its production with any additional non-privileged documents in the files of Mr. Koepff in his capacity as a lawyer for Liberty; and

(b) Liberty is unaware of any communications between Mr. Koepff and Liberty pertaining to this matter after his withdrawal as counsel.

5. Documents "sufficient to show Liberty's policies and/or procedures that relate to claims adjusting and the handling of coverages". The request is overly broad and vague, and is subject to prior objections.

6. As stated in Supplemental Response To Request For Production No. 17, Liberty does not agree to produce copies of the personnel files of James Engel, Jessica Rogin or Jeffrey



M
DJ&W LLP
Martin, Disiere, Jefferson & Wisdom
ATTORNEYS AT LAW

Roberts. The files contain no documents pertaining to bad faith or improper claims handling, which is the only possible relevancy of Cameron's request. Nor do the personnel files reference disciplinary proceedings involving bad faith claims. Cameron has suggested that BP's production of personnel files in this litigation somehow compels Liberty likewise to produce such files. While BP's personnel files for employees actually present on the Deepwater Horizon and intimately involved in the events leading up to the spill may be relevant to the disputed issues of gross negligence and causation, among others, Cameron has not demonstrated that these individuals' personnel files have any similar relevance to the disputed issues in this suit.

**II. <u>Interrogatories</u>**

1. Liberty has supplemented its Response to Interrogatory Number 1 to include names of lawyers retained by Liberty.

2. Liberty has supplemented its Response to Interrogatory Number 8 to reflect that Liberty's counsel conferred with Transocean's counsel after the hearing on Liberty's Motion for Judgment on the Pleadings on July 13, 2012.

3. Interrogatory Numbers 13, 14, and 15 – Liberty disagrees that the responses are inadequate.

4. Liberty has supplemented its Response to Interrogatory Number 18 to reflect the following: To answer this Interrogatory completely will require a file-by-file review to determine what happened in each particular claim file. Such undertaking is unduly burdensome and invasive of the privacy of other insureds. Without undertaking such a review, Liberty answers that it is unaware of any instance, including this one, where Liberty has denied payment based on the other insurance provision.

5. Liberty has supplemented its Response to Interrogatory Number 19 to reflect the following: To answer this Interrogatory completely will require a file-by-file review to determine what happened in each particular claim file. Such undertaking is unduly burdensome



and invasive of the privacy of other insureds. Without undertaking such a review, Liberty is unaware of any instances in which Liberty Insurance Underwriters has been held liable for acting in bad faith based on its claims handling.

Liberty is supplementing its Interrogatory responses to reflect the additional information provided in (1) through (5) above.

## III. Privilege Log Issues

Liberty has supplemented its production with additional handwritten notes of Jeffrey Roberts and non-privileged portions of the Large Loss Report. The remaining documents are protected from production by the attorney-client privilege and/or work product doctrine. A revised privilege log has been provided.

Cameron contends that this suit is exempt from Pretrial Order No. 14 and that Liberty must log all communications with counsel prior to the filing of suit. Liberty contends that its communications with counsel concerning the BP settlement negotiations are *per se* privileged and need not be logged. As Cameron is aware, litigation was threatened and lawyers were retained almost immediately. Furthermore, the April 20 date provided in PTO 14 predates the filing of suit in the larger MDL, implicitly recognizing that pre-suit communications with counsel can be *per se* privileged.

We will respond to Cameron shortly concerning its requests for deposition dates.

Sincerely,

MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.

Christopher W. Martin

CWM/cg



MDJW LLP
Martin, Disiere, Jefferson & Wisdom
ATTORNEYS AT LAW

cc:

Ms. Judy Y. Barrasso — VIA E-MAIL
BARRASO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112

Phillip A. Wittmann, Esq. — VIA E-MAIL
STONE PIGMAN WALTHER WITTMANN
546 Carondelet Street
New Orleans, LA 70130-3588

Mitchell J. Auslander, Esq. — VIA E-MAIL
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019

STONE PIGMAN WALTHER WITTMANN L.L.C.
COUNSELLORS AT LAW

546 CARONDELET STREET
NEW ORLEANS, LOUISIANA 70130-3588
(504) 581-3200
FAX (504) 581-3361
www.stonepigman.com

PHILLIP A. WITTMANN
DIRECT DIAL: (504) 593-0804
DIRECT FAX: (504) 596-0804
E-Mail: pwittmann@stonepigman.com

OUR FILE NUMBER

46,408

February 27, 2013

**Via E-Mail**

Honorable Sally Shushan
Magistrate Judge
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana 70130

Re: *Cameron International Corporation v. Liberty Insurance Underwriters, Inc., et al.*, USDC EDLA Case No. 12-311

Dear Judge Shushan:

On behalf of Cameron International Corporation ("Cameron"), we write in response to the letter sent by Liberty Insurance Underwriters, Inc. ("Liberty") on February 25 regarding the parties' discovery dispute in the above-referenced action. Although Liberty's letter to the Court and its attached supplemental discovery responses resolve some of the outstanding issues raised in Cameron's letter of February 19, several significant issues remain.

As an initial matter, Cameron previously requested that Liberty be ordered to satisfy its outstanding discovery obligations by March 4 so that Cameron may complete depositions and finish fact discovery by the end of the fact discovery period, April 1. Liberty offers no response. Instead, Liberty simply says that it will conduct electronic searches and supplement its production, without any mention of when.

Under the circumstances, it is important to impose a specific deadline for Liberty to complete its document production. Liberty does not deny that it waited until most of the fact discovery period had elapsed to even begin to search for responsive documents in the files of relevant custodians. Indeed, Liberty would not commit to conduct these obvious and basic

searches until after Cameron was forced to seek court intervention. Absent a specific deadline, Cameron expects that Liberty will not produce the requested discovery until well after it is too late to use the documents for depositions prior to the close of discovery. Accordingly, Cameron respectfully submits that Liberty should be required by March 4 to complete its document production—a deadline that Liberty has not asserted it is unable to satisfy.

Timing aside, we identify and address below each of the discovery disputes remaining in light of Liberty's letter.

1. Liberty's policies and procedures. Cameron made a straightforward request that Liberty produce documents sufficient to show its policies and/or procedures for claims adjusting and handling coverage disputes. Liberty does not dispute that such policies and procedures are relevant to Cameron's bad faith claims. Nor does Liberty say that it does not have any such policies or procedures. Instead, Liberty says only that this request is "overly broad and vague." (Liberty Ltr. at 2.) It is neither. This is a clear and simple request that Liberty provide documents sufficient to show what policies and procedures it follows in adjusting claims and handling coverage disputes—such as employee manuals, departmental guidelines, checklists, forms, etc. These documents are basic in a coverage dispute and bad faith action, and are a proper subject of discovery. See, e.g., *Dudenhofer v. State Farm Fire & Cas. Co.,* 2007 WL 1521018, at *2 (E.D. La. May 23, 2007) (compelling the production of policies, rules, and procedures used in evaluating, adjusting, and denying the policyholder's claim).

2. Personnel files. Cameron has requested the personnel files of the three individuals involved in the decision to deny Cameron's claim. Liberty does not dispute that such files may lead to the discovery of admissible evidence to support Cameron's bad faith claims—for example, if they show that Liberty rewards its employees for low claims payouts, contain reprimands about claims handling practices, or otherwise shed light on Liberty's bad faith practices. Instead, Liberty's counsel asks that Cameron take their word that "the files contain no documents pertaining to bad faith or improper claims handling." With all due respect, that is not how discovery works. No legitimate reason exists to deny Cameron the narrow and potentially fertile discovery that it seeks. See, e.g., *Kessell v. Bridewell,* 872 S.W.2d 837, 842 (Tex. Ct. App. 1994) (ordering discovery of "performance evaluation records" that might assist in the discovery of admissible evidence).

3. Interrogatories 13, 14 and 15. Cameron requested that Liberty state when it first decided that the Liberty Policy had not attached to Cameron's claim and when that position was first communicated to Cameron or others. That information is important to Cameron's bad faith allegations. Rather than answer this straightforward question in a straightforward way, Liberty obfuscates by saying "[b]y November 2011." This does not answer

the interrogatories. Liberty offers no explanation in its letter for its deficient response. (Liberty Ltr. at 3 (stating only that "Liberty disagrees that the responses are inadequate.").) The events during and leading up to November 2011 are extremely important in this case and, accordingly, Cameron respectfully requests that Liberty be compelled to provide complete and non-evasive answers to its interrogatories.

4. Liberty's Bad Faith. In Interrogatory No. 19, Cameron asked Liberty to identify any instances in which Liberty was found liable for acting in bad faith. This information is plainly discoverable. See *Dudenhefer*, 2007 WL 1521018, at *3 (compelling the defendant to identify other bad faith claims and judgments). Liberty's representation that it is aware of no such cases—made "without undertaking a review" (Liberty Ltr. at 4)—is not sufficient. Liberty must undertake a review and answer the question under oath.

5. Privilege Log Issues. Liberty has reaffirmed that, based on PTO No. 14, it does not plan to identify on a privilege log any communications dated after April 20, 2010 that it is withholding from production. Cameron disagrees that privileged communications post-dating April 20, 2010 need not be logged in this dispute. The conduct at issue in this case did not occur until much later and Cameron's complaint was not filed until January 30, 2012. It is simply unreasonable to apply the April 20, 2010 cutoff date to a lawsuit that was not even contemplated, let alone filed, until almost two years later, especially when all of the facts relating to the lawsuit occurred after that date. If Liberty has its way, it will not have to identify the overwhelming majority of the documents it withholds in a case where we already know it is making aggressive assertions of privilege (e.g., withholding documents prepared by non-lawyer Jeffrey Roberts on attorney work product grounds, filing a motion to quash subpoenas to Clyde & Co. and Koepff to preclude discovery of all documents from their files, whether or not they reflect communications between Clyde & Co. and Liberty).)

In addition, although Liberty states that it has supplemented its production with the handwritten notes and Large Loss Reports prepared by non-lawyer Jeffrey Roberts, it neglects to mention that it heavily redacted the two "Case Facts" documents discussed in Cameron's February 19 letter (at 4) and has redacted the "Executive Summary" from one of its Large Loss Reports. There is no basis for redacting a discussion of "Case Facts" prepared by a non-lawyer, nor an "Executive Summary" prepared by the same non-lawyer where the rest of the document is left unredacted. See, e.g., *Kiln Underwriting Ltd. v. Jesuit High School of New Orleans*, 2008 WL 108787, at *9 (E.D. La. Jan. 9, 2008) (rejecting work product assertion where "the documents merely contain facts and not legal strategy"); *Lirette v. Delchamps Inc.*, 1996 WL 267991, at *2 (E.D. La. May 20, 1996) ("The [attorney-client] privilege protects communications, not facts."). Cameron respectfully submits that the unredacted versions of

these documents should be produced or, at a minimum, reviewed by the Court *in camera* to determine whether these are valid privilege assertions.

We regret having to involve the Court in discovery motions that seem rather basic, particularly at this busy time. However, Liberty's apparent strategy of seeking extensions and then producing little if any of the requested discovery appears to be turning into a game of hide the ball. Consequently, we have no choice but to seek the Court's intervention.

We are available for a conference to discuss the above matters at Your Honor's convenience.

Thank you for your consideration.

With kind regards, I remain,

Sincerely,

Phil Wittmann

Phillip A. Wittmann

PAW/cmb

cc: Ms. Judy Barrasso (via email)
Mr. Christopher Martin (via email)
Mr. Mitchell Auslander (via email)
Mr. Jeffrey Korn (via email)

**Mishkin, Douglas**

**From:** Korn, Jeffrey
**Sent:** Monday, March 04, 2013 2:55 PM
**To:** 'Judy Barrasso'; martin@mdjwlaw.com
**Cc:** 'Bertaut, Carmelite'; Mishkin, Douglas
**Subject:** Cameron v Liberty Discovery

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Judy, Chris,

When is a good time tomorrow or on Wednesday to continue with our discussion from Friday? As we discussed, we asked Chris to look into the following issues and get back to us:

1. What are the search parameters, if any, Liberty is using to search for electronic documents in its custodian's files? As we discussed, Liberty expects to continue rolling documents to Cameron this week and complete its productions by the end of next week.

2. What is the exact date that Liberty implemented a litigation hold for its dispute with Cameron?

3. You agreed to identify deposition dates for the Liberty witnesses in April. You mentioned that Engel, Roberts and Rogin could be scheduled for April 2 -5, but please identify which dates for which witnesses, as well as the dates for Mandel and Morris. Also, will these depositions be in New York?

4. You agreed to review the redactions in the Case Facts documents prepared by Jeffrey Roberts and determine whether some or all of their contents may be unredacted.

5. You agreed to confer about a potential new cutoff date to propose to Cameron after which privileged communications between Liberty and its counsel (ie, no third parties) would not need to be logged.

6. You agreed to check what portions of Liberty's manuals you would produce (e.g., an index) in the first instance.

Thank you.

Jeff

**Mishkin, Douglas**

**From:** Chris Martin [martin@mdjwlaw.com]
**Sent:** Wednesday, March 06, 2013 9:56 AM
**To:** Korn, Jeffrey; 'jbarrasso@barrassousdin.com'
**Cc:** 'CBertaut@stonepigman.com'; Mishkin, Douglas
**Subject:** Re: Cameron v Liberty Discovery

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

1. Documents collected for: "anything containing the word "Cameron" (caps don't matter). We also searched for any documents within any folder called "Cameron." From email server, we looked for any email where "Cameron" was in the body, subject and/or any attachment, or the email was in any folder containing the word "Cameron"."

2. First "Cameron Lit Hold" was made 10/9/11.

3. Depositions.
Roberts: 4/2
Engel: 4/3
Rogin: 4/4

Location will be provided later today, but it will be in NYC where they live and work. Dates for the other two will be provided later today.

4-6. Still working on these 3 items and will provide them as soon as I have more information.

We still need depo dates for Cameron and Marsh corp reps.

That's all I have to report. I am not sure it is necessary to talk at 9:30 CST as I don't have any other info to provide at this time, but we can certainly confer if there is anything else you want to discuss.

Chris

--------------------------
Christopher W. Martin
Martin, Disiere, Jefferson & Wisdom, L.L.P.
(Office) 713-632-1701
(Cell) 713-416-1731

---

**From**: Korn, Jeffrey [mailto:JKorn@willkie.com]
**Sent**: Monday, March 04, 2013 01:54 PM
**To**: 'Judy Barrasso' <jbarrasso@barrassousdin.com>; Chris Martin
**Cc**: 'Bertaut, Carmelite' <CBertaut@stonepigman.com>; Mishkin, Douglas <DMishkin@willkie.com>
**Subject**: Cameron v Liberty Discovery

Judy, Chris,

When is a good time tomorrow or on Wednesday to continue with our discussion from Friday? As we discussed, we asked Chris to look into the following issues and get back to us:

1. What are the search parameters, if any, Liberty is using to search for electronic documents in its custodian's files? As we discussed, Liberty expects to continue rolling documents to Cameron this week and complete its productions by the end of next week.

2. What is the exact date that Liberty implemented a litigation hold for its dispute with Cameron?

3. You agreed to identify deposition dates for the Liberty witnesses in April. You mentioned that Engel, Roberts and Rogin could be scheduled for April 2 -5, but please identify which dates for which witnesses, as well as the dates for Mandel and Morris. Also, will these depositions be in New York?

4. You agreed to review the redactions in the Case Facts documents prepared by Jeffrey Roberts and determine whether some or all of their contents may be unredacted.

5. You agreed to confer about a potential new cutoff date to propose to Cameron after which privileged communications between Liberty and its counsel (ie, no third parties) would not need to be logged.

6. You agreed to check what portions of Liberty's manuals you would produce (e.g., an index) in the first instance.

Thank you.

Jeff

******************************************************************

IMPORTANT NOTICE: This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.
******************************************************************

**Mishkin, Douglas**

---

**From:** Korn, Jeffrey
**Sent:** Friday, March 22, 2013 11:35 AM
**To:** Mishkin, Douglas; Tozeski, Hayley
**Subject:** Fw: cameron

From: Judy Barrasso [mailto:jbarrasso@barrassousdin.com]
Sent: Friday, March 22, 2013 11:31 AM
To: CBertaut@stonepigman.com <CBertaut@stonepigman.com>; Korn, Jeffrey
Cc: martin@mdjwlaw.com <martin@mdjwlaw.com>; Catherine F. Giarrusso <cgiarrusso@barrassousdin.com>; Judy Barrasso <jbarrasso@barrassousdin.com>
Subject: cameron

Carmelite and jeff

I left Carmelite a voice mail this morning explaining that late yesterday afternoon we determined that the ESI search erroneously employed an end date of 12/10 rather than 12/11. We have requested that an additional search be done promptly using the 12/11 end date. We hope to supplement our production next week with the additional documents. we apologize for the error.

With regard to the proposed scheduling order, we are fine with that. please submit to the court at your earliest convenience.

The other open issues are scheduling of depositions, checking on existence of an index of claims manual , and the question of production of cameron's settlement agreements with other insurers.

Chris is checking on those and will get with you .

judy.

This communication is from a law firm and may be privileged and confidential. It is intended to be reviewed only by the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, any review, copying, or dissemination of this email and its attachments, in whole or in part, is prohibited. This email is for informational purposes only. The sender's name is not an electronic signature. If you have received the email in error, please notify the sender by reply email immediately and delete the email from your system. Thank you.

Disclaimer added by CodeTwo Exchange Rules www.codetwo.com

STONE PIGMAN WALTHER WITTMANN L.L.C.

COUNSELLORS AT LAW

546 CARONDELET STREET
NEW ORLEANS, LOUISIANA 70130-3588
(504) 581-3200
FAX (504) 581-3361
www.stonepigman.com

OUR FILE NUMBER

CARMELITE M. BERTAUT
DIRECT DIAL: (504) 593-0898
DIRECT FAX: (504) 596-0898
E-Mail: cbertaut@stonepigman.com

46,408

April 9, 2013

**VIA FAX**

Ms. Judy Y. Barrasso
Barrasso Usdin Kupperman
Freeman & Sarver, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112

Mr. Christopher W. Martin
Martin, Disiere, Jefferson & Wisdom, L.L.P.
808 Travis, Suite 1800
Houston, Texas 77002

Re: *Cameron International Corporation v. Liberty Insurance Underwriters, Inc.*, MDL No. 2179, U.S. District Court, Eastern District of Louisiana

Dear Judy and Chris:

We are following up on a few items.

First, we understood that you expected to produce by April 3 those documents that you all had inadvertently left out of your last production. As we have still not received these documents, please let us know when you will be in a position to produce them.

Second, we would like to proceed with scheduling those Liberty employees whom we discussed. When we last spoke, you indicated that the last week in April and first week in May might be available for the depositions of Liberty's witnesses: Jeffrey Roberts, James Engel, Alan Mandel, Jessica Rogin and Denise Morris. We have not heard anything since.

Provided that Liberty makes its full production this week, we would like to schedule at least some of these depositions for the first week in May. Please let us know if that week is available and if so, for which witnesses. For those witnesses who are not available the first week in May, will you please check their availability the following week, May 6th. To facilitate the depositions, we repeat our offer to travel to New York.

We would appreciate your getting back to us with confirmation of availability and location for these depositions when you produce the documents discussed in the first paragraph.

Third, AIG's counsel has offered May 9 for a deposition of Maureen Martin. Please confirm your availability for her deposition in New York on that date.

We will also require discovery from several Bermuda insurers, including Iron Starr and Argo Re. Accordingly, we will be moving the court for letters rogatory. We trust you have no objection, but would appreciate your confirmation. We plan to file our motion by the end of this week and ask that you let us know one way or the other before then.

Fourth, we have not received a response to the letter we sent you last Monday regarding certain of Liberty's attorney work product assertions. Please let us know your position on this issue by the end of this week so that we may determine whether we have a dispute for which Court intervention is required.

Fifth, as we discussed, Mr. Koepff reported to us that he understood that Liberty is not seeking the production of copies of Cameron's settlement agreements with its other insurers. Could you please confirm that this is accurate? In the meantime, we have removed all copies of those agreements and documents reflecting the negotiations about them from Cameron's document production.

Sixth, we previously discussed whether we might be able to reach an agreement about what privileged communications between the parties and their counsel need not be logged. We are discussing this matter and should have a response to you next week.

Finally, it has been five weeks since you offered to provide at least an index of Liberty's policy manuals so that we could determine which portions of those manuals we might need. Please provide one to us by the end of this week. Otherwise, we must assume that all of Liberty's policy manuals have relevant information and no basis exists for you to continue to withhold them.

With kind regards, I remain,

Sincerely,

Carmelite

Carmelite M. Bertaut

CMB:bon
Enclosure
cc: Mr. Mitchell Auslander (via email)
Mr. Jeffrey Korn (via email)
Mr. Douglas Mishkin (via email)
Mr. Phillip A. Wittmann (via email)

STONE PIGMAN WALTHER WITTMANN L.L.C.

COUNSELLORS AT LAW

546 CARONDELET STREET
NEW ORLEANS, LOUISIANA 70130-3588
(504) 581-3200
FAX (504) 581-3361
www.stonepigman.com

OUR FILE NUMBER

CARMELITE M. BERTAUT
DIRECT DIAL: (504) 593-0898
DIRECT FAX: (504) 596-0898
E-Mail: cbertaut@stonepigman.com

46,408

April 18, 2013

**VIA FAX**

Ms. Judy Y. Barrasso
Barrasso Usdin Kupperman
Freeman & Sarver, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112

Mr. Christopher W. Martin
Martin, Disiere, Jefferson & Wisdom, L.L.P.
808 Travis, Suite 1800
Houston, Texas 77002

Re: *Cameron International Corporation v. Liberty Insurance Underwriters, Inc.*, MDL No. 2179, U.S. District Court, Eastern District of Louisiana

Dear Judy and Chris:

We write regarding a number of issues in connection with discovery in this action.

1. *Jeffrey Roberts' Summaries of "Case Facts"*

We have reviewed your letter dated April 10 concerning certain of Liberty's work product assertions. As noted in the case you cite, "work product protection only applies to materials prepared in anticipation of litigation which set 'forth the attorney's theory of the case and his litigation strategy.'" *PBC Management, Inc. v. Roberson*, 2010 WL 4553507, at *2 (E.D. La. Oct. 28, 2010) (requiring production of "factual notes [that] reveal no legal impressions, strategies or opinions" and "simply recite the facts"). Nevertheless, you continue to assert work product protection over documents that Liberty's own privilege log describes as "Case Facts."

No basis exists to withhold descriptions of underlying facts prepared by a key, percipient witness. As explained in Liberty's privilege log, these documents merely provide a "summary of settlement negotiations between BP and Cameron and its insurers" and a "discussion of internal distribution" of a loss report, rather than anyone's litigation strategy or impressions. These descriptions are in contrast to the description provided in your April 17 letter

amending Mr. Koepff's privilege log, which states that an email over which you assert work product protection concerns "legal strategies, attorneys, and attorney communications." Please let us know if Liberty intends to stand on its work product assertions with respect to LIU01602 and LIU01603. Unless we have heard by Wednesday, April 24 that you will withdraw your assertions and produce these documents in their entirety, we will seek relief from the Court.

2. *Liberty's Assertion of Work Product Protection*

Liberty's April 15 email and April 17 letter regarding Mr. Koepff's production indicate that Mr. Koepff's privilege log asserts Liberty's privileges, and Liberty stands by them. Please confirm that this is correct. If so, we note that Mr. Koepff's privilege log asserts work product protection over documents dating back to October 24, 2011. (*See* Mr. Koepff's privilege log, p. 8.) You have previously stated via letter dated March 19, 2013 that Liberty anticipated litigation with Cameron "by the beginning of December, 2011, if not before." Please provide a date certain when Liberty anticipated litigation. If that date is later than October 24, 2011, Mr. Koepff's privilege log must be amended to remove all work product assertions from before that date, and any documents withheld solely on work product grounds (such as large loss reports) must be produced.

3. *Liberty's Policy Manuals*

It has now been almost two months since you agreed to provide at least copies of the indices of Liberty's policy manuals. We had agreed to review these indices to see if there were sections of Liberty's policy manuals that need not be produced.

Given your delay in providing these indices as agreed, and with depositions coming up, we are left with no choice but to request that you produce the entirety of the policy manuals and other similar documents we have requested and to which we are clearly entitled. Unless you provide the indices by Wednesday, April 24, we will assume that you are standing on your original objections to the production of such documents and we will seek intervention from the Court.

4. *Paul Koepff's Privilege Log Entries*

We are in receipt of your letter dated April 17 regarding three of Mr. Koepff's privilege log entries. It appears that for two of them you simply added attorneys to the "Recipient(s)" field. We understand this to indicate that Mr. Koepff somehow neglected to include these individuals on his log, but please confirm your representation that those attorneys' names in fact appear on the face of the withheld documents.

5. *Insurer Meetings*

In reviewing Liberty's production, we have learned that Cameron's insurers held several insurer-only conferences, including on October 24, October 25, October 27, October 28, November 1, November 2, December 4, and December 6, 2011. Notably absent from Liberty's production, however, are notes or other documents created by Jeffrey Roberts (or any other Liberty employee) reflecting what was discussed at each of those meetings. Accordingly, we request confirmation that you have conducted a thorough search for and produced all responsive notes in Liberty's possession regarding Liberty's meetings and calls with Cameron's other insurers, including meetings and calls on the dates referenced above.

6. *Redaction Log*

As you know, Liberty's document production contains numerous documents that were produced in redacted form. Please promptly provide a log of the redacted documents contained in Liberty's production, similar to the one Cameron provided Liberty on April 12. While we are still discussing the scope of our respective privilege logs (which will identify documents withheld in their entirety), we are entitled to understand the bases for your redactions, particularly because several have been applied to communications that do not involve attorneys. (*See, e.g.*, LIU09983.) Accordingly, we request that you produce a log of the redacted documents in Liberty's production by Friday, April 26.

7. *Attachments Missing from Liberty's Production*

We noticed a number of documents in Liberty's production that appear to be missing attachments. (*See, e.g.*, LIU19631 and LIU19876.) Pursuant to Pre-Trial Order No. 16, documents and their attachments must be produced as they are maintained in their original format. Please produce all missing attachments with their parent document and all family members.

8. *Technical Defects in Liberty's Production*

Several documents in Liberty's production say "Unable to Print," followed by "Hash Code" and "Filename" information. (*See, e.g.*, LIU03913.) Please explain what these documents represent. If they are responsive documents that failed to be imaged properly, please produce them in native format so that we may view them.

STONE PIGMAN WALTHER WITTMANN L.L.C.
PAGE 4
April 19, 2013

9. *Status of Liberty's Document Production / Depositions*

Please confirm that Liberty's production is complete, subject only to additional productions contemplated by this letter or pursuant to court order, and when the witnesses we have requested are available for depositions.

With kind regards, I remain,

Sincerely,

Carmelite M. Bertaut

CMB:bon
cc: Mr. Mitchell Auslander (via email)
Mr. Jeffrey Korn (via email)
Mr. Phillip A. Wittmann (via email)

1123758v.1