# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * * | MDL NO. 2179<br><br>Section: J |
| This Document Relates To:<br>ALL CASES | * * * | Judge BARBIER<br>Magistrate Judge SHUSHAN |

*************************************************************************

**MEMORANDUM IN SUPPORT OF BP'S OBJECTIONS TO AND CROSS-APPEAL
FROM MAGISTRATE JUDGE'S ORDER REGARDING
MOTIONS OF THE U.S. AND TRANSOCEAN TO COMPEL PRODUCTION OF
PREVIOUSLY-WITHHELD DOCUMENTS PURSUANT TO THE CRIME-FRAUD
EXCEPTION TO THE ATTORNEY-CLIENT PRIVILEGE [REC. DOC. 9592]**

Two days ago, on May 15, 2013, the United States — but not Transocean — appealed Magistrate Judge Shushan's April 30, 2013 Order (Rec. Doc. 9592) (the "Order") regarding the Motion to Compel from BP Exploration & Production Inc. ("BP") the Production of Previously Withheld Documents Pursuant to the Crime-Fraud Exception to the Attorney-Client Privilege. (*See* Rec. Doc. 10002.) That appeal is without merit for reasons stated in briefing before Magistrate Judge Shushan. (*See* Attachment 1, Rec. Doc. 8715.)

In the event the Court disposes of the United States' appeal via summary affirmance of Magistrate Judge Shushan's Order (as it has disposed of many prior appeals), BP would be willing to stand on its prior submissions below. In the event the Court were not inclined to summarily affirm, BP would respectfully request an opportunity to respond to the United States' recent briefing on appeal.

This memorandum is not intended as BP's response to the United States appeal, (*see* Rec. Doc. 10002). It is instead a limited cross-appeal of Judge Shushan's conclusion that three small groups of documents are subject to the crime-fraud exception to privilege:

**(1)** two documents [Nos. 10.0 and 11.0 on the May 4 Log] related to preparation for the May 4, 2010 congressional briefing;

**(2)** seven documents related to the May 24, 2010 letter to Congressman Markey [Nos. 19.0, 20.0, 21.0, 21.1, 22.0, 23.0, and 24.0 on the May 24 Log]; and

**(3)** eleven documents related to the June 25, 2010 letter to Congressman Markey [Nos. 44.0 and 46.0 through 55.0 on the June 25 Log].

Unlike the United States' appeal, which attacks the fundamental legal framework of Magistrate Judge Shushan's Order, (Rec. Doc. 10002, at 2-3, 12-22), BP agrees with the Order's core legal holdings. BP nonetheless respectfully submits this limited cross-appeal seeking review of the application of that correct legal framework to these three small groups of documents.

## BACKGROUND

The factual background for this appeal has been set forth in briefing below and the April 30 Order, (*see* Rec. Docs. 8715, 9592), and thus may be retraced only in outline.

On January 29, 2013, BP's guilty plea was accepted by Judge Sarah Vance of the Eastern District of Louisiana. Relevant here, the plea included one count of obstruction of Congress (18 U.S.C. § 1505), which the plea allocution explained related to specific statements in May 24 and June 25, 2010 letters to Congressman Markey. (*See* Attachment 2, at 16-18.)

The following day, January 30, 2013, the United States filed — on the basis of BP's guilty plea and the accompanying allocution — a motion to compel from BP the production of certain documents previously withheld by BP as privileged, citing the crime-fraud exception to privilege. (Rec. Doc. 8417.) Specifically, the United States motion, later joined by Transocean (Rec. Doc. 8457), sought documents withheld as privilege related to the preparation of five specific BP communications: (1) certain Forms 6-K filed with the SEC on April 29, 30, and May

2

4, 2010, (2) statements by former VP Vice President David Rainey at a May 4, 2010 off-the-record, non-public congressional hearing, (3) a memorandum prepared by Mr. Rainey regarding flow rate information, which was sent to Admirals Allen and Landry on May 19, 2010, (4) a May 24, 2010 letter to Congressman Markey, and (5) a June 25, 2010 letter to Congressman Markey.

The parties fully briefed the legal issues raised in that January 30 motion to compel. (Rec. Docs. 8417, 8715, 8844, and 8868.)  Additionally, on March 5, 2013, BP submitted to Magistrate Judge Shushan for *in camera* review five document sets.  These sets each contained documents responsive to MDL search criteria that were withheld as privileged, which "related to" the preparation of the respective five communications at issue.  (Rec. Doc. 9035.)  With these documents, BP also prepared and shared with the Court and movants five corresponding document logs.  (*See* Rec. Doc. 9064, at ¶ 3.)  Although BP disagreed with the movants' argument (now properly rejected in the April 30 Order) that all of the documents provided and logged satisfied the crime-fraud standard, BP supplied these documents for *in camera* review to concretize the otherwise merely theoretical legal issues and aid the Court and parties in resolving the motion to compel.

On these logs, BP categorized documents into five mutually exclusive categories (Categories A-E) based on both Mr. Rainey's participation *and* the extent to which the document relates to matters in BP's guilty plea allocution.  (Attachment 1, Rec. Doc. 8715, at 1-2.) Documents designated as Category A were those for which Mr. Rainey is an active participant *and* that relate to the matters in BP's guilty plea allocution.  *Id.*  About these documents, BP stated that (without waiver of privilege) BP understood if the Court directed BP to produce these Category A documents at the core of BP's allocution.  *Id.*  On April 4, 2013, the Court directed

BP to produce, and on April 9, 2013, BP produced, these Category A documents. (*See* Rec. Doc. 9115, at ¶ 2.)

On April 30, 2013, Magistrate Judge Shushan ruled on the motion to compel and the remaining documents submitted. (Rec. Doc. 9592.) The Order held *inter alia* that most of the documents at issue were not subject to the crime-fraud exception to privilege. The Court did find that some documents were subject to the exception and should be produced. On May 10, BP submitted those documents to the movants for their "attorneys eyes only" inspection pursuant to Judge Shushan's Order. (Rec. Doc. 9846.) In the event the Order is affirmed by this Court, the documents will be produced as per BP's customary MDL procedures.

To facilitate resolution of the issues in the April 30 Order, Magistrate Judge Shushan set an appeal deadline for that Order while additional issues not implicated by the April 30 Order continue to be addressed. (Rec. Doc. 9592, at 1 n.1, 42 ¶ 3.) This deadline was staggered to accommodate a cross-appeal deadline with the idea that a party might perhaps not appeal the Order if other parties also declined to appeal. Accordingly, the affirmative appeal deadline for the April 30 Order was set for May 15, 2013, with any cross-appeal due May 17, 2013. (Rec. Doc. 9846.)

Two days ago, on May 15, the United States — but not Transocean or BP — filed an affirmative appeal to the April 30 Order, (Rec. Doc. 10002).

## ARGUMENT

**Applying The Correct Crime-Fraud-Exception Legal Principles, As Reflected In The April 30 Order, Three Groups Of Documents BP Was Directed To Produce Are Not Subject To The Crime-Fraud Exception.**

The legal framework of Magistrate Judge Shushan's April 30 Order is correct in its essential aspects. The Order correctly holds that documents merely "related to" the drafting of certain communications containing potential misstatements or omissions are not, without more,

4

subject to crime-fraud exception to privilege. (*See* Rec. Doc. 9592 *passim* (holding that many documents related to drafting certain communications are not subject to the crime-fraud exception).) Instead, as the Order correctly holds, a document must meet the more exacting standard of furthering a crime or fraud to be subject to the crime-fraud exception to privilege. (*Id.* at 15-16.) The Order also correctly holds that documents must be reviewed one-by-one to determine whether a particular document is in fact in furtherance of a crime or fraud. (*Id.*) And the Order correctly recognizes that, just because *prima facie* evidence exists that certain aspects of a diverse, multi-purpose communication may be legally suspect, there is no legal or logical reason to then conclude *all* privileged documents touching *all* aspects of that diverse, multi-purpose communication (most of which are completely truthful) should lose their privileged status. (*Id.*).

BP nonetheless seeks this Court's review of the application of these correct legal principles to three groups of documents that the Order directs BP to produce:

- Two documents related to preparation of the May 4, 2010 congressional briefing, (Nos. 10.0 and 11.0 on the May 4 Log),

- Seven documents related to the May 24, 2010 letter to Congressman Markey (Nos. 19.0, 20.0, 21.0, 21.1, 22.0, 23.0, and 24.0 on the May 24 Log), and

- Eleven documents related to the June 25, 2010 letter to Congressman Markey (Nos. 44.0 and 46.0 through 55.0 on the June 25 Log).

As further described below, in accordance with the Order's own correct legal principles, these three groups of documents do not satisfy the crime-fraud exception to privilege. As the Court well knows, legal issues in the April 30 ruling are reviewed *de novo* and factual determinations are reviewed for clear error. 28 U.S.C.A. § 636(b)(1); Fed. R. Civ. P. Rule 72(a).

A.  **Two Documents Regarding the May 4, 2010 Briefing Do Not Relate To Any Flow Rate Statements At Issue.**

The United States has alleged that David Rainey's statements at a May 4, 2010 closed-door congressional briefing regarding the Unified Command's official 5,000 bpd estimate were fraudulent. (Rec. Doc. 8419, at 7, 20-21.) The April 30 Order, for various reasons never articulated by the United States in its motion to compel, held that the evidence established a *prima facie* case that the statement regarding the 5,000 bpd estimate was fraudulent. (Rec. Doc. 9592, at 20.) On the basis of that ruling, the Order directed BP to produce two documents "related to" the May 4, 2010 briefing. (Rec. Doc. 9592, at 22.)

These documents, Nos. 10.0 and 11.0 from the May 4 Log, are near duplicates of the same document, with 11.0 also containing some handwritten notes. As the Court can see, these documents contain ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6

███████████████████████████████████████████████████

███████████████████████████████████████████

These two documents are not properly subject to the crime-fraud exception to the privilege.

### B. Documents Regarding *Pre*-Incident Flow Predictions Do Not Relate To Any Alleged or Admitted Misstatement Regarding *Post*-Incident Flow Estimates.

The Order directed BP to produce seven documents withheld as privileged related to collecting information for the May 24, 2010 letter to Congressman Markey. (Rec. Doc. 9592, at 27-29 (addressing Doc. Nos. 19.0, 20.0, 21.0, 21.1, 22.0, 23.0, and 24.0 on the May 24, 2010 log).) BP pled guilty in connection with certain specific statements in that May 24 letter, and BP's plea allocution sets forth the specific and narrow bases of that plea. (Attachment 2, at 16-17.) As the Court can see from reviewing this May 24 letter, (Attachment 3, at 1-5), not all statements in the May 24 letter are the subject of BP's allocution, and therefore not all privilege documents related to drafting this diverse, multi-purpose letter will be related to a crime or fraud.

The Order correctly describes the seven documents at issue — email conversations about collecting information at the direction of counsel for drafting the May 24, 2010 letter. (Rec. Doc. 9592, at 27-29.) This information concerns, as the Order correctly states, "pre-incident estimates of production and flow," which, as the Order also correctly holds, "are not the subject of the allocution." (*Id.* at 27.)

After recognizing the material in these emails is not the subject of BP's allocution, the Order should have stopped there and held that these emails, unrelated to any crime or fraud, were not subject to the crime-fraud exception to privilege. But the Order then goes on to rule that "[w]ith the active involvement of Rainey, these documents reasonably relate to the furtherance of the ongoing crime or fraud at issue." (*Id.* at 29.)

7

Here, the Order slightly but mistakenly frames the question at issue. According to the Order, the question is whether David Rainey's participation in these documents' preparation, standing alone, renders the documents subject to the crime-fraud exception — even though the documents concern matters unrelated to BP's allocation. (*Id.* at 29.) But as the April 30 Order acknowledges, a document is related to the furtherance of a crime or fraud only if it reflects *both* (i) David Rainey involvement and (ii) some subject matter that appears in BP's criminal allocution. (*See* Rec. Doc. 9592, at 26, 30, 32, 35.) Simply put, Mr. Rainey's participation is a necessary, but not a sufficient, condition for finding the crime-fraud exception applies.

This standard makes eminent sense. BP's criminal allocution states, repeatedly, that "BP, through a former vice president" engaged in certain conduct. (Attachment 2, at 16-18.) The basis of the United States' motion — BP's statements in the criminal allocution — therefore requires both Mr. Rainey's involvement *and* that the documents in question involve admitted misconduct.

Because the material in these emails does not relate to any conduct mentioned in BP's criminal allocution, they are not subject to the crime-fraud exception.

Moreover, as the Court can see from reviewing these documents, the documents all relate to gathering information about BP's pre-incident assessment of how much oil the Macondo well might produce under production conditions. After April 20, 2010, the condition of the blown-out well was far from what would be expected in a normal production environment; hence, any flow rate estimates, of necessity, would have to attempt to account for the actual, unexpected, highly unusual conditions at the wellhead. BP's pre-incident assessments thus had little to do with any misstatements or omissions regarding post-incident flow rates.

Tellingly, the United States never alleged throughout this extended briefing process (or elsewhere to our knowledge) that these pre-incident assessments provide conclusive evidence of a BP misstatement regarding post-incident flow rate estimates.

Accordingly, these seven documents also are not properly subject to the crime-fraud exception to privilege.

### C. Documents Related to the June 25, 2010 Letter Do Not Implicate Worst-Case Discharge and Therefore Are Not Subject to the Crime-Fraud Exception.

BP's allocation acknowledges that the June 25, 2010 letter to Congressman Markey contained an incorrect statement. (Attachment 2, at 17-18.) The June 25 letter claimed that a cited 100,000 bpd "worst case discharge" number differed from a previously provided 60,000 bpd "worst case discharge" number because additional pressure data had since been collected. (Attachment 4.). Per the allocation, "BP's former vice president knew that the 100,000 BOPD figure was not derived after subsequent pressure data had been obtained." (Attachment 2, at 17-18.) Accordingly, BP has accepted that otherwise privileged documents that both show David Rainey's participation *and* relate to this statement about worst case discharge should be produced. And BP has, in fact, produced documents related to the drafting of the June 25 letter that satisfy these criteria.

The April 30 Order incorrectly holds, however, that eleven emails also related to the drafting of the June 25 letter were subject to the crime-fraud exception to privilege. (Rec. Doc. 9592, at 35-37.) And while these emails do show David Rainey participated in this conversation, the discussion that appears in the emails does not relate to any misstatements that appear in BP's June 25 letter. (Nos. 44.0 and 46.0 through 55.0 on the June 25 Log.)

As an initial matter, the Court should know that, for each of the eleven emails, the emails "down the email chain," (*i.e.*, older, prior emails) have been produced through the production of

9

other documents whose status BP does not appeal. For example, the email chains from Documents 42.0, 43.0, and 45.0 (which have been produced, and which BP does not appeal) contain the majority of the substantive discussion found within the eleven disputed email communications at issue. The relevant question, therefore, is whether the "top" email (that is, the last and latest email in the relevant string) is subject to crime-fraud exception to privilege.

As the Court can see from reviewing these eleven documents, the group of emails at issue in this cross-appeal do not relate to any misstatement contained in the June 25 letter. Specifically, the eleven emails at issue have nothing to do with whether Mr. Rainey, "BP's former vice president," "knew that the 100,000 BOPD figure was not derived after subsequent pressure data had been obtained." (*See* Attachment 2, at 17-18.)

The emails instead reflect a discussion about word choice for unrelated statements in the June 25 letter, plus some discussion about whether to address in this letter a June 8, 2010 flow rate estimate of 25,000-30,000 bpd from the United States' Flow Rate Technical Group. Neither of these discussion topics, nor any other aspect of the eleven emails at issue here, furthers a crime or fraud.

Accordingly, these eleven documents also are not properly subject to the crime-fraud exception to privilege.

## CONCLUSION

For the foregoing reasons, BP requests the Court reverse in small part the April 30 Order and hold three specific groups of documents not subject to the crime-fraud exception to privilege.

Dated:  May 17, 2013                            Respectfully submitted,

/s/ Don K. Haycraft

Robert R. Gasaway                               Don K. Haycraft (Bar #14361)
Jeffrey Bossert Clark                           R. Keith Jarrett (Bar #16984)
Kirkland & Ellis LLP                            Liskow & Lewis
655 Fifteenth Street, NW                        701 Poydras Street, Suite 5000
Washington, DC 20005                            New Orleans, Louisiana 70139-5099
Telephone:  202-879-5000                        Telephone:  504-581-7979
Facsimile:  202-879-5200                        Facsimile:  504-556-4108

Robert C. "Mike" Brock                          Richard C. Godfrey, P.C.
Covington & Burling LLP                         J. Andrew Langan, P.C.
1201 Pennsylvania Avenue, NW                    Kirkland & Ellis LLP
Washington, DC 20004-2401                       300 North LaSalle Street
Telephone:  202-662-6000                        Chicago, IL 60654
Facsimile:  202-662-6291                        Telephone:  312-862-2000
                                                Facsimile:  312-862-2200

***Attorneys for BP Exploration & Production Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of May, 2013.

                                                /s/ Don K. Haycraft
                                                Don K. Haycraft