# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | * | **MDL NO. 2179** |
| *"Deepwater Horizon"* in the | * | |
| Gulf of Mexico, on April 20, 2010 | * | **SECTION:  J** |
| | * | |
| | * | |
| This document applies to: | * | **HONORABLE CARL J. BARBIER** |
| | * | |
| *All Cases* | * | **MAGISTRATE JUDGE SHUSHAN** |
| | * | |
| | * | |
| | * | |

## PLAINTIFFS' OPPOSITION TO TRANSOCEAN'S MOTIONS FOR PARTIAL JUDGMENT ON THE PLEADINGS

Plaintiffs, including, but not limited to, the formally certified and approved Economic & Property Damages Class, through undersigned Liaison Counsel, Class Counsel, and members of the Plaintiffs' Steering Committee, respectfully submit the following Opposition to: **(i)** Transocean's Motion for Partial Judgment on the Pleadings as to Punitive Damage Claims [Rec. Doc. 8105];  **(ii)** Transocean's Motion for Partial Judgment on the Pleadings as to Claims Based on Subsurface Discharge of Oil [Rec. Doc. 8106];  and **(iii)** Transocean's Motion for Partial Judgment on the Pleadings as to Claims Assigned Under Settlement Agreement [Rec. Doc. 8120]: [1]

MAY IT PLEASE THE COURT:

Initially, the plaintiffs would respectfully suggest that consideration of these motions is premature, as **(i)** the motions ultimately deal with only *quantum* issues, and do not directly bear on the liability issues to be determined by the Court in Phase One (or Phase Two),  and  **(ii)** the

---

[1] Plaintiffs further adopt and incorporate fully their OPPOSITION TO HALLIBURTON'S MOTIONS FOR PARTIAL JUDGMENT ON THE PLEADINGS.

assignment contained within the Economic & Property Damages Class Settlement Agreement is subject to a pending appeal before the U.S. Fifth Circuit.

Nevertheless, and in any event, the Transocean motions should be denied.

The central fallacies in the motion directed to Subsurface Discharge are: **(i)** the Court has already determined that General Maritime Law is only displaced by OPA with respect to Responsible Parties as to *procedural* requirements (*i.e.,* presentment);[2] and **(ii)** this Court has found, and Transocean has admitted, that Transocean is <u>not</u> an OPA Responsible Party with respect to *subsurface* discharge.[3]

The central fallacy in the motion directed to the Assigned Claims is that Transocean confuses BP's claim for contribution (for settlement payments to plaintiffs and others) with BP's claim for its own first-party direct damages incurred by BP.  In addition, Transocean's motion fails to recognize that:  **(i)** The assignee stands in the shoes of the assignor for Article III standing purposes; **(ii)** The assignment of property damage claims is generally recognized under Maritime Law;  **(iii)** The Class (or Trust), as assignee, steps into the shoes of BP, with no greater rights or remedies;  hence, Transocean presumably has the same defenses to the assigned claims that it would have to the claims as prosecuted by BP, and is in no way prejudiced by the assignment; **(iv)** The Economic & Property Damages Settlement does not purport to conclusively establish, or even directly address, the value of the assigned claims;  **(v)** The assignment does not violate the "one satisfaction" doctrine, (which is largely called into question by *McDermott v. AmClyde*), because **(a)** the compensatory damage claims of the Classmembers are satisfied by the

---

[2] *See*  B1 Order [Doc 3830], pp.26, 38;  *see also,* Order and Reasons (Feb. 22, 2012) [Doc 5809], p.15 n.20.

[3] Order and Reasons (Feb. 22, 2012) [Doc 5809], pp.14-15; Memorandum in Support of Mot for Partial Judgment on Pleadings [Doc 8106-1], p.4.

*entire* package of Class Settlement Benefits, *including* the value of the assignment, **(b)** the injuries to BP and the injuries to the Class are two completely separate and distinct injuries, **(c)** the doctrine should not be applied in the context of punitive damage exposure; and **(d)** even assuming *arguendo* some risk of "double recovery", the appropriate remedy would not be to invalidate the assignment, but to wait until the end of the litigation and apply a set-off, (which, as an affirmative defense, would be Transocean's burden to establish).

With respect to the motion directed to the recovery of Punitive Damages: **(i)** The settlement does not in any way affect the punitive damage claims of personal injury plaintiffs or of economic plaintiffs who are not members of the Settlement Class (*e.g.,* opt outs, local governments, and other excluded persons and entities);  **(ii)** This is <u>not</u> a "stand-alone" claim for Punitive Damages, where the plaintiff has either not asserted or been unable to established a cause of action against the defendant for compensatory damages;  rather, Plaintiffs have stated a General Maritime Law claim against Transocean for compensatory damages, and the Plaintiffs have indeed suffered a *quantum* of actual compensatory damages;   there is nothing in the caselaw which prohibits the *reservation* of a claim for punitive damages where the claim for compensatory damages has been settled;  **(iii)** In determining *quantum* of punitive damages, the critical question is the *harm* to the Plaintiffs for which the tortfeasor is legally responsible, (<u>not</u> who *pays* for the harm);[4]  **(iv)** There is nothing within the Settlement Agreement that would foreclose the procedural right or ability of a single plaintiff, the existing Class (Trust), or a subsequently certified litigation class from establishing what the "compensatory" element of damages are;   and **(v)** The U.S. Supreme Court in *Baker* included within the compensatory

---

[4] It is significant to note, in this regard, that under General Maritime Law a tortfeasor such as Transocean is jointly and severally liable for *all* compensatory damages to the plaintiffs, irrespective of what its percentage degree of fault might be determined to be.

damage base amount settlements that had been paid both to members of the class and to third parties who were not before the court.[5]

Finally, a class, once properly certified, is treated as its own juridical entity. The Class is not bringing a "class" claim against Transocean, but merely stepping into the shoes of BP, which has a single undivided claim that requires no "certification". A trustee, for example, is authorized to bring a claim on behalf of a trust, without formally certifying under Rule 23 a "class" of the trust beneficiaries. And, indeed, the assignment in this case can be viewed as an assignment to the Settlement Trust.[6] Any subsequent allocation and distribution between and among individual classmembers is a back-end, post-judgment process, in which the defendant has no interest.

For these reasons, and for the reasons further outlined below, Transocean's Motions for Partial Judgment on the Pleadings should be denied.

---

[5] *See* Exxon Shipping v. Baker, 554 U.S. 471, 515 (2008); *affirming, in pertinent part,* In re Exxon Valdez, 236 F.Supp.2d 1043, 1058-1060 (D. Alaska 2002).

[6] *See* SETTLEMENT AGREEMENT, Section 5.14.

# <u>Overview of Existing Claims</u>

Plaintiffs believe that it is likely helpful, at the outset, to review the sets of claims that currently exist against Transocean, in light of the BP Class Settlements and the controlling Orders of the Court:

**I.     Economic & Property Damage Settlement Class Claims**

    a.     BP's Claim for Its Own Compensatory Damages suffered by BP

              Including claims for BP's own direct "first-party" damages, such as loss of the well, loss of production, the costs of drilling the relief wells, clean-up and response costs incurred;

              Assigned to and Asserted by the Class (Trust) as a whole;  and,

              Available if Class (Trust) Establishes "Gross Negligence" [7, 8] and/or "core" Contractual Breach[9]

    b.     BP's Claim for Punitive Damages

        Assigned to and Asserted by the Class (Trust) as a whole;  and,

        Available upon Showing of "Gross Negligence"

---

[7] *See* ORDER AND REASONS [Doc 5446] (Jan. 26, 2012), at pp.13-14; *citing,* Houston Exploration v. Halliburton, 269 F.3d 528 (5th Cir. 2001); Todd Shipyards v. Turbine Service Inc, 647 F.3d 401, 411 (5th Cir. 1982); Royal Ins Co v. Southwest Marine, 194 F.3d 1009, 1016 (9th Cir. 1999); La Esperanza de PR v. Perez Cia de Puerto Rico, 124 F.3d 10, 19 (1st Cir. 1997) (a *release* is invalid as to gross negligence, reckless conduct and/or intentional acts).

[8] Plaintiffs note that, unlike the claim for punitive damages, which arguably needs to satisfy the *P&E Boat Rentals* showing of knowledge, participation or ratification by management of the company, Plaintiffs submit that any grossly negligent or reckless conduct (even if only "operational") is sufficient to invalidate the release as a matter of public policy.

[9] *See* ORDER AND REASONS [Doc 5446] (Jan. 26, 2012), at pp.25, 29 (Court defers ruling on whether a "core" breach of the drilling contract that materially increased the risk to BP might invalidate release and/or indemnity).

    c.     Classmembers' Expressly Reserved Punitive Damage Claims [10]

          Asserted by Classmembers with *Robins Dry Dock* Standing Individually; and,

          Available if Classmember Establishes "Gross Negligence"

## II.    Private Economic Opt Out and Excluded Claims

          For Compensatory and Punitive Damages;

          Available to Plaintiffs with *Robins Dry Dock* Standing;

          Compensatory Damages Indemnified by BP; [11] and,

          Punitive Damages Available upon Showing of "Gross Negligence"

## III.    Personal Injury Claims

    a.     Medical Benefits Classmembers' Expressly Reserved Claims for Punitives

    b.     Personal Injury Claims of Opt Outs and/or People Not Covered by Class

              For Compensatory and Punitive Damages;

              Compensatory Damages Indemnified by BP;  and,

              Punitive Damages Available upon Proof of "Gross Negligence"

## IV.    Local Government Claims

          For Compensatory and Punitive Damages;

          Available to Government Entities with *Robins Dry Dock* Standing;

          Compensatory Damages Indemnified by BP;  and,

          Punitive Damages Available upon Proof of "Gross Negligence"

## V.    State Claims

---

[10] *See* B1 ORDER [Doc 3830], pp.26-27, 38 (OPA does not displace punitive damage claims); ORDER AND REASONS [Doc 5446] (Jan. 26, 2012), at pp.19, 29 (indemnity does not apply to punitive damage claims).

[11] *See generally,* ORDER AND REASONS [Doc 5446] (Jan. 26, 2012), at pp.18, 29; *but see:* pp.25, 29 (re potential "core" contractual breach).

**The Assignment is Valid**

It is well-settled that the assignee stands in the shoes of the assignor for Article III standing purposes.  The fact that BP no longer has an interest in the outcome does not "moot" the case and controversy. Sprint Communications v. APCC Services, 554 U.S. 269, 274-285 (2008).

In addition, the assignment of property damage claims is recognized under Maritime Law. *See generally,* American Commercial Lines, Inc. v. Valley Line Co., 529 F.2d 921, 925 (8th Cir. 1976); Moran Towing & Transportation v. Conners-Standard Marine Corp., 316 F.2d 811, 811 (2d Cir. 1963); Ozanic v. United States, 188 F.2d 228, 231 (2d Cir. 1951); The Mandu, 102 F.2d 459, 461-462 (2d Cir. 1939); Salaky v. Atlas Tank Processing Corp., 120 F.Supp. 225, 227 (E.D. N.Y. 1953), *rev'd on other grounds*, 208 F.2d 174 (2d Cir. 1953).  *See also,* Sprint Communications, supra, 554 U.S. at 283; *citing,* Murdock v. The Emma Graham, 17 F. Cas. 1012, 1013, F. Cas. No. 9, 940 (S.D. Ohio 1878), *and,* The Rupert City, 213 F. 263, 266-267 (W.D. Wash. 1914); *see also,* Ondimar Transportes Maritimos v. Beatty Street Properties, 555 F.3d 184, 187-188 (5th Cir. 2009) (assignment of property damage tort claims are generally permitted).

The Class (Trust), as assignee, steps into the shoes of BP, with no greater rights or remedies.  Transocean presumably has the same defenses to the assigned claims that it would have to the claims as prosecuted by BP.  Therefore, Transocean is in no way prejudiced by the assignment.[12]

---

[12] Halliburton, in its motions, relies heavily upon the contractual Anti-Assignment and Consequential Damages provisions.  BP, however, does not purport to assign the *contract*.  Nor does the Plaintiff Class seek to "stand in the shoes of" BP in order to compel Transocean to perform drilling services.  Yet, even assuming *arguendo* that traditional breach of contract damage claims could not be assigned, (which is denied), the Anti-Assignment provision would not preclude the assignment of extra-contractual (tort, statutory) claims.  With respect to the Consequential Damages provisions, the waiver or release of consequential damages would be invalidated by gross negligence, just as the waiver or release of other damages, as a matter of public policy.

The Economic & Property Damages Settlement does not purport to conclusively establish, or even directly address, the value of the assigned claims. The Class (Trust), as assignee, must presumably establish BP's entitlement to, and *quantum* of, damages recoverable from Transocean.[13]

The assignment does not violate the "one satisfaction" doctrine – which doctrine is largely called into question by *McDermott v. AmClyde*[14] – because: **(i)** the compensatory damage claims of the Classmembers are satisfied by the *entire* package of Class Settlement Benefits, *including* the value of the assignment; **(ii)** the injuries to BP and the injuries to the Class are two completely separate and distinct injuries;[15] **(iii)** the "one satisfaction" doctrine should not be applied to protect the tortfeasor in the situation where punitive damage exposure, as well as liability for compensatory damages, is justified; and **(iv)** even assuming *arguendo* some risk of "double recovery", the appropriate remedy would not be to invalidate the assignment, but to wait

---

[13] As noted, Transocean's Motions seem directed to a contribution or subrogation type claim for the recovery of settlement payments to plaintiffs made by BP. However, the assignment primarily relates to BP's own "first-party" damages, such as loss of the well, loss of production, the costs of drilling the relief wells, clean-up and response costs directly incurred by BP, etc. Accordingly, there is no "double recovery".

[14] *See* <u>McDermott, Inc. v. AmClyde</u>, 511 U.S. 202, 218-220 (1994) ("In the 19th and early 20th centuries, the 'one satisfaction rule' barred a plaintiff from litigating against one joint tortfeasor, if he had settled with and released another. This version of the one satisfaction rule has been thoroughly repudiated.... The law contains no rigid rule against overcompensation. Several doctrines, such as the collateral benefits rule, recognize that making tortfeasors pay for the damage they cause can be more important than preventing overcompensation.... We must recognize that settlements frequently result in the plaintiff's getting more than he would have been entitled to at trial. Because settlement amounts are based on rough estimates of liability, anticipated savings in litigation costs, and a host of other factors, they will rarely match exactly the amounts a trier of fact would have set. It seems to us that a plaintiff's good fortune in striking a favorable bargain with one defendant gives other defendants no claim to pay less than their proportionate share of the total loss").

[15] *See, e.g.,* <u>Hess Oil Virgin Islands Corp v. UOP</u>, 861 F.2d 1197, 1208 (10th Cir. 1988) (the single satisfaction rule is applicable "only where the defendant's conduct resulted in a single injury"); *citing,* RESTATEMENT (SECOND) OF TORTS (1979) §885(3), comments e & f; *see also,* <u>Kepner-Tregoe v. Vroom</u>, 186 F.3d 283, 289 (2d Cir. 1999); <u>Christinson v. Big Stone County Co-op</u>, 13 F.3d 1178, 1181 (8th Cir. 1994); <u>United States v. Touche Ross & Co</u>, 854 F.2d 1223, 1236 (10th Cir. 1988).

until the end of the litigation and apply a set-off,[16] (which, as an affirmative defense, would be Transocean's burden to establish).

The present situation, in this regard, is distinguishable from cases in which the court was concerned that the assignment would circumvent *McDermott v. AmClyde's* general prohibition on contribution claims between and among co-defendants.[17]  In this case, by contrast:

i.      The assignor is the defendant, (not the settling plaintiff).  The Class is primarily seeking to enforce BP's claim for BP's own direct damages, (as opposed to contribution or subrogation or "indemnity" for damages incurred by Plaintiffs); and,

ii.     The settlement with BP falls under an exception to the *AmClyde* rule, in that BP has obtained from the settling class members what is effectively a full release of all potential tortfeasors with respect to compensatory damages.[18]  Specifically, the Assignment and Release provisions within the Economic & Property Damages

---

[16] *See* <u>Christinson v. Big Stone County Co-op</u>, 13 F.3d 1178, 1181 (8th Cir. 1994).

[17] *See, e.g.,* <u>Lexington Ins Co v. S.H.R.M. Catering Services</u>, 567 F.3d 182, 185-186 (5th Cir. 2009) ("we recently addressed the effect *McDermott* on a settling tortfeasor's suing a non-settling tortfeasor for property damage on the basis of an assignment of the property damage claim from the injured party in the settlement. We noted that the assignment would be invalid 'if the assignment of property damage tort claims is either (a) generally prohibited by law or (b) generally permitted by law but barred by application of *McDermott*....  We declined to decide 'whether the assignment of property damage tort claims are generally prohibited,' although we observed that it appeared 'most state courts ... permit such assignments.'  We went on to hold, however, that even if the assignment of property damage tort claims were generally permitted, 'there are good reasons for imposing certain limitations in the context of *McDermott's* proportionate fault framework....  We adopt the rule for the general maritime law that the assignment of tort claims **from the injured party to one tortfeasor permitting the settling defendant to proceed against a co-tortfeasor** is invalid'") (emphasis supplied); *citing*, <u>Ondimar Transportes Maritimos v. Beatty Street Properties</u>, 555 F.3d 184, 188-189 (5th Cir. 2009).  (The assignment in *Lexington* was further called into question because it involved unliquidated personal injury claims. *See* <u>Lexington</u>, 567 F.3d at 185.)

[18] The Fifth Circuit, for example, in a case decided subsequent to the *Ondimar* and *Lexington* decisions, recognized an exception to the general prohibition of contribution actions by settling tortfeasors against non-settling co-defendants. *See* <u>Combo Maritime v. U.S. United Bulk Terminal</u>, 615 F.3d 599, 603-604 (5th Cir. 2010) ("If ... the settling defendant discharges the plaintiff's entire claim as evidenced by a total release of all potential joint tortfeasors, then the settling defendant has met the requirements for a contribution claim.  Because he is responsible for only his portion of the damages, and he paid the entire amount, he has paid more than he owes.  And, because he has obtained a release of all other potential joint tortfeasors, he has extinguished the plaintiff's claim.  Therefore, he may bring claim for contribution against the non-settling potential tortfeasors").  While there is language in *Combo* suggesting that an assignment from the plaintiff to the settling defendant might be "invalid" under *Ondimar* and *Lexington,* **(i)** such language can fairly be characterized as *dicta,* and **(ii)** is distinguishable on the basis that the assignor, as in *Ondimar* and *Lexington,* was the **plaintiff**, in favor of the settling defendant, in furtherance of a "contribution" type claim.

Settlement secure for Transocean what is effectively a "release" of all such compensatory damages claims.[19]

This situation is also distinguishable on policy grounds:  It has been noted that the assignment by a settling plaintiff to a tortfeasor might confuse or complicate the litigation and potentially frustrate settlement.[20]  In this case, by contrast, the settling tortfeasor is assigning its own damage claims against the same co-defendant that plaintiffs are already pursuing, thereby simplifying the litigation and promoting final resolution of the claims.

## Transocean Is Legally Responsible for the Plaintiffs' Compensatory Damages, even with Respect to Subsurface Discharge.

First, it should be noted that Transocean is responsible for compensatory damages to personal injury plaintiffs under General Maritime Law.

Transocean is also responsible for compensatory damages to economic plaintiffs who have *Robins Dry Dock* standing.  Contrary to the arguments set forth in Transocean's motion for partial dismissal relating to subsurface discharge: **(i)** The Court has held that General Maritime Law is only displaced by OPA with respect to Responsible Parties as to *procedural* requirements

---

[19] *See* SETTLEMENT AGREEMENT, Exhibit 21, Sections 1.1.2.2 and 1.1.2.3, *and,* SETTLEMENT AGREEMENT, Exhibit 26, Paragraphs 11(b) and (c).

[20] *See, e.g.,* Lexington, 567 F.3d at 185-186; Ondimar, 555 F.3d at 189 ("Permitting assignment [of plaintiff's rights] to a co-tortfeasor would tend to encourage partial settlement and would not encourage total settlement of claims – an important goal of [*AmClyde*] .... Permitting such assignments will lead to costlier, longer, and more confusing suits, all of which would undermine [*AmClyde*'s] goal of promoting judicial economy"); *citing,* McDermott, Inc. v. AmClyde, 511 U.S. 202, 211 (1994) ("In choosing among the ALI's three alternatives, three considerations are paramount: consistency with the proportionate fault approach of *United States v. Reliable Transfer,* promotion of settlement, and judicial economy.  ALI Option 1, *pro tanto* setoff with right of contribution against the settling defendant, is clearly inferior to the other two, because it discourages settlement and leads to unnecessary ancillary litigation").

(*i.e.,* presentment);[21] and **(ii)** The Court has found, and Transocean has in fact conceded, that Transocean is <u>not</u> an OPA Responsible Party with respect to *subsurface* discharge.[22]

While Transocean may be effectively relieved of its financial responsibility by virtue of the indemnity provisions found within the Drilling Contract, Transocean is nevertheless liable for compensatory damages under General Maritime Law to many Plaintiffs in the first instance.

Transocean is also responsible, under OPA's scheme, for contribution with respect to the compensatory damages paid to plaintiffs. *See* 33 U.S.C. §§2709 and 2715(a).  Again, Transocean is only effectively relieved of this financial responsibility by virtue of the contractual indemnity agreement; *not* as a matter of law.

Moreover, with respect to the assigned BP compensatory damage claim, this Court has held that *Houston Exploration v. Halliburton* "makes clear that [the defendant tortfeasor's] gross negligence will invalidate a release." *See* ORDER AND REASONS [Doc 5446] (Jan. 26, 2012), at pp.13-14; *citing,* <u>Houston Exploration v. Halliburton</u>, 269 F.3d 528 (5th Cir. 2001); <u>Todd Shipyards v. Turbine Service Inc</u>, 647 F.3d 401, 411 (5th Cir. 1982); <u>Royal Ins Co v. Southwest Marine</u>, 194 F.3d 1009,  1016  (9th Cir. 1999);   <u>La Esperanza de PR v. Perez Cia de Puerto Rico,</u>

---

[21] *See*  B1 ORDER [Doc 3830], p.38 ("As to Responsible Parties, OPA does displace general maritime law claims against Responsible Parties, **but *only* with regard to *procedure* (i.e., OPA's presentment requirements)**") (emphasis supplied); *see also,* B1 ORDER, at p.26 ("Claimants' maritime causes of action against a Responsible Party are displaced by OPA, **such that all claims against a Responsible Party for damages covered by OPA must comply with OPA's presentment procedure**") (emphasis supplied); *see also,* ORDER AND REASONS (Feb. 22, 2012) [Doc 5809], p.15 n.20 ("**OPA's scheme merely establishes who will be liable for oil pollution under the Act; it expressly states that it does not affect maritime law or jurisdiction.** Therefore, nothing in this Order affects the Court's previous holdings regarding admiralty jurisdiction, etc") (emphasis supplied).

[22] ORDER AND REASONS (Feb. 22, 2012) [Doc 5809]. pp.14-15 (Transocean "is not a responsible party under OPA for the discharge that occurred below the surface of the water"); MEMORANDUM IN SUPPORT OF MOT FOR PARTIAL JUDGMENT ON PLEADINGS [Doc 8106-1], p.4 ("Transocean is ***not*** a responsible party for discharge below the surface of the water").

124 F.3d 10, 19 (1st Cir. 1997).[23]   Hence, a showing of gross negligence would invalidate the drilling contract's release provisions with respect to BP's first-party compensatory damage claims.[24]

### The Economic & Property Damages Settlement Preserves Punitive Damage Claims

First, it is important to recognize that the settlement does not in any way affect the punitive damage claims of personal injury plaintiffs or of economic plaintiffs who are not members of the Class  (*e.g.,* opt outs, local governments, other excluded persons and entities).  In addition, the Settlement vests the Class as a whole with BP's punitive damage claim against Transocean, (which is not released nor indemnified under the Drilling Contract).

Yet, even with respect to the reserved claims of settling classmembers, these are *not* "stand-alone" claims for punitive damages, where the plaintiff has either not asserted or been unable to established a cause of action against the defendant for compensatory damages.[25]

---

[23] *See also,* PROSSER & KEETON ON TORTS (5th ed. 1984) at 484 ("[Exculpatory] agreements generally are not construed to cover the more extreme forms of negligence, described as willful, wanton, reckless, or gross, or to any conduct which constitutes an intentional tort"); 6A CORBIN ON CONTRACTS (1962 ed.) §1472  ("It is generally held that those who are not engaged in public service may properly bargain against liability for harm caused by their ordinary negligence in performance of contractual duty; but such an exemption is always invalid if it applies to harm willfully inflicted or caused by gross or wanton negligence"); Robertson & Sturley, *Recent Developments in Admiralty and Maritime Law at the National Level and in the Fifth and Eleventh Circuits,* 36 Tul. Mar. L.J. 425, 454-455 (2012) ("it is ordinarily against public policy to try to contract out of responsibility for conduct any more blameworthy than mere negligence"); *see also,* Engerrand, *Indemnity for Gross Negligence in Maritime Oilfield Contracts,* 10 LOY. MAR. L.J. 319, 356 & n.200 (2012) (explaining and upholding "the vital distinction between exculpation and indemnification").

[24] Plaintiffs note, in this respect, that unlike the claim for punitive damages, which arguably needs to satisfy the *P&E Boat Rentals* showing of knowledge, participation or ratification by the company's management, Plaintiffs submit that any grossly negligent or reckless conduct (even if only "operational") is sufficient to invalidate the release as a matter of public policy.

[25] *See, e.g.,* Mullins v. TestAmerica Inc, 564 F.3d 386, 417 (5th Cir. 2009) (punitive damages could not be awarded where compensatory damages were not "requested or awarded"); Lanier v. Sallas, 777 F.2d 321, 325 (5th Cir. 1985) (under Texas law, punitive damages are limited to cases where "actual compensatory damages are found"); Alcorn County MS v. U.S. Interstate Supplies, 731 F.2d 1160, 1169-1171 (5th Cir. 1984) (under Mississippi law, a punitive damage claim was not available where the underlying claim was in equity); Vidrine v. Enger, 752 F.2d 107, 110 (5th Cir. 1984) (a punitive damage claim could not proceed under Mississippi law where the underlying cause of action was barred by the statute of limitations); Virgilio v. City of New York, 407 F.3d 105,

Rather, as set forth above, Plaintiffs have stated a General Maritime Law claim against Transocean for compensatory damages, and the Plaintiffs have indeed suffered (and can establish, to the extent not already established by the settlement) a *quantum* of actual compensatory damages.

There is nothing in the caselaw which prohibits the *reservation* of a claim for punitive damages where the claim for compensatory damages has been settled. *See* Exxon Shipping v. Baker, 554 U.S. 471, 515 (2008), *affirming, in relevant part,* In re Exxon Valdez, 236 F.Supp.2d 1043, 1058-1060 (D. Alaska 2002); *see also,* Sea Hawk Seafoods, Inc. v. Exxon Corp., 246 F.3d 676 (9th Cir. 2000) ("There is no merit in Plaintiff's argument that punitive damages are unavailable, as a matter of law, to persons who have not asserted compensatory damage claims through an independent lawsuit"); *see also, e.g.,* Wussow v. Commercial Mechanisms, Inc., 97 Wis. 2d 136, 293 N.W.2d 897 (1980) (holding that plaintiff was free to pursue punitive damages claim after settling claim his compensatory damages claim); Burns v. Milwaukee Mutual Insurance Company, 360 N.W.2d 61, at 65, FN 4 (Wis. App. 1984) ("a tort victim may settle a claim for compensatory damages and reserve rights against the tortfeasor for punitive damages"); Stephenson v. Collins, 216 So.2d 433 (Fla. 1968) (specifically rejecting the contention that "the parties' compromise and settlement of compensatory damages automatically terminated any right to proceed further for punitive damages arising out of the same cause of action"); *accord,* Howell-Demarest v. State Farm, 673 So.2d 526 (Fla. 4th Dist. 1996).   *See also,* Abner v. Kansas City Southern Railroad, 513 F.3d 154, 159 (5th Cir. 2008) ("there is no established federal

---

117-118 (2d Cir. 2005) (plaintiff could not pursue claim for punitives where cause of action had been extinguished by "statutorily imposed waiver"); Thrall Car Manufacturing v. Lindquist, 495 N.E.2d 1132 (Ill. App. Ct. 1986) (where plaintiff signed a satisfaction of judgment and therefore had no cause of action under Illinois law against the remaining defendant, a punitive damage claim could not be pursued).

common law rule that precludes the award of punitive damages in the absence of an award of compensatory damages").

**The Cases Cited by Transocean are Inapposite**

None of the cases cited by Transocean involved the settlement of a compensatory damage claim with a reservation by Plaintiffs to pursue punitive damages.  Indeed, most of the cases Transocean cites stand for a proposition that is actually supportive of Plaintiffs' right to pursue punitive damages from Transocean:  in order to pursue a punitive damages claim, a plaintiff must have sustained actual or compensatory damages caused by the conduct of the defendant from whom punitive damages are sought, and have a cause of action to recover said damages. Plaintiffs clearly meet this test.

In *Alcorn County, Miss. v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160 (5th Cir. 1984), the plaintiff sued under Mississippi law for rescission of a contract to provide office supplies, demanding a return of amounts paid,[26] plus punitive damages under Mississippi law and treble damages under the Federal RICO statute. The district court granted a directed verdict to the defendant denying the plaintiff's claims for punitive and treble damages. *Id.* at 1162. The Fifth Circuit reversed as to RICO damages and affirmed as to state-law punitive damages. The Court explained its affirmance of the dismissal of the punitive-damages claim as follows:

> Alcorn County has never in this litigation pressed a claim for compensatory or actual damages under state law..... [Its] claim is a request for the equitable remedy of rescission.... The county makes no request for actual or punitive damages with respect to its claim for reimbursement....
>
> Applying these rules to Alcorn County's request for punitive damages in this case, we must affirm the verdict of the district court. The county chose, through its complaint, to seek an equitable rmedy of cancellation or rescission

---

[26]   Under Mississippi law, the return-of-amounts paid claim was part of the equitable remedy of rescission; it was not a damages demand.  *See* 731 F.2d at 1169-1171.

rather than the legal remedy of contract damages. Neither did the county seek actual damages based upon tort law.... **Had the county chosen to plead and present a contract or tort claim against the defendants in this cae, the issue of punitive damages might have been appropriately submitted to the jury.**

731 F.2d at 1179-1171 (citations omitted; emphasis supplied).   *Alcorn* supports Plaintiffs' position. In live and plausible pleadings, Plaintiffs in the present case claim they sustained significant actual damages caused by the gross, willful and reckless conduct of Transocean.[27] Nothing stated in or implied by the settlement with BP alters Plaintiffs' allegations of Transocean's misconduct or the actual damages that it caused.

In *Neal v. Barisich, Inc.*, 707 F.Supp. 862 (E.D. La. 1989), the parents of a seaman sued for his wrongful death in inland waters. The court held that because punitive damages are non-pecuniary, they (like loss of society damages) were not recoverable as a matter of law. *Id.* at 873. *Neal* has nothing whatsoever to do with the present case. For one thing, the Supreme Court's recent decision in *Atlantic Sounding Co. v. Townsend*, 129 S.Ct. 2561 (2009), has called into question the use of the pecuniary/non-pecuniary distinction in the punitive damages context. Of more immediate importance, the present case is a maritime oil pollution case where punitive damages are clearly allowed. *Exxon Shipping Co. v. Baker, supra*; B1 ORDER [Doc 3830], pp.26-27, 38.  Cases dealing with the fatal-injury remedies of seamen are not controlling.[28]

---

[27] For purposes of the present motion, these allegations should be accepted as true. St. Paul Ins. of Bellaire v. AFIA Worldwide Ins. Co., 937 F.2d 274, 279 (5th Cir. 1991).

[28] Because plaintiffs will be able to establish substantial actual damages caused by Transocean's fault, *Neal* and other cases cited by Transocean for the proposition that one cannot recover punitive damages without demonstrating compensatory damages, are inapplicable. It should be noted, however, that there is a substantial body of law allowing punitive damages when there are no, or only nominal, actual damages that can be shown. See, *e.g.*, Abner v. Kansas City Southern Railroad, 513 F.3d 154, 160 (5th Cir. 2008); Sea Hawk, Inc. v. Exxon Corp., 246 F.3d 676 (9th Cir. 2000); Ackerly v. Credit Bureau of Sheridan, Inc., 385 F.Supp. 658, 661 (D. Wyo. 1974); Scalise v. National Utility Service, 120 F.2d 938, 941 (5th Cir 1941) (Florida law); Wardman-Justice Motors v. Petrie, 39 F.2d 512, 516 (D.C. Cir. 1930); Edwards v. Nulsen, 347 Mo. 1077, 1086; 152 S.W.2d 28, 32-33 (Mo. 1941); Crystal Dome Oil and Gas Co. v. Savic, 51 Idaho 409, 409; 6 P.2d 155, 156 (1931); Barber v. Hohl, 40 N.J.Super 526, 534-535; 123 A.2d 785, 789-790 (N.J. 1956). One noted torts treatise calls this "the view very much to be preferred." PROSSER AND KEETON ON TORTS (5th ed.) p.14.

In *Richard v. City of Harahan*, 6 F.Supp.2d 565 (E.D. La. 1998), the Court denied a claim for punitive damages under 42 U.S.C. §1983 because plaintiff failed to prove willful or malicious conduct. This was nothing more than an evidentiary finding that plaintiffs had failed to prove the necessary legal condition for an award of punitive damages under the federal civil rights laws. In *dicta*, the Court noted that plaintiff had not proved compensatory damages in a fashion necessary to support a claim for punitive damages.[29] Whatever the state of the evidentiary record in *Richard,* in the present case, Plaintiffs have alleged and will be able to prove actual damages caused by Transocean's egregious fault.

The plaintiffs in *Parr v. Nolty J. Theriot, Inc*., 1990 WL 66380 (E.D. La. 1990), brought suit for the wrongful death of a seaman under the Jones Act, DOHSA and the general maritime law. Like *Neal*, the Court in *Parr* found that punitive damages are non-pecuniary damages and therefore unavailable under the Jones Act or DOHSA. The Court noted that while punitive damages are recoverable under the general maritime law survival action, in *dicta* noted that such damages cannot be recovered "absent a recovery for compensatory damages." Here Plaintiffs have pled and will be able to prove that substantial compensatory damages were caused by Transocean's misconduct and therefore are free to seek punitive damages from Transocean.

*Mullins v. TestAmerica, Inc.*, 564 F.3d 386 (5th Cir. 2009), involved the interpretation of Texas state law and held that punitive damages could not be awarded where compensatory damages were not "*requested* or awarded." *Id.* at 417 (emphasis added). Here compensatory damages have been requested from Transocean and sustained as a result of its fault.

---

[29]   Reading *Richard* to require trial proof of compensatory damages in all circumstances would put it at odds with another case cited by Transocean at footnote 4 of its brief, La. ACORN Fair Housing v. LeBlanc, 211 F 3d 298, 302-303 (5th Cir 2000) which upheld a punitive damages award in the absence of compensatory damages where plaintiff established a constitutional violation.

*Lanier v. Sallas*, 777 F.2d 321 (5th Cir. 1985), another case involving Texas state law, notes that punitive damages are limited to cases where "actual compensatory damages are found." *Id.* at 325. Again, Plaintiffs have alleged and will prove that significant actual damages were caused by the Transocean's conduct.

*Vidrine v. Enger*, 752 F.2d 107 (5th Cir 1984), was a medical malpractice case decided under Mississippi law. The Court found that the suit had not been timely filed and therefore the accompanying punitive damages action could not proceed as there was no underlying "legally cognizable cause of action." *Id.* at. 110. Here, Plaintiffs' suits against Transocean have been timely filed and allege a legally cognizable cause of action.

In *Thrall Car Manufacturing Co. v. Lindquist*, 495 N.E. 2d 1132 (Ill. App. Ct. 1986), plaintiff obtained a summary judgment against one defendant and, after the judgment was paid, signed a satisfaction of judgment as to that defendant. It then sought punitive damages from the remaining defendant. The Court of Appeal held that the plaintiff had no cause of action under Illinois law against the remaining defendant and therefore, in the absence of such a cause of action, could not pursue punitive damages. There is nothing in the Settlement Agreement, by contrast, which would extinguish Plaintiffs' cause of action as against Transocean as a matter of law.

*Virgilio v. City of New York*, 407 F.3d 105 (2d Cir. 2005), is a New York case concerning the state law implications of compensation from the statutorily-created 9-11 fund. The court ruled that plaintiffs who accepted money from the fund could not thereafter seek punitive damages on the basis of a "statutorily imposed waiver," *Id.* at 117-18, a matter totally irrelevant to the present case.

Finally, Transocean argues that by settling their compensatory damages claim and reserving their rights to pursue punitive damages, Plaintiffs are somehow engaging in "claim splitting," citing *Hogue v. Royse City, Texas*, 939 F.2d 1249 (5th Cir 1991).  In *Hogue*, the Court held that a plaintiff's simultaneous filing suits in state and federal court alleging the identical cause of action (age discrimination) was "claim splitting" and thus improper. The present case is not remotely similar, either legally or factually. Plaintiffs are pursuing Transocean in a single forum, alleging well recognized causes of actions.  Plaintiffs have simply settled one item of damage and reserved their rights to pursue Transocean for another.[30]

Quite simply, there is nothing in the caselaw which prohibits the reservation of a claim for punitive damages where the claim for compensatory damages has been settled.[31]

## There is Nothing in the BP Economic Settlement that Would Procedurally (or otherwise) Prevent a Classmember or other Plaintiff from Establishing His or Her (or a Collective) *Quantum* of Compensatory Damages

Initially, it is important to note that both the assessment of punitive damages with respect to any particular claim (whether individual, class, or assigned) and the Due Process limitation on

---

[30] Notably, what Transocean dubs "claim-splitting" – *i.e.* granting class status to certain claims or questions, for purpose of trial or settlement, while reserving others for later classwide or individual adjudication – is an established feature of class action procedure.  It is built into the fabric of Rule 23 itself:  Indeed, Rule 23(c)(4) expressly provides that "when appropriate, an action may be brought or maintained as a class action with respect to particular issues."  Multi-phase trial plans are well recognized in both mass tort actions and class actions.  *See, e.g.,* MANUAL FOR COMPLEX LITIGATION, FOURTH (Federal Judicial Center 2004) §§ 22.93, 22.756.  Such trial plans address common questions on a priority basis (such as this Court's Phase I trial has done) while reserving individualized issues of specific causation and damages for later proceedings.  Class action settlements frequently reserve particular claims (*e.g.* claims for personal injury or wrongful death) for later prosecution, while resolving classwide claims, such as for economic loss.  In short, class certification has never been an "all or nothing" proposition.  *See, e.g.,* Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 627-628 (5th Cir. 1999);  Allen v. Int'l Truck & Engine Corp., 358 F.3d 469 (7th Cir. 2004);  Borrero v. United Healthcare of N.Y., Inc., 610 F.3d 1296, 1310 (11th Cir. 2010);  McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 672 F.3d 482 (7th Cir. 2012).

[31] *See* Exxon Shipping v. Baker, 554 U.S. 471, 515 (2008), *affirming, in relevant part,* In re Exxon Valdez, 236 F.Supp.2d 1043, 1058-1060 (D. Alaska 2002); *see also,* Sea Hawk Seafoods, Inc. v. Exxon Corp., 246 F.3d 676 (9th Cir. 2000);  Wussow v. Commercial Mechanisms, Inc., 97 Wis. 2d 136, 293 N.W.2d 897 (1980);  Burns v. Milwaukee Mutual Insurance Company, 360 N.W.2d 61, at 65, FN 4 (Wis. App. 1984);  Stephenson v. Collins, 216 So.2d 433 (Fla. 1968); *accord,* Howell-Demarest v. State Farm, 673 So.2d 526 (Fla. 4th Dist. 1996).

all punitive damages arising out of an event or conduct are multi-factored analyses, and not mechanical applications of either individual or global compensatory damage quantifications.[32]

A key fallacy in Transocean's Motion is the notion that Transocean's punitive damage exposure is somehow extinguished simply because another party (BP, in this case) is *paying* the compensatory damages to the settling plaintiffs.  The critical question, however, is the *harm* to the Plaintiffs for which the tortfeasor is legally responsible, (not who may or may not pay for the harm).

Indeed, under General Maritime Law, a tortfeasor such as Transocean is jointly and severally liable for *all* compensatory damages to the plaintiffs, irrespective of what its percentage degree of fault might be determined to be.

There is nothing within the Economic & Property Damages Settlement Agreement that would foreclose the procedural right or ability of a single plaintiff, the existing class (trust), or a subsequently certified litigation class from establishing what the "compensatory" element of damages are.  To the extent that the total harm or damages arising out of the spill might be relevant – to either a "class-wide" assessment of punitive damages or even just a single suing

---

[32] *See, e.g.,* Exxon Shipping v. Baker, 554 U.S. 471, 510-511 (2008) (taking into account whether the tortfeasor was merely reckless or malicious, whether the conduct was motivated by pecuniary gain, whether the recovery is substantial, and the nature and extent of the injury); Philip Morris v. Williams, 549 U.S. 346, 355 (2007) ("Respondent argues that she is free to show harm to other victims because it is relevant to a different part of the punitive damages constitutional equation, namely, reprehensibility. That is to say, harm to others shows more reprehensible conduct. Philip Morris, in turn, does not deny that a plaintiff may show harm to others in order to demonstrate reprehensibility. Nor do we. Evidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible – although counsel may argue in a particular case that conduct resulting in no harm to others nonetheless posed a grave risk to the public, or the converse"); State Farm v. Campbell, 538 U.S. 408, 419 (2003) (courts consider "whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident"); BMW v. Gore, 517 U.S. 559, 582 (1996) ("we have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual *and potential* damages to the punitive award.  Indeed, low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine. It is appropriate, therefore, to reiterate our rejection of a categorical approach").

plaintiff's claim for punitive damages to which Transocean can be exposed – such could be established through expert testimony or other means.  To the extent that an individual plaintiff's harm might be relevant to the punitive damage award, the plaintiff could establish the amount of damages that he or she sustained as a result of the spill, just like any plaintiff would in any ordinary case.  Regardless, procedurally, there is no reason that a plaintiff (or a class) who has a punitive damage claim against Transocean cannot, as part of its proof of punitive damages, put on proof of its (and/or the collective) underlying compensatory damages, determined in the form of a jury interrogatory or a finding of fact by the judge.

Transocean, in this respect, can't have it both ways:  If the stipulation to the full amount of Settlement Compensation is not binding on Transocean for the purpose of establishing Transocean's punitive damage exposure, then it shouldn't be binding on the Plaintiff – or the Class Plaintiffs collectively.

Nevertheless, it would seem that the amounts paid by BP to Settlement Class Members is at the very least *relevant* to the question of how much harm was caused to the Plaintiffs, whether individually or collectively.[33]

In *Baker,* the Court included in the compensatory damage base amount (to which the 1:1 ratio found to be applicable in that case was applied) settlements that had been paid both to members of the class and to parties that were not before the Court. *See* Exxon Shipping v. Baker, 554 U.S. 471, 515 (2008) (adopting the district court's calculation of the total relevant compensatory damages, which included not only the plaintiff class' compensatory jury verdict, but a series of settlements made by both Exxon and third parties (*i.e.* other defendants) to

---

[33] Certainly, BP's OPA payments (whether thru the GCCF, the Court-Supervised Settlement Program, and/or BP's own claims processes) can be concretely and definitively quantified.  As can BP's direct first-party damages.

individuals, groups, and entities both inside and outside of the class); *affirming, in pertinent part,* In re Exxon Valdez, 236 F.Supp.2d 1043, 1058-1060 (D. Alaska 2002).

## BP's Claim Against Transocean is a Single Undivided Claim Which Requires No Further Certification under Rule 23

A Class, once properly certified, is treated as its own juridical entity. *See, e.g.,* United States Parole Comm'n v. Geraghty, 445 U.S. 388 (1980); Zablocki v. Redhare, 434 U.S. 378 (1978); Franks v. Bowman Transp. Co., 424 U.S. 747 (1976); Sosna v. Iowa, 419 U.S. 393 (1975); Clark v. State Farm Mut. Auto. Ins. Co., 590 F.3d 1134, 1138 (10th Cir. 2009); *The Supreme Court, 1981 Term: Forward: Public Law Litigation and the Burger Court,* 96 HARV.L.REV. 4, 42 (Nov. 1982); *see also, e.g.,* Zeisl v. Watman (In re Austrian & German Bank Holocaust Litig.), 317 F.3d 91, 94 (2d Cir. 2003) (Court notes, in an appeal involving attorney's fees, that one of the benefits of class settlement was the assignment of contribution claims); In re PNC Fin. Servs. Group, Inc., Sec. Litig., 440 F.Supp.2d 421, 455 (W.D. Pa. 2006) (approving settlement that included assignment of contribution rights over the objection of a non-settling defendant); In re Combustion, Inc., 968 F.Supp. 1116, 1122 (W.D. La. 1997) (approval to four settlements involving the assignment of indemnity rights); McMillon v. Hawaii, 2011 U.S. Dist. LEXIS 17859 (D. Haw. Feb. 22, 2011) (approving class settlement including assignment of state's contribution claims "to the Named Plaintiffs to prosecute on behalf of the Class"); oftlineVeal v. Voyager Prop. & Cas. Ins. Co., 2008 U.S. Dist. LEXIS 120929 (M.D. Fla. June 19, 2008) (assigned indemnity action brought by lead plaintiff on behalf of "previously certified class" as a single entity).

In this case, the Class is not bringing a "class" claim against Transocean, but merely stepping into the shoes of BP, which has a single undivided claim that requires no "certification".

*See, e.g.,* <u>Combo Maritime v. U.S. United Bulk Terminal</u>, 615 F.3d 599, 603-604 (5th Cir. 2010) (where settling party takes an assignment, he "essentially steps into the plaintiff's shoes"); <u>LRA v. Socialist People's Libyan Arab Jamahiriya</u>, 533 F.3d 837, 840, 844 (D.C. Cir. 2008) (insurer that took an assignment of accident victims thereby "steps into the shoes" of the victims.... "It is well established the assignee or subrogee owns 'the substantive right' of the claimant").

A trustee, for example, is authorized to bring a claim on behalf of a trust, without formally certifying under Rule 23 a "class" of the trust beneficiaries. And, indeed, the assignment in this case can be viewed as an assignment to the Settlement Trust.[34]

Any subsequent allocation and distribution between and among individual classmembers is a back-end, post-judgment process, in which the defendant has no interest. *See, e.g.*, NEWBERG ON CLASS ACTIONS (4th Ed. 2002) §10.12.

---

[34] *See* SETTLEMENT AGREEMENT, Section 5.14 ("Because any such funds are for the benefit of the Economic Class as a whole, these funds will be held in reserve by the Trustee in a qualified settlement fund authorized by the Court pending an equitable and appropriate allocation or use of such funds, to be approved by the Court, which may include: (a) pro rata distribution to Economic Class Members; (b) to augment the Seafood Compensation Program; or (c) to address extraordinary needs or circumstances as agreed to by the BP Parties, which agreement shall not be unreasonably withheld. In any event, the Court will decide and direct any allocation, and may appoint a special master or other neutral party to create any allocation or for other appropriate purposes").

## Conclusion

For the above and foregoing reasons, Transocean's Motions for Partial Judgment on the Pleadings should be denied.

This <u>20</u><sup>th</sup> day of <u>May</u>, <u>2013</u>.

Respectfully submitted,

<div style="display:flex">

    /s/   Stephen J. Herman
**Stephen J. Herman**, La. Bar No. 23129
**HERMAN HERMAN & KATZ LLC**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 569-6024
E-Mail: sherman@hhklawfirm.com
*Plaintiffs' Liaison Counsel*

     /s/ James Parkerson Roy
**James Parkerson Roy**, La. Bar No.11511
**DOMENGEAUX WRIGHT ROY & EDWARDS LLC**
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233-3033
Fax No. (337) 233-2796
E-Mail: jimr@wrightroy.com
*Plaintiffs' Liaison Counsel*

</div>

## PLAINTIFF STEERING COMMITTEE

Brian H. Barr
LEVIN, PAPANTONIO
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office: (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY 10003
Office: (212) 558-5802
Telefax: (212) 344-5461
E-Mail: rgreenwald@weitzlux.com

Jeffrey A. Breit
BREIT, DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office: (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office: (334) 269-2343
Telefax: (334) 954-7555
E-Mail: rhon.jones@beasleyallen.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  **ecabraser@lchb.com**

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH,
LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail:  ervin@colson.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Opposition has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of May, 2013.

/s/ Stephen J. Herman and James Parkerson Roy