**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | * | **MDL NO. 2179** |
| "*Deepwater Horizon*" in the | * | |
| Gulf of Mexico, on April 20, 2010 | * | **SECTION:  J** |
| | * | |
| | * | |
| This document applies to: | * | **HONORABLE CARL J. BARBIER** |
| | * | |
| *All Cases* | * | **MAGISTRATE JUDGE SHUSHAN** |
| | * | |
| | * | |
| | * | |

---

**PLAINTIFFS' OPPOSITION TO HALLIBURTON'S
MOTIONS FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Plaintiffs, including, but not limited to, the formally certified and approved Economic & Property Damages Class, through undersigned Liaison Counsel, Class Counsel, and members of the Plaintiffs' Steering Committee, respectfully submit the following Opposition to: **(i)** Halliburton's Motion for Partial Judgment on the Pleadings regarding Punitive Damages [Rec. Doc. 8267];  and **(ii)** Halliburton's Motion for Partial Judgment on the Pleadings regarding BP's Assignment of Claims [Rec. Doc. 8268]: [1]

**MAY IT PLEASE THE COURT:**

Initially, the plaintiffs would respectfully suggest that consideration of these motions is premature, as **(i)** the motions ultimately deal with only *quantum* issues, and do not directly bear on the liability issues to be determined by the Court in Phase One (or Phase Two), and **(ii)** the assignment contained within the Economic & Property Damages Class Settlement Agreement is subject to a pending appeal before the U.S. Fifth Circuit.

---

[1] Plaintiffs further adopt and incorporate fully their OPPOSITION TO TRANSOCEAN'S MOTIONS FOR PARTIAL JUDGMENT ON THE PLEADINGS.

Nevertheless, and in any event, the Halliburton motions should be denied.

The central fallacy in the motion directed to the BP Assignment is that Halliburton confuses BP's claim for contribution (for settlement payments to plaintiffs and others) with BP's claim for its own first-party direct damages incurred by BP.  In addition, Halliburton's motion fails to recognize that:  **(i)** The assignee stands in the shoes of the assignor for Article III standing purposes; **(ii)** The assignment of property damage claims is generally recognized under Maritime Law;  **(iii)** The Class (or Trust), as assignee, steps into the shoes of BP, with no greater rights or remedies; hence, Halliburton presumably has the same defenses to the assigned claims that it would have to the claims as prosecuted by BP, and is in no way prejudiced by the assignment; **(iv)** The Economic & Property Damages Settlement does not purport to conclusively establish, or even directly address, the value of the assigned claims;  and **(v)** The assignment does not violate the so-called "Settlement Bar Rule" because the Class Settlement essentially provides Halliburton with an effective "release" of the compensatory damage claims.[2]

With respect to the motion directed to the recovery of Punitive Damages: **(i)** The settlement does not in any way affect the punitive damage claims of personal injury plaintiffs or of economic plaintiffs who are not members of the Settlement Class (*e.g.,* opt outs, local governments, and other excluded persons and entities);  **(ii)** This is <u>not</u> a "stand-alone" claim for Punitive Damages, where the plaintiff has either not asserted or been unable to established a cause of action against the defendant for compensatory damages;  rather, Plaintiffs have stated a General Maritime Law claim against Halliburton for compensatory damages, and the Plaintiffs have indeed suffered a *quantum* of actual compensatory damages;  there is nothing in the caselaw which prohibits the *reservation* of a claim for punitive damages where the claim for

---

[2] *See* Settlement Agreement, Exhibit 21, Sections 1.1.2.2 and 1.1.2.3, *and,* Settlement Agreement, Exhibit 26, Paragraphs 11(b) and (c).

compensatory damages has been settled;  **(iii)** In determining *quantum* of punitive damages, the critical question is the *harm* to the Plaintiffs for which the tortfeasor is legally responsible, (<u>not</u> who *pays* for the harm);[3]  **(iv)** There is nothing within the Settlement Agreement that would foreclose the procedural right or ability of a single plaintiff, the existing Class (Trust), or a subsequently certified litigation class from establishing what the "compensatory" element of damages are;  and **(v)** The U.S. Supreme Court in *Baker* included within the compensatory damage base amount settlements that had been paid both to members of the class and to third parties who were not before the court.[4]

Finally, a class, once properly certified, is treated as its own juridical entity.  The Class is not bringing a "class" claim against Halliburton, but merely stepping into the shoes of BP, which has a single undivided claim that requires no "certification".   A trustee, for example, is authorized to bring a claim on behalf of a trust, without formally certifying under Rule 23 a "class" of the trust beneficiaries.  And, indeed, the assignment in this case can be viewed as an assignment to the Settlement Trust.[5]   Any subsequent allocation and distribution between and among individual classmembers is a back-end, post-judgment process, in which the defendant has no interest.

For these reasons, and for the reasons further outlined below, Halliburton's Motions for Partial Judgment on the Pleadings should be denied.

---

[3] It is significant to note, in this regard, that under General Maritime Law a tortfeasor such as Halliburton is jointly and severally liable for *all* compensatory damages to the plaintiffs, irrespective of what its percentage degree of fault might be determined to be.

[4] *See* <u>Exxon Shipping v. Baker</u>, 554 U.S. 471, 515 (2008); *affirming, in relevant part,* <u>In re Exxon Valdez</u>, 236 F.Supp.2d 1043, 1058-1060 (D. Alaska 2002).

[5] *See* SETTLEMENT AGREEMENT, Section 5.14.

# Overview of Existing Claims

Plaintiffs believe that it is likely helpful, at the outset, to review the sets of claims that currently exist against Halliburton, in light of the BP Class Settlements and the controlling Orders of the Court:

## I.    Economic & Property Damage Settlement Class Claims

a.    BP's Claim for Its Own Compensatory Damages suffered by BP

Including claims for BP's own direct "first-party" damages, such as loss of the well, loss of production, the costs of drilling the relief wells, clean-up and response costs incurred;

Assigned to and Asserted by the Class (Trust) as a whole;  and,

Available if Class (Trust) Establishes "Gross Negligence" [6] or Fraud [7, 8] and/or "core" Contractual Breach [9]

b.    BP's Claim for Punitive Damages

Assigned to and Asserted by the Class (Trust) as a whole;  and,

Available upon Showing of "Gross Negligence"

---

[6] *See* ORDER AND REASONS [Doc 5493] (Jan. 31, 2012), at p.3 fn.4 ("Gross negligence will invalidate a release or exculpatory clause"); ORDER AND REASONS [Doc 5446] (Jan. 26, 2012), at pp.13-14; *citing*, Houston Exploration v. Halliburton, 269 F.3d 528 (5th Cir. 2001); Todd Shipyards v. Turbine Service Inc, 647 F.3d 401, 411 (5th Cir. 1982); Royal Ins Co v. Southwest Marine, 194 F.3d 1009, 1016 (9th Cir. 1999); La Esperanza de PR v. Perez Cia de Puerto Rico, 124 F.3d 10, 19 (1st Cir. 1997) (a *release* is invalid as to gross negligence, reckless conduct and/or intentional acts).

[7] *See* ORDER AND REASONS [Doc 5493] (Jan. 31, 2012), at p.5 ("The Court agrees that fraud could void an indemnity clause on public policy grounds").

[8] Plaintiffs note that, unlike the claim for punitive damages, which arguably needs to satisfy the *P&E Boat Rentals* showing of knowledge, participation or ratification by the corporation's management, Plaintiffs submit that any grossly negligent or reckless conduct (even if only "operational"), or any material instance of fraud, is sufficient to invalidate the release as a matter of public policy.

[9] *See* ORDER AND REASONS [Doc 5493] (Jan. 31, 2012), at p.4; ORDER AND REASONS [Doc 5446] (Jan. 26, 2012), at pp.25, 29 (Court defers ruling on whether a "core" breach of the drilling contract that materially increased the risk to BP might invalidate release and/or indemnity).

    c.      Classmembers' Expressly Reserved Punitive Damage Claims [10]

              Asserted by Classmembers with *Robins Dry Dock* Standing Individually; and,

              Available if Classmember Establishes "Gross Negligence"

## II.    Private Economic Opt Out and Excluded Claims

              For Compensatory and Punitive Damages;

              Available to Plaintiffs with *Robins Dry Dock* Standing;

              Compensatory Damages Indemnified by BP; [11]  and,

              Punitive Damages Available upon Showing of "Gross Negligence"

## III.    Personal Injury Claims

    a.      Medical Benefits Classmembers' Expressly Reserved Claims for Punitives

    b.      Personal Injury Claims of Opt Outs and/or People Not Covered by Class

                  For Compensatory and Punitive Damages;

                  Compensatory Damages Indemnified by BP;  and,

                  Punitive Damages Available upon Proof of "Gross Negligence"

## IV.    Local Government Claims

              For Compensatory and Punitive Damages;

              Available to Government Entities with *Robins Dry Dock* Standing;

              Compensatory Damages Indemnified by BP;  and,

              Punitive Damages Available upon Proof of "Gross Negligence"

## V.    State Claims

---

[10] *See* B1 ORDER [Doc 3830], pp.26-27, 38 (OPA does not displace punitive damage claims); ORDER AND REASONS [Doc 5446] (Jan. 26, 2012), at pp.19, 29 (indemnity does not apply to punitive damage claims).

[11] *See generally,* ORDER AND REASONS [Doc 5493] (Jan. 31, 2012), at p.3;  *but see:*  p.4 (re potential "core" contractual breach).

**The Assignment is Valid**

It is well-settled that the assignee stands in the shoes of the assignor for Article III standing purposes.  The fact that BP no longer has an interest in the outcome does not "moot" the case and controversy. Sprint Communications v. APCC Services, 554 U.S. 269, 274-285 (2008).

In addition, the assignment of property damage claims is recognized under Maritime Law. *See generally*, American Commercial Lines, Inc. v. Valley Line Co., 529 F.2d 921, 925 (8th Cir. 1976); Moran Towing & Transportation v. Conners-Standard Marine Corp., 316 F.2d 811, 811 (2d Cir. 1963); Ozanic v. United States, 188 F.2d 228, 231 (2d Cir. 1951); The Mandu, 102 F.2d 459, 461-462 (2d Cir. 1939); Salaky v. Atlas Tank Processing Corp., 120 F.Supp. 225, 227 (E.D. N.Y. 1953), *rev'd on other grounds*, 208 F.2d 174 (2d Cir. 1953).  *See also*, Sprint Communications, *supra*, 554 U.S. at 283; *citing*, Murdock v. The Emma Graham, 17 F. Cas. 1012, 1013, F. Cas. No. 9, 940 (S.D. Ohio 1878), *and*, The Rupert City, 213 F. 263, 266-267 (W.D. Wash. 1914); *see also*, Ondimar Transportes Maritimos v. Beatty Street Properties, 555 F.3d 184, 187-188 (5th Cir. 2009) (assignment of property damage tort claims are generally permitted).[12]

The Class (Trust), as assignee, steps into the shoes of BP, with no greater rights or remedies.  Halliburton presumably has the same defenses to the assigned claims that it would have to the claims as prosecuted by BP.  Therefore, Halliburton is in no way prejudiced by the assignment.

---

[12] It should be noted, in this regard, that the Plaintiff Class is not seeking to "step into the shoes" of BP in order to compel Halliburton to perform cementing services under the contract.  It was not the *contract* that was assigned, but simply the claims.  Yet, even assuming *arguendo* that the anti-assignment provisions in the BP-Halliburton contract might prevent BP from assigning a traditional breach of contract claim against Halliburton, (which is denied), it would not prevent BP from assigning its tort or other extra-contractual claims.

The Economic & Property Damages Settlement does not purport to conclusively establish, or even directly address, the value of the assigned claims.  The Class (Trust), as assignee, must presumably establish BP's entitlement to, and *quantum* of, damages recoverable from Halliburton.[13]

The present situation, in this regard, is distinguishable from cases in which the court was concerned that the assignment would circumvent the "Settlement Bar Rule" invoked by Halliburton.[14]  In this case, by contrast:

i.   The assignor is the defendant, (not the settling plaintiff).  The Class is primarily seeking to enforce BP's claim for BP's own direct damages, (as opposed to contribution or subrogation or "indemnity" for damages incurred by Plaintiffs); and,

ii.  The settlement with BP falls under an exception to the *AmClyde* rule, in that BP has obtained from the settling class members what is effectively a full "release" of all potential tortfeasors with respect to compensatory damages.[15]  Despite

---

[13] As noted, Halliburton's Motions seem directed to a contribution or subrogation type claim for the recovery of settlement payments to plaintiffs made by BP.  However, the assignment primarily relates to BP's own "first-party" damages, such as loss of the well, loss of production, the costs of drilling the relief wells, clean-up and response costs directly incurred by BP, etc.  Accordingly, there is no "double recovery".

[14] *See, e.g.,* Lexington Ins Co v. S.H.R.M. Catering Services, 567 F.3d 182, 185-186 (5th Cir. 2009) ("we recently addressed the effect *McDermott* on a settling tortfeasor's suing a non-settling tortfeasor for property damage on the basis of an assignment of the property damage claim from the injured party in the settlement. We noted that the assignment would be invalid 'if the assignment of property damage tort claims is either (a) generally prohibited by law or (b) generally permitted by law but barred by application of *McDermott*.... We declined to decide 'whether the assignment of property damage tort claims are generally prohibited,' although we observed that it appeared 'most state courts ... permit such assignments.'  We went on to hold, however, that even if the assignment of property damage tort claims were generally permitted, 'there are good reasons for imposing certain limitations in the context of *McDermott's* proportionate fault framework....  We adopt the rule for the general maritime law that the assignment of tort claims **from the injured party to one tortfeasor permitting the settling defendant to proceed against a co-tortfeasor** is invalid'") (emphasis supplied);  *citing,* Ondimar Transportes Maritimos v. Beatty Street Properties, 555 F.3d 184, 188-189 (5th Cir. 2009).  (The assignment in *Lexington* was further called into question because it involved unliquidated personal injury claims. *See* Lexington, 567 F.3d at 185.)

[15] The Fifth Circuit, for example, in a case decided subsequent to the *Ondimar* and *Lexington* decisions, recognized an exception to the general prohibition of contribution actions by settling tortfeasors against non-settling co-defendants. *See* Combo Maritime v. U.S. United Bulk Terminal, 615 F.3d 599, 603-604 (5th Cir. 2010) ("If ... the settling defendant discharges the plaintiff's entire claim as evidenced by a total release of all potential joint tortfeasors, then the settling defendant has met the requirements for a contribution claim.  Because he is responsible for only his portion of the damages, and he paid the entire amount, he has paid more than he owes.  And, because he has obtained a release of all other potential joint tortfeasors, he has extinguished the plaintiff's claim.  Therefore, he may bring claim for contribution against the non-settling potential tortfeasors"). While there is language in *Combo* suggesting that an assignment from the plaintiff to the settling defendant might be "invalid" under *Ondimar* and

Halliburton's characterization of the settlement, Sections 1.1.2.2 and 1.1.2.3 of the Assignment, and Paragraphs 11(b) and (c) of the Release, effectively accomplish the same thing.[16]

The assignment also does not violate the "one satisfaction" doctrine – which doctrine is largely called into question by *McDermott v. AmClyde*[17] – because: **(i)** the compensatory damage claims of the Classmembers are satisfied by the *entire* package of Class Settlement Benefits, *including* the value of the assignment;  **(ii)** the injuries to BP and the injuries to the Class are two completely separate and distinct injuries;[18] **(iii)** the "one satisfaction" doctrine should not be applied to protect the tortfeasor in the situation where punitive damage exposure, as well as liability for compensatory damages, is justified; and **(iv)** even assuming *arguendo* some risk of "double recovery", the appropriate remedy would not be to invalidate the assignment, but to wait until the end of the litigation and apply a set-off,[19] (which, as an affirmative defense, would be Halliburton's burden to establish).

---

*Lexington,* **(i)** such language can fairly be characterized as **dicta**, and **(ii)** is distinguishable on the basis that the assignor, as in *Ondimar* and *Lexington,* was the **plaintiff**, in favor of the settling defendant, in furtherance of a "contribution" type claim.

[16] *See* SETTLEMENT AGREEMENT, Exhibits 21 and 26.

[17] *See* <u>McDermott, Inc. v. AmClyde</u>, 511 U.S. 202, 218-220 (1994) ("In the 19th and early 20th centuries, the "one satisfaction rule" barred a plaintiff from litigating against one joint tortfeasor, if he had settled with and released another.  This version of the one satisfaction rule has been thoroughly repudiated.... The law contains no rigid rule against overcompensation.  Several doctrines, such as the collateral benefits rule, recognize that making tortfeasors pay for the damage they cause can be more important than preventing overcompensation....   We must recognize that settlements frequently result in the plaintiff's getting more than he would have been entitled to at trial. Because settlement amounts are based on rough estimates of liability, anticipated savings in litigation costs, and a host of other factors, they will rarely match exactly the amounts a trier of fact would have set.  It seems to us that a plaintiff's good fortune in striking a favorable bargain with one defendant gives other defendants no claim to pay less than their proportionate share of the total loss").

[18] *See, e.g.,* <u>Hess Oil Virgin Islands Corp v. UOP</u>, 861 F.2d 1197, 1208 (10th Cir. 1988) (the single satisfaction rule is applicable "only where the defendant's conduct resulted in a single injury"); *citing,* RESTATEMENT (SECOND) OF TORTS (1979) §885(3), comments e & f; *see also,* <u>Kepner-Tregoe v. Vroom</u>, 186 F.3d 283, 289 (2d Cir. 1999); <u>Christinson v. Big Stone County Co-op</u>, 13 F.3d 1178, 1181 (8th Cir. 1994); <u>United States v. Touche Ross & Co</u>, 854 F.2d 1223, 1236 (10th Cir. 1988).

[19] *See* <u>Christinson v. Big Stone County Co-op</u>, 13 F.3d 1178, 1181 (8th Cir. 1994).

This situation is also distinguishable on policy grounds:  It has been noted that the assignment by a settling plaintiff to a tortfeasor might confuse or complicate the litigation and potentially frustrate settlement.[20]  In this case, by contrast, the settling tortfeasor is assigning its own damage claims against the same co-defendant that plaintiffs are already pursuing, thereby simplifying the litigation and promoting final resolution of the claims.

## Halliburton Is Legally Responsible for the Plaintiffs' Compensatory Damages.

First, it should be noted that Halliburton is responsible for compensatory damages to personal injury plaintiffs under General Maritime Law.

Halliburton is also responsible for compensatory damages to economic plaintiffs who have *Robins Dry Dock* standing.  As this Court has already held, General Maritime Law is only displaced by OPA with respect to Responsible Parties as to *procedural* requirements (*i.e.,* presentment).[21]

---

[20] *See, e.g.,* Lexington, 567 F.3d at 185-186; Ondimar, 555 F.3d at 189 ("Permitting assignment [of plaintiff's rights] to a co-tortfeasor would tend to encourage partial settlement and would not encourage total settlement of claims – an important goal of [*AmClyde*] .... Permitting such assignments will lead to costlier, longer, and more confusing suits, all of which would undermine [*AmClyde*'s] goal of promoting judicial economy"); *citing,* McDermott, Inc. v. AmClyde, 511 U.S. 202, 211 (1994) ("In choosing among the ALI's three alternatives, three considerations are paramount: consistency with the proportionate fault approach of *United States v. Reliable Transfer,* promotion of settlement, and judicial economy.  ALI Option 1, *pro tanto* setoff with right of contribution against the settling defendant, is clearly inferior to the other two, because it discourages settlement and leads to unnecessary ancillary litigation").

[21] *See*  B1 ORDER [Doc 3830], p.38 ("As to Responsible Parties, OPA does displace general maritime law claims against Responsible Parties, but *only* with regard to *procedure* (i.e., OPA's presentment requirements)") (emphasis supplied); *see also,* B1 ORDER, at p.26 ("Claimants' maritime causes of action against a Responsible Party are displaced by OPA, such that all claims against a Responsible Party for damages covered by OPA must comply with OPA's presentment procedure") (emphasis supplied); *see also,* ORDER AND REASONS (Feb. 22, 2012) [Doc 5809], p.15 n.20 ("OPA's scheme merely establishes who will be liable for oil pollution under the Act; it expressly states that it does not affect maritime law or jurisdiction. Therefore, nothing in this Order affects the Court's previous holdings regarding admiralty jurisdiction, etc") (emphasis supplied).

While Halliburton may be effectively relieved of its financial responsibility by virtue of the indemnity provisions found within the services contract, Halliburton is nevertheless liable for compensatory damages under General Maritime Law to many Plaintiffs in the first instance.

Halliburton is also responsible, under OPA's scheme, for contribution with respect to the compensatory damages paid to plaintiffs. *See* 33 U.S.C. §§2709 and 2715(a).  Again, Halliburton is only effectively relieved of this financial responsibility by virtue of the contractual indemnity agreement; *not* as a matter of law.

Moreover, with respect to the assigned BP compensatory damage claim, this Court has held that "Gross negligence will invalidate a release or exculpatory clause." *See* ORDER AND REASONS [Doc 5493] (Jan. 31, 2012), at p.3 fn.4; ORDER AND REASONS [Doc 5446] (Jan. 26, 2012), at pp.13-14; *citing,* Houston Exploration v. Halliburton, 269 F.3d 528 (5th Cir. 2001); Todd Shipyards v. Turbine Service Inc, 647 F.3d 401, 411 (5th Cir. 1982); Royal Ins Co v. Southwest Marine, 194 F.3d 1009, 1016 (9th Cir. 1999); La Esperanza de PR v. Perez Cia de Puerto Rico, 124 F.3d 10, 19 (1st Cir. 1997).[22]  Hence, a showing of gross negligence would invalidate the service contract's release provisions with respect to BP's first-party compensatory damage claims.[23]

---

[22] *See also,* PROSSER & KEETON ON TORTS (5th ed. 1984) at 484 ("[Exculpatory] agreements generally are not construed to cover the more extreme forms of negligence, described as willful, wanton, reckless, or gross, or to any conduct which constitutes an intentional tort"); 6A CORBIN ON CONTRACTS (1962 ed.) §1472  ("It is generally held that those who are not engaged in public service may properly bargain against liability for harm caused by their ordinary negligence in performance of contractual duty; but such an exemption is always invalid if it applies to harm willfully inflicted or caused by gross or wanton negligence"); Robertson & Sturley, *Recent Developments in Admiralty and Maritime Law at the National Level and in the Fifth and Eleventh Circuits*, 36 Tul. Mar. L.J. 425, 454-455 (2012) ("it is ordinarily against public policy to try to contract out of responsibility for conduct any more blameworthy than mere negligence"); *see also,* Engerrand, *Indemnity for Gross Negligence in Maritime Oilfield Contracts*, 10 LOY. MAR. L.J. 319, 356 & n.200 (2012) (explaining and upholding "the vital distinction between exculpation and indemnification").

[23] Plaintiffs note that, unlike the claim for punitive damages, which arguably needs to satisfy the *P&E Boat Rentals* showing of knowledge, participation or ratification by the management of the corporation, any grossly negligent or reckless conduct (even if only "operational") is sufficient to invalidate the release as a matter of public policy.

**The Anti-Assignment and Consequential Damages Provisions Are Red Herrings**

BP has not assigned the BP-Halliburton services contract to the Plaintiff Class.  Nor are the plaintiffs seeking to compel Halliburton to provide cementing services.  Rather, it is only the claims arising from Halliburton's past contractual breaches and failures which have been assigned to the Plaintiff Class.  Even assuming *arguendo* that such claims cannot be assigned, (which is denied), there is nothing that would prevent BP from assigning extra-contractual claims, arising in tort, in equity, or under the provisions of OPA or other statutes.

Similarly, the contractual provision regarding consequential damages would not apply to a statutory cause of action, nor to a cause of action sounding in tort.  Yet, even assuming *arguendo* that such provision applied to BP's extra-contractual claims, (which is denied), a finding of gross negligence (or fraud) would invalidate the waiver or release of consequential damages, just as it would invalidate the waiver and release of other damages, as a matter of public policy.

Hence, these contractual provisions are nothing more than red herrings.

**The Economic & Property Damages Settlement Preserves Punitive Damage Claims**

First, it is important to recognize that the settlement does not in any way affect the punitive damage claims of personal injury plaintiffs or of economic plaintiffs who are not members of the Class  (*e.g.,* opt outs, local governments, other excluded persons and entities).  In addition, the Settlement vests the Class as a whole with BP's punitive damage claim against Halliburton, (which is not released nor indemnified under the services contract).

Yet, even with respect to the reserved claims of settling classmembers, these are *not* "stand-alone" claims for punitive damages, where the plaintiff has either not asserted or been unable to established a cause of action against the defendant for compensatory damages.[24]

Rather, as set forth above, Plaintiffs have stated a General Maritime Law claim against Halliburton for compensatory damages, and the Plaintiffs have indeed suffered (and can establish, to the extent not already established by the settlement) a *quantum* of actual compensatory damages.

There is nothing in the caselaw which prohibits the *reservation* of a claim for punitive damages where the claim for compensatory damages has been settled. *See* Exxon Shipping v. Baker, 554 U.S. 471, 515 (2008), *affirming, in relevant part,* In re Exxon Valdez, 236 F.Supp.2d 1043, 1058-1060 (D. Alaska 2002); *see also,* Sea Hawk Seafoods, Inc. v. Exxon Corp., 246 F.3d 676 (9th Cir. 2000) ("There is no merit in Plaintiff's argument that punitive damages are unavailable, as a matter of law, to persons who have not asserted compensatory damage claims through an independent lawsuit"); *see also, e.g.,* Wussow v. Commercial Mechanisms, Inc., 97 Wis. 2d 136, 293 N.W.2d 897 (1980) (holding that plaintiff was free to pursue punitive damages claim after settling claim his compensatory damages claim); Burns v. Milwaukee Mutual Insurance Company, 360 N.W.2d 61, at 65, FN 4 (Wis. App. 1984) ("a tort victim may settle a claim for compensatory damages and reserve rights against the tortfeasor for punitive damages");

---

[24] *See, e.g.,* Mullins v. TestAmerica Inc, 564 F.3d 386, 417 (5th Cir. 2009) (punitive damages could not be awarded where compensatory damages were not "requested or awarded"); Lanier v. Sallas, 777 F.2d 321, 325 (5th Cir. 1985) (under Texas law, punitive damages are limited to cases where "actual compensatory damages are found"); Alcorn County MS v. U.S. Interstate Supplies, 731 F.2d 1160, 1169-1171 (5th Cir. 1984) (under Mississippi law, a punitive damage claim was not available where the underlying claim was in equity); Vidrine v. Enger, 752 F.2d 107, 110 (5th Cir. 1984) (a punitive damage claim could not proceed under Mississippi law where the underlying cause of action was barred by the statute of limitations); Virgilio v. City of New York, 407 F.3d 105, 117-118 (2d Cir. 2005) (plaintiff could not pursue claim for punitives where cause of action had been extinguished by "statutorily imposed waiver"); Thrall Car Manufacturing v. Lindquist, 495 N.E.2d 1132 (Ill. App. Ct. 1986) (where plaintiff signed a satisfaction of judgment and therefore had no cause of action under Illinois law against the remaining defendant, a punitive damage claim could not be pursued).

Stephenson v. Collins, 216 So.2d 433 (Fla. 1968) (specifically rejecting the contention that "the parties' compromise and settlement of compensatory damages automatically terminated any right to proceed further for punitive damages arising out of the same cause of action"); *accord,* Howell-Demarest v. State Farm, 673 So.2d 526 (Fla. 4th Dist. 1996). *See also,* Abner v. Kansas City Southern Railroad, 513 F.3d 154, 159 (5th Cir. 2008) ("there is no established federal common law rule that precludes the award of punitive damages in the absence of an award of compensatory damages").

**The Cases Cited by Halliburton are Inapposite**

None of the cases cited by Halliburton involved the settlement of a compensatory damage claim with a reservation by Plaintiffs to pursue punitive damages.  Indeed, most of the cases Halliburton cites stand for a proposition that is actually supportive of Plaintiffs' right to pursue punitive damages from Halliburton:  in order to pursue a punitive damages claim, a plaintiff must have sustained actual or compensatory damages caused by the conduct of the defendant from whom punitive damages are sought, and have a cause of action to recover said damages. Plaintiffs clearly meet this test.

In *La. ACORN Fair Housing v. LeBlanc,* 211 F.3d 298 (5th Cir. 2000), the jury did not award any compensatory damages to the plaintiff at trial.  After noting that "there is no established federal common law rule that precludes the award of punitive damages in the absence of an award of compensatory damages,"[25] the U.S. Fifth Circuit concluded that a "punitive award may stand in the absence of actual damages where there has been a constitutional

---

[25] La. ACORN, 211 F.3d at 301; *citing,* People Helpers Foundation Inc v. City of Richmond, 12 F.3d 1321, 1326 (4th Cir. 1993); *see also,* Abner v. Kansas City Southern Railroad, *supra,* 513 F.3d at 159.

violation." *La. ACORN,* 211 F.3d at 302-303.[26]   Because, however, the Court found no constitutional violation, and because the jury found that no actual damages had been sustained as a result of the statutory violation in question, punitive damages were not available.   The *La. ACORN* decisions says nothing about the situation where, as here, a plaintiff has actually suffered and has actually been compensated for compensatory damages by settlement, while expressly reserving his or her punitive damage claims.

In *Neal v. Barisich, Inc.*, 707 F.Supp. 862 (E.D. La. 1989), the parents of a seaman sued for his wrongful death in inland waters. The court held that because punitive damages are non-pecuniary, they (like loss of society damages) were not recoverable as a matter of law. *Id.* at 873. *Neal* has nothing whatsoever to do with the present case. For one thing, the Supreme Court's recent decision in *Atlantic Sounding Co. v. Townsend*, 129 S.Ct. 2561 (2009), has called into question the use of the pecuniary/non-pecuniary distinction in the punitive damages context. Of more immediate importance, the present case is a maritime oil pollution case where punitive damages are clearly allowed. *Exxon Shipping Co. v. Baker, supra*; B1 ORDER [Doc 3830], pp.26-27, 38.  Cases dealing with the fatal-injury remedies of seamen are not controlling.[27]

The plaintiffs in *Parr v. Nolty J. Theriot, Inc.*, 1990 WL 66380 (E.D. La. 1990), brought suit for the wrongful death of a seaman under the Jones Act, DOHSA and the general maritime

---

[26] *See also,* Abner v. Kansas City Southern Railroad, 513 F.3d 154, 160 (5th Cir. 2008) (a punitive damage award under §1981 need not be accompanied by compensatory damages).

[27] Because plaintiffs will be able to establish substantial actual damages caused by Halliburton's fault, *Neal* and other cases cited by Halliburton for the proposition that one cannot recover punitive damages without demonstrating compensatory damages, are inapplicable. It should be noted, however, that there is a substantial body of law allowing punitive damages when there are no, or only nominal, actual damages that can be shown. See, *e.g.*, Abner v. Kansas City Southern Railroad, *supra*, 513 F.3d at 160; Sea Hawk, Inc. v. Exxon Corp., 246 F.3d 676 (9th Cir. 2000); Ackerly v. Credit Bureau of Sheridan, Inc., 385 F.Supp. 658, 661 (D. Wyo. 1974); Scalise v. National Utility Service, 120 F.2d 938, 941 (5th Cir 1941) (Florida law); Wardman-Justice Motors v. Petrie, 39 F.2d 512, 516 (D.C. Cir. 1930); Edwards v. Nulsen, 347 Mo. 1077, 1086; 152 S.W.2d 28, 32-33 (Mo. 1941); Crystal Dome Oil and Gas Co. v. Savic, 51 Idaho 409, 409; 6 P.2d 155, 156 (1931); Barber v. Hohl, 40 N.J.Super 526, 534-535; 123 A.2d 785, 789-790 (N.J. 1956). One noted torts treatise calls this "the view very much to be preferred." PROSSER AND KEETON ON TORTS (5th ed.) p.14.

law. Like *Neal*, the Court in *Parr* found that punitive damages are non-pecuniary damages and therefore unavailable under the Jones Act or DOHSA. The Court noted that while punitive damages are recoverable under the general maritime law survival action, in *dicta* noted that such damages cannot be recovered "absent a recovery for compensatory damages." Here Plaintiffs have pled and will be able to prove that substantial compensatory damages were caused by Halliburton's misconduct and therefore are free to seek punitive damages from Halliburton.

In *Sletten v. Hawaii Yacht Club,* No.92-00123, 1993 AMC 2863 (D. Haw. 1993), the court held that there was no claim for compensatory damages under the Standby Act, as a matter of law.  This is not an analogous situation.

In *AmWest Savings Ass'n v. Statewide Capital, Inc.,* 144 F.3d 885 (5th Cir. 1998), decided under Texas law, the plaintiffs was found not to have suffered damages as a result of the tortfeasor's conduct.  The Court did not indicate that a party who had been damaged by the tortfeasor's conduct could not enter into a partial settlement with a co-defendant, while reserving its claim for punitives under General Maritime Law.

*Virgilio v. City of New York*, 407 F.3d 105 (2d Cir. 2005), is a New York case concerning the state law implications of compensation from the statutorily-created 9-11 fund. The court ruled that plaintiffs who accepted money from the fund could not thereafter seek punitive damages on the basis of a "statutorily imposed waiver," *Id*. at 117-18, a matter totally irrelevant to the present case.

In *Thrall Car Manufacturing Co. v. Lindquist*, 495 N.E. 2d 1132 (Ill. App. Ct. 1986), plaintiff obtained a summary judgment against one defendant and, after the judgment was paid, signed a satisfaction of judgment as to that defendant. It then sought punitive damages from the remaining defendant. The Court of Appeal held that the plaintiff had no cause of action under

Illinois law against the remaining defendant and therefore, in the absence of such a cause of action, could not pursue punitive damages. Nothing in the Settlement Agreement, by contrast, extinguishes Plaintiffs' cause of action as against Halliburton as a matter of law.

Quite simply, there is nothing in the caselaw which prohibits the reservation of a claim for punitive damages where the claim for compensatory damages has been settled.[28]

## There is Nothing in the BP Economic Settlement that Would Procedurally (or otherwise) Prevent a Classmember or other Plaintiff from Establishing His or Her (or a Collective) *Quantum* of Compensatory Damages

Initially, it is important to note that both the assessment of punitive damages with respect to any particular claim (whether individual, class, or assigned) and the Due Process limitation on all punitive damages arising out of an event or conduct are multi-factored analyses, and not mechanical applications of either individual or global compensatory damage quantifications.[29]

---

[28] *See* Exxon Shipping v. Baker, 554 U.S. 471, 515 (2008), *affirming, in relevant part,* In re Exxon Valdez, 236 F.Supp.2d 1043, 1058-1060 (D. Alaska 2002); *see also,* Sea Hawk Seafoods, Inc. v. Exxon Corp., 246 F.3d 676 (9th Cir. 2000); Wussow v. Commercial Mechanisms, Inc., 97 Wis. 2d 136, 293 N.W.2d 897 (1980); Burns v. Milwaukee Mutual Insurance Company, 360 N.W.2d 61, at 65, FN 4 (Wis. App. 1984); Stephenson v. Collins, 216 So.2d 433 (Fla. 1968); *accord,* Howell-Demarest v. State Farm, 673 So.2d 526 (Fla. 4th Dist. 1996).

[29] *See, e.g.,* Exxon Shipping v. Baker, 554 U.S. 471, 510-511 (2008) (taking into account whether the tortfeasor was merely reckless or malicious, whether the conduct was motivated by pecuniary gain, whether the recovery is substantial, and the nature and extent of the injury); Philip Morris v. Williams, 549 U.S. 346, 355 (2007) ("Respondent argues that she is free to show harm to other victims because it is relevant to a different part of the punitive damages constitutional equation, namely, reprehensibility. That is to say, harm to others shows more reprehensible conduct. Philip Morris, in turn, does not deny that a plaintiff may show harm to others in order to demonstrate reprehensibility. Nor do we. Evidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible – although counsel may argue in a particular case that conduct resulting in no harm to others nonetheless posed a grave risk to the public, or the converse"); State Farm v. Campbell, 538 U.S. 408, 419 (2003) (courts consider "whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident"); BMW v. Gore, 517 U.S. 559, 582 (1996) ("we have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual *and potential* damages to the punitive award. Indeed, low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine. It is appropriate, therefore, to reiterate our rejection of a categorical approach").

A key fallacy in Halliburton's Motion is the notion that Halliburton's punitive damage exposure is somehow extinguished simply because another party (BP, in this case) is *paying* the compensatory damages to the settling plaintiffs.  The critical question, however, is the *harm* to the Plaintiffs (or others) for which the tortfeasor is legally responsible, (not who may or may not pay for the harm).

Indeed, under General Maritime Law, a tortfeasor such as Halliburton is jointly and severally liable for *all* compensatory damages to the plaintiffs, irrespective of what its percentage degree of fault might be determined to be.

There is nothing within the Economic & Property Damages Settlement Agreement that would foreclose the procedural right or ability of a single plaintiff, the existing class (trust), or a subsequently certified litigation class from establishing what the "compensatory" element of damages are.  To the extent that the total harm or damages arising out of the spill might be relevant – to either a "class-wide" assessment of punitive damages or even just a single suing plaintiff's claim for punitive damages to which Halliburton can be exposed – such could be established through expert testimony or other means.  To the extent that an individual plaintiff's harm might be relevant to the punitive damage award, the plaintiff could establish the amount of damages that he or she sustained as a result of the spill, just like any plaintiff would in any ordinary case.  Regardless, procedurally, there is no reason that a plaintiff (or a class) who has a punitive damage claim against Halliburton cannot, as part of its proof of punitive damages, put on proof of its (and/or the collective) underlying compensatory damages, determined in the form of a jury interrogatory or a finding of fact by the judge.

Halliburton, in this respect, can't have it both ways:  If the stipulation to the full amount of Settlement Compensation is not binding on Halliburton for the purpose of establishing Halliburton's punitive damage exposure, then it shouldn't be binding on the Plaintiff – or the Class Plaintiffs collectively.

Nevertheless, it would seem that the amounts paid by BP to Settlement Class Members is at the very least *relevant*  to the question of how much harm was caused to the Plaintiffs, whether individually or collectively.[30]

In *Baker,* the Court included in the compensatory damage base amount (to which the 1:1 ratio found to be applicable in that case was applied) settlements that had been paid both to members of the class and to parties that were not before the Court. *See* Exxon Shipping v. Baker, 554 U.S. 471, 515 (2008) (adopting the district court's calculation of the total relevant compensatory damages, which included not only the plaintiff class' compensatory jury verdict, but a series of settlements made by both Exxon and third parties (*i.e.* other defendants) to individuals, groups, and entities both inside and outside of the class); s*ee* In re Exxon Valdez, 236 F.Supp.2d 1043, 1058-1060 (D. Alaska 2002).

## BP's Claim Against Halliburton is a Single Undivided Claim Which Requires No Further Certification under Rule 23

A Class, once properly certified, is treated as its own juridical entity. *See, e.g.,* United States Parole Comm'n v. Geraghty, 445 U.S. 388 (1980); Zablocki v. Redhare, 434 U.S. 378 (1978); Franks v. Bowman Transp. Co., 424 U.S. 747 (1976); Sosna v. Iowa, 419 U.S. 393 (1975); Clark v. State Farm Mut. Auto. Ins. Co., 590 F.3d 1134, 1138 (10th Cir. 2009); *The*

---

[30] Certainly, BP's OPA payments (whether thru the GCCF, the Court-Supervised Settlement Program, and/or BP's own claims processes) can be concretely and definitively quantified.  As can BP's direct first-party damages.

*Supreme Court, 1981 Term: Forward: Public Law Litigation and the Burger Court,* 96 HARV.L.REV. 4, 42 (Nov. 1982); *see also, e.g.,* Zeisl v. Watman (In re Austrian & German Bank Holocaust Litig.), 317 F.3d 91, 94 (2d Cir. 2003) (Court notes, in an appeal involving attorney's fees, that one of the benefits of class settlement was the assignment of contribution claims); In re PNC Fin. Servs. Group, Inc., Sec. Litig., 440 F.Supp.2d 421, 455 (W.D. Pa. 2006) (approving settlement that included assignment of contribution rights over the objection of a non-settling defendant); In re Combustion, Inc., 968 F.Supp. 1116, 1122 (W.D. La. 1997) (approval to four settlements involving the assignment of indemnity rights); McMillon v. Hawaii, 2011 U.S. Dist. LEXIS 17859 (D. Haw. Feb. 22, 2011) (approving class settlement including assignment of state's contribution claims "to the Named Plaintiffs to prosecute on behalf of the Class"); oftlineVeal v. Voyager Prop. & Cas. Ins. Co., 2008 U.S. Dist. LEXIS 120929 (M.D. Fla. June 19, 2008) (assigned indemnity action brought by lead plaintiff on behalf of "previously certified class" as a single entity).

In this case, the Class is not bringing a "class" claim against Halliburton, but merely stepping into the shoes of BP, which has a single undivided claim that requires no "certification". *See, e.g.,* Combo Maritime v. U.S. United Bulk Terminal, 615 F.3d 599, 603-604 (5th Cir. 2010) (where settling party takes an assignment, he "essentially steps into the plaintiff's shoes"); LRA v. Socialist People's Libyan Arab Jamahiriya, 533 F.3d 837, 840, 844 (D.C. Cir. 2008) (insurer that took an assignment of accident victims thereby "steps into the shoes" of the victims.... "It is well established the assignee or subrogee owns 'the substantive right' of the claimant").

A trustee, for example, is authorized to bring a claim on behalf of a trust, without formally certifying under Rule 23 a "class" of the trust beneficiaries.   And, indeed, the assignment in this case can be viewed as an assignment to the Settlement Trust.[31]

Any subsequent allocation and distribution between and among individual classmembers is a back-end, post-judgment process, in which the defendant has no interest. *See, e.g.*, NEWBERG ON CLASS ACTIONS (4th Ed. 2002) §10.12.

<u>**Conclusion**</u>

For the above and foregoing reasons, Halliburton's Motions for Partial Judgment on the Pleadings should be denied.

This <u>20</u>[th] day of <u>May</u>, <u>2013</u>.

Respectfully submitted,

<u>    /s/   Stephen J. Herman    </u>
**Stephen J. Herman**, La. Bar No. 23129
**HERMAN HERMAN & KATZ LLC**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 569-6024
E-Mail: <u>sherman@hhklawfirm.com</u>
*Plaintiffs' Liaison Counsel*

<u>    /s/ James Parkerson Roy    </u>
**James Parkerson Roy**, La. Bar No.11511
**DOMENGEAUX WRIGHT ROY & EDWARDS LLC**
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233-3033
Fax No. (337) 233-2796
E-Mail: <u>jimr@wrightroy.com</u>
*Plaintiffs' Liaison Counsel*

---

[31] *See* SETTLEMENT AGREEMENT, Section 5.14 ("Because any such funds are for the benefit of the Economic Class as a whole, these funds will be held in reserve by the Trustee in a qualified settlement fund authorized by the Court pending an equitable and appropriate allocation or use of such funds, to be approved by the Court, which may include: (a) pro rata distribution to Economic Class Members; (b) to augment the Seafood Compensation Program; or (c) to address extraordinary needs or circumstances as agreed to by the BP Parties, which agreement shall not be unreasonably withheld. In any event, the Court will decide and direct any allocation, and may appoint a special master or other neutral party to create any allocation or for other appropriate purposes").

## PLAINTIFF STEERING COMMITTEE

Brian H. Barr
LEVIN, PAPANTONIO
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office:  (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT, DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office:  (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail: **ecabraser@lchb.com**

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail: pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail: rtc@cunninghambounds.com

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY  10003
Office:  (212) 558-5802
Telefax: (212) 344-5461
E-Mail: rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office:  (334) 269-2343
Telefax: (334) 954-7555
E-Mail: rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH,
LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail: mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail: mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail:  ervin@colson.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Opposition has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of May, 2013.

/s/ Stephen J. Herman and James Parkerson Roy