# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179 |
| | | SECTION J |
| This document relates to: | * * | Judge Barbier |
| *All cases* | * * | Magistrate Judge Shushan |

**BP'S COMBINED OPPOSITION TO (i) TRANSOCEAN'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AS TO CLAIMS ASSIGNED UNDER SETTLEMENT AGREEMENT AND (ii) HALLIBURTON'S MOTION FOR JUDGMENT ON THE PLEADINGS OR ALTERNATIVE MOTION FOR SUMMARY JUDGMENT REGARDING BP'S ASSIGNMENT OF CLAIMS**

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Andrew B. Bloomer, P.C.
R. Chris Heck
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000
Telefax:  (312) 862-2200

Jeffrey Bossert Clark
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 879-5000
Telefax:  (202) 879-5200

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone:  (504) 581-7979
Telefax:  (504) 556-4108

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 662-5985
Telefax:  (202) 662-6291

*ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC., BP AMERICA PRODUCTION COMPANY, AND BP P.L.C.*

## <u>TABLE OF CONTENTS</u>

**Page**

BACKGROUND .................................................................................................................3

    A.    BP's Claims And The Court's Indemnity Orders. ....................................................3

    B.    The Economic And Medical Class Settlements. ......................................................4

    C.    OPA's Structure. .....................................................................................................5

ARGUMENT ....................................................................................................................6

I.    BP HAS STATUTORY CONTRIBUTION RIGHTS UNDER OPA. ..............................7

    A.    OPA Creates Its Own Statutory Contribution Right, Independent Of Any Contribution Rights Under Other Laws. ................................................................7

    B.    OPA's Statutory Contribution Right Does Not Require A "Full Release." ............8

        1.    A "Full Release" Requirement Contradicts OPA's Text. ...........................8

        2.    Other Statutory And Common Law Contribution Rights Do Not Require A "Full Release." .....................................................................9

        3.    The Foundation Of Contribution Under Maritime Law Is Radically Different From OPA Statutory Contribution. ...........................................11

    C.    Requiring "Full Releases" Would Contravene The Structure And Purposes Of OPA and Have Perverse Consequences. .........................................................12

    D.    OPA Allows Contribution For All Removal Costs And Damages Paid By A Responsible Party Or Other Person. ...................................................................14

II.    BP HAS STATUTORY SUBROGATION RIGHTS UNDER OPA. ..............................16

III.    UNDER OPA, BP RETAINS ITS CONTRIBUTION AND SUBROGATION RIGHTS UNDER MARITIME AND OTHER LAWS. ...................................................17

    A.    BP Has Contribution Rights Against The Movants Under Maritime Law. ...........17

    B.    BP Has Subrogation Rights Against Transocean Under Maritime Law. ..............19

IV.    MOVANTS' OTHER ARGUMENTS DEPEND ON DISPUTED FACTS AND ARE NOT APPROPRIATE FOR JUDGMENT ON THE PLEADINGS. .......................20

CONCLUSION ................................................................................................................21

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>CASES</u>

*62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*,
  340 U.S. 593 (1951) ................................................................................................ 8

*Am. Int'l Specialty Lines Ins. Co. v. Res-Care, Inc.*,
  529 F.3d 649 (5th Cir. 2008) ................................................................................. 21

*Arch Chems., Inc. v. Radiator Specialty Co.*,
  653 F. Supp. 2d 1099 (D. Or. 2009) ............................................................... 14, 20

*Blazovic v. Andrich*,
  590 A.2d 222 (N.J. 1991) ..................................................................................... 14

*Buffalo Marine Servs. Inc. v. United States*,
  663 F.3d 750 (5th Cir. 2011) ................................................................................. 15

*Cape Flattery Ltd. v. Titan Mar., LLC*,
  647 F.3d 914 (9th Cir. 2011) ................................................................................. 15

*Colony Ins. Co. v. Peachtree Constr., Ltd.*,
  647 F.3d 248 (5th Cir. 2011) ................................................................................. 21

*Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC*,
  615 F.3d 599 (5th Cir. 2010) .......................................................... 11, 17, 18, 19

*Compania Anonima Venezolana De Navegacion v. A.J. Perez Exp. Co.*,
  303 F.2d 692 (5th Cir. 1962) .......................................................................... 19, 20

*Continental Cas. Co. v. Canadian Universal Ins. Co.*,
  924 F.2d 370 (1st Cir. 1991) ................................................................................. 21

*Cooper Labs., Inc. v. Int'l Surplus Lines Ins. Co.*,
  802 F.2d 667 (3d Cir. 1986) ................................................................................. 21

*Daughdrill v. Ocean Drilling & Exploration*,
  665 F. Supp. 477 (E.D. La. 1987) ........................................................................... 3

*Dean v. United States*,
  556 U.S. 568 (2009) ................................................................................................ 8

*Duncan v. Walker*,
  533 U.S. 167 (2001) ......................................................................................... 8, 16

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Gabarick v. Laurin Maritime (Am.) Inc.*,
    2009 WL 102549 (E.D. La. Jan. 12, 2009) ........................................................................ 7, 15

*Hall v. Archer-Daniels-Midland Co.*,
    524 N.E.2d 586 (Ill. 1988) ................................................................................................ 20

*Howard v. Gen. Cable Corp.*,
    674 F.2d 351 (5th Cir. 1982) ............................................................................................ 14

*King v. St. Vincent's Hosp.*,
    502 U.S. 215 (1991) ........................................................................................................... 8

*La. Pub. Serv. Comm'n v. FCC*,
    476 U.S. 355 (1986) ........................................................................................................... 7

*Lexington Ins. Co. v. S.H.R.M. Catering Servs., Inc.*,
    567 F.3d 182 (5th Cir. 2009) ............................................................................................ 19

*Marathon Pipe Line Co. v. LaRoche Industries Inc.*,
    944 F. Supp. 476 (E.D. La. 1996) .................................................................................... 15

*McDermott, Inc. v. AmClyde*,
    511 U.S. 202 (1994) ......................................................................................................... 11

*McNeil v. United States*,
    508 U.S. 106 (1993) ........................................................................................................... 7

*Melton v. Teachers Ins. & Annuity Ass'n of Am.*,
    114 F.3d 557 (5th Cir. 1997) .............................................................................................. 7

*Murphy v. Fla. Key Electric Coop. Ass'n, Inc.*,
    329 F.3d 1311 (11th Cir. 2003) ........................................................................................ 18

*Nixon v. Missouri Municipal League*,
    541 U.S. 125 (2004) ......................................................................................................... 14

*Ondimar Transportes Maritimos v. Beatty Street Props., Inc.*,
    555 F.3d 184 (5th Cir. 2009) ............................................................................................ 19

*Red River Farms v. United States*,
    2009 WL 2983195 (D. Ariz. Sept. 17, 2009) .................................................................. 16

*Robins Dry Dock v. Flint*,
    275 U.S. 303 (1927) ......................................................................................................... 15

*Rollins v. Peterson Builders, Inc.*,
    761 F. Supp. 918 (D.R.I. 1990) ....................................................................................... 14

iii

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*S.J. Gargrave Syndicate v. Rolls-Royce Commercial Marine Inc.*,
    2006 WL 83100 (E.D. La. Jan. 12, 2006) ............................................... 18

*Seaboats, Inc. v. Alex C Corp.*,
    2003 WL 203078 (D. Mass. Jan. 30, 2003) ...................................... 15, 16

*Sea-Land Serv., Inc. v. United States*,
    874 F.2d 169 (3d Cir. 1989) ............................................................. 17

*Total E & P USA, Inc. v. Kerr-McGee Oil and Gas Corp.*,
    711 F.3d 478 (5th Cir. 2013) ............................................................. 6

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001) ..................................................................... 8, 16

*United States v. 0.073 acres of land, more or less, situate in Parishes of Orleans
    and Jefferson, La.*,
    705 F.3d 540 (5th Cir. 2013) ............................................................. 6

*United States v. Atl. Research Corp.*,
    551 U.S. 128 (2007) ........................................................................ 8

*United States v. Bodenger*,
    2003 WL 22228517 (E.D. La. Sept. 25, 2003) ...................................... 15

*United States v. Burrell*,
    634 F.3d 284 (5th Cir. 2011) ........................................................... 14

*United States v. Davis*,
    261 F.3d 1 (1st Cir. 2001) ................................................................ 9

*United States v. Inter-Bay Towing Co.*,
    2005 WL 3995989 (S.D. Tex. Aug. 8, 2005) ...................................... 16

*United States v. Viking Res., Inc.*,
    607 F. Supp. 2d 808 (S.D. Tex. 2009) ............................................... 9

*Utah Power & Light Co. v. Federal Ins. Co.*,
    724 F. Supp. 846 (D. Utah 1989) .................................................... 20

## STATUTES

33 U.S.C. § 2702(d)(1)(B) ............................................................... 11

33 U.S.C. § 2705(a) ............................................................... 5, 9, 12

33 U.S.C. § 2709 ............................................................... passim

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

33 U.S.C. § 2710(c) ............................................................................................. passim

33 U.S.C. § 2715 ............................................................................................. 2, 16, 17

33 U.S.C. § 2715(a) ............................................................................................... 5, 16

33 U.S.C. § 2715(b)(1) ............................................................................................... 16

33 U.S.C. § 2717(f)(3)(B) ........................................................................................... 8

## OTHER AUTHORITIES

18 Am. Jur. 2d Contribution § 13 ............................................................................ 10

18 C.J.S. Contribution § 6 ....................................................................................... 10

2 Admiralty & Mar. Law § 18-3 (5th ed.) ................................................................ 16

H.R. Rep. No. 101-653 (1990) (Conf. Rep.), *reprinted in* 1990 U.S.C.C.A.N. 779 ................... 16

Restatement (Second) of Torts § 886(A) .................................................................... 9

Restatement (Third) of Torts: Apportionment of Liability § 23 ............................... 9, 10

v

Under the plain language of OPA, as well as the principles of maritime law, BP Exploration & Production Inc. and BP America Production Company ("BP") have statutory and common law contribution and subrogation claims against Transocean and HESI ("Movants") for compensatory damages. Movants argue that BP cannot have contribution claims for payments made under the class settlements because they do not include what Movants call a "full release." The record is undisputed, and Movants both admit, that BP has fully satisfied the compensatory damages of all class members. Thus, Movants' fundamental argument is that for an OPA responsible party to obtain contribution, it must settle not only all compensatory damages but also must pay for all **punitive damage** claims against co-defendants. Nothing in OPA, maritime law, logic, or common sense supports such a rule. Movants' argument also violates the public policy behind punitive damages of punishing the particular party against whom they are imposed. Movants' motions against BP's valid contribution and subrogation claims should therefore be denied.[1]

*First*, OPA creates a right of contribution in 33 U.S.C. § 2709. This right should be interpreted according to its plain language, which does not require a "full release" as a prerequisite for contribution. Notably, a "full release" is not required under other environmental statutes such as CERCLA or under general principles of contribution. The rationale for the so-called "full release" principle under maritime law — that a settling party is deemed to have paid for only its own liability absent a plaintiff's express release of all parties — is antithetical to the terms and structure of OPA, which requires a responsible party to pay all claims and then seek contribution from other liable parties. The requirement of a "full release" would thwart OPA's

---

[1] In this Opposition, BP responds to Transocean's arguments that BP has no contribution or subrogation claims. BP assumes that Class Counsel will respond to other arguments, such as whether the assignment was proper and whether the Class can pursue the Assigned Claims set forth in the Economic and Property Damages Settlement.

goals of encouraging responsible parties to swiftly settle legitimate claims by preserving the settling party's right to recover from other liable parties.

*Second*, Movants' arguments ignore BP's statutory subrogation rights under OPA, 33 U.S.C. § 2715. This provision does not contain any "full release" requirement, nor is adding one necessary or permissible. Any other conclusion would contravene OPA's language, structure, and purpose, including a party's right to subrogation for partial, interim payments.

*Third*, OPA expressly preserves a responsible party's contribution and subrogation rights under other laws, including maritime law. 33 U.S.C. § 2710(c). Thus, BP can also bring maritime contribution and subrogation claims. Movants misinterpret the Fifth Circuit's maritime law cases on contribution. None of those cases involved a settling party fully satisfying a plaintiff's compensatory damages or held that a settling party must also secure a release of the plaintiff's punitive damages claims against co-defendants. Moreover, the reason for prohibiting contribution rights is to prevent a double recovery against the non-settling defendants — a concern that is fully addressed here as plaintiffs cannot obtain compensatory damages from Movants.

*Finally*, Movants claim that BP made voluntary payments, waived defenses, and paid for punitive damages. These are disputed fact questions inappropriate for resolution on a motion for judgment. Courts regularly allocate amounts for purposes of contribution, such as between compensatory and punitive damages. Similarly, arguments that indemnities or releases prohibit BP's claims are premature. The Court's prior indemnity opinions held that various conduct could invalidate or discharge the indemnities. Thus, arguments that BP has to indemnify Movants must await a final adjudication of Movants' fault.

## BACKGROUND

### A.    BP's Claims And The Court's Indemnity Orders.

On April 20, 2011, BP filed counter-claims and cross-claims against both Transocean and Halliburton.  Among other claims, BP alleged separate counts against Transocean for statutory contribution under OPA, contribution, statutory subrogation under OPA, and subrogation.  Rec. Doc. 2074 at 26-28.  BP sought recovery from Transocean for all or part of the damages resulting from the *Deepwater Horizon* incident and resulting oil spill.  *Id.*  BP brought similar claims seeking similar recoveries against Halliburton.  Rec. Doc. 2082 at 41-44.

Transocean and HESI filed motions arguing that, under their contracts with BP entities, BP should be required to indemnify them, Rec. Docs. 4477, 4767, which BP opposed.  Rec. Docs. 4826, 4977.

The Court held that BP was required to indemnify the Movants for gross negligence but not intentional misconduct such as fraud; reserved the question of whether the Movants had materially breached their contracts with BP or materially increased BP's risk so as to discharge the indemnities; and ruled that BP was not required to indemnify Movants for penalties under the CWA.  Rec. Docs. 5446, 5493.  The Court also held that contractual indemnification for punitive damages was against public policy.  Rec. Doc. 5446 at 18-19.  Quoting *Daughdrill v. Ocean Drilling & Exploration*, 665 F. Supp. 477, 481-82 (E.D. La. 1987), the Court explained that to "'require a party, without recompense, to shoulder the burden of egregious conduct by another and hence permit that other to avoid punitive damage liability would make a mockery of the very concept.'"  Rec. Doc. 5446 at 19.[2]

---

[2]  BP reserves all rights of review relating to the Court's indemnity orders.

### B.     The Economic And Medical Class Settlements.

BP and the PSC entered into two class settlements in April 2012: the *Deepwater Horizon* Economic and Property Damages Settlement Agreement, Rec. Doc. 6430-1 ("Economic Settlement"), and *Deepwater Horizon* Medical Benefits Class Action Settlement Agreement, Rec. Doc. 6427-1 ("Medical Settlement").   The Economic Class agreed that all of their compensatory damages against Movants were fully satisfied:  "The Economic Class, Plaintiffs, and all Economic Class Members agree and acknowledge that the Settlement Payment(s) … constitute full, complete, and total satisfaction of all of their Compensatory Damages against the Transocean Parties and the Halliburton Parties."  Economic Settlement, Ex. 21 ¶ 1.1.1.

This satisfaction of compensatory damages is backed up by provisions preventing Class Members from seeking or recovering compensatory damages from the Movants.  "Neither the Economic Class nor any Plaintiff or Economic Class Member shall accept or attempt to recover … any Compensatory Damages from the Transocean Parties and the Halliburton Parties, except from Assigned Claims … ."  *Id.* ¶ 1.1.2.2.  Moreover, in "the event that the Economic Class or any of the Plaintiffs or Economic Class Members is or becomes the beneficiary of any judgment, decision, award, or settlement … [they] shall not accept, execute on, attempt to collect, or otherwise seek recovery of any Compensatory Damages from the Transocean Parties or from the Halliburton Parties, except from Assigned Claims … ."  *Id.* ¶ 1.1.2.3.  The Medical Settlement contains parallel provisions.  Medical Settlement ¶¶ XVII.A, XVII.B.2, XVII.B.3.  At the same time, the Settlements reserve punitive damages claims by the Economic and Medical Classes against Transocean and Halliburton.  Economic Settlement ¶ 3.6; Medical Settlement ¶ XVI.G.

In short, the Economic Settlement and Medical Settlement provide complete protection to Transocean and Halliburton against compensatory damages by Class Members while leaving open recovery of punitive damages.  The Movants agree that the Settlements completely resolve

Class Members' compensatory damages.  For example, Transocean has admitted that "the Settlement Agreements extinguish the class members' compensatory damage claims against Transocean," Rec. Doc. 8105-1 at 2, while HESI concedes that "settling Plaintiffs have relinquished any claim for compensatory damages against HESI."  Rec. Doc. 8267-1 at 3.

### C.     OPA's Structure.

As this Court has previously stated, OPA's "intent is to encourage settlement and reduce the need for litigation."  Rec. Doc. 3830 at 21.  OPA sets "up a scheme by which a 'Responsible Party' (typically the vessel or facility owner) was designated and made strictly liable (in most instances) for clean up costs and resulting economic damages."  *Id.*  "Claimants present their claims to the Responsible Party."  *Id.*

OPA's objective of encouraging rapid compensation of claimants is illustrated by its requirement that the "responsible party shall establish a procedure for the payment or settlement of claims for interim, short-term damages."  33 U.S.C. § 2705(a).  A claimant's acceptance of such interim damages that are less than the full amount of its ultimate damages "shall not preclude recovery by the claimant for damages not reflected in the paid or settled partial claim."  *Id.*

After the responsible party pays claims, it is allowed to seek recovery from other allegedly liable parties.  Rec. Doc. 3830 at 21.  OPA provides three avenues for recovery.  *First*, OPA creates a right of contribution:  "A person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law."  33 U.S.C. § 2709.  *Second*, OPA creates a right of subrogation: "Any person, including the Fund, who pays compensation pursuant to this Act to any claimant for removal costs or damages shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law."  33 U.S.C. § 2715(a).  *Third*, OPA preserves contribution, subrogation, and other claims that a

5

responsible party has under other laws:  "Nothing in this Act … bars a cause of action that a responsible party subject to liability under this Act … has or would have, by reason of subrogation or otherwise, against any person."  33 U.S.C. § 2710(c).

## ARGUMENT

In deciding a motion for judgment on the pleadings, courts "look only to the pleadings and accept all allegations contained therein as true. … Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of material fact and only questions of law remain.  The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."  *United States v. 0.073 acres of land, more or less, situate in Parishes of Orleans and Jefferson, La.*, 705 F.3d 540, 543 (5th Cir. 2013) (citations omitted).

HESI pleads in the alternative for summary judgment.  Summary judgment may be granted "only if the moving party has demonstrated that there is no genuine issue as to any material fact and that judgment as a matter of law is warranted.  In determining whether a case presents triable issues of fact, … the district court [] may not make credibility determinations or weigh the evidence and [] must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party."  *Total E & P USA, Inc. v. Kerr-McGee Oil and Gas Corp.*, 711 F.3d 478, 487 (5th Cir. 2013) (citations omitted).

The only contribution claims that Movants contend are invalid are those for Settlement payments.  Transocean defines "Contribution Claims" as "BP's claims for reimbursement of payments made under the Settlement Agreement" and uses the term "Contribution Claims" in the arguments at issue in this Opposition.  *E.g.*, Rec. Doc. 8120-1 at 1, 10, 14, 16, 22, 25.  Similarly, the relevant parts of HESI's motion concern only contribution claims for payments made under the Settlements, Rec. Doc. 8268-1 at 10-15, and thus HESI has waived any arguments that BP

lacks contribution claims for other damages. *See Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 561 (5th Cir. 1997). Multiple OPA provisions establish that BP can recover for the payments made under the Settlements.

## I.     BP HAS STATUTORY CONTRIBUTION RIGHTS UNDER OPA.

### A.     OPA Creates Its Own Statutory Contribution Right, Independent Of Any Contribution Rights Under Other Laws.

OPA creates a statutory right to contribution "against any other person who is liable or potentially liable under this Act or another law." 33 U.S.C. § 2709. HESI appears to believe that this right is the same as contribution under maritime law, Rec. Doc. 8268-1 at 8-11, while Transocean claims the OPA contribution right should be governed by its misunderstanding of traditional contribution principles, both to the effect that a contribution right exists only where the settling party obtains a "full release." Rec. Doc. 8120-1 at 10-11. HESI and Transocean are wrong.

Section 2709 creates a new right in addition to and separate from other rights to contribution. As courts in this district have recognized, the plain language of § 2709 affirmatively gives a person the right to bring a contribution action. *Gabarick v. Laurin Maritime (Am.) Inc.*, No. 08-4007, 2009 WL 102549, at *2 (E.D. La. Jan. 12, 2009) ("The OPA also creates a statutory right to seek contribution from any liable or potentially liable person, and it establishes its own statute of limitations."). If Congress had intended for § 2709 simply to provide a right of contribution under maritime law, the provision would say either that OPA does not prevent contribution actions under other laws or that a party can seek contribution under maritime law. But that is not what § 2709 says, and Congress's chosen language cannot be ignored or rewritten. *McNeil v. United States*, 508 U.S. 106, 111 (1993); *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 376 (1986).

Moreover, interpreting § 2709 simply to allow contribution under maritime or other law would violate the rule against treating statutory provisions as mere surplusage.  *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001); *Duncan v. Walker*, 533 U.S. 167, 174 (2001).  Section 2710(c) already provides that nothing in OPA bars a responsible party from bringing a cause of action that it would have "by reason of subrogation or otherwise, against any person."  Giving § 2709 the same meaning of merely preserving existing rights, including those for contribution and subrogation, would render one or the other statutory provision superfluous.

**B.      OPA's Statutory Contribution Right Does Not Require A "Full Release."**

**1.      A "Full Release" Requirement Contradicts OPA's Text.**

As always in statutory interpretation, the starting point is OPA's text.  Nothing in § 2709 requires full release before a party may seek contribution.  Instead, § 2709 provides, without qualification, that a person may bring a civil action for contribution against any other person who is liable or potentially liable.  Engrafting a "full release" requirement would impermissibly rewrite the statute and add language that Congress did not include.  *Dean v. United States*, 556 U.S. 568, 572 (2009); *62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 596 (1951).  Neither Movant cites a single case that has imposed a "full release" requirement for OPA contribution.

Furthermore, OPA must be read as a whole, *United States v. Atl. Research Corp.*, 551 U.S. 128, 135 (2007); *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991), and the Act's other provisions show that there is no requirement for a full release.   33 U.S.C. § 2717(f)(3)(B) establishes a limitations period for actions "for contribution for any removal costs or damages" based on a "judicially approved settlement."  Thus, OPA expressly contemplates that responsible parties or others may bring contribution actions based on settlements.  If Congress had intended

to condition contribution rights on the settling party obtaining a "full release," it would have included such requirements in OPA, yet none exist.

In addition, § 2705(a) provides that a responsible party shall establish a procedure to pay or settle "interim, short-term damages," the payment of which "shall not preclude recovery by the claimant for damages not reflected in the paid or settled partial claim." 33 U.S.C. § 2705(a). Even though payment of interim damages does not preclude further recovery, such interim damages claims are still damages covered by OPA's contribution provision. Movants' extra-statutory "full release" requirement would prevent contribution actions for interim costs, would cause OPA's provisions to contradict one another, and would discourage responsible parties from promptly paying claims.

### 2.    Other Statutory And Common Law Contribution Rights Do Not Require A "Full Release."

Beyond the text of OPA, contribution provisions in other environmental statutes do not impose any "full release" requirement. In particular, courts have held that contribution actions under CERCLA can be based on partial settlements. *See United States v. Davis*, 261 F.3d 1, 48 (1st Cir. 2001). *Davis* held, in language equally applicable to OPA, that "CERCLA clearly anticipated that some settlements … would cover only a portion of the total cleanup costs … . The statute does not impose a requirement that a contribution action plaintiff must settle the entire cost of cleaning up a site before it can seek contribution." *Id.* Courts have relied on CERCLA case law to interpret OPA. *See United States v. Viking Res., Inc.*, 607 F. Supp. 2d 808, 830 (S.D. Tex. 2009).

Transocean argues that "traditional principles" support requiring a full release, but the reality is that such principles support BP. Transocean relies on the Restatement (Second) of Torts § 886(A). However, the Restatement (Third) of Torts: Apportionment of Liability § 23 has

been released, and it "replaces Restatement Second, Torts § 886A." RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 23 cmt. a. As the Third Restatement explains, a "person seeking contribution must extinguish the liability of the person against whom contribution is sought **for that portion of liability**, either by settlement with the plaintiff or by satisfaction of judgment." *Id.* cmt. b. (emphasis added). It provides an illustration where "A sues B, C, and D for an indivisible injury sustained in an automobile accident. A obtains a judgment against B, C, and D whereby they are jointly and severally liable to A for $100,000. The factfinder assigns 50 percent responsibility to B, 30 percent responsibility to C, and 20 percent responsibility to D." *Id.* illus. 1. "**B pays A $80,000 of the $100,000 judgment. C and D remain potentially liable to A for $20,000. B can obtain contribution from C or D** only for a total of $30,000 (($100,000 x 50[%])−$20,000 unextinguished liability) because C and D are still potentially liable to A." *Id.* illus. 2 (emphasis added). Thus, the Restatement of Torts explicitly provides that a party can obtain contribution based on a partial settlement that leaves co-defendants potentially liable.

Nor is this principle of allowing contribution for partial payments limited to the Restatement of Torts. *See* 18 AM. JUR. 2D CONTRIBUTION § 13 ("The requirement of a payment or other discharge of a common obligation is met, so as to entitle a party to contribution, where the claimant pays more than his or her equitable share of the common debt. **It is not necessary that the claimant satisfy the entire obligation**.") (emphasis added); 18 C.J.S. CONTRIBUTION § 6 ("While **it is not necessary that the entire debt should have been paid**, the payment must have been for more than the share of the person seeking contribution.") (emphasis added).

### 3.   The Foundation Of Contribution Under Maritime Law Is Radically Different From OPA Statutory Contribution.

Movants argue that BP's OPA contribution rights should be limited by principles that exist under maritime law.  But the background assumptions of OPA and maritime law relating to contribution are in direct opposition.

As the Supreme Court held in *McDermott, Inc. v. AmClyde*, allocation of liability under maritime law is based on proportionate principles.  511 U.S. 202 (1994).  Maritime law does not impose a requirement that one defendant pay all of the plaintiffs' damages and then seek contribution from co-defendants.  Instead, each defendant is treated separately and need only pay its proportionate share of liability.  Thus, under maritime law, the general assumption that a settling party is settling only its own liability and not those of its co-defendants makes sense.  *See Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 603 (5th Cir. 2010).

OPA is based on radically different principles.  Under OPA, each liable party does not pay its own share of liability directly to plaintiffs, as under maritime law.  Instead, "[c]laimants present their claims to the Responsible Party, who pays the claims and is then allowed to seek contribution from other allegedly liable parties."  Rec. Doc. 3830 at 21.  OPA requires the responsible party to pay for all removal costs and damages, including those for which co-defendants are liable.  Indeed, even when the responsible party is blameless and a third party is **solely** responsible for a spill, the responsible party must nevertheless pay removal costs and damages to claimants and then seek subrogation or contribution.  33 U.S.C. § 2702(d)(1)(B).  Given OPA's structure, there is no reason to assume that when a responsible party pays damages to claimants it is paying only its own share.  Just the opposite:  as required by OPA, the responsible party is paying both its own share of liability (if any) as well as that of co-defendants or third parties.  Limitations on contribution from a body of law based on radically different

premises should not be imposed on OPA, particularly in the absence of any statutory language indicating that Congress intended such a limitation.  Instead, consistent with OPA's purpose and fundamental fairness, responsible parties should be able to recover contribution in accord with OPA's plain language.

### C. Requiring "Full Releases" Would Contravene The Structure And Purposes Of OPA and Have Perverse Consequences.

Imposing a "full release" requirement would frustrate the purposes of OPA.  *First*, the Court previously recognized that the intent of OPA "is to encourage settlement and reduce the need for litigation." Rec. Doc. 3830 at 21.  The Act's provisions for paying and settling interim claims illustrates that OPA's purpose is to compensate legitimate claimants swiftly.  33 U.S.C. § 2705(a).  Imposing an extra-textual "full release" requirement thwarts this purpose.  Responsible parties would have to insist on obtaining "full releases" from each and every claimant before paying any claim.  Responsible parties would also resist paying any interim claims because they would not be able to recover such amounts from other liable parties.  Furthermore, confusion about how a "full release" requirement would be applied or what arguments co-defendants might raise against contribution — such as the parties and scope of claims that must be released — would make responsible parties more reluctant to settle at all.

*Second*, as this Court has acknowledged, "punitive damages are not available under OPA," Rec. Doc. 3830 at 26; only compensatory damages are available.  The undisputed facts here are that BP has fully satisfied Class Members' compensatory damages claims, a point Transocean and Halliburton have admitted.  Rec. Doc. 8105-1 at 2; Rec. Doc. 8267-1 at 3.  Given that all Class Members' claims for compensatory damages against the Movants have been satisfied, extinguished, and relinquished, BP should have a right to seek contribution against the Movants for their proportionate share of removal costs and damages under OPA.

12

*Third*, Movants' fundamental complaint is that BP settled all of their compensatory damages liability but not their punitive damages liability.  Movants propose a requirement that to seek contribution for compensatory damages, a settling party must not only settle a co-defendant's compensatory damages but also its punitive damages.  This proposition finds no support in case law, logic, or common sense.  Neither Movant cites a single case holding that to recover contribution for compensatory damages a party must also settle punitive damages.

As this Court has previously found, the purpose of punitive damages is to punish the specific party against whom they are awarded and teach it not to engage in egregious misconduct.  Rec. Doc. 5446 at 18-19.  "To require a party, without recompense, to shoulder the burden of egregious conduct by another and hence permit that other to avoid punitive damage liability would make a mockery of the very concept."  *Id.*  Movants' position that a responsible party seeking to fulfill OPA's purpose by swiftly settling legitimate compensatory damages must also shoulder the burden of punitive damages is directly contrary to the public policy behind punitive damages.  If a responsible party seeks to settle, plaintiffs with punitive claims against co-defendants will not release such claims without compensation paid by the responsible party.  Even worse, the more outrageous the co-defendant's conduct the greater its potential liability for punitive damages, and the more that the settling responsible party must pay to settle punitive damages against the co-defendant.  The capstone of Movants' argument is that the responsible party would not be able to seek contribution from the co-defendants for the amounts it paid to settle punitive damages, as they argue that parties should not be entitled to contribution for a settlement that includes any punitive damages component.  Rec. Doc. 8120-1 at 17; *see also* Rec. Doc. 8268 at 13-14.  This is consistent with the law, which does not allow contribution for punitive damages.  *See generally Howard v. Gen. Cable Corp.*, 674 F.2d 351, 358 (5th Cir.

1982); *Blazovic v. Andrich*, 590 A.2d 222, 231-32 (N.J. 1991); *Arch Chems., Inc. v. Radiator Specialty Co.*, 653 F. Supp. 2d 1099, 1104 (D. Or. 2009); *Rollins v. Peterson Builders, Inc.*, 761 F. Supp. 918, 928-29 (D.R.I. 1990).

At bottom, Movants would require a settling party to permanently bear the costs of a co-defendant's (and indeed, all co-defendants') punitive damages as a predicate to a contribution claim for compensatory damages.  This is nothing more than an attempt by Movants to shift their punitive damages liability to BP.  This position has no legal support and is absurd, and OPA should not be misinterpreted to countenance such a result.  *See Nixon v. Missouri Municipal League*, 541 U.S. 125, 138 (2004); *United States v. Burrell*, 634 F.3d 284, 293 (5th Cir. 2011).

    **D.**    **OPA Allows Contribution For All Removal Costs And Damages Paid By A Responsible Party Or Other Person.**

HESI asserts that it cannot be liable in contribution for payments to Class Members who are not commercial fishermen or who have not suffered physical injury to a proprietary interest, Rec. Doc. 8268-1 at 14, but this once again ignores the plain language of OPA.  Section 2709 allows a contribution against any person "who is liable or potentially liable under this Act or another law."  This phrase defines the universe of parties against whom a contribution action can be brought.  To be liable in contribution, a co-defendant must be liable under some law.

But nothing in § 2709 limits the kinds of damages that can be recovered in a contribution action.  The statute does not, for example, say after the phrase above "for the damages available against that person in a direct action under this Act or another law."  There is no restriction on the types of removal costs and damages that a responsible party can recover.  Instead, as this Court has said, once a responsible party pays the claims for removal costs and damages, it is allowed to seek contribution from other allegedly liable parties.  Rec. Doc. 3830 at 21.  Other

courts have similarly not placed any limitations on the kinds of removal costs or damages that can be recovered in contribution under OPA.[3]  HESI does not cite any cases to the contrary.

HESI may complain that § 2709 deprives it of the protections of *Robins Dry Dock v. Flint*, 275 U.S. 303 (1927), but of course this was the intent of OPA:  "Clearly, one major remedial purpose of OPA was to allow a broader class of claimants to recover for economic losses than allowed under general maritime law."  Rec. Doc. 3830 at 21.  There is no reason to believe that OPA removed the *Robins Dry Dock* limitation for the damages that a responsible party must pay but kept it for when the responsible party seeks contribution from other liable co-defendants.  Moreover, rewriting § 2709 to include the *Robins Dry Dock* limitation would lead to fundamentally unfair results.  A responsible party that was only 1% liable for the spill could be forced to bear all of the economic losses paid to claimants, while a third party that is 99% liable would escape liability altogether.  There is no reason to believe that Congress intended such an irrational result.  Under OPA, BP has a contribution right for Halliburton's proportionate share of all payments to Class Members.

---

[3]  *See Buffalo Marine Servs. Inc. v. United States*, 663 F.3d 750, 752 n. 8 (5th Cir. 2011) ("OPA allows a responsible party to bring a civil action for contribution against any other person who shares responsibility for the spill … ."); *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 924 (9th Cir. 2011) (A responsible party "could 'bring a civil action for contribution against any other person who is liable or potentially liable' for the damage 'under this Act or another law' under § 2709."); *Gabarick*, 2009 WL 102549, at *2 ("The OPA also creates a statutory right to seek contribution from any liable or potentially liable person, and it establishes its own statute of limitations."); *United States v. Bodenger*, No. 03-272, 2003 WL 22228517, at *3 (E.D. La. Sept. 25, 2003) ("The OPA permits a responsible party that has paid out removal costs and damages under the Act to bring a civil action for contribution against any other party 'who is liable or potentially liable under this Act or another law.'"); *Marathon Pipe Line Co. v. LaRoche Industries Inc.*, 944 F. Supp. 476, 479 (E.D. La. 1996) (holding that "MPLC, as the statutory responsible party" sought "contribution in proportion to LaRoche's fault" for removal costs or damages, and that "OPA authorizes each of these causes of action"); *Seaboats, Inc. v. Alex C Corp.*, No. 01-12184-DPW, 2003 WL 203078, at *4 (D. Mass. Jan. 30, 2003) ("The OPA permits a responsible party that has paid out removal costs and damages under the Act to bring a civil action for contribution against any other party 'who is liable or potentially liable under this Act or another law.'").

## II.    BP HAS STATUTORY SUBROGATION RIGHTS UNDER OPA.

Neither Movant mentions BP's subrogation rights under OPA, and HESI does not mention BP's subrogation rights at all.   Yet OPA creates a subrogation right:   "Any person, including the Fund, who pays compensation pursuant to this Act to any claimant for removal costs or damages shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law."  33 U.S.C. § 2715(a).[4]

As with contribution, the plain language of OPA creates a new right and cause of action. Nothing in the language of § 2715 suggests that it simply preserves rights under other bodies of law, such as maritime law.  Indeed, § 2710(c) already preserves subrogation rights under other bodies of law, and so interpreting § 2715 to have the same effect would create surplusage.  *TRW*, 534 U.S. at 31; *Duncan*, 533 U.S. at 174.

Moreover, § 2715(b)(1) expressly provides that if a responsible party makes interim payments, then subrogation shall apply to that portion of the claims reflected in the paid interim claim.   OPA thus gives a responsible party subrogation rights for partial payments.   This language negates any argument that subrogation rights arise only upon obtaining a "full release."

---

[4]   *See also Seaboats*, 2003 WL 203078, at *8 (holding that "OPA claims for recovery of removal costs and damages paid by them in the aftermath of the spill may properly proceed on the grounds listed in their Complaint, under § 2709 for contribution and under § 2715 for subrogation"); *Red River Farms v. United States*, No. 08-2078-PHX-NVW, 2009 WL 2983195, at *2 (D. Ariz. Sept. 17, 2009) ("When the Fund pays compensation to claimants, it becomes subrogated to 'all rights, claims, and causes of action' held by the federal or state agency against the responsible party."); *United States v. Inter-Bay Towing Co.*, No. H-03-5727, 2005 WL 3995989, at *7 (S.D. Tex. Aug. 8, 2005) ("The parties agree, and the law is clear, that under that provision [33 U.S.C. § 2715], USA is indeed subrogated to any cause of action that [] the 'claimant,' had."); 2 ADMIRALTY & MAR. LAW § 18-3 (5th ed.) ("Any person who pays a claim for removal costs or damages, including the Fund, is subrogated to all rights, claims, and causes of action of the compensated claimant."); H.R. REP. NO. 101-653, at 118 (1990) (Conf. Rep.), *reprinted in* 1990 U.S.C.C.A.N. 779, 796 ("Section 103(e)(2) of the Senate amendment and section 1015 of the House are similar provisions providing a right of subrogation to anyone who compensates a claimant for costs or damages under this Act.").

The other arguments against requiring a full release for OPA contribution under § 2709 apply with equal force to OPA subrogation under § 2715.  Imposing such an extra-statutory requirement would frustrate OPA's goal of quick settlements, would prohibit subrogation even where a settling party has fully paid a co-defendant's compensatory damages, and is a barely disguised argument that BP should have borne Movants' punitive damages liabilities.

## III.   UNDER OPA, BP RETAINS ITS CONTRIBUTION AND SUBROGATION RIGHTS UNDER MARITIME AND OTHER LAWS.

In addition to creating new statutory rights of contribution and subrogation, OPA preserves existing rights of contribution under other laws.  OPA provides that "[n]othing in this Act … bars a cause of action that a responsible party subject to liability under this Act … has or would have, by reason of subrogation or otherwise, against any person."  33 U.S.C. § 2710(c). This provision preserves BP's maritime law claims for contribution and subrogation.

### A.     BP Has Contribution Rights Against The Movants Under Maritime Law.

"[I]n order to bring a claim for contribution, the settling tortfeasor must have (1) paid more than he owes to the plaintiff, and (2) have discharged the plaintiff's entire claim."  *Combo Mar.,* 615 F.3d at 603; *see also Sea-Land Serv., Inc. v. United States*, 874 F.2d 169, 171-72 (3d Cir. 1989) ("A cause of action for contribution between private parties in admiralty cases accrues either when one party pays, or has a judgment entered against it, for more than its share of the damages.").  BP has paid 100% of the compensatory damages for Class Members, thus there is no dispute that BP will have paid more than it owes to the Classes by whatever proportion of fault is allocated to Transocean and Halliburton as a result of the MDL 2179 trial.  BP has fully satisfied the Class Members' entire claim for compensatory damages, and Movants admit that those compensatory damages claims have been "extinguished" and "relinquished."  BP clearly satisfies the requirements for contribution under maritime law.

17

Movants attempt to escape this conclusion by relying on factually disparate cases that are easily distinguishable. *First*, as this Court has previously recognized, the concern of these cases is avoiding double recovery against a co-defendant. For example, the result in *Murphy v. Fla. Key Electric Coop. Ass'n, Inc.* was expressly based on the co-defendant in that case remaining liable to the plaintiff. 329 F.3d 1311, 1315 (11th Cir. 2003) ("No suit for contribution will lie against a nonsettling defendant who is not released from liability, because that defendant remains liable for its proportionate share of damages regardless of the terms of the settlement the other defendant made."); *id.* ("That will not do either, because none of the settlement is attributable to the Ashmans' liability, which was not released in whole or part."). Similarly, this Court found that to "permit contribution in such a case [where the non-settling tortfeasor is still subject to liability] would lead to the absurd result that the non-settling tortfeasor was contributing funds to discharge the settling parties' liability without reducing its own exposure." *S.J. Gargrave Syndicate v. Rolls-Royce Commercial Marine Inc.*, No. 04-2358, 2006 WL 83100, at *1 (E.D. La. Jan. 12, 2006) (Barbier, J.).

In contrast, Movants are not exposed to compensatory liability from the Class Members. Class Members agreed their compensatory damages are satisfied and that they will not seek or recover compensatory damages against Movants. Movants admit that the Class Members' compensatory damages against them have been extinguished and relinquished. Class Members cannot recover compensatory damages from the Movants — this is the purpose of a release, and what has been achieved through the Settlements. Moreover, BP obtained a release for other parties connected to the *Deepwater Horizon* incident, well control, and the clean-up. Economic Settlement § 10; Medical Settlement § XVI. Thus, under *Combo Maritime* BP has satisfied the requirements for a contribution claim under maritime law, and the reason for prohibiting

18

assignment in cases such as *Ondimar Transportes Maritimos v. Beatty Street Props., Inc.*, 555 F.3d 184 (5th Cir. 2009), and *Lexington Ins. Co. v. S.H.R.M. Catering Servs., Inc.*, 567 F.3d 182 (5th Cir. 2009), does not apply to the contribution claims here.  To argue otherwise is to allow form to triumph over substance.

*Second*, Movants argue that to have a right to contribution for compensatory damages, BP must also pay to obtain a release of punitive damages against the Movants, citing *Ondimar*, *Lexington*, and *Combo Maritime*.  But none of those cases say that.  Those cases did not even involve a claim for punitive damages, let alone required a settling party to pay to release punitive damages against a co-defendant.  As set forth in Section I.C., *supra*, the argument that BP or any other settling party must settle a co-defendant's punitive damages — and permanently bear such damages rather than the co-defendant sought to be punished — to obtain a contribution claim for compensatory damages is against public policy and simply absurd.

### B.      BP Has Subrogation Rights Against Transocean Under Maritime Law.

Equitable subrogation under maritime law "is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter."  *Compania Anonima Venezolana De Navegacion v. A.J. Perez Exp. Co.*, 303 F.2d 692, 697 (5th Cir. 1962).  BP easily satisfies these requirements.  BP was not a volunteer or intruder; instead, its payments were made under OPA as required for responsible parties.  BP paid 100% of the compensatory damages so as to extinguish Class Members' claims against the Movants; the Movants' share of these damages is a debt for which Movants are primarily liable.  Transocean and Halliburton should not be allowed to escape any liability for compensatory damages, and equity and good conscience require that BP have a subrogation claim for their proportionate share of compensatory damages.

HESI ignores BP's subrogation rights, and Transocean makes only two arguments against equitable subrogation, both of which are meritless.  *First*, Transocean claims that § 2709 displaces equitable subrogation and other theories.  But this is simply incorrect as shown by the plain language of § 2710(c), which Transocean fails to mention.

*Second*, Transocean claims that because both contribution and subrogation are equitable, the supposed "full release" requirement should apply to both.  This is a non-sequitur.  Contribution and subrogation are distinct claims and theories, and it makes no sense to say that the same requirements must apply to both such that they become identical and redundant.  Transocean does not cite any case law stating that the same requirements must apply to both.  The only case Transocean cites in support of its argument is *Compania Anonima*, but nothing in that case requires a "full release."  Finally, even if maritime contribution restrictions could apply, they are inapplicable and distinguishable for the reasons described in Section III.A., *supra*.

## IV.   MOVANTS' OTHER ARGUMENTS DEPEND ON DISPUTED FACTS AND ARE NOT APPROPRIATE FOR JUDGMENT ON THE PLEADINGS.

Movants contend that under the Settlements BP made voluntary payments and waived defenses, while Transocean also claims that the Settlements contain a punitive damages component.  These arguments provide no basis for rejecting BP's contribution claims in their entirety.  Courts regularly apportion contribution claims between amounts that are recoverable and those that are not.[5]  Moreover, questions of voluntariness involve "an inquiry into [the

---

[5] *E.g., Hall v. Archer-Daniels-Midland Co.*, 524 N.E.2d 586, 562 (Ill. 1988) (holding that settling party did not need to allocate damages between compensatory and punitive damages, and that party could recover contribution for compensatory damages so long as settlement was made in good faith); *Arch Chems.*, 653 F. Supp. 2d at 1104 ("If it is established to the factfinder's satisfaction that a portion of the settlement included punitive damages, that portion is not available to Arch in its quest for contribution. This is not an all or nothing proposition."); *Utah Power & Light Co. v. Federal Ins. Co.*, 724 F. Supp. 846, 850-51 (D. Utah 1989) (rejecting argument that any portion of settlement was for punitive damages even though settling party "appeared concerned about the possibility of a punitive damage award," and allowing contribution); *see also Am. Int'l Specialty Lines Ins. Co. v. Res-Care, Inc.*, 529 F.3d 649 (5th

settling party's] good faith and the reasonableness of its beliefs in tendering the settlement payment [that] would involve matters beyond the scope of the pleadings," and so would be inappropriate for a motion for judgment.  *See Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 256 (5th Cir. 2011).  The extent to which any of these arguments would reduce the amounts recoverable from Transocean and Halliburton are disputed fact questions that cannot be resolved on a motion for judgment.

The same is true for HESI's argument that BP is required to indemnify it and has released it from consequential damages.  This Court has ruled that various findings could invalidate or discharge any obligation of BP to indemnify Halliburton, including Halliburton's commission of fraud or other intentional misconduct, or potentially HESI's material breach of contract or materially increasing BPXP's risk.  Rec. Doc. 5493 at 4-5.  Similarly, gross negligence (or more culpable conduct) will invalidate any release that BPXP provided to HESI regarding BP's consequential damages.  Rec. Doc. 5446 at 11, 13-14.  Thus, whether the BPXP-HESI contract prevents BP from recovering contribution or direct damages from HESI depends upon the outcome of the MDL 2179 trial, and is not amenable to judgment now.

## CONCLUSION

Engrafting a "full release" requirement onto OPA's statutory contribution and subrogation provisions contradicts the statute's text, structure, and purpose.  Moreover, BP does in fact satisfy any "full release" requirement for purposes of its maritime law contribution claim,

---

Cir. 2008) (analyzing allocation of settlement between covered and non-covered claims under an insurance policy); *Continental Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 379 (1st Cir. 1991) (reversing summary judgment in favor of insurers and remanding so that district court could determine what portion of settlement was covered by policy); *Cooper Labs., Inc. v. Int'l Surplus Lines Ins. Co.*, 802 F.2d 667, 674-75 (3d Cir. 1986) (vacating summary judgment in favor of insurer and remanding for determination whether settlement reflected liability covered by policy, and holding that if liability rested on two bases, one within the policy and one without, "an equitable apportionment between the two grounds must be made").

and no such limitation applies to its maritime law subrogation claims. Movants' arguments that some portions of the amounts paid by BP are not recoverable in contribution involve disputed questions of fact that cannot be resolved on these motions. Therefore, both Movants' motions should be denied.

May 20, 2013                                         Respectfully submitted,


Richard C. Godfrey, P.C.                      ___/s/ Don K. Haycraft_____
J. Andrew Langan, P.C.                        Don K. Haycraft (Bar #14361)
Andrew B. Bloomer, P.C.                    R. Keith Jarrett (Bar #16984)
R. Chris Heck                                        LISKOW & LEWIS
KIRKLAND & ELLIS LLP                  701 Poydras Street, Suite 5000
300 North LaSalle Street                      New Orleans, Louisiana 70139
Chicago, IL 60654                               Telephone:  (504) 581-7979
Telephone:  (312) 862-2000                Telefax:  (504) 556-4108
Telefax:  (312) 862-2200

                                                              Robert C. "Mike" Brock
Jeffrey Bossert Clark                            COVINGTON & BURLING LLP
KIRKLAND & ELLIS LLP                  1201 Pennsylvania Avenue, NW
655 Fifteenth Street, N.W.                    Washington, DC 20004
Washington, D.C. 20005                      Telephone:  (202) 662-5985
Telephone:  (202) 879-5000                Telefax:  (202) 662-6291
Telefax:  (202) 879-5200

**ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC., BP AMERICA
PRODUCTION COMPANY, AND BP P.L.C.**

22

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of May, 2013.

/s/ Don K. Haycraft
Don K. Haycraft