**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * <br> * <br> * <br> * <br> * | MDL NO. 2179 <br><br> SECTION J |
| This document relates to: | * <br> * | Judge Barbier |
| *All cases* | * <br> * | Magistrate Judge Shushan |

**BP'S RESPONSE TO HALLIBURTON ENERGY SERVICES, INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS ALTERNATIVE MOTION FOR SUMMARY JUDGMENT REGARDING BP'S ASSIGNMENT OF CLAIMS**

Defendants BP Exploration & Production Inc. ("BPXP"), BP America Production Company ("BPAP"), and BP p.l.c. (collectively, "BP"), pursuant to Rule 8 of the Federal Rule of Civil Procedure 56 and Local Civil Rule 56.2, respond to Halliburton Energy Services, Inc.'s Statement Of Undisputed Material Facts In Support Of Its Alternative Motion For Summary Judgment Regarding BP's Assignment Of Claims as follows.

1.      On April 15, 2009, BP Exploration & Production, Inc. ("BPXP") contracted with HESI to perform cementing operations and provide certain other related support services in the Gulf of Mexico in the Contract for Gulf of Mexico Strategic Performance Unit Offshore Well Services, BPM-09-00255 (the "Contract").

**RESPONSE:**

BP admits that on or about April 15, 2009 BPXP contracted with HESI to perform various services in the Gulf of Mexico in a Contract for Gulf of Mexico Strategic Performance United Offshore Well Services, BPM-09-00255.  BP denies any remaining allegations of this paragraph.

2.      Among other provisions in the Contract, the parties agreed to provide certain indemnities to each other, and that "[a]ll exclusions, releases of liabilities and indemnities given under this Clause . . . shall apply whether or not the claim, liability, damage or expense in

question is . . . sought directly or indirectly by way of recovery, indemnification, or contribution by any person or entity against . . . Contractor Group."  Contract at § 19.7(b).

**RESPONSE:**

BP admits that the Contract, which speaks for itself, contains the quoted language among other provisions.  BP denies any remaining allegations of this paragraph, and specifically states that under governing law BPXP and BPAP can obtain contribution from Halliburton.

3.     The parties further agreed that:

For the purposes of this Clause 21, the expression "Consequential Loss" shall mean consequential loss or damages under applicable law and/or any indirect, special, incidental, punitive, or consequential losses or damages, including without limitation loss of production, loss of product, loss of use, loss of business and business interruption and loss of revenue, profit or anticipated profit whether direct or indirect arising from or related to the performance of the CONTRACT and whether or not such losses were foreseeable at the time of entering into the CONTRACT except to the extent such consequential, indirect, and/or special damages, loss of profits, loss of production, or loss of use are part of a Third Party claim for which a party is seeking contribution or indemnification pursuant to this CONTRACT. For purpose of this Clause, "Third Party" shall mean any party which is not a member of COMPANY GROUP or CONTRACTOR GROUP and "Third Party claim" shall mean any claim raised by a Third Party not claiming, directly or indirectly, by or through any member of COMPANY GROUP or CONTRACTOR GROUP.

Notwithstanding any provisions to the contrary elsewhere in the CONTRACT and except to the extent of any agreed liquidated damages or any termination fees provided for in the CONTRACT, COMPANY shall save, indemnify, release, defend and hold harmless CONTRACTOR GROUP from COMPANY GROUP's own Consequential Loss and CONTRACTOR shall save, indemnify, release, defend and hold harmless COMPANY GROUP and SERVICE COMPANY GROUP from CONTRACTOR GROUP's own Consequential Loss. CONTRACTOR's obligation with respect to SERVICE COMPANY GROUP shall be subject to the provisions of Clause 19.9.

Contract at §21.

**RESPONSE:**

BP admits that the Contract, which speaks for itself, contains the quoted language among other provisions.  BP denies any remaining allegations of this paragraph, and specifically states that under governing law BPXP and BPAP can obtain consequential losses from Halliburton.

4.     The Contract also states:

COMPANY is entitled to assign the CONTRACT or any part of it or any benefit or interest in or under it to any CO-VENTURER or AFFILIATE of COMPANY.  In addition, COMPANY may make any such assignment to any other third-party but only with the prior agreement of CONTRACTOR which shall not unreasonably be withheld or delayed.

Contract at § 8.1

**RESPONSE:**

BP admits that the Contract, which speaks for itself, contains the quoted language among

other provisions.  BP denies any remaining allegations of this paragraph.

5.     The Contract also provides certain indemnities and releases. Specifically, Section 19.4 provides:

(a) Notwithstanding the provisions of Clause 19.3(a) and except as provided by Clause 19.1(a), Clause 19.1(b) and Clause 19.4(b) COMPANY shall save, indemnify, release, defend and hold harmless CONTRACTOR GROUP from and against any claim of whatsoever nature arising from pollution and/or contamination including without limitation such pollution or contamination from the reservoir or from the property or equipment of COMPANY GROUP arising from or related to the performance of the CONTRACT.

(b) Notwithstanding the provisions of Clause 19.3(b) and except as provided by Clause 19.2(a) and Clause 19.2(b) CONTRACTOR shall save, indemnify, release, defend and hold harmless COMPANY GROUP and SERVICE COMPANY GROUP from and against any claim of whatsoever nature arising from pollution occurring on the premises of CONTRACTOR GROUP or originating from the property or equipment of CONTRACTOR GROUP located above the surface of the land or water arising from or relating to the performance of the CONTRACT.

**RESPONSE:**

BP admits that the Contract contains certain indemnities and releases.  BP admits that the

Contract, which speaks for itself, contains the quoted language among other provisions.  BP

denies any remaining allegations of this paragraph, and specifically states that under governing

law (i) Halliburton is not entitled to indemnification or defense costs from BPXP, and (ii) BPXP

and BPAP can obtain contribution from Halliburton.

6.     Similarly, Section 19.6 provides:

Subject to Clauses 19.1 and 19.4(b), but notwithstanding anything contained elsewhere in the CONTRACT to the contrary, COMPANY shall save, indemnify, release, defend and hold harmless CONTRACTOR GROUP against all claims, losses, damages, costs (including legal costs) expenses and liabilities resulting from:

(a) loss or damage to any well or hole (including the cost to re-drill);

(b) blowout, fire, explosion, cratering, or any uncontrolled well condition (including the costs to control a wild well and the removal of debris);

(c) damage to any reservoir, aquifer, geological formation or underground strata or the loss of oil or gas therefrom. . . .

**RESPONSE:**

BP admits that the Contract, which speaks for itself, contains the quoted language among other provisions.  BP denies any remaining allegations of this paragraph, and specifically states that under governing law Halliburton is not entitled to indemnification or defense costs from BPXP.  BP denies any remaining allegations of this paragraph, and specifically states that under governing law (i) Halliburton is not entitled to indemnification or defense costs from BPXP, and (ii) BPXP and BPAP can obtain contribution and consequential losses from Halliburton.

7.      Section 27.12(a) of the Contract applies to the rights of third parties, providing that "[s]ubject to Clause 27.12(c), the PARTIES intend that no provision of the CONTRACT shall confer any benefit on, nor be enforceable by any person who is not a party to the CONTRACT."

**RESPONSE:**

BP admits that the Contract, which speaks for itself, contains the quoted language among other provisions.  BP denies any remaining allegations of this paragraph.

8.      Pursuant to the terms of the Contract, HESI performed cementing operations and other support services for BP on the Mobile Offshore Drilling Unit *Deepwater Horizon* in the spring of 2010.

**RESPONSE:**

BP admits that HESI performed certain cementing operations, mudlogging services, and other support services for BPXP on the Mobile Offshore Drilling Unit *Deepwater Horizon* in the

4

spring of 2010, but denies that HESI performed these operations and services in accordance with the terms of the Contract.  BP denies any remaining allegations of this paragraph.

9.      HESI has not consented to any assignment of claims under the terms of the Contract or otherwise.

**RESPONSE:**

BP lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore denies them.

10.     On April 20, 2010, a loss of well control during temporary abandonment proceedings at the Macondo Well resulted in a blowout and explosion aboard the *Deepwater Horizon* in the Gulf of Mexico, approximately 50 miles off the coast of Louisiana (hereinafter "the Incident").

**RESPONSE:**

BP admits that on April 20, 2010, there was a loss of control of an exploratory well being drilled by the *Deepwater Horizon* in Mississippi Canyon Block 252 of the Gulf of Mexico, resulting in a blowout and one or more explosions aboard the *Deepwater Horizon*.  BP denies any remaining allegations of this paragraph.

11.     Following the Incident, Plaintiffs in this matter brought claims against BP, HESI, and other defendants for compensatory and punitive damages arising from the Incident and resulting oil spill into the Gulf of Mexico. *See* First Amended Master Complaint, Cross-Claim, and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] Section III (B1) (Dkt. No. 1128) ("B1 Master Complaint"); First Amended Master Complaint in Accordance with PTO No. 11 [CMO No. 1] Section III.B(3) ["B3 Bundle"] ("B3 Master Complaint") (Dkt. No. 1812).

**RESPONSE:**

BP admits that following the Incident, certain Plaintiffs brought claims against BPXP, BPAP, BP p.l.c., Halliburton Energy Services, Inc. and its Sperry Drilling Services division, and various other defendants for compensatory and punitive damages arising from the Incident and resulting oil spill, including in the complaints cited in the paragraph.  BP denies any remaining allegations of this paragraph.

12.     Likewise, the defendants filed cross-claims against each other.  *See e.g*., (Dkt. No. 2082) (Cross Claim filed by BP against HESI).

**RESPONSE:**

BP admits that the defendants filed certain cross-claims against each other, including in the complaint cited in the paragraph.

13.     In particular, BP's cross-claims against HESI seek contribution, compensatory damages in the form of lost profits and/or diminution in value of the Macondo prospect, and "appropriate damages" in the event "it is established that BP's injury was caused by [HESI's] gross fault or gross negligence." (Dkt. No. 2082 at 44-45).

**RESPONSE:**

BP admits that, among other damages and relief, BPAP and BPXP's cross-claims against HESI seek contribution, compensatory damages in the form of losts profits and/or diminution in value of the Macondo prospect, and appropriate damages if it is established that BPAP and BPXP's injury was caused by Halliburton's gross fault or gross negligence.  BP denies any remaining allegations of this paragraph.

14.     On March 2, 2012, the Plaintiffs and BP announced they had reached agreement on the terms of a proposed class settlement that would be submitted to the court for approval pursuant to Federal Rule of Civil Procedure 23.  (Dkt. No. 5955).

**RESPONSE:**

BP admits that on March 2, 2012, the PSC, BPAP, and BPXP announced that they had reached agreement in principle on the terms of two proposed class settlements that would be submitted to the Court for approval under Federal Rule of Civil Procedure 23.  BP denies any remaining allegations of this paragraph.

15.     On April 18, 2012, the PSC and BP filed, among other documents, two settlement agreements, one concerning medical claims and the other concerning economic and property damages.

**RESPONSE:**

On April 18, 2012, the PSC, BPAP, and BPXP filed two settlement agreements, one concerning medical claims and the other concerning economic and property damages.  BP denies any remaining allegations of this paragraph.

16.    The first agreement, the Medical Benefits Class Action Settlement Agreement, concerns the claims of persons who alleged injury resulting from exposure to oil and oildispersing chemicals. (Dkt. 6273).

**RESPONSE:**

BP admits that the Medical Benefits Class Action Settlement Agreement concerns, among other claims, the claims of persons who alleged injury resulting from exposure to oil and dispersants.  BP denies any remaining allegations of this paragraph.

17.    The second agreement, the Economic and Property Damages Settlement Agreement concerns claims for economic damage or property damage as a result of the *Deepwater Horizon* incident and resulting oil spill. (Dkt. No. 6276).

**RESPONSE;**

BP admits that the Economic and Property Damages Settlement Agreement concerns, among other claims, claims for economic and property damages as a result of the *Deepwater Horizon* incident and resulting oil spill.  BP denies any remaining allegations of this paragraph.

18.    On May 1, 2012, the PSC and BP amended the Medical Benefits Class Action Settlement Agreement (the "Medical Agreement"), and on May 2, 2012, amended the Economic and Property Damages Settlement Agreement (the "Economic Agreement"). Both amended Settlement Agreements were filed on May 3, 2012. (Dkt. Nos. 6427, 6430).

**RESPONSE:**

BP admits that on May 3, 2012 BPAP and BPXP and PSC filed the Medical Agreement as amended on May 1, 2012 and the Economic Agreement as amended on May 2, 2012.  BP denies any remaining allegations of this paragraph.

19.    The Economic Agreement purports to assign BP's claims against HESI to the settlement class contemplated by the Economic Agreement (the "Economic Class"), "as a juridical entity and not to Economic Class Members individually:"

1.1.3 Assignment. To the fullest extent allowed by law and applicable contracts, and subject to Sections 1.1.2, 1.1.4, and 1.1.5, upon Preliminary Approval, and subject to occurrence of the Effective Date as a condition subsequent, BP assigns to the Economic Class, only as a juridical entity and not to Economic Class Members individually, the following claims and causes of action against Transocean and Halliburton (but no other party) arising out of, due to, resulting from, or relating in any way to, directly or indirectly, to the Deepwater Horizon Incident, on the terms and conditions set forth herein:

1.1.3.1 All damages related to the repair, replacement, and/or re-drilling of the MC-252 Well;

1.1.3.2 All economic damages for the loss of the MC-252 Well, including lost profits, lost hydrocarbons, and diminution in value of the leasehold;

1.1.3.3 All costs that BP incurred to control the MC-252 Well and/or to respond to, contain, and/or clean up the DWH spill;

1.1.3.4 All rights to indemnity, contribution, or subrogation for claims paid by BP and/or the GCCF on or before the entry of the Preliminary Approval Order, subject, however, to (a) BP's retention of its right to pursue the payments identified in Section 1.1.4.2, which are expressly retained, and (b) BP's retention of its right to recover from Transocean and Halliburton for the payments identified in Section 1.1.4.2.

1.1.3.5 All claims or causes of action to pursue reimbursement of Settlement Payment(s) under theories of indemnification, contribution, subrogation, or any other theory of recovery;

1.1.3.6 All punitive, exemplary, multiple, or non-compensatory damages;

1.1.3.7 All claims and causes of action to recover the damages, losses, costs, fees and amounts set forth in Sections 1.1.3.1-1.1.3.6, including BP's claims for breach of contract, unseaworthiness, negligence, gross negligence, willful misconduct, fraud, fraudulent concealment, and intentional torts and including BP's claims in the *BP Parties' Counter-Complaint, Cross-Complaint and Third Party Complaint Against Transocean and Claim in Limitation*, Docket No. 2074 in Case 2:10-md-02179-CJB-SS, and *BP's Cross-Complaint and Third-Party Complaint Against Halliburton*, Docket No. 2082 in Case 2:10-md-02179-CJB-SS.

(Dkt. No. 6430 at Exh. 21).

**RESPONSE:**

BP admits that the Economic Agreement assigns BPAP and BPXP's claims against HESI to the Economic Class as a juridical entity and not to Economic Class Members individually, subject to the terms stated in the Economic Agreement.  BP further admits that the Economic

Agreement, which speaks for itself, contains the quoted language among other provisions.  BP

denies any remaining allegations of this paragraph.

20.     However, the Economic Agreement also provides that:

[i]n the event that the Economic Class or any of the Plaintiffs and/or Economic Class
Members is or becomes the beneficiary of any judgment, decision, award, or settlement
arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the
Deepwater Horizon Incident, including from Assigned Claims and/or Expressly Reserved
Claims, the Economic Class and/or such Plaintiffs and/or Economic Class Members shall
not accept, execute on, attempt to collect, or otherwise seek recovery of any Damages, to
the extent that any Other Party is seeking or may seek to recover such Damages from any
Released Party, whether through indemnity, contribution, subrogation, or any
other theory of recovery, by contract, pursuant to applicable law or regulation, or
otherwise, directly or indirectly. The Economic Class, Plaintiffs, and/or Economic Class
Members may, however, accept, execute on, attempt to collect, or otherwise seek
recovery of Damages if and when a court or tribunal of competent jurisdiction has finally
determined that Other Parties cannot recover such Damages, whether through indemnity,
contribution, subrogation, assignment or any other theory of recovery, by contract,
pursuant to applicable law or regulation, or otherwise, directly or indirectly, from any
Released Party. For purposes of this Section 1.1.2.4, "finally determined" shall mean the
conclusion of any applicable appeals or other rights to seek review by certiorari or
otherwise, or the lapse of any and all such rights, or the lapse of any and all applicable
limitations or repose periods.

(Dkt. No. 6430 at Exh. 21, §1.1.2.4).

**RESPONSE:**

BP admits that the Economic Agreement, which speaks for itself, contains the quoted

language among other provisions.  BP denies any remaining allegations of this paragraph.

21.     BP further agreed that should "part or all of the assignment be held invalid," it
would not "seek to pursue such Assigned Claims that were the subject of the invalidated
assignment." (Dkt. No. 6430 at Exh. 21, §1.1.4.6).

**RESPONSE:**

BP admits that the Economic Agreement, which speaks for itself, contains the quoted

language among other provisions.  BP denies any remaining allegations of this paragraph.

22.     The Settlement Agreements both state that the payments provided for therein
constitute full satisfaction of all compensatory damages against HESI and Transocean. (Dkt. No.
6427 at XVII.A, B.2 & 3) (Dkt. No. 6430 at Exh. 21, § 1.1.1).

**RESPONSE:**

BP admits that under both Settlement Agreements the settlement payments or settlement benefits provided under each Settlement Agreement constitute full, complete, and total satisfaction of all of the classes' and class members' compensatory damages against the Transocean Parties and the Halliburton Parties, as defined therein.  BP denies any remaining allegations of this paragraph.

23.     HESI and Transocean are specifically excluded from the releases given as part of both Settlement Agreements. (Dkt. No. 6427 at II.MMMM, II.ZZZ) (Dkt. No. 6430 at §10.3).

**RESPONSE:**

BP admits that that Halliburton and Transocean are not included within the definition of "Released Parties" under the Settlement Agreements.  BP states that the Transocean Parties and the Halliburton Parties receive various protections under each Settlement Agreement, including but not limited to a full, complete, and total satisfaction of all of the classes' and class members' compensatory damages.  BP denies any remaining allegations of this paragraph.

24.     Both Settlement Agreements provide that the Plaintiffs reserve their claims for punitive damages against HESI and Transocean. (Dkt. No. 6427 at §§ XVI.G, II.ZZZ, II.MMMM, XVII.B.2 & 3) (Dkt. No. 6430 at §§ 10.2, 10.3).

**RESPONSE:**

BP admits that under both Settlement Agreements the classes and class members reserve their claims for punitive damages against Halliburton and Transocean, as defined therein.  BP denies any remaining allegations of this paragraph.

25.     The Economic Agreement provides for the payment of Risk Transfer Premiums, defined as:

> the amount paid to a Claimant for any and all alleged damage, including potential future injuries, damages or losses not currently known, which may later manifest themselves or develop, arising out of, due to, resulting from, or relating in any way to the Deepwater Horizon Incident, and any other type or category of damages claimed, including claims for punitive damages.

(Dkt. No. 6430 at §38.126).

**RESPONSE:**

BP admits that the Economic Agreement, which speaks for itself, contains the quoted language among other provisions, and further admits that the Economic Agreement provides for Risk Transfer Premiums according to the Agreement's terms.  BP denies any remaining allegations of this paragraph.

26.    This Court preliminarily approved the Settlement Agreements on May 2, 2012. (Dkt. Nos. 6418, 6419).

**RESPONSE:**

BP admits the allegations of this paragraph.

May 20, 2013                                        Respectfully submitted,


Richard C. Godfrey, P.C.                       __/s/ Don K. Haycraft_____
J. Andrew Langan, P.C.                          Don K. Haycraft (Bar #14361)
Andrew B. Bloomer, P.C.                        R. Keith Jarrett (Bar #16984)
R. Chris Heck                                          LISKOW & LEWIS
KIRKLAND & ELLIS LLP                       701 Poydras Street, Suite 5000
300 North LaSalle Street                         New Orleans, Louisiana 70139
Chicago, IL 60654                                   Telephone:  (504) 581-7979
Telephone:  (312) 862-2000                    Telefax:  (504) 556-4108
Telefax:  (312) 862-2200
                                                               Robert C. "Mike" Brock
Jeffrey Bossert Clark                              COVINGTON & BURLING LLP
KIRKLAND & ELLIS LLP                       1201 Pennsylvania Avenue, NW
655 Fifteenth Street, N.W.                       Washington, DC 20004
Washington, D.C. 20005                          Telephone:  (202) 662-5985
Telephone:  (202) 879-5000                    Telefax:  (202) 662-6291
Telefax:  (202) 879-5200


**ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC., BP AMERICA
PRODUCTION COMPANY, AND BP P.L.C.**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of May, 2013.

/s/ Don K. Haycraft
Don K. Haycraft