UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig<br>             "Deepwater Horizon" in the Gulf<br>             of Mexico, on April 20, 2010<br><br>This Pleading applies to:<br>            *All Cases* | MDL No. 2179<br>SECTION: J<br><br>JUDGE BARBIER<br>MAGISTRATE SHUSHAN |

### THE STATE OF ALABAMA'S OPPOSITION TO THE TRANSOCEAN AND HALLIBURTON MOTIONS FOR JUDGMENT ON PUNITIVE DAMAGES CLAIMS

The State of Alabama respectfully requests this Court deny Transocean and Halliburton's motions for judgment as to the E&P Damages Class' punitive damage claims.[1]

*Not Duplicative / Summary of Argument*

The State respects the Court's time and workload. Thus, we have worked with the PSC to ensure that nothing in this opposition is duplicative of the PSC's filings. *See* Docs. 10186-87. Specifically, the PSC outlines the *legal* reasons/precedent that warrant denial of the Defendants' motions, and Alabama focuses on the following *policy* reasons why the Court should deny them:

1. Granting the Defendants' motions would frustrate the public policy behind the imposition of punitive damages, while doing nothing to advance the policy rationales underlying the actual injury/damages requirement.

2. Granting the Defendants' motions would frustrate the settlement of compensatory damages in this case and future cases.

---

[1] This filing relates solely to the issue of the Class' punitive damage claims against TO and HESI. *See* Docs. 8105 (TO Motion), 8267 (HESI Motion). While the State's claims are not at issue because we are not a party to the Settlement, we have two interests that warrant this opposition: (1) thousands of Alabama businesses and citizens are members of the class and (2) the State has outstanding punitive damage claims against Transocean and Halliburton.

1

## ARGUMENT

The Court resolved "the tension between two policies" when it determined that, if Transocean acted with gross negligence, BP would be required to indemnify TO's compensatory liability, but not TO's punitive liability. Doc. 5446 at 10-19. The current TO and HESI motions are easier to resolve, because there is no tension between public policies.

*No* policy interest favors a rule that allows a grossly negligent actor to escape punitive liability because someone else settles the victim's compensatory losses. But there are multiple policy reasons to reject such a rule. And, as we point out in Part A, these policy considerations matter here.

**A.    Policy Considerations Matter Because "There Is No Established Federal Common Law Rule That Precludes the Award of Punitive Damages in the Absence of an Award of Compensatory Damages."**

The Class' punitive damage claims arise under general maritime law, which is federal common law. Twice, the Fifth Circuit has declared that "there is no established federal common law rule that precludes the award of punitive damages in the absence of an award of compensatory damages." *Abner v. Kansas City Southern R. Co.*, 513 F.3d 154, 159 (5th Cir. 2008); *Louisiana ACORN Fair Housing v. LeBlanc*, 211 F.3d 298, 301 (5th Cir. 2000) (*quoting People Helpers Foundation, Inc. v. City of Richmond, Va.*, 12 F.3d 1321, 1326 (4th Cir. 1993)).

As a result, public policy considerations matter. For example, the circuit court held in *Abner* that a Title VII plaintiff *could* receive punitive damages without an award of compensatory or nominal damages, and without proving a Constitutional violation, based on, among other things, a comparison between "the purpose of punitive damages under Title VII," and the underlying rationale for "disallowing independent awards of punitive damages"—*i.e.* the

"concern that jury consideration of punitive damages ought not to be unbounded nor lack of measured proportion to the injury." *Abner*, 513 F.3d at 160-63.

This Court should likewise compare the public policy rationales underlying (a) the imposition of punitive damages and (b) the rule requiring actual injury/damages as a predicate to punitive damages against the facts of this case. *See Infra* Part B. The Court should also look at the practical effect of the Defendants' interpretation of the rule. *See Infra* Part C.

**B.     Granting the Defendants' Motion Would Frustrate the Rationale for Imposing Punitive Damages, While Advancing None of the Rationales for Requiring Actual Injury/Damages as a Punitive Predicate.**

Once the policies behind the competing arguments are identified, it becomes clear that only the denial of the Defendants' motions is in the best interest of the public and the courts.

1. *Rationale for Punitive Damages*: "Punitive damages are awarded in the jury's discretion 'to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future.'" *Smith v. Wade*, 461 U.S. 30, 54 (1983) (*quoting* RESTATEMENT (SECOND) OF TORTS § 908(1)).

2. *Rationale for Predicate Injury/Damages*: "The rationale for requiring that actual damages be shown before punitive damages may be awarded is that a court will not punish conduct, no matter how reprehensible, which in fact causes no legal injury. The rationale comports with the policy that a litigant should not be encouraged to bring suit in cases of *damnum absque injuria*—damage without injury." Linda L. Schlueter & Kenneth R. Redden, *Punitive Damages*, §6.1(D)(3) (3rd ed. 1995). The Fifth Circuit has noted an additional rationale: "disallowing independent awards of punitive damages responds to concern [*sic*] that jury consideration of punitive damages ought not to be unbounded nor lack of measured proportion to the injury." *Abner*, 513 F.3d at 162.

3

3. *Application to this Case*:  No one questions that the Class was legally (*i.e.* economically) injured.  Accordingly, the rationale of requiring actual injury/damages to discourage punitive lawsuits by uninjured plaintiffs is not implicated here.  Nor is the Fifth Circuit's concern that "punitive damages ought not to be unbounded nor lack of measured proportion to the injury." *Abner*, 513 F.3d at 162.  As the PSC rightly points out, the Court could ensure a "measured proportion to the injury," *id.*, by later determining the Plaintiff's compensatory damages (with or without reference to his settlement payment) and applying a compensatory-punitive ratio, just as the courts did in *Exxon*. *See Exxon v. Baker*, 554 U.S. 471 (2008) (adopting the lower court's calculation of total compensatory damages, which included compensatory settlements, then applying a 1:1 ratio).  Or the Court could measure/limit punitive liability in another manner.  For present purposes, how *quantum* is measured is irrelevant.  What matters is that the public policy concerns that (a) the party seeking punitive damages actually be injured and (b) the party receive appropriately measured punitive damages would not be frustrated if the Court denies the Defendants' motions for judgment as a matter of law.

Granting the Defendants' motions, however, would frustrate the public policy underlying punitive damages.  This case centers on the worst environmental disaster in American history, a disaster that caused billions of dollars in actual damage.  Transocean and HESI are two of the three worst culprits for causing that disaster.  Ruling that neither could face punitive liability for the economic devastation they wrought, no matter how willful, wanton, or reckless their conduct was, would frustrate the "punish and deter" rationale for imposing punitive damages—without advancing *any* policy reason for shielding them from punitive liability.

As a result, a weighing of the policy rationale(s) behind each rule clearly tips in favor of denying the Defendants' motions.

**C.     Granting the Defendants' Motions Would Frustrate Future Settlements in this Case and Future Cases.**

Public policy encourages settlements.  For example, when the Supreme Court was asked to determine whether non-settling defendants in an admiralty case receive a proportional or dollar-for-dollar offset, the Court stated that "three considerations are *paramount*: consistency with the proportionate fault approach of *United States v. Reliable Transfer,* 421 U.S. 397 (1975), *promotion of settlement*, and judicial economy."  *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994) (emphasis added).  Similarly, this Court has noted that Congress crafted OPA's strict liability scheme "to encourage settlement and reduce the need for litigation."  Doc. 3830 at 21.

But, as shown below, a rule that only the party who settles compensatory damages is liable for punitive damages frustrates—not promotes—settlements in this and future cases.

1.  *Settlements in this Case*:  If the Court finds that TO and/or HESI acted with the requisite level of gross negligence, willfulness, etcetera, to warrant punitive damages, then a ruling that neither of them must pay those punitive damages to any party that settles its compensatory claims with BP could chill settlement talks with BP.

The non-settling Plaintiffs—*e.g.* the excluded classes, opt-outs, and the States—would be faced with a Hobson's Choice:  (a) Settle with BP and lose our punitive claims against TO and HESI or (b) eschew settlement of compensatory damages and wait, possibly years, for our individual damages trial to recover both compensatory and punitive damages from all three Defendants.  Undoubtedly, if faced with the loss of viable punitive damage claims, countless Plaintiffs will choose to forgo settlement, tacking on years of potentially unnecessary litigation, in direct contradiction to public policy.

2. *Settlements in Future Cases*:  Unfortunately, this will not be the last case in which multiple defendants cause economic damage via gross negligence.  In those cases, the Plaintiff will be faced with the same dilemma:  If I settle 100% of my compensatory damages with one defendant, I will lose my punitive claims against all other defendants (thereby allowing those grossly negligent defendants to skirt the punishment and deterrent effect of punitive liability).

This dilemma creates two related incentives that are perverse to sound public policy. First, it creates the incentive for co-Defendants *not* to settle before trial, in the hopes that another Defendant will settle compensatory damages and thus eliminate everyone else's punitive liability.  Second, it creates the incentive for the Plaintiff (and perhaps the first Settling Defendant) to settle only a portion of compensatory damages in order to preserve the viability of punitive damages against the non-settling Defendants.

Again, public policy and OPA's liability scheme promote making a victim whole as soon as practicable, hopefully via settlement.  The best way to fulfill those policy choices here is to rule that BP's payment of the Class' compensatory damages does not extinguish the Class' punitive damages claims against TO and HESI.

* * *

In sum, if the Court denies the Defendants' motions, the public interest is served by (a) the fostering of settlements and (b) the punishment and deterrence of reprehensible conduct. On the other hand, the public interest gains nothing by granting the Defendants' motions.

6

**CONCLUSION**

The Court should deny Transocean and Halliburton's respective motions for judgment on the settling class' claims for punitive damages.

Respectfully Submitted,

LUTHER J. STRANGE
  *Attorney General*

 /s/ Corey L. Maze                     .
COREY L. MAZE
  *Special Deputy Attorney General*

WINFIELD J. SINCLAIR
  *Assistant Attorney General*

Office of the Attorney General
501 Washington Avenue
 Montgomery, Alabama 36130

Phone: (334) 242-7300
Fax:    (334) 242-4891
Email:  lstrange@ago.state.al.us
            cmaze@ago.state.al.us

Attorneys for the State of Alabama