**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | * | **MDL NO. 2179** |
|    "Deepwater Horizon" in the | * | |
|    Gulf of Mexico, on April 20, 2010 | * | **SECTION J** |
| | * | |
| This document relates to: | * | |
| | * | **Honorable CARL J. BARBIER** |
| | * | |
|    *All Cases* | * | **Magistrate Judge SHUSHAN** |

**BP DEFENDANTS' COMBINED OPPOSITION TO TRANSOCEAN'S MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS AS TO PUNITIVE DAMAGES AND
HALLIBURTON ENERGY SERVICES, INC.'S MOTION FOR JUDGMENT ON
THE PLEADINGS OR ALTERNATIVE MOTION FOR SUMMARY JUDGMENT
REGARDING PUNITIVE DAMAGES**

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Andrew B. Bloomer, P.C.
R. Chris Heck
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000
Telefax:  (312) 862-2200

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone:  (504) 581-7979
Telefax:  (504) 556-4108

Jeffrey Bossert Clark
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 879-5000
Telefax:  (202) 879-5200

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 662-5985
Telefax:  (202) 662-6291

*ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC., BP AMERICA
PRODUCTION COMPANY, AND BP P.L.C.*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................................................... III

INTRODUCTION .........................................................................................................................1

BACKGROUND ...........................................................................................................................2

ARGUMENT.................................................................................................................................7

I.       STANDARD OF REVIEW ...............................................................................................7

II.      RIPENESS ......................................................................................................................7

III.     PRESERVATION OF BP'S LEGAL POSITIONS ON OTHER ISSUES............................12

CONCLUSION............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) ...................................................................................................... 7, 8

*Ambraco, Inc. v. Bossclip B.V.*,
570 F.3d 233 (5th Cir. 2009) ............................................................................................. 9

*Auster Oil & Gas, Inc. v. Stream*,
891 F.2d 570 (5th Cir.1990) ............................................................................................ 11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......................................................................................................... 7

*Cent. & S.W. Servs., Inc. v. EPA*,
220 F.3d 683 (5th Cir. 2000) .......................................................................................... 11

*Choice Inc. of Tex. v. Greenstein*,
691 F.3d 710 (5th Cir. 2012) .......................................................................................... 11

*Cooper Tire & Rubber Co. v. Farese*,
2008 WL 5188233 (N.D. Miss. Dec. 9, 2008) ................................................................ 11

*Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*,
530 F.3d 395 (5th Cir. 2008) ............................................................................................ 7

*Ferrer v. Chevron Corp.*,
484 F.3d 776 (5th Cir. 2007) ............................................................................................ 7

*First National Bank of Louisville v. Lustig*,
Civ. A. No. 87–5488, 1993 WL 411126 (E.D. La. Oct. 5, 1993) .................................... 11

*Gabarick v. Laurin Mar. (Am.) Inc.*,
623 F. Supp. 2d 741 (E.D. La. 2009) .............................................................................. 13

*Hanna v. Maxwell*,
415 Fed. App'x 533 (5th Cir. 2011) ................................................................................ 11

*Harrell v. The Florida Bar*,
608 F.3d 1241 (11th Cir. 2010) ....................................................................................... 11

*In re Deepwater Horizon*,
710 F.3d 338 (5th Cir. 2013) .......................................................................................... 13

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*,
    --- F. Supp. 2d ---, 2012 WL 6652608 (E.D. La. 2012)................................................ 2, 12

*In re Oil Spill by Oil Rig Deepwater Horizon*,
    --- F.R.D. ---, 2013 WL 144042 (E.D. La. 2013) ............................................................. 3

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)......................................................................................................... 9

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994) .......................................................................................... 7

*Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC*,
    352 Fed. App'x 945 (5th Cir. 2009) ............................................................................... 7

*Opulent Life Church v. City of Holly Springs, Miss.*,
    697 F.3d 279 (5th Cir. 2012) .......................................................................................... 7

*Pillar Panama, S.A. v. DeLape*,
    326 Fed. App'x 740 (5th Cir. 2009) ............................................................................... 8

*Regional Rail Reorganization Act Cases*,
    419 U.S. 102 (1974).................................................................................................... 7, 8

*Rosedale Missionary Baptist Church v. New Orleans City*,
    641 F.3d 86 (5th Cir. 2011) ............................................................................................ 9

*Sankey v. Metropolitan Life Ins. Co.*,
    Civ. A. No. 12-1135, 2013 WL 1868365 (E.D. La. May 2, 2013)................................... 7

*South Port Marine LLC v. Gulf Oil Ltd. P'Ship*,
    234 F.3d 58 (1st Cir. 2000)............................................................................................ 14

*Tatum v. Kelley*,
    2012 WL 956409 (S.D. Miss. Mar. 20, 2012) ................................................................. 8

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985)................................................................................................... 5, 8

*United States v. American Commercial Lines, LLC*,
    No. 2:11-cv-2076, 2013 WL 1182963 (E.D. La. Mar. 21, 2013) .................................... 14

**Statutes**

33 U.S.C. § 2709........................................................................................................................ 13

**Rules**

Fed. R. Civ. P. 12(c) .................................................................................................................. 1

Fed. R. Civ. P. 23(e) ........................................................................................................................... 2

Fed. R. Civ. P. 56 ............................................................................................................................... 1

## <u>INTRODUCTION</u>

Transocean and Halliburton Energy Services, Inc. ("HESI") move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and HESI also moves alternatively for summary judgment under Federal Rule of Civil Procedure 56.  Both Transocean and HESI seek rulings that they are not liable for punitive damages either to BP or to the Economic or Medical Classes approved by this Court.  *See* Rec. Docs. 8105 ("Transocean Motion") and 8267 ("HESI Motion").  BP files this Combined Opposition requesting that these Motions be denied as unripe.  *See* Section II, below.  BP also files this Combined Opposition to correct the record and protect BP's rights concerning certain legal issues referenced in the Transocean and HESI Motions.  *See* Section III, below.

Transocean and HESI suffer no present hardship — nor has either party attempted to demonstrate such hardship in their motions.  No damages-assessment phase of the Trial of Liability, Limitation, Exoneration, and Fault ("Trial") has even been scheduled.  Indeed, given that Phase 2 of the Trial (which is not designed to award damages of any sort) is scheduled to commence on September 16, 2013, it is highly unlikely that a damages phase would be scheduled until sometime deep into 2014, at the very earliest.  Whether and when any punitive damages claims retained by the Classes will result in a judgment is entirely speculative.  Indeed, the Effective Dates of the Economic and Property Damages Class and Medical Benefits Class Agreements have not even arrived yet because both of those agreements are still on appeal to the Fifth Circuit.  Those appeals have the potential to moot the Transocean and Halliburton Motions and thus it would be appropriate for this Court to await the outcome of those appeals.  The Plaintiffs agree that Transocean's and HESI's motions are premature.  *See* Rec. Doc. 10186 at 1 (May 20, 2013); Rec. Doc. 10187 at 1 (May 20, 2013).

## BACKGROUND

1.      On December 21, 2013, the Court gave final approval under Federal Rule of Civil

Procedure 23(e) to the Economic and Property Damages Settlement ("Economic Settlement"), as

amended on May 2, 2012 (Rec. Doc. 6414).  *See In re Oil Spill by Oil Rig Deepwater Horizon in*

*Gulf of Mexico*, --- F. Supp. 2d ---, 2012 WL 6652608 (E.D. La. Dec. 21, 2012).  The Economic

Class definition is complex but best encapsulated as follows:

> The geographic bounds of the Settlement are Louisiana, Mississippi, Alabama,
> and certain coastal counties in eastern Texas and western Florida, as well as
> specified adjacent Gulf waters and bays.  Generally, "[t]o be a class member, an
> individual within the geographic area must have lived, worked, or owned or
> leased property in the area between April 20, 2010, and April [16], 2012, and
> businesses must have conducted activities in the area during that same time
> frame." Klonoff Decl. ¶ 20.  The Settlement recognizes six categories of damage:
> (1) specified types of economic loss for businesses and individuals, (2) specified
> types of real property damage (coastal, wetlands, and real property sales damage),
> (3) Vessel of Opportunity Charter Payment, (4) Vessel Physical Damage, (5)
> Subsistence Damage, and (6) the Seafood Compensation Program. These
> categories are further discussed below.  The class definition also contains specific
> exclusions.

2012 WL 6652608 at *3.

The Economic Settlement satisfies all compensatory damage claims alleged by the

Economic Class against Transocean and HESI.  *See* Economic Settlement, §§ 4.4.10.3, 10.3 &

Exh. 21, § 1.1.1.  But the Economic Settlement preserves all punitive damage claims, if any, by

the Economic Class against Transocean and HESI.  *See* Economic Settlement, § 3.6.  The

Economic Settlement also assigns to the Economic Class any punitive damage claims BP may

have against Transocean and HESI.  *See id.* Exh. 21, § 1.1.3 & 1.1.3.6.

The Effective Date of the Economic Settlement is defined as:

(1) the day following the expiration of the deadline for appealing the entry by the
Court of the Final Order and Judgment, if no such appeal is filed, or (2) if an
appeal of the Final Order and Judgment is filed, the date upon which all appellate
courts with jurisdiction (including the United States Supreme Court by petition
for certiorari) affirm such Final Order and Judgment, or deny any such appeal or

petition for certiorari, such that no future appeal is possible, or (3) such date as the Parties otherwise agree in writing.

*Id.* at § 38.62; *see also id.* HESI Statement of Undisputed Material Facts, Rec. Doc. 8267-2 at 5 n.7 (same). The parties to the Economic Settlement have not agreed to alter the Effective Date. Hence, the Effective Date of the Economic Agreement has not yet arrived. Moreover, numerous appeals of this Court's December 21, 2012 final approval order have been filed in the Fifth Circuit and consolidated, along with an appeal concerning intervention, under Case No. 13-30095. Pursuant to the current briefing schedule, the consolidated appeals of the final approval order will ripen for oral argument no earlier than September 2, 2013 and likely several months later.

     2.     On January 11, 2013, the Court gave final approval under Rule 23(e) to the Medical Benefits Class Action Settlement ("Medical Settlement"), as amended on May 1, 2012 (Rec. Doc. 6427–1). *See In re Oil Spill by Oil Rig Deepwater Horizon*, --- F.R.D. ---, 2013 WL 144042 (E.D. La. Jan. 11, 2013). With certain exclusions, the Medical Class is defined as:

> [A]ll Natural Persons who resided in the United States as of April 16, 2010, and who:
>
> 1)     Worked as Clean–Up Workers at any time between April 20, 2010, and April 16, 2012; or
>
> 2)     Resided in Zone A for some time on each of at least sixty days between April 20, 2010, and September 30, 2010 ("Zone A Resident"), and developed one or more Specified Physical Conditions between April 20, 2010, and September 30, 2010; or
>
> 3)     Resided in Zone B for some time on each of at least sixty days between April 20, 2010, and December 31, 2010 ("Zone B Resident"). (MSA § I.A.)

*In re Oil Spill by Oil Rig Deepwater Horizon*, 2013 WL 144042, at *3-*4.

Like the Economic Agreement, the Medical Agreement satisfies all compensatory damages, *see* Medical Agreement, § XVII.A & XVII.B.2, but preserves punitive damages claims by the Medical Class against Transocean and Halliburton.  *See id.* at § II.ZZZ & MMMM.  The Medical Agreement does not assign any BP claims to class members.

The Medical Agreement's Effective Date is defined as follows:

> (1) if no appeal is perfected or sought, the day following the expiration of the deadline for appealing the entry by the COURT of the FINAL ORDER AND JUDGMENT, (2) the day following the date all appellate courts with jurisdiction affirm the FINAL ORDER AND JUDGMENT or all such appeals are dismissed or denied, or (3) such date as MEDICAL BENEFITS CLASS COUNSEL and BP otherwise agree in writing.

Medical Agreement, § II.BB.  Two appeals to the Fifth Circuit of this Court's January 11, 2013 final approval order have been consolidated under Case No. 13-30221.  The current briefing schedule will conclude no earlier than August 1, 2013.  Since appeals have been perfected in the Fifth Circuit, the Medical Agreement's Effective Date has also not arrived.

3.      To BP's knowledge, no motions or other filings have been made **by the two classes** seeking to recover reserved punitive damages against Transocean or Halliburton.  Punitive damages are sought against Transocean and HESI in the B1 and B3 Master Complaints and those are the relevant pleadings for all short-form joinder plaintiffs.  But the arguments of Transocean and HESI in their Motions seek to negate the liability of those defendants only for punitives to the two defined settlement classes, not to plaintiffs who joined in the B1 and B3 Master Complaints.

4.      Phase 1 of the Trial has already concluded.  The trial structure was established many months even before the Economic Class and Medical Class were granted final approval at the district-court level.  *See* Second Amended Pretrial Order 41 [Case Management Order No. 4], Rec. Doc. 6592, at Section I "Trial Structure" (May 30, 2012) (hereafter "2d Am. PTO 41").  As

4

noted, the Effective Dates of the two class settlements have not yet arrived because Fifth Circuit appeals remain pending.  This raises the prospect that the Court may wish to wait until the Effective Dates arrive before adjudicating motions concerning class rights, like this one.

At present, Phase 2 of the Trial is planned to commence September 16, 2013.  No further phases have yet been scheduled.  *See id.* at 3 ("Subsequent Proceedings and Issues. To the extent triable issues pertaining to any parties remain unresolved by Phase One, Phase Two, settlements, motion practice, or stipulation, such trials will be established pursuant to further Order of the Court following further consultation with the parties.").  Hence, no damages phase of any kind has been scheduled.  It is difficult to imagine, given the structure of the proceedings to date and that damages phases of structured trials typically occur last, that damages adjudication could begin before some time deep into 2014, at the earliest.

5.      Transocean filed its motion at issue here on December 18, 2012, prior to final approval of the two class settlements.  HESI filed its motion on January 17, 2013, after final approval had been granted as to the two class settlements.  But consolidated Economic and Medical Class appeals, respectively, remain pending in Fifth Circuit.  Resolution of these appeals likely will not occur until sometime in 2014 at the earliest.  Neither Transocean's Motion nor HESI's Motion attempts to argue or set out any facts establishing that they face immediate hardship requiring the resolution of their purported defenses to punitive damages vis-à-vis the two classes.

6.      In many respects, the HESI Motion is just a continuation of its objections to the class settlements, filed prior to the final approval orders, which this Court repeatedly rejected.[1]

---

[1]     HESI's objections to punitive damages and other points in the class settlements were rejected by the Court on standing grounds.  *See* Preliminary Approval Order, Rec. Doc. 6418 at 17 n.18 (May 2, 2012); Order re Halliburton's and Louisiana's Requests for Settlement Discovery, Rec. Doc. 7038 at 2 (Aug. 3, 2012); Final Approval Order, Rec. Doc. 8138 at 77 (Dec. 21, 2012).  Standing is a close cousin of ripeness.  "Indeed,

See, e.g., Rec. Doc. 6350 (Apr. 24, 2012) at 6 ("BP is purportedly fully compensating plaintiffs for their compensatory damages against HESI.  If that is the case, punitive damages claims arising out of the same injuries that have been fully settled and released are extinguished."); Rec. Doc. 7036 (July 30, 2012) at 6-7 ("The facts that no claim exists for punitive damages against HESI, that such an assignment violates the settlement bar rule, and that the Settlement Agreements obfuscate rather than clarify these issues necessarily prejudice HESI's substantive legal rights."); Obj. Doc. 91 (Aug. 31, 2012) at 18 ("As well, the Settlement Agreement purports to assign claims for punitive damages, without proof of liability for, or amount of, compensatory damages."); Obj. Doc. 93 (Aug. 31, 2012) at 15 ("The Settlement Agreement does not offer a full release of HESI, but reserves to the Medical Class members the right to pursue HESI for exemplary and punitive damages."); Rec. Doc. 8038 at 5 (Nov. 28, 2012) ("HESI objects to paragraph 470 to the extent that it states that the assignment of 'BP's claims against Halliburton and Transocean to the class' is a 'significant benefit.'  The legal validity and resulting benefit of such claims is questionable, as set forth in HESI's Objections." (citation omitted)).[2]

Just as HESI suffered no hardship by means of this Court's rejection of its objections to the reservation of punitive damage claims last year when the Court was reviewing the class settlements, so HESI continues to face no hardship.  Nothing has changed.

---

because the focus of our ripeness inquiry is primarily temporal in scope, ripeness can be characterized as standing on a timeline."  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).

[2]   Transocean's approach was more respective of ripeness doctrine than HESI's.  Transocean recognized that objections to the classes' reservations of punitive damages claims were unripe while the settlements were under review, but it makes no showing here as to why its continuing objections in this same vein have now suddenly become ripe.  *See* Rec. Doc. 7034 at 2 (July 30, 2012) ("Transocean agrees with Halliburton that there are significant issues presented by the settlement agreement's purported 'assignments' to the settlement class and purported 'retention' of claims (including punitive damage claims) by the settlement class.  Some of these issues were identified by Halliburton in its opposition to preliminary approval of the settlement.  ***Now is not the time, however, for these issues to be addressed or decided.***") (citation omitted) (emphasis added); Rec. Doc. 8003 at 4 (Nov. 26, 2012) ("Any [finding that the assignment is valid] is ***premature*** and could improperly affect Transocean's procedural and substantive rights.") (emphasis added).

## ARGUMENT

### I.   STANDARD OF REVIEW

"The pleading standard for a Rule 12(c) motion is the same as for a motion to dismiss under Rule 12(b)(6) ....  Under that standard, the issue is not whether the plaintiff will ultimately prevail, but whether it is entitled to offer evidence to support its claims.  We accept well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff, but we do not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC*, 352 Fed. App'x 945, 950 (5th Cir. 2009) (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)).

The summary judgment standard, in turn, is equally well-established:

> Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

*Sankey v. Metropolitan Life Ins. Co.*, Civ. A. No. 12-1135, 2013 WL 1868365, at *4 (E.D. La. May 2, 2013) (Barbier, J.).

### II.   RIPENESS

Reflecting both constitutional and prudential concerns, the Supreme Court has established a two-part test for ripeness: "Determining whether a claim is ripe for judicial review requires the evaluation of (1) 'the fitness of the issues for judicial decision' and (2) 'the hardship to the parties of withholding court consideration.'" *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 286 (5th Cir. 2012) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).  Ripeness is "peculiarly a question of timing." *Regional Rail Reorganization Act Cases*,

419 U.S. 102, 140 (1974). The "'basic rationale [of this doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Opulent Life Church*, 697 F.3d at 286 (quoting *Abbott Labs.*, 387 U.S. at 148).

Neither Transocean nor HESI makes any attempt to satisfy either prong of the classic *Abbott Laboratories* ripeness test — for good reason. The Motions flunk both ripeness prongs.

*Fitness of the Issues for Judicial Decision.* The Transocean and Halliburton Motions are not fit for adjudication now because the Court has yet to decide the issues addressed in Phase 1 of the Trial. *See* 2d Am. PTO 41 at Section III, 5-6 ("At the end of each Phase of the Trial and after consideration of the parties' submissions, the Court *may* decide to issue partial Findings of Fact and Conclusions of Law for that Phase *if it deems the record adequately developed*.") (emphasis added). Such Phase 1 Findings of Fact and Conclusions of Law may address the quality of fault, but given the established structure of the Trial, such a ruling could not possibly result in an award of punitive damages. Indeed, the Court could (and should as to BP) decide that while the conduct of defendants was, in some respects, negligent, it did not rise to the level of any degree of fault beyond that. *See, e.g.*, *Tatum v. Kelley*, 2012 WL 956409, at *3 (S.D. Miss. Mar. 20, 2012) (concluding that it was unnecessary to resolve the availability of punitive damages because "it remains to be seen whether there is any reckless or grossly negligent behavior that could support punitive damages."). "'If the purported injury is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all[,]' the claim is not ripe for adjudication." *Pillar Panama, S.A. v. DeLape*, 326 Fed. App'x 740, 743 (5th Cir. 2009) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)).

Additionally, the Court also made clear in PTO 41 that it may decide to defer the issuance of Phase 1 findings until a later, as-yet-undefined date:  "If the Court does not find it appropriate to enter Findings of Fact and Conclusions of Law with respect to any issues tried until the conclusion of all Trial Phases, the Court may defer issuing its Findings of Fact and Conclusions of Law until the conclusion of all phases of the liability and limitation trial." Am. PTO 41 at 6.  Thus, quite apart from the demands of ripeness doctrine (which Transocean and HESI cannot satisfy), and simply as an aspect of properly exercised inherent discretion, the Court could decide to defer adjudicating the *prerequisite* issues that would make resolution of the Transocean and HESI Motions ripe, or alternatively, simply decide to defer resolution of those Motions themselves.  *See*, *e.g.*, *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 243 (5th Cir. 2009) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)) (district court's discretionary authority to issue a stay "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants").

Additionally, of course, it makes perfect prudential sense for the Court not to resolve the Transocean and HESI Motions now, since Phase 1 Findings of Fact and Conclusions of Law could moot the Motions.  Depending on the contents of any such findings and conclusions, they could preclude an award of punitive damages to any party to Phase 1 of the Trial.  *See*, *e.g.*, *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 91 (5th Cir. 2011) ("We must therefore allow [prerequisite] state takings procedures to run their course before we can adjudicate the procedural due process claim.  Indeed, the state adjudication of the takings claim is likely to moot this case, allowing us to avoid the constitutional question whether notice is

required before a taking under the Due Process Clause ….   Accordingly, we dismiss the procedural due process claim as unripe.").

Finally, Transocean's own Motion unwittingly offers ammunition to fuel the ripeness argument against it.  *See* Transocean Motion at 3 (arguing that "due process requires an individualized determination as to every individual claimant (whether he or she is a member of the settling class or not) to establish what, if any damage that claimant may have suffered before a punitive award, if any, could be assessed."); *see also id.* at 9-10.  If that is correct, it becomes even more apparent that Transocean's Motion is not ripe.  The due process concern it sets out counsels in favor of delaying resolution of issues relating to punitive damages, if any, until the Court is prepared to make the individualized determinations Transocean seeks.   Indeed, the hypothetical nature of Transocean's Motion is apparent from its statement: "***If the Court were to use*** the amount for which BP has settled with the plaintiffs as the 'compensatory damages' comparator for purposes of deriving an appropriate amount of punitive damages against Transocean, ***it would allow*** the settlement process—conducted outside the courtroom through negotiations between BP and the plaintiffs and to which Transocean was not a party—to supplant Transocean's constitutional entitlement to legal process."  *Id.* at 8 (emphasis added).  Of course, the Court has not acted to trigger the hypothetical legal ruling Transocean fears.[3]  Accordingly, the lack of ripeness is glaring.

***Hardship to the Moving Parties.***  In any event, the Transocean and HESI Motions should be rejected as non-ripe because they fail to plead or attempt to establish by factual submissions (especially in the case of HESI, which has moved in the alternative for summary judgment) that

---

[3]    Note as well that even if HESI were correct that questions about the availability of punitive damage claims to the Economic and Medical Classes were "exclusively … legal questions," that alone would not meet the fitness prong of the ripeness test given the other fitness problems set out above.  HESI Memo., Rec. Doc. 8267-1, at 3.

immediate hardship would occur if resolution of the Motions were foregone or delayed. "'[E]ven where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness.'"  *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (quoting *Cent. & S.W. Servs., Inc. v. EPA*, 220 F.3d 683, 690 (5th Cir. 2000)).  Affidavits or declarations are typically filed to support the necessary showing of hardship.  Those are wholly absent here (and even if Transocean and Halliburton were to make some sort of belated attempt to file such materials, BP and other parties should be able to review and test such submissions before the Court decides the issue of ripeness).  *See*, *e.g.*, *Harrell v. The Florida Bar*, 608 F.3d 1241, 1264 (11th Cir. 2010) ("unsupported general assertion in a brief provides precious little basis for finding hardship").

**Ripeness Doctrine in the Specific Context of Punitive Damages.**  Determining whether punitive damages claims are ripe is the frequent subject of litigation.  *See*, *e.g.*, *Auster Oil & Gas, Inc. v. Stream*, 891 F.2d 570, 581 (5th Cir.1990) ("Unless and until punitive damages are awarded, [the issue of the policies' coverage of punitive damages] is not ripe for consideration...."); *see also Hanna v. Maxwell*, 415 Fed. App'x 533, 536-37 (5th Cir. 2011) (claim to punitive damages untimely prior to determination of injury); *Cooper Tire & Rubber Co. v. Farese*, 2008 WL 5188233, at *4 (N.D. Miss. Dec. 9, 2008) (concluding it was "premature" to make a damages ruling in the absence of a finding on one element of the cause of action).  Particularly instructive is *First National Bank of Louisville v. Lustig*, Civ. A. No. 87–5488, 1993 WL 411126, at *2 (E.D. La. Oct. 5, 1993), in which this Court trifurcated a trial and noted that only if the jury found the defendants responsible as to the underlying claims in the first two phases would the issue of punitive damages reach the jury in the third phase.  Until then, "the motion to strike the [defendants'] punitive damages defense is premature."  *Id.*

*Disposition*.   Too many contingencies remain to occur, and all of them prudentially counsel in favor of waiting before adjudicating Transocean's and HESI's Motions.   As noted above, the Transocean and HESI Motions should be denied outright as unripe or deferred for action until a later date when the pending class action appeals in the Fifth Circuit have been decided and this Court determines whether (and when):   (a) it will issue findings of fact and conclusions of law on the recently completed Phase 1 of the Trial; or (b) it will schedule a damages phase of the Trial and, if so, whether such a phase will adjudicate punitive damages as potentially pursued by the Economic and/or Medical Classes.   Indeed, even after the class appeals are resolved by the Fifth Circuit, it would be prudent for the Court to await the conclusion of both Fifth Circuit class action appeals and for this Court to have made the key procedural decisions about whether to issue Phase 1 Findings of Fact and Conclusions of Law *and* whether to establish later trial phases in a revised PTO 41.

## III.   PRESERVATION OF BP'S LEGAL POSITIONS ON OTHER ISSUES

Denial or deferral of the Transocean and HESI Motions will make reaching any issues concerning punitive damages unnecessary.   BP nevertheless addresses the following two issues of law or fact raised by Transocean and/or HESI out of an abundance of caution:

*First*, Transocean argues that BP's class settlements agreed to pay punitive damages to class members.   *See* Transocean Motion at 6 ("Indeed the settlement will pay most class members a 'risk transfer premium' ["RTP"] designed to compensate them for punitive damages, among other things."); *see also id.* at 9 (same point).   This is wrong.   BP did not agree to pay or admit anything concerning punitive damages.   *See* Economic Settlement, § 12 ("Denial of Wrongdoing or Liability"); *see also* Medical Settlement, § XXIV ("Denial of Wrongdoing") (and note that the Medical Settlement does not contain RTP provisions).   As to defined Released Parties, the Economic Settlement "*liquidat*[*es*]" claims for punitive damages.   *In re Oil Spill by*

*Oil Rig Deepwater Horizon*, 2012 WL 6652608, at *4.   But liquidating such claims via contractual agreement in a class settlement that does not admit liability is very different from agreeing "to compensate … for punitive damages," as Transocean alleges.  Transocean knows the difference.[4]

 **Second**, BP agrees with HESI that, as a matter of law, claims for alleged economic losses cannot be augmented by punitive damages awards since the Oil Pollution Act of 1990 ("OPA") provides only for compensatory damages and OPA displaces maritime law.  *See* HESI Motion at 3.[5]  BP recognizes that the Court ruled in the B1 Order against the OPA displacement arguments of the defendants including BP (except as to the issue of presentment, as to which the Court found displacement), but BP respectfully continues to disagree with that decision.  Revisiting that ruling would also moot Transocean's Motion — entirely or in large part — because Transocean, like BP, is an OPA responsible party.[6]  For these reasons, BP incorporates by

---

[4] HESI correctly quotes the Section 38.126 of the Economic Settlement concerning RTPs, *see* HESI Statement of Undisputed Material Facts, Rec. Doc. 8267-2 at 3 ¶ 9, but fails to quote the provisions of the Economic Settlement wherein BP denies liability.  This selective quotation gives the false impression that BP agreed to pay punitive damages.  That is not how courts read contracts.  *See, e.g.*, *In re Deepwater Horizon*, 710 F.3d 338, 344 (5th Cir. 2013) ("Courts should consider contracts as a whole, affording each part of the contract effect.") (internal quotation marks and ellipses omitted).

[5] BP accepts HESI's concession that HESI is liable in contribution for its causal role in creating the *Deepwater Horizon* Incident.  *See* HESI Memo., Rec. Doc. 8267-1, at 11 (citing 33 U.S.C. § 2709, OPA's contribution provision, and quoting *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741, 750 (E.D. La. 2009) ("[I]t appears that Claimants should pursue claims covered under OPA only against the responsible party …. Then, the responsible party can take action to recover against third parties.")).  Of course, this begs the question of what source of law defines the tort duties of HESI, since HESI is correct that it is not an OPA responsible party. But that question is not presented in the instant Motions and is itself unripe until the Court at least resolves the issues in Phase 1 of the Trial because HESI is also correct to quote *Gabarick* properly reading OPA to reflect a two-stage conceptual process — first, primary OPA recovery, later followed by contribution actions against third parties designed to align financial responsibility in accord with the principles of equity.

[6] While HESI's OPA displacement analysis is generally correct, it wrongly states that this Court held that OPA displaces maritime law claims for compensatory damages against BP.  *See* HESI Memo., Rec. Doc. 8267-1, at 19.  In fact, the Court was quite clear in the B1 Order that OPA displacement applied only insofar as it required compliance of all oil-spill claims with OPA presentment.  *See* B1 Order at 38 ¶ 7, Rec. Doc. 3830 (Aug. 26, 2011) ("As to Responsible Parties, OPA does displace general maritime law claims against Responsible Parties, ***but only with regard to procedure*** (i.e., OPA's presentment requirement).") (emphasis added).

reference herein its B1 Memorandum in Support of Motion to Dismiss, Rec. Doc. 1440-1, at 13-17 (Feb. 28, 2011), and urges this Court to consider the issue of OPA displacement afresh.

In that vein, the Court should also be aware that another Judge in this District — just this past March — once again ruled that OPA displaces maritime law, this time based on a careful brief by the United States to that effect in a case involving a notable oil spill on the Mississippi River.  *See* Exhibit 1 (*United States v. American Commercial Lines, LLC*, No. 2:11-cv-2076, 2013 WL 1182963 (E.D. La. Mar. 21, 2013)); Exhibit 2 (brief of the United States in *American Commercial Lines*).  This adds to the point that this Court's B1 Order ruling on OPA displacement already effectively calls on the Fifth Circuit to create a split in the Circuits since the First Circuit has held that OPA displaces maritime law — on the very issue of the availability of punitive damages.  *See South Port Marine LLC v. Gulf Oil Ltd. P'Ship*, 234 F.3d 58, 64-65 (1st Cir. 2000) (finding OPA overrides maritime law punitive damage claims).  *American Commercial Lines*, together with the position of the United States, thus adds to the body of authority and legal opinion weighing against the B1 Order's analysis of OPA displacement.

## **CONCLUSION**

Transocean's motion for judgment on the pleadings and HESI's motion for judgment on the pleadings or in the alternative for summary judgment — each regarding class punitive damages claims — should be denied as unripe or, alternatively, deferred in an exercise of well-founded inherent discretion.


May 20, 2013                                                  Respectfully submitted,


Richard C. Godfrey, P.C.                        */s/ Don K. Haycraft*
J. Andrew Langan, P.C.                         Don K. Haycraft (Bar #14361)
Andrew B. Bloomer, P.C.                       R. Keith Jarrett (Bar #16984)
R. Chris Heck                                  LISKOW & LEWIS
KIRKLAND & ELLIS LLP                           701 Poydras Street, Suite 5000
300 North LaSalle Street                       New Orleans, Louisiana 70139
Chicago, IL 60654                              Telephone:  (504) 581-7979
Telephone:  (312) 862-2000                     Telefax:  (504) 556-4108
Telefax:  (312) 862-2200


Jeffrey Bossert Clark                          Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP                           COVINGTON & BURLING LLP
655 Fifteenth Street, N.W.                     1201 Pennsylvania Avenue, NW
Washington, D.C. 20005                         Washington, DC 20004
Telephone:  (202) 879-5000                     Telephone:  (202) 662-5985
Telefax:  (202) 879-5200                       Telefax:  (202) 662-6291

**ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC., BP AMERICA
PRODUCTION COMPANY, AND BP P.L.C.**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of May 2013.

/s/ Don K. Haycraft
Don. K. Haycraft