# Exhibit 1

Page 1

Slip Copy, 2013 WL 1182963 (E.D.La.)
**(Cite as: 2013 WL 1182963 (E.D.La.))**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Louisiana.
UNITED STATES of America
v.
AMERICAN COMMERCIAL LINES, LLC and
D.R.D. Towing Company, LLC.

Civil Action No. 11–2076.
March 21, 2013.

Michael A. Dilauro, Sarah Susan Keast, U.S. Department of Justice, Washington, DC, for United States of America.

Glenn Gill Goodier, Lance Michael Sannino, Richard D. Bertram, Jones Walker, New Orleans, LA, John A.V. Nicoletti, Richard W. Stone, II, Terry L. Stoltz, Nicoletti, Hornig & Sweeney, New York, NY, for American Commercial Lines, LLC and D.R.D. Towing Company, LLC.

### ORDER AND REASONS

IVAN L.R. LEMELLE, District Judge.

**\*1** Before the Court are Third–Party Defendants Environmental Safety and Health Consulting Services, Inc.'s ("ES & H") and United States Environmental Services, LLC's ("USES") motions to dismiss American Commercial Lines' ("ACL") Third–Party Complaints against them. (Rec. Doc. No. 31 & 32). Also before the Court is the United States of America's ("United States") Motion to Dismiss the Third–Party Complaints against ES & H and USES, as well as ACL's opposition to all three motions. (Rec. Doc. Nos. 35, 36, & 38). ES & H also filed a reply in support of its motion. (Rec.Doc. No. 60). Accordingly, and for the reasons articulated below,

**IT IS ORDERED** that ES & H, USES, and United States' Motions to Dismiss the Third–Party Complaint against ES & H and USES (Rec. Docs. No. 31, 32, & 35) are **GRANTED.**[FN1]

> [FN1]. We are grateful for the work on this case by Emily C. Byrd, a Loyola University New Orleans College of Law Extern with our Chambers.

*PROCEDURAL AND FACTUAL HISTORY*

This case stems from the collision of an ocean-going tanker and a barge under tow on the Mississippi River near New Orleans Louisiana. On July 23, 2008 the M/V TINTOMARA, a chemical carrying tanker was sailing downriver on the Lower Mississippi River, while the tug, M/V MEL OLIVER, was towing a barge, DM–932, upriver. (*See* Rec. Doc. No. 1435, in Civil Action 08–4007). The MEL OLIVER began a turn to port without warning, crossing in front of the TINTOMARA. The resulting collision with the barge caused oil to spill. (*See* Rec. Doc. No. 1435, in Civil Action 08–4007).

The United States Coast Guard ("Coast Guard") established "Unified Command" and called on Oil Spill Response Organizations ("OSRO") to deploy spill protection and recovery equipment. (Rec. Doc. No. 1, at 6). The Coast Guard also named ACL, as owner of DM–932, and D.R.D. Towing Co. ("DRD"), the operator of DM–932, as the responsible parties for the spill, making them liable under Oil Pollution Act ("OPA") § 2702(a) for "removal costs and damages ... that result from such incident." 33 U.S.C. § 2702(a). ACL entered into a contract with ES & H and USES to provide cleanup services. (Rec. Doc. Nos. 11, at 4 & 31–1, at 3). When ACL failed to settle or pay ES & H and USES' cleanup costs within the 90–day time frame mandated by OPA, the United States paid the removal and cleanup costs out of the Oil Spill Liability Trust Fund ("The Fund"). The United States filed the instant action to recover those expenses from ACL. (Rec.Doc. No. 1).

ACL asserts that ES & H and USES failed to provided adequate documentation for the amounts

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

billed to and paid out by The Fund. (Rec.Doc. No. 11)(alleging that ES & H and USES failed to provide federally required I–9 forms, or proper Hazardous Waste Operations and Emergency Response ("HAZWOPER") forms, with respect to its personnel and labor force). Accordingly, ACL seeks to tender ES & H and USES at Third–Party Defendants to the United States under the provisions of Federal Rule of Civil Procedure Rule 14(c)(2), which is specific to claims brought in admiralty and maritime. *Id.* In the alternative, ACL seeks to hold ES & H and USES directly liable to ACL, to the extent that ACL is found liable to the United States. (Rec. Docs. No. 11 at ¶¶ 22 & 30); (Rec. Doc. No. 50 at 16). ES & H, USES, and the United States oppose the joinder of ES & H and USES in their instant motions to dismiss. (Rec. Doc. Nos. 31, 32, and 35).

*LAW AND ANALYSIS*

*A. 12(b)(6) Motion to Dismiss*

**\*2** Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a complaint to be dismissed for failure to state a claim upon which relief can be granted. *Bell Atl. Corp. v. Twombley,* 550 U.S. 544, 552 (2007). A motion to dismiss under 12(b)(6) attacks the legal sufficiency of the complaint. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001). The court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996). Additionally, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombley,* 550 U.S. at 555. A plaintiff has an "obligation to provide the 'grounds' for his 'entitlement to relief', [ and that] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* In order for a complaint to survive a motion to dismiss, it must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Gonzales v. Kay,* 577 F.3d 600, 603 (5th Cir.2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

For a court to determine the plausibility of a claim, a court is required to draw on its common sense and experience in a context specific manner. *Iqbal,* 556 U.S. at 678.

The Supreme Court in *Iqbal* set forth a two-step approach to determine whether a pleading states a plausible claim for relief. *Id.* at 678. First, courts must identify those pleadings that, "because they are no more than conclusions, are not entitled to assumptions of truth." *Id.* at 679. After identifying the well-pleaded factual allegations, the court must then "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.*

Here, ES & H, USES, and the United States argue that ACL fails to state a claim upon which relief can be granted because OPA preempts general maritime claims against ES & H and USES. (Rec. Docs. No. 31, 32, & 35).

*B. Joinder under Rule 14(c)*

ACL joins ES & H and USES as third-party defendants through the procedural vehicle of Federal Rule of Civil Procedure 14(c), which governs joinder in admiralty and maritime cases. (Rec. Doc. No. 11 at 1) (tendering ES & H and USES as "direct defendants to the [United States] in accordance with Rule 14(c) of the Federal Rules of Civil Procedure"). "*If a plaintiff asserts an admiralty or maritime claim under Rule 9(h),* the defendant or a person who asserts a right under Supplemental Rule C(6)(a)(I) may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable—either to the plaintiff or to the third-party plaintiff—for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences." Fed.R.Civ.P. 14(c), (emphasis added). Accordingly, ACL's attempt to join ES & H and USES as third-party defendants hinges on the United States' election of Rule 9(h) admiralty or maritime jurisdiction. The mere assertion of admiralty jurisdiction *as a dual or alternate basis of subject matter jurisdiction is sufficient to make a Rule 9(h) election* to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

proceed in admiralty for that claim. *Luera v. M/V Alberta,* 635 F.3d 181, 188–189 (5th Cir.2011), (emphasis added).

***3** Here, the United States has asserted multiple bases of subject matter jurisdiction, including admiralty jurisdiction.[FN2] (Rec. Doc. No. 1 at ¶ 3, asserting admiralty jurisdiction in addition to federal question, United States as plaintiff, Clean Water Act, and Oil Pollution Act). Therefore, under the Fifth Circuit's holding in *Luera,* ACL has properly invoked Rule 14(c) to join ES & H and USES as third-party defendants. However, Rule 14(c) is merely a procedural vehicle for joinder. ACL must still allege a claim against ES & H and USES upon which relief can be granted to survive the 12(b)(6) standard.[FN3] *See Stewart & Stevenson Services, Inc ., v. M/V Margaret Brent,* Civ. A. 92–2818, 1994 WL 24244 (E.D.La. Jan. 18, 1994); *Campbell v. Stone, Ins., Inc.,* 509 F.3d 665, 669 (5th Cir.2007).

> FN2. The United States has indicated in its Motion to Dismiss that it would "amend its complaint, if necessary to expressly decline the election of Rule 9(h)." (Rec. Doc. No. 35–1 at 2, n. 2). Although the Fifth Circuit has indicated that such leave to amend a complaint and decline Rule 9(h) jurisdiction should be freely given, no such motion to amend is pending before this Court. Therefore, the Court treats the United States' complaint as it stands. *See Luera,* 635 F.3d at 187, citing 5A Charles Wright & Arthur Miller, Federal Practice and Procedure § 1314 (3d ed.2004).

> FN3. Under Rule 14(c), a third-party defendant can be held directly liable to the original plaintiff, or to the defendant acting as a third-party plaintiff. *See* 6 Charles Wright & Arthur Miller, Federal Practice and Procedure § 1465 (3d ed.2004), citing *Royal Ins. Co. of America v. Southwest Marine,* 194 F.3d 1009, 1018 (9th Cir.1999).

**C. ACL's claims against ES & H and USES**

**1. Oil Pollution Act**

The instant dispute is governed by OPA because it involves an incident where oil was discharged "into or upon the navigable waters or adjoining shorelines or the exclusive economic zone." 33 U.S.C. § 2702. Congress passed OPA in the wake of the EXXON VALDEZ oil spill, to address oil spill liability and compensation. 33 U.S.C. §§ 2701 et seq.; See also *Gabarick v. Laurin Maritime (America) Inc.,* 623 F.Supp.2d 741, 745 (E.D.La.2009); *In re Petition of Settoon Towing LLC,* 722 F.Supp.2d 710, 713 (E.D.La.2010), citing *Rice v. Harken Exploration Co.,* 250 F.3d 264, 266 (5th Cir.2001), citing Senate Report No. 101–94, *reprinted in* 1990 U.S.C.C.A.N. 772, 723. OPA imposes *strict liability* for pollution removal costs and damages on a "responsible party" for a vessel or facility from which oil is discharged. *Gabarick,* 623 F.Supp.2d at 744; *Nguyen v. Am. Commercial Lines, Inc.,* 2012 WL 5473741 (E.D.La. Nov. 9, 2012), citing 33 U.S.C. § 2702(a), (emphasis added). When the responsible party refuses to pay, or the claim is not paid within ninety days, OPA allows The Fund to compensate for removal and cleanup costs incurred for types of damages enumerated in Section 2712. 33 U.S.C. §§ 2712 –13. OPA further states: "Any person, *including The Fund,* who pays compensation pursuant to this Act to any claimant for removal costs or damages *shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law.*" 33 U.S.C. § 2715, (emphasis added). OPA's statutory scheme was intended to "streamline federal law and 'provide quick and efficient cleanup of oil spills, compensate victims of such spills, and internalize the costs of spills with the petroleum industry.' " *Settoon Towing,* 722 F.Supp.2d. at 713, citing *Rice v. Harken Exploration Co.,* 250 F.3d 264, 266 (5th Cir.2001), citing Senate Report No. 101–94, *reprinted in* 1990 U.S.C.C.A.N. 772, 723.

OPA contains an admiralty and savings provision which states that "except as otherwise

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

provided in this Act, this Act does not affect—(1) admiralty and maritime law." 33 U.S.C. § 2751. Therefore, when a claim is covered by OPA, the plain language of the statute indicates its mandatory and exclusive nature. *Gabarick,* 623 F.Supp.2d at 746. ACL asserts that its claims for indemnification or direct liability to the United States under federal common law and general maritime law are not preempted by OPA because OPA does not "explicitly" do so. (Rec. Doc. No. 50 at 14).

*2. Preemption*

**\*4** To determine whether OPA preempts claims brought under general maritime law, this Court has looked to the Supreme Court's three-part analysis: (1) is there a clear indication that Congress intended to occupy the entire field; (2) does the statute speak directly to the question addressed by common law; and (3) will application of common law have a frustrating effect on the statutory remedial scheme. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico,* 808 F.Supp.2d. 943 (E.D.La.2011), citing *Exxon Shipping Co. v. Baker,* 554 U.S. 471 (2008).

As to the first prong, there is clear Congressional intent in enacting OPA to "create a single Federal law providing cleanup authority, penalties, and liability for oil pollution." *Gabarick,* 623 F.Supp.2d at 748, quoting Senate Report No. 101–94 at 722 & 730. "OPA represents Congress's attempt to provide a comprehensive framework in the area of marine oil pollution." *Tanguis v. M/V Westchester,* 153 F.Supp.2d 859, 867 (E.D.La.2001), (referring to the Congressional Record accompanying OPA). Therefore, the requirement of a clear indication to occupy the entire field is met.

Second, OPA directly speaks to the claims asserted by ACL in its Third–Party Complaint. OPA directly addresses that once a claimant has been paid from The Fund, then whoever pays the claim (here the United States) is subrogated to their rights. Further, OPA's liability scheme for a "responsible party" is that of strict liability, so even when ACL asserts its ability to seek contribution from a third party, ACL is still responsible for initially paying out cleanup and removal costs. *Gabarick,* 623 F.Supp.2d at 750 (recognizing that under OPA, claimants should first proceed against the responsible party, and only subsequently can the responsible party take action to recover from third parties). Here, ACL does not dispute that the United States stands in the shoes of ES & H and USES, having been subrogated to their rights by paying the claims out of The Fund. (Rec. Docs. No. 35–1 at 11, citing 33 C.F.R. § 136.115, & 50 at 10, n. 5). By seeking Third–Party Joinder, ACL is in effect trying to avoid the strict liability that OPA places on responsible parties to pay the cleanup and removal costs.[FN4] The United States and The Fund have its own procedures for evidence for documentation of cleanup and removal expenses. 33 U.S.C. § 2712–13. Therefore, although ACL auditors felt the lack of the I–9 and HAZWOPERs forms sufficient to decline payment, that is not a reason to shift liability and join ES & H and USES to this action. The proper procedural vehicle to litigate defects in the claim payment process is as a defense against The Fund under the "arbitrary and capricious" standard of the Administrative Procedure Act, as ACL acknowledges. *Buffalo Marine Services Inc., v. United States,* 663 F.3d 750, 753 (5th Cir.2011); (Rec. Doc. No. 50 at 9 "ACL acknowledges that its defense to the claim by [The Fund] may be subject to an arbitrary and capricious standard under the Administrative Procedure Act.").

> FN4. OPA does provide three exceptions to strict liability for a responsible party, none of which are applicable here: (1) an act of God; (2) an act of war; or (3) an act or omission of a third party (as long as the third party is *not* one whose act or omission occurs in connection with any contractual relationship with any third party). 33 U.S.C. § 2703(a); *Buffalo Marine Services Inc., v. United States,* 663 F.3d 750, 753 (5th Cir.2011), (emphasis added).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1182963 (E.D.La.)
**(Cite as: 2013 WL 1182963 (E.D.La.))**

***5** Finally, allowing ACL's general maritime claims against ES & H and USES to proceed would frustrate the remedial scheme of OPA, which is to encourage rapid cleanup in the wake of an oil spill. To that end, The Fund is authorized to pay removal costs to claimants like ES & H and USES if a responsible party like ACL has failed to do so within the 90–day time frame. Once The Fund, in this case, the United States, pays such claims, it stands in the shoes of ES & H and USES to assert its rights against ACL via subrogation. If despite this statutory design, ACL were allowed to bring OSROs such as ES & H and USES into OPA litigation, it would defeat the purpose of incentivizing rapid cleanup—oil spill responders would be deterred by the threat of financial risk and liability exposures.

Therefore, because OPA preempts the general maritime claims which ACL seeks to assert, the third-party complaints against ES & H and USES are **DISMISSED** for failure to state a claim upon which relief can be granted.

E.D.La.,2013.
U.S. v. American Commercial Lines, LLC
Slip Copy, 2013 WL 1182963 (E.D.La.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.