# Exhibit 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 11-2076 |
| v. | ) | |
| | ) | |
| AMERICAN COMMERCIAL LINES, LLC | ) | Section: "B" (4) |
| and D.R.D. TOWING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO DISMISS AMERICAN COMMERCIAL LINES LLC'S THIRD-PARTY COMPLAINT AGAINST ENVIRONMENTAL SAFETY AND HEALTH CONSULTING SERVICES, INC., AND UNITED STATES ENVIRONMENTAL SERVICES, LLC

Summary

This case stems from the collision of the ocean-going tanker M/V TINTOMARA and barge DM-932, while under control of the tug M/V MEL OLIVER, on July 23, 2008. Doc. 10 ¶ 1. Because it is an oil spill case, the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701-61 (2006), governs many of the rights and liabilities of parties affected by that event. American Commercial Lines, LLC ("ACL") owned the barge from which oil spilled and has been identified by the U.S. Coast Guard as a responsible party. In fact, ACL owned not only the barge, but also its cargo of fuel oil and the tug that pushed it.

Subject to three narrow exceptions (none relevant to this motion) OPA obligates a responsible party—and no one else, particularly not a cleanup contractor, i.e., an Oil Spill Response Organization ("OSRO")—to pay for the removal of spilled oil from the

Page 1 of 17

environment. When a responsible party is unable to do so, or—as here—declines to, the unpaid claimant may seek reimbursement from the Oil Spill Liability Trust Fund ("Fund"). And when—as here—the National Pollution Fund Center ("NPFC") pays such a claim, the Fund becomes subrogated and assumes the claimant's right to collect from the responsible party. 33 U.S.C. § 2715(a). Accordingly, the United States sued ACL to recover monies it paid to claimants, including Environmental Safety and Health Consulting Services ("ES&H") and United States Environmental Services ("USES"), as well as other costs. Doc. 1.

OPA dictates who is to be treated as a responsible party. In this instance, ACL and its co-defendant, DRD Towing, LLC ("DRD"), are so designated. OPA does not authorize ACL to substitute ES&H and USES by tendering them to the United States under Fed. R. Civ. P. 14(c).[1] Given that OPA controls this issue and that it does not authorize the Rule 14(c) tender of an OSRO, the United States moves for dismissal of ACL's third party complaint [Doc. 11] for "failure to state a claim upon which relief can be granted."[2] Fed. R. Civ. P. 12(b)(6).

---

[1] ACL, of course, does not allege that ES&H or USES is a sole-fault third-party. *See* 33 U.S.C. § 2703(a)(3) ("act or omission of a third party"). It is uncontested that those parties removed oil after the spill and that they played no part in causing it.

[2] Moreover, ACL cannot invoke Rule 14(c) because the United States did not elect to proceed under Rule 9(h). *See Apache Corp. v. Santa Fe Drilling Co.,* 435 Fed. Appx. 322, 325-26; 2011 U.S. App. LEXIS 14454 at **7-8 (5th Cir. Jul. 13, 2011) (application of Rule 9(h) is presumed, however, a party may opt out). The United States will amend its complaint, if necessary, to expressly decline the election of Rule 9(h).

Facts

On July 23, 2008, the M/V TINTOMARA was sailing downbound on the Lower Mississippi River. Heading in the opposite direction, the tug M/V MEL OLIVER was pushing an oil-laden tanker barge, DM-932, upriver. As the vessels closed, the M/V MEL OLIVER—without warning—began an arcing turn to port and crossed in front of the TINTOMARA. *See* Doc. 10 ¶ 16 (ACL "[a]dmits that the MEL OLIVER and the barge DM-932 were running along the left descending bank of the Mississippi River until the flotilla began a series of erratic maneuvers culminating in the flotilla crossing just up river from the Harvey Locks . . . ."). Unable to stop, the larger vessel struck DM-932, causing oil to spill into the river. *See* Doc. 10 ¶ 19 (ACL "[a]dmits that the barge DM-932 had been carrying slightly less than 10,000 barrels of No. 6 fuel oil and that as a result of the collision, oil was discharged into and on the waters of the Lower Mississippi River . . . ."). The M/V MEL OLIVER, tank barge DM-932, and its fuel oil cargo were owned by American Commercial Lines, LLC ("ACL"). *See* Doc. 11 ¶ 8 ("At all material times, ACL was the owner of the barge DM-932 . . . .). The M/V MEL OLIVER was operated by Defendant D.R.D. Towing, LLC ("DRD"). Doc. 10 ¶ 6. ES&H and USES, contractors who specialize in cleaning up oil spills, were called on to assist. *See* Doc. 10 ¶ 21 (ACL "[a]dmits that OSROs were called on to deploy oil spill protection and recovery equipment . . . .").

The United States sued ACL under the Federal Water Pollution Control Act or "Clean Water Act" ("CWA"), 33 U.S.C. §§ 1251-1376 (2006); the Oil Pollution Act of

Page 3 of 17

1990 ("OPA"), 33 U.S.C. §§ 2701-61 (2006); and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 (2006). On January 20, 2012, ACL answered, counter-claimed against the United States and asserted cross-claims against DRD. Doc. 10. It also raised affirmative defenses, some relating expressly or potentially to payments by the National Pollution Funds Center ("NPFC") to ES&H and USES:

### THIRD DEFENSE

Plaintiff, through the National Pollution Funds Center ("NPFC"), has voluntarily made payments to third-parties which were not properly supported by the documentation required under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701, *et seq*., or the applicable regulations adopted under OPA.

### FOURTH DEFENSE

Plaintiff, through the NPFC, has voluntarily made payments to third-parties which were not legally recoverable under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701, *et seq*., or the applicable regulations adopted under OPA.

### FIFTH DEFENSE

Plaintiff, through the NPFC, has voluntarily made payments to third-party Oil Spill Response Organizations ("OSROs") in excess of the amounts due under the contracts between ACL and the OSROs. These payments violated ACL's constitutional rights to freedom of contract.

### SIXTH DEFENSE

Plaintiff, through the NPFC, has adopted procedures for processing and paying third-party claims that denies designated Responsible Parties under OPA, such as ACL in this case, of property without due process of law.

Doc 10 at 1-2.

When it answered the United States' complaint, ACL also filed a third-party complaint against ES&H and USES. Doc. 11. It is this action that the United States asks the Court to dismiss. ACL states therein that ES&H and USES provided oil spill clean up services [Doc. 11 ¶¶ 17 & 24], that it partially paid them for their work [Doc. 11 ¶¶ 18 & 25], and that it withheld the remaining payments because the OSROs did not provide certain documentation it had requested, namely employee I-9 forms and Hazardous Waste Operations and Emergency Response ("HAZWOPER") certificates.[3] Doc. 11 ¶¶ 19 & 26. Given that ACL withheld payment, ES&H and USES filed claims against the Oil Spill Liability Trust Fund ("Fund"). Doc. 11 ¶¶ 20-21 & 28-29. The Fund paid almost all of the claimed amounts. The United States sues ACL to recover these costs, amongst others associated with the July 23, 2008 oil spill. Doc. 1.

## Analysis

I.  STANDARD OF REVIEW

If it does not "contain sufficient factual matter, accepted as true, to 'state a claim to

---

[3] Form I-9 (Employment Eligibility Verification) is used by the Department of Homeland Security's U.S. Citizenship and Immigration Services "to document that each new employee (both citizen and non-citizen) hired after November 6, 1986, is authorized to work in the United States." *See* http://www.uscis.gov/files/form/ i-9.pdf (accessed Mar. 7, 2012).

"HAZWOPER" certification applies to many types of hazardous waste operations and emergency responses conducted in the United States. *See* 29 C.F.R. § 1910.120 ("Hazardous Waste Operations and Emergency Response."). The regulation sets forth training and safety requirements that employers, their sub-contractors or public sector responders must meet.

relief that is plausible on its face[,]'" then ACL's third-party complaint against ES&H and USES is subject to dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conversely, an action is frivolous if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Breen v. Tex. A&M Univ.*, 485 F.3d 325, 336 n. 11 (5th Cir. 2007) ("Rule 12(b)(6) requires dismissal whenever a plaintiff's claim is based on an invalid legal theory[.]"); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) ("An action lacks an arguable basis in law if it is based on an "undisputably meritless legal theory . . . ."). The issue presented is whether OPA preempts the claims asserted by ACL in its third-party complaint. Doc. 11. If so, dismissal is warranted.

II. OPA ESTABLISHES A COMPREHENSIVE OIL SPILL RESPONSE AND LIABILITY FRAMEWORK

A. Background

Congress crafted OPA to ensure that, in the event of an oil spill, "those who produce, handle, and transport oil" are held strictly liable. *See* H.R. Rep. No. 101-242 part 2 at 36 (1989). The statute was passed in response to a series of oil spills, most

notably from the tanker EXXON VALDEZ.[4]  Its passage followed a recognition on the part of Congress that existing federal and state laws provided inadequate cleanup and damages remedies, required large taxpayer subsidies for costly cleanup activities, and presented substantial barriers to victim recoveries such as legal defenses, corporate forms, and burdens of proof unfairly favoring those responsible for the spills.  *See Rice v. Harken Exploration Co.*, 250 F.3d 264, 266 (5th Cir. 2001) ("OPA was . . . intended to streamline federal law so as to provide quick and efficient cleanup of oil spills, compensate victims of such spills, and internalize the costs of spills within the petroleum industry."), citing S. Rep. No. 104-94, *reprinted in* 1990 U.S.C.C.A.N. 722, 723.  As a result, cleanups were frequently inadequate and taxpayers were often left to bear the cost. Congress sought to ensure that oil spill victims would be compensated more quickly and efficiently, that damage to natural resources would be minimized, and that the oil industry—rather than the public—would bear the cost of so doing.  *Water Quality Ins. Syndicate v. United States*, 632 F. Supp. 2d 108, 114 (D. Mass. 2009) ("WQIS"), citing *Apex Oil Co. v. United States*, 208 F. Supp. 2d 642, 651-52 (E.D. La. 2002).

To achieve these aims, OPA relies on the Fund.  26 U.S.C. § 9509 ("There is established in the Treasury of the United States a trust fund to be known as the 'Oil Spill Liability Trust Fund' . . . .").  Fund administration is delegated to the U.S. Coast Guard by Exec. Order No. 12777 § 7 ("The functions vested in the President by Section

---

[4]  On March 24, 1989, the M/V EXXON VALDEZ spilled over 11 million gallons of Alaskan crude oil into the waters of Prince William Sound.

Page 7 of  17

1012(a)(1), (3), and (4) of OPA respecting payment of removal costs and claims demanding consistency with the National Contingency Plan (NCP) are delegated to the Secretary of the Department in which the Coast Guard is operating.").[5]  OPA also created the NPFC, which was commissioned on February 20, 1991.  One element of NPFC's mission is to recover oil spill clean up costs from responsible parties, as authorized by OPA.

> B. OPA Imposes Strict, Joint, and Several Liability on Responsible Parties

Where vessels are concerned, "responsible parties" include owners, operators, or demise charterers.  33 U.S.C. § 2701(32); *Buffalo Marine Serv., Inc. v. United States*, 663 F.3d 750, 752 (5th Cir. 2011); *Puerto Rico v. M/V Emily S. (In re Metlife Capital Corp.)*, 132 F.3d 818, 821 (1st Cir. 1997); *United States v. M/V COSCO BUSAN*, 557 F. Supp. 2d 1058, 1061 (N.D. Cal. 2008).  Liability is imposed when:  (i) a vessel (ii) "owned" or "operated" by a "responsible party" (iii) discharged oil (or posed the substantial threat of a discharge of oil) into or upon the navigable waters or adjoining shorelines or the exclusive economic zone, which extends from the shore 200 miles seaward.[6]  33 U.S.C. §

---

[5] As the U.S. Environmental Protection Agency explains, "The National Oil and Hazardous Substances Pollution Contingency Plan, more commonly called the National Contingency Plan or NCP, is the federal government's blueprint for responding to both oil spills and hazardous substance releases. . . .  The latest revisions to the NCP were finalized in 1994 to reflect the oil spill provisions of the Oil Pollution Act of 1990." http://www.epa.gov/osweroe1/content/lawsregs/ncpover.htm (accessed Mar. 9, 2012).

[6] The term "navigable waters" means "the waters of the United States, including the territorial sea[.]") 33 U.S.C. §§ 2701(21) & (24).  *See also Rice*, 250 F.3d at 266 ("The legislative history of the OPA and the textually identical definitions of

2702(a).

OPA liability for removal costs and related damages is strict, joint, and several.[7] 33 U.S.C. §§ 2702 & 2703; *Murtaugh v. New York*, 810 F. Supp. 2d 446 n. 7 (N.D.N.Y. 2011) (OPA relies on the CWA and has adopted "Section 311's standard for liability of dischargers for cleanup costs for the discharge of oil, including economic damages, removal costs and natural resource damages[, which is] strict, joint and several") (omitting citation); *In re Settoon Towing, LLC*, 722 F. Supp. 2d 710, 714 (E.D. La. 2010) ("OPA imposes strict liability upon responsible parties. . . . When there is more than one responsible party under OPA, their liability is joint and several.") (omitting citations).

A responsible party can escape strict liability only if it can establish that one of three narrow defenses applies, namely that the spill resulted from an: (1) act of God, (2) act of war, or (3) act or omission of a third-party, subject to certain qualifications. 33 U.S.C. § 2703(a). For example, there is no defense if the third-party is one "'whose act or omission occurs in connection with any contractual relationship with the

---

"navigable waters" in the OPA and the CWA strongly indicate that Congress generally intended the term "navigable waters" to have the same meaning in both the OPA and the CWA.") "Navigable waters," under the Clean Water Act regulations, means: "All waters that are used in interstate or foreign commerce, all interstate waters including wetlands, and all intrastate waters, such as lakes, rivers, streams, wetlands, etc." *Rice v. Harken Exploration Co.* 89 F. Supp. 2d 820, 823-27 (N.D. Tex. 1999).

[7] OPA adopted the FWPCA's standard of liability, which has been "determined repeatedly to be strict, joint, and several liability." S. Rep. No. 101-94 at 11 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 722, 732-33; *see also* H.R. Rep. No. 101-653, at 102 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 779, 779-80.

responsible party.'" *Buffalo Marine*, 663 F.3d at 752, citing 33 U.S.C. § 2703(a)(3). Another precondition is that the "responsible party exercised due care with respect to the spilled oil and that it took precautions against the foreseeable acts or omissions of the third party to whim it is attempting to shift liability." *Id.*

        C.      OPA Authorizes the Fund to Pay Uncompensated Removal Costs Incurred by Individuals, Businesses, and Local Governments

Where the responsible party is unknown, refuses to pay, is entitled to limit its liability or establishes a complete defense under § 2703 (i.e., act of God, act of war, or act or omission of a third-party), OPA allows the United States to compensate individuals, businesses, and even governmental entities for removal costs as well as for specifically enumerated types of damages from the Fund. 33 U.S.C. §§ 2712 & 2713. The Fund is financed by several sources of revenue, including taxes on the petroleum industry, interest earned on Fund principal from U.S. Treasury investments, and cost recoveries, fines and civil penalties collected from responsible parties. 26 U.S.C. § 9509(b); *United States v. Conoco, Inc.*, 916 F. Supp. 581, 584 (E.D. La. 1996).

OPA establishes general requirements for claim submission. 33 U.S.C. § 2713 (claims are first to be submitted to the responsible party and, if not paid within 90 days, may then be submitted to the Fund). More detailed procedures affecting claim adjudication for "uncompensated removal costs and uncompensated damages resulting from the discharge . . . " are set forth in regulations promulgated by the NPFC. 33 U.S.C. §§ 2712 & 2713; 33 C.F.R. part 136 (establishing claim procedures); *Gatlin Oil Co. v.*

*United States*, 169 F.3d 207, 211 (4th Cir. 1999). To be eligible for reimbursement, the underlying removal actions must be: (1) directed by the FOSC or consistent with the NCP; (2) taken in response to the spill; and (3) intended to prevent, minimize, or mitigate the effects of the spill.[8] 33 U.S.C. § 2712(a)(4); 33 C.F.R. § 136.203. In addition, removal costs must be uncompensated otherwise and reasonable as determined by the NPFC. 33 C.F.R. § 136.205.

When the Fund pays a claim, it is then subrogated to the claimant's rights: "any person, including the Fund, who pays compensation pursuant to this act to any claimant for removal costs or damages shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law." 33 U.S.C. § 2715(a). NPFC regulations further provide that "acceptance of any compensation also constitutes an agreement by the claimant to assign to the Fund any rights, claims, and causes of action the claimant has against any person for the costs and that damages are the subject of the compensated claims . . . ." 33 C.F.R. § 136.115.

III. OPA PREEMPTS THE FEDERAL COMMON LAW AND THE GENERAL MARITIME LAW

It is well recognized that when Congress comprehensively legislates in a particular

---

[8] The Federal On-Scene Coordinator ("FOSC") represents the Coast Guard or the EPA, oversees the oil spill response effort, and ensures that efforts accord with the National Contingency Plan. http://www.uscg.mil/npfc/glossary.asp (accessed Mar. 10, 2012).

area of the law, it preempts the federal common or general maritime law that would otherwise apply. *See, e.g., Middlesex County Sewerage Authority v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 11 (1981) (Clean Water Act preempts the federal common law of nuisance); *Conner v. Aerovox, Inc.*, 730 F.2d 835, 840-41 (1st Cir. 1984) (Clean Water Act preempts general maritime law tort claims).

Accordingly, courts have regularly found OPA to preempt common and general maritime law claims. *See, e.g., Nat'l Shipping Co. of Saudi Arabia v. Moran Trade Corp.*, 1997 U.S. App. LEXIS 23648; 1998 AMC 163 (4th Cir. Sep. 9, 1997) (OPA precludes a vessel owner/responsible party from using state law to collect damages); *South Port Marine, LLC, v. Gulf Oil Ltd. P'ship.*, 56 F. Supp. 2d 104, 106 (D. Me. 1999) ("the Oil Pollution Act preempts any federal common-law (i.e., general maritime law) claims"). Indeed, in *Gabarick v. Laurin Maritime (Am.) Inc.,* 623 F. Supp. 2d 741 (E.D. La. 2009), this Court reached the same conclusion:

> In light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA discussed earlier, it appears that Claimants should pursue claims covered under OPA only against the responsible party and in accordance with the procedures established by OPA. Then, the responsible party can take action to recover from third parties.[9]

*Gabarick*, 623 F. Supp. 2d at 750.[10]

---

[9] Such recovery from third parties presumably refers to a contribution action. 33 U.S.C. § 2709 ("A person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law.").

[10] The language above derives from a decision settling a motion brought by ACL, wherein ACL "argue[d] that the mandatory language of OPA requires that damages

OPA's legislative history likewise supports the view that it supplants other law. As one Senate Report put it: "OPA 'creates a single federal law providing clean up authority, penalties, and liability for oil pollution.'" S. Rep. No. 101-94 at 722 & 730. Consistent with this view, the Eastern District of Louisiana opined that "OPA 'represents Congress' attempt to provide a comprehensive framework in the area of marine oil pollution.'" *Tanguis v. M/V WESTCHESTER*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001), citing *Rice*, 89 F. Supp. 2d at 822.

IV. PROSECUTION OF ACL'S THIRD-PARTY COMPLAINT WOULD FRUSTRATE OPA'S REMEDIAL FRAMEWORK

 A. Undoing the Statutory Scheme

As discussed, Congress intended that OPA would provide for quick and efficient cleanup of oil spills. *Rice*, 250 F.3d at 266 (omitting citation). To this end, OPA requires that responsible parties prepare oil spill response plans in advance. These plans affirm that the responsible party has one or more OSRO, which are ready and willing to go should a spill occur.[11] OSROs participate in return for expedient payment.[12] This is

---

recoverable under OPA, specifically those enumerated in 33 U.S.C. § 2702(b)(2)(A)-(F), are subject to and must be pursued according to OPA. *Gabarick*, 623 F. Supp. 2d at 743. The government's preemption arguments are taken largely from ACL's memorandum in support of that motion. *Gabarick*, U.S.D.C., E.D. La., Case No. 08-4007, Doc. 576-1 at 4-7. Those arguments apply here with equal force.

 [11] OPA § 4202 amended CWA § 311(j) to require that responsible parties prepare and submit oil spill response plans that, *inter alia*, demonstrate that the party has the ability to clean up a worst case discharge using private personnel and equipment, i.e., OSROs. *See* 33 U.S.C. § 1321(j)(5)(i) ("The President shall issue regulations which require an owner or operator of a tank vessel [and nontank vessels per § 1321(j)(5)(ii)] or

why—if it is not paid by a responsible party within 90 days—an OSRO can seek compensation (subject to statutory qualifications) from the Fund. 33 U.S.C. §§ 2712 & 2713; 33 C.F.R. part 136. Then the government—not the OSRO—can seek recovery from the responsible party. 33 U.S.C. § 2715(a). Joinder of ES&H and USES would undermine the statute's design: allowing responsible parties to drag OSROs into litigation over whether the NPFC appropriately paid their claims would lead to exactly the kind of uncertainty, delay, and litigation costs that Congress sought to eliminate.

  B.  Disregarding the Act of Subrogation

At § 2715(a), OPA explicitly provides for statutory subrogation.[13] In trying to call ES&H and USES to account for subrogated claims—which the United States now brings in their stead—ACL effectively ignores the act of subrogation and contravenes OPA's express provisions. Because the United States, as a subrogee, now "owns" claims that once belonged to ES&H and USES, ACL's attention is properly directed only toward the

---

facility described in subparagraph (C) to prepare and submit to the President a plan for responding, to the maximum extent practicable, to a worst case discharge, and to a substantial threat of such a discharge, of oil or a hazardous substance.").

[12] ACL may challenge its designation by the Coast Guard as a responsible party; however, it is nonetheless obligated to "pay removal costs and damages to any claimant" until it prevails in such a challenge. 33 U.S.C. § 2702(d)(1)(B).

[13] "'Statutory subrogation,' as its name suggests, arises by an act of the legislature that vests a right of subrogation with a party or category of parties, and it is governed by the terms of the statute under which it is claimed as a matter of statutory construction." Kenneth W. Biedzynski, 3 *Am. Jur. 2d Subrogation* § 3 (2012). *See, e.g., Tax Ease Funding, L.P. v. Thompson (In re Kizzee-Jordan)*, 626 F.3d 239, 245 (5th Cir. 2010) ("When a statute provides a subrogation right, its nature is governed by the terms of the statute creating the right.") (omitting citation).

government as the present holder of the claims.

>    C.   ACL's Claims Against the OSROs Are Actually Affirmative Defenses Against the United States as Subrogee

ACL's argument that it did not have to fully pay ES&H or USES because they were missing certain I-9 forms and HAZWOPER certificates—if it has merit—is no more than an affirmative defense, which does not require joinder of the OSROs. In other words, the question is whether the United States paid OSROs for cleanup activities, for which they had no right to compensation. The answer determines whether the United States—in its capacity as a subrogee to the OSROs—has the right to recover that portion of its damages from ACL. The claims made by ACL against ES&H and USES in its third-party complaint [Doc. 11] should be asserted against the United States, have been asserted against it, and do not legitimize making defendants of the OSROs. *See* Answer, Counter-Claim & Cross-Claim [Doc 10] at 1-2 (listing affirmative defenses).

Conclusion

Insofar as is pertinent here, OPA governs the relevant rights and responsibilities of the United States, ACL, ES&H, and USES. OPA does not allow ACL to transfer its responsible party liability to OSROs ES&H and USES. Given this, the United States respectfully submits that its motion should be granted dismissing ACL's third-party complaint [Doc. 11] under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."

DATED:       March 13, 2012

                                          Respectfully submitted,

                                          STUART F. DELERY
                                          Acting Assistant Attorney General

                                          JAMES LETTEN
                                          United States Attorney

                                          */s/ Michael A. DiLauro*
                                          MICHAEL A. DiLAURO
                                          SARAH S. KEAST
                                          Trial Attorneys
                                          Aviation & Admiralty Litigation
                                          Torts Branch, Civil Division
                                          U.S. Department of Justice
                                          (overnight courier)
                                          1425 New York Ave., N.W., Ste. 10146
                                          Washington, D.C. 20005
                                          (mailing)
                                          P.O. Box 14271
                                          Washington, D.C. 20044-4271
                                          Telephone: (202) 616-4047
                                          Facsimile:   (202) 616-4159
                                          michael.dilauro@usdoj.gov

CERTIFICATE OF SERVICE

I certify that on March 13, 2012, the foregoing was filed using the Court's CM/ECF filing system, which will send electronic notification of this filing to counsel of record.

/s/ Michael A. DiLauro
MICHAEL A. DiLAURO
SARAH S. KEAST
Trial Attorneys
Aviation & Admiralty Litigation
Torts Branch, Civil Division
U.S. Department of Justice
(overnight courier)
1425 New York Ave., N.W., Ste. 10146
Washington, D.C. 20005
(mailing)
P.O. Box 14271
Washington, D.C. 20044-4271
Telephone: (202) 616-4047
Facsimile:  (202) 616-4159
michael.dilauro@usdoj.gov