# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | * | **MDL NO. 2179** |
| "Deepwater Horizon" in the | * | |
| Gulf of Mexico, on April 20, 2010 | * | **SECTION J** |
| | * | |
| **This document relates to:** | * | |
| | * | **Honorable CARL J. BARBIER** |
| | * | |
| *All Cases* | * | **Magistrate Judge SHUSHAN** |

---

## BP DEFENDANTS' OPPOSITION TO TRANSOCEAN'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AS TO CLAIMS BASED ON SUBSURFACE DISCHARGE OF OIL

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Andrew B. Bloomer, P.C.
R. Chris Heck
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000
Telefax:  (312) 862-2200

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone:  (504) 581-7979
Telefax:  (504) 556-4108

Jeffrey Bossert Clark
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 879-5000
Telefax:  (202) 879-5200

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 662-5985
Telefax:  (202) 662-6291

*ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC., BP AMERICA PRODUCTION COMPANY, AND BP P.L.C.*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

I.   The Most Natural Reading of OPA and Application of Maritime Common
     Law .......................................................................................................................... 2

     A.   The Oil Pollution Act .................................................................................... 2

     B.   Maritime Law ................................................................................................. 6

STANDARD OF REVIEW ................................................................................................. 7

SUMMARY OF ARGUMENT ........................................................................................... 8

ARGUMENT ....................................................................................................................... 9

I.   OPA Does Not Immunize MODU Owners and/or Operators for
     Subsurface Discharges Against Maritime Negligence Liability .............................. 9

II.  Nothing in OPA Cuts Off OPA BP's Contribution Rights to Obtain
     Damage Sharing from Transocean for Subsurface Discharges. ............................... 12

III. OPA Does Not Establish a Complete Defense for MODU Owners and/or
     Operators as to Subsurface Discharges of Oil. ....................................................... 15

     A.   Transocean's Argument Contravenes OPA's Text. ....................................... 15

     B.   Transocean's Argument Runs Contrary to OPA's Structure. ........................ 16

     C.   Transocean's Interpretation Disregards the Statute in Other Ways. .............. 19

     D.   Transocean's Policy Argument Makes No Sense. .......................................... 21

     E.   Transocean's Legislative History Argument Is Premised on an
          Unenacted Version of a Bill Preceding OPA. ............................................... 22

CONCLUSION ..................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Amphibious Partners, LLC v. Redman*,
    534 F.3d 1357 (10th Cir. 2008) ................................................................ 13

*Ates v. B&D Contracting, Inc.*,
    487 Fed. App'x 201 (5th Cir. 2001) ........................................................... 7

*Buffalo Marine Servs. Inc. v. United States*,
    663 F.3d 750 (5th Cir. 2011) ..................................................................... 2

*Burlington N. and Santa Fe Ry. Co. v. United States*,
    556 U.S. 599 (2009) .................................................................................. 14

*Cent. Bank of Denver, N.A., v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) .................................................................................. 21

*Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC*,
    615 F.3d 599 (5th Cir. 2010) ..................................................................... 7

*Coserv Ltd. Liab. Corp. v. Southwestern Tel. Co.*,
    350 F.3d 482 (5th Cir. 2003) ..................................................................... 4

*CSX Transp., Inc. v. Easterwood*,
    507 U.S. 658 (1993) .................................................................................. 12

*Doe v. KPMG, LLP*,
    398 F.3d 686 (5th Cir. 2005) ................................................................... 16

*Eastern Enters. v. Chater*,
    110 F.3d 150 (1st Cir. 1997), *rev'd sub nom. on irrelevant grounds by*
    *Eastern Enters. v. Apfel*, 524 U.S. 498 (1998) ...................................... 12

*Environmental Conserv. Org. v. City of Dallas*,
    529 F.3d 519 (5th Cir. 2008) ................................................................... 15

*Exxon Shipping Co. v. Baker*,
    554 U.S. 471 (2008) ............................................................................. 8, 10

*Ferrer v. Chevron Corp.*,
    484 F.3d 776 (5th Cir. 2007) ................................................................ 7, 8

*Gonzales v. Oregon*,
    546 U.S. 243 (2006) .................................................................................. 18

ii

*Greenhill Petroleum v. Mike Hicks Tools & Serv's Inc.*,
    1994 WL 24239 (E.D. La. Jan. 19, 1994) ........................................................ 20

*In re Cameron Int'l Corp.*,
    No. 11-30987 (5th Cir. 2011) ....................................................................... 9

*In re Oil Spill by Oil Rig Deepwater Horizon*,
    --- F.R.D. ---, 2013 WL 144042 (E.D. La. Jan. 11, 2013) ............................... 20

*In re Omega Protein, Inc.*,
    548 F.3d 361 (5th Cir. 2008) ........................................................................ 7

*INS v. Chadha*,
    462 U.S. 919 (1983) .................................................................................... 24

*Jones v. Francis Drilling Fluids, Ltd.*,
    613 F. Supp. 2d 858 (S.D. Tex. 2009) ........................................................... 20

*Lloyd's Leasing Ltd. v. Conoco*,
    868 F.2d 1447 (5th Cir. 1989) ....................................................................... 7

*Lyondell Chem. Co. v. Occidental Chem. Corp.*,
    608 F.3d 284 (5th Cir. 2010) ...................................................................... 14

*Mayaguezanos por la Salud y el Ambiente v. United States*,
    198 F.3d 297 (1st Cir. 1999) ......................................................................... 2

*Mead Corp. v. Tilley*,
    490 U.S. 714 (1989) .................................................................................... 24

*Milner v. Department of the Navy*,
    131 S. Ct. 1259 (2011) ................................................................................ 24

*Montauk Oil Trans. Corp. v. Tug "El Zorro Grande,"*
    54 F.3d 111 (2d Cir. 1995) ..................................................................... 13, 14

*National Shipping Co. of Saudi Arabia (NSCSA) v. Moran Mid-Atlantic Corp.*,
    924 F. Supp. 1436 (E.D. Va. 1996),
    *aff'd* 122 F.3d 1062 (4th Cir. 1997) ......................................................... 13, 14

*Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC*,
    352 Fed. App'x 945 (5th Cir. 2009) ............................................................... 7

*Perforaciones Exploracion y Produccion v. Maritimas Mexicanas, S.A. de C.V.*,
    356 Fed. App'x 675 (5th Cir. 2009) ............................................................... 2

*Ratzlaf v. United States*,
    510 U.S. 135 (1994) .................................................................................... 24

*Sackett v. EPA*,
 132 S. Ct. 1367 (2012) ............................................................................ 6

*Texas v. United States*,
 497 F.3d 491 (5th Cir. 2007) ................................................................ 21

*United States v. American Commercial Lines, LLC*,
 No. 2:11-cv-2076, 2013 WL 1182963 (E.D. La. Mar. 21, 2013) ...................... 9

*United States v. Atlantic Research Corp.*,
 551 U.S. 128 (2007) ............................................................................... 7

*United States v. Kilroy & Assocs., Inc.*,
 No. C08-1019-JCC, 2009 WL 3633891 (W.D. Wash. Oct. 30, 2009) ............... 3

*United States v. Nordic Vill. Inc.*,
 503 U.S. 30 (1992) ............................................................................... 19

*United States v. Reliable Transfer Co.*,
 421 U.S. 397 (1975) .............................................................................. 7

*Whitman v. American Trucking Ass'ns*,
 531 U.S. 457 (2000) ............................................................................. 19

**Statutes**

16 U.S.C. § § 1453(1) ............................................................................ 20

33 U.S.C. § 1342 .................................................................................... 5

33 U.S.C. § 2701(18) .............................................................................. 2

33 U.S.C. § 2701(22) ......................................................................... 2, 20

33 U.S.C. § 2701(26)(A)(ii) ..................................................................... 2

33 U.S.C. § 2701(30) ............................................................................ 20

33 U.S.C. § 2701(32)(A) .................................................................... 2, 17

33 U.S.C. § 2701(32)(C) .......................................................................... 2

33 U.S.C. § 2701(37) .............................................................................. 2

33 U.S.C. § 2702 ................................................................................... 25

33 U.S.C. § 2702(a) .......................................................................... 2, 19

33 U.S.C. § 2703(a) ................................................................................ 3

33 U.S.C. § 2703(a)(3)................................................................................................... 4

33 U.S.C. § 2704 ............................................................................................... 4, 16, 25

33 U.S.C. § 2704(a)(1) ................................................................................................ 4

33 U.S.C. § 2704(a)(1)(C)(ii)(I) ............................................................................... 17

33 U.S.C. § 2704(a)(3) ......................................................................................... 4, 17

33 U.S.C. § 2704(b) ..................................................................................... 4, 16, 18

33 U.S.C. § 2704(b)(1) ......................................................................................... 4, 17

33 U.S.C. § 2704(b)(2) ......................................................................................... 4, 17

33 U.S.C. § 2704(c)(1)(A) ........................................................................................ 5

33 U.S.C. § 2704(c)(1)(B) ........................................................................................ 5

33 U.S.C. § 2704(d)(2) ........................................................................................... 14

33 U.S.C. § 2704(d)(4) ............................................................................................. 4

33 U.S.C. § 2707(b) ............................................................................................... 20

33 U.S.C. § 2709.......................................................................................... 6, 12, 14

33 U.S.C. § 270s(a)................................................................................................. 2

33 U.S.C. § 2710 .................................................................................................. 21

42 U.S.C. § 1311 .................................................................................................... 6

**Other Authorities**

18 AM. JUR. 2D, *Contribution*, § 22 (2007)......................................................... 16

1990 U.S.C.C.A.N. 722 ..................................................................................... 26, 27

1990 U.S.C.C.A.N. 730 ........................................................................................ 29

1990 U.S.C.C.A.N. 734 ........................................................................................ 27

1990 U.S.C.C.A.N. at 733 .................................................................................... 28

BLACK'S LAW DICTIONARY (8th ed. 2004) ......................................................... 9

H.R. 1465, 101st Cong. (1989) .......................................................................... 30

H.R. Rep. 101-242, 101st Cong. (1989) ........................................................................ 30

S. Rep. 101-94, 101st Cong. (1989) ......................................................................... 26, 27

S. Rep. No. 94, 101st Cong. (1989) ............................................................................ 17

S.B. 686, 101st Cong. (1989) ............................................................................... 27, 28

**Rules**

Fed. R. Civ. P. 12(c) ................................................................................................... 1

# INTRODUCTION

Transocean moves for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to all private as well as state and local government claims concerning its liability for subsurface oil discharges from the *Deepwater Horizon* and its appurtenances.  *See* Rec. Doc. 8106 ("Motion").[1]  The Motion should be denied outright.  ***First***, the Motion seeks to expand into new areas without any legal support.  Transocean argues that because this Court had previously held that Transocean is not liable to the United States under the Oil Pollution Act ("OPA") for subsurface discharges, *see* Order and Reasons, Rec. Doc. 5809 at 5-15 (Feb. 22, 2012) ("February Order"), Transocean also cannot be held liable in maritime law to the Plaintiffs or to BP in maritime contribution.  Perhaps even more surprisingly, Transocean argues that it is not liable to BP in express OPA contribution liability on the basis of an unstated exception to OPA contribution liability that conveniently parallels Transocean's subsurface-discharge defense.  These arguments boil down to the highly implausible assertion that statutory silence in OPA somehow ***immunizes*** Transocean from any form of liability for subsurface discharges.

***Second***, in addition to rejecting the newfangled immunity shield Transocean seeks to establish, the Court should go farther and revisit the February Order itself.  The United States agreed with BP that this ruling was flawed — and it would now be on appeal before the Fifth Circuit if the United States and Transocean had not settled in the interim.[2]

---

[1]    BP agrees with Transocean that the Motion does not seek a ruling on its liability for OPA removal costs or for above-the-surface oil discharges, *see* Memorandum in Support of Motion, Rec. Doc. 8106-1 ("Mem.") at 6-7 n.5, and that those will thus remain open issues.

[2]    After Anadarko (and later BP) appealed from the Clean Water Act aspects of the February Order (*see* Fifth Circuit Case No. 12-30883 (pending)), the United States cross-appealed on the subsurface discharge issue. After that cross-appeal was filed, the United States and Transocean settled the federal government's claims and the cross-appeal was dismissed.  *See* Fifth Cir. Doc. # 00512151598 (Feb. 21, 2013).  In the settlement, Transocean admitted its negligence in causing the spill.  *See* DOJ Press Release, *Transocean Agrees to Plead Guilty to Environmental Crime and Enter Civil Settlement to Resolve U.S. Clean Water Act Penalty Claims from Deepwater Horizon Incident: Transocean to Pay Record $1 Billion in Civil Penalties and $400 Million in Criminal Fines* (Jan. 3, 2013), *available at* http://www.justice.gov/opa/pr/2013/January/13-ag-004.html.  Those

## I.   THE MOST NATURAL READING OF OPA AND APPLICATION OF MARITIME COMMON LAW

### A.   The Oil Pollution Act

***The Exclusive Provision Creating OPA Liability — Section 2702.***   OPA establishes strict liability for "each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) of this section that result from such incident."  33 U.S.C. § 2702(a); *see also Buffalo Marine Servs. Inc. v. United States*, 663 F.3d 750, 751 (5th Cir. 2011).

Transocean does not and cannot dispute that it is a "responsible party" for the *Deepwater Horizon* "vessel" or "facility," which it owned.[3]  *See* 33 U.S.C. § 2701(32)(A); 33 U.S.C. § 2701(26)(A)(ii).   Additionally, because the *Deepwater Horizon*'s MODU status makes it an offshore facility, BP, as lessee of the underlying leasehold, is also a responsible party liable under OPA for the vessel's discharges.  *See id.* § 2701(32)(C).

Finally, no party can or does dispute that "oil [wa]s discharged … ***into or upon the navigable waters or adjoining shorelines or the exclusive economic zone***."  *id.* § 2702(a) (emphasis added).[4]   Liability does not depend upon whether oil was discharged into (i.e.,

---

binding admissions equate to negligence and/or negligence per se under maritime law and are sufficient to make Transocean liable in contribution to BP under OPA and maritime law, as explained below.

[3]   The *Deepwater Horizon* meets the definition of ***both*** a "vessel" — "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water, other than a public vessel," 33 U.S.C. § 2701(37) — ***and*** a "facility" because the *Deepwater Horizon* was a MODU.  MODUs are defined as "a vessel (other than a self-elevating lift vessel) capable of use as an offshore facility." 33 U.S.C. § 2701(18).  At the time of the *Deepwater Horizon* Incident, the *Deepwater Horizon* was being used as an offshore facility.  *See* 33 U.S.C. § 2701(22).

[4]   The *Deepwater Horizon* Incident occurred about 48 miles from Louisiana's coast while drilling activities were occurring on the Outer Continental Shelf.  As such, it occurred in the waters of the exclusive economic zone ("EEZ").  *See Perforaciones Exploracion y Produccion v. Maritimas Mexicanas, S.A. de C.V.*, 356 Fed. App'x 675, 677 n.1 (5th Cir. 2009) (per curiam), *citing Mayaguezanos por la Salud y el Ambiente v. United States*, 198 F.3d 297, 304-05 & n.14 (1st Cir. 1999) (EEZ is a 200-mile band of water around the territorial United States).

underneath) or upon (i.e., above) covered waters.  Moreover, the statute makes no differentiation as to how oil makes its way "in or upon" adjoining shorelines.  Instead, the statute simply provides that if oil is "discharged" and reaches shorelines, then ***all*** responsible parties are liable.

*__Complete Defenses.__*   There are only three defenses under the statute — all narrow. Specifically, the proponent of such a defense must show that the relevant "damages or removal costs ***were caused solely by***" one of the following:  (1) "an act of God;" (2) "an act of war;" or (3) "an act or omission of a third party."  33 U.S.C. § 2703(a) (emphasis added).  Only the third category is relevant here.  And Transocean cannot establish that defense for two reasons:

***First***, Transocean admitted that it engaged in negligence leading to the spill.  *See United States v. Transocean Deepwater Inc.*, No. 2:13-cr-00001-JTM-SS, Rec. Doc. 1 at 2-3 (E.D. La. Jan. 3, 2013) ("Transocean … did negligently discharge and cause to be discharged oil in connection with activities under the Outer Continental Shelf Lands Act and which affected natural resources belonging to, and appertaining to, and under the exclusive management authority of the United States, in such quantities as may be and were in fact harmful.").  Pursuant to an agreement with the United States, Transocean pleaded guilty to those violations and judgment was entered against it.  *See United States v. Transocean Deepwater Inc.*, No. 2:13-cr-00001-JTM-SS, Rec. Docs. 3-1 at 1; 31.  Hence, Transocean could never hope to establish that a third party had "solely" caused the spill.  *See United States v. Kilroy & Assocs., Inc.*, No. C08-1019-JCC, 2009 WL 3633891, at *7 (W.D. Wash. Oct. 30, 2009).

***Second***, to invoke this "third party" defense, moreover, Transocean would have to show not just that the third party was "solely" the cause of the spill, but also that the third party was not in contractual privity with a responsible party and that responsible party must have:

(A) exercised due care with respect to the oil concerned, taking into consideration the characteristics of the oil and in light of all relevant facts and circumstances; and

(B) took precautions against foreseeable acts or omissions of any such third party and the foreseeable consequences of those acts or omissions ....

33 U.S.C. § 2703(a)(3). Transocean has not made any attempt, in this Motion or elsewhere, to invoke or attempt to prove that a third party with whom a responsible party lacked a contractual relationship caused the spill, or that due care was exercised in supervision of such a third party.

*Limits on Liability.* Transocean has invoked certain provisions in 33 U.S.C. § 2704. But that Section merely imposes (lift-able) caps on responsible parties' liability. The limits vary with the size of the vessel or the nature of the facility. For example, a double-hulled vessel under 3,000 gross tons has a liability limit of $4 million, whereas a single-hulled (i.e., less safe) vessel under 3,000 gross tons has a liability limit of $6 million but a single-hulled vessel over 3,000 gross tons has a liability limit of $22 million. Offshore facilities (that are not deepwater ports, which the *Deepwater Horizon* is not) have a liability limit of $75 million. *See* 33 U.S.C. § 2704(a)(1), (3) (all amounts stated in 1990 dollars, *see* 33 U.S.C. § 2704(d)(4)).

Because MODUs represent a hybrid category of vessel and offshore facility, Section 2704 contains a special set of provisions enacted to provide a "[d]ivision of liability for mobile offshore drilling units." *Id.* § 2704(b). Section 2704(b) provides that MODUS are "[t]reated first as [a] tank vessel" and then "[t]reated as [a] facility for excess liability." *Id.* § 2704(b)(1)-(2). BP analyzes these provisions below. But structurally, it is important to recognize that Section 2704, as part of the larger statute, establishes only **caps** on liability. *See Coserv Ltd. Liab. Corp. v. Southwestern Bell Tel. Co.*, 350 F.3d 482, 486 (5th Cir. 2003) ("We begin, as we always do in matters of statutory interpretation, with the plain language **and structure of the statute**." (emphasis added)). Section 2704 does not negate the baseline of liability established by

4

Section 2702, nor is it one of the three defenses in Section 2703.  Section 2704 deals only with liability caps.  Nothing more.

Moreover, just as all OPA defenses fail if the requisite circumstances (act of God, etc.) are not sole causes and the third-party defense, specifically, does not apply if the third parties stand in contractual privity with responsible parties, OPA's liability caps can be rendered inoperative (and thus fully lifted) in several ways.  One such way is if a "responsible party, an agent or employee of the responsible party, or a person acting pursuant to a contractual relationship with the responsible party" has proximately caused a spill incident by means of having engaged in "the violation of an applicable Federal safety, construction, or operating regulation."  33 U.S.C. § 2704(c)(1)(B).[5]

Transocean admitted that its conduct was a proximate cause of the spill.  *See United States v. Transocean Deepwater Inc.*, No. 2:13-cr-00001-JTM-SS, Rec. Doc. 3-2 at ¶ 15 (E.D. La. Jan. 3, 2013) ("Transocean … agrees that, if the case were to proceed to trial, the government could establish beyond a reasonable doubt that …. Defendant TRANSOCEAN's negligent conduct, together with the negligent conduct of others, was a proximate cause of the blowout and the discharge of certain quantities of oil and natural gas from the Macondo well into the Gulf of Mexico.").  Transocean in fact violated several federal operating regulations, most obviously Clean Water Act Section 402's (33 U.S.C. § 1342's) national pollutant discharge elimination system's ("NPDES'") prohibition not to operate in violation of general permit No. GMG290000.  Notice of Final NPDES General Permit, 72 Fed. Reg. 31,575 (June 7, 2007) (governing offshore operations in the Gulf of Mexico off the coasts of Louisiana and Texas); *see*

---

[5]  The liability limits in Section 2704 are also lifted if gross negligence or willful misconduct by a responsible party can be demonstrated.  *See* 33 U.S.C. § 2704(c)(1)(A).  This brief is not directed to the issues of gross negligence or willful misconduct and BP reserves all of its rights regarding those disputed issues.

*also Sackett v. EPA*, 132 S. Ct. 1367, 1369 (2012) ("Clean Water Act prohibits, among other things, 'the discharge of any pollutant by any person,'  [42 U.S.C.] § 1311, without a permit ….").  General Permit GMG290000 flatly prohibited the discharge of diesel oil or waste oil or the contamination by oil of discharged drilling fluids.  *See* Ex. 1, at 4.  Given its admissions of record and its violation of the NPDES general permit, Transocean cannot avail itself of any aspect of OPA Section 2704 in its bid to avoid liability for the *Deepwater Horizon* Incident.[6]

  **_Contribution._**  OPA's contribution provision is a model of simplicity.  It provides that "[a] person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law.  The action shall be brought in accordance with section 2717 of this title."  33 U.S.C. § 2709.  BP brought such an action.  *See* BP Parties' Counter-Complaint, Cross-Complaint and Third Party Complaint Against Transocean and Claim in Limitation, Claim V, Rec. Doc. 2074 (Apr. 20, 2011) (hereafter "BP Counter-Complaint"); *see also* Mem. at 1 n.1 (Transocean recognizing that Rec. Doc. 2074 is at issue here).

  BP maintains that OPA Section 2702(a) makes Transocean liable for the *Deepwater Horizon* Incident and that nothing in Section 2703 or 2704 negates that liability. Hence, Transocean is liable to BP in contribution.  And, based on this Court's B1 Order holding that OPA does not displace maritime law liability, *see* Order and Reasons, Rec. Doc. 3830, at 38 ¶ 7 (Aug. 26, 2011), Transocean is also liable under "another law" — maritime law.[7]

  **B.** **Maritime Law**

  General maritime law establishes and allows for negligence tort actions.  This tort is

---

[6] In the February Order, the Court appeared to hold that violations of regulatory provisions equating to bans on oil discharges cannot trigger Section 2704(c).  *See* February Order at 13.  But here, Transocean's negligence created an explosion of diesel fuel/waste oil which led directly to and proximately caused the subsurface spill.

[7] As the Court knows, BP disagrees with the Court's holding in the B1 Order on the issue of OPA displacement of maritime law and thus BP's maritime law argument here simply takes the Court's B1 ruling as given.  BP fully reserves all of its rights concerning the issue of OPA displacement and especially its appeal rights.

defined by the "common elements of a negligence claim," i.e., "(1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty; (3) the plaintiff suffered damages; and (4) the breach proximately caused the damages."  *Ates v. B&D Contracting, Inc.*, 487 Fed. App'x 2001, 203-04 (5th Cir. 201), *citing Lloyd's Leasing Ltd. v. Conoco,* 868 F.2d 1447, 1449 (5th Cir. 1989).  None of these elements is in doubt and indeed Transocean has already stipulated to its own negligence in its criminal settlement with the United States.  No federal maritime law case of which we are aware holds that MODU owners or subsurface discharges of oil, as a class, are exempt from maritime law negligence torts.

Transocean is liable in contribution to BP under OPA Section 2709 both because it is directly liable under OPA Section 2702 and indirectly liable to public and private plaintiffs under maritime law.  *See, e.g., Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 602-03 (5th Cir. 2010) ("'In admiralty cases, federal courts allocate damages based upon the parties' respective degrees of fault.'  *In re Omega Protein, Inc.*, 548 F.3d 361, 370 (5th Cir. 2008) (citing *United States v. Reliable Transfer Co.*, 421 U.S. 397, 411 (1975)) …. 'Contribution is defined as the "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault."'  *United States v. Atlantic Research Corp.*, 551 U.S. 128, 139 (2007) (quoting BLACK'S LAW DICTIONARY 353 (8th ed. 2004)).'").

## STANDARD OF REVIEW

"The pleading standard for a Rule 12(c) motion is the same as for a motion to dismiss under Rule 12(b)(6) ….  Under that standard, the issue is not whether the plaintiff will ultimately prevail, but whether it is entitled to offer evidence to support its claims."  *Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC*, 352 Fed. App'x 945, 950 (5th Cir. 2009) (citing *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)).  "We accept well-pleaded facts as true and

construe the complaint in the light most favorable to the plaintiff, but we do not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'"  *Id.*

## SUMMARY OF ARGUMENT

In its Motion, Transocean seeks to establish that it is not liable for subsurface discharges of oil:  (1) in contribution to BP or other defendants who have paid OPA damages or removal costs, or to those who have paid maritime law-based tort damages; or (2) directly under OPA or maritime law.  Both of these arguments are demonstrably wrong.

***First***, as to the proposition that Transocean is not liable under maritime law for subsurface discharges, nothing in the February Order speaks to maritime law liability.  Indeed, United States did not bring maritime law tort claims against Transocean.  The question of whether Transocean's purported subsurface discharge defense can somehow be extended to maritime negligence claims on the basis of silence in OPA is an entirely new question.  No court has ever accepted such a defense and this Court should not be the first.  Indeed, as shown below, Transocean's argument that it is free of maritime law tort liability for subsurface discharges boils down to precisely the kind of ***selective displacement*** argument that the United States Supreme Court rejected in *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008).  Hence, even if this Court were correct that maritime law was not generally displaced as to oil spill torts by OPA, there would still be no basis on which to grant Transocean's motion to be free of subsurface oil discharge liability under maritime tort law.

***Second***, Transocean's purported defense to contribution defies the text of the statute.  OPA's plain language does nothing more than open Transocean up to a federal statutory contribution action, full stop.  Nothing in OPA provides that contribution actions become unavailable when subsurface discharges from MODUs are involved.  Transocean's defense to maritime law-based contribution liability is even weaker.  Transocean has conceded that the

discharge in question came from the *Deepwater Horizon*'s appurtenances.  *See* Transocean's Response to Petition for Writ of Mandamus, *In re Cameron Int'l Corp.*, No. 11-30987, at 6-7 (5th Cir. 2011).  Since the very purpose of MODUs like the *Deepwater Horizon* is to drill deep beneath the surface of the water into the Outer Continental Shelf, using appurtenances like the drill string and riser, Transocean's novel rule of maritime law non-liability must be rejected.  The upshot of Transocean's argument is that a MODU vessel owner could be 90%, 95%, or even 99.9% responsible for an oil spill incident as a matter of fact and yet it would entirely escape maritime law contribution liability for subsurface discharges.  That is absurd.

*Third*, regarding Transocean's starting point that it is not liable for subsurface discharges under OPA, BP recognizes that the Court has ruled that Transocean is not liable to the United States for such discharges.  BP respectfully submits that this ruling was erroneous.  Nothing in OPA frees MODU owners and operators like Transocean from strict liability for subsurface discharges.  The ruling to the contrary violates the text, structure, and express purposes of OPA.

## **ARGUMENT**

**I.  OPA DOES NOT IMMUNIZE MODU OWNERS AND/OR OPERATORS FOR SUBSURFACE DISCHARGES AGAINST MARITIME NEGLIGENCE LIABILITY.**

The main way in which Transocean seeks to expand on the February Order is to argue that its logic requires this Court to also hold that Transocean is not liable for above-the-surface discharges *under maritime law*.  There is no basis for the selective OPA displacement argument that Transocean mounts.  The Court could properly hold that sweeping OPA displaces *all* maritime-law liability for oil spills by responsible parties (and BP urges the Court to reconsider its B1 Order ruling and do so).  *See also United States v. American Commercial Lines, LLC*, No. 2:11-cv-2076, 2013 WL 1182963 (E.D. La. Mar. 21, 2013) (where, after the B1 Order was

issued, Judge Lemelle accepted **the United States' argument** that OPA displaces maritime law in a spill on the Mississippi River); Exhibit 1 (brief of United States in *American Commercial Lines*).  But the position Transocean asserts — that **some** parts of OPA displace **some aspects** of maritime law — is a non-starter that tries to build a castle on the sands of silence.

Transocean tries to argue that "[t]his Court also ruled that OPA displaces claims for compensatory damages under general maritime law asserted against [OPA] Responsible Parties." *See* Mem. at 2 (citing B1 Order at 22); *see also id.* at 3, 8.  But the B1 Order says no such thing. Instead, the Court was quite clear in a part of the B1 Order Transocean conveniently fails to cite: "[Summary Point] 7.  OPA does not displace general maritime law claims against non-Responsible parties.  As to Responsible Parties, OPA does displace general maritime law claims against Responsible Parties, **but only with regard to procedure** (i.e., OPA's presentment requirement)." *Id.* at 38 (emphasis added).[8]

Indeed, any form of argument from selective displacement is suspect.  For it to work, there would have to be some kind of **express statement** in OPA to preserve some parts of maritime law and override others.  Yet, there is nothing explicit in OPA stating that MODU owners and operators are not liable for subsurface discharges under maritime law.  Hence, because maritime law negligence liability as applied to oil spill damages itself does not differentiate between subsurface and above-the-surface discharges, there is no basis for the Court to free Transocean from maritime damages for subsurface oil discharges.  *See Exxon Shipping*, 554 U.S. at 488-89 (refusing to credit Exxon's argument that, in the Clean Water Act, Congress selectively "intended to eliminate *sub silentio*" maritime law punitive damages but not maritime

---

[8]    The Plaintiffs concur.  *See* Rec. Doc. 10186, at 10-11 & n.21 (May 20, 2013) (agreeing the B1 Order holds that OPA displaces only as to procedure); *id.* at 19 ("Indeed, under General Maritime Law, a tortfeasor such as Transocean is jointly and severally liable for all compensatory damages to the plaintiffs, irrespective of what its percentage degree of fault might be determined to be.").

law compensatory damages).[9]  But Transocean's new fallback argument that OPA at least displaces its maritime law liability for subsurface discharges runs headlong into *Exxon Shipping* and so must be rejected.[10]  Transocean cites no authority for such selective displacement or for the proposition that maritime negligence torts somehow do not apply to MODU owners and/or operators for subsurface oil spills.  Without support, the argument falls.

Lastly, Transocean argues that it cannot be liable for punitive damages for subsurface discharges because punitive damages can only be awarded if compensatory damages are awarded.  *See* Mem. at 9-11.  But that argument falls for the same reasons given above: (1) Transocean is liable under maritime law unless the B1 Order's displacement ruling is revisited; (2) the B1 Order did not hold that OPA displaces maritime law except as to the establishment of OPA presentment; and (3) Transocean's selective displacement argument is unavailing.[11]

---

[9]    The argument that BP and Transocean both mounted when moving to dismiss the B1 Master Complaint that the comprehensive nature of OPA displaces *all forms* of maritime law damages remains correct and is not contrary to *Exxon Shipping*.  *Exxon Shipping* addressed a displacement argument under a different statute (the Clean Water Act) and indeed was based on the state of the law at the time of the *Exxon Valdez* incident, i.e., the statutes in place *before* OPA's passage.

[10]    It is true that the B1 Order upholds a form of selective displacement — OPA displaces to impose presentment but nothing more.  But BP respectfully submits that this is another error in the Court's displacement analysis. There is no basis for holding that presentment somehow has enough force to displace maritime procedure but OPA's carefully defined damages and removal-costs remedies lack the force to displace maritime law remedies. The Court's recognition that "allow[ing] a general maritime claim against the Responsible Party [without satisfying presentment] would serve to frustrate and circumvent the remedial scheme in OPA," B1 Order at 26, is entirely correct but was not taken far enough.  *See* BP's B1 Mem. in Support of Mot. to Dismiss, Rec. Doc. 1440-1, at 13-17 (Feb. 28, 2011) (incorporated herein by reference).  Maritime law has two tiers — (1) compensatory damages or (2) punitive damages.  OPA also has two tiers of damages —  (1) capped compensatory damages or (2) uncapped compensatory damages.  But OPA's regime is nevertheless significantly different than maritime law's regime and would be eviscerated if it did not displace maritime law as to responsible parties.  Under the B1 Order, the Court has, in effect, crafted a three-tiered damages regime that is neither what is provided in maritime law nor what was commanded by Congress in OPA:  (1) capped compensatory damages or, if certain fault-based showings can be made or regulatory violations proven, (2) uncapped compensatory damages, available together with (3) punitive damages.

[11]    Transocean's suggestion that compensatory damages are unavailable against it because of BP's settlement with the economic class, *see* Mot. at 5, is also unavailing.  At the very least, this ignores that there are plaintiffs excluded from that settlement as well as opt-out plaintiffs.

## II.   NOTHING IN OPA CUTS OFF OPA BP'S CONTRIBUTION RIGHTS TO OBTAIN DAMAGE SHARING FROM TRANSOCEAN FOR SUBSURFACE DISCHARGES.

Transocean argues not only that Congress hid the elephant of a complete defense for subsurface discharges (regardless of Transocean's percentage of negligence fault) inside the liability cap instructions of Section 2704(b)(1)'s mousehole, but also that the terse terms of OPA Section 2709's equity-based contribution provision erect an unstated MODU-based immunity for subsurface discharges.  Transocean is wrong.

Section 2709 of OPA is straightforward:   "A person may bring a civil action for contribution against ***any other person*** who is liable or potentially liable under this Act or another law."  33 U.S.C. § 2709 (emphasis added).  *See CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) ("[T]he task of statutory construction must in the first instance focus on the plain wording of [a] clause, which necessarily contains the best evidence of Congress' … intent").  Transocean argues that allowing contribution as to categories of damages for which it claims its is not liable under Section 2704(b)(1) would "undo" OPA.  Mem. at 11.  Not so.

Contribution actions are a "safety valve" that allow courts, when fair and equitable, to impose a fair share of OPA damages or removal costs on "any other person," which includes but is not limited to other responsible parties.  *See Eastern Enters. v. Chater*, 110 F.3d 150, 154 (1st Cir. 1997) (referring to a contribution action granted against "other persons in a separate civil action" as a "safety valve"), *rev'd sub nom. on irrelevant grounds by Eastern Enters. v. Apfel*, 524 U.S. 498 (1998).  This opens up to BP and other responsible parties a mechanism ensuring that every defendant will bear its fair share of *Deepwater Horizon* liability — no more and no less.[12]   If Congress had meant to immunize non-responsible parties from OPA

---

[12]   The Court's indemnity ruling does not moot its need to address BP's arguments against Transocean's contribution defense.  (And, in any event, if mootness applied, it would cut equally against Transocean's attempt to resolve contribution questions against BP in this Motion.)  The Court recognized that (1) BP has no

contribution actions, it would have said so.  It said nothing of the kind.

Establishing a statutory regime in which responsible parties are directly subject to suit by injured plaintiffs but then must bear the burden of seeking contribution from other parties makes perfect sense.  It does not thwart OPA if contribution actions effectively spread liability to those other than the narrow category of statutorily defined "responsible parties."  *See Montauk Oil Trans. Corp. v. Tug "El Zorro Grande,"* 54 F.3d 111 (2d Cir. 1995) (barge owner statutorily liable under the Clean Water Act for penalties was able to recover under "established equitable principles of admiralty and tort" from a tug owner that caused the collision leading to the spill even though the tug owner was not directly liable for such penalties itself); *see also National Shipping Co. of Saudi Arabia (NSCSA) v. Moran Mid-Atlantic Corp.*, 924 F. Supp. 1436 (E.D. Va. 1996) (OPA case invoked by Transocean holding under OPA that contribution could be pursued as to a defendant not denominated an OPA "responsible party"), *aff'd* 122 F.3d 1062 (4th Cir. 1997) (unpublished).  Just as BP and Transocean can lawfully pursue a non-responsible party under OPA, such as Halliburton, in contribution, so BP can pursue Transocean in contribution despite Transocean's defense (even if accepted) that Section 2704(b)(1) makes it a non-responsible party for subsurface discharges.

Contribution actions are "inherently equitable in nature."  *See Amphibious Partners, LLC v. Redman*, 534 F.3d 1357, 1362 (10th Cir. 2008) (quoting 18 AM. JUR. 2D, *Contribution*, § 22 (2007)).  Shifts of monetary obligations via contribution actions are admittedly not automatic; they are subject to appropriately exercised judicial discretion.  But that discretion cannot be shut

---

obligation to indemnify Transocean for punitive damages (if Transocean is found liable in that respect); and (2) BP may not have any obligation to indemnify Transocean, if Transocean is found to have committed a material breach of the indemnity contract or of its warranty duties.  *See* Indemnity Order Rec. Doc. 5446 at 23-25, 29 (Jan. 26, 2012).  Both of those aspects of the indemnity ruling mean that the contribution issue between BP and Transocean is fully live.

off or prejudged.  Instead, the Court must be allowed to weigh and balance all factors and decide how liability should be effectively apportioned.  *See Burlington N. and Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 618 n.9 (2009) (noting in the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") context: "contribution actions allow jointly and severally liable PRPs ["potentially responsible parties"] to recover from each other on the basis of equitable considerations"); *see also Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 291 & n.16 (5th Cir. 2010) (same).   OPA was modeled in broad outline on CERCLA.  *See* S. Rep. No. 94, 101st Cong., 1st Sess. 2 (1989).[13]

Lastly, Transocean argues that this Court should follow the non-precedential *Moran* decision from the Eastern District of Virginia.   *Moran* cannot save Transocean's novel contribution defense, as that case held only that a $500,000 OPA liability limit applied in favor of a non-responsible party under OPA (a tug boat owner) but involved none of the conditions that could lift the applicable cap under Section 2704(c).  *See Moran*, 924 F. Supp. at 1453.  Here, Transocean violated the applicable Clean Water Act general permit under which it operated, triggering Section 2704(c).  So even if Transocean were held to be a non-responsible party with respect to subsurface discharges, it could still not claim the benefit of OPA Section 2704(b)(1).

Transocean next asserts that because the third-party defense in OPA Section 2703(a)(3), when it can be established, subjects the third party to liability up to OPA Section 2704(a)'s limits (*see* 33 U.S.C. § 2704(d)(2)), Transocean's subsurface discharge defense in Section 2704(b)(1) should be carried over as a defense to Section 2709 contribution actions.  This confusing argument proves exactly the opposite:  In light of the *expressio unius* principle, if Congress had

---

[13]   *Compare also* 33 U.S.C. § 2709 (specifically providing for contribution from "any person") *with Montauk*, 54 F.3d at 114 ("Had Congress intended to eliminate this traditional rule of equitable indemnity in cases involving federal penalties for oil spillage, it easily could have done so.  Instead, it strengthened the traditional rule by specifically providing for indemnity.").

wanted to create a defense to contribution actions concerning subsurface discharges that somehow paralleled OPA Section 2704(d)(2), it would have so specified. *See Environmental Conserv. Org. v. City of Dallas*, 529 F.3d 519, 526 (5th Cir. 2008) ("[w]hen a statute limits a thing to be done in a particular mode, it includes a negative of any other mode") (citation omitted). Instead, Section 2709 admits of no exception — a principle that actually undergirds the *Moran* case and permitted the court there to allow an oil tanker company to recover under Section 2709 from a tug owner (a non-responsible party).[14]

## III.   OPA DOES NOT ESTABLISH A COMPLETE DEFENSE FOR MODU OWNERS AND/OR OPERATORS AS TO SUBSURFACE DISCHARGES OF OIL.

### A.   Transocean's Argument Contravenes OPA's Text.

Nothing in OPA purports to establish a complete defense to the statute's strict liability for MODU owners and operators for subsea discharges. To the contrary, Section 2702(a) provides that responsible parties of all types are liable for oil discharges that occur "into or upon the navigable waters or adjoining shorelines or the exclusive economic zone." The breadth of Section 2702(a) liability could not be more clear, as it controls "[n]otwithstanding any other provision or rule of law." Liability is fixed without regard to whether oil occurs "into or upon" waters and if it occurs on or reaches "adjoining shorelines." By contrast, OPA's complete defenses are contained within Section 2703. But the MODU/subsurface discharge complete defense Transocean fashions is entirely absent from Section 2703. This nonexistent defense is neither an act of God, an act of war, nor a third-party defense.

Most importantly, nothing in the Act states that subsurface discharges from MODUs do

---

[14]   Transocean cites the Benedict treatise for the proposition that the third-party OPA liability caps should apply equally both to direct OPA plaintiffs and to OPA contribution actions. *See* Mem. at 15. This fairness point an irrelevant policy argument that cannot trump plain text. Notably, the Plaintiffs also agree with BP that Transocean's contribution defense is gossamer thin. *See* Rec. Doc. 10186 at 19; *see also id.* at 20 n.33 (noting that BP's OPA and Gulf Coast Claims Facility payments can easily be quantified).

not create liability for vessel owners or operators but do create liability for the lessees of Shelf leasing blocks like BP.  Transocean's subsurface discharge defense boils down to a single provision of Section 2704, which ***does not address defenses to liability*** at all.  Instead, the provision is part of a set of complex instructions given for the narrow purpose of applying OPA's ***limitations on*** liability (i.e., the statutory caps).  33 U.S.C. § 2704.  Transocean's argument thus finds no support in the text of the statute.  Of course, logically, liability cannot be allocated between two or more responsible parties where it does not exist at the start.

### B.     Transocean's Argument Runs Contrary to OPA's Structure.

Beyond explaining how Section 2704(b) fits into the overall context of OPA's liability-creating provision in Section 2702 and its narrowly defined set of defenses, it is worth quoting Section 2704(b) at length because Transocean is given to ignoring OPA's structure.  This is impermissible.  *See Doe v. KPMG, LLP*, 398 F.3d 686, 688 (5th Cir. 2005) ("When interpreting a statute, we start with the plain text, and read all parts of the statute together to produce a harmonious whole.").  The portion of the statute Transocean myopically focuses on follows:

**Division of liability for mobile offshore drilling units**

**(1) Treated first as tank vessel**
For purposes of determining the responsible party and applying this Act and except as provided in paragraph (2), a mobile offshore drilling unit which is being used as an offshore facility is deemed to be a tank vessel with respect to the discharge, or the substantial threat of a discharge, of oil on or above the surface of the water.

**(2) Treated as facility for excess liability**
To the extent that removal costs and damages from any incident described in paragraph (1) exceed the amount for which a responsible party is liable (as that amount may be limited under subsection (a)(1) of this section), the mobile offshore drilling unit is deemed to be an offshore facility.  For purposes of applying subsection (a)(3) of this section, the amount specified in that subsection shall be reduced by the amount for which the responsible party is liable under paragraph (1).

33 U.S.C. § 2704(b).

The entirety of Transocean's argument is based on Section 2704(b)(1), which Transocean says means that a mobile offshore drilling unit vessel owner and/or operator (i.e., a responsible party for that MODU, *see* 33 U.S.C. § 2701(32)(A)) is "not liable." Mem. at 6. Problems with this argument abound. They begin with the verb actually used in Section 2704(b)(1). It is not the verb "to be liable." Instead, the operative verb is "deemed to be." In context, what Section 2704(b)(1) does is equate MODUs to "tank vessels" for the limited purposes to which Section 2704 is directed (i.e., liability **limitation**, not elimination). Thus, based on its plain text, Section 2704(b)(1) stops far short of a complete defense, establishing nothing helpful for Transocean because oil spills from tank vessels are the quintessential targets of OPA liability. It a commonplace in MDL 2179 for the parties to note that OPA was passed to provide additional and comprehensive civil damages remedies in the wake of the spill from the *Exxon Valdez* **oil tanker**. So why **would** Congress want to specify that MODUs are "deemed to be" tank vessels? The answer is obvious from context and from the title of the provision, which is "[d]ivision of liability for mobile offshore drilling units." *See also* 33 U.S.C. § 2704(b)(2) (establishing that "excess liability" is established based on the liability limit applicable to "offshore facilities").

Under Section 2704, read as a whole, it is clear that oil tankers (even if single-hulled) are protected by lower liability caps than offshore facilities. *Compare*, *e.g.,* 33 U.S.C. § 2704(a)(1)(C)(ii)(I) (establishing a $6 million liability limit for single-hulled tankers) *with* 33 U.S.C. § 2704(a)(3) (establishing a $75 million liability limit for a non-deepwater port offshore facility). The purpose of Section 2704(b)(1) is nothing more and nothing less than to provide the rule for establishing what liability limit applies to MODUs. Why is this necessary? Because MODUs are a hybrid between a vessel and an offshore facility when they are engaged in drilling. *See* 33 U.S.C. § 2704(b)(1) (referring to a "mobile offshore

drilling unit **which is being used as** an offshore facility") (emphasis added).[15]  Without Section 2701(b)(1), MODUs would be treated under Section 2704(a)(2) as "other vessel[s]."  Thus, befitting their hybrid nature, Section 2704(b)(1) creates a rule that provides that MODUs are "[t]reated first as tank vessel[s]" and then are treated as "offshore facilities" for purposes of "excess liability."  33 U.S.C. § 2704(b).

The two main problems with Transocean's subsurface or waterline defense are that: (1) the plain text of Section 2702(a) makes Transocean liable and nothing in Section 2704(b)(1) states that MODU owners and operators are not liable; and (2) Transocean's interpretation ignores the structure of the statute and the nature of Section 2704(b)(1) as a cap provision and not a defense provision.  Congress knew how to fashion complete defenses when it wanted to.  It housed all such defenses in Section 2703.  Structurally, putting a defense in Section 2704 that is more sweeping than any of the narrow defenses in Section 2703 is nonsensical.  Each of the "complete defenses" in Section 2703, for instance, evaporates if the relevant act of God, act of war, or third-party acts are not the **sole cause** of the spill.  Nevertheless, Transocean argues that even if it is 100% responsible for subsurface discharges, it is entirely immune from liability.  Not surprisingly, there is no textual or structural evidence for such a claim.  *See Gonzales v. Oregon*, 546 U.S. 243, 267 (2006) ("'Congress, we have held, does not alter the fundamental details of a

---

[15]   The Court recognized in the February Order that MODUs are hybrids of vessels and offshore facilities when engaged in drilling activities.  *See* February Order at 6.  But the Court then went on to hold that MODUs are either vessels or facilities but not both:  "When the MODU is **not** being used as an offshore facility—such as when it is moving from one drilling location to another—the MODU is treated as a vessel and the responsible party is the owner/operator of the MODU (the responsible party for a vessel).  When the MODU is being used as an offshore facility—i.e., when the MODU is 'exploring for, drilling for, producing [etc] … oil' 'in, on, or under navigable waters'—then the responsible party is the lessee (the responsible party for an offshore facility)."  *Id.* at 6-7.  With all respect, this is incorrect.  Section 2701(18) defining MODUs provides that MODUs **are at all times vessels** and do not cease to be so when they are drilling (*see also id.* at 14 n.20 (Court itself reinforcing that at all times the *Deepwater Horizon* remained a vessel)); however, when MODUs are drilling they **also** become offshore facilities.  Nor does the definition of "responsible parties" make such parties mutually exclusive depending on whether vessels or offshore facilities are involved.  The statute provides simply that both vessel owners, operators, and offshore facility leaseholders are responsible parties.

regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.'") (quoting *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468 (2000)).  A Section 2704(b)(1) MODU is the ultimate mousehole.

### C.   Transocean's Interpretation Disregards the Statute in Other Ways.

Transocean's interpretation creates other problems.  ***First***, Transocean presupposes that OPA liability is created only by actual discharges to water.  But that is not what OPA says: Liability is also triggered by conduct "which poses the substantial threat of a discharge of oil" into navigable waters, adjoining shorelines, or the exclusive economic zone. 33 U.S.C. § 2702(a).  Transocean's "proffered interpretation subverts the precise language adopted by Congress, thereby transgressing the cardinal rule of statutory construction that 'every word has some operative effect.'"  *Texaco Inc. v. Duhe*, 274 F.3d 911, 920 (5th Cir. 2001) (citing *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 36 (1992)).  At the very least, the "substantial threat" phrase in OPA makes Transocean liable not just for actual discharges but also for substantially threatened discharges.[16]  Indeed, under Transocean's tortured reading of the statute, however, its negligence can cause an oil spill "incident" evolving from an above-the-surface discharge into a subsurface discharge (as occurred here) and yet Transocean, the MODU owner and operator, would be shielded from liability.

***Second***, Transocean's theory imagines that all oil spills are exclusively to water, such

---

[16]   BP pleaded *in extenso* nine detailed sets of failures by Transocean creating a substantial threat of discharge: "(1) Transocean failed to identify and react to warning signs that the well was flowing; (2) Transocean failed to properly monitor the well to detect whether it was flowing; (3) Transocean's belated well control actions dispersed gas onto the rig, causing the explosions; (4) the *Deepwater Horizon*'s ESD, rig savers, and overspeed controls failed; (5) the rig's power generators failed to operate after the explosion, rendering the vessel and its crew helpless; (6) Transocean's divided command structure, combined with the failures of its captain, compounded the effects of the casualty; (7) Transocean and its Captain erred in delaying to activate the blowout preventer and EDS; (8) Transocean's EDS and blowout preventer malfunctioned, failing to shut in the well; and (9) Transocean's uncoordinated fire-fighting attempts allowed the rig to burn for over 36 hours and then sink into the Gulf of Mexico."  BP Counter-Complaint at ¶¶ 31-54 (capitalization omitted).

that a specific quantum of oil can be identified as being released either to water or above water. But that theory fails to comport with OPA since OPA is not exclusively a water-related statute. OPA instead also prohibits discharges "into or upon adjoining shorelines." 33 U.S.C. § 2702(a). Such "shorelines" should be understood in practical terms as synonymous with beaches — hybrid or mixed areas of land and water. *See*, *e.g.*, *In re Oil Spill by Oil Rig Deepwater Horizon*, --- F.R.D. ---, 2013 WL 144042, at *15 (E.D. La. Jan. 11, 2013).[17] Indeed, MODUs can be used in inshore waters. *See Jones v. Francis Drilling Fluids, Ltd.*, 613 F. Supp. 2d 858, 868 (S.D. Tex. 2009) ("[T]he record shows that [offshore] could reasonably mean either off the coast — as in the Gulf of Mexico — or simply off the shore, which would include an inland waterway such as Bayou Carlin, in which RIG 46 was located."); *Greenhill Petroleum v. Mike Hicks Tools & Serv's Inc.*, 1994 WL 24239, at *2 (E.D. La. Jan. 19, 1994) (case involving a MODU in the form of a barge drilling in inshore waters); *see also* 33 U.S.C. § 2701(22) (defining an "offshore facility" as "facility of any kind located in, on, or under any of the navigable waters of the United States" — such waters obviously include inshore waters).

Accordingly, OPA creates liability for responsible parties that discharge either to waters or to beach areas. Transocean's complete defense for subsurface discharges runs headlong into Section 2702(a)'s establishment of liability for discharges to beaches. Presumably, Transocean will argue that if a MODU happens to cause discharges directly to beaches, MODU owners and operators should be free of such liability as well. But Congress's instruction that discharges to

---

[17]   *See also* 16 U.S.C. § § 1453(1) (Coastal Zone Management Act) ("The term 'coastal zone' means the coastal waters (including the lands therein and thereunder) and the adjacent shorelands (including the waters therein and thereunder), strongly influenced by each other and in proximity to the shorelines of the several coastal states, and includes islands, transitional and intertidal areas, salt marshes, wetlands, and beaches."); 33 U.S.C. § 2701(30) (defining "remove" or "removal" to mean "containment and removal of oil or a hazardous substance from water and shorelines or the taking of other actions as may be necessary to minimize or mitigate damage to the public health or welfare, including, but not limited to … shorelines, and beaches"); 33 U.S.C. § 2707(b) (like Section 2701(30) juxtaposing the separate terms "shoreline" and "waters").

shoreline areas create OPA liability must be given effect.  The only reading of the statute that does so holds that owners, operators, and lessees of mineral lease areas are *all* liable for oil discharges to waters or shorelines under Section 2702(a)'s plain terms, and that MODU owners and operators can claim only a special, favorable cap on liability for above-the-surface discharges in Section 2704(b)(1).  But that if that liability limit is pierced by any of the contingencies in Section 2704(c), then MODU owners and operators, like any responsible party, are liable to the full extent of baseline liability in Section 2702(a).  Here, Transocean's limit of liability in Section 2704(b)(1) was pierced on account of Section 2704(c)(1)(B) because Transocean violated its NPDES permit under the Clean Water Act by causing a full-blown oil spill.  Hence, it is liable for all OPA damages and removal costs under OPA Section 2702(a).

### D.     Transocean's Policy Argument Makes No Sense.

Instead of seriously grappling with OPA's text and structure, Transocean resorts to policy arguments, contending that it should not be held liable for subsurface discharges because BP stood to earn profits from Macondo reservoir oil whereas Transocean's economic upside was more limited.  *See* Mem. at 16-17; *see also* February Order at 7-11 (Court adopting a version of the same argument).  But "[p]olicy considerations cannot override our interpretation of the text and structure of the Act."  *Cent. Bank of Denver, N.A., v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 188 (1994), *cited in Texas v. United States*, 497 F.3d 491, 506 (5th Cir. 2007).

Moreover, Transocean was not only free to negotiate for a protective indemnity under OPA (*see* 33 U.S.C. § 2710), it actually *did* negotiate for such a subsurface-discharge indemnity.  *See* Rec. Doc. 5446 at 6-7 (Jan. 26, 2012) (hereafter "Indemnity Order").  Transocean tries to use the indemnity contract to support its reading of OPA, *see* Mem. at 17, but the contract does exactly the opposite.  If Section 2704(b)(1) had granted Transocean a complete defense to OPA liability for subsurface discharges, then neither Transocean specifically nor the drilling rig

industry generally would need to negotiate for indemnities that effectively duplicate Transocean's (incorrect) reading of Section 2704(b)(1).  Transocean's only response is that its indemnity contract is a "backstop."  *See* Mem. at 17 n.13.  But that is not an answer to why a backstop is necessary to begin with or why, even if it were, the indemnity contract fails to reference OPA Section 2704(b)(1).  The truth is that Congress established that ***all OPA responsible parties*** would be liable, but also allowed such parties to enter into indemnity contracts to reallocate that baseline.  Transocean's attempt to evade that truth should be rejected.

### E. Transocean's Legislative History Argument Is Premised on an Unenacted Version of a Bill Preceding OPA.

Finally, Transocean has argued that Senate Report 101-94 from the Committee on Environment and Public Works ("EPW"), *see* 1990 U.S.C.C.A.N. 722, establishes that its interpretation of Section 2704(b)(1) is correct.  That Senate Report states that "[i]f a discharge of oil from a mobile offshore drilling unit occurs below the surface of the water, the lessee or permittee is liable."  1990 U.S.C.C.A.N. 734 (Exhibit 2).[18]  This legislative history does not support Transocean's argument.

Most importantly, if Congress had adopted the provision being construed in this Senate EPW Report, then Transocean's position might be colorable.  Unfortunately for Transocean, ***Congress did not adopt the form of bill*** being construed in Senate Report 101-94.  Yet, without explanation, Transocean has relied on the report as if it were construing a bill provision in a form substantially similar to what actually became law.

On its face, Senate Report 101-94 construes S. B. 686, *see* 1990 U.S.C.C.A.N. 722 (said "[t]o accompany S. 686").  Senate Bill 686 from the 101st Congress is annexed as Exhibit 3. Senate Bill 686 included the following definition of "owner or operator" in Section 101(19):

---

[18]   *See* Transocean's Cross Motion, Rec. Doc. 5103, at 4-5 (Jan. 9, 2012) (hereafter "Transocean's Cross Motion").

the term 'owner or operator' means—

\*\*\*

      (B) with respect to a mobile offshore drilling unit being used as an Outer Continental Shelf facility, ***from which oil is discharged <u>on or above</u> the surface of the water*** (or which posed a substantial threat of such a discharge), ***<u>the owner or operator of the unit</u>***, and such unit shall be deemed to be a tanker;

      (C) with respect to a mobile offshore drilling unit being used as an Outer Continental Shelf facility—

      (i) ***from which oil is discharged <u>on or above</u> the surface of the water*** (or which posed a substantial threat of such a discharge), to the extent removal costs or damages exceed the limitation specified in section 102(c)(1)(A), ***or***

      (ii) ***from which oil is discharged <u>below</u> the surface of the water*** (or which posed a substantial threat of such a discharge),

***<u>the lessee or permittee of the area in which the unit is located</u>***, or the holder of a right of use and easement granted under the Outer Continental Shelf Lands Act for the area in which the unit is located ….

S. B. 686, 101st Cong. § 101(19) (1989) (Exhibit 3) (emphasis added). *See also* 1990 U.S.C.C.A.N. at 733 ("The bill accomplishes [its aims] by defining 'owner or operator' for OCS facilities to mean the lessee or permittee of the area in which the facility is located (or the holder of the OCS rights).").

But Senate Bill 686's Section 101(19) definition of "owner or operator" was never adopted. If it had been, OPA would have specified that the "owner or operator of the [MODU]" would have been liable only for spills on or above the surface of the water. *See id.* Section 101(19)(B). At the same time, the "owner or operator" for discharges above or below the surface of the water would have been defined as "the lessee or permittee of the area in which the unit is located." *Id.* Section 101(19)(C)(ii). But such mutually exclusive sorting of who is liable for above vs. below the waterline spills was never adopted by Congress. Needless to say, an unenacted statute is not the law — legislative actions are valid only if they are the product of

bicameralism and presentment. *INS v. Chadha*, 462 U.S. 919, 944 (1983). The legislative history Transocean replies upon is thus irrelevant because it does to pertain to a valid statute.

The upshot is that Transocean's legislative history argument to vary the text of OPA Sections 2701 to 2702 and to override the structure of Sections 2701 to 2704 fails as a matter of law because it offers no explanation as to why Congress turned from the Senate version of the bill considered by the EPW Committee instead to the form the OPA statute actually took. *See Mead Corp. v. Tilley*, 490 U.S. 714, 723 (1989) ("mute intermediate legislative maneuvers are not reliable" aids to statutory interpretation); *Ratzlaf v. United States*, 510 U.S. 135, 148 n.18 (1994) ("The dissent … features a House Report issued in 1991 in connection with an unenacted version of the Annunzio–Wylie Anti–Money Laundering Act. We do not find that Report, commenting on a bill that did not pass, a secure indicator of congressional intent at any time …."). Section 2702 (read using Section 2701 definitions) clearly defines Transocean as a "responsible party" for the incident. This Court thus must "not take the opposite tack of allowing ambiguous legislative history to muddy clear statutory language." *Milner v. Department of the Navy*, 131 S. Ct. 1259, 1266 (2011).

The only argument Transocean can muster is that "[t]his Court previously found the same Senate Report persuasive in its Order on the B-1 motion to dismiss. Dkt. 3838 at 21." Transocean Cross-Motion at 4. But this Court only cited Senate Report 101-94 for the proposition (unchanged in the conference process) that OPA "builds upon section 311 of the Clean Water Act to create a single Federal law providing cleanup authority, penalties, and liability for oil pollution." S. Rep. 101-94, at [1990 U.S.C.C.A.N. 730] (1989). The B1 Order did not express agreement with every jot and title of Senate Report 101-94. Finally, note that the Senate's unenacted intention to make MODU owners liable only for above-the-surface spills was

24

not hidden in the mousehole of the cap provisions of OPA but instead was conspicuously set forth in the foundational definition of an "owner or operator."  When the bicameral process of legislating was complete, however, the provision Transocean and others had hoped for was not adopted, nor was it entirely rejected.  Instead, it was adopted only in the very limited form of providing a liability cap; but make no mistake, it was adopted as a liability cap like any other in OPA Section 2704 and thus could be set aside when the terms of Section 2704(c) so demanded.

In the February Order, the Court recognized that the Senate bill went unenacted but noted that the version of what was to become OPA Section 2701(32) was adopted by the House, and that House Report 101-242 contained language which "implie[d]" that lessees will be the only responsible parties for subsurface discharges.  February Order at 9 n.10.  The problem, however, is that the version of the bill being commented on in House Report 101-242 was a *non-adopted version* of what was to become 33 U.S.C. § 2702 — the main liability provision.  *See* Exhibit 4-5 (H.R. 1465, 101st Cong. (1989) and H.R. Rep. 101-242, 101st Cong. (1989)).  Looking to the unenacted version of Section 2702, it is clear why the House Committee commented as it did — *embryonic Section 102(a)(5)* in that bill contained a mutually exclusive division of liability between MODU owners and/or operators vs. lessees.   In OPA, *as enacted*, the relevant language was adapted and *moved into* 33 U.S.C. § 2704 — a fact that cannot be brushed aside and which leads to the structural conclusion that Section 2704(b)(1) applies only to determine the applicable caps, not to negate the creation of baseline liability in Section 2702(a).  Just as with Transocean's use of language from a Senate Report concerning an unenacted bill, so the Court's use of language from a House Report concerning an unenacted bill is, respectfully, in error.

## CONCLUSION

Transocean's motion for judgment on the pleadings that Transocean is not liable for subsurface damages or contribution claims should be denied.

May 20, 2013                               Respectfully submitted,

Richard C. Godfrey, P.C.                   __ /s/ Don K. Haycraft _____
J. Andrew Langan, P.C.                     Don K. Haycraft (Bar #14361)
Andrew B. Bloomer, P.C.                    R. Keith Jarrett (Bar #16984)
R. Chris Heck                              LISKOW & LEWIS
KIRKLAND & ELLIS LLP                       701 Poydras Street, Suite 5000
300 North LaSalle Street                   New Orleans, Louisiana 70139
Chicago, IL 60654                          Telephone:  (504) 581-7979
Telephone:  (312) 862-2000                 Telefax:  (504) 556-4108
Telefax:  (312) 862-2200

Jeffrey Bossert Clark                      Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP                       COVINGTON & BURLING LLP
655 Fifteenth Street, N.W.                 1201 Pennsylvania Avenue, NW
Washington, D.C. 20005                     Washington, DC 20004
Telephone:  (202) 879-5000                 Telephone:  (202) 662-5985
Telefax:  (202) 879-5200                   Telefax:  (202) 662-6291

**ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC., BP AMERICA
PRODUCTION COMPANY, AND BP P.L.C.**

**<u>CERTIFICATE OF SERVICE</u>**

  I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of May 2013.

        /s/ Don K. Haycraft   
        Don. K. Haycraft