# Exhibit 3

Calendar No. 181

101st CONGRESS
1st Session

# S. 686

[Report No. 101–94]

To consolidate and improve Federal laws providing compensation and establishing liability for oilspills.

---

## IN THE SENATE OF THE UNITED STATES

April 4, (legislative day, January 3), 1989

Mr. Mitchell (for himself, Mr. Baucus, Mr. Lautenberg, Mr. Biden, Mr. Kennedy, Mr. Adams, Mr. Levin, Mr. Fowler, Mr. Cranston, and Mr. Cohen) introduced the following bill; which was read twice and referred to the Committee on Environment and Public Works

July 28, 1989

Reported, under authority of the order of the Senate of July 27 (legislative day, January 3), 1989, by Mr. Burdick, with amendments

[Omit the part struck through and insert the part printed in italic]

---

# A BILL

To consolidate and improve Federal laws providing compensation and establishing liability for oilspills.

1    *Be it enacted by the Senate and House of Representa-*

2    *tives of the United States of America in Congress assembled,*

3    ~~That this Act may be cited as the "Oil Pollution Liability and~~

4    ~~Compensation Act of 1989".~~

2

1       *SECTION 1. SHORT TITLE.—This Act may be cited as*

2  *the "Oil Pollution Liability and Compensation Act of*

3  *1989".*

4       *SEC. 2. TABLE OF CONTENTS.—*

*Sec. 1. Short title.*
*Sec. 2. Table of contents.*
*Sec. 3. Findings.*

*TITLE I—OIL POLLUTION LIABILITY AND COMPENSATION*

*Sec. 101. Definitions.*
*Sec. 102. Liability.*
*Sec. 103. Uses of fund.*
*Sec. 104. Financial responsibility.*
*Sec. 105. Litigation, jurisdiction, and venue.*
*Sec. 106. State laws and programs.*

*TITLE II—OIL POLLUTION PREVENTION AND RESPONSE*

*Sec. 201. Federal responsibility.*
*Sec. 202. National contingency plan.*
*Sec. 203. Regional oil·spill response teams.*
*Sec. 204. Oil spill contingency plan development and approval.*
*Sec. 205. Oil spill research and development program.*
*Sec. 206. Penalties.*
*Sec. 207. Study of spill prevention in restricted waters.*

*TITLE III—CONFORMING AMENDMENTS*

*Sec. 301. Trans-Alaska pipeline fund.*
*Sec. 302. Intervention on the High Seas Act.*
*Sec. 303. Clean Water Act.*
*Sec. 304. Deep Water Port Act.*
*Sec. 305. Outer Continental Shelf Lands Act.*

5       *SEC. 3. FINDINGS.—The Congress finds that—*

6       *(1) oil spills in coastal and inland waters that are*

7  *not contained and removed promptly and completely*

8  *can cause serious environmental damage, including*

9  *contamination of water, fouling of shorelines, and*

10  *injury to fish, shellfish, and wildlife;*

11      *(2) oil spills in coastal and inland waters that are*

12  *not contained and removed promptly and completely*

3

1    *can cause significant economic impacts including*

2    *damage to commercial and recreational fisheries, loss*

3    *of recreational opportunities, and declines in tourism*

4    *and related activities;*

5    *(3) oil spills occur on a regular basis in United*

6    *States coastal and inland waters, with over ten thou-*

7    *sand oil spills reported each year between 1973 and*

8    *1985;*

9    *(4) in March of this year, the largest oil spill in*

10   *United States history occurred when the tanker Exxon*

11   *Valdez ran aground in Prince William Sound,*

12   *Alaska, spilling eleven million gallons of crude oil to*

13   *the surrounding waters;*

14   *(5) the Exxon Valdez spill caused widespread and*

15   *significant adverse impacts to the marine environment,*

16   *to fish, birds, marine mammals, and other wildlife, to*

17   *the commercial fishery of Southeast Alaska and to*

18   *Native villages and subsistence users, and the cleanup*

19   *of the spill will cost millions of dollars;*

20   *(6) in the several months since the wreck of the*

21   *Exxon Valdez, three additional major oil spills oc-*

22   *curred within a twenty-four hour period in waters off*

23   *Rhode Island, in the Delaware River, and in the*

24   *Houston Ship Channel;*

4

1     *(7) there is a need to establish an adequate system*

2     *of liability and compensation to assure prompt and*

3     *complete cleanup of spilled oil and to compensate those*

4     *damaged by such pollution;*

5     *(8) it is essential that State oil pollution liability*

6     *and compensation statutes not be preempted in any*

7     *manner by Federal law or international protocols;*

8     *(9) there is a need to provide clear direction to the*

9     *President to ensure prompt and proper response to oil*

10    *spills unless the President specifically determines that*

11    *a private party is providing such a response;*

12    *(10) there is a need to establish minimum Federal*

13    *standards and requirements for Federal approval in*

14    *contingency planning to assure the prompt and effec-*

15    *tive response to oil spills from facilities and vessels;*

16    *(11) there is a need to establish an adequate and*

17    *effective system of response centers storing necessary*

18    *vessels, equipment, and supplies and housing necessary*

19    *personnel to assure the prompt and effective response to*

20    *oil spills from facilities and vessels;*

21    *(12) there is a need to provide for full and sus-*

22    *tained involvement of local citizens and interested*

23    *groups including fishing, business, and environmental*

24    *interests, in the development of oil spill contingency*

5

1     *plans and the oversight of operations at major oil fa-*

2     *cilities and terminals;*

3         *(13) there is a need to establish a clear and suffi-*

4     *cient structure of penalties to effectively deter those*

5     *who would discharge oil to the waters of the United*

6     *States or to punish those who cause such discharges;*

7         *(14) there is a need to establish an adequate pro-*

8     *gram of research to develop technologies and practices*

9     *to clean up oil spills, to understand the environmental*

10     *impacts of such spills, or to develop the necessary base-*

11     *line information on the marine environment to under-*

12     *stand the long-term effects of such spills; and*

13         *(15) it is essential that measures to address the*

14     *problems associated with prevention, response, cleanup,*

15     *and compensation relating to oil spills be enacted into*

16     *law at the earliest possible date.*

17 TITLE I—OIL POLLUTION LIABILITY AND

18             COMPENSATION

19               DEFINITIONS

20 SEC. 101. For the purposes of this Act—

21     (1) the terms "vessel", "public vessel", "owner or

22 operator", "remove" or "removal", "contiguous

23 zone", "onshore facility", "offshore facility", and

24 "barrel" shall have the meaning provided in section

25 311(a) of the Clean Water Act;

6

1  (2) the terms "person", "navigable waters", and

2  "territorial seas" shall have the meaning provided in

3  section 502 of the Clean Water Act;

4  (3) the term "act of God" means an unanticipated

5  grave natural disaster or other natural phenomenon of

6  an exceptional, inevitable, and irresistible character the

7  effects of which could not have been prevented or

8  avoided by the exercise of due care or foresight;

9  (4) the term "claim" means a request, made in

10  writing for a sum certain, for compensation for dam-

11  ages or removal costs resulting from a discharge of oil;

12  (5) the term "claimant" means any person who

13  presents a claim for compensation under this Act;

14  (6) the term "damages" means damages for eco-

15  nomic loss or the loss of or injury to natural resources

16  as specified in section 102(a) of this Act;

17  (7) the term "deepwater port facility" means an

18  offshore facility which is or was licensed under the

19  Deepwater Port Act of 1974;

20  (8) the term "discharge" means any emission

21  *other than natural seepage*, intentional or unintentional,

22  into the environment, and includes, but is not limited

23  to, spilling, leaking, pumping, pouring, emitting, emp-

24  tying, or dumping;

7

1      (9) the term "environment" means the navigable

2   waters, the waters of the contiguous zone, the ocean

3   waters of which the natural resources are under the

4   exclusive management authority of the United States

5   under the Magnuson Fishery Conservation and Man-

6   agement Act, adjoining shorelines, and the ambient air

7   above such waters and shorelines;

8      (10) the term "foreign offshore unit" means a

9   structure or group of structures which is located, in

10   whole or in part, in the territorial sea or on the conti-

11   nental shelf of a foreign country and is or was used for

12   one or more of the following purposes: exploring for,

13   drilling for, producing, storing, handling, transferring,

14   processing, or transporting oil produced from the

15   seabed beneath the foreign country's territorial sea or

16   from the foreign country's continental shelf;

17      (11) the term "Fund" means the Oil Spill Com-

18   pensation Fund, hereby established under this Act;

19      (12) the term "guarantor" means any person,

20   other than the owner or operator, who provides evi-

21   dence of financial responsibility for an owner or opera-

22   tor under this Act or section 311(p) of the Clean

23   Water Act;

24      (13) the term "lessee" means a person holding a

25   leasehold interest in an oil or gas lease on submerged

8

1    lands of the Outer Continental Shelf, granted or main-

2    tained under the Outer Continental Shelf Lands Act;

3        (14) the term "liable" or "liability" under this

4    Act shall be construed to be the standard of liability

5    which obtains under section 311 of the Clean Water

6    Act;

7        (15) the term "mobile offshore drilling unit"

8    means a vessel capable of use as an Outer Continental

9    Shelf facility to drill for oil;

10       (16) the term "natural resources" includes land,

11   fish, wildlife, biota, air, water, ground water, drinking

12   water supplies, and other such resources belonging to,

13   managed by, held in trust by, appertaining to, or other-

14   wise controlled by the United States (including the re-

15   sources of the fishery conservation zone established by

16   the Magnuson Fishery Conservation and Management

17   Act), any State or local government, or any foreign

18   government;

19       (17) the term "oil" means petroleum, including

20   crude oil or any fraction or residue therefrom;

21       (18) the term "Outer Continental Shelf facility"

22   means an offshore facility which is located, in whole or

23   in part, on the Outer Continental Shelf and is or was

24   used for one or more of the following purposes: explor-

25   ing for, drilling for, producing, storing, handling, trans-

9

1    ferring, processing, or transporting oil produced from

2    the Outer Continental Shelf;

3          (19) the term "owner or operator" means—

4                (A) with respect to an Outer Continental

5          Shelf facility other than a pipeline or mobile off-

6          shore drilling unit, the lessee or permittee of the

7          area in which the facility is located, or the holder

8          of a right of use and easement granted under the

9          Outer Continental Shelf Lands Act for the area in

10         which the facility is located (where the holder is a

11         different person than the lessee or permittee);

12               (B) with respect to a mobile offshore drilling

13         unit being used as an Outer Continental Shelf fa-

14         cility, from which oil is discharged on or above

15         the surface of the water (or which posed a sub-

16         stantial threat of such a discharge), the owner or

17         operator of the unit, and such unit shall be

18         deemed to be a tanker;

19               (C) with respect to a mobile offshore drilling

20         unit being used as an Outer Continental Shelf

21         facility—

22                     (i) from which oil is discharged on or

23               above the surface of the water (or which

24               posed a substantial threat of such a dis-

25               charge), to the extent removal costs or dam-

10

1    ages exceed the limitation specified in section

2    102(c)(1)(A), or

3      (ii) from which oil is discharged below

4     the surface of the water (or which posed a

5     substantial threat of such a discharge),

6   the lessee or permittee of the area in which the

7   unit is located, or the holder of a right of use and

8   easement granted under the Outer Continental

9   Shelf Lands Act for the area in which the unit is

10  located (where the holder is a different person

11  than the lessee or permittee);

12  (20) the term "permittee" means a person holding

13 an authorization, license, or permit for geological ex-

14 ploration issued under section 11 of the Outer Conti-

15 nental Shelf Lands Act;

16  (21) the term "removal costs" means the costs of

17 removal taken after a discharge of oil has occurred or

18 where there was a substantial threat of a discharge of

19 oil, to prevent, minimize, or mitigate oil pollution from

20 that incident, including all costs of completing removal

21 as determined under section 106(d). *Such removal costs*

22 *are (1) actual costs incurred by the United States, or*

23 *when under the direction of the responsible Federal of-*

24 *ficial, a State or an Indian tribe, not inconsistent with*

25 *the National Contingency Plan, and (2) any other nec-*

11

1     *essary costs of response incurred by any other person*

2     *consistent with the National Contingency Plan;*

3          (22) the term "tanker" means a vessel construct-

4     ed or adapted for the carriage of oil in bulk or in com-

5     mercial quantities as cargo; and

6          (23) the terms "United States" and "State" mean

7     the several States of the United States, the District of

8     Columbia, the Commonwealth of Puerto Rico, Guam,

9     American Samoa, the United States Virgin Islands, the

10    Commonwealth of the Northern Marianas, and any

11    other territory or possession over which the United

12    States has jurisdiction.

13                        LIABILITY

14    Sec. 102. (a) Notwithstanding any other provision or

15    rule of law, and subject only to the defenses set forth in sub-

16    section (b) of this section, the owner or operator of a vessel or

17    an onshore or offshore facility from which oil is discharged, or

18    which posed the threat of a discharge which causes the incur-

19    rence of removal costs, shall be liable for—

20         (1)(A) all removal costs incurred by the United

21    States Government or a State under subsection (c), (d),

22    (e), (f)(4), or (l) of section 311 of the Clean Water Act

23    or under the Intervention on the High Seas or section

24    18 of the Deepwater Port Act of 1974; and

25         (B) any removal costs incurred by any person, in-

26    cluding, but not limited to, any State; and

12

1          (2) all damages for economic loss or loss of natu-

2    ral resources resulting from such a discharge, includ-

3    ing—

4             (A) any injury to, destruction of, or loss of

5        any real or personal property;

6             (B) any loss of use of real or personal

7        property;

8             (C) any injury to, destruction, ~~of,~~ *mitigation,*

9        or loss of natural resources, including the reasona-

10      ble costs of assessing such injury, destruction, or

11      loss;

12           (D) any loss of use, including loss of subsist-

13      ence use, of any natural resources, without regard

14      to the ownership or management of such re-

15      sources;

16           (E) any loss of income or profits or impair-

17      ment of earning capacity resulting from injury to

18      or destruction of real or personal property or nat-

19      ural resources, without regard to the ownership of

20      such property or resources; and

21           (F) any direct or indirect loss of tax, royalty,

22      rental, or net profits share revenue by the Federal

23      Government or any State or political subdivision

24      thereof, for a period of not to exceed one year.

13

1     (b)(1) There shall be no liability under subsection (a) of

2   this section for a person otherwise liable who can establish by

3   a preponderance of the evidence that the discharge or threat

4   of discharge of oil and the damages resulting therefrom were

5   caused solely by—

6            (A) an act of God;

7            (B) an act of war;

8            (C) an act or omission of a third party other than

9        an employee or agent of the defendant, or than one

10       whose act or omission occurs in connection with a con-

11       tractual relationship, existing directly or indirectly,

12       with the defendant (except where the sole contractual

13       arrangement arises from a published tariff and accept-

14       ance for carriage by a common carrier by rail), if the

15       defendant establishes by a preponderance of the evi-

16       dence that (i) the defendant exercised due care with re-

17       spect to the oil concerned, taking into consideration the

18       characteristics of such oil, in light of all relevant facts

19       and circumstances, and (ii) the defendant took precau-

20       tions against foreseeable acts or omissions of any such

21       third party and the consequences that could foreseeably

22       result from such acts or omissions; or

23            (D) any combination of the foregoing paragraphs.

24     (2) In any case where the owner or operator of a vessel

25   or an onshore or offshore facility can establish by a prepon-

.14

1  derance of the evidence that a discharge and the damages

2  resulting therefrom were caused solely by an act or omission

3  of a third party in accordance with paragraph (1)(C) (or solely

4  by such an act or omission in combination with an act of God

5  or an act of war), such third party shall be liable under this

6  section as if such third party were the owner or operator of a

7  vessel or onshore or offshore facility from which the dis-

8  charge actually occurred. Where the owner or operator of a

9  tanker or an onshore or offshore facility which handles or

10  stores oil in bulk or commercial quantities, from which oil is

11  discharged, alleges that such discharge was caused solely by

12  an act or omission of a third party, such owner or operator

13  shall promptly pay to the United States Government, and

14  any other claimant, the costs of removal or damages claimed

15  and shall be entitled by subrogation to all rights of the United

16  States Government or other claimant to recover such costs of

17  removal or damages from such third party under this sub-

18  section.

19      (c)(1) The liability of an owner or operator of a vessel or

20  an onshore or offshore facility for damages and removal costs

21  under this section for each discharge or incident shall not

22  exceed—

23          (A) $500 per gross ton or $10,000,000, whichev-

24          er is greater, of any tanker carrying oil in bulk or in

15

1    commercial quantities as cargo, including any such

2    barge operating in the navigable waters;

3         .    (B) $300 per gross ton or $500,000, whichever is

4    greater, of any other vessel;

5         (C) ~~the total of all removal costs under subsection~~

6    ~~(a)(1) of this section plus $75,000,000~~ *$100,000,000*

7    for any Outer Continental Shelf facility;

8         (D) $100,000,000 for any deepwater port facility

9    (including the liability of the licensee for a discharge

10   from any vessel moored at such port, in any case

11   where $100,000,000 exceeds $500 per gross ton of

12   such vessel); or

13        (E) $100,000,000 for any other onshore or off-

14   shore facility.

15   The liability of an owner or operator under this section for

16   interest (including prejudgment interest) shall not be subject

17   to the limitations of this paragraph.

18        (2) Notwithstanding the limitations of paragraph (1) of

19   this subsection, the liability of the owner or operator of a

20   vessel or an onshore or offshore facility under subsection (a)

21   of this section shall be the full and total damages and removal

22   costs not offset by any removal costs incurred on behalf of

23   such owner or operator, if (A) the discharge of oil was the

24   result of willful misconduct or gross negligence ~~within the~~

25   ~~privity or knowledge of the owner or operator~~ or of a viola-

16

1 tion ~~(within the privity or knowledge of the owner or opera-~~

2 ~~tor)~~ of applicable safety, construction, or operating standards

3 or regulations; or (B) the owner or operator fails or refuses to

4 report the discharge where required by law or to provide all

5 reasonable cooperation and assistance requested by a respon-

6 sible official in connection with removal activities or to pro-

7 vide removal action upon order of a responsible official. For

8 the purpose of this paragraph, applicable standards or regula-

9 tions with respect to a vessel shall be those adopted or pro-

10 mulgated by a Federal agency.

11      (3) Notwithstanding the limitations of paragraph (1) of

12 this subsection or the defenses of subsection (b) of this sec-

13 tion, all removal costs incurred by the United States Govern-

14 ment or any State or local official or agency in connection

15 with a discharge of oil from any Outer Continental Shelf fa-

16 cility or a vessel carrying oil as cargo from such a facility

17 shall be borne by the owner or operator of such facility or

18 vessel.

19      (4)(A) The President is authorized to establish by regu-

20 lation, with respect to any class or category of onshore or

21 offshore facility subject to paragraph (1) (D) or (E) of this

22 subsection, a maximum limit of liability under this section of

23 less than $100,000,000, but not less than $8,000,000, taking

24 into account the size, storage capacity, oil throughput, prox-

25 imity to sensitive areas, type of oil handled, history of dis-

17

1 charges, and other factors relevant to risks posed by the class

2 or category of facility.

3    (B) The President shall, by regulation, not less often

4 than every three years, adjust the limits of liability specified

5 in paragraph (1) of this subsection to reflect significant in-

6 creases in the Consumer Price Index.

7    (5) If any person who is liable for a discharge or threat

8 of discharge of oil from a vessel or onshore or offshore facility

9 fails without sufficient cause to properly provide removal

10 action upon order of the President pursuant to this Act, such

11 person may be liable to the United States for punitive dam-

12 ages in an amount at least equal to three times the amount of

13 any costs incurred by the Fund as a result of such failure to

14 take proper action. The President is authorized to commence

15 a civil action against any such person to recover the punitive

16 damages. Any moneys received by the United States pursu-

17 ant to this subsection shall be deposited in the Fund.

18    (6)(A) Any person who receives and complies with the

19 terms of any order issued under paragraph (1) may, within 60

20 days after completion of the required action, petition the

21 President for reimbursement from the Fund established under

22 this section for the reasonable costs of such action, plus inter-

23 est. Any interest payable under this subparagraph shall

24 accrue on the amounts expended from the date of expenditure

18

1 at the same rate as specified for interest on investments of
2 the Fund.

3     (B) If the President refuses to grant all or part of a
4 petition made under this paragraph, the petitioner may
5 within 30 days of receipt of such refusal file an action against
6 the President in the appropriate United States district court
7 seeking reimbursement from the Fund established under this
8 section.

9     (C) Except as provided in clause (D), to obtain reim-
10 bursement, the petitioner shall establish by a preponderance
11 of the evidence that it is not liable for ~~response~~ *removal* costs
12 *and damages* under subsection (f) of this section and that
13 costs for which it seeks reimbursement are reasonable in light
14 of the action required by the relevant order.

15     (D) A petitioner who is liable for ~~response~~ *removal* costs
16 *and damages* under ~~subsection~~ ~~(f)~~ of this section may also
17 recover its reasonable costs of response to the extent that it
18 can demonstrate, on the administrative record, that the
19 President's decision in selecting the removal action ordered
20 was arbitrary and capricious or was otherwise not in accord-
21 ance with law. Reimbursement awarded under this subpara-
22 graph shall include all reasonable removal costs incurred by
23 the petitioner pursuant to the portions of the order found to
24 be arbitrary and capricious or otherwise not in accordance
25 with law.

19

1        (E) Reimbursement awarded by a court under clause (C)

2   or (D) may include appropriate costs, fees, and other ex-

3   penses in accordance with subsections (a) and (d) of section

4   2412 of title 28, United States Code.

5        (d)(1) In the case of an injury to, destruction of, or loss

6   of natural resources under subsection (a)(2)(C) of this section,

7   liability shall be (A) to the United States Government for

8   natural resources belonging to, managed by, controlled by, or

9   appertaining to the United States, and (B) to any State for

10   natural resources within the State or belonging to, managed

11   by, controlled by, or appertaining to such State, and (C)

12   where subsection (e) of this section applies, to the govern-

13   ment of a foreign country for natural resources belonging to,

14   managed by, controlled by, or appertaining to such govern-

15   ment. The President, or the authorized representative of any

16   State or of the foreign government, shall act on behalf of the

17   public as trustee of such natural resources to recover for such

18   damages. Sums recovered by the United States Government

19   as trustee under this subsection shall be retained by the

20   trustee, without further appropriation, for use only to restore,

21   replace, or acquire the equivalent of such natural resources.

22   Sums recovered by a State as trustee under this subsection

23   shall be available for use only to restore, replace, or acquire

24   the equivalent of such natural resources by the State. The

25   measure of damages in any action under subsection (a)(2)(C)

20

1  shall not be limited by the sums which can be used to restore

2  or replace such resources. There shall be no double recovery

3  under this Act for natural resource damages, including the

4  costs of damage assessment or restoration, rehabilitation, or

5  acquisition for the same discharge and natural resource.

6      (2)(A) The President shall designate the Federal officials

7  who shall act on behalf of the public as trustees for natural

8  resources under this Act. Such officials shall assess damages

9  for injury to, destruction of, or loss of natural resources for

10  purposes of this Act for those resources under their trustee-

11  ship and may, upon request of and reimbursement from a

12  State and at the Federal officials discretion, assess damages

13  for those natural resources under the State's trusteeship.

14      (B) The Governor of each State shall designate State

15  officials who may act on behalf of the public as trustee for

16  natural resources under this Act and shall notify the Presi-

17  dent of such designations. Such State officials shall assess

18  damages to natural resources for the purposes of this Act for

19  those natural resources under their trusteeship.

20      (C) Any determination or assessment of damages to nat-

21  ural resources for the purposes of this Act made by a Federal

22  or State trustee in accordance with the regulations promul-

23  gated under paragraph (3) of this subsection shall have the

24  force and effect of a rebuttable presumption on behalf of the

21

1   trustee in any administrative or judicial proceeding under this

2   Act.

3       (3)(A) The President, acting through the Administrator

4   of the National Oceanic and Atmospheric Administration, in

5   consultation with the Administrator of the Environmental

6   Protection Agency, the Director of the Fish and Wildlife

7   Service, and the heads of other affected agencies, not later

8   than two years after the enactment of this Act, shall promul-

9   gate regulations for the assessment of damages for injury to,

10  destruction of, or loss of natural resources resulting from a

11  discharge of oil for the purpose of this Act.

12      (B) Such regulations shall specify: (i) standard proce-

13  dures for simplified assessments requiring minimal field ob-

14  servation, including establishing measures of damages based

15  on units of discharge or units of affected areas, where dam-

16  ages equal the costs of restoration, replacement, or acquisi-

17  tion of equivalent resources, plus demonstrated additional lost

18  use value or other damages beyond such costs, *the diminu-*

19  *tions in value of those resources pending restoration;* and (ii)

20  alternative protocols for conducting assessments in individual

21  cases to determine the type and extent of short and long term

22  injury, destruction, mitigation, or loss. Such regulations shall

23  identify the best available procedures to determine such dam-

24  ages, including both direct and indirect injury, destruction, or

25  loss, and shall take into consideration factors including, but

22

1  ~~not limited to, replacement value, use value, and ability of~~

2  ~~the ecosystem or resource to recover.~~ *and the need for indi-*

3  *vidual assessments. Such regulations shall identify the best*

4  *available procedures to determine such damages.*

5      (C) Such regulations shall be reviewed and revised as

6  appropriate every two years.

7      (e)(1) The recovery of removal costs and damages by (A)

8  persons residing in a foreign country, (B) the government of a

9  foreign country, or (C) any agency or political subdivision of

10  a foreign country, under this Act, shall be exclusively in ac-

11  cordance with this subsection.

12      (2) A claimant under this subsection must demonstrate

13  that the claimant has not been otherwise compensated for

14  incurred removal costs or damages. Except with respect to

15  paragraph (3)(D) of this subsection, a claimant under this

16  subsection must demonstrate (A) that recovery is authorized

17  by a treaty or executive agreement between the United

18  States and the claimant's country, or (B) that the Secretary

19  of State, in consultation with the Attorney General and other

20  appropriate officials, has certified that the claimant's country

21  provides a comparable remedy for United States claimants.

22      (3) Where a discharge, or substantial threat of a dis-

23  charge of oil in or on the territorial sea, internal waters, or

24  adjacent shoreline of a foreign country occurs, claims for re-

25  moval costs and damages may be made under this subsection

23

1  if the removal costs or damages resulted from a discharge of,

2  or substantial threat of a discharge, of oil from—

3  　　　　(A) an Outer Continental Shelf facility or a deep-

4  　　　water port facility,

5  　　　　(B) a vessel occurring in the navigable waters of

6  　　　the United States,

7  　　　　(C) a vessel carrying oil as cargo between two

8  　　　ports subject to the jurisdiction of the United States; or

9  　　　　(D) a tanker that received oil at the terminal of

10  　　　the pipeline constructed under the Trans-Alaska Pipe-

11  　　　line Authorization Act for transportation to a port in

12  　　　the United States, the discharge or threat having oc-

13  　　　curred prior to delivery to that port.

14  　　(4) This subsection shall apply only in the case of dis-

15  charges of oil occurring after the enactment of this Act.

16  　　(f)(1) No indemnification, hold harmless, or similar

17  agreement or conveyance shall be effective to transfer from

18  the owner or operator of any vessel or onshore or offshore

19  facility or from any person who may be liable for a discharge

20  or threat of discharge under this section, to any other person

21  the liability imposed under this section. Nothing in this sub-

22  section shall bar any agreement to insure, hold harmless, or

23  indemnify a party to such agreement for any liability under

24  this section.

24

1    (2) Nothing in this Act, including the provisions of para-

2  graph (1) of this subsection, shall bar a cause of action that

3  an owner or operator subject to liability under this section, or

4  a guarantor, has or would have, by reason of subrogation or

5  otherwise against any person.

6    (g) The owner or operator of a vessel shall be liable in

7  accordance with this section and section 311 of the Clean

8  Water Act, under maritime tort law, and as provided in sec-

9  tion 106 of this Act, notwithstanding any provision of the Act

10  of March 3, 1851 (46 U.S.C. 183), or the absence of any

11  physical damage to the proprietary interest of the claimant.

12                         USES OF FUND

13    SEC. 103. (a) The President shall use the money in the

14  Fund for the following purposes:

15        (1) all removal costs or other costs of carrying out

16        the purposes of subsections (c), (d), (i), and (l) of section

17        311 of the Clean Water Act, sections 5 and 7 of the

18        Intervention on the High Seas Act, and section 18 of

19        the Deepwater Port Act, with respect to discharges, or

20        substantial threats of discharges, of oil (as the term

21        "oil" is defined in each respective Act);

22        (2) payment of any claim for removal costs or

23        damages—

24            (A) in excess of the amount for which the

25            owner or operator of the vessel or onshore or off-

25

1 shore facility from which oil is discharged is liable

2 under section 102 of this Act;

3  (B) where the source of the discharge of oil

4 is not known or cannot be identified; or

5  (C) in any case where the claim has not been

6 satisfied in accordance with subsection (c) of this

7 section;

8 (3) payment of any claim for removal costs and

9 damages that have resulted from the discharge, or sub-

10 stantial threat of a discharge, of oil from a foreign off-

11 shore unit;

12 (4)(A) payment of costs incurred by any State in

13 responding to a discharge, or substantial threat of a

14 discharge, of oil into the navigable waters or adjoining

15 shorelines from a vessel, an onshore facility, an off-

16 shore facility, or a foreign offshore unit, as provided in

17 subsection (d) of this section;

18 (B) reimbursement to any State for the payment

19 of any claims for removal costs or damages payable

20 under this Act which such State has paid with funds

21 under the control of such State, including payment pur-

22 suant to a delegation under subsection (c) of this

23 section;

26

1  (5) the costs of assessing both short-term and

2  long-term injury to, destruction of, or loss of any natu-

3  ral resources resulting from a discharge of oil;

4  (6) the costs of Federal or State efforts in the res-

5  toration, rehabilitation, or replacement or acquiring the

6  equivalent of any natural resources injured, destroyed,

7  or lost as a result of any discharge of oil;

8  ~~(7) subject to such amounts as are provided in ap-~~

9  ~~propriation Acts, the costs of providing equipment and~~

10  ~~similar overhead, related to the purposes of this Act~~

11  ~~and section 311 of the Clean Water Act, and of estab-~~

12  ~~lishing and maintaining damage assessment capability,~~

13  ~~for any Federal agency involved in strike forces, emer-~~

14  ~~gency task forces, or other response teams;~~

15  *(7) the costs of establishing and operating the re-*

16  *gional oil spill response teams required under section*

17  *311(s) of the Clean Water Act, of providing other*

18  *equipment, personnel, and similar overhead related to*

19  *the purposes of this Act and section 311 of the Clean*

20  *Water Act, and of establishing and maintaining*

21  *damage assessment capability for any Federal agency*

22  *involved in regional oil spill response teams, strike*

23  *forces, emergency task forces, or other response teams;*

24  *(8) subject to such amounts as are provided in ap-*

25  *propriation Acts, the costs of establishing and main-*

27

1    *taining the oil spill research and development program*

2    *required under section 311(u) of the Clean Water Act;*

3    ~~(8)~~ *(9)* the costs of a program to identify, investi-

4    gate, and take enforcement and abatement action

5    against discharges of oil, including the provisions of

6    section 311(j)(1) (C) and (D) of the Clean Water Act;

7    and

8    ~~(9)~~ *(10)* all administrative and personnel costs of

9    administering the Fund and this Act.

10   (b) The maximum amount which may be paid from the

11   Fund with respect to any single discharge or incident shall

12   not exceed ~~$500,000,000~~ *$1,000,000,000.*

13   (c)(1) The President is authorized to promulgate regula-

14   tions designating one or more Federal officials who may obli-

15   gate money in the Fund in accordance with subsection (a) of

16   this section or portions thereof. The President is also author-

17   ized to delegate authority to obligate money in the Fund or

18   to settle claims to officials of a State with an adequate pro-

19   gram operating under a cooperative agreement with the Fed-

20   eral Government.

21   (2) The President is authorized to delegate the adminis-

22   tration of his duties and authorities under this Act to the

23   heads of those Federal departments, agencies, and instrumen-

24   talities which the President determines appropriate.

28

1 *(3)(A) Notwithstanding section 9509(d) of the Internal*

2 *Revenue Code of 1954, as revised, the Secretary of the*

3 *Treasury shall, at the request of the Secretary, advance such*

4 *sums to the Fund in such amount and at such times as are*

5 *necessary: Provided, That amounts advanced shall not be*

6 *greater than $1,000,000,000 per incident: Provided further,*

7 *That the aggregate amount of repayable advances to the Fund*

8 *which is outstanding at any one time shall not exceed*

9 *$1,000,000,000: And provided further, That such advances*

10 *shall be repaid with interest on or before five years from the*

11 *date the advance is received into the Fund.*

12 *(B) Advances made pursuant to this paragraph shall be*

13 *repaid, and interest on such advances shall be paid, to the*

14 *general fund of the Treasury. Such interest shall be calculat-*

15 *ed at the average of the highest rate for commercial and fi-*

16 *nance company paper of maturities of one hundred and*

17 *eighty days or less obtaining on each of the days included*

18 *within the period for which the interest must be paid to the*

19 *claimant, as published in the Federal Reserve bulletin.*

20 ~~(3)(A)~~ *(4)(A)* The President shall promulgate, and may

21 from time to time amend, regulations for the presentation,

22 filing, processing, settlement, and adjudication of claims for

23 removal costs or damages resulting from the discharge, or

24 substantial threat of a discharge, of oil under this Act.

29

1    (B) Whenever the President receives information from

2  any person alleging that a person has incurred removal costs

3  or damages resulting from the discharge, or substantial threat

4  of a discharge, of oil respecting which the owner or operator

5  of a vessel or onshore or offshore facility is or may be liable

6  under section 102 of this Act, the President shall notify the

7  owner, operator, or guarantor or such vessel or facility of

8  that allegation. Such owner or operator or guarantor may,

9  within five days after receiving the notification or presenta-

10  tion of any claim by a claimant, deny the allegation, or deny

11  liability for removal costs and damages for any of the reasons

12  set forth in subsection (b) of section 102 of this Act.

13    (C) The owner or operator of any vessel or onshore or

14  offshore facility from which oil has been discharged shall pro-

15  vide notice to all potentially injured parties.

16    (D) No claims may be asserted against the Fund pursu-

17  ant to subsection (a) unless such claim is presented in the first

18  instance to the owner or operator or guarantor of the vessel

19  or onshore or offshore facility from which oil has been dis-

20  charged, if known to the claimant, and to any other person

21  known to the claimant who may be liable under section 102.

22  In any case where the claim has not been satisfied within one

23  hundred eighty days of presentation in accordance with this

24  subsection, the claimant may present the claim to the Fund

25  for payment. No claim against the Fund may be approved or

30

1 certified during the pendency of an action by the claimant in

2 court to recover costs which are the subject of the claim.

3     (d) The Governor of each State, or any appropriate

4 State official designated by the Governor, is authorized to

5 obligate the Fund for the payment of removal costs in an

6 amount not to exceed $250,000 per discharge or substantial

7 threat of discharge of oil, for the purpose of immediate re-

8 sponse, subject only to the requirement that the President be

9 notified within twenty-four hours of any such obligation

10 under the authority of this sentence. In addition, the Presi-

11 dent shall enter into an agreement with the Governor of any

12 interested State to provide a procedure by which the Gover-

13 nor or designated State official may undertake additional re-

14 moval action or obligate the Fund for the additional payment

15 of removal costs for response to a particular discharge or

16 substantial threat of discharge, subject to such terms and

17 conditions as may be agreed upon. Payments under subsec-

18 tion (a)(4)(A) of this section, other than as authorized by the

19 first sentence of this subsection, shall be made in accordance

20 with such agreements. The President shall, not later than six

21 months after the enactment of this Act, publish proposed reg-

22 ulations further establishing how the authority of this subsec-

23 tion to obligate the Fund or enter into agreements is to be

24 exercised, and, not later than three months after the close of

31

1  the comment period on such proposed regulations, shall pro-

2  mulgate such regulations.

3     (e)(1) Payment of any claim by the Fund under this sec-

4  tion shall be subject to the United States Government acquir-

5  ing by subrogation all rights of the claimant to recover the

6  removal costs or damages from the responsible party.

7     (2) Any person, including the Fund, who pays compen-

8  sation pursuant to this Act to any claimant for costs or dam-

9  ages shall be subrogated to all rights, claims, and causes of

10  action for those costs and damages that the claimant has

11  under this Act or under any other law.

12     (3) Upon request of the President, the Attorney General

13  shall commence an action on behalf of the Fund to recover

14  any compensation paid by the Fund to any claimant pursuant

15  to this Act, and, without regard to any limitation of liability

16  with respect to an owner or operator under section 102(c), all

17  costs incurred by the Fund by reason of the claim, including

18  interest (including prejudgment interest), administrative and

19  adjudicative costs, and attorney's fees. Such an action may

20  be commenced against any owner or operator or (subject to

21  section 104(e)) guarantor, or against any other person who is

22  liable, pursuant to any law, to the compensated claimant or

23  to the Fund, for the cost or damages for which the compensa-

24  tion was paid. Such an action shall be commenced against

25  the responsible foreign government or other responsible party

32

1  to recover any removal costs or damages paid from the Fund

2  as the result of the discharge, or substantial threat of dis-

3  charge, of oil from a foreign offshore unit.

4      (f) The Fund shall not be available to pay any claim for

5  costs or damages to the extent the discharge or the damages

6  had been caused by the gross negligence or willful miscon-

7  duct of that particular claimant.

8      (g) The Comptroller General shall provide an audit

9  review team to audit all payments, obligations, reimburse-

10  ments, or other uses of the Fund, to assure that the Fund is

11  being properly administered and that claims are being appro-

12  priately and expeditiously considered. The Comptroller Gen-

13  eral shall submit to the Congress an interim report one year

14  after the establishment of the Fund. The Comptroller Gener-

15  al shall thereafter provide such auditing of the Fund as is

16  appropriate. Each Federal agency shall cooperate with the

17  Comptroller General in carrying out this subsection.

18      (h)(1) No claim may be presented under this section for

19  recovery of removal costs after the date six years after the

20  date of completion of all removal action.

21      (2) No claim may be presented under this section for

22  recovery of damages unless the claim is presented within

23  three years after the date of the discovery of the loss and its

24  connection with the release in question, or in the case of

25  damages under section 102(a)(2)(C), if later, the date on

33

1  which final regulations are promulgated under section

2  102(d)(3) of this Act.

3      (3) The time limitations contained herein shall not begin

4  to run—

5          (A) against a minor until the earlier of the date

6          when such minor reaches eighteen years of age or the

7          date on which a legal representative is duly appointed

8          for the minor, or

9          (B) against an incompetent person until the earlier

10          of the date on which such incompetent's incompetency

11          ends or the date on which a legal representative is

12          duly appointed for such incompetent.

13      (i) Where the President has paid out of the Fund for any

14  removal costs or any costs specified under subsection (a) (5)

15  or (6), no other claim may be paid out of the Fund for the

16  same costs.

17      (j) Except in a situation requiring action to avoid an

18  irreversible loss of natural resources or to prevent or reduce

19  any continuing danger to natural resources or similar need

20  for emergency action, funds may not be used under this Act

21  for the restoration, rehabilitation, or replacement or acquisi-

22  tion of the equivalent of any natural resources until a plan for

23  the use of such funds for such purposes has been developed

24  and adopted by affected Federal agencies and the Governor

25  or Governors of any State having sustained damage to natu-

34

1  ral resources within its borders, belonging to, managed by or

2  appertaining to such State, after adequate public notice and

3  opportunity for hearing and consideration of all public

4  comment.

5                 FINANCIAL RESPONSIBILITY

6     SEC. 104. (a)(1) The owner or operator of any vessel

7  over three hundred gross tons (except a non-self-propelled

8  barge that does not carry oil as cargo or fuel), using any port

9  or place in the United States or the navigable waters or any

10  outer continental shelf facility or deepwater port facility *or*

11  *the water of the exclusive economic zone to transship or light-*

12  *er oil destined for a port or place subject to the jurisdiction of*

13  *the United States,* shall establish and maintain, in accordance

14  with regulations promulgated by the President, evidence of

15  financial responsibility sufficient to meet the maximum

16  amount of liability to which, in the case of a tanker, the

17  owner or operator could be subjected under section

18  102(c)(1)(A) of this Act, or to which, in the case of any other

19  vessel, the owner or operator could be subjected under sec-

20  tion 102(c)(1)(B) of this Act, in a case where the owner or

21  operator would be entitled to limit liability under that section.

22  If the owner or operator owns or operates more than one

23  vessel, evidence of financial responsibility need be established

24  only to meet the maximum liability applicable to the largest

25  of such vessels.

35

1    (2) The Secretary of the Treasury shall withhold or

2    revoke the clearance required by section 4197 of the Revised

3    Statutes of the United States of any vessel subject to this

4    subsection that does not have the certification required under

5    this subsection or the regulations issued hereunder.

6    (3) The Secretary of the department in which the Coast

7    Guard is operating may (A) deny entry to any outer continen-

8    tal shelf facility, and deepwater port facility, or any port or

9    place in the United States, or (B) detain at such a facility or

10    port or place, any vessel that, upon request, does not produce

11    the certification required under this subsection or the regula-

12    tions issued hereunder.

13    (4) Any vessel subject to the requirements of this sub-

14    section which is found in the navigable waters without the

15    necessary evidence of financial responsibility shall be subject

16    to seizure by the United States of any oil carried as cargo.

17    (b) Each owner or operator with respect to an outer

18    continental shelf facility, deepwater port facility, or other off-

19    shore facility, shall establish and maintain evidence of finan-

20    cial responsibility sufficient to meet the maximum amount of

21    liability to which the owner or operator could be subjected

22    under section 102 of this Act in a case where the owner or

23    operator would be entitled to limit liability under that section,

24    or, in the case of an Outer Continental Shelf facility, in the

25    amount of $100,000,000. Such evidence of financial respon-

36

1 sibility shall be established according to regulations pre-
2 scribed by the President.

3    (c) Financial responsibility under this section may be es-
4 tablished by any one, or by any combination, of the following
5 methods, which the President determines to be acceptable:
6 evidence of insurance, surety bond, guarantee, letter of
7 credit, qualification as a self-insurer, or other evidence of fi-
8 nancial responsibility. Any bond filed shall be issued by a
9 bonding company authorized to do business in the United
10 States. In promulgating requirements under this section, the
11 President is authorized to specify policy or other contractual
12 terms, conditions, or defenses which are necessary, or which
13 are unacceptable, in establishing such evidence of financial
14 responsibility in order to effectuate the purposes of this Act.

15    (d) Any claim for which liability may be established
16 under section 102 of this Act may be asserted directly
17 against any guarantor providing evidence of financial respon-
18 sibility for an owner or operator liable under that section for
19 costs and damages to which the claim pertains. In defending
20 against such a claim, the guarantor may invoke all rights and
21 defenses which would be available to the responsible party
22 under section 102. The guarantor may also invoke the de-
23 fense that the discharge was caused by the willful misconduct
24 of the owner or operator, but the guarantor may not invoke

37

1  any other defense that might be available in proceedings

2  brought by the owner or operator against the guarantor.

3      (e) The total liability of any guarantor in a direct action

4  suit brought under this section shall be limited to the aggre-

5  gate amount of the monetary limits of the policy of insurance,

6  guarantee, surety bond, letter of credit, or similar instrument

7  obtained from the guarantor by the person subject to liability

8  under section 102 for the purpose of satisfying the require-

9  ment for evidence of financial responsibility. Nothing in this

10  subsection shall be construed to limit any other State or Fed-

11  eral statutory, contractual, or common law liability of a guar-

12  antor, including, but not limited to, the liability of such guar-

13  antor for bad faith either in negotiation or in failing to negoti-

14  ate the settlement of any claim. Nothing in this subsection

15  shall be construed, interpreted, or applied to diminish the li-

16  ability of any person under section 102 of this Act or other

17  applicable law.

18      (f)(1) Any person who, after notice and an opportunity

19  for a hearing, is found to have failed to comply with the

20  requirements of this section or the regulations issued thereun-

21  der, or with a denial or detention order issued under subsec-

22  tion (a)(3) of this section, shall be liable to the United States

23  for a civil penalty, not to exceed $25,000 per day of viola-

24  tion. The amount of the civil penalty shall be assessed by the

25  President by written notice. In determining the amount of the

38

1  penalty, the President shall take into account the nature, cir-

2  cumstances, extent, and gravity of the violation, the degree

3  of culpability, any history of prior violation, ability to pay,

4  and such other matters as justice may require. The President

5  may compromise, modify, or remit, with or without condi-

6  tions, any civil penalty which is subject to imposition or

7  which has been imposed under this paragraph. If any person

8  fails to pay an assessed civil penalty after it has become final,

9  the President may refer the matter to the Attorney General

10  for collection.

11      (2) In addition to, or in lieu of, assessing a penalty under

12  paragraph (1) of this subsection, the President may request

13  the Attorney General to secure such relief as necessary to

14  compel compliance with this section, including, but not limit-

15  ed to, a judicial order terminating operations. The district

16  courts of the United States shall have jurisdiction to grant

17  such relief as the public interest and the equities of the case

18  may require.

19      (g) Any regulation respecting financial responsibility,

20  which has been issued pursuant to any provision of law re-

21  pealed or superseded by this Act, and which is in effect on

22  the date immediately preceding the effective date of this Act,

23  shall be deemed and construed to be a regulation issued pur-

24  suant to this section. Such a regulation shall remain in full

39

1   force and effect unless and until superseded by new regula-
2   tions issued under this section.

3              LITIGATION, JURISDICTION AND VENUE

4        SEC. 105. (a) Review of any regulation promulgated
5   under this Act may be had upon application by any interested
6   person only in the Circuit Court of Appeals of the United
7   States for the District of Columbia. Any such application
8   shall be made within ninety days from the date of promulga-
9   tion of such regulations. Any matter with respect to which
10   review could have been obtained under this subsection shall
11   not be subject to judicial review in any civil or criminal pro-
12   ceeding for enforcement or to obtain damages or recovery of
13   response costs.

14        (b) Except as provided in subsections (a) and (c) of this
15   section, the United States district courts shall have exclusive
16   original jurisdiction over all controversies arising under this
17   Act, without regard to the citizenship of the parties or the
18   amount in controversy. Venue shall lie in any district in
19   which the discharge or injury or damages occurred, or in
20   which the defendant resides, may be found, has its principal
21   office, or has appointed an agent for service of process. For
22   the purposes of this section, the Fund shall reside in the Dis-
23   trict of Columbia.

24        (c) A State trial court of competent jurisdiction over
25   similar claims may consider claims under section 102 or
26   State law and any final judgment of such court (when no

S 686 RS

40

1 longer subject to ordinary forms of review) shall be recog-

2 nized, valid, and enforceable for all purposes of section 102

3 and section 103 of this Act.

4      (d) The provisions of subsections (a), (b), and (c) of this

5 section shall not apply to any controversy or other matter

6 resulting from the assessment or collection of any tax, or to

7 the review of any regulation promulgated under the Internal

8 Revenue Code of 1954.

9      (e) The President may prescribe the necessary regula-

10 tions to carry out this Act.

11      (f) No provision of this Act shall be deemed or held to

12 moot any litigation concerning any discharge of oil, or any

13 damages associated therewith, commenced prior to enact-

14 ment of this Act.

15      (g)(1) Except as provided in paragraphs (3) and (4), no

16 action may be commenced for damages (as defined in section

17 101(6)) under this Act, unless that action is commenced

18 within three years after the date of the discovery of the loss

19 and its connection with the release in question, or in the case

20 of damages under section 102(a)(2)(C), if later, the date on

21 which regulations are promulgated under section 102(d)(3) of

22 this Act.

23      (2) An action for recovery of removal costs referred to in

24 section 102(a)(1) must be commenced within three years after

25 completion of the removal action. In any such action de-

41

1  scribed in this subsection, the court shall enter a declaratory

2  judgment on liability for removal costs or damages that will

3  be binding on any subsequent action or actions to recover

4  further removal costs or damages. Except as otherwise pro-

5  vided in this paragraph, an action may be commenced under

6  section 102 for recovery of removal costs at any time after

7  such costs have been incurred.

8      (3) No action for contribution for any removal costs or

9  damages may be commenced more than three years after—

10         (A) the date of judgment in any action under this

11      Act for recovery of such costs or damages, or

12         (B) the date of entry of a judicially approved set-

13      tlement with respect to such costs or damages.

14      (4) No action based on rights subrogated pursuant to

15  this Act by reason of payment of a claim may be commenced

16  under this Act more than three years after the date of pay-

17  ment of such claim.

18      (5) The time limitations contained herein shall not begin

19  to run—

20         (A) against a minor until the earlier of the date

21      when such minor reaches eighteen years of age or the

22      date on which a legal representative is duly appointed

23      for such minor, or

24         (B) against an incompetent person until the earlier

25      of the date on which such incompetent's incompetency

42

1    ends or the date on which a legal representative is

2    duly appointed for such incompetent.

3                    STATE LAWS AND PROGRAMS

4    SEC. 106. (a) Nothing in this Act shall be construed or

5    interpreted as preempting any State from imposing any addi-

6    tional liability or requirements with respect to the discharge

7    of oil or other pollution by oil within such State. Nothing in

8    this Act shall affect or modify in any way the obligations or

9    liabilities of any person under other Federal or State law,

10   including common law, with respect to discharges of oil.

11       (b) Nothing in this Act or in section 9507 of the Internal

12   Revenue Code of 1954 shall in any way affect, or be con-

13   strued to affect, the authority of any State—

14           (1) to establish, or to continue in effect, a fund

15       any purpose of which is to pay for costs or damages

16       arising out of, or directly resulting from, oil pollution

17       or the substantial threat of oil pollution; or

18           (2) to require any person to contribute to such a

19       fund.

20       (c) A State may enforce, on the navigable waters of

21   such State, the requirements for evidence of financial respon-

22   sibility applicable under section 104 of this Act.

23       (d) The President shall consult with the affected State

24   or States on the appropriate removal action to be taken. Re-

25   moval with respect to any discharge or incident shall be con-

43

1 sidered completed when so determined by the President and

2 the Governor or Governors of the affected State or States.

3     (e) Nothing in this Act, the Act of March 3, 1851, as

4 amended (46 U.S.C. 183 et seq.), or section 9507 of the

5 Internal Revenue Code of 1954, shall in any way affect, or

6 be construed to affect, the authority of the United States or

7 any State or political subdivision thereof—

8         (1) to impose additional liability or additional re-

9         quirements, or

10        (2) to impose, or to determine the amount of, any

11        fine or penalty (whether criminal or civil in nature) for

12        any violation of law,

13 relating to the discharge, or substantial threat of a discharge,

14 of oil.

15 ~~STUDY OF SPILL PREVENTION IN RESTRICTED WATERS~~

16 ~~SEC. 107. The President shall conduct a study, and~~

17 ~~report the results of such study to the Congress not later~~

18 ~~than one year after the enactment of this Act, on improved~~

19 ~~methods for the prevention of discharges of oil in restricted~~

20 ~~waters and similar portions of bays, estuaries, and near shore~~

21 ~~waters. In the conduct of such study, the President shall ex-~~

22 ~~amine the causes of recent major discharges of oil from ves-~~

23 ~~sels in the Delaware River, and consider modifications in~~

24 ~~tanker construction and operation standards, crew training~~

25 ~~and locale familiarization requirements, improvements in~~

44

1   ~~navigation aids, and other approaches with the potential for~~

2   ~~reducing the likelihood for discharges of oil in such waters.~~

3                   ~~FEDERAL RESPONSIBILITY~~

4        ~~SEC. 108. Section 311(c)(1) of the Federal Water Pollu-~~

5   ~~tion Control Act is amended by striking all that follows after~~

6   ~~"1976)", and inserting the following in lieu thereof: "the~~

7   ~~President shall remove or arrange for the removal of such oil~~

8   ~~or substance at any time. The President is not required to~~

9   ~~remove or arrange for removal of such oil or substance only if~~

10  ~~the President finds that such removal will be done properly~~

11  ~~and promptly by the owner or operator of the vessel, onshore~~

12  ~~facility, or offshore facility, from which the discharge occurs.~~

13  ~~Such owner or operator must demonstrate to the satisfaction~~

14  ~~of the President that such owner or operator has the financial~~

15  ~~resources and technical capability necessary to effectively~~

16  ~~remove the oil or hazardous substance."~~

17  *TITLE II—OIL POLLUTION PREVENTION AND*

18                   *RESPONSE*

19              *FEDERAL RESPONSIBILITY*

20       *SEC. 201. (a) Section 311(c)(1) of the Federal Water*

21  *Pollution Control Act is amended by striking all that follows*

22  *after "1976)", and inserting the following in lieu thereof:*

23  *"the President shall remove or arrange for the removal of*

24  *such oil or substance at any time, unless the President deter-*

25  *mines such removal will be done properly and promptly by a*

26  *State or by the owner or operator of the vessel, onshore facili-*

45

1  ty, or offshore facility, from which the discharge occurs. Such

2  owner or operator must demonstrate to the satisfaction of the

3  President that such owner or operator has the financial re-

4  sources and technical capability necessary to effectively

5  remove the oil or hazardous substance. The President is au-

6  thorized to order such owner or operator to remove or arrange

7  to remove the oil or hazardous substance and to continue such

8  removal actions until the President determines that such ac-

9  tions are no longer necessary to minimize or mitigate damage

10  to the public health or welfare, including, but not limited to,

11  fish, shellfish, wildlife, and public and private property,

12  shorelines, and beaches.''

13      (b) Section 311(d) of the Federal Water Pollution Con-

14  trol Act (33 U.S.C. 1321(d)) is amended by striking out that

15  section and inserting in lieu thereof the following:

16      ''(d)  SUBSTANTIAL    THREAT   OF   POLLUTION

17  HAZARD.—Notwithstanding subsection (c)(1) of this section,

18  whenever a marine disaster in or upon the navigable waters

19  of the United States has created a substantial threat of a

20  pollution hazard to the public health or welfare of the United

21  States, including, but not limited to, fish, shellfish, wildlife,

22  and the public and private shorelines and beaches of the

23  United States, because of a discharge, or an imminent dis-

24  charge, of oil, or of a hazardous substance, from a vessel or a

25  facility—

46

1        *"(1) the President shall, acting through the person*

2    *designated under subsection (c)(2)(L) of this section,*

3    *coordinate and direct all public and private efforts di-*

4    *rected at the removal or elimination of such threat, in-*

5    *cluding direction of the activities of the strike force es-*

6    *tablished by subsection (c)(2)(C) of this section and the*

7    *regional oil spill response teams established by subsec-*

8    *tion (s) of this section;*

9        *"(2) the President may summarily remove, and,*

10   *if necessary, destroy such vessel by whatever means*

11   *are available;*

12       *"(3) the President may, if necessary to ensure*

13   *prompt and proper removal or elimination of such*

14   *threat, or removal or destruction of such vessel, take*

15   *any action to achieve such ends without regard to any*

16   *provisions of law governing competitive bidding, the*

17   *employment of personnel or the expenditure of appro-*

18   *priate funds;*

19       *"(4) each Federal agency, State, owner or opera-*

20   *tor of a vessel or a facility, or other person shall par-*

21   *ticipate in any efforts under this subsection as required*

22   *under the National Contingency Plan and as directed*

23   *by the person designated under subsection (c)(2)(L) of*

24   *this section, and may be reimbursed for the costs in-*

25   *curred from the Fund established under the Oil Pollu-*

47

1     *tion Liability and Compensation Act of 1989 to the*

2     *extent authorized by that Act and the National Contin-*

3     *gency Plan;*

4     *"(5) any costs incurred by the United States*

5     *under this subsection or under the Intervention on the*

6     *High Seas Act or the convention defined in section*

7     *2(3) thereof shall be a cost incurred by the United*

8     *States Government for the purposes of subsection (f) in*

9     *the removal of oil or hazardous substance; and*

10     *"(6) the person designated under subsection*

11     *(c)(2)(L) of this section shall consult with the trustees*

12     *for natural resources designated under the Oil Pollu-*

13     *tion Liability and Compensation Act of 1989 concern-*

14     *ing actions taken pursaunt to this subsection.".*

15     *NATIONAL CONTINGENCY PLAN*

16     *SEC. 202. Section 311(c) of the Federal Water Pollu-*

17 *tion Control Act (33 U.S.C. 1321 (c)) is amended by strik-*

18 *ing paragraph (2) and inserting the following new paragraph*

19 *in lieu thereof:*

20     *"(2) NATIONAL CONTINGENCY PLAN.—Within sixty*

21 *days after the effective date of this section, the President shall*

22 *prepare and publish a National Contingency Plan (herein-*

23 *after referred to in this paragraph as the "Plan") for removal*

24 *of oil and hazardous substances, pursuant to this subsection*

25 *and subsection (d) of this section. Such plan shall provide for*

26 *efficient, coordinated, and effective action to minimize*

48

1 *damage from oil and hazardous substance discharges, includ-*

2 *ing containment, dispersal, and removal of oil and hazardous*

3 *substances, and shall include, but not be limited to—*

4          *"(A)  assignment  of  duties  and  responsibilities*

5          *among  Federal  departments  and  agencies  in  coordina-*

6          *tion  with  State  and  local  agencies,  including,  but  not*

7          *limited  to,  water  pollution  control,  port  authorities,*

8          *conservation and trusteeship of natural resources;*

9          *"(B)  identification,  procurement,  maintenance,*

10          *and storage of equipment and supplies;*

11          *"(C)  establishment  or  designation  of  a  strike*

12          *force,  in  addition  to  regional  oil  spill  response  teams*

13          *consisting of personnel who shall be trained, prepared,*

14          *and available to provide necessary services to carry out*

15          *the Plan, including the establishment at major ports as*

16          *provided under subsection (s) of this section (regional*

17          *oil spill response teams), to be determined by the Presi-*

18          *dent,  of  emergency  task  forces  of  trained  personnel,*

19          *adequate oil and hazardous substance pollution control*

20          *equipment and material, and a detailed oil and hazard-*

21          *ous  substance  pollution  prevention  and  removal  plan,*

22          *including measures to protect and restore fisheries and*

23          *wildlife;*

24          *"(D) a system of surveillance and notice designed*

25          *to  insure  earliest  possible  notice  of  discharges  of  oil*

49

1    *and hazardous substances and imminent threats of*

2    *such discharges to the appropriate State and Federal*

3    *agencies;*

4         *"(E) establishment of a national center to provide*

5    *coordination and direction for operations by strike*

6    *forces, the regional oil spill response teams required*

7    *under subsection (s) of this section, and others in car-*

8    *rying out the Plan;*

9         *"(F) procedures and techniques to be employed in*

10   *identifying, containing, dispersing, and removing oil*

11   *and hazardous substances;*

12        *"(G) a schedule, prepared in cooperation with the*

13   *States, identifying dispersants, chemicals and other*

14   *spill mitigating devices, if any, that may be used in*

15   *carrying out the Plan; the waters in which such disper-*

16   *sants, chemicals and other spill mitigating devices may*

17   *be used; and the quantities of such dispersant, chemical*

18   *or other spill mitigating devices which can be used*

19   *safely in such waters, which schedule shall provide in*

20   *the case of any dispersant, chemicals and other spill*

21   *mitigating devices, or waters not specifically identified*

22   *in such schedule that the President, or his delegate,*

23   *may, on a case-by-case basis, identify the dispersants,*

24   *chemicals and other spill mitigating devices which may*

50

1    be used, the waters in which they may be used, and the

2    quantities which can be used safely in such waters;

3        "(H) a system whereby the State or States affect-

4    ed by a discharge of oil or hazardous substance may

5    act where necessary to remove such discharge and such

6    State or States may be reimbursed in the case of any

7    discharges of oil from a vessel or facility, for the rea-

8    sonable costs incurred in such removal from the Fund

9    established under the Oil Spill Liability and Compen-

10   sation Act of 1989;

11       "(I) procedures to provide equipment that is ade-

12   quate to minimize damage resulting from a discharge

13   of oil or a hazardous substance and that is appropriate

14   for the environmental features of the area for which it

15   is provided, and to require that all such equipment be

16   certified at least once every three years by the Secre-

17   tary of the department in which the Coast Guard is

18   operating;

19       "(J) provisions to assure that the Federal On

20   Scene Coordinator designated pursuant to the Plan

21   takes steps within a minimum amount of time to

22   assume control of a response to a spill or discharge, re-

23   solve State and local concerns, and implement ap-

24   proved procedures promptly;

51

1        *"(K) development and maintenance of a periodi-*
2        *cally updated international inventory of equipment and*
3        *personnel to remove discharges of oil and hazardous*
4        *substances, available to the public, which shall, to the*
5        *extent of available information list all equipment,*
6        *whether in private or governmental custody, capable of*
7        *containing or cleaning up discharges of oil and hazard-*
8        *ous substances and specify for such equipment the*
9        *nature, type, age, manufacturer, precise current loca-*
10       *tion, name of current owner, name and phone number*
11       *of the individual with authority over its disposition,*
12       *and list all contractors and other persons qualified in*
13       *the containment or cleanup of oil and hazardous sub-*
14       *stance discharges and specify for each such contractor*
15       *or other persons the number of available personnel and*
16       *their skills, the nature and capabilities of available*
17       *equipment, the name of the principal officer, the name*
18       *and phone number of an individual with emergency re-*
19       *sponse authority, and such other information as the*
20       *President may require;*

21       *"(L) designation of a person who shall be primar-*
22       *ily responsible for carrying out the President's author-*
23       *ity under this subsection, and who shall direct or co-*
24       *ordinate all Federal, State, and private efforts under*
25       *subsection (d) of this section to prepare for and respond*

52

1    *to a substantial threat of a pollution hazard to the*

2    *public health and welfare, including any such efforts of*

3    *a strike force established under subparagraph (C) of*

4    *this paragraph and of the regional oil spill response*

5    *teams established under subsection (s) of this section;*

6    *"(M) establishment of criteria and procedures to*

7    *ensure prompt and proper identification of, and re-*

8    *sponse to, marine disasters that create a substantial*

9    *threat of a pollution hazard to the public health or wel-*

10    *fare of the United States, as required under subsection*

11    *(d) of this section;*

12    *"(N) establishment of standards and procedures*

13    *which comply with the provisions of the Oil Pollution*

14    *Liability and Compensation Act of 1989 for reim-*

15    *bursement from the Fund established under that Act of*

16    *removal costs incurred under this subsection and sub-*

17    *section (d) of this section by the United States or other*

18    *persons; and*

19    *"(O) establishment of procedures to notify and*

20    *inform all entities that may be involved in removal of*

21    *discharges of oil and hazardous substances, including*

22    *Federal agencies, States, and other persons, of each*

23    *such entity's duties and rights and of the procedures*

24    *each such entity shall follow under this subsection and*

25    *subsection (d) of this section.*

53

1   *The President may, from time to time, as he deems advisable*

2   *revise or otherwise amend the National Contingency Plan.*

3   *After publication of the National Contingency Plan, the re-*

4   *moval of oil and hazardous substances and actions to mini-*

5   *mize damage from oil and hazardous substance discharges*

6   *shall, to the greatest extent possible, be in accordance with the*

7   *National Contingency Plan.".*

8       *REGIONAL OIL SPILL RESPONSE TEAMS*

9       *SEC. 203. Section 311 of the Federal Water Pollution*

10  *Control Act (33 U.S.C. 1321) is amended by adding at the*

11  *end thereof the following new subsection:*

12      *"(s)(1) REGIONAL OIL SPILL RESPONSE TEAMS.—*

13  *The President shall revise the National Contingency Plan*

14  *prepared and published pursuant to subsection (c)(2) of this*

15  *section to require establishment, operation, and maintenance*

16  *of an oil spill response team, including use of existing public*

17  *or private personnel and equipment, for each region that the*

18  *President determines is in need of such a response team, in-*

19  *cluding, but not limited to, the regions of Alaska, the Pacific*

20  *Northwest, California, the Gulf of Mexico, and the south At-*

21  *lantic coast, New England, the mid-Atlantic coast, and for*

22  *inland waters that is capable of promptly and properly re-*

23  *moving oil from a worst case discharge, defined as a dis-*

24  *charge, in adverse weather conditions, of the largest vessel*

25  *which is known to transit a given region. Such response*

26  *teams shall—*

S 686 RS

54

1          *"(A) consist of time, dedicated and trained per-*

2     *sonnel, fully operational vessels and equipment, or*

3     *have immediate access to use of such personnel, vessels,*

4     *and equipment, for spill containment, recovery, disper-*

5     *sal, shoreline cleanup and protection and rescue of*

6     *fisheries and wildlife;*

7          *"(B) have continuous twenty-four-hour communi-*

8     *cations capability to assure rapid notification and co-*

9     *ordination with the national center and strike forces es-*

10    *tablished under subsection (c)(2) of this section, State*

11    *and local officials, and other appropriate entities and*

12    *ensure that response teams, and all equipment and ves-*

13    *sels required for those response teams, are properly and*

14    *immediately in use upon receiving notice of any dis-*

15    *charge of oil;*

16         *"(C) conduct training and periodic drills, without*

17    *prior notice, to demonstrate their continued effective-*

18    *ness and readiness;*

19         *"(D) work with State and local officials to en-*

20    *hance the contingency planning of such officials and*

21    *assure pre-planning of joint response efforts, including*

22    *appropriate procedures for mechanical recovery, disper-*

23    *sal, shoreline cleanup and protection and rescue of*

24    *fisheries and wildlife. Response teams also shall work*

25    *with State and local officials to obtain agreements for*

55

1   *use of dispersants and other mitigating devices as part*

2   *of regional contingency plans; and*

3    *"(E) establish and maintain an inventory of per-*

4   *sonnel and equipment, in coordination with the inter-*

5   *national inventory developed under the National Con-*

6   *tingency Plan, to support spill response activities, con-*

7   *sisting at a minimum of locations, status, and avail-*

8   *ability of spill response resources and related*

9   *information.*

10  *"(2) FUNDING.—Amounts in the Fund established*

11 *under the Oil Pollution Liability and Compensation Act of*

12 *1989 shall be available, without fiscal year limitation, to es-*

13 *tablish and maintain the oil spill response teams required*

14 *under this paragraph.".*

15 *OIL SPILL CONTINGENCY PLAN DEVELOPMENT AND*

16      *APPROVAL*

17  *SEC. 204. Section 311 of the Federal Water Pollution*

18 *Control Act (33 U.S.C. 1321) is amended by adding at the*

19 *end thereof the following new subsection:*

20  *"(t)(1) IN GENERAL.—This subsection applies to (1)*

21 *operators of all tank vessels (other than public vessels) which*

22 *carry oil in bulk as cargo or cargo residue or transfer oil in*

23 *any port located in or upon the navigable waters of the*

24 *United States and the exclusive economic zone and (2) opera-*

25 *tors of oil producing, refining, or transportation facilities that*

26 *due to their location, reasonably could be expected to spill oil*

56

1   *into or upon navigable waters of the United States, adjoining*

2   *shorelines or the waters of the exclusive economic zone.*

3   *"(2)  OIL  SPILL  CONTINGENCY  PLAN  DEVELOP-*

4   *MENT.—The President shall, within one year after enact-*

5   *ment of the Oil Pollution Liability and Compensation Act of*

6   *1989, issue a final rule requiring owners and operators of*

7   *vessels and facilities subject to this paragraph to prepare and*

8   *submit a contingency plan for the prevention, containment*

9   *and cleanup of oil spills from their vessels or facilities and*

10  *for the protection of fisheries and wildlife from such spills.*

11  *Contingency plans required under this subsection shall—*

12  *"(A) provide full details of the method of response*

13  *to a worst case oil spill, defined as a discharge, in ad-*

14  *verse weather conditions, of the largest vessel which is*

15  *known to transit the area covered by the plan;*

16  *"(B) if implemented, be capable, in terms of per-*

17  *sonnel, materials and equipment, of promptly and*

18  *properly removing any oil spill and minimizing any*

19  *damage to the environment, to the maximum extent*

20  *practicable;*

21  *"(C) provide a clear and precise, detailed descrip-*

22  *tion of how the plan relates to and is integrated into*

23  *other approved contingency plans prepared by coopera-*

24  *tives, ports, regional entities and States, and regional*

25  *oil spill response teams, strike forces and Federal agen-*

57

1    *cies under the National Contingency Plan prepared*

2    *and published pursuant to subsection (c)(2) of this sec-*

3    *tion;*

4    *    "(D) provide procedures for early detection of oil*

5    *spills and timely notification of such spills to the Fed-*

6    *eral On Scene Coordinator, regional oil spill response*

7    *teams and strike forces under the National Contingen-*

8    *cy Plan, prepared and published pursuant to subsec-*

9    *tion (c)(2) of this section, and other authorities;*

10   *    "(E) state the number, types, operational capacity*

11   *and availability of the oil spill containment equipment*

12   *to be provided to implement the plan;*

13   *    "(F) state the number, training preparedness and*

14   *fitness of all full-time, dedicated, pre-positioned person-*

15   *nel assigned to direct and implement the plan;*

16   *    "(G) incorporate periodic training and drill pro-*

17   *grams to assure that personnel and equipment to be*

18   *provided under the plan are in a state of operational*

19   *readiness at all times;*

20   *    "(H) state the means of protecting and mitigating*

21   *effects on the environment, including fish, marine*

22   *mammals and other wildlife, and ensure that imple-*

23   *mentation of the plan does not pose unacceptable risks*

24   *to the public or the environment;*

58

1          "(I) provide a detailed description of equipment

2     and procedures to be used by the crew of each vessel

3     concerned to minimize damage, stop any spilling from

4     the vessel, contain and cleanup the spilled oil promptly

5     and properly, and determine if and when additional

6     equipment and personnel are needed;

7          "(J) provide arrangements for the pre-positioning

8     of oil spill containment and cleanup equipment and

9     trained personnel at strategic locations from which they

10    can be deployed to the spill site to promptly and prop-

11    erly remove spilled oil;

12         "(K) provide arrangements for enlisting the use of

13    additional personnel, such as commercial fishermen

14    and other volunteers, to implement the plan; and

15         "(L) provide for disposal of recovered spilled oil

16    in accordance with Federal, State, and local laws; and

17         "(M) describe how implementation of the plan

18    will be coordinated with removal efforts by regional oil

19    spill response teams, including the extent to which

20    dedicated and trained personnel, fully operational ves-

21    sels, and equipment will be made available to such

22    teams.

23    "(3) INSPECTION.—Subsequent to issuance of the final

24  rule described in paragraph (2) of this subsection, the Presi-

25  dent shall provide for regular inspection of vessels, equip-

59

1   *ment, and facilities to ensure compliance with the require-*

2   *ments of the final rule.*

3       *"(4) CONTINGENCY PLAN APPROVAL.—In approving*

4   *the contingency plans required by this subsection, the Presi-*

5   *dent shall consider—*

6           *"(A) the adequacy of containment and cleanup*

7       *equipment, personnel, communications equipment, re-*

8       *sponse time and logistical arrangements for coordina-*

9       *tion and implementation of response efforts to promptly*

10      *and properly remove oil spills and protect the environ-*

11      *ment;*

12          *"(B) the nature and amount of vessel traffic*

13      *within the area covered by the plan;*

14          *"(C) the volume and type of oil being transported*

15      *within the area covered by the plan;*

16          *"(D) the existence of navigational hazards within*

17      *the area covered by the plan;*

18          *"(E) any history of prior discharges of oil within*

19      *the area covered by the plan;*

20          *"(F) the value and sensitivity of fisheries and*

21      *wildlife and other natural resources within the area*

22      *covered by the plan;*

23          *"(G) the comments of potentially affected third*

24      *parties; and*

1        *"(H) relevant information on previous discharges*

2        *contained in On Scene Coordinator reports prepared*

3        *by the Coast Guard.*

4  *No plan shall be approved unless the President determines*

5 *that such plan meets the requirements of this subsection and*

6 *subsection (s) of this section and that such plan, if imple-*

7 *mented, is capable, in terms of personnel, materials and*

8 *equipment, of promptly and properly removing any oil spill*

9 *and minimizing any damage to the environment to the maxi-*

10 *mum extent practicable.*

11     *"(5) NOTIFICATION OF CHANGES.—An owner or oper-*

12 *ator of a vessel or facility shall immediately notify the Presi-*

13 *dent, in writing, of any significant change in any factor set*

14 *forth under paragraph (5) of this subsection, in order for the*

15 *President to require changes, if needed, in the plan submitted*

16 *by such owner or operator.*

17     *"(6) STATE APPROVAL OF PLANS.—The President*

18 *may enter into a cooperative agreement with the chief execu-*

19 *tive officer of any State to delegate to that State the authority*

20 *to approve contingency plans consistent with the require-*

21 *ments of this subsection and subsection (t) of this section.*

22     *"(7) PROHIBITION.—It shall be unlawful to operate a*

23 *vessel in or upon the navigable waters of the United States*

24 *and the exclusive economic zone or to operate a facility that is*

61

1   *not in compliance with a contingency plan submitted and*
2   *approved under this subsection.*

3   *"(8) LEGAL EFFECT OF CONTINGENCY PLANS.—The*
4   *provisions of contingency plans submitted to and approved by*
5   *the President pursuant to this subsection shall be deemed to*
6   *be legally binding upon those persons submitting them to the*
7   *President. The district courts of the United States shall have*
8   *jurisdiction to restrain a violation of, compel specific per-*
9   *formance of, or otherwise enforce such plans upon application*
10  *by the President or by any State to which the President has*
11  *delegated authority for approval of contingency plans under*
12  *paragraph (7) of this subsection. The President, or any State*
13  *to which the President has delegated authority for approval of*
14  *contingency plans under paragraph (6) of this subsection,*
15  *may issue an order requiring compliance with any contin-*
16  *gency plan.*

17  *"(9) PUBLIC AWARENESS AND PRACTICE DRILLS.—*
18  *The President shall publish annually an up-to-date descrip-*
19  *tion of the contingency plans for oil spills submitted and ap-*
20  *proved pursuant to this subsection and an inventory of equip-*
21  *ment available for responding to such spills. The President*
22  *shall require practice drills under the contingency plans ap-*
23  *proved pursuant to this subsection not less than twice each*
24  *year. The President shall review and publish a report on*
25  *such drills, including an assessment of actual response time*

62

1   *and available equipment and personnel compared to those*

2   *listed in the contingency plans, and requirements, if any, for*

3   *changes in the plans or their implementation. The President*

4   *shall require such additional drills and changes in arrange-*

5   *ments for implementing approved plans as are necessary to*

6   *ensure their effective implementation.*

7       *"(10) Each contingency plan submitted and approved*

8   *pursuant to this subsection shall be kept on file and readily*

9   *accessible by the oil spill response teams and other officials*

10  *designated under the National Contingency Plan, relevant*

11  *State and local officials, affected vessels or facilities and the*

12  *owner or operator involved.*

13      *"(11) Any owner or operator of a vessel or an onshore*

14  *facility or an offshore facility and any other person subject to*

15  *any regulation or any order of the President issued under this*

16  *subsection who fails to refuses to comply with the provisions*

17  *of this subsection, or any regulations issued thereunder, shall*

18  *be liable to a civil penalty of not more than $25,000 for each*

19  *such violation. Each violation shall be a separate offense.*

20  *The President may assess and compromise such penalty. No*

21  *penalty shall be assessed until the owner, operator, or other*

22  *person charged shall have been given notice and an opportu-*

23  *nity for a hearing on such charge. In determining the amount*

24  *of the penalty, or the amount agreed upon in compromise, the*

25  *gravity of the violation, and the demonstrated good faith of*

63

1 *the owner, operator, of other person charged in attempting to*

2 *achieve rapid compliance after notification of a violation,*

3 *shall be considered by the President.".*

4     OIL SPILL RESEARCH AND DEVELOPMENT PROGRAM

5     SEC. 205. *Section 311 of the Federal Water Pollution*

6 *Control Act (33 U.S.C. 1321) is amended by adding at the*

7 *end thereof the following new subsection:*

8     "(u)(1) ESTABLISHMENT OF PROGRAM.—*The Presi-*

9 *dent shall establish a research and development program on*

10 *scientific and operational aspects of spill prevention, re-*

11 *sponse, containment and recovery which shall, at a mini-*

12 *mum, give priority to on-water oil recovery and treatment;*

13 *prevention of loss from and away from vessels, including the*

14 *use of values for such purposes and onshore and offshore fa-*

15 *cilities; prevention and mitigation of shoreline impacts; fish-*

16 *eries and wildlife protection, mitigation and recovery; and*

17 *protection of public health and safety.*

18     "(2) *In undertaking such a program, the President shall*

19 *coordinate research and development efforts with other na-*

20 *tions, industry, academia, and private research and develop-*

21 *ment groups.*

22     "(3) FUNDING.—*Amounts in the Fund established*

23 *under the Oil Pollution Liability and Compensation Act of*

24 *1989 shall be available, without fiscal year limitation, to es-*

25 *tablish and maintain the research and development program*

64

1 *required under this paragraph not to exceed $25,000,000*

2 *annually.".*

3 *PENALTIES*

4     SEC. 206. (a) INSPECTION AND ENTRY.—*Section 308*

5 *of the Federal Water Pollution Control Act is amended as*

6 *follows:*

7     *(1) Subsection (a) is amended by—*

8         *(A) adding a new clause (4) providing:*

9         *"(4) obtaining information regarding the*

10     *identification, nature and quantity of materials*

11     *on a vessel or at a facility,";*

12         *(B) adding a new clause (5) providing:*

13         *"(5) obtaining information regarding the*

14     *source or nature or extent of a discharge or threat-*

15     *ened discharge of oil or other pollutants from a*

16     *vessel or a facility,";*

17         *(C) adding a new clause (6) providing:*

18         *"(6) obtaining information relating to the*

19     *ability of a person to pay for or to perform clean-*

20     *up or other remedial action,";*

21         *(D) renumbering existing clause (4) as*

22     *clause (7);*

23         *(E) in clause (A), inserting ", vessel, or fa-*

24     *cility" after the words "point source";*

25         *(F) in clause (B)—*

65

1                  *(i) replacing subclause (i) with the fol-*

2          *lowing:*

3               *"(i) shall have a right of entry to, upon, or*

4          *through any premises, vessel, or facility in which*

5          *an effluent source is located or from which there*

6          *is a discharge or threat of discharge of oil or other*

7          *pollutants into waters of the United States, or in*

8          *which any records required to be maintained*

9          *under clause (A) of this subsection are located,";*

10               *(ii) in subclause (ii), striking the words*

11            *"which the owner or operator of such source*

12            *is required to sample under such clause" and*

13            *insert in lieu thereof the words "or discharge*

14            *or threatened discharges of oil or other pol-*

15            *lutants,"; and*

16               *(iii) adding a new subclause (iii) provid-*

17            *ing:*

18               *"(iii) may at reasonable times enter any*

19            *premises, vessel, or facility where oil or other pol-*

20            *lutants are stored to determine the need for re-*

21            *sponse action, to effectuate response action, or to*

22            *obtain samples of oil or other pollutants.".*

23      *(b)* CRIMINAL PENALTIES.—*(1) Section 309(c) of the*

24 *Clean Water Act (33 U.S.C. 1319(c)) is amended by insert-*

66

1 ing immediately after "308," each time it appears therein the

2 following: "311,".

3     (2) Section 309(c)(4) of the Federal Water Pollution

4 Control Act is amended by inserting the words "omits mate-

5 rial information or" after the word "knowingly".

6     (c) ADMINISTRATIVE PENALTIES.—(1) Subparagraph

7 (A) of paragraph (1) of subsection (g) of the Clean Water Act

8 (33 U.S.C. 1319(g)(1)(A)) is amended by inserting immedi-

9 ately after "the Administrator" the first time it appears

10 therein the following: "the Secretary of the Department in

11 which the Coast Guard is operating".

12     (2) Subparagraph (A) of paragraph (1) of subsection (g)

13 of the Clean Water Act (33 U.S.C. 1319(g)(1)(A)) is

14 amended by inserting immediately after "308" the following:

15 "311".

16     (3) Paragraph (1) of subsection (g) of the Clean Water

17 Act (33 U.S.C. 1319(g)(1)(A)) is amended by inserting im-

18 mediately after "the Administrator" the third time it appears

19 therein the following: ", the Secretary of the Department in

20 which the Coast Guard is operating, or the".

21     (4) Subparagraph (A) of paragraph (6) of subsection (g)

22 of section 309 of the Clean Water Act (33 U.S.C.

23 1319(g)(6)(A)) is amended by inserting a comma immediate-

24 ly before the period at the end thereof, and the following:

25 "except that any action under a State law shall not affect or

67

1  *limit the authority of the Administrator or the Secretary of*

2  *the Department under which the Coast Guard is operating*

3  *with respect to discharges of oil or hazardous substances*

4  *under this subsection or section 311 of this Act".*

5     *(d) CIVIL PENALTIES.—(1) Subparagraphs (A) and*

6  *(B) of paragraph (6) of subsection (b) of section 311 of the*

7  *Clean Water Act (33 U.S.C. 1321(b)(6) (A) and (B) are*

8  *deleted and the following inserted in lieu thereof—*

9         *"(A) Any owner, operator, or person in charge of*

10       *any onshore facility, offshore facility, or vessel from*

11       *which oil or a hazardous substance is discharged in*

12       *violation of paragraph (3) (i) or (ii) of this subsection*

13       *shall be subject to a civil penalty in an amount up to*

14       *$25,000 per day of violation or up to $1,000 per*

15       *barrel of oil or hazardous substances discharged in vio-*

16       *lation of paragraph (3) of this subsection, whichever is*

17       *greater.*

18       *"(B) In determining the amount of the civil pen-*

19       *alty under this paragraph and paragraph (5), the court*

20       *shall consider the seriousness of the violation or viola-*

21       *tions, the economic benefit to the violator, if any, re-*

22       *sulting from the violation, any history of prior viola-*

23       *tions, the nature, extent, and degree of success of any*

24       *efforts to minimize or mitigate the effects of such dis-*

68

1   *charge, the economic impact of the penalty on the viola-*

2   *tor, and any other matters as justice may require.*

3       *"(C) Where the United States can show that a*

4   *discharge in violation of paragraph (3)(i) or (ii) of this*

5   *subsection was the result of willful negligence, willful*

6   *misconduct or a violation of applicable safety, construc-*

7   *tion, or operating regulations, the penalty pursuant to*

8   *paragraph (A) of this subsection shall be no less than*

9   *$250,000.00.*

10      *(D) The Secretary of the Department in which*

11  *the Coast Guard is operating or the Administrator of*

12  *the Environmental Protection Agency may request the*

13  *Attorney General to commence a civil action to recover*

14  *civil penalties against any person in the district court*

15  *in the district in which such person is located, resides,*

16  *or is doing business, and any such court shall have ju-*

17  *risdiction to assess such civil penalty.".*

18      *(2) Subparagraph (C) of paragraph (6) of subsection (b)*

19  *of section 311 is redesignated as subparagraph "(E)".*

20      *(3) Subparagraph (D) of paragraph (6) of subsection*

21  *(b) of section 311 is redesignated as subparagraph (F).*

22      *(4) Subparagraph (E) of paragraph (6) of subsection*

23  *(b) of section 311 of the Clean Water Act (33 U.S.C.*

24  *1321(b)(6)(E)) is repealed.*

69

1    (e) ENVIRONMENTAL EFFECTS.—*Paragraph (4) of*

2 *subsection (b) of section 311 of the Clean Water Act (33*

3 *U.S.C. 1321(b)(4)) is amended by inserting immediately*

4 *after "public health or welfare" the following: "or the envi-*

5 *ronment".*

6    (f) REPORTING.—*Paragraph (5) of subsection (b) of*

7 *section 311 of the Clean Water Act (33 U.S.C. 1321(b)(5))*

8 *is amended by deleting all after the first sentence and insert-*

9 *ing the following in lieu thereof: "any such person (A) in*

10 *charge of a vessel from which oil or a hazardous substance is*

11 *discharged, in violation of paragraph (3)(i) of this subsection*

12 *or (B) in charge of a vessel from which oil or a hazardous*

13 *substance is discharged in violation of paragraph (3)(ii) of*

14 *this subsection and who is otherwise subject to the jurisdic-*

15 *tion of the United States at the time of the discharge, or (C)*

16 *in charge of an onshore facility or an offshore facility, who*

17 *fails to notify immediately such agency of such discharge*

18 *shall, upon conviction, be fined in accordance with the appli-*

19 *cable provisions of title 18 or imprisoned for not more than*

20 *three years (or not more than five years in the case of a*

21 *second or subsequent conviction), or both. Notification re-*

22 *ceived pursuant to this paragraph or information that could*

23 *not have been obtained but for the exploitation of such notifi-*

24 *cation shall not be used against any natural person who gives*

25 *such notification in any criminal case, except a prosecution*

70

1 *for perjury or for giving a false statement. In addition, any*

2 *such person who knowingly fails to provide the notice re-*

3 *quired by this subsection shall not be entitled to any of the*

4 *defenses to liability set out the Oil Pollution Liability and*

5 *Compensation Act of 1989.".*

6   *(g) USE OF PENALTIES.—Notwithstanding any other*

7 *provision of law, penalties paid pursuant to section 309(c) or*

8 *309(g) of the Federal Water Pollution Control Act as a*

9 *result of violations of section 311(b) and penalties paid pur-*

10 *suant to section 311(b)(6) of the Federal Water Pollution*

11 *Control Act shall be deposited in Fund established under the*

12 *Oil Pollution Liability and Compensation Act of 1989.*

13 *STUDY OF SPILL PREVENTION IN RESTRICTED WATERS*

14   *SEC. 207. (a) STUDY.—The President shall conduct a*

15 *study, and report the results of such study to the Congress*

16 *not later than one year after the enactment of this Act, on*

17 *improved methods for the prevention of discharges of oil in*

18 *restricted waters and similar portions of bays, estuaries, and*

19 *near shore waters. In the conduct of the study, the President*

20 *shall examine the causes of recent major discharges of oil*

21 *from vessels in the Delaware River, and consider modifica-*

22 *tions in tanker construction and operation standards, crew*

23 *training and locale familiarization requirements, improve-*

24 *ments in navigation aids, and other approaches with the po-*

25 *tential for reducing the likelihood for discharges of oil in such*

26 *waters.*

1    (b) REPORT TO CONGRESS.—*Section 311(c) of the*
2  *Federal Water Pollution Control Act is amended by adding*
3  *at the end thereof the following new paragraph:*

4        *"(3) The Administrator, in consultation with the Secre-*
5  *tary of the Department in which the Coast Guard is operat-*
6  *ing, shall submit to the Congress within one year of the date*
7  *of enactment of this paragraph and biennially thereafter a*
8  *report assessing the adequacy of provisions of the National*
9  *Contingency Plan, and any regulations pursuant to subsec-*
10  *tion (j), concerning discharges of oil. The report shall include*
11  *a summary of discharges of oil prohibited pursuant to para-*
12  *graph (b)(3) of this section, an assessment of the actions*
13  *taken in response to such discharges, and any recommenda-*
14  *tions for needed improvements to existing statutes, regula-*
15  *tions, or programs for preventing and responding to oil*
16  *spills.".*

17  ~~TITLE II~~ *TITLE III*—CONFORMING AMENDMENTS

18                    TRANS-ALASKA PIPELINE FUND

19    SEC. ~~201.~~ *301.* (a) Section 204(b) of the Trans-Alaska
20  Pipeline  Authorization  Act  is  amended,  in  the  first  sen-
21  tence—

22        (1) by inserting after the words "any area" the
23        words "in the State of Alaska";

72

1   (2) by inserting after the words "any activities"

2  the words "related to the Trans-Alaska Oil Pipeline";

3  and

4   (3) by inserting at the end of the subsection the

5  following new sentence: "This subsection shall not

6  apply to removal costs covered by the Oil Spill Liabil-

7  ity and Compensation Act of ~~1988.~~ *1989*.".

8  Subsection (c) of section 204 of the Trans-Alaska Pipe-

9 line Authorization Act is repealed. The Trans-Alaska Pipe-

10 line Liability Fund is abolished. All assets of that fund, as of

11 the effective date of this section, shall be tranferred to the

12 Fund established under this Act. The Oil Spill Compensation

13 Fund shall assure all liability incurred by the Trans-Alaska

14 Pipeline Liability Fund under the terms of subsection (c) of

15 section 204 of the Trans-Alaska Pipeline Authorization Act.

16  (c) Trustees and former trustees of the Trans-Alaska

17 Pipeline Liability Fund who were designated by the Secre-

18 tary of the Interior shall not be subject to any liability in-

19 curred by that Fund or by the present and past officers and

20 trustees of that Fund, other than liability for gross negligence

21 or willful misconduct.

22   INTERVENTION ON THE HIGH SEAS ACT

23  SEC. ~~202.~~ *302.* Section 17 of the Intervention on the

24 High Seas Act is amended to read as follows:

25  "SEC. 17. The Fund established under the Oil Spill Li-

26 ability and Compensation Act of ~~1988~~ *1989* shall be avail-

73

1 able to the Secretary for actions taken under sections 5 and 7

2 of this Act.''.

3                        CLEAN WATER ACT

4     SEC. ~~203.~~ *303.* Section 311 of the Clean Water Act is

5 amended as follows:

6     ~~(a) Subparagraph (II) of paragraph (2) of subsection (c)~~

7 ~~amended by striking out "from the fund established under~~

8 ~~subsection (k) of this section for the reasonable costs incurred~~

9 ~~in such removal" and inserting in lieu thereof the following:~~

10 ~~"in the case of any discharges of oil from a vessel or facility,~~

11 ~~for the reasonable costs incurred in such removal from the~~

12 ~~Fund established under the Oil Spill Liability and Compensa-~~

13 ~~tion Act of 1988".~~

14     ~~(b)~~ *(a)* Subsection (d) is amended by striking out the last

15 sentence.

16     ~~(c)(1)~~ *(b)(1)* Subsections (f), (g), and (i) of section 311 of

17 the Clean Water Act shall not apply with respect to any

18 discharge of oil resulting in removal costs for which liability

19 is established under section 102 of this Act, *except that natu-*

20 *ral resource damage assessment regulations, promulgated*

21 *under section 311(f) of the Clean Water Act shall apply to*

22 *any such discharges pending the entry into force of such reg-*

23 *ulations promulgated under section 102 of this Act.*

24     (2) Paragraphs (2) and (3) of subsection (f) are amended

25 by striking out "under subsection (c) for the removal of such

26 oil or substance by the United States Government" each

74

1  place it appears and inserting in lieu thereof "under subsec-
2  tion (c) for the removal of such oil or substance by the United
3  States Government and for payments made pursuant to sec-
4  tion 103(a)(4)(A) of the Oil Pollution Liability and Compensa-
5  tion Act of ~~1988~~ *1989*".

6     ~~(d)~~ *(c)* Subsection (i) is amended by striking out "(1)"
7  after "(i)" and striking out paragraphs (2) and (3).

8     ~~(e)~~ *(d)* Subsection (k) is repealed. Any amounts remain-
9  ing in the revolving fund established under that subsection
10  shall be deposited in the Fund established under this Act.
11  The Oil Spill Compensation Fund shall assume all liability
12  incurred by the revolving fund established under section
13  311(k) of the Clean Water Act.

14     ~~(f)~~ *(e)* Subsection (l) is amended by striking out the
15  second sentence.

16     ~~(g)~~ *(f)* Subsection (p) is repealed.

17     ~~(h)~~ *(g)* Section 311 is amended by adding at the end
18  thereof the following new subsection:

19     "(s) The Oil Spill Compensation Fund, established
20  under the Oil Pollution Liability and Compensation Act of
21  ~~1988,~~ *1989,* shall be available to carry out subsections (c),
22  (d), (i), and (l) as those subsections apply to discharges, or
23  substantial threats of discharges, of oil. Any amounts re-
24  ceived by the United States under this section shall be depos-
25  ited in such Oil Spill Compensation Fund.".

75

1          DEEPWATER PORT ACT

2          SEC. ~~204.~~ *304*. The Deepwater Port Act of 1974 is

3     amended as follows:

4          (a) In section 4(c)(1) strike "section 18(l) of this Act;"

5     and insert in lieu thereof "section 104 of the Oil Spill Liabil-

6     ity and Compensation Act of ~~1988,~~ *1989*,".

7          (b) Subsections (b), (d), (e), (f), (g), (h), (i), (j), (l), (n), and

8     paragraph (1) of subsection (m) of section 18 are deleted.

9          (c) Paragraph (3) of subsection (c) of section 18 is

10    amended by striking "Deepwater Port Liability Fund estab-

11    lished pursuant to subsection (f) of this section", and inserting

12    in lieu thereof "fund established under the Oil Spill Liability

13    and Compensation Act of ~~1988~~ *1989*".

14         (d) Subsections (c), (k), and (m) of section 18 are redes-

15    ignated (b), (c), and (d) respectively, and paragraphs (2), (3),

16    and (4) of subsection (m) are redesignated (1), (2), and (3),

17    respectively.

18         (e) Any amounts remaining in the Deepwater Port Li-

19    ability Fund, established under section 18(f) of the Deep-

20    water Port Act of 1974, shall be deposited in the Fund estab-

21    lished under this Act. The Oil Spill Compensation Fund shall

22    assume all liability incurred by the Deepwater Port Liability

23    Fund.

24      OUTER CONTINENTAL SHELF LANDS ACT AMENDMENTS

25         SEC. ~~205.~~ *305*. Title III of the Outer Continental Shelf

26    Lands Act Amendments of 1978 is hereby repealed. Any

1 amounts remaining in the Offshore Oil Pollution Compensa-
2 tion Fund established under section 302 of that title shall be
3 deposited in the Fund established under this Act. The Oil
4 Spill Compensation Fund shall assume all liability incurred
5 by the Offshore Oil Pollution Compensation Fund.

6 ~~NOTICE TO STATE; INCREASED PENALTIES FOR FAILURE~~
7 ~~TO REPORT~~

8 ~~SEC. 206. (a) The first sentence of section 311(b)(5) of~~
9 ~~the Clean Water Act is amended by inserting after "of the~~
10 ~~United States Government" the phrase "and of any affected~~
11 ~~State".~~

12 ~~(b) The second sentence of section 311(b)(5) of the~~
13 ~~Clean Water Act is amended by striking "fined not more~~
14 ~~than $10,000, or imprisoned for not more than one year, or~~
15 ~~both" and inserting in lieu thereof "fined in accordance with~~
16 ~~the applicable provisions of title 18 of the United States~~
17 ~~Code, or imprisoned for not more than three years (or not~~
18 ~~more than five years in the case of a second or subsequent~~
19 ~~conviction), or both".~~

Calendar No. 181

101ST CONGRESS
1ST SESSION
# S. 686

[Report No. 101–94]

# A BILL

To consolidate and improve Federal laws providing
compensation and establishing liability for oilspills.

JULY 28, 1989

Reported with amendments