# Exhibit 4

IB

# Union Calendar No. 158

101st CONGRESS
1st Session

# H. R. 1465

**[Report No. 101–242, Parts I, II, and III]**

To establish limitations on liability for damages resulting from oil pollution, to establish a fund for the payment of compensation for such damages, and for other purposes.

---

IN THE HOUSE OF REPRESENTATIVES

March 16, 1989

Mr. Jones of North Carolina (for himself, Mr. Davis, Mr. Studds, Mr. Lent, Mr. Hughes, Mr. Young of Alaska, Mr. Tauzin, Mr. Hubbard, Mr. Hutto, Mr. Foglietta, Ms. Schneider, Mr. Hertel, Mr. Dyson, Mr. Lipinski, Mr. Borski, Mr. Carper, Mr. Bosco, Mr. Tallon, Mr. Ortiz, Mr. Bennett, Mr. Miller of Washington, Mr. Manton, Mrs. Bentley, Mr. Pickett, Mr. Hochbrueckner, Mr. Solarz, Mr. Coble, Mrs. Saiki, Mr. Laughlin, Mrs. Unsoeld, Mr. Goss, Mr. Fascell, Mr. Mineta, Mr. Thomas of Georgia, Mr. Akaka, Mr. de Lugo, Mr. Walgren, Mr. Dwyer of New Jersey, Mr. Traficant, Mr. Kennedy, Ms. Pelosi, Mrs. Boxer, Mr. Frank, and Mr. Eckart) introduced the following bill; which was referred jointly to the Committees on Merchant Marine and Fisheries and Public Works and Transportation

May 17, 1989

Additional sponsors: Mr. Smith of Florida, Mr. Pallone, Mr. Lewis of Georgia, Mr. Lancaster, Mr. Torres, Mr. Saxton, Mr. de la Garza, Mr. Lagomarsino, Mr. Oberstar, Mr. LaFalce, Mr. Bateman, Mr. Dellums, Mr. Dingell, Mr. Swift, Mr. Fields, and Mr. Ford of Michigan

September 18, 1989

Reported from the Committee on Public Works and Transportation with an amendment

[Strike out all after the enacting clause and insert the part printed in italic]

SEPTEMBER 18, 1989

Reported from the Committee on Merchant Marine and Fisheries with an amendment

[Strike out all after the enacting clause and insert the part printed in boldface roman]

SEPTEMBER 18, 1989

Referred to the Committee on Foreign Affairs, the Committee on Interior and Insular Affairs, and the Committee on Science, Space, and Technology for a period ending not later than September 19, 1989, for consideration of such provisions of the bill and of the amendments recommended by the Committee on Merchant Marine and Fisheries and by the Committee on Public Works and Transportation as fall within the jurisdictions of those committees pursuant to clauses 1(i), 1(l), and 1(r) of Rule X, respectively

SEPTEMBER 19, 1989

Committees on Foreign Affairs and Interior and Insular Affairs discharged

SEPTEMBER 19, 1989

Referred to the Committee on Science, Space, and Technology extended for a period ending not later than September 20, 1989

SEPTEMBER 20, 1989

Additional sponsors: Mr. ATKINS, Mr. CLEMENT, Mrs. LOWEY of New York, Mr. CONTE, Mr. ERDREICH, Mr. CHANDLER, Mr. TORRICELLI, Mr. GALLO, Mr. RICHARDSON, Mr. ACKERMAN, Mr. PRICE, Mr. OWENS of New York, Mr. DEFAZIO, Mr. SHAYS, Mr. RINALDO, Mr. DICKS, Mr. DIXON, Mr. SHUMWAY, Mr. WALSH, and Mr. MACHTLEY

SEPTEMBER 20, 1989

Reported from the Committee on Science, Space, and Technology with amendments, committed to the Committee of the Whole House on the State of the Union, and ordered to be printed

[Insert the part printed in boldface italic]

[For text of introduced bill, see copy of bill as introduced on March 16, 1989]

---

# A BILL

To establish limitations on liability for damages resulting from oil pollution, to establish a fund for the payment of compensation for such damages, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

***SECTION 1. SHORT TITLE AND TABLE OF CONTENTS.***

*(a) SHORT TITLE.—This Act may be cited as the "Oil Pollution Prevention, Response, Liability, and Compensation Act of 1989".*

*(b) TABLE OF CONTENTS.—The contents of this Act are as follows:*

*Sec. 1. Short title and table of contents.*

*TITLE I—OIL POLLUTION LIABILITY AND COMPENSATION*

*Sec. 101. Definitions.*
*Sec. 102. Liability.*
*Sec. 103. Uses of the Fund.*
*Sec. 104. Claims procedure.*
*Sec. 105. Designation, notification, and advertisement.*
*Sec. 106. Subrogation.*
*Sec. 107. Financial responsibility.*
*Sec. 108. Litigation, jurisdiction, and venue.*
*Sec. 109. Relationship to other law.*
*Sec. 110. Regulations.*
*Sec. 111. Effective date.*

*TITLE II—PREVENTION AND RESPONSE*

*Sec. 201. Authority to direct responses.*
*Sec. 202. Response plans.*
*Sec. 203. Review and revision of response capability.*
*Sec. 204. Computer listing of emergency response resources and availability of agency data.*
*Sec. 205. Vessel traffic systems.*
*Sec. 206. Navigational aids.*
*Sec. 207. Periodic gauging of plating thickness of commercial vessels.*
*Sec. 208. Overfill and tank level or pressure monitoring devices.*
*Sec. 209. Tanker personnel.*
*Sec. 210. Use of liners.*
*Sec. 211. Modifications to dredges.*
*Sec. 212. Tanker free zones.*
*Sec. 213. Superiority of Federal pilots' licenses.*
*Sec. 214. Research and development program.*
*Sec. 215. Consideration of alcohol abuse.*
*Sec. 216. Access to National Driver Register.*

*TITLE III—IMPLEMENTATION OF INTERNATIONAL CONVENTIONS*

*Sec. 301. Definitions.*
*Sec. 302. Applicability of conventions.*
*Sec. 303. Recognition of International Fund.*
*Sec. 304. Action in United States courts.*
*Sec. 305. Contribution to International Fund.*

*Sec. 306. Recognition of foreign judgments.*
*Sec. 307. Financial responsibility.*
*Sec. 308. Regulations.*

*TITLE IV—MISCELLANEOUS PROVISIONS*

*Sec. 401. Trans-Alaska pipeline fund.*
*Sec. 402. Intervention on the High Seas Act.*
*Sec. 403. Federal Water Pollution Control Act.*
*Sec. 404. Deepwater Port Act.*
*Sec. 405. Outer Continental Shelf Lands Act Amendments of 1978.*
*Sec. 406. Qualified authorizing legislation.*
*Sec. 407. Effective date.*

# *TITLE I—OIL POLLUTION LIABILITY AND COMPENSATION*

## *SEC. 101. DEFINITIONS.*

*For the purposes of this Act—*

*(1) ACT OF GOD.—The term "act of God" means an unanticipated grave natural disaster or other natural phenomenon of an exceptional, inevitable, and irresistible character the effects of which could not have been prevented or avoided by the exercise of due care or foresight.*

*(2) CLAIM.—The term "claim" means a request, made in writing for a sum certain, for compensation for damages or removal costs resulting from an incident.*

*(3) CLAIMANT.—The term "claimant" means any person who presents a claim for compensation under this Act.*

*(4) DAMAGES.—The term "damages" means damages for injury to, destruction of, or loss of natural*

*resources and damages for economic loss specified in section 102(a)(2) of this Act, and includes the cost of assessment of damages.*

*(5) DISCHARGE.—The term "discharge" means any emission (other than natural seepage), intentional or unintentional, and includes spilling, leaking, pumping, pouring, emitting, emptying, or dumping.*

*(6) EXCLUSIVE ECONOMIC ZONE.—The term "exclusive economic zone" means the zone established by Presidential Proclamation Numbered 5030, dated March 10, 1983.*

*(7) FACILITY.—The term "facility" means any structure, group of structures, equipment, or device (other than a vessel) which is used for one or more of the following purposes: exploring for, drilling for, producing, storing, handling, transferring, processing, or transporting oil. Such term includes any motor vehicle, rolling stock, or pipeline used for one or more such purposes.*

*(8) FOREIGN OFFSHORE UNIT.—The term "foreign offshore unit" means a facility which is located, in whole or in part, in the territorial sea or on or over the continental shelf of a foreign country.*

*(9) FUND.—The term "Fund" means the Oil Spill Liability Trust Fund established by section 9509 of the Internal Revenue Code of 1986.*

*(10) GROSS TON.—The term "gross ton" means tonnage measured in accordance with the provisions of the International Convention on Tonnage Measurement of Ships, 1969.*

*(11) GUARANTOR.—The term "guarantor" means any person, other than the responsible party, who provides evidence of financial responsibility for a responsible party under this Act.*

*(12) INCIDENT.—The term "incident" means any occurrence or series of occurrences having the same origin, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge or substantial threat of discharge of oil.*

*(13) INDIAN TRIBE.—The term "Indian tribe" means any Indian tribe, band, nation, or other organized group or community, but not including any Alaska Native regional or village corporation, which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians.*

*(14) LESSEE.—The term "lessee" means a person holding a leasehold interest in an oil or gas*

*lease on lands beneath navigable waters (as such term is defined in section 2(a) of the Submerged Lands Act (43 U.S.C. 1301(a)) or on submerged lands of the Outer Continental Shelf, granted or maintained under applicable State law or the Outer Continental Shelf Lands Act.*

*(15) MOBILE OFFSHORE DRILLING UNIT.—The term "mobile offshore drilling unit" means a vessel (other than a self-elevating lift vessel) capable of use as an offshore facility.*

*(16) NATIONAL CONTINGENCY PLAN.—The term "national contingency plan" means the national contingency plan published under section 311(c) of the Federal Water Pollution Control Act and revised pursuant to section 105 of the Comprehensive Environmental Response, Compensation, and Liability Act.*

*(17) NATURAL RESOURCES.—The term "natural resources" includes land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the exclusive economic zone), any State or local government or Indian tribe, or any foreign government.*

*(18) NAVIGABLE WATERS.—The term "navigable waters" means the waters of the United States, including the territorial sea.*

*(19) OFFSHORE FACILITY.—The term "offshore facility" means—*

*(A) a facility which is located, in whole or in part, on lands beneath navigable waters (as such term is defined in section 2(a) of the Submerged Lands Act (43 U.S.C. 1301(a))) or on the Outer Continental Shelf (as defined in section 2 of the Outer Continental Shelf Lands Act); and*

*(B) a deepwater port licensed under the Deepwater Port Act of 1974.*

*(20) OIL.—The term "oil" means petroleum, including crude oil or any fraction or residue therefrom.*

*(21) ONSHORE FACILITY.—The term "onshore facility" means any facility (excluding any offshore facility) any portion of which is located in, on, or under any land within the United States.*

*(22) OWNER.—The term "owner" means any person holding title to, or in the absence of title any other indicia of ownership of (whether by lease, permit, contract, license, or other form of agreement), a vessel or facility; except that such term does not include a person who, without participating in the management*

*or operation of a vessel or facility, holds indicia of ownership primarily to protect a security interest therein.*

*(23) PERSON.—The term "person" means an individual, corporation, partnership, association, Federal agency, State, municipality, commission, or political subdivision of a State, or any interstate body.*

*(24) PERMITTEE.—The term "permittee" means a person holding an authorization, license, or permit for geological exploration issued under section 11 of the Outer Continental Shelf Lands Act or applicable State law.*

*(25) PUBLIC VESSEL.—The term "public vessel" means a vessel owned or bareboat chartered and operated by the United States, or by a State or political subdivision thereof, or by a foreign nation, except when such vessel is engaged in commerce.*

*(26) REMOVE; REMOVAL.—The term "remove" or "removal" refers to removal of the oil from the water and shorelines or the taking of such other actions as may be necessary to minimize or mitigate damage to the public health or welfare, including damage to fish, shellfish, wildlife, and public and private property, shorelines, and beaches.*

*(27) REMOVAL COSTS.—The term "removal costs" means the costs of removal taken after a discharge of oil has occurred, including all costs of completing removal and the costs to prevent, minimize, or mitigate oil pollution where there was a substantial threat of a discharge of oil including costs incurred under subsection (c), (d), (e), or (l) of section 311 of the Federal Water Pollution Control Act, the Intervention on the High Seas Act, or section 18 of the Deepwater Port Act of 1974.*

*(28) RESPONSIBLE PARTY.—The term "responsible party" means the following:*

*(A) VESSELS.—In the case of a vessel, any person owning, operating, or chartering by demise the vessel.*

*(B) FACILITIES.—In the case of a facility (including a pipeline but not including any other offshore facility), any person owning or operating the facility; except that such term does not include a Federal agency, State, municipality, commission, or political subdivision of a State, or any interstate body, that, as the owner of an onshore facility, transfers possession and right to use the property to another person by lease, assignment, or permit.*

*(C) OFFSHORE FACILITIES.—In the case of an offshore facility (other than a pipeline or a deepwater port licensed under the Deepwater Port Act of 1974), the lessee or permittee of the area in which the facility is located or the holder of a right of use and easement granted under applicable State law or the Outer Continental Shelf Lands Act for the area in which the facility is located (if the holder is a different person than the lessee or permittee).*

*(D) DEEPWATER PORTS.—In the case of a deepwater port licensed under the Deepwater Port Act of 1974, the licensee.*

*(E) ABANDONMENT.—In the case of an abandoned vessel, onshore facility, or offshore facility, the persons who were, or would have been, responsible parties immediately prior to the abandonment of the vessel or facility.*

*(29) SECRETARY.—The term "Secretary" means the Secretary of Transportation.*

*(30) TANKER.—The term "tanker" means a vessel constructed or adapted for the carriage of oil in bulk or in commercial quantities as cargo; except that the term does not include a non-self-propelled vessel of less than 3,000 gross tons carrying oil in bulk as cargo*

*or in residue from cargo and operating on waters of the United States lying inside the baseline from which the territorial sea is measured or on waters outside such baseline which are part of the Gulf Intracoastal Waterway.*

*(31) UNITED STATES; STATE.—The term "United States" and "State" mean the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the United States Virgin Islands, the Commonwealth of the Northern Marianas, and any other territory or possession over which the United States has jurisdiction.*

*(32) VESSEL.—The term "vessel" means every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water other than a public vessel.*

***SEC. 102. LIABILITY.***

*(a) ELEMENTS OF LIABILITY.—*

*(1) JOINT, SEVERAL, AND STRICT LIABILITY.—Notwithstanding any other provision of law and subject to the provisions of this section, the responsible party for a vessel or a facility from which oil is discharged, or which poses a substantial threat of a discharge of oil, into or upon the navigable waters or ad-*

*joining shorelines or the waters of the exclusive economic zone is jointly, severally, and strictly liable for the removal costs specified in paragraph (2) which arise out of or directly result from such incident and for the damages specified in paragraph (2) which are proximately caused by such incident.*

*(2) COVERED REMOVAL COSTS AND DAMAGES.—*

*(A) REMOVAL COSTS.—The removal costs referred to in paragraph (1)—*

*(i) are removal costs for removal actions taken by the United States, a State, or an Indian tribe which are not inconsistent with the national contingency plans; and*

*(ii) are removal costs for removal actions taken by any other person which are consistent with the national contingency plan.*

*Such costs shall be recoverable by any claimant.*

*(B) DAMAGES.—The damages referred to in paragraph (1) are the following:*

*(i) NATURAL RESOURCES.—Damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss.*

*Such damages shall be recoverable by the following: a United States trustee, a State trustee, and an Indian tribe trustee.*

*(ii) REAL OR PERSONAL PROPERTY.—Damages for injury to, or economic losses resulting from destruction of, real or personal property. Such damages shall be recoverable by a claimant who owns or leases such property.*

*(iii) SUBSISTENCE USE.—Damages for loss of subsistence use of natural resources. Such damages shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost.*

*(iv) REVENUES.—Damages equal to the net loss of taxes, royalties, rents, fees, or net profits shares, for a period not to exceed 2 years, due to the injury, destruction, or loss of real property, personal property, or natural resources. Such damages shall be recoverable by the Government of the United States, a State, or a political subdivision thereof.*

*(v) PROFITS AND EARNING CAPACITY.—Damages equal to the loss of profits or*

*impairment of earning capacity (based on prior profits and earnings) due to the injury, destruction, or loss of real property, personal property, or natural resources. Such damages shall be recoverable by any claimant who derives at least 25 percent of his or her earnings from activities which utilize such property or natural resources, or, if such activities are seasonal in nature, 25 percent of his or her earnings during the applicable season.*

*(3) EXCLUDED DISCHARGES.—Paragraph (1) shall not apply to any discharge authorized by a permit issued under Federal, State, or local law.*

*(4) LIABILITY OF THIRD PARTIES.—*

*(A) IN GENERAL.—In any case in which the responsible party for a vessel or facility establishes that a discharge and the resulting removal costs and damages were caused solely by an act or omission of 1 or more third parties described in subsection (b)(1)(B) (or by such an act or omission in combination with an act of God or an act of war), the third party or parties shall be treated as the responsible party or parties for purposes of determining liability under this Act.*

*(B) LIMITATION APPLIED.—*

*(i) OWNER OR OPERATOR OF VESSEL OR FACILITY.—If the third party or parties are the owner or operator of a vessel or facility which caused the incident, the liability of the third party or parties shall be subject to the limits provided in subsection (c) as applied with respect to such vessel or facility.*

*(ii) OTHER CASES.—In any case other than the one described in clause (i), the liability of the third party or parties shall not exceed the limitation which would have been applicable to the responsible party of the vessel or facility from which the discharge actually occurred if such responsible party were liable.*

*(5) DIVISION OF RESPONSIBILITY FOR DISCHARGES OF MOBILE OFFSHORE DRILLING UNITS.—*

*(A) TREATED FIRST AS A TANKER.—For purposes of determining the responsible party and applying this Act, a mobile offshore drilling unit which is being used as an offshore facility shall be treated as a tanker with respect to the discharge, or the substantial threat of a discharge, of*

*oil on or above the surface of the water, except as provided in subparagraph (B).*

*(B) TREATED AS A FACILITY FOR EXCESS LIABILITY.—To the extent that removal costs and damages from an incident described in subparagraph (A) exceed the amount for which the responsible party is liable under subparagraph (A) (as such amount may be limited under subsection (c)(1)(A)), the mobile offshore drilling unit shall be treated as an offshore facility. For purposes of applying subsection (c)(1)(C), the amount specified in such subsection shall be reduced by the amount for which the responsible party is liable pursuant to subparagraph (A).*

*(b) DEFENSES TO LIABILITY.—*

*(1) COMPLETE DEFENSES.—Except when the responsible party has failed or refused to report the incident where required by law and the responsible party knows or has reason to know of the incident, there is no liability under subsection (a) for the incident if the responsible party establishes that the incident—*

*(A) resulted from an act of God, an act of war, hostilities, civil war, or insurrection; or*

*(B) was solely caused by an act or omission of 1 or more persons other than—*

*(i) a responsible party;*

*(ii) an employee or agent of a responsible party; or*

*(iii) one whose act or omission occurs in connection with a contractual relationship with a responsible party.*

*(2) DEFENSES AS TO PARTICULAR CLAIMANTS.—There is no liability under subsection (a)—*

*(A) as to a claimant, if the incident is caused, in whole or in part, by the gross negligence or willful misconduct of the claimant; or*

*(B) as to a claimant, to the extent that the incident is caused by the negligence of the claimant.*

*(c) LIMITS ON LIABILITY.—*

*(1) GENERAL RULE.—The total of the liability of a responsible party under subsection (a) and any removal costs incurred by, or on behalf of, the responsible party with respect to each incident shall not exceed—*

*(A) $500 per gross ton or $5,000,000, whichever is greater (but not to exceed $150,000,000), for any tanker;*

*(B) $300 per gross ton or $500,000, whichever is greater, for any other vessel; or*

*(C) $75,000,000 for any facility.*

*(2) EXCEPTIONS.—*

*(A) PROXIMATE CAUSE.—Paragraph (1) shall not apply if the incident was proximately caused by—*

*(i) willful misconduct or gross negligence within the privity or knowledge of the responsible party; or*

*(ii) a violation, within the privity or knowledge of the responsible party, of applicable Federal safety, construction, or operating regulations.*

*(B) FAILURE OR REFUSAL OF RESPONSIBLE PARTY.—Paragraph (1) shall not apply if the responsible party fails or refuses—*

*(i) to report the incident where required by law and the responsible party knows or has reason to know of the incident;*

*(ii) to provide all reasonable cooperation and assistance requested by a responsible official in connection with removal activities; or*

*(iii) without sufficient cause, to comply with an order issued under section 311(e) of the Federal Water Pollution Control Act.*

*(3) ADJUSTING LIMITS OF LIABILITY.—*

*(A) FACILITIES.—*

*(i) GENERAL RULE.—The Secretary is authorized to establish, by regulation, with respect to any class or category of facility (excluding an offshore facility but including a deepwater port, as defined in section 3 of the Deepwater Port Act of 1974) a maximum limit of liability under this section of less than $75,000,000, but not less than $8,000,000, taking into account the size, storage capacity, oil throughput, proximity to sensitive areas, type of oil handled, history of discharges, and other factors relevant to risks posed by the class or category of facility.*

*(ii) PERIODIC REPORTS.—The Secretary shall, within 6 months after the date of the enactment of this Act and from time to time thereafter, report to Congress on the desirability of adjusting the limits of liability specified in paragraph (1) of this subsection.*

*(B) VESSELS.—*

*(i) STUDY.—The Secretary shall conduct a study of the relative operational and environmental risks posed by the transportation of oil by vessel to deepwater ports (as*

*defined in section 3 of the Deepwater Port Act of 1974) versus the transportation of oil by vessel to other ports. Such study shall include a review and analysis of offshore lightering practices used in connection with such transportation, an analysis of the volume of oil transported by vessel using such practices, and an analysis of the frequency and volume of oil discharges which occur in connection with the use of such practices.*

*(ii) REPORT.—Not later than 1 year after the date of the enactment of this Act, the Secretary shall submit to Congress a report on the results of the study conducted under this subparagraph.*

*(iii) RULEMAKING PROCEEDING.—If the Secretary determines, based on the results of the study conducted under this subparagraph, that the use of deepwater ports in connection with the transportation of oil by vessel results in a lower operational or environmental risk than the use of other ports in connection with such transportation, the Secretary shall initiate, not later than the 180th day following the date of submission of the*

*report to Congress under this subparagraph, a rulemaking proceeding to lower the limits of liability under this section with respect to vessels transporting oil to deepwater ports and with respect to such ports and may lower such limits of liability as the Secretary determines appropriate but with respect to such ports only in accordance with subparagraph (A).*

*(d) LIABILITY FOR INTEREST.—*

*(1) GENERAL RULE.—The responsible party or his or her guarantor shall be liable to a claimant for interest on the amount paid in satisfaction of a claim under this section for the period described in paragraph (2).*

*(2) PERIOD.—*

*(A) IN GENERAL.—Except as provided in subparagraph (B), the period for which interest shall be paid under paragraph (1) is the period beginning on the 30th day following the date on which the claim is presented to the responsible party or guarantor and ending on the date on which the claim is paid.*

*(B) EXCLUSION OF PERIOD DUE TO OFFER BY GUARANTOR.—If the guarantor offers to the*

*claimant an amount equal to or greater than that finally paid in satisfaction of the claim, the period described in subparagraph (A) shall not include the period beginning on the date such offer is made and ending on the date such offer is accepted. If such offer is made within 60 days after the date upon which the claim is presented pursuant to section 104(a), the period described in subparagraph (A) shall not include any period before such offer is accepted.*

*(C) EXCLUSION OF PERIODS IN INTEREST OF JUSTICE.—If, in any period, a claimant is not paid due to reasons beyond the control of the responsible party or because it would not serve the interest of justice, no interest shall accrue under this subsection during such period.*

*(D) CALCULATION OF INTEREST.—The interest paid under this subsection shall be calculated at the average of the highest rate for commercial and finance company paper of maturities of 180 days or less obtaining on each of the days included within the period for which interest must be paid to the claimant, as published in the Federal Reserve bulletin.*

*(E) INTEREST NOT SUBJECT TO LIABILITY LIMITS.—Interest under this paragraph shall be in addition to damages for which claims may be asserted under section 102 and shall be paid without regard to any limitation of liability under subsection (c) of this section. The payment of interest under this subsection by a guarantor shall be subject to section 107(e).*

*(e) NATURAL RESOURCES.—*

*(1) LIABILITY.—In the case of an injury to, destruction of, or loss of natural resources under this section, liability shall be—*

*(A) to the United States Government for natural resources belonging to, managed by, controlled by, or appertaining to the United States,*

*(B) to any State for natural resources within the State or belonging to, managed by, controlled by, or appertaining to such State,*

*(C) to any Indian tribe for natural resources belonging to, managed by, controlled by, or appertaining to such Indian tribe, and*

*(D) in any case in which subsection (f) of this section (relating to recovery by foreign claimants) applies, to the government of a foreign coun-*

*try for natural resources belonging to, managed by, controlled by, or appertaining to such country.*

*(2) DESIGNATION OF TRUSTEES.—*

*(A) IN GENERAL.—The President, or the authorized representative of any State, Indian tribe, or foreign government, shall act on behalf of the public or Indian tribe as trustee of the natural resources to recover damages to the natural resources.*

*(B) FEDERAL TRUSTEES.—The President shall designate the Federal officials who shall act on behalf of the public as trustees for natural resources under this Act.*

*(C) STATE TRUSTEES.—The Governor of each State shall designate State and local officials who may act on behalf of the public as trustee for natural resources under this Act and shall notify the President of such designation.*

*(D) INDIAN TRIBE TRUSTEES.—The governing body of any Indian tribe shall designate tribal officials who may act on behalf of the tribe or its members as trustee for natural resources under this Act and shall notify the President of such designation.*

*(3) FUNCTIONS OF TRUSTEES.—*

*(A) FEDERAL TRUSTEES.—The officials designated under paragraph (2)(B)—*

*(i) shall assess damages for injury to, destruction of, or loss of natural resources for purposes of this Act for the natural resources under their trusteeship;*

*(ii) may, upon request of and reimbursement from a State or Indian tribe and at the Federal officials' discretion, assess damages for the natural resources under the State's or tribe's trusteeship; and*

*(iii) shall develop and implement a plan for the restoration, rehabilitation, replacement, or acquisition of the equivalent, of the natural resources under their trusteeship.*

*(B) STATE TRUSTEES.—The officials designated under paragraph (2)(C)—*

*(i) shall assess damages to natural resources for the purposes of this Act for the natural resources under their trusteeship; and*

*(ii) shall develop and implement a plan for the restoration, rehabilitation, replace-*

*ment, or acquisition of the equivalent, of the natural resources under their trusteeship.*

*(C) INDIAN TRIBE TRUSTEES.—The officials designated under paragraph (2)(D)—*

*(i) shall assess damages to natural resources for the purposes of this Act for the natural resources under their trusteeship; and*

*(ii) shall develop and implement a plan for the restoration, rehabilitation, replacement, or acquisition of the equivalent, of the natural resources under their trusteeship.*

*(D) NOTICE AND OPPORTUNITY TO BE HEARD.—Plans shall be developed and implemented under subparagraphs (A)(iii), (B)(ii), and (C)(ii) only after adequate public notice, opportunity for a hearing, and consideration of all public comment.*

*(4) MEASURE OF DAMAGES.—*

*(A) IN GENERAL.—The measure of damages in any action under this section for injury to, destruction of, or loss of natural resources shall be—*

*(i) the costs of restoring, rehabilitating, replacing, or acquiring the equivalent of, the damaged natural resources; and*

*(ii) the value of the lost public uses of such resources in the period beginning on the date the damage occurs and ending on (I) the date such resources are restored, rehabilitated, or replaced or the equivalent is acquired, or (II) the date on which it is determined that such resources cannot be restored, rehabilitated, or replaced or no equivalent can be acquired.*

*(B) DETERMINE COSTS WITH RESPECT TO PLANS.—Costs shall be determined under subparagraph (A) with respect to plans adopted under paragraph (3) (A), (B), and (C).*

*(C) NO DOUBLE RECOVERY.—There shall be no double recovery under this Act for natural resource damages, including the costs of damage assessment or restoration, rehabilitation, replacement, or acquisition for the same incident and natural resource.*

*(5) DAMAGE ASSESSMENT REGULATIONS AND STUDY.—*

*(A) REGULATIONS.—Not later than 2 years after the date of the enactment of this Act, the President shall issue regulations, consistent with paragraph (4)(A), for the assessment of damages to natural resources arising out of an incident.*

*(B) REBUTTABLE PRESUMPTION.—Any determination or assessment of damages to natural resources for the purposes of this Act made pursuant to paragraph (4)(A)(i) by a Federal, State, or Indian tribe trustee in accordance with the regulations issued under subparagraph (A) shall have the force and effect of a rebuttable presumption on behalf of the trustee in any administrative or judicial proceeding under this Act.*

*(C) STUDY.—The President shall conduct a study of techniques and methods of valuing natural resource damages. Not later than 1 year after the date of the enactment of this Act, the President shall transmit to Congress a report on the results of such study.*

*(6) USE OF RECOVERED SUMS.—Sums recovered under this Act by a Federal, State, or Indian tribe trustee for damages to natural resources shall be retained by the trustee for use only to reimburse or pay costs incurred by the trustee under paragraph (3) with*

*respect to the damaged natural resources. Any amounts in excess of those required for these reimbursements and costs shall be deposited in the Fund.*

*(7) CIVIL PENALTY.—*

*(A) IN GENERAL.—Any responsible party liable under this section for damages resulting from a discharge of oil shall be subject to a civil penalty not to exceed the greater of $1,000,000 or ½ of the responsible party's liability under this section if the discharge results in damages to natural resources which cannot be restored, rehabilitated, or replaced and for which no equivalent can be acquired.*

*(B) ASSESSMENT, SETTLEMENT, AND COLLECTION.—The President or authorized representative of a State or Indian tribe, acting under this section as trustee, may request the Attorney General to bring an action in court to recover from the responsible party a civil penalty under this paragraph. In determining the amount of a civil penalty under this paragraph, the court shall consider the nature and extent of the damages to natural resources, the value of the natural resources, the degree of culpability of the person held liable for the discharge, and the nature and*

*extent of efforts taken by the person to prevent and mitigate damages to natural resources and to restore damaged natural resources.*

*(C) SEPARATE LIABILITY.—Except as provided in section 302, any liability for a civil penalty under this paragraph shall be separate from and in addition to any liability for a discharge of oil under this section.*

*(D) PAYMENT TO TRUSTEE FOR ECOSYSTEM ENHANCEMENT.—Subject to appropriation Acts, sums received under this paragraph shall be paid to the trustee to be used for the general enhancement of the ecosystem of which the destroyed natural resources were a part for the purpose of restoring and maintaining the chemical, physical, and biological integrity of such ecosystem.*

*(f) RECOVERY BY FOREIGN CLAIMANTS.—*

*(1) IN GENERAL.—A foreign claimant may recover removal costs and damages under this Act only in accordance with this subsection.*

*(2) COVERED DISCHARGES.—A foreign claimant may recover only if the discharge of oil was from—*

*(A) a facility,*

*(B) a vessel in the navigable waters of the United States, or*

*(C) a tanker carrying oil originally received at the terminal of the pipeline constructed under the Trans-Alaska Pipeline Authorization Act for transportation to a port in the United States and the incident occurred prior to delivery to such port,*

*and resulted in the presence of oil in or on the territorial sea, internal waters, or adjacent shoreline of a foreign country.*

*(3) REQUIREMENTS.—A foreign claimant may recover only if—*

*(A) the claimant first seeks compensation under title III;*

*(B) the claimant has not been otherwise compensated for the removal costs or damages; and*

*(C) recovery is authorized by a treaty or executive agreement between the United States and the claimant's country, or the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants.*

*(4) EXCEPTION FOR CANADIAN CLAIMANTS RESPECTING TRANS-ALASKA PIPELINE OIL.—Paragraph (3)(C) shall not apply with respect to recovery by a*

*resident of Canada in the case of an incident described in paragraph (2)(C).*

*(5) FOREIGN CLAIMANT DEFINED.—For purposes of this subsection, the term "foreign claimant" means any person residing in a foreign country, the government of a foreign country, or any agency or political subdivision of a foreign country.*

*(g) RECOVERY OF REMOVAL COSTS AND DAMAGES BY RESPONSIBLE PARTY.—*

*(1) IN GENERAL.—The responsible party for a vessel or facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, may assert a claim for removal costs and damages under subsection (a) only if the responsible party establishes that—*

*(A) the responsible party is entitled to a defense to liability under subsection (b), or*

*(B) the responsible party is entitled to a limitation of liability under subsection (c).*

*(2) EXTENT OF RECOVERY.—A responsible party who is entitled to a limitation of liability may assert a claim under paragraph (1) of subsection (a) only to the extent that the sum of the removal costs and damages incurred by the responsible party plus the amounts paid by the responsible party or by the guarantor on*

*behalf of the responsible party for claims asserted under subsection (a) exceeds the amount to which the total of the liability under subsection (a) and removal costs and damages incurred by, or on behalf of, the responsible party is limited under subsection (c).*

*(h) CONTRIBUTION.—A person may bring an action for contribution against any other person who is liable or potentially liable under this section. Such an action shall be brought in accordance with section 108.*

*(i) INDEMNIFICATION AGREEMENTS.—*

*(1) IN GENERAL.—No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer any liability imposed under this section from any responsible party for any vessel or facility or from any person who may be liable for an incident under this section to any other person. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.*

*(2) RELATIONSHIP TO OTHER CAUSES OF ACTION.—Nothing in this Act, including the provisions of paragraph (1) of this subsection, shall bar a cause of action that a responsible party subject to liability under this section, or a guarantor, has or would*

*have, by reason of subrogation or otherwise against any person.*

*(j) CONSULTATION ON REMOVAL ACTIONS.—The Secretary shall consult with the affected trustees designated under section 102(e)(2) on the appropriate removal action to be taken in connection with any discharge of oil. Removal with respect to any discharge shall be considered completed when so determined by the Secretary in consultation with the Governor or Governors of the affected State or States and in accordance with the national contingency plan.*

***SEC. 103. USES OF THE FUND.***

*(a) IN GENERAL.—*

*(1) USES.—The Fund shall be available to the Secretary for—*

*(A) the payment of removal costs, and the costs of monitoring removal actions, incurred by Federal authorities;*

*(B) the costs incurred by Federal, State or Indian tribe trustees in carrying out their functions under section 102(e) for assessing damages to natural resources and for developing and implementing plans for the restoration, rehabilitation, replacement, or acquisition of the equivalent, of damaged resources;*

*(C) the payment of obligations under subsection (e) of this section;*

*(D) the payment of removal costs and damages resulting from the discharge, or substantial threat of discharge, of oil from a foreign offshore unit;*

*(E) the payment of personnel, equipment, and training costs associated with the maintenance of the strike forces authorized under section 311(c) of the Federal Water Pollution Control Act;*

*(F) the payment of administrative and personnel costs and expenses reasonably necessary for and incidental to the implementation and administration of this Act; and*

*(G) the payment of contributions to the International Fund under title III of this Act.*

*(2) SETTLEMENT OF CLAIMS.—The Fund shall also be available to the Secretary for the payment of otherwise uncompensated claims for removal costs and damages in accordance with section 104.*

*(b) DEFENSES TO LIABILITY FOR THE FUND.—The Fund shall not be available to pay any claim for removal costs or damages—*

*(1) to a claimant if the incident or economic loss is caused, in whole or in part, by the gross negligence or willful misconduct of the claimant; or*

*(2) to a claimant to the extent that the incident or economic loss is caused by the negligence of the claimant.*

*(c) MAXIMUM AMOUNT PAYABLE FROM FUND.—The maximum amount which may be paid from the Fund with respect to any incident in combination with payment, if any, under the International Convention on the Establishment of an International Fund for Compensation of Oil Pollution Damage, 1984 shall not exceed $1,000,000,000. The President may increase the maximum amount with respect to the incident if the President determines that such increase is necessary and in the best interests of the United States. The authority granted the President under this subsection may not be delegated.*

*(d) FEDERAL AND STATE OFFICIALS WHO MAY OBLIGATE FROM THE FUND.—The Secretary is authorized to issue regulations designating 1 or more Federal officials who may obligate money in the Fund in accordance with subsection (a) of this section or portions thereof. The Secretary shall designate the Commandant of the Coast Guard to be a Federal official who may obligate money in the Fund in accordance with subsection (a). The Secretary is also author-*

*ized to delegate authority to obligate money in the Fund or to settle claims to officials of a State with an adequate program operating under a cooperative agreement with the Federal Government.*

*(e) OBLIGATION OF THE FUND BY STATE OFFICIALS.—*

*(1) AUTHORITY.—In accordance with regulations issued under this subsection, the Governor of each State, or any appropriate State official designated by the Governor, is authorized to obligate the Fund for payment in an amount not to exceed $250,000 for removal costs not inconsistent with the national contingency plan required for the immediate response to an incident.*

*(2) NOTIFICATION.—A Governor or designee exercising the authority granted by this subsection shall notify the Secretary within 24 hours after any obligation of a payment from the Fund.*

*(3) REGULATIONS.—Not later than 6 months after the date of the enactment of this Act, the Secretary shall publish proposed regulations detailing the manner in which the authority to obligate the Fund and to enter into agreements under this subsection is to be exercised, and, not later than 3 months after the last*

*day of the comment period on such proposed regulations, the Secretary shall issue the regulations.*

*(f) RIGHTS OF SUBROGATION.—Payment of any claim by the Fund under this Act shall be subject to the United States Government acquiring by subrogation all rights of the claimant to recover from the responsible party.*

*(g) AUDIT.—The Comptroller General shall provide an audit review team to audit all payments, obligations, reimbursements, or other uses of the Fund to assure that the Fund is being properly administered and that claims are being appropriately and expeditiously considered. The Comptroller General shall submit to Congress an interim report 1 year after the date of the establishment of the Fund. The Comptroller General shall thereafter provide such auditing of the Fund as is appropriate. Each Federal agency shall cooperate with the Comptroller General in carrying out this subsection.*

*(h) PERIOD OF LIMITATIONS FOR CLAIMS.—*

*(1) REMOVAL COSTS.—No claim may be presented under this section for recovery of removal costs with respect to an incident unless the claim is presented within 3 years after the date of completion of all removal action with respect to the incident.*

*(2) DAMAGES.—No claim may be presented under this section for recovery of damages with respect to an incident unless the claim is presented within 3*

*years after the date on which the loss and its connection with the incident were reasonably discoverable with the exercise of due care or, in the case of damages to natural resources under section 102(a)(2), if later, the date on which final regulations are issued under section 102(e)(5).*

*(i) LIMITATION ON PAYMENT FOR SAME COSTS.—Where the Secretary has paid an amount out of the Fund for any costs or damages specified under subsection (a), no other claim may be paid out of the Fund for the same costs or damages.*

*(j) OBLIGATION IN ACCORDANCE WITH PLAN.—*

*(1) IN GENERAL.—Except as provided in paragraph (2), amounts may be obligated from the Fund for the restoration, rehabilitation, replacement, or acquisition of the equivalent of, natural resources only in accordance with a plan adopted under section 102(e)(3).*

*(2) EXCEPTION.—Paragraph (1) shall not apply in a situation requiring action to avoid irreversible loss of natural resources or to prevent or reduce any continuing danger to natural resources or similar need for emergency action.*

***SEC. 104. CLAIMS PROCEDURE.***

*(a) PRESENTATION TO RESPONSIBLE PARTY OR GUARANTOR.—Except as provided in subsection (b), all claims for removal costs or damages shall be presented first to the responsible party or the responsible party's guarantor for the source designated under section 105(a).*

*(b) PRESENTATION TO FUND.—Claims for removal costs or damages may be presented first to the Fund—*

*(1) in any case in which the Secretary has advertised or otherwise notified claimants in accordance with section 105(c);*

*(2) by a responsible party who may assert a claim under section 102(g);*

*(3) by the Governor of a State for removal costs incurred by the State; or*

*(4) by a United States claimant in a case in which a foreign offshore unit has discharged oil causing damage for which the Fund is liable under section 103(a)(1)(D).*

*(c) ELECTION.—If a claim is presented in accordance with subsection (a) and—*

*(1) each person to whom the claim is presented denies all liability for the claim, or*

*(2) the claim is not settled by any person by payment within 180 days after the date on which (A) the*

*claim was presented, or (B) advertising was begun pursuant to section 105(b), whichever is later,*

*the claimant may elect to commence an action in court against the responsible party or guarantor or to present the claim to the Fund.*

*(d) UNCOMPENSATED DAMAGES.—If a claim is presented in accordance with subsection (a) and full and adequate compensation is unavailable, either because the claim exceeds a limit of liability under section 102 or because the responsible party and his guarantor are financially incapable of meeting or unwilling to meet their obligations in full, a claim for the uncompensated damages may be presented to the Fund.*

*(e) PROCEDURE FOR CLAIMS AGAINST THE FUND.—The Secretary shall issue, and may from time to time amend, regulations for the presentation, filing, processing, settlement, and adjudication of claims under this Act against the Fund.*

***SEC. 105. DESIGNATION, NOTIFICATION, AND ADVERTISEMENT.***

*(a) DESIGNATION OF SOURCE AND NOTIFICATION.—After receiving information of an incident, the Secretary shall, where possible and appropriate, designate the source or sources of the discharge. If a designated source is a vessel or a facility, the Secretary shall immediately notify the responsible party and the responsible party's guarantor, if known, of such designation.*

*(b) ADVERTISEMENT BY THE RESPONSIBLE PARTY OR GUARANTOR.—If a responsible party or guarantor does not inform the Secretary, within 5 days after receiving notification of a designation under subsection (a), of his or her denial of the designation, such party or guarantor shall advertise the designation and the procedures by which claims may be presented to such party or guarantor, in accordance with regulations issued by the Secretary. Advertisement under the preceding sentence shall begin no later than 15 days after the date of the designation made under subsection (a). If advertisement is not otherwise made in accordance with this subsection, the Secretary shall promptly and at the expense of the responsible party or the guarantor, advertise the designation and the procedures by which claims may be presented to the responsible party or guarantor. Advertisement under this subsection shall continue for a period of no less than thirty days.*

*(c) ADVERTISEMENT BY THE SECRETARY.—If—*

*(1) the responsible party and the guarantor both deny a designation within 5 days after receiving notification of a designation under subsection (a),*

*(2) the source of the oil discharge was a public vessel, or*

*(3) the Secretary is unable to designate the source or sources of the oil discharge under subsection (a),*

*the Secretary shall advertise or otherwise notify potential claimants of the procedures by which claims may be presented to the Fund.*

***SEC. 106. SUBROGATION.***

*(a) IN GENERAL.—Any person, including the Fund, who pays compensation pursuant to this Act to any claimant for costs or damages shall be subrogated to all rights, claims, and causes of action which the claimant has under this Act.*

*(b) ACTIONS ON BEHALF OF THE FUND.—Upon request of the Secretary, the Attorney General shall commence an action on behalf of the Fund to recover any compensation paid by the Fund to any claimant pursuant to this Act, and all costs incurred by the Fund allocable to the claim, including prejudgment and other interest, administrative and adjudicative costs, and attorney's fees. Such an action may be commenced against any responsible party or (subject to section 107(e)) guarantor, or against any other person who is liable, pursuant to any law, to the compensated claimant or to the Fund, for the cost or damages for which the compensation was paid. Such an action shall be commenced against the responsible foreign government or other responsible party to recover any removal costs or damages paid from the Fund as the result of the discharge, or substantial threat of discharge, of oil from a foreign offshore unit.*

***SEC. 107. FINANCIAL RESPONSIBILITY.***

*(a) VESSELS.—*

*(1) REQUIREMENT.—The responsible party for—*

*(A) any vessel over 300 gross tons (except a non-self-propelled vessel which does not carry oil as cargo or fuel) using any port or place in the United States or the navigable waters, or*

*(B) any vessel using the waters of the exclusive economic zone to transship or lighter oil destined for a port or place subject to the jurisdiction of the United States,*

*shall establish and maintain, in accordance with regulations issued by the Secretary, evidence of financial responsibility sufficient to meet the maximum amount of liability to which, in the case of a tanker, the responsible party could be subjected under section 102(c)(1)(A) of this Act, or to which, in the case of any other vessel, the responsible party could be subjected under section 102(c)(1)(B) of this Act, in any case in which the responsible party would be entitled to limit liability under such section. If the responsible party owns or operates more than one vessel, evidence of financial responsibility need be established only to meet the maximum liability applicable to the largest of such vessels.*

*(2) WITHHOLDING CLEARANCE.—The Secretary of the Treasury shall withhold or revoke the clearance required by section 4197 of the Revised Statutes of the United States (46 U.S.C. App. 91) of any vessel subject to this subsection that does not have the certification required under this subsection.*

*(3) DENYING ENTRY AND DETAINING VESSELS.—The Secretary may (A) deny entry to any offshore facility or any port or place in the United States or to the navigable waters, or (B) detain at such a facility or port or place, any vessel which, upon request, does not produce the certification required under this subsection or the regulations issued under this subsection.*

*(b) OFFSHORE FACILITIES.—Each responsible party with respect to an offshore facility shall establish and maintain evidence of financial responsibility sufficient to meet the maximum amount of liability to which the responsible party could be subjected under section 102 in any case in which the responsible party would be entitled to limit liability under section 102. In any case in which a person is the responsible party for more than one facility subject to this subsection, evidence of financial responsibility need be established only to meet the maximum liability applicable to one such facility.*

*(c) METHODS OF FINANCIAL RESPONSIBILITY.—Financial responsibility under this section may be established by any one or any combination of the following methods which the Secretary determines to be acceptable: evidence of insurance, surety bond, guarantee, letter of credit, qualification as a self-insurer, or other evidence of financial responsibility. Any bond filed shall be issued by a bonding company authorized to do business in the United States. In establishing requirements under this section, the Secretary is authorized to specify policy or other contractual terms, conditions, or defenses which are necessary, or which are unacceptable, in establishing evidence of financial responsibility in order to effectuate the purposes of this Act.*

*(d) CLAIMS AGAINST GUARANTOR.—Any claim for which liability may be established under section 102 against a responsible party may be asserted directly against any guarantor providing evidence of financial responsibility for such responsible party. In defending against such a claim, the guarantor may invoke all rights and defenses which would be available to the responsible party under section 102. The guarantor may also invoke the defense that the incident was caused by the willful misconduct of the responsible party, but the guarantor may not invoke any other defense that might be available in proceedings brought by the responsible party against the guarantor.*

*(e) LIMITATION ON GUARANTOR'S LIABILITY.—Nothing in this Act shall impose liability with respect to an incident on any guarantor for damages or removal costs which exceeds, in the aggregate, the amount of financial responsibility required under this Act which the guarantor has provided for the responsible party for any vessel or facility which was a source or cause of the incident.*

*(f) CIVIL PENALTY.—*

*(1) IN GENERAL.—Any person who, after notice and an opportunity for a hearing, is found to have failed to comply with the requirements of this section or the regulations issued under this section, or with a denial or detention order issued under subsection (a)(3) of this section, shall be liable to the United States for a civil penalty, not to exceed $25,000 per day of violation.*

*(2) NOTICE.—The amount of the civil penalty under this subsection shall be assessed by the Secretary by written notice.*

*(3) FACTORS TO CONSIDER.—In determining the amount of a civil penalty under this subsection, the Secretary shall take into account the nature, circumstances, extent, and gravity of the violation, the degree of culpability, any history of prior violation, ability to pay, and such other matters as justice may require.*

*(4) COMPROMISE.—The Secretary may compromise, modify, or remit, with or without conditions, any civil penalty which is subject to imposition or which has been imposed under this subsection.*

*(5) COLLECTION.—If any person fails to pay a civil penalty assessed under this subsection after it has become final, the Secretary may refer the matter to the Attorney General for collection.*

*(6) JUDICIAL RELIEF.—In addition to, or in lieu of, assessing a penalty under this subsection, the Secretary may request the Attorney General to secure such relief as necessary to compel compliance with this section, including a judicial order terminating operations. The district courts of the United States shall have jurisdiction to grant such relief as the public interest and the equities of the case may require.*

*(g) CONTINUATION OF REGULATIONS.—Any regulation respecting financial responsibility which has been issued pursuant to any provision of law repealed or superseded by this Act and which is in effect on the date immediately preceding the effective date of this Act shall be deemed and construed to be a regulation issued pursuant to this section. Such a regulation shall remain in full force and effect unless and until superseded by new regulations issued under this section.*

*(h) UNIFIED CERTIFICATE.—The Secretary may issue to a responsible party one certificate of financial responsibility for purposes of meeting the financial responsibility requirements of this Act and any other law.*

***SEC. 108. LITIGATION, JURISDICTION, AND VENUE.***

*(a) REVIEW OF REGULATIONS.—Review of any regulation issued under this Act may be had upon application by any interested person only in the Court of Appeals for the District of Columbia Circuit. Any such application shall be made within 90 days after the date of issuance of such regulation.*

*(b) JURISDICTION.—Except as provided in subsection (a), the district courts shall have original jurisdiction, without regard to the citizenship of the parties or the amount in controversy, over any civil action under this Act, including any action under the International Convention on Civil Liability for Oil Pollution Damages, 1984 or the International Convention on the Establishment of an International Fund for Compensation for Oil Pollution Damage, 1984.*

*(c) VENUE.—A civil action under subsection (b) may be brought in any district in which—*

*(1) the incident, injury, or damages occurs; or*

*(2) the defendant resides, may be found, has its principal office, or has appointed an agent for service of process.*

*For purposes of this section, the Fund and the International Fund established under Article 2 of the International Convention on the Establishment of an International Fund for Compensation for Oil Pollution Damage, 1984, reside in the District of Columbia.*

*(d) SAVINGS PROVISION.—Nothing in this Act shall affect any action commenced before the date of the enactment of this Act.*

*(e) PERIOD OF LIMITATIONS.—*

*(1) DAMAGES.—Except as provided in paragraphs (3) and (4), a civil action for damages under this Act, shall be barred unless the action is brought within 3 years after—*

*(A) the date on which the loss and the connection of the loss with the discharge in question are reasonably discoverable with the exercise of due care, or*

*(B) in the case of damages described in section 102(a)(2)(B)(i), the date on which regulations are issued under section 102(e)(5), if that date is later than the date referred to in subparagraph (A).*

*(2) REMOVAL COSTS.—Except as provided in paragraphs (3) and (4), a civil action for recovery of removal costs under this Act shall be barred unless the*

*action is brought within 3 years after completion of the removal. An action may be commenced under section 102 for recovery of removal costs at any time after such costs have been incurred.*

*(3) CONTRIBUTION.—A civil action for contribution for any removal costs or damages shall be barred unless the action is brought within 3 years after—*

*(A) the date of judgment in any action under this Act for recovery of the costs or damages, or*

*(B) the date of entry of a judicially approved settlement with respect to the costs or damages.*

*(4) SUBROGATION.—A civil action based on rights subrogated pursuant to this Act by reason of payment of a claim shall be barred unless the action is commenced within 3 years after the date of payment of the claim.*

***SEC. 109. RELATIONSHIP TO OTHER LAW.***

*(a) PREEMPTION.—*

*(1) ACTIONS PREEMPTED.—Except as provided in this Act, no action arising out of a discharge of oil, or a substantial threat of a discharge of oil, from a vessel or facility into or upon the navigable waters or adjoining shorelines or the waters of the exclusive economic zone (other than an action for personal injury or wrongful death), may be brought in any court of the*

*United States or of any State or political subdivision thereof.*

*(2) STATE FUNDS AND ACCOUNTS.—Nothing in this Act or in sections 4611 and 9509 of the Internal Revenue Code of 1986 shall affect the authority of any State (A) to establish or continue in effect an oil spill fund or account; or (B) to require any person to contribute to that fund or account. However, if the State fund or account is supported by contributions levied upon persons who contribute to the Fund established by section 9509 of such Code, the State fund or account may not be used to compensate any person for damages under this Act.*

*(b) NO PREEMPTION OF PENALTIES.—Nothing in this Act or section 9509 of the Internal Revenue Code of 1986 shall affect the authority of the United States or any State or political subdivision thereof to impose, or to determine the amount of, any fine or penalty for any violation of law relating to an incident.*

*(c) FINANCIAL RESPONSIBILITY.—Except as provided in this Act, a responsible party for a vessel or facility who establishes and maintains evidence of financial responsibility in accordance with this title shall not be required under any State or local law, rule, or regulation to establish or maintain any other evidence of financial responsibility in connection*

*with liability for the discharge, or substantial threat of a discharge, of oil from such vessel or facility. Evidence of compliance with the financial responsibility requirements of this title shall be accepted by a State in lieu of any other requirement of financial responsibility imposed by such State in connection with liability for the discharge of oil from such vessel or facility. A State may enforce, on the navigable waters of the State, the requirements for evidence of financial responsibility imposed under section 107 of this Act.*

*(d) LIMITATION OF LIABILITY ACT.—The Act entitled "An Act to limit the liability of ship owners, and for other purposes", approved March 3, 1851 (9 Stat. 635), shall not apply to removal costs which arise out of or directly result from, and damages which are proximately caused by, an incident involving the discharge or substantial threat of discharge of oil.*

***SEC. 110. REGULATIONS.***

*The Secretary shall issue such regulations as may be necessary to carry out this title.*

***SEC. 111. EFFECTIVE DATE.***

*(a) IN GENERAL.—Except as provided in subsection (b), this title shall apply with respect to an incident occurring after the date of the enactment of this Act.*

*(b) PAYMENTS FROM FUND.—Payments under section 103(a) may not be made before the commencement date (as*

*such term is defined in section 4611(f)(2) of the Internal Revenue Code of 1986).*

# *TITLE II—PREVENTION AND RESPONSE*

### *SEC. 201. AUTHORITY TO DIRECT RESPONSES.*

*(a) GENERAL RULE.—In the event of a discharge of oil or a substantial threat of discharge of oil into or upon navigable waters or adjoining shorelines or the waters of the exclusive economic zone, the Secretary or the Administrator of the Environmental Protection Agency, as determined by the President, shall assume the direction of all Federal, State, and private activities regarding the containment, cleanup, removal, and other responses to the discharge or threat of discharge.*

*(b) LIMITATION ON STATUTORY CONSTRUCTION.—Nothing in this section shall be construed as affecting the assessment of liability under this Act with respect to the discharge or substantial threat of discharge of oil and shall be construed as affecting or diminishing the authority of the President under section 311(c)(1) of the Federal Water Pollution Control Act, relating to removal of discharged oil.*

### *SEC. 202. RESPONSE PLANS.*

*(a) DESIGNATION.—*

*(1) DEADLINE.—Not later than 180 days after the date of the enactment of this Act, the Secretary or*

*the Administrator of the Environmental Protection Agency, as determined by the President, shall designate those areas for which plans for responding to discharges and substantial threats of discharges of oil are required to be prepared under this section, the persons (including Federal, State, and local officials) who are required to prepare such plans, and the persons who are required to pay for the preparation of such plans.*

*(2) CONSULTATION.—In designating areas for which plans are required to be prepared under this section and the persons to be required to prepare such plans, the Secretary or the Administrator, as the case may be, shall consult concerned State officials.*

*(b) CRITERIA FOR DESIGNATION OF AREAS.—In determining those areas for which plans for responding to discharges and substantial threats of discharges of oil are required to be prepared under this section, the Secretary or the Administrator of the Environmental Protection Agency, as the case may be, shall consider the following:*

*(1) The likelihood of a discharge or substantial threat of a discharge of oil in the area.*

*(2) The likelihood of significant adverse effects resulting from discharges or substantial threats of discharges of oil in the area.*

*(3) The amount and type of oil handled, stored, or processed in the area.*

*(4) The presence of natural resources in the area which are likely to be damaged by a discharge of oil and the value, uniqueness, and susceptibility of such resources to damage by such discharge.*

*(5) The geographic, topographic, weather, and other conditions which might influence the frequency, severity, and effects of oil discharges and responses thereto.*

*(c) PREPARATION OF PLANS.—*

*(1) DEADLINE.—Not later than 180 days after the date of designation of an area under subsection (a), the persons designated under subsection (a) shall prepare and submit, in writing, to the Secretary or the Administrator of the Environmental Protection Agency, as the case may be, for approval a plan for responding to discharges and substantial threats of discharges of oil in the area. Plans approved under this section must be reviewed on a periodic basis.*

*(2) CONTENTS.—Each response plan prepared under this section shall include the following:*

*(A) A description of the general area in which response actions will be required to be taken pursuant to the plan.*

*(B) The responsibilities of responsible parties, State and local governments, and others in responding to discharges and substantial threats of discharges of oil.*

*(C) Such other matters as the Secretary or the Administrator, as the case may be, may require.*

*(3) CONSULTATION REQUIREMENT.—Concerned States and local governments shall be consulted in the preparation of each plan under this subsection.*

*(4) TECHNICAL ASSISTANCE.—The Secretary or the Administrator, as the case may be, may provide technical assistance in the preparation of a response plan under this subsection.*

*(d) FUNDING.—All expenses incurred by the Secretary, and all expenses incurred by the Administrator of the Environmental Protection Agency, in carrying out this section shall be paid for out of the Fund.*

***SEC. 203. REVIEW AND REVISION OF RESPONSE CAPABILITY.***

*(a) EVALUATION.—*

*(1) IN GENERAL.—Not later than 6 months after the date of enactment of this Act, the Secretary or the Administrator of the Environmental Protection Agency, as determined by the President, shall conduct an evaluation of the status and effectiveness of person-*

*nel and equipment for responding to discharges of oil or substantial threats of discharges of oil into or upon the navigable waters and adjoining shorelines and the waters of the exclusive economic zone. The evaluation shall determine, on a regional basis, whether or not existing personnel and equipment are sufficient for responding to such discharges or threats in an effective and timely manner and the need for teams (including necessary equipment, personnel, and vessels) to respond to and minimize damage from those discharges or substantial threats of discharges occurring in the general regions of Alaska, the Pacific Northwest, California, the Gulf of Mexico, the Great Lakes, the North Atlantic, the South Atlantic, Hawaii, and inland waters of the United States.*

*(2) REPORT.—Not later than 1 year after the date of the enactment of this Act, the Secretary and the Administrator shall each submit a report to Congress based on the findings of their respective evaluations conducted under this subsection, together with recommendations.*

*(b) TRAINING.—Not later than 1 year after the date of the enactment of this Act, the Secretary or the Administrator of the Environmental Protection Agency, as determined by the President, shall revise the national contingency plan*

*issued under section 311(c)(2) of the Federal Water Pollution Control Act and shall issue such regulations as may be necessary, to require oil response personnel to be subjected to—*

*(1) training approved by the Secretary or the Administrator, as the case may be; and*

*(2) periodic drills, without prior notice, to demonstrate the continued effectiveness and readiness of oil response teams.*

*(c) CERTIFICATION.—Not later than 6 months after the date of the submission of the report under subsection (a), the Secretary or the Administrator of the Environmental Protection Agency, as the case may be, shall issue regulations requiring inspection of equipment for responding to discharges of oil and substantial threats of discharges of oil into the navigable waters and adjoining shorelines and the waters of the exclusive economic zone. Such equipment includes containment booms, skimmers, response vessels, and buoys. The regulations shall require the submission to the Secretary or the Administrator of such information as the Secretary or the Administrator may require for obtaining certification by the Secretary or the Administrator not less than once every 3 years to ensure the equipment is maintained in working condition. The Secretary and the Administrator shall each take such actions as may be necessary to make their respective*

*certifications under this subsection and to enforce this subsection, including the regulations issued by them respectively.*

*(d) UPGRADING OF PERSONNEL AND EQUIPMENT.—*

*(1) BY OWNERS AND OPERATORS.—Not later than 6 months after the date of the submission of the report under subsection (a), the Secretary or the Administrator of the Environmental Protection Agency, as the case may be, shall issue regulations which require owners and operators of vessels and facilities to take (within 6 months after the date of the issuance of such regulations) such action as may be necessary to ensure that sufficient personnel and equipment are available, on a regional and collective basis, for responding to discharges of oil and substantial threats of discharges of oil described in the first sentence of subsection (a) in an effective and timely manner.*

*(2) BY THE UNITED STATES.—If owners and operators of vessels and facilities have not taken all actions required by the Secretary or the Administrator, as the case may be, under paragraph (1) within 6 months after the date of the issuance of regulations by the Secretary or the Administrator under paragraph (1), the Secretary or the Administrator shall take such actions as may be necessary to ensure that sufficient personnel and equipment for responding to discharges*

*of oil and substantial threats of discharges of oil described in the first sentence of subsection (a) in an effective and timely manner are available on a regional and collective basis.*

*(e) FUNDING.—All expenses incurred by the Secretary, and all expenses incurred by the Administrator of the Environmental Protection Agency, in carrying out this section shall be paid for out of the Fund.*

***SEC. 204. COMPUTER LISTING OF EMERGENCY RESPONSE RESOURCES AND AVAILABILITY OF AGENCY DATA.***

*(a) ESTABLISHMENT OF COMPUTER LISTING.—Not later than 1 year after the date of the enactment of this section, the National Response Center shall (in consultation with State officials responsible for removal of oil from navigable waters and adjoining shorelines and the waters of the exclusive economic zone) establish, maintain, and annually revise a comprehensive nationwide computer listing of emergency response resources which are available to and appropriate for use in responding to discharges and substantial threats of discharges of oil.*

*(b) CONTENTS OF COMPUTER LISTING.—The computer listing established under this section shall include—*

*(1) a continually updated description of all Federal, State, local, and private emergency response resources which are available for use, including—*

*(A) the locations and capabilities of the resources;*

*(B) specification of the suitability of each resource for use in rivers, harbors, open ocean, and calm waters; and*

*(C) specification of the suitability of each resource for use in fresh water and in salt water;*

*(2) a nationwide listing of persons having emergency response resources available for sale or lease, including—*

*(A) each such person's address, telephone number, and hours of business; and*

*(B) a description of the types and capabilities of their resources;*

*(3) a listing of the names, telephone numbers, and areas of expertise of persons residing in the vicinity of areas covered by the National Contingency Plan who are experts in—*

*(A) responding to discharges or the substantial threats of discharges of oil; or*

*(B) the effects of such discharges or threats.*

*(c) INFORMATION ACCESS.—The National Response Center shall provide continuous access to information contained in the listing established under this section to—*

*(1) each regional response team;*

*(2) each regional response center;*

*(3) each on-scene coordinator; and*

*(4) all State and local government officials responsible for directing State or local governmental response to discharges and substantial threats of discharges of oil.*

*(d) READY ACCESSIBILITY.—The head of each Federal agency having a representative on the National Response Team shall ensure that, during all periods of activation of the National Contingency Plan, all persons described in subsection (c) with respect to the activation have ready accessibility to all relevant data in the possession of such agency (other than classified data) regarding the geographic, oceanographic, hydrologic, natural resource, and meteorological characteristics of the navigable waters or adjoining shorelines and the waters of the exclusive economic zone for which the National Contingency Plan is activated.*

*(e) INTERNATIONAL INVENTORY.—The President shall take such actions as may be necessary to encourage appropriate international organizations to establish an international inventory of emergency response resources.*

*(f) DEFINITIONS.—For purposes of this section—*

*(1) EMERGENCY RESPONSE RESOURCE.—The term "emergency response resource" means all equipment, supplies (including chemical and biological*

*agents), and personnel having special knowledge or expertise, that are particularly useful for responding to a discharge or substantial threat of a discharge of oil.*

*(2) NATIONAL RESPONSE CENTER, NATIONAL RESPONSE TEAM, REGIONAL RESPONSE CENTER, REGIONAL RESPONSE TEAM, AND ON-SCENE COORDINATOR.—The terms "National Response Center", "National Response Team", "Regional Response Center", "Regional Response Team", and "On-Scene Coordinator" have the meaning such terms have in the National Contingency Plan.*

***SEC. 205. VESSEL TRAFFIC SYSTEMS.***

*(a) NEEDS SURVEY.—The Secretary shall make a survey of areas of navigable waters to determine the needs for new, expanded, or improved vessel traffic systems.*

*(b) PRIORITY LIST.—*

*(1) ESTABLISHMENT.—Based on the results of the needs survey conducted under subsection (a), the Secretary shall establish, in order of priority, those areas of navigable waters which are in need of new, expanded, or improved vessel traffic systems.*

*(2) FACTORS TO CONSIDER.—In determining the order of priority for the list under paragraph (1), the Secretary shall consider such factors as the Secretary determines appropriate, including the nature, volume,*

*and frequency of vessel traffic in the area and the risks of collisions, spills, and damages associated with such traffic which could be reduced or eliminated by installation, expansion, or improvement of a vessel traffic system.*

*(c) REPORT.—Not later than 1 year after the date of the enactment of this Act, the Secretary shall submit to Congress a report containing the priority list established under this subsection and such other information as the Secretary considers appropriate.*

*(d) ACQUISITION, INSTALLATION, AND OPERATION.—The Secretary may acquire, install, and operate such equipment and vessel traffic systems as are necessary for making the improvements and expansions contained on the priority list established under this subsection.*

*(e) MANDATORY PARTICIPATION.—The Secretary shall make participation in vessel traffic systems operated by the Secretary mandatory for such vessels as the Secretary determines appropriate.*

*(f) VESSEL FEES.—*

*(1) ESTABLISHMENT.—The Secretary shall establish and collect from users of vessel traffic systems operated by the Secretary such fees as the Secretary determines are necessary to pay the cost of acquisition, installation, and operation of vessel traffic systems by*

*the Secretary. Such fees shall be established in accordance with section 9701 of title 31, United States Code.*

*(2) USE OF FEES.—Fees collected by the Secretary under this subsection shall be credited and available to the Secretary, without fiscal year limitation, to pay the cost of acquisition, installation, and operation of vessel traffic systems by the Secretary.*

*(3) LIMITATIONS ON STATUTORY CONSTRUCTION.—Nothing in this subsection shall be construed as altering or expanding the duties and liabilities of the United States for the performance of functions or services for which fees are collected under this subsection. The collection of such fees shall not constitute an express or implied undertaking by the United States to perform any service or activity in a certain manner or to provide any service at a particular time or place.*

*(g) DIRECTION OF VESSEL MOVEMENT.—*

*(1) STUDY.—The Secretary shall conduct a study of whether or not the Secretary should be given additional authority to direct the movement of vessels upon navigable waters and should exercise such authority.*

*(2) REPORT.—Not later than 1 year after the date of the enactment of this Act, the Secretary shall submit to Congress a report on the results of the study*

*conducted under paragraph (1) together with recommendations for implementing the results of such study.*

***SEC. 206. NAVIGATIONAL AIDS.***

*(a) STUDY.—The Secretary shall conduct a study to determine the areas in which navigation risks are sufficient to require tug escorts of tankers or other navigation aids to improve the safe movement of tankers.*

*(b) REPORT.—Not later than 1 year after the date of the enactment of this Act, the Secretary shall submit to Congress a report on the results of the study conducted under subsection (a) together with recommendations for implementing the results of such study.*

*(c) IMPLEMENTATION.—The Secretary shall issue such regulations and take such actions as may be necessary to implement the recommendations contained in the report submitted to Congress under this section.*

***SEC. 207. PERIODIC GAUGING OF PLATING THICKNESS OF COMMERCIAL VESSELS.***

*Not later than 1 year after the date of the enactment of this Act, the Secretary shall issue regulations—*

*(1) establishing minimum standards for the plating thickness of vessels transporting oil in bulk or commercial quantities, and*

*(2) requiring periodic gauging of the plating thickness of all vessels over 30 years old which are*

*used to transport oil in bulk or commercial quantities upon the navigable waters or the waters of the exclusive economic zone.*

***SEC. 208. OVERFILL AND TANK LEVEL OR PRESSURE MONITORING DEVICES.***

*(a) STANDARDS.—Not later than 1 year after the date of the enactment of this Act, the Secretary shall establish, by regulation, minimum standards for devices for warning persons of overfills and tank levels of oil in cargo tanks and devices for monitoring the pressure of oil cargo tanks.*

*(b) USE.—Not later than 1 year after the date of the enactment of this Act, the Secretary shall issue regulations establishing requirements concerning the use of—*

*(1) overfill devices, and*

*(2) tank level or pressure monitoring devices,*

*which are referred to in subsection (a) and which meet the standards established by the Secretary under subsection (a), on vessels transporting oil in bulk or commercial quantities upon the navigable waters and the waters of the exclusive economic zone.*

***SEC. 209. TANKER PERSONNEL.***

*(a) STUDY.—Not later than 1 year after the date of the enactment of this Act, the Secretary shall conduct a study for the purpose of determining appropriate crew sizes for tankers and qualifications of personnel on such tankers.*

*(b) REPORT.—Not later than 1 year after the date of the enactment of this Act, the Secretary shall submit to Congress a report on the results of the study conducted under subsection (a) together with recommendations for implementing the results of such study.*

***SEC. 210. USE OF LINERS.***

*(a) STUDY.—The Administrator of the Environmental Protection Agency shall conduct a study to determine whether or not liners should be used as a secondary means of containment at onshore facilities used for the bulk storage of oil and located near navigable waters to prevent leaching of oil into the ground and to aid in leak detection.*

*(b) REPORT.—Not later than 1 year after the date of the enactment of this Act, the Administrator of the Environmental Protection Agency shall submit to Congress a report on the results of the study conducted under subsection (a) together with recommendations for implementing the results of such study.*

*(c) IMPLEMENTATION.—The Administrator of the Environmental Protection Agency shall issue such regulations and take such actions as may be necessary to implement the recommendations contained in the report submitted to Congress under this section.*

***SEC. 211. MODIFICATIONS TO DREDGES.***

*(a) STUDY.—The Secretary of the Army shall conduct a study for the purpose of determining the feasibility of modifying dredges for the purpose of making such dredges usable in responding to a discharge of oil or the substantial threat of a discharge of oil.*

*(b) REPORT.—Not later than 1 year after the date of the enactment of this Act, the Secretary of the Army shall submit to Congress a report on the results of the study conducted under subsection (a) together with recommendations for implementing the results of such study.*

***SEC. 212. TANKER FREE ZONES.***

*(a) STUDY.—The Secretary, in consultation with other appropriate Federal and State officials, shall conduct a study of whether or not to designate areas of the navigable waters and exclusive economic zone as zones where the movement of tankers should be prohibited or limited. If the Secretary, as a result of such study, determines that such zones should be designated, the Secretary shall also study which areas to designate as such zones, and what limitations to impose on tanker traffic in any zones so designated, taking into consideration the following: existing navigational risks based on geography, weather, and volume of traffic; potential for danger to natural resources; and availability of alternative methods for transporting oil (such as deepwater port facilities).*

*(b) REPORT.—Not later than 1 year after the date of the enactment of this Act, the Secretary shall submit to Congress a report on the results of the study conducted under subsection (a) together with recommendations for implementing the results of such study.*

***SEC. 213. SUPERIORITY OF FEDERAL PILOTS' LICENSES.***

*(a) STUDY.—The Secretary shall conduct a study to determine whether or not licenses issued by the Secretary authorizing persons to serve as pilots of commercial vessels operating on the navigable waters should be legally superior to licenses issued by the States for such purposes.*

*(b) REPORT.—Not later than 1 year after the date of the enactment of this Act, the Secretary shall submit to Congress a report on the results of the study conducted under subsection (a) together with recommendations for implementing the results of such study.*

***SEC. 214. RESEARCH AND DEVELOPMENT PROGRAM.***

*(a) ESTABLISHMENT.—The President shall establish a program for conducting oil pollution research and development under this section and designate appropriate Federal agencies to participate in such program.*

*(b) GENERAL PURPOSES.—The purposes of the research and development program under this section includes the following:*

*(1) Development of new or improved methods to contain discharges of oil from vessels and facilities. Such methods must minimize health risks to persons who will have responsibility for containing such discharges.*

*(2) Development of new or improved methods (including the use of dispersants and bioremediation) for oil recovery, cleanup, and disposal which are effective and protect the environment.*

*(3) Development of effective models to predict the effects of discharges of oil and the fate of such oil, including the development of baseline data necessary for determining such effects.*

*(4) Development of technologies and methods to protect public health and safety from discharges of oil (including the population directly exposed to an oil discharge and response personnel performing cleanup activities).*

*(5) Development of new or improved methods to ensure the health and safety of response personnel performing cleanup activities.*

*(6) Development of adequate worker training standards for oil discharge response personnel.*

*(7) Development of new or improved methods to restore and rehabilitate natural resources damaged by discharges of oil.*

*(8) Determination of long-term effects of discharges of oil on fish and wildlife.*

*(c) SPECIFIC RESEARCH AND DEVELOPMENT PROJECTS.—*

*(1) VESSEL DESIGN AND CONSTRUCTION CRITERIA.—Under the program established under this section, the President shall direct the Secretary to conduct research on changes in vessel design and construction criteria (such as tank size, vessel size, double hulls, and ballast sides) for the purpose of reducing the likelihood of discharges of oil.*

*(2) TECHNOLOGY.—Under the program established under this section, the President shall direct the Secretary and the Administrator of the Environmental Protection Agency to conduct a joint research and development program for improving technology to prevent discharges of oil and minimize the size of such discharges. The technologies examined under such research and development program shall include technologies for measuring the ullage of a vessel, preventing discharges from tank vents, preventing discharges*

*during lightering and bunkering operations, and containing discharges on the deck of a vessel.*

*(d) ANNUAL REPORTS.—The President shall submit to Congress an annual report on the activities carried out under this section in the preceding fiscal year and on activities the President proposes to carry out under this section in the current fiscal year.*

*(e) FUNDING.—For carrying out the purposes of this section, there is authorized to be appropriated from the Fund $10,000,000 for fiscal year 1991, $10,000,000 for fiscal year 1992, $7,500,000 for fiscal year 1993, $5,000,000 for fiscal year 1994, and $5,000,000 for fiscal year 1995.*

***SEC. 215. CONSIDERATION OF ALCOHOL ABUSE.***

*(a) ISSUANCE AND RENEWAL OF LICENSES, CERTIFICATES OF REGISTRY, AND MERCHANT MARINER DOCUMENTS.—*

*(1) IN GENERAL.—Chapter 71 of title 46, United States Code, is amended by adding at the end the following:*

***"§ 7115. Consideration of alcohol abuse in issuing and renewing licenses and certificates of registry***

*"(a) LIMITATION ON ISSUANCE OF LICENSES AND CERTIFICATES.—The Secretary may not issue or renew a license or certificate of registry under this chapter for any individual who—*

*"(1) the Secretary determines is a current or chronic abuser of alcohol; or*

*"(2) fails to make available to the Secretary the information referred to in subsection (b).*

*"(b) DRIVING RECORD INFORMATION.—The Secretary shall require each individual applying for issuance or renewal of a license or certificate of registry under this chapter to make available to the Secretary, in accordance with section 206(b)(4) of the National Driver Register Act of 1982 (23 U.S.C. 401 note), all information contained in the National Driver Register regarding the motor vehicle driving record of such individual.*

*"(c) INVESTIGATIONS.—Upon receiving reliable information that an individual applying for issuance or renewal of a license or certificate of registry under this chapter has been found guilty of an alcohol-related infraction resulting in suspension or revocation of a motor vehicle operator license issued to the individual, the Secretary may conduct such investigations as are necessary to determine if the individual is a current or chronic abuser of alcohol.".*

*(2) CLERICAL AMENDMENTS.—The item relating to chapter 71 contained in the table of sections for title 46, United States Code, and the chapter analysis for chapter 71 of such title are each amended by adding at the end the following:*

*"7115. Consideration of alcohol abuse in issuing and renewing licenses and certificates of registry.".*

*(b) CERTIFICATES OF REGISTRY.—Section 7107 of title 46, United States Code, is amended by striking the first sentence and inserting the following: "The Secretary shall determine the term of validity of a certificate of registry. Such a certificate may be renewed under regulations issued by the Secretary.".*

*(c) MERCHANT MARINER'S DOCUMENTS.—Section 7302 of title 46, United States Code, is amended by adding at the end the following:*

*"(c) LIMITATION ON ISSUANCE OF DOCUMENTS.—The Secretary may not issue or renew a merchant mariner's document under this chapter for any individual who—*

*"(1) the Secretary determines is a current or chronic abuser of alcohol; or*

*"(2) fails to make available to the Secretary the information referred to in subsection (d).*

*"(d) DRIVING RECORD INFORMATION.—The Secretary may require each individual applying for issuance or renewal of a merchant mariner's document under this chapter to make available to the Secretary, in accordance with section 206(b)(4) of the National Driver Register Act of 1982 (23 U.S.C. 401 note), all information contained in the National Driver Register regarding the motor vehicle driving record of such individual.*

*"(e) INVESTIGATIONS.—Upon receiving reliable information that an individual applying for issuance or renewal of a merchant mariner's document under this chapter has been found guilty of an alcohol-related infraction resulting in suspension or revocation of a motor vehicle operator license issued to the individual, the Secretary may conduct such investigations as are necessary to determine if the individual is a current or chronic abuser of alcohol.*

*"(f) PERIOD OF VALIDITY.—The Secretary shall determine the term of validity of a merchant mariner's document. Such documents may be renewed under regulations issued by the Secretary.".*

*(d) SUSPENSION AND REVOCATION OF LICENSES, CERTIFICATES, AND DOCUMENTS.—Section 7703 of title 46, United States Code, is amended—*

*(1) by inserting "(a)" before the first sentence; and*

*(2) by adding at the end the following:*

*"(b) SUSPENSIONS FOR ALCOHOL ABUSE.—*

*"(1) IN GENERAL.—The Secretary may suspend or revoke a license, certificate of registry, or merchant mariner's document issued by the Secretary to an individual if—*

*"(A) the Secretary determines the individual is a current or chronic abuser of alcohol; or*

*"(B) the individual fails to make available to the Secretary the information referred to in paragraph (3).*

*Any determination of the Secretary to suspend or revoke the license, certificate of registry, or merchant mariner's document of an individual under this paragraph shall be based on the severity of abuse of alcohol by the individual and the length of time necessary to control that abuse.*

*"(2) INVESTIGATIONS.—The Secretary may conduct such investigations as are necessary to determine if an individual who holds a license, certificate of registry, or merchant mariner's document issued by the Secretary is a current or chronic abuser of alcohol if the Secretary receives reliable information—*

*"(A) regarding any alcohol-related misconduct of the individual; or*

*"(B) pursuant to paragraph (3) that the individual has been found guilty of an alcohol-related infraction resulting in suspension or revocation of a motor vehicle operator license issued to the individual.*

*"(3) DRIVING RECORD INFORMATION.—The Secretary may request an individual who holds a license, certificate of registry, or merchant mariner's*

*document issued by the Secretary to make available to the Secretary, in accordance with section 206(b)(4) of the National Driver Register Act of 1982 (23 U.S.C. 401 note), all information contained in the National Driver Register regarding the motor vehicle driving record of such individual.*

*"(4) LIMITATION ON SUSPENSION TERMINATIONS.—The Secretary may not terminate a suspension of a license, certificate of registry, or merchant mariner's document of an individual under paragraph (1)(A) until the individual provides sufficient proof that the individual is no longer a current or chronic abuser of alcohol.".*

*(e) RELIEF OF MASTER.—Section 8101 of title 46, United States Code, is amended by adding at the end the following new subsection:*

*"(i) RELIEF OF MASTER.—If the chief mate or equivalent and the next senior crewmember on board a vessel determine that reasonable cause exists to believe that the master or individual in command is intoxicated as a result of the use of dangerous drugs (as defined in section 7704) or alcohol and is therefore incapable of commanding the vessel, the chief mate shall temporarily relieve the master and temporarily assume command of the vessel and shall immediately enter the details in the vessel log and report such details to the*

*Secretary by the most expeditious means available. The chief mate shall also report the circumstances in writing to the Secretary within 12 hours after the vessel arrives at its destination.".*

*(f) REGULATIONS.—The Secretary is authorized to issue such regulations as may be necessary to implement the amendments made by this section.*

***SEC. 216. ACCESS TO NATIONAL DRIVER REGISTER.***

*(a) IN GENERAL.—Section 206(b) of the National Driver Register Act of 1982 (23 U.S.C. 401 note) is amended—*

*(1) by redesignating paragraph (4) and the first paragraph (5) as paragraphs (6) and (7), respectively;*

*(2) by redesignating the second paragraph (5), relating to locomotive operators, as paragraph (4) and moving such paragraph after paragraph (3);*

*(3) by inserting after the paragraph which is redesignated and moved under paragraph (2) of this subsection the following new paragraph:*

*"(5) SEAMAN CERTIFICATES.—Any individual who has applied for or received a license or certificate of registry in accordance with section 7101 of title 46, United States Code, or a merchant mariner's document in accordance with section 7302 of title 46, United States Code, or has applied for a renewal of*

*such license, certificate of registry, or document, may request the chief driver licensing official of a State to transmit information regarding the individual under subsection (a) to the Secretary. The Secretary may receive such information and shall, prior to using such information in any adverse action regarding the individual's license, certificate of registry, or document, make such information available to the individual for review and written comment. The Secretary may not otherwise divulge or use such information, except in accordance with section 7115, 7302, or 7703 of title 46, United States Code. There shall be no access to information in the Register under this paragraph if such information was entered in the Register more than 5 years before the date of such request, unless such information relates to revocations or suspensions which are still in effect on the date of the request. Information submitted to the Register by States under the Act of July 14, 1960 (74 Stat. 526), or under this Act shall be subject to access for the purpose of this paragraph during the transition to the Register established under section 203(a) of this Act.".*

*(b) CONFORMING AMENDMENT.—Section 208 of such Act is amended by striking "an individual described" and all*

*that follows through "title, who" and inserting "an individual described in section 206(b)(6) of this title, who".*

# *TITLE III—IMPLEMENTATION OF INTERNATIONAL CONVENTIONS*

***SEC. 301. DEFINITIONS.***

*For the purposes of this title—*

*(1) SHIP, OWNER, OIL, POLLUTION DAMAGE, AND INCIDENT.—The terms "ship", "owner", "oil", "pollution damage", and "incident" shall have the meanings provided in Article I of the Civil Liability Convention.*

*(2) CIVIL LIABILITY CONVENTION.—The term "Civil Liability Convention" means the International Convention on Civil Liability for Oil Pollution Damage, 1984.*

*(3) FINANCIAL RESPONSIBILITY.—The term "financial responsibility" has the same meaning as "financial security" under the Civil Liability Convention.*

*(4) FUND CONVENTION.—The term "Fund Convention" means the International Convention on the Establishment of an International Fund for Compensation for Oil Pollution Damage, 1984.*

*(5) INTERNATIONAL FUND.—The term "International Fund" means the International Oil Pollution*

*Compensation Fund established under Article 2 of the Fund Convention.*

***SEC. 302. APPLICABILITY OF CONVENTIONS.***

*During any period in which the Civil Liability Convention and the Fund Convention are in force with respect to the United States, liability relating to pollution damage arising from an incident involving a ship shall be determined in accordance with the Civil Liability Convention and the Fund Convention. Nothing in this title shall constitute a ratification of either the Civil Liability Convention or the Fund Convention.*

***SEC. 303. RECOGNITION OF INTERNATIONAL FUND.***

*The International Fund is recognized under the laws of the United States as a legal person and shall have the capacity to acquire and dispose of real and personal property and to institute and be party to legal proceedings. The Director of the International Fund is recognized as the legal representative of the International Fund. The Director shall be deemed to have appointed irrevocably the Secretary of State as the International Fund's agent for the service of process in any legal proceedings within the United States involving the International Fund. The International Fund and its assets shall be exempt from all direct taxation and payment of any customs duties in the United States.*

***SEC. 304. ACTION IN UNITED STATES COURTS.***

*(a) SERVICE OF PROCESS ON FUND.—In any action brought in a court in the United States against the owner of a ship or its guarantor under the Civil Liability Convention, the plaintiff or defendant, as the case may be, shall serve a copy of the complaint and any subsequent pleading therein upon the International Fund at the same time the complaint or other pleading is served upon the opposing parties.*

*(b) INTERVENTION.—The International Fund may intervene as a party as a matter of right in any action brought in a court in the United States against the owner of a ship or its guarantor under the Civil Liability Convention.*

***SEC. 305. CONTRIBUTION TO INTERNATIONAL FUND.***

*(a) PAYMENTS TO BE MADE FROM OIL SPILL LIABILITY TRUST FUND.—The amount of any contribution to the International Fund which is required to be made under Article 10 of the Fund Convention by any person with respect to oil received in any port, terminal installation, or other installation located in the United States shall be paid to the International Fund from the Oil Spill Liability Trust Fund.*

*(b) INFORMATION.—The Secretary may, by regulation, require persons who are required to make contributions with respect to oil received in any port, terminal, or other installation in the United States under Article 10 of the Fund Convention to provide all information relating to the oil as may*

*be necessary to carry out subsection (a) of this section, Articles 10, 12, 13, 14, and 15 of the Fund Convention, and Article 29 of the Protocol of 1984 to Amend the International Convention on the Establishment of an International Fund for Compensation for Oil Pollution Damage, 1971.*

***SEC. 306. RECOGNITION OF FOREIGN JUDGMENTS.***

*Any final judgment of a court of any country which is a party to the Civil Liability Convention or to the Fund Convention in an action for compensation under either convention shall be recognized by any court of the United States having jurisdiction under this Act, when the judgment has become enforceable in such country and is no longer subject to ordinary form of review, except where—*

*(1) the judgment was obtained by fraud, or*

*(2) the defendant was not given reasonable notice and a fair opportunity to present its case.*

***SEC. 307. FINANCIAL RESPONSIBILITY.***

*(a) UNITED STATES DOCUMENTED SHIPS.—The owner of each ship which is documented under the laws of the United States which is subject to the Civil Liability Convention shall establish and maintain, in accordance with regulations issued by the Secretary, evidence of financial responsibility as required in Article VII of the Civil Liability Convention.*

*(b)* OTHER SHIPS.—*The owner of each ship (other than a ship to which subsection (a) applies or a ship which is a public vessel) which is subject to the Civil Liability Convention and which enters or leaves a port or terminal in the United States or uses an Outer Continental Shelf facility or an offshore facility that is or was licensed under the Deepwater Port Act of 1974 shall establish and maintain, in accordance with regulations issued by the Secretary, evidence of financial responsibility as required in Article VII of the Civil Liability Convention. Any ship which has on board a valid certificate issued in accordance with Article VII of the Civil Liability Convention shall be considered as having met the requirements of this subsection. Any ship carrying only oil as cargo, fuel, or residue, which has on board a valid certificate issued in accordance with Article VII of the Civil Liability Convention shall be considered as having met the requirements of section 107 of this Act.*

*(c)* AUTHORITY OF SECRETARY TO ISSUE.—*The Secretary is authorized to issue any certificate of financial responsibility which the United States may issue under the Civil Liability Convention.*

*(d)* WITHHOLDING CLEARANCE.—*The Secretary of the Treasury shall withhold or revoke the clearance required by section 4197 of the Revised Statutes of the United States*

*(46 U.S.C. App. 91) of any ship which does not have a certificate demonstrating compliance with this section.*

*(e) DENYING ENTRY AND DETAINING VESSELS.—The Secretary may (1) deny entry to any facility or to any port or place in the United States, or (2) detain at the facility or port or place in the United States, any ship subject to this section which, upon request, does not produce the certificate demonstrating compliance with this section or regulations issued under this section.*

*(f) CIVIL PENALTY.—Any person who, after notice and an opportunity for a hearing, is found to have violated this section, any regulation issued under this section, section 305(b), or section 308, or any denial or detention order issued under subsection (e) of this section shall be liable to the United States for a civil penalty not to exceed $25,000 per day of violation. The amount of the civil penalty shall be assessed by the Secretary in accordance with the procedures set forth in section 107 of this Act.*

*(g) WAIVER OF SOVEREIGN IMMUNITY.—The United States waives all defenses based on its status as a sovereign state with respect to any controversy arising under the Civil Liability Convention or the Fund Convention relating to any ship owned by the United States and used for commercial purposes.*

***SEC. 308. REGULATIONS.***

*The Secretary shall issue such regulations as may be necessary to carry out this title and all obligations of the United States under the Civil Liability Convention and the Fund Convention.*

# *TITLE IV—MISCELLANEOUS PROVISIONS*

***SEC. 401. TRANS-ALASKA PIPELINE FUND.***

*(a) AMENDMENTS TO SECTION 204(b).—Section 204(b) of the Trans-Alaska Pipeline Authorization Act (43 U.S.C. 1653(b)) is amended—*

*(1) in the first sentence by inserting after "any area" the following: "in the State of Alaska";*

*(2) in the first sentence by inserting after "any activities" the following: "related to the trans-Alaska oil pipeline"; and*

*(3) by adding at the end the following new sentence: "This subsection shall not apply to removal costs covered by the Oil Pollution Prevention, Response, Liability, and Compensation Act of 1989.".*

*(b) REPEAL OF SECTION 204(c).—Section 204(c) of the Trans-Alaska Pipeline Authorization Act is repealed. The repeal made by the preceding sentence shall not affect the applicability of such section to claims arising before the date of the enactment of this Act. The repeal of paragraphs (4), (6), and (8) of such section shall only become effective upon*

*the payment by the Board of Trustees of the Trans-Alaska Pipeline Liability Fund of all claims certified under subsection (c) of this section.*

*(c) CERTIFICATION OF OUTSTANDING CLAIMS.—Not later than 210 days after the date of the enactment of this Act, the Board of Trustees of the Trans-Alaska Pipeline Liability Fund shall certify to the Secretary the total amount of claims outstanding against such Fund as of the date of the enactment of this Act.*

***SEC. 402. INTERVENTION ON THE HIGH SEAS ACT.***

*Section 17 of the Intervention on the High Seas Act (33 U.S.C. 1486) is amended to read as follows:*

***"SEC. 17. AVAILABILITY OF OIL SPILL LIABILITY TRUST FUND.***

*"The Oil Spill Liability Trust Fund shall be available to the Secretary for actions taken under sections 5 and 7 of this Act.".*

***SEC. 403. FEDERAL WATER POLLUTION CONTROL ACT.***

*(a) NATIONAL CONTINGENCY PLAN.—Section 311(c)(2) of the Federal Water Pollution Control Act (33 U.S.C. 1321(c)(2)) is amended—*

*(1) in subparagraph (C) by striking "establishment or designation of a strike force consisting" and inserting "designation, establishment, and maintenance of a strike force consisting of at least 4 teams";*

*(2) in subparagraph (D) by inserting "safeguard against as well as" after "surveillance and notice designed to";*

*(3) in subparagraph (F) by inserting "as well as research and development into methods and techniques to improve existing technology" after "removing oil and hazardous substances"; and*

*(4) in subparagraph (H) by striking "reimbursed from the fund established under subsection (k) of this section for the reasonable costs incurred in such removal" and inserting "reimbursed, in the case of any discharges of oil from a vessel or facility, for the reasonable costs incurred for such removal, from the Oil Spill Liability Trust Fund".*

*(b) CLEANUP EXPENSES.—Section 311(d) of such Act is amended by striking the last sentence.*

*(c) ABATEMENT ACTIONS.—Section 311(e) of such Act is amended to read as follows:*

*"(e) ABATEMENT ACTIONS.—*

*"(1) PRESIDENT'S AUTHORITY.—In addition to any action taken by a State or local government, when the President determines that there may be an imminent and substantial threat to the public health or welfare of the United States, including fish, shellfish, and wildlife and public and private property, shorelines,*

*and beaches under the jurisdiction or control of the United States, because of an actual or threatened discharge of oil or a hazardous substance from a vessel or facility in violation of subsection (b) of this section, the President may—*

*"(A) require the Attorney General to secure such relief as may be necessary to abate such threat; or*

*"(B) after notice to the affected State, take such other action under this section, including issuing such administrative orders, as may be necessary to protect the public health and welfare.*

*"(2) ENFORCEMENT OF ORDERS.—If any person fails without sufficient cause to comply with an order under paragraph (1)(B), the President may request the Attorney General to bring an action in the appropriate district court of the United States to enforce such an order, to assess civil penalties of not more than $25,000 a day for each violation, and to assess 3 times the removal costs or damages incurred by the Oil Spill Liability Trust Fund as a result of the failure to comply.*

*"(3) DISTRICT COURT JURISDICTION.—The district courts of the United States shall have jurisdiction*

*to grant such relief under this subsection as the public interest and the equities of the case may require.".*

*(d) LIMITATION ON APPLICABILITY TO PREVENT OVERLAPPING COVERAGE.—Subsections (f), (g), (h), and (i) of section 311 of such Act shall not apply with respect to any incident with respect to which section 102 of this Act applies.*

*(e) RECOVERY FROM 3RD PARTIES.—Section 311(i) of such Act is amended by striking "(1)" and striking paragraphs (2) and (3).*

*(f) OIL SPILL REVOLVING FUND.—*

*(1) CONFORMING AMENDMENT.—Section 311(k) of such Act is repealed.*

*(2) TREATMENT OF REMAINING FUNDS.—Any amounts remaining in the revolving fund established under section 311(k) of the Federal Water Pollution Control Act shall be deposited in the general fund of the Treasury.*

*(3) TREATMENT OF LIABILITIES.—The Fund shall assume all liability incurred by the revolving fund established under section 311(k) of the Federal Water Pollution Control Act.*

*(g) FUNDING OF DELEGATED AUTHORITY.—Section 311(l) of the Federal Water Pollution Control Act is amended by striking the second sentence.*

*(h) EVIDENCE OF FINANCIAL RESPONSIBILITY.—Section 311(p) of such Act is repealed.*

*(i) AVAILABILITY OF FUND.—Section 311 of such Act is amended by adding at the end thereof the following new subsection:*

*"(s) AVAILABILITY OF OIL SPILL LIABILITY TRUST FUND.—The Oil Spill Liability Trust Fund shall be available to carry out subsections (c), (d), (i), and (l). Any amounts received by the United States under this section shall be deposited in the Oil Spill Liability Trust Fund.".*

*(j) NOTICE TO STATE; INCREASED PENALTY FOR FAILURE TO REPORT.—Section 311(b)(5) of such Act is amended—*

*(1) by inserting after the first sentence the following: "The Federal agency shall immediately notify the appropriate State agency of any State which is, or may reasonably be expected to be, affected by the discharge of oil or a hazardous substance."; and*

*(2) by striking "fined not more than $10,000, or imprisoned for not more than one year, or both" and inserting "fined in accordance with the applicable provisions of title 18 of the United States Code, or imprisoned for not more than 3 years (or not more than 5 years in the case of a second or subsequent conviction), or both".*

*(k) INCREASED PENALTY FOR DISCHARGES.—Section 311(b)(6)(A) of such Act is amended by striking "$5,000 for each offense" each place it appears and inserting "$25,000 for each day of such offense".*

***SEC. 404. DEEPWATER PORT ACT.***

*(a) SECTION 4(c).—Section 4(c)(1) of the Deepwater Port Act of 1974 (33 U.S.C. 1503(c)(1)) is amended by striking "section 18(l) of this Act;" and inserting "section 107 of the Oil Pollution Prevention, Response, Liability, and Compensation Act of 1989;".*

*(b) SECTION 18.—*

*(1) REPEALS.—Subsections (b), (d), (e), (f), (g), (h), (i), (j), (l), (n), and paragraphs (1) and (2) of subsection (m) of section 18 of such Act (33 U.S.C. 1517) are repealed.*

*(2) SUBSECTION (c)(3).—Subsection (c)(3) of such section is amended by striking "Deepwater Port Liability Fund established pursuant to subsection (f) of this section", and inserting "Oil Spill Liability Trust Fund".*

*(3) REDESIGNATIONS.—Subsections (c), (k), and (m) of such section (and any references thereto) are redesignated as subsections (b), (c), and (d) respectively, and paragraphs (3) and (4) of subsection (m) of such*

*section (and any references thereto) are redesignated as paragraphs (1) and (2), respectively.*

*(c) SECTION 19.—Section 19(a)(1) of such Act (33 U.S.C. 1518(a)(1)) is amended by striking the period at the end of the second sentence and inserting "; except that discharges from a deepwater port or from a vessel within a deepwater port safety zone which are subject to the civil penalty provisions of section 18(a)(2) of this Act shall not be subject to the penalty provisions of any other Federal law.".*

*(d) DEEPWATER PORT LIABILITY FUND.—Any amounts remaining in the Deepwater Port Liability Fund established under section 18(f) of the Deepwater Port Act of 1974 shall be deposited into the Fund. The Fund shall assume all liability incurred by the Deepwater Port Liability Fund.*

***SEC. 405. OUTER CONTINENTAL SHELF LANDS ACT AMENDMENTS OF 1978.***

*Title III of the Outer Continental Shelf Lands Act Amendments of 1978 (43 U.S.C. 1811–1824) and the portion of the table of contents for such Act which relates to such title are each repealed. Any amounts remaining in the Offshore Oil Pollution Compensation Fund established under section 302 of such title shall be deposited in the Fund. The Fund shall assume all liability incurred by the Offshore Oil Pollution Compensation Fund.*

***SEC. 406. QUALIFIED AUTHORIZING LEGISLATION.***

*This Act shall be considered to be qualified authorizing legislation for purposes of section 4611(f)(2)(B) of the Internal Revenue Code of 1986.*

***SEC. 407. EFFECTIVE DATE.***

*Sections 401, 402, 403 (other than subsection (j)), 404, and 405 shall be effective on the commencement date (as such term is defined in section 4611(f)(2) of the Internal Revenue Code of 1986).*

**SECTION 1. SHORT TITLE AND TABLE OF CONTENTS.**

**(a) SHORT TITLE.—This Act may be cited as the "Oil Pollution Prevention, Removal, Liability, and Compensation Act of 1989".**

**(b) TABLE OF CONTENTS.—The contents of this Act are as follows:**

**Sec. 1. Short title and table of contents.**

**TITLE I—OIL POLLUTION LIABILITY AND COMPENSATION**

**Sec. 101. Definitions.**
**Sec. 102. Liability.**
**Sec. 103. Uses of the Fund.**
**Sec. 104. Claims procedure.**
**Sec. 105. Designation and advertisement.**
**Sec. 106. Subrogation.**
**Sec. 107. Financial responsibility.**
**Sec. 108. Litigation, jurisdiction, and venue.**
**Sec. 109. Relationship to other law.**
**Sec. 110. Effective date.**

**TITLE II—CONFORMING AMENDMENTS**

**Sec. 201. Trans-Alaska pipeline fund.**
**Sec. 202. Intervention on the High Seas Act.**
**Sec. 203. Federal Water Pollution Control Act.**
**Sec. 204. Deepwater Port Act.**
**Sec. 205. Outer Continental Shelf Lands Act Amendments of 1978.**
**Sec. 206. Notice to State; increased penalties for failure to report.**
**Sec. 207. Qualified authorizing legislation.**

Sec. 208. Effective date.

TITLE III—IMPLEMENTATION OF INTERNATIONAL CONVENTIONS

Sec. 301. Definitions.
Sec. 302. Applicability of conventions.
Sec. 303. Recognition of International Fund.
Sec. 304. Action in United States courts.
Sec. 305. Contribution to International Fund.
Sec. 306. Recognition of foreign judgments.
Sec. 307. Financial responsibility.
Sec. 308. Regulations.

TITLE IV—PREVENTION AND REMOVAL OF OIL AND HAZARDOUS SUBSTANCE DISCHARGES

SUBTITLE A—GENERAL

Sec. 401. Definitions.

SUBTITLE B—PREVENTION

Sec. 411. Review of alcohol and drug abuse and other matters in issuing licenses, certificates of registry, and merchant mariner's documents.
Sec. 412. Term of certificates of registry and merchant mariner's documents.
Sec. 413. Suspension and revocation of seamen's licenses, certificates of registry, and merchant mariner's documents for alcohol and drug abuse.
Sec. 414. Removal of master or individual in charge for intoxication.
Sec. 415. Access to national driver register.
Sec. 416. Manning standards for foreign tank vessels.
Sec. 417. Vessel traffic service systems.
Sec. 418. State authority to require state pilotage for tankers.
Sec. 419. Great Lakes pilotage.
Sec. 420. Study on tanker navigation safety standards.
Sec. 421. Dredge modification study.
Sec. 422. Use of liners.

SUBTITLE C—REMOVAL

Sec. 431. Federal removal authority.
Sec. 432. Contingency plans.
Sec. 433. Oil and hazardous substances strike teams.
Sec. 434. Coast Guard vessel design.
Sec. 435. Equipment inventory.
Sec. 436. Oil pollution research and development program.

SUBTITLE D—PENALTIES

Sec. 441. Increased penalties.

TITLE V—PRINCE WILLIAM SOUND OIL SPILL REMOVAL

Sec. 501. Short title.
Sec. 502. Definitions.

Sec. 503. Tank vessel requirements.
Sec. 504. Vessel traffic service system.
Sec. 505. Equipment and personnel requirements.
Sec. 506. Use of local services.
Sec. 507. Authority of the State of Alaska.
Sec. 508. Environmental assessment.
Sec. 509. Report.

TITLE VI—MISCELLANEOUS

Sec. 601. Conforming amendments to title 46.
Sec. 602. Statutory waivers.
Sec. 603. Studies and reports as adminstrative expenses.
Sec. 604. Savings clause.

*TITLE VII—RESEARCH AND DEVELOPMENT*

*Sec. 701. Oil pollution research and development program.*

# TITLE I—OIL POLLUTION LIABILITY AND COMPENSATION

## SEC. 101. DEFINITIONS.

For the purposes of this Act, the term—

(1) "act of God" means an unanticipated grave natural disaster or other natural phenomenon of an exceptional, inevitable, and irresistible character the effects of which could not have been prevented or avoided by the exercise of due care or foresight;

(2) "claim" means a request, made in writing for a sum certain, for compensation for damages or removal costs resulting from an incident;

(3) "claimant" means any person who presents a claim for compensation under this Act;

(4) "damages" means damages for injury to, destruction of, or loss of natural resources and damages for economic loss specified in section 102(a)(2) of this Act, and includes the cost of assessment of damages.

(5) "discharge" means any emission (other than natural seepage), intentional or unintentional, and includes, but is not limited to, spilling, leaking, pumping, pouring, emitting, emptying, or dumping;

(6) "exclusive economic zone" means the zone established by Presidential Proclamation Numbered 5030, dated March 10, 1983,

(7) "facility" means an onshore facility and an offshore facility;

(8) "foreign offshore unit" means a structure or group of structures which is located, in whole or in part, in the territorial sea or on or over the continental shelf of a foreign country and is or was used for one or more of the following purposes: exploring for, drilling for, producing, storing, handling, transferring, processing, or transporting oil produced from the seabed beneath the for-

eign country's territorial sea or from the foreign country's continental shelf;

(9) "Fund" means the Oil Spill Liability Trust Fund, established by section 9509 of the Internal Revenue Code of 1986;

(10) "guarantor" means any person, other than the responsible party, who provides evidence of financial responsibility for a responsible party under this Act;

(11) "incident" means any occurrence or series of occurrences having the same origin, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge or substantial threat of discharge of oil;

(12) "lessee" means a person holding a leasehold interest in an oil or gas lease on lands beneath navigable waters (as such term is defined in section 2(a) of the Submerged Lands Act (43 U.S.C. 1301)) or on submerged lands of the Outer Continental Shelf, granted or maintained under applicable State law or the Outer Continental Shelf Lands Act;

(13) "mobile offshore drilling unit" means a vessel (other than a self-elevating

lift vessel) capable of use as an offshore facility;

(14) "national contingency plan" means the national contingency plan published under section 311(c) of the Federal Water Pollution Control Act and revised pursuant to section 105 of the Comprehensive Environmental Response, Compensation, and Liability Act;

(15) "natural resources" includes land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the exclusive economic zone), any State or local government, or any foreign government;

(16) "navigable waters" means the waters of the United States, including the territorial sea;

(17) "offshore facility" means—

(A) a facility of any kind (other than a self-elevating lift vessel) which is located, in whole or in part, on lands beneath

navigable waters (as such term is defined in section 2(a) of the Submerged Lands Act (43 U.S.C. 1301)) or on the Outer Continental Shelf and is or was used for one or more of the following purposes: exploring for, drilling for, producing, storing, handling, transferring, processing, or transporting oil produced from lands beneath navigable waters or the Outer Continental Shelf; and

(B) a deepwater port licensed under the Deepwater Port Act of 1974;

(18) "oil" means petroleum, including crude oil or any fraction or residue therefrom;

(19) "onshore facility" means any facility (including, but not limited to, motor vehicles and rolling stock) of any kind, any portion of which is located in, on, or under, any land within the United States other than submerged land;

(20) "owner" means any person holding title to, or in the absence of title, any other indicia of ownership of, whether by lease, permit, contract, license, or other form of

agreement, except that such term does not include a person who, without participating in the management or operation of a vessel or a pipeline, holds indicia of ownership primarily to protect his security interest therein;

(21) "person" means an individual, corporation, partnership, association, Federal agency, State, municipality, commission, or political subdivision of a State, or any interstate body;

(22) "permittee" means a person holding an authorization, license, or permit for geological exploration issued under section 11 of the Outer Continental Shelf Lands Act or applicable State law;

(23) "public vessel" means a vessel owned or bareboat chartered and operated by the United States, or by a State or political subdivision thereof, or by a foreign nation, except when such vessel is engaged in commerce;

(24) "remove" or "removal" refers to removal of the oil from the water and shorelines or the taking of such other actions as may be necessary to minimize or mitigate damage to the public health or welfare, in-

cluding, but not limited to, damage to fish, shellfish, wildlife, and public and private property, shorelines, and beaches;

(25) "removal costs" means the cost of removal taken after a discharge of oil has occurred, including all costs of completing removal and the costs to prevent, minimize, or mitigate oil pollution where there was a substantial threat of discharge of oil, including costs incurred under subsection (c), (d), (e), or (l) of section 311 of the Federal Water Pollution Control Act, the Intervention on the High Seas Act, or section 18 of the Deepwater Port Act of 1974;

(26) "responsible party" means the following:

(A) VESSELS.—In the case of a vessel, the responsible party is any person owning, operating, or chartering by demise, the vessel.

(B) FACILITIES.—In the case of a facility (including a pipeline but not including any other offshore facility), the responsible party is any person owning or operating the facility except that this

term does not include a Federal agency, State, municipality, commission, or political subdivision of a State, or any interstate body, that, as the owner of an onshore facility, transfers possession and right to use the property to another person by lease, assignment, or permit.

(C) OFFSHORE FACILITIES.—In the case of an offshore facility (other than a pipeline or a deepwater port licensed under the Deepwater Port Act of 1974, and except as provided in section 102(a)(4)), the responsible party is the lessee or permittee of the area in which the facility is located, or the holder of a right of use and easement granted under applicable State law or the Outer Continental Shelf Lands Act for the area in which the facility is located (where the holder is a different person than the lessee or permittee).

(D) DEEPWATER PORTS.—In the case of a deepwater port licensed under the Deepwater Port Act of 1974, the responsible party is the licensee.

(27) "Secretary" means the Secretary of the department in which the Coast Guard is operating;

(28) "tanker" means a vessel constructed or adapted for the carriage of oil in bulk or in commercial quantities as cargo; except that the term does not include a non-self-propelled vessel of less than 3,000 gross tons carrying oil in bulk as cargo or in residue from cargo and operating on waters of the United States lying inside the baseline from which the territorial sea is measured or on waters outside such baseline which are part of the Gulf Intracoastal Waterway;

(29) "territorial sea" means the belt of seas measured from the line of ordinary low water along that portion of the coast which is in direct contact with the open sea and the line marking the seaward limit of inland waters, and extending seaward a distance of 12 miles;

(30) "United States" and "State" mean the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the

United States Virgin Islands, the Commonwealth of the Northern Marianas, and any other territory or possession over which the United States has jurisdiction; and

(31) "vessel" means every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water other than a public vessel.

SEC. 102. LIABILITY.

(a) ELEMENTS OF LIABILITY.—

(1) JOINT, SEVERAL, AND STRICT LIABILITY.—Notwithstanding another law and subject to the provisions of this section, the responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the waters of the exclusive economic zone is jointly, severally, and strictly liable for the removal costs and damages specified in paragraph (2) that arise out of or directly result from such incident.

(2) COVERED REMOVAL COSTS AND DAMAGES.—

(A) REMOVAL COSTS.—The removal costs referred to in paragraph (1) are removal costs reasonably consistent with the national contingency plan or applicable State laws, which shall be recoverable by any claimant.

(B) DAMAGES.—The damages referred to in paragraph (1) are the following:

(i) NATURAL RESOURCES.—Damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing the injury, destruction, or loss, which shall be recoverable by a United States trustee or a State trustee.

(ii) REAL OR PERSONAL PROPERTY.—Damages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases the property.

(iii) SUBSISTENCE USE.—Damages for loss of subsistence use of

natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost.

(iv) REVENUES.—Damages equal to the loss of taxes, royalties, rents, fees, or net profits shares, for a period not to exceed one year, due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by the Government of the United States, a State, or a political subdivision thereof.

(v) PROFITS AND EARNING CAPACITY.—Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant who derives at least 25 percent of his or her earnings from the activities which utilize such property or natural resources, or, if such ac-

tivities are seasonal in nature, 25 percent of his or her earnings during the applicable season.

(3) EXCLUDED DISCHARGES.—Paragraph (1) does not apply to any discharge permitted by a permit issued under Federal, State, or local law.

(4) DIVISION OF RESPONSIBILITY FOR MODU DISCHARGES ON OR ABOVE THE WATER.—

(A) TREATED FIRST AS A TANKER.—For purposes of determining the responsible party and applying this Act, a mobile offshore drilling unit which is being used as an offshore facility shall be deemed to be a tanker with respect to the discharge, or the substantial threat of a discharge, of oil or or above the surface of the water, except as provided in subparagraph (B).

(B) TREATED AS A FACILITY FOR EXCESS LIABILITY.—To the extent that removal costs and damages from any incident described in subparagraph (A) exceed the amount for which the respon-

sible party is liable under subparagraph (A) (as such amount may be limited under subsection (c)(1)(A)), the mobile offshore drilling unit shall be deemed to be an offshore facility. For purposes of applying subsection (c)(1)(C), the amount specified in that subsection shall be reduced by the amount for which the responsible party is liable under subparagraph (A).

(5) LIABILITY OF THIRD PARTIES.—

(A) IN GENERAL.—

(i) Except as provided in clause (ii), in any case where the responsible party can establish that a discharge and the resulting removal costs and damages were caused solely by an act or omission of one or more third parties in accordance with subsection (b)(1)(B) (or solely by such an act or omission in combination with an act of God or an act of war), such third party or parties shall be liable under this section.

(ii) A third party is not liable for removal costs or damages, other than personal injury or wrongful death, if retained or directed by the President under sections 311(c)(1)(B) or 311(c)(1)(C) of the Federal Water Pollution Control Act, unless the third party is grossly negligent or engages in willful misconduct.

(B) LIMITATION APPLIED.—

(i) OWNER OR OPERATOR OF VESSEL OR FACILITY.—If such third party or parties are the owner or operator of a vessel or facility which caused the incident, the liability of the third party or parties shall be subject to the limits provided in subsection (c), as applied with respect to such vessel or facility.

(ii) OTHER CASES.—In any other case, the liability of such third party or parties shall not exceed the limitation which would have been applicable to the responsible party of the vessel or facility from which the dis-

charge actually occurred if such responsible party were liable.

(b) DEFENSES TO LIABILITY.—

(1) COMPLETE DEFENSES.—Except when the responsible party has failed or refused to report the incident where required by law and the responsible party knows or has reason to know of the incident, there is no liability under subsection (a) if the responsible party establishes that the incident—

(A) resulted from an act of God, an act of war, hostilities, civil war, or insurrection; or

(B) was solely caused by an act or omission of one or more persons other than—

(i) a responsible party;

(ii) an employee or agent of a responsible party; or

(iii) one whose act or omission occurs in connection with a contractual relationship with a responsible party.

(2) DEFENSES AS TO PARTICULAR CLAIMANTS.—There is no liability under subsection (a)—

(A) as to a particular claimant, where the incident is caused, in whole or part, by the gross negligence or willful misconduct of that claimant; or

(B) as to a particular claimant, to the extent that the incident is caused by the negligence of that claimant.

(c) LIMITS ON LIABILITY.—

(1) GENERAL RULE.—The total of the liability of a responsible party under subsection (a) and any removal costs incurred by, or on behalf of, the responsible party with respect to each incident shall not exceed—

(A) $500 per gross ton or $5,000,000, whichever is greater (but not to exceed $60,000,000), for any tanker;

(B) $300 per gross ton or $500,000, whichever is greater, for any other vessel; or

(C) $75,000,000 for any facility.

(2) EXCEPTIONS.—

(A) PROXIMATE CAUSE.—Paragraph (1) does not apply if the incident was proximately caused by—

(i) willful misconduct or gross negligence within the privity or knowledge of the responsible party; or

(ii) a violation, within the privity or knowledge of the responsible party, of applicable Federal safety, construction, or operating regulations.

(B) FAILURE OR REFUSAL OF RESPONSIBLE PARTY.—Paragraph (1) does not apply if the responsible party fails or refuses—

(i) to report the incident where required by law and the responsible party knows or has reason to know of the incident;

(ii) to provide all reasonable cooperation and assistance requested by a responsible official in connection with removal activities; or

(iii) to comply with an order issued under section 311(e) of the Federal Water Pollution Control Act, in which case the responsible party may be liable to the United States for punitive damages in an amount up to three times the removal costs and damages incurred by the Fund as a result of the failure to comply.

(3) ADJUSTING LIMITS OF LIABILITY.—

(A) FACILITIES.—The Secretary may establish by regulation, with respect to any class or category of facility (other than an offshore facility which is not a deepwater port) a maximum limit of liability under this section of less than $75,000,000, but not less than $8,000,000, taking into account the size, storage capacity, oil throughput, proximity to sensitive areas, type of oil handled, history of discharges, and other factors relevant to risks posed by the class or category of facility.

(B) PERIODIC REPORTS.—The Secretary shall, within six months of the en-

actment of this Act, and from time to time thereafter, report to Congress on the desirability of adjusting the limits of liability specified in paragraph (1) of this subsection.

(d) LIABILITY FOR INTEREST.—

(1) GENERAL RULE.—The responsible party or his or her guarantor shall be liable to a claimant for interest on the amount paid in satisfaction of a claim under this section for the period described in paragraph (2).

(2) PERIOD.—

(A) IN GENERAL.—Except as provided in subparagraph (B), the period for which interest shall be paid under paragraph (1) is the period beginning on the date on which the claim is presented to the responsible party, or guarantor, and ending on the date on which the claim is paid, inclusive.

(B) EXCLUSION OF PERIOD DUE TO OFFER BY GUARANTOR.—If the guarantor offers to the claimant an amount equal to or greater than that finally paid in satisfaction of the claim, the period de-

scribed in subparagraph (A) shall not include the period beginning on the date such offer is made and ending on the date such offer is accepted. If the offer is made within 60 days after the date upon which the claim is presented under section 104(a), the period described in subparagraph (A) does not include any period before such offer is accepted.

(C) EXCLUSION OF PERIODS IN INTEREST OF JUSTICE.—The period described in Paragraph (A) does not include any period—

(i) during which a claimant is not paid due to reasons beyond the control of the responsible party; and

(ii) if it would not serve the interest of justice to include such period.

(D) CALCULATION OF INTEREST.—The interest paid under this subsection shall be calculated at the average of the highest rate for commercial and finance company paper of maturities of 180 days or less obtaining on each of the days in-

cluded within the period for which interest must be paid to the claimant, as published in the Federal Reserve Bulletin.

(E) INTEREST NOT SUBJECT TO LIABILITY LIMITS.—Interest under this paragraph is in addition to damages for which claims may be asserted under section 102 and shall be paid without regard to any limitation of liability under subsection (c)(1) of this section. The payment of interest under this subsection by a guarantor is subject to section 107(e).

(e) NATURAL RESOURCES.—

(1) LIABILITY.—In the case of an injury to, destruction of, or loss of natural resources under this section, liability shall be—

(A) to the United States Government for natural resources belonging to, managed by, controlled by, or appertaining to the United States,

(B) to any State for natural resources within the State or belonging to, managed by, controlled by, or appertaining to such State, and

(C) when subsection (f) of this section applies, to the government of a foreign country for natural resources belonging to, managed by, controlled by, or appertaining to such country.

(2) DESIGNATION OF TRUSTEES.—

(A) IN GENERAL.—The President, or the authorized representative of any State or of the foreign government, shall act on behalf of the public as trustee of such natural resources to recover for such damages.

(B) FEDERAL TRUSTEES.—The President shall designate the Federal officials who shall act on behalf of the public as trustees for natural resources under this Act.

(C) STATE TRUSTEES.—The Governor of each State shall designate State and local officials who may act on behalf of the public as trustee for natural resources under this Act and shall notify the President of such designations.

(3) FUNCTIONS OF TRUSTEES.—

(A) FEDERAL TRUSTEES.—The officials designated under paragraph (2)(B)—

(i) shall assess damages for injury to, destruction of, or loss of natural resources for purposes of this Act for the natural resources under their trusteeship;

(ii) may, upon request of and reimbursement from a State and at the Federal officials' discretion, assess damages for the natural resources under the State's trusteeship; and

(iii) shall develop and implement a plan for the restoration, rehabilitation, or replacement or acquisition of the equivalent of the natural resources under their trusteeship.

(B) STATE TRUSTEES.—The officials designated under paragraph (2)(C)—

(i) shall assess damages to natural resources for the purposes of this Act for the natural resources under their trusteeship; and

(ii) shall develop and implement a plan for the restoration, rehabilitation, or replacement or acquisition of the equivalent of the natural resources under their trusteeship.

(C) NOTICE AND OPPORTUNITY TO BE HEARD.—Plans shall be developed and implemented under subparagraphs (A)(iii) and (B)(ii) only after adequate public notice and opportunity for hearing and consideration of all public comment.

(4) MEASURE OF DAMAGES.—

(A) IN GENERAL.—The measure of damages in any action under this section for injury to, destruction of, or loss of natural resources is the cost of restoring, rehabilitating, replacing, or acquiring the equivalent of the damaged natural resources, and the value of the interim lost public uses of those resources.

(B) DETERMINE COSTS WITH RESPECT TO PLANS.—Costs shall be determined under subparagraph (A) with respect to plans adopted under paragraph (3) (A) and (B).

(C) NO DOUBLE RECOVERY.—There shall be no double recovery under this Act for natural resource damages, including the costs of damage assessment or restoration, rehabilitation, replacement, or acquisition for the same incident and natural resource.

(5) DAMAGE ASSESSMENT REGULATIONS.—

(A) REGULATIONS.—Not later than 2 years after the date of enactment of this Act, the Under Secretary of Commerce for Oceans and Atmosphere, in consultation with other Federal natural resource trustees, shall promulgate regulations, consistent with paragraph (4)(A), for the assessment of damages to natural resources arising out of an incident.

(B) REBUTTABLE PRESUMPTION.—Any determination or assessment of damages to natural resources for the purposes of this Act made by a Federal or State trustee in accordance with the regulations promulgated under subparagraph (A) shall have the force and effect of a rebuttable presumption on behalf of

the trustee in any administrative or judicial proceeding under this Act.

(6) USE OF RECOVERED SUMS.—Sums recovered under this Act by a Federal or State trustee for damages to natural resources shall be retained by the trustee, without further appropriation, for use only to reimburse or pay costs incurred by the trustee under paragraph (3) with respect to the damaged natural resources. Any amounts in excess of those required for these reimbursements and costs shall be deposited in the Fund.

(7) CIVIL PENALTY.—

(A) IN GENERAL.—A person liable under this Act for damages resulting from a discharge of oil is also liable to the United States Government for a civil penalty of not more than the maximum amount for which the person may be held liable for that discharge under section 102 of this Act, if the discharge results in damages to natural resources that cannot be fully restored, replaced, or rehabilitated and for which no equivalent can be acquired.

(B) ASSESSMENT, SETTLEMENT, AND COLLECTION.—The penalty shall be assessed in writing by the Secretary, in consultation with the appropriate natural resource trustees. In determining the amount of a civil penalty under this paragraph, the Secretary shall take into account the nature and extent of the damages to natural resources, the degree of culpability of the person held liable for the discharge, and the nature and extent of efforts taken by that person to prevent the damages to natural resources. The Secretary may compromise, modify, or remit, with or without conditions, any civil penalty which is subject to imposition or which has been imposed under this paragraph. If any person fails to pay an assessed civil penalty after it has become final, the Secretary may refer the matter to the Attorney General for collection.

(C) SEPARATE LIABILITY.—Except as provided in section 302, any liability for a civil penalty under this paragraph shall

be separate from and in addition to any liability for a discharge of oil under section 102.

(D) DEPOSIT INTO FUND.—Sums received under this paragraph shall be deposited in the Fund.

(f) RECOVERY BY FOREIGN CLAIMANTS.—

(1) IN GENERAL.—A foreign claimant may only recover removal costs and damages under this Act in accordance with this subsection.

(2) COVERED DISCHARGES.—A foreign claimant may recover only if the discharge of oil was from—

(A) a facility,

(B) a vessel in the navigable waters, or

(C) a tanker carrying oil originally received at the terminal of the pipeline constructed under the Trans-Alaska Pipeline Authorization Act for transportation to a port in the United States, the incident having occurred prior to delivery to that port,

and resulted in the presence of oil in or on the territorial sea, internal waters, or adjacent shoreline of a foreign country.

(3) REQUIREMENTS.—A foreign claimant may only recover if—

(A) the claimant first seeks compensation under title III;

(B) the claimant has not been otherwise compensated for the removal costs or damages; and

(C) recovery is authorized by a treaty or executive agreement between the United States and the claimant's country, or the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants.

(4) EXCEPTION FOR CANADIAN CLAIMANTS RESPECTING TRANS-ALASKA PIPELINE OIL.—Paragraph (3)(C) shall not apply with respect to recovery by a resident of Canada in the case of an incident described in paragraph (2)(C).

(5) DEFINITION OF FOREIGN CLAIMANT.—For purposes of this subsection, the term "foreign claimant" means any person residing in a foreign country, the government of a foreign country, or any agency or political subdivision thereof.

(g) RECOVERY OF REMOVAL COSTS AND DAMAGES BY RESPONSIBLE PARTY.—

(1) IN GENERAL.—The responsible party for a vessel or facility from which oil is discharged, or which posed the substantial threat of a discharge of oil, may assert a claim for removal costs and damages under subsection (a) only if the responsible party can show that—

(A) the responsible party is entitled to a defense to liability under subsection (b), or

(B) the responsible party is entitled to a limitation of liability under subsection (c).

(2) EXTENT OF RECOVERY.—A responsible party who is entitled to a limitation of liability, may assert a claim under paragraph (1) of subsection (a) only to the extent that the

sum of the removal costs and damages incurred by the responsible party plus the amounts paid by the responsible party or by the guarantor on behalf of the responsible party for claims asserted under subsection (a) exceeds the amount to which the total of the liability under subsection (a) and removal costs and damages incurred by, or on behalf of, the responsible party is limited under subsection (c).

(h) CONTRIBUTION.—A person may bring an action for contribution against any other person who is liable or potentially liable under this section. Such an action shall be brought in accordance with section 108.

(i) INDEMNIFICATION AGREEMENTS.—

(1) IN GENERAL.—No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer the liability imposed under this section from the responsible party or from any person who may be liable for an incident under this section to any other person. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such

agreement for any liability under this section.

(2) RELATIONSHIP TO OTHER CAUSES OF ACTION.—Nothing in this Act, including the provision of paragraph (1) of this subsection, shall bar a cause of action that a responsible party subject to liability under this section, or a guarantor, has or would have, by reason of subrogation or otherwise against any person.

(j) CONSULTATION ON REMOVAL ACTIONS.—The Secretary shall consult with the affected trustees designated under section 102(e)(2) on the appropriate removal action to be taken in connection with any discharge of oil. Removal with respect to any discharge shall be considered completed when so determined by the Secretary and the Governor or Governors of the affected State or States, in accordance with the national contingency plan and applicable State laws.

## SEC. 103. USES OF THE FUND.

(a) IN GENERAL.—

(1) DIRECTOR USES.—The Fund shall be directly available to the Secretary for—

(A) the payment of removal costs incurred by Federal authorities;

(B) the costs incurred by Federal or State trustees in carrying out their functions under section 102(e) for assessing damages to natural resources and for developing plans for the restoration, rehabilitation, or replacement of damaged resources;

(C) the payment of obligations under subsection (e) of this section;

(D) the payment of removal costs and damages resulting from the discharge, or substantial threat of discharge, of oil from a foreign offshore unit;

(E) the payment of personnel, equipment, and training costs associated with the maintenance of the strike forces authorized under section 311(c) of the Federal Water Pollution Control Act;

(F) the payment of administrative and personnel costs and expenses reasonably necessary for and incidental to the implementation and administration of

this Act including the studies and reports required under sections 420, 421, 422 and 509 of this Act; and

(G) the payment of contributions to the International Fund under title III of this Act;

(H) the payment of Federal expenses under section 311(j) of the Federal Water Pollution Control Act;

(I) the preparation of regulations required under section 102(e)(5); and

(J) the research and development program authorized under section 311(t) of the Federal Water Pollution Control Act.

(2) SETTLEMENT OF CLAIMS.—The Fund shall also be available to the Secretary for the payment of otherwise uncompensated claims for removal costs and damages in accordance with section 104.

(b) DEFENSES TO LIABILITY FOR THE FUND.—The Fund shall not be available to pay any claim for removal costs or damages—

(1) as to a particular claimant, where the incident or damages are caused, in whole or

part, by the gross negligence or willful misconduct of that claimant; or

(2) as to a particular claimant, to the extent that the incident or damages are caused by the negligence of that claimant.

(c) MAXIMUM AMOUNT PAYABLE FROM THE FUND.—The maximum amount which may be paid from the Fund with respect to any incident in combination with payment, if any, under the International Convention on the Establishment of an International Fund for Compensation of Oil Pollution Damage, 1984, shall not exceed $1,000,000,000.

(d) FEDERAL AND STATE OFFICIALS WHO MAY OBLIGATE FROM THE FUND.—The Secretary is authorized to promulgate regulations designating one or more Federal officials who may obligate money in the Fund in accordance with subsection (a) of this section or portions thereof. The Secretary shall designate the Commandant of the Coast Guard to be a Federal official who may obligate money in the Fund in accordance with subsection (a). The Secretary is also authorized to delegate authority to obligate money in the Fund or to settle claims to officials of a State with an ade-

quate program operating under a cooperative agreement with the Federal Government.

(e) OBLIGATION OF THE FUND BY STATE OFFICIALS.—

(1) AUTHORITY.—In accordance with regulations promulgated under this subsection, the Governor of each State, or any appropriate State official designated by the Governor, is authorized to obligate the Fund for payment in an amount not to exceed $250,000 for removal costs not inconsistent with the national contingency plan required for the immediate response to an incident.

(2) NOTIFICATION.—A Governor or designee exercising the authority granted by this subsection shall notify the Secretary within 24 hours of any obligation of a payment from the Fund.

(3) REGULATIONS.—Not later than six months after the date of the enactment of this Act, the Secretary shall publish proposed regulations detailing the manner in which the authority to obligate the Fund and to enter into agreements under this subsection is to be exercised, and, not later than three months

after the close of the comment period on such proposed regulations, the Secretary shall promulgate the regulations.

(f) RIGHTS OF SUBROGATION.—Payment of any claim by the Fund under this Act shall be subject to the United States Government acquiring by subrogation of all rights of the claimant to recover from the responsible party.

(g) AUDIT.—The Comptroller General shall provide an audit review team to audit all payments, obligations, reimbursements, or other uses of the Fund, to assure that the Fund is being properly administered and that claims are being appropriately and expeditiously considered. The Comptroller General shall submit to the Congress an interim report one year after the establishment of the Fund. The Comptroller General shall thereafter provide such auditing of the Fund as is appropriate. Each Federal agency shall cooperate with the Comptroller General in carrying out this subsection.

(h) PERIOD OF LIMITATIONS FOR CLAIMS.—

(1) REMOVAL COSTS.—No claim may be presented under this section for recovery of removal costs unless the claim is presented

within three years after the date of completion of all removal action.

(2) DAMAGES.—No claim may be presented under this section for recovery of damages unless the claim is presented within three years after the date on which the loss and its connection with the discharge in question were reasonably discoverable with the exercise of due care, or in the case of damages under section 102(a)(2), if later, the date on which final regulations are promulgated under section 102(e)(5).

(i) LIMITATION ON PAYMENT FOR SAME COSTS.—Where the Secretary has paid an amount out of the Fund for any removal costs or damages specified under subsection (a), no other claim may be paid out of the Fund for the same removal costs or damages.

(j) OBLIGATION IN ACCORDANCE WITH PLAN.—

(1) IN GENERAL.—Except as provided in paragraph (2), amounts may be obligated from the Fund for the restoration, rehabilitation, or replacement, or acquisition of natu-

ral resources only in accordance with a plan adopted under section 102(e)(3).

(2) EXCEPTION.—Paragraph (1) shall not apply in a situation requiring action to avoid irreversible loss of natural resources or to prevent or reduce any continuing danger to natural resources or similar need for emergency action.

SEC. 104. CLAIMS PROCEDURE.

(a) PRESENTATION TO RESPONSIBLE PARTY OR GUARANTOR.—Except as provided in subsection (b), all claims for removal costs or damages shall be presented first to the responsible party or guarantor of the source designated under section 105(a).

(b) PRESENTATION TO FUND.—Claims for removal costs or damages may be presented first to the Fund—

(1) where the Secretary has advertised or otherwise notified claimants in accordance with section 105(c);

(2) by a responsible party who may assert a claim under section 102(g);

(3) by the Governor of a State for removal costs incurred by the State; or

(4) by a United States claimant in a case where a foreign offshore unit has discharged oil causing damage for which the Fund is liable under section 103(a)(1)(D).

(c) ELECTION.—If a claim is presented in accordance with subsection (a) and—

(1) each person to whom the claim is presented denies all liability for the claim, or

(2) the claim is not settled by any person by payment within 180 days after the date upon which (A) the claim was presented, or (B) advertising was begun pursuant to section 105(b), whichever is later,

the claimant may elect to commence an action in court against the responsible party or guarantor or to present the claim to the Fund.

(d) UNCOMPENSATED DAMAGES.—If a claim is presented in accordance with subsection (a) and full and adequate compensation is unavailable, either because the claim exceeds a limit of liability invoked under section 102 or because the responsible party and his or her guarantor are financially incapable of meeting their obligations in full, a claim for the uncompensated damages may be presented to the Fund.

(e) PROCEDURE FOR CLAIMS AGAINST THE FUND.—The Secretary shall promulgate, and may from time to time amend, regulations for the presentation, filing, processing, settlement, and adjudication of claims under this Act against the Fund.

SEC. 105. DESIGNATION AND ADVERTISEMENT.

(a) DESIGNATION OF SOURCE AND NOTIFICATION.—When the Secretary receives information of an incident, the Secretary shall, where possible and appropriate, designate the source or sources of the discharge. If a designated source is a vessel or a facility, the Secretary shall immediately notify the responsible party and the guarantor, if known, of the designation.

(b) ADVERTISEMENT BY THE RESPONSIBLE PARTY OR GUARANTOR.—If a responsible party or guarantor fails to inform the Secretary within five days after receiving notification of a designation under subsection (a) of his or her denial of the designation, such party or guarantor shall advertise the designation and the procedures by which claims may be presented, in accordance with regulations promulgated by the Secretary. Advertisement under the preceding sentence shall begin no later than 15 days after the date of the designation

made under subsection (a). If advertisement is not otherwise made in accordance with this subsection, the Secretary shall promptly and at the expense of the responsible party or the guarantor involved, advertise the designation and the procedures by which claims may be presented to the responsible party or guarantor. Advertisement under this subsection shall continue for a period of no less than 30 days.

(c) ADVERTISEMENT BY THE SECRETARY.—If—

(1) the responsible party and the guarantor both deny a designation within five days after receiving notification of a designation under subsection (a),

(2) the source of the oil pollution was a public vessel, or

(3) the Secretary is unable to designate the source or sources of the oil pollution under subsection (a),

the Secretary shall advertise or otherwise notify potential claimants of the procedures by which claims may be presented to the Fund.

SEC. 106. SUBROGATION.

(a) IN GENERAL.—Any person, including the Fund, who pays compensation pursuant to this

Act to any claimant for removal costs or damages shall be subrogated to all rights, claims, and causes of action that the claimant has under this Act.

(b) ACTIONS ON BEHALF OF THE FUND.—At the request of the Secretary, the Attorney General shall commence an action on behalf of the Fund to recover any compensation paid by the Fund to any claimant pursuant to this Act, and all costs incurred by the Fund by reason of the claim, including interest (including prejudgment interest), administrative and adjudicative costs, and attorney's fees. Such an action may be commenced against any responsible party or (subject to section 107) guarantor, or against any other person who is liable, pursuant to any law, to the compensated claimant or to the Fund, for the cost or damages for which the compensation was paid. Such an action shall be commenced against the responsible foreign government or other responsible party to recover any removal costs or damages paid from the Fund as the result of the discharge, or substantial threat of discharge, of oil from a foreign offshore unit.

**SEC. 107. FINANCIAL RESPONSIBILITY.**

(a) VESSELS.—

(1) REQUIREMENT.—The responsible party for—

(A) any vessel over 300 gross tons (except a non-self-propelled vessel that does not carry oil as cargo or fuel) using any port or place in the United States or the navigable waters; or

(B) any vessel using the waters of the exclusive economic zone to transship or lighter oil destined for a port or place subject to the jurisdiction of the United States;

shall establish and maintain, in accordance with regulations promulgated by the Secretary, evidence of financial responsibility sufficient to meet the maximum amount of liability to which, in the case of a tanker, the responsible party could be subjected under section 102(c)(1)(A) of this Act, or to which, in the case of any other vessel, the responsible party could be subjected under section 102(c)(1)(B) of this Act, in any case where the responsible party would be entitled to limit liability under that section. If the responsible

party owns or operates more than one vessel, evidence of financial responsibility need be established only to meet the maximum liability applicable to the largest of such vessels.

(2) WITHHOLDING CLEARANCE.—The Secretary of the Treasury shall withhold or revoke the clearance required by section 4197 of the Revised Statutes of the United States of any vessel subject to this subsection that does not have the certification required under this subsection.

(3) DENYING ENTRY TO OR DETAINING VESSELS.—The Secretary may (A) deny entry to any offshore facility or any port or place in the United States, or to the navigable waters, or (B) detain at such a facility or port or place, any vessel that, upon request, does not produce the certification required under this subsection or the regulations issued under this subsection.

(4) SEIZURE OF VESSEL AND OIL.—Any vessel subject to the requirements of this subsection which is found in the navigable waters without the necessary evidence of financial responsibility and any oil carried as

cargo on such vessel shall be subject to seizure by the United States.

(b) OFFSHORE FACILITIES.—Each responsible party with respect to an offshore facility shall establish and maintain evidence of financial responsibility sufficient to meet the maximum amount of liability to which the responsible party could be subjected under section 102 of this Act in a case where the responsible party would be entitled to limit liability under that section. In cases where a person is the responsible party for more than one facility subject to this subsection, evidence of financial responsibility need be established only to meet the maximum liability applicable to one such facility.

(c) METHODS OF FINANCIAL RESPONSIBILITY.—Financial responsibility under this section may be established by any one, or by any combination, of the following methods, which the Secretary determines to be acceptable: evidence of insurance, surety bond, guarantee, letter of credit, qualification as a self-insurer, or other evidence of financial responsibility. Any bond filed shall be issued by a bonding company authorized to do business in the United States. In promulgating re-

quirements under this section, the Secretary is authorized to specify policy or other contractual terms, conditions, or defenses which are necessary, or which are unacceptable, in establishing such evidence of financial responsibility to effectuate the purposes of this Act.

(d) CLAIMS AGAINST GUARANTOR.—Any claim for which liability may be established under section 102 of this Act may be asserted directly against any guarantor providing evidence of financial responsibility for a responsible party liable under that section for removal costs and damages to which the claim pertains. In defending against such a claim, the guarantor may invoke (1) all rights and defenses which would be available to the responsible party under section 102, (2) any defense authorized by the Secretary in requirements promulgated by the Secretary under this section, and (3) the defense that the incident was caused by the willful misconduct of the responsible party. The guarantor may not invoke any other defense that might be available in proceedings brought by the responsible party against the guarantor.

(e) LIMITATION ON GUARANTOR'S LIABILITY.—Nothing in this Act shall impose liability with respect to an incident on any guarantor for damages or removal costs which exceeds, in the aggregate, the amount of financial responsibility required under this Act which the guarantor has provided for the responsible party for any vessel or facility which was a source or cause of the incident.

(f) CIVIL PENALTY.—

(1) IN GENERAL.—Any person who, after notice and an opportunity for a hearing, is found to have failed to comply with the requirements of this section or the regulations issued under this section, or with a denial or detention order issued under subsection (a)(3) of this section, shall be liable to the United States for a civil penalty, not to exceed $25,000 per day of violation. The amount of the civil penalty shall be assessed by the Secretary by written notice. In determining the amount of a penalty, the Secretary shall take into account the nature, circumstances, extent, and gravity of the violation, the degree of culpability, any history of prior violation, ability to pay, and such other

matters as justice may require. The Secretary may compromise, modify, or remit, with or without conditions, any civil penalty which is subject to imposition or which has been imposed under this paragraph. If any person fails to pay an assessed civil penalty after it has become final, the Secretary may refer the matter to the Attorney General for collection.

(2) JUDICIAL RELIEF.—In addition to, or in lieu of, assessing a penalty under paragraph (1) of this subsection, the Secretary may request the Attorney General to secure such relief as necessary to compel compliance with this section, including, but not limited to, a judicial order terminating operations. The district courts of the United States shall have jurisdiction to grant such relief as the public interest and the equities of the case may require.

(g) CONTINUATION OF REGULATIONS.—Any regulation respecting financial responsibility, which has been issued pursuant to any provision of law repealed or superseded by this Act, and which is in effect on the date immediately preceding the effective date of this Act, shall be deemed

and construed to be a regulation issued pursuant to this section. Such a regulation shall remain in full force and effect unless and until superseded by new regulations issued under this section.

(h) UNIFIED CERTIFICATE.—The Secretary may issue one certificate of financial responsibility for purposes of this Act and any other law.

SEC. 108. LITIGATION, JURISDICTION, AND VENUE.

(a) REVIEW OF REGULATIONS.—Review of any regulation promulgated under this Act may be had upon application by any interested person only in the Circuit Court of Appeals of the United States for the District of Columbia. Any such application shall be made within 90 days after the date of promulgation of such regulation.

(b) JURISDICTION.—Except as provided in subsection (a) of this section, the United States district courts shall have original jurisdiction over all causes of action under this Act (which shall be deemed to include actions under the International Convention on Civil Liability for Oil Pollution Damages, 1984, and the International Convention on the Establishment of an International Fund for Compensation for Oil Pollution Damage, 1984),

without regard to the citizenship of the parties or the amount in controversy.

(c) VENUE.—Venue shall lie in any district in which the incident, injury, or damages occurred, or in which the defendant resides, may be found, has its principal office, or has appointed an agent for service of process. For the purposes of this section, the Fund, and the International Fund established under article 2 of the International Convention on the Establishment of an International Fund for Compensation for Oil Pollution Damage, 1984, shall reside in the District of Columbia.

(d) SAVINGS PROVISION.—Nothing in this Act shall affect any action commenced before the date of enactment of this Act.

(e) PERIOD OF LIMITATIONS.—

(1) DAMAGES.—Except as provided in paragraphs (3) and (4), an action may not be commenced for damages under this Act, unless that action is commenced within three years after the date on which the loss and its connection with the discharge in question were reasonably discoverable with the exercise of due care, or in the case of damages described in section 102(a)(2)(B)(i), if later,

the date on which regulations are promulgated under section 102(e)(5).

(2) REMOVAL COSTS.—Except as provided in paragraphs (3) and (4), an action may not be commenced for recovery of removal costs under this Act, unless that action is commenced within three years after completion of the removal action. An action may be commenced under section 102 for recovery of removal costs at any time after such removal costs have been incurred.

(3) ACTIONS FOR CONTRIBUTION.—An action may not be commenced for contribution for any removal costs or damages unless that action is commenced within three years after—

(A) the date of judgment in any action under this Act for recovery of such removal costs or damages, or

(B) the date of entry of a judicially approved settlement with respect to such removal costs or damages.

(4) SUBROGATION.—An action based on rights subrogated pursuant to this Act by reason of payment of a claim may not be

commenced under this Act unless that action is commenced within three years after the date of payment of such claim.

SEC. 109. RELATIONSHIP TO OTHER LAW.

(a) PREEMPTION.—

(1) ACTIONS PREEMPTED.—Except as provided in this Act, no action arising out of discharge of oil from a vessel or facility, other than an action for personal injury or wrongful death, may be brought in any court of the United States or of any State or political subdivision thereof.

(2) STATE FUNDS AND ACCOUNTS.—Nothing in this Act, or in sections 4611 and 9509 of the Internal Revenue Code of 1986, shall affect the authority of any State (A) to establish or continue in effect an oil spill fund or account; or (B) to require any person to contribute to that fund or account. However, if the State fund or account is supported by contributions levied upon persons who contribute to the Fund established by this Act, the State fund or account may not be used to compensate any person for damages under this Act.

(b) NO PREEMPTION OF CIVIL PENALTIES.—Nothing in this Act or section 9509 of the Internal Revenue Code of 1954 shall affect the authority of the United States or any State or political subdivision thereof to impose, or to determine the amount of, any fine or penalty for any violation of law relating to an incident.

(c) FINANCIAL RESPONSIBILITY.—Except as provided in this Act, a responsible party for a vessel or facility who establishes and maintans evidence of financial responsibility in accordance with this title shall not be required under any State or local law, rule, or regulation to establish or maintain any other evidence of financial responsibility in connection with liability for the discharge, or substantial threat of a discharge, of oil from such vessel or facility. Evidence of compliance with the financial responsibility requirements of this title shall be accepted by a State in lieu of any other requirement of financial responsibility imposed by such State in connection with liability for the discharge of oil from such vessel or facility. A State may enforce, on the navigable waters of the State, the requirements for evidence

of financial responsibility imposed under section 107 of this Act.

(d) LIMITATION OF LIABILITY ACT.—The Act of March 3, 1851, shall not apply to removal costs and damages that arise out of or directly result from an incident involving the discharge or substantial threat or discharge of oil.

SEC. 110. EFFECTIVE DATE.

(a) IN GENERAL.—Except as provided in subsection (b), this Act shall apply with respect to an incident occurring after the date of the enactment of this Act.

(b) PAYMENTS FROM FUND.—Payments under section 103(a) may not be made before the commencement date (as that term is defined in section 4611(f)(2) of the Internal Revenue Code of 1986).

# TITLE II—CONFORMING AMENDMENTS

SEC. 201. TRANS-ALASKA PIPELINE FUND.

(a) Section 204(b) of the Trans-Alaska Pipeline Authorization Act is amended—

(1) in the first sentence, by inserting after "any area" the following: "in the State of Alaska";

(2) in the first sentence, by inserting after "any activities" the following: "related to the Trans-Alaska oil pipeline"; and

(3) by inserting at the end of the subsection the following new sentence: "This subsection shall not apply to removal costs covered by the Oil Pollution Prevention, Removal, Liability, and Compensation Act of 1989.".

(b) Subsection (c) of section 204 of the Trans-Alaska Pipeline Authorization Act is repealed. The repeal made by the preceding sentence shall not affect the applicability of that subsection to claims arising before the date of the enactment of this Act. The repeal of paragraphs (4), (6), and (8) of that subsection shall only become effective upon the payment by the Board of Trustees of the Trans-Alaska Pipeline Liability Fund of all claims certified under subsection (c) of this section and the rebate of all remaining amounts under, and the completion of all actions required to carry out, such subsection.

(c)(1) Not later than 210 days after the date of enactment of this Act, the Board of Trustees of the Trans-Alaska Pipeline Liability Fund shall certify to the Secretary the total amount of claims out-

standing against that Fund as of the date of enactment of this Act. The amount of that Fund exceeding the total amount so certified shall be rebated directly, on a pro data basis, to the owners of the oil at the time it was loaded on the vessel.

(2) After the settlement of all claims described in paragraph (1) and the completion of all actions, if any, by the Trans-Alaska Pipeline Fund for recovery of amounts paid on such claim, the remaining amounts in that Fund shall be rebated directly, on a pro rata basis, to the owners of the oil at the time it was loaded on the vessel.

(3) Whenever a rebate is made on a pro rata basis to the owners of oil under paragraph (1) or (2) of this subsection, each owner's share of the rebate shall be an amount determined by dividing the amount contributed by that owner to the Trans-Alaska Pipeline Liability Fund by the total amount contributed by all such owners of that Fund.

(d) Officers and trustees, both present and former, of the Trans-Alaska Pipeline Liability Fund shall not be subject to any liability incurred by that Fund or by the present and past officers

and trustees of that Fund, other than liability for gross negligence or willful misconduct.

**SEC. 202. INTERVENTION ON THE HIGH SEAS ACT.**

Section 17 of the Intervention on the High Seas Act is amended to read as follows:

"SEC. 17. The Oil Spill Liability Trust Fund shall be available to the Secretary for actions taken under sections 5 and 7 of this Act.".

**SEC. 203. FEDERAL WATER POLLUTION CONTROL ACT.**

Section 311 of the Federal Water Pollution Control Act is amended as follows:

(1) Subsection (c)(2) is amended—

(A) in subparagraph (D) by inserting "safeguard against as well as" after "surveillance and notice designed to"; and

(B) in subparagraph (H) by striking "reimbursed from the fund established under subsection (k) of this section for the reasonable costs incurred in such removal" and inserting "reimbursed, in the case of any discharges of oil from a vessel or facility, for the reasonable costs incurred for that removal, from the Oil Spill Liability Trust Fund".

**(2) Subsection (d) is amended by striking out the last sentence.**

**(3) subsection (e) is amended to read as follows:**

**"(e)(1) In addition to any action taken by a State or local government, when the President determines that there may be an imminent and substantial threat to the public health or welfare of the United States, including but not limited to fish, shellfish and wildlife, public and private property, shorelines, beaches, habitat, and other living and nonliving natural resources under the jurisdiction or control of the United States or a State, because of an actual or threatened discharge of oil or a hazardous substance from a vessel or facility in violation of subsection (b) of this section, the President may—**

**"(A) require the Attorney General to secure such relief from any person, including but not limited to the owner or operator of such vessel or facility, as may be necessary to abate such endangerment; or**

**"(B) after notice to the affected State, take such other action under this section, including but not limited to, issuing such ad-**

ministrative orders as may be necessary to protect the public health and welfare.

"(2) If any person fails without sufficient cause to comply with an order under paragraph (1)(B), the President may request the Attorney General to bring an action in the appropriate district court of the United States to enforce such an order, to assess civil penalties of no more than $25,000 a day for each violation, and to assess three times the removal costs or damages incurred by the Oil Spill Liability Trust Fund as a result of the failure to comply.

"(3) The district courts of the United States shall have jurisdiction to grant such relief under this subsection as the public interest and the equities of the case may require.".

(4) Subsections (f), (g), (h), and (i) of section 311 of the Federal Water Pollution Control Act shall not apply with respect to any incident for which liability is established under section 102 of this Act.

(5) Subsection (i) is amended by striking out "(1)" after "(i)" and striking out paragraphs (2) and (3).

(6) Subsection (k) is repealed. Any amounts remaining in the revolving fund established under that subsection shall be deposited in the general fund of the Treasury. The Fund shall assume all liability incurred by the revolving fund established under section 311(k) of the Federal Water Pollution Control Act.

(7) Subsection (1) is amended by striking out the second sentence.

(8) Subsection (p) is repealed.

(9) Section 311 is amended by adding at the end thereof the following new subsection:

"(s) The Oil Spill Liability Trust Fund shall be available to carry out subsections (c), (d), (i), (l), and (t). Any amounts received by the United States under this section shall be deposited in the Oil Spill Liability Trust Fund.".

SEC. 204. DEEPWATER PORT ACT.

The Deepwater Port Act of 1974 is amended as follows:

(1) In section 4(c)(1) strike "section 18(l) of this Act;" and insert in lieu thereof "section 107 of the Oil Pollution Prevention, Re-

moval, Liability, and Compensation Act of 1989,";

(2) Subsections (b), (d), (e), (f), (g), (h), (i), (j), (l), (n), and paragraphs (1) and (2) of subsection (m) of section 18 are deleted.

(3) Paragraph (3) of subsection (c) of section 18 is amended by striking "Deepwater Port Liability Fund established pursuant to subsection (f) of this section", and inserting in lieu thereof "Oil Spill Liability Trust Fund".

(4) Subsections (c), (k), and (m) of section 18 are redesignated as subsections (b), (c), and (d) respectively, and paragraphs (3) and (4) of subsection (m) are redesignated as paragraphs (1) and (2), respectively.

(5) Paragraph (1) of subsection (a) of section 19 is amended by striking the period at the end of the second sentence and inserting "except that discharges from a deepwater port or from a vessel within a deepwater port safety zone which are subject to the civil penalty provisions of section 18(a)(2) of the Deepwater Port Act of 1974 shall not be sub-

ject to the penalty provisions of any other Federal law."

(6) Any amounts remaining in the Deepwater Port Liability Fund, established under section 18(f) of the Deepwater Port Act of 1974, shall be deposited in the Fund. The Fund shall assume all liability incurred by the Deepwater Port Liability Fund.

SEC. 205. OUTER CONTINENTAL SHELF LANDS ACT AMENDMENTS OF 1978.

Title III of the Outer Continental Shelf Lands Act Amendments of 1978 is hereby repealed. Any amounts remaining in the Offshore Oil Pollution Compensation Fund established under section 302 of that title shall be deposited in the Fund. The Fund shall assume all liability incurred by the Offshore Oil Pollution Compensation Fund.

SEC. 206. NOTICE TO STATE; INCREASED PENALTIES FOR FAILURE TO REPORT.

(a) Section 311(b)(5) of the Federal Water Pollution Control Act is amended by inserting after the first sentence the following: "The Federal agency shall immediately notify the appropriate State agency of any State that is, or may reason-

**ably be expected to be, affected by the discharge of oil.".**

**(b) The second sentence of section 311(b)(5) of the Federal Water Pollution Control Act is amended by striking "fined not more than $10,000, or imprisoned for not more than one year, or both" and inserting "fined in accordance with the applicable provisions of title 18 of the United States Code, or imprisoned for not more than three years (or not more than five years in the case of a second or subsequent conviction), or both".**

**SEC. 207. QUALIFIED AUTHORIZING LEGISLATION.**

**This Act shall be considered to be qualified authorizing legislation for purposes of section 4611(f)(2)(B) of the Internal Revenue Code of 1986.**

**SEC. 208. EFFECTIVE DATE.**

**Sections 201, 202, 203, 204, and 205 shall be effective on the commencement date (as that term is defined in section 4611(f)(2) of the Internal Revenue Code of 1986).**

# TITLE III—IMPLEMENATION OF INTERNATIONAL CONVENTIONS

**SEC. 301. DEFINITIONS.**

**For the purpose of this title—**

(1) "ship", "owner", "oil", "pollution damage", and "incident" shall have the meanings provided in article I of the Civil Liability Convention;

(2) "Civil Liability Convention" means the International Convention on Civil Liability for Oil Pollution Damage, 1984;

(3) "financial responsibility" has the same meaning as "financial security" under the Civil Liability Convention;

(4) "Fund Convention" means the International Convention on the Establishment of an International Fund for Compensation for Oil Pollution Damage, 1984; and

(5) "International Fund" means the International Oil Pollution Compensation Fund, established under article 2 of the Fund Convention.

SEC. 302. APPLICABILITY OF CONVENTIONS.

During any period in which the Civil Liability Convention and the Fund Convention are in force with respect to the United States, liability relating to pollution damage arising from an incident involving a ship shall be determined in accordance with the Civil Liability Convention and Fund Con-

vention. Nothing in this title shall constitute a ratification of either the Civil Liability Convention or the Fund Convention.

SEC. 303. RECOGNITION OF INTERNATIONAL FUND.

The International Fund is recognized under the laws of the United States as a legal person, and shall have the capacity to acquire and dispose of real and personal property, and to institute and be party to legal proceedings. The Director of the International Fund is recognized as the legal representative of the International Fund. The Director shall be deemed to have appointed irrevocably the Secretary of State as the International Fund's agent for the service of process in any legal proceedings involving the International Fund within the United States. The International Fund and its assets shall be exempt from all direct taxation and payment of any customs duties in the United States.

SEC. 304. ACTION IN UNITED STATES COURTS.

(a) SERVICE OF PROCESS ON INTERNATIONAL FUND.—In any action brought in a court in the United States against the owner of a ship or its guarantor under the Civil Liability Convention, the plaintiff or defendant, as the case may be,

shall serve a copy of the complaint and any subsequent pleading therein upon the International Fund at the same time the complaint or other pleading is served upon the opposing parties.

(b) INTERVENTION.—The International Fund may intervene as a party as a matter of right in any action brought in a court in the United States against the owner of a ship or its guarantor under the Civil Liability Convention.

SEC. 305. CONTRIBUTION TO INTERNATIONAL FUND.

(a) PAYMENTS TO BE MADE FROM OIL SPILL LIABILITY TRUST FUND.—The amount of any contribution to the International Fund which is required to be made under article 10 of the Fund Convention by any person with respect to oil received in any port, terminal installation, or other installation located in the United States shall be paid to the International Fund from the Fund.

(b) INFORMATION.—The Secretary may, by regulation, require persons who are required to make contributions with respect to oil received in any port, terminal, installation, or other installations in the United States under article 10 of the Fund Convention to provide all information relating to that oil as may be necessary to carry out

subsection (a) of this section, articles 10, 12, 13, 14, and 15 of the Fund Conventions, and Article 29 of the Protocol of 1984 to Amend the International Convention on the Establishment of an International Fund for Compensation for Oil Pollution Damage, 1971.

SEC 306. RECOGNITION OF FOREIGN JUDGMENTS.

Any final judgment of a court of any country which is a party to the Civil Liability Convention or to the Fund Convention in an action for compensation under either convention shall be recognized by any court of the United States having jurisdiction under this Act, when that judgment has become enforceable in that country and is no longer subject to ordinary form of review, except where—

(1) the judgment was obtained by fraud, or

(2) the defendant was not given reasonable notice and a fair opportunity to present its case.

SEC. 307. FINANCIAL RESPONSIBILITY.

(a) UNITED STATES DOCUMENTED SHIPS.—Each owner of a ship which is documented under the laws of the United States which is subject to

the Civil Liability Convention shall establish and maintain in accordance with regulations promulgated by the Secretary evidence of financial responsibility as required in Article VII of the Civil Liability Convention.

(b) OTHER SHIPS.—The owner of each ship (other than a ship to which subsection (a) applies or a ship which is a public vessel), which is subject to the Civil Liability Convention and which enters or leaves a port or terminal in the United States or uses an Outer Continental Shelf facility or an offshore facility that is or was licensed under the Deepwater Port Act of 1974, shall establish and maintain, in accordance with regulations promulgated by the Secretary, evidence of financial responsibility as required in article VII of the Civil Liability Convention. Any ship which has on board a valid certificate issued in accordance with article VII of the Civil Liability Convention shall be considered as having met the requirements of this subsection. Any ship carrying only oil as cargo, fuel, or residue, which has on board a valid certificate issued in accordance with article VII of the Civil Liability Convention shall be considered

as having met the requirements of section 107 of this Act.

(c) AUTHORITY OF SECRETARY TO ISSUE.—The Secretary is authorized to issue any certificate of financial responsibility which the United States may issue under the Civil Liability Convention.

(d) WITHHOLDING CLEARANCE.—The Secretary of the Treasury shall withhold or revoke the clearance required by section 4197 of the Revised Statutes of the United States of any ship which does not have a certificate demonstrating compliance with this section.

(e) DENYING ENTRY AND DETAINING VESSELS.—The Secretary of the department in which the Coast Guard is operating may (1) deny entry to any facility or to any port or place in the United States, or (2) detain at the facility or port or place in the United States, any ship subject to this section which, upon request, does not produce the certificate demonstrating compliance with this section or regulations issued hereunder.

(f) CIVIL PENALTY.—Any person who, after notice and an opportunity for a hearing, is found to have violated this section, any regulation issued under this section, section 305(b), or section 308,

or any denial or detention order issued under subsection (e) of this section shall be liable to the United States for a civil penalty, not to exceed $25,000 per day of violation. The amount of the civil penalty shall be assessed by the Secretary in accordance with the procedures set forth in section 107 of this Act.

(g) WAIVER OF SOVEREIGN IMMUNITY.—The United States waives all defenses based on its status as a sovereign State with respect to any controversy arising under the Civil Liability Convention or the Fund Convention relating to any ship owned by the United States and used for commercial purposes.

SEC. 308. REGULATIONS.

The Secretary may prescribe the necessary regulations to carry out this Act and all obligations of the United States under the International Convention on Civil Liability for Oil Pollution Damage, 1984, and the Fund Convention.

# TITLE IV—PREVENTION REMOVAL OF OIL AND HAZARDOUS SUBSTANCE DISCHARGES

## Subtitle A—General

### SEC. 401. DEFINITIONS.

For purposes of this title, the term—

(1) "tank barge" means a non-self-propelled vessel constructed or adapted to carry oil in bulk as cargo; and

(2) "remove" or "removal" refers to the removal of oil or hazardous substances from water and shorelines; containment, dispersal, disposal, or other response actions; and the taking of other actions necessary to minimize or mitigate damage to the public health or welfare, including fish, shellfish, wildlife, and public and private property, shorelines, and beaches; and

(3) "tanker" has the same meaning the term has in section 2101 of title 46, United States Code; and

## Subtitle B—Prevention

**SEC. 411. REVIEW OF ALCOHOL AND DRUG ABUSE AND OTHER MATTERS IN ISSUING LICENSES, CERTIFICATES OF REGISTRY, AND MERCHANT MARINER'S DOCUMENTS.**

(a) LICENSES AND CERTIFICATES OF REGISTRY.—Section 7101 of title 46, United States Code, is amended by adding at the end the following:

"(g) The Secretary may not issue a license or certificate of registry under this section unless an individual applying for the license or certificate makes available to the Secretary, under section 206(b)(4) of the National Driver Register Act of 1982 (23 U.S.C. 401 note), all information contained in the National Driver Register regarding the motor vehicle driving record of that individual.

"(h) The Secretary shall conduct a review of the criminal record of each individual who applies for a license under this section.".

(b) MERCHANT MARINER'S DOCUMENT.—Section 7302 of title 46, United States Code, is amended by adding at the end the following:

"(c) The Secretary may not issue a merchant mariner's document under this chapter unless the

individual applying for the document makes available to the Secretary, under section 206(b)(4) of the National Driver Register Act of 1982 (23 U.S.C. 401 note), all information contained in the National Driver Register regarding the motor vehicle driving record of that individual.".

SEC. 412. TERM OF CERTIFICATES OF REGISTRY AND MERCHANT MARINER'S DOCUMENTS.

(a) CERTIFICATES OF REGISTRY.—Section 7107 of title 46, United States Code, is amended by striking "is not limited to duration." and inserting "is valid for 5 years, and may be renewed for additional 5-year periods.".

(b) MERCHANT MARINER'S DOCUMENTS.—Section 7302 of title 46, United States Code, is amended by adding at the end the following:

"(d) A merchant mariner's document issued under this chapter is valid for 5 years, and may be renewed for additional 5-year periods.".

(c) EFFECTIVE DATE.—The amendments made by subsections (a) and (b) of this section are effective January 1, 1990.

(d) TERMINATION OF EXISTING CERTIFICATES AND DOCUMENTS.—A certificate of registry and a merchant mariner's document issued before Janu-

ary 1, 1990, shall terminate on the day it would have expired as if—

(1) subsections (a) and (b) were in effect on the date it was issued; and

(2) it was renewed at the end of each 5-year period under section 7107 or section 7302(d).

(e) CRIMINAL RECORD REVIEW IN LICENSE RENEWALS.—Section 7109 of title 46, United States Code, is amended by designating the existing text as subsection "(a)" and adding at the end the following—

"(b) The Secretary shall conduct a review of the criminal record of each holder of a license issued under this part who applies for renewal of that license under this section.".

SEC. 413. SUSPENSION AND REVOCATION OF LICENSES, CERTIFICATES OF REGISTRY, AND MERCHANT MARINER'S DOCUMENTS FOR ALCOHOL AND DRUG ABUSE.

(a)(1) AVAILABILITY OF INFORMATION IN NATIONAL DRIVER REGISTER.—Section 7702 of title 46, United States Code, is amended by adding at the end the following:

"(c) The Secretary shall request an individual holding a license, certificate of registry, or merchant mariner's document to make available to the Secretary, under section 206(b)(4) of the National Driver Register Act of 1982 (23 U.S.C. 401 note), all information contained in the National Driver Register regarding the motor vehicle driving record of that individual.

"(d)(1) The Secretary shall temporarily suspend and take possession of the holder's license, certificate, or document if—

"(A) that individual performs a sensitive function on a vessel as determined by the Secretary; and

"(B) there is probable cause to believe that the holder—

"(i) has performed the sensitive function while using alcohol or a dangerous drug;

"(ii) has been denied a motor vehicle license by a State for cause within the 5-year period immediately before the temporary suspension; or

"(iii) has been convicted of an offense for which a license, certificate, or

document may be suspended or revoked under sections 7703(2) and 7703(3) of this title.

"(2) If a license, certificate, or document is temporarily suspended under this section, an expedited hearing under subsection (a) of this section shall be held within 15 days after the temporary suspension.".

(2) Section 7704(a) of title 46, United States Code, is amended by striking "section" the first place it appears and substituting "part".

(b) BASES FOR SUSPENSION OR REVOCATION.—Section 7703 of title 46, United States Code, is amended to read as follows:

"§ 7703. Bases for suspension or revocation

"A license, certificate of registry, or merchant mariner's document issued by the Secretary under this part may be suspended or revoked if the holder—

"(1) when acting under the authority of that license, certificate, or document—

"(A) has violated or failed to comply with this subtitle, a regulation prescribed under this subtitle, or any other law or

regulation intended to promote marine safety or to protect navigable waters; or

"(B) has committed an act of incompetence, misconduct, or negligence;

"(2) is convicted of an offense that would prevent the issuance or renewal of a license, certificate, or document; or

"(3) is convicted of an offense described in section 205(a)(3) (A) or (B) of the National Driver Register Act of 1982 (23 U.S.C. 401 note) within the 5-year period immediately before the suspension or revocation.".

(c) TERMINATION OF REVOCATION.—Section 7701(c) of title 46, United States Code, is amended to read as follows:

"(c) When a license, certificate of registry, or merchant mariner's document has been revoked under this chapter, the former holder may be issued a new license, certificate, or document only after—

"(1) it has been decided, under regulations prescribed by the Secretary, that the issuance is compatible with the requirement of good discipline and safety at sea; and

"(2) the former holder provides satisfactory proof that the bases for revocation are no longer valid.".

**SEC. 414. REMOVAL OF MASTER OR INDIVIDUAL IN CHARGE FOR INTOXICATION.**

Section 8101 of title 46, United States Code, is amended by adding at the end the following:

"(i) Whenever the next two most senior members of the complement on a vessel reasonably believe that the master or individual in charge of the vessel is intoxicated as a result of the use of a dangerous drug or alcohol and is incapable of commanding the vessel because of that intoxication, the most senior officer shall—

"(1) temporarily relieve the master;

"(2) temporarily take command of the vessel;

"(3) immediately enter the details of the incident in the vessel log; and

"(4) report those details to the Secretary—

"(A) by the most expeditious means available; and

"(B) in written form transmitted within 12 hours after the vessel arrives at its next port.".

SEC. 415. ACCESS TO NATIONAL DRIVER REGISTER.

Section 206(b) of the National Driver Register Act of 1982 (23 U.S.C. 401 note) is amended by inserting the following new paragraph at the end:

"(6)(A) Any individual who holds or who has applied for a license or certificate of registry under section 7101 of title 46, United States Code, or merchant mariner's document under section 7302 of title 46, United States Code, shall request the chief driver licensing official of a State to transmit to the Secretary in accordance with subsection (a) of this section information regarding the motor vehicle driving record of the individual.

"(B) The Secretary—

"(i) shall make the information available to the individual for review and written comment before denying, suspending, or revoking the individual a license, certificate, or document based on that information or using that informa-

tion in any action taken under chapter 77 of title 46, United States Code; and

"(ii) may not otherwise divulge or use that information, except for the purposes of section 7101, 7302, or 7703 of title 46, United States Code.

"(C) Information regarding the motor vehicle driving record of an individual may not be transmitted to the Secretary under this paragraph if the information was entered in the Register more than five years before the date of the request for the information, unless the information relates to revocations or suspensions that are still in effect on the date of the request. Information submitted to the Register by States under the Act of July 14, 1960 (74 Stat. 526), or under this Act are subject to access for the purpose of this paragraph during the transition to the Register established under section 203(c) of this Act.".

**SEC. 416. MANNING STANDARDS FOR FOREIGN TANK VESSELS.**

(a) STANDARDS FOR FOREIGN TANK VESSELS.—Section 9101(a) of title 46, United States Code, is amended to read as follows:

"(a)(1) The Secretary shall evaluate the manning, training, qualification, and watchkeeping standards of a foreign country that issues documentation for any vessel to which chapter 37 of this title applies—

"(A) on a periodic basis; and

"(B) after a casualty involving that vessel.

"(2) After each evaluation made under paragraph (1) of this subsection, the Secretary shall determine whether—

"(A) the foreign country has standards for licensing and certification of seamen that are at least equivalent to United States law or customary international law; and

"(B) those standards are being enforced.

"(3) If the Secretary determines under this subsection that a country has failed to maintain or enforce standards at least equivalent to United States law or customary international law, the Secretary shall prohibit vessels issued documentation by that country from entering the United States.

"(4) The Secretary may allow provisional entry of a vessel prohibited from entering the

**United States under paragraph (3) of this subsection if—**

**"(A) the owner or operator of the vessel establishes, to the satisfaction of the Secretary, that the vessel is not unsafe or a threat to the marine environment; or**

**"(B) the entry is necessary for the safety of the vessel or individuals on the vessel.**

**(b) TECHNICAL AND CONFORMING AMENDMENTS.—Section 9(a) of the Ports and Waterways Safety Act (33 U.S.C. 1228(a)) is amended—**

**(1) in the introductory paragraph, by striking "section 4417a of the Revised Statutes, as amended," and inserting "chapter 37 of title 46, United States Code.";**

**(2) in paragraph (2), by striking "section 4417a of the Revised Statutes, as amended," and inserting "chapter 37 of title 46, United States Code.";**

**(3) in paragraph (5), by striking "section 4417a(11) of the Revised Statutes, as amended," and inserting "section 9101 of title 46, United States Code."; and**

**(4) in paragraph (5), by striking "international standards that are accepted by the**

United States" and inserting "customary international law".

(c) EFFECTIVE DATE.—Sections 9101(a) (3), (4), and (5) of title 46, United States Code, take effect on January 1, 1990.

SEC. 417. VESSEL TRAFFIC SERVICE SYSTEMS.

(a) MANDATORY VTS.—The Ports and Waterways Safety Act (33 U.S.C. 1221-1236) is amended by adding the following new section 4a after section 4:

"SEC. 4a. Vessel traffic service systems required.

"(a) The Secretary shall require appropriate vessels in the area of a vessel traffic service system to use or comply with that system.

"(b) Except when authorized by Congress, the Secretary may not construct, improve, expand, or operate a vessel traffic service system, unless funds for construction, improvement, expansion, or operation of the system were obligated before the date of enactment of this Act.".

(b) REPEAL.—Section 4(a)(2) of the Ports and Waterways Safety Act (33 U.S.C. 1223) is repealed.

SEC. 418. STATE AUTHORITY TO REQUIRE STATE PILOTAGE FOR TANKERS.

(a) STATE PILOT AUTHORITY.—Section 8501(d) of title 46, United States Code, is amended to read as follows:

"(d) A State may not adopt a regulation or provision that requires a coastwise vessel, other than a tanker whose Federal pilot's license is not endorsed for pilotage in that State's waters, to take a pilot licensed or authorized by the laws of a State if the vessel—

(1) is propelled by machinery and subject to inspection under part B of this subtitle; or

(2) is subject to inspection under chapter 37 of this title."

(b) PILOT CHARGES PROHIBITED.—Subsection 8502(d) of title 46, United States Code, is amended to read as follows:

"(d) Except in the case of a tanker for which a State pilot is authorized under this chapter, a State or political subdivision of a State may not levy pilot charges on a vessel lawfully piloted by a pilot required under this section."

SEC. 419. GREAT LAKES PILOTAGE.

(a) INDIVIDUALS WHO MAY SERVE AS PILOT ON UNDESIGNATED GREAT LAKES WATERS.—Sec-

tion 9302(b) of title 46, United States Code, is amended to read as follows:

"(b) A member of the complement of a vessel that is subject to subsection (a) of this section may serve for the route being navigated as the pilot required on waters not designated by the President, if the member is—

"(1) a citizen of the United States and holds a license issued under section 7101(c)(2) of this title, or

"(2) a citizen of Canada and has a license issued under provisions of Canadian law equivalent to section 7101(c)(2) of this title.".

(b) EXEMPTED VESSELS.—Section 9302(d)(1) of title 46, United States Code, is amended to read as follows:

"(1) except for a vessel to which chapter 37 applies, the Secretary notifies the master that a registered pilot is not available; or".

(c) PILOTAGE.—Section 9303(f) is amended by adding at the end the following: "A vessel is liable in rem for charges for pilotage services under this subsection and any costs of collection.".

(d) PENALTIES.—Section 9308 is amended—

(1) in subsection (a) by striking "$500" and inserting $25,000"; and

(2) in subsections (b) and (c) by striking "$500" and inserting $10,000".

**SEC. 420. STUDY ON TANKER NAVIGATION SAFETY STANDARDS.**

(a) GENERAL.—Not later than one year after the date of enactment of this Act, the Secretary shall conduct a study to determine whether existing laws and regulations are adequate to ensure the safe navigation of vessels transporting oil and hazardous substances on the navigable waters and the exclusive economic zone.

(b) STUDY.—In conducting the study required under subsection (a) of this section, the Secretary shall—

(1) determine appropriate crew sizes on tankers;

(2) evaluate the adequacy of qualifications and training of crewmembers;

(3) evaluate the ability of crewmembers on a tanker to take emergency actions to prevent or remove a discharge of oil or hazardous substance from the tanker;

(4) evaluate the adequacy of navigation equipment on tankers;

(5) evaluate the adequacy of navigation procedures;

(6) determine and prioritize the United States ports and channels that are in need of new, expanded, or improved vessel traffic service systems by evaluating—

(A) the nature, volume, and frequency of vessel traffic;

(B) the risks of collisions, spills, and damages associated with that traffic; and

(C) the impact of installation, expansion, or improvement of a vessel traffic service system;

(7) evaluate whether areas of the navigable waters and the exclusive economic zone should be designated as zones where the movement of tankers should be limited or prohibited; and

(8) evaluate vessel design and construction criteria to reduce the likelihood of a discharge including—

(A) tank capacity;

(B) tanker tonnage;

(C) tank barge tonnage;

(D) double hulls and double bottoms on tankers and tank barges by—

(i) comparing worldwide the operating and environmental safety records of tankers equipped with double hulls or double bottoms and the records of tankers without these features;

(ii) comparing the operating and environmental safety records of tank barges operating on the navigable waters of the United States and equipped with double hulls or double bottoms and the records of tank barges without these features;

(iii) assessing the costs and benefits to owners and operators of tankers and tank barges of double hulls or double bottoms on some or all new tankers and new tank barges engaged solely in the coastwise trade; and

(iv) evaluating the extent to which requiring double hulls and

double bottoms will prevent serious oil pollution incidents in bays, sounds, harbors, and other near-shore areas of special environmental importance; and

(v) consulting with naval architects, tanker and tank barge operators, salvors, environmental protection organizations, economists, states, and communities along tanker and tank barge routes, and any other persons the Secretary considers appropriate;

(9) evaluate whether inspection standards are adequate;

(10) review and incorporate the results of past studies, including studies conducted by the Coast Guard and the Office of Technology Assessment; and

(11) evaluate the use of computer simulator courses for training bridge officers and pilots of vessels transporting oil or hazardous substances on the navigable waters and the exclusive economic zone, and determine the

feasibility and practicality of mandating such training.

(c) REPORT.—Not later than one year after the date of enactment of this Act, the Secretary shall transmit to the Committee on Merchant Marine and Fisheries of the House of Representatives and the Committee on Commerce, Science, and Transportation of the Senate a report on the results of the study conducted under subsection (a) of this section, including recommendations for implementing the results of that study.

SEC. 421. DREDGE MODIFICATION STUDY.

(a) STUDY.—The Secretary of the Army shall conduct a study to determine the feasibility of modifying dredges to make them usable in removing discharges of oil and hazardous substances.

(b) REPORT.—Not later than one year after the date of enactment of this Act, the Secretary of the Army shall submit to the Congress a report on the results of the study conducted under subsection (a) of this section and recommendations for implementing the results of that study.

SEC. 422. USE OF LINERS.

(a) STUDY.—The President shall conduct a study to determine whether liners or other second-

**ary means of containment should be used to prevent leaking or to aid in leak detection at onshore facilities used for the bulk storage of oil and located near navigable waters.**

**(b) REPORT.—Not later than one year after the date of enactment of this Act, the President shall submit to Congress a report on the results of the study conducted under subsection (a) of this section and recommendations to implement the results of the study.**

**(c) IMPLEMENTATION.—Not later than six months after the date the report required under subsection (b) of this section is submitted to Congress, the President shall implement the recommendations contained in the report.**

## Subtitle C—Removal

**SEC. 431. FEDERAL REMOVAL AUTHORITY.**

**(a) REMOVAL.—Paragraph (1) of section 311(c) of the Federal Water Pollution Control Act (33 U.S.C. 1321(c)(1)) is amended to read as follows:**

**"(c)(1)(A) The President shall ensure an effective and immediate removal of a discharge of oil or a hazardous substance—**

**"(i) into or on the navigable waters; or**

"(ii) on the adjoining shorelines to these navigable waters; or

"(iii) on the waters of the exclusive economic zone; or

"(iv) that may affect natural resources belonging to, appertaining to, or under the exclusive management authority of the United States;

in accordance with the National Contingency Plan, any other contingency plans prepared under subsection (j) of this section, and applicable State law.

"(B) The President may remove or arrange for the removal of a discharge, or the threat of a discharge, of oil or a hazardous substance at any time.

"(C) The President may direct all Federal, State, responsible party, and private actions to remove a discharge, or the threat of a discharge, of oil or a hazardous substance.

"(D) When the President retains or directs a person (other than a responsible party) under the authority of subparagraph (B) or (C) of this paragraph, that person is not liable for removal costs or damages other than personal injury or wrong-

ful death arising from his or her removal activities conducted in accordance with the direction of the President, except in the case of gross negligence or willful misconduct.

"(E) Each responsible party shall act in accordance with the National Contingency Plan, the applicable contingency plans required under subsection (j) of this section, and as otherwise directed by the President.

"(F) Nothing in this paragraph affects the liability of a responsible party under the Oil Pollution Prevention, Removal, Liability, and Compensation Act of 1989.".

(b) CONFORMING AMENDMENTS.—Section 311(a) (33 U.S.C. 1321(a)) is amended—

(1) by striking paragraph (8) and inserting—

"(8) 'remove' or 'removal' refers to—

"(A) the removal of oil or hazardous substances from water and shorelines;

"(B) containment, dispersal, disposal, or other response actions; and

"(C) the taking of other actions necessary to minimize or mitigate damage to the public health or welfare, including

fish, shellfish, wildlife, and public and private property, shorelines, and beaches.".

(2) by adding two new paragraphs as follows:

"(18) 'exclusive economic zone' means the zone established by Presidential Proclamation number 5030, dated March 10, 1983; and

"(19) 'responsible party' means an owner or operator in violation of subsection (b) of this section.".

SEC. 432. CONTINGENCY PLANS.

Section 311(j) of the Federal Water Pollution Control Act (33 U.S.C. 1321(j)) is amended—

(a) in paragraph (2), by striking "paragraph (1) of";

(b) by adding at the end the following—

"(3)(A) LOCAL CONTINGENCY PLANS.—Not later than six months after the date of enactment of the Oil Pollution, Prevention, Removal, Liability, and Compensation Act of 1989, the President shall designate areas for which new or improved local contingency plans must be prepared to respond to a discharge, or threat of discharge, of oil

or a hazardous substance. The President shall specify the Federal, State, and local officials required to prepare these plans.

"(B) In determining the areas to be designated under this paragraph, the President shall consult with State and local officials, and the public, and shall consider—

"(i) the likelihood of a discharge;

"(ii) the likelihood that the discharge would result in severe economic or environmental damage; and

"(iii) the adequacy of any existing local contingency plans.

"(C) Each contingency plan prepared under this paragraph shall include—

"(i) a general description of the area subject to the plan, including the identification of specific areas of special economic or environmental importance that might be damaged by a discharge;

"(ii) a detailed description of the responsibilities of the responsible party, and Federal, State, and local agencies, for responding to a discharge, or the threat of discharge;

"(iii) a list of equipment and personnel available to the responsible party, and Federal, State, and local agencies, to ensure an effective and immediate removal of a discharge, or threat of discharge; and

"(iv) any other information the President may require.

"(D) Not later than six months after the designation of areas under subparagraph (A), the persons identified shall prepare and submit to the President the contingency plan required by this paragraph. The President shall promptly review each plan and require amendments to any plan that does not meet the requirements of this paragraph.

"(E) Contingency plans required under this paragraph shall be reviewed periodically by the President and updated.

"(F) The President may provide technical assistance in the preparation of a contingency plan under this paragraph.

"(4)(A) VESSEL AND FACILITY CONTINGENCY PLANS.—Not later than 18 months after the date the Oil Pollution Prevention, Removal, Liability, and Compensation Act of 1989 is enacted, the

President shall require the owners or operators of certain vessels and facilities to prepare a contingency plan for each vessel and facility. This paragraph applies to—

"(i) a vessel operating on the navigable waters or the exclusive economic zone and carrying oil or a hazardous substance in bulk as cargo;

"(ii) an offshore or onshore facility that, because of its location, could reasonably discharge into or on the navigable waters, the adjoining shorelines, or the exclusive economic zone.

"(B) The contingency plans required by this paragraph shall—

"(i) be consistent, and ensure compliance by the owner or operator, with the requirements of the National Contingency Plan and any local contingency plan.

"(ii) be submitted on a timely basis to the President;

"(iii) be available for review by appropriate Federal, State, and local officials, and the public;

"(iv) identify the individual having full authority to implement a removal action and require immediate communications between that individual and the appropriate Federal official and the persons identified in clause (vi);

"(v) describe the specific actions that will be taken immediately to respond to a discharge, including the most serious potential discharge from the vessel or facility involved;

"(vi) identify and ensure, by contract with a private organization or otherwise, the availability of personnel and equipment necessary to implement any removal action under clauses (iv) and (v) of this subparagraph;

"(vii) include a program of personnel training, equipment testing, and periodic unannounced drills sufficient to ensure the effectiveness of the contingency plan;

"(viii) describe the conditions under which dispersants might be used, including the procedures to be followed for obtaining approval for dispersant use;

"(ix) include provisions for the safe disposal of any contaminated materials or oil or hazardous substance recovered during the removal; and

"(x) be updated periodically.

"(C) Beginning one year after the issuance of regulations implementing this paragraph, a vessel or facility for which the preparation of a contingency plan is required, may not handle, store, or transport oil or a hazardous substance unless—

"(i) the owner or operator has submitted a contingency plan in accordance with this paragraph;

"(ii) the contingency plan has not been rejected by the President; and

"(iii) the vessel or facility is operating in compliance with the contingency plan.

"(D) The President shall promptly review the contingency plans submitted under this paragraph and shall reject, or require amendments to, any plan that does not meet the requirements of subparagraph (B) of this subsection.

"(E) The President may provide by regulation that the requirements of this paragraph have been

met by a class of vessels or facilities under other law.

"(5) Not later than one year after the date of enactment of the Oil Pollution Prevention, Removal, Liability, and Compensation Act of 1989, the President shall require—

"(A) periodic inspection of containment booms, skimmers, vessels, and other major equipment used to remove discharges of oil or a hazardous substance.

"(B) vessels operating on the navigable waters and carrying oil or a hazardous substance in bulk as cargo to carry appropriate removal equipment that employs the best technology economically feasible and that is compatible with the safe operation of the vessel.

"(6) The President, acting through the Secretary of the department in which the Coast Guard is operating, shall periodically conduct drills of removal capability in major port areas under local contingency plans and relevant vessels and facility contingency plans. The drills shall include participation by Federal, State, and local agencies, the owners and operators of vessel and facilities in the

area, and private industry. The Secretary shall publish annual reports on these drills including an assessment of the effectiveness of the plans and a list of amendments that were made to the ineffective contingency plans.".

**SEC. 433. OIL AND HAZARDOUS SUBSTANCES STRIKE TEAMS.**

Section 311(c)(2)(C) of the Federal Water Pollution Control Act (33 U.S.C. 1321(c)(2)(C)) is amended to read as follows—

"(C) establishment and maintenance of a Federal strike force including at least seven regional strike teams with personnel who are trained, equipped, and available on a continual basis to provide necessary services to carry out the Plan and any contingency plans required under subsection (j) of this section. In establishing these teams, the President shall consider existing Federal, State, local, and private sector resources that are available and that may be used to effectively remove a discharge".

**SEC. 434. COAST GUARD VESSEL DESIGN.**

The Secretary shall ensure that vessels designed and constructed to replace Coast Guard

oceangoing and coastal buoy tenders are equipped with oil skimming systems that are readily available, operable, and complement the primary mission of servicing aids to navigation.

SEC. 435. EQUIPMENT INVENTORY.

Section 311(c)(2) of the Federal Water Pollution Control Act (33 U.S.C. 1321(c)(2)) is amended by—

(1) striking "and" after the semicolon at the end of subparagraph (G);

(2) striking the period at the end of subparagraph (H) and inserting "; and";

(3) inserting the following after subparagraph (G):

"(I) development and maintenance of a national computerized inventory of all public and private resources, including trained personnel and major equipment located both within and outside the United States, that is available to remove a discharge of oil or a hazardous substance in the navigable waters, on adjacent shorelines, or in the exclusive economic zone.".

**SEC. 436. OIL POLLUTION RESEARCH AND DEVELOPMENT PROGRAM.**

Section 311 of the Federal Water Pollution Control Act (33 U.S.C. 1321) is amended by adding at the end the following:

"(t) OIL POLLUTION RESEARCH AND DEVELOPMENT PROGRAM.—

"(1) ESTABLISHMENT OF PROGRAM.—The President shall establish a comprehensive oil pollution research and development program.

"(2) PURPOSES.—The purposes of the research and development program include—

"(A) development of methods to prevent or minimize the discharge of oil from vessels, including methods to measure a vessel's ullage, to prevent discharges from tank vents, to prevent discharges during lightering and bunkering operations, and to contain discharges on vessel decks;

"(B) development of methods to prevent or minimize the discharge of oil from facilities;

"(C) development of methods to remove discharges of oil from vessels and facilities;

"(D) development of methods to protect public health and safety, including that of removal personnel from a discharge of oil;

"(E) development of adequate worker training standards for discharge removal personnel;

"(F) development of methods to restore and rehabilitate natural resources damaged by a discharge of oil; and

"(G) assessment of the long-term effects of a discharge of oil on natural resources.

"(3) COORDINATION.—The President shall coordinate research and development activities under this subsection with affected Federal agencies, States, other nations, industry, academia, and the private sector.

"(4) ANNUAL REPORT.—Before January 1 of each year, the President shall submit to Congress a report on the actual and planned activities carried out under this subsection.

"(5) FUNDING.—Notwithstanding another law, there is authorized to be appropriated $15,000,000 from the Fund established by sec-

tion 9509 of the Internal Revenue Code of 1986 for each fiscal year to carry out the purposes of this section.".

## Subtitle D—Penalties

### SEC. 441. INCREASED PENALTIES.

(a) PROHIBITED DISCHARGE.—Section 311 of the Federal Water Pollution Control Act (33 U.S.C. 1321) is amended—

(1) in subsection (b)(6)—

(A) in subparagraph (A), by striking "$5,000" each place it appears and inserting "$1,000 for each barrel of oil or hazardous substance that was discharged or $5,000,000, whichever is less,";

(B) in subparagraph (B)—

(i) by striking "$50,000" and inserting "$1,000 for each barrel of oil or hazardous substance that was discharged or $5,000,000, whichever is less"; and

(ii) by striking "$250,000" and inserting "$5,000" for each barrel of oil or hazardous substance that was discharged"; and

(C) by adding at the end the following:

"(F) Amounts recovered by the Federal Government for penalties assessed under this paragraph as the result of a discharge of oil shall be deposited in the Oil Spill Liability Trust Fund created by section 9509 of the Internal Revenue Code of 1986."; and

(2) in subsection (j)(2) by striking "$5,000" and inserting "$25,000".

(b) NEGLIGENT OPERATIONS.—Section 2302 of title 46, United States Code, is amended—

(1) in subsection (b), by striking "shall be fined not more than $5,000, imprisoned for not more than one year, or both.", and inserting "commits a class A misdemeanor."; and

(2) in subsection (c)—

(A) in the matter preceding paragraph (1) by striking ", shall be";

(B) in paragraph (1) by inserting "is" before "liable"; and

(C) by amending paragraph (2) to read as follows:

"(2) commits a class A misdemeanor.".

(c) INSPECTIONS.—Section 3318 of title 46, United States Code, is amended—

(1) in subsection (b) by striking "shall be fined not more than $10,000, imprisoned for not more than five years, or both.", and inserting "commits a class D felony.";

(2) in subsection (c), by striking "shall be fined not more than $5,000, imprisoned for not more than five years, or both.", and inserting "commits a class D felony.";

(3) in subsection (d), by striking "shall be fined not more than $5,000, imprisoned for not more than five years, or both.", and inserting "commits a class D felony.";

(4) in subsection (e), by striking "shall be fined not more than $10,000, imprisoned for not more than two years or both.", and inserting "commits a class A misdemeanor."; and

(5) in subsection (f) in the matter preceding paragraph (1), by striking "shall be fined not less than $1,000 but not more than $10,000, and imprisoned for not less than two

years but not more than five years,", and inserting "commits a class D felony".

(d) CARRIAGE OF LIQUID BULK DANGEROUS CARGOES.—Section 3718 of title 46, United States Code, is amended—

(1) in subsection (b), by striking "shall be fined not more than $50,000, imprisoned for not more than five years, or both.", and inserting "commits a class D felony."; and

(2) in subsection (c), by striking "shall be fined not more than $100,000, imprisoned for not more than 10 years or both.", and inserting "commits a class C felony.".

(e) LOAD LINES.—Section 5116 of title 46, United States Code, is amended—

(1) in subsection (d), by striking "shall be fined not more than $10,000, imprisoned for not more than one year, or both.", and inserting "commits a class misdemeanor."; and

(2) in subsection (e), by striking "shall be fined not more than $10,000, imprisoned for not more than two years, or both." and inserting "commits a class A misdemeanor.".

(f) COMPLEMENT OF INSPECTED VESSELS.—Section 8101 of title 46, United States Code, is amended—

(1) in subsection (e), by striking "$50" and inserting "$1,000";

(2) in subsection (f), by striking "$100, or, for a deficiency of a licensed individual a penalty of $500." and inserting "$10,000."; and

(3) in subsection (g), by striking "$500." and inserting "$10,000.".

(g) WATCHES.—Section 8104 of title 46, United States Code, is amended—

(1) in subsection (i), by striking "$100." and inserting "$10,000."; and

(2) in subsection (j), by striking "$500." and inserting "$10,000.".

(h) COASTWISE PILOTAGE.—Section 8502 of title 46, United States Code, is amended—

(1) in subsection (e), by striking "$500." and inserting "$10,000."; and

(2) in subsection (f), by striking "$500." and inserting "$10,000.".

(i) FOREIGN COMMERCE PILOTAGE.—Section 8503(e) of title 46, United States Code, is amended

by striking "shall be fined not more than $50,000, imprisoned for not more than five years, or both." and inserting "commits a class D felony.".

(j) CREW REQUIREMENTS.—Section 8702(e) of title 46, United States Code, is amended by striking "$500." and inserting "$10,000.".

(k) PORTS AND WATERWAYS SAFETY ACT.—Section 13(b) of the Port and Waterways Safety Act (33 U.S.C. 1232(b)) is amended—

(1) in paragraph (1), by striking "shall be fined not more than $50,000 for each violation or imprisoned for not more than five years, or both.", and inserting "commits a class D felony."; and

(2) in paragraph (2), by striking "shall, in lieu of the penalties prescribed in paragraph (1), be fined not more than $100,000, or imprisoned for not more than 10 years, or both.", and inserting "commits a class C felony.".

(l) VESSEL NAVIGATION.—Section 4 of the Act of April 28, 1908 (33 U.S.C. 1236), is amended—

(1) in subsection (b), by striking "$500." and inserting "$5,000.";

(2) in subsection (c), by striking "$500," and inserting "$5,000."; and

(3) in subsection (d), by striking "$250." and inserting "$2,500.".

(m) INTERVENTION ON THE HIGH SEAS ACT.—Section 12(a) of the Intervention on the High Seas Act (33 U.S.C. 1481(a)) is amended—

(1) in the matter preceding paragraph (1), by striking "Any person who" and inserting "A person commits a class A misdemeanor if that person"; and

(2) in paragraph (3), by striking ", shall be fined not more than $10,000 or imprisoned not more than one year, or both".

(n) DEEPWATER PORT ACT OF 1974.—

(1) IN GENERAL.—Section 159a) of the Deepwater Port Act of 1974 (33 U.S.C. 1514(a)) is amended by striking "shall on conviction be fined not more than $25,000 for each day of violation or imprisoned for not more than one year, or both." and inserting "commits a class A misdemeanor for each day of violation.".

(2) FAILURE TO NOTIFY.—Section 18(b) of the Deepwater Port Act of 1974 (33 U.S.C.

1517(b)) is amended by striking "shall, upon conviction, be fined not more than $10,000 or imprisoned for not more than one year, or both." and inserting "commits a class A misdemeanor.".

(o) ACT TO PREVENT POLLUTION FROM SHIPS.—Section 9(a) of the Act to Prevent Pollution from Ships (33 U.S.C. 1908(a)) is amended by striking "shall, for each violation, be fined not more than $50,000 or be imprisoned for not more than five years, or both.", and inserting "commits a class D felony.".

# TITLE V—PRINCE WILLIAM SOUND OIL SPILL REMOVAL

### SEC. 501. SHORT TITLE.

This title may be cited as the "Prince William Sound Oil Spill Removal Act of 1989".

### SEC. 502. DEFINITIONS.

For purposes of this title—

(1) "Arctic waters" means the navigable waters of the United States in the State of Alaska and the waters of the exclusive economic zone established by Presidential Proclamation number 5030, dated March 10, 1983, adjacent to the State of Alaska.

(2) "tank vessel" has the same meaning given that term in section 2101 of title 46, United States Code, except that it does not include an escort vessel or any other vessel used to respond to an unlawful discharge of oil.

(3) "Prince William Sound" means all State and Federal waters within the Prince William Sound, including the approach to Hinchenbrook Entrance out to and encompassing Seal Rocks.

SEC. 503. TANK VESSEL REQUIREMENTS.

Not later than six months after the date of enactment of this title, the Secretary shall require under section 3703(a)(3) of title 46, United States Code—

(1) tank vessels transporting oil from the Trans-Alaska Pipeline within designated areas of Prince William Sound to be escorted by at least one towing vessel (as defined under section 2101 of title 46, United States Code) or other vessels considered appropriate by the Secretary; and

(2) in addition to the requirements of section 8502 of title 46, United States Code,

the use of a pilot licensed by the State of Alaska who is operating under a Federal license for all tank vessels navigating between the Port of Valdez, Alaska, and a point in Prince William Sound south of Bligh Reef.

SEC. 504. VESSEL TRAFFIC SERVICE SYSTEM.

(a) PLAN.—Not later than four months after the date of enactment of this Act, the Secretary shall prepare a plan to modify the surveillance coverage for vessels in Prince William Sound. The plan shall include options for construction of new radar sites to cover all of the vessel traffic service system within Prince William Sound, a review of existing vessel surveillance programs to ensure constant contact with vessel traffic when necessary, a review of radar maintenance policies to ensure that the vessel traffic service system is maintained at or above a 99.9 percent availability standard, and any proposals using other technology that will provide the same operational and availability standards.

(b) IMPLEMENTATION.—The Secretary shall implement the plan required under subsection (a) of this section not later than one year after its preparation.

**SEC. 505. EQUIPMENT AND PERSONNEL REQUIREMENTS.**

Not later than 18 months after the date of enactment of this title, the Secretary, under section 311(j) of the Federal Water Pollution Control Act (33 U.S.C. 1321(j)), shall require—

(1) prepositioned oil spill containment and cleanup equipment in the Port of Valdez, the City of Cordova, and other locations within the geographic boundaries of Prince William Sound, including escort vessels with skimming capability, barges to receive recovered oil, heavy duty sea boom, pumping, transferring, lightering equipment, and other appropriate recovery equipment for the protection of the environment, including fish hatcheries;

(2) the establishment of an oil spill removal organization at Cordova, Tatitlek, Valdez, Chenega, or other appropriate locations in Prince William Sound, consisting of trained personnel in sufficient numbers to immediately respond to a discharge of 200,000 barrels of oil;

(3) tank vessels operating in Prince William Sound to have on board appropriate equipment or materials sufficient to respond

quickly to a discharge of oil and to minimize the damage to the environment from the oil;

(4) training in oil removal techniques for local residents and individuals engaged in the cultivation or production of fish or fish products in Prince William Sound; and

(5) practice exercises not less than two times per year which test the capacity of the equipment and personnel required under this section. That equipment shall undergo periodic testing and certification as required by the Secretary.

SEC. 506. USE OF LOCAL SERVICES.

In carrying out this title, the Secretary shall—

(1) consult with local residents and significant local land-owners of the Prince William Sound area; and

(2) ensure the use, whenever practicable, of local expertise and services.

SEC. 507. AUTHORITY OF THE STATE OF ALASKA.

Nothing in this title shall be construed as changing, diminishing, or affecting in any way the authority of the State of Alaska, or any political subdivision thereof, to regulate tank vessels or to

provide for oil spill contingency planning to State waters.

SEC. 508. ENVIRONMENTAL ASSESSMENT.

(a) NOAA EXPENDITURES.—From sums appropriated for this purpose, the Under Secretary for Oceans and Atmosphere of the Department of Commerce shall expend no less than $5,000,000 in each of fiscal years 1990, 1991, and 1992, to conduct living marine resource damage assessments and to monitor the short- and long-term effects on living marine resources in Arctic waters from the discharge of oil that occurred as a result of the grounding of the Exxon Valdez in Prince William Sound.

(b) RECOVERED SUMS.—The Under Secretary for Oceans and Atmosphere shall, whenever possible, recover the sums expended under subsection (a) of this section from the owner or operator of the Exxon Valdez. These sums shall be credited to the appropriations of the National Oceanic and Atmospheric Administration.

(c) In carrying out this section, the Under Secretary for Oceans and Atmosphere shall—

(1) consult with local residents and significant local landowners of the Prince William Sound area;

(2) coordinate assessment and monitoring work with the State of Alaska and the Prince William Sound Science and Technology Institute through the establishment of an appropriate working group; and

(3) to the extent practicable, use local services and expertise.

SEC. 509. REPORT.

Not later four months after the date of enactment of this title, after providing for a 60-day public comment period, the Secretary shall report to the Committee on Merchant Marine and Fisheries of the House of Representatives and the Committee on Commerce, Science, and Transportation of the Senate on—

(1) a list of oil pollution exercises conducted in the Port of Valdez and Prince William Sound during the operation of the Trans-Alaska Pipeline; and

(2) any other matters the Secretary considers important regarding oil spills in Arctic waters, including faster approval by State

and Federal agencies of oil spill removal technology.

# TITLE VI—MISCELLANEOUS

### SEC. 601. CONFORMING AMENDMENT TO TITLE 33.

Section 9(a) of the Ports and Waterways Safety Act (33 U.S.C. 1228) is amended by striking "any other applicable law or treaty; or" and substituting "any other applicable law or treaty, including section 311(j) of the Federal Water Pollution Control Act (33 U.S.C. 1321(j)); or".

### SEC. 602. STATUTORY WAIVERS.

(a) IN GENERAL.—Section 2113 of title 46, United States Code, is amended—

(1) by inserting "(a)" before "If the"; and

(2) by adding at the end the following:

"(b)(1) Notwithstanding another law, the Secretary may waive the application of parts B, C, F (except section 8103), and H of this subtitle, if the Secretary determines that the waiver is needed in a crisis concerning—

"(A) a discharge, or threat of a discharge, of oil or a hazardous substance; or

"(B) the national defense, as determined by the Secretary of Defense.

"(2) A waiver may be issued under this section on the Secretary's own initiative or on request of the head of another department, agency, or instrumentality of the United States Government.

"(3) A waiver issued under this section shall—

"(A) state the reason for the waiver;

"(B) be for a specified period, not to exceed one year, and may not be renewed;

"(C) state which requirements of law are being waived; and

"(D) terminate when qualified individuals or vessels are available.".

(b) CONFORMING AMENDMENT.—The Act of December 27, 1950 (46 App. U.S.C. chapter 1 note) is repealed.

SEC. 603. STUDIES AND REPORTS AS ADMINISTRATIVE EXPENSES.

The studies and reports required under sections 420, 421, 422, and 509 of this Act and federal expenses incurred under section 311(j) of the Federal Water Pollution Control Act shall be considered administrative expenses of the Federal Government for purposes of section 9509 of the Internal Revenue Code of 1986.

**SEC. 604. SAVINGS CLAUSE.**

This Act does not affect—

(1) admiralty and maritime law; or

(2) the jurisdiction of the district courts of the United States with respect to civil actions under admiralty and maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

## *TITLE VII—RESEARCH AND DEVELOPMENT*

***SEC. 701. OIL POLLUTION RESEARCH AND DEVELOPMENT PROGRAM.***

*(a) INTERAGENCY COORDINATING COMMITTEE ON OIL POLLUTION RESEARCH.—*

*(1) ESTABLISHMENT.—There is established an Interagency Coordinating Committee on Oil Pollution Research (hereafter in this section referred to as the "Interagency Committee").*

*(2) PURPOSES.—The Interagency Committee shall coordinate a comprehensive program of oil pollution research, development, and demonstration among the Federal agencies, in cooperation and coordination with industry, universities, research institutions, and other nations, and shall foster cost-effective research*

*mechanisms, including the joint funding of research.*

*(3) MEMBERSHIP.—The Interagency Committee shall include representatives from the Department of Commerce (including the National Oceanic and Atmospheric Administration and the National Institute of Standards and Technology), the Department of Energy, the Department of the Interior (including the Minerals Management Service and the United States Fish and Wildlife Service), the Department of Transportation (including the United States Coast Guard and the Maritime Administration), and the Environmental Protection Agency, as well as such other Federal agencies as the President may designate. The President shall designate a chairman of the Interagency Committee from among its members.*

*(4) OIL POLLUTION RESEARCH PLAN.—(A) Within 120 days after the date of enactment of this Act, the Interagency Committee shall submit to Congress a plan for the implementation of the research aspects of the oil pollution research and development program established*

*pursuant to subsection (b). The research plan shall—*

*(i) identify agency roles and responsibilities;*

*(ii) assess the current status of knowledge on oil pollution technologies and effects;*

*(iii) identify significant research gaps and priorities;*

*(iv) review responses to oil discharges over the past 20 years, identify major technological deficiencies in those responses, and establish research priorities to address those deficiencies;*

*(v) estimate the resources needed to conduct the oil pollution research and development program established pursuant to subsection (b), timetables for completing research tasks, and, to the extent feasible, expected industry, university, research institution, and foreign nation participation in the research and development program including joint funding mechanisms; and*

*(vi) identify a lead agency for carrying out effects research under subsection (b)(4).*

*(B) The agency which is represented by the Chairman of the Interagency Committee shall contract with the National Academy of Sciences to—*

*(i) provide advice and guidance in the preparation and development of the research plan; and*

*(ii) assess the adequacy of the plan as submitted, and submit a report to Congress on the conclusions of such assessment.*

*The National Institute of Standards and Technology shall provide the Interagency Committee with advice and guidance on issues relating to quality assurance and standards and measurements relating to its activities under this section.*

*(b) OIL POLLUTION RESEARCH AND DEVELOPMENT PROGRAM.—*

*(1) ESTABLISHMENT.—The Interagency Committee shall coordinate the establishment, by the agencies represented on the Interagency Committee, of a program for conducting oil*

*pollution research and development, as provided in this subsection.*

*(2) INNOVATIVE OIL POLLUTION TECHNOLOGY.—The program established under this subsection shall provide for research, development, and demonstration of new or improved technologies which are effective in preventing or mitigating oil discharges and which protect the environment, including—*

*(A) development of improved designs for ships and facilities, and improved operational practices;*

*(B) research, development, and demonstration of improved technologies to measure the ullage of a vessel, prevent discharges from tank vents, prevent discharges during lightering and bunkering operations, contain discharges on the deck of a vessel, and otherwise contain discharges of oil from vessels and facilities;*

*(C) research, development, and demonstration of new or improved systems of mechanical, chemical, biological, and other methods (including the use of dispersants*

*and bioremediation) for oil recovery, cleanup, and disposal;*

*(D) research, in consultation with the National Response Team, to improve the industry's and government's ability to respond quickly and effectively to oil discharges, including research to improve information systems for decisionmaking;*

*(E) development of technologies and methods to protect public health and safety from oil discharges, including the population directly exposed to an oil discharge and response personnel performing cleanup activities;*

*(F) research and development of methods to restore and rehabilitate natural resources damaged by oil discharges;*

*(G) a demonstration to evaluate the relative effectiveness and environmental impacts of bioremediation technologies, including comparisons between bioremediation techniques that rely on the introduction of microorganisms and those that rely on the enhancement of indigenous microorganisms;*

*(H) research on the environment effects of the use of technologies to prevent or mitigate oil discharges; and*

*(I) research on means for improving navigational systems on tankers, and a report, to be included in the first submission to Congress under subsection (e), containing an assessment of currently and potentially available navigational systems (including sonar and electronic chart display), and containing a plan with schedules to require or promote the use of appropriate systems.*

*(3) OIL POLLUTION TECHNOLOGY EVALUATION.—The program established under this subsection shall provide for oil pollution prevention and mitigation technology evaluation, including—*

*(A) the evaluation and testing of technologies developed independently of the research and development program established under this subsection;*

*(B) the establishment, where appropriate, of standards and testing protocols traceable to national standards to measure*

*the performance of oil pollution prevention or mitigation technologies; and*

*(C) the use, where appropriate, of controlled field testing to evaluate real-world application of oil discharged prevention or mitigation technologies.*

*(4) OIL POLLUTION EFFECTS RESEARCH.—The program established under this subsection shall provide for research on the environmental effects of oil discharges, including—*

*(A) the development of improved models and capabilities for predicting the effects of oil discharges and the fate and transport of such oil;*

*(B) the development of methods, including economic methods, to assess damages to natural resources resulting from oil discharges;*

*(C) the identification and mapping of environmentally sensitive areas at particular risk to oil discharges;*

*(D) the collection of environmental baseline data in such areas for the determination of potential effects of oil dis-*

*charges, including data on chronic oil discharges; and*

*(E) the development of plans for long-term monitoring of environmental effects in those areas, to be implemented in the event of a major oil discharge.*

*(5) SPECIAL STUDIES.—(A) The program established under this subsection shall include a 10-year comprehensive monitoring and research program by the Secretary of Commerce, in consultation with the Administrator of the Environmental Protection Agency, to determine the long-term environmental effects of the oil discharges by the Exxon Valdez into Prince William Sound and the Gulf of Alaska, by the World Prodigy into Narragansett Bay, by the Rachel B into the Houston Ship Channel, and by the Presidente Rivera into the Delaware River.*

*(B) The Prince William Sound study shall include related effects in the Gulf of Alaska and determine effects on the diverse marine and estuarine habitats and living marine resources, and the results of the study shall be applied to the development of methods of pro-*

*(A) Tropical and subtropical coastal environments of Florida and the Gulf Coast.*

*(B) Temperate coastal environments.*

*(C) The Alaskan coastline and other cold water climates.*

*(2) Each regional center shall, in cooperation with the other regional centers as appropriate, design and implement a research program and strategy for dealing with major oil spills and related environmental damage for its region. Such research strategy and program shall, as appropriate, include the following elements:*

*(A) Projections of potential patterns and timing of a given spill's dispersal, taking into account size and rate of spills, time of year, weather and ocean flows, and circulation patterns.*

*(B) Development of improved understanding of the effects of the unique meteorology of the region on the concentration and distribution of oil pollutants.*

*(C) Examination of the regional specific impact of spills on coastal waters and coastline areas of the region, including subregional variations.*

*(D) Assessment of the physiochemical interactions between seawater and the distribution of oil pollutants in various water temperatures.*

*(E) Research on the effects of oil on flora and fauna, including the varying effects of location, dynamics, and type of oil spilled.*

*(F) The design of protocols to be followed to quantitate groundwater contamination associated with spills, including a focus on the potential impact on drinking water supplies.*

*(G) Coordination with appropriate Federal agencies with major oil spill research and development responsibility, including the National Oceanic and Atmospheric Administration, the National Aeronautics and Space Administration, the National Science Foundation, and the Department of Defense.*

*(3) At least one of the regional centers established under this subsection shall be able to demonstrate expertise and experience in both marine and atmospheric research, as well as multidisciplinary strengths in geology and chemistry. Such center shall have ocean-going research vessel capacity and land-based remote sensing satellite utilization ca-*

*pacity, and should be located in the southernmost Southeastern United States in closest proximity to a living coral reef.*

*(4) There are authorized to be appropriated for each of the fiscal years 1990, 1991, 1992, 1993, and 1994 not to exceed $1,000,000 for each regional center established under this subsection, such funds to be derived from the Fund established under this Act.*

Union Calendar No. 158

101ST CONGRESS
1ST SESSION

# H. R. 1465

[Report No. 101–242, Parts I, II, and III]

# A BILL

To establish limitations on liability for damages resulting from oil pollution, to establish a fund for the payment of compensation for such damages, and for other purposes.

SEPTEMBER 20, 1989

Reported with amendments, committed to the Committee of the Whole House on the State of the Union, and ordered to be printed