UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL No. 2179 |
| "DEEPWATER HORIZON" IN THE GULF | : | |
| OF MEXICO, ON APRIL 20, 2010 | : | SECTION J |
| | : | |
| THIS DOCUMENT RELATES TO: | : | JUDGE BARBIER |
| | : | |
| ALL CASES | : | MAGISTRATE JUDGE SHUSHAN |
| | : | |

......................................................................................................................................................

**JOINT UNITED STATES AND TRANSOCEAN REPLY MEMORANDUM
REGARDING THE SCOPE OF BP'S IDENTIFICATION OF DOCUMENTS
RESPONSIVE TO THE CRIME-FRAUD MOTION TO COMPEL**

BP's latest filing concedes that, in looking for documents responsive to the crime-fraud

motion to compel, the company failed to look in the place those documents were most likely to

be found.   For a "lawyer-directed effort," BP has refused to search *any* attorney custodians,

instead relying on the custodian list developed in 2011 – long before the company produced its

internal flow rate estimates and then pled guilty to obstruction of justice.  This Court has already

found that for four of the fraudulent communications addressed in the motion ("Crime-Fraud

Communications"), BP submitted misleading or fraudulent information to Congress or the

National Incident Command, and thus that no privilege exists for certain documents related to

the preparation of those Crime-Fraud Communications.  Doc. 9592.  That finding – and BP's

guilty plea to obstruction of justice – constitutes ample reason to add custodians whose relevance

could not have been known when the 2011 Phase Two discovery protocols were developed.

BP's search criteria were also inappropriately restrictive for the custodians the company

did search.  First, the company erred in excluding a critical period – May 5 to May 13, 2010 –

from its review.  This Court has already found that misrepresentations on either end of this date

range – May 4 and May 24 statements to Congress about the flow rate – were "connected."  BP

had attempted to justify its date carve-out on the grounds that documents from this period could not relate to preparation of its May 24, 2010 letter to Congress. But its own documents proved that a May 10, 2010 letter was twice cited by outside counsel in drafts of the May 24 letter. BP now argues that the material from the May 10 letter did not make it into the final version of the May 24 letter. As we explain below, however, that response avoids the key point: materials prepared between May 5 and May 13 plainly can and did relate to preparation of the May 24 letter. In addition, BP's May 17, 2013 submission also indicates for the first time that BP may have excluded from its review documents that concern "BP's … legal duty to disclose flow information." BP May 17, 2013 Letter at 14. To the extent that such documents pre-date the Crime-Fraud Communications, they are discoverable and should be ordered produced.

To resolve the motion to compel, BP should be required to broaden its search for responsive documents and apply that broader review to both its existing list of custodians and a targeted list of additional custodians that the company itself identified as being involved in the Crime-Fraud Communications, as explained in more detail below. Discovery has been adjusted previously to address other special or emerging situations. Indeed, when BP raised the possibility that not all documents from certain DOE custodians had been produced, the United States engineered a new collection beyond the requirements of the original protocol. BP should have to do the same here.

## ARGUMENT

The United States' crime-fraud motion to compel sought "disclosure of *all documents* related to the preparation of" seven criminal or fraudulent flow rate statements made by BP during the response to Congress, the National Incident Command, and/or the public. *See* Doc. 8417 at 2 (emphasis added). From the first, BP should have been on notice that the motion included documents held in attorney files – BP itself told the Court that the drafting process was

run by its counsel.  Such documents could not have been included in the original discovery protocol, but are perfectly reasonable under the motion to compel.  The company unreasonably failed to even consider documents held by custodians outside those searched under the Phase Two discovery protocol developed in 2011 – two years before the motion was filed.  That failure to include additional custodians appears to be the source of most of the United States' and Transocean's concerns with BP's document identification.  A new, limited search of the additional custodians that BP itself identified as being involved in the Crime-Fraud Communications is warranted here.  Additionally, for the 2011 list of custodians and the additional custodians involved in the Crime-Fraud Communications, BP should be ordered to include the May 5 to May 13, 2010 time period and documents "regarding BP's … legal duty to disclose flow information" in its review.

I.    **BP Should Search The Additional, Relevant Crime-Fraud Custodians Identified By Its Own Privilege Logs**

As BP conceded, the United States' motion to compel was timely filed.  *See* Doc. 8715 ("BP Opposition") at 8 (BP "prepared to accept that BP's January 2013 guilty plea may justify this one-time, far-out-of-time, set of challenges.").  That motion explicitly sought *all* documents related to the preparation of the Crime-Fraud Communications, not merely those that happened to be in the files of custodians selected long before the United States and Transocean ("Movants") even knew of the fraudulent communications at issue.

The Movants had no way of including the relevant custodians in the original discovery process.  As BP explains in its latest brief, the search terms and custodians were negotiated in *2011* – well before BP pled guilty to obstruction of justice or settled the SEC charges.  *See* BP May 17, 2013 Letter at 4.  Indeed, it was the documents produced in 2011 and 2012 *resulting from* the 2011 protocol that allowed Movants to demonstrate how BP's internal analyses showed

much higher flow rate estimates than BP disclosed in statements to Congress, the National

Incident Command, the SEC, and the public.

Moreover, if the United States or Transocean had requested that BP search *attorney* files

in negotiating the 2011 protocol, BP almost certainly would have refused.  *See* BP May 17, 2013

Letter at 11 (noting that non-attorney custodians *could* have been included in the 2011 protocols,

and implying that attorney custodians could not).  The basis for searching the files of those

involved in the Crime-Fraud Communications only became ripe as the Movants learned of BP's

misleading flow rate statements.

Thus, the request to search additional custodial files is not late, as BP claims.  To make

the request any *earlier* than the filing of the motion would have been premature, and BP would

have refused to include additional custodians.  Given that BP conceded that the motion itself was

timely filed, *see* BP Opposition at 8, its real argument appears to be that (1) Movants never

sought additional custodial files until our April 17 filing and (2) that makes the request too late.

Neither of these contentions is true.

Movants repeatedly stated in pleadings that we were seeking *all* documents related to the

preparation of the Crime-Fraud Communications.  *See* at Doc. 8417 at 2, 24; Doc. 8868 at 2, 17.

BP ignores that broad language, and cites a single portion of the United States' original brief.

*See* BP May 17, 2013 Letter at 3 (citing Doc. 8417 at 4).  But the United States never limited its

request to the subsets of documents quoted in BP's brief.  Indeed, the government explicitly

stated, after the portion cited by BP, "that it is not possible for the United States to provide a

specified list of all documents subject to this motion to compel."[1]  Moreover, the United States'

briefing sought to establish the legal principle that *all* documents related to the preparation of the

Crime-Fraud Communications should be produced.  It was BP that opted to focus the Court on a

---

[1] BP's suggests that its briefing made clear that it was not searching new custodians. The company never said so squarely, and Movants certainly never agreed to such an overly limited search.

subset of 201 documents that it maintained represented as "broad" a review "as possible."  April 10, 2013 Letter, R. Gasaway to Judge Shushan ("April 10 Gasaway Letter") at 3.

BP is simply incorrect when it asserts that the motion to compel did not request documents from new custodians, as discussed above.  However, the Court need not make a finding on this issue since, even if one assumes BP's assertion is correct, no prejudice follows.  Had the U.S. first made clear that the scope of its motion to compel included new custodians on April 17, 2013, that would not make the request untimely.  Both the January 30, 2013 motion and the April 17, 2013 filing came after the close of Phase Two fact discovery.   The ancillary briefing on the appropriate scope for the motion will be complete within a month of the Court's original merits decision.  There is no additional harm from any delay in not hashing this issue out in the original briefing, and BP concedes that the motion itself was timely filed.

## II.    BP's Search Of Prior Custodians Is Unduly Restricted

Many of the idiosyncrasies that Movants identified in BP's identification of responsive documents – the paucity of documents related to the SEC filings,[2] the lack of any communications after June 23, etc. – may be explained by BP's failure to look at *any* additional custodians.[3]  Indeed, BP's brief demonstrates how important broadening the custodial search is for resolving the crime-fraud motion to compel.  Limiting the search to the 2011 custodians results in BP identifying just 201 documents, leading to the clear gaps in the documents listed by BP, as described in our initial scope brief.  Doc. 9355 at 1-11.  Of the people involved in those 201 documents, just 20 of the 58 total were 2011 protocol custodians, suggesting that far more responsive documents remain unaddressed.  Searching the appropriate custodians will help

---

[2] BP claims that any discussion of the SEC filings is now moot.  However, we suggest that the Court consider all Crime-Fraud Communications, including the SEC Form 6-Ks, because the April 30, 2013 order has been appealed.

[3] BP again offers to provide Mark Nomellini for an *in camera* discussion if "the Court continues to have questions on these topics."  BP May 17, 2013 Letter at 2.  The United States objected to that proposal when it was first made, and the Movants renew that objection here.  *See* May 7, 2013 Letter, T. Benson to Judge Shushan at 3-4.  Without repeating the entire substance of our objection, if the Court has further questions, there is no reason they cannot be addressed among the Parties rather than an *ex parte* discussion between BP and the Court.

ensure a set of documents that truly is responsive to the motion.  With respect to previously-searched custodians, however, there remain two clear deficiencies in BP's search criteria that should also be remedied. .

A.     **BP's Decision to Exclude the Period from May 5-13, 2010 Is Unreasonable**

BP's decision to exclude the May 5 to May 13, 2010 period entirely from its document review and privilege logging is inconsistent with the interconnected and repeated misrepresentations BP made on May 4, May 10, and May 24, 2010 about its supposed 5,000 BOPD flow rate estimate.

In the United States and Transocean's April 17, 2013 submission, the two parties addressed BP's claim that "BP justifiably did not seek to review documents dated on or between May 5 and May 13, 2010, because the documents in that range would not 'relate to preparation of' the May 19 note or the May 24 letter."   Doc. 9355 at 6 (quoting April 10 Gasaway Letter at 5).  The United States and Transocean pointed out that this claim was demonstrably wrong because a recently-produced BP document showed that BP's outside counsel WilmerHale had explicitly cited, in support of its comments on Questions 1 and 2 in the May 24 letter, a May 10, 2010 letter BP had sent to Admiral Landry.  As the two parties explained, the May 10 letter had referred to the "currently estimated rate of 5,000 barrels per day" and labeled a 5,000 BOPD line on a chart as the "Most Likely Model."  (Dep. Ex. 9155) at 2, 4.

BP responds that the WilmerHale draft language was not used in the final version of BP's May 24 responses to Congressman Markey's Questions 1 and 2 and that its final responses to Questions 1 and 2 were not fraudulent.  BP's responses are not persuasive for at least two reasons.

First, BP miscomprehends the significance of the citations to the May 10 letter.  BP had defended its decision not to review any documents dated on or between May 5 and May 13

because documents in that range would not, BP claimed, relate to preparation of the May 24 letter.  That BP's outside counsel expressly cited a letter from May 10 in helping BP to prepare the May 24 response disproves BP's contention, regardless of whether the point from the May 10 letter made it into the final May 24 response.  Put differently, the United States and Transocean did not refer to the draft responses to Questions 1 and 2 as examples of a crime or fraud.  Instead, the two parties pointed to the May 10 citations as evidence that directly undermined BP's stated justification for excluding the May 5 to May 13 period from review.

Second,  BP cannot deny that the May 5 to May 13 period falls squarely between two misrepresentations that are virtually the same as the misrepresentations contained in BP's May 10 letter to Admiral Landry – (1) BP's May 4 representations to Congress, including the claim that its current estimate of the flow rate was 5,000 BOPD; and (2) BP's May 24 letter to Congressman Markey, which BP has admitted in its guilty plea "withheld multiple flow-rate estimates prepared by BP engineers that showed flow rates far higher than 5,000 BOPD, including as high as 96,000 BOPD."  Doc. 8417-8, BP Guilty Plea Agreement.  This Court has found that the "evidence presents a *prima facie* case that at the May 4 briefing, BP, through Rainey was committing a fraud.  These are more than 'shady circumstances.'  The events cited by the government are connected."  Doc. 9592.  In particular, the events that the Court found were connected included the May 4 representation to Congress and the May 24 letter to Congress.  BP's May 10 letter to Admiral Landry, in which BP repeated the false claim that the 5,000 BOPD estimate was BP's current estimate of the flow rate, is yet further evidence that BP's misrepresentations about the 5,000 BOPD estimate in May were indeed connected.

In short, BP's attempt to wall off a key, nine-day period from discovery should not be accepted.  BP should be ordered to review, log, and produce (where appropriate) documents from the May 5 to May 13, 2010 period.

**B.      Documents Predating the Crime-Fraud Communications that Relate to BP's Duty to Disclose Flow Information Are Responsive to the Motion**

Movants also remain concerned that BP is excluding a class of privileged documents that are responsive to the motion but do not reference a specific Crime Fraud Communication, as described in our original scope brief.  Doc. 9355 at 10-11.  BP states that it is not withholding general advice regarding flow rate and so there is no issue for the Court to resolve.  BP May 17, 2013 Letter at 13.  But BP's claim is belied by the company's statement in the same brief that it has documents that related to "BP's . . . legal duty to disclose flow information" that it apparently is not producing.  *Id*. at 14.  If such documents predate the Crime-Fraud Communications, they *are* responsive to the motion.  This is precisely the type of general flow rate discussion that Movants raised in our initial scope filing and that fall within the crime-fraud exception.  *See* Doc. 9355 at 10-11.  Such documents should be included in any list of responsive documents and produced.

**III.    Next Steps: Limited Collection From Crime-Fraud Custodians**

To ensure that BP's identification of documents fairly encompasses the motion to compel, two steps are needed.  First, BP must broaden its review criteria, as described in Section II.  Second, BP must apply the broader criteria to both existing custodians and 38 additional custodians that BP has identified as being involved in the Crime-Fraud Communications.

BP's privilege logs identify 38 individuals (including 18 attorneys) as participating in the Crime-Fraud Communications and who were not custodians identified in the 2011 search protocol.  While as a matter of law, Movants believe BP should search all BP employees, contractors, and counsel, we are willing to accept a search of just the 38 custodians that we know from BP's logs are involved in the Crime-Fraud Communications. This limited collection can be performed within the existing Phase Two timeline.  We are willing to use the preexisting search terms for the custodians, and limit the search to documents within the time ranges previously

identified by BP as likely to include documents responsive to the motion to compel, with the addition discussed in Section II above.  Thus the time period is April 24 to May 24 and June 20 to June 25.  While this will mean additional work for BP, it is manageable within the Phase Two timeline and any burden on BP is outweighed by the potential prejudice to the Movants of being precluded from reviewing information relevant to BP's internal flow rate views during the response.  Again, the United States' experience with the DOE recollection is instructive.  There, the government had to recollect from 34 custodians, each of whom had access to highly sensitive material, including critical national security information, making the search and review process particularly difficult.  Moreover, the United States was searching the entire date range for Phase Two production – almost an entire year from April 20, 2010 to March 17, 2011 – rather than the mere 37 days we are asking BP to search here.  Even so, once the protocol was agreed and the relevant protective order entered, the DOE production was 90 percent complete within a month.

In a final attempt to avoid searching new custodians, BP attacks the relevance of the company's flow rate estimates by arguing that "any finding of a crime or fraud beyond the narrow contours of the BP allocation would, in fairness, open the door for additional discovery into the United States' own contemporaneous, post-spill flow estimates."  BP May 17, 2013 Letter at 6, 7.  The first point has been addressed in prior briefing.  The second fails to recognize three critical facts.  First, the Court has *already* found criminal or fraudulent statements outside BP's allocution.  *See* Doc. 9592.  Second, BP has taken *extensive* discovery of the United States' flow rate work during the response – from the earliest estimates in April 2010 to the reports published after the well was shut-in in 2011.  The United States never claimed privilege over flow rate estimates.  Finally, BP has not even alleged that the United States made criminal or fraudulent misstatements, and certainly the United States never pled guilty to doing so.  Fair play does not mean treating differently situated parties the same.  BP weighed its risks and pled

guilty.  The company and its counsel should have known that such action could produce other

consequences – even in collateral, civil litigation.

## CONCLUSION

Movants have proven that BP's public flow rate statements differed from its internal

estimates by an order of magnitude, and the company itself has admitted to obstruction of justice.

This Court has found that for four of the seven Crime-Fraud Communications, Movants have

made their *prima facie* case that a crime or fraud occurred.  Meanwhile, BP has attempted to

minimize the impact of that finding by engineering a search that avoids the very places

responsive documents are most likely to be found.  Given that there was no way to include the

relevant custodians in 2011 when the Phase Two discovery protocols were established, it is

appropriate to require a new collection from the 38 custodians that BP itself has identified as

playing a role in the Crime-Fraud Communications.

The motion to compel sought *all documents* related to the preparation of the Crime-Fraud

Communications.    To resolve the motion, BP should be required to broaden its review criteria

and apply the broader criteria to both its existing custodians and the 38 additional custodians

involved in the Crime-Fraud Communications.

Respectfully submitted,

BRIAN HAUCK                                    IGNACIA S. MORENO
Deputy Assistant Attorney General             Assistant Attorney General
Civil Division                                Environment & Natural Resources Division

PETER FROST                                   SARAH HIMMELHOCH
Directory, Torts Branch, Civil Division       Senior Litigation Counsel
Admiralty and Aviation                        NANCY FLICKINGER
STEPHEN G. FLYNN                              SCOTT CERNICH
Assistant Director                            THOMAS BENSON
MICHELLE DELEMARRE                            Senior Attorneys
SHARON SHUTLER                                DEANNA CHANG
JESSICA SULLIVAN                              A. NATHANIEL CHAKERES
JESSICA MCCLELLAN                             JUDY HARVEY
MALINDA LAWRENCE                              ABIGAIL ANDRE
Trial Attorneys                               RACHEL HANKEY
                                              BETHANY ENGEL
                                              Trial Attorneys


/s/ R. Michael Underhill                      /s/ Steven O'Rourke
R. MICHAEL UNDERHILL, T.A.                    STEVEN O'ROURKE
Attorney in Charge, West Coast Office         Senior Attorney
Torts Branch, Civil Division                  Environmental Enforcement Section
U.S. Department of Justice                    U.S. Department of Justice
7-5395 Federal Bldg., Box 36028               P.O. Box 7611
450 Golden Gate Avenue                        Washington, D.C. 20044
San Francisco, CA 94102-3463                  Telephone:  202-514-2779
Telephone:  415-436-6648                      Facsimile:  202-514-2583
Facsimile:  415-436-6632                      E-mail:  steve.o'rourke@usdoj.gov
E-mail:  mike.underhill@usdoj.gov
                                              DANA J. BOENTE
                                              United States Attorney
                                              Eastern District of Louisiana
                                              SHARON D. SMITH
                                              Assistant United States Attorney
                                              Eastern District of Louisiana
                                              650 Poydras Street, Suite 1600
                                              New Orleans, LA  70130
                                              Telephone:  (504) 680-3000
                                              Facsimile: (504) 680-3184
                                              E-mail:  sharon.d.smith@usdoj.gov


Attorneys for the UNITED STATES OF AMERICA

DATED:  May 24, 2013

By: ___s/ Brad D. Brian                By: ___s/ Steven L. Roberts
Brad D. Brian                          Steven L. Roberts
Michael R. Doyen                       Rachel Giesber Clingman
Grant A. Davis-Denny                   Sean D. Jordan
Bram M. Alden                          SUTHERLAND ASBILL & BRENNAN LLP
MUNGER TOLLES & OLSON LLP              1001 Fannin Street, Suite 3700
355 So. Grand Avenue, 35th Floor       Houston, Texas 77002
Los Angeles, CA 90071                  Tel:  (713) 470-6100
Tel:  (213) 683-9100                   Fax:  (713) 354-1301
Fax:  (213) 683-5180                   Email:  steven.roberts@sutherland.com,
Email:  brad.brian@mto.com                     rachel.clingman@sutherland.com
        michael.doyen@mto.com                  sean.jordan@sutherland.com
        grant.davis-denny@mto.com
        bram.alden@mto.com             By: ___s/ Kerry J. Miller
                                       Kerry J. Miller
                                       FRILOT, LLC
                                       110 Poydras St., Suite 3700
                                       New Orleans, LA 70163
                                       Tel:  (504) 599-8194
                                       Fax:  (504) 599-8154
                                       Email:  kmiller@frilot.com

                                       John M. Elsley
                                       ROYSTON, RAYZOR, VICKERY & WILLIAMS
                                       LLP
                                       711 Louisiana Street, Suite 500
                                       Houston, TX 77002
                                       (713) 224-8380

Counsel for Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc.,
Transocean Holdings LLC, and Triton Asset Leasing GmbH.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Date:  May 24, 2013.                                    /s/  Steve O'Rourke
                                                        U.S. Department of Justice