UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179 |
| | SECTION: J |
| This Document Relates to: 12-00311 | Judge Barbier |
| | Mag. Judge Shushan |

### PLAINTIFF CAMERON INTERNATIONAL CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ISSUANCE OF LETTER ROGATORY

Pursuant to Federal Rule of Civil Procedure 28(b)(3), Plaintiff Cameron International Corporation ("Cameron") respectfully moves this Honorable Court to issue Request for International Judicial Assistance to the Supreme Court in Bermuda, requesting the assistance of the Court to compel the attendance of witnesses at oral depositions in Bermuda and the production of documents located in Bermuda.  The Request is needed to obtain evidence necessary for the trial of this case.  Cameron is filing herewith a proposed Request for International Assistance.

### I.      SUMMARY OF ACTION

Cameron filed this action on January 30, 2012 in the United States District Court for the Eastern District of Louisiana against Liberty Insurance Underwriters Inc. ("Liberty"). Cameron's Amended Complaint, dated April 19, 2012, alleges that Liberty disregarded its obligations to provide insurance to Cameron in connection with hundreds of lawsuits arising from the April 20, 2010 Deepwater Horizon explosion and resulting oil spill in the Gulf of Mexico (the "Deepwater Horizon Incident").

Because of the nature of Cameron's business, it faces significant risks of liability arising out of blowouts or other accidents associated with drilling.  Cameron, like most companies, purchases insurance from the world's largest insurance companies.  From July 1,

1127709v1

2009 through July 1, 2010, Cameron purchased a "tower" of ten excess casualty insurance policies. In total, Cameron had $500 million in excess casualty coverage. Liberty agreed to provide Cameron $50 million in excess casualty coverage. Other insurers including Illinois National Insurance Company ("INIC"), ACE American Insurance Company ("ACE American"), and XL Insurance Company Limited ("XL"), Chubb Atlantic Indemnity, Ltd. ("Chubb"), XL Insurance (Bermuda) Ltd. ("XL Bermuda"), AIG Excess Liability Insurance International Limited ("AIG Excess"), Iron-Starr Excess Agency Ltd. ("Iron-Star"), Argo Re Ltd. ("Argo Re"), and ACE Bermuda Insurance Ltd. ("ACE Bermuda") also provided coverage to Cameron. The Chubb, Iron-Star, and Argo Re policies contained provisions pursuant to which they would be entitled to any limitations on coverage contained in policies that were "lower" in the insurance tower, including the Liberty policy.

On December 12, 2012, Cameron reached a tentative settlement with BP that would largely eliminate Cameron's liability for the Deepwater Horizon Incident in exchange for a $250 million payment by Cameron. Cameron relied upon its insurers, including Liberty, to pay their shares of insurance that Cameron bought from them. Nine of Cameron's insurers—including Chubb, Iron-Star, and Argo Re—consented to the settlement and paid. Only Liberty refused. Cameron itself paid the $50 million owed by Liberty.

At issue in this case is whether Liberty had an obligation to pay Cameron the full $50 million limit when Cameron settled with BP and whether Liberty's failure to do so constituted bad faith in violation of the Texas Insurance Code. Chubb, Iron-Star, and Argo Re, all of which are Bermuda entities, could have denied Cameron's claim for coverage for the BP settlement on the same basis that Liberty denied Cameron's claim, but they did not. Discovery of those insurers and their employees, Ms. Nusum, Mr. Engrissei, and Mr. Williams,

1127709v1

respectively, will provide Cameron with evidence of Liberty's breach and bad faith for use at trial.

## II.       ASSISTANCE REQUIRED

Pursuant to the Federal Rules of Civil Procedure, this Court has jurisdiction to order discovery, including depositions of witnesses upon oral examination and production of documents, from any person regarding any matter which is relevant to the subject matter of the pending action.  *See* Fed. R. Civ. P. 26(b).  The evidence that Cameron seeks from witnesses residing in Bermuda is necessary for the trial of this case and not otherwise obtainable by this Court through this Court's compulsory process.   The detailed knowledge and unique perspectives of the witnesses who Cameron seeks to depose are not reflected in documents and requires oral testimony.  Similarly, the documents sought in the proposed Letter Rogatory are highly relevant to Cameron's case and are not available from other sources.  Therefore, Cameron respectfully requests that this Court issue the Request for International Judicial Assistance addressed to the Bermuda Supreme Court, filed herewith, to compel the attendance of witnesses for oral depositions in Bermuda and the production of documents listed below in Bermuda.

Bermuda is not a party to any multilateral treaty on obtaining evidence, such as the 1970 Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters. However, pursuant to Sections 27P and 27Q of the Bermuda Evidence Act 1905, upon application to the Supreme Court based on an order issued by a foreign court, the Bermuda Supreme Court will issue an order for the examination of witnesses and the production of documents.  This court is authorized to issue such a Letter of Request by Federal Rule of Civil Procedure 28(b) and 28 U.S.C. § 1781(b)(2) upon application and notice of it.

Enforcement of the Letter of Request will not be unduly burdensome to the Bermudian witnesses or entities.  Each deposition should last no more than half a day.  The

1127709v1

documents sought by Cameron are limited in scope and not available from other sources.  The

witnesses and documents are set forth below and included in the proposed Request for

International Judicial Assistance.

       1.     Witness:     Alexis Nusum
                                     Chubb Atlantic Indemnity, Ltd.
                                     48 Par-La-Ville Road, Suite 773
                                     Hamilton HM 11, Bermuda

Ms. Nusum is a Claims Analyst at Chubb, one of Cameron's insurers that consented to and contributed toward Cameron's settlement with BP.  Ms. Nusum was responsible for administering Cameron's claim related to the Deepwater Horizon Incident and participated in numerous discussions with Cameron and Liberty regarding the claim.  Ms. Nusum, on behalf of Chubb, could have denied payment to Cameron on the same basis that Liberty denied Cameron's claim, but did not do so.  Ms. Nusum has knowledge about Liberty's conduct during the investigation of Cameron's claim and the negotiation of the Cameron-BP settlement, the unreasonableness of Liberty's coverage position, including why Chubb did not take the same position, and the value of the BP settlement in light of Cameron's potential liability.

       2.     Witness:     Larry Engrissei
                                     Iron-Starr Excess Agency Ltd.
                                     141 Front Street, 7th Floor
                                     Hamilton HM 19, Bermuda

Mr. Engrissei is the Senior Vice President of Claims at Iron-Starr, one of Cameron's insurers that consented to Cameron's settlement with BP.  Mr. Engrissei was responsible for administering Cameron's claim related to the Deepwater Horizon Incident and participated in numerous discussions with Cameron and Liberty regarding the claim.  Mr. Engrissei, on behalf of Iron-Starr, could have could have refused to consent to the settlement on the same basis that Liberty denied Cameron's claim, but did not do so.  Mr. Engrissei has

1127709v1

knowledge about Liberty's conduct during the investigation of Cameron's claim and the negotiation of the Cameron-BP settlement, the unreasonableness of Liberty's coverage position, including why Chubb did not take the same position, and the value of the BP settlement in light of Cameron's potential liability.  In addition, Mr. Engrissei sent a letter to Liberty explaining the unreasonableness of Liberty's position on the same policy language Iron-Starr had.

> 3.      Witness:      Kevin Williams
> Argo Re Ltd.
> Argo House, 110 Pitts Bay Road
> Pembroke HM 08, Bermuda

Mr. Williams is a Claims Manager at Argo Re, another of Cameron's insurers that consented to Cameron's settlement with BP.  Mr. Williams was responsible for administering Cameron's claim related to the Deepwater Horizon Incident and participated in numerous discussions with Cameron and Liberty regarding the claim.  Mr. Williams, on behalf of Argo Re, could have refused to consent to the settlement on the same basis that Liberty denied Cameron's claim, but did not do so.  Mr. Williams has knowledge about Liberty's conduct during the investigation of Cameron's claim and the negotiation of the Cameron-BP settlement, the unreasonableness of Liberty's coverage position, including why Argo Re did not take the same position, and the value of the BP settlement in light of Cameron's potential liability.  Cameron has reason to believe that Mr. Williams also sent a letter to Liberty complaining that Liberty's refusal to pay Cameron's claim was unreasonable and jeopardized Cameron's settlement with BP.

> 4.      Documents to be Requested from Chubb, Iron-Starr, and Argo Re:
>
> All documents and communications (including electronic mail messages) between and among Cameron, INIC, ACE American, XL, Liberty, Chubb, XL Bermuda, AIG Excess, Iron-Starr, Argo Re, and ACE Bermuda, or their agents, concerning Cameron's claim for coverage for the Deepwater Horizon Incident from April 20, 2010 to December 15, 2012.

Cameron expects these documents will show that all the insurers besides Liberty believed the BP settlement was fair and was a properly payable, covered claim.

## III.    CONCLUSION

For the foregoing reasons, the identified individuals and corporations have evidence necessary for the trial of this case.  Thus, Cameron respectfully requests the Court issue the proposed Letter Rogatory to the Bermuda Supreme Court, attached hereto as Exhibit A. With the Court's approval, this Letter Rogatory will be presented to that court by appropriate counsel retained by Cameron.  That foreign counsel will seek issuance of orders by the Bermuda Supreme Court compelling the witnesses listed above to appear and testify at deposition and the production of documents listed above.

Dated: May 29, 2013

By:   */s/ Philip A. Wittmann*
      Philip A. Wittman (LA 13625)
      Carmelite M. Bertaut (LA 3054)
      Stone Pigman Walther Wittmann L.L.C.
      546 Carondelet Street
      New Orleans, Louisiana  70130
      Telephone: (504) 581-3200
      Facsimile:  (504) 581-3361
      pwittmann@stonepigman.com
      cbertaut@stonepigman.com

      -and-

By:    */s/ Mitchell J. Auslander*
      Mitchell J. Auslander (NY 1708841)
      Jeffrey B. Korn (NY 3990520)
      Willkie Farr & Gallagher LLP
      787 Seventh Avenue
      New York, New York 10019
      Telephone: (212) 728-8000
      Facsimile: (212) 728-8111
      mauslander@willkie.com
      jkorn@willkie.com
      *Counsel To Cameron International Corporation*

1127709v1

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing Memorandum of Law in Support of Motion for Issuance of Letter Rogatory (Bermuda) has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on May 29, 2013.

By:    */s/ Philip A. Wittmann*

1127709v1