UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | : : : : | MDL NO. 2179<br><br>SECTION J |
| THIS DOCUMENT RELATES TO: | : : | JUDGE BARBIER |
| ALL CASES | : : | MAGISTRATE JUDGE SHUSHAN |

**UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY DUE TO BP'S REFUSAL TO PROVIDE ENHANS SOFTWARE WITHOUT RESTRAINT OF TRADE NON-COMPETE CLAUSE**

INTRODUCTION

Under Fed. R. Civ. P. 26(a)(2) and the Order Regarding Phase Two Expert Document Production (Rec. doc. 8907), Parties are required to produce "Relied-Upon Modeling Runs." BP has failed to comply with this order, and with the dictates of the Federal Rule: BP has denied the United States access for its experts to inspect, review, and use the "ENHANS" sand production and prediction modeling software relied upon by Drs. Srdjan Nesic and Hans Vaziri, two of BP's experts, to reach their opinions to be offered at the Phase Two trial.

BP's explanation for its failure to produce evidence underlying its experts' reports is that the software used by those experts is confidential. Of course, the United States has committed that any expert who examines the ENHANS software will comply with Pre-Trial Order No. 13 Protecting Confidentiality (Rec. Doc. 641). The United States went even further and agreed that its experts could sign a Non-Disclosure Agreement that requires such experts, under penalty of perjury and subject to the enforcement of this Court, to treat the "Protected Materials" as strictly confidential and to use the "Protected Materials" solely for purposes of the MDL 2179 litigation.

BP, however, is not willing to follow the time-tested procedure in this case, under this Court's Order governing disclosure of confidential information. Instead, BP seeks to impose additional, onerous requirements on the experts for the United States. BP seeks to require the United States' experts to sign a restraint of trade non-compete clause that would effectively prevent them from providing consulting or other services related to sand prediction and/or sand production in the future. But BP has failed to provide the required particular and specific demonstration of fact required to justify such a demand. Such a restraint of trade non-compete clause would effectively and practically preclude the United States from having any individual in the field of sand production and/or predicting future sand production from reviewing or testifying regarding the ENHANS software. BP has put the ENHANS software at issue since two of its experts are relying on it as the basis for their expert opinions. As a result, as set forth below, BP should be precluded from presenting Dr. Vaziri or Dr. Nesic as an expert or relying on his opinions at trial.

## BACKGROUND

On March 15, 2013, the Court entered its Order Regarding Phase Two Expert Document Production. (Rec. doc. 8907). In accordance with that Order, on May 1, 2013, Defendants including BP, were required to serve their expert reports (except regarding Dr. Bea's report). On May 10, Defendants were required to serve the "Consideration Materials" associated with their expert reports. Under the Order, all "Relied-Upon Modeling Runs" were required to be produced as part of the expert report on May 1. The term "Relied-Upon Modeling Runs" is defined to refer to "the native version of any computer files containing the input to an/or output from computer model runs that are relied upon to support the conclusions set forth in the expert report." (Order at 2).

On May 1, BP served a number of expert reports including an expert report prepared by Dr. Nesic.  As Appendix E to his report, Dr. Nesic attached a report from Hans Vaziri, Ph.D.  Dr. Vaziri, who states that he is "BP's Distinguished Advisor for Sand Management," indicates that he was:

> asked to provide an analysis of sand production in the Macondo well in connection with litigation arising out of the *Deepwater Horizon* incident of April 20, 2010.  Specifically, I have been asked to estimate, among other things, the amount, timing, and size of sand produced from the reservoir by the Macondo well as a result of and following the incident.

Vaziri Report at 2.  According to Dr. Vaziri, his estimate of the sand production from the reservoir by the Macondo well is based on data from the ENHANS software, a BP proprietary tool that he developed for sand prediction.  *Id*.  It is undisputed that BP has not produced Dr. Vaziri's "Relied-Upon Modeling Runs" for the ENHANS software, i.e., the native version of the computer files containing the input to and/or output from the ENHANS model runs that are relied upon to support the conclusions set forth in his expert report.

BP did nothing to produce the ENHANS model until the United States asked why the model had not been produced on May 9, 2013.  Ex. 1, May 9, 2013 Email, T. Benson to R. Gasaway, et al.  Beginning on May 10 and continuing into this week, counsel for the United States and BP conferred in good faith and worked with this Court in an effort to reach a Stipulation and Agreement regarding the United States' inspection, review, production, and use of the ENHANS software and related data and documents.  The parties have obtained agreement on all of the terms and conditions of the attached Stipulation and Agreement, including the following confidentiality clause in the Non-Disclosure Agreement:

> I agree to treat all "Protected Materials" to which I am granted access by virtue of the attached Protocol and this Non-Disclosure Agreement -- as well as all information derived from the Protected Materials -- as strictly confidential and to use the "Protected

>Materials" solely for purposes of the MDL 2179 litigation and solely in accordance with the terms and conditions of the attached Protocol.

The parties, however, reached an impasse over the following restraint of trade clause proposed by BP in the Agreement:

>Upon signing this agreement, I agree not to provide consulting services or services as an employee related to measuring actual sand production, and/or predicting future sand production from underground or undersea hydrocarbon reservoirs. I understand that my agreement to this provision does not limit or preclude me from providing consulting services or services as an employee related to measuring rates of erosion of metal or other components due to the presence in flowing fluids of various concentrations of sands or other solids.

On May 28, the Court recommended and the United States agreed to a substitute clause which would require persons with access to the software to certify that:

>Upon signing this agreement, I specifically agree not to use any information gained from my review and access to the Protected Materials in any of my work or any consulting.

The United States continues to believe that the language suggested by the Court would be an appropriate compromise. Regrettably, on May 29 BP informed the United States and the Court that it could only agree to such a substitute clause if it also is followed by substantial additional terms and conditions that will have a significant chilling effect on any expert for the United States who would consider reviewing the ENHANS software. Thus, BP continues to seek to preclude any expert for the United States who inspects, reviews, or uses the ENHANS software from ever providing consulting services or services as an employee related to sand production or prediction in the future.

## ARGUMENT

Under Fed. R. Civ. P. 37(c)(1), (a)(3)(A), if a party fails to make the disclosures required by Fed. R. Civ. P. 26(a), that party "is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified . . . ." Fed. R. Civ. P. 37(c)(1).

Upon motion, sanctions could be available under the same Rule, but the United States does not hereby seek any such sanctions.

Rule 37(c) was added by 1993 amendments, and the comments note that Rule 37(c)(1) is "self-executing" and "automatic," without need for a motion under subdivision (a)(2)(A). The Comments note that the automatic exclusion of evidence does not apply if there is "substantial justification," but the examples from the comments are not applicable here (*e.g.*, inadvertent omission of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures).

In *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375 (5th Cir. 1996) (decided under the old Fed. R. Civ. P. 37(b)(2)(B)), the Fifth Circuit affirmed the decision of the district court to exclude the testimony of four expert witnesses who had not formulated their final opinions by the required deadline. In upholding the trial court's determination, the appellate court examined four factors:

> (1) the explanation, if any, for the party's failure to comply with the discovery order;
>
> (2) the prejudice to the opposing party of allowing the witnesses to testify;
>
> (3) the possibility of curing such prejudice by granting a continuance; and
>
> (4) the importance of the witnesses' testimony.

*See Barrett*, 95 F.3d at 379-382; *Beane v. Utility Mfg. Co.,* No. 2:10-cv-781, 2013 WL 1344763 (W.D. La. Feb. 25, 2013) (testimony of nine experts excluded where the experts did not provide the disclosures required by Fed. R. Civ. P. 26(a)(2)(B) even though plaintiff contended they were not retained experts); *Joshua v. State Farm Fire and Cas. Co.,* No. 06-8603, 2008 WL 145095 (E.D. La. Jan. 14, 2008) (Barbier J.) (expert witness precluded from testifying because expert

report was not served when due); *Standard Services Co., Inc. v. Witex U.S.A., Inc.*, No. 02-537, 2003 WL 2004442 (E.D. La. April 30, 2003) (Barbier J.) (expert witness precluded from testifying because party failed to serve expert report in a timely manner); *Wright v. Commonwealth Primary Care, Inc.*, No. 3:10-cv-00034, 2010 WL 4623998 (E.D. Va. Nov. 2, 2010), *aff'd*, 445 Fed.Appx. 632 (4th Cir. Sept. 6, 2011) (expert witnesses precluded from testifying because party failed to comply with expert disclosure requirement); *Young v. Brand Scaffold Services, LLC*, No. 1:07-cv-917, 2009 WL 4674050 (E.D. Tex. Feb. 24, 2009) (expert witness precluded from testifying since expert was not designated in a timely manner).[1]

Here, each of the four factors required by the Fifth Circuit support an order compelling BP to produce the ENHANS software, subject to a confidentiality agreement but without a restraint of trade clause, or be precluded from offering or relying on the testimony or opinions of Drs. Nesic and Vaziri.[2]

First, BP has not adequately explained its failure to comply with the Court's Order requiring the production of "Relied-Upon Modeling Runs." Notably, BP failed to take *any* action with respect to the ENHANS software until the United States asked why it had not been

---

[1] Although BP has presented Dr. Vaziri as a non-retained employee expert who is not required to provide an expert report under Fed. R. Civ. P. 26(a)(2)(C), BP has properly provided an expert report for him. As Judge Barbier stressed in *Beechgrove Redevelopment, L.L.C. v. Carter & Sons Plumbing, Heating and Air-Conditioning, Inc.*, No. 07-8446, 2009 WL 981724 (E.D. La. April 19, 2009), the non-retained expert provision is intended to address the expert whose information was acquired "because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. *Id*. at *4 (quoting Rule 26(b)(4), at Advisory Committee's note to the 1970 Amendment). Dr. Vaziri was not actively involved in the response. For him to provide opinions in this litigation, an expert report is required.

[2] The case law is clear that "[t]he mere fact that information which as a matter of ordinary course of one's business is electronically stored has been produced in functional equivalent, such as through hard copy, does not in and of itself excuse a party from producing the requested information in electronic form." *See Auto Club Family Ins. Co. v. Ahner,* No. 05-5723, 2007 WL 2480322, at *2 (E.D. La. Aug. 29, 2007) (citation omitted) (insurance company that investigated Hurricane Katrina-related damages required to produce electronically stored information concerning its investigation, despite argument that it should only be required to produce a hard copy of its file).

produced.  Thus, from the outset, BP failed to comply with the Court's order on expert production was in violation of Rule 37.  Now, the Parties and the Court have spent three weeks attempting to address BP's concerns about the proprietary nature of the software, while the United States' rebuttal reports are due in 12 days.

The final hang-up in the process is BP's insistence that a protective order that includes a restraint of trade non-compete clause is necessary to protect the ENHANS software.  BP, however, has not met the required showing of good cause to support the issuance of a protective order.  As the Fifth Circuit has emphasized, "[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *See In re Terra Intern., Inc.,* 134 F.3d 302, 306-307 (5th Cir. 1998) (citation omitted) (ammonium nitrate plant owner compelled to produce documents prepared by its investigative committee, including documents prepared by owner's counsel's experts containing test results and analyses).

A similar situation arose in *Cornell Research Found., Inc. v. Hewlett Packard Co.,* 223 F.R.D. 55, 73 (N.D.N.Y.2003), *modified on other grounds*, No. 5:01CV1974, 2005 WL 5955715 (N.D.N.Y. Oct. 11, 2005).  There, the assignee of a patent on a computer processor instruction issuing system and method brought an infringement suit.  In response to motions to compel, the court held that given the critical nature of the information at issue, the plaintiffs would be given access to the technical specifications of accused processor system in electronic format in order to satisfy themselves that they had received all the information relative to the specifications in a hard copy production provided by defendant.  Although the defendant vigorously resisted, contending that such an exercise would be unduly invasive and entail additional expense, it did not provide any specifics concerning those assertions. The court reasoned that there was no basis

to believe that such an endeavor would be either invasive or unduly expensive, particularly when compared to the expense of litigating the case and the extent of the parties' pretrial discovery efforts.

In terms of the confidentiality of the information at issue, the court stated that "if-as HP suggests-it has provided plaintiffs with everything of relevance concerning the specifications for the accused devices, then it cannot seriously contend that to provide the same information to plaintiffs' technical expert in electronic format would expose confidential information not previously supplied during discovery and subject, of course, to the parties' confidentiality agreement." *Id.* at 75. *See also Weiss v. Allstate Ins. Co.*, No. 06-3774, 2007 WL 2377119 (E.D. La. Aug. 16, 2007) (confidentiality provisions of protective order adequately protected information used by insurance adjustors after Hurricane Katrina).

Likewise, here BP has not made "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" that would warrant the restraint of trade clause advocated by BP. Pre-Trial Order No. 13 and its certification requirement have long effectively governed and protected the confidentiality of information in this case. In addition, under Paragraph 4 of the Non-Disclosure Agreement, any expert for the United States who inspects, reviews, operates and/or uses the ENHANS software must agree under penalty of perjury and subject to the enforcement authority of this Court to treat all "Protected Materials" as well as all information derived from such materials as strictly confidential and to use the "Protected Materials" solely for purposes of the MDL 2179 litigation. BP has made no particular or specific showing of fact that either PTO No. 13 or the confidentiality provisions of the Non-Disclosure Agreement are inadequate to protect BP's ENHANS software.

Second, if BP continues to refuse to provide access to the ENHANS software, without a restraint of trade non-compete clause, the United States will be prejudiced if Drs. Nesic and Vaziri are allowed to testify or BP is allowed to reply on their opinions.[3]  If BP is allowed to rely on their opinions at trial, it will be presenting the results of software that is a black box to the United States.  The United States will be severely prejudiced by not being able to examine the basis for these two experts' opinions – as has been done for every other expert in this litigation.  Contrary to BP's insistence, it is unreasonable to expect any expert for the United States who has expertise in sand production, whether or not their income is presently derived primarily from consulting or employment related to sand production, to agree to never provide such consulting or engage in such employment at any time in the future.  Such a requirement would impose an extreme financial disincentive for any person with expertise in these areas to provide services as an expert witness to the United States for the Phase II trial.  It also is unreasonable to expect any expert for the United States to agree to provide the Court and its Special Master notice and an attestation related to any sand prediction that he or she is paid to conduct for a period of five years after the end of the Phase 2 trial in this litigation, as BP now insists.   Such a requirement will place a significant chilling effect on any expert who may be willing to review the ENHANS software.

Third, the granting of a continuance of the deadline for production of the ENHANS software would not cure the prejudice to the United States.  The issue is not with the production of the software.  The impasse is over BP's unreasonable insistence on requiring any expert for the United States who reviews the software to promise, under penalty of perjury, never to

---

[3] In Louisiana, as elsewhere, restraint of trade is against public policy.  Louisiana Revised Statute 23:921(A)(1) provides that ``[e]very contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void."  *See Turner Professional Services, Ltd. v. Broussard,* 762 So.2d 184 (La.App. 1 Cir. 5/12/00).

provide consulting or other services consulting services or services as an employee related to measuring actual sand production, and/or predicting future sand production from underground or undersea hydrocarbon reservoirs in the future.

Fourth, the testimony of Dr. Vaziri and other BP expert witnesses who would rely on his opinions is important to the Phase II trial. Through the testimony of Drs. Vaziri and Nesic, BP apparently intends to attempt to prove that it was possible for the flow rate to be far lower in the early part of the spill than was suggested by subsequent pressure and collection rate measurements. This portion of BP's case is almost entirely reliant on modeling, which makes the details of their modeling critically important in evaluating the validity of their opinions. To allow BP to develop its theory of the case based on a black box model would be profoundly unfair and contrary to the rules of expert discovery.

## CONCLUSION

For the above reasons, the United States' motion to preclude Drs. Nesic and Vaziri from testifying and to preclude any BP or other witnesses from relying on such testimony should be granted.

Dated: May 29, 2013

Respectfully submitted,

| | |
|---|---|
| BRIAN HAUCK | IGNACIA S. MORENO |
| Deputy Assistant Attorney General | Assistant Attorney General |
| Civil Division | Environment & Natural Resources Division |
| | |
| PETER FROST | SARAH HIMMELHOCH |
| Directory, Torts Branch, Civil Division | Senior Litigation Counsel |
| Admiralty and Aviation | NANCY FLICKINGER |
| STEPHEN G. FLYNN | SCOTT CERNICH |
| Assistant Director | THOMAS BENSON |

| | |
|---|---|
| MICHELLE DELEMARRE | Senior Attorneys |
| SHARON SHUTLER | DEANNA CHANG |
| JESSICA SULLIVAN | A. NATHANIEL CHAKERES |
| JESSICA MCCLELLAN | JUDY HARVEY |
| MALINDA LAWRENCE | ABIGAIL ANDRE |
| Trial Attorneys | RACHEL HANKEY |
| | BETHANY ENGEL |
| | Trial Attorneys |

/s/ R. Michael Underhill
R. MICHAEL UNDERHILL, T.A.
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice
7-5395 Federal Bldg., Box 36028
450 Golden Gate Avenue
San Francisco, CA 94102-3463
Telephone: 415-436-6648
Facsimile: 415-436-6632
E-mail: mike.underhill@usdoj.gov

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: 202-514-2779
Facsimile: 202-514-2583
E-mail: steve.o'rourke@usdoj.gov

DANA J. BOENTE
United States Attorney
Eastern District of Louisiana
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
650 Poydras Street, Suite 1600
New Orleans, LA 70130
Telephone: (504) 680-3000
Facsimile: (504) 680-3184
E-mail: sharon.d.smith@usdoj.gov

Attorneys for the UNITED STATES OF AMERICA

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Date: May 29, 2013.                                    /s/ Steve O'Rourke
                                                       U.S. Department of Justice