**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf of Mexico, on April 20, 2010 | **MDL NO. 2179** |
| | **SECTION J** |
| **This document applies to:** *All Cases* | **JUDGE BARBIER** |
| | **MAGISTRATE JUDGE SHUSHAN** |

**TRANSOCEAN'S REPLY MEMORANDUM IN SUPPORT OF
ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AS TO
CLAIMS ASSIGNED UNDER SETTLEMENT AGREEMENT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.    Because BP's Assigned Claims Are To Be Asserted on Behalf of the
Economic Class, Rather than by Individual Litigants, They Cannot
Proceed Absent Proper Certification of a Litigation Class Under Rule 23 ............ 2

    A.    The PSC Is Attempting to Litigate "Class" Claims ................................... 3

    B.    The Economic Class Was Certified Only as a Settlement Class
with BP, Not as a Litigation Class Against Transocean ............................ 3

II.    The Economic Class Is Also Substantively Barred from Asserting BP's
Contribution Claims ...................................................................................................... 6

    A.    The Economic Class Cannot Assert BP's Contribution Claims
Because BP Did Not Obtain a Full Release of All the PSC's
Claims Against Transocean .................................................................... 7

    B.    The Contribution Claims Seek an Impermissible Double Recovery .......... 9

    C.    Allowing Contribution Claims Based on the Settlement Payments
Violates Transocean's Substantive Rights and Right to Present a
Defense ................................................................................................ 10

CONCLUSION ................................................................................................................... 10

CERTIFICATE OF SERVICE ............................................................................................. 11

i

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ............................................................................................ 3, 4

*Califano v. Yamasaki,*
  442 U.S. 682 (1979) ................................................................................................. 3

*Clark v. State Farm Mut. Auto Ins. Co.,*
  590 F.3d 1134 (10th Cir. 2009) .............................................................................. 5

*Franks v. Bowman Transp. Co.,*
  424 U.S. 747 (1976) ................................................................................................. 5

*In re Austrian and German Bank Holocaust,*
  317 F.3d 91 (2d Cir. 2003) ...................................................................................... 6

*In re Combustion, Inc.,*
  968 F. Supp. 1116 (W.D. La. 1997) ........................................................................ 5

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
  55 F.3d 768 (3d Cir. 1995) ...................................................................................... 4

*In re PNC Financial Services Group, Inc.,*
  440 F.Supp.2d 421 (W.D. Pa. 2006) ....................................................................... 5

*Marcus, Stowell & Beye Gov't Secs., Inc. v. Jefferson Inv. Corp.,*
  797 F.2d 227 (5th Cir. 1986) ................................................................................... 9

*McMillon v. Hawaii,*
  2011 U.S. Dist. Lexis 17859 (D. Haw. Feb. 22, 2011) ......................................... 5

*Morissette v. United States,*
  342 U.S. 246 (1952) ................................................................................................. 8

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
  130 S. Ct. 1431 (2010) .......................................................................................... 10

*Sosna v. Iowa,*
  419 U.S. 393 (1975) ................................................................................................. 5

*Sullivan v. DB Invs., Inc.,*
  667 F.3d 273 (3d Cir. 2011) .................................................................................... 4

## TABLE OF AUTHORITIES
### (continued)

Page

*Taylor v. Sturgell,*
    553 U.S. 880 (2008)..................................................................................3

*United States Parole Commission v. Geraghty,*
    445 U.S. 388 (1980)..................................................................................5

*United States v. Atl. Res. Corp.,*
    551 U.S. 128 (2007)..................................................................................8

*Veal v. Voyager Prop. & Cas. Ins. Co.,*
    2008 U.S. Dist. Lexis 120929 (M.D. Fla. June 20, 2008)........................5

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S.Ct. 2541 (2011) .........................................................................3, 10

*Zablocki v. Redhail,*
    434 U.S. 374 (1978)..................................................................................5

STATUTES AND RULES

28 U.S.C. § 2072(b) .......................................................................................10

33 U.S.C. 2705(a) .......................................................................................8, 9

33 U.S.C. 2717(f)(3)(B) ................................................................................8

Fed. R. Civ. P. 23...................................................................................passim

Rules 23(a) and (b)(3) .....................................................................................3

Rule 23(b)(2) ...............................................................................................1, 2

OTHER AUTHORITIES

BLACK'S LAW DICTIONARY 353 (8th ed. 2004).............................................8

## INTRODUCTION

BP and the PSC's "Economic and Property Damages Settlement Agreement," Rec. Doc. 6430, created a settlement-only class designed to "extinguish, discharge, and release" the vast majority of claims asserted by the defined class members, *id*. at pp. 1-12.  Under the Agreement, however, BP also purported to assign to the Economic Class, "only as a juridical entity and not to the [individual class members]," its claims for reimbursement of payments made under the Settlement Agreement (the "Contribution Claims") and its separate claims for spill-related damages, such as lost profits from the well (the "Direct Damages Claims") (collectively the "Assigned Claims").  *See id.*, Ex. 21 at ¶¶ 1.1.3, 1.1.3.4, 1.1.3.5.

But the Economic Class is incapable of asserting any of the Assigned Claims for at least three reasons: (1) because the Court has not certified any litigation class in this case, there is no "juridical entity" that can litigate any of the Assigned Claims under Federal Rule of Civil Procedure 23; (2) as a matter of law, even otherwise valid class action claims cannot be asserted in a Limitation of Liability action; and (3) even assuming the Settlement Agreement somehow created a litigation class, it could only have created a mandatory Rule 23(b)(2) class, which does not allow class members to opt out, and under settled law mandatory classes may pursue only injunctive relief, not damages.  Rec. Doc. 8120-1 ("Mot.") at 1-10.

The PSC attempts to evade Rule 23's requirements by insisting that, when the Economic Class as a "juridical entity" litigates the Assigned Claims, it will not actually be asserting any "class" claim against Transocean, "but merely stepping into the shoes of BP, which has a single undivided claim that requires no 'certification.'"  *See* Rec. Doc. 10186 ("PSC Opp.") at 4.[1]

---

[1] The PSC also asserts that BP's unambiguous release of the Direct Damages Claims in the Drilling Contract might be rendered unenforceable by a finding of gross negligence.  PSC Opp. at 5, 11. Transocean is separately filing a motion for partial summary judgment to enforce this contractual release of the Direct Damages Claims.

Nonsense. It is well established that the litigation of *any* claim or group of claims on behalf of a class of individuals, regardless of the nature of the claims, cannot proceed absent certification of a litigation class under Rule 23. Because no such class has been certified here, nor could a hypothetical litigation class assert claims in a Limitation of Liability action, none of the Assigned Claims may be pursued by the Economic Class.

Moreover, even if the Economic Class could litigate the Assigned Claims as a "juridical entity," the Contribution Claims are barred because (1) BP did not obtain a complete release before assigning those claims, (2) the claims would allow members of the Economic Class to reap an improper double recovery, and (3) allowing the claims to proceed would compromise Transocean's due-process right to defend itself.

## ARGUMENT

**I.**  **Because BP's Assigned Claims Are To Be Asserted on Behalf of the Economic Class, Rather than by Individual Litigants, They Cannot Proceed Absent Proper Certification of a Litigation Class Under Rule 23**

The PSC's argument that the Economic Class can litigate the claims purportedly assigned by BP appears to rest on two premises: (1) once a settlement class has been certified, it is a "juridical entity" for all purposes, and thus can bring a lawsuit against a third party; and (2) the Economic Class is not actually bringing any "class" claims, but rather merely "stepping into the shoes of BP" to assert "a single undivided claim" requiring no further certification. PSC Opp. at 21-22. These premises are both factually and legally wrong.[2]

---

[2] Because the PSC failed to provide any response to Transocean's arguments that (1) class action claims cannot be pursued in a Limitation of Liability Action, and (2) the Settlement Agreement could only have created a Rule 23(b)(2) class that could not pursue money damages claims, this Reply does not further address those points.

### A.     The PSC Is Attempting to Litigate "Class" Claims

It is black letter law that the "class-action device . . . [is] an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979).  A departure from this rule is justified only when a class representative is "part of the class and possess [es] the same interest and suffer[s] the same injury as the class members," *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011) (citations and internal quotation marks omitted), and when Rule 23's other requirements have been met. *See Taylor v. Sturgell*, 553 U.S. 880, 900-01 (2008); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 629 (1997).

Of course, the Economic Class certified by the Court is not an "individual named part[y]" in this case, *Califano*, 442 U.S. at 700-01; rather, as the Court has recognized, it is a settlement-only *class.  See* Final Fairness Hr'g. Tr. 16 (Court did not need to consider how to "manage the class action" because "there would be no trial of the class members' claims"); *see also* Rec. Doc. 7945 (Class Counsel's and BP Defendants' Joint Proposed Findings of Fact and Conclusions of Law in Support of Final Approval of *Deepwater Horizon* Economic and Property Damages Settlement Agreement As Amended on May 2, 2012), at 85 ("This Settlement Class May Be Certified For Purposes of Settlement Only Pursuant To Rules 23(a) and (b)(3)").  Thus, contrary to the PSC's assertion, *any* claim that the Economic Class purports to litigate, whether it is an assigned claim or otherwise, is by definition a "class" claim, not a claim asserted by an individual named party or parties in this case.

### B.     The Economic Class Was Certified Only as a Settlement Class with BP, Not as a Litigation Class Against Transocean

The PSC has also argued that the Economic Class, once certified, became "its own juridical entity" for all purposes, and that this settlement-only class is therefore somehow also

empowered to sue Transocean on BP's Assigned Claims.  PSC Opp. at 21-22.  Wrong. Litigation classes are not interchangeable with settlement-only classes, and a class certified in a settlement proceeding to which Transocean was not a party cannot sue Transocean.

Settlement classes are different from litigation classes.  *See, e.g., In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786 (3d Cir. 1995) ("[A] settlement class is a device whereby the court postpones the formal certification procedure until the parties have successfully negotiated a settlement, thus allowing a defendant to explore settlement without conceding any of its arguments against certification.").  As the Supreme Court has explained, a settlement class need not meet all of the same Rule 23 requirements as a litigation class—in particular, it need not satisfy the requirement of manageability.  *Amchem*, 521 U.S. at 620.  Thus, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems."  *Id.*; *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 335 (3d Cir. 2011) (Scirica, J., concurring) ("[S]ome inquiries essential to litigation class certification are no longer problematic in the settlement context.  A key question in a litigation class action is manageability—how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof.  But the settlement class presents no management problems because the case will not be tried.").  Where litigation classes are concerned, however, courts must give the manageability issue a "close look."  *Amchem*, 521 U.S. at 615-16.  In short, settlement and litigation classes are not interchangeable, and nothing in Rule 23 or case law supports the PSC's proposition that a settlement-only class should also be treated as a litigation class.

In this regard, none of the cases cited by the PSC support the proposition that a settlement-only class may subsequently litigate new claims against non-parties to the settlement.

The PSC begins by citing a series of Supreme Court cases that addressed mootness and standing issues regarding the certification of litigation classes, not the effect of the assignment of claims to settlement classes.  PSC Opp. at 21.  Starting with *Sosna v. Iowa*, 419 U.S. 393 (1975), and concluding with *United States Parole Commission v. Geraghty*, 445 U.S. 388 (1980), the Supreme Court developed the broad rule that once an order granting or denying the certification of a litigation class has issued, the class action will not be mooted if the class representative's claim becomes moot—so long as a live controversy remains between the defendant against whom the class was certified and the represented class.  *See Sosna*, 419 U.S. at 401-02; *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 754 (1976); *Zablocki v. Redhail*, 434 U.S. 374, 382 n.9 (1978); *Geraghty*, 445 U.S. at 403; *see also Clark v. State Farm Mut. Auto Ins. Co.*, 590 F.3d 1134, 1138-41 (10th Cir. 2009).  Because they say nothing about settlement classes, much less the assignment of claims against third parties to a settlement class, these Supreme Court decisions addressing mootness and standing issues concerning certified litigation classes do not advance the PSC's argument.

The other cases cited by the PSC are equally unhelpful to its argument.  *See* PSC Opp. at 21-22.  For example, *In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997), *McMillon v. Hawaii*, 2011 U.S. Dist. Lexis 17859 (D. Haw. Feb. 22, 2011), and *Veal v. Voyager Prop. & Cas. Ins. Co.*, 2008 U.S. Dist. Lexis 120929 (M.D. Fla. June 20, 2008), are all cases that involved court approvals of settlements entered into by previously certified litigation classes—and so are inapposite to the circumstances of this case.  And although *In re PNC Financial Services Group, Inc.*, 440 F.Supp.2d 421 (W.D. Pa. 2006), involved a partial settlement entered into by a putative class that included assigned claims, the opinion makes clear that it approved a settlement-only class with certain claims assigned to the class members, and there is nothing in

the opinion indicating that the court's approval of the settlement class also approves or certifies a litigation class to pursue the assigned claims.[3]

In sum, the PSC has not identified a single case in which the assignment of claims to a settlement-only class simultaneously converted it into a litigation class authorized to sue a non-party to the settlement without the need for further class certification proceedings. Indeed, it would be extraordinary to allow a class certified for the particular purpose of resolving claims against BP to turn around and sue Transocean without any Rule 23 proceeding regarding the suitability of a litigation class and without any right to participation in that proceeding by Transocean. The settlement class simply is not authorized to pursue any of the assigned claims against Transocean.

## II.    The Economic Class Is Also Substantively Barred from Asserting BP's Contribution Claims

In its Assigned Claims Motion, Transocean described four additional reasons that the Economic Class cannot validly assert BP's Contribution Claims: (1) BP's failure to obtain a full

---

[3] Although it involves a more complex case history, *In re Austrian and German Bank Holocaust*, 317 F.3d 91 (2d Cir. 2003), also does not advance the PSC's argument. That case concerned the unique litigation connected to the creation of a multi-billion dollar fund by the German government to compensate certain victims of the Holocaust. A number of class action complaints were filed in the late 1990s against German and Austrian banks for their conduct between 1929-1946, specifically the unlawful appropriation and conversion of plaintiffs' assets and labor as part of the Nazi program of Aryanization. These were consolidated in federal court in New York, and a consolidated class action complaint was filed. Significantly, a litigation class was never certified. *Id*. at 92-93 n.2. A settlement was ultimately reached with the Austrian banks, which provided that, in addition to a monetary payment, the Austrian banks would assign their claims against the German banks to the settlement class members. The court approved the settlement class, and the attorneys for the class then became involved in negotiations that included the U.S. government and the German government, and that resulted in a compact that established the multi-billion dollar fund to compensate victims of the actions of the German banks during the Nazi era. Again, notably, the fund was not a court-ordered trust, but rather an entity ultimately created by the German government. Thus, as the Second Circuit explained: "the [class action] began, procedurally at least, as a traditional Rule 23 lawsuit against the German banks. It ended, however, with a voluntary dismissal sought to enhance the prospects for implementing an extraordinary extra-judicial remedy of historic proportions…" *Id*. at 100. Simply put, there was never a certified litigation class in these Holocaust cases, nor was the settlement class approved regarding the Austrian bank claims ever treated by any court as a certified "litigation class" for the purpose of pursuing the assigned claims against the German banks.

release of all claims brought by the PSC against Transocean negates its contribution claims and invalidates the assignment of those claims; (2) because BP's settlement payments to the PSC include punitive components and voluntary payments, such payments are not an appropriate measure of compensatory damages and the PSC therefore cannot assert contribution claims based on such payments; (3) the Economic Class should not be permitted to assert contribution claims based on a settlement that purports to deprive Transocean of substantive legal arguments; and (4) assertion of BP's Contribution Claims by the Economic Settlement Class is barred by the equitable rule against double recovery. Mot. at 10-25. To the extent the PSC and BP attempt to address these arguments, they fail to provide any legitimate reason for the Court to allow the Economic Class to pursue BP's Contribution Claims.

### A.    The Economic Class Cannot Assert BP's Contribution Claims Because BP Did Not Obtain a Full Release of All the PSC's Claims Against Transocean

In its opening brief, Transocean demonstrated that the Economic Class cannot assert BP's contribution claims because BP did not obtain a full release of all claims brought by the PSC against Transocean. Mot. at 10-14. The PSC does not address this argument, but BP has asserted that OPA does not require a full release, and that recognizing such a release requirement would improperly add language to the statute. *See* Rec. Doc. 10203 at 8-10.

BP is wrong. To begin with, as set forth in Transocean's motion for partial judgment on claims based on subsurface discharge, Rec. Doc. 8106, BP and Transocean are not joint tortfeasors under OPA; rather, Congress divided liability between BP as well operator and Transocean as MODU owner, assigning liability for subsurface discharge to BP and liability for above surface discharge to Transocean. Nevertheless, assuming *arguendo* that Transocean and BP could be considered joint tortfeasors and BP had a basis to seek contribution against

Transocean for oil pollution damages caused by subsurface discharge,[4] the lack of a complete release prevents those claims from being pursued.

The Supreme Court has repeatedly held that when Congress uses a term with a common-law meaning, without indicating the meaning is changed, courts should follow the common-law understanding of the term. *See, e.g., Morissette v. United States*, 342 U.S. 246, 263 (1952) (noting that when Congress uses language with a settled meaning at common law, Congress "presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them"); *United States v. Atl. Res. Corp.*, 551 U.S. 128, 138 (2007) (explaining that "[c]ontribution is defined as the 'tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault'" and that nothing in CERCLA indicated Congress had used the term in "anything other than the traditional sense" (citing BLACK'S LAW DICTIONARY 353 (8th ed. 2004)). Nothing Congress said in OPA suggests that it intended to abandon the common-law requirement that a joint-tortfeasor obtain a complete release before seeking contribution from another joint-tortfeasor.[5]

---

[4] Of course, these claims are also subject to indemnity under the Court's prior ruling. Rec. Doc. 5446.

[5] BP has also pointed to two other OPA provisions, 33 U.S.C. § 2717(f)(3)(B) and 33 U.S.C. § 2705(a), in an attempt to demonstrate that Congress intended to disavow the common-law full-release requirement under section 2709. Rec. Doc. 10203 at 8-9. But neither provision does anything of the sort. The first, section 2717(f)(3)(B), is nothing more than a statute of limitations. It requires that contribution actions be brought within three years of a judicially approved settlement. It has nothing to say (positive or negative) about the full-release rule. BP insists that the absence of a requirement that the full-release rule remains in force for section 2709 means that it has been cast aside by Congress. But the Supreme Court's rule is just the opposite—if Congress does not expressly say so, the common law continues. *Morissette*, 342 U.S. at 263.

   Similarly, section 2705(a) concerning interim, short-term damages does not, by its terms, preclude application of the full-release rule. The fact that a defendant cannot seek contribution for

8

### B.   The Contribution Claims Seek an Impermissible Double Recovery

The PSC does not seriously contest that allowing the Economic Class to recover on BP's claims for contribution for payments made to Economic Class members would result in a windfall double recovery for class members.  They would collect once, in full, from BP, and then collect some percentage of that recovery *again* from Transocean.  Instead, the PSC suggests the Court need not be concerned about this issue because the PSC is primarily interested in BP's Direct Damages Claims (which are addressed in Transocean's separate motion for partial summary judgment) or that, to the extent BP's Contribution Claims could be asserted to obtain a double recovery, "the appropriate remedy would not be to invalidate the assignment, but to wait until the end of the litigation and apply a set-off."  PSC Opp. at 8-9.

But these assertions simply fail to engage the arguments made in Transocean's Assigned Claims Motion.  The law is clear that double recovery "is ordinarily against legal policy." *Marcus, Stowell & Beye Gov't Secs., Inc. v. Jefferson Inv. Corp.*, 797 F.2d 227, 233 (5th Cir. 1986).  It is no answer to say that a double recovery is not a concern because the Contribution Claims are not the "primary" claims to be asserted by the Economic Class.  Nor does it make sense to allow the Contribution Claims to proceed and then attempt to apply a "set-off" at the end of the litigation.  The Economic Class has already acknowledged the settlement payments will result in "full, complete, and total satisfaction" of their compensatory damages claims against Transocean.  To avoid double recovery, any "set off" would have to be 100% of the claim.

---

interim, short-term damages from a non-settling defendant until it has obtained a full release just means that defendants cannot obtain piece-meal contribution.  That result is fully consistent with the full-release rule, and its application here is fully consistent with the common-law requirements for contribution.

### C. Allowing Contribution Claims Based on the Settlement Payments Violates Transocean's Substantive Rights and Right to Present a Defense

Finally, the PSC's suggestion that Transocean's right to defend itself is "in no way prejudiced by the assignment" of the Contribution Claims also cannot withstand scrutiny. PSC Opp. at 2. As the Supreme Court has admonished, the Rules Enabling Act "forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" *Wal-Mart*, 131 S. Ct. at 2561 (quoting 28 U.S.C. § 2072(b)). Transocean has due-process rights that cannot be compromised by BP's settlement decisions, including the right to litigate the actual value of any damages (not being forced to pay contribution based on settlement payments that include a multiplier to account for punitive damages) and the right to raise defenses, like causation, statute of limitations, and presentment, that are expressly waived in the settlement agreement. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1443 (2010) (plurality op.) ("A class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits. And like traditional joinder, it leaves the parties' legal rights and duties intact and the rules of decision unchanged."). The Court should reject the PSC's invitation to ignore those rights.

## CONCLUSION

The Court should grant partial judgment on the pleadings in favor of Transocean on all of the Assigned Claims. Alternatively, this Court should grant partial judgment in Transocean's favor on the Contribution Claims assigned by BP to the Economic Class.

DATED:  May 31, 2013

By: /s/ Brad D. Brian
Brad D. Brian
Michael R. Doyen
Lisa Demsky
Daniel B. Levin
Susan E. Nash
MUNGER TOLLES & OLSON LLP
355 So. Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel:  (213) 683-9100
Fax:  (213) 683-5180
Email:  brad.brian@mto.com
        michael.doyen@mto.com
        lisa.demsky@mto.com
        daniel.levin@mto.com
        susan.nash@mto.com


By:  /s/ Edwin G. Preis
Edwin G. Preis, Jr.
PREIS & ROY PLC
Versailles Blvd., Suite 400
Lafayette, LA 70501
(337) 237-6062
        and
601 Poydras Street, Suite 1700
New Orleans, LA 70130
(504) 581-6062

Respectfully submitted,

By: /s/ Steven L. Roberts
Steven L. Roberts
Rachel Giesber Clingman
Sean Jordan
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Tel:  (713) 470-6100
Fax:  (713) 354-1301
Email:  steven.roberts@sutherland.com
        rachel.clingman@sutherland.com
        sean.jordan@sutherland.com

By: /s/ Kerry J. Miller
Kerry J. Miller
FRILOT, LLC
110 Poydras St., Suite 3700
New Orleans, LA 70163
Tel:  (504) 599-8194
Fax:  (504) 599-8154
Email: kmiller@frilot.com

John M. Elsley
ROYSTON, RAYZOR, VICKERY & WILLIAMS
LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
(713) 224-8380

*Counsel for Defendants Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of May 2013, I electronically filed the foregoing with the Court's CM/ECF system and/or by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

s/ Kerry J. Miller