# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179 |
| | SECTION J |
| This document applies to: *All Cases* | JUDGE BARBIER |
| | MAGISTRATE JUDGE SHUSHAN |

## TRANSOCEAN'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AS TO PUNITIVE DAMAGES CLAIMS

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

    I.    Plaintiffs' Release of Their Compensatory Damages Claims Against Transocean Precludes an Award of Punitive Damages ......................................... 2

    II.   Any Punitive Damages Award Would Require, as a Predicate, Individualized Determinations of Each Plaintiff's Compensatory Damages ......... 7

    III.  The Court Can Properly Adjudicate This Motion Now ......................................... 9

CONCLUSION ................................................................................................................... 10

CERTIFICATE OF SERVICE ................................................................................................. 11

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Abner v. Kansas City S. R.R. Co.*,
   513 F.3d 154 (5th Cir. 2008) ................................................................. 2

*C&H Nationwide, Inc. v. Norwest Bank Texas*,
   208 F.3d 490 (5th Cir. 2000) ................................................................. 4

*Choice Inc. of Texas v. Greenstein*,
   691 F.3d 710 (5th Cir. 2012) ............................................................... 10

*Copper Tire & Rubber Co. v. Farese*,
   2008 WL 5188233 (N.D. Miss. Dec. 9, 2008) ................................... 10

*Dusenbery v. United States*,
   534 U.S. 161 (2002) ............................................................................. 7

*Exxon Shipping v. Baker*,
   554 U.S. 471 (2008) ................................................................. 4, 7, 8, 9

*First Nat'l Bank of Louisville v. Lustig*,
   1993 WL 411126 (E.D. La. Oct. 5, 1993) .......................................... 10

*Hanna v. Maxwell*,
   415 Fed. Appx. 533 (5th Cir. 2011) ................................................... 10

*In re Fibreboard Corp.*,
   893 F.2d 706 (5th Cir. 1990) ................................................................. 9

*In re Lloyd's Leasing Ltd. v. Bates*,
   902 F.2d 368 (5th Cir. 1990) ................................................................. 8

*La. ACORN Fair Housing v. LeBlanc*,
   211 F.3d 298 (5th Cir. 2000) ................................................................. 3

*Lanier v. Sallas*,
   777 F.2d 321 (5th Cir. 1985) ................................................................. 2

*Mendez v. County of San Bernardino*,
   540 F.3d 1109 (9th Cir. 2008) ............................................................... 3

*Mullins v. TestAmerica, Inc.*,
   564 F.3d 386 (5th Cir. 2009) ................................................................. 2

ii

## TABLE OF AUTHORITIES
### (continued)

Page

*Neal v. Barisich, Inc.*,
    707 F. Supp. 862 (E.D. La. 1989) ........................................................................... 3

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
    833 F.2d 583 (5th Cir.1987) ................................................................................. 10

*Parr v. Nolty J. Theriot, Inc.*,
    1990 WL 66380 (E.D. La. May 16, 1990) ............................................................... 3

*Richard v. City of Harahan*,
    6 F. Supp. 2d 565 (E.D. La. 1998) .......................................................................... 3

*Sierra Club v. Glickman*,
    156 F.3d 606 (5th Cir. 1998) .................................................................................. 4

*Virgilio v. City of New York*,
    407 F.3d 105 (2d Cir. 2005) ............................................................................... 5, 6

STATE CASES

*Burns v. Milwaukee Mut. Ins. Co.*,
    360 N.W.2d 61 (Wis. App. 1984) ........................................................................... 4

*Howell-Demarest v. State Farm Mut. Auto. Ins. Co.*,
    673 So.2d 526 (Fla. Dist. Ct. App. 1996) ............................................................... 4

*Rocanova v. Equitable Life Assurance Soc'y of U.S.*, ........................................... 6
    83 N.Y.2d 603

*S. Gen. Ins. Co. v. Holt*,
    416 S.E.2d 274 (Ga. 1992) ...................................................................................... 5

*Stephenson v. Collins*,
    216 So.2d 433 (Fla. 1968) ....................................................................................... 4

*Thrall Car Mfg. Co. v. Lindquist*,
    495 N.E.2d 1132 (Ill. App. Ct. 1986) ..................................................................... 5

*Wussow v. Commercial Mechanisms, Inc.*,
    97 Wis. 2d 136 (1980) ............................................................................................. 4

STATUTES AND RULES

42 U.S.C. § 1981 ............................................................................................................. 2

## TABLE OF AUTHORITIES
### (continued)

                                                                                    **Page**

Title VII of the Civil Rights Act of 1964.....................................................................2

**TREATISES**

Prosser & Keaton on Torts (5th ed. 1984) ................................................................. 2

## INTRODUCTION

When they accepted and asked this Court to confirm their settlements with BP, Plaintiffs expressly agreed that they were being fully compensated for their actual injuries, thereby extinguishing any claim they might otherwise have had for compensatory damages against Transocean.  In so doing, the settling Plaintiffs also extinguished any punitive damages claim against Transocean, because the recovery of compensatory damages against a defendant is an established prerequisite to recovering punitive damages from that defendant.  Plaintiffs' attempts to pursue stand-alone punitive damages claims against Transocean should be rejected.

Plaintiffs suggest that their punitive damages claims may proceed because their right to compensatory damages from Transocean could still be adjudicated.  This ignores the fact that *recovery* of compensatory damages from a defendant is required as a predicate for a punitive damages claim.  In addition, this would require hypothetical trials as to the fact and amount of compensatory damages for which the Plaintiffs have already been fully compensated.  Courts are not in the business of trying claims that parties have rendered moot, nor would such trials comport with Article III's "case or controversy" requirement.  And even assuming the Court were prepared to conduct such trials, Plaintiffs are wrong to assume that their (hypothetical) compensatory damages could be established through expert testimony or some other aggregate proof.  This is not a class action—in fact, class actions are not permitted in  limitation actions— and Transocean has a due process right to be heard as to both the fact and amount of any individual Plaintiff's claimed compensatory damages.  Thus, compensatory damages would have to be adjudicated separately for each of the tens of thousands of claimants seeking punitive damages against Transocean.

The Court should grant partial judgment in favor of Transocean—and may properly do so now—on all claims of punitive damages by members of the BP-PSC settlement classes.

**ARGUMENT**

I.      **Plaintiffs' Release of Their Compensatory Damages Claims Against Transocean
Precludes an Award of Punitive Damages**

Plaintiffs do not dispute that, in order to seek punitive damages from Transocean, they
first must both plead and prove a claim for compensatory damages caused by Transocean's
conduct.   Plaintiffs expressly acknowledge that "a plaintiff must have sustained actual or
compensatory damages caused by the conduct of the defendant from whom punitive damages are
sought, and have a cause of action to recover said damages."  Rec. Doc. 10186 ("PSC Opp.") at
14.   Plaintiffs likewise acknowledge that "under Texas law, punitive damages are limited to
cases where 'actual compensatory damages are found.'"  *Id.* at 12 n.25 (quoting *Lanier v. Sallas*,
777 F.2d 321, 325 (5th Cir. 1985).)

These admissions render irrelevant Plaintiffs' suggestion, relegated to a footnote, that
"there is a substantial body of law allowing punitive damages when there are no, or only
nominal, actual damages that can be shown," and that this is a "'view very much to be
preferred.'"  *Id.* at 15 n.28 (quoting Prosser & Keaton on Torts (5th ed. 1984) p. 14).  Whether or
not that is true (and constitutionally permissible) under the decisions of the other Circuits and
other states on which Plaintiffs rely (PSC Opp. at 15 n.28), the rule in this Circuit is to the
contrary.  *See Lanier*, 777 F.2d at 325; *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 417 (5th Cir.
2009) (reversing a punitive damage award "because no actual damages result[ed] from
[defendant's] alleged misrepresentation . . .  were requested or awarded").  The only Fifth Circuit
case Plaintiffs cite, *Abner v. Kansas City S. R.R. Co.*, 513 F.3d 154, 160 (5th Cir. 2008), is not to
the contrary.  That case was brought under Title VII of the Civil Rights Act of 1964 and 42
U.S.C. § 1981, a context in which courts have recognized "that punitive damages should remain
available . . . even in the absence of a compensable injury," since "in such situations punitive

damages may be the only significant remedy available." *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1122 (9th Cir. 2008) (internal quotations omitted).  *See also La. ACORN Fair Housing v. LeBlanc*, 211 F.3d 298, 303 (5th Cir. 2000) ("our circuit has adhered to the general rule that a punitive award may stand in the absence of actual damages" only in Civil Rights cases involving "a constitutional violation").

In fact, Plaintiffs' concession that they must prove compensatory damages before they can pursue a punitive damages does not go far enough.  The courts in this Circuit have repeatedly held that, to recover punitive damages, a plaintiff must not just plead and prove compensatory damages, but actually *recover* them.  *See Richard v. City of Harahan*, 6 F. Supp. 2d 565, 576 (E.D. La. 1998) ("recovery of punitive damages must necessarily turn on the *recovery* of compensatory damages") (emphasis added); *Parr v. Nolty J. Theriot, Inc.*, No. 89-3295, 1990 WL 66380, at *3 (E.D. La. May 16, 1990) (one of the "traditional limits on the right to recover punitive damages" under general maritime law is that "the plaintiff may not recover punitive damages absent a *recovery* for compensatory damages") (emphasis added); *Neal v. Barisich, Inc.*, 707 F. Supp. 862, 873 (E.D. La. 1989) ("[I]t is generally held that punitive damages are not recoverable unless the plaintiff *recovers* for actual damages as well.") (emphasis added).

Plaintiffs incorrectly assume that they can pursue punitive damages because, at trial, they "will be able to establish substantial actual damages" attributable to Transocean's conduct.  PSC Opp. at 15 n.28.  But this ignores the fact that Plaintiffs are barred by the Settlement Agreement from asserting any claim against Transocean for compensatory damages, meaning that they cannot obtain any "recovery" of such damages from Transocean as required in this Circuit.

There are strong reasons in policy and judicial economy to limit awards of punitive damages to cases in which plaintiffs *recover* compensatory damages.  Plaintiffs assume it would

be proper for this Court to conduct a trial as to the fact and amount of compensatory damages claims that Plaintiffs can never recover. Yet the law is well settled that courts are not in the business of deciding such moot questions, in which "the parties lack a legally cognizable interest in the outcome." *Sierra Club v. Glickman*, 156 F.3d 606, 619 (5th Cir. 1998). Indeed, trial of such moot claims would raise Article III concerns. *See* C&H Nationwide, Inc. v. Norwest Bank *Texas*, 208 F.3d 490, 493 (5th Cir. 2000) ("The 'case or controversy' requirement of Article III of the Constitution prohibits federal courts from considering questions that 'cannot affect the rights of the litigants in the case before them.'").

Plaintiffs seek to escape this result by arguing that a claim for punitive damages against a defendant may be reserved when settling a claim for compensatory damages against that party. PSC Opp. at 13. The only federal authorities cited in support of this argument are *Exxon Shipping v. Baker*, 554 U.S. 471, 515 (2008), which does not even discuss the issue and an unpublished Ninth Circuit case not properly cited in this Circuit (*Sea Hawk*). Plaintiffs also cite Wisconsin and Florida state court cases that are both not controlling here and inapposite. In *Wussow v. Commercial Mechanisms, Inc.*, 97 Wis. 2d 136 (1980),[1] *Stephenson v. Collins*, 216 So.2d 433 (Fla. 1968), and *Howell-Demarest v. State Farm Mut. Auto. Ins. Co.*, 673 So.2d 526 (Fla. Dist. Ct. App. 1996), the courts permitted plaintiffs to pursue claims for punitive damages as against *the same defendants* with which plaintiffs had settled their compensatory damages claims. Thus, plaintiffs had in fact "recovered" compensatory damages from the *same defendants*, as required in this Circuit as a predicate to the recovery of punitive damages. *See, e.g.*, *Wussow*, 97 Wis.2d at 151 ("It is both rational and consistent with the common law to allow

---

[1] *Burns v. Milwaukee Mut. Ins. Co.*, 360 N.W.2d 61, 65 n.4 (Wis. App. 1984), also cited in the PSC brief, merely affirms *Wussow* in dicta.

4

punitive damages in this case, where actual damages were sustained and compensatory payment was made.").

In the factual scenario that *is* presented here—in which Plaintiffs have recovered the full amount of their damages from one defendant and nonetheless seeks to recover punitive damages from *another* defendant—the case law does not permit a punitive damages claim.  As the Illinois Court of Appeal has held:  "Plaintiff was fully compensated for its actual damages [by one defendant] and no others are alleged; the claims against [the remaining defendants] are thus only for punitive damages and cannot stand."  *Thrall Car Mfg. Co. v. Lindquist,* 495 N.E.2d 1132, 1136 (Ill. App. Ct. 1986); *see also Virgilio v. City of New York*, 407 F.3d 105, 117-18 (2d Cir. 2005) (under New York law, "once the [plaintiff's] compensatory claim was satisfied" via participation in compensation fund, "the parasitic claim for punitive damages was also extinguished"); *S. Gen. Ins. Co. v. Holt*, 416 S.E.2d 274, 276-77 (Ga. 1992) (assignor of claim could not recover punitive damages from defendant even though assignee of claim succeeded in recovering compensatory damages on the assigned claim).

Plaintiffs' brief ignores *Southern General* and attempts, unsuccessfully, to distinguish *Thrall* and *Virgilio.  Thrall*, Plaintiffs argue, is inapposite because "the Court of Appeal held that plaintiff had no cause of action under Illinois law against the remaining defendant and therefore . . . could not pursue punitive damages."  PSC Opp. at 17.  This is demonstrably wrong.  In addition to holding that the plaintiff's claims against the non-settling defendants failed as a matter of law, the Court independently held that these same counts "were *also* properly dismissed" because plaintiff "was fully compensated for its actual damages," such that its claims against the other defendants "are thus only for punitive damages and cannot stand."  *Thrall, 495 N.E.2d at 1136* (emphasis added).  The same is true here.

Plaintiffs seek to distinguish *Virgilio* on the ground that there was a "statutorily imposed waiver" of compensatory damages by plaintiffs who agreed to participate in a statutory compensation fund.  PSC Opp. at 17.  But *Virgilio* held that "the statutorily imposed waiver—set out in the acknowledgment each plaintiff signed when they filed their Fund claim—is the functional equivalent of [a] satisfaction and release"—precisely the circumstance present here. 407 F.3d at 117.  Indeed, the Second Circuit analogized the statutory waiver to the release discussed in a New York case, *Rocanova,* that is directly on point.  As summarized in *Virgilio*:

> In *Rocanova,* … Plaintiff alleged four causes of action based on "unfair claim settlement practices" by the defendant insurance company.  Plaintiff entered into a settlement that released defendant from "all debts, claims, demands, damages, actions and causes of action" related to the facts at issue in the case.  The court held that where the cause of action for compensatory damages that served as the predicate for punitive damages was barred by a release, no claim for punitive damages would lie.  The court was clear: "in light of our conclusion that the release bars [plaintiff's] remaining causes of action, [plaintiff] cannot recover punitive damages since [plaintiff] is unable to assert an underlying cause of action upon which a demand for punitive damages can be grounded. A demand or request for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action."

407 F.3d at 117 (citations omitted; bracketed words added by Second Circuit) (discussing *Rocanova v. Equitable Life Assurance Soc'y of U.S.*, 83 N.Y.2d 603, 616 (1994)).  This ruling applies with equal force here.

Contrary to the State of Alabama's contention, such a ruling would not chill future settlement discussions with BP or settlements in future cases.  *See* Rec. Doc. 10205 at 5-6. Future plaintiffs are unlikely to walk away from settlements with an indemnifying defendant who insists that plaintiffs give up claims against the indemnified party, merely because such a settlement bars claims for punitive damages against the latter.  Such a scenario will not frequently arise, and in the relatively rare cases in which it does, the impact on a plaintiff's claim for punitive damages would merely be another factor for the parties to weigh in valuing the

settlement.  In fact, nothing in the voluminous briefing submitted by BP and the PSC in support of the settlement agreements suggested that the "reserved" punitive damages were a major factor in the settlements' value.  Even if some plaintiffs might reject a settlement because it requires them to surrender punitive damages against indemnified parties, that result is far more speculative, and far less significant in impact, than the immediate prospect of this Court having to adjudicate both the fact and amount of compensatory damages claimed by tens of thousands of individual claimants who have given up their right to recover such damages.  The policy favoring settlement, after all, seeks efficiency and simplicity; the rule advocated by Alabama would do the opposite by mandating an immensely complex trial of hypothetical claims.

## II.     Any Punitive Damages Award Would Require, as a Predicate, Individualized Determinations of Each Plaintiff's Compensatory Damages

Transocean's opening memorandum made two points that Plaintiffs do not and cannot dispute.  First, assuming for argument's sake that Plaintiffs can sue Transocean for punitive damages, even though they cannot recover compensatory damages, the amount of any punitive damages here is limited to a "1:1 ratio" between punitive and actual damages.  *Exxon Shipping*, 554 U.S. at 513.  Second, the Due Process Clause mandates that the amount of those actual damages must be determined through a trial at which Transocean has a full and fair opportunity to participate, and therefore the amount of compensation paid by BP to Plaintiffs in settlement cannot be adopted as the measure of Plaintiffs' compensatory damages.  *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (Due Process Clause mandates that "individuals whose property interests are at stake are entitled to notice and an opportunity to be heard" (internal quotation marks omitted)) .

As Plaintiffs concede, it would be necessary before awarding any punitive damages to "establish[] what the 'compensatory' elements of damages are."  PSC Opp. at 19.  Plaintiffs

gloss over the enormous procedural complexities that flow from this concession. They casually assert that "[t]o the extent that an individual plaintiff's harm might be relevant to the punitive damage award, the plaintiff could establish the amount of damages that he or she sustained as a result of the spill, just like any plaintiff would in any ordinary case." PSC Opp. at 20. But each individual plaintiff's harm is not merely "*relevant* to the punitive damage award," the quantification of such harm is *essential*: only by determining the amount of each plaintiff's compensatory damages can the Court ensure that any punitive damages award does not exceed the Supreme-Court mandated 1:1 ratio in maritime law. And the determination of such harm must be made in a proceeding at which Transocean's due process rights are protected.

Plaintiffs suggest this determination could be made on an aggregate basis through "expert testimony or other means," PSC Opp. at 20, but this suggestion ignores (1) that no class has been certified; (2) Fifth Circuit law prohibits class claims in a limitation proceeding, *In re Lloyd's Leasing Ltd. v. Bates*, 902 F.2d 368, 370 (5th Cir. 1990); and (3) the causation and damages issues are inherently individualized and cannot receive class treatment in any event.

Thus, any award of punitive damages to any individual claimant would have to be preceded by an individualized determination—based on admissible evidence at a trial in which Transocean has a full and fair opportunity to be heard—of the quantum of *that individual plaintiff's* compensatory damage. Plaintiffs cite no authority to the contrary. The only decision they cite, *Exxon Shipping*, is inapposite. There the District Court had "certified a mandatory class of all plaintiffs seeking punitive damages," 554 U.S. at 479, so that the Supreme Court had no occasion to consider how to adjudicate compensatory damages sustained by a group of plaintiffs that are *not* part of a certified class. Moreover, the amount of compensatory damages was established through settlement payments made *by Exxon* without requiring a release and

through a trial *against Exxon* in which plaintiffs proved a right to recover additional compensatory damages.  *See* 554 U.S. at 480-81.  Exxon, the party held liable for punitive damages, had been a party to genuine proceedings that determined an actual right to recover compensatory damages from Exxon.

To the extent any Plaintiffs have any right to pursue punitive damages claims against Transocean, those claims would require individual determinations of the quantum of harm suffered by each Plaintiff.  *See In re Fibreboard Corp.*, 893 F.2d 706, 709-12 (5th Cir. 1990) (granting writ of mandamus and vacating trial plan that called for compensatory damages claims in 3,031 consolidated asbestos cases to be tried based on a sample of representative cases).

## III.   The Court Can Properly Adjudicate This Motion Now

BP contends that this motion is not ripe because of (i) the pendency of appeals from the court's approval of the Economic Settlement and (ii) this Court's anticipated findings from the Phase I trial.  The timing of a ruling, however, is committed to the Court's sound discretion.

**The Phase I Proceedings:**  Transocean agrees with BP on two points:  (i) that the Court can and should find that Transocean was not grossly negligent, and (ii) that such a ruling would moot the present motion.  If the Court intends to issue its Phase I rulings in the near term, Transocean would agree that judicial economy supports deferring a ruling on this motion.  Sound judicial administration, however, counsels in favor of ruling on this motion before any Phase III damages discovery commences, because a ruling could significantly affect the scope of such discovery, including whether it is necessary to take discovery as to individual causation and damages for members of the Economic Class.

**The Pending Appeals:**  These same considerations demonstrate that it would be unwise to defer a ruling on this motion, pending the outcome of the objectors' appeals from the Economic Settlement.  Phase III discovery is likely to commence this year.  To avoid the

extraordinary delays and costs associates with Phase III damages discovery that could turn out to be wholly unnecessary, the Court should decide this motion before Phase III damages discovery commences, unless this motion is mooted by the Court's Phase I rulings.

BP errs in contending the motion is unripe because Transocean has not shown that hardship would result in the absence of a ruling.  First, when Phase III discovery commences, Transocean (and other parties) will incur substantial time and legal costs for potentially irrelevant discovery—the result threatened by a delay in determining this motion—which would constitute a significant hardship.  But in any event, BP is simply wrong on the law.  The principal case on which BP relies, *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710 (5th Cir. 2012), itself recognizes that "[a] case is generally ripe if any remaining questions are purely legal ones"—as is the case here.  *Id.* at 715 (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 587 (5th Cir.1987)).  BP's other cases actually demonstrate that this motion *is* ripe.  *Hanna v. Maxwell*, 415 Fed. Appx. 533, 535-37 (5th Cir. 2011), *Copper Tire & Rubber Co. v. Farese*, No. 3:02CV210-SA-JAD, 2008 WL 5188233, at *4 (N.D. Miss. Dec. 9, 2008), and *First Nat'l Bank of Louisville v. Lustig*, Civ. A. No. 87-5488, 1993 WL 411126, at *2 (E.D. La. Oct. 5, 1993), all hold that it is premature to decide punitive damages before actual damages are shown—a proposition fully consistent with this motion, which seeks a determination that punitive damages should *never* be adjudicated because a right to actual damages from Transocean can *never* be shown.

## CONCLUSION

This Court should grant partial judgment in favor of Transocean on all punitive damages claims by settling class members.

DATED: May 31, 2013

By: /s/ Brad D. Brian
Brad D. Brian
Michael R. Doyen
Lisa Demsky
Daniel B. Levin
Susan E. Nash
MUNGER TOLLES & OLSON LLP
355 So. Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel:  (213) 683-9100
Fax:  (213) 683-5180
Email:  brad.brian@mto.com
        michael.doyen@mto.com
        lisa.demsky@mto.com
        daniel.levin@mto.com
        susan.nash@mto.com


By:  /s/ Edwin G. Preis
Edwin G. Preis, Jr.
PREIS & ROY PLC
Versailles Blvd., Suite 400
Lafayette, LA 70501
(337) 237-6062
        and
601 Poydras Street, Suite 1700
New Orleans, LA 70130
(504) 581-6062

Respectfully submitted,

By: /s/ Steven L. Roberts
Steven L. Roberts
Rachel Giesber Clingman
Sean Jordan
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Tel:  (713) 470-6100
Fax:  (713) 354-1301
Email:  steven.roberts@sutherland.com
        rachel.clingman@sutherland.com
        sean.jordan@sutherland.com

By: /s/ Kerry J. Miller
Kerry J. Miller
FRILOT, LLC
110 Poydras St., Suite 3700
New Orleans, LA 70163
Tel:  (504) 599-8194
Fax:  (504) 599-8154
Email: kmiller@frilot.com

John M. Elsley
ROYSTON, RAYZOR, VICKERY & WILLIAMS
LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
(713) 224-8380

*Counsel for Defendants Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of May 2013, I electronically filed the foregoing with the Court's CM/ECF system and/or by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

s/ Kerry J. Miller