# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179 |
| | SECTION J |
| This document applies to: *All Cases* | JUDGE BARBIER |
| | MAGISTRATE JUDGE SHUSHAN |

## TRANSOCEAN'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AS TO CLAIMS BASED ON SUBSURFACE DISCHARGE OF OIL

## TABLE OF CONTENTS

                                                                        **Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

    I.     Because Transocean Is Not Liable For Damages Caused By Subsurface Discharge Under OPA, Transocean Is Not Liable For Compensatory Damages Under General Maritime Law For Subsurface Discharge ..................... 1

    II.    Because Transocean Is Not Liable For Compensatory Damages, It Cannot Be Liable For Punitive Damages ............................................................................ 4

    III.   Because Transocean Is Not Liable For Any Subsurface Discharge Damages, It Cannot Be Liable For Contribution Claims Based On That Discharge ............................................................................................................... 5

    IV.   BP's Improper Attempt to Seek Reconsideration of the Court's February 2012 OPA Ruling Should Be Rejected .................................................................. 9

CONCLUSION ................................................................................................................. 10

CERTIFICATE OF SERVICE .......................................................................................... 11

## TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Atl. Sounding Co. v. Townsend*,
    557 U.S. 404 (2009) ............................................................................................................. 3

*Burlington N. and Santa Fe Ry. Co. v. United States*,
    556 U.S. 599 (2009) ............................................................................................................. 7

*Dolan v. United States Postal Serv.*,
    546 U.S. 481 (2006) ........................................................................................................... 10

*Exxon Shipping Co. v. Baker*,
    554 U.S. 471 (2008) ............................................................................................................. 3

*In re Save Our Springs (S.O.S.) Alliance, Inc.*,
    632 F.3d 168 (5th Cir. 2011) ............................................................................................... 8

*Jones v. Jefferson Parish*,
    2013 WL 871539 (E.D. La. Mar. 8, 2013) .......................................................................... 4

*Lyondell Chem. Co. v. Occidental Chem. Corp.*,
    608 F.3d 284 (5th Cir. 2010) ............................................................................................... 7

*Mid-Valley Pipeline Co. v. S.J. Louis Constr., Inc.*,
    847 F. Supp. 2d 982 (E.D. Ky. 2012) ................................................................................. 6

*Milwaukee v. Illinois*,
    451 U.S. 304 (1981) ............................................................................................................. 2

*Mobil Oil Corp. v. Higginbotham*,
    436 U.S. 618 (1978) ........................................................................................................ 2, 3

*Montauk Oil Transp. Corp. v. Tug "El Zorro Grande,"*
    54 F.3d 111 (2d Cir. 1995) .................................................................................................. 8

*Morgan v. Great S. Dredging Inc.*,
    2013 WL 1881051 (E.D. La. May 3, 2013) ........................................................................ 9

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*,
    924 F. Supp. 1436 (E.D. Va. 1996), aff'd 122 F.3d 1062 (4th Cir. 1997) ...................... 6, 7

*Simeon v. T. Smith & Son, Inc.*,
    852 F.2d 1421 (5th Cir. 1988) ............................................................................................ 6

*Walls Indus., Inc. v. United States*,
    958 F.2d 69 (5th Cir. 1992) ................................................................................................ 6

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Will v. Michigan Dept. of State Police*,
   491 U.S. 58 (1989) ..................................................................................................... 10

**STATUTES AND RULES**

33 U.S.C. § 1365 ................................................................................................................. 3

33 U.S.C. § 2701(32)(A) ..................................................................................................... 4

33 U.S.C. § 2704(a) ....................................................................................................... 4, 7

33 U.S.C. § 2704(b) ................................................................................................. *passim*

33 U.S.C. § 2704(b)(1) ................................................................................................... 6, 7

33 U.S.C. § 2704(c)(1) ................................................................................................ 4, 7, 8

33 U.S.C. § 2709 ........................................................................................................ 5, 6, 8

**INTRODUCTION**

Transocean and BP are both responsible parties under the Oil Pollution Act ("OPA"), but Congress has divided liability for oil spills between MODU owners like Transocean and well operators like BP. The MODU owner is responsible for above surface discharge, and the well owner is responsible for subsurface discharge. This division of liability dictates three things: First, Transocean is not liable for compensatory damages under general maritime law based on subsurface discharge because Congress has spoken directly to the allocation of compensatory damages liability for oil spills and thus displaced any general maritime claim that would conflict with Congress' direction. Second, Transocean cannot be liable for punitive damages based on subsurface discharge because it is not liable for compensatory damages based on that discharge. Third, Transocean is not liable in contribution for damages based on subsurface discharge because to allow such claims would contravene Congress's division of liability for oil spills.

The PSC and BP oppose Transocean's motion, but nothing they say dictates a different result. The PSC makes only cursory arguments (Rec. Doc. 10186 ("PSC Opp.") at 10-11), and BP devotes nearly half of its brief to a *de facto* motion to reconsider this Court's February 2012 ruling on OPA liability on which Transocean's motion relies. The arguments BP advances that are pertinent to the pending motion do not provide any justification for deviating from OPA's text and structure to create additional remedies against Transocean beyond those contemplated in the statute. Transocean's motion should be granted.

**ARGUMENT**

I. **Because Transocean Is Not Liable For Damages Caused By Subsurface Discharge Under OPA, Transocean Is Not Liable For Compensatory Damages Under General Maritime Law For Subsurface Discharge**

Neither BP nor the PSC contests that this Court ruled on February 22, 2012 that under OPA, Transocean is a "responsible party" for the Macondo incident but that Transocean's liability is limited under OPA § 2704(b) to discharges that occur "on or above the surface of the

1

water." *See* Rec. Doc. 5809 at 5-8.  This division of liability in OPA between MODU owners and well owners precludes any claim against Transocean under general maritime law based on the subsurface discharge of oil.

BP and the PSC argue that OPA's limits on liability do not displace general maritime law claims against Transocean for subsurface discharge damages because, in its B1 Order, this Court stated that OPA displaces general maritime law claims against responsible parties "only with regard to procedure."  Rec. Doc. 10211 ("BP Opp.") at 10 (quoting Rec. Doc. 3830 ("B1 Order") at 38); PSC Opp. at 10-11 (same).  However, when it issued the B1 Order, this Court had not yet addressed OPA's division of liability in § 2704(b) and thus had no occasion to rule on whether OPA's express limits on liability displace maritime law claims that would conflict with and undermine OPA's liability limits.  Well-established preemption law, and the Court's reasoning in the B1 Order, demonstrate that such displacement is required.

A federal statute displaces federal common law when the statute speaks directly to an issue.  *E.g. Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978) ("when [Congress] does speak directly to a question, the courts are not free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless."); *Milwaukee v. Illinois*, 451 U.S. 304, 325 (1981) ("[I]nvocation of federal common law . . . in the face of congressional legislation supplanting it is peculiarly inappropriate in areas as complex as water pollution control."); B1 Order at 23-26, 29-30; Rec. Doc. 8106 at 8-9 (collecting cases).  There is no question that OPA § 2704(b) *expressly* speaks to the division of liability between BP as the lessee of the Macondo well and Transocean as owner of the MODU *Deepwater Horizon*.

BP's and the PSC's theory that a plaintiff may seek damages from Transocean for subsurface discharge under general maritime law, despite Congress' express assignment of liability to Transocean for only above-surface discharge, is directly contrary to the Supreme Court's holding in *Mobil Oil Co. v. Higginbotham*, 436 U.S. 618.  In *Higginbotham*, the Court

2

refused to allow a decedent's survivor to recover under general maritime law a category of compensatory damages (loss of society) not recoverable under the Death on the High Seas Act. *Id.* at 625-26.  The court explained: "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted. In the area covered by the statute, it would be no more appropriate to prescribe a different measure of damages than to prescribe a different statute of limitations, or a different class of beneficiaries." *Id.* at 625.  This precedent applies with equal force to OPA: Congress has expressly addressed the scope of Transocean's liability as a MODU owner for compensatory damages; this Court is not free to supplement that liability by permitting claimants to seek "a different measure of damages" than approved by Congress.[1]

BP relies on *Exxon Shipping* to argue that maritime law compensatory damages remain available against Transocean (and presumably, by BP's logic, BP itself).  BP Opp. at 10.  This reliance is misplaced.  *Exxon Shipping* held the Clean Water Act—a penalty statute that provides no cause of action for damages[2]—did not eliminate "*sub silentio*" general maritime claims for compensatory or punitive damages.  *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 488-89 (2008). Exxon conceded that the CWA did not displace compensatory remedies, and the Court rejected the argument that the CWA displaced punitive damages because the statute did not speak to the question and the availability of punitive damages would not "have any frustrating effect on the CWA remedial scheme." *Id.* at 489.  Here, by contrast, Congress has spoken to the issue and expressly provided that a MODU owner is liable for above-surface discharge.  Permitting

---

[1] BP argues that OPA *fully* displaces general maritime law, including claims for punitive damages (BP Opp. at 9-11), and Transocean agrees.  Transocean recognizes, however, that the Court disagreed with that position in the B1 Order.  The Court reached this result, in part, by relying on *Atl. Sounding Co. v. Townsend*, 557 U.S. 404 (2009), but nothing in *Townsend* undermines *Higginbotham*'s conclusion that where Congress has spoken in a statute directly to the availability of damages, additional measures of damages are not available under federal maritime law.  *Townsend*, 557 U.S. at 420.

[2] The CWA permits private actions only in certain limited cases to enforce its penalty provisions.  33 U.S.C. § 1365.

Plaintiffs to pursue general maritime claims against Transocean for subsurface discharge damages would frustrate OPA's scheme.[3]

A simple example highlights why BP and the PSC's position is untenable. The owner of an oil tanker that discharges oil is strictly liable for damages and removal costs under OPA § 2702 up to the liability limits established in § 2704(a), which cap the owner's liability based on vessel tonnage. Those liability limits in § 2704(a) apply unless the discharge was caused by the vessel owner's gross negligence, willful misconduct, or violation of applicable federal regulation. 33 U.S.C. § 2704(c)(1). Under BP's and the PSC's theory, however, that vessel owner could be held liable for uncapped damages under traditional general maritime law plaintiffs based on *ordinary negligence*, even though, under OPA, ordinary negligence is *insufficient* to remove the § 2704(a) liability caps. This result makes no sense and would undermine the basic framework of OPA. The same principle applies equally when the relevant liability limits are those for MODU owners set forth in § 2704(b). Accordingly, judgment should be granted for Transocean on all compensatory damages claims based on subsurface discharge.

## II. Because Transocean Is Not Liable For Compensatory Damages, It Cannot Be Liable For Punitive Damages

As Transocean has explained, a defendant that is not liable for compensatory damages for certain conduct cannot be liable for punitive damages for that same conduct. Rec. Doc. 8106 at 9-11. Neither BP nor the PSC contests this point, and thus both parties have waived any opposition to it. *E.g.*, *Jones v. Jefferson Parish*, No. 12–2191, 2013 WL 871539, at *3 (E.D. La. Mar. 8, 2013) (dismissing claims with prejudice where plaintiff's opposition brief did not

---

[3] The PSC also argues that subsurface discharge claims against Transocean are not displaced by OPA because Transocean is not a responsible party for subsurface discharge damages. PSC Opp. at 11. But this argument makes no sense. Transocean is a responsible party under the statute, *see* 33 U.S.C. § 2701(32)(A) (making Transocean a responsible party based on its ownership of the *Deepwater Horizon*). That Congress has limited a MODU owner's liability for certain claims does not make the MODU owner a "non-responsible party" for those claims.

respond to meritorious defense; "[plaintiff's] failure to brief this issue waives any argument he might have in opposition to it."). BP argues (BP Opp. at 10-11) that Transocean's position on punitive damages fails because Transocean should be liable for compensatory damages for subsurface damages, but BP makes no argument that Transocean could be liable for punitive damages based on subsurface discharge if, as set forth above, it is *not* liable for compensatory damages for that discharge. The PSC likewise acknowledges that punitive damages may only follow from compensatory damages liability for the same conduct, stating that "in order to pursue a punitive damages claim, a plaintiff must have sustained actual or compensatory damages caused by the conduct of the defendant from whom punitive damages are sought, and have a cause of action to recover said damages." PSC Opp. at 14.[4] This Court should therefore grant judgment to Transocean on all claims for punitive damages based on subsurface discharge because Transocean has no compensatory damages liability for subsurface discharge.

The PSC contends that it can pursue punitive damages because Plaintiffs have suffered "a *quantum* of actual compensatory damages." PSC Opp. at 13 (original emphasis). For purposes of this motion, however, the question is not whether Plaintiffs suffered damages but whether Transocean may be held liable for those alleged damages. As set forth above, OPA limits Transocean's liability to damages from oil discharged above the surface and assigns to BP liability for damages arising from subsurface discharge. Because Transocean is not liable for the PSC's alleged compensatory damages arising from subsurface discharge, the PSC has no claim against Transocean for punitive damages arising from subsurface discharge.

### III. Because Transocean Is Not Liable For Any Subsurface Discharge Damages, It Cannot Be Liable For Contribution Claims Based On That Discharge

OPA § 2709 authorizes contribution claims, but the contribution provision does not undo

---

[4] The PSC's arguments regarding the provision in the BP-PSC settlement that all compensatory damages claims against Transocean are fully satisfied is addressed in Transocean's reply in support of its separate motion directed to the purportedly "reserved" punitive damages claims of the settling class members.

5

the division of liability that Congress established in § 2704.  Thus, when courts have examined the interplay between § 2709 and § 2704, they have found that a responsible party cannot collect from a third party in contribution in an amount greater than the OPA liability limit established in § 2704 for that third party.  *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd* 122 F.3d 1062 (4th Cir. 1997); *see also Mid-Valley Pipeline Co. v. S.J. Louis Constr., Inc.*, 847 F. Supp. 2d 982, 992 (E.D. Ky. 2012) (recognizing that allowing contribution claim for amount in excess of § 2704 cap would "negate" a provision of OPA).  BP's argument that it may defeat OPA § 2704(b)'s division of liability between MODU owners and well owners through its contribution claim against Transocean should be rejected.

BP argues that judicial discretion to award contribution "cannot be shut off or prejudged."  BP Opp. at 13-14.  However, contribution requires a "common liability" between defendants; "[i]f one tortfeasor is not liable to the plaintiff . . . it is not liable for contribution." *Walls Indus., Inc. v. United States*, 958 F.2d 69, 71 (5th Cir. 1992) (dismissing action for contribution against defendant that was immune from liability under federal statute); *see also Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1434 (5th Cir. 1988) (same).  But there is no common liability as between BP and Transocean under OPA.  Section 2704(b) assigns Transocean liability for discharge above the surface of the water and assigns BP liability for subsurface discharge.  And although § 2709 allows contribution claims against a party liable under OPA "or another law," that provision is still part of OPA and cannot be read to undo the liability limits  in § 2704.  *See Moran*, 924 F. Supp. at 1449 (finding that even though Moran's liability for contribution arose under "another law" (general maritime law), Moran was still entitled to cap its liability under § 2704).  Indeed, OPA expressly provides that § 2704(b)(1), which assigns MODU owners liability for above surface discharge, applies not only "[f]or purposes of determining the responsible party" but also "[f]or purposes of . . . applying this Act,"

6

including the contribution provision in the Act. 33 U.S.C. § 2704(b)(1).

For the same reason, the CERCLA authorities on which BP relies are inapposite. (*See* BP Opp. at 14 (citing *Burlington N. and Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 616 n.9 (2009); *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 291 & n.16 (5th Cir. 2010)).) As those cases make clear, contribution actions are appropriate between parties that are "*jointly and severally liable*." BP Opp. at 14 (quoting *Burlington*, 556 U.S. at 616 n.9) (emphasis added). But, as explained above, BP and Transocean are *not* jointly and severally liable for subsurface discharge damages.

BP attempts to distinguish *Moran*—a decision that squarely supports Transocean (Rec. Doc. 8106 at 12-13)—by asserting that Transocean may not invoke the liability limit in § 2704(b) because Transocean violated the terms of a Clean Water Act permit. BP Opp. at 4-6, 14. This argument is meritless for two reasons.

First, BP's argument is based on § 2704(c)(1), which provides that "***Subsection (a)*** of this section does not apply if the incident was proximately caused by" the responsible party's gross negligence, willful misconduct, or violation of an applicable regulation. (Emphasis added.) Transocean's liability as a responsible party, however, is dictated by ***subsection (b)*** of section 2704. Section 2704(c)(1) is simply irrelevant to the division of liability between MODU owners and well owners.[5]

Second, even if § 2704(c)(1) were relevant, BP's argument that Transocean violated an NPDES general permit and that violation triggers § 2704(c)(1) is flatly wrong. To begin with, the prohibition on discharge of oil in the NPDES permit BP invokes applies to operators of lease

---

[5] Section 2704(c)(1) is relevant to Transocean only insofar as its liability as a responsible party for above surface discharge under § 2704(b) is subject to the liability caps for tank vessels set forth in § 2704(a). *See* 33 U.S.C. § 2704(b)(1) (a MODU being used as an offshore facility "is deemed to be a tank vessel with respect to the discharge, or substantial threat of discharge, of oil on or above the surface of the water.") If § 2704(c)(1) is triggered, then Transocean would have uncapped liability for *above surface* discharge.

7

blocks (*i.e.*, BP, not Transocean); the only provision applicable to MODU operators deals with cooling water intake.[6]  But even putting that problem aside, BP ignores the more fundamental problem that *BP itself* previously argued: violation of a federal regulation prohibiting discharge from a well into offshore waters cannot remove OPA's liability cap.  Rec. Doc. 5124 [BP's Opposition to U.S.' Second Motion for Partial Summary Judgment] at 11-14 (arguing that violation of regulations requiring casing and cement to "[p]revent the direct or indirect release of fluids from any stratum through the wellbore into offshore waters" could not remove liability caps). This Court *accepted BP's argument* and ruled that a regulation prohibiting discharge of oil "is not the type [of regulation] that would remove OPA's liability cap." Rec. Doc. 5809 at 13.[7] Agreeing with BP and rejecting the United States' position, this Court found that removing the liability caps based on a violation of a regulation generally barring discharge of oil "would tend to write out OPA's requirement that the violation of the regulation be a 'proximate cause' of the incident, as this regulation is essentially coextensive with a regulatory prohibition on oil spills." *Id.*  The Court's prior ruling disposes of BP's about-face argument here.[8]

Finally, BP's reliance on *Montauk Oil Transp. Corp. v. Tug "El Zorro Grande*,*"* 54 F.3d 111 (2d Cir. 1995), is misplaced.  *Montauk* permitted a claim for equitable indemnity of a CWA penalty, but not only is *Montauk* irrelevant to the interplay between OPA § 2709 and § 2704, BP

---

[6] Text of the permit, GMG290000, is available at http://www.epa.gov/region6/water/npdes/genpermit/gmg29000finalpermit2007.pdf.  The applicability of the permit is set forth at page 1-2.  The provision addressed to MODUs applies only to facilities constructed after July 17, 2006, and thus would not apply to the *Deepwater Horizon* in any event.  *Id.* at pp. 22-23.

[7] Explaining why the government's position was wrongheaded, BP asserted that removing the liability caps based on violation of a regulation prohibiting discharge of oil would render the liability caps a dead letter: "In the context of construing OPA Section 2704(c)(1)(B), [the government's position] creates an obvious and untenable tautology—a regulation that is violated whenever a spill occurs is *ipso facto* an improper bootstrap for lifting the applicable OPA liability caps."  Rec. Doc. 5124 at 13.

[8] BP's argument should also be rejected on the independent basis that BP prevailed in persuading the court to adopt its earlier position and is now judicially estopped from altering its position to gain an unfair advantage.  *See, e.g.*, *In re Save Our Springs (S.O.S.) Alliance, Inc.*, 632 F.3d 168, 175 (5th Cir. 2011) (applying judicial estoppel).

8

has previously minimized the importance of *Montauk*'s actual CWA holding when it was seeking to avoid indemnifying Transocean for CWA penalties. Rec. Doc. 4827-1 at 21.

### IV. BP's Improper Attempt to Seek Reconsideration of the Court's February 2012 OPA Ruling Should Be Rejected

BP devotes nearly half its brief and some 600 pages of exhibits to arguing that this Court's February 2012 Order interpreting OPA § 2704(b) was wrong and that Transocean may be held liable for subsurface discharge damages under OPA. *See* BP Opp. at 3-6, 15-25. The Court should reject BP's improper attempt to seek reconsideration of that order.

First, a motion for reconsideration "is not the proper vehicle for rehashing evidence, legal theories, or arguments" and "should not be used . . . to re-urge matters that have already been advanced by a party." *Morgan v. Great S. Dredging Inc.*, No. 11–2461, 2013 WL 1881051, at *4 (E.D. La. May 3, 2013) (internal quotation marks omitted) (refusing reconsideration where arguments already had been advanced and rejected). Where, as here, a party expresses "mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted." *Id.* BP's request that the Court "revisit" its February 2012 Order (BP Opp. at 1) should be rejected outright.

BP's arguments, which rehash the issues it raised and lost in connection with the summary judgment motions in 2012 (*see* Rec. Doc. 5283 at 2-14), are no more persuasive the second time around. BP argues that because § 2702 makes responsible parties liable for damages and § 2703(a) provides a list of complete defenses, Transocean should not be permitted to limit its liability to above surface discharge by relying on § 2704. BP Opp. at 3-4, 15-19. This attempt to trivialize § 2704 has already been advanced (Rec. Doc. 5283 at 3-8) and rejected (Rec. Doc. 5809 at 5-11) and should be rejected again.[9] BP's dismissal of this Court's sound rationale

---

[9] BP's convoluted arguments (BP Opp. at 19-21) that OPA covers threatened discharges and discharge to beaches do not provide any basis for reconsidering the prior ruling. Section 2704(b) also covers both

9

for distinguishing between well operators, like BP, who stand to benefit the most from oil production, and the MODU owners they hire, should likewise be rejected. It is entirely proper to interpret statutes consistent with their purpose. *See, e.g.*, *Dolan v. United States Postal Serv.*, 546 U.S. 481, 486 (2006) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute . . . ."); *see also* BP Opening Br., C.A. No. 13-30239, at 21, 45-52 (urging Fifth Circuit to interpret settlement agreement consistent with its purpose). BP's final discussion of legislative history (BP Opp. at 22-25) is expressly addressed not to any argument in Transocean's pending motion but to an argument raised in Transocean's *January 9, 2012*, summary judgment motion (Rec. Doc. 5103). In any event, the Senate Report to which BP objects, like all legislative history, may properly be relied upon as an interpretative aid. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 68 (1989).

## CONCLUSION

For the foregoing reasons, this Court should grant Transocean's motion for partial judgment on the pleadings as to compensatory, punitive, and contribution damages arising from the subsurface discharge of oil.

DATED: May 31, 2013                                     Respectfully submitted,

By: /s/ Brad D. Brian                                   By: /s/ Steven L. Roberts
Brad D. Brian                                           Steven L. Roberts
Michael R. Doyen                                        Rachel Giesber Clingman
Lisa Demsky                                             Sean Jordan
Daniel B. Levin                                         SUTHERLAND ASBILL & BRENNAN LLP
Susan E. Nash                                           1001 Fannin Street, Suite 3700
MUNGER TOLLES & OLSON LLP                               Houston, Texas 77002
355 So. Grand Avenue, 35th Floor                        Tel:  (713) 470-6100
Los Angeles, CA 90071                                   Fax:  (713) 354-1301
Tel: (213) 683-9100                                     Email: steven.roberts@sutherland.com
Fax: (213) 683-5180                                            rachel.clingman@sutherland.com

---

discharges and threatened discharges, and discharge to shoreline can be determined based on the above-below surface distinction drawn in § 2704(b).

10

Email: brad.brian@mto.com
michael.doyen@mto.com
lisa.demsky@mto.com
daniel.levin@mto.com
susan.nash@mto.com

By: /s/ Edwin G. Preis
Edwin G. Preis, Jr.
PREIS & ROY PLC
Versailles Blvd., Suite 400
Lafayette, LA 70501
(337) 237-6062
    *and*
601 Poydras Street, Suite 1700
New Orleans, LA 70130
(504) 581-6062

sean.jordan@sutherland.com

By: /s/ Kerry J. Miller
Kerry J. Miller
FRILOT, LLC
110 Poydras St., Suite 3700
New Orleans, LA 70163
Tel: (504) 599-8194
Fax: (504) 599-8154
Email: kmiller@frilot.com

John M. Elsley
ROYSTON, RAYZOR, VICKERY & WILLIAMS LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
(713) 224-8380

*Counsel for Defendants Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH.*

## CERTIFICATE OF SERVICE

    I hereby certify that on this 31st day of May 2013, I electronically filed the foregoing with the Court's CM/ECF system and/or by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

                                      s/ Kerry J. Miller