# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179<br><br>SECTION: J |
| This Document Relates to: 12-00311 | Judge Barbier<br>Mag. Judge Shushan |

## REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY)

TO THE APPROPRIATE AUTHORITY IN BERMUDA:

The United States District Court for the Eastern District of Louisiana presents its compliments to the Bermuda Supreme Court and requests judicial assistance to compel the attendance of witnesses at an oral deposition and the production of documents to be used as admissible evidence at trial in a civil proceeding before this Court in the above-captioned matter. This Court requests the assistance described herein as necessary in the interests of justice.

## I.   SUMMARY OF ACTION

Cameron filed this action on January 30, 2012 in the United States District Court for the Eastern District of Louisiana against Liberty Insurance Underwriters Inc. ("Liberty"). Cameron's Amended Complaint, dated April 19, 2012, alleges that Liberty disregarded its obligations to provide insurance to Cameron in connection with losses arising from the April 20, 2010 Deepwater Horizon explosion and resulting oil spill in the Gulf of Mexico (the "Deepwater Horizon Incident").  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

According to its Amended Complaint, Cameron supplies equipment, systems, and services to worldwide oil, gas, and process industries.  Among other things, Cameron works with drilling contractors and other process owners to control, adjust, measure, and compress oil and

gas pressures and flows.  Cameron manufactured the blowout preventer onboard the Deepwater Horizon at the time of the April 20, 2010 accident.

According to the Amended Complaint, Cameron faces significant risks of liability arising out of blowouts or other accidents associated with drilling.  In total, Cameron had $500 million in excess casualty coverage.  Liberty agreed to provide Cameron $50 million in excess casualty coverage.  Other insurers including Illinois National Insurance Company ("INIC"), ACE American Insurance Company ("ACE American"), and XL Insurance Company Limited ("XL"), Chubb Atlantic Indemnity, Ltd. ("Chubb"), XL Insurance (Bermuda) Ltd. ("XL Bermuda"), AIG Excess Liability Insurance International Limited ("AIG Excess"), Iron-Starr Excess Agency Ltd. ("Iron-Star"), Argo Re Ltd. ("Argo Re"), and ACE Bermuda Insurance Ltd. ("ACE Bermuda") also provided coverage to Cameron.  The Chubb, Iron-Star, and Argo Re policies contained provisions pursuant to which they would be entitled to any limitations on coverage contained in policies that were "lower" in the insurance tower, including the Liberty policy.

According to the Amended Complaint, on December 12, 2012, Cameron reached a tentative settlement with BP, the owner of the well in which the Deepwater Horizon oil rig was drilling at the time of the explosion, that would largely eliminate Cameron's liability for the Deepwater Horizon Incident in exchange for a $250 million payment by Cameron.  Cameron alleges it relied upon its insurers, including Liberty, to pay their shares of insurance that Cameron bought from them.  Nine of Cameron's insurers—including Chubb, Iron-Star, and Argo Re—consented to the settlement and paid.  Liberty refused.  Cameron claims it was forced to pay Liberty's $50 million share of the settlement.

Cameron alleges that Liberty breached the terms of Policy Number LQ1B71198583046, which Cameron purchased from Liberty for the policy period from July 1, 2009 to July 1, 2010.  In addition to damages for Liberty's breach of its contract with Cameron, Cameron also seeks a declaratory judgment that Liberty must indemnify Cameron for its losses in connection with the Deepwater Horizon Incident and must pay Cameron's ongoing defense expenses and damages for Liberty's bad faith failure to pay Cameron's claim and ongoing defense expenses.  Liberty denies that it has any obligation to Cameron.

At issue in this case is whether Liberty had an obligation to pay Cameron the $50 million limit of its policy when Cameron settled with BP and whether Liberty's failure to do so constituted bad faith in violation of the Texas Insurance Code.  Cameron alleges that Chubb, Iron-Star, and Argo Re could have denied Cameron's claim for coverage for the BP settlement on the same basis that Liberty denied Cameron's claim, but they did not.  Instead, Cameron says, all three of these Bermuda insurers consented to the settlement.  Discovery of those insurers and their employees, Ms. Nusum, Mr. Engrissei, and Mr. Williams, respectively, is relevant to Cameron's claims against Liberty.

## II.     ASSISTANCE REQUIRED

Ms. Nusum, Mr. Engrissei, and Mr. Williams, witnesses with knowledge of facts relevant to this action, reside in Bermuda.  In addition, many documents relevant to this action, including the business records of Chubb, Iron-Starr, and Argo Re, are located in Bermuda.

Pursuant to the Federal Rules of Civil Procedure, this Court has jurisdiction to order discovery, including depositions of witnesses upon oral examination and production of documents from any person regarding any matter which is relevant to the subject matter of the pending action.  *See* Fed. R. Civ. P. 26(b)

1127709v1

The evidence that Cameron seeks from witnesses residing in Bermuda is necessary for the trial of this case and not otherwise obtainable by this Court through this Court's compulsory process.  Thus, the evidence so obtained will be used by Cameron at trial. Therefore, this Court respectfully requests that, in the interest of justice, your Honorable Court issue appropriate orders necessary to compel the attendance of the witnesses listed below for oral depositions and for the production of documents described below.

This Court also requests that the proper Bermudian authorities cause the depositions to be recorded in writing by a qualified court reporter and by videotape, to cause the recordings of the depositions to be authenticated, and to cause the authenticated records to be delivered to Plaintiff's and Defendant's counsel.  The original transcripts and, if videotaped, the videotapes, should be delivered to Plaintiff's counsel for use at trial.

Pursuant to 28 U.S.C. § 1782, this Court will extend similar assistance to the Courts of Bermuda in like cases.

A.    WITNESSES REQUESTED

1.    Witness:    Alexis Nusum
                  Chubb Atlantic Indemnity, Ltd.
                  48 Par-La-Ville Road, Suite 773
                  Hamilton HM 11, Bermuda

Cameron has stated:  Ms. Nusum is a Claims Analyst at Chubb, one of Cameron's insurers that consented to and contributed toward Cameron's settlement with BP.  Ms. Nusum was responsible for administering Cameron's claim related to the Deepwater Horizon Incident and participated in numerous discussions with Cameron and Liberty regarding the claim. Ms. Nusum, on behalf of Chubb, could have denied payment to Cameron on the same basis that Liberty denied Cameron's claim, but did not do so.  Ms. Nusum has knowledge about Liberty's conduct during the investigation of Cameron's claim and the negotiation of the Cameron-BP

settlement, the unreasonableness of Liberty's coverage position, including why Chubb did not take the same position, and the value of the BP settlement in light of Cameron's potential liability.

> 2.    Witness:    Larry Engrissei
>                   Iron-Starr Excess Agency Ltd.
>                   141 Front Street, 7th Floor
>                   Hamilton HM 19, Bermuda

Cameron has stated:  Mr. Engrissei is the Senior Vice President of Claims at Iron-Starr, one of Cameron's insurers that consented to Cameron's settlement with BP.  Mr. Engrissei was responsible for administering Cameron's claim related to the Deepwater Horizon Incident and participated in numerous discussions with Cameron and Liberty regarding the claim. Mr. Engrissei, on behalf of Iron-Starr, could have refused to consent to the settlement on the same basis that Liberty denied Cameron's claim, but did not do so.  Mr. Engrissei has knowledge about Liberty's conduct during the investigation of Cameron's claim and the negotiation of the Cameron-BP settlement, the unreasonableness of Liberty's coverage position, including why Iron-Starr did not take the same position, and the value of the BP settlement in light of Cameron's potential liability.  In addition, Mr. Engrissei sent a letter to Liberty explaining the unreasonableness of Liberty's position on the same policy language Iron-Starr had.

> 3.    Witness:    Kevin Williams
>                   Argo Re Ltd.
>                   Argo House, 110 Pitts Bay Road
>                   Pembroke HM 08, Bermuda

Cameron has stated:  Mr. Williams is a Claims Manager at Argo Re, another of Cameron's insurers that consented to Cameron's settlement with BP.   Mr. Williams was responsible for administering Cameron's claim related to the Deepwater Horizon Incident and participated in numerous discussions with Cameron and Liberty regarding the claim.   Mr. Williams, on behalf of Argo Re, could have refused to consent to the settlement on the same

- 5 -

basis that Liberty denied Cameron's claim, but did not do so.  Mr. Williams has knowledge

about Liberty's conduct during the investigation of Cameron's claim and the negotiation of the

Cameron-BP settlement, the unreasonableness of Liberty's coverage position, including why

Argo Re did not take the same position, and the value of the BP settlement in light of Cameron's

potential liability.  Cameron has reason to believe that Mr. Williams also sent a letter to Liberty

complaining that Liberty's refusal to pay Cameron's claim was unreasonable and jeopardized

Cameron's settlement with BP.

      B.    <u>DOCUMENTS REQUESTED FROM CHUBB, IRON-STARR, AND ARGO RE</u>

          All documents and communications (including electronic mail messages) between and among Cameron, INIC, ACE American, XL, Liberty, Chubb, XL Bermuda, AIG Excess, Iron-Starr, Argo Re, and ACE Bermuda, or their agents, concerning Cameron's claim for coverage for the Deepwater Horizon Incident from April 20, 2010 to December 15, 2012.

          Cameron has stated that the documents are relevant because all the insurers

besides Liberty believed the BP settlement was fair and was a properly payable, covered claim.

DATED:   New Orleans, Louisiana this 31st day of May, 2013.

_____
THE HONORABLE CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

**William W. Blevins**

- 6 -