Rough Transcript

```
 1

 2     UNITED STATES DISTRICT COURT
       EASTERN DISTRICT OF LOUISIANA
 3     -----------------------------------------X
       In Re:  OIL SPILL BY THE OIL RIG
 4     "DEEPWATER HORIZON" IN THE GULF OF
       MEXICO, ON APRIL 20, 2010,
 5

 6     Applies to:
 7     12-311, Cameron Int'l Corp. v. Liberty
       Ins. Underwriters, Inc., a/k/a Liberty
 8     Int'l Underwriters
 9
       -----------------------------------------X
10

11

12           VIDEO DEPOSITION OF JAMES ENGEL
13                New York, New York
14            Wednesday, May 29, 2013
15

16

17

18

19

20

21     Reported by:
22     Rebecca Schaumloffel, RPR, CLR
23     Job No: 61441
24

25
```

**EXHIBIT A**

Rough Transcript

Page 39

1                    J. ENGEL

2  procedures and the best practices about how        10:05AM

3  Liberty International handles claims?               10:05AM

4       A.    It is a really, really broad           10:05AM

5  question.                                           10:05AM

6            MR. MARTIN:  I object to the             10:05AM

7       form I was about to say.  Could you           10:06AM

8       narrow it down with reference to time         10:06AM

9       for him as well?                              10:06AM

10           MR. KORN:  That's fair.                  10:06AM

11      Q.    I would like to focus on the           10:06AM

12  period in 2010 and 2011.  Is that fair?           10:06AM

13      A.    That's fair.  It's fair, though,       10:06AM

14  it is still very broad.                            10:06AM

15      Q.    We will get into the details, I        10:06AM

16  am sure, but in your answer, you referred to       10:06AM

17  rules, procedures, and best practices, and I       10:06AM

18  would like to just understand what you were        10:06AM

19  referring to when you used those terms.            10:06AM

20      A.    So first of all, you need to           10:06AM

21  understand that when I arrived at LIU in           10:06AM

22  September of 2010, the company did not have        10:06AM

23  written rules, procedures, and best               10:06AM

24  practices.  And those were developed later on      10:06AM

25  under my direction.                                10:07AM

Rough Transcript

Page 40

```
 1                        J. ENGEL
 2        Q.    And when were they developed?          10:07AM
 3        A.    The first best practice documents      10:07AM
 4   were distributed on or around September or        10:07AM
 5   October of 2011, and they dealt only with         10:07AM
 6   managing litigation.  In other words,             10:07AM
 7   controlling our legal spend.  The balance of      10:07AM
 8   our best practices were written and               10:07AM
 9   distributed to the organization in the April,     10:07AM
10   May of 2012 timeframe.  Some may have been a      10:07AM
11   little later than that for certain lines of       10:08AM
12   business because they were line of business       10:08AM
13   specific.                                         10:08AM
14        Q.    What is the line of business that      10:08AM
15   Liberty policy falls within at LIU?               10:08AM
16        A.    Casualty.                              10:08AM
17        Q.    Was there a set of written best        10:08AM
18   practices distributed sometime in or after        10:08AM
19   April, May of 2012 for casualty at LIU?           10:08AM
20        A.    Yes.                                   10:08AM
21        Q.    Do you know when that was?             10:08AM
22        A.    It was in the April, May               10:08AM
23   timeframe.  I don't know exactly the date.        10:08AM
24        Q.    So did LIU not have best               10:08AM
25   practices prior to that time for casualty?        10:08AM
```

Rough Transcript

Page 41

1                         J. ENGEL

2        A.    It didn't have written best              10:09AM

3   practices.  The company relied on the               10:09AM

4   experience of the individuals in claim              10:09AM

5   handler positions and management positions           10:09AM

6   and some of those people were extremely              10:09AM

7   experienced and well qualified.                      10:09AM

8        Q.    If you were to ask -- had asked           10:09AM

9   in the 2011 time period what the Liberty             10:09AM

10  International best practices were of any             10:09AM

11  particular claims handler, would they give           10:09AM

12  you a different answer?                              10:09AM

13       A.    Sorry?                                    10:09AM

14       Q.    Would they give you different             10:09AM

15  answers?                                             10:09AM

16       A.    Sure.  I think even today, with           10:09AM

17  written best practices, people, when asked,          10:10AM

18  would play it back differently.  Though they         10:10AM

19  would be more consistent today than they were        10:10AM

20  prior to when they had written best                  10:10AM

21  practices.                                           10:10AM

22       Q.    Prior to the time when there were         10:10AM

23  written best practices, would you                    10:10AM

24  characterize the claims handlers at LIU in           10:10AM

25  casualty as inconsistent with each other?            10:10AM

Page 44

1                    J. ENGEL

2     business, it was myself and Jessica Rogin who        10:13AM

3     drafted and built those best practices.             10:13AM

4          Q.    Do you recall when Miss Rogin            10:13AM

5     joined LIU?                                          10:13AM

6          A.    I believe it was in August of            10:13AM

7     2011.                                                10:13AM

8          Q.    And did she come knowing how to          10:13AM

9     handle claims without any instruction from          10:13AM

10    anybody at Liberty?                                  10:13AM

11         A.    Yes.  Jessica was highly                 10:13AM

12    experienced in handling and managing claim          10:14AM

13    units and, in particular, casualty claim            10:14AM

14    units, which is one of the reasons that             10:14AM

15    attracted her to me as a candidate for the          10:14AM

16    position.                                            10:14AM

17         Q.    So it's your testimony that,             10:14AM

18    prior to April or May of 2012, Liberty had no       10:14AM

19    written policies or procedures for the              10:14AM

20    adjusting of claims in casualty?                     10:14AM

21         A.    That's correct.                          10:14AM

22         Q.    And folks at Liberty knew how to         10:14AM

23    adjust claims based solely on their                 10:14AM

24    experience developed over time?                      10:14AM

25         A.    Yes, based solely on their               10:14AM

Rough Transcript

Page 45

| | | |
|---|---|---|
| 1 | J. ENGEL | |
| 2 | experience and direction that they would | 10:14AM |
| 3 | receive from their supervisors after they | 10:15AM |
| 4 | arrived at LIU. | 10:15AM |
| 5 | Q.    And different folks at Liberty | 10:15AM |
| 6 | had different practices and procedures from | 10:15AM |
| 7 | other folks at Liberty because they had | 10:15AM |
| 8 | different experiences and there was no | 10:15AM |
| 9 | written guidelines? | 10:15AM |
| 10 | A.    There were no written guidelines; | 10:15AM |
| 11 | though I would say experienced people, even | 10:15AM |
| 12 | though they came from different companies, | 10:15AM |
| 13 | had similar approaches to how to handle | 10:15AM |
| 14 | claims. | 10:15AM |
| 15 | Q.    What is the first thing that a | 10:15AM |
| 16 | claims adjustor at Liberty is supposed to do | 10:15AM |
| 17 | upon -- well, withdrawn.  Let me ask a | 10:15AM |
| 18 | different question. | 10:15AM |
| 19 | When you developed the best | 10:15AM |
| 20 | practices, for ^ CK written purposes, for | 10:15AM |
| 21 | casualty, did you intend to reflect in those | 10:15AM |
| 22 | best practices the way that claims were | 10:15AM |
| 23 | handled prior to them being put into writing? | 10:16AM |
| 24 | MR. MARTIN:  Object to form. | 10:16AM |
| 25 | Q.    I will ask a different question. | 10:16AM |

Rough Transcript

Page 1

```
 1

 2    UNITED STATES DISTRICT COURT

      EASTERN DISTRICT OF LOUISIANA

 3    ---------------------------------------X

      In Re:  OIL SPILL BY THE OIL RIG

 4    "DEEPWATER HORIZON" IN THE GULF OF

      MEXICO, ON APRIL 20, 2010,

 5

 6    Applies to:

 7    12-311, Cameron Int'l Corp. v. Liberty

      Ins. Underwriters, Inc., a/k/a Liberty

 8    Int'l Underwriters

 9

      ---------------------------------------X

10

11

12            VIDEO DEPOSITION OF JEFFREY ROBERTS

13                 New York, New York

14             Thursday, May 30, 2013

15

16

17

18

19

20

21    Reported by:

22    Rebecca Schaumloffel, RPR, CLR

23    Job No: 61442

24

25
```

Rough Transcript

Page 18

```
 1

 2   those claims in an efficient and timely          09:26AM

 3   manner.                                          09:26AM

 4        Q.    How do you know if you are doing      09:26AM

 5   your job correctly?                              09:26AM

 6        A.    We resolve claims.  I guess no        09:26AM

 7   one sues us.  Not sure.                          09:26AM

 8        Q.    So if someone sued you, that          09:26AM

 9   means you have not done your job correctly?      09:26AM

10        A.    Not necessarily.  It may feel         09:26AM

11   that I have not done it correctly or point of    09:26AM

12   clarification would be my manager may tell me    09:26AM

13   I have done something wrong.                     09:26AM

14        Q.    At any time in connection with        09:26AM

15   the adjustment of Cameron claim, in              09:26AM

16   connection with the Deepwater Horizon matter,    09:26AM

17   had any of your managers told you that you       09:26AM

18   did anything wrong?                              09:26AM

19        A.    No, sir.                              09:26AM

20        Q.    When you adjusted Cameron's           09:26AM

21   claim, do you believe that you did 0 so          09:27AM

22   consistent with Liberty's best practices?        09:27AM

23           MS. BARRASSO:  Object to the             09:27AM

24        form.                                       09:27AM

25        A.    Yes, I handle all claims in the       09:27AM
```

Rough Transcript

Page 19

```
 1

 2   best possible manner according to best          09:27AM

 3   practices.  We now have best practices, a       09:27AM

 4   written policy of best practices.               09:27AM

 5        Q.    Was there a point in time that        09:27AM

 6   Liberty did not have best practices?            09:27AM

 7        A.    Prior to miss Rogin and Mr.           09:27AM

 8   Engel's arrival, we did not have any written    09:27AM

 9   documentation regarding best practices or       09:27AM

10   claim handling procedures.                      09:27AM

11        Q.    So how did you know how to handle     09:27AM

12   claims?                                         09:27AM

13        A.    It's my job, my profession.  I        09:27AM

14   brought the best practices that I had learned   09:28AM

15   at AIG with me.                                 09:28AM

16        Q.    Prior to the time that Mr. Engel      09:28AM

17   and miss Rogin issued written best practices,   09:28AM

18   did Liberty International have any policies      09:28AM

19   or procedures for the adjustment of claims?     09:28AM

20        A.    We had authority letters.  We had     09:28AM

21   authority letters set out a monetary limit of   09:28AM

22   our authority to negotiate or settle claims,    09:28AM

23   set a reserve and restricted our ability to     09:28AM

24   start declaratory judgment actions or issue     09:28AM

25   declination letters without approval from       09:28AM
```

Rough Transcript

Page 20

```
1

2   management.                                  09:28AM

3       Q.    Other than those authority         09:28AM

4   letters as you have described them, were      09:28AM

5   there any other policies or procedures that   09:29AM

6   Liberty International for how to adjust        09:29AM

7   claims?                                        09:29AM

8       A.    No, sir.                             09:29AM

9       Q.    Claims adjusters could do           09:29AM

10  whatever they want?                            09:29AM

11      A.    I didn't say that.                   09:29AM

12      Q.    What direction, if any, did         09:29AM

13  Liberty International provide to its claims    09:29AM

14  adjusters about how to adjust claims prior to  09:29AM

15  the issuance of the best practices?            09:29AM

16      A.    I don't know what instructions      09:29AM

17  were given to other people.  Tony -- since I   09:29AM

18  started at Liberty and Tony was my boss,       09:29AM

19  based on my experience, he never discussed     09:29AM

20  with me what I should do.                      09:29AM

21      Q.    Who was Tony's boss prior to Mr.    09:30AM

22  Engel?                                         09:30AM

23          MS. BARRASSO:  Objection.  Lack       09:30AM

24      of foundation.                             09:30AM

25      Q.    Let me address the objection.       09:30AM
```

Rough Transcript

Page 24

```
 1

 2          Q.     You don't know how the trial,        09:33AM

 3    what evidence would have been presented at        09:33AM

 4    trial had Cameron not settled with BP?            09:33AM

 5          A.     No, that's purely speculative.        09:33AM

 6          Q.     Let's go back to the best             09:33AM

 7    practices we mentioned before. Do you know        09:33AM

 8    when they were written, the written               09:33AM

 9    guidelines?                                        09:33AM

10          A.     Spring of last year.                  09:33AM

11          Q.     So that would be spring of 2012?      09:33AM

12          A.     Correct.                              09:33AM

13          Q.     Are you familiar with the content     09:33AM

14    of the guidelines that were issued?               09:33AM

15          A.     Yes.                                  09:33AM

16          Q.     What do you understand LIU's best     09:33AM

17    practices to be?                                  09:34AM

18               MS. BARRASSO:   Object to the          09:34AM

19          form.                                        09:34AM

20          A.     Can you clarify that?                 09:34AM

21          Q.     Sure.  There were written             09:34AM

22    guidelines that were issued in the spring of      09:34AM

23    2012, is that your testimony?                     09:34AM

24          A.     Yes.  Best practices were put         09:34AM

25    forth.                                             09:34AM
```

Rough Transcript

Page 1

```
 1

 2    UNITED STATES DISTRICT COURT

      EASTERN DISTRICT OF LOUISIANA

 3    ----------------------------------------X

      In Re:  OIL SPILL BY THE OIL RIG

 4    "DEEPWATER HORIZON" IN THE GULF OF

      MEXICO, ON APRIL 20, 2010,

 5

 6    Applies to:

 7    12-311, Cameron Int'l Corp. v. Liberty

      Ins. Underwriters, Inc., a/k/a Liberty

 8    Int'l Underwriters

 9

      ----------------------------------------X

10

11

12          VIDEO DEPOSITION OF Jessica Rogin

13               New York, New York

14          Friday, May 31, 2013

15

16

17

18

19

20

21    Reported by:

22    Rebecca Schaumloffel, RPR, CLR

23    Job No: 61443

24

25
```

Rough Transcript

Page 57

1              J. ROGIN

2    standards for claim handling for our          10:33AM

3    adjusters.                                     10:33AM

4        Q.    Were there no uniform standards      10:33AM

5    for claim handling for your adjusters at       10:33AM

6    Liberty prior to the development of written    10:33AM

7    best practices?                                10:33AM

8        A.    When I arrived in August of 2011,    10:33AM

9    I was not aware of there being any written     10:33AM

10   guidelines.                                    10:33AM

11       Q.    Regardless of whether any            10:33AM

12   guidelines were committed to writing, were     10:33AM

13   there any uniform standards for claim          10:33AM

14   handling for your adjusters at Liberty prior   10:33AM

15   to the development of the written best         10:33AM

16   practices?                                     10:34AM

17       A.    Well, I am not aware of there        10:34AM

18   being any uniform standards if they weren't    10:34AM

19   in writing.                                    10:34AM

20       Q.    Did you give direction to the        10:34AM

21   claims adjusters as to how you to adjust       10:34AM

22   claims after you arrived?                      10:34AM

23       A.    On an individual basis,              10:34AM

24   generally, on claims -- claim by claim basis   10:34AM

25   e, yes.                                        10:34AM

Rough Transcript

Page 67

1                    J. ROGIN

2        Q.    Were there any policies and          10:45AM

3   procedures for handling claims prior to the     10:45AM

4   time that the best practices guidelines were    10:45AM

5   issued?                                          10:45AM

6        A.    I already said I wasn't aware of      10:45AM

7   any.                                             10:45AM

8        Q.    Is it fair to say that Liberty        10:45AM

9   did not have best perhaps /PRA*S prior to the    10:45AM

10  time you /WREUBD written guidelines?             10:45AM

11       A.    We didn't have any written best       10:45AM

12  practices prior to that time.                    10:45AM

13       Q.    Did it have anything that it          10:45AM

14  considered to be best practices prior to the     10:46AM

15  time the written guidelines were issued?         10:46AM

16       A.    Well, I think it considered the       10:46AM

17  best practices that it had experienced out of    10:46AM

18  claim adjusters ma /THA* were adjusting the      10:46AM

19  claim.                                           10:46AM

20       Q.    How would I know who /WHA* the        10:46AM

21  best practices were that they followed prior     10:46AM

22  to the time that the written policies were       10:46AM

23  issued?                                          10:46AM

24       A.    There wasn't anywhere for you to      10:46AM

25  find that in writing.                            10:46AM