UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * | MDL NO. 2179<br><br>SECTION J<br><br>JUDGE BARBIER |
| **THIS PLEADING APPLIES TO:**<br>No. 12-311 | * * * | MAGISTRATE JUDGE SHUSHAN |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**CAMERON'S SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT
OF ITS MOTION TO COMPEL LIBERTY TO COMPLY WITH
THIS COURT'S SUPPLEMENTAL ORDER DATED MAY 9, 2013**

On May 29-31, 2013, Plaintiff Cameron International Corporation ("Cameron") conducted the depositions of three employees of Liberty Insurance Underwriters Inc. ("Liberty"): (1) James Engel, Senior Vice President and Chief Claims Officer; (2) Jeffrey Roberts, Assistant Vice President and the claims adjuster with primary responsibility for the insurance claim at issue in this action; and (3) Jessica Rogin, Vice President of Casualty Claims and Mr. Roberts' immediate supervisor. Those depositions confirm that Liberty is withholding, contrary to this Court's Order of May 9, 2013, documents responsive to RFP Nos. 13 and 15 that show Liberty's policies and procedures relating to claims adjusting and the handling of coverage disputes.

From last week's depositions, Cameron has learned the following facts that were omitted from Liberty's supplemental submission of yesterday:

- Liberty has a *formal* "best practices" manual for claims adjusting that would not be burdensome to produce. (Rogin Dep. at 56-57, 61-62; Roberts Dep. at 23-24; Engel Dep. at 40.)[1] Indeed, Ms. Rogin, the primary draftsperson for Liberty's claim handling best practices manual, described the document as less than 10-pages long. (Rogin Dep. at 62; *see also id.* at 56.)

---

[1] Excerpts from the deposition transcripts of Ms. Rogin and Messrs. Roberts and Engel are annexed hereto as Exhibits A, B, and C, respectively.

- Ms. Rogin testified that she prepared a draft of Liberty's claims adjusting manual "sometime in the fall of 2011"—*i.e.*, the same exact time when Liberty wrongfully denied Cameron's claim. (Rogin Dep. at 62-63.) Ms. Rogin also testified that she sought "to memorialize the best practices of Liberty for claim handling as [she] saw them" in 2011. (*Id.*)

- Mr. Roberts intends to testify at trial that he "acted consistently with Liberty's best practices." (Roberts Dep. at 26.) Likewise, Ms. Rogin, Mr. Roberts' direct supervisor, testified that Mr. Roberts was "already" adjusting claims in 2011 consistent with those best practices as they were later memorialized in Liberty's best practices manual. (Rogin Dep. at 65, 71.)

- Liberty uses documents for training purposes, including prior to the issuance of the "best practices" document, that "orient[] people towards the company's values, codes of conduct, things like that." (Roberts Dep. at 34-35.) As Mr. Roberts explained, Liberty expects its employees to adjust claims consistent with those values and codes of conduct. (*Id.* at 35.)

This new evidence demonstrates that Liberty has written "best practices" and training materials that are squarely within the scope of RFP Nos. 13 and 15 and this Court's May 9 Order. Those RFPs seek documents sufficient to show Liberty's policies and procedures for claims adjusting and the handling of coverage disputes, and were not limited only to documents dated prior to the end of 2011. (Rec. Doc. 9618 (Ex. A at 5).) The documents described by Liberty's witnesses are exactly what Cameron has sought all along—an expression of what Liberty believes to be the standard for adjusting claims, a statement of the "values" and "codes of conduct" that its employees are expected to follow when adjusting claims, and they are clearly probative regardless of when they were specifically put into effect. To the extent the Court concluded otherwise in reviewing a copy of Liberty's "best practices" document that Liberty submitted for *in camera* review, without the benefit of any testimony, we respectfully request that the Court reconsider that decision in light of the new evidence presented herewith.

Without the production of these documents, as was made apparent during last week's depositions, Cameron will be severely prejudiced because it will not be able to refute the testimony of Liberty's witnesses that they adjusted Cameron's insurance claim consistent with Liberty's best practices.  If Liberty's witnesses intend to testify that they followed "best practices," Cameron is entitled to know what those "best practices" are, and to test Liberty's assertions.  (*See* Roberts Dep. at 25 (agreeing that it would be "helpful" if he had the guidelines "to look at them and see whether [he] acted consistently with them"); Rogin Dep. at 66 (agreeing that reviewing the actual guidelines "might provide guidance").)  At a minimum, Liberty must produce the drafts of the "best practices" that Ms. Rogin prepared in 2011—which she testified show the practices and procedures for claims adjusting that Mr. Roberts allegedly followed at that time.  (Rogin Dep. at 62-63.)

Accordingly, Cameron respectfully requests that the Court compel Liberty to comply with its May 9, 2013 Supplemental Order and produce the following documents: (1) Liberty's "best practices" manual; (2) any drafts of the manual that were prepared in 2011; and (3) the training materials about which Liberty's witnesses testified that set forth Liberty's "values" and "code of conduct."

Dated:      June 5, 2013

Respectfully submitted,

 */s/ Phillip A. Wittmann*            
Phillip A. Wittmann, 13625
     pwittmann@stonepigman.com
Carmelite M. Bertaut, 3054
     cbertaut@stonepigman.com
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
504-581-3200
504-581-3361 (fax)

1128442v1

WILLKIE FARR & GALLAGHER LLP
Mitchell J. Auslander
Jeffrey B. Korn
787 Seventh Avenue
New York, New York  10019
 (212) 728-8000
mauslander@willkie.com

*Attorneys for Cameron International Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Cameron International Corporation's Supplemental Memorandum In Further Support Of Its Motion to Compel Liberty Insurance Underwriters Inc. To Comply With This Court's Supplemental Order, dated May 9, 2013 has been served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 5th day of June, 2013.

/s/ Phillip A. Wittmann

1128442v1