Page 1

1

2   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF LOUISIANA
3   ------------------------------------X
    In Re:   OIL SPILL BY THE OIL RIG
4   "DEEPWATER HORIZON" IN THE GULF OF
    MEXICO, ON APRIL 20, 2010,
5
6   Applies to:
7   12-311, Cameron Int'l Corp. v. Liberty
    Ins. Underwriters, Inc., a/k/a Liberty
8   Int'l Underwriters
9
    ------------------------------------X
10
11
12        VIDEO DEPOSITION OF JAMES ENGEL
13              New York, New York
14           Wednesday, May 29, 2013
15
16
17
18
19
20
21  Reported by:
22  Rebecca Schaumloffel, RPR, CLR
23  Job No: 61441
24
25

| | | |
|---|---|---|
| 1 | J. ENGEL | |
| 2 | procedures and the best practices about how | 10:05AM |
| 3 | Liberty International handles claims? | 10:05AM |
| 4 | A. It is a really, really broad | 10:05AM |
| 5 | question. | 10:05AM |
| 6 | MR. MARTIN: I object to the | 10:05AM |
| 7 | form I was about to say. Could you | 10:06AM |
| 8 | narrow it down with reference to time | 10:06AM |
| 9 | for him as well? | 10:06AM |
| 10 | MR. KORN: That's fair. | 10:06AM |
| 11 | Q. I would like to focus on the | 10:06AM |
| 12 | period in 2010 and 2011. Is that fair? | 10:06AM |
| 13 | A. That's fair. It's fair, though, | 10:06AM |
| 14 | it is still very broad. | 10:06AM |
| 15 | Q. We will get into the details, I | 10:06AM |
| 16 | am sure, but in your answer, you referred to | 10:06AM |
| 17 | rules, procedures, and best practices, and I | 10:06AM |
| 18 | would like to just understand what you were | 10:06AM |
| 19 | referring to when you used those terms. | 10:06AM |
| 20 | A. So first of all, you need to | 10:06AM |
| 21 | understand that when I arrived at LIU in | 10:06AM |
| 22 | September of 2010, the company did not have | 10:06AM |
| 23 | written rules, procedures, and best | 10:06AM |
| 24 | practices. And those were developed later on | 10:06AM |
| 25 | under my direction. | 10:07AM |

Page 40

| | | |
|---|---|---|
| 1 | J. ENGEL | |
| 2 | Q. And when were they developed? | 10:07AM |
| 3 | A. The first best practice documents | 10:07AM |
| 4 | were distributed on or around September or | 10:07AM |
| 5 | October of 2011, and they dealt only with | 10:07AM |
| 6 | managing litigation. In other words, | 10:07AM |
| 7 | controlling our legal spend. The balance of | 10:07AM |
| 8 | our best practices were written and | 10:07AM |
| 9 | distributed to the organization in the April, | 10:07AM |
| 10 | May of 2012 timeframe. Some may have been a | 10:07AM |
| 11 | little later than that for certain lines of | 10:08AM |
| 12 | business because they were line of business | 10:08AM |
| 13 | specific. | 10:08AM |
| 14 | Q. What is the line of business that | 10:08AM |
| 15 | Liberty policy falls within at LIU? | 10:08AM |
| 16 | A. Casualty. | 10:08AM |
| 17 | Q. Was there a set of written best | 10:08AM |
| 18 | practices distributed sometime in or after | 10:08AM |
| 19 | April, May of 2012 for casualty at LIU? | 10:08AM |
| 20 | A. Yes. | 10:08AM |
| 21 | Q. Do you know when that was? | 10:08AM |
| 22 | A. It was in the April, May | 10:08AM |
| 23 | timeframe. I don't know exactly the date. | 10:08AM |
| 24 | Q. So did LIU not have best | 10:08AM |
| 25 | practices prior to that time for casualty? | 10:08AM |

Rough Transcript

Page 41

1           J. ENGEL

2      A.   It didn't have written best                10:09AM
3 practices.  The company relied on the                10:09AM
4 experience of the individuals in claim               10:09AM
5 handler positions and management positions           10:09AM
6 and some of those people were extremely              10:09AM
7 experienced and well qualified.                      10:09AM
8      Q.   If you were to ask -- had asked            10:09AM
9 in the 2011 time period what the Liberty             10:09AM
10 International best practices were of any            10:09AM
11 particular claims handler, would they give          10:09AM
12 you a different answer?                             10:09AM
13     A.   Sorry?                                     10:09AM
14     Q.   Would they give you different              10:09AM
15 answers?                                            10:09AM
16     A.   Sure.  I think even today, with            10:09AM
17 written best practices, people, when asked,         10:10AM
18 would play it back differently.  Though they        10:10AM
19 would be more consistent today than they were       10:10AM
20 prior to when they had written best                 10:10AM
21 practices.                                          10:10AM
22     Q.   Prior to the time when there were         10:10AM
23 written best practices, would you                   10:10AM
24 characterize the claims handlers at LIU in          10:10AM
25 casualty as inconsistent with each other?           10:10AM

Page 44

| | | |
|---|---|---|
| 1 | J. ENGEL | |
| 2 | business, it was myself and Jessica Rogin who | 10:13AM |
| 3 | drafted and built those best practices. | 10:13AM |
| 4 | Q.   Do you recall when Miss Rogin | 10:13AM |
| 5 | joined LIU? | 10:13AM |
| 6 | A.   I believe it was in August of | 10:13AM |
| 7 | 2011. | 10:13AM |
| 8 | Q.   And did she come knowing how to | 10:13AM |
| 9 | handle claims without any instruction from | 10:13AM |
| 10 | anybody at Liberty? | 10:13AM |
| 11 | A.   Yes.  Jessica was highly | 10:13AM |
| 12 | experienced in handling and managing claim | 10:14AM |
| 13 | units and, in particular, casualty claim | 10:14AM |
| 14 | units, which is one of the reasons that | 10:14AM |
| 15 | attracted her to me as a candidate for the | 10:14AM |
| 16 | position. | 10:14AM |
| 17 | Q.   So it's your testimony that, | 10:14AM |
| 18 | prior to April or May of 2012, Liberty had no | 10:14AM |
| 19 | written policies or procedures for the | 10:14AM |
| 20 | adjusting of claims in casualty? | 10:14AM |
| 21 | A.   That's correct. | 10:14AM |
| 22 | Q.   And folks at Liberty knew how to | 10:14AM |
| 23 | adjust claims based solely on their | 10:14AM |
| 24 | experience developed over time? | 10:14AM |
| 25 | A.   Yes, based solely on their | 10:14AM |

Page 45

1         J. ENGEL

2  experience and direction that they would              10:14AM
3  receive from their supervisors after they             10:15AM
4  arrived at LIU.                                        10:15AM
5     Q.   And different folks at Liberty               10:15AM
6  had different practices and procedures from          10:15AM
7  other folks at Liberty because they had              10:15AM
8  different experiences and there was no               10:15AM
9  written guidelines?                                   10:15AM
10    A.   There were no written guidelines;            10:15AM
11 though I would say experienced people, even          10:15AM
12 though they came from different companies,           10:15AM
13 had similar approaches to how to handle              10:15AM
14 claims.                                               10:15AM
15    Q.   What is the first thing that a               10:15AM
16 claims adjustor at Liberty is supposed to do         10:15AM
17 upon -- well, withdrawn.  Let me ask a               10:15AM
18 different question.                                   10:15AM
19         When you developed the best                  10:15AM
20 practices, for ^ CK written purposes, for            10:15AM
21 casualty, did you intend to reflect in those         10:15AM
22 best practices the way that claims were              10:15AM
23 handled prior to them being put into writing?        10:16AM
24         MR. MARTIN:  Object to form.                 10:16AM
25    Q.   I will ask a different question.             10:16AM

Page 1

1

2  UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF LOUISIANA
3  ----------------------------------------X
   In Re:  OIL SPILL BY THE OIL RIG
4  "DEEPWATER HORIZON" IN THE GULF OF
   MEXICO, ON APRIL 20, 2010,
5
6  Applies to:
7  12-311, Cameron Int'l Corp. v. Liberty
   Ins. Underwriters, Inc., a/k/a Liberty
8  Int'l Underwriters
9
   ----------------------------------------X
10
11
12          VIDEO DEPOSITION OF JEFFREY ROBERTS
13               New York, New York
14             Thursday, May 30, 2013
15
16
17
18
19
20
21  Reported by:
22  Rebecca Schaumloffel, RPR, CLR
23  Job No: 61442
24
25

Page 18

| | | |
|---|---|---|
| 2 | those claims in an efficient and timely | 09:26AM |
| 3 | manner. | 09:26AM |
| 4 | Q. How do you know if you are doing | 09:26AM |
| 5 | your job correctly? | 09:26AM |
| 6 | A. We resolve claims. I guess no | 09:26AM |
| 7 | one sues us. Not sure. | 09:26AM |
| 8 | Q. So if someone sued you, that | 09:26AM |
| 9 | means you have not done your job correctly? | 09:26AM |
| 10 | A. Not necessarily. It may feel | 09:26AM |
| 11 | that I have not done it correctly or point of | 09:26AM |
| 12 | clarification would be my manager may tell me | 09:26AM |
| 13 | I have done something wrong. | 09:26AM |
| 14 | Q. At any time in connection with | 09:26AM |
| 15 | the adjustment of Cameron claim, in | 09:26AM |
| 16 | connection with the Deepwater Horizon matter, | 09:26AM |
| 17 | had any of your managers told you that you | 09:26AM |
| 18 | did anything wrong? | 09:26AM |
| 19 | A. No, sir. | 09:26AM |
| 20 | Q. When you adjusted Cameron's | 09:26AM |
| 21 | claim, do you believe that you did 0 so | 09:27AM |
| 22 | consistent with Liberty's best practices? | 09:27AM |
| 23 | MS. BARRASSO: Object to the | 09:27AM |
| 24 | form. | 09:27AM |
| 25 | A. Yes, I handle all claims in the | 09:27AM |

```
 1
 2   best possible manner according to best              09:27AM
 3   practices.  We now have best practices, a           09:27AM
 4   written policy of best practices.                   09:27AM
 5       Q.    Was there a point in time that            09:27AM
 6   Liberty did not have best practices?                09:27AM
 7       A.    Prior to miss Rogin and Mr.               09:27AM
 8   Engel's arrival, we did not have any written        09:27AM
 9   documentation regarding best practices or           09:27AM
10   claim handling procedures.                          09:27AM
11       Q.    So how did you know how to handle         09:27AM
12   claims?                                             09:27AM
13       A.    It's my job, my profession.  I            09:27AM
14   brought the best practices that I had learned       09:28AM
15   at AIG with me.                                     09:28AM
16       Q.    Prior to the time that Mr. Engel          09:28AM
17   and miss Rogin issued written best practices,       09:28AM
18   did Liberty International have any policies         09:28AM
19   or procedures for the adjustment of claims?         09:28AM
20       A.    We had authority letters.  We had         09:28AM
21   authority letters set out a monetary limit of       09:28AM
22   our authority to negotiate or settle claims,        09:28AM
23   set a reserve and restricted our ability to         09:28AM
24   start declaratory judgment actions or issue         09:28AM
25   declination letters without approval from           09:28AM
```

Page 20

| | | |
|---|---|---|
| 1 | | |
| 2 | management. | 09:28AM |
| 3 | Q. Other than those authority | 09:28AM |
| 4 | letters as you have described them, were | 09:28AM |
| 5 | there any other policies or procedures that | 09:29AM |
| 6 | Liberty International for how to adjust | 09:29AM |
| 7 | claims? | 09:29AM |
| 8 | A. No, sir. | 09:29AM |
| 9 | Q. Claims adjusters could do | 09:29AM |
| 10 | whatever they want? | 09:29AM |
| 11 | A. I didn't say that. | 09:29AM |
| 12 | Q. What direction, if any, did | 09:29AM |
| 13 | Liberty International provide to its claims | 09:29AM |
| 14 | adjusters about how to adjust claims prior to | 09:29AM |
| 15 | the issuance of the best practices? | 09:29AM |
| 16 | A. I don't know what instructions | 09:29AM |
| 17 | were given to other people. Tony -- since I | 09:29AM |
| 18 | started at Liberty and Tony was my boss, | 09:29AM |
| 19 | based on my experience, he never discussed | 09:29AM |
| 20 | with me what I should do. | 09:29AM |
| 21 | Q. Who was Tony's boss prior to Mr. | 09:30AM |
| 22 | Engel? | 09:30AM |
| 23 | MS. BARRASSO: Objection. Lack | 09:30AM |
| 24 | of foundation. | 09:30AM |
| 25 | Q. Let me address the objection. | 09:30AM |

Page 24

| | | |
|---|---|---|
| 1 | | |
| 2 | Q. You don't know how the trial, | 09:33AM |
| 3 | what evidence would have been presented at | 09:33AM |
| 4 | trial had Cameron not settled with BP? | 09:33AM |
| 5 | A. No, that's purely speculative. | 09:33AM |
| 6 | Q. Let's go back to the best | 09:33AM |
| 7 | practices we mentioned before. Do you know | 09:33AM |
| 8 | when they were written, the written | 09:33AM |
| 9 | guidelines? | 09:33AM |
| 10 | A. Spring of last year. | 09:33AM |
| 11 | Q. So that would be spring of 2012? | 09:33AM |
| 12 | A. Correct. | 09:33AM |
| 13 | Q. Are you familiar with the content | 09:33AM |
| 14 | of the guidelines that were issued? | 09:33AM |
| 15 | A. Yes. | 09:33AM |
| 16 | Q. What do you understand LIU's best | 09:33AM |
| 17 | practices to be? | 09:34AM |
| 18 | MS. BARRASSO: Object to the | 09:34AM |
| 19 | form. | 09:34AM |
| 20 | A. Can you clarify that? | 09:34AM |
| 21 | Q. Sure. There were written | 09:34AM |
| 22 | guidelines that were issued in the spring of | 09:34AM |
| 23 | 2012, is that your testimony? | 09:34AM |
| 24 | A. Yes. Best practices were put | 09:34AM |
| 25 | forth. | 09:34AM |

Page 1

1

2   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF LOUISIANA
3   ---------------------------------------X
    In Re:  OIL SPILL BY THE OIL RIG
4   "DEEPWATER HORIZON" IN THE GULF OF
    MEXICO, ON APRIL 20, 2010,
5

6   Applies to:
7   12-311, Cameron Int'l Corp. v. Liberty
    Ins. Underwriters, Inc., a/k/a Liberty
8   Int'l Underwriters
9
    ---------------------------------------X
10

11

12         VIDEO DEPOSITION OF Jessica Rogin
13              New York, New York
14           Friday, May 31, 2013
15

16

17

18

19

20

21  Reported by:
22  Rebecca Schaumloffel, RPR, CLR
23  Job No: 61443
24

25

Page 57

| | | |
|---|---|---|
| 1 | J. ROGIN | |
| 2 | standards for claim handling for our | 10:33AM |
| 3 | adjusters. | 10:33AM |
| 4 | Q.   Were there no uniform standards | 10:33AM |
| 5 | for claim handling for your adjusters at | 10:33AM |
| 6 | Liberty prior to the development of written | 10:33AM |
| 7 | best practices? | 10:33AM |
| 8 | A.   When I arrived in August of 2011, | 10:33AM |
| 9 | I was not aware of there being any written | 10:33AM |
| 10 | guidelines. | 10:33AM |
| 11 | Q.   Regardless of whether any | 10:33AM |
| 12 | guidelines were committed to writing, were | 10:33AM |
| 13 | there any uniform standards for claim | 10:33AM |
| 14 | handling for your adjusters at Liberty prior | 10:33AM |
| 15 | to the development of the written best | 10:33AM |
| 16 | practices? | 10:34AM |
| 17 | A.   Well, I am not aware of there | 10:34AM |
| 18 | being any uniform standards if they weren't | 10:34AM |
| 19 | in writing. | 10:34AM |
| 20 | Q.   Did you give direction to the | 10:34AM |
| 21 | claims adjusters as to how you to adjust | 10:34AM |
| 22 | claims after you arrived? | 10:34AM |
| 23 | A.   On an individual basis, | 10:34AM |
| 24 | generally, on claims -- claim by claim basis | 10:34AM |
| 25 | e, yes. | 10:34AM |

Rough Transcript

Page 67

1            J. ROGIN

2      Q.   Were there any policies and                10:45AM
3 procedures for handling claims prior to the          10:45AM
4 time that the best practices guidelines were         10:45AM
5 issued?                                              10:45AM
6      A.   I already said I wasn't aware of           10:45AM
7 any.                                                 10:45AM
8      Q.   Is it fair to say that Liberty             10:45AM
9 did not have best perhaps /PRA*S prior to the        10:45AM
10 time you /WREUBD written guidelines?                10:45AM
11     A.   We didn't have any written best            10:45AM
12 practices prior to that time.                       10:45AM
13     Q.   Did it have anything that it               10:45AM
14 considered to be best practices prior to the        10:46AM
15 time the written guidelines were issued?            10:46AM
16     A.   Well, I think it considered the            10:46AM
17 best practices that it had experienced out of       10:46AM
18 claim adjusters ma /THA* were adjusting the         10:46AM
19 claim.                                              10:46AM
20     Q.   How would I know who /WHA* the             10:46AM
21 best practices were that they followed prior        10:46AM
22 to the time that the written policies were          10:46AM
23 issued?                                             10:46AM
24     A.   There wasn't anywhere for you to           10:46AM
25 find that in writing.                               10:46AM