UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * | MDL NO. 2179 "J"(1) |
| | | JUDGE BARBIER |
| | * * | MAGISTRATE SHUSHAN |
| THIS DOCUMENT APPLIES TO: Case No. 12-311 | * * * | JURY TRIAL DEMANDED |

## LIU'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL CAMERON TO RESPOND TO REQUESTS FOR PRODUCTION OF DOCUMENTS AND PRODUCE A PRIVILEGE LOG

Liberty International Underwriters, Inc. ("LIU") submits this Memorandum in Support of its Motion to Compel Cameron to Respond to Requests for Production of Documents under Rule 37(a) of the Federal Rules of Civil Procedure. Cameron has redacted and/or withheld the following highly relevant documents responsive to LIU's Requests for Production Nos. 2, 3, and 8:

- Documents and communications related to the February 2012 modification of the Cameron/Transocean Master Service Agreement, which reworded the very indemnity provisions at issue in this matter;

- Documents and communications between Cameron and Marsh concerning Cameron's claim for coverage for liabilities arising out of the Deepwater Horizon Incident and/or the Cameron/BP settlement; and

- Documents and communications between Cameron and any of its insurers relating to Cameron's claim for coverage for liabilities arising out of the Deepwater Horizon incident, an insurer's payment on Cameron's claim, or this lawsuit.

Although Cameron apparently claims that some of these documents are privileged, it has produced only a short redaction log to date and has failed to produce a complete privilege log supporting its privilege claims. Given the July 1 fact discovery cut-off in this matter and the

1

depositions of Cameron and Marsh representatives within the next few weeks, the Court should order Cameron to promptly respond to LIU's Request Nos. 2, 3, and 8 and to produce a privilege log complying with the parameters LIU has proposed.

## I. BACKGROUND

### A. The Dispute Between LIU and Cameron

As the Court is aware, this insurance coverage dispute arises out of Cameron's claim for coverage for its $250 million settlement with BP in December 2011. LIU, one of Cameron's excess insurers, has declined to fund the portion of the settlement allegedly reaching its layer of coverage because, among other reasons, (1) LIU's policy states that it is excess of "any type of . . . indemnification or other mechanism by which an Insured arranges for funding of legal liabilities;" and (2) in the settlement, Cameron extinguished LIU's valuable right to recover any amount paid from Transocean based on contractual indemnity. Before settling with BP, Cameron sought indemnity from Transocean under a Master Services Agreement ("MSA") between the parties, among other agreements. *See* MSA, attached as Exh. A. When it settled with BP, Cameron assigned to BP its indemnity claim against Transocean, precluding LIU from enforcing Cameron's indemnity rights via subrogation. LIU contends that Cameron's assignment of its indemnity rights impaired LIU's subrogation rights, in violation of the policy, and forfeited coverage.

In his opinion concerning LIU's Motion for Judgment on the Pleadings, Judge Barbier held that, to be excused from its coverage obligation based on Cameron's impairment of its subrogation rights, LIU must show that "Cameron released legally valid and enforceable indemnity claims against Transocean." Rec. Doc. No. 7129, at p. 25. The viability of Cameron's indemnity rights against Transocean at the time of the settlement is thus a critical issue in this matter.

Another issue Cameron has raised in this suit relates to the conduct of Cameron's other insurers during the Cameron / BP settlement negotiations. In the amended complaint, Cameron repeatedly has quoted from letters written by other insurers criticizing LIU's settlement position and its interpretation of the "other insurance" condition. Rec. Doc. No. 6287, at ¶¶ 56-57. Cameron actively has pursued discovery from the other insurers, including noticing depositions of their representatives and serving subpoenas. *See* June 5, 2013 letter, attached as Exh. H.; Chartis subpoena, attached as Exh. I. Cameron repeatedly has contrasted LIU's actions with those of its other insurers who paid the BP settlement in support of both its breach of contract and its bad faith claims.

### B.  LIU's Discovery Requests to Cameron and Cameron's Responses

On February 7, 2013, LIU propounded its First Set of Requests for Admissions, Interrogatories, and Requests for Production of Documents to Cameron ("the Requests"). *See* Discovery Requests, attached as Exh. B. Among other things, LIU requested that Cameron produce the following documents:

- All documents and communications related to any modification of, or request to modify the indemnity provisions contained in the T&C or the MSA since January 1, 2010 (RFP No. 8);

- All documents and communications between you and Marsh concerning Cameron's claim for coverage for liabilities arising out of the Deepwater Horizon Incident, the BP Settlement, this lawsuit, a demand against Marsh, or notice of a potential claim against Marsh (RFP No. 3); and

- All documents and communications between you and any of your insurers relating to Cameron's claim for coverage for liabilities arising out of the Deepwater Horizon incident, an insurer's payment on Cameron's claim, or this lawsuit (RFP No. 2).

*Id.* Cameron responded to the Requests two months later, on April 8, 2013. *See* Responses, attached as Exh. C. While Cameron produced a privilege log of *redacted* documents on April

3

12, 2013, it has not yet produced a log of documents *withheld* from production, despite Liberty's request. *See* Redaction log, attached as Exh. D.

In response to LIU's request No. 8, Cameron produced a letter and a modified MSA with Transocean dated February 27, 2012. *See* Feb. 2012 MSA, attached as Exh. E. The modifications to the MSA indisputably reworded the very indemnity provisions at issue in this matter. LIU has requested that Cameron produce all communications related to the February 2012 modification, but Cameron has objected based on relevance. *See* Exh. C.

Moreover, based on LIU's review of Cameron's document production, Cameron improperly has redacted and/or withheld many documents based on privilege despite the impending depositions of Cameron's and Marsh's representatives. First, Cameron has listed many documents in its redaction log in which employees of Marsh, Cameron's insurance broker, are copied. Because Cameron has not produced a log of documents withheld, it is unknown how many documents reflecting communications with Marsh were withheld entirely. LIU informed Cameron of this deficiency in its production and Cameron has maintained that these third-party communications are shielded by either the attorney-client privilege or the work product doctrine. *See* May 17, 2013 letter, attached as Exh. F.

Likewise, although it has noticed depositions of its other insurers' representatives and intends to rely on their testimony, Cameron has withheld documents reflecting its communications with its other insurers, which are directly responsive to LIU's Request No. 2. These documents include both communications pertaining to Cameron's negotiations with other insurers concerning the Cameron/BP settlement and its actual settlement agreements with the other insurers. For example, a December 23, 2011 e-mail produced by Chartis refers to "e-mails

yesterday" between Chartis and Cameron. *See* CIC 9124, attached as Exh. G. These e-mails were not produced and do not appear on Cameron's redaction log. Cameron apparently concedes that these documents are not privileged and agreed to produce at least some of them more than a week ago; yet it has not produced them to date.

## II. ARGUMENT

### A. The Court Should Compel Cameron to Produce All Documents/Communications Related to the February 2012 Modification of the Indemnity Agreement.

Based on Judge Barbier's opinion, to decide the coverage issues raised in this suit, the Court must interpret the Cameron/Transocean indemnity agreement and determine whether Cameron's indemnity claims were "legally valid and enforceable[.]" By producing the February 2012 modification, Cameron has acknowledged that evidence extrinsic to the original MSA and postdating its execution may be relevant as an aid to interpretation. Indeed, many authorities recognize that extrinsic evidence of parties' post-execution conduct may be considered to interpret an ambiguous agreement. *See, e.g., Gamble, Simmons & Co. v. Kerr-McGee Corp.*, 15 F.3d 762, 767 (10th Cir. 1999) ("If the contract is ambiguous, then we may resort to extrinsic evidence, *including the subsequent statements and actions of the parties*, in order to construe the agreement") (emphasis added); La. Civ. Code. Art. 2053 ("A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the *conduct of the parties* before and *after the formation of the contract*, and of *other contracts of a like nature between the same parties*") (emphasis added); RESTATEMENT (SECOND) OF CONTRACTS § 202 (1981) ("The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning."). Relevant post-execution conduct can include the parties' efforts to modify the agreement at issue. In *Wisconsin Alumni Research Foundation v. Intel Corp.*, 656 F.

5

Supp. 2d 898, 914-15 (W.D. Wis. 2009), for example, the court specifically considered the parties' post-execution conduct and communications related to a proposed modification of two ambiguous letter agreements to interpret the agreements.

Here, Cameron and Transocean modified the very indemnification provisions at issue *only two months* after the Cameron/BP settlement and Cameron's assignment of its indemnity rights to BP. While LIU contends that the original MSA is unambiguous as to Cameron's right to indemnity from Transocean, Cameron and/or the Court may disagree. LIU is entitled to discover documents and communications concerning the modification, as these materials almost certainly will furnish evidence of the parties' understanding of the original MSA's meaning. Cameron's statements, if any, concerning the meaning of the MSA's indemnity provisions in connection with the modification would be admissions under Rule 801(d)(2) and thus non-hearsay. *See* FED. R. EVID. 801, 1972 Advisory Committee Notes ("Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule.").

Moreover, if Cameron intends to rely on the modified MSA at trial to show, for example, that the original indemnity provisions were somehow unclear or Cameron's rights under the original indemnity provisions were uncertain, LIU should be entitled to discover communications surrounding the modification to test this claim. Cameron should not be permitted to use the modified agreement as a sword while shielding from discovery communications explaining the circumstances leading up to the modification. Accordingly, the Court should compel Cameron to respond to LIU's request for production No. 8.

6

873210_1

B.  **The Court Should Compel Cameron to Produce All Documents Reflecting Communications with Marsh.**

Cameron has redacted and/or withheld many documents directly responsive to Request No. 2 on which Marsh representatives are copied.[1] Based on the documents produced to date, Marsh was actively involved both procuring the LIU policy and in mediating the dispute between Cameron and LIU related to the Cameron/BP settlement, including during the critical December 2011 timeframe. *See, e.g.*, LIU 10010, attached as Exh. K (documenting communications between LIU representative J. Engel and Marsh representative R. Howe). Cameron's communications with Marsh thus are highly relevant to the issue of whether LIU's position in settlement was reasonable and/or breached its policy. LIU has requested dates for depositions of many Marsh employees to explore these issues. Moreover, Marsh faces potential liability in the future for procuring a policy for Cameron that Cameron now says it did not want. Cameron's communications with Marsh are critical to expose any resulting bias.

Cameron contends that these critical documents are shielded from discovery by either the attorney-client or work product privileges. As the party asserting privilege, Cameron bears the burden to establish its applicability. *See B.G. Real Estate Servs., Inc. v. Am. Equity Ins. Co.*, No. 04-3408, 2005 WL 1309048, at *3 (E.D. La. May 18, 2005) ("[T]he party resisting discovery by asserting any privilege bears the burden of proof sufficient to substantiate its privilege claims and cannot rely merely on a blanket assertion of privilege."); *S. Scrap Material Co. v. Fleming*, No. 01-2554, 2003 WL 21474516, at *7 (E.D. La. June 18, 2003) ("The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it."). Cameron has failed to meet this burden.

---

[1] The specific Marsh personnel listed in Cameron's redaction log include Rusty Lee, Robert Howe, Steven Fraser, and Timothy Kenny.

7

First, Cameron claims that certain communications with Marsh and/or on which Marsh was copied are shielded by the attorney-client privilege, although no attorney is copied on many of the documents at issue and at least one (CIC 0000310) is dated April 2010, long before the coverage dispute with LIU arose.[2] Citing article 506 of the Louisiana Code of Evidence, Cameron contends that Marsh

> qualifies as a 'representative of the client' because it is an entity 'having authority to obtain professional legal services, or to act on advice so obtained, on behalf of' Cameron, and because it is an entity that made and received 'confidential communication[s] for the purpose of effectuating legal representation for' Cameron.

Cameron's regurgitation of the language of article 506, without more, is insufficient to meet its burden to establish that the attorney-client privilege applies. Cameron has made no evidentiary showing whatsoever that Marsh qualified as its "representative," because it was either (1) authorized to "obtain legal services" for Cameron or to "act on advice so obtained" or (2) made and received confidential communications for the purpose of effectuating Cameron's legal representation, while acting in the scope of its employment for Cameron. In contrast, in *Exxon Corp. v. St. Paul Fire & Marine Insurance*, 903 F. Supp. 1007, 1009-10 (E.D. La. 1995), on which Cameron relies, the party claiming the protections of the attorney-client privilege with respect to communications shared with a broker provided deposition testimony and an affidavit to support its privilege claim. *See also In re Tetra Tech., Inc. Sec. Litig.*, No. 4:08-cv-0965, 2010 WL 1335431, at *5 (S.D. Tex. 2010) (communications with broker are shielded by the attorney-client privilege *only if* they are "'made for the purpose of facilitating the rendition of professional legal services to the client'"); *Royal Surplus Lines Ins. Co. v. Sofamor Danek Group, Inc.*, 190 F.R.D. 463, 486 (W.D. Tenn. 1999) (deciding to conduct *in camera* inspection of

---

[2] *See, e.g.,* CIC 0000310, CIC 0009028-34, CIC 0009035-41, CIC 0009042-50.

8

communications with broker to determine whether they were "for the purpose of securing legal advice" or merely "routine business communications"). Absent such evidence, Cameron has not shown that Marsh qualifies as its "representative," such that the attorney-client privilege applies.

Cameron also claims that certain communications with Marsh are subject to the work product doctrine because they purportedly "reflect the legal advice and strategy of Cameron's litigation counsel[.]" *See* Exh. F. The work product doctrine shields from discovery only documents "prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. Proc. 26(b)(3)(A). As Cameron argued in its recent motion to compel (Rec. Doc. No. 9618), a document is only entitled to work product protection if "the primary motivating purpose behind [its creation] was to aid in possible future litigation." *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981); *see also Bonneau v. F&S Marine, Inc.*, 2010 WL 1254552, at *2 (E.D. La. 2010) ("If the document would have been created regardless of whether litigation was expected to ensue, the document is deemed to have been created in the ordinary course of business and not in anticipation of litigation."). Moreover, the work product doctrine does not apply where a party shows "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A)(ii).

Here, Cameron has not met its burden to show that the primary motivating purpose behind creation of the Marsh documents was to aid in litigation, as opposed to some other routine business purpose. As the party procuring the policy, Marsh likely communicated with Cameron concerning its provisions. These communications are "routine business communications" that LIU is entitled to discover. Likewise, Marsh's communications with

9

Cameron attempting to mediate the Cameron/LIU dispute likewise may have been for the routine purpose of furthering its business relationship with Cameron and *not* to aid in possible future litigation with LIU. Cameron's mere recitation that the documents "reflect[] mental impressions and litigation strategy" simply does not satisfy its burden to show that the privilege applies and the documents therefore should be produced. At minimum, the Court should review the Marsh communications *in camera* to determine whether the privilege applies. Moreover, even if the doctrine applies, LIU has shown that it has substantial need for the materials to prepare its case and cannot obtain their substantial equivalent by other means. For these reasons, the Court should order Cameron to respond fully to LIU's Request No. 3.

## C. The Court Should Compel Cameron to Produce All Communications with its Other Insurers.

Cameron itself has placed at issue its other insurers' conduct throughout the Cameron/BP settlement negotiations to show that the other insurers honored their contractual obligations while LIU purportedly did not. Cameron actively has pursued discovery from the other insurers and apparently intends to rely on "other insurer" evidence including, without limitation, (1) letters sent by the other insurers to LIU criticizing LIU's settlement position;[3] (2) deposition testimony from other insurers' adjusters;[4] and (3) documents produced by the other insurers pertaining to their settlement communications with Cameron.[5] While LIU does not necessarily agree that all of this "other insurer" evidence is relevant or admissible, LIU is entitled to fully explore all communications between Cameron and the other insurers to defend against Cameron's claims.

---

[3] Rec. Doc. No. 6287, at ¶¶ 56-57.
[4] *See* Exh. H.
[5] *See* Exh. I.

Cameron has not fully responded to LIU's Request No. 2 seeking "[a]ll documents and communications between [Cameron] and any of [its] insurers relating to Cameron's claim for coverage for liabilities arising out of the Deepwater Horizon incident, an insurer's payment on Cameron's claim, or this lawsuit." Among other things, Cameron has not produced its settlement agreements with the other insurers, although it specifically alleged in the complaint that the other insurers paid the $250 million BP settlement, unlike LIU. Rec. Doc. No. 6287, at ¶ 59. Based on this allegation alone, LIU is entitled to learn exactly what the other insurers paid and under what terms. Cameron has never claimed its communications and settlements with the other insurers are privileged; nor could it, given its own reliance on "other insurer" evidence in this matter. Indeed, Cameron recently agreed to produce selected documents pertaining to its settlement agreements with other insurers but has not done so at the time of filing. To the extent any insurer objects to Cameron's production of responsive documents, this should not prevent Cameron from making the required production. No party ever has identified any confidentiality agreement or protective order precluding Cameron from complying with LIU's request. Accordingly, Cameron should be ordered to produce all documents responsive to this request, including copies of any settlement/release agreements with the other insurers.

### D. Cameron Should Be Ordered to Produce a Privilege Log of Documents Withheld from Production.

Rule 26(b)(5) of the Federal Rules of Civil Procedure requires parties withholding information otherwise discoverable based on privilege to "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or

protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5). The Court's Pre-trial Order No. 14 likewise establishes requirements pertaining to parties' production of privilege logs. Cameron and LIU have conferred repeatedly concerning appropriate parameters for the parties' privilege logs in this dispute, which arose more than a year after the Deepwater Horizon incident. Earlier this month, LIU proposed that both parties log all documents dated between October 1, 2011 and December 31, 2011 that were redacted or withheld based on privilege. *See* E-mail, attached as Exh. J. LIU produced a 195-page supplemental privilege log on May 20 complying with these parameters. While Cameron has proposed alternative parameters for the parties' logs, Cameron has not produced a privilege log to date and instead has produced only a 15-page redaction log. *See* Exh. D. So that LIU can evaluate Cameron's claim(s) of privilege, the Court should compel Cameron to comply with Rule 26(b)(5) and produce a privilege log complying with LIU's proposed parameters.

### III.  CONCLUSION

Cameron has withheld critical documents directly responsive to LIU's discovery requests and has not met its burden to show that the documents are shielded by privilege. For these reasons, the Court should order Cameron to (1) produce all documents responsive to LIU's Request Nos. 2, 3, and 8 and (2) produce a privilege log meeting the parameters proposed by LIU.

873210_1

Respectfully submitted,

/s/ Judy Y. Barrasso
Judy Y. Barrasso, 2814
Celeste Coco-Ewing, 25002
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
504.589.9700 (Telephone)
504.589.9701 (Facsimile)

and

Christopher W. Martin, PRO HAC VICE
Federal I.D. 13515
Gary L. Pate, PRO HAC VICE
Federal I.D. 29713
808 Travis, Suite 1800
Houston, Texas 77002
713-632-1700 (Telephone)
713-222-0101 (Facsimile)

Attorneys for Liberty International
  Underwriters, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 7th day of June, 2013.

/s/ Judy Y. Barrasso

873210_1