

SUTHERLAND ASBILL & BRENNAN LLP

1001 Fannin, Suite 3700

Houston, Texas 77002

713.470.6100  Fax 713.654.1301

www.sutherland.com

**DAVID A. BAAY**
DIRECT LINE: 713.470.6112
E-mail: david.baay@sutherland.com

June 4, 2013

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

    Re:    MDL No. 21789 – Expert Deposition of Robert Turlak

Dear Judge Shushan:

    Transocean respectfully requests that the Court deny BP's request to reconsider and amend the portion of the May 20, 2013 Order Regarding Allocation of Examination Time – Source Control Experts (Rec. doc. 10193) that concluded Rob Turlak would not be deposed for a third time.  As the Court acknowledged, Mr. Turlak has already given four days of testimony – two days in his personal capacity and two more days as a representative for Transocean.  Given that Mr. Turlak's only involvement with the *Deepwater Horizon* occurred after April 20, 2010 as a member of the BP-led capping team, both depositions focused almost exclusively on Phase 2 issues.

    On May 1, 2013, Transocean identified Mr. Turlak as a Rule 26(a)(2)(C) Expert Witness who may provide opinion testimony regarding the BOP-on-BOP and Capping Stack source control options.  Transocean did so out of an abundance of caution.  Mr. Turlak's testimony regarding these topics stems directly from his experience serving on the BP-led capping team and his work on construction of the BOP-on-BOP and Capping Stack options.  Thus, his testimony about the availability, timing, and benefits of these options should qualify as fact witness testimony.

    Assuming, however, for the sake of argument that Mr. Turlak's testimony qualifies as opinion testimony, any opinion testimony Mr. Turlak might offer at trial would be squarely within the four corners of the testimony he already has provided at his two previous depositions.  Thus, Mr. Turlak may testify regarding:

By Electronic Mail
June 4, 2013
Page 2

1. When the *Discoverer Enterprise* BOP-on-BOP, *Development Driller II* BOP-on-BOP, 2-Ram Capping Stack, and 3-Ram Capping Stack could have been constructed and ready for deployment at the Macondo well.

    a. The *Discoverer Enterprise* could have been constructed and ready for deployment by the middle of May 2010 had BP not reassigned the *Enterprise* to a different project (*e.g.*, Sept. 2011 Dep. at 141:25-142:3; Nov. 2012 Dep. at 364:5-10, 370:8-12, 545:9-22).

    b. The *Development Driller II* BOP-on-BOP could have been constructed and ready for deployment in early June 2010 (*e.g.*, Nov. 2012 Dep. at 548:12-549:14).

    c. The 2-Ram Capping Stack could have been constructed by the end of May and deployed in the first few days of June 2010 (*e.g.*, Sept. 2011 Dep. at 121:2-122:18; 123:18-124:1).

    d. The 3-Ram Capping Stack was constructed and ready for deployment by the middle of June 2010 (*e.g.*, Sept. 2011 Dep. at 127:16-23; 155:25-156:25).

2. Whether the BOP-on-BOP options and 2-Ram Capping Stack could have been effectively deployed and shut in the Macondo well.

    a. The supposed risks associated with removing the *Deepwater Horizon* LMRP had been mitigated and should not have prevented deployment of a BOP-on-BOP (*e.g.*, Nov. 2012 Dep. at 237:18-240:14, 401:4-404:15).

    b. The BOP-on-BOP and 2-Ram Capping Stack were capable of monitoring pressure, and if needed, managing or venting pressure build up (*e.g.*, Sept. 2011 Dep. at 131:8-16, 140:4-141:21, 376:15-24, 392:8-393:18; Nov. 2012 Dep. at 545:23-547:14).

    c. The BOP-on-BOP offered several benefits over the Capping Stack, including being a proven solution, being already assembled and requiring slight modification, offering direct communication to the surface via MUX cables, and being able to monitor the shut-in well directly through pressure and

By Electronic Mail
June 4, 2013
Page 3

        temperature sensors already installed on the BOP stack (*e.g.*, Sept. 2011 Dep. at 140:4-141:21; Nov. 212 Dep. at 193:25-195:8).[1]

Because this testimony and the bases for it have been disclosed, and because BP has already had two opportunities to question him on these issues, there is no need to depose Mr. Turlak for a third time.

BP's reliance on this Court's recent determination that Dr. Tom Hunter would be required to appear for an expert deposition is misplaced. There are important differences between Dr. Hunter and Mr. Turlak. First, the opinions to be offered by Mr. Turlak have been fully disclosed and were the subject of four days of deposition questioning. The primary reason for Dr. Hunter to sit for a second deposition was to allow for a clear record of Dr. Hunter's opinions. The subjects of Mr. Turlak's testimony were clearly disclosed in Transocean's May 1, 2013 designation and his four days of deposition testimony, and were reiterated in this letter. Second, Mr. Turlak is solely a source control witness and does not offer any quantification opinions. The Court has commented that the Phase 2 trial will be mostly focused on expert testimony related to quantification (Rec. doc. 9586). This testimony will likely include the appropriateness of complex calculations and modeling and the inputs for those calculations and models. Such complexity is not present in the source control discussion and the need for a separate expert deposition is greatly reduced. Third, Mr. Turlak has already been presented for four days of testimony versus Dr. Hunter's two days. No witness in this case has been forced to sit for three depositions on virtually the same set of topics.[2] In addition, Mr. Turlak was deposed in November 2012 after BP and the other parties had an opportunity to depose most of the Transocean and other members of the BP-led capping team.[3] Dr. Hunter was deposed in the middle of the Phase 2 schedule and the other parties have not had a chance to depose many of the DOE NNSA lab members who provided input to the calculations on which Dr. Hunter will opine. An additional expert deposition of Mr. Turlak would be cumulative and is unnecessary.

Finally, BP's claim that it and the other parties had no opportunity or reason to explore Mr. Turlak's opinions in previous depositions is disingenuous. Given Mr. Turlak's lack of involvement in Phase 1 issues, BP's lawyers carefully explored Mr. Turlak's Phase 2 opinions at both depositions. For example, at his November 2012 deposition, BP explored the following areas:

---

[1] To be clear, in listing these topics, Transocean does not concede that they represent opinion testimony rather than fact witness testimony.
[2] Graham Vinson sat for three depositions but those depositions covered different issues.
[3] Most of the members of the BP-led capping team, including Transocean, Cameron, BP, and other contractors, were deposed as fact witnesses in Phase 1 and testified to Phase 2 issues. Others, such as Richard Brainard, were deposed at the beginning of the Phase 2 schedule.

By Electronic Mail
June 4, 2013
Page 4

- When the BOP-on-BOP could have ready (*e.g.*, 370:8-375:14, 384:18-387:23, 404:9-406:4, 450:18-455:10);

- The modifications needed to construct, and the time frame for deploying, the Capping Stack (*e.g.*, 389:8-391:24, 425:11-443:17, 446:19-450:1);

- The shift from the *Enterprise* BOP-on-BOP to *DDII* BOP-on-BOP (*e.g.*, 370:20-24, 392:6-394:10);

- The supposed risks associated with deploying a BOP-on-BOP and removing the *Deepwater Horizon* LMRP, including stability, plume impact, stabbing, LMRP release, and deployment vessels (*e.g.*, 378:22-384:11, 397:11-404:8);

- The ability and need for a vent on the BOP-on-BOP and Capping Stack (*e.g.*, 386:8-388:15); and

- Communications with the United States government that Mr. Turlak was not a part of or aware of (*e.g.*, 406:5-407:12; 417:17-424:1; 443:18-446:18).

Further, Mr. Turlak was Transocean's Rule 30(b)(6) designee and testified on the following topics:

- Your position as to whether, and exactly, when BP or the Unified Command should have prepared or attempted any particular Source Control Effort;

- Your knowledge of and involvement in the identification, design, planning, fabrication, testing, selection, and/or approval of the use of a second blowout preventer as a means to control or cease the flow of oil and gas from the MC252 Well;

- Your knowledge of and involvement in the identification, design, planning, fabrication, testing, selection, and/or approval of the use of a capping stack as a means to control or cease the flow of oil and gas from the MC252 Well; and

- All knowledge or information that Transocean has relating to the conduct of any other party with regard to the reasons why the flow of hydrocarbons from Macondo was not curtailed until July 2010.

By Electronic Mail
June 4, 2013
Page 5


Given Mr. Turlak's involvement in the BP-led capping team and designation as a corporate representative on the topics above, BP had reason to – and did in fact – discern and explore the four corners of Mr. Turlak's opinions.

      For the reasons stated above, Transocean requests that the Court deny BP's request to depose Mr. Turlak for a third time. All parties, including BP, have had ample opportunity to question Mr. Turlak. Any additional testimony will merely rehash the issues explored in his previous two depositions and will be unnecessarily cumulative.


                                                Very truly yours,

                                                _____/s_____
                                                David A. Baay

DAB