IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 |
| | | SECTION J |
| This document relates to all actions | * * * | HONORABLE CARL J. BARBIER |
| | * * * | MAGISTRATE JUDGE SHUSHAN |

| | | |
|---|---|---|
| Bon Secour Fisheries, Inc., et al., on behalf of themselves and all others similarly situated, | * * * * | Civil Action No. 12-970 |
| | | SECTION J |
| Plaintiffs, | * * | |
| | | HONORABLE CARL J. BARBIER |
| v. | * | * |
| BP Exploration & Production.: BP America Production Company; BP p.l.c., | * * * | MAGISTRATE JUDGE SHUSHAN |
| Defendants. | * | |

## CLAIMANT'S BRIEF IN SUPPORT OF MOTION FOR ENJOIN

NATURE AND STAGE OF THE PRECEEDING, The Claimant presently has three motions[2] pending before this Court; (1) Motion of Review; (2) Motion of Clarity; and (3) Motion to Amend which would affect the innate processing of the Claim(s) of the Claimant and if not properly processed within the context of the Court doctrine could adversely affect the initiatives of the Claimant with complete and irreparable disregard for the true meaning of the Court doctrine which governs the processing of the Claimant's claims. To the Court, the Claims Administrator has professed[3] in stating, "Mr. Boothe argues that he is required to submit only the documents listed in Exhibit 4E and not those mandated by Exhibit 4A", which is true. The mandate referred to is Policy

---

2  S.A. 18.1 "..... Any disputes or controversies arising out of or related to the interpretation, enforcement, or implementation of the Agreement and the Release shall be made by motion to the Court. ......"

3  Response by the Claims Administrator to Motion By Claimant H. Freddie Boothe, Jr., page 6, opening paragraph. Filed April 4, 2013.

3

Rule 323[4] which is the subject of the Motion to Amend, filed May 20, 2013 by the Claimant in this Court. However, Policy ID 323 is in contrast to Policy ID 55, a policy also issued by the Claims Administrator, wherein ID323 changes review from 6430, 4E to 6430, 4A and ID55 requires all businesses with causation resulting from a spill related cancellation to be processed entirely within 4E which forces a claim review to breach the constraints of certain Court Doctrines . This issue is presently before the Court, however, on May 21, 2013 the Claimant received a telephone call from a person identifying himself as Mr. Kyle Chatelain, a CPA who states the claim has been placed in Claims Review and he needs additional information to support the claim; (1) a letter of cancellation from the Millennium Group, LLC. supporting the contract cancellations; and, (2) confirmation as to the amount the claimant has been paid on each contract. The Claimant asked Mr. Chatelain why was he calling in regards to this claim as there are some issues presently before the Court which are still pending. After being placed on hold for some time, the claimant was told by Mr. Chatelain, he was directed only to determine a "claim Loss" for the claim, yet, his actions proof this to be false.

The Claims Administrator states, "All Claimants submitting any kind of BEL claim are required to submit the documents required by Exhibit 4A, including the documents a claimant must submit if he or she is claiming a loss for a Spill-related Cancellation." This claim of the Administrator is refuted by Policy ID No.55 dated May 24th 2012 which states in part, "Businesses that establish causation by demonstrating a Spill-related cancellation are compensated solely pursuant to Exhibit 4E..... " a policy which is borne from the Claims Administrator Decision. In fact the only documentation required alien to S.A. 6430 Exh. 4E[5] is identified in S.A. 6430 Exh4E ¶ A which is limited to causation documents required by S.A. 6430 Exh. 4B, Section II.D or Section

---

[4] Policy Rule 323, enacted on January 15, 2013 by the Claims Administrator which states; "The Claims Administrator interprets the provisions of the Settlement Agreement such that the document requirements in Exhibit 4A apply to claimants with Business Economic Loss claims attempting to recover for canceled contracts or canceled reservations under Exhibit 4E."

[5] In Document 9150 – Response by the Claims Administrator to Motion By Claimant H. Freddie Boothe, Jr., the Administrator acknowledges the claim of the Claimant is canceled contract claim and thereby fits within the framework of S.A. 6430 – Ex. 4E. (Refer to Doc. 9150, page 1, Art. 1, Paragraph A.)

III.D and/or Section II.B or Section III.B. Claimant submitted a cancellation letter which cancels the project yet does not name the architect. Claimant submits a letter of cancellation which "reconfirms" the original cancellation which is not dated. However, the letter references the original cancellation documentation included with the filing of the claim.

## SUMMARY OF ARGUMENT

In the Response by the Claims Administrator to Motion By Claimant H. Freddie Boothe, Jr., the Claims Administrator advises the Court, "Mr. Boothe should be directed to follow the procedures of the Settlement Agreement for the processing and final determination of his claim." In actuality this is all Mr. Boothe wishes to do, follow the procedures of the Settlement Agreement without interference and manipulations applied by others which alter, change and amend the Settlement Agreement without due process. Wherein the Claimant provided the material (Refer to Exhibit E1 and Exhibit E2) Mr. Chatelain requested only to have Mr. Chatelain post an "Incompleteness Notice" citing deficiencies in the documents tendered. This action contradicts the purpose Mr. Chatelain stated was the true reason for the call, "to determine a Claims Loss" amount. Instead Mr. Chatelain became analytical with the documents submitted, and in the Incompleteness Notice quotes language from 6430 Exhibit 4B as the underlying reason for the document to fail (Refer Exhibit E3). This action totally disregards the initiative of the Claimant in the action requested of the Court in the motions presently pending before the Court. Particularly, since these elements where not at issue on April 4, 2013 when the Claims Administrator filed an answer before the Court in response to Claimant's motions now pending. Furthermore, this action leads the Claimant to ponder the true intent of the call and the resulting "Incompleteness Notice"; more important, to ponder just how this action fits inside S.A. 6430, 4.3.7 and 4.3.8 and 4.3.10. A similar event was experienced in March of 2013 with the same results (Refer to Exhibit E5).

Furthermore, The Claimant maintains each claim should standalone, as each contract stands independent of the others as each represents financial arrangements, as well as, site

5

specific obligations of the Claimant which inherently stand alone. The reviewer(s) consistently consolidate the claims, an act which is contrary to the independence of each claim, as the reviewer(s) requires causation of each contract independent of the others. In essence, the contracts, which form the basis of the accounting to establish a "claim loss" maintain independent financial obligations and accounting. The claimant believes the consolidating of the claims constitutes a direct and intentional act to prevent the Claimant from applying RTP's relative to the independence of each claim. These acts were consummated during the review process wherein the Claimant was place in "Compensation for Multi-Facility Businesses", S.A. 6430, Exh 5, in lieu of proper analysis under S.A. 6430 – Exh 4E as warranted. The web portal maintains the "current" status of all claims and as of the date of this writing gives evidence the claims are still being processed as "Compensation for Multi-Facility Businesses". Further, processing under "Compensation for Multi-Facility Businesses" allows the Claimant the opportunity to select processing options regarding the treatment of claims presented by the Claimant, these options where never made available to the Claimant. Consequently, a review of the evidence will reveal the reviewer(s) were never acting in the best interest of the Claimant.

In the opinion of the Claimant the repeated actions of the reviewers constitute a direct and intentional harassment of the Claimant for insisting on a strict adherence to the actual Court Doctrine as opposed to a biased interpretation of the Court Doctrine. The only manifestation from these activities is the creating of a significant time delay waiting on the expiration of the "Incompleteness Notice" allowable response time resulting in a closure of the claim, a scenario which has been repeated a number of times as evidenced by the information posted on the web portal page(s) of the Claimant. Further, it appears the Claims Administrator creates Policy Rules as a matter of convenience and which tend to be self-serving. There are over two hundred Policy Rules put in place after the June 4th 2012 claims intake window opening. For instance, Policy ID 55 (See Exhibit E4) with an Active date of May 24th 2012 states, "Businesses that establish causation by demonstrating a Spill-related cancellation are compensated solely pursuant to Exhibit

4E and are not entitled to any compensation pursuant to Exhibit 7A (the Framework for Start-up Businesses)", yet, when evaluating the Claim ID 9327 the Reviewer(s) cite information taken from Policy ID 323 (Active date of January 15th 2013) and consequently insist on review pursuant to Exhibit 4A instead of Exhibit 4E. Should the reviewer, Mr. Chatelain, adhere to the philosophy of ID 55 and the ideology of Exhibit 4E for compensation it would have been relatively easy for a "claim loss" determination. It can only be deduced, the reviewer is playing this "obstructionist" role merely to delay the completion of the processing of the claims as presented, a role which runs contrary to the testament of the issues as presented in the Claims Administrator's Response to the Claimant's motions pending before this Court wherein the Claims Administrator acknowledges the claims are "missing" only monthly accounting issues and a 2011 tax return[6].

During the history of the claims which form the basis of all claims of the Claimant, the Claimant has asked many questions without one response from the reviewer(s). Only in the last few months has there been any type of transparency in the review process. The documents existing on the web portal of the Claimant clearly establish evidence of these allegations of the Claimant, as well as, furnish evidence the claims are not being processed within the context of the Settlement Program and in particular *S.A. 6430*.

The Claimant has sought to avoid all controversy by keeping within the context of the Court Doctrine while the Claims Review Process has continuously misapplied false interpretations of the court documents which adversely affect the Claimant, (in actuality, all Claimants) and, therefore, pushed the controversy into the hands of the Court. To resolve all issues and negate further adverse developments, the Claimant proposes a settlement arrangement to all claims presently filed in regards to the Deepwater Horizon Spill in the Gulf of Mexico on April 20th 2010 and concurrent herewith attaches Exhibit S1 as a viable and just settlement of the issues which is consistent with the Court Doctrine.

## CONCLUSION

---

[6] 2011 tax return was tendered to the Chef Hwy Intake Center.

Claimant has issued many writings and posted same to the web portal which fully explain the position of the Claimant on all issues involved with the merit of the claims submitted by the Claimant to no avail. Continued dialogue with the review staff and/or any affiliates thereof appear to be futile, and, consequently, serve no valuable purpose. The issues involved are not ambiguous and to find ambiguity is to ignore the literal meaning of the Court Doctrine. Piecemeal resolution of the parties disputes in different fora does not just eviscerate the benefits and efficiencies of the Court Doctrine, it achieves a contrary result. Under Court Doctrine the Claimant is not except from taking the measures evidenced by the motions filed and therefore, from asking for specific performance of the issues alien to the BP Claims Center, particularly when the issues have become convoluted within the parameters established by the Claims Administrator. There are no questions or remedies which can manifest which cannot be addressed by this Court in strict compliance with the Settlement Program over which the Court maintains jurisdiction.

Therefore, the claimant first identified herein, ask the Court to consider the facts contained and delineated herein, and/or as appropriate, during the review of material evidence submitted and brought forth in the original Motions in support of the issues presented by the Claimant in the original Motions, and, consequently, to enjoin the BP Claims Center as requested, arising from merit established herein.

DATE: June 10, 2013

Respectfully Submitted,

/s/ H. Freddie Boothe, Jr., Architect
In proper person
14248 Highway 1077
Folsom, Louisiana   70437
504-473-9502

8

Certificate of Service

I, hereby certify that I have served a copy of this document on all counsel of record either in person, or by electronic transfer, or by mailing it postage prepaid on this _____ day of _____ 20____.

H. Freddie Boothe, Jr., Pro Se.

Stephen J. Herman
Herman Herman Katz & Cotlar
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Sherman@hhkc.com

James P. Roy
Domengeaux Wright Roy & Edwards
556 Jefferson Street
Lafayette, La. 70502
jimr@wrightroy.com

Richard C. Godfrey
Kirkland & Ellis LLP
300 North LaSalle Blvd
Chicago, IL 60654
rgodfrey@kirkland.com

R. Keith Jarrett
Liskow & Lewis
Suite 5000 One Shell Square
701 Poydras Street
New Orleans, La. 70139
rkjarrett@liskow.com