**EXHIBIT E1**

# THE MILLENNIUM GROUP, I, LLC.
P. O. Box 51586
New Orleans, La. 70151
504-846-4060

Mr. H. Freddie Boothe, Architect
14248 Highway 1077
Folsom, Louisiana, 70437

Re: Projects canceled

Dear Mr. Boothe:

We are reconfirming to you that the following projects we had pending at the time of the BP Oil Spill were cancelled as a direct result of the spill that had negatively impacted  the projects and our ability to move forward with them as viable developments.

The 3 projects affected by the BP Oil spill were all located directly on the Gulf of Mexico and the Mississippi Sound. We cancelled your contract effective within a few weeks after the spill when we learned the magnitude of the spill along the Mississippi and Florida Coastlines.

We cancelled the Coquina Caye project in Perdido Key, Florida that was located right on the Gulf of Mexico and actually had oil all over the subject property. We also cancelled your contract and work on the Copper Penny Casino Project on the beach and marina in Biloxi, Mississippi . The third project we cancelled with you as our architect was the Pelican Point Project on the beach in Longview/Pass Christian. Had it not been for the BP Oil spill and its' direct impact on our properties we would have continued our developments. And as you know we already had our Coquina Caye Project completely sold out with pending contracts and deposits.

We regret having had to cancel your contracts, but we were left with no other alternatives.

Sincerely,

Guy W. Olano, CFO

THE MILLENNIUM GROUP I, LLC
P.O. Box 51586
New Orleans, La. 70151
504-846-4060

Mr. H. Freddie Boothe, Architect                                June 7, 2013
14248 Highway 1077
Folsom, Louisiana, 70437

Re: Cancellation Date of Contracts

Dear Mr. Boothe:

   We have previously supplied you with our information concerning the
cancellation of our professional contracts with you as a result of the BP Oil Spill.
   Please be advised that our records reflect that we advised you verbally on
June 12, 2010 that all of our projects along the Gulf Coast were being cancelled as
a result of the BP Oil Spill. We followed up that phone call with a letter advising
you of our cancellation of your professional contracts. These cancellations were
the sole result of the BP Oil Spill and the tremendous negative impact it had on
our subject locations.

                                    Sincerely,

                                    Guy W. Olano, Jr., CFO

**EXHIBIT E2**

THE MILLENNIUM GROUP I, LLC
P.O. Box 51586
New Orleans, La. 70151
504-846-4060

Mr. H. Freddie Boothe, Architect                                        June 1, 2013
14248 Highway 1077
Folsom, Louisiana,  70437

Re: Payments made for Professional Services

Dear Mr. Boothe:

We are sorry for the delay in responding to your request for confirmation of compensation paid to you on the projects we had pending at the time of the BP Oil Spill. We had to retrieve records from our storage warehouse.

Here is what our records reflected:

Coquina Caye: we were invoiced in 2007 for $30,000 which constituted the interior design portion of our agreement. We tendered payment to you in the amount $20,000.00 in 2007, then another $10,000.00 in 2008. We were invoiced from you for the building shell portion of the agreement in the amount of $40,000.00. We paid an initial payment of $20,000.00 in 2007 followed by our final payment of $20,000.00 in 2008. Although our agreement called for you to submit 2 other invoices for continued work, we never did receive any for this project.

Pelican Point: we were invoiced twice on this project. The first invoice was for the interior design portion of our agreement for professional services. The second invoice was for the shell design portion of the agreement. Invoice 1 was in the amount of $50,000.00. We made 3 payments to you on this invoice: 2004 we paid $15,000.00 as the initial payment, thereafter in 2005 we paid $25,000.00 and in $10,000.00 in 2007. We received the second invoice from you in the amount of $50,000.00. We made the following stage payments to you: $20,000 in 2004; $10,000.00 in 2006; and another in the amount of $20,000 .00 in 2009. Although there were to be two subsequent invoices for continuous work we are unable to find a record of having received those.

Copper Penny Casino : Although extensive design work was performed by you, we have never remitted any payments to you for that work.

Sincerely,

Guy W. Olano, Jr., CFO

**EXHIBIT E3**



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

## FOLLOW-UP INCOMPLETENESS NOTICE
### DATE OF NOTICE: May 31, 2013
### DEADLINE FOR RESPONSE: July 1, 2013

### I. CLAIMANT AND CLAIM INFORMATION

| Claimant Name | Last<br>HUSTON FREDDIE BOOTHE, JR. ARCHITECT | First | Middle |
|---|---|---|---|
| Claimant ID | 100011039 | Claim ID | 9327 |
| Claim Type | Business Economic Loss | | |
| Industry Designation | Non-Tourism | Economic Loss Zone | Zone D |

### II. INCOMPLETENESS EXPLANATION

This is an official Notice from the Claims Administrator of the Deepwater Horizon Economic and Property Damages Settlement Program ("Settlement Program") and relates to the claim identified in Section I. We previously sent you an Incompleteness Notice because you were missing documents or information that the Economic and Property Damages Settlement Agreement ("Settlement Agreement") written by Class Counsel and BP requires you to submit before we can evaluate your claim. Since then, you either: (1) sent in some additional documents, but there are still documents missing that the Settlement Agreement requires us to have before we can review your claim; or (2) did not submit any new documents to complete your claim. The Settlement Agreement requires us to ask you to submit those materials if you have not done so. This Notice explains what your claim is missing and contains tips for how you can obtain the required documents or information. We are available to help you if you have questions or need assistance. Submit the following documents and/or information no later than the Deadline for Response listed at the top of this Notice so that we may evaluate your claim. You must submit all of the documents you plan to submit at one time so that they are all in your file when we review your claim. If you need more time to collect these materials, let us know. If you already have sent in these materials, let us know, for they may have come in after we did our last review. Also, if you use an internet Portal to exchange information with us, you should check your Portal for any documents that you have submitted to see if they are labeled as Bad/Corrupt Documents and to make sure that they are legible and not password protected. If you cannot open or read the documents on the Portal, then we cannot use those documents to evaluate your claim and you should upload new documents.

Some of the requests listed below may not have appeared on the Incompleteness Notice. We are including the new requests along with prior requests so you can submit all of the required information at once when you respond to this Notice.

| | WHAT YOU NEED TO SUBMIT | EXPLANATION |
|---|---|---|

| | | |
|---|---|---|
| 1. | We have received a signed statement containing information about cancelling the contracts in the file for this claim (Doc. 10449691). However, this document is not an affidavit and there is no date on the document to determine if it is contemporaneous evidence of the cancellation of contracts. Therefore, this document does not cancel the contracts on file for this claim.<br><br>Per the Settlement Agreement, the following is required: "The claimant provides contemporaneous written evidence of the cancellation of a contract as the direct result of the spill that claimant was not able to replace. In the absence of contemporaneous written evidence, the claimant must present an affidavit from an independent third party affirming that the cancellation was spill-related."<br><br>In addition, documentation of all payments received for each contract is required to process this claim. | We cannot evaluate your claim in the way the Settlement Agreement requires us to do unless you submit these documents. |

## III. HOW TO CONTACT US WITH QUESTIONS OR FOR HELP

If you have any questions about this Notice or the status of your claim(s) or need help, contact the Claimant Communications Center at 1-800-353-1262 or send an email to **Questions@dhecc.com**.  If you are a law firm or claims preparation company, you should call or email your designated DWH Contact for help or assistance.  You also may visit a Claimant Assistance Center and talk with one of our representatives. For a complete list of Claimant Assistance Centers, go to **www.deepwaterhorizoneconomicsettlement.com**.

## IV. HOW TO RESPOND TO THIS NOTICE

Submit your additional documentation online by uploading it to your DWH Portal.  If you do not use the DWH Portal, you may submit documents in any of the following ways, but be sure to write your Claimant ID on the top page of all documents you submit.

| | |
|---|---|
| **By Mail**<br>(Postmarked no later than your Response deadline) | Deepwater Horizon Economic Claims Center<br>PO Box 1439<br>Hammond, LA 70404-1439 |
| **By Overnight, Certified or Registered Mail or Overnight Delivery**<br>(If mail, postmarked no later than your Response deadline; if other overnight delivery, placed in the custody of an overnight carrier by your Response deadline) | Deepwater Horizon Economic Claims Center<br>Claims Administrator<br>42548 Happy Woods Road<br>Hammond, LA 70403 |
| **By Facsimile**<br>(Sent no later than 12:00 midnight local time on your Response deadline) | (888) 524-1583 |
| **By Email**<br>(Sent no later than 12:00 midnight local time on your Response deadline) | ClaimForms@deepwaterhorizoneconomicsettlement.com |
| **Visit a Claimant Assistance Center**<br>(Delivered no later than your Response deadline) | You may take the required information or documents to a Claimant Assistance Center. |

## V. SUMMARY OF OTHER SUBMITTED CLAIMS

We received one or more additional Claim Forms from you that are not included or addressed in this Notice. This chart summarizes the status of those claims as of the date of this Notice. You will receive or have already received separate Notices for each additional claim. You may monitor the status of your other claims by using the DWH Portal. If you do not use the DWH Portal, contact us by one of the methods listed in Section III of this Notice to find out the current status of your other claims or use the "Check My Status" feature located on the homepage of the official Settlement Program website at **www.deepwaterhorizoneconomicsettlement.com**.

|    | Claim Type             | Claim ID | Claim Status                                  |
|----|------------------------|----------|-----------------------------------------------|
| 1. | Business Economic Loss | 5095     | Notice Issued After Review: Duplicate Claim   |
| 2. | Business Economic Loss | 9328     | Claim closed                                  |

**EXHIBIT E4**

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 55 | Claims Administrator's Approved Policy |
|---|---|

## I. Policy Information

| Policy Subject | Business Economic Loss Claims: Causation | | |
|---|---|---|---|
| **Active Date** | 5/24/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 4E | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

## II. Approved Policy

Businesses that establish causation by demonstrating a Spill-related cancellation are compensated solely pursuant to Exhibit 4E and are not entitled to any compensation pursuant to Exhibit 7 (the Framework for Start-Up Businesses).

**EXHIBIT E5**



14248 HIGHWAY 1077
FOLSOM, LOUISIANA 70437
PHONE: 504-473-9502

March 16, 2013

Deepwater Horizon Economic Claim Center
P.O. Box 1439
Hammond, Louisiana 70404-1439

Re:    100011039
       Claim 9327

On March 15, 2013 the Claimant identified above received a Follow-up Incompleteness Notice, attached hereto, which requires the submission of certain technical information regarding the "canceled contracts".

Architecture Practice Contract Cancellation History:

Throughout the 34 years or practice of architecture there has been numerous times a project has been canceled for one reason or another, i.e.; A contract between the State of Louisiana and the Architect (H. Freddie Boothe, Jr.) for an administration building for the campus of Southeastern Louisiana University in Hammond; a new school for the Trainable Mentally Retarded in Jefferson Parish for the Jefferson Parish School Board, to name a couple. Resulting from the cancellation of these projects there was no magical defacing of the original contract to indicate the actual document had been canceled, the document remained the same without physical change. The only evidence of contract canceled was a passed motion by the Jefferson Parish School Board canceling the project resulting from a court order and a notification from State of Louisiana Office of Facility Planning and Control concerning the cancellation of the Hammond project.   In essence, when the project died so did the contracts which existed thereunder. Consequently, why do you ask me for a copy of the "canceled contract" when same exist in the original documentation submitted with each claim?

Further, the Incompleteness Notice also ask for, "contemporaneous third-party evidence of the claimant's canceled contracts." The Notice reference doc ID 2411622 and alleges the document does not cancel the claimant's contracts. It is clear on the face of the referenced document the project is canceled as a direct result of the "little incident" (oil spill) and consequently, clearly the contract which existed between the parties extinguishes simultaneously with the canceling of the project, as with the projects shown in the above paragraph.  There has been no resurrection of the project which would contemporaneously breath new life into the dead and/or canceled contract. Further, the Notice request a "Sworn Written Statement" to be provided and it is my belief after reading of the whole document released by the Court as Doc. 6430, the sworn written statement is applicable in the absence of contemporaneous third-party evidence.

A request for "clarification of performance dates for these contracts" is also made in the Incompleteness Notice. It is my strong opinion, after examining the documents submitted with the original claim, the executed documents are dated. The date which appears on the contract(s) document(s) would, therefore, be the date the actually document commenced. Document ID 2411622, the contemporaneous third-party evidence of cancellation, also, is dated, therefore, the date contained therein would be the death date of the project and contemporaneously the death date of the contract. These two dates define a beginning and an end (alpha/omega) for the performance dates requested in the Incompleteness Notice.

Further, the Doc ID 2411622 references claim ID 5095 not 9327. Claim ID 5095 is the original claim as filed with GCCF and thus the primary claim. I question why this claim, which is accordingly complete, in my learned opinion, was not processed to completion and claims 9327 and 9328 placed on Incompleteness Notice pending additional information, if subsequently required. Of course, you will note all claims are between the same parties. Consequently, I request the original claim ID 5095 be processed to completion regardless of the status of the other claims respectively. Although it may appear on the surface, I am a greedy person, this certainly is not the case. I merely wished to receive all the Court anticipated in the writing of Court Doc 6430. My ultimate goal was to recover the amount shown on the claims respectively, a feat which would make me very happy. This claim got a little sideways with the three reviewers constantly adjudging the claims to be "duplicate claims", a fact which of course is not true and my claim status going absolutely nowhere for months. Also, the use of Doc ID 2411622 is not necessarily a good practice because the document does not (for some reason) include the drawings which were completed for the project, and, therefore, not complete as would be the original claim submission documents found elsewhere on the web portal. I also fail to understand why we (the claimant and the reviewer) cannot seem to work together on these issues, as is suggested by the Court Doc. 6430. As you should know, I have requested the Court provide clarity for certain aspects of Court Doc. 6430, 4E, which is not yet available as of this writing.

Some of these issues have previously been discussed with a reviewer and evidence of such should be available as all calls are recorded, correct. The reader of this document is encouraged to examine the motions filed (doc ID 7988919) with the Court having jurisdiction by the claimant on January 29, 2013, wherein, there exist a statement concerning a fear of reprisal in regards to the execution of the processing of this claim. The claimant believes this feeble request of documentation which exist within the context of the original claim is an example of the reprisal indicated within the motion and will so inform the Court.

With regards,

H. Freddie Boothe, Jr., Architect
State License No. 2206
www.freddieboothe.com



© ™

**EXHIBIT S1**

Proposed Settlement Agreement
Claimant ID 100011039
Claimant : H. Freddie Boothe, Jr., Architectural

Pursuant to the terms and conditions established in Deepwater Horizon Court Supervised Settlement Program and/or the terms and conditions established in Court Document 6430, the Claimant, H. Freddie Boothe, Jr., Architect proposes to settle all claims of record as of June 10th 2013 subject to final review by those having jurisdiction over the matters and issues involved under the supervision of the Court[1] to wit:

1.      Claimant establishes causation by demonstrating a Spill-related cancellation of contracts which were in place at the time of the Spill and would have been paid in the time frame delineated in the Court Document 6430. Causation is established under *S.A. 6430, Exh 4E* ¶ A. Causation is established for Claim No. 9327, 5095, and 9328 as presented.

2.      Claimant includes a copy of each contract in the filing of each claim which established explicit cost arrangements between the parties of the contract. Each contract establishes a budget and/or a budget range amount upon which the compensation for the contract would be established. For the purpose of this settlement arrangement, the claimant agrees to use the budget amount shown on the contract to establish a value, even when the value may have increased in actuality. Under the terms and conditions as set forth in the Contracts, the claimant can endure no cost, wherein, there are no variable expenses.

3.      Claimant furnishes verification of the amount paid on the contracts, which amount is included in original filing of the claim.

4.      Claimant prepares this settlement offer after complete analysis based on the Court Document 6430 and Exhibit 4E[2] in particular. The merits of the claims fall within the context of Court Doc. 6430 and Exhibit 4E and Claims Administrator Policy ID No. 55; even though Policy ID No. 323 establishes a conflict with Policy ID No. 55 and Exhibit 4E. The claimant believes the Claim Administrator lacks legal authority to alter, change and/or amend the Court Doctrine.

5.      Claimant establishes a "Claim Loss" commensurate with the text of Court Document 6430, Exh. 4E. For reasons stated in the motions pending before the Court the claimant uses the multiplier for damages for the claimant's industry consistent with the meaning of Exhibit 4E in reference to the "Claimant's industry" to establish total compensation[3] which is an aggregate of the "claim loss" and the "industry compensation" which is determined prior to applying any RTP for zone. Claimant choose the Benchmark Period of 2009 to establish the industry multiplier, even though the Court Document 6430 allows for a selection of a higher multiplier by selecting another time frame.

6.      Claimant establishes a Risk Transfer Premium (RTP) commensurate with Zone D for Table 1 analysis, even though claimant believes the contracts delineated a separate business activity which is "site specific" and would therefore exist in Zone A and, therefore, be consistent with the true meaning of the Court Doctrine.

---

1   S.A. 38.40   Court shall mean the United States District Court for the Eastern District of Louisiana, Judge Carl Barbier, presiding, in *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* MDL No.2179.

2   Claimant is directed to 6430, 4E after careful study of the document and Policy ID 55, dated 5/24/12.

3   S.A. 6430; 38.147.   Total compensation Amount shall mean the Compensation Amount plus any RTP and any other amounts due for any Claim less any applicable offsets under this Agreement or its Frameworks.

7.     Claimant has executed a Sworn Statement for each canceled contract to address the requirement he present documentation showing he was unable to replace the canceled contracts. Refer to Response By The Claims Administrator to Motion By Claimant H. Freddie Boothe, Jr. filed with the Court on April 4th 2013, page 6, paragraph 2.

8.     Claimant agrees to execute any and all releases and other related documents as described in and required by Court Document 6430.

Therefore, and in consideration of the of all the issues presented above, the Claimant submits the following table to properly delineate the criteria established in a mathematical format to determine an amount which represents a final " Total Claim Compensation Amount" which may be paid to the Claimant for any and all claims arising out of the Deepwater Horizon Spill.

| | CLAIM No. 9327 | | CLAIM No.9328 | | CLAIM No.5095 | | TOTAL |
| | SHELL | INTERIORS | SHELL | INTERIORS | SHELL | INTERIORS | ALL CLAIMS |
|---|---|---|---|---|---|---|---|
| GROSS AMT OF CONTRACT | $2,720,000.00 | $0.00 | $418,647.00 | $474,846.30 | $669,000.00 | $958,050.00 | $5,240,543.30 |
| VARIABLE EXPENSE | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| PAID TO DATE | $0.00 | $0.00 | $50,000.00 | $50,000.00 | $30,000.00 | $40,000.00 | $170,000.00 |
| BALANCE ON CONTRACT | $2,720,000.00 | $0.00 | $368,647.00 | $424,846.30 | $639,000.00 | $918,050.00 | $5,070,543.30 |
| Compensation Consistent with Claimant's Industry | $7,942,400.00 | $0.00 | $1,076,449.24 | $1,240,551.20 | $1,865,880.00 | $2,680,706.00 | $14,805,986.44 |
| Compensation Amount | $10,662,400.00 | $0.00 | $1,445,096.24 | $1,665,397.50 | $2,504,880.00 | $3,598,756.00 | $19,876,529.74 |
| RTP @ 0.25 Zone D | $2,665,600.00 | $0.00 | $361,274.06 | $416,349.37 | $626,220.00 | $899,689.00 | $4,969,132.43 |
| Compensation + RTP | $13,328,000.00 | $0.00 | $1,806,370.30 | $2,081,746.87 | $3,131,100.00 | $4,498,445.00 | $24,845,662.17 |

TABLE T-1

Table T-1 establishes a total compensation amount, inclusive of an RTP, in the amount of TWENTY FOUR MILLION EIGHT HUNDRED FORTY-FIVE THOUSAND SIX HUNDRED SIXTYTWO ($24,845,662) DOLLARS to be paid to the Claimant an amount the Claimant views as consistent with the Court Doctrine (although Claimant takes issue with the RTP of 0.25) for Claims establishing causation under *S.A. 6430-4E.*

9.     Should the Court find the argument presented within the Exhibits (Exhibit R2, page 10) to the Motion to Review and the Motion of Clarity concerning the Zone application for RTP is indeed Zone A as the Claimant contends the Compensation Amount[4] of $19,876,529.74 with a Zone RTP of 1.5, which is consistent with Zone A[5], the Total Compensation Amount would equal $49,691,324.35 (An amount even the Claimant finds to be *just* a tad ridiculous, but, conceivably within the context of the Court Doctrine), which also assumes the claimant's industry compensation prevails.

10.     Should the Zone RTP not be attributed to the claim and a base compensation amount of $5,070,543.00 be established and "damages consistent with the Claimant's Industry" be applied in the amount of $14,805,986 the Total Compensation Amount would equal to $19,876,529.00; would be viewed by the Claimant as consistent with the Court Doctrine, therefore, fair and equitable as the statement partially reads, "claimant's industry and/or zone" and in view of the fact no one has been able to tell me how one comes to apply the RTP when it is optional, particularly when

---

4   S.A. 6430 – 38.35.  Compensation Amount shall mean that amount awarded to a Claimant prior to the addition of any RTP.

5   Non-Tourism and Non-Seafood Businesses located in Zone A - - RTP is 1.50.

"and/or" is used in the statement; you apply both and/or one or the other.

      The Claimant is not going to designate either of the settlement arrangements delineated above as the acceptable arrangement.   However, the Claimant will accept any one of the settlement arrangements delineated above which the Court finds conforms with and/or satisfies the context of the Court Doctrine in settlement of any and all claims filed as of June 10th 2013.  The Claimant agrees to accept the amount chosen as full and final payment for any and all claims filed as of June 10th 2013 in regards to the Deepwater Horizon Spill in the Gulf of Mexico on April 20th, 2010 and/or the Claimant will entertain any other settlement proposal deemed consistent with the Court Doctrine.