UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * * | MDL NO. 2179 "J"(1) JUDGE BARBIER MAGISTRATE SHUSHAN |
| **THIS DOCUMENT APPLIES TO:** **Case No. 12-311** | * * * | **JURY TRIAL DEMANDED** |

**LIBERTY INTERNATIONAL UNDERWRITERS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF THE COURT'S JUNE 7, 2013 ORDER AND FOR A STAY PENDING RECONSIDERATION**

Liberty International Underwriters, Inc. ("LIU") submits this Memorandum in Support of its Motion for Reconsideration of the Court's June 7, 2013 Order and for a stay of the Order pending reconsideration by this Court and review by the district court. As shown below, Cameron effectively filed on Thursday, June 6, 2013, a Motion for Reconsideration, asking the Court to reconsider its prior decision and Order production of a claims manual first published months after this lawsuit was filed. This Court granted Cameron's request within 24 hours without affording LIU the opportunity to present evidence and argument that a subsequently prepared manual not used to adjust a claim is not discoverable. The decision is contrary to the law and evidence and is manifestly unfair and unjust.

1

## I. <u>BACKGROUND</u>

On April 30, 2012, Cameron submitted its letter "motion" to Magistrate Shushan seeking to compel production of documents responsive to its Requests for Production Nos. 13 and 15. Rec. Doc. No. 9618. On May 6, 2013, as the Court ordered, LIU submitted its opposition and several exhibits for *in camera* review that LIU contended were "not responsive or relevant." Rec. Doc. No. 9714. Among these exhibits was LIU's 2012 Best Practices Manual ("the 2012 Manual"), which was not adopted until March 2012, months after the Cameron/BP settlement was executed in December 2011 and this suit was filed in January 2013. After reviewing the 2012 Manual *in camera*, the Court issued an order finding that it was "not responsive to RFP nos. 13 and 15." Rec. Doc. No. 9845. The *sole remaining issue* the Court left open concerned whether LIU adequately had searched for responsive documents. The Court ordered LIU to "certify that it has no documents responsive to [Cameron's requests 13 and 15] or produce them to Cameron." *Id.* The Court set a deadline of Monday, May 13, 2013 for the parties to appeal, and neither party did so.

On May 9, 2013, LIU certified that "other than the documents already produced to the Court . . . it has no formal claims manuals or formal procedural manuals responsive to request Nos. 13 and [15] that were in effect during the relevant time period (April 2010 to December 2011)." Rec. Doc. No. 9847. Unhappy with LIU's certification, on May 15, Cameron filed a new Motion to Compel Liberty to Comply with the Court's Supplemental Order of May 9, 2013. Rec. Doc. No. 9959. The *only issue* raised in Cameron's motion was whether LIU's certification complied with the Court's order.

2

Following the recent depositions of three LIU employees (Jeffrey Roberts, Jessica Rogin, and James Engel), Cameron filed on June 5, 2013 a supplemental memorandum purportedly supporting its pending motion to compel Liberty to comply with the Court's May 9 Order. Rec. Doc. No. 10300-2. Cameron's supplemental memorandum was not limited, however, to the issues raised in the pending motion.[1] To the contrary, it went beyond the issue of whether LIU's certification was adequate and asked the Court to revisit an issue already decided - whether Cameron was entitled to discover the 2012 Manual – and thus effectively was a motion for reconsideration. *See id.* at p. 2. Cameron admitted as much. The supplemental memorandum clearly invites the Court to "reconsider" its decision that the 2012 Manual was not discoverable "in light of the new evidence presented herewith." *Id.*

Although Cameron's supplemental memorandum was filed on June 5, LIU did not learn of the filing or receive a copy until the afternoon of June 6, after the Court signed an order granting leave for the supplemental memorandum to be filed.[2] Within 24 hours, without allowing LIU to respond to the "new evidence" Cameron presented or its request for reconsideration of its decision that the 2012 Manual was not discoverable, the Court reversed its prior ruling, ordered LIU to produce the 2012 Manual within seven calendar days, and further

---

[1] Prior to receipt of Cameron's Supplemental Memorandum of June 6, 2013, LIU filed its own Supplemental Memorandum on June 5, 2013, addressing the issue of sufficiency of its certification. Since the Court had issued an order finding the 2012 Manual non-responsive which Cameron had not appealed, LIU did not present argument or evidence as to why the Court's initial ruling was correct.

[2] Cameron did not provide LIU a courtesy copy at the time of filing. Nor did LIU receive notice from Lexis Nexis File & Serve until after the Court's order granting leave to file issued on June 6.

stated that the Order is not staying pending appeal. Based solely on selected tidbits of Jessica Rogin's testimony, the Court summarily concluded that the 2012 Manual, published after this suit was filed, was relevant to claims handling occurring from April 2010 to December 2011.

## II. ARGUMENT

### A. Standard for Motion for Reconsideration

A Magistrate Judge's ruling on a non-dispositive pretrial motion is properly challenged by means of a motion for reconsideration under Rule 59(e). *See, e.g., Elloie v. Allstate Ins. Co.*, No. 07-04434, 2008 WL 2038934 (E.D. La. 2008) (applying Rule 59(e) standard in connection with defendant's motion to reconsider order granting plaintiff's motion to compel); *Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Resource, Inc.*, No. 03-1496, 2004 WL 1488665 (E.D. La. 2004) (applying Rule 59(e) standard to motion to reconsider order finding that certain documents were not privileged); *see also* Rec. Doc. No. 10347 (addressing BP's motion for reconsideration of order pertaining to expert discovery). LIU's motion for reconsideration is filed within 28 days after the Court's June 7, 2013 Order and thus is properly analyzed under Rule 59(e). *See Ourso v. Edwards*, No. 11-2970-SS, 2013 WL 499860, at *2 (E.D. La. 2013) (Shushan, J.).

Courts generally consider four factors in reconsidering its order: (1) whether the judgment was based on manifest error of fact or law; (2) whether the movant presents newly discovered or previously unavailable evidence; (3) whether amendment is necessary to prevent manifest injustice; and (4) whether an intervening change in controlling law has occurred. *Mohnot v. Bhansali*, 2001 WL 376469, at *1 (E.D. La. April 10, 2001); *A.M.C. Liftboats, Inc.*,

2008 WL 1988807, at *1. LIU's motion satisfies each of the first three grounds. The Court's order compelling discovery of LIU's 2012 Best Practices Manual was based on manifest error of fact and law; newly presented evidence which LIU had no opportunity to present establishes the Manual is not relevant; and manifest injustice and unfairness will result if LIU is not provided the opportunity to respond to Cameron's Motion For Reconsideration.

**B.     LIU's Best Practices Manual Adopted After this Suit was Filed is Not Discoverable**

The 2012 Best Practices manual indisputably was not adopted until spring of 2012 – months after the BP/Cameron settlement was executed in December 2011 and this suit was filed in January 2012 – and thus was *not in effect* during the period when LIU was adjusting Cameron's claim (April 2010 to December 2011). Moreover, LIU already had submitted this manual to the Court *in camera*, and the Court agreed with LIU that it was "not responsive to RFP nos. 13 and 15." Rec. Doc. No. 9845, at p. 3. The court's decision is consistent with decisions of other courts finding that policy/procedure manuals that *do not apply to the claim at issue* are not relevant or discoverable. *See, e.g., Cummins, Inc. v. Ace Am. Ins. Co.*, No. 09-00738, 2011 WL 130158, at *6 (S.D. Ind. 2011) (limiting discovery to "claims manuals that were obtained, used, referred to, or relied upon in considering, handling, addressing, analyzing, [or] responding to" plaintiff's claims); *Marion v. State Farm Fire and Casualty Co.*, No. 1:06cv969, 2008 WL 723976, at *4 (S.D. Miss. 2008) (limiting discovery of claim manuals to manuals that were "applied to or governed plaintiffs' claim").

Cameron's supplemental memorandum *did not cite a single decision* in which a court had ordered discovery of claims manuals not in effect at the time of the claim at issue.

5

Nevertheless, without legal authority, Cameron claimed that it was entitled to discovery of the 2012 Manual based on selected testimony from Jessica Rogin and Jeffrey Roberts. This testimony purportedly showed, according to Cameron, that the 2012 Manual memorialized practices already in place at LIU in 2011. Besides lacking legal support, Cameron's contention also was wrong on the facts. James Engel's testimony, which Cameron omitted from its filing and LIU did not have the chance to offer, abundantly demonstrates that the 2012 Manual was *not* based on practices in place at LIU; instead, the 2012 Manual was *sui generis* and sought to collect best practices used throughout the industry. Mr. Engel, LIU's chief claim officer, and the ultimate author of the 2012 Manual, testified that the 2012 Manual included "best practices from around the industry":

> Q. Were these a new set of best practices or were they reflective of how Liberty did business prior to that time?
>
> A. They were built out of whole cloth, so to speak. Meaning that there were no prior documents for us to refer to and build upon. So they were built on a clean piece of paper, and they were reflective of what Miss Rogin and I believed to be the best practices used in the industry for handling casualty claims. And used in the industry means broadly by all companies. Not every company has all of the best practices. Some of them have some bad practices. Some of them have good practices. And some of them have – are silent, and so our collaboration was to put together what we believed to be the best practices from around the industry that was what we wanted our claim handlers at LIU to be using on a go-forward basis.

J. Engel Depo. Exh. A, at 46:8 to 47:3; *see also* 13:18 to 14:3 (Engel was head of LIU claims), 17:6-8 (Engel was Rogin's supervisor), 43:22 to 44:3 (Engel and Rogin created best practices); *see also* J. Rogin Depo., Exh. B, at 63:18 to 64:12 (Engel edited and added to 2012 Manual).

Engel also plainly testified that it would be pointless and unfair to compare Mr. Roberts' actions in adjusting Cameron's claim to the 2012 Manual, because it was not in place when the claim was adjusted:

> Q. You think it would be helpful if we had a copy of the best practices to put in front of Jessica Robin for her—do you think she would be able to identify how and to what extent Mr. Roberts deviated from those best practices in handling Cameron's claim?
>
> A. I guess potentially she could, but I don't understand the purpose of it. Because those best practices were not in place until April or May of 2012. So at the time when—at the time leading up to the Cameron BP settlement, those best practices were not written. They were not in place. Claim handlers didn't have a solid expectation of what LIU wanted them to do and so I don't consider them pertinent to that period from – prior to their – prior to their publication. We didn't even – when measuring the performance of individuals, retroactively apply them, and so you are sort of asking could we go back and retroactively evaluate people and how they followed them. And I would say – I don't see the point in it. We didn't do that for performance evaluation, so I don't see the point of doing it in this exercise.

J. Engel Depo., Exh. A, at 63:19 to 64:14, 65:15-18 ("And so I created those best practices and my expectation was that, prior to the publication, people weren't expected to follow them."). LIU did not have a chance to offer this testimony to the Court.

Cameron's supplemental brief also mischaracterized the testimony of LIU employees Jeff Roberts and Jessica Rogin. First, Cameron claimed that Roberts testified that he acted consistently with practices described in the 2012 Manual, which indisputably was not in place, in adjusting Cameron's claim. Rec. Doc. No. 10300-2, at p. 2. To the contrary, Roberts testified only that he adjusted Cameron's claim consistent with "the *industry standard* of best practices." J. Roberts Depo, Exh. C, at 25:10-13 (emphasis added). When asked if he adhered to the 2012 Manual, Roberts explained, "[T]he best practices issued in 2012, the claim happened in

7

2010. So *I can't have adhered to guidelines that weren't in place.*" *Id.* at 25:14-23 (emphasis added). Later, he again clarified, "[T]here were not best practices in place to adjust Cameron's claim under it. So they were – the claim was adjusted and handled under what you would call *industry* guidelines or *industry* best practices." *Id.* at 27:11-16 (emphasis added). Roberts thus clearly testified that he applied *industry* best practices in adjusting Cameron's claim and *not* practices described in the 2012 Manual that did not exist at the time.

Cameron also claimed that Rogin testified that Roberts adjusted claims in 2011 consistent with the 2012 Manual adopted later. Rec. Doc. No. 10300-2, at p. 2. This misconstrues Rogin's testimony. Rogin actually testified that it would *not* be useful to look at the 2012 Manual to understand how Roberts adjusted claims in 2011, because Roberts could not possibly follow procedures that did not exist:

> Q. So if I wanted to understand how Mr. Roberts adjusted claims in 2011, would it be helpful for me to review the best practices manual that you prepared?
>
> A. You know, I couldn't – I couldn't say whether it is would be helpful or not helpful to you. I mean, he wasn't being held against any – those standards.
>
> Q. Regardless of whether [Roberts] was being held against the standards that were later issued, if I wanted to get an understanding of what procedures he followed to adjust claims, would it be useful for me to look at the best practices that you drafted sometime in the 2011 time period?
>
> A. Well, I wouldn't say so because he wasn't following those procedures. He was adjusting claims based on his many years of experience as an adjuster.

Rogin Depo., Exh. B, at 65:2-20. The *complete* testimony of LIU's employees, which LIU was not given a chance to submit, thus clearly supports the Court's prior holding that the 2012

8

Manual, which did not exist until years after Cameron's claim arose and was not applied to that claim, is not relevant or discoverable.

Review of the 2012 Manual itself likewise supports this conclusion. Among other things, the 2012 Manual refers to software that was not available to LIU employees throughout the relevant time period (April 2010 to December 2011). *See, e.g.,* J. Engel Depo., Exh. A, at 68:11 to 69:21 (testifying that after he arrived in September 2010 he implemented new claims system and technology). The 2012 Manual thus is a completely inappropriate yardstick by which to measure LIU's actions in adjusting Cameron's claim. The Court's conclusion that the 2012 Manual is relevant, based only on selected portions of Rogin's testimony and no legal authority whatsoever, is thus contrary to fact and law.

LIU would have presented this new evidence to the Court if it had been given an opportunity to respond to Cameron's supplemental memorandum. Contrary to the Court's Local Rules expressly allowing parties an opportunity to respond, no such opportunity was given LIU here. Instead, the Court apparently departed from this procedure and decided Cameron's *de facto* reconsideration motion without setting a submission date, giving notice to LIU, or allowing it to respond at all. This process was manifestly unjust and unfair and warrants reconsideration of the order.

## C.   The Court Should Stay its Order Pending Reconsideration

LIU also asks the Court to stay its Order while the motion to reconsider is pending. Under Rule 62(b), the court may stay the execution of a judgment – or any proceedings to enforce it – pending disposition of a motion under Rule 59(e). FED. R. CIV. P. 62(b). To

determine whether a stay should be granted, courts have considered factors such as (1) the movant's likelihood of success on the merits; (2) whether the movant has made a showing of irreparable injury if the stay is not granted; (3) whether the granting of the stay would substantially harm the other parties; and (4) whether the granting of the stay would serve the public interest. *Asset Funding Group, LLC v. Adams & Reese, LLP*, No. 07-2965, at *2 (E.D. La. 2009); *Jenkins v. Robotec, Inc.*, No. 1:09cv150, 2009 WL 5166252, at *2 (S.D. Miss. 2009). "While 'the movant need not always show a probability of success on the merits,' he must 'present a substantial case on the merits when a serious legal question is involved and show that *the balance of the equities*, [i.e. the other three factors] *weighs heavily in the favor of granting the stay.*'" *O'Bryan v. McKaskle*, 729 F.2d 991, 993 (5th Cir. 1984).

Applying this test, courts have stayed discovery pending appeal where a party seeks relief from orders implicating important interests such as a party's privilege claims. *See, e.g., In re Lott*, No. 05-3532, 2005 WL 515367, at **1-2 (6th Cir. 2005) (staying discovery ordered by district court pending review of court's finding that party waived attorney-client and work product privileges); *U.S. v. Phillip Morris, Inc.*, 314 F.3d 612, 621-22 (D.C. Cir. 2003) (granting emergency stay of discovery pending review of district court's determination that party waived privilege claim). Here, by analogy, the Court's order implicates significant interests of LIU and appropriately should be stayed pending reconsideration.

As discussed above, LIU originally *prevailed* on the merits in this dispute. The Court agreed with LIU that the 2012 Manual was not relevant or discoverable. Thus, LIU's chance of prevailing on the merits is "substantial," if not probable. The balance of the equities

likewise favors LIU. Cameron's supplemental memorandum amounted to a motion for reconsideration of the Court's prior order to which LIU never was allowed to respond. Requiring LIU to produce the 2012 Manual under these circumstances is unfair and causes irreparable injury. Moreover, as LIU's employees already were deposed and no future LIU depositions currently are scheduled, there is no evidence that a brief stay would harm Cameron in any way. Accordingly, the Court should stay its June 7, 2013 Order (Rec. Doc. No. 10332) pending decision on LIU's motion for reconsideration.

## CONCLUSION

The Court already has found that the 2012 Manual is "not responsive" to Cameron's requests 13 and 15. Cameron's supplemental memorandum, providing incomplete testimony and no legal support, amounted to a motion to reconsider to which LIU was not permitted to respond. The additional testimony and cases LIU has provided show that the Court's June 7 Order was contrary to both fact and law. Accordingly, LIU asks the Court to grant its motion for reconsideration and vacate the portion of its June 7 Order requiring production of the 2012 Manual. LIU also asks the Court to stay its June 7, 2013 Order (Rec. Doc. No. 10332) pending decision on LIU's motion for reconsideration and review by the district court..

Respectfully submitted,

/s/ Judy Y. Barrasso
Judy Y. Barrasso, 2814
Celeste Coco-Ewing, 25002
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor

>New Orleans, Louisiana 70112
>504.589.9700 (Telephone)
>504.589.9701 (Facsimile)
>
>and
>
>Christopher W. Martin, PRO HAC VICE
>Federal I.D. 13515
>Gary L. Pate, PRO HAC VICE
>Federal I.D. 29713
>808 Travis, Suite 1800
>Houston, Texas 77002
>713-632-1700 (Telephone)
>713-222-0101 (Facsimile)
>
>Attorneys for Liberty International
>  Underwriters, Inc.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 12th day of June, 2013.

>/s/ *Judy Y. Barrasso*

*872924*