# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 |
| | : | SECTION: J |
| | : | JUDGE  CARL J. BARBIER |
| This Document Relates to: 12-00311 | : | |
| …………………………………………... | : | MAGISTRATE JUDGE SALLY SHUSHAN |

**MEMORANDUM OF BP EXPLORATION & PRODUCTION INC. IN SUPPORT OF ITS MOTION TO QUASH LIBERTY INSURANCE UNDERWRITERS' SUBPOENA SEEKING IRRELEVANT AND PRIVILEGED SETTLEMENT COMMUNICATIONS**

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Robert C. "Mike" Brock
(mbrock@cov.com)
David B. Goodwin
(dgoodwin@cov.com)
Allan B. Moore
(abmoore@cov.com)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for BP Exploration & Production Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION .............................................................................................. 1

I.    THE SUBPOENA SEEKS IRRELEVANT INFORMATION AND THUS
      PRESENTS AN UNDUE BURDEN UNDER SETTLED FIFTH CIRCUIT
      LAW. ........................................................................................................ 3

      A.    Under Fifth Circuit Case Law, A Subpoena Should Be Quashed If It Does
            Not Seek Relevant Information. ................................................................ 3

      B.    BP's Negotiations And Internal Analyses Regarding The BP-Cameron
            Settlement Are Irrelevant To The Cameron-Liberty Contract Dispute. ......... 5

II.   LIBERTY HAS NOT SATISFIED THE HEIGHTENED STANDARD FOR
      DISCOVERING SETTLEMENT NEGOTIATIONS. ................................... 11

III.  LIBERTY'S SUBPOENA SEEKS COMMUNICATIONS PROTECTED BY
      THE ATTORNEY-CLIENT AND ATTORNEY WORK PRODUCT
      PRIVILEGES WHOSE DISCLOSURE IS PROHIBITED. ......................... 17

IV.   LIBERTY'S SUBPOENA IS UNDULY BURDENSOME TO NON-PARTY
      BP BECAUSE IT SEEKS DOCUMENTS READILY ACCESSIBLE FROM
      PLAINTIFF CAMERON. ......................................................................... 20

CONCLUSION ................................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*ABT Sys., LLC v. Emerson Elec. Co.*,
  No. 4:11-cv-00374-AGF,
  2012 WL 6594996 (E.D. Mo. Dec. 18, 2012) ........................................................................ 15

*Akins v. Worley Catastrophe Response, LLC*,
  Civil Action No. 12-2401,
  2013 WL 796095 (E.D. La. Mar. 4, 2013) ............................................................................. 18

*Am. Home Assur. Co. v. Cat Tech L.L.C.*,
  660 F.3d 216 (5th Cir. 2011) ................................................................................................... 9

*Amir Athletic, LLC v. State Farm and Cas. Co.*,
  Civil Action No. 11-2082, 2012 WL 520658 (E.D. La. Feb. 16, 2012) .................................... 1

*Balandran v. Safeco Ins. Co. of Am.*,
  972 S.W.2d 738 (Tex. 1998) ..................................................................................................... 9

*Batture Fleet, Inc. v. Browner*,
  No. Civ.A. 00-0205,
  2000 WL 748093 (E.D. La. June 8, 2000) ............................................................................. 20

*Borders v. Chase Home Fin. L.L.C.*,
  Civil Action No. 09-3020-CJB-SS,
  2010 WL 890485 (E.D. La. Mar. 5, 2010) ............................................................................. 18

*Branch v. Fidelity & Cas. Co. of N. Y.*,
  783 F.2d 1289 (5th Cir. 1986) ............................................................................................... 16

*Camsoft Data Sys. v. S. Elec. Supply, Inc.*,
  Civil Action No. 09-1047-JJB,
  2010 WL 4739541 (M.D. La. Nov. 16, 2010) ............................................................... 4, 5, 11

*Cleveland Clinic Health Sys. v. Innovative Placements, Inc.*,
  No. 1:11-CV-2074,
  2012 WL 187979 (N.D. Ohio Jan. 23, 2012) .................................................................. 18, 21

*Cook v. Yellow Freight System, Inc.*,
  132 F.R.D. 548 (E.D. Cal. 1990)............................................................................................ 13

*Corbitt v. Diamond M. Drilling Co.*,
  654 F.2d 329 (5th Cir. 1981) ................................................................................................... 8

*Doe v. United States*,
  106 Fed. Cl. 118 (Fed. Cl. 2012) ............................................................................................. 9

*Enron Oil Trading & Transp. Co. v. Underwriters of Lloyd's of London*,
    47 F. Supp. 2d 1152 (D. Mont. 1996) ........................................ 5

*Equal Rights Ctr. v. Archstone-Smith Trust*,
    251 F.R.D. 168 (D. Md. 2008) ........................................ 10

*Fenner Invs., Ltd. v. Hewlett-Packard Co.*,
    Civil Action No. 6:08-cv-273,
    2010 WL 1727916 (E.D. Tex. April 28, 2010) ........................................ 14

*Ford Motor Co. v. Edgewood Properties, Inc.*,
    257 F.R.D. 418 (D.N.J. 2009) ........................................ 10, 12

*Global Oil Tools, Inc. v. Barnhill*,
    Civil Action. No. 12-1507,
    2012 WL 6021331 (E.D. La. Dec. 3, 2012) ........................................ 4, 11

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*,
    332 F.3d 976 (6th Cir. 2003) ........................................ 12, 13, 14, 15

*GuideOne Elite v. Fielder Rd. Baptist Church*,
    197 S.W.3d 305 (Tex. 2006) ........................................ 5

*In re Feature Realty Litig.*,
    468 F. Supp. 2d 1287 (E.D. Wash. 2006) ........................................ 5

*In re Flat Glass Antitrust Litig.*,
    MDL No. 1942, No. 11-658, 2013
    WL 1703864 (W.D. Pa. Apr. 19, 2013) ........................................ 15

*In re O'Hare*,
    Misc.Action No. H-11-0539,
    2012 WL 1377891 (S.D. Tex. April 19, 2012) ........................................ 4, 11

*Ingalls Shipbuilding v. Federal Ins. Co.*,
    410 F.3d 214 (5th Cir. 2005) ........................................ 8

*Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*,
    608 F.2d 928 (2d Cir. 1979) ........................................ 15, 16

*Lamoureux v. Anazaohealth Corp.*,
    No. 3:03-cv-01382 (WIG),
    2009 WL 813977 (D. Conn. Mar. 26, 2009) ........................................ 15

*Lesal Interiors, Inc. v. Resolution Trust Corp.*,
    153 F.R.D. 552 (D.N.J. 1994) ........................................ 15

*Luria Bros. & Co. v. Alliance Assur. Co.*,
   780 F.2d 1082 (2d Cir. 1986) ................................................................. 5

*Lynn v. CSX Transp., Inc.*,
   84 F.3d 970 (7th Cir. 1996) ................................................................... 9

*Myers v. City of Highland Village, Tex.*,
   212 F.R.D. 324 (E.D. Tex. 2003) ......................................................... 19

*New Mem'l Assocs. v. Credit Gen. Ins. Corp.*,
   973 F. Supp. 1027 (D.N.M. 1997) ........................................................ 10

*Palmieri v. New York*,
   779 F.2d 861 (2d Cir. 1985) ................................................................. 13

*PETCO Animal Supplies Stores, Inc. v. Ins. Co. of N. Am.*,
   Civil No. 10-682(SRN/JSM),
   2011 WL 2490298 (D. Minn. June 10, 2011) ....................................... 20

*Phila. Church of Our Savior v. Concord Twp.*,
   No. Civ. A. 03-1766,
   2004 WL 1824356 (E.D. Pa. July 27, 2004) .......................................... 15

*Prudential Ins. Co. of Am. v. Massaro*,
   No. CIV. A. 97-2022,
   2000 WL 1176541 (D.N.J. Aug. 11, 2000) ............................................ 19

*ResQNet.com Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) .............................................................. 14

*Rice v. Reliastar Life Ins. Co.*,
   Civil Action No. 11-44-BAJ-CN,
   2011 WL 5513181 (M.D. La. Nov. 10, 2011) .................................... 4, 11

*Rosas v. United States Small Bus. Admin.*,
   964 F.2d 351 (5th Cir. 1992) ................................................................. 8

*Sheldone v. Pa. Tpk. Comm'n*,
   104 F.Supp.2d 511 (W.D. Penn. 2000) ................................................. 16

*Software Tree, LLC v. Red Hat, Inc.*,
   No. 6:09-cv-097,
   2010 WL 2788202 (E.D. Tex. June 24, 2010) ....................................... 14

*Teligent, Inc. v. K&L Gates LLP*,
   640 F.3d 53 (2d Cir. 2011) ................................................................... 16

*Travelers Ins. Co. v. Waltham Indus. Labs. Corp.*,
    883 F.2d 1092 (1st Cir. 1989) ........................................................................... 5

*Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*,
    602 F.3d 677 (5th Cir. 2010) ............................................................................. 9

*Turner v. Kansas City S. Ry. Co.*,
    Civil Action Nos. 03-2742, 05-2668, 2008 WL 4861292 (E.D. La. Nov. 10, 2008) ................. 2

*United States v. Elashyi*,
    554 F.3d 480 (5th Cir. 2008) ............................................................................. 8

*Wiwa v. Royal Dutch Petroleum Co.*,
    392 F.3d 812 (5th Cir. 2004) ...................................................................... 3, 4, 11

**Rules**

Fed. R. Civ. P. 26(b)(1) ....................................................................................... 1, 10

Fed. R. Civ. P. 45(c)(3) ....................................................................................... 2, 21

Fed. R. Civ. P. 45(c)(3)(A)(iii) ............................................................................... 2, 17

Fed. R. Civ. P. 45(c)(3)(A)(iv) ................................................................................ 2, 21

## INTRODUCTION

This motion arises in the context of an insurance coverage dispute between Cameron International Corporation ("Cameron") and one of its liability insurers, Liberty Insurance Underwriters, Inc. ("Liberty") — a dispute to which BP is not a party.  In the action in question (Case No. 12-00311), Cameron has sued Liberty for breaching its contractual obligations to provide Cameron with insurance coverage for, *inter alia*, payments that Cameron has made pursuant to its December 2011 settlement with BP Exploration & Production Inc. ("BP") for claims arising out of the *Deepwater Horizon* incident (the "BP-Cameron Settlement").

On February 14, 2013, Liberty served a third-party discovery subpoena upon BP (the "Subpoena," attached as Exhibit A) calling for BP to produce four broad categories of documents related to the BP-Cameron Settlement.  Specifically, the Subpoena demands:

1. All documents and communications between [BP] and Cameron concerning the [BP-Cameron] Settlement.

2. All documents and communications regarding the negotiation, drafting, and execution of the [BP-Cameron] Settlement.

3. All documents and communications regarding Cameron's claim for coverage for liabilities arising out of the Deepwater Horizon Incident.

4. All documents and communications between [BP] and Cameron concerning Cameron's indemnity claims against Transocean.

Rule 26(b)(1) of the Federal Rules of Civil Procedure, as amended in 2000, requires that discovery be "relevant to any party's claim or defense."  FED. R. CIV. P. 26(b)(1) & cmt. (2000 Amendment); *see also Amir Athletic, LLC v. State Farm and Cas. Co.*, Civil Action No. 11-2082, 2012 WL 520658, at *1 (E.D. La. Feb. 16, 2012) ("As a threshold matter, discovery is limited to that which is 'relevant to any party's *claim or defense*'") (emphasis in original));

*Turner v. Kansas City S. Ry. Co.*, Civil Action Nos. 03-2742, 05-2668, 2008 WL 4861292, at *1 (E.D. La. Nov. 10, 2008) ("Federal Rule of Civil Procedure 26(b)(1) limits the scope of discovery to 'any nonprivileged matter that is relevant to any party's claim or defense.'").  Rule 45(c)(3) of the Federal Rules of Civil Procedure requires that a subpoena be quashed or modified if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden."  FED. R. CIV. P. 45(c)(3)(A)(iii & iv).  On its face, Liberty's Subpoena suffers from defects that violate these proscriptions.  The Subpoena's requests are improper for the following independent reasons.

*First*, the Subpoena fails to seek materials relevant to the Liberty-Cameron coverage dispute.  Based on Cameron's Amended Complaint and Liberty's Answer and Affirmative Defenses, their dispute (to which BP is not a party) presents an insurance policy interpretation question, the merits of which should be decided upon the terms of the insurance policy between Cameron and Liberty (the "Liberty Insurance Policy") and the relationship between the Policy's coverage commitment and the express written terms of the BP-Cameron Settlement.  As a matter of law, nothing in the requested communications between BP and Cameron regarding their Settlement has any bearing on the interpretation and enforcement of the terms of the Liberty Insurance Policy, as that Policy must be applied to the plain and express terms of the BP-Cameron Settlement.

*Second*, the documents sought by the Subpoena consist of settlement communications between BP and Cameron.  Courts have regularly recognized the need for heightened protection against disclosure of such communications to encourage settlement and further the public interest in resolving disputes through compromise rather than protracted litigation.  The public interest in resolving massive lawsuits such as the *Deepwater Horizon* litigation is apparent and the

confidentiality of settlement discussions in this MDL is vital if settlements are to be encouraged and expected at all.

*Third*, the Subpoena on its face primarily seeks documents that are entitled to protection under the attorney-client and/or work product privileges.  BP did not and could not waive that privilege.  The responsive documents that would not be privileged — even if reasonably relevant — consist of communications between BP and Cameron, which are accessible to Liberty through discovery upon Cameron.  Requiring BP to produce documents duplicative of that which can be sought from Cameron would impose an undue burden on BP, a non-party to the Cameron-Liberty insurance dispute.

## I.   THE SUBPOENA SEEKS IRRELEVANT INFORMATION AND THUS PRESENTS AN UNDUE BURDEN UNDER SETTLED FIFTH CIRCUIT LAW.

### A.   Under Fifth Circuit Case Law, A Subpoena Should Be Quashed If It Does Not Seek Relevant Information.

We start with a brief review of the legal standard that governs this motion.  In *Wiwa v. Royal Dutch Petroleum Co.*, the Fifth Circuit set forth several factors used "[t]o determine whether [a] subpoena presents an undue burden" to justify a motion to quash under Rule 45: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed."  392 F.3d 812, 818 (5th Cir. 2004).  The Fifth Circuit added that "if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party."  *Id.*  Moreover, "[a] court may find that a subpoena presents an undue burden when the subpoena is facially overbroad."  *Id.*  Thus, "a court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need and the potential

hardship to the party subject to the subpoena." *Rice v. Reliastar Life Ins. Co.*, Civil Action No. 11-44-BAJ-CN, 2011 WL 5513181, at *2 (M.D. La. Nov. 10, 2011) (citation omitted).

With regard to the factor of relevance, the Fifth Circuit in *Wiwa* recognized that "[d]iscovery requests are relevant when they seek admissible evidence or evidence that is reasonably calculated to lead to the discovery of admissible evidence." *Wiwa*, .392 F.3d. at 820 (internal quotations and citations omitted). Thus, "[d]iscovery via a subpoena is not exempted from the allowable scope of discovery as provided by Rule 26(b)." *Camsoft Data Sys. v. S. Elec. Supply, Inc.*, Civil Action No. 09-1047-JJB, 2010 WL 4739541, at *2 (M.D. La. Nov. 16, 2010) (quashing third-party subpoena where it was "not apparent how most of the Legislative Auditor's work papers are relevant to the plaintiff'[s] claims").

"To overcome a motion to quash, the requesting party must prove that he has adequately specified the materials sought in the subpoenas and that those materials are relevant and admissible." *Rice*, 2011 WL 5513181, at *2 (citations omitted). Thus, courts within the Fifth Circuit routinely quash or limit subpoenas calling for information not relevant to — and hence, not admissible to address — the merits of the underlying claim. *See e.g. Wiwa*, 392 F.3d at 820-821 (limiting "overbroad" document requests that sought information "irrelevant to [plaintiff]'s claim"); *Global Oil Tools, Inc. v. Barnhill*, Civil Action. No. 12-1507, 2012 WL 6021331, at *4 (E.D. La. Dec. 3, 2012) (in RICO action, quashing subpoena seeking defendant's personal financial records as "not relevant to any of the issues set forth in the litigation" as there was no allegation that defendant had converted funds to his personal accounts); *In re O'Hare*, Misc., Action No. H-11-0539, 2012 WL 1377891, at *2 (S.D. Tex. April 19, 2012) (quashing "facially overbroad" subpoena that requested "all documents concerning the parties to the [underlying] action, regardless of whether those document relate to that action and regardless of date"); *Rice*,

4

2011 WL 5513181, at *2 (limiting subpoena seeking police officer's "complete personnel file" to the extent that it sought "information that is irrelevant to this suit"); *Camsoft*, 2010 WL 4739541, at *2 (quashing subpoena "in the absence of a cogent explanation of how" the requested materials "would be relevant to [plaintiff's] claims").

### B.   BP's Negotiations And Internal Analyses Regarding The BP-Cameron Settlement Are Irrelevant To The Cameron-Liberty Contract Dispute.

The requests contained in the Subpoena run afoul of the settled principle that such requests must seek relevant information.   Cameron's dispute with Liberty concerns whether Liberty must provide coverage to Cameron for the BP-Cameron Settlement under the express contractual terms of the Liberty Insurance Policy.   Under Texas law, which governs the Liberty policy[1], the outcome of that dispute depends upon the terms and conditions of the Liberty Insurance Policy as applied to the pleaded claims resolved by the final BP-Cameron Settlement; the extrinsic materials sought by the Subpoena are irrelevant. *See GuideOne Elite v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 311 (Tex. 2006) (holding that coverage depends upon the policy, the underlying complaint, and "the facts actually established in the underlying suit").[2]

---

[1] In its Order & Reasons addressing Liberty's Rule 12(c) motion for judgment on the pleadings, the Court held "that Texas law applies to this matter." Order & Reasons, Rec. Doc. 7129 (August 16, 2012) at 10.

[2] Numerous other courts have also recognized that the determination of insurance coverage obligations for an insured's settlement will turn upon the terms of the settlement itself. *See, e.g.*, *Travelers Ins. Co. v. Waltham Indus. Labs. Corp.*, 883 F.2d 1092, 1109 (1st Cir. 1989 ("Here, however, the cases were settled prior to trial.  This means that the duty to indemnify must be determined in the basis of the settlement and, since this was a summary judgment proceeding, the undisputed facts."); *Luria Bros. & Co. v. Alliance Assur. Co.*, 780 F.2d 1082, 1091-92 (2d Cir. 1986) (noting, where insurer disputed coverage for settlement entered into by insured, that "one need only read the first section of both liability policies to determine that they encompassed this type of liability"); *In re Feature Realty Litig.*, 468 F. Supp. 2d 1287, 1295-96 (E.D. Wash. 2006 (noting that "where the claims have been settled, the insurer's obligation to pay and the determination of coverage must be based upon the facts inherent in the settlement" and that "[t]he Court need not look any further than the language of the 2005 Settlement Agreement and [the underlying plaintiff's complaint] …."); *Enron Oil Trading & Transp. Co. v. Underwriters of Lloyd's of London*, 47 F. Supp. 2d 1152, 1161 (D. Mont. 1996 ("Where an action settles prior to trial … the duty to indemnify must be determined on the basis of the settlement, *i.e.*, the undisputed facts set forth in the

Here, the pleadings between Cameron and Liberty confirm that their dispute should be decided by the plain language of the Liberty Insurance Policy, and that BP's communications and internal documents about the BP-Cameron Settlement are irrelevant and inadmissible. Cameron's First Cause of Action for breach of contract alleges that "Cameron fully performed its obligations under the Liberty Insurance Policy and all conditions precedent have occurred" and that "Liberty breached its obligations under the Liberty Insurance Policy."  Amended Complaint of Cameron International Corporation (Rec. Doc. 6287, the "Complaint") at ¶¶ 64-65. Cameron's Second Cause of Action seeks a declaratory judgment regarding Liberty's indemnity obligations under the Liberty Insurance Policy, *id.* at ¶¶ 67-72, and its Third Cause of Action likewise seeks a declaratory judgment for Cameron's defense expenses based on the same insurance policy, *id.* at ¶¶ 73-79.  The remaining causes of action in Cameron's Complaint, which plead violations of Louisiana and Texas statutes, are premised upon the very same alleged breaches of Liberty's contractual obligations under the Liberty Insurance Policy.  *See id.* at ¶¶ 80-84 (Fourth Cause of Action alleging violation of Louisiana state law because "Liberty failed to pay the amount of the claim due to Cameron . . . under the Liberty Insurance Policy"); *id.* at ¶¶ 85-88 (Fifth Cause of Action alleging violation of Texas Insurance Code § 541 because Liberty "forc[ed] Cameron to institute suit to recover the $50 million Cameron was forced to pay to BP due to Liberty's breach" of the insurance policy); *id.* at ¶¶ 89-93 (Sixth Cause of Action for violation of Texas Insurance Code § 542 alleging "Liberty is required to reimburse Cameron for its defense costs . . . until Liberty exhausts its $50 million limit by fulfilling its indemnity obligation to Cameron" under the Liberty Insurance Policy).

---

underlying complaint and those known to the parties."), *aff'd in part, rev'd in part*, 132 F.3d 526 (9th Cir. 1997).

Liberty's Affirmative Defenses and Answer to First Amended Complaint (Rec. Doc. 7298, the "Answer") confirm that the merits of the dispute turn upon the express terms of the Liberty Insurance Policy, not the underlying negotiations, legal advice, or parol evidence pertaining to the BP-Cameron Settlement. In its affirmative defenses, Liberty acknowledges that the merits of Cameron's claims depend on the Policy, contending that "Plaintiff's claims are excluded or limited by applicable policy terms, conditions, and exclusions contained in the Policy" and reciting numerous provisions of the Liberty Insurance Policy under the heading "Policy Defenses." Answer at ¶¶ 99-100 (Rec. Doc. 7298) (fourth affirmative defense, "Policy Defenses"). Nearly all of Liberty's additional affirmative defenses likewise depend upon interpretation of the Liberty Insurance Policy's terms, including whether the contract's conditions precedent to coverage have been met.[3]

Moreover, to the extent that Liberty's arguments depend on the BP-Cameron Settlement, the plain language of the final BP-Cameron Settlement controls, and discovery of extrinsic materials from BP is unnecessary and utterly beside the point. The BP-Cameron Settlement

---

[3] *See* Answer at ¶ 96 (first affirmative defense claiming Cameron has not stated a cause of action for bad faith under Texas Insurance Code because "in accordance with policy terms, the Cameron excess policy has not attached to the Cameron-BP settlement"); *id.* at ¶ 101 (fifth affirmative defense claiming that "the ContraPreferentem Rule [sic] is inapplicable here in construing the Policy"); *id.* at ¶ 102 (sixth affirmative defense asserting that Liberty's "indemnity obligation . . . has not attached because all underlying insurance limits have not been fully exhausted and because the indemnity which may be available to fund Cameron's legal liability has not been determined and has been waived by the Plaintiff"); *id.* at ¶ 103 (seventh affirmative defense that "Plaintiff's cause of action for breach of contract is premature since Liberty's indemnity obligation has not attached at this time"); *id.* at ¶ 104 (eighth affirmative defense that "Plaintiff's damages . . . are limited by the amount set forth in the policy limitations provisions" of the Policy); *id.* at ¶ 105 (ninth affirmative defense that "the Policy expressly negates any duty to defend" and "the Policy does not obligate Liberty to reimburse for defense costs"); *id.* at ¶ 107 (eleventh affirmative defense of "Failure to Satisfy Conditions Precedent" that "denies that all conditions precedent to suit have been met" and "reserves the right . . . to assert any additional defenses or any other applicable terms, provisions, exclusions, limitations, or conditions of the Policy . . ."); *id.* at ¶ 108 (twelfth affirmative defense that "Plaintiff is precluded from recovery under the [Liberty Insurance Policy] because it extinguished Liberty's valuable subrogation rights and its valuable indemnification rights against Transocean").

provides that it is governed under maritime law.  BP-Cameron Settlement at ¶ 9.13.  Under maritime law, "a court may not look beyond the written language of the document to determine the intent of the parties unless the disputed contract provision is ambiguous."  *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332-33 (5th Cir. 1981) (citation omitted); *see also Ingalls Shipbuilding v. Federal Ins. Co.*, 410 F.3d 214, 220 (5th Cir. 2005).  To BP's knowledge, there has been no ruling that the provisions of the BP-Cameron Settlement are ambiguous, and thus as a matter of law the parol evidence sought by Liberty's Subpoena cannot be used to vary the BP-Cameron Settlement's terms.  *See United States v. Elashyi*, 554 F.3d 480, 502 (5th Cir. 2008); *Rosas v. United States Small Bus. Admin.*, 964 F.2d 351, 355 (5th Cir. 1992).

In any event, there are no grounds for finding that the BP-Cameron Settlement is ambiguous.  For example, Liberty's twelfth affirmative defense alleges that Cameron extinguished Liberty's subrogation rights.  Answer at ¶108.  But the BP-Cameron Settlement's releases and agreements not to pursue subrogation claims apply to the "Consenting Cameron Insurers" — that definition excludes Liberty and so the BP-Cameron Settlement's plain language does not release or compromise Liberty's subrogation claims.  BP-Cameron Settlement at ¶¶ 4.2-4.3.  Furthermore, Paragraph 4.4 of the BP-Cameron Settlement expressly provides that "notwithstanding any other provision of this Agreement … Cameron is not releasing any subrogation or other rights of Liberty."  Thus, the plain language of the BP-Cameron Settlement states that Cameron has not released Liberty's rights to subrogate and assert the same claims that Cameron could have asserted itself against BP, Transocean, and any other parties before entering into the BP-Cameron Settlement.  Those subrogation rights were not extinguished or impaired under the BP-Cameron Settlement by release, assignment to BP, or otherwise.  At the same time, the BP-Cameron Settlement protects BP against subrogation claims from Liberty by placing

conditions on Cameron's pursuit of insurance coverage against Liberty and requiring Cameron to indemnify BP and pay its defense costs if Liberty sues BP or third parties, including Transocean, who then seek recovery from BP.  BP-Cameron Settlement at ¶¶ 4.6, 5.7(d), 5.7(e).

In short, as this Court recognized in its Order & Reasons addressing Liberty's Rule 12(c) Motion for Judgment on the Pleadings (Rec. Doc. 7129)[4],) this case is one of contract interpretation — the disposition of Cameron's claims will be governed by the terms and conditions of the Liberty Insurance Policy as applied to the BP-Cameron Settlement for which coverage is sought, not the tenor or substance of settlement negotiations or legal advice that ultimately led to the settlement between Cameron and non-party BP.  Where the merits of the parties' contractual dispute depend solely upon the language contained within the four corners of the agreement, courts will deny discovery into external materials.  *See, e.g.*, *Doe v. United States*, 106 Fed. Cl. 118, 128 (2012) (denying discovery "designed to obtain extrinsic information for the purpose of supplementing or modifying the express terms" of the governing contracts where requesting party failed to demonstrate  ambiguity in contract language at issue); *see also Lynn v. CSX Transp., Inc.*, 84 F.3d 970, 974 (7th Cir. 1996) ("The disposition of [the plaintiff's] claim is governed by the unambiguous language of the plan documents.  A settlement between [the defendant] and [a third-party] is irrelevant.").

---

[4] Indeed, the Court's order on Liberty's 12(c) motion specifically noted that the plain language of the Liberty Insurance Policy — rather than extrinsic evidence such as that sought by the Subpoena — governs its interpretation.  *See* Order & Reasons, Rec. Doc. 7129 (August 16, 2012) at 20 (explaining that: "[a]n insurance policy is interpreted according to ordinary contract principles.  *Am. Home Assur. Co. v. Cat Tech L.L.C.*, 660 F.3d 216, 220 (5th Cir. 2011). The primary goal of contractual interpretation is to give effect to the written expression of the parties' intent, which requires the Court to read all parts of the contract together and to strive "to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative." *Balandran v. Safeco Ins. Co. of Am.*,972 S.W.2d 738, 741 (Tex. 1998) Where the policy's terms are unambiguous—i.e., if the terms have definite and certain legal meaning—the terms are enforced according their plain meaning.  *Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010.  However, if an ambiguity exists—i.e., if a term is susceptible to two or more reasonable interpretations—the term is interpreted in favor of coverage. *Am. Home Assur. Co.*, 660 F.3d at 220.").

The discovery sought by Liberty simply has no bearing on the determination of Liberty's contractual indemnity obligations. Because the Subpoena's requests lack the requisite "relevan[ce] to any party's claim or defense" necessary to fall within the permissible scope of discovery under Rule 26(b)(1) — and most certainly cannot be considered "reasonably calculated to lead to the discovery of admissible evidence" — the requests are improper and should be quashed.  For example, in *Equal Rights Ctr. v. Archstone-Smith Trust*, the court granted a protective order prohibiting discovery by defendant of settlement communications between plaintiff and a third party where the defendant "failed to identify how the information it seeks is reasonably calculated to lead to the discovery of admissible evidence."  251 F.R.D. 168, 171 (D. Md. 2008).  Notwithstanding defendant's argument that settlement was the basis for the indemnification claim, the court rejected the contention that the "motives" of the settling parties were relevant, finding that defendant "has not adequately established how what [the third party] or plaintiffs said or were thinking during the course of its settlement discussions with plaintiffs will lead to admissible evidence."  *Id.*; *see also New Mem'l Assocs. v. Credit Gen. Ins. Corp.*, 973 F. Supp. 1027, 1031 (D.N.M. 1997) (in suit against insurer for failing to indemnify plaintiff in prior *qui tam* action under a policy covering "only accidents, rather than intentional acts," plaintiffs could not rely on settlement negotiations to show that the government had prosecuted the prior action on a negligence theory, as the "allegations in the government's complaint . . . sought damages for intentional conduct rather than an accident"); *see also, e.g., Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 423-24 (D.N.J. 2009) (in litigation regarding contractual contribution and indemnification claims, denying defendant's motion to compel production of settlement communications between plaintiff and state governmental agency

despite defendant's potential "interest" in the materials, since defendant had failed to make "the requisite showing that the discovery will lead to the discovery of admissible evidence").

Here, too, the settlement negotiations between BP and Cameron sought by the Subpoena are wholly irrelevant to the resolution of the underlying dispute: Liberty and Cameron's conflicting interpretations of the terms and conditions of the Liberty Insurance Policy.  Because the requested documents are irrelevant, Liberty has no need for them.  Moreover, the Subpoena's requests are overbroad, seeking all documents and communications concerning the BP-Cameron Settlement, without any attempt to limit the request to particular categories of documents, and unquestionably including communications that have no possible relevance to the insurance coverage dispute.  Thus, Liberty's sweeping request for all documents and communications related to the BP-Cameron Settlement should be quashed under Fifth Circuit case law prohibiting subpoenas for materials lacking relevance to the claims and defenses of the litigated dispute.  *See e.g. Wiwa*, 392 F.3d at 820-821; *Global Oil Tools*, 2012 WL 6021331, at *4; *In re O'Hare*, 2012 WL 1377891, at *2; *Rice*, 2011 WL 5513181, at *2; *Camsoft*, 2010 WL 4739541 at *2.

## II.     LIBERTY HAS NOT SATISFIED THE HEIGHTENED STANDARD FOR DISCOVERING SETTLEMENT NEGOTIATIONS.

Even if Liberty's Subpoena sought documents relevant to the merits of its insurance coverage dispute with Cameron (it does not), the Court should quash the Subpoena on the independent ground that the documents Liberty seeks concern settlement negotiations which, particularly in the context of this MDL, should be protected from disclosure.  Many courts, including courts within the Fifth Circuit, have recognized that protecting such documents from discovery serves the strong public interest in promoting the resolution of disputes through settlement rather than protracted litigation.  Indeed, some courts, including the Sixth Circuit, have held that settlement discussions are privileged.  Even courts that have not formally

11

recognized a privilege for settlement discussions generally require a heightened showing of relevance before permitting discovery of settlement negotiations.  Particularly in a case of the magnitude and complexity of the *Deepwater Horizon* MDL, where there are many lawsuits, involving multiple parties with interrelated claims, cross-claims, and counterclaims arising out of a single event, the need for parties to be able to rely upon settlement confidentiality is especially critical and the protection of the BP-Cameron Settlement negotiations from discovery is well-warranted.

Although the Fifth Circuit Court of Appeals has not explicitly ruled on the issue, the Sixth Circuit in 2003 provided a thoroughly reasoned decision concluding that settlement negotiations in one lawsuit are not discoverable by litigants in a subsequent action.  *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003).  The *Goodyear* court found that "a settlement privilege serves a sufficiently important public interest, and therefore should be recognized."  *Id.* at 980.  The *Goodyear* court explained:

> There exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations . . . .  The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system.  In order for settlement talks to be effective, parties must feel uninhibited in their communications.  Parties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used on cross examination, under the ruse of 'impeachment evidence,' by some future third party.  Parties must be able to abandon their adversarial tendencies to some degree.  They must be able to make hypothetical concessions, offer creative *quid pro quos*, and generally make statements that would otherwise belie their litigation efforts.  Without a privilege, then parties would more often forego negotiations for the relative formality of trial.  Thus, the entire negotiation process collapses upon itself, and the judicial efficiency it fosters is lost.

*Id.*; *see also Ford Motor Co.*, 257 F.R.D. at 424 (in precluding discovery of settlement negotiations with state environmental agency, noting that "the disclosure of such negotiations in

cases such as this . . . could tend to have a chilling effect on negotiations between government entities . . . and potentially responsible parties.")

The Sixth Circuit in *Goodyear* also noted that "confidential settlement communications are a tradition in this country." 332 F.3d at 980 (citing *Palmieri v. New York*, 779 F.2d 861, 865 (2d Cir. 1985) for the proposition that "[s]ecrecy of settlement terms . . . is a well-established American litigation practice."). As an independent basis for preserving confidentiality, the Sixth Circuit further recognized that there is "no guarantee of veracity" in settlement negotiations, which are "typically punctuated with numerous instances of puffing and posturing since they are motivated by a desire for peace rather than from a concession of the merits of the claim . . . That is, the parties may assume disputed facts to be true for the unique purpose of settlement negotiations. The discovery of these sorts of 'facts' would be highly misleading if allowed to be used for purposes other than settlement." *Goodyear*, 332 F.3d at 981 (quoting *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 554 (E.D. Cal. 1990)). The Sixth Circuit reasoned that "[t]he public policy favoring secret negotiations, combined with the inherent questionability of the truthfulness of any statements made therein, leads us to conclude that a settlement privilege should exist." *Goodyear*, 332 F.3d at 981.

The *Goodyear* court further explained that "[t]he settlement privilege is also necessary because permitting third-party discovery of negotiation communications would lead to other undesirable results. In general . . . there is no transcript of the settlement talks . . . . Thus, in order to obtain or refute any evidence, the parties would have to depose each of the persons present at the negotiations. In this instance, that includes not only the representatives of [the parties], but the parties' lawyers and the district court judge himself." *Goodyear*, 332 F.3d at 982.

Courts within this circuit have applied the same reasoning.  Although a 2010 Federal Circuit decision involving a patent dispute permitted consideration of license agreements that had arisen out of patent litigation in evaluating an expert's opinion on a "reasonable royalty," *ResQNet.com Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010), the Eastern District of Texas has held that the *ResQNet* decision has *not* abrogated *Goodyear*'s prohibition against admissibility of settlement agreements.  *See Fenner Invs., Ltd. v. Hewlett-Packard Co.*, Civil Action No. 6:08-cv-273 2010 WL 1727916, at *3 (E.D. Tex. April 28, 2010) ("Contrary to Defendants' assertion, the recent *ResQNet* decision has not altered the admissibility of agreements entered into under the threat of litigation.  In *ResQNet,* the litigation-related licenses were part of the record and their admissibility was not before the court . . . .  Thus, *ResQnet* is distinguishable and does not compel the admission of evidence and testimony relating to settlement agreements in prior litigation.").  In a separate decision, the Eastern District of Texas likewise noted that "[o]n at least three instances, this district has accepted the *Goodyear* rationale and protected settlement negotiations from discovery," concluding that "*ResQNet* did not alter the law regarding discoverability."  *Software Tree, LLC v. Red Hat, Inc*., No. 6:09-cv-097, 2010 WL 2788202, at *3 (E.D. Tex. June 24, 2010).  The *Software Tree* court reasoned that:

> Continuing to exclude underlying negotiations is consistent with this Court's past decisions . . . and is most appropriate given the chilling effect such discovery would have on settlements.  While the Court recognizes internal settlement strategy may be protected by attorney-client privilege or work-product immunity, the possibility of some negotiation materials being discovered could hamper negotiation efforts and interfere with settlement discussions.  Accordingly, continuing to recognize the common law settlement privilege is the most prudent course.

*Id.* at *4. Thus, the Eastern District of Texas recognized "a settlement privilege that applies to negotiations underlying licensing agreements arising out of litigation."  *Id.*  ("[This] Court permits discovery of negotiations pertaining to agreements and licenses entered into outside the

14

context of litigation, *but not of negotiations pertaining to agreements that settle law suits*.") (emphasis added)).

Even courts that have not recognized a privilege for settlement communications often rely on the policies explicated in *Goodyear* to require a particularized showing of relevance before allowing discovery of settlement negotiations.  *E.g., In re Flat Glass Antitrust Litig.*, MDL No. 1942, No. 11-658, 2013 WL 1703864, at *1 (W.D. Pa. Apr. 19, 2013); *ABT Sys., LLC v. Emerson Elec. Co.*, No. 4:11-cv-00374-AGF, 2012 WL 6594996, at *3 (E.D. Mo. Dec. 18, 2012); *Lamoureux v. Anazaohealth Corp.*, No. 3:03-cv-01382 (WIG), 2009 WL 813977, at *2 (D. Conn. Mar. 26, 2009); *Phila. Church of Our Savior v. Concord Twp.*, No. Civ. A. 03-1766, 2004 WL 1824356, at *5 (E.D. Pa. July 27, 2004); *Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552, 562 (D.N.J. 1994).

Likewise, courts often apply a heightened standard before allowing discovery of mediation discussions.  The Second Circuit has explained the need for confidentiality of statements made in a pre-argument settlement conference in order to facilitate settlements:

> If participants cannot rely on the confidential treatment of everything that transpires during [mediation] sessions then counsel of necessity will feel constrained to conduct themselves in a cautious, tight-lipped, non-committal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute.  This atmosphere if allowed to exist would surely destroy the effectiveness of a program which had led to settlements . . . thereby expediting cases at a time when . . . judicial resources . . . are sorely taxed.

*Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*, 608 F.2d 928, 930 (2d Cir. 1979) (stating that by disclosing "a comment made by Staff Counsel about the merits of this appeal, appellee's counsel has committed a serious breach of the confidentiality essential to the purposes of pre-argument conferences").  Thus, the Second Circuit held that "a party seeking disclosure of confidential mediation communications must demonstrate (1) a special need for the confidential

15

material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality." *Teligent, Inc. v. K&L Gates LLP*, 640 F.3d 53, 58 (2d Cir. 2011).

Similarly, in 2000 the Western District of Pennsylvania granted a protective order precluding discovery of communications and documents related to the mediation of a labor dispute, adopting the Second Circuit's reasoning in *Lake Utopia* and stating that "the mediation privilege is rooted in the imperative need for confidence and trust." *Sheldone v. Pa. Tpk. Comm'n*, 104 F.Supp.2d 511, 513 (W.D. Penn. 2000). As stated by that court, "[a]bsent the mediation privilege, parties and their counsel would be reluctant to lay their cards on the table so that a natural assessment of the relative strengths and weaknesses of their opposing positions could be made." *Id.* at 514.

The same reasoning applies to the settlement communications that Liberty's Subpoena seeks. In fact, the public policy objective of facilitating settlement by promoting full and frank discussion between negotiating parties applies with all the more force in cases with the magnitude and nature of the *Deepwater Horizon* litigation. As stated by the Fifth Circuit, "[v]oluntary settlements are favored for they obviate the need for costly and time-consuming litigation. In multiparty maritime litigation, settlements should be even more encouraged." *Branch v. Fidelity & Cas. Co. of N. Y.*, 783 F.2d 1289 (5th Cir. 1986) (internal quotation and citations omitted). Such complex, high-stakes disputes would likely take many years longer to resolve if the parties could not participate in unfettered settlement negotiations with an assurance of, and reasonable reliance upon, confidentiality. The knowledge that such discussions could be subject to discovery by third parties in subsequent litigation would undoubtedly inhibit

negotiations in such complex matters, discouraging settlements to the detriment of the public, the parties and judicial resources.

In the instant litigation, the practical implications of granting the discovery that Liberty seeks would almost certainly have a chilling effect on settlement progress.  Granting Liberty access to settlement communications between BP and Cameron and related materials would signal to the parties in the *Deepwater Horizon* litigation that any written communications regarding settlement could be subject to discovery or a subpoena, providing a disincentive to engage in complex settlement discussions.  The public and judicial interest in protecting confidentiality of negotiations to promote settlement undoubtedly applies in this litigation.

Thus, documents or communications concerning negotiations of the BP-Cameron Settlement should be privileged from disclosure.  Alternatively, at a minimum such document requests should require a particularized showing of relevance before discovery is permitted. As discussed in Section I, Liberty cannot even demonstrate relevance under the normal standard, much less the particularized and heightened showing that should apply to settlement negotiations in the context of this litigation.  Therefore, documents concerning the BP-Cameron Settlement discussions should be protected from discovery, and the Subpoena should be quashed.

## III.   LIBERTY'S SUBPOENA SEEKS COMMUNICATIONS PROTECTED BY THE ATTORNEY-CLIENT AND ATTORNEY WORK PRODUCT PRIVILEGES WHOSE DISCLOSURE IS PROHIBITED.

Even assuming that the requested materials were relevant to the Liberty-Cameron dispute, or that their disclosure could be justified despite the public policy arguments in favor of preserving their confidentiality, Liberty's Subpoena on its face seeks privileged communications immune from discovery.  Under Rule 45, "the issuing court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter" unless a waiver to the privilege applies.  FED. R. CIV. P. 45(c)(3)(A)(iii).

Communications and other documents by or to an attorney and related to settlement proceedings are, unsurprisingly, routinely recognized as protected by the attorney-client and attorney work product privileges.  *See, e.g.*, *Akins v. Worley Catastrophe Response, LLC*, Civil Action No. 12-2401, 2013 WL 796095, at *12 (E.D. La. Mar. 4, 2013) (holding that e-mail from "attorneys to their clients regarding the status of th[e] litigation and the attorneys' recommendations concerning settlement" was privileged; the mere "presence of some factual information, which is not itself privileged, does not strip the remainder of the document of its privileged character"); *Borders v. Chase Home Fin. L.L.C.*, Civil Action No. 09-3020-CJB-SS, 2010 WL 890485, at *2 (E.D. La. Mar. 5, 2010) (permitting only the production of documents related to settlement agreement  "which are *not* protected from disclosure by the attorney-client privilege or the work-product doctrine") (Shushan, J.) (emphasis added); *see also, e.g.*, *Cleveland Clinic Health Sys. v. Innovative Placements, Inc.*, No. 1:11-CV-2074, 2012 WL 187979, at *3 (N.D. Ohio Jan. 23, 2012) (in suit by medical clinic against nurse staffing agency seeking indemnification for payment of settlement funds in a patient's wrongful death action, granting motion to quash defendants' "sweeping" subpoena directed to attorney for deceased patient's estate that "almost certainly" sought privileged materials, including settlement communications).

Liberty's Subpoena calls for documents that would be protected by the attorney-client and attorney work product privileges.  Unsurprisingly given the litigation, issues relating to the BP-Cameron Settlement were analyzed — and the BP-Cameron Settlement itself was negotiated — by BP's attorneys, including its in-house counsel and external counsel such as Kirkland & Ellis LLP and Covington & Burling LLP.  Thus, the Subpoena's requests for "documents and communications regarding the negotiation, drafting, and execution of the BP Settlement" or

"concerning the BP Settlement" call for production of communications among BP's counsel and drafts of the BP-Cameron Settlement written by BP's counsel, which are plainly privileged. Similarly, to the extent that BP would have any "documents and communications regarding Cameron's claim for coverage for liabilities arising out of the Deepwater Horizon Incident" or "concerning Cameron's indemnity claims against Transocean," those would be privileged analyses by attorneys.

Thus, Liberty's requests seek materials at the very heart of the attorney-client privilege protected from disclosure. *See Myers v. City of Highland Village, Tex.*, 212 F.R.D. 324, 326-27 (E.D. Tex. 2003) (granting protective order with respect to portions of memorandum reflecting attorney-client communications regarding settlement discussion as "protected by the attorney-client privilege" and recognizing that "[p]rotecting settlement discussions promotes the purpose of the attorney-client privilege, which is to encourage complete disclosure of information between attorney and client"); *Prudential Ins. Co. of Am. v. Massaro*, No. CIV. A. 97-2022, 2000 WL 1176541, at *8 (D.N.J. Aug. 11, 2000) (describing materials and communications related to, *inter alia*, settlement terms and assessment of settlement adequacy as "client confidences and core attorney-client privilege material" and holding improper disclosures of same to constitute "clear-cut violations of [an attorney's] ethical responsibility").

Communications between BP and its counsel regarding the negotiation and drafting of the BP-Cameron Settlement undoubtedly merit such protection.  Further, no possible ground exists for Liberty to assert waiver of any such privilege, since BP, a third party to this dispute, has neither disclosed nor put at issue any such communications.  Especially in consideration of the recognized policy interest in promoting settlement negotiations by preserving confidentiality,

the privileged status of the documents sought by Liberty further warrants the quashing of the Subpoena.

## IV.   LIBERTY'S SUBPOENA IS UNDULY BURDENSOME TO NON-PARTY BP BECAUSE IT SEEKS DOCUMENTS READILY ACCESSIBLE FROM PLAINTIFF CAMERON.

To the extent that the Subpoena does not seek privileged materials, the documents it requests are duplicative of those which can be more easily obtained from Cameron, who (unlike BP) is a party to this lawsuit.  Thus, the Subpoena should be quashed as unduly burdensome.

On its face, Liberty's Subpoena seeks documents that must be in Cameron's possession. In particular, the first and fourth requests seek "documents and communications between [BP] and Cameron" concerning the BP-Cameron Settlement or Cameron's indemnity claims against Transocean.   For these requests, the information sought must have originated from or been received by Cameron.

Courts will quash subpoenas to non-parties that seek documents and other materials that have either:  (1) already been produced to the requesting party by others in the litigation, or (2) are otherwise available from the actual party to the litigation.  *See, e.g.*, *Batture Fleet, Inc. v. Browner*, No. Civ.A. 00-0205, 2000 WL 748093, at *2 & n.3 (E.D. La. June 8, 2000) ("[i]n support of the conclusion that these subpoenae were unreasonable is the fact that [the subpoenaed parties] are not parties to this litigation and that material sought was/is available from the actual parties[]" (footnotes omitted); "[e]ven though [the plaintiff] might have encountered difficulty obtaining materials from the Coast Guard (which is a party to this suit), that difficulty does not grant license to issue overbroad and burdensome subpoenae on non-parties who may have access to the same information[]"); *PETCO Animal Supplies Stores, Inc. v. Ins. Co. of N. Am.*, Civil No. 10-682(SRN/JSM), 2011 WL 2490298, at *26 (D. Minn. June 10, 2011) (rejecting multiple categories of document requests to third party where such materials

were "readily and equally accessible . . . through the public record or discovery directed to [the actual parties]" as "[t]here is no basis for shifting the burden and expense of [production] on to . . . a non-party.") (citing Fed. R. Civ. P. 45(c)(3)(A)(iv))); *see also, e.g.*, *Cleveland Clinic Health Sys.*, 2012 WL 187979, at *3 (quashing non-party subpoena where "Plaintiff . . . can provide . . . all of the relevant and discoverable documents and information" and the "remainder of the Defendants' subpoena touches on irrelevant, burdensome, and likely privileged material.").   Likewise, here Liberty's Subpoena plainly seeks documents sent to or from Cameron that will necessarily be discoverable from Cameron, the plaintiff in this action. Liberty's attempt to seek the same documents from non-party BP is unreasonable and unduly burdensome in violation of Rule 45, constituting an additional independent ground for quashing the Subpoena.

## CONCLUSION

The dispute between Liberty and Cameron depends on the plain language of the Liberty Insurance Policy and the BP-Cameron Settlement as agreed and finalized, and thus negotiations and other extrinsic documents concerning the BP-Cameron Settlement are irrelevant and outside the scope of permissible discovery.   Even if those documents could have some conceivable relevance, Liberty cannot pierce the privilege that should apply to settlement documents, or demonstrate the particularized showing of relevance that should be required in the alternative. Moreover, the documents Liberty seeks are either protected under the established attorney-client and/or attorney work product privileges, or are more readily and properly available from Cameron.   For each of the foregoing reasons, BP Exploration & Production Inc. respectfully moves the Court pursuant to Federal Rule of Civil Procedure 45(c)(3) for an order quashing in its entirety the Subpoena issued by Liberty Insurance Underwriters, Inc. to non-party BP.

Dated:  June 13, 2013

Respectfully submitted,


/s / Don K. Haycraft.


Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
David B. Goodwin
dgoodwin@cov.com
Allan B. Moore
abmoore@cov.com
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for BP Exploration & Production Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that that the above and foregoing Memorandum of BP Exploration &

Production, Inc. in Support of Its Motion to Quash Liberty Insurance Underwriters' Subpoena

Seeking Irrelevant and Privileged Settlement Communications has been served on All Counsel

by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial

Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the

United States District Court for the Eastern District of Louisiana by using the CM/ECF System,

which will send a notice in accordance with the procedures established in MDL 2179, on this

13th day of June, 2013.

/s / Don K. Haycraft