UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | *<br>*<br>*<br>*<br>* | MDL NO. 2179<br><br>SECTION J<br><br>JUDGE BARBIER |
| THIS PLEADING APPLIES TO:<br>No. 12-311 | *<br>*<br>* | MAGISTRATE JUDGE SHUSHAN |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### CAMERON'S OPPOSITION TO LIBERTY'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DATED JUNE 7, 2013

Cameron International Corporation ("Cameron") respectfully submits this opposition to Liberty International Underwriters, Inc.'s ("Liberty") motion for reconsideration of the Court's Order of June 7, 2013 requiring Liberty to "produce the claim manual prepared by Ms. Rogin and Mr. Engel and any amendments or revisions of it through the date of this order." As discussed below, no reason exists to reconsider, much less reverse, that decision.

### ARGUMENT

This is now the tenth brief on this seemingly straightforward discovery issue. By this motion, Liberty asks the Court to reconsider its decision ordering the production of Liberty's "best practices" manual—the only written record of what Liberty considers to be the standard for adjusting claims, prepared by the very same personnel that adjusted Cameron's claim in this dispute, and drafted at the same time they were adjusting Cameron's claim. Liberty does not assert that this document is privileged. Liberty does not assert that this document would harm Liberty competitively if produced. And Liberty does not assert that this document would be unduly burdensome to produce.

The only reason Liberty says that the "best practices" manual is not *discoverable* is that it was "adopted after this suit was filed" and "thus was *not in effect* during the period when LIU was adjusting Cameron's claim." (*See* Rec. doc. 10358 at 5 (emphasis in original).) But that fact was not missed by the Court. Indeed, after reviewing the testimony of the principal draftsperson of the "best practices" manual, the Court stated: "While the claim manual described by Rogin was not in effect by December 2011, her testimony demonstrates its relevance." (Rec. doc. 10332 at 2.) The Court likewise directed Liberty to produce "any amendments or revisions of it through the date of this order," concluding that such documents were discoverable even though they too were "not in effect" in 2011. (*Id.*)

Liberty just disagrees with the Court's relevance determination, hardly a basis to seek reconsideration in a commercial dispute like this, especially since questions of admissibility may be addressed at trial once the truth has been discovered. *See Carr v. Capital One, N.A.*, 2010 WL 3801552, at *1 (E.D. La. Sept. 22, 2010) ("reconsidering a judgment is an extraordinary remedy that should be used sparingly." (quotation omitted)). For purposes of discovery, it is well-settled that "[t]he discovery rules are afforded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials." *Harper v. Wright*, 2012 WL 3779133, at *2 (E.D. La. Aug. 31, 2012). Accordingly, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense" and "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Cameron's request for Liberty's "best practices" manual—a single non-privileged document less than 10 pages long—easily satisfies these liberal standards, as the Court correctly concluded. This is not even a close call. As Cameron learned during the depositions of

2

Liberty's witnesses, and as the Court observed in the June 7 Order, the "best practices" manual was prepared by Jessica Rogin and edited by James Engel—two witnesses centrally involved in adjusting Cameron's claim.  (Rogin Dep. at 56, 62-63; Engel Dep. at 64; Rec. doc. 10332 at 1-2.)[1]  Ms. Rogin began drafting the manual "sometime in the fall of 2011"—the same exact time when Liberty wrongfully denied Cameron's claim—and drafting continued through the winter of early 2012.  (Rogin Dep. at 56, 62-63.)  The "objective was to put together uniform standards for claim handling for Liberty's adjusters" (Rec. doc. 10332 at 2) and, to that end, Ms. Rogin sought "to memorialize the best practices of Liberty for claim handling as [she] saw them" (Rogin Dep. at 62-63).

None of the additional testimony offered by Liberty—much of which was already submitted to the Court, and all of which could have been submitted in Liberty's supplemental submission—alters these basic facts.  For example, according to Liberty, the "new" testimony from Mr. Engel simply shows, consistent with the above, that he and Ms. Rogin "sought to collect best practices used throughout the industry."  (Rec. doc. 10358 at 6 (quoting Engel testimony).)  The rest of the additional testimony cited by Liberty goes to a separate point—whether Mr. Roberts followed or should be held to the standards memorialized in the "best practices" manuals.  (*Id.* at 7-8 (quoting Engel, Roberts, and Rogin testimony).)  That issue, of course, is for the jury to decide.  The Court made no findings on this point in the June 7 Order and it is difficult to understand how it could be a basis for seeking reconsideration.

Based on the facts recited in the June 7 Order, the Court correctly concluded that Liberty's "best practices" manual—the only written expression of what Liberty believes is the standard for adjusting claims, prepared by the same personnel that adjusted Cameron's claim,

---

[1] Excerpts from the deposition transcripts of Ms. Rogin and Messrs. Roberts and Engel cited herein are annexed hereto as Exhibits A, B, and C, respectively.

and drafted at or about the same time they were adjusting Cameron's claim—is relevant for purposes of Fed. R. Civ. P. 26 and thus discoverable. That it was not technically "in effect" when Liberty adjusted Cameron's claim is of no moment. *See, e.g.*, *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 645-46 (D. Kan. 2007) (noting in insurer bad faith action that "even manuals for periods outside the time that [the insured's] claims were handled could be relevant"). To the contrary, there are a host of additional reasons why the manual is relevant or reasonably calculated to lead to the discovery of admissible evidence, such as:

- According to Liberty, the "best practices" manual is a compendium of what Liberty considers to be the "best practices from around the industry." (Rec. doc. 10358 at 6.) Liberty also claims that Mr. Roberts "applied *industry* best practices in adjusting Cameron's claim." (*Id.* at 8 (emphasis added).) As the only written record of those "industry best practices," they are relevant to this case whether or not they were in effect in 2011.

- Cameron is entitled to explore whether, in adjusting Cameron's claim, Mr. Roberts adhered to what Liberty considers "industry best practices." Evidence that Mr. Roberts deviated from industry best practices would be directly relevant to Cameron's bad faith claims. *See, e.g.*, *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 70 (Tex. 1997) (noting that while "proof of bad faith does not require a showing that the insurer departed from the standard of conduct common to the industry, . . . such evidence may be relevant"); *see also Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("[T]estimony that Defendants deviated from industry standards supported a finding that they acted in bad faith."); *Altheim v. Geico Gen. Ins. Co.*, 2011 WL 1429735, at *5 (M.D. Fla. Apr. 14, 2011) ("[I]f the company's policies, manuals, and training materials contain guidelines that are consistent with industry standards, then non-compliance may be evidence of bad faith.").

- Mr. Roberts intends to testify at trial that he "acted consistently with Liberty's best practices." (Roberts Dep. at 26.) If Liberty's witnesses intend to testify that they followed "best practices," Cameron is entitled to know what those "best practices" are and to cross-examine them. (*See* Roberts Dep. at 25 (agreeing that it would be "helpful" if he had the guidelines "to look at them and see whether [he] acted consistently with them").)

- Cameron should be permitted to cross-examine Liberty's experts on whether Liberty adhered to "best practices" using the "best practices" manual. Likewise, Cameron's experts on bad faith should be permitted to review and analyze what Liberty believes to be the relevant industry standards for claims adjusting.

4

- Liberty's "best practices" manual is the best evidence of what policies and procedures Liberty followed in 2011. They were issued shortly after this lawsuit was filed—not years later—and Cameron should be permitted to use them to help identify what policies and procedures were "in effect" when Liberty adjusted Cameron's claim.[2] As discussed previously, such policies and procedures are relevant to Cameron's bad faith claims. *See Kirschenman v. Auto-Owners Ins.*, 280 F.R.D. 474, 486-87 (D.S.D. 2012); *Dudenhefer v. State Farm Fire & Cas. Co.*, No. 06-4380, 2007 WL 1521018, at *2 (E.D. La. May 23, 2007); *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 645-46 (D. Kan. 2007); *Brown v. Great N. Ins. Co.*, 2006 WL 2246408, at *1 (M.D. Pa. Aug. 4, 2006).[3]

Simply put, Liberty has been going to great lengths to shield its "best practices" claims manual from discovery. That is strange, to say the least, for a document that Liberty claims is not relevant and does not assert is privileged. But, as discussed above, there are numerous reasons why this document is relevant or at least likely to lead to the discovery of admissible evidence—all that must be shown under Rule 26's liberal discovery rules for a non-privileged document to be discoverable. That the "best practices" outlined in the document might not have been "in effect"—a fact issue in and of itself—goes to the *weight* that should be accorded the "best practices" manual, or at most its admissibility, but not its discoverability.

---

[2] Ironically, in Liberty's motion to compel, filed on June 7, 2013, Liberty itself takes the position that a contract amendment from February 2012, after this lawsuit was filed and around the same time as the "best practices" manual was issued, is relevant to Liberty's defenses in this action. (*See* Rec. doc. 10334-1 at 5-6.)

[3] The two cases on which Liberty relies—*Cummins, Inc. v. Ace Am. Ins. Co.*, 2011 WL 130158 (S.D. Ind. 2011), and *Marion v. State Farm Fire & Cas. Co.*, 2008 WL 723976 (S.D. Miss. 2008)—are not to the contrary. Neither case held, as Liberty asserts, that manuals that "*do not apply to the claim at issue* are not relevant or discoverable." (Rec. doc. 10358 at 5 (emphasis in original).) To the contrary, in *Cummins*, the court held that "claims manuals are relevant and discoverable" but limited plaintiff's requests because they were "unduly burdensome." *Cummins*, 2011 WL 130158, at *6. That is clearly not an issue here. Likewise, in *Marion*, the court criticized plaintiff's document requests as "vastly over inclusive," discussed "examples" of what discovery would be permitted, and did not address specific requests for a policy that did not apply to the claim at issue. *Marion*, 2008 WL 723976, at *3-4.

**CONCLUSION**

The Court correctly decided that Liberty's "best practices" manual is relevant and discoverable. No basis exists for Liberty, or the Court, to second guess that determination. Accordingly, Cameron respectfully submits that Liberty's motion should be denied.[4]

Dated:   June 14, 2013

Respectfully submitted,

 /s/ Phillip A. Wittmann
Phillip A. Wittmann, 13625
        pwittmann@stonepigman.com
Carmelite M. Bertaut, 3054
        cbertaut@stonepigman.com
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
504-581-3200
504-581-3361 (fax)

WILLKIE FARR & GALLAGHER LLP
Mitchell J. Auslander
Jeffrey B. Korn
787 Seventh Avenue
New York, New York  10019
 (212) 728-8000
mauslander@willkie.com

*Attorneys for Cameron International Corporation*

---

[4] Liberty complains that it did not receive "notice from LexisNexis File & Serve until after the Court's order granting leave to file issued on June 6." (Rec. doc. 10358 at 3 & n.2.) Putting aside that this was a day before the June 7 Order was issued, Cameron properly served its Supplemental Memorandum on June 5 and does not understand why Liberty did not receive it via LexisNexis. (*See* Exhibit D (email from LexisNexis reporting service of Cameron's Supplemental Memorandum).)

6

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Cameron International Corporation's Opposition to Liberty International Underwriters, Inc.'s Motion for Reconsideration of the Court's Order of June 7, 2013 has been served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of June, 2013.

                   */s/ Phillip A. Wittmann*