

U.S. Department of Justice

Environment and Natural Resource Division

---

*P.O. Box 7611*
*Washington, DC 20044*
202-616-6537
*Aristide.Chakeres@usdoj.gov*

June 20, 2013

**BY ELECTRONIC MAIL**
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

Re:   MDL 2179 — Reply to BP and Anadarko's Supplemental Briefs Regarding Motion to Strike Expert Testimony

Dear Judge Shushan:

The United States writes in response to BP and Anadarko's multiple submissions requesting that various United States rebuttal expert opinions be stricken. This letter will not belabor the points made in the United States submission dated June 17, 2013, but will instead focus on new points raised by BP and Anadarko since the filing of that submission.

   I.   **APPLICABLE STANDARD**

In their 26 pages of single-spaced briefing on this subject, BP and Anadarko *never* cite *any* applicable legal standard. This is because their position is unsupported by the Federal Rules and case law. Rule 26 allows a rebuttal report to be served "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(ii). In other words, a rebuttal report is proper if it counters opinions **identified by another party in its initial expert reports** served under Rule 26(a)(2)(B) or (C). As Judge Duval explained in *In re Katrina Canal Breaches Consol. Litigation*, Civil Action Nos. 05–4182, 10–866, 2012 WL 2526980, at *1 (June 29, 2012 E.D. La.), "[a]n opening expert report is an early salvo in the process of defining issues for trial, and thus it is more understandable at the expert stage that a party may need to include significant elaboration in a rebuttal report to challenge the assertions of the opponent's expert reports."[1]

---

[1] *See also Scientific Components Corp. v. Sirenza Microdevices,* 2008 WL 4911440 *2-3 (E.D.N.Y); *Long Term Capital Holdings v. U.S*, 2003 WL 21518555 *2 (D.Conn.).

The United States' rebuttal reports are required to reply to evidence, including opinions, raised in BP and Anadarko's initial expert reports, not in the defendants' Rule 30(b)(6) depositions or other testimony or documents.  Under this standard, the United States' rebuttal reports are appropriate since they contradict or rebut evidence on the same subject matter identified in the Defendants' expert reports.

BP and Anadarko have tried to create a standard that does not exist, cherry-picking passages from reports to mischaracterize the opinions of the United States experts and dredging up hundreds of pages of exhibits to show when the United States was "on notice" that BP was "contesting" various input parameters.  Respectfully, the "notice" inquiry BP invites the Court to undertake is totally irrelevant to the issue at hand.  Under BP/Anadarko's proposed rule, the United States would be required to anticipate every foreseeable argument on every foreseeable issue and provide full expert reports rebutting those arguments without ever having actually seen them.  That is not, and has never been, the rule for whether a rebuttal report is proper, because that rule would require opening reports to include "vast amounts of arguably irrelevant material…on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing the relevant material."  *In re KCB Litigation*, 2012 WL 2526980 at *1 (internal quotations omitted).  The only issue before the Court is whether the United States reports are intended to contradict or rebut evidence in the various defense expert reports.

Unlike the United States, BP never released any flow rate estimates, or submitted its analyses for external peer review.  It told the Court and parties that it might not present its own estimates of flow: "We want to hear what the government has to say before we decide whether we are going to offer our own number or just criticize them."[2]  It was impossible for the United States to divine that BP and Anadarko *would* present their own flow rate estimates, and that they would do so on the basis of new, previously undisclosed analyses.  Even if BP's arguments were foreseeable, there was no obligation under Rule 26 to disclose responsive rebuttal expert opinions unless and until BP's expert opinions were served.  The United States was well within its rights to respond to those analyses on rebuttal through the work of its rebuttal experts.

## II.     COMPRESSIBILITY- RESPONSE TO NEW BP ARGUMENTS

BP and Anadarko ably demonstrate that various United States scientists were surprised, even to the point of suspecting prevarication, at BP's shifting representations relating to flow rate.[3]  This does not help BP/Anadarko.  Drs. Kelkar, Raghavan, and Hsieh chose to believe what BP *did internally* during the response, as opposed to what they *advocated externally* when they understood there would be consequences for flow rate modeling.  BP's use of 12 microsips

---

[2] Docket # 7175, Aug 17, 2012 Working Group Conference, 52:11-18 (Statement of Andrew Langan)).

[3] Secretary Chu wrote on July 30, 2010, "Sometimes they seem to change 'facts' to suit their purposes.  Recall their change of the rock compressibility from 12 to 6 [microsips] to get a lower flow rate. …not the kind of behavior that builds trust."  Ray Mereweather, a Science Advisor, responded: "They lie."  Exhibit 9152 (contained in Attachment 1 to BP's 6/19/13 Supplemental Brief, which was erroneously dated 6/18/13).

in its modeling was the result of an internal debate reflecting scientific concerns of BP reservoir engineers regarding whether the laboratory pore volume compressibility values were understated. These internal BP documents were all on the listed Kelkar/Raghavan considered materials list, were attached to the initial United States letter brief, and are summarized in the table attached to this brief as Appendix A.

In the BP/Anadarko expert reports, Dr. Zimmerman and Dr. Blunt conducted *completely new* analyses, and the United States is entitled to rebut those analyses. Dr. Zimmerman conducted his own interpretation of the Weatherford laboratory data (ignoring BP's July 2010 internal analysis in the process), and Dr. Blunt relied on Dr. Zimmerman's work. It is immaterial whether the United States "should have known" that BP's expert witnesses *might* take a contrary position on a given issue. Until it saw BP and Anadarko's expert reports, the United States did not know what position BP would take on *any* quantification-related issue in this litigation. Further, even if the United States *had* foreseen what arguments BP might make on an issue, the United States was entitled to respond to BP's expert opinions through rebuttal reports.

### III.   OTHER UNITED STATES REBUTTAL OPINIONS

Below, we respond to new arguments made by BP and Anadarko regarding various United States experts that were not in their original June 13, 2013 submission. The United States will not repeat the arguments made in its June 17, 2013 letter responding to BP and Anadarko's original letter.

#### A.  *Dr. Zick*

BP and Anadarko have made some additional claims with respect to Dr. Zick's work. They discovered several modeling runs produced by Dr. Zick that they assert show that he considered the "oceanic separation" process prior to the submission of his initial report. This does not change the analysis. Dr. Zick believed, as stated in his rebuttal report, that an oceanic separation process was not, in principle, an unreasonable idea. But an oceanic separation process is not something that is normally modeled, and requires additional assumptions. Thus, in his opening report, Dr. Zick chose to advocate a more conventional approach. There is nothing improper in this. Once Dr. Whitson decided to present an oceanic separation process, Dr. Zick pointed out the flaws in Dr. Whitson's work, and pointed out the quantitative impact of those flaws on Dr. Whitson's calculations. This is, again, a proper rebuttal to the points raised in the report of an adversary expert.

#### B.  *Dr. Pooladi-Darvish*

In addition to the issues raised in their letter of June 13, 2013 (and responded to in our filing of June 17, 2013), BP and Anadarko seize on a portion of Dr. Pooladi-Darvish's rebuttal expert report where he acknowledges an input error (oil compressibility) for one of his calculations. The error was pointed out by various Defense experts, and Dr. Pooladi-Darvish, in rebuttal, points out that the error does not impact his conclusions because it was fixed in other calculations he performed. This is a fully appropriate rebuttal opinion and does not require any redaction. BP and Anadarko's frenzied insistence that this acknowledgement constitutes an abandonment of portions of Dr. Pooladi-Darvish's report is a blatant misreading of the acknowledgement, and their request to strike portions of his report should be denied. Once

3

again, the rebuttal focuses on points raised in BP/Anadarko reports.  BP and Anadarko also seek to strike a portion of his report relating to pore volume compressibility, where he discusses why, unlike Dr. Blunt, he employs a methodology that is not extremely sensitive to compressibility.  This passage is obviously appropriate as a rebuttal to Dr. Blunt, an adverse expert.

### C.  Drs. Kelkar and Raghavan

BP and Anadarko enlarge their attack on this report, stating that Drs. Kelkar and Raghavan are providing new, improper opinions through their "Monte Carlo" simulation and their discussion of aquifer support.  This attack is meritless.  A Monte Carlo simulation is not an independent flow rate estimate – as Drs. Kelkar and Raghavan explain, it is a method of quantifying the effect of the uncertainties of input parameters on an output.  Drs. Kelkar and Raghavan are rebutting the opinion of Dr. Blunt, who attributes a miniscule uncertainty range to his calculations.  Drs. Kelkar and Raghavan point out that there are numerous uncertainties *unacknowledged* by Dr. Blunt in his report, including the uncertainty relating to whether an aquifer is connected to the Macondo reservoir (a possibility raised in the opening report of Drs. Kelkar and Raghavan).  The Monte Carlo analysis using an input of aquifer support is a proper rebuttal to the opinion of Dr. Blunt.  BP and Anadarko also seek to strike discussion in this report of the rebuttal opinions of Drs. Zick, Roegiers, and Huffman.  Because the appropriateness of the Zick, Roegiers, and Huffman opinions is discussed above and in our June 17, 2013 submission, those arguments will not be repeated here.

### IV.  CONCLUSION

BP and Anadarko are engaging in a game of "gotcha" that is designed to limit the relevant evidence that the Court can consider regarding significant inputs to BP's flow rate estimates.  They cite no legal authorities in support of their extraordinary request, and the legal authorities that do exist are squarely against them.  The Court should reject this effort in its entirety.

    Respectfully submitted,

    */s/ A. Nathaniel Chakeres*

cc:   Liaison & Coordinating Counsel

Attachments:
Appendix A – Table of Internal BP documents relating to compressibility