UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010<br><br>THIS PLEADING APPLIES TO:<br>No. 12-311 | *  MDL NO. 2179<br>*<br>*  SECTION J<br>*<br>*  JUDGE BARBIER<br>*  MAGISTRATE JUDGE SHUSHAN<br>*<br>* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DECLARATION OF BRAD EASTMAN**

I, BRAD EASTMAN, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a member of the bar of the state of Texas and am the Vice President, Deputy General Counsel of Cameron International Corporation ("Cameron"). I submit this declaration based on my personal knowledge and in support of Cameron's Memorandum in Opposition to Liberty's Motion to Compel Cameron to Respond to Requests for Production of Documents and Produce a Privilege Log ("Motion to Compel").

2. I am Cameron's primary in-house attorney responsible for managing both the above-captioned litigation as well as all lawsuits and other proceedings arising from the Deepwater Horizon incident.

3. According to Liberty's Motion to Compel, Liberty contends that the attorney-client privilege does not extend to Cameron's outside and in-house counsel's communications involving Marsh on the grounds that "Cameron has made no evidentiary showing whatsoever that Marsh qualified as its 'representative.'" (Rec. doc. 10334-1 at 8.) To be clear, Marsh acted as Cameron's representative in all matters relating to Cameron in connection with the Deepwater Horizon litigation, Cameron's settlement negotiations with BP,

and Cameron's negotiations and discussions with its insurers, including Liberty. In that regard, Marsh was authorized by Cameron to act on the advice of and at the direction of Cameron's counsel (including myself). In the scope of its employment by Cameron, Marsh was privy to confidential communications to and from Cameron's counsel (including myself) so that counsel could better serve our mutual client, Cameron.

4. At all times relevant to this dispute (including from October 2011 – January 2012), Marsh routinely consulted with Cameron's in-house counsel (myself included) and Cameron's litigation counsel (including Beck Redden LLP and Willkie Farr & Gallagher LLP) with respect to, among other things, (1) keeping Cameron's insurers informed of all significant developments in the MDL and Cameron's negotiations with BP; (2) providing Cameron's insurers with all draft settlement agreements and incorporating the insurers' comments; and (3) negotiating with Cameron's insurers regarding the terms of their consent to and coverage for Cameron's eventual settlement payment to BP.

5. In addition, throughout Cameron's settlement negotiations with BP, Marsh worked in conjunction with, and at the direction of, Cameron's in-house counsel (myself included) and litigation counsel in navigating the insurance claims process on Cameron's behalf.

6. When Liberty refused to fund Cameron's proposed settlement with BP, Marsh acted as Cameron's representative in its settlement negotiations with Liberty. In that capacity, Marsh routinely consulted with Cameron's in-house counsel (myself included) and Cameron's litigation counsel with respect to, among other things, (1) analyzing Liberty's coverage position; (2) developing settlement and litigation strategy; and (3) communicating with Liberty to advocate for insurance coverage on Cameron's behalf. In short, throughout Cameron's settlement negotiations with Liberty, which lasted for many months, Marsh worked

in conjunction with, and at the direction of, Cameron's in-house and outside litigation counsel to develop and execute settlement and litigation strategy on Cameron's behalf.

7. At all times relevant to this dispute, Marsh was authorized to act on the advice of Cameron's counsel, and made or received confidential communications for the purpose of effectuating the legal advice of Cameron's counsel while acting in the scope of Marsh's employment for Cameron. Likewise, Cameron's communications with Marsh reflect – and if produced would reveal – Cameron's litigation strategy for the Deepwater Horizon MDL, its dispute with BP, and this lawsuit against Liberty.

8. Liberty's Motion to Compel suggests that Cameron may be adverse to Marsh. (*See* Rec. doc. 10334-1 at 7.) That is not true. At all relevant times, Marsh and Cameron have worked together to persuade Liberty that its coverage position is wrong and it should pay Cameron's claim. There is no adversity between Cameron and Marsh.

9. I have attached the following documents that support Cameron's claims of privilege and attorney work product:

- Annexed hereto as Exhibit 1 is a true and correct copy of the Client Service Agreement By and Between Marsh USA Inc. and Cameron International Corporation, dated December 31, 2008, which sets forth Marsh's role and its responsibilities to Cameron at all times relevant to this litigation.

- Annexed hereto as Exhibit 2 is a privilege log identifying the documents and communications that Cameron has withheld on attorney-client privilege or attorney work product grounds that Liberty now challenges in its Motion to Compel.

- Annexed hereto as Exhibit 3 is a true and correct copy of excerpts from the deposition transcript of James Engel, dated May 29, 2013.

- Annexed hereto as Exhibit 4 is a true and correct copy of Cameron's Responses and Objections to Liberty's First Set of Requests for Admissions, Interrogatories and Requests for Production of Documents, dated April 8, 2013.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
June 21, 2013

_____
Brad Eastman