

**MARSH**

MARSH  MERCER  KROLL
GUY CARPENTER  OLIVER WYMAN

**Client Service Agreement
By and Between
Marsh USA Inc.
and
Cameron International Corporation**

AGREEMENT, effective December 31, 2008 (the "Effective Date"), between Marsh USA Inc. ("Marsh"), and Cameron International Corporation ("Client").

It is agreed as follows:

1. **Services.**

    Marsh is hereby engaged to act as the Client's risk management advisor and consultant and insurance broker, as applicable, and shall provide the Client with the services set forth on Appendix A (the "Services") in accordance with the terms set forth herein. Appendix A may be amended from time to time by written agreement of the parties. The additional services set forth in Section 4 of Appendix A are available for additional compensation and subject to the negotiation of separate agreements.

2. **Compensation.**

    (a) Marsh shall be compensated for providing the Services to the Client as set forth on Appendix B. Appendix B may be amended from time to time by written agreement of the parties.

    (b) If there is a significant change in the Client's operations or exposures that affects the nature and scope of its insurance program and/or service needs, Marsh and the Client both agree to renegotiate Marsh's compensation in good faith as appropriate.

3. **Term and Termination.**

    (a) The term of this Agreement shall commence on the Effective Date and shall terminate one (1) year thereafter (the "Contract Year"). The Contract Year may be extended by mutual written agreement of the parties.

    (b) Notwithstanding the term, either party may terminate this Agreement upon 90 days' prior written notice to the other party. If this Agreement is terminated, Marsh will assist the Client in arranging a smooth transition process, subject to receipt by Marsh of all amounts due Marsh from the Client. However, Marsh's obligation and the obligation of its affiliates (including, if applicable, Marsh's U.K. affiliates) to provide Services to the Client will cease upon the effective date of termination, unless otherwise agreed in writing.

    (c) In the event of termination by the Client prior to expiration, Marsh's commission compensation set forth on Appendix B for the current Contract Year will be deemed fully earned at inception and Marsh's fee compensation set forth on Appendix B for the current Contract Year will be deemed earned in accordance with the following schedule, for Services performed through the termination date: 60% at commencement of the current Contract Year; 75% after four months; and 100% after seven months.

Exhibit 1

# MARSH

 MARSH  MERCER  KROLL
GUY CARPENTER   OLIVER WYMAN

(d) In the event of a termination by Marsh prior to expiration, Marsh's annual compensation will be deemed earned on a pro-rata basis.

4. **Authorization.**

Marsh shall be authorized to represent and assist the Client in all discussions and transactions with insurers relating to the lines of insurance listed on Appendix A when acting as the Client's insurance broker, provided that Marsh shall not place any insurance on behalf of the Client unless so authorized by the Client in writing.  Notwithstanding the foregoing, at all times during the performance of this Agreement Marsh shall be an independent contractor and shall not be an employee of Client.

5. **Other Terms and Conditions.**

The Standard Terms and Conditions set forth in Appendix C shall apply to the Services performed by Marsh under this Agreement.

6. **Governing Law.**

This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts of law provisions.

7. **Miscellaneous.**

This Agreement, together with all appendices attached hereto, contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all written or oral prior agreements, understandings and negotiations with respect to such matters.  This Agreement may be modified or otherwise amended and the observance of any term of this Agreement may be waived, only if such modification, amendment or waiver is in writing and signed by the parties hereto.  This Agreement shall be binding upon and inure to the benefit of the parties' respective successors.  Neither party shall have any liability for any failure or delay in performance of its obligations under this Agreement because of circumstances beyond its reasonable control, including, without limitation, acts of God, fires, floods, earthquakes, acts of war or terrorism, civil disturbances, sabotage, accidents, unusually severe weather, governmental actions, power failures, computer/network viruses that are not preventable through generally available retail products, catastrophic hardware failures or attacks on its server.

**Marsh USA Inc.**

By: _Fed. Heck_   Date: _1/6/09_

Patrick R Hedrick
Managing Director

Accepted and agreed:

**Cameron International Corporation**

By: _____   Date: _____

Anthony M. Black
Director, Risk Management

2

# MARSH

MARSH  MERCER  KROLL
GUY CARPENTER  OLIVER WYMAN

**Appendix A
Scope of Services**

1.  Marsh will act as the Client's risk management advisor and consultant and insurance broker, as applicable,  with respect to the following lines of insurance (effective dates noted in parenthesis):

    (a)  Aviation and Aerospace
    (b)  Multinational
    (c)  Umbrella & Excess Liability
    (d)  Crime/Fidelity
    (e)  Special Risk
    (f)  Directors & Officers Liability
    (g)  Employment Practices Liability
    (h)  Fiduciary Liability
    (i)  Cargo
    (j)  Marine Liability
    (k)  Surety

2.  As respects the lines of insurance in Section 1, above, Marsh shall provide the following services:
    (a)  Work with the Client to assess the Client's risk exposures;
    (b)  Work with the Client to design and develop the Client's insurance program;
    (c)  Assist with documentation and other steps to obtain commitments for and implement the Client's insurance program upon the Client's instructions;
    (d)  Keep the Client informed of significant changes and or trends in the insurance marketplace and provide the Client with annual information on market trends;
    (e)  Assist the Client in identifying insurers. Solicit quotes from insurers selected by the Client for the placement of Client's insurance program in accordance with the Client's instructions.
    (f)  Conduct a Renewal Strategy Meeting in advance of each placement.
    (g)  Negotiate on the Client's behalf with insurers and keep the Client informed of significant developments in the negotiations;
    (h)  Assist the Client with the evaluation of options received from the insurance market;
    (i)  Use best efforts to place insurance on behalf of the Client as directed by the Client and secure the Client's approval prior to requesting insurers to bind coverage;
    (j)  Follow up with insurance carriers for timely issuance of policies and endorsements;
    (k)  Promptly respond to Client's questions related to coverage placed by Marsh or the placement process;
    (l)  Deliver binders on or before the effective date of coverage being placed, subject to placement;
    (m) Process or facilitate the processing and delivery of certificates or memoranda of insurance and auto identification cards with respect to insurance policies placed by Marsh, as requested by the Client;
    (n)  Review policies and endorsements for conformity to agreed terms and coverages;
    (o)  Provide coverage summaries for all new placements and updates on changes to existing policies;
    (p)  Review premium and exposure audits, rating adjustments, dividend calculations and loss data;
    (q)  Assist the Client in establishing claims reporting procedures to insurers,
    (r)  Monitor published financial information of the Client's current insurers and alert the Client when the status of one or more of such insurers falls below Marsh's minimum financial guidelines.  Insurers with whom the Client's risks have been placed will be

A-1

# MARSH



MARSH   MERCER   KROLL
GUY CARPENTER   OLIVER WYMAN

deemed acceptable to the Client, in the absence of contrary instructions from the Client;

(s) Provide the Client with detailed invoices, except in the case of direct billing by insurers. Remit premiums to insurers and taxes and fees to the relevant authorities on a timely basis, following receipt thereof from the Client.

(t) Assist the Client in the development and implementation of internal claims handling procedures,

(u) Assist the Client with initial reporting of claims to Insurers as follows:
- Evaluate coverage applicability
- With the exception of Workers' Compensation and/or Primary Casualty claims, prepare loss notices to insurers
- Notify insurers of claims, provided that the Client's Marsh claims representative is informed in writing by the Client of the claim, with details of the claim, and Marsh has placed the applicable policies or the Marsh claims representative has been provided written notice by the Client of the applicable carrier and policies.
- Coordinate responses to, meetings with and loss site visits by, insurers

(v) Assist the Client with the settlement of claims with Insurers as follows:
- Assist in the development of settlement strategies
- Assist with insurer negotiations

(w) Provide benchmarking information for lines of insurance placed by Marsh,

(x) Upon the Client's request, review Client's contracts with respect to insurance and risk management related issues.

(y) Assist the Client with oversight of claims administration, as follows:
- Assist the Client with evaluating claims trends on the following lines of insurance:
  - Aviation and Aerospace
  - Multinational
  - Umbrella & Excess Liability
  - Fidelity Bond (Crime Insurance)
  - Special Risk
  - Directors & Officers Liability
  - Employment Practices Liability
  - Fiduciary Liability
  - Cargo
  - Marine Liability
  - Surety

Sections 2(e), (g), (i), (j), (l), (m), (s), (u) and (v) will only apply with respect to placements for which Marsh is acting as the Client's insurance broker.

3. Whenever the Marsh client executive is informed in writing by the Client that a claim has been notified to the primary carrier, Marsh will notify all applicable excess carriers of the claim, unless the Client gives the Marsh client executive contrary instructions in writing, provided that Marsh has placed the applicable excess policies or the Marsh client executive has received written notice from the Client of the applicable carrier and policies. If Marsh is instructed not to provide notice to any excess carrier, Marsh shall have no responsibility for any consequences arising out of the failure to give notice.

4. Additional Services are available for separate compensation and shall be agreed upon in advance and addressed by amendment to this agreement or by separate agreement (in certain cases with affiliates of Marsh). Such additional services include, but are not limited to:

A-2

# MARSH

MARSH   MERCER   KROLL
GUY CARPENTER   OLIVER WYMAN

- Actuarial analysis of Workers' Compensation, General Liability, and Automobile Liability claims, or other lines of insurance;
- Consulting relating to workers' compensation cost containment, including behavioral risk management, absence management, cumulative injury management, financial diagnostics and custom cost containment solutions;
- Business interruption and other claim valuation services offered by Kroll's Forensic Accounting practice;
- Environmental risk consulting services;
- Operations and assets consulting services, including business continuity management, supply chain risk management, loss control and engineering support services and strategic risk assessments;
- Claims services other than those specified above, including catastrophic claims support, mass tort claims support, claims management services, special claims advocacy services and archival research;
- Services in connection with loss portfolio transfers and alternative risk financing, including placements made in connection with such services;
- Captive insurance company feasibility studies;
- Establishment and administration of captive insurers;
- Placement of non-recurring insurance, including, but not limited to:
  - "one-time" placements for construction projects,
  - "one-time" placements for marine/cargo risks,
  - "one-time" placements for surety,
  - Placements for specific financial risks, such as trade credit,
  - Placements involving significant quantitative or actuarial analysis or modeling,
  - Placement of risks with financial institutions other than insurance carriers, and
  - Placements of risks not customarily accepted by insurers;
- Employee benefits services;
- Pension plan consulting;
- Compensation consulting;
- Executive deferred compensation services;
- Risk management claims information systems, including STARS and TrendTracker software programs, and related services;
- Enterprise Risk Management consulting;
- Strategic Risk Assessment;
- Provision of Marsh personnel on an out-sourced basis;
- Intellectual Property Consulting;
- Security Consulting;
- Insurance-related mergers and acquisition due diligence services and transactional solutions;
- Placement and servicing of owner controlled insurance programs; and
- Interactive on-line client services.

A-3

**MARSH**

MARSH   MERCER   KROLL
GUY CARPENTER   OLIVER WYMAN

### Appendix B
### Compensation

For all lines of insurance coverage listed on Appendix A, Section 1 except those listed below (the "Fee Coverages"), Marsh will deliver the Services to the Client for an annual fee of $▒▒▒▒▒▒▒▒

The annual fee shall be paid by the Client commencing December 31, 2008 in equal monthly installments.

Prior to each placement by Marsh for the Client, Marsh shall disclose to the Client and obtain the Client's approval of any commissions to be collected by Marsh or its affiliates with respect to such placement. Marsh shall credit amounts equal to any retail commissions collected by Marsh or its affiliates with respect to the Fee Coverages against remaining installments of the annual fee (except as provided below) and, to the extent in excess of the remaining installments, refund previously paid installments of the annual fee. In the event such retail commissions for a Contract year exceed the annual fee for that year, then such excess retail commissions shall be returned to the Client if permitted by law. Otherwise, an amount equal to such excess retail commissions shall be carried forward and applied against Marsh's annual compensation for subsequent years if permitted by law. Any wholesale commissions collected by Marsh or its affiliates will not be credited against the annual fee. In addition, any enhanced commissions collected by Marsh or its affiliates on placements incepting on or after January 1, 2009 will not be credited against the annual fee.

Surety services hereunder include the handling of day to day bond needs, renewal bonds, invoicing and tracking outstanding bond liability for existing entities. This includes routine new bond requests provided the scope is similar to bonds required in the past. Marsh reserves the right to negotiate commissions or additional fee for any unforeseen large non-routine obligation. Should this instance arise, Marsh and the Client both agree to renegotiate Marsh's surety compensation in good faith as appropriate.

As respects the following lines of insurance coverage,
  (a) Aviation and Aerospace
  (b) Cargo
  (c) Marine Liability
  (d) Surety

Marsh shall be compensated for providing the Services to the Client through commissions received from insurance companies. In addition, if in Marsh's judgment commissions collected or to be collected by Marsh and its affiliates for a particular placement(s) do not adequately compensate Marsh and its affiliates for the Services provided by them to the Client with respect to such placement(s), Marsh may request that the Client pay Marsh and/or its affiliates an additional fee. Any such additional fee shall only be paid if agreed in writing by the Client and will be subject to the requirements of applicable law. Prior to each placement by Marsh for the Client, Marsh shall disclose to the Client and obtain the Client's approval of any commissions to be collected by Marsh or its affiliates with respect to such placement.

In addition to the compensation set forth above, Marsh's foreign offices and affiliates shall be entitled to receive commissions on foreign local placements made on behalf of the Client or its foreign subsidiaries, which shall be in addition to and not be credited against the annual fee. Marsh shall disclose to the Client and obtain the Client's approval of such commissions prior to placement. Marsh may make such disclosure to and obtain such approval from the Client's local operating management.

B-1

# MARSH

MARSH   MERCER   KROLL
GUY CARPENTER   OLIVER WYMAN

In the event (i) the Client elects to obtain insurance for a particular line of coverage from a foreign insurer and that insurer is domiciled in a country not part of the Client's insurance program with respect to such line of coverage as of the commencement date of this Agreement and (ii) the resources and services of a foreign Marsh affiliate are necessary or appropriate for such placement, Marsh and the Client shall negotiate additional compensation for such services and/or modification to Marsh's compensation in good faith.

Any commissions collected by Marsh or its affiliates shall be considered fully earned at the time of placement, including if an insurance policy placed by Marsh or its affiliates for the Client or its foreign subsidiaries is terminated by the Client or its foreign subsidiaries prior to expiration unless such policy is replaced by another policy placed by Marsh or its affiliates for the Client or its foreign subsidiaries during the term of this Agreement.

B-2

# MARSH

MARSH   MERCER   KROLL
GUY CARPENTER   OLIVER WYMAN

**Appendix C**
**Standard Terms and Conditions**

These Standard Terms and Conditions are part of the attached Client Service Agreement between Cameron International Corporation (the "Client") and Marsh USA Inc. ("Marsh").

1. **Taxes and Fees.**

   In certain cases, insurance placements that Marsh makes on the Client's behalf may require the payment of insurance premium taxes (including U.S. federal excise taxes), sales taxes, use taxes, surplus or excess lines and similar taxes and/or fees to federal, state or foreign regulators, boards or associations. The Client agrees to pay such taxes and fees, whenever assessed. To the extent practical, such taxes and fees will be identified by Marsh on invoices covering such placements. Any such taxes and fees collected by Marsh will be promptly remitted by Marsh to the appropriate authorities.

2. **Client Responsibilities.**

   The Client shall be solely responsible for the accuracy and completeness of information and other documents furnished to Marsh and/or insurers by the Client and the Client shall sign any required application for insurance. The Client recognizes and agrees that all insurance coverages placed in connection with this Agreement and all Services, evaluations, reports and recommendations provided by Marsh hereunder are based on data and information furnished by the Client. Marsh will be under no obligation to investigate or verify the completeness or accuracy of any such data or information, nor will Marsh have any liability for any errors, deficiencies or omissions in any Services, evaluations, reports or recommendations provided to, or any insurance coverages placed on behalf of, the Client that are based on such inaccurate or incomplete data or information. The Client understands that the failure to provide all necessary information to an insurer, whether intentional or by error, could result in the impairment or voiding of coverage.

   The Client will review all policies, endorsements and program agreements delivered to it by Marsh and will advise Marsh of anything which the Client believes is not in accordance with the negotiated coverage and terms within thirty days following receipt.

3. **Intermediaries.**

   (a) When in Marsh's professional judgment it is necessary or appropriate and subject to the Client's prior approval, Marsh may utilize the services of other intermediaries, including wholesale brokers, to assist in the marketing of the Client's insurance. Such intermediaries may be affiliates of Marsh.

   (b) Wholesale brokers may represent insurers or act as managing general agents. Prior to utilizing a wholesale broker in connection with a placement for the Client, Marsh shall disclose to the Client the compensation received or to be received by Marsh and its affiliates in connection with the wholesale placement, any interests of Marsh and its affiliates in the wholesale broker, any contractual agreements between Marsh and its affiliates, on the one hand, and the wholesale broker, on the other, and alternatives to using the wholesale broker.

   (c) Marsh shall disclose to the Client the compensation of any Marsh affiliated intermediaries utilized in connection with the Client's placements, and obtain the

C-1

# MARSH

MARSH   MERCER   KROLL
GUY CARPENTER   OLIVER WYMAN

Client's consent to such compensation, prior to the binding of coverage. Marsh shall disclose to the Client the compensation of any non-Marsh affiliated intermediaries utilized in connection with the Client's placements to the extent known by Marsh.

4. **Other Revenue.**

(a) If the Client requests assistance with obtaining premium financing in connection with the Client's placements and Marsh provides such assistance, Marsh may receive compensation from the finance company that provides premium financing to the Client. Marsh shall provide to the Client information relating to Marsh's and its affiliates' arrangements with and interests in the premium finance companies to be considered by the Client and the compensation that Marsh and its affiliates would receive from finance companies with respect to the Client's placements.

(b) Marsh earns and retains interest income on premium payments held by Marsh on behalf of insurers during the period between receipt of such payments from clients and the time such payments are remitted to the applicable insurer, where permitted by applicable law.

5. **Confidentiality.**

(a) Confidential Information.
The Client may provide Marsh with certain proprietary and confidential information ("Confidential Information") in connection with the Services provided by Marsh under this Agreement. Neither Marsh nor any of its employees or agents directly or indirectly shall disclose to any third party or use any Confidential Information furnished by or on behalf of Client for any purpose except in furtherance of the Services and in furtherance of other insurance brokerage, risk consulting, risk financing, risk transfer, employees benefits or other insurance-related services rendered by Marsh to Client, which may include in the normal course of business the release to insurers and other financial institutions of Confidential Information relevant to the underwriting and/or evaluation of Client's risks and the processing of its claims, provided that such insurers and financial institutions are informed of the confidential nature of such information. Marsh shall take all steps reasonably required to maintain the confidentiality of Confidential Information in Marsh's possession. The transmission of Confidential Information via electronic data transmission networks which provide for the security of users' data shall be deemed consistent with Marsh's obligations hereunder unless such use is contrary to Client's express instructions.

(b) Exceptions.
The restrictions and agreements set forth above shall not apply to any Confidential Information: (i) which at the time disclosed to or obtained by Marsh is in the public domain; (ii) which becomes part of the public domain through no act, omission or fault of Marsh; (iii) which Marsh's records demonstrate was developed independently by Marsh or was received by Marsh from a third party which Marsh had no reason to believe had any confidentiality or fiduciary obligation to the Client with respect to such information; (iv) which is required to be disclosed by law, including, without limitation, pursuant to the terms of a subpoena or other similar document; provided, however, Marsh shall, to the extent practical, give prior timely notice of such disclosure to the Client to permit the Client to seek a protective order, and, absent the entry of such protective order, Marsh shall disclose only such Confidential Information that Marsh is advised by its counsel must be disclosed by law; or (v) following the lapse of two years after disclosure of such information to Marsh.

C-2

# MARSH

MARSH  MERCER  KROLL
GUY CARPENTER  OLIVER WYMAN

(c) Return of Confidential Information.
As between the Client and Marsh, Confidential Information shall be the sole and exclusive property of the Client. Upon the Client's request, all documents and records in Marsh's possession containing Confidential Information shall be returned to the Client; provided, however, that Marsh may retain copies of documents that may contain Confidential Information which are necessary for the conduct and proper record keeping of Marsh's business in accordance with standard operating procedures or applicable law.

(d) Remedy.
It is understood and agreed that money damages would not be a sufficient remedy for any breach of these confidentiality provisions and the Client shall be entitled to injunctive relief as a remedy for such breach, without prejudice to any other rights or remedies available to the Client under applicable law.

6. **Record Retention.**

Files (other than core documents, as defined in Marsh's record retention policy, including insurance policies, which are permanently retained) will not be retained for more than five years after the expiration of a particular policy's term.

7. **Disclaimers: Limitation of Liability.**

(a) Marsh does not speak for any insurer, is not bound to utilize any particular insurer and does not have the authority to make binding commitments on behalf of any insurer, except under special circumstance which Marsh shall always endeavor to make known to the Client. Marsh shall not be responsible for the solvency of any insurer or its ability or willingness to pay claims, return premiums or other financial obligations. Marsh does not guarantee or make any representation or warranty that insurance can be placed on terms acceptable to the Client.

(b) If Marsh has taken over any existing program or policies implemented by another broker, Marsh will not assume any responsibility for the adequacy or effectiveness of those programs or policies or any acts or omissions occurring prior to Marsh's engagement. Within 45 days, Marsh will have completed a review of such programs and policies and will make recommendations it believes are necessary.

(c) Any loss control services and/or surveys performed by Marsh under this Agreement are advisory in nature. Such services are limited in scope and do not constitute a safety inspection as provided by a safety engineering service. Marsh does not claim to find or include every loss potential, hazard, statutory or code violation or violation of good practice. All surveys and reports are based upon conditions observed and information supplied by the Client. Marsh does not expressly or impliedly guarantee or warrant in any way the safety of any site or operation or that the Client or any of its sites or operations is in compliance with federal, state or local laws, codes, statutes, ordinances or recommendations. In any event, Marsh's liability if any, relating to or arising out of loss control services performed by it for the Client shall not exceed the total compensation paid to Marsh under this Agreement.

C-3