UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf of Mexico, on April 20, 2010<br><br>This document applies to:<br>*All Cases* | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br>MAGISTRATE SHUSHAN |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF TRITON ASSET LEASING GMBH'S RULE 52(c)
MOTION FOR JUDGMENT ON PARTIAL FINDINGS

Triton Asset Leasing GmbH, by and through its undersigned counsel, respectfully submits this Memorandum of Point and Authorities in Support of its Motion for Judgment on Partial Findings under Federal Rule of Civil Procedure 52(c) for exoneration from liability under the Limitation of Liability Act, 46 U.S.C. §§ 30501-30512.

Triton's motion is based this Memorandum of Points and Authorities, all testimony admitted during Phase One of the Limitation of Liability trial, all pleadings and records in this case, and any further briefing and argument the Court may hear.  For the reasons stated below, this Court should grant judgment on partial findings to Triton Asset Leasing GmbH in the limitation action.

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................2

    A.    Petitioners in the Limitation Action .......................................................2

    B.    Triton Transferred the Deepwater Horizon Pursuant to a Bareboat Charter on August 17, 2001 ..............................................................3

RULE 52(C) STANDARD ....................................................................................................4

ARGUMENT .......................................................................................................................4

    I.    Judgment Should Be Granted in Favor of Triton in the Limitation of Liability Action ..............................................................................4

        A.    A Vessel Owner Is Not Liable for Unseaworthiness or Negligence That Arises After the Date of a Bareboat Charter ....................................5

        B.    The Deepwater Horizon Was Subject to a Bareboat Charter ..............7

        C.    Triton Is Entitled To Exoneration Because There Is No Evidence of Negligence or Unseaworthiness Prior to the Date of the Bareboat Charter ..................................................................8

CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Agrico Chem. Co. v. M/V BEN MARTIN*,
  664 F.2d 85 (5th Cir. 1981) .................................................................................................. 6

*Aubey v. Noble Drilling*,
  24 F.3d 240 (5th Cir. 1994) ................................................................................................... 4

*Baker v. Raymond Int'l, Inc.*,
  656 F.2d 173 (5th Cir. 1981) ................................................................................................. 7

*Coakley v. SeaRiver Mar., Inc.*,
  319 F. Supp. 2d 712 (E.D. La. 2004) .................................................................................... 6

*Colletti v. Tiger Tugz, LLC*,
  2011 WL 6337457 (W.D. La. Dec. 16, 2011) ....................................................................... 7

*Domingue v. Ocean Drilling & Exploration Co.*,
  923 F.2d 393 (5th Cir.1991) .................................................................................................. 5

*Firemen's Fund Ins. Cos. v. M/V VIGNES*,
  794 F.2d 1552, 1556 (11th Cir. 1986) ................................................................................... 9

*Fontenot v. Mesa Petroleum Co.*,
  791 F.2d 1207 (5th Cir. 1986) ............................................................................................... 5

*Forrester v. Ocean Marine Indem. Co.*,
  11 F.3d 1213 (5th Cir. 1993) ............................................................................................. 5, 6

*Gateway Tugs, Inc. v. Am. Commercial Lines, Inc. (In re Kristie Leigh Enters., Inc.)*,
  72 F.3d 479 (5th Cir. 1996) ................................................................................................... 5

*Guzman v. Pichirilo*,
  369 U.S. 698 (1962) ............................................................................................................... 7

*Hewitt v. Am. Pollution Control Corp.*,
  2012 U.S. Dist. LEXIS 75242 (E.D. La. May 31, 2012) ...................................................... 6

*Huss v. The King Co.*,
  338 F.3d 647 (6th Cir. 2003) ................................................................................................. 6

*In re the Complaint of Admiral Towing & Barge Co.*,
  767 F.2d 243 (5th Cir. 1985) ................................................................................................. 7

## TABLE OF AUTHORITIES
## (continued)

Page(s)

*In re the Complaint and Petition of Lloyd's Leasing Ltd.*,
  1991 A.M.C. 2113 (S.D. Tex. 1990) .................................................................................. 5

*In re Tidewater Barge Lines, Inc.*,
  2006 A.M.C. 542 (D. Ore. 2005) ....................................................................................... 7

*Kerr-McGee Corp. v. Law*,
  479 F.2d 61 (4th Cir. 1973) ............................................................................................... 6

*Lewis v. Lewis & Clark Marine, Inc.*,
  531 U.S. 438 (2001) ........................................................................................................... 5

*McAleer v. Smith*,
  57 F.3d 109 (1st Cir. 1995) ............................................................................................... 7

*Mitchell v. Trawler Racer, Inc.*,
  362 U.S. 539 (1960) ........................................................................................................... 9

*Picou v. D&L Towing, Inc.*,
  2010 WL 2696468 (E.D. La. July 2, 2010) .................................................................. 1, 6

*Torch, Inc. v. Alesich*,
  148 F.3d 424 (5th Cir. 1998) ......................................................................................... 6, 7

*Trico Marine Assets Inc. v. Diamond B Marine Servs., Inc.*,
  332 F.3d 779 (5th Cir. 2003) ............................................................................................. 5

*United States v. Shea*,
  152 U.S. 178 (1894) ........................................................................................................... 7

*Walker v. Braus*,
  995 F.2d 77 (5th Cir. 1993) ............................................................................................... 6

*Weber v. Gainey's Concrete Prods., Inc.*,
  159 F.3d 1356 (5th Cir. 1998) ........................................................................................... 4

*Wsol v. Fiduciary Mgmt. Assocs., Inc.*,
  266 F.3d 654 (7th Cir. 2001) ............................................................................................. 4

**FEDERAL STATUTES**

46 U.S.C. §§ 30501-30512 .................................................................................................. 1, 4

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**FEDERAL RULES**

Federal R. Civ. Proc. Rule 52(c) ........................................................................................ 1, 4

**OTHER AUTHORITIES**

2 Schoenbaum, *Admiralty and Maritime Law* § 11-3 at 7 (4th ed.) ............................................. 6

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **INTRODUCTION**

Triton Asset Leasing GmbH was the owner of the *Deepwater Horizon* on April 20, 2010. Nearly a decade earlier, in August 2001, Triton bareboat chartered the rig to Transocean Holdings LLC, another Transocean entity that is also a party to this trial. When a vessel is chartered under a bareboat charter (also known as a demise charter) the vessel owner is not responsible for negligence or unseaworthy conditions that arise *after* the date of the charter. *See, e.g.*, *Picou v. D&L Towing, Inc.*, 2010 WL 2696468, at *3-*4 (E.D. La. July 2, 2010) (Vance, J.).

No party has seriously contended, let alone proven, negligence or unseaworthiness prior to August 2001. The negligence of the drill crew that Transocean Deepwater Inc. has admitted through its plea agreement occurred on April 20, 2010; there is no basis to conclude that any actions before August 2001 constituted negligence causing the Macondo spill. Nor is there any basis to find that the *Deepwater Horizon*, which entered service only in April 2001 and was fully certified, was unseaworthy just four months later in August 2001.

Because there was no negligence before the date of the Bareboat Charter, and because the *Deepwater Horizon* was unquestionably seaworthy on that date, Triton is entitled to exoneration from liability under the Limitation Act of 1851, and this Court should grant judgment on partial findings under Rule 52(c) as to Triton.[1]

---

[1] This motion is addressed to all claims filed in the limitation action as to Triton. These claims are included in, *inter alia*, the First Amended B1 Master Claim / Master Complaint (Rec. Doc. 1128); the B3 Master Claim / Master Complaint (Rec. Doc. 881); the Local Government Entity Master Complaint (Rec. Doc. 1510); Alabama's First Amended Complaint (Rec. Doc. 1872); and Louisiana's First Amended Complaint (Rec. Doc. 2031); as well as the cross-complaints of the co-defendants (Rec. Docs. 2074, 2076).

**BACKGROUND**

A.   **Petitioners in the Limitation Action**

On May 13, 2010, Triton, Transocean Offshore Deepwater Drilling Inc., Transocean Holdings LLC, and Transocean Deepwater Inc., as owner, managing owners, and owners *pro hac vice* of the *Deepwater Horizon* filed a limitation of liability action in the U.S. District Court for the Southern District of Texas seeking exoneration from or limitation of their liability to the value of their interest in the *Deepwater Horizon* and her then pending freight at the time of the incident, a total of $26,764,083.  *See* Rec. Doc. 1, Case No. 4:10-cv-01721 (S.D. Tex.).  The petition was ultimately transferred to this Court, and Phase One of the limitation of liability trial has now concluded.

The four petitioning Transocean entities have different roles.  Triton was the registered legal owner of the *Deepwater Horizon* on April 20, 2010.  TR. 4518:21-22 (Newman); TR. 5922:17-21 (Ambrose); TREX 52236 (bareboat charter); D-6729 (demonstrative showing Transocean entities).  On August 17, 2001, the predecessor of Triton (Transocean Offshore International Ventures Limited) chartered the *Deepwater Horizon* to the predecessor of Transocean Holdings LLC (R&B Falcon Drilling Co.) through a demise or bareboat charter.  TREX 52536.[2]  Transocean Holdings was the contracting party with BP for the Macondo Well.  TR. 4518:18-20 (Newman); Rec. Doc. 5927 (Stipulated Fact #98).  Transocean Offshore Deepwater Drilling Inc. ("TODDI") employed the onshore management team in the United States (TR. 4518:15-18 [Newman]; D-6729.)  Transocean Deepwater Inc. ("TDI") employed the offshore employees on the *Deepwater Horizon*.  TR. 4518:20-21 (Newman).  TDI is the entity that pleaded guilty to negligent discharge of oil under the Clean Water Act.

---

[2] For convenience, a copy of the charter agreement (TREX 52536) is attached as Exhibit A.

2

**B.    Triton Transferred the *Deepwater Horizon* Pursuant to a Bareboat Charter on August 17, 2001**

Triton, the legal and registered owner of the *Deepwater Horizon*, transferred the possession, command and control of the *Deepwater Horizon* to Transocean Holdings pursuant to a Bareboat Charter Party dated August 17, 2001 (the "Bareboat Charter").[3]  TREX 52536.  As set forth by the express terms of the Bareboat Charter, Transocean Holdings, as Charterer, was granted "the exclusive right to possession and control of the Rig [*Deepwater Horizon*]."  TREX 52536.6 (art. 4.2).  Under article 4.1, entitled "Use of Rig: Compliance with Laws," Transocean Holdings was given "the full use of the Rig" and retained the right to "employ the Rig throughout the world for any legal purpose."  TREX 52536.6 (art. 4.1).  Transocean Holdings assumed the obligation to "man, victual, navigate and operate, supply, fuel, maintain and repair the [*Deepwater Horizon*]."  *Id.*  Transocean Holdings further assumed the sole obligation to provide such equipment, outfit, tools, spare and replacement parts as may be required for the use and operation of the *Deepwater Horizon*.  *Id.*  The possession, use, operation and maintenance of the *Deepwater Horizon* was at the sole risk of Transocean Holdings until re-delivery of the *Deepwater Horizon* to Triton.  *Id.*  Under article 5.1 of the Bareboat Charter, it was Transocean Holdings, not Triton, who was to maintain and preserve the rig in accordance with good commercial maintenance practices and to maintain the rig's classification and certification.  TREX 52536.7 (art. 5.1).  And finally, under article 4.1 of the Bareboat Charter, Transocean

---

[3] The original owner of the *Deepwater Horizon* and original party to the Bareboat Charter, Transocean Offshore International Ventures Limited, assigned ownership of the rig and rights under the Charter to Transocean Inc. on December 20, 2004 (TREX 52536.26), which subsequently on December 21, 2004, assigned ownership and rights under the Bareboat Charter to Triton Hungary Asset Management Kft. (TREX 52536.28).  Triton Hungary transferred ownership of the rig and rights under the Bareboat Charter to Triton Asset Leasing GmbH on August 17, 2009.  TREX 52536.57.  The original charterer, R&B Falcon Drilling Co., assigned its rights to the Bareboat Charter to Transocean Holdings LLC on October 31, 2002.  TREX 52536.20.  For convenience, we refer to Triton and Transocean Holdings as the respective parties to the Bareboat Charter, not their predecessors.

3

Holdings was to "comply with all applicable laws and regulations and with the applicable provisions and conditions of all licenses, permits, consents and approvals of any governmental authority having jurisdiction over the Rig." TREX 52536.6 (art. 4.1).

## RULE 52(C) STANDARD

Federal Rule of Civil Procedure 52(c) provides that:

> [i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim . . . that, under the controlling law, can be maintained . . . only with a favorable finding on that issue.

A judgment on partial findings under Rule 52(c) "streamlines bench trials by authorizing the judge, having heard all the evidence the plaintiff has to offer, to make findings of fact adverse to the plaintiff, including determinations of credibility, without waiting for the defense to put on its case." *Wsol v. Fiduciary Mgmt. Assocs., Inc.*, 266 F.3d 654, 656 (7th Cir. 2001). And, because the district court is acting in the capacity of a finder of fact on a Rule 52(c) motion, the plaintiff is not entitled to any favorable inferences nor is the Court to view the evidence in a light most favorable to the plaintiff. *Weber v. Gainey's Concrete Prods., Inc.*, 159 F.3d 1356 n.1 (5th Cir. 1998); *see also Aubey v. Noble Drilling,* 24 F.3d 240 (5th Cir. 1994) (explaining that, when considering a Rule 52(c) motion, a district court will "weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies").

## ARGUMENT

### I. Judgment Should Be Granted in Favor of Triton in the Limitation of Liability Action

The Limitation of Liability Act, 46 U.S.C. §§ 30501-30512, "allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.*,

4

531 U.S. 438, 439 (2001).[4]  To determine a vessel owner's entitlement to limitation, the Court must first determine whether the claimant has proven "that negligence or unseaworthiness caused an accident," and then, if the claimant meets his burden, "an owner seeking limitation must show it lacked privity or knowledge of the condition."  *Gateway Tugs, Inc. v. Am. Commercial Lines, Inc. (In re Kristie Leigh Enters., Inc.)*, 72 F.3d 479, 481 (5th Cir. 1996); *accord Trico Marine Assets Inc. v. Diamond B Marine Servs., Inc.*, 332 F.3d 779 (5th Cir. 2003).  Judgment here should be granted in favor of Triton exonerating it from liability because Plaintiffs have not shown any negligence or any unseaworthy condition before the August 17, 2001, Bareboat Charter—let alone some negligence or unseaworthiness that caused the Macondo spill—and Triton has no liability for negligence or unseaworthy conditions that arose after that date.  *In re the Complaint and Petition of Lloyd's Leasing Ltd.*, 1991 A.M.C. 2113 (S.D. Tex. 1990) ("Liability is the threshold issue to be resolved in a limitation of liability action because the exploration as to limitation is materially relevant only if liability is established.").

### A.     A Vessel Owner Is Not Liable For Unseaworthiness or Negligence That Arises After the Date of a Bareboat Charter

In *Forrester v. Ocean Marine Indem. Co.*, 11 F.3d 1213 (5th Cir. 1993), the Fifth Circuit discussed the difference between a demise and non-demise charter, and recognized that among the three different types of charters—bareboat, time, and voyage charters—only a bareboat charter is a demise charter.  The Court recognized that in a demise or bareboat charter, the vessel

---

[4] Semi-submersible drilling rigs like the *Deepwater Horizon* are considered vessels under the  Act. *See, e.g., Domingue v. Ocean Drilling & Exploration Co.*, 923 F.2d 393, 394 n.1 (5th Cir.1991) ("We have consistently applied general maritime law and the Jones Act . . . to accidents aboard special-purpose watercraft such as . . . semi-submersible . . . rigs."), *cert. denied*, 502 U.S. 1033 (1992); *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 n.5 (5th Cir.1986) (concluding that the semi-submersible vessel involved in the case was "indisputably a vessel").

5

owner transfers "full control" to the charterer who becomes responsible "for the negligence of the crew and the unseaworthiness of the vessel":

> *The distinction between the demise and non-demise charters depends on the degree of control retained by the owner of the vessel. In a demise charter, the vessel owner transfers full possession and control to the charterer, who in turn furnishes the crew and maintenance for the vessel (thus the term "bareboat"). Consequently, the bareboat charterer as a demise charterer is the owner pro hac vice of the vessel for the duration of the contract. The demise charterer is therefore responsible in personam for the negligence of the crew and the unseaworthiness of the vessel.*

*Id.* at 1215.[5]

A demise or "bareboat" charter exists when "full possession and control of the vessel is transferred to the charterer." *Walker v. Braus*, 995 F.2d 77, 81 (5th Cir. 1993); *Agrico Chem. Co. v. M/V BEN MARTIN*, 664 F.2d 85, 91 (5th Cir. 1981). When the owner of a vessel enters into a demise charter, he surrenders all possession and control of the vessel to the charterer. Because he no longer has the right to control the use of the vessel, he is no longer charged with the duties and liabilities that arise out of its ownership. *Huss v. The King Co.*, 338 F.3d 647, 652 (6th Cir. 2003); *Kerr-McGee Corp. v. Law*, 479 F.2d 61, 63 (4th Cir. 1973).

"Because a shipowner who has demised a vessel no longer controls it, such an owner is not liable for unseaworthiness or negligence that comes into existence while the charter is in effect." *Picou*, 2010 WL 2696468, at *3. Although a vessel owner may still be liable for unseaworthy conditions that exist before the date of the bareboat charter, *Torch, Inc. v. Alesich*,

---

[5] *See, e.g.,* 2 Schoenbaum, *Admiralty and Maritime Law* § 11-3 at 7 (4th ed.) ("An essential characteristic of the demise, however, is that the entire command and possession of the vessel be turned over to the charterer. Although the owner retains legal title, the charterer is considered the temporary owner, or commonly termed the owner *pro hac vice*"); *Hewitt v. Am. Pollution Control Corp.*, 2012 U.S. Dist. LEXIS 75242, at *7-8 (E.D. La. May 31, 2012) (Barbier, J.); *Coakley v. SeaRiver Mar., Inc.*, 319 F. Supp. 2d 712, 715 (E.D. La. 2004) (Feldman, J.) ("demise charterers are considered owners *pro hac vice* and stand in the shoes of the owner for the warranties of seaworthiness").

148 F.3d 424, 427 (5th Cir. 1998); *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 183 (5th Cir. 1981), *cert. denied*, 456 U.S. 983 (1982), delivery of a vessel to a bareboat charterer terminates the owner's liability for unseaworthy conditions that arise thereafter. *Colletti v. Tiger Tugz, LLC*, 2011 WL 6337457, at *2 (W.D. La. Dec. 16, 2011); *see also McAleer v. Smith*, 57 F.3d 109, 112 (1st Cir. 1995) ("In general, if there is an owner pro hac vice, the title owner will be absolved of personal liability (except for defective conditions that existed *before* the owner pro hac vice took control of the vessel).") (emphasis added).

### B. The *Deepwater Horizon* Was Subject to a Bareboat Charter

The test for determining the existence of a bareboat charter was articulated by the Supreme Court in *Guzman v. Pichirilo*, 369 U.S. 698 (1962): "To create a demise the owner of the vessel must completely and exclusively relinquish 'possession, command and navigation' thereof to the demise." *Id.* at 699. No formal language is necessary to create a demise or bareboat charter; it is enough that the charter language shows "an intent to transfer the possession, command and control." *United States v. Shea*, 152 U.S. 178, 189 (1894); *In re Tidewater Barge Lines, Inc.*, 2006 A.M.C. 542, 554 (D. Ore. 2005). The issue of whether there is a bareboat charter is a question of law. *In re the Complaint of Admiral Towing & Barge Co.*, 767 F.2d 243, 249 (5th Cir. 1985).

It is undisputed that the *Deepwater Horizon* was subject to a bareboat charter on August 17, 2001. The term of the charter itself was defined as "the Bareboat Charter Period." TREX 52536.3. The charter expressly granted "exclusive right to possession and control of the [*Deepwater Horizon*]" to the charterer (Transocean Holdings), and the charterer was given "the full use of the Rig" and the right to "employ the Rig throughout the world for any legal purpose." TREX 52536.6. Transocean Holdings had the obligation to "man, victual, navigate and operate,

7

supply, fuel, *maintain and repair*" the *Deepwater Horizon*, and to provide "equipment, outfit, tools, spare and replacement parts" to maintain the *Deepwater Horizon. Id.* (emphasis added) In fact, the Charter placed the "possession, use, operation, and maintenance" of the *Deepwater Horizon* at the "sole risk" of the charterer. *Id.* And the charterer had the responsibility to "maintain and preserve the Rig in accordance with good commercial maintenance practices." TREX 52536.7 (art. 5.1).

Accordingly, the terms of the Charter indisputably qualify it as a bareboat charter under Fifth Circuit law.

### C. Triton Is Entitled To Exoneration Because There Is No Evidence of Negligence or Unseaworthiness Prior to the Date of the Bareboat Charter

It cannot be seriously contended that any negligence or unseaworthiness arose before August 17, 2001, let alone some negligence or unseaworthiness that caused the Macondo spill. Although TDI has admitted negligence in connection with the negative pressure test on April 20, 2010, and Plaintiffs have alleged various other forms of negligence in connection with the blowout, no evidence was introduced at trial of negligence prior to August 17, 2001, let alone negligence with some causal connection to the Macondo spill. For purposes of this motion, the court need not make any findings with respect to negligence after August 17, 2001.

Nor does the evidence support any finding of unseaworthiness prior to August 17, 2001. Again, for purposes of determining Triton's liability, this Court need not address the *Deepwater Horizon*'s seaworthiness as of April 20, 2010. To grant Triton's motion, the Court need only conclude that Plaintiffs have failed to carry their burden to show the *Deepwater Horizon* was unseaworthy as of August 17, 2001.

The *Deepwater Horizon* was a state-of-the-art, fifth generation dynamically positioned MODU. The rig was completed in 2000 and it began operating in the Gulf of Mexico in April

8

2001, just four months before the bareboat charter. TREX 52536. The rig was built in accordance with the 1989 MODU Code; the ABS Rules for the Building and Classing of Mobile Offshore Drilling Units, 1997; the International Convention on Load Lines, 1966, regulation 10(2), Annex 1; and U.S. Coast Guard requirements, as the *Deepwater Horizon* was originally intended to be registered in the United States. *See* Rec. Doc. 5927 (Stipulated Fact #181). ABS classified and certified the *Deepwater Horizon* as an X A1, Column Stabilized Drilling Unit, XAMS, XACCU, XDPS-3 (the highest rating for dynamically positioned vessels). *Id.* (Stipulated Fact #182). These certifications, standing alone, are "very strong evidence" of seaworthiness. *Firemen's Fund Ins. Cos. v. M/V VIGNES*, 794 F.2d 1552, 1556 (11th Cir. 1986).

Plaintiffs have not shown any problem with maintenance or crew training prior to August 2001, and no one has alleged, or could allege, that any such problem had anything to do with the Macondo spill. There is also no dispute that BP specified the configuration of the BOP, and in particular the inclusion of a single blind shear ram. TREX 4112.11. Simply put, the *Deepwater Horizon* was fit for service on August 17, 2010, the date of the Bareboat Charter. *See, e.g.*, *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960) ("The standard [for seaworthiness] is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service.").

## CONCLUSION

For the foregoing reasons, this Court should grant judgment on partial findings to Triton Asset Leasing GmbH in the limitation action.

| | |
|---|---|
| DATED: June 21, 2013 | Respectfully submitted, |
| By:   s/ Brad D. Brian | By:   s/ Steven L. Roberts |
| Brad D. Brian | Steven L. Roberts |
| Michael R. Doyen | Rachel Giesber Clingman |
| Luis Li | Sean D. Jordan |
| Daniel B. Levin | SUTHERLAND ASBILL & BRENNAN LLP |
| Susan E. Nash | 1001 Fannin Street, Suite 3700 |
| MUNGER, TOLLES & OLSON LLP | Houston, Texas 77002 |
| 355 So. Grand Avenue, 35th Floor | Tel:  (713) 470-6100 |
| Los Angeles, CA 90071 | Fax:  (713) 354-1301 |
| Tel:  (213) 683-9100 | Email: steven.roberts@sutherland.com, |
| Fax:  (213) 683-5180 | rachel.clingman@sutherland.com |
| Email: brad.brian@mto.com | sean.jordan@sutherland.com |
|         michael.doyen@mto.com | |
|         luis.li@mto.com | By:   s/ Kerry J. Miller |
|         daniel.levin@mto.com | Kerry J. Miller |
|         susan.nash@mto.com | FRILOT, LLC |
| | 110 Poydras St., Suite 3700 |
| | New Orleans, LA 70163 |
| John M. Elsley | Tel:  (504) 599-8194 |
| ROYSTON, RAYZOR, VICKERY & WILLIAMS LLP | Fax:  (504) 599-8154 |
| | Email: kmiller@frilot.com |
| 711 Louisiana Street, Suite 500 | |
| Houston, TX 77002 | |
| (713) 224-8380 | |

*Counsel for Triton Asset Leasing GmbH*

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2013, I electronically filed the foregoing with the Court's CM/ECF system and service on all counsel of record by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

>  /s/ Kerry J. Miller
>         Kerry J. Miller