# EXHIBIT 1

LEXISNEXIS® FILE & SERVE
34759935
E-SERVICE
Dec  8 2010
9:58PM

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater | : | MDL No. 2179 |
| Horizon" in the Gulf of Mexico, on | : | |
| April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates To: All Actions | : | JUDGE BARBIER |
| | : | MAGISTRATE SHUSHAN |
| …………………………………………... | : | |

### BP P.L.C.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSION

Defendant BP p.l.c. by its undersigned Counsel, and, pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, hereby submits the following responses and objections to Plaintiffs' Interrogatories, Requests for Production, and Requests for Admission.

### SPECIFIC RESPONSES AND OBJECTIONS

BP p.l.c. responds as follows to plaintiffs' specific interrogatories, requests for production, and requests for admission, subject to and without waiving its general objections, each and every one of which are specifically incorporated into each individual response below.[1]

**INTERROGATORY NO. 1:**

Please describe in detail the general chain of command and organizational structure for the Deepwater Horizon during the relevant time period, beginning with the lowest ranking person aboard the rig, up to and through the highest ranking person on-shore.

**RESPONSE TO INTERROGATORY NO. 1:**

BP p.l.c. asserts its general objections.

---

[1] BP p.l.c.'s general objections are set forth at pages 134-146.

**REQUEST FOR PRODUCTION NO. 1:**

Please produce any documents relating to the chain of command and organizational structure aboard the Deepwater Horizon during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 2:**

Please describe in detail how persons aboard the Deepwater Horizon communicated with each other during the relevant time period, including in your answer a description of the methods used by persons aboard the Deepwater Horizon to communicate with each other, a description of any real-time information available to persons aboard the Deepwater Horizon regarding the operations and drilling activities of the Deepwater Horizon, and a description of any other information available to persons aboard the Deepwater Horizon regarding the operations and drilling activities of the Deepwater Horizon.

**RESPONSE TO INTERROGATORY NO. 2:**

BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 3:**

Please describe in detail how persons aboard the Deepwater Horizon communicated with persons on-shore during the relevant time period, including in your answer a description of the methods used by persons aboard the Deepwater Horizon to communicate with any person on-shore, a description of any real-time information available to any person on-shore regarding the operations and drilling activities of the Deepwater Horizon, and a description of any other information available to any person on-shore regarding the operations and drilling activities of the Deepwater Horizon.

**RESPONSE TO INTERROGATORY NO. 3:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 2:**

Please produce any communications between and among persons aboard the Deepwater Horizon during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 3:**

     Please produce any communications between persons aboard the Deepwater Horizon and any person on-shore during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 4:**

     Please produce any communications between persons aboard the Deepwater Horizon and any other person during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 5:**

     Please produce any communications between any persons on-shore who participated in, were aware of, or were in anyway involved with the operations and drilling activities of the Deepwater Horizon during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 6:**

     Please produce any communications between any persons on-shore who participated in, were aware of, or were in anyway involved with the operations and drilling activities of the Deepwater Horizon and any other person during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

     BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce any documents, information, or data that was transmitted to or stored by any computer, server, or other electronic database, relating to any operations or drilling activities of the Deepwater Horizon, the Transocean Marianas, or any other mobile offshore drilling unit, rig, or platform involved in any operations or drilling activities at or on the Macondo Well during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce any documents relating to any operations or drilling activities performed by the Deepwater Horizon, Transocean Marianas, or any other mobile offshore drilling unit, rig, or platform with respect to the Macondo Well, during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 4:**

Please identify any person who was aboard the Deepwater Horizon during the relevant time period, and for any such person, identify that person's supervisor(s) and subordinates, and state the dates and time that person was aboard the Deepwater Horizon and financial compensation received for the work performed.

**RESPONSE TO INTERROGATORY NO. 4:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce any documents, including logs, that evidence or show the persons that were aboard the Deepwater Horizon during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 5:**

Please identify any person on-shore who participated in, was aware of, or was in anyway involved with the operations and drilling activities of the Deepwater Horizon during the relevant time period.

**RESPONSE TO INTERROGATORY NO. 5:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce any documents, including logs, that evidence or show persons on-shore who participated in, were aware of, or were in anyway involved with the operations aboard the Deepwater Horizon during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 6:**

Please identify the persons responsible for scheduling activities and operations for the Deepwater Horizon.

**RESPONSE TO INTERROGATORY NO. 6:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 7:**

Other than the Deepwater Horizon, please identify any other mobile offshore drilling unit, rig, or platform that were involved with or participated in any operations or drilling activities at or on the Macondo Well during the relevant time period, including the Transocean Marianas.

**RESPONSE TO INTERROGATORY NO. 7:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 8:**

For each mobile offshore drilling unit, rig, or platform  identified in response to Interrogatory No. 7, please identify the owner, any person aboard, and any person on-shore who participated in, was aware of, or was in anyway involved with the mobile offshore drilling unit, rig, or platform during the relevant time period, state the dates the mobile offshore drilling unit, rig, or platform  was involved with or participated in any operations or drilling activities in or at the Macondo Well, and state the dates the identified persons were aboard the mobile drilling unit, rig or platform.

**RESPONSE TO INTERROGATORY NO. 8:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 11:**

For each mobile offshore drilling unit, rig, or platform identified in response to Interrogatory No. 7, please produce any contracts, agreements, or other documents relating to the operations and drilling activities of the mobile offshore drilling unit, rig, or platform involved in drilling the Macondo Well during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 12:**

For each mobile offshore drilling unit, rig, or platform identified in response to Interrogatory No. 7, please produce any documents relating to the operations and drilling activities of the mobile offshore drilling unit, rig, or platform involved in drilling the Macondo Well during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 13:**

For each mobile offshore drilling unit, rig, or platform identified in response to Interrogatory No. 7, please produce any documents and logs, that evidence or show the persons aboard the mobile drilling unit, rig, or platform during the relevant time period, and any person

on-shore who participated in, was aware of, or was in anyway involved with the mobile offshore drilling unit, rig, or platform's operations or drilling activities during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 9:**

Please identify any rig(s) operating offshore by you during the relevant time period, including the permitting authority and location.

**RESPONSE TO INTERROGATORY NO. 9:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce copies of any documents or communications relating to the expected, anticipated, and actual budget for costs and expenses of the Deepwater Horizon, Transocean Marianas, or the Macondo Well, including all documents and communications relating to the daily operational cost of the Deepwater Horizon, the Transocean Marianas, or the Macondo Well and whether the Deepwater Horizon, Transocean Marianas, or Macondo Well were on, over, or under budget.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce copies of any documents or communications relating to the scheduling of operations and activities for the Deepwater Horizon, including documents and communications relating to whether the Deepwater Horizon was "on schedule" at the time of the incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 16:**

Please produce any leases, charters, or similar documents relating to any mobile offshore drilling unit, rig, or platform that participated in or was involved with any operations or drilling activities involved in the drilling of the Macondo Well, including the Deepwater Horizon or Transocean Marianas.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce any documents or communications relating to the expected or anticipated activities and operations of the Deepwater Horizon after it completed or sealed the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 10:**

Please identify any persons on-shore who participated in or were in anyway involved with the operations aboard the Deepwater Horizon during the relevant time period.

**RESPONSE TO INTERROGATORY NO. 10:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 18:**

Please produce the personnel files for each person identified in response to Interrogatory No. 4, 5, 6, 8, and 10.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 11:**

Please identify any crew boats, supply boats, or vessels that were within a one (1) mile radius of the Deepwater Horizon at any time between April 20, 2010 and April 22, 2010 and for each such crew boat, supply boat, or vessel, please identify the owner or charterer of the crew boat, supply boat, or vessel, and any persons aboard the crew boat, supply boat, or vessel between April 20, 2010 and April 22, 2010.

**RESPONSE TO INTERROGATORY NO. 11:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 19:**

For each crew boat, supply boat, or vessel you identified in response to Interrogatory No. 11, please produce any contracts, leases, charters, agreements, or other documents relating to the crew boat, supply boat, or vessel.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 20:**

Please produce all communications between any person aboard the Deepwater Horizon, you, any person on-shore, or any person aboard any crew boat, supply boat, or vessel identified in your response to Interrogatory No. 11 that took place from April 20, 2010 to April 22, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 12:**

Please identify any persons who provided you or any other person with an alternative suggested course of action, warning, expression of concern, disagreement, or criticism regarding the decisions or operations aboard the Deepwater Horizon during the relevant time period.

**RESPONSE TO INTERROGATORY NO. 12:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 21:**

      Please produce any documents or communications relating to any agreements between you and any federal, state or local governmental agency regarding reparations for any economic or physical damages, costs, losses, expenses, or injuries caused by the incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 22:**

      Please produce any documents relating to any calculations or estimates of the amount of oil spilled in the Gulf of Mexico.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 23:**

      Please produce any documents relating to the ecological, health, or environmental impacts of any substance used as a dispersant(s), e.g., Corexit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 24:**

      Please produce any documents or communications relating to any marketing, public relations campaigns, or similar activities you have authorized, participated in, or been involved with as a result of the incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 25:**

Please produce any documents relating to the budget for any economic damages, costs, losses, expenses, or injuries resulting from the incident, including any economic or physical damages, costs, losses, expenses, or injuries suffered or to be suffered by individuals, businesses, governments, and wildlife and any steps taken by you to mitigate any such damages, costs, losses, expenses, or injuries through advertising or other means.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 26:**

Please produce copies of any documents or communications relating to any statements, including drafts, you have released to the press since the incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 27:**

Please produce any documents relating to any efforts, considerations, or communications regarding whether the Macondo Well would or could be used for production of hydrocarbons at any time after April 20, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 28:**

Please produce any documents relating to any studies that were performed, reviewed, considered or relied upon in attempting to seal the Macondo Well following the incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 29:**

Please produce any documents relating to the use and effectiveness of "junk shots," "top hats," or "relief wells" as a means of controlling or sealing a well, including the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 13:**

Please identify any person that has conducted or is in the process of conducting a formal or informal investigation of the operations, events, or activities that took place aboard the Deepwater Horizon or at the Macondo Well during the relevant time period.

**RESPONSE TO INTERROGATORY NO. 13:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 30:**

Please produce any documents or communications relating to all formal and informal reports or investigations that were or are in the process of being conducted as a result of the incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 14:**

Please identify any person you have interviewed or from whom a statement was taken regarding any of the events, operations, or activities that took place aboard the Deepwater Horizon or at the Macondo Well during the relevant time period.

**RESPONSE TO INTERROGATORY NO. 14:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 31:**

Please produce any documents that relate to any interviews or statements taken of or from each person identified in your response to Interrogatory No. 14.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 15:**

Please identify any person who has taken or is in possession of any photographs, video recordings, or audio recordings that relate to any events, operations, or activities that took place aboard the Deepwater Horizon or at the Macondo Well during the relevant time period.

**RESPONSE TO INTERROGATORY NO. 15:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 32:**

Please produce any photographs, video recordings, or audio recordings that relate to the incident or any events, operations, or activities that took place aboard the Deepwater Horizon or at the Macondo Well during the relevant time period along with any documents or communications that reference or refer to any photographs, video recordings or audio recordings that relate to the incident, operations, or activities that took place aboard the Deepwater Horizon or at the Macondo Well during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 16:**

Please identify any person who was on the Investigation Team referenced in the report released by BP, dated September 8, 2010, or who participated in the investigation referenced in the report released by BP, dated September 8, 2010, or participated in or was involved with the selection, appointment, or assignment of (a) the Investigation Team referenced in the report released by BP, dated September 8, 2010; or (b) any other person who participated in the investigation referenced in the report released by BP, dated September 8, 2010; or (c) any person who drafted, participated in drafting, editing, or reviewing the report released by BP, dated September 8, 2010, or any part thereof, before the report was released.

**RESPONSE TO INTERROGATORY NO. 16:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 33:**

      Please produce any documents or communications relating to the selection, appointment, or assignment of (a) the Investigation Team referenced in the report released by BP, dated September 8, 2010; or (b) any person who participated in the investigation referenced in the report released by BP, dated September 8, 2010; or (c) any person who participated in drafting, editing, or reviewing the report released by BP, dated September 8, 2010, or any part thereof, before the report was released.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 34:**

      Please produce any communications between and among members of the Investigation Team referenced in the report released by BP, dated September 8, 2010, that took place since April 20, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 35:**

      Please produce any communications between members of the Investigation Team referenced in the report released by BP, dated September 8, 2010, and any other person who participated in the investigation referenced in the report released by BP, dated September 8, 2010, that took place since April 20, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 36:**

Please produce any communications between any persons who participated in the investigation referenced in the report released by BP, dated September 8, 2010, that took place since April 20, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 37:**

Please produce any communications between the Investigation Team referenced in the report released by BP, dated September 8, 2010, and any other person that took place since April 20, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 38:**

Please produce any communications between anyone who participated in the investigation referenced in the report released by BP, dated September 8, 2010, and any other person, that took place since April 20, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 39:**

Please produce any communications between you and the Investigation Team referenced in the report released by BP, dated September 8, 2010, or any person that participated in the investigation referenced in the report released by BP, dated September 8, 2010, that took place since April 20, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 17:**

Please identify any person that was interviewed or contacted as part of the investigation referenced in the report released by BP, dated September 8, 2010.

**RESPONSE TO INTERROGATORY NO. 17:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 40:**

Please produce any documents or communications relating to any written or recorded statements taken in connection with the investigation referenced in the report released by BP, dated September 8, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 41:**

Please produce any documents relating to any persons that were interviewed or contacted as part of the investigation referenced in the report released by BP, dated September 8, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 18:**

Please identify any person that supports, refutes, or has any knowledge or information concerning the following statements in the report released by BP, dated September 8, 2010:

(i)     "The annulus cement barrier did not isolate the hydrocarbons;"

(ii)    "The shoe track barriers did not isolate the hydrocarbons;"

(iii)   "The negative-pressure test was accepted although well integrity had not been established;"

(iv)    "Influx was not recognized until hydrocarbons were in the riser;"

(v)     "Well control response actions failed to regain control of the well;"

16

(vi)     "Diversion to the mud gas separator resulted in gas venting onto the rig;

(vii)    "The fire and gas system did not prevent hydrocarbon ignition;" and

(viii)   "The BOP emergency mode did not seal the well."

**RESPONSE TO INTERROGATORY NO. 18:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 42:**

Please produce any documents that support or refute the following statements in the report released by BP, dated September 8, 2010:

(i)      "The annulus cement barrier did not isolate the hydrocarbons;"

(ii)     "The shoe track barriers did not isolate the hydrocarbons;"

(iii)    "The negative-pressure test was accepted although well integrity had not been established;"

(iv)     "Influx was not recognized until hydrocarbons were in the riser;"

(v)      "Well control response actions failed to regain control of the well;"

(vi)     "Diversion to the mud gas separator resulted in gas venting onto the rig;

(vii)    "The fire and gas system did not prevent hydrocarbon ignition;" and

(viii)   "The BOP emergency mode did not seal the well."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 43:**

Please produce any documents or communications relating to the report released by BP, dated September 8, 2010, including drafts that were made or created by (a) the Investigation Team referenced in the report released by BP, dated September 8, 2010; or (b) any other person who participated in the investigation referenced in the report released by BP, dated September 8, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 44:**

     Please produce any drafts or markups of the report, or any part thereof, released by BP, dated September 8, 2010, including drafts or markups of specific sections or parts of the report released by BP, dated September 8, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 45:**

     Please produce any documents or studies relied upon, referred to, or reviewed in connection with the investigation referenced in the report released by BP, dated September 8, 2010 or the drafting of the report released by BP, dated September 8, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 46:**

     Please produce any documents relating to or concerning the report released by BP, dated September 8, 2010 or the investigation referenced in the report released by BP, dated September 8, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 47:**

     Please produce any documents identified or referenced in the report released by BP, dated September 8, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 19:**

Please identify any person known to you who have conducted a surface or subsurface inspection of the Macondo Well, the Deepwater Horizon, or any component of the Macondo Well or Deepwater Horizon, including the blowout preventer, riser, or any other drilling equipment that were made, conducted, or done after April 20, 2010.

**RESPONSE TO INTERROGATORY NO. 19:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 48:**

Please produce any documents or communications relating to any surface or subsurface inspections of the Macondo Well, the Deepwater Horizon, or any component of the Macondo Well or Deepwater Horizon, including the blowout preventer, riser, or any other drilling equipment that were made, conducted, or done after April 20, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 20:**

Please identify any persons who inspected or performed any analysis for failure of any equipment, products, property or services in connection with the incident, including the events leading up to and following the incident.

**RESPONSE TO INTERROGATORY NO. 20:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 49:**

Please produce any documents or communications relating to any analysis for failure of any equipment, products, property or services in connection with the incident, including the events leading up to and following the incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 50:**

Please produce any documents or communications relating to any appearances at any hearing conducted by the government in connection with the incident, including any communications between you and the government or any other person regarding the hearing and any documents produced by or to you as a result of your designation as a party in interest at such hearings.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 51:**

Please produce copies of any assessments of damages associated with the oil spill, including injuries to rig workers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 52:**

Please produce copies of any assessments of damages associated with the oil spill, including injuries to other individuals.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 53:**

Please produce copies of any assessments of damages associated with the oil spill, including economic damages.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 54:**

Please produce any documents, assessments, or testing showing the potential risks to marine life in the Gulf of Mexico.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 55:**

Please produce Appendix "M" of the report released by BP, dated September 8, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 21:**

Please identify any internal reports or investigations about the incident, including any disciplinary investigations of the actions of the workers on the Deepwater Horizon or any internal executive accountability investigations into the role of management in the incident for the relevant time period.

**RESPONSE TO INTERROGATORY NO. 21:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 56:**

Please produce any documents or communications relating to any report or investigation identified or listed in your response to Interrogatory No. 21.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 57:**

Please produce any documents or communications relating to any studies, investigations, or analyses done during the relevant time period regarding your safety history or safety culture, including any studies, investigations or analyses done by any consulting firm, insurance company, or government.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 58:**

Please produce any witness statements taken by any person regarding the operations or activities of the Deepwater Horizon for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 22:**

Please state whether any worker on an oil or gas rig operated by you has ever called for a work stoppage or refused to work for any reason, including unsafe conditions or safety reasons. If so, please identify the worker, dates, locations, and outcome of the work stoppage request.

**RESPONSE TO INTERROGATORY NO. 22:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 59:**

Please produce any documents or communications relating to the information provided in your response to Interrogatory No. 22.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

     BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 23:**

     Please identify any safety incidents or violations that occurred on any offshore rig or facility operated by you including but not limited to, the following:

     (i)      Near Misses;

     (ii)     Government Reported;

     (iii)    Industry Reported;

     (iv)    Days Away From Work (DAFW), Lost Time, or Injury Reports;

     (v)      Fatalities;

     (vi)     Fires; or

     (vii)   Work Stoppages.

**RESPONSE TO INTERROGATORY NO. 23:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 60:**

     Please produce any documents or communications, including internal and external reports, reflecting analysis that is the subject of Interrogatory No. 23.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 61:**

     Please produce copies of any government citations to any BP rig operating in American waters during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 62:**

      Please produce any documents or communications from any government reported incident involving oil or gas rigs, or spills, including any root cause analysis, reports, and documents including the following spills and spills occurring in the following countries:

      (i)      Exxon Valdez in 1989;

      (ii)     The Ixtoc I in 1979;

      (iii)    The Santa Barbara in 1969;

      (iv)    The Thunder Horse in May 2007;

      (v)     Australia; and

      (vi)    Saudi Arabia.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 63:**

      Please produce any documents or communications regarding any safety or environmental violations, near misses, incidents, or occurrences that occurred on the Deepwater Horizon, Transocean Marianas, or any other mobile offshore drilling unit, rig, or platform involved with any operations or drilling activities at the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 64:**

      Please produce copies of any videos or presentations created by Gulf of Mexico Deepwater Productions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 65:**

Please produce any documents or communications of any drilling operation or construction of the Macondo Well during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 66:**

Please produce any documents or communications showing the cost benefit analysis in the drilling and operation of deep water wells in the Gulf of Mexico.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 67:**

Please produce any risk assessments in the drilling and operation of deep water wells in the Gulf of Mexico.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 67:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 68:**

Please produce any citations or fines paid by you to Minerals Management Service during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 69:**

Please provide the organizational chart for the following entities for every year during the relevant time period:

      (i)      BP Exploration and Production;

      (ii)     BP America, Inc.;

      (iii)    BP Products North America, Inc.;

      (iv)    BP, P.L.C.; and

      (v)     BP America Production Company.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 69:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 70:**

Please produce any documents reflecting the oversight or performance of: (1) any aspect of BP, P.L.C.; (2) of anyone in management at BP, P.L.C.; or (3) the board of directors at BP, P.L.C.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70:**

BP p.l.c. objects to this request on the grounds that it is overly broad and unduly burdensome in that it is in no way limited or phrased in such a way that the documents being requested are related to the Incident and that plaintiffs' use of the terms "oversight," "performance," and "management" is vague, ambiguous, and undefined.

Subject to its specific and general objections, BP p.l.c. refers plaintiffs to the publicly available Internet website, www.bp.com, under the "Investors" homepage for documents and information related to the financial performance, share price, governance, annual reports, regulatory filings, director declarations, and so forth for BP p.l.c. and its global operations.  BP p.l.c. also refers plaintiffs to documents previously produced to plaintiffs in response to Request for Production No. 1 in Plaintiffs' Omnibus Discovery Requests on All Defendants, including

publicly available reports showing the company's total revenues, net income, and total dividend payments for fiscal years 2004 to 2009 and the first quarter of fiscal year 2010, as well as publicly available directors' remuneration reports for fiscal years 2004-2009, and a chart containing data reflecting revenue and operating income after taxes for the Gulf of Mexico SPU, which is not reported publicly.  The information in the chart is based upon global management information used internally by BP in evaluating its strategic performance units.   These documents are Bates-stamped at BP-HZN-CEC028894 through BP-HZN-CEC028989 and BP-HZN-CEC028991.

To the extent plaintiffs' request seeks additional documents, BP p.l.c. objects on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 71:**

Please produce any by-laws for BP, P.L.C.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

BP p.l.c. objects to this request to the extent it seeks any version of the by-laws not in effect during the relevant time period on that ground that superseded by-laws are not relevant to the claims or defenses of any party.

Subject to its specific and general objections, BP p.l.c. will conduct a reasonable search of non-privileged documents for the current by-laws for BPA, BPAP, and BPXP.

To the extent plaintiffs' request seeks additional documents, BP p.l.c. objects on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 72:**

Please produce documents showing all members of the board of directors and their position for BP, P.L.C., during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

BP p.l.c. objects to this request to the extent it seeks documents identifying board members at other times on the grounds that the past composition of the board is not relevant to the claims or defenses of any party.

Subject to its specific and general objections, BP p.l.c. will conduct a reasonable search of non-privileged documents for documents sufficient to show the members of the board of directors and their positions for BPA, BPAP, and BPXP as of April 20, 2010 and as of the present, and produce responsive documents identified as a result of that search.

To the extent plaintiffs' request seeks additional documents, BP p.l.c. objects on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**INTERROGATORY NO. 24:**

Please identify any person that designed, constructed, participated in the design or construction, or was involved with the design or construction of the Macondo Well, as well as any person involved in the changes or amendments to the design or construction of the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 24:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 73:**

Please produce any documents or communications relating to the design or construction of the Macondo Well, as well as any documents or communications relating to any changes or amendments to the design or construction of the Macondo Well, including all logs, tests, charts, diagrams, or drawings or similar documents relating to the design and construction of the

Macondo Well, or any component part of the Macondo Well, along with all documents and communications relating to any construction delays and contract penalties with respect to the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 25:**

Please identify any person who was involved in any discussion, plan, or meeting regarding the procedures which would be used to seal the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 25:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 74:**

Please produce any documents or communications relating to any plan or procedures to implement if control of the Macondo Well was lost.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 75:**

Please produce any documents or communications relating to any plan or procedures to implement once control of the Macondo Well was lost.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 76:**

Please produce true and correct copies of any diagrams, drawings, or similar documents relating to the Macondo Well, including but not limited to the:

(i)     The annulus cement barrier;

29

(ii)     Production casing;

(iii)    Wellbore annulus;

(iv)    Reservoir;

(v)     Shoe track;

(vi)    Float collar;

(vii)   Casing hangar seal assembly;

(viii)  Riser;

(ix)    (i)       Blow out preventer; and

(x)     Diverter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 77:**

Please produce any documents or communications relating to test results used to measure the integrity of the well casing, as it relates to the Deepwater Horizon and Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 77:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 78:**

Please produce any documents or communications reflecting any condition of the Macondo Well, including but not limited to logs, flow data or any other data collected or created by you.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 78:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 79:**

Please produce any documents or communications relating to any studies, investigations, or analyses, conducted with respect to the reservoir into which the Macondo Well was drilled.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 79:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 80:**

Please produce any documents or communications relating to construction delays relating to the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 80:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 81:**

Please produce any documents or communications relating to contract penalties regarding delays in the construction of the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 81:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 26:**

Please identify any test procedures or protocols performed on any equipment, products, property, or services provided by you in connection with the Macondo Well, and identify any equipment, products, property and services subjected to any test procedures or protocols.

**RESPONSE TO INTERROGATORY NO. 26:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 82:**

Please produce any documents or communications relating to any test procedures or protocols performed on any equipment, products, property, or services provided by you or any other person in connection with the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 83:**

Please produce any documents or communications relating to any applications for or permitting of the Macondo Well, including any documents or communications regarding permission to make changes as an approved operation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 84:**

Please produce any documents or communications between you and any government or quasi-government permitting authority regarding the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 85:**

Please produce any permits including any revised permits to drill at the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 85:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 27:**

Please identify any person that designed, manufactured, sold, or distributed any of the materials or components used in the design or construction of the Macondo Well, and state

specifically which material or component of the Macondo Well was designed, constructed, manufactured, sold, or distributed by that person.  Your answer should include the persons that designed, constructed, manufactured, sold, or distributed the following with respect to the Macondo Well:

      (i)      The annulus cement barrier;

      (ii)     Production casing;

      (iii)    Wellbore annulus;

      (iv)    Reservoir;

      (v)     Shoe track;

      (vi)    Float collar;

      (vii)   Casing hangar seal assembly;

      (viii)  Riser;

      (ix)    (i)     Blow out preventer; and

      (x)     Diverter.

## RESPONSE TO INTERROGATORY NO. 27:

BP p.l.c. asserts its general objections.

## REQUEST FOR PRODUCTION NO. 86:

Please produce any documents or communications evidencing or demonstrating any person that designed, constructed, manufactured, sold, or distributed any of the materials or components used in the design and construction of the Macondo Well.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 86:

BP p.l.c. asserts its general objections.

## REQUEST FOR PRODUCTION NO. 87:

Please produce any documents or communications relating to the materials or components used in the design and construction of the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 87**:

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 88**:

Please produce a copy of any studies regarding the effectiveness of blow out preventers in offshore drilling operations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 88**:

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 89**:

Please produce a copy of any studies regarding the effectiveness of utilization of centralizers in offshore drilling operations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 89**:

BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 28**:

Please identify each person that participated or should have participated in any cementing operation for any casing of the Macondo Well, including all persons that participated in the actual cementing process and all persons that participated or should have participated in the approval process for the cementing of the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 28**:

BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 29**:

Please describe in detail the cementing process for the Macondo Well.  Your answer should include a description of the approval process, if any, that was actually performed for any cementing job performed at or on the Macondo Well, along with any policies, procedures, or steps, approved or otherwise, that were required to be followed as part of the cementing process.

**RESPONSE TO INTERROGATORY NO. 29:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 90:**

Please produce any documents or communications relating to the cementing of the Macondo Well, including the approval process for any cementing job performed prior to the incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 90:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 91:**

Please produce any directional surveys of or for the Macondo Well for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 91:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 92:**

Please produce any caliper logs of or for the Macondo Well for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 92:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 93:**

Please produce any documents reflecting rate, density, and pressure information taken before, during, and after any cement job of or for the Macondo Well, including the description of events for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 93:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 94:**

Please produce any documents reflecting rate, pressure, temperature, porosity, permeability information, or any other information maintained by any equipment on the Deepwater Horizon.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 94:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 95:**

Please produce any copies of the Opticem© runs performed as part of or in preparation for any cementing operations performed in the drilling of the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 95:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 96:**

Please produce copies of any tests by the Halliburton laboratory on cement in preparation for any cementing operation(s) performed during the drilling of the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 96:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 97:**

Please produce copies of any tests by the Halliburton laboratory on spacer in preparation for any cementing operation(s) performed during the drilling of the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 97:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 98:**

Please produce copies of any CSI Technologies laboratory testing results that were performed as part of or in preparation for any cementing operations performed in the drilling of the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 98:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 99:**

Please produce any detailed technical drawings, specifications, or running and activating procedures for:

(i)     The casing hanger/landing area;

(ii)    The annular pack-off; and

(iii)   The lock down device.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 99:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 100:**

Please produce any casing tallies, complete with float equipment, centralizer placement, casing hanger information, sub-sea plug set, drill pipe information, and Allemon tool placement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 100:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 101:**

Please produce any pressure charts and documents detailing technical discussion of any attempts to initiate circulation for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 101:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 102:**

Please produce documents detailing formation information for the open hole section, including top and bottom of permeable formations (total vertical depth and measured depth) and pore pressure of each formation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 102:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 103:**

Please produce documents detailing the technical specifications on the tools used in the shoe track, including the reamer shoe and automatic fill float equipment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 103:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 104:**

Please produce the technical specifications on the sub-sea plug set.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 104:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 105:**

Please produce the technical specifications for Allemon tool.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 105:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 106:**

Please produce the technical specifications for the cement head.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 106:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 107:**

     Please produce the schematic of pumping and wash up lines from the cement head to the rig floor.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 107:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 108:**

     Please produce documents detailing the drilling fluid technical specifications, including detailed composition, target drilling fluid properties at surface and down hole conditions, and actual drilling fluid properties when running casing at surface and down hole conditions, pumped into the well during circulation prior to cementing, and of fluid coming out of the well during circulation prior to cementing, including density, Pv, Yp, fluid loss, electrical stability, and Fann rheometer readings.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 108:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 109:**

     Please produce documents detailing the volume and rates of circulation, if any, during casing running but prior to reaching total vertical depth.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 109:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 110:**

     Please produce documents detailing the volume and rates pumped during circulation after the casing reaches the bottom of the well, but prior to cementing.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 110:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 111:**

Please produce documents detailing the volume and rates pumped for base oil at the start of any cement job during the drilling of the Macondo Well, including base oil technical specifications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 111:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 112:**

Please produce documents detailing the volume and rates pumped for spacer at the start of any cement job, including spacer technical specifications, performance targets, performance information, and formulation used on any cement job during the drilling of the Macondo Well, including surfactants, mutual solvents, or anti-foamers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 112:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 113:**

Please produce documents detailing the volume and rates pumped for cap cement slurry for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 113:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 114:**

Please produce documents detailing the volume and rates pumped for foamed cement base slurry for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 114:**

  BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 115:**

  Please produce documents detailing the volume, rates and pressure of the nitrogen that was pumped for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 115:**

  BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 116:**

  Please produce documents detailing the volume and rates of the surfactant that was pumped for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 116:**

  BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 117:**

  Please produce documents detailing the volume and rates pumped for the tail cement slurry for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 117:**

  BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 118:**

  Please produce documents detailing the procedure that was used to clean the Halliburton high pressure cementing line to the cement head after the last of the tail cement was pumped. Please indicate whether the line was washed up so that the cement in the high pressure line was not placed on top of the top plug, or if the cement in the high pressure cementing line was placed on top of the top plug.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 118:**

    BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 119:**

    Please produce documents detailing information on bumping the plug, pressuring up on the plug, holding pressure on the plug, and bleeding off pressure, including volume of flow back and any information on the floats holding back pressure for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 119:**

    BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 120:**

    Please produce documents or communications detailing inventory of any cementing chemicals, prior to or after the cementing operation, including spacer materials.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 120:**

    BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 121:**

    Please produce documents or communications detailing the break down of the timing of setting and testing the annular pack-off for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 121:**

    BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 122:**

    Please produce documents detailing information on the spacer fluid that was used to separate the drilling fluid and the sea water during the operation in preparation to abandon the well.  Please include spacer volume, density, rheological properties, and compatibility properties with the drilling fluid and sea water.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 122:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 123:**

      Please produce documents relating to any studies regarding the effectiveness of adding nitrogen to the cement mix in offshore drilling operations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 123:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 124:**

      Please produce all documents regarding any investigations or reports on the utilization of centralizers

**RESPONSE TO REQUEST FOR PRODUCTION NO. 124:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 125:**

      Please produce all documents regarding any investigations or reports on the utilization of cements.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 125:**

      BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 30:**

      Were you made aware of any process malfunction of a blow out preventer during a well site in the last twenty (20) years?  If yes, please state:

(i)      The ownership of the blow out preventer;

(ii)     The nature of the malfunction of the blow out preventer;

(iii)    The person(s) involved in the drilling of the well;

(iv)     Whether the malfunction resulted in a casualty or spill;

(v)      Whether remedial measures were taken as a consequence in a failure or the spill; and

(vi)     Whether any representative from your company was involved in the failure or the spill.

## RESPONSE TO INTERROGATORY NO. 30:

BP p.l.c. asserts its general objections.


## REQUEST FOR PRODUCTION NO. 126:

Please produce copies of any and all documents identifying subject matter contained in Interrogatory No. 30.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 126:

BP p.l.c. asserts its general objections.


## REQUEST FOR PRODUCTION NO. 127:

Please produce all documents regarding any investigations or reports on blow out preventers.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 127:

BP p.l.c. asserts its general objections.


## REQUEST FOR PRODUCTION NO. 128:

Please produce all documents regarding any investigations or reports on pressure testing.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 128:

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 129:**

Please produce all documents regarding any investigations or reports on the utilization of well casings.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 129:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 130:**

Please produce any documents or communications relating to positive or negative pressure tests regarding the Deepwater Horizon and Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 130:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 31:**

Please identify the persons who performed or should have performed any inspection, surveys, testing, maintenance, modifications, or alterations of or to the blowout preventer on the Macondo Well at the time of the incident, and describe in detail any such inspections, surveys, testing, maintenance, modifications, or alterations.

**RESPONSE TO INTERROGATORY NO. 31:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 131:**

Please produce any documents or communications relating to any inspections, surveys, testing, maintenance, modifications, or alterations of or to the blowout preventers located on the Macondo Well at the time of the incident, including any negative or positive pressure tests and stump tests conducted on such blowout preventers or any statutory, annual, continuous, special, class, or similar inspections, surveys, or testing done by any person.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 131:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 132:**

Please produce any documents or communications showing any modifications of the blowout preventer on the Macondo Well for the relevant time period, which affected the access or control of the blowout preventer.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 132:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 133:**

Please produce any documents or communications that describe, discuss, or depict each blowout preventer installed on the Macondo Well at the time of the incident, the amount of pressure each blowout preventer must generate to seal off the well, and the accumulator system or accumulator charging system for each blowout preventer.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 133:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 134:**

Please produce any documents or communications identifying any persons who participated in selecting or configuring the blowout preventers that were installed on the Macondo Well at the time of the incident, or who provided technical advice to you or any other person in selecting or configuring any of the blowout preventers that were installed on the Macondo Well at the time of the incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 134:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 135:**

Please produce any documents or communications relating to the selection or configuration of the blowout preventers installed at the time of the incident, or any technical advice that was provided to you or any other person in selecting and configuring any of the blowout preventers that were installed on the Macondo Well at the time of the incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 135:**

BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 32:**

Please identify any person who participated in selecting, configured, or provided technical advice to you or any other person in selecting and configuring any of the blowout preventers that were on the Macondo Well at the time of the incident.

**RESPONSE TO INTERROGATORY NO. 32:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 136:**

Please produce any documents or communications relating to any processes, tests, design considerations, safety devices, or other steps, products, or considerations that were taken or used to prevent a blowout of the Macondo Well, or to minimize or limit the effects of a blowout of the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 136:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 137:**

Please produce any diagrams, drawings, or similar documents relating to any processes, tests, design considerations, safety devices, or other steps, products, or considerations that were taken or used to prevent a blowout of the Macondo Well, or to minimize or limit the effects of a blowout of the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 137:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 138:**

Please produce copies of any documents or communications reflecting the failure of the blowout preventer.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 138:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 139:**

      Please produce any documents or communications relating to the maximum drilling depth capability of the Deepwater Horizon.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 139:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 140:**

      Please produce any documents or communications evidencing, discussing, or demonstrating any safety devices or designs that were incorporated into or considered for the Deepwater Horizon, in order to prevent or minimize an explosion, in the event the engines electrical systems or other equipment were exposed to a flammable gas, liquid, or other material.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 140:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 141:**

      Please produce any internal or external studies regarding the operational integrity of the Deepwater Horizon.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 141:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 142:**

      Please produce any of your policies, procedures, guidelines, protocols, instructions, training materials, or similar documents relating to any of the following:

      (i)      The Deepwater Horizon;

      (ii)     The Macondo Well;

(iii)    Well design;

(iv)    Drilling;

(v)     Blowout preventers;

(vi)    Pressure testing of wells or blowout preventers;

(vii)   Well control;

(viii)  Well control response;

(ix)    Mud gas seperators;

(x)     Safety; and

(xi)    Accident response.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 142:

BP p.l.c. asserts its general objections.

## REQUEST FOR PRODUCTION NO. 143:

Please produce any documents or communications any person provided to you regarding the operating procedures that would or should be followed when the Deepwater Horizon drilled a well.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 143:

BP p.l.c. asserts its general objections.

## REQUEST FOR PRODUCTION NO. 144:

Please produce any training manuals, materials, guidelines, instructions, or similar documents used on or applicable to the Deepwater Horizon, the activities and operations of the Deepwater Horizon, or any person aboard the Deepwater Horizon.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 144:

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 145:**

Please produce any internal standards, process safety standards, recommended best practices, engineering technical practices, or other policies regarding blowout preventers for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 145:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 146:**

Please produce any internal standards, process safety standards, recommended best practices, engineering technical practices, or other policies regarding cementing well production casing for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 146:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 147:**

Please produce any internal standards, process safety standards, recommended best practices, engineering technical practices, or other policies regarding well negative pressure tests for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 147:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 148:**

Please produce any internal standards, recommended best practices, engineering technical practices, or other policies regarding well control response actions for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 148:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 149:**

Please produce any internal standards, recommended best practices, engineering technical practices, or other policies regarding the mud gas separator for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 149:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 150:**

Please produce any management of changes or other documents reflecting approved deviations of Standard Operating Procedure generated on or for the Deepwater Horizon or Macondo Well during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 150:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 151:**

Please produce any HAZOPs, Process Hazard Analyses, process safety management studies, or job safety analyses generated on or for the Deepwater Horizon or Macondo Well during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 151:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 152:**

Please produce any traction reports regarding the Deepwater Horizon for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 152:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 153:**

Please produce any committee minutes used by you to assess or evaluate health, safety, security, or environment on oil or gas rigs in the Gulf of Mexico during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 153:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 154:**

Please produce copies of any documents or communications detailing employee complaints about the policies and procedures on the Deepwater Horizon or at the Macondo Well during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 154:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 155:**

Please produce copies of documents reflecting any standards on the blow out preventer on the Deep Water Horizon including 29 C.F.R. 350, requesting 14 day testing.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 155:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 156:**

Please produce any analyses performed subject to any applicable guidelines and regulations, including 30 C.F.R. 250, and any applicable American Petroleum Institute specifications or standards for oil or gas rigs operating in the Gulf of Mexico during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 156:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 157:**

Please produce the safety committee meeting minutes for the Society of Petroleum Engineers for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 157:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 158:**

Please produce any procedures and policies for monitoring and recording radio communications between employees and contractors involved with the operations and drilling activities of the Deepwater Horizon for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 158:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 159:**

Please produce the safety committee meeting minutes for the International Association of Drilling Contractors for the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 159:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 160:**

Please produce any documents or communications which evidence the training, education, and experience of the persons working on the Deepwater Horizon or at the Macondo Well during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 160:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 33:**

Please describe in detail how the employees who participated in or were involved with the operations and activities of the Deepwater Horizon were paid or compensated.  Your description should include information related to whether any such employee's compensation was in any way tied to the time it takes to complete a job or project, or the costs, expenses, or profits of any such projects.

**RESPONSE TO INTERROGATORY NO. 33:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 161:**

Please produce copies of any documents or communications outlining potential financial disincentives to your personnel involved in the operation of the Deepwater Horizon.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 161:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 162:**

Please produce copies of any documents or communications outlining potential financial disincentives to your personnel involved in the operation of the Deepwater Horizon for exceeding deadlines.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 162:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 163:**

Please produce copies of any documents or communications outlining potential financial disincentives to your personnel involved in the operation of the Deepwater Horizon for being over budget.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 163:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 164:**

Please produce any documents reflecting how your implementation of cost cutting measures in 1999 affected oil or gas rig operations in the Gulf of Mexico, including the Deepwater Horizon, during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 164:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 165:**

Please produce a copy of any Group HSSE, formerly HSE, standards employed by you for any year during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 165:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 166:**

Please produce any documents or communications regarding major accident risk awareness for the relevant time period including but not limited to the following areas:

(i)     Hazard identification;

(ii)    Consequence assessment;

(iii)   Frequency assessment;

(iv)    Risk & tolerability;

(v)     Risk matrix tool;

(vi)    Societal risk;

(vii)   Environmental risk; and

(viii)  Multiple fatality events.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 166:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 167:**

Please produce any documents or communications related to any safety management system you had in place during the relevant time period, along with any safety management systems or bridging documents in place or applicable to the Deepwater Horizon, Transocean Marianas, or any other mobile offshore drilling unit, platform, or rig that participated in, or was involved with, any operations or drilling activities with respect to the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 167:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 168:**

Please produce any documents or communications relating to any government permits issued for the Deepwater Horizon or Macondo Well during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 168:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 169:**

Please produce documents or communications relating to any inspections or surveys of the Deepwater Horizon, Macondo Well, or any component or appurtenance of the Deepwater Horizon or Macondo Well during the relevant time period, including any government, statutory, special, class, or continuing inspections or surveys conducted by or on behalf of the United States, Marshall Islands, Panama, a classification society, or a recognized organization.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 169:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 170:**

Please produce copies of any documents or communications provided to the British Government as a result of the incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 170:**

Subject to its specific and general objections, BP p.l.c. will conduct a reasonable search of non-privileged documents for documents or communications provided in response to a formal document request on behalf of BP p.l.c. to the British Government as a result of the Incident, and produce responsive documents identified as a result of that search.

To the extent plaintiffs' request seeks additional documents, BP p.l.c. objects on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 171:**

Please produce any communications between BP and the federal, state, or local government regarding the Gulf Coast Claims Facility.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 171:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 172:**

Please produce copies of any documents you have released to Congress.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 172:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 173:**

Please produce copies of any documents released to any federal, state, or local official regarding the Gulf Coast Claims Facility.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 173:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 174:**

Please produce copies of any transcripts from the Coast Guard hearings regarding the incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 174:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 175:**

Please produce any documents or communications you have provided to any government entity or agency in connection to or as a result of the incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 175:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 176:**

Please produce copies of any documents or communications generated to any state's Attorney General regarding the Gulf Coast Claims Facility.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 176:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 34:**

With respect to the Vessels of Opportunity program, please list the following:

(i)      The number of vessels procured in the rescue program;

(ii)     The number of vessels commissioned and the number of days each worked; and

(iii)    The amount paid by you to each vessel in the program.

**RESPONSE TO INTERROGATORY NO. 34:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 177:**

Please produce copies of any documents or communications provided by you to the U.S. Chemical Safety Board as a result of the incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 177:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 178:**

Please produce copies of any documents or communications provided by you to the Minerals Management Service, now known as the Bureau of Ocean Energy Management, as a result of the Deepwater Horizon incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 178:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 179:**

Please produce any and all copies of any documents or activity reports remitted to Minerals Management Service, now know as the Bureau of Ocean Energy Management, during the relevant time frame.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 179:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 180:**

Please produce any document relating to any Potential Incidents of Non-Compliance from Minerals Management Service, now know as the Bureau of Ocean Energy Management, regarding the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 180:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 181:**

Please produce documents showing your former employees currently employed by any governmental regulatory agency.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 181:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 182:**

Please produce any documents relating to the amount of political contributions paid or donated by you to any state official, federal official, or political action committee during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 182:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 183:**

Please produce copies of any documents that reflect any lobbying activities paid by you regarding the regulation and oversight of offshore drilling in United States waters, to avoid the required use of acoustic switches or activators on blowout preventers, or to avoid required environmental impact studies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 183:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 184:**

Please produce all documents utilizing standards by vessels and any correspondence between you and the government or any lobby or group opposing any government involving opposition regarding this subject matter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 184:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 185:**

Please produce any documents regarding gifts, trips, prizes, meals paid, given or made to any Minerals Management Service, now known as the Bureau of Ocean Energy Management, employees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 185:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 186:**

Please produce any documents produced by you in any government investigation between you and any governmental representatives regarding the incident and oil spill.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 186:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 187:**

Please produce any documents reflecting the identity of any previous employee in a government position that is now in the employment of BP.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 187:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 188:**

Please produce any documents reflecting the identity of any of your previous employees that are now in the employment of a governmental entity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 188:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 189:**

Please produce any documents or communications relating to any efforts, including lobbying or contributions to political action committees, by you or any organization or society of

which you are a member, to obtain deferment of any inspections, to avoid use of redundant blow out preventers, or to avoid the drilling of relief wells.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 189:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 190:**

Please produce all diagrams, drawings, or blueprints of the Deepwater Horizon, both as manufactured and as it existed at the time of the incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 190:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 191:**

Please produce any documents or communications evidencing or relating to your or any other person's relationship to or interest in the Deepwater Horizon, including all contracts, agreements, charters, leases, or similar documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 191:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 192:**

Please produce any documents identifying any person who owned, chartered, leased, rented, or had any other interest whatsoever in the Deepwater Horizon.  For any person identified, please provide the following information:

    (i)     Produce any documents describing that person's interest in the Deepwater Horizon;

    (ii)    Produce any contracts, agreements, or other legal documents relating to or concerning that person's interest in the Deepwater Horizon;

    (iii)   Produce any communications relating to or concerning that person's interest in the Deepwater Horizon;

    (iv)   Produce any documents relating to or concerning that person's interest in the Deepwater Horizon.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 192:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 193:**

      Please produce any documents or communications evidencing or relating to your or any other person's relationship to or interest in the Macondo Well, including all contracts, agreements, charters, leases, or similar documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 193:**

      BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 35:**

      Please identify the persons within your organization who were primarily responsible for monitoring or overseeing the operations and activities of the Deepwater Horizon or the operations and activities that took place at the Macondo Well during the relevant time period.

**RESPONSE TO INTERROGATORY NO. 35:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 194:**

      Please produce any documents or communications relating to the assignment of persons by you to work on any project relating to the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 194:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 195:**

      Please produce the BP database file of engineering documents for the Macondo Well including but not limited to:

      (i)      Any Piping & Instrument Drawings;

      (ii)     Any P&ID's issued for construction;

(iii)    Any P&ID's issued "design";

(iv)    Any P&ID's issued "as-built";

(v)    Any P&ID's issued DC-1 Welding Procedure Specifications;

(vi)    Any P&ID's issued Procedure Qualification Records;

(vii)    Any P&ID's issued safety shutdown logic drawings; and

(viii)    Any P&ID's issued "as-built" safety shutdown logic calls.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 195:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 196:**

Please produce any documents or communications concerning the Macondo Well project, including communications concerning meetings, minutes of meetings, organization charts, operational charts, and operational chains of command.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 196:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 197:**

Please produce any documents or communications regarding any joint defense agreement entered into with any person relating to the incident, or any oil spill, clean up, control efforts, or mitigation efforts growing out of the incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 197:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 198:**

Please produce any documents or communications relating to the terms of any contractual or financial relationship or agreements regarding your duties, responsibilities, obligations, or liabilities in connection with the Deepwater Horizon or Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 198:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 199:**

Please produce any documents or communications between you and other person concerning any work, or proposed work, on the Macondo Well, including any testing or proposed testing during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 199:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 200:**

Please produce any documents or communications between you and any other person regarding any work, proposed work, or suggested work on the Deepwater Horizon or Macondo Well, including all documents and communications relating to any bids, invoices, tests, or proposed tests for the Deepwater Horizon or Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 200:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 201:**

Please produce any documents or communications to or from you and the following persons, firms, corporations, political subdivisions, government agencies and entities that relate to the Macondo Well or the Deepwater Horizon:

(i)     Halliburton;

(ii)    Transocean;

(iii)   Weatherford;

(iv)    M I Swaco;

(v)     Anadarko;

(vi)    MOEX;

(vii)    Cameron International;

(viii)   Materials Management Services;

(ix)     Tidewater Marine;

(x)      United States Coast Guard;

(xi)     Schlumberger;

(xii)    NALCO;

(xiii)   Seacorp;

(xiv)    Department of Interior;

(xv)     Department of Energy;

(xvi)    Environmental Protection Agency;

(xvii)   Chemical Safety Board;

(xviii)  House Committee on Energy and Finance;

(xix)    Senate Committee on Natural Resources and Energy; and

(xx)     Any other defendant named in Multi District Litigation No. 2179.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 201:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 202:**

Please produce any contracts, agreements, purchase orders, or memoranda of understanding with any person relating to any work, products, services, or supplies for use in drilling the Macondo Well or Deepwater Horizon during the relevant time period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 202:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 203:**

Please produce any documents evidencing any compensation and payments provided or made from you to any other person during the relevant time period for any products, services, contracts, or agreements with respect to the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 203:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 204:**

Please produce a copy of the contract or lease agreement between BP, P.L.C., Mitsui & Co., Mitsui Oil Exploration Co., MOEX Offshore 2007, L.L.C., or Anadarko Petroleum Corporation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 204:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 36:**

Please state whether you contend any person other than you caused, contributed to, is liable for, is at fault for, is responsible for, or is otherwise accountable for the incident, blowout, explosion, accident, oil spill, or resulting injuries and damages.  If you do, please identify any such person and for any person identified, please provide the following information and documents

(i)     State any fact upon which you base your contention that someone other than you caused, contributed to, is liable for, is at fault for, is responsible for, or is otherwise accountable for the blowout, explosion, accident, oil spill, or resulting injuries and damages; and

(ii)    Identify any documents supporting your contention that such person is liable.

**RESPONSE TO INTERROGATORY NO. 36:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 205:**

Please produce any documents identified in your response to Interrogatory No. 36.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 205:**

BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 37:**

Please state whether you contend that one of your affiliated, related, parent, or subsidiary corporations or entities should have been named in the complaint instead of you.  If you do, please provide the following information:

      (i)      Identify any such corporations or entities;

      (ii)     For any corporation or entity identified, describe in detail that corporation or entity's relationship to you and identify any documents relating to that corporation or entity's relationship to you; and

      (iii)    For any corporation or entity identified, describe in detail that corporation or entity's relationship to the other defendants in this Multi District Litigation, the Macondo Well, and the Deepwater Horizon, and identify any documents relating to that corporation or entity's relationship to the other defendants, the Macondo Well, or the Deepwater Horizon.

**RESPONSE TO INTERROGATORY NO. 37:**

Subject to its specific and general objections, BP p.l.c. states that the correct names of the

BP entities that are properly defendants in litigation relating to the *Deepwater Horizon* and

Macondo Well incident on April 20, 2010 are as follows:  BP Exploration & Production Inc.

("BPXP"), a Delaware corporation with its principal place of business in Houston, Texas (this

entity was designated as a Responsible Party under OPA 90 and was holder of the MC 252

leasehold); and BP America Production Company ("BPAP"), a Delaware corporation with its

principal place of business in Houston, Texas (this entity was a party to the drilling rig contract

with Transocean).

To the extent other BP entities were named in this litigation, BP p.l.c. contends those

entities were named in error.  In particular and by way of example only:  BP Products North

America Inc., a Maryland corporation, is an entity primarily involved in downstream operations

such as crude oil refineries, and transportation and marketing of refined products like gasoline, and it had nothing to do with exploration activity involving the Macondo Well or the April 20, 2010 incident or resulting oil spill; BP America Inc. ("BPA") is an entity that is a holding company with no Gulf of Mexico operational assets; and BP p.l.c. is a corporation organized under the laws of England and Wales, which is publicly traded with its headquarters in London, England.  BP p.l.c. did not own the MC 252 leasehold, had no employees on the *Deepwater Horizon*, and was not a party to the drilling rig contract with Transocean.

BP p.l.c. further states that the relationship of BPXP and BPAP to the Macondo Well, the *Deepwater Horizon* and other defendants in MDL 2179 has been the subject of numerous other discovery requests, and (for example) various contracts relating to these subjects have been previously produced in this litigation.

To the extent plaintiffs' interrogatory seeks additional information, BP p.l.c. objects on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 206:**

Please produce any documents identified in your response to Interrogatory No. 37.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 206:**

BP p.l.c. asserts its general objections.

**INTERROGATORY NO. 38:**

With respect to the crew aboard the Deep Water Horizon at the time of the incident, do you contend you are legally entitled to any statutory cap or limitation of liability?  If so, please state the legal basis of the limitation or cap.

**RESPONSE TO INTERROGATORY NO. 38:**

     BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 39:**

     As to any document or communication which has not been produced because it has been destroyed, lost, or is no longer in your possession, please identify the document and also state when and why the document was destroyed, lost, or is no longer in your possession.

**RESPONSE TO INTERROGATORY NO. 39:**

     BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 40:**

     Please identify any records, logs, reports or other documentation kept in reference to the use of any of your products, property, services, or equipment on the Deepwater Horizon or at or in the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 40:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 207:**

     Please produce any documents or communications relating to any records, logs, reports or other documentation kept in reference to the use of any your products, property, services, or equipment on the Deepwater Horizon or at or in the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 207:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 208:**

     Please produce any documents or communications relating to any internal communications concerning any work or proposed work on the Macondo Well, including any testing or proposed testing and any decisions to remove your employees from the Deepwater Horizon.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 208:**

    BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 209:**

    Please produce any documents or communications relating to any notices of claim, defenses and indemnity demands, demands for contribution, or demands for damages you have received from any persons in connection with the casualty.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 209:**

    BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 41:**

    Please state whether you, anyone in your employ, or anyone acting on your behalf in connection with the events leading up to and the incident has consulted or retained any person deemed to be an expert in their field.  If so, please identify any experts.

**RESPONSE TO INTERROGATORY NO. 41:**

    BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 210:**

    Please produce a current curriculum vitae of any expert retained by you, any report offered in connection with this incident, and any materials used by the expert to render such report.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 210:**

    BP p.l.c. asserts its general objections.


**INTERROGATORY NO. 42:**

    Please identify and describe any exhibits you may or will use at trial.

**RESPONSE TO INTERROGATORY NO. 42:**

    BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 211:**

Please produce any documents or communications relating to emergency preparedness, planning, and implementation, including emergency preparedness in the event of a blowout preventer failure.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 211:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 212:**

Please produce any reports or assessments dealing with criminal penalties associated with environmental fines for releasing oil in the Gulf of Mexico, or the killing or injuring of fish, wild birds, wild quadrupeds, and other wildlife and aquatic life.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 212:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 213:**

Please produce any documents or communications regarding the potential economic impact to tourism along the Gulf Coast as a result of the oil spill.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 213:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 214:**

Please produce any documents or communications regarding the potential economic impact to fish, wild birds, wild quadrupeds, and other wildlife and aquatic life.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 214:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 215:**

Please produce documents between you and the National Offshore Safety Advisory Committe.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 215:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 216:**

Please produce all documents establishing your relationship with the International Association of Drilling Contractors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 216:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 217:**

Please produce any documents or communications regarding the demotion, resignation or reassignment of Tony Hayward from Chief Executive Officer of BP, P.L.C. at the time of the incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 217:**

In addition to its general objections, BP p.l.c. objects to this request on the grounds that it is unreasonable, harassing, and unduly burdensome, and that it seeks documents not relevant to the claims or defenses of any party.

**REQUEST FOR PRODUCTION NO. 218:**

Please produce any documents identifying any law firms hired by you in this matter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 218:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 219:**

Please produce any documents and communications showing your relationship to or contribution to The Louisiana Record.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 219:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 220:**

Please produce any documents or communications putting a cost on the value of human life.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 220:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 221:**

Please produce any documents or communications comparing individuals to pigs or any other domestic commodity or animal.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 221:**

BP p.l.c. asserts its general objections.


**REQUEST FOR PRODUCTION NO. 222:**

Please produce the production sharing agreement on joint exploration and development of the Shafag-Asiman structure in the Azerbaijan sector of the Caspian Sea.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 222:**

In addition to its general objections, BP p.l.c. objects to this request on the grounds that it

is unreasonable, harassing, and unduly burdensome, and that it seeks documents not relevant to

the claims or defenses of any party.

74

**REQUEST FOR PRODUCTION NO. 223:**

      Please produce any documents or communications by your employees which include the words or phrases "jail," "prison," "penitentiary," "the pen" or any other euphemism for incarceration.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 223:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 224:**

      Please produce any documents or communications by your employees which include the words or phrases reference someone being killed, losing their life, or dying aboard a Gulf of Mexico oil or gas rig.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 224:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 225:**

      Please produce any documents or communications by your employees which reference to your not being in compliance with or being in violation of 30 C.F.R. 250 or any other applicable regulation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 225:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 226:**

      Please produce any employee surveys for workers on oil rigs in the Gulf of Mexico.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 226:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 227:**

Please produce any documents relating to demands and responses thereto for reimbursement of Oil Pollution Act response costs by you to Anadarko or MOEX.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 227:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 228:**

Please produce all documents relating to demands and any responses thereto for contribution to the Gulf Coast Claims Facility or any predecessor interim payment scheme for Oil Pollution Act claimants by you to Anadarko or MOEX.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 228:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 229:**

Please produce all documents related to your obligation of notice and reporting as the Macondo Well Operator under the Joint Operating Agreement to the non-operating interest owners.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 229:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 230:**

Please produce any documents or communications, including invoices, payments, and operational information, between Anadarko or MOEX and you.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 230:**

BP p.l.c. asserts its general objections.

**REQUEST FOR PRODUCTION NO. 231:**

Please produce the following documents:

(i)      Morning Reports or Daily Drilling Reports;

(ii)     International Association of Drilling Contractors;

(iii)    Casing Landing Details;

(iv)    Cementing Plan Details;

(v)     Drilling Program; and

(vi)    Approved Drilling Permit.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 231:

BP p.l.c. asserts its general objections.


## INTERROGATORY NO. 43:

Please state whether or not your response to any request for admission served with these interrogatories and requests for production is an unqualified admission.  If not, for any response that is not an unqualified admission:

(i)      State the number of the Request for Admission;

(ii)     State any facts upon which you base your response;

(iii)    Identify any persons who have knowledge of those facts; and

(iv)    Identify any documents and other tangible things that support your response and identify the person who has any document or thing

## RESPONSE TO INTERROGATORY NO. 43:

BP p.l.c. asserts its general objections.


## REQUEST FOR ADMISSION NO. 1:

Please admit or deny that prior to the incident you were in constructive possession of a copy of the 2001 Transocean Study on the use and effectiveness of blowout preventers.

## RESPONSE TO REQUEST FOR ADMISSION NO. 1:

BP p.l.c. asserts its general objections.

77

**REQUEST FOR ADMISSION NO. 2:**

Please admit or deny you were aware before April 20, 2010 blowout preventers are not a fail safe.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 3:**

Please admit or deny that prior to the incident you were in constructive possession of Cameron's Engineering Bulletin (EB 891D) recommending battery banks be replaced after one year of operation or when the number of actuations exceeds 33 for that year, whichever comes first.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 4:**

Please admit or deny that prior to the incident you had in your constructive possession a copy of the Lloyd's Register Report.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 5:**

Please admit or deny you have in your constructive possession any document instructing employees not to use specific words or phrases in reports, including the following:

    (i)       Alarming;

    (ii)      Appalling;

    (iii)    Careless;

    (iv)    Criminal;

    (v)     Dangerous;

(vi)     Deliberately;

(vii)    Deplorable;

(viii)   Dishonest;

(ix)     (i)      Disorderly;

(x)      Fraudulent;

(xi)     Gross neglect;

(xii)    (l)      Incompetent;

(xiii)   Intentional;

(xiv)    Neglect;

(xv)     Perjured;

(xvi)    Reckless;

(xvii)   Serious problem;

(xviii)  Terrible;

(xix)    Violation; and

**(xx)**     Willful misconduct.

## RESPONSE TO REQUEST FOR ADMISSION NO. 5:

BP p.l.c. asserts its general objections.


## REQUEST FOR ADMISSION NO. 6:

Please admit or deny you are a member of the American Petroleum Institute.

## RESPONSE TO REQUEST FOR ADMISSION NO. 6:

Subject to its general objections, BP p.l.c. responds as follows:  BP p.l.c. admits that BP
America Inc. is a member of the American Petroleum Institute.  BP p.l.c. denies the remainder of
this request.

**REQUEST FOR ADMISSION NO. 7:**

Please admit or deny you are a member of the U. S. Chamber of Commerce.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Subject to its general objections, BP p.l.c. responds as follows:  BP p.l.c. admits that BP America Inc. is a member of the U.S. Chamber of Commerce.  BP p.l.c. denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 8:**

Please admit or deny you are a member of the Institute for Legal Reform.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Subject to its general objections, BP p.l.c. responds as follows:  BP p.l.c. admits that BP America Inc. is a member of the Institute for Legal Reform.  BP p.l.c. denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 9:**

Please admit or deny you contribute capital to The Louisiana Record.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 10:**

Please admit or deny Robert Kaluza was an employee of yours at the time of the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 11:**

Please admit or deny at all times on the date of the incident Robert Kaluza was acting in the course and scope of his employment with you.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 12:**

Please admit or deny Robert Kaluza was informed prior to the explosion approximately 21 centralizers were recommended to stabilize the well site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 13:**

Please admit or deny Robert Kaluza ignored this advice and ordered the Macondo Well to be completed utilizing six centralizers.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 14:**

Please admit or deny Robert Kaluza made this decision at least in part to expedite the process of completing the Macondo Well.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 15:**

Please admit or deny Robert Kaluza was advised prior to the incident to utilize three cement plugs.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 16:**

Please admit or deny Robert Kaluza disregarded this advice and ordered the Macondo Well to be completed with two cement plugs.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 17:**

Please admit or deny Robert Kaluza was advised cement bond logs would need to be completed as part of the well completion process.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 18:**

Please admit or deny the cement bond logs would cost over $100,000.00.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 19:**

Please admit or deny Robert Kaluza ignored this advice and ordered the Macondo Well to be completed without performing the cement bond logs.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 20:**

Please admit or deny Robert Kaluza decided to forego the cement bond logs in part as a cost and time saving mechanism.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 21:**

Please admit or deny Robert Kaluza was employed at the time by you under a performance contract providing financial incentives and disincentives for work performed and costs associated with drilling the Macondo Well.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 22:**

Please admit or deny you have retained criminal counsel for Robert Kaluza.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 23:**

Please admit or deny you have compared individuals to pigs.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 24:**

Please admit or deny a BP engineer described the Macondo Well as a "nightmare well" prior to April 20, 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 25:**

Please admit or deny you acknowledged "well-control" problems at the Macondo Well in March 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 26:**

Please admit or deny former BP, P.L.C. Chief Executive Officer, Tony Hayward, was quoted in substance saying, "what the hell did we do to deserve this."

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

BP p.l.c. objects to this request on the grounds that (i) it seeks information or documents not relevant to the claims or defenses of any party; (ii) seeks an admission that would be unfairly prejudicial and therefore inadmissible at trial; (iii) was clearly propounded only to embarrass, annoy, and harass BP p.l.c.; and (iv) unfairly injects bias, sensationalism, and innuendo into this litigation.

Subject to its general objections, BP p.l.c. responds as follows: BP p.l.c. admits that on April 29, 2010, the New York Times reported: "As Mr. Hayward said to fellow executives in his London office recently, 'What the hell did we do to deserve this?'" The New York Times article was then subsequently quoted by a number of media outlets. BP p.l.c. denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 27:**

Please admit or deny former BP, P.L.C. Chief Executive Officer, Tony Hayward, was quoted in substance saying on or about May 18, 2010, "Yeah of course I am"– when asked if he sleeps at night.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

BP p.l.c. objects to this request on the grounds that (i) it seeks information or documents not relevant to the claims or defenses of any party; (ii) seeks an admission that would be unfairly prejudicial and therefore inadmissible at trial; (iii) was clearly propounded only to embarrass, annoy, and harass BP p.l.c.; and (iv) unfairly injects bias, sensationalism, and innuendo into this litigation.

Subject to its general objections, BP p.l.c. responds as follows:  BP p.l.c. admits that on May 18, 2010 Forbes reported, in part, as follows:

> Forbes:  So are you sleeping at night?
> Hayward:  Yeah, of course.  Of course I am.

BP p.l.c. denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 28:**

Please admit or deny former BP, P.L.C. Chief Executive Officer, Tony Hayward, was quoted in substance saying, "I'd like my life back."

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

BP p.l.c. objects to this request on the grounds that (i) it seeks information or documents not relevant to the claims or defenses of any party; (ii) seeks an admission that would be unfairly prejudicial and therefore inadmissible at trial; (iii) was clearly propounded only to embarrass, annoy, and harass BP p.l.c.; and (iv) unfairly injects bias, sensationalism, and innuendo into this litigation.

Subject to its general objections, BP p.l.c. responds as follows:  BP p.l.c. admits that from video footage first aired on the Today Show, a number of media outlets reported Mr. Hayward saying in substance, "There is no one who wants this thing over more than I do.  I'd like my life back."  BP p.l.c. denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 29:**

Please admit or deny former BP, P.L.C. Chief Executive Officer, Tony Hayward, was quoted in substance saying on or about May 18, 2010, "I think the environmental impact of this disaster is likely to have been very, very modest."

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

BP p.l.c. objects to this request on the grounds that (i) it seeks information or documents not relevant to the claims or defenses of any party; (ii) seeks an admission that would be unfairly prejudicial and therefore inadmissible at trial; (iii) was clearly propounded only to embarrass, annoy, and harass BP p.l.c.; and (iv) unfairly injects bias, sensationalism, and innuendo into this litigation.

Subject to its general objections, BP p.l.c. responds as follows:  BP p.l.c. admits that on May 18, 2010 Skynews reported as follows:

> Dr. Tony Hayward said:  "I think the environmental impact of this disaster is likely to have been very, very modest.  It is impossible to say and we will mount, as part of the aftermath, a very detailed environmental assessment but everything we can see at the moment suggests that the overall environmental impact will be very, very modest."

BP p.l.c. denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 30:**

Please admit of deny former BP, P.L.C. Chief Executive Officer, Tony Hayward, was quoted in substance saying on or about May 14, 2010, "The Gulf of Mexico is a very big ocean.

The amount of volume or oil and dispersant we are putting into it is tiny in relation to the total water volume."

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

BP p.l.c. objects to this request on the grounds that (i) it seeks information or documents not relevant to the claims or defenses of any party; (ii) seeks an admission that would be unfairly prejudicial and therefore inadmissible at trial; (iii) was clearly propounded only to embarrass, annoy, and harass BP p.l.c.; and (iv) unfairly injects bias, sensationalism, and innuendo into this litigation.

Subject to its general objections, BP p.l.c. responds as follows:  BP p.l.c. admits that on May 14, 2010 the Guardian reported that during an interview in Houston, Mr. Hayward stated:

> The Gulf of Mexico is a very big ocean.  The amount of volume of oil dispersant we are putting into it is tiny in relation to the total water volume.

BP p.l.c. denies the remainder of this request.


**REQUEST FOR ADMISSION NO. 31:**

Please admit or deny BP official, Carl Henric Svanberg, was quoted in substance saying BP cares about the "small people."

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

BP p.l.c. objects to this request on the grounds that (i) it seeks information or documents not relevant to the claims or defenses of any party; (ii) seeks an admission that would be unfairly prejudicial and therefore inadmissible at trial; (iii) was clearly propounded only to embarrass, annoy, and harass BP p.l.c.; and (iv) unfairly injects bias, sensationalism, and innuendo into this litigation.

Subject to its general objections, BP p.l.c. responds as follows:  BP p.l.c. admits that after a meeting at the Oval Office in the White House, a number of media outlets, through a live feed

and later video footage, recorded a portion of Mr. Svanberg's statement to the press including the words "we care about the small people."  BP p.l.c. denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 32:**

Please admit or deny other countries require simultaneous drilling of a relief well.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 33:**

Please admit or deny your executives working for then BP, P.L.C. Chief Executive Officer, Lord Browne, spent millions of pounds on champagne-fueled sex parties to help secure lucrative international oil contracts.

**RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

BP p.l.c. objects to this request on the grounds that (i) it seeks information or documents not relevant to the claims or defenses of any party; (ii) seeks an admission that would be unfairly prejudicial and therefore inadmissible at trial; (iii) was clearly propounded only to embarrass, annoy, and harass BP p.l.c.; and (iv) unfairly injects bias, sensationalism, and innuendo into this litigation.

**REQUEST FOR ADMISSION NO. 34:**

Please admit or deny your executives spent £45,000,000 in expenses over just four months of negotiations with Azerbaijan's state oil company.

**RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

BP p.l.c. objects to this request on the grounds that (i) it seeks information or documents not relevant to the claims or defenses of any party; (ii) seeks an admission that would be unfairly prejudicial and therefore inadmissible at trial; (iii) was clearly propounded only to embarrass,

annoy, and harass BP p.l.c.; and (iv) unfairly injects bias, sensationalism, and innuendo into this litigation.

**REQUEST FOR ADMISSION NO. 35:**

Please admit or deny you recently signed a thirty (30) year deal with Azerbaijan for production of oil in and around the Caspian Sea.

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

BP p.l.c. objects to this request on the grounds that (i) it seeks information or documents not relevant to the claims or defenses of any party; (ii) seeks an admission that would be unfairly prejudicial and therefore inadmissible at trial; (iii) was clearly propounded only to embarrass, annoy, and harass BP p.l.c.; and (iv) unfairly injects bias, sensationalism, and innuendo into this litigation.

**REQUEST FOR ADMISSION NO. 36:**

Please admit or deny your "Regional Oil Spill Response Plan – Gulf of Mexico," submitted to the United States government, outlined the sensitivities of marine mammals, including walruses, sea otters, and sea lions, to an oil spill in the Gulf of Mexico.

**RESPONSE TO REQUEST FOR ADMISSION NO. 36:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 37:**

Please admit or deny there are no walruses in the Gulf of Mexico.

**RESPONSE TO REQUEST FOR ADMISSION NO. 37:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 38:**

Please admit or deny there are no sea otters in the Gulf of Mexico.

**RESPONSE TO REQUEST FOR ADMISSION NO. 38:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 39:**

Please admit or deny there are no sea lions in the Gulf of Mexico.

**RESPONSE TO REQUEST FOR ADMISSION NO. 39:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 40:**

Please admit or deny you did not conduct a Regional Oil Spill Response Plan for the Gulf of Mexico.

**RESPONSE TO REQUEST FOR ADMISSION NO. 40:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 41:**

Please admit or deny you copied the Regional Oil Spill Response Plan- Alaska, and re-labeled it the Regional Oil Spill Response Plan- Gulf of Mexico.

**RESPONSE TO REQUEST FOR ADMISSION NO. 41:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 42:**

Please admit or deny you hired Transocean to drill the Macondo Well.

**RESPONSE TO REQUEST FOR ADMISSION NO. 42:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 43:**

Please admit or deny you had operational control at any time over the Macondo Well.

**RESPONSE TO REQUEST FOR ADMISSION NO. 43:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 44:**

Please admit or deny the Macondo Well project was approximately six months behind schedule on April 20, 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 44:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 45:**

Please admit or deny the delay in completing the drilling of the Macondo Well was costing you more than $500,000 per day as of April 20, 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 45:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 46:**

Please admit or deny in April of 2010, an explosion and fire destroyed the Deepwater Horizon Oil Rig, releasing millions of gallons of crude oil into the Gulf of Mexico.

**RESPONSE TO REQUEST FOR ADMISSION NO. 46:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 47:**

Please admit or deny hydrocarbons from the Macondo Well caused the explosion and demise of the Deepwater Horizon.

91

**RESPONSE TO REQUEST FOR ADMISSION NO. 47:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 48:**

Please admit or deny vapors emanating from the Macondo Well eventually reached the generators causing one or more generators to ignite the vapors.

**RESPONSE TO REQUEST FOR ADMISSION NO. 48:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 49:**

Please admit or deny the shoe track barriers did not isolate the hydrocarbons on April 20, 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 49:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 50:**

Please admit or deny a diversion to the mud gas separator resulted in gas venting onto the rig on April 20, 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 50:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 51:**

Please admit or deny on April 20, 2010, you did not act to control the well until hydrocarbons had passed through the blowout preventer and into the riser.

**RESPONSE TO REQUEST FOR ADMISSION NO. 51:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 52:**

Please admit or deny you failed to divert fluids, including hydrocarbons, exiting the riser to the overboard diverter line.

**RESPONSE TO REQUEST FOR ADMISSION NO. 52:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 53:**

Please admit or deny if fluids had been diverted overboard, rather than to the mud gas separator system, there may have been more time to respond, and the consequences of the accident may have been reduced.

**RESPONSE TO REQUEST FOR ADMISSION NO. 53:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 54:**

Please admit or deny you directed fluids, including hydrocarbons exiting the riser, to the Deepwater Horizon mud gas separator system.

**RESPONSE TO REQUEST FOR ADMISSION NO. 54:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 55:**

Please admit or deny all persons aboard the Deepwater Horizon at the time of the incident were seamen.

**RESPONSE TO REQUEST FOR ADMISSION NO. 55:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 56:**

Please admit or deny the Deepwater Horizon is designed to disengage and reposition in an area away from the Macondo Well in the event of an emergency.

**RESPONSE TO REQUEST FOR ADMISSION NO. 56:**

    BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 57:**

    Please admit or deny at the time of the incident the Deepwater Horizon did not disengage or make any affirmative action to reposition after the explosion and fire.

**RESPONSE TO REQUEST FOR ADMISSION NO. 57:**

    BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 58:**

    Please admit or deny the Macondo Well was designed with few barriers to gas flow.

**RESPONSE TO REQUEST FOR ADMISSION NO. 58:**

    BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 59:**

    Please admit or deny the Macondo Well failed to utilize a sufficient number of "centralizers" to prevent channeling during the cementing process.

**RESPONSE TO REQUEST FOR ADMISSION NO. 59:**

    BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 60:**

    Please admit or deny you failed to secure the wellhead on the Macondo Well with a lockdown sleeve before allowing pressure on the seal from below.

**RESPONSE TO REQUEST FOR ADMISSION NO. 60:**

    BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 61:**

Please admit or deny only two negative pressure tests of the Macondo Well casing's integrity were performed between April 1, 2010 and April 20, 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 61:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 62:**

Please admit or deny the negative pressure tests of the Macondo Well casing's integrity performed between April 1, 2010 and April 20, 2010 did not satisfy your safety guidelines.

**RESPONSE TO REQUEST FOR ADMISSION NO. 62:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 63:**

Please admit or deny Pat O'Brien is an authority on downhole pressure issues.

**RESPONSE TO REQUEST FOR ADMISSION NO. 63:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 64:**

Please admit or deny Pat O'Brien was present on the Deepwater Horizon on the date of the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 64:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 65:**

Please admit or deny Pat O'Brien overheard crew state the well was experiencing returns in a negative pressure test.

**RESPONSE TO REQUEST FOR ADMISSION NO. 65:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 66:**

      Please admit or deny Pat O'Brien took no action when he overheard the crew state the well was experiencing returns on a negative pressure test.

**RESPONSE TO REQUEST FOR ADMISSION NO. 66:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 67:**

      Please admit or deny Pat O'Brien had the authority to stop or avoid the consequences of the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 67:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 68:**

      Please admit or deny there were discussions held between you and Transocean to do additional testing on the blowout preventer prior to the incident in question.

**RESPONSE TO REQUEST FOR ADMISSION NO. 68:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 69:**

      Please admit or deny there were discussions held to do additional testing on the blowout preventer by you and Halliburton prior to the incident in question.

**RESPONSE TO REQUEST FOR ADMISSION NO. 69:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 70:**

Please admit or deny there were discussions held to do additional testing on the blowout preventer by you and Schlumberger prior to the incident in question.

**RESPONSE TO REQUEST FOR ADMISSION NO. 70:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 71:**

Please admit or deny the maintenance records from 2001 to 2010 indicate during this period the automatic mode function batteries were changed at a frequency less than the manufacturer's recommendations.

**RESPONSE TO REQUEST FOR ADMISSION NO. 71:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 72:**

Please admit or deny the automatic mode function failed to activate the blind shear ram before the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 72:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 73:**

Please admit or deny the automatic mode function failed to activate the blind shear ram during the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 73:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 74:**

Please admit or deny the automatic mode function failed to activate the blind shear ram after the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 74:**

    BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 75:**

    Please admit or deny the blind sheer ram failed to seal at the time of the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 75:**

    BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 76:**

    Please admit or deny the blind sheer ram failed to seal after the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 76:**

    BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 77:**

    Please admit or deny the blowout preventer's backup system, called a "pod," lost functionality before the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 77:**

    BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 78:**

    Please admit or deny that you knew the blowout preventer's backup system, called a "pod," lost functionality before the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 78:**

    BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 79:**

Please admit or deny that the blowout preventer's damaged pod backup system lost functionality or was not repaired before the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 79:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 80:**

Please admit or deny there was a faulty solenoid in the yellow pod before the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 80:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 81:**

Please admit or deny there was a faulty solenoid in the yellow pod during the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 81:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 82:**

Please admit or deny there was a faulty solenoid in the yellow pod after the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 82:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 83:**

Please admit or deny there were low charge batteries in the blue pod of the blowout preventer central before the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 83:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 84:**

Please admit or deny there were low charge batteries in the blue pod of the blowout preventer central during the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 84:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 85:**

Please admit or deny there were low charge batteries in the blue pod blowout preventer central after the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 85:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 86:**

Please admit or deny during drilling operations rubber shavings were observed in mud from the downhole operations.

**RESPONSE TO REQUEST FOR ADMISSION NO. 86:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 87:**

Please admit or deny rubber does not exist in natural subsea strata.

**RESPONSE TO REQUEST FOR ADMISSION NO. 87:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 88:**

Please admit or deny the only source of rubber in the mud from downhole was the blowout preventer annular preventer.

100

**RESPONSE TO REQUEST FOR ADMISSION NO. 88:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 89:**

      Please admit or deny within the 30 days prior to the April 20, 2010 explosion, the blowout preventer's annular preventer was damaged.

**RESPONSE TO REQUEST FOR ADMISSION NO. 89:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 90:**

      Please admit or deny you knew the blowout preventer annular preventer was damaged before the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 90:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 91:**

      Please admit or deny drilling operations continued after you knew of the damage to the blowout preventer annular preventer.

**RESPONSE TO REQUEST FOR ADMISSION NO. 91:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 92:**

      Please admit or deny you damaged the blowout preventer annular preventer.

**RESPONSE TO REQUEST FOR ADMISSION NO. 92:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 93:**

Please admit or deny that within the thirty (30) days prior to the incident, the blowout preventer's damaged annular preventer was not repaired.

**RESPONSE TO REQUEST FOR ADMISSION NO. 93:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 94:**

Please admit or deny the blowout preventer had a hydraulic leak before the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 94:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 95:**

Please admit or deny you knew the blowout preventer had a hydraulic leak before the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 95:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 96:**

Please admit or deny you did not repair the blowout preventer's hydraulic leak before the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 96:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 97:**

Please admit or deny the blowout preventer's hydraulic leak caused the blowout preventer to lose functionality, and caused the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 97:**

    BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 98:**

    Please admit or deny the blowout preventer emergency mode did not seal the well at the time of the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 98:**

    BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 99:**

    Please admit or deny the blowout preventer emergency mode did not function before the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 99:**

    BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 100:**

    Please admit or deny the blowout preventer emergency mode did not function during the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 100:**

    BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 101:**

    Please admit or deny the blowout preventer emergency mode did not function after the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 101:**

    BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 102:**

Please admit or deny the Macondo Well was not plumbed properly and the gasket seal was not sealed.

**RESPONSE TO REQUEST FOR ADMISSION NO. 102:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 103:**

Please admit or deny the telescope casing was not a fail safe.

**RESPONSE TO REQUEST FOR ADMISSION NO. 103:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 104:**

Please admit or deny the telescope casing was cheaper to utilize.

**RESPONSE TO REQUEST FOR ADMISSION NO. 104:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 105:**

Please admit or deny the telescope tubing is cheaper to use.

**RESPONSE TO REQUEST FOR ADMISSION NO. 105:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 106:**

Please admit or deny the shoe track device malfunctioned after repeated efforts to close at the time of the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 106:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 107:**

Please admit or deny the shoe track device failed to close until approximately four times the normal pressure was exerted.

**RESPONSE TO REQUEST FOR ADMISSION NO. 107:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 108:**

Please admit or deny the Deepwater Horizon had an automated alarm system.

**RESPONSE TO REQUEST FOR ADMISSION NO. 108:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 109:**

Please admit or deny the automated alarm system was designed to shut down all end sources in the event of a vapor cloud explosion.

**RESPONSE TO REQUEST FOR ADMISSION NO. 109:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 110:**

Please admit or deny on the Deepwater Horizon the automated alarm system was switched to manual mode.

**RESPONSE TO REQUEST FOR ADMISSION NO. 110:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 111:**

Please admit or deny switching the automated alarm system to manual mode overrode the automatic heat source shut down process.

**RESPONSE TO REQUEST FOR ADMISSION NO. 111:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 112:**

      Please admit or deny as a consequence of changing to automated mode, the generators on the Deepwater Horizon continued to run.

**RESPONSE TO REQUEST FOR ADMISSION NO. 112:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 113:**

      Please admit or deny you were made aware of additional safety advisories from Minerals Management Service, now known as the Bureau of Ocean Energy Management, prior to the incident recommending back up systems for blowout preventers.

**RESPONSE TO REQUEST FOR ADMISSION NO. 113:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 114:**

      Please admit or deny you were aware studies by the Minerals Management Service, now known as the Bureau of Ocean Energy Management, establishing blowout preventers could not shear larger sizes of pipes.

**RESPONSE TO REQUEST FOR ADMISSION NO. 114:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 115:**

      Please admit or deny blowout preventers utilized in this incident did not have an acoustic switch system as an additional safety device.

**RESPONSE TO REQUEST FOR ADMISSION NO. 115:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 116:**

Please admit or deny you were aware acoustic safety systems were mandated on blowout preventers in some other countries prior to this incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 116:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 117:**

Please admit or deny you were made lessees by Minerals Management Service, now known as the Bureau of Ocean Energy Management, in approximately 2001 of a safety alert recommending a back up system on offshore drilling blowout preventers.

**RESPONSE TO REQUEST FOR ADMISSION NO. 117:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 118:**

Please admit or deny you were aware of studies, performed several years prior, by Minerals Management Service, now known as the Bureau of Ocean Energy Management, indicating shear rams were unable to cut through drill pipe.

**RESPONSE TO REQUEST FOR ADMISSION NO. 118:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 119:**

Please admit or deny you were aware of studies of Minerals Management Service, now known as the Bureau of Ocean Energy Management, establishing the shears could not cut through the pipe joints or couplings.

**RESPONSE TO REQUEST FOR ADMISSION NO. 119:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 120:**

Please admit or deny you support lobbying efforts to avoid a Minerals Management Service, now known as the Bureau of Ocean Energy Management, mandate to acquire an acoustic system on blowout preventers.

**RESPONSE TO REQUEST FOR ADMISSION NO. 120:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 121:**

Please admit or deny you supported efforts to avoid the mandated use of acoustic switch systems on blowout preventers in order to avoid additional costs.

**RESPONSE TO REQUEST FOR ADMISSION NO. 121:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 122:**

Please admit or deny there is no government oversight in the design, manufacturing or installation of blowout preventers.

**RESPONSE TO REQUEST FOR ADMISSION NO. 122:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 123:**

Please admit or deny the blowout preventer was equipped with a dead man switch which was designed to automatically engage the shear rams.

**RESPONSE TO REQUEST FOR ADMISSION NO. 123:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 124:**

Please admit or deny at the time of the incident the shear ram failed to engage.

**RESPONSE TO REQUEST FOR ADMISSION NO. 124:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 125:**

Please admit or deny there were weaknesses in design, testing, quality assurance, and risk assessment regarding cement pumped down the production casing and up into the wellbore annulus to prevent hydrocarbons from entering the wellbore from the reservoir immediately prior to the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 125:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 126:**

Please admit or deny that you failed to run a cement bond log to evaluate the effectiveness of the cement job in the Macondo Well.

**RESPONSE TO REQUEST FOR ADMISSION NO. 126:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 127:**

Please admit or deny that you failed to circulate heavy drilling mud in the Macondo Well outside the casing before cementing it.

**RESPONSE TO REQUEST FOR ADMISSION NO. 127:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 128:**

Please admit or deny that you replaced heavy drilling mud in the Macondo Well with seawater immediately prior to April 20, 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 128:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 129:**

Please admit or deny that you failed to circulate potentially gas-bearing drilling muds out of the Macondo Well.

**RESPONSE TO REQUEST FOR ADMISSION NO. 129:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 130:**

Please admit or deny removing the heavy mud with light sea water before closing off the well was a deviation of normal industry practices.

**RESPONSE TO REQUEST FOR ADMISSION NO. 130:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 131:**

Please admit or deny your agents or  employees  ordered the heavy mud to be replaced with light sea water before closing the well on the Macondo Well.

**RESPONSE TO REQUEST FOR ADMISSION NO. 131:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 132:**

Please admit or deny your agents  and employees  made this decision for cost saving reasons.

**RESPONSE TO REQUEST FOR ADMISSION NO. 132:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 133:**

Please admit or deny other personnel aboard the Deepwater Horizon opposed this decision but were overruled by one or more of your agents or employees.

**RESPONSE TO REQUEST FOR ADMISSION NO. 133:**

       BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 134:**

       Please admit or deny this decision resulted in displacement of too much heavy mud resulting in gas and oil emanating back on the drilling platform.

**RESPONSE TO REQUEST FOR ADMISSION NO. 134:**

       BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 135:**

       Please admit or deny you did not have an emergency evacuation vessel stationed within close proximity to the Deepwater Horizon on or about April 20, 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 135:**

       BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 136:**

       Please admit or deny the Damon B. Bankston was near the Deepwater Horizon at the time of the incident in order to transport drilling mud.

**RESPONSE TO REQUEST FOR ADMISSION NO. 136:**

       BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 137:**

       Please admit or deny the Damon B. Bankston was not equipped as an emergency rescue vessel, nor was it hired to act as an emergency rescue vessel.

**RESPONSE TO REQUEST FOR ADMISSION NO. 137:**

       BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 138:**

Please admit or deny that more than a hundred rig workers were forced to stay about the Damon B. Bankston for more than 24 hours after the Deepwater Horizon exploded.

**RESPONSE TO REQUEST FOR ADMISSION NO. 138:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 139:**

Please admit or deny you made an intentional decision not to transport the rig workers to shore after the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 139:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 140:**

Please admit or deny you forced any of the rig workers to consent to drug testing before being transported to shore.

**RESPONSE TO REQUEST FOR ADMISSION NO. 140:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 141:**

Please admit or deny you utilized Corexit dispersant in the Deepwater Horizon Oil Spill when other non-toxic dispersants were available.

**RESPONSE TO REQUEST FOR ADMISSION NO. 141:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 142:**

Please admit or deny you had publicly acknowledged you would pay "all legitimate claims" related to the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 142:**

Subject to its general objections, BP p.l.c. responds as follows:  BP p.l.c. admits that BPXP consistently has stated that it will carry out its responsibility under the Oil Pollution Act of 1999 (OPA), and that it will pay all legitimate claims for damages recoverable under OPA in accordance with OPA.  However, by making this statement, BP p.l.c. and its affiliates are not admitting anything about their conduct and, indeed, specifically deny that they have breached a duty of care or engaged in any negligence or gross negligence in connection with the Incident or the oil spill.  Furthermore, BP p.l.c. reserves the right to seek reimbursement or contribution from other entities identified by the U.S. Coast Guard as "responsible parties" under OPA, as well as from third parties, for claims, costs, expenses, and liabilities arising out of the Incident or the oil spill.  BP p.l.c. denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 143:**

Please admit or deny you have yet to define "legitimate claim."

**RESPONSE TO REQUEST FOR ADMISSION NO. 143:**

BP p.l.c. objects to this request on the grounds that plaintiffs' use of the term "legitimate claim" is vague, ambiguous, undefined, and implies there a legal requirement or other mandate compelling BP p.l.c. to "define" what constitutes a legitimate claim.

Subject to its specific and general objections, BP p.l.c. responds as follows:  Denied. Whether or not a claim for damages is recoverable under the Oil Pollution Act of 1990 (OPA) is determined by the legal requirements of OPA, and such determinations depend upon the unique facts and circumstances of each claim.

**REQUEST FOR ADMISSION NO. 144:**

Please admit or deny you are a guarantor of the $20 billion for the Gulf Coast Claims Facility Trust Fund.

**RESPONSE TO REQUEST FOR ADMISSION NO. 144:**

Subject to its general objections, BP p.l.c. responds as follows:  Denied.  BP p.l.c. denies this request because it is unaware of any fund entitled "the Gulf Coast Claims Facility Trust Fund."  In addition, BPXP is the grantor of the Deepwater Horizon Oil Spill Trust, and that BPXP has agreed to contribute $20 billion to the Deepwater Horizon Oil Spill Trust in accordance with the terms of the trust agreement.  Pursuant to the terms of the trust agreement, BPXP has provided collateral to secure its obligations.  There are no guarantors of the Deepwater Oil Spill Trust.  The Deepwater Horizon Oil Spill Trust may be used to provide funds to satisfy resolved Damages Claims, which include claims resolved and settled by the Gulf Coast Claims Facility.

**REQUEST FOR ADMISSION NO. 145:**

Please admit or deny you do not presently have reserves to cover the Gulf Coast Claims Facility Trust Fund.

**RESPONSE TO REQUEST FOR ADMISSION NO. 145:**

Subject to its general objections, BP p.l.c. responds as follows: Denied.  BP p.l.c. refers plaintiffs to its response to Request for Admission No. 144.

**REQUEST FOR ADMISSION NO. 146:**

Please admit or deny it is presently unknown whether you will have the funds to cover the Gulf Coast Claims Facility Trust Fund.

**RESPONSE TO REQUEST FOR ADMISSION NO. 146:**

Subject to its general objections, BP p.l.c. responds as follows: Denied.  BP p.l.c. refers plaintiffs to its response to Request for Admission No. 144.

**REQUEST FOR ADMISSION NO. 147:**

Please admit or deny you will receive a tax credit on the $20 billion for the Gulf Coast Claims Facility Trust Fund.

**RESPONSE TO REQUEST FOR ADMISSION NO. 147:**

Subject to its general objections, BP p.l.c. responds as follows:  Denied.  BP p.l.c. refers plaintiffs to its response to Request for Admission No. 144.  BP p.l.c. believes that payments of alleged costs and damages pursuant to Section 1002 of the Oil Pollution Act by the Deepwater Horizon Oil Spill Trust or BP p.l.c. directly relate to the conduct of BP p.l.c.'s trade or business activities and, thus, are tax deductible under federal law, as well as under certain state and local tax laws.  Whether any particular expense must be capitalized and deducted over time is a fact-specific inquiry that BP p.l.c. will determine in accordance with applicable federal, state and local laws.  BP p.l.c. is not aware, at this time, of any tax credits that it may claim relating to BPXP's contribution to the Deepwater Horizon Oil Spill Trust or the payment of Damage Claims from the Deepwater Horizon Oil Spill Trust or by BP p.l.c. directly.

**REQUEST FOR ADMISSION NO. 148:**

Please admit or deny you will receive a dividend on the $20 billion for the Gulf Coast Claims Facility Trust Fund.

**RESPONSE TO REQUEST FOR ADMISSION NO. 148:**

BP p.l.c. specifically objects on the grounds that this request is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

Subject to its specific and general objections, BP p.l.c. responds as follows: Denied.  BP p.l.c. states that it is unaware of any fund entitled "the Gulf Coast Claims Facility Trust Fund." BP p.l.c. further states that BPXP is the grantor of the Deepwater Horizon Oil Spill Trust, and BPXP has agreed to contribute $20 billion to the Deepwater Horizon Oil Spill Trust in accordance with the terms of the trust agreement.  BP p.l.c. further state that neither BP America Inc. nor any other entity will receive a dividend in connection with the Deepwater Horizon Oil Spill Trust.

**REQUEST FOR ADMISSION NO. 149:**

Please admit or deny BP officials have asserted the Fifth Amendment protection against self incrimination in lieu of testifying before any Congressional hearing.

**RESPONSE TO REQUEST FOR ADMISSION NO. 149:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 150:**

Please admit or deny you are not going to claim a credit or offset in the Vessels of Opportunity program for work performed against any other claim made against you for any harm or damage suffered from the casualty or ensuing oil spill.

**RESPONSE TO REQUEST FOR ADMISSION NO. 150:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 151:**

Please admit or deny you will not admit to claim a credit or offset of any damages asserted against you by any claimant from any monies paid to you by any services rendered in the oil containment program.

**RESPONSE TO REQUEST FOR ADMISSION NO. 151:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 152:**

Please admit or deny you will not file bankruptcy in an effort to avoid, stall, or mitigate any of your liabilities resulting from the casualty or oil spill.

**RESPONSE TO REQUEST FOR ADMISSION NO. 152:**

BP p.l.c. objects to this request on the grounds that it seeks information not relevant to the claims or defenses of any party.

**REQUEST FOR ADMISSION NO. 153:**

Please admit or deny the amount of oil released from the oil spill is unknown.

**RESPONSE TO REQUEST FOR ADMISSION NO. 153:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 154:**

Please admit or deny the amount of oil remaining in the Gulf of Mexico, released by the oil spill, is unknown.

**RESPONSE TO REQUEST FOR ADMISSION NO. 154:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 155:**

Please admit or deny the oil slick from the oil spill has migrated hundreds of miles.

**RESPONSE TO REQUEST FOR ADMISSION NO. 155:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 156:**

Please admit or deny the oil spill from the Macondo Well has reached the shores of the State of Texas.

**RESPONSE TO REQUEST FOR ADMISSION NO. 156:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 157:**

      Please admit or deny the oil spill from the Macondo Well has reached the shores of the State of Louisiana.

**RESPONSE TO REQUEST FOR ADMISSION NO. 157:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 158:**

      Please admit or deny the oil spill from the Macondo Well has reached the shores of the State of Alabama.

**RESPONSE TO REQUEST FOR ADMISSION NO. 158:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 159:**

      Please admit or deny the oil spill from the Macondo Well has reached the shores of the State of Mississippi.

**RESPONSE TO REQUEST FOR ADMISSION NO. 159:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 160:**

      Please admit or deny the oil spill from the Macondo Well has reached the shores of the State of Florida.

**RESPONSE TO REQUEST FOR ADMISSION NO. 160:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 161:**

Please admit or deny the effects of oil with dispersants upon larva shrimp are unknown.

**RESPONSE TO REQUEST FOR ADMISSION NO. 161:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 162:**

Please admit or deny the long term impact of the oil spill on the commercial fisheries is presently unknown.

**RESPONSE TO REQUEST FOR ADMISSION NO. 162:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 163:**

Please admit or deny tourism on many Gulf Coast destinations will be impacted for many years as a result of the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 163:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 164:**

Please admit or deny individuals who lived along the Gulf Coast were exposed to Corexit in a manner in which they have suffered physical harm.

**RESPONSE TO REQUEST FOR ADMISSION NO. 164:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 165:**

Please admit or deny the incident resulted from a failure of your risk management policies.

**RESPONSE TO REQUEST FOR ADMISSION NO. 165:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 166:**

      Please admit or deny the oil spill that resulted from the incident represents a failure of your risk management policies.

**RESPONSE TO REQUEST FOR ADMISSION NO. 166:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 167:**

      Please admit or deny the incident was proximately caused by your gross negligence.

**RESPONSE TO REQUEST FOR ADMISSION NO. 167:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 168:**

      Please admit or deny the incident was proximately caused by your willful misconduct.

**RESPONSE TO REQUEST FOR ADMISSION NO. 168:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 169:**

      Please admit or deny the negligence of your company was a proximate cause of the injuries and loss of life of the rig workers of the Deepwater Horizon on April 20, 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 169:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 170:**

Please admit or deny the incident was proximately caused by a violation of an applicable federal safety, construction or operation regulation.

**RESPONSE TO REQUEST FOR ADMISSION NO. 170:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 171:**

Please admit or deny you are liable for damages arising from the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 171:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 172:**

Please admit or deny you or your company is responsible for the injuries that occurred to persons aboard the Deepwater Horizon at the time of the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 172:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 173:**

Please admit or deny you are or your company is responsible for the fatalities that occurred as a result of the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 173:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 174:**

Please admit or deny you are a responsible party under the Oil Pollution Act for the damages from the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 174:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 175:**

     Please admit or deny you will not assert any caps of liability under the Oil Pollution Act.

**RESPONSE TO REQUEST FOR ADMISSION NO. 175:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 176:**

     Please admit or deny you are liable under the Florida Oil Spill Statute.

**RESPONSE TO REQUEST FOR ADMISSION NO. 176:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 177:**

     Please admit or deny the Florida Oil Spill Statute mandates a responsible party reimburse all transactional costs, including accounting expenses and attorneys fees.

**RESPONSE TO REQUEST FOR ADMISSION NO. 177:**

     BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 178:**

     Please admit or deny your 10-Q report to the Securities and Exchange Commission effective June 30, 2010 provided a full and fair statement of the facts of the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 178:**

     BP p.l.c. objects to this request on the grounds that BP p.l.c. did not file a report on Form 10-Q with the Securities and Exchange Commission effective June 30, 2010, and that plaintiffs' use of the term "full and fair statement of the facts of the Incident" is vague and ambiguous,

particularly when used in the context of a regulatory filing subject to specific requirements as to the information to be included therein.

Subject to their specific and general objections, BP p.l.c. responds as follows:  BP p.l.c. states that its filing with the Securities and Exchange Commission on Form 6-K for the period ending June 30, 2010 contained all information regarding the Incident required to be disclosed therein under the federal securities laws at the time of filing.  BP p.l.c. denies the remainder of the request, as it incorrectly implies that BP p.l.c. was required to disclose additional facts related to the Incident in filings with the Securities & Exchange Commission.


**REQUEST FOR ADMISSION NO. 179:**

Please admit or deny your 10-Q report to the Securities and Exchange Commission effective June 30, 2010 provided a full and fair statement of the facts of your response to the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 179:**

BP p.l.c. objects to this request on the grounds that BP p.l.c. did not file a report on Form 10-Q with the Securities and Exchange Commission effective June 30, 2010, and that plaintiffs' use of the term "full and fair statement of the facts of your response to the Incident" is vague and ambiguous, particularly when used in the context of a regulatory filing subject to specific requirements as to the information to be included therein.

Subject to their specific and general objections, BP p.l.c. responds as follows:  BP p.l.c. states that its filing with the Securities and Exchange Commission on Form 6-K for the period ending June 30, 2010 contained all information regarding the Incident required to be disclosed therein under the federal securities laws at the time of filing.  BP p.l.c. denies the remainder of the request, as it incorrectly implies that BP p.l.c. was required to disclose additional facts related to the Incident in filings with the Securities & Exchange Commission.

**REQUEST FOR ADMISSION NO. 180:**

Please admit or deny your 10-Q report to the Securities and Exchange Commission effective June 30, 2010 provided a full and fair statement of your potential liabilities for the incident.

**RESPONSE TO REQUEST FOR ADMISSION NO. 180:**

BP p.l.c. objects to this request on the grounds that BP p.l.c. did not file a report on Form 10-Q with the Securities and Exchange Commission effective June 30, 2010, and that plaintiffs' use of the term "full and fair statement of your potential liabilities for the Incident" is vague and ambiguous, particularly when used in the context of a regulatory filing subject to specific requirements as to the information to be included therein.

Subject to their specific and general objections, BP p.l.c. responds as follows:  BP p.l.c. states that its filing with the Securities and Exchange Commission on Form 6-K for the period ending June 30, 2010 contained all information regarding the Incident required to be disclosed therein under the federal securities laws at the time of filing.  BP p.l.c. denies the remainder of the request, as it incorrectly implies that BP p.l.c. was required to disclose additional facts related to the Incident in filings with the Securities & Exchange Commission.


**REQUEST FOR ADMISSION NO. 181:**

Please admit or deny in August of 2001, a worker was killed at the BP Texas City refinery.

**RESPONSE TO REQUEST FOR ADMISSION NO. 181:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 182:**

Please admit or deny in March of 2004, an explosion occurred at the UU4 unit at the BP Texas City refinery.

**RESPONSE TO REQUEST FOR ADMISSION NO. 182:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 183:**

      Please admit or deny in May of 2004, a worker fell to his death inside a tank at the BP Texas City refinery.

**RESPONSE TO REQUEST FOR ADMISSION NO. 183:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 184:**

      Please admit or deny in September of 2004, two workers were killed and a third severely injured during a steam release at the BP Texas City refinery.

**RESPONSE TO REQUEST FOR ADMISSION NO. 184:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 185:**

      Please admit or deny on March 23, 2005, 15 people were killed in an explosion at the BP Texas City refinery.

**RESPONSE TO REQUEST FOR ADMISSION NO. 185:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 186:**

      Please admit or deny in May of 2005, a worker died at the BP Cherry Point refinery.

**RESPONSE TO REQUEST FOR ADMISSION NO. 186:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 187:**

Please admit or deny in July of 2005, there was an explosion and fire at the BP Texas City refinery.

**RESPONSE TO REQUEST FOR ADMISSION NO. 187:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 188:**

Please admit or deny in March of 2006, you were the operator of the corroded pipeline in Prudhoe Bay, Alaska, which ruptured and spilled oil.

**RESPONSE TO REQUEST FOR ADMISSION NO. 188:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 189:**

Please admit or deny in July of 2006, a worker died at the BP Texas City refinery.

**RESPONSE TO REQUEST FOR ADMISSION NO. 189:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 190:**

Please admit or deny in March of 2007, the United States Chemical Safety and Hazard Board concluded that the Texas City refinery disaster was caused by organization and safety deficiencies at all levels of your corporation.

**RESPONSE TO REQUEST FOR ADMISSION NO. 190:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 191:**

Please admit or deny in April of 2007, there was a chemical release at the BP Texas City refinery.

126

**RESPONSE TO REQUEST FOR ADMISSION NO. 191:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 192:**

      Please admit or deny in June of 2007, a worker died by electrocution at the BP Texas City refinery.

**RESPONSE TO REQUEST FOR ADMISSION NO. 192:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 193:**

      Please admit or deny in August of 2007, a diver was killed at the BP Cherry Point refinery.

**RESPONSE TO REQUEST FOR ADMISSION NO. 193:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 194:**

      Please admit or deny in January of 2008, your employee died at the BP Texas City refinery.

**RESPONSE TO REQUEST FOR ADMISSION NO. 194:**

      BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 195:**

      Please admit or deny the British Health and Safety Executive has cited you for safety violations in your offshore drilling programs more than forty (40) times in the previous ten years.

**RESPONSE TO REQUEST FOR ADMISSION NO. 195:**

      Subject to its general objections, BP p.l.c. responds as follows:  Denied.  BP p.l.c. denies this request because the Health & Safety Executive has not cited any company or companies

127

within the BP Group for safety violations in offshore drilling programs more than forty times in the previous ten years.

**REQUEST FOR ADMISSION NO. 196:**

Please admit or deny in January of 2001, you paid $10,000,000 to resolve allegations you violated the Clean Air Act at eight (8) of your refineries.

**RESPONSE TO REQUEST FOR ADMISSION NO. 196:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 197:**

Please admit or deny in January of 2001, the Minerals Management Service fined you $20,000 for a safety violation.

**RESPONSE TO REQUEST FOR ADMISSION NO. 197:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 198:**

Please admit or deny in February of 2001, the Minerals Management Service fined you $20,000 for workplace violations resulting in serious injury to an employee.

**RESPONSE TO REQUEST FOR ADMISSION NO. 198:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 199:**

Please admit or deny in September of 2001, the Occupational Safety and Health Administration fined you $141,000 after an explosion killed three workers at the BP Clanton Road facility.

**RESPONSE TO REQUEST FOR ADMISSION NO. 199:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 200:**

Please admit or deny in May of 2002, the Minerals Management Service fined you $23,000 for a workplace safety violation that resulted in a worker having his hand injured from an electrical shock.

**RESPONSE TO REQUEST FOR ADMISSION NO. 200:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 201:**

Please admit or deny in May of 2002, the Alaska Department of Environemntal Conservation required you to pay a $150,000 fine for pipeline leaks.

**RESPONSE TO REQUEST FOR ADMISSION NO. 201:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 202:**

Please admit or deny in September of 2002, the Minerals Management Service fined you $39,000 for missing 13 monthly tests of an oil low level sensor.

**RESPONSE TO REQUEST FOR ADMISSION NO. 202:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 203:**

Please admit or deny in January of 2003, you were fined $70,000 by the Minerals Management Service for a faulty fire water system.

**RESPONSE TO REQUEST FOR ADMISSION NO. 203:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 204:**

Please admit or deny in January of 2003, you were fined $80,000 by the Minerals Management Service for bypassing pressure safety relays.

**RESPONSE TO REQUEST FOR ADMISSION NO. 204:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 205:**

Please admit or deny in July of 2003, the Minerals Management Service fined you $20,000 because a subsurface safety valve was blocked out of service.

**RESPONSE TO REQUEST FOR ADMISSION NO. 205:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 206:**

Please admit or deny in February of 2004, the Minerals Management Service fined you $25,000 because you had bypassed the oil rigs gas detection systems.

**RESPONSE TO REQUEST FOR ADMISSION NO. 206:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 207:**

Please admit or deny in July of 2004, the Minerals Management Service fined you $190,000 for safety violations that resulted in a fire.

**RESPONSE TO REQUEST FOR ADMISSION NO. 207:**

BP p.l.c. asserts its general objections.


**REQUEST FOR ADMISSION NO. 208:**

Please admit or deny in September of 2005, the Occupational Safety and Health Administration cited you for 296 egregious willful violations associated with the March 23, 2005 explosion at the BP Texas City refinery and fined you $21,000,000 dollars.

**RESPONSE TO REQUEST FOR ADMISSION NO. 208:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 209:**

Please admit or deny in February of 2006, the Texas Commission on Environmental Quality fined you $130,625 for unlawful releases of harmful pollutants at the BP Texas City refinery.

**RESPONSE TO REQUEST FOR ADMISSION NO. 209:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 210:**

Please admit or deny in April of 2006, the Occupational Safety and Health Administration fined you $2,400,000 for safety violations at the BP Toledo, Ohio Refinery.

**RESPONSE TO REQUEST FOR ADMISSION NO. 210:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 211:**

Please admit or deny in October of 2006, the Minerals Management Service fined you $25,000 because operations were not performed in a safe and workmanlike manner.

**RESPONSE TO REQUEST FOR ADMISSION NO. 211:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 212:**

Please admit or deny in October of 2007, you agreed to pay a $50,000,000 fine for the Texas City refinery explosion.

**RESPONSE TO REQUEST FOR ADMISSION NO. 212:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 213:**

Please admit or deny in October of 2007, the Minerals Management Service fined you $41,000 for various safety violations.

131

**RESPONSE TO REQUEST FOR ADMISSION NO. 213:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 214:**

      Please admit or deny in October of 2007, you paid a $20,000,000 fine related to two separate oil spills that occurred in the North Slope in March and August of 2006.

**RESPONSE TO REQUEST FOR ADMISSION NO. 214:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 215:**

      Please admit or deny in October of 2009, the Occupational Safety and Health Administration fined you an additional $87,000,000 dollars for the failure to abate the violations from the March 23, 2005 explosion.

**RESPONSE TO REQUEST FOR ADMISSION NO. 215:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 216:**

      Please admit or deny in December of 2009, a Texas jury returned a $100,000,000 award against BP on behalf of workers injured in a 2007 chemical release at the BP Texas City refinery.

**RESPONSE TO REQUEST FOR ADMISSION NO. 216:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 217:**

      Please admit or deny in April of 2010, the Occupational Safety and Health Administration fined you $2,000,000 for willful safety violations at the BP Toledo, Ohio refinery.

**RESPONSE TO REQUEST FOR ADMISSION NO. 217:**

      BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 218:**

Please admit or deny you admitted felony violations of the Clean Air Act relating to the March 23, 2005 explosion at the BP Texas City refinery.

**RESPONSE TO REQUEST FOR ADMISSION NO. 218:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 219:**

Please admit or deny in October of 2007, you pled guilty to a felony violation of the Clean Air Act and agreed to serve three years of probation for the Texas City refinery explosion.

**RESPONSE TO REQUEST FOR ADMISSION NO. 219:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 220:**

Please admit or deny in October of 2007, you pled guilty to a criminal violation of the Clean Water Act related to two separate oil spills that occurred in the North Slope in March and August of 2006.

**RESPONSE TO REQUEST FOR ADMISSION NO. 220:**

BP p.l.c. asserts its general objections.

**REQUEST FOR ADMISSION NO. 221:**

Please admit or deny in April of 2009, a whistleblower filed a lawsuit against you for breaking federal laws and violating your own internal procedures by failing to maintain crucial safety and engineering documents related to the Atlantis Deepwater Drilling Rig.

**RESPONSE TO REQUEST FOR ADMISSION NO. 221:**

Subject to its general objections, BP p.l.c. responds as follows: BP p.l.c. admits that a

plaintiff filed a lawsuit in April 2009 against BP Exploration & Production Inc., BP America

Inc., and BP p.l.c., alleging violation of federal law in connection with the Atlantis platform. BP p.l.c. denies the remainder of this request.

## GENERAL OBJECTIONS

BP p.l.c. asserts the following objections to each and every one of plaintiffs' interrogatories, requests for production, and requests for admission, including any definitions or instructions associated therewith (collectively, "Plaintiffs' Discovery Requests"). These general objections are incorporated by reference into each specific response set forth by BP p.l.c. and are neither waived nor limited by any specific responses.

1.      Defendant BP p.l.c. objects to all of plaintiffs' requests. BP p.l.c. is a corporation organized under the laws of England and Wales, which is publicly traded with its headquarters in London, England. BP p.l.c. did not own the MC 252 leasehold, had no employees on the Deepwater Horizon, and was not a party to the drilling rig contract with Transocean. BP p.l.c. does not directly conduct exploration and production activities and was not directly involved in the events involving the Macondo Well or the incident. Accordingly, to the best of its knowledge, with regard to almost all of Plaintiffs' Discovery Requests, BP p.l.c. does not have any meaningful set of information or documents responsive to plaintiffs' requests not derivative and duplicative of that of BPA, BPAP, and/or BPXP, and BP p.l.c. directs plaintiffs to the responses provided by those defendants. Notwithstanding this objection and as reflected above, BP p.l.c. has provided responses and objections to certain requests that arguably seek information of BP p.l.c. as distinct from BPA, BPAP, and BPXP. These requests are Interrogatory No. 37, Requests for Production Nos. 70, 71, 72, 170, 217, and 222, and Requests for Admission Nos. 6, 7, 8, 26, 27, 28, 29, 30, 31, 33, 34, 35, 142, 143, 144, 145, 146, 147, 148, 152, 178, 179, 180, 195, and 221. These responses provide no additional information not also

being provided by BPA, BPAP, and BPXP, and they are not to be construed as an admission that any discovery directed to BP p.l.c. is necessary or appropriate.   To the extent that any other responses or objections herein refer to the production of information or documents by BP p.l.c. or imply that BP p.l.c. will produce information or documents, those statements are made only to preserve BP p.l.c.'s position as to the relevant requests in the event it is required to produce information or documents, notwithstanding this objection.

2.      BP p.l.c. objects to Plaintiffs' Discovery Requests to the extent they call for information, seek discovery, or attempt to impose any obligations beyond that permitted or authorized by the Federal Rules of Civil Procedure or the Rules and Orders of this Court.

3.      BP p.l.c. objects to Plaintiffs' Discovery Requests to the extent they call for the production of ESI in any manner other than required under Federal Rule of Civil Procedure 34, the Rules and Orders of the Court, and ongoing negotiations and discussions among counsel.

4.      BP p.l.c. objects to Plaintiffs' Discovery Requests to the extent they seek information or documents protected by the attorney-client privilege, the work-product doctrine, the joint defense or common interest privilege, or any other applicable privilege, exemption, or immunity.  BP p.l.c. will identify specific documents withheld on these grounds in accordance with the schedule set forth in, and provide the information required by, the Court's Pretrial Order #14, and such further Orders of the Court and ongoing negotiations and discussions among counsel.  BP p.l.c. incorporates its forthcoming privilege logs and all related information into this general objection to the extent necessary to preserve against any waiver of any applicable privilege or immunity from discovery.

5.      The BP Parties object to Plaintiffs' Discovery Requests to the extent they seek information or documents relating to the settlement or potential settlement of disputes on the

grounds that such information is not relevant to any party's claim or defense, is not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence, is protected from disclosure and dissemination under Federal Rule of Evidence 408, and that discovery of such information would be prejudicial to the efforts of the parties to resolve their disputes in a fair and efficient manner.

6.      BP p.l.c. objects to Plaintiffs' Discovery Requests to the extent they call for information or documents not within the BP p.l.c.'s possession, custody, or control.   All responses are made on behalf of BP p.l.c. only, are limited to information and documents within BP p.l.c.'s possession, custody, or control.

7.      BP p.l.c. objects to Plaintiffs' Discovery Requests to the extent they are unduly burdensome, duplicative, premature, oppressive, and/or overly broad, including, without limitation, as to subject matter and/or time period, and where compliance with specific requests would be unreasonably difficult as well as prohibitively expensive or time-consuming.

8.      BP p.l.c. objects to Plaintiffs' Discovery Requests to the extent they are not limited to information or documents relevant to any party's claim or defense, or to the extent they seek discovery of information or documents not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence, including, but not limited to, requests seeking information or documents concerning other incidents, accidents, or other events at BP facilities or locations other than the Macondo Well or that are otherwise unrelated to the *Deepwater Horizon*.

9.      BP p.l.c. objects to Plaintiffs' Discovery Requests to the extent they seek the disclosure of information or documents that contain or constitute trade secrets, proprietary

information, or other confidential business information without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

10.     BP p.l.c. objects to Plaintiffs' Discovery Requests to the extent they seek the disclosure of information or documents that would violate the rights of privacy of third parties, or any similar judicially recognized protection or privilege, including, but not limited to, restrictions imposed in connection with proceedings before the MBI, and the protections of the Health Insurance Portability and Accountability Act ("HIPAA"), or that would result in disclosure of any confidential information or conduct without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

11.     BP p.l.c. objects to the requests to the extent they seek documents already in the possession of plaintiffs or equally available to plaintiffs from sources other than BP p.l.c., including publicly available sources.

12.     BP p.l.c. objects to plaintiffs' "Definitions" to the extent they seek to impose any meaning or interpretation onto the requests other than that evident from the plain and ordinary meaning of the words used therein.  BP p.l.c. further objects to, and will read and respond to, plaintiffs' "Definitions" (labeled to correspond to plaintiffs' list) as follows:

(i)     Plaintiffs' definition of "Deepwater Horizon" is vague and overbroad; it includes any equipment used in connection with the exploration for or production of oil.  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "Deepwater Horizon" means the vessel of that name and that, unless expressly otherwise specified, concerns the operation of the *Deepwater Horizon* in connection with the Macondo Well.

(j)     Plaintiffs' definition of "Macondo Well" is vague and overbroad; it includes a broad geographic area and is not limited to any well, much less the well at issue in this litigation.  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "Macondo Well" means the MC 252 #1 Macondo Well.

(k)     Plaintiffs' definition of "incident" is overly narrow; it is limited to the explosion that occurred on the *Deepwater Horizon*.  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "Incident" means the loss of control of the Macondo Well and the explosions and fire aboard, and resulting sinking of, the *Deepwater Horizon*.

(l)     Plaintiffs' definition of "oil spill" is vague and overbroad; it includes any release of hydrocarbons over a large geographic area, without regard to whether such releases had anything to do with the Incident.  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "oil spill" means the oil released from the Macondo Well as a result of the Incident.

(m)     Plaintiffs' definitions of "BOP" and "blowout preventer" is vague and overbroad; they include any equipment used to control any well.  In addition, it confusingly and inaccurately implies that BP p.l.c. "created" blowout preventers.  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the terms "BOP" and "blowout preventer" means a blowout preventer like the one in use at the Macondo Well at the time of the incident.

(n)     Plaintiffs' definition of "Deepwater Horizon Blowout Preventer" confusingly and inaccurately implies that BP p.l.c. "created" the blowout preventer used on the *Deepwater Horizon*.   BP p.l.c. will read and respond to plaintiffs' requests with the

138

understanding that the term "Deepwater Horizon Blowout Preventer" means the blowout preventer in use on the Macondo Well at the time of the incident.

(o)     Plaintiffs' definition of "clean up" is vague and overbroad; it includes any clean up efforts from any release of hydrocarbons over a large geographic area, without regard to whether such releases had anything to do with the Incident.  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "clean up" means any efforts to clean up the oil spill.

(p)     Plaintiffs' definition of "relevant time period" is overbroad; it covers close to 14 years, and would convert many of plaintiffs' individual requests into nonsensical inquiries into historical events with no conceivable relevance to this litigation or any respect for the practicalities of resolving it.  In addition, by extending the definition to "the current date," many of plaintiffs' requests, which by their context clearly seek information from the time prior to and including the incident, confusingly seek unrelated information generated after the incident and ignores that it is impossible for BP p.l.c. to provide meaningful responses without some cut-off date to allow for locating and processing information in order to provide it to plaintiffs.  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "relevant time period" means January 1, 2009 through April 20, 2010, unless:  (i) the request clearly seeks specific, available, relevant information that pre-dates January 1, 2009 (*e.g.*, rig audits of the *Deepwater Horizon*); and (ii) the request clearly seeks relevant information or documents that post-date the incident, in which case and to which extent, the time period is, or includes as the context requires, April 20, 2010 through 30 days prior to the date in which any response to any request is made.  In addition, when used in reference to the operation of the *Deepwater Horizon*, the *Transocean Marianas*, the blowout preventer, or any other equipment that was used in

connection with work that did not involve the Macondo Well, BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "relevant time period" means the period of time during which the rig or equipment referred to was used at the site of the Macondo Well, prior to and including April 20, 2010 as stated above.  Unless otherwise specified, all requested and responses are deemed to be limited to the relevant time period as defined above by BP p.l.c.

(q)     Plaintiffs' definitions of "you," "your," and "BP" are extremely vague and overbroad; they include a vast array of entities that have had no involvement whatsoever in the events giving rise to this litigation, and confusingly and improperly sweep in hundreds of thousands of individuals as opposed to the corporate entities that have been named as defendants in this litigation.  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the terms you," "your," and "BP" means BP p.l.c.

(r, s, t, u, v, w, x)     Plaintiffs' definitions of "Anadarko," "Cameron," "Halliburton," "M-I SWACO," "MOEX," "Transocean," and "Weatherford" are similarly vague, overbroad, and confusing.  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that these terms refer to the respective corporate entities commonly referred to by these names that have been named in this litigation and played some role in the events relevant to this litigation.

(y)     Plaintiffs' definition of "person" is vague and overbroad; it includes any number of things that are not people in any sense of the word.  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "person" means a person.

(z)     Plaintiffs' definition of "employee" is vague and overbroad; it includes any number of persons who were or are not employees.  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "employee" means an employee.

(aa)     Plaintiffs' definition of "Investigation Team" is unobjectionable.

(bb)     Plaintiffs' definition of "government" is vague and overbroad; it includes a bewildering array of entities as well as any number of people who are "the government."  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "government" means the U.S. federal government or the government of a U.S. state, including any branch or agency thereof.

(cc)     Plaintiffs' definition of "communication" is vague and overbroad; it includes practically everything written or said by any person, regardless of whether it was actually communicated in any meaningful sense.  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "communication" means talking to someone or sending them a message of some sort.

(dd)     Plaintiffs' definition of "statement" is vague and overbroad; it may or may not include any speech or writing depending on what is meant by "adopted and approved."  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "statement" means a recorded statement authenticated by its maker or the circumstances of its recording.

(ee)     Plaintiffs' definition of "meeting" is vague and overbroad; it includes any number of things that no person would reasonably conclude constitute a meeting, such as a casual greeting exchanged in a hallway, sending an e-mail, or posting a message on a bulletin board.  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "meeting" refers to a gathering of two or more people.   It does not include electronic communications unless specified.

(ff)    Plaintiffs' definition of "document" is improper to the extent it includes items outside the scope of Federal Rule of Civil Procedures 34(a)(1)(A).  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "document" means the items listed in Federal Rule of Civil Procedure 34(a)(1)(A).

(gg)    Plaintiffs' definition of "electronically stored information" or "ESI" is improper to the extent it includes items outside the scope of Federal Rule of Civil Procedures 34(a)(1)(A).  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "electronically stored information" or "ESI" means the electronically stored information listed in Federal Rule of Civil Procedure 34(a)(1)(A).

(hh)    Plaintiffs' definition of "computer" is vague and overbroad; it includes every device that processes or stores information, including any number of things that no person would reasonably conclude constitute a computer, such as a clock, voice recorder, camera, or cell phone.  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "computer" means a mainframe, desktop, laptop, or tablet computer.

(ii)    Plaintiffs' definition of "privilege log" is improper to the extent it seeks to impose any obligation on BP p.l.c. beyond that specified in the Court's Pretrial Order #14.  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "privilege log" means the privilege log referred to in the Court's Pretrial Order #14.

(jj)    Plaintiffs' definition of "control" is improper to the extent it seeks to impose any obligation on BP p.l.c. beyond that imposed under Federal Rule of Civil Procedure 34(a)(1).  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "control" means "possession, custody, or control" as used in Federal Rule of Civil Procedure 34(a)(1).

(kk)   Plaintiffs' definitions of "relating," "referring," regarding," "concerning," "computer," and "with respect to," is vague and overbroad; they render these and innumerable other words void of any independent meaning.  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that these terms have their plain and ordinary meaning in standard English usage.

(ll, mm, nn)   Plaintiffs' definition of "identify" is overbroad; it includes a request for detailed information far beyond whatever may be reasonably necessary to distinguish one individual, one document, or any ESI, from any other.  It is also improper in that it would inject an additional six (for persons) or eight (for documents) or three for (ESI) interrogatories into each identified person or document in any interrogatory response, thereby exceeding the limitations imposed upon discovery under the Federal Rules of Civil Procedure and the Court's Pretrial Order #11 dated October 19, 2010, which limits plaintiffs to propounding 50 interrogatories to any defendant.  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "identify" means, in the context of an individual, an individual's name, and where the context reasonably requires, his or her employer and title, and in the context of a document or ESI, a Bates number or other available information necessary to isolate the document or ESI.

(oo)   Plaintiffs' definitions of "and" and "or" is vague, overbroad, and confusing; they render the words equivalent and therefore deprive them of independent meaning and inconsistent with standard English usage.  BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "and" means and, and the term "or" means or.

(pp)   Plaintiffs' definition of "any" is vague, overbroad, and confusing; it renders the word unnecessarily ambiguous and necessarily converts many of plaintiffs' requests

into nonsensical requests for duplicative information.   BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "any" means any.

(qq)    Plaintiffs' definition of "including" is unobjectionable.

(rr)    Plaintiffs' definitions of "each" and "every" is vague, overbroad, and confusing; they render the words equivalent and therefore deprive them of independent meaning and inconsistent with standard English usage.   BP p.l.c. will read and respond to plaintiffs' requests with the understanding that the term "each" means each and the term "every" means every.

(ss)    Plaintiffs' instruction to treat all nouns and pronouns as plural nouns and pronouns is vague, overbroad, and confusing; it renders many of plaintiffs' requests unnecessarily nonsensical, contorted, and duplicative.   BP p.l.c. will read and respond to plaintiffs' requests as written, not as imagined to give the "broadest possible application."

(tt)    Plaintiffs' instruction to treat all verbs as possessing all possible tenses is vague, overbroad, and confusing; it renders many of plaintiffs' requests unnecessarily nonsensical, contorted, and duplicative.   BP p.l.c. will read and respond to plaintiffs' requests as written, not as imagined to give the "broadest possible application."

(uu)    Plaintiffs' instruction to treat all terms of a specific gender as referring to all genders is vague, overbroad, and confusing; it renders many of plaintiffs' requests unnecessarily nonsensical, contorted, and duplicative.   BP p.l.c. will read and respond to plaintiffs' requests as written, not as imagined to give the "broadest possible application."

(vv)    Plaintiffs' instruction to treat all terms as if they encompass all grammatical variations of the term is vague, overbroad, and confusing; it renders many of plaintiffs' requests unnecessarily nonsensical, contorted, and duplicative.   BP p.l.c. will read and

144

respond to plaintiffs' requests as written, not as imagined under instructions to set aside standard English usage.

13.     These responses are made without waiving, in any manner, BP p.l.c.'s right to object to the use of any information or documents provided in response to these requests at any trial or evidentiary hearing on grounds of privilege, relevance, materiality, authenticity, hearsay, or any other ground permitted by any applicable law or rule.

14.     To the extent BP p.l.c. states it will produce documents in response to the requests, BP p.l.c. will produce such documents on a rolling basis with such reasonable speed as BP p.l.c. can locate and process them, without sacrificing a meaningful review for responsiveness, privilege, and confidentiality, as this is the only feasible and physically possible method given the scope and breadth of the requests.

15.     To the extent that BP p.l.c. responds that it will search for and produce responsive documents, BP p.l.c. is only undertaking to make a good faith effort to conduct a reasonable search of non-privileged documents of the files and records of those individuals likely to have meaningful information responsive to a requests as maintained in the ordinary course of business, and/or to apply a reasonable set of search terms to similar available collections of ESI as maintained in the ordinary course of business reasonably likely to yield a meaningful amount of information responsive to a request.  BP p.l.c. is not offering or promising to search for and produce every document or piece of information that may exist in the possession, custody, or control of any of its tens of thousands of employees and agents where any such items are not included within the results of a reasonable search as described above.

16.     BP p.l.c. objects to plaintiffs' interrogatories on the grounds that they exceed the limitations imposed upon discovery under the Federal Rules of Civil Procedure and the Court's

Pretrial Order #11 dated October 19, 2010, which limits plaintiffs to propounding 50 interrogatories to any defendant.  Plaintiffs have served BP p.l.c. with 43 separately enumerated requests, several of which (including, but not limited to, Interrogatory Nos. 2, 3, 4, 8, 11, 16, 18, and 27)  actually contain more than one request.

17.     BP p.l.c. objects to plaintiffs' Requests for Admission as improper in form in that Federal Rule of Civil Procedure 36 provides only for the service of requests "to admit . . . the truth of [a] matter," but all of plaintiffs' request ask BP p.l.c. to "admit or deny" some statement. This implies, improperly, that a denial has the effect of establishing the opposite of the assertion, when, in fact, a denial does not establish anything.  A denial of a request for admission simply means that BP p.l.c. denies that the assertion is true.  It does not establish any fact.  None of BP p.l.c.'s denials should be construed as admissions of any express or implied assertions by plaintiffs.

18.     BP p.l.c.'s decision, now or in the future, to provide information or documents notwithstanding the objectionable nature of any of the definitions or instructions, or the interrogatories or document requests themselves, should not be construed as:  (a) a stipulation that the material is relevant or admissible, (b) a waiver of BP p.l.c.'s general objections or the objections asserted in response to specific requests, or (c) an agreement that requests for similar information will be treated in a similar manner.

19.     BP p.l.c. reserves the right to modify, amend, or supplement its responses, which are made based on the current status of its knowledge, understanding, belief, and searches for documents.  The investigation of facts and information relating to these requests is continuing, and, therefore, these responses are not intended as an admission or a representation that additional information or documents do not exist.

146

## **VERIFICATION**

I, David Jackson, an officer of BP p.l.c., having undertaken a reasonable inquiry under the circumstances into the process by which the foregoing responses to interrogatories were compiled, hereby certify, under penalty of perjury, that, to the best of my knowledge, information, and belief, the foregoing responses to interrogatories accurately reflect the information available to BP p.l.c. as specified therein.

147

**KINGDOM OF ENGLAND** )
**CITY OF LONDON** ) SS

**BE IT KNOWN** that on this 7th day of December 2010 before me, the undersigned **James Kerr MILLIGAN** of the City of London, Notary Public, duly admitted and sworn, practising in the said City, personally came and appeared **David John JACKSON**, to me known and known to me to be a duly appointed Secretary of **BP p.l.c.**, a Company duly incorporated and existing under the laws of England, registered at the Companies Registration Office for England and Wales under Number **102498**, with registered office at 1 St. James's Square, London SW1Y 4PD, England, who signed the foregoing Verification in my presence and acknowledged to me that he signed the same for and on behalf of the said Company for the uses and purposes therein set forth.

**IN TESTIMONY WHEREOF** I have hereunto set my hand and Seal of Office at London aforesaid, the day month and year first above written.

James Kerr MILLIGAN
Notary Public of London, England
My Commission expires with life









DE PINNA
35 Piccadilly London W1J 0LJ
Telephone : 44 (0)20 7208 2900 · Facsimile: 44 (0)20 7208 0066

Dated:  December 8, 2010                    Respectfully submitted,

**AS TO RESPONSES TO INTERROGATORIES**

By:  /s/ David Jackson
1 St. James Square
London, SW1Y 4PD
*BP p.l.c.*


**AS TO OBJECTIONS AND TO RESPONSES
TO REQUESTS FOR DOCUMENTS AND
REQUESTS FOR ADMISSION**

By:  /s/ J. Andrew Langan, P.C.

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108

*Attorneys for BP p.l.c.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on this 8th day of December, 2010.

<u>/s/   J. Andrew Langan, P.C.___</u>