# EXHIBIT 5



May 25 2011
11:13AM

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  Oil Spill by the Oil Rig | § | MDL NO. 2179 |
| "Deepwater Horizon" in the | § | SECTION:  J |
| Gulf of Mexico, on April 20, 2010 | § | |
| | § | JUDGE BARBIER |
| This Document Relates To:  ALL CASES | § | MAG. JUDGE SHUSHAN |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. | § | |

## HALLIBURTON ENERGY SERVICES, INC.'S
## RESPONSES TO THE BP PARTIES' FIRST REQUESTS FOR ADMISSIONS

Now comes Halliburton Energy Services, Inc. ("HESI") and, pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, serves upon the BP Parties the following Halliburton Energy Services, Inc.'s Responses to the BP Parties' First Requests for Admissions:

## I.
## GENERAL OBJECTIONS

HESI asserts the following objections to each and every one of the BP Parties' Requests, including any definitions or instructions associated therewith.  These general objections are incorporated by reference into each response set forth by HESI, and are neither waived nor limited by any specific response or answer.

1.      HESI objects to the definition of "Halliburton" as it is broad enough to include entities that are not parties to this or any MDL litigation.  The party deemed served with these Requests is HESI and thus all responses are HESI's only.

2.      HESI's responses to the Requests reflect HESI's present knowledge, information and belief, and may be subject to change or modification based on further discovery or on facts or circumstances that may come to HESI's attention.

3.      HESI objects to the definition of "kick" as it is overbroad, vague, and incomplete. HESI defines a "kick" as "the initiation of reservoir fluids or gas into the wellbore due to the underbalanced condition of the well."

4.      HESI objects to the definition of "OptiCem" as overbroad, vague, and ambiguous to the extent it requires HESI to guess how "the term was used by Halliburton in communications with BP."

5.      HESI objects to the Requests to the extent they seek information subject to the attorney-client privilege, work product doctrine, joint-defense privilege, or other applicable legal protection or privilege.

6.      HESI objects to the Requests to the extent they impose obligations beyond or different from those obligations under the Federal Rules of Civil Procedure or the Pretrial Orders of this Court.

7.      HESI objects to any and all Requests that require knowledge or information within the control of BP or another party that has not yet been provided to HESI.

8.      HESI expressly reserves its right to object to the admission into evidence of any and all information made available in response to any of the Requests on any grounds, including but not limited to, the ground that the information is irrelevant and immaterial to the issues in this action.  Nothing in HESI's responses to any of the Requests should be construed as an admission regarding the admissibility or relevance of any fact or document or of the truth or accuracy of any characterization of any kind contained in the Requests.

## II.
## SPECIFIC OBJECTIONS AND RESPONSES

**REQUEST FOR ADMISSION NO. 1:**    Admit that Halliburton never warned BP that the cement job at the Macondo well was unsafe.

**RESPONSE:**    HESI objects to this request as vague and ambiguous, particularly to the extent it fails to specify which cement job at Macondo is being referenced.  HESI further objects to the term "unsafe" as vague and ambiguous.  HESI further objects to this request to the extent it suggests incorrectly that, at the time of the production casing cement job at Macondo well, HESI had sufficient information necessary to form a belief as to whether the acts or omissions of BP and/or any other party raised any prospect that the cement job would be "unsafe."  To the extent BP is referencing the cement job on the final production casing, HESI admits that it did have concerns that running only six centralizers on the production casing of the Macondo well would diminish the cement's ability, through channeling, to effectively isolate hydrocarbons, as predicted by HESI's OptiCem simulations that were provided to BP before the cement job on the final production casing.  HESI does not know whether BP considers such a warning to implicate the safety of the cement job.  The failure to isolate hydrocarbons due to channeling in cement can be remediated, and the prospect of having to remediate such a cement job does not normally implicate safety concerns to HESI as the owner of the well and/or operator of the rig is expected and assumed to be able to maintain well control.  At the time of the cement job on the final production casing at Macondo, HESI had no indication that BP and/or the rig crew would displace the well to seawater without having a successful negative test or otherwise fail to maintain well control after the cement job.  Therefore, HESI would have had no reason to "warn" BP that the cement job at the Macondo well was unsafe.  Except as admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 2:**    Admit that Halliburton never warned BP that the temporary abandonment procedure at the Macondo well was unsafe.

**RESPONSE:**    HESI objects to this request on the grounds that the term "temporary abandonment procedure" is vague and ambiguous.   To the extent the term "temporary abandonment procedure" is intended to include the cement job on the final production casing for the Macondo well, the request is denied (see response to RFA No. 1, which is expressly incorporated herein by reference).  HESI further denies the implications of the request that HESI knew or was informed about all aspects of the temporary abandonment procedure, or was responsible for determining whether the temporary abandonment procedure was unsafe.  Except as admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 3:**    Admit that Halliburton did not have any safety concerns about running six centralizers on the production casing of the Macondo well.

**RESPONSE:**    HESI objects to this request on the grounds that the term "safety concerns" is vague and ambiguous.  HESI further objects to this request to the extent it suggests incorrectly that, at the time of the production casing cement job at Macondo well, HESI had sufficient information necessary to form a belief as to whether the acts or omissions of BP and/or any other

D  1662983 v4-24010/0002 DISCOVERY

party posed any "safety concerns" associated with BP's decision to run only six centralizers. HESI admits that it did have concerns that running only six centralizers on the production casing of the Macondo well would diminish the cement's ability, through channeling, to effectively isolate hydrocarbons, as predicted by HESI's OptiCem simulations that were provided to BP before the cement job on the final production casing.  HESI does not know whether BP considers such a warning to implicate the safety of the cement job.  The failure to isolate hydrocarbons due to channeling in cement can be remediated, and the prospect of having to remediate such a cement job does not normally implicate safety concerns to HESI as the owner of the well and/or operator of the rig is expected and assumed to be able to maintain well control.  At the time of the cement job on the final production casing at Macondo, even with BP's decision to use six centralizers on the production casing, HESI had no indication that BP and/or the rig crew would displace the well to seawater without having a successful negative test or otherwise fail to maintain well control after the cement job.  Therefore, at the time, HESI would have had no reason to be concerned about the safety of running only six centralizers on the production casing of the Macondo well.  Except as admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 4:**    Admit that after Halliburton found out that BP decided to run six centralizers instead of twenty-one centralizers, it did not raise the topic of centralizers with BP.

**RESPONSE:**    Denied.

**REQUEST FOR ADMISSION NO. 5:**    Admit that Halliburton informed BP that the cement job was executed successfully after the job was completed on April 20, 2010.

**RESPONSE:**    HESI objects to this request as vague and ambiguous, particularly to the extent it suggests that informing BP that "the cement job was executed successfully" somehow predicts whether the cement achieved zonal isolation.  HESI admits that it informed BP that the cement job on the final production casing, completed on April 20, 2010, was executed successfully to plan.  HESI denies the request to the extent it purports to ask whether HESI informed BP that the cement job, once placed in location, successfully achieved zonal isolation.  Whether the cement job achieved zonal isolation can only be determined conclusively by running a cement bond log or other cement evaluation technique, which BP decided not to run.  Moreover, while HESI informed BP that the cement job was executed to plan, it had previously informed BP that the cement job likely would not achieve zonal isolation due to channeling caused by BP's decision to run fewer centralizers than recommended.  Except as admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 6:**    Admit that Halliburton confirmed to BP that there were full returns during the cement job completed on April 20, 2010.

**RESPONSE:**    HESI admits that it asked the driller(s) on shift during the relevant time period whether full returns were observed during the cement job.  The drillers informed HESI that full returns were observed during the cement job, and HESI then provided that information to BP. Except as admitted herein, this request is denied.

D  1662983 v4-24010/0002 DISCOVERY

**REQUEST FOR ADMISSION NO. 7:**     Admit that Halliburton confirmed to BP that there was lift pressure during the cement job completed on April 20, 2010.

**RESPONSE:**     Admitted.


**REQUEST FOR ADMISSION NO. 8:**     Admit that Halliburton confirmed to BP that the "Rig completed displacement and both plugs were bumped" as scheduled during the cement job was completed on April 20, 2010.

**RESPONSE:**     Admitted.


**REQUEST FOR ADMISSION NO. 9:**     Admit that Halliburton did not tell BP to run a cement bond log after the cement job was completed on April 20, 2010.

**RESPONSE:**     HESI admits that it did not tell BP to run a cement bond log after the cement job was completed on April 20, 2010.  However, HESI denies the implication of the request that HESI is responsible for telling BP, as the well owner, if and when a cement bond log should be run.


**REQUEST FOR ADMISSION NO. 10:**     Admit that Halliburton did not warn the rig crew of the increasing pipe pressure around 21:26 to 21:30 on April 20, 2010.

**RESPONSE:**     HESI objects to this request to the extent it is vague and ambiguous in using the undefined phrases "pipe pressure" and "rig crew." For purposes of responding to this request, HESI will interpret these phrases to refer to standpipe 1 and the Transocean and BP employees on the Deepwater Horizon who were on duty between 21:26 and 21:30 on April 20, 2010.  HESI further objects that this request assumes facts not in evidence, including, for example, the assumption that there was a need to "warn" or a duty to "warn."  Subject to and without waiving the foregoing, HESI directs BP to the deposition testimony of Joseph E. Keith, in which he testified that on April 20, 2010, he did not observe an increase in pressure on standpipe 1 from 21:26 to 21:30.  As such, HESI admits that Mr. Keith did not have any conversation with BP or "the rig crew" about any such increase.  Except as admitted herein, HESI denies this request.


**REQUEST FOR ADMISSION NO. 11:**     Admit that Halliburton did not warn the rig crew of the increasing pipe pressure around 21:31 on April 20, 2010.

**RESPONSE:**     HESI objects to this request to the extent it is vague and ambiguous in using the undefined phrases "pipe pressure" and "rig crew." For purposes of responding to this request, HESI will interpret these phrases to refer to standpipe 1 and the Transocean and BP employees on the Deepwater Horizon who were on duty at 21:31 on April 20, 2010.  HESI further objects that this request assumes facts not in evidence, including, for example, the assumption that there was a need to "warn" or a duty to "warn."  Subject to and without waiving the foregoing, HESI directs BP to the deposition testimony of Joseph E. Keith, in which he testified that on April 20, 2010, he did not observe an increase in pressure on standpipe 1 at 21:31.  As such, HESI admits

D  1662983 v4-24010/0002 DISCOVERY

that Mr. Keith did not have any conversation with BP or "the rig crew" about any such increase. Except as admitted herein, HESI denies this request.

**REQUEST FOR ADMISSION NO. 12:**    Admit that the foamed cement pumped into the Macondo well on April 19 and 20, 2010 was unstable.

**RESPONSE:**    Denied.

**REQUEST FOR ADMISSION NO. 13:**    Admit that the foamed cement that Halliburton pumped into the annulus of the Macondo well failed to contain the flow of hydrocarbons.

**RESPONSE:**    HESI denies that it pumped foam cement into the annulus.  HESI admits that it pumped foam cement into the well during the cement job on the final production casing; however, the cementing procedure required that Transocean's rig pumps ultimately pump, or displace, the foam cement into the annulus.  HESI admits that the foam cement that was pumped into the Macondo well during the cement job on the final production casing failed to contain the flow of hydrocarbons, as previously predicted by the OptiCem modeling HESI provided to BP in advance of the cement job.

**REQUEST FOR ADMISSION NO. 14:**    Admit that the unfoamed cement that Halliburton pumped into the shoe of the Macondo well failed to contain the flow of hydrocarbons.

**RESPONSE:**    After a reasonable inquiry, information known to or readily obtainable by HESI is insufficient to enable HESI to admit or deny this request and, therefore, HESI denies it.

**REQUEST FOR ADMISSION NO. 15:**    Admit that the hydrocarbon flow came up the casing of the Macondo well through the shoe track.

**RESPONSE:**    HESI objects to this request as vague and ambiguous, particularly insofar as it fails to specify the time frame for the subject "flow" and fails to specify whether the flow addressed in the request pertains to initial flow at the Macondo well or the flow that ultimately reached the riser and rig floor.  Subject to and without waiving the foregoing objections, after a reasonable inquiry, information known to or readily obtainable by HESI is insufficient to enable HESI to admit or deny this request and, therefore, HESI denies it.

**REQUEST FOR ADMISSION NO. 16:**    Admit that the hydrocarbon flow did not come up the annulus of the Macondo well through the hanger seal assembly.

**RESPONSE:**    HESI objects to this request as vague and ambiguous, particularly insofar as it fails to specify the time frame for the subject "flow" and fails to specify whether the flow addressed in the request pertains to initial flow at the Macondo well or the flow that ultimately reached the riser and rig floor.  Subject to and without waiving the foregoing objections, after a reasonable inquiry, information known to or readily obtainable by HESI is insufficient to enable HESI to admit or deny this request and, therefore, HESI denies it.

D  1662983 v4-24010/0002 DISCOVERY

**REQUEST FOR ADMISSION NO. 17:**   Admit that the hydrocarbon flow did not come up the annulus of the Macondo well through a breach in the cross over.

**RESPONSE:**   HESI objects to this request as vague and ambiguous, particularly insofar as it fails to specify the time frame for the subject "flow" and fails to specify whether the flow addressed in the request pertains to initial flow at the Macondo well or the flow that ultimately reached the riser and rig floor.  Subject to and without waiving the foregoing objections, after a reasonable inquiry, information known to or readily obtainable by HESI is insufficient to enable HESI to admit or deny this request and, therefore, HESI denies it.

**REQUEST FOR ADMISSION NO. 18:**   Admit that the hydrocarbon flow did not come up the annulus of the Macondo well through a breach in the body of the casing.

**RESPONSE:**   HESI objects to this request as vague and ambiguous, particularly insofar as it fails to specify the time frame for the subject "flow" and fails to specify whether the flow addressed in the request pertains to initial flow at the Macondo well or the flow that ultimately reached the riser and rig floor.  Subject to and without waiving the foregoing objections, after a reasonable inquiry, information known to or readily obtainable by HESI is insufficient to enable HESI to admit or deny this request and, therefore, HESI denies it.

**REQUEST FOR ADMISSION NO. 19:**   Admit that the only gas flow potential category that requires a cement program change is Critical.

**RESPONSE:**   HESI objects to this request as vague and ambiguous, particularly insofar it does not identify who or what "requires" the subject change.  Therefore, after a reasonable inquiry, information known to or readily obtainable by HESI is insufficient to enable HESI to admit or deny this request and, therefore, HESI denies it.

**REQUEST FOR ADMISSION NO. 20:**   Admit that the OptiCem program only recommends that changes be made to the cementing program if the gas flow potential category is Critical.

**RESPONSE:**   Admitted.

**REQUEST FOR ADMISSION NO. 21:**   Admit that Halliburton predicted that the gas flow potential for the cement job on the production interval of the Macondo well using seven centralizers would be Severe.

**RESPONSE:**   Admitted.

**REQUEST FOR ADMISSION NO. 22:**   Admit that Halliburton contends that the gas flow potential calculated by OptiCem is substantially the same for six centralizers and seven centralizers.

**RESPONSE:**   Admitted.

**REQUEST FOR ADMISSION NO. 23:**     Admit that a solution Halliburton recommends for the gas flow potential category of Severe is foam cement.

**RESPONSE:**     HESI admits that that the use of foam cement is one application that HESI recommends for wells with a gas flow potential category of "Severe."  Except as admitted herein, HESI denies this request.

**REQUEST FOR ADMISSION NO. 24:**     Admit that Halliburton's OptiCem software (under the "Help" section of the OptiCem software under "Gas Flow Potential") recommends the use of foam cement in order to address severe gas flow potential.

**RESPONSE:**     HESI admits that its OptiCem software states that foam cement can be used to address severe gas flow potential.  Except as admitted herein, HESI denies this request.

**REQUEST FOR ADMISSION NO. 25:**     Admit that the calculation of a gas flow potential value using Halliburton's OptiCem software does not take into account the properties of the cement slurry to resist gas migration.

**RESPONSE:**     Denied.

**REQUEST FOR ADMISSION NO. 26:**     Admit that the calculation of a gas flow potential value using Halliburton's OptiCem software does not take into account whether the cement used is foamed cement slurry.

**RESPONSE:**     Denied.

**REQUEST FOR ADMISSION NO. 27:**     Admit that the calculation of a gas flow potential value using Halliburton's OptiCem software does not take into account the gel strength transition time properties of the cement slurry.

**RESPONSE:**     Denied.

**REQUEST FOR ADMISSION NO. 28:**     Admit that the OptiCem modeling done by Halliburton for the Macondo well on April 18, 2010 predicts a cemented annular region with good mud displacement below the region of the open hole that is washed out.

**RESPONSE:**     Denied.

**REQUEST FOR ADMISSION NO. 29:**     Admit that the OptiCem modeling done by Halliburton for the Macondo well on April 18, 2010 predicts a cemented annular region with no channeling below the region of the open hole that is washed out.

**RESPONSE:**     Denied.

D  1662983 v4-24010/0002 DISCOVERY

**REQUEST FOR ADMISSION NO. 30:**    Admit that the OptiCem modeling done by Halliburton for the Macondo well on April 18, 2010 predicts a cemented region with good mud displacement in the annular space between the production casing and the 9-7/8″ liner.

**RESPONSE:**    Denied.


**REQUEST FOR ADMISSION NO. 31:**    Admit that the OptiCem modeling done by Halliburton for the Macondo well on April 18, 2010 predicts a cemented region with no channeling in the annular space between the production casing and the 9-7/8″ liner.

**RESPONSE:**    Denied.


**REQUEST FOR ADMISSION NO. 32:**    Admit that nobody from Halliburton exercised their right to stop the job and refuse to pump the cement job on April 19 and 20, 2010 because of safety concerns.

**RESPONSE:**    HESI objects to this request on the grounds that the term "safety concerns" is vague and ambiguous.  HESI further objects to this request to the extent it suggests incorrectly that, at the time of the cement job on April 19 and 20, 2010, HESI had sufficient information necessary to form a belief as to whether the acts or omissions of BP and/or any other party posed "safety concerns" associated with the cement job.  Subject to and without waiving the foregoing objections, HESI admits that no HESI employee exercised his/her right to stop the cement job on April 19 and 20, 2010.


**REQUEST FOR ADMISSION NO. 33:**    Admit that Halliburton did not maintain the sensors used in the mud logging services it performed on the Deepwater Horizon on April 20, 2010 to ensure they were providing accurate data to assist real-time decision making, and for processing to aid post-well analysis.

**RESPONSE:**    HESI objects to this request as vague and ambiguous in its use of the undefined and unlimited phrase "sensors used in mud logging services."  HESI refers BP to the deposition testimony of John Gisclair and Joseph E. Keith, in which they testified that the only Halliburton-owned and maintained mud logging sensors on the Deepwater Horizon were a Vegasonic flow-out sensor and a gas sensor.  As such, HESI will interpret the phrase "sensors used in mud logging services" to refer to these two Halliburton owned and maintained sensors.  HESI further objects that this request is confusing and misleading in the apparent typographical mistake of "are were providing."  Subject to and without waiving the foregoing, HESI denies this request.


**REQUEST FOR ADMISSION NO. 34:**    Admit that the Halliburton mud loggers on the Deepwater Horizon on April 20, 2010 did not advise BP or Transocean personnel of any situation developing with safety implications.

**RESPONSE:**    HESI objects to this request as vague and ambiguous in its lack of a specific timeframe for reference and to the extent it assumes facts not in evidence, including the

assumption that there was a situation developing with safety implications that was apparent to the HESI mud loggers on the Deepwater Horizon.  Subject to and without waiving the foregoing, HESI directs BP to the deposition testimony of Joseph E. Keith, in which he testified that he did not observe a situation developing with safety implications while on duty on April 20, 2010.  As such, other than conversations with the assistant driller regarding fluid transfers and staggering the mud pumps, and conversations after leaving the mud logging shack upon hearing what sounded like rain and an explosion, HESI admits that Mr. Keith did not discuss a situation developing with safety implications with BP or Transocean personnel while on duty on April 20, 2010.  Except as admitted herein, HESI denies this request.

**REQUEST FOR ADMISSION NO. 35:**    Admit that on April 20, 2010 Halliburton did not inform BP or Transocean that rig activities prevented its mud loggers from accurately monitoring returns.

**RESPONSE:**    HESI objects that this request is overly broad and vague and ambiguous in its use of the phrase "rig activities" and the term "returns."  Subject to and without waiving the foregoing, HESI denies this request.

**REQUEST FOR ADMISSION NO. 36:**    Admit that on April 20, 2010 Halliburton did not "stop work" even though it knew that rig activities prevented its mud loggers from accurately monitoring returns.

**RESPONSE:**    HESI objects to this request on the grounds that the quoted term "stop work" is vague, ambiguous and undefined.  HESI further objects to this request to the extent it suggests incorrectly that, on April 20, 2010, Sperry's mud loggers had sufficient information necessary to form a belief as to whether the acts or omissions of BP and/or any other party presented a situation in which "stop work" authority, as understood by the mud loggers, should be exercised. HESI further objects to this request to the extent it suggests that HESI could reasonably or successfully exercise stop work authority if it disagreed with operational decisions by BP and/or any other party in which HESI was not involved or for which HESI did not have ultimate decision-making authority.  Subject to and without waiving the foregoing objections, HESI admits that no Sperry mud logger exercised "stop work" authority on April 20, 2010 even though the acts or omissions of BP and/or other parties prevented him/her from accurately monitoring returns.

**REQUEST FOR ADMISSION NO. 37:**    Admit that before April 20, 2010, Halliburton did not inform BP that the design of the production casing for the Macondo well was defective.

**RESPONSE:**    HESI admits that, before April 20, 2010, HESI did not inform BP that the design of the production casing for the Macondo well was defective.  However, HESI denies the implication of the request that HESI was responsible for determining whether BP's production casing design was defective and/or that BP engaged HESI to make or otherwise requested that HESI make such a determination.

**REQUEST FOR ADMISSION NO. 38:**     Admit that before April 20, 2010, Halliburton did not inform BP that the design of the production casing for the Macondo well was dangerous.

**RESPONSE:**     HESI admits that, before April 20, 2010, HESI did not inform BP that the design of the production casing for the Macondo well was dangerous.  However, HESI denies the implication of the request that HESI was responsible for determining whether BP's production casing design was dangerous and/or that BP engaged HESI to make or otherwise requested that HESI make such a determination.

**REQUEST FOR ADMISSION NO. 39:**     Admit that before April 20, 2010, Halliburton did not inform BP that the design of the production casing for the Macondo well should be changed.

**RESPONSE:**     HESI admits that, before April 20, 2010, HESI did not inform BP that the design of the production casing for the Macondo well should be changed.  However, HESI denies the implication of the request that HESI was responsible for determining whether BP's production casing design should be changed and/or that BP engaged HESI to make or otherwise requested that HESI make such a determination.  Prior to April 20, 2010, BP requested that HESI run OptiCem simulations to determine whether simulation showed it possible to cement two different production casing designs—a liner design and a long-string design.  The results of those simulations were provided to BP so that BP could determine its own casing design or any changes thereto.  Except as admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 40:**     Admit that on April 19 and 20, 2010, Halliburton executed the cement job on the production casing at the Macondo well.

**RESPONSE:**     Admitted.

**REQUEST FOR ADMISSION NO. 41:**     Admit that Halliburton did not refuse to execute the cement job on the production casing at the Macondo well.

**RESPONSE:**     Admitted.

**REQUEST FOR ADMISSION NO. 42:**     Admit that Halliburton had authority to "stop work" on the Deepwater Horizon if it believed any operation was unsafe.

**RESPONSE:**     HESI objects to this request on the grounds that the quoted term "stop work" is vague, ambiguous and undefined.  HESI further objects to this request to the extent it suggests incorrectly that HESI had sufficient information necessary to form a belief as to whether the acts or omissions of BP and/or any other party presented a situation(s) in which "stop work" authority, as understood by HESI, should be exercised.  HESI further objects to this request to the extent it suggests that HESI could reasonably or successfully exercise stop work authority if it disagreed with operational decisions by BP and/or any other party in which HESI was not involved or for which HESI did not have ultimate decision-making authority.  Subject to and without waiving the foregoing objections, HESI admits that it had authority to request the

stoppage of certain work on the Deepwater Horizon if it believed certain operations or conditions were unsafe.  Except as specifically admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 43:**    Admit that Halliburton had authority to "stop work" on the Deepwater Horizon if it did not understand any operation.

**RESPONSE:**    HESI objects to this request on the grounds that the quoted term "stop work" is vague, ambiguous and undefined.  HESI further objects to this request to the extent it suggests incorrectly that HESI had sufficient information necessary to form a belief as to whether the acts or omissions of BP and/or any other party presented a situation(s) in which "stop work" authority, as understood by HESI, should be exercised.  HESI further objects to this request to the extent it suggests that HESI could reasonably or successfully exercise stop work authority if it disagreed with operational decisions by BP and/or any other party in which HESI was not involved or for which HESI did not have ultimate decision-making authority.  Subject to and without waiving the foregoing objections, HESI admits that it had authority to request the stoppage of certain work on the Deepwater Horizon if it believed it did not understand certain operations.  Except as specifically admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 44:**    Admit that Halliburton did not exercise its "stop work" authority on April 19, 2010 on the Deepwater Horizon.

**RESPONSE:**    HESI objects to this request on the grounds that the quoted term "stop work" is vague, ambiguous and undefined.  HESI further objects to this request to the extent it suggests incorrectly that HESI had sufficient information necessary to form a belief as to whether the acts or omissions of BP and/or any other party presented a situation(s) in which "stop work" authority, as understood by HESI, should have been exercised on April 19, 2010.  HESI further objects to this request to the extent it suggests that HESI could reasonably or successfully exercise stop work authority if it disagreed with operational decisions by BP and/or any other party in which HESI was not involved or for which HESI did not have ultimate decision-making authority.  Subject to and without waiving the foregoing objections, HESI admits that it did not request stoppage of work on April 19, 2010 on the Deepwater Horizon.  Except as specifically admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 45:**    Admit that Halliburton did not exercise its "stop work" authority on April 20, 2010 on the Deepwater Horizon.

**RESPONSE:**    HESI objects to this request on the grounds that the quoted term "stop work" is vague, ambiguous and undefined.  HESI further objects to this request to the extent it suggests incorrectly that HESI had sufficient information necessary to form a belief as to whether the acts or omissions of BP and/or any other party presented a situation(s) in which "stop work" authority, as understood by HESI, should have been exercised on April 20, 2010.  HESI further objects to this request to the extent it suggests that HESI could reasonably or successfully exercise stop work authority if it disagreed with operational decisions by BP and/or any other party in which HESI was not involved or for which HESI did not have ultimate decision-making authority.  Subject to and without waiving the foregoing objections, HESI admits that it did not

request stoppage of work on April 20, 2010 on the Deepwater Horizon.  Except as specifically admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 46:**     Admit that Halliburton executed the cement job on the production interval of the Macondo well even though it knew the casing design left 189 feet of cement in the "shoe track."

**RESPONSE:**     Admitted.

**REQUEST FOR ADMISSION NO. 47:**     Admit that Halliburton did not inform BP that there were any issues with the casing design that left 189 feet of cement in the "shoe track."

**RESPONSE:**     Denied.

**REQUEST FOR ADMISSION NO. 48:**     Admit that Halliburton executed the cement job on the production interval of the Macondo well even though it knew the casing design placed the bottom of the casing only 55 feet beneath the lowest hydrocarbon zone.

**RESPONSE:**     Denied.

**REQUEST FOR ADMISSION NO. 49:**     Admit that Halliburton did not inform BP of any issues with the casing design that placed the bottom of the casing only 55 feet beneath the lowest hydrocarbon zone.

**RESPONSE:**     Denied.

**REQUEST FOR ADMISSION NO. 50:**     Admit that Halliburton executed the cement job on the production interval of the Macondo well even though it knew that the casing plan specified a long-string production casing instead of a liner.

**RESPONSE:**     Admitted.

**REQUEST FOR ADMISSION NO. 51:**     Admit that Halliburton did not inform BP of any issues with the casing plan for a long-string production casing instead of a liner for the production interval of the Macondo well.

**RESPONSE:**     Denied.

**REQUEST FOR ADMISSION NO. 52:**     Admit that Halliburton advised BP that a long-string production casing could be successfully cemented at the Macondo well on April 14, 2010.

D  1662983 v4-24010/0002 DISCOVERY

**RESPONSE:**     HESI admits that it advised BP that a long-string production casing could be successfully cemented at the Macondo well provided the casing was adequately and properly centralized.  Except as admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 53:**     Admit that subsequent to advising BP that a long-string production casing could be successfully cemented at the Macondo well on April 14, 2010, Halliburton did not advise BP that production casing could not be successfully cemented.

**RESPONSE:**     Denied.

**REQUEST FOR ADMISSION NO. 54:**     Admit that a liner with tieback has a potential leak path at the tieback junction.

**RESPONSE:**     HESI admits that a liner with a tieback has a potential leak path at the tieback junction, if the liner with a tieback is installed improperly.  Except as admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 55:**     Admit that a production casing does not have a potential leak path at the tieback junction.

**RESPONSE:**     HESI objects to this request as vague, ambiguous and nonsensical, particularly to the extent it suggests that a "production casing" has a "tieback junction."  The inaccurate premise of this request renders it unanswerable and, therefore, HESI denies it.

**REQUEST FOR ADMISSION NO. 56:**     Admit that a liner with tieback has a higher risk of mechanical integrity failure during the life of the well compared to a production casing.

**RESPONSE:**     After a reasonable inquiry, information known to or readily obtainable by HESI is insufficient to enable HESI to admit or deny this request and, therefore, HESI denies it.

**REQUEST FOR ADMISSION NO. 57:**     Admit that Halliburton executed the cement job on the production interval of the Macondo well even though it knew that the casing design did not include a float shoe.

**RESPONSE:**     HESI admits that it executed the cement job on the production interval of the Macondo well even though it knew that BP designed the casing not to include a float shoe. Except as admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 58:**     Admit that Halliburton did not inform BP of any issues concerning the lack of a float shoe.

**RESPONSE:**     Admitted.  However, HESI denies the implication of this request that HESI was responsible for determining whether BP's design should or should not include a float shoe or was otherwise asked to approve BP's design that lacked a float shoe.

**REQUEST FOR ADMISSION NO. 59:**     Admit that Halliburton executed the cement job on the production interval of the Macondo well even though it knew that the float collar did not perform as expected during attempts to convert it.

**RESPONSE:**     HESI denies this request except to admit that HESI executed the cement job on the production interval of the Macondo well, at BP's direction, even though it knew—through its own direct observations and not by any communication from BP—that BP had difficulty in its operations to convert the float collar.

**REQUEST FOR ADMISSION NO. 60:**     Admit that Halliburton executed the cement job on the production interval of the Macondo well even though it knew that nine attempts were made to convert the float collar.

**RESPONSE:**     HESI denies this request except to admit that HESI executed the cement job on the production interval of the Macondo well, at BP's direction, even though it knew—through its own direct observations and not by any communication from BP—that BP successively pressured up nine times in its operations to attempt to convert the float collar and then achieved circulation after ultimately pressuring up to 3,142 psi.

**REQUEST FOR ADMISSION NO. 61:**     Admit that Halliburton did not inform BP of any issues concerning the conversion of the float collar.

**RESPONSE:**     HESI admits that it did not inform BP of any issues concerning the conversion of the float collar.  However, HESI denies the implication of the request that HESI was in any way involved in rig operations attempting to convert the float collar or was otherwise responsible for warning BP about any issues associated with attempts to convert the float collar when BP was directly involved with those operations, and HESI was not.

**REQUEST FOR ADMISSION NO. 62:**     Admit that Halliburton's post-job report for the Macondo well sent to BP on April 23, 2010 states that the float collar was converted.

**RESPONSE:**     HESI admits that the post-job report it sent to BP on April 23, 2010 states that "floats converted."  However, HESI denies the implication of the request that all of the information conveyed to BP in the post-job report was determined by HESI, including but not limited to whether the floats converted, as that information was provided to HESI by BP immediately before the commencement of the cement job on the final production casing.  Except as admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 63:**     Admit that Halliburton's post-job report for the Macondo well sent to BP on April 23, 2010 states that the float valves held after cementing.

**RESPONSE:**     HESI admits that the post-job report it sent to BP on April 23, 2010 states that "floats held."  Except as admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 64:**     Admit that before April 19, 2010 Halliburton knew that the fifteen centralizers delivered to the Deepwater Horizon were not installed on the production casing.

Page 15 of 28

**RESPONSE:**     Admitted.


**REQUEST FOR ADMISSION NO. 65:**     Admit that before the blowout on April 20, 2010, Halliburton did not inform BP that there were any safety issues with not installing the fifteen centralizers on the Deepwater Horizon on the production casing.

**RESPONSE:**     HESI objects to this request on the grounds that the term "safety issues" is vague and ambiguous.  HESI further objects to this request to the extent it suggests incorrectly that, prior to the blowout on April 20, 2010, HESI had sufficient information necessary to form a belief as to whether the acts or omissions of BP and/or any other party posed or would pose any "safety issues" associated with BP's decision not to install the fifteen additional centralizers. HESI admits that it did have concerns with BP's decision not to install the additional centralizers on the production casing of the Macondo well.  Specifically, HESI was concerned that BP's decision would diminish the cement's ability, through channeling, to effectively isolate hydrocarbons, as predicted by HESI's OptiCem simulations that were provided to BP before the cement job on the final production casing.  HESI does not know whether BP considers such a warning to implicate the safety of the cement job.  The failure to isolate hydrocarbons due to channeling in cement can be remediated, and the prospect of having to remediate such a cement job does not normally implicate safety concerns to HESI as the owner of the well and/or operator of the rig is expected and assumed to be able to maintain well control.  At the time of the cement job on the final production casing at Macondo, even with BP's decision not to install the fifteen additional centralizers, HESI had no indication that BP and/or the rig crew would displace the well to seawater without having a successful negative test or otherwise fail to maintain well control after the cement job.  Therefore, at the time, HESI would have had no reason to be concerned about the safety of not installing the fifteen additional centralizers on the production casing of the Macondo well.  Except as admitted herein, this request is denied.


**REQUEST FOR ADMISSION NO. 66:**     Admit that Halliburton executed the cement job on the production interval of the Macondo well even though it knew that the fifteen centralizers delivered to the Deepwater Horizon were not installed on the production casing.

**RESPONSE:**     Admitted.


**REQUEST FOR ADMISSION NO. 67:**     Admit that Halliburton knew that BP had a decision tree specifying that a cement bond log would be run if full returns were not observed during execution of the cement job.

**RESPONSE:**     Denied.


**REQUEST FOR ADMISSION NO. 68:**     Admit that Halliburton did not indicate to BP that criteria other than full returns should be considered as an indication of a successful cement job.

**RESPONSE:**     Denied.

D  1662983 v4-24010/0002 DISCOVERY

**REQUEST FOR ADMISSION NO. 69:**     Admit that using full returns as an indication of a successful cement job is appropriate.

**RESPONSE:**     HESI admits that "full returns" is an indication that cement has been properly placed according to the cement procedure.  HESI denies that "full returns" alone is a sufficient indicator that cement has been properly placed according to the cement procedure.  HESI further denies that "full returns" is a sufficient indicator that the cement, once pumped into place, will successfully achieve zonal isolation.  Except as admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 70:**     Admit that Halliburton knew and did not inform BP before April 20, 2010 that the well owner must perform a cement bond log to rely on the cement as an effective barrier.

**RESPONSE:**     Admitted.  However, HESI denies the implication that BP, as a well owner, did not already know that it should perform a cement bond log before relying on the cement as an effective barrier prior to displacing the well to seawater before a successful negative test, or that BP relied on HESI in any respect to provide it with such information.

**REQUEST FOR ADMISSION NO. 71:**     Admit that Halliburton's internal best practices do not recommend running a cement bond log for every cement job.

**RESPONSE:**     Admitted.

**REQUEST FOR ADMISSION NO. 72:**     Admit that Halliburton never discussed with BP the need to run a cement bond log at the Macondo well.

**RESPONSE:**     Admitted.  However, HESI denies the implication that BP, as a well owner, did not already know that it should perform a cement bond log before relying on the cement as an effective barrier in this situation, or that BP relied on HESI in any respect to advise it or provide it with such information.

**REQUEST FOR ADMISSION NO. 73:**     Admit that Halliburton attended a meeting on April 14, 2010, where BP's plan for running a cement bond log only if there were lost returns was discussed.

**RESPONSE:**     Denied.

**REQUEST FOR ADMISSION NO. 74:**     Admit that Halliburton attended a morning meeting with BP on April 20, 2010, where Halliburton presented the results from the cement job on April 19-20, 2010.

**RESPONSE:**     HESI admits that one HESI employee attended a portion of a morning meeting on April 20, 2010 at which he recapped for BP and the attendees the volumes of cement and

fluids pumped during the cement job that commenced on April 19, 2010.  Except as admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 75:**    Admit that at a morning meeting with BP on April 20, 2010, Halliburton stated that the cement job on April 19-20, 2010 had been pumped successfully.

**RESPONSE:**    HESI objects to this request to the extent it assumes that HESI attended the entire morning meeting with BP on April 20, 2010 and to the extent it assumes HESI can recall all unrecorded details of the discussion that took place in that meeting.  Subject to and without waiving the foregoing objections, HESI admits that it attended at least a portion of the morning meeting with BP on April 20, 2010.  However, after a reasonable inquiry, information known to or readily obtainable by HESI is insufficient to enable HESI to admit or deny whether the discussion at that meeting included the content suggested by this request and, therefore, HESI denies it.

**REQUEST FOR ADMISSION NO. 76:**    Admit that at a morning meeting with BP on April 20, 2010, Halliburton stated that the cement job on April 19-20, 2010 had been pumped with full returns.

**RESPONSE:**    HESI objects to this request to the extent it assumes that HESI attended the entire morning meeting with BP on April 20, 2010 and to the extent it assumes HESI can recall all unrecorded details of the discussion that took place in that meeting.  Subject to and without waiving the foregoing objections, HESI admits that it attended at least a portion of the morning meeting with BP on April 20, 2010.  However, after a reasonable inquiry, information known to or readily obtainable by HESI is insufficient to enable HESI to admit or deny whether the discussion at that meeting included the content suggested by this request and, therefore, HESI denies it.

**REQUEST FOR ADMISSION NO. 77:**    Admit that at a morning meeting with BP on April 20, 2010, Halliburton stated that the cement job on April 19-20, 2010 had been pumped with lift pressure.

**RESPONSE:**    HESI objects to this request to the extent it assumes that HESI attended the entire morning meeting with BP on April 20, 2010 and to the extent it assumes HESI can recall all unrecorded details of the discussion that took place in that meeting.  Subject to and without waiving the foregoing objections, HESI admits that it attended at least a portion of the morning meeting with BP on April 20, 2010.  However, after a reasonable inquiry, information known to or readily obtainable by HESI is insufficient to enable HESI to admit or deny whether the discussion at that meeting included the content suggested by this request and, therefore, HESI denies it.

**REQUEST FOR ADMISSION NO. 78:**    Admit that at a morning meeting with BP on April 20, 2010, Halliburton stated that the cement job on April 19-20, 2010 had been pumped with plugs bumping on schedule.

**RESPONSE:**     HESI objects to this request to the extent it assumes that HESI attended the entire morning meeting with BP on April 20, 2010 and to the extent it assumes HESI can recall all unrecorded details of the discussion that took place in that meeting.  Subject to and without waiving the foregoing objections, HESI admits that it attended at least a portion of the morning meeting with BP on April 20, 2010.  However, after a reasonable inquiry, information known to or readily obtainable by HESI is insufficient to enable HESI to admit or deny whether the discussion at that meeting included the content suggested by this request and, therefore, HESI denies it.

**REQUEST FOR ADMISSION NO. 79:**     Admit that Halliburton attended a morning meeting on April 20, 2010, where the plan to not run a cement bond log was discussed.

**RESPONSE:**     HESI objects to this request to the extent it assumes that HESI attended the entire morning meeting with BP on April 20, 2010 and to the extent it assumes HESI can recall all unrecorded details of the discussion that took place in that meeting.  Subject to and without waiving the foregoing objections, HESI admits that it attended at least a portion of the morning meeting with BP on April 20, 2010.  However, after a reasonable inquiry, information known to or readily obtainable by HESI is insufficient to enable HESI to admit or deny whether the discussion at that meeting included the content suggested by this request and, therefore, HESI denies it.

**REQUEST FOR ADMISSION NO. 80:**     Admit that at the morning meeting with BP on April 20, 2010, Halliburton did not state that a cement bond was needed.

**RESPONSE:**     HESI objects to this request to the extent it assumes that HESI attended the entire morning meeting with BP on April 20, 2010 and to the extent it assumes HESI can recall all unrecorded details of the discussion that took place in that meeting.  Subject to and without waiving the foregoing objections, HESI admits that it did not state to BP, at the morning meeting on April 20, 2010, that a cement bond log was needed.  However, after a reasonable inquiry, information known to or readily obtainable by HESI is insufficient to enable HESI to admit or deny whether the discussion at that meeting included the content suggested by this request and, therefore, HESI denies it.

**REQUEST FOR ADMISSION NO. 81:**     Admit that Halliburton did not tell BP that a cement bond log was needed before BP could rely on the cement as a barrier.

**RESPONSE:**     Admitted.  However, HESI denies the implication that BP, as a well owner, did not already know that it should perform a cement bond log before relying on the cement as an effective barrier in this situation, or that BP relied on HESI in any respect to advise it or provide it with such information.

**REQUEST FOR ADMISSION NO. 82:**     Admit that Halliburton executed the cement job on the production interval of the Macondo well even though it knew the plan was to not run a cement bond log if there were full returns.

**RESPONSE:**     Denied.


**REQUEST FOR ADMISSION NO. 83:**     Admit that Halliburton did not raise with BP any issues with the plan to not run a cement bond log if there were full returns.

**RESPONSE:**     Admitted.  However, HESI denies the implication that it knew BP did not intend to run a cement bond log if there were full returns.


**REQUEST FOR ADMISSION NO. 84:**     Admit that Halliburton executed the cement job on the production interval of the Macondo well even though it knew that the float collar placement prevented a cement bond log from being run across over 83% of hydrocarbon bearing formations.

**RESPONSE:**     Denied.


**REQUEST FOR ADMISSION NO. 85:**     Admit that Halliburton did not raise with BP any issue with the plan to place the float collar where it prevented a cement bond log from being run across over 83% of hydrocarbon bearing formations.

**RESPONSE:**     Admitted.  However, HESI denies the implication in this request that HESI knew about the plan—to place the float collar where it prevented a cement bond log from being run across over 83% of hydrocarbon bearing formations—in order to be able to raise it with BP. *See* response to RFA No. 84.


**REQUEST FOR ADMISSION NO. 86:**     Admit that Halliburton knew before April 20, 2010 that BP's intention was to run a cement bond log when it returned to the Macondo well for production.

**RESPONSE:**     Denied.


**REQUEST FOR ADMISSION NO. 87:**     Admit that Halliburton knew before April 20, 2010 that BP's intention was to drill out a portion of the shoe before running a cement bond log when it returned to the Macondo well for production.

**RESPONSE:**     Denied.


**REQUEST FOR ADMISSION NO. 88:**     Admit that Halliburton executed the cement job on the production interval of the Macondo well even though it knew that bottoms-up circulation was not performed after running the production casing.

**RESPONSE:**     Admitted.

**REQUEST FOR ADMISSION NO. 89:**     Admit that Halliburton did not tell BP that a bottoms-up circulation should be performed after running the casing on April 19, 2010.

**RESPONSE:**     Denied.

**REQUEST FOR ADMISSION NO. 90:**     Admit that Halliburton did not warn BP of any issues with not running a bottoms- up circulation after running the casing on April 19, 2010.

**RESPONSE:**     Denied.

**REQUEST FOR ADMISSION NO. 91:**     Admit that the decision to run less than bottoms-up circulation after running the casing on April 19, 2010 was appropriate given the conditions of the Macondo well.

**RESPONSE:**     Denied.

**REQUEST FOR ADMISSION NO. 92:**     Admit that BP circulated more than a full bottoms-up circulation on April 16, 2010 at the Macondo well.

**RESPONSE:**     Admitted.  However, HESI denies the implication in this request that the bottoms-up circulation performed on April 16, 2010 was sufficient to condition the mud and the wellbore for the cement job that commenced three days later, on April 19, 2010.

**REQUEST FOR ADMISSION NO. 93:**     Admit that the circulation on April 16, 2010 at the Macondo well gave indications that the well was in good shape for cementing.

**RESPONSE:**     Denied.

**REQUEST FOR ADMISSION NO. 94:**     Admit that on April 20, 2010 Halliburton told BP on the Deepwater Horizon that there were no lost returns during execution of the cement job.

**RESPONSE:**     HESI admits that it asked the driller(s) on shift during the relevant time period whether any lost returns were observed during the cement job.  The drillers informed HESI that full returns were observed during the cement job, and HESI then provided that information to BP.  Except as admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 95:**     Admit that on April 20, 2010 Halliburton told BP on the Deepwater Horizon that there was lift pressure during execution of the cement job.

**RESPONSE:**     Admitted.

**REQUEST FOR ADMISSION NO. 96:**     Admit that Halliburton mud loggers on the Deepwater Horizon are required to monitor pressure tests.

**RESPONSE:**     HESI objects that this request is vague and ambiguous, and overly broad, in its use of the undefined, unlimited phrase "pressure tests."  For purposes of this request, HESI interprets the request as referring to a negative pressure test.  Subject to and without waiving the foregoing, HESI directs BP to the deposition testimony of Joseph E. Keith and Kelly Gray in which they testified that the HESI mud loggers monitor all surface data parameters during operations.  As such, HESI admits that its mud loggers monitor surface data parameters during rig activities, which may include such monitoring services when a negative pressure test is performed by BP and Transocean.  HESI denies that its mud loggers are involved in performing or interpreting the negative test and, in fact, often are not informed when it is being performed. Except as admitted herein, HESI denies this request.

**REQUEST FOR ADMISSION NO. 97:**     Admit that on April 20, 2010, Halliburton mud loggers were monitoring data from the negative test.

**RESPONSE:**     HESI directs BP to the deposition testimony of Joseph E. Keith and Kelly Gray in which they testified that the HESI mud loggers monitor all surface data parameters during operations.  As such, HESI admits that its mud loggers were monitoring surface data parameters when BP and Transocean performed their negative tests on April 20, 2010, but denies that its mud loggers were involved in performing or interpreting those negative tests and, in fact, were not informed when and how BP and Transocean were performing those tests.  Except as admitted herein, HESI denies this request.

**REQUEST FOR ADMISSION NO. 98:**     Admit that on April 20, 2010, Halliburton mud loggers knew that a successful negative test did not occur.

**RESPONSE:**     Denied.

**REQUEST FOR ADMISSION NO. 99:**     Admit that on April 20, 2010, Halliburton mud loggers did not inform BP of any issues relating to the negative test.

**RESPONSE:**     HESI objects that this request is overly broad and vague and ambiguous in its use of the undefined, unlimited term "issues."  HESI further objects that this request assumes facts not in evidence, including that there were "issues" apparent to HESI's mud loggers about which they should have informed BP.  Subject to and without waiving the foregoing, HESI directs BP to the deposition testimony of Joseph E. Keith, in which he testified that he was not aware of the negative test BP and Transocean performed or any problems therewith.  As such, HESI admits that its mud loggers were not aware of any problems with BP and Transocean's negative tests and did not discuss any such problems with them.

**REQUEST FOR ADMISSION NO. 100:**  Admit that Halliburton did not exercise a "stop work" based on the negative test.

**RESPONSE:**     HESI objects to this request on the grounds that the quoted term "stop work" is vague, ambiguous and undefined.  HESI further objects to this request to the extent it suggests incorrectly that HESI had sufficient information necessary to form a belief as to whether the acts

or omissions of BP and/or any other party involved in the negative test presented a situation(s) in which HESI should have exercised "stop work" authority.  HESI further objects to this request to the extent it suggests that HESI could reasonably or successfully exercise stop work authority if it disagreed with operational decisions by BP and/or any other party in which HESI was not involved or for which HESI did not have ultimate decision-making authority.  Subject to and without waiving the foregoing objections, HESI admits that it did not request stoppage of work based on the negative test.  However, HESI further denies the implication of this request that HESI fully participated in or was aware of all steps and results of the negative test such that it had the relevant information and/or knowledge to inform a decision as to whether to exercise "stop work" authority during or immediately after the negative test.  Except as specifically admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 101:**  Admit that the report titled 9 7/8″ X 7″ Production Casing that Halliburton sent to BP on April 18, 2010 encloses Halliburton's recommended procedure for cementing the long- string casing at the Macondo well.

**RESPONSE:**     Denied.

**REQUEST FOR ADMISSION NO. 102:**  Admit that before the blowout on April 20, 2010, Halliburton knew that BP did not adjust their decision tree, and did not inform BP of any issues with the decision tree.

**RESPONSE:**     Denied.

**REQUEST FOR ADMISSION NO. 103:**  Admit that before the blowout on April 20, 2010, Halliburton did not inform BP of any issues with the decision tree.

**RESPONSE:**     Admitted.  However, HESI denies the implication of this request that HESI was familiar with a BP decision tree or all of the issues purportedly raised therein.

**REQUEST FOR ADMISSION NO. 104:**  Admit that Halliburton did not exercise a "stop work" on April 20, 2010 because BP did not adjust their decision tree.

**RESPONSE:**     HESI objects to this request on the grounds that the quoted term "stop work" is vague, ambiguous and undefined.  HESI further objects to this request to the extent it suggests incorrectly that HESI had sufficient information necessary to form a belief as to whether the acts or omissions of BP and/or any other party involved in the creation or execution of any decision tree presented a situation(s) in which HESI should have exercised "stop work" authority.  HESI further objects to this request to the extent it suggests that HESI could reasonably or successfully exercise stop work authority if it disagreed with operational decisions by BP and/or any other party in which HESI was not involved or for which HESI did not have ultimate decision-making authority.  Subject to and without waiving the foregoing objections, HESI admits that it did not request stoppage of work based on BP's failure to adjust its decision tree.  However, HESI further denies the implication of this request that HESI had the necessary information about the

D  1662983 v4-24010/0002 DISCOVERY

decision tree and/or the operations purportedly addressed therein sufficient to decide whether to exercise "stop work" authority.  Except as specifically admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 105:**  Admit that on April 20, 2010 Halliburton told BP employees on the Deepwater Horizon that the cement job was successfully executed.

**RESPONSE:**     HESI objects to this request as vague and ambiguous, particularly to the extent it suggests that informing BP that "the cement job was successfully executed " somehow predicts whether the cement achieved zonal isolation.  HESI admits that it informed BP that the cement job on the final production casing, completed on April 20, 2010, was executed successfully to plan.  HESI denies the request to the extent it purports to ask whether HESI informed BP that the cement job, once placed in location, successfully achieved zonal isolation.  Whether the cement job achieved zonal isolation can only be determined conclusively by running a cement bond log or other cement evaluation technique, which BP decided not to run.  Moreover, while HESI informed BP that the cement job was executed to plan, it had previously informed BP that the cement job likely would not achieve zonal isolation due to channeling caused by BP's decision to run fewer centralizers than recommended.  Except as admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 106:**  Admit that Halliburton provided to BP on April 23, 2010 a post-job report of the cement job on the production interval of the Macondo well.

**RESPONSE:**     Admitted.

**REQUEST FOR ADMISSION NO. 107:**  Admit that Halliburton has never indicated to BP that the post-job report it provided on April 23, 2010 was incorrect.

**RESPONSE:**     Admitted.  However, HESI denies the implication of this request that HESI was independently responsible for verifying the accuracy of all statements and data presented to BP in the post-job report, particularly those statements and/or data provided to HESI by BP.

**REQUEST FOR ADMISSION NO. 108:**  Admit that Halliburton had the April 2010 logging data for the Macondo well before April 18, 2010.

**RESPONSE:**     HESI objects to this request on the grounds that the term "April 2010 logging data" is vague, ambiguous and undefined.  HESI admits that it had certain caliper log and directional data for the Macondo well before April 18, 2010.  Except as admitted herein, this request is denied.

**REQUEST FOR ADMISSION NO. 109:**  Admit that Halliburton had access to WellSpace before April 18, 2010.

**RESPONSE:**     HESI objects to the term "WellSpace" as vague, ambiguous and undefined. Subject to and without waiving the foregoing objections, HESI denies this request.

Page 24 of 28

**REQUEST FOR ADMISSION NO. 110:**  Admit that the April 2010 logging data for the Macondo well was in WellSpace before April 18, 2010.

**RESPONSE:**     HESI objects to this request on the grounds that the terms "April 2010 logging data" and "WellSpace" are vague, ambiguous and undefined.  Subject to and without waiving the foregoing objections, after a reasonable inquiry, information known to or readily obtainable by HESI is insufficient to enable HESI to admit or deny this request and, therefore, HESI denies it.

**REQUEST FOR ADMISSION NO. 111:**  Admit that the April 2010 logging data for the Macondo well specified the pore pressures for the gas reservoirs.

**RESPONSE:**     HESI objects to this request on the grounds that the term "April 2010 logging data" is vague, ambiguous and undefined.  HESI further objects to this request to the extent it assumes that HESI reviewed, interpreted and/or obtained pore pressures from any logging data— on its own and without any direction and interpretation of such data by BP—purporting to provide the pore pressures for the gas reservoirs at Macondo.  Subject to and without waiving the foregoing objections, after a reasonable inquiry, information known to or readily obtainable by HESI is insufficient to enable HESI to admit or deny this request and, therefore, HESI denies it.

**REQUEST FOR ADMISSION NO. 112:**  Admit that the April 18, 2010 OptiCem report did not use the correct pore pressures reflected in the April 2010 logging data.

**RESPONSE:**     HESI objects to this request on the grounds that the term "April 2010 logging data" is vague, ambiguous and undefined.  HESI further objects to this request to the extent it assumes that HESI reviewed, interpreted and/or obtained pore pressures from any logging data— on its own and without any direction and interpretation of such data by BP—purporting to provide the pore pressures to be incorporated into the April 18, 2010 OptiCem report.  Subject to and without waiving the foregoing objections, after a reasonable inquiry, information known to or readily obtainable by HESI is insufficient to enable HESI to admit or deny this request and, therefore, HESI denies it.

**REQUEST FOR ADMISSION NO. 113:**  Admit that if the correct pore pressure was used for the gas flow potential calculation in the April 18, 2010 Opticem report, the gas flow potential would be Minor.

**RESPONSE:**     HESI objects to this request on the grounds that the term "correct pore pressure" is vague, ambiguous and undefined.  HESI further objects to this request to the extent it assumes that HESI would know what pore pressure(s) is correct for use in the April 18, 2010 OptiCem report without BP's direction and interpretation of relevant log data.  Subject to and without waiving the foregoing objections, HESI denies this request.

**REQUEST FOR ADMISSION NO. 114:**  Admit that BP provided Halliburton with its planned placement of the six centralizers before April 18, 2010.

**RESPONSE:**     Denied.

**REQUEST FOR ADMISSION NO. 115:**   Admit that the April 18, 2010 OptiCem report did not use the centralizer locations provided by BP.

**RESPONSE:**      HESI admits that the April 18, 2010 OptiCem report did not use the centralizer locations determined by BP, but HESI denies that the specific locations of such centralizers were provided by BP to HESI to include in the April 18, 2010 OptiCem.

**GODWIN RONQUILLO PC**

By:  /s/ Donald E. Godwin _____
     Donald E. Godwin, T.A.
     DGodwin@GodwinRonquillo.com
     Bruce W. Bowman, Jr.
     BBowman@GodwinRonquillo.com
     Jenny L. Martinez
     JMartinez@GodwinRonquillo.com
     1201 Elm Street, Suite 1700
     Dallas, Texas 75270-2041
     Telephone: 214.939.4400
     Facsimile:  214.760.7332

     and

     R. Alan York
     AYork@GodwinRonquillo.com
     Misty Hataway Coné
     MCone@GodwinRonquillo.com
     1331 Lamar, Suite 1665
     Houston, Texas 77010
     Telephone:  713.595.8300
     Facsimile:   713.425.7594

**ATTORNEYS FOR DEFENDANT**
**HALLIBURTON ENERGY SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document, Defendant Halliburton Energy Services, Inc.'s Responses to The BP Parties' First Request for Admissions, has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 25th day of May, 2011.

/s/  Donald E. Godwin
Donald E. Godwin