UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| IN RE: OIL SPILL by the OIL RIG | * | MDL NO. 2179 "J"(1) |
| "DEEPWATER HORIZON" in | * | |
| the GULF OF MEXICO, on | * | JUDGE BARBIER |
| APRIL 20, 2010 | * | |
| | * | MAGISTRATE SHUSHAN |
| | * | |
| **THIS DOCUMENT APPLIES TO:** | * | **JURY TRIAL DEMANDED** |
| **Case No. 12-311** | * | |
| | * | |

## LIU'S OPPOSITION TO BP'S MOTION TO QUASH LIU'S SUBPOENA

Liberty International Underwriters, Inc. ("LIU") submits this Opposition to BP's Motion to Quash LIU's Subpoena. After requesting *four months* of extensions to respond to LIU's subpoena and without giving notice of its intent to seek Court intervention (or even speaking to LIU's counsel after February 22), BP has filed this motion to quash the subpoena in its entirety and has refused to produce a single document. The limited documents LIU seeks to discover – primarily settlement communications between Cameron and BP during the three-month period from October to December 2011 – are highly relevant to issues Cameron has raised concerning Cameron's and BP's intent in negotiating and finalizing their settlement. Cameron clearly has disclosed its intent to offer testimony, including from BP's Associate General Counsel, concerning topics such as "Cameron's agreements with BP concerning the Deepwater Horizon incident" and "Cameron's negotiations and settlement with BP concerning the Deepwater Horizon incident[.]" To prepare its defense to Cameron's claims, the Court should permit LIU to discover the documents sought. Accordingly, the Court should order BP to respond to LIU's subpoena and, if it seeks to withhold documents based on privilege, to produce a privilege log supporting its claim.

# I.    BACKGROUND

## A.    The Dispute Between LIU and Cameron

This insurance coverage dispute arises out of Cameron's claim for coverage for its $250 million settlement with BP in December 2011 of claims arising out of the Deepwater Horizon incident.  Before settling with BP, Cameron sought indemnity from Transocean under various contracts between the parties.  In these contracts, Transocean had agreed that if it was entitled to indemnity under any contract with its "customers" with respect to pollution, it would "provide [Cameron] with the benefit of such indemnity to the fullest extent possible."  Rec. Doc. No. 6287, at ¶¶ 34-35.  BP was one of Transocean's "customers" and had agreed in its Drilling Contract with Transocean to indemnify Transocean for compensatory damage claims asserted by third parties related to sub-surface pollution.  Thus, Cameron's indemnity claim against Transocean potentially flowed through to BP.  *See id.* at ¶ 42.  In the Cameron/BP settlement agreement, Cameron assigned to BP its indemnity claim against Transocean, as BP purportedly insisted.

LIU, one of Cameron's excess insurers, has declined to fund the portion of the settlement allegedly reaching its layer of coverage because, among other reasons, (1) LIU's policy states that it is excess of "any type of . . . indemnification or other mechanism by which an Insured arranges for funding of legal liabilities;" and (2) in the settlement, Cameron extinguished LIU's valuable right to recover any amount paid from Transocean (and ultimately BP) based on contractual indemnity.  LIU contends that Cameron's assignment of its indemnity rights to BP impaired LIU's subrogation rights, in violation of the policy, and forfeited coverage.

Cameron sued LIU in January 2012 seeking coverage for LIU's $50 million share of the BP settlement.[1]  In addition to its contract claim, Cameron has asserted bad faith claims based on, among other things, LIU's purported misrepresentation concerning "whether Cameron is entitled to indemnity for its losses associated with the Deepwater Horizon incident[.]"  Rec. Doc. No. 6287, at ¶ 86.  Cameron also claims that LIU "irresponsibly and unjustifiably h[eld] Cameron's settlement with BP hostage in order to avoid or reduce Liberty's payment obligations[.]"  *Id.*  LIU moved for judgment on the pleadings in May 2012.  With their briefing on the motion, the parties attached both the LIU Policy and the BP-Cameron settlement agreement.  *See* Rec. Doc. No. 6697-3.  The Court denied the motion in part, finding that to be excused from its coverage obligation based on Cameron's impairment of its subrogation rights, LIU must show that "Cameron released legally valid and enforceable indemnity claims against Transocean."  Rec. Doc. No. 7129, at p. 25.  The Court also found that Cameron's bad faith claims presented issues of fact for the jury.  *Id.* at p. 28.

In its pleadings and in discovery, Cameron has raised many issues concerning its settlement negotiations with BP and/or the parties' intent with respect to the BP/Cameron settlement, including at least the following:

- Cameron contends that *BP insisted* that Cameron waive its indemnity rights in connection with the settlement: "BP also made clear that it would not settle with Cameron unless . . . Cameron agreed to a complete waiver of any contractual indemnification claims Cameron might have against Transocean that might flow to BP[.]"  Rec. Doc. No. 6287, at ¶ 42, ¶ 53 ("Cameron's release of its indemnification claims was thus a crucial part of the settlement consideration that BP was seeking as part of the settlement.").

---

[1] Anticipating the coverage dispute with LIU, and demonstrating BP's direct interest in that dispute, the BP-Cameron settlement requires Cameron to litigate and/or settle any coverage dispute only on terms favorable to BP.  *See* BP-Cameron settlement, attached as Exh. A, at ¶ 4.6.  The agreement also requires BP to cooperate with Cameron and provide "reasonable and direct access to [its] respective personnel, employees, documents, business records and all other evidence in their possession, custody or control[.]"  *Id.* at ¶ 6.1(b).

- Cameron contends that *BP insisted* on finalizing the settlement by close of business on December 14, 2011, preventing Cameron from proceeding with the hearing on its pending motion for summary judgment concerning its right to indemnity against Transocean, which was scheduled for the next day. *Id.* at ¶ 48 ("BP, growing increasingly impatient, told Cameron that its settlement demand might increase significantly in the event a settlement could not be reached by the end of that day.").

- Cameron contends that it did not waive LIU's subrogation rights in the settlement. *See* Rec. Doc. No. 6697-2, at pp. 23-24. In connection with this point, Cameron's counsel questioned Jessica Rogin, one of LIU's employees involved with Cameron's claim, concerning whether she had ever spoken to the parties to the BP/Cameron settlement or could "guess as to [the parties'] intent with regard to the Cameron BP settlement[.]" J. Rogin Depo., attached as Exh. B, at 91:16-25. Cameron's counsel also asked Ms. Rogin to agree that she "wouldn't know the intent of the parties even had [she] read [the BP/Cameron settlement]." *Id.* at 94:17 to 96:13.

Supporting its claims concerning the parties' intent, Cameron has listed in its Rule 26 disclosures several Cameron and BP witnesses, including BP's Associate General Counsel (Jim Neath), to testify concerning "Cameron's agreements with BP concerning the Deepwater Horizon incident" and "Cameron's negotiations and settlement with BP concerning the Deepwater Horizon incident[.]" *See* Amended Rule 26 Disclosures, attached as Exh. C.

In addition to these specific issues Cameron has raised with respect to its negotiations with BP and the parties' intent, Cameron has maintained throughout this suit that its indemnity claim against Transocean (and ultimately BP) was weak and of little or no value. *See, e.g.,* Rec. Doc. No. 6697-2, at p. 20. Because Cameron was unlikely to prevail in this claim, Cameron apparently contends, the assignment of this claim to BP in the settlement did not harm LIU. *See id.* at p. 24, n.7 (suggesting that LIU's subrogation rights may have been of no value if Cameron was not entitled to indemnification). This directly contradicts the position Cameron took in its motion for summary judgment filed before the BP-Cameron settlement. *See* Rec. Doc. No. 4524. Consistent with its summary judgment briefing, Cameron likely represented to

BP in settlement negotiations that its indemnity claim was strong.  Such statements potentially support LIU's claims in this suit that the indemnity rights were valid and enforceable.

**B.**     **LIU's Subpoena to BP**

To explore the issues Cameron has raised concerning the parties' negotiations, and the meaning of the settlement agreement and the underlying indemnity agreements, on February 15, 2013, LIU issued a subpoena to BP seeking the following categories of documents:

- All documents and communications between [BP] and Cameron concerning the BP Settlement.

- All documents and communications regarding the negotiation, drafting, and execution of the BP settlement.

- All documents and communications regarding Cameron's claim for coverage for liabilities arising out of the Deepwater Horizon Incident.

- All documents and communications between you and Cameron concerning Cameron's indemnity claims against Transocean.

Rec. Doc. No. 10388-2.

Counsel for LIU conferred with BP's counsel in February concerning the subpoena.  While BP mentioned at that time that it objected to the subpoena's scope, it *never* stated that it would not produce a single document in response to the subpoena.  Believing that the parties ultimately could work through the issues, and understanding that the primary issue was timing because of BP's involvement in the Phase I trial, LIU generously offered to hold the subpoena in abeyance to accommodate BP's trial schedule.  *See* E-mail, attached as Exh. D. Following the Phase I trial, LIU again contacted BP on May 31, 2013 and asked it to respond to the subpoena.  *See id.*  BP asked if it could "respond" by June 12, and LIU agreed.  *See id.*  On June 12, BP requested an additional day to "respond," and LIU again agreed.  *See id.*  On June

13, without requesting a discovery conference or *ever* informing LIU that it did not intend to produce a single page, BP filed this motion.

## II.     ARGUMENT

**A.     Documents Related to the Negotiation of the BP/Cameron Settlement Are Highly Relevant.**

Under Rule 401, evidence is relevant if "it has *any tendency* to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401 (emphasis added). BP contends that this coverage dispute should be decided based solely on the LIU Policy and the BP-Cameron settlement agreement and that no other documents are relevant. BP's position ignores the Court's rulings to date. The Court has denied LIU's motion for judgment on the pleadings, finding that it *could not* resolve the dispute based solely on the pleadings, the LIU Policy, and the BP-Cameron settlement. Faced with this ruling, Cameron and LIU both have pursued discovery, including from third parties like Transocean, going well beyond these two contracts. This Court likewise has ordered LIU to produce documents extrinsic to these contracts, recognizing that they could be relevant to the issues in dispute. *See* Rec. Doc. Nos. 9845 and 10423. Documents reflecting BP and Cameron's settlement negotiations are *highly* relevant to the issues in dispute for at least three reasons.

First, consistent with settled law, BP concedes that settlement communications are relevant and potentially admissible *if* the parties' intent cannot be determined from the face of the BP-Cameron agreement. *See, e.g., Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332-33 (5th Cir. 1981). Here, Cameron has raised a significant issue concerning whether Cameron and BP intended that Cameron waive LIU's subrogation rights in the BP-Cameron settlement. Cameron has solicited testimony from Jessica Rogin, an LIU witness, concerning her

understanding of Cameron's and BP's intent and specifically suggested that, even if Ms. Rogin read the settlement document, she "wouldn't know the intent of the parties[.]" Exh. B, at 94:17 to 96:13. Cameron also intends to present testimony from several Cameron and BP witnesses concerning both "Cameron's agreements with BP concerning the Deepwater Horizon incident" and "Cameron's negotiations and settlement with BP concerning the Deepwater Horizon incident[.]" Exh. C. Under the BP-Cameron settlement agreement, BP has promised to cooperate with Cameron in making witnesses and evidence available. *See* Exh. A, at ¶ 6.1(b). Given Cameron's clear intent to rely on evidence outside of the BP-Cameron settlement agreement to prove the agreement's meaning and/or the parties' intent, LIU must have the opportunity to discover documents concerning the parties' settlement negotiations, in which their intent likely was expressed.

Completely apart from Cameron's contract claim, the settlement communications also potentially are relevant to Cameron's bad faith claim against LIU, a claim the Court already has held raises issues of fact for the jury to resolve. Cameron has alleged, essentially, that BP insisted on certain settlement terms / conditions and Cameron *had no choice* but to agree to these terms. These terms/conditions included, among other things, (1) assignment of Cameron's indemnity rights, and (2) completion of the settlement by December 14, 2011, *before* Cameron's motion for summary judgment could be heard. Because BP insisted on these terms, and Cameron faced "substantial danger" if it did not settle with BP, Cameron argues that LIU breached its obligations to Cameron by not agreeing to these terms. *See, e.g.,* Rec. Doc. No. 6287, at ¶ 43 ("Notwithstanding Liberty's knowledge that BP would not settle with Cameron unless claims against Transocean were waived, Liberty refused to agree that Cameron could waive them, thereby placing negotiations with BP at great risk."). The Court should permit LIU

7

to discover the parties' communications to determine whether these terms actually were non-negotiable, as Cameron contends, and/or what other options Cameron may have had.

Finally, the BP-Cameron settlement communications are relevant for another reason not directly related to the interpretation of the BP-Cameron settlement document. To prove impairment of its subrogation rights, the Court has held that LIU must show that Cameron's indemnity claim against Transocean was valid and enforceable. Rec. Doc. No. 7129, at p. 25. This will require the Court to interpret the underlying indemnity agreements. While LIU contends that the indemnity agreements were facially valid and enforceable, Cameron and or the Court may find otherwise.[2] Departing from its representations to the Court in its 2011 summary judgment motion, Cameron has argued in this suit that its indemnity rights were uncertain or unclear, citing Transocean's initial denial of Cameron's indemnity claim. Rec. Doc. No. 6287, at ¶¶ 36-38. In settlement negotiations with BP, Cameron almost certainly made statements concerning the strength of its indemnity claims that undercut its present position that the claims were weak. To the extent the Court decides to look beyond the indemnity agreements themselves to determine the parties' intent, such statements by Cameron constitute admissions and are highly relevant. For these reasons, the Court should find that LIU's document requests seek information highly relevant to the issues raised in the Cameron-LIU dispute and should require BP to comply with the subpoena.

**B.      The Existing Protective Order Adequately Protects the Confidentiality of BP's Settlement Communications with Cameron.**

BP claims that the settlement communications LIU seeks are protected from disclosure because discovery of such communications may have a chilling effect on future

---

[2] Cameron specifically has stated that whether LIU's subrogation rights were valuable is a "question of fact" and not of law. Rec. Doc. No. 6697-2, at p. 24, n. 7.

settlement efforts. Several courts have refused to recognize the supposed settlement-negotiation privilege BP invokes. *See, e.g., United States v. Dish Network, LLC*, No. 09-3073, 2013 WL 1876419, at *3 (C.D. Ill. 2013) ("[N]o generally recognized settlement-negotiation privilege exists."); *Pactiv Corp. v. Multisorb Tech., Inc.*, No. 10 C 461, 2012 WL 1831517, at *5 ("This court finds no discovery privilege exists regarding settlement negotiations."); *In re subpoena issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201, 209-12 (D.D.C. 2005) (declining to recognize federal settlement privilege and observing that the current legal landscape "does not reflect a consensus of support for a settlement privilege in federal court"). While BP concedes that the Fifth Circuit "has not explicitly ruled on the issue[,]" BP nevertheless asks the Court to recognize this new privilege, shielding its settlement communications with Cameron from discovery. Rec. Doc. No. 10388, at p. 12. Absent explicit guidance from the Fifth Circuit, and considering LIU's need for the documents as discussed above, the Court should not take this radical step. *See, e.g., Pactiv*, 2012 WL 1831517, at *5 ("[N]ew federal privileges are not to be created by the courts lightly. Liberal discovery is the general rule."); *In re subpoena issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d at 208 ("The federal courts do not enjoy unbridled authority to define new privileges in discovery whenever they see fit.").

        Even if the Court agrees with BP's contention that the settlement communications deserve some protection, BP utterly has failed to explain why the Court's pretrial order 13, which LIU provided to BP with the subpoena, does not adequately address its concerns. The order specifies a procedure by which non-parties can designate documents "confidential" or "highly confidential." Documents so designated may be used only by certain persons and for limited purposes. After the litigation ends, confidential documents must be destroyed or returned. Given these measures the Court already has implemented to ensure confidentiality of

878091_1

sensitive information, of which BP was informed, BP cannot show that the disclosure of its settlement communications with Cameron would result in any chilling effect.

## C.   LIU Is Not Seeking Privileged Communications.

BP also complains that LIU's subpoena "on its face seeks privileged communications immune from discovery."  LIU agrees that the document requests as written potentially implicate privileged communications and would have welcomed the opportunity to discuss this issue with BP, which it was not given.  LIU hereby agrees that it is *not* seeking documents reflecting BP's communications with its in-house or outside counsel and *only* seeks BP's communications with third parties including Cameron.  To the extent BP claims its communications with third parties are privileged, BP should produce a privilege log to support this claim, which it has not done.  Rule 45(d)(2)(A) requires a party withholding subpoenaed information based on a privilege claim to "expressly make the claim" and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  FED. R. CIV. P. 45(d)(2)(A).  This Court's Pretrial Order 14 may also require BP to supply a privilege log: "Any document falling within the scope of any . . . subpoena that is withheld on the basis of a claim of attorney-client privilege, work product, or any other claim of privilege or immunity from discovery is to be identified by the Producing Party in a privilege log[.]"[3]

---

[3] While PTO 14 exempts certain communications after April 2010 from the privilege log requirement, Cameron and LIU have agreed that this exemption does not necessarily apply in the context of the Cameron-LIU dispute, which did not arise until late 2011.  Both Cameron and LIU have produced extensive privilege logs of post-April 2010 documents to support their privilege claims.   Third-party Marsh, Cameron's insurance broker, also has logged its privileged documents with Cameron's assistance.

**D.     The Subpoena Is Not Unduly Burdensome.**

BP contends that LIU's subpoena is "unduly burdensome," because it seeks documents accessible from Cameron, a party.  As the moving party, BP bears the burden to show that compliance with the subpoena would be unreasonable and oppressive, and modification of a subpoena is preferable to quashing it outright.  *See Wiwa v. Royal Dutch Petro. Co.*, 392 F.3d 812, 818 (5th Cir. 2004).  Contrary to BP's contention, there simply is no rule that a party cannot seek non-party discovery of documents likely to be in a party's possession.  *Viacom Intern., Inc. v. YouTube, Inc.*, No. 08-80129, 2008 WL 3876142, at *3 (N.D. Cal. Aug. 18, 2008).  In fact, courts have held that "production from a third party will be compelled in the face of an argument that the 'same' documents could be obtained from a party, because there is reason to believe that the files of the third party may contain different versions of documents, additional material, or perhaps, significant omissions."  *Id.* (quoting *Visto Corp. v. Smartner Info. Sys., Ltd*, No. 06-80339, 2007 WL 218771, at *3 (N.D. Cal. Jan. 29, 2007)); *see also Software Rights Archive, LLC v. Google, Inc.*, No. 07-511, 2009 WL 1438249, at *3 (D. Del. May 21, 2009) (refusing to deny motion to compel on the basis of allegedly overlapping discovery efforts).  Indeed, by "allowing for discovery from both the party and non-party, completeness of discovery is more likely to be achieved."  *Id.* at *2.  Therefore, a non-party can be ordered to produce documents from third parties, even though those same documents may be in possession of a non-party. *Viacom*, 2008 WL 3876142 at *3.

LIU cannot ensure it has all relevant documents and communications relating to the BP-Cameron settlement negotiations without reviewing all documents in BP's control.  BP may have different versions of these documents, and it may very well have documents or communications that Cameron failed to produce.  In other words, Liberty must receive all the

878091_1

documents requested by BP so that it may have "completeness of discovery."  On the other hand, BP completely has failed to show how complying with LIU's subpoena would be unduly burdensome.  Liberty's subpoena requests communications primarily from a three-month time period: October 2011 to December 2011, a limited time span.  *See, e.g., Wiwa*, 392 F.3d at 818 (5th Cir. 2004) (whether a subpoena presents an undue burden depends in part on the time period covered by the request).   BP simply has not shown how producing three months of communications would be unduly burdensome or expensive.  Similarly situated third parties have not objected to producing similar documents to LIU in this matter.  For example, Transocean recently produced more than 1,700 pages of documents to LIU.  Considering LIU's demonstrated need for these highly relevant documents, the Court should reject BP's unsupported contention that the subpoena presents an undue burden.

## III.    CONCLUSION

Despite asking for and receiving four months of extensions to respond to LIU's subpoena, and without ever suggesting that it planned to seek Court intervention, BP has moved to quash LIU's subpoena in its entirety.  As LIU has shown, the documents LIU seeks are highly relevant to issues Cameron has raised concerning Cameron's and BP's intent in negotiating and executing their settlement agreement.  The documents also potentially relate to the issue of whether Cameron's indemnity claims were "valid and enforceable."  Although it was not given the opportunity to inform BP before this motion was filed, LIU agrees that it is not seeking privileged communications between BP and its counsel.  Finally, BP utterly has failed to meet its burden to show that LIU's subpoena is unduly burdensome or oppressive.  Accordingly, the Court should order BP to respond to LIU's subpoena and produce the documents sought.  To the

extent BP withholds responsive documents based on a privilege claim, the Court also should order BP to produce a privilege log.

Respectfully submitted,

*/s/ Judy Y. Barrasso*
Judy Y. Barrasso, 2814
Celeste Coco-Ewing, 25002
BARRASSO USDIN KUPPERMAN
   FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana  70112
504.589.9700 (Telephone)
504.589.9701 (Facsimile)

and

Christopher W. Martin, PRO HAC VICE
Federal I.D. 13515
Gary L. Pate, PRO HAC VICE
Federal I.D. 29713
808 Travis, Suite 1800
Houston, Texas 77002
713-632-1700 (Telephone)
713-222-0101 (Facsimile)

Attorneys for Liberty International
   Underwriters, Inc.

878091_1

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 25th day of June, 2013.

*/s/ Judy Y. Barrasso*

*873210_1*

878091_1