# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C.  20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

June 14, 2013

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

   Re: MDL 2179 — Capping Stack

Dear Judge Shushan:

  BP writes in response to Transocean's recent request that the Court release to Transocean the disassembled Capping Stack parts currently stored in the Evidence Yard at Michoud.

  Transocean recently stated that Transocean needed to use the Capping Stack immediately to ease urgent shortages of capping-type equipment in the Gulf of Mexico faced by Transocean's drilling operations.  BP strongly supports efforts by operators in the Gulf of Mexico to maintain ready capping-type equipment capable of responding to deepwater emergencies.

  But BP disagrees that the disassembled pieces of capping equipment at Michoud would address any immediate needs for ready-to-use capping equipment in the Gulf of Mexico.

  *First*, all of the evidence adduced to date by BP and Transocean indicates that BP owns the Capping Stack.  If the Court orders that the Capping Stack be released to the parties at this time, the Capping Stack should be released to BP.

  As the Court knows, BP and Transocean have engaged in discussions about ownership of the Capping Stack on and off for over a year.  In the course of those discussions about Capping Stack's ownership, BP has provided Transocean copies of paid invoices showing that BP had paid for the single and double ram components of the Capping Stack, the bulk of the parts associated with the WOM gate valves, and all of the Capping Stack's control systems.  We re-attach to this letter copies of these invoices, which show that the Capping Stack belongs to BP.

  To be sure, BP has not been able to locate paid invoices for all Capping Stack components.  As to the Capping Stack components for which BP has not located invoices,

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
June 14, 2013
Page 2

primarily various flanges and connectors, BP has asked Transocean to produce paid invoices to prove its ownership claims. Nonetheless, Transocean has to date produced no paid invoices for any Capping Stack components.

Accordingly, to the extent that the Court wishes to determine at this time the ownership of the Capping Stack, BP respectfully requests that the Court rule that it belongs to BP — the party that has proved ownership of its major components and the only party that has proved ownership of *any* of its components.

*Second*, even if over time Transocean could produce evidence of ownership of some parts of the Capping Stack, the Capping Stack still would not provide "immediate" relief for anyone's offshore capping needs.

The Capping Stack is today entirely disassembled. It is no longer a "stack" at all, but a collection of disassembled components and parts. The key single and double ram components as well as various flanges and connectors have been sitting outside at Michoud for over three years and have never been preserved or maintained. Upon release from Michoud, the Capping Stack components will need to be reconditioned and recertified.

In present market conditions, BP estimates that the reconditioning and recertification process would require twelve to fifteen months or more, depending the condition of the components and on how many other BOP stacks are sitting in line ahead of these items at Hydril, the Capping Stack's OEM that would presumably perform the reconditioning and recertification work. BP estimates that that the assembly of a working, reconditioned, recertified, ready-to-use capping stack from the Michoud parts would be at least one year — possibly two years — down the road.

*Third*, the Capping Stack remains important piece of evidence for the Phase 2 trial and hence an immediate release would be premature. As the Court will recall, parties and experts had the opportunity to inspect the BOP throughout the Phase 1 trial. And parties and experts should be afforded similar opportunities to inspect Capping Stack components through the conclusion of the Phase 2 trial, especially since there is no possibility of the Capping Stack being put to productive use in the meantime.

Assuming the Court rules that the Capping Stack belongs to BP, BP is willing to retain it at Michoud through the Phase 2 trial. During this time, BP would not seek to remove any components whose ownership Transocean may wish to contest. (Note in this regard that, although BP has raised the question of the timing of the removal of the BOP from the Michoud Dock so that NASA can begin to adapt the dock for its own purposes, the Capping Stack components now sit in the Michoud Evidence yard, which NASA does not need for other

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
June 14, 2013
Page 3

purposes.)  In sum, there is no logistical or practical reason not to maintain the *status quo* through the Phase 2 trial.

* * * *

BP looks forward to discussing next steps in determining the disposition of the Capping Stack at the next Working Group Conference.

Sincerely,

Robert R. Gasaway

Attachments

cc (via electronic mail):

David A. Baay
David Grassmick
MDL Counsel