UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * | MDL NO. 2179 "J"(1) <br><br> JUDGE BARBIER <br><br> MAGISTRATE SHUSHAN |
| THIS DOCUMENT APPLIES TO: <br> Case No. 12-311 | * * * | **JURY TRIAL DEMANDED** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**LIBERTY INTERNATIONAL UNDERWRITERS, INC.'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO COMPEL THE MARSH DOCUMENTS[1]**

Cameron has not and cannot dispute that the Marsh documents are relevant. Indeed, they are probative of numerous critical issues, including construction of the Other Insurance and defense costs provisions and Marsh's knowledge of the provisions. Denying Liberty access to all the documents based on broad unsupported arguments is improper and prejudicial to Liberty.

**A.      The Attorney-Client and/or "Insurance Broker" Privilege Do Not Apply.**

From the attorney-client privilege, Cameron improperly seeks to construct an impenetrable "insurance broker" privilege to shield Marsh Documents from discovery.[2] But, no such privilege has ever been codified in Texas law. Regardless, the cases Cameron cites for the supposed privilege to apply *require* that Marsh "acted as Cameron's representative" for the "purpose of facilitating the rendition of professional legal services" for Cameron. Cam. Br. at 4-7. Cameron has not and cannot establish that every single communication with Marsh fits that

---

[1] Cameron wrongly claims the Motion was filed "prematurely." Cam. Br. at 1. Only after Liberty filed its Motion did Cameron produce additional documents at issue. And, the issues involving Marsh remain. Liberty does not seek communications drafted by the Willkie firm or by in-house counsel, Lemmer or Eastman.

[2] Consistent with this tactic, although Marsh must have internal emails about the Cameron claim, Marsh failed to produce a single internal communication.

1

878384_1

bill. In fact, the Agreement reveals Marsh performed a swath of routine business services for Cameron. Cam. Ex. 2, App. A at ¶2 (*e.g.*, "promptly respond to . . . questions related to coverage").[3] In addition, after Liberty's counsel stated Liberty's coverage position on November 7, 2011,[4] Marsh, which may be potentially liable for procuring the policy, immediately engaged in myriad communications[5] with Cameron where, given its suddenly adverse position,[6] it likely acted to protect its own interest and relationship with Cameron, and *not* solely as a representative for Cameron's legal services.[7] Cam. Br. at 4-5.[8] Indeed, the inclusion of Rusty Lee, who was involved in procuring the policy, suggests these documents are not about facilitating rendition of legal services and should be produced.

Moreover, Cameron has withheld numerous Marsh documents simply because a lawyer – sometimes only in-house counsel[9] – is copied. Copying an attorney on a document, however,

---

[3] Liberty is entitled to all routine business communications. Cameron offers no support that it "has already produced its routine business communications with Marsh in their entirety." Cam. Br. at 7.

[4] Letter from Paul Koepff to Cameron, attached as Exh. "A."

[5] *See, e.g.*, Cam. Ex. 3, Nos. 508, 513, 514, 515, 516, 517 *et seq.*, including but not limited to November 8, 2011 emails from Cameron and Marsh executives Charles Sledge and Stephen Fraser, among others.

[6] Notably, Cameron's affidavit does *not* state there never was and never has been any adversity between them. It simply states there currently "*is* no adversity between Cameron and Marsh." Cam. Ex. 1 at ¶ 8 (emphasis added).

[7] Indeed, the affidavit offered by Cameron nowhere states much less establishes that Marsh functioned "as Cameron's representative" in *each and every* communication for the "purpose of facilitating the rendition of professional legal services" for Cameron. Cam. Ex. 1. Moreover, that Cameron has not made a formal demand on Marsh does not mean the companies' interests have at all times been aligned. Cam. Br. at 4-5, 8; Cam. Ex. 4.

[8] And in so doing, Marsh was a potentially adverse third party to communications involving Cameron and its counsel, rendering such communications discoverable. *Pic Grp., Inc. v. LandCoast Insulation, Inc.*, 2010 WL 1741703, at *2 (S.D. Miss. Apr. 28, 2010) ("in order for the communications to be privileged, LandCoast must establish that they were made without the presence of a third party") (citing *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993) (party waives attorney-client privilege when it voluntarily discloses privileged communications to third party)).

[9] *See, e.g.*, Cam. Ex. 2, Nos. CIC 3341-42 (October 31, 2011 email from Marsh's Kenny to Cameron's Black, copying in-house lawyer Eastman). The majority of the privilege log contains communications involving Marsh and Cameron executives and copying Cameron's counsel. Cameron apparently withheld all such documents.

does not necessarily make it privileged. *E.g., In re Avantel*, 343 F.3d 311, 321 (5th Cir. 2003) (merely including attorney does not render document privileged); *In re Vioxx*, 501 F. Supp. 2d 789, 805 (E.D. La. 2007) ("When, for example, Merck simultaneously sends communications to both lawyers and non-lawyers, it usually cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes.").[10] Cameron must prove *every* Marsh Document was made to seek or render legal advice. *See U.S. v. Impastato*, 2007 WL 2463310, at *2 (E.D. La. Aug. 23, 2007) (citing *U.S. v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978)); *U.S. v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) ("privilege must be specifically asserted with respect to particular documents").[11]

Cameron cannot do so. In fact, in its opposition brief, it does not explain why *any* particular document is privileged,[12] and instead relies on broad, largely unsupported statements for wholesale withholding of every Marsh document.[13] That is woefully inadequate, particularly where, as here, in-house and other Cameron counsel admittedly have intimate factual knowledge and some are listed as potential witnesses.[14] *Hasty v. Lockheed Martin*, 1999 WL 600322, at *2

---

[10] *See also U.S. v. Freeman*, 619 F.2d 1112, 1119-20 (5th Cir. 1980) ("attorney's involvement in, or recommendation of, a transaction does not place a cloak of secrecy around all the incidents of such a transaction"); *Giardina v. Ruth U. Fertel, Inc.*, 2001 WL 1658183, at *2 (E.D. La. Dec. 21, 2001) (document sent from one corporate officer to another not privileged simply because also sent to counsel).

[11] Privilege is "an obstacle to truthseeking," and must "be construed narrowly." *In re LTV Secs. Litig.*, 89 F.R.D. 595, 606 (N.D. Tex. 1981) (citing *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970)). Courts "should be aware of the potential for abuse of the privilege." *Spinello Cos. v. Hartford Fire Ins. Co.*, 2008 WL 2775643, *2 (D.N.J. July 14, 2008). Indeed, "blanket claims of privilege are disfavored." *Nguyen v. Excel Corp.* 197 F.3d 200, 206 n.16 (5th Cir. 1999).

[12] *See In re Vioxx*, 501 F. Supp. 2d at 807 ("Merck cannot reasonably expect judicial officers to make this assessment for it on either a document-by-document basis or universally through a presumption that everything in-house counsel comments upon is legal advice.").

[13] Cameron claims, for example, that Liberty is "seeking the legal advice and litigation strategy of Cameron's counsel." Cam. Br. at 1. That claim is unsupported and totally false.

[14] *See* Cam. Ex. 5, Int. Resp. to Nos. 1 and 14 (listing in-house counsel Brad Eastman and William Lemmer as persons with knowledge); Cam. Am. Rule 26 Discl., attached as Exh. "B" (listing Cameron lawyers

(E.D. La. Aug. 6, 1999) ("attorney-client privilege is blurred when examining the role of an in-house counsel. . . . [W]hen in-house counsel acts as a business advisor or addresses business issues, then the attorney-client privilege is not invoked.").[15]  And, contrary to Cameron's position, the fact that settlement negotiations may have been a subject does not mandate a finding of privilege, especially here where the settlement negotiations are the heart of the case.[16] Cameron has even gone so far as to claim privilege over approximately 50 Marsh documents where *no* attorney is even listed.[17] *See In re Tetra Tech. Inc. Secs. Litig.*, 2010 WL 1335431, at *5 (S.D. Tex. Apr. 5, 2010) ("must involve an attorney" to be privileged).  Liberty is entitled to discover the facts to defend itself,[18] and respectfully requests that the Court at least conduct an *in camera* inspection.

B.   **Cameron's New Position under the Work-Product Doctrine Should Be Rejected.**

The work-product doctrine does not "shade[] all materials prepared by a lawyer, or agent of the client. . .  Excluded from the work-product doctrine are materials assembled in the ordinary course of business. . . ." *American Med. Sys. v. National Union Fire Ins.*, 1999 WL

---

David Beck and David Jones and in-house counsel Brad Eastman, among other lawyers, as persons with knowledge).

[15] *See also Brookshire Bros. Holdings, Inc. v. Total Const., Inc.*, 2006 WL 845731, at *2 (W.D. La. Mar. 30, 2006) ("more difficult to define the scope of the privilege . . . because in-house counsel has an increased level of participation in the day to day operations") (citing *Upjohn Co. v. U.S.*, 449 U.S. 383 (1981)).

[16] *See, e.g., U.S. v. Dish Network*, 2013 WL 1876419, at *3 (C.D. Ill. May 6, 2013) ("[N]o generally recognized settlement-negotiation privilege exists."); *In re Comm. Fut.*, 370 F. Supp. 2d 201, 209-12 (D.D.C. 2005) (no "consensus of support for a settlement privilege in federal court").

[17] *See, e.g.*, Cam. Ex. 3, Nos. 231, 853, 638, 1574, 956, 957, 959, 1103, 1104, 1105, 1114, 1115, 1116, 1121, 1122, 1123, 1124, 1125, 1126 (with attached 1127), 1128, 1129, 1130, 1131, 1132, 1134, 450, 453, 460, 466, 477, 478, 542, 543, 548, 549, 568, 612, 626, 639, 791, CIC 20956-58, CIC 21033-38, CIC 9028-34, CIC 9035-41, CIC 9042-50 *et seq.*

[18] *See Upjohn*, 499 U.S. at 395 ("Pre-existing facts that underlie the client's confidential communications, whether oral or written, are not privileged simply because the client disclosed them to an attorney for the purpose of obtaining legal services.").

4

816300, at * 2 (Oct. 7, 1999) (citing *U.S. v. El Paso Co.*, 682 F.2d 530 (5th Cir.1982)). The work product doctrine does not shield documents prepared by or for a non-party, such as the Marsh authored documents.[19] Cameron claims it was "anticipating litigation" with Liberty in October 2011, and thus all communications with Marsh during and after that time are privileged.[20] Cam. Br. at 8-9. This directly contradicts Cameron's earlier position that it did not anticipate litigation until November 7, 2011.[21] All documents before November 7, 2011 and not otherwise privileged are discoverable.

C. **Cameron's "Supplemental Authority" is Distinguishable.**

The New York trial court's opinion in *TC Ravenswood, LLC, v. National Union Fire Insurance Co.*, No. 400759/11, applying New York law, does not support Cameron's privilege claims. First, in *TransCanada*, a blanket withholding of all documents did not occur as the insured only claimed privilege over 47 of 207 Marsh documents. Second, TransCanada apparently hired Marsh specifically for the purpose of assisting with its insurance claim. Here, in contrast, Marsh was hired years before the claim arose to perform a litany of services and may face liability if the policies did not meet Cameron's specifications. Thus, the communications are not presumptively for the "rendition of professional legal services".

---

[19]    *See, e.g., Johnson v. Standex Int'l Corp.*, 153 F.R.D. 80, 84 (E.D. Va. 1994) (work product doctrine did not apply to report created by non-party). Cameron previously argued that only documents prepared by an attorney constitute work product. *See* Feb. 19, 2012 Letter, attached as Exh. C.

[20]    *See, e.g.*, Cam. Ex. 3, Nos. 330, 331, 422, 425, CIC 3341-42 *et seq.*

[21]    *See* May 17, 2013 Letter, attached as Exh. "D."

5

Respectfully submitted,

/s/ Judy Y. Barrasso
Judy Y. Barrasso, 2814
Celeste Coco-Ewing, 25002
BARRASSO USDIN KUPPERMAN
 FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
504.589.9700 (Telephone)
504.589.9701 (Facsimile)

And

Christopher W. Martin, PRO HAC VICE
Federal I.D. 13515
Gary L. Pate, PRO HAC VICE
Federal I.D. 29713
808 Travis, Suite 1800
Houston, Texas 77002
713-632-1700 (Telephone)
713-222-0101 (Facsimile)

Attorneys for Liberty International
 Underwriters, Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the brief has been served on All Counsel by electronically uploading it to Lexis Nexis File & Serve pursuant to Pretrial Order No. 12, and that it was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 28th day of June, 2013.

/s/ Judy Y. Barrasso

878384_1