

CLYDE&CO
US LLP

The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: 212 710 3900
Facsimile: 212 710 3950
www.clydeco.us
Paul.Koepff@clydeco.us

November 7, 2011

Brad Eastman
Vice President
Deputy General Counsel
Cameron International Corporation
1333 West Loop South, Suite 1700
Houston, TX 77027
Brad.eastmand@c-a-m.com

Re:
Policy Number:     **LQ1B71198583046**
Insured:           **Cameron International Corporation**
Incident:          ***Deepwater Horizon* Explosion and Fire**
Date/Incident:     **April 10, 2010**

Dear Brad:

On behalf of Liberty Insurance Underwriters Inc. ("LIU"), we are writing to set forth its position in connection with the request made on November 4, 2011 by Cameron International Corporation ("Cameron") that (1) LIU consent, and/or waive any objections which it has, to the non-financial terms in a draft settlement agreement being demanded by BP Exploration & Production, Inc. ("BP"), and (2) should Cameron need such, LIU would agree to pay its $50 million limits.

As explained below, LIU does not consent to any non-financial term pursuant to which its subrogation rights would be impaired.  In the latest draft of the settlement agreement sent by BP to Cameron and forwarded to LIU, there are several terms that would impair LIU's subrogation rights, including in particular paragraphs 4.2, 4.3, and 4.5, where Cameron would transfer to BP Cameron's rights to contractual indemnity from Transocean Corporation ("Transocean"), Cameron would transfer any other claims which it had against Transocean, and Cameron would

Clyde & Co US LLP is a Delaware limited liability partnership with offices in New Jersey, New York and San Francisco.
Clyde & Co US LLP is affiliated with Clyde & Co LLP, a limited liability partnership registered in England and Wales.
593615v3



EXHIBIT
4



Brad Eastman
November 7, 2011
Page 2

transfer, waive and/or release subrogation claims which its insurers had against Transocean or

BP. As you know, when it was first advised of these non-financial terms, in various conference

calls and at the meeting with Cameron and its insurers in Bermuda, LIU objected to such non-

financial terms. LIU continues to object to such non-financial terms.

LIU notes that Cameron contends its insurers, including LIU, have supposedly waived

their subrogation rights and claims as a result of a certain provision in the contract between

Cameron and Transocean. LIU does not agree it has waived any subrogation rights or claims

as against Transocean with respect to Cameron's contractual right to be indemnified or any

contribution claims against BP. In this regard, LIU agrees with the factual and legal analysis

that there was no pre-loss waiver of subrogation rights and claims that is set forth in the

November 1, 2011 letter sent by ACE American and ACE Bermuda to Cameron.

Moreover, LIU declines to offer its policy limits for the following additional reason. The

LIU policy has the following Other Insurance provision:

> If other insurance applies to a "loss" that is also covered by this
> policy, this policy will apply excess of such other insurance.
> Nothing herein will be construed to make this policy subject to the
> definitions, terms, conditions and exclusions of such other
> insurance. However, this provision will not apply if the other
> insurance is specifically written to be excess of this policy.
>
> Other insurance includes any type of self-insurance,
> indemnification or other mechanism by which an Insured arranges
> for funding of legal liabilities.

As the above language clearly provides, the LIU policy is excess not just of the $3M SIR

and the limits of the underlying policies of Illinois National ($25M limits), ACE American

Insurance ($25M excess of $25M), and XLIC ($50M excess of $50M), but it is also excess of

the contractual indemnity provided by Transocean to Cameron. The Master Service Agreement

between Cameron and Transocean clearly provides a contractual indemnity pursuant to which

CLYDE&CO
US LLP

Brad Eastman
November 7, 2011
Page 3

Cameron arranged for the funding of its legal liabilities, and thus the LIU policy is excess of that contractual indemnity, within the meaning of the above Other Insurance provision.

LIU understands that Cameron believes there may be "uncertainties" with respect to its contractual right to be indemnified by Transocean, however, that does not negate the fact that Cameron has a contractual right to be indemnified by Transocean. LIU believes that until a court determines that Cameron is not entitled to contractual indemnity, the LIU policy is excess of Cameron's contractual right to be indemnified by Transocean. In this regard, within the last few days, Transocean has filed a motion for partial summary judgment seeking a declaration that BP should indemnify it. LIU urges Cameron to submit appropriate papers in support of this motion.

LIU has no obligation to indemnify unless both underlying limits and Transocean's contractual indemnity to Cameron have been exhausted. At the present time, such exhaustion has not happened.

Therefore, for the reasons set forth above, LIU would reject Cameron's request that LIU offer its $50M policy limits. LIU is not obligated to contribute its policy limits where Cameron has impaired or will be impairing LIU's subrogation rights and claims against Transocean and/or BP and/or all underlying limits and Other Insurance, are not exhausted.

LIU continues to reserve all rights which it has previously reserved, as well as all rights it has under the LIU policy, at law, and in equity.

Sincerely,

Paul R. Koepff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the | * | |
| GULF OF MEXICO, on | * | SECTION J |
| APRIL 20, 2010 | * | |
| | * | JUDGE BARBIER |
| **THIS PLEADING APPLIES TO:** | * | MAG. JUDGE SHUSHAN |
| No. 12-311 | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### AMENDED INITIAL DISCLOSURES OF PLAINTIFF
### CAMERON INTERNATIONAL CORPORATION
### <u>PURSUANT TO RULE 26(a)(1)</u>

Plaintiff Cameron International Corporation ("Cameron"), by and through its undersigned counsel, pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, hereby provides the following amended initial disclosures. These amended initial disclosures are based on the information presently available to Cameron, and Cameron reserves the right to further amend or supplement them.

A.    <u>Disclosure Pursuant to Rule 26(a)(1)(A)(i)</u>

Based on information reasonably available at this time, Cameron believes that the following individuals may have discoverable information (subject to Cameron's reservation of all rights under attorney-client privilege, the attorney work product doctrine, and any other privileges or immunity from disclosure, and the requirement that any current or former Cameron employees are contacted only through undersigned counsel) that Cameron may use to support claims or defenses raised in the above-captioned action:



EXHIBIT
B

| Name | Subject(s) |
|---|---|
| Jeff Trimarchi<br>Vice President, Casualty Claims<br>ACE Bermuda Insurance Ltd.<br>17 Woodbourne Avenue<br>Hamilton HM 08 Bermuda<br>(441) 295-5200 | Cameron's Deepwater Horizon Insurance;<br>Cameron's negotiations and settlement with BP<br>relating to the Deepwater Horizon incident |
| Miriam Mosseri<br>Claims Specialist<br>ACE Excess Casualty<br>10 Exchange Place, 9th Floor<br>Jersey City, NJ 07302<br>(201) 356-5109 | Cameron's Deepwater Horizon Insurance;<br>Cameron's negotiations and settlement with BP<br>relating to the Deepwater Horizon incident |
| Kevin Williams<br>Underwriter & Claims Manager<br>Argo Re<br>Argo House, 110 Pitts Bay Rd.<br>Pembroke HM 08, Bermuda<br>(441) 296-5858 | Cameron's Deepwater Horizon Insurance;<br>decision not to invoke Liberty's "other insurance"<br>provision; Cameron's negotiations and settlement<br>with BP relating to the Deepwater Horizon<br>incident |
| David Beck<br>Beck, Redden & Secrest, L.L.P.<br>One Houston Center<br>1221 McKinney Street, Suite 4500<br>Houston, Texas 77010<br>(713) 951-3700 | Insurance policies issued by Liberty to Cameron<br>("Liberty Policies"); Cameron's Deepwater<br>Horizon Insurance; Liberty's denial and/or<br>rejection of Cameron's insurance claims related to<br>the Deepwater Horizon incident; Cameron's<br>negotiations and settlement with BP relating to<br>the Deepwater Horizon incident; Cameron's<br>claims against Transocean |
| David Jones<br>Beck, Redden & Secrest, L.L.P.<br>One Houston Center<br>1221 McKinney Street, Suite 4500<br>Houston, Texas 77010<br>(713) 951-3700 | Liberty Policies; Cameron's Deepwater Horizon<br>Insurance; Liberty's denial and/or rejection of<br>Cameron's insurance claims related to the<br>Deepwater Horizon incident; Cameron's<br>negotiations and settlement with BP relating to<br>the Deepwater Horizon incident; Cameron's<br>claims against Transocean |
| Jim Neath<br>Associate General Counsel<br>BP America Inc.<br>501 Westlake Park Blvd.<br>Houston, TX 77079<br>(281) 366-5815 | Cameron's agreements with BP relating to the<br>Deepwater Horizon incident; Cameron's<br>negotiations and settlement with BP relating to<br>the Deepwater Horizon incident |

| Name | Subject(s) |
|---|---|
| Anthony Black<br>Risk Manager<br>Cameron<br>c/o  Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>(212) 728-8000 | Liberty Policies; Cameron's Deepwater Horizon Insurance; Liberty's denial and/or rejection of Cameron's insurance claims related to the Deepwater Horizon incident; Cameron's negotiations and settlement with BP relating to the Deepwater Horizon incident |
| Brad Eastman<br>Vice President, Deputy General Counsel<br>Cameron<br>c/o  Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>(212) 728-8000 | Liberty Policies; Cameron's Deepwater Horizon Insurance; Liberty's denial and/or rejection of Cameron's insurance claims related to the Deepwater Horizon incident; Cameron's negotiations and settlement with BP relating to the Deepwater Horizon incident; Cameron's claims against Transocean |
| Bruce Himmelreich<br>Associate General Counsel<br>Cameron<br>c/o  Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>(212) 728-8000 | Cameron's contractual indemnities with Transocean |
| Grace Holmes<br>Vice President, Corporate Secretary & Chief Governance Officer<br>Cameron<br>c/o  Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>(212) 728-8000 | Cameron's communications with its insurers related to Cameron's claim for coverage for liabilities arising from the Deepwater Horizon incident |
| Jack Moore<br>CEO<br>Cameron<br>c/o  Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>(212) 728-8000 | Liberty's denial and/or rejection of Cameron's insurance claims related to the Deepwater Horizon incident; Cameron's negotiations and settlement with BP relating to the Deepwater Horizon incident |

| Name | Subject(s) |
|---|---|
| Charles Sledge<br>Senior Vice President, Chief Financial Officer<br>Cameron<br>c/o Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>(212) 728-8000 | Liberty Policies; Cameron's Deepwater Horizon Insurance; Liberty's denial and/or rejection of Cameron's insurance claims related to the Deepwater Horizon incident |
| Veronica Shieves<br>Senior Legal Assistant<br>Cameron<br>c/o Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>(212) 728-8000 | Cameron's cooperation with Liberty's investigation relating to Cameron's claim for coverage arising out of the Deepwater Horizon incident |
| Angela Temple<br>Senior Risk Management Analyst<br>Cameron<br>c/o Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>(212) 728-8000 | Liberty Policies; Cameron's Deepwater Horizon Insurance; Liberty's denial and/or rejection of Cameron's insurance claims related to the Deepwater Horizon incident |
| Patrick Hughes<br>Account Specialist<br>Chartis<br>101 Hudson Street, 30th Floor<br>Jersey City, NJ 07302<br>(201) 631-4366 | Cameron's Deepwater Horizon Insurance; Cameron's insurance coverage for defense costs related to the Deepwater Horizon incident; Liberty's denial and/or rejection of Cameron's insurance claims related to the Deepwater Horizon incident; decision not to invoke Liberty's "other insurance" provision; Cameron's negotiations and settlement with BP relating to the Deepwater Horizon incident |
| Maureen P. Martin<br>Vice President, PASE Pollution Claims<br>Chartis<br>101 Hudson Street, 30th Floor<br>Jersey City, NJ 07302<br>(201) 631-7280 | Cameron's Deepwater Horizon Insurance; Cameron's insurance coverage for defense costs related to the Deepwater Horizon incident; Liberty's denial and/or rejection of Cameron's insurance claims related to the Deepwater Horizon incident; decision not to invoke Liberty's "other insurance" provision; Cameron's negotiations and settlement with BP relating to the Deepwater Horizon incident |

| Name | Subject(s) |
|---|---|
| Aine Madden<br>Claims Manager<br>Chubb Atlantic Indemnity Ltd.<br>69 Pitts Bay Road<br>Pembroke HM 08, Bermuda<br>(441) 294-6814 | Cameron's Deepwater Horizon Insurance; decision not to invoke Liberty's "other insurance" provision; Cameron's negotiations and settlement with BP relating to the Deepwater Horizon incident |
| Alexis Nusum<br>Claims Analyst<br>Chubb Atlantic Indemnity Ltd.<br>#48 Par-La-Ville Rd.<br>Hamilton HM 11, Bermuda<br>(441) 294-6827 | Cameron's Deepwater Horizon Insurance; decision not to invoke Liberty's "other insurance" provision; Cameron's negotiations and settlement with BP relating to the Deepwater Horizon incident |
| Shannon Boettjer<br>Clyde & Co. US LLP<br>The Chrysler Building<br>405 Lexington Ave.<br>New York, NY 10174<br>(212) 710-3945 | Liberty Policies; Cameron's Deepwater Horizon Insurance; Cameron's coverage for defense costs related to the Deepwater Horizon incident; Liberty's denial and/or rejection of Cameron's insurance claims related to the Deepwater Horizon incident; Cameron's negotiations and settlement with BP relating to the Deepwater Horizon incident; Clyde & Co.'s conflicted representation of Cameron and Liberty |
| Paul Koepff<br>Clyde & Co. US LLP<br>The Chrysler Building<br>405 Lexington Ave.<br>New York, NY 10174<br>(212) 710-3945 | Liberty Policies; Cameron's Deepwater Horizon Insurance; Cameron's coverage for defense costs related to the Deepwater Horizon incident; Liberty's denial and/or rejection of Cameron's insurance claims related to the Deepwater Horizon incident; Cameron's negotiations and settlement with BP relating to the Deepwater Horizon incident; Clyde & Co.'s conflicted representation of Cameron and Liberty |
| Lawrence Engrissei<br>SVP-Claims Manager<br>Iron-Starr Excess Agency Ltd.<br>141 Front St., 7th Fl.<br>Hamilton HM-19, Bermuda<br>(441) 279-7021 | Cameron's Deepwater Horizon Insurance; decision not to invoke Liberty's "other insurance" provision; Cameron's negotiations and settlement with BP relating to the Deepwater Horizon incident |

| Name | Subject(s) |
|---|---|
| Richard Bryan<br>Jackson & Campbell, P.C.<br>1120 20th St., NW<br>South Tower<br>Washington, DC  20036-3437<br>(202) 457-1638 | Cameron's Deepwater Horizon Insurance;<br>Liberty's denial and/or rejection of Cameron's<br>insurance claims related to the Deepwater<br>Horizon incident; decision not to invoke Liberty's<br>"other insurance" provision; Cameron's<br>negotiations and settlement with BP relating to<br>the Deepwater Horizon incident |
| R. Chris Heck<br>Kirkland & Ellis LLP<br>300 N. LaSalle<br>Chicago, IL 60654<br>(312) 862-3030 | Cameron's agreements with BP relating to the<br>Deepwater Horizon incident; Cameron's<br>negotiations and settlement with BP relating to<br>the Deepwater Horizon incident |
| David Cohen<br>President and Global Chief Underwriting<br>Officer, Casualty<br>Liberty Insurance Underwriters, Inc.<br>55 Water Street<br>New York, NY 10041<br>(212) 208-4179 | Liberty Policies; Cameron's Deepwater Horizon<br>Insurance; Liberty's denial and/or rejection of<br>Cameron's insurance claims related to the<br>Deepwater Horizon incident; Cameron's<br>negotiations and settlement with BP relating to<br>the Deepwater Horizon incident; settlement<br>discussions with Marsh |
| James D. Engel<br>Chief Claims Officer<br>Liberty Insurance Underwriters, Inc.<br>55 Water Street<br>New York, NY 10041<br>(212) 208-9500 | Liberty Policies; Cameron's Deepwater Horizon<br>Insurance; Cameron's coverage for defense costs<br>related to the Deepwater Horizon incident;<br>Liberty's denial and/or rejection of Cameron's<br>insurance claims related to the Deepwater<br>Horizon incident; Cameron's negotiations and<br>settlement with BP relating to the Deepwater<br>Horizon incident; settlement discussions with<br>Marsh |
| Daniel Forsythe<br>CEO<br>Liberty Insurance Underwriters, Inc.<br>175 Berkeley Street<br>Boston, Massachusetts 02116<br>(617) 357-9500 | Liberty's denial and/or rejection of Cameron's<br>insurance claims related to the Deepwater<br>Horizon incident |
| Tony Glenn | Liberty Policies; Cameron's Deepwater Horizon<br>Insurance; Cameron's coverage for defense costs<br>related to the Deepwater Horizon incident;<br>Liberty's denial and/or rejection of Cameron's<br>insurance claims related to the Deepwater<br>Horizon incident; Cameron's negotiations with<br>BP relating to the Deepwater Horizon incident |

| Name | Subject(s) |
|------|-----------|
| Arlene Hinckson<br>Commercial General Liability Claims<br>Liberty Insurance Underwriters, Inc.<br>55 Water Street<br>New York, NY 10041<br>(212) 208-2805 | Liberty Policies; Cameron's Deepwater Horizon Insurance; Liberty's investigation into Cameron's insurance claims related to the Deepwater Horizon incident |
| David Long<br>CEO<br>Liberty Mutual Group<br>175 Berkeley Street<br>Boston, Massachusetts 02116<br>(617) 357-9500 | Liberty Policies; Liberty's denial and/or rejection of Cameron's insurance claims related to the Deepwater Horizon incident; settlement discussions with Marsh |
| Alan Mandel<br>Vice President, Excess Casualty Division<br>Liberty Insurance Underwriters, Inc.<br>55 Water Street<br>New York, NY 10041<br>(212) 208-4247 | Liberty Policies; Cameron's Deepwater Horizon Insurance; Cameron's coverage for defense costs related to the Deepwater Horizon incident; Liberty's denial and/or rejection of Cameron's insurance claims related to the Deepwater Horizon incident; Cameron's negotiations and settlement with BP relating to the Deepwater Horizon incident |
| Gordon McBurney<br>President<br>Liberty Insurance Underwriters, Inc.<br>55 Water Street<br>New York, NY 10041<br>(212) 208-4247 | Liberty Policies; Cameron's Deepwater Horizon Insurance; Liberty's denial and/or rejection of Cameron's insurance claims related to the Deepwater Horizon incident; Cameron's negotiations and settlement with BP relating to the Deepwater Horizon incident; settlement discussions with Marsh |
| George Perrotta<br>Chief Financial Officer<br>Liberty Insurance Underwriters, Inc.<br>55 Water Street<br>New York, NY 10041<br>(212) 208-2808 | Liberty Policies; Cameron's Deepwater Horizon Insurance; Liberty's denial and/or rejection of Cameron's insurance claims related to the Deepwater Horizon incident; Liberty's reinsurance for the Liberty Policy, Liberty's reserves for Cameron's insurance claims |
| Jeffrey Roberts<br>AVP Excess Casualty Claims<br>Liberty Insurance Underwriters, Inc.<br>55 Water Street<br>New York, NY 10041<br>(212) 208-9595 | Liberty Policies; Cameron's Deepwater Horizon Insurance; Cameron's coverage for defense costs related to the Deepwater Horizon incident; Liberty's denial and/or rejection of Cameron's insurance claims related to the Deepwater Horizon incident; Cameron's negotiations and settlement with BP relating to the Deepwater Horizon incident |

| Name | Subject(s) |
|---|---|
| John Russomanno<br>Vice President, Excess Casualty<br>Liberty Insurance Underwriters, Inc.<br>55 Water Street<br>New York, NY 10041<br>(212) 208-4138 | Liberty Policies; Cameron's Deepwater Horizon Insurance; Cameron's coverage for defense costs related to the Deepwater Horizon incident; Liberty's denial and/or rejection of Cameron's insurance claims related to the Deepwater Horizon incident; Cameron's negotiations and settlement with BP relating to the Deepwater Horizon incident |
| Rusty Lee<br>Client Executive<br>Marsh USA Inc<br>Houston, TX 77002<br>(713) 276-8000 | Cameron's Deepwater Horizon Insurance; Cameron's negotiations and settlement with BP relating to the Deepwater Horizon incident |
| Natasha Nye<br>Peters & Nye LLP<br>14 Executive Ct, Ste. 2<br>South Barrington, IL  60010<br>(847) 423-0352 | Cameron's Deepwater Horizon Insurance; decision not to invoke Liberty's "other insurance" provision; Cameron's negotiations and settlement with BP relating to the Deepwater Horizon incident |
| Michael Larsen<br>Parson Behle & Latimer<br>201 S. Main St.<br>Ste. 1800<br>Salt Lake City, UT  84111<br>(801) 532-6735 | Cameron's Deepwater Horizon Insurance; decision not to invoke Liberty's "other insurance" provision; Cameron's negotiations and settlement with BP relating to the Deepwater Horizon incident |
| Eric. B. Brown<br>Executive Vice President – Legal & Admin.<br>Transocean Ltd.<br>P.O. Box 2765<br>Houston, Texas 77252 | Cameron's agreements with Transocean relating to the Deepwater Horizon incident |

B.      Disclosure Pursuant to Rule 26(a)(1)(A)(ii)

Based on information now known to Cameron, some or all of the following categories of documents in Cameron's possession, custody or control may be used by Cameron in support of claims and defenses raised in this action:

a.      Documents and communications relating to Policy Number LQ1B71198583046, the excess liability insurance policy Cameron purchased from Liberty for the policy period from July 1, 2009 to July 1, 2010 (the "Liberty Policy").

b.      Documents and communications relating to the tower of insurance purchased by Cameron in July 2009, including the Liberty Policy.

c.      Documents and communications relating to Cameron's settlement agreement with BP Exploration & Production, Inc. regarding the Deepwater Horizon incident.

d.      Documents and communications relating to Liberty's denial and/or rejection of Cameron's claims under the Liberty Policy.

e.      Documents and communications relating to the Terms and Conditions and Master Service Agreement entered into between Cameron and Transocean Ltd. regarding the Deepwater Horizon incident.

C.    Disclosure Pursuant to Rule 26(a)(1)(A)(iii)

a.    Compensatory damages totaling $50 million in connection with Cameron's losses incurred in connection with its settlement of claims with BP in <u>In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010</u>, MDL No. 10-2179 ("Oil Spill MDL").

b.    Compensatory damages (in an amount to be determined) for post-settlement defense costs incurred on an ongoing basis in connection with the Oil Spill MDL and related proceedings.

c.    Compensatory damages (in an amount to be determined) for costs and fees incurred in connection with Cameron's claim for insurance coverage from Liberty.

d.    Statutory damages equal to triple Cameron's actual compensatory damages under Texas Insurance Code § 541.

e.    Statutory damages equal to 18 percent per year of Cameron's defense costs in connection with the Oil Spill MDL and related proceedings under Texas Insurance Code § 542.

f.    Attorneys' fees and costs related to bringing this action.

Dated:      June 7, 2013                              /s/ Phillip A. Wittmann
                                             Phillip A. Wittmann, 13625
                                                pwittmann@stonepigman.com
                                             Carmelite M. Bertaut, 3054
                                                cbertaut@stonepigman.com
                                             Keith B. Hall, 24444
                                                khall@stonepigman.com
                                             Jared Davidson, 32419
                                                jdavidson@stonepigman.com

                                             STONE PIGMAN WALTHER WITTMANN L.L.C.
                                             546 Carondelet Street
                                             New Orleans, Louisiana  70130
                                             504-581-3200
                                             504-581-3361 (fax)

                                             *Attorneys for Cameron International
                                             Corporation*

                                                 Of Counsel:

                                                 WILLKIE FARR & GALLAGHER LLP
                                                 Mitchell J. Auslander
                                                 Jeffrey B. Korn
                                                 787 Seventh Avenue
                                                 New York, NY  10019
                                                 (212) 728-8000
                                                 mauslander@willkie.com

*7585474*

- 11 -

## STONE PIGMAN WALTHER WITTMANN L.L.C.

### COUNSELLORS AT LAW

546 CARONDELET STREET
NEW ORLEANS, LOUISIANA 70130-3588
(504) 581-3200
FAX (504) 581-3361
www.stonepigman.com

PHILLIP A. WITTMANN
DIRECT DIAL: (504) 593-0804
DIRECT FAX: (504) 596-0804
E-Mail: pwittmann@stonepigman.com

OUR FILE NUMBER

46,408

February 19, 2013

The Honorable Sally Shushan
Magistrate Judge
United States District Court
for the Eastern District of Louisiana
500 Poydras Street, Room B345
New Orleans, LA 70130

> Re:  *Cameron International Corporation v. Liberty Insurance Underwriters, Inc.*,
> Case No. 2:12-cv-00311

Dear Judge Shushan:

On behalf of Cameron International Corporation ("Cameron"), we write to request the Court's assistance in requiring Liberty Insurance Underwriters, Inc. ("Liberty") to comply with its discovery obligations in the above-referenced action.

With less than six weeks remaining in fact discovery, Liberty has not searched for emails, electronic documents, and hard copy documents in the files of relevant custodians in response to the document requests served by Cameron over eight weeks ago. Nor has Liberty agreed to do so. Liberty has also asserted baseless work product claims to withhold potentially critical documents created by its non-lawyer claims adjuster from its very limited document production. And Liberty has omitted material information from its interrogatory responses.

Accordingly, Cameron respectfully seeks the Court's intervention to order Liberty to:

(i)     search for and produce the documents requested by Cameron, as set forth with greater specificity below;

(ii)    produce the non-privileged documents from its claims adjuster that Liberty has withheld and provide a privilege log for any other documents that it claims are privileged; and

(iii)   supply the missing answers to Cameron's interrogatories.



EXHIBIT
C

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE
    2
February 19, 2013

Moreover, Liberty should be ordered to satisfy the foregoing discovery obligations by March 4 so that Cameron may complete depositions during the weeks of March 18 and March 25 and finish fact discovery by the April 1 deadline.

## Background

On December 4, 2012, Your Honor entered a Case Management and Scheduling Order ("Scheduling Order") that both Cameron and Liberty agreed should govern the conduct of discovery in this action for Liberty's bad faith breach of its $50 million insurance coverage obligations. (*See* Exhibit A annexed hereto.) Pursuant to the Scheduling Order, fact discovery commenced at that time and is set to conclude by April 1, 2013. (*Id.* ¶ G.)

On December 17, 2012, Cameron served on Liberty its First Set of Requests for Production and its First Set of Interrogatories seeking documents and information tailored to Cameron's claims and Liberty's defenses. (*See* Exhibits B and C annexed hereto.) Following a two-week extension to respond, which Cameron readily granted, Liberty served its responses and objections and made a small document production that purported to be Liberty's complete response to Cameron's document requests and interrogatories. (*See* Exhibits D and E.)

Liberty's document production, however, is far from complete. During an almost two-hour meet and confer on February 6, 2013, it became obvious that Liberty has not searched for emails, electronic documents, and hard copy documents in the files of relevant custodians. Instead, it appears Liberty has collected and produced, at most, only its hard copy claim and underwriting files—consisting of mostly copies of Cameron's own insurance policies. No electronic searches were conducted, and no other hard copy documents were gathered. In fact, it was apparent that counsel had not spoken to the relevant Liberty personnel—of which there are only about five—to understand what relevant emails, electronic documents, or other hard copy documents they might have.

Despite the parties' lengthy meet and confer, Liberty did not even commit to conduct any additional searches or produce any additional documents or information. Cameron accordingly followed up by letter on February 8 seeking assurances that Liberty would produce the documents and information that Cameron needs to prepare its case and requesting dates for the depositions of five Liberty witnesses in the second half of March. (*See* Exhibit F annexed hereto.) Liberty has not responded, saying only that counsel "have been out of the office" and would respond "as soon as we can." (*See* Exhibit G annexed hereto.) This, despite the fact that since the parties' meet and confer Liberty itself has served a battery of discovery on Cameron, Cameron's insurance broker, Transocean, and BP—much of which seeks the very same discovery that Liberty has denied Cameron.

## Liberty Should Be Compelled To Search For And Produce The Documents Requested In Cameron's First Set of Requests for Production of Documents.

As discussed above, the parties agreed upon and Your Honor ordered a discovery schedule with a fact discovery cutoff of April 1. Cameron has diligently pursued the discovery from Liberty that it needs to develop its case that Liberty breached its insurance obligations and did so in bad faith. Liberty's approach, by contrast, is to string Cameron along and then provide nothing remotely close to what Cameron is entitled.

No excuse exists for Liberty's tactically motivated decision not to undertake even the most basic and fundamental steps to satisfy its discovery obligations this far into fact discovery. Regrettably, given Liberty's recalcitrance, Cameron is left with no choice but to seek the Court's intervention. Accordingly, Cameron asks that Liberty be ordered to do the following:

- Liberty must search the hard copy and electronic files of Jeffrey Roberts, James Engel and Jessica Rogin (each of whom was involved in the adjustment of Cameron's claim), as well as Alan Mandel (who was involved in underwriting Cameron's insurance policy), and produce all non-privileged documents dated from January 1, 2006, through the present that relate to Cameron's insurance policies with Liberty, Cameron's claim for coverage to Liberty for the Deepwater Horizon Incident, and the settlement between BP and Cameron. (*See* Document Request Nos. 1-2, 7-9.)

- Liberty must search the hard copy and electronic files of Denise Morris, the Liberty employee that Liberty identified as the person most knowledgeable about Liberty's "other insurance" provision—the principal basis on which Liberty denied coverage to Cameron—and produce all non-privileged documents (regardless of date) relating to the drafting, negotiation and interpretation of Liberty's "other insurance" provision. (*See* Document Request No. 10.)

- Liberty must search the hard copy and electronic files of the Liberty personnel most likely to have documents sufficient to show Liberty's policies and/or procedures that relate to claims adjusting and the handling of coverage disputes. (*See* Document Request Nos. 13, 15.) These policies and/or procedures are undeniably relevant to Cameron's bad faith claims. *See Dudenhefer v. State Farm Fire & Cas. Co.*, No. 06-4380, 2007 WL 1521018, at *2 (E.D. La. May 23, 2007) (compelling the production of policies, rules, and procedures used in evaluating, adjusting, and denying the policyholder's claim).

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

4

February 19, 2013

- Liberty must produce copies of the personnel files of Jeffrey Roberts, James Engel, and Jessica Rogin. (Document Request No. 17.) Such personnel files are relevant because "the performance evaluation records might assist [Cameron] in discovering other evidence in [Liberty's] possession that would be admissible in support of [Cameron's] claims of bad-faith." *Kessell v. Bridewell*, 872 S.W.2d 837, 842 (Tex. Ct. App. 1994). In addition, personnel files have been the subject of discovery throughout this MDL.

- Liberty must obtain and produce from Clyde & Co., which assisted Liberty in denying Cameron's claim, hard copy and electronic copies of all non-privileged documents dated from January 1, 2006, through the present that relate to Cameron's insurance policies with Liberty, Cameron's claim for coverage to Liberty for the Deepwater Horizon Incident, and the settlement between BP and Cameron. (*See* Document Request Nos. 3-5.) *See In re Papst Licensing GmbH Patent Litig.*, No. 99-MD-1298, 2001 WL 797315, at *21 (E.D. La. July 12, 2001) ("[A]ll parties are directed to produce upon request to them all non-privileged responsive documents or other items in possession of their counsel.").

It is essential that these searches be conducted, and these documents produced, promptly and no later than by March 4. On February 8, Cameron asked Liberty to schedule the depositions of Liberty's witnesses during the weeks of March 18 and March 25—*i.e.*, by the April 1 fact discovery cutoff. Liberty has not responded to this request for depositions, either. To adequately prepare for these depositions, Cameron will need the requested documents by March 4, which is one week *less time* than the three-week period before which custodial files must ordinarily be produced in this MDL.

## Liberty Should Be Required To Produce Documents That Were Improperly Withheld And To Provide An Adequate Privilege Log.

Liberty has also improperly asserted the work product doctrine and/or attorney-client privilege to withhold potentially crucial documents that were neither prepared by nor communicated to counsel.

According to Liberty's privilege log, annexed hereto as Exhibit H, Liberty withheld four documents—two titled "Case Facts" and two titled "Precautionary Large Loss Reports"—that were authored by Liberty's primary adjuster of Cameron's claim, Jeffrey Roberts, whom Cameron understands is not a lawyer for Liberty. These documents are not communications and Liberty invokes only the attorney work product doctrine to withhold them. On their face, however, these documents do not appear to reflect the thoughts or impressions of any *lawyer* for which a claim of work product protection may colorably be made. No basis

exists, for example, to withhold a discussion of the "Case Facts" prepared by a key non-lawyer witness that describes the "settlement negotiations between BP and Cameron."

In addition, Liberty has also withheld Jeffrey Roberts's "handwritten notebook" on attorney work product and attorney-client privilege grounds. Cameron does not understand how anything in Mr. Roberts' handwritten notes could conceivably be considered attorney work product. That is not a valid basis to withhold the whole notebook, which likely contains highly relevant information about Liberty's plan to deny Cameron's insurance claim for pretextual reasons. To the extent Mr. Roberts's notes reflect communications with counsel, those notations may be redacted and listed on a privilege log which can be tested. Everything else should be produced.

Finally, Liberty failed to log communications between Liberty and its counsel on the basis of Pretrial Order No. 14, which states that parties to the MDL need not log communications post-dating April 20, 2010. That cutoff date was put in place when the parties to the MDL agreed what attorney-client communications would not need to be logged for purposes of the larger MDL. It should not apply here, however, where the conduct at issue occurred after April 20, 2010, and Cameron did not file its complaint until January 30, 2012. As a result, Liberty should be required to individually identify all responsive communications with counsel that predate the filing of Cameron's complaint, with one exception.

The one exception is for post-Complaint communications between Liberty (or its counsel) and Paul Koepff (or his colleagues). As Your Honor may recall, Mr. Koepff withdrew from representation of Liberty in this action as a result of a conflict issue raised by Cameron. Pursuant to an order issued by Judge Barbier, Mr. Koepff was to have no further role in representing Liberty in this matter. Nevertheless, during the parties' meet and confer, Liberty took the remarkable position that its communications *about this dispute* with Mr. Koepff *after* his withdrawal are privileged and will not be produced. While Cameron disagrees with that privilege assertion, at a minimum any such communications must be logged so that they may properly be challenged.

## Liberty Should Be Compelled To Provide Answers To Certain Of Cameron's Interrogatories.

Liberty failed to provide discoverable information in response to four categories of interrogatories. We address each briefly in turn.

*First*, in Interrogatory Nos. 1 and 2, Cameron asked Liberty to identify all persons involved in the assessment of Cameron's insurance claim and in the decision to deny coverage. Liberty listed some individuals, but invoked the attorney-client privilege and did not identify any

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE
      6

February 19, 2013

lawyers. (*See* Exhibit E.) The identity of lawyers—as opposed to their advice—is not privileged and must be identified. *See Howell v. Jones*, 516 F.2d 53, 58 (5th Cir. 1975) ("The great weight of authority . . . refuses to extend the attorney-client privilege to the fact of consultation . . . including the component facts of the identity of the client and the lawyer."); *In re Papst Licensing GmbH Patent Litig.*, 2001 WL 797315, at *5-6 (compelling a party to identify the names of all persons with knowledge, including attorneys, in an interrogatory response).

    *Second,* Interrogatory No. 8 requested that Liberty identify all meetings and communications with Transocean about this dispute. (*See* Exhibit E.) Liberty stated only that it was not aware of any *meetings* with Transocean, conspicuously omitting any mention of *discussions*. In contrast, in response to Interrogatory No. 7, Liberty stated that there were no "meetings or discussions" between itself (or its lawyers) and BP. Presumably, this choice of words was deliberate and there were, in fact, discussions between Liberty (or its counsel) and Transocean (or its counsel). Liberty must identify those discussions, state who they were with, when they occurred, and what was discussed.

    *Third,* Interrogatory Nos. 13, 14, and 15 requested that Liberty state when it first decided that the Liberty Policy had not attached to Cameron's claim and when that position was first communicated to Cameron or others. (*See* Exhibit E.) Liberty couched each of its answers in terms of what it knew or did "[b]y November 2011." This does not answer the questions posed and Cameron is entitled to a full and complete response to those interrogatories. For example, if Liberty had decided earlier in the year to deny coverage on this basis but did not convey that position to Cameron, that would be evidence both of Liberty's waiver of this position and further evidence of its bad faith. *See In re Papst Licensing GmbH Patent Litig.*, 2001 WL 79731, at *5-6 (compelling complete answers where the answers were "incomplete and evasive").

    *Fourth,* Interrogatory No. 18 asked Liberty to identify any other instance in which Liberty adopted the interpretation of the "Other Insurance" provision that it advocates in this litigation, and Interrogatory No. 19 asked Liberty to identify any instances in which Liberty was found liable for acting in bad faith. Liberty lodged a laundry-list of objections to these highly probative interrogatories—which go directly to Cameron's claims for both coverage and bad faith. Indeed, if Liberty has never before adopted the position it is taking against Cameron, that would be evidence that Liberty's basis for denying coverage here was purely pretextual. Likewise, other instances in which Liberty has been found liable for acting in bad faith may likely lead to discoverable evidence regarding Liberty's bad faith handling of Cameron's claim here. Liberty should be ordered to provide answers to these interrogatories. *See Dudenhefer,* 2007 WL 1521018, at *3 (compelling the defendant to identify other bad faith claims and judgments).

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

7

February 19, 2013

\*            \*            \*

As discussed above, Liberty is not taking its discovery obligations in this action seriously. We are now well over two months into the fact discovery period, and less than six weeks before its end, and Liberty has not even begun to conduct document searches—much less review and produce responsive documents from its custodians. Without court intervention, Cameron has grave concerns that Liberty will continue with these tactics and never provide the discovery that Cameron needs to build its case. Cameron therefore respectfully requests that the Court compel Liberty to provide the discovery discussed above by March 4 so that it may conduct depositions and complete its discovery by the Court's April 1 deadline.

We are available for a conference to discuss the above matters at Your Honor's convenience.

Respectfully,

*Phil Wittmann*

Phillip A. Wittmann

PAW:bon
cc:    Ms. Judy Y. Barrasso (via email)
       Mr. Christopher Martin (via email)
       Mr. Mitchell Auslander (via email)
       Mr. Jeffrey Korn (via email)
       MDL 2179 Liaison Counsel (via email)

# STONE PIGMAN WALTHER WITTMANN L.L.C.

### COUNSELLORS AT LAW

546 CARONDELET STREET
NEW ORLEANS, LOUISIANA 70130-3588
(504) 581-3200
FAX (504) 581-3361
www.stonepigman.com

OUR FILE NUMBER

CARMELITE M. BERTAUT
DIRECT DIAL: (504) 593-0898
DIRECT FAX: (504) 596-0898
E-Mail: cbertaut@stonepigman.com

46,408

May 17, 2013

**VIA FAX**

Ms. Catherine Giarrusso
Barrasso Usdin Kupperman Freeman
& Sarver, L.L.C.
909 Poydras Street
24th Floor
New Orleans, Louisiana 70112

Re:  *Cameron International Corporation v. Liberty Insurance Underwriters,
      Inc.,* MDL No. 2179, U.S. District Court, Eastern District of Louisiana

Dear Catherine:

        We write in response to your letter dated May 14, 2013 concerning several
purported deficiencies in Cameron's production.  We address each point in turn.

        First, regarding "communications and settlements with any other insurers," on
March 21, 2013, Paul Koepff sent Cameron a letter stating that he "took the liberty of contacting
Chris Martin, who said that Liberty International was not seeking discovery of the settlement
agreements in these particular discovery requests." (See Exhibit A annexed hereto.)  We asked
Judy to confirm this representation during a meet and confer later that day, and Judy explained
she would need to check with Chris.

        Having not heard back for over two weeks, Cameron followed up with a letter on
April 9, 2013, which stated as follows:

        [A]s we discussed, Mr. Koepff reported to us that he understood that
        Liberty is not seeking the production of copies of Cameron's settlement
        agreements with its other insurers.  Could you please confirm that this is
        accurate?   In the meantime, we have removed all copies of those
        agreements and documents reflecting the negotiations about them from
        Cameron's document production.



EXHIBIT
D

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

    2

May 17, 2013

(*See* Exhibit B.)  In response, Judy called counsel for Cameron to explain she would need to check with Chris.  Over five weeks later, without any reference to our prior communications about these documents, you now appear to be requesting them.  As a result, we will now follow up with Mr. Koepff – and Cameron's other insurers – regarding the confidentiality provisions in these settlement agreements, and will need to square away any outstanding issues before we produce them or any communications reflecting their terms.

In the interim, we ask that you independently advise Mr. Koepff that Liberty has now decided to request production.  When we last spoke with Mr. Koepff, he was of the belief that you all were not requiring the production of these documents and he should be made aware of our need to produce the documents to you all.

Second, in response to Liberty's Request for Production No. 8 seeking documents and communications related to "any modification of or request to modify the indemnification provisions contained in the T&C or the MSA since January 1, 2010," Cameron objected on relevance grounds.  As a compromise, we agreed to produce a copy of the revised MSA. Cameron continues to object to this Request on grounds of relevance.  Please explain how such documents and communications would be relevant to this dispute, and we are happy to consider Liberty's position.

Third, as to Cameron's search terms, below please find the non-case sensitive search terms that Cameron used:

Search 1 (applied to TO, FROM, CC and BCC fields):

    jeffrey.roberts **OR** james.engel **OR** alan.mandel **OR** @libertyiu.com **OR** paul.koepff **OR** shannon.boettjer **OR** @clydeco.us

Search 2 (applied to all areas of all documents):

    NYCAS000150488 **OR** LQ1-B71-198583-046 **OR** LQ1B71198583046 **OR** 0100-XS **OR** 0100XS **OR** 0101-XS **OR** 0101XS **OR** Liberty **OR** LIU

Search 3 (applied to all areas of all documents):

    (Deepwater **OR** "Deep Water" **OR** Horizon **OR** DwH **OR** "Oil Spill") **AND** (carrier* **OR** Chartis **OR** AIG **OR** INIC **OR** Liberty **OR** LIU **OR** LM **OR** libertyiu **OR** Chubb **OR** Iron-Starr **OR** Ironstarr **OR** ISEA **OR** Argo* **OR** BP) **AND** (subrog* **OR** indemn* **OR** settl* **OR** negot* **OR** consent* **OR** waiv* **OR** mediat*).

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

3

May 17, 2013

In addition, with respect to certain requests, Cameron conducted specific searches for the requested documents (*e.g.*, documents relating to Transocean and BP agreements that were produced in the MDL litigation) without applying search terms.

Fourth, as to communications with Marsh employees, Cameron withheld or redacted such communications on the basis of the attorney-client privilege, as articulated by Louisiana Code of Evidence Article 506. Specifically, Marsh qualifies as a "representative of the client" because it is an entity "having authority to obtain professional legal services, or to act on advice so obtained, on behalf of" Cameron, and because it is an entity that made and received "confidential communication[s] for the purpose of effectuating legal representation for" Cameron. *See* LSA-C.E. Art. 506.A.(2). *See also Exxon Corp. v. St. Paul Fire & Marine Ins.*, 903 F. Supp. 1007, 1010 (E.D. La. 1995) (upholding application of attorney-client privilege to communications with insurance broker).

In addition, many of these communications were withheld or redacted on attorney work product grounds because they reflect the legal advice and strategy of Cameron's litigation counsel, Willkie Farr & Gallagher LLP. As you know, the attorney work product doctrine is not waived even where the protected content is shared with third parties. *See, e.g., In re Grand Jury Subpoena*, 220 F.3d 406, 409 (5th Cir. 2000) ("because the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party").

Fifth, as to Cameron's work production assertions generally, Cameron is not claiming that it was anticipating litigation with Liberty in January 2011. Cameron was anticipating litigation (indeed, litigation had already commenced) with *BP* in January 2011, which is the basis for those work product assertions. Cameron did not anticipate litigation with Liberty until November 7, 2011, when Mr. Koepff asserted Liberty's position with respect to its "Other Insurance" clause for the first time.

Sixth, as to PTO 14, Cameron will provide Liberty a list identifying all attorneys appearing on its privilege logs, provided that Liberty does the same for Cameron.

We are available for a meet and confer to discuss these and other outstanding issues on Monday, May 20. Please let us know what time would be convenient for you, and we will set up a call.

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

    4

May 17, 2013

               With kind regards, I remain,

                           Sincerely,

                           Carmelite M. Bertaut

CMB:bon
Enclosure
cc:     Ms. Judy Y. Barrasso (via fax)
        Mr. Christopher Martin (via fax)
        Mr. Mitchell Auslander (via email)
        Mr. Jeffrey Korn (via email)
        Mr. Douglas Mishkin (via email)
        Mr. Phillip A. Wittmann (via email)



The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: 212 710 3900
Facsimile: 212 710 3950
www.clydeco.us
Paul.Koepff@clydeco.us

March 21, 2013

**VIA E-MAIL**

Douglas Mishkin
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, N.Y. 10019-6099

Re:    Cameron International Corporation v. Liberty Insurance Underwriters, Inc.

Dear Mr. Mishkin:

I am responding to your March 19, 2013 letter with enclosures.

I am pretty sure you are incorrect in assuming Liberty International is seeking discovery of these settlement agreements. Certainly the discovery requests do not specifically ask for these settlement agreements. Second, I took the liberty of contacting Chris Martin, who said that Liberty International was not seeking discovery of the settlement agreements in these particular discovery requests.

Thus, for the time being, I think there is nothing for me to do, unless you all disagree. By the way, under each settlement agreement, Cameron was obligated to give notice of a discovery request seeking discovery of the settlement agreements within 7 days of receiving the request. Here, it appears you waited over a month. So, I would point out if anyone ever seeks discovery of these settlement agreements, you and Cameron must comply with the 7 day requirement.

Also, obviously I was only counsel for these insurers which settled with Cameron, so I must pass on whatever you or Cameron send me to each insurer and find out their position. I am sure Cameron and you would agree.

Thank you for your attention.

Sincerely yours,

Paul R. Koepff

cc:    Jeffrey B. Korn (via email)
       Mitchell Auslander (via email)

Clyde & Co US LLP is a Delaware limited liability partnership with offices in New Jersey, New York and San Francisco.
Clyde & Co US LLP is affiliated with Clyde & Co LLP, a limited liability partnership registered in England and Wales.

968241v2

## STONE PIGMAN WALTHER WITTMANN L.L.C.

### COUNSELLORS AT LAW

546 CARONDELET STREET
NEW ORLEANS, LOUISIANA 70130-3588
(504) 581-3200
FAX (504) 581-3361
www.stonepigman.com

OUR FILE NUMBER

CARMELITE M. BERTAUT
DIRECT DIAL: (504) 593-0898
DIRECT FAX: (504) 596-0898
E-Mail: cbertaut@stonepigman.com

46,408

April 9, 2013

**VIA FAX**

Ms. Judy Y. Barrasso                        Mr. Christopher W. Martin
Barrasso Usdin Kupperman                    Martin, Disiere, Jefferson & Wisdom, L.L.P.
 Freeman & Sarver, L.L.C.                   808 Travis, Suite 1800
909 Poydras Street, 24th Floor              Houston, Texas  77002
New Orleans, Louisiana  70112

      Re:    *Cameron International Corporation v. Liberty Insurance Underwriters,*
              *Inc.,* MDL No. 2179, U.S. District Court, Eastern District of Louisiana

Dear Judy and Chris:

      We are following up on a few items.

      First, we understood that you expected to produce by April 3 those documents that you all had inadvertently left out of your last production. As we have still not received these documents, please let us know when you will be in a position to produce them.

      Second, we would like to proceed with scheduling those Liberty employees whom we discussed. When we last spoke, you indicated that the last week in April and first week in May might be available for the depositions of Liberty's witnesses: Jeffrey Roberts, James Engel, Alan Mandel, Jessica Rogin and Denise Morris. We have not heard anything since.

      Provided that Liberty makes its full production this week, we would like to schedule at least some of these depositions for the first week in May. Please let us know if that week is available and if so, for which witnesses. For those witnesses who are not available the first week in May, will you please check their availability the following week, May 6th. To facilitate the depositions, we repeat our offer to travel to New York.

      We would appreciate your getting back to us with confirmation of availability and location for these depositions when you produce the documents discussed in the first paragraph.

1122849v.1

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

2

April 9, 2013

Third, AIG's counsel has offered May 9 for a deposition of Maureen Martin. Please confirm your availability for her deposition in New York on that date.

We will also require discovery from several Bermuda insurers, including Iron Starr and Argo Re. Accordingly, we will be moving the court for letters rogatory. We trust you have no objection, but would appreciate your confirmation. We plan to file our motion by the end of this week and ask that you let us know one way or the other before then.

Fourth, we have not received a response to the letter we sent you last Monday regarding certain of Liberty's attorney work product assertions. Please let us know your position on this issue by the end of this week so that we may determine whether we have a dispute for which Court intervention is required.

Fifth, as we discussed, Mr. Koepff reported to us that he understood that Liberty is not seeking the production of copies of Cameron's settlement agreements with its other insurers. Could you please confirm that this is accurate? In the meantime, we have removed all copies of those agreements and documents reflecting the negotiations about them from Cameron's document production.

Sixth, we previously discussed whether we might be able to reach an agreement about what privileged communications between the parties and their counsel need not be logged. We are discussing this matter and should have a response to you next week.

Finally, it has been five weeks since you offered to provide at least an index of Liberty's policy manuals so that we could determine which portions of those manuals we might need. Please provide one to us by the end of this week. Otherwise, we must assume that all of Liberty's policy manuals have relevant information and no basis exists for you to continue to withhold them.

With kind regards, I remain,

Sincerely,

Carmelite

Carmelite M. Bertaut

CMB:bon
Enclosure
cc:   Mr. Mitchell Auslander (via email)
      Mr. Jeffrey Korn (via email)
      Mr. Douglas Mishkin (via email)
      Mr. Phillip A. Wittmann (via email)

1122849v.1