# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C.  20005

| | | |
|---|---|---|
| Robert R. Gasaway<br>To Call Writer Directly:<br>(202) 879-5175<br>robert.gasaway@kirkland.com | (202) 879-5000<br><br>www.kirkland.com | Facsimile:<br>(202) 879-5200 |

July 1, 2013

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

    Re:  MDL 2179 — United States' Motion for Partial Reconsideration of Order
         Regarding Motion to Strike (Rec. Doc. 10477)

Dear Judge Shushan:

  BP writes in response to the United States' letter of late Tuesday night seeking reconsideration of a portion of the Court's Monday, June 24 Order regarding BP/Anadarko's Motion to Strike, (Rec. Doc. 10477).

## Background

  As you know, the United States' motion for reconsideration was submitted against a somewhat unusual procedural backdrop.

  The United States now seeks partial reconsideration of the Court's Order to the extent it strikes a passage appearing on page 28 of Dr. Pooladi-Darvish's rebuttal expert report.  (*See* Rec. Doc. 10477, at 6-7 (striking a portion of page 28 of Dr. Pooladi-Darvish's rebuttal report).)  The United States also stated in its motion for reconsideration that it "continues to evaluate the Order and reserves the right to move for reconsideration or appeal other aspects of the Order not addressed in this letter." (A. Chakeres Ltr to Court, at 1 n.1 (June 25, 2013).)

  Ultimately, as the Court knows, the United States filed a timely and lengthy appeal challenging all adverse rulings contained in the June 24 Order, including the material raised in its Tuesday letter regarding reconsideration of the striking of a portion of the Dr. Pooladi-Darvish report.  (Rec. Doc. 10533, at 16-17.)

  Accordingly, the matters raised by the United States on reconsideration are now formally before both this Court and Judge Barbier.  Against this backdrop, we write to address the United

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 1, 2013
Page 2


States' motion for reconsideration before Your Honor. We do so, of course, without prejudice to the position BP may take in the pending appeal.

### Discussion

The stricken passage now at issue appears on page 28 of Dr. Pooladi-Darvish's rebuttal report under a heading titled "Rock Compressibility." (*See* Attachment A.) It states as follows:

> In my opinion, there could be a significant difference between a value of rock compressibility obtained on a few small samples that collectively can be held in one hand and the value of rock compressibility of between one and two hundred thousand acre-ft of the reservoir rock. All of us have observed the variations in rock properties over small distances on hiking trails, let alone changes over miles.
>
> Furthermore, there are differences between the laboratory conditions under which the rocks were tested and what the reservoir rock experiences as the Macondo well flowed. An uncertainty of 100% was not surprising to BP engineers and scientists who were considering development of the Macondo reservoir, and studied it while it was flowing. In fact, during the well integrity testing period, BP reservoir engineers recommended using 12 microsips as the "most likely" rock compressibility of the Macondo reservoir. Depending on whether the average rock compressibility of the Macondo rock is 3 or 12 microsips, the total compressibility of the Macondo reservoir (including its oil) could vary by more than 50% between approximately 16 and 25 microsips.

This passage is one of a number of expert report passages stricken by the Court's June 24 Order. These passages, including the stricken Pooladi-Darvish passage, all appeared in rebuttal reports from United States experts and typically involved a discussion of pore volume compressibility (PVC). (Rec. Doc. 10477, at 4-6.) BP's view is that, regardless whether Dr. Pooladi-Darvish's PVC opinion was put forward for purposes of bolstering United States' expert Dr. Kelkar's choice to use a disputed value for PVC without offering scientific analysis to justify the value; or in order to critique BP expert Dr. Zimmerman, who calculated his own PVC value; or to critique Dr. Blunt, who used a PVC value in his analysis; the improper material still constitutes a belatedly offered PVC "rebuttal" opinion.

*First*, Dr. Pooladi-Darvish is differently situated than Drs. Roegiers, Huffman, or Kelkar. Dr. Pooladi-Darvish affirmatively *cited and relied on* the Weatherford data for a PVC value of 6 microsips, as seen on .pdf page 124 of his initial expert report, excerpted immediately below. (R. Gasaway Ltr., at 10 (June 17, 2013) (citing Appendix 3, page 8, line 5, .pdf page 121 (which is actually .pdf page 124)).)

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 1, 2013
Page 3



Unlike those new opinions offered in rebuttal reports from Drs. Roegiers, Huffman, or Kelkar, which could have been offered (if at all) in initial reports, Dr. Pooladi-Darvish *did* provide an opinion in his initial report and has now taken the opportunity of his rebuttal report to contradict his earlier opinion. This about face is not the kind of "significant elaboration" on rebuttal contemplated by the oft-quoted decision by Judge Duval, where a party may forebear from including "vast amounts of arguably irrelevant material" in its initial expert reports. *In re Katrina Canal Breaches Consol. Litig.*, 2012 WL 2526980, at *1 (E.D. La. June 29, 2012). Instead, Dr. Pooladi-Darvish's rebuttal report offers contradictory new opinions regarding the Weatherford data on which his initial report relied. (P-D Rpt, Appendix 3, page 8, line 5, .pdf page 124.)

Rule 26 on its face requires that the United States disclose its experts' opinions in its initial reports. Fed. R. Civ. P. 26(a)(2)(B). Experts may not offer new opinions on rebuttal, Fed. R. Civ. P. 26(a)(2)(C), and even more so they may not offer new opinions that *contradict* earlier opinions. *Bowman v. International Business Mach. Corp.*, No. 1:11-cv-0593, 2012 WL 6596933, at *6 (S.D. Ind. Dec. 18, 2012) (alternative holding) (finding improper and striking expert's rebuttal report that "acknowledges that his former approach is flawed and that he will take a different approach"). If experts were allowed to take firm positions in an initial report and then pirouette to diametrically opposed positions in a rebuttal report under the guise of "significant elaboration," *In re Katrina*, 2012 WL 2526980, at *1, litigation defendants would be put in an untenable position. Elaboration is one thing, but contradiction is quite a different thing.

*Second*, there are further grounds why the Court should not "*un*strike" the following sentence from the stricken section of Dr. Pooladi-Darvish's initial report:

> In fact, during the well integrity testing period, BP reservoir engineers recommended using 12 microsips as the "most likely" rock compressibility of the Macondo reservoir.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 1, 2013
Page 4

Apart from the United States' main argument that its lawyers were implausibly surprised to learn that BP thought PVC was 6 microsips, this quoted sentence is the same point made in Dr. Kelkar's *initial* report. If Dr. Kelkar, overseen by the same group of lawyers, had enough prompting from the evidence and issues, to include this very same opinion in his initial report, then Dr. Pooladi-Darvish cannot claim lack of notice for failing to include this opinion in his own initial report.

***Third***, the final sentence of the passage on page 28 is especially objectionable and should remain stricken for an additional reason. That sentence falls squarely within the Court's ruling striking belatedly offered calculations of pore volume compressibility:

> Depending on whether the average rock compressibility of the Macondo rock is 3 or 12 microsips, the total compressibility of the Macondo reservoir (including its oil) could vary by more than 50% between approximately 16 and 25 microsips.

In this sentence, Dr. Pooladi-Darvish asserts — without any basis or scientific support — that total compressibility "could vary by more than 50% between approximately 16 and 25 microsips." This new assertion of a PVC value of 16 and 25, untethered to any assertions in any United States March 22 expert report, is exactly the kind of new material the Court has consistently (and correctly) struck from the United States' rebuttal expert reports. (Rec. Doc. 10477, at 4, 5, 7-9.)

*   *   *

In sum, Dr. Pooladi-Darvish presented in the stricken passage on page 28 of his "rebuttal" report opinions on pore volume compressibility that either contradicted his earlier opinion or provided new information that could have been offered (if at all) with his initial report. Both types of opinions are improper, and therefore the entire passage on page 28 of his rebuttal report should remain stricken.

Respectfully submitted,

*[signature]*

Robert R. Gasaway

Attachment
cc (by electronic mail):
United States' MDL Counsel           Defense Liaison Counsel
Plaintiffs' Liaison Counsel           Joel M. Gross