# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : : | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE CARL J. BARBIER |
| This Document Relates to: 12-00311<br>……………………………………………………... | : : | <br>MAGISTRATE JUDGE SALLY SHUSHAN |

## REPLY MEMORANDUM OF BP EXPLORATION & PRODUCTION INC. IN FURTHER SUPPORT OF ITS MOTION TO QUASH LIBERTY INSURANCE UNDERWRITERS' SUBPOENA

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Robert C. "Mike" Brock
(mbrock@cov.com)
David B. Goodwin
(dgoodwin@cov.com)
Allan B. Moore
(abmoore@cov.com)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for BP Exploration & Production Inc.*

**I.     SETTLEMENT DISCUSSIONS ARE IRRELEVANT TO THE COVERAGE DISPUTE BETWEEN LIBERTY AND CAMERON.**

Liberty's arguments for the relevance of settlement communications, Liberty Opp'n at 6-8, Rec. Doc. 10502, are without merit.[1]  First, Liberty argues based on self-serving testimony from its own witness that the settlement is ambiguous and that Cameron might present testimony concerning the settlement.[2]  Liberty Opp'n at 6-7, Rec. Doc. 10502.  But ambiguity is a question of law determined by the Court, not from witness testimony.  *See Ergon-West Virginia, Inc. v. Dynegy Mktg. & Trade*, 706 F.3d 419, 424 (5th Cir. 2013); *Guidry v. Am. Public Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007).

Furthermore, the BP-Cameron Settlement is unambiguous in stating that "Cameron is not releasing any subrogation or other rights of Liberty."  *See* BP Memo. at 8, Rec. Doc. 10388-1. Even conflicting interpretations by the parties cannot render a clear agreement ambiguous.  *See, e.g.*, *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 842 (5th Cir. 2012); *Certain Underwriters at Lloyds, London v. Law*, 570 F.3d 574, 577 (5th Cir. 2009). Neither BP nor Cameron has contended that the settlement is ambiguous.  Liberty, a non-party to the agreement, cannot create an ambiguity when the actual parties agree to its meaning.

Second, Liberty contends that whether BP "insisted" on certain settlement conditions is relevant to Cameron's Texas law bad faith claim.  Liberty Opp'n at 7, Rec. Doc. 10502.  The bad

---

[1] Liberty's description of BP and Liberty's discussions regarding the subpoena are inaccurate.  On February 22, 2013, BP's counsel called Liberty's counsel to discuss BP's objections to the subpoena, which were largely the same as set forth in BP's memorandum, including that all documents were either privileged or available from Cameron. In response, Liberty *offered* to hold the subpoena in abeyance and seek the settlement documents from Cameron first.  *See* Liberty Opp'n Ex. D, 2-22-13 4:15 PM e-mail, Rec. Doc. 10502-1.  BP did not request an extension, much less one for four months.  BP had Liberty's counsel expressly confirm that the time for BP to file objections and a motion to quash would also be stayed, indicating that BP intended to file such documents.  After February 22, 2013, BP had no reason to believe that Liberty was still pursuing the subpoena against BP until Liberty's May 31, 2013 communication.

[2] Liberty's assertion that BP "concedes" that the settlement discussions are relevant if the settlement is ambiguous is incorrect.  There is no such concession in BP's motion, and for the reasons explained in the memorandum the subpoena should be quashed even if the settlement is somehow ambiguous.

faith claim depends entirely upon Liberty's state of mind and actions.  Settlement communications between BP and Cameron that Liberty did not know about cannot be probative of what Liberty knew or did.  Moreover, the determinative question on this claim is whether Liberty's liability was "reasonably clear."  Rec. Doc. 7129 at 27-28.  This depends upon application of the Liberty Insurance Policy to the *final* BP-Cameron settlement; preceding settlement discussions are irrelevant.  *See Aleman v. Zenith Ins. Co.*, 343 S.W.3d 817, 823 (Tex. App. 2011); *see also Viles v. Sec. Nat'l. Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990).

Third, Liberty seeks access to settlement negotiations because "Cameron almost certainly made statements concerning the strength of its indemnity claims" against Transocean.  Liberty Opp'n at 8, Rec. Doc. 10502.  The strength of Cameron's indemnification claims against Transocean is primarily a matter of law and the contracts between Cameron and Transocean.  BP's settlement discussions with Cameron simply are not relevant to this issue.[3]

## II. *DEEPWATER HORIZON* MDL SETTLEMENT NEGOTIATIONS INDEPENDENTLY WARRANT PROTECTION FROM DISCLOSURE.

Apart from the relevance issue, Liberty ignores the weight of authority and public policy favoring confidentiality of settlement communications in a case of this scale.  Numerous courts—including those within the Fifth Circuit—have either recognized a settlement privilege or required a heightened showing of relevance.  *See* BP Memo. at 11-16, Rec. Doc. 10388-1; *see also Software Tree, LLC v. Red Hat, Inc.*, 2010 WL 2788202, at *3 (E.D. Tex. June 24, 2010) ("On at least three instances, this district has . . . protected settlement negotiations from

---

[3] Liberty's suggestion that the Court's denial of its Rule 12(c) motion, Rec. Doc. 7129, implies that settlement negotiations are relevant is meritless.  Liberty's motion was denied on the breach of contract claim because "Cameron has pled enough facts for the Court to draw the reasonable inference that it is entitled to coverage," Rec. Doc. 7129 at 21, and because Liberty had failed to meet its burden on its affirmative defenses regarding the policy's "Other Insurance" clause and Liberty's claim that its subrogation rights were impaired by the settlement.  *Id.* at 19, 25-26.  Finally, the Court denied Liberty's motion with respect to Cameron's Texas law claims because Cameron had "plausibly" stated claims for relief.  *Id.* at 28-30.  Nowhere did the Court's order suggest that settlement discussions could be relevant to the merits of the Cameron-Liberty coverage dispute.

2

discovery"). Liberty does not cite a single case from within the Fifth Circuit on this point, and ignores that the interest in encouraging settlement is particularly applicable in complex maritime cases. *See Branch v. Fidelity & Cas. Co. of N.Y.*, 783 F.2d 1289, 1294 (5th Cir. 1986).

Liberty's cited case law does not detract from the rationale for protecting settlement communications. Indeed, Liberty cites a recent case recognizing "a policy interest in facilitating and encouraging settlements, which may be well-served by preserving the confidentiality of communications made during settlement negotiations." *United States v. Dish Network, L.L.C.*, 2013 WL 1876419, at *3 (C.D. Ill. May 6, 2013) (permitting unsealing of negotiations only after determining that they did "not contain any trade secrets or the type of business information that would warrant sealing them."). In contrast, the BP-Cameron Settlement negotiations are of a sensitive nature. The other cases cited by Liberty are also distinguishable.[4]

Liberty's reliance on PTO 13 also misses the point. Production of settlement documents could chill settlements with other parties. Under PTO 13, produced documents are provided to the parties or their counsel. Disclosing settlement discussions to the parties or their counsel is precisely what creates the chilling effect, as such production would give a party that has not yet settled an advantage in negotiating with a party that has previously entered into a settlement.

### III. LIBERTY HAS ACKNOWLEDGED THAT ITS SUBPOENA IS OVERBROAD.

Liberty *acknowledges* that its Subpoena seeks privileged communications among BP's counsel. Liberty Opp'n at 10, Rec. Doc. 10502. This admission strongly supports quashing the Subpoena. *See In re Grand Jury Subpoena: Subpoena Duces Tecum*, 844 F.2d 202, 203 (4th Cir.

---

[4] In *Pactiv Corp. v. Multisorb Tech., Inc.*, the court noted that the litigants' "exceptionally cantankerous" conduct informed its decision not to recognize a privilege, as "both parties here have repeatedly engaged in disingenuous invocation of privileges . . . abusing the rules of discovery . . . ." 2012 WL 1831517, at *1, *5 (N.D. Ill. May 18, 2012). That situation is clearly distinguishable. And while the D.C. district court decision cited by Liberty did not formally adopt a settlement privilege, that court recognized that "at least two federal cases . . . have instead required a heightened showing of need for settlement documents on public policy grounds." *In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201, 209 (D.D.C. 2005) (citations omitted).

3

1988) (per curiam) (concession that a portion of subpoena was overbroad mandates quashing since "a subpoena that is invalid even in part must be quashed[]" (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951)); *see also, e.g.*, *Global Oil Tools, Inc. v. Barnhill*, 2012 WL 6021331, at *4 (E.D. La. Dec. 3, 2012); *Bagwell v. Rival Consumer Sales Corp.*, 2006 WL 2883137, at *2 (W.D. Tex. Sept. 19, 2006) ("A court may find a subpoena presents an undue burden when the subpoena is facially overbroad[]").

### IV.  LIBERTY'S SUBPOENA SEEKS DOCUMENTS OTHERWISE AVAILABLE FROM CAMERON AND THEREFORE IS UNDULY BURDENSOME.

Liberty's Subpoena to BP undoubtedly seeks documents that are available from Cameron.  Liberty's claim that "there is no rule that a party cannot seek non-party discovery of documents likely to be in a party's possession," Liberty Opp'n at 11, Rec. Doc. 10502, flouts a well-developed body of precedent, including cases within this circuit.  *See, e.g.*, *Fleet Bus. Credit v. Hill City Oil*, 2003 WL 840979, at *2-3 (E.D. La. Feb. 28, 2003) (sustaining objections to subpoena seeking duplicative discovery on non-party); *Batture Fleet, Inc. v. Browner*, 2000 WL 748093, at *2 & n.3 (E.D. La. June 8, 2000) (finding third-party subpoenas unreasonable where materials sought were available from actual party); *see also, e.g.*, *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004); *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993).

Such cases reflect courts' adherence to the rudimentary principle that "the Court *shall* limit [non-party] discovery if it determines that the discovery is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive."  *In re Application of Time, Inc.*, 1999 WL 804090, at *7 (E.D. La. Oct. 6, 1999) (citation omitted); *see also Chauppette v. Northland Ins. Co.*, 2009 WL 4060452, at *1-2 (E.D. La. Nov. 19, 2009) (citing FED. R. CIV. P. 26(b)(2)(C), 45(c)).

4

Unable to identify a single Fifth Circuit case to support its position, Liberty primarily relies on an outlying, factually-distinguishable case, *Viacom Int'l, Inc. v. YouTube, Inc.*, 2008 WL 3876142, at *1 (N.D. Cal. Aug. 18, 2008). But "the [*Viacom*] court compelled production from a non-party *only after it found reason to believe that the documents sought from the non-party could not be obtained from the defendant.*" *Arista Records LLC v. Lime Group LLC*, 2011 WL 781198, at *4 (S.D.N.Y. Mar. 4, 2011). "[T]he production sought from the non-party in *Viacom Int'l* was not duplicative [because] there was reason to believe that the documents sought were not obtainable from the defendant." *Id.* Moreover, in the decision relied upon by the *Viacom* court and quoted in Liberty's opposition — *Visto Corp. v. Smartner Info. Sys., Ltd.*, 2007 WL 218771, at *1 (N.D. Cal. Jan. 29, 2007) —"the court *refused* to grant the defendant's motion to compel compliance with a nonparty subpoena where there was 'nothing in the record to suggest that [the non-party] had data or documents not available from [the plaintiff].'" *Arista Records LLC*, 2011 WL 781198, at *4 (quoting *Visto*, 2007 WL 218771, at *4) (emphasis added).[5] Finally, as a factual matter, Liberty seeks recent communications made when Cameron could anticipate the possibility of litigation with its insurers. Thus, there is no reason to believe that Cameron cannot provide a complete set of non-privileged communications.

---

[5] The only other case Liberty relies on to support its spurious claim is *Software Rights Archive, LLC v. Google, Inc.*, 2009 WL 1438249, at *1 (D. Del. May 21, 2009), which is fundamentally distinguishable from the instant case along the same lines as *Visto Corp*. The *Software Rights* court, in permitting non-party discovery, emphasized that: (1) the non-party likely had a significant interest in the outcome of the litigation in part because of an obvious "ownership chain" between the non-party and the actual party, and (2) "it [was] quite possible that each entity may have *unique* documents." *Software Rights*, 2009 WL 1438249, at *2-3 (emphasis added).

Dated: July 1, 2013                     Respectfully submitted,


/s / Don K. Haycraft.


Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
David B. Goodwin
dgoodwin@cov.com
Allan B. Moore
abmoore@cov.com
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for BP Exploration & Production Inc.*

6

**CERTIFICATE OF SERVICE**

      I hereby certify that that the above and foregoing Reply Memorandum of BP Exploration & Production Inc. in Further Support of Its Motion to Quash Liberty Insurance Underwriters' Subpoena has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 1st day of July, 2013.

                                                               /s / Don K. Haycraft