## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179 <br><br> SECTION J |
| Applies to: *12-311* | JUDGE BARBIER <br> MAGISTRATE JUDGE SHUSHAN |

## ORDER

LIBERTY'S MOTION TO COMPEL (Rec. doc. 10334)

**DOCUMENTS FOR *IN CAMERA* REVIEW**

Liberty International Underwriters, Inc. ("Liberty") moved to compel discovery from Cameron. Rec. doc. 10334. The parties agree that all issues raised by Liberty's motion were resolved except for its request for documents reflecting communications with Marsh USA Inc. ("Marsh").[1] Cameron states that it produced its routine business communications with Marsh. Rec. doc. 10452 at 7. Liberty responds that Cameron offers no support for this statement. Rec. doc. 10546 at 2, n. 3. Liberty has provided no basis to question Cameron's statement that it produced the routine business communications.

Cameron contends that there are 227 documents protected from disclosure because they are post-October 1, 2011 communications between its outside counsel, its in-house attorneys and Marsh relating to Cameron's litigation with BP and the dispute with Liberty. Rec. doc. 10452 at 1, n. 1 and Exhibit 2. When Liberty filed the motion to compel, it contended that, while Cameron produced a privilege log of redacted documents (Rec. doc. 10334 - Exhibit D), it did not produce a log of documents withheld from production.[2] Based on Cameron's identification of the 227 documents in

---

[1] See request for production nos. 3 and 4. Rec. doc. 10334 (Exhibit B).

[2] The 227 count includes withheld documents and redacted documents.

its opposition memorandum, Liberty's issue with the privilege log is resolved.

Cameron relies on Louisiana Code of Evidence Article 506(B):

> A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication, when the communication is: (1) Between the client or a representative of the client and the client's lawyer or representative of the lawyer; [OR] . . . (4) Between representatives of the client or between a client and a representative of the client....

Id. Cameron argues that: (1) pursuant to a December 31, 2008 contract (Rec. doc. 10452 - Exhibit 1), Marsh was Cameron's representative; (2) Marsh, as the representative of Cameron, acted for it in the BP settlement and negotiations with Liberty; and (3) the 227 documents reflect attorney-client communications and work-product. Cameron does not argue that the documents are not relevant.

Liberty responds that: (1) Cameron cannot establish that each of the 227 Marsh communications was for the purpose of facilitating the rendition of professional legal services for Cameron; (2) Cameron withheld many Marsh documents simply because a lawyer was copied; and (3) documents dated before November 7, 2011 are not protected by the work-product doctrine, as Cameron stated it did not anticipate litigation until that date. Rec. doc. 10546.

In Exxon Corporation v. St. Paul Fire & Marine Insurance, 903 F.Supp. 1007 (E.D. La. 1195) (Jones, J.), a claim of attorney-client privilege was governed by Louisiana law. The plaintiff sought documents from the insurance broker. The insurer moved to quash the subpoena. The plaintiff argued that the broker was not the client or representative of the insured under La. Code Evid. Art. 506(B). In response to Exxon's argument that the documents were not privileged, the Court stated:

> [T]he Court's *in camera* review of the documents clearly indicates that A & A's involvement was more than mere role-playing as an insurance broker, for the documents show that A & A was involved in the defense of the underlying cases that form the crux of the bad-faith claim remaining in this case.

2

903 F.Supp. at 1009. In Navigators Management Company v. St. Paul Fire and Marine Insurance Company, 2009 WL 465584 (E.D.Mo.), there was an insurance coverage dispute arising out of a collision on the Mississippi River. A towboat involved in the collision also struck the Eads Bridge in St. Louis. The Court resolved the matter pursuant to proposed Federal Rule of Evidence 503 which is similar to La. Code Evid. Art. 506(B). The Court concluded that: (1) the insurance broker/agency acted as the insured's representative to the extent that its communications were made for the purpose of facilitating the rendition of professional legal services; and (2) the communications between the agency and the insured were protected by the attorney-client privilege. 2009 WL 465584, *4. The reasoning in Exxon and Navigators was adopted in In re TETRA Technologies, Inc. Securities Litigation, 2010 WL 1335431, *5 (S.D. Tex. 2010).

Liberty contends that Cameron seeks to construct an insurance broker privilege, when no such privilege has been codified in Texas. In the absence of Texas authority presenting a contrary rule, the Court will apply the reasoning in Exxon and Navigators to a sample of 23 documents. The Court is unable to review all 227 documents *in camera*. Liberty shall select the 23 documents to be reviewed from Exhibit 2 to Rec. doc. 10452.

IT IS ORDERED that: (1) Liberty shall notify Cameron of 23 documents that it wants submitted for *in camera* review; (2) **by Wednesday, July 10, 2013, Cameron shall submit the 23 documents for *in camera* review**; and (3) in the absence of an order from District Judge Barbier, this order shall not be stayed during its appeal.

New Orleans, Louisiana, this 1st day of July, 2013.

                                          **SALLY SHUSHAN**
                                          **United States Magistrate Judge**