UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179<br><br>SECTION J |
| Applies to: *12-311* | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

## ORDER

BP'S MOTION TO QUASH (Rec. doc. 10388)

**GRANTED**

      Liberty Mutual Insurance Underwriters, Inc. ("Liberty), served a subpoena on BP for all documents and communications:

1. Between BP and Cameron concerning the BP-Cameron settlement.

2. Regarding the negotiation, drafting, and execution of the BP-Cameron settlement.

3. Regarding Cameron's claim for coverage for liabilities arising out of the Deepwater Horizon Incident.

4. Between BP and Cameron concerning Cameron's indemnity claims against Transocean.

BP requests that the subpoena be quashed because:

1. The documents sought are not relevant to the insurance coverage dispute between Liberty and Cameron, which depends solely upon the application of the terms of the applicable insurance policy between Cameron and Liberty to the final terms of the settlement.

2. The documents sought by Liberty comprise settlement negotiations which are entitled to protection from disclosure in order to serve the public interest in promoting the resolution of disputes through confidential settlement discussion.

3. The documents sought by LIU are protected from disclosure by the attorney-client privilege or the work-product doctrine.

4. Any non-privileged relevant documents are available from Cameron.

The motion to quash will be granted. The discussion below takes up each of BP's asserted reasons to quash the subpoena.

A.   Relevancy.

BP's first argument is that none of the documents are relevant to the claims and defenses of the parties to the insurance coverage dispute (Liberty and Cameron). Liberty responds with three arguments that the documents are relevant.

1.   Ambiguity.

Liberty contends that the documents are relevant because the intent of the parties to the settlement agreement cannot be determined from the face of the settlement agreement. Liberty contends that: (1) the issue is whether BP and Cameron intended in the settlement agreement that Cameron would waive Liberty's subrogation rights; (2) Cameron intends to rely on evidence outside of the settlement agreement to prove its meaning; and (3) Liberty must be able to discover documents from BP concerning the negotiations in which the intent of BP and Cameron was expressed.

BP responds that: (1) Liberty relies on its own representative to create ambiguity where there is none; (2) the settlement agreement provides that "Cameron is not releasing any subrogation or other rights of Liberty;"[1] and (3) neither Cameron nor BP contend that the settlement agreement is ambiguous.

For the reasons presented by BP, the BP/Cameron documents are not relevant because of the alleged ambiguity in the settlement agreement.

---

[1] See provision of settlement agreement quoted at Rec. doc. 10388 (Memorandum at 8).

2. <u>Bad faith</u>.

Liberty contends that the documents are relevant because Cameron asserts a bad faith claim under Texas law. Liberty describes Cameron as alleging that: (1) BP insisted on certain settlement terms, e.g. - assignment of Cameron's indemnity rights; (2) it faced substantial danger if it did not settle with BP; and (3) Liberty breached its obligations to Cameron by not agreeing to the terms. Liberty seeks communications between BP and Cameron (but not communications between BP and its counsel) to determine whether the terms were non-negotiable and what options were available to Cameron.

BP replies that the bad faith claim depends entirely on Liberty's state of mind and actions. Communications between BP and Cameron that Liberty was unaware of cannot be probative of what Liberty knew or did - the only matters relevant to the bad faith claim.

For the reasons presented by BP, the BP/Cameron communications are not relevant to Cameron's bad faith claim.

3. <u>Indemnity claims</u>.

Liberty contends that in settlement negotiations with BP, Cameron almost certainly made statements concerning the strength of its indemnity claims that undercut its present position that the claims were weak. To the extent the Court decides to look beyond the indemnity agreements themselves to determine the parties' intent, Liberty argues that such statements by Cameron constitute admissions and are highly relevant.

BP responds that the strength of Cameron's indemnification claims against Transocean is primarily a matter of law and the contracts between Cameron and Transocean and BP's settlement discussions with Cameron simply are not relevant to this issue.

Cameron's communications concerning the strength of its indemnity claims are relevant.

3

B.   Settlement Privilege.

BP contends that even if some of the documents are relevant, the documents concerning the negotiations between BP and Cameron should be protected from disclosure because of a settlement privilege. In the alternative, it argues Liberty should be required to demonstrate a particularized need for the documents. Rec. doc. 10388 at 17-23. BP acknowledges that the Fifth Circuit has not held that settlement discussions are privileged.[2]

For the reasons presented by Liberty (Rec. doc. 10502 at 8-10), documents concerning settlement negotiations are not privileged.

C.   Attorney-client and/or work-product.

Assuming that there are relevant documents and they are not protected from disclosure by a settlement privilege, BP contends that Liberty is trying to obtain documents protected by the attorney-client privilege or the work-product doctrine.

Liberty "agrees that it is *not* seeking documents reflecting BP's communications with its in-house or outside counsel and *only* seeks BP's communications with third parties including Cameron." Rec. doc. 10502 at 10 (emphasis in original). This issue is moot.

D.   Available from Cameron.

BP finally argues that if there are any relevant documents that are not protected from disclosure by a settlement privilege, the attorney-client privilege or work-product, then Liberty should be required to obtain them from Cameron.

The undersigned has found that the only relevant documents concern Cameron's statements regarding the strength of its indemnity claims. The source of those statements is Cameron and not

---

[2] In Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 332 F.3d 976, 980 (6th Cir. 2003), the Sixth Circuit held that there was a settlement privilege.

4

BP.  Liberty's argument that completeness of discovery requires production of statements from BP is without merit.  There is no suggestion that Cameron's documents are incomplete.  The MDL 2179 parties have taken extraordinary measures to maintain documents.

### Conclusion

IT IS ORDERED that:  (1) BP's motion to quash (Rec. doc. 10388) is GRANTED; and (2) the deadline for an appeal is **Friday, July 12, 2013.**

New Orleans, Louisiana, this 5th day of July, 2013.

**SALLY SHUSHAN**
**United States Magistrate Judge**