UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "DEEPWATER HORIZON" in the Gulf of Mexico, on April 20, 2010<br><br>These Pleadings apply to: *All Cases*<br><br>(Including No. 10-2771) | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SUSHAN |

**OPPOSITION TO TRITON ASSET LEASING GMBH'S
RULE 52(c) MOTION FOR JUDGMENT ON PARTIAL FINDINGS**

Plaintiffs and Claimants-in-Limitation, through Plaintiffs' Co-Liaison Counsel, the Plaintiffs' Steering Committee, and the PSC Phase One Trial Team, respectfully submit this Memorandum in Opposition to Triton Asset Leasing GmbH's Motion for Judgment on Partial Findings [Rec. Doc. 10465]. Based on the live and deposition testimony, exhibits, and expert reports admitted during the Phase One Limitation and Liability Trial, the pleadings, and the record in the Transocean Limitation Action and this Multi-District Litigation, Plaintiffs respectfully ask this Court to deny Triton Asset Leasing GmbH's Motion for Judgment on Partial Findings for the reasons that follow:

**MAY IT PLEASE THE COURT:**

The legal and registered owner of the DEEPWATER HORIZON, Triton Asset Leasing GmbH ("Triton"), entered the DEEPWATER HORIZON into service in April 2001. Nearly four months later, on August 17, 2001, Triton transferred the possession, command and control of the DEEPWATER HORIZON to Transocean Holdings LLC pursuant to a bareboat charter

agreement (the "Bareboat Charter").[1]  Triton correctly observes that when the owner of a vessel bareboat charters the vessel to another party, that vessel owner is not responsible for negligence or unseaworthy conditions that arise after the date of the charter.  *See, e.g., Picou v. D&L Towing, Inc.*, 2010 WL 2696468, at *3-4 (E.D. La. July 2, 2010).  However, "**the vessel owner remains liable for those conditions existing prior to the bareboat charter or within the owner's privity or knowledge** . . . ."  *Billiot v. Fox Seafoods*, 1990 WL 109310, at *2 (E.D. La July 23, 1990) (citing *Baker v. Raymond International, Inc.*, 656 F.2d 173, 184 (5th Cir.1981), *cert. denied,* 102 S.Ct. 2256 (1982)).

Contrary to the assertions in Triton's motion, the evidence at trial proved that the DEEPWATER HORIZON was unseaworthy, as a result of the owner's negligence, from the time it was first put into service.  Thus, Triton is not entitled to exoneration from or limitation of liability under the Limitation of Liability Act, 46 U.S.C. §§30501-30512.

## FACTS

The DEEPWATER HORIZON went into service in April 2001 with a negligently designed and configured Blowout Preventer ("BOP").  The BOP was designed specifically for the DEEPWATER HORIZON and was put into service along with the vessel. *See* Phase One Stipulation No. 92.[2]  It is undisputed that the BOP was an essential, safety-critical piece of vessel equipment, without which the DEEPWATER HORIZON could not accomplish its mission of deepwater hydrocarbon exploration.  *See* Davis Testimony, pp.2674-2675; Webster Testimony,

---

[1] The original parties to the Bareboat Charter were Transocean Offshore International Ventures Limited (vessel owner) and R&B Falcon Drilling Co (charterer). A series of assignments of ownership and rights occurred between 2001 and 2010, and the parties to the Bareboat Charter at the time of the Macondo incident were Triton Asset Leasing GmbH (vessel owner) and Transocean Holdings LLC (charterer). For convenience, we refer to Triton and Transocean Holdings LLC as the respective parties to the Bareboat Charter, not their predecessors.

[2] The stipulation states, "In 1999, R&B Falcon issued purchase orders to Cameron concerning specified blowout preventer ("BOP") equipment for the DEEPWATER HORIZON, PO 087-00101 and PO 087-00015." *See* Rec. Doc. 5927 (Feb. 29, 2012).

2

p.3750.  As is obvious from its name, the BOP's intended purpose was to prevent a blowout, such as the one which occurred at the Macondo Well, (or at the very least to provide a means for shutting in the well and enabling the vessel to either drive or drift off-station safely without an uncontrolled flow of oil or other hydrocarbons released into the Gulf of Mexico).  The testimony and evidence at trial established that the BOP was negligently designed and configured when it was first put into service, and was incapable of preventing a blowout in a high pressure/high temperature deepwater well such as Macondo.  As a result, the BOP was never fit for its intended purpose, and rendered the vessel unseaworthy from the time it was first launched.  *See Cox v. Esso Shipping Co.*, 247 F.2d 629, 636-37 (5th Cir. 1957) (recognizing that a vessel owner has a "heavy obligation to provide seaworthy equipment" and "an absolute duty to furnish reasonably suitable appliances").

Prior to the execution of the Bareboat Charter, the DEEPWATER HORIZON's BOP was unfit for its intended purpose in the following ways, each of which played a significant contributing role in the failure of the BOP to seal the Macondo well:

1. All emergency BOP functions (including AMF, Autoshear and EDS-1) were dependent on the success of a single component, the Blind Shear Ram ("BSR"), for shearing the pipe and sealing the well.[3]  This sole reliance on the BSR in the event of an emergency created a single point of failure such that if, for whatever reason, the BSR failed to function, then all of the BOP's emergency functions were rendered helpless.[4]  BP and Transocean knew in 2000 that the BSR in this design represented a single point of failure, yet deliberately chose not to eliminate this dangerous design flaw.  This fact is evidenced in an April 2000 report titled "Risk Assessment of the DEEPWATER HORIZON Blowout Preventer (BOP) Control System."  The report stated, "The major contributor to the failure likelihood associated with the BOP control system results from the selected stack configuration. With only one shear ram capable of sealing the well in, it is extremely difficult to remove all of the single failure points from the control system."[5]  Alternative designs existed at the time the DEEPWATER HORIZON's BOP was

---

[3] *See, e.g.,* Perkin Testimony, p.3332:6-9; Childs Testimony, pp.5254:17-5255:7; Ambrose Testimony, p.6258:22-25; D-3096; Perkin Report (TREX-07535) p.20; Stevick Report (TREX-61123) pp.15-16; Abbassian Deposition, pp.636:8-637:10; TREX-4120 pp.41-42; Erwin Deposition, p.64.
[4] *See, e.g.,* Childs Testimony, pp.5254:17-5255:7; Perkin Testimony, p.3332:6-9; D-3096.
[5] TREX-4120 p.39.

3

originally configured, including the use of two Blind Shear Rams, which would have eliminated this design flaw of a single failure point.[6]

2. The design and configuration of the BOP did not take into account the potential for an off-center pipe or consider how to allow the BOP to function as intended in such an event. At trial, all BOP experts agreed that an off-center pipe was a well-known, foreseeable circumstance, and numerous alternative designs existed that would have addressed the issue, including: (1) utilizing a Casing Shear Ram/BSR sequence; (2) adding a second BSR[7]; or (3) using a Double-V ram that had better centering and shearing capabilities.[8] The failure to have a BOP with a failsafe method for dealing with off-center pipe was a major contributing factor to the Macondo blowout because it prevented the BOP from sealing the well. Stated differently, the DEEPWATER HORIZON's BOP could not and did not handle this foreseeable condition.[9]

3. The MUX Cable design left the BOP system (including the EDS) vulnerable to an explosion at or near the moon pool, which is a hazardous area and in direct proximity to the drill floor. Numerous experts at trial testified that this was a critical design flaw that rendered the DEEPWATER HORIZON unseaworthy from the time it was first put into service.[10] A 2001 review of the original BOP stack design clearly recognized that a fire or explosion in the moon pool could destroy the MUX cables, yet the knowingly defective design was not changed.[11]

4. Transocean could and should have utilized an acoustic system that would have allowed the crew to activate the BOP stack after the MUX Cables were destroyed in the explosion.[12] An acoustic trigger would have provided redundancy in the event that the MUX cables were rendered inoperable. Unlike the DEEPWATER HORIZON, every Transocean and BP rig off the coast of Brazil and in the North Sea is equipped with an acoustic trigger.[13]

5. The BOP never was capable of shearing and sealing or otherwise containing a deepwater well with high flow capacity such as Macondo.[14]

---

[6] TREX-7001 p.6; Davis Testimony, pp.2662:15-2664:2.
[7] In its criminal plea, BP agreed to have at least two blind shear rams on any Gulf of Mexico well going forward. *See* TREX-52673 pp.32-33.
[8] *See, e.g.,* Perkin Testimony, pp.3334:22-3335:17, 3339:1-7; Davis Testimony, pp.2662:18-2664:2.
[9] *See, e.g.,* Davis Testimony, pp.2657:14-2658:13; Perkin Testimony, p.3393:1-12.
[10] *See, e.g.,* Webster Testimony, p.4180; Perkin Testimony, pp.3352:12-3353:8; Perkin Report (TREX-7535) p.19.
[11] *See* TREX-5094 p.5.
[12] *See, e.g.,* Perkin Testimony, pp.3348-3353; TREX-25199 p.76; D-2077; Webster Testimony, p.3775; Perkin Report (TREX-7535) pp.7,8,13,18,19; Stevick Report (TREX-61123) pp.24-26.
[13] *See, e.g.,* Newman Testimony, p.4660; Perkin Testimony, p.3349.
[14] *See, e.g.,* Webster Report (TREX-22700) pp.14-15; Davis Testimony, p.2664:3-15.

*See generally:* Plaintiffs' PROPOSED FINDINGS AND CONCLUSIONS [Doc. 10459] pp.71-90.  It is uncontested that all of these negligently-created conditions and design flaws existed prior to the execution of the Bareboat Charter on August 17, 2001.

### RULE 52(c) STANDARD

Federal Rule of Civil Procedure 52(c) provides that:

> [i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.  The court may, however, decline to render any judgment until the close of the evidence.  A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

This Rule "authorizes the court to enter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence."  Fed.R.Civ.P. 52(c) advisory committee's notes.  The district court "is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies." *Aubey v. Noble Drilling*, 24 F.3d 240 (5th Cir. 1994) (citing 9 Wright & Miller, Federal Practice and Procedure: Civil § 2371 at 225).

### ARGUMENT

The existence of a valid demise charter does not absolve Triton of its absolute and non-delegable duty to furnish a seaworthy vessel and equipment that are reasonably safe and fit for their intended purposes.  The law makes clear that even "after control of the vessel is turned over to the charterer, the owner remains liable for injuries caused by defects in the vessel that existed before the commencement of the charter." *Baker*, 656 F.2d at 183.  The evidence adduced at trial proves that the DEEPWATER HORIZON was unseaworthy, due to the owner's negligence, prior to August 17, 2001.

In *Walker v. Harris*, 335 F.2d 185, 191 (5th Cir. 1964), the Fifth Circuit identified the essential questions to answer when determining the seaworthiness of a vessel:

5

> "The subsidiary questions leading to ultimate conclusion of seaworthiness are therefore: what is the vessel to do? What are the hazards, the perils, the forces likely to be incurred? Is the vessel or the particular fitting under scrutiny, sufficient to withstand those anticipated forces? If the answer is in the affirmative, the vessel (or its fitting) is seaworthy. If the answer is in the negative, then the vessel (or the fitting) is unseaworthy no matter how diligent, careful, or prudent the owner might have been."

Triton knew the hazards and perils that the DEEPWATER HORIZON would be facing when it was put into service in April 2001, four months <u>before</u> the execution of the Bareboat Charter.[15] It knew the primary purpose of the DEEPWATER HORIZON was to drill holes in deepwater sea beds under high pressures and temperatures in order to access hydrocarbons. It knew of the grave risks associated with a project that was akin to space exploration.[16] It knew that the BOP was the most safety critical piece of vessel equipment. It was her last line of defense against an uncontrolled blowout, riser unload, and every mariner's worst nightmare – a shipboard explosion and fire at sea. Yet, in the face of these known risks, Triton chartered the vessel to its sister entity with a BOP that was unfit for its intended purpose.

Triton seems to argue that "BP specified the configuration of the BOP" and therefore it should not be held responsible for the BOP's design flaws. However, the evidence paints a different picture and makes clear that BP and Transocean worked hand-in-hand to design and configure the BOP. *See, e.g.,* TREX 4271 (Drilling Contract between BP and Transocean) pp.79-80 (outlining the stack configuration of the BOP). Moreover, BP's role in the BOP configuration is irrelevant. Triton cannot pass the blame for the unseaworthiness of its vessel to BP. As the vessel owner, Triton has a <u>non</u>-<u>delegable</u> duty to provide a seaworthy vessel. *Brister v. A.W.I., Inc.*, 946 F.2d 350, 355 (5th Cir. 1991). No matter how much BP contributed to the design of the BOP, Triton bears the burden of liability for its defects.

---

[15] *See* TREX-3808 (Transocean Investigation Report, Vol. 1) at p.12.
[16] *See, e.g.,* Hayward Deposition, p.863:22-25; Wetherbee Deposition, p.40:04-20.

Until the Bareboat Charter went into effect on August 17, 2001, Triton had the non-delegable duty to provide a seaworthy vessel fit for its intended purpose, including the duty "to provide necessary appliances, gear, and equipment." *Webb v. Dresser Industries*, 536 F.2d 603, 606 (5th Cir. 1976); *see also Johnson v. Offshore Exp., Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988) ("To be seaworthy, a vessel and its appurtenances must be reasonably suited for the purpose or use for which they were intended."). Triton cannot shift the entirety of the responsibility for its own negligence and the DEEPWATER HORIZON's unseaworthiness onto the bareboat charterer, Transocean Holdings, LLC. Rather, Triton is responsible for the negligently configured and unseaworthy components of the vessel that were in service prior to the transfer of control of the vessel on August 17, 2001.

## Conclusion

The facts of the case and the applicable law do not support limitation or an exoneration of Triton under 46 U.S.C. §§ 30501-30512. For the above and foregoing reasons, for the reasons set forth in Plaintiffs' Proposed Findings and Conclusions, and for the reasons set forth in Plaintiffs' Post-Trial Reply Brief, Triton's Motion for Judgment on Partial Findings should be denied.

This <u>11th</u> day of <u>July</u>, <u>2013</u>.

Respectfully submitted,

  /s/   Stephen J. Herman                                   /s/ James Parkerson Roy
**Stephen J. Herman**, La. Bar No. 23129        **James Parkerson Roy**, La. Bar No.11511
**HERMAN HERMAN & KATZ LLC**                  **DOMENGEAUX WRIGHT ROY**
820 O'Keefe Avenue                                           **& EDWARDS, LLC**
New Orleans, Louisiana 70113                        556 Jefferson Street, Suite 500

Telephone: (504) 581-4892
Fax. No. (504) 569-6024
Email: sherman@hhklawfirm.com
*Plaintiffs Liaison Counsel*

Lafayette, Louisiana 70501
Telephone: (337) 233-3033
Fax No. (337) 233-2796
E-Mail: jimr@wrightroy.com
*Plaintiffs Liaison Counsel*

## **PLAINTIFFS' STEERING COMMITTEE**

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office: (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT, DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office: (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Office: (415) 956-1000
Telefax: (415) 956-1008
E-Mail: ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Office: (504) 394-9000
Telefax: (504) 394-9110
E-Mail: pcossich@cossichlaw.com

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY 10003
Office: (212) 558-5802
Telefax: (212) 344-5461
E-Mail: rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office: (334) 269-2343
Telefax: (334) 954-7555
E-Mail: rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU LLP
501 Broad Street
Lake Charles, LA 70601
Office: (337) 439-0707
Telefax: (337) 439-1029
E-Mail: mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA 70801-1910
Office: (225) 344-3735
Telefax: (225) 344-0522
E-Mail: mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail:  ervin@colson.com

601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

## ADDITIONAL PSC PHASE ONE TRIAL TEAM MEMBERS

Johnny deGravelles
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  jdegravelles@dphf-law.com

9

Walter J. Leger, Jr.
LEGER & SHAW
600 Carondelet St., 9th Floor
New Orleans, LA 70130
Phone: (504) 588-9043
Fax: (504) 588-9980
E-Mail: wleger@legershaw.com

Jimmy Williamson
WILLIAMSON & RUSNAK
Texas State Bar No. 21624100
4310 Yoakum Blvd.
Houston, TX 77006
Phone: (713) 223-3330
Fax: (713) 223-0001
E-Mail: Jimmy@JimmyWilliamson.com

Tom W. Thornhill
THORNHILL LAW FIRM, APLC
1308 Ninth Street
Slidell, Louisiana 70458
Phone: (985) 641-5010
Fax: (985) 641-5011 fax
E-Mail: tom@thornhilllawfirm.com

Anthony Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Tel: (504) 525-1500
Fax: (504) 525-1501
E-Mail: airpino@irpinolaw.com

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that the above and foregoing Opposition has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 11th day of July, 2013.

s/  Stephen J. Herman and James Parkerson Roy