UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * * | MDL NO. 2179 "J"(1) |
| | | JUDGE BARBIER |
| | | MAGISTRATE SHUSHAN |
| **THIS DOCUMENT APPLIES TO:** Case No. 12-311 | * * * * | **JURY TRIAL DEMANDED** |

## LIBERTY INTERNATIONAL UNDERWRITERS, INC.'S MEMORANDUM IN SUPPORT OF RULE 72 APPEAL OF MAGISTRATE'S JULY 5, 2013 DISCOVERY ORDER

Defendant Liberty International Underwriters, Inc. ("LIU") submits this Memorandum in Support of its Rule 72 Appeal of the Magistrate's July 5, 2013 Discovery Order granting non-party BP's Motion to Quash. R. Doc. 10642. For the following reasons, the Court should reverse.

## INTRODUCTION

LIU issued a subpoena to discover a limited number of documents from BP – primarily settlement communications between plaintiff Cameron International Corporation ("Cameron") and BP during the three-month period from October to December 2011. In response, BP failed and refused to produce a single document or even a privilege log, and moved to quash LIU's subpoena in its entirety, which the Magistrate granted. The Magistrate's Discovery Order – which cites *no* controlling jurisprudence – is clearly erroneous and contrary to law.

As an initial matter, the fact that LIU also issued discovery requests to Cameron is not grounds to quash its subpoena to BP seeking some of the same categories of documents. LIU

1

is entitled, at minimum, to discover from BP different forms and versions of documents and also to determine through BP's production whether Cameron's own production is complete. There is no federal or other law to the contrary. Moreover, the documents sought are highly relevant to issues Cameron has raised concerning Cameron's and BP's intent in negotiating and finalizing their settlement. In fact, Cameron has listed in its initial disclosures BP representatives, including BP's Associate General Counsel, as persons with knowledge concerning topics such as "Cameron's agreements with BP concerning the Deepwater Horizon Incident" and "Cameron's negotiations and settlement with BP concerning the Deepwater Horizon Incident," suggesting that it may call BP representatives as witnesses at trial, attached as Exhibit A. These topics necessarily include, among other things, BP's demand that Cameron waive subrogation rights, the value and enforceability of those rights, and Cameron's position on the value of those rights.

Given that Cameron likely intends to offer extrinsic evidence on these topics from BP, and in order to prepare its defense to Cameron's claims, LIU is entitled to discovery of such evidence from both parties (Cameron) and non-parties (BP) alike. The Magistrate's Discovery Order effectively shielding BP from discovery when its own Associate General Counsel has been named as a person with knowledge and its intent with respect to the settlement is at issue, is clearly erroneous and contrary to law. This Court should reverse.

## BACKGROUND

### A.    The Dispute Between LIU and Cameron

This insurance coverage dispute arises out of Cameron's claim for coverage for its $250 million settlement with BP in December 2011 of claims arising out of the Deepwater Horizon incident. Before settling with BP, Cameron sought indemnity from Transocean under various contracts between the parties. In these contracts, Transocean had agreed that if it was entitled to indemnity under any contract with its "customers" with respect to pollution, it would

2

"provide [Cameron] with the benefit of such indemnity to the fullest extent possible." R. Doc. 6287, at ¶¶ 34-35.  BP was one of Transocean's "customers," and had agreed in its Drilling Contract with Transocean to indemnify Transocean for compensatory damage claims asserted by third parties related to sub-surface pollution.  Thus, Cameron's indemnity claim against Transocean potentially flowed through to BP.  *See id.* at ¶ 42.  In the Cameron-BP settlement agreement, Cameron assigned to BP its indemnity claim against Transocean, as BP purportedly insisted.

LIU, one of Cameron's excess insurers, has declined to fund the portion of the settlement allegedly reaching its layer of coverage because, among other reasons, (1) LIU's policy states that it is excess of "any type of . . . indemnification or other mechanism by which an Insured arranges for funding of legal liabilities"; and (2) in the settlement, Cameron extinguished LIU's valuable right to recover any amount paid from Transocean (and ultimately BP) based on contractual indemnity.  LIU contends that Cameron's assignment of its indemnity rights to BP impaired LIU's subrogation rights in violation of the policy, and thus forfeited coverage.

Cameron sued LIU in January 2012 seeking coverage for LIU's $50 million share of the BP settlement.[1]  In addition to its contract claim, Cameron has asserted bad faith claims under Texas law based on, among other things, LIU's purported misrepresentation concerning "whether Cameron is entitled to indemnity for its losses associated with the Deepwater Horizon incident[.]"  R. Doc. 6287, at ¶ 86.  Cameron also claims that LIU "irresponsibly and

---

[1]     Anticipating the coverage dispute with LIU, and demonstrating BP's direct interest in that dispute, the BP-Cameron settlement requires Cameron to litigate and/or settle any coverage dispute only on terms favorable to BP.  *See* BP-Cameron settlement, R. Doc. 6697-3, at ¶ 4.6.  The agreement also requires BP to cooperate with Cameron and provide "reasonable and direct access to [its] respective personnel, employees, documents, business records and all other evidence in their possession, custody or control[.]"  *Id.* at ¶ 6.1(b).

881666_1

unjustifiably h[eld] Cameron's settlement with BP hostage in order to avoid or reduce Liberty's payment obligations[.]" *Id.* LIU moved for judgment on the pleadings in May 2012. The Court denied the motion in part, finding that to be excused from its coverage obligation based on Cameron's impairment of its subrogation rights, LIU must show that "Cameron released legally valid and enforceable indemnity claims against Transocean." R. Doc. 7129, at 25. The Court also found that Cameron's bad faith claims presented issues of fact for the jury. *Id.* at 28.

**B.**    **Issues Cameron has Raised Bearing on Discovery Issued to BP**

In its pleadings and in discovery, Cameron has raised many issues concerning its settlement negotiations with BP and/or the parties' intent with respect to the BP-Cameron settlement, including at least the following:

- Cameron contends that ***BP insisted*** that Cameron waive its indemnity rights in connection with the settlement: "BP also made clear that it would not settle with Cameron unless . . . Cameron agreed to a complete waiver of any contractual indemnification claims Cameron might have against Transocean that might flow to BP[.]" R. Doc. 6287, at ¶ 42, ¶ 53 ("Cameron's release of its indemnification claims was thus a crucial part of the settlement consideration that BP was seeking as part of the settlement.").

- Cameron contends that ***BP insisted*** on finalizing the settlement by close of business on December 14, 2011, preventing Cameron from proceeding with the hearing on its pending Motion for Summary Judgment concerning its right to indemnity against Transocean, which was scheduled for the next day. *Id.* at ¶ 48 ("BP, growing increasingly impatient, told Cameron that its settlement demand might increase significantly in the event a settlement could not be reached by the end of that day.").

- Cameron contends that it did not impair LIU's subrogation rights in the settlement, although it clearly transferred and assigned its indemnification rights to BP. *See* R. Doc. 6697-2, at 23-24. To support this claim, Cameron has raised the issue of BP's intent in depositions. Cameron's counsel questioned Jessica Rogin, one of LIU's employees involved with Cameron's claim, concerning whether she had ever spoken to the parties to the BP-Cameron settlement or could "guess as to [the parties'] intent with regard to the Cameron BP settlement[.]" J. Rogin Depo., attached as Exhibit B, at 91:16-25. Cameron's counsel also asked Ms. Rogin to agree that she "wouldn't know the intent of the parties even had [she] read [the BP-Cameron settlement]." *Id.* at 94:17 to 96:13. Cameron

4

likewise questioned LIU's James Engel concerning his knowledge of BP's and Cameron's intent in entering into the settlement agreement.   J. Engel Depo., attached as Exh. C, at 192:21 to 193:8.  Finally, Cameron questioned Maureen Martin, a representative of one of the paying insurers, concerning the meaning of the settlement agreement and the parties' intent.  M. Martin Depo., attached as Exh. D, at 177 to 179.

Supporting its claims concerning the parties' intent, Cameron has listed as persons with knowledge in its Rule 26 disclosures several Cameron and BP representatives, including BP's Associate General Counsel (Jim Neath).   The topics about which these persons are knowledgeable include "Cameron's agreements with BP concerning the Deepwater Horizon Incident" and "Cameron's negotiations and settlement with BP concerning the Deepwater Horizon Incident." *See* Exh. A.

In addition to these specific issues Cameron has raised with respect to its negotiations with BP and the parties' intent, Cameron has maintained throughout this suit that its indemnity claim against Transocean (and ultimately BP) was weak and of little or no value. *See, e.g.,* R. Doc. 6697-2, at 20.  Because Cameron was unlikely to prevail in this claim, Cameron apparently contends, the assignment of this claim to BP in the settlement did not harm LIU. *See id.* at 24, n.7 (suggesting LIU's subrogation rights may have been of no value if Cameron was not entitled to indemnification).   This directly contradicts the position Cameron took in its Motion for Summary Judgment filed before the BP-Cameron settlement. *See* R. Doc. 4524. Consistent with its summary judgment briefing, Cameron likely represented to BP in settlement negotiations that its indemnity claim was strong.  Such statements potentially support LIU's claims in this suit that the indemnity rights were valid and enforceable.

881666_1

C.   **LIU's Subpoena to BP**

To explore the issues Cameron has raised concerning the parties' negotiations, the meaning of the settlement agreement, and the underlying indemnity agreements, on February 15, 2013, LIU issued a subpoena to BP seeking the following categories of documents:

- All documents and communications between [BP] and Cameron concerning the BP Settlement.

- All documents and communications regarding the negotiation, drafting, and execution of the BP settlement.

- All documents and communications regarding Cameron's claim for coverage for liabilities arising out of the Deepwater Horizon Incident.

- All documents and communications between [BP] and Cameron concerning Cameron's indemnity claims against Transocean.

R. Doc. 10388-2.

These requests seek documents probative and relevant to the issues described above, which Cameron has raised. For example, documents concerning the indemnity claim are probative of an issue at the heart of the case: the validity and value of the indemnity claims and Cameron's assignment of the claim to BP purportedly at BP's insistence. Documents regarding Cameron's insurance claim also are relevant, especially since Cameron has alleged it was required to assign its rights to BP but now suggests that such assignment has no effect on LIU's subrogation rights. Nevertheless, in response to the subpoena, BP failed and refused to produce a single document or even a privilege log. BP then moved to quash the subpoena in its entirety.

D.   **The Magistrate's Discovery Order**

On July 5, 2013, without citing any controlling jurisprudence, the Magistrate quashed LIU's subpoena in its entirety. R. Doc. 10642. The Magistrate concluded documents concerning the BP/Cameron settlement agreement and Cameron's indemnity claim are not

6

relevant notwithstanding that such documents could refute Cameron's arguments about the effect of the settlement on LIU's contractual rights.[2]   The Magistrate also apparently ignored Cameron's Rule 26 disclosures, which suggest that Cameron may offer testimony and other evidence, including from BP's Associate General Counsel, concerning the settlement.

The Magistrate next held that documents sought from BP were not relevant to Cameron's bad faith insurance claim against LIU. R. Doc. 10642, at 3. Again, the Magistrate offered no analysis or jurisprudence, or any support whatsoever for the claim that "the bad faith claim depends entirely on Liberty's state of mind and action. Communications between BP and Cameron that Liberty was unaware of cannot be probative of what Liberty knew or did – the only matters relevant to the bad faith claim." *Id.* Finally, the Magistrate correctly held that statements by Cameron in settlement negotiations concerning the "strength of Cameron's indemnification claims against Transocean" are relevant (*id.*), **but** because such documents arguably can be obtained from Cameron, BP need not produce them. *Id.* at 4-5. Once again, the Magistrate offered no jurisprudence in support.

---

[2]   Under Rule 26, discoverable information "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Courts routinely permit discovery of extrinsic documents bearing on the interpretation of a contract. *See Int'l Paper Co. v. Rexam, Inc.*, No. 11-6494, 2013 WL 3043638, at *6 (D.N.J. June 17, 2013) (extrinsic evidence which could aid in contract interpretation was discoverable); *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 364-65 (S.D.N.Y. 2010) (any evidence which might further the interpretation of the contract provision at issue was discoverable); *Green Constr. Co. v. Kansas Power and Light Co.*, 732 F. Supp. 1550, 1554 (D. Kan. 1990) (reasoning that the broad nature of relevancy for discovery purposes permitted discovery of extrinsic evidence that could aid in contract interpretation).

881666_1

# ARGUMENT

## A.     Standard of Review

The Court reviews a Magistrate's non-dispositive discovery rulings to determine whether they are clearly erroneous or contrary to law.  F.R.C.P. 72(a); 28 U.S.C. § 636(b)(1)(A). For the reasons contained herein, the Court should reverse the Discovery Order.

## B.     LIU Is Entitled to Full and Complete Discovery From BP, a Non-Party.

Though the reasoning is not entirely clear, the Magistrate apparently accepted the argument that no matter how relevant the documents LIU sought from BP, the subpoena should be quashed because BP is a non-party, and instead LIU "should be required to obtain [the documents] from Cameron," a party to the lawsuit.  R. Doc. 10642, at 4.  In so holding, the Magistrate did not cite any federal rule or jurisprudence, nor does any exist.[3]  There simply is no rule that a party cannot seek non-party discovery of documents that may also be in a party's possession.  *State Farm v. Accurate Medical, P.C.*, No. 07-0051, 2007 WL 2993840 (E.D.N.Y. Oct. 10, 2007) ("nothing in the Federal Rules of Civil Procedure requires a litigant to rely solely on discovery obtained from an adversary instead of utilizing subpoenas") (citing *Covey Oil Co.*

---

[3]     The Magistrate correctly did not cite jurisprudence out of the Eastern District of Louisiana offered by BP in its prior briefing.  R. Doc. 10557, at 4.  None of BP's cases holds that a non-party need not produce documents simply because a party also may possess them.  In fact, the cases do not support BP's position at all.  *See Chauppette v. Northland Ins. Co.*, No. 08-4193, 2009 WL 4060452, at *2-4 (E.D. La. Nov. 19, 2009) (finding certain discovery requests to non-party were relevant, and refusing to quash subpoena in its entirety); *Fleet Bus. Credit v. Hill City Oil*, No. 03-324, 2003 WL 840979, at *3 (E.D. La. Feb. 28, 2003) (quashing subpoena served on non-party lawyer after lawyer's client allegedly failed properly to respond to separate subpoena issued in another jurisdiction; "records deponents . . . are for all intents and purposes one and the same"); *Batture Fleet, Inc. v. Browner*, No. 00-0205, 2000 WL 748093, at *2 (E.D. La. June 8, 2000) (quashing subpoena to non-party seeking trade secrets and having "unreasonable," "overbroad and burdensome" requests); *In re Application of Time, Inc.*, No. 99-2916, 1999 WL 804090, at *7 (E.D. La. Oct. 6, 1999) (subpoena was "grotesquely overbroad").

881666_1

*v. Continental Oil Co.*, 340 F.2d 993, 998 (10th Cir. 1965) ("[A] person may not avoid a subpoena by saying that the evidence sought from him is obtainable from another.")).

In fact, courts have held that "production from a third party will be compelled in the face of an argument that the 'same' documents could be obtained from a party, because there is reason to believe that the files of the third party may contain different versions of documents, additional material, or perhaps, significant omissions." *Viacom Intern., Inc. v. YouTube, Inc.*, No. 08-80129, 2008 WL 3876142, at *3 (N.D. Cal. Aug. 18, 2008) (quoting *Visto Corp. v. Smartner Info. Sys., Ltd*, No. 06-80339, 2007 WL 218771, at *3 (N.D. Cal. Jan. 29, 2007)); *see also Software Rights Archive, LLC v. Google, Inc.*, No. 07-511, 2009 WL 1438249, at *3 (D. Del. May 21, 2009) (refusing to deny motion to compel because of allegedly overlapping discovery efforts).   Indeed, by "allowing for discovery from both the party and non-party, completeness of discovery is more likely to be achieved." *Id.* at *2.  Therefore, a non-party can be ordered to produce documents from third parties, even though those same documents may be in possession of a non-party. *Viacom*, 2008 WL 3876142 at *3.

LIU cannot ensure it has all relevant documents and communications relating to the BP-Cameron settlement negotiations without reviewing relevant documents in BP's control. BP may have different versions of the documents, and it may very well have other documents and communications that Cameron failed to produce.  The Magistrate's statement that the "parties have taken extraordinary measures to maintain documents" does not mean that Cameron actually has **produced** all requested documents in its current action against LIU.  R. Doc. 10642, at 5.  LIU is entitled to test Cameron's production – to achieve the "completeness of discovery" permitted by federal law – through its subpoena to BP.  And importantly, the Magistrate did not find that the documents requested of BP – communications primarily during a limited three-

month time period (October 2011 to December 2011) – were overbroad or unduly burdensome. It simply developed a rule, nowhere recognized in the jurisprudence, that LIU must seek discovery from a party (Cameron), and not a non-party (BP).[4]  The Magistrate's Discovery Order is clearly erroneous and contrary to law.  The Court should reverse.

## C.   The Documents Sought from BP Are Highly Relevant.

The documents LIU has sought from BP are highly relevant to issues Cameron has raised concerning Cameron's and BP's intent in negotiating and finalizing their settlement. Indeed, the Magistrate correctly held that documents sought from BP reflecting statements concerning the "strength of Cameron's indemnification claims against Transocean" are relevant.[5] R. Doc. 10642, at 3.

The Magistrate, however, held that other documents sought from BP are *not* relevant to the issue of any purported ambiguity in the settlement agreement (*id.* at 2), even though Cameron has indicated that it may offer testimony, including from BP's Associate General Counsel, concerning topics such as "Cameron's agreements with BP concerning the Deepwater Horizon Incident" and "Cameron's negotiations and settlement with BP concerning the Deepwater Horizon Incident."  *See* Exh. A.  The documents sought by LIU bear on these very topics, which necessarily include BP's demand that Cameron waive subrogation rights, the value and enforceability of Cameron's indemnity rights, and Cameron's position on the value of those rights.  *See* F.R.E. 401 (evidence is relevant if "it has *any tendency* to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in

---

[4]   Similarly situated non-parties have not objected to producing similar documents to LIU. For example, Transocean has produced more than 1,700 pages of documents to LIU without objection and intends to supplement its production.  The Transocean document production does not include the Cameron/BP communications sought from BP.

[5]   But, as discussed above, the Magistrate held BP need not produce the relevant documents because LIU arguably could obtain them from Cameron.

determining the action") (emphasis added).   Indeed, Cameron itself has raised an issue concerning whether Cameron and BP intended that Cameron waive LIU's subrogation rights in the BP-Cameron settlement, recently asking myriad questions of Jessica Rogin, an LIU witness, concerning her understanding of Cameron's and BP's intent, and specifically suggesting that Ms. Rogin "wouldn't know the intent of the parties." *See* Exh. B, at 94:17 to 96:13.[6]

Given the possibility that Cameron will rely on evidence outside of the BP-Cameron settlement agreement to prove the agreement's meaning and/or the parties' intent, LIU should have the opportunity to discover all documents concerning the parties' settlement communications and Cameron's claim for coverage.   It would be patently unfair to allow Cameron to offer evidence through BP, while BP has not produced a single document (or even a privilege log) to LIU. The Magistrate's Discovery Order should be reversed.

The Magistrate further held that the documents sought were not relevant to Cameron's bad faith claims, which the Court has found present issues of fact for the jury. R. Doc. 10642, at 3. The Magistrate seemingly relied entirely on the unsupported proposition[7] that "the bad faith claim depends entirely on Liberty's state of mind and action.   Communications between BP and Cameron that Liberty was unaware of cannot be probative of what Liberty knew or did – the only matters relevant to the bad faith claim." *Id.* Yet what Cameron knew and did – just like what LIU knew and did – is central to the claim of bad faith.   Under Texas law, as this Court already has observed, Cameron must show both that LIU's liability under its policy was

---

[6]   The Magistrate apparently accepted BP's erroneous claim that LIU "relies on its own representative to create ambiguity where there is none." R. Doc. 10642, at 2.  LIU, however, did not offer Ms. Rogin to create ambiguity in the settlement agreement, nor did she provide such testimony.   For present purposes, the import of her deposition was counsel's own questions that reinforced Cameron's focus on the parties' intent and extrinsic evidence.

[7]   Nor did BP in its prior briefing, where it advanced this proposition. R. Doc. 10557, at 2-3.

881666_1

reasonably clear *and* Cameron's liability on the underlying claim was reasonably clear. *See* Rec. Doc. No. 7129, at p. 28 (quoting *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W. 3d 253, 262 (Tex. 2002).   Statements by Cameron about its indemnity rights and exposure in the underlying litigation, as well as its claim for insurance coverage, are probative of both of these issues.  The Magistrate's conclusion that the documents are not probative of LIU's state of mind misses the mark and is contrary to Texas law.  Under Texas law, to resolve the bad faith claim, the Court must consider issues other than merely LIU's state of mind.

Moreover, Cameron has alleged, essentially, that BP insisted on certain settlement terms and conditions, and that Cameron ***had no choice*** but to agree to these terms.  The terms and conditions included, among other things, (1) assignment of Cameron's indemnity rights, and (2) completion of the settlement by December 14, 2011, ***before*** Cameron's Motion for Summary Judgment could be heard.  Because BP insisted on these terms, and Cameron allegedly faced "substantial danger" if it did not settle with BP, Cameron argues that LIU breached its obligations to Cameron, and committed bad faith, by not agreeing to these terms.  *See, e.g.,* R. Doc. 6287, at ¶ 43 ("Notwithstanding Liberty's knowledge that BP would not settle with Cameron unless claims against Transocean were waived, Liberty refused to agree that Cameron could waive them, thereby placing negotiations with BP at great risk.").

LIU is entitled to discover the parties' communications bearing on bad faith – to determine whether these terms actually were non-negotiable as Cameron contends, and/or what other options Cameron may have had.  It is entitled to such discovery from any source, including a non-party like BP. *E.g., State Farm v. Woods*, 925 F. Supp. 1174, 1179 (E.D. Tex. 1996) ("Circumstantial evidence is similarly relevant in resolving a claim of bad faith") (citing *State Farm v. Polasek*, 847 S.W.2d 279, 287 (Tex. Ct. App. 1992); *St. Paul Guardian Ins. Co. v.*

881666_1

*Luker*, 801 S.W.2d 614, 622 (Tex. Ct. App. 1990)); *see also First Nat'l Bank v. Lustig*, Nos. 87-5488, 88-1682, 1993 WL 411377, at *1 (E.D. La. Oct. 5, 1993) (circumstantial evidence relevant on bad faith claim). Cameron's bad faith claims involve fact issues subject to discovery for the jury to determine, including issues related to Cameron's allegation that LIU held Cameron's settlement with BP hostage to avoid or reduce its payment obligation. R. Doc. 7129, at 28. The Court should reverse the Magistrate's Discovery Order, and order production of *all* documents reflecting communications between BP and Cameron concerning settlement and Cameron's claim for insurance coverage.

## CONCLUSION

The Magistrate's Discovery Order is unsupported, contrary to law, and clearly erroneous. LIU is entitled to discovery from BP, a non-party, even though LIU also has issued discovery requests to Cameron, a party. There is no federal or other law prohibiting discovery on both parties and non-parties that seeks similar information. Moreover, the documents sought are highly relevant to issues Cameron has raised concerning Cameron's and BP's intent in negotiating and finalizing their settlement, including but not limited to BP's demand that Cameron waive subrogation rights, the value and enforceability of Cameron's indemnity rights, and Cameron's position on the value of those rights. Cameron has suggested that it plans to offer evidence on these issues, including through BP witnesses. It is only fair that LIU be permitted discovery on BP in order to defend itself in this lawsuit. This Court should reverse.

13

881666_1

Respectfully submitted,

*/s/ Judy Y. Barrasso*
Judy Y. Barrasso, 2814
Celeste Coco-Ewing, 25002
BARRASSO USDIN KUPPERMAN
    FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana  70112
504.589.9700 (Telephone)
504.589.9701 (Facsimile)

and

Christopher W. Martin, PRO HAC VICE
Federal I.D. 13515
Gary L. Pate, PRO HAC VICE
Federal I.D. 29713
808 Travis, Suite 1800
Houston, Texas 77002
713-632-1700 (Telephone)
713-222-0101 (Facsimile)

Attorneys for Liberty International
    Underwriters, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 12th day of July, 2013.

*/s/ Judy Y. Barrasso*

14

881666_1