**MDL 2179**
_____

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
_____

**IN RE: OIL SPILL BY THE OIL RIG DEEPWATER HORIZON
IN THE GULF OF MEXICO ON APRIL 20, 2010**
_____

This document relates to: All Actions
_____

**THE STATE OF ALABAMA'S REPLY BRIEF
REGARDING HALLIBURTON'S POST-INCIDENT CONDUCT
AND VICARIOUS LIABILITY FOR PUNITIVE DAMAGES**
_____

LUTHER STRANGE
*Attorney General*

COREY L. MAZE
*Special Deputy Attorney General*

WINFIELD J. SINCLAIR
*Assistant Attorney General*

OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, AL 36130
(334) 353-4336
cmaze@ago.state.al.us

Attorneys for the State of Alabama

## Table of Contents

Three Independent Factual Findings Make HESI Vicariously Liable for Jesse Gagliano's Willful, Wanton, and Reckless Foam Cement Job. ........................1

A.   HESI Ratified Gagliano's Reckless Cement Job, as Demonstrated by HESI's Post-Incident Conduct and Trial Defense........................................2

B.   Gagliano was a "Managerial Agent" of HESI, as Demonstrated by Gagliano's Unfettered Control over the Macondo Cement Job. .....................4

C.   HESI Recklessly Employed Gagliano, as Demonstrated by HESI's Knowledge of Complaints about Gagliano's Performance. ...........................5

Summary / Conclusion ............................................................................................5

Certificate of Service ..............................................................................................6

## Table of Authorities

### Cases

*E.E.O.C. v. Service Temps Inc.*, 679 F.3d 323, 336 (5th Cir. 2012).........................5

*Ellis v. Simmons*, 11 F.2d 596, 597 (5th Cir. 1926)..................................................3

*Matter of P&E Boat Rentals*, *Inc.* 872 F.2d 642 (5th Cir. 1989) .................... passim

*Prunty v. Arkansas Freightways, Inc.*, 16 F.3d (5th Cir. 1994) ................................3

### Treatises

3 Am. Jur. 2d Agency §§189, 93-97 ..........................................................................3

Restatement (Second) of Agency §94, 97(b) (1958) .................................................3

Restatement (Third) of Agency §4.01 (2006)............................................................3

Linda Schlueter and Kenneth Redden, *Punitive Damages*, §4.4(B)(2)
(3rd ed. 1995) ……………………………………………………………… 2, 3, 5

i

## ALABAMA'S REPLY BRIEF
_____

Alabama focuses its limited reply space on HESI's vicarious liability for Jesse Gagliano's wanton and reckless cement job because it kills two birds with one stone: (1) we rebut HESI's assertion that "the Court cannot consider [post-incident] activities in determining whether HESI acted with gross negligence," HESI Br. at 32; and, (2) we demonstrate how use to the vicarious liability chart in our opening brief (reprinted below).

**THREE INDEPENDENT FACTUAL FINDINGS MAKE HESI VICARIOUSLY LIABLE FOR JESSE GAGLIANO'S WILLFUL, WANTON, AND RECKLESS FOAM CEMENT JOB.**

The Court must make two findings to rule that a corporation is punitively liable under maritime law for the misconduct of an employee without "policymaking authority"[1]:

1. The employee's misconduct meets the standard for punitive damages under maritime law (*i.e.* Court's Question #2); and,

2. The corporation is also blameworthy under one or more of the following theories of vicarious liability (*i.e.* Court's Question #5):

|  | CA5, CA6 | CA1 | CA9, CA11(?) |
|---|---|---|---|
| The Corporation Recklessly Employed an Unfit Agent, Who Committed the GN Act | ✓ | ✓ | ✓ |
| The Corporation Authorized the GN Act before it was committed | ✓ | ✓ | ✓ |
| The Corporation Ratified the GN Act after it was committed | ✓ | ✓ | ✓ |
| A Managerial Employee Committed the GN Act *-plus-* the Corporation has some level of culpability for the GN Act |  | ✓ | ✓ |
| A Managerial Employee Committed the GN Act |  |  | ✓ |

---

[1] Alabama does not address or waive the argument that Gagliano had "policymaking" authority and was therefore acting *as* HESI for liability purposes. *See P&E Boat Rentals*, 872 F.2d at 652-53; Plaintiffs' PFF/CL at 182.

1

As for Step 1 (employee misconduct), the Plaintiffs' Findings of Fact and Conclusions of Law ("PFF/CL") detailed numerous ways that Gagliano acted willfully, wantonly, and recklessly with regard to the failed foam cement job, including, but not limited to (1) using a left-over blend that contained a de-foaming agent to create a foam cement slurry, and (2) failing to run requisite tests on the slurry before it was pumped into the Macondo well.  See Plaintiffs' PFF/CL at 174-76.  We add nothing to Step 1 here.

In Step 2, HESI becomes vicariously liable for Gagliano's wanton cement job based on any of three factual findings contained in our chart; two of which (A and C) satisfy *P&E Boat Rentals*.  We start with the one that makes HESI's post-incident conduct relevant.[2]

### A. HESI Ratified Gagliano's Reckless Cement Design and Testing, as Demonstrated by HESI's Post-Incident Conduct and Trial Defense.

HESI acknowledges that it can be punitively liable under *P&E Boat Rentals* if it "ratifies wanton actions of [its] agent."  HESI Br. 28.  By definition, the decision whether to ratify or repudiate an act occurs post-incident. Accordingly, review of HESI's post-incident conduct is not only relevant, it is *critical* to determining whether HESI ratified Gagliano's cement job and is therefore punitively liable under *P&E Boat Rentals*.  *See* 1 Linda Schlueter and Kenneth Redden, *Punitive Damages*, §4.4(B)(2)(a), p. 182 (3rd ed. 1995) ("Because there may be little to no direct evidence of [ratification or approval], the plaintiff may have to show other facts which would raise an inference of ratification or approval.")

Corporate ratification is a "question of fact," *id*., and courts have looked at the following, non-exclusive list of post-incident actions to find ratification/affirmance:

---

[2] The same analysis can be applied to BP and TO employees' reckless actions, and Alabama does not waive any arguments regarding those parties' vicarious liability by focusing our five reply pages on HESI.

2

- The corporation failed to repudiate the reckless act[3];

- The corporation or its agents made certain statements or took certain actions that implied approval of the employee's reckless act[4];

- The corporation continued the agent's employment after his reckless act[5]; and,

- The corporation based its defense at trial on the appropriateness of the employee's act[6].

The second point makes post-incident conduct relevant, and all four point to ratification here.

HESI did not reprimand or terminate Gagliano. To the contrary, Gagliano still works for HESI as an account representative, a job he assumed 6-7 months before trial. Gagliano Tr. 6581. Three years after the incident, no one from HESI has spoken to Gagliano about his mistakes or given him any "lessons learned," lessons Gagliano would be applying in his post-Macondo work if HESI had repudiated his Macondo work. Gagliano Tr. 6688-94.

HESI did not repudiate Gagliano's Macondo work. To the contrary, as outlined in the PFF/CL, HESI fought (perhaps outside the lines) to *affirm* Gagliano's work. HESI agents conducted "off the side" testing to affirm Gagliano's design, and when that testing failed, HESI agents destroyed the notes and results. PFF/CL at 180-82. HESI also hindered others' ability to repudiate Gagliano's work by withholding relevant cement samples and documents and making misrepresentations to Congress about its previous foam cement jobs. *Id*.

---

[3] *See Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 652 n.11 (5th Cir. 1994) ("Such a failure to repudiate the egregious acts of Baugh is, by definition, ratification."); Restatement (Second) of Agency §94 (1958); Restatement (Third) of Agency §4.01, comment (f) (2006); 3 Am. Jur. 2d Agency §193-94.

[4] *See Ellis v. Simmons*, 11 F.2d 596, 597 (5th Cir. 1926) ("the acts of an agent, even though unauthorized, may be subsequently ratified by the principal, and ratification may be presumed from the acts of the principal"); Restatement (Second) of Agency §93(3) ("affirmance can be made by an agent authorized to do so"); *Punitive Damages*, §4.4(B)(2)(a), p. 183 ("the employer may make certain statements, testify, or in some other manner communicate information that would give rise to the inference");

[5] *See Prunty*, 16 F.3d at 653-54 (Fifth Circuit noting that, under Texas law, "an employer's retention of an employee who has committed a tort may constitute ratification"); *Punitive Damages*, §4.4(B)(2)(a), p. 182; 3 Am. Jur. 2d Agency §§196-97.

[6] *See* Restatement (Second) of Agency §97(b); Restatement (Third) of Agency §4.01, comment (h) (2006); 3 Am. Jur. 2d Agency §189

3

HESI predicated its trial defense on ratifying Gagliano's cement job; so much so, in fact, that it bore repeating in opening statements: "The cement slurry design by Jesse Gagliano was a good design. Let me say that again, Your Honor: The cement slurry design was a good design." Trial Tr. 153. HESI's post-trial position is equally unequivocal:

> Gagliano's actions in designing and testing the cement used in the production casing string at the Macondo well do not show a lack of even slight diligence, reckless disregard of a legal duty, or conscious, intentional failure or reckless indifference. In fact, Gagliano's actions establish the opposite. (HESI Br. 26)

In short, HESI could have repudiated Gagliano's cement job by simply admitting that Gagliano screwed up and either firing him or promptly moving him to a position that did not involve cement. But, instead, HESI embraced Gagliano's wanton cement job by attempting to prove its correctness, and destroying and/or withholding evidence that did not fit that agenda. That's post-incident "ratification," a finding that HESI admits opens the door to corporate-level punitive damages under *P&E Boat Rentals*. *See* HESI Br. 28.

**B. Gagliano was a "Managerial Agent" of HESI, as Demonstrated by Gagliano's Unfettered Control over the Macondo Cement Job.**

"In deciding whether an employee serves in a managerial capacity, courts consider 'the type of authority that the employer has given to the employee, the amount of discretion that the employee has in what is done and how it is accomplished.'" *E.E.O.C. v. Service Temps Inc.*, 679 F.3d 323, 336 (5th Cir. 2012) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 543 (1999) and *Punitive Damages*, *supra*, §4.4(B)(2)(a)).

HESI vested Gagliano with total discretion over the Macondo cement job. Gagliano was embedded at BP and was HESI's "single point of contact" for the "entire cement string." Gagliano Tr. 6690. Gagliano was not required to clear his decisions with anyone from HESI, nor did he. *Id.* at 6690-91. Gagliano alone "provided the final recommendations to BP." *Id.*

4

at 6692.  Simply put, Gagliano *was* Halliburton for the Macondo job and was thus acting as HESI's "managerial agent" for Macondo.  *See* PFF/CL at 185, n. 998-1001 (multiple citations regarding Gagliano's unfettered discretion).

### C. HESI Recklessly Employed Gagliano, as Demonstrated by HESI's Knowledge of Complaints about Gagliano's Performance.

As outlined in the Plaintiff's PFF/CL, BP engineers were "voic[ing] serious questions about [Gagliano's] competency as it affected the timeliness and quality of his reports to BP," Plaintiffs' PFF/CL at 184, n.993-96, and the concerns had reached HESI.  *Id*. at 185, n. 997.  A finding that Gagliano was unfit to perform the Macondo cement job, and that HESI knew it, would provide an additional basis for punitive liability.  *See P&E Boat Rentals*, 872 F.2d at 651-62 ("Punitive damages also may be recoverable if the acts complained of were those of an unfit master and the owner was reckless in employing him.").

### SUMMARY / CONCLUSION

If the Court finds that Jesse Gagliano willfully, wantonly, and/or recklessly performed his duties with regard to the Macondo cement job, the following factual findings would each, independently, attach vicarious liability for punitive damages to Halliburton:

  1. HESI ratified Gagliano's Macondo cement job;

  2. HESI knew that Gagliano was unfit to perform the Macondo cement job; and,

  3. Gagliano served as a "managerial agent" while performing the cement job.

The first two satisfy *P&E Boat Rentals*, and the third is relevant in several circuits (possibly including Alabama's).   And, contrary to HESI's argument, *see* HESI Br. 31-34, examining HESI's post-incident conduct is highly relevant when determining whether Halliburton is punitively liable for ratifying Gagliano's cement work.

LUTHER STRANGE
*Attorney General*

 /s/ Corey L. Maze                                 .
COREY L. MAZE
*Special Deputy Attorney General*

WINFIELD J. SINCLAIR
*Assistant Attorney General*

OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, AL  36130
(334) 353-4336 (phone)
(334) 242-4891 (fax)
cmaze@ago.state.al.us

Attorneys for the State of Alabama

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on **July 12, 2013**.

 /s/ Corey L. Maze                                 .
COREY L. MAZE
*Special Deputy AG, State of Alabama*