**KIRKLAND & ELLIS LLP**
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

July 5, 2013

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

    Re: MDL 2179 — BP Motion to Strike Halliburton Experts Kris Ravi's Phase 2 Rebuttal Report and Glen Stevick's Phase 2 Rebuttal Report, Section II(b)(i)

Dear Judge Shushan:

  We write regarding certain material that appears in the Phase 2 Rebuttal Expert Report of Halliburton expert Dr. Kris Ravi, as well as section II(b)(i) of Halliburton expert Dr. Glen Stevick's Phase 2 Rebuttal Report. The opinions that appear in these report sections reflect an impermissible attempt at an end-run this Court's Phase 1 rulings as to the admissibility of Dr. Ravi's opinion testimony on cement and flow path-related causation issues—material that was squarely within the purview of the Phase 1 trial, and that is not genuine rebuttal material in the context of the expert opinions offered by BP experts in Phase 2.

  BP requested in a meet-and-confer discussion that Halliburton withdraw Dr. Ravi's Phase 2 Rebuttal Report because it is not a proper rebuttal to the report of BP cement-erosion expert Dr. Momber, and that Halliburton strike the portions of Dr. Stevick's reports identified above. Halliburton declined to withdraw these reports, and the parties were not able to reach agreement. BP accordingly respectfully requests that the Court strike Dr. Ravi's Phase 2 Rebuttal Report and section II(b)(i) of Dr. Stevick's Phase 2 Rebuttal Report.

## Background

  This Court has recognized that Phase 2 expert discovery, especially quantification expert discovery, is a significant undertaking involving a large number of experts. The Court has thus made clear that improper Phase 2 rebuttal opinions will be stricken, where appropriate, to streamline this ambitious undertaking in expert discovery. (*Cf.* Rec. Docs. 10477 (Order re

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 5, 2013
Page 2

BP/Anadarko's Mot. to Strike Rebuttal Experts for the U.S. & 4738 (striking Chemali expert disclosure).)  Expert opinions about purely Phase 1 issues — for instance opinions that solely concern allocating fault for the blowout — do not present proper Phase 2 material.  (*Cf.* Rec. Doc. 5407 (granting BP's Phase 1 *motion in limine* to exclude Phase 2 evidence).)  These improper opinions should thus be stricken from Phase 2.

Dr. Ravi's Phase 2 Rebuttal Report and section II(b)(i) of Dr. Stevick's Phase 2 Rebuttal Report are prime examples of improper rebuttal material that should be stricken from Phase 2.

**Ravi's Phase 1 Rebuttal Report.**  On January 30, 2012 — less than a month before the Phase 1 trial was originally scheduled to commence — Halliburton employee, Dr. Kris Ravi, submitted a rebuttal expert report as part of Phase 1 expert discovery which purported to rebut BP Phase 1 cement expert Ron Crook.

Dr. Ravi's Phase 1 Rebuttal Report offered several opinions including, among others, a new flow path theory that had never before been advanced by any Halliburton witness, notwithstanding that BP expert Crook did not advance any new flow path theory and that Halliburton had not offered any expert report rebutting BP expert Morten Emilsen's opinions regarding the casing flow path.  (*See* Ravi Phase 1 Rebuttal Report (attached as Exhibit A) at 6-7.)

Specifically, Dr. Ravi's Phase 1 rebuttal report posited that attempts to convert the float collar "*probably* created a breach in the shoe track below the float collar," which "*probably* provided a direct access for the hydrocarbons to the inside of the casing, for a portion of the reservoir from 18,217 feet to 18,238 feet, below the float collar," and that a second casing breach "*likely* flowed into the casing through the breach in the casing," which "*probably* provided another flow path for hydrocarbons to the inside of the casing[.]"  (*Id.* (emphasis added).)

With respect to cement-causation topics, Dr. Ravi offered opinions regarding foam cement slurry design and testing and numerous operational aspects of the cement job at the Macondo well, including as to centralizers, float collar conversion, top of cement, bottoms up circulation and wait-on-cement time.  (*See, e.g.*, *id.* at 3-7.)  BP ultimately did not call Mr. Crook to testify at the Phase 1 trial.  The Court therefore ruled, over Halliburton's objection, that Dr. Ravi could not testify because his opinions were offered purely as a rebuttal of Mr. Crook's opinions.  (Rec. Doc. 9036 at 2.)  The Phase 1 trial is now completed, the parties have provided their post-trial submissions, and the record for the Phase 1 trial has been closed.  (5/17/2013 Working Grp. Conf. Tr. 26:24-25.)

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 5, 2013
Page 3

**Ravi's Phase 2 Rebuttal Report.** On June 10, 2013, Dr. Ravi provided another rebuttal expert report, this time in the context of the Phase 2 proceedings.

Dr. Ravi's Phase 2 Rebuttal Report purports to respond to the Phase 2 expert report of BP quantification expert, Dr. Andreas Momber. (*See* Ravi Phase 2 Rebuttal Report (attached as Exhibit B) at 1.) Dr. Momber's expert report offers opinions regarding the erosion that would have occurred to the cement in the wellbore over time on the basis of the existing record of cement-related evidence adduced at the Phase 1 trial — not on the basis of any new cement-related opinions reached by Dr. Momber. (*See generally* Momber Report (attached as Exhibit C).) While Dr. Ravi explicitly agrees with Dr. Momber's central conclusion that the cement did, in fact, provide a partial barrier to hydrocarbon flow, thus decreasing the size of the cumulative discharge of hydrocarbons into the Gulf (*see* Ex. B at 1), Dr. Ravi goes on to use his Phase 2 Rebuttal Report as a vehicle to revert to his Phase 1 presentation of critiques of BP's operational decisions in connection with the April 2010 cement job; of a discussion of the impact of those decisions on the success or failure of the cement job; and of possible initial paths of hydrocarbon flow from the well leading to the blowout. Dr. Ravi's Phase 2 Rebuttal Report offers three opinions, each of which squarely relate to Phase 1 cement and flow path-related causation issues, rather than the erosion topics discussed in Dr. Momber's report to which Dr. Ravi purports to respond:

**(1)** "There is no support for Dr. Momber's conclusion that flaws within the cement (*e.g.*, porous cement caused by nitrogen breakout) could be a contributing factor for the creation of a possible flow path. To the extent that there were any flow channels in the cement, they would have been caused by BP's operational decisions.";

**(2)** "The cement designed by Halliburton Energy Services, Inc., was capable of stopping flow, it was adequately tested, and the cement job was executed as planned."; and

**(3)** "Dr. Momber incorrectly analyzes the location of the cement and the "hydrocarbon penetration path."

(Ex. B at 2-5.)

Dr. Ravi's discussion of the first opinion above repeats the familiar Halliburton Phase 1 theme that BP's operational decisions caused the failure of the cement, including the lack of

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 5, 2013
Page 4

circulation before the cement job and poor centralization of the casing to create mud channels. (*Compare* Ex. B at 3-4 *and* Ex. A at 4-7, 9-10, 21-27.)

Similarly, Dr. Ravi's discussion of this second opinion maintains that Halliburton properly designed, tested, and executed the cement job (Ex. B at 4-5), a topic addressed at length in his Phase 1 Rebuttal Report (Ex. A at 4-5, 11-21, 31-32).

Finally, Dr. Ravi's discussion of his third opinion presents a variation on the flow path theory Dr. Ravi was prevented by order of this Court from presenting at the Phase 1 trial because he was solely a rebuttal expert to BP expert Ronald Crook, who was not called to testify. (Rec. Doc. 9036 at 2.)

**Section II(b)(i) of Dr. Stevick's Rebuttal Report.** In addition, Halliburton expert Dr. Glen Stevick also includes Dr. Ravi's untimely flow path theory in section II(b)(i) of his Phase 2 Rebuttal Report, in an apparent attempt to ensure that the theory finds a platform somewhere in the course of the Phase 2 proceedings. (*See* Stevick Phase 2 Rebuttal Report (attached as Exhibit D), Section II(b)(i).)

Notably, both the Ravi and Stevick Phase 2 rebuttal reports use the same graphical demonstratives to illustrate this new theory—based on the same animation that Halliburton attempted to introduce during the Phase 1 testimony of Dr. Beck until it was prevented from doing so by the Court:

> 8 THE COURT: *Is this explanation stated in your report?*
> 9 THE WITNESS: The explanation -- *no, sir, it's not*. All
> 10 that my report states is that I feel like there was some type of
> 11 failure in the shoe track, and at the time of the report, I hadn't
> 12 figured out what that failure was yet.
> 13 MR. HILL: Your Honor, he also indicated that buckling
> 14 was a possibility.
> 15 MR. REGAN: We have a rule in this case about the four
> 16 corners --
> 17 THE COURT: *I am going to sustain the objection.*

(Tr. 7142:8-17 (Beck) (emphasis added).)

**KIRKLAND & ELLIS LLP**

The Honorable Sally Shushan
July 5, 2013
Page 5

### Discussion

Against this backdrop, the reason for striking the challenged opinions is straightforward. The Phase 1 trial record is closed. Dr. Ravi's Phase 2 Rebuttal Report consists almost entirely of opinions that were within the purview of the Phase 1 proceeding, but that were properly excluded from the Phase 1 trial. These opinions do not properly respond to anything said in Dr. Momber's report. They accordingly should be stricken from Phase 2.

Similarly, section II(b)(i) Dr. Stevick's Phase 2 Rebuttal Report, attempts to bring in the same untimely and previously excluded discussion of a new flow path theory, albeit from a slightly different direction. This report section is not responsive to any opinions proffered in Phase 2 expert discovery, and they should be stricken for the same reasons as Dr. Ravi's rebuttal report.

Halliburton should not be permitted to reopen the Phase 1 record under the pretense of responding to a BP erosion expert, particularly in the face of the repeated entreaties from the Court to narrow, rather than broaden, the scope of the expert testimony to be presented in Phase 2.

*   *   *

For the reasons stated above, BP respectfully requests that the Court strike Dr. Ravi's Phase 2 Rebuttal Report and section II(b)(i) Dr. Stevick's Phase 2 Rebuttal Report.

Respectfully submitted,

*/s/ Robert R. Gasaway*

Robert R. Gasaway

Exhibits

cc (by electronic mail):
United States' MDL Counsel
States Liason Counsel
Plaintiffs' Liaison Counsel
Defense Liaison Counsel
Joel M. Gross