# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | § | MDL No. 2179 |
| "DEEPWATER HORIZON" in the | § | |
| GULF OF MEXICO, | § | SECTION:  J |
| on APRIL 20, 2010 | § | |
| | § | JUDGE BARBIER |
| Applies to:  No. 10-4536 | § | |
| | § | MAG. JUDGE SHUSHAN |
| | § | |
| | § | |

### MEMORANDUM IN SUPPORT OF HALLIBURTON ENERGY SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING INDEMNIFICATION  AND/OR CONTRIBUTION FOR CIVIL PENALTIES

## Table of Contents

Index of Authorities ................................................................................................................ ii

Background and Procedural History ........................................................................................ 1

Standard of Review ................................................................................................................. 2

Argument and Authorities ....................................................................................................... 3

As a Matter of Law, BP and Transocean are not Entitled to
Indemnification and/or Contribution for CWA Civil Penalties. .............................................. 3

    A.    Liability Under the CWA is Limited and Specific ................................................ 3

    B.    Civil Penalties Under the CWA are Imposed Against
        Select Parties Who Violate the Statute .................................................... 5

    C.    Neither BP Nor Transocean is Entitled to Indemnification
        or Contribution Under the CWA for Civil Fines and/or Penalties ........................ 6

        1.    HESI is not Subject to CWA Penalties. ...................................... 7

        2.    The CWA Does Not Expressly or Impliedly Permit
            Contribution or Indemnification for Fines or Penalties ............................ 8

    D.    Common Law Does Not Permit Indemnification for CWA Penalties .................. 13

    E.    OPA Does Not Provide a Basis for Indemnification or
        Contribution for CWA Penalties ......................................................... 17

    F.    Recognizing a Right of Indemnification or Contribution
        for CWA Penalties Violates Public Policy ............................................. 18

Conclusion and Prayer .......................................................................................................... 19

# INDEX OF AUTHORITIES

**CASES**

*Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*,
289 F.3d 373 (5th Cir. 2002) ..............................................................................2

*Beerman Realty Co. v. Alloyd Asbestos Abatement Co.*,
653 N.E. 2d 1218 (Ohio Ct. App. 1995)..........................................................18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..............................................................................................2

*Colo. v. ASARCO, Inc.*,
608 F. Supp. 1484 (D. Colo. 1985)..............................................................8, 11

*In re Complaint of Berkley Curtis Bay Co.*,
557 F. Supp. 335 (S.D. N.Y. 1983).....................................................................4

*Cooper Indus. v. Aviall Servs.*,
543 U.S. 157 (2004)............................................................................................10

*Envtl. Conservation Org. v. Bagwell*,
No. 4:03-CV-807-Y, 2005 U.S. Dist. LEXIS 22027
(N.D. Tex. Sept. 30, 2005)..........................................................................*Passim*

*Gen. Elec. Co. v. Cuban Am. Nickel Co.*,
396 F.2d 89 (5th Cir. 1968) ................................................................................6

*Gutierrez v. Ada*,
528 U.S. 250 (2000)............................................................................................17

*Jones v. Waterman S.S. Corp.*,
155 F.2d 992 (3d Cir. 1946).........................................................................15-16

*Keller Transp., v. Wagner Enters.*,
873 F.Supp. 2d 1352 (D. Mont. 2012).......................................................9, 10-12

*Kornman & Assocs., v. United States*,
527 F.3d 443 (5th Cir. 2008) ..............................................................................3

*Levit v. Ingersoll Rand Fin. Corp.*,
874 F.2d 1186 (7th Cir. 1989) ..........................................................................10

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
453 U.S. 1 (1981)................................................................................................10

*Milwaukee v. Illinois,*
   451 U.S. 304 (1981)..........................................................................................14

*Montauk Oil Transp. Corp. v. Tug "El Zorro Grande",*
   54 F.3d 111 (2d Cir. 1995)....................................................................... 11, 15-16

*Mortgs., Inc. v. U.S. Dist. Court.,*
   934 F.2d 209 (9th Cir. 1991) ...................................................................7-8, 13-14

*Northwest Airlines v. Transp. Workers Union of Am.,*
   451 U.S. 77 (1981)....................................................................................*Passim*

*In re Oil Spill by the Oil Rig, "Deepwater Horizon" in the*
   *Gulf of Mexico, on April 20, 2010,*
   841 F. Supp. 2d 988 (E.D. La. 2012) .............................................................6, 16

*Superior Crewboats, Inc. v. Primary P & I Underwriters,*
   374 F.3d 330 (5th Cir. 2004) ...........................................................................7

*Tetra Techs., Inc. v. Kan. City S. Ry. Co.,*
   122 Fed. Appx. 99 (5th Cir. 2005)..................................................................10, 12

*Texas Indus., Inc. v. Radcliff Materials,*
   451 U.S. 630 (1981).......................................................................................7-8

*Tug Ocean Prince, Inc. v. United States,*
   436 F. Supp. 907 (S.D.N.Y. 1977), *rev'd in part on other grounds,*
   584 F.2d 1151 (2d Cir. 1978)........................................................................ 10-11

*United States v. Bear Marine Svcs.,*
   509 F. Supp. 710 (E.D. La. 1980)................................................................... 4-5

*United States v. Coastal States Crude Gathering Co.,*
   643 F.2d 1125 (5th Cir. 1981) ....................................................................5-6, 18

*United States v. Hollywood Marine, Inc.,*
   519 F. Supp. 688 (S.D. Tex. 1981) ....................................................................4

*United States v. J&D Enters.,*
   955 F. Supp. 1153 (D. Minn. 1997).................................................................18

*United States v. Le Beouf Bros. Towing Co.,*
   621 F.2d 787 (5th Cir. 1980) ............................................................................4

*United States v. Locke,*
   529 U.S. 89 (2000)..........................................................................................17

*United States v. Savoy Senior Housing Corp.*,
   No. 6:06cv031, 2008 U.S. Dist. LEXIS 17850
   (W.D. Va. March 6, 2008) ..................................................................................9

*United States v. Tex-Tow, Inc.*,
   589 F.2d 1310 (7th Cir. 1978) ...............................................................5, 10, 18-19

## STATUTES AND REGULATIONS

33 U.S.C. § 1251 ................................................................................................3-4

33 U.S.C. §1319 ..................................................................................................5

33 U.S.C. §1321 ...........................................................................................*Passim*

33 U.S.C. §2701 .............................................................................................12, 17

33 U.S.C. §2702 ................................................................................................17

33 U.S.C. §2709 ................................................................................................17

40 C.F.R. §19.4 ................................................................................................5-6

**NOW INTO COURT**, comes Halliburton Energy Services, Inc. ("HESI") and respectfully files this Memorandum in Support of Its Motion for Summary Judgment Regarding Indemnification and/or Contribution for Civil Penalties,[1] and respectfully shows the Court as follows:

## BACKGROUND AND PROCEDURAL HISTORY

The United States brought claims against BP[2] and Transocean[3] for civil penalties under the Clean Water Act ("CWA") arising from the April 20, 2010 blowout of the Macondo well and resulting oil spill into the Gulf of Mexico.[4]  (*See* Cause No. 10-4536,[5] Dkt. No. 1 at ¶¶ 1, 70-76) ("DOJ Complaint").[6]  In response to the DOJ Complaint, BP and Transocean answered the claims and filed third-party complaints against HESI including, among other claims, an action for indemnification and/or contribution with respect to any civil penalties assessed.  (Dkt. No.

---

[1] On July 12, 2013, the Court conveyed to the parties its intention to preclude HESI from calling any quantification witnesses at the Phase Two trial, despite the pendency of Clean Water Act equitable indemnification/contribution claims against HESI by both BP and Transocean.  On July 15, 2013, the Court clairified that it was also precluding HESI from questioning any quantification witness during already scheduled depositions in which HESI was allocated questioning time.  While the Court has not yet entered any formal order on these issues, HESI objects to these restrictions.  As a named third-party defendant in this proceeding, HESI believes it has a right to fully participate in discovery and in a trial that could result in findings that might form the basis of a claim against it, but also recognizes that resolution of this motion could resolve a substantial portion of HESI's interest in the quantification portion of the Phase Two trial.  In any event, HESI reserves its right to request to be heard during the Phase Two trial on any issues parties may raise addressing services HESI provided on the *Deepwater Horizon*.

[2] "BP" refers to BP Exploration and Production, Inc.

[3] "Transocean" refers to Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc.

[4] The United States' Complaint also contains a "Reservation of Rights and Notice," purporting to reserve its right to seek penalties and damages under the Outer Continental Shelf Lands Act ("OCSLA"), the Park System Resource Protection Act, the National Marine Sanctuaries Act, the Endangered Species Act, and the Marine Mammal Protection Act.  Because the United States has not asserted claims against BP or Transocean under these statutes, they cannot provide the basis for contribution or indemnity claims against HESI, and HESI does not address them at this time.

[5] Unless otherwise noted, all citations to the docket are citations to *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, Cause No. 10-2771, MDL No. 2179, pending before the Honorable Judge Carl Barbier, of the Eastern District of Louisiana.

[6] The United States also sought civil penalties under the CWA from Anadarko Exploration & Production LP, Anadarko Petroleum Corp., MOEX Offshore 2007, LLC, and QBE Underwriting Ltd., Lloyd's Syndicate 1036.

2574) (Transocean's Answer to BP Exploration & Production, Inc.'s Cross-Claim and Third Party Complaint and Transocean's Rule 13 Cross-Claims/Counterclaims and Rule 14 Third-Party Complaint ("Transocean's Complaint"));[7] (Dkt. No. 2083) (BP's Third-Party Complaint Against Halliburton ("BP's Third-Party Complaint")).   Although BP has assigned[8] most of its claims against HESI to the Plaintiffs, BP retained its indemnity and contribution claims for penalties. *See* Dkt. No. 6430 (*Deepwater Horizon* Economic and Property Damages Settlement Agreement as Amended on May 2, 2012, at Ex. 21, Assignment and Protections, §1.1.4.1 (". . . BP does not assign any claim for indemnification or contribution or subrogation of amounts it might pay for fines, penalties, or sanctions, including under the Clean Water Act or other federal or state laws.")).   BP further noted "[n]othing in this provision shall be construed to indicate that BP believes such claims are valid, and BP reserves all legal arguments against such claims." *See id.* HESI seeks summary judgment as to BP's and Transocean's claims against HESI for indemnification for civil penalties.

## STANDARD OF REVIEW

Summary judgment pursuant to FED. R. CIV. P. 56 is proper if the moving party establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment is appropriate where, as here, "the only issue before the court is

---

[7] On January 3, 2013, Transocean settled its claims for any claims under the CWA for fines and penalties that have been or will be assessed by the United States for $1 billion dollars.  *See* (Cause No. 10-4536, Dkt. No. 9 at 9-10.)

[8] HESI has disputed the validity of the assignments made by BP as part of the *Deepwater Horizon* Economic and Property Damages Settlement Agreement as well as the legal effect of those assignments.  *See* (Dkt. No. 8268).

a pure question of law." *Kornman & Assocs., v. United States*, 527 F.3d 443, 450 (5th Cir. 2008) (quoting *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991)).

## ARGUMENT AND AUTHORITIES

### AS A MATTER OF LAW, BP AND TRANSOCEAN ARE NOT ENTITLED TO INDEMNIFICATION AND/OR CONTRIBUTION FOR CWA CIVIL PENALTIES.

As discussed *supra*, both BP and Transocean seek contribution and indemnity against HESI for any damages incurred in this litigation.  Specifically, BP contends that if it "is held liable to the United States or plaintiffs for any monetary recovery 'under [OPA] or another law,' including but not limited to the removal costs and damages alleged in the DOJ Complaint, [HESI] is liable in contribution . . . [.]"  BP's Third-Party Complaint (Dkt. No. 2083 at ¶ 138).[9]  Likewise, Transocean asserts that it "is entitled to indemnity against . . . [HESI] . . . for any amount Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Claims of the United States of America and/or the Claims asserted by BP Exploration in its Cross-Claim and Third-Party Complaint [.]"  Transocean's Complaint (Dkt. No. 2574 at ¶44).  However, as to any purported indemnification/contribution for penalties and fines under the CWA, both Transocean and BP's claims fail, as neither BP nor Transocean is entitled to indemnification or contribution for any civil penalties assessed under the CWA or any other statute.  Accordingly, summary judgment on these claims is proper.

### A.    Liability under the CWA is Limited and Specific.

The CWA was enacted "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).  Toward that end, Congress set the goal of eliminating the discharge of all pollutants into navigable waters by 1985.  *Id*.  With this goal in

---

[9] BP has since refined these allegations to make clear that it may seek indemnification, contribution and/or subrogation from HESI for "fines, penalties, or sanctions, including under the Clean Water Act . . . [.]"  *See* (Dkt. No. 6430, at Ex. 21, Assignment and Protections, §1.1.4.1).

mind, Section 1321, which addresses oil and hazardous substance liability, sets a "no discharge" policy and prohibits any discharge in harmful quantities.  33 U.S.C. § 1321(b)(1).[10]   Section 1321 holds owners or operators of a vessel, onshore facility, or offshore facility liable for clean-up costs, subject to the defenses of act of God, act of war, negligence of the United States Government, or act or omission of a third party. 33 U.S.C. § 1321(f).  Owners or operators under the CWA include: (1) in the case of a vessel, any person owning, operating, or chartering by demise, such vessel, and (2) in the case of an onshore facility or an offshore facility, any person owning or operating such onshore facility or offshore facility, and (3) in the case of any abandoned facility, the person who owned or operated such facility immediately prior to such abandonment.  *See* 33 U.S.C. §1321(a)(6).

While 33 U.S.C. §1321(f)(1)(D) provides a third-party defense to an owner or operator otherwise liable for removal costs, that defense only applies to the extent that the owner or operator can prove that the discharge "was caused <u>solely</u> . . . by *an act or omission of a third party without regard to whether any such act or omission was or was not negligent*."  33 U.S.C. §1321(f)(1)(D) (emphasis added).  Courts, including the Fifth Circuit, who have applied and interpreted this third-party defense have recognized that it is narrowly interpreted,[11] and the third-party must be the sole cause of the discharge.  *United States v. Bear Marine Svcs.*, 509 F. Supp. 710, 716 (E.D. La. 1980). That is, the "discharger must be totally free of fault; any fault on the part of the discharger vitiates the 'sole cause' exceptions." *Id.* at 715.  Also important here,

---

[10] The parallel citation for Section 1321(h), Section 311(h), is used interchangeably throughout the parties' briefing and in this Court's Orders and Reasons.  *See*, *e.g.*, (Dkt. No. 5446 at 22; Dkt. No. 5493 at 4).

[11] *See United States v. Le Beouf Bros. Towing Co.*, 621 F.2d 787, 789 (5th Cir. 1980) (following *Burgess v. M/V Tamano*, 564 F.2d 964, 981-82 (1st Cir. 1977)); *United States v. Hollywood Marine, Inc.*, 519 F. Supp. 688, 691 (S.D. Tex. 1981); *In re Complaint of Berkley Curtis Bay Co.*, 557 F. Supp. 335, 340 (S.D. N.Y. 1983) (following *LeBeouf* and reasoning that "a narrow reading of the sole-cause 'third party' exception in § 1321(f) is justified by the statute's purpose of assuring government reimbursement for clean-up costs by holding discharging vessels strictly liable.").

the CWA's third-party defense applies to removal costs; it does not apply to an owner or operator's liability for civil penalties. 33 U.S.C. §1321(f)(1)(D) (emphasis added); *see also*; 33 U.S.C. §1321(b)(6) & (7); *United States v. Tex-Tow, Inc.*, 589 F.2d 1310, 1313 (7th Cir. 1978) recognizing that (33 U.S.C. §1321(b)(6) contains no defenses); *United States v. Coastal States Crude Gathering Co.*, 643 F.2d 1125, 1127 (5th Cir. 1981) (same).

### B. Civil Penalties Under the CWA Are Imposed Against Select Parties Who Violate the Statute.

The CWA provides for several different types of penalties: administrative penalties, civil penalties and criminal penalties. *See* 33 U.S.C. §1321(b)(6) (administrative penalties); *id.* at §1321(b)(7) (civil penalties); *id.* at §1319(c) (criminal penalties).[12] Administrative penalties under §1321(b)(6) may be imposed upon an "owner, operator, or person in charge of any vessel, onshore facility or offshore facility" "from which oil or a hazardous substance is discharged" or "who fails or refuses to comply with" regulations to which they are subject; these penalties are assessed by "the Secretary of the department in which the Coast Guard is operating, the Secretary of Transportation, or the Administrator." *Id.* at §1321(b)(6)(A).

In this action, the United States seeks civil penalties against BP and Transocean pursuant to 33 U.S.C. §1321(b)(7),[13] which makes any person who is an owner, operator, or person in charge of a vessel subject to a civil penalty in an amount up to $37,500 per day of a violation or an amount of up to $1,100 per barrel or oil or unit of reportable quantity of hazardous substances discharged. 33 U.S.C. §1321(b)(7)(A); Civil Monetary Penalty Inflation Adjustments, 40 C.F.R. §19.4 (Table 1) (2010). In the event the failure to comply with the CWA is the result of gross

---

[12] A review of case law reveals that no court has recognized a right for contribution or indemnification for criminal penalties. Moreover, the United States is not seeking criminal penalties against BP or Transocean in this action.

[13] *See* (Cause No. 10-4536, Dkt. No. 1 at ¶71) (pertaining to claims against BP); (*Id.* at ¶ 74) (pertaining to claims against Transocean).

negligence or willful misconduct, the person is subject to a penalty of not less than $140,000 and not more than $4,300 per barrel of oil or unit of reportable quantity of hazardous substance. 33 U.S.C. §1321(b)(7)(D); 40 C.F.R. §19.4.  Civil penalties under 33 U.S.C. §1321(b)(7) are imposed by the court.  33 U.S.C. §1321(b)(7)(E).  In determining the class and amount of penalties under the CWA, the court "shall consider the seriousness of the violation or violations, the economic benefit to the violator, if any, resulting from the violation, the degree of culpability involved, any other penalty for the same incident, any history of prior violations, the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge, the economic impact of the penalty on the violator, and any other matters as justice may require."  33 U.S.C. §1321(b)(8).

The civil penalty provision imposes strict liability on both owners and operators—it is not a fault based standard.  *See, e.g.*, *Coastal States*, 643 F.2d at 1127 ("Section 1321(b)(6) provides no defense to the assessment of the civil penalty; indeed, it establishes an absolute liability standard which obviates the need for a finding of fault.").

### C.     Neither BP Nor Transocean Is Entitled To Indemnification or Contribution Under the CWA For Civil Fines and/or Penalties.

Indemnity may arise either in contract or in tort: by an express or implied contract to indemnify[14] or by equitable concepts based on the tort theory of indemnity.  *Gen. Elec. Co. v.*

---

[14] BP has not alleged that it is entitled to any form of contractual indemnification from HESI for civil penalties; in fact, under the circumstances presented, HESI would be the party entitled to contractual indemnity from BP.  *See* HESI's Motion for Summary Judgment Regarding Indemnity Issues (Dkt. No. 4767).  In any event, however, BP would be judicially estopped from making such an argument as it has previously and successfully argued that public policy prevents contractual indemnification for civil penalties.  *See In re Oil Spill by the Oil Rig, "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 841 F. Supp. 2d 988, 1005 (E.D. La. 2012) ("[T]he Court holds that public policy invalidates the Drilling Contract's indemnity clause to the extent it includes civil penalties under Section 311(b)(7) of the CWA."); BP's Mem. In Opp. to Transocean's Motion for Partial Summary Judgment and in Support of BP's Cross-Motion for Partial Summary Judgment Relating to Alleged Contractual Indemnities, (Dkt. No. 4826 at 18-20); s*ee also Superior Crewboats, Inc. v. Primary P & I Underwriters*, 374 F.3d 330, 335 (5th Cir. 2004) (Requirements for application of judicial estoppel are "(1) the party is judicially estopped only if its position is

*Cuban Am. Nickel Co*., 396 F.2d 89, 90 (5th Cir. 1968).  In addition, "[a] defendant held liable under a federal statute has a right to contribution or indemnification from another who has also violated the statute only if such right arises (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly; or (2) via the power of the courts to formulate federal common law."  *Mortgs., Inc. v. U.S. Dist. Court.*, 934 F.2d 209, 212 (9th Cir. 1991); *see also Texas Indus., Inc. v. Radcliff Materials*, 451 U.S. 630, 638-40 (1981) (no right of contribution under antitrust laws); *Northwest Airlines v. Transp. Workers Union of Am.*, 451 U.S. 77, 90-91 (1981) (no right of contribution under Title VII or Equal Pay Act).[15]  Both BP and Transocean seek indemnification for any damages, including fines and penalties, assessed by the United States; however, these claims fail because HESI is not subject to CWA penalties. Moreover, there is no express or implied right to contribution or indemnity under the CWA and, given the comprehensive statutory scheme set up by Congress, the CWA cannot be supplemented by federal common law.  Accordingly, summary judgment is proper.

### 1.      *HESI Is Not Subject To CWA Penalties.*

First, neither BP nor Transocean is entitled to indemnity or contribution for any civil penalties they must pay under the CWA because HESI is not otherwise subject to civil penalties under the statute.  *See* 33 U.S.C. § 1321(b)(7) ("[O]wner, operator, or person in charge of any vessel . . . shall be subject to a civil penalty.").  No party has alleged that HESI is an owner or operator of the *Deepwater Horizon*.  Nor has the United States filed a claim against HESI.  Any attempt on the part of BP or Transocean to assert indemnity and contribution claims against

---

clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent.").  This Court distinguished between contractual indemnification and equitable indemnification, and expressly declined to rule on the latter.  (Dkt. No. 5493 at 4, n.6).

[15] While in *Tex. Indus., Inc.* and *Northwest Airlines*, the Supreme Court dealt with contribution, as the Ninth Circuit recognized in *Mortgages, Inc.*, "the legal framework established in these cases has been extended to the right to indemnity."  934 F.2d at 212 n.3.

HESI for CWA penalties would controvert the express limitations of the CWA and would also violate basic principles of indemnity law, namely that a right of indemnity exists only where the indemnitor has also violated the statute.  *See Tex. Indus.,* 451 U.S. at 633-38 (considering whether to allow contribution among co-conspirators in price-fixing scheme); *Northwest Airlines*, 451 U.S. at 88-89 ("In this case, we assume that all of the elements of a typical contribution claim are established.  This means that we assume that the plaintiffs . . . could have recovered from either the union or the employer. . . and that it is unfair to require petitioner to pay the entire judgment"); *Mortgs., Inc.*, 934 F.2d at 212; *Envtl. Conservation Org. v. Bagwell*, No. 4:03-CV-807-Y, 2005 U.S. Dist. LEXIS 22027, at *16-17 (N.D. Tex. Sept. 30, 2005).

The basis for an indemnity or contribution claim arising from a statutory violation is that both parties are liable under the statute, and the plaintiff could recover from either.  *Northwest Airlines*, 451 U.S. at 86-89 & n.20; *Colo. v. ASARCO, Inc.*, 608 F. Supp. 1484, 1492 (D. Colo. 1985) ("It is settled law that contribution is only available where joint liability can be imposed.").  Because HESI cannot be held liable under the CWA, it cannot be liable for indemnification of CWA penalties or fines assessed against BP or Transocean.  Accordingly, summary judgment is proper.

> **2.**     ***The CWA Does Not Expressly Or Impliedly Permit Contribution Or Indemnification for Fines or Penalties.***

The CWA provides for third-party liability for removal costs, although, like the third-party defense provisions of Section 1321(f), third-party liability for removal costs is limited to third-parties who are "solely" responsible for the discharge.   *See* 33 U.S.C. §1321(g).  Specifically, §1321(g) provides, in relevant part:

> Third party liability.  Where the owner or operator of a vessel . . .
> carrying oil or hazardous substances as cargo or an onshore or

> offshore facility which handles or stores oil or hazardous substances in bulk, from which oil or a hazardous substance is discharged in violation of subsection (b) of this section, alleges that such discharge was caused <u>solely by an act or omission of a third party</u>, such owner or operator shall pay to the United States Government the actual costs incurred under subsection (c) for removal of such oil or substance and <u>shall be entitled by subrogation to all rights of the United States Government to recover such costs from such third party under this subsection</u>. ...

33 U.S.C. §1321(g) (emphasis added). Thus, in instances where the discharge is solely the fault of a third-party, the owner or operator, after paying for those removal costs to the United States, may have subrogation rights to pursue recovery of those removal costs from the third-party.

However, absent section 1321(g), <u>which is specifically limited to removal costs</u>, the CWA does not expressly provide for a right of indemnification, contribution or subrogation for other damages or penalties. *See* 33 U.S.C. §1321; *United States v. Savoy Senior Housing Corp*., No. 6:06cv031, 2008 U.S. Dist. LEXIS 17850, at *17-20 (W.D. Va. March 6, 2008). Nor does the CWA impliedly permit contribution or indemnity for civil penalties. *See, e.g*., *Bagwell*, 2005 U.S. Dist. LEXIS 22027, at *19; s*ee also Keller Transp., v. Wagner Enters*., 873 F.Supp. 2d 1352-53 (D. Mont. 2012).[16]

In *Bagwell*, the Northern District of Texas examined whether defendants could obtain indemnification or contribution from a third party under the CWA for civil penalties. *See Bagwell*, 2005 U.S. Dist. LEXIS 22027, at *16. The *Bagwell* defendants could not "point to any portion of the CWA that expressly provides for indemnity or contribution from allegedly jointly responsible parties." *Id*. at *18. Moreover, according to the *Bagwell* court (after admission by the defendants), language in *Cooper Indus. v. Aviall Servs*., 543 U.S. 157 (2004), recognizing

---

[16] In *Keller Transport, Inc*., the District Court of Montana considered whether CWA Section 1321(h) expressly creates a right to contribution against a third-party. 873 F.Supp. 2d at 1352-53. <u>The District Court held that it does not</u>. *Id*.; *see also infra* (discussion regarding whether Section 1321(h) provides a basis for contribution or indemnification).

that the existence of implied or common law contribution actions under CERCLA were debatable in light of Supreme Court precedent refusing to recognize implied or common-law rights to contribution under other federal statutes, foreclosed any argument that a right of indemnity or contribution could be implied from the CWA.  *See Bagwell*, 2005 U.S. Dist. LEXIS 22027, at *18-19.   Because the defendants could point to nothing within the CWA or its legislative history implying a right of contribution or indemnification, the court denied defendants' motion for summary judgment.  *Id*. at *22.[17]   The Court further reasoned that "[p]ermitting indemnification of civil penalties assessed under the CWA would be contrary to public policy and the purposes of the CWA."  *Id*. at *21; *see also Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 18 (1981) (noting that the structure and legislative history of the CWA lead to the conclusion that "Congress intended that private remedies in addition to those expressly provided should not be implied.").[18]

Parties have argued that Section 1321(h) provides a basis for third-party indemnity or contribution; however the majority of courts, including the Fifth Circuit, who have examined the issue, have found otherwise.  *See Tetra Techs., Inc. v. Kan. City S. Ry. Co*., 122 Fed. Appx. 99, 102 (5th Cir. 2005) ("Section 1321(h) does not create a cause of action"); *Keller Transp., Inc.*, 873 F. Supp. 2d at 1351 (Section 1321(h) is not the source of a right to contribution); *see also*

---

[17] *See also Tug Ocean Prince, Inc. v. United States*, 436 F. Supp. 907, 926 (S.D.N.Y. 1977), *rev'd in part on other grounds*, 584 F.2d 1151 (2d Cir. 1978) (holding that the absence of a third-party defense in the CWA penalty provision, in addition to the language and purpose of various remedies, lead to the conclusion that no indemnity right was contemplated); *United States v. Tex-Tow, Inc.*, 589 F.2d at 1314 (observing that "[t]he only court to consider the question has construed [the CWA] as not extending the indemnity cause of action to recovery of the civil penalty.  Such an interpretation is consistent with the economic or risk-shifting view of the civil penalty here taken, as the party engaged in the potentially polluting enterprise is in the best position to estimate the risk of accidental pollution and plan accordingly. . . .") (citing *Tug Ocean Prince*, 436 F. Supp. at 926); *but see Montauk Oil* discussion, *infra*, n.19.

[18] The right to contribution and indemnification are no different in principle from other implied rights of action.  *See Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186, 1191 (7th Cir. 1989).

*Tug Ocean Prince, Inc.*, 436 F. Supp. at 926 (Section 1321(h) does not provide for indemnification of penalties);[19] *see also Bagwell*, 2005 U.S. Dist. LEXIS 22027, at *19 (finding no indemnification for civil penalties under the CWA); *ASARCO, Inc.*, 608 F. Supp. at 1491 n.4 (noting that there is "no case expressly articulating the source of the [Act's] right to contribution").[20]

Section 1321(h) provides:

> [t]he liabilities established by this section shall in no way affect any rights which (1) the owner or operator of a vessel or of an onshore facility or an offshore facility may have against any third party whose acts may in any way have caused or contributed to such discharge.

33 U.S.C. § 1321(h).   In *Keller Transport, Inc.*, the District Court of Montana considered whether CWA Section 1321(h) creates a right to contribution against a third-party, and held that it does not.   873 F.Supp. 2d at 1352-53.   Rather, §1321(h) "merely preserves claims for contribution that [a party] may have under other legal theories" and is therefore "'not the source of the right' to a claim for contribution." *Id.* at 1352 (quoting *ASARCO*,  608 F. Supp. at 1491

---

[19] *Montauk Oil Transp. Corp. v. Tug "El Zorro Grande"*, 54 F.3d 111 (2d Cir. 1995), which is discussed in more detail *infra*, was decided after *Tug Ocean Prince*.  In *Montauk*, the Second Circuit, in what appears to be the first decision of its kind, held that the "traditional rule of equitable indemnity" applied to civil penalties under the CWA, and that § 1321(h) "strengthened the traditional rule" by providing for indemnity.  54 F.3d at 115 (reasoning that Defendant's "conceded negligence should make it responsible for the damage sustained by the barge owner, in this instance the civil penalty imposed under section 1321(b)(6)" and where the indemnitor was not otherwise liable).  It is HESI's position that *Montauk* was incorrectly decided and is readily distinguishable, as further discussed, *infra*. In any event, as operator of the tug, the defendant in *Montauk* (unlike HESI), would have been directly liable for damages under the Act pursuant to 33 U.S.C. §1321 (b)(6), (b)(7); thus the decision is not a "recognition" of an implied right of indemnity under the CWA but rather, an adherence to traditional admiralty law and holds that a right of contribution may exist against parties who would otherwise be liable under the federal statute in question. *See infra*.

[20] In its January 31, 2012 Order and Reasons, this Court suggested that Section 1321(h) creates a cause of action for equitable indemnification; however, in that same Order, the Court noted that this issue was not before the Court and that it was not ruling on this issue.  (Dkt. No. 5493 at 4, n.6 (". . . at the moment it is an open question whether a third-party defendant (such as [HESI] could be liable to a defendant . . . for CWA civil penalties via equitable contribution or indemnity.")(citing Dkt. No. 5446 at 22 n.18).  To the extent this Court's statement that that "the Court interprets Section 311(h) as providing a right to equitable (as opposed to contractual) indemnity or contribution" suggests that §1321(h) <u>creates</u> as opposed to <u>preserves</u> a right of contribution, it is inconsistent with these authorities.  (Dkt. No. 5446 at 22; *see also*, Dkt. No. 5493 at 4, n.6).

n.4).  As a result, a claim for contribution or indemnity exists only where state law, federal law

or some affirmative act of Congress creates the right of action.  *Id.* at 1353; *see also Tetra*

*Techs.*, 122 Fed. Appx. at 102 ("Section 1321(h) does not create a cause of action.").

In addition, as also recognized by BP in its Opposition to Transocean's Motion for

Summary Judgment, §1321(h) is properly read as

> extending only to the remedial 'liabilities' established in sections
> §1321(f) and (g)—*i.e.*, "liability" for the "actual costs" of cleanup
> and removal,  §1321(f), and the "third party liability" for costs of
> removal caused solely by an act or omission of a third party,
> §1321(g).  The word "liabilities" does not extend to the <u>penalties</u> in
> section 1321(b)(7).  Congress has authorized indemnification only
> where it is consistent with the goals of the statutory scheme to
> prevent oil pollution and where the associated consequence for a
> violation is remedial as opposed to punitive in nature.

BP's Mem. In Opp. to Transocean's Motion for Partial Summary Judgment and in Support of

BP's Cross-Motion for Partial Summary Judgment Relating to Alleged Contractual Indemnities,

(Dkt. No. 4826 at 22 n.22) (emphasis added).

Moreover, Section 1321(h) is inapplicable in this action, because it does not apply "with

respect to any incident for which liability is established under [§2702 of OPA]."  *See* Oil

Pollution Act of 1990, Pub. L. No. 101-380, §2002(a), 104 Stat. 484, 507 (1990).  As BP has

argued to this Court, 33 U.S.C. §1321(h) does not apply in this action because "there is no

dispute that the events at the *Deepwater Horizon* beginning April 20, 2010 constitute an

'incident,' 33 U.S.C. §2701(14), subject to strict liability under OPA[.]"[21]

---

[21] BP's Mem. In Opp. to Transocean's Motion for Partial Summary Judgment and in Support of BP's Cross-Motion for Partial Summary Judgment Relating to Alleged Contractual Indemnities.  (Dkt. No. 4826 at ¶22).  HESI acknowledges that this Court has stated that "this note merely instructs that where <u>removal costs</u> could be sought under either OPA or the CWA, OPA's provisions apply.  This note does not implicate a penalty under Section 311(b)(7) of the CWA."  (Dkt. No. 5446 at 23).  However, the specific language contains no such limitation.

Because there is no basis to imply a right of indemnity under Section 1321(h) or any of the terms of the CWA, BP and Transocean's claims for indemnity for CWA penalties and fines should be dismissed.  Summary judgment is proper.

### D.    Common Law Does Not Permit Indemnification For CWA Penalties.

Finally, creation of a right to indemnity or contribution under federal common law is doubtful where, as here, the statute at issue is comprehensive:

> Congress may empower federal courts to make federal common law when a statute contains sweeping language and its legislative history indicates Congress's expectation that the courts will "give shape to the statute's broad mandate by drawing on common-law tradition."   Where, however, Congress has enacted a comprehensive legislative scheme, including integrated procedures for enforcement, there is a strong presumption that Congress did not intend the courts to supplement the remedies enacted.

*Bagwell*, 2005 U.S. Dist. Lexis 22027, at *17 (quoting *Mortgs. Inc.*, 934 F.2d at 213)) (citations omitted); *see also Northwest Airlines*, 451 U.S. at 97 (considering whether a right to contribution exists for damages imposed pursuant to Title VII and the Equal Pay Act: "[t]he presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.").

In *Mortgs. Inc.* the Ninth Circuit examined whether there is a common law right of contribution or indemnity under the False Claims Act ("FCA").  934 F.2d at 210-11.  There, defendants had filed third-party complaints against the *qui tam* plaintiffs seeking indemnification and/or contribution for any judgment in favor of the United States in the FCA action.   *Id*.  According to the court, "[w]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."   *Id.* at 213 (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979)).   Because the FCA includes comprehensive

procedures for enforcement, including a provision to limit the recovery of a *qui tam* plaintiff if the court determines that party is also a wrongdoer, and nothing prevented the government from naming the *qui tam* plaintiff as a defendant, there was no room for the creation of federal common law.  *Id*. at 213; *see also Milwaukee v. Illinois*, 451 U.S. 304, 319 (1981) (describing the CWA:  "The establishment of such a self-consciously comprehensive program by Congress . . . strongly suggests that there is no room for courts to attempt to improve on that program with federal common law.").   The Supreme Court in *Milwaukee v. Illinois* Court recognized that "[s]ince federal courts create federal common law only as a necessary expedient when problems requiring federal answers are not addressed by federal statutory law . . . the comprehensive character of a federal statute is quite relevant to the present question . . . .)"  451 U.S. at 319 n.14.

Likewise, here, the CWA includes comprehensive procedures for enforcement and provides for specific remedies, including, with respect to penalties, a requirement that the court take into account the "degree of culpability involved" and "any other matters as justice may require" when assessing a penalty.  33 U.S.C. §1321(b)(8); *see also Bagwell*, 2005 U.S. Dist. LEXIS 22027, at 21-22 (Defendants assessed a penalty are not without recourse; "in determining the amount of penalties to assess against Defendants under the CWA, if any, the Court can consider any matter 'as justice may require,' including the fact that third-parties may have been responsible for some of the allegedly violative discharges.").   In short, the CWA "allows no room for the creation of additional federal common law."  *Mortgs. Inc.*, 934 F.2d at 213; *see also Milwaukee*, 451 U.S. at 318 ("The establishment of such a self-consciously comprehensive program by Congress [in the CWA] . . . strongly suggests that there is no room for courts to attempt to improve on that program with federal common law.").

And, while the Court has correctly held that general maritime law generally applies to this case, general maritime law is not implicated by the United States' claims for civil penalties under the CWA.  In any event, while there may generally be a right to contribution under admiralty law, "where the federal judiciary's lawmaking power may well be at its strongest, it is [the courts'] duty to respect the will of Congress."  *Northwest Airlines*, 451 U.S. at 96. Permitting indemnity or contribution in the case of civil penalties would contravene the Congressional purpose and intent of the CWA.

The Second Circuit's holding in *Montauk* does not change this result.  There, barge owner Montauk Oil filed suit against the Tug *El Zorro Grande* and its operator seeking indemnification for CWA penalties paid to the United States pursuant to 33 U.S.C. §1321(b)(6)  as a result of an oil spill in the Hudson River caused by the negligent operation of the tug while towing Montauk's barge.  *Montauk*, 54 F.3d at 111-113.  The defendant operator admitted its negligence in operating the tug caused the spill.  *Id*. at 112.

The Second Circuit held that "if the discharge . . . was caused by the negligence of [defendants], established equitable principles of admiralty and tort should provide Montauk with a third-party claim against them."  *Id*. at 114.   The *Montauk* court further reasoned that Defendant's "conceded negligence should make it responsible for the damage sustained by the barge owner, in this instance the civil penalty imposed under section 1321(b)(6)."  *Id*.  It is HESI's position that *Montauk* was wrongly decided, as more recent authority has recognized. *See Bagwell*, 2005 U.S. Dist. LEXIS 22027, at *18-21 (recognizing the creation of a right to indemnification or contribution for CWA penalties under federal common law is unlikely).

In its reasoning, the *Montauk* court cited *Jones v. Waterman S.S. Corp.*, 155 F.2d 992, 999 (3d Cir. 1946) for the proposition that "the concept of indemnity is as old as the proverbial

hills and long has been recognized in the law of admiralty."  54 F.3d at 114.  But *Jones* does not stand for the proposition that general maritime law provides for contribution or indemnification of civil penalties imposed pursuant to a federal statute.[22]  Moreover, the *Montauk* court ignored 33 U.S.C. §1321(b)(8), which requires that the civil penalty imposed under the CWA take into account the violator's culpability and "any other matters as justice may require."  Permitting indemnification or contribution with respect to a penalty that is specific to the party against whom the penalty is assessed would permit an end run around the "will of Congress."  *See Northwest Airlines*, 451 U.S. at 96; *see also In re Oil Spill*, 841 F. Supp. 2d at 1005 ("[A]ssessing a CWA penalty requires a Court to consider factors such as the seriousness of the violation, the defendant's culpability, and the economic impact the penalty will have on the defendant.  Thus, the penalty becomes somewhat 'tailored' to the specific defendant and situation[.]") (addressing contractual indemnity).

Even if correctly decided, however, *Montauk*'s reasoning does not apply here.  The *Montauk* defendant, as operator of the tug, admitted that its negligence was the *sole cause of the spill*.  To the extent that a case could be made for the application of equitable indemnification to civil penalties under the CWA when another party bears sole responsibility for the spill, it would not do so here, where no one has ever  suggested—and HESI certainly has not conceded—that HESI bears sole responsibility for the spill.[23]

---

[22] *Jones* holds that a shipowner can recover from a pier owner maintenance and cure payments made to a seaman injured as a result of the pier owner's negligence.  155 F.2d at 999 (citing cases).

[23] Moreover, as discussed, *supra*, *Montauk* does not govern here because, as operator of the tug, the defendant would otherwise have been subject to penalties under the CWA—HESI would not.

### E.   OPA Does Not Provide A Basis For Indemnification or Contribution for CWA Penalties.

BP and Transocean also seek contribution from HESI under OPA, 33 U.S.C. §2709, which states "[a] person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law."   *See* (Dkt. No. 2574 at ¶57) (Transocean); (Dkt. No. 2083 at ¶138) (BP).   But §2709 cannot be read to provide a cause of action for contribution for penalties imposed under the CWA.   First, HESI is not liable or potentially liable under OPA, which only imposes liability on a "responsible party" under the statute.  *See* 33 U.S.C. §2702(a);  *see also id.* at §2701(32)(A) (defining "responsible party," in the case of a vessel, as "any person owning, operating, or demise chartering the vessel").   Nor is HESI liable or potentially liable under "another law," here, the CWA, as demonstrated, *supra*. Moreover, while OPA provides for the recovery of natural resource damages, damages for injury to real or personal property, subsistence use damages, lost profits and earning capacity, and the cost of providing increased public services, it does not provide for the imposition of civil penalties.  *See id.* at §2702(b).   Obviously, OPA cannot be read to create a right of contribution for a type of "damage," *i.e.* civil penalties, not recoverable under OPA.   *See Gutierrez v. Ada*, 528 U.S. 250, 255 (2000) ("[W]ords and people are known by their companions."); *United States v. Locke*, 529 U.S. 89, 105-06 (2000) (noting that placement of savings clause in Title I of OPA limited its reach to the types of damages recoverable under that Title) (citing *Gutierrez*, 528 U.S. at 255).   Thus, OPA cannot serve as the basis for an indemnity obligation under the CWA for civil fines or penalties.

**F.** **Recognizing a Right of Indemnification or Contribution for CWA Penalties Violates Public Policy.**

The language and structure of the CWA is flatly inconsistent with permitting contribution or indemnity for penalties assessed under the statute. Congress already specifically provided for the shifting of liability to a third-party for removal costs <u>only</u>, when the discharge was "caused solely by an act or omission of a third party." *See* 33 U.S.C. § 1321(g). Likewise, the CWA's third-party defense applies to removal costs, not penalties, and requires proof that the discharge was solely caused by the acts or omissions of the third party. *See* §1321(f)(1).[24]

Recognizing equitable contribution or indemnification, in the absence of specific authority in the CWA, and contrary to specific provisions of the CWA that recognize third-party liability only in limited circumstances, would directly contradict Congressional intent to provide strict liability for civil penalties. *See, e.g.*, *Coastal States*, 643 F.2d at 1127 (CWA administrative penalty provision "provides no defense to the assessment of the civil penalty; indeed, it establishes an absolute liability standard which obviates the need for a finding of fault.").[25]

As the Seventh Circuit recognized in *Tex-Tow*, Congress took a risk-shifting approach to the CWA's civil penalty provision; that is, "the party engaged in the potentially polluting enterprise is in the best position to estimate the risk of accidental pollution and plan accordingly[.]" 589 F.2d at 1314. Here, BP and Transocean were "engaged in the type of

---

[24] Section 1321(f)(1) provides liability for actual costs of removal "except where an owner or operator can prove that a discharge was caused solely by . . . (D) an act or omission of a third party without regard to whether any such act or omission was or was not negligent[.]" 33 U.S.C. §1321(f)(1); *see also* §1321(f)(12) (providing liability for actual costs of removal "except where an owner or operator or an onshore facility can prove that a discharge was caused solely by . . . (D) an act or omission of a third party without regard to whether any such act or omission was or was not negligent, . . ."); §1321(f)(3) (providing liability for actual removal costs "except where an owner or operator of an offshore facility can prove that a discharge was caused solely by . . . (D) an act or omission of a third party without regard to whether any such act or omission was or was not negligent, . . .").

[25] *See also United States v. J&D Enters.*, 955 F. Supp. 1153, 1160-61 (D. Minn. 1997)(public policy considerations did not permit indemnity of penalties under the Clean Air Act); *Beerman Realty Co. v. Alloyd Asbestos Abatement Co.*, 653 N.E. 2d 1218, 1223 (Ohio Ct. App. 1995) (same).

enterprise which will inevitably cause pollution and on which Congress has determined to shift the cost of pollution when the additional element of an actual discharge is present." *Id.*[26]

Consistent with this policy, and with the primary objectives of a 33 U.S.C. §1321(b)(7) penalty—punishment and deterrence[27]—is Congress's carefully crafted scheme of statutory factors that must considered in determining the amount of a CWA penalty. *See* 33 USC §1321(b)(8). As the United States recognized in its Memorandum in Opposition to Transocean's Motion for Partial Summary Judgment Against BP, these factors ensure that CWA penalties are "tailored . . . specifically to the liable violator." (Dkt. No. 4840 at 6). That is, BP's and Transocean's penalties will be, or have been, specifically tailored to take into account their culpability, the economic impact of the penalty on BP and Transocean, and "any other matters as justice may require." There is no place for equitable indemnification or contribution where, as here, equity must already be taken into account in the Court's determination of the penalty amount.

## CONCLUSION AND PRAYER

For the reasons stated herein, HESI requests that this Court grant its motion for summary judgment as to Transocean's and BP's claims for contribution and/or indemnification under the Clean Water Act, and all other relief to which it is entitled.

---

[26] The *Tex-Tow* court addressed whether a penalty could be imposed on an owner or operator that did not "cause" the spill. *Id.* at 1312. The Seventh Circuit held that the third-party causation defense contained elsewhere in the CWA could not be read into the civil penalty provision, and that, under the statute, Tex-Tow's oil-related activities were the "cause" of the spill. *Id.* at 1313-14. Though the court noted that Tex-Tow <u>might</u> have an indemnity cause of action against the party ultimately causing the spill, it questioned whether such a cause of action would be available, given the risk-shifting view the court took of the civil penalty provision. *Id.* at 1314 (citing *Tug Ocean Prince*, 436 F. Supp. at 926).

[27] *See* (Dkt. No. 5446 at 20-23).

Respectfully Submitted,

**GODWIN LEWIS PC**

**By:**  /s/  Donald E. Godwin
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
Don.Godwin@GodwinLewis.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
Bruce.Bowman@GodwinLewis.com
Jenny L. Martinez
State Bar No. 24013109
Jenny.Martinez@GodwinLewis.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
Floyd.Hartley@GodwinLewis.com
Gavin E. Hill
State Bar No.  00796756
Gavin.Hill@GodwinLewis.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone:  (214) 939-4400
Facsimile:  (214) 760-7332

and

R. Alan York
State Bar No. 22167500
Alan.York@GodwinLewis.com
Jerry C. von Sternberg
State Bar No.  20618150
Jerry.vonSternberg@GodwinLewis.com
Misty Hataway-Coné
State Bar No.  24032277
Misty.Cone@GodwinLewis.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone:  (713) 595-8300
Facsimile:  (713) 425-7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Memorandum in Support of Halliburton Energy Services, Inc.'s Motion for Summary Judgment Regarding Indemnification for Civil Penalties has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this <u>15th</u> day of July, 2013.

/s/ Donald E. Godwin
Donald E. Godwin

**HALLIBURTON ENERGY SERVICES, INC.'S MEMORANDUM  IN SUPPORT OF**                     **PAGE 21**
**MOTION FOR SUMMARY JUDGMENT  REGARDING INDEMNIFICATION AND/OR**
**CONTRIBUTION FOR CIVIL PENALTIES**

1972834 v5-24010/0002 PLEADINGS