UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL NO. 2179 SECTION: J |
| This Document Relates to: | : : | JUDGE BARBIER |
| *Civ. No.* 10-4536 | : | MAG. JUDGE SHUSHAN |

**MEMORANDUM IN SUPPORT OF THE UNITED STATES'
PARTIAL MOTION FOR SUMMARY JUDGMENT**

Other than its admittedly-false estimates from the early days of the spill, BP kept secret its internal estimates of the flow from the Macondo Well. The United States obtained internal BP documents during discovery, which showed that BP's in-house personnel were estimating flow rates consistent with those estimated by federal and other scientists who were publishing their work in peer reviewed scientific journals. Until May 1, 2013, however, BP refused to say whether it would even offer an estimate of the flow at the Quantification Trial, let alone say what the number was.[1] Finally, BP's expert reports went public. Based on those expert reports, it has become clear that:

1. The lowest estimate of any of the Defendants' experts is that the flow rate from the well on July 15 was at least 42,070 barrels of oil per day; and

2. The lowest estimate of any of the Defendants' experts is that 2.4 million barrels were released from the well between April 20 and July 15, 2010.

---

[1] Exhibit 1, Langan, Tr. of Working Group Conference, Aug. 17, 2012, at 51:5-52:18 (Rec. Doc. 7175).

These facts are undisputed, and the evidence for these facts are the reports of the Defendants' own experts, which are admissible admissions by a party opponent under Federal Rule of Evidence 801(d)(2).

## I. UNDISPUTED MATERIAL FACTS

On May 1, 2013, BP/Anadarko submitted an expert report from Dr. Simon Lo regarding his computational fluid dynamics ("CFD") analysis of the flow rate of oil through the capping stack installed on the Macondo well. In his expert report, Dr. Lo concluded that "[u]sing my multiphase flow model for the choke line, when the choke line is fully open, the calculated flow rate of oil and gas between 12:00 and 12:28 CDT on July 15, 2010, 106.8 kg/s, equivalent to 42,070 bopd."[2]

In addition, on May 1, 2013, BP/Anadarko submitted an expert report from Dr. Alain Gringarten concerning his well-test analysis regarding parameters that determine the amount of oil flow from the Macondo reservoir. In his expert report, Dr. Gringarten concluded that "the Macondo reservoir released a [cumulative total of] approximately 2.4-3 million stock tank barrels" of oil.[3]

Although others of BP/Anadarko's experts calculated higher cumulative flows, and Dr. Lo calculated higher flow rates from the capping stack at different times, these are the *minimum* flow figures calculated by BP and Anadarko's experts.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is proper where the court finds that "there is no genuine issue as to any material fact and that the moving party is entitled

---

[2] *See* Exhibit 2 (Excerpts from Expert Report of Dr. Simon Lo, May 1, 2013, at i-ii, 22-27, 32-33).

[3] *See* Exhibit 3 (Excerpts from Expert report of Dr. Alain Gringarten, May 1, 2013, at 6, 34-35, 62).

to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets the initial burden of showing there is no genuine dispute as to material facts, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine dispute for trial. *See Allen v. Rapides Parish Sch. Bd.,* 204 F.3d 619, 621 (5th Cir. 2000); *State Farm Life Ins. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990); *United States v. Louisiana Generating, LLC,* No. 09-100, 2011 WL 6012997, at *5 (M.D. La. Dec. 1, 2011). As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994).

### III. ARGUMENT

The Court should grant partial summary judgment to the United States because there is no genuine dispute as to the minimum number of barrels of oil discharged into the Gulf of Mexico from the Macondo well based on the admissions of BP and Anadarko as set forth in the expert reports of Drs. Lo and Gringarten. Fed. R. Civ. P. 56(c).

The primary issue to be determined in the Quantification Track of Phase Two is the number of barrels of oil discharged from the Macondo well into the Gulf of Mexico between April 20 when hydrocarbons began to flow, and July 15, 2010, when the flow stopped. On July 14, BP manipulated valves and rams in the Capping Stack – outfitted with dual pressure gauges – and recorded the resulting pressure changes. On July 15, BP closed the Capping Stack in a series of turns, and likewise recorded the resulting pressure changes. Many of the experts look to the data from July 14 and 15 to calculate a flow rate for those two days. Some Defendant and

United States' experts use the July 14 and 15 flow rates to estimate the flow on previous days. That is why we seek summary judgment as to two separate numbers.

Defendants' expert Simon Lo's low end estimate is that the flow rate from the well on July 15, 2010, the last day that oil was released from the well, was 42,070 stock tank barrels of oil per day (bopd).[4] Defendants' expert, Alain Gringarten's low end estimate is 2.4 million stock tank barrels released from the Macondo reservoir between April 20 and July 15, 2010.[5] The opinion evidence of BP's and Anadarko's experts as set forth in their expert reports regarding the minimum number of barrels of oil discharged from the Macondo well into the Gulf of Mexico constitute admissions by a party opponent under Federal Rule of Evidence 801(d)(2). As a result, partial summary judgment should be granted as to the minimum number of barrels of oil discharged by the defendants from the Macondo well. Both experts also have estimated numbers that are higher, but for purposes of this motion we seek only the lowest numbers.

Rule 56 of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party asserting that a fact cannot be genuinely disputed must support the assertion by citing to particular parts of materials in the record, including a number of items such as admissions, or other materials showing that the materials cited do not establish a genuine dispute. Fed. R. Civ. P. 56(a) and (c).

It is well-established that Rule 56 allows summary judgment based upon expert testimony. *Dean v. Chrysler Corp.,* 38 F.3d 568, 1994 WL 574188, at *5 (C.A.5 (La.));

---

[4]*See* Exhibit 2 (Excerpts from Expert Report of Dr. Simon Lo, CFD Analysis of the Flow Through the Capping Stack, May 1, 2013, at i-ii, 22-27, 32-33).

[5]*See* Exhibit 3 (Expert Report of Alain Gringarten, Well-Test Analysis, May 1, 2013, at 6, 34-35, 62).

*Rodriguez v. Pacificare of Texas, Inc.,* 980 F.2d 1014, 1020 (5th Cir. 1993); *Jones v. Wike*, 654 F.2d 1129, 1130 (5th Cir. Unit B 1981); *Webster v. Offshore Food Service, Inc.,* 434 F.2d 1991 (5th Cir. 1970); *Cooper v. United States*, 903 F. Supp. 953, 958 (D.S.C. 1995); *Kawaoka v. City of Arroyo Grande*, 796 F. Supp. 1320, 1324 (C.D. Cal. 1992).

It is also well-established that a statement, including a report, of a person whom a party has authorized to make such a statement or by a party's agent on a matter within the scope of that relationship is admissible against a party opponent under Federal Rule of Evidence 801(d)(2). *See Theriot v. J. Ray McDermott & Co., Inc.,* 742 F.2d 877, 882 (5th Cir. 1984); *H.E. Collins v. Wayne Corp.*, 621 F.2d 777, 781-782 (5th Cir. 1980); *United States v. Lykes Bros. Steamboat Co., Inc.,* 432 F.2d 1076, 1078 (5th Cir. 1970); *Brown & Root, Inc. v. Am. Home Assurance Co.,* 353 F. 2d 113, 116 (5th Cir. 1965); *Weiss v. Allstate Ins. Co.,* 512 F. Supp. 2d 463, 470 (E.D. La. 2007); *Steel Coils, Inc. v. M/V Lake Marion, et al.*, No. 98-3116, 2001 WL 1191055, at *2 (E.D. La. Oct. 5, 2001).

Here, Dr. Lo, who is retained and authorized to make statements as an expert on behalf of BP and Anadarko has concluded that the flow rate from the Macondo well was at least 42,070 stock tank barrels of oil on July 15, 2010.[6] Dr. Gringarten, who also is retained and authorized to make statements as an expert for BP and Anadarko has concluded that his low-end estimate is 2.4 million stock tank barrels were released from the Macondo reservoir between April 20 and

---

[6] This figure is Dr. Lo's lowest estimate. Dr. Lo's report also contains a higher estimate of 44,631 barrels per day on July 14. *See*, Exhibit 2, at Executive Summary, page ii, and pg. 21. We are not seeking summary judgment as to the high-end estimate.

July 15, 2010. Dr. Gringarten's high end estimate is 3 million barrels, but we are not seeking summary judgment as to the high-end estimate.[7]

Notably, these estimates are substantially lower than BP's internal estimates in July 2010 and in BP's SEC filings. BP Global Wells Organization Vice-President Richard Lynch (BP's lead engineer and 30(b) witness for Capping Stack operations) explained that the design of the capping stack, including highly accurate pressure gauges, allowed for estimating the flow rate, which he admitted BP estimated at 56,000 barrels of oil per day during well shut-in, a figure which he had no reason to doubt because it was based on a "pretty straight calculation." Exhibit 4, Deposition of Richard D. Lynch, Jr. May 19, 2011, at 371:15-372:21, 369:14-370:3, 78:18-23; 95:12-14; 288:13-17; 308:15-21, 11:4-5.

And, BP has indicated in its public SEC filings that a higher cumulative flow is appropriate. For example, in its 2012 Annual Report, it states:

It was and remains BP's view, *based on the analysis of available data by its experts*, that the 2 August 2010 Government estimate is not reliable. BP believes that the 2 August 2010 discharge estimate is overstated by at least 20%. If the flow rate were 20% lower than the 2 August 2010 estimate, then the amount of oil that flowed from the Macondo well would be approximately 3.9 million barrels and the amount discharged into the Gulf would be approximately 3.1 million barrels (using a current estimate of barrels captured by vessels on the surface of 810,000 in line with the stipulation entered with the US government – see Legal Proceedings on pages 162-171), which is not materially different from the amount we used for our original estimate at the end of the second quarter 2010. For the purposes of calculating a provision for fines and penalties under Section 311 of the Clean Water Act, BP has continued to use an estimate **of 3.2 million barrels of oil discharged to the Gulf of Mexico** and a penalty of $1,100 per barrel, as its current best estimate, as defined in paragraphs 36-40 of IAS 37 'Provisions, Contingent Liabilities and Contingent Assets', of the amounts which may be used in calculating the penalty under Section 311 of the Clean Water Act and as a result, the provision at the end of the year was $3,510 million.

Exhibit 5, BP's Annual Report and Form 20-F 2012, at 238 (TREX-130528) (emphasis added).[8]

---

[7] Note that for these estimates of the amount discharged from the "well," 0.81 million barrels was the "collected oil," and was not discharged to the ocean, per a prior stipulation.

At trial, the United States expects to introduce evidence that much greater volumes of oil both on the last day and cumulatively were discharged from the Macondo well than the minimum flows calculated by Dr. Lo and Dr. Gringarten. For instance, Dr. Mehran Pooladi-Darvish has submitted an expert report on behalf of the United States in which he concludes that between 5 and 5.3 million stock tank barrels of oil were released cumulatively from the Macondo well,[9] and a number of United States' experts estimate the flow rate from the capping stack on July 14 and 15 to exceed 50,000 bopd.[10]

On a related note, Dr. Martin Blunt, another of BP/Anadarko's experts, has calculated that 3.26 million stock tank barrels of oil were released from the Macondo reservoir, with a range of up to 3.7 million stock tank barrels of oil released. See Exhibit 9 (Excerpts from Expert Report of Dr, Martin Blunt, May 1, 2013, at 6, 51-52). However, since we believe that BP has the right to argue for the lower numbers from Drs. Gringarten or Blunt, we do not seek summary judgment as to Dr. Blunt's high-end estimate.[11] Thus, the 42,070 bopd released on the last day and 2.4 million cumulative volume released represent the minimum number of barrels of oil that BP and Anadarko admit were discharged from the Macondo reservoir.

Under the terms of PTO 54 (which likely will apply to Phase Two), BP and Anadarko can elect not to call experts at trial, which would make the expert reports and associated

---

[8] BP's Annual Reports and Form 20-Fs constitute admissions of a party opponent under the Rule 801(d)(2). *See United States v. Cinergy Corp.*, 495 F. Supp. 2d 909, 914 (S.D. Ind. 2007) (finding defendants' annual reports "admissible as either admissions of a party-opponent or as records of regularly conducted activity"). Thus the court also could find a minimum cumulative flow of 3.2 bopd.

[9] *See* Exhibit 6 (Excerpts from Expert Report of Dr. Mehran Pooladi-Darvish, March 22, 2013, at 2, 15-23).

[10] *See* Exhibit 7 (Expert Report of Nathan Bushnell, Ph.D. (Executive Summary)); Exhibit 8 (Expert Report of Ronald C. Dykhuizen, Ph.D (Executive Summary)).

[11] Similarly, the United States cannot seek more than its highest estimate of its experts, but of course can seek more than the lowest end of the lowest range estimate of its experts.

7

depositions inadmissible. This is why the United States seeks summary judgment: if the Court does not grant this Motion, it may need to consider a dispute ranging from over 5 million barrels (US estimates) to zero barrels of oil (BP's estimate if it declines to bring Blunt, Gringarten and Lo to trial). If the motion is granted, the Court would instead consider a dispute ranging only from 2.4 million barrels to the United States' 5.0 million barrels or greater estimates.

By granting this motion, the Court will reduce the dispute over the total amount of oil discharged. Given the undisputed facts, and in order to avoid unnecessary proof and to narrow the issues for the Phase Two Trial, this Court should grant the United States' partial motion for summary judgment finding that the flow rate from the well was *at least* 42,070 bopd of oil on July 15, and 2.4 million barrels of oil on a cumulative basis were discharged from the Macondo well.

## IV. CONCLUSION

For the foregoing reasons, the Court should rule that:

1. The flow rate from the well was at least 42,070 barrels on July 15, 2010; and

2. At least 2.4 million barrels were emitted from the well between April 20 and July 15, 2010.

Respectfully submitted,

| | |
|---|---|
| ROBERT G. DREHER | BRIAN HAUCK |
| Acting Assistant Attorney General | Deputy Assistant Attorney General |
| Environment & Natural Resources Division | Civil Division |
| | |
| SARAH HIMMELHOCH | PETER F. FROST |
| Senior Litigation Counsel | Director, Torts Branch, Civil Division |
| THOMAS BENSON | Admiralty and Aviation |
| SCOTT CERNICH | STEPHEN G. FLYNN |
| NANCY FLICKINGER | Assistant Director |

| | |
|---|---|
| RICHARD GLADSTEIN | R. MICHAEL UNDERHILL, T.A. |
| Senior Attorneys | Attorney in Charge, West Coast Office |
| A. NATHANIEL CHAKERES | MALINDA LAWRENCE |
| BETHANY ENGEL | LAURA MAYBERRY |
| ERICA PENCAK | Trial Attorneys |
| Trial Attorneys | Torts Branch, Civil Division |
| Environment & Natural Resources Division | P.O. Box 14271 |
| P.O. Box 7611, Washington, DC 20044-7611 | Washington, D.C. 20044-4271 |

/s/Steven O'Rourke

| | |
|---|---|
| STEVEN O'ROURKE | DANA J. BOENTE |
| Senior Attorney | United States Attorney |
| Environmental Enforcement Section | Eastern District of Louisiana |
| Environment & Natural Resources Division | SHARON D. SMITH |
| U.S. Department of Justice | Assistant United States Attorney |
| P.O. Box 7611 | Eastern District of Louisiana |
| Washington, D.C. 20044 | 650 Poydras Street, Suite 1600 |
| Telephone: 202-514-2779/202-514-0180 | New Orleans, LA 70130 |
| Facsimile: 202-514-2583 | Telephone: (504) 680-3000 |
| E-mail: steve.o'rourke@usdoj.gov | E-mail: sharon.d.smith@usdoj.gov |

Attorneys for the UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Date: July 15, 2013                                /s/ Sarah D. Himmelhoch
                                                             Sarah D. Himmelhoch

## LIST OF EXHIBITS

| Exh. # | Description |
|---|---|
| 1 | Transcript of Working Group Conference, Aug. 17, 2012, at 51:5-52:18 (Rec. Doc. 7175) |
| 2 | Expert Report of Dr. Simon Lo, CFD Analysis of the Flow Through the Capping Stack, May 1, 2013, at i-ii, 21-27, 32-33 (Excerpts) |
| 3 | Expert Report of Alain Gringarten, Well-Test Analysis, May 1, 2013, at 6, 34-35, 62 (Excerpts) |
| 4 | Deposition of Richard D. Lynch, Jr., May 19, 2011 at 371:15-372:21, 369:14-370:3, 78:18-23; 95:12-14; 288:13-17; 308:15-21, 11:4-5 (Excerpts) |
| 5 | BP's 2012 Annual Report and Form 20-F (TREX-130528) |
| 6 | Expert Report of Dr. Mehran Pooladi-Darvish, March 22, 2013, at 2, 15-23 (Excerpts) |
| 7 | Expert Report of Nathan Bushnell, Ph.D (Executive Summary) |
| 8 | Expert Report of Ronald C. Dykhuizen, Ph.D (Executive Summary) |
| 9 | Expert Report of Dr, Martin Blunt, May 1, 2013, at 6, 51-52 (Excerpts) |