# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 SECTION J |
| This document relates to all actions. | * * * * * * * | HONORABLE CARL J. BARBIER MAGISTRATE JUDGE SHUSHAN |

### Declaration of Keith Moskowitz

I, Keith Moskowitz, hereby declare and state as follows:

1. I am over the age of 21 years and a resident of the State of Illinois. Unless otherwise stated, I have personal knowledge of the facts set forth herein and, if called to do so, could testify truthfully thereto.

2. I am a Partner at the law firm of Dentons US LLP and am one of the attorneys representing BP Exploration & Production Inc. and BP America Production Company (collectively "BP") in connection with the Economic and Property Damages Settlement Agreement ("Settlement Agreement"). My responsibilities in connection with this representation include working with the Claims Administrator Patrick Juneau and the Court Supervised Settlement Program ("Settlement Program"), as well as other employees of the Settlement Program, on the implementation and administration of the Settlement Agreement.

3. Since the inception of the Settlement Program and continuing to date, I have had frequent and regular contact and interaction with the Claims Administrator, the Settlement Program and its employees, and Class Counsel on claims implementation and administration issues. I have had in person and/or telephonic meetings with the Claims Administrator and/or representatives of the Settlement Program nearly every week since the commencement of the Settlement Program in June 2012. Through these in-person and telephonic meetings I have communicated and interacted with the Settlement Program on essentially every aspect of the implementation and administration of the Settlement Agreement.

4. The Settlement Agreement sets forth and contemplates a transparent and collaborative process between the Claims Administrator, BP and Class Counsel in connection with the implementation and administration of the Settlement Agreement. The Claims Administrator has implemented a process to present questions and issues related to the Settlement Agreement's implementation and administration to BP and Class Counsel. At the outset of the claims administration process, the Claims Administrator compiled a spreadsheet of

such questions and issues that was updated and presented to BP and Class Counsel for input and resolution.

5. This process was later refined by the Claims Administrator, but the refined process operates in substantially the same fashion to facilitate the presentation of questions and issues to BP and Class Counsel for consideration and comment prior to the Claims Administrator taking his own final position on the question or issue. Under the refined process, the Claims Administrator issues a written Request for Input from BP and Class Counsel regarding a question or issue identified by the Claims Administrator related to the implementation or administration of the Settlement. Once BP and Class Counsel respond to the Request for Input, the Claims Administrator issues a written Policy Statement which constitutes the Claims Administrator's position on the question or issue. The parties can then provide comments to the Policy Statement. If both parties "agree" with the Policy Statement, the Claims Administrator will issue a Final Policy Announcement (sometimes referred to as a "policy decision"), and the policy decision will be implemented by the Claims Administrator. However, if the parties do not agree with the Policy Statement, the parties typically provide comments for the Claims Administrator's consideration, and either classify the policy as a "Claims Administrator Decision" or "Request a Panel." BP and Class Counsel may categorize a policy as "Claims Administrator Decision," which means that they are acknowledging the policy subject to a reservation of the right to object to the policy in the future, including, but not limited to, instances in which the policy is applied to specific claims.

6. As the only Claims Counsel at the Settlement Program for 6 months (and as one of two with her husband for another 8 months), from my personal experience, Christine Reitano was involved in the policy decision process described above. Ms. Reitano sent out the written requests for input described above and collected the parties' comments and input on policy issues. She also announced policy decisions made by the Settlement Program to the parties. As part of this process, I have personally corresponded, or been included on correspondence, with Ms. Reitano regarding many of the Settlement Program's policy determinations.

7. When Lionel "Tiger" Sutton III was hired by the Settlement Program and Settlement Trust, he became only the second Claims Counsel working at the program. From my personal experience, Mr. Sutton's role made him personally involved with certain policy decisions. For example, Mr. Sutton was one of the architects of the Settlement Program's policy decisions regarding "subsistence" claims (i.e. the compensation framework for individuals and families that rely on Gulf seafood or game as everyday food supply). I participated in meetings with Mr. Sutton and representatives from the Settlement Program and Class Counsel to discuss the subsistence policy decisions. From these meetings, I am aware that Mr. Sutton was involved in crafting the Settlement Program's subsistence policy decisions. Indeed, until his termination in late June 2013, Mr. Sutton was involved in policy decisions; I am aware Mr. Sutton attended meetings regarding implementation of the Settlement Agreement requirement to exclude Moratoria Losses from compensation during the last weeks of his employment.

8. As described above, representatives of the Settlement Program, Plaintiffs' Steering Committee, and BP have met for Panel Meetings contemplated by the Settlement Agreement. The Panel Meetings are intended to resolve issues or disputes related to settlement administration. From my personal experience, Ms. Reitano attended many of these Panel

Meetings. From my personal experience, Mr. Sutton and Ms. Reitano also attended meetings between the Settlement Program, the PSC, and BP regarding policies that govern claim payments in a range of areas, including seafood compensation, subsistence claims, business economic loss claims, and claims for the moratorium placed on oil and gas exploration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 15, 2013

_____
Keith Moskowitz