# Exhibit 5



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

# UPDATE ON REVIEW OF CODE OF CONDUCT AND CLAIMS PROCESSING ISSUES

## JULY 2, 2013

## CONFIDENTIAL

To: Judge Carl Barbier

From: Patrick A. Juneau, Claims Administrator

Date: July 2, 2013

The following is an update concerning the various efforts of the Deepwater Horizon Economic Claims Center ("DHECC") regarding assessment of code of conduct and claims processing issues following the allegations concerning Lionel Sutton.

### 1. Personnel Issues

The contracts of both Lionel Sutton and Christine Reitano have been terminated. Lionel Sutton voluntarily terminated his contract effective June 21, 2013. Christine Reitano's contract was terminated effective June 26, 2013.

### 2. ▮▮▮▮▮ Claim (Claim # ▮▮▮▮ )

The Business Economic Loss ("BEL") claim of ▮▮▮▮▮▮ had previously been reviewed by Postlethwaite & Netterville ("P&N") and had undergone QA review by PriceWaterhouseCoopers ("PwC"). An Eligibility Notice in the amount of $7,648,722.34 was issued on March 20, 2013. (Attachment 1). That award was appealed by BP. A three-member appeals panel affirmed the award by decision dated June 4, 2013. (Attachment 2).

In light of the allegations involving Lionel Sutton, this claim was placed on "hold." No payment has been made.

2

PwC has conducted a second review of this claim and has concluded that the first Eligibility Notice was correct. (Attachment 3). The Claims Administrator's Quality Control Team has conducted its own review of this claim as well. The report on that review is attached as Attachment 4. A few "non-material exceptions" were noted, but nothing that affected the final award calculation. The value of this claim is driven by income "spikes" in selected months. The file is properly documented with bank statements, etc. that verify recording of that income in the proper months.

This claim remains on "hold" pending further direction from the Court.

### 3. **Claims of** **clients**

A "hold" has been placed on all claims of clients represented by

For those claims on which an Eligibility Notice has already been issued, DHECC is in the process of re-reviewing all such claims. For BEL claims initially reviewed by P&N, the re-review is being conducted by PwC. For BEL claims initially reviewed by PwC, the re-review is being conducted P&N. The protocol being followed is attached as Attachment 5. For claims other than BEL claims, the appropriate reviewing entity for that claim type is doing the re-review, utilizing personnel other than those who did the initial review. These reviews remain in progress. A breakdown of the number and types of claims at issue is set out in Attachment 6. There are a total of 141 claims that have been issued an Eligibility Notice.

### 4. **Reversals of "Incompleteness" Denials**

Christine Reitano's duties in the DHECC included serving as the "Documentation Reviewer," which involved reviewing claims that had appealed a denial based on

3

"Incompleteness." A total of 62 such appeals were presented for her review. Of those 62 claims, the denial was affirmed in 42 instances. The denial was overturned in only 4 instances. No decision has yet been reached on the remaining 16 appeals. We have reviewed the 4 claims in which the denial was overturned and have found no indication of wrongdoing in those instances.

## 5. **Review of Program "Policies"**

BrownGreer has assembled a comprehensive listing of the "policies" that have been issued by the DHECC, including a review of the history leading up to the final adoption of each such policy. The DHECC is in the process of reviewing those policies to ensure that they are appropriate and free of any improper influence in any respect. This review is focused on those policies that BP either "objected" to or "deferred to Claims Administrator" on rather than those policies on which both sides agreed. These policies are being reviewed via team discussions attended by representatives from all entities involved with the claim type affected by each policy – Claims Administrator's office, BrownGreer, PwC and P&N. Our goal is to have this comprehensive review completed by the end of this week.

## 6. **Code of Conduct issues**

The following forms required to be signed by each member of the Claims Administrator's staff are attached: (a) Conflict of Interest and Recusal (Attachment 7), (b) Gifts, Entertainment and Gratuities (Attachment 8), (c) Confidentiality / Non-Disclosure Agreement (Attachment 9), and (d) Definitions for Contractor Policies (Attachment 10). The Claims Administrator's CEO, David Odom, has conducted

4

personal interviews with all individuals serving on the Claims Administrator's staff.
During the course of these interviews, he has reviewed the DHECC's conflict of interest
and disclosure policies. He has also had each staff member complete an additional form
detailing more questions designed to uncover any potential conflicts of interest.
(Attachment 11) He has personally met with each staff member to discuss the issues
raised by Attachment 11 and to probe for more details about any potential issues raised
by the questions on that form.

The respective vendors have been instructed to likewise ensure compliance with
the DHECC's conflicts policies with their employees and contractors. The Claims
Administrator's office will follow up with those vendors to ensure that such an effort has
in fact been undertaken.

7. **Investigation Efforts**

The investigation into the nature and extent of any wrongdoing is being conducted
by David Welker, Director of Waste, Fraud and Abuse. Mr. Welker will report
separately on his investigation.

The law firm of Schiff, Scheckman & White was initially retained to conduct an
independent investigation into the subject allegations. But, in consultation with the
Court, that firm's efforts were ceased in order that such independent investigation could
be conducted by the Court-appointed investigator.



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

# ELIGIBILITY NOTICE
## DATE OF NOTICE: March 20, 2013
### DEADLINE FOR RE-REVIEW OR RECONSIDERATION REQUEST: April 19, 2013

### I. CLAIMANT AND CLAIM INFORMATION

| **Claimant Name** | Last/ Name of Business | First | Middle |
|---|---|---|---|
| **Claimant ID** | | **Claim ID** | |
| **Claim Type** | Business Economic Loss | | |

### II. COMPENSATION AND PAYMENT DETERMINATION

This Notice is an official communication from the Claims Administrator for the Deepwater Horizon Economic and Property Damages Settlement Program ("Settlement Program") and relates to the claim identified in Section I. We have reviewed this claim and find that it qualifies for payment under the terms of the Economic and Property Damages Settlement Agreement ("Settlement Agreement"). The following provides a breakdown of the factors relevant to your payment. See Explanation of Claim Attachment for details on each item, unless another Attachment is noted.

| 1. | Compensation Amount: | $3,399,432.15 |
|---|---|---|
| 2. | Risk Transfer Premium Amount: | $4,249,290.19 |
| 3. | Plus Claimant Accounting Support: See Claimant Accounting Support Reimbursement Attachment for additional details. | $0.00 |
| 4. | Less Prior Spill-Related Payments: | $0.00 |
| 5. | Total Compensation Amount: This is the sum of all Rows above. | $7,648,722.34 |
| 6. | 40% of Prior Transition Offer, if Applicable: | $0.00 |
| 7. | Award Amount: Higher of 40% Amount or Final Claimant Compensation, subject to any applicable liens. | $7,648,722.34 |

Attachment 1

**WWW.DEEPWATERHORIZONECONOMICSETTLEMENT.COM**

Claimant ID:
Claim ID:



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

## NOTICE OF APPEAL PANEL DECISION
### DATE OF NOTICE: June 4, 2013

### I. CLAIMANT AND CLAIM INFORMATION

| **Claimant Name** | Last/Name of Business | First | Middle |
|---|---|---|---|
| **Claimant ID** | | **Claim ID** | |
| **Claim Type** | Business Economic Loss | | |

### II. APPEAL PANEL DECISION

The Economic and Property Damages Settlement Agreement ("Settlement Agreement") written by Class Counsel and BP requires the Claims Administrator to designate an Appeals Coordinator to coordinate the Appeals Process. This Notice is an official communication from the Appeals Coordinator and relates to the claim identified in Section I. BP or the claimant appealed this claim, and the Appeals Coordinator submitted the claim for Appeal Panel review. The Appeal Panel has completed its review of the Appeal and has reached a final decision on the claim. The details of the Appeal Panel's decision are below, as well as any comment left by the Appeal Panel:

| | | **Proposal Chosen** |
|---|---|---|
| **Compensation Amount** | $3,399,432.15 | Claimant |
| **Risk Transfer Premium Multiplier** | 1.25 | Claimant |
| **Prior Payment Offset** | $0.00 | Claimant |

The Compensation Amount awarded by the Appeal Panel will appear in Section II, line 1 of your Post-Appeal Eligibility Notice. We will increase this Compensation Amount by the applicable Risk Transfer Premium, if any, and also decrease this Compensation Amount by any applicable offsets to determine your Award Amount. If the claimant prevailed upon appeal, the pre-Risk Transfer Premium Compensation Amount will be increased by 5%. If we have received notice of any outstanding lien, we will also deduct that applicable amount from your Award Amount.

The Appeal Panel's decision will stand as the Settlement Program's final determination on this claim.

### III. APPEAL PANEL COMMENT

Co-panelist will submit written reasons.

The Panel members have independently reviewed the file material submitted in connection with this appeal and after conferences have unanimously determined that the award should be upheld. The decision is in accordance with the terms of the settlement agreement and the interpretations by the Court. No credible evidence has been put forward to challenge the questions raised on appeal concerning the nature of the income on which the award was based.

Attachment 2

## IV. HOW TO CONTACT US WITH QUESTIONS OR FOR HELP

For questions about this Notice of Appeal Panel Decision or the status of your other claim(s), contact the Claimant Communications Center at 1-800-353-1262 or send an email to **Questions@dhecc.com.** If you are a law firm or claims preparation company, you should call or email your designated DWH Contact for help or assistance. You may also visit a Claimant Assistance Center for help. For a complete list of Claimant Assistance Centers, go to **www.deepwaterhorizoneconomicsettlement.com.**

**WWW.DEEPWATERHORIZONECONOMICSETTLEMENT.COM**

Claimant ID:

Claim ID:

## Michael Juneau

| | |
|---|---|
| **From:** | emily.f.kent@us.pwc.com |
| **Sent:** | Wednesday, June 26, 2013 4:09 PM |
| **To:** | Michael Juneau |
| **Cc:** | howard.s.berkowitz@us.pwc.com; WAtkinson@browngreer.com; aoxenreiter@browngreer.com |
| **Subject:** | Claim - |

Mike,

As discussed, we have gone back and reviewed the ▮▮▮▮▮▮▮▮▮ Claim in light of last week's events.  We reviewed source P&Ls, Tax Returns, Bank Statements, the accountant calculation template, the claimant's Eligibility Notice and other relevant documentation.  After our review we have concluded that we do not believe any adjustments need to be made to the calculation.

Please let me and Howard know if you need anything further.

Regards,
Emily

*Emily F Kent* | Advisory Services | PricewaterhouseCoopers | Telephone: +1 646 471 4566 | Mobile: +1 917 583 8242 | emily.f.kent@us.pwc.com

The information transmitted, including any attachments, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited, and all liability arising therefrom is disclaimed. If you received this in error, please contact the sender and delete the material from any computer. PricewaterhouseCoopers LLP is a Delaware limited liability partnership. This communication may come from PricewaterhouseCoopers LLP or one of its subsidiaries.

Attachment 3


**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

# DEEPWATER HORIZON ECONOMIC CLAIMS CENTER

**Business Economic Loss**

**Claimant ID:**
**Claim ID:**
**Notice Date: June 7, 2013**

### Scope:

The business economic loss claim for                               was reviewed by the CAO Quality
Control Team to assess the accuracy of the compensation calculation and to ensure that no policy
implementations favorably changed the causation outcome or calculated compensation.

### Testing and Methodology:

The following tests were performed:

- Comparison of the Accountant's Workbook to the claimant-provided profit and loss
  statements to assess the accuracy of the compensation calculation.
- Comparison of revenue streams to the bank statements provided by the claimant.
- Evaluation of the implemented policies to determine if any policies affected the outcome of
  the claim.

### Immaterial Findings:

1. Within the Accountant Workbook, the reviewer observed a shifted line item in the months of
   October, November, and December of 2009. This resulted in the input of *Signage* expenses
   on the *Yellow Pages* expense line item. Both of these expenses are categorized as
   Advertising Expense (Fixed); therefore, this discrepancy did not affect compensation.

2. In 2010, the *IOLTA – Other Income* line item was not included in the Accountant
   Workbook. This source of revenue is not included in the calculation. Therefore, the
   omission of this "Other Income" line item is immaterial and did not affect the calculated
   compensation.

3. In 2008 and 2009, two expenses, *Postage-*     and *Postage*     were combined to so that
   only *Postage-*     was listed in the Accountant Workbook. This combined expense was
   categorized as "Postage." "     " and      stand for                               and
        , the      partners of the firm. The CAO observed that within the Accountant
   Workbook, when the reviewer combined these expenses, the reviewer was mathematically
   accurate in all instances. Furthermore, if both expenses were listed within the Accountant
   Workbook, each line item would have been categorized as "Postage." Therefore, this line
   item error did not affect compensation and this finding is immaterial.

1

Attachment 4



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

## Material Findings:

The CAO did not identify any material accounting errors within the Accounting Workbook that affected the claimant's calculated compensation. Additionally, when reviewing the approved policies for BEL claims, the CAO did not identify any policies that altered the claimant's compensation.

## Other Findings:

When analyzing the claimant's revenue, the CAO observed that there are spikes in the claimant's revenue pattern in October 2009, December 2009, and January 2010. These revenue spikes are primary factors that impact the claimant's calculated compensation. On March 8, 2013, the Program contacted the claimant and requested the claimant to provide, "Bank statements or other documentation to support the large amounts of revenue in October and December of 2009 and January of 2010." On March 11, 2013, the claimant provided bank statements from JP Morgan Chase which validated the amount and timing of the revenue. The Accountants and the CA Legal Department discussed this aspect of this claim on March 19, 2013.

**Procedures for the review of claims represented by**

1. Claims primarily worked up by P&N will be re-reviewed by PwC. Claims primarily worked up by PwC will be re-reviewed by P&N.

2. Claim will be searched through **Results Search**.

3. The **original workbook** used to populate Eligibility Notice will be thoroughly reviewed and tied out, including an analysis of all information input into all tabs. For the time being, a new workbook will not be populated* unless there are significant/specific changes that need to be made based on new procedures and policies.

4. **Revenue** streams that have resulted in Policy Changes or general guidance procedure changes will specifically be analyzed (timing of the Policy Change as well as the affect on the claim). Look carefully at Excluded Revenue Streams.
   a. Real Estate Developer
   b. Moratoria
   c. Start-Ups TIN / EIN Memo
   d. Look for substantial shift in structure, ownership, etc.
   e. Reimbursed Expenses
   f. Grants for For-Profit companies
   g. Gains & Losses
   h. Insurance Income, Interest Income, Investment Income
   i. Not for Profit Revenue Streams

5. All **Global Notes** will be thoroughly reviewed, along will all prior **claimant/attorney/accountant communication** and documents requested/received that were loaded to the DWH Portal.

6. All **Source Documents**, including but not limited to Monthly/Annual Profit & Loss Statements, Federal Tax Returns, Sales & Use Tax Returns, Bank Statements, Invoices, General Ledgers, etc. will be thoroughly reviewed and analyzed.

Attachment 5

**Summary of Claimants and Claims Represented by** ▇▇▇ (As of 6/25/13) ▇▇▇ **or the Law Office of** ▇▇▇

|     | Claim Form Type | Eligibility Notice | Denial Notice | Other | Total |
|-----|-----------------|:------------------:|:-------------:|:-----:|:-----:|
| 1.  | Business Economic Loss | 16 | 9 | 74 | 99 |
| 2.  | Coastal Real Property | 3 | 2 | 4 | 9 |
| 3.  | Failed Business Economic Loss | 0 | 2 | 2 | 4 |
| 4.  | Individual Economic Loss | 8 | 16 | 62 | 86 |
| 5.  | Real Property Sales | 0 | 1 | 0 | 1 |
| 6.  | Seafood Compensation Program | 61 | 11 | 79 | 151 |
| 7.  | Start-Up Business Economic Loss | 2 | 1 | 8 | 11 |
| 8.  | Subsistence | 0 | 0 | 38 | 38 |
| 9.  | Vessel Physical Damage | 5 | 2 | 9 | 16 |
| 10. | VoO Charter Payment | 46 | 9 | 10 | 65 |
| 11. | Wetlands Real Property | 0 | 4 | 7 | 11 |
| 12. | Registration Form Only (No Claim Type) | 0 | 0 | 157 | 157 |
| 13. | Registration Not Submitted | 0 | 0 | 44 | 44 |
| 14. | Total | 141 | 57 | 494 | 692 |

Attachment 6



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

<u>CONFLICT OF INTEREST AND RECUSAL</u>

Contractor represents, warrants and covenants that he/she will assist the Claims Administrator in carrying out his/her responsibilities for the Court Supervised Claims Program in a professional manner and that he/she will do so at all times during the term of this Agreement free of any conflict of interest as an independent contractor.

Contractor will not conduct any outside work or business other than his/her work in support of the Claims Administrator except as disclosed to and approved by the Claims Administrator.  Such disclosure of any outside work or business shall be made to the Claims Administrator in writing.

Contractor will take appropriate steps to avoid even the appearance of a conflict of interest or loss of impartiality with respect to the performance of his/her official duties as part of the Court Supervised Claims Program.  Contractor shall not participate, without prior written approval from the Claims Administrator, in any activity that presents or would appear to present to a reasonable person who is knowledgeable of the relevant facts, a conflict of interest with the Court Supervised Claims Program.  However, merely being acquainted with an individual who, or entity that has made a claim with the Transition Process and/or the Court Supervised Claims Program does not by itself require Contractor to be recused from official activities that relate to the Court Supervised Claims Program.

Contractor is not allowed to perform any official duties in the Court Supervised Claims Program that relate to any former employer, close family member or close personal friend of Contractor with respect to the Court Supervised Claims Program, without the prior written approval of the Claims Administrator.  Contractor affirms that neither he/she nor any immediate family member is an employee of BP Exploration & Production Inc. (BP) or any affiliated entity of BP.  Contractor further affirms that neither he/she nor any immediate family member has submitted a claim to the Court Supervised Claims Program, and if any such claim is intended to be filed or is actually filed after the date of the signing of this document, Contractor shall immediately notify the Claims Administrator in writing so that a determination may be made as to whether Contractor may continue to provide service to the Court Supervised Claims Program under the circumstances.

Other than in the performance of his/her duties on behalf of Claims Administrator, Contractor agrees that he/she does not have and will not have any personal interest in the

Attachment 7

Transition Process, the Court Supervised Claims Program or the Claims Administration Services, nor will he/she take any action that will conflict with or contravene this policy as it applies to the Transition Process, the Court Supervised Claims Program or the Claims Administration Services.

Contractor further acknowledges that, to the best of Contractor's knowledge, no close family member or close personal friend has or will have any interest in the Transition Process, the Court Supervised Claims Program or the Claims Administration Services, or will take any action that will contravene this policy as it applies to the Claim Process, the Court Supervised Claims Program or the Claims Administration Services.

Contractor also agrees to report immediately to David F. Odom or Michael J. Juneau if he/she suspects that any other Contractor may have violated of this policy.

Contractor acknowledges that he/she has read, understands and agrees to comply with the above-stated policy.

_____/_____

CONTRACTOR                     Date



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

## GIFTS, ENTERTAINMENT AND GRATUITIES

To avoid even the appearance of a conflict of interest or loss of impartiality with respect to the performance of his/her official duties as part of the Court Supervised Claims Program, Contractor is prohibited from soliciting or accepting any gifts or gratuities from any person or entity that may be associated with the Court Supervised Claims Program or Claims Administration Services, including but not limited to any Claimant, party, attorney, vendor or other contractor.

Gifts and gratuities include but are not limited to: cash, gift certificates, tickets to events, liquor, food, vacations, entertainment, services, discounts, the use of property or facilities or other favors of value extended to Contractor or his/her family. Reasonable business meals may, on occasion, be necessary and appropriate. Such meals are acceptable, if they are not lavish or frequent.

Contractor also agrees to report immediately to David F. Odom or Michael J. Juneau if he /she suspects that any other contractor may have violated of this policy.

Contractor acknowledges that he/she has read and understands the above-stated policy and agrees to abide by this policy.

_____/_____
CONTRACTOR                    Date

Attachment 8



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

## CONFIDENTIALITY/NON-DISCLOSURE AGREEMENT

In consideration of your status as a Contractor and the compensation that will be paid, I agree as follows:

### CONFIDENTIAL INFORMATION:

I acknowledge that I will be exposed to Confidential Information in the performance of my duties on behalf of Claims Administrator. "Confidential Information" is information in any format, whether oral, written or electronic, and includes but not limited to:

(a) information submitted to the Claims Administrator by any Claimant in support of his/her/its alleged Claim(s), including but not limited to any Claimant's personal, financial and/or business information;

(b) information pertaining to the Court Supervised Claims Program and the Claims Administration Services, including but not limited to negotiations, settlement terms, settlement payment amounts, claims guidelines and claims analyses;

(c) information prepared by any contractor, consultant or attorney in connection with his/her/its duties on behalf of the Claims Administrator and/or the Claims Administration Services;

(d) information contained in or made part of any Claims File;

(e) any other information not generally known to the public which, if misused or disclosed, could reasonably be expected to adversely affect any Claimant, Claims Administrator, Claims Administration Services and/or the Court Supervised Claims Program; and

(f) any information of any kind in any way relating to any aspect of the work or activities of Claims Administrator and his staff.

### NON-DISCLOSURE:

I agree to keep all Confidential Information in the strictest confidence.

Attachment 9

I agree that, except as authorized by Court Supervised Claims Program or pursuant to this Agreement, I will not use, copy or take any Confidential Information or distribute, disclose, or give, directly or indirectly, any Confidential Information to any persons, without the prior written consent from the Claims Administrator. I will not make use of any Confidential Information for my own purposes or for any benefit not associated with my duties as a contractor of the Claims Administrator.

I agree to take all reasonable steps to protect from improper disclosure Confidential Information. If instructed by Claims Administrator or as a result of performing my duties I disclose or allow access to Confidential Information to other employees, consultants and/or contractors of the Claims Administrator, I will limit such disclosure or access only to the extent reasonably necessary for such employee, consultant and/or contractor to carry out his/her duties on behalf of the Claims Administrator. Any of the persons mentioned above who are given access to the Confidential Information shall be informed of this Agreement in advance, and I shall use all reasonable efforts to cause such persons to comply with provisions set forth in this Agreement.

### RETURN OF CONFIDENTIAL INFORMATION:

When my work for the Claims Administrator ends, for whatever reason, or at the request of the Claims Administrator, I will promptly deliver to Claims Administrator all originals and copies of all written and electronic files, records, documents, software, storage media and other materials containing any Confidential Information. I will also return to Claims Administrator all equipment, files, software, hardware and other property belonging to Claims Administrator.

### ENFORCEMENT OF AGREEMENT:

I understand and agree that because of the unique nature of the Confidential Information, Claims Administrator will suffer irreparable harm in the event that I fail to comply with any and all of my obligations under this Agreement and monetary damages will be inadequate to compensate Claims Administrator for any breach of my obligations. Accordingly, I agree that Claims Administrator shall, in addition to any other remedies available to it at law or in equity, be entitled to injunctive relief to enforce the terms of this Agreement. If an injunction is sought, Claims Administrator shall not be required to post any bond to ensure my compliance or with this Agreement.

In the event Claims Administrator commences any action or proceeding against me for any breach or claimed breach in the performance of this Agreement, or seeks a judicial declaration of rights hereunder, Claims Administrator shall be entitled to recover reasonable attorneys' fees and costs.

**MISCELLANEOUS:**

This Agreement is to be made under and shall be construed in accordance with the laws of the State of Louisiana.

This Agreement may not be superseded, amended or modified except by written agreement between the parties hereto.

No waiver of any provision of this Agreement shall be deemed a waiver of any other provision, or constitute a continuing waiver. No partial invalidity of this Agreement shall affect the remainder.

I acknowledge that I have read, understand and agree to comply with the above-stated policy.

_____ / _____

Contractor             Date



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

### DEFINITIONS FOR CONTRACTOR POLICIES

The following defined words and phrases apply to the Confidentiality/Non-Disclosure Agreement, Conflict of Interest and Recusal Policy and Gifts, Entertainment and Gratuities Policy  Terms used in the singular shall be deemed to include the plural and vice versa.  Other words and phrases appearing in capital letters throughout the referenced documents shall have the meanings they are given with their first operative use.

Claim:  means any demand or request for compensation together with any accompanying documentation submitted by any Claimant in connection with the Deepwater Horizon Incident.

Claimant:  means any natural person or entity that submits a Claim to the Deepwater Horizon Court Supervised Settlement Program seeking compensation in connection with the Deepwater Horizon Incident.

Claims Administration Services:  means services mutually agreed to in writing by Contractor and Claims Administrator or as otherwise reasonably requested by the Claims Administrator from time to time pursuant to the Settlement Agreement and or Transition Order (and any amendments or modifications thereof) and further orders of the Court. The Claims Administration Services shall be provided in strict accordance with the terms of the Deepwater Horizon Economic and Property Damages Settlement Agreement, the Court's Preliminary Approval Order, the Transition Order (and any amendments or modifications thereof) and in compliance with applicable law.

Claims Administrator:  means that person or entity selected or appointed or designated by the Court who shall administer economic and property damages settlements under the supervision of the Court.

Claims File:  means any information, content or material regarding a Claim in electronic, paper or other form.

Confidential Information:  has the meaning as ascribed in the Confidentiality/Non-Disclosure Agreement

Contractor:  means an independent contractor, or employee or agent of an independent contractor, working at the request of the Claims Administrator engaged to assist with the Claims Administrator's responsibilities.  Contractor is not to be considered an employee of the Claims Administrator for any purpose including, but not limited to, for purposes of the Federal Insurance Contribution Act, the Social Security Act, the Federal Unemployment Tax Act, income tax withholding (federal, state and local), worker's

Attachment 10

compensation insurance premiums, and any and all state taxes. Contractor agrees to comply with all legal and ethical obligations related to assisting the Claims Administrator in his Court-appointed role as the Claims Administrator. Contractor shall devote substantially all of its time to the assistance of the Claims Administrator in connection with the Claims Administrator's responsibilities.

Court: means the United States District Court for the Eastern District of Louisiana, Judge Carl Barbier, presiding, in *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179.

Court Supervised Claims Program: means all activities and obligations of the Claims Administrator or those under his supervision necessary to implement the Deepwater Horizon Economic and Property Damages Settlement Agreement.

Deepwater Horizon Incident: means the events, actions, inactions and omissions leading up to and including (i) the blowout of the MC252 WELL; (ii) the explosions and fire on board the *Deepwater Horizon* on or about April 20, 2010; (iii) the sinking of the *Deepwater Horizon* on or about April 22, 2010; (iv) the release of oil, other hydrocarbons and other substances from the MC252 Well and/or the *Deepwater Horizon* and its appurtenances; (v) the efforts to contain the MC252 Well; (vi) RESPONSE ACTIVITIES, including the VoO Program; (vii) the operation of the GCCF; and (viii) BP public statements relating to all of the foregoing.

Deepwater Horizon Economic and Property Damages Settlement Agreement: means the settlement agreement entered by the Court on April 18, 2012 and any amendments or modifications thereto.

Transition Order: means the order entered by the Court on March 8, 2012 and any amendments or modifications thereto.

Transition Process: has the meaning as ascribed in the Court's March 8, 2012 First Amended Order Creating Transition Process and any amendments or modifications thereto.

Contractor acknowledges that he/she has received a copy of the Definitions for Contractor Policies.

_____/_____
CONTRACTOR                 Date

**Employee Name:**

|  |  | Yes | No |
|---|---|---|---|

1. Employee has received, reviewed, and is in compliance with the Deepwater Horizon Confidentiality Court Order. ❏ ❏

2. Employee has received, reviewed, and is in compliance with the Deepwater Horizon Code of Conduct Policies Including: Confidentiality/NonDisclosure Agreement; Conflict of Interest and Recusal; Gifts, Entertainment and Gratuities; and Definitions for Contractor Policies. ❏ ❏

3. Have you filed any claims with Deepwater Horizon Economic and Property Damages Settlement Program? ❏ ❏
   **Comments:**

4. Have any of your family members or close personal friends filed a claim with the Deepwater Horizon Economic and Property Damages Settlement Program? ❏ ❏
   **Comments:**

5. Are you part of a business that has filed a claim with the Deepwater Horizon Economic and Property Damages Settlement Program? ❏ ❏
   **Comments:**

6. Have any of your past or current business partners filed a claim with the Deepwater Horizon Economic and Property Damages Settlement Program? ❏ ❏
   **Comments:**

7. Have you used your influence to expedite a claim as a favor for anyone? ❏ ❏
   **Comments:**

8. Have you used your influence to modify the outcome of claim as a favor for anyone? ❏ ❏
   **Comments:**

**Additional Notes:**

I attest that the information I have provided is accurate and correct to the best of my knowledge.

_____          _____
**Employee Signature**                                              **Date**

I certify that this interview was conducted on June_____, 2013.

_____
**David Odom, CEO, Signature**

Attachment 11