**KIRKLAND & ELLIS LLP**
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

July 15, 2013

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

Re: MDL 2179 — BP Motion to Strike Halliburton Experts Kris Ravi's Phase 2 Rebuttal Report and Glen Stevick's Phase 2 Rebuttal Report, Section II(b)(i)

Dear Judge Shushan:

We write in reply to Halliburton's opposition to BP's Motion to Strike the Phase 2 Rebuttal Expert Report of Halliburton expert Dr. Kris Ravi, as well as Section II(b)(i) of Halliburton expert Dr. Glen Stevick's Phase 2 Rebuttal Report.

**I. THE CHALLENGED MATERIAL IN THE REPORTS RELATES SOLELY TO QUANTIFICATION TOPICS AND SHOULD BE STRICKEN ON THAT BASIS ALONE.**

As an initial matter, in light of the Court's instruction to the parties last week that Halliburton and Transocean would not be presenting witnesses during the Quantification portion of the Phase 2 trial, both the Ravi Rebuttal Report and Section II(b)(i) of the Stevick Rebuttal Report should be stricken. Both of these reports are responsive solely to Dr. Andreas Momber, a BP/Anadarko quantification expert on erosion topics.

That the challenged material relates solely to Quantification topics is clear on the face of the reports and is confirmed by Halliburton's opposition to BP's motion, which does not contend that any challenged material responds to any expert other than Dr. Momber. On this basis alone, Dr. Ravi's full report and Section II(b)(i) of the Stevick Rebuttal Report should be stricken.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 15, 2013
Page 2

### II.   HALLIBURTON'S OPPOSITION BRIEF CONFIRMS THE IMPERMISSIBLE NATURE OF THE CHALLENGED MATERIAL IN THE REPORTS.

BP agrees with the statement in Halliburton's opposition brief that:

At the outset, the presence, nature, and condition of bottom-hole cement in the Macondo well is relevant to the determination of flow rates and cumulative discharge and is pervasive throughout Phase II discovery. Indeed, several Phase II experts for the United States, BP, and Transocean assume that cement existed at the bottom of the well and served as an impediment to flow or also agree that cement downhole can affect flow.

HESI Opp. Br. at 2.

Where BP and Halliburton disagree on this subject concerns whether parties should be allowed to re-try their Phase 1 cement and flow-path cases in the course of Phase 2. The key difference between what Halliburton attempts to do through Drs. Ravi and Stevick and what Dr. Momber does is that Dr. Momber's Phase 2 report reaches opinions solely based on assumptions regarding Phase 1 evidence already in the record. In other words, Dr. Momber's Phase 2 erosion opinions rely exclusively on Phase 1 record evidence, while Drs. Ravi and Stevick attempt to offer new Phase 1 opinions in Phase 2.

In fact, Halliburton concedes as much, saying, "Moreover, Momber argues that his belief in nitrogen breakout is a 'reasonable assumption,' and he states that he would opine that nitrogen migration was a 'very possible scenario.' Indeed, Momber's testimony is riddled with assumptions about the quality of cement, including his belief that the cement was 'pre-damaged.'" HESI Opp. Br. at 8 (footnotes omitted).

Halliburton does not contest the fact that the theories and evidence upon which Dr. Momber bases his analysis already are in the Phase 1 trial record. Dr. Momber offers no new theories or evidence about the cement job itself. He instead confines his analysis to the expected behavior of the cement based on the Phase 1 record and his own expertise in cement erosion.

Drs. Ravi and Stevick, in stark contrast, "suggest" a new theory about the cement job, that of "a casing breach as another plausible explanation for the data that affected where cement was placed and, thus, the extent of restrictions to flow." HESI Opp. Br. at 8. But the proper time for presenting such theories about causes of the blowout was during Phase 1, where the cement job was a central focus, not during Phase 2.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 15, 2013
Page 3

As discussed in BP's opening motion, Halliburton did not raise these theories in Phase 1 expert discovery, either affirmatively or in rebuttal to BP's flow path expert Morten Emilsen. Rather, Halliburton attempted to advance the theories for the first time in rebuttal to BP cement expert Ronald Crook, who notably had not himself advanced any new flow-path opinions to which Dr. Ravi's new theory would actually have been responsive. The court barred Halliburton from advancing these untimely theories when Mr. Crook did not testify at the Phase 1 trial, given that they were disclosed only as rebuttal opinions. Halliburton was similarly prevented from attempting to bring in Dr. Ravi's new theories through Dr. Beck's testimony because Dr. Beck conceded that the new theories were not included in his expert report. (Tr. 7142:8-17 (Beck).)

Halliburton is now taking yet another run at getting this Phase 1-related testimony into the record — this time in Phase 2 — by resuscitating a previously-excluded flow path theory in both the Ravi Rebuttal Report and Section II(b)(i) of the Stevick Rebuttal Report.

Notably, Halliburton's July 11 letter sets out the totality of the discussion from both reports that is actually responsive to Dr. Momber, and this discussion amounts to a mere five paragraphs. *See* HESI Opp. Br. at 3-4. The main focus of the challenged material undeniably is inserting into the Phase 2 record a belated flow-path theory. Tellingly, the Ravi and Stevick reports include identical graphical demonstratives illustrating the new flow-path theory based on an animation Halliburton prepared for, but was precluded introducing via, Dr. Beck's Phase 1 trial testimony. (*See* Ravi Rebuttal Rpt. at 9-17; Stevick Rebuttal Rpt. at 14; Tr. 7142:8-17 (Beck).)

\*   \*   \*

The Phase 1 trial record has been closed for some time, and the parties filed final Phase 1 post-trial briefs last week. It is too late in the day for Halliburton to present new Phase 1 cement and flow-path theories, particularly given Halliburton will not be presenting a Phase 2 Quantification case at trial.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 15, 2013
Page 4

      For the reasons stated above, BP respectfully requests that the Court strike Dr. Ravi's Phase 2 Rebuttal Report and section II(b)(i) Dr. Stevick's Phase 2 Rebuttal Report.

      Respectfully submitted,

      */s/ Robert R. Gasaway*

      Robert R. Gasaway

cc (by electronic mail):

United States' MDL Counsel
Plaintiffs' Liaison Counsel
Defense Liaison Counsel
Joel M. Gross