IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 |
| | | SECTION J |
| This document relates to Civil Action No. 12-970 | * * * * | HONORABLE CARL J. BARBIER |
| | * * * * | MAGISTRATE JUDGE SHUSHAN |

**RESPONSE OF PATRICK A. JUNEAU, IN HIS CAPACITY AS CLAIMS ADMINISTRATOR AND TRUSTEE, AND THE DEEPWATER HORIZON COURT SUPERVISED SETTLEMENT PROGRAM TO BP'S MOTION FOR AN EMERGENCY PRELIMINARY INJUNCTION TO SUSPEND PAYMENTS FROM THE COURT SUPERVISED SETTLEMENT PROGRAM PENDING SPECIAL MASTER FREEH'S INVESTIGATION AND REPORT**

Richard C. Stanley, 8487
Jennifer L. Thornton, 27019
Gina M. Palermo, 33307
Patrick H. Fourroux, 34550
    Of
STANLEY, REUTER, ROSS,
 THORNTON & ALFORD, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone:    (504) 523-1580
Facsimile:    (504) 524-0069

*Attorneys for Deepwater Horizon Court Supervised Settlement Program and Patrick A. Juneau, in his capacity as Claims Administrator and Trustee*

Patrick Juneau, as Claims Administrator and Trustee, and the Deepwater Horizon Settlement Program (collectively, the "Respondents"), through their undersigned counsel, respectfully submit this response to BP's Emergency Preliminary Injunction to Suspend Payments Pending Special Master Freeh's Investigation and Report.

I.  **INTRODUCTION**

BP's motion asks this Court to halt "all payments" to all claimants from the Settlement Program.[1]  This extraordinary request, however, is in part unnecessary, in part based on premature speculation, and completely overbroad in its scope.  First, as the Court is aware, the Claims Administrator's Office ("CAO") already has placed on "hold" those claims with any remote connection to the parties under investigation.  Second, as is evident from BP's submission, there is no proof to support BP's contention that each and every claim must be presumed to have some imputed "taint," along with every policy rendered by the CAO – including even those policies readily accepted by BP and those where BP's own views prevailed.  And contrary to any need for emergency relief, when the facts have demonstrated a need for a "hold" or a re-review, the CAO, in conjunction with the Court and with notice to BP and the PSC, has implemented such actions without any need for an "injunction."

In addition, the sweeping relief now requested by BP, even disregarding that it is untethered from any pending Complaint, would have the potential for preempting the very investigation initiated by this Court's Order.  To support its motion, BP draws wholly unwarranted conclusions and inferences related to the issues being investigated, and then asks the Court to conclude summarily that BP's negative theories will likely carry the day, before Special Master Freeh has spoken a word.  The presumption is even more specious when one

---

[1] BP has, in fact, essentially granted itself a TRO in the interim between the filing of its motion and the hearing on July 19, as it has refused to give its approval to the CAO's request for funding made pursuant to the Settlement Agreement until after the Court rules on its motion.  *See* Ex. A.

1

considers that, with respect to the overwhelming number of claims that would be halted, there is simply no proof whatsoever that such claims were in any way associated with, much less affected by, any person whose conduct generated the investigation ordered by the Court. Finally, BP plainly cannot carry its burden on the merits of the motion.

## II.  BACKGROUND

Contrary to BP's allegations in its Motion, Mr. Juneau has put in place appropriate internal policies and procedures to comply with the ethical and fiduciary duties set forth in the Settlement Agreement, the Undertaking, and the Trust Agreement, and he has acted and continues to act responsibly and ethically in carrying out the duties set forth in those agreements.

To assist him in the fulfillment of his duties as Claims Administrator and Trustee, Mr. Juneau retained Mr. Sutton and Ms. Reitano as claims counsel for the Program in 2012. As has been the process for the hiring of all contractors of the CAO, the qualifications and contracts of Mr. Sutton and Ms. Reitano were subject to BP's review. BP voiced no objection to the hiring of either Mr. Sutton or Ms. Reitano, which it has done with respect to other candidates for positions in the CAO.[2] Additionally, Mr. Sutton and Ms. Reitano, along with all other contractors, were required to review and sign conflict of interest and confidentiality agreements.[3]

On May 28, 2013, the CAO was first notified by an anonymous, confidential source of the allegations of potential misconduct by Mr. Sutton and Ms. Reitano. Immediately upon receipt of the allegations, Mr. Juneau initiated an aggressive and thorough internal investigation of the alleged wrongdoing. That investigation has included reviewing the Program's database

---

[2] In fact, the CAO passed on a candidate being considered for a key position based on BP's negative response, which BP explained arose from a background check it had independently performed upon receiving the individual's resume. At that time, BP advised the CAO that it performed background checks on all individuals being considered for key positions in the CAO.
[3] *See* BP's Ex. 5, p. 5, and Attachments 7-10 thereto.

2

for claims filed by the law firm to which Mr. Sutton and/or Ms. Reitano had allegedly referred claims ("Law Firm Y"), contacting the FBI, performing public records searches regarding the business interests of Mr. Sutton, collecting and reviewing the emails of Mr. Sutton and Ms. Reitano, and interviewing Mr. Sutton, Ms. Reitano, and other Program staff who may have had knowledge regarding the allegations.[4]  Moreover, in a meeting with BP representatives on June 17, 2013, the CAO informed BP of the allegations made by the confidential informant, as well as the investigative measures that had been taken to date.  At that time, Mr. Juneau informed BP that he had considered advising the Court about the matter, but that he wanted to obtain additional information to confirm the veracity (or lack thereof) of the allegations before doing so.[5]  The CAO explained that the investigation was ongoing, and that the CAO would keep BP advised of any further developments.  BP agreed that it would re-contact the whistleblower and obtain the purportedly incriminating documents.[6]

On the morning on June 19, 2013, the CAO suspended Mr. Sutton and Ms. Reitano from all activities associated with the Program pending the outcome of the internal investigation.  On the evening of June 19, when presented with several of Mr. Sutton's emails discovered during the internal investigation that potentially supported some of the allegations against him, the CAO immediately contacted the Court.[7]  On the following day, the CAO met with and presented the preliminary investigative report and findings to the Court and the Parties.[8]  On June 25, the CAO was advised that the Court had appointed Louis Freeh, former director of the FBI, as a special master to conduct an independent investigation into the allegations. The CAO fully supported the

---

[4] *See* BP's Ex. 7, p. 2-3.
[5] *See id.* at p. 4.
[6] *See id.* at p. 3.
[7] On the same evening, the Court also contacted an independent third-party to assess his willingness to perform an investigation into the allegations.
[8] On June 21, 2013, Mr. Sutton resigned.  Ms. Reitano's contract was terminated on June 26, 2013.

3

Court's designation of Special Master Freeh and has fully cooperated with and aided in his independent investigation, while simultaneously continuing to conduct its own internal investigation and report all findings to the Court.

Finally, pending further direction from the Court, the CAO has placed a hold on the BEL claim filed by Law Firm Y, as well as on all claims of clients represented by Law Firm Y and/or attorneys related to Law Firm Y.[9] As the Court is aware, the CAO has completed or is in the process of completing a re-review of all claims associated with Law Firm Y, as well as a review of all policies and other process determinations that could have possibility been affected by Mr. Sutton and/or Ms. Reitano to ensure that they are appropriate and free from any improper influence.[10] Accordingly, contrary to BP's assertions otherwise, the CAO and Mr. Juneau have acted ethically and responsibly with respect to the management, oversight, and operation of the Program and the Trust.

### III. LAW AND ARGUMENT

#### A. BP's motion is a procedurally improper.

BP never specifically says that it is requesting a preliminary injunction against Mr. Juneau or the Settlement Program, but the relief it requests naturally would require the Court to enjoin the Respondents. Mr. Juneau and the Settlement Program, however, are not parties to this litigation,[11] and the only lawsuit filed against them has been dismissed. As the Supreme Court explained in *Smith v. Bayer Corporation*, 131 S. Ct. 2368, 2372, 2379 (2011), a judgment issuing

---

[9] *See* BP's Ex. 5, p. 2-3.

[10] *See id.* at p. 4. On July 17, 2013, the CAO provided the Court with a supplemental report, including back-up documentation, on its ongoing review of code of conduct and claims processing issues. Those materials were distributed to the parties on this same date and are attached hereto (redacted) as *in globo* Ex. B.

[11] "Generally, a party 'is [o]ne by or against whom a lawsuit is brought,' … or who 'become[s] a party by intervention, substitution, or third-party practice.'" *Smith v. Bayer Corporation*, 131 S. Ct. 2368, 2372 (2011) (internal citations omitted). Obviously, the Respondents are none of the above.

an injunction against non-parties is typically not proper as it cannot bind those non-parties. Regardless, as always, the Respondents stand ready to comply with any order from the Court.

B. **The relief sought is partially moot, and partially premature.**

1. *A reasonable "hold" on payments is already in place, and other action is being taken by the Court and the CAO based on the known facts*.

BP states that, in the light of the allegations of improprieties, a preliminary injunction is necessary because "business cannot continue as usual." But, as detailed above, business has not continued as usual. To the contrary, the troubling allegations have been taken very seriously by the Court and the CAO, and have resulted in both an internal and an independent investigation of the claims of improprieties, as well as "holds" on certain claims and re-reviews of potentially implicated claims. Mr. Juneau responded *immediately* to the anonymous and unverified report of alleged wrongdoings and conflicts of interest, ordering his office "to aggressively use all the resources we have to investigate this matter thoroughly."[12] In addition to the multi-faceted internal investigation, the Court has appointed Special Master Freeh to conduct an independent investigation into the allegations, and both investigations are ongoing.

Based on evidence uncovered which may corroborate certain of the allegations relating to the former employees' relationship with Law Firm Y and the prior representation of a BEL claimant currently represented by Law Firm Y, the CAO placed a "hold" Law Firm Y's BEL claim and those of claimants represented by Law Firm Y. All of those claims are undergoing close scrutiny and being re-reviewed. As reported to the Court on July 2 and July 17, the BEL claim by Law Firm Y had not only been affirmed on appeal, but has since been re-reviewed *twice* because of the information regarding Mr. Sutton's alleged relationship with that firm.[13] The claim otherwise meets the Settlement Program's requirements for payment and is properly

---

[12] BP's Ex. 2, at p. 1.
[13] BP's Ex. 5, at pp. 2-3.

5

documented, but remains on hold due to the investigation.  Similarly, the 494 claims of clients of Law Firm Y also remain on hold, as they are all being re-reviewed.  In addition, the CAO's office is reviewing actions taken by Ms. Reitano in her role as "Documentation Reviewer," and the history of all policy decisions to which BP did not specifically agree.[14]  To date, no indication of wrongdoing or improper influence has been discovered with respect to Ms. Reitano's review of appeals or the CAO's policy decisions.

### 2. *BP has presented no evidence to justify an expansion of the current hold order or actions being undertaken.*

Notwithstanding that responsive actions have already been taken by the Court and the CAO's office to fully investigate the allegations of improprieties, BP asks the Court to stop the entire payment process and put a hold on *all* payments to *all* claimants.  But BP's blanket request is not reasonably tailored to the allegations at issue, not justified by any of the evidence submitted by BP with its motion, and would ultimately penalize thousands of claimants whose claims have nothing to do with the accusations of improprieties by former claims counsel.

First and foremost, BP has presented no evidence of any potentially "tainted claims" other than those previously identified.  Rather, BP premises its motion on speculation regarding Mr. Sutton's and Ms. Reitano's possible influence on the CAO's policy decisions.  Reduced to its essence, BP posits that, because those two former staff members may have assisted Mr. Juneau in developing policy decisions, it is possible that they influenced the outcome of certain policy decisions for self-interested reasons.  BP's rationale concludes that any such policy decisions must be *per se* unfair or incorrect, adversely affecting BP, and resulting in invalid or illegitimate claims being paid.

---

[14] BP's Ex. 5, at pp. 3-4.

6

Despite its claims, however, BP does not identify any particular policy decision that it believes was improperly influenced, let alone submit evidence to support its assumption. Moreover, there is a transparent and cooperative process that leads up to each policy decision. BP and the PSC are fully involved in that process, which usually originates with a dispute among those parties as to the proper interpretation or implementation of a provision of the Settlement Agreement. BP has "won" many of those disputes, with the CAO issuing the policy decision it requested or supported. With respect to the policy decisions BP has "lost," or that were issued over its objection, the CAO has reviewed the history of those policies to verify that the decisions were free of any improper influence. Finally, not only does Mr. Juneau always make the final determination as to the outcome of a policy decision, BP, like the PSC, can, and has, sought review from the Court as to any decisions with which it disagreed.

The innuendo set forth in BP's motion – specifically, that the former staff members sought to and did improperly influence certain, unidentified policy decisions out of self-interest or to benefit certain unidentified claims, and that those policy decisions were disagreed with by BP, not corrected by this Court on review, and then adversely affected BP by causing it to pay "tainted claims" – amounts to pure speculation and forms a wholly inadequate basis for a broad preliminary injunction. Moreover, given the ongoing investigations by the CAO and Special Master Freeh and the actions taken to date, BP has no reason to believe that the CAO would not take immediate action in the event evidence of any other improprieties or allegedly "tainted claims" would be discovered.

> 3. *The relief sought has the potential to impede, not advance, the investigation ordered by the Court.*

Pursuant to the Court's order appointing Special Master Freeh, the Special Master and the Freeh Group are performing an external investigation into the allegations and facts surrounding

7

the resignation and termination of the two former employees, engaging in fact finding as to any other possible ethical violations or other misconduct within the Settlement Program, and examining and evaluating the internal compliance program and anti-corruption controls within the CAO and the Program. A parallel litigation proceeding, in which BP is free to file motions seeking adjudication of those same issues, would be disruptive to the investigation and inhibit the Court's purposes in ordering the investigation. Rather than issue a premature and unsupported preliminary injunction that will cause harm to thousands of claimants, the Court and the parties are better served by allowing Special Master Freeh to expeditiously complete his investigation and issue his report, before determining if any further steps should be taken.

### C. BP cannot meet its burden to show a substantial likelihood of success on the merits of its claim that Mr. Juneau breached any fiduciary duty.

BP apparently believes it has standing to raise breach of fiduciary duty claims on behalf of the beneficiaries of the Settlement Program (the Economic Class), the Settlement Trust, and finally on its own behalf as a so-called "successive beneficiary" of the Trust.[15] Notwithstanding the obvious problems with these contentions, and setting aside whether BP actually has any right to pursue remedies for an imagined breach of fiduciary duty by Mr. Juneau, BP has utterly failed to demonstrate a likelihood of success on the merits of any such claim.

BP argues that Mr. Juneau breached his fiduciary duties when he "negligently hired [Mr. Sutton and Ms. Reitano] without adequate background or conflict checks." However, as demonstrated in the documents attached by BP to its own motion, that allegation is simply not true. First, as previously discussed, BP received the resumes of both former claims counsel before they were retained. In fact, the original undertaking of Ms. Reitano was an agreement

---

[15] BP's Memorandum in Support, Rec. Doc. 10761-1, at p. 9.

8

between Ms. Reitano and BP, signed by both those parties and (then interim) Class Counsel.[16] In her undertaking, Ms. Reitano represented and warranted that she had no conflicts of interest with the undertaking, that she would not be affiliated with any person or entity other than Mr. Juneau as the Claims Administrator, and that she would "even avoid the appearance of a conflict of interest or loss of impartiality with respect to the performance of her official duties…."[17]  Ms. Reitano reaffirmed those commitments and representations in the supplement to her undertaking, attached to BP's motion as Exhibit 1.  In addition, the CAO required that Ms. Reitano, like all other employees and contractors with that office, agree to and sign its Conflict of Interest and Recusal policy.[18]

Similarly, although Mr. Sutton's undertaking was styled as an agreement between him and the CAO, Mr. Sutton made the same representations and covenants regarding the absence of any conflicts of interest on his part and his commitment to avoid even the appearance of impartiality in performing his official duties.[19]  He likewise reaffirmed those representations and covenants in the supplement to his undertaking, attached as Exhibit 3 to BP's motion.  Moreover, Mr. Sutton, like all CAO contractors, was required to abide by the CAO's Conflict of Interest and Recusal Policy.

Importantly, the CAO's policy, attached by BP as part of Exhibit 5 to its motion, is clear that any employee or independent contractor retained by the CAO "will not conduct any outside work or business other than his/her work in support of the Claims Administrator except as disclosed to and approved by the Claims Administrator."[20]  The policy also reiterates the need to avoid even the appearance of a conflict of interest or loss of impartiality.  All independent

---

[16] Ex. C hereto.
[17] *Id.* at p. 1.
[18] Ex. D.
[19] Ex. E.
[20] BP's Ex. 5, Attachment 7; *see also* Ex. D hereto.

contractors must agree by signing the policy that they do not and will not have any personal interest in the Settlement Program or its process. Finally, all contractors agree to report immediately any suspicion that any other contractor has violated the policy.

In light of the CAO's unambiguous policies, the CAO's own review and discussions with the individuals prior to their undertakings, the fact that both Ms. Reitano and Mr. Sutton are attorneys bound by the Louisiana Rules of Professional Conduct, that both agreed to the CAO's policies on conflicts of interest, and that BP and the PSC either expressly agreed or did not object to their undertakings (presumably after BP performed its own background check or investigation), it cannot be said that Mr. Juneau breached any fiduciary duty or was negligent in his hiring of Ms. Reitano or Mr. Sutton.

Finally, BP complains that the alleged breach of fiduciary duty was compounded by the CAO's alleged failure to deal with the allegations with "necessary urgency" and the CAO's supposed failure to have mechanisms in place to detect improprieties like those alleged. But, as detailed herein and in the attachments to BP's motion, the CAO took immediate and aggressive action to investigate the allegations involving former claims counsel. Moreover, the CAO provided in its July 2 and July 17 Updates to the Court a description of additional steps (other than those outlined above) that the CAO's office has taken in the past and continues to take to identify improprieties or conflicts of interest.[21]

## IV.  CONCLUSION

For all of the foregoing reasons and given BP's utter failure to carry its burden with any evidence to support the drastic relief it seeks, BP's motion should be denied.

---

[21] BP's Ex. 5, at pp. 4-5; *see also* Attachment 11.


contractors must agree by signing the policy that they do not and will not have any personal interest in the Settlement Program or its process. Finally, all contractors agree to report immediately any suspicion that any other contractor has violated the policy.

In light of the CAO's unambiguous policies, the CAO's own review and discussions with the individuals prior to their undertakings, the fact that both Ms. Reitano and Mr. Sutton are attorneys bound by the Louisiana Rules of Professional Conduct, that both agreed to the CAO's policies on conflicts of interest, and that BP and the PSC either expressly agreed or did not object to their undertakings (presumably after BP performed its own background check or investigation), it cannot be said that Mr. Juneau breached any fiduciary duty or was negligent in his hiring of Ms. Reitano or Mr. Sutton.

Finally, BP complains that the alleged breach of fiduciary duty was compounded by the CAO's alleged failure to deal with the allegations with "necessary urgency" and the CAO's supposed failure to have mechanisms in place to detect improprieties like those alleged. But, as detailed herein and in the attachments to BP's motion, the CAO took immediate and aggressive action to investigate the allegations involving former claims counsel. Moreover, the CAO provided in its July 2 and July 17 Updates to the Court a description of additional steps (other than those outlined above) that the CAO's office has taken in the past and continues to take to identify improprieties or conflicts of interest.[21]

## IV.  CONCLUSION

For all of the foregoing reasons and given BP's utter failure to carry its burden with any evidence to support the drastic relief it seeks, BP's motion should be denied.

---

[21] BP's Ex. 5, at pp. 4-5; *see also* Attachment 11.

Respectfully submitted,

*/s/ Jennifer L. Thornton*
Richard C. Stanley, 8487
Jennifer L. Thornton, 27019
Gina M. Palermo, 33307
Patrick H. Fourroux, 34550
    Of
STANLEY, REUTER, ROSS,
  THORNTON & ALFORD, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone:   (504) 523-1580
Facsimile:   (504) 524-0069

*Attorneys for Deepwater Horizon Court Supervised Settlement Program and Patrick A. Juneau, in his capacity as Claims Administrator and Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July, 2013, I electronically filed the foregoing Response with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

    */s/ Jennifer L. Thornton*

11