# SUPPLEMENTAL REPORT ON REVIEW OF CODE OF CONDUCT AND CLAIMS PROCESSING ISSUES

## JULY 17 , 2013

## CONFIDENTIAL

EXHIBIT B-1

Pursuant to the Court's direction, the Claims Administrator's Office ("CAO") has continued its internal investigation, including review of the Deepwater Horizon Settlement Program's ("Program's") policies and claims process. The following is an updated report on the Program's efforts in that regard.

1.     **Special Master Investigation**

Special Master Louis Freeh is conducting an independent investigation as per the Court's order. The CAO is continuing to provide Mr. Freeh's team with information to assist in that investigation. This has included explanations of the claims process, production of documents and computer data, witness interviews, etc. That investigation is ongoing.

2.     **████████████ Claim (Claim # ████ )**

As previously reported, the Business Economic Loss ("BEL") claim of ████ ████ has been reviewed by both PwC and the Claims Administrator's Quality Control Team, both of whom have concluded that the claim's calculations are correct. From the Program's perspective, this claim has been properly documented. It remains on "hold" pending further direction from the Court.

3.     **Claims of ████ clients**

As previously reported, a "hold" has been placed on all claims of clients represented by ████████████████████████ that are still in process. A total of 494 claims fall into that category.

In addition, a total of 198 claims of ████ clients have already been processed. Of that total, 57 were denied and 141 received eligibility notices.

A total of 18 business claims (16 regular BEL's and 2 start-up BEL's) had previously received eligibility notices. Each of these claims has been re-reviewed by the accounting team,

EXHIBIT B-1

both PwC and P&N. The accountants' report in that regard is attached. The accounting team has concluded that the prior determinations were correct. BrownGreer has also re-reviewed each of these claims and has found them to be in order. BrownGreer's report on these re-reviews is also attached.

A total of 123 claims of other types (non-BEL) had previously received eligibility notices. BrownGreer was the vendor responsible for those types of claims. BrownGreer has re-reviewed each of these claims, the re-review being done by someone other than the initial reviewer. Of these 123 claims, BrownGreer has found them all to be in order with two exceptions as follows.

(a) As to one VoO Charter claim that was paid, the re-review revealed that the file was not properly documented with an actual signed copy of the charter agreement. That claim should have been marked as incomplete as opposed to payable. This error was unrelated to anything involving Christine Reitano or Lionel Sutton in any respect.

(b) As to one Seafood claimant (2 separate claims – 1 as a boat captain and 1 as a boat owner), the re-review revealed that the cost of purchasing the vessel was improperly considered a qualifying expenditure. This error was unrelated to anything involving Christine Reitano or Lionel Sutton in any respect.

Of the numerous claims that have not yet been processed to the point of receiving any sort of eligibility notice, BrownGreer's re-review has found all such claims to be in order, with the following single exception. This 1 exception does not concern anything involving either Christine Reitano or Lionel Sutton.

(a) 1 BEL claim that initially passed causation though has not yet been reviewed by the accountants. It has received no notice of any kind. BrownGreer's re-review

indicates that the submitted P&L's are incomplete. This claim will be re-processed by BrownGreer after complete P&L's are received and before the claim is presented to the accountants for review. This issue is unrelated to anything involving Christine Reitano or Lionel Sutton in any respect.

**4.      Reversals of "Incompleteness" Denials**

As previously reported, Christine Reitano's duties included serving as the "Documentation Reviewer," which involved reviewing denials that had been based on incomplete documentation. As further previously reported, Ms. Reitano overturned a total of 4 denials and affirmed a total of 42 denials. As noted in our prior report, we have reviewed the 4 claims in which the denial was overturned and have found no indication of wrongdoing in those instances. Further, none of the 4 reversals involved claimants represented by ████████████ ████████████

**5.      Review of Program "Policies"**

The Program has conducted a comprehensive review of the various "policies" that have been developed and implemented during the course of the Program. That review focused on those policies that BP did not specifically "accept" or agree to. A total of 230 policies fall into this category. A team consisting of appropriate representatives from the CAO, BrownGreer, PwC and P&N participated in group discussions over a period of two days to review these policies. After this comprehensive review, this group concluded that the Program's policies are appropriate and are free of any undue or improper influence from Ms. Reitano or Mr. Sutton. BrownGreer's report on this review is attached.

**6.      Code of Conduct issues**

As previously reported, David Odom (CEO) has reviewed the Program's conflict of interest and disclosure policies with all individuals serving on the Claims Administrator's staff. In addition, all Program vendors have been instructed to review such policies with their personnel and to ensure compliance on their behalf. The Program vendors have provided David Odom (CEO) of confirmation of their efforts in that regard.

7. **Review of "Tourism" Determinations**

A dedicated team at BrownGreer is charged with responsibility for determining whether particular claimants are to be assigned a "Tourism" designation.

For those claims that represent "closer" calls, it has been the Program's practice for members of the BrownGreer team to review specific cases with the CAO. The BrownGreer team will make recommendations based on the facts of a specific case, and then the CAO will make a final decision as to that specific claim. Those from the CAO who have been involved in these reviews have been Patrick Juneau, Michael Juneau and Christine Reitano.

The Program has gone back to review all such determinations given that Christine Reitano was in part involved in these discussions. A total of 45 claims had previously undergone this process of review by the CAO. Of those 45 total, 44 decisions were made, and 1 claim was left unresolved. The 44 determinations were as follows:

(1) CAO agreed with BrownGreer's recommendation in 39 instances.

(2) CAO disagreed with BrownGreer's recommendation in 5 instances:

    (a) CAO's decision in 3 instances was in BP's favor (claimant was *not* given a tourism designation).

    (b) CAO's decision in 2 instances was in Claimant's favor (claimant *was* given a tourism designation).

EXHIBIT B-1

Of the 45 claims in this category that were presented to the CAO, only 1 involved a claimant represented by ██████████████████ That claim involved an employee of a spa. BrownGreer recommended that the claim *not* be assigned a tourism classification, and the CAO agreed with that recommendation.

We have found no indication of any wrongdoing and have concluded that the individual decisions were appropriate and well-founded in each instance.

## 8.   Review of "Real Estate Developer" Determinations

In determining whether a claimant is excluded from the settlement as a "Real Estate Developer," the Program uses a similar process as that used in evaluating the "Tourism" designation as described above.

Decisions on this issue have been made by the BrownGreer Real Estate Developer team and Patrick Juneau, Michael Juneau and Christine Reitano from the CAO.

A total of 5 claims had previously undergone this process of review by the CAO. Decisions were made with respect to all 5 claims. The 5 determinations were as follows:

(1)  CAO agreed with BrownGreer's recommendation in 2 instances.

(2)  CAO disagreed with BrownGreer's recommendation in 3 instances:

  (a)  CAO's decision in 2 instances was in BP's favor (claimant was excluded as a Real Estate Developer).

  (b)  CAO's decision in 1 instance was in Claimant's favor (claimant was *not* excluded as a Real Estate Developer).

None of the claims in this category that were presented to the CAO involved claimants represented by ████████████████████

EXHIBIT B-1

We have found no indication of any wrongdoing and have concluded that the decisions were appropriate and well-founded in each instance.

**9.     "Release" of Claims Initially Held for Potential Moratoria Analysis**

Lionel Sutton was involved in the process of trying to formulate a framework under which Moratoria losses are to be evaluated. But the Settlement Agreement calls for the parties to provide the Claims Administrator with agreed criteria that are to be used in this regard. The Parties have yet to reach agreement on this issue. There thus still has been no policy that has been adopted to detail how Moratoria losses are to be evaluated. The Claims Administrator is still waiting for the Parties to provide him with their agreed direction as to how Moratoria claims are to be evaluated.

Exhibit 19 of the Settlement Agreement provides that the following claims are subject to Moratoria review by a special designated team: (1) claimants that fall within the NAICS codes marked by an "x" under Section I of Exhibit 19; and (2) claimants that fall within the NAICS codes marked by an "x" under Section II of Exhibit 19 *and* the claimant indicates that it provides significant services in the offshore oil & gas industry in the Gulf of Mexico. Claims that fall into either of these two categories have been held until a formal Moratoria policy is in place. Such claims continue to be held pending agreement between the Parties as to how Moratoria losses are to be evaluated.

A total of 47 claims had been identified as *not* meeting either of the above two criteria but nonetheless having some indicia of potential Moratoria losses. These 47 claims were allowed to proceed through regular BEL claims processing because the company's NAICS code was not one identified on Exhibit 19 as mandating special Moratoria Loss review as outlined above. Lionel Sutton was the CAO representative who authorized the processing of those

claims. Of those 47 claims, 10 have received eligibility notices. Of the 10 claims that have

received eligibility notices, 3 have been paid without appeal, 6 have been appealed to the

Appeals Panel (2 decisions in favor of claimant and 4 still pending) and 1 has requested

reconsideration and has been moved back for additional review. None of the 10 claims that have

proceeded through BEL processing and have received eligibility notices involved claimants

represented by ███████████████████████   Out of an abundance of caution, a

"payment hold" has been placed on the 7 of these 10 claims on which payment has not been

issued. This "payment hold" will remain in place pending further direction from the Court.

The 37 claims that were previously released for regular BEL processing but which have

not received eligibility notices, are currently being held until further analysis is concluded. In

addition, for any other claims that fall outside the scope of the NAICS codes listed on Exhibit 19

as outlined above but for which there is some indicia of potential Moratoria losses, such claims

are currently being held pending the Parties' agreement on the unresolved Moratoria evaluation

issues. Evidence of potential Moratoria Losses that may trigger referral to and review by the

Claims Administrator includes, but is not limited to:

(a) Significant Services Affirmation. The Entity affirmed by answer in a Claim

Form or in a Sworn Written Statement that in 2009 it provided significant

services, goods, and/or supplies to businesses in the offshore oil and gas

industry in the Gulf of Mexico.

(b) Business Name or Description. The Entity's name or company description

indicates that it does business in or with customers in the offshore oil and gas

industry in the Gulf of Mexico.

(c) Offshore Oil and Gas Customers. The Entity provided or collateral research

revealed a customer list, project list, contract, Master Service Agreement, purchase order, invoice, profit and loss statement, or other evidence indicating that it does business in or with customers in the offshore oil and gas industry in the Gulf of Mexico.

(d) Documents Referencing the Moratoria.  Documents in the BEL claim file for the Entity or an IEL claim file for an employee of the Entity (e.g., hardship letter, employer letter, claimant correspondence) indicates that all or part of the claimed losses were caused by or resulted from the moratoria or from doing business in the offshore oil and gas industry in the Gulf of Mexico.

EXHIBIT B-1

**Procedures for the review of claims represented by** ███████████

1. A search was conducted by both PwC and BG to identify the ███████████ BEL claims population.

2. Claims primarily worked up by P&N will be reviewed by PwC, Claims primarily worked up by PwC will be reviewed by P&N.

3. Claim will be searched through **Results Search**.

4. The **original workbook** used to populate Eligibility Notice will be reviewed and will include an analysis of all information entered into all tabs. A new workbook will not be populated unless there are significant/specific changes that need to be made based on new procedures and policies.

5. Revenue streams that have resulted in Policy Changes or general guidance procedure changes will be analyzed (timing of the Policy Change as well as the affect on the claim). Excluded Revenue Streams include:
   a. Real Estate Developer
   b. Moratoria
   c. Start-Ups TIN / EIN Memo
   d. Look for substantial shift in structure, ownership, etc.
   e. Reimbursed Expenses
   f. Grants for For-Profit companies
   g. Gains & Losses
   h. Insurance Income, Interest Income, Investment Income
   i. Not for Profit Revenue Streams

6. All **Global Notes** will be reviewed, along will all prior **claimant/attorney/accountant communication** and documents requested/received that were loaded to the DWH Portal.

7. All **Source Documents**, including but not limited to Monthly/Annual Profit & Loss Statements, Federal Tax Returns, Sales & Use Tax Returns, Bank Statements, Invoices, General Ledgers, etc. will be reviewed and analyzed.

8. Findings will be documented and to the extent adjustments are necessary. They will be recorded in the original workbook.

EXHIBIT B-1

Review of claims represented by the ███████████

Accountants from PwC and P&N followed the outlined procedures for reviewing 18 claims submitted by ██
█████████.

PwC reviewed the following ████ ███ ████ claims:

| Claimant ID | Claim ID | Claimant Name |
|-------------|----------|---------------|
| ████ | ██ | |
| ████ | ██ | |
| ████ | ██ | |
| ████ | ██ | |
| ████ | ██ | |
| ████ | ██ | |
| ████ | ██ | |

P&N reviewed the following ███████████ claims:

| Claimant ID | Claim ID | Claimant Name |
|-------------|----------|---------------|
| ████ | ██ | |
| ████ | ██ | |
| ████ | ██ | |
| ████ | ██ | |
| ████ | ██ | |

Upon conclusion of our procedures, there were no findings or suggested changes to the claim calculations for
the above claimants represented by ███████████ based upon the claims processing protocols in place
at the time the claims was reviewed and processed for eligibility notice.

EXHIBIT B-1

| Row | Description | BEL | IEL | Seafood | Other | Total |
|---|---|---|---|---|---|---|
| | DWH Claims Represented by ████████ AX 17/13 | | | | | |
| **A. Types of Notices** | | | | | | |
| 1. | **Claims Re-Reviewed** | **90** | **59** | **122** | **110** | **381** |
| | (a) Eligibility Notice Issued | 18 | 8 | 61 | 54 | 140 |
| | (b) Incompleteness Notice Issued | 44 | 41 | 47 | 24 | 157 |
| | (c) No Notice Issued | 28 | 10 | 14 | 32 | 84 |
| 2. | **Claims Not Re-Reviewed** | **24** | **27** | **29** | **30** | **109** |
| | (a) Denial Notice Issued | 12 | 27 | 25 | 29 | 92 |
| | (b) Closed and Not Processed (Claim Withdrawn, Opt-Out, Untimely, etc.) | 12 | 0 | 4 | 1 | 17 |
| 3. | **Total Claims Submitted** | **114** | **86** | **151** | **140** | **491** |
| 4. | **Claims Started But Not Submitted** | N/A | N/A | N/A | N/A | 201 |
| 5. | **Total Claims** | **114** | **86** | **151** | **140** | **692** |
| **B. Re-Review Findings** | | | | | | |
| 6. | **Claims Re-Reviewed** | **90** | **59** | **122** | **111** | **382** |
| | (a) Status Changes Found | 1 | 0 | 2 | 1 | 4 |
| | (1) Reviewer Mistake Identified | 1 | 0 | 2 | 1 | 4 |
| | (2) Policy Decision Interpreted Incorrectly | 0 | 0 | 0 | 0 | 0 |
| | (b) Status Changes Not Found | 89 | 59 | 120 | 110 | 368 |
| 7. | **Claims Not Re-Reviewed** | **24** | **27** | **29** | **30** | **109** |
| 8. | **Claims Started But Not Submitted** | N/A | N/A | N/A | N/A | 201 |
| 9. | **Total Claims** | **114** | **86** | **151** | **140** | **692** |

1

EXHIBIT B-1

## I. BEL Claims.

A. The Settlement Program identified 90 BEL claims that required re-review and an additional 24 claims that did not require re-review because the claims were denied or withdrawn or the claimant opted-out, etc. The Settlement Program has completed all 90 BEL re-reviews.

B. Before the Settlement Program performed the re-reviews, the statuses of the claims were:

   1. 18 claims received Eligibility Notices (both BrownGreer and the accountants re-reviewed these claims);

   2. 44 claims have received Incompleteness Notices; and

   3. 28 claims have not yet received a Notice.

C. After the Settlement Program completed the re-reviews, one claim (Claimant ID ▮▮▮▮▮/Claim ID ▮▮▮▮▮▮▮▮▮▮▮▮) had a status change.

   1. The claimant provided only non-monthly P&Ls that the reviewer incorrectly captured as monthly P&Ls.

   2. As such, the claim status changed from complete and passing causation to incomplete for failure to provide monthly financial documentation.

   3. This claimant has not yet received a Notice of any kind. Because this claim had not been through the complete review process, the Settlement Program would likely have corrected this claim in the normal course of the review process.

## II. IEL Claims.

A. The Settlement Program identified 59 IEL claims that required re-review and an additional 27 claims that did not require re-review because the claims were denied. The Settlement Program has completed all 59 IEL re-reviews.

B. Before the Settlement Program performed the re-reviews, the statuses of the claims were:

   1. 8 claims received Eligibility Notices;

   2. 41 claims have received Incompleteness Notices; and

   3. 10 claims have not yet received a Notice.

C. After the Settlement Program completed the re-reviews, there were no claims with a changed status.

EXHIBIT B-1

**III. Seafood Claims.**

    A. The Settlement Program identified 122 Seafood claims that required re-review and an additional 29 claims that did not require re-review because the claims were denied or untimely filed. The Settlement Program has completed all 122 Seafood re-reviews.

    B. Before the Settlement Program performed the re-reviews, the statuses of the claims were:

        1. 61 claims received Eligibility Notices;

        2. 47 claims have received Incompleteness Notices; and

        3. 14 claims have not yet received a Notice.

    C. After the Settlement Program completed the re-reviews, two claims (Claimant ID ████████/Claim IDs ███████████████████████) had a status change.

        1. In these claims, the claimant filed New Entrant Shrimp claims as both a Boat Captain and a Vessel Owner for a vessel less than 30 ft.

        2. The claimant purchased the vessel shortly before the Spill and did not have sufficient qualifying expenses outside the purchase price. The Settlement Program incorrectly attributed the purchase price to the qualifying expenditures creating an eligible result when the claims should have been incomplete for additional expenses.

        3. The claimant has received payment on both claims.

**IV. Other Claim Types.**

    A. The Settlement Program has completed all of the re-reviews for claims in the other claim types.

        1. The Settlement Program re-reviewed 78 claims that previously received an Eligibility Notice, an Incompleteness Notice, or some other non-Denial Notice.

        2. The Settlement Program also evaluated the statuses of 32 additional claims that are still in the review process and have not yet received an initial Notice.

        3. For claims that have not yet received an initial Notice, the Settlement Program confirmed that the prior work on the claims was completed correctly.

    B. The Settlement Program identified 30 claims that did not require re-review.

    C. The claim types for the 110 claims re-reviewed are:

        1. 3 Coastal Real Property Claims (3 Previously Found Payable).

EXHIBIT B-1

2.   38 Subsistence Claims (13 Previously Found Incomplete; 25 with No Prior Result).

3.   13 Vessel Physical Damage Claims (5 Previously Found Payable; 7 Previously Found Incomplete; 1 with No Prior Result).

4.   49 VoO Charter Payment Claims (46 Previously Found Payable; 3 Previously Found Incomplete).

5.   7 Wetlands Real Property Claim (1 Previously Found Incomplete; 6 with No Prior Result)

D.   The Settlement Program confirmed that the previous review results for 109 of the 110 claims re-reviewed were correct.

1.   The Settlement Program determined that one claim was found payable during the initial review, but the claim should have been incomplete.

2.   This claim is ████████████ (Claimant ID ████████ – Claim ID ██████), a VoO claim.  Upon re-review, the Settlement Program was unable to confirm that the Claimant executed a VoO MVCA.  The hard copy MVCA within Doc. ████████ was not sufficient because the contract was not signed by a VoO representative.

## POLICY MEETINGS WITH THE CLAIMS ADMINISTRATOR'S OFFICE

### A.    Introduction.

On July 2 and July 3, 2013, the Claims Administrator and key members of his staff met with BrownGreer, Pricewaterhouse Coopers ("PwC") and Postlethwaite and Netterville ("P&N") to discuss the departures of Christine Reitano and Lionel "Tiger" Sutton and to review the policies developed and implemented during the course of the Settlement Program. The purpose of these meetings was to evaluate the current policies to determine if either Ms. Reitano or Mr. Sutton imposed any self-interest or undue influence in the creation of any policy or the application of a policy during the claims review process. The Claims Administrator wanted to ensure that there was no potential taint on the current policies and that BP had ample opportunities to provide feedback for all policies created during the Settlement Program.

The Claims Administrator has adopted 393 policies since June 4, 2012. Of the 393 policies, 386 have been reviewed by BP and Class Counsel (the "Parties") at some point, many of which have been reviewed several times. Because the purpose of the meeting was to review the policies that may have negatively affected BP based on its letter to the Court dated June 21, 2013, the Claims Administrator only reviewed the policies BP did not accept. When the Claims Administrator announces a proposed policy to the Parties, the Parties review it and must decide to:  (1) accept the policy as final; (2) defer to the Claims Administrator's decision; (3) propose a modification to the policy; or (4) request a Panel Hearing.  If a Party decides to accept the policy as final, this notifies the Claims Administrator that the Party agrees with the policy because it appropriately reflects the terms of the Settlement Agreement or is a fair interpretation of any vague or conflicting provisions.  If any Party chooses to defer to the Claims Administrator, the policy is labeled as a Claims Administrator Decision rather than Agreed to by the Parties because there is not unanimous acceptance by the Parties.  Accordingly, the Claims Administrator did not analyze any policies that BP accepted during the course of the Settlement Program as it had an opportunity to object or propose modifications, but instead elected to concur with the policy as proposed.  After removing the policies BP accepted, the Claims Administrator analyzed 230 policies with BrownGreer, PwC and P&N.  **Exhibit A** summarizes the policies that the Claims Administrator reviewed during these meetings.

To facilitate the review of 230 policies that encompass every aspect of the Settlement Program, BrownGreer created policy packets grouped by claim type or review process to provide some structure to the process.  Within the topical groupings, BrownGreer further organized the policies by the Type of Decision:  (1) Panel Hearing/Proposed Modification; (2) Claims Administrator Decision; (3) Internal Policies Reviewed by the Parties; and (4) Internal Policies Not Reviewed by the Parties. The Claims Administrator conducted a group analysis of these policies over a two-day period and invited key members from his staff and the vendors to participate in the discussion involving their areas of expertise and direct supervision.

429148
7/16/13

EXHIBIT B-1

**B.**     **Day 1—Tuesday, July 2, 2013.**

The Claims Administrator and attendees reviewed the policies together to determine if the current policies are fair and balanced, promote correct interpretations of the Settlement Agreement, and were untainted by Ms. Reitano or Mr. Sutton.

    **1.**     **Attendees.**

    **(a) Claims Administrator's Office**
        (1) Patrick Juneau
        (2) Mike Juneau

    **(b) BrownGreer**
        (1) Orran Brown, Sr.
        (2) David Smith
        (3) Bill Atkinson
        (4) Beth Smyers
        (5) Matthew Hazzard

    **(c) PwC**
        (1) Emily Kent
        (2) Megan Douglas
        (3) John Petzold

    **(d) P&N**
        (1) Mark Staley
        (2) Katherine Torres

    **2.**     **Court-Approved Policies.**

The Claims Administrator started the review process by discussing the three policies decided by the Court. The Parties escalated Policy 307 (Non-Profit Entities), Policy 308 (Establishing Causation) and Policy 324 (Calculation of Variable Profit) to the Court for review after an unsuccessful Panel Hearing on the substance of these policies. A packet containing these three policies is attached as **Exhibit B**. After reviewing these three Court-approved policies with the group, the Claims Administrator determined that these policies did not have any undue influence by Ms. Reitano or Mr. Sutton as each policy was initially drafted by one of the vendors and/or by Mike Juneau and received heightened scrutiny by the Parties and ultimately the Court.

    **3.**     **Business Economic Loss and Claimant Accounting Support Policies.**

The Claims Administrator reviewed 68 BEL policies and 14 Claimant Accounting Support policies. A packet combining these policies is attached as **Exhibit C**. Following a thorough review of each policy, the Claims Administrator and attendees determined that the

EXHIBIT B-1

policies included in this packet were appropriate and were not the result of any undue influence from Ms. Reitano or Mr. Sutton. BrownGreer or the accountants proposed and drafted the majority of these policies during the design of the claims review system. Additionally, Pat Juneau and/or Mike Juneau directly supervised the approval process of these BEL policies, thus Ms. Reitano and Mr. Sutton were removed from both the policy development and approval process.

During the course of review, the Claims Administrator did identify several policies that were untainted, but required further action.

### (a) Consolidation of Policies.

At the beginning of the Settlement Program, the Claims Administrator circulated policies and questions about the Settlement Agreement to the Parties through an exchange of Excel spreadsheets. In hindsight, some of these adopted policies provide very little context to the particular issue and can be repetitive. For this reason, the Claims Administrator identified four policies in the BEL packet that need to be consolidated into a single comprehensive policy. Policies 111, 167, 170 and 172 all address various aspects of the definition of Multi-Facility Businesses. The Claims Administrator assigned BrownGreer with the task of formulating these Multi-Facility Business policies into one aggregate policy.

### (b) Policies Undergoing Continued Discussions by the Parties.

During the course of the BEL policy analysis session, the Claims Administrator determined that all existing Moratoria policies needed to be discussed in greater detail because of ongoing discussions between the Parties. Policy 304 that implements Section II of Exhibit 19 was included in the BEL policy packet, but is really part of the larger Moratoria discussion between the Parties. Because the Parties have not yet agreed how Moratoria losses should be calculated, the Claims Administrator instructed BrownGreer to create a comprehensive Moratoria policy that summarizes how the Claims Administrator currently reviews potential Moratoria claims. The Claims Administrator then tabled the Moratoria policy discussions until Day 2.

The Claims Administrator finished the BEL policies and moved on to the policies affecting reimbursement of Claimant Accounting Support ("CAS"). During the review of these 14 policies, the Claims Administrator determined that these policies had been discussed with Pat Juneau, Mike Juneau, Orran Brown, Sr. and David Smith in July of 2012, which was concurrent with the beginning of the claim types that are eligible for CAS reimbursement. Thus, these policies were untainted by Ms. Reitano or Mr. Sutton and properly implement the reimbursement of accounting fees as outlined by the Settlement Agreement.

### 4. Policies Affecting All Claims and All Economic Loss Claims.

The Claims Administrator then reviewed the policies that affected all claim types and All Economic Loss Claims. A packet of these policies is attached as **Exhibit D** and they affected either all Claim Types or IEL and BEL claims. The Claims Administrator concluded that all of

429148
7/16/13

these policies were free of any undue influence and remain appropriate Settlement Program policies that the Parties had reviewed several times. However, there were three policies included within **Exhibit D** that required additional research and discussion.

### (a) Policy 289—Definition of Tourism.

During the analysis of Policy 289, all attendees agreed that this definition of Tourism remained the correct policy and did not have any undue influence by Ms. Reitano or Mr. Sutton. Nevertheless, the Claims Administrator requested that BrownGreer send the Claims Administrator the Excel spreadsheets previously circulated that contained specific examples of how to apply the definition of Tourism to ensure the policy has been applied appropriately.

### (b) Policy 346-- Appropriate RTP for Primary Seafood Processors.

The Claims Administrator also asked BrownGreer for further information surrounding Policy 346 that dictates the appropriate Risk Transfer Premium ("RTP") for Primary Seafood Processors. All attendees agreed that the policy is correct and the best policy that the Claims Administrator could have implemented, but to ensure Ms. Reitano or Mr. Sutton had no direct influence with the policy's implementation, the Claims Administrator requested that this policy be analyzed further. The Claims Administrator directed BrownGreer to determine if this RTP policy affected any ███████████ claimants and whether BP had appealed any claims based on the application of this policy. This additional information will provide the Claims Administrator with a better picture of how Policy 346 has affected claims processing.

### (c) Policy 352—Eligibility Zone for Charter Fishing Businesses.

After discussing Policy 352 (The Appropriate Eligibility Zone for Charter Fishing Businesses), the Claims Administrator identified this policy as one that should be included in the comprehensive redraft of the Multi-Facility Business policies. This concluded the All Claims and All Economic Loss Claims policy packet.

### 5. Non-Economic Loss Policies.

BrownGreer grouped the policies affecting the Coastal, Wetlands, VoO and Vessel Physical Damage claim types into one policy packet, attached as **Exhibit E**. The Claims Administrator and the attendees determined that the 12 policies in this packet were appropriate and were created without any undue influence from Ms. Reitano or Mr. Sutton.

### C. Day 2-- Wednesday, July 3, 2013.

The Claims Administrator began the second day of meetings by reiterating to the attendees that the purpose of these group discussions was to determine if these decisions remain good policy and whether Ms. Reitano or Mr. Sutton imposed any self-interest or undue influence in the creation of any policy implemented by the Settlement Program.

4

429148
7/16/13

EXHIBIT B-1

1. **Attendees.**

(a) **Claims Administrator's Office**
    (1) Patrick Juneau
    (2) Mike Juneau
    (3) David Duval
    (4) Christina Hendrick

(b) **BrownGreer**
    (1) Orran Brown, Sr.
    (2) David Smith
    (3) Phil Strunk
    (4) Frank Trani
    (5) Dennis Carter
    (6) Orran Brown, Jr.
    (7) Matthew Hazzard
    (8) Bethany Anderson
    (9) Tamra Blankenship

(c) **PwC**
    (1) Emily Kent (by phone)
    (2) Megan Douglas
    (3) John Petzold

(d) **P&N**
    (1) Corey Jambon
    (2) Andre Neal

2. **Individual Economic Loss Policies.**

The Individual Economic Loss policy packet included seven policies attached as **Exhibit F**. The Claims Administrator reviewed each policy and concluded that these IEL policies remain valid and are free of any undue influence from Ms. Reitano or Mr. Sutton. The policy packet did include two moratoria policies (Policy 142 and Policy 143) that the Claims Administrator tabled for further discussion at the end of the Day 2 session.

3. **Seafood Compensation Program Policies.**

The Claims Administrator and vendors then reviewed the Seafood policy packet, which included 56 total policies attached as **Exhibit G**. The Claims Administrator determined that each policy accurately reflects the Parties' intent in drafting the Settlement Program and showed no undue influence from any individual within the Claims Administrator's Office. Phil Strunk with BrownGreer notified the Claims Administrator that Ms. Reitano did have significant input with regard to Policy 440 (IFQ "Set-Aside" Shares). After discussing the history and purpose of this IFQ Set-Aside Share policy, everyone agreed that the policy is the correct application under

429148
7/16/13

EXHIBIT B-1

the terms of Exhibit 10 of the Seafood Program.  Mr. Strunk confirmed that Policy 440 did not affect any claimants represented by ███████████.

### 4.  Subsistence Policies.

During the discussion of the Subsistence policies, Christina Hendrick from the Claims Administrator's Office joined the meeting.  The Claims Administrator and all attendees then reviewed the 17 policies attached as **Exhibit H**.  The Subsistence policies were created with significant involvement from both Parties as well as the Pennington Biomedical Research Center.  Ms. Hendrick stated that although Mr. Sutton worked heavily on Subsistence claims, he did not influence a policy that benefited him or any outside party.  Mr. Sutton and Ms. Hendrick had differing views on how to measure "impairment" of fishing grounds.  Ms. Hendrick's view on that issue ultimately prevailed.  The Claims Administrator confirmed that all the Subsistence policies, including the four policies the Parties have not reviewed, are good policies that were not affected by any potential personal interest by Ms. Reitano or Mr. Sutton.

### 5.  Policies Affecting the Appeals Process.

When the Claims Administrator began to review the policies that affect the Appeals processes, David Duval from the Claims Administrator's Office joined the meeting.  The Claims Administrator examined the three policies attached as **Exhibit I** and concluded that the policies were free of any undue influence from Ms. Reitano or Mr. Sutton.  The Claims Administrator did identify Policy 309 (Re-Review Process) as a policy that needs to be fine tuned, so BrownGreer was tasked with updating the summary of this policy to reflect the memo from December 13, 2012, that the Claims Administrator circulated to the Parties seeking approval of this additional layer of review before the formal appeals process.

### 6.  Other Policies.

All of the remaining policies were grouped together into a policy packet labeled "Other", which is attached as **Exhibit J**.  The packet included policies affecting Exclusions, Fraud, Payments, Reconsideration, Deadlines, Deadline Enforcement and Moratoria analysis.  Based on the discussions from the first session, the Claims Administrator decided to address the policies affecting Moratoria last.  The attendees concluded that all non-Moratoria policies were not unduly influenced by Ms. Reitano or Mr. Sutton.

For the Moratoria analysis, the Claims Administrator determined that Policies 52, 142, 143, 304, 321, 322 and 365 need to be combined to form a single comprehensive policy that provides a clear statement of what the Claims Administrator is currently doing with Moratoria claims.  BrownGreer has undertaken the responsibility of formulating this policy and will circulate the comprehensive policy to the Claims Administrator for his review and approval.  This comprehensive policy will supersede all of the current policies that address Moratoria claims.

429148
7/16/13

EXHIBIT B-1

**D.**     <u>**Conclusion**</u>.

After reviewing all the policies that BP did not explicitly accept, the Claims Administrator concluded that Ms. Reitano or Mr. Sutton did not have any undue influence on any policies or their implementation to the claims review process.  Moreover, the Claims Administrator confirmed that BP has had an opportunity to review all but seven of the policies created during the course of the Settlement Program.  The Claims Administrator and his vendors concluded that the Settlement Program policies remain accurate and that the Settlement Program will continue to implement the policies in the claims review processes.

429148
7/16/13

EXHIBIT B-1

## PROCEDURE FOR CREATING POLICIES FOR THE DWH SETTLEMENT PROGRAM

**A.    Introduction.**

Under the terms of the Deepwater Horizon Economic and Property Damage Settlement Agreement ("Settlement Agreement"), the Claims Administrator is charged with the duty to "faithfully implement and administer the Settlement, according to its terms and procedures, for the benefit of the Economic Class, consistent with this Agreement, and/or as agreed to by the Parties and/or as approved by the Court." (Section 4.3.1 of the Settlement Agreement).  Further, the Claims Administrator is charged with the responsibility to "work with Economic Class Members . . . to facilitate . . . assembly and submission of Claims Forms, including all supporting documentation necessary to process Claims Forms under the applicable Claims Processes . . . [and to] provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of this Agreement." (Section 4.3.7 of the Settlement Agreement).

To fulfill these duties and to process claims in an orderly, transparent and consistent manner, the Claims Administrator develops and adopts policies and procedures to govern aspects of claims review that are not specifically delineated by the Settlement Agreement.  A policy addresses an issue that is not defined or outlined within the Settlement Agreement, while a procedure expands on how the Claims Administrator will implement a particular Settlement Agreement provision by giving it structure and rules.  For example, Policy 208 directs that claimants will not receive any type of minimum payment amount and that Eligibility Notices will award the exact amount of calculated damages provided by the Settlement Agreement formulas. In contrast, Procedure 379 (Procedure Regarding Handling Untimely Seafood Claims) describes the rules the Claims Administrator created to allow submission of Seafood Compensation Program claims filed after the January 22, 2013 Bar Date.

The Claims Administrator's methodology for developing a policy or procedure follows the same process. Accordingly, for the purpose of this document, the term "policy" or "policies" includes both a policy and procedure.  The Claims Administrator presents proposed policies to Class Counsel and BP (the "Parties") for their positions before the policy become final and is used in claims review.  If a Party does not agree with a particular policy, the Party may obtain review of it by the United States District Court for the Eastern District of Louisiana (the "Court") in the exercise of its supervisory jurisdiction over the implementation of the Settlement Agreement.

**B.    Determining the Need for a Policy.**

The Claims Administrator will propose or implement a policy if:  (1) the Settlement Agreement is vague or incomplete on a specific issue; (2) unique factual circumstances come to light during the review of claims that require a uniform rule not provided in the Settlement Agreement; or (3) the issue is administrative in nature and it necessary to process claims efficiently.  Each method for proposing and implementing policies is discussed below.

### 1.    Incomplete or Vague Settlement Agreement Provisions.

When the Settlement Agreement is vague or incomplete on an issue, developing policies becomes necessary so the Claims Administrator and his vendors ("Vendors") may process claims

1

EXHIBIT B-1

efficiently and consistently. The Claims Administrator solicits input from the Parties and/or provides them with an opportunity to agree or challenge the suggested language when creating policies that interpret or apply specific Settlement Agreement provisions. Two prime examples of the need for policies involve determining the mechanics for applying exclusionary criteria for: (1) Real Estate Developers under Section 2.2.4.7 of the Settlement Agreement; and (2) Moratoria Losses under Section 3.3 of the Settlement Agreement. While the Settlement Agreement is clear that these types of claims are precluded from participating in the Settlement Program, it does not provide any details how to identify such excluded entities or how to apply any criteria consistently. Because the Settlement Agreement does not provide the necessary guidance, the Claims Administrator and the Parties have engaged in numerous meetings and discussions to create policies that are fair, administrable and adhere to the spirit and intent of the Settlement Agreement.

## 2. Special Factual Circumstances.

Vendors also suggest policies or raise issues as they encounter unique factual circumstances uncovered during the claims review processes, as do the Parties when they process appeals, submit reconsideration requests or receive questions from claimants on how special circumstances should be handled. As particular fact patterns present themselves, the Claims Administrator will draft a policy and present it to the Parties for their consideration and input. The Parties will either agree on the content of the proposed policy as presented by the Claims Administrator or will engage in discussions to craft the policy in a manner that is not objectionable, but remains administrable. A prime example of a policy created by special factual circumstances is the HIPPA policy (Policy 326) that became necessary when certain claimants with Business Economic Loss claims were required to submit customer lists and addresses to satisfy the "customer-mix" test set forth in Exhibit 4B. Because some physician and dentist offices were reluctant to provide the necessary documentation required to analyze a claim under the customer-mix test due to HIPPA restrictions, the Claims Administrator drafted and implemented a policy about documents that may be protected under the federal HIPPA statutes and regulations.

## 3. Administrative Provisions.

The Claims Administrator also creates purely administrative policies to document his performance of required duties as prescribed by the Settlement Agreement. Administrative policies and procedures include enforcement of deadlines, relief from deadlines, expediting the review of claims for demonstrated hardships, and the procedure for paying claims by claimants in bankruptcy proceedings. An example of an administrative policy is Policy 357, which details when the Claims Administrator will pay a claimant the remaining 40% of the GCCF transitional payment under Section 4.2.3.1. The Settlement Agreement was clear that a claimant may receive the greater of the calculated Settlement Agreement amount or the remaining 40% GCCF payment, but it did not specify whether the Claims Administrator must wait until all of a claimant's claims have been processed to completion or whether he could pay the higher amount when the first claim becomes payable. Policy 357 directs that the claimant receives the higher amount up front and that the Eligibility Notice will explain that portion of the 40% amount that was higher than the calculated claim amount will offset any future offers on subsequently filed claims, and that the claimant will receive an additional payment only if the amount of a future claim exceeds the 40% amount.

2

EXHIBIT B-1

C.     **Announcement of Policies to the Parties.**

At the outset of the Settlement Program, the Claims Administrator identified sections of
the Settlement Agreement that required clarification and interpretation in order to design the
claims processing systems in accordance with the intent of the Parties.  The first policies of the
Settlement Program derived from questions or clarifications posed by the Claims Administrator's
vendors to BP and Class Counsel in April and May of 2012.  The Claims Administrator
exchanged these early questions by emailing an Excel spreadsheet to the Parties and collecting
their comments and acknowledgements in one comprehensive document.  On July 30, 2012,
shortly after the launch of the Settlement Program, the Claims Administrator terminated the
exchange of questions and issues by Excel spreadsheet and instead implemented a formal memo
process to flesh out more involved or nuanced questions about the Settlement Agreement.  The
Claims Administrator would circulate these memos by email to solicit input and comments by
the Parties.

1.     **Creation of the Policy Keeper Application.**

The constant exchange of Excel spreadsheets and memos by email became too
cumbersome to monitor, so the Claims Administrator developed a Policy Keeper application to
track the policies currently used in the Settlement Program and make them available to the
Parties and the public.  The Claims Administrator launched Policy Keeper on 3/28/13 and it
serves as an electronic file cabinet for all approved and pending policies.  It stores the content of
the policy, the date the policy became effective, any supporting memoranda about the need or
purpose of the policy, the comments by all the Parties, whether the policy is internal or external,
and who authorized the policy.  Policy Keeper also contains an automatic email notification
system to alert all interested parties when policies are announced or a party approves, objects or
proposes changes to a draft policy.  The Policy Keeper flowchart attached as **Exhibit A** identifies
the various stages of review and input for proposed policies before they become final.

2.     **Policy Development and Implementation through Policy Keeper.**

The Claims Administrator, all Vendors and the Parties have been provided access to
Policy Keeper to ensure policies are drafted and implemented in an effective and efficient
manner.  Policy Keeper provides users with access to all policies created during the course of
the Settlement Program, the functionality to propose new policies and the ability to provide
positions and comments on policies within the development process.  Policy Keeper records the
Parties' positions, comments, and any supporting documentation as the policy's "legislative
history" that is accessible for any authorized user (but not the public) to review.  The Policy
Keeper User Manual attached as **Exhibit B** outlines the functionality of the application.

(a)    **Policy/Procedure Search.**

Policy Keeper functions as an electronic file cabinet of all the Settlement Program
policies created to date and all proposed policies not yet final.  To effectively search for policies,
Policy Keeper allows users to select certain criteria to locate a policy or procedure by including:
(1) the Policy or Request ID; (2) Claim Types and/or Review Processes affected by the Policy;
(3) the Settlement Agreement reference; (4) the Type of Decision; and/or (5) a word search to
identify certain words in the Policy Name or Policy Summary. Users may select more than one
type of search criteria to refine the search.  Policy Keeper allows users the ability to export the
search results to an Excel spreadsheet.  Further, the user may choose to view a PDF of the policy

3

and any available supporting documents or memoranda. If a policy is open for approval or comment, the user can review the policy and take the appropriate action.

(b) **Proposing a New Policy/Procedure.**

Policy Keeper allows the Vendors the ability to propose new policies to send to the Claims Administrator for consideration. To propose a policy the user must: (1) enter the policy's proposed name; (2) identify the claim types/review processes affected by the proposed policy; (3) draft a summary of the proposed policy; and (4) upload any supporting documentation. Upon completion, the user can send the draft policy to other Policy Keeper users to review or to the Policy Keeper Coordinator ("PK Coordinator") for review. The PK Coordinator's role is to review the proposed policy to determine if there is a relationship to any prior existing policies or if the policy is one of first impression. After the user sends the policy to the PK Coordinator or other Vendors for review, the policy is stored in that user's account under his/her "My Proposed Policies" menu. If there are no prior policies on point and the proposed policy is ripe for the Claims Administrator's review, the PK Coordinator sends the proposed policy to the Claims Administrator to review.

(c) **Claims Administrator Review.**

After the PK Coordinator sends the proposed policy to the Claims Administrator, the Claims Administrator can take the following actions: (1) send the policy to the Parties for input; (2) announce the policy to the Parties for their positions; (3) declare the policy as administrative in nature and finalize the policy as internal; (4) request a discussion with Vendors prior to requesting input or announcing the policy to the Parties; or (5) reject the proposed policy as duplicative or unnecessary. If the Claims Administrator selects Option (1) or (2), an email notification is sent to the Parties informing them of the policy and that further action is required. If the Claims Administrator selects Option (3), the policy is marked as an internal policy that is available to the Claims Administrator and Vendors only.

The Claims Administrator formulates internal policies in one of two ways: (1) during the Claims Administrator Review stage he determines the policy is administrative in nature and does not seek approval or input from the Parties, which becomes a final policy; or (2) after requesting input from the Parties, he receives feedback that the policy should be internal only. Once the Claims Administrator determines that a policy should be internal, he will select the "Internal Only" option when finalizing the policy in Policy Keeper. Regardless of how an internal policy is created, an email notification is sent to the Vendors, but not the Parties, informing them of the final internal policy that can be reviewed in Policy Keeper. Internal policies are not accessible by the Parties or the public.

(d) **Requesting Input from Parties or Vendors.**

If the Claims Administrator decides that he needs feedback from the Parties and/or Vendors prior to announcing a policy, the Claims Administrator selects the "Send to Parties for Input" option. The Policy Keeper application sends an email notification to the Parties and Vendors that directs the recipient to provide input with seven days. After reviewing the policies, the Parties can choose to: (1) agree with the proposed policy and provide supporting comments; (2) oppose the proposed policy and provide the reason for opposition; (3) propose a modification to suggest changes to the proposed policy including clarifying or formalizing the policy's language and changing the substance of the proposed policy; or (4) defer to the Claims Administrator's decision. When the user selects his/her option and provides any comments

4

EXHIBIT B-1

and/or uploads supporting documents, the policy is sent back to the Claims Administrator for review.

### (e)   Policies/Procedures After Requesting Input by the Parties.

The Claims Administrator can review the Parties' input and supporting documentation in the "Policies/Procedures After Requesting Input by the Parties" stage. When the Claims Administrator reviews the Parties' input, he can elect:  (1) adopt the policy and announce it to the Parties for their final positions; or (2) determine that no policy is necessary based on the responses by the Parties. If the Claims Administrator selects Option (1), the Claims Administrator can edit the policy and upload any supporting documents. After the Claims Administrator finalizes the language, he announces the policy to the Parties through Policy Keeper who will receive an email notification that they have seven days to provide their final positions. If the Claims Administrator selects Option (2), the proposed policy will not be implemented and will appear only in the user's "My Proposed Policies" section as a rejected policy.

### (f)   Policies/Procedures Announced to Parties for Positions.

Once the Claims Administrator announces a policy to the Parties, the policy appears in the Parties' "Policies/Procedures Announce to Parties for Positions" section. Additionally, Policy Keeper issues an email notification to the Parties informing them that further action is required. The Parties have seven days to:  (1) request a Panel Hearing for review if they disagree with the announced policy; (2) accept the policy as final if they agree with the announced policy; (3) defer to the Claims Administrator's decision; or (4) propose a modification to suggest changes to the proposed policy. Policy Keeper then issues the Parties' responses to the Claims Administrator and sends an email blast to all users for review. The PK Coordinator has the option to extend the Parties' deadline for responses if approved by the Claims Administrator.

### (g)   CA Review of Announced Policies/Procedures After Positions by the Parties.

The Claims Administrator can review the Parties' positions in the "CA Review of Announced Policies/Procedures After Positions by the Parties" section. Based on the Parties' positions, the Claims Administrator can: (1) set a Panel Hearing date if either Party requests a Panel; (2) accept as a Final Policy if both Parties agree to the announced policy; (3) indicate that the Parties defer to the Claims Administrator's Decision; or (4) reissue the policy for the Parties' review if one or both sides proposed a modification. If the Claims Administrator selects Options (2) and (3), the policy becomes final and is sent to the Final Policies/Procedures section and made available to the public. Once final, the Policy Keeper application sends an email blast to all users notifying them of the recently finalized policy. If the Claims Administrator selects Option 4, the Claims Administrator can edit the policy and reissue it to the Parties. For any reissued policy, Policy Keeper allows the Parties the ability to:  (1) request a Panel Hearing, (2) accept as a final policy, or (3) defer to the Claims Administrator's decision. At this stage, the Policy Keeper application does not allow the Parties to propose any additional modifications.

428387
7/11/13

EXHIBIT B-1

**(h)  Panel Hearing.**

PK allows the Claims Administrator the ability track and update the policies that are set for a Panel Hearing. Once the Panel makes a decision, the Claims Administrator can review the policy records and indicate whether the policy:  (1) had unanimous Panel agreement; (2) had no unanimous Panel agreement and no Court action was requested; or (3) no unanimous Panel agreement that requires Court action.  If the Claims Administrator selects Option (3), a Panel Hearing date and Panel Comments are required.

**(i)  Court Decision.**

If a policy is sent to the Court for review, Policy Keeper stores the policy as pending until the Court makes a decision.  Once scheduled, the Claims Administrator can enter the date and time of the Court hearing.  After the Court makes a final decision, a Court Ruling Date and Court decision can be entered to make the proposed policy final in accordance with the Court's directive.

Regardless of how a policy is finalized, all approved policies are tracked in the Final Policies/Procedures section. Policy Keeper users can review the policy, any supporting documentation and the policy's legislative history.

**3.  Decisions Tracked by Policy Keeper.**

There are four types of decisions tracked by Policy Keeper.  The following table describes the types of decisions and how those approved policies govern the Settlement Program and the Appeal Panelists.

|   | CATEGORY | DESCRIPTION | IMPACT |
|---|---|---|---|
| A. | Court Decision | Policies adopted by the Claims Administrator and approved by the Court. | Final and binding on claimants, the Parties, the Claims Administrator and Appeal Panelists. |
| B. | Agreed to by the Parties | Policies adopted by the Claims Administrator as to which both Class Counsel and BP agreed are to be used in the Program without the need for review by the Court. | Binding on claimants, the Parties, the Claims Administrator and Appeal Panelists unless overturned by the Court. |
| C. | Clarified by Seafood Neutral | Policies affecting the Seafood Compensation Program that were presented to the Seafood Neutral, who provided a clarification that the Claims Administrator adopted as a policy. | Binding on claimants, the Parties, the Claims Administrator and Appeal Panelists unless overturned by the Court. |
| D. | Claims Administrator Decision | Policies adopted by the Claims Administrator as to which Class Counsel and/or BP did not formally agree, but indicated that the Claims Administrator was to use in the Program. | Used by the Claims Administrator and Program Vendors for all affected claims, unless the Parties formally agree to a different policy or it is overturned by the Court; not binding on Appeal Panelists. |

6

4.  **Backfilling of Policies into Policy Keeper.**

The Claims Administrator adopted several hundred policies for the Settlement Program before the creation and launch of Policy Keeper. To provide a comprehensive list of policies, the Claims Administrator backfilled all final and pending comments into Policy Keeper. The Claims Administrator, its Vendors and the Parties can access Policy Keeper through the Settlement Program database by clicking the Policy Keeper tab. The online Policy Keeper User Manual provides guidance on how to find policies and comment on them in Policy Keeper. It also contains a robust search feature to locate and find policies based on their name, subject matter or section of the Settlement Agreement.

Class members, their counsel and the public also can review all final policies using a similar search feature that is available through the Settlement Program's official website. Before posting all of the policies to the public, the Claims Administrator created a Policy Compendium of all policies and circulated it to the Parties for their final approval to publicly disseminate. Through the Policy Compendium process, the Parties exchanged comments about whether certain policies should be internal processes only, whether older polices had been superseded by new policies or by the passage of time, and new debate about the language or application of certain policies. The Claims Administrator did not post any policies without approval of the Policies. Policy Keeper currently maintains 398 adopted policies and 28 policies that remain in draft form or await comments by the Parties.

5.  **Updating and Superseding Policies in Policy Keeper.**

The rules and policies needed to implement the Settlement Agreement may change over time as the Claims Administrator reviews actual claims, which may present new issues or cause issues to be evaluated in a larger context than was previously considered. When necessary, the Claims Administrator will issue a new policy to amend or replace a previously announced one. When that happens, the old policy is marked as "Superseded" and the application indicates the policy that replaced it in a section on the screen called "Superseding Information." Policy Keeper retains all of the superseded policies so that interested persons can see what policy was in place at the time the Claims Administrator reviewed a particular claim, and to understand how a policy evolved over time. The Claims Administrator does not apply any superseded policies to current reviews. If a change to a policy would have altered the outcome on a claim in a manner more favorable to the claimant from that reached under the old policy, the Claims Administrator will go back and re-review the claim under the new policy in every instance where he can identify the affected claims.

D.  **Conclusion.**

Creating and implementing policy decisions is an integral task implicit in the Claims Administrator's duties, which is accomplished through an inclusive and transparent process. The Claims Administrator implements policies as necessary to facilitate the orderly processing of claims as directed by the Settlement Agreement. Policies may originate from the Claims Administrator, one of his Vendors, the Parties or even the Seafood Neutral in certain circumstances. With the exception of a few administrative policies, the Claims Administrator has provided the Parties with an opportunity to comment or provide feedback on all policies that affect the processing of claims. This occurred through the exchange of Excel spreadsheets and memos by email before the creation of Policy Keeper, and currently occurs directly through the Policy Keeper application. Even for administrative policies and procedures adopted by the

428387
7/11/13

EXHIBIT B-1

Claims Administrator without input from the Parties, the Parties had an opportunity to comment and review them through the policy backfill process, as the Claims Administrator circulated all such policies and procedures for comment before they became available to the public on the Settlement Program website.  If the Parties cannot agree on a certain policy, they may request a Panel hearing under Section 4.3.4 of the Settlement Agreement before the policy becomes final. If the Panel hearing cannot unanimously resolve the issue, the Parties may seek a Court review of the policy.

8

EXHIBIT B-1



Exhibit A – Policy Keeper Flowchart



EXHIBIT B-1



**Exhibit B – Policy Keeper User Manual**



# DEEPWATER HORIZON
# CLAIMS CENTER
### ECONOMIC & PROPERTY DAMAGE CLAIMS

## FULL ACCESS POLICY KEEPER PORTAL

https://www2.deepwaterhorizoneconomicsettlement.com

## USER MANUAL



EXHIBIT B-1

The Claims Administrator for the Deepwater Horizon Economic and Property Damages
Settlement Program (the "Settlement Program") has created a secure web-based portal to provide
users with access to Claims Administrator policies and the functionality to propose new policies.
The flowchart below shows the process flow for a proposed policy.



This User Manual tells you how to use the Claims Administrator Policy Keeper Portal.

## A. How to Access the CA Policy Keeper Portal.

From your web browser, go to https://www2.deepwaterhorizoneconomicsettlement.com to see
the following Login screen:

**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

EXHIBIT B-1

This is a secured site.  It can be accessed only by a person authorized by the Claims Administrator with both of the following:

1.  A Login ID name. Your Login ID is not case sensitive.

2.  A Password assigned to that Login ID. This password will be a minimum of six and maximum of 15 characters and numerals. The Password is case sensitive, so be careful how you type it.

Enter your Login ID and Password and click the Login button to access the site. Once on the site, you can remain on as long as you like, provided that your session shows some activity. The Login screen will appear if you attempt to use the site after a time-out. To resume using the Portal, simply follow the Login steps again.

**B.  Navigating the Site.**

After you have successfully logged in, you will see the Home screen welcoming you to the DWH Portal. The left side of the Home screen lists the sections of the DWH Portal to which you have access. You can navigate between these sections by left-clicking on the section you wish to access.

**C.  Policy Keeper.**

Click the Policy Keeper link on the left side of the screen to go to the Policy Keeper screen to view current Claims Administrator policies and to propose new policies to the Policy Keeper Coordinator ("PK Coordinator").

427443
6/6/13

2

**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

EXHIBIT B-1

## Welcome to Policy Keeper

Click here for the Policy Keeper User Manual.



1. **Policy/Procedure Search.** To search for a policy, click the Policy Search "Search" button.

## Policy/Procedure Search



(a) **Search Criteria.** Select the Search Criteria you want to use to search for a policy. You can provide more than one type of Search Criteria to refine your search.

    (1) **Policy/Request:** Use the drop-down list to choose to find a policy or request ID.



EXHIBIT B-1

(2) **ID:** Enter the ID to find a specific policy or policy request.

(3) **Claim Type/Review Process:** Use the drop-down list to find policies by Claim Type or Review Process.

(4) **Settlement Agreement Reference:** Enter the Settlement Agreement reference for which you want to find the applicable policy(ies).

(5) **Type of Decision:** Use the drop-down list to find policies by how they were made final.

(6) **Word Search:** Enter a word or words to find policies that contain your search word(s).

Click the Search button to view the search results.

(b) **Search Results.** The Search Results provides a table of the results of your search and an Export to Excel button.



### Search Results
#### Page 15 of 15 (74 records) | 15

| ID | Revision No | Name | Current Status | Type of Decision | Policy Availability | Policy/Procedure PDF | Documents | Review Policy/Procedure Details |
|---|---|---|---|---|---|---|---|---|
| Pol-407 | 0 | 6/3 doc test | Approved Policy or Procedure | Claims Administrator Decision | External | Create PDF | View | Details |
| Pol-408 | 0 | superseding/amending test | Approved Policy or Procedure | Claims Administrator Decision | External | Create PDF | | Details |
| Pol-410 | 0 | testing that correct documents are seen | Approved Policy or Procedure | Agreed to by the Parties | External | Create PDF | View | Details |
| Pol-411 | 0 | test | Approved Policy or Procedure | Claims Administrator Decision | External | Create PDF | View | Details |

<< 11 12 13 14 >>

(1) **Export to Excel.** Click the Export to Excel button to export the Search Results details to an Excel file.

(2) **Search Results Table.** The Search Results table provides a list of policies that match your search criteria, including the ID, Revision Number, Name, Current Status, Type of Decision and Policy Availability. There are also the following buttons:

　　a. **Create PDF.** Click the Create PDF button to view and print a template version of the selected policy or procedure.

　　b. **View.** Click the View button to view a document if there is an attachment provided with the policy or procedure.

　　c. **Details.** Click the Details button to open the policy record. The Policy Keeper application will navigate you to the stage where the policy currently resides, allowing you to take action if necessary.


DEEPWATER HORIZON
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

EXHIBIT B-1

**2.  Propose a New Policy/Procedure.**  Click the Propose New Policy/Procedure "Start" button to propose a new policy to the PK Coordinator.

## Propose a New Policy/Procedure

<< Back          Home

| Profile |
|---|
| **User:** Test, BG                                      **Organization:** Firm |
| Proposed Policy Name: *  [_____] |

**Policy Affects: ***

| | | | | |
|---|---|---|---|---|
| | ☑ IEL | ☑ IPV/FV | ☑ Real Property Sales | ☑ Subsistence |
| | ☑ BEL | ☑ VoO Charter Payment | ☑ Coastal | ☑ Wetlands |
| Affected Claim Types (Select all that apply) | ☑ Vessel Physical Damage | ☑ Seafood | ☑ All Claims | ☑ All Non-Economic Loss Claims |
| | ☑ All Economic Loss Claims | ☑ Seafood Second Distribution | | |
| Affected Review Processes (Select all that apply) | ☑ Prior Payment | ☑ Fraud/Audit | ☑ Payments | ☑ Deadlines |
| | ☑ Appeal | ☑ Signature Required | ☑ Acct. Support | ☑ Exclusions |
| | ☑ Class Definition | ☑ Administration Costs | ☑ Other: [_____] | |

Type your proposed policy. If you have supporting documentation you would like to submit, you may do so by using the Upload button in the Related Documents section after entering your proposed policy.

[                                                                    ]

Max 5,000 characters

                                                        Save    Cancel

| Supporting Documents |
|---|
| Click the Upload button to submit documentation in support of the proposed policy. You can upload Excel, PDF and JPEG files. **This step is not required.** |

**(a) Home.** Click the Home button to return to the Policy Keeper menu screen.

**(b) Proposed Policy Name.** Type your Proposed Policy Name in this field.

**(c) Policy Affects.** Select all of the Claim Types and/or Review Processes that your new policy would affect. You may make multiple selections.

**(d) Proposed Policy.** Type your proposed policy in the comment box. If the proposed policy will not fit in the provided text box, you can upload a document that contains your proposed policy and any necessary exhibits or attachments.



EXHIBIT B-1

(e) **Save.** Click the Save button to save your proposed policy information and enable additional features.





(f) **Discussion/Add New.** If you want to add a comment to the discussion on the proposed policy, click the Add New button in the Discussion section and enter a comment. To view previous comments, click the Comments button for the Comment you want to see.

(g) **Supporting Documents/Upload.** If you have supporting documents that you would like to submit with your policy, click the Upload button in the Related Documents section. You can upload Excel, PDF and JPEG files. You are *not* required to submit supporting documents.

(h) **Submit.** Click the Submit button to submit the policy to the PK Coordinator for further action.

(i) **Send To Draft Policy.** Click the Send to Draft Policy button to send the proposed policy to selected users before submitting the policy to the PK Coordinator.



Click the Add button to add users to whom you wish to send the proposed policy. Select the users you want to add and click the Add button.



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

EXHIBIT B-1



Once you have added all the users to whom you want to send the proposed policy, click the Submit button.

3. **Draft Policy/Procedure.** Click the Draft Policy/Procedure "Review" button to display a list of draft policies.

## Draft Policy/Procedure

| Row | Policy Request ID | Date | Subject | User | Organization | Policy Status | View |
|-----|-----|------|---------|------|--------------|---------------|------|
| 1. | 381 | 04/09/2013 | testTitele | Test, BG | Firm | Proposed Policy in Development Stage | Review |
| 2. | 439 | 06/04/2013 | Test 1 | Test, BG | Firm | Proposed Policy in Development Stage | Review |

The table lists draft policies, including the Subject, User, Organization and Policy Status. Click the Review button for the selected Draft Policy to view the policy details and make any changes to the policy. Click the Save button to save your changes. Click the Submit button to send the policy back to the User.

4. **My Proposed Policies/Procedures.** Click the My Proposed Policies "Review" button to display a list of your proposed policies.

## My Proposed Policies/Procedures

| Row | Policy Request ID | Date | Subject | User | Organization | Policy Status | View |
|-----|-----|------|---------|------|--------------|---------------|------|
| 1. | 381 | 04/09/2013 | testTitele | Test, BG | Firm | Proposed Policy in Development Stage | Review |
| 2. | 394 | 04/19/2013 | asdf | Test, BG | Firm | Proposed Policy Pending Review | Review |
| 3. | 413 | 05/08/2013 | Test | Test, BG | Firm | Proposed Policy Pending Review | Review |
| 4. | 433 | 06/03/2013 | view document test | Test, BG | Firm | Question or Potential Policy or Procedure Pending PK Coordinator Review | View |
| 5. | 438 | 06/04/2013 | test for manual | Test, BG | Firm | Proposed Policy Pending Review | Review |
| 6. | 439 | 06/04/2013 | Test 1 | Test, BG | Firm | Proposed Policy in Development Stage | Review |
| 7. | 440 | 06/04/2013 | Policy Check | Test, BG | Firm | Proposed Policy in Development Stage | Review |

Previously Proposed Policies:     [Show All]



**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

EXHIBIT B-1

The table lists your pending proposed policies, including the Policy Request ID, Request Date, Subject, User, Organization and Policy Status. The following buttons also appear:

**(a) View.** Click the View button to view the policy record for the selected policy.

**(b) Review.** Click the Review button to access the policy record for policies that you have not yet submitted or where the PK Coordinator is requesting clarification.

**(c) Show All.** Click the Show All button to see previously proposed policies and use the View button to see the policy record.

5. **Policy Keeper Coordinator Review.** Click the Policy Keeper Coordinator Review "Review" button to display a list of Policies under Policy Keeper Coordinator Review and view the policy records. Click the Review button for the desired policy to display the Policy Details and act on the policy.





8

**DEEPWATER HORIZON CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

EXHIBIT B-1

(a) **Relationship to Prior Policies.** If applicable, select the proposed policy's relationship to prior existing policies. Use the Search button to search for the prior policy that relates to the proposed policy. Use the Superseded Policy/Procedure button if the proposed policy supersedes a prior existing policy.

(b) **Discussion.** Click the Add New button to add a comment to the policy discussion. The policy discussion table lists the comments submitted for the proposed policy. Click the Comments button to view the comments submitted.

(c) **Supporting Documents.** Click the Upload button to upload a document in support of the proposed policy.

(d) **Policy Keeper Coordinator Action.** Select from the radio button options for the action you want to take on the proposed policy and enter a comment in the Comments field.

Click the Submit button to submit your action.

6. **Claims Administrator Review.** Click the Claims Administrator Review "Review" button to display a list of Policies under Claims Administrator review and view the policy records. Click the Review button for the desired policy to display the Policy Details and act on the policy.

**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

EXHIBIT B-1



| ID | Date | User | Organization | |
|---|---|---|---|---|
| 0 | 04/12/13 9:06:53 AM | Test, BG | Firm | Comments |

**Policy Keeper Coordinator Action**

Policy Keeper Coordinator Action: *

○ Ask for Clarification

○ Proposed Policy Not Placed in the Policy Development Process

◉ Proposed Policy Sent to Claims Administrator for Review

Comments:

Test

Max 2,000 Characters.

**Claims Administrator Action**

Type of Discussion: *
○ Send to the Parties for Input
○ Claims Administrator Decision Without Involvement From the Parties
○ Administrative Policy
○ Reject Proposed Policy
○ Request Discussion

Claims Administrator Comments:

Max 2,000 Characters.

Open for Discussion *

☐ Internal Vendors

☐ Claims Administrator

☐ Parties

Discussion Close Date    06/12/2013

**Upload Document(s)**

Click the Upload button to submit documentation in support of the proposed policy. You can upload Excel, PDF and JPEG files.

Upload

**(a) Discussion.** Click the Add New button to add a comment to the policy discussion. The policy discussion table lists the comments submitted for the proposed policy. Click the Comments button to view the comments submitted.

**DEEPWATER HORIZON CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

EXHIBIT B-1

**(b) Policy Keeper Coordinator Action.**  View the PK Coordinator's action taken on the proposed policy and any comments provided in the Comments field.

**(c) Claims Administrator Action.**  Select from the radio button options for the action you want to take on the proposed policy and enter a comment in the Comments field.

**(1) Send to the Parties for Input.** Choose this option if you would like to receive feedback from the Vendors and/or Parties.  If you select "Send to the Parties for Input," you must also complete the Open for Discussion by selecting the parties to participate in the discussion and entering the Discussion Close Date. Upon selecting this option, the policy will be sent to the Vendors and/or Parties for review and they will be notified by email.

**(2) Claims Administrator Decision Without Involvement From the Parties.** Choose this option if you would like to adopt the policy without involvement from the parties.  Upon selecting this option, the policy will be moved to Policies/Procedures After Requesting Input from the Parties.

**(3) Administrative Policy.** Choose this option if you would like to adopt the policy as a Final Policy.  If you choose this option, the policy will not be reviewed or commented on by the Parties and will be sent to Final Policies as an Internal Policy.

**(4) Reject Proposed Policy.** Choose this option if you would like reject the policy. By selecting this option, the policy will be rejected and sent to the proposer's My Proposed Policies menu.

**(5) Request Discussion.** Choose this option if you would like to request a discussion with the Vendors and/or Parties.  When you select this option, click the Discussion button to display the Request Discussion pop-up window and select the date, time and place to meet with the requested parties.



Select the parties to be involved in the discussion and click the Submit button to submit the request to the parties. This will trigger an email notification to the selected parties.

**(d) Upload Documents.**  Click the Upload button to upload a document in support of the proposed policy.

11



EXHIBIT B-1

Click the Submit button to submit your action.

7. **Internal Discussion with Claims Administrator and Vendors.** Click the Internal Discussion with the Claims Administrator and Vendors "Review" button to display a list of Policies subject to internal discussion with the CA and Vendors. Click the Review button for the desired policy to display the Policy Details and to provide a response if needed.

## Response



(a) **Request Discussion.** Select the Request Discussion option and click the Discussion button to request discussion of the policy.



Complete the Proposed Meeting fields and select the parties to be involved in the discussion and click the Submit button to submit the request to the parties. This will trigger an email notification to the selected parties.

(b) **Upload Documents.** Click the Upload button to upload a document to support your response.



EXHIBIT B-1

Click the Submit button to submit your response.

8. **Requested Input from Parties.** Click the Request Input from Parties "Review" button to display a list of policies with input requested from the Parties. Click the Review button for the desired policy to display the Policy Details and to provide a response if needed.

## Response



(a) **Select Response.** Select the appropriate response from the radio buttons. You can enter a comment in the Comments field and upload supporting documentation. The Claims Administrator will review your selection and comments to formulate an announced policy for your review.

   (1) **Agree.** Select this option if you agree with the proposed policy as drafted.

   (2) **Oppose.** Select this option if you disagree with the proposed policy as drafted and provide your reason for opposition.

   (3) **Propose Modification.** Select this option if you would like to make a modification to the proposed policy. Such changes include clarifying or formalizing the policy's language and changing the substance or essence of the proposed policy.

   (4) **Defer to Claims Administrator Decision.** Select this option if you defer to the Claims Administrator Decision.

(b) **Upload Document(s).** Click the Upload button to upload a memo document to support your response.

Click the Submit button to submit your response.



DEEPWATER HORIZON
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

EXHIBIT B-1

9. **Policies/Procedures After Requesting Input by the Parties.** Click the Policies/Procedures After Requesting Input by the Parties "Review" button to display a list of Policies that are pending announcement. Click the desired policy to view the policy records, discussions and make a decision on the policy.



To change the Deadline to Respond, enter the date and click Update to apply to change.

To make a Claims Administrator Decision on the policy, select "Adopt Policy and Announce to Parties" or "No Policy Needed" and click the Submit button.

(a) **Adopt Policy and Announce to Parties.** If you select this option, you will navigate to the Announced Policy screen.

427443
6/6/13

14

**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

EXHIBIT B-1

## Announced Policy

[ << Back ]  [ Home ]

| Profile | |
|---|---|

Policy ID: [ 0 ]　　　　　　　　　If Revision: Click Here [ 0 ]　☐ Internal Only

Superseding Information: [ Superseded Policy/Procedure ]

Announced Date: * [ 6/5/2013 ] 📅　　　Type of Decision: Sent to Parties for Input

Procedure Policy: ☐

Policy Impact: *　◉ All Claims REGARDLESS of Announced Date
　　　　　　　　　◯ All Claims GREATER than Announced Date

Policy Subject: * [ Test Visibility ]

Settlement Agreement
Reference: [ ]

| Announced Policy Document | |
|---|---|

Document Name: [ ]

Document: [ ]　[ Browse... ]

[ Upload ]

**Affected Claim Types:** *

| | | | |
|---|---|---|---|
| ☑ IEL | ☑ IPV/FV | ☑ Real Property Sales | ☑ Subsistence |
| ☑ BEL | ☑ VoO Charter Payment | ☑ Coastal | ☑ Wetlands |
| ☑ Vessel Physical Damage | ☑ Seafood | ☐ All Claims | ☑ All Non-Economic Loss Claims |
| ☐ All Economic Loss Claims | ☐ Seafood Second Distribution | | |

**Affected Review Processes:**

| | | | |
|---|---|---|---|
| ☐ Prior Payment | ☐ Fraud/Audit | ☐ Payments | ☐ Deadlines |
| ☐ Appeal | ☐ Signature Required | ☐ Acct. Support | ☐ Exclusions |
| ☐ Class Definition | ☐ Administration Costs | ☐ Other: [ ] | |

You must complete the required information on this screen to announce the policy. The Announced Date will automatically populate with the current date. You must then select the Policy Impact, enter a Policy Subject and Settlement Agreement Reference. If there is a document associated with the policy, you can upload the document by using the Announced Policy Document tool. You must select the Affected Claim Types and/or Review Processes. The proposed policy will populate in the Final Policy Summary field and will become editable for your review. Once you provide the policy's information, click the Submit button and the policy will be sent to Policies Announced to Parties for review.

(b) **No Policy Needed.** Select this option if, after reviewing the responses and comments from the parties, you determine the proposed policy is not needed. If you select this option, the policy will not be implemented and will appear in the proposer's My Proposed Policy menu as a rejected policy.

10. **Policies/Procedures Announced to Parties for Positions.** Click the Policies/Procedures Announced to Parties for Positions "Review" button to display a list of Policies announced to the parties. Click the Review button for the desired policy to view the policy records and provide a response if needed.



DEEPWATER HORIZON
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

EXHIBIT B-1

## Response

| Step 1: Select Response |
| --- |
| ⊙ Request Panel Hearing |
| ⊙ Accept as a Final Policy |
| ⊙ Defer to Claims Administrator Decision |
| ⊙ Propose Modification |
| **Comments:** |

Max 2,000 characters.

[ History ]

| Step 2: Upload Document(s) |
| --- |

[ Upload ]

[ Submit ]  [ Cancel ]

(a) **Select Response.** Select a response from the radio buttons and enter a comment in the Comments field. Click the History button to view the policy history.

    (1) **Request a Panel Hearing.** Select this option if you disagree with the announced policy and want to set a Panel Hearing to review the policy. You can enter a comment in the Comments field and upload supporting documentation.

    (2) **Accept as a Final Policy.** Select this option if you agree with the announced policy. If both parties agree with the announced policy, the policy will be deemed as a final policy Approved by the parties.

    (3) **Defer to Claims Administrator Decision.** Select this option if you defer to the Claims Administrator Decision. If the parties defer to the Claims Administrator Decision, the policy will be accepted as final and sent to the Final Policies menu.

    (4) **Propose Modification.** Select this option if you would like to make a minor clarification to the Announced Policy. You should select this option if you wish to clarify or formalize the policy's language, but not change the substance or essence of the Announced Policy.

(b) **Upload Documents.** Click the Upload button to upload a memo document to support your response.

Click the Submit button to submit your response.



EXHIBIT B-1

**11. CA Review of Announced Policies/Procedures After Positions by the Parties.** Click the CA Review of Announced Policies/Procedures After Positions by the Parties "Review" button to display a list of the Responses to the Announced Policies. Click the Review button for the desired policy to view the policy records and make a decision on the policy.



(a) **Claims Administrator Decision.** To change the deadline to file for a Panel Hearing, enter the new date and click the Update button. Use the radio buttons to select whether to set a Panel Hearing or to accept the policy as a Final Policy. If you set a Panel Hearing, you must provide a Panel Hearing Date and the Parties' Comments in the required fields. Click the History button to view the policy history. If you request Accept as a Final Policy, you will navigate to the Final Policy Screen. Upon entering the Final Policy's information, the policy will move to the Final Policies menu.

(b) **Upload Documents.** Click the Upload button to submit documentation in support of the proposed policy.

Click the Submit button to submit your response.

**12. Panel Hearing.** Click the Panel Hearing "Review" button to display a list of Policies pending a Panel Hearing. Click the Review button for the desired policy to view the policy records and provide the Panel Hearing decision on the policy.

17

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

EXHIBIT B-1



(a) **Panel Hearing Decision.**  Select the Panel Hearing Decision from the radio button list.  If you select "No Unanimous Agreement; Court Action Required," you must provide the Panel Date and Panel Comments in the required fields. Click the History button to view the policy history.

(b) **Upload Document(s).**  Click the Upload button to submit documentation in support of the proposed policy.

Click the Submit button to submit your response.

13. **Court Decision.**  Click the Court Decision "Review" button to display a list of Policies pending a Court Decision.  Click the Review button for the desired policy to view the policy records and provide the Court decision on the policy.



When the Court date has been scheduled, you can enter the date and time into the corresponding fields.  Click the Submit button to keep the policy in the queue until the Court has made a final decision.  When you provide the Court Ruling Date and the Court Decision and click Submit, you will navigate to the Final Policy page allowing you to submit the Court Decision information.



EXHIBIT B-1

**14. Final Policies/Procedures.** Click the Final Policies "Review" button to display a list of final policies or procedures. Click the Filter button to display a list of policies or procedures finalized in the past 14 days.

## Final Policies/Procedures

Recently Finalized Policies or Procedures:  Filter



| ID | Revision No | Date | Subject | Affected Claim Types and Review Processes | Type of Decision | Policy Availability | View |
|----|-----------|------|---------|------------------------------------------|-----------------|--------------------|------|

Click the Review button for the desired policy to view the policy records on the policy. The screen displays the Policy Details, Announced Policy Summary, Supporting Document, and a History button.

### Supporting Document

| Document ID | Name | User | Organization | Date | |
|-------------|------|------|--------------|------|---|
| 35 | Doc 5 | Test, BG | Firm | 06/06/2013 | View |

### History

History

| User | Organization | Policy Status | Date | Comments | Document |
|------|--------------|---------------|------|----------|----------|
| | | Approved Policy or Procedure | | | |
| User, BP | BP | Defer to Claims Administrator Decision | 06/06/2013 | Comments | View |
| Acctuser1, Acctuser1 | | Accept as a Final Policy | 06/06/2013 | Comments | View |

Close

**(a) Supporting Document.** The Supporting Document section lists the document(s) that the CA uploaded for the Final Policy. Click the View button to view the document(s).

**(b) History.** Click the History button to view a table of how the Parties voted on the policy or procedure at different stages in Policy Keeper. Click the Comment button to view the comments on a specific policy response. Click the View button to view any documents uploaded in support of the response.

427443
6/6/13

**DEEPWATER HORIZON
CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

EXHIBIT B-1

## Policy Keeper Timeline

The Claims Administrator has implemented several hundred policies during the course of the Settlement Program. To help monitor and store these policies, the Claims Administrator created an application called Policy Keeper. In addition to being an electronic file cabinet of all Settlement Program policies, Policy Keeper allows the Claims Administrator, his Vendors, and BP and Class Counsel (the "Parties") to draft, review and implement policies. Before the creation of Policy Keeper, the Claims Administrator used several different methods for creating and tracking policies. This timeline describes the processes used by the Claims Administrator to adopt and promulgate policies needed to implement the Settlement Agreement as drafted by the Parties.

1. **April – July, 2012:** Starting before Settlement Program began and continuing until August, 2012, the Claims Administrator circulated an Excel spreadsheet of questions to the Parties for answers and comments that the Settlement Agreement did not specifically address. The Excel spreadsheets were emailed to Mark Holstein (BP), Keith Moskowitz (Dentons / BP), Wendy Bloom (Kirkland & Ellis / BP), Steve Herman (Herman, Herman, Katz & Cotlar / Class Counsel), Joe Rice (Motley Rice / Class Counsel) and Jim Roy (Domengeaux, Wright, Roy & Edwards / Class Counsel). The Parties' responses to these questions were used to formulate the first policies in the Settlement Program, which resulted in the creation of 169 policies.

2. **7/18/12:** The Claims Administrator met with the Vendors to discuss policy issues without the presence of the Parties. As a result of this meeting, the Claims Administrator implemented several administrative policies involving deadlines, relief from deadlines, rescission of offers and releases, 40% payment rules, etc.

3. **7/30/12:** In late July, the Claims Administrator transitioned from using Excel spreadsheets to using memoranda for the exchange of policy questions and comments. If the Settlement Agreement was vague or incomplete on a specific issue, unique factual circumstances came to light during the review, or there was a need for an administrative process, the Claims Administrator proposed or implemented a policy by circulating a memo to the Parties. The Claims Administrator's process of policy creation using the memo format resulted in the creation of 155 policies.

4. **1/18/13:** The Claims Administrator's office emailed an Excel Compendium to Mark Holstein, Keith Moskowitz, Steve Herman and Jim Roy for review and notified the Parties that 344 policies had been created since the start of the Program. These policies were always available to the Claims Administrator, Vendors and Parties; however, the Claims Administrator never disseminated the policies to the Appeals Panelists or the public. To that end, the Claims Administrator notified the Parties that he wanted to promulgate all policies publicly unless one of the Parties objected.

1

428833
7/12/13

5. **1/30/13:** Steve Herman emailed Class Counsel's comments to the Excel Compendium. Class Counsel provided their designation of the Type of Decision for each policy, which included (1) Classify as CA Decision; (2) Agreed to by the Parties; (3) Clarified by the Seafood Neutral; or (4) Court Decision.

6. **2/11/13:** Keith Moskowitz emailed BP's comments to 204 of the 344 policies in the Excel Compendium. Of the 204 policies for which BP responded, BP wrote "Agree" to 164. As BP made it a point to leave a comment for the policies that they did not agree with or agreed with Class Counsel comments, the Claims Administrator took "Agree" to mean that BP was accepting the policy.

7. **2/27/13:** BrownGreer and the Claims Administrator's Office met to demo the Policy Keeper application and receive feedback on additional features to make it user-friendly.

8. **3/1/13:** BP emailed Christine Reitano 23 policies in the Excel Compendium that they believed "contain material inaccuracies and/or require harmonization with other policies." BP objected to the promulgation of these policies.

9. **3/4/13:** BrownGreer emailed an updated Excel Compendium of all policies that included BP and Class Counsel comments to Mike Juneau, Christine Reitano, Tiger Sutton, Mark Staley (Postlethwaite and Netterville), Chuck Hacker (Pricewaterhouse Coopers), Steve Cirami (Garden City Group), Jen Keough (Garden City Group) and Christi Cannon (Garden City Group).

10. **3/7/13:** The Claims Administrator had a conference call with BrownGreer, PwC and P&N regarding the Excel Compendium spreadsheet circulated on 3/4/13.

11. **3/14/13:** The Claims Administrator emailed Mark Holstein, Keith Moskowitz, Steve Herman and Jim Roy a list of 68 policies he wanted to make available to claimants, law firms, the public and the Appeals Panelists through the public website to provide transparency in the claims review processes. This email included the proposed language that the Settlement Program would post on the public website announcing how to access the Policy Keeper search application and the purpose for posting Settlement Program policies.

12. **3/14/13:** Steve Herman responded to the spreadsheet of 68 public policies and requested that the Claims Administrator put the Type of Decision in the spreadsheet for review before posting the policies.

13. **3/16/13:** Wendy Bloom responded to the spreadsheet of 68 public policies stating "there are several policies listed on the spreadsheet for which it is inaccurate to describe them as policies 'Agreed Upon' by BP, and they are policies for which BP has not agreed to public posting. These are items reported in Column A as 12, 134 and 135."

14. **3/16/13:** Steve Herman responded to BP's email with the following comment:

2

EXHIBIT B-1

We had a discussion with Orran and Christine about this yesterday. They are going to go back and make distinctions between a Claims Administrator Interpretation and/or Policy versus a Clarification or Interpretation to which both parties have formally and expressly agreed. (Will also be a Clarification by the Seafood Neutral and a Court-Approved Policy or Interpretation.) I think that Class Counsel and BP agree that the great majority of the interpretations/policies on the Compendium are Claims Administrator Interpretations/Policies (and were not formally, expressly and irrevocably agreed to by both Class Counsel and BP). But all Interpretations and/or Policies, once properly characterized, should be made immediately available to both the Appeals Panelists and the Class.

15. **3/18/13:** Steve Herman provided Class Counsel's stance on how a policy's Type of Decision is binding on the Appeals Panelists / claimants.

16. **3/20/13:** The Claims Administrator sent the updated list of 68 public policies, including a table explaining the Types of Decisions attributed to each policy and its precedential effect on the Appeals Panelists and claimants to Mark Holstein, Wendy Bloom, Keith Moskowitz, Steve Herman and Jim Roy.

17. **3/20/13:** Class Counsel responded to the updated public policy chart by identifying seven policies that the Claims Administrator originally marked as "Agreed to by the Parties" based on the Parties' original Excel Compendium comments and directed that they should be classified as "Claims Administrator's Decision." In response to Class Counsel's comments, BrownGreer notified both Parties that we took any policy that BP provided the comment "Agree" in the original Excel Compendium to mean BP was accepting the policy. Based on Class Counsel's request to change the Type of Decision, the Claims Administrator changed these seven policies to Claims Administrator Decision.

18. **3/22/13:** BrownGreer conducted a Policy Keeper Training WebEx with the Parties. After the training, BP sent an email to Christine Reitano requesting a brief extension to respond to the public policies circulated on 3/20/13.

19. **3/27/13:** Orran Brown emailed a list of 64 policies to Mark Holstein, Wendy Bloom, Keith Moskowitz, Steve Herman and Jim Roy notifying them that the Claims Administrator was posting them publicly and provided the Parties with a 3/28/13 deadline to object to the posting of these policies. Because BP objected to their posting, the Claims Administrator removed Policies 135 (Court ruling on Variable Profit); 126 (Creation of Monthly Profit and Loss Statements) and 180 (Determination of Entity NAICS Code) from the original list of 68 public policies. Additionally, the Claims Administrator made language changes that Mark Holstein of BP requested for Policies 37 and 230, and re-categorized the policies that he requested be changed to Claims Administrator Decision. Class Counsel requested that the Claims Administrator publicly post the Variable Profit Policy, but he agreed with BP's request to keep it out.

20. **3/28/13:** Policy Keeper went live on the public website and the Claims Administrator made it available to the Claims Administrator, Vendors, Appeals Panelists and the Parties. The

3

publicly available search feature initially included 64 policies circulated to the Parties on 3/27/13. The public has access to the Policy Keeper search feature by clicking on a hyperlink on the Settlement Program's home page. DWH Portal users and the Appeals Panelists access the Policy Keeper search feature by clicking on a button located on their home page, which takes them to the same search feature available to the public.

In addition to launching Policy Keeper, BrownGreer backfilled 344 policies into the application along with the "legislative history" for each policy. BrownGreer notified the Parties that the Claims Administrator would make all other policies publicly available, and requested that the Parties inform the Claims Administrator by 5:00 P.M. on 4/5/13 if they had any objection.

21. **4/2/13:** To expedite the review process, Steve Herman requested an Excel spreadsheet of the non-public policies instead of using Policy Keeper.

22. **4/4/13:** Dan Cantor requested a one-week extension to respond to the remaining non-public policies. Class Counsel objected to the extension, but the Claims Administrator granted BP until 4/12/13 to respond to the non-public policies.

23. **4/8/13:** Wendy Bloom requested information as to why the Claims Administrator categorized certain claims as Clarified by the Seafood Neutral.

24. **4/10/13:** Matt Hazzard at BrownGreer responded to Wendy Bloom with the information he was able to obtain regarding policies labeled as Clarified by the Seafood Neutral.

25. **4/11/13:** Matt Hazzard responded to Wendy Bloom with a breakdown of the policies for which the Claims Administrator correctly labeled Clarified by the Seafood Neutral and those that were not.

26. **4/12/13 10:00 P.M.:** Wendy Bloom provided BP's comments on the first 112 policies of the non-public policies spreadsheet. BP also provided a breakdown of how it responded to these policies.

27. **4/13/13 3:25 A.M.:** Wendy Bloom provided its second spreadsheet.

28. **4/13/13 6:44 A.M.:** Wendy Bloom provided its third spreadsheet.

29. **4/15/13 1:00 A.M.:** Wendy Bloom provided its final spreadsheet.

30. **4/23/13:** Keith Moskowitz requested that the Claims Administrator add a fourth option to the "Policies/Procedures Announced to Parties for Positions" stage in Policy Keeper called "Propose Modification." The Claims Administrator granted BP's request and created a fourth option that allows the Parties to propose a modification to an Announced Policy. Regardless of whether the Claims Administrator accepts a Parties' proposed modification,

428833
7/12/13

EXHIBIT B-1

the Claims Administrator will reissue the policy to the Parties once more for their final positions.

31. **4/26/13:** For the 22 policies that BP had not previously been afforded an opportunity to comment on and the three policies that BP requested a Panel Hearing or clarification from the Seafood Neutral, the Claims Administrator placed the policies back in the Request Input stage of Policy Keeper to seek the Parties input. The Claims Administrator also sent an Excel spreadsheet of these policies to the Parties and requested that they respond using Policy Keeper.

32. **5/1/13:** The Claims Administrator sent an email to Mark Holstein, Wendy Bloom, Keith Moskowitz, Steve Herman and Jim Roy notifying them that he will post 254 policies publicly if they do not object by 5/3/13 at 5:00 P.M.

33. **5/3/13:** Wendy Bloom responded to the spreadsheet of 254 policies with questions regarding the policies marked as superseded and the policies for which the Claims Administrator did not incorporate BP's requested change.

34. **5/5/13:** Class Counsel did not respond by the stated deadline.

35. **5/7/13:** The Claims Administrator posted on the public DWH website the 240 policies that BP did not object to making publicly available and issued an Alert to all portal users announcing the newly posted policies.

36. **5/8/13:** Matt Hazzard responded to BP with the following email regarding the superseded policies and the policies for which the Claims Administrator did not incorporate BP's comment:

We have reviewed your comments regarding the policies we would like to make public. The specific policies you mention below were *not* included with the 242 policies we made available to the public yesterday. These are our comments for the remaining nine policies that we did not publicize:

**Superseded Policies**: The purpose of publicizing the superseded policies is to show the history of the final policies. Further, publicizing the superseded policies helps claimants and Appeal Panelists understand what policy was in place when a particular claim was reviewed. Several policies have a long history and have changed significantly over time, thereby changing the review process for certain Claim Types. For this reason, we have included the superseded policies as public policies. To prevent the superseded policies from confusing the public, we have included a superseded banner with a date the policy was superseded. Additionally, each superseded policy will be a version number of the current policy rather than its own separate policy.

We will publicize Policy 138 because it is superseded by Policy 277, which is a final policy. Although Policy 138 was not the Seafood Neutral's response verbatim, the Policy includes

5

EXHIBIT B-1

the substantive material provided by the Seafood Neutral.  Furthermore, Policy 138 has been superseded by Policy 277 so it is no longer applicable for claims review.  We will not publicize Policy 310 because it is in play with Policy 366 (Policy Request ID 425), which we sent to the Parties using Policy Keeper on 4/26 with your responses due on 5/3.

**Policy Language Changes:**  We have circulated these policies to the Parties several times and reviewed the Parties' comments carefully.  We incorporated any minor edits or revisions that the Parties may have had, as long as the changes did not affect the substantive policy language.  When reviewing BP's compendium comments for Policies 47 and 196, we felt that the changes would alter the policies substantively.  Your recommended changes would modify the policies in such a way that would require us to reissue the policy.  Therefore, we will make these Policies public as is, and will not include the requested changes.

**Policy Clarifications:**  For Policies 66 and 67, you requested clarification regarding double payment issues for BEL policies.  Our current double payment policies already address these concerns, so we do not need to add clarifying language to Policies 66 and 67.

As for Policy 355, we have your 3/15/13 memo and will not publicize this policy yet.  Mike Juneau has emailed you concerning a meeting about your questions.

**No Panel Agreement, Court Action Not Required:**  We used this Type of Decision for policies that went to a Panel Hearing but did not require a decision from the Court.  As these policies went beyond the normal policy development phase, we wanted to provide a Type of Decision that would reflect how the policy became final.  To avoid confusion, however, we have renamed these policies as Claims Administrator Decision.  We have updated Policies 349 through 352 to Claims Administrator Decision.

To summarize, we will publicize Policies 47, 66, 67, 138, 196 and 277 unless you request Panel consideration by Friday at 5:00 P.M. CST.  We will, however, keep Policies 310, 355 and 366 internal for further review.  Let me know if you have any questions.

37. **5/13/13:**  Matt Hazzard notified the Claims Administrator's office that BP did not object to the nine policies the Claims Administrator said he would post publicly from the 5/8/13 email, and recommended that the Claims Administrator post them publicly.

38. **5/14/13:**  The Claims Administrator posted the nine policies on the public DWH website.

39. **5/14/13 to Present:**  The Claims Administrator has conducted all policy development through the Policy Keeper application.

6

428833
7/12/13

EXHIBIT B-1