Exhibit C



# BUSINESS ECONOMIC LOSS

EXHIBIT B-3

| | **Table of Contents** | |
|---|---|---|
| | **Business Economic Loss Policy ID** | **Page(s)** |
| 1. | Policy ID 349:  Benchmark Period for Claimants Passing the Local and Non-Local Customer Mix Test | 1-7 |
| 2. | Policy ID 350:  Lodging Tax Returns for Lodging Business | 8-10 |
| 3. | Policy ID 351:  Lodging Tax Returns and Occupancy Reports for Managed Lodging Businesses | 11-13 |
| 4. | Policy ID 109:  Business Economic Loss Claims: Start-Up Businesses | 14-15 |
| 5. | Policy ID 120:  Business Economic Loss Claims:  Causation | 16-17 |
| 6. | Policy ID 121:  Business Economic Loss Claims:  Causation | 18-19 |
| 7. | Policy ID 135:  Business Economic Loss Claims:  Qualifying Projections | 20-21 |
| 8. | Policy ID 166:  Business Economic Loss Claims: Year-End Adjustment Categorization | 22-23 |
| 9. | Policy ID 167 v 1:  Business Economic Loss Claims: Multiple Rental Properties | 24-25 |
| 10. | Policy ID 167 v0:  Business Economic Loss Claims:  Multiple Rental Properties | 26-27 |
| 11. | Policy ID 169 v 1:  Business Economic Loss Claims:  Third-Party Rental Management | 28-29 |
| 12. | Policy ID 169 v 0:  Business Economic Loss Claims:  Third-Party Rental Management | 30-31 |
| 13. | Policy ID 170 v 1:  Business Economic Loss Claims:  Multi-Facility Businesses | 32-33 |
| 14. | Policy ID 170 v 0:  Business Economic Loss Claims:  Multi-Facility Businesses | 34-35 |
| 15. | Policy ID 172 v 1:  Business Economic Loss Claims:  Multi-Facility Businesses | 36-37 |
| 16. | Policy ID 172 v 0:  Business Economic Loss Claims:  Multi-Facility Businesses | 38-39 |

i.

EXHIBIT B-3

| | Table of Contents | |
|---|---|---|
| | **Business Economic Loss Policy ID** | **Page(s)** |
| 17. | Policy ID 179 v 1:  Business Economic Loss Claims: Unpaid Obligations to Creditors | 40-41 |
| 18. | Policy ID 179 v 0:  Business Economic Loss Claims:  Unpaid Obligations to Creditors | 42-43 |
| 19. | Policy ID 191 v 2:  Missing Records for a Prior Year | 44-45 |
| 20. | Policy ID 191 v 1:  Business Economic Loss Claims: Benchmark Period | 46-47 |
| 21. | Policy ID 191 v 0:  Business Economic Loss Claims: Benchmark Period | 48-49 |
| 22. | Policy ID 252:  Start-Up Businesses and 2012 Tax Returns | 50-51 |
| 23. | Policy ID 256:  Retail and Lodging Information | 52-53 |
| 24. | Policy ID 304:  Moratoria Losses: Implementing Section II of Exhibit 19 | 54-55 |
| 25. | Policy ID 323:  Document Requirements for Cancelled Contracts or Reservations | 56-57 |
| 26. | Policy ID 343:  Business Economic Loss Claims: Partial Year Step 2 Compensation | 58-60 |
| 27. | Policy ID 345 v 1:  Business Economic Loss Claims: Customer Mix Text | 61-63 |
| 28. | Policy ID 345 v 0:  Business Economic Loss Claims: Customer Mix Test | 64-65 |
| 29. | Policy ID 354 v 2:  Business Economic Loss Claims: Evaluation of Claimants with a Change in Taxpayer | 66-70 |
| 30. | Policy ID 354 v 1:  Business Economic Loss Claims:  Newly Acquired Businesses | 71-72 |
| 31. | Policy ID 354 v 0:  Newly Acquired Businesses as Start-Up Businesses | 73-74 |
| 32. | Policy ID 355 v 1:  Business Economic Loss Claims: Documentation Requirements | 75-79 |

EXHIBIT B-3

| | Table of Contents | |
|---|---|---|
| | **Business Economic Loss Policy ID** | **Page(s)** |
| 33. | Policy ID 355 v 0:  Alternate Source Documents for Revenues and Expenses | 80-84 |
| 34. | Policy ID 361 v 4:  Business Economic Loss Claims: Fixed and Variable Expenses | 85-86 |
| 35. | Policy ID 361 v 3:  Business Economic Loss Claims:  Account Categorization | 87-88 |
| 36. | Policy ID 361 v 2:  Business Economic Loss Claims: Expense Classification | 89-90 |
| 37. | Policy ID 361 v 1:  Business Economic Loss Claims: Fixed and Variable Expenses | 91-92 |
| 38. | Policy ID 361 v 0:  Business Economic Loss Claims: Expense Categorization | 93-94 |
| 39. | Policy ID 175:  Business Economic Loss Claims: Line Item Categorization | 95-96 |
| 40. | Policy ID 362:  Operating History of and Definition of Start-Up Businesses | 97-98 |
| 41. | Policy ID 367 v 1:  Business Economic Loss Claims: Document Requirements | 99-100 |
| 42. | Policy ID 367 v 0:  Business Economic Loss Claims: Document Requirements | 101-102 |
| 43. | Policy ID 368 v 1:  Business Economic Loss Claims: Multi-Facility Businesses | 103-104 |
| 44. | Policy ID 368 v 0:  Business Economic Loss Claims: Multi-Facility Businesses | 105-106 |
| 45. | Policy ID 369 v 1:  Business Economic Loss Claims: Document Requirements | 107-108 |
| 46. | Policy ID 369 v 0:  Business Economic Loss Claims: Document Requirements | 109-110 |
| 47. | Policy ID 371 v 1:  Business Economic Loss Claims: Management Salary/Key Employee Compensation | 111-112 |

EXHIBIT B-3

| | Table of Contents | |
|---|---|---|
| | **Business Economic Loss Policy ID** | **Page(s)** |
| 48. | Policy ID 371 v 0:  Business Economic Loss Claims: Management Salary/Key Employee Compensation | 113-114 |
| 49. | Policy ID 372 v 1:  Business Economic Loss Claims: Calculation | 115-116 |
| 50. | Policy ID 372 v 0:  Business Economic Loss Claims: Calculation | 117-118 |
| 51. | Policy ID 373 v 1:  Business Economic Loss Claims: Recurring Revenue Streams | 119-120 |
| 52. | Policy ID 373 v 0:  Business Economic Loss Claims: Recurring Revenue Streams | 121-122 |
| 53. | Policy ID 374 v 1:  Business Economic Loss Claims: Causation | 123-124 |
| 54. | Policy ID 374 v 0:  Business Economic Loss Claims: Causation | 125-126 |
| 55. | Policy ID 381 v 1:  Business Economic Loss Claims: Failed Start-up Businesses | 127-128 |
| 56. | Policy ID 381 v 0:  Business Economic Loss Claims: Failed Start-up Businesses | 129-130 |
| 57. | Policy ID 50:  Business Economic Loss Claims: Losses Calculation | 131-132 |
| 58. | Policy ID 86:  Business Economic Loss Claims: Claimant Classification | 133-134 |
| 59. | Policy ID 106:  Business Economic Loss Claims: Multi-Facility Businesses | 135-136 |
| 60. | Policy ID 108:  Business Economic Loss Claims: Non-Local Customer Mix Test | 137-138 |
| 61. | Policy ID 110:  Business Economic Loss Claims: Start Up Business | 139-140 |
| 62. | Policy ID 111:  Business Economic Loss Claims: Multi-Facility Businesses | 141-143 |
| 63. | Policy ID 115:  Business Economic Loss Claims: Denials and Incompleteness | 144-145 |
| 64. | Policy ID 161:  Business Economic Loss Claims: Eligibility | 146-147 |

EXHIBIT B-3

| | Table of Contents | |
|---|---|---|
| | **Business Economic Loss Policy ID** | **Page(s)** |
| 65. | Policy ID 168:  Business Economic Loss Claims: Allocation of Expenses | 148-149 |
| 66. | Policy ID 446:  Specific Documentation to Identify Factors Outside the Control of the Claimant that Prevented the Recovery of Revenues in 2011 (Never Circulated) | 150-154 |
| 67. | Policy ID 455:  Specific Documentation to Identify Factors Outside the Control of the Claimant that Prevented the Recovery of Revenues in 2011- Objective, Third-Party Documentation (Never Circulated) | 155-157 |
| 68. | Policy ID 456:  Specific Documentation to Identify Factors Outside the Control of the Claimant that Prevented the Recovery of Revenues in 2011- Issuance of Denial Notice (Never Circulated) | 158-161 |
| | **Accounting Support Reimbursement (CAS) Policy ID** | **Page(s)** |
| 69. | Policy ID 358 v 6:  Claimant Accounting Support | 162-163 |
| 70. | Policy ID 358 v 5:  Claimant Accounting Support Services: Prior Payments | 164-165 |
| 71. | Policy ID 358 v 4:  Claimant Accounting Support Services: Out-of-Pocket Expenses | 166-167 |
| 72. | Policy ID 358 v 3:  Claimant Accounting Support Services: Out-of-Pocket Expenses | 168-169 |
| 73. | Policy ID 358 v 2:  Claimant Accounting Support: Eligibility | 170-171 |
| 74. | Policy ID 358 v 1:  Claimant Accounting Support Services: Internal Accountants | 172-173 |
| 75. | Policy ID 358 v 0:  Claimant Accounting Support Services: Time of Reimbursement | 174-175 |
| 76. | Policy ID 359 v 3:  Claimant Account Support: SWS-38 | 176-177 |
| 77. | Policy ID 359 v 2:  Claimant Account Support: SWS-38 | 178-179 |
| 78. | Policy ID 359 v 1:  Accounting Support Reimbursement | 180-181 |

EXHIBIT B-3

| Table of Contents | |
|---|---|
| **Accounting Support Reimbursement (CAS) Policy ID** | **Page(s)** |
| 79.   Policy ID 359 v 0:  Claimant Account Support: Fixed Fees | 182-183 |
| 80.   Policy ID 360 v 2:  Reimbursement of Claimant Accounting Support | 184-185 |
| 81.   Policy ID 360 v 1:  Reimbursement of Claimant Accounting Support | 186-187 |
| 82.   Policy ID 360 v 0:  Business Economic Loss Claims: Claimant Accounting Support | 188-189 |

EXHIBIT B-3



**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-349 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---------|----------------------------------------|

| I. Profile | | | |
|---|---|---|---|
| **Subject** | Benchmark Period for Claimants Passing the Local and Non-Local Customer Mix Test. | | |
| **Active Date** | 3/27/13 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 4B | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

| II. Summary |
|---|

Exhibit 4B to the Settlement Agreement prescribes the causation requirements for Business Economic Loss claims. Claimants in Zones B, C, and D that pass the Modified V-Shaped Revenue Pattern or Decline-Only Revenue Pattern, and who do not satisfy causation requirements through another method prescribed in Exhibit 4B, must also satisfy the requirements of the "Customer Mix Test." Exhibit 4B does not specify which Benchmark Period applies to a claimant that establishes causation by satisfying the Customer Mix Test, together with the other requirements of the Modified V-Shaped Revenue Pattern Test or the Decline-Only Revenue Pattern Test. The Claims Administrator will apply the policy that if a claimant passes the Customer Mix Test by the comparison of local and non-local customers for a three consecutive month period in 2009 as compared to the same period in 2010, the Claims Administrator will calculate the claimant's compensation using the most favorable Benchmark Period for which the claimant satisfies the applicable Revenue Pattern test. That Benchmark Period may, or may not, include 2009 only.

## Policy 349: Benchmark Period for Claimants Passing the Local and Non-Local customer Mix Test

Comments and Decisions by the Parties:

### A. Requested Input from Parties

   1. **BP**
      a. Decision: Defer to Claims Administrator Decision
      b. Date: 2/22/13
      c. Comment:

    See memo.

   2. **Class Counsel**
      a. Decision: Defer to Claims Administrator Decision
      b. Date: 2/22/13
      c. Comment:

    Class Counsel believes the Customer Mix Test use of 2009 for Causation does not require that claimant to only use 2009 for purposes of Compensation. The Benchmark flexibility in selecting the Benchmark Period for Compensation is intended to provide the plaintiff with the opportunity to more accurately reflect the historical revenue for the chosen three or more months selected. This flexibility is only provided when 2007/2008/2009 are available. The Compensation period is independent of the Causation Test. The Customer Mix Test was created as an alternative method for showing Causation. Nowhere in the agreement is there a limitation under the Customer Mix Test that the claimant loses the flexibility the Settlement gives them concerning their Benchmark Period for the compensation determination. Class Counsel supports the policy that allows the Claimant satisfying the Causation Standard using the Customer Mix Test be allowed to use the Settlement Agreement flexibility of choosing 2007/2008/2009 as Benchmark for Compensation.

### B. Policy Announced to Parties for Positions

   1. **BP**
      a. Decision: Request Panel Hearing
      b. Date: 3/4/13
      c. Comment:

    See memo.

   2. **Class Counsel**
      a. Decision: Defer to Claims Administrator Decision
      b. Date: 3/4/13
      c. Comment: N/A

EXHIBIT B-3

TO:           Patrick Juneau, Claims Administrator

FROM:         BP

DATE:         February 22, 2013

CC:           Class Counsel

RE:           BP Response to Claims Administrator Request for Input from the Parties on
              Policy Issues Affecting Claims Administration dated February 19, 2013

---

BP provides the following responses to the Claims Administrator Request for Input from the Parties on Policy Issues Affecting Claims Administration dated February 19, 2013:

1.    ***Business Economic Loss Claims:  Benchmark Period for Claimants Passing the Local and Non-Local Customer Mix Test.***

The Request for Input memorandum provides the following observation and accompanying question:

> Exhibit 4B does not specify which Benchmark Period applies to a claimant that establishes Causation by satisfying the Customer Mix Test, together with the other requirements of the Modified V-Shaped Revenue Pattern Test or the Decline-Only Revenue Pattern Test.  The Modified V-Shaped Revenue Pattern Test and the Decline-Only Revenue Pattern Test compare three consecutive month periods in the Benchmark Period years of 2009, 2008/09, or 2007/2008/2009 to the same period in 2010.  In contrast, the Customer Mix Test compares local and non-local customers for a "three consecutive month period in 2009, for that is the only pre-Spill year used in the Customer Mix Test?  As such, is the claimant's Benchmark Period limited to 2009, for that is the only pre-Spill year used in the Customer Mix Test?  Or, if the claimant passes the Customer Mix Test, may the claimant use any Benchmark Period for which the claimant satisfies the applicable Revenue Pattern test?

BP's response is as follows:

> If the claimant passes the Customer Mix Test, the claimant may use any Benchmark Period year(s) for which the claimant satisfies the revenue pattern portion of the applicable Revenue Pattern test.   More specifically, the claimant may *only* use those Benchmark Period year(s) combinations for which the claimant satisfies the revenue pattern portion of the applicable Revenue Pattern test.

> In BP's view the Settlement Agreement is clear with respect to which Benchmark Period year(s) are available to a claimant that establishes Causation by satisfying the Modified V-Shaped Revenue Pattern or Decline-Only Revenue Pattern tests.

EXHIBIT B-3

As stated in the Addendum To Causation Requirements For Business Economic Loss Claims and Compensation Framework for Business Economic Loss Claims at the back of Exhibit 4C, "the same Benchmark Period year(s) are used for purposes of determining **both** causation and compensation." Ex. 4C at 028779 (emphasis in original).

The Modified V-Shaped Revenue Pattern and Decline-Only Revenue Pattern tests only reference the Benchmark Period as coming into play as a requirement for the revenue pattern portion of those tests. There is no reference to the Benchmark Period in the section of those tests which elaborates the additional Customer Mix test requirements; instead, the Customer Mix tests expressly look at 2009 compared to 2010. Thus, the Customer Mix test does not come into play in determining the available Benchmark Period year(s) from which a claimant may select. Rather, a claimant satisfying the Modified V-Shaped Revenue Pattern or Decline-Only Revenue Pattern tests may select from *only* the Benchmark Period year(s) that enable it to pass the requisite revenue pattern portion those tests, and must then consistently use the same Benchmark Period year(s) for compensation.

BP believes this example may provide some further clarity. Assume a claimant (i) passes the revenue pattern portion of the Modified V-Shaped Revenue Pattern tests *only* by use of total revenue from 2007/2008/2009 as the Benchmark Period year(s); the claimant does not pass the revenue pattern portion of the test using 2008/2009 or 2009 alone and (ii) passes the Customer Mix test. Such a claimant may only use 2007/2008/2009 as the Benchmark Period year(s) for both causation and compensation; the claimant may not use 2009 alone as the Benchmark Period year for both causation and compensation.

Also relevant here, pursuant to Exhibit 4B, and implicit in the Claims Administrator's hypothetical posed below, "the same period of three consecutive months from May-December" used in the revenue pattern portion of the Modified V-Shaped Revenue Pattern and Decline-Only Revenue Pattern tests must be used in the Customer Mix Test.

The Request for Input memorandum then provides the following specific example and accompanying question:

For example, assume a gift shop that provides detailed records for May-July 2009 and May-July 2010 satisfies the requirements of the Customer Mix Test for that three-month comparison. Additionally, this same claimant satisfies the requirements of the Modified V-Shaped Revenue Pattern Test for May-July using Benchmark Period years of 2009, 2008/2009, as well as 2007/2008/2009. In this example, would the claimant be limited to a 2009 Benchmark Period year because the Customer Mix Test uses data from 2009 but not 2007 or 2008, or would the claimant be permitted to use any of the three possible Benchmark Periods because it passed the Modified V-Shape Revenue Pattern Test for all three Benchmark Periods and passed the Customer Mix Test?

EXHIBIT B-3

BP's response is a follows:

> As noted above, the Customer Mix test does not come into play in determining the Benchmark Period year(s) options available to the claimant. Because this hypothetical claimant satisfies the revenue pattern portion of the Modified V-Shaped Revenue Pattern test for May-July using Benchmark Period years of 2009, 2008/2009 and 2007/2008/2009, all three Benchmark Period year options are available to the claimant for compensation (as long as the claimant separately satisfied the Customer Mix test).

> However, assume instead that this claimant satisfies the requirements of the revenue pattern portion of the Modified V-Shaped Revenue Pattern test for May-July only by using Benchmark Period years of 2008/2009 or 2007/2008/2008, but fails to satisfy the revenue pattern test for 2009 alone. In such an instance, the claimant may only use either 2008/2009 or 2007/2008/2009 as the Benchmark Period years for compensation (again assuming that the claimant separately satisfies the Customer Mix test); the claimant cannot use as the Benchmark Period year 2009 alone.

**2A.**   *Business Economic Loss Claims: Lodging Tax Returns for Lodging Businesses.*

The Request for Input memorandum provides the following observation and accompanying proposed policy:

> Therefore, owners of vacation rental properties that lease only to active duty military members are not required by law to file lodging tax returns and therefore did not file lodging tax returns. Under current policy, we would issue this claimant an Incompleteness Notice for failing to provide lodging tax returns. If a Lodging Business Claimant submits documentation establishing that it is exempt from filing lodging tax returns and a statement that the claimant did not file lodging tax returns, we recommend that we process the claim without sending an Incompleteness Notice, which would lead to this policy:

> The Claims Administrator, in his discretion, interprets this requirement to allow an exception for Business Claimants not required to file lodging tax returns with its state or locality. Accordingly, a Business Claimant that establishes that it is exempt from filing lodging tax returns and therefore did not file the returns for some or all of the required periods, shall be exempt from this documentation requirement.

BP's response is as follows:

> BP is amenable to this proposed policy provided the following is confirmed:

> First, the Claims Administrator will require such a claimant to submit both (i) documentation establishing that it is exempt from filing the lodging tax return and (ii) a sworn statement that it did not file a lodging tax return. These requirements are identified by the Claims Administrator in the paragraph above the proposed

policy but are not expressly stated in the policy itself. Our vacation rental property expert informs us that a claimant would need to retain such documentation in case the claimant was audited to show why it collected revenue without charging sales and occupancy taxes. Examples of such documentation include (a) a tax exempt form that the military personnel provides the claimant or (b) proof the military's Billeting Department was charged for the room rather than the claimant him or herself, and such documentation should be in the folio or guest record for the customer.

Second, the purpose of the lodging tax return and occupancy report/historical rental record document requirements in Paragraph 5 of Exhibit 4A is for the Settlement Program to have ready access to documentation which allows it to cross-check the monthly rental revenue amounts and expenses reported in those documents against the information provided by the claimant in connection with Paragraph 4 of Exhibit 4A. Thus, in the event the monthly rental revenue and/or expense pattern is irregular in the monthly profit and loss statements provided by such a claimant, the Claims Administrator should request bank statements or other source documents to validate the monthly revenue and expenses amounts consistent with the requirements of Paragraphs 4 and 5 of Exhibit 4A.

**2B.**   *Business Economic Loss Claims: Lodging Tax Returns for Lodging Businesses.*

The Request for Input memorandum quotes from Ex. 4A, Section 5 subpart (b), which identifies three documentation requirements for claimants in the lodging business (i) lodging tax returns, (ii) occupancy reports or historical rental records, on a per unit basis if available; and (iii) documentation to identify how the rental property is managed. The Request for Input memorandum then provides the following observation and accompanying proposed policy:

> The Claims Administrator revised this policy after a 10/16/12 meeting with the Parties so that such documents will be required of all lodging businesses, except owners of vacation rental properties that are managed by a party other than the claimant. Claimants with such managed vacation rental properties may submit a Form 1099 and an annual or other report from the management company regarding the property, but need not submit lodging tax returns or occupancy reports. Claimants with self-managed vacation rental properties must submit lodging tax returns and occupancy reports.

> We have identified situations where the management companies are not required by law to report income on a Form 1099 to a vacation rental property owner and, therefore, the vacation rental property owners does not have the Form 1099 contemplated in the Claims Administrator's exception to the documentation requirements of the Settlement Agreement. [I]RS guidelines only require annual rental income of $600 or more to be reported using Form 1099. Therefore, companies that manage vacation rental properties which generated less than $600 of rental income during a required year are note required by law to report income on a Form 1099. The vacation rental property owner does not receive a Form 1099 from the management company. Under current policy, we would issue these

claimants an Incompleteness Notice for failing to provide Form 1099.  We would like to process the claim without sending an Incompleteness Notice, which would lead to this policy:

> The Claims Administrator, in his discretion, interprets this requirement to allow exceptions for certain Business Claimants.  Accordingly, a Business Claimant that establishes that it is an owner of a vacation rental property that is managed by a third party and that it received less than $600 of rental income from the property during a required period, shall be exempt from submitting Form 1099.

BP's response is as follows:

> BP is amenable to the proposed policy with one caveat.  The policy incorrectly assumes that if the business claimant is the owner of a vacation rental property that was managed by a third party and the claimant received less than $600 of rental income in a given year for the property that the claimant will not have received a Form 1099.  BP's accounting and vacation rental experts explained that it is quite likely the third party manager will have issued a 1099 in any event.  Thus, the claimant should be required to provide a sworn statement attesting that the third party management company did not provide a 1099.

> Also, as noted above, the purpose of the lodging tax return and occupancy report/historical rental record document requirements in Paragraph 5 of Exhibit 4A is for the Settlement Program to have ready access to documentation which allows it to cross-check the monthly rental revenue amounts and expenses reported in those documents against the information provided by the claimant in connection with Paragraph 4 of Exhibit 4A.  Thus, the combination of a "1099 Form and the annual or monthly statements from the management company" now required instead for vacation rental property owners whose properties are managed by management companies (pursuant to the Settlement Program's October 19, 2012 Changes to Document Requirements for Individual Economic Loss and Business Economic Loss Claims" announcement) should likewise capture this information.  BP's vacation rental expert confirms that vacation rental management companies maintain this information in computer systems and provide it in reports to their customers.  Thus, the "annual or monthly statements from the management company" should require such monthly revenue and expense information since it is being provided in lieu of the lodging tax return and occupancy report/historical rental record document requirements.

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-350 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | | |
|---|---|---|---|
| **Subject** | Lodging Tax Returns for Lodging Businesses | | |
| **Active Date** | 3/27/13 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 4A Section 5 | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

## II. Summary

Section 5 of Exhibit 4A of the Settlement Agreement directs:

If the claimant falls within any of the specific business types listed below, the following additional documents are required for the years included in the Benchmark Period, 2010, and, if applicable, 2011….b) Lodging (including hotels, motels, and vacation rental properties): i. Lodging tax returns…"

The Claims Administrator interprets this requirement to allow an exception for Business Claimants not required to file lodging tax returns with its state or locality.  Accordingly, if a Business Claimant submits documents establishing that it is exempt from filing lodging tax returns and therefore did not file the returns for some or all of the required periods, the claimant will not be required to submit such returns.

EXHIBIT B-3

## Policy 350: Lodging Tax Returns for Lodging Businesses

Comments and Decisions by the Parties:

### A. Requested Input from Parties

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 2/22/13
   c. Comment:

   As noted above, the Customer Mix test does not come into play in determining the Benchmark Period year(s) options available to the claimant. Because this hypothetical claimant satisfies the revenue pattern portion of the Modified V-Shaped Revenue Pattern test for May-July using Benchmark Period years of 2009, 2008/2009 and 2007/2008/2009, all three Benchmark Period year options are available to the claimant for compensation (as long as the claimant separately satisfied the Customer Mix test). However, assume instead that this claimant satisfies the requirements of the revenue pattern portion of the Modified V-Shaped Revenue Pattern test for May-July only by using Benchmark Period years of 2008/2009 or 2007/2008/2008, but fails to satisfy the revenue pattern test for 2009 alone. In such an instance, the claimant may only use either 2008/2009 or 2007/2008/2009 as the Benchmark Period years for compensation (again assuming that the claimant separately satisfies the Customer Mix test); the claimant cannot use as the Benchmark Period year 2009 alone.

2. **Class Counsel**
   a. Decision: Agree
   b. Date: 2/22/13
   c. Comment:

   Class Counsel agrees with the Claims Administrator's application of this policy as being within his sound discretion under the facts as set forth.

EXHIBIT B-3

## Policy 350: Lodging Tax Returns for Lodging Businesses

**B. Policy Announced to Parties for Positions**

    **1. BP**
        a. Decision:  Request Panel Hearing
        b. Date: 3/4/13
        c. Comment:

Policy No. 2 provides that if a Business Claimant "establishes to the satisfaction of the Claims Administrator that it is exempt from filing lodging tax returns and therefore did not file the returns for some or all of the required periods, the claimant will not be required to submit such returns." BP does not agree that such an undefined, subjective standard is appropriate or permitted under the Settlement Agreement. Rather, the Settlement Program should require documentation objectively demonstrating the asserted exemption and non-filing. As set forth more fully in BP's Memorandum dated February 22, 2013, such documentation should include documentation establishing that the claimant was not required to filed such returns and a sworn written statement that it did not do so. In addition, BP believes that the policy must make clear that, to the extent such lodging returns do not exist, that does not in any way obviate the obligation of the Settlement Program to obtain accurate monthly financial data required to implement the BEL causation and compensation frameworks. In particular, to the extent the monthly rental revenue and/or expense pattern is irregular in the monthly profit and loss statements provided by such a claimant, the Claims Administrator must request bank statements or other source documents to validate the monthly revenue and expense amounts consistent with the requirements of paragraphs 4 and 5 of Exhibit 4A. A failure to require such information would violate the requirements of the Settlement Agreement.

    **2. Class Counsel**
        a. Decision:  Defer to Claims Administrator Decision
        b. Date: 3/4/13
        c. Comment: N/A

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
#### ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-351 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Lodging Tax Returns and Occupancy Reports for Managed Lodging Businesses | | |
|---|---|---|---|
| **Active Date** | 3/27/13 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 4A Section 5 | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

### II. Summary

Section 5 of Exhibit 4A of the Settlement Agreement directs:

If the claimant falls within any of the specific business types listed below, the following additional documents are required for the years included in the Benchmark Period, 2010, and, if applicable, 2011....b) Lodging (including hotels, motels, and vacation rental properties): i. Lodging tax returns, ii. Occupancy reports or historical rental records, on a per unit basis if available; iii. Documentation to identify how the rental property is managed, such as (i) a management contract from a third-party management company or (ii) a Sworn Written Statement from an owner that manages its own property.

The Claims Administrator revised this requirement after meeting with the Parties so that such documents will be required of all lodging business, except owners of vacation rental properties that are managed by a party other than the claimant. Claimants with such managed vacation rental properties may submit a Form 1099 and an annual or other report from the management company regarding the property, but need not submit lodging tax returns or occupancy reports. Claimants with self-managed vacation rental properties must submit lodging tax returns and occupancy reports. In certain situations, management companies are not required by law to report income on a Form 1099 to the vacation rental property owner. The Claims Administrator interprets this requirement to allow exceptions for such claimants. Accordingly, if a Business Claimant submits documents establishing that it is an owner of a vacation rental property that is managed by a third party and that it received less than $600 of rental income from the property during a required period and did not receive a Form 1099 from the applicable management company, the claimant will not be required to submit a Form 1099.

EXHIBIT B-3

## Policy 351: Lodging Tax Returns and Occupancy Reports for Managed Lodging Businesses

Comments and Decisions by the Parties:

## A. **Requested Input from Parties**

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  2/22/13
   c. Comment:

First, the Claims Administrator will require such a claimant to submit both (i) documentation establishing that it is exempt from filing the lodging tax return and (ii) a sworn statement that it did not file a lodging tax return. These requirements are identified by the Claims Administrator in the paragraph above the proposed 4 policy but are not expressly stated in the policy itself. Our vacation rental property expert informs us that a claimant would need to retain such documentation in case the claimant was audited to show why it collected revenue without charging sales and occupancy taxes. Examples of such documentation include (a) a tax exempt form that the military personnel provides the claimant or (b) proof the military's Billeting Department was charged for the room rather than the claimant him or herself, and such documentation should be in the folio or guest record for the customer. Second, the purpose of the lodging tax return and occupancy report/historical rental record document requirements in Paragraph 5 of Exhibit 4A is for the Settlement Program to have ready access to documentation which allows it to cross-check the monthly rental revenue amounts and expenses reported in those documents against the information provided by the claimant in connection with Paragraph 4 of Exhibit 4A. Thus, in the event the monthly rental revenue and/or expense pattern is irregular in the monthly profit and loss statements provided by such a claimant, the Claims Administrator should request bank statements or other source documents to validate the monthly revenue and expenses amounts consistent with the requirements of Paragraphs 4 and 5 of Exhibit 4A.

2. **Class Counsel**
   a. Decision:  Propose Modification
   b. Date:  2/22/13
   c. Comment:

Class Counsel agrees with the Claims Administrator's application of this policy as being within his sound discretion under the facts as set forth.

## Policy 351: Lodging Tax Returns and Occupancy Reports for Managed Lodging Businesses

**B.  Policy Announced to Parties for Positions**

   **1.  BP**
        a.  Decision:  Request Panel Hearing
        b.  Date: 3/4/13
        c.  Comment:

Policy No. 3 similarly proposes a vague, subjective, discretionary "to the satisfaction of the Claims Administrator" standard. Again, BP continues to maintain that objective documentation establishing compliance with the requirement is required. This would include a sworn written statement that the Claimant received less than $600 of rental income from the property during a required period and did not receive a Form 1099 from the applicable management company. In addition, BP believes that the policy must make clear that, to the extent the Settlement Program obtains and relies on information from the management company, such information must meet the Settlement Program's BEL documentation requirements for financial statements or other documentation providing accurate monthly revenues and expenses.

   **2.  Class Counsel**
        a.  Decision:  Defer to Claims Administrator
        b.  Date: 3/4/13
        c.  Comment: N/A

EXHIBIT B-3

# DEEPWATER HORIZON
## CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 109 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | | | |
|---|---|---|---|
| **Policy Subject** | Business Economic Loss Claims: Start-Up Businesses | | |
| **Active Date** | 5/31/12 | **Policy Impact** | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 7 | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

| II. Approved Policy |
|---|
| If the claimant began operations on or before January 1, 2009, then it could elect to be treated as a regular business, with 2009 as the only Benchmark Period year available. Otherwise the claimant must use 2011. |

EXHIBIT B-3

## Policy 109: Business Economic Loss Claims: Start-Up Businesses

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/16/13
   c. Comment:

   If the claimant began operations on or before January 1, 2009, then it could elect to be treated as a regular business, with 2009 as the only Benchmark Period year available. Otherwise the claimant must use 2011.  In almost all cases, 2011 should produce a more favorable result for the start up, since start-ups typically suffer losses or limited profits in their first few months of operation. (5/22/12); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Agree with BP: The Claimant should have the option of using 2009 as a Benchmark and be treated as a regular business, if more favorable/available. (5/31/12); Can be promulgated as CA Decision. (1/30/13); Should be published as a CA Decision. (4/2/13)

**EXHIBIT B-3**

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-120 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

## I. Profile

| Subject | Business Economic Loss Claims: Causation |
|---|---|
| Active Date | 6/15/12 | Policy Impact | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| Type of Decision | | | Claims Administrator Decision |
| Settlement Agreement Reference | | | Exhibit 4B |
| Affected Claim Types and/or Review Processes | | | BEL |

## II. Summary

If the only Causation Test(s) the Claimant satisfies is the Causation Proxy Test and/or the Seafood Retailer Test, then the Claims Administrator is not limited to which Benchmark Period (2009, Average of 2008-2009, or Average of 2007-2009) it can use to perform the Compensation Calculation. The CA should use the Benchmark Period that maximizes the claimant's recovery.

EXHIBIT B-3

## Policy 120: Business Economic Loss Claims: Causation

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   This requires the sufficient documentation and the application of practical judgment to support the conclusion. This will be a facts and circumstances determination based on a linkage or dependency of business activities. As an example, if a peanut vendor is located outside an amusement park, it's reasonable the peanut vendor's sales would vary consistent with the number of visitors to the amusement park. In this scenario, the claimant would have to establish that he or she was actually located outside the amusement park, and that the amusement park's attendance declined. Alternatively, the same peanut vendor located next to an auto repair shop would not have a linkage of business activity. It will have to be based on a reasonable review of the data provided and the case made. (5/17/12); The claimant must use the same Benchmark Period years that the Causation Proxy Claimant used because in the business economic loss framework the claimant must use the same Benchmark Period years for both causation and compensation. The claimant may, however, choose to use different Compensation Period months than those used by the Causation Proxy Claimant. (5/24/12); BP does not understand how the CA comment comports with the requirement of Ex. 4C Addendum to Causation Requirements For Business Economic Loss Claims And Compensation Framework for Business Economic Loss Claims pg 028779, that a claimant must use the same Benchmark Period years for "purposes of determining both causation and compensation." We also note that the seafood retailer must utilize his own business's financial data to satisfy the causation test. We do not see any rationale for why claimants utilizing the causation proxy claimant or seafood retailer causation tests should be treated any differently than other claimants, nor do we see support for this interpretation from Exs 4B and 4C. (5/31/12); BP agrees with CA Recommendation (6/15/12); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to the Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   J. Rice: If causation is shown by the proxy test or the seafood retailer test, you can use any benchmark periods that maximize the recovery. (5/21/12); S. Herman: If causation is shown by the proxy test or the seafood retailer test, you can use any benchmark periods that maximize the recovery. What is the Program's recommendation? (5/26/12); We agree with BG's Recommendation. (5/31/12); Can be promulgated as CA Decision. (1/30/13); Should be published as a CA Decision. (4/2/13)

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 121 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | |
|---|---|
| **Policy Subject** | Business Economic Loss Claims: Causation |

| **Active Date** | 6/15/12 | **Policy Impact** | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
|---|---|---|---|

| **Type of Decision** | Claims Administrator Decision |
|---|---|
| **Settlement Agreement Reference** | Exhibit 4B |
| **Affected Claim Types and/or Review Processes** | BEL |

| II. Approved Policy |
|---|

If a claimant establishes Causation by providing proof of a Spill-related cancellation, and the claimant satisfies the Modified V-Shaped Revenue Pattern, the claimant's Compensation Calculation must be limited to the losses related specifically to the cancelled contract (as set forth in Exhibit 4E). It is not necessary for the Proof of Spill-Related Cancellations analysis to be applied both with the Modified V-Shaped Revenue Pattern test and then again on its own.

EXHIBIT B-3

## Policy 121: Business Economic Loss Claims: Causation

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   BP agrees with this response (from 5/8/12 Tutorial) and disagrees with the 5/21/2012 comment from Joe Rice. As Exhibit 4E expressly states, the addendum sets forth the "exclusive compensation methodology" for Spill-related cancellations. (5/22/12); Responding to J. Rice 5/21 Comments: BP disagrees. See BP's response to Question 146. (5/24/12); Without knowing the CA comment or response to the question, BP is unable to assess whether it defers to the CA. BP further notes that in Ex 4B the modified V causations tests portion relating to spill-related contract cancellations (Sections II(B) and III(B) and Proof of Spill-Related Cancellation causation tests (Sections II(D) and III(D)) provide that "Proof of a spill-related contract cancellation only establishes causation for the specific contract substantiated by the claimant and may result in recovery only of damages solely associated with such contract." Exhibit 4(E) then states that it "sets forth the exclusive compensation methodology for business claimants" utilizing these four causation tests. To the extent the CA intends to implement Exs. 4B and 4E consistent with comments BP has expressed, then BP defers to the CA. (5/31/12); BP agrees with CA Recommendation (6/15/12); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   J. Rice: Both. The base finding for the Cancellation may establish it was never part of previous revenue. As such the Claimant may have the loss in the Compensation Period established by the comparison to the Benchmark Period but in addition have a unique loss from Cancellation. (5/21/12); S. Herman: We defer to the sound discretion of the Program, reserving our right to revisit the issue, and to perhaps convene a Panel if necessary, if and as any problems or concerns may be reported or encountered in the processing of the claims. (5/26/12); Can be promulgated as a CA Decision, but must be clear that it applies to each applicable contract, and is not limited to one single contract. (See Note on No. 55.) (1/30/13); Can be promulgated as a CA Decision, but must be clear that it applies to each applicable contract, and is not limited to one single contract. (4/2/13)

EXHIBIT B-3

**DEEPWATER HORIZON
CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 135 | Claims Administrator's Approved Policy |
|---|---|

### I. Policy Information

| Policy Subject | Business Economic Loss Claims: Qualifying Projections | | |
|---|---|---|---|
| Active Date | 6/29/12 | Policy Impact | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision | |
| Settlement Agreement Reference | | Exhibit 7 | |
| Affected Claim Types and/or Review Processes | | BEL | |

### II. Approved Policy

Article IV, Section A, Bullet 2 of Exhibit 7 (page 9) states "Claimant's Expected Profit/Loss for the Compensation Period will be calculated as the difference between the claimant's Expected Revenue and Expected Costs, provided that Expected Revenue and Expected Costs must both be based on actual results from the Benchmark Period, or, if alternatively selected by claimants in Zones B and C, both Expected Revenue and Expected Costs must both be based on qualifying projections as described herein." There should be no distinction among Zones for using "qualified projections". Claimants in All Zones are permitted to use projections, as indicated in Exhibit 7, Section IV(A)(1)(b).

EXHIBIT B-3

## Policy 135: Business Economic Loss Claims: Qualifying Projections

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   BP proposes the Settlement Agreement be interpreted such that there is no distinction among the Zones. This rule applies equivalently to Zones A and D. (7/13/12); Classify as CA Decision; however, policy when made available publicly should be described in Column A as relating to Start-up Business Claims not all BEL claims because this policy relates only to Exhibit 7. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   There should be no distinction among Zones for using "qualified projections". Claimants in All Zones are permitted to use projections, as indicated in Exhibit 7, Section IV(A)(1)(b). (7/15/12); Can be promulgated as CA Decision. (1/30/13); Should be published as a CA Decision. (4/2/13)

EXHIBIT B-3

**DEEPWATER HORIZON**
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-166 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Business Economic Loss Claims: Year-End Adjustment Categorization | | |
|---|---|---|---|
| **Active Date** | 7/15/12 | **Policy Impact** | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

### II. Summary

Accountants should use their judgment when applicable in order to categorize a claimant's year-end adjustments to best reflect the operating results of the business for the period in question.

EXHIBIT B-3

## Policy 166:  Business Economic Loss Claims:  Year-End Adjustment Categorization

Comments and Decisions by the Parties:

1. **BP**
   a.  Decision:  Defer to Claims Administrator
   b.  Date: 4/16/13
   c.  Comment:

   BP objects to making this policy available publicly on the grounds that the description is too vague with regard the work accountants will perform.  Additionally, BP objects because has no record of this policy having been issued in 7/15/12 as reflected in Column D or having been provided an opportunity to respond, and requests it be provided with a copy of prior communications from the Settlement Program to the Parties regarding this policy and that it be provided an opportunity to comment.

2. **Class Counsel**
   a.  Decision:  Defer to Claims Administrator
   b.  Date: 4/2/13
   c.  Comment:

   Can be promulgated as CA Decision. (1/30/13); Should be published as a CA Decision. (4/2/13)

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-167 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

## I. Profile

| Subject | Business Economic Loss Claims: Multiple Rental Properties | | |
|---|---|---|---|
| Active Date | 5/29/13 | Policy Impact | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision | |
| Settlement Agreement Reference | | Exhibit 5 | |
| Affected Claim Types and/or Review Processes | | BEL | |

## II. Summary

Claimants with multiple rental properties can be processed under the Multi-Facility framework if the claimant files a Multi-Facility Claim Form. If the claimant is non-corporate structured (i.e. Schedule C, E, F claimant), the claimant should file individually as headquarters could not be determined.

EXHIBIT B-3

**Policy 167 v.1:  Business Economic Loss Claims:  Multiple Rental Properties**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  5/22/13
   c. Comment: N/A

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  5/14/13
   c. Comment: N/A

EXHIBIT B-3

# DEEPWATER HORIZON
## CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-167 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---------|----------------------------------------|

### I. Profile

| Subject | Business Economic Loss Claims: Multiple Rental Properties | |
|---------|-----------|------|
| **Active Date** | 7/15/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |

| **Type of Decision** | Claims Administrator Decision |
|---------------------|-------------------------------|
| **Settlement Agreement Reference** | Exhibit 5 |
| **Affected Claim Types and/or Review Processes** | BEL |

### II. Summary

Claimants with multiple rental properties can be processed under the Multi-Facility framework if the claimant files a Multi-Facility Claim Form.  If the claimant is non-corporate structured (i.e. Schedule C, E, F claimant), the claimant should file individually as headquarters could not be determined.

EXHIBIT B-3

## Policy 167 v.0:  Business Economic Loss Claims:  Multiple Rental Properties (Superseded by Policy 167 v.1)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/16/13
   c. Comment:

   BP objects to making this policy available publicly on the grounds that the description is too vague with regard the work accountants will perform.  Additionally, BP objects because has no record of this policy having been issued in 7/15/12 as reflected in Column D or having been provided an opportunity to respond, and requests it be provided with a copy of prior communications from the Settlement Program to the Parties regarding this policy and that it be provided an opportunity to comment.

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Can be promulgated as CA Decision. (Note - This policy makes sense if the claimant has multi-facilities that cross different Zones but if the headquarters and all of the facilities are in the same Zone so that the rules would apply to each of the facilities directly there is no reason that they have to be filed collectively and the claims process should allow them to be filed individually.  Also, see number 67, which allows a multi-facility business to file and apply a different RTP and different test to each location.) (1/30/13); Can be promulgated as CA Decision. (Note - This policy makes sense if the claimant has multi-facilities that cross different Zones, but if the headquarters and all of the facilities are in the same Zone so that the rules would apply to each of the facilities directly, there is no reason that they have to be filed collectively and the claims process should allow them to be filed individually.  Also, see No. 67, which allows a multi-facility business to file and apply a different RTP and different test to each location.).

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-169 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Business Economic Loss Claims: Third-Party Rental Management | |
|---|---|---|
| **Active Date** | 5/29/13 | **Policy Impact** | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | |
| **Affected Claim Types and/or Review Processes** | | BEL |

### II. Summary

For claimants with rental properties that are managed by a third party, if the management statement indicates "maintenance" and the tax returns indicates "repairs" for the exact same dollar amount, Accountants should classify the expense as combined 50/50.

## Policy 169 v.1:  Business Economic Loss Claims:  Third-Party Rental Management

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  5/22/13
   c. Comment: N/A

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  5/14/13
   c. Comment: N/A

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-169 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Business Economic Loss Claims: Third-Party Rental Management | | |
|---|---|---|---|
| Active Date | 7/15/12 | Policy Impact | ☐ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision | |
| Settlement Agreement Reference | | | |
| Affected Claim Types and/or Review Processes | | BEL | |

### II. Summary

For claimants with rental properties that are managed by a third party, if the management statement indicates "maintenance" and the tax returns indicates "repairs" for the exact same dollar amount, Accountants should classify the expense as combined 50/50.

EXHIBIT B-3

## Policy 169 v.0: Business Economic Loss Claims: Third-Party Rental Management (Superseded by Policy 169 v.1)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date: 4/16/13
   c. Comment:

BP objects to making this policy available publicly on the ground that it has no record of this policy having been issued on 7/15/12 or of having been provided an opportunity to respond.  BP requests that it be provided with a copy of prior communications from the Settlement Program to the Parties regarding this policy, and it be provided the opportunity to comment.

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date:  4/2/13
   c. Comment:

Can be promulgated as CA Decision. (1/30/13); Should be published as a CA Decision. (4/2/13)

EXHIBIT B-3

**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-170 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| **I. Profile** | | | |
|---|---|---|---|
| **Subject** | Business Economic Loss Claims: Multi-Facility Businesses | | |
| **Active Date** | 5/29/13 | **Policy Impact** | ☒ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 5 | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

| **II. Summary** |
|---|
| A business that owns rental property and engages in some other business activity may file one Business Economic Loss Claim for a Multi-Facility Business.  In our example, the real estate sales office would be one location and the rental property would be another location. |

EXHIBIT B-3

## Policy 170 v 1:  Business Economic Loss Claims:  Multi-Facility Business

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date: 5/22/13
   c. Comment: N/A

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  5/14/13
   c. Comment: N/A

EXHIBIT B-3

# DEEPWATER HORIZON
## CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-170 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Business Economic Loss Claims: Multi-Facility Businesses |
|---|---|
| Active Date | 7/15/12 | **Policy Impact** | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |

| Type of Decision | Claims Administrator Decision |
|---|---|
| Settlement Agreement Reference | Exhibit 5 |
| Affected Claim Types and/or Review Processes | BEL |

### II. Summary

A business that owns rental property and engages in some other business activity may file one Business Economic Loss Claim for a Multi-Facility Business.  In our example, the real estate sales office would be one location and the rental property would be another location.

EXHIBIT B-3

## Policy 170 v.0:  Business Economic Loss Claims:  Multi-Facility Business (Superseded by Policy 170 v.1)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/16/13
   c. Comment:

   BP objects to making this policy available publicly on the ground that it has no record of this policy having been issued on 7/15/12 or of having been provided an opportunity to respond.  BP requests that it be provided with a copy of prior communications from the Settlement Program to the Parties regarding this policy, and it be provided the opportunity to comment.

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Can be promulgated as CA Decision. (1/30/13); Should be published as a CA Decision. (4/2/13)

EXHIBIT B-3

## DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-172 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Business Economic Loss Claims: Multi-Facility Businesses | | |
|---|---|---|---|
| Active Date | 5/29/13 | Policy Impact | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision | |
| Settlement Agreement Reference | | Exhibit 5 | |
| Affected Claim Types and/or Review Processes | | BEL | |

### II. Summary

Claimants with more than one business for which the claimant files taxes under the same Tax ID may file claims as Multi-Facility Businesses.  For example, a towing company would be one location and the commercial rental property would be another location.

EXHIBIT B-3

## Policy 172 v.1:  Business Economic Loss Claims:  Multi-Facility Businesses

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  5/22/13
   c. Comment: N/A
2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  5/14/13
   c. Comment: N/A

EXHIBIT B-3

**DEEPWATER HORIZON
CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-172 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Business Economic Loss Claims: Multi-Facility Businesses | |
|---|---|---|
| Active Date | 7/15/12 | Policy Impact | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision |
| Settlement Agreement Reference | | Exhibit 5 |
| Affected Claim Types and/or Review Processes | | BEL |

### II. Summary

Claimants with more than one business for which the claimant files taxes under the same Tax ID may file claims as Multi-Facility Businesses.  For example, a towing company would be one location and the commercial rental property would be another location.

EXHIBIT B-3

## Policy 172 v.0: Business Economic Loss Claims: Multi-Facility Businesses (Superseded by Policy 172 v.1)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   BP objects to making this policy available publicly on the ground that it has no record of this policy having been issued on 7/15/12 or of having been provided an opportunity to respond. BP requests that it be provided with a copy of prior communications from the Settlement Program to the Parties regarding this policy, and it be provided the opportunity to comment.

2. **Class Counsel**
   a. Decision: Accept as a Final Policy
   b. Date: 4/2/13
   c. Comment:

   Can be promulgated publicly. (1/30/13); Should be published as a CA Decision. (4/2/13)

EXHIBIT B-3

**DEEPWATER HORIZON**
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-179 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | |
|---|---|---|
| **Subject** | Business Economic Loss Claims: Unpaid Obligations to Creditors | |
| **Active Date** | 5/29/13 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Exhibit 6 |
| **Affected Claim Types and/or Review Processes** | | BEL |

| II. Summary |
|---|

The Claims Administrator will interpret, "Add the total current amount of unpaid obligations of claimant to its creditors" from Exhibit 6, Section V.2.c to be total liabilities at the time of filing.

EXHIBIT B-3

## Policy 179 v.1:  Business Economic Loss Claims:  Unpaid Obligations to Creditors

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  5/22/13
   c. Comment: N/A

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  5/14/13
   c. Comment: N/A

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-179 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

## I. Profile

| Subject | Business Economic Loss Claims: Unpaid Obligations to Creditors |
|---|---|
| **Active Date** | 7/15/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | Exhibit 6 |
| **Affected Claim Types and/or Review Processes** | | | BEL |

## II. Summary

We will interpret, "Add the total current amount of unpaid obligations of claimant to its creditors" from Exhibit 6, Section V.2.c to be total liabilities at the time of filing.

EXHIBIT B-3

**Policy 179 v.0:  Business Economic Loss Claims:  Unpaid Obligations to Creditors
(Superseded by Policy 179 v.1)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   BP objects to making this policy available publicly on the ground that it has no record of this policy having been issued on 7/15/12 or of having been provided an opportunity to respond.  BP requests that it be provided with a copy of prior communications from the Settlement Program to the Parties regarding this policy, and it be provided the opportunity to comment.

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Should be published as a CA Decision. (4/2/13)

EXHIBIT B-3

# DEEPWATER HORIZON
## CLAIMS CENTER
### ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-191 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Missing Records for a Prior Year | | |
|---|---|---|---|
| Active Date | 7/18/12 | Policy Impact | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision | |
| Settlement Agreement Reference | | Exhibit 4A | |
| Affected Claim Types and/or Review Processes | | BEL | |

### II. Summary

If financial records are missing for any year from 2007-2009 on BEL Claims, the Claims Administrator will consider the claim incomplete and issue an Incomplete Notice only when the missing year was one chosen by the claimant for inclusion in the Benchmark Period.

EXHIBIT B-3

## Policy 191 v.2:  Business Economic Loss Claims:  Benchmark Period

Comments and Decisions by the Parties:

1. **BP**
   a.  Decision:  Defer to Claims Administrator
   b.  Date: 4/16/13
   c.  Comment:

   BP views this question as having two subparts-one involving claims where records are missing for a year selected by the claimant for inclusion in the Benchmark period, and one where the missing information does not involve the benchmark period and thus is not necessary for the determination of the claim.  With regard to the former, it is appropriate to issue an Incomplete Notice as the missing information is necessary to the processing of the claim.  As to the latter, BP does not object to the Settlement Program sending a communication to the claimant to determine whether the claimant intends to submit the missing year or wishes to proceed with only the financial records submitted.  But as a matter of the smooth and expeditious handling of claims, this should occur prior to the Settlement Program making the payment determination and issuing a Payable Notice. (7/18/12); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a.  Decision:  Accept as a Final Policy
   b.  Date: 5/14/13
   c.  Comment:

   We agree with BP that: (i) Where records are missing for a year that has been selected as a Benchmark year by the Claimant, there should be an Incomplete Notice. (ii) Where the Claimant has not submitted records for all three potential benchmark years, the Program should communicate the initial determination, and ask the Claimant whether he or she wants to submit additional benchmark documentation for consideration. (7/18/12); Can be promulgated publicly. (1/30/13); Should be published as a CA Decision. (4/2/13)

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-191 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | | |
|---|---|---|---|
| **Subject** | Business Economic Loss Claims: Benchmark Period | | |
| **Active Date** | 7/15/12 | **Policy Impact** | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | Exhibit 4C |
| **Affected Claim Types and/or Review Processes** | | | BEL |

## II. Summary

If the claimant selects a specific benchmark period (e.g., 07/09, 08/09) and does not provide the required documentation for the full selected benchmark period, but provides enough documentation to calculate a loss, Accountants should calculate the claim based upon the documentation provided by the claimant, even if this is not complete monthly data for full year 2007 through 2010.   For example, if the claimant selects 2007-2009 as the benchmark period and only provides 2009 data, the Accountants would perform a calculation using the benchmark period 2009.

EXHIBIT B-3

## Policy 191 v.1: Business Economic Loss Claims: Benchmark Period
### (Superseded by Policy 191 v.2)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Accept as Final Policy
   b. Date: 4/16/13
   c. Comment:

   Agree. Note, however, that documentation must be sufficient for at least one Benchmark Period in conformity with Ex. 4A documentation requirements. (2/11/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Understood that the Program would also, either on front end or at time of Notice, advise the Claimant that documentation as missing, explain what was or would be done, and provide opportunity for submission of additional documentation. (1/30/13); Appears to be superseded by No. 191. (4/2/13)

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-191 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | |
|---|---|
| Subject | Business Economic Loss Claims: Benchmark Period |
| Active Date | 7/15/12 | Policy Impact | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| Type of Decision | | | Claims Administrator Decision |
| Settlement Agreement Reference | | | Exhibit 4C |
| Affected Claim Types and/or Review Processes | | | BEL |

| II. Summary |
|---|

Accountants should calculate the claim based upon the documentation provided by the claimant even if this is not complete monthly data for full year 2007 through 2010.   For example, if the claimant selects 2009 as the benchmark period and only provides 2009 data, the accountants would perform a calculation using the benchmark period 2009.

EXHIBIT B-3

## Policy 191 v.0:  Business Economic Loss Claims:  Benchmark Period (Superseded by Policy 191 v.1)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/16/13
   c. Comment: N/A

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Appears to be superseded by No. 191. (4/2/13)

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 252 | Claims Administrator's Approved Policy |
|---|---|

## I. Policy Information

| Policy Subject | Start-Up Businesses and 2012 Tax Returns | | |
|---|---|---|---|
| Active Date | 9/15/12 | Policy Impact | ☐All Claims Regardless of Active Date<br>☑All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision | |
| Settlement Agreement Reference | | Exhibit 7 | |
| Affected Claim Types and/or Review Processes | | BEL | |

## II. Approved Policy

The Claims Administrator interprets Paragraph 3 of Exhibit 4A not to include any requirement that Start Up Business claimants produce 2012 tax returns unless, in his discretion, the Claims Administrator determines a need for such documents to resolve questions presented by a particular claim. The use of 2012 tax returns would be of very limited use when compared to financial statements for only a part of 2012, which by definition, is what any Benchmark Period for 2012 would be. Further, the language of footnotes 2 and 3 as well as the body of Section 3 of Exhibit 4A suggest that 2012 tax returns fall outside the scope of those tax returns that are required. The Claims Administrator reserves the right to require such documents if in his discretion he determines a need for them to address questions presented by a particular claim.

EXHIBIT B-3

## Policy 252: Start-Up Businesses and 2012 Tax Returns

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Item 3 of the Announcement purports not to require 2012 tax returns by Start-Up Business claimants who choose a portion of 2012 as their Benchmark Period. This purported waiver of a documentation requirement is not authorized, as the Settlement Agreement requires the submission of tax returns for all Benchmark Periods. Section 5.3.1 of the Agreement expressly incorporates by reference all of the frameworks that are exhibits to the Agreement and further requires that "[a]ll exhibits to this Agreement shall be read together with this Agreement." Exhibit 7 (Start-Up Business Claims) provides that a Benchmark Period may include 2012 and then provides that Start-Up claimants must provide the documentation required by the BEL Documentation Requirements (Ex. 4A). Ex. 4A in turn requires "Federal tax returns. . . for the years included in the claimant-selected Benchmark Period . . . ." Taken together, these provisions require Start-Up claimants who select a Benchmark Period including 2012 to provide 2012 tax returns. The provisions of Ex. 4A (footnotes 2 and 3 and Section 3) cited in the Announcement do not undercut this analysis. They address the requirements for BEL claims, which, unlike Start- Up Business Claims, use a Benchmark Period prior to 2010 and therefore cannot include reference to 2012 financial performance. The purpose of using the defined term Benchmark Period in the Start-Up framework (Ex. 7) and incorporating the BEL Documentation requirements therein by reference was to apply the BEL Documentation requirements for tax returns for the Benchmark Period to the particular circumstances of the more specialized Start- Up framework. Tax returns submitted under penalties of perjury are used throughout the Agreement for BEL claims to verify the accuracy of financial statement data provided by claimants. It is a foundational documentation requirement. (9/28/12); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Class Counsel agree with the Claims Administrator's Policy for the reasons stated and for the reasons stated in Class Counsel's Memo to the Claims Administrator re "Documentation Provisions" dated September 16, 2012. (9/28/12); Can be promulgated as a CA Decision. (1/30/13); Since this reflects no change, I am not sure there is anything to announce. Leave to the Claims Administrator's discretion. (4/2/13)

EXHIBIT B-3

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-256 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Retail and Lodging Information | |
|---|---|---|
| **Active Date** | 9/25/12 | **Policy Impact** | ☐ All Claims Regardless of Active Date<br>☑ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Exhibit 4A |
| **Affected Claim Types and/or Review Processes** | | BEL |

### II. Summary

The Claims Administrator interprets the language of Section 5 of Exhibit 4A of the Settlement Agreement to be mandatory, requiring the claimant to produce these documents absent mutual agreement of the Parties to the contrary or unless and until the Court directs otherwise:

(a) Monthly sales and use tax returns;
(b) For claimants in the lodging industry, lodging tax returns and occupancy reports or historical rental records; and
(c) For claimants in the lodging industry, documentation to identify how the property is managed (though for claimants with claims based on vacation rental properties, documentation to identify how the property is managed would likely be useful in any event).

EXHIBIT B-3

## Policy 256: Retail and Lodging Information

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/16/13
   c. Comment:

   BP agrees with the Claims Administrator's determination that Section 5 of Exhibit 4A of the Settlement Agreement is mandatory such that claimants in the relevant industries must provide their monthly sales and use tax returns, lodging tax returns, occupancy reports, historical rental records, and documentation to identify how the property is managed for claimants in the lodging industry. Under Section 4.3.10 of the Settlement Agreement, "[t]he Settlement Program . . . shall implement the terms of the Agreement." BP disagrees with the Claims Administrator's view that these documents "do not aid in the process of properly evaluating Business Economic Loss claims, and thus are not necessary to process Claim Forms under the applicable Claims Processes." As stated in BP's August 21, 2012 submission to the Settlement Program, these returns and reports are required to test the reasonableness and accuracy of the revenue information submitted by the claimant. Claimants should have these records, and these records are fundamental to the BEL framework. We respect that reasonable minds can differ about the import of a term, and appreciate that the Claims Administrator has recognized the mandatory nature of this requirement. Should not be promulgated. (9/28/12)  The BEL framework requirement is clear and there is no need to promulgate the CA's opinion regarding a requirement it will enforce. (2/11/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/2/13
   c. Comment:

   Class Counsel respectfully disagree with the Claims Administrator's interpretation that such documentation requirements are "mandatory" to the extent that a Claimant, in order to recover under the Settlement Agreement, would be required to submit documents that do not exist, for the reasons set forth in Class Counsel's Memo to the Claims Administrator re "Documentation Provisions" dated September 16, 2012. (9/28/12) Can be promulgated as a CA Decision. (1/30/13); Can be promulgated as a CA Decision (or clarification by the Seafood Neutral), approved by the Parties. (Note, however, that Class Counsel have not agreed that these Claimants are in fact Class Members or bound by the Class Release.) (4/2/13)

# DEEPWATER HORIZON
## CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 304 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | |
|---|---|

| Policy Subject | Moratoria Losses: Implementing Section II of Exhibit 19 |
|---|---|

| Active Date | 12/4/12 | Policy Impact | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
|---|---|---|---|

| Type of Decision | Claims Administrator Decision |
|---|---|
| Settlement Agreement Reference | Exhibits 16, 19 |
| Affected Claim Types and/or Review Processes | BEL |

| II. Approved Policy |
|---|

Pursuant to Section II of Exhibit 19, Business Economic Loss claimants with a NAICS Code and business activities marked with an "X" in Section II of Exhibit 19 must answer the following question: "In 2009, did your business provide significant services, goods, and/or supplies to businesses in the offshore oil & gas industry in the Gulf of Mexico?" Similarly, Individual Economic Loss claimants whose employer falls within the Exhibit 19, Section II "X" marked business activities must submit that employer's response to the same question. To capture this information, the Claims Administrator asks Business Economic Loss claimants this question in each Claim Form and requires a sworn-written statement from the relevant employer for Individual Economic Loss claimants. If the business or employer answers the significant services question affirmatively, the Claims Administrator will route the claim to a team dedicated to the evaluation of economic loss claims for potential moratoria losses. If the business or employer responds negatively, the claim proceeds under normal processing, without analysis for potential moratoria losses. The Claims Administrator will advise claimants that the Claims Administrator considers that an entity provided "significant" services, goods, and/or supplies to businesses in the offshore oil and gas industry in the Gulf of Mexico in 2009 if 33.00% or more of its 2009 net revenue was derived from such activities. Subject to the analysis of claims to prevent fraud, the Claims Administrator will observe the claimant's Claim Form answer to this question and will not independently determine whether the entity provided "significant" services, goods, and/or supplies to businesses in the offshore oil and gas industry in the Gulf of Mexico in 2009.

EXHIBIT B-3

## Policy 304: Moratoria Losses: Implementing Section II of Exhibit 19

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   BP focuses its comment on the last sentence of proposed policy No. 6 which provides: "Subject to the analysis of claims to prevent fraud, the Claims Administrator will observe the claimant's Claim Form answer to this question and will not independently determine whether the entity provided "significant" services, goods or supplies to the offshore oil and gas industry in the Gulf of Mexico." The Settlement Agreement, however, requires the Settlement Program to exclude all claims for Moratoria Losses. (Section 3.3) While this does not require the Settlement Program to conduct a forensic examination at the start for each claim outside of those addressed in Sections I and II of Exhibit 19, the Settlement Program is required by the Settlement Agreement to conduct such an analysis whenever there is any indication that the claim may include Moratoria Losses. The question posed in Section II of Exhibit 19 requires self-identification by claimants, and, therefore, because the claimant may answer incorrectly (whether fraudulently or inadvertently), the Claims Administrator should conduct the Moratoria Losses analysis whenever there is any indication that the BEL claimant, or IEL claimant's employer, may have provided significant services, goods, and/or supplies to businesses in the offshore oil & gas industry in the Gulf of Mexico in 2009. As we believe the Settlement Program is aware, we already have had a self-identification problem involving defense contractors involving the second largest compensation award issued thus far by the Program. That wrongful (or erroneous) self-identification is not the fault of the Settlement Program; but in order to protect the Program itself, as well as the Settlement and the parties, we believe that the Settlement Program needs to take those steps necessary (and perhaps others) which we have outlined here. (12/27/12); Object to the promulgation of this policy. (2/11/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Understood that this was revised. (a) Thought Claim Form was revised to eliminate question where Business or Individual was not an Ex 19 Section II with an "X". (b) As substantive matter, a review should not be conducted, even if Claimant answers "Yes", where that claimant is not either a Section I or Section II with an "X" on Ex 19. (See Nos. 321, 322) (1/30/13); Understood that this was revised. (a) Thought Claim Form was revised to eliminate question where Business or Individual was not an Ex 19 Section II with an "X". (b) As substantive matter, a review should not be conducted, even if Claimant answers "Yes", where that claimant is not either a Section I or Section II with an "X" on Ex 19. (4/2/13)

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 323 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | |
|---|---|

| Policy Subject | Document Requirements for Cancelled Contracts or Reservations |
|---|---|

| Active Date | 1/15/13 | Policy Impact | ☐All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
|---|---|---|---|

| Type of Decision | | Claims Administrator Decision |
|---|---|---|

| Settlement Agreement Reference | | |
|---|---|---|

| Affected Claim Types and/or Review Processes | | BEL |
|---|---|---|

| II. Approved Policy |
|---|

The Claims Administrator interprets the provisions of the Settlement Agreement such that the document requirements in Exhibit 4A apply to claimants with Business Economic Loss claims attempting to recover for cancelled contracts or cancelled reservations under Exhibit 4E.

## Policy 323: Document Requirements for Cancelled Contracts or Reservations

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Should be published as a CA Decision. (4/2/13)

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 343 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | | |
|---|---|---|
| Policy Subject | Business Economic Loss Claims:  Partial Year Step 2 Compensation | |
| Active Date | 2/8/13 | Policy Impact | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision |
| Settlement Agreement Reference | | |
| Affected Claim Types and/or Review Processes | | BEL |

## II. Approved Policy

Exhibit 4C of the Settlement details the framework for the calculation of Step 1 and Step 2 Compensation for Business Economic Loss claims.  The Settlement Agreement fails to provide specific direction on how to address BEL claims with a partial year start date that do not qualify as Start-Up or Failed Business claims.  The Claims Administrator interprets the Settlement Agreement as a whole such that the framework is most reasonably applied in the following manner:  For purposes of Step 2 Compensation, for those claimants who commenced operations during the optimal Benchmark Period, the claimant will be limited to a General Adjustment Factor of 2%.  No additional Claimant-Specific Factor will be applied to such claims.

EXHIBIT B-3

## Policy 343: Business Economic Loss Claims:  Partial Year 2 Compensation

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

BP respectfully disagrees with the Claims Administrator's statement that the Settlement Agreement does not address BEL claims with a partial year start date that do not qualify as Start- Up or Failed Business claims. To the contrary, the Settlement Agreement is clear that partial years cannot be used as Benchmark Period years. The Compensation Framework for Business Economic Loss Claims (Exhibit 4C), at pp. 1-2, provides that "The Benchmark Period is the pre-DWH Spill time period which claimant chooses as the baseline for measuring its historical financial performance. The claimant can select among the following Benchmark Periods: 2009; the average of 2008-2009; or the average of 2007-2009, provided that the range of years selected by the claimant will be utilized for all Benchmark Period purposes." (emphasis added). Exhibit 4C further indicates (at p. 4) that "Step 2 of the Compensation Calculation for Business Economic Loss Claims is intended to compensate claimants for incremental profits the claimant might have been expected to generate in 2010 in the absence of the spill, based on the claimant's growth in revenue in January-April 2010 relative to the claimant-selected Benchmark Period (2009 or (average of 2008 and 2009) or (average of 2007, 2008 and 2009))." (This calculation is also described in further detail on page 4 of Exhibit 4C). Finally, the Addendum To Causation Requirements For Business Economic Loss Claims and Compensation Framework for Business  Economic Loss Claims (pp. 16-17 of Exhibit 4B) provides that, "Accordingly, once the claimant selects the Benchmark Period year(s) (2009, the average of 2008-2009, or the average of 2007-2009), the same Benchmark Period year(s) are used for purposes of determining both causation and compensation" (emphasis in original). Given (i) the definition of the term "Benchmark Period" pursuant to Exhibit 4C, (ii) the fact that the Benchmark Period years are also to be used in calculating the growth rate applied in Step 2 of the Compensation Calculation pursuant to Exhibit 4C, and (iii) the clarifying language contained in the Addendum attached to Exhibit 4B regarding the consistent use of the Benchmark Period year(s) for causation and compensation, it is clear that, in circumstances where the claimant does not have information for the entirety of a given calendar year, that year (and any prior years) shall not be eligible for inclusion as a Benchmark Period year. In the specific hypothetical set forth by the Claims Administrator, where the claimant begins operations in April 2007 (and begins earning revenue after April 2007), the claimant cannot include 2007 as a Benchmark Period year, because the claimant lacks the financial data for 2007 needed to calculate the Step 2 growth rate. Thus, the express language of Exhibits 4B and 4C precludes the use of 2007 as a Benchmark Period year in the Claims Administrator's example. Moreover, BP provides these comments with regard to each of the potential calculation scenarios for the specific hypothetical set forth by the Claims Administrator:  Scenario 1 uses the Benchmark Period years of 2007 through 2009 to calculate Step 1 compensation, and to calculate the pre-spill (i.e., January through April) growth rate (also called the Claimant-

EXHIBIT B-3

Specific Factor) to be applied in determining Step 2 compensation. However, this Scenario improperly assumes the claimant was operating but with zero revenue for January through April 2007 when in fact the claimant was not operating. The inclusion of zero revenue for January through April 2007 artificially inflates the Claimant-Specific Factor. Therefore, the methodology proposed in Scenario 1 results in a severely distorted Step 2 compensation amount and is not a viable interpretation of the BEL framework calculation method. Scenario 2 proposes using the General Adjustment Factor of 2% in lieu of calculating a Claimant-Specific Factor (given that the claimant has no revenue for January through April 2007). However, the Business Frameworks do not use the General Adjustment Factor as an alternative growth rate (as does the Framework for Individual Economic Loss). In the Business Frameworks, the General Adjustment Factor is merely an add-on provided to claimants. Therefore, to assume the General Adjustment Factor automatically assumes that the Claimant- Specific Factor was otherwise 0%, which may or may not be accurate. Furthermore, failure to calculate an actual growth rate is inconsistent with the treatment of Start-Up claims. At the outset of the Claims Facility, the Facility posed the following question: "Can a start-up choose to use 2009 as its benchmark period (i.e. similar to the normal business economic loss) or is it required to use 2011 or projected financials as stated in the framework?" BP responded as follows: "If the claimant began operations on or before January 1, 2009, then it could elect to be treated as a regular business, with 2009 as the only Benchmark Period year available. Otherwise the claimant must use 2011. In almost all cases, 2011 should produce a more favorable result for the start up, since start-ups typically suffer losses or limited profits in their first few months of operation." The PSC agreed with BP's response: "Agree with BP: The Claimant should have the option of using 2009 as a Benchmark and be treated as a regular business, if more favorable / available." The Claims Administrator's corresponding resolution was: "If the claimant began operations on or before January 1, 2009, then it could elect to be treated as a regular business, with 2009 as the only Benchmark Period year available. Otherwise the claimant must use 2011." (See Question 101 of the Facility's Resolved Questions.) Only Start-Ups that began operations on January 1, 1999 or prior are allowed to be treated as general businesses because those are the only Start-Ups with sufficient information to calculate the Claimant-Specific Factor used in calculating Step 2 compensation. Therefore, BP disagrees that Scenario 2 is an acceptable interpretation of the BEL compensation framework for calculating the claimant's Compensation Award. Scenario 3 indicates that, if the claimant was limited to the General Adjustment Factor (as proposed in Scenario 2), the claimant would be better off selecting 2008 and 2009 as its Benchmark Period years. BP maintains that using 2008/2009 as the Benchmark Period years (assuming that the 2008/2009 Benchmark Period year combination was more favorable than using 2009) is the only proper approach for this claimant, given the lack of full year 2007 data. (1/19/13); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

Should be published as a CA Decision. (4/2/13)

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-345 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

## I. Profile

| Subject | Business Economic Loss Claims: Customer Mix Test | | |
|---|---|---|---|
| **Active Date** | 2/8/13 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

## II. Summary

Exhibit 4B of the Settlement Agreement provides that one of the ways that BEL claimants can establish Causation is by satisfying what is referred to in Exhibits B and C as the Customer Mix Test, together with other requirements.  The Settlement Agreement states that the claimant may submit the following types of documents to establish the required revenue decline as specified under the Customer Mix Test:
(a) Customer credit card receipts or other contemporaneously maintained records of payment;
(b) Customer registration logs (e.g., hotel registries);
(c) Documentation maintained in the ordinary course of business that lists customers by location and monthly sales associated with those customers; or
(d) Business documents reflecting contemporaneous recording of receipts or invoices listing customers by location.

The Claims Administrator has observed that it is difficult or even impossible for some BEL claimants to satisfy this test because they do not have documentation to establish the addresses/locations of their customers.  This is particularly problematic for businesses that deal primarily in cash, which businesses often do not maintain the type records specified in the above-referenced section of the Settlement Agreement.  But the Claims Administrator interprets the Settlement Agreement's documentation requirements as mandatory.  The Settlement Agreement does not grant the Claims Administrator discretion to waive these document requirements.  In order to establish Causation under the Customer Mix Test, a BEL claimant must provide supporting documentation of the type described in the above-referenced section.

With regard to application of the Customer Mix Test to specific factual patterns, the Claims Administrator provides the following illustrations concerning how this test is to be most reasonably applied:
(a) Project-based businesses:  When project-based businesses, such as construction companies, end a project in the regular course of business, the completion of those contracts will not be equated to the loss of total revenue generated by the customer(s) for purposes of the Customer Mix Test.
(b) Property owners/commercial tenants:  If a BEL claimant is the owner of a commercial property such as a shopping mall, the location of that claimant's customers shall be considered to be the location of the leased space in the shopping mall rather than the physical location of the headquarters for each retailer.

EXHIBIT B-3

## Policy 345 v 1: Economic Loss Claims:  Customer Mix Test

Comments and Decisions by the Parties:

1. **BP**
    a. Decision: Defer to Claims Administrator
    b. Date: 4/16/13
    c. Comment:

Question 1 As the Claims Administrator correctly observes, a claimant must satisfy a "Customer Mix Test" under the Modified V-Shaped Revenue Pattern and the Decline-Only Revenue Pattern options for meeting the BEL causation requirements. The Customer Mix Test is express in requiring proof of either "a decline of 10% in the share of total revenue generated by non-local customers" over a specified time period in 2010 compared to the same period in 2009 or "a decline of 10% in the share of total revenue generated by customers located in Zones A-C" over the same specified time periods. And "non-local" is expressly defined as customers that "reside more than 60 miles from a claimant business location." (Ex. 4B n.5) Moreover, the Customer Mix Test is express in identifying that the change in Customer Mix must be "reflected in" specified types of documentation. In negotiating the BEL causation framework, the parties were aware that some businesses may deal primarily in cash and that claimants may not retain or have access to the specified types of documentation. The Customer Mix Test is an option in which a lower revenue threshold causation test than the V-test is available for claimants that have the documentation to meet the test. If a claimant does not have access to the addresses of its customers and therefore lacks the documentation to comply with the Customer Mix Test, then the claimant does not satisfy the Customer Mix Test.  Question 2 There are claimants that will fail to satisfy the Customer Mix Test because their line of business does not lend itself to satisfying the criteria of the test. An owner of a commercial property such as shopping malls cannot satisfy the Customer Mix Test. While the tenant of a commercial property may be able to satisfy the Customer Mix Test, the property owner has tenants, not customers, and its tenants are fixed in the location of the shopping mall. There is no logic by which the property owner can experience a decline in the share of total revenue generated from "non-local customers" or "customers located in Zones A-C" over any time period as compared to another. Similarly, as the Claims Administrator observes in Question 3, construction companies are "project-based entities" and the Customer Mix Test likewise is not designed to apply to project-based entities. Rather, the "non-local customers" option under the Customer Mix Test is designed for retail businesses, such as restaurants, shopping mall tenants, t-shirt shops, where the mix of customers changes in the post-spill period of 2010 to include fewer non-local customers, as would occur if the area experienced a tourism decline. The other option under the Customer Mix Test, establishing a decline in share of total revenues from "customers located in Zones A-C," is designed for service providers, such as maid services and maintenance repair firms, that deliver services to customers located in Zones A-C such as to condominiums that tourists rent, and might have experienced a decline in customers if the area experienced a post-spill tourism decline. Notably, in addition to the V-test, claimants such as the owner of a shopping mall or a project-based entity may also look to the "Proof of Spill-Related Cancellations" test and establish cancellation of a

contract as the direct result of the spill that the claimant was not able to replace, e.g. a shopping mall tenant cancelled its lease and no replacement was found or a client of the construction company cancelled its project. As a general matter, it does not make any sense to look to the headquarters of the tenant or construction company client, but rather to examine if whether the test could logically be applied looking at the location of the shopping mall or construction site. Question 3 As explained in Question 2 above, project-based entities such as construction companies fail to satisfy the Customer Mix Test because their line of business does not lend itself to satisfying the criteria of the test. To account for contracts entered into prior to the spill, and thus unrelated to the spill, the Settlement Program would have to examine only new construction projects entered into in 2010 and compare the share of total contract revenue by new projects in Zones A-C under these contracts with the comparable share of total contract revenue for projects entered into in 2009. The fact that construction companies do not look at completion of projects as constituting a loss of customers is reflective of the fact that it is illogical for the Customer Mix to apply to project-based entities. (1/19/13); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

Should be published as a CA Decision. (4/2/13)

EXHIBIT B-3



**DEEPWATER HORIZON**
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-345 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | | |
|---|---|---|---|
| **Subject** | Business Economic Loss Claims: Customer Mix Test | | |
| **Active Date** | 5/31/12 | **Policy Impact** | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | Exhibit 4B |
| **Affected Claim Types and/or Review Processes** | | | BEL |

| II. Summary |
|---|
| The customer mix test must be "reflected in" specified types of acceptable documentation, e.g. customer credit card receipts, business documents reflecting contemporaneous recording of receipts or invoices listing customers by location. If no cash sale information is available, cash sales would not be included in the analysis of either Benchmark or Compensation Period customer mix. |

## Policy 345 v.0: Economic Loss Claims:  Customer Mix Test (Superseded by Policy 345 v.1)

Comments and Decisions by the Parties:

1.  **BP**
    a.  Decision:  Accept as a Final Policy
    b.  Date: 4/16/13
    c.  Comment:

    Agree. (2/11/13)

2.  **Class Counsel**
    a.  Decision:  Defer to Claims Administrator
    b.  Date: 4/2/13
    c.  Comment:

    Understand this is under discussion. (#350) (1/30/13); Appears to be Superseded by No. 345. (4/2/13)

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-354 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

## I. Profile

| Subject | Business Economic Loss Claims: Evaluation of Claimants with a Change in Taxpayer | |
|---|---|---|
| Active Date | 3/28/13 | Policy Impact | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision |
| Settlement Agreement Reference | | |
| Affected Claim Types and/or Review Processes | | BEL |

## II. Summary

See Final Policy Memo.

EXHIBIT B-3



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

# MEMORANDUM

TO:        **Class Counsel**
           **BP**

FROM:      **Patrick A. Juneau, Claims Administrator**

DATE:      **March 20, 2013**

RE:        **Announcement of Policy Regarding Claims Administration**

_____

       Under the terms of the Deepwater Horizon Economic and Property Damage Settlement Agreement ("Settlement Agreement"), the Claims Administrator is charged with the duty to "faithfully implement and administer the Settlement, according to its terms and procedures, for the benefit of the Economic Class, consistent with this Agreement, and/or as agreed to by the Parties and/or as approved by the Court." (Section 4.3.1 of the Settlement Agreement). Further, the Claims Administrator is charged with the responsibility to "work with Economic Class Members . . . to facilitate . . . assembly and submission of Claims Forms, including all supporting documentation necessary to process Claims Forms under the applicable Claims Processes . . . [and to] provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of this Agreement." (Section 4.3.7 of the Settlement Agreement).

       In accordance with these provisions, the Claims Administrator adopted the following policy affecting the administration of claims under the Settlement Agreement. The Claims Administrator announced this policy to the Parties on 3/7/13, asking the Parties to comment by 5:00 pm CT on 3/14/13. The Claims Administrator did not receive comments from BP or Class Counsel by that time. However, because the Parties have asked the Claims Administrator to categorize each claims administration policy according to its adoption process, the Claims Administrator needs to hear from each Party by 5:00 pm CT on March 21, 2013, as to whether the policy is to be placed in the Parties Agreed to Policy category or in the Claims Administrator Decision category.

       ***Business Economic Loss Claims: Evaluation of Claimants with a Change in Taxpayer Identification Number.*** The Internal Revenue Service assigns Employer Identification Numbers, also known as Federal Tax Identification Numbers ("TINs"), to identify business entities. There may be instances when a business undergoes a change in TIN during the Benchmark Period or Compensation Period years defined in the Settlement Agreement for General BEL, Start-Up BEL or Failed BEL claims. The Claims Administrator will follow the following principles in dealing with such claims.

1

**EXHIBIT B-3**



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

### A. TIN Used by Claimants in Claim Submissions.

All claimants must file the Registration Form, Claim Form, and W-9 with the TIN that is currently active at the time they submit the Form or W-9 to the Settlement Claims Administrator.  This requirement is in part based on the need for a current TIN to ensure that a claimant's identity can be confirmed, that the correct entity or individual is then paid, and that any payments are reported correctly to the IRS.

### B. The Effect of EIN and Business Changes on Claim Reviews.

Generally, there will be specific events that cause a business to change its TIN in the regular course of its business.  The Claims Administrator will review each scenario on a case-by-case basis.  For accounting purposes, the Claims Administrator will treat each claim as a General BEL claim, if there has been no substantial change in the business' operations during the Benchmark Period or Compensation Period.

The Claims Administrator has established the following general guidelines to assist in the evaluation of these scenarios.  These guidelines are subject to exceptions as required by claimant-specific circumstances, at the discretion of the Claims Administrator:

1. ***Businesses with Change in Ownership Only***:  When a business has changes in ownership but the TIN remains the same before and after the changes, the Claims Administrator will typically consider the entity to be one consistently operating business.  The entity will typically be required to file only one Registration and Claim Form.

2. ***Businesses with Change in Tax Identification Number Only.***  When a business changes its TIN but the ownership and nature of the business activity remain the same before and after the change, the Claims Administrator typically will consider the entity to be one consistently operating business.  The Claims Administrator typically will use both TINs in the analysis of such a claim.  The entity typically will be required to file only one Registration and Claim Form.

3. ***Businesses with Change in Ownership and Tax Identification Number***.  When a business experiences a change in both its TIN and its ownership:

   (a) *Substantive Change in Ownership During Benchmark Period – Newly Acquired Business:*  If the TIN of a business entity changes because of a substantive change in ownership during the Benchmark Period (*e.g.*, the entire business is sold to a third party), then the entity with the new TIN and ownership typically will be considered a newly acquired business.  A newly-acquired business typically will be treated as a General BEL claim if the claimant can document the claim with financials from the prior ownership to establish operating history for a Benchmark Period that includes all months for at least 2009, a 2010 Compensation Period, and 2011 (if needed necessary for the claimant to establish Causation), as required by the framework.  However, if the business cannot obtain the financials from the prior ownership, the Claims Administrator may evaluate the claim as a Start-Up BEL claim.

2

422833

EXHIBIT B-3



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

**Example**: A seafood restaurant located New Orleans was sold in August 2009 to a new owner at 100% ownership. Under this scenario, the new owner (owner at the time of the Spill) typically may file a General BEL claim, provided that the business operations have not changed since the prior ownership. Additionally, the new owner would need to obtain and provide the required documentation from the previous owner for the time period prior to the sale on August 2009. If the new owner cannot obtain these documents, it must file a Start-Up BEL claim.

(b) *No Substantive Change in Ownership, No Change in Operations*: If the TIN of a business entity changes because of a change in percentage of ownership, but the change does not constitute a substantive change in ownership and there is no change in the business' operations, then the Claims Administrator typically will use both TINs in the analysis of the claim.

**Example**: A seafood restaurant located in Lafayette is owned by the same two individuals before the Spill and after the Spill, but the business' TIN changed in January 2011 due to a change in the percentage ownership between these two individuals. The operations of the business do not change. In this example, the financials from both TINs would be included in the evaluation of the General BEL claim.

(c) *Change in Business Structure, No Change in Operations*: If the TIN of a business entity changes because the nature of the entity changes (*e.g.*, a sole proprietor changes to a partnership), but there is no change in the business' operations, then the Claims Administrator will typically use both TINs in the analysis of the claim.

**Example**: A footwear/apparel retailer located in Gulf Shores was wholly owned by one individual up until May 2009 and subsequently changed to a partnership of four owners. There was no change in the business' operations other than a mere change in business structure. The financials from both TINs would be included in the analysis of the General BEL claim.

(d) *Change in Business Operations During Benchmark Period*: If a business undergoes a material change in operating activities in the course of the change of ownership during the Benchmark Period years, the Accountant reviewers will use their judgment to determine if the business fits the Start-Up BEL or General BEL framework. Factors likely to be considered in determining whether there has been a material change in operating activities include but are not limited to: (i) the nature of the operations and (ii) the size and scope of the business activities.

**Example**: A seafood restaurant changed its TIN because of a change in business activity/operations from a restaurant to a charter fishing business in August 2009. Under this scenario, the Claims Administrator will treat the claim as a Start-Up BEL claim for a charter fishing business because of the substantial change in business activity.

422833

## Policy 354 v. 2: Business Economic Loss Claims: Evaluation of Claimants with a Change in Taxpayer

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  3/28/13
   c. Comment: N/A

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  3/28/13
   c. Comment: N/A

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
### ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-354 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Business Economic Loss Claims: Newly Acquired Businesses | | |
|---|---|---|---|
| Active Date | 8/24/12 | Policy Impact | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision | |
| Settlement Agreement Reference | | Exhibit 7 | |
| Affected Claim Types and/or Review Processes | | BEL | |

### II. Summary

We will treat an existing business that was acquired during the start-up period  as a Start-Up Business.  A newly-acquired business should be considered a standard business under the BEL rules if the claimant can document the claim with financials from prior ownership to establish operating history for a benchmark period, a 2010 compensation period, and 2011 (if needed for causation) as required by the framework. However, if the business undergoes a fundamental change in operating activities in the course of the change of ownership, we will use judgment to determine if the business fits the Start-Up or BEL framework.

EXHIBIT B-3

**Policy 354 v.1: Business Economic Loss Claims: Newly Acquired Businesses (Superseded by Policy 354 v.2)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as Final Policy
   b. Date: 4/16/13
   c. Comment:

   BP disagrees with the recommendation. If a business has more than "18 months of operating history," it does not meet the definition of a "Start-Up Business." It should proceed under the Business Economic Loss framework. (8/2/12); Agree with Class Counsel. See 105. (2/11/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   If a business was in operation and new ownership took over, it should not automatically revert to a start-up. Many businesses in the Gulf are family owned; it could simply be that the new owner is a different family member. If the business doesn't undergo a fundamental change and was operating prior to the spill (i.e. was not otherwise a "start-up"), it should generally be considered a standard business under the BEL rules if the claimant can document the claim with financials. The claimant should have the option for whichever available methodology provides the highest compensation. (8/2/12); Nos. 229 and 347 should be harmonized as a CA Decision. (1/30/13); Has apparently been superseded by No. 354. (4/2/13)

EXHIBIT B-3

# DEEPWATER HORIZON
## CLAIMS CENTER
### ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-354 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Newly Acquired Businesses as Start-Up Businesses | | |
|---|---|---|---|
| **Active Date** | 8/2/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | Exhibit 7 |
| **Affected Claim Types and/or Review Processes** | | | BEL |

### II. Summary

A newly-acquired business will be considered a standard business under the BEL rules if the claimant can document the claim with financials from prior ownership to establish operating history for a benchmark period, a 2010 compensation period, and 2011 (if needed for causation) as required by the framework. However, if the business undergoes a fundamental change in operating activities in the course of the change of ownership, the Claims Administrator will use judgment to determine if the business fits the Start-Up or BEL framework.

EXHIBIT B-3

## Policy 354 v.0: Business Economic Loss Claims: Evaluation of Claimants with a Change in Taxpayer (Superseded by Policy 354 v.1)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as Final Policy
   b. Date:  4/16/13
   c. Comment:

   BP disagrees with the recommendation. If a business has more than "18 months of operating history," it does not meet the definition of a "Start-Up Business." It should proceed under the Business Economic Loss framework. (7/31/12); Agree with Class Counsel comment. (2/11/13); Per CA Action, this Policy is Superseded by Policy ID 354. Accordingly, BP understands this policy will not be released, and it need not comment upon the classification.  BP requests CA advise on whether BP's understanding is correct. If not, BP will provide a final comment. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   If a business was in operation and new ownership took over, it should not automatically revert to a start-up. Many businesses in the Gulf are family owned; it could simply be that the new owner is a different family member. If the business doesn't undergo a fundamental change and was operating prior to the spill (i.e. was not otherwise a "start-up"), it should generally be considered a standard business under the BEL rules if the claimant can document the claim with financials. The claimant should have the option for whichever available methodology provides the highest compensation. (7/31/12); Nos. 229 and 247 should be harmonized as a CA Decision. (1/30/13); Apparently superseded by No. 354. (4/2/13)

EXHIBIT B-3

# DEEPWATER HORIZON
## CLAIMS CENTER
### ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-355 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | |
|---|---|---|
| **Subject** | Business Economic Loss Claims: Documentation Requirements | |
| **Active Date** | 3/28/13 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | |
| **Affected Claim Types and/or Review Processes** | | BEL |

| II. Summary |
|---|

1. The October 22, 2012 Reminder Regarding Documentation Requirements for Business Economic Loss ("BEL") Claims is an accurate statement of the Claims Administrator's policy with regard to submission of documentation required to establish monthly revenues and expenses. An additional copy of that Reminder is attached for ease of reference.

2. In those instances where monthly profit and loss statements ("P&L's") were not maintained in the regular course of business, the claimant is to create monthly P&L's based on contemporaneous alternate source documents (which may include, but are not limited to: invoices supporting revenues, bills supporting expenses, purchase orders, bills of lading, contracts, leases, bank statements, schedules, check registers, canceled checks, sales journals, etc.). To the extent that claimants are not in possession of supporting documentation, they are encouraged to seek and obtain such documentation from relevant third parties. If the claimant engages an accountant to create these monthly P&L's, such accounting expenses may be submitted for reimbursement in accord with the Claimant Accountant Support provisions of the Settlement Agreement. The Claims Administrator may allow for such created monthly P&L's to be in "summary" form, provided the submission contains data regarding all revenue and expenses in sufficient detail to allow the Claims Administrator to properly apply the terms of the Settlement Agreement to that specific claim. The Claims Administrator reserves the right to require submission of all or parts of the underlying source documentation to verify the accuracy of any P&L's that are created.

3. Claimants are not permitted to merely allocate revenues or expenses equally over a twelve month period. Rather, claimants are required to submit sufficient documentation to establish actual monthly revenues and expenses as required by the Settlement Agreement.

4. In evaluating revenues and expenses on a monthly basis when no monthly P&L's were maintained in the regular course of business, the Claims Administrator reserves the right to determine an appropriate level of supporting and/or explanatory documentation and information for the circumstances of a given claim. It is anticipated that in such instances for those claims involving very small dollar amounts, a lesser level of detail may be required than may be required for larger or more complicated claims. The Claims Administrator's accounting team will use its professional judgment in determining the appropriate level of detail required to resolve questions presented by a particular claim. In determining the level of detail required, the Claims Administrator may take into account such factors as the nature, size and complexity of the business and the historical patterns of revenues and expenses.

EXHIBIT B-3

## Policy 355 v.1: Business Economic Loss Claims: Documentation Requirements

Comments and Decisions by the Parties:

A. **Requested Input from Parties**

    1. **BP**
        a. Decision: Oppose
        b. Date: 3/15/13
        c. Comment:

        See attached memo.

    2. **Class Counsel**
        a. Decision: Oppose
        b. Date: 3/15/13
        c. Comment:

        Class Counsel respectfully submit that the March 5th Policy Statement is a departure from both the October 22nd Alert and Sections 1(a)-(c) of the October 8th Revisions and Clarifications to the September 25th Statement.   Class Counsel stand by our previous comments submitted on September 19th and September 28th, (attached).

B. **Policy Announced to Parties for Positions**

    1. **BP**
        a. Decision: Defer to Claims Administrator
        b. Date: 3/28/13
        c. Comment: N/A

    2. **Class Counsel**
        a. Decision: Defer to Claims Administrator
        b. Date: 3/28/13
        c. Comment: N/A

# Memorandum

From:          **BP Counsel**
To:            **Patrick A. Juneau, Claims Administrator**
Date:          **March 15, 2013**

Re:            **BP Response Regarding Proposed Announcement of Policy Decision**
               **Regarding Claims Administration**

       This memorandum responds to the Claims Administrator's Announcement of Policy
Decisions Regarding Claims Administration dated March 5, 2013 pertaining to Business
Economic Loss Claims:  Documentation Requirements.  BP responds that it would be premature
for the Claims Administrator to post the four proposed Policy Decisions.  Before providing final
comments on the Claims Administrator's proposed Policy Decisions, BP has questions about the
proposed Policy Decisions that we would like addressed.  We request the opportunity to gain an
understanding from the Claims Administrator with respect to what is intended with regard to
these proposed Policy Decisions.

**Claims Administrator's Proposed Policy Decision No. 1:**

The October 22, 2012 Reminder Regarding Documentation Requirements for Business
Economic Loss ("BEL") Claims is an accurate statement of the Claims Administrator's policy
with regard to submission of documentation required to establish monthly revenues and
expenses.  An additional copy of that Reminder is attached for ease of reference.

**BP Response:**

BP has questions regarding how the Claims Administrator's is implementing the DHECC Alert
dated October 22, 2012 that is attached in connection with this proposed Policy Decision.

Section IIA of the Alert provides that claimants are required to submit monthly and annual profit
and loss statements that were maintained in the course of their business.  We would like to
understand what efforts the Settlement Program undertakes to ascertain whether statements
provided by claimants were maintained as such.

Section IIB of the Alert provides that a claimant that did not maintain monthly profit and loss
statements may create such monthly statements based on contemporaneous alternate source
documents.  We would like to gain an understanding of what type of work product the Claims
Administrator is proposing to accept with regard to a claimant's after-the-fact creation of
"monthly statements," and what work the Claims Administrator is doing or proposing to do with
regard to verification of such monthly statements submitted by claimants.

Section IIC provides that if a BEL claimant does not maintain monthly profit and loss statements
and if creating them would result in an undue burden, the Claims Administrator's accountant
team will work with the claimant "to devise monthly financial statements sufficient to enable

evaluation of the claim." We would like to gain an understanding of the work product the Settlement Program is proposing its accountants will create with regard to "monthly financial statements sufficient to enable evaluation of the claim."

**Claims Administrator's proposed Policy Decision 2:**

In those instances where monthly profit and loss statements ("P&L's") were not maintained in the regular course of business, the claimant is to create monthly P&L's based on contemporaneous alternate source documents (which may include, but are not limited to: invoices supporting revenues, bills supporting expenses, purchase orders, bills of lading, contracts, leases, bank statements, schedules, check registers, canceled checks, sales journals, etc.). To the extent that claimants are not in possession of supporting documentation, they are encouraged to seek and obtain such documentation from relevant third parties. If the claimant engages an accountant to create these monthly P&Ls, such accounting expenses may be submitted for reimbursement in accord with the Claimant Accountant Support provisions of the Settlement Agreement. The Claims Administrator may allow for such created monthly P&Ls to be in "summary" form, provided the submission contains data regarding all revenue and expenses in sufficient detail to allow the Claims Administrator to properly apply the terms of the Settlement Agreement to that specific claim. The Claims Administrator reserves the right to require submission of all or parts of the underlying source documentation to verify the accuracy of any P&Ls that are created.

**BP Response:**

We would like to understand how the Claims Administrator determines when a claimant did not maintain monthly P&L statements in the regular course of business, and what the Claims Administrator is proposing with regard to permitting submission of monthly P&Ls in "summary" form. Likewise, we would like to better understand what is being done by the Claims Administrator to verify accuracy of P&Ls that are submitted by claimants, and in what instances the Claims Administrator is proposing to forego review of source documentation to verify the accuracy of P&Ls submitted by a claimant.

**Claims Administrator's proposed Policy Decision 3:**

Claimants are not permitted to merely allocate revenues or expenses equally over a twelve month period. Rather, claimants are required to submit sufficient documentation to establish actual monthly revenues and expenses as required by the Settlement Agreement.

**BP Response:**

We would to understand what the Claims Administrator means with regard to the statement that "claimants are required to submit sufficient documentation to establish actual monthly revenues and expenses as required by the Settlement Agreement."

**Claims Administrator's proposed Policy Decision 4:**

2

In evaluating revenues and expenses on a monthly basis when no monthly P&L's were maintained in the regular course of business, the Claims Administrator reserves the right to determine an appropriate level of supporting and/or explanatory documentation and information for the circumstances of a given claim. It is anticipated that in such instances for those claims involving very small dollar amounts, a lesser level of detail may be required than may be required for larger or more complicated claims. The Claims Administrator's accounting team will use its professional judgment in determining the appropriate level of detail required to resolve questions presented by a particular claim. In determining the level of detail required, the Claims Administrator may take into account such factors as the nature, size and complexity of the business and the historical patterns of revenues and expenses.

**BP Response:**

As noted above, BP would like to understand how the Claims Administrator makes a determination that no monthly P&Ls were maintained by the claimant. BP would like to understand what level of detail the Claims Administrator is requiring and what is intended by the Claims Administrator with regard to differing levels of detail required to support a BEL claim.

**Footnote to proposed Policy Decision:**

The Claims Administrator has previously issued the following two notices addressing this set of issues: (1) October 8, 2012 Revisions to or Clarifications of Selected Policy Decisions [items 1(a) and 1(b)], and (2) October 22, 2012 Reminder Regarding Documentation Requirements for BEL Claims. This Announcement of Policy is intended to clarify further the issues raised by those prior announcements and henceforth shall be considered the complete controlling policy on this subject.

**BP Response:**

BP is not clear from the proposed Policy Decisions precisely what the Claims Administrator intends with regard to what remains in place with regard to the October 8, 2012 Revisions and October 22, 2012 Reminder documents as compared to what is superseded by the proposed Policy Decision, and so we request some further clarification.

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-355 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

## I. Profile

| Subject | Alternate Source Documents for Revenues and Expenses | |
|---|---|---|
| **Active Date** | 10/1/12 | **Policy Impact** | ☐All Claims Regardless of Active Date ☑All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Exhibit 4A |
| **Affected Claim Types and/or Review Processes** | | BEL |

## II. Summary

Pursuant to Section 4 of Exhibit 4A to the Settlement Agreement, the Claims Administrator has adopted the following interpretations of the Settlement Agreement with regard to the documents required to establish monthly revenues and expenses for the claimed Benchmark Period, 2010 and, if applicable, 2011:

(a) Monthly Allocations of Revenues/Expenses:  If the claimant has submitted documents sufficient to determine the annual revenues and expenses of the business for a year, but no monthly profit and loss statements or other documents showing revenues and expenses by month for that year are available, the Claims Administrator may allocate the total annual revenues and expenses equally over the 12 months, or use alternative methods or documents to allocate the amounts over the 12 months.  The reviewing accountants will use their professional judgment to determine the most appropriate means for such allocation under the circumstances of a particular claim.  The claimant may be required to submit monthly profit and loss statements or other monthly documents for the year if the Claims Administrator in his discretion determines a need for such documents to resolve questions presented by a particular claim.  This policy statement refers only to calculations regarding the proper amount of an award for a given claim.  This policy statement does not apply to application of causation requirements set out in the Settlement Agreement.  For purposes of satisfying causation requirements, a claimant is to provide "monthly and annual profit and loss statements (which identify individual expense line items and revenue categories), or alternate source documents establishing monthly revenues and expenses for the claimed Benchmark Period, 2010, and if applicable, 2011." (Exhibit 4A, Sec. 4).

(b) Monthly Allocations of Owner and Officer Payroll:  If the claimant has not submitted documents showing the amounts paid monthly as salary or otherwise to owners and officers during a year, the Claims Administrator may allocate the income shown on the owner's or officer's W-2 annual statement and/or tax return for that year equally over 12 months, or use alternative methods or documents to allocate the amounts over the 12 months.  The reviewing accountants will use their professional judgment to determine the most appropriate means for such allocation under the circumstances of a particular claim.  The claimant may be required to submit monthly profit and loss statements or other documents showing those amounts on a monthly basis if the Claims Administrator in his discretion determines a need for such documents to resolve questions presented by a particular claim.  This policy statement refers only to calculations regarding the proper amount of an award for a given claim.  This policy statement does not apply to application of causation requirements set out in the Settlement Agreement.  For purposes of satisfying causation requirements, a claimant is to provide "monthly and annual profit and loss statements (which identify individual expense line items and revenue categories), or alternate source documents establishing monthly revenues and expenses for the claimed Benchmark Period, 2010, and if applicable, 2011." (Exhibit 4A, Sec. 4).

(c) Restatement of Profit and Loss Statements:  If the claimant's profit and loss statements for a year were prepared on an accrual basis, the claimant will not be permitted to restate such statements on a cash basis in connection with the submission of a Business Economic Loss claim, for such restatement could result in a loss or a greater loss not related to the Spill but instead is a result only of the timing of cash received.  If the claimant's profit and loss statements for a year were prepared on a cash basis, the claimant may be permitted to restate such statements on an accrual basis in connection with the submission of a Business Economic Loss.

## Policy 355 v.0: Alternate Source Documents for Revenues and Expenses (Superseded by Policy 355 v.1)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

The BEL framework expressly requires monthly profit and loss ("P&L") statements or "alternate source documents establishing monthly revenues and expenses." (See Ex. 4A, Item 4) These documents are essential to implementing the BEL frameworks' methodology of evaluating causation and damages based on the actual monthly financial experience of claimants. The decisions in Items 1(a)-(b) of the Announcement violate the requirements of Exhibit 4A of the Settlement Agreement because they substitute accountant discretion in place of mandatory documentation setting forth the actual monthly financial experience of the claimant. BP does not object to the decision in Item 1(c) subject to certain clarifications. (a) Monthly Allocations of Revenues/Expenses - The Announcement appears to allow the Settlement Program to waive the monthly financial documentation requirements and to instead use annual financial information to create an allocated proxy for monthly performance. The Settlement Program does not have the authority to waive express documentation requirements. The entire BEL framework depends on the input of accurate monthly financial data--that is why they are required. For example, accurate monthly data are required for the causation V-test, calculating compensation, and calculating growth factors. Because the claimant's actual monthly results are the foundation for the causation and compensation evaluations under the BEL framework, use of allocated proxy rather than actual data could severely distort the resulting outcomes, especially (but not limited to) in the tourism industry, which experiences substantial seasonal and monthly fluctuations in revenues and expenses. BP has previously shared this view with you and conditioned its prior agreement to compromises regarding profit and loss statements to maintenance of this critical requirement. The unauthorized waiver of the mandatory monthly revenues and expenses financial information requirement also creates a substantial risk of fraud by encouraging the omission of the required monthly financial data in claims submissions. (b) Monthly Allocations of Owner and Officer Payroll - Similarly, and for the same reasons discussed above, the Settlement Program is not authorized to waive the requirement for monthly owner and officer payroll documentation and to instead use accounting judgment to project possible monthly performance based on annual data. In addition, it is hard to conceive why such a waiver would be needed, even if it were authorized. Even if a business claimant did not maintain monthly financial statements breaking out owner/officer compensation, it would be a simple and quick task to review payroll records or the general ledger to identify and sum such payments. (c) Restatement of Profit and Loss Statements BP agrees with the Claims Administrator that a claimant that maintained P&Ls on an accrual basis is not permitted to restate them to cash-basis financial statements. As the Administrator correctly notes, cash basis statements create a

risk of distorting actual economic performance of companies, particularly those that have "lumpy" revenue and expenses--e.g., that receive lump-sum payments in one month for work done over several months. BP also agrees with the Claims Administrator that claimants should be permitted to restate their contemporaneously-maintained financial statements on an accrual basis, provided, however, that the claimant (1) provides a copy of the original cash-basis financial statements and (2) briefly describes the methodology used to prepare the restated financial statements. In order to accurately apply the Settlement Agreement, it is important that the Settlement Program's accountants investigate apparent anomalies in the data--e.g., unusually large variances in revenue or expense between periods--to ensure that the data have been compiled accurately and consistently across those periods. (9/28/12)

2. **Class Counsel**
   a. Decision: Oppose
   b. Date: 4/2/13
   c. Comment:

Section 1(a): Monthly Allocations of Revenue/Expenses Class Counsel agree with the Claims Administrator's Policy for the reasons stated in the Claims Administrator's September 25th Memo and for the additional reasons outlined in Class Counsel's Memo to the Claims Administrator re "Monthly Profit & Loss Documentation" dated September 19, 2012. We assume, and would agree, that this policy can be further applied to Semi-Annual and/or Quarterly revenue and expenses where either Quarterly or Semi-Annual (but not Monthly) Profit & Loss Statements were generated and maintained by the Claimant in the ordinary course of business.

Section 1(c): Restatement of Profit & Loss Statements Class Counsel respectfully disagree with the stated Policy to the extent that: (i) a business that prepared both cash and accrual reports for different purposes in the ordinary course of business would be prevented from presenting its claim on a cash basis; (ii) a business that maintained the underlying data in such a way that either cash or accrual reports could (and can) be readily generated would be prevented from presenting its claim on a cash basis; or (iii) businesses that prepared reports on a cash basis in the ordinary course of business might have their claims delayed, reduced or denied. The primary reference to monthly profit and loss statements is in Exhibit 4A to the Agreement, which states that the claimant is required to produce: Monthly and annual profit and loss statements (which identify individual expense line items and revenue categories), or alternate source documents establishing monthly revenues and expenses for the claimed Benchmark Period, 2010 and, if applicable, 2011. Profit and loss statements shall identify the dates on which they were created. The Claims Administrator may, in his discretion, request source documents for profit and loss statements. If there is a discrepancy between amounts reflected in a tax return and comparable items reflected in a profit and loss statement for the same period, the Claims Administrator may request the claimant to provide additional information or documentation. This provision is supplemented by the Definition of "Contemporaneous" which provides that: "Contemporaneous" or "Contemporaneously prepared" records or documentation shall mean documents or other evidence generated or received in the

EXHIBIT B-3

ordinary course of business at or around the time period to which they relate; in the case of financial statements, this shall include all periodic financial statements regularly prepared in the ordinary course of business. In addition, "contemporaneous" or "contemporaneously" prepared evidence or documentation, even if not proximate in time to the event or occurrence to which it relates, shall include (1) documentation that is based on or derived from other data, information, or business records created at or about the time of the event, occurrence or item in question, (2) a statement that is consistent with documentation created at or about the time of the event, occurrence or item in question, or (3) would support a reasonable inference that such event, occurrence, or other item in question actually occurred. Nothing in these provisions or elsewhere in the Settlement Agreement specifies the accounting method which must be used to create the monthly profit and loss statements. A cash statement is just as valid as an accrual statement, and we would respectfully submit that the Claims Administrator lacks authority to deny a claim based on an accurate and "Contemporaneous" cash statement. Section 4.3.7 of the Agreement states that: The Claims Administrator . . . shall use its best efforts to provide Economic Class Members with . . . opportunities . . . so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payments to which the Economic Class Member is entitled under the terms of the Agreement. To the extent that a policy decision would preclude the utilization and submission of a standard and accepted method of accounting, widely employed by small businesses, such policy would be contrary to both the letter and the spirit of the Settlement Agreement. Similarly, the Claims Administration Vendors are required under Section 4.3.8 to: ...evaluate and process the information in the completed Claim Form and all supporting documentation . . . to produce the greatest Economic Damage Compensation Amount that such information and supporting documentation allows . . . . A policy precluding the use of the cash method in certain cases runs contrary to this mandate. Second, there is nothing "unfair" in allowing a claimant to select either the cash or accrual accounting method so long as the claimant uses the same method for both the Benchmark Period and the Loss Period. As long as the claimant uses the same method for both the Benchmark and the Loss periods, there is no "manipulation" of the claim. The Administrator's Memo expresses concern that the timing of cash collections could have an impact on the claim by increasing the loss for reasons unrelated to the Oil Spill. This risk was accounted for by BP in negotiating and agreeing to the final Causation and Compensation Frameworks, and frankly exists with any cash basis profit & loss statements, not just accrual profit and loss statements that are re-stated to cash. Disallowing this flexibility leads to unfairness and inconsistency among different claimants and creates problems in application. If, for example, a claimant did not produce monthly financial statements in the ordinary course of business, that claimant should have the option of creating such monthly P&Ls from contemporaneous data using whichever method it chooses. And, if that is the case: Why should a business that produced an accrual statement lose that opportunity? Moreover, many small businesses keep their books both ways. Smaller operations using Quick Books can effectively produce either version at the push of a button. And almost all businesses now maintain their books in an electronic format. Frequently, both methods are readily available to the business. Even though they may never print a set of monthly or even annual statements. Others may maintain monthly information on a cash basis, and make adjustments to

EXHIBIT B-3

convert to accrual at year-end. Given the multitude of different scenarios, it is difficult to determine whether profit and loss statements "were prepared on an accrual basis". As a result of this Policy, many businesses could have their claims rejected, reduced or delayed solely because they chose to print out statements in a certain format instead of simply maintaining the information in electronic form. Further, how will the Program determine that accrual statements were used in the ordinary course of business? Many claimants produce monthly cash reports, but then reconcile book income based on the accrual method for Tax Return purposes. In fact, some businesses use monthly statements based on the cash method, but by regulation are required to show annual income on based on the accrual method on their tax returns. Will those Claimants be forced to use the accrual method, even though he generated monthly P&Ls on a cash basis? Are they now forced to go back and produce accrual monthly P&Ls? Class Counsel respectfully suggest that this Policy is unnecessary, inconsistent with the terms of the Settlement Agreement, and was never disclosed to the Class. (9/28/12); Should be promulgated as a CA Decision. (1/30/13); Appears to be superseded by No. 366. (4/2/13)

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
#### ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-361 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | | |
|---|---|---|---|
| **Subject** | Business Economic Loss Claims: Fixed and Variable Expenses | | |
| **Active Date** | 4/23/13 | **Policy Impact** | ☐All Claims Regardless of Active Date<br>☑All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

| II. Summary |
|---|
| The Claims Administrator will treat expenses as Variable or Fixed if they fall within either of those categories pursuant to Exhibit 4A Attachment D.  If an expense does not fit the description of the Variable or Fixed expense categories in Exhibit 4D Attachment A, the accountants will use discretion to apply the classification that best conforms to delineations made by the Parties, as reflected in Ex. 4D. |

EXHIBIT B-3

## Policy 361 v.4: Business Economic Loss Claims: Fixed and Variable Expenses

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/16/13
   c. Comment:

   Should be published as a CA Decision, but the Policy should be: "...the accountants will use discretion to apply the classification that best conforms to delineations made by the Parties, as reflected in Ex. 4D. (4/19/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Should be published as a CA Decision, but the Policy should be: "...the accountants will use discretion to apply the classification that best conforms to delineations made by the Parties, as reflected in Ex. 4D. (4/2/13)

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-361 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---------|----------------------------------------|

## I. Profile

| Subject | Business Economic Loss Claims: Account Categorization | |
|---------|------------------|---|
| **Active Date** | 7/15/12 | **Policy Impact** | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Exhibit 4D |
| **Affected Claim Types and/or Review Processes** | | BEL |

## II. Summary

Accountants should have the ability to reclassify the categorization of an account (regardless of impact to type - fixed/variable) as seen on the claimant's P&L to ensure that the true nature of the account is reflected properly within the business economic loss calculation.

EXHIBIT B-3

**Policy 361 v.3: Business Economic Loss Claims: Account  Categorization
(Superseded by Policy 361 v.4)**

Comments and Decisions by the Parties:

1. **BP**
   a.  Decision:  Defer to Claims Administrator
   b.  Date:  4/16/13
   c.  Comment: N/A

2. **Class Counsel**
   a.  Decision:  Defer to Claims Administrator
   b.  Date:  4/2/13
   c.  Comment:

Needs to be harmonized as a CA Interpretation with Nos. 51, 62, 134, and 165. (1/30/13);
Appears to be superseded by No. 361. (4/2/13)

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-361 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | |
|---|---|
| Subject | Business Economic Loss Claims: Expense Classification |
| Active Date | 7/15/12 | Policy Impact | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision |
| Settlement Agreement Reference | | Exhibit 4D |
| Affected Claim Types and/or Review Processes | | BEL |

| II. Summary |
|---|
| Accountants should use their discretion when applicable in order to properly classify an account as Fixed or Variable based on its historical correlation with sales regardless of the title provided in the claimant's P&L's. |

EXHIBIT B-3

## Policy 361 v.2: Business Economic Loss Claims: Expense Classification (Superseded by Policy 361 v.3)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment: N/A

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

Needs to be harmonized as a CA Interpretation with Nos. 51, 134, 165 and 180. (1/30/13); Appears to be superseded by No. 361. (4/2/13)

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-361 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Business Economic Loss Claims: Fixed and Variable Expenses | |
|---|---|---|
| Active Date | 6/26/12 | Policy Impact | ☑ All Claims Regardless of Active Date ☐ All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision |
| Settlement Agreement Reference | | Exhibit 4D |
| Affected Claim Types and/or Review Processes | | BEL |

### II. Summary

To the extent expenses fall within a category defined as "Fixed" or "Variable" in Exhibit A, the definition applicable to that category should be applied

EXHIBIT B-3

**Policy 361 v.1: Business Economic Loss Claims: Fixed and Variable Expenses (Superseded by Policy 361 v.2)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Accept as Final Policy
   b. Date: 4/16/13
   c. Comment:

   Agree. (2/11/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Needs to be harmonized as a CA Interpretation with Nos. 51, 62, 165 and 180. (1/30/13);
   Appears to have been superseded by No. 361. (4/2/13)

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS.

| Pol-361 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

## I. Profile

| Subject | Business Economic Loss Claims: Expense Categorization |
|---|---|
| **Active Date** | 5/22/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | Exhibit 4C |
| **Affected Claim Types and/or Review Processes** | | | BEL |

## II. Summary

All expenses should match the negotiated categories of Fixed or Variable, but if necessary we will allocate partially Fixed/Variable or consider an alternate categories.

## Policy 361 v.0: Business Economic Loss Claims: Expense Categorization
## (Superseded by Policy 361 v.1)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   The expenses should be matched to the negotiated categories. In the rare circumstance, if it is impossible to categorize a certain expense into a single Att. A category, judgment will be required to categorize the expense, which may result in an allocation between categories. (5/22/12)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Allocate. (5/15/12); Needs to be harmonized as a CA Interpretation with Nos. 62, 134, 165, and 180. (See Note on No. 62). (1/30/13); Appears to be Superseded by No. 361. (4/2/13)

EXHIBIT B-3

## DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-175 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Business Economic Loss Claims: Line Item Categorization | |
|---|---|---|
| **Active Date** | 7/15/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Exhibit 4D |
| **Affected Claim Types and/or Review Processes** | | BEL |

### II. Summary

Accountants should use judgment and categorize line items as Other (N/A), Owner/Officer Salaries (FIXED), Other (FIXED), or Other (VARIABLE) as appropriate in order to reflect the operations of the business.  This would generally mean that these types of accounts (i.e., non-operating accounts) would be categorized as Other (N/A).

EXHIBIT B-3

## Policy 175: Business Economic Loss Claims: Line Item Categorization (Superseded by Policy 361 v.4)

Comments and Decisions by the Parties:

### A. Compendium Comment

    **1. BP**
        a. Decision: Defer to Claims Administrator Decision
        b. Date: 4/16/13
        c. Comment:

        BP objects to making this policy available publicly on the grounds that the description is too vague with regard the work accountants will perform. Additionally, BP objects because has no record of this policy having been issued in 7/15/12 as reflected in Column D or having been provided an opportunity to respond, and requests it be provided with a copy of prior communications from the Settlement Program to the Parties regarding this policy and that it be provided an opportunity to comment.

    **2. Class Counsel**
        a. Defer to Claims Administrator Decision
        b. Date: 4/2/13
        c. Comment:

        Can be promulgated publicly. (1/30/13); Should be published as a CA Decision. (4/2/13)

### B. Policy Keeper Comment

    **1. BP**
        a. Decision: Defer to Claims Administrator Decision
        b. Date: 5/23/13
        c. Comment:

        BP defers to the Claims Administrator for this policy, but asserts that the policy is vague with regard to the work accountants will perform in implementing this policy. BP asserts that the Claims Administrator must properly categorize line items for purposes of the various calculations to be performed under the terms of the Settlement Agreement with regard to entities asserting BEL claims.

    **2. Class Counsel**
        a. Defer to Claims Administrator Decision
        b. Date: 5/22/13
        c. Comment: N/A

EXHIBIT B-3

**DEEPWATER HORIZON**
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-362 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Operating History of and Definition of Start-Up Businesses | | |
|---|---|---|---|
| **Active Date** | 4/23/13 | **Policy Impact** | ☐All Claims Regardless of Active Date<br>☑All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

### II. Summary

For purposes of inclusion in the Start-Up framework, the Claims Administrator will define operating history as the date that a Start-Up business begins incurring revenues or expenses, whichever is most beneficial for the claimant. If a business can establish that it incurred Start-Up expenses before April 20, 2010, it will be eligible for compensation, even if it did not generate revenue before April 20, 2010; however, only months in which the business was open for business will be considered compensable months.

EXHIBIT B-3

## Policy 362: Operating History of and Definition of Start-Up Businesses

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Should be published as a CA Decision. (4/2/13)

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-367 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

## I. Profile

| Subject | Business Economic Loss Claims: Document Requirements |
|---|---|
| **Active Date** | 4/23/13 | **Policy Impact** | ☐ All Claims Regardless of Active Date<br>☑ All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | | BEL |

## II. Summary

If Owner/Officer compensation and Non-Owner/Officer compensation is not separated out on the claimant P&L, we will request sufficient information and documentation from claimant to properly delineate.

EXHIBIT B-3

## Policy 367 v.1: Business Economic Loss Claims: Document Requirements

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Should be published as a CA Decision, but should only say "request" not "obtain". At some point, depending on the nature of the business and the records, this may become impossible, or at least unduly burdensome. (4/2/13)

EXHIBIT B-3

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-367 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | |
|---|---|---|
| **Subject** | Business Economic Loss Claims: Document Requirements | |
| **Active Date** | 5/24/12 | **Policy Impact** ☒All Claims Regardless of Active Date ☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Exhibit 4A |
| **Affected Claim Types and/or Review Processes** | | BEL |

| II. Summary |
|---|
| If Owner/Officer compensation and Non-Owner/Officer compensation is not separated out on the claimant P&L, we will obtain sufficient information and documentation from claimant to properly allocate. |

EXHIBIT B-3

**Policy 367 v.0: Business Economic Loss Claims: Document Requirements (Superseded by Policy 367 v.1)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Accept as a Final Policy
   b. Date: 4/16/13
   c. Comment:

   Agree. (2/11/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Needs to be harmonized as a CA Interpretation with Nos. 51, 134, 165 and 180.(Note, however, that when a business is unable to allocate payroll, the claimant is given a default or incomplete notice, when the Program should just do the best they can, as claimant just cannot do so. Number 62 read together with number 51 indicates (correctly) that the Program is going to allocate, but, based on our experience, they are not doing it.) (1/30/13); Appears to be Superseded by No. 367. (4/2/13)

EXHIBIT B-3