# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-368 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | |
|---|---|
| **Subject** | Business Economic Loss Claims: Multi-Facility Businesses |
| **Active Date** | 4/23/13 |

| **Active Date** | 4/23/13 | **Policy Impact** | ☐All Claims Regardless of Active Date<br>☑All Claims Greater than Active Date |
|---|---|---|---|
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | | BEL |

| II. Summary |
|---|
| For Multi-Facility Businesses filing separate claims, we will apply causation presumption, standards and RTP to the various portions of the claim depending on the nature and location of each Facility in the Multi-Facility Business. |

EXHIBIT B-4

## Policy 368 v.1: Business Economic Loss Claims: Multi-Facility Businesses

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Should be published as a CA Decision. (4/2/13)

EXHIBIT B-4

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-368 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

## I. Profile

| Subject | Business Economic Loss Claims: Multi-Facility Businesses | |
|---|---|---|
| Active Date | 5/26/12 | Policy Impact | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision |
| Settlement Agreement Reference | | Exhibit 5 |
| Affected Claim Types and/or Review Processes | | BEL |

## II. Summary

We will apply causation presumption, standards and RTP to the various portions of the claim depending on the nature and location of each Facility in the Multi-Facility Business.

EXHIBIT B-4

**Policy 368 v.0: Business Economic Loss Claims: Multi-Facility Businesses (Superseded by Policy 368 v.1)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   The claim is "consolidated" in name only. The facilities are analyzed separately, as the framework indicates. (5/5/12); BP stands by its original response. (5/17/12); Responding to J. Rice 5/21/12 Comments: Joe's point is mathematically correct if each facility is in the same zone and industry (and assuming each facility satisfies the causation requirements); however, this does not change the fact that the framework requires a facility-by-facility analysis. Certain facilities may not satisfy the causation requirements. Certain facilities may be in different zones or industries in which case different RTPs may apply. (5/24/12)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   J. Rice: If all facilities are in the same Zone and Industry no separate evaluation is needed (5/21/12).; S. Herman: The claim is submitted as a "consolidated" claim, and then the Program will apply causation presumption / standards and RTP to the various portions of that claim depending on the nature and location of each Facility. How the Program does this will be somewhat claim-specific, and will depend on the nature of the business, the way the business has maintained its records, and the location of the facilities. If all of the facilities are located in the same Zone and are of the same nature, then only one causation presumption / standard and RTP will apply. If the facilities are located in different Zones (and/or are of different natures) then the Program should fairly apply the different standards and/or RTPs to the costs and revenue of each Facility. (5/26/12); This is incorrect if the claim is Consolidated. See No. 57 (and Exhibit 5). (1/30/13); Appears to be Superseded by No. 368. (4/2/13)

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-369 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Business Economic Loss Claims: Document Requirements | | |
|---|---|---|---|
| Active Date | 4/23/13 | Policy Impact | ☐All Claims Regardless of Active Date<br>☑All Claims Greater than Active Date |
| Type of Decision | | | Claims Administrator Decision |
| Settlement Agreement Reference | | | |
| Affected Claim Types and/or Review Processes | | | BEL |

### II. Summary

Pursuant to agreement by the Parties, if a claimant has 11 out of 12 months worth of P&L data and the annual totals, we will calculate the missing 12th month by comparing to the annual financial totals.

## Policy 369 v.1: Business Economic Loss Claims: Document Requirements

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Classify as CA Decision.

2. **Class Counsel**
   a. Decision: Accept as a Final Policy
   b. Date: 4/2/13
   c. Comment:

   Should be published as a Clarification Agreed To by the Parties. (4/2/13)

EXHIBIT B-4

# DEEPWATER HORIZON
## CLAIMS CENTER
### ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-369 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Business Economic Loss Claims: Document Requirements |
|---|---|
| Active Date | 5/26/12 | Policy Impact | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| Type of Decision | | | Claims Administrator Decision |
| Settlement Agreement Reference | | | Exhibit 4A |
| Affected Claim Types and/or Review Processes | | | BEL |

### II. Summary

Under the GCCF, if ten months worth of P&L data and the annual totals were provided, analysts estimated the amount for the remaining months by spreading the remainder over those months. We will require the claimant to provide the missing two months of P&L statements. If the claimant only has quarterly P&L statements, the claimant must provide all quarterly P&L statements for the relevant time periods. As of October 2012, pursuant to agreement by the Parties, if a claimant has 11 out of 12 months worth of P&L data and the annual totals, we will estimate the P&L's for the missing month.

EXHIBIT B-4

## Policy 369 v.0: Business Economic Loss Claims: Document Requirements
## (Superseded by Policy 369 v.1)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as a Final Policy
   b. Date:  4/16/13
   c. Comment:

   Only last sentence should be promulgated as CA decision. (2/11/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   The last sentence should be promulgated publicly as a CA Decision.  (1/30/13); Appears
   to be Superseded by No. 369. (4/2/13)

EXHIBIT B-4

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-371 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | |
|---|---|
| **Subject** | Business Economic Loss Claims: Management Salary/Key Employee Compensation |
| **Active Date** | 4/23/13 |

| **Policy Impact** | ☐ All Claims Regardless of Active Date<br>☑ All Claims Greater than Active Date |
|---|---|
| **Type of Decision** | Claims Administrator Decision |
| **Settlement Agreement Reference** | |
| **Affected Claim Types and/or Review Processes** | BEL |

| II. Summary |
|---|
| We will treat Management Salary/Key Employee compensation as Fixed expense only if the employee is an Owner and/or Officer. |

## Policy 371 v.1: Business Economic Loss Claims: Management Salary/Key Employee Compensation

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Classify as CA Decision.

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Should be published as a CA Decision.

EXHIBIT B-4

**DEEPWATER HORIZON**
## CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-371 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---------|----------------------------------------|

### I. Profile

| Subject | Business Economic Loss Claims: Management Salary/Key Employee Compensation | |
|---------|---------------------------------------------|---|
| **Active Date** | 6/15/12 | **Policy Impact** | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |

| **Type of Decision** | Claims Administrator Decision |
|----------------------|-------------------------------|
| **Settlement Agreement Reference** | |
| **Affected Claim Types and/or Review Processes** | BEL |

### II. Summary

We will treat Management Salary/Key Employee compensation as Fixed expense only if the employee is an Owner and/or Officer.  We will identify Owners/Officers based on the financial statements.

EXHIBIT B-4

**Policy 371 v.0: Business Economic Loss Claims: Management Salary/Key Employee Compensation (Superseded by Policy 371 v.1)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as a Final Policy
   b. Date:  4/16/13
   c. Comment:

   Only to the extent a manager or key employee is also an owner. (5/22/12); The exclusion from payroll expenses for "Owner/Officer" was intended to exclude all owners, including those who are employees of the company and serve as officers.  Non- Owner/Officers are compensated as employees and, therefore, should be included in payroll expenses.  The framework then provides a set method for allocating payroll expenses into fixed and variable components.  (See Ex. 4C p.1) The reason for excluding "Owner/Officer" from payroll expenses is that owner compensation typically includes a significant component that is a return on their investment, not compensation for work they are doing.  In contrast, Non-Owner/Officers are employees whose salaries are set based on market forces. (5/31/12); BP agrees with the CA Recommendation (6/15/12); Agree. (2/11/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Yes (to CA question) (5/15/12); Our position is that Management/Key Employee compensation is "Officer" (if not Owner) compensation, and should be treated as Fixed. What is the Program's recommendation? (5/26/12); Defer to CA (6/14/12); Can be promulgated as CA Decision. (1/30/13); Appears to be Superseded by No. 371. (4/2/13)

EXHIBIT B-4

# DEEPWATER HORIZON
## CLAIMS CENTER
#### ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-372 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Business Economic Loss Claims: Losses Calculation | | |
|---|---|---|---|
| **Active Date** | 4/23/13 | **Policy Impact** | ☐ All Claims Regardless of Active Date<br>☑ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

### II. Summary

The results of Step 1, whether positive or negative, should be added to results of Step 2. Substituting a negative result for Step 1 with zero may overstate the claimant's lost variable profit during the compensation period as there is an inherent relationship between the Step 1 and Step 2 calculations.

## Policy 372 v.1:  Business Economic Loss Claims:  Losses Calculation

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Should be published as a CA Decision. (Although, as I believe we have previously noted, we disagree.) (4/2/13)

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-372 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Business Economic Loss Claims: Losses Calculation | | |
|---|---|---|---|
| Active Date | 6/15/12 | Policy Impact | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| Type of Decision | | | Claims Administrator Decision |
| Settlement Agreement Reference | | | Exhibit 4C |
| Affected Claim Types and/or Review Processes | | | BEL |

### II. Summary

The results of Step 1, whether positive or negative, should be added to results of Step 2. Substituting a negative result for Step 1 with zero may overstate the claimant's lost variable profit during the compensation period as there is an inherent relationship between the Step 1 and Step 2 calculations .

The Step 1 calculation considers projected and actual variable profit, before consideration of growth, if any. The Step 2 calculation does not consider any actual results, it simply calculates growth, if any. Hence the results of both calculations need to be added together to calculate the total compensation amount. To substitute a negative result in Step 1 with "0" does not consider the actual results of the business during the compensation period. To calculate a loss based only on Step 2 results does not take into consideration the actual results achieved during the compensation period.

EXHIBIT B-4

## Policy 372 v.0: Business Economic Loss Claims: Losses Calculation

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Joe's comments (from 5/21) are incorrect based on the Settlement Agreement. Joe is suggesting that if Step 1 yields a negative result, the Settlement Program should instead substitute zero as the Step 1 result; however, Step 1 of Ex. 4C (pgs 3-4) contains no such language. Moreover, such a substitution would compensate claimants in excess of their loss of variable profit as compared to the Benchmark Period in violation of Step 1 as articulated at pg 1. Rather than experiencing an economic loss, such a claimant would have experienced increased variable profit during the post-Spill period. While such a claimant may still be entitled to compensation (due to the loss of expected growth), "zeroing out" the Step 1 gain in variable profit would result in compensation in excess of 2010 losses (prior to application of the RTP). Thus, it is not reasonable to ignore the increased variable profit when determining total compensation. Also, when BP was reviewing reconciliation of claims with PSC's expert, there were circumstances where Step 1 was negative and both the PSC and BP experts used the negative result to offset the Step 2 compensation. If helpful, BP can share with the CA and PCC the worksheets used by BP and PCC in developing the framework in which there were examples where Step 1 was negative and then was netted with Step 2. (original response 5/24/12; updated 5/31/12); BP agrees with the CA Recommendation (6/15/12)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   J. Rice: I do not see the question related to what happens if Step 1 generates a negative number but Step 2 is positive. At the vendors program this was asked and BP gave 2 different answers while Class Counsel reserved comment. We now answer the question. Step 1 if negative is not to be used to offset Step 2 loss. (5/21/12); S. Herman: Class Counsel takes the position that if Step One comes out negative and Step Two is positive, the loss intended to be captured by Step One can never be less than zero. / BP apparently takes (or at least initially took) the position that a negative in Step One would be deducted from the Step Two / total loss calculation. (5/26/12); S. Herman: If Step One comes out negative and Step Two is positive, the loss intended to be captured by Step One can never be less than zero, (and, hence, the "negative loss" from Step One is not "offset" against the loss that is captured in Step Two). (5/31/12); Defer to CA. (6/14/12); Can be promulgated as CA Decision. (1/30/13); Appears to have been superseded by No. 372. (4/2/13).

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-373 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

## I. Profile

| Subject | Business Economic Loss Claims: Recurring Revenue Streams | | |
|---|---|---|---|
| **Active Date** | 4/23/13 | **Policy Impact** | ☐All Claims Regardless of Active Date ☑All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

## II. Summary

All recurring revenue streams that are deemed to be within the businesses' normal course of operations should be included in the analysis.  For example, a restaurant that generates income from food service and also generates rental income by renting an apartment attached to the building.

EXHIBIT B-4

**Policy 373 v.1:  Business Economic Loss Claims:  Recurring Revenue Streams**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/16/13
   c. Comment:

   Classify as CA Decision.

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Should be published as a Court-Approved Interpretation. (4/2/13)

EXHIBIT B-4

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-373 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | | |
|---|---|---|---|
| **Subject** | Business Economic Loss Claims: Recurring Revenue Streams | | |
| **Active Date** | 7/15/12 | **Policy Impact** | ☒ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

| II. Summary |
|---|

All recurring revenue streams be included in the analysis.  For example, a restaurant that generates income from food service and also generates rental income by renting an apartment attached to the building.

EXHIBIT B-4

**Policy 373 v.0:   Business Economic Loss Claims:   Recurring Revenue Streams (Superseded by Policy 373 v.1)**

Comments and Decisions by the Parties:

1. **BP**
   a.  Decision:  Accept as a Final Policy
   b.  Date:  4/16/13
   c.  Comment:

   Agree. (2/11/13)

2. **Class Counsel**
   a.  Decision:  Defer to Claims Administrator
   b.  Date:  4/2/13
   c.  Comment:

   Can be promulgated as CA Decision. (1/30/13); Appears to have been superseded by No. 373. (4/2/13)

EXHIBIT B-4

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-374 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|
| | **I. Profile** |

| Subject | Business Economic Loss Claims: Causation | | |
|---|---|---|---|
| **Active Date** | 4/23/13 | **Policy Impact** | ☐ All Claims Regardless of Active Date<br>☑ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

**II. Summary**

When necessary, we require 2011 tax returns. If a claimant states that he has not yet filed 2011 tax returns then will wait to process the claimant's claim.

## Policy 374 v.1:  Business Economic Loss Claims:  Causation

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Should be published as a CA Decision. (4/2/13)

EXHIBIT B-4

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-374 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | |
|---|---|---|
| **Subject** | Business Economic Loss Claims: Causation | |
| **Active Date** | 8/24/12 | **Policy Impact** ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Exhibit 4A |
| **Affected Claim Types and/or Review Processes** | | BEL |

| II. Summary |
|---|
| We require 2011 tax returns.  If a claimant states that he has not yet filed 2011 tax returns then will wait to process the claimant's claim. |

## Policy 374 v.0:  Business Economic Loss Claims:  Causation
## (Superseded by Policy 374 v.1)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as a Final Policy
   b. Date:  4/16/13
   c. Comment:

   Agree. (2/11/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Can be promulgated as a CA Decision. (1/30/13); Has apparently been superseded by No. 374. (4/2/13)

EXHIBIT B-4

# DEEPWATER HORIZON
## CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-381 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | | |
|---|---|---|---|
| **Subject** | Business Economic Loss Claims: Failed Start-Up Businesses | | |
| **Active Date** | 7/15/12 | **Policy Impact** | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | | BEL |

### II. Summary

A Failed Start-Up that ceased operations after May 1, 2010 is included in the Failed Start-Up Framework as long as it commenced operations after November 1, 2008.

EXHIBIT B-4

**Policy 381 v.1:  Business Economic Loss Claims:  The Commencement Date for a Start-Up Business**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/26/13
   c. Comment: N/A

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/23/13
   c. Comment: N/A

**DEEPWATER HORIZON**
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS.

| Pol-381 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| **I. Profile** | | | |
|---|---|---|---|
| **Subject** | Business Economic Loss Claims: Failed Start-Up Businesses | | |
| **Active Date** | 7/15/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

| **II. Summary** |
|---|
| A Failed Start-Up that ceased operations after May 1, 2010 is  included in the Failed Start-Up Framework as long as it commenced operations after November 1, 2008. |

EXHIBIT B-4

**Policy 381 v.0:  Business Economic Loss Claims:  Failed Start-Up Businesses (Superseded by Policy 381 v.1)**

Comments and Decisions by the Parties:

1. **BP – Not Answered**
   a. Decision:
   b. Date:
   c. Comment:

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/23/13
   c. Comment:  N/A

EXHIBIT B-4

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-50 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

## I. Profile

| Subject | Business Economic Loss Claims: Losses Calculation | | |
|---|---|---|---|
| Active Date | 5/22/12 | Policy Impact | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| Type of Decision | | | Claims Administrator Decision |
| Settlement Agreement Reference | | | Exhibit 4C |
| Affected Claim Types and/or Review Processes | | | BEL |

## II. Summary

It does not matter the order in which the Step 1 and Step 2 calculation is performed. We will order the calculations in such a way that will result in the best benchmark period for the claimant.

EXHIBIT B-4

## Policy 50: Business Economic Loss Claims: Losses Calculation
## (Internal: Marked as Obsolete on 3/7/13)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/16/13
   c. Comment:

   The same Benchmark Period years need to be used for both calculations, but the actual months will be different in many circumstances (except where the Step 1 Compensation Period is 7 or 8 months, in which the Step 2 Compensation Period must correspond exactly).  Where the months between Step 1 and Step 2, the period(s) chosen should seek the optimal claimant recovery without regard to which step is performed first. (5/22/12); Classify as CA Decision.  (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Step 1 or Step 2 could be done first to determine the best benchmark period to use. (5/15/12); Can be promulgated as CA Decision. (1/30/13); Can be published as a CA Decision, if Program believes it would be helpful to Claimants.  Leave to the Program's discretion. (4/2/13)

EXHIBIT B-4

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 86 | Claims Administrator's Approved Policy |
|---|---|

| **I. Policy Information** | | | |
|---|---|---|---|
| **Policy Subject** | Business Economic Loss Claims: Claimant Classification | | |
| **Active Date** | 5/31/12 | **Policy Impact** | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 3 | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

| **II. Approved Policy** |
|---|
| We will determine whether the claimant complies with the appropriate Industry Definition in Exhibit 3. |

EXHIBIT B-4

**Policy 86:  Business Economic Loss Claims:  Claimant Classification
(Internal)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as a Final Policy
   b. Date:  4/16/13
   c. Comment:

   Question: Do we need to map NAICS Codes to the Industry Definitions (e.g., "Landing
   Site," "Commercial Wholesale or Retail Dealer A," "Primary Seafood Processor," etc.),
   or is that already underway? (5/2/12); BP Response: We have not done that. However, it
   would be extremely useful even if it was only used internally. (5/5/12); Seafood
   Distribution Chain Definitions (Exhibit 3) are not derived from NAICS Codes.  The
   Claims Administrator will need to separately determine that the claimant complies with
   the appropriate definition in Exhibit 3. (5/17/12); Agree. (2/11/13); Classify as CA
   Decision. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   We defer to the sound discretion of the Program at this point, reserving our right to revisit
   the issue, and to perhaps convene a Panel if necessary, if and as any problems or concerns
   may be reported or encountered in the processing of the claims. (5/31/12); Can be
   promulgated as CA Decision. (1/30/13); Can be published as a CA Decision, if Program
   believes it would be helpful to Claimants.  Leave to the Program's discretion. (4/2/13)

# DEEPWATER HORIZON
# CLAIMS CENTER
### ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 106 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | |
|---|---|

| Policy Subject | Business Economic Loss Claims: Multi-Facility Businesses | |
|---|---|---|
| Active Date | 5/31/12 | Policy Impact | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision |
| Settlement Agreement Reference | | Exhibit 5 |
| Affected Claim Types and/or Review Processes | | BEL |

| II. Approved Policy |
|---|

We will issue separate notices for each claim as part of a Multi-Facility Business, however we will issue one notice if a Multi-Facility Business files a consolidated claim.

## Policy 106: Business Economic Loss Claims: Multi-Facility Businesses (Internal)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Agree. Note that if there is simultaneous filing, this issue is largely moot. (5/5/12); BP stands by its original response. (5/17/12); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Accept as a Final Policy
   b. Date: 4/2/13
   c. Comment:

   We defer to the sound discretion of the Program at this point, reserving our right to revisit the issue, and to perhaps convene a Panel if necessary, if and as any problems or concerns may be reported or encountered in the processing of the claims. (5/31/12); Can be promulgated publicly. (1/30/13); This seems to be purely an internal administrative decision. Defer to the Program's discretion as to what, if anything, to communicate publicly. (4/2/13)

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 108 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | |
|---|---|
| **Policy Subject** | Business Economic Loss Claims: Non-Local Customer Mix Test |
| **Active Date** | 5/31/12 |

| **Active Date** | 5/31/12 | **Policy Impact** | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
|---|---|---|---|
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 7 | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

| II. Approved Policy |
|---|
| The "Non-Local Customer Mix Test" is just an additional alternative available for claimants who do not meet the Tourism Definition or Seafood Distribution Chain Definition to meet causation. |

## Policy 108: Business Economic Loss Claims: Non-Local Customer Mix Test
## (Internal: Marked as Obsolete on 3/7/13)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   This is just an additional alternative available for claimants who do meet the Tourism Definition or Seafood Distribution Chain Definition to meet causation. They are not excluded from b.1 if causation is not presumed and if they can and choose to satisfy causation in that manner. (5/17/12)

2. **Class Counsel**
   a. Decision: Accept as a Final Policy
   b. Date: 4/2/13
   c. Comment:

   Agree with BP: Alternative method for establishing Causation. (5/31/12); Can be promulgated publicly. (1/30/13); Not sure why "obsolete". Can be published as a CA Decision. Leave to Program's discretion. (4/2/13)

# DEEPWATER HORIZON
# CLAIMS CENTER
### ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 110 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | |
|---|---|

| **Policy Subject** | Business Economic Loss Claims: Start Up Businesses |
|---|---|

| **Active Date** | 5/31/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
|---|---|---|---|

| **Type of Decision** | Claims Administrator Decision |
|---|---|
| **Settlement Agreement Reference** | Exhibit 7 |
| **Affected Claim Types and/or Review Processes** | BEL |

| II. Approved Policy |
|---|

The Documentation Requirements section for Start-Up Business Claims (Exhibit 7 Section IV.D.5) states "Claimants shall provide an executed subrogation waiver or indemnity in the release." We will not require additional documentation beyond the Release.

EXHIBIT B-4

## Policy 110: Business Economic Loss Claims: Start-Up Businesses (Internal)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   This language in Start-Up framework (Ex. 7, Sec. IV.D.5) served as a placeholder until the parties determined how they would address subrogation/indemnity. The resolution was that there is an indemnity in the release. (See Par. 11(f) of Ex. 26) Other of the frameworks contained similar language in earlier drafts to the language on this issue that remains in the Start-Up framework that was removed, and the parties overlooked removing the language from Ex. 7. Thus, there is no additional documentation required other than the claimant signing the release (Ex. 26).  (5/31/12); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   No additional requirement beyond what is required in / for the Release. (5/31/12); Ok. (1/30/13); This seems to be primarily an internal administrative decision. Defer to the Program's discretion as to what, if anything, to communicate publicly. (4/2/13)

EXHIBIT B-4

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 111 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | | | |
|---|---|---|---|
| **Policy Subject** | Business Economic Loss Claims: Multi-Facility Businesses | | |
| **Active Date** | 5/31/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 5 | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

| II. Approved Policy |
|---|
| A Multi-Facility Business Claimant that has its Headquarters located outside of the Gulf Coast Areas and maintained separate profit and loss statements for each Facility may file a consolidated claim (which may not exclude individual facilities) or it may file for separate claims for one or more Facilities. |

EXHIBIT B-4

**Policy 111: Business Economic Loss Claims: Multi-Facility Businesses (Internal)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   It can be consolidated, but the P&Ls must be provided and for causation and RTP purposes each facility must be considered separately. So, as a practical matter, they are individual. (5/5/12); BP stands by its original response. (5/17/12); Does not appear to be a real disagreement. (5/18/12); It is unclear to BP whether there is a disagreement between BP and Class Counsel regarding questions 55 (row 57) and 56 (row 58) regarding multi-facility businesses. BP is in agreement with comments of Steve Herman; however, Joe Rice provided some comments, and, if BP understands those comments correctly, BP does not agree with them. (5/22/12); BP further notes that it is not clear there is a disagreement. BP understands PCC to agree with it that a claimant with headquarters and all Facilities in the Gulf Coast Areas may file a consolidated claim (which may not exclude individual facilities) or it may file for separate claims for one or more Facilities. Section V(1) expressly states "For a Multi-Facility Business which has all its Facilities (including Headquarters) in the Gulf Coast Areas and files a consolidated claim on behalf of the entire business, compensation shall be determined as set forth in the Business Compensation Framework." (emphasis added) (5/31/12); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Seems unclear. Memory was all must be included, but framework has changed since then. (5/5/12); I believe that these answers are spelled out fairly clearly in the Framework. Off the top of my head, I believe, with respect to 111 & 120, that all Facilities located within the Gulf Coast Area are included within a consolidated claim. With respect to 121, I believe that the claim is consolidated, and the Program must determine from the submission how to apply causation and RTP appropriately. (5/18/12); We agree that there does not appear to be a disagreement. Looking at the Question in Column E: The Entity "may submit separate claims for one, some or all Facilities located within the Gulf Coast Areas. The applicable Causation standard and RTP shall be applied separately to each claiming Facility based on its location and industry." [Ex. 5.] So, technically, the answer is No, you cannot file a "Consolidated" claim. But we seem to agree with what BP seems to be saying in Column H: As a practical matter: You could file a claim for all of the Facilities that are located within the Gulf Coast Area, but they would be evaluated separately. (5/19/12); J. Rice: except you do not need separate P&L if in same zone and industry on 121 issue is can they supply separate P&L if not

consolidate if so they can separate. (5/21/12); The question pre-supposes the existence of contemporaneously maintained P&Ls (5/31/12); Not sure this is correct. (1/30/13); I am not sure that this is completely accurate.  I think it is true, but the Consolidated claim and/or the individual Facility claims would be limited to Facilities within the Gulf Coast Area. (4/2/13)

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-371 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Business Economic Loss Claims: Management Salary/Key Employee Compensation | |
|---|---|---|
| Active Date | 6/15/12 | Policy Impact |

☑ All Claims Regardless of Active Date
☐ All Claims Greater than Active Date

| Type of Decision | Claims Administrator Decision |
|---|---|
| Settlement Agreement Reference | |
| Affected Claim Types and/or Review Processes | BEL |

### II. Summary

We will treat Management Salary/Key Employee compensation as Fixed expense only if the employee is an Owner and/or Officer. We will identify Owners/Officers based on the financial statements.

EXHIBIT B-4

**Policy 371 v.0: Business Economic Loss Claims: Management Salary/Key Employee Compensation (Superseded by Policy 371 v.1)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as a Final Policy
   b. Date:  4/16/13
   c. Comment:

   Only to the extent a manager or key employee is also an owner. (5/22/12); The exclusion from payroll expenses for "Owner/Officer" was intended to exclude all owners, including those who are employees of the company and serve as officers.  Non- Owner/Officers are compensated as employees and, therefore, should be included in payroll expenses.  The framework then provides a set method for allocating payroll expenses into fixed and variable components.  (See Ex. 4C p.1) The reason for excluding "Owner/Officer" from payroll expenses is that owner compensation typically includes a significant component that is a return on their investment, not compensation for work they are doing.  In contrast, Non-Owner/Officers are employees whose salaries are set based on market forces. (5/31/12); BP agrees with the CA Recommendation (6/15/12); Agree. (2/11/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Yes (to CA question) (5/15/12); Our position is that Management/Key Employee compensation is "Officer" (if not Owner) compensation, and should be treated as Fixed. What is the Program's recommendation? (5/26/12); Defer to CA (6/14/12); Can be promulgated as CA Decision. (1/30/13); Appears to be Superseded by No. 371. (4/2/13)

EXHIBIT B-4

# DEEPWATER HORIZON CLAIMS CENTER
## ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-372 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Business Economic Loss Claims: Losses Calculation | | |
|---|---|---|---|
| Active Date | 4/23/13 | Policy Impact | ☐ All Claims Regardless of Active Date ☒ All Claims Greater than Active Date |
| Type of Decision | | | Claims Administrator Decision |
| Settlement Agreement Reference | | | |
| Affected Claim Types and/or Review Processes | | | BEL |

### II. Summary

The results of Step 1, whether positive or negative, should be added to results of Step 2. Substituting a negative result for Step 1 with zero may overstate the claimant's lost variable profit during the compensation period as there is an inherent relationship between the Step 1 and Step 2 calculations.

EXHIBIT B-4

## Policy 372 v.1:  Business Economic Loss Claims:  Losses Calculation

Comments and Decisions by the Parties:

1. **BP**
   a.  Decision:  Defer to Claims Administrator
   b.  Date:  4/16/13
   c.  Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a.  Decision:  Defer to Claims Administrator
   b.  Date:  4/2/13
   c.  Comment:

   Should be published as a CA Decision. (Although, as I believe we have previously noted, we disagree.) (4/2/13)

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-372 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---------|----------------------------------------|

| I. Profile | | | |
|---|---|---|---|
| **Subject** | Business Economic Loss Claims: Losses Calculation | | |
| **Active Date** | 6/15/12 | **Policy Impact** | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 4C | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

## II. Summary

The results of Step 1, whether positive or negative, should be added to results of Step 2. Substituting a negative result for Step 1 with zero may overstate the claimant's lost variable profit during the compensation period as there is an inherent relationship between the Step 1 and Step 2 calculations .

The Step 1 calculation considers projected and actual variable profit, before consideration of growth, if any. The Step 2 calculation does not consider any actual results, it simply calculates growth, if any. Hence the results of both calculations need to be added together to calculate the total compensation amount. To substitute a negative result in Step 1 with "0" does not consider the actual results of the business during the compensation period. To calculate a loss based only on Step 2 results does not take into consideration the actual results achieved during the compensation period.

EXHIBIT B-4

## Policy 372 v.0:  Business Economic Loss Claims:  Losses Calculation

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/16/13
   c. Comment:

Joe's comments (from 5/21) are incorrect based on the Settlement Agreement. Joe is suggesting that if Step 1 yields a negative result, the Settlement Program should instead substitute zero as the Step 1 result; however, Step 1 of Ex. 4C (pgs 3-4) contains no such language. Moreover, such a substitution would compensate claimants in excess of their loss of variable profit as compared to the Benchmark Period in violation of Step 1 as articulated at pg 1. Rather than experiencing an economic loss, such a claimant would have experienced increased variable profit during the post-Spill period. While such a claimant may still be entitled to compensation (due to the loss of expected growth), "zeroing out" the Step 1 gain in variable profit would result in compensation in excess of 2010 losses (prior to application of the RTP). Thus, it is not reasonable to ignore the increased variable profit when determining total compensation. Also, when BP was reviewing reconciliation of claims with PSC's expert, there were circumstances where Step 1 was negative and both the PSC and BP experts used the negative result to offset the Step 2 compensation. If helpful, BP can share with the CA and PCC the worksheets used by BP and PCC in developing the framework in which there were examples where Step 1 was negative and then was netted with Step 2. (original response 5/24/12; updated 5/31/12); BP agrees with the CA Recommendation (6/15/12)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

J. Rice: I do not see the question related to what happens if Step 1 generates a negative number but Step 2 is positive. At the vendors program this was asked and BP gave 2 different answers while Class Counsel reserved comment. We now answer the question. Step 1 if negative is not to be used to offset Step 2 loss. (5/21/12); S. Herman: Class Counsel takes the position that if Step One comes out negative and Step Two is positive, the loss intended to be captured by Step One can never be less than zero. / BP apparently takes (or at least initially took) the position that a negative in Step One would be deducted from the Step Two / total loss calculation. (5/26/12); S. Herman: If Step One comes out negative and Step Two is positive, the loss intended to be captured by Step One can never be less than zero, (and, hence, the "negative loss" from Step One is not "offset" against the loss that is captured in Step Two). (5/31/12); Defer to CA. (6/14/12); Can be promulgated as CA Decision. (1/30/13); Appears to have been superseded by No. 372. (4/2/13).

## DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-373 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Business Economic Loss Claims: Recurring Revenue Streams | | |
|---|---|---|---|
| Active Date | 4/23/13 | Policy Impact | ☐All Claims Regardless of Active Date<br>☑All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision | |
| Settlement Agreement Reference | | | |
| Affected Claim Types and/or Review Processes | | BEL | |

### II. Summary

All recurring revenue streams that are deemed to be within the businesses' normal course of operations should be included in the analysis. For example, a restaurant that generates income from food service and also generates rental income by renting an apartment attached to the building.

EXHIBIT B-4

**Policy 373 v.1:  Business Economic Loss Claims:  Recurring Revenue Streams**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Classify as CA Decision.

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Should be published as a Court-Approved Interpretation. (4/2/13)

EXHIBIT B-4

# DEEPWATER HORIZON
# CLAIMS CENTER
### ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-373 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Business Economic Loss Claims: Recurring Revenue Streams | |
|---|---|---|
| Active Date | 7/15/12 | Policy Impact | ☒All Claims Regardless of Active Date  ☐All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision |
| Settlement Agreement Reference | | |
| Affected Claim Types and/or Review Processes | | BEL |

### II. Summary

All recurring revenue streams be included in the analysis.  For example, a restaurant that generates income from food service and also generates rental income by renting an apartment attached to the building.

EXHIBIT B-4

## Policy 373 v.0:  Business Economic Loss Claims:  Recurring Revenue Streams (Superseded by Policy 373 v.1)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as a Final Policy
   b. Date:  4/16/13
   c. Comment:

   Agree. (2/11/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Can be promulgated as CA Decision. (1/30/13); Appears to have been superseded by No. 373. (4/2/13)

EXHIBIT B-4

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-374 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | | |
|---|---|---|---|
| **Subject** | Business Economic Loss Claims: Causation | | |
| **Active Date** | 4/23/13 | **Policy Impact** | ☐ All Claims Regardless of Active Date<br>☑ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

| II. Summary |
|---|
| When necessary, we require 2011 tax returns.  If a claimant states that he has not yet filed 2011 tax returns then will wait to process the claimant's claim. |

| Policy 115: Business Economic Loss Claims: Denials and Incompleteness (Internal) |
|---|

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as a Final Policy
   b. Date: 4/16/13
   c. Comment:

   This situation would result in the denial of the claim, with an explanation to the claimant that the denial is based on failure to satisfy causation. The denial letter should also notify the claimant that the claim may be resubmitted if additional documents are available. (5/17/12); BP agrees with CA Recommendation (6/15/12); Agree. (2/11/13); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision:  Accept as a Final Policy
   b. Date:  4/2/13
   c. Comment:

   It depends on how complete the documentation is (e.g. is the denial based on just 2009 benchmark data, or 2007-2009), and what efforts the Program (and the Claimant) have undertaken in accordance with Section 4.3.7 and 6.1. (5/31/12); Defer to CA (6/14/12); Can be promulgated publicly. (1/30/13); This seems to be primarily an internal administrative decision. Defer to the Program's discretion as to what, if anything, to communicate publicly. (4/2/13)

EXHIBIT B-4

**DEEPWATER HORIZON
CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 161 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | | | |
|---|---|---|---|
| **Policy Subject** | Business Economic Loss Claims: Eligibility | | |
| **Active Date** | 7/15/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

| II. Approved Policy |
|---|
| All businesses that meet the definition of a Class Member must be permitted to file claims.  However, some businesses are not eligible for compensation because the Settlement Agreement does not include RTP or Causation guidelines for businesses located outside the Gulf Coast Areas. |

EXHIBIT B-4

**Policy 161: Business Economic Loss Claims: Eligibility**
**(Internal: Marked as Obsolete on 3/7/13)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Agree with Class Counsel that this is unclear.  Should not be promulgated. (2/11/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   This is unclear, and seems incorrect. (1/30/13); Appears to be agreement that this should not be posted. Or followed. (4/2/13)

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 168 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | | | |
|---|---|---|---|
| **Policy Subject** | Business Economic Loss Claims: Allocation of Expenses | | |
| **Active Date** | 7/15/12 | **Policy Impact** | ☐All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | | BEL |

| II. Approved Policy |
|---|

Accountants should use their judgment and request documentation necessary (bank statements, property management statements, monthly profit and loss statements, etc.) to complete their analysis, but a monthly breakdown of revenue earned must be provided by the claimants in order to do so.

Accountants should use their judgment and allocate expenses proportionately in accordance with revenue earned by each property.

EXHIBIT B-4

**Policy 168: Business Economic Loss Claims: Allocation of Expenses
(Internal: Marked as Obsolete on 3/7/13)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment: N/A

   Per CA Action, this Policy is Marked as Obsolete. Accordingly, BP understands this
   policy will not be released, and it need not comment upon the classification. BP requests
   CA advise on whether BP's understanding is correct. If not, BP will provide a final
   comment. Marked as Obsolete.

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   We understood the Program had decided that for Compensation (as opposed to
   Causation), the Program would average from quarterly, annual or semi-annuals, where
   monthly P&Ls did not exist. (1/30/13); Still not sure I understand what the current Policy
   is re what I understood to be Revised and Clarified Policy Nos. 1(a), 1(b), and 1(c) as of
   October 8, 2012, but whatever the current Policy is should be published as a CA
   Decision. (4/2/13)

EXHIBIT B-4

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-446 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| **I. Profile** | | | |
|---|---|---|---|
| **Subject** | Specific Documentation To Identify Factors Outside the Control of the Claimant that Prevented the Recovery of Revenues in 2011 | | |
| **Active Date** | 1/22/13 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 4B | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

| **II. Summary** |
|---|

When answering the Additional Analysis portion of the Decline-Only Revenue Pattern Causation Test (i.e., the "second prong"), the Program must determine whether the claimant has submitted sufficient documentation to demonstrate why the business's revenue did not recover in 2011.  Section II.C of Exhibit 4B explains that the claimant must provide "Specific documentation identifying factors outside the control of the claimant that prevented the recovery of revenues in 2011, such as:

- The entry of a competitor in 2011
- Bankruptcy of a significant customer in 2011
- Nearby road closures affecting the business
- Unanticipated interruption resulting in closure of the business
- Product/Service replacement by Customer
- Loss of financing and/or reasonable terms of renewal"

The Claims Administrator interprets the inclusion of the phrase "such as" in Section II.C to mean that this list is non-exhaustive, and the claimant may demonstrate other factors outside the control of the claimant which prevented recovery of revenue.

EXHIBIT B-4

H<span>ISTORY OF</span> P<span>OLICY</span> R<span>EQUEST</span> 449 (S<span>PECIFIC</span> D<span>OCUMENTATION</span> T<span>O</span> I<span>DENTIFY</span> F<span>ACTORS</span> O<span>UTSIDE</span>
THE C<span>ONTROL OF THE</span> C<span>LAIMANT THAT</span> P<span>REVENTED THE</span> R<span>ECOVERY OF</span> R<span>EVENUES IN</span> 2011)

<u>1/22/13</u>:  A. Oxenreiter emailed M. Juneau on to present the issue.  A copy of this email is below.

<u>1/22/13</u>:  This issue was subsequently discussed at the weekly BEL Policy Meeting with Mike Juneau on the morning of Tuesday, 1/22/13.  Emily Kent (PWC) reported that Mike decided that we should keep the "Other" option on the drop-down menu for the Additional Analysis portion of the Decline-Only Revenue Pattern test, as the list of types of documents in Section II.C of Exhibit 4B is not exhaustive.  W. Atkinson confirmed Emily's account of this discussion at the meeting.

**From:** Andrew Oxenreiter
**Sent:** Tuesday, January 22, 2013 8:43 AM
**To:** mjuneau@dheclaims.com
**Cc:** Bill Atkinson; charles.r.hacker@us.pwc.com; 'emily.f.kent@us.pwc.com'; Katherine Torres; Mark Staley
**Subject:** Additional Analysis prong of Decline-Only Causation Test (BEL)

Mike,

In order to be certain we are evaluating Business Economic Loss claims correctly, we would like your input on one particular section of the general Business Economic Loss claim framework.  We would like to add this to the agenda for discussion when you meet with the BEL vendors this week.

Exhibit 4B of the Settlement Agreement contains six different causation tests a general Business Economic Loss claimant may pass to prove Causation.  Among these is the Decline-Only Revenue Pattern test, which contains three sub-parts:

1. The first part of this three-pronged test examines the decline in percentage of revenue from the Benchmark Period to post-Spill months in 2010.  This test is automated, and is run completely based on the Data Capture of the claimant's monthly revenues.
2. The second prong of the Decline-Only Revenue Pattern test is the Additional Analysis question, which requires the claimant to provide documentation identifying factors outside the control of the claimant that prevented the recovery of revenues in 2011.
3. The final prong is the Customer-Mix test, which the accountants perform to analyze the decline in revenue generated by certain customers from 2009 compared to 2010.

A claimant must pass all three sub-parts in order to demonstrate causation based on the Decline-Only Revenue Pattern test.

When answering the Additional Analysis portion of the Decline-Only Revenue Pattern test (the second prong), BG reviewers must determine whether the claimant has submitted sufficient documentation demonstrating why the business's revenue did not recover in 2011.  However, the

1

Settlement Agreement is not clear about the types of factors the claimant may identify in order to pass this test. Section II.C of Exhibit 4B explains that the claimant must provide "Specific documentation identifying factors outside the control of the claimant that prevented the recovery of revenues in 2011, *such as*:

- The entry of a competitor in 2011
- Bankruptcy of a significant customer in 2011
- Nearby road closures affecting the business
- Unanticipated interruption resulting in closure of the business
- Product/Service replacement by Customer
- Loss of financing and/or reasonable terms of renewal" (emphasis added)

The inclusion of the phrase "such as" in Section II.C. implies that this list is non-exhaustive, and the claimant may demonstrate other factors outside the control of the claimant which prevented recovery of revenue. Conversely, Section III.C., which discusses the Decline-Only Revenue Pattern test for Zone D claimants, does not contain the words "such as." Therefore, there is some uncertainty about whether a claimant is limited to providing documentation identifying only these six factors that the claimant specifically references. In our Additional Analysis question on the Causation review screens, we currently list the six factors included in Sections II.C. and III.C., as well as an "Other" category:



We have found that claimants frequently provide documentation identifying an "Other" factor, as opposed to any of the factors that are specifically listed in the Settlement Agreement. Below are several examples we have encountered that demonstrate this issue:

> *Example 1*: This document explains that an administrative assistant continued to experience a decline in revenue in 2011 due to a downsize in the Real Estate company after the Spill. While none of the six listed factors would apply here, a reviewer could find this is sufficient documentation to pass the Additional Analysis question by selecting the "Other" option.

To Whom It May Concern ,

I was employed by Madison Assets Group LLC from January of 2009 until July of 2011 as an administrative assistant. I was paid a base salary of 2000.00 per month plus monthly bonus for office production and also received health benefits. After the Gulf Oil Spill the production of the office decreased significantly and this affected my pay and ability to earn bonuses.

In March of 2011 I was offered a part – time job ( 250.00 weekly ) and continued to work there until July of 2011 on a part – time basis until I could procure full time employment. Madison Assets Group was a very busy and productive Real Estate company and while I was there they had 15 employees and agents at any given time. After the Gulf Oil Spill of 2010 the staff had been reduced to 5 employees / agents by the end of 2010 and by the time I left there was 1 full time employee and 3 agents.

*Example 2*: Similarly, this document shows that a Real Estate company could not recover revenue in 2011 because it lost many of its real estate agents and sales after the Spill. While the "Other" category would be an appropriate option here, the factors listed in the Settlement Agreement would not apply.

To Whom It May Concern ,

I am writing this letter to inform you of my intention to make a claim against BP due to the oil spill that happened in April of 2010.

Enclosed in this package you will find all of the documentation that you have requested from my firm, Madison Assets Group, LLC. It clearly shows that the business has suffered and took a major loss soon after the oil spill.

The decrease in business from 2009 to 2011 amounts to a loss of income in the amount of $ 3,991,015 . This decline occured subsequent to the oil spill and can be directly connected to the income statements provided.

The overall effect of the oil spill is the loss of business, loss of sales agents and a loss of jobs due to permanent layoffs of support staff in 2010 and 2011. The lost agents and sales as well as employees will impact the income for Madison Assets Group LLC for several more years.

All properties in our area which is located within 2 miles of the gulf were greatly impacted as many of the buyers were Canadians, investors and retirees from the northern United States looking for the Florida lifestyle and close proximity to beaches. In addition the local buyers and seller market was highly impacted as seen through studies done by real estate information companies.

Additionally, Madison Assets Group, LLC, has suffered a loss in real estate agents due to decreased sales in an already challenged real estate market. Many of our agents have left the company and the real estate profession. This loss in sales agents has directly contributed to a loss in overall sales for the company due to the oil spill in a very fragile real estate market.

Please review all information attached. Your cooperation is greatly appreciated.

*Example 3*: A restaurant provided the following document, indicating that the business closed half of its restaurant after the Spill, which prevented the claimant from recovering revenue in 2011 and caused the business to eventually close in 2012. Again, the factors listed in the Settlement Agreement do not apply in this case, however, a business would pass the Additional Analysis portion of this test by being able to select the "Other" option during the review.

3

EXHIBIT B-4

> The lack of the tourism in the Tampa Bay area after the spill affected my restaurant revenue.
> There was a 19 percent decrease. I was proactive and immediately started cutting operating costs.
> I was able to cut costs by $161,000. However, Pitmasters could no longer absorb the loss of sales
> and I was forced to close the dine-in side of the restaurant in November 2010. In May 2011, I
> relocated to a smaller catering only kitchen where I am at presently.

Due to the fact that the oil spill greatly impacted the tourism of where my restaurant was located,
it had a direct impact on my loss of revenue. Pitmasters wasn't able to absorb the decrease in
revenue after 7 months and was forced to close. The spill has caused me to lose my business,
which means I have to start all over again. I was a small business owner and lost my savings with
this restaurant. Also, this has caused a financial hardship on the home front, effecting my wife
and 3 children.

Because the Settlement Agreement is not clear about whether the six factors listed in Sections
II.C. and III.C. are inclusive, and the Additional Analysis portion of the Decline-Only Revenue
Pattern test is only part of a three-prong test, we propose that we continue to allow claimants to
show evidence of "other" factors that prevented recovery of revenues in 2011. We would
appreciate your interpretation of this portion of the analysis and look forward to discussing it.

Thanks

**Andrew W. Oxenreiter**
**BROWNGREER PLC**
115 S. 15th Street, Suite 400
Richmond, Virginia  23219-4209
Telephone:  (804) 521-7215
Facsimile:  (804) 521-7299
www.browngreer.com

*This electronic mail is intended to be received and read only by certain individuals. It may contain information that is privileged
or protected from disclosure by law. If it has been misdirected, or if you suspect you received this in error, please notify me by
replying and then delete this message and your reply. These restrictions apply to any attachment to this email.*

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-455 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Specific Documentation To Identify Factors Outside the Control of the Claimant that Prevented the Recovery of Revenues in 2011 – Objective, Third-Party Documentation | | |
|---|---|---|---|
| Active Date | 3/12/13 | Policy Impact | ☐ All Claims Regardless of Active Date<br>☑ All Claims Greater than Active Date |
| Type of Decision | | | Claims Administrator Decision |
| Settlement Agreement Reference | | | Exhibit 4B |
| Affected Claim Types and/or Review Processes | | | BEL |

### II. Summary

Exhibit 4B of the Settlement Agreement contains various causation tests that a general Business Economic Loss claimant may use to establish Causation. Among these is the Decline-Only Revenue Pattern Causation Test, which contains three sub-parts:

1. The first prong of this test examines the decline in percentage of revenue from the Benchmark Period to post-Spill months in 2010. This test is run completely based on the claimant's monthly revenues.

2. The second prong requires the claimant to provide documentation identifying factors outside the control of the claimant that prevented the recovery of revenues in 2011.

3. The third prong requires an analysis of the decline in revenue generated by certain customers from 2009 compared to 2010. This is commonly referred to as the Customer Mix Test.

The Claims Administrator takes the position that to satisfy the second prong in the Additional Analysis portion of the Decline-Only Causation Test (i.e., the second prong), the claimant must submit objective, third-party documentation that identifies factors outside the control of the claimant that prevented the recovery of revenues in 2011. A letter from the claimant or the claimant's accountant or attorney is not sufficient to satisfy this requirement.

EXHIBIT B-4

<u>History of Policy Request 450 (Specific Documentation To Identify Factors Outside the Control of the Claimant that Prevented the Recovery of Revenues in 2011 – Objective, Third-Party Documentation)</u>

<u>3/12/13</u>:  A. Oxenreiter raised this issue at the weekly BEL Policy meeting/call with M. Juneau:

**<u>Specific Documentation Prong of Decline-Only Causation Test</u>**.  As a continuation of the discussion in the email below, I would like to get your thoughts on whether the attached document satisfies the second prong of the Decline-Only Test as "specific documentation identifying factors outside the control of the claimant that prevented the recovery of revenues in 2011." This document was submitted by Claimant ID 100118266 (Barnes Feed Store Inc) to establish the entry of competitors.  It is Doc ID 4207947.  It appears to be an email from the claimant's accountant.

***<u>Outcome</u>***:  Mike said this was document is NOT good enough to satisfy the second prong of the Decline-Only Test.  A copy of the document is attached.  He said that to answer Yes to this question, we need objective, third-party documentation.  A letter from the claimant or the claimant's accountant or attorney is not sufficient.

1

EXHIBIT B-4

**Dan Bowers**

**Subject:**              FW: BP claim---Barnes Feed

**From:** Connie Cushing
**Sent:** Monday, July 30, 2012 10:44 AM
**To:** Dan Bowers
**Subject:** RE: BP claim---Barnes Feed

Dan, I just talked to David Witt at Barnes Feed and there are numerous reasons why the store did not rebound in 2011.

1. Tractor Supply, located at 3 W Nine Mile Road (less than ½ mile from the Barnes Pensacola location), opened in late September 2011.
2. The Purina dealer started providing Purina feeds to 3 other locations in the county. This was in September 2011. The Purina was one of the biggest selling products at Barnes.
3. Southern Mill & Supply open a location at 1280 Highway 97, Molino, FL. This is just 3 miles away from the Barnes Molino Store.
4. T & C Feed, Inc. opened a store at 406 N Palafox Hwy, Cantonment, FL 32533.  This store is located ½ way between the Barnes Pensacola and Barnes Molino store.
5. Farm & Nursery Mart open at 7460 Pine Forest Road.  Purina gave ½ of the allotment of Purina products to this store.
6. In addition, there was road construction and detours  on the road their business is located on.

As a result of the above store openings and the fact that Purina relocated more than ½ of this regions allocation of Purina Products from Barnes to three other locations (all competitors), sales dropped from $2 million to $1.5 million.   Barnes tried running sales and advertising but it did not help in 2011. He did say that sales were up for Spring 2012.

Is this enough to justify them not rebounding in 2011?

Thank you.

**Connie Cushing, CPA, AEP**
Direct:       850.444.7295

1

EXHIBIT B-4

# DEEPWATER HORIZON
# CLAIMS CENTER
#### ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-456 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Specific Documentation To Identify Factors Outside the Control of the Claimant that Prevented the Recovery of Revenues in 2011 – Issuance of Denial Notice |
|---|---|
| **Active Date** | 4/4/13 | **Policy Impact** | ☐All Claims Regardless of Active Date<br>☒All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | Exhibit 4B |
| **Affected Claim Types and/or Review Processes** | | | BEL |

### II. Summary

Exhibit 4B of the Settlement Agreement contains various causation tests that a general Business Economic Loss claimant may use to establish Causation.  Among these is the Decline-Only Revenue Pattern Causation Test, which contains three sub-parts:

1.  The first prong of this test examines the decline in percentage of revenue from the Benchmark Period to post-Spill months in 2010. This test is run based solely on the claimant's monthly revenues.

2.  The second prong requires the claimant to provide documentation identifying factors outside the control of the claimant that prevented the recovery of revenues in 2011.

3.  The third prong requires an analysis of the decline in revenue generated by certain customers from 2009 compared to 2010.  This is commonly referred to as the Customer Mix Test.

The Claims Administrator takes the position that if a claimant has passed the Revenue Pattern portion of the Decline-Only Causation Test (i.e., the first prong) but has not satisfied the Additional Analysis portion (i.e., the second prong), and has not established Causation using any other mechanism set forth in Exhibit 4B, then the outcome of the review should result in a Denial Notice for failure to establish Causation instead of an Incompleteness Notice for specific documentation identifying factors outside the control of the claimant that prevented the recovery of revenues in 2011.

EXHIBIT B-4

<u>History of Policy Request 451 (Specific Documentation To Identify Factors Outside the Control of the Claimant that Prevented the Recovery of Revenues in 2011 – Issuance of Denial Notice)</u>

<u>4/1/13</u>:  V. Francks sent the memo below to W. Atkinson supporting BG's position that we should continue to issue a Denial Notice if a claimant passes the revenue pattern portion of the Decline-Only but fails the Additional Analysis, and passes no other Causation Test.

<u>4/4/13</u>:  We discussed this issue on the weekly BEL policy meeting/call.  Mike Juneau decided that we should continue to deny claims that have satisfied the Revenue Pattern portion of the Decline Only test but have not provided documentation to satisfy the second prong, which requires specific documents showing factors that prevented the claimant's recovery in 2011.  These claims should continue to receive Denial Notices, not Incompleteness Notices, regardless of their applicable Claim Form responses.

■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■

1.  **Issue:**  Should the Settlement Program send an Incompleteness Notice when a claimant has passed the Revenue Pattern portion of the Decline Only Revenue Test but has not satisfied the Additional Analysis portion?

To satisfy the Decline Only Revenue Pattern Analysis, Exhibit 4B requires that a business provide documentation showing (a) a decline in revenue; (b) specific factors outside the control of the claimant that prevented the recovery of revenues in 2011; and (c) Customer Mix Test, Proof of Spill Related Cancellations or Causation Proxy.

Currently, if a business satisfies the Revenue Pattern portion of the Decline Only Revenue Test but has not satisfied the Additional Analysis portion, the Settlement Program sends the claimant a Denial Notice.  After receiving the Denial Notice, the claimant has an opportunity to seek Re-Review, Reconsideration and Appeal.  Furthermore, if a business satisfies the Revenue Pattern portion of the Decline Only Revenue Test, satisfies the Additional Analysis portion of the Decline Only Revenue Test and seeks to satisfy the Customer Mix Test, the Settlement Program performs claimant outreach seeking additional documentation, including contacting the claimant and sending an Incompleteness Notice.

The Settlement Program has issued 807 Causation Denials for Business Economic Loss Claims.

   (a)  Of these 807 Denials, 427 passed the Revenue Pattern Portion of the Decline Only Causation Test, but no other Revenue Pattern Analyses.

   (b)  Of the 427 claims that passed the Revenue Pattern Portion of the Decline Only Causation Test, 389 did not satisfy the Additional Analysis portion of the Decline Only Revenue Test.  Of these claimants:

      (1)  20 answered "Yes" to Question 20.

      (2)  368 answered "No" to Question 20.

      (3)  1 did not answer Question 20.

1

EXHIBIT B-4

(c) Of the 427 claims that passed the Revenue Pattern Portion of the Decline Only Causation Test, 31 satisfied the Additional Analysis portion of the Decline Only Revenue Test.  Of these claimants:

    (1) 24 answered "Yes" to Question 20.

    (2) 6 answered "No" to Question 20.

    (3) 1 did not answer Question 20.

2. ***Recommendation***:  We recommend continuing with the current procedure by sending a Denial Notice if the claimant has passed the Revenue Pattern portion of the Decline Only Revenue Test but has not satisfied the Additional Analysis portion for the following reasons:

(a) An overwhelming majority (95%) of businesses that did not satisfy the Additional Analysis portion of the Decline Only Revenue Test answered "No" to Question 20, indicating that they were not in a position to satisfy the Additional Analysis portion of the Decline Only Revenue Test, even if the Settlement Program sends them Incompleteness Notice requesting further documentation.

(b) Businesses that have passed only the Revenue Pattern portion of Decline Only Causation Analysis have, in theory, fully documented their claims and are still only able to pass one of the revenue pattern tests required by Exhibit 4B.  It is unlikely that these claimants would have additional documentation sufficient to satisfy the Additional Analysis that they did not already submit to the Settlement Program.  The Settlement Program informs claimants of the documents that are required by the Settlement Agreement to satisfy the Additional Analysis portion of the Decline Only Revenue Pattern in the following places:

    (1) In Exhibit 4B of the Settlement Agreement, available on the public website;

    (2) In the Instruction booklet that accompanies the Business Economic Loss Claim Form;

    (3) In Question 20 in the Business Economic Loss Claim Form; and

    (4) In the Frequently Asked Questions section of the public website.

(c) The Settlement Program reviews all non-financial documents as potentially sufficient to satisfy the Additional Analysis portion of the Decline Only Revenue Pattern Test.  As discussed in (b) above, it is unlikely that claimants would have additional documentation sufficient to satisfy the Additional Analysis that they did not already submit to the Settlement Program.

(d) After receiving the Denial Notice, the claimant has an opportunity to seek Re-Review, Reconsideration and Appeal.  The claimant is permitted to submit additional documentation on Re-review and Reconsideration.

In the alternative, if the Claims Administrator directs the Settlement Program to send an Incompleteness Notice to claimants that have passed the Revenue Pattern portion of the Decline Only Revenue Test but has not satisfied the Additional Analysis portion, we recommend sending an Incompleteness Notice to only those claimants that have answered "Yes" to Business

2

Economic Loss Claim Form Question Number 20 because these claimants have indicated that they believe that they have documents sufficient to satisfy the Additional Analysis portion.

3

EXHIBIT B-4



ACCOUNTING SUPPORT
REIMBURSEMENT (CAS)

EXHIBIT B-4

# DEEPWATER HORIZON
# CLAIMS CENTER
### ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-358 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | | |
|---|---|---|---|
| **Subject** | Claimant Accounting Support | | |
| **Active Date** | 4/23/13 | **Policy Impact** | ☐All Claims Regardless of Active Date<br>☑All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | Acct. Support | |

| II. Summary |
|---|
| Claimant Accounting Support is available to IEL, BEL, and Seafood Claimants. The Claims Administrator will reimburse claimants when it receives documentation that complies with the terms of the claimant accountant support provisions in the Settlement Agreement. The Claims Administrator will add the Accounting Fees award to the Compensation Amount and then deduct prior payments to determine the claimant's payment amount. If the amount of prior payments is a complete offset to the payment amount, no accounting fee reimbursement will be made. Accordingly, Accounting Fees will only be awarded if the claimant actually receives a settlement payment. |

## Policy 358 v.6: Claimant Accounting Support

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/16/13
   c. Comment:

   Should be published as a CA Decision. (4/19/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/2/13
   c. Comment:

   Should be published as a CA Decision. (4/2/13)

EXHIBIT B-4

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-358 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---------|----------------------------------------|

## I. Profile

| Subject | Claimant Accounting Support Services: Prior Payments | |
|---------|---------------------------------|---|
| **Active Date** | 7/18/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Section 4.4.13.1 and 4.4.13.11 |
| **Affected Claim Types and/or Review Processes** | | Acct. Support |

## II. Summary

We will add the Accounting Fees award to the Compensation Amount and then deduct prior payments to determine the claimant's payment amount.  If the amount of prior payments is a complete offset to the payment amount, no accounting fee reimbursement will be made.  Accordingly, Accounting Fees will only be awarded if the claimant actually  receives a settlement payment.

**Policy 358 v.5: Claimant Accounting Support Services: Prior Payments (Superseded by Policy 358 v.6)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Accept as a Final Policy
   b. Date: 4/16/13
   c. Comment:

The answer to subpart A is governed by Section 4.4.13.1 of the Settlement Agreement, which provides that 'all Claimants who receive Settlement Payments for Economic Damage Compensation Amounts are eligible for reimbursement of accounting services." Section 38.184 of the Settlement Agreement defines "Settlement Payment" as "the Total Compensation Amount to be paid to a Claimant for any Claim made pursuant to the terms of the Agreement, including the Frameworks and exhibit," and Section 38.147 defines "Total Compensation" as "the Compensation Amount, plus any RTP and any other amounts due for any Claim less any applicable offsets under this Agreement or its Frameworks." Thus, because the term "Settlement Payment" already incorporates deductions for offsets, Section 4.4.13.1 is clear by referring to "Settlement Payments" that accounting fees are only reimbursed if an actual Settlement Payment is being made to the Claimant. Consequently, accounting fee reimbursement should not be awarded after the deduction of offsets because if done this way it is possible claimants could receive compensation for accounting fees even though they established no losses or were overpaid from period Spill-related payments and will not receive another payment from the DWH Settlement Program.

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/2/13
   c. Comment:

Hopefully this will not happen very often, (if ever), but I think that is consistent with Section 4.4.13.10 (shall be paid over and above "any" compensation due under the Agreement). (7/15/12); Can be promulgated as CA Decision. (1/30/13); Appears to be superseded by No. 358. (4/2/13)

EXHIBIT B-4

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-358 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Claimant Accounting Support Services: Out-of-Pocket Expenses | |
|---|---|---|
| Active Date | 7/15/12 | **Policy Impact** | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |

| Type of Decision | Claims Administrator Decision |
|---|---|
| Settlement Agreement Reference | Section 4.4.13.5 |
| Affected Claim Types and/or Review Processes | Acct. Support |

### II. Summary

Any work or Accountants' out-of-pocket expenses is reimbursable if the work and billing follows the rules and rates of the framework.

EXHIBIT B-4

## Policy 358 v.4: Claimant Accounting Support Services: Out-of-Pocket Expenses
## (Superseded by Policy 358 v.5)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as a Final Policy
   b. Date:  4/16/13
   c. Comment:

   Agree. (2/11/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date:  4/2/13
   c. Comment:

   Can be promulgated as CA Decision.  (1/30/13); Appears to have been superseded by No. 358. (4/2/13)

EXHIBIT B-4

**DEEPWATER HORIZON**
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-358 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---------|----------------------------------------|

| I. Profile | | |
|---|---|---|
| **Subject** | Claimant Accounting Support Services: Out-of-Pocket Expenses | |
| **Active Date** | 7/13/12 | **Policy Impact** ☑All Claims Regardless of Active Date ☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Section 4.4.13.5 |
| **Affected Claim Types and/or Review Processes** | | Acct. Support |

| II. Summary |
|---|
| Section 4.4.13.6 indicates that the "Reimbursement will be limited to the accounting services necessary to complete the claim form or prepare documentation."  Accountants' out-of-pocket expenses are considered reimbursable. |

EXHIBIT B-4

**Policy 358 v.3: Claimant Accounting Support Services: Out-of-Pocket Expenses (Superseded by Policy 358 v.4)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/16/13
   c. Comment:

   BP defers to CA discretion on implementation of Section 4.4.13.5 consistent with the provisions of 4.4.13 in its entirety, including the CA Recommendation for Resolved Question 151 and the Answers to FAQ 101 and 102, and based on CA experience and the specific circumstances of each claim. (7/13/12); Agree. (2/11/13); Per CA Action, this Policy is Superseded by Policy ID 358. Accordingly, BP understands this policy will not be released, and it need not comment upon the classification. BP requests CA advise on whether BP's understanding is correct. If not, BP will provide a final comment. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/2/13
   c. Comment:

   No one contemplated that there would be an exhaustive review by the Program of what specific claims preparation services are and are not "necessary". The Program should generally review for "red flags". It should generally be presumed that services provided and reimbursed within the total percentage limitations (at the limited hourly rate) are necessary and reasonable. Claimants may still use accountants to help them assemble, organize and submit their financial information, even if they ask the Program to select the Benchmark and Compensation Periods. Subject to the overall percentage limitations, any out-of-pocket expenses should be included. (7/15/12); Can be promulgated as CA Decision. (1/30/13); Appears to have been superseded by No. 358. (4/2/13)

EXHIBIT B-4

## DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-358 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Claimant Accounting Support: Eligibility | |
|---|---|---|
| **Active Date** | 7/13/12 | **Policy Impact** | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Section 4.4.13.1 |
| **Affected Claim Types and/or Review Processes** | | Acct. Support |

### II. Summary

Claimant Accounting Support is available to IEL, BEL, and Seafood Claimants.

## Policy 358 v.2: Claimant Accounting Support: Eligibility
## (Superseded by Policy 358 v.3)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as a Final Policy
   b. Date:  4/16/13
   c. Comment:

   Pursuant to Settlement Agreement sections 4.4.13, 4.4.13.1, 38.55 and 38.59, claimants who file Economic Damage claims are entitled to reimbursement for accounting support services from the BP Parties, and claimants who make Seafood Compensation Program claims are entitled to accounting fee reimbursement paid out of the Seafood Compensation Fund.  No other claimants are entitled to accounting support services reimbursement.  Economic Damage claims do not include Seafood Compensation Program, Coastal Real Property Damage, Real Property Sales Damage, Wetlands Real Property Damage, Vessel Physical Damage, VoO Charter Payments, or Subsistence Damage.  The terms, conditions, guidelines, and restrictions of the accounting reimbursement program are found in sections 4.4.13.1 through 4.4.13.11. (5/22/12); Responding to J. Rice 5/12 Comments: BP disagrees.  See BP's response to Question 143.  (5/24/12); BP agrees with the CA Recommendation (6/15/12); Agree (2/11/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date:  4/2/13
   c. Comment:

   J. Rice: Accounting support is available for all claim damages. (5/21/12); S. Herman: The Claimant Accounting Support reimbursement is in a Section [4] of general applicability. There is no language (nor was there an intention) to limit to Individual or Business Economic Loss. The only "exception" is that, for Seafood Claims, the reimbursement is paid out of the Seafood Fund. [Section 4.4.13] (5/26/12); S. Herman: There is no restriction. (5/31/12); Defer to CA (6/14/12); Can be promulgated as CA Decision. (1/30/13); Appears to have been superseded by No. 358. (4/2/13)

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-358 | CLAIMS ADMINISTRATOR'S APPROVED POLICY | |
|---|---|---|
| **I. Profile** | | |
| Subject | Claimant Accounting Support Services: Internal Accountants | |
| **Active Date** | 5/26/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Section 4.4.13 |
| **Affected Claim Types and/or Review Processes** | | Acct. Support |
| **II. Summary** | | |

We will allow claimants with sufficient documentation to receive reimbursement for internal accountants.

EXHIBIT B-4

## Policy 358 v.1: Claimant Accounting Support Services: Internal Accountants (Superseded by Policy 358 v.2)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as a Final Policy
   b. Date:  4/16/13
   c. Comment:

   BP is fine with the proposal (from CA)  provided that the internal accountant and the services performed by the internal accountant satisfy the guidelines set forth in 4.4.13.1 through 4.4.13.16, and in particular the requirements of 4.4.13.3 (5/22/12); Responding to J. Rice 5/21 Comment: BP does not disagree.  See BP's response to Question 145. (5/24/12); Agree. (2/11/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date:  4/2/13
   c. Comment:

   J. Rice:  Law firms using internal accounting should be eligible for reimbursement (5/21/12); S. Herman: Section 4.4.13 specifically contemplates that these services could be obtained, and would be reimbursed if obtained, either "directly by the Claimant" or by "counsel if individually represented (and/or his or her or its accountant)" [see also Section 4.4.13.2]. As long as the services are provided by a retained professional under Section 4.4.13.3, and the reimbursement is limited to the amounts outlined in Sections 4.4.13.6–4.4.13.8, it doesn't matter how the Claimant (and/or his attorney) contracts or arranges for the performance of those services. It appears that the Program or BP may have at some point disagreed. (5/26/12); Can be promulgated as CA Decision. (1/30/13); Appears to be Superseded by No. 358. (4/2/13)

EXHIBIT B-4

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-358 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | |
|---|---|---|
| **Subject** | Claimant Accounting Support Services: Time of Reimbursement | |
| **Active Date** | 5/21/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Section 4.4.13 |
| **Affected Claim Types and/or Review Processes** | | Acct. Support |

| II. Summary |
|---|
| We will reimburse claimants with sufficient documentation at the same time they receive any settlement payments. |

EXHIBIT B-4

## Policy 358 v.0: Claimant Accounting Support Services: Time of Reimbursement (Superseded by Policy 358 v.1)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Accept as a Final Policy
   b. Date: 4/16/13
   c. Comment:

   BP agrees (with CA assumption) that if a claimant submits the necessary proof for accounting support services with the claim, including proof of payment, and is found eligible, you may include the accounting support services reimbursement in the payment when you first send the settlement payment check. See Settlement Agreement sections 4.4.13 and 4.4.13.12. The letter to the claimant should make clear what amount is for accounting support services reimbursement and what amount is for other aspects of their claim. (5/22/12); Responding to J. Rice 5/21 Comment: Per the settlement agreement, this is only reimbursement for approved accounting fees already paid by the claimant. BP agrees reimbursement for such accounting fees incurred can be simultaneous with payment to the claimant of the compensation amount. See BP's response to Question 144. (5/24/12); Agree. (2/11/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/2/13
   c. Comment:

   J. Rice: There is no reason you can't pay the accounting support services at the same time you pay the claimant. (5/21/12); Can be promulgated as CA Decision. (However, this is generally not happening. In particular, the Program is not reimbursing individual claimants that are being treated as Businesses and processed under Exhibit 4 for purposes of accounting reimbursement, but are capping them out at two hundred dollars.) (1/30/13); Looks like this is superseded by No. 358. (4/2/13)



**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-359 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| **I. Profile** | | | |
|---|---|---|---|
| **Subject** | Claimant Account Support: SWS-38 | | |
| **Active Date** | 4/23/13 | **Policy Impact** | ☐ All Claims Regardless of Active Date<br>☑ All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | | Acct. Support |

| **II. Summary** |
|---|
| The Claims Administrator modified the SWS-38 to require the accountant to check whether he or she had a written contract or an oral contract. If the contract is written, the accountant must submit the contract with the submission of SWS-38. If the contact is oral, the Claims Administrator will require the accountant to describe the terms of the agreement in the SWS-38. If an accountant has a contractual relationship with a claimant where he or she receives a contingency or success fee and additionally receives compensation on an hourly basis from the settlement fund to prepare the claim, the Claims Administrator will not pay the fixed fees/lump sums because hourly rates and time for compensation are required. The Claims Administrator will allow claimants with sufficient documentation to receive reimbursement for internal accountants. Section 4.4.13.6 indicates that the "Reimbursement will be limited to the accounting services necessary to complete the claim form or prepare documentation." Any work or Accountants' out-of-pocket expenses is reimbursable if the work and billing follows the rules and rates of the framework. |

## Policy 359 v.3: Claimant Accounting Support: SWS-38

Comments and Decisions by the Parties:

1. **BP**
    a.  Decision:  Defer to Claims Administrator Decision
    b.  Date:  4/16/13
    c.  Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
    a.  Decision:  Defer to Claims Administrator Decision
    b.  Date:  4/2/13
    c.  Comment:

   Should be published as a CA Decision. (4/2/13)

EXHIBIT B-4

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-359 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

## I. Profile

| Subject | Claimant Accounting Support: SWS-38 | |
|---|---|---|
| Active Date | 7/18/12 | Policy Impact | ☐All Claims Regardless of Active Date<br>☑All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision |
| Settlement Agreement Reference | | Section 4.4.13.4 |
| Affected Claim Types and/or Review Processes | | Acct. Support |

## II. Summary

We modified the SWS-38 to require the accountant to check whether he or she had a written contract or an oral contract. If the contract is written, we will require its submission with SWS-38. If the contact is oral, we will require the accountant to describe the terms of the agreement in the SWS-38.

## Policy 359 v.2: Claimant Accounting Support: SWS-38
## (Superseded by Policy 359 v.3)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Accept as a Final Policy
   b. Date: 4/16/13
   c. Comment: N/A

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/2/13
   c. Comment:

   Can be promulgated as CA Decision. (1/30/13); Appears to be superseded by No. 359.
   (4/2/13)

EXHIBIT B-4

## DEEPWATER HORIZON
# CLAIMS CENTER
### ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-359 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Accounting Support Reimbursement | | |
|---|---|---|---|
| **Active Date** | 7/18/12 | **Policy Impact** | ☐All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | BEL | |

### II. Summary

(a) Claimants are required to submit a copy of the contract or engagement letter between the claimant and the accounting firm that provided the services being reimbursed.
(b) The Program will not reimburse fixed fees or lump sums.  Claimants must submit documents showing hourly billing rates and time incurred.
(c) The Claims Administrator will add an Accounting Fees award to the Compensation Amount and then deduct prior payments to determine the claimant's resulting award amount.

EXHIBIT B-4

## Policy 359 v.1: Accounting Support Reimbursement
## (Superseded by Policy 359 v.2)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as a Final Policy
   b. Date:  4/16/13
   c. Comment:

The answer to subpart a is governed by Section 4.4.13.1 of the Settlement agreement, which provides that 'all Claimants who receive Settlement Payments for Economic Damage Compensation Amounts are eligible for reimbursement of accounting services." Section 38.184 of the Settlement Agreement defines "Settlement Payment" as "the Total Compensation Amount to be paid to a Claimant for any Claim made pursuant to the terms of the Agreement, including the Frameworks and exhibit," and Section 38.147 defines "Total Compensation" as "the Compensation Amount, plus any RTP and any other amounts due for any Claim less any applicable offsets under this Agreement or its Frameworks."   Thus, because the term "Settlement Payment" already incorporates deductions for offsets, Section 4.4.13.1 is clear by referring to "Settlement Payments" that accounting fees are only reimbursed if an actual Settlement Payment is being made to the Claimant.  Consequently, accounting fee reimbursement should not be awarded after the deduction of offsets because if done this way it is possible claimants could receive compensation for accounting fees even though they established no losses or were overpaid from period Spill-related payments and will not receive another payment from the DWH Settlement Program.

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date:  4/2/13
   c. Comment:

a) We defer to the Claims Administrator.  (This hopefully won't be an issue very often.)
b) We agree with BP that claims preparation services performed prior to the announcement of the Settlement should be reimbursable, subject to the limitations in Sections 4.4.13.6-4.4.13.8. (7/18/12); Should be harmonized as a CA Interpretation with Nos. 28, 71, 144, 145, 148, 163, 183, 184, and 190. (1/30/13); Appears to be superseded by No. 359. (4/2/13)

# DEEPWATER HORIZON
## CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-359 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Claimant Accounting Support: Fixed Fees | | |
|---|---|---|---|
| Active Date | 7/18/12 | Policy Impact | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision | |
| Settlement Agreement Reference | | Section 4.4.13.6 | |
| Affected Claim Types and/or Review Processes | | Acct. Support | |

### II. Summary

If an accountant has a contractual relationship with a claimant where he or she receives a contingency or success fee and additionally receives compensation on an hourly basis from the settlement fund to prepare the claim, we do not pay the fixed fees/lump sums. We will require hourly rates and time for compensation.

EXHIBIT B-4

## Policy 359 v.0: Claimant Accounting Support: Fixed Fees
## (Superseded by Policy 359 v.1)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as a Final Policy
   b. Date:  4/16/13
   c. Comment:

   Agree. (2/11/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date:  4/2/13
   c. Comment:

   Can be promulgated as CA Decision.  (1/30/13); Appears to be superseded by No. 359.
   (4/2/13)

EXHIBIT B-4



**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-360 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | | |
|---|---|---|---|
| **Subject** | Reimbursement of Claimant Accounting Support | | |
| **Active Date** | 4/23/13 | **Policy Impact** | ☐All Claims Regardless of Active Date<br>☑All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | Acct. Support | |

## II. Summary

Benefit Available. Section 4.4.13 of the Settlement Agreement authorizes the Claims Administrator to reimburse claimants for reasonable and necessary accounting fees relating to claim preparation.

Rates and Limits for Claims by Individual Claimants.  Under Sections 4.4.13.6 and 4.4.13.7 of the Settlement Agreement, Individual Claimants with claims over $10,000 may receive up to 2% of their Economic Damage Compensation Amount (excluding the Risk Transfer Premium) as reimbursement for Claimant Accounting Support, up to a maximum of $6,000.  All other claims of Individual Claimants are limited to $200 in reimbursement. The Claims Administrator will reimburse for Preparation hours at rates of up to $85 and Supervision and Review hours at rates of up to $130 for Individual Claimants.

Rates and Limits for Claims by Business Claimants. Under Sections 4.4.13.6 and 4.4.13.8 of the Settlement Agreement, Business claimants with claims over $50,000 may receive up to 2% of their Economic Damage Compensation Amount excluding the Risk Transfer Premium as reimbursement for Claimant Accounting Support, up to a maximum of $50,000. All other claims of Business Claimants are limited to $1,000 in reimbursement. The Claims Administrator will reimburse for Preparation hours at rates of up to $110 and Supervision and Review hours at rates of up to $160 for Business claimants.

Review and Supervision Hours.  Section 4.4.13.6 of the Settlement Agreement limits reimbursement for Review and Supervision hours to 25% of the total time spent on the claim.  The Claims Administrator calculates the 25% limit for Review and Supervision hours using the following formula:

$$.25 = \frac{\text{Supervision and Review Hours}}{\text{Supervision and Review Hours} + \text{Preparation Hours}}$$

Awards.  Claimants will receive reimbursement for all Preparation hours and up to the allowed 25% limit for Review and Supervision hours up to the rates provided by Sections 4.4.13.7 and 4.4.13.8.  The Claims Administrator calculates the total hours expended by the accountants on the claim and then determines whether the Review and Supervision hours exceed the 25% limit.  The Claims Administrator will not reimburse for Review and Supervision hours in excess of the 25% limit, regardless of whether the award has reached the overall limits on accounting reimbursements.

EXHIBIT B-4

## Policy 360 v.2: Reimbursement of Claimant Accounting Support

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/2/13
   c. Comment:

   Should be published as a CA Decision. (4/2/13)

EXHIBIT B-4

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-360 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Reimbursement of Claimant Accounting Support | | |
|---|---|---|---|
| **Active Date** | 10/10/12 | **Policy Impact** | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | Sections 4.4.13.6, 4.4.13.7, and 4.4.13.8 |
| **Affected Claim Types and/or Review Processes** | | | BEL |

### II. Summary

**Benefit Available.** Section 4.4.13 of the Settlement Agreement authorizes the Claims Administrator to reimburse claimants for reasonable and necessary accounting fees relating to claim preparation.

**Rates and Limits for Claims by Individual Claimants.** Under Sections 4.4.13.6 and 4.4.13.7 of the Settlement Agreement, Individual Claimants with claims over $10,000 may receive up to 2% of their Economic Damage Compensation Amount (excluding the Risk Transfer Premium) as reimbursement for Claimant Accounting Support, up to a maximum of $6,000. All other claims of Individual Claimants are limited to $200 in reimbursement. The Claims Administrator will reimburse for Preparation hours at rates of up to $85 and Supervision and Review hours at rates of up to $130 for Individual Claimants.

**Rates and Limits for Claims by Business Claimants.** Under Sections 4.4.13.6 and 4.4.13.8 of the Settlement Agreement, Business claimants with claims over $50,000 may receive up to 2% of their Economic Damage Compensation Amount (excluding the Risk Transfer Premium as reimbursement for Claimant Accounting Support, up to a maximum of $50,000. All other claims of Business Claimants are limited to $1,000 in reimbursement. The Claims Administrator will reimburse for Preparation hours at rates of up to $110 and Supervision and Review hours at rates of up to $160 for Business claimants.

**Review and Supervision Hours.** Section 4.4.13.6 of the Settlement Agreement limits reimbursement for Review and Supervision hours to 25% of the total time spent on the claim. The Claims Administrator calculates the 25% limit for Review and Supervision hours using the following formula:

$$.25 = \frac{\text{Supervision and Review Hours}}{\text{Supervision and Review Hours} + \text{Preparation Hours}}$$

**Awards.** Claimants will receive reimbursement for all Preparation hours and up to the allowed 25% limit for Review and Supervision hours up to the rates provided by Sections 4.4.13.7 and 4.4.13.8. The Claims Administrator calculates the total hours expended by the accountants on the claim and then determines whether the Review and Supervision hours exceed the 25% limit. The Claims Administrator will not reimburse for Review and Supervision hours in excess of the 25% limit, regardless of whether the award has reached the overall limits on accounting reimbursements.

## Policy 360 v.1: Reimbursement of Claimant Accounting Support (Superseded by Policy 360 v.2)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as a Final Policy
   b. Date:  4/16/13
   c. Comment:

   Agree.  Disagree with Class Counsel italicized comment.  Individuals processed as businesses are subject to the BEL framework, and are treated as businesses. (2/11/13)

2. **Class Counsel**
   a. Decision:  Accept as a Final Policy
   b. Date:  4/2/13
   c. Comment:

   Should be promulgated as a CA Decision. (Again, however, when an individual is compensated under the Agreement as a "Business" then it should receive the Accountant Services Reimbursement available to a Business.) (1/30/13); Should be published as a CA Decision, but the Policy should be: "...the accountants will use discretion to apply the classification that best conforms to delineations made by the Parties, as reflected in Ex. 4D. (4/2/13)

EXHIBIT B-4

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-360 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Business Economic Loss Claims: Claimant Accounting Support | |
|---|---|---|
| Active Date | 7/15/12 | Policy Impact | ☐All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision |
| Settlement Agreement Reference | | |
| Affected Claim Types and/or Review Processes | | BEL |

### II. Summary

Section 4.4.13.1 states that all claimants who receive Settlement Payments for Economic Damage Compensation Amounts are eligible for reimbursement of accounting services. Accountants are only compensated for services if the claimant is determined to be compensable and payments are made from the settlement fund.

EXHIBIT B-4

## Policy 360 v.0: Business Economic Loss Claims: Claimant Accounting Support
## (Superseded by Policy 360 v.1)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as a Final Policy
   b. Date:  4/16/13
   c. Comment:

Agree.  Harmonize with other accounting reimbursement entries. (2/11/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date:  4/2/13
   c. Comment:

Can be promulgated as CA Decision. (1/30/13); Appears to be superseded by No. 360. (4/2/13)

EXHIBIT B-4