

# SUBSISTENCE

| | Table of Contents | |
|---|---|---|
| | **Policy** | **Page(s)** |
| 1. | Policy ID 27:  Subsistence Claims: Traditional or Customary Manner | 1-3 |
| 2. | Policy ID 127:  Subsistence Claims:  License Requirements | 4-5 |
| 3. | Policy ID 221 v 2:  Updated Seafood and Game Retail Price Chart | 6-7 |
| 4. | Policy ID 221 v 1:  Substance Claims:  Fishing and Hunting Area Impairment | 8-9 |
| 5. | Policy ID 221 v 0:  Subsistence Claims:  Retail Price Chart | 10-11 |
| 6. | Policy ID 297 Subsistence Claims:  Field Visits | 12-13 |
| 7. | Policy ID 316 v 2:  Subsistence: Fishing or Hunting Area Impairment | 14-18 |
| 8. | Policy ID 316 v 1:  Subsistence Claims: Evidence of Impairment | 19-20 |
| 9. | Policy ID 316 v 0:  Subsistence Claims:  Evidence of Impairment | 21-22 |
| 10. | Policy ID 317 v 1:  Subsistence: Consumption and Bartering Calculation | 23-24 |
| 11. | Policy ID 317 v 0:  Compensation Formula for Consumption Losses | 25-26 |
| 12. | Policy ID 318:  Subsistence:  Claimant Activity Levels | 27-28 |
| 13. | Policy ID 435:  Subsistence Fishing and Hunting License Policy | 29-36 |
| 14. | Policy ID 436:  Subsistence Fishing or Hunting Area Impairment Policy | 37 |
| 15. | Policy ID 437:  Subsistence Third Party Sworn Written Statement Policy for Bartering Losses | 38 |
| 16. | Policy ID 438:  Subsistence Extended Family Member Policy | 39-41 |
| 17. | Policy ID 160:  Subsistence Claims: Interviews | 42-44 |

EXHIBIT B-6

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 27 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | | | |
|---|---|---|---|
| **Policy Subject** | Subsistence Claims: Traditional or Customary Manner | | |
| **Active Date** | 5/18/12 | **Policy Impact** | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 9, Section A(2) | |
| **Affected Claim Types and/or Review Processes** | | Subsistence | |

| II. Approved Policy |
|---|
| "Traditional or customary manner" means the claimant fishes, hunts, consumes, barters, and/or trades the resources in a manner that is traditional and customary to the claimant. |

## Policy 27: Subsistence Claims: Traditional or Customary Manner

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Whether the claimant satisfies the "traditional and customary manner" requirement may be informed by all three options raised by the CA -- claimant specific, ethnic specific and geographic specific. In particular, in arriving at a decision to incorporate the phrase "traditional or customary manner" into the definition of a "subsistence claimant," the parties both considered federal and state subsistence laws in effect for Alaskans. The federal subsistence management regulations that pertain to harvesting of fish and wildlife on federal public lands and waters in Alaska define "customary and traditional use" as "a long-established, consistent pattern of use, incorporating beliefs and customs transmitted from generation to generation. This use plays an important role in the economy of the community." (See "Management Regulations for the Harvest of Fish and Shellfish on Federal Public Lands and Waters in Alaska," pg 88, available at http://alaska.fws.gov/asm/pdf/fishregs11/entire.pdf; Management Regulations for the Harvest of Wildlife on Federal Public Lands and Waters in Alaska," pg 130, available at http://alaska.fws.gov/asm/pdf/wildregs12/book.pdf) Additionally, Alaska state regulations provide that in considering whether a fish stock or game population is one that is "customarily and traditionally taken or used by Alaskan residence for subsistence use" there are eight criteria considered: (1) length and consistency of use: a long-term consistent pattern of non-commercial taking, use and reliance on the fish stock or game population that has been established over a reasonable period of time of not less than one generation, excluding interruption by circumstances beyond the user's control, such as an unavailability of the fish or game caused by migratory patterns; (2) seasonality: a pattern of taking or use recurring in specific seasons of each year; (3) method and means of harvest: a pattern of taking or using consisting of methods and means of harvest that are characterized by efficiency and economy of effort and cost; (4) geographic areas: "the area in which the noncommercial, long term, and consistence pattern of taking, use, and reliance upon the fish stock and game population has been established; (5) means of handling, preserving and storing: "a means of handling, preparing, preserving, and storing fish and game that has been traditionally used by past generations, but not excluding recent technological advances where appropriate; (6) intergenerational transmission of knowledge, skills, values and lore: "a pattern of taking or use that includes the handing down of knowledge of fishing or hunting skills, values and lore from generation to generation"; (7) distribution and exchange: "a pattern of taking, use, and reliance where the harvest of effort or products of that harvest are distributed or shared, including customary trade, barter and gift-giving," and (8) diversity of resources in an area; economic, cultural, social and nutritional elements: "a pattern that includes taking, use, and reliance for subsistence purposes upon a wide variety of fish and game resources that provides substantial economic, cultural, social and nutritional elements of the subsistence way of life." (Alaska Admin. Code tit. 5, § 99.010 (2011), available at

EXHIBIT B-6

http://www.legis.state.ak.us/basis/folioproxy.asp?url=http://wwwjnu01.legis.state.ak.us/c
gi-
bin/folioisa.dll/aac/query=[Group+!275+aac+99!2E010!27!3A]/doc/{@1}/hits_only?first
hit; Alaska Dept. of Fish & Game, Customary and Traditional Use Determination,
http://www.adfg.alaska.gov/index.cfm?adfg=subsistence.customary).  BP encourages that
the Claims Administrator consider these and other relevant factors in determining
whether a claimant satisfies the "traditional and customary manner" component of the
subsistence claimant definition. (7/13/12); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:
It means the claimant fishes, hunts, consumes, barters, and/or trades the resources in a
manner that is traditional and customary to the claimant. (5/18/12); Should be
promulgated as a CA Decision. (1/30/13); Should be published as a CA Decision.
(4/2/13)

**EXHIBIT B-6**

# DEEPWATER HORIZON
## CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 127 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | |
|---|---|

| **Policy Subject** | Subsistence Claims: License Requirements |
|---|---|
| **Active Date** | 6/15/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | Exhibit 9, Section C(5) |
| **Affected Claim Types and/or Review Processes** | | | Subsistence |

| II. Approved Policy |
|---|

We will require each Subsistence Claimant who is not exempt from licensing to submit the following fishing and/or hunting licenses: (1) license(s) valid immediately before his or her loss period(s); and (2) license(s) valid at the beginning of his or her loss period(s).

EXHIBIT B-6

## Policy 127: Subsistence Claims: License Requirements

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Yes. Claimants must provide copies of valid licenses for 2009, 2010, and 2011 covering the activities for which Subsistence use is claimed. (5/11/12); Unless the claimant is in the group of persons not required to have a hunting and/or fishing license, the claimant must have a fishing and/or hunting license valid in 2009, 2010 and 2011. This requirement is relevant to whether a claimant satisfies the "subsistence claimant" definition. (5/31/12); BP agrees with the CA Recommendation (6/15/12); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Yes. Claimants must provide copies of valid licenses for 2009, 2010, and 2011 covering the activities for which Subsistence use is claimed (5/19/12); J. Rice: There is no requirement for 2009, 2010, and 2011 license found in Subsistence as BP asserts. C(5) only refers to "license" and no date. The issue is did claimant provide "sufficient information" as C requires. (5/21/12); S. Herman: Should accept license valid anytime between January 1, 2009 and December 31, 2011. (5/31/12); Defer to CA. (6/14/12); Should be promulgated as a CA Decision. (1/30/13); Should be published as a CA Decision. (4/2/13)

**EXHIBIT B-6**

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-221 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| **I. Profile** | | | |
|---|---|---|---|
| **Subject** | Updated Seafood and Game Retail Price Chart | | |
| **Active Date** | 8/2/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 9, Section B(3) | |
| **Affected Claim Types and/or Review Processes** | | Subsistence | |

| **II. Summary** |
|---|
| The Claims Administrator will use values recommended by BP for Seafood and Game, Class Counsel's recommended value for frogs, and values determined by the Claims Administrator for alligator and turtle. |

EXHIBIT B-6

## Policy 221 v.2: Updated Seafood and Game Retail Price Chart

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Accept as a Final Policy
   b. Date: 3/27/13
   c. Comment:

   BP believes the Claims Facility should adhere to its proposed approach discussed on July 18: "Our proposed price chart includes BP's values for Seafood and Game from May to December 2010, and May to December 2011, Class Counsel's recommended value for frogs, and our recommendations for alligator and turtle." This recommendation is supported by the fact that the original price chart provided by Class Counsel was not based on actual retail prices, unlike BP's chart, which reflected 2010 and 2011 retail prices. The new Class Counsel proposed retail price chart circulated on July 18, 2012 purports to provide retail prices as of 2-10-12. First, it does not make sense to base compensation for loss of resources in 2010 and/or 2011 on 2012 price. Second, no source is provided showing that these are actual retail prices; to the contrary, the spreadsheet reflects that Class Counsel have simply purported to list three times the wholesale price as the alleged "retail" price. There is no support for this assumption. (8/2/12); Agree. (2/11/13)

2. **Class Counsel**
   a. Decision: Accept as a Final Policy
   b. Date: 3/27/2013
   c. Comment:

   Class Counsel is submitting herewith an updated Retail Price Chart, (which we believe was circulated on July 18th). We agree with Brown Greer's approach to identifying current retail pricing in order to update the (out-of-date) GCCF-sourced prices; thus, as discussed at the meeting, this chart should only be used to ensure that all of the species listed on the Class Counsel Chart are also listed on the final Retail Price Chart. Brown Greer was to use their retail pricing method to determine the updated prices for all of the species added to the final Retail Price Chart from plaintiffs' chart. (8/2/12); Should promulgate Chart. (1/30/13)

EXHIBIT B-6

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-221 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Subsistence Claims: Fishing and Hunting Area Impairment | |
|---|---|---|
| Active Date | 5/21/12 | Policy Impact | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision |
| Settlement Agreement Reference | | Exhibit 9 |
| Affected Claim Types and/or Review Processes | | Subsistence |

### II. Summary

We will use the information provided by claimants about post-Spill fishing and or/hunting areas to determine how the Spill impaired such areas and reduced subsistence resources.

## Policy 221 v.1: Updated Seafood and Game Retail Price Chart
## (Superseded by Policy 221 v.2)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date: 4/16/13
   c. Comment: N/A

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date: 4/2/13
   c. Comment:

   The purpose of identifying the locations of post-Spill hunting and fishing, as well as the closure/impairment of those areas, and the percentage of pre-Spill catch gleaned from closed/impaired areas once the claimant returned to them, is to figure out how the Spill reduced the amount of subsistence resources the claimant could get, and how that negative effect changed over time as areas reopened and began to recover.(5/18/12); J. Rice: Where in C(2)(a) (Bates #028017) does Brown Greer find this indicator?  The location is only additional information to judge the validity of the claim and the reliability of the information.  It is not mandatory that it was closed waters the mere contamination risks could be sufficient to prevent them from fishing. (C(3) closed or impaired.) (5/21/12); Should be promulgated as a CA Decision. (Note that the second "use" should be deleted.) (1/30/13); Should be published as a CA Decision. (4/2/13)

EXHIBIT B-6

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-221 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---------|----------------------------------------|

### I. Profile

| Subject | Subsistence Claims: Retail Price Chart | |
|---------|------|---|
| **Active Date** | 5/18/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Exhibit 9, Section B(3) |
| **Affected Claim Types and/or Review Processes** | | Subsistence |

### II. Summary

We will use the Seafood and Game Retail Price Chart provided by the Parties.

EXHIBIT B-6

**Policy 221 v.0: Subsistence Claims: Retail Price Chart
(Superseded by Policy 221 v.1)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as a Final Policy
   b. Date:  4/16/13
   c. Comment:

   The parties are working on the referenced price chart and will provide it as soon as possible.  Some work by the Parties and Claims Administrator will be required to determine the amount of consumable product by species. (5/11/12); Agree. (2/11/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date:  4/2/13
   c. Comment:

   The Parties are scheduled to discuss this issue on Tuesday, May 22. (5/18/12); Should promulgate with Chart. (1/30/13); The Chart should be published as a CA Decision. (4/2/13)

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 297 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | |
|---|---|

| Policy Subject | Subsistence Claims: Field Visits |
|---|---|

| Active Date | 11/26/12 | Policy Impact | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
|---|---|---|---|

| Type of Decision | Claims Administrator Decision |
|---|---|

| Settlement Agreement Reference | Exhibit 9, Section E |
|---|---|

| Affected Claim Types and/or Review Processes | Subsistence |
|---|---|

| II. Approved Policy |
|---|

As stated in the Settlement Agreement, Field Visits are mandatory for Subsistence claims with payable base amounts above $10,000. The base amount is the total payable value of a Subsistence claim before it is multiplied by a Risk Transfer Premium of 2.25. The CADA will appoint a Field Visit Team to conduct Field Visits. The Field Visit Team will travel to the claimants' homes, dock locations, and other applicable areas to evaluate any equipment used by claimants for Subsistence purposes.

EXHIBIT B-6

## Policy 297: Subsistence Claims: Field Visits

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   See above, all need to be interviewed. (5/5/12); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Yes. Whether a claimant is interviewed or not is at the discretion of CADA and/or the Claims Administrator. (5/18/12); Should be published as a CA Decision. (4/2/13)

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-316 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Subsistence: Fishing or Hunting Area Impairment | | |
|---|---|---|---|
| **Active Date** | 1/2/13 | **Policy Impact** | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 9 | |
| **Affected Claim Types and/or Review Processes** | | Subsistence | |

### II. Summary

If a claimed Loss Period is greater than the closure period of the applicable area, the CADA Team will consider relevant reports attesting to impairment on a case-by-case basis. The claimant may also submit objective evidence of actual impairment to the CADA Team for consideration. Objective evidence of actual impairment may include reports of continued oiling, date-stamped photos, receipts for oil clean up, etc.

EXHIBIT B-6

## Policy 316 v.2: Subsistence: Fishing or Hunting Area Impairment

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date: 3/27/13
   c. Comment:

   BP agrees with Class Counsel's conclusion that "the plain language" of the Subsistence
   Framework must be honored.  However, it is Class Counsel, not BP, who seek to rewrite
   the plain language of the Subsistence Framework.  Class Counsel would ignore the plain
   language meaning of the term "impairment" and, instead, rewrite the Subsistence
   Framework by including a standard that would allow compensation for the  "perception
   of impairment."  The Oxford Dictionaries define impairment as "the state or fact of being
   impaired," in other words an objective standard.  Because, in fact, state and federal
   agencies monitoring seafood safety concluded that Gulf seafood was safe to eat post-
   Spill, there was no impairment to any geographic area on grounds of seafood safety.
   Rather, such a claim amounts to a subjective perception of impairment by the claimant,
   not actual impairment.  Indeed, this plain language interpretation of the term
   "impairment" is consistent with the definition of "Subsistence Claimant" provided in the
   Subsistence Framework which provides that the claimant to be compensated is one who
   "relied upon subsistence resources that were diminished or restricted in the geographic
   region used by the claimant due to or resulting from the DWH Spill." (Ex. 9, Section
   A.2, emphasis added)  Moreover, the notion of an objective test is consistent with the
   documentation requirements which call for the Claimant to provide "sufficient
   information for the Claims Administrator to determine" the "quantity of Gulf of Mexico
   natural resources from within the Class Definition geographic area lost by the
   Subsistence Claimant during the time period April 20, 2010 to December 31, 2011." (Ex.
   9, Section C, p.2) Among the "required documents" listed are "Length of time that fishing
   or hunting areas were closed or impaired as a result of the spill," as well as the
   requirement that information "provided on the claims form" is "to be confirmed by the
   claims facility by reference to closure maps and other relevant reports."  (Ex. 9, Section
   C.3., p.3)  Class counsel misunderstands BP's response on December 10, 2012 to the
   Settlement Program question regarding whether a claimant's listing of "unsafe seafood"
   constitutes an impairment.  BP did not then, and does not now, maintain that
   compensation is limited "to only those losses caused by the formal closure of harvesting
   areas."  It may be that a subsistence claimant will come forward with an actual
   impairment to a geographic area used for subsistence harvesting that is due or resulting
   from the DWH Spill, but an unsubstantiated contention that seafood was "unsafe" does
   not constitute actual impairment. And under no circumstances is a perceived impairment

(a novel and illogical concept) eligible for compensation under the Settlement.    Also, the generic claim by Class Counsel that there are "other Subsistence concepts" that must be considered from the "perspective of the Subsistence user" because of some asserted "Subsistence way of life" that "is as much a matter of culture and preference as of necessity" is not supported by the definition of "Subsistence Claimant" within the Subsistence Framework.  Rather, the Subsistence Framework expressly and precisely defines "Subsistence Claimant" as a Natural Person who (i) satisfies the Class Definition, (ii) who "fishes or hunts to harvest, catch, barter, consume or trade Gulf of Mexico natural resources (including Seafood and Game), in a traditional and customary manner, to sustain his or her basic personal or family dietary, economic security, shelter, tool or clothing needs," and (iii) who relied upon subsistence resources that were diminished or restricted in the geographic region used by the claimant due to or resulting from the DWH Spill."  (Ex. 9, Section A.2, emphasis added)  Moreover, the Documentation Requirements state that "the Claimant must provide sufficient information for the Claims Administrator to determine" that "the Claimant satisfies the Subsistence Definition...." (Ex. 9, Section C p. 2, emphasis added)   Finally, the subjective perceived impairment concept advocated by Class Counsel makes no sense.  Under that theory, a person who at all times was fully able to meet his or her subsistence needs, and who fished for subsistence resources that were in fact never impaired by the oil spill, nonetheless would have a claim for compensation under the Settlement based solely upon their own unique and subjective perception.  That is not what the Settlement Agreement provides. (12/27/12); Agree. (2/11/13)

2. **Class Counsel**
    a.   Decision:  Defer to Claims Administrator Decision
    b.   Date:  3/27/13
    c.   Comment:

The Subsistence Framework (Exhibit 9 to the Settlement Agreement) explicitly states that the loss period (i.e. compensation period) for Subsistence claimants is "the time period of loss of subsistence use consistent with the closure or impairment of geographic areas relied upon by the Claimant between April 20, 2010 and December 31, 2011" (emphasis added).  Throughout, the Subsistence Framework uses the terminology "closure or impairment" – never does the Framework refer to "closure" alone.  Thus, the plain language of the Subsistence Framework makes clear that "impairment" is not a synonym for "closure".  Impaired areas are those that remained open (i.e. not officially closed to fishing/hunting by the government), but which were nonetheless negatively affected (i.e. harvest there was "impaired") by the Spill.  During the parties' meeting with the CADA on October 3, 2012, the CADA recognized and acknowledged that the Subsistence Framework explicitly includes losses incurred as a result of "impaired" harvesting areas, and that closure and impairment are not synonymous.  Yet BP's approach would read

"impairment" out of the Framework, and attempt to limit compensation to only those losses caused by the formal closure of harvesting areas. This is inconsistent with both the intent and the language of the Settlement. Indeed, much attention was given to the inclusion of "impairment" during negotiation of the Subsistence Framework. As with other Subsistence concepts, impairment of a harvesting area must be considered from the perspective of the Subsistence user. The Subsistence way of life is as much a matter of culture and preference as of necessity. If a Subsistence user refrained from harvesting from an area post-Spill because there were lower-than-typical yields from that area, or poor quality yields, or yields that were questioned as potentially unsafe for consumption/use, then that judgment should be honored. Any corroborating evidence – including circumstantial evidence of such impairment – should be sufficient, especially since the Subsistence claimant is certifying, under penalty of perjury, the truth of his/her statements regarding the impairment of harvesting areas and his/her resulting losses. Nowhere in the Settlement Agreement or Subsistence Framework does it say that a Subsistence claimant must objectively prove impairment of harvesting areas. For example, a Subsistence claimant should not have to prove actual contamination of seafood from a particular harvesting area using scientific studies, as BP suggests. If a Subsistence claimant reasonably refrained from fishing in that area because of concern based on media reports or personal observation that fish from that area were not safe to eat that should be sufficient to show impairment under the terms of the Settlement. 1BP's reference to Dr. Tunnel's Declaration should be disregarded. The parties were not supposed to get "hired guns" to be advocates to make arguments to the Claims Administrator, especially with regard to arguments (such as those at issue here) that have already been made (and rejected) by agreement of the Parties during the Settlement negotiations. BP argues that governmental agencies monitored seafood safety post-Spill, and therefore Subsistence claimants should not be compensated for lost harvest from areas they refrained from fishing in based on media reports and personal observation of contaminated and unsafe seafood. However, as noted above, there is no requirement in the Settlement Agreement that a Subsistence claimant must objectively prove impairment by showing the seafood from a harvesting area was formally deemed to be unsafe by a governmental agency, or any other source. The reasonable judgment and observations of the Subsistence claimant regarding the impairment of a harvesting area should be sufficient. Moreover, the very fact that the State of Louisiana and other agencies found it necessary to continuously test the water and seafood for contamination for eighteen months post-Spill actually underscores that there was long-term, widespread concern about the safety of Gulf seafood post-Spill, supporting the reasonableness of Subsistence users' decisions to refrain from harvesting in those areas thought (and observed) to have potentially contaminated and unsafe sea life post-Spill. The Subsistence Framework explicitly intends to compensate losses caused by two situations – the closure of harvesting areas and the impairment of non-closed harvesting areas. Nothing in the

Settlement Agreement requires objective proof of such impairment, and BP's attempt to create such a requirement undermines the intent of the Settlement. The plain language of the Settlement Agreement and the reasonable judgment and observations of the Subsistence claimants should be honored and followed here. (12/16/12)



**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-316 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Subsistence Claims: Evidence of Impairment | | |
|---|---|---|---|
| **Active Date** | 5/25/12 | **Policy Impact** | ☑ All Claims Regardless of Active Date ☐ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 9, Section B(1) | |
| **Affected Claim Types and/or Review Processes** | | Subsistence | |

### II. Summary

There are circumstances where a fishing/hunting area could be impaired beyond the length of closure. However, we must have objective evidence that the Spill impaired a hunting or fishing area. If a claimant submits proof that the Spill impaired an area beyond the length of closure, we will use our discretion when considering that proof and whether it is objective evidence of impairment.

**Policy 316 v.1: Subsistence Claims: Evidence of Impairment
(Superseded by Policy 316 v.2)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as a Final Policy
   b. Date:  4/16/13
   c. Comment:

   See #326. (2/11/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date:  4/2/13
   c. Comment:

   Should be promulgated as a CA Decision. (1/30/13); Appears to be Superseded by No. 316. (4/2/13)

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-316 | CLAIMS ADMINISTRATOR'S APPROVED POLICY | |
|---|---|---|
| **I. Profile** | | |
| **Subject** | Subsistence Claims: Evidence of Impairment | |
| **Active Date** | 5/25/12 | **Policy Impact** | ☒All Claims Regardless of Active Date <br> ☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Exhibit 9, Section B(1) |
| **Affected Claim Types and/or Review Processes** | | Subsistence |
| **II. Summary** | | |

We must have objective evidence that the Spill impaired a hunting or fishing area. Oiling is one factor that would prove that the Spill impaired a hunting or fishing area. If a claimant submits proof that the Spill impaired an area that did not close or was not oiled, we will use our discretion when considering that proof and whether it is objective evidence of impairment.

EXHIBIT B-6

**Policy 316 v.0: Subsistence Claims: Evidence of Impairment
(Superseded by Policy 316 v.1)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as a Final Policy
   b. Date:  4/16/13
   c. Comment:

   See #326. (2/11/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date:  4/2/13
   c. Comment:

   Should be promulgated as a CA Decision. (1/30/13); Appears to be Superseded by No. 316. (4/2/13)

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-317 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | |
|---|---|---|
| **Subject** | Subsistence: Consumption and Bartering Calculation | |
| **Active Date** | 1/2/13 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Exhibit 9 |
| **Affected Claim Types and/or Review Processes** | | Subsistence |

| II. Summary |
|---|
| The CADA Team will use the formula presented in the 11/21/12 Subsistence Claims Review Updates Alert to calculate consumption and bartering losses with the exception of the activity levels as set forth in item 3 below. However, the CADA Team will continue to consider all claims on a case-by-case basis. |

EXHIBIT B-6

## Policy 317 v.1:  Subsistence: Consumption and Bartering Calculation

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date:  4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date:  4/2/13
   c. Comment:

   Should be published as a CA Decision. (4/2/13)

EXHIBIT B-6

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-317 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | | |
|---|---|---|---|
| **Subject** | Compensation Formula for Consumption Losses | | |
| **Active Date** | 11/26/12 | **Policy Impact** | ☐ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | Subsistence | |

| II. Summary |
|---|
| The Claims Administrator retained Peter T. Katzmarzyk, PhD, FACSM, FAHA, a Professor and Associate Executive Director for Population Science at the Pennington Biomedical Research Center in the Louisiana State University System, to assess and report on the actual caloric intake of residents in the Gulf Coast region. Dr. Katzmarzyk's recommended approach is to utilize the actual caloric intake of men and women of average height and weight in the United States who function at a "very active" physical activity level.  The Claims Administrator incorporated Dr. Katzmarzyk's recommendations into a revised Subsistence loss formula. The Subsistence loss formula is a tool that the Claims Administrator will use to calculate actual consumption rates that are reasonable for Gulf Coast residents. The calculation results will be used by the Court-Appointed Distribution Agent (CADA) Team as a guideline in which to compare actual reported losses for individual claimants. |

EXHIBIT B-6

## Policy 317 v.0:  Subsistence: Consumption and Bartering Calculation
## (Superseded by Policy 317 v.1)

Comments and Decisions by the Parties:

1.  **BP**
    a.  Decision:  Defer to Claims Administrator Decision
    b.  Date: 4/16/13
    c.  Comment: N/A

2.  **Class Counsel**
    a.  Decision:  Defer to Claims Administrator Decision
    b.  Date:  4/2/13
    c.  Comment:

The Subsistence framework was not intended to be tethered to calorie counts. The "reasonable consumption" language in the Subsistence framework was intended to mean that a claim amount should be held to a reasonableness standard in the context of Gulf of Mexico subsistence use. The reasonableness standard was not intended to act as a cap or to play any part in the subsistence compensation calculation itself; it is solely a reference point. [Plaintiffs' suggested Calculation is submitted for reference herewith.] (8/2/12); Should be published as a CA Decision. (4/2/13)

EXHIBIT B-6

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 318 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | |
|---|---|
| **Policy Subject** | Subsistence: Claimant Activity Levels |
| **Active Date** | 1/2/13 |
| **Policy Impact** | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| **Type of Decision** | Claims Administrator Decision |
| **Settlement Agreement Reference** | Exhibit 9 |
| **Affected Claim Types and/or Review Processes** | Subsistence |

| II. Approved Policy |
|---|

The Claims Administrator will consider each individual claimant to have a "very active" lifestyle reflective of that of harvesters. This consideration allows for the realistic estimate of the actual high caloric intake levels of Gulf Coast residents. All claimed family members will be considered to have an "active" lifestyle.

EXHIBIT B-6

## Policy 318: Subsistence: Claimant Activity Levels

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/16/13
   c. Comment:

Classify as CA Decision. Column G incorrectly states BP has "not answered" with regard to the substance of this policy.  BP requests this notation be struck from the spreadsheet and Policy Keeper, and that both be updated to reflect BP's comments.  BP provided a response regarding "reasonable consumption rates"  on 11/14/12 at 11:13 p.m. in a Bloom email to Reitano and others re Subsistence Claims - 11/7 Dr. Katzmarzyk Report, as well as in a 12/10/12 10:24 pm Bloom email to Reitano and others.   BP requests this spreadsheet and Policy Keeper be updated to reflect BP's substantive response.  (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/2/13
   c. Comment:

Should be published as a CA Decision. (4/2/13)

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-435 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

## I. Profile

| Subject | Subsistence Fishing and Hunting License Policy | | |
|---|---|---|---|
| Active Date | 5/13/13 | Policy Impact | ☐All Claims Regardless of Active Date<br>☑All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision | |
| Settlement Agreement Reference | | Exhibit 9, Section C.5 | |
| Affected Claim Types and/or Review Processes | | Subsistence | |

## II. Summary

Please see attached memo.

EXHIBIT B-6



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

*Subsistence Fishing and Hunting License Policy*

1. ***Introduction.*** The Claims Administrator adopted the rules and criteria set out in this outline for the evaluation and processing of documents supporting common fishing and hunting license exemptions and exceptions in Alabama, Florida, Louisiana, Mississippi and Texas. This outline does not include all fishing and hunting license exemptions in the Gulf States. Claimants who are exempt from licensing requirements may submit letters or Sworn Written Statements to verify their applicable exemptions.

2. ***License Requirements.*** Section C of Exhibit 9 to the Settlement Agreement requires Subsistence claimants to:

   > [P]rovide sufficient information for the Claims Administrator to determine (1) that the claimant satisfies the Subsistence Claimant definition and, (2) the quantity of Gulf of Mexico natural resources from within the Class Definition geographic area lost by the Subsistence Claimant during the time period April 20, 2010 to December 31, 2011.

   To satisfy this requirement, a Subsistence Claimant must submit the required documents set forth in Exhibit 9, including a "[c]opy of state and/or federal commercial or recreational fishing and/or hunting license. Deckhands or others that are not required to possess a fishing license are excused from this requirement."

   To date, the Claims Administrator requires claimants to submit licensing applicable to all claimed species before and in the beginning of the claimant's losses. If a claimant does not identify his or her claimed loss period, the Claims Administrator will use the date of the Spill (4/20/10) as the date in which a claimant's losses began and require licenses or applicable exemptions valid before and on 4/20/10. Claimants who are exempt from licensure are not required to submit licenses. Instead, they may submit letters or Sworn Written Statements attesting to their exemptions.

3. ***Licenses Valid Through the Date of the Spill and Excusable Gaps of Non-Licensure.*** The Court-Appointed Distribution Agent approved two exceptions to the general rule that claimants must submit licenses or exemptions for all claimed species that are valid before and in the beginning of their losses. The exceptions include:

   (a) **Licenses Valid Through the Date of the Spill.** Claimants who submit licenses that expired on or after the date of the Spill who typically do not fish and/or hunt until a season after April may submit copies of their licenses that were valid at the time of the Spill to satisfy the licensing requirement; they are not required to submit licenses valid for through the beginning of their losses.

   (b) **Excusable Gaps of Non-Licensure.** Claimants who submit licenses that include gaps in licensure may satisfy the license requirement if the gaps are not excessive and they provide licenses that are valid prior to the Spill. For example, a claimant may submit licenses valid from 1/1/09 through 12/31/09 and 7/1/10 through

1



**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

12/31/2010. While the claimant did not submit licenses valid at the time of the Spill, he or she would satisfy the license requirement under this exception.

4.  *Application of Disability Licenses.* The Claims Administrator considers any license labeled as a disability license as valid for the license holder's lifetime, unless the license includes an expiration date.

5.  *Application of Exemptions.* Exhibit 9, Section C.5 does not require claimants who are exempt from licensure to submit fishing and hunting licenses. They may submit letters or Sworn Written Statements attesting to their exemptions. Claimants do not need to sign letters attesting to their exemptions. Effective 5/13/13, the Claims Administrator adopts the following policies regarding license exemptions:

    (a) **Age Exemptions.** If a claimant submits a government-issued identification card and alleges that he or she is exempt from licensing due to age, a reviewer will use the claimant's date of birth as displayed on the identification card to verify the claimant's age in the beginning of his or her losses. If the claimant was not of the age to be exempt from licensure in his or her state of residence, the claim will be Incomplete for the missing license(s) or applicable exemptions.

    (b) **Disability Exemptions.** The Claims Administrator will not require proof of disability to verify a disability exemption.

    (c) **Other Exemptions.** Other exemptions may include but are not limited to: public fishing piers, hunting/fishing on private property, by-catch, alternative gear use and deckhand employment. Deckhands must submit Third Party Sworn Written Statements from their captains to verify their withheld landings or harvests.

6.  *Exemptions by State.* The following common exemptions may apply to Subsistence Claimants:[1]

    (a) **Alabama.** Alabama recognizes license exemptions for age, public fishing piers, ordinary hook and line in the county of residence and private property.

        (1) **Age.** Residents who are under the age of 16 or over the age of 64 are exempt from purchasing licenses related to hunting, freshwater fishing, saltwater fishing, WMA, and duck stamps.

        (2) **Public Fishing Pier.** Alabama does not require residents to possess fishing licenses to fish from licensed public fishing piers.[2]

---

[1] This list does not include all available exemptions in each Gulf State. The Claims Administrator may apply an exemption excluded from this list.
[2] Alabama Department of Conservation and Natural Resources, <u>Alabama Resident Commercial Licenses & Fees,</u> http://www.outdooralabama.com/licenses/ALLicenses/ResCom.cfm.

2

422985
5/13/13

EXHIBIT B-6



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

    (3) **Ordinary Hook and Line in the County of Residence.** Residents who fish from the bank with ordinary hook and line from the counties of their residences are exempt from licensure.[3]

    (4) **Private Property.** Alabama does not require licenses to fish in private lakes or ponds (with permission of the landowner) or hunt on private property (residents only).

Residents with disabilities are not exempt from licensing requirements; however, they may purchase disabled fishing licenses at a reduced rate.[4] Claimants with Alabama disabled fishing licenses must submit copies or records of their licenses in order to be eligible for compensation in the Subsistence Program.

**(b) Louisiana.** Common fishing and hunting license exemptions in Louisiana include age and Texas/Louisiana reciprocal licensing.

    (1) **Age.** Residents and non-residents who are younger than 16 years of age or those who have reached 60 years of age prior to 6/1/00 are not required to possess the following licenses: basic and saltwater fishing, basic hunting, big game, bow, muzzleloader, LA duck, and turkey stamp.

    (2) **Texas/Louisiana Reciprocity.** In Louisiana, Texas residents who are 65 years of age or older may fish with any type of valid Special Texas Resident license for seniors. Further, Texas and Louisiana anglers who possess the necessary resident licenses or those who are exempt from licensure in their states of residence are permitted to fish the state border waters of Louisiana and Texas without purchasing non-resident licenses.

Active military and people with disabilities must possess fishing and/or hunting licenses; however, they can obtain licenses at a reduced rate or for no cost.[5] Such claimants must submit copies or records of their fishing and/or hunting licenses in order to be eligible for compensation in the Subsistence Program.

**(c) Florida.** Common fishing and hunting license exemptions in Florida include age, saltwater fishing from land or structures fixed to land (residents who are eligible for the food stamp, temporary cash assistance, or Medicaid Program only) and certain exemptions by location type.

    (1) **Age.** Children under the age of 16 or residents over the age of 64 are exempt from the following licenses and permits: recreational hunting, freshwater fishing, saltwater fishing, Florida waterfowl, migratory bird,

---

[3] Ala. Admin. Code r §9-11-57(g) (2007).
[4] Alabama Department of Conservation and Natural Resources, Freshwater Fishing License and Application Packets, http://www.outdooralabama.com/licenses/fwfishlicinfo/.
[5] Louisiana Department of Wildlife and Fisheries, Exceptions and Exemptions, http://www.wlf.louisiana.gov/licenses/exceptions-and-exemptions.

3



**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

deer, turkey, snook, spiny lobster, archery season, crossbow season, muzzleloading season permit or management area permit.

(2) **Saltwater Fishing From Land or Structures Fixed to Land.** Residents who are saltwater fishing from land or structures fixed to land and are eligible for the food stamp, temporary cash assistance, or Medicaid Program by the Department of Children and Families are exempt from saltwater fishing and snook or spiny lobster permit requirements.

(3) **Hunting Wild Hog on Private Land.** Individuals who hunt wild hog on private land are exempt from licensure.

(4) **Homestead Freshwater Fishing or Hunting.** A resident who freshwater fishes or hunts in the county of his or her homestead or the homestead of his or her spouse or minor child is exempt from licensure. A minor child hunting or freshwater fishing on the homestead of his or her parent is also exempt from licensure.

Residents with disabilities must possess fishing and/or hunting licenses; however, they can obtain licenses at a reduced rate or for no cost. Such claimants must submit copies or records of their fishing and/or hunting licenses in order to be eligible for compensation in the Subsistence Program.[6]

(d) **Mississippi.** Mississippi recognizes license exemptions for residents who are disabled or aged 65 years or older.

(1) **Age.** Prior to 7/1/10, seniors aged 65 years or older were not required to possess fishing licenses.[7] As of 7/1/10, seniors are required to purchase lifetime recreational Saltwater Fishing Licenses. Seniors may optionally purchase Exempt Lifetime Licenses for a small fee. The Senior Exempt Lifetime License includes: all game hunting, freshwater fishing, archery/primitive weapon, and WMA user permit.[8]

(2) **Disability.** Mississippi does not require residents who are blind, paraplegic, multiple-amputee, adjudged totally disabled by the Social Security Administration or totally service connected disabled by the Veterans Administration to possess fishing or hunting licenses.[9]

---

[6] Florida Fish and Wildlife Conservation Commission, Exemptions – Do I need a license or permit, http://myfwc.com/license/recreational/do-i-need-a-license/.
[7] Mississippi Department of Wildlife, Fisheries, and Parks, Fishing License, http://www.mdwfp.com/license/fishing-license.aspx.
[8] Mississippi Department of Wildlife, Fisheries, and Parks, Senior Exempt Lifetime License, http://www.mdwfp.com/license/senior-exempt-license.aspx. MS. Code 49-7-9 specifies that residents ages 16 through 64 who fish in the fresh or marine waters of Mississippi (excluding privately owned ponds and streams) are required to purchase fishing licenses.
[9] Mississippi Department of Wildlife, Fisheries, and Parks, Fishing License, http://www.mdwfp.com/license/fishing-license.aspx.

4



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

**(e) Texas.** Texas recognizes licensing exemptions for residents with mental disabilities, age, fishing in private waters and Texas/Louisiana reciprocity.

    **(1) Mentally Disabled Residents.** Mentally disabled residents who fish as a part of medically approved therapy and are supervised by personnel approved or employed by hospitals, residences or schools for mentally disabled persons are not required to possess fishing licenses. Further, mentally disabled residents who recreationally fish under the direct supervision of licensed family members or licensed anglers with permission from the families to take the mentally disabled residents fishing are also not required to possess fishing licenses.

    **(2) Age.** Residents born before 1/1/31 and youth who are age 16 or younger are exempt from fishing license requirements. Youth who are age 16 years or younger are required to possess hunting licenses; however, they are exempt from state stamp endorsement requirements.[10]

    **(3) Fishing in Private Waters.** Texas does not require anglers who fish in private waters to possess licenses.[11]

    **(4) Texas/Louisiana Reciprocity.** Louisiana seniors, 65 years of age or older, are not required to purchase non-resident licenses to fish in Texas public waters. They are permitted to fish in Texas waters if they possess Louisiana Senior Fishing Licenses. Further, Texas and Louisiana anglers who possess the necessary resident licenses or those who are exempt from licensure in their states of residence are permitted to fish the state border waters of Louisiana and Texas without purchasing non-resident licenses.

7. **Common Fishing and Hunting License Exemptions Summary.** A summary of the exemptions discussed in this outline is attached as Exhibit A.

---

[10] Texas Parks and Wildlife Department, <u>Licenses – Frequently Asked Questions</u>, http://www.tpwd.state.tx.us/faq/business/license/.
[11] Texas Parks and Wildlife Department, <u>Frequently Asked Questions – Fishing</u>, http://www.tpwd.state.tx.us/faq/fishboat/fish/.

5

422985
5/13/13



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

**Exhibit A**

**Common Fishing and Hunting License Exemptions Summary**

6

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

## Common Fishing and Hunting License Exemptions[12]

| State | Disability Exemptions | Age Exemptions | Reciprocal | Other |
|---|---|---|---|---|
| Alabama | None | Exemption Accepted (Under 16 or Over the Age of 64) | None | Public Fishing Pier; Fishing/Hunting on Private Property; Fishing With Hook and Line in County of Residence |
| Florida | None | Exemption Accepted (Under 16 or Over the Age of 64) | None | Homestead Hunting or Fishing; Hunting Wild Hog on Private Land; Saltwater Fishing From Land/Land Structures (Residents Eligible for Food Stamp, Temporary Cash Assistance, or Medicaid Program Only) |
| Louisiana | None | Exemption Accepted (60 Years Old Prior to 6/1/00 or Under 16) | TX Residents May Fish in LA Waters with Valid Special Texas Resident Licenses for Seniors; TX Residents May Fish in TX/LA Border Waters with TX Licenses | N/A |
| Mississippi | Exemption Accepted (Residents Only) | Exemption Accepted (65 Years Old Prior to 7/1/10) | None | N/A |
| Texas | Mentally Disabled Residents (Fishing as Therapy or Supervised by Licensed Anglers Only) | Exemption Accepted (Residents born before 1/1/31) | LA Residents May Fish in TX Waters with Louisiana Senior Fishing Licenses; LA Residents May Fish in TX/LA Border Waters with LA Licenses | Fishing in Private Waters |

[12] Exemption details are available in the narrative outline. This chart does not include all exemptions available in each state.

7

Page 36 of 44

422985
5/13/13

EXHIBIT B-6

**DEEPWATER HORIZON**
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-436 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | | |
|---|---|---|---|
| **Subject** | Subsistence Fishing or Hunting Area Impairment Policy | | |
| **Active Date** | 5/13/13 | **Policy Impact** | ☐All Claims Regardless of Active Date<br>☒All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 9, Section B.1 | |
| **Affected Claim Types and/or Review Processes** | | Subsistence | |

| II. Summary |
|---|

In calculating compensation, Exhibit 9, Section B.1 of the Settlement Agreement requires the Claims Administrator to identify "the time period of loss of subsistence use consistent with the closure or impairment of geographic areas relied upon by the Claimant between April 20, 2010 and December 31, 2011." In accordance with this requirement, the Claims Administrator adopted the rules and criteria set out in this outline for the evaluation of fishing or hunting area impairment proof.

Proof of Impairment. The claimant shall attest to the length of time that his or her fishing or hunting areas were closed or impaired as a result of the Spill. The claimed loss period must be consistent with the closure or impairment of the applicable geographic areas between April 20, 2010 and December 31, 2011. If a claimed Loss Period is greater than the closure period of the applicable area, the Court-Appointed Distribution Agent (CADA) Team will consider relevant reports attesting to impairment on a case-by-case basis. To verify the period of an area's impairment, the claimant or his or her attorney must submit objective evidence of actual impairment to the CADA Team for consideration. Objective evidence of actual impairment may include:
(a) Reports of continued oiling;
(b) Date-stamped photos;
(c) Marina closure reports;
(d) Receipts/invoices for oil removal from a boat;
(e) Description of necessity to traverse through closed areas;
(f) Receipts/invoices for boat repairs due to oil contamination;
(g) Boat launch closure announcements;
(h) Fuel dock closure announcements;
(i) Boom location reports; and
(j) Receipts for oil clean up.

A claimant must also complete and submit a Sworn Written Statement attesting to the impairment of the area. The Sworn Written Statement must be sufficiently detailed to document the time period, location and cause of the location's impairment. A form Fishing or Hunting Area Impairment Sworn Written Statement, SWS-43, is available in Claimant Assistance Centers and on the DWH website (www.deepwaterhorizoneconomicsettlement.com). Without such evidence of actual impairment, the loss period will be calculated consistent with the closure of the applicable geographic area.

CADA and CADA Team Discretion. The CADA and CADA Team have the discretion to determine whether a claimant's documentation is sufficient to demonstrate the impairment of a fishing or hunting area for a certain period. For example, a claimant who alleges that he or she suffered from impairment for six weeks and provides an article describing impairment for three weeks within that period, the CADA or CADA team has the discretion to approve all six weeks of impairment or a period fewer than six weeks. Alternatively, the CADA or CADA Team has the discretion to determine that such documents are insufficient to prove impairment for any period.

EXHIBIT B-6

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-437 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | | |
|---|---|---|---|
| Subject | Subsistence Third Party Sworn Written Statement Policy for Bartering Losses | | |
| Active Date | 5/7/13 | Policy Impact | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| Type of Decision | | | Claims Administrator Decision |
| Settlement Agreement Reference | | | Exhibit 9, Section C.4.a |
| Affected Claim Types and/or Review Processes | | | Subsistence |

| II. Summary |
|---|
| Discretionary Third Party Sworn Written Statement Requirement to Verify Bartering Losses. Section C.4.a of Exhibit 9 of the Settlement Agreement permits members of the claims administration staff to require additional affidavits from third parties or other appropriate supporting information following interviews with Subsistence claimants. The Court¬Appointed Distribution Agent (CADA) and the CADA Team may exercise this discretion to require Subsistence Third Party Sworn Written Statement(s) from the person(s) with whom a claimant barters or at least one person who observed his or her bartering activities. The CADA or CADA Team may exercise this discretion on a case¬by¬case basis when necessary to verify lost bartered quantities that are more than nominal. The CADA or CADA Team also has the discretion to determine whether a completed Third Party Sworn Written Statement verifies all, part or none of the bartered quantities of Seafood or Game a claimant alleges to have lost as a result of the Spill and adjust a claims review accordingly. |

EXHIBIT B-6

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-438 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | |
|---|---|---|
| **Subject** | Subsistence Extended Family Member Policy | |
| **Active Date** | 5/13/13 | **Policy Impact** | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Exhibit 9, Section B.2 |
| **Affected Claim Types and/or Review Processes** | | Subsistence |

| II. Summary |
|---|
| Please see attached memo. |

EXHIBIT B-6



**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

*Subsistence Extended Family Member Policy*

1. *Introduction.* The Claims Administrator adopted the rules and criteria set out in this outline for the evaluation of familial and non-familial relationships identified in Subsistence Claims.

2. *Exhibit 9 – Extended Family Members.* In calculating compensation, Section B.2 of Exhibit 9 to the Settlement Agreement requires the Claims Administrator to:

> Identify the quantity of lost natural resources, including Seafood and Game. This will include quantity of lost natural resources given to members of Claimant's extended family unit for their personal consumption or for the purposes of barter.

To satisfy this requirement, Subsistence Claimants must identify their family members in their Subsistence Interview Forms and their total family members who rely on their Subsistence activities in their Claim Forms.

3. *Inclusion of Family Members in the Subsistence Compensation Calculation.* The Subsistence compensation calculation considers the age and gender of each family member to determine a claimant's total payment offer. The Settlement Program will only include family members within this calculation, and it will exclude all confirmed non-family members from the calculation.

In determining family member versus non-family member relationships, a reviewer will evaluate a claimant's documents to determine if the claimant identified a non-family member relationship for a person included in the Subsistence Interview Form. If the claimant associated the person with a non-family member relationship, the reviewer will exclude the person from his or her review. If the claimant associated the person with a family member relationship, the reviewer will include the person in his or her review as a family member. If the claimant associated the person with a non-family member relationship in one document and a family member relationship in another document, the reviewer will include the person as a family member in his or her review. If the claimant did not identify any relationship in his or her documents and the claimant included the person in the Subsistence Interview Form, the reviewer will include the person in his or her review as a family member. The basis for this conclusion is that the claimant swore under penalty of perjury that the individuals included within the Subsistence Interview Form are family members.

4. *Familial Relationships.* The Court-Appointed Distribution Agent (CADA) identified the following relationships as extended family member relationships. The CADA has the discretion to identify additional relationships outside of this list as familial:

> (a) Aunt;
> (b) Brother;
> (c) Child;
> (d) Common-Law Husband;

1



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

(e) Common-Law Spouse;
(f) Common-Law Wife;
(g) Cousin;[1]
(h) Daughter;
(i) Father;
(j) Foster Brother;
(k) Foster Child;
(l) Foster Daughter;
(m) Foster Sister;
(n) Foster Son;
(o) Grandfather;
(p) Grandmother;
(q) Grandparent;
(r) Husband;
(s) Mother;
(t) Nephew;
(u) Niece;
(v) Parent;
(w) Sister;
(x) Spouse;
(y) Stepbrother;
(z) Stepchild;
(aa) Stepdaughter;
(bb) Stepparent;
(cc) Stepsister;
(dd) Stepson;
(ee) Uncle;[2] and
(ff) Wife.

5. **Non-Familial Relationships.** The CADA identified the following relationships as non-familial relationships. The CADA has the discretion to identify additional relationships outside of this list as non-familial:

(a) Boyfriend;
(b) Ex-Husband;
(c) Ex-Wife;
(d) Fiancé;
(e) Friend;
(f) Girlfriend; and
(g) Neighbor.

---

[1] The cousin category includes second-cousins, third-cousins, and other related cousin relationships.
[2] The aunt, grandfather, grandmother, grandparent and uncle categories include great-aunt, great-grandfather, great-grandmother, great-grandparent and other relationships within the same categories.

2

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 160 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | | | |
|---|---|---|---|
| **Policy Subject** | Subsistence Claims: Interviews | | |
| **Active Date** | 7/15/12 | **Policy Impact** | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 9 | |
| **Affected Claim Types and/or Review Processes** | | Subsistence | |

| II. Approved Policy |
|---|
| We will a conduct phone or in person interview as and when the we determine that doing so will facilitate the accurate processing of the claim or will address questions regarding the reliability of the evidence submitted on the claim. We will call a Subsistence Claimant to explain his or her incompleteness before we issue a Notice of Incompleteness. |

EXHIBIT B-6

## Policy 160: Subsistence Claims: Interviews

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Accept as a Final Policy
   b. Date: 4/16/13
   c. Comment:

   Interviews are mandatory.  The interviews provide the only standard for determining both causation and compensation. (5/5/12); BP further comments to specifically respond to Class Counsel emails. The terms of Ex. 9, the subsistence framework, do not allow for the subsistence claimant interview to be optional, rather each claimant must be interviewed in-person.  Section C(1)(4)(a) provides, "Following an interview with the claimant, members of the claims administration staff may, at their discretion, require an additional affidavit from a third party or other appropriate supporting documentation." Section D provides, "The CADA will conduct subsistence interviews with claimants and apply the compensation formula.  The CADA team shall establish a physical presence and a reasonable operating schedule to allow claimants to be interviewed in their geographical area including at Landing Dock locations."  Moreover, while Class Counsel suggest Ex. 8E, Addendum Regarding Interviews, pertains to subsistence claims, Ex. 8E pertains only to Individual Economic Loss claims.  As explained in the Settlement Agreement, Exhibits 8A to 8E pertain to individual economic loss claims (see Section 5.3.6.1) whereas Exhibit 9 sets forth the subsistence framework  (see Section 5.4.1). Indeed, Exhibit 9 makes no reference at all to the Ex. 8E whereas Ex. 8A expressly reference to the Addendum (see Ex. 8A, Category I, section B(2)(b)(iii) pg 14, Category II, section B(2)(b)(iii) pg 23, Category III, section B(2)(c)(iii) pg 37, Category IV introduction pg. 44).  (5/31/12); BP defers to the sound discretion of the Claims Administrator, reserving its right to revisit the issue, and to perhaps convene a Panel if necessary, if and as any problems or concerns may be reported or encountered in the processing of the claims. (6/25/12); Agree. (2/11/13); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date: 4/2/13
   c. Comment:

   Interviews are not mandatory; they are available at the discretion of the CADA/Claims Administrator when necessary to clarify or verify information provided by the claimant. The Parties are scheduled to discuss and resolve this issue on Tuesday, May 22 (5/18/12).; J.Rice: Subsistence interviews are not mandatory. (5/21/12); S. Herman: Class Counsel understood that this issue was resolved on May 21. Per Lynn Greer: "We will conduct phone or in person interview as and when we determine that doing so will facilitate the accurate processing of the claim or will address questions regarding the reliability of the evidence submitted on the claim. We will contact a Subsistence Claimant for a phone interview before we issue a Notice of Incompleteness." Per Steve Herman: "We defer to the sound discretion of the Program at this point, reserving our

right to revisit the issue, and to perhaps convene a Panel if necessary, if and as any problems or concerns may be reported or encountered in the processing of the claims." (5/26/12); S. Herman: Class Counsel understood that this issue was resolved on May 21. Per Lynn Greer: "We will conduct phone or in person interview as and when we determine that doing so will facilitate the accurate processing of the claim or will address questions regarding the reliability of the evidence submitted on the claim. We will contact a Subsistence Claimant for a phone interview before we issue a Notice of Incompleteness." Per Steve Herman: "We defer to the sound discretion of the Program at this point, reserving our right to revisit the issue, and to perhaps convene a Panel if necessary, if and as any problems or concerns may be reported or encountered in the processing of the claims." (5/31/12); Defer to CA (6/14/12); Can be promulgated as a CA Decision. (1/30/13); Should be published as a CA Decision. (4/2/13)

EXHIBIT B-6



**APPEALS**

EXHIBIT B-6

| Table of Contents | |
|---|---|
| **Policy** | **Page(s)** |
| **1.**   Policy ID 119:  Appeals: Reconsideration Requirements | 1-2 |
| **2.**   Policy ID 248 v 1:  Notifying Claimant that BP has Appealed | 3-4 |
| **3.**   Policy ID 248 v 0:  BP's Appeal Rights are Triggered when we Issue the Initial Notice of Eligibility | 5-6 |
| **4.**   Policy ID 309:  Appeals: Re-Review Process | 7-8 |

EXHIBIT B-6

# DEEPWATER HORIZON
## CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 119 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | |
|---|---|

| **Policy Subject** | Appeals: Reconsideration Requirement |
|---|---|

| **Active Date** | 6/15/12 | **Policy Impact** | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
|---|---|---|---|

| **Type of Decision** | Claims Administrator Decision |
|---|---|

| **Settlement Agreement Reference** | |
|---|---|

| **Affected Claim Types and/or Review Processes** | Appeal |
|---|---|

### II. Approved Policy

We will require that a claimant request Reconsideration and receive a Post-Reconsideration Notice before submitting an Appeal to the Appeal Panel or to the Documentation Reviewer.

EXHIBIT B-6

## Policy 119: Appeals: Reconsideration Requirement

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/16/13
   c. Comment:

Filing for reconsideration is not a condition percent to filing an appeal (5/11/12); It is unclear to BP whether there is disagreement between BP and Class Counsel regarding question 89 (row 91).  BP and Joe Rice appear to agree that claimants need not seek reconsideration before filing an appeal, but there is a prior Class Counsel comment in Lynn's spreadsheet which seems to suggest Class Counsel have a view that claimants must first seek reconsideration.  (5/22/12); BP agrees with CA Recommendation (6/15/12); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

Agree that claimant must go through Reconsideration step first before filing an Appeal. (5/5/12); I believe the idea was that the Appeal would be a substantive appeal of the merits, based on complete (or as-complete-as-possible) documentation.  I think the Program's attempt to secure required documentation, with review by the Documentation Reviewer, was intended to be a separate process, which would occur prior to the substantive Appeal. (5/18/12); Based on what's written in Column E, we think that Reconsideration should generally precede an Appeal, and leave the mechanics to the Claims Administrator's discretion.  We would note, however, that any requirement to seek Reconsideration first cannot result in a situation where the person is procedurally estopped from review because he or she filed for an Appeal first;  (it should likely just be considered / treated as / transferred to a request for Reconsideration).  The Documentation Review is a little different.  Think someone should be able to have complete documentation before Reconsideration (or Appeal). - Having said all of that, we defer to the Program on this issue for now, and reserve the right to revisit and/or convene a Panel if necessary at a later time. (5/19/12); J. Rice: Option to file is ok with Joe. (5/21/12); S. Herman:  Reconsideration should generally precede an Appeal, and leave the mechanics to the Claims Administrator's discretion.  We would note, however, that any requirement to seek Reconsideration first cannot result in a situation where the person is procedurally estopped from review because he or she filed for an Appeal first;  (it should likely just be considered / treated as / transferred to a request for Reconsideration). The Documentation Review is a little different.  Think someone should be able to have complete documentation before Reconsideration (or Appeal). Having said all of that, we defer to the Program on this issue for now, and reserve the right to revisit and/or convene a Panel if necessary at a later time. (5/31/12); Should be promulgated as part of Appeal Protocol. (1/30/13); Should be promulgated as part of Appeal Protocol. (4/2/13)

EXHIBIT B-6

**DEEPWATER HORIZON**
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-248 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---------|----------------------------------------|

| I. Profile | | | |
|---|---|---|---|
| **Subject** | Notifying Claimant that BP has Appealed | | |
| **Active Date** | 6/25/13 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | Appeal | |

| II. Summary |
|---|
| A claimant is notified as soon as BP files an Appeal, regardless of whether the claimant's option to request Re-Review or Reconsideration is still available.  If the claimant requests Re-Review or Reconsideration, the Appeals process stops. |

EXHIBIT B-6

## Policy 248 v.1: Notifying Claimant that BP has Appealed

Comments and Decisions by the Parties:

**A. Policy Announced to Parties for Positions**

**1. BP**
   a. Decision:  Propose Modification
   b. Date:  5/22/13
   c. Comment:

It is BP's position that the Settlement Program should follow the original process discussed and decided at the Panel Meeting, namely that appeals filed by BP within the Claimant's reconsideration window are held under seal until the reconsideration deadline expires.  Alternatively, BP's deadline for filing an appeal should be tolled until the reconsideration deadline expires.

**2. Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  5/14/13
   c. Comment:  N/A

**B. Policy Reissued to Parties for Final Positions**

**1. BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  5/31/13
   c. Comment:

BP defers to the Claims Administrator, but BP respectfully disagrees with the Claims Administrator's Announced Policy as the Claims Administrator did not incorporate BP's proposed modification submitted on May 22, 2013 which stated:  "It is BP's position that the Settlement Program should follow the original process discussed and decided at the Panel Meeting, namely that appeals filed by BP within the Claimant's reconsideration window are held under seal until the reconsideration deadline expires.  Alternatively, BP's deadline for filing an appeal should be tolled until the reconsideration deadline expires."

**2. Class Counsel – No Response**
   a. Decision:
   b. Date:
   c. Comment:

EXHIBIT B-6

**DEEPWATER HORIZON**
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-248 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | BP's Appeal Rights Are Triggered When We Issue the Initial Notice of Eligibility | |
|---|---|---|
| Active Date | 8/24/12 | Policy Impact | ☐All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision |
| Settlement Agreement Reference | | |
| Affected Claim Types and/or Review Processes | | Appeal |

### II. Summary

A claimant is notified as soon as BP files an Appeal, regardless of whether the claimant's option to request Reconsideration is still available.  If the Claimant requests Reconsideration, the Appeals process stops.

EXHIBIT B-6

**Policy 248 v.0: BP's Appeal Rights Are Triggered When We Issue the Initial Notice of Eligibility (Superseded by Policy 248 v.1)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/16/13
   c. Comment:

   This policy should not be made availably publicly. It is BP's position that the Settlement Program should follow the original process discussed and decided at the Panel Meeting and acknowledged in the "update" portion of the policy, namely that appeals filed by BP within the Claimant's reconsideration window are held under seal until the reconsideration deadline expires. Alternatively, BP's deadline for filing an appeal should be tolled until the reconsideration deadline expires.

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/2/2013
   c. Comment:

   Should be promulgated as part of Appeal Protocol. (1/30/13); Should be published as a CA Decision, although: (i) Opt Out now moot; and (ii) would not use the word "offer". (It's a "determination".) (4/2/13)

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 309 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | | | |
|---|---|---|---|
| **Policy Subject** | Appeals: Re-Review Process | | |
| **Active Date** | 12/13/12 | **Policy Impact** | ☐All Claims Regardless of Active Date <br> ☐All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | | Appeal |

| II. Approved Policy |
|---|
| The Claims Administrator will implement the Re-Review process outlined in the memo dated 11/20/12 and flow chart. The Claims Administrator respectfully disagree with BP's arguments that: (1) the Settlement Agreement does not allow this; and (2) establishing it will compromise the finality this Program requires. Although the specific process is not spelled out in the Settlement Agreement, Exhibit 25 provides authority for the Claims Administrator to promulgate this process, and we think that having this process will provide finality sooner on more claims than the current process provides. The Claims Administrator announced this policy decision in a memo dated 12/13/12. |

EXHIBIT B-6

## Policy 309: Appeals: Re-Review Process

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/16/13
   c. Comment:

   BP objects to the new re-review process and says it is a change to the terms of Section 6 of the Settlement Agreement and is: [N]ot authorized without the agreement of the parties." Section 6 reflects the carefully negotiated post-decision review process, which contains a balancing of robust review rights with the need of every claims process for finality. That agreed to process provides for a right to reconsideration followed by a right to appeal. Settlement Agreement Secs. 6.1.2.1.1, 6.1.1.1, and 6.1.2.3. It does not call for the addition of a new post-determination review stage. We note that Rule 7 of the protocol does take a useful step in providing for the opportunity to correct errors. (12/3/12); Classify as CA Decision.  (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/2/13
   c. Comment:

   Class Counsel supports the new process but insists that the Program also call claimants before issuing a Denial Notice or a Notice that "materially reduces" a claim, to provide the claimant with a chance to "explain, clarify, respond, and/or provide additional documentation." (12/3/12); Should be promulgated as part of Appeal Protocol (or otherwise). (1/30/13); Should be incorporated into the Appeal Protocol. (4/2/13)

EXHIBIT B-6