Exhibit J



EXCLUSIONS

EXHIBIT B-7

| Table of Contents | |
|---|---|
| **Policy** | **Page(s)** |
| **Exclusions Policy ID** | |
| 1. Policy ID 6:  Exclusions: Sellers/Marketers of BP-Branded Fuel | 1-2 |
| 2. Policy ID 52:  Exclusions:  Moratoria | 3-4 |
| 3. Policy ID 276:  Scope of the GCCF Release Exclusions | 5-8 |
| 4. Policy ID 299 v 1:  Determination of an Excluded Real Estate Developer | 9-14 |
| 5. Policy ID 299 v 0:  Determination of an Excluded Real Estate Developer | 15-21 |
| 6. Policy ID 321:  Exclusions: Moratoria | 22-23 |
| 7. Policy ID 322:  Exclusions: Moratoria | 24-25 |
| 8. Policy ID 365 v 1:  Exclusions: Moratoria | 26-27 |
| 9. Policy ID 365 v 0:  Exclusions: Moratoria | 28-29 |
| 10. Policy ID 75:  Exclusions: Guidance to Denied Claimants | 30-31 |
| **Fraud and SIT Analysis Policy ID** | |
| 11. Policy ID 70:  Fraud: Authorizations | 32-33 |
| 12. Policy ID 112:  Fraud: Claimants Found Fraudulent by the GCCF | 34-35 |
| **Payment Policy ID** | |
| 13. Policy ID 203:  Payment: Retracting Acceptance | 36-37 |
| 14. Policy ID 204:  Payment: Retracting Acceptance | 38-39 |
| 15. Policy ID 205:  Payment: Retracting Offer | 40-41 |
| 16. Policy ID 206:  Payment: Retracting Offer | 42-43 |

i.

EXHIBIT B-7

| | | |
|---|---|---|
| 17. | Policy ID 207:  Payment: Rounding | 44-45 |
| 18. | Policy ID 208:  Payment: Minimum Amount | 46-47 |
| 19. | Policy ID 281:  Payment Documentation and Processing | 48-49 |
| 20. | Policy ID 357 v 2:  Payment of 40% Balance to Transition Claimants Previously Paid 60% of a GCCF Award | 50-51 |
| 21. | Policy ID 357 v 1:  Payment: 40% | 52-53 |
| 22. | Policy ID 357 v 0: Payment of 40% Balance to Transition Claimants Previously Paid 60% of a GCCF Award | 54-55 |
| **Reconsideration Policy ID** | | |
| 23. | Policy ID 125:  Reconsideration: Change in Review Outcome | 56-58 |
| **Deadlines Policy ID** | | |
| 24. | Policy ID 192:  Deadlines: Reconsideration | 59-60 |
| 25. | Policy ID 193:  Deadlines: Claimant Appeal | 61-62 |
| 26. | Policy ID 195:  Deadlines: Seafood Claim Form Submission | 63-64 |
| 27. | Policy ID 196:  Deadlines: Non-Seafood Claim Form Submission | 65-66 |
| 28. | Policy ID 197:  Deadlines: Incompleteness Response | 67-68 |
| 29. | Policy ID 198:  Deadlines: Offer Acceptance | 69-70 |
| 30. | Policy ID 200:  Deadlines: Cashing Checks | 71-72 |
| 31. | Policy ID 201:  Deadlines: Compliance | 73-74 |
| 32. | Policy ID 249 v 1:  Deadlines for Processing Claims | 75-77 |
| 33. | Policy ID 249 v 0:  Deadlines for Processing Claims | 78-79 |
| 34. | Policy ID 250:  Measuring Compliance with Deadlines | 80-81 |
| 35. | Policy ID 194:  Deadlines: BP Appeal Deadline | 82-83 |

EXHIBIT B-7

| 36. | Policy ID 199:  Deadlines: Returning a Signed Release | 84-85 |
|-----|------------------------------------------------------|-------|
| 37. | Policy ID 202:  Deadlines: Extensions                | 86-87 |

iii.

EXHIBIT B-7

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-6 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Exclusions: Sellers/Marketers of BP-Branded Fuel | | |
|---|---|---|---|
| **Active Date** | 5/11/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | Section 4.4.7, Section 2.2.4.1, Section 2.2.4.2, Section 2.2.4.3, Section 2.2.4.4, Section 2.2.4.5, Section 5.10.2, Section 5.10.3, Section 5.10.4, Exhibit 16, Exhibit 17, Exhibit 18 |
| **Affected Claim Types and/or Review Processes** | | | Exclusions |

### II. Summary

We will allow individuals that identify as employees of BP-branded fuel to submit and be compensated for any claim not related to BP-branded fuel.

EXHIBIT B-7

## Policy 6: Exclusions: Sellers/Marketers of BP-Branded Fuel

Comments and Decisions by the Parties:

1. **BP**
   a.  Decision:  Defer to Claims Administrator
   b.  Date:  4/16/13
   c.  Comment:

   They are excluded for all purposes. (5/11/12); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a.  Decision:  Defer to Claims Administrator
   b.  Date:  4/2/13
   c.  Comment:

   It looks like the entities are excluded entirely, but individuals can still have non-economic damage claims or economic damage claims based on other, additional employment not in those fields. (5/5/12); Ok. (1/30/13); Should be published as a CA Decision. (4/2/13)

EXHIBIT B-7

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-52 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|--------|----------------------------------------|

| I. Profile | | | |
|---|---|---|---|
| **Subject** | Exclusions: Moratoria | | |
| **Active Date** | 5/22/12 | **Policy Impact** | ☐All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | Section 5.10.3 and Exhibit 19 |
| **Affected Claim Types and/or Review Processes** | | | Exclusions |

| II. Summary |
|---|
| If the business claimant or employing entity falls within one the Oil & Gas Support Services NAICS codes but, on review, it is unclear whether the specific work falls within one of the "x" marked business descriptions, we will make a subjective determination or request information when necessary. |

EXHIBIT B-7

## Policy 52: Exclusions: Moratoria

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   The role of the Claims Administrator is to properly classify the claimant and to determine whether the claimant falls within the business descriptions marked with an "x" in Exhibit 19. The Claims Administrator should determine whether an employee has sufficient knowledge to classify the employer's business description before relying on the employee's self-affirmation. Claimant should provide a description of the business, but this information alone may not constitute a sufficient basis for making the determination. The level of documentation required is that which is sufficient for the Claims Administrator to properly classify the claimant. See BP's answer to question 97 above for additional information that the Claims Administrator may use to assist in classifying the business type. In most cases, the Claims Administrator may need to hear directly from the claimant's employer in order to make this determination. [See Settlement Agreement Sections 5.10.3.1.1 and 5.10.3.1.2.] (5/22/12)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Can promulgate as CA Decision, but delete the word "subjective". (Note - see Nos. 304, 321, 322) (1/30/13); Should be published as a CA Decision. (4/2/13)

EXHIBIT B-7

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 276 | Claims Administrator's Approved Policy |
|---|---|

## I. Policy Information

| | |
|---|---|
| **Policy Subject** | Scope of the GCCF Release Exclusions |

| **Active Date** | 10/11/12 | **Policy Impact** | ☐ All Claims Regardless of Active Date<br>☑ All Claims Greater than Active Date |
|---|---|---|---|

| **Type of Decision** | Claims Administrator Decision |
|---|---|
| **Settlement Agreement Reference** | Section 2.2.6, Section 38.75 |
| **Affected Claim Types and/or Review Processes** | Exclusions |

## II. Approved Policy

(a) Spouse of GCCF Claimant:  A claimant's spouse who signed a GCCF Release is not barred from pursuing his/her own claims, independent of his/her spouse's claims.

(b) GCCF Business Claimant:  A claimant that submitted a claim for a business in the GCCF, signed a Release and was paid is not barred from pursuing a claim as an individual, unrelated to the business involved in the GCCF claim.

(c) GCCF Individual Claimant:  A claimant who submitted a claim as an individual in the GCCF, signed a Release and was paid, is not barred from pursuing a claim for a business operated by the claimant that is unrelated to the individual claim involved in the GCCF claim.

(d) GCCF Release on One Claim Type:   A GCCF Release after asserting one Claim Type in the GFFC (not a personal injury claim) bars the claimant from pursuing a different Claim Type in the DWH Program (except for VoO Charter Damage and Vessel Physical Damage claims permitted for all GCCF Released claimants).

(e) Double Payment Policy:  A GCCF Release signed by an owner of a business on a business claim bars that person from asserting a DWH claim as a W-2 employee of that business.  A GCCF Release signed by an owner of a business as a W-2 employee of that business bars that business from asserting a DWH claim.

EXHIBIT B-7

## Policy 276: Scope of the GCCF Release Exclusions

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   a) We assume that this question addresses the following type of fact pattern. Claimant Mr. X filed a claim for lost income with the GCCF for alleged lost fishing income. Mr. X entered into a settlement with the GCCF and executed a GCCF release. In addition, as required, Ms. X, Mr. X's wife, also signed the release. The question is whether Ms. X may now file a claim with the Settlement Program that is independent of Mr. X's released claims. The answer to this question is governed by Paragraph 2 of the GCCF release. BP agrees that Ms. X. may file independent, unrelated claims with the GCCF. For example, if Ms. X worked at a hotel, she could file a claim for alleged lost income from her hotel job. What Ms. X may not do is file a claim alleging a right to compensation for claims released by Mr. X. For example, Ms. X could not assert a common law right to Mr. X's alleged lost fishing income, which was released by both Mr. X and Ms. X. b) No, a claimant who submitted a claim for a business in the GCCF, signed a Release, and was paid is not barred from pursuing a claim as an individual, provided that the individual claim is truly unrelated to the business involved in the GCCF claim. For example, if a sole proprietorship filed a business claim with the GCCF, the individual proprietor cannot now file a claim as an individual for the losses of the business. In addition, as addressed in a separate question, the owner or officer of a business that signed a GCCF release may not file a claim with the Settlement Program for alleged lost W-2 income associated with the business. c) No, a claimant who submitted a claim as an individual in the GCCF, signed a Release, and was paid is not barred from pursuing a claim for a business operated by the claimant, provided that the business claim is truly unrelated to the individual claim filed and released by the GCCF. For example, if an individual who operates a sole proprietorship filed an individual claim for losses incurred by the individual as the owner of the business, the business may not now filed a claim for those same losses. d) The only type of claim that a claimant who executed a GCCF release may file with the Settlement Program is a claim for VoO Charter or Vessel Physical Damage. Section 1 of the GCCF release releases, with limited exceptions, all claims "arising from or relating in any way to the April 20, 2010 blowout of the Macondo Well, the sinking of Transocean's Deepwater Horizon drilling rig, and the subsequent oil spill and response thereto in the Gulf of Mexico (the 'Incident') (collectively, 'Claims')." Notwithstanding the comprehensive scope of the GCCF release, BP has agreed that a claimant who has executed a GCCF release may file a VoO Chart or Vessel Physical Damage claim with the Settlement Program. e) Yes, the double payment policy applies. The double payment policy recognizes that in calculating compensation for a BEL claim, owner compensation is excluded from the variable profit calculation that is used to determine the difference in the business's variable profit between the Benchmark Period and the Compensation Period. See Settlement Agreement Ex. 4C, p. 2 (definition of Variable Profit), 4D. See also Brown-Greer Spreadsheet response to item 67 (reflecting the parties' consensus that

EXHIBIT B-7

the Settlement Program must segregate owner/officer compensation from other employee compensation in processing BEL claims). Thus, any reduction in the owner's salary is not reflected as a reduction in expense by the BEL claimant and does not reduce the decline in variable profit between the Benchmark Period and the Compensation Period and calculated Step 1 compensation amount received by the BEL claimant (which then is affected by the growth factor and multiplied by RTP). To the extent the individual owner suffered a loss in compensation, that amount would be included in the award calculated and awarded under the BEL framework. Accordingly, the owner/employee must look to the business for the claimant's appropriate share of the BEL award. Where the owner of an entity that has signed a GCCF release is also a W-2 employee of the Entity, that individual cannot pursue a claim for individual economic loss (IEL) due to reduced wages that the claimant and/or other owners decided to implement in the wake of the Spill. Permitting the claimant to do so would result in double recovery. It is our understanding that GCCF similarly took the view that, where an owner submitted a business claim, the owner could not then also submit a separate salary claim and recover twice. Paragraph 2 of the GCCF Release provides comprehensively that the release is on behalf not only of a business claimant but also the "Claimant's partners, limited partners, members, joint venturers, shareholders. . .". Thus, any claim by the owner for reduced salary must be asserted against the business. This is consistent with the instruction on the release that a Business Claimant where "the business is a sole proprietorship, and you are the owner and you are married, or if the business is jointly owned by you and your spouse, both you and your spouse must sign the Release." That language, again, makes clear that a release by a business releases its owner's claims related to the business. (10/11/12); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/213
   c. Comment:

a) As noted above, it will likely depend upon the nature of any relevant "businesses" and/or "entities", but generally: If the GCCF claim was an "Individual" GCCF claim, then the spouse should be able to assert a Class Settlement Program claim on behalf of a separate formal Entity, or a claim for a Claiming Job or Seafood Vessel / Lease that is separate from what was claimed by the GCCF claimant. If the GCCF claim was a "Business" GCCF claim, then the Spouse cannot make a claim for the same Entity in the Settlement Program, but can make a claim for a different Entity or for his/her own separate Claiming Job or Seafood Vessel / Lease that was not the subject of the GCCF claim. b)Assuming that the "business" was a formal and distinct entity, then a GCCF Business Claimant should be able to submit a Settlement Program claim for a separate entity, a separate Claiming Job, or separate Seafood Vessel / Lease that was not the subject of the GCCF Claim. c) Assuming that the "Entity" Claimant in the Settlement Program is a formal and distinct entity, then an Individual GCCF Claimant should be able to bring a Settlement Program claim for the separate Entity. d) Assuming that the claimants are the same Individuals or "Businesses" / "Entities", the GCCF Release would generally bar a claim in the Settlement Program, except for a VoO or Vessel Damage Claim. e) See Memo from Class Counsel to Claims Administrator, re: "BEL Owners or

EXHIBIT B-7

Officers Who Are Also Employees" (Oct. 2, 2012). The "Double Payment" Policy is completely unsupported by the terms of the Settlement Agreement. Where, particularly, the IEL Claimant is an Officer, but not an Owner, the GCCF Business and/or Settlement Program Entity has absolutely no authority to release an employee's own separate individual claim. The Officer might not even work for the Entity anymore. The "Double Payment" Policy would also be egregious if applied to an entity that is not closely held. Is the employee of a publicly held company prohibited from making a claim simply because he or she owns a few shares of the company's stock? In addition to the fact that the Policy is not what was negotiated and agreed to by the Parties as a substantive matter, it could give rise to potential Class, Notice and Due Process concerns. Should be promulgated as a CA Decision. (10/11/12); Should be promulgated as a CA Decision. (1/30/13); Should be published as a CA Decision. (4/2/13)

EXHIBIT B-7



**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-299 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | | |
|---|---|---|---|
| **Subject** | Determination of an Excluded Real Estate Developer | | |
| **Active Date** | 5/16/13 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | Section 2.2.4.7 and Section 5.9.3 |
| **Affected Claim Types and/or Review Processes** | | | Exclusions |

| II. Summary |
|---|
| See Final Policy Memo. |

EXHIBIT B-7

After discussions with and input from the Parties, the Claims Administrator adopted and announced Policy No. 299 to the Parties on 11/28/12 to govern our application of the language in Section 2.2.4.7 of the Settlement Agreement excluding Real Estate Developers. This policy is categorized as Agreed to by the Parties. It was among the 64 policies that we posted publicly on 3/28/13.

Section (c) of Policy 299 provides:

(c) Business Designation on Tax Returns: An Entity that expressly identified or described its business as real estate development on Schedule B (or elsewhere) on its 2010 Tax Return shall be considered to be an Excluded Real Estate Developer, with no further analysis

This provision created an absolute rule that excludes any entity (or a Claiming Job at any entity) that described its principal business activity and/or principal product or service as real estate development on its 2010 tax returns. We have encountered certain instances, however, where the evidence in the claim file establishes that the entity had ceased all development activity by 1/1/10 and that the designation on its 2010 tax returns did not accurately reflect its actual operations before and after the Spill in 2010. This would lead to exclusions that seem arbitrary and unfair because not grounded in reality.

As a result, the Claims Administrator has determined to modify this section of the policy to remove the conclusive presumption created by the business designation on an entity's 2010 tax returns and instead make the presumption rebuttable. Using the precepts already applied by Section (e) of the policy to all other claimants, this change will allow a claimant to establish that an entity, with a description in its 2010 tax returns of real estate development as its principal business activity and/or principal product or service, had in fact ceased real estate development activity before 1/1/10. We announce the complete policy, as revised in section (c), as follows:

*Exclusions: Determination of an Excluded Real Estate Developer.* Section 2.2.4.7 of the Settlement Agreement excludes:

Real Estate Developers, including any Natural Person or Entity that develops commercial, residential or industrial properties. This includes, but is not limited to, any Entity developing an entire subdivision (as defined by the law of the state in which the parcel is located) of Real Property, including condominiums with multiple residential units and/or a residential subdivision with contiguous home sites and homes, provided, however, that Real Estate Developers shall be eligible to assert Coastal Real Property Claims under Section 5.7 and Real Property Sales Damage Claims under Section 5.9.

Section 5.9.3 of the Settlement Agreement provides that, other than as allowed in the Real Property Sales framework, no claimant may "recover under this Agreement, including any Exhibit thereto, for Economic Damage based on a reduction in sale price, or an alleged reduction in market value, of real estate they owned or in which they had an ownership interest." Section

1

EXHIBIT B-7

VI of Exhibit 18 to the Settlement Agreement confirms this exclusion, by reference to Sections 2.2.4.7 and 5.9.3. Exhibit 18 requires the Claims Administrator to determine the applicability of the exclusion of real estate developers based upon "review of (a) the claimant's 2010 tax return, (b) 2010 business permits or license(s), and/or other evidence of the relevant business's or individual's activities necessary for the Claims Administrator to determine whether the exclusion applies." In contrast to its treatment of excluded Defense Contractors, the Settlement Agreement provides no revenue threshold applicable to determining who is or is not a Real Estate Developer; rather, the Settlement Agreement takes a more subjective approach and leaves that determination to the sound discretion of the Claims Administrator. The Claims Administrator will implement these provisions as follows:

(a) Claimants Affected by this Exclusion: This exclusion applies to any Entity that is a Real Estate Developer and any Individual employed by a Real Estate Developer, attempting to assert any claim in the Program other than Coastal Real Property Claims under Section 5.7, Wetlands Real Property Claims under Section 5.8, and Real Property Sales Damage Claims under Section 5.9 of the Settlement Agreement. The analysis required by this exclusion shall be performed at the Entity level, examining the attributes of the business Entity. If the Claims Administrator has determined that an Entity is an Excluded Real Estate Developer, the employment of any employees of that Entity will be considered to be excluded as well. Where the information available on the claim of an Individual claimant suggests that the claimant's employer is a Real Estate Developer and the Claims Administrator has not previously determined whether that employer is an Excluded Real Estate Developer, the Claims Administrator will contact the claimant and determine on a case-by-case basis the appropriate measures to obtain any information and/or documents regarding the claimant's employer to permit the Claims Administrator to make the necessary analysis of the employer's operations required under this Policy.

(b) Time Period for Analysis: Pursuant to the requirements of Exhibit 18, the Claims Administrator will examine the attributes of the Entity during 2010.

(c) Business Designation on Tax Returns: An Entity that expressly identified or described its business as real estate development on Schedule B (or elsewhere) on its 2010 Tax Return shall be presumed to be an Excluded Real Estate Developer. This presumption may be rebutted by information available on the claim that indicates to a reasonable degree of certainty that the Entity had been engaged in Real Estate Development Activity before 1/1/10 but had ceased Real Estate Development Activity by 1/1/10 and was not engaged in such activity in 2010, as provided in Section (e) below.

(d) Other Entities: On all other Entities, the Claims Administrator will examine any of the following information available on the Entity to determine whether it was more likely than not that the Entity was sufficiently engaged in Real Estate Development

2

Activity during 2010 such that it may reasonably be characterized as a Real Estate Developer:

(1) Any 2010 business permits or license(s) of the Entity.

(2) Any revenue from real property sales reported by the Entity on its 2010 Tax Return as ordinary income (other than depreciation recapture), rather than as capital gains income, shall be considered to be revenue associated with Real Estate Development Activity.

(3) Any information on any of these expenses of the Entity during 2010 that are considered to be associated with Real Estate Development Activity: Expenses for permitting; architectural, surveying and construction fees and costs; draws to contractors, and expenses relating to the acquisition of raw land; land use planning; landscape architecture appraisal; architecture; association start-up; bank inspection; builder's risk/professional liability; civil engineering and surveying; civil site work; construction loans and title insurance; debt financing fees; demolition; developer fees and warranties; environmental and geotech; fences, gates, walls and signage; interest paid to debt sources; land planning; landscaping and irrigation; legal and condominium/association documents; parking structure; pool, pool deck and fencing; project management; project theming; road improvements; site improvements; site lighting; threshold and concrete testing; and waterproofing consultation.

(4) Any materials in the claim file, the Entity's promotional materials, website and other statements that indicate that the Entity was engaged in Real Estate Development Activity in 2010. "Real Estate Development Activity" includes any activities involved in the making of any material change in the use of buildings or land, including the renovation and re-lease of existing buildings, the purchase of raw land for development, the sale of improved land or parcels to others and the planning, design, arranging of financing, zoning approvals, construction, marketing, sale or lease of such projects.

(e) Benchmark Period Attributes: If the information available on the claim indicates to a reasonable degree of certainty that the Entity had been engaged in Real Estate Development Activity before 1/1/10 but had ceased Real Estate Development Activity by 1/1/10 and was not engaged in such activity in 2010, the Entity shall not be considered to be an Excluded Real Estate Developer. An Entity will be considered to have ceased Real Estate Development Activity when it has: (1) sold, conveyed, transferred, or otherwise disposed of all real property on which the Entity's prior Real Estate Development Activities took place, or entered into contracts to do so; or (2) completed all Real Estate Development Activities and assumed the responsibilities of operating the developed property according to its intended use and without holding them for sale at a future time. Such an Entity shall proceed pursuant to the Start-Up

3

EXHIBIT B-7

Business framework under Exhibit 7 to the Settlement Agreement, if the Entity ceased its Real Estate Development Activity fewer than 18 months before 4/20/10 and thus has fewer than 18 months of operating history as a business not engaged in Real Estate Development Activity.

(f) Construction Contractors. Notwithstanding the foregoing, an Entity engaged in construction that also acquires land for the purposes of erecting residential dwellings for sale on a dwelling by dwelling basis, rather than as part of a subdivision or other development by the Entity, will not be considered to be an Excluded Real Estate Developer.

4

425621
5/8/13

## Policy 299 v.1: Determination of an Excluded Real Estate Developer

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 5/15/13
   c. Comment:

   BP does not agree with the revision set out in the proposed policy. This is a substantive change from the prior policy announcement. The Settlement Agreement is clear that all real estate developers are excluded. Under Section 2.2.4.7 of the Settlement Agreement, Real Estate Developers are categorically excluded from recovering for Economic Damage claims. BP was willing to compromise and accept what became the original policy announcement, but only if that policy was implemented as expressly set forth in the prior policy. The Claims Administrator's revised policy is a significant change from what was announced before. Accordingly, BP has changed its classification of this policy. BP requests the Settlement Program implement the Settlement Agreement in accordance with the express terms of Section 2.2.4.7 which excludes all Real Estate Developers from recovering for Business Economic Loss claims, which requires that the Economic Damage claim of any claimant who engages in any development activities at any time during the relevant benchmark period shall be excluded.

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 5/8/13
   c. Comment:

   Thanks. I think the "disconnect" comes from the fact that when we agreed to the words "described its business as real estate development on Schedule B (or elsewhere) on its 2010 Tax Return" the terms "described" and the inclusion of "or elsewhere" were probably broader than intended. My recollection is that what we were really talking about was a business that "described" itself as a Real Estate Developer (on its 2010 tax returns) by recording sales of the developed properties as ordinary income, rather than as capital gains, (which, as I understand it, generally appears on a Schedule B). I don't think we intended that just because the word "Developer" (or "Development") appeared anywhere on the Tax Return in any context you were conclusively deemed to be excluded. Thanks.

EXHIBIT B-7

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-299 | CLAIMS ADMINISTRATOR'S APPROVED POLICY | |
|---|---|---|
| **I. Profile** | | |
| **Subject** | Determination of an Excluded Real Estate Developer | |
| **Active Date** | 12/3/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Agreed to by the Parties |
| **Settlement Agreement Reference** | | Section 2.2.4.7, Exhibit 18 |
| **Affected Claim Types and/or Review Processes** | | Exclusions |

| **II. Summary** |
|---|

Section 2.2.4.7 of the Settlement Agreement excludes:

Real Estate Developers, including any Natural Person or Entity that develops commercial, residential or industrial properties. This includes, but is not limited to, any Entity developing an entire subdivision (as defined by the law of the state in which the parcel is located) of Real Property, including condominiums with multiple residential units and/or a residential subdivision with contiguous home sites and homes, provided, however, that Real Estate Developers shall be eligible to assert Coastal Real Property Claims under Section 5.7 and Real Property Sales Damage Claims under Section 5.9.

Section 5.9.3 of the Settlement Agreement provides that, other than as allowed in the Real Property Sales framework, no claimant may "recover under this Agreement, including any Exhibit thereto, for Economic Damage based on a reduction in sale price, or an alleged reduction in market value, of real estate they owned or in which they had an ownership interest." Section VI of Exhibit 18 to the Settlement Agreement confirms this exclusion, by reference to Sections 2.2.4.7 and 5.9.3. Exhibit 18 requires the Claims Administrator to determine the applicability of the exclusion of real estate developers based upon "review of (a) the claimant's 2010 tax return, (b) 2010 business permits or license(s), and/or other evidence of the relevant business's or individual's activities necessary for the Claims Administrator to determine whether the exclusion applies." In contrast to its treatment of excluded Defense Contractors, the Settlement Agreement provides no revenue threshold applicable to determining who is or is not a Real Estate Developer; rather, the Settlement Agreement takes a more subjective approach and leaves that determination to the sound discretion of the Claims Administrator. The Claims Administrator will implement these provisions as follows:

(a) Claimants Affected by this Exclusion: This exclusion applies to any Entity that is a Real Estate Developer and any Individual employed by a Real Estate Developer, attempting to assert any claim in the Program other than Coastal Real Property Claims under Section 5.7, Wetlands Real Property Claims under Section 5.8, and Real Property Sales Damage Claims under Section 5.9 of the Settlement Agreement. The analysis required by this exclusion shall be performed at the Entity level, examining the attributes of the business Entity. If the Claims Administrator has determined that an Entity is an Excluded Real Estate Developer, the employment of any employees of that Entity will be considered to be excluded as well. Where the information available on the claim of an Individual claimant suggests that the claimant's employer is a Real Estate Developer and the Claims Administrator has not previously determined whether that employer is an Excluded Real Estate Developer, the Claims Administrator will contact the claimant and determine on a case-by-case basis the appropriate measures to obtain any information and/or documents regarding the claimant's employer to permit the Claims Administrator to make the necessary analysis of the employer's operations required under this Policy.

(b) Time Period for Analysis: Pursuant to the requirements of Exhibit 18, the Claims Administrator will examine the attributes of the Entity during 2010.

(c) Business Designation on Tax Returns: An Entity that expressly identified or described its business as real estate development on Schedule B (or elsewhere) on its 2010 Tax Return shall be considered to be an Excluded Real Estate Developer, with no further analysis.

(d) Other Entities: On all other Entities, the Claims Administrator will examine any of the following information available on the Entity to determine whether it was more likely than not that the Entity was sufficiently engaged in Real Estate Development Activity during 2010 such that it may reasonably be characterized as a Real Estate Developer:

(1) Any 2010 business permits or license(s) of the Entity.

(2) Any revenue from real property sales reported by the Entity on its 2010 Tax Return as ordinary income (other than depreciation recapture), rather than as capital gains income, shall be considered to be revenue associated with Real Estate Development Activity.

(3) Any information on any of these expenses of the Entity during 2010 that are considered to be associated with Real Estate Development Activity: Expenses for permitting; architectural, surveying and construction fees and costs; draws to contractors, and expenses relating to the acquisition of raw land; land use planning; landscape architecture appraisal; architecture association start-up; bank inspection; builder's risk/professional liability; civil engineering and surveying; civil site work; construction loans and title insurance;

EXHIBIT B-7

debt financing fees; demolition; developer fees and warranties; environmental and geotech; fences, gates, walls and signage; interest paid to debt sources; land planning; landscaping and irrigation; legal and condominium/association documents; parking structure; pool, pool deck and fencing; project management; project theming; road improvements; site improvements; site lighting; threshold and concrete testing; and waterproofing consultation.

(4) Any materials in the claim file, the Entity's promotional materials, website and other statements that indicate that the Entity was engaged in Real Estate Development Activity in 2010. "Real Estate Development Activity" includes any activities involved in the making of any material change in the use of buildings or land, including the renovation and re-lease of existing buildings, the purchase of raw land for development, the sale of improved land or parcels to others and the planning, design, arranging of financing, zoning approvals, construction, marketing, sale or lease of such projects.

(e) Benchmark Period Attributes:  If the information available on the claim indicates to a reasonable degree of certainty that the Entity had been engaged in Real Estate Development Activity before 1/1/10 but had ceased Real Estate Development Activity by 1/1/10 and was not engaged in such activity in 2010, the Entity shall not be considered to be an Excluded Real Estate Developer. An Entity will be considered to have ceased Real Estate Development Activity when it has: (1) sold, conveyed, transferred, or otherwise disposed of all real property on which the Entity's prior Real Estate Development Activities took place, or entered into contracts to do so; or (2) completed all Real Estate Development Activities and assumed the responsibilities of operating the developed property according to its intended use and without holding them for sale at a future time. Such an Entity shall proceed pursuant to the Start-Up Business framework under Exhibit 7 to the Settlement Agreement, if the Entity ceased its Real Estate Development Activity fewer than 18 months before 4/20/10 and thus has fewer than 18 months of operating history as a business not engaged in Real Estate Development Activity.

(f) Construction Contractors.  Notwithstanding the foregoing, an Entity engaged in construction that also acquires land for the purposes of erecting residential dwellings for sale on a dwelling by dwelling basis, rather than as part of a subdivision or other development by the Entity, will not be considered to be an Excluded Real Estate Developer.

EXHIBIT B-7

**Policy 299 v.0: Determination of an Excluded Real Estate Developer
(Superseded by Policy 299 v.1)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Accept as a Final Policy
   b. Date: 3/27/13
   c. Comment:

   We disagree with the conclusion that the Settlement Program is authorized under the Settlement Agreement to allocate income and losses within a real estate developer claimant based on its various activities and provide partial recovery for non-developer activities. The suggestion that a claim for Business Economic Loss by a real estate developer that also engages in other activities may not be excluded if the documentation makes clear how to allocate income between real estate development activities and other activities is not consistent with the Settlement Agreement. Section 2.2.4.7 expressly excludes Real Estate Developers, except to the extent they assert Coastal Real Property Claims under Section 5.7 and Real Property Sales Damage Claims under Section 5.9. It does not permit them to assert Business Economic Loss claims at all, for any kinds of activities. Indeed, under Settlement Agreement Section 3, claims for Economic Damage by excluded entities, including real estate developers, are ""not recognized or released under the Agreement, and are reserved to the Economic Class Members."" More generally, the Settlement Agreement does not contemplate that the Settlement Facility will review claims by claimants that are excluded entities and seek to allocate their activities to permit partial recoveries. Such entities are simply excluded. Finally, it should be noted that, as a practical matter, it is highly unlikely that real estate developers will combine development operations and other businesses in one corporate entity. To the contrary, the typical practice in the industry is to create a separate LLC or similar entity for each development and to operate other businesses under other corporate entities. To the extent that is the case, a corporate entity that is not a real estate developer or other excluded entity can be a proper claimant, whereas sister entities that are real estate developers or other excluded entities are not. (9/10/12);  As set forth in BP's memorandum dated September 20, 2012 ("BP Developer Memorandum") attached to my September 21 memorandum, under Section 2.2.4.7 of the Settlement Agreement, Real Estate Developers are categorically excluded from recovering for Economic Damage claims. Item 13 of the Announcement purports, without authority, to modify this requirement to only apply the exclusion to "persons or entities whose primary business is real estate development," defined as entities where "50% or more of the claimant's revenues in 2010 were derived from . . . development." This modification is (1) inconsistent with the language of the Settlement Agreement, and (2) not a reasonable, logical or practical test in light of the nature of the real estate development business. As explained in the BP Developer Memorandum, Settlement Agreement Section 2.2.4.7 categorically excludes Real Estate Developers from recovering for Economic Damage Claims. There is no textual basis for the proposed "50% of revenues" test, which the Claims Administrator appears to have borrowed from the definition of the separate exclusion for Government Contractors. To the contrary, the presence of the 50%

EXHIBIT B-7

threshold in the Government Contractor exclusion and the absence of that threshold in the Real Estate Developer exclusion reinforces the conclusion that no such threshold applies to Developers. Moreover, the proposed "50% of revenues test" is not logical or practical in light of the nature of the real estate development business. As noted in the BP Developer Memorandum, real estate development typically proceeds through single-asset entities (LLCs, LLPs, etc.). In the initial years of development, the developer will have mostly if not only expenditures and little if any revenue from that development, because it is building, not selling or leasing. Thus, an entity that was a full time developer that was building in 2010 but not selling or leasing until 2011 or 2012 could have almost no revenue, or limited fee or service revenue in 2010. The proposed "50% of revenues test" thus will be unworkable or unreliable. In addition, the proposed "50% of revenues test" does not explain how the Settlement Facility would prevent Developers from recovering for economic losses associated with development activities, which indisputably is precluded under the Settlement Agreement. BP maintains its position, set forth in the BP Developer Memorandum, that the proper way to identify a Real Estate Developer is to look at a BEL claimant's activities as reflected not only in items (a) and (b) of Mr. Juneau's memorandum, but also in line items in the claimant's financial statements. Certain expense line items are uniquely and typically associated with real estate development, including but not limited to expenses related to: appraisal; architecture; association start-up; bank inspection; builder's risk/professional liability; civil engineering and surveying; civil site work; construction loans and title insurance; debt financing fees; demolition; developer fees and warranties; environmental and geotech; fences, gates, walls and signage; interest paid to debt sources; land planning; landscaping and irrigation; legal and condominium/association documents; parking structure; pool, pool deck and fencing; project management; project theming; road improvements; site improvements; site lighting; threshold and concrete testing; and waterproofing consultation. Where the existence of such activities shows that the claimant is a Real Estate Developer, the claim should be denied. BP recognizes that application of the real estate developer exclusion is not always easy, and we understand the Settlement Program's desire for additional guidance. We would therefore be pleased to work with the Settlement Program and Class Counsel to further develop approaches that assist in the proper implementation of the terms of the Settlement Agreement. (9/28/12);  BP agrees with Class Counsel that for purposes of determining whether a claimant is an excluded real estate developer, the Settlement Program should evaluate the claimant's activities at the time of and after the spill. Pursuant to Section 1.2 of the Settlement Agreement, the relevant period is April 20, 2010 to April 16, 2012. This includes whether the claimant continues to hold real property associated with a development. • Where a claimant was a real estate developer in years prior to 2010 but changes businesses and is no longer a real estate developer during the period April 20, 2010 to April 16, 2012, the claimant may file a claim with regard to the new business (assuming it is not otherwise excluded), and such claim must be evaluated under the Start-up Business framework. Appropriate Period for Evaluating Application of Exclusion BP agrees with Class Counsel that for purposes of determining whether a claimant is an excluded real estate developer, the Settlement Program should evaluate the claimant's activities at the time of and after the spill. Pursuant to Section 1.2 of the Settlement Agreement, the relevant period is April 20, 2010 to April 16, 2012. Among other things, indicia previously provided to the Claims

EXHIBIT B-7

Administrator by email dated September 20 will be used to make this determination. Where a claimant was a developer in prior years but there is no developer related revenues or expenses in the April 20, 2010 to April 16, 2012 period, the Claims Administrator must find that claimant has sold or transferred all real property (including common areas, commercial areas or parcels, recreational areas and other appurtances) associated with any development before the Claims Administrator may conclude that the claimant is no longer a developer. 2. Claims of Former Developers Who Started A New Business Given that, as explained above, the developer determination should be made by reference to April 20, 2010 to April 16, 2012 activities, it follows that if a claimant has changed businesses and is no longer engaged in development in the April 20, 2010 to April 16, 2012 period, the claimant may make a claim to the Settlement Program for the new business activity, provided that the new business activity is not otherwise excluded. However, the new business activity would be viewed as a start-up and evaluated under the start-up methodology. (10/5/12);   This is not a change in position - our discussion last week was about the pre-spill period.  We rely on section 1.2.1 of the class definition which refers to ""All Entities doing business or operating in the Gulf Coast Areas or Specified Gulf Waters that: at any time from April 20, 2010 to April 16, 2012 owned, operated or leased"" or performed certain other specified actions. This, it seemed to us, was the relevant time period for determining whether an entity was engaged in an excluded activity and we agreed with class counsel that the period before 4/20/2010 was not relevant to this inquiry. We are, as always, happy to discuss. However, it appears that class counsel prefers we take it up with the Court. (10/6/12);   Issue 13 (Real Estate Developer Exclusion) Class Counsel and BP have agreed to the following resolution. For purposes of determining whether the real estate developer exclusion applies, the Claims Administrator will evaluate a claimant's activities during the Benchmark Period through April 16, 2012. If at any time during the Benchmark Period through April 16, 2012 the claimant engaged in activities that the Claims Administrator finds establish that the claimant was a Real Estate Developer under Section 2.2.4.7, the real estate developer exclusion applies. (10/11/12);   Unfortunately, we and class counsel are not agreed. This is BP's position, in an attempt to compromise. Our fundamental position is that we did not intend to pay for any real estate development activity as part of this settlement and therefore wished to exclude real estate developers. It remains our position that an entity that conducts ANY real estate development is excluded. For this reason, we cannot agree to an allocation as set forth by the CSSP, even at a lower threshold. That said, we recognize that the CSSP must determine whether an entity is conducting real estate development during the benchmark period. We offer the following suggestions as a way to make that determination. It is our view that this is consistent with the discussion we had last week. At the meeting, we discussed the issue of whether real estate developers report their revenue from sales of real property as ordinary income rather than capital gains.  We confirmed this point with our accountants.  We agree that this is a useful criteria, and propose that if a claimant is reporting revenue from property sales as ordinary income, that is fair and straightforward indicia that the claimant is a developer. Similarly, if a claimant describes its business as real estate development or sales on Schedule B of its tax return, that also is a fair and straightforward indicia of developer status. If the above does not definitively resolve the question, we propose the following test, which tries to incorporate Jim Roy's and your thoughts regarding use of an

EXHIBIT B-7

implementable threshold (while as you know we in principle think that any amount of development activity should trigger the exclusion, we are prepared to use a threshold approach along the lines of the following). 1. Businesses with 15% or more of their revenues or expenses associated with development activities in any year from the claimant-selected Benchmark Period year(s) through April 16, 2012 will be classified as Real Estate Developers subject to the exclusion. 2. Businesses with less than 15% of their revenues or expenses associated with development activities in any year from the claimant-selected Benchmark Period year(s) through April 16, 2012 will be reviewed further to determine if development activities constitute a regular part of their business. a. If claimant's annual financial statements for any year from the claimant-selected Benchmark Period year(s) through April 16, 2012 reflect more than $1 million in gross revenues or expenses associated with development activities, the claimant is a Developer. b. If claimant does not satisfy the requirements of 1 or 2(a), and the Settlement Program does not identify applying its judgment any other specific basis for concluding that the claimant is a Developer, the claimant will not be deemed a Developer. (10/23/12); Regrettably, we cannot accept this proposal. We stand by our prior proposal. Thanks. (10/31/12);   This responds to your November 28, 2012 memorandum, attached to Orran Brown's e-mail below, related to the real estate developer exclusion.   In a good faith effort to address the parties' respective positions regarding the application of the real estate developer exclusion, BP is willing to accept the CSSP's position set forth in your November 28, 2012 memo as it relates to the real estate developer exclusion. (12/3/12).

2. **Class Counsel**
   a. Decision: Accept as a Final Policy
   b. Date: 3/27/13
   c. Comment:

Just for clarification:  BP believes that there is essentially a "1% Rule" applied to the Real Estate Developer Exclusion, such that any activities on the part of any entity that fit within the Settlement Agreement's Definition, no matter how small, would cause that entity to be deemed a "Read Estate Developer" and excluded entirely (except with respect to Sales Loss, Wetlands and/or Coastal Claims)? And, assuming that is the case, is that with respect to any Benchmark Year and/or 2010 and/or 2011-2012, or just with respect to 2010 only? (9/28/12);   The Settlement agreement is very clear it is only 2010 as the relevant time period for the Claims administrator to look at. Dan's reference to 2010 through 2012 is a shocking new position taken by BP. (10/5/12);   During last week's Administrative Panel Meeting, it was clear that the Program was only going to look to 2010 revenue.  There was no inquiry into 2011 or 2012; there was no requirement that all properties needed to be transferred or sold prior to 2010; and there was no suggestion, much less a determination, that an Entity with 1% "Real Estate Developer" activity during the Benchmark Period (but not 2010) would be treated as a "Start-Up" under the Settlement Agreement. Given BP's change in position, Class Counsel hereby revoke any "agreement" on the Real Estate Developer Exclusion. We agree with and endorse the Claims Administrator's original interpretation, as expressed in his Memorandum of September 25, 2012. BP, of course, has the right to appeal the Claims Administrator's determination to Judge Barbier, per the Agreement. (10/6/12); Thanks Mark. Agree with what is stated in Mark's letter, but just want to make sure that we all

understand the proper context. The Settlement Agreement includes its own somewhat sui generis definition of "Real Estate Developer". In applying the Exclusion, the Claims Administrator originally proposed that the losses of an entity that was partially a "Real Estate Developer" be segregated between "real estate development losses" and other losses. Based on BP's objection, (and practical concerns about how this would be applied), the Claims Administrator then proposed a 50% Rule to determine whether the business is or is not a "Real Estate Developer" (with the consequences that the claim is either all in, or all out). During the Administrative Panel Meeting, there seemed to be an agreement between Class Counsel and BP that the Claims Administrator would apply a 1% Rule looking solely to revenue generated in 2010. Since that time, Class Counsel have agreed to expand the inquiry to revenue (or other activities) during the Benchmark Period thru the end of the Class Period, April 16, 2012. In turn, BP has agreed to drop the 1% Rule, and allow the Claims Administrator to determine whether the business is or is not a "Real Estate Developer" in the Program's best judgment and discretion. (10/11/12);  Determination of an Excluded Real Estate Developer. For purposes of determining those who are excluded from the Class as a Real Estate Developer under Section 2.2.4.7 of the Settlement Agreement, the Claims Administrator interprets the Settlement Agreement to exclude those persons or entities who engage in material real estate development. In accord with Exhibit 18 of the Settlement Agreement, the Claims Administrator will review (a) the claimant's 2010 tax return, (b) 2010 business permits or license(s), and/or (c) other evidence of the relevant business's or individual's activities as determined relevant under the circumstances of a particular claim, to conduct the following analysis: 1. If an Entity making a Business Economic Loss Claim expressly identifies or describes its business as real estate development on Schedule B (or elsewhere) on its 2010 Tax Return, it will be considered to be a Real Estate Developer. 2. If an Entity making a Business Economic Loss Claim does not expressly identify or describe its business as real estate development on Schedule B (or elsewhere) on its 2010 Tax Return: (a) If 20% or more of the claimant's revenues in 2010 were derived from the development of commercial, residential or industrial properties, the claimant will be considered to be a Real Estate Developer. (b)If less than 20% of the claimant's revenues in 2010 were derived from the development of commercial, residential or industrial properties, the claimant will not be considered to be a Real Estate Developer. In making this determination, the Claims Administrator will consider the reporting of revenue from property sales as ordinary income to be indicia of real estate development revenue and activity. 3. Where the information available on the claim of an Individual Economic Loss claimant suggests that the claimant's employer in 2010 was a Real Estate Developer, the Claims Administrator will contact the claimant and determine on a case-by-case basis the appropriate measures to obtain sufficient information and/or documents regarding the claimant's employer as outlined above. (10/30/12); Real Estate Developer Definition / Exclusion. We have provided the Claims Administrator with our understanding / position. BP disagrees, and I believe has provided the Claims Administrator with its own. In any event, it looks like there will not be unanimous agreement per Section 4.3.4, and the issue will have to be presented by the Claims Administrator to Judge Barbier for resolution. (11/13/12); THANKS. (12/3/12)

EXHIBIT B-7

# DEEPWATER HORIZON
# CLAIMS CENTER
### ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 321 | Claims Administrator's Approved Policy |
|---|---|

## I. Policy Information

| Policy Subject | Exclusions: Moratoria | |
|---|---|---|
| **Active Date** | 1/9/13 | **Policy Impact** |

☒All Claims Regardless of Active Date
☐All Claims Greater than Active Date

| **Type of Decision** | Claims Administrator Decision |
|---|---|
| **Settlement Agreement Reference** | Exhibits 16, 19 |
| **Affected Claim Types and/or Review Processes** | Exclusions |

## II. Approved Policy

If the business/employer does not fit within the Exhibit 19 potential moratoria criteria but affirmed provision of significant services to the offshore oil and gas industry, then reach out to the business/employer to verify whether it did provide support services to businesses in the deepwater oil and gas industry in the Gulf of Mexico. If the business/employer confirms that it provided deepwater support services, then assign a Moratoria-Yes determination to the entity and subject all related claims to Moratoria Loss Analysis. If the business/employer confirms that it did not provide deepwater support services, then assign a Moratoria-No determination to the entity and do not subject related claims to Moratoria Loss Analysis. If, during the normal course of review of any related economic loss claim, the reviewer determines that there are Moratoria Losses, do not pay those Moratoria Losses.

EXHIBIT B-7

## Policy 321: Exclusions: Moratoria

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/16/13
   c. Comment: N/A

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/2/13
   c. Comment:

   Understood that this was revised. (a) Thought Claim Form was revised to eliminate question where Business or Individual was not an Ex 19 Section II with an "X". (b) As substantive matter, a review should not be conducted, even if Claimant answers "Yes", where that claimant is not either a Section I or Section II with an "X" on Ex 19. (See Nos. 304, 322) (1/30/13); Understood that the Claim Form was revised to eliminate question where Business or Individual was not an Ex 19 Section II with an "X". As substantive matter, a review should not be conducted, even if Claimant answers "Yes", where that claimant is not either a Section I or Section II with an "X" on Ex 19. (4/2/13)

EXHIBIT B-7

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 322 | Claims Administrator's Approved Policy |
|---|---|

## I. Policy Information

| Policy Subject | Exclusions: Moratoria | | |
|---|---|---|---|
| Active Date | 1/9/13 | Policy Impact | ☐All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| Type of Decision | | | Claims Administrator Decision |
| Settlement Agreement Reference | | | |
| Affected Claim Types and/or Review Processes | | | Exclusions |

## II. Approved Policy

If the business/employer does not fit within the Exhibit 19 potential moratoria criteria and either (1) affirmed that it did not provide significant services to businesses in the offshore oil and gas industry in the Gulf of Mexico in 2009 or (2) did not answer the significant services question, then assign a Moratoria-No determination to the entity and do not subject related claims to Moratoria Loss Analysis.  If, during the normal course of review of any related economic loss claim, the reviewer determines that there are Moratoria Losses, do not pay those Moratoria Losses.

EXHIBIT B-7

## Policy 322: Exclusions: Moratoria

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date:  4/16/13
   c. Comment:  N/A

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date:  4/2/13
   c. Comment:

   See Nos. 304, 321. (1/30/13); The last sentence is incorrect.  A review is only conducted re applicable businesses in Section I or Section II with an "X" (that provide substantial offshore services) on Ex 19. (4/2/13)

EXHIBIT B-7

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-365 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

## I. Profile

| Subject | Exclusions: Moratoria | | |
|---|---|---|---|
| **Active Date** | 4/23/13 | **Policy Impact** | ☐ All Claims Regardless of Active Date<br>☑ All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | | Exclusions |

## II. Summary

The Industry Types Subject to Review by Claims Administrator for Potential Moratoria Losses (Exhibit 19) contains two sections that list NAICS codes and business descriptions, and many of the business descriptions are marked with an "x." In some cases, business descriptions marked with an "x" are very similar to one or more unmarked business descriptions. The Claims Administrator will make a determination or request information where necessary.

EXHIBIT B-7

## Policy 365 v.1: Exclusions: Moratoria

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Classify as CA Decision.

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Should be published as a CA Decision.

EXHIBIT B-7

# DEEPWATER HORIZON
## CLAIMS CENTER
### ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-365 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---------|----------------------------------------|

### I. Profile

| Subject | Exclusions: Moratoria | | |
|---------|----------------------|---|---|
| **Active Date** | 5/22/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 19 | |
| **Affected Claim Types and/or Review Processes** | | Exclusions | |

### II. Summary

The Industry Types Subject to Review by Claims Administrator for Potential Moratoria Losses (Exhibit 19) contains two sections that list NAICS codes and business descriptions, and many of the business descriptions are marked with an "x." In some cases, business descriptions marked with an "x" are very similar to one or more unmarked business descriptions. We will make a subjective determination or request information where necessary.

EXHIBIT B-7

**Policy 365 v.0: Exclusions: Moratoria
(Superseded by Policy 365 v.1)**

Comments and Decisions by the Parties:

1. **BP**
   a.  Decision:  Accept as a Final Policy
   b.  Date:  4/16/13
   c.  Comment:

   Agree. (2/11/13)

2. **Class Counsel**
   a.  Decision:  Defer to Claims Administrator
   b.  Date:  4/2/13
   c.  Comment:

   Can promulgate as CA Decision, but delete the word "subjective". (Note - see Nos. 304, 321, 322) (1/30/13); Appears to be Superseded by No. 365. (4/2/13)

EXHIBIT B-7

# DEEPWATER HORIZON
# CLAIMS CENTER
### ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 75 | Claims Administrator's Approved Policy |
|---|---|

## I. Policy Information

| | |
|---|---|
| **Policy Subject** | Exclusions: Guidance to Denied Claimants |

| **Active Date** | 5/30/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
|---|---|---|---|

| **Type of Decision** | Claims Administrator Decision |
|---|---|
| **Settlement Agreement Reference** | Section 6.1.2.1.1 |
| **Affected Claim Types and/or Review Processes** | Exclusions |

## II. Approved Policy

If we deny a claimant or claim because it is Excluded, we will not provide claimant-specific or claim-specific direction, guidance, or advice regarding where else the claimant may file the claim.  We will provide Excluded Claimants with basic information about their options after denial for Exclusions including the contact information for the various other funds and groups, but we will not tailor the information to specific Exclusions or offer specific guidance as to how a claimant should proceed after a denial.

EXHIBIT B-7

## Policy 75: Exclusions: Guidance to Denied Claimants (Internal)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Accept as a Final Policy
   b. Date:  4/16/13
   c. Comment:

   Perhaps in letters to excluded claimants you might consider some uniform language along the following lines:   BP operates an OPA claims program.  You can consider whether to present a claim to BP's OPA claims program.  The contact information for BP's OPA claims program is as follows:   BP Claims Program, P.O. Box 330919, Houston, TX 77233-0919, by telephone toll free: 855-687-2631, www.bp.com/claims.   For medical claims other than day-of-incident bodily injury claims, you might include some language along these lines:   There is a Deepwater Horizon Medical Benefits Class Action Settlement Agreement.  You can consider whether to file a claim in connection with the Deepwater Horizon Medical Benefits Class Action Settlement.  The contact information is as follows:   Deepwater Horizon Medical Benefits Claims Administrator, 935 Gravier Street, Suit 1400, New Orleans, LA 70112, by telephone toll free: 877-545-5111, www.info@deepwaterhorizonmedicalsettlement.com .  With regard to punitive damage claims against Halliburton and TO, we would suggest the notice claimants will have in the class notice and in claim form materials that their punitive damage claims against Halliburton and TO are reserved is sufficient.  With regard to assigned claims against TO and Halliburton, there is no place to send claimants, for these are claims assigned to the Economic Class as a juridical entity, not to Economic Class Members individually (see Ex. 21 Section 1.1.3). (5/25/12); Agree. (2/11/13); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   This seems to be purely an internal administrative decision. Defer to the Program's discretion as to what, if anything, to communicate publicly. (4/2/13)

EXHIBIT B-7



FRAUD and SIT ANALYSIS

EXHIBIT B-7

# DEEPWATER HORIZON
## CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 70 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | | |
|---|---|---|
| **Policy Subject** | Fraud: Authorizations | |
| **Active Date** | 5/25/12 | **Policy Impact** |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Exhibits 8A, 10, 4A |
| **Affected Claim Types and/or Review Processes** | | Fraud/Audit |

Policy Impact: ☑ All Claims Regardless of Active Date / ☐ All Claims Greater than Active Date

## II. Approved Policy

Some Exhibits (e.g., Exhibit 8A, Page 10 and Exhibit 10, Page 67) require the claimant to provide forms in which the claimant authorizes the Claims Administrator to: (1) verify employment and wage records, (2) obtain Tax Information Documentation from the Internal Revenue Service and/or Social Security Administration, and (3) confirm any bank account information for certain periods. Other Exhibits provide only that any statements made in a Claim Form and any documentation submitted with a Claim Form may be verified as judged necessary by the Claims Administrator (e.g., Exhibit 4A, Page 2).We will not require the claimant to sign the authorizations at the time that a claim is filed.  We will request these authorizations from the claimants if necessary to review and verify the claimant's submitted documentation.

EXHIBIT B-7

## Policy 70: Fraud: Authorizations

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Agree (with Claims Administrator's proposed approach); Responding to J. Rice 5/21
   Comment: BP does not agree. It is not intrusive to sign authorizations. The process is
   more efficient if authorization are signed with the claim form submission because it
   enables the Claims Administrator to utilize the authorizations if necessary; nor is the
   authorization intrusive if it is not used. Obtaining authorizations from all claimants was a
   cornerstone of fraud prevention important to BP to which Class Counsel agreed.
   (5/24/12); BP agrees with the CA Recommendation (6/15/12); Classify as CA Decision.
   (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   J. Rice: If there is a less intrusive way to accomplish the goal here why should every
   claimant have to file all these authorizations when only a handful are ever going to be
   used? (5/21/12); S. Herman: Claimants should only have to execute authorizations if and
   as they become relevant. BP apparently takes (or at least initially took) the position that
   all Claimants must execute all Authorizations at the inception. (5/26/12); S. Herman:
   Claimants should only have to execute authorizations if and as they become relevant. In
   addition, (as we believe has already been agreed to by BP and/or determined by the
   Program): Where the Claimant is represented by counsel, the Authorization (whenever
   required) should be able to be executed by the attorney (or otherwise) in accordance with
   the provisions that have been established for a signature on a Claim Form. (5/31/12);
   Defer to CA. (6/14/12); Can be promulgated as a CA Decision. (1/30/13); Should be
   published as a CA Decision. (4/2/13)

EXHIBIT B-7



**DEEPWATER HORIZON**
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-112 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | | |
|---|---|---|---|
| **Subject** | Fraud: Claimants Found Fraudulent by the GCCF | | |
| **Active Date** | 5/31/12 | **Policy Impact** | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | | Fraud/Audit |

| II. Summary |
|---|
| We will not automatically deny claimants that were found fraudulent and referred to the DOJ by the GCCF. We will independently evaluate their submissions to the Settlement Program. |

EXHIBIT B-7

## Policy 112: Claimants Found Fraudulent by the GCCF

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Claims found fraudulent by GCCF and referred to DoJ should be held until DoJ has completed its review. (5/11/12); If the Claims Administrator has reason to believe that a claimant has submitted a fraudulent claim, the Claims Administrator should investigate to determine whether the claim is valid. The Claims Administrator should not pay a claim it believes is fraudulent.   (5/24/12); BP finds the CA proposal acceptable. While the CA will not automatically deny such claims, BP understands that the CA will ensure that it is does not pay any claim it believes may be fraudulent. (5/31/12); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   J. Rice: The determination by the GCCF that they thought the claim was fraudulent is irrelevant to your considerations here. The question is whether the claimant complies with the terms of the Settlement Agreement. If DOJ has determined fraud occurred that is a legal determination and assume there has been prosecution. (5/21/12); S. Herman: Agree with Claims Administrator's Comments [Column M]: Should not automatically deny claimants that were found "fraudulent" and referred to the DOJ by the GCCF. Should evaluate claims under the terms of the Settlement Agreement to determine if their submissions to the Settlement Program appear to constitute fraud. (5/31/12); This doesn't seem phrased in the best way. Would change second sentence to something like: "We will independently evaluate their submissions to the Settlement Program." (This makes it sound like the Program is looking for fraud.) (1/30/13); This doesn't seem phrased in the best way. Would change second sentence to something like: "We will independently evaluate their submissions to the Settlement Program." (This makes it sound like the Program is looking for fraud.) (4/2/13)

EXHIBIT B-7



PAYMENTS

EXHIBIT B-7

# DEEPWATER HORIZON CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 203 | Claims Administrator's Approved Policy |
|---|---|

## I. Policy Information

| | |
|---|---|
| **Policy Subject** | Payment: Retracting Acceptance |

| **Active Date** | 7/18/12 | **Policy Impact** | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
|---|---|---|---|

| **Type of Decision** | Claims Administrator Decision |
|---|---|
| **Settlement Agreement Reference** | |
| **Affected Claim Types and/or Review Processes** | Payments |

## II. Approved Policy

Claimants may retract acceptance of an offer by written notice at any time until the claimant has signed and returned a Release.

EXHIBIT B-7

## Policy 203: Payment: Retracting Acceptance

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Can be promulgated as a CA Decision. (1/30/13); Should be published as a CA Decision. (4/2/13).

EXHIBIT B-7

# DEEPWATER HORIZON
## CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 204 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | | | |
|---|---|---|---|
| **Policy Subject** | Payment: Retracting Acceptance | | |
| **Active Date** | 7/18/12 | **Policy Impact** | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | Payments | |

| II. Approved Policy |
|---|
| Claimant may not retract acceptance after we receive a complete, properly executed Release, even if we have not issued payment, received a W-9 or Attorney Fee Acknowledgment. |

EXHIBIT B-7

## Policy 204: Payment: Retracting Acceptance

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Needs to be a claim-by-claim determination. People are able to make additional claims and receive additional compensation under the Release. (1/30/13); Should be published as a CA Decision. (4/2/13)

EXHIBIT B-7

# DEEPWATER HORIZON
## CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-205 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---------|----------------------------------------|

### I. Profile

| Subject | Payment: Retracting Offer | | |
|---------|---------------------------|---|---|
| **Active Date** | 7/18/12 | **Policy Impact** | ☑ All Claims Regardless of Active Date ☐ All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | | Payments |

### II. Summary

The Claims Administrator may correct an Eligibility Determination until the claimant has submitted an Acceptance.

EXHIBIT B-7

## Policy 205: Payment: Retracting Offer

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date:  4/2/13
   c. Comment:

   The Program does not make "offers".  The Program makes Determinations about what people are entitled to under the Agreement. Not sure why a Determination would be "retracted" but if that's the Policy, it should be promulgated. (1/30/13); Can be published as a CA Decision, but would not use this language.  The Program is not extending (or "retracting") "offers".  The Program is making determinations.  If this is the Policy, would say that the Program may "correct" an "Eligibility Determination".

EXHIBIT B-7

## DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-206 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Payment: Retracting Offer | | |
|---|---|---|---|
| Active Date | 7/18/12 | Policy Impact | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision | |
| Settlement Agreement Reference | | | |
| Affected Claim Types and/or Review Processes | | Payments | |

### II. Summary

The Claims Administrator will not revoke an Eligibility Determination after receipt of a properly executed Release, except for fraud or the exercise of an Opt-Out right.

EXHIBIT B-7

## Policy 206; Payment: Retracting Offer

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 2/13
   c. Comment:

   Opt Out issue now moot. (1/30/13); Can be published as a CA Decision, but: (i) Opt Out issue is now moot; and (ii) would not use this language. The Program is not extending (or "retracting") "offers". The Program is making determinations. If this is the Policy, would say that the Program may "revoke" an "Eligibility Determination".

EXHIBIT B-7

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 207 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | | | |
|---|---|---|---|
| **Policy Subject** | Payment: Rounding | | |
| **Active Date** | 7/18/12 | **Policy Impact** | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | | Payments |

| II. Approved Policy |
|---|
| We will not round payment amounts up to the next dollar. We will pay the exact amount, to the penny. |

## Policy 207: Payment: Rounding

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Should be published as a CA Decision. (4/2/13)

EXHIBIT B-7

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 208 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | |
|---|---|
| **Policy Subject** | Payment: Minimum Amount |

| **Active Date** | 7/18/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
|---|---|---|---|

| **Type of Decision** | Claims Administrator Decision |
|---|---|
| **Settlement Agreement Reference** | |
| **Affected Claim Types and/or Review Processes** | Payments |

| II. Approved Policy |
|---|
| There will be no minimum payment amount.  The claimant will receive payment for exactly the amount our review yields, even if it is a few dollars or even pennies.  The Settlement Agreement does not provide us with the discretion to either: (1) not pay a claim that falls below a certain amount; or (2) pay more than the exact amount by picking a minimum payment amount. |

EXHIBIT B-7

## Policy 208: Payment: Minimum Amount

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Can be promulgated. (1/30/13); Should be published as a CA Decision. (4/2/13)

EXHIBIT B-7

# DEEPWATER HORIZON
## CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-281 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Payment Documentation and Processing | | |
|---|---|---|---|
| **Active Date** | 10/18/12 | **Policy Impact** | ☒All Claims Regardless of Active Date ☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 27 Section 8 | |
| **Affected Claim Types and/or Review Processes** | | Payments | |

### II. Summary

The requirements for the Attorney Fee Acknowledgment Form ('Form') have changed.  Until now, claimants were required to submit an original, signed Form.  The Program is now authorized to pay a claim that is otherwise ready for payment, if it has a signed copy of the Form.  Claimants may upload a .pdf of the signed Form on their Portal.  As soon as the Program has received a signed copy (either on the Portal or by mail/overnight delivery), the Program will consider the document received for purposes of processing it for payment. However, claimants still need to mail or deliver the original, signed Form to the Program.

EXHIBIT B-7

## Policy 281: Payment Documentation and Processing

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Classify as CA Decision.  However, although there is a listing that the policy was issued 10/18/12, BP does not have any record of having been consulted or of receiving this policy.  BP does recall, however, there were communications on this topic between BP and the Parties.  Accordingly, BP requests Column G comment "Not Answered" be stricken as it improperly suggests BP did not respond on this topic and that BP was consulted about the exact language of this policy.  Also, BP requests copies of any contemporaneous documents from the Settlement Program relating to what ultimately became this policy, and BP requests these be added to Policy Keeper and that Column G be updated.  Additionally, there appears to be a typo in the description of the policy that should be corrected.

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Should be published as a CA Decision. (4/2/13)

EXHIBIT B-7

# DEEPWATER HORIZON
## CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-357 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Payment of 40% Balance to Transition Claimants Previously Paid 60% of a GCCF Award | |
|---|---|---|
| **Active Date** | 4/23/13 | **Policy Impact** | ☐ All Claims Regardless of Active Date ☑ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | |
| **Affected Claim Types and/or Review Processes** | | Prior Payment |

### II. Summary

Claimants who received a 60% payment from the GCCF will "receive the greater of (a) the remaining 40% of the GCCF offer, or (b) the Economic Class Settlement Payment minus any amount previously paid by the Transition Process," as provided in Section 4.2.3.1 of the Settlement Agreement. The Eligibility Notice will explain that the 40% amount will offset any future offers on subsequently filed claims, and that the claimant will receive an additional payment only if the amount of a future claim exceeds the 40% amount.

EXHIBIT B-7

**Policy 357 v.2: Payment of 40% Balance to Transition Claimants Previously Paid 60% of a GCCF Award**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Should be published as a CA Decision. (4/2/13)

EXHIBIT B-7

## DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-357 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---------|----------------------------------------|

### I. Profile

| Subject | Payment: 40% | | |
|---------|--------------|---|---|
| **Active Date** | 7/18/12 | **Policy Impact** | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Section 4.2.3.1 | |
| **Affected Claim Types and/or Review Processes** | | Payments | |

### II. Summary

A claimant may file multiple claims and accept them at different times and will "receive the greater of (a) the remaining 40% of the GCCF offer, or (b) the Economic Class Settlement Payment minus any amount previously paid by the Transition Process," as provided in Section 4.2.3.1 of the Settlement Agreement with the first offer. The Eligibility Notice will explain that the 40% amount will offset any future offers on subsequently filed claims, and that the claimant will receive an additional payment only if the amount of a future claim exceeds the 40% amount.

EXHIBIT B-7

**Policy 357 v.1: Payment: 40%**
**(Superseded by Policy 357 v.2)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/16/13
   c. Comment: N/A

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/2/13
   c. Comment:

   Should be promulgated. (1/30/13); Apparently superseded by No. 357. (4/2/13)

EXHIBIT B-7

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-357 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Payment of 40% Balance to Transition Claimants Previously Paid 60% of a GCCF Award | |
|---|---|---|
| **Active Date** | 7/18/12 | **Policy Impact** | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Sections 4.2.3.1 & 4.2.3.2 |
| **Affected Claim Types and/or Review Processes** | | Other |

### II. Summary

A claimant shall "receive the greater of the (a) the remaining 40% of the GCCF offer, or (b) the Economic Class Settlement Payment minus any amount previously paid by the Transition Process," as provided in Section 4.2.3.1 of the Settlement Agreement, upon the first award issued to the claimant by the Program on any Claim Type.

EXHIBIT B-7

**Policy 357 v.0: Payment of 40% Balance to Transition Claimants Previously Paid 60% of a GCCF Award (Superseded by Policy 357 v.1)**

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/16/13
   c. Comment: N/A

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/2/13
   c. Comment:

   Can be promulgated as CA Decision. (1/30/13); Appears to be superseded by No. 357. (4/2/13)

EXHIBIT B-7



RECONSIDERATION

# DEEPWATER HORIZON
# CLAIMS CENTER
#### ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 125 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | |
|---|---|
| **Policy Subject** | Reconsideration: Change in Review Outcome |

| **Active Date** | 6/15/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
|---|---|---|---|
| **Type of Decision** | . | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Section 6.1.1 | |
| **Affected Claim Types and/or Review Processes** | | Other | |

| II. Approved Policy |
|---|
| Payment and Denial Notices issued to claimants will alert claimants that the result on the claim(s) may change, increase, or decrease after Reconsideration. |

EXHIBIT B-7

## Policy 125: Reconsideration: Change in Review Outcome

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   The reconsideration provisions of the agreement do not envision the submission of new evidence in connection with a request for reconsideration. (5/11/12); With regard to question 90 (row 92), there may be a disagreement between BP and Class Counsel and some aspects of Class Counsel's response are not clear to BP. It seems Class Counsel may have a view that reconsideration may only result in a more favorable outcome for the claimant. If so, BP disagrees. There is no such requirement in Section 6.1.2.1.1. Rather, it is the job the Settlement Program to accurately determine a claimant's compensation amount, if any. Moreover, Section 6.1.2.1.1 provides that if a claimant seeks reconsideration the claimant's file will be made available to BP by the Settlement Program, and so BP may well comment at the reconsideration stage. Perhaps there may be circumstances in which BP comments might cause the Settlement Program to decrease or otherwise change a compensation determination for the claimant. What is unclear to BP is what is meant by the comment of we believe Joe Rice that a claimant "can always supplement info." Section 6.1.2.1.1 contemplates that there is no new information provided on reconsideration by the claimant but rather that the claimant has already provided all relevant information and is now calling to the Settlement Program's attention that it failed to take into account relevant data or information the claimant has provided. Moreover, 6.1.2.1.1 contemplates that there is a one time reconsideration of the claimant's final determination and the claimant has 30 days to seek reconsideration, no repeated requests for reconsideration. (5/22/12); Responding to J. Rice 5/21/12 Comments: As explained in BP's response, on reconsideration, no new information is considered. If the administrator finds an error and it works against the claimant there is no basis for not applying the correction. (5/24/12); BP agrees with CA Recommendation (6/15/12); Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Seems claimant should get benefit of best possible offer under the rules. If BP can't challenge at this stage, should offer be able to decrease? (5/5/12); The award can increase as a result of the Reconsideration, (or else what's the point?). I don't think it was contemplated that an award would decrease, (as it is the Claimant, not BP, asking for reconsideration). I would think that, in most cases, the Program will either agree (in which case the award will be increased) or disagree (in which case the award will stay the same) with the claimant's alleged "calculation error, failure to take into account relevant information or data or other failure to follow the standards governing the determination".

EXHIBIT B-7

(5/18/12) Based on what is written in Column E, we agree that the Claimant should be able to present additional documentation that he or she believes would demonstrate that the Program made "a calculation error, failed to take into account relevant information or data or otherwise failed to follow the standards governing the determination" [6.1.2.1.1]. However, we disagree that the award should ever decrease as a result of the Reconsideration. (5/19/12): J. Rice: I agree on reconsideration. New documentation can be considered and the claim can be increased but I don't think it can decreased. (5/21/12); J.Rice: I do not have the questions in front of me now but I can reply to question 90 in the fifth paragraph below (responding to email from W. Bloom 5/22/12). BP is asking you to read words into 6.1.2.1.1that do not exist in the document. First the BP suggestion of what the paragraph "contemplates" is not accurate from CC point of view. In order to read the paragraph as BP ask you have to add the words "provided by claimant" as BP has do in their reply. The document does not use those words.   The document says "take into account relevant information or data" and there is no time limitation found in 6.1.2.1.1 (5/22/12); S. Herman: Section 6.1.2.1.1 allows a Claimant (but not BP) to demonstrate that the Program "committed a calculation error, failed to take into account relevant information or data or otherwise failed to follow the standards." The Program will either agree (in which case the compensation will presumably increase), or disagree (in which case the compensation will presumably stay the same).  BP apparently takes (or at least initially took) the position that no new information can be considered and the Program is authorized to look for some other error, which could cause the compensation to go down. (5/26/12); S. Herman: Section 6.1.2.1.1 allows a Claimant (but not BP) to demonstrate that the Program "committed a calculation error, failed to take into account relevant information or data or otherwise failed to follow the standards." The Program will either agree (in which case the compensation will presumably increase), or disagree (in which case the compensation will presumably stay the same). (5/31/12); Defer to CA. (6/14/12); Should be promulgated as CA Decision.  (Isn't this a part of the Appeal Protocol?) (1/30/13); Should be published as CA Decision and/or as part of Appeal Protocol. (4/2/13)



EXHIBIT B-7

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 192 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | | | |
|---|---|---|---|
| **Policy Subject** | Deadlines: Reconsideration | | |
| **Active Date** | 7/18/12 | **Policy Impact** | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | | Deadlines |

| II. Approved Policy |
|---|
| The Settlement Agreement Reconsideration Deadline is 30 days from the Notice date. |

EXHIBIT B-7

## Policy 192: Deadlines: Reconsideration

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Has this been modified by the Re-Review and/or final Appeal Protocol? (1/30/13);
   Should be incorporated into the Appeal Protocol. (4/2/13)

EXHIBIT B-7

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 193 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | | |
|---|---|---|
| **Policy Subject** | Deadlines: Claimant Appeal | |
| **Active Date** | 7/18/12 | **Policy Impact** ☑All Claims Regardless of Active Date ☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | |
| **Affected Claim Types and/or Review Processes** | | Deadlines |

| II. Approved Policy |
|---|
| The Settlement Agreement Appeal Deadline is 30 days from the date of Post-Reconsideration notice for Denied and Payable claims and 20 days from the date of Post-Reconsideration notice for Incompleteness Appeals |

EXHIBIT B-7

## Policy 193: Deadlines: Claimant Appeal

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Has this been modified by the Re-Review and/or final Appeal Protocol? (1/30/13);
   Should be incorporated into the Appeal Protocol. (4/2/13)

EXHIBIT B-7

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-195 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | | |
|---|---|---|---|
| **Subject** | Deadlines: Seafood Claim Form Submission | | |
| **Active Date** | 7/18/12 | **Policy Impact** | ☒ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | Deadlines | |

## II. Summary

Pursuant to Ex. 10 the deadline to file Seafood Compensation Claims was January 22, 2013, as that was thirty (30) days from the date of entry of the Final Order and Judgment of the District Court ruling upon final approval of the Settlement.

EXHIBIT B-7

## Policy 195: Deadlines: Seafood Claim Form Submission

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/16/13
   c. Comment:

   BP objects to making this policy available publicly as drafted on the ground that the exact language from Ex. 10 should be used so there is no confusion that the time line runs from the district court ruling, not Fifth Circuit. Pursuant to Ex. 10 the deadline was "no later than thirty (30) days from the date of entry of the Final Order and Judgment of the District Court ruling upon final approval of the Settlement (Bar Date)." Also, agree with Class Counsel the actual date of the deadline, which was announced, should be included. If these corrections are made, BP is fine with classifying the policy as "CA Decision" and making it available publicly.

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator Decision
   b. Date: 4/2/13
   c. Comment:

   Moot now. Think the Jan 22nd date was announced. (1/30/13); Moot. (4/2/13)

EXHIBIT B-7

# DEEPWATER HORIZON
# CLAIMS CENTER
### ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 196 | Claims Administrator's Approved Policy |
|---|---|

## I. Policy Information

| Policy Subject | Deadlines: Non-Seafood Claim Form Submission | | |
|---|---|---|---|
| Active Date | 7/18/12 | Policy Impact | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| Type of Decision | | | Claims Administrator Decision |
| Settlement Agreement Reference | | | |
| Affected Claim Types and/or Review Processes | | | Deadlines |

## II. Approved Policy

The Settlement Agreement Deadline for submitting all Claim Forms other than Seafood Compensation Program Claim Forms is the earlier of six months (180 days) from first payment (date of check or wire) or 4/22/14.

EXHIBIT B-7

## Policy 196: Deadlines: Non-Seafood Claim Form Submission

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/16/13
   c. Comment:

   BP believes the express language of Section 4.4.8 is clear that the six months begins to run from the date of the initial payment, not the date the release is signed.  Certainly, there are conditions precedent to a claimant obtaining the initial payment, including execution of the release, but the language of Section 4.4.8 is express that the timing of the bar date runs from date of payment:  "Subject to the limitations in Section 5.11.9, Claimants shall have six (6) months from the date of initial payment by the Settlement Program of the Claimant's first paid Claim to file all additional Claims, provided that ….."  We note too that this interpretation of 4.4.8 allows the Claimant more time than if the bar date were to run from the date the release is signed. (7/9/12); Not Answered. (2/11/13); Classify as CA Decision; however, the express language of Sections 4.4.8, 5.11.8, and 5.11.9 govern and it does not appear that the CA decision tracks this language.  BP suggests the policy be modified to track the language. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Should likely be clarified that this is only where a Seafood Claim is submitted and paid. (1/30/13); Should be published as a CA Decision. (4/2/13)

EXHIBIT B-7

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 197 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | | | |
|---|---|---|---|
| **Policy Subject** | Deadlines: Incompleteness Response | | |
| **Active Date** | 7/18/12 | **Policy Impact** | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | Deadlines | |

| II. Approved Policy |
|---|
| We set the deadline for claimants to respond to an Incompleteness Notice as 30 days after the Notice date. |

EXHIBIT B-7

## Policy 197: Deadlines: Incompleteness Response

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Understood this was subsumed within / superseded by a more recent comprehensive Policy Statement re Incomplete Claims. (1/30/13); Should be published as a CA Decision. (4/2/13)

EXHIBIT B-7

# DEEPWATER HORIZON
## CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 198 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | |
|---|---|
| **Policy Subject** | Deadlines: Offer Acceptance |

| **Active Date** | 7/18/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
|---|---|---|---|

| **Type of Decision** | Claims Administrator Decision |
|---|---|
| **Settlement Agreement Reference** | |
| **Affected Claim Types and/or Review Processes** | Deadlines |

| II. Approved Policy |
|---|
| There is no deadline for claimants to accept an Offer. |

EXHIBIT B-7

## Policy 198: Deadlines: Offer Acceptance

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Can be promulgated publically, but it's not an "offer" it is a "determination". (1/30/13);
   Should be published as a CA Decision. (4/2/13)

EXHIBIT B-7

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 200 | Claims Administrator's Approved Policy |
|---|---|

## I. Policy Information

| Policy Subject | Deadlines: Cashing Checks | | |
|---|---|---|---|
| Active Date | 7/18/12 | Policy Impact | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision | |
| Settlement Agreement Reference | | | |
| Affected Claim Types and/or Review Processes | | Deadlines | |

## II. Approved Policy

We set the deadline for claimants to cash a check as 180 days.

EXHIBIT B-7

## Policy 200: Deadlines: Cashing Checks

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Can be promulgated as a CA Decision. (1/30/13); Should be published as a CA Decision. (4/2/13)

EXHIBIT B-7

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 201 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | | | |
|---|---|---|---|
| **Policy Subject** | Deadlines: Compliance | | |
| **Active Date** | 7/18/12 | **Policy Impact** | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | Deadlines | |

| II. Approved Policy |
|---|

1. Online: Midnight user's time.
2. Mail: Postmark date. If a mailed item contains no postmark date, we will assume that the sender mailed it three days before receipt.
3. Overnight Delivery: Date given to carrier.
4. Delivery to CAC or Hammond: Date of receipt.
5. Holidays and Sundays: If the deadline falls on a holiday or Sunday, we will accept a submission on the next business day.

EXHIBIT B-7

## Policy 201: Deadlines: Compliance

Comments and Decisions by the Parties:

1. **BP**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/16/13
   c. Comment:

   Classify as CA Decision. (4/16/13)

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator
   b. Date:  4/2/13
   c. Comment:

   Should be promulgated publicly. (1/30/13); Should be published as a CA Decision.
   (4/2/13)

EXHIBIT B-7

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-249 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile | | | |
|---|---|---|---|
| Subject | Deadlines for Processing Claims | | |
| Active Date | 6/24/13 | Policy Impact | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| Type of Decision | | | Claims Administrator Decision |
| Settlement Agreement Reference | | | |
| Affected Claim Types and/or Review Processes | | | Deadlines |

| II. Summary |
|---|
| Please see the attached reissued policy memo. |

EXHIBIT B-7

## DEADLINES FOR PROCESSING CLAIMS

### I.   Introduction.

Policy ID 249 (Deadlines for Processing Claims), announced on 9/5/12, identifies claims processing deadlines observed by the Claims Administrator and set by either the Settlement Agreement or the Claims Administrator.  The Claims Administrator re-announced this policy to the Parties on 5/22/13.

The Claims Administrator has amended this policy to:

(1) Update subsection 1(d) to reflect the passage of the Seafood Claim Form deadline set by the Settlement Agreement and to incorporate the Claim Administrator's 5/22/13 Procedure Regarding Handling Untimely Seafood Claims (Proc-379); and

(2) Remove references to a deadline for claimant acceptance of an award offer or to return a Release, in subsections 2(b) and (c).

### II.   Revised Policy Statement.

The Claims Administrator observes these deadlines for claims:

**1. Deadlines Set by the Settlement Agreement:**

(a) Claimant Request for Reconsideration:  30 days from date of Notice

(b) Claimant Appeal:

(1) 30 days from date of Post-Reconsideration Notice for Denied and Payable claims

(2) 20 days from date of Post-Reconsideration Notice for Incompleteness Appeals

(c) BP Appeal:  10/15/20 days from the date of the Notice

(d) Seafood Claim Form:  1/22/13, subject to the Claims Administrator's 5/22/13 Procedure Regarding Handling Untimely Seafood Claims (Proc-379)

(e) Other Claim Forms:  Earlier of six months (180 days) from first payment (date of check or wire) or 4/22/14.

**2. Deadlines Set by the Claims Administrator:**

(a) Claimant Response to Notice of Incomplete Claim:  30 days

(b) Claimant Cashing Check:  180 days.

1

**Policy 249 v.1: Deadlines for Processing Claims**

Comments and Decisions by the Parties:

**A.  Policy Announced to Parties for Positions**

    **1.  BP**
        a.  Decision:  Defer to Claims Administrator
        b.  Date: 5/29/13
        c.  Comment: N/A

    BP defers to the Claims Administrator.  However, BP respectfully notes that Sections 2(b) and 2(c) no longer impose a deadline for claimants to accept an award or to sign a release.  Such deadlines are important for the orderly administration of a claims process, and will become increasingly important as the Settlement Program nears its end.  BP respectfully submits that it will be necessary to revisit this issue in the future.

    **2.  Class Counsel**
        a.  Decision:  Defer to Claims Administrator
        b.  Date: 5/22/2013
        c.  Comment:

**B.  Policy Reissued to Parties for Final Positions**

    **1.  BP**
        a.  Decision:  Defer to Claims Administrator
        b.  Date: 6/21/13
        c.  Comment: N/A

    BP defers to the Claims Administrator.  However, BP respectfully notes that deadlines for claimants to accept an award or to sign a release are important for the orderly administration of a claims process, and will become increasingly important as the Settlement Program nears its end.  A claims process with no deadline to accept awards and sign releases is inconsistent with how claims processes operate and is contrary to the objectives of any settlement administration process.  A proper claims administration process is designed to timely compensate claimants that are entitled to receive benefits from the settlement while not being continuously burdened by ever increasing unresolved claims that unnecessarily create continuing burdens on the program and potentially impact the efficient processing of other claims.

    BP respectfully submits that it will be necessary to revisit this issue in the future.

    **2.  Class Counsel**
        a.  Decision:  Defer to Claims Administrator
        b.  Date: 6/14/2013
        c.  Comment: N/A

EXHIBIT B-7

**DEEPWATER HORIZON
CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-249 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile

| Subject | Deadlines for Processing Claims | | |
|---|---|---|---|
| **Active Date** | 9/5/12 | **Policy Impact** | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | | Deadlines |

### II. Summary

The Claims Administrator observes these deadlines for claims:

1. Deadlines Set by the Settlement Agreement:
(a) Claimant Request for Reconsideration: 30 days from date of Notice
(b) Claimant Appeal:
(1) 30 days from date of Post-Reconsideration Notice for Denied and Payable claims
(2) 20 days from date of Post-Reconsideration Notice for Incompleteness Appeals
(c) BP Appeal: 10/15/20 days from the date of the Notice
(d) Seafood Claim Form: 30 days after final judicial approval
(e) Other Claim Forms: Earlier of six months (180 days) from first payment (date of check or wire) or 4/22/14.

2. Deadlines Set by the Claims Administrator:
(a) Claimant Response to Notice of Incomplete Claim: 30 days
(b) Claimant Acceptance of Offer: No deadline
(c) Claimant Return of Signed Release: No deadline
(d) Claimant Cashing Check: 180 days.

EXHIBIT B-7

**Policy 249 v.0: Deadlines for Processing Claims
(Superseded by Policy 249 v.1)**

Comments and Decisions by the Parties:

1. **BP**
   a.  Decision:  Defer to Claims Administrator Decision
   b.  Date: 4/16/13
   c.  Comment: N/A

2. **Class Counsel**
   a.  Decision:  Defer to Claims Administrator Decision
   b.  Date: 4/2/2013
   c.  Comment:

   This seems addressed within other Policies, and is somewhat moot now that the Opt Out
   Date has passed. (1/30/13); Should be promulgated as a CA Decision. (Again, however,
   when an individual is compensated under the Agreement as a "Business" then it should
   receive the Accountant Services Reimbursement available to a Business.)  (4/2/13)

EXHIBIT B-7

# DEEPWATER HORIZON
## CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 250 | Claims Administrator's Approved Policy |
|---|---|

### I. Policy Information

| | |
|---|---|
| **Policy Subject** | Measuring Compliance with Deadlines |

| **Active Date** | 9/5/12 | **Policy Impact** | ☐ All Claims Regardless of Active Date<br>☑ All Claims Greater than Active Date |
|---|---|---|---|

| **Type of Decision** | Claims Administrator Decision |
|---|---|

| **Settlement Agreement Reference** | |
|---|---|

| **Affected Claim Types and/or Review Processes** | Deadlines |
|---|---|

### II. Approved Policy

The Claims Administrator will use these rules to measure the date of submission of any material to the Program:

(a) Online:  Midnight user's time
(b) Mail:  Postmark
(c) Overnight Delivery:  Date given to carrier
(d) Delivery to CAC or Hammond faculty:  Date of receipt
(e) Cashing payment check:  180 days.
(f) If the deadline falls on a holiday, Saturday or Sunday, the deadline shall be the next business day.
(g) If a mailed item contains no postmark, the Claims Administrator will assume that the sender mailed it three days before receipt.

EXHIBIT B-7

## Policy 250: Measuring Compliance with Deadlines

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment: N/A

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   See 32. (1/30/13); Appears to have been superseded by No. 363. (4/2/13).

EXHIBIT B-7

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 194 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | | | |
|---|---|---|---|
| **Policy Subject** | Deadlines: BP Appeal Deadline | | |
| **Active Date** | 7/18/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | Deadlines | |

| II. Approved Policy |
|---|
| The Settlement Agreement BP Appeal Deadline is 15, 20, or 25 days from the date a claimant accepts an offer (depending on offer amount).  If the claimant does not accept an offer, these appeal timeline starts running 31 days after the Notice date. |

EXHIBIT B-7

## Policy 194: Deadlines: BP Appeal Deadline
## (Internal)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   BP objects to making this policy available publicly as drafted on the ground that the statement in the 'policy adopted' section is no longer accurate. While the number of days stated is correct, the trigger event is incorrect. Pursuant to Rule 11(a) of the Rules Governing Appeals Process: "BP shall note an appeal within the following time periods after the date of the Eligibility Notice or the Post-Reconsideration Eligibility Notice being appealed. . . ." If the Settlement Program corrects this inaccuracy, then BP agrees the policy may be made available publicly and should be classified as CA Decision.

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Can be promulgated as a CA Decision. (1/30/13); Should be incorporated into the Appeal Protocol. (4/2/13)

EXHIBIT B-7

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 199 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | | | |
|---|---|---|---|
| **Policy Subject** | Deadlines: Returning a Signed Release | | |
| **Active Date** | 7/18/12 | **Policy Impact** | ☒All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | Deadlines | |

| II. Approved Policy |
|---|
| We will request that the claimant accept an offer and return  the signed Release within 30 days of the Eligibility Notice.  This is a goal and not a firm deadline. However, we will not add this language to any Notice until after the Opt-Out deadline passes, because we do not want to suggest that a claimant give up his or her Opt-Out right. After we start using the 30 day "deadline" for accepting Offers and returning signed Releases in the Notices, it will be a soft deadline that we will freely extend if asked. We can accept late materials until January 2014. |

EXHIBIT B-7

## Policy 199: Deadlines: Returning a Signed Release
## (Internal: Marked Obsolete on 3/7/13)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment:

   BP objects to characterization in Column G of "not answered" as misleading because BP has no record of having previously been informed of this policy by the Settlement Program and being provided an opportunity to comment. Although Column D indicates that this policy was issued on 7/18/12, BP does not find any policy issued that day. BP requests that the Claims Administrator provide the Parties with its communication from that time period, and that BP be provided an opportunity to respond. BP further objects to making this policy available publicly on the ground that if such a policy is made available publicly that deadlines are freely extended, then claimants will be less likely to comply with deadlines and this will slow down claims processing.

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   The Opt Out consideration is moot at this point. Can be promulgated without that caveat. (1/30/13); This is purely an internal administrative policy. (4/2/13)

EXHIBIT B-7

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Policy ID 202 | Claims Administrator's Approved Policy |
|---|---|

| I. Policy Information | |
|---|---|

| Policy Subject | Deadlines: Extensions |
|---|---|
| **Active Date** 7/18/12 | **Policy Impact** ☑All Claims Regardless of Active Date ☐All Claims Greater than Active Date |
| **Type of Decision** | Claims Administrator Decision |
| **Settlement Agreement Reference** | |
| **Affected Claim Types and/or Review Processes** | Deadlines |

| II. Approved Policy |
|---|

We will take a very hard line on compliance with any Settlement Agreement deadline. Deadlines that we created and imposed are soft deadlines that we will freely extend if asked. We can accept late materials, until January 2014.

## Policy 202: Deadlines: Extensions
## (Internal)

Comments and Decisions by the Parties:

1. **BP**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/16/13
   c. Comment: N/A

2. **Class Counsel**
   a. Decision: Defer to Claims Administrator
   b. Date: 4/2/13
   c. Comment:

   Ok. (1/30/13); This seems to be an internal administrative policy. Defer to the Claims Administrator as to the information, if any, publicly provided. (4/2/13)

EXHIBIT B-7