UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | § § § § § | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER |
| Applies to: No. 10-2771, and All Cases | § § § § | MAG. JUDGE SHUSHAN |

**MEMORANDUM IN SUPPORT OF HALLIBURTON ENERGY SERVICES, INC.'S OBJECTIONS TO AND APPEAL FROM MAGISTRATE JUDGE'S ORDER REGARDING BP'S MOTION TO STRIKE HALLIBURTON EXPERTS KRIS RAVI'S PHASE 2 REBUTTAL REPORT AND GLEN STEVICK'S PHASE 2 REBUTTAL REPORT, SECTION II(b)(i) [REC. DOC. 10751]**

HESI appeals from Magistrate Judge Shushan's Order striking the Expert Rebuttal Report of Dr. Kris Ravi ("Dr. Ravi").[1] On July 15, 2013, Judge Shushan granted BP's motion to strike Ravi's Rebuttal Report, apparently because "[i]f Halliburton is permitted to present Dr. Ravi and his rebuttal report, Judge Barbier will be confronted in Phase Two with testimony on issues which were presented in Phase One." (Rec. doc. 10751 at 2). However, only two days later and in response to the same briefing by BP, Judge Shushan granted BP's motion to strike Section II(b)(i) of Dr. Glen Stevick's ("Dr. Stevick") Expert Rebuttal Report, reasoning that the section should be stricken because "Dr. Stevick presents a *new* Phase One opinion in Phase Two that should have been presented in Phase One." (Rec. doc. 10767 at 2) (emphasis added). Judge Shushan decided, however, to strike Section II(b)(i) of Dr. Stevick's Rebuttal Report "for the reasons cited in the order granting BP's motion to strike Dr. Ravi's rebuttal report." (Rec. doc. 10767 at 2). It is unclear, when these orders are read together, on what basis Judge Shushan

---

[1] Rebuttal Report of Dr. Kris Ravi, dated June 10, 2013 ("Ravi rebuttal") (Exhibit 1).

**MEMORANDUM IN SUPPORT OF HALLIBURTON ENERGY SERVICES, INC.'S OBJECTIONS TO AND APPEAL FROM MAGISTRATE JUDGE'S ORDER REGARDING BP'S MOTION TO STRIKE HALLIBURTON EXPERTS KRIS RAVI'S PHASE 2 REBUTTAL REPORT AND GLEN STEVICK'S PHASE 2 REBUTTAL REPORT, SECTION II(b)(i) [REC. DOC. 10751]**                                                                                                 Page 1

intended to strike Dr. Ravi's Rebuttal Report and Section II(b)(i) of Dr. Stevick's Rebuttal Report.  HESI cannot discern whether Judge Shushan decided BP's motion on the basis that Dr. Ravi and Dr. Stevick present a new Phase One opinion in Phase Two or because Dr. Ravi and Dr. Stevick merely present Phase One-related issues in Phase Two.  Regardless of the basis for Judge Shushan's decision, the decision to strike Dr. Ravi's rebuttal report prejudices HESI's due process right to defend itself and is contrary to law.

## I. Summary of Argument

To the extent Judge Shushan's decision is based on Dr. Ravi's reliance on a casing breach analysis from Phase One, Dr. Ravi has permissibly done so only to rebut other parties' continued assertions in Phase Two about the location and condition of downhole cement as it relates to their analyses on the quantification of flow.  To the extent Judge Shushan's decision is based on Dr. Ravi's reliance on a "new" flow path theory, such decision appears to be based on BP's misrepresentation and is erroneous.  Dr. Ravi relies on evidence of a casing breach and the effect of that breach on the location and condition of downhole cement that was clearly established in the Phase One record by, among others, HESI's expert, Dr. Gene Beck ("Dr. Beck").  Moreover, BP's campaign to strike Dr. Ravi from opining in this case is part of an attempt by BP to elicit expert testimony for the first time in Phase Two in support of its permeable cement/nitrogen breakout theory after failing to support or prove the theory during the Phase One trial.  Allowing BP to elicit such testimony, while simultaneously preventing HESI from responding to such continued attacks, works an extreme injustice on HESI and denies it due process.

## II. Procedural History

On July 5, 2013, BP filed its Motion to Strike Halliburton experts Kris Ravi's Phase 2 Rebuttal Report and Glen Stevick's Phase 2 Rebuttal Report, Section II(b)(i) (the "Motion").

(Rec. doc. 10742).  In its Motion, BP contended that HESI impermissibly attempted an end-run around this Court's Phase One rulings by submitting Ravi's Rebuttal Report and Section II(b)(i) of Stevick's Rebuttal Report, which, according to BP, solely concern allocating fault for the blowout.  (Rec. doc. 10742 at 2).

On July 11, HESI responded to the Motion.  (Rec. Doc. 10741).  In its response, HESI demonstrated, including through the testimony of BP's own witnesses, that "the presence, nature and condition of bottom-hole cement in the Macondo well is relevant to the determination of flow rates and cumulative discharge" and that these issues are "pervasive throughout Phase II discovery."  Rec. doc. 10741 at 2.[2]  HESI further demonstrated that Dr. Ravi's and Dr. Stevick's rebuttals were both directly responsive to the Phase Two opinions offered by BP expert Dr. Momber and highly relevant to important Phase Two quantification issues, such as obstructions that affected the quantification of flow from the well.

On July 12 at 4:48 p.m. CDT, Magistrate Judge Shushan emailed HESI and the other parties to inform them that Judge Barbier "does not intend to allow TO or HESI to call Quantification witnesses at trial" and that he was cancelling the deposition, set for Monday July 15, of HESI Quantification expert Dr. Richard Strickland ("Dr. Strickland").

On July 15, BP replied to HESI's response to the Motion (Rec. doc. 10742), citing Judge Shushan's email of July 12 and stating its erroneous position that "Drs. Ravi and Stevick . . .

---

[2] *See, e.g.,* Expert Report of Stewart Griffiths, dated March 22, 2013, at p. 4 (Exhibit 2) ("Any significant erosion of the ... cement barrier in the bottom of the well occurred rapidly over the first few days following the blowout."); *see also* Expert Report of Martin Blunt, dated May 1, 2013, at p. 14 (Exhibit 3) ("There is persuasive evidence that the outflow configuration did, in fact, change over time.  For example ... Dr. Emilsen concludes that ... oil flowed into the well-bore over a restricted interval ... perhaps because of residual cement blocking the flow."); s*ee also* Deposition of Thomas Hunter (Vol. 1), 128:12 – 128:15 (Exhibit 4) ("There certainly was cement at different places in the well that ... affected the flow"); Expert Report of Kerry Pollard, dated May 1, 2013, at p. 6 (Exhibit 5) ("The status and location of ... casing/cement damage were unknown.  Therefore assumptions had to be made in order to model it."); Expert Report of John Wilson, dated May 1, 2013, at p. 10, n. 26 (Exhibit 6) ("In this case, the skin represented whatever flow path existed between the reservoir and the well (through the failed cement job, for example.").

**MEMORANDUM IN SUPPORT OF HALLIBURTON ENERGY SERVICES, INC.'S OBJECTIONS TO AND APPEAL FROM MAGISTRATE JUDGE'S ORDER REGARDING BP'S MOTION TO STRIKE HALLIBURTON EXPERTS KRIS RAVI'S PHASE 2 REBUTTAL REPORT AND GLEN STEVICK'S PHASE 2 REBUTTAL REPORT, SECTION II(b)(i) [REC. DOC. 10751]                                                          Page 3**

'suggest' a *new theory* about the cement job, that of a 'casing breach as another plausible explanation for the data that affected where cement was placed and, thus, the extent of restrictions to flow.'"  (Rec. doc. 10742 at 2) (emphasis added).

Later on July 15, Judge Shushan granted the Motion. (Rec. doc. 10751). Judge Shushan clarified, however, that "[u]ntil there is a final decision on BP's motion to strike Dr. Ravi, the parties are required to proceed with his deposition." Rec. doc. 10751 at 3.[3]  Further, the Court clarified that it would preclude HESI from questioning any quantification witness during already scheduled depositions in which HESI previously was allocated questioning time.[4]  Since granting BP's Motion to strike, Judge Shushan entered another order clarifying that Dr. Ravi's deposition is canceled without regard to whether there is a final decision on the Motion.  Rec. doc. 10771.

## ARGUMENT

As the Supreme Court has declared, "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970); *Southern Stevedoring Co. v. Voris*, 190 F.2d 275, 277 (5th Cir. 1951) (noting that cross-examination is "fundamental"). Importantly, due process affords a party the right to confront and rebut the evidence offered

---

[3] Judge Shushan did not specifically address BP's request to strike Section II(b)(1) of Stevick's Rebuttal Report.

[4] To the extent Judge Shushan's Order regarding Dr. Ravi incorporates Judge Barbier's determinations that HESI will not be allowed call quantification witnesses at the Phase Two trial and that HESI will not be able to present or question expert quantification witnesses during discovery, HESI notes its objection to these determinations. Because these determinations were made by Judge Barbier and not Judge Shushan, HESI does not believe that any appeal of the determinations is necessary, but HESI does plan to file a motion seeking reconsideration of these determinations.  Nonetheless, because Judge Barbier has not entered a written order confirming these determinations, and because they are referenced in Judge Shushan's order regarding Dr. Ravi, to the extent an appeal is necessary as to these determinations, HESI includes them in this appeal.

**MEMORANDUM IN SUPPORT OF HALLIBURTON ENERGY SERVICES, INC.'S OBJECTIONS TO AND APPEAL FROM MAGISTRATE JUDGE'S ORDER REGARDING BP'S MOTION TO STRIKE HALLIBURTON EXPERTS KRIS RAVI'S PHASE 2 REBUTTAL REPORT AND GLEN STEVICK'S PHASE 2 REBUTTAL REPORT, SECTION II(b)(i) [REC. DOC. 10751]**        **Page 4**

against it.  *See CMS Software Design Sys., Inc. v. INFO Designs, Inc.*, 785 F.2d 1246, 1249 (5th Cir. 1986); *Carter v. Morehouse Parish School Bd.*, 441 F.2d 380, 382 (5th Cir. 1971).

HESI respectfully disagrees with Judge Shushan's apparent conclusion that striking Ravi's Rebuttal Report will either (1) prevent the introduction of a "new" theory related to a casing breach, or (2) prevent the presentation at the Phase Two trial of evidence regarding issues presented in Phase One.

BP's argument that Drs. Ravi and Stevick's Phase Two rebuttal reports suggest a "new" theory of casing breach and its affect on cement placement is simply wrong.  During the Phase One trial, HESI's expert, Dr. Beck, testified at length about the flow path and how a breach below the float collar affected the placement and condition of downhole cement and, consequently, the flow path.  Relying on the Sperry RealTime Data and BP's pre-Incident buckling analysis,[5] Dr. Beck testified that BP's operational decisions caused helical buckling of the production casing throughout the entire production interval of the Macondo well.  G. Beck T.T. 7134:18-7150:22 (Exhibit 7); TREX 4515 (Exhibit 8); TREX 604.  Dr. Beck further testified that the stress on the casing produced by the helical buckling, combined with the stress on the casing caused when BP attempted to convert the float collar with brute force, resulted in a breach in the casing just below the float collar.  G. Beck T.T. 7134:18-7150:22 (Exhibit 7).  As a result of this breach, cement likely was not placed as designed.  Specifically, a breach in the shoe track resulted in partial cement coverage of the reservoir sands in the annulus and placed tail cement in only a portion of the shoe track, permitting hydrocarbons from uncovered reservoir

---

[5] BP's pre-Incident buckling analysis predicted helical buckling would be induced if as little as 30,000 pounds of compression (30 kips) were put on the casing. TREX 4515; G. Beck T.T. 7135:1-7137:10.  The Sperry data demonstrated to Dr. Beck that the casing experienced approximately 140,000 pounds of compressional force (140 kips).  TREX 604; G. Beck T.T. 7147:13-7148:11.

**MEMORANDUM IN SUPPORT OF HALLIBURTON ENERGY SERVICES, INC.'S OBJECTIONS TO AND APPEAL FROM MAGISTRATE JUDGE'S ORDER REGARDING BP'S MOTION TO STRIKE HALLIBURTON EXPERTS KRIS RAVI'S PHASE 2 REBUTTAL REPORT AND GLEN STEVICK'S PHASE 2 REBUTTAL REPORT, SECTION II(b)(i) [REC. DOC. 10751]          Page 5**

sands direct access into the breached production casing. G. Beck T.T. 7148:24-7150:22 (Exhibit 7). The likelihood of a casing breach prior to the cement job was clearly established in the Phase One record. It is not, as BP has misrepresented, a new theory or suggestion that HESI has advanced in Phase Two. Therefore, to the extent the Court's Order is based on a conclusion that Dr. Ravi's and Dr. Stevick's Phase Two opinions are informed by a new casing breach theory not reflected in the Phase One record, the Order is erroneous.[6]

BP's argument regarding "new" theories is duplicitous because it is BP, not HESI, that is advancing a "new" theory in Phase Two that is not supported by the Phase One record. BP's Phase Two expert, Dr. Andreas Momber, attempts to resuscitate BP's theory of permeable-cement-caused-by-nitrogen-breakout, distinguishing it as an underlying assumption for his Phase Two cement erosion analysis. Ironically, BP's permeable cement theory is not supported in the Phase One record, and BP failed to call a single expert to support the theory in the Phase One trial.[7] In fact, the only expert BP questioned about the theory was the United States' expert, Glen Benge, who testified that BP's theory is not possible. G. Benge T.T. 2404:8-10; 2470:16-19; 2579:11-2580:3 (Exhibit 9). Because BP did not prove its permeable cement theory during the Phase One trial, it now seeks to use Dr. Momber to back door this theory into the record in Phase

---

[6] BP may be confused about the Phase One trial record. In its July 15th letter to Judge Shushan, BP erroneously asserts that both Dr. Ravi and Dr. Beck were prevented at trial from testifying about a new flow path theory, the focus of which was a casing breach. That misstates the record. As the Court is aware, Dr. Ravi was excluded from testifying only because he was designated as a rebuttal expert to BP's Ron Crook, whom BP decided not to call live at trial. However, Dr. Beck did testify at trial as a HESI expert. While HESI was not permitted to show certain animations at trial concerning the flow path caused by a casing breach, Dr. Beck did testify extensively about how the production casing was buckled and subsequently breached, which affected the placement and condition of the cement that are now critical to understanding downhole restrictions to flow in the Phase Two quantification inquiry.

[7] Indeed, the *only* support in the Phase One trial record for BP's permeable cement theory came on the last day of trial. BP played a short video segment from the deposition of Greg Garrison, who is the head of Oilfield Testing & Consulting (OTC) and who was *not* designated as an expert by BP or any other party. Despite testifying in his deposition that he was neither an expert in foam cement nor in foam cementing operations, he stated in a single answer to a question that hydrocarbon can flow through permeable cement caused by nitrogen breakout. However, as noted *supra*, this notion was squarely refuted live at trial by the United States' cement expert, Glen Benge, who is an expert in foam cementing and foam cementing operations.

Two, but preclude HESI's from challenging it. Dr. Ravi's rebuttal report is necessary to address, among others, this unsupported theory in Dr. Momber's report.

With respect to the more general issue of Phase One evidence being relied upon during Phase Two, the Court has acknowledged that "[t]he parties agree that the condition of the bottom-hole cement in the Macondo well *is relevant* to the determination of flow rates." Rec. doc. 10751 at 2 (emphasis added). Thus, the placement and condition of the bottom-hole cement are cross-over issues that, while addressed in Phase One, are also relevant to the key Phase Two issue of quantification. Judge Shushan's order striking Dr. Ravi has the effect of permitting the United States and BP to rely on cross-over Phase One testimony to support their Phase Two analyses about the location and placement of cement as a restriction to flow, but preventing HESI, the cement contractor, from doing the same. As a result, the United States and BP are permitted to continue to attack HESI's cement design and testing in Phase Two,[8] but HESI cannot rebut the attacks. Coupled with the decision that HESI can no longer question the United States' and BP's quantification experts in Phase Two discovery, HESI is prevented from defending itself. This structure deprives HESI of its right to due process and is contrary to law.

BP's and the United States' Phase Two experts present and rely significantly upon Phase One evidence. For example, the United States continues to rely on its Phase One theory that the cement was not set at the time of the blowout as a predicate for its Phase Two expert opinions on quantification. *See* Benge Rebuttal Report at pp. 5-7. Likewise, BP continues to rely in Phase Two on its Phase One cement theory, which was entirely unsupported by expert testimony at the

---

[8] For example, the United States' Phase Two expert, Glen Benge, continues to opine in Phase Two that the cement was not set at the time of the negative test and reproduces certain third-party cement testing results that were presented during the Phase One trial. Rebuttal Expert Report of Glen Benge, dated June 7, 2013 ("Benge Rebuttal Report"), at pp. 6-7 (Exhibit 10).

**MEMORANDUM IN SUPPORT OF HALLIBURTON ENERGY SERVICES, INC.'S OBJECTIONS TO AND APPEAL FROM MAGISTRATE JUDGE'S ORDER REGARDING BP'S MOTION TO STRIKE HALLIBURTON EXPERTS KRIS RAVI'S PHASE 2 REBUTTAL REPORT AND GLEN STEVICK'S PHASE 2 REBUTTAL REPORT, SECTION II(b)(i) [REC. DOC. 10751]**  Page 7

Phase One trial,[9] that nitrogen somehow migrated backwards from the foam cement into the unfoamed shoe track cement, resulting in shoe track cement that was permeable to hydrocarbon flow. *See* Expert Report of Andreas Momber, dated May 1, 2013 ("Momber Report"), at pp. 6-9 (Exhibit 11).[10]  HESI should be allowed an opportunity to rebut, in Phase Two, the positions taken by the United States and BP regarding cement by relying on the Phase One record in support of its position regarding the role of cement in Phase Two as an obstruction to flow.  That is precisely what Dr. Ravi's rebuttal report does.  Under the current structure of Phase 2 discovery and the quantification portion of trial, however, the Court will allow the United States to argue that the cement was not set and BP to argue that nitrogen breakout damaged the shoe track cement, but HESI can neither demonstrate the effect of a casing breach in the shoe track on quantification nor cross-examine (in Phase Two depositions or at the Phase Two trial) the frailty and unsupported nature of these cementing assumptions and analyses.  As a result, the Court's Order deprives HESI of its due process rights and is contrary to law.

BP's conduct in this regard is particularly egregious.  Dr. Ravi prepared a rebuttal report in Phase One to specifically rebut opinions of BP's cement expert, Ronald Crook.[11]  In an effort to prevent Dr. Ravi from testifying during the Phase One trial, BP made the strategic determination that it would not present Ronald Crook for live testimony.  This left BP with no cement expert during the Phase One trial and no expert testimony in support of its nitrogen

---

[9] In fact, Glen Benge testified at the Phase One trial that BP's theory was not possible.  G. Benge T.T. 2404:8-10; 2470:16-19; 2579:11-2580:3  (Benge saw no data that indicated that nitrogen breakout occurred during the cement job) (Exhibit 9).

[10] Dr. Momber relies on the opinions of Phase One expert Fred Sabins, who did not testify at trial and whose opinions have already been stricken.  *See* Rec. docs. 4838, 5612.  Benge Rebuttal Report (Exhibit 10), filed in response to Dr. Momber's cement opinions, relies almost exclusively on his Phase 1 opinion that the cement was not set at the time of the negative pressure test.

[11] Rebuttal Expert Report of Dr. Kris Ravi (Phase One), dated January 30, 2012 (Exhibit 12).

**MEMORANDUM IN SUPPORT OF HALLIBURTON ENERGY SERVICES, INC.'S OBJECTIONS TO AND APPEAL FROM MAGISTRATE JUDGE'S ORDER REGARDING BP'S MOTION TO STRIKE HALLIBURTON EXPERTS KRIS RAVI'S PHASE 2 REBUTTAL REPORT AND GLEN STEVICK'S PHASE 2 REBUTTAL REPORT, SECTION II(b)(i) [REC. DOC. 10751]            Page 8**

breakout/permeable cement theory.[12] Left with no compelling evidence to support its theory, BP has now, in Phase Two, put forth Dr. Momber in place of its disqualified Phase One cement expert, Fred Sabins, and its unused Phase One cement expert, Ronald Crook, in an apparent end-run around this Court's prior rulings and the consequences of BP's own strategic decisions. To allow BP to elicit expert testimony on its nitrogen breakout theory for the first time during Phase Two, while simultaneously preventing HESI from responding, works an extreme injustice on HESI and denies it due process.

The prejudice that will result from the Order is apparent from the recent deposition of Dr. Momber. Central to Dr. Momber's erosion opinion is his belief that the cement was pre-damaged and therefore contained channels through which hydrocarbon could initially flow. In his report, Dr. Momber stated that those channels were caused by one of three things: cement contaminated by nitrogen breakout;[13] inadequate design of the cement; or inadequate testing of the cement. Momber Report at pp. 6 (Exhibit 11). Yet, under questioning by HESI's counsel, Dr. Momber admitted that, to the extent there were channels in the cement, his list (which was only critical of cement design and testing) was under-inclusive and could have been broader to include other things, unrelated to cement design and testing, that created channeling. (Deposition of Andreas Momber 520:16-522:11) (Exhibit 13). Moreover, Dr. Momber's admission that his list was incomplete came out on day two of his deposition in response to questioning by HESI. Had the current restriction on HESI's participation in Phase Two quantification discovery been in effect

---

[12] BP's initial Phase One cement expert and progenitor of the nitrogen breakout theory, Fred Sabins, was prevented from offering cement opinions in this case because of his own improper conduct. *See* Rec. docs. 4838, 5612.

[13] As discussed, *infra,* there is no expert testimony of nitrogen breakout in the Phase One record.

at the time of Momber's deposition, HESI would not have been able to demonstrate the incompleteness of Momber's list identifying the potential causes of the channels that were key to his erosion analysis. Rather, the Phase Two record would reflect only BP's preferred theory that it failed to support or establish during the Phase One trial. Moreover, Dr. Kris Ravi's rebuttal report responded directly on this point identifying the operational decisions by BP that likely led to channeling, as well as addressing whether BP's resuscitated permeable cement theory is even possible. By striking Dr. Ravi's rebuttal, the Court leaves HESI with no opportunity to defend itself from BP's gratuitous and continued attacks on its cement design, even when they masquerade as "assumptions" in BP's expert's Phase Two quantification report.

## CONCLUSION

The Court's Order striking Ravi's Rebuttal Report is clearly erroneous and contrary to law in that it deprives HESI of its due process rights. Accordingly, HESI respectfully appeals from this order and asks that the Court consider Ravi's Rebuttal Report and permit HESI to offer Dr. Ravi's expert opinions in Phase Two proceedings.

Dated: July 19, 2013

Respectfully Submitted,

**GODWIN LEWIS PC**

**By:** \_\_\_\_/s/ Donald E. Godwin_____
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
Don.Godwin@GodwinLewis.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
Bruce.Bowman@GodwinLewis.com
Jenny L. Martinez
State Bar No. 24013109
Jenny.Martinez@GodwinLewis.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
Floyd.Hartley@GodwinLewis.com
Gavin E. Hill
State Bar No. 00796756
Gavin.Hill@GodwinLewis.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332
and
R. Alan York
State Bar No. 22167500
Alan.York@GodwinLewis.com
Jerry C. von Sternberg
State Bar No. 20618150
Jerry.VonSternberg@GodwinLewis.com
Misty Hataway-Coné
State Bar No. 24032277
Misty.Cone@GodwinLewis.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Halliburton Energy Services, Inc.'s Memorandum In Support Of Its Objections To And Appeal From Magistrate Judge's Order Regarding BP's Motion To Strike Halliburton Experts Kris Ravi's Phase 2 Rebuttal Report and Glen Stevick's Phase 2 Rebuttal Report, Section (II)(b)(i) [REC. DOC. 10751] has been served on all Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this 19th day of July, 2013.

                                               /s/ Donald E. Godwin
                                               Donald E. Godwin