UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * | MDL NO. 2179  SECTION J |
| | * | JUDGE BARBIER |
| **THIS PLEADING APPLIES TO:** No. 12-311 | * * * | MAGISTRATE JUDGE SHUSHAN |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### CAMERON'S MEMORANDUM IN OPPOSITION TO LIU'S MOTION TO COMPEL CAMERON TO PRODUCE A COMPUTATION OF ITS DAMAGES AND ALL DOCUMENTS SUPPORTING ITS DAMAGES CLAIMS

Plaintiff Cameron International Corporation ("Cameron") respectfully submits this memorandum of law in opposition to Liberty's Motion to Compel Cameron to Produce a Computation of its Damages and All Documents Supporting its Damages Claims ("Motion").

### ARGUMENT

Once again, Liberty has filed a premature discovery motion. Indeed, Liberty does not even try to certify that it completed the meet and confer process, as required by Rule 37(a)(1) of the Federal Rules of Civil Procedure.

Had Liberty completed the meet and confer process, it would have learned that most, and maybe all, of the relief it now seeks is unnecessary. Liberty's motion requests two things: (1) a computation of damages; and (2) Cameron's attorney and other litigation-related invoices. No court order is needed, much less warranted, for either.

***Computation of Cameron's Damages.*** Cameron's damages are no mystery here. Cameron has told Liberty it is seeking to recover the full amount due under the insurance policy that Liberty breached in bad faith—$50 million. Cameron also told Liberty that it is seeking to

1132864v1

recover post-settlement defense costs ("MDL Defense Costs"), which are covered under the Liberty policy, as well as the fees and expenses that Cameron is incurring to prosecute this action for Liberty's bad faith breach ("Liberty Litigation Expenses"). Cameron is still incurring both MDL Defense Costs and Liberty Litigation Expenses on an ongoing basis, and it is premature (and impossible) to provide a computation of the amount of such damages that Cameron will seek at trial.

Nevertheless, although not mentioned by Liberty, Cameron has been providing regular updates to Liberty—including a list of the fees incurred and by which law firm or vendor—specifying the amount of its MDL Defense Costs. (*See, e.g.*, July 17, 2013 Cameron Demand Letter to Liberty (annexed hereto as Exhibit A).) Cameron also intends to supplement its interrogatory responses to specify the amount of MDL Defense Costs, as well as the current amount of Liberty Litigation Expenses, incurred through the end of the first quarter of 2013. Nothing more is required.

***Discovery of Cameron's Attorney Invoices.*** If Liberty had not jumped the gun again, it would have learned that Cameron will be producing the non-privileged content from the invoices of its attorneys, experts, consultants, and vendors for costs incurred through the end of the first quarter of 2013—*i.e.*, the amounts billed, hourly rates, names of attorneys, and the hours recorded—within the next week. Cameron's production of those invoices is all that Liberty needs. There can be no question that Cameron has incurred the MDL Defense Costs as part of its ongoing defense in the MDL and the Liberty Litigation Expenses as a direct result of Liberty's breach of its insurance policy.[1]

---

[1] Liberty suggests that it may need to review additional content in litigation counsel's invoices in this case from November 2011 because some of those expenses may have been incurred in connection with negotiations with other insurers. (Liberty's Mem. In Supp. of Mot. at 4 (Rec. doc. 10754-1).) That is not the case. Cameron seeks only to recover as damages the Liberty Litigation Expenses incurred *in this action*

To the extent Liberty seeks the production of individual diary entries from Cameron's invoices, that request is patently improper. Those diary entries provide a blow-by-blow description of exactly what steps Cameron has been taking to prepare its case against Liberty—including attorney-client communications, discussions of the legal issues that litigation counsel has researched, the factual issues that litigation counsel has investigated, case and settlement strategy, etc.

Courts routinely reject discovery requests designed to obtain an adversary's privileged litigation strategy under the guise of seeking information about attorney's fees. *See, e.g., Yoffe v. Keller Indus., Inc.*, 580 F.2d 126, 131 n.12 (5th Cir. 1978) (affirming denial of discovery that "cross[ed] the line between the issue of attorney's fees and the legal theories, defenses, and strategies involved in the [ ] cases," because "[t]he thought processes relevant to pending litigation must be protected from disclosure"); *Dixie Mill Supply Co. v. Continental Cas. Co.*, 168 F.R.D. 554, 559 n.9 (E.D. La. 1996) (denying discovery of attorney invoices where party seeking discovery "is looking for the legal issues researched by [counterparty's] attorneys, which are detailed on the invoices," because when "attorney fee information may reveal confidential communications or protected opinion work product, it need not be disclosed"); *Kansas City S. Ry. Co. v. Nichols Constr. Co.*, 2007 U.S. Dist. Lexis 62928, at *19 (E.D. La. Aug. 27, 2007) (protecting attorney invoices and transmittal letters made in anticipation of litigation); *accord United States v. Keystone Sanitation Co.*, 885 F. Supp. 672, 675 (M.D. Pa. 1994) (denying discovery request that sought "the narrative and identities of attorneys" in attorney billing statements); *Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 144 F.R.D. 600, 607-08

---

commencing in January 2012, after all of Cameron's other insurers agreed to fund the BP-Cameron settlement. Amounts due for that work have been billed separately, and thus the information Cameron will produce will cover only the relevant fees.

3

1132864v1

(D. Mass. 1992) (refusing to permit discovery of attorney's bills to the extent "that time records and statements reveal the nature of the services provided").

Liberty has not provided any legal basis for prying into what are plainly attorney-client communications and counsel's work product. In *Taylor Energy Company v. Underwriters at Lloyd's London*, 2010 WL 3952208 (E.D. La. Oct. 7, 2010), on which Liberty principally relies, the court held only that "information such as contingency fee contracts, hourly rates, hours spent by attorneys working on this litigation, attorney's fees charged and costs incurred" was not privileged and was discoverable. *Id.* at *2. That is exactly what Cameron is going to produce. Similarly inapposite are *Stonehenge/FASA-Texas, JDC, LP v. Miller*, 1998 WL 826880, at *2 (N.D. Tex. Nov. 23, 1998), and *Great American Insurance Co. v. AFS/IBEX Financial Services, Inc.*, 2011 WL 3163605, at *7 (N.D. Tex. July 27, 2011). In *Stonehenge*, the court held simply that attorney invoices and the client checks issued to the attorney must be produced when relevant. In *Great American*, the court held that there must be evidence that attorney's fees were incurred as a result of the insurer's bad faith when the insured proffers those fees as extra-contractual harm under Texas law.

Here, the only reason this lawsuit was filed—and Cameron has incurred the Liberty Litigation Expenses—is because of Liberty's bad faith breach of its insurance policy, a fact that Liberty can explore by asking Cameron's witnesses about why Cameron hired counsel and the scope of services they provided, without invading the privilege.

**CONCLUSION**

Cameron has already produced or will produce a full computation of its damages to date and all supporting invoices. Accordingly, Liberty's motion should be denied.

Dated: July 19, 2013

Respectfully submitted,

 */s/ Phillip A. Wittmann*
Phillip A. Wittmann, 13625
 pwittmann@stonepigman.com
Carmelite M. Bertaut, 3054
 cbertaut@stonepigman.com
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
504-581-3200
504-581-3361 (fax)


WILLKIE FARR & GALLAGHER LLP
Mitchell J. Auslander
Jeffrey B. Korn
787 Seventh Avenue
New York, New York 10019
 (212) 728-8000
mauslander@willkie.com

*Attorneys for Cameron International Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Cameron's Opposition to Liberty's Motion to Compel Cameron to Produce a Computation of its Damages and All Documents Supporting its Damages Claims has been served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 19th day of July, 2013.

/s/ Phillip A. Wittmann

1132864v1