UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| Nos. 10-2179; 10-4536; 10-2771 | * | |
| | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE*
TO EXCLUDE ALL EVIDENCE AND ARGUMENT PRESENTED FOR THE PURPOSE
OF PROVING ANADARKO'S CULPABILITY OR FAULT**

BINGHAM McCUTCHEN LLP

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street
Suite 1300
New Orleans, LA 70112
Telephone (504) 592-0691
Facsimile (504) 592-0696

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................... 1

II.  RELEVANT PROCEDURAL BACKGROUND .................................................... 2

III. ARGUMENT ........................................................................................................... 2

    A.  The Court's Prior Rulings on Anadarko's Lack of Duty, Negligence, or Fault Are Binding on All Parties, Including the Government ................................ 3

    B.  Even If the Government Were Not Bound by the Law of the Case, Its Allegations Are the Same as Those the Court Has Already Rejected .................... 6

    C.  The "Degree of Culpability" Penalty Factor Measures a Person's "Fault" or "Negligence" for a Prohibited Discharge ........................................................... 7

        1.  The ordinary meaning of the word "culpability" is "fault," or a "breach of legal duty" equal to or greater than ordinary negligence ......... 8

        2.  Admiralty courts use the words "culpability," "fault," and "negligence" interchangeably ..................................................................... 9

        3.  Courts and agencies confirm that "degree of culpability" has its ordinary meaning ............................................................................................ 10

        4.  Canons of construction prohibit the extension of "degree of culpability" beyond its ordinary meaning to non-negligent conduct ....... 12

IV.  CONCLUSION ..................................................................................................... 13

## TABLE OF AUTHORITIES

Page

**CASES**

*Ali v. Jeng*,
  86 F.3d 1148, 1996 WL 293181 (4th Cir. 1996) (per curiam) ..................................................5

*Am. River Trans Co. v. Kavo Kaliakra SS*,
  148 F.3d 446 (5th Cir. 1998) ..................................................................................................11

*Asgrow Seed Co. v. Winterboer*,
  513 U.S. 179 (1995).................................................................................................................8

*Braud v. Painter*,
  730 F. Supp. 1 (M.D. La. 1990)..............................................................................................10

*Comm'r of Internal Revenue v. Acker*,
  361 U.S. 87 (1959).................................................................................................................13

*Cont'l Ins. Co. v. Sabine Towing Co.*,
  117 F.2d 694 (5th Cir. 1941) .................................................................................................10

*Duzon v. Stallworth*,
  866 So.2d 837 (La. Ct. App. 2002)..........................................................................................6

*East River S.S. Corp. v. Transamerica Delaval, Inc.*,
  476 U.S. 858 (1986)...............................................................................................................10

*Exxon Shipping Co. v. Baker*,
  554 U.S. 471 (2008)...............................................................................................................13

*Gele v. Wilson*,
  616 F.2d 146 (5th Cir. 1980) .................................................................................................10

*Hatfried, Inc. v. Comm'r of Internal Revenue*,
  162 F.2d 628 (3d Cir. 1947)...................................................................................................13

*In re Integra Realty Res., Inc.*,
  354 F.3d 1246 (10th Cir. 2004) ...............................................................................................5

*In re Omega Protein, Inc.*,
  548 F.3d 361 (5th Cir. 2008) .................................................................................................10

*Inter-Cities Navigation Corp. v. United States*,
  608 F.2d 1079 (5th Cir. 1979) ...............................................................................................11

*Johnson v. Prudential Ins. Co. of Am.*,
  No. H-06-0130, 2008 WL 901526 (S.D. Tex. Mar. 31, 2008) ................................................9

## TABLE OF AUTHORITIES
### (continued)

Page

*Leocal v. Ashcroft*,
   543 U.S. 1 (2004) ...................................................................................................... 14

*McDermott, Inc. v. AmClyde*,
   511 U.S. 202 ............................................................................................................. 10

*McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.*,
   33 F.3d 253 (3d Cir. 1994) .......................................................................................... 9

*Morrow v. Dillard*,
   580 F.2d 1284 (5th Cir. 1978) .......................................................................... 4, 5, 7

*Otal Invs. Ltd. v. M.V. Clary*,
   494 F.3d 40 (2d Cir. 2007) ........................................................................................ 10

*Phoenix Constr. Servs., Inc.*,
   11 E.A.D. 379, 2004 WL 1059751 (EAB 2004) ............................................... 11, 12

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
   507 U.S. 380 (1993) .................................................................................................... 8

*Regan v. Starcraft Marine LLC*,
   No. 06-1257, 2010 WL 4117184 (W.D. La. Oct. 12, 2010) ...................................... 6

*Smith Farm Enters., LLC*,
   CWA Appeal No. 08-02, 2011 WL 946993 (EAB Mar. 16, 2011) ......................... 12

*Tedford v. Benchmark Ins. Co.*,
   45 Fed. App'x 318, 2002 WL 1860276 (5th Cir. 2002) (per curiam) ...................... 9

*True v. United States*,
   894 F.2d 1197 (10th Cir. 1990) ................................................................................ 13

*United States v. Adderly*,
   529 F.2d 1178 (5th Cir. 1976) .................................................................................. 11

*United States v. General Motors Corp.*,
   403 F. Supp. 1151 (D. Conn. 1975) ..................................................................... 8, 11

*United States v. M/V Big Sam*,
   681 F.2d 432 (5th Cir. 1982) .................................................................................... 10

*United States v. Marathon Pipe Line Co.*,
   589 F.2d 1305 (7th Cir. 1978) .................................................................................. 11

*United States v. Plaza Health Labs., Inc.*,
   3 F.3d 643 (2d Cir. 1993) ......................................................................................... 13

## TABLE OF AUTHORITIES
### (continued)

**Page**

*United States v. Tex-Tow, Inc.*,
  589 F.2d 1310 (7th Cir. 1978) ..............................................................................................11

*United States v. Thompson/Ctr. Arms Co.*,
  504 U.S. 505 (1992) ................................................................................................................14

*Werner v. Upjohn Co.*,
  628 F.2d 848 (4th Cir. 1980) ..................................................................................................9

*World Ins. Co. of Omaha, Neb. v. Pipes*,
  255 F.2d 464 (5th Cir. 1958) ................................................................................................13

STATUTES

33 U.S.C. § 1319(c) .......................................................................................................................14

33 U.S.C. § 1321(b)(7) ..................................................................................................................13

**I.     INTRODUCTION**

Before the Phase One trial commenced, the Court ruled that Anadarko Petroleum Corporation and Anadarko E&P Company LP (together, "Anadarko") had no operational control over the *Deepwater Horizon* or the post-spill response efforts, and therefore owed no duty to intercede, did not cause or contribute to the oil spill, were not negligent, and bore no fault for the incident.  Certain parties have refused to stipulate that this ruling applies to Phase Two and/or that they will refrain from attempting to introduce evidence or argument of Anadarko's culpability or fault during the Phase Two trial.  Specifically, while the PSC and the States agreed that the Court's ruling applies to the issue of Source Control, they deferred to the Government regarding Quantification.  In response, the Government stated that it intends to present evidence relevant to Anadarko's culpability, but will not seek findings of fact or conclusions of law at the end of Phase Two that Anadarko was "culpable" and, instead, reserves the right to later argue that evidence presented in Phase Two is admissible in the later Clean Water Act ("CWA") penalty assessment phase as evidence of Anadarko's "degree of culpability."  The Government subsequently declined any stipulation as to Phase Two evidence or argument.

Anadarko presents this Motion *in Limine* to clarify the permissible purpose and scope of the evidence involving Anadarko in the impending Phase Two trial.  While we are aware that the Court has a very full plate with Phase Two, if the Court is so inclined, there are efficiencies to be gained by disposing of this issue with respect to the Government's CWA penalty case as well, inasmuch as the bases for preclusion of "culpability" evidence are the same.[1]

---

[1] The Government and Anadarko have a fundamental disagreement over whether Anadarko's "degree of culpability" for purposes of CWA penalty assessment remains an open question on which evidence may be presented.  Anadarko submits that it does not.

1

## II.     RELEVANT PROCEDURAL BACKGROUND

In their Amended B1 Master Complaint, Plaintiffs asserted that because Anadarko invested in the Macondo drilling operation and had a right to access certain information transmitted by the rig, Anadarko owed a duty to intercede to prevent the blowout and oil spill. Am. B1 Master Complaint, Rec. Doc. 1128, at ¶¶ 281–85; 573–74. Plaintiffs also alleged that Anadarko was liable in connection with the Phase Two post-spill source control efforts. *Id.* at ¶ 486. The Court rejected both theories, holding that "BP was solely responsible for the drilling operations. Any access to information that Anadarko . . . may have had did not give rise to a duty to intercede in an independent contractor's operations . . . ." B1 Order, Rec. Doc. 3830, at 28. All other plaintiffs have been bound by the Court's holding, and all claims against Anadarko based on fault or negligence have been dismissed. Rec. Doc. 4159 at 6 (B3 Plaintiffs); Rec. Doc. 4578 at 25–26 (Louisiana and Alabama); Rec. Doc. 4845 at 6, 11–12 (Local Government Entities and Mexican States).

The B1 holding also was dispositive of all cross-claims against Anadarko for contribution and indemnity. Minute Order, Rec. Doc. 4642, at 3. Anadarko moved to dismiss those cross-claims—including Transocean's cross-claims filed in the Government's case—because the B1 ruling means that as a matter of law Anadarko has "zero percent" comparative fault. Rec. Doc. 2479-1; Rec. Doc. 2924-1; Rec. Doc. 2927-1. Anadarko's motions were granted, including the motion filed in the Government's case. Minute Order, Rec. Doc. 4642, at 3.

## III.    ARGUMENT

It is law of the case that Anadarko had no right of operational control over the *Deepwater Horizon's* operations on the Macondo Prospect or the post-spill efforts, owed no duty to intercede, and therefore was not negligent and bears no fault for the blowout, explosion, and oil spill, and source control shortcomings, if any. B1 Order, Rec. Doc. 3830, at 28. The Court's B1

2

ruling has been dispositive of all parties' attempts to prove that Anadarko was negligent or at fault for the oil spill or source control. These rulings are also dispositive of the Government's assertion that Anadarko has some "degree of culpability" for the spill for purposes of the CWA penalty assessment analysis.

Nonetheless, the Government has repeatedly resisted the notion that the Court's prior rulings apply to its claims in these cases, and time and again has attempted to re-litigate the issue of Anadarko's purported "fault," "negligence," or "culpability" for the oil spill. *See, e.g.*, Hearing Transcript, Case No. 10-MD-2179, at 68:3–7 (E.D. La. Nov. 18, 2011) (excerpts attached as Ex. A hereto) (Government counsel arguing that evidence of Anadarko's knowledge/access to information is relevant to Phase One trial issues); Rec. Doc. 4543 (arguing that Anadarko's contractual dealings with BP are relevant to "culpability"); E-mail from Steven O'Rourke, counsel for the Government, re: Phase Two Trial Planning, dated June 20, 2013 (Ex. B hereto) (stating Government position that the B1 order "is inapplicable to the claims of the United States against Anadarko"). The Court should reject the Government's efforts. The Court's prior rulings apply fully to all issues in Phase Two and to the Government's CWA penalty claim. Anadarko asks that the Court rule once and for all that Anadarko's lack of fault, negligence, duty, or culpability for the oil spill is a decided issue.

### A. The Court's Prior Rulings on Anadarko's Lack of Duty, Negligence, or Fault Are Binding on All Parties, Including the Government.

The "law of the case" doctrine prevents parties from collaterally challenging a court's prior orders in the midst of litigation, and is "'based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter.'" *Morrow v. Dillard*, 580 F.2d 1284, 1290 (5th Cir. 1978) (quoting *United States v. U.S. Smelting Refining & Mining Co.*, 339 U.S. 186, 198 (1950)). The "law of the case" doctrine applies not only to the court's express

3

rulings, but also to the court's "duty" to "follow what has been decided at an earlier stage of the case . . . by necessary implication as well as those decided explicitly." *Id.* (citation and internal quotation marks omitted). A party to a case is generally bound by "all factual findings and rulings made in that case," even if directed at another party. *Ali v. Jeng*, 86 F.3d 1148, 1996 WL 293181, at *2 (4th Cir. 1996) (per curiam) (plaintiff bound by rulings "directed at a co-plaintiff"); *see In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1259 (10th Cir. 2004) ("[W]hen a rule of law has been decided adversely to one or more codefendants, the law of the case doctrine precludes all other codefendants from relitigating the legal issue.") (citation and internal quotation marks omitted).

The Government is a party to, and an active participant in, the multi-district litigation. It cannot complain that it was unaware of the Court's B1 ruling on Anadarko's lack of duty or negligence and its implications, or the many times the Court has applied the B1 ruling to dismiss other parties' claims against Anadarko. Even if the Government could plausibly contend that it is not bound by the B1 ruling, the Court has extended its reasoning to the Government's case.

Transocean filed a cross-claim against Anadarko *in the Government's case*, seeking indemnity and contribution from Anadarko on the Government's OPA and CWA claims. Rec. Doc. 2574. Anadarko moved to dismiss Transocean's cross-claims, arguing that the B1 ruling that Anadarko owed no duty and was not negligent means as a matter of law that Anadarko has no "percentage of fault" for the incident. Rec. Doc. 2924-2 at 2. The Court granted the motion and dismissed Transocean's cross-claims against Anadarko in the Government's case. Rec. Doc. 4642. One consequence of the dismissal is that the Court ruled by necessary implication that Anadarko has no "culpability" in the Government's case, because—as the Government has ably

4

stated—"indemnity apportions between the parties based on their relative level of *culpability*." Rec. Doc. 4840 at 16 (emphasis added).

The Court also granted Anadarko's Motion *in Limine* to exclude all evidence of Anadarko's knowledge of or access to information about operations on the Macondo prospect from the Phase One trial, because Anadarko was not negligent, and no act or omission by Anadarko caused or contributed to the spill. Rec. Doc. 5836; Rec. Doc. 4319-1. The purpose of Phase One was to take evidence on the causes of the *Deepwater Horizon* oil spill, and to allocate fault for the incident among the defendants. Am. Pretrial Order No. 41, Rec. Doc. 4083, at 2. Anadarko argued that because the Court had ruled that Anadarko was not negligent, Anadarko could "not be considered in the allocation of fault," and that "subsequent evidence may not be admitted to establish [Anadarko's] fault." Rec. Doc. 4319-1 at 8, *quoting Regan v. Starcraft Marine LLC*, No. 06-1257, 2010 WL 4117184, at *1 (W.D. La. Oct. 12, 2010) (granting motion *in limine* to exclude evidence of fault of party already found not negligent) (quoting *Bowie v. Young*, 813 So.2d 562, 570 (La. Ct. App. 2002)); *Duzon v. Stallworth*, 866 So.2d 837, 854 (La. Ct. App. 2002).

The Government filed a brief opposing Anadarko's motion and presented the opposition at oral argument. Rec. Doc. 4543 at 5, 8; Hearing Transcript, Case No. 10-MD-2179, at 68:3–7 (E.D. La. Nov. 18, 2011) (Ex. A). The Government invoked the CWA's "degree of culpability" penalty factor, and argued that evidence of Anadarko's knowledge, investment, or access to information was relevant to the Phase One issues of causation and fault. Rec. Doc. 4543 at 5, 8. In particular, the Government argued that "the extent to which Anadarko conducted due diligence prior to partnering with BP . . . may provide evidence regarding its culpability," and

5

that evidence that Anadarko "continued to contribute financially towards operations at the Well with the expectation of profit . . . would be relevant to the culpability factor." *Id.* at 8.

The Court overruled the Government's opposition and granted Anadarko's motion, holding that "[e]vidence of Anadarko's knowledge of or access to information about Macondo Well design and/or operations is irrelevant to any issue in the Phase I trial." Rec. Doc. 5836. Accordingly, it is the law of the case that Anadarko's purported knowledge of or access to information, and its financial investment in the Macondo Well, is not evidence of causation, negligence, or fault for the *Deepwater Horizon* oil spill.

> **B.    Even If the Government Were Not Bound by the Law of the Case, Its Allegations Are the Same as Those the Court Has Already Rejected.**

The "law of the case" doctrine is subject to three exceptions: "(1) where a subsequent trial produces substantially different evidence; (2) where controlling authority has made a contrary decision of the law applicable to such issues; and (3) where the prior decision was clearly erroneous and would work manifest injustice." *Morrow v. Dillard*, 580 F.2d 1284, 1292 (5th Cir. 1978) (citations omitted). None is applicable here. Indeed, the Government's recycled theories that Anadarko's investment in the well and knowledge of and access to certain information about operations are relevant to issues of "fault" or "culpability" are not new or different, and have already been rejected.

Like all other plaintiffs, the Government alleges in its Complaint that Anadarko had a right to approve certain of BP's requests for expenditures, and that Anadarko would have had a right to share in profits from any oil and gas discovered on the leasehold. Complaint, Case No. 2:10-cv-04536, Rec. Doc. 1, at ¶ 35. The Government also alleges, just as the PSC and other Bundle C plaintiffs did, that BP was contractually obligated to provide Anadarko with access to information from the rig, certain reports, and certain forms of "real-time data." *Id.* at ¶ 36.

6

These are precisely the same contentions the Court considered and rejected in the B1 ruling. The Government has no new evidence or allegations that Anadarko exercised "operational control" over the *Deepwater Horizon*, and there has been no intervening change in the law. Therefore, the same result that befell all other plaintiffs' claims that Anadarko was negligent or at fault applies equally to the Government's theories.

### C. The "Degree of Culpability" Penalty Factor Measures a Person's "Fault" or "Negligence" for a Prohibited Discharge.

There is nothing special about the CWA's "degree of culpability" penalty factor that makes the previously excluded evidence of Anadarko's purported access to information and investment in the operation relevant to Phase Two or Phase Three. The Government's apparent (though never fully articulated) position is that the Court can consider evidence of Anadarko's "degree of culpability" for the *Deepwater Horizon* oil spill, even if Anadarko's conduct was not "negligent," and not a contributing factor to the spill. The Government also apparently believes the Court's prior rulings on Anadarko's lack of fault or negligence apply only to general maritime negligence claims, not to its CWA claim, and therefore the Government is free to re-litigate the issue. E-mail from Steven O'Rourke, counsel for the Government, re: Phase Two Trial Planning, dated June 20, 2013 (Ex. B). The Government is wrong on both counts.

The issue turns on the meaning of "degree of culpability" in the CWA. "Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry 'their ordinary, contemporary, common meaning.'" *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) (citation omitted). The CWA does not expressly define the phrase "degree of culpability," so the Court should apply its "ordinary meaning." *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995) (citation omitted). As explained below, the ordinary meaning of "degree of culpability" refers to a measurement of a

7

person's level of negligence or percentage of fault for a harmful discharge. *See, e.g.*, *United States v. General Motors Corp.*, 403 F. Supp. 1151, 1164–65 (D. Conn. 1975) (assessing a $1 nominal penalty because "the defendant was not *negligent* or *at fault* in any way for this discharge of oil. In other words, its *culpability* was zero . . . .") (emphases added). Therefore, only conduct that was negligent, faulty, or in breach of legal duty is relevant to the "degree of culpability" penalty factor.

### 1.    The ordinary meaning of the word "culpability" is "fault," or a "breach of legal duty" equal to or greater than ordinary negligence.

The ordinary definition of "culpability" is "blameworthiness," and "culpable conduct" involves the "breach of a legal duty." BLACK'S LAW DICTIONARY 379 (6th ed. 1990); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 552 (1993) (defining "culpability" as "the quality or state of being culpable; blameworthiness"). Courts therefore hold that "culpable conduct includes conduct that is blameworthy, censurable, careless, at fault, or involves the breach of a legal duty . . . ." *Johnson v. Prudential Ins. Co. of Am.*, No. H-06-0130, 2008 WL 901526, at *8 (S.D. Tex. Mar. 31, 2008); *see also Werner v. Upjohn Co.*, 628 F.2d 848, 856–57 (4th Cir. 1980) (culpable conduct is the "'breach of a legal duty or the commission of a fault . . .'") (quoting BLACK'S LAW DICTIONARY (4th ed. 1968)). Courts also hold that "[i]n a civil context, culpable conduct . . . 'normally involves something more than simple negligence . . . .'" *McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.*, 33 F.3d 253, 256–57 (3d Cir. 1994) (quoting BLACK'S LAW DICTIONARY (6th ed. 1990)). The Fifth Circuit has held that "culpability" may sometimes be used synonymously with "bad faith." *Tedford v. Benchmark Ins. Co.*, 45 Fed. App'x 318, 2002 WL 1860276, at *3 (5th Cir. 2002) (per curiam).

"Culpability" must also be construed in relation to the word "degree," which in this context ordinarily means "the extent, measure, or scope" or "relative intensity" of a thing.

8

MERRIAM WEBSTER ONLINE ENGLISH DICTIONARY (2013), *available at* http://www.merriam-webster.com/dictionary/degree. Thus, the ordinary meaning of the phrase "degree of culpability," as used in the CWA, refers to the extent to which a person has breached a legal duty to prevent a prohibited discharge, or the extent to which a person is to blame or at fault for a prohibited discharge.

### 2. Admiralty courts use the words "culpability," "fault," and "negligence" interchangeably.

Like "culpability," the words "fault" and "negligence" are synonymous with "breach of duty." *Cont'l Ins. Co. v. Sabine Towing Co.*, 117 F.2d 694, 697 (5th Cir. 1941) ("It is the settled rule that fault in legal literature is the equivalent of negligence . . . ."); *Braud v. Painter*, 730 F. Supp. 1, 9 (M.D. La. 1990) ("Fault is a breach of duty owed by one party to another . . . .") (citation and internal quotation marks omitted). Thus, in admiralty cases,[2] "degree of culpability," "degree of fault," and "degree of negligence" are synonymous terms. *See McDermott, Inc. v. AmClyde*, 511 U.S. 202, 207–08; 216–17 (1994) (using "relative fault," "degrees of negligence," and "relative culpability" interchangeably); *In re Omega Protein, Inc.*, 548 F.3d 361, 370 (5th Cir. 2008) (referring to "degrees of fault" as a "calibration of culpability") (citation and internal quotation marks omitted); *Gele v. Wilson*, 616 F.2d 146, 148 (5th Cir. 1980) (same); *Otal Invs. Ltd. v. M.V. Clary*, 494 F.3d 40, 62–63 (2d Cir. 2007) (finding phrase "degree of fault" synonymous with "degree of . . . culpability or blameworthiness" and "depart[ure] from a proper standard of care" in apportionment stage of maritime collision case).

---

[2] The Government has invoked the Court's admiralty jurisdiction under Federal Rule 9(h). Complaint, Case No. 2:10-cv-04536, Rec. Doc. 1, at 1 & ¶ 6. Therefore, federal admiralty law and maritime standards of conduct apply in the absence of an on-point federal statute defining "degree of culpability." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986) ("With admiralty jurisdiction comes the application of substantive admiralty law. Absent a relevant statute, the general maritime law, as developed by the judiciary, applies.") (citations omitted); *see also United States v. M/V Big Sam*, 681 F.2d 432, 439–40 (5th Cir. 1982) (applying general maritime law of negligence to CWA cost recovery action).

Admiralty precedents provide further limitation on the meaning of "culpability," and to the types of conduct that can qualify as "culpable." In the Fifth Circuit, "fault which produces liability must be a contributory and proximate cause of the [injury], and not merely fault in the abstract." *Inter-Cities Navigation Corp. v. United States*, 608 F.2d 1079, 1081 (5th Cir. 1979) (citation and internal quotation marks omitted). In other words, a party cannot be "culpable" or at "fault," unless its conduct proximately contributes to or causes actionable harm. *Am. River Trans Co. v. Kavo Kaliakra SS*, 148 F.3d 446, 450 (5th Cir. 1998) (holding that "[t]o give rise to liability, a culpable act or omission must have been a substantial and material factor in causing the collision") (citation and internal quotation marks omitted).

### 3. Courts and agencies confirm that "degree of culpability" has its ordinary meaning.

Strict liability statutes are distinguished by their imposition of liability without regard to culpability. *United States v. Adderly*, 529 F.2d 1178, 1181 (5th Cir. 1976) (strict liability is not predicated on any "degree of culpability, either knowledge, intent, recklessness or willfulness"). However, in CWA cases, once strict liability is established, courts use the "degree of culpability" penalty factor in the ordinary way to measure a person's degree of "fault" or "negligence" in causing or contributing to the prohibited discharge. *See United States v. Marathon Pipe Line Co.*, 589 F.2d 1305, 1308 (7th Cir. 1978) (equating "degree of culpability" with "degree of fault"); *United States v. Tex-Tow, Inc.*, 589 F.2d 1310, 1313–14 (7th Cir. 1978) (equating "culpability" with "fault"); *United States v. Gen. Motors Corp.*, 403 F. Supp. 1151, 1164–65 (D. Conn. 1975) (using "fault," "negligence," and "degree of culpability" interchangeably).

Furthermore, though not binding on this Court, the Environmental Protection Agency also defines the "degree of culpability" penalty factor in terms of "fault," "blameworthiness," and "negligence" in administrative penalty assessments under the CWA. *See Phoenix Constr.*

10

*Servs., Inc.*, 11 E.A.D. 379, 2004 WL 1059751, at *28 (EAB 2004) ("The culpability statutory factor generally measures the level of the violator's fault or 'blameworthiness' and . . . the violator's willfulness and/or negligence."); *see id.* at *28 n.87 ("'the lack of any culpability may . . . indicate that no penalty action is appropriate'") (quoting EPA General Enforcement Policy # GM-22, *A Framework for Statute-Specific Approaches to Penalty Assessments: Implementing EPA's Policy on Civil Penalties* (Feb. 16, 1984) ("Penalty Framework"), at 18); *see also Smith Farm Enters., LLC*, CWA Appeal No. 08-02, 2011 WL 946993, at *52 (EAB Mar. 16, 2011) ("Notwithstanding the fact that most environmental statutes are strict liability statutes, the EPA recognizes that the violator's level of culpability, or degree of willfulness or negligence is not irrelevant.").[3]

With the proper scope and meaning of the "degree of culpability" penalty factor in mind, it is clear that only conduct the Court has found to be negligent, faulty, or in breach of a legal duty, and that also is a proximate and contributing cause of the discharge, is relevant to the "degree of culpability" analysis. It follows that where a court has found a person strictly liable under the CWA, but not negligent or otherwise at fault for a prohibited discharge, by definition that person has no "degree of culpability" for purposes of penalty assessment. As argued above, this is the case here with Anadarko. The Court has held that Anadarko breached no duty, was not negligent, and bears no fault for the incident. Anadarko therefore cannot be "culpable" for the incident in any measure or degree.

---

[3] On this point, the Government has expressly acknowledged that "'[c]ivil penalties under the Clean Water Act are intended to punish *culpable individuals* and deter future violations . . . .'" Rec. Doc. 4840 at 7 (quoting *Kelly v. EPA*, 203 F.3d 519, 523 (7th Cir. 2000)) (emphasis added). Therefore, according to the Government, penalties are specifically tailored according to individual assessments of the "degree of culpability," because the "degree of culpability" factor is designed to protect "relatively blameless violators from a penalty that is disproportionate to their . . . culpability." *Id.* at 7, 17 (arguing that in assessing CWA penalty the Court "will weigh . . . the culpability of the parties and their degree of fault . . . .").

11

### 4. Canons of construction prohibit the extension of "degree of culpability" beyond its ordinary meaning to non-negligent conduct.

To the extent there is any doubt about the ordinary meaning of "degree of culpability," the anti-penalty canon directs that any ambiguity be construed against the Government. Section 311(b)(7) of the CWA, 33 U.S.C. § 1321(b)(7), is titled "Civil penalty action," and courts have recognized that Section 311 is penal in nature. *See True v. United States*, 894 F.2d 1197, 1204–06 (10th Cir. 1990); *see also Exxon Shipping Co. v. Baker*, 554 U.S. 471, 488 (2008) (citing 33 U.S.C. § 1321 as the portion of the CWA addressing "penalties for water pollution").

"Penalties in civil actions are not favored by the courts, and should not be imposed except in cases that are clear and free from doubt." *World Ins. Co. of Omaha, Neb. v. Pipes*, 255 F.2d 464, 472 (5th Cir. 1958) (citation and internal quotation marks omitted); *see Comm'r of Internal Revenue v. Acker*, 361 U.S. 87, 91 (1959) ("[O]ne is not to be subject to a penalty unless the words of the statute plainly impose it.") (citation and internal quotation marks omitted). The anti-penalty canon of construction is a corollary to the maxim, for "it is well-settled that in the application of penalties 'all questions in doubt must be resolved in favor of those from whom the penalty is sought.'" *Hatfried, Inc. v. Comm'r of Internal Revenue*, 162 F.2d 628, 633 (3d Cir. 1947) (citation omitted); *see also* 70 C.J.S. Penalties § 4 ("Statutory provisions for penalties must be strictly construed, and may not be extended by construction to acts that are not within the intention of the legislature to penalize.").

The rule of lenity also requires that any "ambiguities in the statute be resolved in the defendant's favor," and courts "cannot add to the statute what Congress did not provide." *United States v. Plaza Health Labs., Inc.*, 3 F.3d 643, 649 (2d Cir. 1993) (holding that rule of lenity applies to CWA prosecution for illegal discharge, and that term "point source" cannot be construed to include a human being where not expressly provided). Because the CWA penalty

12

provisions at issue can be enforced both civilly and criminally, *see* 33 U.S.C. § 1319(c), the rule of lenity applies. *See United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517–18 & n.10 (1992) (plurality opinion); *see also Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004).

The anti-penalty canon and the rule of lenity are further support for Anadarko's interpretation of "degree of culpability" as a measure of fault, negligence, or breach of duty. Even assuming that the language of the CWA was unclear or ambiguous in some way, those interpretive rules preclude the Court from endorsing any extension of "culpability" to include conduct the Court already held was not negligent, faulty, or in breach of a legal duty.

## IV.   CONCLUSION

For all of the foregoing reasons, Anadarko respectfully requests that the Court grant its Motion *in Limine* to exclude all evidence or argument presented for the purpose of proving Anadarko's "culpability" from Phases Two and Three, and any other Phase of the trial as may be ordered, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

DATED: July 22, 2013              BINGHAM McCUTCHEN LLP

/s/ *James J. Dragna*
James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore

13

michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001


KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
Kuchler Polk Schell Weiner & Richeson, LLC
1615 Poydras Street, Suite 1300
New Orleans, LA 70112
Telephone (504) 592-0691
Facsimile (504) 592-0696

14

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on July 22, 2013.

                                                                           /s/ *James J. Dragna*
                                                                               James J. Dragna