IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * * * * * | MDL NO. 2179 <br><br> SECTION J <br><br><br> Honorable CARL J. BARBIER <br><br> Magistrate Judge SHUSHAN |
| This document relates to No. 2:13-cv-1557. | * * * | |

## MEMORANDUM IN SUPPORT OF BP'S MOTION FOR INJUNCTION AGAINST TRIBAL-COURT PROCEEDINGS

Of Counsel:

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
richard.godfrey@kirkland.com
andrew.langan@kirkland.com

Jeffrey Bossert Clark
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
jeffrey.clark@kirkland.com
dominic.draye@kirkland.com

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
K. Todd Wallace (Bar #25920)
Devin C. Reid (Bar #32645)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 556-4128
Facsimile: (504) 556-4108
dkhaycraft@liskow.com
rkjarrett@liskow.com
ktwallace@liskow.com
dcreid@liskow.com

*Attorneys for BP Exploration & Production Inc.*

## INTRODUCTION

The Oil Pollution Act of 1990 ("OPA") states that, except in two circumstances *not applicable* to the current case, "the United States district courts shall have *exclusive* original jurisdiction over all controversies arising under this Act."  33 U.S.C. § 2717(b) (emphasis added).  OPA makes special accommodation for the concurrent jurisdiction of state courts, but it does not allow for tribal courts to adjudicate claims arising under its provisions.  Indeed, unlike state courts, tribal courts do not enjoy a general presumption of concurrent jurisdiction.  *See Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36 (1989).

On April 19, 2013, Plaintiff Tunica Biloxi Gaming Authority, *d/b/a* Paragon Casino Resort (the "Tribe") filed its Complaint in the current case and an almost identical "Petition for Damages Under the Oil Pollution Act, 33 U.S.C. § 2701 *et seq.*" in the Tunica-Biloxi Tribal Court.  While Defendant BP Exploration & Production, Inc. ("BP") agrees that this Court has jurisdiction over the current case, as provided in OPA, it strenuously disputes that the tribal court has concurrent jurisdiction.  BP has thus entered a Special Appearance in the latter court for the limited and sole purpose of challenging the tribal court's jurisdiction.  *See* Ex. A.

BP brings this specific Motion to request that the Tribe be enjoined from pursuing its parallel action in tribal court.  This procedure is precisely the mechanism that the Supreme Court established when it held that a particular federal regulatory statute did not authorize tribal-court jurisdiction and excused the defendant from complying with the so-called "tribal exhaustion" doctrine.  *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473 (1999).  The *El Paso* decision, which considered a lawsuit under the Price-Anderson Act (itself an energy-development related statute like OPA and the Outer Continental Shelf Lands Act), provides a straightforward and ready analogy to the Tribe's suit under OPA.  OPA's jurisdictional provision exempts BP from exhausting any jurisdictional challenges within the tribal system, as there can be no doubt that

the tribal courts lack jurisdiction over OPA claims. A trip through the tribal court system would thus be wasteful and futile. The Court can issue an order to the Tribe — over which it undoubtedly possesses jurisdiction because the Tribe has submitted itself to this Court's jurisdiction by filing an action here — to cease pursuit of its tribal court OPA action against BP because OPA's plain text precludes any such tribal suit.

## ARGUMENT

**I.     This Court Has Exclusive Jurisdiction Over The Tribe's Claims Under OPA.**

The Tribe has asserted claims brought solely under the Oil Pollution Act. That statute confers original jurisdiction on the federal district courts. Moreover, the jurisdiction so conferred is said by Congress in the OPA statute to be "exclusive." Therefore, under the terms of the very statute that the tribal Plaintiff itself has made not just the centerpiece but the entirety of its Complaint, only this Court (as between tribal Court and this Court) can hear the lawsuit.

With unmistakable clarity, OPA provides in relevant part as follows: "Except as provided in subsections (a) and (c) of this section, the United States district courts shall have exclusive original jurisdiction over all controversies arising under this Act, without regard to the citizenship of the parties or the amount in controversy." 33 U.S.C. § 2717(b). In other words, putting aside those two exceptions, original jurisdiction over OPA claims exists only in federal district court.

The two exceptions are similarly plain and do not help the Tribe or give it any opening whatsoever to exercise tribal court jurisdiction. *First*, Section 2717(a) provides that original jurisdiction for review of OPA regulations can occur only in the Court of Appeals for the District of Columbia Circuit. Vesting judicial review of regulations in a Court of Appeals and in the D.C. Circuit specifically is a common practice by Congress in the environmental law area. *See, e.g.,* Clean Air Act Section 307(b), 42 U.S.C. § 7607(b) (vesting judicial review jurisdiction

2

concerning the Environmental Protection Agency's Clean Air Act rulemakings of nationwide significance in the D.C. Circuit alone). The Section 2717(a) exception does nothing for the Tribe because it is not seeking review of the validity of OPA regulations; instead, the Tribe is seeking to pursue a private right of action created by OPA against BP. *Second*, Section 2717(c) provides that "[a] State trial court of competent jurisdiction over claims for removal costs or damages, as defined under this Act, may consider claims under this Act or State law …." In conjunction with Section 2717(b), OPA Section 2717(c) thus provides original jurisdiction concerning the pursuit of OPA damages or removal-costs actions in federal district court or in state court. But this exception to OPA's otherwise "exclusive" original jurisdiction in federal district courts also does not help the Tribe because tribal court is obviously not a "State trial court of competent jurisdiction."[1]

The key point is that whatever role OPA recognizes for state courts, it makes no provision for tribal court jurisdiction. Indeed, as Judge Clement noted, the allowance for state-court jurisdiction "is an express exception to exclusive original federal jurisdiction over certain OPA claims." *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 863 (E.D. La. 2001). Absent such an explicit textual exception for tribal courts, exclusive federal jurisdiction applies and thus bars tribal jurisdiction.

---

[1] It might seem odd, at first glance, that OPA would speak about "exclusive" federal court jurisdiction and yet allow state courts to exercise concurrent original jurisdiction. But this is not odd when considered against the legal backdrop of the presumption of concurrent federal and state court jurisdiction. *See generally Gulf Offshore Co. v. Mobil Oil Co.*, 453 U.S. 473 (1981) (reading OCSLA to establish concurrent federal and state court jurisdiction). To overcome that presumption, Congress needs to specify that state courts will not have jurisdiction. Here, Congress chose to make the existence of concurrent jurisdiction unavoidably clear. Moreover, since OPA provides for original federal court jurisdiction, removal is available as a matter of course under 28 U.S.C. § 1441, both because of OPA's own force and effect and because OPA questions are federal questions that create original federal jurisdiction under 28 U.S.C. § 1331 as well. *See, e.g., Tanguis* 153 F. Supp. 2d at 867. Thus, at either the plaintiff's or the defendant's election, any claim under OPA can ultimately proceed in federal district court. State trial courts will, in practice, entertain OPA claims only if **both** plaintiffs and defendants in a particular suit desire use of a state court forum such that a defendant chooses not to exercise its removal rights.

Importantly, unlike state courts, tribal courts do *not* enjoy a presumption of concurrent jurisdiction with the federal courts. This difference makes perfect sense in light of the fact that tribal courts are not courts of general jurisdiction. *See Phillip Morris U.S.A., Inc. v. King Mountain Tobacco Co.*, 569 F.3d 932, 937-38 (9th Cir. 2009) ("Tribal courts are not, however, courts of general jurisdiction, and a mere failure to affirmatively preclude tribal jurisdiction in a statute does not amount to a congressional expansion of tribal jurisdiction.") (citing *Nevada v. Hicks*, 533 U.S. 353, 367 (2001)); *cf. Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36 (1989) (a case where Congress's *explicit creation* — in a specialized federal statute known as the Indian Child Welfare Act — of concurrent state-court and tribal-court jurisdiction shows that to create such an unusual brand of concurrent jurisdiction involving tribal courts, Congress has to take specific steps to do so). Concurrent and federal and state court jurisdiction is presumptive and must be disclaimed by Congress or new federal causes of action can be brought initially in either court system — federal or state. But there is no similar presumption of tribal court jurisdiction and, in any event, OPA is clear in conferring jurisdiction only on federal and state trial courts (and the D.C. Circuit as to OPA regulations) and none other. *See* 33 U.S.C. § 2717(a)-(c). The starting and stopping point of analysis here is that Congress took no steps in OPA to create concurrent tribal court litigation. Hence, the plain text of OPA controls and tribal court jurisdiction simply does not exist as to OPA causes of action.

In sum, tribal courts are courts of limited jurisdiction. OPA vests jurisdiction exclusively in the federal and state courts. No other authority, inside or outside of OPA, permits the maintenance of OPA causes of action in tribal court. Therefore, to avoid unnecessary, futile, and wasteful tribal litigation, this Court should enjoin the Tribe from prosecuting its purported separate action in the Tunica Biloxi Tribal Court.

## II. Injunctive Relief Is Appropriate Because OPA's Clear Jurisdictional Provisions, as Well as the Structure and Congressional Purposes of OPA, Excuse BP from Complying with the Tribal Exhaustion Doctrine.

A statutory provision requiring suit in federal court overrides the court-made "tribal exhaustion doctrine," which (when it applies) obliges a defendant to present jurisdictional arguments first in the tribal court before turning to the courts of the United States to vindicate such federal-law interests. Applying this rule, the Supreme Court and courts within the Fifth Circuit have granted injunctive relief to prevent unnecessary litigation in the tribal courts. For the reasons explained above, OPA dispels any potential for disagreement over whether this case can proceed in tribal court. This Court should therefore spare BP the cost and delay of such inappropriate litigation Congress did not envision in a tribal forum acting in an *ultra vires* capacity.

In many circumstances, a defendant wishing to challenge the tribal courts' jurisdiction must make those arguments first in the tribal court. See *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856-57 (1985). As *National Farmers* explained, the prudential "tribal exhaustion doctrine" rests on the Court's observation that "Congress is committed to a policy of supporting tribal self-government and self-determination." *Id.* at 856. But the Court has also created exceptions to this rule, again based on its examination of congressional intent. Relevant here is the exception in instances where "Congress . . . expressed an unmistakable preference for a federal forum." *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 484 (1999). Like OPA, the statute at issue in *El Paso* (the Price-Anderson Act) provided for original federal jurisdiction (specifically, over cases "arising out of or resulting from a nuclear incident") and permitted removal of such actions to federal court upon the filing of a motion, at the defendant's option, in state court. *Id.* at 484-85. The Court concluded that these provisions "express congressional preference for a federal forum." *Id.* at 485 n.7. It also found support for

5

this conclusion in the legislative history of the Price-Anderson Act. That history established that "efficient disposition" of claims was a key congressional objective, which the Court noted "would of course be curtailed by an exhaustion requirement [running first through tribal courts]." *Id.* at 487.

The provisions and purposes of OPA mirror or exceed those the Supreme Court considered in *El Paso*. **First**, both statutes provide original jurisdiction. *Compare* 42 U.S.C. § 2210(n)(2) ("the United States district court in the district where the nuclear incident takes place . . . shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy") *with* 33 U.S.C. § 2717(b) ("the United States district courts shall have exclusive original jurisdiction over all controversies arising under this Act."). If anything, OPA expresses a clearer "preference for a federal forum" by stating that federal jurisdiction is "exclusive." The Price-Anderson Act lacks any language of jurisdictional exclusivity, though the statutes are otherwise consistent.

Even OPA's allowance for concurrent state-court jurisdiction supports the conclusion that Congress did not intend for tribal courts to have jurisdiction over OPA cases. The provision establishing federal jurisdiction begins with the clause "[e]xcept as provided in subsections (a) and (c) of this section . . . ." 33 U.S.C. § 2717(b). Applying the cannon *expressio unius est exclusio alterius* (the expression of one alternative implies the exclusion of all others), OPA does not permit jurisdiction in tribal court. *See, e.g., In re Condor Ins. Ltd.*, 601 F.3d 319, 324 (5th Cir. 2010) (noting the canon's force). OPA's language creating federal jurisdiction is facially stronger than the language in the Price-Anderson Act, and even considering the allowance for state-court jurisdiction, it is clear that state-court jurisdiction is one of the only two exceptions to

6

exclusive federal jurisdiction the statute contemplates. Critically, tribal court jurisdiction falls into neither such exception.

*Second*, the *El Paso* Court emphasized that a defendant could ***remove*** a case under the Price-Anderson Act. *See* 42 U.S.C. § 2210(n)(2) ("Upon motion of the defendant . . . any such action pending in any State court . . . shall be removed or transferred to the United States district court having venue under this subsection"). A defendant's option to remove — or not remove — a case under Price-Anderson parallels a defendant's ability to control the forum that resolves OPA claims. Although OPA does not contain an internal removal provision, the relationship between federal and state courts concerning OPA private rights of action is no different than the system prevailing in Price-Anderson Act cases. Given (i) the general removal statute, 28 U.S.C. § 1441(a), (ii) the federal question statute, 28 U.S.C. § 1331, and (iii) the "very broad" jurisdictional grant in the Outer Continental Shelf lands Act ("OCSLA"), 43 U.S.C. § 1349(b)(1), OPA defendants have numerous statutes (not just one, as in *El Paso*) under which removal can be made on a straightforward basis. *See Tanguis v. M/V Westchester*, 153 F. Supp. 2d at 863; *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996) (noting that OCSLA's jurisdictional provision is "very broad"). Given the applicability of the general removal statute, the unavoidable presence of questions of federal law in the resolution of any OPA claim, and a specialty statute related to Outer Continental Shelf oil spills, OPA had no need of a redundant third provision authorizing removal and unnecessarily restated inside OPA itself. Under both OPA and Price-Anderson, state courts have concurrent jurisdiction, which defendants can easily avoid in favor of federal removal jurisdiction. As the Supreme Court held in *El Paso*, the ease with which removal from state court can be effectuated is significant evidence of the congressional preference for a federal forum.

7

Indeed, the factual setting for the specific spill here only reinforces these general legal conclusions even further.  In this case, the *Deepwater Horizon* Incident occurred on a federal enclave, which inherently carries with it resolution in a federal forum if a defendant so desires. *See Offshore Logistics v. Tallentire*, 477 U.S. 207, 217 (1986) ("The intent behind OCSLA was to treat the artificial structures covered by the Act as upland islands or as federal enclaves within a landlocked State …."); *Mater v. Holley*, 200 F.2d 123, 124-25 (5th Cir. 1953) ("It would be incongruous to hold that although the United States has exclusive sovereignty in the area here involved, its courts are without power to adjudicate controversies arising there, but must relegate the parties to the courts of another sovereign for relief.").  Indeed, *Mater* went farther and also noted that this "[e]xisting federal jurisdiction is not affected by concurrent jurisdiction in state courts." *Id.* at 125.

***Third***, like the Price-Anderson Act, OPA aims to facilitate the efficient adjudication of claims.  The *El Paso* Court noted that the Price-Anderson came into existence following the Three Mile Island accident and the uncoordinated and wasteful litigation that had ensued.  526 U.S. at 486.  The Court noted that "the Act's insistence on efficient disposition of public liability claims . . . would of course be curtailed by an exhaustion requirement." *Id.* at 487.  As under the Price-Anderson Act, courts have long recognized OPA's objective of facilitating expeditious resolution of litigation and its avoidance wherever possible. *See Rice v. Harkin Exploration Co.*, 250 F.3d 264, 266 (5th Cir. 2001) ("OPA was enacted . . . to streamline federal law so as to provide quick and efficient cleanup of oil spills [and] compensate victims of such spills"); *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 238-39 (11th Cir. 1995) (reviewing OPA's legislative history and concluding that among OPA's purposes was a "congressional desire to encourage settlement and avoid litigation"); *Turner v. Murphy Oil USA, Inc.*, 2007 WL

8

4208986, at *2 (E.D. La. 2007) ("The purpose of the OPA notice requirement is to promote settlement and avoid litigation."). Just as an exhaustion requirement "would of course" defeat the Price-Anderson Act's goal of efficient resolution, it would have the same deleterious effect on the adjudication of OPA claims. Because the tribal exhaustion doctrine is itself an instrument created **by judges** (*i.e.*, it is important to recognize that it is not a creature of the Constitution or of statute), it cannot apply where doing so would thwart the plainly expressed intent of Congress in OPA's text and legislative history, and it especially cannot be permitted to operate where its ill-fitting nature is confirmed by related federal statutes that work hand-in-glove with OPA itself.

The Supreme Court in *El Paso* also provided guidance on how, as a procedural matter, a defendant should challenge tribal court jurisdiction when tribal exhaustion doctrine is said to be applicable by a plaintiff. There, the defendants filed suit in the District of Arizona seeking to enjoin the plaintiffs from proceeding in the courts of the Navajo Nation. *El Paso*, 526 U.S. at 477-78. Other courts have followed this example. *See, e.g., Kerr-McGee Corp. v. Farley*, 88 F. Supp. 2d 1219 (D.N.M. 2000). In the current case, seeking an injunction against the Tribe is especially clear-cut because the Tribe has already filed an OPA complaint against BP in this Court. See *Tunica-Biloxi Gaming Auth. v. BP Exploration & Prod. Inc.*, No. 2:13-cv-1557. In other words, the Tribe has already submitted itself to this Court's jurisdiction (waiving any ostensible claim to sovereign immunity). Thus, the permissibility of BP seeking an injunction in the same court is consistent with both *El Paso* and the Tribe's own litigation strategy. For completeness sake, BP has also entered a special appearance in the Tunica-Biloxi Tribal Court for the sole and limited purpose of contesting that court's jurisdiction. The vehicle of a special appearance, authorized in the tribal court's Code of Civil Procedure, leaves BP free to pursue

appropriate relief in all courts, including this Court, without waiving BP's objections to any purported exercise of tribal jurisdiction.

OPA includes textual, structural, and legislative-history indications — **all three** — that Congress intended claims under OPA private rights of action (like those asserted as the only ground for relief by the Tribe here) to proceed in federal court alone whenever a defendant desires that outcome. Consistent with congressional intent, this Court should follow *El Paso* and excuse compliance with the judge-made tribal exhaustion doctrine, even if the Tribe tries to invoke such a defense. The mechanism approved by the Supreme Court to achieve this goal in *El Paso* is an injunction against further proceedings in tribal court. Such an injunction should be issued if the Tribe will not voluntarily stand down and drop its parallel tribal court action in favor of the parallel action it filed in this Court. Congress never intended tribal courts to entertain OPA claims. Tribal courts are simply not a proper forum for that purpose.

## CONCLUSION

The Tribe does not contest this Court's jurisdiction. To the contrary, it has affirmatively recognized on its own that this Court is empowered to resolve its claims under the Oil Pollution Act. Nevertheless, that recognition is only half the story. The text of OPA also makes clear that the Tribe *must* proceed in federal or state court. Suing in tribal court was never a jurisdictional option. Even a state-court action filed by the Tribe would be immediately removable under the general removal statute on the basis of original jurisdiction under OPA, the federal question statute, OCSLA, and the inherent nature of federal enclaves (*Mater v. Holley*). Especially with such plain and multiple-reinforcing congressional preferences for a federal forum coupled with OPA's unmistakable statutory purpose of facilitating speedy resolution of claims, the tribal exhaustion doctrine clearly does not apply. This Court should therefore enjoin the Tribe from proceeding in the Tunica-Biloxi Tribal Court.

July 23, 2013                                                        Respectfully submitted,

                                                             /s/ Don K. Haycraft

|  |  |
|---|---|
| Of Counsel: | Don K. Haycraft (Bar #14361)<br>R. Keith Jarrett (Bar #16984)<br>K. Todd Wallace (Bar #25920) |
| Richard C. Godfrey, P.C.<br>J. Andrew Langan, P.C.<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, IL 60654<br>Telephone: (312) 862-2000<br>Facsimile: (312) 862-2200<br>richard.godfrey@kirkland.com<br>andrew.langan@kirkland.com | Devin C. Reid (Bar #32645)<br>LISKOW & LEWIS<br>701 Poydras Street, Suite 5000<br>New Orleans, LA 70139<br>Telephone: (504) 556-4128<br>Facsimile: (504) 556-4108<br>dkhaycraft@liskow.com<br>rkjarrett@liskow.com<br>ktwallace@liskow.com<br>dcreid@liskow.com |
| Jeffrey Bossert Clark<br>Dominic E. Draye<br>KIRKLAND & ELLIS LLP<br>655 Fifteenth Street, N.W.<br>Washington, DC 20005<br>Telephone: (202) 879-5000<br>Facsimile: (202) 879-5200<br>jeffrey.clark@kirkland.com<br>dominic.draye@kirkland.com | ***Attorneys for BP Exploration & Production Inc.*** |

12

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 23rd day of July, 2013.

                                                      /s/  Don K. Haycraft__