## TUNICA BILOXI TRIBAL COURT

| | | |
|---|---|---|
| TUNICA BILOXI GAMING AUTHORITY d/b/a PARAGON CASINO RESORT, a subordinate unincorporated instrumentality of the TUNICA BILOXI TRIBE OF LOUISIANA | * * * * * * | Tribal Court<br><br>Docket Number: 2013-007<br><br>Tunica Biloxi Nation: |
| versus | * * | |
| BP EXPLORATION & PRODUCTION, INC. | * * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANT'S SPECIAL APPEARANCE
### AND ANSWER SUBJECT THERETO

NOW INTO COURT, through undersigned counsel, comes Defendant, BP Exploration & Production, Inc. ("BP") — appearing only specially — and respectfully responds to the Petition for Damages filed by Plaintiff, upon information and belief, as follows:

### DEFENDANT'S SPECIAL APPEARANCE

#### A. INTRODUCTION

1.     Plaintiff is the Tunica Biloxi Gaming Authority, d/b/a Paragon Casino Resort, an unincorporated subsidiary of the Tunica Biloxi Tribe of Louisiana ("Tribe"). BP has been named as defendant in this suit. Plaintiff alleges causes of action arising under the Oil Pollution Act, 33 U.S.C. § 2701, *et seq.* ("OPA"), as to injuries it allegedly sustained in connection with the *Deepwater Horizon* Incident.

#### B. FACTS

2.     BP is not a member of the Tribe.

3.     BP has not entered into any contracts with the Tribe, nor has it purposefully directed any activities at the Tribe or onto the Tribe's territory.

4.     Plaintiff's Petition only asserts claims under OPA.  In fact, the Petition is titled "Petition for Damages Under the Oil Pollution Act, 33 U.S.C. § 2701 *et seq*."  True to its title, the Petition contains no claims other than those under OPA.

5.     At the time this suit was filed, Plaintiff also filed a substantially similar suit in the Eastern District of Louisiana asking for damages under OPA.  *Tunica Biloxi Gaming Authority v. BP Exploration & Production Inc.*, No. 2:13-cv-1557 (E.D. La. filed Apr. 19, 2013).  That case is now part of the multidistrict litigation relating to the loss of well control at Macondo, the sinking of the *Deepwater Horizon* rig, and the ensuing oil spill.  *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, No. 2:10-md-2179 (E.D. La.) ("MDL 2179").  The Tribe's claims in MDL 2179 will continue even if this Court dismisses the Petition, as it should, for lack of both subject matter and personal jurisdiction.

6.     Article 9, Section 2 of the Tribe's Code of Civil Procedure allows a party to enter a special appearance and notes that this is "the method of proceeding by which the defendant seeks to test the sufficiency of the service or the jurisdiction of the Court.  A special appearance does not confer jurisdiction upon the Court except for the purpose of determining sufficiency of the service or jurisdiction . . . ."

## C. ARGUMENT AND AUTHORITIES

7.     Tribal courts do not have jurisdiction over claims brought pursuant to OPA.

8.     The OPA provides that "the United States district courts shall have *exclusive* original jurisdiction over all controversies arising under this Act, without regard to the citizenship of the parties or the amount in controversy."  33 U.S.C. § 2717(b) (emphasis added).  In circumstances not applicable to the current case, OPA also recognizes that state courts might exercise jurisdiction over OPA claims, 33 U.S.C. § 2717(c), (consistent with the ordinary presumption of

concurrent jurisdiction over federal causes of action in both federal and state courts), but OPA *does not* provide for tribal court jurisdiction of the causes of action that statute creates under any circumstances. Even OPA claims brought in state court are immediately removable to federal court, especially as to spills on the Outer Continental Shelf Lands Act ("OCSLA"), since a thicket of federal statutes controls in this area, all of which cross-reference one another: OPA, OCSLA, the Clean Water Act, and the Coastal Zone Management Act. Thus, OPA, by its plain language, contemplates that any causes of action will be brought in federal court or in a state court from which removal to federal court is an option. OPA's structural interconnectedness with other interrelated federal statutes only strengthens this conclusion.

9.      As this Court and the Tribe are no doubt aware, there is no general presumption of concurrent federal court and tribal court jurisdiction. Tribal courts are not courts of general jurisdiction. *See Phillip Morris U.S.A., Inc. v. King Mountain Tobacco Co.*, 569 F.3d 932, 937-38 (9th Cir. 2009) ("Tribal courts are not, however, courts of general jurisdiction, and a mere failure to affirmatively preclude tribal jurisdiction in a statute does not amount to a congressional expansion of tribal jurisdiction.") (citing *Nevada v. Hicks*, 533 U.S. 353, 367 (2001)); *cf. Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36 (1989) (involving an example of a specialized federal statute, the Indian Child Welfare Act, affirmatively creating concurrent state court jurisdiction and tribal court jurisdiction—an exception that proves the rule). The text of OPA and its failure here to be supplemented by any presumption of concurrent jurisdiction means that OPA jurisdiction rests exclusively in the federal and state courts and goes no farther. Nothing permits the maintenance of OPA causes of action in tribal court.

10.     Additionally, the tribal court lacks jurisdiction because BP is not a member of the Tribe and none of the challenged actions occurred on tribal lands. Nor did any oil from the spill reach tribal lands. The Tribe's lands do not even border the waters of the Gulf.

11.     The Supreme Court has noted the "general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." *Montana v. United States*, 450 U.S. 544, 565 (1981). Courts within the Fifth Circuit have described this "general proposition" as a "presumption against tribal civil jurisdiction over non-Indians." *Dolgencorp Inc. v. Miss. Band of Choctaw Indians*, 846 F. Supp. 2d 646, 649 (S.D. Miss. 2011). The *Montana* presumption against tribal courts' jurisdiction over nonmembers has two exceptions, but both are confined to "civil jurisdiction over non-Indians on . . . reservations," 450 U.S. at 565, and as such, do not apply to the current case. *First*, tribes may regulate "the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealings, leases, or other arrangements." *Id.* at 565. *Second*, a tribe retains jurisdiction over nonmembers "within its reservation" when their conduct affects "the political integrity, the economic security, or the health or welfare of the tribe." *Id.* at 566.

12.     The Petition lacks any facts suggesting that BP has consented to tribal jurisdiction through contractual or other relationships or has threatened the Tribe's continued autonomy through alleged tortious actions on the Tribe's reservation.

13.     Furthermore, the Tunica Biloxi reservation is located in Marksville, Louisiana, in Avoyelles Parish and is land-locked. *See Phillip Morris*, 569 F.3d at 938 ("Finally, tribal jurisdiction is, of course, cabined by geography: The jurisdiction of tribal courts does not extend beyond tribal boundaries." (citing *Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 658 n.12 (2001)). Basic geography thus prevents the Tribe from asserting jurisdiction over an oil spill that

began in the federal waters of the Gulf of Mexico and, in fact, never came in contact with the Tribe's territory.  Indeed, the *Deepwater Horizon* incident occurred on the Outer Continental Shelf, an area of exclusive federal authority controlled in the nature of a federal enclave.  *See* 43 U.S.C. 1333(a)(1); *Offshore Logistics, Inc. v. Tallentire*,  477 U.S. 207, 217 (1986) ("The intent behind OCSLA was to treat the artificial structures covered by the Act as upland islands or as federal enclaves within a landlocked State . . . .").

14.     The spill did not directly affect the Tribe's territory and BP never purposefully availed itself of tribal territory or governmental forums.  Therefore, the tribal court cannot exercise personal jurisdiction over BP.

### D. PRAYER

15.     For these reasons, BP asks the Court to sustain BP's special appearance and enter a final judgment dismissing all of Plaintiff's causes of action against BP for lack of jurisdiction, leaving the Tribe to pursue its remedies in MDL 2179.

### DEFENDANT'S ANSWER SUBJECT TO ITS SPECIAL APPEARANCE

1.

BP denies the allegations contained in paragraph 1 for lack of knowledge or information sufficient to justify a belief as to the truth thereof.

2.

BP admits that it is a Delaware corporation with its principal place of business in Warrenville, Illinois.  BP further admits that it was a partial lease holder in the lease granted by the former Minerals Management Service ("MMS")[1] pursuant to which it was allowed to

---

[1]     MMS subsequently changed its name to the Bureau of Ocean Energy Management, Regulation, and Enforcement ("BOEMRE") on July 18, 2010.  The BOEMRE was then reorganized into the

perform oil exploration, drilling, and production-related operations in the Mississippi Canyon Block 252, in which the Macondo Well was located and in which the spill originated.   Finally, BP admits that it was the lease operator (within the meaning of OCSLA) of Mississippi Canyon Block 252, which contains the Macondo Well.  BP denies the remaining allegations contained in paragraph 2.

3.

BP denies the allegations contained in paragraph 3.

4.

BP denies the allegations contained in paragraph 4.

5.

BP denies the allegations contained in paragraph 5.

6.

BP admits that it, along with another party, was designated a Responsible Party under the OPA, and that it accepted that designation.

7.

BP denies the allegations contained in paragraph 7 for lack of knowledge or information sufficient to justify a belief as to the truth thereof.

8.

BP denies the allegation contained in first sentence of paragraph 8.   BP denies the remainder of the allegations contained in paragraph 8 for lack of knowledge or information sufficient to justify a belief as to the truth thereof.

---

Bureau of Ocean Energy Management and the Bureau of Safety and Environmental Enforcement on October 1, 2011 as part of a major reorganization.

9.

BP denies the allegations contained in paragraph 9 for lack of knowledge or information sufficient to justify a belief as to the truth thereof.

10.

Paragraph 10 contains a legal conclusion that does not require an answer. However, to the extent an answer is required, BP denies the allegation contained in this paragraph for lack of knowledge or information sufficient to justify a belief as to the truth thereof.

11.

BP admits that the U.S. Coast Guard named it, along with another party, a Responsible Party under the OPA and that as a responsible party under OPA, BP has expressed its commitment to pay all legitimate OPA claims. BP denies the remainder of the allegation contained in this paragraph for lack of knowledge or information sufficient to justify a belief as to the truth thereof.

12.

BP denies the allegations contained in paragraph 12.

13.

BP denies the allegations contained in paragraph 13.

14.

BP admits that on April 20, 2010, at approximately 9:49 p.m. CST, a loss of well control caused one or more fires and explosions on the *Deepwater Horizon*, a drilling rig located in the Gulf of Mexico, and that on April 22, 2010 the *Deepwater Horizon* sank. BP denies the remainder of the allegations contained in paragraph 14.

15.

BP admits as the *Deepwater Horizon* sank it caused the riser to bend and break, that hydrocarbons escaped through portions of the riser (an appurtenance of the vessel), and that the blowout preventer installed on the *Deepwater Horizon* failed to seal the well, resulting in the further release of hydrocarbons into the Gulf of Mexico.  BP denies the remainder of the allegations contained in paragraph 15.

16.

BP denies the allegations contained in paragraph 16 for lack of knowledge or information sufficient to justify a belief as to the truth thereof.

17.

BP admits that hydrocarbons from the Macondo Well entered the water column and reached the surface of the Gulf of Mexico and that some hydrocarbons reached portions of the shorelines of Louisiana, Mississippi, Alabama, and Florida until the well was capped on or around July 15, 2010.  BP further admits that as permitted in the National Contingency Plan and with the approval of the Unified Command, dispersants were applied to mitigate the potential impacts of the oil spill.  BP denies the remainder of the allegations contained in paragraph 17 for lack of knowledge or information sufficient to justify a belief as to the truth thereof.  To the extent that any allegations in this paragraph could be taken to mean that the Tribe alleges that oil reached tribal territory, BP denies any such allegations.

18.

BP denies the allegations contained in paragraph 18 to the extent they concern the conduct or liability of BP.  BP denies the remainder of the allegations contained in paragraph 18 for lack of knowledge or information sufficient to justify a belief as to the truth thereof.

19.

BP denies the allegations contained in paragraph 19 to the extent they concern the conduct or liability of BP. BP denies the remainder of the allegations contained in paragraph 19 for lack of knowledge or information sufficient to justify a belief as to the truth thereof.

20.

BP denies that the entire economy of the Gulf Region was adversely impacted and that tourism was substantially and adversely affected by the spill. However, BP admits that the spill impacted many individuals, businesses, and the environment around the Gulf, and that the spill resulted in the closure of some areas of the Gulf of Mexico and adjacent lands, waters, and wetlands. But, as a responsible party under OPA, BP has expressed its commitment to pay all legitimate OPA claims. Following the incident, BP quickly established a claims process. BP denies the remainder of the allegations contained in paragraph 20 for lack of knowledge or information sufficient to justify a belief as to the truth thereof.

21.

BP denies the allegations contained in paragraph 21.

22.

BP denies the allegation contained in the first sentence of paragraph 22. The remainder of paragraph 22 contains a legal conclusion that does not require an answer. However, to the extent an answer is required, BP denies the remainder of this paragraph for lack of knowledge or information sufficient to justify a belief as to the truth thereof.

23.

Paragraph 23 contains a legal conclusion that does not require an answer.  However, to the extent an answer is required, BP denies the allegation contained in this paragraph for lack of knowledge or information sufficient to justify a belief as to the truth thereof.

24.

Paragraph 24 contains a legal conclusion that does not require an answer.  However, to the extent an answer is required, BP denies the allegation contained in this paragraph for lack of knowledge or information sufficient to justify a belief as to the truth thereof.

25.

BP admits that it was a partial lease holder in the lease granted by the former MMS pursuant to which it was allowed to perform oil exploration, drilling, and production-related operations in the Mississippi Canyon Black 252, in which the Macondo Well was located and in which the spill originated, and that BP was, together with other entities, designated as a Responsible Party under the OPA.  As a Responsible Party under OPA, BP has expressed its commitment to pay all legitimate OPA claims.  BP denies the remaining allegations contained in this paragraph.

26.

BP admits that the U.S. Coast Guard named it, along with another party, as a Responsible Party under the OPA.  As a Responsible Party under OPA, BP has expressed its commitment to pay all legitimate OPA claims.  BP denies the remaining allegations contained in this paragraph.

27.

BP denies the allegations contained in paragraph 27.

28.

BP denies the allegations contained in paragraph 28 for lack of knowledge or information sufficient to justify a belief as to the truth thereof.

29.

BP denies the allegations contained in paragraph 29 for lack of knowledge or information sufficient to justify a belief as to the truth thereof.

30.

BP denies the allegations contained in paragraph 30.

31.

BP denies the allegations contained in paragraph 31 for lack of knowledge or information sufficient to justify a belief as to the truth thereof.

32.

BP denies all remaining allegations in the Petition for Damages, including all allegations contained in all unnumbered or mis-numbered paragraphs of the Petition for Damages.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The allegations of the Petition fail to state a claim upon which relief may be granted.

### SECOND DEFENSE

This Court lacks subject matter jurisdiction over the OPA causes of action pleaded in the Petition.

### THIRD DEFENSE

This Court lacks personal jurisdiction over BP.

## FOURTH DEFENSE

Plaintiff's damages or injuries, if any, were the result of an occurrence and/or accident unforeseeable by the BP and for which BP cannot be held legally responsible.

## FIFTH DEFENSE

The events culminating in the alleged injuries and damage to Plaintiff were not the result of any negligence, fault, or want of due care on the part of BP. Furthermore, Plaintiff has the burden of proof on this issue, and Plaintiff cannot meet that burden.

## SIXTH DEFENSE

Any alleged negligence by BP, which BP specifically denies, was not the proximate cause or sole proximate cause of Plaintiff's alleged damages and there is no causal connection between the acts complained of and the damages and injuries alleged. Similarly, BP denies that the applicable causal test or tests established by the Oil Pollution Act can be met by the Plaintiff.

## SEVENTH DEFENSE

Plaintiff's alleged damages or injuries, if any, were caused or contributed to by acts and/or omissions that constitute independent, intervening and/or superseding causes for which BP is not legally responsible, and which preclude the finding of liability against BP.

## EIGHTH DEFENSE

In accordance with the *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830 (1996), one or more superseding and/or intervening causes preclude any finding of liability on the part of BP.

## NINTH DEFENSE

To the extent BP is found liable to Plaintiff for any damages or injuries, BP is entitled to have any reward or recovery mitigated or reduced accordingly by the contributory or comparative negligence of other individuals, entities, or vessels.

## TENTH DEFENSE

To the extent that BP is found liable to Plaintiff for any damages, BP is entitled to contractual indemnity from other parties or entities.

## ELEVENTH DEFENSE

To the extent that BP is found liable to Plaintiff for any damages, BP is entitled to indemnity from other parties or entities.

## TWELFTH DEFENSE

To the extent that BP is found liable to Plaintiff for any damages, BP is entitled to contribution from other parties or entities.

## THIRTEENTH DEFENSE

To the extent that the BP is found liable to Plaintiff for any damages, BP is entitled to subrogation from other parties or entities.

## FOURTEENTH DEFENSE

To the extent that BP is found liable to Plaintiff for any damages, BP is entitled to a set-off or other equitable reduction in liability for any compensation paid by BP or other parties or entities.

## FIFTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff is not entitled under the law to the damages that they seek, the alleged damages sought are too speculative and uncertain, and because of the impossibility of the ascertainment and allocation of such damages.

## SIXTEENTH DEFENSE

Plaintiff's damages are barred, in whole or in part, by a failure to mitigate damages.

## SEVENTEENTH DEFENSE

BP denies that they are liable to any extent as alleged in the Petition, and claims exoneration from any and all liability for all losses, damages, and injuries incurred by Plaintiff as a result of the allegations contained in the Petition and for any other damages or claims which exist or may arise, but have not been specifically pled.

## EIGHTEENTH DEFENSE

The claims in the Petition fail to comport with one or more requirements of presentment as defined by the Oil Pollution Act of 1990 and its case law.

## NINETEENTH DEFENSE

BP may only be held liable for its own conduct and may not be held liable derivatively for the conduct of any other entity. Similarly, one BP entity may not be held derivatively liable for the conduct of any other BP entity.

## TWENTIETH DEFENSE

BP cannot be held liable for the negligence of BP subcontractors or other parties as the actions of independent contractors cannot be imputed to BP.

## TWENTY-FIRST DEFENSE

BP cannot be held liable for any damages resulting from actions taken pursuant to federal, state, or local government control, direction, delegation, or authorization. Similarly, BP may not be held liable for any damages resulting from the actions of BP exacerbated by federal, state, or local government actions.

## TWENTY-SECOND DEFENSE

BP did not violate any federal, state, or local statute, regulation, or other legally imposed mandate, restriction, or guidance.

## TWENTY-THIRD DEFENSE

To the extent BP is found liable to Plaintiff for any damages or injuries, BP is entitled to have any reward or recovery mitigated or reduced accordingly by any prior payment to and/or release of liability from Plaintiff who received funds through the BP claims process and/or the Gulf Coast Claims Facility. Furthermore, any settled claims accompanied by releases of rights against BP may no longer be maintained.

## TWENTY-FOURTH DEFENSE

Any OPA liability BP might be found to have is limited by the doctrine of divisibility.

## TWENTY-FIFTH DEFENSE

Tribal regulation of the *Deepwater Horizon* Incident is preempted and/or displaced by OPA. Tribal regulation pursuant to its own procedures is incompatible with the regulatory and liability-creating regime established by OPA, including but not limited to OPA's presentment requirement.

* * *

BP specifically reserves the right to amend or supplement their affirmative defenses and this Answer as additional facts concerning their defenses become known to them.

**WHEREFORE**, Defendant, BP Exploration & Production, Inc., prays that its Special Appearance and Answer to the Plaintiff's Petition subject thereto be deemed good and sufficient, and that after due proceedings be had, judgment be entered in its favor and against Plaintiff, dismissing Plaintiff's claims, with prejudice, at Plaintiff's cost, and for any and all further general and equitable relief to which BP Exploration & Production, Inc. be entitled.

Respectfully submitted,

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
K. Todd Wallace (Bar #25920)
Devin C. Reid (Bar #32645)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139-5099
Telephone:  504-581-7979
Fax:  504-556-4108

*Attorneys for BP Exploration & Production, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served upon Plaintiff's counsel and all known defense counsel of record by placing same in the United States mail, properly addressed and postage prepaid, this 10th day of July 2013.