# TABLE OF AUTHORITIES

DECLARATION OF CHRISTINA MANCUSO

*Id.* at ¶ 17 and Exhibit "B" ................................................................................ 9
*Id.* at ¶ 5 (c) ....................................................................................................... 7
*Id. at* ¶ 5 (e) ....................................................................................................... 7
*Id.* at ¶ 13 (b) ..................................................................................................... 9
*Id.* at 19. ............................................................................................................ 8
*Id.* at ¶ 10 and Exhibit "A." ............................................................................... 5
*Id.* at ¶ 13 (a) ..................................................................................................... 9
*Id.* at ¶ 13 (d) ..................................................................................................... 9
*Id.* at ¶ 13 (e) ..................................................................................................... 9
*Id.* at ¶ 13 (f) ................................................................................................... 10
*Id.* at ¶ 13 (g) ................................................................................................... 10
*Id.* at ¶ 17. ......................................................................................................... 5
*Id.* at ¶ 18 .......................................................................................................... 6
*Id.* at ¶ 3 ........................................................................................................... 6
*Id.* at ¶ 4 ........................................................................................................... 6
*Id.* at ¶ 5 (a) ....................................................................................................... 6
*Id.* at ¶ 5 (b) and Exhibit "C" ............................................................................ 7
*Id.* at ¶ 5 (c), Exhibit "E" .................................................................................. 7
*Id.* at ¶ 5 (d) ....................................................................................................... 7
*Id.* at ¶ 8 ........................................................................................................... 5
*Id.* at ¶ 9 ........................................................................................................... 5
*Id.* at 16 ............................................................................................................ 8
*Id.* at 261-62 & n. 8 ......................................................................................... 14
*Id.* at 564 ......................................................................................................... 19

## CASES:

*Bloom v. Illinois, supra,* at 208-209 ................................................................ 13
*Conset Corp. v. Cmty. Servs. Admin.,* 655 F.2d 1291 (D.C. Cir. 1981) ......... 16
*Crosby v. United States,* 506 U.S. 255, 262 (1993) ........................................ 17
*Goldberg v. Kelly Hearing Requirements To Termination of Welfare Benefits,* 26 Stan. L. Rev.
    549, note 2 (1973-74) .................................................................................. 15
*Goldberg v. Kelly,* 397 U.S. 254 (1970) ....................................................... 3, 14
*Goldberg v. Kelly,* 397 U.S. 254, 267 (1970) (quoting *Grannis v. Ordeau,* 234 U.S. 385, 394
    (1914) and *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)) .................... 14
*Goldberg v. Kelly,* 397 U.S. at 267 ................................................................. 14
*Groppi v. Leslie,* 404 U.S. 496, 502 (1972), quoting *In re Oliver,* 333 U.S. 257, 273 (1948) ..... 12
*Groppi v. Leslie, supra,* at 504 ....................................................................... 12
*Horne Brothers, Inc. v. Laird,* 463 F.2d 1268, 1271 (D.C. Cir. 1972) ........... 16
*Id.* ................................................................................................................ 7, 19

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950) .......................................... 14

*Offut v. United States,* 348 U.S. ...................................................................................................... 12

*Peter Kiewet Sons' Co. v. U.S. Army Corps of Engineers,* 534 F.Supp. 1139 (D.D.C. 1982), *rev'd on other grounds,* 714 F.2d 163 (D.C. 1983) .............................................................................. 16

*Pylyer v. Doe,* 457 U.S. 202, 216 (1982) .................................................................................. 3, 18

*Taylor v. Hayes,* 418 U.S. 488 (1974) ............................................................................................ 11

*Taylor v. Hayes,* 418 U.S. at 498 .................................................................................................... 12

*Taylor v. Hayes,* 418 U.S. at 500 .................................................................................................... 13

*United States v. Windsor,* __U.S ___ (June 26, 2013) .................................................................. 18

*Village of Willowbrook v. Olech,* 528 U.S. 562 (2000) ................................................................ 18

Virginia T. Vance, *Application for Benefits: Due Process, Equal Protection, and the Right To Be Free from Arbitrary Procedures,* 61 Wash & Lee L. Rev. 883, 913 (2004). ........................... 19

## DECLARATION OF CHRISTINA E. MANCUSO

I am an attorney employed by the Andry Lerner L.L.C. law firm in New Orleans, Louisiana. I make this Declaration in Support of Motion for Lifting Stay of Andry Lerner Clients' Claims Processing. The facts contained in this Declaration are within my personal knowledge, and, if called upon to testify, I could and would testify competently thereto.

1.   I am the senior staff attorney handling BP Oil Spill claims for the Andry Lerner L.L.C. law firm ("AL"). My responsibilities include overseeing the preparation, filing, and processing of our clients' claims for property and economic damages resulting from the BP Oil Spill in the Gulf of Mexico. I am knowledgeable about AL's client files and the interaction between the AL staff and the employees of the Deepwater Horizon Economic & Property Damage Claims Center ("DHECC").

3.   As of the end of July 2013, AL had approximately ███ claims and /or registrations for approximately ███ clients on file with the Deepwater Horizon Economic & Property Damage Claims Center ("DHECC") and cases. To date we have been paid on ███ claims for ███ clients.

4.   As of the end of June 2013, our statistics show that of the ███ AL client claims had been finally processed and among the business claims all but three claims resulted in an award equal to or lower than the amount requested. ████████████████████████████████ ██████████████████████████████████████████████ AL has been paid a total of ████████████ for business claims.

5.   One of the claims that had been fully processed was filed on behalf of ██████████ ██████████

    (a)   We filed ████████████ claim the DHECC on September 26, 2012, seeking compensation of ████████████, an amount calculated by the client's financial experts. See Exhibit "C."

    (b)   On February 15, 2013, the DHECC issued an Eligibility Notice; finding that ████████ was entitled to an award in the amount of ████████ See Exhibit "D." The offer was accepted. BP appealed that award, arguing that:

> "As the basis for the appeal, BP submits that the Award Amount was incorrectly calculated. The determination misclassified certain variable expenses as fixed expenses. The determination should be revised to correct these errors. Additionally, BP states that it appears that there are significant inconsistencies and anomalies in the financial data provided by the claimant. BP request that the inconsistencies be resolved and the claim re-evaluated. In addition,

there are a number of questions and issues regarding trends and financial data that impact the calculation and require resolution."

(c)     On June 10, 2013, the DHECC Appeal Panel upheld the initial compensation finding. A Post-Appeal Eligibility Notice was issued on June 11, 2013 which awarded ████████████████████ inclusive of the 5% Review Cost.   See Exhibit "E." The Appeal Panel stated:

> "The Appeal Panel's decision will stand as the Settlement Program's final determination on this claim. The three issues BP raises, to-wit: (1) Claimant's relationship to ██████████ (2) ███████████████████████████████████ are all satisfactorily accounted for and explained by the various submissions from Claimant and its accountants, and the Claims Administrator acted within the discretion accorded to him by the Settlement Agreement in resolving those issues in favor of Claimant and awarding the compensation amount in question. "

Id.  This ruling typifies the scrupulous, arms' length processing of claims by the DHECC.Id.

(d)     BP did not seek judicial review of the Appellate Panel's decision.  Under the applicable procedures, the award has been confirmed as a Final Award, is non-appealable, and became due and payable on █████████████████ ad also signed the release required for payment.

(e)     To date, the claim has not been paid.

6.     On June 26, 2013, a member of our staff ████████ mailed █████████████ the DWHCC to request a copy of a Notice For Enforced Third Party Lien on an unrelated firm claim and received this email response:

> " Good morning, The Claims Administrator has instructed us to place all claims by claimants you represent on hold. We have done that. I cannot comment further on this or your claims at this time. Kindest Regards, Kathryn"

7.     At that time and to date, AL had not received any notice or explanation—written or oral—of the reasons for this drastic action, and AL has had no opportunity to be heard on the matter.

8.      On June 26, 2013, George Recile, counsel for AL, spoke with the Claims Administrator about the status of processing AL clients' claims. Mr. Juneau stated that those claims had been put on hold pursuant to a directive from Judge Carl Barbier.

9.      On June 28, 2013  and on July 1, 2013, Mr. Recile called Judge Barbier's office requesting a meeting to discuss the stay of the AL clients' claims.  To date, he has not received a response.

10.     On July 3, 2013, Mr. Recile and Julian Murray sent a letter to Special Master Louis Freeh concerning the stay of the AL clients' claims.  To date, no response has been received.  A copy of the letter is attached as Exhibit "C."

11.     As of today, AL has not been furnished with the reason(s) why all of the claims by the claimants it represents have been put on hold.

12.     AL has thirteen (13) full time employees working on BP Oil Spill claims.  The monthly payroll for these employees is substantial. Taking into consideration overhead expenses, AL's total monthly expenditures for the BP Oil Spill claims operation are significant.

13.     The abrupt halt in processing our clients' claims is causing and will continue to cause irreparable harm.

        (a)     The AL clients are being harmed by the failure to have their claims processed in the normal course of business at the DHECC.  In a number of cases, the DHECC staff has requested further information or Notices have been issued to which responses must be filed within a prescribed time period.  We are uncertain how the hold affects these matters, and we are concerned that we do not default on our clients' claims.

        (b)     The continued cessation of our clients' claims processing will result in delayed awards to BP Oil Spill victims, many of whom urgently need their awards to rebuild their lives, home and businesses.

        (c)     If AL clients decide to change lawyers, it could result in added delays in these deserving victims being compensated.

        (d)     AL is being harmed by its inability to explain to clients the reason for the stay or when the hold will be lifted and the processing of their claims will resume.

        (e)     The stay, if not immediately lifted, will result in AL losing clients who become disaffected and understandably want their claims be processed in the same manner as all other claimants.

        (f)     The AL principals have invested several million dollars in establishing and operating its BP Oil Spill claims practice.  The prospects of this investment being recouped

diminish the longer the stay remains in effect. Likewise, any return on their investment will be lost.

(g)     The reputation of AL and its principals Jonathan B. Andry and Glen Lerner will be irreparably damaged if the processing of their clients' claims is not immediately resumed. This tarnishing of their reputations will adversely affect their ability to attract new clients. The plaintiffs' bar is crowded and highly competitive. The fact of a long term stay of the AL cases and speculation about the reasons will undoubtedly be used by their competitors to lure away existing clients and to compete against AL and its principals for new business.

15. To my knowledge, no one on our AL staff has communicated with a Mr. Lionel Sutton about the processing of our client's claims. To my knowledge, all of the AL clients' claims were processed in the normal manner according to the policies and formulas of the Settlement Agreement, Appeal Panel Determinations, and Judge Barbier's interpretations of the Settlement Agreement.

16.     Based on my understanding of the DHECC process all of AL's claims were handled based on a specific protocol and in  specific workbooks. The claims are processed by DHEEC staff members who are analysts, accountants, and specialists in evaluating financial information along with forensic accountants from firms working on behalf of the DWHCC.

17.     On July 12, 2013, in response to Mr. Recile's letter, DHECC Special Counsel Michael Juneau informed Andry Lerner for the very first time that the processing of their clients' claims and payment of awards had been frozen.  In particular, the firm's counsel was told the following:

"1. The claims of claimants represented by Mr. Andry have been placed on 'hold' status such that payments will not be issued unless and until authorized by the Court.

2. These claims have been placed on 'hold' status after consultation with the Parties and the Court and pursuant to the direction of Judge Barbier. This is all in the context of allegations that have resulted in Judge Barbier's appointment of Louis Freeh as Special Master to conduct an independent investigation.

3. The 'hold' status will be removed if and when we receive such direction from the Court. The timing of that is within the Court's control. If you believe you need and are entitled to more specific information in that regard, any further inquiry is probably best directed to Judge Barbier."

18.     Neither this email nor any other communication has informed Andry Lerner about the reasons why all of its clients' claims have been put on hold, the evidence that purportedly justified this action, and the process by which this clandestine determination was made. The law firm is literally in the dark about how such a monumental, unprecedented, and wholesale treatment of the ▮▮▮ claims en masse could have happened.

19.     The ████ claim was processed in the normal manner according to the applicable procedures and policies. ████████████████████████████████████
████

20.     ████████ owns a seafood related business that suffered losses as a result of the BP Oil Spill.  Andry Lerner filed five claims on his behalf and he has received ████████████
████████████████████████████████████████████████████████
████     ─ a total of ████████ out of the ████████ought for the three (3) claims.

I declare that the foregoing is true and accurate.

Executed on July18th , 2013 in New Orleans, Louisiana.

_____
Christina E. Mancuso

# CHEHARDY SHERMAN

CHEHARDY, SHERMAN, ELLIS, MURRAY, RECILE, GRIFFITH, STAKELUM & HAYES, L.L.P.

JULIAN R. MURRAY, JR.
Partner

ATTORNEYS AT LAW

SUITE 1100
ONE GALLERIA BOULEVARD
METAIRIE, LOUISIANA 70001
TELEPHONE: (504) 833-5600
FAX: (504) 833-8080

Direct Dial:(504) 962-4220
jrm@chehardy.com

MAILING ADDRESS: POST OFFICE BOX 931
METAIRIE, LOUISIANA 70004-0931
www.chehardy.com

July 3, 2013

VIA E-MAIL Freeh@Freehgroup.com
The Honorable Louis J. Freeh
Freeh Group International Solutions, LLC

Re: Jonathan Andry & The Andry Law Group, LLC

Dear Judge Freeh:

We represent Jonathan Andry and his law firm The Andry Law Group, LLC, (not to be confused with the Andry Law Firm, LLC, which is represented by Messrs. Kyle Schonekas and Billy Gibbens). Mr. Andry contacted us after being blindsided by the articles written by Mat Kunzelman. Our representation concerns the allegations and innuendo contained in the Associated Press Article reported on June 21, 2013. This article specifically mentioned Jonathan Andry by name and accused him of making illegal payments to a Lionel Sutton who was employed at the Deep Water Horizon Economic and Property Damage Claims Center (hereinafter DHECC). There was *absolutely* no truth in anything that was said in the original AP story or the one that followed the next day.

All of the claims filed by Mr. Andry are/were processed according to the specific respective formulas contained in the Settlement Agreement. To date, Mr. Andry's firm has received payment on approximately one percent of the claims that he has on file with the DHECC. The vast majority of these payments were very formulaic such as the Vessel of Opportunity Claims and were paid at amounts that were below the amounts determined by Mr. Andry's accounting experts.



**EXHIBIT**

A

CHEHARDY, SHERMAN, ELLIS, MURRAY, RECILE, GRIFFITH, STAKELUM & HAYES, L.L.P.

Moreover, any difference between the amount claimed and the amount paid by the DHECC were the product of simple accounting principles and as explained and set out in the respective DHECC's employee worksheet or notes. Consequently, the evidence surrounding each claim that has been paid and the ones in the process indicate that 2 + 2 equaled 4 -- EVERYTIME.

We understand that pursuant to an Order signed by Judge Barbier you have been appointed as a Special Master to conduct an independent external investigation regarding the alleged events. We have attempted to reach you by phone without success so as assure you that our client offers his full cooperation with the investigation. In this regard, we would ask that you allow us an opportunity to meet with you as soon as possible.

We have undertaken a comprehensive internal investigation into the facts surrounding Mr. Andry and his firm and will be happy to share all non-privileged information with you on an expedited basis which should help to expedite your investigation.

Mr. Andry's situation is very unique to the extent that he subsequently discovered that the claims of all of the clients he represents are "on hold". The hold on these claims was done without any opportunity for Mr. Andry to be heard and as such was clearly done without any due process in any form. More importantly, Mr. Andry represented hundreds of clients that range from those that were recently filed to those that were eligible for payment. A vast amount of these were/are subject to some form of "Incompleteness Notices" that have hard deadlines for remedying the issue in the notice or providing additional information. Not only are present clients calling to express their concerns and dismay, but John has heard from attorneys that have referred cases to him in the past who explained that with the uncertainty of the surrounding situation, they will be unable to do so in the future.

All of this is happening to a man who has always had a sterling reputation, the highest ethical standards, and is completely innocent of any wrongdoing. The uncertainty threatens not only his livelihood but also his health because the stress is overwhelming. More importantly, the hold and the uncertainty is fast becoming a situation wherein his clients are being harmed.

Mr. Andry wants to offer his cooperation so that whatever investigation there may be can be hastened and Mr. Andry can go on with his life and clear his good name.

CHEHARDY, SHERMAN, ELLIS, MURRAY, RECILE, GRIFFITH, STAKELUM & HAYES, L.L.P.

We would greatly appreciate an opportunity to speak with you as soon as possible. Hoping to hear from you we remain,

Respectfully yours,

JULIAN R. MURRAY, JR.
GEORGE RECILE

JRM/GR/sjd
cc:    Pat Juneau
       Billy Gibbens

# CHEHARDY SHERMAN

### CHEHARDY, SHERMAN, ELLIS, MURRAY, RECILE, GRIFFITH, STAKELUM & HAYES, L.L.P.

GEORGE B. RECILE
A PROFESSIONAL LAW CORPORATION

ATTORNEYS AT LAW

Direct Dial:(504) 830-4100
E-Mail: gbr@chehardy.com

SUITE 1100
ONE GALLERIA BOULEVARD
METAIRIE, LOUISIANA 70001
TELEPHONE: (504) 833-5600
FAX: (504) 833-8080

MAILING ADDRESS: POST OFFICE BOX 931
METAIRIE, LOUISIANA 70004-0931
www.chehardy.com

July 12, 2013

*Via e-mail - pjuneau@dheclaims.com*
Pat Juneau
Claims Administrator
Deepwater Horizon
Economic Claims Center
935 Gravier St.
New Orleans, LA 70112

Dear Mr. Juneau:

I represent Johnathan Andry in conjunction with the situation described in the media pertaining to Lionel Sutton. In the last two weeks, he has received conflicting indicators about the status of his clients' claims that are currently filed with Deepwater Horizon Claims Center. For example, when Mr. Andry's employees made a status request for particular clients his employees were informed via e-mail that:

> "The claims administrator has instructed us to place all claims by claimants you represent on hold. We have done that. I cannot comment further on this claim."

This statement is in direct conflict with the fact that Mr. Andry's office continues to receive Eligibility and Incompleteness Notices posted on his portal. There were also several claims for certain claimants that were exigible and these claimants have been awaiting payment. Mr. Andry has not received the respective checks and/or any notification from your office notifying him why such funds have not been paid.

**EXHIBIT**

tabbies

*B*

CHEHARDY, SHERMAN, ELLIS, MURRAY, RECILE, GRIFFITH, STAKELUM & HAYES, L.L.P.

July 12, 2013
Page 2
_____

      This lack of a specific notification regarding the status of the claims made by the claimants Mr. Andry represents is prohibiting him from effectively communicating actual information to his clients about the status of their claims.

      Therefore, it is imperative that he be provided, in writing, answers to the following questions:

    1.    Are all of the claims made by the claimants represented by Mr. Andry being treated differently than other claims being processed by DHCC?;

    2.    If they are being treated differently – why are they being treated differently and under whose directive?;

    3.    If they are being treated differently – how long can Mr. Andry and the clients that he represents, expect that these claims will be treated differently?

      Your response, to these questions is required so that Mr. Andry can continue to fulfill his ethical obligations to his clients by providing accurate factual information concerning the specific status of their respective claims. Kindly acknowledge and advise, in writing, by the end of the day. Thanks for your prompt attention to this request!

                 Sincerely,

                 George Recile

GBR/ms
cc:    Rick Stanley (*via email* - *rcs@stanleyreuter.com*)
      Jonathan Andry (*via email* - *jandry@andrylawgroup.com*)



Date of Preparation:

## Full Review Final Payment Claim of



### Prepared for:

Andry Law Group

610 Baronne Street

New Orleans LA 70130

## Claimant Specific Data

| NAICS Code | Presumptive Causation Test |
|------------|----------------------------|
|            | n/a – Zone                 |

| Type of Claim | Zone | RTP |
|---------------|------|-----|
|               |      |     |

Resulting from the

**Deepwater Horizon Gulf Oil Spill**

Report prepared by:







*New Orleans LA 70125*

September 19, 2012

**The Andry Law Firm LLC**
610 Baronne Street
New Orleans LA 70113

Dear Mr. Large;

Please accept this letter as my report of findings to date regarding the loss suffered by ▇▇▇▇▇▇▇ as a result of the BP oil spill which occurred on April 20, 2010. My calculation of the claim is attached and is in accordance with the Deepwater Horizon Settlement Agreement. Based on these calculations, I estimate the compensation to be ▇▇▇▇▇▇

▇▇▇▇▇▇▇ is located in Key West Florida which falls in Zone A, per the interactive map on the Deepwater Horizon website, therefore causation is not required. To prepare the calculations I used various financial documents including ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ These statements and calculations are based on a thorough examination of supporting records and analysis. It is my opinion that the amount of loss stipulated in this report is an accurate depiction of loss. I did not perform an audit of financial records but advise that I have confidence in the veracity of the information supplied to me. There was no material adjustment to the financial statements received from ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

The monthly financial statements were reviewed to determine the variable expenses in accordance with the variable expense accounts provided in the settlement document. ▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ step was done for the benchmark period ▇▇▇▇▇▇ or the compensation period to calculate step 1 compensation.

I received ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇



between the benchmark period and the compensation period is the Step 1 compensation calculation which totals ▮▮▮▮

Step 2 compensation was determined using the ▮▮▮▮ from ▮▮▮▮ the benchmark period and the compensation period to calculate growth or loss between the years.

I reserve the right to amend, modify or supplement this report based on receipt of new or additional information. I do not take responsibility to update this report to reflect the receipt of additional information or to take into account events and circumstances occurring subsequent to the date of the report.

It is my pleasure assisting you with this calculation.

Best Regards,

**Total Compensation Summary**

Step 1 Compensation – Schedule 1

Step 2 Compensation – Schedule 2

**Total Compensation**

Risk Transfer Premium

Compensation * RTP

**Total Claim**

Plus other Expenses
    Mitigation expenses (all non-legal fees)
    Analysis and calculation of claim

Less payments from BP and GCCF

**Total Compensation**




Schedule 1



**Step 1 Compensation**

| Benchmark Period | |
|---|---|
| Variable Profit | |

| Compensation Period | |
|---|---|
| Variable Profit | |

Step 1 – Compensation



**Step 2 Compensation**                                      Schedule 2

Revenue in the Benchmark Period (May – Dec)          [a]

Claimant-Specific Factor                              [b]

General Adjustment Factor                             [c]

Incremental Revenue                                  [d] = [a]*([b]+[c])

Variable Margin Percentage                           [e]

Step 2 Compensation                                  [f] = [d]*[e]





**DEEPWATER HORIZON**
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

## ELIGIBILITY NOTICE
### DATE OF NOTICE: February 15, 2013
DEADLINE FOR RE-REVIEW OR RECONSIDERATION REQUEST: March 18, 2013

### I. CLAIMANT AND CLAIM INFORMATION

| Claimant Name | Last / Name of Business | | First | Middle |
|---|---|---|---|---|
| Claimant ID | ██████████ | | Claim ID | ████████ |
| Claim Type | ██████████ | | | |
| Law Firm | Andry Law Group/Andry Lerner, LLC | | | |

### II. COMPENSATION AND PAYMENT DETERMINATION

This Notice is an official communication from the Claims Administrator for the Deepwater Horizon Economic and Property Damages Settlement Program ("Settlement Program") and relates to the claim identified in Section I.  We have reviewed this claim and find that it qualifies for payment under the terms of the Economic and Property Damages Settlement Agreement ("Settlement Agreement").  The following provides a breakdown of the factors relevant to your payment.  See Explanation of Claim Attachment for details on each item, unless another Attachment is noted.

| | | |
|---|---|---|
| 1. | Compensation Amount: | ████████ |
| 2. | Risk Transfer Premium Amount: | ████████ |
| 3. | Plus Claimant Accounting Support: See Claimant Accounting Support Reimbursement Attachment for additional details. | ████████ |
| 4. | Less Prior Spill-Related Payments: | ████████ |
| 5. | Total Compensation Amount: This is the sum of all Rows above. | ████████ |
| 6. | 40% of Prior Transition Offer, if Applicable: | ████████ |
| 7. | Award Amount: Higher of 40% Amount or Final Claimant Compensation, subject to any applicable liens. | ████████ |

**EXHIBIT**
0

## III. ACCEPTANCE OF AWARD AMOUNT

To accept this Award Amount, you must complete and sign the Full and Final Release, Settlement, and Covenant Not to Sue ("Release") that is attached to this Notice. You must complete and submit an original, signed Release before we can issue payment, but only one Release is required. You do not have to submit a separate Release for each of your payable claims. To be paid, you must use the Release that we send you. Although the terms of this Release are the same as the version attached as Exhibit 26 to the Settlement Agreement, you must sign and return the Release we send you with this Notice. Do not use a copy of Exhibit 26 or any other form of release, for we cannot accept them. The Settlement Program's determination will be binding on you even if you choose not to accept this award, subject to any rights of Re-Review, Reconsideration and Appeal.

If you elect to waive any Re-Review, Reconsideration and Appeal rights for this claim as explained in Section VI, submit the Release attached to this Notice. **An original of the Release bearing the claimant's signature is required. We will not accept photocopies or scanned versions of the claimant's signature. Once you submit a Release, we must verify your SSN, EIN or ITIN before you can receive payment. If we cannot verify your SSN, EIN, or ITIN or if it changes upon submission of additional information, your Award Amount could change or this Eligibility Notice may be rescinded.** The submitted Release will be binding on you for any additional Settlement Payments you may be eligible to receive under the Settlement Program.

After signing your Release and receiving a payment on your first claim, you will have 180 days from the date we mail or wire your initial payment to file any additional claims you wish to pursue pursuant to Section 4.4.8 of the Settlement Agreement. You will waive all rights to future claims if you do not submit additional claims within this 180-day window. However, if you are filing a claim in the Seafood Compensation Program, you must have filed all Seafood-related claims no later than **January 22, 2013**.

To obtain more detailed information regarding acceptance of your payment and additional terms and requirements of the Release, go to **www.deepwaterhorizoneconomicsettlement.com.** If you have any questions about your options or this Notice, you may call the Claimant Communication Center at 1-800-353-1262, send an email to **Questions@dhecc.com**, or visit a Claimant Assistance Center.

If the Compensation Amount listed on Row 1 of Section II of this Notice is greater than $25,000, BP has a right to appeal it within certain timeframes that begin from the date of this Eligibility Notice, which means that you cannot receive a Release or payment until BP's appeal right has expired or been waived. If the BP Appeal deadline falls on a Saturday, Sunday or a holiday, the deadline is extended to the next business day. Holidays are: New Year's Day, Martin Luther King, Jr.'s Birthday, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veteran's Day, Thanksgiving Day, Christmas Day, and any other day designated by the Office of the Claims Administrator. BP's Appeal timeframes differ depending on the amount of the award as follows: (a) for awards of $25,000.01 to $250,000.00, BP has ten days to appeal; (b) for awards of $250,000.01 to $500,000.00, BP has 15 days to appeal; and (c) for awards greater than $500,000.00, BP has 20 days to appeal. If BP appeals your Compensation Amount, we will send you a separate notification explaining BP's appeal and the appeals process.

## IV. OPTION TO ELECT A STRUCTURED SETTLEMENT

You may be able to place some or all of your Award Amount into a structured settlement to receive multiple payments spread out over more than one year (the "Structured Settlement Option"). You should consult your own tax adviser regarding whether you should consider that Structured Settlement Option, and the tax, financial and other consequences of the Structured Settlement Option.

If you want more information on the Structured Settlement Option, go to **www.deepwaterhorizoneconomicsettlement.com/structuredsettlement.php** or call the Claimant Communications Center at 1-800-353-1262. If YOU WISH TO BE PAID USING THE STRUCTURED SETTLEMENT OPTION, DO NOT SIGN OR RETURN THE RELEASE SENT TO YOU WITH THIS NOTICE AT THIS TIME.  Instead, a Court-approved structured settlement broker will help you assemble the paperwork necessary to elect the Structured Settlement Option and that broker will send your completed paperwork to the Claims Administrator (this paperwork will include an additional document that will be **Attachment C** to, and submitted at the same time as, your Release). If this paperwork is not submitted on your behalf by a Court approved structured settlement broker by the Deadline Date shown on this Notice, the Claims Administrator will consider that you have accepted your Award Amount to be paid in a lump sum and that you do not want a Structured Settlement Option for this Award Amount.

## V. DECEASED, MINOR AND INCOMPETENT CLAIMANTS

If you accept your Award Amount and the claimant on whose behalf this claim was asserted is deceased, a minor or incompetent, depending upon the law of the state where the claimant lived or lives now, you may be required to get court approval of this accepted settlement and submit a copy of an official court document proving that the person signing the Release has the authority to settle this claim on the claimant's behalf if you do not already have such a document, even if we accepted whatever proof you have provided before now as sufficient to allow the claim to move through the claim review process.  We will notify you if you need to seek court approval or submit additional proof of authority before payment.

## VI. RE-REVIEW AND RECONSIDERATION

You may seek Re-Review or Reconsideration of this claim if you choose not to accept your Award Amount.  **Re-Review** is available to you if one or both of the following applies to you:  (1) you have additional documents to submit in support of your claim; and/or (2) you have filed an IEL, BEL or Seafood claim and want your claim reviewed for Claimant Accounting Support Reimbursement.  If you select Re-Review, we will review your claim again and will issue a Post-Re-Review Eligibility Notice.  You will maintain your Reconsideration rights after you receive your Post-Re-Review Eligibility Notice. If you request Re-Review on the grounds that you have  additional documents in support of your claim but you do not submit any new documents by the time of the new review, we will deem your request to be a request for Reconsideration, we will perform a Reconsideration review, and your only remaining option will be an appeal if you remain dissatisfied with your Award Amount.  If you request Re-Review because you want your claim reviewed for Claimant Accounting Support Reimbursement, you are not required to submit new documents, although you may do so. You may elect Re-Review both because you have additional documents in support of your underlying claim, and also because you want your claim reviewed for Claimant Accounting Support.


**Reconsideration** is available to you even if you do not have additional documents to submit if you believe the Settlement Program: (1) made a Calculation Error; (2) failed to take into account relevant information or data; (3) failed to follow the standards in the Settlement Agreement, or (4) made incorrect deductions from prior BP/GCCF payments.

To request Re-Review or Reconsideration, you must do the following on or before the Deadline for Re-Review or Reconsideration Request date listed at the top of this Eligibility Notice: (1) complete the **Re-Review or Reconsideration Request Form** accompanying this Notice or complete the online version available on the DWH Portal; and (2) submit all documentation you want us to consider at the same time you submit your Re-Review or Reconsideration Request Form. Because submission of a Re-Review or Reconsideration request is the equivalent of asking for a new review of the claim, the outcome could change the eligibility of the claim, or your Award Amount may increase, decrease or stay the same.

If you are dissatisfied with your Re-Review outcome, you will have the right to request Reconsideration and then have the right to file an appeal. If you request Reconsideration and are dissatisfied with the outcome of your Reconsideration review, you will have the right to file an appeal; however, you must submit a timely Request for Reconsideration if you later wish to appeal. **If you do not submit a request for Re-Review or Reconsideration or submit one after the deadline for doing so has passed, you will not be able to file an appeal.**

## VII. THIRD PARTY CLAIMS/LIENS

If we receive a valid Third Party Claim or Lien against your payment before we begin the payment process, we are required to deduct from your Award Amount identified in Section II of this Notice the third party claim amount and any other deductions required by state or federal law or by any court order.  If your claim is subject to a third party claim, we will send you a Notice of Valid Third Party Claim to explain how it affects your current and/or future Award Amount(s).

## VIII. ACCOUNTING SUPPORT REIMBURSEMENT

You are eligible to receive reimbursement for reasonable and necessary accounting fees related to claims preparation. Reimbursement is limited to the accounting services necessary to complete the Claim Form or prepare supporting documentation.  You will be reimbursed for accounting fees based on the actual fees incurred.

For business claims over $50,000, total accounting fees may not exceed 2% of the Compensation Amount (excluding any applicable Risk Transfer Premium).  Accounting fees for all other claims less than or equal to $50,000 are limited to $1,000.  All business claims, regardless of the Compensation Amount, shall be subject to an overall accounting support reimbursement limit of $50,000.

## IX. HOW TO CONTACT US WITH QUESTIONS OR FOR HELP

If you have any questions about this Notice or the status of your claim(s) or need help, contact the Claimant Communications Center at 1-800-353-1262 or send an email to **Questions@dhecc.com**.  If you are a law firm or claims preparation company, you should call or email your designated DWH Contact for help or assistance.  You also may visit a Claimant Assistance Center and talk with one of our representatives. For a complete list of Claimant Assistance Centers, go to **www.deepwaterhorizoneconomicsettlement.com**.

## X. HOW TO RESPOND TO THIS NOTICE

Submit your *original* hard copy, signed Release bearing the claimant's signature by Mail, Overnight Certified or Registered Mail, or by visiting a Claimant Assistance Center. If you have already submitted a Release and you wish to accept this Award Amount go to **www.deepwaterhorizoneconomicsettlement.com** and choose the Accept Award Amount option. If you are unable to access the DWH Portal you must call the Claimant Communications Center at 1-800-353-1262 to accept payment on this claim. Submit your **Request for Re-Review or Reconsideration Form** online with any accompanying documents by uploading them to your DWH Portal in any of the following ways.  If you are unable to access the DWH Portal, you may submit your request in any of the following ways, but be sure to write your Claimant ID on the top page of all the documents you submit.

| **By Mail**<br>(Postmarked no later than your Re-Review or Reconsideration deadline) | Deepwater Horizon Economic Claims Center<br>PO Box 1439<br>Hammond, LA 70404-1439 |
| --- | --- |

| **By Overnight, Certified or Registered Mail**<br>(If mail, postmarked no later than your Re-Review or Reconsideration deadline; if other overnight delivery, placed in the custody of an overnight carrier by your Re-Review or Reconsideration deadline) | Deepwater Horizon Economic Claims Center<br>Claims Administrator<br>42548 Happy Woods Road<br>Hammond, LA 70403 |
|---|---|
| **By Facsimile**<br>(Sent no later than 12:00 midnight local time on your Re-Review or Reconsideration deadline) | (888) 524-1583 |
| **By Email**<br>(Sent no later than 12:00 midnight local time on your Re-Review or Reconsideration deadline) | ClaimForms@deepwaterhorizoneconomicsettlement.com |
| **Visit a Claimant Assistance Center**<br>(Delivered no later than your Re-Review or Reconsideration deadline) | You may take the required information or documents to a Claimant Assistance Center. |

## EXPLANATION OF CLAIM ATTACHMENT

### A. CLAIMANT SUMMARY

| Industry Designation | ███████ | Optimum Benchmark Period | ████████████ |
| Economic Loss Zone | ██████ | Optimum Step 1 Compensation Period | ████████████ |
| Risk Transfer Premium | █████ | Optimum Step 2 Compensation Period | ████████████ |

### B. TOTAL CALCULATED LOSS SUMMARY

The compensation framework for Business Economic Loss claims compares the actual profit of a business during a defined post-Spill period in 2010 to the profit that the business might have expected to earn in the comparable post-Spill period of 2010. The compensation calculation is divided into two steps. Total Compensation is calculated by adding Step 1 Compensation and Step 2 Compensation, applying the appropriate Risk Transfer Premium based on your Industry Designation and Economic Loss Zone, and subtracting any applicable payments you have received from BP or the GCCF pursuant to BP's OPA claims process, as well as any VoO Settlement Payment Offset and VoO Earned Income Offset. The Step 1 Compensation Calculation and Step 2 Compensation Calculation are illustrated in greater detail below in Sections C and D, respectively.

We have reviewed all the documentation and information you submitted to determine the Benchmark Period and Compensation Periods that maximize your recovery, even if those periods differ from the periods you selected. These are the Optimum Benchmark Period, Optimum Step 1 Compensation Period and Optimum Step 2 Compensation Period set forth in Section A above. Column A below shows the actual calculation of your Total Calculated Loss, based on the most beneficial Benchmark and Compensation Periods. Column B below shows a hypothetical calculation of what your Total Net Compensation would have been if we had used the Benchmark and Compensation Periods that you selected on the Claim Form. If you left these selections on the Claim Form blank or selected "Claims Administrator Selected Benchmark Period," then Column B defaults to "Not Selected."

To view a copy of the Compensation Calculation Schedules prepared by DWH Accountants that illustrate this calculation in even greater detail, you can click the View button on the Eligibility Notice screen on the DWH Portal. If you do not use the DWH Portal, you must call the Claimant Communications Center at 1-800-353-1262 to request a copy of this document.

| | Total Compensation | (A) Claims Administrator Selected Periods | (B) Claimant Selected Periods |
|---|---|---|---|
| 1. | **Step 1 Compensation:** from Row 9 in Section C, Step 1 Net Compensation | ██████████ | ██████████ |
| 2. | **Step 2 Compensation:** from Row 9 in Section D, Step 2 Net Compensation | ██████████ | ██████████ |
| 3. | **Compensation Amount:** sum of Rows 1 and 2 | ██████████ | ██████████ |
| 4. | **Risk Transfer Premium:** | ██████ | |
| 5. | **Risk Transfer Premium Amount:** Row 3 times Row 4 | ██████████ | ██████████ |
| 6. | **Accounting Support Reimbursement:** See Claimant Accounting Support Reimbursement Attachment for additional details, if applicable. | ██████████ | |
| 7. | **Compensation Prior to Offsets:** sum of Rows 3, 5 and 6 | ██████████ | ██████████ |
| 8. | **Less Offsets:** | ██████ | |

Claimant ID: 100124796
Claim ID: 83325

| | | |
|---|---|---|
| | BP Payments Offset of $0.00 | |
| | Real Estate Fund Payments Offset of $0.00 | |
| | GCCF Payments Offset of $0.00 | |
| | VoO Settlement Payment Offset of $0.00. If you received an Eligibility Notice from the Settlement Program for a VoO Charter Payment claim, this is 50% of the Total Compensation Amount in that Notice. | |
| | VoO Earned Income Offset of $0.00. If you received payment from the VoO Program, this is 33% of that amount. | |
| 9. | Total Compensation Amount: Row 7 minus Row 8 | |

### C. STEP 1 COMPENSATION CALCULATION

The Step 1 Compensation calculation compensates claimants for any reduction in profit between the Step 1 Compensation Period and the comparable months of the Benchmark Period. We determined your Step 1 Net Compensation by calculating the difference in Variable Profit between the Optimum Step 1 Compensation Period and the Variable Profit over the comparable months of the Optimum Benchmark Period. The Step 1 Compensation Period must include three or more consecutive months between May and December 2010.

### Step 1 Net Compensation

| | Month | Benchmark Period Variable Profit (a) | 2010 Compensation Period Variable Profit (b) | Step 1: Lost Variable Profit (c) = (a) − (b) |
|---|---|---|---|---|
| 1. | May | | | |
| 2. | Jun | | | |
| 3. | Jul | | | |
| 4. | Aug | | | |
| 5. | Sep | | | |
| 6. | Oct | | | |
| 7. | Nov | | | |
| 8. | Dec | | | |
| 9. | Total | | | |

### Benchmark Period: 2009 Only Benchmark Period

| | Month | Revenues (a) | Variable Expenses (b) | Variable Profit (c) = (a) − (b) |
|---|---|---|---|---|
| 1. | May | | | |
| 2. | Jun | | | |
| 3. | Jul | | | |
| 4. | Aug | | | |

Claimant ID: 100124796
Claim ID: 83325

| | Month | Revenues (a) | Variable Expenses (b) | Variable Profit (c) = (a) – (b) |
|---|---|---|---|---|
| 5. | Sep | ■■■■■ | ■■■■■ | ■■■■■ |
| 6. | Oct | ■■■■■ | ■■■■■ | ■■■■■ |
| 7. | Nov | ■■■■■ | ■■■■■ | ■■■■■ |
| 8. | Dec | ■■■■■ | ■■■■■ | ■■■■■ |
| 9. | **Total** | ■■■■■ | ■■■■■ | ■■■■■ |

**Compensation Period 2010**

| | Month | Revenues (a) | Variable Expenses (b) | Variable Profit (c) = (a) – (b) |
|---|---|---|---|---|
| 1. | May | ■■■■■ | ■■■■■ | ■■■■■ |
| 2. | Jun | ■■■■■ | ■■■■■ | ■■■■■ |
| 3. | Jul | ■■■■■ | ■■■■■ | ■■■■■ |
| 4. | Aug | ■■■■■ | ■■■■■ | ■■■■■ |
| 5. | Sep | ■■■■■ | ■■■■■ | ■■■■■ |
| 6. | Oct | ■■■■■ | ■■■■■ | ■■■■■ |
| 7. | Nov | ■■■■■ | ■■■■■ | ■■■■■ |
| 8. | Dec | ■■■■■ | ■■■■■ | ■■■■■ |
| 9. | **Total** | ■■■■■ | ■■■■■ | ■■■■■ |

### D. STEP 2 COMPENSATION CALCULATION

The Step 2 Compensation calculation compensates claimants for lost incremental profits the claimant might have been expected to generate in the absence of the Spill relative to variable profit from the Benchmark Period. This calculation reflects a Claimant-Specific Factor (not to fall below -2% or exceed +10%) that captures growth or decline in the pre-Spill months of 2010 compared to the comparable months of the Benchmark Period, and a General Adjustment Factor of 2%. We calculated your Step 2 Net Compensation by multiplying your monthly revenues from the Optimum Benchmark Period by the sum of your Claimant Specific Factor and the General Adjustment Factor to yield Incremental Revenue. We then multiplied Incremental Revenue by a Variable Margin Percentage to determine your Step 2 Variable Lost Profit.

**Step 2 Net Compensation**

| | Month | Revenues | | | | Variable Margin % (e) | Step 2: Lost Variable Profit (f) = (d) × (e) |
|---|---|---|---|---|---|---|---|
| | | Benchmark Period (a) | Claimant Specific Factor (b) | General Adjustment Factor (c) | Incremental Revenue (d) = (a) x (b + c) | | |
| 1. | May | ■■■■■ | ■■■■■ | ■■■■■ | ■■■■■ | ■■■■■ | ■■■■■ |
| 2. | Jun | ■■■■■ | ■■■■■ | ■■■■■ | ■■■■■ | ■■■■■ | ■■■■■ |
| 3. | Jul | ■■■■■ | ■■■■■ | ■■■■■ | ■■■■■ | ■■■■■ | ■■■■■ |

| | | | | | | |
|---|---|---|---|---|---|---|
| 4. | Aug | | | | | |
| 5. | Sep | | | | | |
| 6. | Oct | | | | | |
| 7. | Nov | | | | | |
| 8. | Dec | | | | | |
| 9. | **Total** | | | | | |

### Claimant Specific Factor Calculation

| | | January | February | March | April | Total |
|---|---|---|---|---|---|---|
| 1. | **Benchmark Period Revenue:** | | | | | |
| 2. | **2010 Revenue:** | | | | | |
| 3. | **Revenue Increase (Decrease) Between 2010 and Benchmark Period :** Row 2 minus Row 1 | | | | | |
| 4. | **Pre-Loss 4-Month Trend:** Row 3 divided by Row 1 | | | | | |
| 5. | **Calculated Claimant Specific Factor:** | | | | | |
| 6. | **Applied Claimant Specific Factor:** Minimum of -2% and Maximum of +10% | | | | | |

## CLAIMANT ACCOUNTING SUPPORT REIMBURSEMENT ATTACHMENT

### A. EXPLANATION OF CLAIMANT ACCOUNTING SUPPORT REIMBURSEMENT

You are eligible for reimbursement of reasonable and necessary accounting fees incurred for work performed on either the completion of a Claim Form or preparation of supporting documentation ("Claimant Accounting Support"). Reimbursements for Claimant Accounting Support are capped at the following standard hourly rates:

| | Individual Claim | Business Claim |
|---|---|---|
| Preparation | | |
| Supervision and Review | | |

For business claimants, the total reimbursement may not exceed 2% of the total Economic Damage Compensation Amount (excluding any applicable Risk Transfer Premium) for business Claims over $50,000.00 with all other claims limited to $1,000.00. Review and supervision hours may not exceed 25% of total time spent. All business claims, regardless of the final claim amount, are subject to an overall accounting support reimbursement limit of $50,000.00.

### B. REIMBURSEMENT DETERMINATION

We reviewed the Sworn Written Statement and other supporting materials that you submitted and determined that you are eligible for reimbursement of accounting fees. The amount of your Claimant Accounting Support reimbursement is set forth below.

**CA GOLICH CPA LLC**

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Preparer | | | |
| Supervisor | | | |
| | | Total | |

**Total Reimbursement Amount**
(This amount may reflect the maximum reimbursement limits explained in this Notice)

## RE-REVIEW OR RECONSIDERATION REQUEST FORM
### DATE OF ELIGIBILITY NOTICE: February 15, 2013
### DEADLINE TO SUBMIT FORM: March 18, 2013

### I. CLAIMANT AND CLAIM INFORMATION

| Claimant Name | Last/ Name of Business | First | Middle |
|---|---|---|---|
| | ███████████ | | |
| Claimant ID | ████████ | Claim ID | ██████ |
| Claim Type | ████████████ | | |
| Law Firm | ██████████████████ | | |

### II. OPTIONS FOR RE-REVIEW OR RECONSIDERATION

After receiving this Eligibility Notice, if you choose not to accept your Award Amount, you have the option to seek Re-Review or Reconsideration, which will result in a new review of your claim based on the additional documents you submit or new information you provide on this Form.

- **A. Re-Review.** Re-Review is available to you if one or both of the following applies: (1) you have additional documents to submit in support of your claim; and/or (2) you have filed an IEL, BEL or Seafood claim and want your claim reviewed for Claimant Accounting Support Reimbursement. If you select Re-Review, we will review your claim again and you will maintain your Reconsideration rights after you receive your Post-Re-Review Eligibility Notice.

- **B. Reconsideration.** Reconsideration is available to you even if you do not have additional documents to submit if you believe the Settlement Program: (1) made a Calculation Error; (2) failed to take into account relevant information or data; (3) failed to follow the standards in the Settlement Agreement, or (4) made incorrect deductions for prior BP/GCCF payments.

Use this Form to request Re-Review in Section III.A or Reconsideration in Section III.B. **NOTE** that by requesting Re-review or Reconsideration you are certifying that you understand that the outcome could change the eligibility of your claim and that your Settlement Payment could increase, decrease or stay the same.

### III. REQUEST FOR RE-REVIEW OR RECONSIDERATION

#### A. RE-REVIEW OPTIONS

You may select one or both Re-Review options below, if they are applicable to you.

| | |
|---|---|
| ☐ | I request **Re-Review of my entire claim** instead of Reconsideration and certify that I am providing additional documents in support of my claim. I understand that if I have not submitted new documents at the time of the review the Settlement Program will perform a Reconsideration review, followed only by the option to appeal if I remain dissatisfied with the outcome. |
| ☐ | I request **Re-Review for reimbursement for Claimant Accounting Support ("CAS").** By choosing this option, the Settlement Program will only review my claim relating to CAS reimbursement. CAS is only available for IEL, BEL and Seafood claims. |

Provide any additional information you would like the reviewer to have for the Re-Review request (You may attach additional sheets if necessary):

## B. RECONSIDERATION OPTIONS

☐   I request **Reconsideration** instead of Re-Review and understand that I may provide additional documentation in support of my claim.  I understand that if I remain dissatisfied with the outcome of the claim following Reconsideration, my only option is to appeal the claim. Select the reason(s) you are requesting Reconsideration from the options below.

    ☐   Calculation Error

    ☐   Failure to take into account relevant information or data

    ☐   Failure to follow the standards in the Settlement Agreement

    ☐   Incorrect deductions from prior BP/GCCF payments

    ☐   Incorrectly Calculated Claimant Accounting Support Reimbursement

Provide any additional information you would like the reviewer to have for your Reconsideration request (You may attach additional sheets if necessary):

## IV. HOW TO SUBMIT THIS FORM

Submit your **Re-Review or Reconsideration Request Form** online with any accompanying documents by uploading them to the DWH Portal.  If you do not use the DWH Portal, you may submit your request in any of the following ways, but be sure to write your Claimant ID on the top page of all the documents you submit.

| | |
|---|---|
| **By Mail**<br>(Postmarked no later than your Re-Review or Reconsideration deadline) | Deepwater Horizon Economic Claims Center<br>PO Box 1439<br>Hammond, LA 70404-1439 |
| **By Overnight, Certified or Registered Mail**<br>(If mail, postmarked no later than your Re-Review or Reconsideration deadline; if other overnight delivery, placed in the custody of an overnight carrier by your Re-Review or Reconsideration deadline) | Deepwater Horizon Economic Claims Center<br>Claims Administrator<br>42548 Happy Woods Road<br>Hammond, LA 70403 |
| **By Facsimile**<br>(Sent no later than 12:00 midnight local time on your Re-Review or Reconsideration deadline) | (888) 524-1583 |
| **By Email**<br>(Sent no later than 12:00 midnight local time on your Re-Review or Reconsideration deadline) | ClaimForms@deepwaterhorizoneconomicsettlement.com |
| **Visit a Claimant Assistance Center**<br>(Delivered no later than your Re-Review or Reconsideration deadline) | You may take the required information or documents to a Claimant Assistance Center. |



**DEEPWATER HORIZON**
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

## POST-APPEAL ELIGIBILITY NOTICE

### DATE OF NOTICE: June 11, 2013

### I. CLAIMANT AND CLAIM INFORMATION

| Claimant Name | Last/Name of Business ▇▇▇▇ | First | Middle |
|---|---|---|---|
| Claimant ID | ▇▇▇▇▇ | Claim ID | ▇▇▇▇ |
| Claim Type | ▇▇▇▇▇ | | |
| Law Firm | Andry Law Group/Andry Lerner, LLC | | |

### II. COMPENSATION AND PAYMENT DETERMINATION

This Notice is an official communication from the Claims Administrator for the Deepwater Horizon Economic and Property Damages Settlement Program ("Settlement Program") and relates to the claim identified in Section I. You or BP appealed the Compensation Amount initially offered after we reviewed your claim. The Appeal process is complete and the Post-Appeal Compensation Amount in Row 1 below is the Settlement Program's final decision on your claim. The following provides a breakdown of the factors relevant to your payment.

| | | |
|---|---|---|
| 1. | Post-Appeal Compensation Amount: | ▇▇▇▇ |
| 2. | 5% Review Cost: If you prevailed on your Appeal you will receive a 5% increase in the Post-Appeal Compensation Amount. | ▇▇▇▇ |
| 3. | Filing Fee Adjustment: This amount is the 5% reduction in the pre-RTP Compensation Amount that you agreed to pay if you did not prevail in the appeal. If you did not prevail and this amount is zero, you have already paid your filing fee and your pre-RTP Compensation Amount will not be reduced. | ▇▇▇▇ |
| 4. | Risk Transfer Premium Multiplier: | ▇▇▇▇ |
| 5. | Risk Transfer Premium Amount: This amount is your Post-Appeal Compensation Amount multiplied by the Risk Transfer Premium Multiplier. This amount will be added to your Post-Appeal Compensation Amount. | ▇▇▇▇ |
| 6. | Plus Claimant Accounting Support: See Claimant Accounting Support Reimbursement Attachment for additional details. | ▇▇▇▇ |
| 7. | Total Compensation Amount: | ▇▇▇▇ |
| 8. | 40% of Prior Transition Offer, if Applicable: | ▇▇▇▇ |
| 9. | Filing Fee Refund: This is the refund of the appeal filing fee if you paid. We will only refund this fee if you prevailed in the appeal. | ▇▇▇▇ |
| 10. | Award Amount: Higher of 40% Amount or Final Claimant Compensation, subject to any applicable liens. | ▇▇▇▇ |

### III. RELEASE AND PAYMENT

**EXHIBIT**

tabbies

*E*

Because you previously signed a Full and Final Release, Settlement, and Covenant Not to Sue and have received a payment from the Settlement Program, you do not need to submit another Release to receive a payment on this claim. To obtain more detailed information about the payment process and other steps, go to **www.deepwaterhorizoneconomicsettlement.com**. If you have any questions about your options or this Notice, you may call the Claimant Communication Center at 1-800-353-1262, send an email to **Questions@dhecc.com**, or visit a Claimant Assistance Center.

You have 180 days from the date we mail or wire your initial payment to file any additional claims you wish to pursue pursuant to Section 4.4.8 of the Settlement Agreement. You will waive all rights to future claims if you do not submit additional claims within this 180-day window. However, if you are filing a claim in the Seafood Compensation Program, you must have filed all Seafood-related claims no later than **January 22, 2013**.

## IV.  OPTION TO ELECT A STRUCTURED SETTLEMENT

You may be able to place some or all of your Award Amount into a structured settlement to receive multiple payments spread out over more than one year (the "Structured Settlement Option"). You should consult your own tax adviser regarding whether you should consider that Structured Settlement Option, and the tax, financial and other consequences of the Structured Settlement Option.

If you want more information on the Structured Settlement Option, go to **www.deepwaterhorizoneconomicsettlement.com/structuredsettlement.php** or call the Claimant Communications Center at 1-800-353-1262. BECAUSE YOU ALREADY HAVE AN ACCEPTED RELEASE, IF YOU WISH TO BE PAID USING THE STRUCTURED SETTLEMENT OPTION, CONTACT THE CLAIMANT COMMUNICATION CENTER AT 1-800-353-1262 OR SEND AN EMAIL TO **QUESTIONS@DHECC.COM** TO LET US KNOW YOUR INTENT TO STRUCTURE YOUR SETTLEMENT SO WE DO NOT IMMEDIATELEY PAY THIS CLAIM. Instead, a Court-approved structured settlement broker will help you assemble the paperwork necessary to elect the Structured Settlement Option and that broker will send your completed paperwork to the Claims Administrator (this paperwork will include an additional document that will be **Attachment C** to your original Release). If this paperwork is not submitted on your behalf by a Court approved structured settlement broker within 30 days from the date shown on this Notice, the Claims Administrator will consider that you have accepted your Award Amount to be paid in a lump sum and that you do not want a Structured Settlement Option for this Award Amount.

## V.  DECEASED, MINOR AND INCOMPETENT CLAIMANTS

If you accept your Award Amount and the claimant on whose behalf this claim was asserted is deceased, a minor, or incompetent, depending upon the law of the state where the claimant lived or lives now, you may be required to get court approval of this accepted settlement and submit a copy of an official court document proving that the person signing the Release has the authority to settle this claim on the claimant's behalf if you do not already have such a document, even if we accepted whatever proof you have provided before now as sufficient to allow the claim to move through the claim review process. We will notify you if you need to seek court approval or submit additional proof of authority before payment.

## VI.  LIENS

We will deduct any valid outstanding liens we have received, along with any other deductions required by state or federal law or by any court order from Your Award Amount identified in Section II of this Notice before issuing payment. If we have received a valid lien against your claim(s), the Notice of Lien Withholding Attachment included with this Notice provides details on that lien and how it affects your Award Amount. If we receive a valid lien or notice of another required deduction after you accept your Award Amount but before we issue the payment on your claim, we will deduct the lien amount from your payment.

## VII.  ACCOUNTING SUPPORT REIMBURSEMENT

You are eligible to receive reimbursement for reasonable and necessary accounting fees related to claims preparation. Reimbursement is limited to the accounting services necessary to complete the Claim Form or prepare supporting documentation. You will be reimbursed for accounting fees based on the actual fees incurred.

For business claims over $50,000, total accounting fees may not exceed 2% of the Compensation Amount (excluding any applicable Risk Transfer Premium). Accounting fees for all other claims less than or equal to $50,000 are limited to $1,000. All business claims, regardless of the Compensation Amount, shall be subject to an overall accounting support reimbursement limit of $50,000.

## VIII. HOW TO CONTACT US WITH QUESTIONS OR FOR HELP

If you have any questions about this Notice or the status of your claim(s) or for help, contact the Claimant Communications Center at 1-800-353-1262 or send an email to **Questions@dhecc.com**. If you are a law firm or claims preparation company, you should call or email your designated DWH Contact for help or assistance. You also may visit a Claimant Assistance Center and talk with one of our representatives. For a complete list of Claimant Assistance Centers, go to **www.deepwaterhorizoneconomicsettlement.com**.

## IX. HOW TO RESPOND TO THIS NOTICE

Submit your *original* hard copy, signed **Release** bearing the claimant's signature by Mail, Overnight Certified or Registered Mail, or by visiting a Claimant Assistance Center. If you have already submitted a signed Release, you do not need to submit another Release to receive a payment on this claim.

| By Mail | Deepwater Horizon Economic Claims Center<br>PO Box 1439<br>Hammond, LA 70404-1439 |
|---|---|
| By Overnight, Certified or Registered Mail | Deepwater Horizon Economic Claims Center<br>Claims Administrator<br>42548 Happy Woods Road<br>Hammond, LA 70403 |
| Visit a Claimant Assistance Center | You may take the required information or documents to a Claimant Assistance Center. |