UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * | MDL NO. 2179 "J"(1)  JUDGE BARBIER |
| | * * | MAGISTRATE SHUSHAN |
| **THIS DOCUMENT APPLIES TO:** Case No. 12-311 | * * * * | **JURY TRIAL DEMANDED** |

### LIBERTY INSURANCE UNDERWRITERS, INC.'S MEMORANDUM IN SUPPORT OF RULE 72 APPEAL OF MAGISTRATE'S JULY 22, 2013 DISCOVERY ORDER

Defendant Liberty International Underwriters, Inc. ("LIU") submits this Memorandum in Support of its Rule 72 Appeal of the Magistrate's July 22, 2013 Discovery Order. (R. Doc. 10808).

Although Cameron already was found to have erred in withholding 30% of the 27 documents specified for *in camera* review, the Order effectively allows Cameron to be the sole arbiter of whether remaining allegedly privileged documents between non-lawyers and ones communicated to persons outside Cameron were improperly withheld. On appeal, LIU challenges that ruling and seeks an *in camera* review of the remaining 204 documents or emails.

The withheld documents involve communications between Cameron International Corporation ("Cameron") and Marsh USA, Inc. ("Marsh"), an insurance broker. Marsh performed a swath of routine business services for Cameron well before this coverage dispute arose. For instance, Marsh was actively involved in procuring the pertinent LIU policy and prior policies with the "Other Insurance" clause at issue. Marsh also was involved in routine business

1

communications with Cameron about the BP litigation, responding to inquiries about defense costs not being covered, and discussing reasons to settle and the problematic non-financial aspects of the BP Settlement requiring relinquishment of Cameron's valuable indemnification rights to the detriment of Cameron's insurers.[1]   Marsh was also likely involved in discussing with Cameron the Other Insurance clause at issue because if the LIU clause is enforceable as LIU suggests, Marsh, the party responsible for procuring the policy, may be liable to Cameron for its losses.   Marsh is thus potentially adverse to Cameron and likely had discussions with Cameron wherein it likely acted to protect its own interest and relationship with Cameron.[2]

Given Marsh's involvement in procuring the contested policy, its potential exposure, and its routine business involvement with Cameron, Marsh's communications with Cameron are likely highly probative of a myriad of issues, may include admissions by Cameron, and may reveal bias of Marsh and others.   Thus, the withheld documents are central to this lawsuit.[3]   But Marsh documents in several instances have been erroneously withheld as the Magistrate found and Cameron itself admitted.   For the following reasons, the Court should reverse the Discovery Order in part, and require an *in camera* review of *all* Marsh documents withheld by Cameron.

---

[1]   *See* Exh. A, MARSH 6062-6063 (notes of Marsh's Stephen Fraser detailing the insurers' positions regarding the BP-Cameron settlement negotiations).

[2]   In acting to protect its own interest, Marsh did *not* act solely as a representative for Cameron's legal services, making any claim of privilege improper. LIU is entitled to all routine business communications between the companies. *See, e.g., Johnson v. Standex Int'l Corp.*, 153 F.R.D. 80, 84 (E.D. Va. 1994) (work product doctrine did not apply to report created by non-party).

[3]   Cameron did not contest the documents' relevancy.

2

## INTRODUCTION

The Discovery Order follows a prior ruling in which the Magistrate ordered LIU to blindly select 23 of 227 Marsh documents from Cameron's Privilege Log for *in camera* review. R. Doc. 10559.[4]  The Magistrate requested only this sample because, for reasons unstated, the "Court is unable to review all 227 documents *in camera*." *Id.* at 3.  After LIU selected the 23 documents, Cameron suddenly withdrew its claim of privilege on 2 of them.[5]  *See* July 10, 2013 letter, Exh. B.  The Magistrate then found that an additional 5 documents were not privileged (R. Doc. 10808), resulting in 30% of the blind random sample having been improperly withheld.  Given Cameron's 30% error rate, the Magistrate should have conducted an *in camera* review of the remaining 204 documents.  Instead, the Magistrate devised a different procedure, allowing *Cameron* itself to decide whether the remaining 204 documents are privileged, and then have LIU blindly pick an additional mere 5 documents (2% of the remaining documents) for *in camera* review to further test Cameron's decisions.  *Id.* at 5.  The Magistrate cites no jurisprudence for this procedure, which is clearly erroneous and contrary to law.  Indeed, after getting it wrong on 30% of the random sample, Cameron should hardly be permitted to solely

---

[4]  The Privilege Log contains minimal information.  For example Document 453, for which Cameron withdrew its claim of privilege after its selection for *in camera* review, only is described as an email between Tony Black (a Cameron employee) and Rusty Lee (a Marsh employee) made to facilitate "the rendition of professional legal services to, requesting information necessary to render professional legal services to, reflecting mental impressions and litigation strategy of Cameron regarding Cameron's claim for coverage arising out of the Deepwater Horizon Incident." *See* Exh. C at 13.  Virtually every entry on the Privilege Log is described in near identical terms.

[5]  There was absolutely no basis for Cameron to ever withhold these 2 documents, which are routine business communications between Marsh and Cameron employees.  *See* 2 Documents (CIC 24731-32), Exh. D.

3

make further determinations on privilege claims involving non-lawyers and persons outside of Cameron. And letting LIU just pick 5 out of 204 remaining documents for additional *in camera* review based on the minimal descriptions in Cameron's privilege log is unfair and insufficient to ensure Cameron gets it right this time.

Accordingly, the Court should reverse the Discovery Order in part and have the Magistrate conduct an *in camera* review of the 204 remaining documents.

## **BACKGROUND**

**A.**      **The Dispute Between LIU and Cameron**

As the Court is aware, this insurance coverage dispute arises out of Cameron's claim for coverage for its $250 million settlement with BP in December 2011. LIU, one of Cameron's excess insurers, declined to fund the portion of the settlement allegedly reaching its layer of coverage because, among other reasons, (1) LIU's policy states that it is excess of "any type of . . . indemnification or other mechanism by which an Insured arranges for funding of legal liabilities"; and (2) in the settlement, Cameron extinguished LIU's valuable rights to recover any amount paid from Transocean based on Cameron's indemnity rights which it transferred to BP.

Cameron has sued seeking to recover $50 million and defense costs under the LIU Policy and damages, penalties and attorney fees under Texas bad faith laws. The case involves a myriad of issues including construction of the Other Insurance clause, effect of Cameron's transfer and assignment of its indemnification rights, construction of Liberty's and other policies in the insurance tower regarding payment of defense costs, whether the liability of Cameron and

4

Liberty were reasonably clear under Texas bad faith law, and whether Liberty knowingly misrepresented material facts or policy provisions.  To defend against these claims, Liberty is entitled to discover Cameron's communications involving Marsh which may include, discussions about the transfer of indemnification rights, the Other Insurance Clause and defense costs, admissions, evidence of bias, or reflect probative facts.

**B.    LIU's Discovery Requests to Cameron and Cameron's Responses**

On February 7, 2013, LIU propounded its First Set of Requests for Admissions, Interrogatories, and Requests for Production of Documents to Cameron.  *See* Discovery Requests, Exh. E.    Among other things, LIU requested that Cameron produce all communications involving Marsh:

- All documents and communications between Cameron and Marsh concerning Cameron's claim for coverage for liabilities arising out of the Deepwater Horizon Incident, the BP Settlement, this lawsuit, a demand against Marsh, or notice of a potential claim against Marsh.

- All documents and communications between Cameron and Marsh concerning procurement of the Liberty Policies.

- All documents and communications concerning the terms of the BP Settlement, including drafts of the executed settlement agreement.

*Id.* at RFP No. 3, 4, 9.  Liberty also issued a subpoena duces tecum to Marsh.  *See* Liberty Subpoena to Marsh, Exh. F.    In response, Marsh did not produce a single internal communication, claiming none exist.  Cameron also claimed 227 Marsh documents were privileged, summarily contending Marsh was acting to facilitate rendition of legal services without providing further information.[6]  *See* Exh. C.  Cameron's broad privilege assertion

---

[6]      Cameron previously produced some communications between its lawyers and Marsh relating to the BP settlement and other insurers who also objected to settlement terms,

includes a privilege of over approximately 50 Marsh documents[7] where no attorney is even listed;[8] others simply because a lawyer,[9] sometimes only in-house counsel, is copied;[10] documents involving settlement negotiations (even though that does not necessarily mandate a finding of privilege);[11] and over at least one document from long before the coverage dispute with LIU even arose.[12]

---

belying its contention that Marsh was assisting in the provision of legal services and waiving any alleged attorney-client privilege. See Exh. G, CIC 5298 (email between Marsh's Jonathan Zaffino and Cameron's in house lawyer Brad Eastman).

[7] *See* Exh. C, *e.g.*, Nos. 231, 853, 638, 1574, 956, 957, 959, 1103, 1104, 1105, 1114, 1115, 1116, 1121, 1122, 1123, 1124, 1125, 1126 (with attached 1127), 1128, 1129, 1130, 1131, 1132, 1134, 450, 453, 460, 466, 477, 478, 542, 543, 548, 549, 568, 612, 626, 639, 791, CIC 20956-58, CIC 21033-38, CIC 9028-34, CIC 9035-41, CIC 9042-50 *et seq.*

[8] *Cf. In re Tetra Tech. Inc. Sec. Litig.*, 2010 WL 1335431, at *5 (S.D. TExh. Apr. 5, 2010) ("must involve an attorney" to be privileged).

[9] *See,* Exh. H, *e.g.*, Nos. CIC 3341-42 (October 31, 2011 email from Marsh's Timothy Kenny to Cameron's Tony Black, copying in-house lawyer Brad Eastman). The majority of the privilege log contains communications involving Marsh and Cameron executives and copying Cameron's counsel. Cameron apparently withheld all such documents. *Cf. Hasty v. Lockheed Martin*, 1999 WL 600322, at *2 (E.D. La. Aug. 6, 1999) (Shushan, Magistrate J.) ("attorney-client privilege is blurred when examining the role of an in-house counsel. . . . [W]hen in-house counsel acts as a business advisor or addresses business issues, then the attorney-client privilege is not invoked.").

[10] Copying an attorney on a document does not make it privileged. *E.g., In re Vioxx*, 501 F. Supp. 2d 789, 805 (E.D. La. 2007) ("When, for example, Merck simultaneously sends communications to both lawyers and non-lawyers, it usually cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes.").

[11] *See, e.g., U.S. v. Dish Network*, 2013 WL 1876419, at *3 (C.D. Ill. May 6, 2013) ("[N]o generally recognized settlement-negotiation privilege exists."); *In re Comm. Fut.*, 370 F. Supp. 2d 201, 209-12 (D.D.C. 2005) (no "consensus of support for a settlement privilege in federal court").

[12] *See* Exh. I, *e.g.,* CIC 0000310 (April 2010).

886891_1

C.      **The Magistrate's Discovery Order**

        LIU moved to compel production of the 227 Marsh documents, or at minimum,

have an *in camera* inspection of the documents.  For reasons unstated, the Magistrate determined

the "Court is unable to review all 227 documents *in camera*" and ordered LIU to identify 23

documents for *in camera* review.  (R. Doc. 10559 at 3).  LIU blindly did so, given the Privilege

Log's lack of information.  After LIU made its selection, Cameron immediately withdrew its

privilege claim on 2 documents.  *See* Exh. B.  The Magistrate then found an additional 5

documents were not privileged because each "was not made for the purpose of facilitating the

rendition of professional legal services to the client or prepared in anticipation of litigation." (R.

Doc. 10808 at 2-4).  The other 16 documents were found to be protected from disclosure without

further explanation.  (*Id.*).  So, out of the 23 documents LIU randomly identified, 7 were not

privileged.

        Although Cameron improperly withheld 30% of documents reviewed, the

Magistrate has ordered that Cameron itself decide whether the remaining documents are

privileged rather than conduct an *in camera* review of the remaining 204 documents.  *Id.* at 5.

She further ordered that after Cameron has completed its review, LIU may blindly select a mere

5 documents for *in camera* review to test whether Cameron's decisions were correct.  *Id.*  The

Magistrate cites no jurisprudence for this procedure.  This Court should reverse the Discovery

Order in part, and order an *in camera* review of all Marsh documents that Cameron has withheld.

## ARGUMENT

### A.      Standard of Review

        The Court reviews the Magistrate's non-dispositive discovery rulings to determine whether they are clearly erroneous or contrary to law.  F.R.C.P. 72(a); 28 U.S.C. § 636(b)(1)(A).  For the reasons stated herein, the Court should reverse the Discovery Order in part.

### B.      The Magistrate Should Conduct an *In Camera* Review of All Marsh Documents

        The procedure imposed by the Magistrate effectively allowing Cameron to be the sole arbiter on privilege issues pertaining to the remaining 204 documents rather than conduct a complete *in camera* review is clearly erroneous or contrary to law.  District courts routinely hold that a magistrate's decision not to review documents *in camera* is clearly erroneous.  *Kirzhner v. Silverstein*, 870 F. Supp. 2d 1145, 1153 (D. Colo. 2012) (finding the magistrate's decision not to review documents *in camera* was clearly erroneous and ordering *in camera* review); *Franzon v. Massena Mem'l Hosp.*, 32 F. Supp. 2d 528, 532 (N.D.N.Y. 1998) (holding that the magistrate judge was required to conduct an *in camera* review of documents); *Burton v. R.J. Reynolds Tobacco Co.*, 167 F.R.D. 134, 143 (D. Kan. 1996) (ordering magistrate judge to conduct an *in camera* review and determine whether any documents should be produced); *see also In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 644 (8th Cir. 2001) (ordering the district court to conduct an *in camera* review of the allegedly privileged materials).  When the facts give the court a reason to doubt the veracity of a party's privilege designations, an order requiring the magistrate to review *in camera* is appropriate.  *Kirzhner*, 870 F. Supp. 2d at 1153.  The rationale

8

for having an *in camera* review was explained by the Supreme Court:  An "*in camera* review of the documents is a relatively costless and eminently worthwhile method to insure that the balance between [a party's] claims of . . . privilege and [another party's] asserted need for the documents is correctly struck."  *Kerr v. U.S. Dist Ct. for N. Dist. of Cal.*, 426 U.S. 394, 405 (1976).  Considering this principle, courts, where possible, conduct a "full *in camera* review" of documents on a privilege log, and not perform an "imprudent sampling procedure."  *Am. Nat'l Bank & Trust Co. of Chicago v. Equitable Life Assurance Soc'y of U.S.*, 406 F.3d 867, 879-80 (7th Cir. 2005) ("magistrate judge's continued refusal of a full, document-by-document, *in camera* inspection was not helpful") (citing and quoting *Kerr*, 426 U.S. at 406 ("full *in camera* review of the log documents would have been 'a highly appropriate and useful means of dealing with' the sensitive privilege issues in this case")).  Indeed, "only when [the Magistrate] has been exposed to the contested documents and the specific facts which support a finding of privilege . . . for ***each document*** can it make a principled determination as to whether [any] privilege in fact applies."  *In re Grand Jury Proceedings,* 220 F.3d 568, 571 (7th Cir. 2000) (quoting *Holifield v. U.S.,* 909 F.2d 201, 204 (7th Cir. 1990)) (emphasis added).  That principle is especially applicable here where a blind sample established 30% of those documents were improperly withheld

Here, it is established that Cameron erroneously claimed privilege on 30% of 23 documents blindly chosen by LIU for *in camera* review.  (R. Doc. 10808).  Against the backdrop of this error rate, the Magistrate should have followed the above cited cases and ordered a full *in camera* review of all remaining documents rather than leave it to Cameron to decide the

886891_1

privilege issue on 199 of the 204 remaining documents.  Indeed, the number of remaining documents (204 to be exact) is a rather small amount – likely no more than a fraction of a bankers box, or perhaps just one binder.  Courts routinely conduct an *in camera* review when there is such a "manageable quantity of documents at issue."  *See Am. Nat'l Bank,* 406 F.3d at 879-80 ("[T]he magistrate judge should have reviewed more documents *in camera* than the total of forty-four reviewed. . . .The quantity of log documents was down to a half box. . . .[T]he magistrate judge, given the manageable quantity of documents at issue, should have simply instituted a procedure by which he would review (himself or through a special master) every document contested by Emerald – *even if that meant reviewing every document in that half box.*") (emphasis in original).  Indeed, courts have reviewed *far more* than 204 documents to determine privilege.  *In re Vioxx,* No. 06-30378, 2006 WL 1726675, at *6 (5th Cir. May 26, 2006) ("Judge Fallon began to examine the documents on a document-by-document basis. . . . Judge Fallon reviewed the remaining 51 boxes using this data and then reviewed the first 30 boxes again using the additional data."); *In re Vioxx,* 501 F. Supp. 2d at 807 ("examination and evaluation of the 2,000 sample documents presented to us by Merck, and the 600 documents chosen by the plaintiffs from Merck's privilege log").

Accordingly, it was clearly erroneous and contrary to law for the Magistrate to abdicate to Cameron (and its lawyers) the responsibility for review of the remaining documents – particularly given Cameron's huge error rate on the random sample.  The Magistrate compounded the error by ordering LIU, once Cameron's review is complete, to blindly select a mere 5 documents for *in camera* review, so the Magistrate can test Cameron's decisions.  (R.

Doc. 10808 at 5). A blind selection of 5 documents, however, is not representative of the remaining 204 documents withheld by Cameron. Further, there is no procedure in the event the chosen 5 documents reveal Cameron's decisions were not correct. It is unknown whether Cameron will again be permitted to fix any errors, or whether the Magistrate will order another blind sample, or perhaps will require some other procedure. The only thing that is clear is that there will be more delay.[13]

This Court, however, can and should bring some certainty to this discovery issue. In the interest of judicial efficiency and moving discovery along, the Court should reverse the Discovery Order in part, and require the Magistrate to review the remaining 204 documents for privilege.

## CONCLUSION

The Discovery Order, in part, is unsupported, contrary to law, and clearly erroneous. The Magistrate should conduct an *in camera* review of the remaining 204 documents for privilege. This Court should reverse.

---

[13]   Without further delay, LIU is entitled to the facts of this case including all non-privileged documents in order to take effective depositions and defend itself. *See Upjohn Co. v. U.S.,* 449 U.S. 383, 395 (1981) ("Pre-existing facts that underlie the client's confidential communications, whether oral or written, are not privileged simply because the client disclosed them to an attorney for the purpose of obtaining legal services.").

886891_1

Respectfully submitted,

*/s/ Judy Y. Barrasso*
Judy Y. Barrasso, 2814
Celeste Coco-Ewing, 25002
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
504.589.9700 (Telephone)
504.589.9701 (Facsimile)

and

Christopher W. Martin, PRO HAC VICE
Federal I.D. 13515
Gary L. Pate, PRO HAC VICE
Federal I.D. 29713
808 Travis, Suite 1800
Houston, Texas 77002
713-632-1700 (Telephone)
713-222-0101 (Facsimile)

Attorneys for Liberty International
  Underwriters, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 29th day of July, 2013.

*/s/ Judy Y. Barrasso*

886891_1