1              UNITED STATES DISTRICT COURT

2            THE EASTERN DISTRICT OF LOUISIANA

3                    AT NEW ORLEANS

4

5    IN RE:  OIL SPILL BY THE OIL RIG    *   10-MD-2179 "J"
               *DEEPWATER HORIZON* IN THE    *
6              GULF OF MEXICO ON            *
               APRIL 20, 2010              *   July 26, 2013
7                                          *
                                           *
8    Applies to:   All Cases              *   9:30 a.m.
     *************************************

9

10

11              DISCOVERY STATUS CONFERENCE

12        BEFORE THE HONORABLE SALLY SHUSHAN

13           UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20   SUSAN A. ZIELIE, RMR, FCRR
     Official Court Reporter
21   HB 406
     500 Poydras Street
22   New Orleans, Louisiana 70130
     susan_zielie@laed.uscourts.gov
23   504.589.7781

24

25   Proceedings Recorded by Computer-aided Stenography Transcription
     Software.

```
 1   APPEARANCES:

 2

 3   Plaintiffs' Liaison Counsel:    HERMAN HERMAN KATZ & COTLAR
                                     BY:  STEPHEN J. HERMAN, ESQ.
 4                                   820 O'Keefe Avenue
                                     New Orleans LA 70113
 5
     For the Plaintiffs:             IRPINO LAW FIRM
 6                                   BY:  ANTHONY IRPINO, ESQ.
                                     One Canal Place
 7                                   365 Canal Street
                                     Suite 2990
 8                                   New Orleans LA 70130

 9   For the Plaintiffs:             LEVIN PAPANTONIO THOMAS MITCHELL
                                        RAFFERTY & PROCTOR
10                                   BY:  BRIAN H. BARR, ESQ.
                                     316 South Baylen Street
11                                   Suite 600
                                     Pensacola FL 32502
12
     For the United States          ENVIRONMENTAL ENFORCEMENT SCTN
13   of America:                     US DEPARTMENT OF JUSTICE
                                     BY:  STEVE O'ROURKE, ESQ.
14                                        SARAH HEMMELHOCH, ESQ.
                                     PO Box 7611
15                                   Washington DC 20044

16   For the State Interests:

17           Alabama                 ATTORNEY GENERAL OF ALABAMA
                                     BY:  COREY L. MAZE, ESQ.
18                                   500 Dexter Avenue
                                     Montgomery Al 36130
19
                                     ATTORNEY GENERAL OF ALABAMA
20                                   BY:  WINFIELD SINCLAIR, ESQ.        09:56:1
                                     501 Washington Avenue
21                                   Montgomery, AL 36130

22   For Defendant BP:               LISKOW & LEWIS, APLC
                                     BY:  DON K. HAYCRAFT, ESQ.
23                                   701 Poydras Street
                                     Suite 5000
24                                   New Orleans LA 70139
                                     655 Fifteenth Street NW
25                                   Washington DC 20005
```

```
 1   APPEARANCES:

 2

 3   For Defendant TO:            FRILOT, LLC
                                  BY:  MARY K. KLINEFELTER, ESQ.
 4                                1100 Poydras Street
                                  Suite 3700
 5                                New Orleans LA 70163

 6                                MUNGER TOLLES & OLSON
                                  BY:  TAMERLIN J. GODLEY, ESQ.
 7                                355 South Grand Avenue
                                  35th Floor
 8                                Los Angeles CA 90071

 9   For Defendant Halliburton:  GODWIN RONQUILLO, PC
                                  BY:  DONALD E. GODWIN, ESQ.
10                                     JENNY L. MARTINEZ, ESQ.
                                       SEAN FLEMING, ESQ.
11                                     BRUCE W. BOWMAN, JR., ESQ.
                                       STEPHANIE M. McGREGOR, ESQ.
12                                     ERIKA TOLEDO, ESQ.
                                  1201 Elm Street
13                                Suite 1700
                                  Dallas TX 75270
14
                                  GODWIN RONQUILLO, PC
15                                BY:  R. ALAN YORK, ESQ.
                                       GWEN E. RICHARD, ESQ.
16                                1331 Lamar
                                  Suite 1665
17                                Houston TX 770101

18   For Defendant Anadarko:     BINGHAM MCCUTCHEN, LLP
                                  BY:  WARREN A. FITCH, ESQ.
19                                2020 K Street NW
                                  Washington DC 20006
20
                                  KUCHLER POLK SCHELL WEINER
21                                  & RICHARDSON, LLC
                                  BY: SARAH IIAMS, ESQ.
22                                1615 Poydras Street
                                  Suite 1300
23                                New Orleans LA 70112

24

25
```

IN RE: OIL SPILL BY OIL RIG *DEEPWATER HORIZON* IN THE GULF OF MEXICO, 4.20.10    4

```
 1   TELEPHONE PARTICIPANTS:

 2

 3   George Crow - Lane Aviation

 4   Mike Petrino - BP

 5   Bill Stradley - 2185

 6   Tom Benson - US DOJ

 7   Joe Russell

 8   Jed Medier

 9   Mark Nomellini - BP

10   Ryan Babich

11   Kerry Miller

12   Craig Pritzlass

13   Tom Mariani - US

14   Grant Davis-Denny - TO

15   Richard Gladstein - US

16   Mike Lyle

17   Kerry Karis

18

19

20

21

22

23

24

25
```

IN RE: OIL SPILL BY OIL RIG *DEEPWATER HORIZON* IN THE GULF OF MEXICO, 4.20.10    5

AGENDA

Working Group Conference on Friday, July 26, 2013


NON-PHASE TWO MATTERS

1.  Removal of Items at Michoud sought          10

      by Transocean

2.  Michoud lease                               10

3.  NOAA Information


PHASE TWO PREPARATION

1.  Deposition designations                     12

2.  Crime-fraud

3.  Experts                                     14

4.  Order regarding confidentiality of          17

      communications among aligned parties

5.  Motions in Limine                           17

6.  Phase One rulings application               18

      to Phase Two

7.  Phase Two Exhibit List                      26

8.  Conduct of Phase Two Trial                  40

      and Revised Timeline

9.  Further Stipulations                        59

OFFICIAL TRANSCRIPT
SUSAN A. ZIELIE, CRR, RMR, FCRR

```
 1    AGENDA - 2

 2

 3    10.   Phase Two Logistics                          69

 4          a.   Technical Walk-through                  69

 5          b.   Technical Equipment                     69

 6          c.   Overflow Courtroom                      69

 7          d.   Work rooms                              69

 8          e.   Supplies for Work Rooms                 70

 9          f.   Seating Chart                           70

10          g.   Tags                                    70

11          h.   Chess clock                             70

12

13                       OTHER PHASES

14    1.  Penalty Phase

15    2.  OPA Test Case

16    3.  State Test Case

17

18

19

20

21

22

23

24

25
```

```
 1              NEW ORLEANS, LOUISIANA; FRIDAY, JULY 26, 2013        09:14:1

 2                           9:30 A.M.                              09:14:2

 3              THE COURT:  Have you all met Malcolm?  Did we introduce  09:28:3

 4   him?                                                          09:31:4

 5                   (Telephone interference.)                      09:31:5

 6              THE COURT:  Good morning, phone participants.  How's  09:33:1

 7   everybody?                                                    09:33:2

 8                   Sarah?                                         09:33:2

 9              MR. O'ROURKE:  No Sarah.                            09:33:2

10              THE COURT:  No Sarah?                               09:33:2

11                   Speaking of which, let's get that out of the way.  09:33:3

12                   Corey, come on up.  We've got two pictures for you  09:33:3

13   today.                                                        09:33:3

14                   Start with the first one, the top one.        09:33:3

15              MR. MAZE:  And that does not look good.            09:33:5

16              THE COURT:  No, no, it looks good; you're blocking the  09:33:5

17   way.                                                          09:34:0

18                   This is the United States' trial team at Lucy's  09:34:0

19   Surfer Bar.  And they do look like they are surfing; do they  09:34:0

20   not?                                                          09:34:1

21                   Mr. O'Rourke, why don't you identify the cast of  09:34:1

22   characters?                                                   09:34:1

23              MR. O'ROURKE:  Oh, I think people probably recognize  09:34:2

24   Sarah Hammerlock on the right, and Erica Pencak.  I think she's  09:34:2

25   been here.  And, Tom Benson, with some really nice looking   09:34:2
```

```
 1   shorts.                                                          09:34:3

 2         THE COURT:  Shorts and sexy legs.  Don't forget the        09:34:3

 3   sexy legs.                                                       09:34:3

 4         MR. O'ROURKE:  Oh, I don't know if you've met Mr.          09:34:3

 5   Benson or not.  You know him by phone.                           09:34:4

 6         THE COURT:  Yes.                                           09:34:4

 7             That's number one.  And let's put up number two.       09:34:4

 8         MR. IRPINO:  Before you take it up, I need to verify       09:34:4

 9   those are non-alcoholic drinks.  I let them know when I took the 09:34:5

10   picture that I would tell the court and everybody that those are 09:34:5

11   all non-alcoholic.                                               09:35:0

12         THE COURT:  As far as I'm concerned, that's a strike       09:35:0

13   against them.                                                    09:35:0

14         MR. FITCH:  That's a confession.                           09:35:0

15         THE COURT:  Okay.  Next up.                                09:35:0

16             You've got to bring it down a little bit.              09:35:1

17             There's a person in there.  Does anybody know who      09:35:1

18   that person is?                                                  09:35:1

19             Mr. Haycraft?                                          09:35:1

20         MR. HAYCRAFT:  I'm stumped.                                09:35:2

21         THE COURT:  You're stumped?                                09:35:2

22         MR. HAYCRAFT:  Stumped.                                    09:35:2

23         THE COURT:  That's Jim Roy, with his new Dalmatian         09:35:2

24   puppy, that he flew to Santa Barbara California to adopt.        09:35:2

25             (Telephone interference.)                             09:35:5
```

 1          THE COURT:  Hey, guys, phone participants, if this           09:36:1

 2  happens again, what we'll ask you to do is just redial in and       09:36:1

 3  we'll take it from there.  Let's see if it doesn't loop on us.       09:36:2

 4  But, if it does, I'll ask you to hang up and redial.                09:36:2

 5          So, anyway, we're taking bets on how much this               09:36:3

 6  puppy cost Mr. Roy to fly to Santa Barbara to purchase the dog      09:36:3

 7  from the breeder.  He has to sign all kinds of disclaimers as        09:36:4

 8  far as the care of the dog over its lifetime, et cetera.  So         09:36:4

 9  we're going to do an office pool.  If you all will just submit       09:36:5

10  your bets, that will be good.                                        09:36:5

11          Now let me introduce to you Mike O'Keefe's cousin           09:36:5

12  from Scotland.  Everybody say hi to Malcolm.  Malcolm is here in    09:37:0

13  the States for about a month, and is a law school graduate.  Is     09:37:1

14  getting ready to go into a two-year or a three-year -- two-year     09:37:1

15  internship, which will complete his education.  And then he'll      09:37:1

16  be a bona fide solicitor.                                            09:37:2

17          MR. MOIR:  Attorney.                                         09:37:3

18          THE COURT:  Attorney, solicitor, whatever.                   09:37:3

19          So he was in the deposition yesterday where you             09:37:3

20  all had some difficulty understanding a gentleman from Aberdeen.    09:37:3

21  And I'm going to suggest to you that Malcolm will be glad to        09:37:4

22  come over any time you need expert translation in any form of       09:37:4

23  Scottish, including Gallic.  So put him into your address books     09:37:5

24  if you need him in the future.                                       09:38:0

25          MR. MOIR:  I fly Business Class as well.                     09:38:0

```
 1              THE COURT:  Oh, yeah, he flies Business or First Class.    09:38:0
 2   Good point.                                                          09:38:1
 3              Okay.  Let's see where we are.  Busy week, huh?           09:38:1
 4              So we've taken care of removal of the Capping             09:38:2
 5   Stack and associated items at Michoud.                              09:38:2
 6              Captain Engelbert is working on loading the BOP           09:38:2
 7   and the LMRP in September.                                          09:38:3
 8              We got this morning from BP Michoud physical              09:38:4
 9   evidence summary.  It just came out a few minutes ago.  And I'm     09:38:4
10   going to ask everybody to take a look at their proposed schedule    09:38:4
11   for disposition of those items listed.  And why don't you, by      09:38:5
12   next Thursday, close of business, give us any comments that you    09:39:0
13   might have.  And we can work through that.                          09:39:0
14              We granted BP's request to extend the deadline for       09:39:1
15   items to be produced during the Phase Two trial to Monday.  And     09:39:1
16   so we'll wait to hear on that.                                      09:39:2
17         MR. FITCH:  Judge -- Tony Fitch, Anadarko -- on the          09:39:3
18   very general topic of extensions -- I'm segueing the best I can,    09:39:3
19   I have to say.                                                      09:39:4
20         MR. HAYCRAFT:  You heard the word extension.                 09:39:4
21         MR. O'ROURKE:  We want one, too.                             09:39:4
22         THE COURT:  It's like a stream of consciousness, you         09:39:5
23   know.                                                              09:39:5
24         MR. FITCH:  There was discussion I think last week          09:39:5
25   about extending all deadlines for a week, and I understood you     09:39:5
```

```
 1   to say that makes sense.                                        09:40:0

 2              I think it was not necessarily reflected in the      09:40:0

 3   schedule attached to the order regarding last week.  So I just  09:40:0

 4   wanted to make sure that that judgment is in force and will be  09:40:1

 5   reflected.                                                      09:40:1

 6         THE COURT:  I apologize, I thought we got out a further   09:40:1

 7   draft that extended the dates by a week.                        09:40:2

 8         MR. FITCH:  I do have to admit that one of my             09:40:2

 9   colleagues picked this up, and I haven't really checked it      09:40:2

10   myself.  But just out an abundance of caution.                  09:40:3

11         THE COURT:  Somebody tell me whether we got out a         09:40:3

12   further draft that extended the deadlines by a week.            09:40:3

13         MR. O'ROURKE:  Right.  July 22nd, Court's version --      09:40:3

14   this is Steve O'Rourke -- July 22nd, Court's version.  It       09:40:4

15   extended some of the deadlines.                                 09:40:4

16              I think Tony is of the impression that you were      09:40:4

17   going to extend everything.  It looks like you extended some of 09:40:5

18   the ones about identification of deposition and experts, but not 09:40:5

19   everything.  For example, motions in limine deadline, *Daubert* 09:40:5

20   deadline.  So I think that's the confusion.                     09:41:0

21         THE COURT:  Well, that's because I didn't understand      09:41:0

22   that everything would be extended by a week.  I thought it was  09:41:0

23   just the things that we were having a time crunch with.         09:41:1

24         MR. FITCH:  That may be.  My understanding may be a       09:41:1

25   little limited.                                                 09:41:1
```

```
1            THE COURT:  The dates that I extended were the dates      09:41:2

2    that I thought we agreed needed to be extended because we were    09:41:2

3    facing a real time crunch there.  If you all think other dates    09:41:2

4    need to be extended, let's talk about it when we get to that      09:41:3

5    portion of the agenda; okay?                                      09:41:3

6            All right.  Sarah's not on the line to give us an         09:41:4

7    update on designation -- deposition designations.  Anybody want   09:41:4

8    to update us on that?                                             09:41:5

9            Rob?  You got the likely candidate.                       09:41:5

10           MR. GASAWAY:  I think I heard Joe Russell on the line,     09:42:0

11   who handles that issue for us.                                    09:42:0

12           Joe, do you want to give a quick update?                  09:42:0

13           MR. RUSSELL:  Yes.  We completed all the designations     09:42:1

14   except for the advocacy summaries for Lawler, Gansert and         09:42:1

15   Skripnikova, which are due today.  And then we only have          09:42:2

16   Graettinger left, and then the designation process will be        09:43:2

17   officially complete.                                              09:42:2

18           THE COURT:  That's terrific.                              09:42:2

19           And, as soon as it's complete, do we have                 09:42:3

20   agreement that the bundles can be submitted to Judge Barbier to   09:42:3

21   start looking at?                                                 09:42:4

22           MR. GASAWAY:  Well, Your Honor, I think Brian was going   09:42:4

23   to talk a little bit about timing.                               09:42:4

24           And, going back to Tony's segue, one of the dates         09:42:4

25   that I think is going to need to be adjusted from the order, the  09:42:5
```

```
 1    Court's version that you sent on Monday --              09:42:5

 2            THE COURT:  Yes.                                 09:42:5

 3            MR. GASAWAY:  -- is you had August 7th for announce  09:43:0

 4    final deposition bundle.  That's actually, given the shifting,  09:43:0

 5    before people are going to choose the bundles.  So Brian was  09:43:1

 6    going to suggest shifting that back.  And he had a date that we  09:43:1

 7    agreed to.                                               09:43:1

 8                And what we had thought would be -- as Joe said,  09:43:2

 9    we're going to have all of the work done except for Graettinger  09:43:2

10    this week.  Graettinger will come in Friday of next week.  So,  09:43:2

11    when you announce that, we were assuming that that would be I  09:43:3

12    think on August 13th on Brian's schedule.  But, whatever he  09:43:3

13    proposed, we agreed to.  Just, when you announce that, there  09:43:3

14    will be a list of X, something less than 60.  And, at that  09:43:4

15    point, all of the work will be done, and we can just coordinate  09:43:4

16    with Kim or whoever the coordination point is to get those over  09:43:5

17    to Judge Barbier and to Ben.                             09:43:5

18            THE COURT:  Okay.  Good.                         09:43:5

19                You want to discuss that date while we're on the  09:43:5

20    topic?                                                   09:44:0

21            MR. GASAWAY:  Sure.  Brian proposed --           09:44:0

22                Brian, am I right, that you were going to propose  09:44:0

23    the 13th on that?                                        09:44:0

24                And then we had a couple other dates.         09:44:0

25            MR. BARR:  Yes, Your Honor.                      09:44:1
```

```
 1              THE COURT:  Good morning, Brian.                    09:44:1

 2              MR. BARR:  Good morning, Your Honor.  Brian Barr for 09:44:1

 3   the PSC.                                                        09:44:1

 4                  Under the last timeline that came up from the    09:44:1

 5   Court, we had August 7th as the announce deposition bundles.   09:44:2

 6   But dates for the deadline for all parties to submit in-camera 09:44:2

 7   lists of 30(b)(6) and fact witnesses was 8/12.  So we were     09:44:3

 8   proposing that the announce day come the date after that, on the 09:44:3

 9   13.  Which also flows in well with the August 14th date to     09:44:3

10   disclose experts.  So you'll have a good idea then.  So we      09:44:4

11   thought the August 13th date worked well.                      09:44:4

12              THE COURT:  Good.  Appreciate that.  Thank you.     09:44:5

13              MR. BARR:  No problem, Your Honor.                   09:44:5

14              THE COURT:  Okay.  We are working our way through the 09:44:5

15   documents that are being submitted in-camera by BP.  We expect 09:45:0

16   the last production to us this coming Tuesday.  And we'll try to 09:45:0

17   act on that promptly.                                          09:45:1

18                  Let's see.  Does anybody want to give us an update 09:45:1

19   on the meet-and-confer between BP and Halliburton with regard to 09:45:2

20   the -- is it Stevick, S-T-E-V-I-C-K -- issues?                 09:45:2

21              MR. GASAWAY:  Yes, Your Honor.  Rob Gasaway for BP.  09:45:3

22                  I believe it's Stevick.                         09:45:4

23              THE COURT:  Been saying Stevick, but I've heard people 09:45:4

24   say Stevick.                                                   09:45:4

25              MR. BARR:  Yesterday, in the deposition, he said    09:45:5
```

1   Stevick.                                                                09:45:5

2         THE COURT:  Mr. Stevick believes his name is pronounced          09:45:5

3   Stevick?                                                               09:45:5

4         MR. BARR:  Yes, Your Honor.                                      09:45:5

5         THE COURT:  Okay.  Then I'm going with Stevick.                  09:45:5

6         MR. GODWIN:  That's what he said yesterday, Judge.               09:46:0

7         THE COURT:  Mr. Stevick.                                         09:46:0

8         MR. GASAWAY:  I think the bottom line is fairly quick            09:46:0

9   and clear.  We had a further meet-and-confer.  I think we made         09:46:0

10  progress but didn't get all the way there.  And so I believe          09:46:1

11  that Halliburton submitted on Tuesday evening in multiple parts       09:46:1

12  their response to -- or their reply brief to the response to our      09:46:1

13  motion.                                                               09:46:2

14         I think they took some of the issues off the table            09:46:2

15  that you would have had to decide if we had just gone forward.        09:46:2

16  But I think there are still some remaining issues to be decided,      09:46:2

17  and I'll let Don or Bruce speak.  But, unless there's something       09:46:3

18  else, I think it's just teed up for you and Mike to take a look       09:46:3

19  at.                                                                   09:46:3

20         THE COURT:  Good.  Okay.  Thank you.                           09:46:3

21         MR. BOWMAN:  Bruce Bowman for Halliburton.                      09:46:4

22         We agree with that.                                            09:46:4

23         And, actually, Mr. Stevick's deposition has been               09:46:4

24  going forward yesterday and will be finished up today.                09:46:4

25         THE COURT:  Okay.  And is BP going to reply, or are you         09:46:5

1    just ready to roll?                                                    09:46:5

2            MR. GASAWAY:  We're ready to roll, Your Honor.                 09:46:5

3            THE COURT:  Sarah, would you do me a favor and take the        09:47:0

4    Dalmatian off?                                                        09:47:0

5            MS. HEMMELHOCH:  You're going to make me look at myself        09:47:0

6    on the big screen?  Oh, my.                                           09:47:0

7                    I won't tell you what I ordered for lunch that         09:47:1

8    day.                                                                  09:47:1

9            THE COURT:  Why don't you want to tell me what you            09:47:1

10   ordered?                                                              09:47:1

11           MS. HEMMELHOCH:  Given the picture, I don't want people        09:47:2

12   to know what I'm eating.                                              09:47:2

13           THE COURT:  Welcome to New Orleans.  Whatever.                09:47:2

14                    BP advised I think yesterday that they were going     09:47:2

15   to pull down Dr. Torres-Verdin as a quantification expert.  So       09:47:3

16   there will not be a deposition only July 30/31.                       09:47:3

17                    Then we had some correspondence from Steve           09:47:4

18   O'Rourke relative to whether BP will be relying on any portion       09:47:4

19   of his report.                                                       09:47:5

20                    And, Rob, you replied no.                           09:47:5

21           MR. GASAWAY:  Correct, Your Honor.                           09:47:5

22           THE COURT:  So where does that leave us?                     09:47:5

23           MR. GASAWAY:  Well, that leaves us with just the issue        09:47:5

24   that we had with Dr. Marsh when we pulled her down, is pulling       09:48:0

25   down the rebuttal sections in rebuttal to the pulldown experts.      09:48:0

 1    We made some suggestions that we sent over to Steve, and I          09:48:1

 2    talked to him before.  And it probably makes sense for Steve and    09:48:1

 3    I to go a couple rounds on that.                                    09:48:1

 4         THE COURT:  Good.  Okay.  That takes care of that.             09:48:1

 5              We entered the order with regard to                       09:48:2

 6    confidentiality of communications among the aligned parties.  So    09:48:2

 7    that's taken care of.                                               09:48:2

 8              We've had a lot going on with regard to motions in        09:48:3

 9    limine.  Most recently, it's the Anadarko motion.                   09:48:3

10              Rob, you've got something on that?  You're up.            09:48:4

11         MR. GASAWAY:  Your Honor, something else you may have          09:48:4

12    seen late last night on motions in limine.  And this goes to the    09:48:5

13    request that you had for us organizing the process.  So I was       09:48:5

14    just going to give an overview, if that might be helpful.           09:49:0

15         THE COURT:  Good.  Let's go ahead and do that.                 09:49:0

16         MR. GASAWAY:  I think there's maybe three categories,          09:49:0

17    as we looked at that, of motions in limine.                         09:49:0

18              There are uncontested Phase One motions in limine         09:49:1

19    that we think can go forward.  And Joe Eisert sent you an email     09:49:1

20    last night with a proposed order.                                   09:49:1

21         THE COURT:  Right.                                             09:49:2

22         MR. GASAWAY:  Attaching the Phase One.  So we think            09:49:2

23    those are non-controversial, and they can be entered.              09:49:2

24              There's a second group that I would call Phase One        09:49:2

25    carry-over but that are objected to.                                09:49:3

1          And then obviously there is a third group that are          09:49:3

2    pure Phase Two.  You asked that they be submitted on a rolling    09:49:3

3    basis.  Anadarko as submitted one, and obviously all the parties  09:49:4

4    have one.                                                         09:49:4

5          Brian was thinking that it might make sense to              09:49:4

6    build in an extra week somewhere in the motion in limine          09:49:5

7    schedule, given that we have a little bit more time.  I know       09:49:5

8    Judge Barbier wants to look at them.                              09:49:5

9          You also asked us about meet-and-confer.  And so            09:50:0

10   one idea that we were going to throw out there was to sort of      09:50:0

11   follow the process that we were just talking about with Mr.        09:50:0

12   Stevick where we would still go ahead and file our motions on      09:50:1

13   the 12th; but, as you know, we'd continue to meet-and-confer.      09:50:1

14   Maybe have an extra week for response.  Because some of these      09:50:1

15   motions, after they're filed, it may well be that they can be      09:50:2

16   worked out.  But our experience with some of these very           09:50:2

17   technical types of nitty-gritty motions about apply Phase One      09:50:3

18   order to Phase Two or here's some deposition testimony that       09:50:3

19   shouldn't come in, those types of things, sometimes it's easier   09:50:3

20   to do a meet-and-confer after a party has put down their case in  09:50:4

21   chief on paper.                                                   09:50:4

22          So we were hoping that we could go ahead and knock         09:50:4

23   off the easy ones from Phase One per Joe's email, maybe build in  09:50:5

24   an extra week into the schedule.  And Joe Russell, now that the   09:50:5

25   deposition designation process has come to a halt, has offered    09:51:0

1   to coordinate with the other parties and with the Court and sort                09:51:0

2   of just keeping track of motions in limine, because there could                09:51:1

3   be a number of them, and helping Your Honor and Mike manage that               09:51:1

4   process.  So those are some of our organizational thoughts.                    09:51:1

5           THE COURT:  So you all are suggesting, instead of 8/22                  09:51:2

6   for the opposition to motions in limine, it be 8/29, and then we               09:51:2

7   build in a meet-and-confer period?                                             09:51:3

8           MR. GASAWAY:  Yeah.  You build a meet-and-confer in                     09:51:3

9   there.  Obviously, the reply brief would have to be kicked as                  09:51:3

10  well a week.  But that's what we were thinking, is keep the                     09:51:3

11  August 12th for the initial filings.                                           09:51:4

12          And, in that initial group of filings, we would                        09:51:4

13  just go ahead and file motions on all of our Phase One that had                09:51:4

14  been objected to.  We'll explain why we think it should carry                  09:51:5

15  over.  People can see that.  Either they can continue their                    09:51:5

16  objection or pull it down.                                                     09:51:5

17          THE COURT:  Okay, good.                                                09:51:5

18          Brian.                                                                 09:51:5

19          MR. BARR:  Brian Barr for the PSC, Your Honor.                         09:52:0

20          On the August 12 date, what we were thinking is to                     09:52:0

21  move that deadline for filing the motions back one week for                    09:52:0

22  several reasons.                                                               09:52:1

23          One, it will help in the discussions on possible                       09:52:1

24  Phase Two stipulations.  And it could eliminate several issues,                09:52:1

25  if we get some stipulations done, that people then will have                   09:52:2

1    filed motions on and wasted a bunch of time doing that.                09:52:2

2                  Two, when we've got the disclosure of the bundles       09:52:2

3    and the experts after the motions in limine, I think it makes a       09:52:3

4    little more sense to actually see what people are planning on         09:52:3

5    doing on paper and what they disclose before we file motions in       09:52:4

6    limine.  Because some of everybody's fears on what people may be      09:52:4

7    doing, you get the witnesses, you realize that's not happening.       09:52:5

8                  So, for those reasons, we think it makes a little       09:52:5

9    sense to push that date past those dates and move it the week.        09:52:5

10          THE COURT:  So you're proposal is a little different           09:53:0

11   than Rob's.                                                            09:53:0

12                  Rob, as I understood it, was proposing that we          09:53:0

13   keep the August 12th deadline and then move the response date         09:53:0

14   back a week so that you all could meet-and-confer.                     09:53:1

15                  How about something like this:  That everybody         09:53:2

16   reveal what they think their in-limines are going to be on the        09:53:2

17   12th so everybody get gets a preview, and then you have a             09:53:3

18   meet-and-confer week where you see if you can resolve some of         09:53:3

19   those by stipulation or otherwise.  And then the filing deadline      09:53:3

20   would be the 19th.                                                     09:53:4

21          MR. BARR:  To file the actual motion?                          09:53:5

22          THE COURT:  Yes.  If you can't take them off.                  09:53:5

23          MR. BARR:  That would work for us, I think.                    09:53:5

24          THE COURT:  Rob, would that work for you?                      09:53:5

25          MR. GASAWAY:  That works for us, Your Honor.                   09:54:0

```
1              THE COURT:  Okay.  Then let's talk about where that        09:54:0

2  leaves the opposition.                                                 09:54:0

3              MR. O'ROURKE:  Your Honor, if I may interrupt.  This is    09:54:0

4  Steve O'Rourke.                                                        09:54:0

5                  We tend to agree with Mr. Barr, why should we file     09:54:1

6  motions about witnesses only to find out that they're not             09:54:1

7  coming.  It's just a waste of resources.                              09:54:1

8              THE COURT:  No.  All you would do is reveal on the 12th    09:54:2

9  what motions you're contemplating.  Not filing.  But just let         09:54:2

10 everybody know:  We're contemplating these motions.                   09:54:2

11             MS. HEMMELHOCH:  Your Honor, I'm sorry.  This is Sarah     09:54:3

12 -- I'm going to owe him more beer money.                              09:54:3

13             THE COURT:  How much is he up to?                          09:54:3

14             MS. HEMMELHOCH:  He's worked off some of it already.      09:54:4

15             MR. O'ROURKE:  She took me to Sylvain's two nights ago.    09:54:4

16             THE COURT:  Nice.                                          09:54:4

17             MS. HEMMELHOCH:  I guess what you're saying is, what       09:54:4

18 motions in limine you might file are really driven by what            09:54:5

19 evidence you expect the other side to offer.  And we know that        09:54:5

20 we've got some game changing events that are going to happen          09:54:5

21 after the 12th.                                                       09:55:0

22                 And it strikes me as an odd procedure to reveal a     09:55:0

23 strategy in response to an evidentiary expectation that we know       09:55:0

24 is going to significantly change in subsequent days.                  09:55:1

25             THE COURT:  Okay.  So the 14th being the pivotal date.    09:55:1
```

```
 1              MS. HEMMELHOCH:  Yes, Your Honor.                09:55:2

 2              MR. GASAWAY:  I tried to keep it there; but, look, I'm   09:55:2

 3  hearing pushback.  So maybe, if we can just say the deadline for  09:55:2

 4  motions in limine would be the 19th, would that be agreeable?   09:55:2

 5              MR. BARR:  Yes.  That's fine with us.            09:55:3

 6              MR. O'ROURKE:  Thanks.                           09:55:3

 7              MR. GASAWAY:  So let's say the deadline is the 19th,   09:55:3

 8  we'll all file on the 19th.                                  09:55:4

 9              If within Judge Barbier's parameters of when he   09:55:4

10  wants to get this in chamber, if there's a little bit more time   09:55:4

11  in there even filing on the 19th that we could build into the   09:55:5

12  response --                                                  09:56:0

13              THE COURT:  Yes.  Right now, we've got the oppositions,   09:56:0

14  as we discussed a few minutes ago, set for the 29th.  So that's   09:56:0

15  a ten-day gap.  Would be the 19th to the 29th.               09:56:0

16              MR. GASAWAY:  So that's a Thursday.              09:56:1

17              And then, I guess, is the following Monday Labor   09:56:1

18  Day?                                                         09:56:2

19              THE COURT:  Yes.                                 09:56:2

20              MR. GASAWAY:  Maybe if we would put it on the Tuesday   09:56:2

21  after Labor Day?  I don't know if that would be agreeable to the   09:56:2

22  Court.                                                       09:56:2

23              THE COURT:  And then a week later for the replies?   09:56:3

24              MR. GASAWAY:  Right.                             09:56:4

25              THE COURT:  That would be the 10th.  Giving Judge   09:56:5
```

1   Barbier about two weeks to go through whatever's left.          09:57:1

2                 I'm going to pass.                                  09:57:1

3            MR. GASAWAY:  Okay.  Thank you, Your Honor.            09:57:2

4            THE COURT:  All right.                                   09:57:2

5            MR. FITCH:  Tony Fitch, Anadarko.                        09:57:2

6                 Whatever change is made, Anadarko -- or just the    09:57:2

7   Court, not the change -- the requirement for an opposition to    09:57:3

8   motions in limine that have been filed earlier than the          09:57:3

9   deadline, such as the pending Anadarko motion, not change the    09:57:3

10  deadline for ten days for opposition.  And that of course refers 09:57:4

11  specifically to the correspondence between Steve and Anadarko to 09:57:5

12  you last night.  We have filed that motion, and we frankly want  09:57:5

13  to see the opposition.  And we want it to get to Judge           09:58:0

14  Barbier --                                                       09:58:0

15           THE COURT:  Okay.                                        09:58:0

16           MR. FITCH:  -- for the reasons stated in our letter     09:58:1

17  last night.                                                      09:58:1

18           THE COURT:  Right.                                       09:58:1

19                And, I have to admit, I've read all the            09:58:1

20  correspondence -- come on up, Steve -- and I'm not really sure I 09:58:1

21  understand it all.  But does that surprise anyone?               09:58:2

22                Steve, you all seem to think that Anadarko's       09:58:2

23  motion relates specifically to Phase Three and that it should    09:58:3

24  not be briefed now but rather held until Phase Three.            09:58:3

25           MR. O'ROURKE:  Yes, Your Honor, that's correct.  It     09:58:4

 1    relates to a motion from Phase One where Anadarko was dismissed          09:58:4

 2    from the general maritime law claims.  That was two years ago.           09:58:4

 3    They're trying to use that to make a commentary on what                   09:58:5

 4    culpability means in the Clean Water Act penalty factors.  As             09:58:5

 5    you know, the penalty phase is Phase Three.                              09:58:5

 6              So we think the motion is -- we're happy to oppose             09:59:0

 7    the motion; we just don't think we should have do it now in              09:59:0

 8    front of Phase Two when we're busy on a bunch of other matters.          09:59:0

 9    The timing is a little suspect.  The order is two years old.  We         09:59:1

10    have depositions.  We have opposition due to their appeal today,          09:59:1

11    experts and on so.                                                       09:59:2

12              But, more to the point, it doesn't relate to Phase            09:59:2

13    Two.  We sent them an email saying we won't argue culpability in         09:59:2

14    Phase Two.  Their gripe appears, that was an email, it wasn't a          09:59:2

15    stipulation.  And, this is an important point of protocol here,          09:59:3

16    we do this case by email.  Rob emailed me this morning and said:         09:59:3

17    We won't have other experts rely on Dr. Carlos Torres-Verdin.            09:59:4

18    Am I supposed to make him sign a stipulation and is he going to          09:59:4

19    file a motion?  No.  He sent me an email, and I'm relying on it.         09:59:5

20    I sent Anadarko an email, and they should rely on it.  That's           09:59:5

21    their only compliant about how this applies to Phase Two, is            09:59:5

22    that it was an email, not a stipulation.                                 10:00:0

23              And they haven't identified any evidence, expert,             10:00:0

24    exhibit or depo, that's going to change in Phase Two even if            10:00:0

25    they win this motion.                                                    10:00:1

1    So that's why it's a Phase Three motion.  We    10:00:1

2  request that you set the briefing after the Phase Two trial.    10:00:1

3  We'll be happy to brief it on that schedule.    10:00:1

4    THE COURT:  Tony.    10:00:2

5    MR. FITCH:  If I may, Judge.    10:00:2

6    It could be a Phase Three motion, but it is a    10:00:2

7  Phase Two motion.  We understand that Judge Barbier is likely    10:00:2

8  not to want to address the culpability or degree of culpability    10:00:2

9  issue as it pertains to one of the penalty factors specified in    10:00:3

10  the Clean Water Act.  We'd rather he do so, but he's probably    10:00:4

11  not.    10:00:4

12    But, taking all that aside, there is a Phase Two    10:00:4

13  aspect to it.  And the United States' representations -- which I    10:00:5

14  accept 101 percent -- nevertheless, such as they are,    10:00:5

15  nevertheless are ambiguous as to what they may try to introduce    10:01:0

16  as evidence in parts of the Phase Two trial.  That's what we    10:01:0

17  need to get resolved.    10:01:1

18    And we think that, given the circumstances, I    10:01:1

19  think, that have developed, that it is now requisite to move on    10:01:1

20  to the formal motion stage, as we have done.  And the formal    10:01:2

21  ruling stage.    10:01:2

22    THE COURT:  Okay.  Thanks.    10:01:2

23    I have not spoken to Judge Barbier about this; the    10:01:3

24  lucky dog is on vacation.  And so I probably will speak to him    10:01:3

25  at some point today, and try to get back to you all as to what    10:01:4

1    he thinks he wants to do.  Okay?                              10:01:4

2              MR. O'ROURKE:  Thank you.                           10:01:4

3              THE COURT:  All right.  We got from BP today the    10:01:4

4    proposed order making Phase One orders applicable to Phase Two.  10:01:5

5    There turns out to be four that everybody can either agree on or  10:02:0

6    not object to, the way I'm looking at it.  Not objecting to   10:02:0

7    means you agree.  So would you all take a look at that?       10:02:1

8              If there is any problem with that, could you -- or  10:02:1

9    any modifications to the order, could you let us know that by  10:02:1

10   Monday?                                                       10:02:2

11             If we don't have any comments by Monday, we'll go   10:02:2

12   ahead and enter that.                                         10:02:2

13             Rob, you reported that there's still                10:02:2

14   meet-and-confers going on with regard to the others, and we'll  10:02:3

15   just continue to keep that on the list.                       10:02:3

16             Let's get an update on the Phase Two exhibit list.  10:02:4

17   Anything we need to talk about as far as the categories of    10:02:4

18   exhibits or how we're coming on that?                         10:02:5

19             Sarah.                                               10:02:5

20        MS. HEMMELHOCH:  What I would report is we're still      10:02:5

21   working on it, Your Honor.  We're talking.                    10:02:5

22             The one thing that I think I know that the US and   10:02:5

23   PSC in particular, and I suspect others might agree with, is  10:03:0

24   we'd like to have another week.  We'd like to push those exhibit  10:03:0

25   deadlines another week, like we moved everything else.  And the  10:03:1

| | | |
|---|---|---|
| 1 | reason for that has to do with the magic date of August 14th | 10:03:1 |
| 2 | that we talked about earlier, of which exhibits you're going to | 10:03:1 |
| 3 | use is really affected by the rest of the Phase Two trial | 10:03:2 |
| 4 | planning and which experts you're going to call, et cetera.  So | 10:03:2 |
| 5 | we'd like that extra week.  We're still talking. | 10:03:2 |
| 6 | I think where we really are is the PSC and the | 10:03:3 |
| 7 | United States think there's a category of documents that | 10:03:3 |
| 8 | everybody has on their exhibit list, that nobody has objected | 10:03:3 |
| 9 | to, that those should just come in.  That, there should not be | 10:03:3 |
| 10 | some long convoluted process. | 10:03:4 |
| 11 | BP, I can't really tell whether they're resisting | 10:03:4 |
| 12 | that happening at all, or they're resisting the timing of it. | 10:03:4 |
| 13 | But we're still in the process of talking that | 10:03:5 |
| 14 | through.  And also talking through the other exhibit related | 10:03:5 |
| 15 | issues that come out of the extreme limitations on depos. | 10:03:5 |
| 16 | But we're working on it.  We'll report progress as | 10:04:0 |
| 17 | we make it. | 10:04:0 |
| 18 | THE COURT:  Okay, good. | 10:04:0 |
| 19 | Brian. | 10:04:0 |
| 20 | MR. NOMELLINI:  Your Honor, it's Mark Nomellini.  Good | 10:04:0 |
| 21 | morning. | 10:04:1 |
| 22 | THE COURT:  Good morning, Mark. | 10:04:1 |
| 23 | MR. NOMELLINI:  I had a good conversation with Anthony | 10:04:1 |
| 24 | the other day, and we identified where we have common ground and | 10:04:1 |
| 25 | where we can continue to get more common ground. | 10:04:2 |

1        We agree that we should not have any long

2   convoluted processes.  And so Anthony and I and hopefully also

3   the United States plan to keep discussing it and figuring out,

4   fast-forward.

5              THE COURT:  Good, good, good.

6              Brian.

7        MR. BARR:  Your Honor, Brian Barr.

8              I think what we really need -- we're two months

9   from the start of the trial, and we're still going back and

10  forth on what the process is going to look like for exhibits.

11  Which makes things very difficult to plan for.

12             I think what we need is a commitment from

13  everybody that they either agree or don't agree with the idea

14  that we would pre-admit exhibits that people don't object to.

15  When you look at your exhibits, you recognize that a foundation

16  either has or could be laid for that exhibit and that it should

17  come in.  We can put numerical limits on that.  There's lots of

18  ways what we can do.

19             But the crux of the issue seems to be, the

20  aligning parties and the United States all believe that we

21  should do like we do in most federal trials, and the parties get

22  together and do work that the Court shouldn't have to do and

23  agree that certain exhibits come in.  And not this -- and BP

24  seems to believe that we shouldn't do that.  That we should:

25  Let's see how things play out during the trial and what comes in

 1    during the trial; and then, at the close of the trial, do some          10:05:5

 2    clean-up process.                                                       10:06:0

 3              And it's our position that it just makes more                 10:06:0

 4    sense, particularly given reflecting back on how we did Phase           10:06:0

 5    Two discovery, we all agreed to do 30(b)(6) depositions, but one        10:06:0

 6    of the underlying premises of the entire process was an                 10:06:1

 7    understanding that the parties had to be reasonable about               10:06:1

 8    exhibits when it came to trial.  Because we understood that             10:06:1

 9    there were foundations in the context of 30(b)(6) depositions           10:06:2

10    that could not be laid and that people needed to look at it from        10:06:2

11    the prism of foundations could be laid.                                 10:06:2

12              And we need to know coming into this trial if the             10:06:3

13    parties are going to be reasonable or not reasonable.  And,             10:06:3

14    right now, it's all kind of in the nether, and we're two months         10:06:3

15    out.                                                                    10:06:4

16              And so that's why we're kind of looking for a                 10:06:4

17    direction that says:  This is how the Court wants to do it, the         10:06:4

18    Court wants the parties to do the work the Court shouldn't have         10:06:4

19    to do and agree that a certain number of exhibits should be             10:06:5

20    pre-admitted.                                                           10:06:5

21         MR. NOMELLINI:  Your Honor, it's Mark.                             10:06:5

22              First of all, in terms of whether it's our view              10:07:0

23    that people should be reasonable, yes, absolutely.  But I think        10:07:0

24    a number of things are getting glommed together here in terms of       10:07:0

25    what's normally done.                                                   10:07:1

```
 1                There are three things at issue.                    10:07:1

 2                One is agreeing where the parties can withdraw      10:07:1

 3   objections.                                                      10:07:1

 4                Two is the concept of having some exhibits come in  10:07:2

 5   without witnesses.                                               10:07:2

 6                And three is pre-admitting a bunch of exhibits      10:07:2

 7   before trial.                                                    10:07:2

 8                The first one, getting together to withdraw         10:07:2

 9   objections, we all agree on that.  And that is common.  And it   10:07:3

10   should be encouraged as much as possible.                       10:07:3

11                Number two is having a concept of witness list      10:07:4

12   documents.  We had that in Phase One.  And, I thought that       10:07:4

13   worked pretty well, and we're amenable to exploring that here.   10:07:5

14                But, number three, the suggestion that, in all      10:07:5

15   trials, there is a bunch of exhibits that are admitted before    10:07:5

16   trial, I don't think that is a common practice.  And that's      10:08:0

17   where we're very different from Phase One.                       10:08:0

18                But, as Anthony and I were talking about earlier    10:08:1

19   this week, we're going to continue to talk through that.  We     10:08:1

20   want to avoid some kind of document dump, and we haven't heard   10:08:2

21   -- I'd be interested in hearing what Brian proposes to be the    10:08:2

22   limit.                                                           10:08:3

23                But we think the way to do that is to see first,    10:08:3

24   once the depositions get out of the way, what gets out of the    10:08:3

25   way at the trial.  And, that way, don't have to be               10:08:4
```

 1   over-inclusive about what we provide to the Court.  And we'll      10:08:4

 2   know about that as we know more about depositions and witnesses,   10:08:5

 3   et cetera.                                                         10:08:5

 4          THE COURT:  Okay.                                           10:08:5

 5          MS. HEMMELHOCH:  I think, Your Honor, what I would          10:08:5

 6   recommend is that the parties be given until the end of next       10:08:5

 7   week to try and work out a process.                                10:09:0

 8              And, if we haven't, we will report that to you at       10:09:0

 9   the telephonic status conference and ask you -- or working group   10:09:0

10   conference -- and ask you to set a call with you to bump our       10:09:1

11   heads together until we can work out a process for exhibits, if    10:09:1

12   that makes any sense.                                              10:09:1

13          THE COURT:  Sounds good.                                   10:09:1

14              Rob, that okay by you?                                  10:09:2

15          MR. GASAWAY:  Your Honor, it is.                           10:09:2

16              I was just going to go do some math and make a          10:09:2

17   suggestion for the timing of that conference.                      10:09:2

18              Let's look at it this way.  That magic date of the      10:09:2

19   14th.  By the date of the 14th, we're going to have up to 60       10:09:3

20   30(b)(6) and fact depositions.  We're going to have 24 expert      10:09:3

21   depositions.                                                       10:09:3

22              Brian's going to give you a suggestion that             10:09:4

23   ensures that all will-call testimony will come in either live or   10:09:4

24   by deposition.                                                     10:09:4

25              So we're going to have a list of approximately 100      10:09:4

1    witnesses that, you know, barring motions in limine, et cetera,      10:09:5

2    we know are very likely to be part of this trial in some form.      10:09:5

3    And that's going to give us a basis, I think, for a heck of a       10:09:5

4    lot of exhibits.                                                    10:10:0

5              And what I would suggest is, after the 14th, we          10:10:0

6    start with that 100 witnesses, all of their associated             10:10:0

7    exhibits -- maybe Brian has other things that are still            10:10:1

8    freestanding.  I know he does.                                     10:10:1

9              But let's split that meet-and-confer, if you're          10:10:1

10   going to do it, in two parts:  What are we going to do with all    10:10:2

11   witnesses we know, and let's hear about a specific proposal for    10:10:2

12   the freestanding exhibits or not, you know, admitted               10:10:2

13   depositions, which are of great concern to them, and we can        10:10:3

14   respond to that.                                                   10:10:3

15             But I do think that a lot of the controversy about       10:10:3

16   specific documents may be alleviated when we're just looking at    10:10:4

17   a list of 100 witnesses and all of the exhibits that are           10:10:4

18   entailed by their depositions and saying to ourselves:  This is    10:10:4

19   a whole lot of stuff, how much more stuff is there that they       10:10:5

20   want to have pre-admitted before trial?                            10:10:5

21       MS. HEMMELHOCH:  Forgive my paranoia, Your Honor, but          10:10:5

22   he made reference to expert depositions.                           10:11:0

23             My understanding is that, unless there's a paper         10:11:0

24   expert, in the words of my colleague, Mr. O'Rourke, expert         10:11:0

25   depositions are not coming in except as cross examination          10:11:1

1    materials.  And I just want to confirm that.                  10:11:1

2          MR. GASAWAY:  Yeah.  If I said depositions, what I      10:11:1

3    meant was, we have a list, we're going to have a list of 100  10:11:1

4    witnesses.  If I used the word depositions --                 10:11:2

5          THE COURT:  Who'll be coming either live or by          10:11:2

6    deposition.                                                   10:11:2

7          MR. GASAWAY:  Exactly.                                  10:11:2

8              And that is my point about the will-call proposal   10:11:2

9    that Brian has.  He has a proposal that he's going to give that 10:11:3

10   says, if a witness was supposed to come live that doesn't, it's 10:11:3

11   going to be a deposition.                                     10:11:3

12             So, anyway, my point is, we're going to have 100    10:11:3

13   witnesses that are likely to come to trial in one form or     10:11:4

14   another.                                                      10:11:4

15         THE COURT:  And so your paranoia was well-founded but   10:11:4

16   clarified.  We clarified it.                                  10:11:5

17         MS. HEMMELHOCH:  Yep.  Thank you, Your Honor.           10:11:5

18         THE COURT:  And so what he's talking about is live and  10:11:5

19   by deposition.                                                10:11:5

20         MR. GASAWAY:  Right.                                    10:11:5

21         THE COURT:  Okay.  Brian.                               10:11:5

22         MR. BARR:  And, Your Honor, I think this is probably a  10:12:0

23   better segue than the one Tony tried to do earlier since Rob  10:12:0

24   specifically brought it up.                                   10:12:0

25         MR. FITCH:  Please.                                     10:12:0

```
 1                  THE COURT:  Wait.  Your heard a word that you can          10:12:0

 2   follow-up on?                                                            10:12:1

 3                  MR. BARR:  I think Rob bought up a point I was going to    10:12:1

 4   raise.                                                                   10:12:1

 5                      We are proposing -- and I don't think this is         10:12:1

 6   controversial, it was done in Phase One -- if somebody is a              10:12:1

 7   will-call witness and they decide during trial, prior to trial,          10:12:2

 8   whatever, that they're not going to call that witness, then the          10:12:2

 9   adverse parties then have the right to either say no, you still          10:12:3

10   have to bring him, or his bundle goes in and that bundle does            10:12:3

11   not count against the 15.  Because we're all relying upon those          10:12:3

12   will-call lists.                                                         10:12:4

13                  And I think BP is okay with that.                         10:12:4

14                  THE COURT:  Rob is nodding his head affirmatively.        10:12:4

15                  MS. KARIS:  Your Honor, this is Kerry Karis.              10:12:5

16                      The only modification I'd like to make there is,      10:12:5

17   we're talking about fact witnesses and not experts, I'm                  10:12:5

18   assuming.                                                                10:12:5

19                  MR. BARR:  That's my --                                   10:13:0

20                  MS. KARIS:  Because the rule in Phase One was you can     10:13:0

21   drop your expert at any time, it doesn't allow the other parties        10:13:0

22   to call him.  It's fact a witness.                                       10:13:1

23                  THE COURT:  My hesitation is to see what Brian's          10:13:1

24   response was.                                                            10:13:1

25                      That is my understanding, is that the rule with       10:13:1
```

1    regard to experts remains the same as in Phase One.                    10:13:2

2              And, with regard to fact witnesses, Brian's               10:13:2

3    proposal here is the same as we did in Phase One.                   10:13:2

4              MR. BARR:  That's correct, Your Honor.                    10:13:3

5              THE COURT:  If everybody agrees, we're just going to      10:13:3

6    adopt the same procedure for experts and for fact witnesses as      10:13:3

7    we used in Phase One.                                               10:13:4

8              MR. BARR:  Correct.                                       10:13:4

9              And then, on the exhibit list issue -- and maybe          10:13:4

10   we need to be tighter with our language.  We're not talking         10:13:5

11   about, you know, a week before trial, pre-admitting a bunch of      10:13:5

12   stuff.  We're talking about a group of exhibits that the entire     10:13:5

13   parties agree can be admitted and will be admitted.  It doesn't     10:14:0

14   matter functionally when we do it.  We could do it at the close     10:14:0

15   of trial.                                                           10:14:1

16             THE COURT:  You don't care whether it's done on Day One   10:14:1

17   or it's day -- how many trial days do we have?                      10:14:1

18             MR. BARR:  For source control, four.                      10:14:1

19             THE COURT:  -- or on Day Four.                            10:14:1

20             MR. BARR:  Exactly.                                       10:14:2

21             And it's just a process where all parties agree           10:14:2

22   that this group of exhibits -- and we can establish limits on       10:14:2

23   the numbers, like I said.  And maybe that's something we can        10:14:3

24   work out over the next week.  But it shouldn't be controversial     10:14:3

25   for us to look at groups of exhibits and say:  Yes, we agree        10:14:3

 1    that that's a document that can be admitted.                    10:14:3

 2          THE COURT:  Okay.  Why don't we drop the phrase           10:14:4

 3    pre-admit.  It seems to give some parties heartburn.            10:14:4

 4          MR. BARR:  I tend to do that for some reason.             10:14:5

 5          THE COURT:  And why don't we just talk about a group of   10:14:5

 6    exhibits that we all agree will be admitted with regard to the  10:14:5

 7    source control segment and then the quantification segment, even 10:15:0

 8    though we're not dividing our lists into those.                 10:15:0

 9          MR. BARR:  Exactly.                                       10:15:1

10          THE COURT:  All right.  And let's see what you all can    10:15:1

11    work out in the coming week.                                    10:15:1

12          MR. BARR:  Okay.  Thank you, Your Honor.                  10:15:1

13          THE COURT:  Thank you, Brian.                             10:15:1

14              Sarah.                                                10:15:2

15          MS. HEMMELHOCH:  I'd still like to put down a marker      10:15:2

16    for talking with BP about whether they're willing to identify  10:15:2

17    which they intend to offer in the source control phase and which 10:15:2

18    they intend to offer in the quantification phase.  Because the  10:15:2

19    US is presenting evidence in the quantification phase, and we   10:15:3

20    would like an opportunity to understand as much about BP's      10:15:3

21    quantification case as we're forced to disclose about ours.  And 10:15:3

22    that means it's only fair to us to know which are the ones that  10:15:4

23    they plan to enter during the phase in which we will be opposing 10:15:4

24    each other.                                                     10:15:4

25          THE COURT:  Okay.  Rob, you want to comment on that?      10:15:5

1    MR. GASAWAY:  Your Honor, I think, in general, that    10:15:5

2  goes against the grain that this is a single trial.  And,    10:16:0

3  obviously, there are many documents that have relevance to both    10:16:0

4  source control and quantification.    10:16:1

5         You remember the Motion to Strike where we were    10:16:1

6  talking about the reliance by United States' expert Kelkar and    10:16:1

7  what was a source control presentation?  And so we say that he    10:16:2

8  improperly relied on the source control presentation in order to    10:16:2

9  come up with his material balance estimate of quantification.    10:16:2

10  What is that document?  That document is very likely to be    10:16:3

11  relevant and discussed in both the source control segment and    10:16:3

12  the quantification segment.  It's going to be on somebody's    10:16:3

13  exhibit list, I would predict.  We'll see.  But I just don't    10:16:4

14  think there's anything to be gained by trying to parse out    10:16:4

15  separate exhibit lists for source control and quantification.    10:16:5

16  It's one trial.    10:16:5

17         And we had that rule for the depositions,    10:16:5

18  obviously.  Once the deposition comes in, it can be used for all    10:16:5

19  purposes.  We think it only makes sense to do the exhibits in a    10:17:0

20  similar fashion.    10:17:0

21    MS. HEMMELHOCH:  If you'll recall, Your Honor, we were    10:17:0

22  directed for significant periods of the discovery phase of this    10:17:1

23  litigation to assist BP in understanding what was a    10:17:1

24  quantification document in the United States' production.  They    10:17:1

25  saw at that time, when we were scheduled to have a single    10:17:2

```
1  completely unified trial, they saw a benefit from understanding    10:17:2

2  what we contented was quantification and what we contented was      10:17:2

3  not quantification.                                                 10:17:3

4         I think that same principle applies here where              10:17:3

5  what we're talking about -- I'm not saying they have to call it     10:17:3

6  a quantification or a source control document.  But there are       10:17:3

7  going to be documents that they intend to offer in the first        10:17:4

8  week during the source control phase and there are documents        10:17:4

9  they intend to offer during the last three weeks, and those         10:17:4

10 would be ones that we would like to have some understanding of      10:17:5

11 simply because it gives us as much insight into BP's                10:17:5

12 quantification case as we are being required by the rules to        10:18:0

13 give into ours.  And fairness is fairness.                          10:18:0

14         MR. GASAWAY:  Benefit is minimal, confusion is great.       10:18:1

15 I've got a great solution.                                          10:18:1

16         THE COURT:  What is that?                                   10:18:2

17         MR. GASAWAY:  Let's just do quantification first.  And,     10:18:2

18 that way, they'll see the whole quantification case.                10:18:2

19         MS. HEMMELHOCH:  Talk to your teammates about that,         10:18:3

20 Rob?                                                                10:18:3

21         THE COURT:  I think you're causing a couple of heart        10:18:3

22 attacks around the room, but okay -- and on the phone.              10:18:3

23         Let me think on that one and we'll get back to you          10:18:3

24 on that.                                                            10:18:4

25         So have we covered all of the timeline comments,            10:18:4
```

```
 1   or are there further things that you all want to cover relative       10:18:5

 2   to deadlines?                                                         10:18:5

 3                   Brian, of course you're here.                         10:19:0

 4           MR. BARR:  It's actually not a timeline issue directly.       10:19:0

 5               I just wanted to point out --                             10:19:1

 6           THE COURT:  This must be the Tony Fitch rule of               10:19:1

 7   subjects.                                                             10:19:1

 8           MR. BARR:  It's on the timeline.  It's on the timeline.       10:19:2

 9               We're all pretty sure this is a typo.                     10:19:2

10           THE COURT:  What is it?                                       10:19:2

11           MR. BARR:  On the Dewers' deposition.                         10:19:2

12           THE COURT:  You see, Sarah, proving my point to you.          10:19:3

13           MS. HEMMELHOCH:  I appreciate, Your Honor.                    10:19:3

14           THE COURT:  Tell me where you are.  What date are you         10:19:3

15   on?                                                                   10:19:3

16           MR. BARR:  On August 2nd, the Dewers' deposition.  It         10:19:4

17   says:  Last Expert.  And there's a parenthetical:  Not to exceed      10:19:4

18   20 pages.  We think that's probably --                                10:19:4

19           THE COURT:  No.  I don't want that deposition to exceed       10:19:4

20   20 pages.                                                             10:19:5

21           MR. BARR:  I'm fine with that.                                10:19:5

22           MS. HEMMELHOCH:  The United States wholeheartedly             10:19:5

23   concurs, Your Honor.                                                  10:19:5

24           THE COURT:  Thank you.  I appreciate that, Brian.             10:19:5

25                   Anything else on the revised timeline?                10:19:5
```

1       Let's cover a couple of other things.  Corey, you                10:20:0

2   had suggested that we take Texas, Florida and Mississippi out of     10:20:0

3   aligned parties.                                                     10:20:1

4       I just want to make sure, I am not putting them                  10:20:1

5   there to participate.  It's just that I did consider them to be      10:20:1

6   part of the aligned parties for purposes of the Judge's Findings     10:20:2

7   of Fact and Conclusions of Law.  Am I incorrect in that?            10:20:3

8           MR. MAZE:  That's not how I read the actual draft.           10:20:3

9           Do you want me to come up?                                   10:20:3

10          THE COURT:  Sure.  Come on up.                               10:20:4

11          MR. MAZE:  Rob is going to argue why they should remain      10:20:4

12   in there, which I'm actually very interested to hear.               10:20:4

13          THE COURT:  How did you read it?                             10:20:4

14          MR. MAZE:  It's on page 4, it says:  The trial segment       10:20:5

15   shall consist of a coordinated trail presentation by the PSC,       10:20:5

16   State of Louisiana, State of Alabama, State of Texas, State of      10:20:5

17   Mississippi, State of Florida, Transocean and Halliburton.          10:21:0

18       The way that reads to me is that there will be a                10:21:0

19   trial presentation including all five of the states.  In which      10:21:0

20   you're going to have an instance -- practically, at the trial,      10:21:1

21   you're going to have a seat from an attorney at least from all      10:21:1

22   five states, and each one of us is going to get up and say          10:21:1

23   either we do have questions or we don't have questions.             10:21:2

24       One of the concerns we've always brought up is,                 10:21:2

25   none of the three new states have even filed in the limitation      10:21:2

```
 1   action.  They don't even have claims in the limitation and have     10:21:2

 2   all agreed that they don't want to present, nor have they            10:21:3

 3   received any discovery for Phase Two, nor have they taken any        10:21:3

 4   depositions.                                                         10:21:3

 5            So we just thought it was easier to take them out           10:21:4

 6   from the presentation.                                               10:21:4

 7            THE COURT:  I think that's fine, and I understand the       10:21:4

 8   confusion in the word presentation.                                 10:21:4

 9            I wanted to be clear that the Judge's ruling in             10:21:5

10   this segment is applicable to all parties and that there's not      10:21:5

11   going to be a retrial.  Because these three states later might      10:22:0

12   argue that, because they didn't participate, they're not bound.    10:22:0

13            MR. MAZE:  Understood.                                      10:22:1

14            Why don't I take that back to them today.                   10:22:1

15            THE COURT:  That will be fine.  And let me know what        10:22:1

16   you want to do with that.                                           10:22:1

17            But that was my thought process.                           10:22:2

18            MR. MAZE:  Understood.                                      10:22:2

19            Like I said, the only thing we were concerned              10:22:2

20   about was actually saying that they were presenting evidence.       10:22:2

21            THE COURT:  We can drop a footnote.                         10:22:2

22            MR. MAZE:  I'll take your concern back to them.            10:22:2

23            THE COURT:  Perfect.                                        10:22:3

24            I'm certainly not compelling them to participate.         10:22:3

25   I want to make that very clear.                                     10:22:3
```

| | |
|---|---|
| 1 | Matter of fact -- | 10:22:3 |
| 2 | MR. MAZE:  Yeah.  I mean, as they keep reminding as I | 10:22:4 |
| 3 | get up and down, they're not parties to the case. | 10:22:4 |
| 4 | THE COURT:  I hear you. | 10:22:4 |
| 5 | And, you know, my concern is that they not come | 10:22:4 |
| 6 | back later and say that they're entitled to a Phase Two trial on | 10:22:5 |
| 7 | their own behalf.  Because that's not going to happen. | 10:22:5 |
| 8 | MR. MAZE:  Understood. | 10:23:0 |
| 9 | THE COURT:  Mr. Herman has an opinion with regard to | 10:23:0 |
| 10 | that, obviously.  But we won't make him express it. | 10:23:0 |
| 11 | Rob. | 10:23:1 |
| 12 | MR. GASAWAY:  That was our thought exactly.  Just make | 10:23:1 |
| 13 | the rulings applicable to them, make sure there's no retrial. | 10:23:1 |
| 14 | This is an aligned party presentation.  So, if there's a BP | 10:23:2 |
| 15 | witness there who needs to get cross examination, we don't | 10:23:2 |
| 16 | expect to see a HESI lawyer, a PSC lawyer, a TO lawyer, an | 10:23:2 |
| 17 | Alabama lawyer.  We expect them to put all their cross in | 10:23:3 |
| 18 | through one lawyer. | 10:23:3 |
| 19 | THE COURT:  And Corey knows that. | 10:23:3 |
| 20 | MR. MAZE:  And I do. | 10:23:3 |
| 21 | And, again, this is Corey Maze for the State of | 10:23:3 |
| 22 | Alabama. | 10:23:4 |
| 23 | I know the first question I'm going to get from | 10:23:4 |
| 24 | them is:  How can I be bound to a case I didn't file into and | 10:23:4 |
| 25 | didn't get to present evidence. | 10:23:4 |

```
 1              If they're told by order that this is going to          10:23:4

 2  bind them, the fact findings are going to bind them, then are       10:23:5

 3  they going to change their mind and want to be part of the team     10:23:5

 4  of presenters?                                                      10:23:5

 5              THE COURT:  I don't know.  I mean, this litigation's     10:24:0

 6  been pending for over two and a half years.  And the trial's        10:24:0

 7  going forward in September.  And it's going to be the one time      10:24:0

 8  Judge Barbier tries it.                                             10:24:1

 9              MR. MAZE:  Understood.  Your Honor, I understand the     10:24:1

10  Court's -- and I will pass it along.                                10:24:2

11              THE COURT:  And so, whatever they want to tell us, they 10:24:2

12  can tell us now.                                                    10:24:2

13              I think they've got fine representation through         10:24:2

14  the State of Alabama, the Plaintiff's Steering Committee and the    10:24:3

15  State of Louisiana.  And, if they want to accept that, that's       10:24:3

16  fine.  If they don't want to accept it, it's fine.  Because,        10:24:4

17  either way, we're trying the case in September.                     10:24:4

18              Is that true, Brian?                                    10:24:5

19              MR. BARR:  That's true, Your Honor.                     10:24:5

20              Rob said one thing that I just want to follow-up        10:24:5

21  on when he just said we're not expecting all these different        10:24:5

22  lawyers to question, we're expecting the aligned parties to         10:25:0

23  appoint one lawyer.                                                 10:25:0

24              I don't believe that that's actually the               10:25:0

25  expectation of the aligned parties.  We understand, we're on a      10:25:0
```

```
 1   clock.  We're understand, we're giving a coordinated          10:25:1

 2   presentation.  And we're going to coordinate that presentation.  10:25:1

 3   There won't be duplication.  But that's not to say that there  10:25:1

 4   won't be some, you know, one person handles half of a cross and  10:25:2

 5   another person handles another half of a cross.  Because, we're  10:25:2

 6   aligned, but there are in some respects some unique issues.  And  10:25:2

 7   so I just want to make sure that was clear, given what Rob       10:25:3

 8   stated.  Thank you.                                             10:25:3

 9               THE COURT:  All right.                              10:25:4

10               Now, relative to -- and let me talk to Rob and     10:25:4

11   Tony about this -- I had said that Anadarko is not going to be  10:25:4

12   in source control, and it has objected to that statement.       10:25:5

13               If you want to coordinate with BP, Tony, and have  10:26:0

14   BP either give you some time or ask your questions for you, the  10:26:0

15   way we do in depositions, that's okay by me.  I kind of look at  10:26:1

16   this the way I look at -- who was Hal's client in Phase One?     10:26:1

17          MR. FITCH:  I'm sorry, who was what?                     10:26:2

18          MR. O'ROURKE:  M-I.                                      10:26:3

19          THE COURT:  M-I.                                         10:26:3

20               I kind of look at you the way I look at M-I.  I     10:26:3

21   don't know why you're asserting your right to participate in the  10:26:3

22   source control segment of the trial, but it seems --            10:26:4

23          MR. FITCH:  Only because of the position that the       10:26:4

24   United States is taking about its possible introduction of      10:26:4

25   evidence.  I don't want to be there.  I'd be happy to be back in  10:26:5
```

OFFICIAL TRANSCRIPT
SUSAN A. ZIELIE, CRR, RMR, FCRR

 1   the hotel room or the office preparing for Phase Two.  But we've   10:26:5
 2   got this problem.   10:27:0
 3            And the solution, unfortunately, is not to let   10:27:0
 4   another party, BP, ask questions in case it's necessary.   10:27:0
 5   Because, frankly, that hasn't worked out in some of the   10:27:1
 6   depositions.  In the depositions of Secretary Chu, for example,   10:27:1
 7   when TO was questioning on behalf of both TO and HESI, something   10:27:1
 8   came up that understandably and justifiably gave the Halliburton   10:27:2
 9   attorneys great heartache and they had to scramble around to   10:27:3
10   correct it.  So that option really doesn't work, especially at   10:27:3
11   trial.   10:27:3
12            But something can be worked out; that's not the   10:27:3
13   issue.  But what I just said is why there is unfortunately this   10:27:4
14   concern on our part.   10:27:4
15        MR. O'ROURKE:  I'd just point out the difference   10:27:4
16   between M-I and Anadarko is the culpability of Anadarko.   10:27:4
17        MR. GODWIN:  It seems that M-I did well by forcing the   10:27:5
18   issue.   10:27:5
19        MR. O'ROURKE:  This came up because I'd asked for a   10:27:5
20   security blanket, and you gave it to us.  Thirty minutes, which   10:28:0
21   would be cannibalizing our time in quantification.   10:28:0
22            If they want some time to go after us, if we do   10:28:0
23   it -- we're not going to do anything on source control.  I mean,   10:28:1
24   I don't think BP's going to get up and try to pre-try   10:28:1
25   quantification.  But I'm paranoid.  I asked you for this time;   10:28:1

```
 1    you gave it to us.                                              10:28:2

 2            THE COURT:  It appears to me that lead counsel for the  10:28:2

 3    United States has a real problem with paranoia.                 10:28:2

 4            MS. HEMMELHOCH:  I've infected him, Your Honor.          10:28:3

 5            MR. FITCH:  That has infected us all.                    10:28:3

 6            MR. O'ROURKE:  If Anadarko wants to rebut this           10:28:3

 7    hypothetical cross, we're not going to have an objection to     10:28:4

 8    that.  They should probably have to take their time out of the  10:28:4

 9    quantification to do it, just like we have to.  But we're not   10:28:4

10    going to have a problem, if this hypothetical spins out where we 10:28:5

11    get up and cross somebody because we're getting too much into   10:28:5

12    quantification and Anadarko wants to rebut, that's okay by us.   10:28:5

13    Thanks.                                                         10:29:0

14            THE COURT:  Okay.                                       10:29:0

15                Brian.                                              10:29:0

16            MR. BARR:  I apologize for standing up again.           10:29:0

17            THE COURT:  We'll just make that a continuing apology.  10:29:0

18            MR. BARR:  I'm going to staple a sign right here to my  10:29:1

19    forehead.                                                       10:29:1

20            THE COURT:  Okay.                                       10:29:1

21            MR. BARR:  On the issue that the United States raises   10:29:1

22    on their half hour during the source control trial, the aligned 10:29:2

23    parties just want to make sure that that's not coming out of our 10:29:2

24    15 hours.  And so I suppose --                                  10:29:2

25            THE COURT:  It's coming out of their half hour of       10:29:3
```

```
 1   quantification.                                            10:29:3

 2          MR. BARR:  I understand that, but there's only so many   10:29:3

 3   hours in a day.                                            10:29:4

 4          THE COURT:  We're going to find a half hour.  We're   10:29:4

 5   going to find a half hour; okay?  I'm going to manufacturer a   10:29:4

 6   half hour.                                                 10:29:4

 7          MR. BARR:  On kind of tying into this issue -- and this   10:29:4

 8   is some language we proposed putting in the draft order, and I   10:29:5

 9   can go ahead and tell you now BP objects to it -- the aligned   10:29:5

10   parties believe that there should be in a prohibition on the   10:30:0

11   elicitation of source control evidence during the quantification   10:30:0

12   trial.  That, if BP intends upon putting source control evidence   10:30:1

13   in the trial, they need to do it within their 15 hours in the   10:30:1

14   first four days.  They should not be allowed to artificially   10:30:2

15   inflate the clock because some witness is on the stand that   10:30:2

16   knows something about source control and they should not be   10:30:3

17   allowed to elicit testimony on source control from that witness.   10:30:3

18   Because, at that point, we're out of time, we've used our 15   10:30:3

19   hours.  We don't have time in quantification.  We're not asking   10:30:4

20   for time in quantification.  And we would suggest that that's   10:30:4

21   completely unfair and is -- runs counter to the entire idea of a   10:30:4

22   chess clock.                                               10:30:5

23          THE COURT:  The problem I see, Brian, is that they   10:30:5

24   could have an expert who, for example, relies on a bent pipe   10:30:5

25   following one of the procedures to formulate his opinion with   10:31:0
```

1    regard to quantification.                                              10:31:1

2                    Now, is that fair for BP to do?                        10:31:1

3          MR. BARR:  I think that would be fair.                           10:31:1

4          THE COURT:  Okay.  That's all I anticipate BP wanting            10:31:1

5    to use source control for.                                            10:31:2

6                    Rob, am I misstating things?  I mean, that's           10:31:2

7    certainly source control.                                             10:31:3

8          MR. GASAWAY:  Your Honor, you're stating things exactly          10:31:3

9    correctly.                                                            10:31:3

10                    And why everybody's paranoid about BP and parsing     10:31:3

11   my statements, I don't know.                                          10:31:3

12                    We are planning on trying our source control case     10:31:4

13   in our source control segment, and we're planning on trying our       10:31:4

14   quantification case in the quantification segment.                    10:31:4

15                    That said, the idea of a prohibition or a             10:31:5

16   limitation on us in the second segment would be incredibly            10:31:5

17   prejudicial to us.  We are the defendant.  We are going to be         10:31:5

18   reacting in our source control case to what we see in the source      10:32:0

19   control case.  We are going to be reacting in the quantification      10:32:0

20   case to what we see in the quantification case.  We cannot            10:32:0

21   pre-allocate perfectly where this middle ground types of              10:32:0

22   discussions are going to come in, in one or the other.  And to        10:32:1

23   prejudice us with a flat prohibition in the quantification case       10:32:2

24   creates unmanageable line drawing problems, as I said in an           10:32:2

25   email to Brian last night.  And just is unworkable.                   10:32:2

```
 1              (Telephone rings.)                          10:32:2

 2          MR. GASAWAY:  So we just cannot have any sort of 10:32:3

 3   prohibition of that type.                              10:32:3

 4              (Telephone rings.)                          10:32:4

 5          MR. GASAWAY:  Somebody disagrees.               10:32:4

 6          THE COURT:  People, whoever's got the phone going in  10:32:4

 7   their office, could you put us on mute?  Thank you.    10:32:5

 8              Brian, I do think it's a very, very fine line  10:32:5

 9   you're asking to be drawn.  And I know that you all are going to  10:32:5

10   have somebody sitting in in the three weeks of quantification  10:33:0

11   and monitoring.  Yes.  I'm presuming that would be you, sir.  10:33:0

12   And, if you see something happening that you think crosses the  10:33:0

13   line, then call it to the Court's attention at that point.  10:33:1

14              But I don't see how I'm going to draw that very  10:33:1

15   fine line, because the evidence does -- the evidence in source  10:33:2

16   control does affect the quantification opinions that are being  10:33:3

17   drawn on that side of the trial.                       10:33:3

18              And so I'm just going to put it on you to stay  10:33:3

19   awake during the third -- the last three weeks of the trial and  10:33:4

20   make sure that your interests are protected.           10:33:4

21          MR. BARR:  Your Honor, as long as we have the ability  10:33:5

22   to protect that interest, I think that's all we can ask for.  10:33:5

23          THE COURT:  I'm not giving you any time to do it.  But  10:33:5

24   you'll be there.                                       10:34:0

25          MR. BARR:  We may -- you know, and I think it primarily  10:34:0
```

```
 1   comes down to not so much responding to something as you would      10:34:0

 2   with a defendant, but more through one of their witnesses or        10:34:1

 3   through one of their experts specifically eliciting that type of    10:34:1

 4   testimony.                                                          10:34:2

 5           THE COURT:  I me, I just don't anticipate, for example,     10:34:2

 6   that BP is going to elicit process safety testimony in the          10:34:2

 7   quantification phase.                                               10:34:3

 8           MR. BARR:  We hope not.                                     10:34:3

 9           THE COURT:  We hope not.  And I'll bet you they don't.      10:34:3

10           MR. BARR:  I would imagine somebody would get upset.        10:34:3

11           THE COURT:  Right.                                          10:34:4

12           MR. BARR:  Other than mean.  Because I probably don't       10:34:4

13   matter.                                                             10:34:4

14           THE COURT:  No.  You matter.                               10:34:4

15             But I do think it's too fine a line for us to             10:34:4

16   draw.                                                               10:34:5

17           MR. BARR:  Thank you.  I appreciate that.                   10:34:5

18           THE COURT:  Okay.  So now Transocean is asking that        10:34:5

19   Barbier's Findings of Fact and Conclusions of Law for Phase Two    10:34:5

20   quantification be applicable only to the United States' Clean      10:35:0

21   Water Act claims against BP and Anadarko.  And O'Brien's and NRC   10:35:1

22   join in that request.  And I assume Halliburton joins in that      10:35:2

23   request.                                                           10:35:2

24           MR. GODWIN:  Yes, Your Honor.                              10:35:2

25           THE COURT:  Again, I don't now how we're going to do       10:35:2
```

| | |
|---|---|
| 1 | that.  I have not spoken to Judge Barbier about that.  But this | 10:35:3 |
| 2 | is kind of like the absent state.  Judge Barbier intends to try | 10:35:3 |
| 3 | this case, whether it be source control or quantification, only | 10:35:4 |
| 4 | once.  And, wherever the chips fall, it seems to me, they fall. | 10:35:5 |
| 5 | But I will speak to him about it and get back to you.  But | 10:35:5 |
| 6 | that's my guess of what the answer is going to be. | 10:36:0 |
| 7 | MR. GASAWAY:  Your Honor, Rob Gasaway for BP. | 10:36:0 |
| 8 | That was our guess as well.  And we saved an | 10:36:1 |
| 9 | email. | 10:36:1 |
| 10 | But, if our guess is incorrect, I think we may | 10:36:1 |
| 11 | want to be heard on this.  Look, it seems it's a very difficult | 10:36:1 |
| 12 | situation to us if, with all of the parties having been here, | 10:36:2 |
| 13 | with the assumption being that Transocean and Halliburton's | 10:36:2 |
| 14 | interests are protected by the vigorous quantification case that | 10:36:3 |
| 15 | Anadarko and BP are putting on, if we simply have MDL findings | 10:36:3 |
| 16 | that are applicable for some purposes but not to others. | 10:36:4 |
| 17 | So we did want to weigh in on that.  That's my | 10:36:4 |
| 18 | initial reaction.  It was my prediction that would be the | 10:36:4 |
| 19 | reaction of the Court and we were saving that.  But, if it | 10:36:5 |
| 20 | starts going the other way, we'd appreciate -- | 10:36:5 |
| 21 | THE COURT:  I'll call you right away. | 10:36:5 |
| 22 | MR. GASAWAY:  We appreciate it.  Thank you. | 10:36:5 |
| 23 | MR. LYLE:  Your Honor, this is Mike Lyle for the | 10:37:0 |
| 24 | responder defendants. | 10:37:0 |
| 25 | THE COURT:  Yes.  How are you today? | 10:37:0 |

| | |
|---|---|
| 1 | MR. LYLE:  I'm great, Your Honor.  I'm sorry for | 10:37:0 |
| 2 | interrupting. | 10:37:1 |
| 3 | I was on the phone, and it was a little bit | 10:37:1 |
| 4 | difficult to hear everything that transpired. | 10:37:1 |
| 5 | In terms of the quantification issue with respect | 10:37:1 |
| 6 | to the Phase Two, we'd join in Transocean's request that any | 10:37:2 |
| 7 | Findings of Fact not be binding.  I missed out, I didn't hear | 10:37:3 |
| 8 | all -- you went in and out; and, I apologize, I'm on a phone. | 10:37:3 |
| 9 | THE COURT:  No problem, Mike. | 10:37:3 |
| 10 | One of the things that I mentioned was that | 10:37:4 |
| 11 | O'Brien's and NRC join in Transocean's request that the findings | 10:37:4 |
| 12 | and conclusions be applicable only to the US's Clean Water Act | 10:37:5 |
| 13 | claims against BP and Anadarko. | 10:37:5 |
| 14 | And I don't know how much more of that you heard. | 10:37:5 |
| 15 | What I basically said was that I think Judge Barbier believes | 10:38:0 |
| 16 | he's trying this once and only once for all purposes.  But that | 10:38:0 |
| 17 | I will certainly speak to him about everybody's concern and get | 10:38:1 |
| 18 | back to everybody. | 10:38:2 |
| 19 | I have read your request, and I do know that you | 10:38:2 |
| 20 | all have a dog in the hunt. | 10:38:2 |
| 21 | MR. LYLE:  Right.  I appreciate that, Your Honor. | 10:38:2 |
| 22 | I just wanted to point out that, the reason for | 10:38:3 |
| 23 | our concern is not abstract.  We have a case pending against us. | 10:38:3 |
| 24 | O'Brien's and NRC have a pending case against us for these | 10:38:4 |
| 25 | issues, it's the *Dillon* case, where these issues will be front | 10:38:4 |

1   and center for us.  And so, if we're not participating in this

2   trial, we'd want to make sure that we aren't bound by any

3   findings in the case subsequently addressed by the Court which

4   is a real case.  And that's why we joined in that request by

5   Transocean.

6          THE COURT:  Mike, remind by about the *Dillon* case, if

7   you would.

8          MR. LYLE:  The *Dillon* case is a False Claims Act case,

9   which the United States is not joined in but which is currently

10  pending and is part of the MDL but it is stayed.  And that case

11  alleges that O'Brien's and BP had engaged in a conspiracy to

12  defraud the United States Government by understating the amount

13  of oil that was burned and dispersed; and, therefore, misstated

14  the amount of oil that was in the Gulf.

15          So our concern is, is that if there are

16  determinations that are made in the quantification phase, that

17  somehow we would be implicated and bound by any determinations

18  made without an opportunity to participate in the trial.  Which

19  we're not asking to do.  But we just want to make sure that,

20  down the road, to the extent we have to try the *Dillon* case,

21  that we're not stuck with Findings of Fact and Conclusions of

22  Law, having not participated in the trial.

23          THE COURT:  Well, okay.  First, I'm either very

24  forgetful or was unaware of the *Dillon* case.

25          But it sounds like the *Dillon* case is not so much

```
 1   quantification, but how much the oil was dispersed or burned        10:40:2

 2   once it hit the Gulf.  Is that correct?                             10:40:3

 3            MR. LYLE:  I'd say that that is a fair characterization     10:40:4

 4   from our perspective of the Dillon case.                            10:40:4

 5                 And, that, to the extent that the quantification      10:40:4

 6   trial and testimony that is elicited in that case depends on        10:40:5

 7   facts and issues separate and apart from the burning and            10:40:5

 8   dispersement used.                                                  10:41:0

 9                 But, to the extent that that came to be the case      10:41:0

10   in the quantification phase, that somehow the testimony that        10:41:0

11   came in relied upon those factors in opinion testimony or what      10:41:1

12   have you, that somehow we would be -- you know, that our case       10:41:1

13   would be affected by that.  And I can't speak for what the          10:41:2

14   Dillon plaintiffs would have to say about that.                     10:41:2

15            THE COURT:  Let's see if Mr. O'Rourke can help us with     10:41:2

16   this.                                                               10:41:3

17                 Mr. O'Rourke, do you know anything about this?        10:41:3

18            MR. O'ROURKE:  Your Honor, the relator's complaint by      10:41:3

19   law had to come to us first, and we declined to join in.            10:41:3

20            THE COURT:  That's what I figured you were going to        10:41:4

21   tell me.  Okay.                                                     10:41:4

22            MR. LYLE:  I'm sorry, the False Claims Act claim?          10:41:4

23            THE COURT:  Yes.                                           10:41:5

24                 In other words, Steve O'Rourke just said that, by     10:41:5

25   law, as you know, the complaint had to go to the federal            10:41:5
```

1    government before it was publically filed, and the United States     10:42:0

2    declined to join in it.     10:42:0

3            MR. LYLE:  Yeah, that happened.  The *Dillon* complaint     10:42:0

4    did go to the federal government before it was unsealed, and     10:42:1

5    they passed.  But of course they always reserve the right to get     10:42:1

6    involved subsequently if they decide they want to.  Which is     10:42:1

7    exactly the posture we're in.     10:42:2

8            THE COURT:  Okay.  But now at least I understand the     10:42:2

9    problem.  Which I guess is helpful.     10:42:2

10           MS. GODLEY:  Your Honor, Tammy Godley for Transocean.     10:42:3

11           MR. LYLE:  Thank you, Your Honor, for your time.  And,     10:42:3

12   again, I apologize for interrupting.     10:42:3

13           THE COURT:  No problem.  That wasn't an interruption.     10:42:3

14   It was helpful.     10:42:4

15           MR. MILLER:  Your Honor, it's Kerry Miller.     10:42:4

16             And, before we leave this topic, I'd like to ask a     10:42:4

17   brief question.     10:42:5

18           THE COURT:  Sure.     10:42:5

19           MR. MILLER:  The letter that I wrote that you     10:42:5

20   referenced earlier in terms of Transocean not being bound by     10:42:5

21   findings as it relates to Count 1 of the United States' Clean     10:42:5

22   Water Act complaint, we also requested I think something a     10:43:0

23   little bit more modest and consistent with what I had talked     10:43:0

24   about the last time we met in person a couple weeks ago, which     10:43:1

25   was to the extent that the quantification gets into -- to the     10:43:1

 1   extent that Transocean is not involved in quantification, that          10:43:1

 2   it not be prejudiced by the litigation of BOP issues in                  10:43:2

 3   quantification or surface discharge issues in quantification.            10:43:2

 4          THE COURT:  Right.                                                10:43:3

 5          MR. MILLER:  That was also in my letter.                         10:43:3

 6          THE COURT:  Right.  It was.                                       10:43:3

 7              And my reaction to that, Kerry, was that certainly            10:43:4

 8   with regard to BOP issues, I don't think any of the parties in           10:43:4

 9   Phase Two are going to get into BOP issues.  That would come as          10:43:5

10   a shock to me.                                                           10:43:5

11              And I'm looking specifically at the attorneys for             10:43:5

12   the United States.                                                       10:43:5

13          MS. HEMMELHOCH:  Your Honor, I think we are not -- none           10:44:0

14   of the experts, as I understand it, are getting into the cause           10:44:0

15   of the explosion.                                                        10:44:0

16              But I will say that the BOP figures into analyses            10:44:0

17   that many of the experts have done in terms of the resistance           10:44:1

18   that the BOP presented to flow, the position of the drill pipe          10:44:1

19   within the BOP as it affects flow.                                       10:44:2

20              But they're not offering opinions, as I understand           10:44:2

21   it, on how the drill pipe came to be in whatever position that          10:44:2

22   expert has assumed for any --                                            10:44:3

23          THE COURT:  Nor any criticisms of the BOP or otherwise.          10:44:3

24              They're just relying on the facts they believe              10:44:3

25   existed in order to formulate their opinion with regard to              10:44:3

```
 1  either source control or quantification.                    10:44:4

 2         MS. HEMMELHOCH:  Yes.                                 10:44:5

 3              And, for purposes of quantification, which is the 10:44:5

 4  case I'm familiar with, certainly the BOP is mentioned often. 10:44:5

 5  But it is not having to do with any of the issues that were  10:44:5

 6  raised in Phase One, with the exception of I think some reports 10:44:5

 7  that are now out of contention.                             10:45:0

 8         THE COURT:  Out of play.                             10:45:0

 9         MR. MILLER:  Our concern is the corollary of what Sarah 10:45:0

10  pointed out.  So I'm not sure I feel better after Sarah's    10:45:1

11  comment or worse.                                           10:45:1

12              The concern we have is that how the flow rate    10:45:1

13  evidence impacted the positioning of the drill pipe insofar as 10:45:2

14  that relates to the functioning of the BOP.  That is, how flow 10:45:2

15  rate between April 20th -- 9:47 on April 20th up until April  10:45:3

16  22nd, and how that flow rate impacted the positioning of the 10:45:4

17  drill pipe.  Because that relates to how BOP functioned and  10:45:4

18  closed over certain portions of the drill pipe that might have 10:45:4

19  been crooked or off-center, so on and so forth.  So there was 10:45:5

20  voluminous evidence put into the record in Phase One on that  10:45:5

21  issue.                                                       10:45:5

22         MS. HEMMELHOCH:  I mean, there's no question that BP's 10:46:0

23  experts have offered opinions on assumptions regarding the   10:46:0

24  location of the drill pipe.  That, for instance, Dr. Gringarten 10:46:1

25  testified earlier this week about he has several options for the 10:46:1
```

1    way he calculated, and one is drill-pipe-high and one is                    10:46:1

2    drill-pipe-low.  And that definitely is part of the evidence of             10:46:2

3    quantification.                                                             10:46:2

4              I don't think, however, that that means that we're                10:46:2

5    talking about Phase One issues.                                             10:46:3

6              THE COURT:  I agree with that.                                    10:46:3

7              And, Kerry, maybe next week, you and I can have an                10:46:3

8    off-line discussion with Sarah and perhaps Rob about your                   10:46:3

9    concern.                                                                    10:46:5

10             MR. MILLER:  That would be great.  We just don't want            10:46:5

11   to be prejudiced as it relates to the Phase One evidence that              10:46:5

12   went on in on flow rate and how it impacted the movement of the            10:46:5

13   drill pipe as it relates to Phase One issues.  Which is                    10:47:0

14   Transocean's liability, potential liability.  Because of BOP,              10:47:0

15   it's pertinent.                                                            10:47:0

16             THE COURT:  Rob?                                                 10:47:1

17             MR. GASAWAY:  Your Honor, you're right.  Just like               10:47:1

18   we're not going to try our source control case in                          10:47:1

19   quantification, we're not going to retry our Phase One case.               10:47:1

20             But Sarah's right, too.  We've got Dr. Nesic, who                10:47:2

21   talks about the impediment that the BOP would have interposed to           10:47:2

22   the flow.  We do have Dr. Gringarten who has drill-pipe-high and           10:47:2

23   drill-pipe-low as a scenario.  And we cannot be limited in our             10:47:3

24   ability to present evidence of quantification that concerns the            10:47:3

25   BOP, which was there during the entire flow.                               10:47:3

 1          THE COURT:  But I think -- and maybe we are just          10:47:4

 2  cross-speaking, I don't know -- but all of this is inter-related  10:47:4

 3  evidence.  But none of the evidence, as I understand what you     10:47:5

 4  all are preparing for in Phase Two, is directed at the            10:47:5

 5  functioning, the proper functioning or nonfunctioning, of the     10:48:0

 6  BOP.  It is after the fact what happened.                         10:48:0

 7          MR. GASAWAY:  Exactly, Your Honor.                        10:48:1

 8          THE COURT:  And how that impacts source control and how   10:48:1

 9  that impacts quantification.                                      10:48:1

10          MR. GASAWAY:  Right.                                      10:48:1

11              We've been the most zealous party in trying to       10:48:2

12  exclude additions to the Phase One evidence in Phase Two; and,    10:48:2

13  certainly, we're not trying to do that ourselves.                 10:48:2

14          THE COURT:  Well, let me ask you all this question.       10:48:2

15  And, Kerry, I'm going to come back to you in a minute.            10:48:3

16          MR. MILLER:  Okay.                                        10:48:3

17          THE COURT:  We had been talking about further Phase Two   10:48:3

18  stipulations.  Is this the basis for something we can stipulate   10:48:3

19  to?                                                               10:48:4

20          MR. GASAWAY:  Well, I was going to -- I thought you       10:48:4

21  were going to go a different direction, Your Honor.               10:48:4

22          THE COURT:  What other different direction did you        10:48:4

23  think I was going to go?                                          10:48:5

24          MR. GASAWAY:  I thought you were going to say the         10:48:5

25  following.  I thought you were going to say -- we'd talked about  10:48:5

```
 1   a Phase Two quantification conference, we had it on the schedule   10:48:5
 2   for August --                                                       10:49:0
 3             THE COURT:  We cancelled it.                              10:49:0
 4             MR. GASAWAY:  We cancelled the source control.  The       10:49:0
 5   quantification was still there.                                     10:49:0
 6                  And, even though Transocean is not presenting        10:49:0
 7   evidence, let's invite them to that conference.  At that point,     10:49:1
 8   the depositions will be over.  We'll all have all of our trial      10:49:1
 9   teams available.  And we will tell you at that conference that      10:49:2
10   we're not going to retry source control in quantification, we're    10:49:2
11   not going to retry Phase One in quantification.  We're going to     10:49:3
12   have our hands full with trying quantification in                   10:49:3
13   quantification.                                                     10:49:3
14             THE COURT:  Sarah, the only thing I'm thinking about --   10:49:4
15   and I saw you nodding your head negatively with regard to a         10:49:4
16   stipulation -- was that neither the PSC nor the United States       10:49:4
17   nor BP nor Anadarko in Phase Two intend to present evidence that    10:49:4
18   is critical of any of the operation of the BOP, because that        10:50:0
19   evidence has previously been presented in Phase One.                10:50:1
20             MS. HEMMELHOCH:  Maybe there's an easier way to do        10:50:1
21   this.  I don't know.                                                10:50:2
22             THE COURT:  Give it to me.                                10:50:2
23             MS. HEMMELHOCH:  I am completely unauthorized in this     10:50:2
24   proposal.                                                           10:50:2
25             THE COURT:  Well, you may have to pay more money.         10:50:2
```

1          MS. HEMMELHOCH:  Well, he may be getting rid of me as a          10:50:2

2   second chair.          10:50:3

3               But the idea I had was, really what Transocean is          10:50:3

4   struggling with is, is the record for Phase One truly closed.          10:50:3

5   And if --          10:50:4

6        THE COURT:  And Halliburton is having the same          10:50:4

7   struggle.          10:50:4

8          MS. HEMMELHOCH:  Correct.          10:50:4

9               So, if the concern is --          10:50:4

10        MR. GODWIN:  We vote for yes, Your Honor.          10:50:4

11          MS. HEMMELHOCH:  If the question is, is the factual          10:50:5

12   record for Phase One truly closed, then perhaps a ruling from          10:50:5

13   the Court that says:  Nothing adduced in Phase Two will be used          10:50:5

14   to render factual findings on the issues tried in Phase One.          10:51:0

15   And, as I said, this is an idea I'm tossing out.  That may          10:51:0

16   assuage the concerns of Halliburton and Transocean and not          10:51:1

17   require the parties to try and draw these incredibly fine lines          10:51:1

18   about what is a criticism.  Because I may view it describing an          10:51:1

19   opinion about the location of drill pipe and Kerry may view that          10:51:2

20   as a criticism of the BOP.  If it's clear that I'm only adducing          10:51:2

21   that and it can only be used in Phase Two findings and not in          10:51:3

22   Phase One findings, that may assuage the concern that the          10:51:3

23   parties have.          10:51:3

24        MR. HERMAN:  Steve Herman for the PSC.          10:51:4

25               I'm not sure -- and I guess only Judge Barbier can          10:51:4

 1    answer this question, and he might not answer it until after          10:51:4

 2    Phase Two is over -- as to whether he's going to make Phase One        10:51:5

 3    findings distinct from Phase Two findings.                            10:51:5

 4              With respect to some parties and some damages and           10:51:5

 5    some liability, I think we would argue and will argue that you        10:52:0

 6    have conduct in both Phase One and Phase Two that is relevant         10:52:0

 7    and ultimately produces, results, in the same damage.                 10:52:1

 8         THE COURT:  Well, I think that's different, though,              10:52:1

 9    Steve, than the discussion we're having as to whether or not          10:52:1

10    evidence adduced by the parties can be used for him to make his       10:52:2

11    factual findings presented in Phase One.  So, for example, you        10:52:3

12    all went for how long on the BOP and its operation, et cetera.        10:52:4

13              And, I will talk to him about it, but I don't               10:52:5

14    think that he's going to -- even if he issues one set of              10:52:5

15    Findings of Fact and Conclusions of Law, I'm not sure that he's       10:52:5

16    going to consider source control evidence as modifying his           10:53:0

17    opinion with regard to the BOP presented in Phase One.               10:53:0

18         MR. HERMAN:  I would guess that, as a case management           10:53:1

19    issue, if one of the parties started trying to bring up a bunch       10:53:1

20    of stuff that the Judge already heard in Phase One, that the          10:53:2

21    Judge would probably indicate that he wasn't interested in            10:53:2

22    hearing that evidence anymore.                                        10:53:2

23              On the other hand --                                       10:53:3

24         THE COURT:  That's a really good supposition.                   10:53:3

25         MR. HERMAN:  On the other hand, I guess what concerned          10:53:3

1  me about the proposed of how this order would be written, it          10:53:4

2  seems to unfairly constrain him in how he might decide he wants        10:53:4

3  to his craft his judgment and reasons at the end of the day.           10:53:5

4          I understand the evidentiary issue.  And, frankly,             10:53:5

5  I don't think it's going to be an issue.                               10:53:5

6          THE COURT:  I don't either.  I agree.                          10:53:5

7          MR. HERMAN:  Thank you.                                        10:53:5

8          MR. MILLER:  That's my hope.  I kind of agree.  Even           10:54:0

9  though I've said I'm unauthorized and off the cuff and we're all       10:54:0

10 thinking out loud, I think Steve may be right, it's too broad to       10:54:0

11 deal with that issue and it's ultimately up to Judge Barbier in        10:54:1

12 how he crafts his findings.                                            10:54:1

13          I think this has been helpful, and let's give it              10:54:2

14 some thought.  And, like you said, Judge Shushan, maybe we can         10:54:2

15 regroup next week and come up with a solution.                         10:54:2

16          THE COURT:  Kerry, on the issue of two days of oil flow       10:54:3

17 that you're concerned about --                                         10:54:3

18          MR. MILLER:  Surface oil flow and burn-off.                   10:54:3

19          THE COURT:  And burn-off.                                     10:54:3

20          And let me ask the United States this question:               10:54:4

21 Are you all concerned about that?  We've not really discussed          10:54:4

22 that in any kind of detail.                                            10:54:4

23          MR. O'ROURKE:  This is Steve O'Rourke for the US.             10:54:4

24          At some point during this case, we're going to try           10:54:5

25 to prove oil on the surface of the water while the *Horizon* was       10:54:5

1    still floating there.  That's something we're going to try to    10:55:0

2    prove.    10:55:0

3              For what reason?  For our Oil Pollution Act    10:55:0

4    declaratory judgment claim against Transocean.  This is very    10:55:0

5    much a fringe issue in this MDL; okay?  We settled our main    10:55:1

6    claim with Transocean, the penalties claim.  This is almost a    10:55:1

7    paperwork type of a thing.    10:55:1

8              We were under the impression that we were supposed    10:55:2

9    to do it in Phase Two.  If Transocean wants to do it in some    10:55:2

10   other formality -- if fact, I thought I'd be seeing Kerry this    10:55:3

11   morning.  I was going to ask him what he wanted to do about    10:55:3

12   that.  Maybe we can talk afterwards.    10:55:3

13        MR. MILLER:  We were under the same assumption, we were    10:55:4

14   supposed to be doing it in Phase Two.  I mean, Steve O'Rourke is    10:55:4

15   right, it is a small issue in the grand scheme of things.  And,    10:55:4

16   I'm not authorized to say this; but, if we can work a part out    10:55:4

17   so that we're not -- it's not part of Phase Two and so our    10:55:5

18   exclusion from Phase Two -- it's not part of Phase Two    10:55:5

19   quantification, so that Transocean's excluded from Phase Two    10:56:0

20   quantification doesn't prejudice us, maybe that's a good    10:56:0

21   solution on that issue.    10:56:1

22        MR. O'ROURKE:  This is something we're perfectly    10:56:1

23   willing to talk about.  My only hesitation is I don't want this    10:56:1

24   to turn into another phase or more experts or another trial or    10:56:2

25   discovery.    10:56:2

```
 1              MR. MILLER:  This may be something teed up for cross      10:56:2

 2    examination for summary judgment.  You heard Steve O'Rourke say     10:56:2

 3    that it is an issue that the United States assumed it was part      10:56:3

 4    of Phase Two quantification and they still have a claim against     10:56:3

 5    Transocean.  And so I hope everybody understands how problematic    10:56:3

 6    it is for Transocean to be excluded from Phase Two                  10:56:4

 7    quantification when the US is saying it is litigating an Oil        10:56:4

 8    Pollution Act claim against Transocean in Phase Two                 10:56:5

 9    quantification.                                                     10:56:5

10              THE COURT:  Kerry, I just missed the issue, frankly.  I   10:56:5

11    thought you all were coming out with just a quantification          10:56:5

12    expert, how much oil flowed out of the well during the time that   10:57:0

13    the flow was uncontrolled.  And --                                 10:57:0

14              MR. MILLER:  Because it was such a small issue in the     10:57:1

15    grand scheme of things, one of our quantification experts, Mr.     10:57:1

16    Pollard, who was cancelled, did have a small section in his        10:57:1

17    report where he covered the issue of discharge for two days and    10:57:2

18    burn-up evidence of surface discharge.                             10:57:2

19              MR. O'ROURKE:  One paragraph.                            10:57:3

20              THE COURT:  Well, then, what I'd like you all -- and,     10:57:3

21    again, I missed the issue entirely.  I thought Mr. Pollard was      10:57:3

22    quantification over the entire period of time that the well was     10:57:3

23    uncontrolled.                                                       10:57:4

24              MR. O'ROURKE:  His report was mostly attacking the US's   10:57:4

25    experts.  There's one paragraph about the two days.                10:57:4
```

1    THE COURT:  Okay.  So can we work on the one paragraph    10:57:5

2  over the two days and see what we can do with it and dispose of    10:57:5

3  it either now or at a later time?    10:57:5

4    But I don't want another phase for a two-day    10:58:0

5  issue.    10:58:0

6    And, if we can't work it out, then what I want to    10:58:0

7  do is look at the Pollard report, the one paragraph, and figure    10:58:1

8  out what we do to get rid of it.    10:58:1

9    MR. O'ROURKE:  Yes, Your Honor.  I think we can    10:58:1

10  probably work it out.    10:58:2

11    In Phase One post-trial briefing, we had also    10:58:2

12  brought up an OPA/Transocean liability issue about how they're    10:58:2

13  operator, and liaison counsel -- we all said:  Well, we thought    10:58:3

14  we had to do it because it sounds like Phase One.  And, they    10:58:3

15  agreed, well, let's just do it later.  And now we're both saying    10:58:3

16  because it sounded like Phase Two, let's try to agree to do it    10:58:4

17  later.    10:58:4

18    THE COURT:  It does sound like Phase Two.    10:58:4

19    MR. MILLER:  You were in that liaison conference.  And    10:58:4

20  I think Judge Barbier was interested in the prospect from the    10:58:5

21  operator issue of adjudicating that all the way across for cross    10:58:5

22  motions for summary judgment.    10:58:5

23    Maybe we can do both, operator and surface    10:58:5

24  burn-up, a cross motion for summary judgment at some point in    10:59:0

25  the future.  As I say, I don't have authority, but that's an    10:59:0

1    idea.                                                                    10:59:0

2         THE COURT:  Okay.  Well, why don't you all talk about              10:59:1

3    that and let's see if you can reach agreement.                          10:59:1

4         I apologize for missing the issue.  And I would                    10:59:1

5    like to have a procedure for disposing of this fairly modest but        10:59:2

6    important issue.                                                        10:59:3

7         MR. O'ROURKE:  After Phase Two.                                    10:59:3

8         THE COURT:  I don't know that.                                     10:59:3

9         I just don't want another phase.  If it's going to                 10:59:3

10   turn into another phase, then I want to take care of it in Phase        10:59:3

11   Two.                                                                    10:59:4

12        MR. O'ROURKE:  Okay.  Well, we'll speak.                           10:59:4

13        MR. MILLER:  I didn't hear you.  You don't want another            10:59:5

14   phase, I got that.  But you want to take care of it during Phase        10:59:5

15   Two?                                                                    10:59:5

16        THE COURT:  No.  If it's going to create another phase,            10:59:5

17   I want to take care of it in Phase Two.  So, in other words            11:00:0

18   we've got to figure out how to take care of it without creating        11:00:0

19   another phase.                                                          11:00:0

20        MR. MILLER:  But, if it just creates motion practice               11:00:0

21   after Phase Two, you're not concerned about that.  That doesn't        11:00:1

22   bother you so much.                                                     11:00:1

23        THE COURT:  No.  That doesn't bother me at all.                    11:00:1

24   Thanks.                                                                 11:00:1

25        MR. GASAWAY:  I just want to say that BP has an                    11:00:2

| | | |
|---|---|---|
| 1 | interest in these OPA and operator issues as well.  So we'd like | 11:00:2 |
| 2 | a seat at the conference table, too. | 11:00:2 |
| 3 | THE COURT:  Okay.  All right. | 11:00:3 |
| 4 | We had talked about further stipulations.  Is that | 11:00:3 |
| 5 | going to go anywhere, guys, or is that just pie in the sky? | 11:00:3 |
| 6 | MS. HEMMELHOCH:  For quantification, they are not | 11:00:4 |
| 7 | ongoing at the moment. | 11:00:4 |
| 8 | THE COURT:  Okay. | 11:00:4 |
| 9 | Brian? | 11:00:4 |
| 10 | MR. BARR:  We have appointed a team on our side to lead | 11:00:4 |
| 11 | that led by Miss Greenwald. | 11:00:5 |
| 12 | THE COURT:  Now, look, she works well with others. | 11:00:5 |
| 13 | That's good. | 11:00:5 |
| 14 | MS. GREENWALD:  I play nicely in the sandbox. | 11:01:0 |
| 15 | THE COURT:  Speaking of which, Miss Greenwald, isn't | 11:01:0 |
| 16 | the reporter that's involved with Mr. Snowden named Greenwald? | 11:01:0 |
| 17 | MS. GREENWALD:  Oh, yes.  He is. | 11:01:0 |
| 18 | THE COURT:  Is he a relative? | 11:01:1 |
| 19 | MS. GREENWALD:  No.  No.  He has a terrible background. | 11:01:1 |
| 20 | I'm happy to say, he's not. | 11:01:1 |
| 21 | THE COURT:  Okay.  I just needed to know that. | 11:01:1 |
| 22 | MS. GREENWALD:  No. | 11:01:2 |
| 23 | THE COURT:  Thank you for letting me know that. | 11:01:2 |
| 24 | MS. GREENWALD:  I'm from Chicago, anyway.  He's from | 11:01:2 |
| 25 | New York. | 11:01:2 |

```
 1              MS. HEMMELHOCH:  And nobody ever moves?          11:01:2

 2              THE COURT:  Doesn't mean you're not related.     11:01:2

 3              MS. GREENWALD:  Just me.  I'm the only one.       11:01:2

 4              THE COURT:  Okay.  Anything else there?  Because now   11:01:3

 5    I'm moving to Phase Two logistics.                         11:01:3

 6              We're going to have the walk-through for the      11:01:3

 7    parties technical staff only -- remember our prohibition on   11:01:4

 8    attorneys being on the walk-through -- on September 5 at 9:30   11:01:4

 9    a.m.  That will be on our revised revised timeline.        11:01:5

10              Getting the technical equipment back in, we      11:01:5

11    thought that maybe Thursday, August the 29th, would be a good   11:02:0

12    day.  If that doesn't work for the teams, let us know and we can   11:02:0

13    rearrange that.                                            11:02:1

14              There will be one over flow courtroom, and that's   11:02:1

15    going to be Judge Sear's former courtroom on the third floor,   11:02:1

16    Room C-311.                                                11:02:2

17              I am working on work rooms.  I think I've got     11:02:2

18    places for everyone except the PSC.                        11:02:3

19              No response from Mr. Herman.                     11:02:3

20              I have a place in mind, but unfortunately --     11:02:4

21         MR. BARR:  The jail is full?                          11:02:5

22         THE COURT:  Good one.                                 11:02:5

23              I had Judge McNamara's chambers in mind for you   11:02:5

24    all.  Former Judge Free is occupying that space right now.  And,   11:03:0

25    if it becomes available, that will be your space.  If it doesn't   11:03:0
```

1  become available, you have trouble.  But they are fine offices   11:03:1

2  if you get them.   11:03:2

3              Everybody else looks like you're going to have a   11:03:2

4  place to work.   11:03:2

5              Supplies for coming into the courthouse, let's do   11:03:2

6  that on Friday, September the 27th.  Your food, your drink, all   11:03:3

7  that stuff, same old thing.   11:03:3

8              I'm going to ask the absent Andy Langan to work on   11:03:3

9  a proposed seating chart for the two segments of the trial and   11:03:4

10 to gain agreement on the chart.   11:03:4

11             And, PSC, you all took on the tags last time, if   11:03:5

12 you'll recall.  Would you all talk to all the parties that are   11:03:5

13 participating and find out how many tags each needs so that they   11:04:0

14 can get to the front of the line?   11:04:0

15             I don't anticipate the kind of crowds that we had   11:04:0

16 for Phase One.   11:04:0

17             And then I assume Andy has purchased his chess   11:04:1

18 clock, Rob?   11:04:1

19         MR. GASAWAY:  Your Honor, yes.  We actually have   11:04:2

20 looked.   11:04:2

21         THE COURT:  It's going to be digital; isn't it?   11:04:2

22         MR. GASAWAY:  We have a number of chess clock options.   11:04:2

23 If Judge Barbier wants it digital, we'll get a digital.   11:04:3

24         THE COURT:  We don't care about that, as long as we   11:04:3

25 have a clock that keeps track.  If it's digital, that's great.   11:04:3

 1    If it's an actual chess clock, that's fine.  Don't care.                      11:04:4

 2           MR. GASAWAY:  We will provide the equipment, Your                       11:04:4

 3    Honor.                                                                         11:04:4

 4           THE COURT:  There you go.  Thank you.                                   11:04:4

 5              I think that's it.  What else have we not covered                    11:04:5

 6    today?  Besides pain relief for my headache.                                   11:04:5

 7           MR. BARR:  Your Honor, on the order -- and we'll                        11:05:0

 8    circulate this, we circulated it to Rob -- we had some proposed                11:05:0

 9    changes in the language.                                                       11:05:0

10              We obviously, for reasons we've stated -- I'm not                    11:05:1

11    going to re-argue -- disagree on the video clips issue and the                 11:05:1

12    experts reliance issue.  But we'll circulate the proposed                      11:05:1

13    changes, we'll state our further objections.                                  11:05:2

14              I would propose we get that in to the Court                          11:05:2

15    Wednesday of next week.  And then we can get a final ruling out,               11:05:2

16    and the parties can do whatever they feel like they need to do.               11:05:3

17           THE COURT:  They can rock and roll from there.                          11:05:3

18           MR. BARR:  Yes.                                                         11:05:3

19           THE COURT:  Okay.  Great.  Thank you, Brian.  That will                 11:05:4

20    be helpful.                                                                    11:05:4

21              Mr. O'Rourke.                                                        11:05:4

22           MR. O'ROURKE:  Thank you, Your Honor.                                   11:05:4

23              Another comment on the proposed order.  Brian just                   11:05:4

24    mentioned, there's reliance experts.  And there's a lot more                   11:05:5

25    clarity in this order than what we were worrying about last                    11:05:5

1    week.  So I appreciate that from BP and from the Court.          11:05:5

2              Still a question I have.                              11:06:0

3         THE COURT:  Okay.                                          11:06:0

4         MR. O'ROURKE:  So to say -- let's use BP as an example.   11:06:0

5    BP may use a testifying expert to rely on the calculation or    11:06:0

6    analysis of a non-testifying expert as long as it's in the      11:06:1

7    testifying expert report.                                       11:06:1

8         THE COURT:  Correct.                                       11:06:1

9         MR. O'ROURKE:  And then, sort of as punishment, they       11:06:2

10   have to designate our cross of their non-testifying expert.     11:06:2

11        THE COURT:  Correct.                                       11:06:2

12        MR. O'ROURKE:  That's good.                                11:06:2

13             But, not surprisingly, BP's experts aren't            11:06:2

14   breaking down and crying when we cross examine them, saying:    11:06:3

15   We're all wrong, we're all wrong.                               11:06:3

16             Which is why, in some instances, we might need to     11:06:3

17   bring a rebuttal person.  So, Professor A says I'm using a      11:06:4

18   reliability number; I got it from Professor B who is not coming 11:06:4

19   -- not Professor B, sorry -- Professor C, who is not coming.    11:06:4

20   And, you know, Professor X's deposition, we may score some      11:06:5

21   points, but maybe not.  All we could do.  So we have a rebuttal 11:07:0

22   to the non-testifying guy.  We're rebutting his number, his     11:07:0

23   calculation, his analysis.  We are not rebutting his person, you 11:07:1

24   know.  So we think that we would still have the right to bring  11:07:1

25   our rebuttal expert to rebut the number of the guy who is not   11:07:1

```
 1    coming because the guy who is come is using the number.          11:07:2

 2              Am I correct about that?  Or shall I propose a         11:07:2

 3    language on that?                                                 11:07:2

 4              MS. HEMMELHOCH:  Rob is shaking his head.               11:07:3

 5              THE COURT:  I don't even need to look at Rob.           11:07:3

 6              MR. O'ROURKE:  Shaking yes or no?                       11:07:3

 7              THE COURT:  It seems to me that it has to be among the 11:07:3

 8    number of experts that you all bring to trial.                    11:07:4

 9              So you've got the right to hold back.  If you want     11:07:5

10    to bring somebody in rebuttal as one of your holdbacks, it's      11:07:5

11    okay by me.                                                       11:08:0

12              Rob, do you agree?                                      11:08:0

13              MR. GASAWAY:  Look, you can't rebut testimony that's    11:08:0

14    not being put into the record.  And I'm not sure exactly how      11:08:0

15    this is going to play out.  There's a lot of moving parts here.   11:08:1

16              I think the principles are clear.  The idea of          11:08:1

17    putting the deposition in is so when you have -- not the report,  11:08:2

18    and Brian clarified that.                                         11:08:2

19              THE COURT:  Yes.                                        11:08:2

20              MR. GASAWAY:  So the report is not going to come in.    11:08:3

21              He also got Kerry and I to agree on a call, that,       11:08:3

22    just because the report is attached to the deposition, we're not  11:08:3

23    sneaking it in.                                                   11:08:4

24              So we're not bringing it, we're not sneaking it.        11:08:4

25    The report is not going to be there.                              11:08:4
```

```
1              What's going to happen under this is, again, if       11:08:4

2    there's a preexisting BP report submitted on May 1st where our  11:08:5

3    testifying expert says:  I'm relying on the following           11:08:5

4    calculations of another expert -- and we think that the best way 11:08:5

5    to be fair to the parties and candidly Judge Barbier is our     11:09:0

6    expert testifies to what's in the four corners of his report and 11:09:0

7    the context is given by the deposition.                         11:09:0

8              I don't know if there's a situation that they have    11:09:1

9    in mind.  But I don't think that the purpose of rebuttal experts 11:09:1

10   is to rebut experts that aren't testifying at trial.            11:09:2

11             I don't know, when we see the actual lineup of        11:09:2

12   experts, what exactly they're having in mind here.  But,        11:09:3

13   certainly, the thought here is not rebutting a report that was  11:09:3

14   pulled down.  And these reports are not coming in.              11:09:3

15             The deposition testimony is going to be what it       11:09:4

16   is, and it is coming in.                                        11:09:4

17             But the thing I fear about, is that they're going     11:09:4

18   to try to bring in a rebuttal expert to rebut a report that's   11:09:5

19   been pulled down.  I'm just not sure how this is going to play  11:09:5

20   out.                                                            11:10:0

21        THE COURT:  This is how I'm envisioning what it is         11:10:0

22   Steve is proposing.  Expert A for BP expresses an opinion based 11:10:0

23   on a calculation done by expert B.  Expert B's -- well, we're   11:10:1

24   not using B.  I'm sorry.  Start over.                           11:10:1

25             Expert A relies on expert C's calculations.          11:10:2
```

 1    Expert C's cross examination comes in relative to his          11:10:2

 2    calculation.  The US has an expert who thinks that expert C's   11:10:3

 3    calculations are a bunch of hooey.                              11:10:4

 4              If they want to use one of their holdback experts     11:10:5

 5    to come in and testify that expert C's calculations are a bunch 11:10:5

 6    of hooey, is that a problem?                                    11:11:0

 7              MR. GASAWAY:  Let me think about that, Your Honor.  I  11:11:0

 8    hadn't thought about that scenario.                             11:11:0

 9              THE COURT:  And I don't personally don't think that   11:11:1

10    should be a problem because they're wasting -- not wasting, I   11:11:1

11    shouldn't say that.                                             11:11:1

12              MR. GASAWAY:  Devoting.                               11:11:1

13              THE COURT:  -- they're using one of their experts in  11:11:2

14    that manner.                                                    11:11:2

15              And, you know, if they want to do that, it seems      11:11:2

16    to me they can.  Might not be a good use of one of their        11:11:2

17    experts, but who am I to say?                                   11:11:3

18              MR. GASAWAY:  Let me think about that, Your Honor.    11:11:3

19              THE COURT:  Okay.  Give us some feedback.             11:11:3

20              MR. BARR:  I know I promised I wasn't going to re-argue 11:11:4

21    this stuff but --                                               11:11:4

22              THE COURT:  Wait.  You've got the apology?            11:11:4

23              MR. BARR:  Sticking right there.                      11:11:5

24              On the experts relying on other experts issue --      11:11:5

25              THE COURT:  Yep.                                      11:11:5

1        MR. BARR:  -- I'm glad we've reached resolution on the

2   report.  I'm glad we've reached resolution on the report doesn't

3   get back-doored through the deposition.

4        THE COURT:  Correct.

5        MR. BARR:  We still have an issue, if we just submit

6   the entire deposition, which is the current proposal, that the

7   entire deposition comes in, BP is getting its direct in of that

8   expert through the deposition.

9            And what they've been doing in these depositions

10  is show up with a PowerPoint slide.  You know, just like you

11  would in trial, that has a summary of all their opinions in the

12  PowerPoint slide, and they don't do a 30 to 40 minute direct.

13  Well, that's fundamentally unfair.

14            I would suggest, if we're going to go down this

15  road, that the part of the deposition that comes in would only

16  be the part that's the cross examination of the adverse parties

17  on the issue being relied upon.  Nothing else.  Because, at that

18  point, you're opening the door to essentially the entire report

19  coming in, because the deposition is about the entire report.

20  So you get to do the cross examination on the whole thing.  If

21  we're going to do this, that's the fairest way to do it.

22            On one other issue.  On 3J, which was the issue of

23  experts relying on deposition testimony, in the proposed order

24  by BP -- and I thought there was agreement on this on Friday --

25  that you would be able to, with your expert, create a

1  demonstrative that put up in the demonstrative testimony that

2  was being relied upon by that expert in his report, they can

3  highlight that testimony.  You wouldn't be playing it, you

4  wouldn't be showing the transcript, but you would be citing to

5  the transcript in the demonstrative, just like was done in Phase

6  One, and that that would be allowed.  And I thought the parties

7  agreed on that.

8          Now, your memorandum struck that out.  Which, not

9  surprisingly, caused BP to change their position, so they

10 disagree with doing that process.

11         But we think that that should be allowed -- I

12 mean, just like it was in Phase One, the experts should be able

13 to explain to the Court what they base their opinions on.  And,

14 even if it's not in the bundles, they should be able to explain

15 that to the Court.

16         THE COURT:  All right.

17         MR. O'ROURKE:  Last --

18         THE COURT:  Mr. O'Rourke --

19         MS. KARIS:  Your Honor --

20         THE COURT:  Yes, phone participants.

21         MS. KARIS:  This is Kerry Karis.

22         I don't want to speak over anyone.

23         THE COURT:  No.  Go ahead.

24         MS. KARIS:  With respect to the point of deposition

25 testimony that would come in from the reliance expert, we cannot

1    agree that, if a cross examination from a deposition is going to        11:14:3

2    be designated and go into the record, that questioning at the          11:14:3

3    end of that by BP's counsel regarding that subject should not          11:14:4

4    also come in.  Because it would seem fair and appropriate that,        11:14:4

5    if a witness is examined on topics that it's now -- and that           11:14:5

6    testimony is now being put before the Court, the rest of the           11:14:5

7    witness's testimony on that subject should likewise come in.           11:15:0

8    And, of course, it's being done in the form of a, quote,               11:15:0

9    unquote, direct because that's the appropriate way to conduct an       11:15:1

10   examination of your own expert in a deposition.  And so it would       11:15:1

11   seem highly unfair to say you only get to put in the testimony         11:15:1

12   that piques it but not the testimony that explains the basis for       11:15:2

13   that witness's testimony.                                              11:15:2

14            I concur that, to the extent that it's testimony              11:15:3

15   unrelated to anything that has been designated -- because some         11:15:3

16   of these reliance experts may have been designated for far more        11:15:4

17   than what is being relied on -- if it's completely unrelated and       11:15:4

18   there is no designation by the opponent of cross examination on        11:15:4

19   that subject, then the rest of BP's direct if you will should          11:15:5

20   not come in.  But we don't disagree there.                            11:15:5

21            But it would seem unfair to just allow the cross,            11:16:0

22   without perhaps a rehabilitation for that cross, since they do         11:16:0

23   go together.                                                           11:16:0

24            THE COURT:  Okay, good.                                      11:16:0

25            MS. KARIS:  That's as to the first point.                    11:16:1

1            As to the second point of experts relying on

2    testimony in the form of these summary slides, what we had

3    agreed to, to be clear, is, you can certainly use a portion of

4    the deposition in the course of cross examining an expert even

5    if that portion was not in the bundle; but you have to actually

6    be conducting the exam in the form of a regular question of an

7    expert, as we did in Phase One.

8            We should not use expert testimony as an avenue to

9    now get in a summary slide under the it's a demonstrative with a

10   bunch of testimony that only contains a question of:  And does

11   all the following testimony support your opinion, as a back-door

12   way to get in additional testimony that is not in the bundle.  I

13   don't think everybody intended to, from our side, intended to

14   agree to the letter.

15           But we still agree that, if you're going to

16   conduct a cross examination or even a direct examination of an

17   expert and you want to say to your expert:  Did you rely on the

18   following testimony and what did it mean to you, that that's

19   perfectly appropriate even if it's not in the bundle.

20           So I want to make sure that we're talking about

21   what it is that we originally agreed to and what it is that

22   we're now -- not now, I don't think we've ever agreed to use the

23   bundles through -- to use testimony outside the bundles through

24   an expert witness, to now dump in a bunch of evidence.

25           THE COURT:  Okay.  Brian.

 1          MR. BARR:  I'm not sure I fully understand what Kerry    11:17:4

 2  is saying she agrees to and doesn't agree to.                    11:17:5

 3              But -- if you understand it.                         11:17:5

 4          THE COURT:  What I'd like you to do is, you and Kerry    11:17:5

 5  have a little off-line conversation and see if you can agree to  11:18:0

 6  the language that you both agree you agree to.                    11:18:0

 7          MR. BARR:  That's a double agree -- okay, we'll work it  11:18:1

 8  out.                                                             11:18:1

 9          THE COURT:  I mean, there's some fine points in there.   11:18:1

10  And, if you'd just work through it with her, it sounds like you  11:18:2

11  all can reach an agreement.                                      11:18:2

12          MR. BARR:  I hope so.                                    11:18:2

13              Maybe I'll put Robin on it.                          11:18:2

14          THE COURT:  Well, either Robin or Anthony, would be      11:18:3

15  my --                                                            11:18:3

16          MS. GREENWALD:  We'll do it together.                    11:18:3

17          THE COURT:  There you go.  There you go.                 11:18:3

18              Steve.                                               11:18:4

19          MR. O'ROURKE:  One inconsistency in the order.  And I'd  11:18:4

20  like to request that one of them be used and one of them not be  11:18:4

21  used.                                                            11:18:5

22          THE COURT:  Let's look.                                 11:18:5

23          MR. O'ROURKE:  On the timeline, it says, pointblank,     11:18:5

24  the trial starts on October 7th.  In the next, at the beginning, 11:18:5

25  on page 3, No. 1, trial date, it says the quantification will    11:19:0

1    start the day after source control ends.                    11:19:0

2              So we'd prefer the Monday.  If they end on         11:19:0

3    Wednesday night, we don't want to have our experts watching the  11:19:0

4    source control trial and spend the weekend.                 11:19:1

5         THE COURT:  I'll be you a beer that it doesn't end on   11:19:1

6    Wednesday.                                                   11:19:1

7         MR. O'ROURKE:  Or it could end on Tuesday.             11:19:2

8         THE COURT:  Or Tuesday or Monday.                       11:19:2

9         MR. O'ROURKE:  So we'd like to clarify that.  And I can 11:19:2

10   send you a sentence that says:  Not to be sooner than the 7th.  11:19:3

11        THE COURT:  Right.                                      11:19:3

12        MR. O'ROURKE:  One last thing, and I've got to take one 11:19:3

13   more crack of this Monty Hall style, Let's Make a Deal here, on 11:19:3

14   the number of experts.                                      11:19:4

15             The history here is that BP and Anadarko and the  11:19:4

16   US had proposed internally off-line ten.  Then I panicked about 11:19:4

17   the reliance experts.                                       11:19:5

18        THE COURT:  Was that because of paranoia?              11:19:5

19        MR. O'ROURKE:  That was well-founded.                   11:19:5

20             And so I said, well, we can't support the ten,    11:20:0

21   because you're going to move these guys on to your reliance 11:20:0

22   experts.                                                    11:20:0

23             So I'd request ten at this point.  And, as you    11:20:0

24   know, there's an objection to this process.  If you're willing 11:20:1

25   to give us the ten, we can accede to the structure as it is  11:20:1

```
 1   here.                                                              11:20:2

 2            THE COURT:  All right.  I've got a lot of work to do;     11:20:2

 3   haven't I?                                                         11:20:2

 4            MR. O'ROURKE:  You buying this ten thing?                 11:20:2

 5            THE COURT:  I'm not buying it right now.                  11:20:3

 6            MR. O'ROURKE:  I'm willing to pay for it.                 11:20:3

 7            THE COURT:  Are you?  What's the currency?               11:20:3

 8            MR. O'ROURKE:  Time off our clock.  Give us ten, and      11:20:3

 9   we're willing to loose a couple hours off our 45 hours.           11:20:4

10            THE COURT:  Let me think on it.  Not inclined, Steve.     11:20:4

11   But let me think on it.                                            11:20:4

12            MR. O'ROURKE:  Thank you.                                 11:20:5

13            MR. FITCH:  And let us have some time to think about      11:20:5

14   whether we need to further respond to that, given -- I realize     11:20:5

15   it's been visited and revisited.                                  11:20:5

16            MR. O'ROURKE:  I was assuming that the ten would be ten   11:21:0

17   per side.                                                          11:21:0

18            THE COURT:  I figured that.                              11:21:0

19            MR. O'ROURKE:  But we'd be happy with ten for us and      11:21:0

20   eight for them.                                                    11:21:1

21            THE COURT:  Or four for them?                            11:21:1

22                Don't worry about it, Rob.                            11:21:1

23                Robin, I'd like to hear a report on the status of     11:21:1

24   the house.                                                         11:21:2

25            MS. GREENWALD:  We have heat now.  Although, it's         11:21:2
```

```
 1   summer.                                                          11:21:2

 2           THE COURT:  You have heat now?                           11:21:2

 3           MS. GREENWALD:  Yes.                                     11:21:2

 4               We'll have it in the winter.  We will have it for    11:21:2

 5   the winter of 2014.                                              11:21:3

 6           THE COURT:  Do you have a kitchen?                       11:21:3

 7           MS. GREENWALD:  Almost.                                  11:21:3

 8           THE COURT:  Almost have a kitchen, and you've been in    11:21:3

 9   since when?                                                      11:21:3

10           MS. GREENWALD:  December.                                11:21:3

11           THE COURT:  December, okay.                              11:21:3

12               We would hope that, by the commencement of Phase     11:21:3

13   Two, you will have heat and a kitchen.                           11:21:4

14           MS. GREENWALD:  I'll bring a picture when it's           11:21:4

15   finished.                                                        11:21:4

16           THE COURT:  And running water.                           11:21:4

17               Okay, guys, anything else?                           11:21:5

18           MR. GASAWAY:  Your Honor, real quick, this is a helpful  11:21:5

19   chart that Joe Russell put together that I think will help us in 11:21:5

20   interpreting the letter that I expect to see from Brian.  It's   11:22:0

21   an issue that he's raised before.                                11:22:0

22               I don't know if this is going to come up.  And       11:22:0

23   we've always said we don't understand this point.                11:22:1

24               So let me give one of these to you and one to        11:22:1

25   Mike.                                                            11:22:1
```

1          THE COURT:  I love charts.  You know that.                     11:22:1

2          MR. GASAWAY:  What Brian has said on several occasions          11:22:2

3   is:  We can play video from Phase One experts.                        11:22:2

4               And what we've always said is:  The Phase One             11:22:2

5   trial is the Phase One trial; this is the Phase Two trial.            11:22:3

6               This is a list of witnesses, fact and 30(b)(6)            11:22:3

7   witnesses, where the deposition was in Phase One but they've          11:22:4

8   been through the designation process that Sarah led in Phase          11:22:4

9   Two.  So there's the group number.  This is the Phase Two.  This      11:22:4

10  is the deponent.  And then all these deposition dates are 2011        11:22:5

11  in Phase One.                                                         11:22:5

12               So, obviously, if they're on this list that is          11:22:5

13  within the 120 or so that we've done for this process, even           11:23:0

14  though they're a Phase One deponent here with a 2011 witness          11:23:0

15  date, if they want to devote, use, one of their 15 for any of         11:23:0

16  these juicy people on this list, then the fact that their             11:23:1

17  deposition happened in 2011 doesn't mean that they can't use it.      11:23:2

18  The limitation is 15.  If they want to have a 2011 deposition         11:23:2

19  from among the Phase Two designations, that's fine.  Obviously        11:23:2

20  all the rest are 2012 during the Phase Two.  That's fine.             11:23:3

21               So, just to be clear, when they say:  We want to        11:23:3

22  play video from Phase One deponents in Phase Two, that's fine.        11:23:3

23  So long as they comply with Your Honor's order and they're on         11:23:4

24  the 15, and they'll just have to decide how many of the, quote,       11:23:4

25  unquote, Phase One deponents on this designated list in Phase         11:23:5

 1    Two they've got and then how many they've got that aren't there.    11:23:5

 2              But I just wanted to give that list to everybody.    11:23:5

 3         THE COURT:  Okay.  Thank you.    11:23:5

 4         Brian.    11:24:0

 5         MR. BARR:  Let me try to offer a couple points of    11:24:0

 6    clarity.    11:24:0

 7              One, on the 15 bundles, it would not be our    11:24:0

 8    intention at any point to have any one of our witnesses as our    11:24:0

 9    15 bundles.  These are already in evidence.  We can reply upon    11:24:1

10    these in our post-trial briefing.  We're not going to resubmit    11:24:1

11    stuff that's already been submitted, that's a waste of time.    11:24:2

12    The 15 bundles are going to be new bundles.    11:24:2

13              What we have stated was, one, for purposes of    11:24:2

14    cross, these are depositions just like any other deposition that    11:24:2

15    we could use consistent with the Federal Rules.    11:24:3

16              Number two -- and I understand Your Honor at this    11:24:3

17    point is not inclined to agree with us on this point -- but,    11:24:3

18    when we talked about the idea of playing freestanding    11:24:4

19    depositions outside of through the use of a witness, it has been    11:24:4

20    our position that these were in that group, they're already in    11:24:4

21    the record.  And at the point you're not allowing us to play    11:24:5

22    videos that we believe are consistent with the rules, now we're    11:24:5

23    not allowed to play videos that are not just consistent with the    11:25:0

24    rules but are already in evidence.    11:25:0

25              Now, I don't expect that I would spend time    11:25:0

1    playing these video clips because they are already in evidence.      11:25:1

2    That's not the point of what we're doing.      11:25:1

3              So, I mean, we're just primarily reserving our      11:25:1

4    ability to do things and pointing out that these are in the      11:25:1

5    record and we can use them for our post-trial briefing.  That's      11:25:2

6    what we're primarily doing.      11:25:2

7              THE COURT:  Okay, good.      11:25:2

8         MS. HEMMELHOCH:  I just want to make one quick      11:25:2

9    clarification.      11:25:2

10             Some of these bundles are indeed witnesses who      11:25:2

11   were designated from in Phase One.      11:25:3

12             But, particularly, with respect to quantification,      11:25:3

13   for instance, Miss Skripnikova testified both about issues that      11:25:3

14   were related to Phase One, but she had a great deal of Phase Two      11:25:4

15   knowledge.  And so we designated elements of her deposition that      11:25:4

16   are not in evidence in Phase One.      11:25:4

17             And so there is a possibility that the US will be      11:25:4

18   offering designations from deponents who were in bundles in      11:25:5

19   Phase One but it's different testimony.      11:25:5

20        THE COURT:  Correct.  I'm with you.      11:25:5

21             All right.  Anything else?      11:26:0

22             Everybody have a good weekend.  Thank you.      11:26:0

23             (11:30 a.m., proceedings concluded.)      11:29:1

24

25

1                          CERTIFICATE

2

3

            I, Susan A. Zielie, Official Court Reporter, do hereby
4    certify that the foregoing transcript is correct.

5

6

                        /S/ SUSAN A. ZIELIE, FCRR
7                       _____
                            Susan A. Zielie, FCRR
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## /

/S [1] - 87:6

## 1

**1** [5] - 5:5, 5:11, 6:14, 55:21, 80:25
**10** [3] - 5:5, 5:7, 6:3
**10-MD-2179** [1] - 1:5
**100** [5] - 31:25, 32:6, 32:17, 33:3, 33:12
**101** [1] - 25:14
**10th** [1] - 22:25
**1100** [1] - 3:4
**11:30** [1] - 86:23
**12** [2] - 5:11, 19:20
**120** [1] - 84:13
**1201** [1] - 3:12
**12th** [6] - 18:13, 19:11, 20:13, 20:17, 21:8, 21:21
**13** [1] - 14:9
**1300** [1] - 3:22
**1331** [1] - 3:16
**13th** [3] - 13:12, 13:23, 14:11
**14** [1] - 5:13
**14th** [6] - 14:9, 21:25, 27:1, 31:19, 32:5
**15** [10] - 34:11, 46:24, 47:13, 47:18, 84:15, 84:18, 84:24, 85:7, 85:9, 85:12
**1615** [1] - 3:22
**1665** [1] - 3:16
**17** [2] - 5:14, 5:16
**1700** [1] - 3:13
**18** [1] - 5:17
**19th** [6] - 20:20, 22:4, 22:7, 22:8, 22:11, 22:15
**1st** [1] - 74:2

## 2

**2** [4] - 5:7, 5:12, 6:1, 6:15
**20** [3] - 1:6, 39:18, 39:20
**20005** [1] - 2:25
**20006** [1] - 3:19
**20044** [1] - 2:15
**2010** [1] - 1:6
**2011** [4] - 84:10, 84:14, 84:17, 84:18
**2012** [1] - 84:20
**2013** [3] - 1:6, 5:2, 7:1
**2014** [1] - 83:5
**2020** [1] - 3:19

**20th** [2] - 57:15
**2185** [1] - 4:5
**22nd** [3] - 11:13, 11:14, 57:16
**24** [1] - 31:20
**26** [4] - 1:6, 5:2, 5:19, 7:1
**27th** [1] - 70:6
**2990** [1] - 2:7
**29th** [3] - 22:14, 22:15, 69:11
**2nd** [1] - 39:16

## 3

**3** [4] - 5:8, 5:13, 6:16, 80:25
**30** [1] - 76:12
**30(b)(6** [5] - 14:7, 29:5, 29:9, 31:20, 84:6
**30/31** [1] - 16:16
**316** [1] - 2:10
**32502** [1] - 2:11
**355** [1] - 3:7
**355** [1] - 3:7
**36130** [2] - 2:18, 2:21
**365** [1] - 2:7
**3700** [1] - 3:4
**3J** [1] - 76:22

## 4

**4** [2] - 5:14, 40:14
**40** [2] - 5:20, 76:12
**406** [1] - 1:21
**45** [1] - 82:9

## 5

**5** [2] - 5:16, 69:8
**500** [2] - 1:21, 2:18
**5000** [1] - 2:23
**501** [1] - 2:20
**504.589.7781** [1] - 1:23
**59** [1] - 5:22

## 6

**6** [1] - 5:17
**60** [2] - 13:14, 31:19
**600** [1] - 2:11
**655** [1] - 2:24
**69** [5] - 6:3, 6:4, 6:5, 6:6, 6:7

## 7

**7** [1] - 5:19

**70** [4] - 6:8, 6:9, 6:10, 6:11
**701** [1] - 2:23
**70112** [1] - 3:23
**70113** [1] - 2:4
**70130** [2] - 1:22, 2:8
**70139** [1] - 2:24
**70163** [1] - 3:5
**75270** [1] - 3:13
**7611** [1] - 2:14
**770101** [1] - 3:17
**7th** [4] - 13:3, 14:5, 80:24, 81:10

## 8

**8** [1] - 5:20
**8/12** [1] - 14:7
**8/22** [1] - 19:5
**8/29** [1] - 19:6
**820** [1] - 2:4

## 9

**9** [1] - 5:22
**90071** [1] - 3:8
**9:30** [3] - 1:8, 7:2, 69:8
**9:47** [1] - 57:15

## A

**A.M** [1] - 7:2
**a.m** [3] - 1:8, 69:9, 86:23
**Aberdeen** [1] - 9:20
**ability** [3] - 49:21, 58:24, 86:4
**able** [3] - 76:25, 77:12, 77:14
**absent** [2] - 51:2, 70:8
**absolutely** [1] - 29:23
**abstract** [1] - 52:23
**abundance** [1] - 11:10
**accede** [1] - 81:25
**accept** [3] - 25:14, 43:15, 43:16
**act** [1] - 14:17
**Act** [9] - 24:4, 25:10, 50:21, 52:12, 53:8, 54:22, 55:22, 64:3, 65:8
**action** [1] - 41:1
**actual** [4] - 20:21, 40:8, 71:1, 74:11
**additional** [1] - 79:12
**additions** [1] - 59:12
**address** [2] - 9:23, 25:8
**addressed** [1] - 53:3
**adduced** [2] - 61:13,

62:10
**adducing** [1] - 61:20
**adjudicating** [1] - 66:21
**adjusted** [1] - 12:25
**admit** [4] - 11:8, 23:19, 28:14, 36:3
**admitted** [8] - 29:20, 30:15, 32:12, 32:20, 35:13, 36:1, 36:6
**admitting** [2] - 30:6, 35:11
**adopt** [2] - 8:24, 35:6
**adverse** [2] - 34:9, 76:16
**advised** [1] - 16:14
**advocacy** [1] - 12:14
**affect** [1] - 49:16
**affected** [2] - 27:3, 54:13
**affects** [1] - 56:19
**affirmatively** [1] - 34:14
**afterwards** [1] - 64:12
**AGENDA** [2] - 5:1, 6:1
**agenda** [1] - 12:5
**ago** [5] - 10:9, 21:15, 22:14, 24:2, 55:24
**agree** [30] - 15:22, 21:5, 26:5, 26:7, 26:23, 28:1, 28:13, 28:23, 29:19, 30:9, 35:13, 35:21, 35:25, 36:6, 58:6, 63:6, 63:8, 66:16, 73:12, 73:21, 78:1, 79:14, 79:15, 80:2, 80:5, 80:6, 80:7, 85:17
**agreeable** [2] - 22:4, 22:21
**agreed** [10] - 12:2, 13:7, 13:13, 29:5, 41:2, 66:15, 77:7, 79:3, 79:21, 79:22
**agreeing** [1] - 30:2
**agreement** [5] - 12:20, 67:3, 70:10, 76:24, 80:11
**agrees** [2] - 35:5, 80:2
**ahead** [7] - 17:15, 18:12, 18:22, 19:13, 26:12, 47:9, 77:23
**aided** [1] - 1:25
**AI** [1] - 2:18
**AL** [1] - 2:21
**Alabama** [4] - 40:16, 42:17, 42:22, 43:14
**alabama** [1] - 2:17
**ALABAMA** [2] - 2:17, 2:19

**ALAN** [1] - 3:15
**alcoholic** [2] - 8:9, 8:11
**aligned** [10] - 5:15, 17:6, 40:3, 40:6, 42:14, 43:22, 43:25, 44:6, 46:22, 47:9
**aligning** [1] - 28:20
**alleges** [1] - 53:11
**alleviated** [1] - 32:16
**allocate** [1] - 48:21
**allow** [2] - 34:21, 78:21
**allowed** [5] - 47:14, 47:17, 77:6, 77:11, 85:23
**allowing** [1] - 85:21
**almost** [3] - 64:6, 83:7, 83:8
**ambiguous** [1] - 25:15
**amenable** [1] - 30:13
**America** [1] - 2:13
**amount** [2] - 53:12, 53:14
**Anadarko** [20] - 3:18, 10:17, 17:9, 18:3, 23:5, 23:6, 23:9, 23:11, 24:1, 24:20, 44:11, 45:16, 46:6, 46:12, 50:21, 51:15, 52:13, 60:17, 81:15
**Anadarko's** [1] - 23:22
**analyses** [1] - 56:16
**analysis** [2] - 72:6, 72:23
**Andy** [2] - 70:8, 70:17
**Angeles** [1] - 3:8
**announce** [3] - 13:3, 13:11, 13:13, 14:5, 14:8
**answer** [3] - 51:6, 62:1
**Anthony** [4] - 27:23, 28:2, 30:18, 80:14
**ANTHONY** [1] - 2:6
**anticipate** [3] - 48:4, 50:5, 70:15
**anyway** [3] - 9:5, 33:12, 68:24
**apart** [1] - 54:7
**APLC** [1] - 2:22
**apologize** [5] - 11:6, 46:16, 52:8, 55:12, 67:4
**apology** [2] - 46:17, 75:22
**appeal** [1] - 24:10
**APPEARANCES** [2] - 2:1, 3:1
**applicable** [6] - 26:4, 41:10, 42:13, 50:20,

51:16, 52:12
**application** [1] - 5:17
**applies** [3] - 1:8, 24:21, 38:4
**apply** [1] - 18:17
**appoint** [1] - 43:23
**appointed** [1] - 68:10
**appreciate** [8] - 14:12, 39:13, 39:24, 50:17, 51:20, 51:22, 52:21, 72:1
**appropriate** [2] - 78:4, 78:9, 79:19
**April** [3] - 57:15
**APRIL** [1] - 1:6
**argue** [7] - 24:13, 40:11, 41:12, 62:5, 71:11, 75:20
**artificially** [1] - 47:14
**aside** [1] - 25:12
**aspect** [1] - 25:13
**asserting** [1] - 44:21
**assist** [1] - 37:23
**associated** [2] - 10:5, 32:6
**assuage** [2] - 61:16, 61:22
**assume** [2] - 50:22, 70:17
**assumed** [2] - 56:22, 65:3
**assuming** [3] - 13:11, 34:18, 82:16
**assumption** [2] - 51:13, 64:13
**assumptions** [1] - 57:23
**AT** [1] - 1:3
**attached** [2] - 11:3, 73:22
**attaching** [1] - 17:22
**attacking** [1] - 65:24
**attacks** [1] - 38:22
**attention** [1] - 49:13
**attorney** [3] - 9:17, 9:18, 40:21
**ATTORNEY** [2] - 2:17, 2:19
**attorneys** [3] - 45:9, 56:11, 69:8
**August** [12] - 13:3, 13:12, 14:5, 14:9, 14:11, 19:11, 19:20, 20:13, 27:1, 39:16, 60:2, 69:11
**authority** [1] - 66:25
**authorized** [1] - 64:16
**available** [2] - 60:9, 69:25, 70:1
**avenue** [1] - 79:8

**Avenue** [4] - 2:4, 2:18, 2:20, 3:7
**Aviation** [1] - 4:3
**avoid** [1] - 30:20
**awake** [1] - 49:19

## B

**B's** [1] - 74:23
**Babich** [1] - 4:10
**back-door** [1] - 79:11
**back-doored** [1] - 76:3
**background** [1] - 68:19
**balance** [1] - 37:9
**Bar** [1] - 7:19
**Barbara** [2] - 8:24, 9:6
**Barbier** [16] - 12:20, 13:17, 18:8, 23:1, 23:14, 25:7, 25:23, 43:8, 51:1, 51:2, 52:15, 61:25, 63:11, 66:20, 70:23, 74:5
**Barbier's** [2] - 22:9, 50:19
**BARR** [51] - 2:10, 13:25, 14:2, 14:13, 14:25, 15:4, 19:19, 20:21, 20:23, 22:5, 28:7, 33:22, 34:3, 34:19, 35:4, 35:8, 35:18, 35:20, 36:4, 36:9, 36:12, 39:4, 39:8, 39:11, 39:16, 39:21, 43:19, 46:16, 46:18, 46:21, 47:2, 47:7, 48:3, 49:21, 49:25, 50:8, 50:10, 50:12, 50:17, 68:10, 69:21, 71:7, 71:18, 75:20, 75:23, 76:1, 76:5, 80:1, 80:7, 80:12, 85:5
**Barr** [4] - 14:2, 19:19, 21:5, 28:7
**barring** [1] - 32:1
**base** [1] - 77:13
**based** [1] - 74:22
**basis** [4] - 18:3, 32:3, 59:18, 78:12
**Baylen** [1] - 2:10
**become** [1] - 70:1
**becomes** [1] - 69:25
**beer** [2] - 21:12, 81:5
**BEFORE** [1] - 1:12
**beginning** [1] - 80:24
**behalf** [3] - 42:7, 45:7
**believes** [2] - 15:2, 52:15

**Ben** [1] - 13:17
**benefit** [2] - 38:1, 38:14
**Benson** [3] - 4:6, 7:25, 8:5
**bent** [1] - 47:24
**best** [2] - 10:18, 74:4
**bet** [1] - 50:9
**bets** [2] - 9:5, 9:10
**better** [2] - 33:23, 57:10
**between** [4] - 14:19, 23:11, 45:16, 57:15
**big** [1] - 16:6
**Bill** [1] - 4:5
**bind** [2] - 43:2
**binding** [1] - 52:7
**BINGHAM** [1] - 3:18
**bit** [6] - 8:16, 12:23, 18:7, 22:10, 52:3, 55:23
**blanket** [1] - 45:20
**blocking** [1] - 7:16
**bona** [1] - 9:16
**books** [1] - 9:23
**BOP** [19] - 10:6, 56:2, 56:8, 56:9, 56:16, 56:18, 56:19, 56:23, 57:4, 57:14, 57:17, 58:14, 58:21, 58:25, 59:6, 60:18, 61:20, 62:12, 62:17
**bother** [2] - 67:22, 67:23
**bottom** [1] - 15:8
**bought** [1] - 34:3
**bound** [5] - 41:12, 42:24, 53:2, 53:17, 55:20
**BOWMAN** [2] - 3:11, 15:21
**Bowman** [1] - 15:21
**Box** [1] - 2:14
**BP** [42] - 2:22, 4:4, 4:9, 10:8, 14:15, 14:19, 14:21, 15:25, 16:14, 16:18, 26:3, 27:11, 28:23, 34:13, 36:16, 37:23, 42:14, 44:13, 44:14, 45:4, 47:9, 47:12, 48:2, 48:4, 48:10, 50:6, 50:21, 51:7, 51:15, 52:13, 53:11, 60:17, 67:25, 72:1, 72:4, 72:5, 74:2, 74:22, 76:7, 76:24, 77:9, 81:15
**BP's** [8] - 10:14, 36:20, 38:11, 45:24, 57:22, 72:13, 78:3,

78:19
**breaking** [1] - 72:14
**breeder** [1] - 9:7
**Brian** [32] - 12:22, 13:5, 13:21, 13:22, 14:1, 14:2, 18:5, 19:18, 19:19, 27:19, 28:6, 28:7, 30:21, 32:7, 33:9, 33:21, 36:13, 39:3, 39:24, 43:18, 46:15, 47:23, 48:25, 49:8, 68:9, 71:19, 71:23, 73:18, 79:25, 83:20, 84:2, 85:4
**BRIAN** [1] - 2:10
**Brian's** [4] - 13:12, 31:22, 34:23, 35:2
**brief** [4] - 15:12, 19:9, 25:3, 55:17
**briefed** [1] - 23:24
**briefing** [4] - 25:2, 66:11, 85:10, 86:5
**bring** [9] - 8:16, 34:10, 62:19, 72:17, 72:24, 73:8, 73:10, 74:18, 83:14
**bringing** [1] - 73:24
**broad** [1] - 63:10
**brought** [3] - 33:24, 40:24, 66:12
**BRUCE** [1] - 3:11
**Bruce** [2] - 15:17, 15:21
**build** [5] - 18:6, 18:23, 19:7, 19:8, 22:11
**bump** [1] - 31:10
**bunch** [10] - 20:1, 24:8, 30:6, 30:15, 35:11, 62:19, 75:3, 75:5, 79:10, 79:24
**bundle** [6] - 13:4, 34:10, 79:5, 79:12, 79:19
**bundles** [13] - 12:20, 13:5, 14:5, 20:2, 77:14, 79:23, 85:7, 85:9, 85:12, 86:10, 86:18
**burn** [4] - 63:18, 63:19, 65:18, 66:24
**burn-off** [2] - 63:18, 63:19
**burn-up** [2] - 65:18, 66:24
**burned** [2] - 53:13, 54:1
**burning** [1] - 54:7
**business** [1] - 10:12
**Business** [2] - 9:25,

10:1
**busy** [2] - 10:3, 24:8
**buying** [2] - 82:4, 82:5
**BY** [13] - 1:5, 2:3, 2:6, 2:10, 2:13, 2:17, 2:20, 2:22, 3:3, 3:6, 3:9, 3:18, 3:21

## C

**C's** [4] - 74:25, 75:1, 75:2, 75:5
**C-311** [1] - 69:16
**CA** [1] - 3:8
**calculated** [1] - 58:1
**calculation** [4] - 72:5, 72:23, 74:23, 75:2
**calculations** [4] - 74:4, 74:25, 75:3, 75:5
**California** [1] - 8:24
**camera** [2] - 14:6, 14:15
**Canal** [2] - 2:6, 2:7
**cancelled** [3] - 60:3, 60:4, 65:16
**candidate** [1] - 12:9
**candidly** [1] - 74:5
**cannibalizing** [1] - 45:21
**cannot** [4] - 48:20, 49:2, 58:23, 77:25
**Capping** [1] - 10:4
**Captain** [1] - 10:6
**care** [11] - 9:8, 10:4, 17:4, 17:7, 35:16, 67:10, 67:14, 67:17, 67:18, 70:24, 71:1
**Carlos** [1] - 24:17
**carry** [2] - 17:25, 19:14
**carry-over** [1] - 17:25
**case** [39] - 18:20, 24:16, 36:21, 38:12, 38:18, 42:3, 42:24, 43:17, 45:4, 48:12, 48:14, 48:18, 48:19, 48:20, 48:23, 51:3, 51:14, 52:23, 52:24, 52:25, 53:3, 53:4, 53:6, 53:8, 53:10, 53:20, 53:24, 53:25, 54:4, 54:6, 54:9, 54:12, 57:4, 58:18, 58:19, 62:18, 63:24
**Case** [2] - 6:15, 6:16
**Cases** [1] - 1:8
**cast** [1] - 7:21
**categories** [2] - 17:16, 26:17

**category** [1] - 27:7
**caused** [1] - 77:9
**causing** [1] - 38:21
**caution** [1] - 11:10
**center** [2] - 53:1,
  57:19
**certain** [3] - 28:23,
  29:19, 57:18
**certainly** [8] - 41:24,
  48:7, 52:17, 56:7,
  57:4, 59:13, 74:13,
  79:3
**CERTIFICATE** [1] -
  87:1
**certify** [1] - 87:4
**cetera** [5] - 9:8, 27:4,
  31:3, 32:1, 62:12
**chair** [1] - 61:2
**chamber** [1] - 22:10
**chambers** [1] - 69:23
**change** [7] - 21:24,
  23:6, 23:7, 23:9,
  24:24, 43:3, 77:9
**changes** [2] - 71:9,
  71:13
**changing** [1] - 21:20
**characterization** [1] -
  54:3
**characters** [1] - 7:22
**chart** [3] - 70:9, 70:10,
  83:19
**Chart** [1] - 6:9
**charts** [1] - 84:1
**checked** [1] - 11:9
**chess** [4] - 47:22,
  70:17, 70:22, 71:1
**Chess** [1] - 6:11
**Chicago** [1] - 68:24
**chief** [1] - 18:21
**chips** [1] - 51:4
**choose** [1] - 13:5
**Chu** [1] - 45:6
**circulate** [2] - 71:8,
  71:12
**circulated** [1] - 71:8
**circumstances** [1] -
  25:18
**citing** [1] - 77:4
**claim** [6] - 54:22, 64:4,
  64:6, 65:4, 65:8
**claims** [4] - 24:2, 41:1,
  50:21, 52:13
**Claims** [2] - 53:8,
  54:22
**clarification** [1] - 86:9
**clarified** [3] - 33:16,
  73:18
**clarify** [1] - 81:9
**clarity** [2] - 71:25, 85:6

**Class** [2] - 9:25, 10:1
**clean** [1] - 29:2
**Clean** [5] - 24:4,
  25:10, 50:20, 52:12,
  55:21
**clean-up** [1] - 29:2
**clear** [8] - 15:9, 41:9,
  41:25, 44:7, 61:20,
  73:16, 79:3, 84:21
**client** [1] - 44:16
**clips** [2] - 71:11, 86:1
**clock** [9] - 6:11, 44:1,
  47:15, 47:22, 70:18,
  70:22, 70:25, 71:1,
  82:8
**close** [3] - 10:12, 29:1,
  35:14
**closed** [3] - 57:18,
  61:4, 61:12
**colleague** [1] - 32:24
**colleagues** [1] - 11:9
**coming** [17] - 14:16,
  21:7, 26:18, 29:12,
  32:25, 33:5, 36:11,
  46:23, 46:25, 65:11,
  70:5, 72:18, 72:19,
  73:1, 74:14, 74:16,
  76:19
**commencement** [1] -
  83:12
**comment** [3] - 36:25,
  57:11, 71:23
**commentary** [1] - 24:3
**comments** [3] - 10:12,
  26:11, 38:25
**commitment** [1] -
  28:12
**Committee** [1] - 43:14
**common** [4] - 27:24,
  27:25, 30:9, 30:16
**communications** [2] -
  5:15, 17:6
**compelling** [1] - 41:24
**complaint** [4] - 54:18,
  54:25, 55:3, 55:22
**complete** [3] - 9:15,
  12:17, 12:19
**completed** [1] - 12:13
**completely** [4] - 38:1,
  47:21, 60:23, 78:17
**compliant** [1] - 24:21
**comply** [1] - 84:23
**Computer** [1] - 1:25
**Computer-aided** [1] -
  1:25
**concept** [2] - 30:4,
  30:11
**concern** [12] - 32:13,
  41:22, 42:5, 45:14,
  52:17, 52:23, 53:15,

57:9, 57:12, 58:9,
  61:9, 61:22
**concerned** [6] - 8:12,
  41:19, 62:25, 63:17,
  63:21, 67:21
**concerns** [2] - 40:24,
  58:24, 61:16
**concluded** [1] - 86:23
**conclusions** [1] -
  52:12
**Conclusions** [4] -
  40:7, 50:19, 53:21,
  62:15
**concur** [1] - 78:14
**concurs** [1] - 39:23
**conduct** [3] - 62:6,
  78:9, 79:16
**Conduct** [1] - 5:20
**conducting** [1] - 79:6
**confer** [10] - 14:19,
  15:9, 18:9, 18:13,
  18:20, 19:7, 19:8,
  20:14, 20:18, 82:9
**conference** [8] - 31:9,
  31:10, 31:17, 60:1,
  60:7, 60:9, 66:19,
  68:2
**CONFERENCE** [1] -
  1:11
**Conference** [1] - 5:2
**confers** [1] - 26:14
**confession** [1] - 8:14
**confidentiality** [2] -
  5:14, 17:6
**confirm** [1] - 33:1
**confusion** [3] - 11:20,
  38:14, 41:8
**consciousness** [1] -
  10:22
**consider** [2] - 40:5,
  62:16
**consist** [1] - 40:15
**consistent** [4] - 55:23,
  85:15, 85:22, 85:23
**conspiracy** [1] - 53:11
**constrain** [1] - 63:2
**contains** [1] - 79:10
**contemplating** [2] -
  21:9, 21:10
**contented** [1] - 38:2
**contention** [1] - 57:7
**context** [2] - 29:9,
  74:7
**continue** [5] - 18:13,
  19:15, 26:15, 27:25,
  30:19
**continuing** [1] - 46:17
**control** [34] - 35:18,
  36:7, 36:17, 37:4,
  37:7, 37:8, 37:11,

37:15, 38:6, 38:8,
  44:12, 44:22, 45:23,
  46:22, 47:11, 47:12,
  47:16, 47:17, 48:5,
  48:7, 48:12, 48:13,
  48:18, 48:19, 49:16,
  51:3, 57:1, 58:18,
  59:8, 60:4, 60:10,
  62:16, 81:1, 81:4
**controversial** [3] -
  17:23, 34:6, 35:24
**controversy** [1] -
  32:15
**conversation** [2] -
  27:23, 80:5
**convoluted** [2] -
  27:10, 28:2
**coordinate** [4] - 13:15,
  19:1, 44:2, 44:13
**coordinated** [2] -
  40:15, 44:1
**coordination** [1] -
  13:16
**Corey** [4] - 7:12, 40:1,
  42:19, 42:21
**COREY** [1] - 2:17
**corners** [1] - 74:6
**corollary** [1] - 57:9
**correct** [13] - 16:21,
  23:25, 35:4, 35:8,
  45:10, 54:2, 61:8,
  72:8, 72:11, 73:2,
  76:4, 86:20, 87:4
**correctly** [1] - 48:9
**correspondence** [3] -
  16:17, 23:11, 23:20
**cost** [1] - 9:6
**COTLAR** [1] - 2:3
**counsel** [3] - 46:2,
  66:13, 78:3
**Counsel** [1] - 2:3
**Count** [1] - 55:21
**count** [1] - 34:11
**counter** [1] - 47:21
**couple** [7] - 13:24,
  17:3, 38:21, 40:1,
  55:24, 82:9, 85:5
**course** [5] - 23:10,
  39:3, 55:5, 78:8,
  79:4
**court** [1] - 8:10
**COURT** [213] - 1:1,
  7:3, 7:6, 7:10, 7:16,
  8:2, 8:6, 8:12, 8:15,
  8:21, 8:23, 9:1, 9:18,
  10:1, 10:22, 11:6,
  11:11, 11:21, 12:1,
  12:18, 13:2, 13:18,
  14:1, 14:12, 14:14,
  14:23, 15:2, 15:5,

15:7, 15:20, 15:25,
  16:3, 16:9, 16:13,
  16:22, 17:4, 17:15,
  17:21, 19:5, 19:17,
  20:10, 20:22, 20:24,
  21:1, 21:8, 21:13,
  21:16, 21:25, 22:13,
  22:19, 22:23, 22:25,
  23:4, 23:15, 23:18,
  25:4, 25:22, 26:3,
  27:18, 27:22, 28:5,
  31:4, 31:13, 33:5,
  33:15, 33:18, 33:21,
  34:1, 34:14, 34:23,
  35:5, 35:16, 35:19,
  36:2, 36:5, 36:10,
  36:13, 36:25, 38:16,
  38:21, 39:6, 39:10,
  39:12, 39:14, 39:19,
  39:24, 40:10, 40:13,
  41:7, 41:15, 41:21,
  41:23, 42:4, 42:9,
  42:19, 43:5, 43:11,
  44:9, 44:19, 46:2,
  46:14, 46:17, 46:20,
  46:25, 47:4, 47:23,
  48:4, 49:6, 49:23,
  50:5, 50:9, 50:11,
  50:14, 50:18, 50:25,
  51:21, 51:25, 52:9,
  53:6, 53:23, 54:15,
  54:20, 54:23, 55:8,
  55:13, 55:18, 56:4,
  56:6, 56:23, 57:8,
  58:6, 58:16, 59:1,
  59:8, 59:14, 59:17,
  59:22, 60:3, 60:14,
  60:22, 60:25, 61:6,
  62:8, 62:24, 63:6,
  63:16, 63:19, 65:10,
  65:20, 66:1, 66:18,
  67:2, 67:8, 67:16,
  67:23, 68:3, 68:8,
  68:12, 68:15, 68:18,
  68:21, 68:23, 69:2,
  69:4, 69:22, 70:21,
  70:24, 71:4, 71:17,
  71:19, 72:3, 72:8,
  72:11, 73:5, 73:7,
  73:19, 74:21, 75:9,
  75:13, 75:19, 75:22,
  75:25, 76:4, 77:16,
  77:18, 77:20, 77:23,
  78:24, 79:25, 80:4,
  80:9, 80:14, 80:17,
  80:22, 81:5, 81:8,
  81:11, 81:18, 82:2,
  82:5, 82:7, 82:10,
  82:18, 82:21, 83:2,
  83:6, 83:8, 83:11,
  83:16, 84:1, 85:3,

86:7, 86:20
**Court** [19] - 1:20, 14:5, 19:1, 22:22, 23:7, 28:22, 29:17, 29:18, 31:1, 51:19, 53:3, 61:13, 71:14, 72:1, 77:13, 77:15, 78:6, 87:3
**Court's** [5] - 11:13, 11:14, 13:1, 43:10, 49:13
**courthouse** [1] - 70:5
**Courtroom** [1] - 6:6
**courtroom** [2] - 69:14, 69:15
**cousin** [1] - 9:11
**cover** [2] - 39:1, 40:1
**covered** [3] - 38:25, 65:17, 71:5
**crack** [1] - 81:13
**craft** [1] - 63:3
**crafts** [1] - 63:12
**Craig** [1] - 4:12
**create** [2] - 67:16, 76:25
**creates** [2] - 48:24, 67:20
**creating** [1] - 67:18
**Crime** [1] - 5:12
**Crime-fraud** [1] - 5:12
**critical** [1] - 60:18
**criticism** [2] - 61:18, 61:20
**criticisms** [1] - 56:23
**crooked** [1] - 57:19
**cross** [23] - 32:25, 42:15, 42:17, 44:4, 44:5, 46:7, 46:11, 59:2, 65:1, 66:21, 66:24, 72:10, 72:14, 75:1, 76:16, 76:20, 78:1, 78:18, 78:21, 78:22, 79:4, 79:16, 85:14
**cross-speaking** [1] - 59:2
**crosses** [1] - 49:12
**Crow** [1] - 4:3
**crowds** [1] - 70:15
**crunch** [2] - 11:23, 12:3
**crux** [1] - 28:19
**crying** [1] - 72:14
**cuff** [1] - 63:9
**culpability** [5] - 24:4, 24:13, 25:8, 45:16
**currency** [1] - 82:7
**current** [1] - 76:6

# D

**Dallas** [1] - 3:13
**Dalmatian** [2] - 8:23, 16:4
**damage** [1] - 62:7
**damages** [1] - 62:4
**date** [15] - 13:6, 13:19, 14:8, 14:9, 14:11, 19:20, 20:9, 20:13, 21:25, 27:1, 31:18, 31:19, 39:14, 80:25, 84:15
**dates** [9] - 11:7, 12:1, 12:3, 12:24, 13:24, 14:6, 20:9, 84:10
**Daubert** [1] - 11:19
**Davis** [1] - 4:14
**Davis-Denny** [1] - 4:14
**days** [8] - 21:24, 23:10, 35:17, 47:14, 63:16, 65:17, 65:25, 66:2
**DC** [3] - 2:15, 2:25, 3:19
**deadline** [11] - 10:14, 11:19, 11:20, 14:6, 19:21, 20:13, 20:19, 22:3, 22:7, 23:9, 23:10
**deadlines** [10] - 10:25, 11:12, 11:15, 26:25, 39:2
**Deal** [1] - 81:13
**deal** [2] - 63:11, 86:14
**December** [2] - 83:10, 83:11
**decide** [5] - 15:15, 34:7, 55:6, 63:2, 84:24
**decided** [1] - 15:16
**declaratory** [1] - 64:4
**declined** [2] - 54:19, 55:2
**DEEPWATER** [1] - 1:5
**Defendant** [4] - 2:22, 3:3, 3:9, 3:18
**defendant** [2] - 48:17, 50:2
**defendants** [1] - 51:24
**definitely** [1] - 58:2
**defraud** [1] - 53:12
**degree** [1] - 25:8
**demonstrative** [4] - 77:1, 77:5, 79:9
**Denny** [1] - 4:14
**DEPARTMENT** [1] - 2:13
**depo** [1] - 24:24

**deponent** [2] - 84:10, 84:14
**deponents** [3] - 84:22, 84:25, 86:18
**depos** [1] - 27:15
**Deposition** [1] - 5:11
**deposition** [40] - 9:19, 11:18, 12:17, 13:4, 14:5, 14:25, 15:23, 16:16, 18:18, 18:25, 31:24, 33:6, 33:11, 33:19, 37:18, 39:11, 39:16, 39:19, 72:20, 73:17, 73:22, 74:7, 74:15, 76:3, 76:6, 76:7, 76:8, 76:15, 76:19, 76:23, 77:24, 78:1, 78:10, 79:4, 84:7, 84:10, 84:17, 84:18, 85:14, 86:15
**depositions** [22] - 24:10, 29:5, 29:9, 30:24, 31:2, 31:20, 31:21, 32:13, 32:18, 32:22, 32:25, 33:2, 33:4, 37:17, 41:4, 44:15, 45:6, 60:8, 76:9, 85:14, 85:19
**describing** [1] - 61:18
**designate** [1] - 72:10
**designated** [6] - 78:2, 78:15, 78:16, 84:25, 86:11, 86:15
**designation** [5] - 12:7, 12:16, 18:25, 78:18, 84:8
**designations** [5] - 5:11, 12:7, 12:13, 84:19, 86:18
**detail** [1] - 63:22
**determinations** [2] - 53:16, 53:17
**developed** [1] - 25:19
**devote** [1] - 84:15
**devoting** [1] - 75:12
**Dewers'** [2] - 39:11, 39:16
**Dexter** [1] - 2:18
**difference** [1] - 45:15
**different** [7] - 20:10, 30:17, 43:21, 59:21, 59:22, 62:8, 86:19
**difficult** [3] - 28:11, 51:11, 52:4
**difficulty** [1] - 9:20
**digital** [4] - 70:21, 70:23, 70:25
**Dillon** [9] - 52:25, 53:6, 53:8, 53:20, 53:24, 53:25, 54:4,

54:14, 55:3
**direct** [5] - 76:7, 76:12, 78:9, 78:19, 79:16
**directed** [2] - 37:22, 59:4
**direction** [3] - 29:17, 59:21, 59:22
**directly** [1] - 39:4
**disagree** [3] - 71:11, 77:10, 78:20
**disagrees** [1] - 49:5
**discharge** [3] - 56:3, 65:17, 65:18
**disclaimers** [1] - 9:7
**disclose** [3] - 14:10, 20:5, 36:21
**disclosure** [1] - 20:2
**DISCOVERY** [1] - 1:11
**discovery** [4] - 29:5, 37:22, 41:3, 64:25
**discuss** [1] - 13:19
**discussed** [2] - 22:14, 37:11, 63:21
**discussing** [1] - 28:3
**discussion** [3] - 10:24, 58:8, 62:9
**discussions** [2] - 19:23, 48:22
**dismissed** [1] - 24:1
**dispersed** [2] - 53:13, 54:1
**dispersement** [1] - 54:8
**dispose** [1] - 66:2
**disposing** [1] - 67:5
**disposition** [1] - 10:11
**distinct** [1] - 62:3
**DISTRICT** [2] - 1:1, 1:2
**dividing** [1] - 36:8
**document** [6] - 30:20, 36:1, 37:10, 37:24, 38:6
**documents** [7] - 14:15, 27:7, 30:12, 32:16, 37:3, 38:7, 38:8
**dog** [4] - 9:6, 9:8, 25:24, 52:20
**DOJ** [1] - 4:6
**Don** [1] - 15:17
**DON** [1] - 2:22
**DONALD** [1] - 3:9
**done** [12] - 13:9, 13:15, 19:25, 25:20, 29:25, 34:6, 35:16, 56:17, 74:23, 77:5, 78:8, 84:13
**door** [2] - 76:18, 79:11
**doored** [1] - 76:3

**double** [1] - 80:7
**down** [14] - 8:16, 16:15, 16:24, 16:25, 18:20, 19:16, 36:15, 42:3, 50:1, 53:20, 72:14, 74:14, 74:19, 76:14
**Dr** [6] - 16:15, 16:24, 24:17, 57:24, 58:20, 58:22
**draft** [4] - 11:7, 11:12, 40:8, 47:8
**draw** [3] - 49:14, 50:16, 61:17
**drawing** [1] - 48:24
**drawn** [2] - 49:9, 49:17
**drill** [12] - 56:18, 56:21, 57:13, 57:17, 57:18, 57:24, 58:1, 58:2, 58:13, 58:22, 58:23, 61:19
**drill-pipe-high** [2] - 58:1, 58:22
**drill-pipe-low** [2] - 58:2, 58:23
**drink** [1] - 70:6
**drinks** [1] - 49:9
**driven** [1] - 21:18
**drop** [3] - 34:21, 36:2, 41:21
**due** [2] - 12:15, 24:10
**dump** [2] - 30:20, 79:24
**duplication** [1] - 44:3
**during** [10] - 10:15, 28:25, 29:1, 34:7, 36:23, 38:8, 38:9, 46:22, 47:11, 49:19, 58:25, 63:24, 65:12, 67:14, 84:20

# E

**easier** [3] - 18:19, 41:5, 60:20
**EASTERN** [1] - 1:2
**easy** [1] - 18:23
**eating** [1] - 16:12
**education** [1] - 9:15
**eight** [1] - 82:20
**Eisert** [1] - 17:19
**either** [15] - 19:15, 26:5, 28:13, 28:16, 31:23, 33:5, 34:9, 40:23, 43:17, 44:14, 53:23, 57:1, 63:6, 66:3, 80:14
**elements** [1] - 86:15
**elicit** [2] - 47:17, 50:6

elicitation [1] - 47:11
elicited [1] - 54:6
eliciting [1] - 50:3
eliminate [1] - 19:24
Elm [1] - 3:12
email [10] - 17:19, 18:23, 24:13, 24:14, 24:16, 24:19, 24:20, 24:22, 48:25, 51:9
emailed [1] - 24:16
encouraged [1] - 30:10
end [6] - 31:6, 63:3, 78:3, 81:2, 81:5, 81:7
ends [1] - 81:1
ENFORCEMENT [1] - 2:12
engaged [1] - 53:11
Engelbert [1] - 10:6
ensures [1] - 31:23
entailed [1] - 32:18
enter [2] - 26:12, 36:23
entered [2] - 17:5, 17:23
entire [9] - 29:6, 35:12, 47:21, 58:25, 65:22, 76:6, 76:7, 76:18, 76:19
entirely [1] - 65:21
entitled [1] - 42:6
ENVIRONMENTAL [1] - 2:12
envisioning [1] - 74:21
equipment [2] - 69:10, 71:2
Equipment [1] - 6:5
Erica [1] - 7:24
ERIKA [1] - 3:12
especially [1] - 45:10
ESQ [20] - 2:3, 2:6, 2:10, 2:13, 2:14, 2:17, 2:20, 2:22, 3:3, 3:6, 3:9, 3:10, 3:10, 3:11, 3:11, 3:12, 3:15, 3:15, 3:18, 3:21
essentially [1] - 76:18
establish [1] - 35:22
estimate [1] - 37:9
et [5] - 9:8, 27:4, 31:3, 32:1, 62:12
evening [1] - 15:11
events [1] - 21:20
evidence [32] - 10:9, 21:19, 24:23, 25:16, 36:19, 41:20, 42:25, 44:25, 47:11, 47:12,

49:15, 57:13, 57:20, 58:2, 58:11, 58:24, 59:3, 59:12, 60:7, 60:17, 60:19, 62:10, 62:16, 62:22, 65:18, 79:24, 85:9, 85:24, 86:1, 86:16
evidentiary [2] - 21:23, 63:4
exactly [9] - 33:7, 35:20, 36:9, 42:12, 48:8, 55:7, 59:7, 73:14, 74:12
exam [1] - 79:6
examination [11] - 32:25, 42:15, 65:2, 75:1, 76:16, 76:20, 77:18, 78:10, 78:18, 79:16
examine [1] - 72:14
examined [1] - 78:5
examining [1] - 79:4
example [6] - 11:19, 45:6, 47:24, 50:5, 62:11, 72:4
exceed [2] - 39:17, 39:19
except [4] - 12:14, 13:9, 32:25, 69:18
exception [1] - 57:6
exclude [1] - 59:12
excluded [2] - 64:19, 65:6
exclusion [1] - 64:18
Exhibit [1] - 5:19
exhibit [9] - 24:24, 26:16, 26:24, 27:8, 27:14, 28:16, 35:9, 37:13, 37:15
exhibits [21] - 26:18, 27:2, 28:10, 28:14, 28:15, 28:23, 29:8, 29:19, 30:4, 30:6, 30:15, 31:11, 32:4, 32:7, 32:12, 32:17, 35:12, 35:22, 35:25, 36:6, 37:19
existed [1] - 56:25
expect [6] - 14:15, 21:19, 42:16, 42:17, 83:20, 85:25
expectation [2] - 21:23, 43:25
expecting [2] - 43:21, 43:22
experience [1] - 18:16
expert [41] - 9:22, 16:15, 24:23, 31:20, 32:22, 32:24, 34:21, 37:6, 47:24, 56:22,

65:12, 72:5, 72:6, 72:7, 72:10, 72:25, 74:3, 74:4, 74:6, 74:18, 74:22, 74:23, 74:25, 75:1, 75:2, 75:5, 76:8, 76:25, 77:2, 77:25, 78:10, 79:4, 79:7, 79:8, 79:17, 79:24
Expert [1] - 39:17
Experts [1] - 5:13
experts [38] - 11:18, 14:10, 16:25, 20:3, 24:11, 24:17, 27:4, 34:17, 35:1, 35:6, 50:3, 56:14, 56:17, 57:23, 64:24, 65:15, 65:25, 71:12, 71:24, 72:13, 73:8, 74:9, 74:10, 74:12, 75:4, 75:13, 75:17, 75:24, 76:23, 77:12, 78:16, 79:1, 81:3, 81:14, 81:17, 81:22, 84:3
explain [2] - 19:14, 77:13, 77:14
explains [1] - 78:12
exploring [1] - 30:13
explosion [1] - 56:15
express [1] - 42:10
expresses [1] - 74:22
extend [2] - 10:14, 11:17
extended [8] - 11:7, 11:12, 11:15, 11:17, 11:22, 12:1, 12:2, 12:4
extending [1] - 10:25
extension [1] - 10:20
extensions [1] - 10:18
extent [6] - 53:20, 54:5, 54:9, 55:25, 56:1, 78:14
extra [4] - 18:6, 18:14, 18:24, 27:5
extreme [1] - 27:15

## F

facing [1] - 12:3
Fact [5] - 40:7, 50:19, 52:7, 53:21, 62:15
fact [12] - 14:7, 31:20, 34:17, 34:22, 35:2, 35:6, 42:1, 43:2, 59:6, 64:10, 84:6, 84:16
factors [3] - 24:4, 25:9, 54:11
facts [2] - 54:7, 56:24

factual [3] - 61:11, 61:14, 62:11
fair [6] - 36:22, 48:2, 48:3, 54:3, 74:5, 78:4
fairest [1] - 76:21
fairly [2] - 15:8, 67:5
fairness [2] - 38:13
fall [2] - 51:4
False [2] - 53:8, 54:22
familiar [1] - 57:4
far [4] - 8:12, 9:8, 26:17, 78:16
fashion [1] - 37:20
fast [1] - 28:4
fast-forward [1] - 28:4
favor [1] - 16:3
FCRR [3] - 1:20, 87:6, 87:7
fear [1] - 74:17
fears [1] - 20:6
federal [3] - 28:21, 54:25, 55:4
Federal [1] - 85:15
feedback [1] - 75:19
few [2] - 10:9, 22:14
fide [1] - 9:16
Fifteenth [1] - 2:24
figure [2] - 66:7, 67:18
figured [2] - 54:20, 82:18
figures [1] - 56:16
figuring [1] - 28:3
file [9] - 18:12, 19:13, 20:5, 20:21, 21:5, 21:18, 22:8, 24:19, 42:24
filed [6] - 18:15, 20:1, 23:8, 23:12, 40:25, 55:1
filing [4] - 19:21, 20:19, 21:9, 22:11
filings [2] - 19:11, 19:12
final [2] - 13:4, 71:15
findings [12] - 43:2, 51:15, 52:11, 53:3, 55:21, 61:14, 61:21, 61:22, 62:3, 62:11, 63:12
Findings [5] - 40:6, 50:19, 52:7, 53:21, 62:15
fine [17] - 22:5, 39:21, 41:7, 41:15, 43:13, 43:16, 49:8, 49:15, 50:15, 61:17, 70:1, 71:1, 80:9, 84:19, 84:20, 84:22
finished [2] - 15:24,

83:15
FIRM [1] - 2:5
first [11] - 7:14, 29:22, 30:8, 30:23, 38:7, 38:17, 42:23, 47:14, 53:23, 54:19, 78:25
First [1] - 10:1
FITCH [14] - 3:18, 8:14, 10:17, 10:24, 11:8, 11:24, 23:5, 23:16, 25:5, 33:25, 44:17, 44:23, 46:5, 82:13
Fitch [3] - 10:17, 23:5, 39:6
five [2] - 40:19, 40:22
FL [1] - 2:11
flat [1] - 48:23
FLEMING [1] - 3:10
flew [1] - 8:24
flies [1] - 10:1
floating [1] - 64:1
Floor [1] - 3:7
floor [1] - 69:15
Florida [2] - 40:2, 40:17
flow [12] - 56:18, 56:19, 57:12, 57:14, 57:16, 58:12, 58:22, 58:25, 63:16, 63:18, 65:13, 69:14
flowed [1] - 65:12
flows [1] - 14:9
fly [2] - 9:6, 9:25
follow [3] - 18:11, 34:2, 43:20
follow-up [1] - 34:2, 43:20
following [6] - 22:17, 47:25, 59:25, 74:3, 79:11, 79:18
food [1] - 70:6
footnote [1] - 41:21
force [1] - 11:4
forced [1] - 36:21
forcing [1] - 45:17
foregoing [1] - 87:4
forehead [1] - 46:19
forget [1] - 8:2
forgetful [1] - 53:24
forgive [1] - 32:21
form [6] - 9:22, 32:2, 33:13, 78:8, 79:2, 79:6
formal [2] - 25:20
formality [1] - 64:10
former [2] - 69:15, 69:24
formulate [2] - 47:25, 56:25

**forth** [2] - 28:10, 57:19
**forward** [5] - 15:15, 15:24, 17:19, 28:4, 43:7
**foundation** [1] - 28:15
**foundations** [2] - 29:9, 29:11
**founded** [2] - 33:15, 81:19
**four** [5] - 26:5, 35:18, 47:14, 74:6, 82:21
**Four** [1] - 35:19
**frankly** [4] - 23:12, 45:5, 63:4, 65:10
**fraud** [1] - 5:12
**Free** [1] - 69:24
**freestanding** [3] - 32:8, 32:12, 85:18
**Friday** [4] - 5:2, 13:10, 70:6, 76:24
**FRIDAY** [1] - 71:1
**FRILOT** [1] - 3:3
**fringe** [1] - 64:5
**front** [3] - 24:8, 52:25, 70:14
**full** [2] - 60:12, 69:21
**fully** [1] - 80:1
**functionally** [1] - 35:14
**functioned** [1] - 57:17
**functioning** [3] - 57:14, 59:5
**fundamentally** [1] - 76:13
**future** [2] - 9:24, 66:25

## G

**gain** [1] - 70:10
**gained** [1] - 37:14
**Gallic** [1] - 9:23
**game** [1] - 21:20
**Gansert** [1] - 12:14
**gap** [1] - 22:15
**Gasaway** [2] - 14:21, 51:7
**GASAWAY** [50] - 12:10, 12:22, 13:3, 13:21, 14:21, 15:8, 16:2, 16:21, 16:23, 17:11, 17:16, 17:22, 19:8, 20:25, 22:2, 22:7, 22:16, 22:20, 22:24, 23:3, 31:15, 33:2, 33:7, 33:20, 37:1, 38:14, 38:17, 42:12, 48:8, 49:2, 49:5, 51:7, 51:22, 58:17, 59:7, 59:10, 59:20, 59:24, 60:4,

67:25, 70:19, 70:22, 71:2, 73:13, 73:20, 75:7, 75:12, 75:18, 83:18, 84:2
**general** [3] - 10:18, 24:2, 37:1
**GENERAL** [2] - 2:17, 2:19
**gentleman** [1] - 9:20
**George** [1] - 4:3
**given** [9] - 13:4, 16:11, 18:7, 25:18, 29:4, 31:6, 44:7, 74:7, 82:14
**glad** [3] - 9:21, 76:1, 76:2
**Gladstein** [1] - 4:15
**glommed** [1] - 29:24
**Godley** [1] - 55:10
**GODLEY** [2] - 3:6, 55:10
**GODWIN** [7] - 3:9, 3:9, 3:14, 15:6, 45:17, 50:24, 61:10
**government** [2] - 55:1, 55:4
**Government** [1] - 53:12
**graduate** [1] - 9:13
**Graettinger** [3] - 12:16, 13:9, 13:10
**grain** [1] - 37:2
**Grand** [1] - 3:7
**grand** [2] - 64:15, 65:15
**Grant** [1] - 4:14
**granted** [1] - 10:14
**great** [9] - 32:13, 38:14, 38:15, 45:9, 52:1, 58:10, 70:25, 71:19, 86:14
**Greenwald** [3] - 68:11, 68:15, 68:16
**GREENWALD** [12] - 68:14, 68:17, 68:19, 68:22, 68:24, 69:3, 80:16, 82:25, 83:3, 83:7, 83:10, 83:14
**Gringarten** [2] - 57:24, 58:22
**gripe** [1] - 24:14
**gritty** [1] - 18:17
**ground** [3] - 27:24, 27:25, 48:21
**group** [9] - 17:24, 18:1, 19:12, 31:9, 35:12, 35:22, 36:5, 84:9, 85:20
**Group** [1] - 5:2
**groups** [1] - 35:25

**guess** [9] - 21:17, 22:17, 51:6, 51:8, 51:10, 55:9, 61:25, 62:18, 62:25
**gULF** [1] - 1:6
**Gulf** [2] - 53:14, 54:2
**guy** [3] - 72:22, 72:25, 73:1
**guys** [4] - 9:1, 68:5, 81:21, 83:17
**GWEN** [1] - 3:15

## H

**Hal's** [1] - 44:16
**half** [8] - 43:6, 44:4, 44:5, 46:22, 46:25, 47:4, 47:5, 47:6
**Hall** [1] - 81:13
**Halliburton** [9] - 3:9, 14:19, 15:11, 15:21, 40:17, 45:8, 50:22, 61:6, 61:16
**Halliburton's** [1] - 51:13
**halt** [1] - 18:25
**Hammerlock** [1] - 7:24
**hand** [2] - 62:23, 62:25
**handles** [3] - 12:11, 44:4, 44:5
**hands** [1] - 60:12
**hang** [1] - 9:4
**happy** [5] - 24:6, 25:3, 44:25, 68:20, 82:19
**Haycraft** [1] - 8:19
**HAYCRAFT** [4] - 2:22, 8:20, 8:22, 10:20
**HB** [1] - 1:21
**head** [3] - 34:14, 60:15, 73:4
**headache** [1] - 71:6
**heads** [1] - 31:11
**hear** [8] - 10:16, 32:11, 40:12, 42:4, 52:4, 52:7, 67:13, 82:23
**heard** [9] - 10:20, 12:10, 14:23, 30:20, 34:1, 51:11, 52:14, 62:20, 65:2
**hearing** [3] - 22:3, 30:21, 62:22
**heart** [1] - 38:21
**heartache** [1] - 45:9
**heartburn** [1] - 36:3
**heat** [3] - 82:25, 83:2, 83:13
**heck** [1] - 32:3
**held** [1] - 23:24

**help** [3] - 19:23, 54:15, 83:19
**helpful** [6] - 17:14, 55:9, 55:14, 63:13, 71:20, 83:18
**helping** [1] - 19:3
**HEMMELHOCH** [29] - 2:14, 16:5, 16:11, 21:11, 21:14, 21:17, 22:1, 26:20, 31:5, 32:21, 33:17, 36:15, 37:21, 38:19, 39:13, 39:22, 46:4, 56:13, 57:2, 57:22, 60:20, 60:23, 61:1, 61:8, 61:11, 68:6, 69:1, 73:4, 86:8
**hereby** [1] - 87:3
**Herman** [2] - 42:9, 61:24, 69:19
**HERMAN** [7] - 2:3, 2:3, 61:24, 62:18, 62:25, 63:7
**HESI** [2] - 42:16, 45:7
**hesitation** [2] - 34:23, 64:23
**hi** [1] - 9:12
**high** [2] - 58:1, 58:22
**highlight** [1] - 77:3
**highly** [1] - 78:11
**history** [1] - 81:15
**hit** [1] - 54:2
**hold** [1] - 73:9
**holdback** [1] - 75:4
**holdbacks** [1] - 73:10
**Honor** [62] - 12:22, 13:25, 14:2, 14:13, 14:21, 15:4, 16:2, 16:21, 17:11, 19:3, 19:19, 20:25, 21:3, 21:11, 22:1, 23:3, 23:25, 26:21, 27:20, 28:7, 29:21, 31:5, 31:15, 32:21, 33:17, 33:22, 34:15, 35:4, 36:12, 37:1, 37:21, 39:13, 39:23, 43:9, 43:19, 46:4, 48:8, 49:21, 50:24, 51:7, 51:23, 52:1, 52:21, 54:18, 55:10, 55:11, 55:15, 56:13, 58:17, 59:7, 59:21, 61:10, 66:9, 70:19, 71:3, 71:7, 71:22, 75:7, 75:18, 77:19, 83:18, 85:16
**Honor's** [1] - 84:23
**HONORABLE** [1] - 1:12

**hooey** [2] - 75:3, 75:6
**hope** [6] - 50:8, 50:9, 63:8, 65:5, 80:12, 83:12
**hopefully** [1] - 28:2
**hoping** [1] - 18:22
**HORIZON** [1] - 1:5
**Horizon** [1] - 63:25
**hotel** [1] - 45:1
**hour** [5] - 46:22, 46:25, 47:4, 47:5, 47:6
**hours** [6] - 46:24, 47:3, 47:13, 47:19, 82:9
**house** [1] - 82:24
**Houston** [1] - 3:17
**hunt** [1] - 52:20
**hypothetical** [2] - 46:7, 46:10

## I

**idea** [10] - 14:10, 18:10, 28:13, 47:21, 48:15, 61:3, 61:15, 67:1, 73:16, 85:18
**identification** [1] - 11:18
**identified** [2] - 24:23, 27:24
**identify** [2] - 7:21, 36:16
**IIAMS** [1] - 3:21
**imagine** [1] - 50:10
**impacted** [2] - 57:13, 57:16, 58:12
**impacts** [2] - 59:8, 59:9
**impediment** [1] - 58:21
**implicated** [1] - 53:17
**important** [2] - 24:15, 67:6
**impression** [2] - 11:16, 64:8
**improperly** [1] - 37:8
**IN** [2] - 1:5, 1:5
**in-camera** [2] - 14:6, 14:15
**in-limines** [1] - 20:16
**inclined** [2] - 82:10, 85:17
**including** [2] - 9:23, 40:19
**inclusive** [1] - 31:1
**inconsistency** [1] - 80:19
**incorrect** [2] - 40:7, 51:10

**incredibly** [2] - 48:16, 61:17
**indeed** [1] - 86:10
**indicate** [1] - 62:21
**infected** [2] - 46:4, 46:5
**inflate** [1] - 47:15
**Information** [1] - 5:8
**initial** [3] - 19:11, 19:12, 51:18
**insight** [1] - 38:11
**insofar** [1] - 57:13
**instance** [3] - 40:20, 57:24, 86:13
**instances** [1] - 72:16
**instead** [1] - 19:5
**intend** [5] - 36:17, 36:18, 38:7, 38:9, 60:17
**intended** [2] - 79:13
**intends** [2] - 47:12, 51:2
**intention** [1] - 85:8
**inter** [1] - 59:2
**inter-related** [1] - 59:2
**interest** [2] - 49:22, 68:1
**interested** [4] - 30:21, 40:12, 62:21, 66:20
**Interests** [1] - 2:16
**interests** [2] - 49:20, 51:14
**interference** [2] - 7:5, 8:25
**internally** [1] - 81:16
**internship** [1] - 9:15
**interposed** [1] - 58:21
**interpreting** [1] - 83:20
**interrupt** [1] - 21:3
**interrupting** [2] - 52:2, 55:12
**interruption** [1] - 55:13
**introduce** [3] - 7:3, 9:11, 25:15
**introduction** [1] - 44:24
**invite** [1] - 60:7
**involved** [3] - 55:6, 56:1, 68:16
**IRPINO** [3] - 2:5, 2:6, 8:8
**issue** [39] - 12:11, 16:23, 25:9, 28:19, 30:1, 35:9, 39:4, 45:13, 45:18, 46:21, 47:7, 52:5, 57:21, 62:19, 63:4, 63:5, 63:11, 63:16, 64:5,

64:15, 64:21, 65:3, 65:10, 65:14, 65:17, 65:21, 66:5, 66:12, 66:21, 67:4, 67:6, 71:11, 71:12, 75:24, 76:5, 76:17, 76:22, 83:21
**issues** [20] - 14:20, 15:14, 15:16, 19:24, 27:15, 44:6, 52:25, 54:7, 56:2, 56:3, 56:8, 56:9, 57:5, 58:5, 58:13, 61:14, 62:14, 68:1, 86:13
**items** [3] - 10:5, 10:11, 10:15
**Items** [1] - 5:5

## J

**jail** [1] - 69:21
**Jed** [1] - 4:8
**jENNY** [1] - 3:10
**Jim** [1] - 8:23
**Joe** [7] - 4:7, 12:10, 12:12, 13:8, 17:19, 18:24, 83:19
**Joe's** [1] - 18:23
**join** [5] - 50:22, 52:6, 52:11, 54:19, 55:2
**joined** [2] - 53:4, 53:9
**joins** [1] - 50:22
**JR** [1] - 3:11
**JUDGE** [1] - 1:13
**Judge** [25] - 12:20, 13:17, 15:6, 18:8, 22:9, 22:25, 23:13, 25:5, 25:7, 25:23, 43:8, 51:1, 51:2, 52:15, 61:25, 62:20, 62:21, 63:11, 63:14, 66:20, 69:15, 69:23, 69:24, 70:23, 74:5
**judge** [1] - 10:17
**Judge's** [2] - 40:6, 41:9
**judgment** [6] - 11:4, 63:3, 64:4, 65:2, 66:22, 66:24
**juicy** [1] - 84:16
**JULY** [1] - 7:1
**July** [5] - 1:6, 5:2, 11:13, 11:14, 16:16
**JUSTICE** [1] - 2:13
**justifiably** [1] - 45:8

## K

**Karis** [3] - 4:17, 34:15, 77:21

**KARIS** [6] - 34:15, 34:20, 77:19, 77:21, 77:24, 78:25
**KATZ** [1] - 2:3
**keep** [6] - 19:10, 20:13, 22:2, 26:15, 28:3, 42:2
**keeping** [1] - 19:2
**keeps** [1] - 70:25
**Kelkar** [1] - 37:6
**Kerry** [5] - 4:11, 4:17, 34:15, 55:15, 56:7, 58:7, 59:15, 61:19, 63:16, 64:10, 65:10, 73:21, 77:21, 80:1, 80:4
**kicked** [1] - 19:9
**Kim** [1] - 13:16
**kind** [10] - 29:14, 29:16, 30:20, 44:15, 44:20, 47:7, 51:2, 63:8, 63:22, 70:15
**kinds** [1] - 9:7
**kitchen** [3] - 83:6, 83:8, 83:13
**KLINEFELTER** [1] - 3:3
**knock** [1] - 18:22
**knowledge** [1] - 86:15
**knows** [2] - 42:19, 47:16
**KUCHLER** [1] - 3:20

## L

**LA** [5] - 2:4, 2:8, 2:24, 3:5, 3:23
**Labor** [2] - 22:17, 22:21
**laid** [3] - 28:16, 29:10, 29:11
**Lamar** [1] - 3:16
**Lane** [1] - 4:3
**Langan** [1] - 70:8
**language** [5] - 35:10, 47:8, 71:9, 73:3, 80:6
**last** [16] - 10:24, 11:3, 14:4, 14:16, 17:12, 17:20, 23:12, 23:17, 38:9, 48:25, 49:19, 55:24, 70:11, 71:25, 77:17, 81:12
**Last** [1] - 39:17
**late** [1] - 17:12
**LAW** [1] - 2:5
**law** [4] - 9:13, 24:2, 54:19, 54:25
**Law** [4] - 40:7, 50:19, 53:22, 62:15

85:2
**listed** [1] - 10:11
**lists** [4] - 14:7, 34:12, 36:8, 37:15
**litigating** [1] - 65:7
**litigation** [2] - 37:23, 56:2
**litigation's** [1] - 43:5
**live** [4] - 31:23, 33:5, 33:10, 33:18
**LLC** [2] - 3:3, 3:21
**LLP** [1] - 3:18
**LMRP** [1] - 10:7
**loading** [1] - 10:6
**location** [2] - 57:24, 61:19
**Logistics** [1] - 6:3
**logistics** [1] - 69:5
**look** [23] - 7:15, 7:19, 10:10, 15:18, 16:5, 18:8, 22:2, 26:7, 28:10, 28:15, 29:10, 31:18, 35:25, 44:15, 44:16, 44:20, 51:11, 66:7, 68:12, 73:5, 73:13, 80:22
**looked** [2] - 17:17, 70:20
**looking** [6] - 7:25, 12:21, 26:6, 29:16, 32:16, 56:11
**looks** [3] - 7:16, 11:17, 70:3
**loop** [1] - 9:3
**loose** [1] - 82:9
**Los** [1] - 3:8
**loud** [1] - 63:10
**LOUISIANA** [2] - 1:2, 7:1
**Louisiana** [3] - 1:22, 40:16, 43:15
**love** [1] - 84:1
**low** [2] - 58:2, 58:23
**lucky** [1] - 25:24
**Lucy's** [1] - 7:18
**lunch** [1] - 16:7
**Lyle** [2] - 4:16, 51:23
**LYLE** [8] - 51:23, 52:1, 52:21, 53:8, 54:3, 54:22, 55:3, 55:11

## M

**M-I** [3] - 44:18, 44:19, 44:20
**magic** [2] - 27:1, 31:18
**MAGISTRATE** [1] - 1:13
**main** [1] - 64:5
**Malcolm** [4] - 7:3,

**Lawler** [1] - 12:14
**lawyer** [6] - 42:16, 42:17, 42:18, 43:23
**lawyers** [1] - 43:22
**lead** [2] - 46:2, 68:10
**lease** [1] - 5:7
**least** [4] - 40:21, 55:8
**leave** [2] - 16:22, 55:16
**leaves** [2] - 16:23, 21:2
**led** [2] - 68:11, 84:8
**left** [2] - 12:16, 23:1
**legs** [2] - 8:2, 8:3
**less** [1] - 13:14
**letter** [5] - 23:16, 55:19, 56:5, 79:14, 83:20
**letting** [1] - 68:23
**LEVIN** [1] - 2:9
**LEWIS** [1] - 2:22
**liability** [4] - 58:14, 62:5, 66:12
**Liaison** [1] - 2:3
**liaison** [2] - 66:13, 66:19
**lifetime** [1] - 9:8
**likely** [5] - 12:9, 25:7, 32:2, 33:13, 37:10
**likewise** [1] - 78:7
**limine** [14] - 11:19, 17:9, 17:12, 17:17, 17:18, 18:6, 19:2, 19:6, 20:3, 20:6, 21:18, 22:4, 23:8, 32:1
**Limine** [1] - 5:16
**limines** [1] - 20:16
**limit** [1] - 30:22
**limitation** [4] - 40:25, 41:1, 48:16, 84:18
**limitations** [1] - 27:15
**limited** [2] - 11:25, 58:23
**limits** [2] - 28:17, 35:22
**line** [12] - 12:6, 12:10, 15:8, 48:24, 49:8, 49:13, 49:15, 50:15, 58:8, 70:14, 80:5, 81:16
**lines** [1] - 61:17
**lineup** [1] - 74:11
**LISKOW** [1] - 2:22
**List** [1] - 5:19
**list** [16] - 13:14, 26:15, 26:16, 27:8, 30:11, 31:25, 32:17, 33:3, 35:9, 37:13, 84:6, 84:12, 84:16, 84:25,

9:12, 9:21
**manage** [1] - 19:3
**management** [1] - 62:18
**manner** [1] - 75:14
**manufacturer** [1] - 47:5
**Mariani** [1] - 4:13
**maritime** [1] - 24:2
**Mark** [4] - 4:9, 27:20, 27:22, 29:21
**marker** [1] - 36:15
**Marsh** [1] - 16:24
**MARTINEZ** [1] - 3:10
**MARY** [1] - 3:3
**material** [1] - 37:9
**materials** [1] - 33:1
**math** [1] - 31:16
**matter** [4] - 35:14, 42:1, 50:13, 50:14
**MATTERS** [1] - 5:4
**matters** [1] - 24:8
**MAZE** [12] - 2:17, 7:15, 40:8, 40:11, 40:14, 41:13, 41:18, 41:22, 42:2, 42:8, 42:20, 43:9
**Maze** [1] - 42:21
**MCCUTCHEN** [1] - 3:18
**McGREGOR** [1] - 3:11
**McNamara's** [1] - 69:23
**MDL** [3] - 51:15, 53:10, 64:5
**mean** [13] - 42:2, 43:5, 45:23, 48:6, 50:12, 57:22, 64:14, 69:2, 77:12, 79:18, 80:9, 84:17, 86:3
**means** [4] - 24:4, 26:7, 36:22, 58:4
**meant** [1] - 33:3
**Medier** [1] - 4:8
**meet** [11] - 14:19, 15:9, 18:9, 18:13, 18:20, 19:7, 19:8, 20:14, 20:18, 26:14, 32:9
**meet-and-confer** [10] - 14:19, 15:9, 18:9, 18:13, 18:20, 19:7, 19:8, 20:14, 20:18, 32:9
**meet-and-confers** [1] - 26:14
**memorandum** [1] - 77:8
**mentioned** [3] - 52:10, 57:4, 71:24

**met** [3] - 7:3, 8:4, 55:24
**MEXICO** [1] - 1:6
**MI** [2] - 45:16, 45:17
**Michoud** [4] - 5:5, 5:7, 10:5, 10:8
**middle** [1] - 48:21
**might** [11] - 10:13, 17:14, 18:5, 21:18, 26:23, 41:11, 57:18, 62:1, 63:2, 72:16, 75:16
**Mike** [9] - 4:4, 4:16, 9:11, 15:18, 19:3, 51:23, 52:9, 53:6, 83:25
**MILLER** [14] - 55:15, 55:19, 56:5, 57:9, 58:10, 59:16, 63:8, 63:18, 64:13, 65:1, 65:14, 66:19, 67:13, 67:20
**Miller** [2] - 4:11, 55:15
**mind** [5] - 43:3, 69:20, 69:23, 74:9, 74:12
**minimal** [1] - 38:14
**minute** [2] - 59:15, 76:12
**minutes** [3] - 10:9, 22:14, 45:20
**Miss** [3] - 68:11, 68:15, 86:13
**missed** [3] - 52:7, 65:10, 65:21
**missing** [1] - 67:4
**Mississippi** [2] - 40:2, 40:17
**misstated** [1] - 53:13
**misstating** [1] - 48:6
**MITCHELL** [1] - 2:9
**modest** [2] - 55:23, 67:5
**modification** [1] - 34:16
**modifications** [1] - 26:9
**modifying** [1] - 62:16
**MOIR** [2] - 9:17, 9:25
**moment** [1] - 68:7
**Monday** [7] - 10:15, 13:1, 22:17, 26:10, 26:11, 81:2, 81:8
**money** [2] - 21:12, 60:25
**monitoring** [1] - 49:11
**Montgomery** [2] - 2:18, 2:21
**month** [1] - 9:13
**months** [2] - 28:8, 29:14

**Monty** [1] - 81:13
**morning** [8] - 7:6, 10:8, 14:1, 14:2, 24:16, 27:21, 27:22, 64:11
**most** [3] - 17:9, 28:21, 59:11
**mostly** [1] - 65:24
**Motion** [1] - 37:5
**motion** [18] - 15:13, 17:9, 18:6, 20:21, 23:9, 23:12, 23:23, 24:1, 24:6, 24:7, 24:19, 24:25, 25:1, 25:6, 25:7, 25:20, 26:4, 67:20
**Motions** [1] - 5:16
**motions** [23] - 11:19, 17:8, 17:12, 17:17, 17:18, 18:12, 18:15, 18:17, 19:2, 19:6, 19:13, 19:21, 20:1, 20:3, 20:5, 21:6, 21:9, 21:10, 21:18, 22:4, 23:8, 32:1, 66:22
**move** [5] - 19:21, 20:9, 20:13, 25:19, 81:21
**moved** [1] - 26:25
**movement** [1] - 58:12
**moves** [1] - 69:1
**moving** [2] - 69:5, 73:15
**MR** [205] - 7:9, 7:15, 7:23, 8:4, 8:8, 8:14, 8:20, 8:22, 9:17, 9:25, 10:17, 10:20, 10:21, 10:24, 11:8, 11:13, 11:24, 12:10, 12:13, 12:22, 13:3, 13:21, 13:25, 14:2, 14:13, 14:21, 14:25, 15:4, 15:6, 15:8, 15:21, 16:2, 16:21, 16:23, 17:11, 17:16, 17:22, 19:8, 19:19, 20:21, 20:23, 20:25, 21:3, 21:15, 22:2, 22:5, 22:6, 22:7, 22:16, 22:20, 22:24, 23:3, 23:5, 23:16, 23:25, 25:5, 26:2, 27:20, 27:23, 28:7, 29:21, 31:15, 33:2, 33:7, 33:20, 33:22, 33:25, 34:3, 34:19, 35:4, 35:8, 35:18, 35:20, 36:4, 36:9, 36:12, 37:1, 38:14, 38:17, 39:4, 39:8,

39:11, 39:16, 39:21, 40:8, 40:11, 40:14, 41:13, 41:18, 41:22, 42:2, 42:8, 42:12, 42:20, 43:9, 43:19, 44:17, 44:18, 44:23, 45:15, 45:17, 45:19, 46:5, 46:6, 46:16, 46:18, 46:21, 47:2, 47:7, 48:3, 48:8, 49:2, 49:5, 49:21, 49:25, 50:8, 50:10, 50:12, 50:17, 50:24, 51:7, 51:22, 51:23, 52:1, 52:21, 53:8, 54:3, 54:18, 54:22, 55:3, 55:11, 55:15, 55:19, 56:5, 57:9, 58:10, 58:17, 59:7, 59:10, 59:16, 59:20, 59:24, 60:4, 61:10, 61:24, 62:18, 62:25, 63:7, 63:8, 63:18, 63:23, 64:13, 64:22, 65:1, 65:14, 65:19, 65:24, 66:9, 66:19, 67:7, 67:12, 67:13, 67:20, 67:25, 68:10, 69:21, 70:19, 70:22, 71:2, 71:7, 71:18, 71:22, 72:4, 72:9, 72:12, 73:6, 73:13, 73:20, 75:7, 75:12, 75:18, 75:20, 75:23, 76:1, 76:5, 77:17, 80:1, 80:7, 80:12, 80:19, 80:23, 81:7, 81:9, 81:12, 81:19, 82:4, 82:6, 82:8, 82:12, 82:13, 82:16, 82:19, 83:18, 84:2, 85:5
**MS** [47] - 16:5, 16:11, 21:11, 21:14, 21:17, 22:1, 26:20, 31:5, 32:21, 33:17, 34:15, 34:20, 36:15, 37:21, 38:19, 39:13, 39:22, 46:4, 55:10, 56:13, 57:2, 57:22, 60:20, 60:23, 61:1, 61:8, 61:11, 68:6, 68:14, 68:17, 68:19, 68:22, 68:24, 69:1, 69:3, 73:4, 77:19, 77:21, 77:24, 78:25, 80:16, 82:25, 83:3, 83:7, 83:10, 83:14, 86:8
**multiple** [1] - 15:11
**MUNGER** [1] - 3:6
**must** [1] - 39:6

**mute** [1] - 49:7

# N

**name** [1] - 15:2
**named** [1] - 68:16
**necessarily** [1] - 11:2
**necessary** [1] - 45:4
**need** [16] - 8:8, 9:22, 9:24, 12:4, 12:25, 25:17, 26:17, 28:8, 28:12, 29:12, 35:10, 47:13, 71:16, 72:16, 73:5, 82:14
**needed** [3] - 12:2, 29:10, 68:21
**needs** [2] - 42:15, 70:13
**negatively** [1] - 60:15
**Nesic** [1] - 58:20
**nether** [1] - 29:14
**nevertheless** [2] - 25:14, 25:15
**NEW** [2] - 1:3, 7:1
**new** [3] - 8:23, 40:25, 85:12
**New** [8] - 1:22, 2:4, 2:8, 2:24, 3:5, 3:23, 16:13, 68:25
**next** [9] - 8:15, 10:12, 13:10, 31:6, 35:24, 58:7, 63:15, 71:15, 80:24
**nice** [2] - 7:25, 21:16
**nicely** [1] - 68:14
**night** [6] - 17:12, 17:20, 23:12, 23:17, 48:25, 81:3
**nights** [1] - 21:15
**nitty** [1] - 18:17
**nitty-gritty** [1] - 18:17
**NOAA** [1] - 5:8
**nobody** [2] - 27:8, 69:1
**Nomellini** [2] - 4:9, 27:20
**NOMELLINI** [3] - 27:20, 27:23, 29:21
**NON** [1] - 5:4
**non** [6] - 8:9, 8:11, 17:23, 72:6, 72:10, 72:22
**non-alcoholic** [2] - 8:9, 8:11
**non-controversial** [1] - 17:23
**NON-PHASE** [1] - 5:4
**non-testifying** [1] - 72:6, 72:10, 72:22
**none** [3] - 40:25,

56:13, 59:3
**nonfunctioning** [1] - 59:5
**normally** [1] - 29:25
**nothing** [2] - 61:13, 76:17
**NRC** [3] - 50:21, 52:11, 52:24
**number** [16] - 8:7, 19:3, 29:19, 29:24, 30:11, 30:14, 70:22, 72:18, 72:22, 72:25, 73:1, 73:8, 81:14, 84:9, 85:16
**numbers** [1] - 35:23
**numerical** [1] - 28:17
**NW** [2] - 2:24, 3:19

## O

**O'Brien's** [4] - 50:21, 52:11, 52:24, 53:11
**O'Keefe** [1] - 2:4
**O'Keefe's** [1] - 9:11
**o'ROURKE** [1] - 81:9
**O'Rourke** [13] - 7:21, 11:14, 16:18, 21:4, 32:24, 54:15, 54:17, 54:24, 63:23, 64:14, 65:2, 71:21, 77:18
**O'ROURKE** [40] - 2:13, 7:9, 7:23, 8:4, 10:21, 11:13, 21:3, 21:15, 22:6, 23:25, 26:2, 44:18, 45:15, 45:19, 46:6, 54:18, 63:23, 64:22, 65:19, 65:24, 66:9, 67:7, 67:12, 71:22, 72:4, 72:9, 72:12, 73:6, 77:17, 80:19, 80:23, 81:7, 81:12, 81:19, 82:4, 82:6, 82:8, 82:12, 82:16, 82:19
**object** [2] - 26:6, 28:14
**objected** [4] - 17:25, 19:14, 27:8, 44:12
**objecting** [1] - 26:6
**objection** [3] - 19:16, 46:7, 81:24
**objections** [3] - 30:3, 30:9, 71:13
**objects** [1] - 47:9
**obviously** [9] - 18:1, 18:3, 19:9, 37:3, 37:18, 42:10, 71:10, 84:12, 84:19
**occasions** [1] - 84:2
**occupying** [1] - 69:24

**October** [1] - 80:24
**odd** [1] - 21:22
**OF** [5] - 1:2, 1:6, 2:13, 2:17, 2:19
**off-center** [1] - 57:19
**off-line** [3] - 58:8, 80:5, 81:16
**offer** [6] - 21:19, 36:17, 36:18, 38:7, 38:9, 85:5
**offered** [2] - 18:25, 57:23
**offering** [1] - 56:20, 86:18
**office** [3] - 9:9, 45:1, 49:7
**offices** [1] - 70:1
**Official** [1] - 1:20, 87:3
**officially** [1] - 12:17
**often** [1] - 57:4
**oil** [8] - 1:5, 53:13, 53:14, 54:1, 63:16, 63:18, 63:25, 65:12
**Oil** [2] - 64:3, 65:7
**OIL** [1] - 1:5
**old** [2] - 24:9, 70:7
**OLSON** [1] - 3:6
**ON** [1] - 1:6
**once** [6] - 30:24, 37:18, 51:4, 52:16, 54:2
**one** [61] - 7:14, 8:7, 10:21, 11:8, 12:24, 18:3, 18:4, 18:10, 19:21, 19:23, 25:9, 26:22, 29:5, 30:2, 30:8, 33:13, 33:23, 37:16, 38:23, 40:22, 40:24, 42:18, 43:7, 43:20, 43:23, 44:4, 47:25, 48:22, 50:2, 50:3, 52:10, 58:1, 62:14, 62:19, 65:15, 65:19, 65:25, 66:1, 66:7, 69:3, 69:14, 69:22, 73:10, 75:4, 75:13, 75:16, 76:22, 80:19, 80:20, 81:12, 83:24, 84:15, 85:7, 85:8, 85:13, 86:8
**One** [55] - 2:6, 5:17, 17:18, 17:22, 17:24, 18:17, 18:23, 19:13, 24:1, 26:4, 30:12, 30:17, 34:6, 34:20, 35:1, 35:3, 35:7, 35:16, 44:16, 57:6, 57:20, 58:5, 58:11, 58:13, 58:19, 59:12, 60:11, 60:19, 61:4,

61:12, 61:14, 61:22, 62:2, 62:6, 62:11, 62:17, 62:20, 66:11, 66:14, 70:16, 77:6, 77:12, 79:7, 84:3, 84:4, 84:5, 84:7, 84:11, 84:14, 84:22, 84:25, 86:11, 86:14, 86:16, 86:19
**ones** [4] - 11:18, 18:23, 36:22, 38:10
**ongoing** [1] - 68:7
**OPA** [2] - 6:15, 68:1
**OPA/Transocean** [1] - 66:12
**opening** [1] - 76:18
**operation** [2] - 60:18, 62:12
**operator** [4] - 66:13, 66:21, 66:23, 68:1
**opinion** [8] - 42:9, 47:25, 54:11, 56:25, 61:19, 62:17, 74:22, 79:11
**opinions** [5] - 49:16, 56:20, 57:23, 76:11, 77:13
**opponent** [1] - 78:18
**opportunity** [2] - 36:20, 53:18
**oppose** [1] - 24:6
**opposing** [1] - 36:23
**opposition** [6] - 19:6, 21:2, 23:7, 23:10, 23:13, 24:10
**oppositions** [1] - 22:13
**option** [1] - 45:10
**options** [2] - 57:25, 70:22
**order** [19] - 11:3, 12:25, 17:5, 17:20, 18:18, 24:9, 26:4, 26:9, 37:8, 43:1, 47:8, 56:25, 63:1, 71:7, 71:23, 71:25, 76:23, 80:19, 84:23
**Order** [1] - 5:14
**ordered** [2] - 16:7, 16:10
**orders** [1] - 26:4
**organizational** [1] - 19:4
**organizing** [1] - 17:13
**originally** [1] - 79:21
**ORLEANS** [2] - 1:3, 7:1
**Orleans** [7] - 1:22, 2:4, 2:8, 2:24, 3:5, 3:23, 16:13

**OTHER** [1] - 6:13
**otherwise** [2] - 20:19, 56:23
**ourselves** [2] - 32:18, 59:13
**outside** [2] - 79:23, 85:19
**over-inclusive** [1] - 31:1
**Overflow** [1] - 6:6
**overview** [1] - 17:14
**owe** [1] - 21:12
**own** [2] - 42:7, 78:10

## P

**page** [2] - 40:14, 80:25
**pages** [2] - 39:18, 39:20
**pain** [1] - 71:6
**panicked** [1] - 81:16
**PAPANTONIO** [1] - 2:9
**paper** [3] - 18:21, 20:5, 32:23
**paperwork** [1] - 64:7
**paragraph** [4] - 65:19, 65:25, 66:1, 66:7
**parameters** [1] - 22:9
**paranoia** [4] - 32:21, 33:15, 46:3, 81:18
**paranoid** [2] - 45:25, 48:10
**parenthetical** [1] - 39:17
**parse** [1] - 37:14
**parsing** [1] - 48:10
**part** [12] - 32:2, 40:6, 43:3, 45:14, 53:10, 58:2, 64:16, 64:17, 64:18, 65:3, 76:15, 76:16
**participants** [3] - 7:6, 9:1, 77:20
**PARTICIPANTS** [1] - 4:1
**participate** [5] - 40:5, 41:12, 41:24, 44:21, 53:18
**participated** [1] - 53:22
**participating** [2] - 53:1, 70:13
**particular** [1] - 26:23
**particularly** [2] - 29:4, 86:12
**parties** [38] - 5:15, 14:6, 17:6, 18:3, 19:1, 28:20, 28:21, 29:7, 29:13, 29:18,

30:2, 31:6, 34:9, 34:21, 35:13, 35:21, 36:3, 40:3, 40:6, 41:10, 42:3, 43:22, 43:25, 46:23, 47:10, 51:12, 56:8, 61:17, 61:23, 62:4, 62:10, 62:19, 69:7, 70:12, 71:16, 74:5, 76:16, 77:6
**parts** [4] - 15:11, 25:16, 32:10, 73:15
**party** [3] - 18:20, 42:14, 45:4, 59:11
**pass** [2] - 23:2, 43:10
**passed** [1] - 55:5
**past** [1] - 20:9
**pay** [2] - 60:25, 82:6
**PC** [2] - 3:9, 3:14
**penalties** [1] - 64:6
**Penalty** [1] - 6:14
**penalty** [3] - 24:4, 24:5, 25:9
**Pencak** [1] - 7:24
**pending** [5] - 23:9, 43:6, 52:23, 52:24, 53:10
**Pensacola** [1] - 2:11
**people** [13] - 7:23, 13:5, 14:23, 16:11, 19:15, 19:25, 20:4, 20:6, 28:14, 29:10, 29:23, 49:6, 84:16
**per** [2] - 18:23, 82:17
**percent** [1] - 25:14
**perfect** [1] - 41:23
**perfectly** [3] - 48:21, 64:22, 79:19
**perhaps** [3] - 58:8, 61:12, 78:22
**period** [2] - 19:7, 65:22
**periods** [1] - 37:22
**person** [7] - 8:17, 8:18, 44:4, 44:5, 55:24, 72:17, 72:23
**personally** [1] - 75:9
**perspective** [1] - 54:4
**pertains** [1] - 25:9
**pertinent** [1] - 58:15
**Petrino** [1] - 4:4
**phase** [17] - 24:5, 36:17, 36:18, 36:19, 36:23, 37:22, 38:8, 50:7, 53:16, 54:10, 64:24, 66:4, 67:9, 67:10, 67:14, 67:16, 67:19
**PHASE** [2] - 5:4, 5:10
**Phase** [122] - 5:17,

5:18, 5:19, 5:20, 6:3, 6:14, 10:15, 17:18, 17:22, 17:24, 18:2, 18:17, 18:18, 18:23, 19:13, 19:24, 23:23, 23:24, 24:1, 24:5, 24:8, 24:12, 24:14, 24:21, 24:24, 25:1, 25:2, 25:6, 25:7, 25:12, 25:16, 26:4, 26:16, 27:3, 29:4, 30:12, 30:17, 34:6, 34:20, 35:1, 35:3, 35:7, 41:3, 42:6, 44:16, 45:1, 50:19, 52:6, 56:9, 57:6, 57:20, 58:5, 58:11, 58:13, 58:19, 59:4, 59:12, 59:17, 60:1, 60:11, 60:17, 60:19, 61:4, 61:12, 61:13, 61:14, 61:21, 61:22, 62:2, 62:3, 62:6, 62:11, 62:17, 62:20, 64:9, 64:14, 64:17, 64:18, 64:19, 65:4, 65:6, 65:8, 66:11, 66:14, 66:16, 66:18, 67:7, 67:10, 67:14, 67:17, 67:21, 69:5, 70:16, 77:5, 77:12, 79:7, 83:12, 84:3, 84:4, 84:5, 84:7, 84:8, 84:9, 84:11, 84:14, 84:19, 84:20, 84:22, 84:25, 86:11, 86:14, 86:16, 86:19
**PHASES** [1] - 6:13
**phone** [8] - 7:6, 8:5, 9:1, 38:22, 49:6, 52:3, 52:8, 77:20
**phrase** [1] - 36:2
**physical** [1] - 10:8
**picked** [1] - 11:9
**picture** [3] - 8:10, 16:11, 83:14
**pictures** [1] - 7:12
**pie** [1] - 68:5
**pipe** [13] - 47:24, 56:18, 56:21, 57:13, 57:17, 57:18, 57:24, 58:1, 58:2, 58:13, 58:22, 58:23, 61:19
**piques** [1] - 78:12
**pivotal** [1] - 21:25
**place** [2] - 69:20, 70:4
**Place** [1] - 2:6
**places** [1] - 69:18
**Plaintiff's** [1] - 43:14
**plaintiffs** [1] - 54:14

**Plaintiffs** [2] - 2:5, 2:9
**Plaintiffs'** [1] - 2:3
**plan** [3] - 28:3, 28:11, 36:23
**planning** [4] - 20:4, 27:4, 48:12, 48:13
**play** [9] - 28:25, 57:8, 68:14, 73:15, 74:19, 84:3, 84:22, 85:21, 85:23
**playing** [3] - 77:3, 85:18, 86:1
**PO** [1] - 2:14
**point** [29] - 10:2, 13:15, 13:16, 24:12, 24:15, 25:25, 33:8, 33:12, 34:3, 39:5, 39:12, 45:15, 47:18, 49:13, 52:22, 60:7, 63:24, 66:24, 76:18, 77:24, 78:25, 79:1, 81:23, 83:23, 85:8, 85:17, 85:21, 86:2
**pointblank** [1] - 80:23
**pointed** [1] - 57:10
**pointing** [1] - 86:4
**points** [3] - 72:21, 80:9, 85:5
**POLK** [1] - 3:20
**Pollard** [3] - 65:16, 65:21, 66:7
**Pollution** [2] - 64:3, 65:8
**pool** [1] - 9:9
**portion** [4] - 12:5, 16:18, 79:3, 79:5
**portions** [1] - 57:18
**position** [6] - 29:3, 44:23, 56:18, 56:21, 77:9, 85:20
**positioning** [2] - 57:13, 57:16
**possibility** [1] - 86:17
**possible** [3] - 19:23, 30:10, 44:24
**post** [3] - 66:11, 85:10, 86:5
**post-trial** [3] - 66:11, 85:10, 86:5
**posture** [1] - 55:7
**potential** [1] - 58:14
**PowerPoint** [2] - 76:10, 76:12
**Poydras** [4] - 1:21, 2:23, 3:4, 3:22
**practically** [1] - 40:20
**practice** [2] - 30:16, 67:20
**pre** [8] - 28:14, 29:20, 30:6, 32:20, 35:11,

36:3, 45:24, 48:21
**pre-admit** [2] - 28:14, 36:3
**pre-admitted** [2] - 29:20, 32:20
**pre-admitting** [2] - 30:6, 35:11
**pre-allocate** [1] - 48:21
**pre-try** [1] - 45:24
**predict** [1] - 37:13
**prediction** [1] - 51:18
**preexisting** [1] - 74:2
**prefer** [1] - 81:2
**prejudice** [2] - 48:23, 64:20
**prejudiced** [2] - 56:2, 58:11
**prejudicial** [1] - 48:17
**premises** [1] - 29:6
**PREPARATION** [1] - 5:10
**preparing** [2] - 45:1, 59:4
**present** [4] - 41:2, 42:25, 58:24, 60:17
**presentation** [9] - 37:7, 37:8, 40:15, 40:19, 41:6, 41:8, 42:14, 44:2
**presented** [4] - 56:18, 60:19, 62:11, 62:17
**presenters** [1] - 43:4
**presenting** [3] - 36:19, 41:20, 60:6
**presuming** [1] - 49:11
**pretty** [2] - 30:13, 39:9
**preview** [1] - 20:17
**previously** [1] - 60:19
**primarily** [3] - 49:25, 86:3, 86:6
**principle** [1] - 38:4
**principles** [1] - 73:16
**prism** [1] - 29:11
**Pritzlass** [1] - 4:12
**problem** [11] - 14:13, 26:8, 45:2, 46:3, 46:10, 47:23, 52:9, 55:9, 55:13, 75:6, 75:10
**problematic** [1] - 65:5
**problems** [1] - 48:24
**procedure** [3] - 21:22, 35:6, 67:5
**procedures** [1] - 47:25
**proceedings** [1] - 86:23
**Proceedings** [1] - 1:25
**process** [19] - 12:16,

17:13, 18:11, 18:25, 19:4, 27:10, 27:13, 28:10, 29:2, 29:6, 31:7, 31:11, 35:21, 41:17, 50:6, 77:10, 81:24, 84:8, 84:13
**processes** [1] - 28:2
**PROCTOR** [1] - 2:9
**produced** [1] - 10:15
**produces** [1] - 62:7
**production** [2] - 14:16, 37:24
**Professor** [5] - 72:17, 72:18, 72:19, 72:20
**progress** [2] - 15:10, 27:16
**prohibition** [5] - 47:10, 48:15, 48:23, 49:3, 69:7
**promised** [1] - 75:20
**promptly** [1] - 14:17
**pronounced** [1] - 15:2
**proper** [1] - 59:5
**proposal** [7] - 20:10, 32:11, 33:8, 33:9, 35:3, 60:24, 76:6
**propose** [3] - 13:22, 71:14, 73:2
**proposed** [13] - 10:10, 13:13, 13:21, 17:20, 26:4, 47:8, 63:1, 70:9, 71:8, 71:12, 71:23, 76:23, 81:16
**proposes** [1] - 30:21
**proposing** [4] - 14:8, 20:12, 34:5, 74:22
**prospect** [1] - 66:20
**protect** [1] - 49:22
**protected** [1] - 49:20, 51:14
**protocol** [1] - 24:15
**prove** [2] - 63:25, 64:2
**provide** [2] - 31:1, 71:2
**proving** [1] - 39:12
**PSC** [10] - 14:3, 19:19, 26:23, 27:6, 40:15, 42:16, 60:16, 61:24, 69:18, 70:11
**publically** [1] - 55:1
**pull** [2] - 16:15, 19:16
**pulldown** [1] - 16:25
**pulled** [3] - 16:24, 74:14, 74:19
**pulling** [1] - 16:24
**punishment** [1] - 55:1
**puppy** [2] - 8:24, 9:6
**purchase** [1] - 9:6
**purchased** [2] - 70:17
**pure** [1] - 18:2

**purpose** [1] - 74:9
**purposes** [6] - 37:19, 40:6, 51:16, 52:16, 57:3, 85:13
**push** [2] - 20:9, 26:24
**pushback** [1] - 22:3
**put** [16] - 8:7, 9:23, 18:20, 22:20, 28:17, 36:15, 42:17, 49:7, 49:18, 57:20, 73:14, 77:1, 78:6, 78:11, 80:13, 83:19
**putting** [5] - 40:4, 47:8, 47:12, 51:15, 73:17

## Q

**quantification** [68] - 16:15, 36:7, 36:18, 36:19, 36:21, 37:4, 37:9, 37:12, 37:15, 37:24, 38:2, 38:3, 38:6, 38:12, 38:17, 38:18, 45:21, 45:25, 46:9, 46:12, 47:1, 47:11, 47:19, 47:20, 48:1, 48:14, 48:19, 48:20, 48:23, 49:10, 49:16, 50:7, 50:20, 51:3, 51:14, 52:5, 53:16, 54:1, 54:5, 54:10, 55:25, 56:1, 56:3, 57:1, 57:3, 58:3, 58:19, 58:24, 59:9, 60:1, 60:5, 60:10, 60:11, 60:12, 60:13, 64:19, 64:20, 65:4, 65:7, 65:9, 65:11, 65:15, 65:22, 68:6, 80:25, 86:12
**questioning** [2] - 45:7, 78:2
**questions** [4] - 40:23, 44:14, 45:4
**quick** [4] - 12:12, 15:8, 83:18, 86:8
**quote** [2] - 78:8, 84:24

## R

**RAFFERTY** [1] - 2:9
**raise** [1] - 34:4
**raised** [2] - 57:6, 83:21
**raises** [1] - 46:21
**rate** [4] - 57:12, 57:15, 57:16, 58:12
**rather** [2] - 23:24, 25:10

**re** [2] - 71:11, 75:20
**RE** [1] - 1:5
**re-argue** [2] - 71:11, 75:20
**reach** [2] - 67:3, 80:11
**reached** [2] - 76:1, 76:2
**reacting** [2] - 48:18, 48:19
**reaction** [3] - 51:18, 51:19, 56:7
**read** [4] - 23:19, 40:8, 40:13, 52:19
**reads** [1] - 40:18
**ready** [3] - 9:14, 16:1, 16:2
**real** [4] - 12:3, 46:3, 53:4, 83:18
**realize** [2] - 20:7, 82:14
**really** [12] - 7:25, 11:9, 21:18, 23:20, 27:3, 27:6, 27:11, 28:8, 45:10, 61:3, 62:24, 63:21
**rearrange** [1] - 69:13
**reason** [4] - 27:1, 36:4, 52:22, 64:3
**reasonable** [4] - 29:7, 29:13, 29:23
**reasons** [5] - 19:22, 20:8, 23:16, 63:3, 71:10
**rebut** [6] - 46:6, 46:12, 72:25, 73:13, 74:10, 74:18
**rebuttal** [8] - 16:25, 72:17, 72:21, 72:25, 73:10, 74:9, 74:18
**rebutting** [3] - 72:22, 72:23, 74:13
**received** [1] - 41:3
**recently** [1] - 17:9
**recognize** [2] - 7:23, 28:15
**recommend** [1] - 31:6
**record** [7] - 57:20, 61:4, 61:12, 73:14, 78:2, 85:21, 86:5
**Recorded** [1] - 1:25
**redial** [2] - 9:2, 9:4
**reference** [1] - 32:22
**referenced** [1] - 55:20
**refers** [1] - 23:10
**reflected** [2] - 11:2, 11:5
**reflecting** [1] - 29:4
**regard** [3] - 14:19, 17:5, 17:8, 26:14, 35:1, 35:2, 36:6,

42:9, 48:1, 56:8, 56:25, 60:15, 62:17
**regarding** [4] - 5:14, 11:3, 57:23, 78:3
**regroup** [1] - 63:15
**regular** [1] - 79:6
**rehabilitation** [1] - 78:22
**relate** [1] - 24:12
**related** [4] - 27:14, 59:2, 69:2, 86:14
**relates** [7] - 23:23, 24:1, 55:21, 57:14, 57:17, 58:11, 58:13
**relative** [5] - 16:18, 39:1, 44:10, 68:18, 75:1
**relator's** [1] - 54:18
**relevance** [1] - 37:3
**relevant** [2] - 37:11, 62:6
**reliability** [1] - 72:18
**reliance** [6] - 37:6, 71:12, 71:24, 77:25, 78:16, 81:17, 81:21
**relied** [5] - 37:8, 54:11, 76:17, 77:2, 78:17
**relief** [1] - 71:6
**relies** [2] - 47:24, 74:25
**rely** [4] - 24:17, 24:20, 72:5, 79:17
**relying** [8] - 16:18, 24:19, 34:11, 56:24, 74:3, 75:24, 76:23, 79:1
**remain** [1] - 40:11
**remaining** [1] - 15:16
**remains** [1] - 35:1
**remember** [2] - 37:5, 69:7
**remind** [1] - 53:6
**reminding** [1] - 42:2
**Removal** [1] - 5:5
**removal** [1] - 10:4
**render** [1] - 61:14
**replied** [1] - 16:20
**replies** [1] - 22:23
**reply** [4] - 15:12, 15:25, 19:9, 85:9
**report** [22] - 16:19, 26:20, 27:16, 31:8, 65:17, 65:24, 66:7, 72:7, 73:17, 73:20, 73:22, 73:25, 74:2, 74:6, 74:13, 74:18, 76:2, 76:18, 76:19, 77:2, 82:23
**reported** [1] - 26:13

**reporter** [1] - 68:16
**Reporter** [2] - 1:20, 87:3
**reports** [2] - 57:6, 74:14
**representation** [1] - 43:13
**representations** [1] - 25:13
**request** [11] - 10:14, 17:13, 25:2, 50:22, 50:23, 52:6, 52:11, 52:19, 53:4, 80:20, 81:23
**requested** [1] - 55:22
**require** [1] - 61:17
**required** [1] - 38:12
**requirement** [1] - 23:7
**requisite** [1] - 25:19
**reserve** [1] - 55:5
**reserving** [1] - 86:3
**resistance** [1] - 56:17
**resisting** [2] - 27:11, 27:12
**resolution** [2] - 76:1, 76:2
**resolve** [1] - 20:18
**resolved** [1] - 25:17
**resources** [1] - 21:7
**respect** [4] - 52:5, 62:4, 77:24, 86:12
**respects** [1] - 44:6
**respond** [2] - 32:14, 82:14
**responder** [1] - 51:24
**responding** [1] - 50:1
**response** [8] - 15:12, 18:14, 20:13, 21:23, 22:12, 34:24, 69:19
**rest** [4] - 27:3, 78:6, 78:19, 84:20
**resubmit** [1] - 85:10
**results** [1] - 62:7
**retrial** [2] - 41:11, 42:13
**retry** [3] - 58:19, 60:10, 60:11
**reveal** [3] - 20:16, 21:8, 21:22
**Revised** [1] - 5:21
**revised** [3] - 39:25, 69:9
**revisited** [1] - 82:15
**RICHARD** [1] - 3:15
**Richard** [1] - 4:15
**RICHARDSON** [1] - 3:21
**rid** [2] - 61:1, 66:8
**RIG** [1] - 1:5
**rings** [2] - 49:1, 49:4

**RMR** [1] - 1:20
**road** [2] - 53:20, 76:15
**Rob** [29] - 12:9, 14:21, 16:20, 17:10, 20:12, 20:24, 24:16, 26:13, 31:14, 33:23, 34:3, 34:14, 36:25, 38:20, 40:11, 42:11, 43:20, 44:7, 44:10, 48:6, 51:7, 58:8, 58:16, 70:18, 71:8, 73:4, 73:5, 73:12, 82:22
**Rob's** [1] - 20:11
**Robin** [3] - 80:13, 80:14, 82:23
**rock** [1] - 71:17
**roll** [3] - 16:1, 16:2, 71:17
**rolling** [1] - 18:2
**RONQUILLO** [2] - 3:9, 3:14
**room** [2] - 38:22, 45:1
**Room** [1] - 69:16
**rooms** [2] - 6:7, 69:17
**Rooms** [1] - 6:8
**rounds** [1] - 17:3
**Roy** [2] - 8:23, 9:6
**rule** [4] - 34:20, 34:25, 37:17, 39:6
**Rules** [1] - 85:15
**rules** [3] - 38:12, 85:22, 85:24
**ruling** [4] - 25:21, 41:9, 61:12, 71:15
**rulings** [2] - 5:17, 42:13
**running** [1] - 83:16
**runs** [1] - 47:21
**Russell** [4] - 4:7, 12:10, 18:24, 83:19
**RUSSELL** [1] - 12:13
**Ryan** [1] - 4:10

---

**S**

**safety** [1] - 50:6
**SALLY** [1] - 1:12
**sandbox** [1] - 68:14
**Santa** [2] - 8:24, 9:6
**Sarah** [12] - 7:8, 7:9, 7:10, 7:24, 16:3, 21:11, 26:19, 36:14, 39:12, 57:9, 58:8, 84:8
**SARAH** [2] - 2:14, 3:21
**sarah** [1] - 60:14
**Sarah's** [2] - 12:6, 57:10, 58:20
**saved** [1] - 51:8

**saving** [1] - 51:19
**saw** [3] - 37:25, 38:1, 60:15
**scenario** [2] - 58:23, 75:8
**schedule** [7] - 10:10, 11:3, 13:12, 18:7, 18:24, 25:3, 60:11
**scheduled** [1] - 37:25
**SCHELL** [1] - 3:20
**scheme** [2] - 64:15, 65:15
**school** [1] - 9:13
**score** [1] - 72:20
**Scotland** [1] - 9:12
**Scottish** [1] - 9:23
**scramble** [1] - 45:9
**screen** [1] - 16:6
**SCTN** [1] - 2:12
**SEAN** [1] - 3:10
**Sear's** [1] - 69:15
**seat** [2] - 40:21, 68:2
**seating** [1] - 70:9
**Seating** [1] - 6:9
**second** [4] - 17:24, 48:16, 61:2, 79:1
**Secretary** [1] - 45:6
**section** [1] - 65:16
**sections** [1] - 16:25
**security** [1] - 45:20
**see** [26] - 9:3, 10:3, 14:18, 19:15, 20:4, 20:18, 23:13, 28:25, 30:23, 34:23, 36:10, 37:13, 38:18, 39:12, 42:16, 47:23, 48:18, 48:20, 49:12, 49:14, 54:15, 66:2, 67:3, 74:11, 80:5, 83:20
**seeing** [1] - 64:10
**seem** [4] - 23:22, 78:4, 78:11, 78:21
**segment** [10] - 36:7, 37:11, 37:12, 40:14, 41:10, 44:22, 48:13, 48:14, 48:16
**segments** [1] - 70:9
**segue** [2] - 12:24, 33:23
**segueing** [1] - 10:18
**send** [1] - 81:10
**sense** [8] - 11:1, 17:2, 18:5, 20:4, 20:9, 29:4, 31:12, 37:19
**sent** [6] - 13:1, 17:1, 17:19, 24:13, 24:19, 24:20
**sentence** [1] - 81:10
**separate** [2] - 37:15, 54:7

**September** [5] - 10:7, 43:7, 43:17, 69:8, 70:6

**set** [4] - 22:14, 25:2, 31:10, 62:14

**settled** [1] - 64:5

**several** [4] - 19:22, 19:24, 57:25, 84:2

**sexy** [2] - 8:2, 8:3

**shaking** [2] - 73:4, 73:6

**shall** [2] - 40:15, 73:2

**shifting** [2] - 13:4, 13:6

**shock** [1] - 56:10

**shorts** [2] - 8:1, 8:2

**show** [1] - 76:10

**showing** [1] - 77:4

**Shushan** [1] - 63:14

**SHUSHAN** [1] - 1:12

**side** [5] - 21:19, 49:17, 68:10, 79:13, 82:17

**sign** [3] - 9:7, 24:18, 46:18

**significant** [1] - 37:22

**significantly** [1] - 21:24

**similar** [1] - 37:20

**simply** [2] - 38:11, 51:15

**SINCLAIR** [1] - 2:20

**single** [2] - 37:2, 37:25

**sitting** [1] - 49:10

**situation** [2] - 51:12, 74:8

**Skripnikova** [2] - 12:15, 86:13

**sky** [1] - 68:5

**slide** [3] - 76:10, 76:12, 79:9

**slides** [1] - 79:2

**small** [3] - 64:15, 65:14, 65:16

**sneaking** [2] - 73:23, 73:24

**snowden** [1] - 68:16

**Software** [1] - 1:25

**solicitor** [2] - 9:16, 9:18

**solution** [4] - 38:15, 45:3, 63:15, 64:21

**sometimes** [1] - 18:19

**somewhere** [1] - 18:6

**soon** [1] - 12:19

**sooner** [1] - 81:10

**sorry** [6] - 21:11, 44:17, 52:1, 54:22, 72:19, 74:24

**sort** [4] - 18:10, 19:1, 49:2, 72:9

**sought** [1] - 5:5

**sound** [1] - 66:18

**sounded** [1] - 66:16

**sounds** [4] - 31:13, 53:25, 66:14, 80:10

**source** [34] - 35:18, 36:7, 36:17, 37:4, 37:7, 37:8, 37:11, 37:15, 38:6, 38:8, 44:12, 44:22, 45:23, 46:22, 47:11, 47:12, 47:16, 47:17, 48:5, 48:7, 48:12, 48:13, 48:18, 49:15, 51:3, 57:1, 58:18, 59:8, 60:4, 60:10, 62:16, 81:1, 81:4

**South** [2] - 2:10, 3:7

**space** [2] - 69:24, 69:25

**speaking** [3] - 7:11, 59:2, 68:15

**specific** [2] - 32:11, 32:16

**specifically** [5] - 23:11, 23:23, 33:24, 50:3, 56:11

**specified** [1] - 25:9

**spend** [2] - 81:4, 85:25

**SPILL** [1] - 1:5

**spins** [1] - 46:10

**split** [1] - 32:9

**spoken** [2] - 25:23, 51:1

**Stack** [1] - 10:5

**staff** [1] - 69:7

**stage** [2] - 25:20, 25:21

**stand** [1] - 47:15

**standing** [1] - 46:16

**staple** [1] - 46:18

**start** [6] - 7:14, 12:21, 28:9, 32:6, 74:24, 81:1

**started** [1] - 62:19

**starts** [2] - 51:20, 80:24

**State** [10] - 2:16, 6:16, 40:16, 40:17, 42:21, 43:14, 43:15

**state** [2] - 51:2, 71:13

**statement** [1] - 44:12

**statements** [1] - 48:11

**STATES** [2] - 1:1, 1:13

**States** [16] - 2:12, 9:13, 27:7, 28:3, 28:20, 39:22, 44:24, 46:3, 46:21, 53:9, 53:12, 55:1, 56:12,

60:16, 63:20, 65:3

**states** [4] - 40:19, 40:22, 40:25, 41:11

**States'** [6] - 7:18, 25:13, 37:6, 37:24, 50:20, 55:21

**stating** [1] - 48:8

**status** [2] - 31:9, 82:23

**STATUS** [1] - 1:11

**stay** [1] - 49:18

**stayed** [1] - 53:10

**Steering** [1] - 43:14

**Stenography** [1] - 1:25

**STEPHANIE** [1] - 3:11

**STEPHEN** [1] - 2:3

**Steve** [18] - 11:14, 16:17, 17:1, 17:2, 21:4, 23:11, 23:20, 23:22, 54:24, 61:24, 62:9, 63:10, 63:23, 64:14, 65:2, 74:22, 80:18, 82:10

**STEVE** [1] - 2:13

**Stevick** [10] - 14:20, 14:22, 14:23, 14:24, 15:1, 15:2, 15:3, 15:5, 15:7, 18:12

**STEVICK** [1] - 14:20

**Stevick's** [1] - 15:23

**sticking** [1] - 75:23

**still** [17] - 15:16, 18:12, 26:13, 26:20, 27:5, 27:13, 28:9, 32:7, 34:9, 36:15, 60:5, 64:1, 65:4, 72:2, 72:24, 76:5, 79:15

**stipulate** [1] - 59:18

**stipulation** [5] - 20:19, 24:15, 24:18, 24:22, 60:16

**Stipulations** [1] - 5:22

**stipulations** [4] - 19:24, 19:25, 59:18, 68:4

**Stradley** [1] - 4:5

**strategy** [1] - 21:23

**stream** [1] - 10:22

**Street** [9] - 1:21, 2:7, 2:10, 2:23, 2:24, 3:4, 3:12, 3:19, 3:22

**strike** [1] - 8:12

**Strike** [1] - 37:5

**strikes** [1] - 21:22

**struck** [1] - 77:8

**structure** [1] - 81:25

**struggle** [1] - 61:7

**struggling** [1] - 61:4

**stuck** [1] - 53:21

**stuff** [7] - 32:19, 35:12, 62:20, 70:7, 75:21, 85:11

**stumped** [3] - 8:20, 8:21, 8:22

**style** [1] - 81:13

**subject** [3] - 78:3, 78:7, 78:19

**subjects** [1] - 39:7

**submit** [3] - 9:9, 14:6, 76:5

**submitted** [7] - 12:20, 14:15, 15:11, 18:2, 18:3, 74:2, 85:11

**subsequent** [1] - 21:24

**subsequently** [2] - 53:3, 55:6

**suggest** [5] - 9:21, 13:6, 32:5, 47:20, 76:14

**suggested** [1] - 40:2

**suggesting** [1] - 19:5

**suggestion** [3] - 30:14, 31:17, 31:22

**suggestions** [1] - 17:1

**Suite** [7] - 2:7, 2:11, 2:23, 3:4, 3:13, 3:16, 3:22

**summaries** [1] - 12:14

**summary** [7] - 10:9, 65:2, 66:22, 66:24, 76:11, 79:2, 79:9

**summer** [1] - 83:1

**Supplies** [1] - 6:8

**supplies** [1] - 70:5

**support** [2] - 79:11, 81:20

**suppose** [1] - 46:24

**supposed** [4] - 24:18, 33:10, 64:8, 64:14

**supposition** [1] - 62:24

**surface** [5] - 56:3, 63:18, 63:25, 65:18, 66:23

**Surfer** [1] - 7:19

**surfing** [1] - 7:19

**surprise** [1] - 23:21

**surprisingly** [2] - 72:13, 77:9

**SUSAN** [2] - 1:20, 87:6

**Susan** [2] - 87:3, 87:7

**susan_zielie@laed. uscourts.gov** [1] - 1:22

**suspect** [2] - 24:9, 26:23

**Sylvain's** [1] - 21:15

**T**

**table** [2] - 15:14, 68:2

**Tags** [1] - 6:10

**tags** [2] - 70:11, 70:13

**talks** [1] - 58:21

**TAMERLIN** [1] - 3:6

**Tammy** [1] - 55:10

**team** [3] - 7:18, 43:3, 68:10

**teammates** [1] - 38:19

**teams** [2] - 60:9, 69:12

**technical** [3] - 18:17, 69:7, 69:10

**Technical** [2] - 6:4, 6:5

**teed** [2] - 15:18, 65:1

**TELEPHONE** [1] - 4:1

**telephone** [4] - 7:5, 8:25, 49:1, 49:4

**telephonic** [1] - 31:9

**ten** [11] - 22:15, 23:10, 81:16, 81:20, 81:23, 81:25, 82:4, 82:8, 82:16, 82:19

**ten-day** [2] - 22:15

**tend** [2] - 21:5, 36:4

**terms** [5] - 29:22, 29:24, 52:5, 55:20, 56:17

**terrible** [1] - 68:19

**terrific** [1] - 12:18

**Test** [2] - 6:15, 6:16

**testified** [2] - 57:25, 86:13

**testifies** [1] - 74:6

**testify** [1] - 75:5

**testifying** [7] - 72:5, 72:6, 72:7, 72:10, 72:22, 74:3, 74:10

**testimony** [28] - 18:18, 31:23, 47:17, 50:4, 50:6, 54:6, 54:10, 54:11, 73:13, 74:15, 76:23, 77:1, 77:3, 77:25, 78:6, 78:7, 78:11, 78:12, 78:13, 78:14, 79:2, 79:8, 79:10, 79:11, 79:12, 79:18, 79:23, 86:19

**Texas** [2] - 40:2, 40:16

**THE** [216] - 1:2, 1:5, 1:5, 1:12, 7:3, 7:6, 7:10, 7:16, 8:2, 8:6, 8:12, 8:15, 8:21, 8:23, 9:1, 9:18, 10:1, 10:22, 11:6, 11:11, 11:21, 12:1, 12:18, 13:2, 13:18, 14:1, 14:12, 14:14, 14:23,

15:2, 15:5, 15:7,
15:20, 15:25, 16:3,
16:9, 16:13, 16:22,
17:4, 17:15, 17:21,
19:5, 19:17, 20:10,
20:22, 20:24, 21:1,
21:8, 21:13, 21:16,
21:25, 22:13, 22:19,
22:23, 22:25, 23:4,
23:15, 23:18, 25:4,
25:22, 26:3, 27:18,
27:22, 28:5, 31:4,
31:13, 33:5, 33:15,
33:18, 33:21, 34:1,
34:14, 34:23, 35:5,
35:16, 35:19, 36:2,
36:5, 36:10, 36:13,
36:25, 38:16, 38:21,
39:6, 39:10, 39:12,
39:14, 39:19, 39:24,
40:10, 40:13, 41:7,
41:15, 41:21, 41:23,
42:4, 42:9, 42:19,
43:5, 43:11, 44:9,
44:19, 46:2, 46:14,
46:17, 46:20, 46:25,
47:4, 47:23, 48:4,
49:6, 49:23, 50:5,
50:9, 50:11, 50:14,
50:18, 50:25, 51:21,
51:25, 52:9, 53:6,
53:23, 54:15, 54:20,
54:23, 55:8, 55:13,
55:18, 56:4, 56:6,
56:23, 57:8, 58:6,
58:16, 59:1, 59:8,
59:14, 59:17, 59:22,
60:3, 60:14, 60:22,
60:25, 61:6, 62:8,
62:24, 63:6, 63:16,
63:19, 65:10, 65:20,
66:1, 66:18, 67:2,
67:8, 67:16, 67:23,
68:3, 68:8, 68:12,
68:15, 68:18, 68:21,
68:23, 69:2, 69:4,
69:22, 70:21, 70:24,
71:4, 71:17, 71:19,
72:3, 72:8, 72:11,
73:5, 73:7, 73:19,
74:21, 75:9, 75:13,
75:19, 75:22, 75:25,
76:4, 77:16, 77:18,
77:20, 77:23, 78:24,
79:25, 80:4, 80:9,
80:14, 80:17, 80:22,
81:5, 81:8, 81:11,
81:18, 82:2, 82:5,
82:7, 82:10, 82:18,
82:21, 83:2, 83:6,
83:8, 83:11, 83:16,

84:1, 85:3, 86:7,
86:20
**therefore** [1] - 53:13
**they've** [5] - 43:13,
76:9, 84:7, 85:1
**thinking** [5] - 18:5,
19:10, 19:20, 60:14,
63:10
**thinks** [2] - 26:1, 75:2
**third** [3] - 18:1, 49:19,
69:15
**thirty** [1] - 45:20
**THOMAS** [1] - 2:9
**thoughts** [1] - 19:4
**three** [10] - 9:14,
17:16, 30:1, 30:6,
30:14, 38:9, 40:25,
41:11, 49:10, 49:19
**Three** [5] - 23:23,
23:24, 24:5, 25:1,
25:6
**three-year** [1] - 9:14
**throw** [1] - 18:10
**Thursday** [3] - 10:12,
22:16, 69:11
**tighter** [1] - 35:10
**timeline** [8] - 14:4,
38:25, 39:4, 39:8,
39:25, 69:9, 80:23
**Timeline** [1] - 5:21
**timing** [4] - 12:23,
24:9, 27:12, 31:17
**TO** [5] - 3:3, 4:14,
42:16, 45:7
**today** [9] - 7:13, 12:15,
15:24, 24:10, 25:25,
26:3, 41:14, 51:25,
71:6
**together** [7] - 28:22,
29:24, 30:8, 31:11,
78:23, 80:16, 83:19
**TOLEDO** [1] - 3:12
**TOLLES** [1] - 3:6
**Tom** [3] - 4:6, 4:13,
7:25
**Tony** [8] - 10:17,
11:16, 23:5, 25:4,
33:23, 39:6, 44:11,
44:13
**Tony's** [1] - 12:24
**took** [4] - 8:9, 15:14,
21:15, 70:11
**top** [1] - 7:14
**topic** [3] - 10:18,
13:20, 55:16
**topics** [1] - 78:5
**Torres** [2] - 16:15,
24:17
**Torres-Verdin** [2] -
16:15, 24:17

**tossing** [1] - 61:15
**track** [2] - 19:2, 70:25
**trail** [1] - 40:15
**transcript** [3] - 77:4,
77:5, 87:4
**Transcription** [1] -
1:25
**translation** [1] - 9:22
**Transocean** [17] - 5:6,
40:17, 50:18, 51:13,
53:5, 55:10, 55:20,
56:1, 60:6, 61:3,
61:16, 64:4, 64:6,
64:9, 65:5, 65:6,
65:8
**Transocean's** [4] -
52:6, 52:11, 58:14,
64:19
**transpired** [1] - 52:4
**Trial** [1] - 5:20
**trial** [55] - 7:18, 10:15,
25:2, 25:16, 27:3,
28:9, 28:25, 29:1,
29:8, 29:12, 30:7,
30:16, 30:25, 32:2,
32:20, 33:13, 34:7,
35:11, 35:15, 35:17,
37:2, 37:16, 38:1,
40:14, 40:19, 40:20,
42:6, 44:22, 45:11,
46:22, 47:12, 47:13,
49:17, 49:19, 53:2,
53:18, 53:22, 54:6,
60:8, 64:24, 66:11,
70:9, 73:8, 74:10,
76:11, 80:24, 80:25,
81:4, 84:5, 85:10,
86:5
**trial's** [1] - 43:6
**trials** [2] - 28:21,
30:15
**tried** [3] - 22:2, 33:23,
61:14
**tries** [1] - 43:8
**trouble** [1] - 70:1
**true** [2] - 43:18, 43:19
**truly** [2] - 61:4, 61:12
**try** [15] - 14:16, 25:15,
25:25, 31:7, 45:24,
51:2, 53:20, 58:18,
61:17, 63:24, 64:1,
66:16, 74:18, 85:5
**trying** [10] - 24:3,
37:14, 43:17, 48:12,
48:13, 52:16, 59:11,
59:13, 60:12, 62:19
**Tuesday** [5] - 14:16,
15:11, 22:20, 81:7,
81:8
**turn** [2] - 64:24, 67:10

**turns** [1] - 26:5
**two** [22] - 7:12, 8:7,
9:14, 20:2, 21:15,
23:1, 24:2, 24:9,
28:8, 29:14, 30:4,
30:11, 32:10, 43:6,
63:16, 65:17, 65:25,
66:2, 66:4, 70:9,
85:16
**TWO** [2] - 5:4, 5:10
**Two** [63] - 5:18, 5:19,
5:20, 6:3, 10:15,
18:2, 18:18, 19:24,
24:8, 24:13, 24:14,
24:21, 24:24, 25:2,
25:7, 25:12, 25:16,
26:4, 26:16, 27:3,
29:5, 41:3, 42:6,
45:1, 50:19, 52:6,
56:9, 59:4, 59:12,
59:17, 60:1, 60:17,
61:13, 61:21, 62:2,
62:3, 62:6, 64:9,
64:14, 64:17, 64:18,
64:19, 65:4, 65:6,
65:8, 66:16, 66:18,
67:7, 67:11, 67:15,
67:17, 67:21, 69:5,
83:13, 84:5, 84:9,
84:19, 84:20, 84:22,
85:1, 86:14
**two-day** [1] - 66:4
**two-year** [2] - 9:14
**TX** [2] - 3:13, 3:17
**tying** [1] - 47:7
**type** [3] - 49:3, 50:3,
64:7
**types** [3] - 18:17,
18:19, 48:21
**typo** [1] - 39:9

## U

**ultimately** [2] - 62:7,
63:11
**unauthorized** [2] -
60:23, 63:9
**unaware** [1] - 53:24
**uncontested** [1] -
17:18
**uncontrolled** [2] -
65:13, 65:23
**under** [5] - 14:4, 64:8,
64:13, 74:1, 79:9
**underlying** [1] - 29:6
**understandably** [1] -
45:8
**understating** [1] -
53:12
**understood** [7] -

10:25, 20:12, 29:8,
41:13, 41:18, 42:8,
43:9
**unfair** [4] - 47:21,
76:13, 78:11, 78:21
**unfairly** [1] - 63:2
**unfortunately** [3] -
45:3, 45:13, 69:20
**unified** [1] - 38:1
**unique** [1] - 44:6
**UNITED** [2] - 1:1, 1:13
**United** [21] - 2:12,
7:18, 25:13, 27:7,
28:3, 28:20, 37:6,
37:24, 39:22, 44:24,
46:3, 46:21, 50:20,
53:9, 53:12, 55:1,
55:21, 56:12, 60:16,
63:20, 65:3
**unless** [2] - 15:17,
32:23
**unmanageable** [1] -
48:24
**unquote** [2] - 78:9,
84:25
**unrelated** [2] - 78:15,
78:17
**unsealed** [1] - 55:4
**unworkable** [1] -
48:25
**up** [40] - 7:12, 8:7, 8:8,
8:15, 9:4, 11:9, 14:4,
15:18, 15:24, 17:10,
21:13, 23:20, 29:2,
31:19, 33:24, 34:2,
34:3, 37:9, 40:9,
40:10, 40:22, 40:24,
42:3, 43:20, 45:8,
45:19, 45:24, 46:11,
46:16, 57:15, 62:19,
63:11, 63:15, 65:1,
65:18, 66:12, 66:24,
76:10, 77:1, 83:22
**update** [5] - 12:7,
12:8, 12:12, 14:18,
26:16
**upset** [1] - 50:10
**US** [11] - 2:13, 4:6,
4:13, 4:15, 26:22,
36:19, 63:23, 65:7,
75:2, 81:16, 86:17
**US's** [2] - 52:12, 65:24

## V

**vacation** [1] - 25:24
**Verdin** [2] - 16:15,
24:17
**verify** [1] - 8:8
**version** [3] - 11:13,

11:14, 13:1
**video** [4] - 71:11, 84:3,
84:22, 86:1
**videos** [2] - 85:22,
85:23
**view** [3] - 29:22,
61:18, 61:19
**vigorous** [1] - 51:14
**visited** [1] - 82:15
**voluminous** [1] -
57:20
**vote** [1] - 61:10

## W

**wait** [3] - 10:16, 34:1,
75:22
**walk** [2] - 69:6, 69:8
**Walk** [1] - 6:4
**walk-through** [2] -
69:6, 69:8
**Walk-through** [1] - 6:4
**wants** [10] - 18:8,
22:10, 26:1, 29:17,
29:18, 46:6, 46:12,
63:2, 64:9, 70:23
**WARREN** [1] - 3:18
**Washington** [4] -
2:15, 2:20, 2:25,
3:19
**waste** [2] - 21:7, 85:11
**wasted** [1] - 20:1
**wasting** [2] - 75:10
**watching** [1] - 81:3
**Water** [5] - 24:4,
25:10, 50:21, 52:12,
55:22
**water** [2] - 63:25,
83:16
**ways** [1] - 28:18
**Wednesday** [3] -
71:15, 81:3, 81:6
**week** [32] - 10:3,
10:24, 10:25, 11:3,
11:7, 11:12, 11:22,
13:10, 18:6, 18:14,
18:24, 19:10, 19:21,
20:9, 20:14, 20:18,
22:23, 26:24, 26:25,
27:5, 30:19, 31:7,
35:11, 35:24, 36:11,
38:8, 57:25, 58:7,
63:15, 71:15, 72:1
**weekend** [2] - 81:4,
86:22
**weeks** [5] - 23:1, 38:9,
49:10, 49:19, 55:24
**weigh** [1] - 51:17
**WEINER** [1] - 3:20
**welcome** [1] - 16:13

**well-founded** [2] -
33:15, 81:19
**whatever's** [1] - 23:1
**who'll** [1] - 33:5
**whoever's** [1] - 49:6
**whole** [3] - 32:19,
38:18, 76:20
**wholeheartedly** [1] -
39:22
**will-call** [4] - 31:23,
33:8, 34:7, 34:12
**willing** [5] - 36:16,
64:23, 81:24, 82:6,
82:9
**win** [1] - 24:25
**WINFIELD** [1] - 2:20
**winter** [2] - 83:4, 83:5
**withdraw** [2] - 30:2,
30:8
**witness** [12] - 30:11,
33:10, 34:7, 34:8,
34:22, 42:15, 47:15,
47:17, 78:5, 79:24,
84:14, 85:19
**witness's** [2] - 78:7,
78:13
**witnesses** [19] - 14:7,
20:7, 21:6, 30:5,
31:2, 32:1, 32:6,
32:11, 32:17, 33:4,
33:13, 34:17, 35:2,
35:6, 50:2, 84:6,
84:7, 85:8, 86:10
**word** [4] - 10:20, 33:4,
34:1, 41:8
**words** [3] - 32:24,
54:24, 67:17
**works** [2] - 20:25,
68:12
**worry** [1] - 82:22
**worrying** [1] - 71:25
**worse** [1] - 57:11
**written** [1] - 63:1
**wrote** [1] - 55:19

## X

**X's** [1] - 72:20

## Y

**year** [3] - 9:14
**years** [3] - 24:2, 24:9,
43:6
**yesterday** [5] - 9:19,
14:25, 15:6, 15:24,
16:14
**York** [1] - 68:25
**YORK** [1] - 3:15

## Z

**zealous** [1] - 59:11
**Zielie** [2] - 87:3, 87:7
**ZIELIE** [2] - 1:20, 87:6