# United States Court of Appeals
# for the Fifth Circuit

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE
GULF OF MEXICO, ON APRIL 20, 2010
## Case No. 12-31155

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY, INCORPORATED; LFBP 1, L.L.C.; ZEKES CHARTER FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWiN; RONALD LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, on behalf of themselves and all others similarly situated; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE,

Plaintiffs – Appellants

v.

B.P. EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP PIPE LINE COMPANY,

Defendants – Appellees

v.

GULF ORGANIZED FISHERIES IN SOLIDARITY & HOPE, INCORPORATED,

Movants- Appellant

**Cons. w/Case No. 13-30095**

# PLAINTIFFS-APPELLANTS' MOTION TO
# SUPPLEMENT THE RECORD

Brent W. Coon
Federal Bar No. 9308
Texas Bar No. 04769750
215 Orleans
Beaumont, Texas 77701
Tel.: (409) 835-2666
Fax: (409) 835-1912

*Attorney for Plaintiffs-Appellants*

Plaintiffs-Appellants, through and with their counsel Brent Coon & Associates, hereby bring this Motion to Supplement the Record before this Honorable Court.  Counsel for the Defendants have been consulted about this motion and do not oppose it.  In support of their motion the Plaintiffs-Appellants state as follows:

## BACKGROUND

The Plaintiffs-Appellants filed their various state actions against the Defendants BP America Production Company, Transocean Offshore Deepwater Drilling, Inc., Transocean Holdings., LLC, Transocean Deepwater Inc., Transocean LTD., Triton Asset Leasing GMBH, (collectively, hereinafter referred to as "BP") followed by their subsequent transfer to the Eastern District of Louisiana under 28 U.S.C. § 1407.  As such these cases are related to the class action *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (MDL NO. 2179), and are identified as *Harley D. Allen, et al v. BP American Production Company* (12-2953), *Kevin D. Brannon, et al v. BP American Production Company* (12-964) and *Zuhair Abbasi, et al v. Transocean Deepwater, Inc. et al.* (10-2771).  On April 1, 2013, the parties in this case filed the joint record on appeal.

## REQUEST TO SUPPLEMENT THE RECORD

Rule 10(e) of the Federal Rules of Appellate Procedure governs the correction and modification of the appellate record. It states that any questions regarding the content of the record on appeal must be brought forth to the court of appeals. Fed. R. App. Proc. 10(e)(3).

**Docket Document 7863**: On May 2, 2012 the district court approved the proposed Deepwater Horizon Economic and Property Damages Settlement Agreement (hereinafter referred to as the "Settlement Agreement"). The Plaintiffs-Appellants timely objected to the proposed Settlement Agreement (Rec. Doc. 7224.) The objections regard several defects to the Class Settlement, including those related to the seafood claim form, accelerated deadlines to file claims, the extraordinary complexity of claims submission forms, and various notice requirements under Rule 23 of the Federal Rules of Civil Procedure. On October 22, 2012, the BP Defendants and the Plaintiffs Steering Committee filed Reply Memorandums in Support of Final Approval of the Economic and Property Damages Class Settlement. (Rec. Doc. 7727, 7731.)

A class action Fairness Hearing was scheduled to address the objections to the proposed Settlement Agreement on November 8, 2012. The day before the hearing, the law firm of Brent Coon & Associates requested the district court's permission to file a reply memorandum late and in excess of the ordinary page

Case 2:10-md-02179-CJB-DPC   Document 10892-1   Filed 07/31/13   Page 4 of 44

limitations in further support of its earlier Motion in Opposition and Objections to the Economic Class Settlement.    (Rec. No. 7863.)    Although the reply memorandum was filed near the day of the Fairness Hearing, it was produced as a good faith attempt to provide to the district court the most up-to-date information concerning actual implementation of claims associated with the BP claims process as outlined in the proposed Settlement Agreement. Specifically, the reply memorandum provides detailed information to the district court on the actual day-to-day issues encountered with management of the BP claims from the perspective of claimants.    It was the position of the Plaintiffs-Appellants that such issues needed to be made known to the district court prior to its final approval of the Settlement Agreement.  The issues addressed:

- Considerable delays in providing interim and final payments to those affected by the BP spill, as supported by statistics.
- Failure of the claims process to be—as promised—"claimant friendly", "generous" and "transparent".
- A lack of security and comfort in the settlement process.
- Uncertainty as to what settlement amounts were being proposed to class claimants.

- Unanticipated administrative delays instituted by BP which contributed to the frustration of claimants as shown by several supportive examples.

On November 8, 2012, the day of the Fairness Hearing, the district court denied the Plaintiffs-Appellants' filing of their reply memorandum. (Rec. Doc. 7870.) At the same time the district court struck the reply from the case docket. *Id.* Subsequently the district court approved the class Settlement Agreement on December 21, 2012. (Rec. Doc. 8139.)

On January 25, 2013 the Plaintiffs-Appellants timely filed their notice of appeal regarding the district court's order and final decision approving the Settlement Agreement. (Rec. Doc. 8349.) In their notice the Plaintiffs-Appellants stated their intention to appeal the district court's decision to strike their earlier motion from the record:

> "The order of Judge Carl J. Barbier from the Eastern District of Louisiana (Rec. Doc. 7870) which denied and struck from the record the Plaintiffs' Motion for Leave to File Reply Memorandum Late and in Excess of Ordinary Page Limitations (Rec. Doc. 7863), based on the pleadings and submissions of the parties, entered in this action on the 8th day of November 2012." (Rec. Doc. 8349 at page 4 of 5.)

On April 1, 2013 the parties in this case submitted to the court the Stipulated Record on Appeal. (Rec. Doc. 00512193663.) Although the stipulation identifies Record Document 7863, the document cannot be accessed by the parties or the court. The document, which was specifically noted to the court in the Plaintiffs-

4

Appellants' Notice of Appeal, is relevant to their appeal in this case. Therefore in accordance with the court's inherent equitable powers, the Plaintiffs-Appellants as represented by the law firm of Brent Coon & Associates request that they be allowed to supplement into the Record on Appeal Document 7863 associated with Case 2:10-md-02179-CJB-SS within the U.S. District Court for the Eastern District of Louisiana.

**Existing Docket Documents**:    In accordance with the court's inherent equitable powers, the Plaintiffs-Appellants in this case as represented by the law firm of Brent Coon & Associates also request that this Honorable Court supplement into the Record on Appeal for this case certain documents associated with Case 2:10-md-02179-CJB-SS within the U.S. District Court for the Eastern District of Louisiana.  These documents, which are associated and linked to the district court's docket for this case, were inadvertently missing from the Stipulated Record on Appeal filed with this court on April 1, 2013, and are is relevant to the Plaintiffs-Appellants appeal in this case. (See Rec. Doc. 00512193663.)

| Filing Date | # | Docket Text |
|---|---|---|
| 8/16/2010 | 14 | MOTION to Appoint Counsel Ervin A. Gonzalez to Plaintiffs' Steering Committee by Plaintiff. |
| 8/25/2010 | 80 | STATUS REPORT by Plaintiffs' Interim Co-Liaison Counsel. |
| 8/27/2010 | 106 | MOTION to Appoint Counsel Mikal C. Watts to Plaintiffs' Steering Committee. |

| Filing Date | # | Docket Text |
|---|---|---|
| 8/31/2010 | 146 | Application for Appointment to the Plaintiffs' Steering Committee by Jeffrey A. Breit. |
| 9/7/2010 | 173 | Application of Rhon E. Jones for Plaintiffs' Steering Committee (Attachments: # (1) Exhibit A). |
| 9/14/2010 | 223 | Application of Paul M. Sterbcow for Plaintiffs' Steering Committee. |
| 9/15/2010 | 235 | Application of Scott Summy, Esq. of Baron & Budd, P.C. for Appointment to the Plaintiffs' Steering Committee. |
| 9/17/2010 | 261 | Application for Appointment to the Plaintiffs' Steering Committee by Matthew E. Lundy. |
| 9/21/2010 | 309 | Application of Robin L. Greenwald to Plaintiffs' Steering Committee. |
| 9/23/2010 | 322 | Request for Application of Elizabeth J. Cabraser for Appointment to Plaintiffs' Steering Committee. |
| 9/23/2010 | 324 | Request: Application of Calvin C. Fayard, Jr. for Appointment to PSC. |
| 9/23/2010 | 325 | Request: Application for Appointment of Michael C. Palminter To Plaintiff Steering Committee. |
| 9/23/2010 | 326 | Request: Application of Brian H. Barr for Appointment to the Plaintiffs Steering Committee. |
| 9/24/2010 | 335 | Request: Application of Conrad S.P. Williams, III for Appointment to Plaintiffs' Steering Committee (Attachments: # (1) Exhibit). |
| 9/24/2010 | 337 | Request: Application of Joseph F. Rice to the Plaintiffs' Steering Committee. |

| Filing Date | # | Docket Text |
|---|---|---|
| 9/24/2010 | 340 | Request: Application of Alphonso Michael "Mike" Espy and Morgan & Morgan for Plaintiffs' Steering Committee. |
| 9/24/2010 | 347 | Memorandum: Application of Philip F. Cossich, Jr. for Appointment to the Plaintiffs' Steering Committee (Attachments: # (1) Proposed Order). |
| 9/27/2010 | 359 | Request: Application of Robert T. Cunningham for Appointment to Plaintiffs' Steering Committee. |
| 2/3/2011 | 1101 | TRANSCRIPT of Status Conference held on January 28, 2011 before Judge Carl J. Barbier. |
| 8/8/2011 | 3638 | ORDER: The Court at this time invites requests for appointment or reappointment of the Plaintiffs' Steering Committee and Plaintiff Executive Committee. Any such request shall be filed not later than September 9, 2011. Signed by Judge Carl Barbier on 8/8/2011. |
| 11/7/2011 | 4507 | MOTION to Establish Account and Reserve for Litigation Expenses by Plaintiffs' Co-Liaison Counsel, Plaintiffs' Steering Committee. (Attachments: # (1) Memorandum in Support, # (2) Proposed Order, # (3) Exhibit A - Fosamax Order, # (4) Exhibit B - Zimmer Hip Order, # (5) Exhibit C - Gadolinium Order) |
| 11/21/2011 | 4682 | RESPONSE/MEMORANDUM in Opposition filed by Plaintiff re [4507] MOTION to Establish Account and Reserve for Litigation Expenses. |
| 11/22/2011 | 4696 | RESPONSE/MEMORANDUM in Opposition filed by BP Defendants re [4507] MOTION to Establish Account and Reserve for Litigation Expenses. |
| 11/22/2011 | 4697 | EXPARTE/CONSENT MOTION for Leave to File Reply Brief in Further Support of PSC's [4507] Motion to Establish Reserve and Court-Supervised Fund for Litigation Expenses by Plaintiffs' Steering Committee. (Attachments: # (1) Proposed Pleading Reply Brief, # (2) Proposed Order) |

| Filing Date | # | Docket Text |
|---|---|---|
| 12/28/2011 | 5022 | ORDER AND REASONS Establishing Reserve Account re [4507] Motion to Establish Account and Reserve for Litigation Expenses. Signed by Judge Carl Barbier. |
| 4/16/2012 | 6252 | Class Action Complaint for Private Economic Losses and Property Damages |

## CONCLUSION

Based on the foregoing reasons, and in the interest of justice, Plaintiffs-Appellants and their counsel respectfully request the Fifth Circuit Court of Appeals enter an Order allowing supplementation of the record in this appeal under Rule 10(e) of the Federal Rules of Appellate Procedure for the documents identified herein.

Dated: July 9, 2013                    Respectfully submitted,


                                       /s/ Brent W. Coon

                                       Brent W. Coon
                                       Federal Bar No. 9308
                                       Texas Bar No. 04769750
                                       215 Orleans
                                       Beaumont, Texas 77701
                                       Tel.: (409) 835-2666 Fax:
                                       (409) 835-1912

                                       *Attorney for the*
                                       *Plaintiffs-Appellants*

8

Case 2:10-md-02179-CJB-DPC   Document 10892-1   Filed 07/31/13   Page 10 of 44

## CERTIFICATE OF SERVICE

1 hereby certify that the above and foregoing pleading has been electronically filed through the Court's CM/ECF system and/or LexisNexis File & Serve, which will send a notice of electronic filing to all counsel of record on July 9, 2013.

*/s/ Brent W. Coon*

Brent W. Coon

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: OIL SPILL BY THE OIL RIG                    MDL NO. 2179
"DEEPWATER HORIZON" IN THE
GULF OF MEXICO, ON APRIL 20, 2010

THIS DOCUMENT RELATES TO:

*In re the Complaint and Petition of Triton*
*Asset Leasing GmbH, et al, No. 10-2771*

*SDTX 2012-22886; Harley D. Allen, et al v.*
*BP American Production Company*

*NDFL 3 11-00189; Abbasi, et al v. Transocean*
*Deepwater, Inc. et al*

                                                   SECTION: J
 *4:11-cv-06055; Kevin Brannon, et al v.*
*BP American Production Company;*

*4:11-cv-06055; Harley D. Allen, et al v.*           JUDGE BARBIER
*BP American Production Company;*

*And*

*Unfiled Economic and Property Damages*
*Class Members*                                    MAG JUDGE SHUSAN

## PLAINTIFFS REPRESENTED BY BRENT COON & ASSOCIATES REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS MOTION IN OPPOSITION AND OBJECTIONS TO THE ECONOMIC CLASS SETTLEMENT

Come now, Plaintiffs Represented by Brent Coon & Associates (hereinafter

referred to as "Plaintiffs" or "BCA"), in the above styled actions and files this Reply

Memorandum in Support of Plaintiffs' Motion in Opposition and Objections to the

Economic Class Settlement and respectfully ask this Court to amend or deny the

*Deepwater Horizon* Economic and Property Damages Settlement Agreement as

Amended on May 2, 2012. *See* Rec. Doc. 6430 (the "Settlement Agreement" or "Class Settlement").[1]

## I.  INTRODUCTION

The Seventh Amendment guarantees the right to a trial by a jury of one's peers not the right to trial by a PriceWaterhouseCooper auditor. *See* U.S. Const. amend. VII. The Seventh Amendment's promise of a jury trial is fundamental to our judicial system, but has been eroded over time through the efforts of tort reform advocates.  In large part, this class settlement continues that erosion by essentially forcing tens of thousands of victims of the Deepwater Horizon Oil Spill to waive their right to a trial by jury.   In return, these victims are not guaranteed anything from the class settlement.

BP is responsible under the law for dumping 200,000,000 gallons of oil in the Gulf of Mexico.  This was an unprecedented ecological disaster that severely impacted almost every aspect of the economies of the all of the coastal states for months, and even years yet to come. Some of the impact may have caused damage which will never be fully repaired.  Every new hurricane will throw millions of gallons of residual oil back up into the estuaries of the marshlands and the beaches of tourism driven communities.  Oil and dispersant mixes may wash up for decades to come and cause further long term ecological impact of epic proportions.

Immediately after the spill BP initiated a public relations program, very similar to others in the past they had dealt with, and straight out of the "BP Disaster Playbook."  BP began making different promises: (1) Promises of repair and restoration to the Gulf; (2) Promises of immediate payment of all losses; (3) Promises of interim payments to those

---

[1] Attached as Exhibit A is a list of Brent Coon & Associates who did not opt out of the Class Settlement or revoked their opt out prior to three days before the hearing and therefore retain standing to object to the terms of the class settlement.

displaced and out of work or whose businesses were failing. These promises were unfulfilled in the ensuing months, and with public outrage and political rhetoric overtaking the airwaves, BP shifted to plan B. They went to the White House and cut a deal to buy time and renewed credibility with a pledge of $20 Billion for a compensation fund to defray the losses incurring in a rapidly collapsing coastal economies. Thus, Ken Feinberg was hired to be the new face of BP claims.

The rehashed promises by the Feinberg team to pay everyone quickly, usually within 24 to 48 hours, fairly, and in a claimant friendly manner turned into months of bureaucratic delays as a result of the shear complexity and enormity of the damages. Feinberg, in desperate need of some face saving, established the Emergency Advance Payment Program ("EAP") program, paying in one lump sum losses carrying through October of 2010. Since that time, the interim payment efforts of the Gulf Coast Claims Facility ("GCCF") failed. Settlement efforts appeared to bottleneck through the claims review process with the use of the Brown Greer law firm, Price Waterhouse, and Worley adjusters, the "dream team" of the Feinberg program running the GCCF. The fund ultimately and suddenly closed in the early spring of this year, some would argue through a *coup d'état*. Regardless of why it happened, the $20 billion was not paid. In fact only a fraction, far less than half, was distributed during the time the fund operated.

Again claimants were put into no man's land. This time the center of gravity shifted to proposed "class settlements" between the plaintiff steering committee within the MDL and BP. These much ballyhooed settlements would distribute an estimated $7.8 Billion to deserving, and delayed, claimants. Once again, they promised that it would be "claimant friendly", "transparent", and "more generous" than the GCCF. It would also set

up a medical monitoring program and stipends for those exposed in the cleanup process in the Medical Settlement. Additionally, the PSC would receive "up to" $600,000,000.00 for the attorneys fees associated with the settlement and work done in the MDL. No account has been made for the remainder of the $20,000,000.00 BP started with, as many billions are still not accounted for in the process.

All that aside, this Court issued a preliminary approval of the settlements back in May, five full months ago. An important ingredient to the settlement proposals was that claims could immediately be sent to the new class administration system, aka the Deepwater Horizon Economic Claims Center, or DHECC, for payment. Since the evaluation processes under Feinberg utilizing Brown Greer, PriceWaterhouseCooper, and Worley adjusters were not working, the PSC replaced it with a Pat Juneau supervised program utilizing Brown Greer, PriceWaterhouseCooper, and Worley adjusters. Unfortunately, and not surprisingly, the results of the aforementioned personnel change this time were pretty much the same. Most cases are still bogged down in the review process and the complaints of the GCCF that the claims process was unwieldy, insensitive, inflexible, unresponsive and inconsistent are all typical of what is happening now. It was for these reasons that BCA lodged a strong protest to Pat Juneau and the PSC liaisons that unless the deadline to opt out was not extended there would be a complete lack of an opportunity for Mr. Juneau to make many adjustments necessary to create some semblance of a functioning administrative claims office and everyone would opt out. These types of concerns apparently resulted in a brief stay of execution, from October 1 to November 1. Unfortunately, very little happened of a positive note to create any greater sense of security and comfort in participating in the class; and for those

reasons, large numbers of BCA represented clients reluctantly filed opt outs by the November 1, 2012 deadline. We understand that large numbers of other claimants have also filed timely notices of exclusion as well.

Objectors' primary complaint is that these proposals, and in particular the economic and property damage settlement, require claimants to trust a process that is patently untrustworthy. Why should any claimant forego their legal rights on a wing and prayer that they will be taken care of in an out of court settlement process, when all of the evidence to date suggests that doing so is at best a riverboat "crap shoot?" Going this route with no clue as to whether or not the class adjusters will in fact be "claimant friendly," "more generous than the GCCF," and "transparent" in the outcome, leaves claimants at great peril.

Objectors fundamental complaint is that this proposal is so whimsical in the analysis process that at the very least they should not have to make an election until AFTER the class has told them what, if anything, they are to be offered in an out of court settlement. There should be no sense of urgency or rush to judgment, the OPA statute extends claims to April 2013 and the parties to this proposal even agreed to extend it further for class claimants. Likewise, it may be years before there is any final appellate approval of these proposals. OPA itself mandated a settlement process with preservation of tort claims, and even the GCCF protocols provided for a reservation of tort claims. Why would the parties to this settlement proposal mandate an abrogation of those rights as a condition of the settlement. The threats of being left to wait for indefinite lengths of time has co-opted many to forego their tort rights and subject themselves to the mercy of this process. Others are so worn down from false promises over the years to resolve their

claims they are throwing their hands up. Even others are so near bankruptcy, or have already succumbed to bankruptcy as a result of the spill, and just have no ability to do anything else at this juncture.

Objectors would maintain that under these conditions, this court should make the opt out process "claimant friendly", and insist on a process that allows the claims process to make offers, just as the GCCF did, and then allow clients to make an election, just as the GCCF did. Anyone who can represent to this Court that this 1200 page settlement proposal is simple, clear, unambiguous, and takes into account all of the contingencies in the analysis process of every conceivable set of circumstances has been sitting in the back of a van with Cheech and Chong too long. This settlement is so overwhelmingly complex that most lawyers cannot even agree to any of the interpretations. Regardless, the proof is in the pudding when you look at what is actually coming out of the DHECC. We have the rare advantage in this case of actually looking at a number of "samples" of the process from cases submitted to the review process during the pendency of the fairness hearing. If the Court is not to entertain a mandate of a back end opt out, objectors would at least reiterate the requests to accept less onerous requirements to fulfill the opt-out notice requirements and further extend the deadlines.

Almost since the day of the Oil Spill, BP has promised to "pay all legitimate claims." This did not happen when BP internally handled the claims process; this did not happen when BP retained a third party administrator in Ken Feinberg; this has not happened with the new class proposals to date. In the five months of operation the Class settlement's actions have done little to instill confidence that "legitimate claims" would all be paid. Brent Coon & Associates submitted hundreds of claims in most of the

different settlement categories created by the fund. Claims were submitted for seafood, individuals, and businesses beginning the very first week the fund allowed claims to be filed. The reason that so many BCA clients have opted out of the settlement is due to the fact that that the present claims analysis process is functioning so unreliably.

## II. GENERAL COMPLAINTS

According to the statistics found on the DHECC portal, as of November 6, 2012, BCA has submitted 1,382 claims. Most of these have been on file for a number of months. Of those 897 (65%) have not had any notice issued on their claim. Of the 458 individual claims submitted only one (less than 1%) has received an offer of payment. Of the 274 business claims submitted only 18 (6.5%) have received an offer of payment. Of the 490 seafood claims submitted only 92 (18.7%) have received on offer of payment. One of our partner law firms, Danzinger & De Llano has directly submitted 45 of our claims and none have received offers.[2] Another partner law firm, D. Miller & Associates, has only received offers on five of the 130 claims they directly submitted to the fund. It is our position that the experiences of these 1500-plus claimants are a representative snapshot of what has happened to submitted claims as a whole.

The staff at BCA has been working on these claims for up to two and a half years and we are intimately familiar with most of them. Our firm spent considerable time attempting to relearn the submission process during the transition from the GCCF to the DHECC. Several dozen of the staff attended the full day briefing put on by the Steering Committee. Various members of the staff have specialized in the different types of claims to be submitted in order to gain additional expertise and getting those claims

---

[2] Attached as Exhibit B is a list of the several dozen law firms that have associated with Brent Coon & Associates to represent victims of the Deepwater Horizon oils spill.

through the review process. Our staff has dealt with dozens of "types" of deficiencies and each time a deficiency is cured, BCA employees change our submission process in an effort to avoid further contentions of document deficiencies of any type. For almost five months our staff has lived and breathed the DHECC, yet most claims simply are not getting offers. Additionally, BCA gets calls regularly from other law firms, accounting firms, and other individuals and businesses who are unable to get their claims paid through the DHECC complaining of the same sort of issues experienced daily by BCA staff.

To be clear, based on the responses to submitted claims received to date BCA categorically refutes BP's assertion in their motion that "the assertion that class members are unable to determine the compensation to which they are entitled under the Settlement Agreement is mistaken" and that "any class member seeking to determine his compensation may simply read the settlement agreement and determine how his circumstances fit into the framework." *See BP Reply Memorandum in Support Document 7731, Section IV. A. 2.*

In reality, the reviewers at the fund rarely make an attempt to see that claims get paid; instead they will find the first "missing" document and stop reviewing the claim. However, many times this "missing" document is not required under the terms of the settlement. They have regularly requested causation documents for claims from Zone A which do not require any proof of causation. We then have had to explain to the fund why the document is not needed, often to multiple people before they will begin reviewing the claim again. If the document is truly needed, supplementing often only

brings the process up to the point where the reviewer finds the next missing document and the process starts all over again.

Both the PSC and BP's briefs specifically argue that small businesses do not have to provide monthly P&L reports under the agreement. In the PSC's Support Memo they assert that:

> The Program will process and evaluate a small business claim based on bank statements or other underlying data where monthly P&L's were not prepared in the ordinary course of business. Hence, there is no requirement for the small business owner to engage in a process that is 'overly burdensome and cost prohibitive' in order to submit their claim; rather, the *burden is on the Program* to under take the accounting work at BP's expense.

*See* Plaintiff's Reply Brief in Response to Objections, Document 7727 at Page 58.

Despite this assertion, BCA staff members have been told directly by some of the auditors working on the claims that monthly P&L statements are required for every business. Furthermore, we have received numerous incompleteness notices requesting monthly P&L's for businesses that do not keep them.

Most individual claims by persons working for eligible employers are going to receive nothing under this settlement. Out of the 458 individual claims submitted to date by BCA, only two have received eligibility notices, and only one of those included an offer for payment. Instead, BCA has received dozens of incompleteness notices for individuals, most often the cure for these notices is for one of two issues: (1) request for pay period information and (2) requests for sworn statements by the employer. Based on these requests and attempts to cure these claims on behalf of BCA clients it appears that hundreds, if not thousands of individuals will not to be able to cure these deficiencies. Very few individuals have the requisite documentation to show their pay period earnings going back to 2007. Getting employer signed statements is difficult for

many individuals as they may have changed jobs, moved, or the business may not be in existence anymore.

Many eligibility calculations coming back from the fund are often wrong. This is particularly true for seafood claims, where trip tickets routinely are left off of the calculations resulting in offers that are low.   Sometimes these numbers are a few thousand off, other times they have missed more than $100,000 in trip tickets. Occasionally, boat captains are assigned different benchmark numbers than the owner of the boat.   All of this is further exacerbated by the lack of a timely system to re-review and correct these omissions.   Despite sending in detailed re-review requests specifically pointing out these errors and advising  exactly where the documentation is found in the DHECC portal, only one request for re-review has been sent a response (a denial of a Vessel of Opportunity ('VoO") claim re-review).

Even where the calculations are correct the process of accepting an offer is utterly confusing and delayed.   Many claimants have multiple claims under the fund, such as a boat owner who is also a boat captain.    The offers they receive are sent separately, but each one has an offset for previous payment from the GCCF and/or BP.  At first glance, it appears that BP intends to double-dip and apply the offset multiple times.   Last, many claims are receiving eligibility notices that say that the claimant was overpaid by the GCCF and/or BP.

BP then has the opportunity to appeal, and has done so on several BCA cases that received offers.   More importantly clients are forced to wait for the full appeal timeline to run before the fund representatives even begin the process of actually paying the claim. This process in and of itself is long drawn out ordeal.   In a conversation with contacts at

Brown Greer the following payment eligibility schedule is in place: (1) Garden City Group reviews the documentation, but they requested we resend the W9 and POA in order to speed up the process by 2-3 days. (2) All documents are double checked by Brown Greer; (3) Brown Greer must give final approval for all documents and releases; and (4) Everything goes back to Garden City Group for a final auditing (Brown Greer does not know what this auditing covers). Bearing in mind that the documents that are being checked, rechecked, and then checked again are the W9 and POA required for any claim that BCA has submitted—they could give us no time frame for when funding would occur.

### III.   SUPPORTING EXAMPLES

Below are numerous examples of claims handled just by the BCA firm showing how severe the problems are at this juncture in efforts to review claims and make offers.

#### A. JULIE HOANG AND BINH LE

Julie Hoang is the owner of the 81 foot shrimp boat "Capt Jimmy," Binh Le is the Boat Captain for the "Capt Jimmy" On September 20, 2012 Ms. Hoang received an offer from the Deepwater Horizon Claims Center which neglected to include more than $200,000 from her 2008 shrimp catch. The claim center correctly lists her 2007 and 2009 annual revenue, but lists her 2008 revenue as $583,759.20 instead of the correct amount $798,707.40. The difference of $214,948.20 results in a benchmark revenue that is $71,649.40 low, and ultimately results in an offer that is $77,244.55 lower than it should be under the terms of the settlement. A re-review form was immediately submitted pointing out this error and pointing out where the information was in the documentation

previously submitted to the DHECC.  As of Sunday, November 4, 2012, no response to this request has been received.  However, on November 1, 2012 Binh Le received an eligibility notice as Captain of the Capt Jimmy.  His Eligibility notice uses the $798,707.00, and is calculated correctly.  Documents supporting this contention can be found on the DHECC Portal at:[3]

    1)    Eligibility Notice: Julie Hoang
        a.    Date of Notice: September 20, 2012
        b.    Claimant ID 100038553, Claim ID 32899
        c.    Vessel Owner
        d.    Doc ID 4611319, Doc File ID 16790625
    2)    Financial – Trip Tickets
        a.    Doc ID 5608738
        b.    Doc File ID 16799292
    3)    Request for Reconsideration
        a.    Deadline to Request Reconsideration: 10/20/2012
        b.    Submitted Request for Reconsideration: 9/21/2012
    4)    Eligibility Notice: Binh Le
        a.    Date of Notice: November 1, 2012
        b.    Claimant ID 100040344
        c.    Claim ID 25788
        d.    Boat Captain

## B. THOMAS JONES

Thomas Jones is the owner and captain of the finfish boat FL7841NM.  On August 3, 2012 he received a notice from the DCHECC on his Vessel Owner claim which correctly listed his 2009 Annual Harvest Revenue as $10,732.20 and uses that number as his

---

[3] Many of the documents used to support the failures of the DHECC with regard to specific individuals or businesses are highly sensitive items, including financial records and tax returns.  Detailed references are included with each set of claims.  Physical copies of these documents can be provided to the Court if necessary.

benchmark. He accepted this award and signed a release for all of his other claims, even though his Boat Captain Eligibility notice had not been received. On October 21, 2012 he received the Boat Captain notice, but the notice listed his 2009 Annual Harvest Revenue as $1,861.90. The notice uses the wrong benchmark years and amount. The Boat Captain notice includes an offer of $1,644.60, but should have been $4,113.12 (if the correct 2009 Annual Harvest Revenue had been used). Documents supporting this contention can be found on the DHECC Portal at:

1) Eligibility Notice: Vessel Owner

   a. Date of Notice: August 3, 2012

   b. Claimant ID 100031740, Claim ID 20834

   c. Doc ID 3038997, Doc File ID 16342106

   d. Explanation of Historical Revenue Method: 2009 Annual Harvest Revenue = $10,732.20

2) Eligibility Notice: Boat Captain

   e. Date of Notice: October 21, 2012

   f. Claimant ID 100031740, Claim ID 51334

   g. Doc ID 5603147, Doc File ID 17023294

   h. Explanation of Historical Revenue Method: 2009 Annual Harvest Revenue = $1,861.90

## C. CHRISTOPHER RUSSELL

Christopher Russell is an Oysterman and Finfish Vessel Owner with Hull ID FL8098X. On October 29, 2012 he received four notices of eligibility from the DHECC. His offer for Oyster Boat Owner was $14,228.57 and his Oyster Boat Captain offer was

$12,769.23. His finfish eligibility notices were far smaller at $32.83 for his Vessel Owner claim and $21.90 for his Boat Captain Claim. Collectively these four offers total $27,030.63, but Mr. Russell had previously received $29,400.00 from the GCCF and BP. As a result, Mr. Russell has received no offer of payment from the DHECC. However, the numbers used to calculate Mr. Russell's claims were totally inaccurate. The Trip Ticket data provided to the DHECC came from Barber's Seafood, Inc. It appears that the DHECC auditors only took into account those fish or oysters where it was labeled as such in the memo line of the Barber's Seafood, Inc. report, leaving thousands of dollars in seafood sales unaccounted for in the final calculations of Mr. Russell's claims. Documents supporting this contention can be found on the DHECC Portal at:

1) Eligibility Notice: Vessel Owner (Finfish)

    a. Date of Notice: October 29, 2012

    b. Claimant ID 100035377, Claim ID 82214

    c. Doc ID 5843571, Doc File ID 17083087

2) Eligibility Notice: Boat Captain (Finfish)

    d. Date of Notice: October 29, 2012

    e. Claimant ID 100035377, Claim ID 82263

    f. Doc ID 5843626, Doc File ID 17083120

3) Eligibility Notice: Boat Captain (Oyster)

    g. Date of Notice: October 29, 2012

    h. Claimant ID 100035377, Claim ID 82188

    i. Doc ID 5843491, Doc File ID 17083048

4) Eligibility Notice: Vessel Owner (Oyster)

      j.  Date of Notice: October 29, 2012

      k.  Claimant ID 100035377, Claim ID 82171

      l.  Doc ID 5843434, Doc File ID 17083018

5) Financial – Trip Tickets: 2007

      m.  Doc ID 4745549

      n.  Doc File ID 16819332

6) Financial – Trip Tickets: 2008

      o.  Doc ID 4745602

      p.  Doc File ID 16819340

7) Financial – Trip Tickets: 2009

      q.  Doc ID 4745616

      r.  Doc File ID 16819344

## D. SINH TRAN

Sinh Tran is a Seafood Crewmember Category I. His records indicate that he earned $6,531.40 as a shrimp boat deckhand in 2009. The DHECC used a benchmark of $4,571.70, it appears that they simply used 70% of his total earnings as indicated on the Eligibility Notice. However, it is apparent that there is a minor problem with the calculation as 70% of 6,531.40 is $4,571.98 not $4,571.70. Setting aside the 28 cent discrepancy, the DHECC failed to make an offer to Mr. Tran because he had previously received $10,100 from the GCCF and BP—and as such has been overpaid. Documents supporting this contention can be found on the DHECC Portal at:

1) Eligibility Notice: Category I Seafood Crew Member

      a.  Date of Notice: October 29, 2012

    b.  Claimant ID 100035329, Claim ID 43781

    c.  Doc ID 5842520, Doc File ID 17082658

## E. PAUL SANDERS

Paul Sanders is an Oyster and Finfish Boat Owner and Captain, he also participated in the VoO program. On September 20, 2012, he received eligibility notices on his Vessel Owner claims both for Oyster and Finfish. These two offers totaled $23,291.57 with no offset listed for prior payments. Based on these numbers, Mr. Sanders signed a release accepting the settlement. On October 20, 2012, Mr. Sander's received an Eligibility Notice for his Oyster Boat Captain claim. The calculated offer was $18,440.19, but this notice listed prior payments of $51,000 meaning that the total offer to Mr. Sanders including his previous offers was a negative number. He received an offer on his VoO claim of $4,800.00 on October 29, 2012. At this point Mr. Sanders has signed a release, but from the documentation provided by the DHECC, it is unclear what amount, if any, he may receive from this class settlement. Documents supporting this contention can be found on the DHECC Portal at:

    1)    Eligibility Notice: Vessel Owner (Oyster)

        a.      Date of Notice: September 20, 2012

        b.      Claimant ID 100035466, Claim ID 44651

        c.      Doc ID 4611381, Doc File ID 16790630

    2)    Eligibility Notice: Vessel Owner (Finfish)

        a.      Date of Notice: September 20, 2012

        b.      Claimant ID 100035466, Claim ID 44685

        c.      Doc ID 4611362, Doc File ID 16790628

    3)    Eligibility Notice: Boat Captain (Oyster)

        a.      Date of Notice: October 10, 2012

        b.      Claimant ID 100035466, Claim ID 80844

     c.  Doc ID 5273385, Doc File ID 16947510

  4)  Eligibility Notice: VoO Charter Payment

     a.  Date of Notice: October 29, 2012

     b.  Claimant ID 100035466, Claim ID 75433

     c.  Doc ID 5843819, Doc File ID 17083233

## F. GULF COAST CONSTRUCTION PROPERTY MANAGEMENT

  Gulf Coast Construction Property Management is owned by Jay Shirley and located in Zone C. Under the Class, the business is considered to be a No-Tourism start up business. In May to December of 2009 the business made $13,842, in 2010 during that period it made $101,076.30 and in 2011 it made $910,721.44 from May to December. The company clearly meets the 10% upturn revenue pattern necessary for causation. However, they received an incompleteness notice asking for proof of the customer causation mix. Because the business is a sub-contractor many of the options to prove this mix are unavailable to the company. Furthermore it is unclear who their "customer" is, possibly either the general contractor or the ultimate construction customer. Mr. Shirley does business all over the state of Alabama, and verifying this causation mix proves difficult, if not impossible, depending on how literally the ambiguous terms of the settlement are followed. Documents supporting this contention can be found on the DHECC Portal at:

    1) Incompleteness Notice: Start-Up Business (Zone C)

      a. Date of Notice: September 22, 2012

      b. Claimant ID 100040157, Claim ID 20380

      c. Doc ID 4709071, Doc File ID 16809867

    2) Financial Breakdown

        a. Doc ID 1301146

        b. Doc File ID 717683

   3) Causation Requirements

        a. Document 6430-15 Filed 05/03/12

        b. Pages 3-5

## G. PATRICIA FORTUNE

Patricia Fortune is a real estate broker who earns a living selling Condos in and around Naples Florida. She has an individual claim for lost economic damages due to the oil spill. In 2008, she earned $159,654.34 in gross commissions. In 2009, she earned $145,182.58 in gross commissions. However, in 2010 she only earned $90,358.42 in commissions. She received an incompleteness notice requesting she provide, "paystubs, payroll records, bank statements, commission statements, or check cashing receipts." Many of her records were intentionally destroyed by her former employer in an attempt to prevent Patricia from filing a claim with BP, leaving her unable to determine whether she has sufficient documentation in order to cure the deficiency. Documents supporting this contention can be found on the DHECC Portal at:

   1) Preliminary Incompleteness Notice – Individual Economic Loss Claim

        a. Date of Notice: October 11, 2012

        b. Claimant ID 100042343, Claim ID 22891

        c. Doc ID 5323581, Doc File ID 16959761

   2) Financials – 2008 (Federal Income Return Form 1040, Form W-2)

        a. Doc ID 1087140

        b. Doc File ID 590248

Case 2:10-md-02179-CJB-DPC    Document 10892-1-9 Filed 07/31/15    Page 29 of 44

    3) Financials – 2009 (Federal Income Return Form 1040, Form W-2)

        a. Doc ID 1087140

        b. Doc File ID 590248

    4) Financials – 2010 (Federal Income Return Form 1040, Form W-2)

        a. Doc ID 1087148

        b. Doc File ID 590248

## H. WEATHER MAKER AIR DUCT CLEANING, INC.

Weather Maker Air Duct Cleaning, Inc. is a business from Gretna, Louisiana. On September 15, 2012, they received an incompleteness notice requesting his complete tax returns. However, his tax returns have been on file with the DHECC since the day the data was transferred from the GCCF. Additionally, on September 24. 2012 BCA sent the tax returns (except for 2011) which are not available to the DHECC. To date the DHECC has not responded to these new documents. Documents supporting this contention can be found on the DHECC Portal at:

    1) Financials – 2008 (Federal Corporate Income Return Form 1120)

        a. Doc ID 1074131

        b. Doc File ID 582453

    2) Financials – 2009 (Federal Corporate Income Return Form 1120)

        a. Doc ID 4228449

        b. Doc File ID 582451

    3) Financials – 2010 (Federal Corporate Income Return Form 1120)

        a. Doc ID 1074109

        b. Doc File ID 582451

    4) Incompleteness Notice – Business Economic Loss Claim

        a. Date of Notice: September 15, 2012

        b. Claimant ID 100041840, Claim ID 51277

        c. Doc ID 4467290, Doc File ID 16669513

    5) Correspondence from Claimant's Counsel – Incompleteness Request for Taxes

        a. Doc ID 4743983

        b. Doc File ID 16818855

## I. ROBERT DOOLITTLE

Robert Doolittle is an individual working for a major retail chain at a store located in Zone A.   Under the terms of the settlement an individual in Zone A needs no proof of causation in order for him to be compensated by the fund.  In response to Mr. Doolittle's submission of his damages the DHECC issued an Incompleteness Notice on October 2, 2012 requesting  that his employer sign a Sworn Written Statement 12 (SWS-12) in order to "determine whether [his] losses from this job are related to the Spill."    Later, even though the SWS-12 form was not sent in, on October 31, 2012, an Eligibility Notice authorizing payment was issued for Mr. Doolittle.   Documents supporting this contention can be found on the DHECC Portal at:

    1. Incompleteness Notice:  October 03, 2012

        a. Claimant ID – 100042913

        b. Claim ID – 25389

        c. Doc ID – 5037075

        d. Doc File ID – 16893162

    2. Eligibility Notice: November 1, 2012

Case 13-30095 Document 00512301698 Page: 31 Date Filed: 07/09/2013

      a. Doc ID – 5936209

      b. Doc File ID – 17106097

## J. BOATS SELLING SHRIMP TO SOPHIE'S SEAFOOD, INC. D/B/A S.L.A.S. SEAFOOD

So far five issues have come up with five different boats that sold shrimp to S.L.A.S Seafood at the docks when they landed in Port Arthur, Texas. These issues have arisen because the trip tickets that S.L.A.S. Seafood issued have a Harris County address on them, however the findings by the DHECC have varied from claim to claim. There are at least six boats involved, but each has had a different experience with the fund.

    i.    Mary Dang Nguyen M/V Christopher's Boat Owner Clam was paid without any request for additional documentation.

    ii.    Phu Tram M/V Bama Express' Boat Owner Clam was paid without any request for additional documentation.

    iii.    NTH d/b/a M/V Jon Boy owns the "John Boy." After the claim was submitted an incompleteness notice was issued because of the Harris County issue. An affidavit was sent in to cure this deficiency from the owner of S.L.A.S. Seafood that clearly showed that S.L.A.S.'s corporate address was in Dickinson, Galveston County, Texas and that the boat landings for the Jon Boy took place in Port Arthur, Jefferson County, Texas. The affidavit caused the reviewer to change the claim status to payable on October 25,2012, but no eligibility notice has been issued.

    iv.    Hoan Nguyen Boat Captain claim for the M/V Jon Boy. On October 19, 2012 the DHECC issued an incompleteness notice because of the Harris

County issue, an affidavit from the owner of S.L.A.S. Seafood was submitted clearly showing that S.L.A.S.'s corporate address was in Dickinson, Galveston County, Texas and that the boat landings for the Jon Boy took place in Port Arthur, Jefferson County, Texas. In this case the same affidavit was accepted and an offer was made on the claim.

v.    Khiem Nguyen M/V Lovely Mother Boat Owner claim was issued an incompleteness notice because of the Harris County issue. An affidavit from the owner of S.L.A.S. Seafood was submitted clearly showing that S.L.A.S.'s corporate address was in Dickinson, Galveston County, Texas and that the boat landings for the Jon Boy took place in Port Arthur, Jefferson County, Texas. Despite the affidavit testimony the status of the case still wrongly indicates that the boat income came from a dealer in Harris County, Texas.

vi.    TL & S Corporation is the owner of the "Lucky Diamond. On October 8, 2012 an incompleteness notice was issued due to the Harris County issue. The same affidavit was sent from the owner of S.L.A.S. Seafood. The last review from the DHECC available online states that the landings did not occur within a compensable Gulf Coast Area.

Documents supporting this contention can be found on the DHECC Portal at:

1. Financial – Trip Tickets - Nguyen, Mary
   a. Doc ID – 4360113
   b. Doc File ID – 15862856
2. Eligibility Notice: November 1, 2012
   a. Claimant Name – Nguyen, Mary
   b. Claimant ID – 100035356

    c.  Claim ID – 25545

    d.  Doc ID – 5974612

    e.  Doc File ID - 17116729

3.  Financial – Trip Tickets – Tran, Phu

    a.  Doc ID – 1435212

    b.  Doc File – 15622823

4.  Eligibility Notice:  October 1, 2012

    a.  Claimant Name – Tran, Phu

    b.  Claimant ID – 100035364

    c.  Claim ID – 21381

    d.  Doc ID – 4973496

    e.  Doc File ID – 16874800

5.  Financial – Trip Tickets – NTH, DBA M/V JON BOY

    a.  Doc ID – 5689502

    b.  Doc File ID – 16995280

6.  Incompleteness Notice:  September 28, 2012

    a.  Claimant ID – 100040330

    b.  Claimant ID – 33765

    c.  Doc ID – 4934065

    d.  Doc File ID – 16865038

7.  Affidavit

    a.  Doc ID –  5689464

    b.  Doc File ID – 16995280

8.  Seafood Sworn Written Statement SWS-1

    a.  Doc ID – 5475776

    b.  Doc File ID – 16995280

9.  Review Que – View

10. Financial – Trip Tickets

    a.  Doc ID – 5689502

    b.  Doc File ID – 1695280

11. Incompleteness Notice:  October 19, 2012

  a. Claimant Name – Nguyen, Hoan

  b. Claimant ID – 100040329

  c. Claim ID – 28882

  d. Doc ID -  5617954

  e. Doc File ID – 17026986

12. Affidavit

  a. Doc ID – 5875123

  b. Doc File ID – 17090072

13. Seafood Sworn Written Statement SWS-1

  a. Doc ID – 5872433

  b. Doc File ID – 17090072

14. Eligibility Notice:  November 1, 2012

  a. Doc ID – 5974618

  b. Doc File ID – 17116735

15. Financial – Trip Tickets

  a. Claimant Name – Nguyen, Khiem

  b. Doc ID – 5013723

  c. Doc File ID – 16885509

16. Incompleteness Notice:  September 25, 2012

  a. Claimant Name – Nguyen, Khiem

  b. Claimant ID – 100038906

  c. Claim ID – 50909

  d. Doc ID – 4785263

  e. Doc File ID – 16831009

17. Affidavit

  a. Doc ID – 5013701

  b. Doc File ID – 16885509

18. Seafood Sworn Written Statement SWS-1

  a. Doc ID – 3192004

  b. Doc File ID – 16378708

19. Review Que – View –Nguyen, Khiem

20. Financial – Trip Tickets – TL & S Corporation

    a.  Doc ID – 5280414

    b.  Doc File ID – 16949474

21. Incompleteness Notice:  October 8, 2012

    a.  Claimant Name – TL & S Corporation

    b.  Claimant ID – 100035337

    c.  Claim ID 31665

    d.  Doc ID – 5193560

    e.  Doc File ID – 16929192

22. Affidavit

    a.  Doc ID – 5281688

    b.  Doc File ID – 16949466

23. Review Que – View – TL & S Corporation

## K.  JOEL CORBIN

Joel Corbin is a Blue Crab Fisherman and Other Seafood fisherman on the boat Ski Barge.    On September 24, 2012 he received an eligibility notice for his Blue Crab Boat Captain Claim for which used 2009 as his benchmark year with a benchmark amount of $18,393.52.    However, when he received his Blue Crab Boat Owner eligibility notice it incorrectly lists only $11,246.22 in 2009 and shorts Mr. Corbin $7,442.09 on his Boat Owner claim.    A reconsideration request was immediately completed, but to date no determination on the claim has been made.    Documents supporting this contention can be found on the DHECC Portal at:

1. Eligibility Notice:  September 24, 2012

    a.  Claimant Name – Corbin, Joel – Boat Captain

    b.  Claimant ID – 100022694

    c.  Claim ID – 5467

    d.  Doc ID – 4735381

     e. Doc File ID – 16816455

  2. Eligibility Notice:  October 15, 2012

     a. Claimant Name – Corbin, Joel – Vessel Owner

     b. Doc ID – 5420813

     c. Doc File ID – 16982629

  3. Financial – Trip Tickets – Corbin, Joel

     a. Doc ID – 5754942

     b. Doc File ID – 16989213

  4. Eligibility Notice:  October 15, 2012

     a. Doc ID – 5420827

     b. Doc File ID – 16982634

## L.  KEVIN AND AMY NGHIEM

Amy Nghiem owns the shrimp boat "Lady Jennifer" and her husband Kevin Nghiem is the captain of the "Lady Jennifer."     Amy Nghiem began her purchase of the "Lady Jennifer" in 2009 and caught some shrimp that year.  The final purchase of the "Lady Jennifer" was in January 2010.   Amy Nghiem and the "Lady Jennifer" qualified as a new entrant boat owner and received the proper offer under the terms of the settlement.   Her husband, Kevin Nghiem received his first Commercial Shrimp Boat Captain's License in September 2009, which he used to captain the "Lucky Jennifer" the last few months of 2009.   His eligibility notice received October 19, 2012 says that he is not eligible to be a New Entrant Boat Captain and instead uses the partial 2009 trip tickets.   The result is an offer of $31,345.96, which is substantially lower than the $72,188.00 he should be offered as a New Entrant Boat Captain.   Documents supporting this contention can be found on the DHECC Portal at:

  1. Eligibility Notice:  September 18, 2012

     a. Claimant Name – Nghiem, Amy – Vessel Owner

       b.  Claimant ID – 100018136

       c.  Claim ID – 27136

       d.  Doc ID – 4521166

       e.  Doc File ID – 16681028

2.  Vessel Bill of Sale

       a.  Doc ID – 1896364

       b.  Doc File – 15894854

3.  Eligibility Notice: October 19, 2012

       a.  Claimant Name – Nghiem, Amy – Boat Owner

       b.  Doc ID – 5580802

       c.  Doc File Id – 17019195

4.  Correspondence from Expert

       a.  Doc ID – 1897574

       b.  Doc File ID – 1589534

## M. TIEN LE

Tien Le is the captain of the 75.5 foot freezer boat the "Master M."   On October 8, 2012 he received an Eligibility Notice for $69,033.13.   Unfortunately the numbers used to calculate his award amount were incorrect.   In 2008, the "Master M" caught $171,237.92, but the DHECC used $167,000.27 as the benchmark for that year.   In 2009, the "Master M" caught $94,915.26, but the DHECC used $90,711.28 as the benchmark for that year.   This resulted in the total benchmark being lower, and an offer that was $2,054.69 lower that it should have been.   Tien Le also has a boat owner claim for the "Master M."  Should the DHECC use the incorrect numbers again on that claim Mr. Le stands to lose out on additional monies.  Furthermore, he will lose out on additional seafood funds distributed next year.   Despite all this Mr. Le choose to accept an

incorrect award rather wait additional weeks or months for the DHECC to re-review his claim. Documents supporting this contention can be found on the DHECC Portal at:

    1. Eligibility Notice: October 8, 2012
        a. Claimant Name – Le, Tien
        b. Claimant ID – 100038899
        c. Claimant ID – 51908
        d. Doc ID – 5193369
        e. Doc File ID – 16929143
    2. Financial – Trip Tickets
        a. Doc ID – 2426360
        b. Doc File ID – 16150138

## N. SY LE AND NISA PHAM

Sy Le is the boat captain for the "Master Anthony." His wife Nisa Pham is the boat owner of the "Master Anthony." On October 8, 2012 he received an eligibility notice for his boat captain claim. The notice incorrectly listed $327,209.60 for the amount caught in 2008. The correct amount should have been $341,278.15, as a result his offer was substantially lower than it should have been. When Nisa Pham received her boat owner eligibility notice the correct amount was listed. Documents supporting this contention can be found on the DHECC Portal at:

    1. Eligibility Notice: October 8, 2012
        a. Doc ID – 5193347
        b. Doc File ID – 16929139
    2. Financial – Trip Tickets
        a. Doc ID – 1577652
        b. Doc File ID – 15680641
    3. Eligibility Notice: October 2, 2012

Case 2:10-md-02179-CJB-DPC   Document 10892-19 Filed 07/31/13   Page 39 of 44

    a. Claimant Name – Pham, Nisa

    b. Claimant ID – 100042768

    c. Claim ID – 40835

    d. Doc ID – 5006464

    e. Doc File ID – 16884699

## O. JOE QUACH

Joe Quach is a shrimp boat owner and captain for the "Dylan Boy." He received an eligibility notice showing an annual revenue for 2008 of $16,368.00 and in 2009 it showed $15,080.40. The trip ticket sales submitted to the DHECC show that these amounts are miniscule compared to the actual sales he made. The trip tickets and invoices for his sales in 2008 and 2009 total several hundred thousand dollars, but were wholly excluded from the calculation. Documents supporting this contention can be found on the DHECC Portal at:

1. Eligibility Notice: October 31, 2012

    a. Claimant Name – Quach, Joe

    b. Claimant ID – 100038429

    c. Claim ID – 29829

    d. Doc ID – 5936177

    e. Doc File ID – 17106093

2. Financial – Trip Tickets

    a. Doc ID – 3044347

    b. Doc File ID – 15935941

## P. P&L REQUESTS FOR INDIVIDUALS

BCA has received a number of requests for P&L's on small businesses and/or individuals who file a schedule C. In conversations with the PriceWaterhouseCooper

adjusters, BCA was told that despite the size of the business they had to have monthly P&L statements. There has been no mention of alternatives for small businesses during these conversations. BCA represents many individuals who do business for themselves, including large blocks of taxi cab drivers and people working in cosmetology. Below are several examples were requests for P&L's where made for people who do not keep them:

    i.    Diane Paglia is a Zone A Real Estate Agent in the Florida Keys who does not keep P&L's;

    ii.    Ronald Terry owns a portion of an air conditioning company and receives money on a 1099;

    iii.    Minh Loung is a nail tech who receives his money via Form 1099;

    iv.    Guennadi Gorokhov is a taxi driver who files a schedule C with his tax returns.

Documents supporting this contention can be found on the DHECC Portal at:

1. Incompleteness Notice: October 04, 2012 – Taxi Cab Driver
   a. Claimant Name – Gorokhov, Guennadi
   b. Claimant ID – 100041894
   c. Claim ID – 39256
   d. Doc ID – 5430003
   e. Doc File ID – 16984988
2. Incompleteness Notice: October 26, 2012 – Nail Tech – Schedule C
   a. Claimant Name – Luong, Minh
   b. Claimant ID – 100041745
   c. Claim ID – 89892
   d. Doc ID – 6056901
   e. Doc File ID – 17140033
3. Incompleteness Notice: October 19, 2012 – Real Estate Sales

- 30 -

     a.  Claimant Name – Paglia, Diane

     b.  Claimant ID – 100042341

     c.  Claim ID – 25845

     d.  Doc ID – 5614454

     e.  Doc File ID – 17026203

4.  Incompleteness Notice:  September 26, 2012 – Sales Representative

     a.  Claimant Name – Terry, Ronald

     b.  Claimant ID – 100011034

     c.  Claim ID – 6617

     d.  Doc ID – 4832329

     e.  Doc File ID – 16842204

## Q.  CLAIMANTS WHO HAVE RECEIVED ELIGIBILITY NOTICES SAYING THEY WERE OVERPAID BY THE GCCF AND OR BP

At least nine BCA clients have been deemed to have been overpaid by the GCCF and/or BP, most of them are deckhands and part of the seafood compensation plan. Specifically those claimants are:

1.  Tho Pahm – 100039840

2.  Kevin Tran – 100041819

3.  Tuan Pam – 100040846

4.  Xung Pam – 100040854

5.  Kevin Nguyen – 100039842

6.  Sau Nguyen – 100039837

7.  Cong Pham – 100040997

8.  Christopher Gray -100016233

9.  Pham Thanh – 100041256

Please note that all of the above claimants opted out of the class settlement except Christopher Gray.  Mr. Gray did not opt out, but did not receive his eligibility notice until November 5, 2012 five days after the opt-out deadline.  He is the first, but certainly not the last victim of the oil spill who will remain part of this class, but not receive any benefit from the class.

## III.   CONCLUSION

Objectors just want to be made whole. They want it to be in the spirit of the Congressional mandates that created the Oil Pollution Act. They want to be able to submit their documentation or whatever evidence of a loss they can muster, obtain a reasonable offer in a reasonable amount of time, and move on with their lives.  If BP cannot, or will not, provide such a solution, objectors want to be able to retain their legislatively established rights to take their claims to court and have a jury of their peers resolve the dispute for them.  Anything short of that abrogates Congressional intent, jurisprudential precedence, constitutionally protected rights, and the will of the people. As importantly, if not more so, it is morally wrong to let a company of the size, wealth, magnitude and influence of BP circumvent judicial process, particularly when they have the most sordid, morbid, and amoral history of any company ever operating in the United States. They are the company that created this disaster through their greed, shortsightedness, and unfathomable level of risk taking. They should have to clean it up…all of it. They are the company fined by our regulatory agencies for deliberate violations of the law more than all of their competitors combined. They are the company who WAS ALREADY ON PROBATION for killing 15 people in Texas City when they helped kill 11 more in the Gulf of Mexico. Any civilian doing the same thing would be

on death row right now, not cutting backroom deals to get out of jail again. This settlement, and the restrictive allowances for victims to extricate from it, is one of design by BP. No one should doubt that they have spent many a day and night calculating their "damage exposure" from this proposal and have only consented to it because they feel they are going to save a great deal of money....money they know was owed to the victims of this disaster. Plaintiffs would respectfully request that this Court mandate a process that protects the many victims of this oil spill and provides for full disclosure and arm's length negotiation and amicable resolution of all claims with a backstop of a trial to ultimately resolve contested claims.

### PRAYER

Objectors request that this Court protect them and protect their rights by amending the terms of the settlement in such a manner that claimants will not have to choose to opt out of the settlement until the class administrator has made a specific determination regarding the total amount the claimant is eligible to recover and for any other relief to which they may be entitled.

DATED on this the 7th day of November, 2012.

Respectfully submitted,

BRENT COON & ASSOCIATES

*/s/ Brent W. Coon*
Brent W. Coon
Federal Bar No. 9308
Texas Bar No. 04769750
215 Orleans
Beaumont, Texas 77701
Tel.: (409) 835-2666
Fax: (409) 835-1912

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been electronically filed through the Court's CM/ECF system and/or LexisNexis File & Serve, in accordance with Pretrial Order No. 12, which will send a notice of electronic filing to all counsel of record on November 7, 2012.

/s/ *Brent W. Coon*

Brent W. Coon