UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" In the GULF OF MEXICO on April 20, 2010 | * | MDL NO. 2179 |
| | * | SECTION: J |
| | * | JUDGE BARBIER |
| Applies to: No. 12-00311 | * | MAGISTRATE SHUSHAN |

**TRANSOCEAN'S MEMORANDUM IN SUPPORT OF
TRANSOCEAN'S MOTION TO QUASH OR MODIFY LIBERTY INSURANCE
UNDERWRITERS INC.S' SUBPOENA SEEKING TESTIMONY
FROM A CORPORATE REPRESENTATIVE OF TRANSOCEAN**

Brad D. Brian
Michael R. Doyen
Daniel B. Levin
Susan E. Nash
MUNGER TOLLES & OLSON LLP
355 So. Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel: (213) 683-9100
Fax: (213) 683-5180
Email: brad.brian@mto.com
michael.doyen@mto.com
daniel.levin@mto.com
susan.nash@mto.com

Edwin G. Preis, Jr.
PREIS & ROY PLC
Versailles Blvd., Suite 400
Lafayette, LA 70501
Tel: (337) 237-6062
        and
601 Poydras Street, Suite 1700
New Orleans, LA 70130
Tel: (504) 581-6062

John M. Elsley
ROYSTON, RAYZOR, VICKERY & WILLIAMS LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
Tel: (713) 224-8380

Steven L. Roberts
Rachel Giesber Clingman
Sean Jordan
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Tel: (713) 470-6100
Fax: (713) 354-1301
Email: steven.roberts@sutherland.com
rachel.clingman@sutherland.com
sean.jordan@sutherland.com

Kerry J. Miller
FRILOT, LLC
110 Poydras St., Suite 3700
New Orleans, LA 70163
Tel: (504) 599-8194
Fax: (504) 599-8154
Email: kmiller@frilot.com

*Counsel for Transocean Offshore Deepwater Drilling Inc.*

**INTRODUCTION**

As this Court is aware, Cameron International Corporation ("Cameron") and one of its excess liability insurers, Liberty Underwriters, Inc. ("Liberty"), are engaged in a coverage dispute ("Litigation") relating to Cameron's December 2011 settlement with BP as to the Macondo incident ("Settlement"). Cameron seeks a ruling that Liberty must provide coverage to Cameron pursuant to the terms of an insurance policy between the two parties ("Insurance Policy"), as well as damages for breach of the Insurance Policy, declaratory judgments that Liberty must indemnify Cameron and reimburse Cameron for its defense costs, and damages under both Texas and Louisiana state statutes for Liberty's purported bad faith. Civ. Action No. 12-cv-311, Dkt. 1.

Quite simply, this dispute does not involve Transocean or otherwise implicate its conduct: (1) Transocean is not a party to that Litigation; (2) Transocean did not participate in the negotiation of the Insurance Policy; and (3) Transocean is not a party to the Settlement, nor did Transocean participate in Settlement negotiations or otherwise have knowledge of such negotiations in advance of the announcement of the Settlement. Neither Cameron nor Liberty has alleged that Transocean was involved in any of these regards.

Notwithstanding, on July 26, 2013, Liberty issued a subpoena to Transocean, seeking corporate representative testimony on topics wholly irrelevant to the merits of the dispute between Cameron and Liberty ("Subpoena"), including, but not limited to, Transocean's negotiation practices, the history of contractual terms in agreements between Cameron and / or BP with Transocean, and Transocean's experiences with indemnity in the oil and gas industry, generally. *See* Ex. A (Deposition Notice). Such requests are not only irrelevant, but compromise Transocean's commercial and confidential information and practices and implicate the attorney-client privilege.

Several of the Deposition Topics pertain to Transocean's assessment of its indemnity obligations, or lack thereof, to Cameron in the Master Services Agreement and Purchase Order ("Transocean–Cameron Agreements"). Transocean's position has been clearly articulated in publicly available briefing before this Court and it remains unchanged.[1] To delve further invades legally cognizable privileges.

Transocean learned of the Settlement only hours before oral argument was scheduled for motions for summary judgment relating to the extent of Transocean's pollution indemnity obligations, if any, to Cameron. Steven Roberts, who once served as Transocean's Acting General Counsel for the Macondo incident and who would be serving as Transocean's corporate representative for the Macondo-related Deposition Topics, has communicated to Liberty that Transocean had no involvement in or knowledge of the Settlement or related negotiations prior to its public announcement and, therefore, has no testimony to offer regarding such topics. *See* Ex. B (Email Correspondence with G. Pate, Counsel for Liberty). There is absolutely no basis to believe a deposition would unearth contrary facts.

Transocean has cooperated with Cameron and Liberty in their dispute, even producing requested documents related to the Transocean–Cameron Agreements.[2] However, provision of corporate representative testimony as to the currently identified Deposition Topics defies the reasonable bounds of discovery based on Transocean's posture in this Litigation and the nature of the issues before the Court. This Court has previously reigned in Liberty's discovery

---

[1] On November 30, 2011, Transocean filed its Response and Memorandum in Opposition to Cameron's Motion for Summary Judgment. Dkt. 4778. Oral argument was scheduled for December 16, 2011, the same day Cameron and BP settled.

[2] On June 12, 2013, Transocean produced documents labeled TO-LIB 00001 through TO-LIB 001744, and on July 10, 2013, Transocean produced documents labeled TO-LIB 001745 through TO-LIB 001855.

attempts,[3] and, despite attempts to resolve the issue with Liberty directly, Transocean is also regrettably forced to ask this Court to intervene. Respectfully, Transocean submits that the Subpoena should be quashed, as the Deposition Topics therein are irrelevant; overly broad, and thus unduly burdensome; better directed to other entities, namely parties to the Litigation; and infringe on privileged, confidential, and commercial communications.[4]

## ARGUMENT

### Legal Standards & Analysis

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Relevant information is that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Notwithstanding some flexibility afforded the parties during discovery, discovery has "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor,* 329 U.S. 495, 507 (1947)). Ultimately, "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States,* 556 F.3d 326, 341 (5th Cir. 2009). To that effect, a corporation may turn to the court for relief from an obstreperous subpoena seeking testimony of a representative on matters that are irrelevant or communications that are privileged and confidential. A court may quash or otherwise modify a subpoena that violates the mandates of Federal Rule of Civil Procedure 26 or other discovery boundaries and proscriptions. *See* FED. R. CIV. P. 45(c)(3). Specifically, the Federal Rules of Civil Procedure guard privileged matter, absent waiver or other

---

[3] Many of the arguments previously espoused by BP in its discovery dispute with Liberty (Dkt. 10388) apply with equal force to Transocean's motion; however, in the interest of efficiency, such arguments are not readdressed *ad nauseum* herein. *See also* Dkt. 10642 (Order Granting BP's Motion to Quash).

[4] Notably, this same date, David Beck filed similar objections to comparable requests for production from Liberty. Dkt. 10938.

exception, and confidential and commercial information.  FED. R. CIV. P. 45(c)(3)(A)(iii); FED. R. CIV. P. 45(c)(3)(B)(i).

Courts consistently hold that insurance coverage determinations for settlements hinge on the terms of the policies and settlements themselves.  *See, e.g.*, *Travelers Ins. Co. v. Waltham Indus. Labs. Corp.*, 883 F.2d 1092, 1109 (1st Cir. 1989); *Luria Bros. & Co. v. Alliance Assur. Co.*, 780 F.2d 1082, 1091-92 (2d Cir. 1986).  Texas law, governing the Insurance Policy, is in accord: The terms and conditions of the Insurance Policy, as applied to the claims asserted and terms of the Settlement, will govern the coverage determination.  *See GuideOne Elite v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 311 (Tex. 2006).

Likewise, this Court recognized in its Order & Reasons regarding Liberty's motion for judgment on the pleadings, cited previously by BP in its discovery dispute with Liberty, that the Insurance Policy terms as applied to the Settlement will control the outcome of the Litigation, not the negotiation processes or legal advices leading to the Settlement.  Dkt. 7129.  The Court also highlighted Liberty's acknowledgement of Cameron's position that the Transocean–Cameron Agreements are not central to Cameron's claims, evidenced by Liberty's statement that "this **entire dispute** can be appropriately resolved as a matter of law on the clear terms of the insurance policy alone."  *Id.* (citing Dkt. 6531-1, at p. 10) (emphasis added).  Accordingly, it is unclear why Liberty now requires extensive discovery from a non-party relating to agreements and practices both parties to the Litigation acknowledge are not core to resolution of the Litigation.

Liberty's Deposition Topics notably center on gathering extrinsic evidence of the intent of a non-party to the Litigation reflected in the Transocean–Cameron Agreements[5] and the drilling contract between Transocean and BP ("Drilling Contract"), both of which are several degrees removed from the Insurance Policy and Settlement that are truly at issue.

The pleadings are devoid of any allegation of an ambiguity in either the Transocean–Cameron Agreements or Drilling Contract.[6]  *See* 12-cv-311, Dkt. 1, ¶ 32-37; 10-md-2179, Dkt. 6147, ¶ 32-37 (noting that the "contract itself . . . is the best evidence with respect to the true contents of the agreement entered between Cameron and Transocean"), ¶ 80, ¶ 85.  Neither the Transocean-Cameron Agreements nor the Drilling Contract has been found ambiguous by the Court.  Mere disagreement as to meaning does not constitute an ambiguity nor does "uncertainty" or a lack of clarity.  *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009); *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.,* 294 S.W.3d 164, 168 (Tex. 2009).  Accordingly, resort to extrinsic evidence is improper under both general maritime law and Texas law.  *See, e.g.*, *Ingalls Shipbuilding v. Federal Ins. Co.*, 410 F.3d 214, 220 (5th Cir. 2005) (general maritime law); *Fontenot v. Mesa Petroleum Co.,* 791 F.2d 1207, 1214 (5th Cir. 1986) (general maritime law); *Tawes v. Barnes,* 340 S.W.3d 419, 425 (Tex. 2011) (Texas law).

Ironically, it is Liberty, which is not a party to the Settlement, the Transocean–Cameron Agreements, or the Drilling Contract, that is ostensibly attempting to create ambiguities in one or more of these contracts for Liberty's benefit, yet Liberty previously argued that the indemnity obligations are valid and enforceable and were "waived" by Cameron.  Liberty also did not claim

---

[5] R&B Falcon Drilling, a predecessor of Transocean, was the counterparty to the Master Services Agreement with Cameron.  For purposes of clarity, "Transocean" is inclusive of and refers to R&B Falcon Drilling as necessary and appropriate.

[6] The pollution indemnities, however, have been evaluated by the Court insofar as the Clean Water Act is concerned.  The District Court upheld the distinction between subsurface and above surface discharges and found that discharges from the well that pass through the riser nonetheless originate from the well and, therefore, are the responsibility of BP under the drilling contract.

ambiguity in its motion for judgment on the pleadings, thus Liberty should not now be permitted to argue that some ambiguity exists, much less seek guidance of Transocean's counsel to communicate, establish, and develop its legal arguments. *See* Dkt. 6531. To the extent that the Transocean–Cameron Agreements or Drilling Contract are found to be ambiguous, Transocean respectfully submits that this Litigation, a coverage dispute between Cameron and Liberty only, is not the proper forum for interpreting the agreements. The threshold inquiry is whether the Settlement is ambiguous in its exception of Liberty from the definition of "Consenting Cameron Underwriters," which have waived their rights of subrogation. To the extent Liberty is excluded from the waiver of subrogation, the "value" or "enforceability" of the indemnity right, if any, is irrelevant.

With regard to the numerous Deposition Topics relating to Transocean's legal position vis-à-vis Cameron's indemnity claim, both Cameron's and Transocean's positions were fully briefed in advance of the scheduled oral argument. A deposition of the attorney who acted as Transocean's Acting General Counsel in relation to the Macondo incident is likely to involve questioning that infringes the attorney–client and / or work product privileges.[7] Transocean's evaluation of the indemnity obligations in the Transocean–Cameron Agreements and / or Drilling Contract, namely the enforceability thereof or exposure thereunder, are privileged as they involve legal rather than business advices. In that same vein, disclosing Transocean's contractual negotiating position and commercial terms implicates confidential information that is protected from discovery.

---

[7] It is curious that Liberty wishes to depose Transocean's counsel as the argument Liberty ostensibly wishes to make is that of Cameron, which claimed the existence of an indemnity obligation, not that of Transocean, which argued that none existed.

Finally, many of the Deposition Topics Liberty seeks from a Transocean witnesses are in search of information equally accessible from Cameron, a party to the Litigation. To the extent the information can be obtained through discovery on a party, it is unduly burdensome to seek the same from Transocean. *Cf. Viacom Int'l, Inc. v. YouTube, Inc.*, 2008 WL 3876142, at *1 (N.D. Cal. Aug, 18, 2008) (ordering production once after establishing the documents sought could not be obtained from the defendant).

### Deposition Topics

Applying the aforementioned analysis to each of the Deposition Topics, Transocean objects to each as follows:

*Topic 1* seeks "Transocean's history and experience with indemnification agreements in the oil and gas industry; and whether indemnification agreements between contracting parties in the oil and gas industry are used to shift significant risks of loss among the contracting parties." This request is overly broad, irrelevant, and seeks confidential, commercial, and potentially privileged information

*Topic 2* requests "information regarding Cameron's claim and demand for indemnification against Transocean" in the MDL. This request is overly broad, seeks information better directed to an actual party to the Litigation (Cameron), and seeks confidential, commercial, and potentially privileged information.

*Topic 3* addresses "Transocean's response and position concerning Cameron's demand for indemnity under the Master Services Agreement between Cameron and R&B Falcon Drilling." This request is overly broad and seeks confidential, commercial, and potentially privileged information. Moreover, Transocean's position regarding indemnity is articulated in publicly available briefing.

*Topics 4 and 5* speak to "[i]ndemnification agreements contained in the Master Services Agreement dated September 28, 2000" and the "Purchase Order Terms & Conditions" between Cameron and Transocean for the blowout preventer. This request is overly broad, seeks information also accessible to an actual party to the Litigation (Cameron), and seeks confidential, commercial, and potentially privileged information. Moreover, Transocean's position is articulated in its publicly available briefing.

*Topic 6* requests testimony relating to "Transocean's decision to revise any indemnification contained in the Master Service Agreement Form during the year 2011." This request is overly broad and seeks confidential, commercial, and potentially privileged information.

*Topic 7* requests information regarding "[n]egotiations between [Cameron] and Transocean for changes in the indemnification language, limits of liability language of the Master Services Agreement, . . . and / or future agreements." This request is overly broad, seeks information accessible from an actual party to the Litigation (Cameron), and seeks confidential, commercial, and potentially privileged information.

*Topic 8* seeks "[k]nowledge of Cameron's settlement with BP . . . including any communications with Cameron or BP regarding the settlement or settlement negotiations." Counsel for Transocean—and the same individual who would be presented as Transocean's corporate representative—has communicated to counsel for Liberty that no such knowledge existed and that there were no communications other than those only hours before the scheduled oral argument on the motions for summary judgment relating to the indemnity issue between Cameron and Transocean.

*Topic 9* addresses "Cameron's motion for summary judgment against Transocean . . . , Transocean's response and Cameron's dismissal of its Motion." This request is overly broad,

seeks information better directed an actual party to the Litigation (Cameron), and seeks confidential, commercial, and potentially privileged information. Moreover, Transocean's position is articulated in its publicly available briefing.

*Topic 10* requests "[d]iscussions and / or negotiations between Cameron and Transocean regarding Cameron's dismissal of its motion for summary judgment against Transocean." This request is overly broad, seeks information better directed to an actual party to the Litigation (Cameron), and seeks confidential, commercial, and potentially privileged information. Moreover, Transocean's position is articulated in its publicly available briefing, and counsel for Transocean, who would be Transocean's corporate representative, has indicated that Transocean was not aware of the Settlement until the day of scheduled oral argument on the motions for summary judgment to address the indemnity issue in the Transocean–Cameron Agreements. Thus, there is no testimony to provide.

*Topic 11* seeks testimony regarding "Transocean's claims and demand for indemnification from [BP]." This particular Deposition Topic establishes the "high water mark," as it seeks legal positions relating to a contract executed between two entities, neither of which is a party to the Litigation. This request is overly broad and seeks confidential, commercial, and potentially privileged information. The Court has also ruled on certain of the motions pending before it as to indemnity obligations between BP and Transocean, *e.g.* enforceability for indemnity notwithstanding gross negligence for compensatory damages. Transocean's briefing and the Court's rulings to date are publicly available.

*Topic 12* requests corporate testimony as to "Transocean's public reports for . . . 2010–2012 to the limited extent that such public reports addressed Cameron and / or Transocean's indemnity agreements." This request is overly broad and seeks confidential, commercial, and potentially privileged information.

## CONCLUSION

Despite Transocean's prior cooperation and document production, communications that it lacks the specific information requested, and the prior ruling from this Court that clearly provided guidance to Liberty, Liberty continues to overstep the boundaries of relevant and reasonable discovery in its Subpoena. Respectfully, Transocean submits that the Subpoena should be quashed, as the Deposition Topics therein are irrelevant to the extent they seek extrinsic evidence regarding contracts that are not alleged to be and have not been determined to be ambiguous. Notwithstanding, the Deposition Topics are overly broad, and thus unduly burdensome; better directed to parties to the Litigation; and infringe on privileged, confidential, and commercial communications.

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of August 2013, the foregoing motion was served on all counsel via the Court's CM/ECF system and/or by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

/s/ Kerry J. Miller_____
Kerry J. Miller