UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG      * | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the   * | |
| GULF OF MEXICO, on                         * | SECTION J |
| APRIL 20, 2010                                     * | |
| * | JUDGE BARBIER |
| * | MAG. JUDGE SUSHAN |
| **THIS DOCUMENT APPLIES TO:**    * | |
| No. 12-00311                                         * | **JURY TRIAL DEMANDED** |

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S RESPONSE TO TRANSOCEAN'S MOTION TO QUASH OR MODIFY LIBERTY INSURANCE UNDERWRITERS INC.S' SUBPOENA SEEKING TESTIMONY FROM A <u>CORPORATE REPRESENTATIVE OF TRANSOCEAN</u>**

Defendant Liberty International Underwriters, Inc. ("LIU") files this Response to Transocean's Motion to Quash the Deposition of One or More Corporate Representatives of Transocean Offshore Deepwater Drilling, Inc. ("Transocean"). In support of this Response, LIU would show as follows:

**I.
<u>BACKGROUND</u>**

On July 22, 2013, Gary L. Pate ("Pate"), an attorney representing LIU in its suit against Cameron, emailed Steven L. Roberts ("Roberts"), Transocean's counsel, to introduce himself and provide notice of LIU's intent to take the Rule 30(b)(6) deposition of one or more of Transocean's corporate representatives.[1]  On July 22, 2013, following a telephone conversation, Pate emailed Roberts, as a professional courtesy, an email detailing twelve (12) deposition topics LIU proposed to address[2].  On July 25, 2013, Roberts replied to Pate by email thanking Pate for

---

[1] See attached Exhibit "A."
[2] See attached Exhibit "B."  After the initial email from Pate to Roberts, other attorneys were added to the distribution list(s) for the follow on emails.

Pate's efforts "…to reduce/revise the deposition topics list" but objecting to the need for the deposition and/or the topics and stating that "…unless further explanation is provided…" he [Roberts] would not produce a witness.[3]  The same day, Pate responded by email providing further explanation regarding how the topics were relevant and offering his compete cooperation in revising the date, time or location of the deposition to accommodate Roberts,' Transocean's, and Cameron's counsel's schedule.[4]  Finally, on July 26, 2013, LIU filed its Notice of Deposition Subpoena ("Notice") by e-filing with this court and via messenger to Roberts.  The Notice listed twelve (12) deposition topics attached as Schedule A.[5]

LIU noticed the deposition for Tuesday, August 6, 2013 at the office of Roberts since Roberts had identified himself in writing as the person most knowledgeable of the topics identified.  It was not until Saturday, August 3, 2013 that Roberts emailed Pate and others noting that he intended at some unspecified time to quash the deposition.  On the evening before the scheduled deposition, Pate again emailed Roberts noting that since he had not received either a motion to quash or any proposed alternative dates, he assumed the deposition will proceed as scheduled.  Further, in communicating with Roberts, Pate attached Cameron's Amended Rule 26 Disclosures *which identified a Transocean person with knowledge of relevant facts and key Transocean documents* and again reiterated why the Transocean deposition is relevant.

On the evening prior to the deposition at 5:39 p.m., Transocean filed its Motion to Quash the deposition.  Additionally, at 10:57 p.m. the evening before the deposition, Transocean produced an addition seven (7) megabytes of documents in a last-minute supplemental document production.[6]

---

[3] See attached Exhibit "C."
[4] See attached Exhibit "D."
[5] See attached Exhibit "E."
[6] See attached Exhibit "F."

On the morning of August 6, 2013, Pate learning of the new production, requested a one hour delay to afford time to review Transocean's supplement production.[7] Pate received no reply. Aware that the Motion to Quash had not been granted prior to the time of the deposition, Pate indicated to counsel that he planned to proceed in taking the deposition and traveled to Roberts' office for this purpose. While waiting in the lobby of Roberts' office for the deposition to commence, Pate received the following response from counsel for Transocean:

> On Aug 6, 2013, at 9:32 AM, "Roberts, Steven" <Steven.Roberts@sutherland.com> wrote:
>
> I am at a total loss.
> > I emailed everyone on Saturday as a professional courtesy to avoid scurrying around.
> > No one will be present for deposition.
> > I can not make that any more clear.
>
> Regards
> steve

Transocean refused to proceed with the deposition despite the fact that it had not obtained a ruling on its Motion to Quash the 30(b)(6) deposition. LIU requests that this Court deny Transocean's Motion to Quash and command Transocean to present its 30(b)(6) representative(s) to address the topics enumerated by LIU.

## II.
## ARGUMENTS & AUTHORITIES

A party can discover any non-privileged matter that is relevant to any party's claim or defense. FRCP 26(b)(1); *In re Sealed Case,* 381 F.3d 1205, 1214 (D.C. Cir. 2004). Courts

---

[7] See attached Exhibit "G."

should limit discovery only to prevent unwarranted delay and expense. *See*, 1993 Notes to FRCP 26 at ¶29.

### A. The Topics for the 30(b)(6) Deposition of Transocean are Clearly Relevant to the Claims and Defenses of the Parties to this Suit.

Transocean has taken the position that this case is merely a coverage dispute between LIU and Cameron and that Transocean's commercial dealings and contractual agreements with Cameron are simply not relevant. Transocean is wrong. Cameron itself demonstrates this is not just a coverage dispute necessarily to be decided solely on the contract language alone as evidenced by Cameron's Rule 26 disclosure of persons with relevant knowledge of facts which includes persons employed by Transocean. Cameron has also identified Transocean contracts in its Rule 26 disclosures, *i.e. the very Transocean contracts which are identified in the topics to the Transocean 30(b)(6) deposition notice*. Moreover, one of the key elements of the LIU policy involved in this case is its unique "Other Insurance" clause. That clause provides that "Other insurance includes any type of self-insurance, *indemnification or other mechanism by which an Insured arranges for funding of legal liabilities*." (emphasis added). Thus 30(b)(6) deposition topics relating to the indemnification agreements between Cameron and Transocean are clearly relevant to this coverage dispute. These contracts providing for Transocean to indemnify Cameron are a Master Service Agreement and a contract called the Terms & Conditions which was attached to the Purchase Order for the blowout preventer which Transocean purchased from Cameron.

Moreover, the first underlying policy of which the LIU excess policy follows form to provides:

VI.    CONDITIONS [FIRST UNDERLYING POLICY]

O.    Transfer of Rights of Recovery

> 1. If any Insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The Insured must do nothing after loss to impair these rights and must help us enforce them.

Cameron, as part of its settlement with BP, unilaterally terminated LIU's ability to seek subrogation under the indemnity rights afforded by the Cameron/ Transocean Master Service Agreement (MSA) and Terms and Conditions for the Purchase Order for the subject blowout preventer. Cameron's dismissal of its indemnity claims against Transocean and the impairment of LIU's potential subrogation rights against Transocean are claims which have been distinctly and clearly pled by LIU and are clearly relevant to the coverage dispute at hand.

Judge Barbier specifically addressed in his Order & Reasons relating to LIU's Rule 12(c) Motion for Judgment on the Pleadings (Doc. 7129) that if Cameron's actions in settling with BP and giving up its indemnification rights caused a material breach of the contract for insurance, then the breach would allow LIU to avoid coverage. Discovery on the topic of the value of that right of subrogation is necessary to determine if there was a breach by Cameron that was material. Thus deposition topics related to the value of the indemnification and subrogation rights are clearly relevant.

Moreover, Roberts agreed in his July 25, 2012 email that topics 2,3,8,9 10 & 12 (or half of the topics) "arguable relate" and are therefore, relevant.[8] Roberts then attempted to dismiss these topics and disclaim the relevance of these topics in Transocean's Motion to Quash. At minimum, LIU should be allowed to take the deposition the Transocean's corporate representative on these topics which Roberts had previously conceded as relevant. As will be shown below, all of the 12 topics are narrowly circumscribed and relevant to the claims and defenses asserted in this lawsuit.

---

[8] See Exhibit "D" at Page 2.

B. **Deposition Tops and Bases for Relevance.**

The topics as set forth in LIU's 30(b)(6) deposition notice to Transocean are as follows:

1. Transocean's history and experience with indemnification agreements in the oil and gas industry; and whether indemnification agreements between contracting parties in the oil and gas industry are used to shift significant risks of loss among the contracting parties.

**Relevance:** This is relevant to the value of the indemnity agreement and the potential subrogation rights which Cameron impaired in its settlement with Transocean. Moreover, Judge Barbier specifically addressed in his Order & Reasons relating to LIU's Rule 12(c) Motion for Judgment on the Pleadings (Doc. 7129) that if Cameron's actions in settling with BP and giving up its indemnification rights caused a material breach of the contract for insurance, then the breach would allow LIU to avoid coverage. Discovery on the topic of the value of that right of subrogation and the value of indemnification rights are necessary to determine if there was a breach by Cameron that was material.

2. Cameron International Corporation's ("Cameron") claim and demand for indemnification against Transocean in the New Orleans Oil Spill MDL No. 2179.

**Relevance:** Roberts admitted this is relevant.[9] Moreover, this topic is relevant to the claim of LIU in the lawsuit that Cameron had a right to indemnity from Transocean which Cameron unilaterally relinquished in its settlement with BP.

3. Transocean's response and position concerning Cameron's demand for indemnity under the Master Service Agreement between Cameron and R& B Falcon Drilling, the predecessor in interest to Transocean.

**Relevance:** Roberts admitted this is relevant.[10] LIU repeats and incorporates by reference its argument from topic number 2 above.

---

[9] See Exhibit "D" at Page 2.

[10] Id.

4. Indemnification agreements contained in the Master Service Agreement dated September 28, 2000 between Cameron and R& B Falcon Drilling, the predecessor in interest to Transocean for the Blowout Preventer used on the *Deepwater Horizon.*

**Relevance:** This topic is relevant to the claim of LIU that Cameron extinguished valuable rights of indemnity in its settlement with BP and therefore extinguished the valuable subrogation rights of LIU. All parties to this litigation have included the Master Service Agreement and its language in their pleadings demonstrating its relevance to the claims and defenses of the parties.

5. Indemnification agreements contained in Purchase Order Terms & Conditions between Cameron and Transocean for the Blowout Preventer used on the *Deepwater Horizon.*

**Relevance:** The Purchase Order Terms & Conditions provided that Transocean had a contractual obligation to pass on any indemnification it received from its customers on to Cameron. All parties to this litigation have included the Terms & Conditions and its language in their pleadings demonstrating its relevance to the claims and defenses of the parties. On January 26, 2012, this Court issued an Order and determined that BP must indemnify Transocean under the Drilling Contract. That ruling by Judge Barbier serves as the very predicate for Cameron's right to be indemnified by Transocean. As such, this topic is central to the claim of LIU that Cameron possessed valuable indemnification rights and that Cameron unilaterally extinguished LIU's potential right to subrogation against Transocean and others.

6. Transocean's decision to revise any indemnification contained in the Master Service Agreement Form during the year 2011.

**Relevance:** This topic is relevant to the issue of the value of Cameron's right of indemnification from Transocean as it is claimed by LIU in its pleadings that Cameron's relinquishment of LIU's potential subrogation rights was a material breach of the contract.

7. Negotiations between Cameron International Corp. and Transocean for changes in the indemnification language, limits of liability language of the Master Service Agreement between Cameron and R& B Falcon Drilling, the predecessor in interest to Transocean and/or future agreements.

**Relevance:** This topic is relevant to the issue of the value of Cameron's right of indemnification from Transocean as it is claimed by LIU in its pleadings that Cameron's relinquishment of LIU's potential subrogation rights was a material breach of the contract.

8. Knowledge of Cameron's settlement with BP in the *Deepwater Horizon* Litigation, including any communications with Cameron or BP regarding the settlement or settlement negotiations.

**Relevance:** Roberts admitted this is relevant.[11]

9. Cameron's motion for summary judgment against Transocean on claims of indemnification, Transocean's response and Cameron's dismissal of its Motion.

**Relevance:** Roberts admitted this is relevant.[12]

10. Discussions and/or negotiations between Cameron and Transocean regarding Cameron's dismissal of it motion for summary judgment against Transocean on claims of indemnification.

**Relevance:** Roberts admitted this is relevant.[13]

11. Transocean's claims and demand for indemnification from BP Exploration & Production, Inc. and BP America Production Company (collectively "BP") in the Oil Spill MDL.

**Relevance:** The Purchase Order Terms & Conditions provided that Transocean had a contractual obligation to pass on any indemnification it received from its customers on to Cameron. On January 26, 2012, this Court issued an Order and determined that BP must indemnify Transocean under the Drilling Contract. That ruling by Judge Barbier serves as the very predicate for Cameron's right to be indemnified by Transocean. As such, this topic is central to the claim of LIU that Cameron possessed valuable indemnification rights and

---

[11] Id.
[12] Id.
[13] Id.

that Cameron unilaterally extinguished LIU's potential right to subrogation against Transocean and others.

12. Transocean's public reports for the time period 2010-2012 to the limited extent that such public reports addressed Cameron and/ or Transocean's indemnity agreements with respect to the Deepwater Horizon litigation.

**Relevance:** Roberts admitted this is relevant.[14] This subject has been limited by negotiations between Pate and Roberts. This subject is relevant to LIU's claim that the right of Cameron to be indemnified by Transocean was a valuable right which was extinguished by Cameron when it settled with BP.

## III.
## CONCLUSION

Precisely because this case is a coverage dispute and part of the triggering of LIU's coverage necessarily involves the value and nature of Cameron's indemnification rights, it is necessary that LIU be allowed to depose Transocean's corporate representative on questions related to the indemnification and its value so that a determination can be made regarding the value of LIU's subrogation rights which Cameron gave up in exchange for a settlement with BP. Cameron has identified employees of Transocean and the Transocean contracts (the MSA and the Terms & Conditions) in its Rule 26 Disclosures and Transocean has produced documents in this cause, all showing how this deposition is relevant to the claims and defenses of the parties. For these reasons, LIU asks that this court deny Transocean's Motion to Quash.

---

[14] Id.

Respectfully submitted,


*/s/ Judy Y. Barrasso*_____
Judy Y. Barrasso, 2814
Celeste Coco-Ewing, 25002
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana  70112
504.589.9700 (Telephone)
504.589.9701 (Facsimile)

and


Christopher W. Martin, PRO HAC VICE
Federal I.D. 13515
Gary L. Pate, PRO HAC VICE
Federal I.D. 29713
808 Travis, Suite 1800
Houston, Texas 77002
713-632-1700 (Telephone)
713-222-0101 (Facsimile)

Attorneys for Liberty
International    Underwriters, Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 7th day of August, 2013.

*/s/ Judy Y. Barrasso*