1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3

   ****************************************************************

4

   IN RE: OIL SPILL BY THE
5  OIL RIG *DEEPWATER HORIZON*
   IN THE GULF OF MEXICO ON
6  APRIL 20, 2010

7                              CIVIL ACTION NO. 10-MD-2179 "J"
                               NEW ORLEANS, LOUISIANA
8                              WEDNESDAY, AUGUST 7, 2013, 9:30 A.M.

9

   THIS DOCUMENT RELATES TO
10 ALL ACTIONS

11 ****************************************************************

12

13            TRANSCRIPT OF RULE TO SHOW CAUSE PROCEEDINGS
               HEARD BEFORE THE HONORABLE SALLY SHUSHAN
14                  UNITED STATES MAGISTRATE JUDGE

15

16 APPEARANCES:

17

18 FOR THE PLAINTIFFS'
   LIAISON COUNSEL:          DOMENGEAUX WRIGHT ROY & EDWARDS
19                           BY:   JAMES P. ROY, ESQUIRE
                             556 JEFFERSON STREET
20                           LAFAYETTE, LA  70502

21

22                           HERMAN HERMAN & KATZ
                             BY:   STEPHEN J. HERMAN, ESQUIRE
23                           820 O'KEEFE AVENUE
                             NEW ORLEANS, LA  70113

24

25

                          **OFFICIAL TRANSCRIPT**

1    APPEARANCES CONTINUED:

2

3

                                    WILLIAMS LAW GROUP
4                                   BY:  CONRAD S. P. WILLIAMS, ESQUIRE
                                    435 CORPORATE DRIVE, SUITE 101
5                                   HOUMA, LA  70360

6

7                                   LEWIS, KULLMAN, STERBCOW & ABRAMSON
                                    BY:  PAUL M. STERBCOW, ESQUIRE
8                                   PAN AMERICAN LIFE BUILDING
                                    601 POYDRAS STREET, SUITE 2615
9                                   NEW ORLEANS, LA  70130

10

11                                  LEVIN PAPANTONIO THOMAS MITCHELL
                                    RAFFERTY & PROCTOR
12                                  BY:  BRIAN H. BARR, ESQUIRE
                                    316 SOUTH BAYLEN STREET, SUITE 600
13                                  PENSACOLA, FL  32502

14

15                                  LEGER & SHAW
                                    BY:  WALTER J. LEGER, JR., ESQUIRE
16                                  600 CARONDELET STREET, 9TH FLOOR
                                    NEW ORLEANS, LA  70130

17

18

19   BP CORPORATION NORTH
     AMERICA INC.,
20   BP EXPLORATION &
     PRODUCTION INC.,
21   BP HOLDINGS NORTH
     AMERICA LIMITED,
22   BP PRODUCTS NORTH
     AMERICA INC.:          LISKOW & LEWIS
23                          BY:  S. GENE FENDLER, ESQUIRE
                            ONE SHELL SQUARE
24                          701 POYDRAS STREET, SUITE 5000
                            NEW ORLEANS, LA  70139

25

                          **OFFICIAL TRANSCRIPT**

```
 1    APPEARANCES CONTINUED:

 2

 3                         BP AMERICA INC.
                          BY:  JAMES J. NEATH, ESQUIRE
 4                        501 WESTLAKE PARK BOULEVARD
                          HOUSTON, TX  77079
 5

 6

 7                        DENTONS US
                          BY:  MATTHEW T. NICKEL, ESQUIRE
 8                        2000 MCKINNEY AVENUE, SUITE 1900
                          DALLAS, TX  75201

 9

10                        DENTONS US
                          BY:  KEITH MOSKOWITZ, ESQUIRE
11                        233 SOUTH WACKER DRIVE, SUITE 7800
                          CHICAGO, IL  60606

12

13
      FOR THE DEEPWATER
14    HORIZON CLAIMS
      CENTER:             DEEPWATER HORIZON CLAIMS CENTER
15                        BY:  PATRICK A. JUNEAU, ESQUIRE,
                               CLAIMS ADMINISTRATOR
16                             DAVID ODOM, CHIEF EXECUTIVE OFFICER
                               BOB LEVINE, CHIEF FINANCIAL OFFICER
17                             KIRK FISHER, DIRECTOR OF BUSINESS
                               PROCESSES AND REPORTING
18                        P. O. BOX 1439
                          HAMMOND, LA 70404
19

20
      OFFICIAL COURT REPORTER:   CATHY PEPPER, CRR, RMR, CCR
21                               CERTIFIED REALTIME REPORTER
                                 REGISTERED MERIT REPORTER
22                               500 POYDRAS STREET, ROOM HB406
                                 NEW ORLEANS, LA  70130
23                               (504) 589-7779
                                 Cathy_Pepper@laed.uscourts.gov
24
      PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
25    PRODUCED BY COMPUTER.
```

10:28:51
10:28:52

**OFFICIAL TRANSCRIPT**

1                          **I N D E X**

2

   EXAMINATIONS                                              PAGE

3

4   THE COURT.......................................... 6

5   MR. MOSKOWITZ...................................... 7

6   MR. JUNEAU......................................... 20

7   **BOB LEVINE**...................................... 27

8   DIRECT EXAMINATION BY MR. JUNEAU................... 27

9   CROSS-EXAMINATION BY MR. MOSKOWITZ................. 36

10  EXAMINATION BY THE COURT........................... 42

11  **KIRK FISHER**..................................... 45

12  DIRECT EXAMINATION BY MR. JUNEAU................... 46

13  CROSS-EXAMINATION BY MR. MOSKOWITZ................. 55

14  EXAMINATION BY THE COURT........................... 61

15  CLOSING COMMENTS................................... 63

16  MR. MOSKOWITZ...................................... 63

17  MR. JUNEAU......................................... 64

18  MR. ROY............................................ 65

19  THE COURT.......................................... 69

20  MR. MOSKOWITZ...................................... 79

21  THE COURT.......................................... 80

22  MR. ROY............................................ 80

23  THE COURT.......................................... 81

24  MR. FENDLER........................................ 82

25  MR. JUNEAU......................................... 83

                    **OFFICIAL TRANSCRIPT**

1    THE COURT.......................................... 84

2    MR. ROY............................................ 84

3    MR. MOSKOWITZ...................................... 84

4    THE COURT.......................................... 85

5

6

7                        E X H I B I T S

8

9    DESCRIPTION                                    PAGE

10

11   BP EXHIBIT 1 WAS ADMITTED.......................... 15

12   ADMINISTRATOR EXHIBITS 1 THROUGH 15 WERE ADMITTED.... 26

13   BP EXHIBIT 2 WAS ADMITTED.......................... 69

14

15

16

17

18

19

20

21

22

23

24

25

**OFFICIAL TRANSCRIPT**

1                    **P-R-O-C-E-E-D-I-N-G-S**

2                  WEDNESDAY, AUGUST 7, 2013

3              M O R N I N G    S E S S I O N

4                  (COURT CALLED TO ORDER)

5

09:30:55  6

09:30:55  7          THE DEPUTY CLERK:  MDL-2179, *In re: Oil Spill by the*

09:30:55  8  *Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20,*

09:30:55  9  *2010.*

09:30:56 10          Counsel, make your appearances for the record.

09:31:00 11          MR. MOSKOWITZ:  Good morning, Your Honor.

09:31:02 12  Keith Moskowitz on behalf of BP.  I'm joined today by

09:31:06 13  Gene Fendler and Matt Nickel.

09:31:06 14          THE COURT:  Good morning.

09:31:09 15          MR. ROY:  Your Honor, Jim Roy and Steve Herman for the

09:31:12 16  PSC, joined by Duke Williams and Paul Sterbcow.

09:31:17 17          MR. JUNEAU:  Your Honor, Patrick Juneau for the

09:31:21 18  Claims Administrator.

09:31:22 19          THE COURT:  Good morning.

09:31:22 20          We are here today on the Order that I entered

09:31:25 21  yesterday relative to the Rule to Show Cause why BP should not

09:31:36 22  pay the proposed third quarter 2013 budget as proposed by the

09:31:42 23  Claims Administrator.

09:31:43 24          Before we get started, I want to make it clear

09:31:46 25  that I do not intend to take evidence with regard to any of the

09:31:51  1   allegations with regard to the claims administration and the

09:31:57  2   way the program itself is running.  Those are being handled in

09:32:02  3   other ways and other arenas.

09:32:06  4          I am here today merely to talk about why the

09:32:11  5   budget itself should not be funded.  I want to limit the

09:32:14  6   presentation of any argument or evidence to the budgetary

09:32:19  7   issue, and not whether or not the claims program is being run

09:32:27  8   efficiently or not, or whether there are other shortcomings in

09:32:32  9   the operation of the claims program.

09:32:34 10          So with that brief comment to the start,

09:32:42 11   Mr. Moskowitz.

09:32:42 12          MR. MOSKOWITZ:  Thank you, Your Honor.

09:32:46 13          Your Honor, would you like me to stand?

09:32:49 14          THE COURT:  That will be fine, thank you.

09:32:52 15          MR. MOSKOWITZ:  Thank you.

09:32:52 16          Your Honor, I appreciate your introductory

09:32:55 17   comments.  I think our presentation will view very closely to

09:32:58 18   what the Court is looking for here.

09:33:00 19          There are four points that I would like to make

09:33:02 20   today to explain BP's position requesting a resubmission of the

09:33:06 21   third quarter 2013 CSSP budget.

09:33:11 22          First, I would like to talk a bit about why BP

09:33:13 23   has asked the Claims Administrator to resubmit the third

09:33:17 24   quarter budget.

09:33:19 25          Second, I'd like to explain to the Court exactly

**OFFICIAL TRANSCRIPT**

09:33:21 1    what it is that BP would like to see in a resubmitted third

09:33:25 2    quarter budget.

09:33:27 3            Third, I would like to apprise the Court of the

09:33:30 4    fact that the information that BP needs to see in a third

09:33:37 5    quarter budget to determine whether or not to exercise its

09:33:39 6    right to reasonably approve that budget is information that has

09:33:42 7    been requested from the CSSP back in May of 2013.  It was

09:33:48 8    followed up on, but is yet to be received to date.

09:33:51 9            Fourth, Your Honor, I would like to address an

09:33:53 10   issue raised by the Claims Administrator with regard to the

09:33:56 11   position BP is taking on the third quarter budget and how that

09:34:00 12   relates to previous funding BP made on budgets that were

09:34:04 13   submitted in substantially the same form.

09:34:06 14           Your Honor, to be clear and consistent with your

09:34:13 15   opening comments, BP's request for a revised and resubmitted

09:34:17 16   third quarter budget is not intended in any way to shut down

09:34:22 17   the operations of the CSSP.  It has nothing to do with that.

09:34:26 18           What BP is doing here is exercising its clear

09:34:30 19   contractual right under Section 5.12.1.4 of the Settlement

09:34:34 20   Agreement to determine whether or not it can reasonably approve

09:34:40 21   a budget for in excess of $130,000,000 in administrative

09:34:47 22   expenses for the third quarter of 2013.

09:34:50 23           Your Honor, to be clear, what BP has been

09:34:55 24   presented with by way of a budget, as contained in a July 17,

09:35:03 25   2013, e-mail, is a two-page e-mail in summary format simply

**OFFICIAL TRANSCRIPT**

09:35:09 1    stating, Claims Administration Vendor X, BrownGreer, should be

09:35:14 2    budgeted for $15 million, right on the nose, for each period.

09:35:18 3    The same thing for all of the other vendors.  It's summary form

09:35:22 4    without any backup.

09:35:24 5          Your Honor, we would submit to the Court that any

09:35:27 6    business in the United States of America, and certainly

09:35:30 7    businesses far smaller and less complex than the

09:35:35 8    multi-billion-dollar Court-Supervised Settlement Program, would

09:35:39 9    prepare and operate on a budget that is substantially more

09:35:45 10   fulsome than a two-page e-mail with summary figures.

09:35:47 11         That's simply not how budgets are created.  They

09:35:53 12   are not how businesses operate.  I daresay, Your Honor, even

09:35:58 13   American families who sit around the table and use software

09:36:02 14   like Quicken to do their household budgets have a more fulsome

09:36:06 15   budget than a two-page e-mail.

09:36:07 16         What we need in terms of a budget is what you

09:36:12 17   would expect to find in a budget prepared by any professionally

09:36:16 18   run organization.

09:36:18 19         Indeed, Your Honor, what we are dealing with here

09:36:21 20   is an organization comprised of multiple vendors who are very

09:36:27 21   sophisticated in budgeting issues.  It is simply beyond our

09:36:31 22   belief that entities like PwC, PricewaterhouseCoopers, the

09:36:35 23   international accounting firm, Postlethwaite & Netterville, a

09:36:40 24   very large Louisiana accounting firm, don't know how to prepare

09:36:43 25   detailed budgets.  We daresay they do it every day.  They do it

**OFFICIAL TRANSCRIPT**

09:36:47 1  on behalf of their clients.

09:36:48 2          The same thing is true of the other vendors.  In

09:36:51 3  fact, Your Honor, our expectation is that the information that

09:36:53 4  we previously asked for that we would like to see in the

09:36:57 5  resubmitted budget is information that should be readily

09:37:00 6  available and capable of being turned overly immediately to BP

09:37:06 7  and Class Counsel pursuant to the terms of the Settlement

09:37:10 8  Agreement because it is information that a well run claims

09:37:13 9  organization should have top of hand.  It is information that

09:37:17 10 an organization of this size operating with this type of

09:37:21 11 proposed budget should have factored into that budget.

09:37:24 12         So we don't believe that there is any need here,

09:37:27 13 if this is a professionally well run operation, to take time --

09:37:31 14 for it to take time, effort.  It should be immediately

09:37:34 15 presentable.

09:37:35 16         That, Your Honor, is all we were asking for, a

09:37:39 17 resubmission of the budget.  If we get a resubmitted budget

09:37:41 18 that is a proper, appropriate budget, BP will review that

09:37:46 19 budget.  We will promptly confer with the Claims Administrator,

09:37:51 20 to the extent we have any questions about it and address those,

09:37:54 21 and otherwise fulfill our obligations under the Settlement

09:37:57 22 Agreement.

09:37:57 23         But until we get that budget, it is patently

09:38:00 24 unreasonable to call on BP, to order BP to make in excess of

09:38:05 25 $130 million of funds available on a two-page summary e-mail.

**OFFICIAL TRANSCRIPT**

09:38:09 1          So what specifically, Your Honor, would BP like
09:38:14 2     to see or believe should be in a budget?
09:38:17 3          Well, Your Honor, there are some basic elements
09:38:19 4     of budgets that, again, any business in America will know about
09:38:23 5     these elements of a budget.  We believe the CSSP and its large
09:38:28 6     vendors are very aware of these things, that these are
09:38:32 7     budgeting exercises they do every day.
09:38:34 8          First, you're developing a bottoms-up budget.
09:38:37 9     That's what every business does.  You're not looking at simply
09:38:40 10    what did I pay last quarter?
09:38:43 11         So last quarter, the CSSP incurred -- and I'm not
09:38:48 12    using precise numbers here, Your Honor -- a hundred million
09:38:51 13    dollars.  That doesn't mean it's appropriate to submit a budget
09:38:53 14    for the third quarter that's a little bit in excess of
09:38:57 15    $130 million.
09:38:57 16         Each quarter, professionally well run
09:38:59 17    organizations should be looking at its operation and building a
09:39:03 18    budget from the ground up because it is projecting forward.
09:39:06 19    It's looking at what are we proposing to spend in the future,
09:39:09 20    okay.
09:39:09 21         So what would those components be?  Well, I'll
09:39:12 22    list off six general components.  Obviously, you can get into a
09:39:16 23    great deal of specificity, and the experts in the budgeting
09:39:20 24    world can go into much more granular detail, but I don't think
09:39:26 25    we need to cover that today to explain the point.

**OFFICIAL TRANSCRIPT**

09:39:27 1          First, we need to know, what is the projected

09:39:29 2     volume of work for each task and subtasks of the various

09:39:33 3     operations within the CSSP.  We don't know that.

09:39:36 4          Second, what are the productivity rates across

09:39:39 5     the functional areas of the vendors measured by person, what's

09:39:42 6     the productivity on an individual level measured by vendor.

09:39:46 7          Remember, Your Honor, one way to think about the

09:39:47 8     CSSP, it is an assembly line of sorts of a claims operation.  A

09:39:53 9     claim comes in, and there are human beings who sit down and go

09:39:55 10    through and process various facets of those claims.

09:39:58 11         Well, any budgeting exercise is going to look and

09:40:00 12    say, well, what do those individuals cost, and what do we

09:40:04 13    project is the amount of time that they are going to put into

09:40:06 14    this process based on their productivity.

09:40:08 15         Third, the number of people required to meet the

09:40:12 16    projected work volume.  Of course, that requires, as I just

09:40:15 17    said, a calculation of those first two elements.

09:40:18 18         Fourth, Your Honor, the cost for each person.

09:40:22 19         Fifth, a separate breakdown of operating expenses

09:40:25 20    and costs, such as out-of-pocket expenses, incurred by the

09:40:28 21    workforce.  That might include rental costs.

09:40:30 22         We have a lot of folks in the settlement program

09:40:32 23    who live and work regularly outside of the Gulf Coast, who come

09:40:38 24    into Louisiana for some or all of the week or several weeks,

09:40:41 25    and they incur costs doing that.  Well, we need a breakout of

**OFFICIAL TRANSCRIPT**

09:40:45  1    that.  Office supplies, etcetera.

09:40:48  2            Sixth, we need to see the actual versus budget

09:40:51  3    results at the end of the accounting period, because a good

09:40:54  4    budget is going to say, what did I budget in the past, what did

09:40:57  5    I budget in prior quarters, what am I budgeting today.  Now,

09:41:02  6    let's look at my actual results.

09:41:04  7            There, Your Honor, what we don't see in this

09:41:06  8    budget is any even acknowledgment of, nonetheless addressing,

09:41:09  9    the fact that in the second quarter of 2013, two of the

09:41:14 10    principal CSSP vendors, BrownGreer and Garden City, both went

09:41:21 11    over budget.

09:41:23 12            A proper third quarter budget would look at those

09:41:27 13    operations and ask the questions in raising the budget:  Why

09:41:30 14    did they go over budget; what steps are being taken by the

09:41:34 15    Claims Administrator to address the fact that they went over

09:41:37 16    budget; what steps are taken in development of the third

09:41:39 17    quarter budget to take into consideration whether or not those

09:41:44 18    particular vendors' budgets are accurately set, or are we going

09:41:49 19    to run into a situation at the end of the third quarter, when

09:41:51 20    the fourth quarter budget runs around, that we find out that

09:41:57 21    BrownGreer and Garden City or other vendors have again exceeded

09:42:00 22    budgets; what are the repercussions of that.

09:42:02 23            Now, the CSSP, we expect, and we would certainly

09:42:04 24    reasonably anticipate, have done all of this work.  This is all

09:42:08 25    the work that a professionally run business or operation like

**OFFICIAL TRANSCRIPT**

14

09:42:10  1   this would do, so we believe they should have all of this

09:42:13  2   information.  It may well be that they do.

09:42:14  3          We are simply asking to be provided with this

09:42:17  4   information, so that we can look at a BrownGreer budget that

09:42:20  5   calls for $45 million over 3 months and say, how is that

09:42:25  6   derived, how did they come up with that.

09:42:27  7          Now, Your Honor, as I mentioned at the outset of

09:42:32  8   my remarks, BP has asked for this information.  As the Court

09:42:38  9   knows, because Your Honor had the pleasure of sitting through a

09:42:41 10   full day of meetings with the Claims Administration vendors --

09:42:44 11   I think we went for multiple hours and got into a fair amount

09:42:48 12   of the detail -- BP has been focusing on the administrative

09:42:52 13   costs.

09:42:53 14          I appreciate the fact that there are issues

09:42:55 15   related to whether those costs are excessive -- we believe they

09:42:58 16   are; whether or not there are controls; whether or not

09:43:01 17   productivity is low.  Those are all very significant questions,

09:43:04 18   which Your Honor pointed out.  We have asked for an examination

09:43:07 19   of audit.  That's a separate issue.

09:43:09 20          But in the context of that exercise, looking at

09:43:11 21   the CSSP operation, we made specific requests related to

09:43:17 22   budgeting.  We asked those questions back in May, and the

09:43:21 23   Claims Administrator provided a not insignificant amount of

09:43:25 24   information.

09:43:26 25          To be very clear, we received information.  As I

09:43:28 1    alluded to, and Your Honor is aware because you were there, we

09:43:31 2    sat through meetings, but we didn't receive all the information

09:43:36 3    that we asked for.

09:43:36 4              Your Honor, what I would like to tender to you --

09:43:38 5    and if it's acceptable to the Court, I'll mark it as an

09:43:41 6    exhibit -- is the requests for information we first submitted

09:43:44 7    in May, and updated in the month of June.

09:43:49 8              I've specifically highlighted, so my highlighting

09:43:52 9    is new, what we didn't get that's relevant to those six

09:43:56 10   elements of the budget that we're seeking to get today.

09:44:00 11             Thank you, Your Honor.

09:44:01 12             If we could mark this as Exhibit 1, please.

09:44:07 13         THE COURT:  Any objection?  It will be admitted.

09:44:14 14         (WHEREUPON, BP Exhibit 1 was admitted.)

09:44:14 15         MR. MOSKOWITZ:  Thank you, Your Honor.

09:44:18 16             So, Your Honor, the point of this exhibit is to

09:44:22 17   say that, while this budget was received on the 17th of July,

09:44:26 18   and we are here today in early August, the information that is

09:44:31 19   needed to show us the support for the budget is information you

09:44:36 20   can see highlighted in yellow that we've asked for and that we

09:44:40 21   didn't receive.

09:44:41 22             Again, it's just the highlighting I've added to

09:44:45 23   this.  To be very clear, the notations that say "not received,"

09:44:50 24   that was transmitted to the CSSP on June 5th.  Since that date,

09:44:53 25   we haven't received this information.

**OFFICIAL TRANSCRIPT**

09:44:55 1          So therefore, Your Honor -- and before I pivot to

09:45:11 2   the issue of what was done in the past versus what's being done

09:45:15 3   now -- if you look at this, it is a very straightforward

09:45:17 4   request.  It simply requires a budget that any well run

09:45:22 5   organization or organizations a fraction of this size would

09:45:27 6   demand to properly evaluate it, not simply a two-page e-mail.

09:45:33 7   That is clearly not reasonable.  It's clearly not appropriate.

09:45:37 8          I'll go ahead, just for purposes of the record,

09:45:40 9   Your Honor, and I'll mark the two-page e-mail, so it's in the

09:45:44 10  record.  We'll mark that as Exhibit 2.

09:46:09 11         THE COURT:  Mr. Moskowitz, on your Exhibit Number 1 --

09:46:09 12         MR. MOSKOWITZ:  Yes, Your Honor.

09:46:12 13         THE COURT:  -- you've got highlighted items, as well as

09:46:15 14  some items that are marked "not received" in red.

09:46:20 15         MR. MOSKOWITZ:  Right.

09:46:21 16         THE COURT:  What's the difference?

09:46:22 17         MR. MOSKOWITZ:  Sure.  I appreciate Your Honor flagging

09:46:25 18  that, because I do want to be very clear on the document.

09:46:28 19         The document that was issued to the CSSP on the

09:46:31 20  5th of June has the information that is in black and white,

09:46:34 21  plus the information in red.

09:46:34 22         THE COURT:  Yes.

09:46:36 23         MR. MOSKOWITZ:  I highlighted, as an exhibit for the

09:46:39 24  Court today, in yellow highlighting those specific requests

09:46:43 25  that relate to the information that's needed for the budget.

OFFICIAL TRANSCRIPT

09:46:48 1          THE COURT:  Okay.  Thank you.

09:46:54 2          MR. MOSKOWITZ:  Your Honor, one issue that the

09:46:56 3   Claims Administrator raised in the response letter he issued

09:46:58 4   yesterday afternoon was that BP has funded prior quarterly

09:47:02 5   budgets based on the same presentation of budget information in

09:47:06 6   the third quarter budget.

09:47:08 7          Well, Your Honor, it's important here, if I

09:47:10 8   could, and this will be brief, but I think an important

09:47:14 9   discussion of the claims administration to understand in

09:47:16 10  context why it is we're raising these issues now.

09:47:19 11         Your Honor, every claims administration has a

09:47:23 12  life cycle.  In the first stage, you have the development of

09:47:26 13  the claims processes.  You've got to hire vendors.  You've got

09:47:29 14  to develop the systems.  You've got to test them.  You've got

09:47:33 15  to train personnel.

09:47:34 16         Then this claims program, generally speaking,

09:47:37 17  moves into a ramp-up or roll-out stage.  Oftentimes, as we

09:47:42 18  experienced in this program, that is done not as a big bang.

09:47:45 19  It doesn't happen all at once, but it happens over time.

09:47:48 20  Certain claims systems get up on line, while others are still

09:47:53 21  being developed.

09:47:54 22         Ultimately, you get to a production phase.  The

09:47:57 23  Claims Administrator indicates in his July 1, 2013, letter to

09:47:59 24  the Court that the Administration is currently in a production

09:48:03 25  stage.  In that production stage, you expect a plateauing of

**OFFICIAL TRANSCRIPT**

09:48:06  1    the operation, and then, ultimately, and typically around a

09:48:09  2    claims bar date, the facility moves into a wind-down or runoff

09:48:12  3    phase.

09:48:13  4              The important point of that dichotomy,

09:48:16  5    Your Honor, is that when you look at budgeting issues, you

09:48:19  6    can't look at what happened at the very beginning, because at

09:48:22  7    the very beginning there are a different mix of activities, a

09:48:25  8    different mix of costs, sometimes a different mix of vendors.

09:48:27  9              Here, in particular, as the Court is well aware,

09:48:30 10    the claims facility was asked to get up and running very

09:48:34 11    quickly, to do quite a bit of work in a short period of time,

09:48:37 12    and we appreciate that.  We have explained our appreciation for

09:48:40 13    the need to act quickly to ramp it up.

09:48:44 14              Ultimately, Your Honor, therefore, what we've

09:48:46 15    focused intensely on is what is this facility going to look

09:48:50 16    like in the production phase, when issues of we're racing the

09:48:54 17    clock, we have to get a lot done in a short time, all of those

09:48:57 18    activities are done.

09:48:58 19              So we started to really focus intensely on the

09:49:01 20    budget during the production phase.

09:49:03 21              Of course, as I mentioned before, it was at that

09:49:04 22    point in time, and not to get into this issue because I

09:49:07 23    understand it's not for debate today, that we began to observe

09:49:11 24    the data and said, boy, we see significant issues here with

09:49:15 25    costs and productivity and efficiencies.  That led us into the

**OFFICIAL TRANSCRIPT**

09:49:18  1    dialogue with the Claims Administrator that ultimately resulted

09:49:21  2    in the meeting Your Honor attended; but, more importantly,

09:49:24  3    resulted in the information request we met and received.

09:49:27  4         The critical point there is for this production

09:49:30  5    phase, when we started this activity, the third quarter 2013 is

09:49:34  6    the first budget we've got after going through that exercise.

09:49:37  7    So it is entirely appropriate, having now really dug into this

09:49:43  8    on the production phase of the process, to ask these important

09:49:46  9    questions to get information.

09:49:48  10        I can't underscore that enough, Your Honor.  This

09:49:51  11   is not an intent not to fund.  This is an intent, a request, as

09:49:55  12   we're contractually entitled to, to get the information to make

09:49:59  13   intelligent, reasonable decisions that a rational and

09:50:03  14   reasonable business entity of any size would make.  To ensure

09:50:08  15   ourselves, as we're entitled to under the agreement, for the

09:50:11  16   benefit of the Court, which oversees this process, to make sure

09:50:15  17   we have a budget in place that is a reasonable budget.

09:50:19  18        That's why we've come here today to address these

09:50:24  19   issues, as the Court has asked, to make sure we get the

09:50:27  20   information.  Fundamentally, that's all we ask for.  We believe

09:50:31  21   it should be readily available.

09:50:33  22        When we receive it, we will promptly act on it,

09:50:36  23   deal with any questions that come up, and otherwise fulfill our

09:50:40  24   obligations under the agreement.

09:50:41  25        THE COURT:  Okay.

**OFFICIAL TRANSCRIPT**

09:50:44  1          MR. MOSKOWITZ:  Thank you, Your Honor.

09:50:45  2          THE COURT:  Thank you, Mr. Moskowitz.

09:50:48  3             Mr. Juneau.

09:50:50  4          MR. JUNEAU:  Your Honor, for the record, Pat Juneau,

09:50:58  5     the Court-appointed Claims Administrator.

09:51:01  6             First thing, I have accumulated a list of

09:51:10  7     exhibits here, Your Honor, that are part of the records of the

09:51:15  8     Claims Administrator's Office that are relevant to the issue

09:51:19  9     that we have here.  I'm passing out a copy of those books.  The

09:51:26 10     index is on the first page of the exhibit list, one through 15.

09:51:31 11             I won't go through each of these exhibits, but I

09:51:36 12     will pull out a few that are interesting and I think address

09:51:41 13     specifically what has been proposed here today.

09:51:44 14             Just one overall observation.  What I'm going to

09:51:48 15     do, Your Honor -- don't take it from me, let's take it from the

09:51:52 16     people who do this work -- we have been in operation pursuant

09:51:57 17     to the Court Order effectively starting this thing on June 4th

09:52:00 18     of last year.

09:52:01 19             I want to clarify for the record that I think

09:52:03 20     it's undisputed, I don't work for BP, and I don't work for the

09:52:09 21     plaintiffs' firm.  I work for the Court, and I report to the

09:52:14 22     Court.  I'm not a subsidiary of BP, and I don't work for the

09:52:19 23     Domengeaux, Wright law firm or the Herman law firm.

09:52:21 24             I have an oversight responsibility pursuant to

09:52:23 25     the Orders of the Court to coordinate and run and manage the

**OFFICIAL TRANSCRIPT**

09:52:28 1    activities of the Court-appointed vendors and the entity of

09:52:32 2    which I operate, which is really an accumulation of independent

09:52:36 3    contractors that has been since the onset of this program.

09:52:40 4    That's my role.

09:52:42 5             I think it's important to set the context of the

09:52:48 6    questioning that Mr. Moskowitz was talking about, that, like

09:52:50 7    any other corporation.  I'm going to address that in a minute.

09:52:53 8             You know, for example, Ford Motor Company, when

09:52:59 9    they run out production lines and productivity schedules and

09:53:06 10   efficiency ratings and so forth, they know what the car is,

09:53:09 11   they know what the model is, they know what the blueprint is,

09:53:12 12   they know what the price is, and they present it out.

09:53:15 13            That's not what I got in this thing.  I got a

09:53:19 14   thousand-page Settlement Agreement that was negotiated between

09:53:22 15   the parties over some extensive period of time, of which I had

09:53:25 16   nothing to do with, and my job is to implement it.

09:53:30 17            I had to enact over four hundred policies in this

09:53:36 18   matter.  We have an evolving process that's still evolving.  We

09:53:44 19   have unresolved issues.

09:53:46 20            I'll give you one big one for example.  We have

09:53:49 21   been trying to address that now for, I think, over two to three

09:53:52 22   months, this moratorium issue.  Needless to say, that's a huge

09:53:57 23   issue in matters like this.  That's unresolved.  I'm listing

09:54:01 24   one of hundreds of issues that are still out there.

09:54:03 25            So we don't have a pristine product to measure

**OFFICIAL TRANSCRIPT**

09:54:06  1    when you're talking about productivity and examples through
09:54:10  2    what you're supposed to get out because the system is changed
09:54:13  3    consistently because of what we've had to implement in
09:54:16  4    implementing the Settlement Agreement, with the full input and
09:54:19  5    knowledge throughout this whole case of the parties.  That's a
09:54:23  6    fact, okay, and we're doing that today.
09:54:25  7              We have presently scheduled -- I think it's four
09:54:31  8    to six panel meetings that's contemplated by the Settlement
09:54:38  9    Agreement to attempt to resolve issues which haven't been
09:54:42 10    resolved, and certainly not resolved by the Settlement
09:54:45 11    Agreement.
09:54:45 12              So when I look to people to ask them what to do,
09:54:48 13    how to do it and so forth, they say, well, what is it you want
09:54:51 14    me to do, because that's not resolved, that's not resolved,
09:54:55 15    that's not resolved, that's not resolved, that's not resolved.
09:54:57 16              So it's got to be taken into context of reality
09:55:00 17    of what we are dealing with.
09:55:01 18              With the permission of the Court -- and I've
09:55:08 19    condensed this, Your Honor, to make it very precise and very
09:55:11 20    limited to the issues that you've described -- I have two
09:55:13 21    people here that work for me.  They have expertise in what they
09:55:18 22    are doing.  It won't come from me; it will come from them about
09:55:21 23    the context.
09:55:23 24              But I do want to address one point.  About, like
09:55:25 25    we're not doing something professionally here, we're not

**OFFICIAL TRANSCRIPT**

09:55:28  1    providing information, and the context is limited to a

09:55:33  2    three-page e-mail is a gross distortion.  I have to say that

09:55:37  3    because I'm going to put Mr. Levine on the stand.  The format

09:55:42  4    that we used to give the budget which we have given -- this

09:55:47  5    ain't the first one, it goes back now, and I have the list of

09:55:51  6    them; we have the times, the dates and so forth -- was

09:55:54  7    discussed, approved by BP.  We will discuss that in a minute.

09:55:59  8    I'll have Mr. Levine, because he was involved in that.

09:56:02  9         So we give them what they ask for.  We give it to

09:56:06 10    them in the format that they ask for.  We have responded.  I

09:56:10 11    can say truthfully, because it was at my instruction, we have

09:56:13 12    responded to every request made by either BP or the plaintiffs

09:56:19 13    or the Court for any issue that we have here.  I don't think

09:56:24 14    there is anybody in this courtroom, either side, will dispute

09:56:30 15    that statement.

09:56:30 16         In addition, in addition, the way this thing is

09:56:36 17    structured, Your Honor, every invoice, everything that has to

09:56:41 18    do with any service that's performed in this case is

09:56:46 19    meticulously detailed and itemized by person, time, rate, date,

09:56:54 20    activity, all of that, since the inception of this case.  We

09:56:57 21    get the invoices.  We would send that to BP.  They've had that

09:57:04 22    since day one.  They've got that today.

09:57:06 23         So it's not a matter of a mystery.  It's an

09:57:09 24    information on steroids about the level of detail that we have

09:57:13 25    given in this case.  We have never been questioned, never been

09:57:17  1    asked to expand anything on that data.

09:57:19  2              So in the general context of things, what we're

09:57:24  3    trying to do, Your Honor, is this.  I had to address this

09:57:30  4    matter to the Court because it's a serious matter.  We have --

09:57:34  5    and I'll provide that through testimony in just a second.  We

09:57:38  6    do not have funding currently, today, sufficient money to --

09:57:43  7    bills that BP is obligated and honor bound to pay.

09:57:46  8              Now, I'm the Claims Administrator.  I have an

09:57:51  9    obligation, pursuant to the Court's direction, to coordinate

09:57:54 10    and deal with these people.  So the only forum we have is to

09:57:59 11    come to this Court and present to this Court their contractual

09:58:01 12    obligations, their legal obligations that have to be fulfilled,

09:58:04 13    which come with the financial commitments that have to be

09:58:07 14    fulfilled.

09:58:08 15              I have had and continue to have an open door

09:58:12 16    policy with everybody in this matter.  I am receptive and have

09:58:15 17    been receptive to having meetings and input from anybody.

09:58:19 18              As a matter of fact, the record will reflect

09:58:20 19    going back to November, we started to have meetings with BP in

09:58:24 20    November to give them the basics and the details of which we've

09:58:27 21    done.  Those meetings were shut down, not by me, but by BP,

09:58:31 22    until long after the first of the year that he was talking

09:58:34 23    about.  We will address those in a minute.

09:58:36 24              So, Your Honor, I think maybe the best way to

09:58:39 25    address those matters, if you will permit me -- and I've got it

09:58:42  1   very, very condensed --

09:58:43  2           THE COURT:  No problem.

09:58:45  3           MR. JUNEAU:  -- I will call the finance officer and

09:58:47  4   tell what you the status of the data.  I have a few questions

09:58:51  5   for him.

09:58:52  6           Then I'll call Mr. Fisher, address very limited

09:58:54  7   to the scope of Ms. Travis' letter.  Mr. Fisher can tell you

09:58:58  8   how we've progressed in that regard.

09:59:00  9           Then, I'll rest the case, other than to say that

09:59:04 10   we have been operating the same way every time through

09:59:09 11   conception of the process, nothing has changed, until I get a

09:59:13 12   letter on August 5 telling me they want to resubmit the format,

09:59:19 13   what we're giving is not sufficient, they need more

09:59:22 14   information, and to cut off the funds for bills that we owe

09:59:25 15   today.

09:59:27 16           So it seems to me, it seems to me, Your Honor,

09:59:33 17   the timing of this thing puts us in this program in jeopardy.

09:59:36 18   That's why I used the words this is a very serious matter to be

09:59:40 19   addressed to the Court.  I get this on August 5.  We've got

09:59:43 20   bills that are due today.  We've certainly got a whole bunch of

09:59:45 21   them coming due for work that's being done and supposed to be

09:59:49 22   done and has been done.  We will have to be addressing those

09:59:53 23   bills come the first of the month; but, we've got bills we owe

09:59:55 24   today.

09:59:56 25           That being said and done, Your Honor, the first

**OFFICIAL TRANSCRIPT**

09:59:59  1    thing I would like to do is offer into evidence the list of

10:00:04  2    Exhibits 1 through 15.  We can just mark those Administrator 1

10:00:09  3    through 15, with the permission of the Court.

10:00:12  4          THE COURT:  BP, any objection?

10:00:15  5          MR. MOSKOWITZ:  No objection, Your Honor.

10:00:16  6          THE COURT:  Okay, those will be admitted.

10:00:16  7          (WHEREUPON, Administrator Exhibits 1 through 15 were

10:00:19  8    admitted.)

10:00:19  9          MR. JUNEAU:  Let me call Mr. Levine first.

10:00:22 10          MR. MOSKOWITZ:  Your Honor, at the outset of the

10:00:25 11    hearing, you indicated that we would not have an evidentiary

10:00:28 12    presentation today.  BP was not notified there would be an

10:00:31 13    evidentiary presentation.  We are certainly not prepared to

10:00:33 14    deal with live witnesses.

10:00:35 15                To the extent the Court wishes to hold an

10:00:36 16    evidentiary hearing, we, of course, would welcome that.  We may

10:00:37 17    have our own witnesses we would like to call.  We are not

10:00:40 18    prepared to deal with live witnesses, Your Honor.  I

10:00:43 19    respectfully object.

10:00:44 20          THE COURT:  I'm going to go ahead and hear the two

10:00:50 21    witnesses and the limited testimony that Mr. Juneau believes

10:00:55 22    should be presented on the limited issue of whether or not the

10:00:58 23    budget for third quarter 2013 should be funded.  I think it

10:01:07 24    will be helpful to me in my determination.

10:01:21 25          THE DEPUTY CLERK:  Please raise your right hand.  Do

**OFFICIAL TRANSCRIPT**

1    you solemnly swear that the testimony you are about to give

2    will be the truth, the whole truth and nothing but the truth,

3    so help you God?

4         THE WITNESS:  Yes, I do.

5                         **BOB LEVINE**

6     was called as a witness and, after being first duly sworn by

7     the Clerk, was examined and testified on his oath as follows:

8         THE DEPUTY CLERK:  Please state your name for the

9    record.

10:01:28 10        THE WITNESS:  My name is Bob Levine.

10:01:28 11                    DIRECT EXAMINATION

10:01:32 12   BY MR. JUNEAU:

10:01:32 13   Q.   Mr. Levine, I'm going to condense this presentation.  Give

10:01:41 14   us your name and your current address.

10:01:41 15   A.   My name is Bob Levine.  I live at 1321 Bonnabel in

10:01:45 16   Metairie, Louisiana.

10:01:45 17   Q.   In a condensed fashion, what's your education, and what's

10:01:48 18   your work experience?

10:01:49 19   A.   I'm a graduate from LSU.  I've been a CPA for 30 years,

10:01:54 20   been a CFO for numerous companies for 15 years.

10:01:57 21   Q.   What is your capacity with the *Deepwater* settlement

10:02:02 22   program?

10:02:02 23   A.   I'm the chief financial officer.

10:02:04 24   Q.   All right.  Tell the Court and those assembled here, how

10:02:08 25   was the procedure set up to request funds from BP?

10:02:13  1   A.   In July of 2012, I met with Maria Travis and Amy Boatman

10:02:19  2   of BP.  The Settlement Agreement calls, after the initial 50

10:02:24  3   million in administrative funding was depleted, that I would

10:02:27  4   make request for funding as needed.  They asked that I do it on

10:02:31  5   a quarterly basis.

10:02:32  6        I prepared the budget in the format that I've been

10:02:36  7   doing and asked if this was sufficient.  By e-mail, Ms. Boatman

10:02:43  8   told me that was exactly what they were looking for.  That was

10:02:46  9   sufficient.

10:02:49 10   Q.   Let's talk about the format.  There is an Exhibit 1(f).

10:03:01 11   Let me hand you this book, sir.  Would you look at 1(f).

10:03:10 12   A.   Yes, sir.

10:03:11 13   Q.   Is that the format that Ms. Travis, on behalf of BP,

10:03:21 14   agreed that you were to submit in this matter?

10:03:23 15   A.   Ms. Boatman did, yes, sir.

10:03:25 16   Q.   Now, my question to you is, and to the Court, I would like

10:03:28 17   you to tell the Court, is that the exact same format that you

10:03:32 18   submitted on this budget that's being criticized here today?

10:03:35 19   A.   Yes, sir.

10:03:35 20   Q.   Have you ever, at any time, received a request from BP or

10:03:45 21   the plaintiffs' firm having to do with a budget that you've

10:03:48 22   refused and not given information?

10:03:50 23   A.   No, sir.

10:03:50 24   Q.   Have you been -- going back to June of last year,

10:03:55 25   constantly and consistently had dialogue with BP with regard to

**OFFICIAL TRANSCRIPT**

10:04:00  1   items regarding invoices and budgetary matters?

10:04:03  2   A.    Yes, sir.

10:04:03  3   Q.    You provided responses?

10:04:06  4   A.    I provided it timely, yes, sir.

10:04:09  5   Q.    Until we got here today and we got this letter on June 5,

10:04:14  6   has anybody ever told you, either BP, the plaintiffs or

10:04:18  7   anybody, that you were not following exactly what you were

10:04:21  8   asked to do and agreed upon by BP?

10:04:22  9   A.    No, sir.

10:04:23 10   Q.    All right.  Now, describe for me the budgetary process

10:04:31 11   from its inception.

10:04:34 12   A.    The agreement calls that I prepare a budget and submit it

10:04:41 13   to both parties for approval.  After approval is given, then we

10:04:46 14   prepare a formal letter and present it to BP for funding.

10:04:50 15         That process in the first quarter took -- first

10:04:55 16   quarter, which was the third quarter of 2012, took about -- on

10:04:59 17   average, it takes about six to seven days.

10:05:01 18   Q.    In Exhibit 1(a), does that describe the timeline since

10:05:11 19   inception through the current budgetary request that we have,

10:05:15 20   about when it was sought, when you obtained the approvals, and

10:05:21 21   what the process time was and what the amount was requested?

10:05:23 22   A.    Yes, sir.

10:05:24 23   Q.    Was the format on each of those occasions the same format

10:05:30 24   that was followed when we're talking about the budgetary

10:05:33 25   request that's here today?

**OFFICIAL TRANSCRIPT**

30

10:05:33  1    A.    Yes, sir.

10:05:34  2    Q.    Did anyone ever object to that?

10:05:38  3    A.    No, sir.

10:05:39  4    Q.    That's the format that you were given by BP to follow,

10:05:41  5    correct?

10:05:41  6    A.    Yes, sir.

10:05:41  7    Q.    We have the -- so we go through the third quarter of 2012,

10:05:55  8    7/26/12.  It was followed in that manner, right?  Same format?

10:06:00  9    A.    Yes, sir.

10:06:01 10    Q.    Then again, 10/18/12, same format, same procedure, same

10:06:08 11    policy, correct?

10:06:08 12    A.    Yes, sir.

10:06:09 13    Q.    All of these were funded, correct?

10:06:10 14    A.    Correct.

10:06:12 15    Q.    Any objection?

10:06:12 16    A.    No, sir.

10:06:12 17    Q.    What about 2/11/13?

10:06:15 18    A.    Same thing.

10:06:15 19    Q.    What about 5/6/13?

10:06:20 20    A.    Same thing.

10:06:21 21    Q.    Now we're at the third quarter, right?

10:06:24 22    A.    Yes, sir.

10:06:24 23    Q.    We get to this third quarter, where they object and say

10:06:28 24    we've done it wrong, correct?

10:06:31 25           MR. MOSKOWITZ:  Objection, Your Honor, leading.

**OFFICIAL TRANSCRIPT**

10:06:33 1          MR. JUNEAU:  I withdraw the question.

10:06:36 2     EXAMINATION BY MR. JUNEAU:

10:06:36 3     Q.   What's the financial status today, what the Court needs to

10:06:49 4     know, of the account with regard to the payment of obligated

10:06:54 5     expenses that we're obligated to pay under contracts that were

10:06:58 6     executed with the people who are doing the work?

10:07:01 7     A.   Well, we currently have approximately 210,000 in the

10:07:03 8     escrow fund at J. P. Morgan, and we currently have just under

10:07:08 9     $8 million in payables due, that were due on Monday or Tuesday

10:07:12 10    to be paid.

10:07:12 11    Q.   It might go without saying, you don't have enough money to

10:07:16 12    pay bills even you have today; is that correct?

10:07:18 13    A.   That's correct.

10:07:19 14         MR. MOSKOWITZ:  Objection, Your Honor.

10:07:20 15         MR. JUNEAU:  What's the objection?

10:07:22 16         MR. MOSKOWITZ:  It's a leading question, Your Honor.

10:07:24 17         THE COURT:  Overruled.

10:07:25 18    EXAMINATION BY MR. JUNEAU:

10:07:28 19    Q.   When were you first advised by anybody that there was a

10:07:31 20    problem with the present budget request?

10:07:33 21    A.   On Monday, with a letter from Maria Travis.

10:07:37 22    Q.   Tell the Court, as it went from inception through now,

10:07:46 23    about the invoice process, the details of the invoice, and how

10:07:50 24    is that handled, what's transmitted, what's provided to BP.

10:07:54 25    A.   Before any payment's made -- for instance, we pay three

**OFFICIAL TRANSCRIPT**

10:08:00 1   times a month on -- every 10 days, we pay bills -- we prepare a

10:08:04 2   list of those bills.  We have approvals in-house, to where the

10:08:09 3   invoice is audited internally.  The CEO approves it, the Claims

10:08:17 4   Administrator approves it, and then it's reviewed again by me.

10:08:24 5         It's put on a computer system called SharePoint, to

10:08:27 6   where BP has rights to view it.  I send them an e-mail, tell

10:08:33 7   them, this is a proposed payment, and I wait for them to send

10:08:37 8   me a response saying they have no issues with the payment.

10:08:41 9         At that time, I prepare a letter, and Mr. Juneau

10:08:46 10  signs it.  We send it to J. P. Morgan, and they fund the

10:08:50 11  account.  Then I have the funds available to pay the bills.

10:09:00 12  Q.   Were Garden City and BrownGreer over budget?

10:09:04 13  A.   For the third quarter -- or second quarter?

10:09:07 14  Q.   Yes.

10:09:07 15  A.   No, sir, not according to my figures.

10:09:12 16        Garden City was approximately 641,000 per month under

10:09:19 17  budget.  BrownGreer was approximately 31,000 a month under

10:09:24 18  budget in the second quarter.

10:09:25 19  Q.   Now, Mr. Moskowitz presented a document called

10:09:36 20  "Budget Meeting."  It says, "June 5, 2013 Update."  It says,

10:09:41 21  "Information requested not received."  The documents say they

10:09:44 22  were sent to us.  Are you familiar with what I'm talking about?

10:09:47 23  A.   No, sir.

10:09:47 24  Q.   It was presented, and I handed you that during the course

10:09:52 25  of this --

**OFFICIAL TRANSCRIPT**

10:09:52  1   A.   Yes, sir.

10:09:55  2   Q.   The first items that are listed there -- all right?

10:10:01  3   A.   Yes, sir.

10:10:01  4   Q.   -- are those items that are relative or not relative to

10:10:04  5   the inquiry with regard to a budget?

10:10:07  6   A.   No, sir.  The way it was explained to me back in July by

10:10:12  7   Ms. Travis is BP needed to have cash forecasting for this

10:10:19  8   process, and they needed at least 10 days notice before they

10:10:22  9   could move funds around.

10:10:24 10        To me, it's a matter of cash bills.  What we're

10:10:28 11   talking about here is process deficiencies and operational

10:10:34 12   issues.

10:10:35 13        THE COURT:  Mr. Levine, did you see the highlighted in

10:10:39 14   yellow provisions?  Those are the provisions that Mr. Moskowitz

10:10:45 15   has said he believes are relevant to preparation of a quarterly

10:10:52 16   budget.  Do you see those?

10:10:55 17        THE WITNESS:  This?

10:10:56 18        MR. JUNEAU:  The first section of the highlight.

10:10:59 19        THE COURT:  I'm on Page 1 --

10:10:59 20        THE WITNESS:  Yes, ma'am.

10:11:01 21        THE COURT:  -- under questions.  Would you review those

10:11:04 22   for me, please.

10:11:05 23        THE WITNESS:  Yes, ma'am, I will.

10:11:08 24        The time in motion study or velocity studies of

10:11:18 25   the claims administration process; an analysis of the

**OFFICIAL TRANSCRIPT**

10:11:27  1  administrative costs incurred or budgeted on an average claim

10:11:29  2  basis across status types:  Eligible, incomplete, denial,

10:11:34  3  withdrawal, closed.

10:11:37  4       We do not -- the volume of the bills that we get

10:11:44  5  from the vendors -- for instance, BrownGreer would be about

10:11:49  6  this tall (indicating) -- it's about two to three feet --

10:11:53  7  Garden City, the same (indicating) -- breaking it down.  We

10:12:00  8  don't do that.  I don't do that for paying bills.

10:12:00  9  EXAMINATION BY MR. JUNEAU:

10:12:06 10  Q.   Now, then --

10:12:06 11       THE COURT:  I'm sorry, Mr. Juneau.

10:12:09 12       What BP is asserting, however, is that the items

10:12:15 13  that are highlighted in yellow should be done in order to

10:12:19 14  prepare a budget that forecasts what the expenses will be for

10:12:28 15  any given quarter.

10:12:31 16       What I'm trying to understand, based on the

10:12:34 17  highlighting on Page 1 and 2 of BP's Exhibit 1, is whether you

10:12:40 18  agree; and, if you don't generate it, do you know whether the

10:12:45 19  primary vendors can generate this information?

10:12:48 20       THE WITNESS:  The primary vendors can generate.  They

10:12:50 21  do track this information.

10:12:52 22       THE COURT:  All right.  Is that provided to you when

10:12:55 23  you make your budget projections?

10:12:57 24       THE WITNESS:  No, ma'am, it's not.

10:13:00 25  EXAMINATION BY MR. JUNEAU:

**OFFICIAL TRANSCRIPT**

10:13:00  1    Q.    Now, Mr. Levine, there is a second part Mr. Moskowitz

10:13:05  2    talked about here.  He talks about, "Have you made projections

10:13:09  3    regarding trend and average administrative costs per claim?"

10:13:14  4    Do you see that?

10:13:15  5    A.    Yes, sir.

10:13:15  6    Q.    Has that been provided?

10:13:18  7    A.    I believe it has been provided.

10:13:19  8    Q.    Through the portal, right?

10:13:24  9    A.    Yes, sir.

10:13:24 10    Q.    It's available to all the parties.

10:13:33 11          MR. JUNEAU:  That's all the questions I have with

10:13:35 12    Mr. Levine, Your Honor.

10:13:36 13          THE COURT:  Mr. Moskowitz.

10:13:39 14          MR. MOSKOWITZ:  Thank you, Your Honor.

10:13:40 15          Your Honor, I would simply renew BP's objection.

10:13:43 16    I would point out that not only were we not noticed that this

10:13:46 17    was an evidentiary hearing; but, frankly, we were provided no

10:13:49 18    notice as to who would even be testifying, so we were

10:13:52 19    completely sandbagged here.

10:13:54 20          THE COURT:  Nor I.

10:13:56 21          MR. MOSKOWITZ:  Your Honor, I would request to continue

10:13:57 22    this hearing, so I would have an opportunity to prepare to

10:14:00 23    cross-examine this witness in a fair way.

10:14:01 24          This is a witness who is the chief financial

10:14:03 25    officer who has gone through the whole process of budgeting.

**OFFICIAL TRANSCRIPT**

10:14:06 1    He is giving testimony which we don't have an opportunity to

10:14:09 2    even rebut today through a witness, Your Honor.  We completely

10:14:13 3    have our hands tied behind our back.  This is prejudicial to

10:14:18 4    BP.

10:14:18 5        THE COURT:  Okay.  Again, I'm going to overrule the

10:14:20 6    objection.

10:14:20 7            Do you have any questions for the witness?

10:14:23 8        MR. MOSKOWITZ:  I do, Your Honor.

10:14:23 9                    CROSS-EXAMINATION

10:14:23 10   BY MR. MOSKOWITZ:

10:14:27 11   Q.   Good morning, Mr. Levine.

10:14:30 12   A.   Good morning, Mr. Moskowitz.

10:14:33 13   Q.   Mr. Levine, could you tell us what your background is

10:14:36 14   prior to joining the CSSP in terms of jobs you've held where

10:14:42 15   you had to do budgeting work.

10:14:43 16   A.   Yes, sir.  I prepared the budget for the Freeport McMoRan

10:14:52 17   mine in Indonesia for about three years in the '90s.  It's

10:14:56 18   about a $300 million operation, with about another $800 million

10:15:03 19   in capital expended per year.

10:15:07 20           I've also prepared budgets for the various companies

10:15:13 21   I've been CFO of throughout the early 2000's.

10:15:18 22   Q.   So with regard to the $300 million budget for

10:15:21 23   Freeport McMoRan, did you present the budget to the company?

10:15:25 24   A.   Yes, sir.

10:15:25 25   Q.   What position did you hold with the company?

**OFFICIAL TRANSCRIPT**

10:15:30  1    A.    I was a strategic planning analyst.

10:15:34  2    Q.    With regard to that budget and then the other budgets

10:15:39  3    you've made, have you ever presented a budget that's more than

10:15:42  4    a two-page summary e-mail?

10:15:43  5    A.    No, sir.

10:15:43  6    Q.    If you could turn back to the exhibit that Mr. Juneau

10:15:52  7    presented to you which is marked Exhibit 1.  Do you have that,

10:15:56  8    Mr. Levine?

10:15:57  9    A.    Yes, sir.

10:15:58 10    Q.    I'll remind you that you're testifying under oath today.

10:16:04 11    Is it your testimony today that the Claims Administrator's

10:16:08 12    Office, not the vendors, but the Claims Administrator's Office,

10:16:11 13    through its staff, has not performed any time in motion or

10:16:15 14    velocity studies; is that your testimony?

10:16:18 15    A.    No, sir, that's not my --

10:16:20 16    Q.    Has the Claims Administrator's Office, not the vendors,

10:16:23 17    performed time in motion or velocity studies?

10:16:27 18    A.    Yes, sir, we have.

10:16:27 19    Q.    Thank you, Mr. Levine.

10:16:30 20          With regard to those studies, have those studies been

10:16:33 21    turned over to BP?

10:16:34 22    A.    I'm not aware of it.

10:16:37 23    Q.    Thank you, Mr. Levine.

10:16:42 24          MR. MOSKOWITZ:  Just give me one second, Your Honor.

10:16:42 25    EXAMINATION BY MR. MOSKOWITZ:

**OFFICIAL TRANSCRIPT**

38

10:16:52  1   Q.   Remaining on that exhibit, Mr. Levine, putting aside the

10:16:56  2   time in motion studies, which you have now told the Court --

10:16:59  3   and velocity studies, that the Claims Administrator has had

10:17:03  4   that BP's asked for that haven't been produced, you indicated,

10:17:06  5   correct, that the analysis of administrative costs and average

10:17:09  6   claim costs, that the vendors have, correct?

10:17:11  7   A.   Yes, sir.

10:17:13  8   Q.   That those studies, to the best of your knowledge, have

10:17:16  9   not been produced to BP?

10:17:18 10   A.   No, sir.

10:17:18 11   Q.   BP has asked for them, correct?

10:17:20 12   A.   Yes, sir.

10:17:21 13   Q.   Are there any impediments that you're aware of in turning

10:17:25 14   over the time and velocity studies and vendor studies to BP?

10:17:26 15   A.   Let me be clear.  I'm not sure the vendors have it.  That

10:17:30 16   was my point that I was making of the size.

10:17:32 17          When you're breaking down the -- whether it's

10:17:35 18   eligible, it's a very complex matter.  There is 11,

10:17:40 19   12 different types of claims.  It's very -- it's a lot of data.

10:17:48 20   Q.   Mr. Levine, you're not saying it can't be done?

10:17:51 21   A.   No, sir, I'm not.

10:17:52 22   Q.   The data exists, correct?

10:17:54 23   A.   Yes, sir.

10:17:54 24   Q.   Sitting here today, you don't know whether it has or

10:17:59 25   hasn't been done?

**OFFICIAL TRANSCRIPT**

10:18:01  1     A.   No, sir.

10:18:01  2     Q.   If you turn to page two of the document, if you look at

10:18:07  3     the first bullet point, what are key metrics?

10:18:10  4     A.   I need the document again.

10:18:14  5          MR. MOSKOWITZ:  I think he has the exhibit.

10:18:18  6     EXAMINATION BY MR. MOSKOWITZ:

10:18:18  7     Q.   Tell me when you get to the second page, Mr. Levine.

10:18:20  8     A.   I'm on the second page.

10:18:22  9     Q.   What are the key metrics to track each vendor?  Do you see

10:18:26 10     that bullet?

10:18:26 11     A.   Yes, sir.

10:18:27 12     Q.   Is that information that the CSSP possesses?

10:18:31 13     A.   No, sir.

10:18:31 14     Q.   Is that information that the CSSP can derive from its

10:18:37 15     records?

10:18:39 16     A.   We can get it from the vendors.

10:18:40 17     Q.   So when you said -- when I asked you if the CSSP has it,

10:18:45 18     you said no.  If I am to be more precise, the vendors have that

10:18:50 19     information, correct?

10:18:50 20     A.   The vendors have that, correct.

10:18:52 21     Q.   You can get that information from the vendors, correct?

10:18:54 22     A.   Yes, sir.

10:18:54 23     Q.   That information can be turned over to BP, correct?

10:18:57 24     A.   I guess so, yes, sir.

10:18:58 25     Q.   Thank you.

                                    **OFFICIAL TRANSCRIPT**

10:19:00  1          If you go to the next bullet, "What steps are taken
10:19:03  2  to evaluate continual improvement of the administrative
10:19:06  3  processes including efficiency improvements," do you know
10:19:09  4  whether or not the CSSP takes any steps to evaluate continual
10:19:13  5  improvement of administrative processes, including efficiency
10:19:18  6  improvements?
10:19:18  7  A.    Yes, sir, we do it every day.
10:19:19  8  Q.    You do it every day.  That information could be provided
10:19:22  9  to BP, correct?
10:19:22 10  A.    Yes, sir.
10:19:23 11  Q.    As you sit here today, do you know whether or not that
10:19:27 12  information has been provided to BP?
10:19:30 13  A.    I think a lot of it has been provided to BP verbally in
10:19:33 14  meetings, yes, sir.
10:19:33 15  Q.    But you have written materials on that, correct; it's not
10:19:37 16  all done orally?
10:19:40 17  A.    We have some written materials.
10:19:42 18  Q.    You have written materials, and those written materials
10:19:43 19  have not been turned over to BP, correct?
10:19:44 20  A.    That would be e-mails, and it would have to be memos to
10:19:49 21  files on meetings.
10:19:50 22  Q.    So you have those materials.  You would agree with me they
10:19:54 23  have not been turned over to BP?
10:19:54 24  A.    I don't know if we have those materials.  They would have
10:19:58 25  to be created.  We would have to find the e-mails.

**OFFICIAL TRANSCRIPT**

10:20:00  1    Q.   Well, I'm confused, Mr. Levine.  If you could just clarify

10:20:04  2    that, please?

10:20:04  3    A.   Well, we're talking about management of a very complex

10:20:09  4    process.  You've had up to 3,000 people involved.  The

10:20:18  5    complexity of the daily operations shifts from one meeting to

10:20:24  6    the next many times.

10:20:24  7         A lot of these decisions are made and directed to the

10:20:28  8    vendors to make changes, to create more operational

10:20:34  9    efficiencies.  Are we tracking them?  No.  It's part of

10:20:42 10    management.  We're not recording everything we do as we do it.

10:20:46 11    Q.   But you agree with me that, pursuant to your prior

10:20:49 12    testimony, CSSP, Claims Administrator's Office, has materials,

10:20:54 13    written materials, whether they're in the form of e-mails or

10:20:56 14    memos or meeting summaries, that address continual improvements

10:21:01 15    of administrative processes, including efficiency improvements,

10:21:05 16    correct?

10:21:06 17    A.   Yes, sir.

10:21:06 18    Q.   That information has not been turned over to BP, correct?

10:21:09 19    A.   I don't know.  I can't answer that.  I haven't turned over

10:21:12 20    anything to BP.

10:21:18 21         MR. MOSKOWITZ:  I have no further questions,

10:21:18 22    Your Honor.

10:21:20 23         THE COURT:  Mr. Juneau.

10:21:20 24         MR. JUNEAU:  That's all the questions, Your Honor.

10:21:21 25         THE COURT:  Mr. Levine, let me ask you a couple of

10:21:23  1    questions, please, before you step down.

10:21:23  2            THE WITNESS:  Yes, ma'am.

10:21:23  3                        EXAMINATION

10:21:23  4    BY THE COURT:

10:21:28  5    Q.   When you prepare your projected quarterly budget, what

10:21:32  6    factors do you take into account besides what the prior quarter

10:21:38  7    spending was?

10:21:40  8    A.   I look at the backlog in claims.  I talk to the vendors.

10:21:44  9    I talk to Mr. Odom, Mr. Fisher.  I try to get an idea of if the

10:21:51 10    activity is going to decline or increase.  I talk to vendors,

10:21:55 11    get the same information.

10:21:56 12    Q.   With regard to the vendors, BP, as you know, has been

10:22:04 13    critical about the efficiencies or inefficiencies of the major

10:22:12 14    vendors.  Do you know what information either the Claims

10:22:20 15    Administrator's Office gathers or the vendors gather with

10:22:22 16    regard to their efficiencies and whether they can be improved?

10:22:28 17    A.   Is it available; is that what you're asking?

10:22:31 18    Q.   Well, is it done?

10:22:34 19    A.   Yes, ma'am.  I believe it is done.

10:22:35 20    Q.   How is that factored into the budget process?

10:22:39 21    A.   Well, you see it historically as it's happening.

10:22:46 22            For instance, Garden City, for instance, they have a

10:22:51 23    call center, initially, that was costing over four-and-a-half

10:22:57 24    million dollars a month.

10:22:58 25            We looked at it.  We looked at the utilization.  We

**OFFICIAL TRANSCRIPT**

10:23:05 1   talked to them -- to the vendor to look at it.  They came back

10:23:08 2   with recommendations and made some significant cuts to the tune

10:23:12 3   of over $30 million a year.  That was last October.

10:23:15 4        For security at claimant assistance centers,

10:23:28 5   initially that was running over half a million dollars a month.

10:23:33 6   Mr. Juneau had Mr. Welker go around and do an assessment.

10:23:36 7        We made the determination we could cut down on the

10:23:42 8   security.  There were two security officers at each location,

10:23:46 9   which was requested initially by the parties, and we cut that

10:23:50 10  down.

10:23:51 11       For instance, the CAC centers, we're looking at

10:23:57 12  utilization on a daily basis of activity in those centers.

10:24:03 13  Hours were adjusted.  For instance, they were initially open

10:24:05 14  all day Saturday.  That was adjusted to the periods where they

10:24:10 15  were busy.

10:24:12 16       We had two shifts running in the claimant assistance

10:24:17 17  centers.  We cut that down to one shift and staggered the

10:24:22 18  shift, to where we had more people there when it was the most

10:24:27 19  busy.

10:24:27 20       We've done the same thing with computer operations,

10:24:34 21  looking at costs, looking at ways to do things more

10:24:39 22  efficiently.

10:24:39 23       I wasn't prepared to speak about that, but we could

10:24:45 24  go on and on.

10:24:46 25  Q.   Let me ask you, you've read Ms. Travis' letter of

**OFFICIAL TRANSCRIPT**

44

10:24:49  1    August 5th, where she asks that the budget be resubmitted and

10:24:56  2    that it be resubmitted with appropriate documentation,

10:25:03  3    analysis, metrics and explanatory notes to submit each item in

10:25:10  4    the budget request.

10:25:10  5            Now, I know that you have not been doing that.

10:25:14  6    You've been submitting quarterly requests, normal course of

10:25:19  7    business, and that's the way you've been operating.

10:25:24  8            Do you believe that for a future quarterly budget you

10:25:28  9    could comply with Ms. Travis' request?

10:25:30 10    A.   Yes, ma'am.  We can give them whatever they need.

10:25:34 11            THE COURT:  Okay.  That's all I have.  Thank you.

10:25:39 12            MR. JUNEAU:  Mr. Fisher.

10:25:43 13            Your Honor, just for purposes of the record, I'm

10:25:46 14    glad you asked that last question.

10:25:51 15            THE COURT:  I'm glad you're glad.

10:25:51 16            MR. JUNEAU:  Very perceptive.

10:25:52 17            We are today or tomorrow and any day thereafter

10:25:57 18    willing to discuss anything that the parties want to provide

10:25:59 19    more information or data.  That is not a problem for us, but it

10:26:02 20    helps to know that in advance.  We know that.  We want to

10:26:06 21    cooperate.

10:26:08 22            The last thing I want to say, Your Honor, I'm

10:26:10 23    here appearing in a role because I've got a practical problem.

10:26:16 24    I've got people that have got to be paid.  We owe them money.

10:26:19 25    It makes me look like I'm in an adversarial role and I have

**OFFICIAL TRANSCRIPT**

been maybe painted as such.

That's not my role.  I just want to do my job, but I've got people that have got to be paid.  We've got contracts that say they should be paid.

So we've got to do this in an orderly, systematic and reasonable fashion.  That's all I'm asking them for.  If somebody wants additional information, fine.  If something arises itself to the level of doing something I can't do or I don't think should be done, I would promote that matter before the Court and have done that.

THE COURT:  I understand that.

MR. JUNEAU:  I just want to make that record clear.

THE COURT:  I do understand that, Mr. Juneau, yes.

MR. JUNEAU:  All right.

THE DEPUTY CLERK:  Please raise your right hand.  Do you solemnly swear that the testimony you are about to give will be the truth, the whole truth and nothing but the truth, so help you God?

THE WITNESS:  Yes, ma'am.

**KIRK FISHER**

was called as a witness and, after being first duly sworn by the Clerk, was examined and testified on his oath as follows:

THE DEPUTY CLERK:  State your name and spell it for the record, please.

THE WITNESS:  Kirk Fisher, K-I-R-K, F-I-S-H-E-R.

**OFFICIAL TRANSCRIPT**

10:27:06  1              Your Honor.

10:27:06  2                        DIRECT EXAMINATION

10:27:08  3    BY MR. JUNEAU:

10:27:08  4    Q.    State your name and your address, please.

10:27:09  5    A.    Kirk Fisher, 18010 Harbour Town Court, Baton Rouge,

10:27:15  6    Louisiana.

10:27:15  7    Q.    What's your education?

10:27:16  8    A.    MBA from Louisiana State University.

10:27:19  9    Q.    In what?

10:27:20 10    A.    MBA in international studies and finance.

10:27:25 11    Q.    What's your work experience?

10:27:29 12    A.    Sure.  I have extensive operations management experience,

10:27:33 13    over 15 years of director of operations, operations manager

10:27:37 14    experience.

10:27:37 15              I also am an adjunct faculty member at Louisiana

10:27:42 16    State University in the E. J. Ourso College of Business,

10:27:45 17    specifically in the MBA program, and teach a section of

10:27:49 18    operations management.

10:27:49 19    Q.    So you actually worked in operational management,

10:27:57 20    oversight management capacity?

10:27:58 21    A.    Yes, sir.

10:27:59 22    Q.    For who?

10:28:00 23    A.    For *The Advocate* in Baton Rouge, a media company, a well

10:28:03 24    over $70-million-a-year company.

10:28:07 25    Q.    What was your role and title there?

10:28:09  1   A.   I was director of operations, business manager.  I did

10:28:13  2   that for over 10 years.

10:28:15  3   Q.   Now, with that background, does that give you some

10:28:21  4   expertise and knowledge in the field of efficiency of programs

10:28:25  5   such as the *Deepwater* program?

10:28:26  6   A.   Well, not only that background, Mr. Juneau, but as well as

10:28:30  7   my academic background in terms of the courses that I teach.

10:28:36  8            I'm currently authoring a textbook on this very issue

10:28:38  9   that will be used in the MBA program at LSU, as well as the

10:28:42 10   University of Sao Paulo in Brazil.

10:28:46 11   Q.   What role have you played for this *Deepwater* program?

10:28:50 12   A.   I'm director of business processes and reporting.

10:28:53 13   Q.   You've been actively involved in that since inception,

10:28:56 14   have you not?

10:28:56 15   A.   Yes, sir, very actively involved since inception.

10:29:00 16   Q.   Have you done an analysis of each damage category and made

10:29:05 17   a judgment as to the efficiency of each category?

10:29:07 18   A.   I have, indeed.  If I may, Mr. Juneau, turn your attention

10:29:13 19   to Exhibit 15(a).  I've got it here.

10:29:16 20            Before I get started on the individual damage

10:29:21 21   category, I would like to -- I would like to just address the

10:29:24 22   overall system performance as a whole.

10:29:27 23            If you look at the current trending on Exhibit 15(a),

10:29:32 24   the overall trending in terms of notice trend continues to

10:29:37 25   trend upward.  We calculate the increase in productivity over

**OFFICIAL TRANSCRIPT**

10:29:40  1    the recent months -- excuse me, three months at a 2.8 percent
10:29:46  2    increase in productivity based on the vendor pool, as well as
10:29:51  3    weekly filing rate has significantly gone up.
10:29:53  4          Last week, our filing rate of new claims was
10:29:58  5    2,584 versus a 12-week rolling average of 1,792, fairly
10:30:04  6    significant.
10:30:04  7    Q.   So at my direction, have you been tracking all those
10:30:09  8    matters in an effort to determine efficiency in the operation?
10:30:14  9    A.   Indeed.  We track it in a variety of different ways.  We
10:30:19 10    track the overall system performance based on the damage
10:30:23 11    category using some rather robust utilization modeling.
10:30:28 12          That utilization modeling takes -- we used the
10:30:32 13    terminology "time in motion studies" earlier, but it's more of
10:30:35 14    a system time stamp that we extract from the system and
10:30:39 15    essentially are able to determine what the system capacity is,
10:30:43 16    meaning how much we should be able to produce under normal
10:30:48 17    circumstances.  We measure that variance of what the system is
10:30:50 18    currently performing -- or how the system is currently
10:30:53 19    performing.
10:30:53 20    Q.   In the process of working in my office, have I not given
10:30:58 21    you instructions to share all of that data on a constant basis
10:31:02 22    with the chief executive officer?
10:31:05 23    A.   Absolutely.
10:31:06 24    Q.   All departments, including Mr. Levine?
10:31:09 25    A.   Yes, sir.

**OFFICIAL TRANSCRIPT**

| | |
|---|---|
| 10:31:10 1 | Q.   That's the information exchange he was talking about |
| 10:31:12 2 | earlier? |
| 10:31:12 3 | A.   Yes, sir. |
| 10:31:13 4 | Q.   You've done that consistently through the program? |
| 10:31:15 5 | A.   Consistently. |
| 10:31:16 6 | Q.   Is that correct? |
| 10:31:17 7 | A.   Yes, sir. |
| 10:31:17 8 | Q.   All right.  Now, so tell me about the -- we stopped -- |
| 10:31:22 9 | about the analysis of the damage category. |
| 10:31:25 10 | A.   Right.  Precisely, in Exhibit 15(c) -- |
| 10:31:31 11 | THE WITNESS:  By the way, this was information that we |
| 10:31:34 12 | addressed, Your Honor, I believe at the June 18th meeting, and |
| 10:31:37 13 | is also available on SharePoint as well. |
| 10:31:41 14 | EXAMINATION BY MR. JUNEAU: |
| 10:31:41 15 | Q.   This has been shared with BP and the parties? |
| 10:31:44 16 | A.   Yes, sir. |
| 10:31:44 17 | Q.   At that meeting which I set up, all the vendors came in, |
| 10:31:50 18 | had the Court attend, I had both sides attend, and allowed BP |
| 10:31:55 19 | to interview and ask unlimited questions vis-à-vis the -- |
| 10:32:01 20 | MR. MOSKOWITZ:  Objection, Your Honor.  Ask questions. |
| 10:32:03 21 | Counsel is testifying here. |
| 10:32:04 22 | MR. JUNEAU:  I'll withdraw the question, Your Honor. |
| 10:32:09 23 | EXAMINATION BY MR. JUNEAU: |
| 10:32:09 24 | Q.   You had a meeting, and all the parties were there, |
| 10:32:11 25 | correct? |

**OFFICIAL TRANSCRIPT**

10:32:11  1    A.    Yes, sir.

10:32:11  2    Q.    You were there?

10:32:12  3    A.    Yes, sir.

10:32:12  4    Q.    So what took place?

10:32:16  5    A.    In specific, if you would like me to address Exhibit 15(c)

10:32:20  6    with regards to the system performance of the individual damage

10:32:23  7    category, this is a tool that we use on a real-time basis.

10:32:26  8          Essentially, we are able to -- and I'll use BEL,

10:32:30  9    business economic loss, and IEL as real quick examples, because

10:32:36 10    we could spend a lot of time going through this.

10:32:38 11          But in the previous month, so in July, if we look at

10:32:41 12    the BEL damage category, the system is capable, based on a

10:32:45 13    reviewer level, of producing a little over, a little north of

10:32:48 14    five reviews per rep per month.  So that number also does not

10:32:54 15    include the level of incompleteness, which we all know is

10:32:57 16    certainly significant within this system.

10:32:59 17          Current system performance is just south of four

10:33:02 18    reviews per rep per month.  So where this tool is used is

10:33:07 19    clearly in communication with the vendors, looking at system

10:33:10 20    improvements, looking at process improvements, understanding

10:33:14 21    policy impact on effective throughput and velocity of claims

10:33:18 22    through this system.

10:33:19 23          By way of comparison, individual economic loss, using

10:33:24 24    the same methodology, this system is capable of seven reviews

10:33:26 25    per rep per month.  Currently, we are performing at a little

OFFICIAL TRANSCRIPT

10:33:33 1    bit over nine.

10:33:34 2                So kind of understanding the differences and the

10:33:38 3    complexity, of course, of those two damage categories; but,

10:33:41 4    certainly highlights the value of this real-time utilization

10:33:48 5    and efficiency modeling.

10:33:49 6    Q.    Is that done with regard to each category of claims?

10:33:54 7    A.    Yes, sir.

10:33:54 8    Q.    Has that information been shared with the parties?

10:33:59 9    A.    Yes, sir.

10:33:59 10   Q.    The results are what you're talking about, correct?

10:34:02 11   A.    Yes, sir.

10:34:02 12   Q.    There were some questions here of Mr. Levine earlier about

10:34:09 13   producing documentation they had that had been requested.  Does

10:34:13 14   that fall in the utilization category?

10:34:17 15   A.    Yes, sir.  I would say much of that does fall into

10:34:20 16   utilization.

10:34:20 17   Q.    All of those utilization questions that were there -- we

10:34:26 18   had an inquiry early on from BP, and we spent a lot of time --

10:34:31 19   well, there was a lot of time expended in preparing a report.

10:34:34 20               MR. MOSKOWITZ:  Objection, Your Honor.  Counsel is

10:34:35 21   testifying.

10:34:35 22               MR. JUNEAU:  I haven't even finished the question,

10:34:35 23   Counsel.

10:34:37 24               MR. MOSKOWITZ:  You're testifying.

10:34:37 25               THE COURT:  Go ahead and finish the question,

**OFFICIAL TRANSCRIPT**

10:34:39  1    Mr. Juneau.

10:34:39  2    EXAMINATION BY MR. JUNEAU:

10:34:40  3    Q.   My question simply is, was there ever a report that was

10:34:45  4    filed that had exhibits that contained the documentation that

10:34:48  5    they were requesting?

10:34:50  6              MR. MOSKOWITZ:  Objection, Your Honor.

10:34:56  7              THE COURT:  Overruled.

10:34:56  8              THE WITNESS:  So specifically the documentation

10:34:58  9    requested regarding velocity, time in motion studies?

10:34:58 10    EXAMINATION BY MR. JUNEAU:

10:35:01 11    Q.   Yes.

10:35:01 12    A.   I would think it's more of a defining of what those

10:35:05 13    velocity and time in motion, so that there is a mutual

10:35:09 14    understanding of what we're measuring versus what they're

10:35:11 15    asking for.

10:35:11 16    Q.   Go ahead.

10:35:12 17    A.   So, for example, Mr. Levine used the example of

10:35:15 18    Garden City Group and the utilization of time in motion, which

10:35:18 19    is essentially how we developed and designed the models to

10:35:24 20    measure the performance of the call centers.

10:35:26 21              So our teams designed and measured, based on the data

10:35:29 22    that was provided by Garden City Group, we sat around the

10:35:33 23    table, we presented that information to Garden City Group,

10:35:36 24    hence, a staffing reduction -- a reduction was shortly --

10:35:40 25    shortly followed.

                              **OFFICIAL TRANSCRIPT**

10:35:41  1          That information has been provided on SharePoint

10:35:46  2     prior to the June 18th meeting with the parties.

10:35:49  3     Q.    Specifically, I'm referring to Exhibit 12, Claims

10:35:56  4     Administrator's July 1 Response to BP Letter Requesting

10:35:58  5     Examination.  Are you familiar with that document?

10:36:00  6     A.    Yes, sir.

10:36:04  7     Q.    All right.  Are there attachments to that document?

10:36:18  8     A.    Do not have attachments in -- I'm sorry.  Forgive me,

10:36:25  9     Mr. Juneau, I do have that.

10:36:26  10          MR. MOSKOWITZ:  Your Honor, if I could address the

10:36:28  11     Court.  Thank you, Your Honor.

10:36:29  12          Your Honor, at the outset of this hearing, you

10:36:31  13     said that this hearing was not intended to get into issues of

10:36:35  14     efficiency.  We've now heard testimony that exclusive focused

10:36:39  15     on how efficient they are, how they purportedly manage vendors.

10:36:43  16          We are far afield.  We are here to show cause.

10:36:46  17     We've shown cause as to why we have a legitimate request for a

10:36:50  18     resubmitted budget.  We are now on a long tangent here on

10:36:53  19     efficiencies.

10:36:55  20          If we want to get into that, then that's a

10:36:57  21     hearing we want.  That's an audit we want.

10:36:58  22          THE COURT:  I think the tangent that Mr. Juneau is on

10:37:01  23     is whether the information has been provided to BP.

10:37:06  24          MR. JUNEAU:  That was the only thing I was pursuing,

10:37:08  25     Your Honor.

**OFFICIAL TRANSCRIPT**

10:37:08  1          THE COURT:  That was my impression.

10:37:10  2          MR. JUNEAU:  It was raised by the other side.

10:37:10  3          THE COURT:  Yes.

10:37:10  4          MR. JUNEAU:  I wouldn't have gotten into it.

10:37:12  5          MR. MOSKOWITZ:  We respectfully disagree based on the

10:37:15  6   testimony.

10:37:17  7          THE WITNESS:  So with regards to the response to the

10:37:20  8   July 1 letter, it provided volumes of information with regards

10:37:26  9   to specific program metrics regarding pipeline reports,

10:37:33 10   utilization modeling, etcetera, etcetera.

10:37:36 11   EXAMINATION BY MR. JUNEAU:

10:37:36 12   Q.    So that was contained with that report?

10:37:40 13   A.    Yes, sir.

10:37:41 14          Just to be very clear, much of that information was

10:37:44 15   uploaded to SharePoint in advance of that July 1 letter, as

10:37:50 16   well as in advance of the June 18th meeting.

10:37:52 17   Q.    One last question.  This is in Ms. Travis' letter.  She

10:37:58 18   talked about KPI's.

10:38:00 19   A.    Right.

10:38:00 20   Q.    Key performance indicators, or KPI's, are they required by

10:38:06 21   the Settlement Agreement?

10:38:07 22   A.    No, sir, not to my knowledge.

10:38:09 23   Q.    Why aren't those at this time in a vendor contract?

10:38:12 24   A.    We do have -- within the task orders, there is a place for

10:38:18 25   key performance indicators.  Key performance indicators

**OFFICIAL TRANSCRIPT**

10:38:21  1    essentially are specific and measurable vendor performance

10:38:26  2    metrics that tie directly to their ongoing billing, so punitive

10:38:32  3    language, if you will.

10:38:33  4              With regards to why they are not currently in the

10:38:38  5    contract, in a ramp-up phase of a program of this magnitude and

10:38:42  6    standing up a program of this magnitude, it's very challenging

10:38:47  7    to develop KPI's for the unknowns within -- until we are truly

10:38:55  8    at steady state.

10:38:56  9    Q.   Is that a tool that is something that has to be looked at

10:39:02 10    once you get stabilization in the system?

10:39:04 11    A.   I think it's certainly a valuable tool; but, again, that

10:39:10 12    steady state component I think is a key driver.

10:39:13 13              MR. JUNEAU:  That's all the questions I have.  Thank

10:39:15 14    you very much, Mr. Fisher.

10:39:29 15              MR. MOSKOWITZ:  Thank you, Your Honor.

10:39:29 16                            CROSS-EXAMINATION

10:39:29 17    BY MR. MOSKOWITZ:

10:39:30 18    Q.   Good morning, Mr. Fisher.

10:39:31 19    A.   Good morning, Mr. Moskowitz.

10:39:33 20    Q.   Mr. Fisher, do you have a copy of BP's Exhibit 1 that was

10:39:37 21    presented here today?

10:39:38 22    A.   I do not.

10:39:38 23    Q.   I present that to you.  My question for you is, of the

10:39:44 24    highlighted items, has all that information been provided to

10:39:47 25    BP?

                            **OFFICIAL TRANSCRIPT**

10:39:50  1   A.   Give me one second.

10:39:51  2   Q.   Sure, take your time.

10:39:56  3   A.   (Witness reviews document.)

10:39:56  4        So if we could take them item by item, that may be

10:39:59  5   more productive.

10:40:00  6        So provide a copy of or present to us time in motion

10:40:05  7   and velocity studies.  Much of that information is part and

10:40:08  8   parcel with the utilization work that was done by our teams.

10:40:11  9   Q.   But not all of it?  You have other information related to

10:40:15 10   time in motion and velocity studies that have not been turned

10:40:18 11   over, correct?  It's a "yes" or "no" answer, Mr. Fisher.

10:40:23 12   A.   Frankly, I'm not certain.

10:40:28 13   Q.   You don't know?

10:40:30 14   A.   I don't know.

10:40:30 15   Q.   How about the next item on the list?

10:40:32 16   A.   To my knowledge, we do not burden the status types with

10:40:41 17   regards to costs.

10:40:42 18   Q.   Perhaps --

10:40:43 19   A.   That's not work that I've done.

10:40:45 20   Q.   Okay.  First, I guess you can explain to me what you mean

10:40:48 21   when you say, "we don't burden."

10:40:50 22   A.   Right.  From an oversight system-wide capacity, we clearly

10:40:54 23   understand the costs to adjudicate the various claim types, so

10:40:58 24   BEL, IEL.  Where we aren't tracking on a granular basis is the

10:41:08 25   individual notice types.

**OFFICIAL TRANSCRIPT**

10:41:09  1            So you have listed in here:  Eligible, incomplete,

10:41:12  2   denial, withdrawal and closed.  So those are not numbers that

10:41:17  3   we're tracking on a real-time basis that I'm aware of at all.

10:41:20  4   Q.  I want to be clear.  You say, "we're not tracking."

10:41:23  5   You're just talking about the Claims Administrator's Office;

10:41:26  6   you agree with Mr. Levine that that data is readily available

10:41:29  7   to vendors, correct?

10:41:29  8   A.  I think it could be attainable.  Certainly, I don't know

10:41:34  9   if it's something that we could call today and get the -- I

10:41:36 10   don't think that's an unreasonable --

10:41:36 11   Q.  You can get that data, correct?  Not unreasonable?

10:41:40 12   A.  I can.

10:41:40 13   Q.  You agree with me, Mr. Fisher -- you talked a lot about

10:41:43 14   the efficiency studies -- you agree with me that there are

10:41:46 15   certainly inefficiencies in the current operation of CSSP,

10:41:46 16   correct?

10:41:50 17   A.  I would agree.

10:41:51 18   Q.  You agree that there are issues related to excessive costs

10:41:54 19   with the CSSP; you would agree with that, correct?

10:41:56 20   A.  I think that ties directly with the inefficiencies,

10:41:59 21   clearly --

10:41:59 22   Q.  -- it's an inefficient system that has excessive costs,

10:42:03 23   correct?

10:42:04 24   A.  Excessive, I would have a hard time; but, certainly, the

10:42:07 25   inefficiency leads to unwarranted costs.

**OFFICIAL TRANSCRIPT**

10:42:11  1    Q.   Very good.

10:42:12  2         If you could go to the next item on page -- it's on

10:42:14  3    page 2, if you'll look down.  Just tell me whether or not it's

10:42:18  4    your testimony today that that information has been provided to

10:42:20  5    BP.

10:42:26  6    A.   First bullet point, highlighted.

10:42:29  7    Q.   Thank you.

10:42:34  8    A.   So we have recently completed the contract signing process

10:42:37  9    with all vendors, as you are aware.  KPI's have not been

10:42:43 10    developed for many of the vendors.

10:42:45 11    Q.   Why is that?  Why this far in the program do you not have

10:42:50 12    KPI's, Mr. Fisher?

10:42:52 13    A.   You know, the tasking orders clearly is kind of the

10:42:55 14    housing component of the KPI's, tasking orders within the

10:43:00 15    contracts.  We do have their FTE allocated amounts on a

10:43:03 16    quarterly basis.

10:43:04 17         THE COURT:  Let's stop for a second.

10:43:04 18         THE WITNESS:  Yes, ma'am.

10:43:07 19         THE COURT:  You're speaking in terms that I don't

10:43:10 20    understand.

10:43:10 21         THE WITNESS:  I'm sorry.

10:43:11 22         THE COURT:  FTE.

10:43:12 23         THE WITNESS:  Full-time equivalent.

10:43:12 24         THE COURT:  Thank you.

10:43:12 25         THE WITNESS:  Yes, ma'am.

**OFFICIAL TRANSCRIPT**

10:43:17  1          So rather than counting bodies, many times we do

10:43:18  2     a conversion factor to the full-time equivalent based on hours.

10:43:28  3     EXAMINATION BY MR. MOSKOWITZ:

10:43:28  4     Q.   So the KPI's you don't have.  You agree with me, certainly

10:43:32  5     at this point in time, in a multi-billion-dollar operation,

10:43:36  6     it's running hundreds of million dollars of costs, you agree

10:43:39  7     with me that KPI's are, frankly, an essential management tool,

10:43:43  8     correct?

10:43:43  9     A.   I think at this point, with us -- with the program

10:43:46 10     achieving normal state, that it could be a beneficial tool.

10:43:50 11     Q.   You agree with me that, if you had your druthers, those

10:43:54 12     KPI's would have been in place quite some time ago, correct?

10:43:57 13     A.   It depends on how -- I don't know that my personal belief

10:44:00 14     is really relevant to that.  I do believe that KPI's are

10:44:05 15     clearly a valuable tool, and I think moving forward that's

10:44:07 16     something that the program is certainly looking towards.

10:44:10 17     Q.   Sure.  But you testified earlier today about your

10:44:12 18     experience, your business background, your background running

10:44:16 19     these types of facilities, so I respectfully ask simply whether

10:44:20 20     or not, given that background and experience you have, you

10:44:23 21     agree with me that in a hundred-million-dollar claim cost

10:44:26 22     operation, a billion-dollar, multi-billion-dollar claim

10:44:31 23     operation, KPI's are an essential management tool that,

10:44:35 24     certainly at this point in the program, should be in place,

10:44:37 25     correct?

**OFFICIAL TRANSCRIPT**

10:44:37  1  A.    I think certainly at this point in the program it's

10:44:40  2  something that would be beneficial to the program.

10:44:42  3  Q.    Thank you.

10:44:42  4        Is there anything else on that exhibit there?  We

10:44:44  5  don't have the KPI's.  Is there anything else there and

10:44:50  6  highlighted in yellow you haven't covered?

10:44:51  7  A.    The steps taken to evaluate continual improvement in

10:44:58  8  administrative processes.  Just for clarity, a lot of work has

10:45:02  9  been done, as I mentioned in -- Mr. Moskowitz, in

10:45:08 10  Exhibit 15(c).  A lot of work has been done.  This -- to -- as

10:45:11 11  we meet and go over different system optimization efforts, as

10:45:16 12  we go through different processes or process optimization

10:45:22 13  exercises, those are measured back towards the efficiencies.

10:45:25 14        So with some of that, I think it's just defining and

10:45:29 15  clarifying the platform that makes sense, and communicating

10:45:33 16  that information back and forth to the parties.

10:45:35 17  Q.    Well, my question was simpler.  You agree with me that you

10:45:38 18  have that information, but not all of that information has been

10:45:40 19  turned over to BP, correct?

10:45:41 20  A.    Sure.

10:45:41 21  Q.    Thank you.

10:45:43 22        With regard to these vendors -- let's take

10:45:45 23  BrownGreer, for instance.  You talked about Garden City and how

10:45:47 24  you were trying to manage costs.  BrownGreer -- which is your

10:45:52 25  largest vendor in terms of cost, correct?

**OFFICIAL TRANSCRIPT**

10:45:54 1    A.   Of course.

10:45:54 2    Q.   They are running approximately $15 million a month for

10:45:57 3    their operations, correct?

10:45:58 4    A.   That is correct.

10:46:01 5    Q.   You agree with me you've made representations to

10:46:02 6    BrownGreer to try to manage those costs, but you've been

10:46:06 7    rebuffed by BrownGreer, correct?  Yes or no.

10:46:09 8    A.   Yes.

10:46:12 9         MR. MOSKOWITZ:  Thank you.

10:46:12 10         I have no further questions, Your Honor.

10:46:12 11                        EXAMINATION

10:46:12 12   BY THE COURT:

10:46:15 13   Q.   Mr. Fisher --

10:46:15 14   A.   Yes, ma'am.

10:46:16 15   Q.   -- tell me what the status of the vendor contracts are

10:46:22 16   currently.  Do you know?

10:46:23 17   A.   I do, but it's subject to confirmation.  I was not on

10:46:26 18   point for executing all of those contracts, so I would defer.

10:46:31 19   I believe all have been executed.

10:46:35 20        I know that this past quarter I was charged with the

10:46:39 21   responsibility for the tasking orders and getting those

10:46:42 22   executed, so I do know that all of those have been turned in.

10:46:45 23   Q.   Relative to what you're referring to as KPI's, could you

10:46:54 24   explain to me why the KPI's have not been included in the

10:46:58 25   contract?

                              **OFFICIAL TRANSCRIPT**

10:46:59 1   A.    There is a placeholder, clearly, for KPI's, again, under

10:47:03 2   this tasking order which will be renewed on a quarterly basis.

10:47:07 3        Some of the internal discussion, Your Honor, was

10:47:10 4   centered around the rapid start-up of the program, the

10:47:13 5   magnitude of the program, the magnitude of the policy changes

10:47:16 6   that clearly impede production.  So it was the organizational

10:47:22 7   belief, somewhat, that holding a third party accountable or

10:47:26 8   vendors accountable for such uncertainties --

10:47:30 9   Q.    But you do think that the program has reached the point

10:47:34 10  where KPI's can be implemented and be useful?

10:47:38 11  A.    I think it would be a good management tool moving forward,

10:47:42 12  yes, ma'am.

10:47:42 13  Q.    Now, relative to the letter from Maria Travis of

10:47:52 14  August 5th -- I take it, you've read that?

10:47:53 15  A.    Yes, ma'am.

10:47:54 16  Q.    -- from your point of view, is she asking for information

10:48:00 17  that you believe you can't generate?

10:48:05 18  A.    To be clear, if I may, I believe that some of the

10:48:12 19  information is -- it's our ability to communicate with the

10:48:16 20  parties in a format to provide information that may not be

10:48:21 21  precisely what they're defining, but we may have something that

10:48:24 22  would equally suffice.

10:48:25 23  Q.    Do you know Ms. Travis?  Have you met her?

10:48:32 24  A.    I have met Ms. Travis.

10:48:34 25  Q.    Have you had any conversations with her prior to this

10:48:37 1    August 5th letter as to what she's looking for, the format she

10:48:42 2    would like?

10:48:42 3    A.   No, ma'am.  I haven't.  That's not under my control or

10:48:47 4    responsibility within the program, so that's not something I

10:48:50 5    would do.

10:48:50 6    Q.   If you were asked by Mr. Juneau to undertake to talk to

10:48:57 7    her and provide her with the information she is seeking, is

10:49:02 8    that something you believe you could do?

10:49:03 9    A.   Absolutely.

10:49:07 10             THE COURT:  Mr. Juneau.

10:49:07 11             MR. JUNEAU:  I have nothing else, Your Honor.

10:49:09 12             THE COURT:  Thank you.

10:49:10 13             THE WITNESS:  Thank you, Your Honor.

10:49:13 14             MR. MOSKOWITZ:  Other than to renew my objection on

10:49:16 15   proceeding, Your Honor, I have nothing else.

10:49:18 16             Your Honor, could I briefly make closing

10:49:21 17   comments?

10:49:21 18             THE COURT:  Sure.  Absolutely.

10:49:25 19             MR. MOSKOWITZ:  Your Honor, I think, fundamentally --

10:49:25 20   we obviously heard the witnesses today.  I think the

10:49:26 21   fundamental point remains the same, where we showed up this

10:49:27 22   morning to where we are today.  The witnesses have clearly

10:49:30 23   admitted that the information BP has asked for is available and

10:49:33 24   has not been provided.

10:49:35 25             Our request is for a budget to support a 103 --

OFFICIAL TRANSCRIPT

10:49:39  1   over a $130 million cost request.  It is certainly not

10:49:45  2   unreasonable to make that request.  It's information they

10:49:48  3   apparently have, that we asked them for back in May, that we

10:49:52  4   haven't received.

10:49:53  5         When we get it and we get a properly submitted

10:49:56  6   budget, we'll act on it; but, before then, it would be deeply

10:49:59  7   prejudicial to BP to have to go forward with any funding given

10:50:04  8   the state of this record.

10:50:06  9         Thank you, Your Honor.

10:50:06 10   THE COURT:  Mr. Juneau, anything?

10:50:07 11   MR. JUNEAU:  Your Honor, being a former jury trial

10:50:12 12   lawyer, with those statements, I'm not ready here to close.

10:50:15 13         I think we've done what we're supposed to be

10:50:18 14   doing.  Can we provide additional information, are we open to

10:50:20 15   providing additional information than we've already submitted,

10:50:24 16   the answer to that is yes.

10:50:24 17         But the issue on the table was, where they are

10:50:26 18   asking on August 5th to cut this thing, I just, for lack of a

10:50:31 19   better word, it just seems totally arbitrary and totally

10:50:35 20   inconsistent with the issue.

10:50:37 21         If BP wants to work with us, and plaintiffs'

10:50:39 22   counsel, in exchanging data, it's a matter of terminology, we

10:50:39 23   can do that.

10:50:42 24         Mr. Fisher candidly admitted, I would tell you,

10:50:45 25   take the maturity of a case, he said that's a tool that can be

**OFFICIAL TRANSCRIPT**

10:50:49  1   considered now.  I agree with that.  I think we kind of -- but,

10:50:53  2   you know, you don't come with a guillotine because of something

10:50:56  3   that you thought should have been done since the inception,

10:50:58  4   which I don't think is true.  He clearly said that that wasn't

10:51:01  5   the case.

10:51:02  6          So, yes, we're receptive to doing anything.  But

10:51:04  7   that's the issue on the table now is for BP to honor its

10:51:08  8   obligation to pay these people that have got to be paid.  I

10:51:12  9   mean, they have got the invoices.  They know what the work is.

10:51:15 10          Thank you.

10:51:15 11      MR. ROY:  Your Honor --

10:51:15 12      THE COURT:  Mr. Roy.

10:51:23 13      MR. ROY:  -- may Class Counsel make some comments?

10:51:25 14      THE COURT:  If you must.

10:51:28 15      MR. ROY:  We refrained from trying to ask questions --

10:51:28 16      THE COURT:  I noticed that.

10:51:30 17      MR. ROY:  -- but we do have a few comments we want to

10:51:33 18   make.

10:51:34 19          First, Class Counsel joins and supports the

10:51:38 20   Administrator's position and arguments today and adopts and

10:51:42 21   jointly offers the exhibits that the Administrator has offered.

10:51:46 22          The PSC believes the budget request and the

10:51:51 23   supplemental information provided by the Administrator are

10:51:56 24   complete under the circumstances.

10:51:58 25          As explained, there may be other things that BP

**OFFICIAL TRANSCRIPT**

10:52:02  1    wants, there may be other things BP ultimately is entitled to

10:52:06  2    as this process matures; but, one thing we absolutely believe

10:52:11  3    is that under section 5.12.1.4 of the Settlement Agreement,

10:52:18  4    which is Record Document 6276-1, that BP does not have the

10:52:23  5    right to grant itself a temporary suspension of the

10:52:28  6    Claims Administrator process, such as it requested previously

10:52:33  7    and was denied by the Court.

10:52:35  8          Class Counsel notes that BP has postured itself

10:52:43  9    as basically having the unilateral power to dictate procedures,

10:52:48 10    budgets and efficiencies to the Court-appointed settlement

10:52:51 11    program administered by Mr. Juneau, and to punish the program

10:52:56 12    and the claimants of that program for deviations from what BP

10:53:02 13    demands by withholding funding whenever it deems itself

10:53:07 14    dissatisfied with costs, progress or results.

10:53:10 15          We would submit the Court-supervised program is

10:53:14 16    not a business unit of BP.  It is not a subsidiary.  It is not

10:53:21 17    an assembly line, as Mr. Moskowitz described it.

10:53:25 18          To the contrary, it is a start-up business that

10:53:29 19    began about 15 months ago.  It is a start-up business of

10:53:35 20    unparalleled magnitude and complexity.  It is a start-up

10:53:39 21    business where Mr. Juneau's operation was told to manufacture

10:53:45 22    so many thousands of units a month, but was not given detailed

10:53:50 23    plans, was given plans that change monthly, was given policies

10:53:57 24    that either did not exist, were evolving or were yet to be

10:54:07 25    decided upon him.

**OFFICIAL TRANSCRIPT**

10:54:08   1    So, in short, he was asked to create an ad hoc

10:54:11   2 organization and produce results.  We submit he has done the

10:54:16   3 best job any person could have done to this point in time.

10:54:19   4    Is there room for improvement?  There may be.

10:54:23   5 This gets to my ultimate point.  The sole and ultimate

10:54:30   6 supervisor of this program is this Honorable Court; not BP, not

10:54:34   7 Class Counsel, it's the Court.  The Court appointed Mr. Juneau.

10:54:40   8 The Court appointed the vendors, which, by the way, are vendors

10:54:44   9 that BP insisted upon.

10:54:46  10    So what do we have?  We have tens of thousands of

10:54:51  11 class claimants who lost their litigation rights in favor of

10:54:56  12 participation in this settlement program as class members, and

10:55:00  13 they rely upon this Court to keep it going to enforce the

10:55:04  14 provisions of the settlement.

10:55:06  15    In short, BP's refusal to fund the Administrator,

10:55:11  16 which is exactly what is happening, an outright refusal to fund

10:55:18  17 the Administrator's process and his vendors, all of whom were

10:55:24  18 Court-appointed, is just another attempt by BP to avoid paying

10:55:28  19 its obligation under the settlement.

10:55:30  20    If BP is permitted to unilaterally deny funding

10:55:33  21 to the administrator and its vendors, then BP will be

10:55:38  22 effectively allowed to grant its own injunction suspending this

10:55:43  23 program, because that's what will happen.  People won't work

10:55:46  24 for free.

10:55:47  25    In conclusion, clearly BP believes it should be

**OFFICIAL TRANSCRIPT**

10:55:51  1    given certain additional information.  I don't fault BP for

10:55:55  2    wanting reasonable information, to the extent it's reasonable.

10:56:00  3    I don't think Mr. Juneau does either.

10:56:02  4         What the Class Counsel faults BP for is dropping

10:56:07  5    the sword of Damocles down on this operation, when many, many,

10:56:14  6    many hundreds of thousands of dollars of bills are owed as we

10:56:18  7    speak, there's not money in the account, and BP unilaterally

10:56:24  8    says, we're not going to fund it.  That's wrong.  That's not

10:56:27  9    the procedure contemplated by this Settlement Agreement.

10:56:30 10         What is contemplated is, like anything else, if

10:56:34 11    there is a disagreement ultimately over what is adequate

10:56:39 12    information in BP's mind, rather than simply unilaterally

10:56:45 13    refusing to fund, it's Class Counsel's position, in conclusion,

10:56:49 14    that BP should have come to the Court and asked for a

10:56:52 15    conference with the Court and should have actually taken this

10:56:56 16    up, rather than the self-help that it has attempted to provide

10:57:01 17    for its own relief.

10:57:03 18         With respect, the Court supervises and controls

10:57:07 19    this settlement, Your Honor, not BP.

10:57:09 20         Thank you for your time.

10:57:09 21         THE COURT:  Okay.  Thank you, Mr. Roy.

10:57:11 22         All right.  Why don't we come back in about

10:57:15 23    10 minutes.  Let's make it 10 minutes after 11:00.  Thank you

10:57:20 24    very much.

10:57:23 25         (WHEREUPON, at 10:57 a.m., the Court took a recess.)

**OFFICIAL TRANSCRIPT**

| | |
|---|---|
| 11:12:49 | 1 |

THE DEPUTY CLERK:  All rise.

THE COURT:  All right, everybody, have a seat.

I was asked whether or not I admitted BP's Exhibit Number 2.  If I did not, it is now admitted.

(WHEREUPON, BP Exhibit 2 was admitted.)

MR. MOSKOWITZ:  Thank you, Your Honor.

THE COURT:  You're welcome.

I regret that we are all here today.  All things considered, we all wish it was going better, but it's not.

The following chronology is from the Court's perspective.  On June the 18th, I attended a meeting at the request of the Claims Administrator.  The meeting involved representatives of BP, Class Counsel, and the major vendors for the Court-Supervised Settlement Program, the CSSP.

The meeting lasted all day, and BP was given the opportunity to question the Claims Administrator and the vendors regarding the administration of the CSSP and the expenses incurred in running the program for which BP provides the funding.

On June 21st, BP, through its managing attorney, Mark Holstein, wrote to Judge Carl Barbier and requested an examination of the CSSP for four reasons, one of which is applicable here, that is, significantly higher than expected administrative costs and expenses.

BP complained that the CSSP is operating with

11:16:01 1  high costs and low productivity, and that the Claims

11:16:04 2  Administrator's Office does not appear to employ an expense

11:16:10 3  management plan.  Those are all legitimate concerns.

11:16:13 4          On July 1st, 2013, Pat Juneau, the Claims

11:16:20 5  Administrator, replied to Mr. Holstein's letter.  As an initial

11:16:25 6  matter, the Claims Administrator pointed out that BP had not

11:16:28 7  followed the provisions of the Settlement Agreement,

11:16:31 8  specifically Section 4.3.4, whereby a three-person Claims

11:16:37 9  Administration Panel is convened to address and attempt to

11:16:41 10 resolve unanimously any issues or disagreements that arise

11:16:47 11 regarding the Claim Administrator's oversight responsibilities,

11:16:52 12 settlement administration, or any other issues involving the

11:16:56 13 settlement program.  Only then will a dispute be brought to the

11:17:05 14 Court for resolution.

11:17:05 15         Mr. Juneau points out that BP had not requested

11:17:09 16 that the three-person Claims Administration Panel be convened

11:17:14 17 regarding the issue raised.

11:17:15 18         Mr. Juneau, in his July 1st letter, goes on to

11:17:19 19 point out that the CSSP has operated in an open and transparent

11:17:25 20 manner, both to BP and Class Counsel, who have always had the

11:17:31 21 opportunity to raise concerns about the Claims Administration's

11:17:35 22 operations as they arise.

11:17:38 23         Mr. Juneau further points out that since

11:17:45 24 inception of the program, the Claims Administration Office has

11:17:48 25 submitted its budget to BP and to Class Counsel on a quarterly

**OFFICIAL TRANSCRIPT**

11:17:53 1   basis.  While BP has at times made inquiries about specific

11:17:58 2   vendor costs, it has never challenged nor disapproved of the

11:18:04 3   Claims Administrator's proposed budget.

11:18:06 4           The Claims Administrator then, in the July 1st

11:18:10 5   response, responds to each of the issues raised by

11:18:14 6   Mr. Holstein.

11:18:14 7           On July 17th, Robert Levine, Chief Financial

11:18:18 8   Officer of the Claims Center, sent to BP the third quarter

11:18:23 9   budget required for the Claims Administrator's operation for

11:18:28 10  the third quarter 2013, which covers July 13th through

11:18:34 11  September 13th, 2013.

11:18:40 12          Mr. Levine advised that the $128,654,584 was

11:18:51 13  required to fund the third quarter budget.  He advised that the

11:18:56 14  administrative fund would be out of money within 10 days, which

11:19:00 15  was around the end of July.

11:19:03 16          It was not until August 5, 2013, that BP

11:19:07 17  responded to Mr. Levine, through its director of claims,

11:19:12 18  Maria Travis.  In her response, Ms. Travis states that the

11:19:16 19  Claims Administrator's budget is subject to BP's reasonable

11:19:19 20  approval.  She states that, "We continue to have significant

11:19:23 21  concerns about the CSSP's core productivity and excessive

11:19:29 22  costs, and we request that the CSSP resubmit its third quarter

11:19:35 23  2013 budget, with appropriate documentation, analysis, metrics

11:19:42 24  and explanatory notes that support each item in the budget

11:19:47 25  request."

OFFICIAL TRANSCRIPT

11:19:48  1          Ms. Travis goes on to state that, "BP is not
11:19:51  2   approving the budget request."  Of course, Ms. Travis'
11:19:58  3   communication was sent after the date that the CSSP projected
11:20:01  4   that it would be out of money.
11:20:02  5          As pointed out by Mr. Juneau in his August 6,
11:20:08  6   2013, response to Ms. Travis, from the start of the CSSP
11:20:14  7   through the last quarter, BP has routinely granted these
11:20:19  8   requests without delay.  It is with this backdrop that
11:20:24  9   yesterday I ordered BP to show cause why the Claims
11:20:28 10   Administration proposed third quarter budget should not be
11:20:32 11   funded.
11:20:33 12          Let me make a couple of comments here.  I do
11:20:39 13   believe that BP raises some serious issues with regard to
11:20:45 14   efficiencies in the program, and it is entitled to much of the
11:20:51 15   information it requests.
11:20:55 16          I also find that sending a proposed budget for
11:21:00 17   the third quarter after the commencement of the third quarter
11:21:05 18   is not good business practice, and we're going to correct that
11:21:09 19   going forward.
11:21:10 20          However, while Section 5.12.1.4 of the Settlement
11:21:24 21   Agreement provides that the administrative budget is subject to
11:21:28 22   reasonable approval of the BP parties, in this instance, given
11:21:33 23   the course of conduct between the Claims Administrator and BP
11:21:38 24   in operating on a quarterly budgetary basis as a matter of
11:21:43 25   routine, I find that the refusal to fund the third quarter 2013

                         **OFFICIAL TRANSCRIPT**

11:21:48  1    budget is unreasonable.

11:21:50  2            While there have been discussions regarding

11:21:53  3    deficiencies that BP perceives in the administration of the

11:21:58  4    CSSP, there have not been any specific budgetary discussions as

11:22:05  5    to how BP wants the budget prepared and submitted going

11:22:08  6    forward.

11:22:09  7            So we've got a couple of choices here, and I'm

11:22:13  8    going to give them to you.

11:22:14  9            The first thing that could be done is that we go

11:22:23 10    ahead and fund the third quarter budgetary request plus one

11:22:30 11    month, which would be through October 13th, so that the parties

11:22:38 12    have time to sit down and formulate what it is BP wants as far

11:22:48 13    as the format of the budget and the backup information that it

11:22:53 14    wants and requires in order to give its reasonable approval.  I

11:23:01 15    would like that process to start right away.

11:23:06 16            The other course would be as follows:  The Claim

11:23:19 17    Administrator could submit its proposed fourth quarter 2013

11:23:26 18    budget to BP and Class Counsel on or before next Friday,

11:23:32 19    August 16th.  BP and Class Counsel can then review the proposed

11:23:40 20    budget and provide detailed comments and suggested revisions to

11:23:44 21    the proposed budget by Friday, August 23rd.

11:23:50 22            The Claims Administrator would then, in his

11:23:53 23    discretion, make any revisions to the proposed budget based on

11:23:58 24    the comments received no later than Wednesday, August 28th,

11:24:05 25    2013.

**OFFICIAL TRANSCRIPT**

11:24:06  1          Thereafter, I would require that within 24 hours

11:24:11  2   any of the parties, that is, the Claims Administrator, BP, or

11:24:16  3   Class Counsel, may request that a three-person Claims

11:24:22  4   Administration Panel be convened pursuant to Section 4.3.4 of

11:24:28  5   the Settlement Agreement.

11:24:30  6          The panel meeting would be convened and completed

11:24:35  7   no later than Wednesday, September 4th.  Only upon completion

11:24:41  8   of the Claims Administration Panel Meeting shall any remaining

11:24:45  9   issues or disagreements be brought to the Court for resolution.

11:24:52 10          The party or parties complaining about any

11:24:55 11   unresolved issues shall submit a brief no longer than ten

11:24:59 12   pages, along with specific proposed budget revisions, by

11:25:04 13   Friday, September 6th, with a request for expedited hearing.

11:25:11 14   Any reply would then be filed by Tuesday, September 10th, and

11:25:16 15   shall include the countervailing budget items.

11:25:21 16          No further briefing would be allowed; and, if

11:25:24 17   necessary, I would conduct a further hearing on Thursday,

11:25:29 18   September 12th, at 9:30 a.m.

11:25:33 19          The reason for all that, of course, is that the

11:25:37 20   third quarter fiscal period runs on September 13th; hence, the

11:25:45 21   expedited schedule.

11:25:47 22          In any event, I would like the parties to confer.

11:25:58 23   Because I find that BP's approval has been unreasonably

11:26:03 24   withheld under the circumstances, BP is ordered to fund the

11:26:06 25   third quarter 2013 budget in its entirety, such funding to

**OFFICIAL TRANSCRIPT**

11:26:11 1    occur no later than Monday, August 12th.

11:26:16 2             Further, going forward, the Claims Administrator

11:26:21 3    shall change its operation and shall submit its proposed

11:26:24 4    quarterly budget to the parties 60 days prior to the

11:26:29 5    commencement of the quarter.  We can avoid this kind of

11:26:34 6    expedited situation in the future.

11:26:38 7             Because this matter is of grave importance, and I

11:26:44 8    think we all agree to that, I cannot see shutting down the

11:26:49 9    funding for the operation.  People are dependent.  Jobs are

11:26:59 10   dependent.  We just can't have that happen.

11:27:02 11            In addition, any appeal of this Order, because of

11:27:10 12   the grave nature of the matter, must be made to Judge Barbier

11:27:15 13   by no later than 2:00 p.m. today.  Such an appeal may be made

11:27:21 14   by notifying the Judge's chambers, and Judge Barbier will

11:27:25 15   schedule a hearing, perhaps as soon as today.

11:27:31 16            So, in conclusion, let me make a few further

11:27:36 17   comments.  It seems to me that the preferred course of conduct

11:27:41 18   would be as follows:  That BP, and especially Ms. Travis, meet

11:27:49 19   with Mr. Levine and Mr. Fisher and any other designee of the

11:27:54 20   Claims Administrator to agree to the format of a budget going

11:28:00 21   forward and the documentation and analyses to support the

11:28:04 22   budget request.

11:28:06 23            The Claims Administrator would put its proposed

11:28:12 24   budget together in the format with supporting documentation as

11:28:16 25   agreed to by the parties, and BP can evaluate and give its

**OFFICIAL TRANSCRIPT**

11:28:23  1    reasonable approval or withhold its approval depending on what

11:28:29  2    is submitted.

11:28:29  3           I'm not going to hold up funding of the third

11:28:34  4    quarter, and I'm going to leave it to the parties to let me

11:28:38  5    know whether you agree to funding the fourth quarter plus one

11:28:44  6    month -- I'm sorry, the third quarter plus one month, which

11:28:47  7    will give you time to work out the remaining two months of the

11:28:51  8    fourth quarter in a format agreed to; or, whether you want to

11:28:58  9    go forward with the schedule that I've given you regarding the

11:29:04 10    fourth quarter budgeting, meeting and briefing process.

11:29:11 11           I would prefer the former, but that's up to you

11:29:15 12    all.

11:29:21 13           Let's set a deadline for letting me know which of

11:29:24 14    those two options the parties want to take.  When,

11:29:30 15    Mr. Moskowitz, do you think you can consider whether or not you

11:29:38 16    want to take option number one or option number two?

11:29:42 17       MR. MOSKOWITZ:  Your Honor, if we could recess and I

11:29:45 18    could confer with my client.  I think if you could give us 10,

11:29:48 19    15 minutes.

11:29:48 20           Just for the record, Your Honor, and I've said it

11:29:50 21    before, but BP renews its objection to the evidentiary hearing

11:29:53 22    that was held today without notice and opportunity to

11:29:57 23    cross-examine effectively and present witnesses.  Thank you.

11:29:59 24       THE COURT:  Mr. Moskowitz, I understand that, and I'm

11:30:02 25    going to make it a continuing objection.

                         **OFFICIAL TRANSCRIPT**

11:30:04  1        MR. MOSKOWITZ:  Thank you, Your Honor.

11:30:05  2        THE COURT:  Your Honor.

11:30:05  3        MR. JUNEAU:  The Claims Administrator, Your Honor, we

11:30:08  4   would select your option one.  I can declare that now, if that

11:30:08  5   makes any difference.

11:30:08  6        THE COURT:  Okay.

11:30:12  7        MR. MOSKOWITZ:  Your Honor, just for purposes of

11:30:13  8   clarification, when I consult with my client --

11:30:13  9        THE COURT:  Sure.

11:30:15 10        MR. MOSKOWITZ:  -- under option two, is that a fund

11:30:17 11   just of the third quarter budget request?  It's not the

11:30:21 12   additional month; that's the difference between one and two?

11:30:23 13        THE COURT:  That's correct.  Option number one would be

11:30:26 14   funding the third quarter plus October, the first month

11:30:32 15   post-third quarter, which would give you time to work out the

11:30:37 16   budget format and the supporting documentation that BP is

11:30:42 17   looking for.

11:30:44 18             Option number two would be to fund the third

11:30:48 19   quarter, but go forward with your meeting as a three-party

11:30:58 20   panel.  If there are issues still remaining, take it up with me

11:31:03 21   on -- what did I tell you -- September 12th.

11:31:06 22        MR. MOSKOWITZ:  Thank you, Your Honor, for that

11:31:08 23   clarification.

11:31:09 24        MR. JUNEAU:  Thank you.

11:31:10 25        THE COURT:  Anything else?  Mr. Roy?

**OFFICIAL TRANSCRIPT**

11:31:12  1          MR. ROY:  Just a clarification.  If I understood you
11:31:14  2     correctly, irrespective of the options, you said that the
11:31:19  3     Administrator will submit the quarterly budget 60 days before
11:31:26  4     the deadline?
11:31:27  5          THE COURT:  That can't happen for the fourth quarter
11:31:29  6     because we're less than 60 days away from the commencement of
11:31:33  7     the fourth quarter.
11:31:34  8                But for quarter number one, I want that out at
11:31:41  9     least 60 days before the start of that quarter, so all
11:31:45 10     interested parties can review the budget, understand what
11:31:48 11     you're requesting, look at the backup documentation, and
11:31:52 12     question anything that they want to question.  That's not been
11:31:56 13     running appropriately.
11:32:00 14                Any other questions?
11:32:04 15          MR. ROY:  No, Your Honor.
11:32:04 16          THE COURT:  Okay.  Mr. Moskowitz, do you want to get
11:32:09 17     back together at noon?
11:32:13 18          MR. MOSKOWITZ:  That's fine.  We probably don't need
11:32:17 19     that long.  Your Honor, do you want to do 10, 15 minutes?
11:32:22 20                Noon?  Okay.  Let's do noon, Your Honor.  Thank
11:32:23 21     you.
11:32:25 22          THE COURT:  We'll see you back at noon.
11:32:27 23          THE DEPUTY CLERK:  All rise.
11:32:43 24          (WHEREUPON, at 11:32 a.m., the Court took a recess.)
12:13:03 25          MR. NEATH:  Your Honor, I just want to apologize for

**OFFICIAL TRANSCRIPT**

12:13:05 1  not meeting my time commitment.

12:13:05 2        THE COURT:  No problem.  No problem.

12:13:07 3        MR. NEATH:  Thank you for your patience.

12:13:08 4        THE COURT:  Welcome back.

12:13:09 5        MR. NEATH:  Thank you, Your Honor.

12:13:11 6        THE COURT:  Keith, I wanted to make sure that I made it

12:13:13 7  clear that either with option one or option two you preserve

12:13:17 8  your right to appeal.  That occurred to me after the fact.  You

12:13:21 9  understood that?

12:13:21 10        MR. MOSKOWITZ:  Yes.  Thank you, Your Honor.

12:13:21 11        THE COURT:  Good, good.

12:13:24 12        MR. MOSKOWITZ:  Your Honor, just to echo Mr. Neath, I

12:13:26 13  apologize also for the delay.  I appreciate the Court is very

12:13:29 14  busy.  I don't mean to burden your time.

12:13:32 15        Certainly, Your Honor, as I think the Court has

12:13:34 16  reflected on several times over the course of this morning,

12:13:37 17  this is a very significant issue.  We have real issues and

12:13:41 18  questions that we all want to get to the bottom of.

12:13:44 19        Therefore, not only did we need the time we had,

12:13:49 20  but, frankly, Your Honor, at this point we're not in a position

12:13:51 21  to consent to either option.  We respectfully request the Court

12:13:56 22  give us until tomorrow to properly evaluate these very

12:13:59 23  significant issues.

12:14:01 24        As I mentioned before, we certainly will avail

12:14:03 25  ourselves of the right to appeal to Judge Barbier.

**OFFICIAL TRANSCRIPT**

12:14:09  1          THE COURT:  Okay.  Well, let me think about that.

12:14:19  2              The problem that I have with that, Mr. Moskowitz,

12:14:21  3    is twofold.  First is the fact that the administrator is out of

12:14:28  4    money and needs to keep operating.

12:14:34  5              The second problem is, if you all go with option

12:14:41  6    number two, our schedule is, as you saw, very tight.  I'm going

12:14:48  7    to be preparing the parties for trial of Phase Two while

12:14:54  8    briefing comes in to me on the budgetary issues, with the trial

12:14:59  9    of Phase Two being September 30th, and my conducting a hearing

12:15:05 10    on this on September 12th.  So I don't see how, under the

12:15:14 11    circumstances, I can extend the time period.

12:15:20 12              Why don't I do this.  I'll go ahead and enter the

12:15:25 13    order today.  By two o'clock, you can let Judge Barbier know

12:15:31 14    whether you are going to appeal, and I assume you are.

12:15:37 15              By tomorrow morning, 9:00 a.m., you can let me

12:15:43 16    and the parties know whether you opt for option one or opt for

12:15:53 17    option two, but my order will be in effect.

12:15:58 18         MR. MOSKOWITZ:  Understood, Your Honor.

12:15:59 19              Just for purposes of clarification, will your

12:16:02 20    order select an option?

12:16:04 21         THE COURT:  Well, I prefer option one --

12:16:06 22         MR. ROY:  Your Honor --

12:16:11 23         THE COURT:  -- but I don't -- go ahead.  Yes, Jim.

12:16:14 24         MR. ROY:  -- I was going to raise the exact same point

12:16:17 25    Keith did, even if he hadn't stood up.  The point is a very

**OFFICIAL TRANSCRIPT**

12:16:21 1   simple one.  In order for a party to appeal, they have got to

12:16:24 2   appeal from something other than a choice, I think.

12:16:27 3        So implicit in what Keith is saying, I guess, is,

12:16:32 4   is that if BP does not choose --

12:16:32 5        THE COURT:  Yes.

12:16:33 6        MR. ROY:  -- then what's the order of the Court, so

12:16:36 7   that whoever is going to appeal can appeal.

12:16:38 8        THE COURT:  Well, I think the easier route would be

12:16:40 9   option number one.  I'm going to draft my order, then,

12:16:44 10  according to option number one.  There won't be an option.

12:16:49 11  That will be the ruling.

12:16:52 12       MR. MOSKOWITZ:  Thank you.

12:16:56 13       THE COURT:  I do assume that BP will appeal, which is

12:16:59 14  fine, as you well know.  That's the way the system works.  I'm

12:17:05 15  never offended by an appeal.

12:17:08 16       If you will notify Judge Barbier's office if you

12:17:12 17  decide to appeal, he'll let you all know whether he expects to

12:17:19 18  see you all today or tomorrow, or whether he is just going to

12:17:24 19  take it up on the record that has been made today.

12:17:30 20       MR. ROY:  What is the deadline, Your Honor, for lodging

12:17:33 21  the appeal?

12:17:34 22       THE COURT:  2:00 p.m. today.

12:17:37 23       MR. ROY:  Thank you.

12:17:37 24       MR. FENDLER:  Your Honor --

12:17:37 25       THE COURT:  Gene.

**OFFICIAL TRANSCRIPT**

12:17:41 1    MR. FENDLER:  Your Honor, if I can just make sure --

12:17:41 2    THE COURT:  For the record, Gene Fendler.

12:17:43 3    MR. FENDLER:  Of Liskow & Lewis, also for BP.

12:17:47 4         So the appeal can be done orally?  I want to be

12:17:49 5    clear of that.  We can just call Judge Barbier?

12:17:51 6    THE COURT:  Call Judge Barbier's office, let them know

12:17:53 7    that you intend to appeal, and then he will let us know how he

12:17:58 8    wants to handle it.

12:18:00 9    MR. FENDLER:  We have until 9 o'clock tomorrow, if we

12:18:04 10   want to make a choice on an option, to notify you of that?

12:18:08 11   THE COURT:  No.  I think you all talked me out of that.

12:18:10 12        I'm going to go ahead and issue the order today

12:18:13 13   with option number one, which is to fully fund the third

12:18:15 14   quarter and to fund through October 13th, which would be first

12:18:20 15   month fourth quarter.

12:18:27 16   MR. FENDLER:  The only issue I raise to the Court, just

12:18:29 17   for the Court's consideration, is that, number one, while it

12:18:33 18   has the funding option, it appears to me to require people

12:18:39 19   getting along, if you will, and it has no deadline for working

12:18:42 20   out any problems.

12:18:45 21   THE COURT:  As you know, Gene, I'll be glad to work

12:18:47 22   with the parties, if you all would like me to facilitate it.

12:18:51 23        I still think that you all, meaning BP, should

12:18:56 24   bring Ms. Travis and other designees of BP down to meet with

12:19:05 25   Mr. Levine and Mr. Fisher and work out the format, work out the

83

12:19:10  1    documentation, so that, going forward, BP gets what it's

12:19:16  2    looking for in budget requests.

12:19:18  3             You know, I do think there has been a problem

12:19:20  4    there, and I'm recognizing that.

12:19:22  5             So I will be happy to work out a schedule with

12:19:25  6    you.  As a matter of fact, why don't you find out what

12:19:30  7    Ms. Travis' schedule looks like, and any other designees that

12:19:33  8    BP would like to come in and meet with the Administrator's

12:19:37  9    designees, see what they can work out as far as a meeting.

12:19:41 10    That will get us started.

12:19:43 11         MR. JUNEAU:  Your Honor, from my office's standpoint,

12:19:48 12    do you want to start tomorrow?  Do you want to start Monday?

12:19:51 13    There is no obstacle here.

12:19:51 14         THE COURT:  It just seems to me --

12:19:53 15         MR. JUNEAU:  We're here.  We're ready to meet when they

12:19:53 16    are.

12:19:55 17         THE COURT:  It just seems to me that Ms. Travis and

12:19:57 18    anyone else that BP wants to designate to work through the

12:20:00 19    issues of format, documentation and analyses -- she seems like

12:20:05 20    the logical person to designate, along with whoever she works

12:20:09 21    with -- let's get some dates from her in the next week and get

12:20:13 22    her in, and let's get going on that.  Okay?

12:20:18 23         MR. FENDLER:  Thank you, Your Honor.

12:20:19 24         THE COURT:  I think that should happen regardless,

12:20:21 25    because we all want to get it straight, right?

12:20:26 1          Anything else?

12:20:28 2          MR. JUNEAU:  Judge, just for clarification, so at

12:20:30 3     two o'clock, we'll know what -- I'm just trying to figure out

12:20:32 4     where we are.

12:20:33 5          THE COURT:  Right.  What I would like you all to do is,

12:20:36 6     if you all notify Judge Barbier that you would like an appeal,

12:20:41 7     would you also call Mr. Juneau's office and my office as

12:20:46 8     well --

12:20:48 9          MR. MOSKOWITZ:  Yes, Your Honor.

12:20:49 10         THE COURT:  -- and Plaintiffs Steering Committee.

12:20:56 11         MR. ROY:  Your Honor, is it worth it to consider two

12:21:00 12    separate orders -- I just throw this out for discussion here --

12:21:04 13    one addressing the immediate, as I perceive it, mandate for BP

12:21:11 14    to fund the quarter that it hasn't funded, and then a separate

12:21:15 15    order entailing the remainder of your option one?

12:21:21 16              The reason why I say that is, option one includes

12:21:27 17    the additional month.  There are some other things in there

12:21:31 18    that are separate and apart from the immediate obligation to

12:21:35 19    fund.  I just throw it out to you that, from an appeal

12:21:38 20    standpoint, it may simplify things.

12:21:44 21         THE COURT:  Okay.  Thank you.

12:21:45 22         MR. MOSKOWITZ:  I guess, Your Honor, on that point, I'm

12:21:47 23    not entirely sure how it simplifies things, I mean, in terms of

12:21:53 24    the agreement we would go through this process for a third

12:21:54 25    quarter budget.

**OFFICIAL TRANSCRIPT**

12:21:54 1           Your Honor has respectfully imposed upon that an

12:21:58 2    additional obligation, which we would say is not within the

12:22:00 3    terms of the Settlement Agreement, to add a month.

12:22:03 4           If we start --

12:22:03 5           THE COURT:  That's the simplification that Mr. Roy is

12:22:06 6    looking for.  He wants you to have two orders, one of which

12:22:10 7    obligates you to fund third quarter, and one of which obligates

12:22:15 8    you to fund the first month of the fourth quarter.

12:22:18 9           He doesn't think that's nearly as clear from an

12:22:24 10   appellate point of view, so he's asking me to separate those

12:22:27 11   two.

12:22:28 12          MR. MOSKOWITZ:  Right.

12:22:29 13          THE COURT:  Is that right, Mr. Roy?

12:22:30 14          MR. ROY:  That's exactly right, Your Honor, for the

12:22:32 15   very simple reason that there arguably is the additional

12:22:38 16   obligation, which may or may not be permitted under the

12:22:41 17   settlement Agreement, may or may not give BP an appellate

12:22:48 18   basis.  It separates the relief, and that's the reason.

12:22:54 19          THE COURT:  Okay.

12:22:54 20          MR. MOSKOWITZ:  Your Honor, I'm not attempting to go

12:22:57 21   form over substance here, but it seems to us that one order on

12:23:03 22   what the Court is ordering with regard to BP's funding

12:23:05 23   obligations is appropriate because, of course, we will have

12:23:09 24   objections we will raise on appeal with regard to the process

12:23:13 25   of ordering that funding for the third quarter, and then, of

                          **OFFICIAL TRANSCRIPT**

12:23:15  1    course, on top of that, objections to the process of ordering

12:23:18  2    us to fund a fourth month outside of the order.

12:23:27  3            THE COURT:  Well, the current issue is whether BP wants

12:23:29  4    to appeal the order mandating funding, by this coming Monday,

12:23:38  5    of the third quarter.  That's what you'll please let

12:23:44  6    Judge Barbier know about, let Mr. Juneau, PSC and me know

12:23:51  7    about, and I'll work on my order.

12:23:54  8            MR. MOSKOWITZ:  Thank you, Your Honor.

12:23:57  9            THE COURT:  Thank you.  I appreciate it.

         10            (WHEREUPON, at 12:23 p.m., the proceedings were

         11    concluded.)

         12                        *    *    *

         13

         14

         15                    REPORTER'S CERTIFICATE

         16        I, Cathy Pepper, Certified Realtime Reporter, Registered
               Merit Reporter, Certified Court Reporter of the State of
         17    Louisiana, Official Court Reporter for the United States
               District Court, Eastern District of Louisiana, do hereby
         18    certify that the foregoing is a true and correct transcript to
               the best of my ability and understanding from the record of the
         19    proceedings in the above-entitled and numbered matter.

         20
                                      s/Cathy Pepper
         21                           Cathy Pepper, CRR, RMR, CCR
                                      Certified Realtime Reporter
         22                           Registered Merit Reporter
                                      Official Court Reporter
         23                           United States District Court
                                      Cathy_Pepper@laed.uscourts.gov
         24

         25


                              **OFFICIAL TRANSCRIPT**

## $

**$128,654,584** [1] - 71:12
**$130** [3] - 10:25, 11:15, 64:1
**$130,000,000** [1] - 8:21
**$15** [2] - 9:2, 61:2
**$30** [1] - 43:3
**$300** [2] - 36:18, 36:22
**$45** [1] - 36:18
**$800** [1] - 36:18

## '

**'90s** [1] - 36:17

## 1

**1** [17] - 5:11, 5:12, 15:12, 15:14, 16:11, 17:23, 26:2, 26:7, 33:19, 34:17, 37:7, 53:4, 54:8, 54:15, 55:20
**1(a** [1] - 29:18
**1(f)** [2] - 28:10, 28:11
**1,792** [1] - 48:5
**10** [8] - 32:1, 33:8, 47:2, 68:23, 71:14, 76:18, 78:19
**10-MD-2179** [1] - 1:7
**10/18/12** [1] - 30:10
**101** [1] - 2:4
**103** [1] - 63:25
**10:57** [1] - 68:25
**10th** [1] - 74:14
**11** [1] - 38:18
**11:00** [1] - 68:23
**11:32** [1] - 78:24
**12** [2] - 38:19, 53:3
**12-week** [1] - 48:5
**12:23** [1] - 86:10
**12th** [4] - 74:18, 75:1, 77:21, 80:10
**1321** [1] - 27:15
**13th** [5] - 71:10, 71:11, 73:11, 74:20, 82:14
**1439** [1] - 3:18
**15** [11] - 5:11, 5:12, 20:10, 26:2, 26:3, 26:7, 27:20, 46:13, 66:19, 76:19, 78:19
**15(a** [1] - 47:23
**15(a)** [1] - 47:19
**15(c** [2] - 49:10, 50:5

**15(c)** [1] - 60:10
**16th** [1] - 73:19
**17** [1] - 8:24
**17th** [2] - 15:17, 71:7
**18010** [1] - 46:5
**18th** [4] - 49:12, 53:2, 54:16, 69:11
**1900** [1] - 3:7
**1st** [3] - 70:4, 70:18, 71:4

## 2

**2** [6] - 5:13, 16:10, 34:17, 58:3, 69:4, 69:5
**2,584** [1] - 48:5
**2.8** [1] - 48:1
**2/11/13** [1] - 30:17
**20** [3] - 1:6, 4:6, 6:8
**2000** [1] - 3:7
**2000's** [1] - 36:21
**2010** [2] - 1:6, 6:9
**2012** [3] - 28:1, 29:16, 30:7
**2013** [22] - 1:8, 6:2, 6:22, 7:21, 8:7, 8:22, 8:25, 13:9, 17:23, 19:5, 26:23, 32:20, 70:4, 71:10, 71:11, 71:16, 71:23, 72:6, 72:25, 73:17, 73:25, 74:25
**210,000** [1] - 31:7
**21st** [1] - 69:20
**233** [1] - 3:11
**23rd** [1] - 73:21
**24** [1] - 74:1
**26** [1] - 5:12
**2615** [1] - 2:8
**27** [2] - 4:7, 4:8
**28th** [1] - 73:24
**2:00** [2] - 75:13, 81:22

## 3

**3** [1] - 14:5
**3,000** [1] - 41:4
**30** [1] - 27:19
**30th** [1] - 80:9
**31,000** [1] - 32:17
**316** [1] - 2:12
**32502** [1] - 2:13
**36** [1] - 4:9

## 4

**4.3.4** [2] - 70:8, 74:4

**42** [1] - 4:10
**435** [1] - 2:4
**45** [1] - 4:11
**46** [1] - 4:12
**4th** [2] - 20:17, 74:7

## 5

**5** [5] - 25:12, 25:19, 29:5, 32:20, 71:16
**5.12.1.4** [3] - 8:19, 66:3, 72:20
**5/6/13** [1] - 30:19
**50** [1] - 28:2
**500** [1] - 3:22
**5000** [1] - 2:24
**501** [1] - 3:4
**504** [1] - 3:23
**55** [1] - 4:13
**556 JEFFERSON STREET** [1] - 1:19
**589-7779** [1] - 3:23
**5th** [6] - 15:24, 16:20, 44:1, 62:14, 63:1, 64:18

## 6

**6** [2] - 4:4, 72:5
**60** [4] - 75:4, 78:3, 78:6, 78:9
**600** [2] - 2:12, 2:16
**601** [1] - 2:8
**60606** [1] - 3:11
**61** [1] - 4:14
**6276-1** [1] - 66:4
**63** [2] - 4:15, 4:16
**64** [1] - 4:17
**641,000** [1] - 32:16
**65** [1] - 4:18
**69** [2] - 4:19, 5:13
**6th** [1] - 74:13

## 7

**7** [3] - 1:8, 4:5, 6:2
**7/26/12** [1] - 30:8
**70-million-a-year** [1] - 46:24
**701** [1] - 2:24
**70113** [1] - 1:23
**70130** [3] - 2:9, 2:16, 3:22
**70139** [1] - 2:24
**70360** [1] - 2:5
**70404** [1] - 3:18
**70502** [1] - 1:20

**75201** [1] - 3:8
**77079** [1] - 3:4
**7800** [1] - 3:11
**79** [1] - 4:20

## 8

**8** [1] - 31:9
**80** [2] - 4:21, 4:22
**81** [1] - 4:23
**82** [1] - 4:24
**820** [1] - 1:23
**83** [1] - 4:25
**84** [3] - 5:1, 5:2, 5:3
**85** [1] - 5:4

## 9

**9** [1] - 82:9
**9:00** [1] - 80:15
**9:30** [2] - 1:8, 74:18
**9TH** [1] - 2:16

## A

**a.m** [4] - 68:25, 74:18, 78:24, 80:15
**A.M** [1] - 1:8
**ability** [2] - 62:19, 86:18
**able** [3] - 48:15, 48:16, 50:8
**above-entitled** [1] - 86:19
**ABRAMSON** [1] - 2:7
**absolutely** [4] - 48:23, 63:9, 63:18, 66:2
**academic** [1] - 47:7
**acceptable** [1] - 15:5
**according** [2] - 32:15, 81:10
**account** [4] - 31:4, 32:11, 42:6, 68:7
**accountable** [2] - 62:7, 62:8
**accounting** [3] - 9:23, 9:24, 13:3
**accumulated** [1] - 20:6
**accumulation** [1] - 21:2
**accurately** [1] - 13:18
**achieving** [1] - 59:10
**acknowledgment** [1] - 13:8
**act** [3] - 18:13, 19:22, 64:6
**ACTION** [1] - 1:7

**ACTIONS** [1] - 1:10
**actively** [2] - 47:13, 47:15
**activities** [3] - 18:7, 18:18, 21:1
**activity** [4] - 19:5, 23:20, 42:10, 43:12
**actual** [2] - 13:2, 13:6
**ad** [1] - 67:1
**add** [1] - 85:3
**added** [1] - 15:22
**addition** [3] - 23:16, 75:11
**additional** [8] - 45:7, 64:14, 64:15, 68:1, 77:12, 84:17, 85:2, 85:15
**address** [19] - 8:9, 10:20, 13:15, 19:18, 20:12, 21:7, 21:21, 22:24, 24:3, 24:23, 24:25, 25:6, 27:14, 41:14, 46:4, 47:21, 50:5, 53:10, 70:9
**addressed** [2] - 25:19, 49:12
**addressing** [3] - 13:8, 25:22, 84:13
**adequate** [1] - 68:11
**adjudicate** [1] - 56:23
**adjunct** [1] - 46:15
**adjusted** [2] - 43:13, 43:14
**administered** [1] - 66:11
**administration** [7] - 7:1, 17:9, 17:11, 33:25, 69:17, 70:12, 73:3
**Administration** [9] - 9:1, 14:10, 17:24, 70:9, 70:16, 70:24, 72:10, 74:4, 74:24
**Administration's** [1] - 70:21
**administrative** [13] - 8:21, 14:12, 28:3, 34:1, 35:3, 38:5, 40:2, 40:5, 41:15, 60:8, 69:24, 71:14, 72:21
**Administrator** [34] - 6:18, 6:23, 7:23, 8:10, 10:19, 13:15, 14:23, 17:3, 17:23, 19:1, 20:5, 24:8, 26:2, 26:7, 32:4, 38:3, 65:21, 65:23, 66:6, 67:15, 69:12, 69:16, 70:5, 70:6,

71:4, 72:23, 73:17,
73:22, 74:2, 75:2,
75:20, 75:23, 77:3,
78:3
**administrator** [2] -
67:21, 80:3
**ADMINISTRATOR** [2]
- 3:15, 5:12
**Administrator's** [16] -
20:8, 37:11, 37:12,
37:16, 41:12, 42:15,
53:4, 57:5, 65:20,
67:17, 70:2, 70:11,
71:3, 71:9, 71:19,
83:8
**admitted** [9] - 15:13,
15:14, 26:6, 26:8,
63:23, 64:24, 69:3,
69:4, 69:5
**ADMITTED...** [1] - 5:12
**ADMITTED................
..........** [2] - 5:11, 5:13
**adopts** [1] - 65:20
**advance** [3] - 44:20,
54:15, 54:16
**adversarial** [1] - 44:25
**advised** [3] - 31:19,
71:12, 71:13
**Advocate** [1] - 46:23
**afield** [1] - 53:16
**afternoon** [1] - 17:4
**ago** [2] - 59:12, 66:19
**agree** [19] - 34:18,
40:22, 41:11, 57:6,
57:13, 57:14, 57:17,
57:18, 57:19, 59:4,
59:6, 59:11, 59:21,
60:17, 61:5, 65:1,
75:8, 75:20, 76:5
**agreed** [4] - 28:14,
29:8, 75:25, 76:8
**agreement** [4] - 19:15,
19:24, 29:12, 84:24
**Agreement** [16] - 8:20,
10:8, 10:22, 21:14,
22:4, 22:9, 22:11,
28:2, 54:21, 66:3,
68:9, 70:7, 72:21,
74:5, 85:3, 85:17
**ahead** [8] - 16:8,
26:20, 51:25, 52:16,
73:10, 80:12, 80:23,
82:12
**ain't** [1] - 23:5
**ALL** [1] - 1:10
**allegations** [1] - 7:1
**allocated** [1] - 58:15
**allowed** [3] - 49:18,
67:22, 74:16
**alluded** [1] - 15:1

**America** [2] - 9:6, 11:4
**AMERICA** [4] - 2:19,
2:21, 2:22, 3:3
**American** [1] - 9:13
**AMERICAN** [1] - 2:8
**amount** [4] - 12:13,
14:11, 14:23, 29:21
**amounts** [1] - 58:15
**Amy** [1] - 28:1
**analyses** [2] - 75:21,
83:19
**analysis** [6] - 33:25,
38:5, 44:3, 47:16,
49:9, 71:23
**analyst** [1] - 37:1
**AND** [1] - 3:17
**answer** [3] - 41:19,
56:11, 64:16
**anticipate** [1] - 13:24
**apart** [1] - 84:18
**apologize** [3] - 78:25,
79:13
**appeal** [19] - 75:11,
75:13, 79:8, 79:25,
80:14, 81:1, 81:2,
81:7, 81:13, 81:15,
81:17, 81:21, 82:4,
82:7, 84:6, 84:19,
85:24, 86:4
**appear** [1] - 70:2
**appearances** [1] -
6:10
**APPEARANCES** [3] -
1:16, 2:1, 3:1
**appearing** [1] - 44:23
**appellate** [2] - 85:10,
85:17
**applicable** [1] - 69:23
**appointed** [6] - 20:5,
21:1, 66:10, 67:7,
67:8, 67:18
**appreciate** [6] - 7:16,
14:14, 16:17, 18:12,
79:13, 86:9
**appreciation** [1] -
18:12
**apprise** [1] - 8:3
**appropriate** [7] -
10:18, 11:13, 16:7,
19:7, 44:2, 71:23,
85:23
**appropriately** [1] -
78:13
**approval** [8] - 29:13,
71:20, 72:22, 73:14,
74:23, 76:1
**approvals** [2] - 29:20,
32:2
**approve** [2] - 8:6, 8:20
**approved** [1] - 23:7

**approves** [2] - 32:3,
32:4
**approving** [1] - 72:2
**APRIL** [1] - 1:6
**April** [1] - 6:8
**arbitrary** [1] - 64:19
**areas** [1] - 12:5
**arenas** [1] - 7:3
**arguably** [1] - 85:15
**argument** [1] - 7:6
**arguments** [1] - 65:20
**arise** [2] - 70:10, 70:22
**arises** [1] - 45:8
**aside** [1] - 38:1
**assembled** [1] - 27:24
**assembly** [2] - 12:8,
66:17
**asserting** [1] - 34:12
**assessment** [1] - 43:6
**assistance** [2] - 43:4,
43:16
**assume** [2] - 80:14,
81:13
**attachments** [2] -
53:7, 53:8
**attainable** [1] - 57:8
**attempt** [3] - 22:9,
67:18, 70:9
**attempted** [1] - 68:16
**attempting** [1] - 85:20
**attend** [2] - 49:18
**attended** [2] - 19:2,
69:11
**attention** [1] - 47:18
**attorney** [1] - 69:20
**audit** [2] - 14:19,
53:21
**audited** [1] - 32:3
**August** [13] - 15:18,
25:12, 25:19, 44:1,
62:14, 63:1, 64:18,
71:16, 72:5, 73:19,
73:21, 73:24, 75:1
**AUGUST** [2] - 1:8, 6:2
**authoring** [1] - 47:8
**avail** [1] - 79:24
**available** [9] - 10:6,
10:25, 19:21, 32:11,
35:10, 42:17, 49:13,
57:6, 63:23
**AVENUE** [1] - 1:23,
3:7
**average** [5] - 29:17,
34:1, 35:3, 38:5,
48:5
**avoid** [2] - 67:18, 75:5
**aware** [7] - 11:6, 15:1,
18:9, 37:22, 38:13,
57:3, 58:9

**B**

**backdrop** [1] - 72:8
**background** [7] -
36:13, 47:3, 47:6,
47:7, 59:18, 59:20
**backlog** [1] - 42:8
**backup** [3] - 9:4,
73:13, 78:11
**bang** [1] - 17:18
**bar** [1] - 18:2
**Barbier** [8] - 69:21,
75:12, 75:14, 79:25,
80:13, 82:5, 84:6,
86:6
**Barbier's** [2] - 81:16,
82:6
**BARR** [1] - 2:12
**based** [10] - 12:14,
17:5, 34:16, 48:2,
48:10, 50:12, 52:21,
54:5, 59:2, 73:23
**basic** [1] - 11:3
**basics** [1] - 24:20
**basis** [12] - 28:5, 34:2,
43:12, 48:21, 50:7,
56:24, 57:3, 58:16,
62:2, 71:1, 72:24,
85:18
**Baton** [2] - 46:5, 46:23
**BAYLEN** [1] - 2:12
**BEFORE** [1] - 1:13
**began** [2] - 18:23,
66:19
**beginning** [2] - 18:6,
18:7
**behalf** [4] - 6:12, 10:1,
28:13
**behind** [1] - 36:3
**beings** [1] - 12:9
**BEL** [3] - 50:8, 50:12,
56:24
**belief** [3] - 9:22, 59:13,
62:7
**believes** [4] - 26:21,
33:15, 65:22, 67:25
**beneficial** [2] - 59:10,
60:2
**benefit** [1] - 19:16
**best** [4] - 24:24, 38:8,
67:3, 86:18
**better** [2] - 64:19, 69:9
**between** [3] - 21:14,
72:23, 77:12
**beyond** [1] - 9:21
**big** [2] - 17:18, 21:20
**billing** [1] - 55:2
**billion** [4] - 9:8, 59:5,
59:22

**billion-dollar** [1] -
59:22
**bills** [13] - 24:7, 25:14,
25:20, 25:23, 31:12,
32:1, 32:2, 32:11,
33:10, 34:4, 34:8,
68:6
**bit** [4] - 7:22, 11:14,
18:11, 51:1
**black** [1] - 16:20
**blueprint** [1] - 21:11
**Boatman** [3] - 28:1,
28:7, 28:15
**BOB** [3] - 3:16, 4:7,
27:5
**Bob** [2] - 27:10, 27:15
**bodies** [1] - 59:1
**Bonnabel** [1] - 27:15
**book** [1] - 28:11
**books** [1] - 20:9
**bottom** [1] - 79:18
**bottoms** [1] - 11:8
**bottoms-up** [1] - 11:8
**BOULEVARD** [1] - 3:4
**bound** [1] - 24:7
**BOX** [1] - 3:18
**boy** [1] - 18:24
**BP** [132] - 2:19, 2:20,
2:21, 2:22, 3:3, 5:11,
5:13, 6:12, 6:21,
7:22, 8:1, 8:4, 8:11,
8:12, 8:18, 8:23,
10:6, 10:18, 10:24,
11:1, 14:8, 14:12,
15:14, 17:4, 20:20,
20:22, 23:7, 23:12,
23:21, 24:7, 24:19,
24:21, 26:4, 26:12,
27:25, 28:2, 28:13,
28:20, 28:25, 29:6,
29:8, 29:14, 30:4,
31:24, 32:6, 33:7,
34:12, 36:4, 37:21,
38:9, 38:11, 38:14,
39:23, 40:9, 40:12,
40:13, 40:19, 40:23,
41:18, 41:20, 42:12,
49:15, 49:18, 51:18,
53:4, 53:23, 55:25,
58:5, 60:19, 63:23,
64:7, 64:21, 65:7,
65:25, 66:1, 66:4,
66:8, 66:12, 66:16,
67:6, 67:9, 67:18,
67:20, 67:21, 67:25,
68:1, 68:4, 68:7,
68:14, 68:19, 69:5,
69:13, 69:15, 69:18,
69:20, 69:25, 70:6,
70:15, 70:20, 70:25,

**OFFICIAL TRANSCRIPT**

71:1, 71:8, 71:16,
72:1, 72:7, 72:9,
72:13, 72:22, 72:23,
73:3, 73:5, 73:12,
73:18, 73:19, 74:2,
74:24, 75:18, 75:25,
76:21, 77:16, 81:4,
81:13, 82:3, 82:23,
82:24, 83:1, 83:8,
83:18, 84:13, 85:17,
86:3
**BP's** [12] - 7:20, 8:15,
34:17, 35:15, 38:4,
55:20, 67:15, 68:12,
69:3, 71:19, 74:23,
85:22
**Brazil** [1] - 47:10
**breakdown** [1] - 12:19
**breaking** [2] - 34:7,
38:17
**breakout** [1] - 12:25
**BRIAN** [1] - 2:12
**brief** [3] - 7:10, 17:8,
74:11
**briefing** [3] - 74:16,
76:10, 80:8
**briefly** [1] - 63:16
**bring** [1] - 82:24
**brought** [2] - 70:13,
74:9
**BrownGreer** [11] - 9:1,
13:10, 13:21, 14:4,
32:12, 32:17, 34:5,
60:23, 60:24, 61:6,
61:7
**Budget** [1] - 32:20
**budget** [111] - 6:22,
7:5, 7:21, 7:24, 8:2,
8:5, 8:6, 8:11, 8:16,
8:21, 8:24, 9:9, 9:15,
9:16, 9:17, 10:5,
10:11, 10:17, 10:18,
10:19, 10:23, 11:2,
11:5, 11:8, 11:13,
11:18, 13:2, 13:4,
13:5, 13:8, 13:11,
13:12, 13:13, 13:14,
13:16, 13:17, 13:20,
14:4, 15:10, 15:17,
15:19, 16:4, 16:25,
17:5, 17:6, 18:20,
19:6, 19:17, 23:4,
26:23, 28:6, 28:18,
28:21, 29:12, 31:20,
32:12, 32:17, 32:18,
33:5, 33:16, 34:14,
34:23, 36:16, 36:22,
36:23, 37:2, 37:3,
42:5, 42:20, 44:1,
44:4, 44:8, 53:18,

63:25, 64:6, 65:22,
70:25, 71:3, 71:9,
71:13, 71:19, 71:23,
71:24, 72:2, 72:10,
72:16, 72:21, 73:1,
73:5, 73:13, 73:18,
73:20, 73:21, 73:23,
74:12, 74:15, 74:25,
75:4, 75:20, 75:22,
75:24, 77:11, 77:16,
78:3, 78:10, 83:2,
84:25
**budgetary** [1] - 7:6,
29:1, 29:10, 29:19,
29:24, 72:24, 73:4,
73:10, 80:8
**budgeted** [2] - 9:2,
34:1
**budgeting** [10] - 9:21,
11:7, 11:23, 12:11,
13:5, 14:22, 18:5,
35:25, 36:15, 76:10
**budgets** [8] - 8:12,
9:11, 9:14, 9:25,
11:4, 13:18, 13:22,
17:5, 36:20, 37:2,
66:10
**building** [1] - 11:17
**BUILDING** [1] - 2:8
**bullet** [4] - 39:3,
39:10, 40:1, 58:6
**bunch** [1] - 25:20
**burden** [3] - 56:16,
56:21, 79:14
**Business** [1] - 46:16
**BUSINESS** [1] - 3:17
**business** [15] - 9:6,
11:4, 11:9, 13:25,
19:14, 44:7, 47:1,
47:12, 50:9, 59:18,
66:16, 66:18, 66:19,
66:21, 72:18
**businesses** [2] - 9:7,
9:12
**busy** [3] - 43:15,
43:19, 79:14
**BY** [38] - 1:4, 1:19,
1:22, 2:4, 2:7, 2:12,
2:15, 2:23, 3:3, 3:7,
3:10, 3:15, 3:24,
3:25, 4:8, 4:9, 4:10,
4:12, 4:13, 4:14,
27:12, 31:2, 31:18,
34:9, 34:25, 36:10,
37:25, 39:6, 42:4,
46:3, 49:14, 49:23,
52:2, 52:10, 54:11,
55:17, 59:3, 61:12

# C

**CAC** [1] - 43:11
**calculate** [1] - 47:25
**calculation** [1] - 12:17
**CALLED** [1] - 6:4
**candidly** [1] - 64:24
**cannot** [1] - 75:8
**capable** [3] - 10:6,
50:12, 50:24
**capacity** [4] - 27:21,
46:20, 48:15, 56:22
**capital** [1] - 36:19
**car** [1] - 21:10
**Carl** [1] - 69:21
**CARONDELET** [1] -
2:16
**case** [7] - 22:5, 23:18,
23:20, 23:25, 25:9,
64:25, 65:5
**cash** [2] - 33:7, 33:10
**categories** [1] - 51:3
**category** [9] - 47:16,
47:17, 47:21, 48:11,
49:9, 50:7, 50:12,
51:6, 51:14
**Cathy** [2] - 86:16,
86:21
**CATHY** [1] - 3:20
**Cathy_Pepper@laed
.uscourts.gov** [1] -
86:23
**cathy_Pepper@laed.
uscourts.gov** [1] -
3:23
**CAUSE** [1] - 1:13
**CCR** [2] - 3:20, 86:21
**center** [1] - 42:23
**CENTER** [2] - 3:14
**Center** [1] - 71:8
**centered** [1] - 62:4
**centers** [5] - 43:4,
43:11, 43:12, 43:17,
52:20
**CEO** [1] - 32:3
**certain** [3] - 17:20,
56:12, 68:1
**certainly** [18] - 9:6,
13:23, 22:10, 25:20,
26:13, 50:16, 51:4,
55:11, 57:8, 57:15,
57:24, 59:4, 59:16,
59:24, 60:1, 64:1,
79:15, 79:24
**CERTIFICATE** [1] -
86:14
**CERTIFIED** [1] - 3:21
**Certified** [3] - 86:16,
86:16, 86:21

**certify** [1] - 86:18
**CFO** [2] - 27:20, 36:21
**challenged** [1] - 71:2
**challenging** [1] - 55:6
**chambers** [1] - 75:14
**change** [2] - 66:23,
75:3
**changed** [2] - 22:2,
25:11
**changes** [2] - 41:8,
62:5
**charged** [1] - 61:20
**CHICAGO** [1] - 3:11
**chief** [3] - 27:23,
35:24, 48:22
**Chief** [1] - 71:7
**CHIEF** [2] - 3:16, 3:16
**choice** [2] - 81:2,
82:10
**choices** [1] - 73:7
**choose** [1] - 81:4
**chronology** [1] - 69:10
**circumstances** [4] -
48:17, 65:24, 74:24,
80:11
**City** [10] - 13:10,
13:21, 32:12, 32:16,
34:7, 42:22, 52:18,
52:22, 52:23, 60:23
**CIVIL** [1] - 1:7
**Claim** [2] - 70:11,
73:16
**claim** [7] - 12:9, 34:1,
35:3, 38:6, 56:23,
59:21, 59:22
**claimant** [2] - 43:4,
43:16
**claimants** [2] - 66:12,
67:11
**claims** [20] - 7:1, 7:7,
7:9, 10:8, 12:8,
12:10, 17:9, 17:11,
17:13, 17:16, 17:20,
18:2, 18:10, 33:25,
38:19, 42:8, 48:4,
50:21, 51:6, 71:17
**Claims** [49] - 6:18,
6:23, 7:23, 8:10, 9:1,
10:19, 13:15, 14:10,
14:23, 17:3, 17:23,
19:1, 20:5, 20:8,
24:8, 32:3, 37:11,
37:12, 37:16, 38:3,
41:12, 42:14, 53:3,
57:5, 66:6, 69:12,
69:16, 70:1, 70:4,
70:6, 70:8, 70:16,
70:21, 70:24, 71:3,
71:4, 71:8, 71:9,
71:19, 72:9, 72:23,

73:22, 74:2, 74:3,
74:8, 75:2, 75:20,
75:23, 77:3
**CLAIMS** [3] - 3:14,
3:14, 3:15
**clarification** [5] - 77:8,
77:23, 78:1, 80:19,
84:2
**clarify** [2] - 20:19,
41:1
**clarifying** [1] - 60:15
**clarity** [1] - 60:8
**class** [3] - 66:8, 67:11,
67:12
**Class** [12] - 10:7,
65:13, 65:19, 67:7,
68:4, 68:13, 69:13,
70:20, 70:25, 73:18,
73:19, 74:3
**clear** [15] - 6:24, 8:14,
8:18, 8:23, 14:25,
15:23, 16:18, 38:15,
45:12, 54:14, 57:4,
62:18, 79:7, 82:5,
85:9
**clearly** [12] - 16:7,
50:19, 56:22, 57:21,
58:13, 59:15, 62:1,
62:6, 63:22, 65:4,
67:25
**Clerk** [2] - 27:7, 45:22
**CLERK** [7] - 6:7,
26:25, 27:8, 45:15,
45:23, 69:1, 78:23
**client** [2] - 76:18, 77:8
**clients** [1] - 10:1
**clock** [1] - 18:17
**close** [1] - 64:12
**closed** [2] - 34:3, 57:2
**closely** [1] - 7:17
**CLOSING** [1] - 4:15
**closing** [1] - 63:16
**Coast** [1] - 12:23
**College** [1] - 46:16
**coming** [2] - 25:21,
86:4
**commencement** [3] -
72:17, 75:5, 78:6
**comment** [1] - 7:10
**comments** [9] - 7:17,
8:15, 63:17, 65:13,
65:17, 72:12, 73:20,
73:24, 75:17
**COMMENTS**..............
.....................[1] -
4:15
**commitment** [1] - 79:1
**commitments** [1] -
24:13
**Committee** [1] - 84:10

**communicate** [1] - 62:19

**communicating** [1] - 60:15

**communication** [2] - 50:19, 72:3

**companies** [2] - 27:20, 36:20

**company** [4] - 36:23, 36:25, 46:23, 46:24

**Company** [1] - 21:8

**comparison** [1] - 50:23

**complained** [1] - 69:25

**complaining** [1] - 74:10

**complete** [1] - 65:24

**completed** [2] - 58:8, 74:6

**completely** [1] - 35:19, 36:2

**completion** [1] - 74:7

**complex** [3] - 9:7, 38:18, 41:3

**complexity** [3] - 41:5, 51:3, 66:20

**comply** [1] - 44:9

**component** [2] - 55:12, 58:14

**components** [2] - 11:21, 11:22

**comprised** [1] - 9:20

**computer** [2] - 32:5, 43:20

**COMPUTER** [1] - 3:25

**conception** [1] - 25:11

**concerns** [3] - 70:3, 70:21, 71:21

**concluded** [1] - 86:11

**conclusion** [3] - 67:25, 68:13, 75:16

**condense** [1] - 27:13

**condensed** [3] - 22:19, 25:1, 27:17

**conduct** [3] - 72:23, 74:17, 75:17

**conducting** [1] - 80:9

**confer** [3] - 10:19, 74:22, 76:18

**conference** [1] - 68:15

**confirmation** [1] - 61:17

**confused** [1] - 41:1

**CONRAD** [1] - 2:4

**consent** [1] - 79:21

**consider** [2] - 76:15, 84:11

**consideration** [2] - 13:17, 82:17

**considered** [2] - 65:1, 69:9

**consistent** [1] - 8:14

**consistently** [4] - 22:3, 28:25, 49:4, 49:5

**constant** [1] - 48:21

**constantly** [1] - 28:25

**consult** [1] - 77:8

**contained** [3] - 8:24, 52:4, 54:12

**contemplated** [3] - 22:8, 68:9, 68:10

**context** [7] - 14:20, 17:10, 21:5, 22:16, 22:23, 23:1, 24:2

**continual** [4] - 40:2, 40:4, 41:14, 60:7

**continue** [3] - 24:15, 35:21, 71:20

**CONTINUED** [2] - 2:1, 3:1

**continues** [1] - 47:24

**continuing** [1] - 76:25

**contract** [4] - 54:23, 55:5, 58:8, 61:25

**contractors** [1] - 21:3

**contracts** [5] - 31:5, 45:4, 58:15, 61:15, 61:18

**contractual** [2] - 8:19, 24:11

**contractually** [1] - 19:12

**contrary** [1] - 66:18

**control** [1] - 63:3

**controls** [2] - 14:16, 68:18

**convened** [4] - 70:9, 70:16, 74:4, 74:6

**conversations** [1] - 62:25

**conversion** [1] - 59:2

**cooperate** [1] - 44:21

**coordinate** [2] - 20:25, 24:9

**copy** [3] - 20:9, 55:20, 56:6

**core** [1] - 71:21

**CORPORATE** [1] - 2:4

**corporation** [1] - 21:7

**CORPORATION** [1] - 2:19

**correct** [40] - 30:5, 30:11, 30:13, 30:14, 30:24, 31:12, 31:13, 38:5, 38:6, 38:11, 38:22, 39:19, 39:20, 39:21, 39:23, 40:9, 40:15, 40:19, 41:16,

41:18, 49:6, 49:25, 51:10, 56:11, 57:7, 57:11, 57:16, 57:19, 57:23, 59:8, 59:12, 59:25, 60:19, 60:25, 61:3, 61:4, 61:7, 72:18, 77:13, 86:18

**correctly** [1] - 78:2

**cost** [5] - 12:12, 12:18, 59:21, 60:25, 64:1

**costing** [1] - 42:23

**costs** [25] - 12:20, 12:21, 12:25, 14:13, 14:15, 18:8, 18:25, 34:1, 35:3, 38:5, 38:6, 43:21, 56:17, 56:23, 57:18, 57:22, 57:25, 59:6, 60:24, 61:6, 66:14, 69:24, 70:1, 71:2, 71:22

**counsel** [4] - 6:10, 49:21, 51:20, 64:22

**COUNSEL** [1] - 1:18

**Counsel** [13] - 10:7, 51:23, 65:13, 65:19, 66:8, 67:7, 68:4, 69:13, 70:20, 70:25, 72:18, 73:19, 74:3

**Counsel's** [1] - 68:13

**countervailing** [1] - 74:15

**counting** [1] - 59:1

**couple** [3] - 41:25, 72:12, 73:7

**course** [15] - 12:16, 18:21, 26:16, 32:24, 44:6, 51:3, 61:1, 72:2, 72:23, 73:16, 74:19, 75:17, 79:16, 85:23, 86:1

**courses** [1] - 47:7

**Court** [64] - 7:18, 7:25, 8:3, 9:5, 9:8, 14:8, 15:5, 16:24, 17:24, 18:9, 19:16, 19:19, 20:5, 20:17, 20:21, 20:22, 20:25, 21:1, 22:18, 23:13, 24:4, 24:11, 25:19, 26:3, 26:15, 27:24, 28:16, 28:17, 31:3, 31:22, 38:2, 45:10, 46:5, 49:18, 53:11, 66:7, 66:10, 66:15, 67:6, 67:7, 67:8, 67:13, 67:18, 68:14, 68:15, 68:18, 68:25, 69:14, 70:14, 74:9, 78:24, 79:13, 79:15, 79:21, 81:6, 82:16, 85:22,

86:16, 86:17, 86:17, 86:22, 86:23

**COURT** [90] - 1:1, 3:20, 6:4, 6:14, 6:19, 7:14, 15:13, 16:11, 16:13, 16:16, 16:22, 17:1, 19:25, 20:2, 25:2, 26:4, 26:6, 26:20, 31:17, 33:13, 33:19, 33:21, 34:11, 34:22, 35:13, 35:20, 36:5, 41:23, 41:25, 42:4, 44:11, 44:15, 45:11, 45:13, 51:25, 52:7, 53:22, 54:1, 54:3, 58:17, 58:19, 58:22, 58:24, 61:12, 63:10, 63:12, 63:18, 64:10, 65:12, 65:14, 65:16, 68:21, 69:2, 69:7, 76:24, 77:2, 77:6, 77:9, 77:13, 77:25, 78:5, 78:16, 78:22, 79:2, 79:4, 79:6, 79:11, 80:1, 80:21, 80:23, 81:5, 81:8, 81:13, 81:22, 81:25, 82:2, 82:6, 82:11, 82:21, 83:14, 83:17, 83:24, 84:5, 84:10, 84:21, 85:5, 85:13, 85:19, 86:3, 86:9

**Court's** [3] - 24:9, 69:10, 82:17

**Court-appointed** [4] - 20:5, 21:1, 66:10, 67:18

**Court-supervised** [3] - 9:8, 66:15, 69:14

**COURT......................** ...... [2] - 4:10, 4:14

**COURT......................** ...................... [6] - 4:4, 4:19, 4:21, 4:23, 5:1, 5:4

**courtroom** [1] - 23:14

**cover** [1] - 11:25

**covered** [1] - 60:6

**covers** [1] - 71:10

**CPA** [1] - 27:19

**create** [2] - 41:8, 67:1

**created** [2] - 9:11, 40:25

**critical** [2] - 19:4, 42:13

**criticized** [1] - 28:18

**cross** [2] - 35:23, 76:23

**CROSS** [4] - 4:9, 4:13,

36:9, 55:16

**CROSS-EXAMINATION** [4] - 4:9, 4:13, 36:9, 55:16

**cross-examine** [2] - 35:23, 76:23

**CRR** [2] - 3:20, 86:21

**CSSP** [29] - 7:21, 8:7, 8:17, 11:5, 11:11, 12:3, 12:8, 13:10, 13:23, 14:21, 15:24, 16:19, 36:14, 39:12, 39:14, 39:17, 40:4, 41:12, 57:15, 57:19, 69:14, 69:17, 69:22, 69:25, 70:19, 71:22, 72:3, 72:6, 73:4

**CSSP's** [1] - 71:21

**current** [6] - 27:14, 29:19, 47:23, 50:17, 57:15, 86:3

**cut** [5] - 25:14, 43:7, 43:9, 43:17, 64:18

**cuts** [1] - 43:2

**cycle** [1] - 17:12

### D

**daily** [2] - 41:5, 43:12

**DALLAS** [1] - 3:8

**damage** [7] - 47:16, 47:20, 48:10, 49:9, 50:6, 50:12, 51:3

**Damocles** [1] - 68:5

**daresay** [2] - 9:12, 9:25

**data** [11] - 18:24, 24:1, 25:4, 38:19, 38:22, 44:19, 48:21, 52:21, 57:6, 57:11, 64:22

**date** [5] - 8:3, 15:24, 18:2, 23:19, 72:3

**dates** [2] - 23:6, 83:21

**DAVID** [1] - 3:16

**days** [8] - 29:17, 32:1, 33:8, 71:14, 75:4, 78:3, 78:6, 78:9

**deadline** [4] - 76:13, 78:4, 81:20, 82:19

**deal** [5] - 11:23, 19:23, 24:10, 26:14, 26:18

**dealing** [2] - 9:19, 22:17

**debate** [1] - 18:23

**decide** [1] - 81:17

**decided** [1] - 66:25

**decisions** [2] - 19:13, 41:7

declare [1] - 77:4
decline [1] - 42:10
deems [1] - 66:13
deeply [1] - 64:6
Deepwater [4] - 6:8, 27:21, 47:5, 47:11
DEEPWATER [3] - 1:5, 3:13, 3:14
defer [1] - 61:18
deficiencies [2] - 33:11, 73:3
defining [3] - 52:12, 60:14, 62:21
delay [2] - 72:8, 79:13
demand [1] - 16:6
demands [1] - 66:13
denial [2] - 34:2, 57:2
denied [1] - 66:7
DENTONS [2] - 3:6, 3:10
deny [1] - 67:20
departments [1] - 48:24
dependent [2] - 75:9, 75:10
depleted [1] - 28:3
DEPUTY [7] - 6:7, 26:25, 27:8, 45:15, 45:23, 69:1, 78:23
derive [1] - 39:14
derived [1] - 14:6
describe [2] - 29:10, 29:18
described [2] - 22:20, 66:17
DESCRIPTION [1] - 5:9
designate [2] - 83:18, 83:20
designed [2] - 52:19, 52:21
designee [1] - 75:19
designees [3] - 82:24, 83:7, 83:9
detail [3] - 11:24, 14:12, 23:24
detailed [4] - 9:25, 23:19, 66:22, 73:20
details [2] - 24:20, 31:23
determination [2] - 26:24, 43:7
determine [4] - 8:5, 8:20, 48:8, 48:15
develop [2] - 17:14, 55:7
developed [3] - 17:21, 52:19, 58:10
developing [1] - 11:8
development [2] -

13:16, 17:12
deviations [1] - 66:12
dialogue [2] - 19:1, 28:25
dichotomy [1] - 18:4
dictate [1] - 66:9
difference [3] - 16:16, 77:5, 77:12
differences [1] - 51:2
different [7] - 18:7, 18:8, 38:19, 48:9, 60:11, 60:12
DIRECT [4] - 4:8, 4:12, 27:11, 46:2
directed [1] - 41:7
direction [2] - 24:9, 48:7
directly [1] - 55:2, 57:20
director [4] - 46:13, 47:1, 47:12, 71:17
DIRECTOR [1] - 3:17
disagree [1] - 54:5
disagreement [1] - 68:11
disagreements [2] - 70:10, 74:9
disapproved [1] - 71:2
discretion [1] - 73:23
discuss [2] - 23:7, 44:18
discussed [1] - 23:7
discussion [3] - 17:9, 62:3, 84:12
discussions [2] - 73:2, 73:4
dispute [2] - 23:14, 70:13
dissatisfied [1] - 66:14
distortion [1] - 23:2
District [3] - 86:17, 86:23
DISTRICT [2] - 1:1, 1:2
Document [1] - 66:4
document [8] - 16:18, 16:19, 32:19, 39:2, 39:4, 53:5, 53:7, 56:3
DOCUMENT [1] - 1:9
documentation [11] - 44:2, 51:13, 52:4, 52:8, 71:23, 75:21, 75:24, 77:16, 78:11, 81:13, 83:19
documents [1] - 32:21
dollar [5] - 9:8, 59:5, 59:21, 59:22
dollars [5] - 11:13,

42:24, 43:5, 59:6, 68:6
Domengeaux [1] - 20:23
DOMENGEAUX [1] - 1:18
done [34] - 13:24, 16:2, 17:18, 18:17, 18:18, 24:21, 25:21, 25:22, 25:25, 30:24, 34:13, 38:20, 38:25, 40:16, 42:18, 42:19, 43:20, 45:9, 45:10, 47:16, 49:4, 51:6, 56:8, 56:19, 60:9, 60:10, 64:13, 65:3, 67:2, 67:3, 73:9, 82:4
door [1] - 24:15
down [15] - 8:16, 12:9, 18:2, 24:21, 34:7, 38:17, 42:1, 43:7, 43:10, 43:17, 58:3, 68:5, 73:12, 75:8, 82:24
draft [1] - 81:9
DRIVE [2] - 2:4, 3:11
driver [1] - 55:12
dropping [1] - 68:4
druthers [1] - 59:11
due [4] - 25:20, 25:21, 31:9
dug [1] - 19:7
Duke [1] - 6:16
duly [1] - 27:6, 45:21
during [2] - 18:20, 32:24

---

# E

e-mail [11] - 8:25, 9:10, 9:15, 10:25, 16:6, 16:9, 23:2, 28:7, 32:6, 37:4
e-mails [3] - 40:20, 40:25, 41:13
early [3] - 15:18, 36:21, 51:18
easier [1] - 81:8
Eastern [1] - 86:17
EASTERN [1] - 1:2
echo [1] - 79:12
economic [2] - 50:9, 50:23
education [2] - 27:17, 46:7
EDWARDS [1] - 1:18
effect [1] - 80:17
effective [1] - 50:21

effectively [3] - 20:17, 67:22, 76:23
efficiencies [8] - 18:25, 41:9, 42:13, 42:16, 53:19, 60:13, 66:10, 72:14
efficiency [10] - 21:10, 40:3, 40:5, 41:15, 47:4, 47:17, 48:8, 51:5, 53:14, 57:14
efficient [1] - 53:15
efficiently [2] - 7:8, 43:22
effort [2] - 10:14, 48:8
efforts [1] - 60:11
either [8] - 23:12, 23:14, 29:6, 42:14, 66:24, 68:3, 79:7, 79:21
elements [4] - 11:3, 11:5, 12:17, 15:10
eligible [3] - 34:2, 38:18, 57:1
employ [1] - 70:2
enact [1] - 21:17
end [3] - 13:3, 13:19, 71:15
enforce [1] - 67:13
ensure [1] - 19:14
entailing [1] - 84:15
enter [1] - 80:12
entered [1] - 6:20
entirely [2] - 19:7, 84:23
entirety [1] - 74:25
entities [1] - 9:22
entitled [5] - 19:12, 19:15, 66:1, 72:14, 86:19
entity [2] - 19:14, 21:1
equally [1] - 62:22
equivalent [2] - 58:23, 59:2
escrow [1] - 31:8
especially [1] - 75:18
ESQUIRE [11] - 1:19, 1:22, 2:4, 2:7, 2:12, 2:15, 2:23, 3:3, 3:7, 3:10, 3:15
essential [2] - 59:7, 59:23
essentially [4] - 48:15, 50:8, 52:19, 55:1
etcetera [3] - 13:1, 54:10
evaluate [6] - 16:6, 40:2, 40:4, 60:7, 75:25, 79:22
event [1] - 74:22
evidence [2] - 6:25,

7:6, 26:1
evidentiary [5] - 26:11, 26:13, 26:16, 35:17, 76:21
evolving [3] - 21:18, 66:24
exact [2] - 28:17, 80:24
exactly [5] - 7:25, 28:8, 29:7, 67:16, 85:14
EXAMINATION [24] - 4:8, 4:9, 4:10, 4:12, 4:13, 4:14, 27:11, 31:2, 31:18, 34:9, 34:25, 36:9, 37:25, 39:6, 42:3, 46:2, 49:14, 49:23, 52:2, 52:10, 54:11, 55:16, 59:3, 61:11
examination [2] - 14:18, 69:22
Examination [1] - 53:5
EXAMINATIONS [1] - 4:2
examine [2] - 35:23, 76:23
examined [2] - 27:7, 45:22
example [4] - 21:8, 21:20, 52:17
examples [2] - 22:1, 50:9
exceeded [1] - 13:21
excess [3] - 8:21, 10:24, 11:14
excessive [5] - 14:15, 57:18, 57:22, 57:24, 71:21
exchange [1] - 49:1
exchanging [1] - 64:22
exclusive [1] - 53:14
excuse [1] - 48:1
executed [3] - 31:6, 61:19, 61:22
executing [1] - 61:18
EXECUTIVE [1] - 3:16
executive [1] - 48:22
exercise [4] - 8:5, 12:11, 14:20, 19:6
exercises [1] - 11:7, 60:13
exercising [1] - 8:18
EXHIBIT [2] - 5:11, 5:13
exhibit [8] - 15:6, 15:16, 16:23, 20:10, 37:6, 38:1, 39:5, 60:4

**Exhibit** [17] - 15:12, 15:14, 16:10, 16:11, 28:10, 29:18, 34:17, 37:7, 47:19, 47:23, 49:10, 50:5, 53:3, 55:20, 60:10, 69:4, 69:5
**Exhibits** [2] - 26:2, 26:7
**EXHIBITS** [1] - 5:12
**exhibits** [4] - 20:7, 20:11, 52:4, 65:21
**exist** [1] - 66:24
**exists** [1] - 38:22
**expand** [1] - 24:1
**expect** [3] - 9:17, 13:23, 17:25
**expectation** [1] - 10:3
**expected** [1] - 69:23
**expects** [1] - 81:17
**expedited** [3] - 74:13, 74:21, 75:6
**expended** [2] - 36:19, 51:19
**expense** [1] - 70:2
**expenses** [7] - 8:22, 12:19, 12:20, 31:5, 34:14, 69:18, 69:24
**experience** [6] - 27:18, 46:11, 46:12, 46:14, 59:18, 59:20
**experienced** [1] - 17:18
**expertise** [2] - 22:21, 47:4
**experts** [1] - 11:23
**explain** [5] - 7:20, 7:25, 11:25, 56:20, 61:24
**explained** [3] - 18:12, 33:6, 65:25
**explanatory** [2] - 44:3, 71:24
**EXPLORATION** [1] - 2:20
**extend** [1] - 80:11
**extensive** [2] - 21:15, 46:12
**extent** [3] - 10:20, 26:15, 68:2
**extract** [1] - 48:14

**F**

**F-I-S-H-E-R** [1] - 45:25
**facets** [1] - 12:10
**facilitate** [1] - 82:22
**facilities** [1] - 59:19
**facility** [3] - 18:2,

18:10, 18:15
**fact** [10] - 8:4, 10:3, 13:9, 13:15, 14:14, 22:6, 24:18, 79:8, 80:3, 83:6
**factor** [1] - 59:2
**factored** [2] - 10:11, 42:20
**factors** [1] - 42:6
**faculty** [1] - 46:15
**fair** [2] - 14:11, 35:23
**fairly** [1] - 48:5
**fall** [2] - 51:14, 51:15
**familiar** [2] - 32:22, 53:5
**families** [1] - 9:13
**far** [5] - 9:7, 53:16, 58:11, 73:12, 83:9
**fashion** [2] - 27:17, 45:6
**fault** [1] - 68:1
**faults** [1] - 68:4
**favor** [1] - 67:11
**feet** [1] - 34:6
**FENDLER** [7] - 2:23, 81:24, 82:1, 82:3, 82:9, 82:16, 83:23
**Fendler** [2] - 6:13, 82:2
**FENDLER................** ............[1] - 4:24
**few** [4] - 20:12, 25:4, 65:17, 75:16
**field** [1] - 47:4
**fifth** [1] - 12:19
**figure** [1] - 84:3
**figures** [2] - 9:10, 32:15
**filed** [2] - 52:4, 74:14
**files** [1] - 40:21
**filing** [2] - 48:3, 48:4
**finance** [2] - 25:3, 46:10
**Financial** [1] - 71:7
**financial** [4] - 24:13, 27:23, 31:3, 35:24
**FINANCIAL** [1] - 3:16
**fine** [4] - 7:14, 45:7, 78:18, 81:14
**finish** [1] - 51:25
**finished** [1] - 51:22
**firm** [6] - 9:23, 9:24, 20:21, 20:23, 28:21
**first** [30] - 7:22, 11:8, 12:1, 12:17, 15:6, 17:12, 19:6, 20:6, 20:10, 23:5, 24:22, 25:23, 25:25, 26:9, 27:6, 29:15, 31:19,

33:2, 33:18, 39:3, 45:21, 56:20, 58:6, 65:19, 73:9, 77:14, 80:3, 82:14, 85:8
**fiscal** [1] - 74:20
**FISHER** [2] - 3:17, 45:20
**Fisher** [16] - 25:6, 25:7, 42:9, 44:12, 45:25, 46:5, 55:14, 55:18, 55:20, 56:11, 57:13, 58:12, 61:13, 64:24, 75:19, 82:25
**FISHER.....................** ..................[1] - 4:11
**five** [1] - 50:14
**FL** [1] - 2:13
**flagging** [1] - 16:17
**FLOOR** [1] - 2:16
**focus** [1] - 18:19
**focused** [2] - 18:15, 53:14
**focusing** [1] - 14:12
**folks** [1] - 12:22
**follow** [1] - 30:4
**followed** [5] - 8:8, 29:24, 30:8, 52:25, 70:7
**following** [2] - 29:7, 69:10
**follows** [4] - 27:7, 45:22, 73:16, 75:18
**FOR** [2] - 1:18, 3:13
**Ford** [1] - 21:8
**forecasting** [1] - 33:7
**forecasts** [1] - 34:14
**foregoing** [1] - 86:18
**forgive** [1] - 53:8
**form** [4] - 8:13, 9:3, 41:13, 85:21
**formal** [1] - 29:14
**format** [22] - 8:25, 23:3, 23:10, 25:12, 28:6, 28:10, 28:13, 28:17, 29:23, 30:4, 30:8, 30:10, 62:20, 63:1, 73:13, 75:20, 75:24, 76:8, 77:16, 82:25, 83:19
**former** [2] - 64:11, 76:11
**formulate** [1] - 73:12
**forth** [4] - 21:10, 22:13, 23:6, 60:16
**forum** [1] - 24:10
**forward** [11] - 11:18, 59:15, 62:11, 64:7, 72:19, 73:6, 75:2, 75:21, 76:9, 77:19, 83:1

**four** [6] - 7:19, 21:17, 22:7, 42:23, 50:17, 69:22
**four-and-a-half** [1] - 42:23
**fourth** [12] - 8:9, 12:18, 13:20, 73:17, 76:5, 76:8, 76:10, 78:5, 78:7, 82:15, 85:8, 86:2
**fraction** [1] - 16:5
**Frankly** [1] - 56:12
**frankly** [3] - 35:17, 59:7, 79:20
**free** [1] - 67:24
**Freeport** [2] - 36:16, 36:23
**Friday** [3] - 73:18, 73:21, 74:13
**FTE** [2] - 58:15, 58:22
**fulfill** [2] - 10:21, 19:23
**fulfilled** [2] - 24:12, 24:14
**full** [4] - 14:10, 22:4, 58:23, 59:2
**full-time** [1] - 58:23, 59:2
**fully** [1] - 82:13
**fulsome** [2] - 9:10, 9:14
**functional** [1] - 12:5
**fund** [20] - 19:11, 31:8, 32:10, 67:15, 67:16, 68:8, 68:13, 71:13, 71:14, 72:25, 73:10, 74:24, 77:10, 77:18, 82:13, 82:14, 84:14, 84:19, 85:7, 85:8, 86:2
**fundamental** [1] - 63:21
**fundamentally** [2] - 19:20, 63:19
**funded** [6] - 7:5, 17:4, 26:23, 30:13, 72:11, 84:14
**funding** [18] - 8:12, 24:6, 28:3, 28:4, 29:14, 64:7, 66:13, 67:20, 69:19, 74:25, 75:9, 76:3, 76:5, 77:14, 82:18, 85:22, 85:25, 86:4
**funds** [5] - 10:25, 25:14, 27:25, 32:11, 33:9
**future** [3] - 11:19, 44:8, 75:6

**G**

**Garden** [10] - 13:10, 13:21, 32:12, 32:16, 34:7, 42:22, 52:18, 52:22, 52:23, 60:23
**gather** [1] - 42:15
**gathers** [1] - 42:15
**GENE** [1] - 2:23
**Gene** [6] - 6:13, 81:25, 82:2, 82:21
**general** [2] - 11:22, 24:2
**generally** [1] - 17:16
**generate** [4] - 34:18, 34:19, 34:20, 62:17
**given** [16] - 23:4, 23:25, 28:22, 29:13, 30:4, 34:15, 48:20, 59:20, 64:7, 66:22, 66:23, 68:1, 69:15, 72:22, 76:9
**glad** [4] - 44:14, 44:15, 82:21
**God** [2] - 27:3, 45:18
**graduate** [1] - 27:19
**grant** [2] - 66:5, 67:22
**granted** [1] - 72:7
**granular** [2] - 11:24, 56:24
**grave** [2] - 75:7, 75:12
**great** [1] - 11:23
**gross** [1] - 23:2
**ground** [1] - 11:18
**GROUP** [1] - 2:3
**Group** [3] - 52:18, 52:22, 52:23
**guess** [4] - 39:24, 56:20, 81:3, 84:22
**guillotine** [1] - 65:2
**GULF** [1] - 1:5
**Gulf** [2] - 6:8, 12:23

**H**

**half** [2] - 42:23, 43:5
**HAMMOND** [1] - 3:18
**hand** [4] - 10:9, 26:25, 28:11, 45:15
**handed** [1] - 32:24
**handle** [1] - 82:8
**handled** [2] - 7:2, 31:24
**hands** [1] - 36:3
**happy** [1] - 83:5
**Harbour** [1] - 46:5
**hard** [1] - 57:24
**HB406** [1] - 3:22

hear [1] - 26:20
**heard** [2] - 53:14, 63:20
**HEARD** [1] - 1:13
**hearing** [12] - 26:11, 26:16, 35:17, 35:22, 53:12, 53:13, 53:21, 74:13, 74:17, 75:15, 76:21, 80:9
**held** [2] - 36:14, 76:22
**help** [3] - 27:3, 45:18, 68:16
**helpful** [1] - 26:24
**helps** [1] - 44:20
**hence** [2] - 52:24, 74:20
**hereby** [1] - 86:17
**Herman** [2] - 6:15, 20:23
**HERMAN** [3] - 1:22, 1:22
**high** [1] - 70:1
**higher** [1] - 69:23
**highlight** [1] - 33:18
**highlighted** [9] - 15:8, 15:20, 16:13, 16:23, 33:13, 34:13, 55:24, 58:6, 60:6
**highlighting** [4] - 15:8, 15:22, 16:24, 34:17
**highlights** [1] - 51:4
**hire** [1] - 17:13
**historically** [1] - 42:21
**hoc** [1] - 67:1
**hold** [3] - 26:15, 36:25, 76:3
**holding** [1] - 62:7
**HOLDINGS** [1] - 2:21
**Holstein** [1] - 69:21
**holstein** [1] - 71:6
**Holstein's** [1] - 70:5
**Honor** [119] - 6:11, 6:15, 6:17, 7:12, 7:13, 7:16, 8:9, 8:14, 8:23, 9:5, 9:12, 9:19, 10:3, 10:16, 11:1, 11:3, 11:12, 12:7, 12:18, 13:7, 14:7, 14:9, 14:18, 15:1, 15:4, 15:11, 15:15, 15:16, 16:1, 16:9, 16:12, 16:17, 17:2, 17:7, 17:11, 18:5, 18:14, 19:2, 19:10, 20:1, 20:4, 20:7, 20:15, 22:19, 23:17, 24:3, 24:24, 25:16, 25:25, 26:5, 26:10, 26:18, 30:25, 31:14, 31:16, 35:12, 35:14,

35:15, 35:21, 36:2, 36:8, 37:24, 41:22, 41:24, 44:13, 44:22, 46:1, 49:12, 49:20, 49:22, 51:20, 52:6, 53:10, 53:11, 53:12, 53:25, 55:15, 61:10, 62:3, 63:11, 63:13, 63:15, 63:16, 63:19, 64:9, 64:11, 65:11, 68:19, 69:6, 76:17, 76:20, 77:1, 77:2, 77:3, 77:7, 77:22, 78:15, 78:19, 78:20, 78:25, 79:5, 79:10, 79:12, 79:15, 79:20, 80:18, 80:22, 81:20, 81:24, 82:1, 83:11, 83:23, 84:9, 84:11, 84:22, 85:1, 85:14, 85:20, 86:8
**honor** [2] - 24:7, 65:7
**HONORABLE** [1] - 1:13
**Honorable** [1] - 67:6
**Horizon** [1] - 6:8
**HORIZON** [3] - 1:5, 3:14, 3:14
**HOUMA** [1] - 2:5
**hours** [4] - 14:11, 43:13, 59:2, 74:1
**house** [1] - 32:2
**household** [1] - 9:14
**housing** [1] - 58:14
**HOUSTON** [1] - 3:4
**huge** [1] - 21:22
**human** [1] - 12:9
**hundred** [3] - 11:12, 21:17, 59:21
**hundred-million-dollar** [1] - 59:21
**hundreds** [3] - 21:24, 59:6, 68:6

---

## I

**idea** [1] - 42:9
**IEL** [2] - 50:9, 56:24
**IL** [1] - 3:11
**immediate** [2] - 84:13, 84:18
**immediately** [2] - 10:6, 10:14
**impact** [1] - 50:21
**impede** [1] - 62:6
**impediments** [1] - 38:13
**implement** [2] - 21:16, 22:3

**implemented** [1] - 62:10
**implementing** [1] - 22:4
**implicit** [1] - 81:3
**importance** [1] - 75:7
**important** [5] - 17:7, 17:8, 18:4, 19:8, 21:5
**importantly** [1] - 19:2
**imposed** [1] - 85:1
**impression** [1] - 54:1
**improved** [1] - 42:16
**improvement** [4] - 40:2, 40:5, 60:7, 67:4
**improvements** [6] - 40:3, 40:6, 41:14, 41:15, 50:20
**IN** [2] - 1:4, 1:5
**in-house** [1] - 32:2
**INC** [4] - 2:19, 2:20, 2:22, 3:3
**inception** [8] - 23:20, 29:11, 29:19, 31:22, 47:13, 47:15, 65:3, 70:24
**include** [3] - 12:21, 50:15, 74:15
**included** [1] - 61:24
**includes** [1] - 84:16
**including** [4] - 40:3, 40:5, 41:15, 48:24
**incomplete** [2] - 34:2, 57:1
**incompleteness** [1] - 50:15
**inconsistent** [1] - 64:20
**increase** [3] - 42:10, 47:25, 48:2
**incur** [1] - 12:25
**incurred** [4] - 11:11, 12:20, 34:1, 69:18
**indeed** [3] - 9:19, 47:18, 48:9
**independent** [1] - 21:2
**index** [1] - 20:10
**indicated** [2] - 26:11, 38:4
**indicates** [1] - 17:23
**indicating** [2] - 34:6, 34:7
**indicators** [3] - 54:20, 54:25
**individual** [5] - 12:6, 47:20, 50:6, 50:23, 56:25
**individuals** [1] - 12:12
**Indonesia** [1] - 36:17

**inefficiencies** [3] - 42:13, 57:15, 57:20
**inefficiency** [1] - 57:25
**inefficient** [1] - 57:22
**Information** [1] - 32:21
**information** [71] - 8:4, 8:6, 10:3, 10:5, 10:8, 10:9, 14:2, 14:4, 14:8, 14:24, 14:25, 15:2, 15:6, 15:18, 15:19, 15:25, 16:20, 16:21, 16:25, 17:5, 19:3, 19:9, 19:12, 19:20, 23:1, 23:24, 25:14, 28:22, 34:19, 34:21, 39:12, 39:14, 39:19, 39:21, 39:23, 40:8, 40:12, 41:18, 42:11, 42:14, 44:19, 45:7, 49:1, 49:11, 51:8, 52:23, 53:1, 53:23, 54:8, 54:14, 55:24, 56:7, 56:9, 58:4, 60:16, 60:18, 62:16, 62:19, 62:20, 63:7, 63:23, 64:2, 64:14, 64:15, 65:23, 68:1, 68:2, 68:12, 72:15, 73:13
**initial** [2] - 28:2, 70:5
**injunction** [1] - 67:22
**input** [2] - 22:4, 24:17
**inquiries** [1] - 71:1
**inquiry** [2] - 33:5, 51:18
**insignificant** [1] - 14:23
**insisted** [1] - 67:9
**instance** [8] - 31:25, 34:5, 42:22, 43:11, 43:13, 60:23, 72:22
**instruction** [1] - 23:11
**instructions** [1] - 48:21
**intelligent** [1] - 19:13
**intend** [2] - 6:25, 82:7
**intended** [2] - 8:16, 53:13
**intensely** [2] - 18:15, 18:19
**intent** [2] - 19:11
**interested** [1] - 78:10
**interesting** [1] - 20:12
**internal** [1] - 62:3
**internally** [1] - 32:3
**international** [2] - 9:23, 46:10
**interview** [1] - 49:19

**introductory** [1] - 7:16
**invoice** [4] - 23:17, 31:23, 32:3
**invoices** [3] - 23:21, 29:1, 65:9
**involved** [5] - 23:8, 41:4, 47:13, 47:15, 69:12
**involving** [1] - 70:12
**irrespective** [1] - 78:2
**issue** [20] - 7:7, 8:10, 14:19, 16:2, 17:2, 18:22, 20:8, 21:22, 21:23, 23:13, 26:22, 47:8, 64:17, 64:20, 65:7, 70:17, 79:17, 82:12, 82:16, 86:3
**issued** [2] - 16:19, 17:3
**issues** [26] - 9:21, 14:14, 17:10, 18:5, 18:16, 18:24, 19:19, 21:19, 21:24, 22:9, 22:20, 32:8, 33:12, 53:13, 57:18, 70:10, 70:12, 71:5, 72:13, 74:9, 74:11, 77:20, 79:17, 79:23, 80:8, 83:19
**item** [6] - 44:3, 56:4, 56:15, 58:2, 71:24
**itemized** [1] - 23:19
**items** [8] - 16:13, 16:14, 29:1, 33:2, 33:4, 34:12, 55:24, 74:15
**itself** [6] - 7:2, 7:5, 45:8, 66:5, 66:8, 66:13

---

## J

**JAMES** [2] - 1:19, 3:3
**jeopardy** [1] - 25:17
**Jim** [2] - 6:15, 80:23
**job** [3] - 21:16, 45:2, 67:3
**jobs** [2] - 36:14, 75:9
**joined** [2] - 6:12, 6:16
**joining** [1] - 36:14
**joins** [1] - 65:19
**jointly** [1] - 65:21
**JR** [1] - 2:15
**Judge** [10] - 69:21, 75:12, 75:14, 79:25, 80:13, 81:16, 82:5, 82:6, 84:6, 86:6
**judge** [1] - 84:2
**JUDGE** [1] - 1:14

**Judge's** [1] - 75:14
**judgment** [1] - 47:17
**July** [15] - 8:24, 15:17, 17:23, 28:1, 33:6, 50:11, 53:4, 54:8, 54:15, 70:4, 70:18, 71:4, 71:7, 71:10, 71:15
**June** [12] - 15:7, 15:24, 16:20, 20:17, 28:24, 29:5, 32:20, 49:12, 53:2, 54:16, 69:11, 69:20
**JUNEAU** [38] - 3:15, 6:17, 20:4, 25:3, 26:9, 27:12, 31:1, 31:2, 31:15, 31:18, 33:18, 34:9, 34:25, 35:11, 41:24, 44:12, 44:16, 45:12, 45:14, 46:3, 49:14, 49:22, 49:23, 51:22, 52:2, 52:10, 53:24, 54:2, 54:4, 54:11, 55:13, 63:11, 64:11, 77:3, 77:24, 83:11, 83:15, 84:2
**Juneau** [27] - 6:17, 20:3, 20:4, 26:21, 32:9, 34:11, 37:6, 41:23, 43:6, 45:13, 47:6, 47:18, 52:1, 53:9, 53:22, 63:6, 63:10, 64:10, 66:11, 67:7, 68:3, 70:4, 70:15, 70:18, 70:23, 72:5, 86:6
**Juneau's** [2] - 66:21, 84:7
**JUNEAU**.................
.............. [2] - 4:8, 4:12
**JUNEAU**.................
.................. [3] -
4:6, 4:17, 4:25
**jury** [1] - 64:11

## K

**KATZ** [1] - 1:22
**keep** [2] - 67:13, 80:4
**Keith** [4] - 6:12, 79:6, 80:25, 81:3
**KEITH** [1] - 3:10
**key** [6] - 39:3, 39:9, 54:20, 54:25, 55:12
**kind** [4] - 51:2, 58:13, 65:1, 75:5
**Kirk** [2] - 45:25, 46:5
**KIRK** [4] - 3:17, 4:11,

45:20, 45:25
**knowledge** [5] - 22:5, 38:8, 47:4, 54:22, 56:16
**knows** [1] - 14:9
**KPI's** [16] - 54:18, 54:20, 55:7, 58:9, 58:12, 58:14, 59:4, 59:7, 59:12, 59:14, 59:23, 60:5, 61:23, 61:24, 62:1, 62:10
**KULLMAN** [1] - 2:7

## L

**LA** [8] - 1:20, 1:23, 2:5, 2:9, 2:16, 2:24, 3:18, 3:22
**lack** [1] - 64:18
**LAFAYETTE** [1] - 1:20
**language** [1] - 55:3
**large** [2] - 9:24, 11:5
**largest** [1] - 60:25
**last** [10] - 11:10, 11:11, 20:18, 28:24, 43:3, 44:14, 44:22, 48:4, 54:17, 72:7
**lasted** [1] - 69:15
**law** [2] - 20:23
**LAW** [1] - 2:3
**lawyer** [1] - 64:12
**leading** [2] - 30:25, 31:16
**leads** [1] - 57:25
**least** [2] - 33:8, 78:9
**leave** [1] - 76:4
**led** [1] - 18:25
**legal** [1] - 24:12
**LEGER** [2] - 2:15, 2:15
**legitimate** [2] - 53:17, 70:3
**less** [2] - 9:7, 78:6
**letter** [16] - 17:3, 17:23, 25:7, 25:12, 29:5, 29:14, 31:21, 32:9, 43:25, 54:8, 54:15, 54:17, 62:13, 63:1, 70:5, 70:18
**Letter** [1] - 53:4
**letting** [1] - 76:13
**level** [5] - 12:6, 23:24, 45:8, 50:13, 50:15
**LEVIN** [1] - 2:11
**Levine** [28] - 23:3, 23:8, 26:9, 27:10, 27:13, 27:15, 33:13, 35:1, 35:12, 36:11, 36:13, 37:8, 37:19, 37:23, 38:1, 38:20,

39:7, 41:1, 41:25, 48:24, 51:12, 52:17, 57:6, 71:7, 71:12, 71:17, 75:19, 82:25
**LEVINE** [2] - 3:16, 27:5
**LEVINE**......................
.................... [1] - 4:7
**LEWIS** [2] - 2:7, 2:22
**Lewis** [1] - 82:3
**LIAISON** [1] - 1:18
**LIFE** [1] - 2:8
**life** [1] - 17:12
**limit** [1] - 7:5
**limited** [5] - 22:20, 23:1, 25:6, 26:21, 26:22
**LIMITED** [1] - 2:21
**line** [2] - 12:8, 17:20, 66:17
**lines** [1] - 21:9
**LISKOW** [1] - 2:22
**Liskow** [1] - 2:2
**list** [7] - 11:22, 20:6, 20:10, 23:5, 26:1, 32:2, 56:15
**listed** [2] - 33:2, 57:1
**listing** [1] - 21:23
**litigation** [1] - 67:11
**live** [4] - 12:23, 26:14, 26:18, 27:15
**location** [1] - 43:8
**lodging** [1] - 81:20
**logical** [1] - 63:1
**look** [18] - 12:11, 13:6, 13:12, 14:4, 16:3, 18:5, 18:6, 18:15, 22:12, 28:11, 39:2, 42:8, 43:1, 44:25, 47:23, 50:11, 58:3, 78:11
**looked** [3] - 42:25, 55:9
**looking** [16] - 7:18, 11:9, 11:17, 11:19, 14:20, 28:8, 43:11, 43:21, 50:19, 50:20, 59:16, 63:1, 77:17, 83:2, 85:6
**looks** [1] - 83:7
**loss** [2] - 50:9, 50:23
**lost** [1] - 67:11
**Louisiana** [8] - 9:24, 12:24, 27:16, 46:6, 46:8, 46:15, 86:17, 86:17
**LOUISIANA** [2] - 1:2, 1:7
**low** [2] - 14:17, 70:1
**LSU** [2] - 27:19, 47:9

## M

**ma'am** [13] - 33:20, 33:23, 34:24, 42:2, 42:19, 44:10, 45:19, 58:18, 58:25, 61:14, 62:12, 62:15, 63:3
**MAGISTRATE** [1] - 1:14
**magnitude** [5] - 55:5, 55:6, 62:5, 66:20
**mail** [8] - 8:25, 9:10, 9:15, 10:25, 16:6, 16:9, 23:2, 28:7, 32:6, 37:4
**mails** [3] - 40:20, 40:25, 41:13
**major** [2] - 42:13, 69:13
**manage** [4] - 20:25, 53:15, 60:24, 61:6
**management** [10] - 41:3, 41:10, 46:12, 46:18, 46:19, 46:20, 59:7, 59:23, 62:11, 70:3
**manager** [2] - 46:13, 47:1
**managing** [1] - 69:20
**mandate** [1] - 84:13
**mandating** [1] - 86:4
**manner** [2] - 30:8, 70:20
**manufacture** [1] - 66:21
**Maria** [4] - 28:1, 31:21, 62:13, 71:18
**Mark** [1] - 69:21
**mark** [5] - 15:5, 15:12, 16:9, 16:10, 26:2
**marked** [2] - 16:14, 37:7
**materials** [8] - 40:15, 40:17, 40:18, 40:22, 40:24, 41:12, 41:13
**Matt** [1] - 6:13
**matter** [21] - 18:8, 23:23, 24:4, 24:16, 24:18, 25:18, 28:14, 33:10, 38:18, 45:9, 64:22, 70:6, 72:24, 75:7, 75:12, 83:6, 86:19
**matters** [4] - 21:23, 24:25, 29:1, 48:8
**MATTHEW** [1] - 3:7
**matures** [1] - 66:2
**maturity** [1] - 64:25
**MBA** [4] - 46:8, 46:10,

46:17, 47:9
**MCKINNEY** [1] - 3:7
**McMoRan** [2] - 36:16, 36:23
**MDL-2179** [1] - 6:7
**mean** [5] - 11:13, 56:20, 65:9, 79:14, 84:23
**meaning** [2] - 48:16, 82:23
**measurable** [1] - 55:1
**measure** [3] - 21:25, 48:17, 52:20
**measured** [4] - 12:5, 12:6, 52:21, 60:13
**measuring** [1] - 52:14
**MECHANICAL** [1] - 3:24
**media** [1] - 46:23
**meet** [6] - 12:15, 60:11, 75:18, 82:24, 83:8, 83:15
**meeting** [19] - 19:2, 41:5, 41:14, 49:12, 49:17, 49:24, 53:2, 54:16, 69:11, 69:12, 69:15, 74:6, 76:10, 77:19, 79:1, 83:9
**Meeting** [2] - 32:20, 74:8
**meetings** [8] - 14:10, 15:2, 22:8, 24:17, 24:19, 24:21, 40:14, 40:21
**member** [1] - 46:15
**members** [1] - 67:12
**memos** [2] - 40:20, 41:14
**mentioned** [4] - 14:7, 18:21, 60:9, 79:24
**merely** [1] - 7:4
**MERIT** [1] - 3:21
**Merit** [2] - 86:16, 86:22
**met** [4] - 19:3, 28:1, 62:23, 62:24
**Metairie** [1] - 27:16
**methodology** [1] - 50:24
**meticulously** [1] - 23:19
**metrics** [6] - 39:3, 39:9, 44:3, 54:9, 55:2, 71:23
**Mexico** [1] - 6:8
**MEXICO** [1] - 1:5
**might** [2] - 12:21, 31:11
**million** [7] - 9:2, 10:25, 11:12, 11:15,

14:5, 28:3, 31:9,
36:18, 36:22, 42:24,
43:3, 43:5, 59:6,
59:21, 61:2, 64:1
**mind** [1] - 68:12
**mine** [1] - 36:17
**minute** [3] - 21:7,
23:7, 24:23
**minutes** [4] - 68:23,
76:19, 78:19
**MITCHELL** [1] - 2:11
**mix** [3] - 18:7, 18:8
**model** [1] - 21:11
**modeling** [4] - 48:11,
48:12, 51:5, 54:10
**models** [1] - 52:19
**Monday** [5] - 31:9,
31:21, 75:1, 83:12,
86:4
**money** [7] - 24:6,
31:11, 44:24, 68:7,
71:14, 72:4, 80:4
**month** [23] - 15:7,
25:23, 32:1, 32:16,
32:17, 42:24, 43:5,
50:11, 50:14, 50:18,
50:25, 61:2, 66:22,
73:11, 76:6, 77:12,
77:14, 82:15, 84:17,
85:3, 85:8, 86:2
**monthly** [1] - 66:23
**months** [6] - 14:5,
21:22, 48:1, 66:19,
76:7
**moratorium** [1] -
21:22
**Morgan** [2] - 31:8,
32:10
**morning** [10] - 6:11,
6:14, 6:19, 36:11,
36:12, 55:18, 55:19,
63:22, 79:16, 80:15
**MOSKOWITZ** [53] -
3:10, 6:11, 7:12,
7:15, 15:15, 16:12,
16:15, 16:17, 16:23,
17:2, 20:1, 26:5,
26:10, 30:25, 31:14,
31:16, 35:14, 35:21,
36:8, 36:10, 37:24,
37:25, 39:5, 39:6,
41:21, 49:20, 51:20,
51:24, 52:6, 53:10,
54:5, 55:15, 55:17,
59:3, 61:9, 63:14,
63:19, 69:6, 76:17,
77:1, 77:7, 77:10,
77:22, 78:18, 79:10,
79:12, 80:18, 81:12,
84:9, 84:22, 85:12,

85:20, 86:8
**Moskowitz** [17] - 6:12,
7:11, 16:11, 20:2,
21:6, 32:19, 33:14,
35:1, 35:13, 36:12,
55:19, 60:9, 66:17,
76:15, 76:24, 78:16,
80:2
**MOSKOWITZ............**
**.....** [2] - 4:9, 4:13
**MOSKOWITZ............**
**........................** [4] -
4:5, 4:16, 4:20, 5:3
**most** [1] - 43:18
**motion** [10] - 33:24,
37:13, 37:17, 38:2,
48:13, 52:9, 52:13,
52:18, 56:6, 56:10
**Motor** [1] - 21:8
**move** [1] - 33:9
**moves** [2] - 17:17,
18:2
**moving** [2] - 59:15,
62:11
**MR** [127] - 4:5, 4:6,
4:8, 4:9, 4:12, 4:13,
4:16, 4:17, 4:18,
4:20, 4:22, 4:24,
4:25, 5:2, 5:3, 6:11,
6:15, 6:17, 7:12,
7:15, 15:15, 16:12,
16:15, 16:17, 16:23,
17:2, 20:1, 20:4,
25:3, 26:5, 26:9,
26:10, 27:12, 30:25,
31:1, 31:2, 31:14,
31:15, 31:16, 31:18,
33:18, 34:9, 34:25,
35:11, 35:14, 35:21,
36:8, 36:10, 37:24,
37:25, 39:5, 39:6,
41:21, 41:24, 44:12,
44:16, 45:12, 45:14,
46:3, 49:14, 49:20,
49:22, 49:23, 51:20,
51:22, 51:24, 52:2,
52:6, 52:10, 53:10,
53:24, 54:2, 54:4,
54:5, 54:11, 55:13,
55:15, 55:17, 59:3,
61:9, 63:11, 63:14,
63:19, 64:11, 65:11,
65:13, 65:15, 65:17,
69:6, 76:17, 77:1,
77:3, 77:7, 77:10,
77:22, 77:24, 78:1,
78:15, 78:18, 78:25,
79:3, 79:5, 79:10,
79:12, 80:18, 80:22,
80:24, 81:6, 81:12,

81:20, 81:23, 81:24,
82:1, 82:3, 82:9,
82:16, 83:11, 83:15,
83:23, 84:2, 84:9,
84:11, 84:22, 85:12,
85:14, 85:20, 86:8
**multi** [3] - 9:8, 59:5,
59:22
**multi-billion-dollar** [3]
- 9:8, 59:5, 59:22
**multiple** [2] - 9:20,
14:11
**must** [2] - 65:14,
75:12
**mutual** [1] - 52:13
**mystery** [1] - 23:23

# N

**name** [6] - 27:8, 27:10,
27:14, 27:15, 45:23,
46:4
**nature** [1] - 75:12
**nearly** [1] - 85:9
**Neath** [1] - 79:12
**NEATH** [4] - 3:3,
78:25, 79:3, 79:5
**necessary** [1] - 74:17
**need** [12] - 9:16,
10:12, 11:25, 12:1,
12:25, 13:2, 18:13,
25:13, 39:4, 44:10,
78:18, 79:19
**needed** [5] - 15:19,
16:25, 28:4, 33:7,
33:8
**needless** [1] - 21:22
**needs** [3] - 8:4, 31:3,
80:4
**negotiated** [1] - 21:14
**Netterville** [1] - 9:23
**never** [4] - 23:25,
71:2, 81:15
**NEW** [6] - 1:7, 1:23,
2:9, 2:16, 2:24, 3:22
**new** [2] - 15:9, 48:4
**next** [6] - 40:1, 41:6,
56:15, 58:2, 73:18,
83:21
**Nickel** [1] - 6:13
**NICKEL** [1] - 3:7
**nine** [1] - 51:1
**NO** [1] - 1:7
**nonetheless** [1] - 13:8
**noon** [4] - 78:17,
78:15, 78:18, 78:25,
78:20, 78:22
**normal** [1] - 44:6,
48:16, 59:10
**north** [1] - 50:13

**NORTH** [3] - 2:19,
2:21, 2:22
**nose** [1] - 9:2
**notations** [1] - 15:23
**notes** [3] - 44:3, 66:8,
71:24
**nothing** [7] - 8:17,
21:16, 25:11, 27:2,
45:17, 63:11, 63:15
**notice** [5] - 33:8,
35:18, 47:24, 56:25,
76:22
**noticed** [2] - 35:16,
65:16
**notified** [1] - 26:12
**notify** [3] - 81:16,
82:10, 84:6
**notifying** [1] - 75:14
**November** [2] - 24:19,
24:20
**Number** [2] - 16:11,
69:4
**number** [12] - 12:15,
50:14, 76:16, 77:13,
77:18, 78:8, 80:6,
81:9, 81:10, 82:13,
82:17
**numbered** [1] - 86:19
**numbers** [2] - 11:12,
57:2
**numerous** [1] - 27:20

# O

**o'clock** [3] - 80:13,
82:9, 84:3
**O'KEEFE** [1] - 1:23
**oath** [3] - 27:7, 37:10,
45:22
**object** [3] - 26:19,
30:2, 30:23
**objection** [15] - 15:13,
26:4, 26:5, 30:15,
30:25, 31:14, 31:15,
35:15, 36:6, 49:20,
51:20, 52:6, 63:14,
76:21, 76:25
**objections** [2] - 85:24,
86:1
**obligated** [3] - 24:7,
31:4, 31:5
**obligates** [2] - 85:7
**obligation** [6] - 24:9,
65:8, 67:19, 84:18,
85:2, 85:16
**obligations** [5] -
10:21, 19:24, 24:12,
85:23
**observation** [1] -

20:14
**observe** [1] - 18:23
**obstacle** [1] - 83:13
**obtained** [1] - 29:20
**obviously** [2] - 11:22,
63:20
**occasions** [1] - 29:23
**occur** [1] - 75:1
**occurred** [1] - 79:8
**October** [4] - 43:3,
73:11, 77:14, 82:14
**ODOM** [1] - 3:16
**Odom** [1] - 42:9
**OF** [4] - 1:2, 1:5, 1:13,
3:17
**offended** [1] - 81:15
**offer** [1] - 26:1
**offered** [1] - 65:21
**offers** [1] - 65:21
**Office** [9] - 20:8,
37:12, 37:16, 41:12,
42:15, 57:5, 70:2,
70:24
**office** [6] - 13:1,
48:20, 81:16, 82:6,
84:7
**office's** [1] - 83:11
**OFFICER** [2] - 3:16,
3:16
**officer** [4] - 25:3,
27:23, 35:25, 48:22
**Officer** [1] - 71:8
**officers** [1] - 43:8
**Official** [2] - 86:17,
86:22
**OFFICIAL** [1] - 3:20
**oftentimes** [1] - 17:17
**OIL** [2] - 1:4, 1:5
**oil** [1] - 6:7
**Oil** [1] - 6:8
**ON** [1] - 1:5
**once** [2] - 17:19, 55:10
**one** [39] - 12:7, 17:2,
20:10, 20:14, 21:20,
21:24, 22:24, 23:5,
23:22, 37:24, 41:5,
43:17, 54:17, 56:1,
66:2, 69:22, 73:10,
76:5, 76:6, 76:16,
77:4, 77:12, 77:13,
78:8, 79:7, 80:16,
80:21, 81:1, 81:9,
81:10, 82:13, 82:17,
84:13, 84:15, 84:16,
85:6, 85:7, 85:21
**ONE** [1] - 2:23
**ongoing** [1] - 55:2
**onset** [1] - 21:3
**open** [4] - 24:15,
43:13, 64:14, 70:19

opening [1] - 8:15
operate [3] - 9:9, 9:12, 21:2
operated [1] - 70:19
operating [7] - 10:10, 12:19, 25:10, 44:7, 69:25, 72:24, 80:4
operation [19] - 7:9, 10:13, 11:17, 12:8, 13:25, 14:21, 18:1, 20:16, 36:18, 48:8, 57:15, 59:5, 59:22, 59:23, 66:21, 68:5, 71:9, 75:3, 75:9
operational [3] - 33:11, 41:8, 46:19
operations [12] - 8:17, 12:3, 13:13, 41:5, 43:20, 46:12, 46:13, 46:18, 47:1, 61:3, 70:22
opportunity [5] - 35:22, 36:1, 69:16, 70:21, 76:22
opt [2] - 80:16
optimization [2] - 60:11, 60:12
option [22] - 76:16, 77:4, 77:10, 77:13, 77:18, 79:7, 79:21, 80:5, 80:16, 80:17, 80:20, 80:21, 81:9, 81:10, 82:10, 82:13, 82:18, 84:15, 84:16
options [2] - 76:14, 78:2
orally [2] - 40:16, 82:4
order [16] - 10:24, 34:13, 62:2, 73:14, 80:13, 80:17, 80:20, 81:1, 81:6, 81:9, 82:12, 84:15, 85:21, 86:2, 86:4, 86:7
ORDER [1] - 6:4
Order [3] - 6:20, 20:17, 75:11
ordered [2] - 72:9, 74:24
ordering [3] - 85:22, 85:25, 86:1
orderly [1] - 45:5
orders [6] - 54:24, 58:13, 58:14, 61:21, 84:12, 85:6
Orders [1] - 20:25
organization [6] - 9:18, 9:20, 10:9, 10:10, 16:5, 67:2
organizational [1] - 62:6

organizations [2] - 11:17, 16:5
ORLEANS [6] - 1:7, 1:23, 2:9, 2:16, 2:24, 3:22
otherwise [2] - 10:21, 19:23
ourselves [2] - 19:15, 79:25
Ourso [1] - 46:16
out-of-pocket [1] - 12:20
outright [1] - 67:16
outset [3] - 14:7, 26:10, 53:12
outside [2] - 12:23, 86:2
overall [4] - 20:14, 47:22, 47:24, 48:10
overly [1] - 10:6
overrule [1] - 36:5
overruled [2] - 31:17, 52:7
oversees [1] - 19:16
oversight [4] - 20:24, 46:20, 56:22, 70:11
owe [3] - 25:14, 25:23, 44:24
owed [1] - 68:6
own [3] - 26:17, 67:22, 68:17

**P**

p.m [3] - 75:13, 81:22, 86:10
page [15] - 8:25, 9:10, 9:15, 10:25, 16:6, 16:9, 20:10, 21:14, 23:2, 37:4, 39:2, 39:7, 39:8, 58:2, 58:3
PAGE [2] - 4:2, 5:9
Page [2] - 33:19, 34:17
pages [1] - 74:12
paid [5] - 31:10, 44:24, 45:3, 45:4, 65:8
painted [1] - 45:1
PAN [1] - 2:8
panel [3] - 22:8, 74:6, 77:20
Panel [4] - 70:9, 70:16, 74:4, 74:8
PAPANTONIO [1] - 2:11
parcel [1] - 56:8
PARK [1] - 3:4
part [4] - 20:7, 35:1,

41:9, 56:7
participation [1] - 67:12
particular [2] - 13:18, 18:9
parties [25] - 21:15, 22:5, 29:13, 35:10, 43:9, 44:18, 49:15, 49:24, 51:8, 53:2, 60:16, 62:20, 72:22, 73:11, 74:2, 74:10, 74:22, 75:4, 75:25, 76:4, 76:14, 78:10, 80:7, 80:16, 82:22
party [4] - 62:7, 74:10, 77:19, 81:1
passing [1] - 20:9
past [3] - 13:4, 16:2, 61:20
Pat [2] - 20:4, 70:4
patently [1] - 10:23
patience [1] - 79:3
Patrick [1] - 6:17
PATRICK [1] - 3:15
PAUL [1] - 2:7
Paul [1] - 6:16
Paulo [1] - 47:10
pay [9] - 6:22, 11:10, 24:7, 31:5, 31:12, 31:25, 32:1, 32:11, 65:8
payables [1] - 31:9
paying [2] - 34:8, 67:18
payment [3] - 31:4, 32:7, 32:8
payment's [1] - 31:25
PENSACOLA [1] - 2:13
people [14] - 12:15, 20:16, 22:12, 22:21, 24:10, 31:6, 41:4, 43:18, 44:24, 45:3, 65:8, 67:23, 75:9, 82:18
PEPPER [1] - 3:20
Pepper [3] - 86:16, 86:20, 86:21
per [9] - 32:16, 35:3, 36:19, 50:14, 50:18, 50:25
perceive [1] - 84:13
perceives [1] - 73:3
percent [1] - 48:1
perceptive [1] - 44:16
performance [9] - 47:22, 48:10, 50:6, 50:17, 52:20, 54:20, 54:25, 55:1
performed [1] - 23:18,

37:13, 37:17
performing [3] - 48:18, 48:19, 50:25
perhaps [2] - 56:18, 75:15
period [6] - 9:2, 13:3, 18:11, 21:15, 74:20, 80:11
periods [1] - 43:14
permission [2] - 22:18, 26:3
permit [1] - 24:25
permitted [2] - 67:20, 85:16
person [8] - 12:5, 12:18, 23:19, 67:3, 70:8, 70:16, 74:3, 83:20
personal [1] - 59:13
personnel [1] - 17:15
perspective [1] - 69:11
phase [1] - 17:22, 18:3, 18:16, 18:20, 19:5, 19:8, 55:5
Phase [2] - 80:7, 80:9
pipeline [1] - 54:9
pivot [1] - 16:1
place [5] - 19:17, 50:4, 54:24, 59:12, 59:24
placeholder [1] - 62:1
Plaintiffs [1] - 84:10
plaintiffs [2] - 23:12, 29:6
plaintiffs' [3] - 20:21, 28:21, 64:21
PLAINTIFFS' [1] - 1:18
plan [1] - 70:3
planning [1] - 37:1
plans [2] - 66:23
plateauing [1] - 17:25
platform [1] - 60:15
played [1] - 47:11
pleasure [1] - 14:9
plus [5] - 16:21, 73:10, 76:5, 76:6, 77:14
pocket [1] - 12:20
point [26] - 11:25, 15:16, 18:4, 18:22, 19:4, 22:24, 35:16, 38:16, 39:3, 58:6, 59:5, 59:9, 59:24, 60:1, 61:18, 62:9, 62:16, 63:21, 67:3, 67:5, 70:19, 79:20, 80:24, 80:25, 84:22, 85:10
pointed [3] - 14:18, 70:6, 72:5
points [3] - 7:19,

70:15, 70:23
policies [2] - 21:17, 66:23
policy [4] - 24:16, 30:11, 50:21, 62:5
pool [1] - 48:2
portal [1] - 35:8
position [2] - 7:20, 8:11, 36:25, 65:20, 68:13, 79:20
possesses [1] - 39:12
post [1] - 77:15
post-third [1] - 77:15
Postlethwaite [1] - 9:23
postured [1] - 66:8
power [1] - 66:9
POYDRAS [3] - 2:8, 2:24, 3:22
practical [1] - 44:23
practice [1] - 72:18
precise [3] - 11:12, 22:19, 39:18
precisely [2] - 49:10, 62:21
prefer [2] - 76:11, 80:21
preferred [1] - 75:17
prejudicial [2] - 36:3, 64:7
preparation [1] - 33:15
prepare [9] - 9:9, 9:24, 29:12, 29:14, 32:1, 32:9, 34:14, 35:22, 42:5
prepared [8] - 9:17, 26:13, 26:18, 28:6, 36:16, 36:20, 43:23, 73:5
preparing [2] - 51:19, 80:7
present [8] - 21:12, 24:11, 29:14, 31:20, 36:23, 55:23, 56:6, 76:23
presentable [1] - 10:15
presentation [6] - 7:6, 7:17, 17:5, 26:12, 26:13, 27:13
presented [8] - 8:24, 26:22, 32:19, 32:24, 37:3, 37:7, 52:23, 55:21
presently [1] - 22:7
preserve [1] - 79:7
previous [2] - 8:12, 50:11
previously [2] - 10:4,

66:6
**price** [1] - 21:12
**PricewaterhouseCo**
  **opers** [1] - 9:22
**primary** [2] - 34:19,
  34:20
**principal** [1] - 13:10
**pristine** [1] - 21:25
**problem** [9] - 25:2,
  31:20, 44:19, 44:23,
  79:2, 80:2, 80:5,
  83:3
**problems** [1] - 82:20
**procedure** [3] - 27:25,
  30:10, 68:9
**procedures** [1] - 66:9
**proceeding** [1] - 63:15
**proceedings** [2] -
  86:10, 86:19
**PROCEEDINGS** [3] -
  1:13, 3:24, 6:1
**process** [28] - 12:10,
  12:14, 19:8, 19:16,
  21:18, 25:11, 29:10,
  29:15, 29:21, 31:23,
  33:8, 33:11, 33:25,
  35:25, 41:4, 42:20,
  48:20, 50:20, 58:8,
  60:12, 66:2, 66:6,
  67:17, 73:15, 76:10,
  84:24, 85:24, 86:1
**processes** [7] - 17:13,
  40:3, 40:5, 41:15,
  47:12, 60:8, 60:12
**PROCESSES** [1] -
  3:17
**PROCTOR** [1] - 2:11
**produce** [2] - 48:16,
  67:2
**produced** [2] - 38:4,
  38:9
**PRODUCED** [1] - 3:25
**producing** [2] - 50:13,
  51:13
**product** [1] - 21:25
**production** [9] -
  17:22, 17:24, 17:25,
  18:16, 18:20, 19:4,
  19:8, 21:9, 62:6
**PRODUCTION** [1] -
  2:20
**productive** [1] - 56:5
**productivity** [11] -
  12:4, 12:6, 12:14,
  14:17, 18:25, 21:9,
  22:1, 47:25, 48:2,
  70:1, 71:21
**PRODUCTS** [1] - 2:22
**professionally** [5] -
  9:17, 10:13, 11:16,

13:25, 22:25
**program** [38] - 7:2,
  7:7, 7:9, 12:22,
  17:16, 17:18, 21:3,
  25:17, 27:22, 46:17,
  47:5, 47:9, 47:11,
  49:4, 54:9, 55:5,
  55:6, 58:11, 59:9,
  59:16, 59:24, 60:1,
  60:2, 62:4, 62:5,
  62:9, 63:4, 66:11,
  66:12, 66:15, 67:6,
  67:12, 67:23, 69:18,
  70:13, 70:24, 72:14
**Program** [2] - 9:8,
  69:14
**programs** [1] - 47:4
**progress** [1] - 66:14
**progressed** [1] - 25:8
**project** [1] - 12:13
**projected** [4] - 12:1,
  12:16, 42:5, 72:3
**projecting** [1] - 11:18
**projections** [2] -
  34:23, 35:2
**promote** [1] - 45:9
**promptly** [2] - 10:19,
  19:22
**proper** [2] - 10:18,
  13:12
**properly** [3] - 16:6,
  64:5, 79:22
**proposed** [15] - 6:22,
  10:11, 20:13, 32:7,
  71:3, 72:10, 72:16,
  73:17, 73:19, 73:21,
  73:23, 74:12, 75:3,
  75:23
**proposing** [1] - 11:19
**provide** [8] - 24:5,
  44:18, 56:6, 62:20,
  63:7, 64:14, 68:16,
  73:20
**provided** [20] - 14:3,
  14:23, 29:3, 29:4,
  31:24, 34:22, 35:6,
  35:7, 35:17, 40:8,
  40:12, 40:13, 52:22,
  53:1, 53:23, 54:8,
  55:24, 58:4, 63:24,
  65:23
**provides** [2] - 69:18,
  72:21
**providing** [2] - 23:1,
  64:15
**provisions** [4] - 33:14,
  67:14, 70:7
**PSC** [3] - 6:16, 65:22,
  86:6
**pull** [1] - 20:12

**punish** [1] - 66:11
**punitive** [1] - 55:2
**purportedly** [1] -
  53:15
**purposes** [4] - 16:8,
  44:13, 77:7, 80:19
**pursuant** [6] - 10:7,
  20:16, 20:24, 24:9,
  41:11, 74:4
**pursuing** [1] - 53:24
**put** [4] - 12:13, 23:3,
  32:5, 75:23
**puts** [1] - 25:17
**putting** [1] - 38:1
**PwC** [1] - 9:22

## Q

**quarter** [67] - 6:22,
  7:21, 7:24, 8:2, 8:5,
  8:11, 8:16, 8:22,
  11:10, 11:11, 11:14,
  11:16, 13:9, 13:12,
  13:17, 13:19, 13:20,
  17:6, 19:5, 26:23,
  29:15, 29:16, 30:7,
  30:21, 30:23, 32:13,
  32:18, 34:15, 42:6,
  61:20, 71:8, 71:10,
  71:13, 71:22, 72:7,
  72:10, 72:17, 72:25,
  73:10, 73:17, 74:20,
  74:25, 75:5, 76:4,
  76:5, 76:6, 76:8,
  76:10, 77:11, 77:14,
  77:15, 77:19, 78:5,
  78:7, 78:8, 78:9,
  82:14, 82:15, 84:14,
  84:25, 85:7, 85:8,
  85:25, 86:5
**quarterly** [12] - 17:4,
  28:5, 33:15, 42:5,
  44:6, 44:8, 58:16,
  62:2, 70:25, 72:24,
  75:4, 78:3
**quarters** [1] - 13:5
**questioned** [1] - 23:25
**questioning** [1] - 21:6
**questions** [22] - 10:20,
  13:13, 14:17, 14:22,
  19:9, 19:23, 25:4,
  33:21, 35:11, 36:7,
  41:21, 41:24, 42:1,
  49:19, 49:20, 51:12,
  51:17, 55:13, 61:10,
  62:15, 78:14, 79:18
**quick** [1] - 50:9
**Quicken** [1] - 9:14
**quickly** [2] - 18:11,

18:13
**quite** [2] - 18:11,
  59:12

## R

**racing** [1] - 18:16
**RAFFERTY** [1] - 2:11
**raise** [6] - 26:25,
  45:15, 70:21, 80:24,
  82:16, 85:24
**raised** [5] - 8:10, 17:3,
  54:2, 70:17, 71:5
**raises** [1] - 72:13
**raising** [2] - 13:13,
  17:10
**ramp** [2] - 17:17,
  18:13, 55:5
**ramp-up** [2] - 17:17,
  55:5
**rapid** [1] - 62:4
**rate** [3] - 23:19, 48:3,
  48:4
**rates** [1] - 12:4
**rather** [4] - 48:11,
  59:1, 68:12, 68:16
**ratings** [1] - 21:10
**rational** [1] - 19:13
**RE** [1] - 1:4
**re** [1] - 6:7
**reached** [1] - 62:9
**read** [2] - 43:25, 62:14
**readily** [3] - 10:5,
  19:21, 57:6
**ready** [2] - 64:12,
  83:15
**real** [5] - 50:7, 50:9,
  51:4, 57:3, 79:17
**real-time** [3] - 50:7,
  51:4, 57:3
**reality** [1] - 22:16
**really** [4] - 18:19, 19:7,
  21:2, 59:14
**REALTIME** [1] - 3:21
**Realtime** [2] - 86:16,
  86:21
**reason** [4] - 74:19,
  84:16, 85:15, 85:18
**reasonable** [11] - 16:7,
  19:13, 19:14, 19:17,
  45:6, 68:2, 71:19,
  72:22, 73:14, 76:1
**reasonably** [3] - 8:6,
  8:20, 13:24
**reasons** [1] - 69:22
**rebuffed** [1] - 61:7
**rebut** [1] - 36:2
**receive** [3] - 15:2,
  15:21, 19:22

**received** [11] - 8:8,
  14:25, 15:17, 15:23,
  15:25, 16:14, 19:3,
  28:20, 32:21, 64:4,
  73:24
**recent** [1] - 48:1
**recently** [1] - 58:8
**receptive** [3] - 24:16,
  24:17, 65:6
**recess** [3] - 68:25,
  76:17, 78:24
**recognizing** [1] - 83:4
**recommendations** [1]
  - 43:2
**Record** [1] - 66:4
**record** [15] - 6:10,
  16:8, 16:10, 20:4,
  20:19, 24:18, 27:9,
  44:13, 45:12, 45:24,
  64:8, 76:20, 81:19,
  82:2, 86:18
**RECORDED** [1] - 3:24
**recording** [1] - 41:10
**records** [2] - 20:7,
  39:15
**red** [2] - 16:14, 16:21
**reduction** [1] - 52:24
**referring** [2] - 53:3,
  61:23
**reflect** [1] - 24:18
**reflected** [1] - 79:16
**refrained** [1] - 65:15
**refusal** [3] - 67:15,
  67:16, 72:25
**refused** [1] - 28:22
**refusing** [1] - 68:13
**regard** [17] - 6:25, 7:1,
  8:10, 25:8, 28:25,
  31:4, 33:5, 36:22,
  37:2, 37:20, 42:12,
  42:16, 51:6, 60:22,
  72:13, 85:22, 85:24
**regarding** [9] - 29:1,
  35:3, 52:9, 54:9,
  69:17, 70:11, 70:17,
  73:2, 76:9
**regardless** [1] - 83:24
**regards** [5] - 50:6,
  54:7, 54:8, 55:4,
  56:17
**Registered** [1] - 86:16
**REGISTERED** [1] -
  3:21
**registered** [1] - 86:22
**regret** [1] - 69:8
**regularly** [1] - 12:23
**relate** [1] - 16:25
**related** [4] - 14:15,
  14:21, 56:9, 57:18
**relates** [1] - 8:12

RELATES [1] - 1:9
relative [5] - 6:21,
33:4, 61:23, 62:13
relevant [4] - 15:9,
20:8, 33:15, 59:14
relief [2] - 68:17,
85:18
rely [1] - 67:13
remainder [1] - 84:15
remaining [4] - 38:1,
74:8, 76:7, 77:20
remains [1] - 63:21
remarks [1] - 14:8
remember [1] - 12:7
remind [1] - 37:10
renew [2] - 35:15,
63:14
renewed [1] - 62:2
renews [1] - 76:21
rental [1] - 12:21
rep [3] - 50:14, 50:18,
50:25
repercussions [1] -
13:22
replied [1] - 70:5
reply [1] - 74:14
report [4] - 20:21,
51:19, 52:3, 54:12
Reporter [7] - 86:16,
86:16, 86:17, 86:21,
86:22, 86:22
REPORTER [3] - 3:20,
3:21, 3:21
REPORTER'S [1] -
86:14
reporting [1] - 47:12
REPORTING [1] - 3:17
reports [1] - 54:9
representations [1] -
61:5
representatives [1] -
69:13
request [29] - 8:15,
16:4, 19:3, 19:11,
23:12, 27:25, 28:4,
28:20, 29:19, 29:25,
31:20, 35:21, 44:4,
44:9, 53:17, 63:25,
64:1, 64:2, 65:22,
69:12, 71:22, 71:25,
72:2, 73:10, 74:3,
74:13, 75:22, 77:11,
79:21
requested [9] - 8:7,
29:21, 32:21, 43:9,
51:13, 52:9, 66:6,
69:21, 70:15
Requesting [1] - 53:4
requesting [3] - 7:20,
52:5, 78:11

requests [7] - 14:21,
15:6, 16:24, 44:6,
72:8, 72:15, 83:2
require [2] - 74:1,
82:18
required [4] - 12:15,
54:20, 71:9, 71:13
requires [3] - 12:16,
16:4, 73:14
resolution [2] - 70:14,
74:9
resolve [2] - 22:9,
70:10
resolved [7] - 22:10,
22:14, 22:15
respect [1] - 68:18
respectfully [5] -
26:19, 54:5, 59:19,
79:21, 85:1
responded [2] - 23:10,
23:12, 71:17
responds [1] - 71:5
Response [1] - 53:4
response [6] - 17:3,
32:8, 54:7, 71:5,
71:18, 72:6
responses [1] - 29:3
responsibilities [1] -
70:11
responsibility [3] -
20:24, 61:21, 63:4
rest [1] - 25:9
resubmission [2] -
7:20, 10:17
resubmit [3] - 7:23,
25:12, 71:22
resubmitted [7] - 8:1,
8:15, 10:5, 10:17,
44:1, 44:2, 53:18
resulted [2] - 19:1,
19:3
results [5] - 13:3,
13:6, 51:10, 66:14,
67:2
review [4] - 10:18,
33:21, 73:19, 78:10
reviewed [1] - 32:4
reviewer [1] - 50:13
reviews [4] - 50:14,
50:18, 50:24, 56:3
revised [1] - 8:15
revisions [3] - 73:20,
73:23, 74:12
Rig [1] - 6:8
RIG [1] - 1:5
rights [2] - 32:6, 67:11
rise [2] - 69:1, 78:23
RMR [2] - 3:20, 86:21
Robert [1] - 71:7
robust [1] - 48:11

role [6] - 21:4, 44:23,
44:25, 45:2, 46:25,
47:11
roll [1] - 17:17
roll-out [1] - 17:17
rolling [1] - 48:5
room [1] - 67:4
ROOM [1] - 3:22
Rouge [2] - 46:5,
46:23
route [1] - 81:8
routine [1] - 72:25
routinely [1] - 72:7
Roy [6] - 6:15, 65:12,
68:21, 77:25, 85:5,
85:13
ROY [16] - 1:18, 1:19,
6:15, 65:11, 65:13,
65:15, 65:17, 78:1,
78:15, 80:22, 80:24,
81:6, 81:20, 81:23,
84:11, 85:14
ROY..........................
..................... [3] - 4:18,
4:22, 5:2
RULE [1] - 1:13
Rule [1] - 6:21
ruling [1] - 81:11
run [10] - 7:7, 9:18,
10:8, 10:13, 11:16,
13:19, 13:25, 16:4,
20:25, 21:9
running [9] - 7:2,
18:10, 43:5, 43:16,
59:6, 59:18, 61:2,
69:18, 78:13
runoff [1] - 18:2
runs [2] - 13:20, 74:20

## S

s/Cathy [1] - 86:20
SALLY [1] - 1:13
sandbagged [1] -
35:19
Sao [1] - 47:10
sat [2] - 15:2, 52:22
Saturday [1] - 43:14
saw [1] - 80:6
schedule [6] - 74:21,
75:15, 76:9, 80:6,
83:5, 83:7
scheduled [1] - 22:7
schedules [1] - 21:9
scope [1] - 25:7
seat [1] - 69:2
second [7] - 7:25,
12:4, 13:9, 24:5,
32:13, 32:18, 35:1,

37:24, 39:7, 39:8,
56:1, 58:17, 80:5
section [3] - 33:18,
46:17, 66:3
Section [4] - 8:19,
70:8, 72:20, 74:4
security [3] - 43:4,
43:8
see [18] - 8:1, 8:4,
10:4, 11:2, 13:2,
13:7, 15:20, 18:24,
33:13, 33:16, 35:4,
39:9, 42:21, 75:8,
78:22, 80:10, 81:18,
83:9
seeking [2] - 15:10,
63:7
select [2] - 77:4, 80:20
self [1] - 68:16
self-help [1] - 68:16
send [4] - 23:21, 32:6,
32:7, 32:10
sending [1] - 72:16
sense [1] - 60:15
sent [3] - 32:22, 71:8,
72:3
separate [6] - 12:19,
14:19, 84:12, 84:14,
84:18, 85:10
separates [1] - 85:18
September [9] -
71:11, 74:7, 74:13,
74:14, 74:18, 74:20,
77:21, 80:9, 80:10
serious [3] - 24:4,
25:18, 72:13
service [1] - 23:18
set [5] - 13:18, 21:5,
27:25, 49:17, 76:13
settlement [10] -
12:22, 27:21, 66:10,
67:12, 67:14, 67:19,
68:19, 70:12, 70:13,
85:17
Settlement [17] - 8:19,
9:8, 10:7, 10:21,
21:14, 22:4, 22:8,
22:10, 28:2, 54:21,
66:3, 68:9, 69:14,
70:7, 72:20, 74:5,
85:3
seven [2] - 29:17,
50:24
several [2] - 12:24,
79:16
shall [5] - 74:8, 74:11,
74:15, 75:3
share [1] - 48:21
shared [2] - 49:15,
51:8

SharePoint [4] - 32:5,
49:13, 53:1, 54:15
SHAW [1] - 2:15
SHELL [1] - 2:23
shift [2] - 43:17, 43:18
shifts [2] - 41:5, 43:16
short [4] - 18:11,
18:17, 67:1, 67:15
shortcomings [1] -
7:8
shortly [2] - 52:24,
52:25
Show [1] - 6:21
show [3] - 15:19,
53:16, 72:9
SHOW [1] - 1:13
showed [1] - 63:21
shown [1] - 53:17
SHUSHAN [1] - 1:13
shut [2] - 8:16, 24:21
shutting [1] - 75:8
side [2] - 23:14, 54:2
sides [1] - 49:18
significant [8] - 14:17,
18:24, 43:2, 48:6,
50:16, 71:20, 79:17,
79:23
significantly [2] -
48:3, 69:23
signing [1] - 58:8
signs [1] - 32:10
simple [2] - 81:1,
85:15
simpler [1] - 60:17
simplification [1] -
85:5
simplifies [1] - 84:23
simplify [1] - 84:20
simply [11] - 8:25,
9:11, 9:21, 11:9,
14:3, 16:4, 16:6,
35:15, 52:3, 59:19,
68:12
sit [4] - 9:13, 12:9,
40:11, 73:12
sitting [2] - 14:9,
38:24
situation [2] - 13:19,
75:6
six [4] - 11:22, 15:9,
22:8, 29:17
sixth [1] - 13:2
size [4] - 10:10, 16:5,
19:14, 38:16
smaller [1] - 9:7
software [1] - 9:13
sole [1] - 67:5
solemnly [2] - 27:1,
45:16
sometimes [1] - 18:8

**somewhat** [1] - 62:7
**soon** [1] - 75:15
**sophisticated** [1] - 9:21
**sorry** [4] - 34:11, 53:8, 58:21, 76:6
**sorts** [1] - 12:8
**sought** [1] - 29:20
**SOUTH** [2] - 2:12, 3:11
**south** [1] - 50:17
**speaking** [2] - 17:16, 58:19
**specific** [8] - 14:21, 16:24, 50:5, 54:9, 55:1, 71:1, 73:4, 74:12
**specifically** [7] - 11:1, 15:8, 20:13, 46:17, 52:8, 53:3, 70:8
**specificity** [1] - 11:23
**spell** [1] - 45:23
**spend** [2] - 11:19, 50:10
**spending** [1] - 42:7
**spent** [1] - 51:18
**SPILL** [1] - 1:4
**Spill** [1] - 6:7
**SQUARE** [1] - 2:23
**stabilization** [1] - 55:10
**staff** [1] - 37:13
**staffing** [1] - 52:24
**stage** [4] - 17:12, 17:17, 17:25
**staggered** [1] - 43:17
**stamp** [1] - 48:14
**stand** [2] - 7:13, 23:3
**standing** [1] - 55:6
**standpoint** [2] - 83:11, 84:20
**start** [11] - 7:10, 62:4, 66:18, 66:19, 66:20, 72:6, 73:15, 78:9, 83:12, 85:4
**start-up** [4] - 62:4, 66:18, 66:19, 66:20
**started** [6] - 6:24, 18:19, 19:5, 24:19, 47:20, 83:10
**starting** [1] - 20:17
**state** [8] - 27:8, 45:23, 46:4, 55:8, 55:12, 59:10, 64:8, 72:1
**State** [3] - 46:8, 46:16, 86:16
**statement** [1] - 23:15
**statements** [1] - 46:12
**STATES** [2] - 1:1, 1:14
**states** [2] - 71:18,

71:20
**States** [3] - 9:6, 86:17, 86:23
**stating** [1] - 9:1
**status** [5] - 25:4, 31:3, 34:2, 56:16, 61:15
**steady** [2] - 55:8, 55:12
**Steering** [1] - 84:10
**STENOGRAPHY** [1] - 3:24
**step** [1] - 42:1
**STEPHEN** [1] - 1:22
**steps** [5] - 13:14, 13:16, 40:1, 40:4, 60:7
**Sterbcow** [1] - 6:16
**STERBCOW** [2] - 2:7, 2:7
**steroids** [1] - 23:24
**Steve** [1] - 6:15
**still** [5] - 17:20, 21:18, 21:24, 77:20, 82:23
**stood** [1] - 80:25
**stop** [1] - 58:17
**stopped** [1] - 49:8
**straight** [1] - 83:25
**straightforward** [1] - 16:3
**strategic** [1] - 37:1
**STREET** [5] - 2:8, 2:12, 2:16, 2:24, 3:22
**structured** [1] - 23:17
**studies** [16] - 33:24, 37:14, 37:17, 37:20, 38:2, 38:3, 38:8, 38:14, 46:10, 48:13, 52:9, 56:7, 56:10, 57:14
**study** [1] - 33:24
**subject** [3] - 61:17, 71:19, 72:21
**submit** [1] - 9:5, 11:13, 28:14, 29:12, 44:3, 66:15, 67:2, 73:17, 74:11, 75:3, 78:3
**submitted** [8] - 8:13, 15:6, 28:18, 64:5, 64:15, 70:25, 73:5, 76:2
**submitting** [1] - 44:6
**subsidiary** [2] - 20:22, 66:16
**substance** [1] - 85:21
**substantially** [2] - 8:13, 9:9
**subtasks** [1] - 12:2
**suffice** [1] - 62:22

**sufficient** [4] - 24:6, 25:13, 28:7, 28:9
**suggested** [1] - 73:20
**SUITE** [6] - 2:4, 2:8, 2:12, 2:24, 3:7, 3:11
**summaries** [1] - 41:14
**summary** [5] - 8:25, 9:3, 9:10, 10:25, 37:4
**supervised** [1] - 66:15
**Supervised** [2] - 9:8, 69:14
**supervises** [1] - 68:18
**supervisor** [1] - 67:6
**supplemental** [1] - 65:23
**supplies** [1] - 13:1
**support** [4] - 15:19, 63:25, 71:24, 75:21
**supporting** [2] - 75:24, 77:16
**supports** [1] - 65:19
**supposed** [3] - 22:2, 25:21, 64:13
**suspending** [1] - 67:22
**suspension** [1] - 66:5
**swear** [2] - 27:1, 45:16
**sword** [1] - 68:5
**sworn** [2] - 27:6, 45:21
**system** [21] - 22:2, 32:5, 47:22, 48:10, 48:14, 48:15, 48:17, 48:18, 50:6, 50:12, 50:16, 50:17, 50:19, 50:22, 50:24, 55:10, 56:22, 57:22, 60:11, 81:14
**system-wide** [1] - 56:22
**systematic** [1] - 45:5
**systems** [2] - 17:14, 17:20

## T

**table** [4] - 9:13, 52:23, 64:17, 65:7
**talks** [1] - 35:2
**tall** [1] - 34:6
**tangent** [2] - 53:18, 53:22
**task** [2] - 12:2, 54:24
**tasking** [4] - 58:13, 58:14, 61:21, 62:2
**teach** [2] - 44:17, 47:7
**teams** [2] - 52:21, 56:8
**temporary** [1] - 66:5

**ten** [1] - 74:11
**tender** [1] - 15:4
**tens** [1] - 67:10
**terminology** [2] - 48:13, 64:22
**terms** [9] - 9:16, 10:7, 36:14, 47:7, 47:24, 58:19, 60:25, 84:23, 85:3
**test** [1] - 17:14
**testified** [3] - 27:7, 45:22, 59:17
**testifying** [5] - 35:18, 37:10, 49:21, 51:21, 51:24
**testimony** [11] - 24:5, 26:21, 27:1, 36:1, 37:11, 37:14, 41:12, 45:16, 53:14, 54:6, 58:4
**textbook** [1] - 47:8
**THE** [125] - 1:4, 1:5, 1:13, 1:18, 3:13, 4:4, 4:10, 4:14, 4:19, 4:21, 4:23, 5:1, 5:4, 6:7, 6:14, 6:19, 7:14, 15:13, 16:11, 16:13, 16:16, 16:22, 17:1, 19:25, 20:2, 25:2, 26:4, 26:6, 26:20, 26:25, 27:4, 27:8, 27:10, 31:17, 33:13, 33:17, 33:19, 33:20, 33:21, 33:23, 34:11, 34:20, 34:22, 34:24, 35:13, 35:20, 36:5, 41:23, 41:25, 42:2, 42:4, 44:11, 44:15, 45:11, 45:13, 45:15, 45:19, 45:23, 45:25, 49:11, 51:25, 52:7, 52:8, 53:22, 54:1, 54:3, 54:7, 58:17, 58:18, 58:19, 58:21, 58:22, 58:23, 58:24, 58:25, 61:12, 63:10, 63:12, 63:13, 63:18, 64:10, 65:12, 65:14, 65:16, 68:21, 69:1, 69:2, 69:7, 76:24, 77:2, 77:6, 77:9, 77:13, 77:25, 78:5, 78:16, 78:22, 78:23, 79:2, 79:4, 79:6, 79:11, 80:1, 80:21, 80:23, 81:5, 81:8, 81:13, 81:22, 81:25, 82:2, 82:6, 82:11, 82:21, 83:14, 83:17, 83:24, 84:5, 84:10,

84:21, 85:5, 85:13, 85:19, 86:3, 86:9
**thereafter** [2] - 44:17, 74:1
**therefore** [3] - 16:1, 18:14, 79:19
**they've** [2] - 23:21, 23:22
**third** [45] - 6:22, 7:21, 7:23, 8:1, 8:3, 8:4, 8:11, 8:16, 8:22, 11:14, 12:15, 13:12, 13:16, 13:19, 17:6, 19:5, 26:23, 29:16, 30:7, 30:21, 30:23, 32:13, 62:7, 71:8, 71:10, 71:13, 71:22, 72:10, 72:17, 72:25, 73:10, 74:20, 74:25, 76:3, 76:6, 77:11, 77:14, 77:15, 77:18, 82:13, 84:24, 85:7, 85:25, 86:5
**THIS** [1] - 1:9
**THOMAS** [1] - 2:11
**thousand** [1] - 21:14
**thousand-page** [1] - 21:14
**thousands** [3] - 66:22, 67:10, 68:6
**three** [10] - 21:21, 23:2, 31:25, 34:6, 36:17, 48:1, 70:8, 70:16, 74:3, 77:19
**three-page** [1] - 23:2
**three-party** [1] - 77:19
**three-person** [2] - 70:8, 70:16, 74:3
**THROUGH** [1] - 5:12
**throughout** [2] - 22:5, 36:21
**throughput** [1] - 50:21
**throw** [2] - 84:12, 84:19
**Thursday** [1] - 74:17
**tie** [1] - 55:2
**tied** [1] - 36:3
**ties** [1] - 57:20
**tight** [1] - 80:6
**timeline** [1] - 29:18
**timely** [1] - 29:4
**timing** [1] - 25:17
**title** [1] - 46:25
**TO** [3] - 1:9, 1:13, 6:4
**today** [46] - 6:12, 6:20, 7:4, 7:20, 11:25, 13:5, 15:10, 15:18, 16:24, 18:23, 19:18, 20:13, 22:6, 23:22, 24:6, 25:15, 25:20,

25:24, 26:12, 28:18, 29:5, 29:25, 31:3, 31:12, 36:2, 37:10, 37:11, 38:24, 40:11, 44:17, 55:21, 57:9, 58:4, 59:17, 63:20, 63:22, 65:20, 69:8, 75:13, 75:15, 76:22, 80:13, 81:18, 81:19, 81:22, 82:12

**together** [2] - 75:24, 78:17

**tomorrow** [6] - 44:17, 79:22, 80:15, 81:18, 82:9, 83:12

**took** [5] - 29:15, 29:16, 50:4, 68:25, 78:24

**tool** [10] - 50:7, 50:18, 55:9, 55:11, 59:7, 59:10, 59:15, 59:23, 62:11, 64:25

**top** [2] - 10:9, 86:1

**totally** [2] - 64:19

**towards** [2] - 59:16, 60:13

**Town** [1] - 46:5

**track** [4] - 34:21, 39:9, 48:9, 48:10

**tracking** [5] - 41:9, 48:7, 56:24, 57:3, 57:4

**train** [1] - 17:15

**TRANSCRIPT** [2] - 1:13, 3:24

**transcript** [1] - 86:18

**transmitted** [2] - 15:24, 31:24

**transparent** [1] - 70:19

**Travis** [14] - 28:1, 28:13, 31:21, 33:7, 62:13, 62:23, 62:24, 71:18, 72:1, 72:6, 75:18, 82:24, 83:17

**Travis'** [6] - 25:7, 43:25, 44:9, 54:17, 72:2, 83:7

**trend** [3] - 35:3, 47:24, 47:25

**trending** [2] - 47:23, 47:24

**trial** [3] - 64:11, 80:7, 80:8

**true** [3] - 10:2, 65:4, 86:18

**truly** [1] - 55:7

**truth** [6] - 27:2, 45:17

**truthfully** [1] - 23:11

**try** [2] - 42:9, 61:6

**trying** [6] - 21:21, 24:3, 34:16, 60:24, 65:15, 84:3

**Tuesday** [2] - 31:9, 74:14

**tune** [1] - 43:2

**turn** [3] - 37:6, 39:2, 47:18

**turned** [10] - 10:6, 37:21, 39:23, 40:19, 40:23, 41:18, 41:19, 56:10, 60:19, 61:22

**turning** [1] - 38:13

**two** [31] - 8:25, 9:10, 9:15, 10:25, 12:17, 13:9, 16:6, 16:9, 21:21, 22:20, 26:20, 34:6, 37:4, 39:2, 43:8, 43:16, 51:3, 76:7, 76:14, 76:16, 77:10, 77:12, 77:18, 79:7, 80:6, 80:13, 80:17, 84:3, 84:11, 85:6, 85:11

**Two** [2] - 80:7, 80:9

**two-page** [7] - 8:25, 9:10, 9:15, 10:25, 16:6, 16:9, 37:4

**twofold** [1] - 80:3

**TX** [2] - 3:4, 3:8

**type** [1] - 10:10

**types** [9] - 34:2, 38:19, 56:16, 56:23, 56:25, 59:19

**typically** [1] - 18:1

## U

**ultimate** [2] - 67:5

**ultimately** [6] - 17:22, 18:1, 18:14, 19:1, 66:1, 68:11

**unanimously** [1] - 70:10

**uncertainties** [1] - 62:8

**under** [20] - 8:19, 10:21, 19:15, 19:24, 31:5, 31:8, 32:16, 32:17, 33:21, 37:10, 48:16, 62:1, 63:3, 65:24, 66:3, 67:19, 74:24, 77:10, 80:10, 85:16

**underscore** [1] - 19:10

**understood** [3] - 78:1, 79:9, 80:18

**undertake** [1] - 63:6

**undisputed** [1] - 20:20

**unilateral** [1] - 66:9

**unilaterally** [3] - 67:20, 68:7, 68:12

**unit** [1] - 66:16

**United** [3] - 9:6, 86:17, 86:23

**UNITED** [2] - 1:1, 1:14

**units** [1] - 66:22

**University** [3] - 46:8, 46:16, 47:10

**unknowns** [1] - 55:7

**unlimited** [1] - 49:19

**unparalleled** [1] - 66:20

**unreasonable** [5] - 10:24, 57:10, 57:11, 64:2, 73:1

**unreasonably** [1] - 74:23

**unresolved** [3] - 21:19, 21:23, 74:11

**unwarranted** [1] - 57:25

**up** [26] - 8:8, 11:8, 11:18, 14:6, 17:17, 17:20, 18:10, 18:13, 19:23, 27:25, 41:4, 48:3, 49:17, 55:5, 55:6, 62:4, 63:21, 66:18, 66:19, 66:20, 68:16, 76:3, 76:11, 77:20, 80:25, 81:19

**Update** [1] - 32:20

**updated** [1] - 15:7

**uploaded** [1] - 54:15

**upward** [1] - 47:25

**US** [2] - 3:6, 3:10

**useful** [1] - 62:10

**utilization** [11] - 42:25, 43:12, 48:11, 48:12, 51:4, 51:14, 51:16, 51:17, 52:18, 54:10, 56:8

## V

**valuable** [2] - 55:11, 59:15

**value** [1] - 51:4

**variance** [1] - 48:17

**variety** [1] - 48:9

**various** [4] - 12:2, 12:10, 36:20, 56:23

**velocity** [10] - 33:24, 37:14, 37:17, 38:3, 38:14, 50:21, 52:9, 52:13, 56:7, 56:10

**Vendor** [1] - 9:1

**vendor** [10] - 12:6, 38:14, 39:9, 43:1, 48:2, 54:23, 55:1, 60:25, 61:15, 71:2

**vendors** [42] - 9:3, 9:20, 10:2, 11:6, 12:5, 13:10, 13:21, 14:10, 17:13, 18:8, 21:1, 34:5, 34:19, 34:20, 37:12, 37:16, 38:6, 38:15, 39:16, 39:18, 39:20, 39:21, 41:8, 42:8, 42:10, 42:12, 42:14, 42:15, 49:17, 50:19, 53:15, 57:7, 58:9, 58:10, 60:22, 62:8, 67:8, 67:17, 67:21, 69:13, 69:17

**vendors'** [1] - 13:18

**verbally** [1] - 40:13

**versus** [4] - 13:2, 16:2, 48:5, 52:14

**view** [4] - 7:17, 32:6, 62:16, 85:10

**vis-à-vis** [1] - 49:19

**volume** [3] - 12:2, 12:16, 34:4

**volumes** [1] - 54:8

## W

**WACKER** [1] - 3:11

**wait** [1] - 32:7

**WALTER** [1] - 2:15

**wants** [10] - 45:7, 64:21, 66:1, 73:5, 73:12, 73:14, 82:8, 83:18, 85:6, 86:3

**WAS** [2] - 5:11, 5:13

**ways** [3] - 7:3, 43:21, 48:9

**Wednesday** [2] - 73:24, 74:7

**WEDNESDAY** [2] - 1:8, 6:2

**week** [3] - 12:24, 48:4, 83:21

**weekly** [1] - 48:3

**weeks** [1] - 12:24

**welcome** [3] - 26:16, 69:7, 79:4

**Welker** [1] - 43:6

**WERE** [1] - 5:12

**WESTLAKE** [1] - 3:4

**whereby** [1] - 70:8

**WHEREUPON** [6] - 15:14, 26:7, 68:25, 69:5, 78:24, 86:10

**white** [1] - 16:20

**whole** [6] - 22:5, 25:20, 27:2, 35:25, 45:17, 47:22

**wide** [1] - 56:22

**Williams** [1] - 6:16

**WILLIAMS** [2] - 2:3, 2:4

**willing** [1] - 44:18

**wind** [1] - 18:2

**wind-down** [1] - 18:2

**wish** [1] - 69:9

**wishes** [1] - 26:15

**withdraw** [2] - 31:1, 49:22

**withdrawal** [2] - 34:3, 57:2

**withheld** [1] - 74:24

**withhold** [1] - 76:1

**withholding** [1] - 66:13

**Witness** [1] - 56:3

**WITNESS** [18] - 27:4, 27:10, 33:17, 33:20, 33:23, 34:20, 34:24, 42:2, 45:19, 45:25, 49:11, 52:8, 54:7, 58:18, 58:21, 58:23, 58:25, 63:13

**witness** [6] - 27:6, 35:23, 35:24, 36:2, 36:7, 45:21

**witnesses** [7] - 26:14, 26:17, 26:18, 26:21, 63:20, 63:22, 76:23

**word** [1] - 64:19

**words** [1] - 25:18

**workforce** [1] - 12:21

**works** [2] - 81:14, 83:20

**world** [1] - 11:24

**worth** [1] - 84:11

**WRIGHT** [1] - 1:18

**Wright** [1] - 20:23

**written** [5] - 40:15, 40:17, 40:18, 41:13

**wrote** [1] - 69:21

## Y

**year** [5] - 20:18, 24:22, 28:24, 36:19, 43:3

**years** [5] - 27:19, 27:20, 36:17, 46:13, 47:2

**yellow** [5] - 15:20, 16:24, 33:14, 34:13, 60:6

**yesterday** [3] - 6:21,

17:4, 72:9

**OFFICIAL TRANSCRIPT**