

HOUSTON **DALLAS** PLANO

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
214.939.4400
800.662.8393
214.760.7332 Fax

**www.GodwinLewis.com**

DONALD E. GODWIN, SHAREHOLDER
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:      214.939.4412
DIRECT FAX:      214.939.4803
Don.Godwin@GodwinLewis.com

July 23, 2013

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

        RE:    MDL 2179 – Halliburton's Response to BP Motion to Strike Impermissible Phase 1 Opinions in Halliburton Expert Dr. Stevick's Phase 2 Reports

Dear Judge Shushan:

       Halliburton Energy Services, Inc. ("HESI") respectfully submits this Response to BP's Motion to Strike Impermissible Phase 1 Opinions in Halliburton Expert Dr. Stevick's Phase 2 Reports[1] (the "Motion").  BP's Motion should be denied because it seeks exclusion of evidence that is relevant to Phase Two trial issues.[2]

      Despite BP's characterization to the contrary, HESI's arguments are not untimely and it does not seek to re-litigate any Phase One issues in Dr. Stevick's Phase Two reports.  The reports address Phase Two issues and do not make any reference to Phase One issues.  As contemplated by the Court,[3] there is a potential overlap of certain Phase One and Phase Two issues, such as

---

[1] BP's proposed redactions to Dr. Stevick's Phase Two Reports are attached to the Motion as Exhibits F and G. HESI's proposed redactions and substitutions are attached hereto as Exhibits 2 and 3.

[2] The Motion is a blanket attempt to preclude testimony before it is even heard.  BP incorrectly states that Dr. Stevick's reports address opinions concerning "which barriers failed during, and which party is at fault for, the April 20, 2010, blowout—plainly Phase I issues."  BP's Letter Brief dated July 18, 2013 at 4.  However, BP ignores the Court's express acknowledgement that evidence relevant to Phase One may also be relevant to Phase Two and will thus, be considered.  *See* Rec. Doc. 4083 at 2;  *see also* Rec. Doc. 5407 at 1-2 (*e.g.* "the November 21, 2001 email regarding the capacity of the ROVs to close BOP shear rams at various flow rates (Rec. Doc. 5234-1) . . . which should be admitted in Phase Two *i.e.* stopping the release of hydrocarbons.").

[3] *See* Rec. Doc. 5407.

risks, damage, equipment degradation and operating failures that cumulatively affect the decision-making and choices made in Phase Two.

BP's Motion attached proposed redactions to Dr. Stevick's Phase Two reports. During subsequent meet and confers with BP, HESI proposed various options to resolve the dispute concerning Dr. Stevick's reports. Specifically, on July 22, 2013, HESI agreed to concede to various redactions if, in turn, BP would allow substitution of a sentence in Dr. Stevick's Phase Two reports.[4] The proposed sentence reads as follows: "The proper use of the diverter system and the BOP, as presented in Phase One trial, effects Source Control." BP rejected this offer.[5] HESI remains agreeable to the proposed redactions in exchange for the proposed sentence. However, if BP remains inflexible to this proposed concession, then HESI respectfully requests that Dr. Stevick's Phase Two reports remain unaltered.

### The Pipe Buckling Analysis In Dr. Stevick's Phase Two Report Dated May 1, 2013 Is Not A Re-Litigation Of A Phase One Issue

BP appears to argue that certain of Dr. Stevick's opinions and his calculation on pipe buckling that were voluntarily withdrawn during Phase One are being reintroduced in his Phase Two report.[6] The withdrawn opinions and calculation were contained in Appendix C to Dr. Stevick's Phase One report. As noted during the January 13, 2012 Status Conference, Appendix C was voluntarily withdrawn by HESI pursuant to a Phase One agreement with Cameron.[7] However, Appendix C to the Phase One report and Appendix B to the Phase Two report contain different analyses and buckling calculations.[8] Appendix C's buckling analyses and calculation were based upon flow up through the inside of the drill pipe.[9] In contrast, Appendix B's buckling analyses and calculation are based upon internal pressure with no flow.[10] The Phase Two calculation (Appendix B) uses readily available pressure data from the rig and requires no flow analysis. This simpler calculation is described in well completion textbooks and clearly shows that the drill pipe was buckled post-blowout; strongly indicating the Casing Shear Ram ("CSR") should be activated before the Blind Shear Ram ("BSR") after the blowout using ROV intervention. Proper Process Safety Management ("PSM") would have included performing this simple calculation to show that the drill pipe was almost certainly buckled, clearly a Phase Two

---

[4] *See* HESI's email to BP dated July 22, 2013 (Exhibit 1); Dr. Stevick's Phase Two Report dated May 1, 2013, with HESI's proposed redactions and substitutions (Exhibit 2); Dr. Stevick's Phase Two Rebuttal Report dated June 10, 2013, with HESI's proposed redactions and substitutions (Exhibit 3).

[5] *See* BP's email to HESI re: proposed redactions dated July 23, 2013 (Exhibit 4).

[6] Motion at 8.

[7] Appendix C to Dr. Stevick's Phase One Report dated October 17, 2011, excerpt of TREX-60859 (Exhibit 6); *Compare* Motion at 8 (*"*He [Stevick] acknowledged that he had previously withdrawn the analysis and calculations supporting his opinion, presumably because they were not produced until his deposition.") *to* Tr. of Dis. Status Conf. dated January 13, 2012 at 38:2-13 ("Cameron will pull down its cement expert in all respects…So we'll pull down, Halliburton will, Stevick as it relates to BOP design only.") (Exhibit 7).

[8] *See* Dr. Stevick's Deposition Testimony dated December 15, 2011 at 498:1-501:25 (Exhibit 8); *See also* TREX-7770 (Exhibit 9).

[9] Appendix C to Dr. Stevick's Phase One Report dated October 17, 2011, excerpt of TREX-60859 (Exhibit 6).

[10] Appendix B to Dr. Stevick's Phase Two Report dated May 1, 2013 (Exhibit 5).

issue.[11]  Accordingly, the pipe buckling analysis and calculation in Appendix B of Dr. Stevick's Phase Two report are not untimely and are proper in Phase Two.

### Anomalies Encountered on the Macondo Well And Equipment Degradation Are Phase Two Issues.

BP's spill preparedness and planning are clearly Phase Two issues and BP's self-serving line of demarcation between proper Phase One evidence and proper Phase Two evidence should be rejected.  In Phase Two, BP claims that it's process safety, as it relates to preparedness for a potential blowout, was adequate.  BP's expert, Dr. Morris Burch, offers Phase Two expert opinions on the adequacy of BP's process safety in this regard.  Dr. Stevick's Phase Two opinions directly rebut those of Dr. Burch.

The Court ruled that "Source Control" issues "shall consist of issues pertaining to the conduct of various parties, third parties, and non-parties regarding stopping the release of hydrocarbons stemming from the Incident from April 22, 2010 through approximately September 19, 2010."[12]  The Court also clarified that "[t]here may be instances where evidence is relevant to both Phases and in the interest of efficiency should be admitted in Phase One."[13]  The "anomalies" encountered on the Macondo well, such as the failure to confirm float collar conversion and the determination of whether something unknown was blown up downhole[14] may have been Phase One issues, but their occurrence clearly affected Phase Two source control.  Dr. Stevick's Phase Two opinions on these issues are not related to Phase One causation or fault allocation for the blowout.  Rather, Dr. Stevick opines that the existence of these known anomalies and known BOP degradations[15] illustrate that BP should have been ready with mitigative barriers for a potential blowout.  Their existence also illustrates substandard PSM—an issue relevant to both Phase One and Phase Two.

Dr. Stevick's Phase Two reports directly address the underlying assumption that good PSM considers all potential degradations and anomalies that may accumulate over time, and the proper corrective action to address such degradation.  Proper corrective action is a Phase Two issue, and such corrective action includes: meeting with the crew, trial runs of the diverter system, employing the correct order of closing the shear rams (*i.e.*, shear with CSR, lift drill pipe, seal with the BSR) in the event of a blowout, and being vigilant and ready to use these mitigative barriers quickly and effectively.  By addressing these anomalies, Dr. Stevick directly rebuts BP's position regarding the adequacy of its process safety and preparedness for a potential blowout.

HESI understands the rationale for separating Phase One issues from Phase Two, however, there is no clear line separating the two.  The Court has acknowledged this by ruling that issues related to stopping the release of hydrocarbons should be admitted in Phase Two even

---

[11] *Id.*

[12] Rec. Doc. 4083 at 2.

[13] Rec. Doc. 5407 at 1 and 2.

[14] TREX 2584 (Exhibit 10).

[15] Examples of BOP degradations include: upper annular stripped through, lower annular converted to a stripping ram, CSR disconnected from deadman circuit, lower VBR converted to a test ram.

though they occurred significantly before the blowout."[16] To allow BP to retain its expert testimony on the adequacy of process safety, while simultaneously preventing HESI from responding and rebutting such opinions is not only an injustice to HESI and its position in Phase Two, but it also prejudices HESI's ability to properly defend any contribution or indemnity claim for Clean Water Act fines and penalties based upon the volume of hydrocarbons released from the Macondo well. Accordingly, HESI's rebuttal of Dr. Burch's opinions on the adequacy of BP's process safety should not be stricken from Dr. Stevick's Phase Two reports.

## Conclusion

Dr. Stevick's opinions are not "new" Phase One opinions. To the contrary, his opinions rebut BP's Phase Two expert opinions. The Court has allowed the parties to rely in Phase Two on evidence adduced in Phase One.[17] BP has done so, and HESI should be permitted to respond accordingly.

HESI takes no issue with allowing Dr. Stevick to be deposed for two days.[18] This additional time will afford all parties the ability to evaluate Dr. Stevick's opinions but also provide ample opportunity to establish whether the various topics discussed in Dr. Stevick's report constitute permissible Phase Two opinions. To that end, HESI requests that the Court defer its decision on the Motion until after Dr. Stevick's deposition takes place on July 25 and 26, 2013.

Respectfully submitted,

*Donald E. Godwin*

Donald E. Godwin

Exhibits

cc     (by electronic mail)
       United States' MDL Counsel
       States Liaison Counsel
       Plaintiffs' Liaison Counsel
       Defense Liaison Counsel

---

[16] Rec. Doc. 5407 n. 1 ("However, and by way of example, the November 21, 2001 email regarding the capability of ROV's to close the BOP shear rams at various flow rates (rec. doc. 5234-1) is an example of a document which should be admitted into Phase Two: i.e. stopping the release of hydrocarbons.)

[17] *See* Rec. Doc. 4083 at 2.

[18] BP's email to HESI re: Time allocation dated July 23, 2013. (Exhibit 11); *see* Rec. Doc. 10233.