

**U.S. Department of Justice**

Environment and Natural Resource Division

---

*P.O. Box 7611*
*Washington, DC 20044*
*202-514-0056*
*Scott.Cernich@usdoj.gov*

August 1, 2013

**BY ELECTRONIC MAIL**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana 70130

      Re:    MDL 2179: United States' Motion to Strike Report of BP Quantification Expert
                Dr. Andreas Momber

Dear Judge Shushan:

      The Court should strike the report of BP quantification witness Dr. Andreas Momber, "Erosion of Well-Cement Due to Hydrocarbon Flow," because: 1) it presents new Phase One opinions regarding the failure of the Macondo cement, and 2) it does not actually respond to any U.S. experts as Dr. Momber admits the U.S. experts to whom he responds did not calculate cement erosion rates.[1]  Dr. Momber's report is replete with opinions regarding the condition and failure mode of the Macondo cement, and goes so far as to present a completely new theory of cement failure that BP failed to present during the Phase One trial – "Hydraulic Fragmentation." If BP is permitted to present Dr. Momber and his rebuttal report, "Judge Barbier will be confronted in Phase Two with testimony on issues that were presented in Phase One."  Order Regarding BP's Motion to Strike Report of Kris Ravi (Rec. doc. 10751) at p. 2.  The Court previously ordered that "Phase Two cannot become a replay of Phase One."  *Id*.  Dr. Momber is presenting "a Phase One opinion in Phase Two that should have been presented in Phase One," and his report should be stricken like those of Halliburton experts Drs. Stevick and Ravi.  Order Regarding BP's Motion to Strike Report of Glen Stevick (Rec. doc. 10767) at p. 2.

      In addition, Judge Barbier also will be confronted with a BP expert on cement erosion rates who admits that neither of the two U.S. experts he claims to respond to actually calculated cement erosion rates.  "This Court has recognized that Phase 2 expert discovery, especially

---

[1] Dr. Momber also admits that he is not offering any opinions on oil flow rates and that he himself did not actually calculate a cement erosion rate for the Macondo well, aside from his "interpretation" of the work of Drs. Griffiths and Dykhuizen.  *See* Momber Dep., 473:10-15, 109:7-12; 597:18-598:20.  Therefore, his report is solely a response to non-existent erosion calculations and should be stricken in its entirety.

quantification expert discovery, is a significant undertaking involving a large number of experts. The Court has thus made clear that improper Phase 2 rebuttal opinions will be stricken, where appropriate, to streamline this ambitious undertaking in expert discovery." BP Motion to Strike Halliburton Experts (Rec. doc. 10742) (citing Rec. docs. 10477 (Order re BP/Anadarko's Mot. To Strike Rebuttal Experts for the U.S. and 4738 (striking Chemali expert disclosure)). Dr. Momber's report offers new Phase One opinions while not actually responding to any U.S. experts and should be stricken in full.

### Dr. Momber's Cement Erosion Report

Dr. Momber's report purports to respond to two United States experts on the topic of "cement erosion." Momber Report, Attachment A. In brief, Dr. Momber claims that there was cement in the shoe track of the well that would have impeded the flow of oil, *see id.* at p. i, but does nothing to quantify that impedance and does not propose his own erosion rate for the Macondo cement. *See* Momber Report, generally. Dr. Momber's report was submitted to respond only to U.S. experts Stewart K. Griffiths and Ronald C. Dykhuizen. *See* Momber Dep., Attachment B, 596:8-17; 87:17-88:20.[2] Dr. Momber contends that Drs. Griffiths and Dykhuizen calculate incorrect erosion rates – though he admitted during his deposition that neither U.S. expert actually calculated a cement erosion rate. *See* Momber Dep., 598:3-598:20. Instead, Dr. Momber creates his own potential cement erosion rates *for* Drs. Dykhuizen and Griffiths based on a variety of assumptions, and then compares those rates to erosion rates of construction concrete reported in journal articles. *See* Momber Report at pp. 11-13.

Further, in the guise of "responding to" Griffiths and Dykhuizen, Dr. Momber proposes a long list of reasons the Macondo cement failed to provide a barrier to flow, including, on the very first page of his report, his new theory of cement failure.

> I conclude, based on my experience working in the field of cement erosion, that instead, the well cement likely underwent a *4-step degradation scenario*, which I explain below. Under this scenario, a different process, known as hydraulic fragmentation, caused the rapid initial degradation of a portion of the cement in the casing.

Momber Report at p. i. Throughout his report, Dr. Momber lists a variety of other reasons the Macondo cement failed to provide a barrier in the well, including channeling, nitrogen breakout, permeability, nets of cracks, capillaries, and nets of voids separated by cement bridges. *See* Momber Report, pp. 3, 5-9, 11-12, 14, 16.

1. **The Court Should Strike Dr. Momber's New Phase One Opinions including his New "Hydraulic Fragmentation" Theory**

Dr. Momber's Phase Two quantification report contains a variety of new Phase One opinions on failure mechanism(s) of the Macondo cement, including a new theory that the cement failed due to something called "Hydraulic Fragmentation." Momber Report, p. 14. Dr. Momber states:

---

[2] Dr. Momber only reviewed three U.S. expert reports (Griffiths, Dykhuizen, and Pooladi-Darvish) and testified that he did not respond to U.S. expert Pooladi Darvish. *See* Momber Dep., 596:8-17; 87:17-88:20.

2

> We have shown the possibility that the Macondo cement initially had substantial flaws, such as a net of cracks or a number of capillaries, and a net of voids separated by cement bridges.

*Id.* at p. 14.[3]  He cites to no Phase One evidence for this opinion and goes on to opine that these "flaws" led to the "hydraulic fragmentation." *Id.*  Dr. Momber describes a "Threshold" period "characterized by pre-damaged, permeable, well cement allowing the release of a small volume of hydrocarbons" followed by an "Initial" period in which "hydraulic fragmentation of the pre-damaged well cement" generates "flow paths through the cement." *Id.* at p. 16.  He opines that "[t]he initial period is defined by a rapid increase in flow-path area for a short time caused by fragmentation." *Id.*

Dr. Momber also opines that a "reasonable inference from [the report of BP Phase One expert Morten Emilsen] is that there was substantial cement impeding the flow in the wellbore, but that flow was occurring through channels in the cement," *Id.* at p. 9, despite the fact that Mr. Emilsen testified at trial that he did not model cement, cement was not an input to his model, and he had no opinions on the actual amount of cement present across the reservoir sands.  Morten Emilsen Trial Testimony, Attachment C, Trial Tr., 7836:12-7837:16, 7837:13-16.

Dr. Momber's opinions address the central Phase One question of why the production casing cement failed to provide a barrier in the well.  The Court has ruled that "[w]hile the parties are permitted in Phase Two to rely on evidence adduced in Phase One, Phase Two cannot become a replay of Phase One."  Rec. doc. 10751 at 2.  BP, through Dr. Momber, is blatantly attempting to replay Phase One.

Dr. Momber's cement failure opinions are based on his own independent review of technical data, including cement lab testing reports, and are not based on opinions previously presented in Phase One.[4]  Indeed, he admits that, prior to preparing his expert report, he reviewed *only one Phase One expert report* – the report of BP expert Morten Emilsen (who testified that he was not qualified to offer any opinions regarding the failure of the Macondo cement).  *See* Emilsen Phase One Trial Testimony, Tr. Tr., 7835:8-13, 7840:24-7841:4.[5]

Dr. Momber did not even read, let alone rely on or cite to, any of the Phase One cement expert reports or testimony in preparing his expert report.  *See* Momber Report, Appendix D (Consideration Materials); Momber Dep., 306:22-307:17, 53:5-24.  Most important, Dr. Momber did not read the expert reports of Phase One BP cement experts David Calvert and Ron Crook, or U.S. cement expert Glen Benge, before submitting his Phase Two report.  *See id.*  Yet, Dr. Momber offers a new opinion that the Macondo cement was set at the time of the negative pressure test based on his own independent analysis of the Chevron and Oilfield Testing & Consulting cement testing reports and certain testimony of Jesse Gagliano – despite testimony from BP expert Calvert and BP Wells Team Leader John Guide to the contrary.  Momber Dep.,

---

[3] Dr. Momber cites to no Phase One evidence to support this contention.

[4] On p. 6 of his report, Dr. Momber cites to the Bly Report for three reasons "channels may have been present at Macondo," but cites to no other Phase One cement evidence anywhere in his report to support any of his numerous opinions regarding the various failure modes of the Macondo cement, including hydraulic fragmentation, cracking, nets of voids, permeability, etc.  Likewise, he cites to no Phase One evidence to support his opinion that the Macondo cement was set.

[5] Dr. Momber was not even aware that Mr. Emilsen is not a cement expert.  Momber Dep., 181:23-182:1.

3

143:22-145:5 ("I know that [the cement in the shoe track] was set"), 495:5-497:8; Calvert Report (TREX 22761), Attachment D, at p. 15; Guide Trial Testimony, Attachment E, Trial Tr., 8950:17-8951:10.[6]  Similarly, any other of Dr. Momber's opinions regarding the condition or failure of the Macondo cement are necessarily new Phase One expert opinions since he did not rely on a single Phase One cement expert or report in preparing his own report.

In short, Dr. Momber is offering a wide range of new Phase One opinions on the Macondo cement, including opinions on channeling, nitrogen breakout, cement permeability, whether the cement was pre-damaged, and whether the cement failed due to "hydraulic fragmentation."  Accordingly, the Court should strike Dr. Momber's new Phase One cement opinions.

### 2. Dr. Momber's Report is an Improper Response to U.S. Experts Who Dr. Momber Admits Did Not Calculate Cement Erosion Rates

Dr. Momber writes in his report that the "United States' expert reports do not contain a proper analysis of the impact of cement degradation processes (including erosion) on the probable flow rate and total flow volume," Momber Report at p. 1, but he admits that *neither of the U.S. experts he claims to respond to calculated cement erosion rates*.  In fact, Dr. Momber reviewed only *three* (3) U.S. expert reports – Griffiths, Dykhuizen, and Pooladi-Darvish.  He "rebuts" only Griffiths and Dykhuizen and does not reply to Pooladi-Darvish. Momber Dep. 596:8-17; 87:17-88:20[7]; *see also* Momber Report, Appendix D (Consideration Materials).   Dr. Momber admitted that neither Dr. Griffiths nor Dr. Dykhuizen calculated a cement erosion rate. Momber Dep. 473:24-474:6.

> Q.  Is it your interpretation that Dr. Griffiths was, in fact, calculating a cement erosion rate?
>
> A. No. What I said is his information, the numbers he provided in his report *can be used* to calculate a cement erosion rate.
>
> Q. Okay. So he was not, in fact, calculating a cement erosion rate?
>
> . . .
>
> A. *It was not his purpose to calculate a cement erosion rate*.
>
> Q. And is there anywhere in Dr. Dykhuizen's expert report where he calculates a cement erosion rate?
>
> A. It was the same situation. He provided a number which can be used to calculate cement erosion rates.

---

[6] In addition, Momber contends that nitrogen breakout was a "reasonable assumption," and he testified that he would opine that nitrogen migration was a "very possible scenario."  Momber Dep., 157:1-157:24; 268:23-269:1.  Dr. Momber did not read the trial testimony of BP employee John Guide.  *See id*. at 494:21-495:4.

[7] " Q: Yes.  In your "Consideration Materials," you note that you read the expert report of Dr. Pooladi-Darvish; is that right?  A: Yes.  Q: Okay.  But you're not actually responding to anything from Dr. Pooladi-Darvish's report in your expert report in this case?  [ . . . ] A: I – no, I – Dr. Pooladi did not develop any ideas about erosion in – in the – in the cement column, so I did not reply to him."  Momber Dep. at 87:25-88:13.

4

*Id*. at 598:3-598:20 (emphasis added).  Thus, Dr. Momber's expert report on concrete erosion rates[8] responds to none of the U.S. experts' opinions.  The Court should not allow Dr. Momber to offer new Phase One opinions on the failure of the Macondo cement under the guise of responding to non-existent cement erosion calculations.

## Conclusion

        For all of the foregoing reasons, the Court should strike the report of BP expert witness Dr. Andreas Momber.  The United States makes this motion now because of the upcoming requirement to reduce its intended experts from 15 to eight.[9]  As the United States has explained in several discovery conferences, the current allocation of experts works disproportionately upon the United States, which undertook a different expert strategy than BP before the Court notified the parties of the expert limits.  Unless the Court rules prior to the United States' deadline for choosing its final experts, there is a distinct possibility that the United States could be forced to waste one of its experts on a witness that is necessary only to rebut improper Phase One testimony.  Moreover, allowing BP to offer the testimony of Dr. Momber further deepens the challenges faced by parties such as Transocean and Halliburton who have been excluded from presenting evidence during the Phase Two Quantification trial.

        Respectfully submitted,

/s/ Scott M. Cernich
Scott M. Cernich

cc:    Liaison & Coordinating Counsel
       Robert Gasaway

---

[8] Dr. Momber's report compares purported Macondo cement erosion rates to construction concrete erosion rates from the construction concrete literature.  *See* Momber Report at pp. 12-13.

[9] To the extent that BP objects that this motion is styled as a motion to strike, please consider this also to be a motion in limine to preclude Dr. Momber from testifying at trial.