

U.S. Department of Justice
Environment and Natural Resource Division

*P.O. Box 7611*
*Washington, DC 20044*
*202-514-0056*
*Scott.Cernich@usdoj.gov*

August 10, 2013

**BY ELECTRONIC MAIL**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana 70130

      Re:    MDL 2179: Reply to BP Letter Regarding Motion to Strike Dr. Momber's Report

Dear Judge Shushan:

      This letter replies to BP's August 8, 2013 opposition to the United States' motion to strike the report of Dr. Andreas Momber. BP's arguments are unavailing and fail to squarely rebut our assertion that BP, through Dr. Momber: 1) is attempting to "back-door" new Phase One opinions in Phase Two, and 2) "responds" to U.S. expert opinions that exist nowhere but in Dr. Momber's imagination.

1. **Dr. Momber Offers New Phase One Opinions on Cement Failure that Should be Stricken for the Very Same Reasons this Court Struck Phase One Opinions from the Phase Two Reports of Drs. Ravi and Stevick**

      Dr. Momber's report is filled with Phase One opinions regarding the condition and failure of the Macondo cement, including a completely new opinion that "hydraulic fragmentation" resulted in the "sudden release of oil" causing the blowout – a theory BP did not even allude to during the Phase One trial. *See* Momber Rept., Attachment A, 16-17 (Attachment A to this letter is a copy of Dr. Momber's report in which we have highlighted in yellow his many Phase One cement condition and failure opinions). He opines that his proposed "hydraulic fragmentation" occurred at or around 21:30 on April 20, 2010 – ***before hydrocarbons even reached the rig floor***. Dr. Momber is opining on the cause of the blowout plain and simple. To conclude this is not a Phase One opinion on cement failure renders the distinction between Phase One and Phase Two opinions meaningless.

      BP's claim that Dr. Momber simply relies on Phase One evidence is belied most starkly by the fact he proposes a new, alternate interpretation of the BP Phase One expert Morten Emilsen's blowout modeling results. Mr. Emilsen explained the "dramatic" increase in flow rates (from approximately 12,000 to over 37,000 standard barrels per day) occurring after 21:30

on April 20, 2010 by a change in the exposed reservoir net pay. Emilsen Trial Testmony, Attachment B, Trial Tr. 7843:10-7846:11. Dr. Momber, however, rejects Mr. Emilsen's opinion that "washout effects" resulted in increasing net pay and flow rates. *Id.* Dr. Momber offers a new interpretation of Mr. Emilsen's work - the dramatic increase in flow rates resulted from "hydraulic fragmentation." Momber Rept., Attachment A, 16. In essence, BP is seeking a "do-over" for its Phase One expert by having Dr. Momber re-interpret Mr. Emilsen's results. The Court should not allow this.

   Further, Dr. Momber's opinion that hydraulic fragmentation is the "likely degradation scenario" for the Macondo cement requires him also to opine that the cement had cracks, capillaries, and/or voids at the time of the blowout (and to opine or assume that the cement was set). As he writes in his report, "[h]ydraulic fragmentation requires the existence of fluid-filled voids, flaws, or capillaries," in the cement, yet Dr. Momber does not cite a single piece of evidence for his conclusion. Momber Rept., Attachment A, 14. He also opines that the cement was "permeable" without any supporting Phase One evidence. *Id.*, 16. Dr. Momber stated in his deposition that he *knows* there were structural problems with the cement such as voids or cracks because of the hydrocarbon flow during the blowout:

> Q: Okay. So your hypothesizing this might have been a problem with the Macondo cement; you don't have any empirical data, any experiments, any lab test results to tell you that the cement on the Macondo well developed a net of cracks?
>
> A: Well, *we know that the cement had features of structural voids* that promotes the flow of the hydrocarbons, for example.
>
> Q: How do we know that the cement had features of structural voids? How do you know, Dr. Momber?
>
> A: I know that because there was hydrocarbon flow through the cement, so there must have been something wrong with the structure.

Momber Dep. Tr. 263:12-264:5-11 (emphasis added). Dr. Momber is offering an opinion that "there must have been something wrong with the structure." As discussed in greater detail our August 1, 2013 letter, in forming his opinions on the cause of the Macondo cement failure, Dr. Momber did not review the report or testimony of a single Phase One cement expert, including BP's own cement expert David Calvert. Dr. Momber could not have relied on any Phase One cement evidence if he did not even look at it. Not a single Phase One witness even mentioned "hydraulic fragmentation" as a possible reason for the failure of the Macondo cement. Dr. Momber's opinion that the cement was set, and his opinion that the cement had voids, flaws, or capillaries in it at the time of the blowout are directly relevant to the cause of the blowout and are Dr. Momber's own new, independent opinions. These new Phase One opinions must be stricken to avoid wasting the Court's time with a replay of Phase One issues in the Phase Two trial.

   BP writes in its response that "Dr. Momber does not seek to adduce evidence to prove that the well cement set. Rather, he merely assumes that the well cement set." BP August 8, 2013 Letter at 2. However, Dr. Momber did more than "assume" that the cement was set; he developed his own independent opinion that the cement was set, for which he relies - not on any

Phase One expert testimony or report - but on his own review of data from the Chevron cement testing report (TREX 2702):

> Q: But that [Chevron test report] doesn't tell you anything about what actually happened in the Macondo well, does it?
>
> A: Well, the testing conditions were close to the conditions in the Macondo well, so it is like a good representative of the condition of the cement in the Macondo well.
>
> Q: But it still doesn't tell you whether or not the cement in the well set up, does it?
>
> A: Well, it give an indication that the cement can have set.
>
> Q: It doesn't say that it did, though, does it?
>
> A: It gives me strong – it provides strong evidence that the cement did set.

Momber Dep. Tr. 498:21-499:21. Accordingly, Dr. Momber should, at the very least, be precluded from offering *any* opinions at trial on whether the Macondo cement was in fact set, including any testimony that the Chevron cement testing report provides evidence that the cement set.

**2.     Dr. Momber "Responds" to Non-Existent Erosion Rates**

As discussed in detail in our August 1, 2013 letter, the cement erosion rates to which Dr. Momber allegedly responds exist only in Dr. Momber's report and his own mind. Neither Dr. Griffiths nor Dr. Dykhuizen asserts an erosion rate at all, let alone a cement erosion rate. Neither Dr. Griffiths nor Dr. Dykhuizen opines on the volume of shoe track cement, or volume of "channels" within the cement, let alone calculates a cement erosion rate. The word "cement" does not even appear in Dr. Dykhuizen's report.

BP does not contest the fact that Dr. Momber admitted during his deposition that neither Dr. Griffiths nor Dr. Dykhuizen calculated an erosion rate. *See* August 1, 2013 U.S. Letter at 4-5. Dr. Momber had to formulate imaginary erosion rates for Drs. Griffiths and Dykhuizen because neither opines on the volume of cement that may have eroded away. Dr. Momber's report is only a critique of these imaginary rates. Dr. Momber testified that his report responds solely to Drs. Dykhuizen and Griffiths. Since Dr. Momber's report "responds" to opinions that were not even offered, it should be stricken.

### Conclusion

For all of the reasons presented in the United States' letter of August 1, 2013 and this reply, the Court should strike the report of BP expert witness Dr. Andreas Momber.

Respectfully submitted,

/s/ Scott M. Cernich
Scott M. Cernich

cc:     Liaison & Coordinating Counsel
        Robert Gasaway