# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL NO. |
| HALLIBURTON ENERGY SERVICES, INC. | : |

### COOPERATION GUILTY PLEA AGREEMENT

Under Rule 11(c)(1)(A) and 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and in compliance with the holding of Bryan v. United States, 492 F.2d 775 (5th Cir. 1974), the government and Halliburton Energy Services, Inc., the defendant, by and through its counsel, enter into the following guilty plea agreement. Any reference to the United States or the government in this agreement shall mean the United States Department of Justice, including, but not limited to, the Deepwater Horizon Task Force, the Criminal Division and all of its sections, and of all the United States Attorney's Offices for each judicial district of the United States.

1. The defendant agrees to plead guilty to Count One of an information charging it with a misdemeanor violation of 18 U.S.C. §1030(a)(5)(A), subject to 18 U.S.C. §1030(c)(4)(G)(i), arising from the deletion of records created after the explosion on board the *Deepwater Horizon* in the Gulf of Mexico. The defendant agrees to the factual allocution contained in Exhibit A to this plea agreement.

2. The defendant, and all affiliates and successors and assigns thereof, agree to continue to cooperate fully and truthfully with the Deepwater Horizon Task Force in any criminal investigation related to or arising from the *Deepwater Horizon* blowout, explosion, oil spill and

1

response, and further agree to cause any other present or future parent, affiliate, division or subsidiary of the defendant (collectively, "any other Halliburton entity" or "the other Halliburton entities") to continue to cooperate fully and truthfully as to the same matters. Cooperation shall continue to include but not be limited to: (a) promptly disclosing any and all criminal or potentially criminal conduct of which the defendant or any other Halliburton entity is currently aware relating to or arising from the *Deepwater Horizon* blowout, explosion, oil spill and response; (b) promptly producing documents to the Deepwater Horizon Task Force upon request; (c) promptly making current employees and agents available, and promptly making best efforts to make former employees and agents available, to the Deepwater Horizon Task Force upon request for interview or for testimony in any proceeding and subject to those current and former employees' and agents' own legal rights; and (d) making reasonable efforts to ensure that its current and former employees and agents provide full and truthful information upon request of the Deepwater Horizon Task Force and subject to those current and former employees' and agents' own legal rights; provided, however, that compliance with this paragraph shall not be construed as requiring or effecting a waiver of the attorney-client privilege or work product protections.

3. The parties agree that this plea agreement is made pursuant to Fed. R. Crim. P. 11(c)(1)(A) and 11(c)(1)(C) and that the following specific sentence is the appropriate disposition of this case. If the Court rejects this plea agreement, it is further agreed that the defendant may withdraw its plea. The parties agree that because there is sufficient information in the record and because restitution is inapplicable, in accordance with Fed. R. Crim. P. 32 (c)(1)(ii) and 32(c)(1)B), respectively, a presentence investigation and report are not required. Accordingly, if acceptable to the Court, the parties agree to waive the presentence investigation and report

2

pursuant to Fed. R. Crim. P. 32(c), and ask that defendant be sentenced at the time the guilty plea is entered. This agreed-upon sentence is as follows:

    (a)    Payment of the statutory maximum criminal fine of $200,000, to be paid within five calendar days after sentencing.

    (b)    A term of three years of probation. Probation shall include the following mandatory and discretionary special conditions, pursuant to 18 U.S.C. § 3563(a) and (b):

        (i)    The defendant shall not commit another federal, state, or local crime.

        (ii)    The defendant shall notify the probation officer within seventy-two hours of any criminal prosecution against the defendant.

        (iii)    The defendant shall answer truthfully all inquiries by the probation officer.

        (iv)    The defendant shall provide to the probation officer full access to any of the defendant's business operating locations upon reasonable notice.

        (v)    The defendant shall give reasonable notice to the probation officer of any change in its principal business location or mailing address.

4.    The defendant agrees to pay the Court-ordered special assessment in the amount of $125 immediately following sentencing and shall provide a receipt from the Clerk to the government following sentencing as proof of this payment.

5.   The defendant hereby waives any right to a trial as to the payment of the statutory-maximum criminal fine of $200,000, pursuant to 18 U.S.C. § 3571(c)(5).

6.   The defendant will acknowledge acceptance of this plea agreement by the signature of its counsel and shall provide to the Department, as Exhibit B hereto, a certified resolution of the Board of Directors of the defendant, authorizing the defendant to enter a plea of guilty and authorizing an agent to execute this agreement. The defendant will further provide a certified resolution of the Board of Directors of the defendant providing as follows:

   a.   The defendant shall be bound by those specific terms of this agreement that expressly apply to the defendant, and any other Halliburton entity shall be bound by those specific terms that expressly apply to other Halliburton entities. Any legal successor or assign of defendant shall remain liable for the defendant's obligations in this plea agreement, and an agreement to remain so liable shall be included by the defendant in the terms of any sale of the defendant, acquisition of the defendant by another entity, or merger of the defendant into another entity.

   b.   The defendant and any other Halliburton entity waive any applicable federal criminal statute of limitations as of the date of this agreement through the conclusion of the defendant's term of probation, during which the defendant is required to have satisfied all of its obligations under this agreement, with regard to any conduct relating to or arising from the *Deepwater Horizon* blowout, explosion, oil spill and response.

7.   The government agrees that, subject to paragraph 2 of this agreement, the government shall not further prosecute the defendant or any other Halliburton entity, including any predecessor, successor or assign of the above, for any conduct relating to or arising from events in connection with the *Deepwater Horizon* blowout, explosion, oil spill or response. In the

4

event that the court that accepts the guilty plea pursuant to this agreement determines that the defendant has breached this agreement, the defendant will not be entitled to withdraw its plea of guilty, and the Department may prosecute the defendant and any other Halliburton entity, or any predecessors, successors or assigns of any of the above, for any conduct relating to or arising from the Deepwater Horizon blowout, explosion, oil spill and response notwithstanding the expiration of any applicable statute of limitations following the signing of this plea agreement. In the event of any such prosecution, the Department may use the defendant's statements in Exhibit A as admissible evidence against the defendant or any other Halliburton entity.

8. The Department agrees that, if requested to do so, it will advise any appropriate suspension or debarment authorities that, in the Department's view, the defendant has accepted responsibility for the defendant's criminal conduct described in Exhibit A by virtue of this guilty plea, and that the defendant has provided significant and valuable cooperation during the course of the Deepwater Horizon Task Force's investigation and has agreed to continue to cooperate in any ongoing criminal investigation by the Department relating to the *Deepwater Horizon* blowout, explosion, oil spill and response. The Department acknowledges the defendant's voluntary and unconditional contribution of a total of $55 million on July 25, 2013, to the National Fish and Wildlife Foundation. Such contribution is not conditioned in any way on the terms of this plea agreement, nor are the terms of this plea agreement conditioned in any way on the contribution. Nothing in this agreement limits the rights and authority of the United States of America to initiate civil or administrative action against the defendant including but not limited to any listing or debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans and benefits from United States government agencies.

5

9. In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.

10. The defendant waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney's fees and other litigation expenses arising from the investigation or prosecution of this matter.

11. The defendant waives all rights, whether asserted directly or by a representative, to request to receive from any department or agency of the United States any records pertaining to the criminal investigation or prosecution of this criminal case that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, and the United States reserves all rights and privileges it may have as to those records.

12. The defendant is satisfied with the legal representation provided by the defendant's lawyers; the defendant and its lawyers have fully discussed this plea agreement; and the defendant is agreeing to plead guilty because the defendant admits that it is guilty of a misdemeanor violation of 18 U.S.C. § 1030(a)(5)(A), subject to 18 U.S.C. § 1030(c)(4)(G)(i),

13. It is agreed that the parties' guilty plea agreement contains no additional promises, agreements, or understandings other than those set forth in this written guilty plea agreement, and that no additional promises, agreements, or understandings will be entered into unless in writing and signed by all parties.

*Derek Cohen /pw*

JOHN D. BURETTA
Director, Deepwater Horizon Task Force
DEREK A. COHEN
Deputy Director, Deepwater Horizon Task Force

BRACEWELL & GIULIANI LLP
COUNSEL FOR HALLIBURTON ENERGY SERVICES, INC.
BY: MARC L. MUKASEY, ESQ.

Richard W. Beckler
Philip J. Bezanson
Kevin A. Ewing
Jonathan N. Halpern
Jason B. Hutt
OF COUNSEL

Date: July 25, 2013

7

Exhibit A

Defendant Halliburton Energy Services, Inc. (hereinafter, "HESI") agrees that, if the case were to proceed to trial, the government could establish beyond a reasonable doubt that:

1. Defendant HESI employed hundreds of employees who worked throughout the Gulf of Mexico providing various services with respect to deepwater oil and natural gas drilling operations. Defendant HESI had offices in, and engaged in regular business throughout, the states bordering the Gulf of Mexico, including in the Eastern District of Louisiana, and maintained offices for Gulf operations in Houston, Texas.

2. On or about May 2, 2008, BP Exploration and Production, Inc. ("BP") entered into a lease with the Minerals Management Service, granting BP the rights to oil and gas reservoirs at a site called Mississippi Canyon Prospect # 252 ("MC # 252") on the Outer Continental Shelf in the Gulf of Mexico. A well drilled at MC # 252, which BP referred to as the Macondo well, lay approximately 48 miles from the Louisiana shoreline in approximately 5,000 feet of seawater.

3. Defendant HESI was contracted to provide BP with cementing and other services with respect to BP's drilling plan for the Macondo well.

4. On or about October 6, 2009, drilling commenced on the Macondo well using the *Marianas* drilling rig. On or about November 9, 2009, work was halted due to Hurricane Ida.

5. On or about January 31, 2010, the *Deepwater Horizon* drilling rig arrived at the Macondo well to resume drilling pursuant to BP's well design, drilling program, and instructions. On or about April 9, 2010, drilling of the Macondo well was completed, at a total depth of approximately 18,360 feet below sea level.

6. During the evening of April 20, 2010, a blowout occurred on the *Deepwater Horizon*. Natural gas and oil that had entered the well rushed up the riser and onto the rig floor. The natural gas ignited, causing multiple explosions, killing eleven men onboard. A fire onboard the Deepwater Horizon burned for two days, and resulted in the *Deepwater Horizon* sinking on or about April 22, 2010. Beginning at the time of the blowout, oil and natural gas flowed into the Gulf of Mexico.

7. On April 27, 2010, the United States Departments of the Interior and Homeland Security announced investigations of the incident. In the weeks following the blowout, more government investigations were launched. Investigating agencies required that HESI preserve

and produce information, documents and other materials related to HESI's work on the Macondo well. HESI was under a legal obligation to preserve documents relating to the Macondo well.

8. After the incident, HESI and others examined various technical aspects of the well's design and construction. On or about May 14, 2010, HESI's Cementing Technology Director directed a HESI Senior Program Manager for the Cement Product Line ("Program Manager") to run two computer simulations of the Macondo well cementing job using HESI's Displace 3D simulation program to compare alternative predictions of the cement job in the production casing, which included different numbers of centralizers. Displace 3D was a next-generation simulation program that was being developed to model fluid interfaces and their movement through the wellbore and annulus of a well.

9. As directed, the Program Manager ran the simulations, which took over an hour to complete. Program Manager then showed the results, contained on his HESI laptop, to defendant HESI's Cementing Technology Director and possibly one other HESI senior manager. HESI's Cementing Technology Director then directed Program Manager to delete the results even though the Cementing Technology Director and others had been instructed by another Halliburton executive to preserve material related to the Macondo well. Program Manager felt uncomfortable deleting the simulations but nonetheless followed the direction of defendant HESI's Cementing Technology Director to delete the simulations by (1) entering his HESI computer, locating the relevant files within the computer (which files contained a ".d3d" identifier) and deleting those files, and then (2) entering the computer's "Recycle Bin," accessible through the user interface of the computer, and erasing the deleted files from that location as well. Program Manager later acknowledged the deletion to another employee ("Employee 1") and stated, "I did what I was told."

10. In or about May and June 2010, HESI's Cementing Technology Director asked Employee 1, who was more experienced than Program Manager at running Displace 3D simulations, to also run two simulations, which included different numbers of centralizers. Employee 1 did so and then showed at least some of the results, contained on his HESI laptop, to defendant HESI's Cementing Technology Director and another manager. Employee 1 was then directed to delete the simulations. Because Employee 1 felt uncomfortable destroying the simulations, Employee 1 delayed destroying the simulations for some time but, ultimately, like Program Manager before him, deleted them from his HESI computer. Employee 1 was not authorized to delete this data.

11. During ensuing civil litigation and federal criminal investigation by the Deepwater Horizon Task Force, subsequent efforts to forensically recover the deleted Displace 3D computer simulations from May/June 2010 were unsuccessful.

12. The HESI computers upon which the materials were stored and later deleted were used in and affecting interstate and foreign commerce and communication.

13. The conduct of HESI's Cementing Technology Director, as described herein, was unauthorized but within the scope of the Cementing Technology Director's employment. Accordingly, HESI acknowledges criminal responsibility for such conduct.

14. The aforementioned conduct by defendant HESI includes the defendant's knowing transmission of a command and as a result of such conduct intentionally caused damage without authorization to a protected computer, to wit: the deletion on HESI computers of Displace 3D simulations conducted in May/June 2010, in violation of 18 U.S.C. § 1030(a)(5)(A), subject to 18 U.S.C. § (c)(4)(G)(1).