UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig<br>      "Deepwater Horizon" in the Gulf<br>      of Mexico, on April 20, 2010 | MDL NO. 2179<br><br>SECTION J |
| Applies to: *12-311* | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

### ORDER

LIBERTY'S MOTION TO COMPEL (Rec. doc. 10754)

**GRANTED**

On September 14, 2012, Cameron reported that its claim for damages included compensatory damages for post-settlement defense costs incurred on an ongoing basis in connection with the MDL and for attorneys' fees and costs related to brining the action against Liberty. Rec. doc. 10754 (Exhibit A). On June 7, 2013, it amended the initial disclosures and added a claim for:

> Compensatory damages (in an amount to be determined) for costs and fees incurred in connection with Cameron's claim for insurance coverage from Liberty.

Rec. doc. 10754 (Exhibit C).

Liberty International Underwriters, Inc. ("Liberty") seeks an order requiring Cameron to produce a computation of its damages and all documents supporting its damage claims. Cameron responds that it seeks: (1) $50 million, the amount due under the insurance policy; (2) post-settlement defense costs ("MDL Defense Costs") covered by the Liberty policy; and (3) fees and expenses that Cameron has incurred and is incurring to prosecute the claim against Liberty ("Liberty Litigation Expenses").

For the MDL Defense Costs, Cameron reports that it provided Liberty with a list of the fees incurred by law firm or vendor. Cameron submitted a one page schedule listing the fees and costs for the first quarter of 2013. It reports that: (1) it only seeks to recover the Liberty Litigation

Expenses incurred in this action commencing in January 2012 (Rec. doc 10802 at 2, n. 1); and (2) it will provide the current amount of Liberty Litigation Expenses incurred through the first quarter of 2013.

Cameron reports that for the first quarter MDL Defense Costs and the Liberty Litigation Expenses, it will produce the non-privileged content of the invoices from the attorneys and vendors. For a Cameron law firm, Liberty will receive the amount billed, hourly rates, names of timekeepers and the hours recorded.

Cameron reports that it will redact the diary entries on the law firm's invoices because they will reveal attorney-client communications and attorney work-product. It cites Dixie Mill Supply Co., Inc. v. Continental Casualty Company, 168 F.R.D. 554 (E.D. La. 1996) (Wilkinson, M.J.), where the insured sued its insurers for breach of their duty of good faith in failing to defend the insured in asbestos-related personal injury lawsuits. The insured sought production of documents, including attorney invoices, that the insurers contended were protected from disclosure by the attorney-client privilege. The Court determined that the insured's claim of bad faith did not result in a waiver of the attorney-client privilege. Id. at 556. It commented that, although attorney invoices for legal services "are ordinarily not privileged," it appeared that the insured sought the invoices for counsel for an insurer to determine the legal issues researched by the attorneys. The Court stated that, "[w]hen attorney fee information may reveal confidential communications or protected opinion work product, it need not be disclosed." Id. at 559, n.9.

In Hornbeck Offshore Services, L.L.C. v. Salazar, 2011 WL 2214765, 19 -20 (E.D. La. 2011) (Wilkinson, M.J.), the Court stated:

> [T]o the extent that the attorney-client privilege may protect some portions of the invoices, the privilege is waived by seeking reimbursement for attorney's fees. Because plaintiffs' request for attorney's fees necessarily requires them to place the reasonableness of the work at issue, they have waived their privilege as to the invoices.

Id. at *20 (citations omitted).

> Because the amount of fees paid to an attorney are not privileged, it generally follows that the billing statements that attorneys submit to clients are equally discoverable. . . . The defense that production of documents will necessarily reveal client confidences, however, is not usually accepted by the courts or, if accepted, redactions will be ordered to protect the privileged material while allowing discovery of the non-privileged material.

Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine, A.B.A., Sec. of Lit. (5th Ed. 2007), p. 121.

The statements of Cameron's counsel are not ordinarily privileged. Dixie Mill, 168 F.R.D. at 559, n.9. In its claim for the MDL Defense Costs and Liberty Litigation Expenses, Cameron seeks reimbursement for attorney's fees. It placed the reasonableness of its counsel's work at issue and thereby waived the privilege as to the invoices. Hornbeck, 2011 WL 2214765 at *20.

The Court declines to order redactions of any portion of the invoices that Cameron contends are protected from disclosure by the attorney-client privilege or as work-product for two reasons. First is that the Court simply does not have the time to engage in a line by line review of voluminous billing records to determine whether a particular entry is protected from disclosure.

Second is that this problem was foreseeable and could have been easily avoided by Cameron and its counsel. Exhibit D to Liberty's motion is a November 17, 2011 letter from Clyde & Co. on behalf of two of Cameron's insurers (other than Liberty) notifying Cameron of the insurers' objections to the course of action proposed by Cameron regarding negotiations with BP. At least by that point Cameron was on notice that there may be litigation with some of its insurers. Cameron could have instructed its counsel to prepare billing entries without the inclusion of attorney-client

communications or work-product.

Cameron shall provide Liberty with unredacted billing statements.

IT IS ORDERED that:

1. Liberty's motion to compel (Rec. doc. 10754) is GRANTED.

2. **Within fourteen (14) days of the entry of this order**, Cameron shall provide Liberty with the unredacted statements from its counsel and vendors.

3. The deadline for an appeal of this order is **Friday, August 23, 2013.** The appeal of this order shall operate as a stay of the order until there is a final ruling.

New Orleans, Louisiana, this 15th day of August, 2013.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　**SALLY SHUSHAN**
　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**