**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater | : | MDL No. 2179 |
| Horizon" in the Gulf of Mexico, on | : | |
| April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates To: All Actions | : | JUDGE BARBIER |
| | : | MAGISTRATE JUDGE |
| …………………………………………………... | : | SHUSHAN |

**BP'S MEMORANDUM IN SUPPORT OF ITS MOTION *IN LIMINE* TO**
**EXCLUDE NON-FACTUAL FACT WITNESS TESTIMONY FROM PHASE II**

As part of the Phase I proceedings, BP moved to exclude all non-factual testimony by fact witnesses, including opinions from fact witnesses about events and correspondence of which they had no direct knowledge.  Rec. Doc. 5110, 5353.  The Court held that it would determine whether to exclude testimony on this ground at trial or in deciding deposition objections.  Rec. Doc, 5492 (the "Order").  The Court also provided guidance by granting BP's motion in part and excluding eight questions and answers from Randy Ezell's testimony as improper under Rule 701.  *Id.*

BP asked the other parties to have the Court's Order apply to Phase II, so as to establish the fundamental rule that fact witnesses cannot provide non-factual testimony and to have the Court's guidance on how that rule applies.  Nevertheless, the PSC (joined by Halliburton) would not consent to having the Court's Order apply to Phase II, claiming that the "The Order dealt specifically with the testimony of [] Ezell.  The PSC does not believe that any party intends to offer this testimony in Phase 2 and cannot agree to extend this Order further without a specific reference to testimony a party believes should be excluded."  Letter from B. Barr to J. Eisert, et al. (June 27, 2013 17:12).

BP files this Motion to confirm that the basic principle that fact witnesses cannot give non-factual testimony.  This Memorandum provides various examples of fact witnesses offering non-factual testimony in Phase II and requests that the Court bar such testimony.

As explained in BP's original briefing, a fact witness cannot provide non-factual testimony under the clear language of Federal Rule of Evidence 701.  *E.g., United States v. Riddle*, 103 F.3d 423, 429 (5th Cir. 1997); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 459-60 (5th Cir. 1996); *United States v. Marshall*, 762 F.2d 419, 426 & n.8 (5th Cir. 1985); *see generally* Rec. Doc. 5110, 5353.  BP explained that other parties had violated Rule 701 in a variety of ways, such as by having witnesses read e-mails they had never seen before and that were written by other parties, and then asking the witness to opine on its importance.

The Court granted BP's motion in part and denied in part.  Rec. Doc. 5492.  The Court held that the admissibility of live witness testimony would be determined during trial, and for those testifying by deposition the Court would rule on objections to admissibility.  *Id.*  The Court also — "[f]or purposes of guidance at the trial as to the scope of examination for the witnesses to be presented live" — ruled on BP's objections to Randy Ezell's deposition designations.  *Id.* The Court's plain language establishes that the Court was not simply ruling on the testimony of one witness, but instead provided direction for all parties as to what testimony would violate Rule 701.  The Court found that eight questions and answers were improper.  *Id.*  The questions and answers the Court barred included asking Ezell whether certain alleged actions were safe and best practices, Ezell's impressions from reading e-mails between BP employees that he had never seen before, and what would have happened if a cement bond log had been run.  *Id*. Rec. Doc. 5110-1 at 5-9.

This Court's Order, including its guidance about the scope of examination, should apply to Phase II just as it applied to Phase I.  Rule 701 clearly prohibits fact witnesses from offering non-factual testimony.

As in Phase I, and despite the Court's Order, other parties have continued to ask fact witnesses speculative and hypothetical questions, and questions generally outside of their perception.  For example, the PSC asked United States witness Richard Brannon hypothetical questions based on assume facts::

> 123:9   Q. (By Mr. Lundy) All right. *If there had*
> 10      *been* some analysis or modeling done that said
> 11      something to the effect that "If a flow rate is
> 12      at a particular level, Top Kill will not work,"
> 13      you would want to -- you would have wanted to
> 14      know that, wouldn't you?
>
> 15      A. It would have been good to know it.
>
> 16      Q. Yeah. I mean, that would have helped
> 17      determine whether the Top Kill would have been a
> 18      waste of time, wouldn't it?
>
> 19      A. I assume.
>
> 20      Q. Yeah. I mean, if -- *if someone knew*
> 21      *that* -- that at a certain flow rate, the Top Kill
> 22      wouldn't work, and the well was actually flowing
> 23      greater than that rate, I mean, it would have
> 24      been a waste of time and resources to attempt the
> 25      Top Kill, correct?
>
> 124: 1 A. I would assume, yes.

Brannon Dep. at 123:9-124:1 (emphasis added).  The PSC also asked fact witnesses for expert opinion, such as by asking Halliburton witness Richard Vargo for his opinion about the top kill operation:

> 316:21 Q. And so what is Halliburton's
> 22      opinion as we sit here today?

23 A. With the knowledge that the top
24 kill could not have worked based on the
25 15,000 barrel per day limitation, then we
317: 1 shouldn't have moved forward with the top
2 kill …

Vargo Dep. at 316:21-317:2.

Transocean also asked United States fact witness Rear Admiral Kevin Cook to assume

certain facts and testify to what he would have done had he received certain alleged information:

563: 3 Q. (By Mr. Baay) Let's assume you received
4 information as of May 19th, 2010 showing a flow
5 rate of greater than 15,000 barrels per day. Do
6 you follow?

7 A. Yes.

8 Q. Would that have influenced your decision
9 to perform the top kill, considering you had
10 analysis that showed that a flow rate of greater
11 than 15,000 barrels per day would lead to an
12 unsuccessful top kill?

13 A. I'm saying it would have been included in
14 the -- the considerations. …
20 So, you know, whether that
21 con -- the concern of flow rate would have been
22 mitigated through additional analysis, I -- I
23 can't answer that.

Cook Dep. at 563:3-23.

Asking such hypothetical questions, based on assumed facts, violate Rule 701. "[T]he

ability to answer hypothetical questions is the essential difference between expert and lay

witnesses." *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) (internal

quotation marks and brackets omitted) (collecting cases). Similarly, asking fact witnesses for

opinion testimony that requires specialized knowledge also violates Rule 701, as "a person may

testify as a lay witness only if his opinions or inferences do not require any specialized

knowledge and could be reached by any ordinary person. *See Doddy v. Oxy USA, Inc.*, 101 F.3d

448, 460 (5th Cir. 1996).   The previous questioning from the PSC and Transocean, among similar improper questioning of fact witnesses by other parties, breach these clear rules.   Such questions and answers should be barred, and the Court should re-affirm that its prior Phase I Order and guidance apply equally to Phase II.

For these reasons, BP respectfully requests that its motion *in limine* be granted and that the Court exclude all non-factual testimony by fact witnesses, either oral or written, during the Phase II trial.

Dated:  August 18, 2013

Respectfully submitted,

/s / Don K. Haycraft

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration &*
*Production Inc. & BP America Production*
*Company*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 18th day of August, 2013.

/s/  Don K. Haycraft__