

**DALLAS** HOUSTON PLANO
Plano office by Appointment Only

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
214.939.4400
800.662.8393
214.760.7332 Fax

**www.GodwinLewis.com**

DONALD E. GODWIN
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:    214.939.4412
DIRECT FAX:     214.939.4803
Don.Godwin@GodwinLewis.com

August 15, 2013

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

      Re:    MDL 2179 – *Motion to Strike Expert Opinions Regarding the Condition and Placement of Bottom-Hole Cement*

Dear Judge Shushan:

      Based upon the Court's recent rulings, all parties who are allowed to participate in the Phase Two – Quantification Trial can comment on or present expert opinions about the cement that HESI pumped into the Macondo well. HESI, however, can neither present its own witnesses to counter these opinions, nor question a single witness about such opinions. *See* Rec. doc. 10981. By allowing Dr. Momber to offer cement opinions, but at the same time, striking Dr. Ravi's and Section II(b)(i) of Dr. Stevick's report, HESI has been placed in an unfair, no win situation. Therefore, to attempt to level the playing field, HESI files this Motion to Strike Expert Opinions Regarding the Condition and Placement of Bottom-Hole Cement.

      HESI moves to strike certain opinions regarding the condition and placement of bottom-hole cement that appear in the Phase Two Reports of Andreas Momber, Glen Benge, Hans Vaziri, Ronald Dykhuizen, and Stewart Griffiths.[1] As virtually every party admits, cement provided at least some degree of a restriction to bottom-hole flow, and HESI is not opposed to opinions that acknowledge the unknown variable of the cement in the well or the possibility of

---

[1] To date, Benge and Vaziri have not been listed as testifying witnesses in the Phase Two – Quantification trial. Nonetheless, HESI includes their reports in this Motion because Griffiths and Dykhuizen (who are listed as testifying experts for the United States) rely on Benge, and Srdjan Nesic (who is listed as a testifying expert for BP) relies on Vaziri.

its erosion as the well flowed after April 20, 2010. However, the expert reports of the foregoing witnesses contain many opinions that such witnesses are not qualified to make[2] and/or concern matters that were hotly contested during the Phase One trial. Specifically, HESI moves to strike the following opinions from their respective expert reports:[3]

## BP's Experts

| Expert | Source | Opinion |
|---|---|---|
| Momber, Andreas | Expert Report; 5/1/13 at p. 2. (Exhibit A, Filed Under Seal) | ███ |
| Momber, Andreas | Expert Report; 5/1/13 at pp. 5-6. (Exhibit A, Filed Under Seal) | ███ |
| Momber, Andreas | Expert Report; 5/1/13 at p. 6. (Exhibit A, Filed Under Seal) | ███ |
| Momber, Andreas | Expert Report; 5/1/13 at pp. 7-8. (Exhibit A, Filed Under Seal) | ███ |

---

[2] HESI reserves the right to file a *Daubert* challenge on any expert witness unqualified to issue any opinions regarding the condition and/or placement of the bottom-hole cement.

[3] HESI met and conferred with BP and the United States in order to attempt to reach a resolution on this issue without the need for the Court's intervention. BP and the United States currently decline to withdraw these opinions, however, the parties have agreed to meet and confer after the filing of this motion.

-2-

| Expert | Source | Opinion |
|---|---|---|
|  |  | ■■■ |
| Momber, Andreas | Expert Report; 5/1/13 at p. 6. (Exhibit A, Filed Under Seal) | ■■■ |
| Momber, Andreas | Expert Report; 5/1/13 at pp. 12-13. (Exhibit A, Filed Under Seal) | ■■■ |
| Momber, Andreas | Expert Report; 5/1/13 at p. 14. (Exhibit A, Filed Under Seal) | ■■■ |
| Vaziri, Hans | Expert Report, at page 7. (Exhibit C, Filed Under Seal) | ■■■ |

---

[4] At his deposition, Dr. Momber admitted that this was an incomplete list, which favors BP's position in the case. *See* Deposition of Andreas Momber, 521:22 – 522:7, 525:4 – 525:22 (Exhibit B). But of course since Halliburton cannot participate in Quantification, the Court will probably never even hear this testimony.

2217178 v2-24010/0002 PLEADINGS

**United States' Experts**

| Expert | Source | Opinion |
|---|---|---|
| Benge, Glen | Rebuttal Report; 6/7/13 at p. 2. (Exhibit D) | I have been asked to respond to the expert report of Dr. Andreas Momber titled "Erosion of Well Cement Due to Hydrocarbon Flow." Dr. Momber makes **4 key statements** that are core to his opinions:<br>• Statement 1: The initial assumption made by Dr. Momber is there was set cement at the bottom of the well which would have provided resistance to flow.<br>**Response:** Evidence presented in Phase 1 of the case clearly shows the cement in the Macondo well was **not set** at the time of the negative test. As such, it was acting as a fluid and not a set material, and therefore could not have provided resistance to flow. For the unset cement to have acted as any sort of barrier to flow in the well, as implied by Dr. Momber, is clearly in error.<br>• Statement 2: Momber contends the cement in the well would have impeded flow dramatically, and as flow continued over time, the cement would have been degraded.<br>**Response:** As noted above, without the presence of set cement, there is no impediment to flow. The cement slurry used in the Macondo well was incapable of providing an impediment to flow.<br>• Statement 3: Momber contends that the United States' expert reports ignore or misjudge the importance of cement erosion.<br>**Response:** The expert report of Dr. Griffiths addresses barriers in the well, and specifically notes that if the cement were to have been set, or other barriers present in the well (like the float collar) they would not have provided a barrier for any appreciable length of time. Dr. Momber ignores any other potential barriers to restrict flow in the well like the float collar, and incorrectly assumes the only barrier would be due solely to the cement. |
| Benge, Glen | Rebuttal Report; 6/7/13 at p. 5. (Exhibit D) | Considering the cement as placed in the Macondo well was **NOT SET** at the time of the negative test, the arguments put forth by Dr. Momber are moot .... At the start of the blowout, for the cement in the shoe track (the bottom 189 feet of pipe in the well) to have impeded the flow of the oil, the cement must have been set with measureable strength. Evidence in Phase I clearly established that the cement was not set and had not formed a barrier in the well. |
| Benge, Glen | Rebuttal Report; 6/7/13 | Dr. Momber states that for the government reports to be valid, erosion rates for set cement would be much higher |

| Expert | Source | Opinion |
|---|---|---|
| | at p. 6. (Exhibit D) | than for the construction concrete mixtures noted in Dr. Momber's report. The high rates characterized in the government reports, however, are not due to erosion, but the simple fact that there was not set cement in the bottom of the Macondo well. |
| Dykhuizen, Ronald | Rebuttal Report; 6/10/13, at p. 12. (Exhibit E) | Dr. Momber proposes that the cement rapidly failed resulting in a 2.17 inch channel through 189 linear feet. He then proposes that further failure of the cement occurred very gradually. Dr. Momber's proposed scenario is not credible. He provides some mechanisms that might have caused the rapid formation of the assumed initial 2.17 inch channel in "deteriorated" cement. Dr. Momber claims that "erosional processes cannot explain this short-time event." I completely agree that the short time event was not caused by erosional processes. However, it did not occur in "deteriorated" cement as Dr. Momber assumes. This cement was freshly poured and thus not deteriorated. In fact, the United States' cement expert Benge (TREX 5990), BP's cement expert Calvert (TREX 22791), and BP's Macondo Wells Team Leader Guide (Trial Transcript 8950:17-8951:10) all agree that the cement was not set at the time of the negative pressure test. It is likely that unset or poorly formed cement failed completely and quickly, not in two separate time scales as proposed by Dr. Momber. Dr. Momber tries to present literature values for erosion rates in volume per time to demonstrate that the rapid failure assumed by myself and Dr. Griffiths is not credible. However, these rates are more traditionally presented in other units (length per time), and these rates are for concretes (as opposed to well cements) that are successfully formed. They in no way apply to the cement in the Macondo well. |
| Griffiths, Stewart | Expert Report; 3/22/13 at p. 4. (Exhibit F, Filed Under Seal) | |
| Griffiths, Stewart | Expert Report; 3/22/13, at pp. 11-12. (Exhibit F, Filed Under Seal) | |

2217178 v2-24010/0002 PLEADINGS

| Expert | Source | Opinion |
|---|---|---|
| | | ■■■■■■■■■■■■■■■ |
| Griffiths, Stewart | Rebuttal Report; 6/10/13 at pp. 14-15. (Exhibit G, Filed Under Seal) | ■■■■■■■■■■■■■■■ |

    The opinions noted above are: (1) repetitive, inaccurate, and incomplete representations of the Phase One trial record; (2) rife with assumptions about the condition and placement of bottom-hole cement; (3) new gratuitous attacks on HESI's cement; and (4) in the case of Andreas Momber, an attempt to bolster BP's nitrogen breakout theory, which is against the clear weight of the evidence presented during the Phase One trial. This targeted Motion to Strike seeks to avoid new attacks on the Phase One trial record and to eliminate any confusion of the issues addressed in the Phase One trial.

-6-

## Discussion

The Phase One Trial record is closed, yet BP and the United States continue their attack on HESI's cement. This continued attack is particularly prejudicial due to HESI's complete exclusion from Phase Two – Quantification discovery and trial proceedings and the Court's Orders striking the Ravi Report and Section II(b)(i) of the Stevick Report.

BP and the United States should not be permitted to backdoor and re-open the Phase One record or bolster their Phase One contentions under the pretense of Phase Two – Quantification expert analysis. As the Court's determinations suggest, the Phase One record on the condition of HESI's cement is closed and, unless experts for BP and the United States are going to consider the totality of that record, they should not be permitted to cherry-pick evidence supporting their opinions without considering the overwhelming weight of evidence that counters it. HESI is not requesting that every expert report that comments on cement be stricken; to the contrary, it agrees with other parties that the "condition of the bottom-hole cement in the Macondo well is relevant to ... flow rates...." Rec. doc. 10751, at p. 2.[5] Instead, HESI seeks to strike unnecessary and carefully crafted opinions that the cement was "disturbed," "deteriorated," "flaw[ed]," "pre-damaged," "fragment[ed]," "failed," "unset," "poorly formed," had "negligible" strength, or that otherwise make assumptions about its placement. *See supra*. These unrebutted opinions are either misleading, based on cherry-picked Phase One trial evidence, or new Phase One evidence under the pretense of Phase Two.

In Phase Two, BP and the United States continue to attack HESI's cement by relying on unsupported assumptions about its condition and placement. For example, the United States continues to rely on its Phase One theory that the cement was not set at the time of the blowout, as a predicate for its Phase Two expert opinions on quantification. Likewise, BP continues to rely in Phase Two on a Phase One cement theory that is unsupported by Phase One expert testimony – that nitrogen somehow migrated backwards from the foam cement into the unfoamed shoe track cement, resulting in shoe track cement that was permeable to flow.[6] In Phase Two, BP makes assumptions about the condition and placement of the shoe track cement, and continues to argue that the cement was inadequately designed and tested.[7] These opinions are Phase One issues, not Phase Two. BP's disguised Phase One arguments ignore Glen Benge's testimony rejecting the possibility of its nitrogen breakout theory, and the United States' disguised Phase One arguments ignore evidence showing that the cement had sufficient

---

[5] That is the precise reason HESI should be allowed to participate in the Quantification portion of the Phase Two trial.

[6] As noted in its Memorandum in Support of HESI's Objections to and Appeal from Magistrate Judge's Order Regarding BP's Motion to Strike Kris Ravi's Phase Two Rebuttal Report and Glen Stevick's Phase Two Rebuttal Report, Section II(b)(i) (Rec. doc. 10809-1), which HESI hereby incorporates by reference, BP's theory of permeable-cement caused by nitrogen breakout is not supported by a single Phase One expert. BP is attempting to impermissibly resurrect this argument in Phase Two of this litigation.

[7] From this premise, BP's expert, Momber, opines that only a new cement fragmentation theory can square BP's quantification analysis with Emilsen's initial OLGA model, even though HESI's quantification experts (who have now been excluded from the Phase Two – Quantification trial by the Court) could demonstrate, if permitted, that such OLGA modeling is consistent with the Phase One evidentiary record of a casing breach.

compressive strength. Neither BP nor the United States will raise these rebuttal points at trial because neither party is aligned with HESI on these issues.

Furthermore, several gratuitous comments about the condition of the cement are haphazardly inserted into the reports with absolutely no foundation. Indeed, Momber concedes that he is not an expert on foam cement jobs, yet he opines that the cement design was flawed and that the testing regime was inadequate. *See* Deposition of Andreas Momber, 36:25 – 37:7, 39:5 – 39:23, 154:4 – 157:24, 210:11 – 211:8 (Exhibit B). Similarly, Hans Vaziri, Ronald Dykhuizen and Stewart Griffiths randomly opine that the cement failed, yet fail to establish their credentials or the basis for drawing these conclusions. *See* Deposition of Hans Vaziri, 225:8 – 226:6 (Exhibit H); Deposition of Ronald Dykhuizen, 41:16 – 41:17; 249:3 – 249:25 (Exhibit I); Deposition of Stewart Griffiths 665:5 – 665:11 (Exhibit J). By selectively choosing what Phase One evidence on which to rely, BP and the United States are effectively retrying Phase One issues, unchallenged, in Phase Two.

For the reasons stated above, HESI respectfully requests that the Court strike the aforementioned excerpts from the reports of Andreas Momber, Glen Benge, Hans Vaziri, Ronald Dykhuizen, and Stewart Griffiths and that the Court limit the ability of any Phase Two – Quantification witness to testify about the condition and placement of bottom-hole cement at the Phase Two – Quantification trial. This is a very limited subset of opinions that HESI requests the Court strike, which should not unduly prejudice any proffering party otherwise in the Phase Two – Quantification trial. However, if HESI's requested relief is not granted it will be unfairly prejudiced and harmed as it will be denied the right to defend against the accusations of BP and the United States.

Respectfully submitted,

Donald E. Godwin

DEG:eag

Exhibits

cc (via electronic mail):

United States' MDL Counsel
Plaintiffs' Liaison Counsel
Defense Liaison Counsel

2217178 v2-24010/0002 PLEADINGS