# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 12-2339 & 12-2354

ERIC SILVERMAN, *et al.*,

            *Plaintiffs-Appellees,*

*v.*

MOTOROLA SOLUTIONS, INC., *et al.*,

            *Defendants-Appellees.*

Appeals of:

    EDWARD FALKNER and PAUL A. LILES

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 07 C 4507 — **Amy J. St. Eve**, *Judge.*

ARGUED NOVEMBER 1, 2012 — DECIDED AUGUST 14, 2013

Before EASTERBROOK, *Chief Judge,* and ROVNER and HAMILTON, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* A class of Motorola's investors contended that, during the second half of 2006, the firm made false statements in order to disguise its inability to deliver a competitive mobile phone that could employ 3G pro-

tocols. When the problem became public, the price of Motorola's stock declined. After the suit had been pending for four years, the district court denied Motorola's motion for summary judgment. 798 F. Supp. 2d 954 (N.D. Ill. 2011). The parties then settled for $200 million. None of the class members contends that this is inadequate—but two contend that the judge abused her discretion by approving counsel's proposal that they receive 27.5% of the fund. See 2012 U.S. Dist. LEXIS 63477 (N.D. Ill. May 7, 2012).

Paul Liles, one of the objectors, protested almost a month after the deadline. And although he filed a belated objection to the award of legal fees, he did not file a claim to his share of the recovery. He thus lacks any interest in the amount of fees, since he would not receive a penny from the fund even if counsel's take should be reduced to zero. The class representatives' appellate brief flags this problem; Liles's reply brief ignores it. We dismiss his appeal on the ground that he lacks any interest in the outcome.

Edward Falkner, the other objector, contends that the award is improper because it was fixed at the end of the litigation. He maintains that fee schedules should be set at the outset, preferably by auction in which law firms competing to represent the class tell the judge how much they will accept, and the judge picks the low bidder. We agree with Falkner's premise that attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services. See *In re Continental Illinois Securities Litigation*, 962 F.2d 566, 572 (7th Cir. 1992); *In re Synthroid Marketing Litigation*, 264 F.3d 712, 718 (7th Cir. 2001) (*Synthroid I*); *In re Synthroid Marketing Litigation*, 325 F.3d 974, 975 (7th Cir. 2003) (*Synthroid II*). In many

markets competition proceeds by auction. But we also observed in *Synthroid II*, 325 F.3d at 979–80, that solvent litigants do not select their own lawyers by holding auctions, because auctions do not work well unless a standard unit of quality can be defined and its delivery verified. There is no "standard quality" of legal services, and verification is difficult if not impossible.

The two *Synthroid* decisions observed that establishing a fee structure at the outset of a suit is desirable; unlike auctions, which private markets in legal services do not use, *ex ante* fee structures are common and beneficial to clients. But neither *Synthroid* nor any other decision of which we are aware holds that fee schedules set *ex ante* are the *only* lawful means to compensate class counsel in common-fund cases. It is unfortunate that the district judge originally assigned to this case did not consider the possibility of establishing a fee schedule when he appointed a lead plaintiff and approved that party's choice of counsel. By the time that judge died, and the case had been reassigned to the judge who awarded the fees, it was not possible to recreate the conditions that existed at the case's outset. Too much legal time had been sunk into the litigation, and it would have been counterproductive to invite other law firms to make other offers and, if selected, start over.

When reviewing awards set after the fact, the court of appeals asks whether the district judge has abused her discretion. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 973 (7th Cir. 1991). Falkner contends that the judge abused her discretion here because fees substantially less than 27.5% have been awarded in other cases. Data show that 27.5% is well above the norm for cases in which $100 million or more changes

Nos. 12-2339 & 12-2354 4

hands. See Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Studies 811 (2010); Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. Empirical Legal Studies 248 (2010); Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. Empirical Legal Studies 27 (2004). Eisenberg and Miller find that the mean award from settlements in the $100 to $250 million range is 12% and the median 10.2%. All three articles find that the percentage of the fund awarded to counsel declines as the size of the fund increases. An award fixed at 27.5% of a $200 million fund is exceptionally high.

It does not necessarily follow that 27.5% is legally excessive. Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel. See *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986). The district court received a report from Professor Charles Silver, who concluded that this suit was unusually risky. Defendants prevail outright in many securities suits. This one took more than four years, and more than $5 million in out-of-pocket expenses by counsel to conduct discovery and engage experts, before reaching the summary-judgment stage. Only after the district court denied its motion for summary judgment was Motorola willing to settle for a substantial sum—and Motorola might well have prevailed on summary judgment but for some unanticipated facts plaintiffs' lawyers turned up in discovery. When this suit got under way, no other law firm was willing to serve as lead counsel. Lack of competition not only implies a higher fee but also suggests that most members of the securities bar

saw this litigation as too risky for their practices. The district judge did not abuse her discretion in concluding that the risks of this suit justified a substantial award, even though compensation in most other suits has been lower.

Our concern is less with the absolute level of fees than with the structure of the award. The articles we have cited reinforce the observation in the *Synthroid* opinions that negotiated fee agreements regularly provide for a recovery that increases at a decreasing rate. In *Synthroid II*, for example, the award was 30% of the first $10 million, 25% of the next $10 million, 22% of the band from $20 to $46 million, and 15% of everything else.

Many costs of litigation do not depend on the outcome; it is almost as expensive to conduct discovery in a $100 million case as in a $200 million case. Much of the expense must be devoted to determining liability, which does not depend on the amount of damages; in securities litigation damages often can be calculated mechanically from movements in stock prices. There may be some marginal costs of bumping the recovery from $100 million to $200 million, but as a percentage of the incremental recovery these costs are bound to be low. It is accordingly hard to justify awarding counsel as much of the second hundred million as of the first. The justification for diminishing marginal rates applies to $50 million and $500 million cases too, not just to $200 million cases.

Awarding counsel a decreasing percentage of the higher tiers of recovery enables them to recover the principal costs of litigation from the first bands of the award, while allowing the clients to reap more of the benefit at the margin (yet still preserving some incentive for lawyers to strive for these higher awards). Professor Silver's report does not identify

Nos. 12-2339 & 12-2354                                           6

suits seeking more than $100 million in which solvent clients agree *ex ante* to pay their lawyers a flat portion of all recoveries, as opposed to a rate that declines as the recovery increases. The district judge did not discuss whether a market-based rate would include different portions of different bands of the recovery. There's a reason for that omission: Falkner did not raise this subject in the district court. (Nor did he call the judge's attention to data showing that 27.5% substantially exceeds the norm for large settlements. Falkner pointed to three cases where the rates were low, but the district court needed data rather than cherry-picked examples.)

A district judge, looking out for the interests of all class members, sometimes must consider issues that the class representatives and their lawyers prefer to let pass. This is not such a situation, however. Institutional investors such as pension funds and university endowments hold claims to more than 70% of the settlement fund. These institutional investors have in-house counsel with fiduciary duties to protect the beneficiaries. That these large investors, looking out for themselves, help to protect the interests of class members with smaller stakes is a premise of several rules in the Private Securities Litigation Reform Act of 1995. The difference between 27.5% of $200 million and a smaller award (say, one averaging 20%) could be a tidy sum for institutional investors (including this suit's lead plaintiff, a pension fund), one worth a complaint to the district judge if the lawyers' cut seems too high. Yet none of the institutional investors has protested—either by filing a motion asking the judge to reduce the fees or by supporting Falkner's position in this court. This award may be at the outer limit of reasonableness, but, given the way the subject was litigated in the dis-

trict court, deferential appellate review means that the decision must stand.

Appeal No. 12-2339 is dismissed for lack of a justiciable controversy. In appeal No. 12-2354, the decision is affirmed.