UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater | : | MDL No. 2179 |
| Horizon" in the Gulf of Mexico, on | : | |
| April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates To: All Actions | : | JUDGE BARBIER |
| | : | MAGISTRATE JUDGE |
| …………………………………………………... | : | SHUSHAN |

**BP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF DR. ROBERT BEA**

The PSC has proffered Dr. Robert Bea to opine on BP's plans and preparations to respond to a deepwater blowout prior to April 20, 2010. Dr. Bea opines (1) that BP's planning for a blowout was inadequate because it failed to make risk "as low as reasonably practicable" ("ALARP"), and (2) that BP's supposed planning shortcomings stem from its management's disregard of risks of loss of containment and spills in deepwater. *See* (Phase 2) Initial Report at 1, 8; (Phase 2) Rebuttal Report. Dr. Bea was also retained by the PSC as an expert in Phase 1 on the subject of "management of catastrophic risk." Trial Tr. at 273:1-3.[1]

For the reasons explained below, Dr. Bea's opinions should be excluded. ***First***, Dr. Bea's opinion that BP's plans and preparations for a deepwater blowout did not comply with

---

[1] Dr. Bea testified at the Phase 1 trial. Before his testimony, BP counsel raised the issue of the pending Phase 1 *Daubert* motion. (*see* Rec. Doc. 5389, filing *Daubert* motions under seal; Trial Tr. at 271:7-23.) The Court acknowledged the motion and noted, "Since I am the fact finder and also the person who has to decide whether something is relevant or admissible, I have to see it and consider it in any event, whether I do now or do that later. I'm just trying to facilitate moving this trial along without having *Daubert* hearings during the middle of the trial." Trial Tr. at 271:7-23. The Court noted that while he chose to "overrule the *Daubert* motions," the Court was not deciding the substance of the motions: "When I say I overrule the motion, I'm not discounting the fact that I may ultimately agree with you to the extent that some of the opinions may not be ultimately accepted by the Court, okay." *Id.* To the extent necessary, BP reiterates and incorporates all arguments from the Phase 1 *Daubert* motion for Dr. Bea. (*See* Rec. Doc. 5389.)

ALARP is unreliable because he failed to perform key steps in the analytical method that he claims to have used in reaching this conclusion.  **Second,** Dr. Bea's opinions include improper and inadmissible legal conclusions.  **Finally**, certain of Dr. Bea's opinions present Phase 1 issues that are inappropriate for presentation during the Phase 2 trial.[2]

## ARGUMENT

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, as interpreted by the Supreme Court in *Daubert v. Merrell Dow. Pharm., Inc.*, 509 U.S. 579 (1993). Expert opinions must be both relevant and reliable to be admissible. *Id.* at 591-92. To be relevant, the opinions must "assist the trier of fact to understand or determine a fact in issue." *Id*. To be reliable, the reasoning or methodology underlying the expert's testimony must be scientifically valid. *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 592-93). Dr. Bea's opinions lack reliability and should not be offered at trial.

**I.     Dr. Bea's ALARP Opinion Is Unreliable Because He Fails to Employ a Reliable Methodology.**

To be admissible, an expert must employ a reliable methodology in rendering opinions. *Daubert v. Merrell Dow Pharm.*, 509 U.S. at 592-93.  The methodology must also be reliably applied to the facts at issue. *Id.*; *Kirby Inland Marine*, 482 F.3d at 354-55.  The ultimate objective of a reliability analysis is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  An expert's assurances that his

---

[2] As explained in the text below, BP's motion with respect Dr. Bea's ALARP and legal opinions is based on the rule in *Daubert v. Merrell Dow. Pharm., Inc.*, 509 U.S. 579 (1993).  BP's motion regarding Dr. Bea's Phase 1 opinions is based on PTO 41 (Rec. Doc. 6592), which exercised the Court's power under Fed. R. Evid. 403 to structure its receipt of testimony and evidence.

2

methodology is scientific or generally accepted within his field are insufficient. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

As Dr. Bea describes it, "the goal of Process Safety Management Prevention and Mitigation is to assure that the likelihood and consequences of a major system failure are ALARP," based on a process safety management system developed in the United Kingdom and Australia. Initial Report at 8. Dr. Bea opines that BP's preparations for a deepwater blowout did not comply with ALARP. *Id.* at 20. Putting aside the fact that United States regulations for offshore facilities and blowout responses do not incorporate ALARP, Dr. Bea's supposed ALARP analysis is incomplete and therefore unreliable.

As an initial matter, Dr. Bea could not explain what technologies he thinks BP should have possessed in order to comply with ALARP. When asked to identify the barriers BP "need[ed] to have in place to be fit for purpose mitigation barriers to comply with ALARP," Bea first offered a vague list of unspecified "sets of equipment, hardware, people trained to deploy this equipment and hardware … containment and second tier, second level blowout controls or remote operated vehicle interventions … and capping stack interventions." Bea Dep. at 39:13-40:17. Later in his deposition, after suggesting BP should have had something more in terms of a "post-blowout source control system," Dr. Bea admitted he had not "identified technology that was required to be ALARP," and could not identify anything in particular BP needed to have in place. *Id.* at 57:22-58:19 ("Q: Okay. So you just think something needed to be there, but can't specify what? A: Correct."); *see also id.* at 133:10-21 (stating he has not identified what equipment would be needed to respond to the numerous possible blowout scenarios).

Turning to the specific elements of an ALARP analysis, Dr. Bea admitted that he failed to include basic elements in the ALARP framework in his work prior to deciding to opine that BP was not compliant with ALARP.

*First*, although Dr. Bea agrees that industry standards form a part of ALARP analysis, Bea Dep at 123:1-5, he nonetheless concedes that he failed to review such standards in preparing his report. *Id.* at 123:19-23 ("Q: So you didn't take analysis to determine the industry standard to respond to a blowout in the Gulf of Mexico on any kind of well, correct? A: Correct."). Despite concluding BP failed to have an ALARP source control plan, he did not compare BP's system to others in the industry. *Id.* at 107:21-108:2 ("Q: Did you review other OSRPs in preparing your opinion in this case? ... A: No, I did not."); *id.* at 118:9-17 ("Q: [S]o you have no idea what the industry standard as of April 20, 2010 was in responding to a blowout in the Gulf of Mexico? … A: Well, I haven't reviewed any other oil spill response plans. So I can't opine that it was or was not an industry standard.").

*Second*, although Dr. Bea has stated that "Cost Benefit economic analyses" is part of the ALARP framework, Initial Report at 9, he nonetheless concedes that he failed to conduct such an analysis. Bea Dep. at 59:16-20 ("Q: And you didn't undertake a cost/benefit analysis, correct? … A: That's correct."). Nor did Dr. Bea utilize either of the other two methods he identifies. Initial Report at 9 (describing cost-benefit economic analysis, historic precedents analysis and standards of care (standards of practice) analysis as "three general approaches" to define ALARP; Bea Dep. at 60:1-21 (explaining that Dr. Bea did not look at the historical usage of deepwater capping stacks as it was beyond "the scope of [his] knowledge and work"). In sum, Dr. Bea failed to demonstrate the requisite intellectual rigor to opine that BP's source control plan was not compliant with ALARP.

## II.     Dr. Bea's Legal Conclusions Are Inadmissible.

The Fifth Circuit has held that "an expert may never render conclusions of law." *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009). "[E]xperts cannot opine as to what law governs an issue or what the applicable law means because such opinions impermissibly intrude upon the role of the court." *BNY Mellon, N.A. v. Affordable Holdings, Inc.*, No. 1:09CV226–SA–JAD, 2011 WL 2746301, at * 1 (N.D. Miss. July 12, 2011) (collecting cases from other circuits); *see also Mola Dev. Corp. v. United States*, 516 F.3d 1370, 1379 (Fed. Cir. 2008) ("Because the proper interpretation of ... regulations is an issue of law, expert testimony relating to this question, such as the affidavit of a former government official, 'should not be received, much less considered.'"). This rule applies equally to conclusions about whether a party is acting "reasonably." *Estate of Sowell v. United States*, 198 F.3d 169, 171-72 (5th Cir. 1999).

Dr. Bea's report is nonetheless replete with improper legal conclusions. Dr. Bea frequently characterizes actions as "reckless." Initial Report at 1, 2, 13, 25, 28, 34; Rebuttal Report at 2. He concludes that BP management "willfully ignored" certain warnings. *Id.* at 3. Moreover, Dr. Bea also interprets the meaning of certain regulatory requirements. *Id.* at 7, 25-26, 27, 34. All of these statements improperly invade the province of the Court and address subjects on which Dr. Bea is necessarily unqualified to offer expert testimony.

## III.    Dr. Bea's Opinions that Overlap with Phase 1 Should Be Excluded.

Under Federal Rule of Evidence 403, "the Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: … undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *Leefe v. Air Logistics*, 876 F.2d 409, 410 (5th Cir, 1989) ("It is within the power of the district

5

court to exclude testimony that is repetitious and cumulative of testimony already before the court.").

Large portions of Dr. Bea's Phase 2 report are duplicative of his Phase 1 expert report and testimony. Dr. Bea writes, for example, that a "focus of this [Phase 2] report is specifically on 'source control' and how BP Management failures to implement Fit-For-Purpose mitigation barriers, and *refusal to heed lessons learned from previous industry and BP Process Safety Management failures*, caused the Macondo blowout …." Initial Report at 6 (emphasis added). But the alleged BP "process safety management" failures that supposedly "caused the Macondo blowout" were a particular focus of Dr. Bea's Phase 1 Report. *See* TREX 20001 (Bea Phase 1 Report).

Dr. Bea's Phase 2 report nonetheless includes numerous references to topics already covered in Phase 1.[3] (For instance, Dr. Bea's Phase 2 report discusses the Ixtoc I spill in 1979 that was a subject of discussion in his Phase 1 report (*Compare* Initial Report at 22-23, 29 *with* TREX 20001 at 12).) And Dr. Bea attempts with one statement to "incorporate[s] by reference" whole categories of "factual findings, reliance materials and opinions" presented in his Phase 1 report. Initial Report at 6.

---

[3] *See e.g.*, Initial Report at 17 ("BP Management Identified Deepwater Blowouts as a High Risk, High Consequence Event"); *id.* at 21 (opining that BP failed to control risks "before the well was drilled"); *id.* at 20 (analyzing the Macondo Risk Register and discussing actions of "BP Macondo management and drilling team…."). Bea also admitted that his Phase 2 opinions overlap with his Phase 1 testimony. Bea Dep. at 43:11-44:10 (Q:…Any other equipment necessary for blowout mitigation, in your view, for a operator to be ALARP? … A: Well, I can cite an example. The basic design of the well needs to be--which is a Phase 1 topic…."); *id.* at 61:3-62:3 (discussing Figure 4 of Phase 2 report having the vertical scale "applying to the things that impact the likelihood of an uncontrolled blowout, chiefly termed Phase 1 factors"); Bea also acknowledged that he relied on Phase 1 witnesses and Phase 1 related testimony. *Id.* at 222:16-19 ("Q: But--so you did cite Mr. Jassal's testimony is from a Phase 1 deposition, correct? A: Yes.").

Dr. Bea's attempt to insert additional Phase 1 opinions into the Phase 2 trial is a waste of time and unnecessary where the both are part of a single trial. *See* PTO 41 (Rec. Doc. 6592). Accordingly, none of Dr. Bea's duplicative Phase 1 opinions should be admitted.

## CONCLUSION

BP respectfully requests that the Court enter an order excluding Dr. Bea from offering at trial (1) any opinion that BP needed additional plans or materials to address source control prior to April 20, 2010; (2) any legal conclusions; and (3) any Phase 1 opinions.

Dated: August 19, 2013

Respectfully submitted,

/s / Don K. Haycraft

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration &
Production Inc. & BP America Production
Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 19th day of August, 2013.

                                                            /s/  Don K. Haycraft