# Attachment 1

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig | : | MDL NO. 2179 |
| "Deepwater Horizon" in the Gulf | : | |
| of Mexico, on April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates to: | : | JUDGE BARBIER |
| | : | |
| Civ. No. 10-4536 | : | MAG. JUDGE SHUSHAN |

. . .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. ..

**PLANTIFF UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE INCLUSION OF DISSOLVED OIL IN THE CALCLUATION OF THE STATUTORY MAXIMUM PENALTY**

Through their expert Curtis Whitson, BP and Anadarko argue that approximately ten percent of the oil spilled from the Macondo well into the Gulf of Mexico should not be counted in this case. BP and Anadarko have posited that oil that reaches the Gulf of Mexico's waters, but dissolves into the water before reaching the Gulf's surface should be ignored. That opinion is foreclosed by the statute and case law – and even by BP's own arguments in this case. For the reasons set forth in the attached memorandum of law and based upon the facts set forth in the attached statement of material facts, the United States submits this motion for partial summary judgment on a pure question of law – whether BP and Anadarko should be precluded from arguing that discharged oil that dissolves into Gulf waters before reaching the surface should be excluded from the calculation of the volume of oil discharged from the Macondo well, for purposes of determining the statutory maximum penalty under 33 U.S.C. § 1321(b)(7).

1

Respectfully submitted,

| | |
|---|---|
| BRIAN HAUCK | ROBERT G. DREHER |
| Deputy Assistant Attorney General | Acting Assistant Attorney General |
| Civil Division | Environment & Natural Resources Division |
| PETER FROST | |
| Directory, Torts Branch, Civil Division | SARAH HIMMELHOCH |
| Admiralty and Aviation | Senior Litigation Counsel |
| STEPHEN G. FLYNN | NANCY FLICKINGER |
| Assistant Director | SCOTT CERNICH |
| MICHELLE DELEMARRE | THOMAS BENSON |
| SHARON SHUTLER | Senior Attorneys |
| JESSICA SULLIVAN | DEANNA CHANG |
| JESSICA MCCLELLAN | A. NATHANIEL CHAKERES |
| MALINDA LAWRENCE | JUDY HARVEY |
| Trial Attorneys | ABIGAIL ANDRE |
| | RACHEL HANKEY |
| | BETHANY ENGEL |
| R. MICHAEL UNDERHILL, T.A. | Trial Attorneys |
| Attorney in Charge, West Coast Office | |
| Torts Branch, Civil Division | /s/ Steven O'Rourke |
| U.S. Department of Justice | STEVEN O'ROURKE |
| 7-5395 Federal Bldg., Box 36028 | Senior Attorney |
| 450 Golden Gate Avenue | Environmental Enforcement Section |
| San Francisco, CA 94102-3463 | U.S. Department of Justice |
| Telephone: 415-436-6648 | P.O. Box 7611 |
| Facsimile: 415-436-6632 | Washington, D.C. 20044 |
| E-mail: mike.underhill@usdoj.gov | Telephone: 202-514-2779 |
| | Facsimile: 202-514-2583 |
| | E-mail: steve.o'rourke@usdoj.gov |
| | |
| | DANA J. BOENTE |
| | United States Attorney |
| | Eastern District of Louisiana |
| | SHARON D. SMITH |
| | Assistant United States Attorney |
| | Eastern District of Louisiana |
| | 650 Poydras Street, Suite 1600 |
| | New Orleans, LA 70130 |
| | Telephone: (504) 680-3000 |
| | Facsimile: (504) 680-3184 |
| | E-mail: sharon.d.smith@usdoj.gov |

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Date: July 15, 2013                              /s/ Sarah D. Himmelhoch
                                                               Sarah D. Himmelhoch

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig | : | MDL NO. 2179 |
| "Deepwater Horizon" in the Gulf | : | |
| of Mexico, on April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates to: | : | JUDGE BARBIER |
| | : | |
| *Civ. No.* 10-4536 | : | MAG. JUDGE SHUSHAN |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

# MEMORANDUM IN SUPPORT OF
# PLANTIFF UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT
# AS TO THE INCLUSION OF DISSOLVED OIL IN THE CALCLUATION OF THE
# STATUTORY MAXIMUM PENALTY

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

BACKGROUND .................................................................................................................1

STANDARD .................................................................................................................4

ARGUMENT .................................................................................................................5

      A.    Under the plain meaning of the statute, once the liability
has been established, all oil "discharged" counts toward the penalty .................5

      B.    Under existing precedent, dissolved oil counts ........................................................6

      C.    It would be counter to the purpose of the Act
if BP and Anadarko were not penalized for dissolved oil .................................7

CONCLUSION .................................................................................................................8

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Kelly v. EPA*, 203 F.3d 519 (7th Cir. 2000)..................................................................7, 8

*Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174 (5th Cir. 1991)......................................4

*Tull v. United States*, 481 U.S. 412 (1987) .......................................................................7

*United States v. Citgo Petroleum Corp.*,
  No. 08-893, Judgment, Dkt. 234 (W.D. La. September 29, 2011) ...........................6, 7

*United States v. Coastal States Crude Gathering Co.*,
  643 F.2d 1125 (5th Cir. 1981) ....................................................................................7

*United States v. Colonial Pipeline Co., Inc.*,
  242 F. Supp. 2d 1365 (N.D. Ga. 2002) .......................................................................6

*Williams v. United Credit Plan of Chalmette, Inc.*,
  526 F.2d 713 (5th Cir. 1976) ......................................................................................4

**FEDERAL STATUTES**

33 U.S.C. §1321(a)(1)........................................................................................................3

33 U.S.C. §1321(a)(2)........................................................................................................5

33 U.S.C. § 1321(a)(13).....................................................................................................2

33 U.S.C. § 1321(b) ...........................................................................................................7

33 U.S.C. § 1321(b)(1) ......................................................................................................7

33 U.S.C. § 1321(b)(3) ...................................................................................................2, 5

33 U.S.C. § 1321(b)(7) .........................................................................................1, 2, 4, 8

33 U.S.C. § 1321(b)(7)(A)....................................................................................1, 2, 5, 7

33 U.S.C. § 1321(b)(7)(D)...................................................................................1, 2, 5, 7

**FEDERAL REGULATIONS**

40 C.F.R. § 110.3(b) .........................................................................................................2

40 C.F.R. § 117.3 ..............................................................................................................7

**FEDERAL RULES**

Fed. R. Civ. P. 56(a) ...................................................................................................................4

**LEGISLATIVE HISTORY**

Oil Pollution Act of 1990, H.R. Rep. 101-653 (1990) (Conf. Rep.) *reprinted in*
    1990 U.S.C.C.A.N. 779, 832 .........................................................................................8

## INTRODUCTION

Through their expert Curtis Whitson, BP and Anadarko argue that approximately ten percent of the oil spilled from the Macondo well into the Gulf of Mexico should not be counted in this case.[1] BP and Anadarko have posited that oil that dissolves into the water before reaching the Gulf's surface should be ignored. That opinion is foreclosed by the statute and case law – and even by BP's own arguments in this case. For the purpose of streamlining the trial, the United States submits this motion for partial summary judgment on a pure question of law – whether BP and Anadarko should be precluded from arguing that discharged oil that dissolves into Gulf waters before reaching the surface should be excluded from the calculation of the volume of oil discharged from the Macondo well, for purposes of determining the statutory maximum penalty under 33 U.S.C. § 1321(b)(7).[2]

## BACKGROUND

Section 311(b)(3) of the Clean Water Act ("CWA" or "Act") prohibits, *inter alia*, discharges of oil or hazardous substances into or upon the navigable waters of the United States or adjoining shorelines, in such quantities as may be harmful.[3] 33 U.S.C. § 1321(b)(3). Once a

---

[1] The United States does not concede that Dr. Whitson accurately describes the process by which hydrocarbons dissolve into seawater or accurately estimates the amount of oil that dissolved into the Gulf, but the accuracy of his description and estimate are irrelevant to the pure question of law raised in this motion for partial summary judgment.

[2] Just as this motion seeks to narrow issues remaining for trial, the U.S. method for calculating the volume discharged here narrowed the issues by employing two conservative approaches, neither of which is required by the law. First, the oil discharged here reached U.S. waters near the sea floor, but the U.S. ultimately calculated total discharge at the atmospheric pressure found at sea level. Second, significant amounts of natural gas that were part of the discharged oil at the pressures found near the sea floor were excluded from the calculation of the total volume of oil discharged. The law requires neither of these conservative assumptions, which amount to a discount in the volume of oil discharged of more than fifty percent. These facts remain relevant in what may become later stages of this litigation (e.g., penalty factors other than maximum statutory exposure, extent and nature of damages to natural resources).

[3] "Harmful quantities" are defined by regulation to include quantities that "[c]ause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines ." 40 C.F.R. § 110.3(b).

1

violation is shown, the liable party "shall be subject to a civil penalty." 33 U.S.C. § 1321(b)(7). Maximum civil penalty amounts for violating this prohibition are based on the (1) number of barrels of oil discharged or (2) units of reportable quantities of hazardous substances discharged. 33 U.S.C. § 1321(b)(7)(A) and (D).

The Act defines a "barrel" as "42 United States gallons at 60 degrees Fahrenheit." 33 U.S.C. § 1321(a)(13).[4] In the oil and gas industry, a barrel of oil at 60 degrees Fahrenheit and one atmosphere of pressure (*i.e.*, at sea level pressure) is often referred to as a "stock tank barrel of oil" at "surface conditions" or "standard conditions." As the Court is well aware, the oil at issue in this case was not discharged at surface conditions – it was discharged at the sea floor, nearly a mile below the surface of the Gulf of Mexico, at pressures and temperatures that varied widely from those found at the surface. This is an important consideration because the volume of oil decreases as it moves from the seafloor pressure to the sea level pressure.

In layman's terms, the liquid oil "shrinks" as it moves from spill conditions to surface conditions, where it is subjected to varying pressures and temperatures, and much of the gas that is entrained in the liquid oil at spill conditions separates from the liquid oil. Thus, 100 barrels of oil at seafloor conditions would fill less than 100 barrels at surface conditions, because much of the gas has escaped. Accordingly, both sides' experts addressed the issue of converting the mass of reservoir fluid (combined liquid oil and gas) at spill conditions to the volume of oil at surface conditions (i.e., they addressed the "shrinkage" of the oil). *See,* United States Expert Report of Aaron A. Zick (Exhibit A) and BP/Anadarko Expert Report of Curtis Hays Whitson (Exhibit B).

This motion does not address the relative strengths and weaknesses of the methods employed by the parties' experts to calculate shrinkage of the oil as it is brought to surface

---

[4] The Act does not specify the pressure at which a "barrel" is measured.

conditions. Rather, this motion addresses the contention of BP/Anadarko expert Curtis Whitson that "in addition to oil shrinkage associated with pressure and temperature changes," (*i.e.*, the shrinkage discussed above), "additional shrinkage" occurs because "[w]hen oil (or gas) comes into contact with seawater, some hydrocarbon components dissolve (solubilize) into the seawater … causing additional shrinkage of the final stock-tank oil." Expert Report of Curtis Hays Whitson (Exhibit B), at 10. Dr. Whitson estimated that this "additional shrinkage" reduces the total volume of oil at standard conditions by approximately 10%. *Id.* BP and Anadarko, through Dr. Whitson, would have the Court ignore 10% of the discharged oil by treating dissolved hydrocarbons as though they have "disappeared." But anyone who has ever stirred sugar into their coffee or thrown a handful of salt into a pot of boiling water recognizes that the sugar and salt may dissolve, but they do not disappear.

Although we are using a statutory maximum penalty calculation based on the amount of oil discharged *as expressed in barrels of oil at surface conditions*, nothing in the Act requires the oil to *actually reach the surface* in order to be included in that calculation. For the reasons discussed below, it is contrary to the plain meaning of the Act, established precedent, and the purpose of the Act to impose such a requirement. All oil that was discharged into the Gulf should be counted for purposes of calculating the statutory maximum penalty, regardless of whether the oil dissolved into the Gulf quickly (polluting the Gulf immediately); dissolved into the Gulf over time; evaporated; was burned or was skimmed off the surface or shoreline; biodegraded; coated or was ingested by wildlife; and/or remains in the Gulf today. BP and Anadarko should be precluded from making the argument that they should not be penalized for hydrocarbons that were discharged and dissolved into the Gulf.

**STANDARD**

A motion for partial summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), and is appropriate where, as here, "the only issue before the court is a pure question of law." *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991). There are no material facts at issue here: it does not matter how much discharged oil dissolved into the Gulf, how long it took to dissolve, or even if any discharged oil dissolved at all. What is at issue is a pure question of law – whether BP and Anadarko can argue that discharged oil that dissolves into the Gulf should not be counted in the calculation of the statutory maximum penalty under 33 U.S.C. § 1321(b)(7).[5]

Moreover, "pretrial procedures such as summary judgment . . . are the appropriate devices to narrow the issues and disclose the boundaries" of claims and defenses. *Williams v. United Credit Plan of Chalmette, Inc.*, 526 F.2d 713, 714 (5th Cir. 1976). The Phase Two trial will address Quantification of Discharge issues, that is "issues pertaining to the amount of oil actually released into the Gulf of Mexico as a result of the Incident . . . ." Amended Pretrial Order No. 3, Dkt. 4083 at 2 (Sept. 21, 2011). BP and Anadarko have brought up an issue that does not need to be – and should not be – addressed in Phase Two of this trial, and this motion is a timely and appropriate device to resolve this issue as a matter of law.

---

[5] In its questioning of U.S. expert Aaron Zick, BP has also characterized the inclusion or exclusion of the dissolved (solubilized) oil as a legal issue. Deposition of Aaron A. Zick, June 28, 2013, at 263:10-15 ("Q. (By Mr. Beffa) In -- in your Expert Report, you describe that you don't think the solubility calculation should be taken into account for purposes of calculating stock tank volumes, correct?"); *id.* at 263:16-18 ("Q. And you agree that that is a legal decision and a legal conclusion, that those calculations should not be taken into effect?") (Exhibit C).

4

Case 2:10-md-02179-CJB-SS Document 10752-3 Filed 07/15/13 Page 5 of 14

# ARGUMENT

**A. Under the plain meaning of the statute, once liability has been established, all oil "discharged" counts toward the penalty**

Section 311(b)(3) of the Act prohibits, *inter alia*, discharges of oil or hazardous substances *into or upon* the navigable waters of the United States, in such quantities as may be harmful. 33 U.S.C. § 1321(b)(3) (*emphasis added*). Once liability under Section 311(b)(3) of the Act has been established, the statutory maximum penalty is based on the number of barrels or units of reportable quantities of hazardous substances "discharged," *without qualification*. 33 U.S.C. § 1321(b)(7)(A) and (D); *cf.* 33 U.S.C. §1321(b)(3). "Discharge," as defined by the Act "includes but is not limited to, any spilling, leaking, pumping, pouring, emitting, emptying, or dumping . . . ." 33. U.S.C. §1321(a)(2).

This Court has already found that for the purposes of the civil penalty provision of the Act, "oil discharged from the Macondo well." Order and Reasons As to the United States', Transoceans', and Anadarko's Cross-Motions for Partial Summary Judgment Regarding Liability under the CWA and OPA, Dkt. 5809 at 19 (Feb. 22, 2012). The oil Dr. Whitson asserts dissolved into the Gulf is part of that discharge; the dissolved oil was released in an uncontrolled manner into the marine environment. *See* Dkt. 5809 at 19 n.28; *see also* BP Exploration & Production Inc.'s Memorandum of Law in Support of Motion For Partial Summary Judgment Against the United States With Respect to its Claims for Civil Penalties for the More than 800,000 Barrels of Oil that Were Collected and Never Released Into the Environment During the Deepwater Horizon Oil Spill, Dkt. 8213-1 at 10 (Jan. 11, 2013) ("Collected Oil Motion") ("The statute thus defines 'discharge' to encompass situations in which oil or hazardous substances are released in an uncontrolled manner.")

Under the plain meaning of the Act, and this Court's prior Orders in this case, the oil that Dr. Whitson claims dissolved into the Gulf was discharged.

### B. Under existing precedent, dissolved oil counts

Once liability under Section 311(b)(3) is established, "any penalty to be assessed is to be based upon the entire amount of oil or hazardous substance released into the environment." *United States v. Colonial Pipeline Co., Inc.*, 242 F. Supp. 2d 1365, 1377 (N.D. Ga. 2002). Even under the narrower view taken by the court in *United States v. Citgo Petroleum Corp.*, No 2:08-cv-0893, Judgment, Dkt. 234 (W.D. La. Sept. 29, 2011), the dissolved oil must count toward the penalty calculation. BP's own description of the *Citgo* decision makes clear that the *Citgo* court would require counting the dissolved oil. As BP previously explained in this case in its Collected Oil Motion, the *Citgo* court:

> noted that '[f]undamental fairness says you get penalized for the damage that you cause,' *which means the oil that 'got into the water* and into the shoreline.' Oral Argument Tr., Doc. 170, *Citgo*, No. 2:08-cv-893, at 24-25 (W.D. La. Dec. 16, 2010)[.] … The [Citgo] court concluded that '*the important question … is how much [oil] was actually discharged* into the waterways[.]" *Citgo*, Judgment, Doc. 234, at 9 (W.D. La. Sept. 29, 2011) . . . .

Dkt. 8213-1 at 11-12 (*emphasis added*). BP's own statements apply equally here, where the dissolved oil was not collected[6], but rather "was actually discharged into the waterway[]," and under *Colonial Pipeline* or *Citgo*,[7] should count towards the statutory maximum penalty.

---

[6] The United States has already stipulated that the 810,000 barrels of Collected Oil, that is, oil that "flowed from the subsurface reservoir, through the well, through the blow-out preventer, and never came into contact with any ambient sea water, and was not released to the environment in any way (other than via flaring approved by the FOSC)" is not to be used in calculating the statutory maximum penalty. Stipulation Mooting BP's Motion for Partial Summary Judgment Against the United States [Rec. Doc. 8213], Dkt. No. 8620 (Feb. 19, 2013). The dissolved oil at issue here is not Collected Oil.

[7] The United States believes that the decision issued in *Citgo* is erroneous in a number of respects and has appealed the decision to the U.S. Court of Appeals for the Fifth Circuit. However, the United States does agree that under the Act, BP should be penalized for all of the oil that "got into the water and into the shoreline."

### C. It would be counter to the purpose of the Act if BP and Anadarko were not penalized for dissolved oil

In enacting Section 311(b) of the Act, Congress made the "unequivocal declaration," *United States v. Coastal States Crude Gathering Co.*, 643 F.2d 1125, 1127 (5th Cir. 1981), that "it is the policy of the United States that there should be no discharges of oil or hazardous substances into or upon the navigable waters of the United States . . . or in connection with activities under the Outer Continental Shelf Lands Act . . . ." 33 U.S.C. § 1321(b)(1). The Act's civil penalty provisions enforce that policy by punishing those that violate this prohibition and by deterring future violations. *See Tull v. United States*, 481 U.S. 412, 422 (1987); *Kelly v. EPA*, 203 F.3d 519, 523 (7th Cir. 2000). Allowing BP and Anadarko to evade paying a penalty for the dissolved oil would frustrate the unequivocal policy of the Act.

Like sugar into coffee or salt into boiling water, any hydrocarbons that dissolved into the Gulf did not just disappear. Hydrocarbons that dissolve into the Gulf pollute the Gulf, and can threaten human health and the environment. For example, Dr. Whitson admits that one of the hydrocarbons he claims dissolves into seawater is benzene.[8] Benzene, a known carcinogen, is a listed hazardous substance with a reportable quantity of ten pounds. 40 C.F.R. §117.3. In instances involving liability for discharges of hazardous substances alone, as opposed to oil, the statutory maximum penalty is based upon the number of "reportable quantities" of the hazardous substance that are discharged. 33 U.S.C. § 1321(b)(7)(A) and (D).

In choosing "reportable quantities" as the basis for CWA penalties involving spills of hazardous substances, the House Conference explained that they meant:

> the quantity (whether 1 pound or, in some cases, 5,000 pounds) that would give rise to a reporting obligation if the hazardous substance is spilled. It is intended to

---

[8] Whitson Report (Exhibit B) at 18.

7

>base the amount of the penalty on a measure of the danger that the substance may pose to the environment and the relative care that should be exercised with respect to such substance.

House Conference Report, Oil Pollution Act of 1990, H.R. Conf. Rep. 101-653 (Aug. 1, 1990), reprinted in 1990 U.S.C.C.A.N. 779, 832. While the United States is not proposing to calculate the number of reportable quantities of benzene that Dr. Whitson believes dissolved into the Gulf in order to penalize BP and Anadarko up to $4300 for *every 10 pounds* of benzene discharged, it would be antithetical to the purposes of the Act if BP and Anadarko were to pay *no penalty* for the discharged benzene, simply because it did not rise to the surface of the Gulf. Oil can pose grave danger to health and the environment, as can its constituent components, like benzene, whether they are entrained at depth in the Gulf or rise to its surface. BP should be penalized for the full extent of the discharge.

## CONCLUSION

For the reasons cited above, the United States respectfully requests that the Court grant this motion and find that BP is precluded from arguing that oil discharged from the Macondo well into the Gulf that allegedly dissolved into the Gulf should not be counted for purposes of calculating the statutory maximum penalty under 33 U.S.C. §1321(b)(7).

Respectfully submitted,

| | |
|---|---|
| BRIAN HAUCK | ROBERT G. DREHER |
| Deputy Assistant Attorney General | Acting Assistant Attorney General |
| Civil Division | Environment & Natural Resources Division |

PETER FROST
Directory, Torts Branch, Civil Division
Admiralty and Aviation
STEPHEN G. FLYNN
Assistant Director
MICHELLE DELEMARRE
SHARON SHUTLER
JESSICA SULLIVAN
JESSICA MCCLELLAN
MALINDA LAWRENCE
Trial Attorneys

SARAH HIMMELHOCH
Senior Litigation Counsel
NANCY FLICKINGER
SCOTT CERNICH
THOMAS BENSON
Senior Attorneys
DEANNA CHANG
A. NATHANIEL CHAKERES
JUDY HARVEY
ABIGAIL ANDRE
RACHEL HANKEY
BETHANY ENGEL
Trial Attorneys

/s/ Steven O'Rourke

R. MICHAEL UNDERHILL, T.A.
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice
7-5395 Federal Bldg., Box 36028
450 Golden Gate Avenue
San Francisco, CA 94102-3463
Telephone: 415-436-6648
Facsimile: 415-436-6632
E-mail: mike.underhill@usdoj.gov

STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: 202-514-2779
Facsimile: 202-514-2583
E-mail: steve.o'rourke@usdoj.gov

DANA J. BOENTE
United States Attorney
Eastern District of Louisiana
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
650 Poydras Street, Suite 1600
New Orleans, LA 70130
Telephone: (504) 680-3000
Facsimile: (504) 680-3184
E-mail: sharon.d.smith@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Date:  July 15, 2013                                                        /s/ Sarah D. Himmelhoch
                                                                                                    Sarah D. Himmelhoch