UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | : : : : | MDL NO. 2179 SECTION J |
| THIS DOCUMENT RELATES TO: | : : | JUDGE BARBIER |
| ALL CASES | : : | MAGISTRATE JUDGE SHUSHAN |

**MEMORANDUM IN SUPPORT OF THE UNITED STATES' PHASE TWO, QUANTIFICATION SEGMENT, MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF SRDJAN NESIC**

BP/Anadarko retained Dr. Srdjan Nesic to offer certain opinions concerning metal erosion within the BOP and kinked riser during a 35-day period between April 22 and May 27. Dr. Nesic: (1) based these opinions the unreliable output from a model that only "modeled" the first 10 to 12 days of that period before crashing, and (2) failed to fully disclose the facts and data he considered in forming his opinions. Dr. Nesic's opinion should be excluded because: (1) his testimony does not meet the standard for reliability set forth in Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert*; (2) his report failed to meet the Rule 26(a)(2) requirement that it state the basis for his opinions; and/or (3) BP violated the Court's order at Doc. 8907 by failing preserve and produce Dr. Nesic's relied-upon simulation files.

**INTRODUCTION**

Federal Rule of Evidence 702 provides for expert testimony if "the testimony is based on upon sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid.

- 1 -

702(b)-(d). In applying Rule 702, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merell Dow Pharmaceuticals*, Inc., 501 U.S. 579, 589 (1993); *see also Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). A party seeking to admit expert testimony bears the burden of establishing that the expert's findings are based on sound scientific technique and "intellectual rigor." *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

In order for the trial judge to assess the relevance and reliability of such scientific testimony, expert witnesses are required to disclose not only their opinions, but also "the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. Pro. 26(a)(2)(A)(i)&(ii). In 1993, Rule 26(a)(2) was revised to its current form. The 1993 Advisory Committee Notes state that expert reports must be "detailed and complete," and explain that the requirement that experts disclose the basis and reasons for their reports is necessary to avoid "sketchy and vague" expert disclosures that were the norm under the former rule. Fed. R. Civ. P. 26 1993 Advisory Committee Note.

Furthermore, in Phase Two of this litigation, the parties are explicitly required to produce all "relied-upon modeling runs," that is, "the native version of any computer files containing the input to and/or output from computer model runs that are relied upon to support the conclusions set forth in the expert repo[r]t." Order Regarding Phase Two Expert Document Production, Doc. 8907 at 3-4 (Mar. 15, 2013).

It is appropriate to exclude the testimony of experts whose reports fail to disclose "the basis and reasons" for the expert's opinions and that fail to comply with a court order requiring disclosure of data supporting their opinions. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 569-71 (5th Cir. 1996). In other words, "expert reports must include

'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Denley v. Hartford Ins. Co. of Midwest*, No. 07-4015, 2008 WL 2951926 (E.D. La. July 29, 2008) (citation omitted).

## DISCUSSION

### A. DR. NESIC'S CONCLUSIONS ARE BASED UNRELIABLE DATA DERIVED FROM A MODEL THAT COLLAPSED

In his report, Dr. Nesic relies upon a model that could not complete a run as expected. Specifically, Dr. Nesic purports to offer opinions about erosion and its impact on flow rate over a 35-day period of time (i.e., April 22 to May 27), Attachment 1 (Srdjan Nesic Expert Report) at 1-2, but the transient modeling that he relied upon to reach those opinions crashed after modeling only 10 to 12 days of that period. Confronted with evidence that his transient modeling crashed in his deposition, Dr. Nesic for the first time admitted that at about day 12, the transient simulations "exploded," explaining that around that time, "something strange happens" in the simulations that produces "physically unrealistic results . . . which make[] no sense." Attachment 2 (Excerpts of Srdjan Nesic Deposition) at 300:20-25, 301:1-25, 302:1-11.

Without determining why the model failed to perform for the entire period he analyzed and without explaining why the model remains reliable despite "exploding" before completing the analysis, Dr. Nesic relied on that modeling for the very opinions he is offering the Court in this case. Specifically, he chose a linear curve to fit those data points that the model did manage to generate, and "extrapolated beyond the 10, 11 days of data that [he] had," by assuming that the linear character of the curve would continue beyond the first 10-11 days throughout the entire 35-day period. *Id.* at 364:7-25, 365:1-7. Dr. Nesic chose this linear curve even though he admitted that "mathematically," an exponential curve would provide "a slightly better fit for the period of the little over 10 days where [he] had the data". *Id.* at 365:19-25, 366:1-8.

Nowhere in his report does Dr. Nesic offer any explanation of why he believes it is appropriate to base his conclusions on data derived from a model that he was only able to run for a third of the period he claimed to investigate and for which he provides opinions.  Accordingly, his opinion fails to meet the requirement that it be based upon reliable methods and should be excluded.

### B. DR. NESIC FAILED TO PRODUCE OR EVEN RETAIN RELIED-UPON SIMULATION FILES

Dr. Nesic also failed to preserve and produce all of the modeling runs that he relied on in forming his opinions.  For instance, Dr. Nesic stated in his report that he assumed a uniform sand particle size of 500 microns, Attachment 1 at 12, and claimed to have run simulations using a sand particle size input of 500 microns "many times."  Attachment 2 at 21:4-10.  However, the only simulation files produced by Dr. Nesic all used a particle size of approximately 150 microns.  Dr. Nesic admitted this "omission" and "inconsistency" but claimed that he ran simulations with various particle sizes, including 150 microns and 500 microns, and that the change in particle size did not have an impact on his results.  *Id.* at 20:4-24, 21:1-3.  Dr. Nesic went on to explain that "[w]hen there were runs where … we changed a particular parameter, but nothing significant came out as a consequence of that … we did not retain those runs," despite having been told to retain his documents and modeling files at the beginning of his work on this matter.  *Id.* at 23:4-14; 516:19-24.  In short, Dr. Nesic failed to preserve and produce *any* runs using the sand particle size that he ultimately relied upon in his report.

As a result of Dr. Nesic's failure to disclose these files, whenever Dr. Nesic claims that his model was insensitive to a certain parameter, the United States and the Court have no way of evaluating his analysis, because, although he asserts his conclusions were supported by modeling, he did not preserve or produce these allegedly supporting materials:

> **Q. Did you disclose any modeling files that showed variations of the following parameters: density, viscosity, particle size, or different geometries?**
> A. From that list the only ones I've disclosed were the ones where there was a significant effect, and that was the different geometry effect.
> **Q. Okay. And so where you concluded that there was no significant effects, such on -- such as with regard to density, viscosity, and particle size, you didn't produce those sensitivity studies?**
> A. Those were not provided as supporting files to -- to my -- to my conclusions, that's correct. I'm sorry, I'm -- I'm trying to -- produce, you mean given to the other side, to the Government?
> **Q. Correct.**
> A. Okay. Then my statement is correct.

*Id.* at 515:23-25, 516:1-18.  *See also id.* at 24: 7-17.

Because Dr. Nesic did not retain the relevant modeling runs, Dr. Nesic's report fails to provide a basis for his expert opinion that his model was insensitive to particle size, fluid density, and fluid viscosity in violation of Rule 26(a)(2).  Furthermore, Dr. Nesic's failure to retain and produce his modeling runs reflecting the impact of variations in particle size, density, and viscosity on his model is a clear contravention of the Court's order requiring production of all such modeling runs.

## CONCLUSION

Dr. Nesic used an unreliable model to reach his conclusion, and failed to produce the modeling runs that would document the sensitivity studies that he claimed to have run on his model parameters.  Accordingly, Dr. Nesic's report should be excluded under *Daubert* and as a violation of Rule 26(a)(2) and this Court's order.

Respectfully submitted,

| | |
|---|---|
| BRIAN HAUCK | ROBERT G. DREHER |
| Deputy Assistant Attorney General | Acting Assistant Attorney General |
| Civil Division | Environment & Natural Resources Division |
| | |
| PETER FROST | SARAH HIMMELHOCH |
| Directory, Torts Branch, Civil Division | Senior Litigation Counsel |
| Admiralty and Aviation | NANCY FLICKINGER |

| | |
|---|---|
| STEPHEN G. FLYNN<br>Assistant Director<br>MICHELLE DELEMARRE<br>SHARON SHUTLER<br>JESSICA SULLIVAN<br>JESSICA MCCLELLAN<br>MALINDA LAWRENCE<br>Trial Attorneys | SCOTT CERNICH<br>RICHARD GLADSTEIN<br>THOMAS BENSON<br>Senior Attorneys<br>A. NATHANIEL CHAKERES<br>ANNA CROSS<br>BETHANY ENGEL<br>JUDY HARVEY<br>RACHEL KING<br>ERICA PENCAK<br>Trial Attorneys |
| /s/ R. Michael Underhill<br>R. MICHAEL UNDERHILL, T.A.<br>Attorney in Charge, West Coast Office<br>Torts Branch, Civil Division<br>U.S. Department of Justice<br>7-5395 Federal Bldg., Box 36028<br>450 Golden Gate Avenue<br>San Francisco, CA 94102-3463<br>Telephone:  415-436-6648<br>Facsimile:  415-436-6632<br>E-mail:  mike.underhill@usdoj.gov | /s/ Steven O'Rourke<br>STEVEN O'ROURKE<br>Senior Attorney<br>Environmental Enforcement Section<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C. 20044<br>Telephone:  202-514-2779<br>Facsimile:  202-514-2583<br>E-mail:  steve.o'rourke@usdoj.gov<br><br>DANA J. BOENTE<br>United States Attorney<br>Eastern District of Louisiana<br>SHARON D. SMITH<br>Assistant United States Attorney<br>Eastern District of Louisiana<br>650 Poydras Street, Suite 1600<br>New Orleans, LA  70130<br>Telephone:  (504) 680-3000<br>Facsimile:  (504) 680-3184<br>E-mail:  sharon.d.smith@usdoj.gov |

Attorneys for the UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

  I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Date: August 19, 2013.            /s/ Steven O'Rourke
                        U.S. Department of Justice