UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : : | MDL No. 2179 SECTION: J JUDGE BARBIER |
| This Document Relates To: All Actions …………………………………………………... | : : : | MAGISTRATE JUDGE SHUSHAN |

### BP'S MEMORANDUM IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE GREGG PERKIN FROM OFFERING NEW AND UNTIMELY OPINIONS BEYOND HIS EXPERT REPORTS

The Aligned Parties' expert Gregg S. Perkin made it abundantly clear at his deposition that he intends to offer new opinions at trial that are beyond the four corners of his Phase 2 expert reports (the "Phase 2 Reports").  While aware that he had an obligation to disclose all his opinions in his expert reports Perkin Dep. at at 17:19-23(attached as Exhibit A), Mr. Perkin nonetheless testified that he intended to offer at trial opinions about well integrity and flow rate[1] that admittedly were not disclosed in his Phase 2 Reports, *id*. at 11-12, 14-15.  When asked why these opinions were not presented in his Phase 2 Reports, Mr. Perkin explained that he drafted his report "on the fly, literally … on an airplane," and apparently did not have time to include them.  *Id*. at 17-18.  Because they are not disclosed in his Phase 2 Reports and there is no legitimate basis for failing to include them, BP respectfully requests that the Court preclude Mr. Perkin from offering these new, untimely disclosed opinions at trial.

---

[1] Mr. Perkin testified that he may provide opinions regarding flow rate "if asked" although acknowledging that he is being presented as a source control, not quantification, expert.  Perkin Dep. at 11:16-12:5, 475:11-20 (admitting he was not asked to calculate or model flow rates in this case).

## I. Mr. Perkin Offered New Opinions Concerning Well Integrity at His Deposition.

Mr. Perkin testified at his deposition that he intends to offer at trial new opinions relating to well integrity that he admits "*may not be necessarily divulged or explained in [his] Rebuttal Report.*"  Perking Dep. at 14-15; 17-18 ("Q: So is it correct that both of your opinions that are not contained in your Rebuttal Report relate to mitigation methods if the well was shut-in to protect the rupture disks?  A:  Correct. […]").  Mr. Perkin's well integrity opinions are summarized as follows:

- During his deposition, Mr. Perkin testified that he intended to offer the opinion that there were not adequate procedures in place to manage certain well integrity risks associated with certain elements of the Junk Shot procedure.  *Id*. 15:6-16:16.  This opinion is not offered in his Phase 2 Reports, and Mr. Perkin admitted that this was "*one opinion that may not be in my Rebuttal Report*." *Id*. at 16:1-16; 390:11-391:8.

- During his deposition, Mr. Perkin also testified that he intended to offer the opinion that there were not adequate procedures in place to manage well integrity issues during ROV intervention efforts.  *Id*. at 16:17-17:18.  This opinion is not offered in his Phase 2 Reports, and again Mr. Perkin admitted that it was not disclosed.  *Id*. at 14-15; 17:3-18.

Mr. Perkin offers no defensible reason for failing to include these opinions in his Phase 2 Reports.  Rather, Mr. Perkin contends that he did not disclose these opinions because he lacked time to fully form his opinions and to draft his Rebuttal Report.  *Id*. at 17:24-18:11 ("Q.  And -- and is there a reason why these two opinions were not included in your Expert Reports?  A: My Rebuttal Report was done on the fly, literally.  I had just been informed that a Rebuttal Report was -- was due, and I was returning from the Middle East, and I did it on the fly…I did it on an airplane").

## II. Mr. Perkin Offered New Flow Rate Calculations and Opinions at His Deposition.

Mr. Perkin's Phase 2 Reports do not disclose any flow rate estimates or the underlying calculations that he performed.  *Id.* at 475:11-20 (admitting he was not asked to calculate or model flow rates in this case); Exhibit 11464 (Perkin Phase 2 Report) and Exhibit 11465 (Perkin

2

Phase 2 Rebuttal Report) (Mr. Perkin's Phase 2 Reports do not disclose any of his flow rate estimates). Nonetheless, at his deposition he offered his own "rough calculation" of the daily flow rate at the Macondo Well—approximately 30,000 barrels per day—based on a "simple engineering calculation." Perkin Dep. at 11:22-12:5; 470:13-20. For the first time at his deposition, he used this "rough calculation" to assert that the flow rates were higher than represented by BP during the response effort and that engineers could have performed similar "rough" calculations prior to Top Kill to better estimate the flow rate from the well. *Id*. at 298:1-21; 475:11-476:5.

Despite his failure to timely disclose these opinions and calculations in his Phase 2 Reports, Mr. Perkin sought to reserve his right to offer these flow rate opinions at trial. *Id*. 11:16-12:5 ("Q: When it comes to trial, are you intending to offer any opinion as it relates to quantification? A: Only if asked. Like I said, I did a rough calculation based on a simple engineering calculation, but it's just a rough calculation."). Again, Mr. Perkin seems to have no legitimate basis for failing to disclose these calculations or opinions as they relate to flow rate.

### III. Mr. Perkin's New Well Integrity and Flow Rate Opinions Should Be Excluded.

Mr. Perkin's previously undisclosed opinions are inadmissible under this Court's express orders and the Federal Rules of Civil Procedure.[2] This Court has issued multiple orders that strictly limit expert testimony to the "four corners" of the expert's report. *See* Order at 2, MDL No. 2179 (Jan. 25, 2013) (Rec. Doc. 8347); Order at 2, MDL No. 2179 (Jan. 31, 2012) (Rec. Doc. 5505); Order at 5, MDL No. 2179 (Nov. 7, 2011) (Rec. Doc. 4486); Order at 5, MDL No.

---

[2] Mr. Perkin's "rough" flow rate estimates should be excluded for the additional reason that he failed to disclose the mathematical basis for his estimates in his Reports and therefore violates the Court's express order that a party must disclose in a readily understandable form any mathematical calculations upon which a testifying expert relies in forming his opinion to be expressed. Order at ¶ 5, MDL No. 2179 (Oct. 17, 2011) (Rec. Doc. 4301).

3

2179 (Nov. 22, 2011) (Rec. Doc. 4690).  Further, Federal Rule of Civil Procedure 26 requires expert witnesses to provide a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. Civ. P. 26(a)(2)(B).  The purpose is to prevent experts from providing "sketchy and vague" information that is often "little help in preparing for a deposition of the witness."  Fed. Civ. P. 26 Advisory Committee's note.  *See also Sierra Club v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996).  Applying this rule, the Fifth Circuit has upheld the exclusion of expert trial testimony that ventured beyond the four corners of the written report.  *Sobrino-Barrera v. Anderson Shipping Co.*, 495 F. App'x 430, 433 (5th Cir. 2012).  Here, Mr. Perkin concedes that none of his new opinions concerning well integrity or rough flow rate estimates (including the mathematical calculations that form the basis for his estimates) were properly disclosed in his Reports.  Thus, they are subject to exclusion.

Application of the "four corners" rule has been well established in this matter, and the Court even applied it to Mr. Perkin specifically in Phase 1.  When Mr. Perkin sought to introduce new opinions at his Phase 1 deposition, Cameron moved *in limine* to preclude Mr. Perkin from offering those opinions at trial.  The Court granted Cameron's motion, holding that allowing Mr. Perkin to introduce previously undisclosed opinions at trial would "render the four corners rule meaningless."  Order at 3, MDL No. 2179 (Feb. 22, 2012) (Rec. Doc. 5808).  Because the same rationale applies equally here, BP respectfully requests that the Court preclude Mr. Perkin from offering previously undisclosed opinions concerning well integrity and flow rate estimates at the Phase 2 trial.

Dated: August 19, 2013               /s / Don K. Haycraft

                                          Don K. Haycraft (Bar #14361)
                                        R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration & Production Inc. & BP America Production Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 19th day of August, 2013.

      /s/  Don K. Haycraft