UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |
| ……………………………………………... | : | |

**BP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE
CERTAIN OPINIONS OF DR. JOHN L. WILSON**

Transocean's Source Control expert, Dr. John L. Wilson, offers the following opinions in this case: (1) that BP knew, or should have known, based on its modeling before the May 26-28, 2010 government-approved Top Kill procedure that the daily flow rate (which Dr. Wilson acknowledges BP had not then-estimated) exceeded 15,000 barrels — the rate thought to be the effective limit for the dynamic kill portion of the Top Kill procedure and (2) that BP concealed this modeling and alleged resulting flow rate knowledge from the government, public, and media.[1]

Neither of these opinions is relevant or reliable, and thus should be excluded. ***First***, the subjects on which Dr. Wilson opines do not require expert testimony, making his opinions irrelevant and inadmissible. Dr. Wilson does not offer any expertise to assist the Court in understanding the factual questions at issue. Instead, his "expertise" in this case is as a "human highlighter" who merely summarizes certain pre-selected BP documents and deposition transcripts that counsel provided him to review — material that the Court can read for itself —

---

[1] Report at 31-34. Dr. Wilson also opines that BP had sufficient information about the Macondo Well and other data to estimate the actual daily flow rate from the Well in April and May 2010. While BP disagrees with that opinion, it is not a subject of this motion.

and opines that he did not see any evidence that these documents were shared with the government, public, or media.  *Second*, Dr. Wilson cannot opine on what information BP shared because, as he acknowledged repeatedly during his deposition, his review was limited to certain BP documents, and he did not consider whether the government's own records demonstrate that BP shared information with it nor did he review the interactions between BP and federal responders.  *Third*, Dr. Wilson's speculation about what BP personnel "knew" or "should have known" about the flow rate before the Top Kill procedure is a quintessentially unreliable expert opinion.  Dr. Wilson agrees that, during the Response, BP never calculated the actual daily flow rate from the Macondo well, nor formed a consensus about that flow rate or inputs needed to assess that flow rate, yet he claims to have expert insight about the views of BP engineers.

## ARGUMENT

To be admissible under Federal Rule of Evidence 702, as the Rule has been interpreted by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), expert testimony must be both reliable and relevant.  *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010).  Dr. Wilson's report and testimony about whether certain BP documents were provided to the government, and the mere highlighting of those documents and selected deposition testimony, are neither relevant nor reliable, and should therefore be excluded.

**I.      Dr. Wilson's Lengthy Digest of Discovery Documents on Flow Rates Are Irrelevant.**

To fully appreciate the irrelevance of much of Dr. Wilson's lengthy report commenting on BP's early flow rate modeling exercises, two points must be clear at the outset.

*First*, Dr. Wilson is not offering any opinions regarding what federal officials working on the Macondo Response would have done differently in light of additional information on BP's flow rate modeling efforts, nor is he offering an opinion on the impact of flow rate on any source-control methods.  Wilson Dep. at 38:4-39:12; 41:12-24; 220:17-221:12.  Dr. Wilson has

acknowledged, for example, that he performed no analysis and has no opinion regarding how the Unified Command would have proceeded with Top Kill had it possessed that unspecified additional information.[2]

***Second***, as Dr. Wilson would surely also concede, the question of what information BP was obligated to disclose to federal responders (or to the public) is a legal question not amenable to expert testimony. The Fifth Circuit has held that "an expert may never render conclusions of law." *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009).

Against that backdrop, the bulk of Dr. Wilson's report is nothing more than a digest of documents and deposition transcripts. Dr. Wilson writes for more than 35 pages, *see* Report 13-49, about various discovery materials and what he thinks those documents should mean. "Reviewing correspondence ... is not a [technical] issue…" *Tassin v. Sears, Roebuck & Co.*, 946 F. Supp. 1241, 1252-53 (M.D. La. 1996); *cf. S.E.C. v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) ("Expert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand."). Communications "are not technical and do not require expert engineering testimony to make them comprehensible to a [trier of fact]. For this reason, [the expert's] testimony about these documents is not necessary to assist the trier of fact to understand a fact in issue." *Tassin*, 946 F. Supp. at 1252-53; *see also Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1373-74 (5th Cir. 1981) (expert witnesses "usually do not testify regarding the facts of the case but only express their opinion based on those facts."); *cf. Ross v. Noble Drilling Corp.*, No. Civ.A. 03-0115, 2004 WL 1078906, at *2 (E.D. La. May 11, 2004)

---

[2] Dr. Wilson did not work on the Macondo Response and has no experience participating in any Unified Command function elsewhere, Wilson Dep. at 60:12-25, nor has he been a member of any crisis response team for an oil and gas well, *id.* at 61:1-9. Dr. Wilson is therefore unqualified to offer an opinion on what the Unified Command might have done had it possessed certain information. *See Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (citing Fed. R. Evid. 702).

("[E]xpert testimony offering nothing but the expert's appreciation of the facts is . . . inadmissible because 'the jury could adeptly assess [the] situation using only their common experience and knowledge.'" (citing *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990))).  Dr. Wilson's mere highlighting of various portions of documents and transcripts fails the test for relevance under *Daubert*, and his lengthy narration of those materials should not be admitted as expert testimony.

II.     **Dr. Wilson's Report and Opinions Are Unreliable Because They Are Based on Admittedly Incomplete Information and Pure Speculation.**

Most of Dr. Wilson's report and his likely testimony are not only irrelevant, but also unreliable.  To be admissible, an expert's proffered testimony must be based on a reliable methodology.  Fed. R. Evid. 702 (requiring that testimony be "the product of reliable principles and methods").  The Aligned Parties "must demonstrate that the expert's findings and conclusions are based on the scientific method and, therefore, are reliable.  This requires some objective, independent validation of the expert's methodology."  *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).  The Aligned Parties cannot do so.

   A.   **Dr. Wilson's Opinions Whether BP Shared Modeling with Federal Responders Are Also Unreliable.**

Even if it were a relevant subject for expert testimony in this case — which it is not — Dr. Wilson cannot opine with any reliability on the question of what information BP provided to whom, and when.  Dr. Wilson acknowledged in his deposition that he only reviewed certain BP documents and some deposition testimony.  Equally important, Dr. Wilson explained that "as part of [his] assignment" he did not fully examine BP's frequent contact with federal officials during the Response.  Wilson Dep. at 148:12-21.  Specifically, he testified, "I did not look at what data BP shared with the government at any point in time during the response to the blowout."  *Id.* at Dep. Tr. 94:8-10.  Dr. Wilson also testified that he "did not perform any

4

evaluation of information exchanged between BP and the National Labs, independent of what I read about in depositions and in e-mails and the like." *Id.* at 110:14-25.  For example, Dr. Wilson did not recall having seen that the May 18, 2010 memorandum regarding Top Kill was circulated to scientists at the National Laboratories. *Id.* at 292:19-294:14; Dep. Ex. 9245 (stating that "[m]odeling indicates that a dynamic kill cannot be successfully executed if the oil flow rate is 15000 STBpd.")

Further, Dr. Wilson admitted that he lacked a complete understanding of the interaction of BP employees, including Andy Inglis, James Dupree and Paul Tooms, with the federal responders. *See* Wilson Dep. at 100:1-19, 104:11-25, 105:13-19, 107:19-108:9. 108:21-109:20; Inglis Dep. at 304:23-305:23 (Mr. Inglis conducted frequent briefings for senior federal officials, including Secretary Salazar and Admiral Allen), *id.* at 414:12-415:6 (Mr. Inglis was focused on "ensuring there was good communication between BP and…the government."); Tooms Dep. at 288:8-14 (BP provided Secretary Chu and his team "full access to information that they needed to assess whether you could shut the well in.")  Nor did Dr. Wilson attempt to understand what data or information the government had and what modeling the government itself had done itself in connection with Top Kill, Wilson Dep. at 21:5-23:5, or any source-control efforts, *id.* at 43:4-12.  That Dr. Wilson had incomplete knowledge of the information shared with the federal responders was a consistent theme of his deposition:

> Q. Do you know what type of information was shared on a daily basis between BP and the government at the incident command post where folks were working together in Houston at BP's offices?
>
> A. I reviewed BP's modeling efforts over this period of five or six weeks, and ***I did not review how BP and the federal folks at the incident command post communicated*** beyond the documents that came up through the modeling effort.

Wilson Dep. at 128:21-129:7 (emphasis added).

5

> \*\*\*
>
> Q. Do you know whether any of the modeling information that was being run by BP in connection with flow rates was being shared at the offices in Houston that were part of the incident command post?
>
> A. No, I do not.

*Id.* at 133:12-18.

> \*\*\*
>
> Q. Okay. Did you evaluate what information BP shared regarding the reservoir, the well, the BOP, the riser, those things that you told me were important, for purposes of modeling with the government?
>
> A. I did not look at the information transfer on details of reservoir fluids and other characteristics or the well, for that matter, between BP and the government other than reading things such as Secretary Chu's comments we referred to earlier.

*Id.* at 126:24-127:11.

The bottom line is that Dr. Wilson cannot reliably conclude whether BP provided any given piece of data or set of flow rate estimates to the federal responders. *See, e.g.*, Wilson Dep. at 94:8-10, 100:1-19, 104:11-25, 105:13-19, 107:19-108:9, 108:21-109:20, 126:24-127:11, 128:21-129:7, 133:12-18, 148:12-21.

Dr. Wilson's incomplete consideration of material in the record and the deficiencies in his investigational method make it impossible for him to provide a reliable opinion on what information BP provided to the Unified Command and its scientific advisers. *Cf. Bell v. City of El Paso*, No. EP-08-CA-331-FM, 2009 WL 6371618, at \*4 (W.D. Tex. Dec. 18, 2009); *see also Lee Green v. La. Dep't. of Pub. Safety & Corr.*, No. 2:06 CV 1018, 2010 WL 1628769, at \*5-6 (W.D. La. Apr. 20, 2010) (expert's opinion regarding cause of patient's lung problems unreliable where expert failed to consider other potential causes); *Albert v. Jordan*, No. 05-516, 2007 WL

4124519, at *2-*3 (W.D. La. Nov. 19, 2007) (expert's opinion regarding plaintiff's earning capacity unreliable where expert failed to consider prior wages, tax returns, or social security earnings); *see also re Prempro Prods. Liab. Litig.*, 765 F. Supp. 2d 1113, 1119 (W.D. Ark. 2011) (finding expert's opinion unreliable where the expert's deposition testimony revealed that "the process was driven largely by the lawyers").  Accordingly, any opinion from Dr. Wilson on what information was or was not provided to the Unified Command, its scientific advisers, and the federal responders should not be admitted.  *Cf. Albert v. Jordan*, No. 05-516, 2007 WL 4124519, at *3 (W.D. La. Nov. 19, 2007) ("[T]hese experts have failed to take into consideration all of the factual data and have based their opinions on pure speculation….").

### B. Dr. Wilson's Opinion on What BP "Knew" About the Flow Rate is Pure Speculation and Therefore Cannot Be Reliable.

"[I]t is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate."  *Christiansen v. City of Tulsa,* 332 F.3d 1270, 1283 (10th Cir. 2003).  Dr. Wilson's "opinion" about what BP knew, or should have known, about the actual flow rate from the Macondo Well is unreliable speculation incapable of "objective, independent validation." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Dr. Wilson acknowledged (and in fact insisted) at his deposition that "[a]t no time did BP attempt to model the actual flow rate from the well." Wilson Dep. at 173:24-25.  As he testified, "[N]o model BP was using was aimed at predicting actual flow rate." *Id.* at 54:6-18.  "They [BP engineers] were not getting estimates of the actual flow rate, but rather, a range of flow rates, which is why they attempted the scenario analysis approach." *Id.* at 57:8-18.  Yet, even with these ranges of flow rates, Dr. Wilson acknowledges, "BP engineers never met to form a consensus about bounds on flow rates." *Id.* at 253:13-14.

7

Although BP never modeled the actual daily flow rate from the Macondo well or established a consensus about such a flow rate, Dr. Wilson speculates, based on his review of selected documents purported to contain "modeling" performed by BP, that BP "knew" the flow rate was higher than 15,000 barrels of oil per day before the Top Kill procedure.  Report at 33-34.  Dr. Wilson did not perform any modeling or run any calculations to evaluate the accuracy of any of the "modeling" done by BP.  Nor did Dr. Wilson perform his own assessment of why the Top Kill procedure failed.  Wilson Dep. at 355:1-9.  The sole basis for Dr. Wilson's opinion imputing knowledge to BP is his review of selected BP documents, from which he draws conclusions about what the individuals who created those documents must have been thinking.  (Report 13-32.)  That simply presents "too great an analytical gap between the data and the opinion proffered."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Numerous courts have excluded expert opinions that, like Dr. Wilson's, purport to opine on a corporation or its employees' state of mind.  *See DePaepe v. Gen. Motors Corp.,* 141 F.3d 715, 720 (7th Cir. 1998) (error to allow an expert to speculate as to corporate motive); *Aerotech Res., Inc. v. Dodson Aviation, Inc.,* No. 00-2099, 2001 WL 474296, at *2 (D. Kan. Apr. 4, 2001) (excluding expert from testifying on the expression of a witness's subjective intent when entering into a contract); *S.E.C. v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) ("Mr. Perks' opinions concerning what Mr. Lipson or others at Supercuts believed about the reliability of the internal financial reports falls far short of meeting the reliability and helpfulness criteria set forth in Rule 702."); *Taylor v. Evans,* No. 94 Civ. 8425, 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997) ("Moreover, [proposed expert's] musings as to defendants' motivations would not be admissible if given by any witness — lay or expert."); *Parkway Garage, Inc. v. City of Philadelphia,* No. CIV. A. 90-7752, 1994 WL 412430, at *8 (E.D. Pa. Aug. 3, 1994) (accounting

expert's opinion was unreliable because it was "based on pure speculation and ... outside the knowledge and experience of [the expert's] discipline as an accountant").

Dr. Wilson's speculation as to what the drafters of documents "knew" or "should have known" is unreliable and therefore should be precluded.

## CONCLUSION

For the foregoing reasons, BP respectfully requests that the Court enter an order precluding Dr. Wilson from offering any expert testimony at the Phase 2 trial regarding (1) what information BP did or did not provide to the Unified Command and federal responders and (2) what BP knew or should have known about the flow rate from the Macondo well a as those opinions are irrelevant, unreliable, and not an appropriate subject for expert testimony.

Dated: August 19, 2013

Respectfully submitted,

/s / Don K. Haycraft

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for BP Exploration & Production Inc. & BP America Production Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 19th day of August, 2013.

                                                                  /s/  Don K. Haycraft