# EXHIBIT 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * | MDL NO. 02179 |
| | * | SECTION: J |
| This Document Relates to: | * * | |
| 2:12-cv-01045 | * * | JUDGE BARBIER MAG. JUDGE WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * * *

## 28 USC §1746 DECLARATION OF GARY GREGORY

I, Gary Gregory, declare as follows:

1. The facts contained within this declaration are within my personal knowledge and are true and correct.

2. In July 2010, I contracted with O'Brien's Response Management Inc. ("O'Brien's") to provide services as an independent contractor for an approximately 30-day period on the Deepwater Horizon ("DWH") oil spill response. O'Brien's compensated me for the time that I worked at a rate of $750 per day. During my time as an independent contractor, I never received any employment benefits from O'Brien's.

3. O'Brien's contracted with me based on my extensive expertise in the area of oil spill response and oil clean-up. Prior to contracting with O'Brien's to work on DWH oil spill response, I had a career in the United States Coast Guard ("USCG") for 20 years. I retired as a Commander, and at the time of my retirement I was serving as Chief of Port Operations for Los Angeles, Long Beach. During my time with the USCG, I worked on the clean-up efforts for several large oil spills. After retiring from the USCG, I spent twenty years working for the state

of California in oil pollution prevention. I was still working for the state when I provided services for O'Brien's on the DWH oil spill response.

4.    I understood my relationship to O'Brien's to be temporary and on an independent contractor basis. I also understood that I was free to work for other companies during and after my time working with O'Brien's. In fact, during the time that I worked on the DWH spill response, I was the director of several maritime programs for the state of California. I consulted several lawyers before accepting the project with O'Brien's to ensure there was no conflict of interest. I only worked on the DWH spill clean-up as an independent contractor for approximately 30 days, from early July through early August, 2010, due to my commitments in California.

5.    I did not undergo any training prior to starting my work on the DWH oil spill response. I already had HAZWOPER (safety) certification and have taught HAZWOPER at a local community college for ten years. Nor did I ever receive an employee handbook from O'Brien's, or any other similar documents, detailing such employment-type policies during my time as an independent contractor.

6.    I began my work on the DWH spill response in Gulfport, Mississippi as the Planning Section Chief, working out of Branch Biloxi and taking direction from the Incident Command Post in Mobile, Alabama ("ICP Mobile"), one of several posts established by the USCG pursuant to the Incident Command System ("ICS"), the organizational structure used by the federal government to execute the oil spill response efforts. I served in this position for one week. I then served as the Deputy Branch Director for the Biloxi branch of ICP Mobile, a position I held until August 9, 2010.

7. At that time, I worked alongside and reported to a BP worker, the Branch Director, who worked in the ICS under the ultimate authority and direction of the federal government. Because the Branch Director lacked oil spill clean-up experience, he asked me to handle the operational work with respect to all clean-up activities (including beach and on-water operations), while he handled the communications work.

8. At that time, I was supervising around seven people directly. I was given no formal instruction or direction by O'Brien's on how to perform my work during the DWH oil spill response and relied on my own skill and experiences to perform the work. The Branch Director, working in the ICS and under the ultimate authority and direction of the federal government, simply gave assignments and I had the freedom to determine how best to execute them, subject to the ICS instructions given to me by my superiors, or by federal officials like the USCG, and I performed my work in conformity with all instructions given. I interfaced with around 50 people each day from different contractors and we worked together to implement ICS clean-up plans and the ICS assignments we were given.

9. I brought my own computer equipment and mobile phone to the DWH oil spill response assignment after contracting with O'Brien's. I never received any equipment from O'Brien's to conduct my work.

10. Around December of 2010, I rejoined O'Brien's as a full time employee for a longer term engagement. I held this position for approximately 15 months, performing oil spill response drills, exercises and training.

11. I left O'Brien's at the end of March 2012 and formed my own company, through which I contracted to provide oil spill response services to O'Brien's and other companies. On January 2, 2013, I returned to work for the state of California as Chief of the Marine Facilities

Division at the California State Lands Commission doing prevention work in California state waters with respect to oil and marine invasive species.

I declare under penalty of perjury that the foregoing is true and correct. I have given this statement voluntarily and of my own free will.

Executed on the 21ST day of March 2013.

_____
Gary Gregory