### HUB ENTERPRISES
### INVESTIGATIVE REPORT

August 22, 2013

| | | |
|---|---|---|
| RE: | SUBJECT: | Employee A |
| | HUB CASE NO.: | 3M13070030 |
| | DATE ASSIGNED | July 18, 2012 |

### BACKGROUND

On July 18, 2013, David Welker Director of Fraud, Waste and Abuse for the Claims Administrator's Office (CAO) of the Deepwater Horizon Economic and Property Damages Claims Center received a letter from Mr. Keith Moskowitz, counsel for BP regarding information received on the BP anti-fraud hotline. The letter also contained a case report from the BP fraud hotline center. The information asserted that on July 15, 2013 a person had called the BP hotline and claimed that they heard from another person that a Court Supervised Settlement Program (CSSP) claim center employee in the Mobile, Alabama Claimant Assistance Center (CAC) was allegedly engaging in a fraudulent scheme by assisting claimants in submitting fraudulent claims to the CSSP in exchange for payment of a portion of settlement awards that may be paid to those claimants. On that same day, HUB was notified by David Welker of the CAO of the allegations and was requested to conduct an investigation.

On Thursday, July 18, 2013, HUB contacted the informant to attempt to validate the information provided to the BP hotline and to obtain any additional information the informant elected to share. The informant stated that in a general conversation with a co-worker, Claimant 1, Claimant 1 advised that her daughter (name unknown) was working at the Claims Center on Azalea Road in Mobile, Alabama, and helping family members and others file claims. It was suggested the CAC "implying more than one claims center employee," all know how to "game the system." In addition, he/she was told that "the daughter" was taking "kickbacks" for each claim which is being paid. The informant asserted that he/she was told that the daughter was going to receive $10,000.00 of a $30,000.00 settlement for Claimant 1's brother (name unknown) from a claim the daughter assisted in filing.

**EXHIBIT I(B)**

The informant also alleged that another coworker, Claimant 2, might have additional knowledge of these activities. A search of the Deepwater Horizon portal, revealed that Claimant 2 had filed a Subsistence Claim, which was placed on hold.

The informant reported initially having contacted the Attorney General's Office in Mobile, Alabama to report the allegations; however, the call was answered by a voicemail system and the informant did not leave a message. *This was later verified to be inaccurate as a representative of the Attorney General's office did in fact speak with the informant; however, as there was no verified loss, the Attorney General's Office did not pursue an investigation at that time or as of the date of this report.* The informant allegedly also contacted the Pensacola Claims Center, but before providing any information, became concerned about how widespread the alleged scheme was in the Gulf Coast and terminated the call. The informant reports next having located the "Hotline" from the DHECC website which was contacted and the allegations were reported. *In subsequent conversations with the informant, the version changed to having heard the "Hotline" number from a radio ad and then researching a news website to obtain the "Hotline" number.* It should also be noted that, although the BP Hotline Case Report indicates that the informant is not a claimant; the informant has, in fact, filed a subsistence claim with the CSSP and did so in the Mobile CAC.

Based upon the information provided by the informant and database searches by investigators of HUB, the CAO was able to identify the CAC employee referred to in the informant's complaint as Employee A. Employee A has worked for the CSSP since May 2012, is currently a full-time employee of BrownGreer PLC and serves as a claimant assistant at the Mobile CAC, whose job is to help claimants fill out claim forms and file claims. She is also a subsistence claims reviewer.

Upon the identification of the employee, the following investigative steps were taken:

1) The CAO identified a subsistence claim filed by Claimant 1 the mother of Employee A. A hold was immediately placed on that claim pending the outcome of this investigation.

We learned that Employee A helped a total of 124 claimants who came to the CAC to file claims, all of which now have been placed on hold pending the outcome of this investigation.   These have been reviewed to determine if there is any relationship between the claimants and Employee A beyond legitimately assisting them with their claim in the performance of her job duties.  We have not found any relationship between any of these claimants and Employee A beyond Employee A legitimately assisting them in the filing of their claims.  In fact, we have learned from BrownGreer that Employee A has referred 32 claimants (22 of whom filed in the Mobile CAC) for fraud review by the CSSP, leading to detection of a significant multi-claimant pattern.

2) On July 19, 2013 at approximately 8:30 a.m. CST, Employee A was interviewed by HUB investigators regarding the aforementioned allegations. Employee A denied any wrongdoing. Employee A was suspended by BrownGreer pending the outcome of the CAO's investigation.

3) The CSSP computer used by Employee A during the course of her CSSP employment was sequestered and examined. The e-mail communications of the employee were also sequestered, preserved, and reviewed.  The examinations of the computer and e-mails of Employee A revealed no evidence of fraud.

4) Following the interview of Employee A, HUB investigators began the process of interviewing all employees of the Mobile CAC, with particular sensitivity to determine whether any other CAC employees may have been aware of or involved in this alleged pattern or any other potentially illicit pattern.  Based upon the investigation, we have not validated any of the fraud allegations.

5) As a result of the ongoing investigation, two additional BrownGreer employees, Employee B and Employee C, were suspended on July 19, 2013, pending the outcome of this investigation. It was learned from BrownGreer that these employees had looked up two claims at the request of Employee A. It was also learned from BrownGreer that both Employee B and Employee C had referred several claims for fraud review (Employee B 10, Employee C 26).  The computers of Employee B and Employee C used during the course of their CSSP employment were sequestered and examined. The e-mail communications of Employee B and Employee C were also sequestered, preserved and

reviewed.  The examinations of the computers and e-mails of Employee B and Employee C revealed no evidence of fraud.

## METHODOLOGY

In accordance with the request from the CAO, HUB conducted an investigation into the alleged fraud.  The methodology employed was as follows:

1) HUB established contact with the informant to discuss the source's allegations of fraud and "kickbacks" by Employee A and others at the Mobile Alabama Claims Assistance Center.

2) HUB interviewed the subject, Employee A, concerning the allegations made against her (see Exhibit "A" for interview notes).

3) HUB interviewed all Mobile Alabama Claims Assistance Center staff to determine the validity of the allegations and if valid, determine if the activities are systemic throughout the claims center (see Exhibit "A" for interview notes).

4) HUB developed dossiers on all Mobile, Alabama CAC employees to determine close relatives and is working with the CAO to search the claimant database for claims filed by any close family members.

5) The CAO directed BrownGreer to develop and distribute to all CAC employees, a Code of Conduct Policy Questionnaire detailing familial and close personal relationships.  This will be used in conjunction with the dossiers noted above to develop the dataset.

## KEY FINDINGS

*1) **We have not found any evidence to support the allegation that Employee A assisted relatives with filing fraudulent claims.*** Note that Claimant 1 has declined to cooperate with HUB investigators.  We have learned that Orran Brown spoke to Claimant 1 on August 8, 2013.  Claimant 1 denied any wrong doing by herself or her daughter, denied that her daughter provided any assistance with the filing of her claim, and subsequently withdrew her claim.  Also note that the investigation is

centered around interviews with CAC employees and their statements as well as appropriate data searches. No claim mentioned in this report as on hold was reviewed by or affected by Employee A.

**2)** *We have not found any evidence to support the allegation that Employee A assisted friends with filing fraudulent claims.* Note that the investigation is centered around interviews with the informant, CAC employees, claimants and their subsequent statements as well as appropriate data searches.

**3)** *We have not found any evidence to support the allegation that Employee A assisted unknown persons with filing fraudulent claims.* Note that the investigation is centered around interviews with the informant, CAC employees, claimants and their subsequent statements as well as appropriate data searches.

**4)** *We have not found any evidence that any CAC employee altered any claims of friends or relatives of other CAC employees.* Note that the investigation is centered around interviews with the informant, CAC employees, claimants and their subsequent statements as well as appropriate data searches

**5)** *The investigation has determined that Employee A's mother and brother had claims in the system that she did not disclose.* (Reference Employee A July 19th interview and her second interview on August 6, Exhibit A). The CAO has also verified the presence of the claims in the CSSP system. Employee A did not create those claims, has not reviewed the claims, or affected them in any way. Neither claim has been paid.

**6)** *The investigation determined that Employee A had other CAC employees look up the claim status of her mother's and brother's claims.* (See Employee B and Employee C interviews conducted on July 19th)

*7) The investigation determined that a CAC employee allowed other CAC employees to use his computer terminal while he was logged into the system but away from his desk.* (See Employee C's July 19th Interview, Exhibit A)

*8) It has been determined that discrepancies exist in the information provided by the informant to the BP hotline. We have found no evidence to support allegations of fraud in the Mobile CAC.* The investigation determined that the informant had filed a Subsistence claim that is pending with the CSSP, prior to making the complaint. Additionally, the informant advised they had contacted the office of the Alabama State Attorney General (ASAG) but received a voice recording and thereafter disconnected the call. Through contact with the ASAG, the CAO learned that the informant had in fact made contact with the ASAG on two separate occasions and provided the same information they provided the BP anti-fraud hotline and HUB investigators. That information was provided to HUB.

*9) We have been unable to locate a claim for an uncle of Employee A to prove the allegation that she had assisted an uncle in filing a fraudulent claim and received a kickback of $10,000.* We have been unable to identify an uncle of Employee A that has a claim in the CSSP. An examination of bank records supplied by Employee A show no unusual or suspicious activity to support this allegation.

## PROACTIVE MEASURES

1) As part of the CAO's ongoing internal fraud prevention process, HUB will continue to develop dossiers for all CAC employees and identified familiar relationships with the resulting data set to be searched against claims in the CSSP data base.
2) The CAO will continue to aggressively review for fraud all subsistence claims including those from the Mobile CAC.

**EXHIBIT A**

**INTERVIEW NOTES**

<u>**Employee A Interview – July 19, 2013**</u>

We secured a recorded statement from Employee A, who stated she is employed by the Claims Assistance Center located in Mobile, Alabama.  Employee A stated she has been employed at the Claims Center since May of 2012.  She stated she discovered the employment opportunity for the Claims Assistance Center from a job placement service ad located in Mobile, Alabama.  Employee A stated her job title for the Claims Assistance Center is Subsistence Quality Assurance (QA), and she has been in this position since August of 2012.  Employee A described her job duties as a Subsistence Quality Assurance (QA), as she reviews the documents submitted by the Claimant to assure the documents are correctly submitted.

Employee A stated she did not have any knowledge of any family members filing claims with the Deepwater Horizon Economic Claims Center.  She further stated she had never filed a claim for any relatives.  She does not have any knowledge of any false claims being filed within the Claims Assistance Center.

Employee A stated her mother's name is Claimant 1, and she resides in Mobile, Alabama.  She stated she did not have any knowledge of her mother filing any claims with the Deepwater Horizon Economic Claims Center.  Employee A stated she does not have a good relationship with her mother.  She stated the relationship is strained over Employee A's poor financial situation.  Employee A stated she last spoke to her mother on the previous day, July 18, 2013.  Employee A said her mother works for Company A, in Mobile, Alabama.

Employee A was further questioned on her mother's Subsistence claim..  She stated she did not have any knowledge of her mother filing a claim, and did not assist her filing a claim.  She further stated she did not have any knowledge of her mother's claim and even stated that her mother does not fish.  *Other Mobile Claims Assistance Center employees when interviewed provided information that conflicts with the statement that her mother had not*

*filed a claim. Additionally Employee A in a subsequent interview provided information that conflicts with this statement as well.*

### Employee B Interview – July 19, 2013

Operative (#70125) obtained a recorded statement from Mobile Alabama Claims Assistance Center employee, Employee B. Employee B stated she has been employed with the Claims Assistance Center since May of 2012. Her job assignment currently is Subsistence Claim Reviewer. Employee B stated she reviews the incoming Subsistence claims for completeness.

Employee B said she works from her own dedicated computer work station. She stated she is required to log in and out of the computer to gain access to the DHECC Portal. Employee B said there is no other Claims Assistance Center employee who has access to her login information.

Employee B stated she is familiar with Employee A and referred to her as "Employee A." Employee B stated Employee A would prepare taxes outside of her work with the Claims Assistance Center, but did not know if she owned a tax business. Employee B never had her taxes prepared by Employee A.

Employee B stated she was not familiar with Claimant 1 and did not know she was Employee A's mother. Employee B stated often Employee A would assist her with claims, and they would exchange claim numbers with each other. Employee B stated the reason for the exchange of claim numbers was for assistance in processing claims.

Employee B stated she recalled the last time she entered a claim number for Employee A was earlier that week, Monday or Tuesday. Employee B could not remember the claim number or the Claimant's name which was searched on her computer. She could not recall the reason why the Claimant was looked upon her computer by Employee A.

Employee B was re-interviewed after the Operative obtained additional information regarding Employee B's computer usage. The Operative explained to Employee B her history log reflected that the Claimant 3 and Claimant 1 claims were looked up on July 16, 2013. Employee B could not explain why these Claimants were looked up on her computer terminal, and stated she did not look up these Claimants.

### Employee D Interview – July 19, 2013

Operative (#70125) met with and secured the recorded statement of Employee D. Employee D's duties include reviewing Subsistence Claims, and she has been employed at the Claims Assistance Center for one year. She has never allowed anyone to use her computer login information. She has never conducted searches for claimants for personal reasons, nor as a favor to another employee. She does not have any other employment.

### Employee E Interview – July 19, 2013

Operative (#70125) obtained a recorded statement from Mobile Alabama Claims Assistance Center Manager, Employee E. Employee E stated he has been the manager for the Mobile Alabama Claims Assistance Center since May of 2012. Employee E stated his duties as Claims Assistance Center Manager is to ensure the operation of the facility. Employee E stated his duties include, but are not limited to, customer service, human resources issues, employee issues, and the overall operation of the Claim Center.

Employee E stated he has no knowledge of any employee, past or present, assisting a Claimant in filing a false claim. He stated if he did, he would have immediately terminated the employee and reported the incident. Employee E stated Employee A was an excellent employee, and would assist other employees as needed. He stated due to her excellent work ethic, Employee A was promoted to Subsistence Quality Assurance (QA). She was promoted to this position around August of 2012.

### Employee F Interview – July 19, 2013

Operative (#70125) obtained a recorded statement from Mobile Alabama Claims Assistance Center employee, Employee F. Employee F stated he has been employed by the Claims

Assistance Center in Mobile, Alabama since June of 2012. He stated he became part of the Subsistence Review team in March of 2013. He stated his responsibilities are to verify the information submitted by Claimants is correct and complete. Employee F stated he does not have any family member(s) who filed a Claim with the CSSP. He further stated no other Claims Assistance Center Employee had ever filed a claim for any of his family members. Employee F stated he would observe Employee A assist other staff members, but never observed her falsifying documents. We have learned from BrownGreer that assisting other staff members was part of Employee A's responsibilities.

## Employee C Interview – July 19, 2013

Operative (#70030) obtained a recorded statement from Employee C. He also goes by Employee C. He has been employed by the Deepwater Horizon Economic Claims Center Claims Assistance Center in Mobile, Alabama since June 6, 2012.

He is employed full time as a Quality Assurance "QA" Reviewer. Employee C advised he has a dedicated computer, and utilizes his own username and password. He has not shared his login information with any of his co-workers.

He admitted on a few different occasions while logged into his computer under his username and password, he allowed co-workers Employee K, Employee I and Employee A to take control of his computer to "look up something." He stated, "If someone needed to do something, I would go to the bathroom and let them use my computer", saying "I will be right back." He then contradicted himself, and stated the only time anyone else would have been in control of his computer would have been during training. He denied ever accessing any of his co-workers computers, and verified Employee A's workstation was next to his work station.

Employee C denied ever telling anyone what to put on a claims form. We have learned from BrownGreer that the claimant assistants are there to explain to claimants how to complete their claim forms and to complete claim forms for them in the online claims system, and that

this was the primary purpose for which BrownGreer was instructed to establish the Claimant Assistance Centers and to staff them with persons from the local area.

Employee C stated that he did not conduct a Quality Assurance review on Claimant 1's claim. He admitted to looking it up for someone. He initially advised he could not recall who had asked him to look up the status of this claim, nor could he recall the number of times he conducted a search with regards to Claimant 1's claim. He then recanted, stating he looked up the status of the Claimant 1's claim three or four times at the request of Employee A. According to Employee C, Employee A's first request for him to search the claim was between two and four weeks ago. At Employee A's request, he looked up the claim to determine who was reviewing it and to determine the status of the claim.

### Employee G Interview – July 19, 2013

Operative (#70030) obtained a recorded statement from Employee G. Employee G is a single female, and has never gone by any other name. She has been employed by the Deepwater Horizon Economic Claims Assistance Center in Mobile, Alabama since January 3, 2013.

Employee G advised she has a dedicated computer, and utilizes her own username and password. She has not shared her password with any of her co-workers. She logs into her computer at the beginning of her shift, and out at the end of her shift. She locks her computer when she is away from her desk during the day. She has never knowingly filed a false claim for anyone; nor has she ever instructed any one to include false information on a claims form. She has never observed a co-worker, including managers, prepare a false claim.

### Employee H Interview – July 19, 2013

Operative (#70030) obtained a recorded statement from Employee H. She has been employed by the Claims Assistance Center in Mobile, Alabama for seven months. She is employed full time as a Subsistence Initial Reviewer. Employee H advised she has a dedicated computer, and utilizes her own username and password. She logs into her computer at the beginning of her shift, and locks her computer when she is away from her desk during the day.

She has not filed a claim with the Deepwater Horizon Economic Claims Center, nor have any of her family members. She stated none of her co-workers have filed claims for any of her family members. She has no knowledge of any of her co-workers having filed a personal claim for themselves. She does not have any knowledge of any present or past employee, including managers, assisting in filing claims which are not accurate.

## Employee I Interview – July 19, 2013

Operative (#70030) obtained a recorded statement from Employee I. She has been employed by the Deepwater Horizon Economic Claims Center Claims Assistance Center in Mobile, Alabama since May 14, 2012. She is employed full time as a Subsistence Interviewer and currently moving into a QA position. Employee I advised she has a dedicated computer, and utilizes her own username and password. She has not shared her password with any of her co-workers.

Employee I has no knowledge of any of her co-workers having filed a personal claim for themselves. She does not have any knowledge of any present or past employee, including managers, assisting in filing claims which are not accurate. She has never knowingly filed a false claim for anyone; nor has she ever instructed any one to include false information on a claims form. She has never observed a co-worker, including managers, prepare a false claim.

## Employee J Interview – July 19, 2013

Operative (#70030) then met with and secured a recorded statement from Employee J. Employee J is a single female, and has never gone by any other name. She has been employed by the Deepwater Horizon Economic Claims Center Claims Assistance Center in Mobile, Alabama since May 9, 2012.

Employee J advised she has a dedicated computer, and utilizes her own username and password. She has not shared her password with any of her co-workers. She logs into her computer at the beginning of her shift, and out of it at the end of her shift. She locks her computer when she is away from her desk during the day. She has no knowledge of

Employee A filing or assisting in filing a fraudulent claim, or filing a claim for a member of her family.

### Employee K Interview – July 19, 2013

Operative (#70150) obtained recorded statement from Employee K.  Employee K's duties include reviewing Subsistence Claims, and he has been employed at the Claims Assistance Center for six months.  He has never allowed anyone to use his computer password.  He has conducted a search for family members to ascertain if they had filed a claim.  He notified his manager Employee E of the search.  Since that time, he has never conducted a search for personal reasons or for a favor to another employee.

### Employee L Interview – July 19, 2013

Operative (#70150) obtained a recorded statement from Employee L.  Employee L is a team leader.  He assists other employees with claims duties, and has been employed at the Claims Assistance Center since October 2012.  He has never allowed anyone to use his computer password.  He has never conducted searches of claimants for personal reasons, or for a favor to another employee.

He has never seen Employee A file or assist in filing a fraudulent claim, or file a claim for a member of her family.  He stated Employee A prepares taxes as a side job.  He has never used Employee A to prepare his taxes.

### Employee M Interview – July 19, 2013

Operative (#70150) then met with and secured a recorded statement from Employee M.  Employee M's duties include reviewing Subsistence Claims, and she has been employed at the Claims Assistance Center for six months.  She has never allowed anyone to use her computer password.  She has never conducted searches for claimants for personal reasons, or as a favor to another employee.  She has never seen any CAC employee, to include Employee A file or assist in filing a fraudulent claim, or file a claim for a family member.

### Employee N Interview – July 19, 2013

Operative (#70150) obtained a recorded statement from Employee N.  Employee N's duties include assisting claimants in filing claims, and she assists Spanish-speaking claimants.  She has been employed at the Claims Assistance Center since May 2012.  She has never allowed anyone to use her computer password.  She has never conducted searches for claimants for personal reasons or as a favor to another employee.  Employee N is unaware of any family members who have filed a claim with the Deepwater Horizon Economic Claims Center.  She has never filed or assisted in filing a false claim.  She has never seen any CAC employee, to include Employee A file or assist in filing a fraudulent claim, or file a claim for a family member.

### Employee O Interview – July 19, 2013

Operative (#70150) then met with and secured a recorded statement from Employee O.  Employee O's duties include reviewing Subsistence Claims, and she has been employed at the Claims Assistance Center since January 2013.  She has never allowed anyone to use her computer password.  She has never conducted searches for claimants for personal reasons, or as a favor to another employee.  She has never filed or assisted in filing a false claim.  She has never seen any CAC employee, to include Employee A file or assist in filing a fraudulent claim, or file a claim for a family member.

### Employee P Interview – July 19, 2013

Operative (#70150) then met with and secured a recorded statement from Employee P.  Employee P is a claims assistant, and has been employed at the Claims Assistance Center for one year.  She has never allowed anyone to use her computer password.  She has never conducted searches for claimants for personal reasons or as a favor to another employee.  She does not have any other employment.  She has never seen any CAC employee, to include Employee A file or assist in filing a fraudulent claim, or file a claim for a family member.

### Employee Q Interview – July 19, 2013

Operative (#70150) obtained a recorded statement from Employee Q.  Employee Q is a receptionist coordinator, and has been employed at the Claims Assistance Center for over a

year. She has never allowed anyone to use her computer password. She has never conducted searches for claimants for personal reasons or as a favor to another employee. She does not have any other employment. She has never seen any CAC employee, to include Employee A file or assist in filing a fraudulent claim, or file a claim for a family member.

**Employee R Interview – July 19, 2013**

Operative (#70150) obtained a recorded statement from Employee R. Employee R is the Assistant Manager of the Claims Assistance Center, and has been since 2012. He has never allowed anyone to use his computer password. He has never conducted searches for claimants for personal reasons or as a favor to another employee. He does not have any other employment.

To his knowledge, none of his family members have filed a claim with the Deepwater Horizon Economic Claims Center. He has never filed or assisted in filing a false claim. He knows of no one in the office who has filed or assisted in filing a false claim. He has never seen any CAC employee, to include Employee A file or assist in filing a fraudulent claim, or file a claim for a family member.

**Employee S Interview – July 19, 2013**

Operative (#70083) conducted a recorded statement with Employee S, Claims Assistant. She stated she has been employed with BrownGreer at this Deepwater Horizon Claims Center since May 9, 2012. Employee S stated no one has access to her computer terminal or passwords.

She stated she has never filed a claim with the Deepwater Horizon Economic Claims Center for friends or family, and has no knowledge of her co-workers, including Employee A filing any of their own family or friends claims. She did know Employee A worked in photography on the side, but nothing else.

### Employee T Interview – July 19, 2013

Operative (#70083) conducted a recorded statement with Employee T, Claims Assistant. She stated she has been employed with BrownGreer at this Deepwater Horizon Claims Center since May 2012. Employee T acknowledged having her own computer, which could only be accessed by logging in with a password only she knew.

She stated she has never assisted in filing a claim for her family or family members, and they do not have any claims filed with the Deepwater Horizon Economic Claims Center. She has no knowledge of co-workers filing false or inaccurate claims.

### Employee U Interview – July 19, 2013

Operative (#70083) conducted a recorded statement with Employee U, Claims Assistant. She stated she has been employed with BrownGreer at this Deepwater Horizon Claims Center for thirteen months. Employee U stated no one has access to her computer terminal or passwords. Other claims assistants can use her terminal if they sign in with their personal password.

She stated that she has never filed claims for her family members; however, two family members have filed claims. She provided the names Claimant 4 and Claimant 5, but could not recall where they filed. She had no knowledge of anyone in the claims center filing false claims for friends or family.

### Employee V Interview – July 19, 2013

Operative (#70083) conducted a recorded statement with Employee V. She stated she has been employed with BrownGreer as a Claims Assistant at this Deepwater Horizon Claims Center for one year. Employee V acknowledged having her own designated computer, and she does not provide her password to anyone; however, they could log on with their own password.

**Employee W Interview – July 19, 2013**

Operative (#70083) conducted a recorded statement with Employee W.  She stated she has been employed with BrownGreer as a Claims Assistant at this Deepwater Horizon Claims Center since June 4, 2012.  Employee W acknowledged having her own designated computer, which she did not share or allow others to use with her password.  She stated she has never processed a claim for family or friends, nor assisted co-workers in falsely filing any claims.

**Employee X Interview – July 19, 2013**

Operative (#70083) conducted a recorded statement with Employee X.  She stated she has been employed with BrownGreer as a Claims Assistant at this Deepwater Horizon Claims Center since June 2012.  Employee X acknowledged having her own designated computer, which others would use on occasion to clock in and out on; however, she did not allow others to use her password.

She acknowledged filing a claim herself for lost wages; however, she later dropped the claim.  She denied knowing of any false claims being filed at the claim center (it was later determined by the CAO that this claim was a GCCF claim).

**Employee Y Interview – July 19, 2013**

Operative (#70083) conducted a recorded statement with Employee Y.  He stated he has been employed with BrownGreer as a Claims Assistant and Translator for one year; however, he has only worked at this Deepwater Horizon Claims Center for three months.  Employee Y acknowledged having his own designated computer, which he does not share or provide his password to anyone.

**Employee Z Interview – August 6, 2013**

Operative (#70125) obtained a recorded statement from Employee Z.  Employee Z was absent on July 19, 2013 when the initial recorded statements of Claims Assistance Center employees were interviewed.  Employee Z stated he is employed at the Claims Assistance Center as the IT technician.  Employee Z stated he does not retain a list of the Mobile

Alabama Claims Assistance Center employees Deepwater Horizon Economic Claim Center portal passwords and logins. The only employee password and login list retained by Employee Z is for the TrueCrypt computer program. Employee Z stated he is responsible for handling any IT issues which may occur at the Mobile Alabama Claims Assistance Center. In addition to the Mobile Alabama Claims Assistance Center, Employee Z is responsible for IT issues at the Bay St. Louis, Bayou Le Batre, and Biloxi Claims Centers; however, Mobile is his main center. Employee Z stated his job duties entail the following: installing software, installing devices, network issues, and general computer maintenance for the Claims Assistance Centers. He has a password and login, but does not have access to the DHECC Portal. Employee Z does not have any interaction with the Claimants.

### Employee AA Interview – August 6, 2013

Operative (#70125) obtained a recorded statement from Employee AA. Employee AA was absent on July 19, 2013 when the initial recorded statement of Claims Assistance Center employees were conducted. Employee AA stated she has not had any family members file a claim with the Deepwater Horizon Economic Claim Center program. She further stated she has not entered any data for any family members. Employee AA stated she only enters the data that the Claimant provides to her, and does not inform the Claimant on what data to place into the claim form. Employee AA stated she has never seen any Mobile Alabama Claims Assistance Center staff, including Employee A, giving specific information, such as fish type or quantity, to include in the claims form. Employee AA recalled that in February or March 2013; she observed what she believed a relative of Employee A in the claim center preparing a claim. She stated she spoke with Employee W about the resemblance of the Claimant to Employee A. Employee AA believed the relative to be Employee A's uncle. She stated the employees commented amongst each other about the resemblance of Employee A and this Claimant, but she could not recall which employees. She believed no one from management was aware of the visit. Employee AA has two passwords and login capabilities. One set of passwords/ID is to gain access to the Deepwater Horizon Economic Claim Center portal and the other password/ID is to gain access to the BrownGreer data.

**Employee I Second Interview, August 6, 2013**

Operative (#70125) obtained a recorded statement from Employee I.   Employee I was re-interviewed with additional questions from her July 19, 2013 interview.  Employee I stated she does not have multiple user names, logins, or passwords to gain access to the Deepwater Horizon Economic Claim Center portal.   She has a dedicated login/password for the BrownGreer system and a dedicated password for the Deepwater Horizon Economic Claim Center portal.  She has never asked Employee C specifically to research a claimant, other than in the official capacity of her duties at the Claims Assistance Center.  Employee C is a team leader and would often assist other Claims Assistance Center employees during the normal course of business.

**Employee K Second Interview – August 6, 2013**

Operative (#70125) obtained a recorded statement form Employee K.  Employee K was re-interviewed with additional questions from his July 19, 2013 interview.  Employee K stated he does not have multiple user names, logins, or passwords to gain access to the Deepwater Horizon Economic Claims Center portal.   Employee K said he has a dedicated login/password to gain access to the BrownGreer system and a dedicated password for the DHECC Portal.  He stated he would ask Employee C to assist him, when needed, as Employee C was a team leader.  Employee C would often assist other Claims Assistance Center employees during the normal course of business.

**Employee C Second Interview – August 6, 2013**

Operative (#70125) obtained a subsequent recorded statement from Employee C. Employee C stated his brother Claimant 6 had filed a Subsistence Claim, and stated the claim was filed online.  Employee C stated he never assisted or informed his brother of what to input on the form.  He stated he did not notify the management of his brother's claim.  Employee C stated he searched Claimant 1 at the request of Employee A and did so approximately 3 times. Employee C stated he has a login/password for the Deepwater Horizon Claims Center portal and a separate login/password to gain access to the BrownGreer documents.

**Employee A Second Interview – August 6, 2013**

Operative (#70125) obtained a recorded statement from Employee A. Employee A stated she has a login/password to gain access to the DHECC Portal and a separate login/password to gain access to the BG documents. She stated she searched the last name of Claimants 1 and 3 after signing a BrownGreer document regarding family members having a claim. She stated this was when she first "noticed" her mother's claim (note that in her July 19th first interview, she stated that she did not know that her mother filed a claim). She stated she also saw the name of Claimant 3, whom she identified as her brother. She stated she did not notify the Claims Assistance Center management even after signing the document which indicated failure to disclose the information could result in termination. Employee A stated she had instructed Employee B and Employee C to conduct the searches.

Employee A stated when she searched Claimant 3's claim she observed in the reviewer notes a comment about the Claimant spelling the children's (dependents) name incorrectly.

Employee A was informed by the investigator that there were additional complaints from citizens regarding suspicious activity at the Mobile Alabama Claims Assistance Center and she still denied ever assisting anyone filing a fraudulent claim. She never assisted any family members in filing a claim, including Claimant 1 and Claimant 3.

She has no knowledge of her mother's fishing activities. She never received any kickbacks from anyone nor was she promised any kickbacks for filing a claim. She never received or was promised $10,000 for filing or preparing a claim.

Concerning her ex-husband, she denied having filed a claim on his behalf or ever intending to file a claim on his behalf. The two have been divorced since 2005 and she does not know if he had/has filed a claim. We questioned Employee A about any owed child support, she stated her ex-husband owes her $60,000.00 in past due child support.

Employee A agreed to provide, upon request, a copy of her bank statement. She stated her financial institution, for the past year, is Azalea City Credit Union, Mobile, Alabama. She

currently has checking and savings accounts at this institution. She supplied her bank statements. They show no unusual or suspicious deposits or other activity at any time.

### Employee B Second Interview – August 7, 2013

Operative (#70125) and Operative (#70083) obtained a recorded statement from Employee B. Employee B stated sometime around June 2013, Employee A requested her to lookup a claim. Employee B stated Employee A handed her a note with a claim number written upon it. Employee B entered the claim number and Employee A looked at the screen. Employee B did not observe her computer monitor screen when the claim was reviewed by Employee A. Employee A reviewed the claim for a matter of "seconds" and exited out of the search page. Employee B does not remember the claim number of which she was asked to search.

### Employee BB Interview – August 7, 2013

Operative (#70125) obtained a recorded telephone statement from Employee BB. Please note: due to Employee BB's medical condition the statement was conducted telephonically. Employee BB has been on medical leave from the Claims Assistance Center since July 8, 2013. Employee BB stated she has multiple passwords: however, she has only has one password and login to obtain access to the Deepwater Horizon Claims Center portal. Employee BB stated she was previously employed at Company A and does not know Claimant 1, who also is employed at Company A. Employee BB has never seen Claimant 1 in the Mobile Alabama Claims Assistance Center.

### Claimant 1 Interview

Claimant 1 was scheduled to provide a recorded statement; however, the operative telephoned Claimant 1 prior to the interview and she stated she would be seeking legal counsel in regard to her claim. Calls to Claimant 1 to confirm her legal representation status were unanswered. Claimant 1 has subsequently withdrawn her claim.

## Claimant 3 Interview

Claimant 3 was interviewed on August 16, 2013.   Claimant 3 denied all allegations of assistance by Employee A and we could find no evidence to further support the original allegations.