UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 ] ] ] ] ] This Document Relates to: 2:12-cv-1045-CJB-JCW ] ] | | MDL No. 2179 SECTION: J Judge Barbier Mag. Judge Wilkinson |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE**

O'Brien's classified the Spill Workers as independent contractors as an entire group. Without changing this classification, O'Brien's often changed their job positions and work locations. In January 2011, O'Brien's then reclassified them across-the-board as employees, all without regard to job duties, work locations, or to whom they reported. Thus, O'Brien's treatment of the Spill Workers as a homogenous group demonstrates the Spill Workers are similarly situated. Further, a detailed inquiry into whether the Spill Workers are similarly situated under the economic realities test is a merits-based inquiry that is improper at the notice stage. But even under the economic realities test, the Spill Workers are similarly situated. Accordingly, notice should issue to the Spill Workers because they are similarly situated under the broad and lenient standard for Rule 216(b) conditional certification under the Fair Labor Standards Act (FLSA).

**I.     Conditional Certification is Proper Because O'Brien's Reclassified Spill Workers as Employees Regardless of Job Duties.**

O'Brien's treated the Spill Workers as a homogenous group for purposes of employee / independent contractor classification. O'Brien's didn't just initially classify Spill Workers as independent contractors without regard to job duties, it also *re*-classified them *en masse* as employees on January 1, 2011 without regard to job duties. Pls.' Exs. 5-18, ¶ 14; Exs. 19-21, ¶

**Ex. 1**

12, Exs. 22-23, ¶ 11; Ex. 24, ¶ 13; *see also* O'Brien's Answer (Doc. No. 6663), at p. 4, ¶¶ 17-19 & p. 5, Second Affirmative Defense.

At the conditional certification stage, "these considerations are far more important than any similarities or dissimilarities regarding the nuts and bolts of the employees day-to-day duties." *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 752 (N.D. Ill. 2010); *see also Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1120 (W.D. Wash. 2011) (reclassification implies defendants treated the workers similarly). Such across-the-board reclassification meets the low burden for conditional certification because it shows the Spill Workers' "claims are united by common theories of [O'Brien's] statutory violations." *Struck v. PNC Bank N.A.*, 2:11-CV-00982, 2013 WL 571849 (S.D. Ohio Feb. 13, 2013). Mass reclassification implies that the workers perform similar job duties. *Heibel v. U.S. Bank Nat. Ass'n*, 2:11-CV-00593, 2012 WL 4463771 (S.D. Ohio Sept. 27, 2012) (citing *Wlotkowski v. Michigan Bell Tel. Co.,* 267 F.R.D. 213, 21718 (E.D.Mich.2010). This is true even when the workers work in different locations under the supervision of different individuals. *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 536 (S.D. Tex. 2008).

The majority of Spill Workers worked in staging, decontamination, beach cleanup, or supervising equipment. However, the fact is O'Brien's treated all "50 distinct work classifications" as a homogenous group. *See* Defs. Brief, p. 2. This is further evidenced by the fact that O'Brien's maintained Spill Workers as independent contractors even as it moved them from position to position and work location to work location before it reclassified all of them on January 1, 2011. *See, e.g.* Pls. Ex. 5, ¶¶ 2-5 (staging yard to decontamination yard, then beach cleanup supervisor); Pls. Ex. 9, ¶¶ 2-5 (decontamination yard then contracts manager); Pls. Ex. 13, ¶¶ 2-5 (supervisor, then beach cleanup, then operations section chief). The Court should

conditionally certify the Spill Workers as a class because O'Brien's treated these workers as a class for purposes of employee / independent contractor classification without regard to their job duties.

## II. Whether Plaintiffs Are Similarly Situated Under the Economics Realities Test Is a Merits-Based Inquiry Improper at the Notice Stage.

Many courts decline to apply the economic realities factors or other individualized analyses at the conditional certification stage because such an analysis is a merits-based inquiry that is improper at the notice stage. *See Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 859 (S.D. Tex. 2012) (certifying a mixed class of hourly employees and independent contractors who worked in various job capacities, including: tracking spending on a daily basis, creating master vessel lists to track boats BP chartered, "finance chief," "forensic auditor," and "cost engineer"). These courts recognize that there is an inadequate record at the notice stage to apply the economic realities factors and that these factors go to the ultimate issue of the case, not whether notice should issue under the lenient similarly-situated analysis. *Scovil v. FedEx Ground Package Sys., Inc.*, 811 F. Supp. 2d 516, 519 (D. Me. 2011) (citing cases); *Putnam v. Galaxy 1 Marketing, Inc.,* 276 F.R.D. 264, 274 (S.D.Iowa 2011) ("Defendants also urge the Court to look to the 'economic realities' of the working relationship .... Making a determination, at this time, ... pursuant to the 'economic realities' test, would ... improperly delve into the merits of Plaintiffs' claim."); *Meseck v. TAK Communications, Inc.,* 2011 WL 1190579, at *6 (D.Minn. March 28, 2011) ("Courts in this district and elsewhere consistently hold that such potential defenses and individualized inquiries should not prevent conditional certification at the notice stage and are more appropriately addressed through a decertification motion."); *Lemus v. Burnham Painting and Drywall Corp.,* 2007 WL 1875539, at *5 (D.Nev. June 25, 2007) ("The fact intensive inquiries concerning whether the plaintiffs are independent contractors or employees for the

purposes of the FLSA, and detailed analysis of whether the plaintiffs are sufficiently similarly situated to maintain the class are more appropriately decided after notice has been given, the deadline to opt in has passed, and discovery has closed.").

### III.    The Spill Workers Are 'Similarly-Situated' Under the Economic Realities Test.

An analysis of whether the Oil Spill Workers are similarly situated under the economic realities test is improper at the notice stage, as discussed in Section II. However, even if the Court were to consider these factors, which it should not, conditional certification would still be proper.  O'Brien's pretends the job duties of a few Opt-in Plaintiffs are vastly different by referring to various jobs, including a "tar-ball removal instructor," and a "contract manager." The tar removal instructor was a staging yard worker before he was moved to the beaches. Pls. Ex. 14, ¶ 3.  The Plaintiff who worked for a short time at the end of his employment as a contract manager was a decontamination yard worker for the bulk of his employment. Pls. Ex. 9, ¶¶ 3-4. The "environmental observer" was one of a small group of Plaintiffs who supervised beach cleanup crews.  Pls. Ex. 21, ¶¶ 2-4; *see also* Pls. Ex. 8, ¶¶ 3-5; Pls. Ex. 10, ¶¶ 2-4; Pls. Ex. 16, ¶¶ 2-5; Pls. Ex. 17, ¶¶ 2-4;  Pls. Ex. 24, ¶¶ 2-3.  Accordingly, even these Plaintiffs, like most Spill Workers, also worked in staging, decontamination, supervising equipment or in beach cleanup.

#### 1.    The Permanency of Plaintiffs' Employment Is Similar.

Plaintiffs' unanimously testify that Spill Workers, regardless of job duties or other circumstances, worked full-time – usually seven days per week for shifts of at least twelve hours. Pl.'s Exs. 5-18, ¶ 26, Pl.'s Exs. 19-24, ¶¶ 23-24.  Further, the Spill Workers' contracts uniformly state they are a "continuing (evergreen) commitment with no set termination," and prohibited them from working for other spill-responders.  Pl.'s Exs. 5-18, ¶ 26, Pl.'s Exs. 19-24, ¶¶ 23-24; D's Exs. 3-5. O'Brien's witnesses' subjective beliefs as to whether their contracts actually

prohibited other work are unconvincingly self-serving.  The fact is O'Brien's prohibited Spill Workers by contract from working for others.  Accordingly, Plaintiffs are similarly situated with respect to permanency.

Independent contractors often have working relationships of short duration with frequent relocation as they move from job to job between different customers.  Employees, on the other hand, usually work for only one employer in a continuous relationship of indefinite duration.  *Harper v. San Luis Valley Regional Medical Center*, 848 F.Supp. 911 (D. Colo. 1994); s*ee also Engineering & Construction Co.*, 137 F.3d at 1442 (independent contractors typically have employment relationships of short duration with frequent relocation to find employment).  Workers who work full-time for one employer are more likely to be employees.  *See Cromwell v. Driftwood Elec. Contractors, Inc.*, 348 Fed. Appx. 57, 60 (5th Cir. 2009).  O'Brien's urges the Court to consider that some Plaintiffs have worked for O'Brien's for other catastrophes and others did not.  However, this is a misapplication of the test because the Court "must make allowances for those operational characteristics that are unique or intrinsic to the particular business or industry, and to the workers they employ."  *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1054 (5th Cir. 1987) (citations omitted).   Thus, even in seasonal industries, the proper test for determining permanency of the relationship is not whether the alleged employees returned from season to season.  *Id.*   Accordingly, Plaintiffs are similarly situated with regards to permanency.

### 2. *The Spill Workers' and O'Brien's Relative Investments Are Similar.*

Even O'Brien's evidence of Spill Worker "business investment" is limited to ordinary personal items like steel toe boots, hard hats, cameras and personal vehicles.  O'Brien's Resp. at p. 17.  O'Brien's is also quick to allege that the office space and equipment it assigned to its Spill

Workers were actually owned by others. *Id.* O'Brien's argument, however, is merits-based, which is improper at the notice stage. *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, CIV.A. H-08-1212, 2008 WL 5204149 (S.D. Tex. Dec. 11, 2008). Even still, whether O'Brien's provided facilities and equipment and how its business investments compare to steel toe boots and personal vehicles are matters that can absolutely be determined on a class-wide basis. Accordingly, the Spill Workers are similarly situated in regards to this factor.

### 3. The Spill Workers' Skill and Initiative Are Similar.

Thus, "the fact that workers are skilled is not itself indicative of independent contractor status." *Brock v. Superior Care, Inc.*, 840 F. 2d 1054, 1060 (2d Cir. 1988). After all, engineers and physicians as well as janitors and dishwashers are likely to be employees. Further, whether a worker makes more by selling or producing more units is also not indicative of independent contractor status because salespeople and piece workers are also likely to be employees. *See, e.g., Hopkins v. Cornerstone Am.,* 545 F.3d 338, 346 (5th Cir. 2008) (sales leaders were employees because they lacked the ability to set territories, choose which products to sell, set prices, determine the number of sales leads, sell competing products, operate other businesses, or hire, fire, assign or promote subordinates); *Dole v. Snell*, 875 F.2d 802, 809 (10th Cir. 1989) ("toiling for money on a piecework basis is more like wages than an opportunity for 'profit'").

Thus, "a variety of skilled workers who do not exercise significant initiative in locating work opportunities have been held to be employees under FLSA." *Id.* (citations omitted). Courts look to whether the proposed employee exercises initiative and skill in a business sense, *e.g.*, "drumming up business," or "locating clients." *See Brock v. Mr. W Fireworks*, 814 F.2d 1042, 1053 (5th Cir. 1987) (citing *Usery v. Pilgrim Equip. Col, Inc.*, 527 F.2d 1308, 1314 (5th Cir. 1976) ("All major components open to initiative—advertising, pricing, … choice of [suppliers]"

controlled by employer)); *Lang v. DirectTV*, 801 F.Supp.2d 532, 539 (E.D. La. July 12, 2011) (cable installers' ability to "drum up their own business" limited due to employer's control over job assignments and over advertising); *Richardson v. Genesee County Cmty. Mental Health*, 45 F.Supp.2d 610, 614 (E.D.Mich. 1999) (nurses did not locate clients); *Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343, 1351 (M.D. Fla. 1997) (exotic dancer's "hustling" not indicative of independent contractor status where her initiative is limited to clothing and provocativeness of dances, not control over customer volume or club atmosphere.).

The fact that some Spill Workers had more relevant experience and job skills than others, or that some had one or three or no days of training does not make them dissimilar. Employees also vary in their relevant background experience and training requirements. What matters is whether the "bottom line in [the] enterprise is the business acumen and investment contributed by [their employer]." *Mr. W Fireworks, Inc.*, 814 F.2d at 1053.

The Spill Workers secured employment with O'Brien's like ordinary employees – they heard about an opportunity from a friend or family member. Pls. Exs. 5-15, 16-17, ¶ 30; Pls. Ex. 19, ¶ 26; Pls. Ex. 24, ¶ 14. After a short interview with an O'Brien's representative, they were hired and told to report to work within a few days. Pls. Exs. 5-18, ¶¶ 15-16; Pls. Exs. 19-21, ¶ 13; Pls. Exs. 22-23, ¶ 12; Pls. Ex. 24, ¶ 14. Once hired, the Spill Workers worked continually, going weeks or months without a day off. Pls. Exs. 5-18, ¶¶ 9-11; Pls. Exs. 19-21, ¶¶ 7-9; Pls. Exs. 22-23, ¶¶ 6-8; Pls. Ex. 24, ¶ 8-10. Accordingly, the Spill Workers are similarly situated with respect to the skill and initiative factor.

### 4. *The Spill Workers' Opportunity for Profit or Loss Is Similar.*

Profit is "the gain realized from a business over and above its expenditures." *Brock v. Lauritzen*, 624 F. Supp. 966, 968 (E.D. Wis. 1985). Where the only "'expenditures' from which

the [workers] obtain a return is on their own labor . . .., [s]uch returns of this type are more properly classified as wages, not profits." *Mr. W Fireworks, Inc*., 814 F. 2d at 1050; *Richardson*, 45 F.Supp.2d at 614.

The Spill Workers received money in return for labor. They were paid a set amount per day, and had no "profit" incentive. Pls. Exs. 5-18, ¶¶ 12-13; Pls. Exs. 19-21, ¶¶ 10-11; Pls. Exs. 22-23, ¶¶ 6-8; Pls. Ex. 24, ¶¶ 8-10. The Spill Workers worked seven days per week, often for weeks or months without a day off. Pls. Exs. 5-18, ¶¶ 9-11; Pls. Exs. 19-21, ¶¶ 7-9; Pls. Exs. 22-23, ¶¶ 6-8; Pls. Ex. 24, ¶ 8-10. O'Brien's controlled the amount of their labor and compensation because O'Brien's controlled their schedules. Pls. Exs. 5-18, ¶ 24; Pls. Exs. 19-24, ¶¶ 21-22. O'Brien's did not allow the Spill Workers to hire their own employees. Pls. Exs. 5-18, ¶ 25, Pls. Exs. 19-24, ¶¶ 22-23. The Spill Workers had no business investment in the enterprise. Pls. Exs. 5-18, ¶ 29; Pls. Exs. 19-24, ¶¶ 25-26. O'Brien's usually reimbursed the Spill Workers for their travel expenses, including mileage and lodging and sometimes reimbursed them for cell phone use. *Id*. The Spill Workers were also provided office facilities and lodging if they were not working within driving distance of their homes. *Id*.

There is no opportunity for profit or loss here because the Spill Workers did not bid on jobs and correspondingly set their own hours or schedules; they shared no risk of loss on their part; and they did not share in the profits or losses of O'Brien's business. *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1441 (10th Cir. 1998). Accordingly, the Spill workers had "no control over the essential determinants of profits in a business, and no direct share in the success of the business." *Id*. (citing *Dole v. Snell*, 875 F.2d at 809. Accordingly, the Spill Workers are similar in that they had no opportunity to experience profit, or to experience a loss, as a result of their employment.

-8-

### 5.     *The Degree of Control O'Brien's Exercised Over Spill Workers Is Similar.*

The Spill Workers describe in detail the extent to which O'Brien's exercised control over their employment in their Memorandum in Support of Conditional Certification (Doc. No. 6930), p. 6.  By way of summary, O'Brien's had the authority to hire and fire Spill Workers.  *Id.*; *see also* O'Brien's Brief at pp. 9-10 (O'Brien's hired and fired at the request of UAC).  O'Brien's numerous employment policies and rules, including those related to: taking time off, entry and departure from job sites, control of movement through electronic badges, who they should report to in the chain of command, how they behaved, what they wore, how they performed their work, what expenses were reimbursable and how they handled documents.  *See* Doc. No. 6930 at p. 6.  Further, O'Brien's prohibited the Spill Workers from working for other spill companies.

O'Brien's alleges the Spill Workers were not subject to its direct control because they reported to different people in the ICS system, but "[a]n employer does not need to look over his workers' shoulders every day in order to exercise control."  *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060 (2d Cir. 1988).  The level of control, like other factors, however, must be considered in light of the circumstances.  For example, the lack of direct supervision over the manner of work of home workers does not weigh in favor of independent contractor status.  *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1384 (3d Cir. 1985).  But whether O'Brien's control over the Spill Workers is enough to support a merits-based decision is not the decision before the Court at the conditional certification stage.  Instead, the issue is whether the Spill Workers are similar enough with respect to control factors for conditional certification purposes.  The Spill Workers have more than adequately demonstrated a similar level of control over their employment by O'Brien's.

## IV.     Email and Regular Mail Accomplish Timely and Effective Notice.

The "benefits of representation action litigation necessarily 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action.'" *Kaluom v. Stolt Offshore, Inc.*, 474 F.Supp.2d 866, 870 (S.D. Tex. 2007) (emphasis added) (quoting *Hoffmann-La Roche,* 493 U.S. at 169-170).  Accordingly, courts in "the Fifth Circuit frequently utilize e-mail to provide notice of collective actions to potential class members." *White v. Integrated Elec. Technologies, Inc.*, 2013 WL 2903070, at *9 (E.D. La. June 13, 2013); *see also Akins v. Worley Catastrophe Response, LLC,* 2013 WL 1412371, at *10 (E.D. La. Apr. 8, 2013); *Jones v. JGC Dallas LLC*, 2012 WL 6928101 (N.D. Tex. Nov. 29, 2012) *adopted* 2013 WL 271665 (N.D. Tex. Jan. 23, 2013); *Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.*, 2012 WL 5986467, at *1-2 (E.D. La. Nov. 29, 2012); *McCarragher v. Ryland Group, Inc.*, 2012 WL 4857575, at *6 (S.D.Tex. Oct. 11, 2012).

Given the fundamental importance of potential class members receiving notice in an FLSA collective action, courts routinely find "that providing notice by first class mail and email" is appropriate to ensure "potential collective action members receive actual notice" of the case. *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1128 (N.D. Cal. 2009).[1]  "Class members should [also] be provided the option of executing their consent forms online via an electronic signature service." *Jones*, 2012 WL 6928101, *5 (N.D. Tex. Nov. 29, 2012).  Plaintiff requests

---

[1]      *See also, Jones v. JGC Dallas LLC*, 2012 WL 6928101 (N.D. Tex. Nov. 29, 2012) *adopted* 2013 WL 271665 (N.D. Tex. Jan. 23, 2013) (approving email notice in FLSA case); *Ahmed v. T.J. Maxx Corp.*, 2012 WL 5507329, *6 (E.D.N.Y. Nov. 14, 2012) (same); *Denney v. Lester's, LLC*, 2012 WL 3854466, *4 (E.D.Mo. Sept.5, 2012) (same); *Butler v. DirectSAT USA, LLC*, 876 F.Supp.2d 560, 575 (D.Md. April 10, 2012) (same); *Alexander v. CYDCOR, Inc.*, 2012 WL 1142449, *9 (N.D.Ga. Apr. 6, 2012) (same); *McInnis v. Ecolab Inc.*, 2012 WL 892187, *4 (D.Minn. Feb.17, 2012) (same), *adopted by* 2012 WL 892192 (Mar. 15, 2012); *Pippins v. KPMG LLP*, 2012 WL 19379, * 14 (S.D.N.Y. Jan. 3, 2012) (same); *Santiago v. Amdocs, Inc.*, 2011 WL 6372348, *8 (N.D.Cal. Dec.19, 2011) (same); *Nobles v. State Farm Mut. Auto. Ins.*, 2011 WL 5563444, *2 (W.D. Mo. Nov. 15, 2011); *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 215 (S.D. Ohio 2011) (same); *Beall v. Tyler Tech., Inc*.,2009 WL 3064689, *2 (E.D.Tex. Sept.23, 2009) (same).

the use of Docusign for electronic signatures, which "meets or exceeds national and international security standards, including strict security policies and practices that set the standard for world-class information security," uses a "multi-faceted verification of signing events" to ensure the authenticity of signers, and "provides unique features for non-repudiation, including digital audit trail and chain of custody."  *See* https://trust.docusign.com/trust (last accessed Aug. 26, 2013). Accordingly, the Spill Workers request notice by email and regular mail as well as permission to use Docusign.  An amended order is attached.

V.      **Conclusion.**

For the foregoing reasons, Prejean respectfully requests this Court conditionally certify this case as a collective action; order Defendant to produce a computer-readable data file containing all Potential Opt-In Plaintiffs' names, last-known mailing addresses, last-known email addresses, last-known telephone numbers, Social Security numbers, work locations, and dates of employment; and authorize the issuance of Prejean's proposed notice with the attached consent-to-join form to all Potential Opt-In Plaintiffs.  Prejean requests an opt-in period of sixty days.

Date: 8/26/2013

Respectfully submitted,

**BRUCKNER BURCH PLLC**

/s/ David I. Moulton
By: _____
David I. Moulton
Texas State Bar No. 24051093
8 Greenway Plaza, Suite 1500
Houston, Texas  77046
(713) 877-8788 - Telephone
(713) 877-8065 - Facsimile
dmoulton@brucknerburch.com