1        UNITED STATES DISTRICT COURT

2       THE EASTERN DISTRICT OF LOUISIANA

3            AT NEW ORLEANS

4

5    IN RE:  OIL SPILL BY THE OIL RIG      *   10-MDL-2179 "J"
              *DEEPWATER HORIZON* IN THE    *   August 23, 2013
6             GULF OF MEXICO ON            *   9:30 a.m.
              APRIL 20, 2010               *
7                                          *   Proceedings held
                                           *    Telephonically
8    Applies to:   All Cases              *
     *************************************

9

10

11

12             WORKING GROUP CONFERENCE

13        BEFORE THE HONORABLE SALLY SHUSHAN

14          UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20    SUSAN A. ZIELIE, RPR, FCRR
      Official Court Reporter
21    HB 406
      500 Poydras Street
22    New Orleans, Louisiana 70130
      susan_zielie@laed.uscourts.gov
23    504.589.7781

24

25    Proceedings Recorded by Computer-aided Stenography Transcription
      Software.

```
 1   APPEARANCES (Telephonically):

 2


 3   For the Plaintiffs:          IRPINO LAW FIRM
                                  BY:  ANTHONY IRPINO, ESQ.
 4                                One Canal Place
                                  365 Canal Street
 5                                Suite 2990
                                  New Orleans LA 70130

 6
     For the Plaintiffs:          LEVIN PAPANTONIO THOMAS MITCHELL
 7                                  RAFFERTY & PROCTOR
                                  BY:  BRIAN H. BARR, ESQ.
 8                                316 South Baylen Street
                                  Suite 600
 9                                Pensacola FL 32502

10   For the Federal             ENVIRONMENTAL ENFORCEMENT SCT.
     Government Interests:        US DEPARTMENT OF JUSTICE
11                                BY:   STEVE O'ROURKE, ESQ.
                                        ERICA PENCAK, ESQ.
12                                PO Box 7611
                                  Washington DC 20044

13
                                  US DEPARTMENT OF JUSTICE
14                                BY:  SARAH D. HEMMELHOCK, ESQ.
                                  450 Golden Gate Avenue
15                                Room 7-5395
                                  San Francisco CA 94102

16
     For the State Interests:

17
             Alabama              ATTORNEY GENERAL OF ALABAMA
18                                BY:  WINFIELD SINCLAIR, ESQ.    09:56:1
                                  501 Washington Avenue
19                                Montgomery, AL 36130

20   For the Defendant:          KIRKLAND & ELLIS, LLP
                                  MARK J. NOMELLINI, ESQ.
21                                300 N. Lasalle
                                  Chicago, IL 60654

22
     For the Defendant:          KIRKLAND & ELLIS, LLP
23                                BY:  ROBERT R. GASAWAY, ESQ.
                                        JOSEPH A. EISERT, ESQ.
24                                655 Fifteenth Street NW
                                  Washington DC 20005

25
```

1    **APPEARANCES:**

2    **For the Defendant:**              **KIRKLAND & ELLIS, LLP**
                                         **BY:  PETER BARTOSZEK, ESQ.**
3                                        **Suite 6600**
                                         **Chicago Il 60606-6473**
4
      **For the Defendant:**             **GODWIN RONQUILLO, PC**
5                                        **BY:  R. ALAN YORK, ESQ.**
                                         **1331 Lamar**
6                                        **Suite 1665**
                                         **Houston TX 770101**
7
      **For the Defendant:**             **BINGHAM MCCUTCHEN, LLP**
8                                        **BY:  WARREN A. FITCH, ESQ.**
                                         **    KY KIRBY, ESQ.**
9                                        **2020 K Street NW**
                                         **Washington DC 20006**
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

NEW ORLEANS, LOUISIANA; FRIDAY, AUGUST 23, 2013

TELEPHONE CONFERENCE

AGENDA

**NON-PHASE TWO MATTERS**

1.  Michoud Matters                                    5

2.  NOAA Information                                    6

3.  Notice of Metadata Loss in EPA Region 6            6

**PHASE TWO PREPARATION**

1.  Exhibits - Categories Two and Four                 6

2.  Reliance Exhibit Lists                             43

3.  Rulings on Motions in Limine                       44

4.  Order on Presentation of Evidence                  48

5.  Witness List                                       39

6.  Seating Charts                                     48

7.  Timeline                                           39

```
 1              NEW ORLEANS, LOUISIANA; FRIDAY, AUGUST 23, 2013
 2                             9:30 A.M.
 3         THE COURT:  Good morning, everybody.              09:30:4
 4              Hey, Sarah, you got your pajamas on?         09:30:4
 5         MS. HEMMELHOCH:  I don't, but I do have blue jeans on.  09:30:4
 6         THE COURT:  Let's get started; but, because we're by  09:30:5
 7   phone, if you all will please make sure to say who is speaking  09:30:5
 8   before you speak so that we can get a record of it, that would  09:30:5
 9   be very helpful.                                       09:31:0
10              Okay, so let's get going.  Anything to report,  09:31:0
11   Rob, relative to Michoud?                              09:31:1
12         MR. GASAWAY:  Good morning, Your Honor.  This is Rob  09:31:1
13   Gasaway for BP.                                        09:31:1
14         THE COURT:  Good morning, Rob.                    09:31:1
15         MR. GASAWAY:  Good morning.                       09:31:2
16              There's been good progress.  It seems like the  09:31:2
17   previous correspondence helpfully moved the ball forward.  I  09:31:2
18   understand there was a reach-out yesterday to my office just for  09:31:3
19   some confirmation about Captain Englebert's official status with  09:31:3
20   the Court as special master, and we sent an order over that.  So  09:31:4
21   there's activity.  I think that they now believe us, that we're  09:31:4
22   doing this on behalf of the government and not BP.  And so, stay  09:31:4
23   tuned, but things are looking positive.                09:31:5
24         THE COURT:  Good.  Thank you.                     09:31:5
25              Sarah, anything with regard to copies of the NOAA  09:31:5
```

1    data?

2         MS. HEMMELHOCH:  The disc went awry at UPS.  They still

3    can't tell us where it is.  So NOAA has resent it to me, and I

4    have every expectation I will get it tomorrow, because we're

5    using a different carrier.  And, as soon as I get it, we will

6    get it out the door.

7         THE COURT:  Sarah, was it earthquake-related?

8         MS. HEMMELHOCH:  This time, I can't blame Mother

9    Nature.  It seems to be a human problem with UPS.  I don't know

10   quite how they lost it, but they did.

11        THE COURT:  There you go.

12             Speaking of losses, has everyone seen Sarah's

13   communication with regard to the loss of data for EPA Region No.

14   6, and is everybody satisfied with Sarah's explanation?

15             (No response.)

16        THE COURT:  Sarah, the silence sounds good to me.

17        MS. HEMMELHOCH:  It does to me as well.  Thank you,

18   Your Honor.

19        THE COURT:  You're welcome.

20             All right.  Now let's get into what I think is the

21   big thing we have to try to work through today, and that is the

22   exhibit issues.

23             Who would like to update us on the work that you

24   all have accomplished this week?  Let's start with Category No.

25   2, and then we'll move to Category No. 3.

09:32:0
09:32:0
09:32:0
09:32:1
09:32:1
09:32:1
09:32:2
09:32:2
09:32:2
09:32:3
09:32:3
09:32:3
09:32:3
09:32:4
09:32:4
09:32:5
09:32:5
09:32:5
09:32:5
09:32:5
09:33:0
09:33:0
09:33:1
09:33:1
09:33:2

 1          MS. PENCAK:  This is Erica Pencak for the United

 2  States.

 3               Good morning, Your Honor.  How are you?

 4          THE COURT:  Good morning.  I'm fine, Erica.  How about

 5  you?

 6          MS. PENCAK:  I'm fine.

 7               I wish I could report a little more progress on

 8  Category 2.  I feel like we may have taken a bit of a step back

 9  on Category 2.

10               We had understood from our discussions at last

11  week's working group conference and also from the order that was

12  circulated afterwards that Category 2 exhibits will come in to

13  evidence at the final marshalling conference.  That's what I'm

14  reading from your order from last week's conference.

15               We did receive some documents from BP which we

16  thought were sort of asking to be included on the Category 2

17  list.  Some of those had been not objected to.  And the United

18  States agrees that, like the 34 unobjected-to documents that we

19  have submitted, that those belong on the Category 2 list, that

20  will then come in to evidence at the final marshalling

21  conference.

22               BP also submitted some documents for the lists

23  that currently had objections to them, and we responded with a

24  proposed sort of timeline for taking care of these documents

25  where a party believes they belong in Category 2 but they're

 1    currently objected to.  So we put together a schedule for a sort     09:34:4

 2    of objection reconsideration process so that we could send each     09:34:4

 3    other lists of documents where we'd like the parties to     09:34:5

 4    reconsider objections so we can decide whether or not, again, a     09:34:5

 5    limited reasonable number of exhibits then become Category 2 by     09:35:0

 6    virtue of the removal of the objection or if then they get kind     09:35:0

 7    of shuffled into Category 4.  Which I think we all really will     09:35:0

 8    have to come up with a procedure for those later.     09:35:1

 9              But, in response to that email about a proposal     09:35:1

10    for dealing with these objections and reconsiderations, we     09:35:2

11    received feedback from BP that they did not think that there     09:35:2

12    really was, I believe, a Category 2 list of exhibits that should     09:35:3

13    come in at the final marshalling conference; and, rather, that     09:35:3

14    the parties need to reach agreements on those documents.     09:35:3

15              We're at a little bit of a loss as to what there     09:35:4

16    is to agree to for these unobjected-to documents.  We thought we     09:35:4

17    had kind of reached sort of agreement at last week's working     09:35:5

18    group conference that limited numbers of unobjected-to     09:35:5

19    documents, that we circulate lists of, so the other parties can     09:36:0

20    confirm they're unobjected to and will come in at the final     09:36:0

21    marshalling conference if the parties believe at that time     09:36:0

22    they're still needed.     09:36:1

23              Now, clearly, if the document get used with a     09:36:1

24    witness, it won't come in at that time; it would come in with     09:36:1

25    the witness.  Or, if the parties realize:  Hey, we don't     09:36:1

1    actually need this, we're not going to submit them.                    09:36:1

2              But we thought we had reached agreement on this              09:36:2

3    process for Category 2 documents, that they do come in at the          09:36:2

4    final marshalling conference.  And it doesn't seem like BP             09:36:3

5    agrees with that.                                                      09:36:3

6         THE COURT:  Okay.  Well, that is an update.  It's not a           09:36:3

7    good update, but it's an update.                                       09:36:4

8              So let's hear from BP.  Who is going to give us              09:36:4

9    the rebuttal on that?                                                  09:36:4

10        MR. BARTOSZEK:  Good morning, Your Honor.  Peter                  09:36:5

11   Bartoszek for BP.                                                      09:36:5

12        THE COURT:  How are you doing, Peter?                             09:36:5

13        MR. BARTOSZEK:  I'm doing well.  Thank you.                       09:37:0

14             Let me say, we appreciate working with Erica and            09:37:0

15   the parties on this.  We don't think that we're stepping back         09:37:0

16   from the idea of Category 2.  I think our understanding of the        09:37:0

17   process is a little bit different, and we think our                    09:37:1

18   understanding of the process is in line about what the Court had      09:37:1

19   in mind.                                                              09:37:2

20             The key here is that the list for Category 2 is             09:37:2

21   supposed to be an agreed list of admissible exhibits.  That          09:37:2

22   would imply that there needs to be agreement on that list.  And,     09:37:3

23   when we sent our response to Erica's proposal, we weren't            09:37:3

24   rebutting the concept of the Category 2, but we were simply          09:37:4

25   stating that we had not fully agreed on the inclusion of those       09:37:4

```
 1   exhibits on the final Category 2 list.                        09:37:5

 2              And the reason for that is that we -- our position  09:37:5

 3   is, the work that we should be focusing on now before trial and 09:37:5

 4   in the coming weeks and during trial is taking a look at      09:38:0

 5   documents, removing the objections, working through those     09:38:0

 6   objections and working through the list to make sure that the 09:38:1

 7   list only includes the documents that are necessary.  And that 09:38:1

 8   would include going through the portion of trial to determine 09:38:1

 9   what documents really are necessary on this list.             09:38:2

10              The fact that the Court ruled last week that the   09:38:2

11   exhibits aren't admitted until the final marshalling conference 09:38:3

12   means that it's really -- it's not necessary to develop this  09:38:3

13   list and have an ironclad list and stick to it before trial even 09:38:4

14   begins, especially if these documents may be removed or maybe 09:38:4

15   they won't be needed at trial, et cetera.                     09:38:5

16              So what we see this process proceeding as, is      09:38:5

17   having the parties continue to work together, continue to remove 09:38:5

18   exhibits -- excuse me -- remove objections; and, as we approach 09:39:0

19   the final marshalling conference, coming to an agreement on the 09:39:0

20   agreed lists of admissible Category 2 exhibits.               09:39:1

21         THE COURT:  Okay.  So --                                09:39:1

22         MR. IRPINO:  Your Honor, this is Anthony Irpino for the 09:39:1

23   PSC.  I just wanted to add some comments, because we've all been 09:39:2

24   working through this throughout the weeks.                     09:39:2

25              I think one of the most important things that we   09:39:2
```

1    need from the Court, based on what is clearly a misunderstanding          09:39:2

2    between the parties as to what these Category 2 exhibits are              09:39:3

3    supposed to represent -- the issue is, I think BP sees that they          09:39:3

4    have to agree that these exhibits come in.  The USA and the              09:39:4

5    aligned parties always saw this as that agreement was through             09:39:5

6    the objection process and that's what the agreed-to part really          09:39:5

7    meant.  If BP wanted to submit a joint exhibit and call it their         09:39:5

8    own as well, that was fine.  But we view this as the objection           09:40:0

9    process that we entered into through the first six months of             09:40:1

10   this year was the time to figure out when those exhibits would           09:40:1

11   or would not have been objected to.  And that this process is            09:40:2

12   for the parties, whether it be BP or the aligned parties, to             09:40:2

13   narrow down what they foresee as exhibits that they're going to          09:40:3

14   want to use, or at least reference, in terms of post-trial               09:40:3

15   briefing or so forth, and to get them in in a way that doesn't           09:40:3

16   have to take up the Court's time and can be done outside of a            09:40:4

17   witness.                                                                 09:40:4

18             The important part here is knowing whether or not              09:40:4

19   these can come in.  And I think, if we leave this issue                  09:40:5

20   unresolved, then the parties will get to the end; and, if an             09:40:5

21   exhibit is not objected to, there's still the possibility it             09:41:0

22   won't come in at the end at the final marshalling conference             09:41:0

23   because some party didn't agree that it should come in.  So it           09:41:1

24   leaves to the very end what's essentially a second objection             09:41:1

25   round.  And I don't think that's what's being contemplated here.         09:41:2

1    And it certainly is counterproductive from the standpoint of the

2    parties being able to know in advance whether or not they can

3    get an exhibit in.

4              So I think this is an issue that needs to be

5    resolved on the front-end so we know whether or not these

6    Category 2 exhibits can, in fact, come in.  I think you can

7    always cut back, and I think all the parties right now are

8    trying to limit the number of Category 2 exhibits.  Not just

9    throw in hundreds of exhibits that weren't objected to, but

10   really limit that down, and then we know those can come in at

11   the final marshalling conference.  But an exhibit may be used at

12   trial; and, if there is an objection, I guess, can be raised or

13   a party may decide prior to the final marshalling conference

14   that the exhibit is not, in fact, needed.

15             But I think a lot of work -- I can speak on our

16   end -- a lot of work has been done to try to narrow this list

17   down of what would be in that Category 2 and try to figure out a

18   very narrow set of documents that can come in at the final

19   marshalling conference.  And I think we do need to know on the

20   front-end whether or not that's the case or whether or not

21   there's going to be a second round of objections to

22   unobjected-to exhibits.

23        MS. KIRBY:  This is Ky Kirby for Anadarko.  May I state

24   Anadarko's position?

25             THE COURT:  Sure.

1          MS. KIRBY:  We, like BP, understood that, with respect       09:42:4

2   to what are being called Category 2 documents, that there would     09:42:5

3   have to be agreement.  There was never an agreement made upfront     09:42:5

4   that documents would be admitted automatically without a witness    09:42:5

5   if there was no objection.  It was understood, as was the case      09:43:0

6   in throughout this whole case, that there would be foundational     09:43:0

7   objections reserved, possibly authentication.  It was all to be     09:43:1

8   actuated to see whether or not there was proper foundational and    09:43:1

9   explanatory testimony by a witness or in a deposition.              09:43:2

10          The rules have changed in this case.  The parties           09:43:2

11   have been limited to a certain number of depositions, the          09:43:3

12   parties have chosen what depositions they want.  And, in this      09:43:3

13   case, obviously these 30 some exhibits now have become             09:43:4

14   effectively orphan exhibits.                                       09:43:4

15          I do not believe that it would be appropriate to            09:43:5

16   automatically deem them admissible, because they are in some       09:43:5

17   cases out of context.  There was testimony by, for instance, a     09:43:5

18   deponent who explained in a couple of cases:  I'll give you        09:44:0

19   their, Anadarko's, documents that are called, quote, post-drill    09:44:0

20   documents, where some numerical values were used, and Anadarko     09:44:1

21   explains in its deposition, well, we didn't -- we did not have     09:44:1

22   access to the actual measured values so these are just values      09:44:2

23   that were estimated or taken from months before, even though       09:44:2

24   this is a post-drill document.  But I can't tell that by looking   09:44:3

25   at the document.  It comes from the associated deposition          09:44:3

1   testimony.  So, when you disconnect the document from the

2   associated deposition testimony, it becomes capable of

3   misinterpretation, which is one of my great concerns.

4           MR. NOMILLINI:  Your Honor, it's Mark Nomillini.

5           I think that we're a little bit of -- there's

6   conflating of two issues here.  The work that we are doing and

7   that we should be doing now is trying to clear out objections.

8   We sent around a list on that for the parties to look at and I

9   think we have a meeting scheduled in New Orleans where we're

10  going to actually roll up our sleeves, September 5th, if I'm not

11  mistaken, and go through objections and try to clear them out.

12  I think that's being conflated with the process of offering and

13  admitting exhibits.

14          There was arguments made by people a couple weeks

15  ago that there should be exhibits that were agreed to and

16  admitted at the beginning, and I think that the Court's order

17  that was -- of the trial -- the Court's order that was just

18  entered reflects that that Category 2 admission process will

19  have to -- will occur at the end of the trial.

20          So what we can be doing now, since that will

21  happen at the end of the trial, is clearing out the objections.

22          Apparently, what's being argued by some others is

23  that, well, the Court did order that the admission occur at the

24  end of the trial.  But BP and Anadarko and others:  We want you

25  to agree now, whatever the volume is, whatever the documents

 1    are, we want you to agree now.  And then what are we were going

 2    to do with that agreement?  We're going to sit on it, because

 3    they're not going to be admitted until the end of trial, we're

 4    going to sit on that agreement for however long a period it is

 5    until the end of trial, and then we'll admit them.

 6            And, frankly, that doesn't make sense, Your Honor.

 7    What we should be doing now is working on the objections.  We'll

 8    have more and more context as we move through the trial.  And

 9    then we'll be able to agree closer to the end of trial, just as

10    we were in Phase One, as to what should come in.

11            I don't see any good reason to stop that process

12    now, to say the agreement has to be now, when we don't have the

13    context for what is occurring during the trial, what's getting

14    admitted through witnesses.  And I really think that that

15    context is going to alleviate fear of what may or may not come

16    in to evidence and will help us be very reasonable in terms of

17    the numbers that we're going to be saddling Judge Barbier with.

18            So I the Court's order gives us a lot of

19    perspective for the framework.  It's going to happen at the end

20    of trial, so the agreement should be timed to that.  And, in the

21    meantime, we should be continuing to work on withdrawing

22    objections.

23            MS. HEMMELHOCH:  Your Honor, this is Sarah Hemmelhoch.

24    I want to respond to all three of the defendants' arguments on a

25    couple of points.

1    First of all, this is -- Mr. Nomillini has

2  referred to others.  This is really a divide between all of the

3  plaintiffs and all of the defendants.  In other words, BP and

4  Anadarko want one thing, and the aligned parties and the United

5  States want something different.  So to pretend that there's

6  some division within the presenting parties or the parties that

7  BP has argued has the burden of proof is not accurate.

8    With respect to Ms. Kirby's concern that the

9  documents will be coming in without context, that is the point

10  of reaching agreement on the list of Category 2 exhibits before

11  trial.  So that, if a party feels there is a need to provide

12  context for one of the documents that they've provided no

13  objection to during the objection process, they can provide that

14  context during the trial.

15    But the context at this trial is more clear than

16  any other trial I've done in my 21 years because we know who the

17  experts are, we know who the will-call fact witnesses are, we

18  know what depositions are coming in in bundles, we know what the

19  issues are to be tried.  There's very little context that we

20  need in order to identify what are the critical exhibits that,

21  given the new ground rules that were sprung on us at a very late

22  time, mean in terms of exhibits.  We need to get a reasonable

23  number of exhibits in.

24    And I think the undertone of BP's argument is that

25  somehow the United States has not been reasonable in its choice

09:48:4
09:48:5
09:48:5
09:48:5
09:49:0
09:49:0
09:49:1
09:49:1
09:49:1
09:49:2
09:49:2
09:49:3
09:49:3
09:49:4
09:49:4
09:49:4
09:49:5
09:49:5
09:49:5
09:50:0
09:50:0
09:50:1
09:50:1
09:50:2
09:50:2

1    of exhibits.  But I challenge that, given the hundreds that were

2    unobjected to, and the fact that we went through those and found

3    34 that were unobjected to, that are clearly relevant and that

4    we think at this point should be on that list that comes in

5    subject to it being already used at trial so it doesn't need to

6    come in or subject to a party realizing it's not necessary to

7    put in to evidence at the end of the trial.  There's no reason

8    to put off that.

9              That being said, the implication that somehow

10   we're postponing the removal of objections is also inaccurate

11   because Ms. Pencak's proposal included a schedule for beginning

12   to go work our way through the objected-to exhibits.  We agree,

13   that work needs to be done, too.  We just think both sets of

14   work, Category 2 and Category 4, need to be addressed at the

15   same time.

16             THE COURT:  Okay.  So let me ask this question.  This

17   week, am I correct that you all have exchanged your preliminary

18   Category 2 lists?

19             MS. PENCAK:  Your Honor, the United States has

20   exchanged the preliminary list of unobjected to.

21             BP exchanged a list of documents, a few were

22   unobjected to, some of which were objected to.

23             I don't believe we've exchanged lists from other

24   parties.  I think there were a little bit of hiccups with some

25   of the inData bundling spreadsheets.

1     And so, in the proposal that I had sent around, I
2   had proposed that parties make sure to circulate their lists by
3   the end of the day Monday to kind of take in to account that
4   hiccup with inData.
5     THE COURT:  Okay.  Because we'll know at that point
6   what the universe of documents for Category 2 are.
7     So, for example -- and let's work through it -- BP
8   provided a list, some of which are unobjected to and some of
9   which are objected to; is that correct?
10     MS. PENCAK:  That's correct, Your Honor.
11     And, in the proposal that I had sent around, in
12   addition to suggesting that the parties exchange all of their
13   lists on Monday, I believe that the dates for reconsidering
14   objections that I proposed was 8/29, next Thursday.
15     THE COURT:  Okay.
16     MS. PENCAK:  So, by next Thursday, the parties could
17   respond to each other with respect to the reconsideration list
18   exhibits; that is, those that are currently objected to.
19     THE COURT:  Okay.  So, when you exchange your lists --
20   and let's use BP only as an example -- BP put out a list of
21   unobjected-to exhibits, which I assume it agrees will go in to
22   Category 2 preliminarily, and the objected-to exhibits will go
23   in to Category 4 preliminarily.
24     MR. NOMILLINI:  No, Your Honor.  Actually, with respect
25   to the objected-to exhibits, I think the whole point -- first of

09:52:0
09:52:0
09:52:0
09:52:1
09:52:1
09:52:1
09:52:2
09:52:2
09:52:3
09:52:3
09:52:3
09:52:4
09:52:4
09:52:5
09:52:5
09:52:5
09:52:5
09:53:0
09:53:0
09:53:1
09:53:1
09:53:2
09:53:3
09:53:3
09:53:4

1   all, I think all but two were objected to.  I think there are

2   only two that are unobjected to.

3          Our goal is to sit down with the parties and get

4   these objections resolved so that, when we reach the time when

5   we offer the Category 2 documents, which is at the end of trial

6   per the Court's order, we can include those.  We would like to

7   get objections removed, and all but two of our documents are

8   objected to.

9          THE COURT:  Right.

10         So let's talk about that.  How many documents,

11  Mark, were on your list?

12         MR. NOMILLINI:  Peter, was it nine total?

13         MR. BARTOSZEK:  That's right, Mark, I think it's nine.

14         THE COURT:  That sounds real good.

15         And the reason I'm using preliminarily, because I

16  agree with you, Mark, the goal is, for the seven that are

17  objected to, you want to work through the objections this week

18  and see if they can't be removed.

19         And, if they can be removed, all nine documents

20  would go in to Category 2.

21         And, if some of these can't be removed, then they

22  would be Category 4 documents; correct?

23         MR. NOMILLINI:  That is correct, Your Honor.

24         But subject to the parties' agreement.  That is,

25  it's not our view that, regardless of the number of

1  unobjected-to documents the parties are offering, if somebody

2  later on proposes additional unobjected-to documents, they are

3  all automatically part of the agreed Category 2 documents.

4          We think that, to decide on the number and to make

5  that agreement, we need the context of the trial and seeing what

6  comes in.

7          In terms of withdrawing the objections, we don't

8  need to wait.

9          THE COURT:  No.  I agree with that.  I think

10  everybody's on the same page.  I don't think the US or the

11  aligned parties disagree with that.

12          And I think they intend to work through the

13  objections this coming week.

14          Is that correct, Anthony?

15          MR. IRPINO:  Yes.  We do envision -- Anthony Irpino for

16  the PSC -- we do envision over the coming week and thereafter

17  continuing to work through objections, including the seven

18  documents that BP submitted which currently have objections.

19          THE COURT:  Okay.  And give me an idea, Anthony, of how

20  long your proposed Category 2 list is going to be.

21          MR. IRPINO:  For the first two installments, based on

22  the numbers we've seen, it would be in the range of what the

23  United States submitted.

24          THE COURT:  Okay.  So, look, it seems to me, guys, that

25  everybody agrees, the objections need to be worked through and

1    you all are all going to continue to work through those

2    objections.

3              And the disagreement we have is whether the

4    consolidated list of non-objected-to exhibits automatically come

5    in, or whether we have a final meet-and-confer before the final

6    marshalling conference and people can argue about whether there

7    was proper context or not.

8              MR. IRPINO:  That's what I'm hearing, Your Honor.  And

9    that's why I'm saying I think that needs to be resolved on the

10   front-end.

11             THE COURT:  That's right.

12             MR. IRPINO:  Because the way I view it is -- I'm sorry,

13   Your Honor, you were speaking.

14             THE COURT:  No, no.  Go ahead.

15             MR. IRPINO:  The way I view it is, we can't leave to

16   the end of trial whether or not an exhibit comes in to evidence

17   up to the other parties need to agree to it, the adverse parties

18   need to agree to the exhibit.  That's absurd.

19             In my mind, the six months of work we've put in to

20   making sure that exhibits were either objected to or not,

21   whether it be hearsay, foundation, whatever, was why we did

22   this.  And that's why we're going through the process now of not

23   saying:  Here's 600 exhibits that you didn't object to, we want

24   them all in.  But, rather, we pared this back to blank and these

25   are the ones we care about, there's no objections.  What's there

1    to discuss at this point?                                    09:58:4

2             MR. NOMILLINI:  With all due respect to my very good  09:58:4

3    friend Anthony --                                            09:58:5

4             MR. IRPINO:  I hate when anyone starts off a sentence:  09:58:5

5    With all due respect.                                        09:58:5

6             MR. NOMILLINI:  Nobody's going to be at the mercy of  09:59:0

7    just a party.  There's a judge who is going to make these    09:59:0

8    decisions.  And, if somebody objects or objects unreasonably,  09:59:0

9    you know, that information can be made known to the decision  09:59:1

10   maker, who is the judge.                                     09:59:2

11             What we're saying is that, you know, at the         09:59:2

12   beginning of trial, everybody's nervous, everybody's worried  09:59:2

13   about are they going to get all their documents in, and lawyers  09:59:3

14   are extra careful about every single conceivable document    09:59:3

15   relating to every single conceivable thing in to evidence.  And  09:59:3

16   it was my experience in Phase One that, during the trial, people  09:59:4

17   relaxed a little bit and saw this is coming in, that's coming  09:59:4

18   in.  And, having that, knowing what's relevant, having that   09:59:5

19   background, in my view and our view, that that is very relevant  09:59:5

20   to deciding what to present to the Court.  And, if people are  10:00:0

21   unreasonable, at that point then it can be made known.       10:00:0

22             THE COURT:  Well, it seems to me that both sides make  10:00:0

23   good points.                                                 10:00:1

24             I think that the aligned parties and the United     10:00:1

25   States want to have the assurance that, because we have limited  10:00:2

1    the number of deposition bundles and we've put them on a time    10:00:2

2    clock, that they can have the assurance of getting certain    10:00:3

3    exhibits in.    10:00:3

4              And I understand Ki's objection that, for example,    10:00:3

5    the example that she used, that a calculation might be taken out    10:00:4

6    of context because the bundle wasn't admitted.    10:00:4

7              So what I'd like to do is work out an agreement.    10:00:5

8    Maybe we limit it by number whereby the aligned parties and the    10:01:0

9    United States know that they can get a certain number in if    10:01:0

10   they're unobjected to and they are Category 2 documents.  And    10:01:1

11   maybe we can allow BP and Anadarko a certain number of context    10:01:2

12   objections to that number.  And so you all preserve your right    10:01:3

13   to say:  Wait a minute, this shouldn't come in because there's    10:01:3

14   no context for it and they shouldn't be allowed to admit this    10:01:4

15   out of context, it's prejudicial for it to come in under these    10:01:5

16   circumstances.    10:01:5

17             I think that's going to happen.  I think, by the    10:01:5

18   time we get to the final marshalling conference, Mark is    10:02:0

19   correct, everybody's going to know what the evidence was,    10:02:0

20   everybody's going to feel more confident about how the trial    10:02:0

21   went and the fact that everybody got a chance to put their    10:02:1

22   evidence in.  And I think it will probably amount to very    10:02:1

23   little.    10:02:1

24             But what do you all think about that kind of    10:02:1

25   proposal?    10:02:2

1          MR. NOMILLINI:  I think, Your Honor, if -- the idea of

2  Category 2 has always been, and it's in the Court's order,

3  agreements.  That the parties -- there are some documents that

4  are very fundamental, and the parties agree on those specific

5  documents, that, yeah, these are documents that everybody agrees

6  are unobjectionable and part of the core information that should

7  be presented to the Court.

8          And so I think, if we can get agreement on those

9  specific documents, and I agree it should be limited, that that

10  is what is envisioned by the process.

11          MS. PENCAK:  Your Honor, this is Erica Pencak for

12  United States.

13          We'd like a little bit of time to think about it;

14  but, first hearing it, your proposal did make sense to me.

15          MR. FITCH:  Judge, Tony Fitch for Anadarko.

16          In addition to your suggestion that, in a context

17  situation, an objection would be preserved.  Ultimately, at

18  trial, we're not interested in just preserving objections, we're

19  interested in having a record.  So this process may also need --

20  at least, for your consideration at some point -- needs to

21  include adding a brief amount of testimony from a previously

22  undesignated deposition that would provide the context.  So I

23  respectfully ask that you keep open that possibility as well

24  after we get a little bit further down the road here.

25          MS. HEMMELHOCH:  I think that may be part of our

```
 1   conversation about the judge's proposal.                        10:04:1

 2           This is Sarah Hemmelhoch.  Sorry.                        10:04:1

 3       MR. FITCH:  Tony Fitch.                                      10:04:1

 4           I agree with that, Sarah.                                10:04:1

 5       MR. IRPINO:  Your Honor, this is Anthony Irpino for the      10:04:2

 6   PSC.                                                             10:04:2

 7           We'll do the same and consider the proposal, which      10:04:2

 8   certainly has some make-sense benefits.                         10:04:2

 9           One thing I think would be critical is to make it       10:04:2

10   very clear that what the proposal is, is that's solely a context 10:04:3

11   objection, if you will.  And what I'm understanding that to be  10:04:3

12   is that this document doesn't mean what it says.                10:04:4

13       THE COURT:  Well, or the context hasn't been laid.          10:04:4

14           In Ki's example, the context hasn't been laid for       10:04:4

15   this calculation.  So, if the United States wants to use the    10:04:5

16   calculation in the document, Ky presumably would like to have a 10:04:5

17   few pages of the expert's deposition explaining the calculation. 10:05:0

18           Is that correct, Ky?                                    10:05:0

19       MS. KIRBY:  Well, it would actually be a fact               10:05:0

20   deposition, Judge.                                              10:05:1

21       MR. FITCH:  But that is correct, Judge.                     10:05:1

22       MS. KIRBY:  Right.                                          10:05:1

23       MR. NOMILLINI:  Maybe something that will help here is,     10:05:1

24   getting back to the original concept, it was agreeing on limited 10:05:1

25   number of documents that both -- everybody thinks would be      10:05:2
```

```
 1   helpful for Judge Barbier to have.  And I think that, if we have          10:05:2
 2   that concept in mind, that we're not -- they're not advocacy              10:05:3
 3   documents here, they're background documents -- that that might           10:05:3
 4   be helpful to us in advancing the ball.                                   10:05:4
 5              That was the idea behind the agreement, we're                  10:05:4
 6   going for things that we all think Judge Barbier would like to            10:05:4
 7   see a limited number.  And I think that that concept may be               10:05:5
 8   useful as part of this.                                                   10:05:5
 9        MR. IRPINO:  This is Anthony Irpino.  We're taking two               10:06:0
10   steps back here.                                                          10:06:0
11              The whole point of this category is that these                 10:06:0
12   parties, whether it be BP, Anadarko, the aligned parties or the           10:06:1
13   United States, want to get in.  What we're conflating is                  10:06:1
14   agreement with not objected to.  And this is not meant for a              10:06:1
15   second round of objections as to whether or not a party agrees            10:06:2
16   that this is fundamental to the Court or whether the party --             10:06:2
17   it's whether any one party agrees that they want this in.  The            10:06:3
18   agreement part is whether or not there is an objected-to                  10:06:3
19   document, whether or not this document is objected to.                    10:06:3
20              And what I'm hearing is that there's a need for a              10:06:4
21   second round of objections for purposes of context.  Candidly, I          10:06:4
22   think that could be easily covered by a brief.  If it's cited to          10:06:5
23   in a brief for a particular purpose, and it's wrong and it's out          10:06:5
24   of context, then the other party would say it's wrong, it's out           10:07:0
25   of context and put it in the brief.                                       10:07:0
```

1    But I don't want this getting mixed up into

2 thinking that these parties all need to agree that these come

3 in.  I think, Judge Shushan, you said it best at the beginning,

4 where the aligned parties and the United States, because of the

5 limitation on witnesses, on depo bundles, on time, need to know

6 that there's a certain number of documents that they can get in

7 to evidence outside of a witness.

8    MS. KIRBY:  I respectfully disagree.

9    This is Ky Kirby.

10    We discussed in the beginning reserving

11 foundational objections, and now we're talking about admitting

12 exhibits without foundation.  The foundation would have come

13 from the depositions that the aligned parties and the US have

14 chosen not to designate, and now they're flipping the burden to

15 us to try to un-do essentially the out-of-context situation

16 they're creating.  So I don't think it's as simple, with all due

17 respect, Anthony, as you say, and I do think that there is a

18 fairness problem going on right now.

19    MS. HEMMELHOCH:  This is Sarah Hemmelhoch.

20    I just do want to know, when we were discussing

21 foundation issues when we setting up the deposition designation

22 process, it was agreed that the question of foundation for

23 documents was going to be separate from the bundling process and

24 that a party seeking admission of a particular document could

25 rely upon deposition testimony even if it was not part of a

1    deposition bundle, which signifies the agreement of all the

2    parties.  Which was put on the record at a working group

3    conference, that the idea of foundation was separate from the

4    deposition bundling process.

5              If I could suggest that we all now take a step

6    back, look at your proposals, talk to our respective teams,

7    meet-and-confer over the next five days, and report back to you

8    on Friday.  And I hope adhering to the schedule that Erica

9    proposed to start working through objections, I think we can

10   make progress while still having some very fundamental

11   disagreements that we need to work on separately from working

12   our way through individual objections.

13            THE COURT:  Yes, I agree.  And I think that has to

14   happen at the same time.  That's got to be a tandem effort, it

15   seems to me.

16            Look, I understand both sides' problems.  But the

17   point, in my view, of Category 2 was to compile a list of the

18   parties' unobjected-to wish list exhibits that they wanted to

19   come in regardless of whether they were used at trial or whether

20   they -- and because they are not part of the deposition bundles.

21   Right?

22            MR. IRPINO:  This is Anthony Irpino.

23            Correct, Your Honor.  We would not include on this

24   list -- and that's why we got caught up with inData list -- any

25   deposition exhibits that were on the bundles.

```
 1                THE COURT:  Exactly.                              10:10:2

 2                MR. NOMILLINI:  Your Honor -- I interrupted Your Honor, 10:10:2

 3    I apologize.                                                  10:10:3

 4                THE COURT:  That's okay.  Go ahead.               10:10:3

 5                MR. NOMILLINI:  I think that what's occurred here is, 10:10:3

 6    really, what Anthony was talking about, is a fundamental shift. 10:10:3

 7    For weeks now, we've been talking about an agreed list.  And now 10:10:4

 8    I'm hearing the shift be that anything that's unobjected to is 10:10:4

 9    agreed.                                                       10:10:5

10           There are thousands of unobjected-to documents.       10:10:5

11                THE COURT:  Yes, but we're not going to have thousands 10:11:0

12    on our Category 2 list.                                       10:11:0

13                MS. HEMMELHOCH:  Mark, the limiter is, it's the wish 10:11:1

14    list.  It's the unobjected-to and wish list.                 10:11:1

15                MR. NOMILLINI:  That's not what we were thinking about 10:11:1

16    the agreement at all.                                        10:11:1

17                The order is for agreement.  And we think that   10:11:2

18    applies equally to objected-to and unobjected-to documents.  10:11:2

19    Objected-to has very little to do with it, in our view.  It's 10:11:3

20    what at the end of trial the parties will be offering up to the 10:11:3

21    judge.  And we all understand that it's not to be a document 10:11:4

22    dump.  And so, to shift it to unobjected is a very fundamental 10:11:4

23    -- it would be a very fundamental change, in our view.  I don't 10:12:0

24    think that's what the Court has in mind, but I just want to be 10:12:0

25    clear about what our view of the process is.                 10:12:0
```

1      MS. HEMMELHOCH:  Mark, this is Sarah Hemmelhoch.

2           I do think there is not a change from what I

3  proposed the first time around.  If you go back and look at the

4  working group conference, what I referred to were two groups of

5  documents falling in this Category 2, documents that both

6  parties listed or documents that were unobjected to during the

7  process, and we've not changed our proposal.

8           I think that we -- I think there, as you said,

9  lawyers are overcautious.  And I think you're having a

10  tremendous amount of fear about the idea that the United States

11  or the PSC is going to propose thousands of exhibits.  I would

12  have thought the 34 document list we sent you would have been a

13  sign of good faith that we are intending to be quite reasonable

14  in our numbers.  But I think that we're at a point where it

15  makes sense to start working through the objections and talking

16  amongst the parties about what procedure we can do.  Let's look

17  at what Judge Shushan says, proposed to us.  Let's evaluate it

18  amongst our teams, give it some good thought over the weekend

19  and then start talking amongst ourselves on Monday both about

20  removing objections to documents we can remove objections to and

21  what really the Category 2 exhibit list should be.  And then

22  come back to her next week with a fuller conversation having

23  occurred among the parties.

24      MR. NOMILLINI:  I agree with that.  But we should keep

25  moving forward.

1    And I guess my big point is that there's no

2    reason, given that this is going to be offered at the end of

3    trial, there's no reason for the parties to stop working and

4    say:  You have to agree -- we agree now and then we're going to

5    put this aside for the next month and then dust it off.  I think

6    my view is to keep working on it.

7              THE COURT:  Okay.

8              But, in the meantime, what I'd like you to do is

9    share each other's, like the US has, proposed Category 2

10   document list.  So, for example, right now, Mark, BP has a list

11   of two with nine that you're hoping to move in to that -- with

12   seven that you're hoping to move in to it; right?

13             MR. NOMILLINI:  Correct, Judge.

14             THE COURT:  And so I'd like you all to work on those

15   nine this week.  See if you can resolve the objections on the

16   seven and move them in to Category 2.

17             And, likewise, with the aligned parties, I'd like

18   you all to share your list of documents you would like to come

19   in to Category 2.

20             If there are some that are objected to, you all

21   talk about removing those objections and putting them in to

22   Category 2.  If you can't, those are going to be your orphan

23   documents that we're going to have to -- we're going to move

24   into a discussion of the orphan documents in a minute.  But

25   those would be orphan documents if you can't resolve the

```
 1   objections.                                                    10:15:2

 2                Does everybody agree to that?                      10:15:2

 3           MR. IRPINO:  Yes, Your Honor.                           10:15:2

 4                Anthony Irpino for the PSC.                        10:15:2

 5           MS. PENCAK:  Yes, Your Honor.                           10:15:3

 6                Erica Pencak for the US.                           10:15:3

 7           THE COURT:  Okay.  So let's go ahead and exchange the   10:15:3

 8   hoped-for lists on Monday.                                      10:15:3

 9                And, if you want to get me involved midweek, for   10:15:3

10   example, and talk about where you are.  But I do think that we 10:15:4

11   should at least give each other the heads-up on who wants these 10:15:4

12   documents admitted and what the universe is.  It may not be so  10:15:5

13   terrible, and I'm hoping it won't be.  I mean, I like the number 10:15:5

14   nine.  That's terrific, BP.                                     10:16:0

15                Now we just have to resolve seven objections.      10:16:0

16           MR. NOMILLINI:  So, Judge, is there a -- it might be    10:16:1

17   helpful to have a deadline for the parties to identify their    10:16:1

18   universe of what they want the Category 2 documents to be.      10:16:1

19           THE COURT:  That's right.  I would like that to happen  10:16:2

20   Monday so you all can spend the week -- you know, no later than 10:16:2

21   Monday.  But if you all could get them out this weekend to each 10:16:2

22   other and star chewing it so you're not so anxious.             10:16:3

23                I mean, I think a lot of this is motivated by      10:16:3

24   anxiety, which I more than understand.  That's not a put down.  10:16:3

25   It's an anxious time right now.  But, if we can look at what the 10:16:4
```

 1   universe is, maybe they'll be some cross-pollination, like we        10:16:4

 2   had cross-pollination on the deposition bundles.  And then we        10:16:5

 3   know what we're talking about.  We can at least take the factor      10:16:5

 4   of unknowns out.                                                     10:17:0

 5             Go ahead, Mark.                                            10:17:0

 6        MR. NOMILLINI:  Yeah.  And I think that will be good,           10:17:0

 7   Your Honor, on Monday.  Because that will give us a sense of         10:17:1

 8   what the overall number that we're talking about is.                10:17:1

 9        THE COURT:  Exactly.                                            10:17:1

10             Do you all want to set a time on Monday so you can         10:17:1

11   get rolling?  What is convenient?  And I don't want to break         10:17:2

12   anybody's neck, but can you do it by 10 a.m. Central Time on         10:17:2

13   Monday?                                                             10:17:2

14        MS. HEMMELHOCH:  Yes, Your Honor.  The US can.                  10:17:3

15        THE COURT:  The US has already done it.                        10:17:3

16        MS. HEMMELHOCH:  Your Honor, there are some objected-to        10:17:3

17   that we would like to include in this process, as BP did.  It's     10:17:4

18   not a significant number.  We can definitely get that out by 10     10:17:4

19   on Monday.                                                          10:17:4

20        MR. BARR:  Your Honor, it's Brian Barr on behalf of the        10:17:4

21   PSC.                                                                10:17:5

22             I would ask that we have to the close of business         10:17:5

23   on Monday, because we have to coordinate with the other parties     10:17:5

24   amongst the aligned parties as well.  It's not just the PSC         10:17:5

25   putting it together.  So it's a little tighter coordination.        10:18:0

1    THE COURT:  Well, I hear you.

2        Why don't you publish for the PSC subject to

3    revision with the aligned parties?  Because of your conferences

4    with the aligned parties?

5        MR. BARR:  Okay.  We can do that.

6        THE COURT:  How's that sound?

7        And, that way, we can get you rolling.  And

8    everybody will understand that you may have to revise.  But at

9    least you've gotten out there what it is the PSC is looking at.

10        MR. BARR:  Okay, Your Honor.

11        THE COURT:  Is that okay?

12        MR. BARR:  We'll make it work.

13        MR. IRPINO:  Thank you, Judge.

14        THE COURT:  You're welcome.

15        MR. BARR:  And, Judge, I don't want to leave the issue.

16    The context objection suggestion by the Court, I presume that's

17    something that we would be able to solve as part of this on the

18    front-end?

19        THE COURT:  Well, I can already hear Mark say no,

20    because he won't know context until toward the end of the trial.

21        Is that correct, Mark?

22        MR. NOMILLINI:  Depends on the document, Judge.  But,

23    for some documents, yes.

24        MR. BARR:  Now, that, I'm not understanding.  Because,

25    if you're saying this document is being submitted out of

1  context -- I mean, either it is or it isn't.  It was used in a                    10:19:2

2  depo.  All of these documents, unless I'm missing something,                      10:19:3

3  were depo exhibits.                                                               10:19:4

4       MR. NOMILLINI:  And, Anthony, for this context                              10:19:4

5  discussion, I think we need context.  I think the judge is                        10:19:4

6  right, I think we have to look at the documents.                                  10:19:4

7       MR. IRPINO:  The judge said you were going to say that.                      10:19:5

8  I just want to make sure --                                                       10:19:5

9       MR. NOMILLINI:  I mean, not during trial.  I mean, look                      10:19:5

10  at them next week.                                                               10:19:5

11       THE COURT:  Then he sounds like he's agreeing with you,                     10:19:5

12  Anthony.                                                                          10:20:0

13       MR. NOMILLINI:  Well, not quite.                                            10:20:0

14       When we look at them, that I think will -- I think                          10:20:0

15  that will support our view that, for some of these, you can't                     10:20:0

16  know until the trial.                                                             10:20:1

17       But I think what it supports, Your Honor, is what                           10:20:1

18  you're saying is let's get the lists circulated and then figure                   10:20:2

19  it out from there.                                                                10:20:2

20       THE COURT:  Look, I'm happy to get with you all say                         10:20:2

21  midweek, once you've had a chance to look at the lists, to see                    10:20:3

22  that they're not as terrible as everybody I think anticipates                     10:20:3

23  they might be, hopefully, and work through which ones you think                   10:20:3

24  might not have proper context.                                                    10:20:4

25       Okay.  So -- let me just think about it for a                               10:20:5

```
 1    second.                                                     10:21:0

 2              (Pause in proceedings.)                           10:21:0

 3         THE COURT:  All right, guys.  I'd like to see the      10:21:2

 4    lists.  And so, if you guys would cc Mike and me as you all send  10:21:3

 5    them out, we'll take a look.  Not that I'm going to know what  10:21:3

 6    these documents are, of course.  Although, maybe I will, who  10:21:3

 7    knows.  And I think we can work through it if -- do you all  10:21:4

 8    think you want to have a midweek conference, or do you want to  10:21:4

 9    keep rolling?                                               10:21:5

10         MR. IRPINO:  Anthony Irpino for the PSC.               10:21:5

11              I think it would be helpful.                      10:21:5

12         MS. PENCAK:  I think so, too.                          10:22:0

13         MR. NOMILLINI:  Judge, this is Mark.                   10:22:0

14              I agree.                                          10:22:0

15         THE COURT:  Then hold on, let me go look at my calender  10:22:0

16    real quick.                                                 10:22:0

17              (Pause in Proceedings.)                           10:22:0

18         THE COURT:  Guys, next Wednesday is pretty busy for me,  10:22:4

19    but I could do it early.  Like, if we could start at 8 or 8:15  10:22:5

20    on Wednesday morning, that would be Central Time, that would  10:22:5

21    give us about an hour, if we need it.  Is that available for you  10:23:0

22    all?                                                        10:23:0

23         MS. HEMMELHOCH:  It works for the United States.       10:23:1

24         MR. IRPINO:  This is Anthony Irpino for the PSI.       10:23:1

25              That works for us.                                10:23:1
```

1     MR. NOMILLINI:  Judge, that works for BP.                10:23:2

2     THE COURT:  Do you want to do 8:15?  Would that give us   10:23:2

3  a little slack?                                              10:23:2

4     MS. HEMMELHOCH:  That sound fines.                        10:23:2

5     THE COURT:  Sorry, I have a big in-person conference      10:23:3

6  starting at 9:30 that's going to take the rest of the morning, 10:23:3

7  and then I have a full rest of the afternoon.                10:23:3

8          Let's get together at 8:15 next Wednesday, and       10:23:3

9  I'll have Marie send out dial information.                   10:23:4

10          Let's move on to documents, category No. 4.         10:23:4

11     MS. HEMMELHOCH:  Your Honor, may I suggest that we have  10:23:5

12  an opportunity to talk to the other parties about orphan before 10:23:5

13  we air our all laundry in front of you?                     10:23:5

14     THE COURT:  Oh, sure.                                    10:24:0

15          The one thing I wanted to comment on, Sarah, is     10:24:0

16  this.  It seems to me that at this point the orphan documents 10:24:0

17  should probably be converted to a limited number of documents 10:24:0

18  where objections remain.  But that's just my thought.  I'm not 10:24:1

19  going to tell you that that's got to be.  But we're at the point 10:24:2

20  now where everybody pretty well knows what the other party is 10:24:2

21  going to present at trial.  We know the witnesses, we know the 10:24:3

22  experts, we know the bundles.  You know, all of that is known. 10:24:3

23  And so I would hope that that makes the orphan exhibits a    10:24:4

24  smaller list and a less contentious list.                   10:24:5

25     MS. HEMMELHOCH:  We hear you, Your Honor.  And we will   10:24:5

1    consider that and discuss that with the parties as we're working                    10:24:5

2    towards our Wednesday call.                                                          10:25:0

3                 THE COURT:  All right.  That sounds good.                               10:25:0

4                   Any other comments on that, guys?                                     10:25:0

5                 MR. NOMILLINI:  Judge, it's Mark.  One clarification.                   10:25:1

6    What time are the lists due on Monday?                                               10:25:1

7                 THE COURT:  I think we said 10 a.m., if possible,                       10:25:1

8    Central Time.                                                                        10:25:1

9                   And the PSC is going to be giving us just the                         10:25:1

10   PSC's list, not the aligned parties' list, because they may need                     10:25:2

11   to modify their list to include something that Alabama wants, et                     10:25:3

12   cetera.  But it should be a good forecast.                                           10:25:3

13                MR. NOMILLINI:  Thank you, Judge.                                       10:25:4

14                THE COURT:  And then obviously, Brian, you know, close                  10:25:4

15   of business on Monday for any amendments.                                            10:25:5

16                MR. BARR:  I think we can work that out, Judge.                         10:25:5

17                THE COURT:  But that would give everybody a really good                 10:25:5

18   look at what everybody's thinking about.                                             10:26:0

19                MR. SINCLAIR:  Your Honor, Winfield Sinclair for                        10:26:0

20   Alabama.                                                                             10:26:0

21                   I'm pretty sure our lists will be consistent with                    10:26:0

22   the PSC's.  Is it all right if we allow the PSC to cover for us?                      10:26:1

23                THE COURT:  You bet.  Makes it much easier, Win.  Thank                 10:26:1

24   you.                                                                                 10:26:2

25                MR. SINCLAIR:  Your Honor, Winfield Sinclair for                        10:26:2

```
 1    Alabama.                                                        10:26:2

 2              Jeffry and Bobo send their regards.  They just        10:26:2

 3    walked into the office.                                         10:26:3

 4            THE COURT:  Oh, for God's sake.                         10:26:3

 5              Jeff, you don't want me to put this on the            10:26:3

 6    transcript; do you?                                             10:26:3

 7            MR. BREIT:  Send me a note then, I'd appreciate it.     10:26:4

 8            THE COURT:  I'll send you an email after the            10:26:4

 9    conference.                                                     10:26:4

10              Hey, Bobo.  How are you doing?                        10:26:4

11            MR. CUNNINGHAM:  Fine, Judge.                           10:26:5

12            THE COURT:  Good, good, good.                           10:26:5

13              Go ahead, Sarah.                                      10:27:0

14            MS. HEMMELHOCH:  There was one issue I wanted to raise  10:27:0

15    on Mr. Eisert's proposal on the trial timeline order.  He had   10:27:1

16    proposed a September 16th date for identification of the        10:27:1

17    witnesses for the first week of the quantification trial.       10:27:1

18            THE COURT:  Right.                                      10:27:2

19            MS. HEMMELHOCH:  And that seemed way out of kilter with 10:27:2

20    how it was done in Phase One, where it was the Wednesday before 10:27:2

21    trial that the witnesses were identified.  And so we would ask  10:27:2

22    that that same rule apply to the quantification phase and we be 10:27:3

23    obligated to identify our first week's witnesses the Wednesday  10:27:3

24    before the beginning of the quantification phase of the trial,  10:27:4

25    segment of the trial.                                           10:27:4
```

1    MR. EISERT:  Your Honor, this is Joe Eisert for BP.        10:27:4

2         We chose that date because it's basically one week        10:27:5

3    after the date for source control, which is September 9th.  So   10:27:5

4    we think that September 16th date is the right date.  The        10:27:5

5    quantification case trial starts one week after the source       10:28:0

6    control trial.  So we're just keying off the date that everybody 10:28:0

7    was fine with for source control.        10:28:0

8         MS. HEMMELHOCH:  Your Honor, it requires us to disclose   10:28:1

9    three weeks before we put on our first witness, and we get        10:28:1

10   notice of BP's witnesses only a week before they put on their   10:28:1

11   first witnesses.  And that does not seem fair and seems like a    10:28:2

12   deviation from Phase One that is unnecessary.        10:28:2

13        THE COURT:  Well, Joe, let me ask you, do you want to   10:28:2

14   move the deadline for BP to identify back so that it happens      10:28:3

15   earlier?        10:28:4

16        MR. EISERT:  Your Honor, let me think about that.        10:28:4

17   Because I hear what Sarah's saying.  I didn't actually see how    10:28:4

18   this was fitting together on the Wednesday practice.  It was      10:28:5

19   just more, we were keying off what worked for source control was  10:28:5

20   going to work for quantification.        10:29:0

21        THE COURT:  Right.        10:29:0

22        MR. EISERT:  Let me talk to them and figure that out   10:29:0

23   and get back to Sarah on that.        10:29:0

24        THE COURT:  That would be great.        10:29:0

25         Otherwise, I looked at it this morning.  Does        10:29:0

1    anybody have any other comments with regard to the timeline?          10:29:1

2              Joe, thank you for taking over it.  Because, I've          10:29:1

3    got to tell you, if I looked at it one more time, I was going to          10:29:2

4    jump off the bridge.          10:29:2

5              Otherwise, I thought it looked good.  Did anybody          10:29:2

6    else have any other comment?          10:29:2

7              (No response.)          10:29:2

8         THE COURT:  Okay, good.          10:29:3

9              So, other than the identification of witness          10:29:3

10   deadlines -- which I'd like you all to see if you can work out.          10:29:3

11   If you can't, drop me a note, I'll look at it.  I'll set dates          10:29:4

12   and that will be that -- we look like we're in pretty good          10:29:4

13   shape, huh?          10:29:5

14             (No response.)          10:29:5

15        THE COURT:  No one wants to comment.  That means yes.          10:29:5

16             All right.  Awfully silent today.  Have we got          10:30:0

17   pretrial gitters?          10:30:0

18        MS. HEMMELHOCH:  We do, Your Honor.          10:30:1

19        THE COURT:  Yes, we do.          10:30:1

20        MS. HEMMELHOCH:  Nineteen minutes before the conference          10:30:1

21   began, we did get BP's Motion to Strike the designation of          10:30:1

22   Dr. Bushnell's deposition.          10:30:2

23        THE COURT:  Yep.          10:30:2

24        MS. HEMMELHOCH:  Do we have to respond, given that, in          10:30:2

25   our view, it's a late motion in limine?          10:30:2

| | | |
|---|---|---|
| 1 | THE COURT:  Oh, I haven't looked at it.  I printed it | 10:30:2 |
| 2 | out, though. | 10:30:3 |
| 3 | That's progress; isn't it? | 10:30:3 |
| 4 | MS. HEMMELHOCH:  It is indeed, Your Honor. | 10:30:3 |
| 5 | THE COURT:  But I haven't looked at it.  So don't worry | 10:30:3 |
| 6 | about it until we look at it. | 10:30:4 |
| 7 | But your position is, Sarah, that it's a late | 10:30:4 |
| 8 | motion? | 10:30:4 |
| 9 | MS. HEMMELHOCH:  Yes, Your Honor.  That it's a motion | 10:30:4 |
| 10 | in limine and that it's late. | 10:30:5 |
| 11 | THE COURT:  Mark? | 10:30:5 |
| 12 | MR. GASAWAY:  No, Your Honor.  This is Rob. | 10:30:5 |
| 13 | Let the record reflect that it's 11:30, there's | 10:30:5 |
| 14 | been a vigorous agreement this whole conference, and I've said | 10:31:0 |
| 15 | nothing.  So I'm going to hop in here. | 10:31:0 |
| 16 | You'll remember that Dr. Bushnell is the person | 10:31:0 |
| 17 | who should have been disclosed on Wednesday, and then we had the | 10:31:0 |
| 18 | email back and forth, and eventually the Court had to order his | 10:31:1 |
| 19 | disclosure Friday morning, by 3:00 o'clock Friday. | 10:31:1 |
| 20 | And you'll also remember that there was a stagger | 10:31:1 |
| 21 | in the deadlines so that we had a week for motions in limine or | 10:31:2 |
| 22 | *Daubert* challenges to experts, depending on when. | 10:31:2 |
| 23 | So this is a week after we learned about | 10:31:3 |
| 24 | Dr. Bushnell.  It's therefore timely. | 10:31:3 |
| 25 | And the only reason it would not have be filed on | 10:31:3 |

| | | |
|---|---|---|
| 1 | Wednesday, which is what appears on the calender, is, over our | 10:31:4 |
| 2 | objection -- and you remember the emails I was peppering you | 10:31:4 |
| 3 | with -- we tried to get him disclosed on Wednesday but were | 10:31:4 |
| 4 | unsuccessful in doing that until Friday. | 10:31:5 |
| 5 | THE COURT:  Yes.  I kept ignoring you. | 10:31:5 |
| 6 | MS. HEMMELHOCH:  And we complied the moment the Court | 10:31:5 |
| 7 | gave us a deadline to provide the information. | 10:32:0 |
| 8 | We continue to believe that it was not required by | 10:32:0 |
| 9 | the Court's order, and BP did not advise us or meet-and-confer | 10:32:0 |
| 10 | with us regarding this.  And we do believe that it's a late | 10:32:0 |
| 11 | motion in limine. | 10:32:1 |
| 12 | We'll wait to hear from you, Your Honor, as to | 10:32:1 |
| 13 | whether we have to actually respond. | 10:32:1 |
| 14 | THE COURT:  Okay, Sarah.  Thanks. | 10:32:1 |
| 15 | And, yes, you did comply immediately.  So thank | 10:32:2 |
| 16 | you. | 10:32:2 |
| 17 | Okay.  Let's move on to your discussions on | 10:32:2 |
| 18 | reliance exhibits.  How did you all do this week? | 10:32:2 |
| 19 | MS. PENCAK:  This is Erica Pencak for the United | 10:32:3 |
| 20 | States, Your Honor. | 10:32:3 |
| 21 | I think the United States and PSC, as do | 10:32:3 |
| 22 | Transocean, State of Alabama and I believe the State of | 10:32:4 |
| 23 | Louisiana, all believe that it's not necessary and it's | 10:32:4 |
| 24 | unnecessarily time-consuming for us to identify on our final | 10:32:4 |
| 25 | exhibit list which exhibits are reliance exhibits.  But BP | 10:32:5 |

1    disagrees.                                                          10:32:5

2          MR. BARTOSZEK:  Your Honor, this is Peter Bartoszek for      10:33:0

3    BP.                                                                 10:33:0

4          Mark, Rob and I had a conversation about it.  If             10:33:0

5    you could give us a little bit of time, I think we may be able      10:33:0

6    work something out on this.  So we'll get back to the parties       10:33:1

7    shortly.                                                            10:33:1

8          THE COURT:  Good, okay.  Thank you.  I appreciate it,        10:33:1

9    Peter.                                                              10:33:1

10         Let's see.  We were going to talk during this week            10:33:2

11   about adding any motions in limine to the list of motions that      10:33:2

12   are applicable to Phase Two which were decided in Phase One.        10:33:3

13   Any that have been agreed to to add to the list?                    10:33:3

14         MR. GASAWAY:  Your Honor, this is Rob.                       10:33:4

15         Here's what we did.  There was not agreement, and            10:33:4

16   I'll tell you why.  I'm not sure that there's disagreement.         10:33:4

17   But, basically, what we got when we circulated the agreement was    10:33:4

18   feedback that said:  Well, in principal, I don't have a problem,    10:33:5

19   but I may have a problem in application.  It's sort of like the     10:33:5

20   mirror image of this exhibit discussion that we've had for the      10:34:0

21   last hour.                                                          10:34:0

22         Let me give an example.  In Phase One, there were            10:34:0

23   a number of government reports that had to do with the causes of    10:34:0

24   the incident, and we got an order from Judge Barbier saying that    10:34:1

25   they would not be admitted in to Phase One.  There are two staff    10:34:1

1    working group papers in Phase Two, one having to do with source

2    control and one having to do with flow rate that were issued by

3    the Spill Commission.  And you might read the order that we got

4    in Phase One as covering them because it covered Spill

5    Commission documents.  But some of the feedback we got from the

6    other parties was just on the order of:  Well, we don't know

7    exactly how broad this would sweep, what documents are you

8    talking about.  And the same thing where we would talk about

9    other propositions that people would likely agree with in the

10   abstract, like experts shouldn't talk about legal conclusions or

11   fact witnesses shouldn't talk about facts that there's no basis

12   for.

13            And so what we tried to do, to prevent any kind of

14   objection of the sort we just heard from the United States on

15   our filing with Bushnell, was just go ahead and get those on

16   file on Monday.  Those motions in limine, unlike the Bushnell

17   motion or some of the other motions, we think may be

18   uncontroversial, and we're certainly willing to meet-and-confer

19   on those motions or talk about specific testimony.  And,

20   internally, we've sort of designated a lead for each of those

21   motions, who is standing by.  But because we didn't want to get

22   cross-wise with any deadlines here, we just -- we went ahead and

23   filed them.  But we would invite further conferences before the

24   responses are due.

25            THE COURT:  Well, that would be good.  And I guess my

10:34:2
10:34:2
10:34:3
10:34:3
10:34:4
10:34:4
10:34:4
10:34:5
10:34:5
10:35:0
10:35:0
10:35:1
10:35:1
10:35:1
10:35:1
10:35:1
10:35:2
10:35:2
10:35:3
10:35:3
10:35:4
10:35:4
10:35:4
10:35:5
10:35:5
10:36:0

 1    thought is -- and, look, I don't want make more work for you         10:36:0

 2    guys; so, if this is a stupid idea, just say so.  But maybe the      10:36:0

 3    thing is to look at what's been filed and say:  I do not             10:36:1

 4    currently have an objection -- this sounds like another context      10:36:2

 5    issue -- this doesn't need to be briefed, the judge's ruling,        10:36:2

 6    rec doc whatever it is, appears to be applicable.  You know, but     10:36:3

 7    look, if it's making too much work, just say so.                     10:36:4

 8              On the other hand, filing opposition briefs sounds         10:36:4

 9    like a lot of work, too.                                             10:36:5

10              MR. BARR:  Your Honor, it does.                            10:36:5

11              It's Brian Barr on behalf of the PSC.                      10:36:5

12              I mean, we are actively working on responses, but          10:37:0

13    I'm happy to have a meet-and-confer to see if there are some         10:37:0

14    issues we can work out.  I mean, we're happy to go through that.     10:37:0

15    But we are working on responses as we speak.                         10:37:1

16              MS. PENCAK:  Your Honor, the same for the United           10:37:1

17    States.  The motion that Rob described is sort of a                  10:37:1

18    have-a-cake-and-eat-it-too.  Because, while they don't want the      10:37:2

19    actual staff reports coming in, they're actually thrilled to         10:37:2

20    have the notes of the staff come in.  And, to us, that's a           10:37:2

21    contradiction.  And we'd be happy to talk with BP about those        10:37:3

22    kinds of contradictions, but we are also preparing responses.        10:37:3

23    So I think continuing a meet-and-confer while we prepare our         10:37:3

24    response to the motion makes a lot of sense.                         10:37:4

25              THE COURT:  Let me also suggest that, if you're            10:37:4

1   preparing responses, that you make it clear in those responses

2   that, theoretically, you have no opposition; however ...  Maybe

3   you could frame it that way.  And you could calm Ben down that

4   way, you see?  Who also has a little pretrial anxiety going on.

5           MS. HEMMELHOCH:  Can't imagine why.

6           THE COURT:  But I understand the caution.  We're all

7   coming down to the wire.  But maybe you can just indicate that,

8   pending something happening at trial, you don't disagree.

9   Something like that.  I don't know.  That's --

10          MS. PENCAK:  We will examine that option, Your Honor.

11          THE COURT:  And they can just hold it in abeyance.  Or

12  they can say:  We adopt the judge's earlier ruling except if

13  something happens at trial -- I don't know.  Everybody's trying

14  to preserve the record, and we know that.

15          All right.  We got the order -- I'm sorry, Sarah,

16  did you have something?

17          MS. HEMMELHOCH:  Well, you mentioned preserve the

18  record.  And I just wanted to make sure that we preserved the

19  record.

20          As I understand it, we have been ordered to put on

21  our rebuttal testimony by our main testifiers at the same time

22  they put on their preliminary testimony.  Since that came in an

23  email, I want to make sure that that is in fact an order of the

24  Court so that we can preserve our record for the record and move

25  on and comply with the Court's order.

```
 1            THE COURT:  Yes.  And, Sarah, if you'll feel better, we          10:39:2

 2    can put out a one-liner.                                                 10:39:3

 3            MS. HEMMELHOCH:  Please do.                                      10:39:3

 4            THE COURT:  No problem.                                          10:39:3

 5            So we've got our order on presentation of the                    10:39:3

 6    evidence out.  So that's a done-deal.                                    10:39:4

 7            MR. O'ROURKE:  Your Honor, may I interrupt?  This is             10:39:4

 8    Steve O'Rourke.                                                          10:39:5

 9            THE COURT:  Oh, God, there's an error already?                   10:39:5

10            MR. O'ROURKE:  No.                                               10:39:5

11            Again, for preserving the record purposes, you                  10:39:5

12    know we have objections to that order.  Some of those were by           10:39:5

13    email or letter.  It's not 100 percent clear they made it into          10:39:5

14    the docket.  So, I don't want any argument here; I just want to         10:40:0

15    say on the record the United States continues to object to              10:40:0

16    certain portions of the order on presentation of evidence,             10:40:0

17    particularly the limitation on the number of depo bundles, the         10:40:1

18    limitation on the number of experts and the use of the                 10:40:1

19    non-testifying experts in reliance via the use of the                  10:40:2

20    depositions.  That's it, thank you.                                    10:40:2

21            THE COURT:  You're welcome.  That was very succinct.          10:40:2

22            MR. O'ROURKE:  I've been practicing.                           10:40:2

23            THE COURT:  All right.  Any objections to Andy's              10:40:3

24    brilliant revised seating charts?                                      10:40:3

25            (No response.)                                                 10:40:3
```

1    THE COURT:  Okay.  Sold to the lowest bidder.                    10:40:4

2          That's all I have for today, guys.  What else do           10:40:4

3    you all have?                                                     10:40:4

4          MR. GASAWAY:  Your Honor, this is Rob.  Can I mention       10:40:4

5    one upcoming date on the calender?  And that would be the 29th,   10:40:5

6    which is the date for parties to exchange stipulations.           10:40:5

7          And, since we're not there in person, I haven't            10:41:0

8    had a chance to pull Brian aside.  But I just wanted to sort of   10:41:0

9    give everybody a heads-up where we're going on that.             10:41:0

10          We do have source control stipulations.  I think         10:41:1

11   we've said that before.  Not quantification stipulations.  So     10:41:1

12   this would be a process that would be between the aligned         10:41:1

13   parties and BP.  And we do have citations to those stipulations.  10:41:2

14   I think those were helpful in the past rounds of discussion.      10:41:2

15   And so we're going to be looking to send those to Brian on the    10:41:2

16   29th, given the fact that people are putting their trial          10:41:3

17   presentations together and putting their exhibit lists together.  10:41:3

18          And, looking at Category 2 and Category 4, we             10:41:4

19   thought it might be a good idea to give everybody a heads-up and  10:41:4

20   start thinking about the process from there.  Some kind of a      10:41:5

21   meet-and-confer or a meeting like what we're having on exhibits,  10:41:5

22   to try to move that forward and see if we are going to get the    10:41:5

23   stipulations or not.                                              10:42:0

24          THE COURT:  Okay.  And these are stipulations that are     10:42:0

25   additional to the ones that we did quite some time ago?           10:42:0

| | | |
|---|---|---|
| 1 | MR. GASAWAY:  Right. | 10:42:0 |
| 2 | THE COURT:  Gotcha.  Okay. | 10:42:1 |
| 3 | MR. GASAWAY:  Of the same type but additional to.  And | 10:42:1 |
| 4 | also concerning source control, not quantification. | 10:42:1 |
| 5 | THE COURT:  No.  I'm with you.  You made that clear. | 10:42:1 |
| 6 | MR. GASAWAY:  Okay. | 10:42:2 |
| 7 | THE COURT:  All right.  What else? | 10:42:2 |
| 8 | MS. HEMMELHOCH:  You'll be pleased to know I have | 10:42:2 |
| 9 | nothing else, Your Honor. | 10:42:2 |
| 10 | THE COURT:  Sarah. | 10:42:3 |
| 11 | MR. IRPINO:  Your Honor, this is Anthony Irpino for the | 10:42:3 |
| 12 | PSC. | 10:42:3 |
| 13 | We have a date floating out there for our final | 10:42:3 |
| 14 | meet-and-confer relative to exhibits.  This doesn't change | 10:42:4 |
| 15 | anything about next week.  But the date that we have out there | 10:42:4 |
| 16 | that's proposed is September 5th. | 10:42:4 |
| 17 | THE COURT:  Yes. | 10:42:4 |
| 18 | MR. IRPINO:  I don't think we've heard any objection | 10:42:4 |
| 19 | from anybody.  If there is, please, please, let us know. | 10:42:5 |
| 20 | Because, otherwise, let's get it all penciled in for the | 10:42:5 |
| 21 | meet-and-confer in person in New Orleans. | 10:43:0 |
| 22 | THE COURT:  Where is that going to be and what time, | 10:43:0 |
| 23 | Anthony, so everybody knows. | 10:43:0 |
| 24 | MR. IRPINO:  The PSC will make our offices available | 10:43:0 |
| 25 | here.  And I thought we could begin at 9:30. | 10:43:0 |

1    THE COURT:  Okay.  Good.                                    10:43:1

2         Anybody have trouble with that?                        10:43:1

3    MS. PENCAK:  That works for the United States.              10:43:2

4         And thanks, Anthony, for getting that firmed up so     10:43:2

5    we can make our travel arrangements.                        10:43:2

6    THE COURT:  Exactly.                                        10:43:2

7         What else?                                             10:43:2

8    MR. YORK:  Your Honor, this is Alan York for                10:43:2

9    Halliburton.  I'm challenging my inner-Steve O'Rourke right now.  10:43:3

10        The aligned parties and Halliburton have also, in      10:43:3

11   lead-up the issuance of the trial presentation order, reserved  10:43:4

12   objections to the process, et cetera.  And, since the US made a  10:43:4

13   statement on the record, I just want to be clear -- I'm speaking  10:43:4

14   specifically for Halliburton but I think for the aligned parties  10:43:5

15   -- that we still reserve those objections as well.          10:43:5

16   THE COURT:  Okay.  And you adopt O'Rourke's objection       10:43:5

17   on their behalf?                                            10:44:0

18   MR. YORK:  Well, what we had done is included in some       10:44:0

19   correspondence for the Court that we were reserving our     10:44:0

20   objections to the procedure in general and reserving the right  10:44:0

21   to make any necessary offers of proof.  And so we would just  10:44:0

22   reiterate that for the record.                             10:44:1

23   THE COURT:  Okay.  Good.                                    10:44:1

24   MR. YORK:  Thank you, Your Honor.                           10:44:1

25   THE COURT:  Anybody else?                                   10:44:1

1    Because, if not, the only thing I need is for,

2  Joe, for you to think about those identification of witnesses

3  prior to the commencement of trial, and then we can go ahead and

4  enter the timeline as a done-deal.  No Rush.  But I would like,

5  some time early next week, to go ahead and get that out so Judge

6  Barbier quits bugging me.

7    MR. EISERT:  Understood, Your Honor.

8    THE COURT:  No one besides me thought that was funny.

9    MS. HEMMELHOCH:  We were all out of view but we were

10  laughing.

11    THE COURT:  Boy, we are a sorry group of people today;

12  aren't we?

13    Well, hopefully, we'll have more fun on Wednesday

14  and Friday of next week; okay?

15    MS. HEMMELHOCH:  We'll try to do so, Your Honor.

16    THE COURT:  All right, guys.  Thank you.  Have a good

17  weekend.

18    (10:45 a.m., proceedings concluded.)

19

20    **CERTIFICATE**

21

22    I, Susan A. Zielie, Official Court Reporter, do hereby
   certify that the foregoing transcript is correct.

23

24

25    /S/ SUSAN A. ZIELIE, FCRR
   _____
       Susan A. Zielie, FCRR

## /

**/S** [1] - 52:24

## 1

**1** [2] - 4:6, 4:11
**10** [3] - 33:12, 33:18, 38:7
**10-MD-2179-CJB-SS** [1] - 1:5
**100** [1] - 48:13
**10:45** [1] - 52:18
**11:30** [1] - 42:13
**1331** [1] - 3:5
**1665** [1] - 3:6
**16th** [1] - 39:16, 40:4

## 2

**2** [44] - 4:7, 4:12, 6:25, 7:8, 7:9, 7:12, 7:16, 7:19, 7:25, 8:5, 8:12, 9:3, 9:16, 9:20, 9:24, 10:1, 10:20, 11:2, 12:6, 12:8, 12:17, 13:2, 14:18, 16:10, 17:14, 17:18, 18:6, 18:22, 19:5, 19:20, 20:3, 20:20, 23:10, 24:2, 28:17, 29:12, 30:5, 30:21, 31:9, 31:16, 31:19, 31:22, 32:18, 49:18
**20** [1] - 1:6
**20005** [1] - 2:24
**20006** [1] - 3:9
**20044** [1] - 2:12
**2010** [1] - 1:6
**2013** [3] - 1:5, 4:1, 5:1
**2020** [1] - 3:9
**21** [1] - 16:16
**23** [3] - 1:5, 4:1, 5:1
**2990** [1] - 2:5
**29th** [2] - 49:5, 49:16

## 3

**3** [3] - 4:8, 4:13, 6:25
**30** [1] - 13:13
**300** [1] - 2:21
**316** [1] - 2:8
**32502** [1] - 2:9
**34** [3] - 7:18, 17:3, 30:12
**36130** [1] - 2:19
**365** [1] - 2:4
**39** [2] - 4:15, 4:17
**3:00** [1] - 42:19

## 4

**4** [7] - 4:14, 8:7, 17:14, 18:23, 19:22, 37:10, 49:18
**406** [1] - 1:21
**43** [1] - 4:12
**44** [1] - 4:13
**450** [1] - 2:14
**48** [2] - 4:14, 4:16

## 5

**5** [2] - 4:6, 4:15
**500** [1] - 1:21
**501** [1] - 2:18
**504.589.7781** [1] - 1:23
**5th** [2] - 14:10, 50:16

## 6

**6** [6] - 4:7, 4:8, 4:11, 4:16, 6:14
**600** [2] - 2:8, 21:23
**60606-6473** [1] - 3:3
**60654** [1] - 2:21
**655** [1] - 2:24
**6600** [1] - 3:3

## 7

**7** [1] - 4:17
**7-5395** [1] - 2:15
**70130** [2] - 1:22, 2:5
**7611** [1] - 2:12
**770101** [1] - 3:6

## 8

**8** [1] - 36:19
**8/29** [1] - 18:14
**8:15** [3] - 36:19, 37:2, 37:8

## 9

**94102** [1] - 2:15
**9:30** [4] - 1:6, 5:2, 37:6, 50:25
**9th** [1] - 40:3

## A

**A.M** [1] - 5:2
**a.m** [4] - 1:6, 33:12, 38:7, 52:18
**abeyance** [1] - 47:11
**able** [4] - 12:2, 15:9, 34:17, 44:5

**abstract** [1] - 45:10
**absurd** [1] - 21:18
**access** [1] - 13:22
**accomplished** [1] - 6:24
**account** [1] - 18:3
**accurate** [1] - 16:7
**actively** [1] - 46:12
**activity** [1] - 5:21
**actual** [2] - 13:22, 46:19
**actuated** [1] - 13:8
**add** [2] - 10:23, 44:13
**adding** [2] - 24:21, 44:11
**addition** [2] - 18:12, 24:16
**additional** [3] - 20:2, 49:25, 50:3
**addressed** [1] - 17:14
**adhering** [1] - 28:8
**admissible** [2] - 9:21, 10:20, 13:16
**admission** [3] - 14:18, 14:23, 27:24
**admit** [2] - 15:5, 23:14
**admitted** [8] - 10:11, 13:4, 14:16, 15:3, 15:14, 23:6, 32:12, 44:25
**admitting** [2] - 14:13, 27:11
**adopt** [2] - 47:12, 51:16
**advance** [1] - 12:2
**advancing** [1] - 26:4
**adverse** [1] - 21:17
**advise** [1] - 43:9
**advocacy** [1] - 26:2
**afternoon** [1] - 37:7
**afterwards** [1] - 7:12
**AGENDA** [1] - 4:3
**ago** [2] - 14:15, 49:25
**agree** [22] - 8:16, 11:4, 11:23, 14:25, 15:1, 15:9, 17:12, 19:16, 20:9, 21:17, 21:18, 24:4, 24:9, 25:4, 27:2, 28:13, 30:24, 31:4, 32:2, 36:14, 45:9
**agreed** [10] - 9:21, 9:25, 10:20, 11:6, 14:15, 20:3, 27:22, 29:7, 29:9, 44:13
**agreed-to** [1] - 11:6
**agreeing** [2] - 25:24, 35:11
**agreement** [25] - 8:17, 9:2, 9:22, 10:19,

11:5, 13:3, 15:2, 15:4, 15:12, 15:20, 16:10, 19:24, 20:5, 23:7, 24:8, 26:5, 26:14, 26:18, 28:1, 29:16, 29:17, 42:14, 44:15, 44:17
**agreements** [2] - 8:14, 24:3
**agrees** [7] - 7:18, 9:5, 18:21, 20:25, 24:5, 26:15, 26:17
**ahead** [9] - 21:14, 29:4, 32:7, 33:5, 39:13, 45:15, 45:22, 52:3, 52:5
**aided** [1] - 1:25
**air** [1] - 37:13
**AL** [1] - 2:19
**Alabama** [4] - 38:11, 38:20, 39:1, 43:22
**alabama** [1] - 2:17
**ALABAMA** [1] - 2:17
**Alan** [1] - 51:8
**ALAN** [1] - 3:5
**aligned** [17] - 11:5, 11:12, 16:4, 20:11, 22:24, 23:8, 26:12, 27:4, 27:13, 31:17, 33:24, 34:3, 34:4, 38:10, 49:12, 51:10, 51:14
**alleviate** [1] - 15:15
**allow** [2] - 23:11, 38:22
**allowed** [1] - 23:14
**amendments** [1] - 38:15
**amount** [3] - 23:22, 24:21, 30:10
**Anadarko** [7] - 12:23, 13:20, 14:24, 16:4, 23:11, 24:15, 26:12
**Anadarko's** [2] - 12:24, 13:19
**Andy's** [1] - 48:23
**ANTHONY** [1] - 2:3
**Anthony** [18] - 10:22, 20:14, 20:15, 20:19, 22:3, 25:5, 26:9, 27:17, 28:22, 29:6, 32:4, 35:4, 35:12, 36:10, 36:24, 50:11, 50:23, 51:4
**anticipates** [1] - 35:22
**anxiety** [1] - 32:24, 47:4
**anxious** [2] - 32:22, 32:25
**apologize** [1] - 29:3

**APPEARANCES** [2] - 2:1, 3:1
**applicable** [2] - 44:12, 46:6
**application** [1] - 44:19
**applies** [2] - 1:8, 29:18
**apply** [1] - 39:22
**appreciate** [3] - 9:14, 39:7, 44:8
**approach** [1] - 10:18
**appropriate** [1] - 13:15
**APRIL** [1] - 1:6
**argue** [1] - 21:6
**argued** [2] - 14:22, 16:7
**argument** [2] - 16:24, 48:14
**arguments** [2] - 14:14, 15:24
**arrangements** [1] - 51:5
**aside** [2] - 31:5, 49:8
**associated** [2] - 13:25, 14:2
**assume** [1] - 18:21
**assurance** [2] - 22:25, 23:2
**AT** [1] - 1:3
**ATTORNEY** [1] - 2:17
**August** [1] - 1:5
**AUGUST** [2] - 4:1, 5:1
**authentication** [1] - 13:7
**automatically** [4] - 13:4, 13:16, 20:3, 21:4
**available** [2] - 36:21, 50:24
**Avenue** [2] - 2:14, 2:18
**awfully** [1] - 41:16
**awry** [1] - 6:2

## B

**background** [2] - 22:19, 26:3
**ball** [2] - 5:17, 26:4
**Barbier** [5] - 15:17, 26:1, 26:6, 44:24, 52:6
**Barr** [2] - 33:20, 46:11
**BARR** [9] - 2:7, 33:20, 34:5, 34:10, 34:12, 34:15, 34:24, 38:16, 46:10
**Bartoszek** [2] - 9:11, 44:2
**BARTOSZEK** [5] - 3:2,

9:10, 9:13, 19:13,
44:2
**based** [2] - 11:1, 20:21
**basis** [1] - 45:11
**Baylen** [1] - 2:8
**become** [2] - 8:5,
13:13
**becomes** [1] - 14:2
**BEFORE** [1] - 1:13
**began** [1] - 41:21
**begin** [1] - 50:25
**beginning** [6] - 14:16,
17:11, 22:12, 27:3,
27:10, 39:24
**begins** [1] - 10:14
**behalf** [4] - 5:22,
33:20, 46:11, 51:17
**behind** [1] - 26:5
**believes** [1] - 7:25
**belong** [2] - 7:19, 7:25
**Ben** [1] - 47:3
**benefits** [1] - 25:8
**best** [1] - 27:3
**bet** [1] - 38:23
**better** [1] - 48:1
**between** [3] - 11:2,
16:2, 49:12
**bidder** [1] - 49:1
**big** [3] - 6:21, 31:1,
37:5
**BINGHAM** [1] - 3:7
**bit** [9] - 7:8, 8:15, 9:17,
14:5, 17:24, 22:17,
24:13, 24:24, 44:5
**blame** [1] - 6:8
**blank** [1] - 21:24
**blue** [1] - 5:5
**Bobo** [2] - 39:2, 39:10
**Box** [1] - 2:12
**boy** [1] - 52:11
**BP** [33] - 5:13, 5:22,
7:15, 7:22, 8:11, 9:4,
9:8, 9:11, 11:3, 11:7,
11:12, 13:1, 14:24,
16:3, 16:7, 17:21,
18:7, 18:20, 20:18,
23:11, 26:12, 31:10,
32:14, 33:17, 37:1,
40:1, 40:14, 43:9,
43:25, 44:3, 46:21,
49:13
**BP's** [3] - 16:24,
40:10, 41:21
**break** [1] - 33:11
**BREIT** [1] - 39:7
**BRIAN** [1] - 2:7
**Brian** [5] - 33:20,
38:14, 46:11, 49:8,
49:15
**bridge** [1] - 41:4

**brief** [4] - 24:21,
26:22, 26:23, 26:25
**briefed** [1] - 46:5
**briefing** [1] - 11:15
**briefs** [1] - 46:8
**brilliant** [1] - 48:24
**broad** [1] - 45:7
**bugging** [1] - 52:6
**bundle** [2] - 23:6, 28:1
**bundles** [8] - 16:18,
23:1, 27:5, 28:20,
28:25, 33:2, 37:22,
48:17
**bundling** [3] - 17:25,
27:23, 28:4
**burden** [2] - 16:7,
27:14
**Bushnell** [4] - 42:16,
42:24, 45:15, 45:16
**Bushnell's** [1] - 41:22
**business** [2] - 33:22,
38:15
**busy** [1] - 36:18
**BY** [9] - 1:5, 2:3, 2:7,
2:11, 2:14, 2:18,
2:23, 3:2, 3:8

## C

**CA** [1] - 2:15
**cake** [1] - 46:18
**calculation** [4] - 23:5,
25:15, 25:16, 25:17
**calender** [3] - 36:15,
43:1, 49:5
**calm** [1] - 47:3
**Canal** [2] - 2:4, 2:4
**candidly** [1] - 26:21
**capable** [1] - 14:2
**Captain** [1] - 5:19
**care** [2] - 7:24, 21:25
**careful** [1] - 22:14
**carrier** [1] - 6:25
**case** [6] - 12:20, 13:5,
13:6, 13:10, 13:13,
40:5
**Cases** [1] - 1:8
**cases** [2] - 13:17,
13:18
**Categories** [1] - 4:11
**Category** [48] - 6:24,
6:25, 7:8, 7:9, 7:12,
7:16, 7:19, 7:25, 8:5,
8:7, 8:12, 9:3, 9:16,
9:20, 9:24, 10:1,
10:20, 11:2, 12:6,
12:8, 12:17, 13:2,
14:18, 16:10, 17:14,
17:18, 18:6, 18:22,
18:23, 19:5, 19:20,

19:22, 20:3, 20:20,
23:10, 24:2, 28:17,
29:12, 30:5, 30:21,
31:9, 31:16, 31:19,
31:22, 32:18, 49:18
**category** [2] - 26:11,
37:10
**caught** [1] - 28:24
**causes** [1] - 44:23
**caution** [1] - 47:6
**cc** [1] - 36:4
**Central** [3] - 33:12,
36:20, 38:8
**certain** [6] - 13:11,
23:2, 23:9, 23:11,
27:6, 48:16
**certainly** [3] - 12:1,
25:8, 45:18
**CERTIFICATE** [1] -
52:20
**certify** [1] - 52:22
**cetera** [3] - 10:15,
38:12, 51:12
**challenge** [1] - 17:1
**challenges** [1] - 42:22
**challenging** [1] - 51:9
**chance** [3] - 23:21,
35:21, 49:8
**change** [3] - 29:23,
30:2, 50:14
**changed** [2] - 13:10,
30:7
**Charts** [1] - 4:16
**charts** [1] - 48:24
**chewing** [1] - 32:22
**Chicago** [2] - 2:21, 3:3
**choice** [1] - 16:25
**chose** [1] - 40:2
**chosen** [2] - 13:12,
27:14
**circulate** [2] - 8:19,
18:2
**circulated** [3] - 7:12,
35:18, 44:17
**circumstances** [1] -
23:16
**citations** [1] - 49:13
**cited** [1] - 26:22
**clarification** [1] - 38:5
**clear** [9] - 14:7, 14:11,
16:15, 25:10, 29:25,
47:1, 48:13, 50:5,
51:13
**clearing** [1] - 14:21
**clearly** [3] - 8:23, 11:1,
17:3
**clock** [1] - 23:2
**close** [2] - 33:22,
38:14
**closer** [1] - 15:9

**coming** [10] - 10:4,
10:19, 16:9, 16:18,
20:13, 20:16, 22:17,
46:19, 47:7
**commencement** [1] -
52:3
**comment** [3] - 37:15,
41:6, 41:15
**comments** [5] - 10:23,
38:4, 41:1
**Commission** [2] -
45:3, 45:5
**communication** [1] -
6:13
**compile** [1] - 28:17
**complied** [1] - 43:8
**comply** [2] - 43:15,
47:25
**Computer** [1] - 1:25
**Computer-aided** [1] -
1:25
**conceivable** [2] -
22:14, 22:15
**concept** [4] - 9:24,
25:24, 26:2, 26:7
**concern** [1] - 16:8
**concerning** [1] - 50:4
**concerns** [1] - 14:3
**concluded** [1] - 52:18
**conclusions** [1] -
45:10
**confer** [9] - 21:5, 28:7,
43:9, 45:18, 46:13,
46:23, 49:21, 50:14,
50:21
**CONFERENCE** [1] -
1:12, 4:2
**conference** [23] -
7:11, 7:13, 7:14,
7:21, 8:13, 8:18,
8:21, 9:4, 10:11,
10:19, 11:22, 12:11,
12:13, 12:19, 21:6,
23:18, 28:3, 30:4,
36:8, 37:5, 39:9,
41:20, 42:14
**conferences** [2] -
34:3, 45:23
**confident** [1] - 23:20
**confirm** [1] - 8:20
**confirmation** [1] -
5:19
**conflated** [1] - 14:12
**conflating** [2] - 14:6,
26:13
**consider** [2] - 25:7,
38:1
**consideration** [1] -
24:20
**consistent** [1] - 38:21

**consolidated** [1] -
21:4
**consuming** [1] - 43:24
**contemplated** [1] -
11:25
**contentious** [1] -
37:24
**context** [31] - 13:17,
15:8, 15:13, 15:15,
16:9, 16:12, 16:14,
16:15, 16:19, 20:5,
21:7, 23:6, 23:11,
23:14, 23:15, 24:16,
24:22, 25:10, 25:13,
25:14, 26:21, 26:24,
26:25, 27:15, 34:16,
34:20, 35:1, 35:4,
35:5, 35:24, 46:4
**continue** [4] - 10:17,
21:1, 43:8
**continues** [1] - 48:15
**continuing** [3] - 15:21,
20:17, 46:23
**contradiction** [1] -
46:21
**contradictions** [1] -
46:22
**control** [7] - 40:3,
40:6, 40:7, 40:19,
45:2, 49:10, 50:4
**convenient** [1] - 33:11
**conversation** [3] -
25:1, 30:22, 44:4
**converted** [1] - 37:17
**coordinate** [1] - 33:23
**coordination** [1] -
33:25
**copies** [1] - 5:25
**core** [1] - 24:6
**correct** [13] - 17:17,
18:9, 18:10, 19:22,
19:23, 20:14, 23:19,
25:18, 25:21, 28:23,
31:13, 34:21, 52:22
**correspondence** [2] -
5:17, 51:19
**counterproductive** [1]
- 12:1
**couple** [3] - 13:18,
14:14, 15:25
**course** [1] - 36:6
**COURT** [97] - 1:1, 5:3,
5:6, 5:14, 5:24, 6:7,
6:11, 6:16, 6:19, 7:4,
9:6, 9:12, 10:21,
12:25, 17:16, 18:5,
18:15, 18:19, 19:9,
19:14, 20:9, 20:19,
20:24, 21:11, 21:14,
22:22, 25:13, 28:13,

29:1, 29:4, 29:11,
31:7, 31:14, 32:7,
32:19, 33:9, 33:15,
34:1, 34:6, 34:11,
34:14, 34:19, 35:11,
35:20, 36:3, 36:15,
36:18, 37:2, 37:5,
37:14, 38:3, 38:7,
38:14, 38:17, 38:23,
39:4, 39:8, 39:12,
39:18, 40:13, 40:21,
40:24, 41:8, 41:15,
41:19, 41:23, 42:1,
42:5, 42:11, 43:5,
43:14, 44:8, 45:25,
46:25, 47:6, 47:11,
48:1, 48:4, 48:9,
48:21, 48:23, 49:1,
49:24, 50:2, 50:5,
50:7, 50:10, 50:17,
50:22, 51:1, 51:6,
51:16, 51:23, 51:25,
52:8, 52:11, 52:16
**Court** [16] - 1:20, 5:20,
9:18, 10:10, 11:1,
14:23, 22:20, 24:7,
26:16, 29:24, 34:16,
42:18, 43:6, 47:24,
51:19, 52:21
**Court's** [8] - 11:16,
14:16, 14:17, 15:18,
19:6, 24:2, 43:9,
47:25
**cover** [1] - 38:22
**covered** [2] - 26:22,
45:4
**covering** [1] - 45:4
**creating** [1] - 27:16
**critical** [2] - 16:20,
25:9
**cross** [3] - 33:1, 33:2,
45:22
**cross-pollination** [2] -
33:1, 33:2
**cross-wise** [1] - 45:22
**CUNNINGHAM** [1] -
39:11
**cut** [1] - 12:7

# D

**data** [2] - 6:1, 6:13
**date** [10] - 39:16, 40:2,
40:3, 40:4, 40:6,
49:5, 49:6, 50:13,
50:15
**dates** [2] - 18:13,
41:11
**Daubert** [1] - 42:22
**days** [1] - 28:7

**DC** [3] - 2:12, 2:24, 3:9
**deadline** [3] - 32:17,
40:14, 43:7
**deadlines** [3] - 41:10,
42:21, 45:22
**deal** [2] - 48:6, 52:4
**dealing** [1] - 8:10
**decide** [3] - 8:4, 12:13,
20:4
**decided** [1] - 44:12
**deciding** [1] - 22:20
**decision** [1] - 22:9
**decisions** [1] - 22:8
**deem** [1] - 13:16
**DEEPWATER** [1] - 1:5
**Defendant** [5] - 2:20,
2:22, 3:2, 3:4, 3:7
**defendants** [1] - 16:3
**defendants'** [1] -
15:24
**definitely** [1] - 33:18
**DEPARTMENT** [2] -
2:10, 2:13
**depo** [4] - 27:5, 35:2,
35:3, 48:17
**deponent** [1] - 13:18
**deposition** [16] - 13:9,
13:21, 13:25, 14:2,
23:1, 24:22, 25:17,
25:20, 27:21, 27:25,
28:1, 28:4, 28:20,
28:25, 33:2, 41:22
**depositions** [5] -
5:11, 13:12, 16:18,
27:13, 48:20
**described** [1] - 46:17
**designate** [1] - 27:14
**designated** [1] - 45:20
**designation** [2] -
27:21, 41:21
**determine** [1] - 10:8
**develop** [1] - 10:12
**deviation** [1] - 40:12
**dial** [1] - 37:9
**different** [3] - 6:5,
9:17, 16:5
**disagree** [3] - 20:11,
27:8, 47:8
**disagreement** [2] -
21:3, 44:16
**disagreements** [1] -
28:11
**disagrees** [1] - 44:1
**disc** [1] - 6:2
**disclose** [1] - 40:8
**disclosed** [2] - 42:17,
43:3
**disclosure** [1] - 42:19
**disconnect** [1] - 14:1
**discuss** [2] - 22:1,

38:1
**discussed** [1] - 27:10
**discussing** [1] - 27:20
**discussion** [4] -
31:24, 35:5, 44:20,
49:14
**discussions** [2] -
7:10, 43:17
**DISTRICT** [2] - 1:1, 1:2
**divide** [1] - 16:2
**division** [1] - 16:6
**doc** [1] - 46:6
**docket** [1] - 48:14
**document** [15] - 8:23,
13:24, 13:25, 14:1,
22:14, 25:12, 25:16,
26:19, 27:24, 29:21,
30:12, 31:10, 34:22,
34:25
**documents** [64] -
7:15, 7:18, 7:22,
7:24, 8:3, 8:14, 8:16,
8:19, 9:3, 10:5, 10:7,
10:9, 10:14, 12:18,
13:2, 13:4, 13:19,
13:20, 14:25, 16:9,
16:12, 17:21, 18:6,
19:5, 19:7, 19:10,
19:19, 19:22, 20:1,
20:2, 20:3, 20:18,
22:13, 23:10, 24:3,
24:5, 24:9, 25:25,
26:3, 27:6, 27:23,
29:10, 29:18, 30:5,
30:6, 30:20, 31:18,
31:23, 31:24, 31:25,
32:12, 32:18, 34:23,
35:2, 35:6, 36:6,
37:10, 37:16, 37:17,
45:5, 45:7
**done** [9] - 11:16,
12:16, 16:16, 17:13,
33:15, 39:20, 48:6,
51:18, 52:4
**done-deal** [2] - 48:6,
52:4
**door** [1] - 6:6
**down** [8] - 11:13,
12:10, 12:17, 19:3,
24:24, 32:24, 47:3,
47:7
**Dr** [3] - 41:22, 42:16,
42:24
**drill** [2] - 13:19, 13:24
**drop** [1] - 41:17
**due** [5] - 22:2, 22:5,
27:16, 38:6, 45:24
**dump** [1] - 29:22
**during** [8] - 10:4,
15:13, 16:13, 16:14,

22:16, 30:6, 35:9,
44:10
**dust** [1] - 31:5

# E

**early** [2] - 36:19, 52:5
**earthquake** [1] - 6:7
**earthquake-related**
[1] - 6:7
**easier** [1] - 38:23
**easily** [1] - 26:22
**EASTERN** [1] - 1:2
**eat** [1] - 46:18
**effectively** [1] - 13:14
**effort** [1] - 28:14
**Eisert** [1] - 40:1
**EISERT** [5] - 2:23,
40:1, 40:16, 40:22,
52:7
**Eisert's** [1] - 39:15
**either** [2] - 21:20, 35:1
**ELLIS** [3] - 2:20, 2:22,
3:2
**email** [5] - 8:9, 39:8,
42:18, 47:23, 48:13
**emails** [1] - 43:2
**end** [22] - 11:20,
11:22, 11:24, 12:5,
12:16, 12:20, 14:19,
14:21, 14:24, 15:3,
15:5, 15:9, 15:19,
17:7, 18:3, 19:5,
21:10, 21:16, 29:20,
31:2, 34:18, 34:20
**ENFORCEMENT** [1] -
2:10
**Englebert's** [1] - 5:19
**enter** [1] - 52:4
**entered** [2] - 11:9,
14:18
**ENVIRONMENTAL** [1]
- 2:10
**envision** [2] - 20:15,
20:16
**envisioned** [1] - 24:10
**EPA** [2] - 4:8, 6:13
**equally** [1] - 29:18
**Erica** [7] - 7:1, 7:4,
9:14, 24:11, 28:8,
32:6, 43:19
**ERICA** [1] - 2:11
**Erica's** [1] - 9:23
**error** [1] - 48:9
**especially** [1] - 10:14
**ESQ** [13] - 2:3, 2:7,
2:11, 2:11, 2:14,
2:18, 2:20, 2:23,
2:23, 3:2, 3:5, 3:8,
3:8

**essentially** [2] - 11:24,
27:15
**estimated** [1] - 13:23
**et** [3] - 10:15, 38:11,
51:12
**evaluate** [1] - 30:17
**eventually** [1] - 42:18
**Evidence** [1] - 4:14
**evidence** [11] - 7:13,
7:20, 15:16, 17:7,
21:16, 22:15, 23:19,
23:22, 27:7, 48:6,
48:16
**exactly** [4] - 29:1,
33:9, 45:7, 51:6
**examine** [1] - 47:10
**example** [8] - 18:7,
18:20, 23:4, 23:5,
25:14, 31:10, 32:10,
44:22
**except** [1] - 47:12
**exchange** [4] - 18:12,
18:19, 32:7, 49:6
**exchanged** [4] -
17:17, 17:20, 17:21,
17:23
**excuse** [1] - 10:18
**exhibit** [12] - 6:22,
11:7, 11:21, 12:3,
12:11, 12:14, 21:16,
21:18, 30:21, 43:25,
44:20, 49:17
**Exhibit** [1] - 4:12
**exhibits** [45] - 7:12,
8:5, 8:12, 9:21, 10:1,
10:11, 10:18, 10:20,
11:2, 11:4, 11:10,
11:13, 12:6, 12:8,
12:9, 12:22, 13:13,
13:14, 14:13, 14:15,
16:10, 16:20, 16:22,
16:23, 17:1, 17:12,
18:18, 18:21, 18:22,
18:25, 21:4, 21:20,
21:23, 23:3, 27:12,
28:18, 28:25, 30:11,
35:3, 37:23, 43:18,
43:25, 49:21, 50:14
**Exhibits** [1] - 4:11
**expectation** [1] - 6:4
**experience** [1] - 22:16
**expert's** [1] - 25:17
**experts** [6] - 16:17,
37:22, 42:22, 45:10,
48:18, 48:19
**explained** [1] - 13:18
**explaining** [1] - 25:17
**explains** [1] - 13:21
**explanation** [1] - 6:14
**explanatory** [1] - 13:9

**extra** [1] - 22:14

# F

**fact** [10] - 10:10, 12:6, 12:14, 16:17, 17:2, 23:21, 25:19, 45:11, 47:23, 49:16
**factor** [1] - 33:3
**facts** [1] - 45:11
**fair** [1] - 40:11
**fairness** [1] - 27:18
**faith** [1] - 30:13
**falling** [1] - 30:5
**FCRR** [3] - 1:20, 52:24, 52:25
**fear** [2] - 15:15, 30:10
**Federal** [1] - 2:10
**feedback** [3] - 8:11, 44:18, 45:5
**few** [2] - 17:21, 25:17
**Fifteenth** [1] - 2:24
**figure** [4] - 11:10, 12:17, 35:18, 40:22
**file** [1] - 45:16
**filed** [3] - 42:25, 45:23, 46:3
**filing** [2] - 45:15, 46:8
**final** [17] - 7:13, 7:20, 8:13, 8:20, 9:4, 10:1, 10:11, 10:19, 11:22, 12:11, 12:13, 12:18, 21:5, 23:18, 43:24, 50:13
**fine** [5] - 7:4, 7:6, 11:8, 39:11, 40:7
**fines** [1] - 37:4
**FIRM** [1] - 2:3
**firmed** [1] - 51:4
**first** [10] - 11:9, 16:1, 18:25, 20:21, 24:14, 30:3, 39:17, 39:23, 40:9, 40:11
**FITCH** [4] - 3:8, 24:15, 25:3, 25:21
**Fitch** [2] - 24:15, 25:3
**fitting** [1] - 40:18
**five** [1] - 28:7
**FL** [1] - 2:9
**flipping** [1] - 27:14
**floating** [1] - 50:13
**flow** [1] - 45:2
**focusing** [1] - 43:24
**forecast** [1] - 38:12
**foregoing** [1] - 52:22
**foresee** [1] - 11:13
**forth** [2] - 11:15, 42:18
**forward** [3] - 5:17, 30:25, 49:22
**foundation** [6] -

21:21, 27:12, 27:21, 27:22, 28:3
**foundational** [3] - 13:6, 13:8, 27:11
**Four** [1] - 4:11
**frame** [1] - 47:3
**framework** [1] - 15:19
**Francisco** [1] - 2:15
**frankly** [1] - 15:6
**Friday** [5] - 28:8, 42:19, 43:4, 52:14
**FRIDAY** [2] - 4:1, 5:1
**friend** [1] - 22:3
**front** [5] - 12:5, 12:20, 21:10, 34:18, 37:13
**front-end** [4] - 12:5, 12:20, 21:10, 34:18
**full** [1] - 37:7
**fuller** [1] - 30:22
**fully** [1] - 9:25
**fun** [1] - 52:13
**fundamental** [6] - 24:4, 26:16, 28:10, 29:6, 29:22, 29:23
**funny** [1] - 52:8

# G

**Gasaway** [1] - 5:13
**GASAWAY** [9] - 2:23, 5:12, 5:15, 42:12, 44:14, 49:4, 50:1, 50:3, 50:6
**Gate** [1] - 2:14
**general** [1] - 51:20
**GENERAL** [1] - 2:17
**gitters** [1] - 41:17
**given** [5] - 16:21, 17:1, 31:2, 41:24, 49:16
**goal** [2] - 19:3, 19:16
**God** [1] - 48:9
**God's** [1] - 39:4
**GODWIN** [1] - 3:4
**Golden** [1] - 2:14
**gotcha** [1] - 50:2
**government** [2] - 5:22, 44:23
**Government** [1] - 2:10
**great** [2] - 14:3, 40:24
**ground** [1] - 16:21
**group** [6] - 7:11, 8:18, 28:2, 30:4, 45:1, 52:11
**GROUP** [1] - 1:12
**groups** [1] - 30:4
**guess** [3] - 12:12, 31:1, 45:25
**gULF** [1] - 1:6
**guys** [8] - 20:24, 36:3, 36:4, 36:18, 38:4,

46:2, 49:2, 52:16

# H

**Halliburton** [3] - 51:9, 51:10, 51:14
**hand** [1] - 46:8
**happy** [4] - 35:20, 46:13, 46:14, 46:21
**hate** [1] - 22:4
**have-a-cake-and-eat -it-too** [1] - 46:18
**HB** [1] - 1:21
**heads** [3] - 32:11, 49:9, 49:19
**heads-up** [3] - 32:11, 49:9, 49:19
**hear** [6] - 9:8, 34:1, 34:19, 37:25, 40:17, 43:12
**heard** [2] - 45:14, 50:18
**hearing** [4] - 21:8, 24:14, 26:20, 29:8
**hearsay** [1] - 21:21
**held** [1] - 1:7
**help** [2] - 15:16, 25:23
**helpful** [6] - 5:9, 26:1, 26:4, 32:17, 36:11, 49:14
**helpfully** [1] - 5:17
**Hemmelhoch** [4] - 15:23, 25:2, 27:19, 30:1
**HEMMELHOCH** [30] - 5:5, 6:2, 6:8, 6:17, 15:23, 24:25, 27:19, 29:13, 30:1, 33:14, 33:16, 36:23, 37:4, 37:11, 37:25, 39:14, 39:19, 40:8, 41:18, 41:20, 41:24, 42:4, 42:9, 43:6, 47:5, 47:17, 48:3, 50:8, 52:9, 52:15
**HEMMELHOCK** [1] - 2:14
**hereby** [1] - 52:21
**hiccup** [1] - 18:4
**hiccups** [1] - 17:24
**hold** [2] - 36:15, 47:11
**Honor** [54] - 5:12, 6:18, 7:3, 9:10, 10:22, 14:4, 15:6, 15:23, 17:19, 18:10, 18:24, 19:23, 21:8, 21:13, 24:1, 24:11, 25:5, 28:23, 29:2, 32:3, 32:5, 33:7, 33:14, 33:16, 33:20,

34:10, 35:17, 37:11, 37:25, 38:19, 38:25, 40:1, 40:8, 40:16, 41:18, 42:4, 42:9, 42:12, 43:12, 43:20, 44:2, 44:14, 46:10, 46:16, 47:10, 48:7, 49:4, 50:9, 50:11, 51:8, 51:24, 52:7, 52:15
**HONORABLE** [1] - 1:13
**hop** [1] - 42:15
**hope** [2] - 28:8, 37:23
**hoped** [1] - 32:8
**hoped-for** [1] - 32:8
**hopefully** [2] - 35:23, 52:13
**hoping** [3] - 31:11, 31:12, 32:13
**HORIZON** [1] - 1:5
**hour** [2] - 36:21, 44:21
**Houston** [1] - 3:6
**human** [1] - 6:9
**hundreds** [2] - 12:9, 17:1

# I

**idea** [8] - 9:16, 20:19, 24:1, 26:5, 28:3, 30:10, 46:2, 49:19
**identification** [3] - 39:16, 41:9, 52:2
**identified** [1] - 39:21
**identify** [5] - 16:20, 32:17, 39:23, 40:14, 43:24
**ignoring** [1] - 43:5
**IL** [1] - 2:21
**II** [1] - 3:3
**image** [1] - 44:20
**imagine** [1] - 47:5
**immediately** [1] - 43:15
**implication** [1] - 17:9
**imply** [1] - 9:22
**important** [2] - 10:25, 11:18
**IN** [2] - 1:5, 1:5
**in-person** [1] - 37:5
**inaccurate** [1] - 17:10
**incident** [1] - 44:24
**include** [6] - 10:8, 19:6, 24:21, 28:23, 33:17, 38:11
**included** [3] - 7:16, 17:11, 51:18
**includes** [1] - 10:7
**including** [1] - 20:17

**inclusion** [1] - 9:25
**inData** [3] - 17:25, 18:4, 28:24
**indeed** [1] - 42:4
**indicate** [1] - 47:7
**individual** [1] - 28:12
**information** [4] - 22:9, 24:6, 37:9, 43:7
**Information** [1] - 4:7
**inner** [1] - 51:9
**inner-Steve** [1] - 51:9
**installments** [1] - 20:21
**instance** [1] - 13:17
**intend** [1] - 20:12
**intending** [1] - 30:13
**interested** [2] - 24:18, 24:19
**Interests** [2] - 2:10, 2:16
**internally** [1] - 45:20
**interrupt** [1] - 48:7
**interrupted** [1] - 29:2
**invite** [1] - 45:23
**involved** [1] - 32:9
**ironclad** [1] - 10:13
**IRPINO** [20] - 2:3, 2:3, 10:22, 20:15, 20:21, 21:8, 21:12, 21:15, 22:4, 25:5, 26:9, 28:22, 32:3, 34:13, 35:7, 36:10, 36:24, 50:11, 50:18, 50:24
**Irpino** [9] - 10:22, 20:15, 25:5, 26:9, 28:22, 32:4, 36:10, 36:24, 50:11
**issuance** [1] - 51:11
**issue** [6] - 11:3, 11:19, 12:4, 34:15, 39:14, 46:5
**issued** [1] - 45:2
**issues** [5] - 6:22, 14:6, 16:19, 27:21, 46:14

# J

**jeans** [1] - 5:5
**Jeff** [1] - 39:5
**Jeffry** [1] - 39:2
**Joe** [4] - 40:1, 40:13, 41:2, 52:2
**joint** [1] - 11:7
**JOSEPH** [1] - 2:23
**judge** [8] - 22:7, 22:10, 24:15, 29:21, 35:5, 35:7, 36:13, 38:5
**JUDGE** [1] - 1:14
**Judge** [18] - 15:17,

25:20, 25:21, 26:1,
26:6, 27:3, 30:17,
31:13, 32:16, 34:13,
34:15, 34:22, 37:1,
38:13, 38:16, 39:11,
44:24, 52:5
**judge's** [3] - 25:1,
46:5, 47:12
**jump** [1] - 41:4
**JUSTICE** [2] - 2:10,
2:13

## K

**keep** [4] - 24:23,
30:24, 31:6, 36:9
**kept** [1] - 43:5
**key** [1] - 9:20
**keying** [2] - 40:6,
40:19
**Ki's** [2] - 23:4, 25:14
**kilter** [1] - 39:19
**kind** [6] - 8:6, 8:17,
18:3, 23:24, 45:13,
49:20
**kinds** [1] - 46:22
**KIRBY** [6] - 3:8, 12:23,
13:1, 25:19, 25:22,
27:8
**Kirby** [2] - 12:23, 27:9
**Kirby's** [1] - 16:8
**KIRKLAND** [3] - 2:20,
2:22, 3:2
**knowing** [2] - 11:18,
22:18
**known** [3] - 22:9,
22:21, 37:22
**knows** [3] - 36:7,
37:20, 50:23
**Ky** [4] - 12:23, 25:16,
25:18, 27:9
**KY** [1] - 3:8

## L

**LA** [1] - 2:5
**laid** [2] - 25:13, 25:14
**Lamar** [1] - 3:5
**Lasalle** [1] - 2:21
**last** [5] - 7:10, 7:14,
8:17, 10:10, 44:21
**late** [5] - 16:21, 41:25,
42:7, 42:10, 43:10
**laughing** [1] - 52:10
**laundry** [1] - 37:13
**LAW** [1] - 2:3
**lawyers** [2] - 22:13,
30:9
**lead** [2] - 45:20, 51:11
**lead-up** [1] - 51:11

**learned** [1] - 42:23
**least** [5] - 11:14,
24:20, 32:11, 33:3,
34:9
**leave** [3] - 11:19,
21:15, 34:15
**leaves** [1] - 11:24
**legal** [1] - 45:10
**less** [1] - 37:24
**letter** [1] - 48:13
**LEVIN** [1] - 2:6
**likely** [1] - 45:9
**likewise** [1] - 31:17
**limine** [6] - 41:25,
42:10, 42:21, 43:11,
44:11, 45:16
**Limine** [1] - 4:13
**limit** [3] - 12:8, 12:10,
23:8
**limitation** [3] - 27:5,
48:17, 48:18
**limited** [8] - 8:5, 8:18,
13:11, 22:25, 24:9,
25:24, 26:7, 37:17
**limiter** [1] - 29:13
**line** [1] - 9:18
**liner** [1] - 48:2
**List** [1] - 4:15
**list** [45] - 7:17, 7:19,
8:12, 9:20, 9:21,
9:22, 10:1, 10:6,
10:7, 10:9, 10:13,
12:16, 14:8, 16:10,
17:4, 17:20, 17:21,
18:8, 18:17, 18:20,
19:11, 20:20, 21:4,
28:17, 28:18, 28:24,
29:7, 29:12, 29:14,
30:12, 30:21, 31:10,
31:18, 37:24, 38:10,
38:11, 43:25, 44:11,
44:13
**listed** [1] - 30:6
**Lists** [1] - 4:12
**lists** [16] - 7:22, 8:3,
8:19, 10:20, 17:18,
17:23, 18:2, 18:13,
18:19, 32:8, 35:18,
35:21, 36:4, 38:6,
38:21, 49:17
**LLP** [4] - 2:20, 2:22,
3:2, 3:7
**look** [22] - 10:4, 14:8,
20:24, 28:6, 28:16,
30:3, 30:16, 32:25,
35:6, 35:9, 35:14,
35:20, 35:21, 36:5,
36:15, 38:18, 41:11,
41:12, 42:6, 46:1,
46:3, 46:7

**looked** [5] - 40:25,
41:3, 41:5, 42:1,
42:5
**looking** [5] - 5:23,
13:24, 34:9, 49:15,
49:18
**Loss** [1] - 4:8
**loss** [2] - 6:13, 8:15
**losses** [1] - 6:12
**lost** [1] - 6:10
**LOUISIANA** [3] - 1:2,
4:1, 5:1
**Louisiana** [2] - 1:22,
43:23
**lowest** [1] - 49:1

## M

**MAGISTRATE** [1] -
1:14
**main** [1] - 47:21
**make-sense** [1] - 25:8
**maker** [1] - 22:10
**Marie** [1] - 37:9
**mark** [1] - 42:11
**Mark** [14] - 14:4,
19:11, 19:13, 19:16,
23:18, 29:13, 30:1,
31:10, 33:5, 34:19,
34:21, 36:13, 38:5,
44:4
**MARK** [1] - 2:20
**marshalling** [13] -
7:13, 7:20, 8:13,
8:21, 9:4, 10:11,
10:19, 11:22, 12:11,
12:13, 12:19, 21:6,
23:18
**master** [1] - 5:20
**MATTERS** [1] - 4:5
**Matters** [1] - 4:6
**MCCUTCHEN** [1] - 3:7
**mean** [9] - 16:22,
25:12, 32:13, 32:23,
35:1, 35:9, 46:12,
46:14
**means** [2] - 10:12,
41:15
**meant** [2] - 11:7,
26:14
**meantime** [2] - 15:21,
31:8
**measured** [1] - 13:22
**meet** [9] - 21:5, 28:7,
43:9, 45:18, 46:13,
46:23, 49:21, 50:14,
50:21
**meet-and-confer** [9] -
21:5, 28:7, 43:9,
45:18, 46:13, 46:23,

49:21, 50:14, 50:21
**meeting** [2] - 14:9,
49:21
**mention** [1] - 49:4
**mentioned** [1] - 47:17
**mercy** [1] - 22:6
**Metadata** [1] - 4:8
**MEXICO** [1] - 1:6
**Michoud** [2] - 4:6,
5:11
**midweek** [3] - 32:9,
35:21, 36:8
**might** [7] - 23:5, 26:3,
32:16, 35:23, 35:24,
45:3, 49:19
**Mike** [1] - 36:4
**mind** [4] - 9:19, 21:19,
26:2, 29:24
**minute** [2] - 23:13,
31:24
**minutes** [1] - 41:20
**mirror** [1] - 44:20
**misinterpretation** [1] -
14:3
**missing** [1] - 35:2
**mistaken** [1] - 14:11
**misunderstanding** [1]
- 11:1
**MITCHELL** [1] - 2:6
**mixed** [1] - 27:1
**modify** [1] - 38:11
**moment** [1] - 43:6
**Monday** [14] - 18:3,
18:13, 30:19, 32:8,
32:20, 32:21, 33:7,
33:10, 33:13, 33:19,
33:23, 38:6, 38:15,
45:16
**Montgomery** [1] - 2:19
**month** [1] - 31:5
**months** [3] - 11:9,
13:23, 21:19
**morning** [11] - 5:3,
5:12, 5:14, 5:15, 7:3,
7:4, 9:10, 36:20,
37:6, 40:25, 42:19
**most** [1] - 10:25
**Mother** [1] - 6:8
**Motion** [1] - 41:21
**motion** [7] - 41:25,
42:8, 42:9, 43:11,
45:17, 46:17, 46:24
**Motions** [1] - 4:13
**motions** [7] - 42:21,
44:11, 45:16, 45:17,
45:19, 45:21
**motivated** [1] - 32:23
**move** [11] - 6:25, 15:8,
31:11, 31:12, 31:16,
31:23, 37:10, 40:14,

43:17, 47:24, 49:22
**moved** [1] - 5:17
**moving** [1] - 30:25
**MR** [78] - 5:12, 5:15,
9:10, 9:13, 10:22,
14:4, 18:24, 19:12,
19:13, 19:23, 20:15,
20:21, 21:8, 21:12,
21:15, 22:2, 22:4,
22:6, 24:1, 24:15,
25:3, 25:5, 25:21,
25:23, 26:9, 28:22,
29:2, 29:5, 29:15,
30:24, 31:13, 32:3,
32:16, 33:6, 33:20,
34:5, 34:10, 34:12,
34:13, 34:15, 34:22,
34:24, 35:4, 35:7,
35:9, 35:13, 36:10,
36:13, 36:24, 37:1,
38:5, 38:13, 38:16,
38:19, 38:25, 39:7,
39:11, 40:1, 40:16,
40:22, 42:12, 44:2,
44:14, 46:10, 48:7,
48:10, 48:22, 49:4,
50:1, 50:3, 50:6,
50:11, 50:18, 50:24,
51:8, 51:18, 51:24,
52:7
**MS** [47] - 5:5, 6:2, 6:8,
6:17, 7:1, 7:6, 12:23,
13:1, 15:23, 17:19,
18:10, 18:16, 24:11,
24:25, 25:19, 25:22,
27:8, 27:19, 29:13,
30:1, 32:5, 33:14,
33:16, 36:12, 36:23,
37:4, 37:11, 37:25,
39:14, 39:19, 40:8,
41:18, 41:20, 41:24,
42:4, 42:9, 43:6,
43:19, 46:16, 47:5,
47:10, 47:17, 48:3,
50:8, 51:3, 52:9,
52:15

## N

**narrow** [3] - 11:13,
12:16, 12:18
**Nature** [1] - 6:9
**necessary** [6] - 10:7,
10:9, 10:12, 17:6,
43:23, 51:21
**neck** [1] - 33:12
**need** [24] - 8:14, 9:1,
11:1, 12:19, 16:11,
16:20, 16:22, 17:5,
17:14, 20:5, 20:8,

20:25, 21:17, 21:18, 24:19, 26:20, 27:2, 27:5, 28:11, 35:5, 36:21, 38:10, 46:5, 52:1

**needed** [3] - 8:22, 10:15, 12:14
**needs** [5] - 9:22, 12:4, 17:13, 21:9, 24:20
**nervous** [1] - 22:12
**never** [1] - 13:3
**new** [1] - 16:21
**NEW** [3] - 1:3, 4:1, 5:1
**New** [4] - 1:22, 2:5, 14:9, 50:21
**next** [11] - 18:14, 18:16, 28:7, 30:22, 31:5, 35:10, 36:18, 37:8, 50:15, 52:5, 52:14
**nine** [6] - 19:12, 19:13, 19:19, 31:11, 31:15, 32:14
**nineteen** [1] - 41:20
**NOAA** [3] - 4:7, 5:25, 6:3
**nobody's** [1] - 22:6
**NOMELLINI** [1] - 2:20
**NOMILLINI** [23] - 14:4, 18:24, 19:12, 19:23, 22:2, 22:6, 24:1, 25:23, 29:2, 29:5, 29:15, 30:24, 31:13, 32:16, 33:6, 34:22, 35:4, 35:9, 35:13, 36:13, 37:1, 38:5, 38:13
**Nomillini** [2] - 14:4, 16:1
**NON** [1] - 4:5
**non** [2] - 21:4, 48:19
**non-objected-to** [1] - 21:4
**NON-PHASE** [1] - 4:5
**non-testifying** [1] - 48:19
**note** [2] - 39:7, 41:11
**notes** [1] - 46:20
**nothing** [2] - 42:15, 50:9
**Notice** [1] - 4:8
**notice** [1] - 40:10
**number** [21] - 8:5, 12:8, 13:11, 16:23, 19:25, 20:4, 23:1, 23:8, 23:9, 23:11, 23:12, 25:25, 26:7, 27:6, 32:13, 33:8, 33:18, 37:17, 44:23, 48:17, 48:18

**numbers** [4] - 8:18, 15:17, 20:22, 30:14
**numerical** [1] - 13:20
**NW** [2] - 2:24, 3:9

## O

**o'clock** [1] - 42:19
**O'Rourke** [2] - 48:8, 51:9
**O'ROURKE** [4] - 2:11, 48:7, 48:10, 48:22
**O'Rourke's** [1] - 51:16
**object** [2] - 21:23, 48:15
**objected** [23] - 7:17, 8:1, 11:11, 11:21, 12:9, 17:12, 17:22, 18:9, 18:18, 18:22, 18:25, 19:1, 19:8, 19:17, 21:4, 21:20, 26:14, 26:18, 26:19, 29:18, 29:19, 31:20, 33:16
**objected-to** [7] - 17:12, 18:22, 18:25, 26:18, 29:18, 29:19, 33:16
**objection** [18] - 8:2, 8:6, 11:6, 11:8, 11:24, 12:12, 13:5, 16:13, 23:4, 24:17, 25:11, 34:16, 43:2, 45:14, 46:4, 50:18, 51:16
**objections** [45] - 7:23, 8:4, 8:10, 10:5, 10:6, 10:18, 12:21, 13:7, 14:7, 14:11, 14:21, 15:7, 15:22, 17:10, 18:14, 19:4, 19:7, 19:17, 20:7, 20:13, 20:17, 20:18, 20:25, 21:2, 21:25, 23:12, 24:18, 26:15, 26:21, 27:11, 28:9, 28:12, 30:15, 30:20, 31:15, 31:21, 32:1, 32:15, 37:18, 48:12, 48:23, 51:12, 51:15, 51:20
**objects** [2] - 22:8
**obligated** [1] - 39:23
**obviously** [2] - 13:13, 38:14
**occur** [2] - 14:19, 14:23
**occurred** [2] - 29:5, 30:23
**occurring** [1] - 15:13
**OF** [5] - 1:2, 1:6, 2:10,

2:13, 2:17
**offer** [1] - 19:5
**offered** [1] - 31:2
**offering** [3] - 14:12, 20:1, 29:20
**offers** [1] - 51:21
**office** [2] - 5:18, 39:3
**offices** [1] - 50:24
**Official** [2] - 1:20, 52:21
**official** [1] - 5:19
**oIL** [1] - 1:5
**OIL** [1] - 1:5
**ON** [1] - 1:6
**once** [1] - 35:21
**one** [18] - 10:25, 14:3, 16:4, 16:12, 25:9, 26:17, 37:15, 38:5, 39:14, 40:2, 40:5, 41:3, 41:15, 45:1, 45:2, 48:2, 49:5, 52:8
**One** [9] - 2:4, 15:10, 22:16, 39:20, 40:12, 44:12, 44:22, 44:25, 45:4
**one-liner** [1] - 48:2
**ones** [3] - 21:25, 35:23, 49:25
**open** [1] - 24:23
**opportunity** [1] - 37:12
**opposition** [2] - 46:8, 47:2
**option** [1] - 47:10
**order** [24] - 5:20, 7:11, 7:14, 14:16, 14:17, 14:23, 15:18, 16:20, 19:6, 24:2, 29:17, 39:15, 42:18, 43:9, 44:24, 45:3, 45:6, 47:15, 47:23, 47:25, 48:5, 48:12, 48:16, 51:11
**Order** [1] - 4:14
**ordered** [1] - 47:20
**original** [1] - 25:24
**ORLEANS** [3] - 1:3, 4:1, 5:1
**Orleans** [4] - 1:22, 2:5, 14:9, 50:21
**orphan** [7] - 13:14, 31:22, 31:24, 31:25, 37:12, 37:16, 37:23
**otherwise** [3] - 40:25, 41:5, 50:20
**ourselves** [1] - 30:19
**out-of-context** [1] - 27:15
**outside** [2] - 11:16,

27:7
**overall** [1] - 33:8
**overcautious** [1] - 30:9
**own** [1] - 11:8

## P

**page** [1] - 20:10
**pages** [1] - 25:17
**pajamas** [1] - 5:4
**PAPANTONIO** [1] - 2:6
**papers** [1] - 45:1
**pared** [1] - 21:24
**part** [10] - 11:6, 11:18, 20:3, 24:6, 24:25, 26:8, 26:18, 27:25, 28:20, 34:17
**particular** [2] - 26:23, 27:24
**particularly** [1] - 48:17
**parties** [58] - 8:3, 8:14, 8:19, 8:21, 8:25, 9:15, 10:17, 11:2, 11:5, 11:12, 11:20, 12:2, 12:7, 13:10, 13:12, 14:8, 16:4, 16:6, 17:24, 18:2, 18:12, 18:16, 19:3, 20:1, 20:11, 21:17, 22:24, 23:8, 24:3, 24:4, 26:12, 27:2, 27:4, 27:13, 28:2, 29:20, 30:6, 30:16, 30:23, 31:3, 31:17, 32:17, 33:23, 33:24, 34:3, 34:4, 37:12, 38:1, 44:6, 45:6, 49:6, 49:13, 51:10, 51:14
**parties'** [3] - 19:24, 28:18, 38:10
**party** [12] - 7:25, 11:23, 12:13, 16:11, 17:6, 22:7, 26:15, 26:16, 26:17, 26:24, 27:24, 37:20
**past** [1] - 49:14
**Pause** [2] - 36:2, 36:17
**PC** [1] - 3:4
**PENCAK** [13] - 2:11, 7:1, 7:6, 17:19, 18:10, 18:16, 24:11, 32:5, 36:12, 43:19, 46:16, 47:10, 51:3
**Pencak** [4] - 7:1, 24:11, 32:6, 43:19
**Pencak's** [1] - 17:11

**penciled** [1] - 50:20
**pending** [1] - 47:8
**Pensacola** [1] - 2:9
**people** [7] - 14:14, 21:6, 22:16, 22:20, 45:9, 49:16, 52:11
**peppering** [1] - 43:2
**per** [1] - 19:6
**percent** [1] - 48:13
**period** [1] - 15:4
**person** [4] - 37:5, 42:16, 49:7, 50:21
**perspective** [1] - 15:19
**PETER** [1] - 3:2
**Peter** [5] - 9:10, 9:12, 19:12, 44:2, 44:9
**Phase** [10] - 15:10, 22:16, 39:20, 40:12, 44:12, 44:22, 44:25, 45:1, 45:4
**PHASE** [2] - 4:5, 4:10
**phase** [2] - 39:22, 39:24
**phone** [1] - 5:7
**Place** [1] - 2:4
**plaintiffs** [1] - 16:3
**Plaintiffs** [2] - 2:3, 2:6
**pleased** [1] - 50:8
**PO** [1] - 2:12
**point** [13] - 16:9, 17:4, 18:5, 18:25, 22:1, 22:21, 24:20, 26:11, 28:17, 30:14, 31:1, 37:16, 37:19
**points** [2] - 15:25, 22:23
**pollination** [2] - 33:1, 33:2
**portion** [1] - 10:8
**portions** [1] - 48:16
**position** [3] - 10:2, 12:24, 42:7
**positive** [1] - 5:23
**possibility** [2] - 11:21, 24:23
**possible** [1] - 38:7
**possibly** [1] - 13:7
**post** [3] - 11:14, 13:19, 13:24
**post-drill** [2] - 13:19, 13:24
**post-trial** [1] - 11:14
**postponing** [1] - 17:10
**Poydras** [1] - 1:21
**practice** [1] - 40:18
**practicing** [1] - 48:22
**prejudicial** [1] - 23:15
**preliminarily** [3] -

18:22, 18:23, 19:15
**preliminary** [3] -
17:17, 17:20, 47:22
**PREPARATION** [1] -
4:10
**prepare** [1] - 46:23
**preparing** [2] - 46:22,
47:1
**present** [2] - 22:20,
37:21
**Presentation** [1] -
4:14
**presentation** [3] -
48:5, 48:16, 51:11
**presentations** [1] -
49:17
**presented** [1] - 24:7
**presenting** [1] - 16:6
**preserve** [4] - 23:12,
47:14, 47:17, 47:24
**preserved** [2] - 24:17,
47:18
**preserving** [2] - 24:18,
48:11
**presumably** [1] -
25:16
**presume** [1] - 34:16
**pretend** [1] - 16:5
**pretrial** [2] - 41:17,
47:4
**pretty** [4] - 36:18,
37:20, 38:21, 41:12
**prevent** [1] - 45:13
**previous** [1] - 5:17
**previously** [1] - 24:21
**principal** [1] - 44:18
**printed** [1] - 42:1
**problem** [5] - 6:9,
27:18, 44:18, 44:19,
48:4
**problems** [1] - 28:16
**procedure** [3] - 8:8,
30:16, 51:20
**proceeding** [1] - 10:16
**Proceedings** [3] - 1:7,
1:25, 36:17
**proceedings** [2] -
36:2, 52:18
**process** [24] - 8:2, 9:3,
9:17, 9:18, 10:16,
11:6, 11:9, 11:11,
14:12, 14:18, 15:11,
16:13, 21:22, 24:10,
24:19, 27:22, 27:23,
28:4, 29:25, 30:7,
33:17, 49:12, 49:20,
51:12
**PROCTOR** [1] - 2:7
**progress** [4] - 5:16,
7:7, 28:10, 42:3

**proof** [2] - 16:7, 51:21
**proper** [3] - 13:8, 21:7,
35:24
**proposal** [12] - 8:9,
9:23, 17:11, 18:1,
18:11, 23:25, 24:14,
25:1, 25:7, 25:10,
30:7, 39:15
**proposals** [1] - 28:6
**propose** [1] - 30:11
**proposed** [10] - 7:24,
18:2, 18:14, 20:20,
28:9, 30:3, 30:17,
31:9, 39:16, 50:16
**proposes** [1] - 20:2
**propositions** [1] -
45:9
**provide** [4] - 16:11,
16:13, 24:22, 43:7
**provided** [2] - 16:12,
18:8
**PSC** [16] - 10:23,
20:16, 25:6, 30:11,
32:4, 33:21, 33:24,
34:2, 34:9, 36:10,
38:9, 38:22, 43:21,
46:11, 50:12, 50:24
**PSC's** [2] - 38:10,
38:22
**PSI** [1] - 36:24
**publish** [1] - 34:2
**pull** [1] - 49:8
**purpose** [1] - 26:23
**purposes** [2] - 26:21,
48:11
**put** [17] - 8:1, 17:7,
17:8, 18:20, 21:19,
23:1, 23:21, 26:25,
28:2, 31:5, 32:24,
39:5, 40:9, 40:10,
47:20, 47:22, 48:2
**putting** [4] - 31:21,
33:25, 49:16, 49:17

## Q

**quantification** [7] -
39:17, 39:22, 39:24,
40:5, 40:20, 49:11,
50:4
**quick** [1] - 36:16
**quite** [4] - 6:10, 30:13,
35:13, 49:25
**quits** [1] - 52:6
**quote** [1] - 13:19

## R

**RAFFERTY** [1] - 2:7
**raise** [1] - 39:14

**raised** [1] - 12:12
**range** [1] - 20:22
**rate** [1] - 45:2
**rather** [2] - 8:13, 21:24
**RE** [1] - 1:5
**reach** [3] - 5:18, 8:14,
19:4
**reach-out** [1] - 5:18
**reached** [2] - 8:17, 9:2
**reaching** [1] - 16:10
**read** [1] - 45:3
**reading** [1] - 7:14
**real** [2] - 19:14, 36:16
**realize** [1] - 8:25
**realizing** [1] - 17:6
**really** [11] - 8:7, 8:12,
10:9, 10:12, 11:6,
12:10, 15:14, 16:2,
29:6, 30:21, 38:17
**reason** [7] - 10:2,
15:11, 17:7, 19:15,
31:2, 31:3, 42:25
**reasonable** [5] - 8:5,
15:16, 16:22, 16:25,
30:13
**rebuttal** [2] - 9:9,
47:21
**rebutting** [1] - 9:24
**rec** [1] - 46:6
**receive** [1] - 7:15
**received** [1] - 8:11
**reconsider** [1] - 8:4
**reconsideration** [2] -
8:2, 18:17
**reconsiderations** [1] -
8:10
**reconsidering** [1] -
18:13
**record** [13] - 5:8,
24:19, 28:2, 42:13,
47:14, 47:18, 47:19,
47:24, 48:11, 48:15,
51:13, 51:22
**Recorded** [1] - 1:25
**reference** [1] - 11:14
**referred** [2] - 16:2,
30:4
**reflect** [1] - 42:13
**reflects** [1] - 14:18
**regard** [3] - 5:25, 6:13,
41:1
**regarding** [1] - 43:10
**regardless** [2] - 19:25,
28:19
**regards** [1] - 39:2
**Region** [2] - 4:8, 6:13
**reiterate** [1] - 51:22
**related** [1] - 6:7
**relating** [1] - 22:15

**relative** [2] - 5:11,
50:14
**relaxed** [1] - 22:17
**relevant** [3] - 17:3,
22:18, 22:19
**reliance** [3] - 43:18,
43:25, 48:19
**Reliance** [1] - 4:12
**rely** [1] - 27:25
**remain** [1] - 37:18
**remember** [3] - 42:16,
42:20, 43:2
**removal** [2] - 8:6,
17:10
**remove** [3] - 10:17,
10:18, 30:20
**removed** [5] - 10:14,
19:7, 19:18, 19:19,
19:21
**removing** [1] - 10:5,
30:20, 31:21
**report** [3] - 5:10, 7:7,
28:7
**Reporter** [2] - 1:20,
52:21
**reports** [2] - 44:23,
46:19
**represent** [1] - 11:3
**required** [1] - 43:8
**requires** [1] - 40:8
**resent** [1] - 6:3
**reserve** [1] - 51:15
**reserved** [2] - 13:7,
51:11
**reserving** [3] - 27:10,
51:19, 51:20
**resolve** [3] - 31:15,
31:25, 32:15
**resolved** [2] - 12:5,
19:4, 21:9
**respect** [7] - 13:1,
16:8, 18:17, 18:24,
22:2, 22:5, 27:17
**respectfully** [2] -
24:23, 27:8
**respective** [1] - 28:6
**respond** [4] - 15:24,
18:17, 41:14, 44:13
**responded** [1] - 7:23
**response** [7] - 6:15,
8:9, 9:23, 41:7,
41:14, 46:24, 48:25
**responses** [6] - 45:24,
46:12, 46:15, 46:22,
47:1
**rest** [2] - 37:6, 37:7
**revise** [1] - 34:8
**revised** [1] - 48:24
**revision** [1] - 34:3
**RIG** [1] - 1:5

**road** [1] - 24:24
**Rob** [8] - 5:11, 5:12,
5:14, 42:12, 44:4,
44:14, 46:17, 49:4
**ROBERT** [1] - 2:23
**roll** [1] - 14:10
**rolling** [3] - 33:11,
34:7, 36:9
**RONQUILLO** [1] - 3:4
**Room** [1] - 2:15
**round** [4] - 11:25,
12:21, 26:15, 26:21
**rounds** [1] - 49:14
**RPR** [1] - 1:20
**rule** [1] - 39:22
**ruled** [1] - 10:10
**rules** [2] - 13:10,
16:21
**ruling** [2] - 46:5, 47:12
**Rulings** [1] - 4:13
**Rush** [1] - 52:4

## S

**saddling** [1] - 15:17
**sake** [1] - 39:4
**SALLY** [1] - 1:13
**San** [1] - 2:15
**Sarah** [17] - 5:4, 5:25,
6:7, 6:16, 15:23,
25:2, 25:4, 27:19,
30:1, 37:15, 39:13,
40:23, 42:7, 43:14,
47:15, 48:1, 50:10
**SARAH** [1] - 2:14
**Sarah's** [3] - 6:12,
6:14, 40:17
**satisfied** [1] - 6:14
**saw** [2] - 11:5, 22:17
**schedule** [3] - 8:1,
17:11, 28:8
**scheduled** [1] - 14:9
**SCT** [1] - 2:10
**Seating** [1] - 4:16
**seating** [1] - 48:24
**second** [5] - 11:24,
12:21, 26:15, 26:21,
36:1
**see** [14] - 10:16, 13:8,
15:11, 19:18, 26:7,
31:15, 35:21, 36:3,
40:17, 41:10, 44:10,
46:13, 47:4, 49:22
**seeing** [1] - 20:5
**seeking** [1] - 27:24
**seem** [2] - 9:4, 40:11
**sees** [1] - 11:3
**segment** [1] - 39:25
**send** [7] - 8:2, 36:4,
37:9, 39:2, 39:7,

39:8, 49:15
**sense** [6] - 15:6, 24:14, 25:8, 30:15, 33:7, 46:24
**sent** [6] - 5:20, 9:23, 14:8, 18:1, 18:11, 30:12
**sentence** [1] - 22:4
**separate** [2] - 27:23, 28:3
**separately** [1] - 28:11
**September** [5] - 14:10, 39:16, 40:3, 40:4, 50:16
**set** [3] - 12:18, 33:10, 41:11
**sets** [1] - 17:13
**setting** [1] - 27:21
**seven** [5] - 19:16, 20:17, 31:12, 31:16, 32:15
**shape** [1] - 41:13
**share** [2] - 31:9, 31:18
**shift** [3] - 29:6, 29:8, 29:22
**shortly** [1] - 44:7
**shuffled** [1] - 8:7
**Shushan** [2] - 27:3, 30:17
**SHUSHAN** [1] - 1:13
**sides** [1] - 22:22
**sides'** [1] - 28:16
**sign** [1] - 30:13
**significant** [1] - 33:18
**signifies** [1] - 28:1
**silence** [1] - 6:16
**silent** [1] - 41:16
**simple** [1] - 27:16
**simply** [1] - 9:24
**SINCLAIR** [3] - 2:18, 38:19, 38:25
**Sinclair** [2] - 38:19, 38:25
**single** [2] - 22:14, 22:15
**sit** [3] - 15:2, 15:4, 19:3
**situation** [2] - 24:17, 27:15
**six** [2] - 11:9, 21:19
**slack** [1] - 37:3
**sleeves** [1] - 14:10
**smaller** [1] - 37:24
**Software** [1] - 1:25
**sold** [1] - 49:1
**solely** [1] - 25:10
**solve** [1] - 34:17
**soon** [1] - 6:5
**sorry** [5] - 21:12, 25:2,

37:5, 47:15, 52:11
**sort** [9] - 7:16, 7:24, 8:1, 8:17, 44:19, 45:14, 45:20, 46:17, 49:8
**sound** [2] - 34:6, 37:4
**sounds** [6] - 6:16, 19:14, 35:11, 38:3, 46:4, 46:8
**source** [7] - 40:3, 40:5, 40:7, 40:19, 45:1, 49:10, 50:4
**South** [1] - 2:8
**speaking** [4] - 5:7, 6:12, 21:13, 51:13
**special** [1] - 5:20
**specific** [3] - 24:4, 24:9, 45:19
**specifically** [1] - 51:14
**spend** [1] - 32:20
**SPILL** [1] - 1:5
**Spill** [2] - 45:3, 45:4
**spreadsheets** [1] - 17:25
**sprung** [1] - 16:21
**staff** [3] - 44:25, 46:19, 46:20
**stagger** [1] - 42:20
**standing** [1] - 45:21
**standpoint** [1] - 12:1
**star** [1] - 32:22
**start** [6] - 6:24, 28:9, 30:15, 30:19, 36:19, 49:20
**started** [1] - 5:6
**starting** [1] - 37:6
**starts** [2] - 22:4, 40:5
**state** [1] - 12:23
**State** [3] - 2:16, 43:22
**statement** [1] - 51:13
**States** [20] - 7:2, 7:18, 16:5, 16:25, 17:19, 20:23, 22:25, 23:9, 24:12, 25:15, 26:13, 27:4, 30:10, 36:23, 43:20, 43:21, 45:14, 46:17, 48:15, 51:3
**STATES** [2] - 1:1, 1:14
**stating** [1] - 9:25
**status** [1] - 5:19
**stay** [1] - 5:22
**Stenography** [1] - 1:25
**step** [2] - 7:8, 28:5
**stepping** [1] - 9:15
**steps** [1] - 26:10
**Steve** [2] - 48:8, 51:9
**STEVE** [1] - 2:11
**stick** [1] - 10:13
**still** [5] - 6:2, 8:22,

11:21, 28:10, 51:15
**stipulations** [6] - 49:6, 49:10, 49:11, 49:13, 49:23, 49:24
**stop** [2] - 15:11, 31:3
**Street** [5] - 1:21, 2:4, 2:8, 2:24, 3:9
**Strike** [1] - 41:21
**stupid** [1] - 46:2
**subject** [4] - 17:5, 17:6, 19:24, 34:2
**submit** [2] - 9:1, 11:7
**submitted** [5] - 7:19, 7:22, 20:18, 20:23, 34:25
**succinct** [1] - 48:21
**suggest** [3] - 28:5, 37:11, 46:25
**suggesting** [1] - 18:12
**suggestion** [2] - 24:16, 34:16
**Suite** [4] - 2:5, 2:8, 3:3, 3:6
**support** [1] - 35:15
**supports** [1] - 35:17
**supposed** [2] - 9:21, 11:3
**SUSAN** [1] - 1:20, 52:24
**Susan** [2] - 52:21, 52:25
**susan_zielie@laed.uscourts.gov** [1] - 1:22
**sweep** [1] - 45:7

---

**T**

**tandem** [1] - 28:14
**teams** [1] - 28:6, 30:18
**TELEPHONE** [1] - 4:2
**Telephonically** [2] - 1:7, 2:1
**terms** [4] - 11:14, 15:16, 16:22, 20:7
**terrible** [2] - 32:13, 35:22
**terrific** [1] - 32:14
**testifiers** [1] - 47:21
**testifying** [1] - 48:19
**testimony** [9] - 13:9, 13:17, 14:1, 14:2, 24:21, 27:25, 45:19, 47:21, 47:22
**THE** [100] - 1:2, 1:5, 1:5, 1:13, 5:3, 5:6, 5:14, 5:24, 6:7, 6:11, 6:16, 6:19, 7:4, 9:6, 9:12, 10:21, 12:25, 17:16, 18:5, 18:15,

18:19, 19:9, 19:14, 20:9, 20:19, 20:24, 21:11, 21:14, 22:22, 25:13, 28:13, 29:1, 29:4, 29:11, 31:7, 31:14, 32:7, 32:19, 33:9, 33:15, 34:1, 34:6, 34:11, 34:14, 34:19, 35:11, 35:20, 36:3, 36:15, 36:18, 37:2, 37:5, 37:14, 38:3, 38:7, 38:14, 38:17, 38:23, 39:4, 39:8, 39:12, 39:18, 40:13, 40:21, 40:24, 41:8, 41:15, 41:19, 41:23, 42:1, 42:5, 42:11, 43:5, 43:14, 44:8, 45:25, 46:25, 47:6, 47:11, 48:1, 48:4, 48:9, 48:21, 48:23, 49:1, 49:24, 50:2, 50:5, 50:7, 50:10, 50:17, 50:22, 51:1, 51:6, 51:16, 51:23, 51:25, 52:8, 52:11, 52:16
**theoretically** [1] - 47:2
**thereafter** [1] - 20:16
**therefore** [1] - 42:24
**they've** [1] - 16:12
**thinking** [4] - 27:2, 29:15, 38:18, 49:20
**thinks** [1] - 25:25
**THOMAS** [1] - 2:6
**thousands** [3] - 29:10, 29:11, 30:11
**three** [2] - 15:24, 40:9
**thrilled** [1] - 46:19
**throughout** [2] - 10:24, 13:6
**throw** [1] - 12:9
**Thursday** [2] - 18:14, 18:16
**tighter** [1] - 33:25
**time-consuming** [1] - 43:24
**timed** [1] - 15:20
**Timeline** [1] - 4:17
**timeline** [4] - 7:24, 39:15, 41:1, 52:4
**timely** [1] - 42:24
**today** [4] - 6:21, 41:16, 49:2, 52:11
**together** [7] - 8:1, 10:17, 33:25, 37:8, 40:18, 49:17
**tomorrow** [1] - 6:4
**Tony** [2] - 24:15, 25:3
**total** [1] - 19:12

**toward** [1] - 34:20
**towards** [1] - 38:2
**transcript** [2] - 39:6, 52:22
**Transcription** [1] - 1:25
**Transocean** [1] - 43:22
**travel** [1] - 51:5
**tremendous** [1] - 30:10
**trial** [49] - 10:3, 10:4, 10:8, 10:13, 10:15, 11:14, 12:12, 14:17, 14:19, 14:21, 14:24, 15:3, 15:5, 15:8, 15:9, 15:13, 15:20, 16:11, 16:14, 16:15, 16:16, 17:5, 17:7, 19:5, 20:5, 21:16, 22:12, 22:16, 23:20, 24:18, 28:19, 29:20, 31:3, 34:20, 35:9, 35:16, 37:21, 39:15, 39:17, 39:21, 39:24, 39:25, 40:5, 40:6, 47:8, 47:13, 49:16, 51:11, 52:3
**tried** [3] - 16:19, 43:3, 45:13
**trouble** [1] - 51:2
**try** [7] - 6:21, 12:16, 12:17, 14:11, 27:15, 49:22, 52:15
**trying** [3] - 12:8, 14:7, 47:13
**tuned** [1] - 5:23
**TWO** [2] - 4:5, 4:10
**two** [9] - 14:6, 19:1, 19:2, 19:7, 20:21, 26:9, 30:4, 31:11, 44:25
**Two** [4] - 4:11, 44:12, 45:1
**TX** [1] - 3:6
**type** [1] - 50:3

---

**U**

**ultimately** [1] - 24:17
**un-do** [1] - 27:15
**uncontroversial** [1] - 45:18
**under** [1] - 23:15
**understood** [4] - 7:10, 13:1, 13:5, 52:7
**undertone** [1] - 16:24
**undesignated** [1] - 24:22
**UNITED** [2] - 1:1, 1:14

**United** [20] - 7:1, 7:17, 16:4, 16:25, 17:19, 20:23, 22:24, 23:9, 24:12, 25:15, 26:13, 27:4, 30:10, 36:23, 43:19, 43:21, 45:14, 46:16, 48:15, 51:3
**universe** [4] - 18:6, 32:12, 32:18, 33:1
**unknowns** [1] - 33:4
**unless** [1] - 35:2
**unlike** [1] - 45:16
**unnecessarily** [1] - 43:24
**unnecessary** [1] - 40:12
**unobjected** [22] - 7:18, 8:16, 8:18, 8:20, 12:22, 17:2, 17:3, 17:20, 17:22, 18:8, 18:21, 19:2, 20:1, 20:2, 23:10, 28:18, 29:8, 29:10, 29:14, 29:18, 29:22, 30:6
**unobjected-to** [11] - 7:18, 8:16, 8:18, 12:22, 18:21, 20:1, 20:2, 28:18, 29:10, 29:14, 29:18
**unobjectionable** [1] - 24:6
**unreasonable** [1] - 22:21
**unreasonably** [1] - 22:8
**unresolved** [1] - 11:20
**unsuccessful** [1] - 43:4
**up** [13] - 8:8, 11:16, 14:10, 21:17, 27:1, 27:21, 28:24, 29:20, 32:11, 49:9, 49:19, 51:4, 51:11
**upcoming** [1] - 49:5
**update** [4] - 6:23, 9:6, 9:7
**upfront** [1] - 13:3
**UPS** [2] - 6:2, 6:9
**US** [9] - 2:10, 2:13, 20:10, 27:13, 31:9, 32:6, 33:14, 33:15, 51:12
**USA** [1] - 11:4
**useful** [1] - 26:8

## V

**values** [3] - 13:20, 13:22

**via** [1] - 48:19
**view** [14] - 11:8, 19:25, 21:12, 21:15, 22:19, 28:17, 29:19, 29:23, 29:25, 31:6, 35:15, 41:25, 52:9
**vigorous** [1] - 42:14
**virtue** [1] - 8:6
**volume** [1] - 14:25

## W

**wait** [3] - 20:8, 23:13, 43:12
**walked** [1] - 39:3
**wants** [4] - 25:15, 32:11, 38:11, 41:15
**WARREN** [1] - 3:8
**Washington** [4] - 2:12, 2:18, 2:24, 3:9
**Wednesday** [11] - 36:18, 36:20, 37:8, 38:2, 39:20, 39:23, 40:18, 42:17, 43:1, 43:3, 52:13
**week** [21] - 6:24, 10:10, 17:17, 19:17, 20:13, 20:16, 30:22, 31:15, 32:20, 35:10, 39:17, 40:2, 40:5, 40:10, 42:21, 42:23, 43:18, 44:10, 50:15, 52:5, 52:14
**week's** [4] - 7:11, 7:14, 8:17, 39:23
**weekend** [3] - 30:18, 32:21, 52:17
**weeks** [5] - 10:4, 10:24, 14:14, 29:7, 40:9
**welcome** [3] - 6:19, 34:14, 48:21
**whereby** [1] - 23:8
**whole** [4] - 13:6, 18:25, 26:11, 42:14
**will-call** [1] - 16:17
**willing** [1] - 45:18
**Win** [1] - 38:23
**Winfield** [2] - 38:19, 38:25
**WINFIELD** [1] - 2:18
**wire** [1] - 47:7
**wise** [1] - 45:22
**wish** [4] - 7:7, 28:18, 29:13, 29:14
**withdrawing** [2] - 15:21, 20:7
**witness** [8] - 8:24, 8:25, 11:17, 13:4, 13:9, 27:7, 40:9,

41:9
**Witness** [1] - 4:15
**witnesses** [11] - 15:14, 16:17, 27:5, 37:21, 39:17, 39:21, 39:23, 40:10, 40:11, 45:11, 52:2
**words** [1] - 16:3
**WORKING** [1] - 1:12
**works** [4] - 36:23, 36:25, 37:1, 51:3
**worried** [1] - 22:12
**worry** [1] - 42:5

## Y

**year** [1] - 11:10
**years** [1] - 16:16
**yesterday** [1] - 5:18
**YORK** [4] - 3:5, 51:8, 51:18, 51:24
**York** [1] - 51:8

## Z

**ZIELIE** [2] - 1:20, 52:24
**Zielie** [2] - 52:21, 52:25