UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179<br><br>SECTION: J |
| This document applies to:<br>*ALL CASES* | JUDGE BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

### THE ALIGNED PARTIES' OPPOSITION TO BP'S "MOTION IN LIMINE TO EXCLUDE NON-FACTUAL FACT WITNESS TESTIMONY FROM PHASE II"

**I.     INTRODUCTION**

Seeking to bar highly relevant evidence of the consequences of BP's fraudulent conduct, BP's "*Motion In Limine* To Exclude Non-Factual Fact Witness Testimony From Phase II" ignores the plain text of Federal Rule of Evidence 701 and established case law. The Aligned Parties intend to prove at trial that BP intentionally misrepresented and concealed its internal flow rate estimates and information about the Top Kill's likelihood of success from government and industry representatives assisting with the BP-led response. Testimony about the importance of flow rate or Top Kill information withheld by BP is highly probative evidence of this information's materiality and goes directly to issues of reliance and causation.

Unsurprisingly, in a variety of cases involving deception or non-disclosure, courts have allowed fact witnesses to offer lay opinion testimony on how they would have acted but for their lack of complete information. BP fails to cite, much less address, any cases addressing this rule. More generally, Rule 701 expressly recognizes that opinion testimony by lay witnesses is admissible in circumstances applicable here. Thus, BP's statement that a "fact witnesses cannot

give non-factual testimony" is simply incorrect. BP's Memorandum in Support of its Motion *In Limine* To Exclude Non-Factual Fact Witness Testimony From Phase II ("BP Mem.") at 2.

It is also apparent that BP is in reality attempting to assert a preemptive blanket objection to speculation. But, at least with respect to the examples it gives, BP largely failed to timely object to this testimony and cannot now complain about it. In short, the testimony BP seeks to exclude is admissible, and BP's motion should be denied in full.

Finally, BP asks for a broad, pre-trial exclusion of evidence based on three "examples" of allegedly improper testimony. But without specific testimony in context, the Court cannot make a determination as to whether it is opinion testimony at all, much less whether it is permissible opinion testimony by a lay witness. To the extent BP has contemporaneous objections to live testimony during the Phase II trial, or has a pending objection to deposition testimony, such objections can be resolved by the Court in the proper context on a case-by-case basis, consistent with the approach the Court took in Phase I. *See* Rec. Doc. 5492 (Order Regarding BP's Motion *in Limine* Non-Factual Witness Testimony).

## II.  ARGUMENT

### A.  FRE 701 Allows Both Opinion Testimony And Hypothetical Questions

As the Court recognized in its Order on BP's Phase I Motion *in Limine* on the same issue, Federal Rule of Evidence 701 ("Opinion Testimony by Lay Witnesses") unambiguously allows fact witnesses to offer opinion testimony. Rec. Doc. 5492 (Order Regarding BP's Motion *in Limine* Non-Factual Witness Testimony), at 1. Specifically, Rule 701 allows lay witnesses to offer opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge with the scope of Rule 702." Fed. R. Evid. 701.

2

The cases cited by BP in its Memorandum in Support of its Motion *In Limine* To Exclude Non-Factual Fact Witness Testimony From Phase II, only provide further support for this principle. *See* BP Mem. at 2; *United States v. Riddle*, 103 F.3d 423, 429 (5th Cir. 1997) (Lay opinion under Rule 701 must be "based on personal perception, . . . that a normal person would form from those perceptions, and must be helpful to the [finder of fact]." (internal quotation marks and citation omitted)); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 459 (5th Cir. 1996) (Rule 701 allows lay opinion testimony "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."); *United States v. Marshall*, 762 F.2d 419, 426 & n.8 (5th Cir. 1985) (same).

Of particular relevance here, courts have repeatedly recognized that Rule 701 permits fact witnesses to answer hypothetical questions regarding what they would have done had they been provided with information that was allegedly withheld from them. *See, e.g.*, *United States v. Cuti*, 720 F.3d 453, 457-59 (2d Cir. 2013) (recognizing "other circuits have permitted the use of hypothetical questions to inquire into the effect of a fraud") (collecting cases); *United States v. Hill*, 643 F.3d 807, 842 (11th Cir. 2011); *United States v. Sullivan*, 66 F.3d 323, 1995 WL 534973, at *3 (5th Cir. Aug. 17, 1995) (table case) (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 780-81 (3d Cir. 1985)).

For example, in *Cuti*, the Court of Appeals upheld the trial court's admission of testimony from two fact witness accountants "as to what the accounting treatment of certain fraudulent transactions would have been absent the fraud." *See Cuti*, 720 F.3d at 455. "If the facts as the witnesses had understood them were A and the true facts were B, it was not inappropriate to ascertain, from the very witnesses responsible for their accounting, whether B would have affected that accounting under the same, undisputed accounting rules." *Id.* at 458.

3

The court specifically noted that "'what-if-you-had-known' questions that present withheld facts to a witness are especially useful to elicit testimony about the impact of fraud." *Id.* at 459.

Similarly, in *Eisenberg*,[1] an attorney-defendant challenged the introduction of his law partner's testimony as to "what he believed should have been included" in a private offering memorandum and whether that memorandum complied with the applicable disclosure requirements. 766 F.2d at 780. The Court of Appeals held that the testimony was proper under Rule 701: "Since [the defendant's law partner] personally observed the preparation of the offering memoranda and scrutinized them for adequacy of disclosure, and possessed the qualifications to draw legal conclusions from them, his testimony as to how he would have viewed the undisclosed facts was not an impermissible answer to a hypothetical question by a non-expert, but remained a lay inference from his prior personal experience and observation." *Id.* at 781; *see also Hill*, 643 F.3d at 840 (approving testimony of loan officers "about whether the disclosure of misrepresentations in some of the fraudulent loan applications would have had any effect on their decision to approve the mortgage or loan"); *United States v. Locke*, 643 F.3d 235, 241 (7th Cir. 2011) (allowing lay opinion testimony from employees of lenders about the defendant's falsehoods' influence on loan decisions); *Sullivan*, 1995 WL 534973 at *3 ("The hypothetical questions posed to the witnesses were proper under rule 701, as they served to illustrate the witnesses' state of mind at the time they were influenced by defendants' fraudulent conduct.").

---

[1] Although decided before the 2000 amendments to Rule 701, *Eisenberg* remains good law with respect to its application of that Rule. *E.g.*, *United States v. DeMuro*, 677 F.3d 550, 562 (3d Cir. 2012) (citing *Eisenberg* for the proposition that the Third Circuit has "allowed professionals to give lay opinions when the opinions are based on personal knowledge of the issues, along with specialized experience").

4

B.    **The Fraud Testimony BP Seeks To Exclude Is Admissible.**

The testimony cited by BP in its motion are all examples of permissible questioning as to what a witness *would have done*, had BP not withheld material information. Richard Vargo, who was personally involved in HESI's Top Kill work for BP and was HESI's 30(b)(6) witness for the Top Kill, testified that BP did not disclose to HESI "that 15,000 barrels per day flow rate out of the well would prevent the top kill from working." Vargo 25:15-26:10, 94:20-22, 94:24-95:4.

That 15,000 BOPD limit on a successful Top Kill plainly would have been significant information to HESI, had BP shared it with HESI, because BP approved HESI's use of a 30,000 BOPD flow rate estimate in HESI's modeling of the Top Kill cement job. Vargo 92:13-93:14; 136:1-19; 259:5-15; 260:14-22. After learning that BP withheld that information from HESI, it was entirely proper for Vargo to testify that he would have acted differently had he known that information at the time of top kill:

> *With the knowledge that the top kill could not have worked based on the 15,000 barrel per day limitation, then we shouldn't have moved forward with the top kill because it was going to put everybody at risk and the well at risk.* Not -- I mean, I don't -- we're ending up here. But I don't think anybody really understands how dangerous what we were about to do was. I mean, we have high-pressure equipment out there, people working around psi equipment. If something came apart, you would have killed people. If you looked at the pictures of that boat, I mean, we had people -- equipment on top of equipment. It was a dangerous, dangerous operation. *And if they had the knowledge that that was the case, we shouldn't have moved forward. . . .*
>
> *At that time, though, we didn't. I mean, at the time we didn't know that.* We were very optimistic, and we were going to give it the best shot we had.

5

Vargo 316:21-317:22 (emphasis added).[2]

BP also failed to inform Federal Incident Commander Richard Brannon "at any time prior to the Top Kill attempt that at 15,000 barrels a day, the well cannot be killed by pumping in 50 barrels per minute," or that BP had been advised prior to top kill that flow could be much higher than 15,000 barrels per day. Brannon 18:20-22, 135:11-15, 136:2-19, 136:21-22, 137:12-17, 139:12-140:16, 140:18-19, 150:11-15. Questioning Brannon on what he would have done, had he been armed with either of those pieces of information, was squarely within the scope of admissible lay witness testimony under Rule 701. Brannon 123:9-124:1. In the same vein, BP's failure to provide Rear Admiral Kevin Cook with flow rate information invited questioning of Admiral Cook as to how that information would have influenced his decision-making with respect to Top Kill. Cook 563:3-23, 584:14-591:4.

By contrast, Randy Ezell's Phase I deposition testimony, which the Court utilized to provide guidance to the parties as to the scope of Rule 701, did not implicate BP's (or anyone else's) failure to disclose information or what Ezell, Senior Toolpusher on the *Deepwater Horizon*, would have done in any particular situation. Instead, the questions and answers related to (1) Ezell's opinions about internal BP emails, Ezell180:8-20, 182:14-20, 183:10-18,186:11-21, 187:2-15, (2) whether BP should have run a cement bond log, *id.* 185:20-189:9, and (3) what

---

[2] In fact, BP's citation of Richard Vargo's testimony is misleading. <u>BP</u> initiated this line of questioning, asking Vargo whether he was told by BP or was given the impression that BP was doing the top kill because it was stalling for time, to which Vargo responded, "Not at that time." Vargo 220:16-221:1. Plaintiffs later followed up on this exchange to correct the impression left by BP that Vargo was never told or given the impression that the Top Kill was done to stall for time: Q. You were asked during your examination by BP the following question: Were you told by BP or did you gain the impression that BP was doing the top kill operation because it was just trying to stall for time? Do you remember that question? A. Yes. Q. And you gave the answer, "Not at that time." Do you remember that? A. Yes. Q. Did your opinion on that change at some point in time? A. Yes. Q. And so what is Halliburton's opinion as we sit here today? Vargo 316:7-22.

BP could have done had BP run a cement bond log, *id.* 185:11-19.  The testimony BP seeks to exclude in its Phase II motion is simply not comparable to Ezell's testimony.

### C. BP's Attempt To Exclude Testimony Requiring Specialized Knowledge Conflicts With Settled Fifth Circuit Precedent.

BP contends in its motion that "asking fact witnesses for opinion testimony that requires specialized knowledge also violates Rule 701."  BP Mem. at 4.

BP's position is inconsistent with Fifth Circuit case law.  The Fifth Circuit "ha[s] allowed lay witnesses to express opinions that required specialized knowledge."  *Riddle*, 103 F.3d at 428-29 (noting that "[o]ther circuits have construed Rule 701 even more broadly").[3]  "Rule 701 does not prohibit lay witnesses from testifying based on particularized knowledge gained from their own personal experiences."  *Hill*, 643 F.3d at 841.  Notably, "Rule 701 does not exclude testimony by corporate officers or business owners on matters that relate to their business affairs, such as industry practices and pricing."  *Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 551-52 (5th Cir. 2005).

For example, in *United States v. Valencia*, 600 F.3d 389 (5th Cir. 2010), the Fifth Circuit agreed with the district court that Dynegy's former chief risk officer "was a lay witness, and not an expert witness," where his "testimony related to his former job duties as risk officer at

---

[3] While Rule 701 was amended in 2000 to prohibit lay opinions based on "scientific, technical or other specialized knowledge *within the scope of Rule 702*" (emphasis added), courts have "reviewed the advisory committee notes accompanying the 2000 amendment and concluded that the amendment did not place any restrictions on the preamendment practice of allowing business owners or officers to testify based on particularized knowledge derived from their position."  *See Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 403 n.12 (5th Cir. 2003).  "Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business."  Fed. R. Evid. 701, advisory committee notes on 2000 amendments.

Dynegy." *Id.* at 416. While he "apparently analyzed a great deal of data first provided to him after he left Dynegy's employ," the chief risk officer's

> knowledge and analysis were derived from duties he held at Dynegy, his opinions were admissible as testimony based upon personal knowledge and experience gained while employed by Dynegy. He engaged in precisely the kind of analysis he regularly performed as chief risk officer; the fact that he drew particular opinions and projection for the purposes of this case does not make him an "expert" within the meaning of Federal Rule of Evidence 702.

*Id.* (internal citation omitted); *see also Hill*, 643 F.3d at 842 (loan officers "who answered hypothetical questions in this case did not do so based on any 'scientific, technical or other specialized knowledge,' but instead based their testimony on their personal experiences as officers of financial institutions with knowledge of their companies' policies and of the specific transactions at issue"); *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 168-69 (5th Cir. 2010) (affirming the admission of CFO's lay opinion testimony concerning damages sustained by the company); *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1222-23 (11th Cir. 2003) (affirming the admission of lay opinion testimony by employees regarding the reasonableness of prices and time needed for repairs to a ship; the "witnesses testified based upon their particularized knowledge garnered from years of experience within the field").

*Doddy*, on which BP relies, illustrates the other end of the spectrum – a witness without the requisite experience to have personal knowledge about a given topic. There, a fact witness purported to have personal knowledge of toxic chemicals and other toxic substances contaminating an oil well. 101 F.3d at 460. However, the district court found that the witness

"lacks any expertise in petroleum engineering, chemistry, or biology. Thus, it is rather doubtful that, in the absence of any specialized training or experience in these areas, he—or any other ordinary person—could have personal knowledge about the toxicity of chemicals or substances (such as benzene) at the well or elsewhere." *Id.* Therefore, the district court did not abuse its discretion in striking parts of his testimony. *Id.*

Any opinions by Vargo, Brannon, and Cook relating to Top Kill are logically based on their firsthand experience in the Top Kill operation. *See, e.g.*, Vargo 25:16-25 (Vargo "personally had a role" in top kill); Brannon 72:23-73:19 (Brannon had authority to approve "realtime" changes to the Top Kill procedure); Cook 124:5-125:8 (Cook's "primary focus" was the Top Kill). These examples of lay opinion testimony are "admi[ssible] not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business." Fed. R. Evid. 701, advisory committee notes to 2000 amendments.

### D. BP Has Waived Its Objections To Much Of The Testimony At Issue.

BP has largely waived its objections to the testimony of Vargo, Brannon, and Cook it cites in support of its motion. BP's complaint is that "other parties have continued to ask fact witnesses speculative and hypothetical questions, and questions generally outside their perception," making clear that its real objection is to the form of the questions these witnesses were asked. BP Mem. at 3. In particular, BP appears to be attempting to assert a blanket objection to all forms of speculation. But with respect to deposition testimony, objections to the form of a question or answer are waived if not timely made during the deposition. Fed. R. Civ. P. 32(d)(3)(B). No party objected during the depositions to the cited testimony of Vargo or Cook.

9

As for Brannon, BP made a form objection to one question. *See* Brannon 123:20-124:2 (Q: Yeah. I mean, if—if someone knew that—that at a certain flow rate, the Top Kill wouldn't work, and the well was actually flowing greater than that rate, I mean, it would have been a waste of time and resources to attempt the Top Kill, correct? A: I would assume, yes. Mr. Bentsen: Objection, form). Accordingly, form objections to the other questions have been waived.

### E. As In Phase I, BP's Objections Can Be Properly Handled On A Case-By-Case Basis At Trial

BP's requested prospective exclusion of every instance of "non-factual" testimony by a lay witness, as demonstrated *supra*, is flatly inconsistent with governing legal authority and would include within its broad sweep evidence that is indisputably admissible. Thus, the testimony should be evaluated on a case-by-case basis to determine its admissibility in the context of objections to deposition designations or when witnesses are called live at trial, when the Court will have the full benefit of the specific testimony and the circumstances under which it is sought to be admitted in order to determine admissibility. Indeed, this is the procedure established by the Court in connection with BP's similar motion *in limine* prior to the Phase I trial.

At that time, BP sought to exclude the deposition testimony of more than sixty individual witnesses in addition to live testimony during the trial.[4] Rec. Doc. 5110. The Court specifically addressed certain testimony of Randy Ezell, one of the examples given by BP, "for purposes of guidance at trial as to the scope of examination for the witnesses to be presented live." Rec. Doc. 5492, at 2. With respect to the remaining testimony BP sought to have excluded, the Court

---

4 There, at least, BP listed the deposition testimony it sought to exclude, though the Court declined to address specific testimony at that time. Here, it asks the Court to rule on unidentified testimony with no context at all.

10

held that it would "determine at the trial whether testimony should be excluded as beyond the scope of Rule 701. The remaining witnesses . . . will be proffered by deposition designations and the Court will review objections to admissibility as the depositions are read in conjunction with the trial." *Id.*

BP's motion does not identify any reason why this approach proved unworkable during Phase I, and it is the proper approach here, as well. *See Manuel v. Traditional Sporting Goods, Inc.*, No. 5:09-CV-406, 2011 WL 6258305, at *3 (E.D. Ky. Dec. 14, 2011) (rejecting "defendants' invitation to preclude any hypothetical questions [to lay witnesses] in a vacuum;" defendants could make objections to specific questions contemporaneously at trial); *Doctor's Hosp. of Jefferson, Inc. v. S.E. Med. Alliance, Inc.*, 878 F. Supp. 884, 887 (E.D. La. 1995) ("A determination as to whether proper questions are asked of plaintiff's lay witnesses must await the context in which they are asked."). This is especially true given the Court's broad discretion regarding the admissibility of evidence pursuant to Federal Rule of Evidence 701[5] and the fact that the prejudicial impact of erroneously admitting evidence is substantially less than it would be in a jury trial. *United States v. Cardenas*, 9 F.3d 1139, 1156 (5th Cir. 1993). *See also Tampa Bay Shipbuilding & Repair Co.*, 320 F.3d at 1223 ("[M]indful of the level of deference with which we evaluate a district court's evidentiary rulings made during a bench trial, we find no basis for determining that the district judge abused his discretion [in admitting opinion testimony from lay witnesses]).''

---

5 *See, e.g.*, *United States v. Pierce*, 136 F.3d 770, 773 (11th Cir. 1998) ("The ultimate decision as to the admissibility of opinion testimony is committed to the sound discretion of the district court and will not be overturned on appeal unless there is a clear abuse of discretion.")

11

### III. CONCLUSION

For these reasons, BP's Motion *In Limine* to Exclude Non-Factual Fact Witness Testimony from Phase II should be DENIED.

| | |
|---|---|
| DATED: September 3, 2013 | Respectfully submitted, |
| By: /s/ Brad D. Brian<br>Brad D. Brian<br>Michael R. Doyen<br>Daniel B. Levin<br>Susan E. Nash<br>MUNGER TOLLES & OLSEN, LLP<br>355 So. Grand Avenue, 35th Floor<br>Los Angeles, CA  90071<br>Tel: (213) 683-9100<br>Fax: (213) 683-5180<br>Email:  brad.brian@mto.com<br>           michael.doyen@mto.com<br>           daniel.levin@mto.com<br>           susan.nash@mto.com | By: /s/ Steven L. Roberts<br>Steven L. Roberts<br>Rachel Giesber Clingman<br>Sean Jordan<br>SUTHERLAND ASBILL & BRENNAN LLP<br>1001 Fannin Street, Suite 3700<br>Houston, TX  77002<br>Tel: (713) 4710-6100<br>Fax: (713) 354-1301<br>Email:  steven.roberts@sutherland.com<br>           rachel.clingman@sutherland.com<br>           sean.jordan@sutherland.com |
| John M. Elsley<br>ROYSTON, RAYZOR, VICKERY & WILLIAMS LLP<br>711 Louisiana Street, Suite 500<br>Houston, TX  77002<br>Tel: (713) 224-8380 | By: /s/ Kerry J. Miller<br>Kerry J. Miller<br>FRILOT, LLC<br>1100 Poydras Street, Suite 3800<br>New Orleans, LA  70163<br>Tel: (504) 599-8194<br>Fax: (504) 599-8154<br>Email:  kmiller@frilot.com |

**Counsel for Defendants Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH.**

| | |
|---|---|
| Donald E. Godwin<br>*Attorney-in-charge*<br>State Bar No. 08056500<br>Don.Godwin@GodwinLewis.com<br>Renaissance Tower<br>1201 Elm, Suite 1700<br>Dallas, Texas 75270-2041<br>Telephone: (214) 939-4400<br>Facsimile: (214) 760-7332<br>Jenny L. Martinez<br>State Bar No. 24013109 | Bruce W. Bowman, Jr.<br>State Bar No. 02752000<br>Bruce.Bowman@GodwinLewis.com<br>Renaissance Tower<br>1201 Elm, Suite 1700<br>Dallas, Texas 75270-2041<br>Telephone: (214) 939-4400<br>Facsimile: (214) 760-7332<br><br>Floyd R. Hartley, Jr.<br>State Bar No. 00798242 |

Jenny.Martinez@GodwinLewis.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

Gavin E. Hill
State Bar No. 00796756
Gavin.Hill@GodwinLewis.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

Jerry C. von Sternberg
State Bar No. 20618150
Jerry.VonSternberg@GodwinLewis.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

Floyd.Hartley@GodwinLewis.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

R. Alan York
State Bar No. 22167500
Alan.York@GodwinLewis.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

Misty Hataway-Cone
State Bar No. 24032277
Misty.Cone@GodwinLewis.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

**Attorneys for Defendant Halliburton Energy Services, Inc.**

Stephen J. Herman, La. Bar No. 23129
HERMAN HERMAN & KATZ LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax. No. (504) 569-6024
Email: sherman@hhklawfirm.com

James Parkerson Roy, La. Bar No.11511
DOMENGEAUX WRIGHT ROY
& EDWARDS, LLC
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233-3033
Fax No. (337) 233-2796
E-Mail:  iimr@wrightroy.com

**Plaintiffs Liaison Counsel**

LUTHER J. STRANGE
*Attorney General*
COREY L. MAZE
*Special Deputy Attorney General*
WINFIELD J. SINCLAIR
*Assistant Attorney General*

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130
Phone: (334) 242-7300
Fax: (334) 242-4891
Email: lstrange@ago.state.al.us
cmaze@ago.state.al.us
wsinclair@ago.state.al.us

**Attorneys for the State of Alabama**

| | |
|---|---|
| James D. "Buddy" Caldwell<br>*Louisiana Attorney General*<br>James Trey Phillips<br>*First Assistant Attorney General*<br>Megan K. Terrell<br>*Assistant Attorney General*<br>1885 N. Third Street<br>Baton Rouge, LA 70802<br>Telephone: (225) 326-6079 | Allan Kanner<br>Elizabeth B. Petersen<br>Douglas R. Kraus<br>Kanner & Whiteley, L.L.C.<br>701 Camp Street<br>New Orleans, LA 70130<br>Telephone: (504) 524-5777<br>Facsimile: (504) 524-5763<br>E-Mail: a.kanner@kanner-law.com |

**Attorneys for the State of Louisiana**

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 3, 2013, I electronically filed a PDF version of this document with the Court's CM/ECF system and service on all counsel of record by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

                                                /s/ Kerry J. Miller_____
                                                   Kerry J. Miller