# Attachment 23

01-40959
TB/comp

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | ) ) ) ) ) ) ) | MDL NO. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAG. JUDGE SHUSHAN |

# *CONFIDENTIAL*

## *WorldwideVIEW*™
**Interactive Deposition Digital Display**

ORAL AND VIDEOTAPED DEPOSITION OF:



# Thomas Knox
**VOLUME 1**

OCTOBER 11, 2012

# COPY



Systems Technology for the Litigation World

Litigation Group ♦ Court Reporting ♦ Video Production ♦ Videoconferencing

**For U.S. & International Services**
**800 - 745 - 1101**

1      of the erosion other than the reports that
2      you've mentioned, the DNV report and the
3      post-recovery reports on the riser and the
4      BOP?
5           A.   Only the physical evidence that
6      they present as part of their reports.
7           Q.   Okay.  And the DNV report is also
8      based on the recovery of the riser and the BOP
9      after the capping of the well, right?
10          A.   Yes, it is.
11          Q.   Okay.  Do those reports tell
12     you -- tell BP anything about when erosion
13     might have occurred?
14          A.   I -- I don't believe that that
15     report in itself does.
16          Q.   Okay.  And when you say that
17     report, you mean the DNV report?
18          A.   The DNV report.
19          Q.   Okay.  Does BP have any evidence
20     of when erosion may have occurred in the
21     various choke points that you've identified?
22               MR. COLLIER:  Objection, form.
23          A.   The only evidence that -- that was
24     available to the incident team throughout the
25     response was the appearance of external damage

1     on the kinked riser some time after collapse
2     of said riser.
3          Q.   And when you say the appearance of
4     the external damage, you mean the hole that
5     appeared in the kink?
6          A.   I do.
7          Q.   Okay.  Anything else?
8          A.   As -- as evidence of erosive
9     events during the incident, those are the only
10    ones I'm aware of.
11         Q.   Okay.  Is -- is it fair to say
12    that the -- you can't know when the erosion
13    occurred because you're not looking at the
14    materials until after you recover them from
15    the ocean floor?
16              MR. COLLIER:  Objection, form.
17              MR. CASEY:  Objection, form.
18         A.   I would say that throughout all of
19    the incident, the only evidence for erosion is
20    the appearance of those holes.  And anything
21    else or erosion anywhere, the extent and the
22    timing cannot be achieved other than that
23    evidence that we saw.
24         Q.   And when you say that evidence
25    that we saw, you're talking about the

```
 1        appearance of the holes?
 2             A.    At -- at that time --
 3             Q.    Okay.
 4             A.    -- with the introduction to be the
 5        appearance of holes.
 6             Q.    Okay.  And then the only other
 7        evidence is the reports or the analysis of the
 8        pieces of equipment after they were recovered
 9        from the floor?
10             A.    The -- the -- the physical
11        recovery and physical investigation of the
12        component parts provides evidence that erosive
13        event occurred at some point.
14             Q.    Right.  But the physical recovery
15        and physical investigation of the component
16        parts doesn't say anything about when the
17        erosion occurred?
18             A.    It doesn't.
19                   MR. COLLIER:  Objection, form.
20             Q.    Okay.  Can I ask you to look at
21        tab 46 in your binder.
22                        And this is an e-mail with
23        the Bates number ending 5760440.  Can you take
24        a look at that and let me know whether you
25        recognize it?
```