**KIRKLAND & ELLIS LLP**
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

| | | |
|---|---|---|
| Robert R. Gasaway<br>To Call Writer Directly:<br>(202) 879-5175<br>robert.gasaway@kirkland.com | (202) 879-5000<br><br>www.kirkland.com | Facsimile:<br>(202) 879-5200 |

July 18, 2013

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

      Re:    MDL 2179 — Motion to Postpone Indefinitely the Response Deadline for Phase 2 "Dispositive" Motions Filed on July 15, 2013

Dear Judge Shushan:

      As discussed at yesterday's Source Control and Quantification conferences with the Court, certain "dispositive" motions were filed on Monday, July 15, for which no immediate response is necessary. The United States filed two such motions, (Rec. Docs. 10752 & 10756), and Halliburton filed another, (Rec. Doc. 10753).

      The Court's draft timeline circulated on July 11, in conjunction with the two-day forward adjustment made at Friday's Working Group Conference, contemplates responses to these three motions be filed on July 29, 2013. Nonetheless, BP understands that the Court is reviewing the motions to determine whether it would be helpful to progress with briefing them at this time. This letter is being submitted to assist the Court in making its determination regarding whether, given the non-dispositive nature of these "dispositive" motions, it makes sense to postpone indefinitely the deadlines for responding to the motions.

**United States' Minimum Flow Motion**

      As we mentioned yesterday, the United States' filed a "dispositive" motion asking the Court to find both a minimum flow on July 15, 2010, and a minimum cumulative discharge. (Rec. Doc. 10756.)

      Because this motion disposes of no claim or defense at issue, it is not a dispositive motion. Resolving the issues it presents would not lighten the burden facing the Court and

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 18, 2013
Page 2

parties during the Quantification segment of the Phase 2 trial, and hence it is questionable whether proceeding with briefing the motion would benefit the Court and parties at this time.

*First,* even if the Court were to begin pronouncing before trial on certain "minimum flow" issues, the work left for trial would be exactly the same. The United States would still bear the burden of proving a total cumulative discharge — a key factor in the eventual assessment of Clean Water Act penalties.

Significantly, as to the part of the motion addressing the flow on the final day of the spill, the United States does not have to prove a *minimum amount* (or indeed any amount) of oil flow on any particular day. The fact ultimately in issue in the Quantification segment of Phase 2 is the *total* amount of cumulative flow, not the flow on a particular day.

And even as to the part of the motion addressing the cumulative size of the spill, which the United States does bear the burden of proving, the United States asserts that it expects to put on evidence of much higher cumulative flow than the minimum values on which it seeks a pre-trial determination. (Memo, Rec. Doc. 10756-11, at 7.) Accordingly, in light of the expected presentation of this evidence, the overall trial presentation would not be significantly streamlined if the Court were to grant the United States' motion. The United States would still need to present its alleged evidence of higher cumulative flow, notwithstanding any pre-trial ruling setting a pre-established floor.

*Second*, the United States' claimed impetus for filing the motion is unpersuasive. The United States' alleged concern is that BP and Anadarko will fail to call to testify during the Phase 2 Quantification trial any of its experts Drs. Martin Blunt, Alain Gringarten, or Simon Lo. (Memo, Rec. Doc. 10756-11, at 7-8.) But it is hard to see a scenario in which BP and Anadarko would exclude all three of these experts from their roster of experts who will testify live at trial. Should this unlikely scenario unfold, it might be worth taking a second look at the motion at that hypothetical time.

**United States' Dissolved Oil Motion**

The United States also filed a motion for partial summary judgment seeking a finding of law that dissolved oil counts toward the calculation of Clean Water Act penalties. (Rec. Doc. 10752.) This motion was allegedly prompted by BP/Anadarko expert Dr. Curtis Whitson's scientific opinion that 10% of the oil discharged (plus or minus 3%) dissolved before reaching the surface. Like the Minimum Flow motion, this motion also is not dispositive.

*First*, this particular motion is premised on a flawed interpretation of what BP and Anadarko have "argued" and whether these arguments have been made "through their expert."

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 18, 2013
Page 3


Dr. Curtis Whitson is a scientific expert who has provided a scientific opinion that approximately 10% of the oil that flowed into the ocean (plus or minus 3%) dissolved before it reached the surface — nothing more. Dr. Whitson is not counsel for BP or for Anadarko, and accordingly he has not taken (because he cannot take) a position regarding the legal significance of this scientific opinion.

From this scientific opinion, the United States leaps to a conclusion that BP and Anadarko "have posited that oil that reaches the Gulf of Mexico's waters, but dissolves into the water before reaching the Gulf's surface should be ignored." (Motion, Rec. Doc. 10752, at 1; Memo, Rec. Doc. 10752-8, at 1.) But tellingly the United States' motion does not cite any statement taking such a position either by BP or by Anadarko — and indeed to the best of our knowledge neither BP nor Anadarko has ever made a statement about dissolved oil's legal status under the Clean Water Act. The entire motion is premised on a straw man legal argument that, for reasons of its own, the United States wants to bring forward and address.

*Second*, although the United States characterizes the motion as one for partial summary judgment, this "dispositive" motion would not in fact dispose of any claims at issue in Phase 2. The appropriate time to seek a conclusion of law that dissolved oil counts toward assessing Clean Water Act penalties is at the conclusion of the Phase 2 trial when parties will submit extensive proposed findings of fact and conclusions of law as they did in the wake of the Phase 1 trial. If the United States wants to obtain a legal ruling of this sort then post-trial briefing is the time for doing so. On the other hand, if the United States believes that no discussion of the amount of oil that dissolved in the Gulf needs to taken up at trial at all, then the issue should be taken up as a motion *in limine* to preclude Dr. Whitson from testifying at trial regarding his opinion that 10% of the oil discharged (plus or minus 3%) dissolved before reaching the surface.

In either case, however, the issue is properly teed up by some procedural vehicle other than the United States July 15 "dispositive motion" filing.

**Halliburton's Indemnification or Contribution Motion**

Along similar lines, Halliburton filed a motion seeking a ruling that Halliburton is not liable for contribution or indemnification for any Clean Water Act penalties assessed against BP. (Rec. Doc. 10753.) This motion also does not need to be addressed at this time, as it has no bearing on the upcoming Phase 2 trial.

Significantly, the segment of the Phase 2 trial that is most directly relevant for CWA penalties is Quantification, and the Court has already determined that Halliburton will not be participating in that segment of the Phase 2 trial. Putting off this motion to the appropriate time, therefore, will not affect Halliburton's participation in the Phase 2 trial.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 18, 2013
Page 4

More importantly, Halliburton's motion does not address any issue that needs to be litigated during the Phase 2 Quantification trial. Instead, Halliburton's motion involves allocation of penalties among BP, Transocean, and Halliburton — a legal question to be addressed *after* trial. Indeed, Halliburton's own motion depends on legal arguments rather than factual ones, showing that its arguments do not depend on any facts that will be developed during the Phase 2 Quantification trial.

Indeed, the Court will recall that Halliburton attempted to argue against the Economic Settlement's approval on very similar grounds — that the PSC or BP would seek contribution against it for payments made under the Economic Settlement. (Rec. Doc. 6350 at 2; Rec. Doc. 7036 at 7; No. 10-7777, Rec. Doc. 91 at 14.) There, the Court held that Halliburton did not have standing to assert this position. (Rec. Doc. 6418 at 17; Rec. Doc. 7038 at 2; Rec. Doc. 8138 at 77). Here, the Court's ruling in the settlement approval context counsels against spending time at this juncture on Halliburton's July 15 filing.

*     *     *

For the foregoing reasons, BP respectfully requests that the Court consider indefinitely postponing the deadline for responding to the three motions discussed above (Rec. Docs. 10752, 10753, & 10756).

Respectfully submitted,

Robert R. Gasaway

cc (by electronic mail):

United States' MDL Counsel
Plaintiffs' Liaison Counsel
State and Local Government Liaison Counsel
Defense Liaison Counsel
Joel M. Gross