UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | § § § § § § § § § § | MDL No. 2179 SECTION: J JUDGE BARBIER MAG. JUDGE SHUSHAN |
| Applies to:  All Cases | | |

**ALIGNED PARTIES' RESPONSE TO BP'S MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF EDWARD R. ZIEGLER, P.E.**

Halliburton Energy Services, Inc., on behalf of the Aligned Parties, files this Response to BP's Motion to Exclude Certain Opinions and Testimony of Edward R. Ziegler, P.E. (the "Motion") (Rec. doc. 11055) as follows.

## I. INTRODUCTION

Edward R. Ziegler has been designated by the Aligned Parties as a Source Control Expert for the Phase Two trial.  Ziegler is a third-generation oil and gas operator, drilling rig owner, and an experienced petroleum engineer.  *See* Exhibit 1, Expert Report of Edward Ziegler at 7.  Since 1973, Ziegler has worked in the offshore drilling industry, both domestically and internationally, including projects in the Gulf of Mexico, Alaska, Guyana, Peru, offshore Ireland, the Nile Delta in Egypt, and offshore Indonesia.  *Id*. at 9.  Ziegler has owned and worked on drilling rigs and well control equipment, and currently owns and operates three land-based drilling rigs.  *Id*. at 8-9.  He is trained in well control, and has planned, authored, reviewed or utilized oil spill plans, emergency plans, and other response and contingency plans for offshore, onshore, and international operations.  *Id*.  Ziegler has extensive training and experience interacting with

ALIGNED PARTIES' RESPONSE TO BP'S MOTION TO EXCLUDE CERTAIN
OPINIONS AND TESTIMONY OF EDWARD R. ZIEGLER, P.E.                                                                 Page 1

regulatory agencies that propound and enforce safety regulations, including OSHA, USGS/MMS, and their successor entities (BOEMRE, BOEM, BSEE). *Id* at 9-10. Ziegler also holds a Certified Safety Professional credential sponsored by the Board of Certified Safety Professionals, with a designated specialty in the "Management Aspects" of the safety field. *Id*. at 8. Ziegler is fully qualified to testify regarding source control in Phase 2.

## II.  ARGUMENT

### A.  Ziegler Properly Opines About Applicable Federal Regulations[1]

BP asks the Court to exclude Ziegler's opinions interpreting or analyzing relevant federal regulations and opinions as to whether BP violated these regulations. BP alleges that such opinions are impermissible legal conclusions. Motion at 3-5. As the Court is keenly aware, this case involves a highly technical and heavily regulated industry, and a myriad of complex and technical regulations. According to BP's flawed logic, only trained attorneys can understand and meaningfully apply such regulations - not rig workers, contractors, drilling engineers, or experts such as Ziegler, who has worked in the industry for 40 years and has specialized knowledge and training about regulatory compliance and safety.

The Aligned Parties respectfully submit that the Court will benefit from Ziegler's testimony. As the Court noted in Phase One while addressing a similar challenge to Dr. Robert Bea, in a bench trial there is obviously no risk that a jury will be confused about testimony bearing on legal issues, and the Court is quite capable of limiting the testimony of such an expert if it concludes that the witness is impermissibly encroaching on territory reserved for the Court. *See* Trial Tr. 271:8-19.

---

[1] BP filed a separate motion to exclude fact or opinion testimony regarding law (Rec. doc. 11039) also addressing this same topic as to Ziegler. The Aligned Parties' opposition to that motion is incorporated herein.

**ALIGNED PARTIES' RESPONSE TO BP'S MOTION TO EXCLUDE CERTAIN**
**OPINIONS AND TESTIMONY OF EDWARD R. ZIEGLER, P.E.**                                              **Page 2**

In fact, BP affirmatively claims that it *complied* with the applicable regulations – necessarily using expert testimony to construe, define, and opine on the very federal regulations it wants the Court to exclude from Ziegler's testimony. For example, BP's designated expert Richard Carden opines that ███████████████████████████████████████████ ███████████████████████████████████ *See* Exhibit 2, Expert Report of Richard Carden at 14 (citing Lars Herbst of the MMS). Carden states that Admiral Allen made clear that ██████ ████████████████████████████████████████████ *Id*. at 15. Carden opines that ███████████████████████████████████████████████████████ ████████████████████ *Id*. at 26. More generally, Carden opines that BP prudently prepared for an event like Macondo, that it complied with the applicable regulations, and that it acted in conformity with industry customs and practices. *Id*. at 2-4, 7, 12-17, 21-26. BP cannot on one hand present expert opinions that it complied with applicable regulations, industry standards, and customs, and on the other hand claim that contrary expert opinions are impermissible "legal conclusions." BP also cannot argue that the lay assertions of non-lawyers such as Admiral Allen and Lars Herbst prove that BP complied with regulations, while at the same time contend that Ziegler's studied opinions to the contrary must be excluded as impermissible "legal conclusions."

The Motion further ignores the Court's January 31, 2012 Order on this same topic in Phase 1. (Rec. doc. 5495). The Order correctly permitted experts in applicable regulations to discuss and "opine whether a person's conduct is or is not in accord with the regulations" or "whether or not a person's conduct violated the law." (Rec. doc. 5495 at 2). The Order also correctly permitted an expert to utilize words and phrases that have both a legal meaning and a common or lay meaning. *Id*. at 2-3. Accordingly, the Court's prior rulings *permitted* various

**ALIGNED PARTIES' RESPONSE TO BP'S MOTION TO EXCLUDE CERTAIN
OPINIONS AND TESTIMONY OF EDWARD R. ZIEGLER, P.E.**                                                          Page 3

2271957 v3-24010/0002 PLEADINGS

experts to opine about the interpretation of applicable regulations and whether such regulations were violated.

The Order also correctly recognized that experts can testify about legal matters that involve questions of fact. *Waco Int'l, Inc. v. KHK Scaffolding Houston, Inc.*, 278 F.3d 523, 532-33 (5th Cir. 2002). An expert may properly opine on a topic that embraces the ultimate legal issue if the opinion is otherwise admissible. Fed. R. Evid. 704; *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977); *Huddleston v. Herman & MacLean*, 640 F.2d 534, 552 (5th Cir. 1981), *aff'd in part, rev'd in part on other grounds*, 459 U.S. 375 (1983). The Court permitted witnesses to testify at the Phase One trial on topics bearing on legal questions, recognizing that it is easier to assess the scope of a witnesses' testimony at trial than attempt to make definitive ruling *in limine*. *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("The task of separating impermissible questions which call for overbroad or legal responses from permissible ones is not a facile one.") The admissibility of an expert's conclusions depends on the nature of the case and necessarily involves a large degree of judicial discretion. *Milton*, 555 F.2d at 1203-05. Because this is a bench trial and the Court can clearly discern whether an expert has overstepped his or her bounds, BP's attempt to exclude Ziegler's interpretation of certain regulations should be rejected.

### B. Ziegler Properly Opines About BP's Incentive To Hide Its Misrepresentations About The True Macondo Flow Rate

Blowouts often result in "bridging," which occurs when a blowout spontaneously stops without human intervention (*i.e.* "bridges off"). Bridging occurs when uncontrolled, high volume flow causes the flow path to be blocked with ejected material and/or the flowing portions of the reservoir collapse in such a way as to preclude further flow.

From his lifetime of experience in the oil industry, Ziegler opines that BP had an incentive to avoid source control efforts that would reveal the true flow rate of the well. *See* Exhibit 1, Ziegler Report at 20 and n.75; 29 and n.120. According to Ziegler, BP's inaction and ineffective source control attempts may be explained, in part, by the fact that there was a significant chance the Macondo well would spontaneously bridge off, flow would stop, no source control attempts would need to be made, and BP's misrepresentations about the true flow rate would not be discovered.[2] *See id.* at 37.

BP cites to pages 274 through 276 of Ziegler's deposition to support its argument that Ziegler impermissibly opines about BP's "state of mind." Ziegler, however, *disclaimed* any opinion about BP's state of mind, testifying, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Exhibit 4, Ziegler Dep. 275:14-15. Instead, Ziegler explained, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id*. at 275:15-18 (emphasis added). It is entirely permissible for an expert with vast experience in the relevant operational environment to opine about a party's incentives to act in a certain manner. Furthermore, it is entirely permissible for Ziegler to opine on BP's "state of mind" based upon facts, and to offer opinions about what—hypothetically—happened, based upon his experience in the industry and his knowledge of industry practices and source control.

---

[2] BP argues that Ziegler impermissibly opines about BP's state of mind regarding bridging, despite the fact that nine days after Ziegler's expert report was served, its own expert, Morris Burch, served a report in which he opined on this exact topic and expressly endorsed the main point of Ziegler's prior affirmative opinion. In his now withdrawn expert report, Burch opined that "it is common for blowouts to 'bridge' in a matter of days;" that data from MMS and SINTEF suggest that "a significant proportion of wells bridge;" and that "MMS data from 1971-1991 shows 70% of wells bridging," with almost 90% bridging in less than a week. *See* Exhibit 3, Expert Report of Morris Burch at 2, 7, n.10. According to Burch, since such a large percentage of blowouts bridge naturally, it would be a waste of money to have a capping stack available for such wells that will self-kill in a relatively short period of time. *Id*. at 2, 7-8, 32-38. BP therefore endorsed opinions that certain source control options need not be available or pursued because of bridging, but now contends that Ziegler impermissibly "speculates" that BP's delay in pursuing certain source control options may have been based on bridging.

**ALIGNED PARTIES' RESPONSE TO BP'S MOTION TO EXCLUDE CERTAIN
OPINIONS AND TESTIMONY OF EDWARD R. ZIEGLER, P.E.**                                                   **Page 5**

As Ziegler explained, it is simply a fact that if the Macondo well had bridged over, there would no longer be a need for source control techniques that would generate data that could be used to prove that BP had previously misrepresented the true flow rate of the Macondo well. Exhibit 1, Ziegler Report at 37; Exhibit 4, Ziegler Dep. at 274:4-276:7. BP wasted an inordinate amount of time pursuing source control options that failed, and failed to take meaningful action to stop the flow of oil. Exhibit 4, Ziegler Dep. 275:19-276:7. Thus, one explanation of what *could* have happened, based on these facts and Ziegler's experience and knowledge of the industry, is that BP "played for time" in its source control response.

Experts are permitted to opine about hypothetical explanations of what *could* have taken place. For example, in *Goldberg v. 401 N. Wabash Venture, LLC*, 2013 U.S. Dist. LEXIS 54509 (N.D. Ill. April 15, 2013), the expert opined that the Trump developer "would not have known" about an industry best practice to preclude HCU buyers from ownership and control of revenue producing facilities on the hotel property. 2013 U.S. Dist. LEXIS 54509, at *6. The plaintiff objected that the expert could not know what the Trump defendants knew and, thus, the proffered testimony was "a baseless opinion about a person's state of mind." *Id* at *8-9. The district court rejected plaintiff's argument because the expert was entitled to opine about this possible scenario based on his knowledge and experience of what had happened to similarly situated developers. *Id*. at *10, *14. The Court should similarly reject BP's attempt to exclude Ziegler's opinions about bridging and BP's incentive to avoid source control efforts.

C. **Ziegler's Opinions Fall Squarely Within Phase Two**

BP claims that Ziegler impermissibly opines about Phase One topics by conveniently categorizing Ziegler's opinions about burst disks as "Casing Design." This categorization is very

misleading. Dan Gibson, BP's Phase Two expert <u>on burst disks</u>, devotes six pages of his expert report to a separate section titled "Well Design." *See* Exhibit 5, Expert Report of Dan Gibson at 5-10. If Ziegler's opinions are Phase One because they relate to "Casing Design," then Gibson's "Well Design" opinions are even more objectionable.

Further, BP's contention that the rupture or collapse disks are exclusively a Phase One topic is directly contrary to its *primary defense* to claims that it took too long to shut in the well. *See* Exhibit 6, Expert Report of Iain Adams at 4, 12, 15-17, 23-24; Exhibit 5, Expert Report of Dan Gibson at 1-46. BP's theory is that one or more of these rupture disks could have been open, and that if these disks were open, then certain source control options could have created a catastrophic underground blowout that allegedly could not have been contained by any known source control technique. BP contends that it took the time required to assess data relevant to well integrity and burst disks, and employed other source control options that would minimize the risk of an underground blowout. Indeed, BP designated Dan Gibson to opine on these topics, and his report is devoted almost exclusively to the topic of burst disks. *See* Exhibit 5, Expert Report of Dan Gibson at 1-46. Iain Adams is another BP expert who opines at length about the risk of an underground blowout based on the possibility of an open burst disk. *See* Exhibit 6, Expert Report of Iain Adams at 4, 12, 15-17, 23-24; Exhibit 7, Rebuttal Report of Iain Adams at 2-6.

In response to BP's defense regarding the presence of burst disks, Ziegler opines that because BP chose to install the burst disks in the well in the first place, it should not escape liability on this basis. Rather, BP should have developed a robust plan to contain a blown out well *that contains burst disks*. BP cannot make burst disks its central defense in Phase Two,

**ALIGNED PARTIES' RESPONSE TO BP'S MOTION TO EXCLUDE CERTAIN
OPINIONS AND TESTIMONY OF EDWARD R. ZIEGLER, P.E.**                                                          **Page 7**

 2271957 v3-24010/0002 PLEADINGS

while simultaneously arguing that any contrary opinions about burst disks are exclusively an issue for Phase One.

BP also contends that Ziegler offers improper Phase One opinions about the *Deepwater Horizon* BOP, which "impacted the BOP's ability to act as an effective barrier to a blowout." Motion at 5. This contention is false. Ziegler did not opine that the BOP failed to prevent the "blowout," and the cited portion of his report does not even contain the word blowout in the relevant text. Ziegler instead discusses ROV intervention to stop the flow of oil *after* the blowout on April 20, 2010. *See* Exhibit 1, Ziegler Report at 31-32 . That is a Source Control opinion within Phase Two.[3] Because Ziegler's opinions regarding the burst disks and the post blowout ROV issues are relevant to Phase Two, the Court should deny BP's attempts to exclude such opinions.

### III. CONCLUSION

For the foregoing reasons, the Aligned Parties respectfully request that BP's Ziegler Motion be denied.

---

[3] Transocean joins in the whole of this opposition except for this last paragraph relating to Ziegler's ROV opinions.

**ALIGNED PARTIES' RESPONSE TO BP'S MOTION TO EXCLUDE CERTAIN
OPINIONS AND TESTIMONY OF EDWARD R. ZIEGLER, P.E.**                                                       **Page 8**

Respectfully submitted,

**GODWIN LEWIS PC**

**By:**  /s/  *Donald E. Godwin*
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
Don.Godwin@GodwinLewis.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
Bruce.Bowman@GodwinLewis.com
Jenny L. Martinez
State Bar No. 24013109
Jenny.Martinez@GodwinLewis.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
Floyd.Hartley@GodwinLewis.com
Gavin E. Hill
State Bar No.  00796756
Gavin.Hill@GodwinLewis.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332
and
R. Alan York
State Bar No. 22167500
Alan.York@GodwinLewis.com
Jerry C. von Sternberg
State Bar No.  20618150
Jerry.vonSternberg@GodwinLewis.com
Misty Hataway-Coné
State Bar No.  24032277
Misty.Cone@GodwinLewis.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone:  713.595.8300
Facsimile:  713.425.7594

**ATTORNEYS FOR DEFENDANT HALLIBURTON ENERGY SERVICES, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Halliburton Energy Services, Inc.'s Response to BP's Motion to Exclude Certain Opinions and Testimony of Edward R. Ziegler, P.E. has been served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this 3rd day of September, 2013.

/s/ Donald E. Godwin
Donald E. Godwin

**ALIGNED PARTIES' RESPONSE TO BP'S MOTION TO EXCLUDE CERTAIN
OPINIONS AND TESTIMONY OF EDWARD R. ZIEGLER, P.E.**                                                                 **Page 10**

2271957 v3-24010/0002 PLEADINGS