**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater | : | MDL No. 2179 |
| Horizon" in the Gulf of Mexico, on | : | |
| April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates To: All Actions | : | JUDGE BARBIER |
| | : | MAGISTRATE JUDGE |
| …………………………………………….. | : | SHUSHAN |

**BP AND ANADARKO'S MOTION IN OPPOSITION TO**
**THE UNITED STATES' MOTION TO PRECLUDE**
**PURPORTED SURREBUTTAL EXPERT OPINION TESTIMONY**

BP and Anadarko agree that expert opinions not within the four corners of an expert's written report are inadmissible. But here the United States is invoking that rule in a way that undermines the precise policy it is designed to enforce — full and fair disclosure of an expert's opinions within the body of his report.

It is a matter of record that the testimony being attacked by the United States in this motion was given by BP experts in response to "rebuttal" reports that Judge Shushan found came close to the line of improper rebuttal and in many instances crossed it. *See* Order Regarding BP/Anadarko's Motion to Strike, at 4-7, 10 (June 24, 2013) (Rec. Doc. 10477). On the very topics involved in this motion — fluid properties (Dr. Whitson's subject area) and rock compressibility (Dr. Zimmerman's) — the Court struck portions of the United States' rebuttal reports as untimely in light of the failure of the United States to include the stricken subjects in its opening expert reports and, as described below, held that others were very close to improper. *Id.* Fluid properties and rock compressibility are both fundamental issues for the United States, who bears the burden of proof on quantification. Yet the United States provided *no* expert analysis of rock compressibility in its opening expert reports, and also did not disclose the

methodology for fluid-volume conversion that its expert is now asserting. The United States thus created the "problem" that it is now complaining about by omitting from opening expert reports opinions needed to meet the plaintiff's burden of proof, then belatedly attempting to offer new, affirmative opinions in "rebuttal" reports, and then complaining when the BP/Anadarko experts testify in their depositions in defense of their opinions against the "rebuttal" attacks.

Specifically, the United States is attempting to preclude BP/Anadarko experts Dr. Whitson and Dr. Zimmerman from testifying in defense of their original *properly disclosed* opinions in response to criticisms raised by the United States for the first time in "rebuttal" reports. It is precisely and only because the United States made the scope of its expert testimony a moving target by withholding affirmative opinions until rebuttal and unveiling new opinions in depositions that BP and Anadarko's experts have had to be prepared to respond to belated opinions offered by United States experts. Against this backdrop, it would be fundamentally unfair for the United States to succeed, not only in getting its own belated testimony into the record, but also in precluding Dr. Whitson and Dr. Zimmerman from explaining their reasons for maintaining their original opinions. Permitting such a tactic would turn the Federal Rule 26 policies favoring full and fair expert disclosure on their head.

## <u>BACKGROUND</u>

On March 22, 2013, the United States served its initial expert reports. Under the Federal Rules of Civil Procedure, those reports should have contained a complete disclosure of the opinions necessary for the United States to meet its burden of proving the quantity of oil spilled. They did not. In particular, none of the United States expert reports presented a scientific analysis of rock compressibility, a key input to the calculations of cumulative flow offered by United States experts, as well as BP/Anadarko experts. Indeed, if the United States' expert uses

the same number for compressibility as BP and Anadarko, the United States expert gets very close to the same number for cumulative flow as do BP and Anadarko's experts. (*Compare* Ex. 1, Kelkar (United States) Initial Report at 45 (3.4 MMstb estimate if rock compressibility is assessed at 6 microsips), *with* Ex. 2, Blunt (BP/Anadarko) Report at 6-7 (3.26 MMstb estimate if rock compressibility is assessed at 6 microsips).)

After BP and Anadarko timely presented on May 1 a scientific analysis of rock compressibility in the expert report of Dr. Zimmerman, the United States responded on June 10 by presenting its very first scientific opinions on that subject from "rebuttal" experts Dr. Roegiers and Dr. Huffman. *See* Ex. 3, Huffman Rebuttal Report at 36-40; Ex. 4, Roegiers Rebuttal Report at 2-3, 6-11, 14-24. Now, by this motion, the United States seeks to preclude Dr. Zimmerman from defending his original opinions, disclosed on May 1, from this belated attack by Dr. Roegiers and Dr. Huffman. *See generally* Ex. 5, Zimmerman Report.

Likewise, on June 10, 2013, the United States submitted a "rebuttal" report from Dr. Aaron Zick purporting to rebut BP and Anadarko's Dr. Curtis Whitson on the basis of a brand new affirmative theory regarding how to convert the volume of hydrocarbons released on the sea floor to their volume at "stock tank conditions." Ex. 6, Zick Rebuttal Report at 12. The United States also seeks to preclude BP expert Dr. Whitson from defending his May 1, 2013 report setting forth his opinions on the stock-tank-barrel conversion issue. Ex. 7, Whitson Report at 16-18, 30-32.

### A. Dr. Curtis Whitson

Dr. Curtis Whitson, BP and Anadarko's expert on fluid properties, provided a comprehensive expert report detailing his work both to predict the characteristics of the spilled fluid at various pressures and temperatures and, relevant here, to convert a given volume of oil released from the reservoir (at high temperature and pressure) to a volume at the "stock tank"

3

conditions of 60 degrees Fahrenheit and approximately sea-level pressure — used for computing a Clean Water Act penalty.

One method that Dr. Whitson used for analyzing that process is called a single-stage flash separator process — which assumes that gas is separated from liquid oil in one single stage. *See* Ex. 7, Whitson Report at 17.  (BP/Anadarko experts have used this single-stage flash process for converting to stock tank barrels, and BP/Anadarko will argue at the appropriate time that this method is the appropriate one for converting to stock tank conditions under the CWA.)

Dr. Whitson also developed another analytical method called an "ocean-separator" method.  *See id.* at 16-18, 30-32.  This method attempts to model, as accurately as practicable, the actual thermodynamic path the spilled hydrocarbons took as they made contact with and rose through the Gulf of Mexico waters.  As explained below, it is this alternative method that is at issue here.

The United States' expert on fluid properties, Dr. Aaron Zick, did not present an ocean-separator method in his original expert report.  Instead, he discussed a different method called a "four-stage flash" separation.  Ex. 6, Zick Initial Report at 14-16.  In his June 10 rebuttal expert report, Dr. Zick abandoned the four-stage flash separation method.  He then went on to affirmatively advance his *own* ocean-separator model claiming that *his* newly-offered ocean-separator model was more accurate than Dr. Whitson's.  *See* Ex. 7, Zick Rebuttal Report at 12.

Dr. Zick's new theory is indisputably outside the four corners of his original report.  In his deposition, Dr. Zick admitted that he could have presented in his original report an ocean-separator model had he wanted to use and disclose such an analysis at that time.  In fact, Dr. Zick admitted that he had considered doing just that, but testified that he decided against presenting an

"ocean-separator" model at the outset because he felt that the model would "meet with more resistance":

> When I wrote my original Report, *I chose not to try to propose [] an ocean process*, even though I considered one, *because I thought that it was almost certainly to meet with more resistance* [] than I wanted to -- to try to address in that original Report ....

Ex. 9, Zick Dep. at 278:22–279:8 (emphasis added).

> An ocean separation process, it [] requires a number of assumptions, and [] *I felt that there were -- there would more likely be objections from all the defense Parties* to [] an ocean separation process, than to an Industry Standard type of four-stage process. Because the results of the two were quite similar, I just didn't see the need to -- to introduce two alternatives, *one which might be controversial*, when [] either one would give similar results.

*Id*. at 280:1–11 (emphasis added).

Dr. Zick thus withheld his ocean-separator model until his "rebuttal" report, at which point BP and Anadarko could no longer respond to the accuracy of Dr. Zick's ocean-separation model.

When questioned in deposition about why he chose to abandon his original approach in favor of his new ocean-separator, Dr. Zick testified that by "open[ing] the door to the idea of an ocean-process," Dr. Whitson had allowed him to present "*my version* of that process." *Id.* at 279:9-10, 281:10–18 (emphasis added). He further testified as follows:

> Q. Why did you change your mind on the process that you recommended for use in this case between your original Report and [] your Rebuttal Report?
>
> A. Well, as I just said, my opinion was that the most efficient available process should be -- should be used. When I wrote my original Report, I chose not to try to propose a -- an ocean process, even though I considered one, because I thought that it was almost certainly to meet with more resistance. . . . *But since Dr. Whitson sort of opened the door to the idea of an ocean process, and I didn't have to do that*, I was able to also lend my support behind that idea. . . .

*Id.* at 278:14–279:13 (emphasis added) (objections omitted).

Because Dr. Zick's rebuttal report presented an entirely new ocean-separator method, BP/Anadarko moved promptly after receiving Dr. Zick's report to strike the new analysis. *See* Letter from R. Gasaway to Shushan, J. (June 16, 2013) (Rec. Doc. 10445).  In considering BP/Anadarko's challenge, the Court acknowledged that Dr. Zick "does [] appear to affirmatively abandon his calculations in his initial report in favor of the ocean-separator calculations contained in the rebuttal report." *See* Order regarding BP/Anadarko's Motion to Strike, at 10 (June 24, 2013) (Rec. Doc. 10477).  The Court framed this issue as "whether [Dr. Zick's] calculation is a new model or whether his calculation simply corrects for what he contends is a wrong assumption by Whitson." *Id.*  On the limited record developed at the time, the Court declined to strike Dr. Zick's new ocean-separator process entirely, ruling that Dr. Zick could be "examined on both his original four stage analysis as well as his ocean process model which he calculated in rebuttal to Whitson's ocean separator method." *Id.*  At the time of the motion to strike, however, Judge Shushan did not have the benefit of Dr. Zick's deposition testimony in which he admitted that, in creating his own version of an ocean-separator in his rebuttal report, he sought not only to rebut Dr. Whitson's competing model, but to do so in an untimely fashion so as to avoid what he knew would be criticism of that model. *See* Ex. 9, Zick Dep. at 278:22–279:8, 280:1–11.  Despite Dr. Zick's acknowledgement that he is attempting to tender a new theory for the first time on rebuttal, the United States has not withdrawn Dr. Zick's opinion advancing his own ocean-separator method for converting the hydrocarbons discharged from the wellhead to stock tank barrels and has placed Dr. Zick on its list of experts to testify.

Having reviewed Dr. Zick's belatedly presented ocean-separator model, Dr. Whitson testified at deposition that he maintains his opinion that his ocean-separator model is the more physically realistic, Ex. 10, Whitson Dep. at 397:9-21, because Dr. Zick's process makes certain

unrealistic assumptions. *Id.* at 392:10-397:8. Dr. Whitson also explained, in light of Dr. Zick's rebuttal report, that he maintained his views regarding "solubility" — the effect of gases dissolving as the discharged hydrocarbons rose to the surface. *Id.* at 397:22-400:8. Finally, Dr. Whitson testified that he maintained his views that his "equation of state" (EOS) — which describes the phase and volume of oil as a function of pressure, temperature, and composition — was a better fit for the relevant data, not Dr. Zick's. *Id.* at 400:9-407:8.

### B. Dr. Robert Zimmerman

In contrast to the United States' indisputable failure initially to provide any scientific expert analysis on the critical subject of rock compressibility, BP and Anadarko's expert Dr. Zimmerman's report presented fifty-nine pages of detailed technical discussion analyzing experimental data from tests performed by Weatherford Laboratories on Macondo rock samples and from relevant scientific literature to determine the rock compressibility (uniaxial pore volume compressibility) of the Macondo reservoir sandstones. *See generally* Ex. 5, Zimmerman Report. As noted by the United States, Dr. Zimmerman's report contains an executive summary at the outset that identifies the "primary opinions" formed by Dr. Zimmerman in the course of his work. *See id*. at 6-7. Listed as one of those "primary opinions" is Dr. Zimmerman's view that the types of tests performed by Weatherford Laboratories (upon which Dr. Zimmerman relies) could be used to accurately determine the rock compressibility of the reservoir:

> "It is common in petroleum engineering to test rotary sidewall core rock samples —the type of samples available from the Macondo Reservoir — for pore volume compressibility and to analyze and rely on the results of those tests."

*Id*. at 6.

Dr. Zimmerman elaborates on this opinion later in his report, explaining as follows:

- "It is common to perform compressibility testing on rotary sidewall core rock samples as well as to analyze and rely on the results of those tests." *Id*. at 10.

7

- "For these tests, Weatherford used standard methods that are well accepted in the industry." *Id*. at 14.

- The Macondo rock samples tested did not exhibit damage such as would have rendered them unrepresentative of rock properties within the reservoir and therefore unsuitable for testing. *Id*. at 10 ("The eight cores I evaluate look sufficiently intact to be suitable for the types of testing I analyze.").

- "While the available rock samples represent only a small fraction of the reservoir, the data from testing those cores represents the best data we have available, and an entire field of petroleum engineering is based on relying on information obtained from core sample analysis." *Id*. at 59.

On June 10, 2013, the United States submitted its Phase 2 rebuttal reports, including a 75-page "rebuttal" report by Dr. Alan Huffman and a 25-page "rebuttal" report by Dr. Jean-Claude Roegiers. In these reports, Drs. Huffman and Roegiers questioned the reliability of the Weatherford core tests for obtaining accurate measurements of Macondo rock compressibility. *See* Ex. 3, Huffman Rebuttal Report at 36-40; Ex. 4, Roegiers Rebuttal Report at 2-3, 6-11, 14-24.

Dr. Zimmerman responded to these criticisms at deposition by explaining the basis of his opinion and why, despite critiques from Dr. Huffman and Dr. Roegiers, he maintains the opinion set forth within the four corners of his expert report that the results from the Weatherford core tests can be used to reliably estimate the rock compressibility of Macondo sandstones. Ex. 11, Zimmerman Dep. at 418:11-440:14, 468:23-471:9; *see id.* at 470:24-471:3 ("I think it's reasonable to expect that I might receive questions asking me to comment about other purported values that have been proposed for the uniaxial pore volume compressibility …."). In an effort to be fully transparent, Dr. Zimmerman produced the document now cited by the United States entitled "Dr. Robert Zimmerman's List of Opinion Topics Responding to United States Rebuttal Experts," identifying 10 responses which Dr. Zimmerman referred to as "additional opinions." *See* U.S. Motion, Attachment 2 (Dep. Ex. 11500). Each of the 10 responses listed in the

document fall within the plain scope of what the United States itself has characterized as the "primary opinions" in Dr. Zimmerman's initial expert report and specifically within his pre-existing opinion that measurements from the Weatherford tests can be used to reliably determine Macondo rock compressibility. *See*, *e.g.*, Zimmerman Report at 10, 14, and 59.

## ARGUMENT

The Court should reject the United States' attempt to exclude Dr. Whitson's and Dr. Zimmerman's trial testimony defending opinions contained within the four corners of their reports. The United States glosses over the fundamental distinction between the prohibition on surrebutal *reports*, which BP/Anadarko have not presented, U.S. Mem. at 5, and an expert's ability to provide oral testimony explaining why he or she still maintains the opinions set forth in an original expert report, even after having thoughtfully considered an opposing expert's contrary opinion. *See Minebea Co., Ltd. v. Papst*, 231 F.R.D. 3, 8 (D.D.C. 2005) (distinguishing a supplemental report, which the Court largely struck, from responsive testimony during direct examination, which the Court permitted).

As this and other federal courts have noted, Rule 26(a)'s requirement of a "complete statement of all opinions" does *not* mean that Rule 26(a) requires testimony that is a verbatim transcript of the expert's report:

> Rule 26(a)(2)(B) 'does not limit an expert's testimony simply to reading his report. No language in the rule would suggest such a limitation. The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report."

*See Frazin v. Haynes and Boone LLP, et al.*, 2008 WL 5214036, at *31 n.39 (Bankr. N.D. Tex. Sept. 23, 2008); *see also* Order Regarding BP's Motion in Limine to Preclude Expert Opinion Testimony Not Disclosed in the Expert's Rule 26(a) Written Report (Jan. 31, 2012) (Rec. Doc. 5505) (declining to exclude testimony not literally contained within expert's written report where

such testimony was consistent with the remainder of expert's report and fairly encompassed with opinions expressed therein). Rather than requiring "verbatim consistency," Rule 26 requires only that an expert's testimony be consistent with his or her report and constitute a "reasonable synthesis and/or elaboration of the opinions contained [therein]." *nCube Corp. v. SeaChange Int'l, Inc.*, 809 F. Supp. 2d 337, 347 (D. Del. 2011). Moreover, in determining whether the testimony in question meets these standards, courts consider whether the objecting party was aware of the subject matter of the testimony "based on the contents of the report and elaborations made during any deposition testimony." *nCube Corp.,* 809 F. Supp. 2d at 347; *see also Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007).

## I. Dr. Whitson's Testimony Provides His Reasons for Maintaining His Timely Disclosed Opinions.

The United States would have the Court ignore the current state of the scientific debate in the Quantification Segment of the Phase 2 trial.

The United States has not redacted or otherwise withdrawn Dr. Zick's ocean-separator opinions, offered for the first time in his rebuttal report, and the United States has placed Dr. Zick on its list of experts to be called at trial. When the United States calls Dr. Zick in its case-in-chief, his rebuttal report — abandoning the four-stage method in favor of a newly-adopted ocean-separator model — may come into evidence. And when Dr. Zick testifies, the Court may hear his entire testimony about both the accuracy of his ocean-separator method *and* the alleged inaccuracy of Dr. Whitson's work. *See* Order Regarding U.S. Rebuttal Proposal (Aug. 26, 2013) (Rec. Doc. 11129).

Dr. Whitson is thus expected on direct examination during BP and Anadarko's case-in-chief to *defend* his own work by responding to Dr. Zick's criticisms. Even so, the United States argues that the Court should decline to hear any reasons Dr. Whitson may have for adhering to

10

his original work even in light of Dr. Zick's contrary testimony.  But clearly, expert testimony at trial that explains reasons for adhering to opinions within the four corners of the expert's report, even in light of issues raised by opposing counsel or opposing experts, is not, as the United States incorrectly claims, a new opinion, nor is it a prohibited "surrebuttal report."  *Minebea*, 231 F.R.D. at 8; *but see* U.S. Mem. at 5.  To hold otherwise would constrict expert testimony to simply reading the written report, a result inconsistent with holdings by this and other Courts.  Rec. Doc. 5505; *Frazin*, 2008 WL 5214036, at *31 n.39.

The fundamental unfairness of the United States' withholding Dr. Zick's affirmative testimony until rebuttal and then crying foul when Dr. Whitson attempts to defend his analysis from Dr. Zick's criticisms cannot be overstated.  Although the Court ruled that Dr. Zick "could be examined on both his original four stage analysis as well as his oceanic process," that ruling was premised on "whether his calculation is a new model or whether his calculation simply corrects for what he contends is a wrong assumption …."  Order at 10 (Rec. Doc. 10477).  Dr. Zick revealed in deposition that his ocean-separator method is not actually "rebuttal," but rather affirmative testimony that he specifically contemplated offering in his initial report yet withheld precisely in order to avoid the type of response that the United States now seeks to foreclose with this motion:

> When I wrote my original Report, *I chose not to try to propose [] an ocean process*, even though I considered one, *because I thought that it was almost certainly to meet with more resistance* [] than I wanted to -- to try to address in that original Report Report ....

Zick Dep. at 278:22–279:8 (emphasis added).

By waiting to unveil Dr. Zick's ocean-separator process until *after* Dr. Whitson's expert report was due, the United States rendered it "physically impossible" for Dr. Whitson to include within his report the now-challenged testimony.  *See* Ex. 10, Whitson Dep. at 419:12–20.

11

Indeed, under such circumstances, the United States' motion turns this Court's "four corners" rule on its head. If United States experts like Dr. Zick can delay revealing their complete opinions until rebuttal out of concern, as Dr. Zick put it, that some of those opinions would meet too much "resistance," and then prevent BP/Anadarko's experts like Dr. Whitson from even responding to these belatedly disclosed opinions, Rule 26(a)'s completeness requirement and this Court's "four-corners" rule will be utterly subverted. The Court should not limit its own ability, as the United States requests, to seek scientific truth in this case. After all, "debate between adversaries is often essential to the truth-seeking function of trials," *Gardner v. Florida*, 430 U.S. 349, 360 (1977), and "considering expert evidence from only one party could severely undermine th[at] truth-seeking function." *Simon v. Epps*, 463 F. App'x 339, 347 (5th Cir. 2012).

## II. Dr. Zimmerman's Testimony Provides His Reasons for Maintaining His Timely Disclosed Opinions.

The United States further seeks to exclude testimony from Dr. Zimmerman that is pertinent to subjects discussed in his report. This transparent attempt to sow confusion by raising criticisms only in rebuttal and then preventing the Court from hearing any testimony from BP/Anadarko in response should be rejected for three reasons.

*First*, Dr. Zimmerman's testimony is squarely within the subjects raised in his initial report. Dr. Zimmerman's expert report expressly sets forth his opinion that the results of the Weatherford core tests can be used reliably to estimate rock compressibility. *See, e.g.*, Ex. 5, Zimmerman Report at 10. By including this view as one of his "primary opinions" in the 59 pages of his detailed report and then testifying that (among other things) the Weatherford core tests were conducted in accordance with industry standards and the core samples relied upon were suitable for testing, Dr. Zimmerman provided more than sufficient disclosure of the testimony the United States now seeks to exclude as outside the scope of his report. Under the

circumstances, the United States cannot credibly claim to have been surprised or prejudiced that Dr. Zimmerman, at his deposition, defended this opinion in the face of criticisms leveled by United States' experts.

But now the United States seeks to penalize BP and Anadarko's expert Dr. Zimmerman for having been forthcoming in his report, by asking for the preclusion of his defense of his opinions from attacks raised for the first time in United States rebuttal reports.  As the United States has repeatedly told this Court, an expert report need not try to anticipate each and every detailed response of an opposing expert.  *See* Letter from A. Chakares Opposing BP's Motion to Strike, at 1-2 (June 17, 2013) (Rec. Doc. 10446).  The case cited repeatedly by the United States, *In re Katina Canal Breaches Consolidated Litigation*, referred to rebuttal reports, but the principle is even more applicable here.  *Katrina* reasoned that a party need not anticipate each and every possible opposing opinion in writing initial reports, since rebuttal reports can pick up on unanticipated new issues.  2012 WL 2526980, at *1 (E.D. La. June 29, 2012).  But *Katrina* never says that its rule could shield a plaintiff from the consequences of wholesale withholding of scientific opinions on a central issue, as the United States has indisputably done here.

Indeed, notwithstanding the different posture in which the *Katrina* case was decided, *Katrina*'s underlying principle is clear — courts should recognize and allow reasonable flexibility in an expert's initial statement of his or her opinions in light of the fact that, once trial arrives, the expert must be allowed an opportunity to respond to anything new and pertinent that falls outside the expert's original statement of his or her analysis.  This principle is fully applicable here, where Dr. Zimmerman's report was the *only* "initial" scientific analysis of rock compressibility.  Here, it was the Defendants, BP and Anadarko, who took the initiative to submit scientific analysis in the first instance, only to have the Plaintiff United States belatedly

disgorge new opinions for the first time in rebuttal. *Katrina* never contemplated such gamesmanship, but its reasoning clearly justifies Dr. Zimmerman providing responsive explanations to support his continued adherence to the opinions he reasonably set forth in what was in effect (because of the United States' silence on the science of rock compressibility) an expert opening report.

Although the Court struck significant portions of Drs. Roegiers's and Huffman's reports, the Court also ruled that "criticism of the core tests is a valid rebuttal opinion." Order at 5 (Rec. Doc. 10477). If this criticism is within the appropriate bounds of rebuttal, Dr. Zimmerman's trial testimony defending his initial opinions in response to "criticism of the core tests" must necessarily be considered within the four corners of his report.

*Second*, as the Court has held, an expert should provide his entire testimony at the time he is called. *See* Order Regarding U.S. Rebuttal Proposal (Aug. 26, 2013) (Rec. Doc. 11129). Therefore, just as Dr. Whitson may provide oral testimony supporting his original opinions in response to issues raised in the United States' case-in-chief, so too can Dr. Zimmerman provide similarly supportive opinions in anticipation of the testimony of Drs. Huffman and Roegiers in the United States' rebuttal case.

*Finally*, the various criticisms listed on the document about which the United States complains, U.S. Motion, Attachment 2 (Dep. Ex. 11500), were all injected into the case only through the rebuttal reports of Drs. Roegiers and Huffman. Without any testimony from Dr. Zimmerman on these points, the Court will have only one side of the story on these complicated and important scientific issues that Dr. Zimmerman could not reasonably have anticipated in his own report. BP and Anadarko expect that the evidence and testimony presented at trial will establish that these concepts cast up only in Untied States experts' rebuttal reports — such as

disgorge new opinions for the first time in rebuttal. *Katrina* never contemplated such gamesmanship, but its reasoning clearly justifies Dr. Zimmerman providing responsive explanations to support his continued adherence to the opinions he reasonably set forth in what was in effect (because of the United States' silence on the science of rock compressibility) an expert opening report.

Although the Court struck significant portions of Drs. Roegiers's and Huffman's reports, the Court also ruled that "criticism of the core tests is a valid rebuttal opinion." Order at 5 (Rec. Doc. 10477). If this criticism is within the appropriate bounds of rebuttal, Dr. Zimmerman's trial testimony defending his initial opinions in response to "criticism of the core tests" must necessarily be considered within the four corners of his report.

*Second*, as the Court has held, an expert should provide his entire testimony at the time he is called. *See* Order Regarding U.S. Rebuttal Proposal (Aug. 26, 2013) (Rec. Doc. 11129). Therefore, just as Dr. Whitson may provide oral testimony supporting his original opinions in response to issues raised in the United States' case-in-chief, so too can Dr. Zimmerman provide similarly supportive opinions in anticipation of the testimony of Drs. Huffman and Roegiers in the United States' rebuttal case.

*Finally*, the various criticisms listed on the document about which the United States complains, U.S. Motion, Attachment 2 (Dep. Ex. 11500), were all injected into the case only through the rebuttal reports of Drs. Roegiers and Huffman. Without any testimony from Dr. Zimmerman on these points, the Court will have only one side of the story on these complicated and important scientific issues that Dr. Zimmerman could not reasonably have anticipated in his own report. BP and Anadarko expect that the evidence and testimony presented at trial will establish that these concepts cast up only in Untied States experts' rebuttal reports — such as

"Poisson ratio" and "Creep" — are merely an attempt to sow confusion about the important reservoir property of rock compressibility.

Here again, should the Court limit its receipt of any testimony from BP and Anadarko's side of these issues, the Court's truth-seeking function will be severely compromised. *See Simon v. Epps*, 463 F. App'x 339, 347 (5th Cir. 2012). Because Dr. Zimmerman's challenged deposition testimony constitutes a reasonable elaboration of opinions expressed within the four corners of his written report, the United States' motion should be denied.

## CONCLUSION

For the foregoing reasons, BP and Anadarko respectfully request that the Court deny the United States motion to preclude certain opinions and testimony from Drs. Whitson and Zimmerman.

Dated: September 3, 2013                                  Respectfully submitted,

By: /s/ Tony Fitch                                        By: /s/ Don K. Haycraft

Warren Anthony Fitch                                      Don K. Haycraft (Bar #14361)
(tony.fitch@bingham.com)                                  R. Keith Jarrett (Bar #16984)
Ky E. Kirby                                               LISKOW & LEWIS
(ky.kirby@bingham.com                                     One Shell Square
BINGHAM MCCUTCHEN LLP                                     701 Poydras Street, Suite 5000
2020 K Street NW                                          New Orleans, Louisiana 70139-5099
Washington, DC 20006                                      Telephone: (504) 581-7979
Telephone: (202) 373-6000                                 Facsimile:  (504) 556-4108

James J. Dragna                                           Richard C. Godfrey, P.C.
(jim.dragna@bingham.com)                                  (richard.godfrey@kirkland.com)
BINGHAM MCCUTCHEN LLP                                     J. Andrew Langan, P.C.
355 S. Grand Avenue, Suite 4400                           (andrew.langan@kirkland.com)
Los Angeles, California 90071                             Timothy A. Duffy, P.C.
Telephone: (213) 680-6400                                 (tim.duffy@kirkland.com)
                                                          KIRKLAND & ELLIS LLP
                                                          300 North LaSalle Street
                                                          Chicago, Illinois  60654
                                                          Telephone: (312) 862-2000

Deborah D. Kuchler, T.A. (Bar No. 17013)
KUCHLER POLK SCHELL
WEINER & RICHESON, LLC
1615 Poydras Street, Suite 1300
New Orleans, Louisiana 70112
Telephone: (504) 592-0691

*Attorneys for Anadarko Petroleum Corporation*

Robert C. "Mike" Brock
(mbrock@cov.com)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for BP Exploration & Production Inc. & BP America Production Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 3rd day of September, 2013.

/s/ Don K. Haycraft