# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:          (202) 879-5000          Facsimile:
(202) 879-5175                                       (202) 879-5200
robert.gasaway@kirkland.com          www.kirkland.com

August 30, 2013

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

Re:   MDL 2179 — Motion for Redaction of Additional Portions of United
States Expert Reports

Dear Judge Shushan:

As agreed during our Wednesday, August 28, telephone conference, BP and Anadarko hereby submit this letter brief addressing all outstanding issues regarding redactions to the United States' Quantification expert reports, which are currently scheduled to be submitted to Judge Barbier on September 5.

(On the Source Control side of Phase 2, BP is in the process of meeting and conferring regarding the redaction of the Aligned Parties' expert reports. We will report soon on the status of those discussions and any need for Court involvement to bring the discussion to closure.)

Accompanying the letter, we provide copies of the relevant reports with highlighting indicating text that should be redacted. We provide below a chart that summarizes the material that should be redacted. As indicated by the chart, the United States should redact the following material from its Quantification expert reports.

*First*, the reports of Dr. Kelkar contain several passages that should be redacted, including (i) material that the Court's June 24, 2013 Order directed the United States to redact; (ii) material produced solely by the work of Dr. Raghavan, Dr. Kelkar's now-withdrawn co-author; and (iii) material responding to BP and Anadarko's now-withdrawn expert Dr. Torres-Verdín

*Second*, Dr. Huffman's rebuttal report should be redacted to omit (i) a passage that BP inadvertently did not spotlight for redaction in prior briefing; (ii) a seismic analysis that responds

Chicago      Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 30, 2013
Page 2

to BP and Anadarko's now-withdrawn expert Dr. Torres-Verdín; and (iii) an affirmative analysis of "porosity" that Dr. Huffman's deposition testimony highlighted as improper rebuttal material.

| Report | Reason for Needed Redaction | Portions to Be Redacted |
|---|---|---|
| Kelkar Initial | Work performed only by withdrawn expert Dr. Raghavan | Page 28, two sentences and portions of Table 10 |
| Kelkar Rebuttal | June 24 Order re pore volume compressibility opinions | Pages 15 and 16 |
| | June 24 Order re aquifer opinions | Page C-1, ¶ 1 |
| | Work performed only by withdrawn expert Dr. Raghavan | Page 23, one sentence |
| | Dr. Huffman's seismic analysis responding to withdrawn expert Dr. Torres-Verdín. | Page 15 |
| Huffman Rebuttal | References to withdrawn expert Dr. Ann Marchand | Page 38, one sentence |
| | Responses to withdrawn expert Dr. Torres-Verdín | Pages 12 ¶¶ 1-2 and 4, 13-35 (Part III), 41 ¶¶ 3-4 carrying over to 42, and 75 ¶ 1 |
| | Improper "rebuttal" opinion consisting of affirmative porosity calculations and other affirmative petrophysical opinions derived from new well log analysis that fails to rebut any BP expert | Pages 14-18, 37 ¶ 2, 39 first full paragraph, 42 ¶ 3, and 75 ¶ 3 |

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 30, 2013
Page 3

## BACKGROUND

In its Order regarding the Phase 2 presentation of evidence, the Court stated redactions to expert reports are required "to eliminate duplicative opinions, opinions not being offered, and testimony stricken by the Court." Order Regarding Presentation of Evidence in Phase Two Trial, at 5, 8 (August 22, 2013) (Rec. Doc. 11087).

Regarding the third category — testimony stricken by the Court — the Court's June 24, 2013 Order struck opinions from certain United States rebuttal expert reports as improper rebuttal opinions. (Rec. Doc. 10477; *see also* Rec. Docs. 10683, 10556 (affirming the Order and denying partial reconsideration).)

Also applicable, this Court has previously held that testimony responding to withdrawn experts shall not be offered. (*See* Rec. Docs. 9036, at 2 (striking testimony of Halliburton rebuttal witness Kris Ravi), 10477 (striking opinions of Dr. Huffman in response to withdrawn expert Dr. Marchand).)

In accordance with the Court's timeline under which the United States has provided redacted expert reports, the last group, including Dr. Huffman's report, was received one week ago on the evening of Friday, August 23. Ex. 1, Email from S. Himmelhoch (Aug. 23, 2013). After meeting and conferring with the United States, the following issues are in dispute regarding the United States redactions to their reports.

## DISCUSSION

### I.   SIGNIFICANT ADDITIONAL REDACTIONS ARE NEEDED FOR DR. KELKAR'S REPORTS.

The United States should redact additional portions from Dr. Kelkar's initial and rebuttal reports as described below and as identified by the highlighted portions of the attached reports authored by Dr. Kelkar.

#### A.   Material Struck by the Court's June 24, 2013 Order

On June 24, 2013, the Court ruled that certain material in Dr. Kelkar's rebuttal report should be struck. *See* Order Regarding BP/Anadarko's Motion to Strike Rebuttal Experts for the U.S. (June 24, 2013) (Rec. Doc. 10477). The United States has not redacted two portions of Dr. Kelkar's rebuttal report that fall within this ruling.

- ***Kelkar Rebuttal Report Pages 15 and 16***. The Court's June 24 Order clearly stated, "Therefore, the sixth bullet point on p. 5, and *the fourth paragraph on p. 15 carried over through p.16 will be struck*." *Id.* at 6 (emphasis added). As the Court can see from the attached redacted rebuttal report of Dr. Kelkar, the

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 30, 2013
Page 4

United States has not redacted the struck material in "the fourth paragraph on p. 15 carried over through p. 16." Per the Court's June 24, 2013 Order, this paragraph must be redacted.

- **Kelkar Rebuttal Report Page C-1, Paragraph 1.** The Court's June 24 Order held that "[a]ssumptions and analysis regarding the existence of an aquifer is not proper rebuttal opinion when no expert on behalf of BP/Anadarko has opined regarding the affirmative existence of an aquifer." *See* Order Regarding BP/Anadarko's Motion to Strike Rebuttal Experts for the U.S., at 9 (June 24, 2013) (Rec. Doc 10477). The Court's order specifically applied this ruling to Appendix C to Dr. Kelkar's rebuttal report. *Id.* at 9 (emphasis added). Accordingly, per the Court's order, the United States has redacted *most* of Appendix C. As the Court will see, however, the United States has not redacted the first paragraph of Appendix C and related footnotes. This paragraph is squarely within the Court's Order which, notably, discussed language in the currently un-redacted first paragraph before holding that material regarding the improper aquifer analysis should be stricken. *Id.* The Court's order thus leaves no doubt that all of Appendix C (including its first paragraph and related footnotes) should be stricken.

**B.      Work Performed Solely by Withdrawn Expert Dr. Raghavan**

As the Court will remember, the United States long ago de-designated Dr. Raghavan as an expert and proposed that Dr. Kelkar would sponsor the entire initial and rebuttal reports initially attributed to both authors. *See* Ex. 2, S. Himmelhoch email to Court *et al.* (June 21, 2013). As part of this withdrawal, the United States stated, "BP may move to exclude any opinions contained in the entirety of the report which it believes are without foundation after deposing Dr. Kelkar …." *Id.*

At deposition, Dr. Kelkar admitted that certain material was indeed "without foundation" in the wake of the withdrawal of Dr. Raghavan. Ex. 3, Kelkar Dep. at 170:3-21; *see also* 495:2-497:6. Accordingly this Raghavan-only material should be redacted from the Kelkar-only version of the reports that will be submitted to Judge Barbier.

Specifically, Dr. Kelkar testified that three of the four methods for analyzing final reservoir pressure were performed solely by Dr. Raghavan. As indicated below, these methods are denominated by the names of the scientists who developed the methods—Muskat, Arps-Muskat, and Kuchuck—and are discussed in the following deposition testimony.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 30, 2013
Page 5

> Q.      Now, I see a reference on Page 25 at the top to, three other methods, the Muskat method, the Arps-Muskat method, and the Kuchuck method.… And you used those, as well?
>
> A. I did not use those methods, actually.  This is -- the work was done by Dr. Raghavan.
>
> Q. Well, did droc -- Dr. Raghavan also do the work with respect to the Mead method?
>
> A. He would -- I mean, we sat together, and we did Mead's analysis, but I think subsequently I have done the work independently. But for those three mentors, I have not done the analysis myself.

*Id.* at 170:3-21; *see also* 495:2-497:6 (testifying that the use of these methods was "Dr. Ragavan's work only").  Accordingly, report text that reflects the use of the Muskat, Arps-Muskat, and Kuchuck methods for measuring final reservoir pressure should be redacted from Dr. Kelkar's reports as the work of Dr. Raghavan alone.  (Work that employs the Mead method should remain, of course, as Dr. Kelkar performed that analysis independently from Dr. Raghavan.)

- ***Dr. Kelkar's Initial Report on page 28***.  Although the United States has removed some references to the three Raghavan methods of analyzing final pressure—Arps-Muskat, Muskat, Kuchuk—it has declined to remove the material on page 28 of Dr. Kelkar's initial report, as annotated in the attached.  The sentences at issue claim that "using other methods … the amount of oil released would increase as shown in Table 10."  Table 10 then displays average pressure values including those from methods employed only by Dr. Raghavan — Muskat, Arps-Muskat, and Kuchuck.  The sentences claiming to make use of the "other methods" should be redacted.  And the table should be redacted to display only the values for the Mead method.

- ***Dr. Kelkar's Rebuttal Report at Page 23***.  This page contains a sentence stating, "We found four methods that do not depend on a rate schedule...."  Dr. Kelkar acknowledged during his deposition that this sentence was incorrect and that it should say he himself considered only a single method—the Mead method—for analyzing final pressure.  *See* Kelkar Dep. at 531:16-532:1.  This sentence of his rebuttal report should therefore be redacted.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 30, 2013
Page 6

### C.    Additional Redaction Needed in Dr. Kelkar's Rebuttal Report

On *page 15*, Dr. Kelkar references Dr. Huffman's seismic analysis as supportive of the fact that the BP seismic survey was more reasonable than that of withdrawn expert Dr. Torres-Verdín.  The reference to Dr. Torres-Verdín was removed from the sentence, but not the reference to Dr. Huffman's analysis.  Given the fact that the sentence is directly responsive to Dr. Torres-Verdín's seismic analysis (which has been withdrawn by BP), the entirety of the sentence should be redacted.

## II.    SIGNIFICANT ADDITIONAL REDACTIONS ARE NEEDED FOR DR. HUFFMAN'S REPORT.

Dr. Huffman's only report was served in rebuttal on June 10, 2013.  The redaction issues related to Dr. Huffman's rebuttal report fall into three categories as follows:  *First*, Dr. Huffman's improper reference to withdrawn expert Dr. Ann Marchand, on page 38 of his report; *Second*, the United States' unjustified failure to redact a lengthy report section (plus other smaller report sections) setting forth a seismic analysis in response to withdrawn expert Dr. Torres-Verdín's seismic analysis; *Third*, the United States' improper attempt to offer a new analysis of porosity through Dr. Huffman's rebuttal reports.

### A.    The United States Should Redact From Dr. Huffman's Report Additional Text Responding to Withdrawn Expert Dr. Ann Marchand.

The Court ruled in its June 24 Order that the United States should redact references to withdrawn expert Dr. Ann Marchand.  (Rec. Doc. 10477, at 6.)  At the time, BP inadvertently overlooked a sentence on page 38 of Dr. Huffman's report that responds directly to withdrawn expert Dr. Ann-Marchand.  This sentence is squarely within the Court's June 24 Order and therefore should be redacted:

> In fact, BP's disclosure containing a very brief summary of the opinions of its non-retained expert, Dr. Ann Marchand suggests that her belief is that the temperature conditions of the M56 reservoirs are such that other thermally activated processes will also start to occur at these depths, confirming to me that BP clearly understands that temperature plays a role in both mechanical and chemical compaction processes.

### B.    The Court Should Strike Dr. Huffman's Seismic Analysis Responding to Withdrawn Expert Dr. Torres-Verdín.

Dr. Huffman's rebuttal expert report includes a 23-page section entitled "Analysis of the Report of Dr. Carlos Torres-Verdín."  Huffman Report at 13-35.  In this report section, Dr. Huffman critiques Dr. Torres-Verdín's seismic interpretation of Macondo MC-252 seismic data

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 30, 2013
Page 7

and describes his independent assessment of the data.  Now that BP and Anadarko have withdrawn Dr. Carlos Torres-Verdín, and confirmed no other BP/Anadarko expert will be relying on Dr. Torres-Verdín's seismic interpretation, *see* Ex. 4, Email from R. Gasaway to S. O'Rourke *et al.* (July 26, 2013), the United States is obliged to redact Dr. Huffman's seismic analysis responding to Dr. Torres-Verdín.  *See* Rec. Doc. 10477, at 5-6 (striking testimony proffered in response to withdrawn BP expert Dr. Ann Marchand).

Nevertheless, the United States is declining to redact Dr. Huffman's seismic analysis because it contends that it may bootstrap this analysis, performed in response to now-withdrawn Dr. Torres-Verdín, to "rebut" conclusions of BP's principal testifying expert Dr. Martin Blunt — who never performed a seismic analysis.  BP therefore requests an order striking the following portions of Dr. Huffman's rebuttal expert report:

- parts of **Page 12** referring to Dr. Torres-Verdín's opinions,

- all of **Pages 13 through 35** comprising Part III of Dr. Huffman's report entitled "Analysis of the Report of Dr. Carlos Torres-Verdin," and

- parts of **Pages 41, 42, and 75** referring to Dr. Torres-Verdín's opinions or to Dr. Huffman's independent seismic analysis.

### 1.      Overview of Dr. Huffman's Relevant Opinions

***United States' Initial Expert Reports***.  On March 22, 2013, the United States submitted an initial Phase 2 expert report from Drs. Mohan Kelkar and Rajagopal Raghavan.  The Kelkar-Raghavan report relied on BP's pre-drill seismic interpretation to define the size and overall volume of the Macondo reservoir.  *See* Kelkar Initial Report at 25-27.  A seismic analysis uses data collected by bouncing sound waves off the earth, like the sea floor, and measuring the time for their response, similar to sonar in a submarine.  As the sound waves return at different rates and with different intensities, geophysicists are provided information about the type of geology encountered, and with this data — usually after many refinements — are sometimes able to estimate the north-south-east-west boundaries of a hydrocarbon reservoir (known as "areal extent").

Drs. Kelkar and Raghavan based their estimate of original oil in place on BP's pre-drill volume estimate and on their assumption of complete reservoir connectivity (in other words, an assumption that the entire volume of Macondo oil-bearing rock was connected to the Macondo well and thus capable of flowing).  Even though the connectivity of the reservoir had been the subject of significant discovery in Phase 2 depositions, none of the United States Phase 2 experts offered any geological, seismic, or other scientific analysis of the reservoir's connectivity to substantiate the assumption by United States experts of complete reservoir connectivity.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 30, 2013
Page 8

*BP and Anadarko's Initial Expert Reports*.  On May 1, 2013, BP submitted its Phase 2 expert reports, including a report by Dr. Torres-Verdín offering a new estimate of net rock volume potentially connected to the Macondo well.  Dr. Torres-Verdín estimate was based on the results of his independent analysis of Macondo MC-252 seismic data collected before the well was drilled.  *See* Ex. 5, Torres-Verdín Report at 1-2.  Apart from Dr. Torres-Verdín, no other BP/Anadarko expert submitted a new interpretation of Macondo MC-252 seismic data.  Nor did any other BP/Anadarko expert offer a new estimate of Macondo sandstone thicknesses, net rock volume, or connected reservoir volume computed from seismic data.

Dr. Blunt's expert report also analyzed the connectivity of the Macondo reservoir.  But Dr. Blunt's analysis of reservoir connectivity was performed independently of—and used methods different from—Dr. Torres-Verdín's seismic analysis.  Specifically, Dr. Blunt used pressure data collected by a gauge on the Macondo capping stack to employ a technique called "pressure transient analysis."  *See* Ex. 6, Blunt Report at 24-25.  This quite different work was not in any way a seismic analysis.

*Dr. Huffman's Rebuttal Opinions*.  On June 10, 2013, the United States submitted the rebuttal expert report of Dr. Alan Huffman.  Dr. Huffman dedicated Part III of his report (entitled "Analysis of the Report of Dr. Torres-Verdín") to his assessment of Dr. Torres-Verdín's opinions.  *See* Expert Report of Dr. Alan Huffman at 13-35.  In Part III, Dr. Huffman analyzed the quality of MC-252 seismic data; critiqued Dr. Torres-Verdín's seismic interpretation method and tools; and described his own "independent assessment of the seismic data" using so-called "ThinMAN" inversion technology developed by his company nearly a decade ago.  *See id.*  Dr. Huffman's report contends that his ThinMAN inversion analysis enabled him to critique alleged shortcomings with Dr. Torres-Verdín's seismic analysis.  *See id.* at 24.  Aside from these responses, Dr. Huffman offered no affirmative estimate of the Macondo sandstone thicknesses, areal extent, or connected reservoir volume based on his ThinMAN inversion.

Surprisingly, Dr. Huffman revealed for the first time at deposition that he continued to map the Macondo for several weeks after submitting his rebuttal expert report in order to generate independent estimates of size, thickness, and connected reservoir volume.  *See* Ex. 7, Huffman Tr. at 166:20-167:10 (testifying that it took several weeks after June 10th to create the maps necessary to come up with size and thickness estimates for the M56D, M56E, and M56F); *id.* at 161:7-25 (same).  As Dr. Huffman admitted, none of these estimates were included in his rebuttal expert report and none of the detailed mapping work he performed after the submission of his June 10 rebuttal were report provided to BP and Anadarko.  *See id.* at 167:11-16.

On July 24, 2013, BP withdrew Dr. Torres-Verdín and promptly requested the United States to make appropriate redactions to Dr. Huffman's rebuttal report.  *See* Ex. 4, 7/24/2013 Email from R. Gasaway.  Nevertheless when, on August 23, 2013 (one week ago today) the

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 30, 2013
Page 9

United States made available Dr. Huffman's final, redacted report, a significant amount of material responsive to Dr. Torres-Verdin remained intact.

### 2.     Analysis

Dr. Huffman's seismic opinions should be redacted from the version of his report that is transmitted to Judge Barbier because these opinions respond to Dr. Torres-Verdín and are not proper rebuttal to Dr. Blunt.

#### a.     Dr. Huffman's Part III seismic opinions are a response to Dr. Torres-Verdín.

The United States does not dispute that Part III of Dr. Huffman's report containing his seismic opinions is directly responsive to Dr. Torres-Verdín.  Indeed the United States' proposed redactions purport to delete explicit references to Dr. Torres-Verdín while attempting to preserve the substance of Dr. Huffman's seismic analysis.

For example, the United States has redacted text that expressly states Dr. Huffman undertook to perform seismic modeling work "as part of [his] assessment of Dr Torres-Verdín's seismic analysis in this case," but leaves intact the substantive discussion of Dr. Huffman's seismic modeling work.  *See* Ex. 8, Unredacted Huffman Report at 14 (redacting the text highlighted in red).)  The United States also has partially redacted text that states "[t]he goal of this analysis was to confirm the limitations of the seismic data that were reported by Dr. Torres-Verdin."  *See id.* at 24 (redacting the text highlighted in red).

But the United States nonetheless is declining to redact text describing Dr. Huffman's ThinMAN "wavelet extraction" — even though the express purpose of that exercise was "to document the inherent wavelet variations in the seismic data that were used by Dr. Torres-Verdín to perform his inversion analysis."  *See* Huffman Report, at 27.  Furthermore, the United States has made only minimal redactions to multiple pages of discussion appearing directly under the subsection "ThinMAN Inversion and Comparison to the Deterministic Inversion Results" (a clear reference to Dr. Torres-Verdín's methods) and left unredacted Dr. Huffman's testimony concerning the purported resolution limits of Dr. Torres-Verdín's inversion results compared to Dr. Huffman's ThinMAN inversion results.  *See id.* at 27-33.

Because there is no legitimate dispute that Dr. Huffman's seismic opinions are directly responsive to Dr. Torres-Verdín, and because Dr. Torres-Verdín has been withdrawn, Dr. Huffman's rebuttal of Dr. Torres-Verdín should be redacted.

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 30, 2013
Page 10

### b. Dr. Huffman's seismic analysis is not proper "rebuttal" for Dr. Blunt's pressure transient analysis.

The straightforward discussion in the previous section should end the matter. Dr. Torres-Verdín has been withdrawn; Dr. Huffman's rebuttal of Dr. Torres-Verdín should also be withdrawn. The United States is improperly attempting, however, to deploy Dr. Huffman's seismic analysis provided in response to Dr. Torres-Verdín's seismic analysis against the entirely separate and distinct "pressure depletion" analysis performed by Dr. Blunt. This is improper rebuttal.

Rebuttal expert testimony must be limited solely to attacking the evidence proffered by the defendant's experts, not challenging their conclusions based on affirmative calculations, "independent" experimentation, or otherwise new analysis not relied upon by the defendant's expert. *See* 6/24/2013 Order at 3-5 (Rec. doc. 10477) (striking portions of Roegiers, Huffman, and Pooladi-Darvish rebuttal reports containing new analyses and affirmative calculations not relied upon by BP experts); *see also Home Design Services, Inc. v. Hibiscus Homes of Florida*, No. 603CV1860ORL19KRS, 2005 WL 2465020 at *5 (M.D. Fla. Oct. 6, 2005) (striking rebuttal opinions attempting to cast doubt on opposing expert's testimony based on separate and distinct analysis from that relied upon by opposing expert); *Daly v. FESCO Agencies NA Inc.*, 108 Fed. Appx. 476, 480 (9th Cir. 2004) (affirming district court's exclusion of rebuttal opinions consisting of new analysis and experimentation not contained in opposing expert's report). *In re Air Crash Near Kirksville,* 2007 WL 2363505, at *3 (E.D. Mo. Aug. 16, 2007) (striking rebuttal testimony that purported to rebut opposing expert's opinions on grounds not relied upon by opposing expert).

To the extent Dr. Huffman sought to critique Dr. Blunt's connectivity opinions, that critique necessarily needed to challenge the pressure transient analysis actually used by Dr. Blunt to compute connected reservoir volume. *See* 6/24/2013 Order, at 3-5 (Rec. doc. 10477) (striking rebuttal testimony proffered by United States experts to the extent not limited to specifically challenging basis for BP expert's conclusions); Order Regarding Request for Partial Reconsideration of Order Regarding Motion to Strike, at 2 (July 1, 2013) (Rec. doc. 10556) (striking new estimate of compressibility as "not in direct rebuttal to Blunt").

Nevertheless, none of Dr. Huffman's "rebuttal" opinions concerning the purported resolution limits of conventional seismic methods, the characteristics of MC 252 seismic data, or the supposed benefits of the ThinMAN inversion technology (a seismic analysis tool) "explain, repel, counteract, or disprove" Dr. Blunt's connectivity opinions based on pressure transient analysis. *See* 6/24/2013 Order, at 2 (Rec. Doc. 10477) (*quoting In re Katrina Canal Breaches Consol. Litigation*, 2012 WL 2526980, at *1 (E.D. La. June 29, 2012)). Indeed, by Dr. Huffman's own admission, he "did not evaluate Dr. Blunt's pressure depletion analysis." *See*

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 30, 2013
Page 11

Huffman Rebuttal Report at 41.  Hence, he cannot now purport to rebut it, and his seismic opinions should be redacted.

>   **C.   The Court Should Order the United States to Redact Dr. Huffman's Independent Well Log Analysis, which Sets Forth New Porosity Estimates Offered Improperly as Rebuttal.**

The Court's June 24 Order striking certain rebuttal opinions from the United States' experts ruled, with regard to Dr. Huffman's compressibility opinions, that an "*affirmative* opinion" "is not" "valid rebuttal opinion."  (Rec. Doc. 10477, at 5 (emphasis added).) Nonetheless, the United States now attempts to present equally improper *affirmative* estimates of another reservoir property—namely, "porosity"—and this time the impropriety of the testimony is even more transparent.

>   **1.   Overview of Dr. Huffman's Relevant Opinions**

*The Parties Agree on Porosity*.  Porosity is the percentage of empty space (called "void space") within a rock that contains fluids.  As part of its normal operations, BP estimated the average porosity of the reservoir using well logs — data collected from the wellbore before the blowout.  Before Dr. Huffman's June 10, 2013 report, every indication was that BP and the United States agreed that average porosity for the Macondo reservoir was approximately 21% based on this pre-litigation assessment.  In fact, every expert put forward in the United States' case-in-chief whose opinion relied on porosity adopted BP's pre-litigation assessment of Macondo porosity:

- Kelkar Expert Report at 26 (using estimated porosity of 21.7% derived from BP's pre-litigation assessment);

- Hsieh Report at 12 (using estimated porosity of 21% derived from BP's pre-litigation assessment) (attached as Exhibit 9); and

- Pooladi-Darvish Expert Report at 122 (.pdf pg. 124) (using estimated porosity of 23%, with porosities ranging from 17% to 28% based on BP's pre-drill porosity prediction) (attached as Exhibit 10).

Furthermore, even United States *rebuttal* expert Dr. Leif Larsen used an estimated porosity of 21 to 22% in his analysis responding to BP expert Dr. Alain Gringarten.  *See* Ex. 11, Larsen Report at 5.  And BP/Anadarko expert Dr. Blunt similarly used an estimated porosity of 21.7% for his analysis.  Ex. 6, Blunt Report at 53 (line 2 "Porosity"), 57-59.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 30, 2013
Page 12

***Dr. Huffman's Report***.  In Section IV of Dr. Huffman's report titled, "Analysis of the Report of Dr. Zimmerman," Dr. Huffman contends that the data based on partial core samples from Weatherford Laboratories, used by Dr. Zimmerman to estimate Macondo pore volume compressibility, were not representative of the Macondo reservoir.  *See* Huffman Expert Report at 37.  At first blush, Dr. Huffman's statements appeared to be responsive to Dr. Zimmerman's report as criticizing his reliance on the Weatherford core data.

It became clear at Dr. Huffman's deposition, however, that the United States intends to use Dr. Huffman's new, independent analysis of well log data located twenty pages earlier in his report (at pages 14-18) not to fairly or specifically explain, repel, counteract or disprove Dr. Zimmerman's work—which presented no new well log analysis or recalculated values of porosity—but to introduce *affirmative* opinions regarding this previously-uncontested rock property.

***Dr. Huffman's Deposition***.  Even though no BP/Anadarko expert presented any new well log analysis in any of their expert reports, Dr. Huffman slipped in his own "independent" well log analysis to serve as the basis for new porosity arguments.

Dr. Huffman affirmatively opined at deposition that porosity for the Macondo M56D sandstone unit ranges from 20 to 23 percent, while porosity for the Macondo M56E sandstone unit ranges from 23 to 25 per cent, Huffman Dep. at 260:8-262:12; *id.* at 379:16-380:6, notwithstanding that, until then, both United States and BP/Anadarko experts used estimated porosity values of approximately 21 percent derived from BP's pre-litigation assessment.  As emphasized above, the only United States expert *not* to adopt BP's pre-litigation assessment of Macondo porosity is Dr. Huffman, who in "rebuttal" now presents (almost in passing) new porosity estimates for the Macondo M56E sandstone unit that are as high as 25% and conflict with the porosity values used by United States experts who presented affirmative opinions in initial reports.

### 2.    Analysis

New analyses and affirmative calculations that do not respond to an opposing expert's testimony or that attempt to make up for deficiencies in a party's case-in-chief are not proper rebuttal.  *See* 6/24 Order, at 4-5 (Rec. Doc. 10477) (striking new calculations and analyses offered by United States experts Roegiers and Huffman under the guise of purported "rebuttal" to BP expert Zimmerman); *id.* at 6 (striking new opinions proffered by United States expert Pooladi-Darvish that were not expressed as part of the United States' case-in-chief and which do not specifically rebut BP/Anadarko expert's testimony).  This is so regardless of whether or not such testimony attempts to cast doubt on the conclusions of the opposing expert by providing "independent" grounds for reaching contrary results.  *See Homes Design Services, Inc. v. Hibiscus Homes of Florida*, No. 603CV1860ORL19KRS, 2005 WL 2465020, at *5 (M.D. Fla.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 30, 2013
Page 13

Oct. 6, 2005) (rebuttal opinions that seek to cast doubt on opposing experts' testimony based on new or "independent" analyses improper under Federal Rules).

Dr. Huffman's new porosity analysis is improper rebuttal testimony that effectively deprives BP and Anadarko of a meaningful opportunity to respond.

### a. Dr. Huffman's new petrophysical opinions on Macondo porosity do not rebut any BP/APC expert.

Dr. Huffman's well log analysis does not specifically explain, repel, counteract or disprove the testimony of *any* BP/Anadarko expert, for *no* BP/Anadarko expert offered any new well log analysis or porosity calculations for Dr. Huffman to "rebut" with his own competing well log analysis or porosity calculations. *See* 6/24/2013 Order regarding BP/Anadarko's Motion to Strike at 5-6 at 2 (Rec. Doc. 10477) (quoting *In re Katrina Canal Breaches Consol. Litigation*, 2012 WL 2526980, *1 (E.D. La. June 29, 2012)).  Accordingly, Dr. Huffman's affirmative opinions predicated on new porosity calculations that should have been disclosed (if at all) by March 22, 2013 cannot now be classified "rebuttal." *In re Air Crash Near Kirksville*, 2007 WL 2363505, at *3-4 (E.D. Mo. Aug. 16, 2007) (striking conclusions offered on rebuttal that failed to deal with same subject matter as opposing expert's report); *Stanfield v. Dart*, 2013 WL 589222, at *4 (N.D. Ill. Feb. 14, 2013) (striking conclusions based on "independent" psychological analysis that bolstered plaintiff's case-in-chief rather than specifically rebutted the methodology, conclusions, or analysis of defendant's expert).

Indeed, Dr. Huffman's belated porosity estimates are improper regardless of whether the United States claims to be offering Dr. Huffman's new porosity calculations to "cast doubt" on Dr. Zimmerman's expert testimony or that of any other BP expert. *See Daly v. FESCO Agencies NA Inc.*, 108 Fed. Appx. 476, 480 (9th Cir. 2004) (rebuttal testimony attempting to cast doubt on opposing experts' conclusions based on new analysis and experimentation excluded as improper).  This is so, because "'[R]ebuttal' experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts." *See Int'l Bus. Machs. Corp. v. Fasco Indus., Inc.*, 1995 WL 15421, at *3 (N.D. Cal. Mar. 15, 1995).

### b. Withholding Dr. Huffman's affirmative porosity opinions until rebuttal has unfairly prejudiced BP and Anadarko.

The late disclosure of Dr. Huffman's porosity opinion is plainly prejudicial.  By awaiting the rebuttal stage to present affirmative testimony as to a previously uncontested rock property, the United States effectively prevented BP and Anadarko from fairly and meaningfully responding to the United States' new (entirely unexpected) porosity opinion.  Had the United States disclosed Dr. Huffman's affirmative expert testimony as required, on March 22, 2013, BP and Anadarko's experts would have had an opportunity to review and assess Dr. Huffman's

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 30, 2013
Page 14

porosity calculations and comment on their validity—including potentially by retaining additional experts to analyze them. Having prejudiced BP and Anadarko by withholding affirmative testimony, the United States should not now be allowed to offer Dr. Huffman's surprise porosity opinions. The following portions of Dr. Huffman's rebuttal report should be redacted:

- **Pages 14-18**, constituting Dr. Huffman's well log analysis itself;

- **Page 37**, setting forth Dr. Huffman's conclusions from his "log analysis of the two reservoirs";

- **Pages 42 and 75,** setting forth Dr. Huffman's opinions about a different reservoir property called "permeability."

As regards this last redaction—just as "porosity" is a measure of the percentage of the empty spaces in rocks filled with oil, so "permeability" is a measure of the interconnectivity of those rock pores. Dr. Huffman's report makes clear that his comments about permeability are based directly on new—and improper—well log analysis about porosity. Specifically, six lines up from the bottom of page 42, he states, "Based on the range of porosities in the interval *from the log analysis*, I would expect from basic porosity to permeability relationships that the higher-porosity parts of the reservoir may have permeabilities significantly higher than 500 mD." Report at 42 (emphasis added). In other words, Dr. Huffman attempts to use his new (and improper) well log analysis regarding porosity—together with an asserted relationship between porosity and permeability—to bolster a permeability value used by United States experts in their initial reports. But just as the Court has ruled an independent analysis of pore volume compressibility may not first be presented on rebuttal, *see* Rec. Doc. 10477, so too an independent, combined analysis of porosity and permeability may not first be presented on rebuttal.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 30, 2013
Page 15

### CONCLUSION

For the foregoing reasons, BP and Anadarko request that portions of the United States' expert reports be redacted as described above and as highlighted in the attached.

Respectfully submitted,

Robert R. Gasaway

Attachments

cc (by electronic mail):

United States' MDL Counsel
Plaintiffs' Liaison Counsel
State and Local Government MDL Counsel
Defense Liaison Counsel