

U.S. Department of Justice

Environment and Natural Resource Division

*P.O. Box 7611*
*Washington, DC 20044*
*202-514-5261*
*Thomas.Benson@usdoj.gov*

September 3, 2013

**BY ELECTRONIC MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
　　Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

　　　　Re:　　MDL 2179: Request for Additional Redactions in BP/Anadarko Expert Reports

Dear Judge Shushan:

　　　BP/Anadarko's latest motion demonstrates that it seeks to use the redaction process as a tool to further constrict the evidence the United States can present at trial – as a sword rather than as a shield. We submit that this is an inappropriate use of what was originally intended to be a procedural mechanism designed for the convenience of Judge Barbier. As described in greater detail below, the United States has already made significant redactions to our expert reports to implement this Court's orders. To require further redactions at this late date would prejudice the United States and unreasonably limit the evidence available for the Quantification Segment of the Phase Two Trial.

　　　Given the tactical thrust of BP/Anadarko's motion, some background is necessary. BP/Anadarko has disclosed Dr. Martin Blunt as its "principal testifying expert." Ex. 1, BP and Anadarko Phase Two Disclosures of Non-Retained Quantification Expert Witnesses Not Required to Provide Expert Reports ("BP/Anadarko Disclosure") at 1. Dr. Blunt, and by extension BP/Anadarko, rely on what is known as the material balance method to calculate the amount of oil released. The material balance method can appear seductively simple because it requires just three pieces of information about the reservoir (though these pieces of information in turn depend on other inputs) to develop an estimated total flow:

1. the compressibility of the fluids and the rock;
2. the size of the reservoir that is connected to the well; and
3. the change in pressure over time.

Ex. 2, Blunt Report at 10. This simplicity comes with a cost, however. Because the method relies on just a handful of inputs, the accuracy of the value for each input becomes extremely important.

From the outset of the Phase Two expert discovery process, BP/Anadarko has attempted to use procedural tools to limit the United States' ability to challenge Dr. Blunt's assumptions on the three inputs he needed for his material balance calculation. For instance, in disclosing its experts, BP/Anadarko charged that the United States had used an incorrect number for compressibility. BP/Anadarko Disclosure at 1-2. Of course, the fact that BP/Anadarko's experts disagree with the United States experts on an input critical to the material balance method is hardly surprising; what was surprising was the forum in which BP/Anadarko chose to raise the issue. Then, after the United States' rebuttal reports were served, BP/Anadarko moved to exclude virtually all opinions related to compressibility. *See, e.g.*, Doc. 10445 at 5-8. BP/Anadarko's instant redaction motion is another attempt to neuter the United States' evidence on two of the inputs to Dr. Blunt's mass balance calculation – rock compressibility and connected reservoir size.

In any case, but especially a case of such importance to the Parties and the public, the issues should be decided based on the full array of evidence. The United States has worked with BP/Anadarko to make all reasonable redactions and is willing to agree to certain requests set forth in BP/Anadarko's latest motion, as described below. (Notably, BP/Anadarko has refused both of the United States' requested redactions). Granting BP/Anadarko additional redactions now – a month before the start of the Phase Two trial and after the United States has been required to pare its list of trial experts from 15 to 8 – would be particularly prejudicial. The United States respectfully requests that BP/Anadarko's motion be denied and that the United States be allowed to present its evidence at trial without further limitation.

I.     **Dr. Huffman's Remaining Opinions Are Proper Rebuttal Testimony**

   A.    **Dr. Huffman's Reservoir Analysis Properly Rebuts Dr. Blunt**

As Dr. Blunt's report makes clear, the size of the reservoir connected to the well is a critical input for his material balance work. Blunt Report at 10. To reach his conclusions, Dr. Blunt had to first reach opinions on the size of the reservoir and how much of the reservoir was connected to the well. BP/Anadarko argues that what Dr. Blunt did was a "pressure transient analysis" and that *no* BP/Anadarko expert other than the dropped Dr. Torres-Verdin "submitted a new interpretation of the Macondo MC-252 seismic data." This argument is both misleading and irrelevant. First, Dr. Blunt did indeed rely on seismic analysis. More importantly, whether or not they used the same precise tool, Dr. Huffman rebutted Dr. Blunt and his remaining testimony should be allowed.

2

Dr. Huffman's report explicitly states that he is rebutting Dr. Blunt's reservoir size and connectivity claims. Section III of Dr. Huffman's report critiques the reservoir volume opinions of Dr.Torres-Verdin. In Section V, Dr. Huffman turns to Dr. Blunt's opinions and incorporates his earlier critique of Dr. Torres-Verdin:

> As discussed in section III of this report, the total volume of reservoir available to flow to the well as estimated by Dr. Carlos Torres-Verdin is not valid in my expert opinion. *The same conclusion applies to Dr. Blunt's reservoir volume estimate for many of the reasons set forth in Section III.*

Huffman Report[1] at 41 (emphasis added).[2] As demonstrated by the redacted version of Dr. Huffman's report that BP/Anadarko provided the Court, the United States has already redacted much of Section III, those portions that specifically responded to the details of Dr. Torres-Verdin's work. The remainder of Dr. Huffman's reservoir volume discussion applies to Dr. Blunt.

The BP/Anadarko argument thus turns not on whether Dr. Huffman is responding to Dr. Blunt – he clearly is – but whether he responds in the proper fashion. BP/Anadarko pretends that there are two distinct types of reservoir analysis (seismic and pressure transient), that Dr. Blunt did one and Dr. Huffman did the other, and that this supposed difference in method precludes rebuttal testimony. None of these contentions withstands scrutiny.

First, BP/Anadarko's claim that Dr. Blunt did not rely on seismic information is simply not true, as Dr. Blunt himself has admitted. In his expert report, Dr. Blunt explains that he comes to a reservoir volume connected to the well by looking for a value that is "consistent with the pressure analysis, *the seismic interpretation* and calculations of permeability." Blunt Report at 24 (emphasis added); *see also* Ex. 3, Blunt Depo. at 442:5-442:9 (For the connected volume calculation, I used both the Pressure Transient Analysis and the seismic interpretation.").

More important than the particular tools he chose to use, Dr. Blunt's aim was to devise a connected oil volume. Dr. Huffman used a slightly different tool to point out the inaccuracies in Dr. Blunt's result. This is the epitome of rebuttal testimony. Dr. Huffman's testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by another party. . . ." Doc. 10477 at 2 (quoting *In re Katrina Canal Breaches Consol. Litigation*, Civil

---

[1] BP submitted the reports of Drs. Huffman and Kelkar with its motion, so we do not reattach them here. In BP's submission, the material redacted already is blacked out, and the material BP proposes to redact is in yellow highlight. At least some of the yellow highlighted material the United States has agreed to redact in meet-and-confer prior to the filing of BP/Anadarko's brief.

[2] *See also* Huffman Report at 41 ("Dr. Blunt's assumptions about poor connectivity of the reservoirs are not valid as demonstrated clearly by the ThinMAN analysis in section III of this report."); *Id*. at 41-42 ("[A]ll of the results of the ThinMAN analysis have direct impact on Dr. Blunt's assertions about reservoir connectivity that cannot be ignored in the material balance calculations.").

Action Nos. 05–4182, 10–866, 2012 WL 2526980, at *1 (June 29, 2012 E.D. La.) (Duval, J.)). To argue that Dr. Huffman's rebuttal testimony is improper because Dr. Blunt used pressure transient analysis and seismic analysis, while Dr. Huffman focused on seismic analysis is akin to arguing that if one party uses Westlaw to research a brief, the other party may not respond with research from Lexis.

Instead, the rules and case law allow for "an expert [to] introduce new methods of analysis in a rebuttal report if they are offered to contradict or rebut another party's expert." *Deseret Mgmt. Corp. v. United States*, 97 Fed.Cl. 272, 274 (Fed.Cl. 2011) (quoting *Genetically Modified Rice Litig.*, 2010 WL 4483993, at *3 (E.D. Mo. Nov. 1, 2010)); *see also Park West Radiology v. CareCore Nat. LLC,* 675 F. Supp. 2d 314, 326 (S.D.N.Y. 2009) (allowing rebuttal opinions where "new methodologies used by [expert] were for the purpose of rebutting or critiquing the opinions of Defendants' expert witness"); *In re REMEC Inc. Sec. Litig.,* 702 F. Supp. 2d 1202, 1220 (S.D. Cal. 2010) (allowing rebuttal testimony where rebuttal expert did additional analysis not performed by opponent).[3] As courts have noted, "While a rebuttal expert report must address the same subject matter as the report it contradicts, limiting its analysis only to those methods proposed by the first expert 'would impose an additional restriction on parties that is not included in the Rules.'" *Deseret Mgmt.*, 97 Fed. Cl. at 274 (quoting *T.C. Sys. Inc. v. Town of Colonie, N.Y.*, 213 F. Supp. 2d 171, 179–80 (N.D.N.Y. 2002)).

Notably, in Phase One BP itself served rebuttal reports that included new calculations and analyses. For instance, Dr. Bourgoyne performed new calculations, while Mr. Colson did a new log analysis of the M56A and M57B sands. Moreover, it is important to note that it was *BP/Anadarko* that first introduced seismic analysis through its expert opinions of Dr. Blunt and, more so, Dr. Torres-Verdin. It would be particularly unfair for BP/Anadarko to present expert seismic analysis, have the United States respond in kind, and then say that the United States' seismic opinion should be excluded as improper rebuttal.

In the final analysis, the question is the appropriate connected reservoir volume to use. Dr. Huffman's testimony is designed to respond to BP/Anadarko's expert evidence on the subject, satisfying the requirement for rebuttal testimony: "All that is required is for the information to repel other expert testimony." Doc. 10477 at 2 (quoting *In re Katrina Canal Breaches Consol. Litigation*, 2012 WL 2526980, at *1); *Deseret Mgmt.*, 97 Fed. Cl. at 274.

---

[3] The cases BP/Anadarko cites to the contrary are unavailing. In each instance, there was more to the court's preclusion of expert rebuttal testimony than the mere fact of using a different method in rebuttal. For instance, the so-called rebuttal report in *In re Air Crash Near Kirksville*, 2007 WL 2363505 (E.D. Mo. Aug. 16, 2007) (cited by BP/Anadarko at 10, 13), was served *before* the expert report it purported to rebut. *Id*. at 3.

**B.      Dr. Huffman's Compressibility Analysis Has Already Been Addressed by this Court and Properly Rebuts BP/Anadarko's Reliance on Flawed Core Samples**

Like connected reservoir volume, compressibility is a critical input for Dr. Blunt's material balance calculations. BP/Anadarko earlier asked this Court to strike Dr. Huffman's compressibility opinions, and the Court granted that motion *in part* with respect to Dr. Huffman's compressibility analysis. The Court decided that Dr. Huffman could not offer his own assessment of the appropriate compressibility, but that he *could* testify about whether the core test performed by Weatherford provided reliable results. Doc. 10477 at 4-5. BP/Anadarko's latest motion attempts to knock out the remainder of Dr. Huffman's compressibility opinions – those specifically allowed by this Court. BP/Anadarko's request should be denied as both inappropriate on the merits and contrary to the law of the case.

BP/Anadarko complains of "new porosity estimates," but the analysis was included in Dr. Huffman's rebuttal report.[4] To obscure the fact that it is rehashing a previously-decided issue, BP/Anadarko cites to Dr. Huffman's deposition for the details of his porosity opinions, but those opinions were set forth in Dr. Huffman's expert report. *Compare* Huffman Report at 37 *with* BP/Anadarko Brief at 12 (discussing porosity ranges of 20 to 23 percent for M56D and 23 to 25 percent for M56E).

Notably, Dr. Huffman discusses porosity not for its own sake, but as evidence that the Weatherford core data is not reliable. This point is made plain in Dr. Huffman's report:

> The bias in the cores is toward the middle to lower end of the porosity range for the M56E sand. These basic observations, along with the fact that many of the cores were unrecovered or unsuitable for testing, raises serious doubts about whether the samples used are truly representative of the reservoirs for the intended purposes of the tests. In fact, there is a high probability that the most competent samples with the lowest porosity and the greatest cohesion will be the ones that are most suitable for the tests that were conducted. If this is indeed the case, *then the results of the experiments will be biased toward lower UPVC values because of the sampling bias introduced by the nature of the core collection and selection for testing*.

Huffman Report at 37 (emphasis added).

---

[4] Indeed, the sonic well log data BP complains of here was not new to BP. It is the same sonic well log data that Dr. Huffman presented, analyzed, and relied on in his *Phase One* expert rebuttal report. Now in Phase Two, he has relied on the same information to reach conclusions on different subjects in rebutting BP/Anadarko's Phase Two experts. *See, e.g.*, Huffman Report at 39. The underlying information itself was already in evidence in the case (as TREX 7511) when Dr. Huffman wrote his Phase Two rebuttal report.

Not only was the analysis BP/Anadarko now complains of included in Dr. Huffman's report, BP/Anadarko previously moved to exclude it. When BP/Anadarko moved to strike certain rebuttal opinions in June, it specifically addressed Dr. Huffman's opinions about compressibility and Weatherford, asking the Court to strike pp. 36-40 of Dr. Huffman's report. Doc. 10445 at 7. BP/Anadarko now essentially repeats the request, this time calling the offending opinion a discussion of porosity. The Court should decline to require further redactions than it did in ruling on BP/Anadarko's initial motion on the topic.

Similarly, because there is nothing new or improper about the well log analysis that Dr. Huffman first presented in Phase One and now applies to rebut BP/Anadarko's experts in his Phase Two rebuttal report, there is no basis for excluding Dr. Huffman's opinions about permeability provided in rebuttal to Dr. Gringarten's permeability estimate. In the very portion of Dr. Huffman's report that BP/Anadarko seeks to strike, Dr. Huffman states that, "Dr. Gringarten's estimates also suffer from the same inherent sampling bias and risk of being unrepresentative of the overall reservoir that was discussed in section IV of this report for the core test data." Huffman Report at 42. If BP/Anadarko believes such testimony is improper rebuttal, the companies should have raised the issue when briefing their improper rebuttal claims in June. Having failed to do so, they should not be heard to complain now. In any event, the logic of the Court's order on the prior briefing applies here: Dr. Huffman is criticizing Dr. Gringarten's conclusion for relying on unrepresentative data, and that opinion is proper rebuttal. Doc. 10477 at 4-5. As a result, BP/Anadarko's request to redact portions of pages 42 and 75 related to permeability should be denied.

### C. The United States Is Willing to Redact the Sentence Referring to Dr. Marchand

BP/Anadarko admits that it overlooked a sentence related to the withdrawn Dr. Marchand in its prior motion. The United States is willing to redact this sentence.

### D. The United States Seeks to Remove Redaction from One Paragraph of Dr. Huffman's Report Addressing Sidewall Core Testing Protocol, Consistent with the Logic of the Court's Prior Opinion

On a related note, the United States seeks leave to *remove* the redaction from one paragraph of Dr. Huffman's report. The Court ordered that the United States redact from the second full paragraph of page 39 through page 40, reasoning that "the criticism of core tests is a valid rebuttal opinion. However, the affirmative opinion supporting 12 microsips is not." Doc. 10477 at 5. Based on the Court's reasoning, it appears that the second full paragraph on page 39 should not be redacted. That paragraph describes Dr. Huffman's opinion as to the proper testing protocol for the Macondo reservoir samples for loading rate, temperature and saturant:

> I also reviewed the internal BP documents that discussed the testing work on the Isabella RSWCs which were done under different conditions. That review included presentations (BPHZN-2179MDl03693851), test results (Ex. 8770) and email traffic between BP staff regarding the testing (BP-HZN-

> 2179MDl03693851). It is my view that the loading rates (i.e. the rate of strain and pressure changes on the sample during testing) on the Isabella cores were higher than preferred, and these tests were also done at ambient (room) temperature like the Macondo tests which is not the right way to perform the test. I understand that Dr. Roegiers also discusses this issue. Despite these issues, the fact that they were done after being saturated with 2% KCL brine solution means that they at least accounted correctly for the well-documented effect of water wetting on the deformation of quartz grains, and therefore should have produced results that are more reasonable as a proxy for the actual compaction of the reservoir under rapid changes in pore pressure under constant external loading.

Huffman Report at 39. In the interest of making sure we get the redactions right, we respectfully request leave to remove the redaction from the paragraph quoted above.

**II.     No Further Redactions From Dr. Kelkar's Analyses Should Be Ordered**

    **A.     Application of the Court's June 24, 2013 Order**
          **1.     Compressibility: Rebuttal Report pp. 15-16**

The United States admits that we have not complied with the letter of the Court's order with respect to pp. 15 and 16 of Dr. Kelkar's rebuttal report. However, our understanding of the order was that Dr. Kelkar's report should be redacted "[T]o the extent that the Roegiers and Huffman reports have been stricken." Doc. 10477 at 6. The Court's order was clear that Drs. Roegiers and Huffman would not be allowed to testify as to the appropriate compressibility number, but *could* testify to the unreliability of the Weatherford data. *Id*. at 3-5. We attempted to implement that mandate and concluded that redacting the entire paragraph went beyond what the Court intended.

The first four sentences of the carryover paragraph are simply a summary of Dr. Kelkar's compressibility opinions from his original report. The next three sentences summarize Dr. Blunt's compressibility opinions. The next sentence is the first to introduce Drs. Huffman and Roegiers and provides a high level overview of their criticism of the Weatherford core measurements. The following sentence addresses the conclusion of Drs. Huffman and Roegiers that the actual compressibility value for the reservoir would be higher than the core values; the United States has already redacted that sentence. The final sentence is already redacted in part and as it remains says only that Dr. Kelkar considers his own use of 12 microsips reasonable.

In essence, the paragraph summarizes the state of play on compressibility, including the original opinions of Dr. Kelkar, Dr. Blunt's opinions, and the response of Drs. Huffman and Roegiers. The United States has already redacted the paragraph in keeping with our understanding of the Court's intentions to allow the testimony from Drs. Huffman and Roegiers criticizing the Weatherford results. The remainder of the paragraph is proper rebuttal to Dr. Blunt that does not rely on the compressibility conclusions by Drs. Roegiers and Huffman that this Court previously deemed improper rebuttal

### 2. Aquifer Support: Rebuttal Report p. C-1

The Court's prior ruling directed the redaction of "[a]ssumptions and analysis regarding the existence of an aquifer. Doc. 10477 at 9. Based on that ruling, the United States redacted the bulk of Appendix C, including the affirmative assumptions and analysis regarding the existence of an aquifer. All that remains is the first paragraph, which simply describes what BP/Anadarko did during the spill, what Drs. Blunt and Gringarten did concerning aquifer, and the type of aquifer analysis typically done in the Gulf of Mexico. The United States believes this paragraph is outside the scope of the Court's order and so need not be redacted.

### B. Work Performed by Dr. Raghavan

The United States is willing to redact the yellow highlighted material on page 28 of Dr. Kelkar's initial report (as provided by BP/Anadarko with their brief) to limit the discussion to the Mead method used by Dr. Kelkar.

However, the other redaction sought by BP/Anadarko is not appropriate. As BP/Anadarko notes, Dr. Kelkar has already acknowledged that the sentence should read "one method" rather than "four methods." BP/Anadarko Brief at 5 (citing Kelkar Deposition at 531:16-532:1). The United States would be willing to *correct* the sentence, but there is no cause to redact it. Notably, BP/Anadarko has refused to redact portions of *its* expert reports even after its experts have conceded that they are incorrect. *See* Doc. # 11052 (Johnson MIL).

### C. Reference to Dr. Huffman's Reservoir Analysis

As described above, Dr. Huffman's reservoir analysis rebuts Dr. Blunt (as well as Dr. Torres-Verdin). The reference here to Dr. Huffman's conclusion that BP's pre-drill analysis was reasonable is proper rebuttal to Dr. Blunt and should remain in Dr. Kelkar's report.

***

Aside from the two instances described above where we can agree to BP/Anadarko's requested redactions,[5] the United States respectfully requests that the Court deny BP/Anadarko's motion seeking additional redactions, thus allowing the United States to present its evidence at trial without further limitation.  We also request leave to remove the redaction from one paragraph on page 39 of Dr. Huffman's report, as described above.

        Respectfully submitted,

        /s/ *Thomas A. Benson*
        Thomas A. Benson

CC:    Mike O'Keefe
           Counsel of Record

---

[5] For the convenience of the Court, we set forth as Attachment A a version of the table from BP/Anadarko's brief requesting redactions.  *See* BP/Anadarko Brief at 2.  In Attachment A, we have highlighted in yellow, the requested redactions that the United States will agree to, and thus the Court need not rule on.