# Exhibit 1

52075789
May 01 2013
11:45PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL NO. 2179 |
|    "DEEPWATER HORIZON" in the | : | |
|    GULF OF MEXICO, on | : | |
|    APRIL 20, 2010 | : | SECTION: J |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | JUDGE BARBIER |
| ALL CASES | : | MAG. JUDGE SHUSHAN |
| | : | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | . | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . |

**BP AND ANADARKO'S PHASE TWO DISCLOSURES OF
NON-RETAINED QUANTIFICATION EXPERT WITNESSES
NOT REQUIRED TO PROVIDE WRITTEN REPORTS**

Pursuant to Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure, BP Exploration & Production Inc. ("BP") and Anadarko Petroleum Corporation and Anadarko E&P Company LP (together, "Anadarko") hereby respectfully identify the following individuals who are BP employees and may be called to provide quantification-related expert testimony during the Phase Two trial but who are not required to provide a written report. (On May 10, 2013, BP will make additional Phase 2 expert disclosures relating to Source Control and will provide notice of service of the associated Source Control expert reports. This submission does not encompass the upcoming Source Control disclosures nor does it mention instances in which the opinions of these Phase 2 Quantification experts draw upon previously disclosed Phase 1 expert opinions.)

As backdrop to these disclosures, BP and Anadarko's principal testifying expert, Professor Martin Blunt, has calculated a cumulative oil flow using a number for the compressibility of the Macondo rock based on measurements by the Weatherford Laboratory of actual rock samples. The United States' experts Hsieh and Kelkar & Ragavan have used a number for rock

compressibility that is twice as high. Those experts acknowledge that, if they use a compressibility number suggested by the Weatherford measurements, then they would calculate cumulative flow of the same approximate amount as BP's expert Professor Blunt.

The United States' experts do not provide a scientific analysis supporting their decision to double the number for compressibility from that obtained from the Weatherford laboratory measurements. BP is therefore unable to determine what reason, if any, the United States may seek to provide to support this doubling, other than a citation to a BP presentation that used alternative numbers for compressibility to test worst-case scenarios in assessing capping-stack-closure risk. The United States has therefore failed to meet its burden of proof on this particular input to its experts' calculations.

Because the United States has failed to provide notice to BP under Federal Rule 26(a)(2) of any scientific basis for ignoring the Weatherford Laboratory measurements of compressibility, BP cannot definitively specify the expert opinions that would be necessary or helpful for the Court had the Government provided a proper scientific analysis on this issue. Nevertheless, while reserving final decisions until the submission of the Government's rebuttal reports and any belated opinions that may be contained therein on the subject, BP notifies the Court that it is prepared to offer the testimony of two experts bringing different experience and methodologies to bear on the issue of rock compressibility — Robert Zimmerman and Ann Marchand. BP and Anadarko have served the report of retained expert Dr. Zimmerman. Dr. Marchand is a non-retained expert who, like Dr. Hans Vaziri, the other non-retained expert named in this disclosure, is a full-time BP employee.

Both Dr. Marchand and Dr. Vaziri's opinions (and Dr. Vaziri's report) have been adopted by both BP and Anadarko. BP and Anadarko reserve the right to add additional retained or non-

retained experts to the extent the United States is allowed to belatedly supplement its expert reports.

BP's and Anadarko's Phase 2 non-retained experts on Quantification topics are currently as follows:

1. **Ann Marchand, Ph.D.**  Dr. Marchand is a geologist specializing in the field of "reservoir quality and diagenesis," that is, ascertaining the properties of reservoir rocks that could affect oil production.  She currently serves as BP's Gulf of Mexico Rock Quality Specialist.  She received her degree in geology from the Catholic University of Leuven in Belgium in 1994 and doctorate in reservoir quality & diagenesis from the University of Edinburgh in 2001.  Thereafter she worked in this discipline for Core Laboratories from 2002 until 2006, when she joined BP.

BP and Anadarko anticipate that Dr. Marchand will testify to the following facts and opinions with respect to the disputed issue of the compressibility of the Macondo reservoir rock.

**(1) Temperature effect on rock hardness and compaction rate:**  The main constituent of sandstones such as the Macondo reservoir is grains of quartz (silica).  When sandstone is buried deeper and deeper through geological time, the rock will be exposed to increasingly higher temperatures. Solubility of minerals increases with temperature and around 200 degrees Fahrenheit silica at grain-to-grain contacts dissolves and reprecipitates on the quartz grains as cement. This cement stabilizes the sandstone grain packing and results in harder more consolidated sandstone which will reduce the rate of compaction.

**(2) Mineralogy effect on rock hardness and compaction rate:**  Rock hardness is affected by the percentage of constituent mineral grains that are "rigid" such as quartz versus other softer minerals, known as "ductiles".  Given the same subsurface conditions, sandstone composed predominantly of "rigid" quartz grains for example, the Macondo sandstone will retain

3

more pore space upon compaction due to increasing overburden than "ductile" sandstone. Sandstones with >75% quartz grains in their framework including the Macondo sandstone display "rigid" behavior.

      **2.**      <u>**Hans Vaziri, Ph.D.**</u>  Dr. Vaziri has performed an analysis of sand production from the Macondo reservoir. Although not required under the Federal Rules of Civil Procedure, he has prepared a written report setting forth his qualifications and documenting his analysis and opinions, including an estimate of sand production from the reservoir. Dr. Vaziri's report is attached as Appendix E to the expert report of Srdjan Nesic, Ph.D.

      Dr. Vaziri serves as the BP Distinguished Advisor for Sand Management, the highest technical level within the organization. He received a bachelor's degree in Civil Engineering from Queen Mary College (The University of London) in 1977, a master's degree in soil mechanics from Imperial College (The University of London) in 1979, and a Ph.D. in geotechnical engineering from The University of British Columbia in 1986.

      Dr. Vaziri has over 25 years' experience in sand management and sand prediction, and he has worked at BP for 12 years in sand production management in BP's global operations. While at BP, he has predicted sand production for more than 30 high value wells, including wells in the Gulf of Mexico.

      BP and Anadarko have made this identification on the basis of information reviewed and available as of the date of this disclosure. BP and Anadarko reserve the right to offer new or revised opinions based on new information as it is discovered or as appropriate following the Court's rulings on motions *in limine*. Moreover, by responding to allegations raised in other parties' expert reports, BP and Anadarko do not waive their right to object to documents, testimony, or opinions contained in those reports. Finally, this identification does not include any

4

persons who may be designated to provide Phase 2 Source Control expert testimony or Phase 2 Quantification expert testimony rebutting reports served after the date of this disclosure.

Dr. Vaziri's estimation of sand production contains information that BP and other parties have designated as "highly confidential" or "confidential," and thus, the disclosure, and the information contained therein, should be treated in accordance with Pre-Trial Order 13.

Finally, the Court's and parties' attention is also directed to BP and Anadarko's Disclosures of Retained Phase Two Quantification Expert Witnesses And Notice of Service of Expert Reports, which is also being submitted today.

Dated: May 1, 2013                                    Respectfully submitted,

By: /s/ Don K. Haycraft

| | |
|---|---|
| Warren Anthony Fitch<br>(tony.fitch@bingham.com)<br>Ky E. Kirby<br>(ky.kirby@bingham.com)<br>BINGHAM McCUTCHEN LLP<br>2020 K Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 373-6000<br>Facsimilie: (202) 373-6001 | Don K. Haycraft (Bar #14361)<br>(dkhaycraft@liskow.com)<br>LISKOW & LEWIS<br>One Shell Square<br>701 Poydras Street, Suite 5000<br>New Orleans, Louisiana 70139-5099<br>Telephone: (504) 581-7979<br>Facsimile: (504) 556-4108 |
| James J. Dragna<br>(jim.dragna@bingham.com)<br>BINGHAM McCUTCHEN LLP<br>355 S. Grand Avenue, Suite 4400<br>Los Angeles, CA 90071<br>Telephone: (213) 680-6400 | Richard C. Godfrey, P.C.<br>(richard.godfrey@kirkland.com)<br>J. Andrew Langan, P.C.<br>(andrew.langan@kirkland.com)<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone: (312) 862-2000 |
| Deborah D. Kuchler (La. Bar No. 17013)<br>(dkuchler@kuchlerpolk.com)<br>Janika Polk (La. Bar No. 27608)<br>(jpolk@kuchlerpolk.com)<br>Sarah Iiams (La. Bar N0. 22418)<br>(siiams@kuchlerpolk.com)<br>Robert Guidry (La. Bar 28064)<br>(rguidry@kuchlerpolk.com)<br>KUCHLER POLK SCHELL<br>WEINER & RICHELSON, l.l.C.<br>1615 Poydras Street, Suite 1300<br>New Orleans, LA 70112<br>Telephone: (504) 592-0691<br>Facsimilie: (504) 592-0696 | Robert C. "Mike" Brock<br>(mbrock@cov.com)<br>COVINGTON & BURLING LLP<br>1201 Pennsylvania Avenue, NW<br>Washington, DC 20004-2401<br>Telephone: (202) 662-5985<br>*Attorneys for BP Exploration & Production Inc.* |
| *Attorneys for Anadarko* | |

## **CERTIFICATE OF SERVICE**

      I hereby certify that this Phase Two Disclosures of Non-Retained Quantification Expert Witnesses and the expert reports and disclosures referenced herein have been served on All Liaison Counsel by electronic means through the ShareVault site on this 1st day of May 2013.

                                                                             /s/ Don K. Haycraft

# Exhibit 2

In re: Oil Spill by the Oil Rig "Deepwater Horizon" in
The Gulf of Mexico, on April 20, 2010

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
MDL NO. 2179, SECTION J
JUDGE BARBIER; MAGISTRATE JUDGE SHUSHAN

# Modelling Macondo

## A calculation of the volume of oil released during the *Deepwater Horizon* incident

Prepared on Behalf of BP Exploration & Production Inc. and Anadarko

Prepared by:

**Martin J. Blunt**

Department of Earth Science and Engineering
Imperial College, London SW7 2AZ, UK
May 1st, 2013



CONFIDENTIAL

M J Blunt Expert Report

cumulative production that I do when he input a rock compressibility consistent with laboratory measurements.[7]

Here is how material balance works. When the well is drilled through the reservoir, it encounters the fluids in the reservoir rock: oil and water. These fluids are stored at very high pressures in tiny pore spaces. Figure 3.1 shows a core sample of the Macondo rock, accompanied by a microscopic image of a sandstone with similar properties. The rock is under enormous pressure from the weight of rock above it. The well allows a release of oil out of the reservoir to the surface. As oil starts to flow through the rock's connected pores, the pressure of the oil in the reservoir decreases. When the pressure decreases, the remaining oil expands, pushing the oil out of the reservoir. As the pressure of the fluids within the rock pores drops, the rock is compressed down, squeezing the pore spaces, pushing out more oil. The material balance principle says that the volume of oil that comes out of the reservoir must be equal to the combined volume expansion of oil (and to a lesser extent water) and the compression of the rock pore space. To calculate the oil produced from this fluid expansion and rock compression, we need know only the compressibility of the fluids and rock, the size of the reservoir connected to the well, and the change in pressure. These are the three variables that will be discussed throughout the remainder of this report.



Figure 3.1. Macondo sandstone core (left) and a microscopic cross-section of a quarry sandstone called Bentheimer.[8] The mean grain size of the Macondo sandstone is indicated by the red bar.[9] The Macondo sandstone has a similar average porosity, but a smaller grain size than Bentheimer. Bentheimer sandstone is used in buildings, including the pedestal of the Statue of Liberty.

---

[7] *See* Dr. Hsieh's deposition [42], page 267, line 5; page 269, line 3; Exhibit 8635, pages 73 and 74.
[8] Taken from Blunt *et. al* (2013).
[9] BP-HZN-2179MDL02394186 (Weatherford's grain size analysis) [25]. The picture is taken from WFT-MDL-00039841 (Weatherford's core photographs) [51].

M J Blunt Expert Report

*compartmentalized.*" Limited connectivity has hampered production in channelled turbidites in the Schiehallion field West of Shetlands, the Bittern Field in the North Sea, and the Ram Powell field in the Gulf of Mexico.[39]

**4.1.5 Government experts deduce smaller reservoir areas without reducing connected volume**. Later in this report we will discuss how both the Government experts and I use measurements of the pressure build-up after well shut-in to deduce the size and shape of the Macondo reservoir (*see* Section 4.3). Every expert found that the connected reservoir has a smaller area (and width) than determined from BP's seismic analysis in Figure 4.5.[40] BP likewise used pressure analysis after choke closure and also presented a model with a smaller area.[41] This suggests that the well-known geological phenomenon of compartmentalization of turbidite systems has indeed limited the connectivity of the greater Macondo reservoir shown by BP's seismic analysis. Yet the Government experts omit the next step of proportionately reducing their connected volume of initial oil. "*The primary job of a reservoir engineer,*" Drs. Kelkar & Raghavan tell us, "*is to obtain a production forecast . . . after addressing three primary questions: . . . (3) how much of the available quantity of fluid may be produced*."[42] Yet they did not assess what percentage of the Macondo field could be produced by the single Macondo well.

Finding a smaller area from a pressure analysis does not alone prove poor connectivity: the geology has to be considered carefully to determine if it is plausible that the whole field can drain to the well in the times indicated by the pressure analysis: I suggest that this is not possible for the BP seismic interpretation (*see* Section 5). It is unreasonable to suggest that oil located far beyond the boundaries detected by the pressure analysis can reside within these confines.

**4.1.6 My method for assessing connectivity and connected oil volume.** I use the area I compute from the pressure analysis. I take the largest plausible permeability value, which gives the largest area. I assume that the oil outside this area is not connected to the well, but that the reservoir thickness is only 10 ft in these regions: the purple areas shown in Figure 4.5. 10 ft is the limit of the seismic interpretation,[43] so this is a lower bound on the disconnected volume, or an upper bound on connectivity. This is the most optimistic assessment of connectivity that is consistent with the pressure analysis, the seismic interpretation and calculations of permeability. The details are given in Section 5: dependent on the fluid and rock properties assumed, the connectivity is 87-90%. From Figure 4.5, this is evidently a very generous interpretation, placing the vast majority of the oil in the yellow, red and orange channels while making the lilac channels very thin in comparison. This approach will give a plausible upper bound on oil released.

---

[39] Govan *et al.* (2006), Alpak *et al.* (2010), Alpak *et al.* (2013).
[40] IGS642-00215 (Hsieh's draft report, page 12, Table 2 (1,958 acres: 22,270 ft length times 3,830 ft width) [11]; Pooladi-Darvish report [PD], Appendix V, slides 4 and 5 (between 1,686 and 2,228 acres, using the quoted widths and lengths); BP's mid-range area is 4,482 acres. BP-HZN-2179MDL05173765 (BP gross rock volume assessment) [30].
[41] *See* Dr. Levitan's deposition [56], page 141, lines 14 and 15 (2,185 acres).
[42] *See* Kelkar & Raghavan report, [KR], page 31.
[43] *See* BP-HZN-2179MDL05173765 (BP's gross rock volume assessment) [30], slide 1, most likely case: "*10 ft cutoff footprint (noise background).*"

24

# Exhibit 3

01-43004
EAF/dlr

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | ) ) ) ) ) ) ) | MDL NO. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAG. JUDGE SHUSHAN |

## *CONFIDENTIAL*

### *WorldwideVIEW*™
**Interactive Deposition Digital Display**

ORAL AND VIDEOTAPED DEPOSITION OF:

# Martin Julian Blunt, Ph.D.
**Volume 2**



**July 26, 2013**

## *COPY*



*Systems Technology for the Litigation World*

Litigation Group♦Court Reporting♦Video Production♦Videoconferencing

**For U.S. & International Services**
**800 - 745 - 1101**

```
         1    volume?
         2        A.  Yes, I used the Pressure Transient
         3    Analysis to determine the connected area of the
         4    reservoir.
01:28    5        Q.  Okay.  No, I -- I'm sorry.  To determine
         6    the connected volume of the reservoir?
         7        A.  For the connected volume calculation, I
         8    use both the Pressure Transient Analysis and the
         9    seismic interpretation.
01:28   10        Q.  Okay.  Well, let me -- if -- if you don't
        11    have a seismic interpretation, okay, you can
        12    determine the volume -- the connected volume of
        13    the reservoir simply from a pressure transient
        14    analysis, correct?
01:28   15        A.  Yes, that's what I said.
        16        Q.  Okay.  And why didn't you do that here?
        17        A.  I didn't do that because I incorporated
        18    additional data into my analysis, which was the
        19    seismic interpretation.
01:28   20        Q.  Right.  But you didn't need the seismic
        21    analysis to determine the connected volume of the
        22    Macondo Reservoir here?
        23        A.  That's true, but in my Reservoir
        24    Engineering Analysis, I want to say the spirit of
01:29   25    this also has to be -- is to incorporate as much
```