# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

September 3, 2013

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

Re:   MDL 2179 — United States Motion to Redact the Expert Reports of Drs. Gringarten and Johnson

Dear Judge Shushan:

As agreed during our Wednesday, August 28 telephone conference, BP and Anadarko submit this response to the United States' Friday motion seeking additional redactions to the expert reports of BP/Anadarko's experts Dr. Alain Gringarten and Dr. Adrian Johnson.

*First*, the United States is simply incorrect that the assumed flow rate history Dr. Gringarten employs is "without any scientific or evidentiary basis." U.S. Letter at 2. Its attempt to undercut Dr. Gringarten's cumulative flow analysis should therefore be denied.

*Second*, the United States is also incorrect in contending that the Court should strike Dr. Johnson's opinion demonstrating the faults with Dr. Dykhuizen's estimated flow rate from the "skirt" of the Top Hat, merely because Dr. Johnson's report includes a single mathematical error for which Dr. Johnson issued a correction before his deposition.

**I.   Dr. Gringarten's Assumed Flow History Is Supported By the United States' Own Expert, a Fact the United States Can Explore on Cross Examination.**

As part of his report, Dr. Gringarten calculates cumulative flow using a process he pioneered called "deconvolution." This mathematical process uses the reservoir's permeability and pressure data collected from a sensor on the BOP, together with the basic principle that changes in pressure reflect changes in flow rate, to reconstruct a flow rate history. To perform this technique an assumed flow-rate history is necessary as a starting point, but as Dr. Gringarten explains "[d]econvolution will correct these rates, albeit with some uncertainty," which he

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 3, 2013
Page 2

explained at deposition means the uncertainty of the pressure measurements.  *See* Gringarten Report at 36; Dep. Tr. 163:25-164:13 (Attachments 2 and 3 to the U.S.'s Letter).  In other words, deconvolution does not require the initial flow rate assumption to be close to the actual rate history for reaching valid and scientifically robust calculation of the actual flow rate history.  The whole point is that the process "corrects" the initial rate assumption.

The United States now seeks to redact two sentences that set forth the factual basis for Dr. Gringarten's selection of a historical flow rate of 45,000 stock tank barrels of oil per day (stb/d). (As an initial note, the Court should appreciate that the first half of the sentence on page 49 is not at issue — "The results also include rates scaled to the mean permeability ..." — as that statement simply references the scaling of Dr. Gringarten's permeability determination.)

*First*, while the United States claims both sentences are now "misleading," U.S. Letter at 1-2, there is nothing misleading about stating, as a matter of historical fact, that Dr. Gringarten began his deconvolution analysis by assuming a flow rate history of 45,000 stock tank barrels per day (stb/d) for the entire spill period.  In fact by redacting Dr. Lo's name, BP makes clear that Dr. Gringarten is not relying on any further expert analysis (nor does he need to) to establish the reasonableness of this assumed history.

The United States is of course fully able to cross examine Dr. Gringarten on both the reasonableness of this assumption and the sensitivity of his work to any errors in this assumption — which the United States' motion appears to overstate.  *See Concise Oil & Gas P'ship v. Louisiana Intrastate Gas Corp.*, 986 F.2d 1463, 1476 (5th Cir. 1993) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." (quotation marks and citation omitted)); *Aventis Envtl. Sci. USA LP v. Scotts Co.*, 383 F. Supp. 2d 488, 514 (S.D.N.Y. 2005) ("[A] challenge to the facts or data relied upon by [an expert] does not go to the admissibility of his testimony, but only to the weight of his testimony.")

*Second*, as it so happens, and contrary to the United States' claims, the flow rates the United States wishes to redact are fully supported by the evidentiary record — even without expert testimony from Dr. Lo.  It is precisely because the rates are supported by the evidentiary record that BP/Anadarko saw no need to inject another expert's analysis into the already expert-heavy Quantification segment of the Phase 2 trial.

Dr. Gringarten explains in his report that he chose the assumed history of 45,000 stb/d for the entire flow period because there is evidence that the flow rate on the final day was between 38,829 and 48,201 stb/d.  Gringarten Report at 36 (Attachment 2 to U.S. Letter).

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 3, 2013
Page 3

These numbers line up nearly exactly with United States expert Dr. Dykhuizen's estimate of final day flow. Dr. Dykhuizen has stated that his estimate is 53,000 stb/d with an error rate of plus or minus 20 percent. *See* Ex. 1, Dykhuizen June 19, 2013 Dep. Tr. at 68:23-69:12. But if one were to have converted this rate to stock tank barrels using the method of BP/Anadarko's fluids expert, Dr. Whitson — rather than the conversion method of United States expert Dr. Zick (which Dr. Dykhuizen used) — one sees that Dr. Dykhuizen's flow rate is 48,452 stb/d (as compared to 48,201 stb/d stated in Dr. Gringarten's report). And applying Dr. Dykhuizen's 20% lower bound to that reconverted flow rate results in a rate of 38,761stb/d (as compared to 38,829 stb/d).

| Flow Value | Dr. Dykhuizen | Dr. Dykhuizen (BP/A Conversion) | Dr. Gringarten's Report |
|---|---|---|---|
| Final Day Rate (stb/d) | 53,000 | 48,452 | 48,201 |
| -20% error margin (stb/d) | 42,400 | 38,761 | 38,829 |

The similarity of these final-day flow numbers is not a coincidence. Dr. Lo's estimate for final day flow and Dr. Dykhuizen's estimate for final day flow are nearly identical. The difference between the two, as recognized by Dr. Dykhuizen in his rebuttal report, is that Dr. Lo uses BP/Anadarko fluids expert Dr. Whitson's conversion factor, whereas Dr. Dykhuizen uses United States fluids expert Dr. Zick's conversion factor. *See* Ex.2, Dykhuizen Rebuttal Report at 7 ("No BP expert contradicts my calculation of flow rates through the Capping Stack with the exception of questioning my equation of state (EOS) which yields small changes in my flow rate estimate."). There is no reason to complicate the proceedings with another expert's analysis when the parties have essentially reached agreement on the factual issue of final day flow rate.

In short, the United States' motion attempting to undercut Dr. Gringarten's cumulative flow estimate — on the basis of the United States' misunderstanding of that estimate — should be denied as Dr. Gringarten's assumed flow rate history is firmly grounded in evidence and can be tested on cross examination.

II.  **Dr. Johnson's Three Opinions Regarding Dr. Dykhuizen's Top Hat Flow Estimate Should Not Be Stricken.**

Dr. Johnson offers three opinions in his report regarding Dr. Dykhuizen's flow estimate from the Top Hat's skirt. The estimate is (i) too high, (ii) subject to significant uncertainties due

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 3, 2013
Page 4

to the Top Hat's geometry, and (iii) significantly sensitive to errors of pressure measurement. Ex. 3, Johnson Report at 41-42 (Attachment 3 to the U.S.'s Motion *in Limine*).

The United States seeks to redact all *three* opinions for the sole apparent reason that Dr. Johnson's first opinion regarding the flow estimate contained a calculation error — which resulted from Dr. Dykhuizen's performing his calculation in an unexpected non-industry-standard manner — that Dr. Johnson *corrected* before being deposed and long before the United States filed its motion. Ex. 4 (Dep. Ex. 11566); Ex. 5, Johnson Dep. Tr. at 11:20-12:13, 371:11-385:15, 521:10-16.

As the United States' letter notes, the United States has filed a motion *in limine* requesting this same relief and BP/Anadarko incorporate here their Memorandum in Opposition filed separately today. Because the Court may determine that this briefing on expert report redactions is the more appropriate vehicle for resolving the United States' motion, BP/Anadarko also highlight here several points about the United States' motion.

*First*, BP/Anadarko followed the established practice in this case for correcting slight errors in expert opinions. For example, before Dr. Bushnell's deposition, the United States provided two additional pages with additional analysis titled, "Dr. Bushnell Revision to Rebuttal Report" but did not correct Dr. Bushnell's report. *See* Ex. 6 (Dep. Ex. 11707). Similarly, the United States corrected certain values that its expert Dr. John Martinez used in his estimates, but did not correct Dr. Martinez's report. *See* Ex. 7 (Dep. Ex. 11910).

Here, Dr. Johnson's report opined that Dr. Dykhuizen's estimate of flow from something called the "skirt" of the Top Hat — the details of which are provided in our Opposition — were unreliable and inflated. Upon reading Dr. Dykhuizen's rebuttal report, Dr. Johnson learned that Dr. Dykhuizen had performed this calculation in a non-industry-standard manner that Dr. Johnson had not understood based solely on Dr. Dykhuizen's initial report. Dr. Johnson promptly issued a corrective set of calculations, Ex. 4 (Dep. Ex. 11566), and he was questioned about these calculations at his deposition, Ex. 5, Johnson Dep. Tr. at 11:20-12:13, 371:11-385:15, 521:10-16.

Rather than seek a practical way forward that might include an edited report or submission to Judge Barbier of the report, the corrected calculations (Ex. 4 (Dep. Ex. 11566)), and the relevant deposition testimony, the United States seeks opportunistically to eliminate all three of Dr. Johnson's opinions critical of Dr. Dykhuizen's Top Hat flow estimate — opinions that remain relevant even after the calculation error has been corrected.

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 3, 2013
Page 5

*Second*, Dr. Johnson's report, even if it remains uncorrected, will not give rise to "confusion," as the United States asserts. U.S. Mem. at 3. Dr. Johnson's second and third opinions — that Dr. Dykhuizen's estimate from the Top Hat is subject to significant uncertainties due to the Top Hat's geometry and is significantly sensitive to errors of pressure measurement — remain unaffected by Dr. Johnson's calculation error.

Moreover, as for Dr. Johnson's first opinion, it remains Dr. Johnson's view — even after the calculation correction — that Dr. Dykhuizen's estimate is inflated. In fact, Dr. Dykhuizen agrees with Dr. Johnson that the data from the Top Hat's skirt cannot be used to generate reliable flow rate estimates. *See* Ex. 8, Dykhuizen Jan. 31, 2013 Dep. Tr. at 417:12-15 ("This led to a very large error bar in our total because we could not estimate accurately what was coming out of the skirt."); Ex. 1, Dykhuizen June 20, 2013 Dep. Tr. at 458:14-17 (Q: Okay. You would agree that any estimate that you have that includes a calculation of flow out of the skirt *is a very inaccurate method*? A: *Yes*."); *id.* at 473:25 ("All of my estimates are inaccurate.") There is thus no legitimate question or confusion as to what Dr. Johnson's opinions are (and are not) regarding Dr. Dykhuizen's Top Hat flow estimate.

*Finally*, the United States' focus on eliminating errors from expert reports that purportedly might confuse the Court ignores the unredacted errors that will be submitted with its own expert reports. As the Court may recall, Dr. Pooladi-Darvish acknowledged in his rebuttal report a "systemic" error in his initial report that he has not corrected in his initial report. *See* Order re BP/A Motion to Strike, at 11 (June 24, 2013) (Rec. Doc. 10477). Additionally, Dr. Zick, in his rebuttal report, abandoned his four-stage separation method, embracing an ocean-separator method, but the United States has not redacted from Dr. Zick's initial report his discarded methodology. *Id.* at 10. Both of these admitted inaccuracies will come into the record should the United States call Dr. Pooladi-Darvish or Dr. Zick to testify. (It is also possible that the report of Dr. Bushnell, mentioned above, could be admitted as the United States is attempting to rely on him as an expert, and his report also has not been corrected.)

Rather than focus on expunging all unredacted errors in reports, the better view is that counsel for the United States and BP/Anadarko, together with Judge Barbier, are capable at trial of contextualizing and explaining various aspects of various reports. Should BP/Anadarko fail to bring Dr. Johnson's corrected testimony to the Court's attention, counsel for the United States undoubtedly can address the accuracy of this section of Dr. Johnson's report on cross examination.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 3, 2013
Page 6

     In sum, the asserted "risk of confusion" stemming from Dr. Johnson's uncorrected report does not merit striking three of his opinions solely because one of those opinions contains a calculation error that was cured in advance of his deposition.

\*   \*   \*

     For the foregoing reasons the United States' motion for additional redactions should be denied.

     On a final note, BP and Anadarko agree that Dr. Nesic's report should be provided to Judge Barbier without the portions authored by Dr. Vaziri and Dr. Richardson. BP will serve the United States with a redacted version of that report this week.

Respectfully Submitted,

Robert R. Gasaway

Attachments

cc (by electronic mail):

United States MDL Counsel
Plaintiffs Liaison Counsel
State and Local Governments Liaison Counsel
Defense Liaison Counsel