UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010. | § § § § | MDL No. 2179 SECTION "J" |
| | § | JUDGE BARBIER |
| This Document Relates to: | § § | MAGISTRATE SHUSHAN |
| 10-4239 10-4240 10-4241 | § § § | |

## PLAINTIFFS' (STATES OF TAMAULIPAS', VERACRUZ', AND QUINTANA ROO'S) AMENDED RESPONSE IN OPPOSITION TO MOTION OF DEFENDANT CAMERON INTERNATIONAL CORPORATION FOR LEAVE TO FILE SUMMARY JUDGMENT SUR-REPLY

COME NOW Plaintiffs, The States of Tamaulipas, Veracruz, and Quintana Roo and file this their Plaintiffs' (States Of Tamaulipas', Veracruz', And Quintana Roo's) Amended Response In Opposition To Motion Of Defendant Cameron International Corporation For Leave To File Summary Judgment Sur-reply and in support thereof, would respectfully show the Court as follows:

1.  The Plaintiff States hereby oppose the Motion Of Defendant Cameron International Corporation For Leave To File Summary Judgment Sur-reply ("Cameron's Motion") and respectfully submit that it should be denied in all respects.

2.  As grounds for Cameron's Motion's submission, Defendant attempts to characterize Plaintiffs' allegations referencing *parens patriae* as a "new argument" that was only recently raised ("for the first time") by Plaintiffs in their Reply to Defendants' summary judgment motions. (*E.g.,* p. 1, Cameron's Motion; p. 1, Cameron's Memorandum in Support of Cameron's Motion). As shown below, this is not the case.

3. Plaintiffs emphasize at the outset that they are asserting their own maritime claims for the damages and injuries to Plaintiffs' proprietary interests caused by Defendants. (See Plaintiffs'' Complaints, Motions for Summary Judgment, and Responses to Defendants' Motions For Summary Judgment). However, from the outset, in addition to asserting their own maritime claims for damages to their proprietary interests under this Court's admiralty and maritime jurisdiction, Plaintiffs have also alleged maritime claims encompassed by the doctrine of *parens patriae*. The allegations in Plaintiffs' Complaints, although not specifically containing the words "*parens patriae*," do contain the allegations asserting such claims and give ample notice of such principle and Plaintiffs' reliance upon same. To cite just a few examples:

    A.    Par. 2 of the Complaints of Quintana Roo, Veracruz, and Tamaulipas reference the importance of tourism, fishing, and commercial shipping "to the State *and its residents.*" (emphasis added).

    B.    Par. 39 of the Complaints of Quintana Roo, Veracruz, and Tamaulipas reference the damage to the natural resources and ecosystem, as well as other elements, "upon which the *residents* of [the State] and the State itself depend." (emphasis added).

    C.    Par. 40 of the Complaints of Quintana Roo, Veracruz, and Tamaulipas reference Defendants' damage to "the source of the livelihoods of *Plaintiff's residents* who directly or indirectly depend on such jobs as harvesting, catching, fishing, distributing, processing, selling, and otherwise handling fish, oysters, [and other marine life].

D. Par. 41 of the Complaints of Quintana Roo, Veracruz, and Tamaulipas reference "*Plaintiff's residents* rely on a clean Gulf of Mexico, sea life, clean beaches and safe navigable waters for their livelihood."

4. Defendants' actions in connection with the Macondo well have caused devastation, extreme damages, and extreme harm to Plaintiffs. Yet, Defendants seek to avoid *all* responsibility claiming, in essence, that there is no relief or justice in the American courts for these Mexican Plaintiffs. In other words, Defendants argue that they are free to pollute and damage Plaintiffs' shores, environment, and natural resources and that they cannot be sued for their misdeeds and omissions. Plaintiffs respectfully submit that they are entitled to relief for the damages caused to their own proprietary interests, as well as to the well-being, health, economic livelihood, and safety of the residents of the Plaintiffs' States. A political entity can assert a *parens patriae* claim where it demonstrates a quasi-sovereign interest "in the health and well-being—both physical and economic—of its residents in general." *Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. 592, 607 (1982)(finding such an interest in the protection of Puerto Rican workers from discriminatory exclusion from employment opportunities). Moreover, the Supreme Court has noted that *parens patriae* suits are particularly well suited to address injuries caused by a defendant's pollution of the environment. *E.g., Missouri v. Illinois*, 180 U.S. 208 (1901)(allowing *parens patriae* suit to prevent sewage discharge into the Mississippi River in Missouri); *Georgia v. Tenn. Copper Co.,* 206 U.S. 230, 237 (1907)(suit to remedy discharge of noxious gases drifting into state).  "[I]t must surely be conceded that, if the health and comfort of the inhabitants of a state are threatened, the state is the proper party to represent and defend them." 180 U.S. at 241. As noted above, Plaintiffs,

in addition to presenting maritime causes of action for the damages to their proprietary interests, have adequately raised *parens patriae* maritime allegations from the outset and this is not a "new" allegation as Defendants erroneously contend.

5. Plaintiffs reserve the right to further address and oppose Defendants' Sur-reply should this Court grant Defendants permission to file same. However, to the extent that this Court may review the actual Sur-reply in consideration whether to grant permission to file same, Plaintiffs' note that, in any event, said Sur-Reply is not based on a proper reading or application of Supreme Court authority.

6. In arguing that foreign states, such as Plaintiffs, cannot assert a *parens patriae* suit, Defendants misread the underlying rationale of the *parens patriae* doctrine. The very reason U.S. states can bring such suits is because they are similar in many ways to foreign states. In discussing the underpinnings of the doctrine as it applied to U.S. states, the Supreme Court has repeatedly analogized the U.S. states' rights in this respect to those of foreign countries. *Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. at 604; *Missouri v. Illinois,* 180 U.S. at 241; *Georgia v. Tenn. Copper Co.,* 206 U.S. 230, 237 (1907). In other words, if U.S. states can bring a *parens patriae* suit because of their similarities to foreign sovereign states, then a foreign state, *a fortiori*, can bring such a suit. *Id.*

It is also significant that in *Alfred L. Snapp & Son, Inc. v. Puerto Rico,* the Supreme Court allowed the Commonwealth of Puerto Rico to bring such a suit even though it is a U.S. territory, not a state of the United States. In so doing, the Court found it sufficient that it was "similarly situated" to a state since "It has a claim to represent its quasi-sovereign interests in federal court at least as strong as that of any state." 458 U.S.

at 608 n. 15. Here, the Plaintiff states are similarly situated to those American states that have brought suit (*albeit* on different grounds) and the Plaintiff states have quasi-sovereign interests at least as strong as any U.S. state.

Defendants mistakenly argue that a foreign state cannot bring a *parens patriae* suit, relying on the First Circuit's decision in *Estados Unidos Mexicanos v. Decoster,* 299 F. 3d 332 (1st Cir. 2000). With all due respect to the First Circuit, that decision failed to follow the Supreme Court's reasoning that analogizes U.S. states to foreign states as the basis for the U.S. states' rights to bring such suits in the first place. This fundamental flaw in the First Circuit's reasoning cannot be ignored, especially when it is directly contrary to the Supreme Court's decisions. *E.g.*, *Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. at 604; *Missouri v. Illinois,* 180 U.S. at 241; *Georgia v. Tenn. Copper Co.,* 206 U.S. at 237. Furthermore, *Decoster* is clearly distinguishable since unlike the present action brought by Plaintiffs herein, the foreign entity in *Decoster* sought to bring only a *parens patriae* suit without also asserting its own sovereign rights or proprietary interests: "The question here presented is whether a foreign nation *which asserts only quasi-sovereign interests and not its own proprietary or sovereign interests* should be afforded standing as *parens patriae.*" (emphasis added) *Decoster,* 229 F. 3d at 336. Here, of course, Plaintiff States also assert their own proprietary interests. Consequently, *Decoster's* issue is clearly distinct and its holding is inapplicable.

7.   Additionally, Plaintiffs note that in addition to bringing their claims under the admiralty/maritime jurisdiction of this Court, they have also brought them under Art. III, § 2 of the U.S. Constitution. The Supreme Court has long recognized that a foreign nation is entitled to prosecute any civil claim in the Courts of the United States upon the

same basis as U.S. parties. *Pfizer, Inc. v. Government of India,* 434 U.S. 308, 318-19 (1978)(superseded in part not relevant herein by Foreign Trade Antitrust Improvements Act). Consequently, there is no basis in either Article III or the doctrine of *parens patriae* to subject the Mexican states to disparate treatment, as Defendants urge.

8. Defendants also erroneously urge that Plaintiffs cannot meet the "proprietary interest" test under *Robbins Dry Dock.* Certainly, there is nothing in that decision that addresses the special role of a state in *parens patriae* suit. In any event, Plaintiffs herein have already established that they possess proprietary interests that have been damaged by Defendants. (*E.g.*, Plaintiffs' Motions for Summary Judgment). Furthermore, a quasi-sovereign interest *is* a "proprietary" interest in the sense that the state has the right to protect its residents from harm and promote their well-being, and the state's failure to do so will adversely affect its own well-being and viability (*e.g.,* economically, environmentally, politically, *etc.*). See, *Georgia v. Tenn. Copper Co.,* 206 U.S. 230, 237(1907)(failure to act jeopardizes economic welfare of state and its residents). Thus, in addition to asserting its own proprietary interests, a state may assert the proprietary interests of its residents even though the residents are the actual owners of the affected land. 206 U.S. at 237(holding the state had the right to sue to protect its forests, orchards, and crops from noxious gases even though the state owned very little of the land affected). Thus, even though the quasi-sovereign interests concept does not fit nicely within the familiar parameters of "proprietary interest," a state's quasi-sovereign interests are at least equal to other proprietary interests in breadth, scope, and importance for they affect the well-being and health of the state's general public. See, *Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. at 602 ([*Parens patriae*] creates an exception

6

to normal rules of standing applied to private citizens in recognition of the special role that a state plays in pursuing its quasi-sovereign interests in the well-being of its populace."); *Georgia v. Tenn. Copper Co.,* 206 U.S. 230, 237(1907)("The State has an interest independent of and behind the titles of its citizens, *in all the earth and air with its domain."*)(emphasis added). In fact, the quasi-sovereign interests of a state envelope and incorporate its residents' proprietary interests, allowing the state to maintain the action. *Id.* In light of Plaintiffs' allegations herein, the Supreme Court's further holding is applicable herein:

> Georgia as a representative of the public is complaining of a wrong which, if proven, limits the opportunities of her people, shackles her industries, retards her development, and relegates her to an inferior economic position among her sister states. These are matters of grave public concern in which Georgia has an interest apart from that of particular individuals who may be affected. 206 U.S. at 450-451.

Therefore, the Plaintiff Mexican States have previously raised the allegations of *parens patriae*—claims which they are entitled to bring and which they have brought, along with their admiralty and maritime claims for damages to their own proprietary interests. Defendants' arguments to the contrary are misplaced.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that Defendant's Motion for Leave to File Summary Judgment Sur-Reply be denied in all respects.

Dated: February 15, 2013

Respectfully submitted,

**SERNA & ASSOCIATES PLLC**

/s/ Enrique G. Serna
Enrique G. Serna

enrique@serna-associates.com
20985 IH 10 W
San Antonio, Texas
Telephone: 210.472.2222
Facsimile: 210.228.0839

**CERTIFICATE OF SERVICE**

I hereby Certify that the above and foregoing pleading, has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No.12, and that the foregoing was electronically filed by using the CM/ECF System which will send a notice of electronic filing **PLAINTIFFS' (STATES OF TAMAULIPAS', VERACRUZ', AND QUINTANA ROO'S) AMENDED RESPONSE IN OPPOSITION TO MOTION OF DEFENDANT CAMERON INTERNATIONAL CORPORATION FOR LEAVE TO FILE SUMMARY JUDGMENT SUR-REPLY** in accordance with the procedures established in MDL 2179, this the 15th of February 2013.

/s/ Enrique G. Serna
Enrique G. Serna