IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater | * | MDL No. 2179 |
| Horizon" in the Gulf of Mexico, | * | |
| On April 20, 2010 | * | Section: J |
| | * | |
| This filing relates to: *All Cases* | * | District Judge Carl J. Barbier |
| | * | |
| (Including Civil Action No. 12-970) | * | Magistrate Judge Sally Shushan |
| | * | |
| | * | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**<u>MEMORANDUM IN SUPPORT OF MOTION BY BROWNGREER PLC TO RESTRICT USE OF SPECIAL MASTER REPORT PENDING FINAL REVIEW AND DECISION BY THE COURT</u>**

BrownGreer PLC ("BrownGreer") submits this Memorandum in Support of its Motion seeking entry of an Order restricting use by BP, Class Counsel and the Claims Administrator of certain portions of the Report of Special Master Louis J. Freeh filed on September 6, 2013 (Document 11287) ("Report") until BrownGreer has had the opportunity to be heard on such Report and the Court has fully considered whether to reject the conclusions and remarks in those portions of the Report. While BrownGreer (1) agrees with Mr. Freeh's conclusion that the DHECC can "fairly and efficiently process[] and pay[] honest and legitimate claims in a timely manner" and (2) looks forward to working with Mr. Freeh on his Third Mandate and other actions contemplated in the Court's September 6, 2013 Order, we must now take the steps necessary to correct the record regarding the inaccurate statements in the Report related to BrownGreer.

1

# I. STATEMENT OF THE CASE

Since May 2012, BrownGreer has provided services to Patrick Juneau, the Claims Administrator of the Court Supervised Settlement Program established under the Deepwater Horizon Economic and Property Damages Settlement Agreement. Among other services, BrownGreer created the process for the review of claims received by the Program, procured and trained staff needed to process the claims, and procured and trained the staff in the 18 Claimant Assistance Centers used in the Program.

In his Report, Mr. Freeh expresses views about BrownGreer that are based upon incorrect assumptions and assertions that are contradicted or unsubstantiated by the evidence, as follows:

(1) That BrownGreer used Ms. Christine Reitano and Mr. Lionel Sutton to promote its business interests and resist and undermine new business practices proposed by Mr. David Odom and Mr. Scott Sherick, when in fact BrownGreer has at all times in all of its actions and advice placed the best interests of the Program and Mr. Juneau as its paramount concern. BrownGreer has never taken any action or rendered any advice to Mr. Juneau out of any motivation relating to BrownGreer's financial interests, either through Ms. Reitano or Mr. Sutton, or otherwise. We did oppose certain ideas or projects planned by Mr. Odom and Mr. Sherick that in our judgment were wasteful of time and money of the Settlement Trust, were counterproductive, served no possible useful purpose, and/or would have impaired the successful implementation of the Program.

(2) That BrownGreer did not detect "fraudulent" aspects of claims presented by two claims presented by Casey Thonn in the Seafood Compensation Program, when in fact BrownGreer processed these claims in complete compliance with the evaluation rules established by the Settlement Agreement and the policies adopted by the Claims Administrator governing the review of Seafood Compensation claims. The Report's conclusions on this issue reflect a lack of understanding of the governing criteria for the review of Seafood Compensation claims that we were required to follow.

(3) That BrownGreer did not detect from "social media" until after the Freeh investigation into Casey Thonn that a BrownGreer employee hired locally in New Orleans solely for this Program, who was not married to and did not live with Casey Thonn, had given birth to his child, when in fact the relationship between this employee and Casey Thonn was not covered by and is not considered a conflict of interest under the Code of Conduct issued by the Claims Administrator that BrownGreer was directed to follow. In addition, the controls BrownGreer had in place prevented this employee from rendering any claims by Casey Thonn payable, and, as Mr. Freeh himself concluded on page 80 of his Report, this employee had

2

      never taken any action on any Thonn claims or advanced or influenced the claims in any manner.

  (4)  That BrownGreer "ineptly" terminated the employee who had given birth to Mr. Thonn's child "[w]ithout conducting a proper investigation to examine whether the … Employee improperly advanced or influenced the Thonn claims" (*see* Report at p. 79), when in fact BrownGreer had determined that this employee had not improperly advanced or influenced any Thonn claim, had reported the situation to Mr. Odom and Mr. David Welker in Mr. Juneau's office, and then terminated the employee not because of any conflict of interest under the Claims Administrator's Code of Conduct policy, but instead because she had provided us false information about her relationship and contact with Casey Thonn.  In addition, our termination of this employee had no impact on Mr. Freeh's investigation.

On items (1), (2) and (3) above, BrownGreer was not given notice of these conclusions or any opportunity by Mr. Freeh or his staff to respond to or explain the true facts relating to each one before Mr. Freeh filed his Report on September 6, 2013.  While we did discuss with three of Mr. Freeh's staff on August 1, 2013, the circumstances of the termination of the employee referred to in item (4) above, the factual statements relating to this termination in the Report are incorrect and incomplete and the personal opinion in the Report is unsubstantiated and unfair.  All four of these assertions can be corrected by the Court after it hears the full evidence on each matter in its consideration of whether to accept or to reject these aspects of the Report.

## II.    ARGUMENT

      On September 6, 2013, the Court entered an Order allowing any interested party 14 days to file its response to the Report.  Under Rule 53 of the Federal Rules of Civil Procedure, in acting on a special master's report, the court "must give the parties notice and an opportunity to be heard; may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions."  Fed. R. Civ. P. 53(f)(1); *see also*, *e.g.*, *United States v. City of N.Y.*, No. 07-CV-2067 (NGG) (RLM), at 8-9 (E.D.N.Y. May 9, 2013) (outlining relevant requirements of Rule 53(f)).  Indeed, the United States Supreme Court amended Rule 53 in 2003 to, *inter alia*, (1) require that district courts "must" afford an

3

opportunity for parties to be heard on objections to a special master's report and (2) change the district court's standard of review on a special master's findings of fact from a review for clear error to a *de novo* review.  *See* Fed. R. Civ. P. 53 advisory committee's notes on 2003 amendment; *see also Summers v. Howard Univ.*, 374 F.3d 1188, 1195 n.6 (D.C. Cir. 2004) (noting that Fed. R. Civ. P. 53 was amended in 2003 to provide for *de novo* review of a special master's fact findings by the district court).  In combination, these intentional changes made to Rule 53 (1) signal that special masters can and do make material errors in issuing formal reports and (2) underscore the importance of the rule that interested parties *must* have the opportunity to correct those errors.  In accordance with Rule 53 and the Court's September 6, 2013 Order, BrownGreer will file a response with supporting evidence asking the Court to reject Mr. Freeh's conclusions on each of the four matters identified above and, if the Court feels it necessary, to hear evidence on each issue before allowing these findings to stand.

      BrownGreer will rely upon the process before the Court under Rule 53(f)(1) to correct the record by rejecting these findings.  Until then, however, the presence of these statements in a filed Report threatens irreparable harm to the Program by causing the Class and the public to doubt unnecessarily the integrity of the Program.  They also threaten irreparable harm to BrownGreer and its unblemished reputation.

      That harm will be exacerbated each time the erroneous findings are repeated in any court filing made by BP, Class Counsel, or the Claims Administrator, or their representatives until the Court has had the chance to hear and decide whether to reject the findings.  Such dissemination of these accusations would effectively deprive the Court of a meaningful opportunity under Rule 53(f)(1) to consider whether to accept these aspects of the Report and would permanently deny BrownGreer its fundamental due process rights of notice and to be heard.  Further, district courts

4

do not take substantive action based on conclusions in a special master's report until after hearing and ruling upon all objections to the report. *See*, *e.g.*, *L-3 Commc'ns Corp. v. Jaxon*, No. 10-cv-02868-MSK-KMT, at 2 (D. Colo. Apr. 18, 2013) (staying an order the Court improperly entered based on a special master's report before affording an opportunity for objectors to be heard). As such, any court filing claiming support in the findings of the Freeh Report would be premature if made prior to the resolution of all objections to the Report because (1) the Court could not take action on that filing until hearing and ruling upon all objections to the Report, and (2) the Court's decisions on the objections made to the Report could – and we are confident will – change or reject certain findings of the Report. While, of course, the parties may refer to these and any sections of the Report in filings made in accordance with Rule 53(f)(1) relating to the Court's consideration of the Report, they should not be repeated or perpetuated in any other court filings until they are heard and resolved by this Court.

### III. CONCLUSION

For these reasons and to preserve the status quo until the Court can hear and rule upon the findings in the Report, BrownGreer submits that its Motion to restrict the use of these portions of the Report should be granted.

Respectfully submitted,

**BROWNGREER PLC**

By:    /s/ Orran L. Brown
Orran L. Brown
VSB No. 26832
Lynn C. Greer
VSB No. 29211
BrownGreer PLC
250 Rocketts Way
Richmond, VA  23231
Telephone:  (804) 521-7200
Facsimile:  (804) 521-7299
obrown@browngreer.com
lgreer@browngreer.com

5

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/EDF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 9th day of September, 2013.

                                                    /s/ Orran L. Brown