# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179<br><br>SECTION J |
| This document relates to all actions. | * * * | Honorable CARL J. BARBIER<br><br>Magistrate Judge SHUSHAN |

| | | |
|---|---|---|
| Bon Secour Fisheries, Inc., et al., individually and on behalf of themselves and all others similarly situated,<br>     Plaintiffs,<br><br>v,<br><br>BP Exploration & Production Inc., BP America Production Company, BP p.l.c.,<br>     Defendants. | * * * * * * * * * * * | SECTION J<br><br>  Honorable CARL J. BARBIER<br><br>Magistrate Judge SHUSHAN |

## BP'S MEMORANDUM IN OPPOSITION TO CLASS COUNSEL'S MOTION TO AUTHORIZE CLAIMS ADMINISTRATOR TO IMPLEMENT THE SETTLEMENT AGREEMENT WITH RESPECT TO OIL & GAS SUPPORT SERVICES INDUSTRY CLAIMS

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

BACKGROUND ............................................................................................................... 3

I.  For Claims Subject To Moratoria Loss Review, The Settlement
Agreement Specifies That The Claims Administrator Shall Apply
Compensation Criteria To Be Agreed Upon By BP And Class Counsel,
Not Criteria Imposed On The Settling Parties By The Court Or The
Claims Administrator................................................................................................. 3

II.  The Claims Administrator Issued A Preliminary Proposal For Claims
Subject To Moratoria Review To Which BP Cannot Agree.................................... 5

    A.  The Claims Administrator Issued A Preliminary Policy In March 2013................ 5

    B.  Settlement Program Staff Criticized In Special Master Freeh's Report
Played Key Roles In Development Of The Claims Administrator's Draft
Policy. ................................................................................................................ 6

    C.  The Claims Administrator's Draft Policy Violates The Settlement
Agreement And Would Result In Erroneous And Inflated Compensation
Awards. ............................................................................................................. 7

III.  Class Counsel Unilaterally Terminated Discussions With BP To Develop
Agreed-Upon Compensation Criteria For Claims Subject To Moratoria
Loss Review........................................................................................................... 9

ARGUMENT.................................................................................................................. 13

I.  Neither The Claims Administrator Nor The Court May Unilaterally Create
And Impose A Compensation Methodology For Claims Subject To
Moratoria Loss Review.......................................................................................... 13

    A.  The Claims Administrator Lacks Authority To Deviate From The
Settlement Agreement's Terms To Devise And Implement A
Compensation Methodology For Claims Subject To Moratoria Loss
Review To Which BP Does Not Agree. ............................................................. 13

    B.  The Court Under The Law Also Lacks Authority To Disregard The Plain
Terms Of The Settlement Agreement So As To Impose Upon BP A
Compensation Methodology For Claims Subject To Moratoria Loss
Review To Which BP Did Not Agree................................................................. 14

i

**Page**

        (i)      Rule 23 Prohibits The Court From Altering Or Modifying The Bargained-For Terms Of The Settlement Agreement. ......................15

        (ii)    As A Matter Of Contract Law, The Court Must Enforce The Settlement Agreement In Accordance With Its Express Terms. ..................................................................................16

II.    Even If The Court Possessed Authority To Disregard The Settlement Agreement Requirement That Moratoria Loss Review Compensation Criteria Be Agreed Upon By BP, The Claims Administrator's Draft Proposal Is Not Enforceable. ..........................................................17

    A.    The Claims Administrator's Draft Moratoria Loss Analysis Is Unlawful Because It Violates The Settlement Agreement's Express Terms.........................17

    B.    The Claims Administrator's Draft Moratoria Loss Analysis Violates Numerous Requirements Of Rule 23.....................................18

III.   Even If The Court Possessed Authority To Disregard The Settlement Agreement Terms (Which It Does Not), It Would Be Premature To Allow The Claims Administrator To Issue A Moratoria Loss Review Policy. ............................19

    A.    The Involvement Of Tiger Sutton, Christine Reitano And Orran Brown In Creating The Draft Moratoria Loss Analysis Dictate That No Policy Should Issue Until Special Master Freeh Completes His Investigation. ...............19

    B.    Class Counsel's Motion Fails To Comply With Procedural Requirements. .........20

    C.    Class Counsel's Motion Is Premature Because They Did Not Follow The Panel Process Required To Bring Issues Before The Court. .................................21

CONCLUSION.....................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alford v. Kuhlman Elec. Corp.,*
    716 F.3d 909 (5th Cir. 2013) ........................................................................................ 16

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ............................................................................................... 18, 19

*AT&T Mobility L.L.C.. v. Concepcion,*
    131 S. Ct. 1740 (2011) ................................................................................................. 17

*Broad v. Rockwell Int'l Corp,*
    642 F.2d 929 (5th Cir. 1981) ....................................................................................... 17

*Comcast Corp. v. Behrend,*
    133 S. Ct. 1426 (2013) ................................................................................................. 19

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) ..................................................................................... 16

*Delta Seaboard Well Serv's v. Am. Int'l Specialty Lines Ins. Co.,*
    602 F.3d 340 (5th Cir. 2010) ....................................................................................... 17

*Dennis v. Kellogg Co.,*
    697 F.3d 858 (9th Cir. 2012) ....................................................................................... 16

*Evans v. Jeff D.,*
    475 U.S. 717 (1986) ..................................................................................................... 15

*Exum v. Laub,*
    87 F.2d 73 (5th Cir. 1936) ........................................................................................... 17

*Freeman v. B&B Assocs.,*
    790 F.2d 145 (D.C. Cir. 1986) .................................................................................... 16

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982) ..................................................................................................... 18

*Halvorson v. Auto-Owners Ins. Co.,*
    718 F.3d 773 (8th Cir. 2013) ....................................................................................... 19

*Hollmes v. Continental Can Co.,*
    706 F.2d 1144 (11th Cir. 1983) ................................................................................... 16

**Page(s)**

*In re Asbestos Litig.,*
    90 F.3d 963 (5th Cir. 1996) ............................................................ 15

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
    148 F.3d 283 (3d Cir. 1998) ........................................................... 19

*Jeff D. v. Andrus,*
    899 F.2d 753 (9th Cir. 1989) .......................................................... 16

*Klein v. Nabors Drilling USA L.P.,*
    710 F.3d 234 (5th Cir. 2013) .......................................................... 17

*Klier v. Elf Atochem N. Am., Inc.,*
    658 F.3d 468 (5th Cir. 2011) .......................................................... 15

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ....................................................................... 19

*Pettway v. Am. Cast Iron Pipe Co.,*
    576 F.2d 1157 (5th Cir. 1978) ........................................................ 16

*Piambino v. Bailey,*
    610 F.2d 1306 (5th Cir. 1980) ........................................................ 19

*Reed v. Gen. Motors Corp.,*
    703 F.2d 170 (5th Cir. 1983) .......................................................... 19

*Sullivan v. DB Invs., Inc.,*
    667 F.3d 273 (3d Cir. 2011) ........................................................... 16

*Travelers Indem. Co. v. Bailey,*
    557 U.S. 137 (2009) ....................................................................... 17

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 1541 (2011) ................................................................... 18

*Wilson v. Sw. Airlines,*
    880 F.2d 807 (5th Cir. 1989) .......................................................... 19

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.61 ........................... 16

**Rules**

Fed. R. Civ. P. 23(a)(2) ....................................................................... 18

**Page(s)**

Fed. R. Civ. P. 23(a)(4).................................................................................. 18

Fed. R. Civ. P. 23(b)(3).................................................................................. 18

Local Rule 7.4............................................................................................... 21

When BP and Class Counsel reached the Economic and Property Damages Settlement Agreement in the spring of 2012, they explicitly deferred deciding upon a framework that would govern compensation for businesses and individuals that also had Moratoria Losses. Such Moratoria Losses were expressly excluded from the Settlement. This term "Moratoria Losses" is defined in the Settlement as "any loss whatsoever caused by or resulting from federal regulatory action or inaction directed at offshore oil industry activity — that occurred after May 28, 2010, including the federal moratoria on offshore permitting and drilling activities imposed on May 28, 2010 and July 12, 2010 and new or revised safety rules, regulations, inspections, or permitting activity." Settlement Agreement Ex. 16 at 1. Instead, the parties agreed to "develop agreed upon guidance that the Claims Administrator shall apply" so as to distinguish between Moratoria Losses and any economic loss eligible for compensation under the Settlement. *See* Settlement Agreement Ex. 16 at 4, 7.

BP endeavored in good faith to discuss with Class Counsel the guidance contemplated by the Settlement Agreement. On March 13, 2013, however, several Settlement Program staff members — including Tiger Sutton, who has since resigned under a cloud of investigation — presented the parties with a proposal of their own, one that made use of the business economic loss (BEL) compensation framework, despite an express prohibition against borrowing that BEL compensation framework as defined elsewhere in the Agreement. While discussions continued for a few months thereafter, in August 2013, Class Counsel abruptly declared that they were breaking off discussions with BP. Class Counsel instead filed a motion asking the Court to direct the Claims Administrator to unilaterally select his own criteria by which to compensate claimants who also were or may have experienced Moratoria Losses.

As explained below, Class Counsel's motion should be denied for at least four reasons. *First*, the parties specifically agreed to "develop agreed upon guidance"; while Class Counsel may now think it can get a better deal by appealing directly to the Claims Administrator, both Rule 23 principles and principles of substantive contract law preclude the Claims Administrator or the Court from contradicting or rewriting the Settlement, which requires the parties' concurrence on how to handle these moratoria-related issues. *Second*, even if the Claims Administrator could unilaterally impose his own settlement terms (which he cannot), the draft compensation framework provided by the Claims Administrator violates express terms of the Settlement Agreement, which provide specifically that "the standard business economic loss framework" and "the standard individual economic loss framework" "shall not apply." Moreover, the Settlement Program's draft proposal was prepared with heavy involvement of Tiger Sutton, as well as BrownGreer — both of whom have come under heavy criticism and a serious cloud as a result of the issuance of Judge Freeh's Report last Friday. *Third*, by awarding settlement payments to claimants with no losses to due to the *Deepwater Horizon* spill, the compensation framework proposed by the Claims Administrator raises a host of problems under Rule 23, the prerequisites required to render a class certifiable. In particular, the Claims Administrator's proposed framework fails to comply with the commonality, adequacy, predominance, fairness and Article III standing requirements of Rule 23. *Fourth* and finally, Class Counsel's motion is premature, both because Class Counsel failed to invoke the Panel Process required by the Settlement Agreement and also because the involvement of Tiger Sutton in the development of this policy — as well as that of BrownGreer — mandates that the Court wait until the completion of Judge Freeh's investigatory process. For all these reasons, Class Counsel's motion should be denied.

## BACKGROUND

I.    **For Claims Subject To Moratoria Loss Review, The Settlement Agreement Specifies That The Claims Administrator Shall Apply Compensation Criteria To Be Agreed Upon By BP And Class Counsel, Not Criteria Imposed On The Settling Parties By The Court Or The Claims Administrator.**

Moratoria Losses are excluded from the Economic and Property Damages Settlement Agreement (Rec. Doc. 6430) and "[N]o Class Member shall recover for Moratoria Losses." Settlement Agreement § 3.3, Ex. 16 at 1.  Per the Agreement, "Moratoria Losses" encompass:

> any loss whatsoever caused by or resulting from federal regulatory action or inaction directed at offshore oil industry activity — including shallow water and deepwater activity — that occurred after May 28, 2010, including the federal moratoria on offshore permitting and drilling activities imposed on May 28, 2010 and July 12, 2010 and new or revised safety rules, regulations, inspections or permitting practices.

*Id.* § 38.93, Ex. 16 at 1.

Pursuant to the Settlement Agreement, claims of class members in the Support Services to Oil and Gas Industry are subject to automatic review for Moratoria Losses to ensure that a claimant is not compensated for Moratoria Losses by the Settlement Program.   Settlement Agreement §§ 5.10.3, 1.3.1.10 & 1.3.1.12.  Claims by claimants in the Support Services to Oil and Gas Industry are "subject to the additional provisions discussed in detail" in Exhibit 16.  *Id.* §§ 5.10.3.1.5 & 5.10.3.2.7.

There are a significant number of claims requiring Moratoria Loss review.   The Settlement Program estimated for Class Counsel that, as of June 21, 2013, there were ▇▇▇ potential claims (▇▇ businesses and ▇▇ individuals) requiring Moratoria Loss analysis. (Bloom Decl. ¶ 8 & Ex. A)

For business claimants subject to Moratoria Loss review, Exhibit 16 provides, "*In determinations of moratoria losses, the standard business economic loss framework shall not apply.*" Settlement Agreement Ex. 16 at 3 (emphasis added).  Instead, the Settlement Agreement

3

requires the Claims Administrator to apply a framework to be agreed upon by BP and Class Counsel.  Pursuant to Exhibit 16, for claimants subject to Moratoria Loss review, "***BP and PSC to develop agreed upon guidance that the Claims Administrator shall apply in making compensation determinations that adhere to the moratoria exclusion in the settlement agreement.***"  Settlement Ex. 16 at 4 (emphasis added); *see id.* at 3 ("paramaters agreed upon by the parties . . . ***must*** be applied to distinguish" moratoria from non-moratoria losses) (emphasis added).

Additionally, while business claimants in this category may pursue economic loss claims for "(i) non-moratoria business interruption from Oil & Gas Industry support service activities & (ii) non-Oil & Gas industry economic losses," the "***claimant must establish (i) & (ii) were in the judgment of the Administrator due to or resulting from the DWH Spill.***"  Settlement Agreement Ex. 16 at 3 (emphasis added).  For such claimants, Exhibit 16 provides that the RTP is "applied only to the claimant's base economic loss, if any, that the Claims Administrator determines is non-moratoria economic loss due to or resulting from the DWH Spill," and that a claimant is to receive the RTP for "[o]ther Industries for the zone in which it is located."  *Id.* at 4.

Exhibit 16 also establishes terms governing the claims of individuals subject to Moratoria Loss review, in parallel to but adapted to the fact that such individuals are employees of businesses subject to Moratoria Loss Review.  *See id.* at 6, 7, 8.

Thus, the Settlement Agreement requires an inherently fact-specific analysis to identify whether such claimants have any economic losses due to or relating to the DWH Spill and that are compensable under the Settlement Agreement.  To accomplish this, the Agreement instructs that, "The Settlement Program shall create a dedicated team to evaluate such Claims."  Settlement Agreement §§ 5.10.3.1.1 & 5.10.3.2.3.  Additionally, Exhibit 16 instructs that

claimants subject to Moratoria Loss review "shall be required to provide supplemental information in order for Claims Administrator to conduct this review." Settlement Agreement Ex. 16 at 2 and 6.

## II.   The Claims Administrator Issued A Preliminary Proposal For Claims Subject To Moratoria Review To Which BP Cannot Agree.

### A.   The Claims Administrator Issued A Preliminary Policy In March 2013.

BP and Class Counsel have yet to agree on guidance setting forth substantive criteria for the Claims Administrator to apply in making compensation determinations for claims subject to Moratoria Loss review.

On October 11, 2012, pursuant to a request from the Claims Administrator issued several days earlier, both BP and Class Counsel submitted separate responses to the Claims Administrator setting forth compensation criteria that should apply for claims subject to Moratoria Loss analysis. (Bloom Decl. ¶ 10 & Exs. C & D)  Included in BP's submission were proposed compensation criteria substantially similar to those it had shared with Class Counsel in April 2012.  (*Id.*)  In violation of the terms of Exhibit 16 described above, the criteria proposed by Class Counsel would require BP to pay compensation to claimants for economic losses based on the assumption that those losses were due to the DWH Spill when, in fact, they might be excluded Moratoria Losses and/or losses incurred for reasons unrelated to the DWH Spill or Moratoria Losses, such as the crash of natural gas prices.  (Benton Decl. ¶ 5)

On March 13, 2013, at a meeting convened by the Claims Administrator, Tiger Sutton, Christine Reitano, Orran Brown of BrownGreer and several other Settlement Program staff members, presented BP and Class Counsel with a draft proposal, which Mr. Juneau explained was for preliminary discussion purposes, setting forth how the Settlement Program might conduct the Moratoria Loss analysis required by the Settlement Agreement.  (Benton Decl. ¶ 3 &

Exs. 2A, 2B)   This draft included substantive compensation criteria.   (Benton Decl. ¶ 8 &

Exs. 2A, 2B)   The draft stated that both Mr. Sutton and Mr. Brown of BrownGreer would have

"oversight" responsibilities, and directed that Brown Greer would share responsibilities with

accountants for determining ███████████████████████████████ and for

███████████████████████████████.   (Benton Decl. Ex. ¶ 2B at 2-3)

Significantly, and as discussed further below, this is the same Mr. Sutton and the same

BrownGreer that are subjects of extensive critical discussion by Judge Freeh in his September 6

Report.

> **B.**     **Settlement Program Staff Criticized In Special Master Freeh's Report Played Key Roles In Development Of The Claims Administrator's Draft Policy.**

The involvement of Mr. Sutton, Ms. Reitano and Mr. Brown in drafting this policy raises

serious red flags given the findings in the Independent External Investigation Of The Deepwater

Horizon Court Supervised Settlement Program report issued by Special Master Louis J. Freeh on

September 6, 2013.  (Rec. Doc. 11287)

- With regard to Mr. Sutton, Special Master Freeh reports that "***Mr. Sutton was primarily focused on drafting policy for Subsistence Claims and Moratorium claims.***"  *Id.* at 74 (emphasis added).  As noted in the Report, "Mr. Sutton was drafting a policy aimed at providing guidance to DHECC claims analysts as to when a BEL claim should be denied on the basis of the damage deemed a result of the 2010 United States government moratorium on deep sea drilling in the Gulf of Mexico, as opposed to the explosion of the Deepwater Horizon rig."  *Id.* at 65-66.  Special Master Freeh observed that a claim by a company in which Mr. Sutton had a direct financial interest, Romeo Pappa LLC, "would have been directly affected by the policy being drafted by Mr. Sutton, a 50% shareholder [in Romeo Pappa]."  *Id.* at 66, 65-66.

- With regard to Ms. Reitano, Mr. Sutton's wife, Special Master Freeh reports, "***According to Mr. Patrick Juneau, Ms. Reitano became an integral part of his legal team, working on policy and general legal matters***."  *Id.* at 74 (emphasis added).

- With regard to coordination among Mr. Brown, Mr. Sutton and Ms. Reitano, Special Master Freeh reports that "BG [Brown Greer] utilized Mr. Sutton and Ms. Reitano to promote BG's own business and financial interests within the CAO in an effort to resist and undermine the implementation of new business practices which would control costs and eliminate inefficiencies," and "Both Mr. Sutton and Ms. Reitano were in positions to

influence or make policy decisions which directly affected BG." *Id.* at 74. Further, Special Master Freeh finds that "***BG [Brown Greer] coordinated with Ms. Reitano and Mr. Sutton to accommodate BG's interests and efforts to resist and undermine implementation of new policies which would control costs and eliminate inefficiencies.***" *Id.* at 78 (emphasis added). In light of these findings by Judge Freeh, the role of BrownGreer in development of the moratoria policy should be called into question given the extent to which the Settlement Program's draft Moratoria Loss Analysis proposal contemplated that BrownGreer staff would be involved as part of the dedicated team required for review of Moratoria Loss claims. For example, it does not appear BrownGreer staff are appropriate for some tasks listed.

Special Master Freeh recommends that his Report be provided to the United States Department of Justice and the United States Attorney's Office for the Eastern District of Louisiana to determine whether Mr. Sutton and Ms. Reitano violated the federal criminal statutes regarding fraud, money laundering, conspiracy or perjury, and to the State Bar of Louisiana for it to determine whether they violated any disciplinary rules, including the rules relating to the division of attorney fees. (Rec. Doc. 11287 at 86-87)

In sum, the Claims Administrator's work in this moratorium area appears to have been infected by the conduct of Mr. Sutton and BrownGreer — two parties the subject of Judge Freeh's detailed Report.

C.    **The Claims Administrator's Draft Policy Violates The Settlement Agreement And Would Result In Erroneous And Inflated Compensation Awards.**

The Claims Administrator's draft policy violates the terms of the Settlement Agreement and would result in erroneous and vastly inaccurate compensation awards by paying claimants for economic losses that are non-existent and/or non-compensable under the Settlement Agreement. The draft policy contains a number of significant defects, among others:

- The draft proposal incorporates the BEL compensation framework despite the prohibition in Exhibit 16 of the Settlement Agreement that "[i]n determination of moratoria losses, the standard business economic loss framework shall not apply." Settlement Agreement Ex. 16 at 3-4; *see also* Benton Decl. ¶ 10.

- The draft proposal would compensate claimants for Moratoria Losses despite the express prohibition in the Settlement Agreement that "no Class Member shall recover for Moratoria

Losses."  Settlement Agreement Ex. 16 p. 1; *id.* at § 38.93; *see also* Benton Decl. ¶ 7 n4. Indeed, the draft proposal would result in compensation to claimants with Moratoria Losses only, and no losses due to the DWH Spill.  (Benton Decl. ¶ 11)  This is especially likely given the limited time period in which Macondo oil was in the waters where shallow and deepwater industry participants operate, and the limited scope of the oil flow.  Under the draft proposal, compensation to claimants for Moratoria Losses is likely to vastly exceed compensation for losses related to the DWH Spill.  (*Id.*)

- The draft proposal would compensate claimants for losses unrelated either to the DWH Spill or to the activities encompassed in the Settlement Agreement's definition of "Moratoria Losses" despite the language in Exhibit 16 making clear only "non-moratoria loss due to or resulting from the DWH Spill" is compensable.  Settlement Agreement Ex. 16 at 4.  In particular, there are many reasons a claimant may have experienced a loss in 2010 unrelated to the DWH Spill or the actions described in the "Moratoria Loss" definition.  Significantly, natural gas prices crashed in 2009 resulting in significantly decreased shallow-water drilling for activity in the Gulf of Mexico in 2010.  Under the draft proposal, however, compensation to claimants for these unrelated losses is likely to vastly exceed compensation for losses related to the DWH Spill.  (Benton Decl. ¶ 11)

- The draft proposal would compensate claimants based upon assumptions that economic losses are due to the DWH Spill despite the express requirement of Exhibit 16 that "claimant must establish" the losses "were in the judgment of the Claims Administrator due to or resulting from the DWH Spill."  Ex. 16 at 3, 6; *see also* Benton Decl. ¶ 7.

- Even assuming a claimant experienced a loss due to the DWH Spill (and not a loss falling within the definition of "Moratoria Loss" or a loss unrelated to the DWH Spill or to actions encompassed in the "Moratoria Loss" definition), the draft proposal will result in vastly inflated compensation for any such losses.  (Benton Decl. ¶ 11)

- Because the draft proposal would incorporate use of the BEL compensation framework as interpreted and applied by the Claims Administrator, it would extend to this set of claimants the same errors (including in application of the terms "revenue" and "corresponding expenses") at issue in BP's appeal of BEL implementation currently pending in the Fifth Circuit.  (Benton Decl. ¶ 8)

BP outlined its concerns with the Claims Administrator's draft Moratoria Loss Analysis in a submission to the Claims Administrator dated April 1, 2013 with copies to Class Counsel pursuant to a request by the Claims Administrator for comments on the draft proposal his team had presented.  (Bloom Decl. ¶ 12 & Ex. F)

Likewise, on April 1, 2013, Class Counsel submitted their comments on the draft policy to Mr. Juneau.  (*Id.*)  Class Counsel took issue with ███████ that the Claim Administrator's

draft policy proposed would be subject to a Moratoria Loss review.  However, Class Counsel responded that, as for the ██████████████████████████████████ proposed by the Claims Administrator to apply to make compensation determinations, ████████████ ████████████  (Bloom Decl. Ex. F, 4/1/13 Class Counsel submission at 8)

As BP pointed out in a submission to Ms. Reitano on May 8, 2013 (who is also subject to criticism in the Freeh Report), key comments in Class Counsel's April 1 submission are plainly contradicted by the terms of the Settlement Agreement.  (Bloom Decl. Ex. G)  For example, (i) Class Counsel contended the ████████████████████ could apply despite express language to the contrary in Exhibit 16 of the Settlement; (ii) Class Counsel contended the ███ ████████████████████████████████████████████████████ ████████████████████████ despite the express acknowledgement in Ex. 16 that supplemental information would be required of such claimants; (iii) Class Counsel contended the ████████████████████████████████████████████████████ despite express language in the Settlement Agreement and Exhibit 16 stating precisely the opposite; and (iv) Class Counsel contended the ████████████████████████ despite express language to the contrary in Ex. 16.  (Bloom Decl. Ex. G, BP Mem, 5/7/13 at 1-5)

### III. Class Counsel Unilaterally Terminated Discussions With BP To Develop Agreed-Upon Compensation Criteria For Claims Subject To Moratoria Loss Review.

On April 24, 2013, Ms. Reitano inquired about the status of the agreed-upon guidance identified in Ex. 16.  (Bloom Decl. ¶ 14 & Ex. I)  BP responded by proposing discussions with Class Counsel to see if the Parties could reach agreement on guidance for the Claims Administrator to apply.  (Bloom Decl. ¶ 15 & Ex. K)  Class Counsel responded by proposing that BP ████████████████████████████████████████████████████ ████████████████████████  (Bloom Decl. ¶ 15 & Ex. J)

On April 30, 2013, Ms. Reitano informed the Parties that the Claims Administrator intended to announce his position on Moratoria Analysis on May 3; however, no policy issued on that date. (Bloom Decl. 16 & Ex. L)  Instead, on May 6, 2013, Ms. Reitano asked whether the Parties had exhausted their efforts to provide the agreed-upon guidance for claims subject to a Moratoria Loss review referenced in Ex. 16. (Bloom Decl. ¶ 17 & Ex. M)  Steve Herman responded that Class Counsel declined to participate in discussions with BP, and BP responded by noting it did not appear Class Counsel were willing to meet. (Bloom Decl. ¶ 17 & Ex. O)  However, on May 9, 2013, Class Counsel reversed course and agreed to discussions with BP counsel. (Bloom Decl. ¶ 18 & Ex. P)

On May 22, 2013, BP and Class Counsel met in person in New Orleans to discuss development of agreed-upon guidelines for claims subject to Moratoria Loss review, and jointly requested that the Settlement Program refrain from issuing any proposed implementation policies until after the parties had concluded discussions. (Bloom Decl. ¶ 19 & Ex. Q)  Mr. Sutton responded that the Claims Administrator would honor this request. (Bloom Decl. ¶ 19 & Ex. R)

BP and Class Counsel continued with in-person meetings in New Orleans on June 5-6, June 11, June 19-20, June 25 and July 31, 2013. (Bloom Decl. ¶ 20)  However, in these discussions, Class Counsel presented BP with demands contrary to the Settlement Agreement's express terms — almost none of which would comprise a method for the Claims Administrator to use in making compensation determinations for claims subject to automatic review for Moratoria Losses, including these expressed in proposed Moratoria Guidance with twenty-two demands produced to BP on July 5, 2013:

- ███████████████ greater than those specified in Exhibit 16 of the Settlement Agreement;

- significantly increased ███████████ beyond those specified in Section 4.4.13 of the Settlement Agreement;

- revisions to the ████████████ process contrary to the terms of the Settlement Agreement;

- elimination of ██████████ for many, if not all, claims subject to automatic review for Moratoria Losses contrary to Sections 5.10.3.1.14, 5.10.3.2.6 and Ex. 16 of the Settlement Agreement;

- modifications to the ████████████ providing an expansion of the claims reserved and not by claimants subject to the Moratoria Loss review.

- a demand that profits earned by claimants from ██████████ should be excluded from their 2010 revenue thereby inflating their losses.

- expansion of the Settlement Agreement's ████████████ ████████████ to non-class members.

(Bloom Decl. ¶ 20 & Ex. T)

During these discussions BP proposed to Class Counsel written guidelines for conducting the individualized compensation determination called for in Exhibit 16, which BP titled "Individual Analysis Guidelines." At no point did Class Counsel respond with a written proposal for how the individualized analysis of claims subject to Moratoria Loss review contemplated in Exhibit 16 should be conducted.

On July 31, 2013, BP produced an updated copy of these Individual Analysis Guidelines to Class Counsel (a copy of which it subsequently provided to the Claims Administrator), and BP raised objections to many of Class Counsel's demands in its July 5, 2013 Moratoria Guidelines. (Bloom Decl. ¶ 22 & Ex. V) In response, on July 31, 2013, at a meeting between the Parties, Mr. Herman reported to BP that ████████████████████████████ ████████████████████████████████████ ██████████. (Bloom Decl. ¶ 22) Later in the meeting, Joe Rice reported that ████ ████████████████████████████████████

11

and that ███████████████████████████████████████
█████████████ (*Id.*)

Without advance notice to BP, however, on August 8, 2013, Steve Herman told the
Claims Administrator that Class Counsel ██████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████ (Bloom Decl. ¶ 23 &
Ex. W)

BP's counsel expressed surprise to the Claims Administrator that Mr. Herman contended
██████████████████████ in light of prior representations to BP by Messrs. Herman
and Rice at the July 31, 2013 meeting that ████████████████████████
████████████████████████████████. BP also objected to Class
Counsel's request that █████████████████████████ (Bloom Decl. ¶ 24 &
Ex. V)

Despite Mr. Herman having personally represented on July 31 that ████████████
████████████████, in a follow-on email response to the Claims Administrator, he remained
silent, failing to acknowledge his prior comment. Instead, Mr. Herman responded that ██
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████. (Bloom Decl. ¶ 25 & Ex. X)

On August 14, 2013, the Claims Administrator sought clarification from the Parties
stating that █████████████████████████████████████████████
████████████████████████████████████████████████. (Bloom Decl. ¶ 26

& Ex. Y)  Class Counsel responded that  (Bloom Decl. ¶ 27 &

Ex. Z)   BP counsel responded that ███████████████████████

(Bloom Decl. ¶ 27 & Ex. ZA)  BP also observed that the Claims Administrator ████████

████████████████████████████████████, and

requested that, █████████████████████████████

████████████████████████████████

████████████████████.  (*Id.*)  To date, the Claims Administrator has not

provided any further comment on this issue.  No Panel Meeting on this topic has thus taken

place.

Without notice to BP, and without consulting with BP prior to filing, Class Counsel filed

its Ex Parte Motion on August 27, 2013.

## ARGUMENT

I.  **Neither The Claims Administrator Nor The Court May Unilaterally Create And Impose A Compensation Methodology For Claims Subject To Moratoria Loss Review.**

A.  **The Claims Administrator Lacks Authority To Deviate From The Settlement Agreement's Terms To Devise And Implement A Compensation Methodology For Claims Subject To Moratoria Loss Review To Which BP Does Not Agree.**

The Settlement Agreement restricts the authority of the Claims Administrator by

providing that he must "faithfully implement and administer the Settlement, *according to its*

*terms and procedures*, for the benefit of the Economic Class, consistent with this Agreement,

and/or as agreed to by the Parties and/or as approved by the Court."  Settlement Agreement

§ 4.3.1 (emphasis added).  The terms and procedures of the Settlement Agreement require the

Claims Administrator to apply agreed-upon guidance from BP and Class Counsel to make

compensation decisions for claims subject to automatic review for Moratoria Losses.  Settlement

Agreement Ex. 16 at 3 ("[T]he Claims Administrator's dedicated team shall be given *parameters*

13

*agreed upon by the parties that must be applied . . . .*"); Settlement Agreement Ex. 16 at 4 & 7 ("BP and PSC to develop *agreed upon guidance that the Claims Administrator shall apply* in making compensation determinations . . . .") (emphasis added).   As such, the Claims Administrator lacks authority under the Settlement Agreement to formulate and implement guidelines of his own invention, simply because Class Counsel has decided that it is no longer interested in continuing discussions with BP to reach agreement as the Settlement Agreement contemplates.

Moreover, nothing in the Settlement Agreement authorizes the Claims Administrator to change claims criteria or create new compensation frameworks.  To the contrary, "[t]he Claims Administrator shall explore and consider the utilization of streamlined procedures to improve the efficiency of the Claims process, *without changing Claims criteria*."   Settlement Agreement § 4.4.7 (emphasis added).  Thus, the Claims Administrator cannot alter or ignore the terms of the Settlement Agreement by creating and applying his own compensation methodology for claims subject to Moratoria Loss review as Class Counsel requests.

Accordingly, Class Counsel's motion should be denied because it seeks relief beyond the authority of the Claims Administrator.

**B.    The Court Under The Law Also Lacks Authority To Disregard The Plain Terms Of The Settlement Agreement So As To Impose Upon BP A Compensation Methodology For Claims Subject To Moratoria Loss Review To Which BP Did Not Agree.**

Pursuant to Settlement Agreement Sections 15.1.13 and 18.1, the Court retained jurisdiction of the Settlement Agreement "to interpret, implement, administer and enforce the Settlement Agreement, *in accordance with its terms,*" (Rec. Doc. 8139) ¶ 17 (emphasis added). The terms of the Settlement Agreement in this case (a) require the Claims Administrator to use guidelines agreed upon by BP and Class Counsel for claims subject to review for Moratoria

Losses, Ex. 16 at 3, 4 &7; (b) prevent the Claims Administrator from changing the claims criteria, Settlement Agreement § 4.4.7; and (c) allow the Claims Administrator only to "faithfully implement and administer the Settlement, according to its terms and procedures," *id.* at § 4.3.1. The Court must therefore interpret, implement, administer, and enforce those clear, bargained-for terms — all of which are incompatible with an order purporting to empower the Claims Administrator to create and apply a compensation methodology of his own design for claims subject to Moratoria Loss review.

(i)   **Rule 23 Prohibits The Court From Altering Or Modifying The Bargained-For Terms Of The Settlement Agreement.**

The Fifth Circuit has ruled that Rule 23 prohibits courts from changing the negotiated terms of a settlement agreement:

> ***Because a district court's authority to administer a class-action settlement derives from Rule 23, the court cannot modify the bargained-for terms of the settlement agreement.***   That is, while the settlement agreement must gain the approval of the district judge, ***once approved its terms must be followed by the court and the parties alike.***

*Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (citations omitted; emphasis added).   Applying this principle, the Fifth Circuit found that the district court abused its discretion by ordering a non-contractual distribution of unused medical-monitoring funds in light of the "bargained-for terms of the settlement agreement," which required distribution of residual funds to the class.  *Id.* at 471.  As the Court explained, "The terms of the settlement agreement are always to be given controlling effect." *Id.* at 476.

The Fifth Circuit's ruling in *Klier* follows the Supreme Court's recognition that "the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed." *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986); *see also In re Asbestos Litig.*, 90 F.3d 963, 1025 (5th Cir.

15

1996) ("In reviewing the approval of a class action settlement, we may not modify the terms of the settlement but must approve or disapprove it in its entirety.") (emphasis added); *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1172 (5th Cir. 1978) ("Typically, class action settlements are reached by the parties, who draft a consent decree which is submitted to the trial judge for approval. The court's role is generally limited to mediating disputes and offering suggestions. Indeed, we have recently stated that while the court in reviewing a settlement may make suggestions for modifications of the proposed decree, it may not unilaterally change the decree. Approval of the parties' settlement must be either given or withheld."); *Cotton v. Hinton*, 559 F.2d 1326, 1331-32 (5th Cir. 1977) ("We must consider the effect of the settlement as a whole. We are not free to delete, modify or substitute certain provisions of the settlement. The settlement must stand or fall as a whole.").[1]

> **(ii)     As A Matter Of Contract Law, The Court Must Enforce The Settlement Agreement In Accordance With Its Express Terms.**

Moreover, as the Fifth Circuit has explained, "A settlement agreement is a contract." *Alford v. Kuhlman Elec. Corp.*, 716 F.3d 909, 912 (5th Cir. 2013). As a matter of black-letter contract law, "A court may not rewrite a term of a contract by 'interpretation' when that term is

---

[1] *See also Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness," and we cannot "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety.") (internal quotation marks omitted); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 312 (3d Cir. 2011) (*en banc*) ("It is well established that 'settlement agreements are creatures of private contract law.' A district court is not a party to the settlement, nor may it modify the terms of a voluntary settlement agreement between parties.") (citations and internal quotation marks omitted); *Jeff D. v. Andrus*, 899 F.2d 753, 758 (9th Cir. 1989) (holding in context of class action settlement that "courts are not permitted to modify settlement terms or in any manner to rewrite agreements reached by parties"); *Freeman v. B&B Assocs.*, 790 F.2d 145, 151 (D.C. Cir. 1986) ("According to the Supreme Court, Rule 23(e) of the Federal Rules of Civil Procedure does not permit a court to materially modify a proposed settlement and order its acceptance over either party's objection."); *Hollmes v. Continental Can Co.*, 706 F.2d 1144, 1160 (11th Cir. 1983) (holding that "[c]ourts are not permitted to modify settlement terms or in any manner to rewrite the agreement reached by the parties" and concluding that, where defendant had negotiated a settlement that did not permit opt outs but court concluded that permission to opt out was necessary, then if the allowance of opts outs could increase the defendant's liability then the defendant would be allowed to abrogate the class settlement agreement); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.61 ("The judicial role in reviewing a proposed settlement is critical, but limited to approving the proposed settlement, disapproving it, or imposing conditions on it. The judge cannot rewrite the agreement.").

clear and unambiguous on its face." *Broad v. Rockwell Int'l Corp*, 642 F.2d 929, 947 (5th Cir. 1981). Here, there is no ambiguity, for the Settlement Agreement expressly states that the Claims Administrator must apply parameters "agreed upon" by BP and Class Counsel in making compensation determinations for claims subject to automatic moratoria loss review. Settlement Agreement Ex. 16 at 3, 4. Where a contract is clear and unambiguous, rules of construction should not be resorted to; the courts will enforce it according to its terms." *Exum v. Laub*, 87 F.2d 73, 74 (5th Cir. 1936).[2]

**II.   Even If The Court Possessed Authority To Disregard The Settlement Agreement Requirement That Moratoria Loss Review Compensation Criteria Be Agreed Upon By BP, The Claims Administrator's Draft Proposal Is Not Enforceable.**

**A.   The Claims Administrator's Draft Moratoria Loss Analysis Is Unlawful Because It Violates The Settlement Agreement's Express Terms.**

The Settlement Agreement imposes a number of requirements that the Moratoria Loss review must satisfy. As noted above, the first is that the policy must be agreed upon by the parties; the absence of such agreement here is reason enough to deny Class Counsel's motion. But separate and apart from that requirement, the Settlement Agreement identifies several other relevant criteria that are violated by guidance proposed by Class Counsel. These criteria include the prohibition that "the standard business economic loss framework shall not apply;" the requirement that the claimant has the burden to prove its losses were "due to or resulting from the DWH Spill," and a *per se* requirement that there be no recovery for Moratoria Losses. *See*

---

[2] *See also, e.g.*, *AT&T Mobility L.L.C.. v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) ("In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms.") (citations omitted); *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150 (2009) ("[I]t is black-letter law that the terms of an unambiguous private contract must be enforced irrespective of the parties' subjective intent . . . ."); *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 237 (5th Cir. 2013) ("When a contract's terms are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."); *Delta Seaboard Well Serv's v. Am. Int'l Specialty Lines Ins. Co.*, 602 F.3d 340, 343 (5th Cir. 2010) ("The plain language of an insurance policy, like that of any other contract, must be given effect when the parties' intent may be discerned from the plain language.").

*supra* at 4, Factual Background, Section I.  The Moratoria Loss Analysis proposed by the Claims

Administrator violates each of these Settlement Agreement requirements.  *See supra* at 7, Factual

Background, Section II.  Accordingly, the same Rule 23 and black letter contract law principles

discussed above, *see supra* at 15-16, Argument, Section II, apply and mandate rejection of such

a policy.

**B.**     **The Claims Administrator's Draft Moratoria Loss Analysis Violates Numerous Requirements Of Rule 23.**

The Claims Administrator's draft Moratoria Loss analysis must be rejected because it

fails to comply with Rule 23 in at least these respects:

- *Commonality*:  Under Rule 23(a)(2), a class cannot be certified unless "there are questions of law or fact common to class" Fed. R. Civ. P. 23(a)(2).  In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court explained that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"   131 S. Ct. 1541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  The proposed Moratoria Loss Analysis that the Claims Administrator and his subordinates have developed would include within it the class claimants whose injury was not caused by the DWH incident.  *See supra* at 5, Background, Section II.  If that occurs, there is no common question among all class members to which an answer "will resolve an issue that is central to the validity of each one of the claims."  *Id.* at 2551.

- *Adequacy*:  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  To satisfy this requirement, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (internal quotation marks omitted).  The Claims Administrator's draft analysis would insert new groups of claimants into the class, resulting in intractable intra-class conflicts and rendering the named plaintiffs inadequate class representatives.  As a result of the proposal's rewriting of the Settlement Agreement, the class would include claimants injured by the DWH incident, claimants who suffered no injuries whatsoever, and claimants who suffered injuries not caused by the DWH incident, including claimants who suffered only moratoria losses.  Such a class could not satisfy Rule 23(a)(4).

- *Predominance*:  Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *see also Amchem*, 521 U.S. at 623 (predominance theory "tes[ts] whether proposed classes are sufficiently cohesive to warrant adjudication by representation.").  By authorizing compensation for a large number of claimants who were not injured by BP's alleged conduct related to the DWH incident, *see supra* at 3, 5, Background, Sections I and II, the proposed moratoria policy would destroy the class

cohesiveness necessary to satisfy this demanding standard.  *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) (holding that "a model purporting to serve as evidence of damages in this class action must measure only those damages attributable" to plaintiffs' theory of liability and that without such a model, "[plaintiffs] cannot show Rule 23(b)(3) predominance.").

- *Fairness*: By requiring district courts to approve only those class settlements that are "fair, reasonable, and adequate," Rule 23(e) "protect[s] the nonparty members of the class from unjust or unfair settlements affecting their rights.'"  *Wilson v. Sw. Airlines*, 880 F.2d 807, 818 (5th Cir. 1989) (quoting *Piambino v. Bailey*, 610 F.2d 1306, 1327 (5th Cir. 1980)).  The proposed moratoria policy would violate this guarantee by allowing claimants with losses caused by disparate events — some entirely unrelated to the DWH incident — to receive compensation under the same formula as class members who were injured by BP's alleged conduct.  *See supra* at 7, Background, Section II.  Thus, the settlement would no longer provide a "fair approximation of [class members'] relative entitlement" to relief.  *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 324 n.73 (3d Cir. 1998) (in evaluating fairness, courts should consider "[w]hether persons with similar claims will receive similar treatment").

- *Article III Standing*: Rule 23 "must be interpreted in keeping with Article III constraints," *Amchem*, 521 U.S. at 613.  Yet the proposed moratoria policy would bring claimants into the class who cannot "show an injury in fact that is traceable to the defendant and likely to be redressed in a favorable decision" (*Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013)), and — by compensating for injuries unrelated to the DWH incident — would sever the "causal connection between the injury and the conduct complained of" required for Article III standing, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  *See supra* at 7, Background, Section II.

III.   **Even If The Court Possessed Authority To Disregard The Settlement Agreement Terms (Which It Does Not), It Would Be Premature To Allow The Claims Administrator To Issue A Moratoria Loss Review Policy.**

   A.   **The Involvement Of Tiger Sutton, Christine Reitano And Orran Brown In Creating The Draft Moratoria Loss Analysis Dictate That No Policy Should Issue Until Special Master Freeh Completes His Investigation.**

   The Claims Administrator's Moratoria Loss Analysis proposal was created by individuals recently found by Special Master Freeh to have acted in their own self-interest with regard to development of policies.   *See supra* at 6, Background, Section II.   Specifically, Special Master Freeh found that Mr. Sutton was among the attorneys who "worked together to corrupt [the] settlement process."   Rec. Doc. 11287 at 85.   The Court has ordered that

Special Master Freeh "examine and evaluate the internal compliance program and anti-corruption controls within the CSSP, and make any necessary recommendations to design and to implement such additional controls, policies, procedures, and practices to ensure the integrity of the CSSP." (Rec. Doc. 11288 at 2)[3]  Thus, even if the Court were to hold that it has authority to impose upon BP compensation criteria for claimants subject to Moratoria Loss review created by the Claims Administrator, fundamental fairness requires that consideration be given to implementing policies and procedures that will assure the original proposed policy is abandoned and any new policy is not drafted for the sake of personal financial gain of Settlement Program staff or vendors.   Until the Settlement Program implements controls recommended by Special Master Freeh to avoid a reprise of the misconduct detailed in Judge Freeh's Report, the Settlement Program must not be allowed to implement a moratorium policy.

### B.      Class Counsel's Motion Fails To Comply With Procedural Requirements.

Class Counsel's motion is procedurally improper on two grounds.  *First*, even if the Moratoria Loss compensation criteria could be imposed through the Panel Process, Class Counsel did not comply with Section 18.2 of the Settlement Agreement which requires that "[b]efore filing any motion in the Court raising a dispute arising out of or related to this Agreement, counsel for the Parties shall consult with each other and certify to the Court that they have consulted." Settlement Agreement § 18.2. Class Counsel did not consult with BP about its Ex Parte Motion before filing it.  *Second*, although Class Counsel's motion is styled as an ex parte motion, in fact it is a contested motion.  By Class Counsel's own admission, it knew BP opposed Class Counsel's requested relief.  Rec. Doc. 11156 ¶ V.  Nonetheless, Class Counsel

---

[3] BP recognizes that the Court has given the parties 14 days in which to object to Judge Freeh's Report, and that the Court has not yet adopted it.  Having said that, however, Judge Freeh conducted an extensive and detailed investigation; he has issued a comprehensive report as to the precise set of issues he has investigated thus far; and his Report warrants this Court denying Class Counsel's motion given the findings made by Judge Freeh.

failed to comply with Local Rule 7.4, which requires that all contested motions must be accompanied by a separate memorandum of supporting authority and a copy of all evidence supporting the motion if the motion requires consideration of facts not in the record. Local Rule 7.4.

### C.   Class Counsel's Motion Is Premature Because They Did Not Follow The Panel Process Required To Bring Issues Before The Court.

With respect to interpretive disputes that are subject to resolution by the Court, the Settlement Agreement requires a Claims Administration Panel be convened before "any issues or disagreements that arise regarding the Claims Administrator's oversight responsibilities, Settlement administration, or any other issues involving the Settlement Program" can be referred to the Court.  Settlement Agreement § 4.3.4.[4]  Only issues or disagreements "that cannot be unanimously resolved by the Claims Administration Panel will be referred to the Court for resolution." *Id.*  Here, Class Counsel has not requested, and the Claims Administrator had not convened, a Panel to address the Claims Administrator's lack of authority to create and apply his own set of unilateral guidelines for compensating claims subject to automatic review for Moratoria Losses.  Class Counsel's motion is therefore premature.

### CONCLUSION

For the foregoing reasons, BP respectfully requests that the Court deny Class Counsel's Ex Parte Motion.

---

[4] In referencing the Panel Process, BP nonetheless reserves all of its substantive rights concerning resolution of the issues addressed in this Opposition.

September 9, 2013

Respectfully submitted,

_/s/ Richard C. Godfrey, P.C._

James J. Neath
Mark Holstein
BP AMERICA INC.
501 Westlake Park Boulevard
Houston, TX 77079
Telephone: (281) 366-2000
Telefax: (312) 862-2200

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Telefax: (312) 862-2200

Daniel A. Cantor
Andrew T. Karron
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Telephone: (202) 942-5000
Telefax: (202) 942-5999

Jeffrey Bossert Clark
Steven A. Myers
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Telefax: (202) 879-5200

Jeffrey Lennard
Keith Moskowitz
DENTONS US LLP
233 South Wacker Drive, Suite 7800
Chicago, IL 60606
Telephone: (312) 876-8000
Telefax: (312) 876-7934

_/s/ Don K. Haycraft_
S. Gene Fendler (Bar #05510)
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108

**OF COUNSEL**

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 662-5985
Telefax: (202) 662-6291

**ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.
AND BP AMERICA PRODUCTION COMPANY**

22

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 9th day of September, 2013.

/s/ Don K. Haycraft
Don K. Haycraft