IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>This document relates to all actions. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | MDL NO. 2179<br><br>SECTION J<br><br><br>Honorable CARL J. BARBIER<br><br>Magistrate Judge SHUSHAN |
| Bon Secour Fisheries, Inc., et al., individually and on behalf of themselves and all others similarly situated,<br>   Plaintiffs,<br><br>v.<br><br>BP Exploration & Production Inc.; BP America Production Company; BP p.l.c.,<br>   Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Action No. 12-970<br><br>SECTION J<br><br><br>Honorable CARL J. BARBIER<br><br>Magistrate Judge SHUSHAN |

### DECLARATION OF WENDY L. BLOOM

I, Wendy L. Bloom, declare as follows:

1. I am over twenty-one years of age and make this Declaration based on my own personal knowledge.

2. I am a partner of the law firm of Kirkland & Ellis LLP, and I am one of the counsel for BP Exploration & Production Inc., BP America Production Company, and BP p.l.c. in the above-captioned case. I have personally and directly participated in post-settlement communications and discussions with the Claims Administrator and Class Counsel regarding the

Support Services to Oil & Gas Industry and seeking to reach agreed upon guidance for claims subject to automatic review for Moratoria Losses. I also personally and directly participated in negotiating the Economic and Property Damages Settlement Agreement, as amended, (Rec. Doc. 6430) [hereinafter "Settlement Agreement"], including the provisions related to the Support Services to Oil & Gas Industry and Exhibit 16 to the Settlement Agreement.[1] The Settlement Agreement received final approval from the Hon. Carl J. Barbier of the United States District Court for the Eastern District of Louisiana ("District Court") on December 21, 2012 (Rec. Doc. 8138, 8139).

3. I submit this Declaration in support of BP's Memorandum in Opposition to Class Counsel's Motion to Authorize the Claims Administrator to Implement the Settlement Agreement with Respect to Oil & Gas Support Services Industry Claims.

**I.   Introduction**

4. Although "no Class Member shall recover for Moratoria Losses," Settlement Agreement Ex. 16 at 1, the claims of certain class members are also subject to automatic review for Moratoria Losses, *Id.* § 5.10.3, Ex. 16 at 1.

5. Moratoria Losses include "any loss whatsoever caused by or resulting from federal regulatory action or inaction directed at offshore oil industry activity — including shallow water and deepwater activity — that occurred after May 28, 2010, including the federal moratoria on offshore permitting and drilling activities imposed on May 28, 2010 and July 12, 2010 and new or revised safety rules, regulations, inspections or permitting practices." *Id.* § 38.93, Ex. 16 at 1.

---

[1] Unless otherwise defined, all capitalized terms have the definitions assigned to them in the Economic and Property Damages Settlement Agreement. (Rec. Doc. 6430-1.) All "Rec. Doc." numbers refer to MDL 2179. All citations to lettered exhibits *e.g.*, Exhibit A, refer to the exhibits attached to this Declaration.

6. The Settlement Agreement defines class members whose claims are subject to automatic review for Moratoria Losses as the Support Services to Oil and Gas Industry. *Id.* §§ 1.3.1.10 & 1.3.1.12. Claims by claimants in the Support Services to Oil and Gas Industry are "subject to the additional provisions discussed in detail" in Exhibit 16. *Id.* §§ 5.10.3.1.5, 5.10.3.2.7.

7. For business claimants, Exhibit 16 specifies, "the standard business economic loss framework shall not apply." *Id.* Ex. 16 at 3. Similarly, for individual claimants subject to automatic review for Moratoria Losses, "the standard individual economic loss framework shall not apply." *Id.* Ex. 16 at 7. Instead of the standard economic loss framework, the Settlement Agreement requires the Claims Administrator to apply agreed upon guidance supplied by BP and Class Counsel: "BP and PSC to develop agreed upon guidance that the Claims Administrator shall apply in making compensation determinations that adhere to the moratoria exclusion in the settlement agreement." *Id.* Ex. 16 at 4 & 7.

8. As of June 12, 2013, the CSSP estimated that approximately ▆▆▆ claims required the use of agreed upon guidance as claims subject to automatic review for Moratoria Losses. Exhibit A.

9. To date there is no agreed upon guidance from BP and Class Counsel setting forth guidelines for the Claims Administrator to use in making compensation determinations for claims subject to automatic review for Moratoria Loss review.

## II. For Over A Year After The Settlement Agreement Was Signed, Class Counsel Did Not Engage With BP To Develop Any Agreed Upon Guidance

10. On October 11, 2012, Class Counsel proposed unilateral guidance for use in claims subject to automatic review for Moratoria Losses. Exhibit D. Class Counsel's proposal was not directed to BP for possible discussion. Rather, Class Counsel submitted its own

guidelines to the Claims Administrator in response to a Claims Administrator request for input. *See* Exhibit B. After a telephone conference confirming with Class Counsel that they ▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, BP submitted with its response to the Claims Administrator's inquiry a set of proposed guidelines as well. Exhibit C.

11. In March 2013, the Claims Administrator convened a meeting to share with the Parties a draft Moratoria Loss Analysis. (Benton Decl. at ¶ 3.)

12. BP outlined its concerns with the Claims Administrator's draft Moratoria Loss Analysis in a memorandum to the Claims Administrator on April 1, 2013, with copies to Class Counsel. Exhibit E. Likewise, Class Counsel submitted their comments on the draft Moratoria Loss Analysis on April 1, 2013. Exhibit F.

13. BP provided an additional submission to Ms. Reitano on May 8, 2013 to identify key comments in Class Counsel's April 1, 2013 submission that were flatly inconsistent with the terms of the Settlement Agreement. *See* Exhibit G & Exhibit H.

14. On April 24, 2013, Ms. Reitano asked about the status of the agreed upon guidance BP and Class Counsel were to provide the Claims Administrator under Exhibit 16 for claims subject to automatic review for Moratoria Losses. Exhibit I.

15. BP responded, proposing discussions with Class Counsel to develop agreed upon guidance for the Claims Administrator to apply. Exhibit K. In contrast, Class Counsel responded by ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Exhibit J.

16. On April 30, 2013, Ms. Reitano informed the Parties that the Claims Administrator intended to announce a policy for making compensation determinations in claims

4

subject to automatic review for Moratoria Losses on May 3rd. Exhibit L. No policy issued on that date.

17. On May 6, 2013, Ms. Reitano asked whether the Parties had exhausted their efforts to provide agreed upon guidance for claims subject to automatic review for Moratoria Losses. Exhibit M. Steve Herman responded that Class Counsel ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ y ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Exhibit N. BP responded by noting Class Counsel's ▮▮▮▮▮▮▮▮▮▮▮▮ Exhibit O.

18. However, on May 9, 2013, Class Counsel reversed course and reluctantly agreed to meet with BP. *See,* Exhibit P.

### III. Class Counsel Unexpectedly Terminated Discussions Over Agreed Upon Guidance

19. BP and Class Counsel met in person in New Orleans on May 22, 2013, to develop agreed upon guidelines for claims subject to automatic review for Moratoria Losses. The Parties, therefore, jointly requested the Settlement Program refrain from issuing any Moratoria Loss Analysis until the parties had concluded discussions. Exhibit Q. Mr. Sutton responded that the Claims Administrator would honor the request. Exhibit R.

20. BP and Class Counsel also met in New Orleans on June 5-6, June 11, June 19-20, June 25, and July 31, 2013. However, in these discussions, Class Counsel presented BP with demands contrary to the Settlement Agreement's express terms — almost none of which would comprise a method for the Claims Administrator to use in making compensation determinations for claims. For example, Class Counsel in its "Moratoria Guidance dated July 5, 2013, demanded

- ▮▮▮ greater than those specified in Exhibit 16 of the Settlement Agreement, Exhibit S at ¶ 16;
- significantly increased ▮▮▮▮▮▮▮▮▮▮▮▮ beyond those provided in Section 4.4.13 of the Settlement Agreement, *Id.* at ¶ 19;

- revisions to the ███████████████ process contrary to the terms of the Settlement Agreement, *Id.* at ¶ 5;

- eliminated ███████████████ for many, if not all, claims subject to automatic review for Moratoria Losses contrary to Sections 5.10.3.1.14, 5.10.3.2.6, and Exhibit 16 of the Settlement Agreement, *Id.* at ¶ 22;

- demand that profits claimants earned from ███████████ be excluded from 2010 revenue, thereby inflating their losses, *Id.* at ¶ 11;

- modifications to the ███████████████ to expand reserved claims, *Id.* at ¶ 16;

- expansion of the Settlement Agreement's statute of ███████████████ ███████ provisions to non-class members, *Id.* at ¶ 6.

*See also* Exhibit T (Class Counsel's demands for proposed policy changes).

21.  Class Counsel did not provide during any of the negotiations a written proposal for how to conduct the individualized analysis of claims subject to automatic review for Moratoria Losses contemplated in Exhibit 16. In contrast, BP offered — among other proposals — several versions of written individual analysis guidelines, entitled Individual Analysis Guidelines. *See, e.g.*, Exhibit U.

22.  On July 31, 2013, BP produced an updated copy of its proposed Individual Analysis Guidelines to Class Counsel (BP subsequently provided a copy to the Claims Administrator, Exhibit V). BP also raised written objections to many of Class Counsel's demands. In response, Steve Herman reported to BP at a July 31, 2013 meeting that he and Jim Roy ███████████████████████████████████████ and that Joe ███████████████████████████████ After Mr. Roy and Mr. Herman left the meeting, Joe Rice stated that Class Counsel ███████████████████d ███████████████████████, and that ███████████████████y ███████████████████████.

6

23. Without advance notice to BP, on August 8, 2013, Steve Herman informed the Claims Administrator that Class Counsel ███████████████████████████████████ ████████████████████████████████████████████████████████████████████████or ████████████. Exhibit W.

24. BP counsel expressed surprise to the Claims Administrator at Steve Herman's e-mail, given Class Counsel's representations to BP by Messrs. Herman and Rice at the July 31, 2013 meeting — namely that ███████████████████████████████████████ ████████████████████████████████████. Exhibit V. BP also registered its objection to Class Counsel's request that the Claims Administrator propose his own guidelines. *Id.*

25. In a follow-on email response to the Claims Administrator, Steve Herman was silent about his own statements to BP on July 31, 2013. Exhibit X. He instead claimed ██ ████████████████████████████████████████████████████████████████████████ ████████████████████████. *Id.*

26. On August 14, 2013, the Claims Administrator sought clarification from the Parties about whether the Parties had reached an impasse in discussions over agreed upon guidance for claims subject to automatic review for Moratoria Losses. Exhibit Y.

27. Class Counsel responded that ████████████████████ Exhibit Z. BP responded that ██████████████████████████ Exhibit ZA. In addition, BP reiterated its position that the Claims Administrator ████████████████████ ███████████████████████████████████████████████████████████████. *Id.* BP requested also that ████████████████████████████████████████████████ ███████████████████████████. *Id.* To date, there has been no such Panel Meeting and the Claims Administrator has not provided any comment on this issue.

7

28. On August 27, 2013, without seeking a Panel Meeting, without notice to BP, and without filing a memorandum in support of its motion, Class Counsel moved the District Court to direct the Claims Administrator to formulate and implement a set of guidelines of his own creation for use in claims subject to automatic review for Moratoria Losses. (Rec. Doc. 11156.)

29. Attached are what I believe to be true and correct copies of the documents I reference above and that were provided to the Court and/or counsel for the Parties and the Claims Administrator during BP's attempts to develop agreed upon guidance for the Claims Administrator to use in claims subject to automatic review for Moratoria Losses. The letter next to each document corresponds to the attachment tab:

Exhibit A. E-mail from Joe Rice to Wendy Bloom (June 26, 2013)

Exhibit B. Request for the Positions of the Parties on Policy Issues Affecting Claims Administration (October 9, 2012)

Exhibit C. BP's Response to Request for the Positions of the Parties on Policy Issues Affecting Claims Administration (October 11, 2012)

Exhibit D. Class Counsel's Response to Claims Administrator's October 9th Requests for Positions re Policy Issues (October 11, 2012)

Exhibit E. BP Response to Draft CSSP Moratoria Loss Analysis (April 1, 2013)

Exhibit F. Moratoria Class Counsel Response (April 1, 2013)

Exhibit G. BP Memo re Moratoria Class Counsel Response (sent May 8, 2013)

Exhibit H. E-mail from Wendy Bloom to Christine Reitano (May 8, 2013)

Exhibit I. E-mail from Christine Reitano (April 24, 2013)

Exhibit J. E-mail from Steve Herman to Mark Holstein et al. (April 25, 2013)

Exhibit K. E-mail from Wendy Bloom to Steve Herman (April 25, 2013)

Exhibit L. E-mail from Christine Reitano to Wendy Bloom (April 30, 2013)

Exhibit M. E-mail from Christine Reitano to Steve Herman and Wendy Bloom (May 6, 2013)

Exhibit N. E-mail from Steve Herman to Christine Reitano and Wendy Bloom (May 6, 2013)

Exhibit O. E-mail from Wendy Bloom to Christine Reitano (May 8, 2013)

Exhibit P. E-mail from Wendy Bloom to Christine Reitano (May 9, 2013)

Exhibit Q. E-mail from Wendy Bloom to Pat Juneau et al. (May 22, 2013)

Exhibit R. E-mail from Lionel Sutton to Wendy Bloom et al. (May 22, 2013)

Exhibit S. Class Counsel's Moratoria Guidance (July 5, 2013)

Exhibit T. Class Counsel's Proposed Policy Revision (June 11, 2013)

Exhibit U. BP's Proposal for Detailed Individual Analysis Guidelines (exchanged with Class Counsel July 31, 2013; sent to Claims Administrator August 9, 2013)

Exhibit V. E-mail from Julie Shander on behalf of Wendy Bloom to Pat Juneau (August 9, 2013)

Exhibit W. E-mail from Steve Herman to Pat Juneau (August 8, 2013)

Exhibit X. E-mail from Steve Herman to Wendy Bloom (August 9, 2013)

Exhibit Y. E-mail from Rebecca Foreman on behalf of Pat Juneau (August 14, 2013)

Exhibit Z. E-mail from Jim Roy (August 14, 2013)

Exhibit ZA. E-mail from Wendy Bloom to Jim Roy (August 14, 2013).

I declare under penalty of perjury that the foregoing is a true and correct.

_____
Wendy L. Bloom

Dated: September 9, 2013