UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179<br><br>SECTION J |
| Applies to: *All Cases* | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

[Regarding BP's Motion to Redact Report of Dr. Huffman (Rec. doc. 11227)]

On August 30, 2013, BP/Anadarko moved for additional redactions to the reports of Dr. Alan Huffman and Dr. Mohan Kelkar, experts for the U.S. in the Quantification segment.[1]  BP/Anadarko contend that:

1. The U.S. should redact from Dr. Huffman's report one sentence responding directly to withdrawn expert Dr. Ann-Marchand.

2. The U.S. should redact Dr. Huffman's seismic analysis responding to withdrawn expert Dr. Carlos Torres-Verdin.

3. The U.S. should redact Dr. Huffman's independent well log analysis, which sets forth new porosity estimates offered as rebuttal.

The U.S. submitted an opposition.  Rec. doc. 11229.

A.  Material Relating to Dr. Ann-Marchand.

This issue is moot.  The U.S. agreed to redact the sentence.  Id. at 6.  The sentence on page 38 of Dr. Huffman's rebuttal report of June 10, 2013 shall be redacted.

B.  Material Relating to Dr. Huffman's Seismic Analysis.

The argument concerns reservoir connectivity.  The more connectivity there is within the

---

[1] This order is concerned with Dr. Huffman.  A separate order was issued regarding Dr. Kelkar.

reservoir, the more oil can reach the well and flow out.

BP/Anadarko state: (1) none of the U.S. initial experts offered any analysis of the reservoir's connectivity to substantiate the assumption by U.S. experts of complete reservoir connectivity; (2) BP/Anadarko submitted reports from Drs. Torres-Verdin and Martin Bunt; (3) based on his independent analysis of the pre-drill seismic data, Dr. Torres-Verdin offered a <u>new</u> estimate of net rock volume potentially connected to the Macondo well (reservoir connectivity); (4) Dr. Blunt also provided an analysis of the reservoir connectivity; (5) Dr. Blunt's analysis was performed independently of and used different methods from those employed by Dr. Torres-Verdin; (6) Dr. Blunt employed "pressure transient analysis" which is different from seismic analysis; (7) the report by Dr. Kelkar, a U.S. expert, relied on BP's pre-drill seismic interpretation to define the size and overall volume of the Macondo reservoir; and (8) Dr. Huffman issued a rebuttal report.[2]

Dr. Huffman's report contains an analysis of the reports by Drs. Torres-Verdin and Blunt. On July 24, 2013, BP/Anadarko withdrew Dr. Torres-Verdin. Rec. doc. 11227 at 8. BP/Anadarko report that no other BP/Anadarko expert is relying on his seismic interpretation. They contend that the redactions relating to Dr. Torres-Verdin are insufficient. While the U.S. redacted substantial portions of Part III - "Analysis of the Report of Dr. Carlos Torres-Verdin," it did not redact all of it.

Archetypal rebuttal is the identification of a flawed premise in an expert report that casts doubt on both that report's conclusion and its author's expertise. <u>See</u> June 24, 2013 order regarding

---

[2] Rec. doc. 11227 (Attachment - Redacted copy of Dr. Huffman's report of June 10, 2013 (hereafter "Huffman at __").

motion to strike rebuttal experts (Rec. doc. 10450 at 2-3), citing <u>Scientific Components v. Sirenza Microdevices</u>, 2008 WL 4911440, *2 (E.D.N.Y.).  In the analysis of Dr. Torres-Verdin's report, Dr. Huffman states:

> The higher frequencies that are being resolved by the enhanced ThinMAN clearly shows that the M56D and M56E reservoirs are most likely connected in multiple places in 3D and that the shale layer between them is NOT ubiquitous as assumed by Dr. Torres-Verdin.

Huffman at 30.[3]

BP/Anadarko contend Dr. Huffman's seismic analysis is not proper rebuttal to Dr. Blunt's pressure transient analysis, because it does not challenge that analysis.  They urge that the U.S. is attempting to use Dr. Huffman's seismic analysis, including the ThinMAN inversion technology, to respond to Dr. Blunt's pressure depletion analysis.

The U.S. responds that Dr. Huffman's reservoir analysis properly rebuts Dr. Blunt.  It urges that:  (1) Dr. Blunt relied on seismic analysis; (2) Dr. Huffman was not required to use the pressure transient analysis to rebut Dr. Blunt; (3) Part V of Dr. Huffman's report, the analysis of Dr. Blunt's report, incorporates by reference his critique of Dr. Torres-Verdin in Part III of his report; (4) the unredacted portions of Part III apply to Dr. Blunt.

In the June 24, 2013 order regarding motion to strike rebuttal reports, a U.S. rebuttal expert criticizing data used by a BP/Anadarko expert was proper rebuttal.  A U.S. expert who returned to the initial report of a U.S. expert, and attempted to buttress (or affirm) a premise in that initial report was not providing proper rebuttal.  The distinction between criticism (proper rebuttal) and

---

[3] Dr. Huffman describes the ThinMAN technology as designed to overcome the limitations and assumptions in other models so that the seismic data can be used and a correct impedance image of the reservoir can be determined.  Huffman at 26-27.  He states that, "[t]he ThinMAN wavelet extraction algorithm was used to determine the inherent wavelet variations in the seismic data that were used by Dr. Torres-Verdin to perform his inversion analysis."  Huffman at 27.

affirmation (improper) was made several times in the June 24, 2013 order. Rec. doc. 10450 at 3-5. In the July 1, 2013 order regarding the U.S. motion for partial reconsideration of the June 24, 2013 order, the issue was whether the opinion of Dr. Pooladi-Darvish, U.S. rebuttal expert, was in rebuttal to an opinion expressed by Dr. Blunt. It was determined that "a new estimate of microslips and compressibility" was not proper rebuttal. Rec. doc. 10556 at 2. It was not criticism but was affirmation.

> The first page of Dr. Huffman's analysis of the report of Dr. Blunt states:
>
> As discussed in Section III (Analysis of the Report of Dr. Carlos Torres-Verdin) of this report, the total volume of reservoir available to flow to the well as estimated by Dr. Carlos Torres-Verdin is not valid in my expert opinion. The same conclusion applies to Dr. Blunt's reservoir volume estimate for many of the reasons set forth in Section III.

Huffman at 41.

Dr. Huffman describes Dr. Blunt as using three key parameters in his calculations of the oil volume expelled during the blow out: (1) total oil in place that can actually reach the well to flow out to the surface; (2) the reservoir compressibility; and (3) the amount of pressure depletion that occurred. Dr. Huffman states that he has concerns about the first two, but did not evaluate Dr. Blunt's pressure depletion analysis. Huffman at 41. Dr. Huffman's response to the first parameter is referred to as "The Reservoir Volume and Connectivity." Id. at 41-42. He concludes his analysis of Dr. Blunt's report with two sentences on Reservoir Compressibility. Id. at 43.

Dr. Huffman states that, "Dr. Blunt's assumptions about poor connectivity of the reservoirs are not valid as demonstrated clearly by the ThinMAN analysis in section III of this report." Huffman at 41. The issue is whether Dr. Huffman's ThinMAN analysis is proper rebuttal to Dr.

4

Blunt's report on the connectivity of the reservoir. The ThinMAN analysis is a new method of analysis offered to contradict Dr. Blunt on reservoir connectivity.

The U.S. cites In re Genetically Modified Rice Litigation, 2010 WL 4483993, 3 (E.D.Mo.), where the court stated:

> A report is classified as supplemental or rebuttal based on the content of the report. . . . A report qualifies as a rebuttal report if it is intended to contradict or rebut evidence on the same subject matter identified by another party. An expert may introduce new methods of analysis in a rebuttal report if they are offered to contradict or rebut another party's expert. However, the rebuttal report must not extend well beyond the scope of the other party's expert reports. . . .; *see also Ebbert v. Nassau County,* No. CV05–5445(FB)(AKT), 2008 WL 4443238, at *13 (E.D.N.Y. Sept. 26, 2008) ("A rebuttal expert report is not the proper place for presenting new arguments, unless presenting those arguments is substantially justified and causes no prejudice.") (quotations and citations omitted).

Id. at 3 (some citations and quotation marks omitted). In that case the defendants' experts criticized the report of the plaintiff's expert, Bateman, on several grounds. Bateman submitted an econometric analysis noting that defendant's experts criticized his previous reports and therefore the calculations in the econometric analysis were in response to their criticisms. Id. at *1. The court found that Bateman's econometric analysis was proper rebuttal because most of it addressed "previously disclosed methods and issues." Id. at *3.

> In a few limited instances, Bateman adopted new methods of analyses, such as the price model dealing with exports, but these methods are also offered to rebut Bayer's experts' criticisms and fall within the same subject matter as Bayer's experts' criticisms. As a result, Bateman's econometric report was "intended to contradict or rebut evidence on the same subject matter identified by" Bayer's experts.

Id. at *3.

BP cites Home Design Services, Inc. v. Hibiscus Homes of Florida, Inc., 2006 WL 2465020 (M.D.Fla.), where the court determined that an expert report did not solely rebut the report of the defendant's experts, but both rebutted the report of defendant's expert and offered "separate and

distinct analysis." Id. at 4.  The expert offered "independent analysis which should have been disclosed" in an initial report.  Id. at *5.

The parties and their experts have long understood the significance of reservoir connectivity. Dr. Huffman's analysis in Part III of his report is concerned with reservoir connectivity. The ThinMAN analysis in Part III does not address previously disclosed methods and issues in Dr. Blunt's report.  Instead it is an independent analysis which should have been disclosed in an initial report.  The motion for redaction of additional portions of Dr. Huffman's report concerned with responses to the withdrawn expert, Dr. Torres-Verdin, is granted.

C.   Dr. Huffman's Porosity Calculations.

In their rebuttal reports, Dr. Huffman and other experts for the U.S., addressed "pore volume compressibility."  In their motion to strike, BP/Anadarko seek to strike the entire report of Dr. Roegiers as well as pages 12, 36-40 and 75 of Dr. Huffman's report.  Rec. doc. 10445 at 2.  The June 24, 2013 order states:

> Roegiers may criticize the sidewall v. core data used by Zimmerman, but he may not make affirmative calculations supportive of Kelkar's estimate of 12 microsips contained in his initial affirmative report. . . .
>
> \*   \*   \*
>
> As with Roegiers, the criticism of the core tests is a valid rebuttal opinion. However, the affirmative opinion supporting 12 microsips is not. Therefore, the following portions of Huffman's report should be struck: p. 39 second full paragraph through p. 40; the redacted part of paragraph 2 on p. 75.

Rec. doc. 10477 at 4-5.

In their motion for redaction of additional portions of Dr. Huffman's report, BP/Anadarko contend that the following should be redacted as improper rebuttal opinions consisting of affirmative

6

porosity calculations and other affirmative petrophysical opinions derived from new well log analysis that fails to rebut any BP/Anadarko expert.

>    Pages 14-18        Dr. Huffman's well log analysis.
>
>    Page 37            Dr. Huffman's conclusions from his log analysis of the two reservoirs.
>
>    Pages 42 & 75      Opinions about a different reservoir property called permeability.

Rec. doc. 11227 at 2 and 14.[4]

In granting the motion as to material relating to Dr. Huffman's seismic analysis, pages 14-18 of Dr. Huffman's report must be redacted as they are found in Part III of his report concerning the analysis of Dr. Torres-Verdin's report. It is unnecessary to further consider those pages.

In response to the BP/Anadarko motion to strike, the Court refused to strike page 37 of Dr. Huffman's report. BP/Anadarko contend that Dr. Huffman's deposition demonstrates that even though no BP/Anadarko expert presented any new well log analysis, "Dr Huffman slipped in his own 'independent' well log analysis to serve as the basis for new porosity arguments." Rec. doc. 11227 at 12.

The request to have the U.S. redact page 37 is denied. The Court declined to strike that page in the ruling on the motion to strike. The criticism found on page 37 regarding the sidewall core data is valid rebuttal. BP/Anadarko can invoke the four-corners rule for any effort by Dr. Huffman to go beyond his report.

---

[4] At page 2, BP/Anadarko contend that the first full paragraph on page 39 should be redacted. On page 14 when BP/Anadark describe the portions of Dr. Huffman's report that they contend should be redacted, there is no reference to page 39.

7

The remaining issue is Dr. Huffman's discussion of permeability found in the last paragraph on page 42 of his report and one sentence remaining on page 75 of his report. BP describes permeability as a measure of interconnectivity of the rock pores. In the last part of the final paragraph on page 42 of his report, Dr. Huffman uses his log analysis to support a conclusion about the permeability relationships.[5] The ruling in part B above requires the redaction of the log analysis. The U.S. shall redact the last two sentences in the final paragraph on page 42. It is not required to redact the remaining portion of that paragraph. The last sentence on page 75 under Reservoir Permeability will be redacted.

IT IS ORDERED that: (1) the motion of BP to redact report of Dr. Huffman (Rec. doc. 11227) is GRANTED IN PART and DENIED IN PART; (2) **within two (2) calendar days of the entry of this order**, the U.S. shall submit the redacted report of Dr. Huffman in conformity with this order; and (3) the deadline for an appeal of this order is **Thursday, September 12, 2013.**

New Orleans, Louisiana this 10th day of September, 2013.

                                                **SALLY SHUSHAN**
                                                **United States Magistrate Judge**

---

[5] The sentence begins "Based on the range of porosities in the interval from the log analysis, I would expect from basic . . . ." Huffman at 42.