UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | : | MDL NO.  2179 |
| "Deepwater Horizon" in the Gulf | : | |
| of Mexico, on April 20, 2010 | : | SECTION:  J |
| | : | |
| This Document Relates to: | : | JUDGE BARBIER |
| | : | |
| *All Cases* | : | MAG. JUDGE SHUSHAN |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

<u>REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE THE EXPERT TESTIMONY OF DR. SRJDAN NESIC</u>

Dr. Nesic's attempt to develop a quantitative model of erosion using transient Computational Fluid Dynamics failed.  He admitted that failure outright in his deposition, testifying that: "Our transient simulations of the simplified BOP elements executed successfully only for about, I believe, 10 to 12 days. . . . [B]eyond that the calculations destabilized and had to be terminated."  Attachment 1 (Excerpts of the Deposition of Srdjan Nesic, July 23-24, 2013) at 230:18-24.  Dr. Nesic had no choice but to admit during his deposition that the model had crashed, since the United States identified this deficiency in its rebuttal reports.[1]

Dr. Nesic relies on the results of this aborted transient modeling as the sole basis for his conclusion that there was a steady increase in the flow rate from April 22 to May 27 due to erosion.  Nesic Report[2] at 5.  BP[3] acknowledges the centrality of the transient modeling to Dr.

---

[1] In his expert report, Dr. Nesic presented his results as though they had been successful for the entire period.  Dr. Nesic presented his transient modeling as "flesh[ing] out the erosion process" between his pre-erosion and post-erosion simulations.  *See* Nesic Report at 31.  Dr. Nesic nowhere disclosed that in fact the transient simulations covered at most from April 22 until the beginning days of May.  In fact, in Figure 30 of his report, which allegedly shows the results of his transient modeling, Dr. Nesic showed figures of his transient simulation of the BSR at "0 days," "7 days," and "14 days."  Nesic Report at 32.  Dr. Nesic chose to include a depiction of the BSR at 14 days, even though he admits that "in just about all of the simulations … we did, there were problems as the simulations went beyond 10 days."  Attachment 1 at 232:3-6.

[2] Dr. Nesic's Expert Report was included as Attachment 1 to the United States' Memorandum in Support (Dkt. 11058-1) and is not reattached to this Reply.

[3] BP and Anadarko jointly filed an Opposition (Dkt. 11198) to the United States' Motion (Dkt. 11058).  For the sake of brevity, "BP" is used here to refer to both defendants.

Nesic's opinion in its Opposition, characterizing Dr. Nesic's analysis as a three-step process, in which the final step is "determin[ing] the progression of pressure drop change between the pre-erosion and post-erosion fixed points" using transient simulations.  Dkt. 11198 at 4.[4]  BP asserts that because Dr. Nesic had "10 to 12 days of valid data" he "was able to identify a trend that he could apply across the full erosion period."  *Id.* at 5.  But BP fails to acknowledge that at his deposition, Dr. Nesic opined that once you have to extrapolate a trend because you do not have data for the complete period at issue, certain trends are ruled out even though they may be mathematically better fits of the data because they are less dependable when extrapolated.[5]  In light of the failure of his model, Dr. Nesic was restricted to consideration of only certain trends and, in fact, did not look at any trends except a linear fit.  *See* Attachment 1 at 367:22-368:8; 368:24-369:1.

The crashing of Dr. Nesic's model dictated his conclusion.  Had Dr. Nesic's modeling succeeded, it would have produced data points that covered the entire period he was analyzing, there would have been no need for any "extrapolation," and he would have been able to pick the curve that best fit all of the data points.  Instead, because his model could not produce that data, he defaulted to the only curve he felt was appropriate for extrapolation.  Thus, Dr. Nesic's

---

[4] BP makes a number of assertions about areas of Dr. Nesic's opinions that the United States does not specifically attack in its motion.  *See, e.g.,* Dkt. 11198 at 4-5 ("Although the United States' motion appears to acknowledge the reliability of this modeling technique…"; "The United States' motion has nothing to say about these first two steps in Dr. Nesic's analysis.").  BP's assertions are incorrect; the United States simply focused its motion on the faulty basic premise underlying all of Dr. Nesic's modeling work.  Experts for the United States have identified numerous additional flaws in Dr. Nesic's work in their rebuttal reports.

[5] *See* Attachment 1 at 365-67 (admitting that an exponential fit "mathematically . . . provides a slightly better fit for the period of the little over 10 days where [he] had the data," but concluding that it would have been inappropriate to "extrapolate the exponential function beyond the 10 days" in part because he felt that "extrapolation of nonlinear functions, such as the . . . exponential curve in this case… is generally not a good way to approach extrapolation because the behavior of nonlinear functions beyond the data to which they're fitted is unreliable.").

conclusion of a linear trend – the fundamental conclusion upon which his opinion about the flow rate relies – is the result of the failure of his modeling.  That modeling, and the conclusion of a linear trend, should be excluded as unreliable under Federal Rule of Evidence 702 and *Daubert*.

Dr. Nesic's opinion is further barred, as explained in the United States' motion, because he failed to produce the sensitivity runs that allegedly support his conclusions.  The modeling Dr. Nesic relied on to reach his conclusions included inputs for particle size, fluid density, and fluid viscosity.  Dr. Nesic purportedly varied those parameters and concluded that his results were insensitive to the values he input for those parameters.  BP now attempts to argue that Dr. Nesic did not rely on modeling in which he varied parameters, but Dr. Nesic himself testified to the contrary.  Attachment 1 at 515:2-10 ("I did rely on the variations in the results that were obtained when I varied the input parameters to construct the main graphs, and that is, I believe, the graph in Figure 33 of page 35 of my report.  The variation of the input parameters resulted in the variation of the normalized pressure drop within a narrow percentage range that I report.").  BP also tries to argue that the United States should have requested the additional sensitivity work Dr. Nesic did after receiving the United States' rebuttal reports pointing out his failure to disclose his modeling runs, a proposed shifting of the burden directly at odds with Rule 26.

In order to reach his conclusion that his results were insensitive to variations in those parameters, Dr. Nesic had to rely on the results of the modeling runs where he varied those parameters.  Dr. Nesic admitted that he did rely on those runs.  BP cannot have it both ways: it cannot claim that Dr. Nesic's results were insensitive to the particle size, fluid density, and fluid viscosity ranges tested in his sensitivity studies and also claim that Dr. Nesic did not rely on those studies to come to that conclusion.  Thus, Dr. Nesic's opinion should also be excluded because he failed to comply with the standards of Rule 26.

Respectfully submitted,

| | |
|---|---|
| BRIAN HAUCK | ROBERT G. DREHER |
| Deputy Assistant Attorney General | Acting Assistant Attorney General |
| Civil Division | Environment & Natural Resources Division |
| PETER FROST | SARAH HIMMELHOCH |
| Directory, Torts Branch, Civil Division | Senior Litigation Counsel |
| Admiralty and Aviation | NANCY FLICKINGER |
| STEPHEN G. FLYNN | SCOTT CERNICH |
| Assistant Director | THOMAS BENSON |
| MICHELLE DELEMARRE | RICHARD GLADSTEIN |
| SHARON SHUTLER | Senior Attorneys |
| JESSICA SULLIVAN | A. NATHANIEL CHAKERES |
| JESSICA MCCLELLAN | ANNA CROSS |
| MALINDA LAWRENCE | BETHANY ENGEL |
| Trial Attorneys | JUDY HARVEY |
| | RACHEL KING |
| | ERICA PENCAK |
| | Trial Attorneys |

/s/ R. Michael Underhill                               /s/ Steven O'Rourke

R. MICHAEL UNDERHILL, T.A.
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice
7-5395 Federal Bldg., Box 36028
450 Golden Gate Avenue
San Francisco, CA 94102-3463
Telephone:  415-436-6648
Facsimile:  415-436-6632
E-mail:  mike.underhill@usdoj.gov

STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone:  202-514-2779
Facsimile:   202-514-2583
E-mail:  steve.o'rourke@usdoj.gov

DANA J. BOENTE
United States Attorney
Eastern District of Louisiana
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
650 Poydras Street, Suite 1600
New Orleans, LA  70130
Telephone:  (504) 680-3000
Facsimile:  (504) 680-3184
E-mail:  sharon.d.smith@usdoj.gov

Attorneys for the UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Date: September 10, 2013.                         /s/  Steven O'Rourke
                                                  U.S. Department of Justice