**UNITED STATE DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | : | **MDL NO. 2179** |
| | : | **SECTION: J** |
| **This Document Relates to:** | : | **JUDGE BARBIER** |
| ***All Cases*** | : | **MAG. JUDGE SHUSHAN** |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE THE EXPERT TESTIMONY OF MICHAEL ZALDIVAR

## ARGUMENT

**1. BP Expert Adam Ballard Specifically Opines that Calculating Flow Rate Through the Macondo System by Modeling Slug Frequency is an Unreliable Methodology, and the United States Experts Agree.**

In its response brief, BP argues that Dr. Tim Lockett, one of its internal flow assurance engineers, never attempted to calculate flow rate in the manner employed by Dr. Michael Zaldivar. This argument is patently false. Dr. Lockett did in fact attempt to model flow through the Macondo riser in May 2010 by trying to match the observed slug behavior. *See, e.g.*, Attachment 1 (Lockett Dep. at 135), Attachment 2 (Ex. 10649 at 6-10). BP does not deny that Dr. Lockett decided he could not accurately model the Macondo riser, nor does it deny that Dr. Adam Ballard, one of its Source Control experts, dismissed Dr. Lockett's attempts because they were unlikely to yield reliable results given that the riser was an "unconventional" system. Attachment 3 (Ballard Rebuttal Rpt. at 20). BP also does not rebut the fact that all of the data used by Dr. Zaldivar was in fact available to BP in May 2010. Thus, Ballard's opinion that it was impossible to model the flow rate in May 2010 using hydraulic techniques does, by its own logic, suggest that Dr. Zaldivar's technique itself is unreliable.

As BP points out, two United States experts acknowledge that it would be *theoretically* possible to estimate flow rate based on slug frequency in a well-defined system. Dr. Lockett,

BP's internal engineer, was obviously aware of this possibility as well, given his attempts during the response to do the same thing. But BP neglects to mention that the United States experts ultimately conclude Dr. Zaldivar's attempts do not yield a reliable flow rate estimate due to his inadequate handling of the features of the unconventional riser system. Examples of errors in Dr. Zaldivar's model identified by United States experts include: the actual riser motion was different from the riser motion imposed by Dr. Zaldivar (Dr. Zaldivar neglects to ascribe an uncertainty range for this modeling defect, but the range may be large, given that his minimum flow rates change by 2,300 stb/d when his outlet elevation changes by 5 feet[1]); and he modeled a riser pipe with 40% less flow area than the actual riser pipe[2] (another approximation for which he ascribes zero error in his estimate, but which could have increased his flow estimate by 40%). Attachment 4 (Dykhuizen Expert Dep.) at 386-87, Attachment 5 (Dykhuizen Rebuttal Rpt.) at 12-13, Attachment 6 (Martinez Dep.) at 28-29. Thus, the United States experts do not believe Dr. Zaldivar successfully modeled the system within a narrow range of uncertainty.

**2. The Novelty of Dr. Zaldivar's Approach Means that it is an Unproven and Unvalidated Methodology that Requires Corroboration with Other Methods.**

BP tries to distance Dr. Zaldivar's modeling from Dr. Ballard's opinion by highlighting the novelty of his method. BP now asserts that it was impossible for anyone to do what Dr. Zaldivar did (namely, impose riser movement during the simulation) before LedaFlow was commercially released in 2011. This position fatally undercuts any argument BP might make that Dr. Zaldivar's methodology is widely used or accepted in the field. Dr. Lockett himself testified in December 2012 that slug flow is one of the least well understood aspects of multiphase flow. Attachment 1 (Lockett Dep.) at 135. Given the novelty of Dr. Zaldivar's

---

[1] Attachment 7 (Zaldivar Dep.) at 134.
[2] Attachment 7 (Zaldivar Dep.) at 216.

method of modeling this unconventional riser, it is all the more important for Dr. Zaldivar's estimate to be corroborated by other methods. *See*, *e.g.*, Attachment 3 (Ballard Rebuttal Rpt.) at 15 n.32, Attachment 1 (Lockett Dep. at 196). Dr. Zaldivar has utterly failed to do so.

Contrary to BP's contentions, Dr. Zaldivar's "matching" of observed riser motion and slug frequency is not independent validation. The riser motion is an input to his model, so it cannot be used to validate his results. Similarly, slugging frequency is what Dr. Zaldivar uses to select his "qualifying" flow rates, so BP cannot claim such matches are independent validation. The only "benchmarking" he performs is comparing flow rates and pressure drops at similar boundary conditions between LedaFlow and OLGA. That the two programs provide the same outputs when given the same inputs is unremarkable and unhelpful, given that both are one-dimensional transient flow simulators and are using the same fluid model. OLGA is unable to incorporate the riser motion modeled by Dr. Zaldivar, so he has no way of determining whether his pioneering attempt at modeling the oscillating riser is correct. Fundamentally, he never compares his results to other independent estimates or measurements of flow or pressure in the Macondo well. In fact, to the extent other estimates exist (i.e., the flow rate estimates of Dr. Gringarten for the same period), they conflict with Dr. Zaldivar's estimate. Thus, the Court is left to guess as to whether Dr. Zaldivar's modeled flow rates bear any resemblance to reality.

**CONCLUSION**

For the foregoing reasons and the reasons cited in the Memorandum in Support of the United States's Motion *in Limine* to Exclude the Expert Testimony of Michael Zaldivar (Docket # 11057), The United States respectfully requests that the expert testimony of Dr. Zaldivar be excluded.

Respectfully submitted,

BRIAN HAUCK
Deputy Assistant Attorney General
Civil Division
PETER FROST
Directory, Torts Branch, Civil Division
Admiralty and Aviation
STEPHEN G. FLYNN
Assistant Director
MICHELLE DELEMARRE
SHARON SHUTLER
JESSICA SULLIVAN
JESSICA MCCLELLAN
MALINDA LAWRENCE
Trial Attorneys

ROBERT G. DREHER
Acting Assistant Attorney General
Environment & Natural Resources Division
SARAH HIMMELHOCH
Senior Litigation Counsel
NANCY FLICKINGER
SCOTT CERNICH
THOMAS BENSON
RICHARD GLADSTEIN
Senior Attorneys
A. NATHANIEL CHAKERES
ANNA CROSS
BETHANY ENGEL
JUDY HARVEY
RACHEL KING
ERICA PENCAK
Trial Attorneys

/s/ R. Michael Underhill
R. MICHAEL UNDERHILL, T.A.
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice
7-5395 Federal Bldg., Box 36028
450 Golden Gate Avenue
San Francisco, CA 94102-3463
Telephone: 415-436-6648
Facsimile: 415-436-6632
E-mail: mike.underhill@usdoj.gov

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: 202-514-2779
Facsimile: 202-514-2583
E-mail: steve.o'rourke@usdoj.gov

DANA J. BOENTE
United States Attorney
Eastern District of Louisiana
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
650 Poydras Street, Suite 1600
New Orleans, LA 70130
Telephone: (504) 680-3000
Facsimile: (504) 680-3184
E-mail: sharon.d.smith@usdoj.gov

Attorneys for the UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Date: September 10, 2013.

/s/ Steven O'Rourke
U.S. Department of Justice