UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179  SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER  MAGISTRATE JUDGE |
| ……………………………………………... | : | SHUSHAN |

**BP AND ANADARKO'S REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF DR. MOHAN KELKAR**

The United States' response does not dispute: (i) that Dr. Kelkar's calculation of cumulative flow depends on doubling the measured value of rock compressibility from 6 to 12 microsips, s*ee* BP/A Mem. at 1; and (ii) that Dr. Kelkar's expert report cites only a single BP PowerPoint in support of using 12 microsips, *see* BP/A Mem. at 2, 11.  Furthermore, the United States' response fails to identify any scientific analysis by Dr. Kelkar or any other United States expert that formed the basis for Dr. Kelkar's doubling of the measured compressibility value.

The United States nonetheless contends that it was "scientific" for Dr. Kelkar to rely on his interpretation of what he testified was a "consensus" of BP engineers that the number should be increased to 12.  *See* U.S. Opp. at 14-15; BP/A Mem. at 7-8 (Dr. Kelkar's testimony re discernment of BP "consensus").  But Dr. Kelkar admitted in deposition that any "consensus" would necessarily have changed if BP resumed using the measured value of 6 microsips after completing its evaluation of the safety of shutting in the capping stack.  *See* BP Mem. at 4-6 (higher compressibility numbers were temporarily included to assess shut-in "worst case scenarios"); *id.* at 10-11 (citing Kelkar deposition admission that "if [BP engineer Bob Merrill] used 6, definitely there was some change in consensus.").  The United States' response has no answer for the fact that BP did use 6 microsips after shut-in to plan the relief well.  *Id.* at 6, 8, 10-

11.

The United States asserts instead that BP did not revert back to using 6 microsips *exclusively* after completing the shut-in risk assessment.  To support this contention, the United States cites testimony about a document purporting to show BP continuing to use a higher compressibility figure.  *See* U.S. Opp. at 7.  But the response fails to address what the document itself indicates on its face; namely, that the presented analysis was using "USGS Parameters," not BP parameters.  *See* Ex. 1 (Dep. Ex. 10835).

The "USGS," or United States Geological Survey, is, of course, the United States government agency employing Dr. Paul Hsieh.  The United States claims that Dr. Hseih was "told" by BP to use 12.  But Dr. Hsieh himself told other government scientists after the shut-in-risk evaluation that "BP preferring 6 [microsips]."  *See* Ex. 2 (TREX-008628 at 7).

The United States' response also attempts to throw a lifeline to Dr. Kelkar's unscientific assumption by citing work by U.S. rebuttal experts Dr. Huffman and Dr. Roegiers.  *See* U.S. Opp. at 2-3.  But those reports were not submitted until *after* Dr. Kelkar's initial expert report.  It was because the United States withheld any scientific analysis of compressibility until its rebuttal reports that this Court struck Dr. Huffman's and Dr. Roegiers' attempts to calculate 12 microsips.  *See* BP/A Mem. at 10; *see also* 6/24/2013 Order (Rec. Doc. 10477).  In sharp contrast and contrary to the implication in the United States brief, BP/Anadarko expert Dr. Blunt did his own analysis of the compressibility measurements, *see* Ex. 3 (Blunt Report at 60-63), as well as relying on the analysis of the world's foremost expert on the compressibility of sandstones, Dr. Robert Zimmerman.

Finally, the United States attempts to distinguish *Tassin v. Sears, Roebuck & Co.*, 946 F. Supp. 1241, 1252-53 (M.D. La. 1996) and the other cases cited in the motion by arguing that the

experts in those cases were drawing conclusions about "the alleged motive, intent or state of mind of defendants based in part on in-house documents, memos, and emails." *See* U.S. Brief at 15.  But that is precisely what Dr. Kelkar purports to do here. In his own words, Dr. Kelkar "just picked a value which [] seemed to be the consensus at that time" based on his inference (drawn from reviewing e-mails) that BP scientists were motivated "to come up with the best possible estimate [they could], because [they didn't] want to make a mistake in making any suggestions." *See* U.S. Opp. at 13.  In short, the United States cannot credibly assert that Dr. Kelkar reasonably relied upon the type of data that petroleum reservoir engineers ordinarily use in the course of their professional work.

To be sure, the United States is correct in reminding us that the Quantification segment, including any testimony by Dr. Kelkar, will be tried to this Court.  But that does not mean the parties are given free passes to offer entirely and unmistakably unscientific opinions based on subjective inference, unsupported speculation, and incomplete reviews of relevant facts and context.  While *Daubert* concerns may be lessened in bench trials, standards of minimum scientific relevance and reliability continue to apply.

September 10, 2013                                  Respectfully submitted,

                                                    By: /s/ Don K. Haycraft

Warren Anthony Fitch                                Don K. Haycraft (Bar #14361)
(tony.fitch@bingham.com)                            R. Keith Jarrett (Bar #16984)
Ky E. Kirby                                         LISKOW & LEWIS
(ky.kirby@bingham.com                               One Shell Square
BINGHAM MCCUTCHEN LLP                               701 Poydras Street, Suite 5000
2020 K Street NW                                    New Orleans, Louisiana 70139-5099
Washington, DC 20006                                Telephone: (504) 581-7979
Telephone: (202) 373-6000                           Facsimile:  (504) 556-4108

James J. Dragna                                     Richard C. Godfrey, P.C.
(jim.dragna@bingham.com)                            (richard.godfrey@kirkland.com)
BINGHAM MCCUTCHEN LLP                               J. Andrew Langan, P.C.
355 S. Grand Avenue, Suite 4400                     (andrew.langan@kirkland.com)
Los Angeles, California 90071                       Timothy A. Duffy, P.C.
Telephone: (213) 680-6400                           (tim.duffy@kirkland.com
                                                    KIRKLAND & ELLIS LLP
                                                    300 North LaSalle Street
                                                    Chicago, Illinois  60654
                                                    Telephone: (312) 862-2000

Deborah D. Kuchler, T.A. (Bar #17013)               Robert C. "Mike" Brock
KUCHLER POLK SCHELL                                 (mbrock@cov.com)
WEINER & RICHESON, LLC                              COVINGTON & BURLING LLP
1615 Poydras Street, Suite 1300                     1201 Pennsylvania Avenue, NW
New Orleans, Louisiana 70112                        Washington, DC 20004-2401
Telephone: (504) 592-0691                           Telephone: (202) 662-5985

*Attorneys for Anadarko Petroleum*                  *Attorneys for BP Exploration & Production*
*Corporation*                                       *Inc. & BP America Production Company*

4

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 10th day of September, 2013.

/s/  Don K. Haycraft