# Exhibit 2

## Excerpts from Richard Ziegler Deposition Transcript

## Taken July 24, 2013

```
                    1
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL     ) MDL NO. 2179
BY THE OIL RIG        )
"DEEPWATER HORIZON" IN) SECTION "J"
THE GULF OF MEXICO, ON)
APRIL 20, 2010        ) JUDGE BARBIER
                      ) MAG. JUDGE SHUSHAN




              *****************
                  VOLUME 1
              *****************

    Deposition of Edward Ray Ziegler, taken
at the Pan-American Building, 601 Poydras Street,
11th Floor, New Orleans, Louisiana, 70130, on the
24th day of July, 2013.
```

```
                            2
 1            A P P E A R A N C E S
 2
 3
 4   APPEARING FOR THE PLAINTIFFS STEERING COMMITTEE:
       Ms. Robin L. Greenwald
 5     WEITZ & LUXENBERG
       700 Broadway
 6     New York, New York  10003
 7     Mr. Matthew E. Lundy
       LUNDY, LUNDY, SOLLEAU & SOUTH, LLP
 8     501 Broad Street
       Lake Charles, Louisiana  70601
 9
10
     APPEARING FOR BP, INC.:
11     Ms. Maureen F. Browne
       COVINGTON & BURLING
12     1201 Pennsylvania Avenue, Northwest
       Washington, D.C.  20004-2401
13
       Mr. Lee Rudofsky
14     KIRKLAND & ELLIS
       655 Fifteenth Street, NW
15     Washington, D.C.  20005-5793
16     Ms. Karen K. Gase
       Managing Attorney
17     BP AMERICA INC.
       501 Westlake Park Boulevard
18     Houston, Texas  77079
19
20   APPEARING FOR TRANSOCEAN:
       Ms. Amelia L. B. Sargent
21     Ms. Tamerlin J. Godley
       MUNGER TOLLES & OLSON
22     355 South Grand Avenue, 35th Floor
       Los Angeles, California  90071-1560
23
24
25
```

```
                            3
 1   APPEARING FOR ANADARKO PETROLEUM CORPORATION:
       Mr. David H. Hardwicke
 2     KUCHLER POLK SCHELL WEINER & RICHESON
       1715 Northpark Drive, Suite A
 3     Kingwood, Texas 77339
 4
 5   APPEARING FOR HALLIBURTON:
       Ms. Gwen E. Richard
 6     GODWIN LEWIS
       1331 Lamar, Suite 1665
 7     Houston, Texas  77010-3133
 8     Mr. Prescott W. Smith
       Ms. Joni J. Ogle
 9     GODWIN LEWIS
       Renaissance Tower
10     1201 Elm Street, Suite 1700
       Dallas, Texas 75270-2041
11
12
     ALSO PRESENT:
13     Mr. Peter Jennings, Videographer
       Mr. Ray Aguirre, Case Manager
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                            4
 1                 INDEX
 2      VIDEOTAPED ORAL DEPOSITION OF
           EDWARD RAY ZIEGLER
 3            JULY 24, 2013
                VOLUME 1
 4
 5
 6   Appearances.................... 2
 7
     Direct Examination-Ms. Browne................. 11
 8   Examination-Ms. Sargent...................... 295
 9
     Changes and Signature........................ 299
10   Reporter's Certificate....................... 301
11
12
13           EXHIBIT INDEX
14
     Ex. No.    Description         Marked
15
16   11578  Phase II Report - Source Control,
            Edward R. Ziegler, P.E., C.S.P.,
17          dated May 1, 2013, marked as
            CONFIDENTIAL; 143 pages       14
18
     11579  Phase II Report - Source Control,
19          Rebuttal Report, Edward R.
            Ziegler, P.E., C.S.P., dated June
20          10, 2013; 50 pages            14
21   11580  LexisNexis Report titled Dave
            Barrett; Clean Harbors
22          Environmental Services, Inc.,
            Plaintiffs - Appellants, v.
23          Rhodia, Inc., Defendant - Appellee
            dated April 12, 2010; nine pages   26
24
25
```

                                                                 177
1  that?
2     A.  No, did not govern.  Did not govern.  It
3  was applicable because it was set up and it was
4  put into effect, but "governed," to me, implies
5  decision-making processes.
6     Q.  Well, the --
7     A.  And in -- and in the -- for example, in
8  the stipulated facts document, I think it's TREX
9  9139 we use in this case -- says right down at
10 the bottom that there's no agreement that anybody
11 had certain decision-making authority, and it
12 talks about specifically the UIC and other people
13 in that document.
14     So when you say "governed," I would agree
15 that the UIC structure under the Oil Pollution
16 Act and, perhaps, other places can be put into
17 effect; but I would not use the term "govern."
18 That's not correct.
19    Q.  You understand the Oil Pollution Act
20 requires the President or his designee to direct
21 the response to an oil spill like the Macondo
22 spill, right?
23         MS. RICHARD:  Objection, form.
24    A.  That sounds like a legal opinion.  I've
25 not been hired to give legal opinions.

                                                                 178
1     Q.  (By Ms. Browne)  You're -- you're a
2  lawyer, though, right?
3     A.  I have -- you --
4         MS. RICHARD:  Objection, form.  He's
5  not giving legal opinions in this case.
6         MS. BROWNE:  I'm just asking him --
7     Q.  (By Ms. Browne)  You're --
8         MS. BROWNE:  He's a lawyer, right?
9     A.  I'm a member of State Bar of Texas, yes.
10    Q.  (By Ms. Browne)  Okay.  Well, you're
11 just -- you just recited to me the meaning of a
12 stipulation, so let's -- let's take a look at
13 what's behind Tab 26.
14        MS. RICHARD:  Objection, form.
15 Objection to the sidebar comments.
16    A.  I didn't say a meaning of the
17 stipulation.  I was telling you what the
18 documents says.
19    Q.  (By Ms. Browne)  Right.  And specifically,
20 Section 1321, this is Title 33.  So 33 USC 1321.
21 And if you could look at sub -- Subsection
22 (c)(2)(A), please.
23    A.  (Reviewing document.)
24    Q.  That appears on Page 423, if you note at
25 the top of the page, top left, there are page

                                                                 179
1  numbers.
2     A.  M-h'm.
3     Q.  And that reads:  "Discharge posing
4  substantial threat to public health and welfare."
5         "If a discharge, or a substantial threat
6  of a discharge, of oil or a hazardous substantial
7  from a vessel, offshore facility, or onshore
8  facility is of such a size or character as to be
9  a substantial threat to the public health or
10 welfare of the United States (including but not
11 limited to fish, shellfish, wildlife, other
12 natural resources, and the public and private
13 beaches and shorelines of the United States), the
14 President shall direct all Federal, State, and
15 private actions to remove the discharge or to
16 mitigate or prevent the threat of the discharge."
17        Did I read that correctly?
18    A.  You did read it correctly.
19    Q.  This -- this was an oil spill of such
20 size and character to be a substantial threat to
21 the public health or welfare of the United
22 States, right?
23        MS. RICHARD:  Objection, form.
24    A.  I -- I don't think so.
25    Q.  (By Ms. Browne)  Well, it was designated

                                                                 180
1  as a spill of National significance, right?
2         MS. RICHARD:  Objection, form.
3     A.  I -- I'm not -- I mean, I don't recall
4  that specifically.  I'd have -- I've looked at
5  the documents, but I don't know where that term
6  was used.
7     Q.  (By Ms. Browne)  You said, in response to
8  an earlier question, that you're -- you're not
9  giving legal opinions.  I -- I asked you if you
10 understand what the Oil Pollution Act requires.
11    A.  Yes.
12    Q.  And you said, "It sounds like a legal
13 opinion.  I'm not hired to give legal opinions."
14 Right?
15    A.  Yes.
16    Q.  You -- you are, though, giving opinions
17 on the meaning of Regulations in this case,
18 aren't you?
19    A.  Sure --
20        MS. RICHARD:  Objection, form.
21    A.  Sure, because oil and gas companies have
22 to comply with the Regulations, so if the
23 Regulations are written so people in the industry
24 can't understand them or comply with them, they'd
25 be meaningless.  So people in the industry have

285

1  up in the middle of Montana doesn't mean that he
2  has anything to do with BP's operations in the
3  Gulf of Mexico where they're a Responsible Party
4  under the MMS Regulations and under their
5  permits.
6      Q. You'd agree that it's foreseeable to
7  Halliburton that BP didn't own a prebuilt,
8  deepwater, dressed, and staged capping stack,
9  right?
10         MR. SMITH: Objection, form.
11     A. Well, I -- I don't know if they -- if
12 Halliburton would have any reason to ask. I
13 don't think BP told them that, because BP
14 didn't -- didn't think about it.
15     But I -- I'm really not sure what that
16 means.
17     Q. (By Ms. Browne) So you -- you don't have
18 an opinion as to whether or not it was
19 foreseeable to Halliburton that BP would not have
20 available a prebuilt, dressed, and staged capping
21 stack?
22         MR. SMITH: Objection, form.
23     A. Well, that's -- that's really a good
24 question, so I'm going to answer it this way:
25 Factual foreseeability might be one thing. In

286

1  other words, is it possible, knowing all the
2  facts that BP knew and what their
3  responsibilities are and that sort of thing,
4  could somebody outside of BO -- BP, whoever it
5  is, think about that issue? So that's a factual
6  foreseeability, the answer to that could be
7  "Yes."
8      However, there's a -- there's -- there's
9  what I think you would have to call a practical
10 or realistic foreseeability. Someone who's not
11 responsible, not involved, or doesn't deal with
12 those issues would not foresee it in the -- the
13 way I would define "foreseeability."
14     "Foreseeability" has to mean that you
15 have some level of knowledge and understanding,
16 and then with that knowledge and understanding,
17 or responsibility or Regulatory responsibility,
18 that then you might be able to understand or look
19 at the issue.
20     I don't think that anyone outside of --
21 of BP is in that position.
22     Q. (By Ms. Browne) You don't say anywhere in
23 your -- your Reports, either one of them, that it
24 was unforeseeable to Halliburton that BP would
25 not have a prebuilt, dressed, and staged capping

287

1  stack available, right?
2         MR. SMITH: Objection, form.
3      A. No, I don't think it's foreseeable or
4  unforeseeable, as I defined it, to Halliburton,
5  as a practical matter, and in the real world,
6  anything about BP's well control
7  responsibilities.
8      Q. (By Ms. Browne) Right. So -- and you
9  don't say anywhere that BP's Source Control Plan
10 was unforeseeable to Halliburton, right?
11         MR. SMITH: Objection, form.
12     A. The same answer. In the -- in the --
13     Q. (By Ms. Browne) Okay.
14     A. -- what I call "real, practical
15 foreseeability," where you have some knowledge,
16 understanding, or responsibility and put all
17 those things together, I don't think it would be
18 reasonable for anyone outside BP to consider
19 those issues.
20     They're the Responsible Party. It's
21 their well. It's their Well Plan. They decide
22 where to drill the well, how to drill the well,
23 the casing, the burst disk, all of those things
24 are BP's call and responsibility. Other people
25 don't have all of that information, and no reason

288

1  to think about any of those things.
2      Q. How does one access "The Ziegler Report"
3  newsletter that's noted in your Rule 26 material?
4      A. Well, you would have to -- if you ask me
5  for a copy, I'll be glad to send them all to you.
6  There's -- it's no -- there's no -- I'm pretty
7  old, so I don't have things like that on a
8  website, that sort of thing, but I'd be glad to
9  send you copies.
10     Q. Well, is it a subscription? I mean,
11 how -- how would someone in the general public
12 obtain access to "The Ziegler Report"?
13     A. Oh, well, there's two ways. First, if I
14 run across someone that is in the industry, or is
15 a client or a customer, I would probably send
16 them one, or -- or if someone asks me to send it
17 to them, I'd put them on my -- my mailing list.
18 So if you would like to be on my mailing list,
19 I'll add you to -- add you to the mailing list.
20     Q. Okay. What is "First Safety Consultants
21 United"?
22     A. That's a Texas corporation, and it could
23 have two businesses running through it as
24 d/b/a's, Safety United, and Ziegler-Peru,
25 Incorporated, and I'm not sure of the second one.