# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

September 9, 2013

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

Re:   MDL 2179 — Motion to Strike Designation of Dr. Nathan Bushnell from the Phase 2 Deposition Bundle List

Dear Judge Shushan:

This letter replies to the United States' September 3 letter response to BP's motion to strike Dr. Bushnell's deposition from the Phase 2 bundle.

In short, the United States' response fails to support its designation of Dr. Bushnell as a "relied upon" expert and accordingly the relief BP requested is appropriate.

*First,* while some United States experts may have *compared* their results to Dr. Bushnell's results, no United States expert *relied* on Dr. Bushnell's work in forming his own opinion in the sense contemplated by the Court's Order Regarding Presentation of Evidence in Phase 2 Trial (Rec. Doc. 11087) or Fed. R. Evid. 703.

*Second,* Dr. Bushnell's opinions about the oil flow rate on July 14 and July 15, aside from being duplicative of four other United States testifying experts (Drs. Griffiths, Dykhuizen, Pooladi-Darvish, and Kelkar), are unhelpful to the Court. There is essentially no remaining disagreement about the flow rate of oil through the Capping Stack on July 14 and July 15, when accounting for the rate's associated uncertainty and the methodology for converting to surface conditions.

**KIRKLAND & ELLIS LLP**

The Honorable Sally Shushan
September 9, 2013
Page 2

## DISCUSSION

The purported "reliance" of the United States' experts on Dr. Bushnell's opinions is supported by neither law nor logic. The crux of the United States' argument is that three of its Quantification experts — Drs. Griffiths, Pooladi-Darvish, and Dykhuizen — used Dr. Bushnell's analysis to "test and verify" some of their assumptions and methodologies. U.S. Letter at 2. But this argument only underscores our fundamental point: other United States experts use Dr. Bushnell merely as *corroboration* for their independent analyses. They do not *rely* on Dr. Bushnell to *form* their own flow rate opinions, as would be required to render Dr. Bushnell a true, relied-upon, non-testifying expert.

### Drs. Griffiths and Pooladi-Darvish Do Not Rely on Dr. Bushnell.

The United States contends that Drs. Griffiths and Pooladi-Darvish rely on a figure that Dr. Bushnell included in his rebuttal report depicting a relationship between flow rate and pressure loss in the Capping Stack. *See* U.S. Letter at 3. But no party, neither the United States nor BP/Anadarko, elicited testimony from Dr. Bushnell at his deposition regarding this figure or the results that it conveyed. As an initial matter, then, it is unclear how the United States could use Dr. Bushnell's deposition testimony to bolster Drs. Griffiths and Pooladi-Darvish's trial examinations regarding this figure.

Setting aside the non-existence of the supposedly relied-upon deposition testimony, neither Dr. Griffiths nor Dr. Pooladi-Darvish even "rely" upon Dr. Bushnell's expert rebuttal report for these purposes. Significantly, neither expert cites Dr. Bushnell's report as a basis for any opinions offered in their respective rebuttal reports; instead, both cite Dr. Bushnell merely as providing some confirmation for opinions already reached on other grounds. *See* Ex. 1, Griffiths Rebuttal Report at 9; Ex. 2, Pooladi-Darvish Rebuttal Report at 36.

Indeed, when specifically asked if he had "utilize[d] any CFD models or modeling" in reaching his opinions, Dr. Griffiths testified that he had not. Ex. 3, Griffiths Expert Dep. at 39:4-7. *See also id.* at 39:8-11 ("Q. You reviewed CFD work by other people, but, obviously, for your own opinions, you didn't rely on any CFD. A. That's correct."); 38:7-19 (testifying that he did not "use" CFD calculations in writing his reports, and that although he "compared" his results to CFD calculations, he could not recall who performed those CFD calculations).

The United States contends that Dr. Bushnell's opinions are required in order for Drs. Griffiths and Pooladi-Darvish to rebut the critiques of BP/Anadarko expert Dr. Adrian Johnson. *See* U.S. Letter at 3. But the portion of Dr. Bushnell's analysis cited by these experts is not germane to criticisms made by Dr. Johnson (or any other BP expert). One of Dr. Johnson's criticisms is that the United States' experts assumed that the relationship between flow and

**KIRKLAND & ELLIS LLP**

The Honorable Sally Shushan
September 9, 2013
Page 3

pressure loss *in the wellbore and BOP* was constant *over time*. Johnson Expert Report at 4-5, 26. In contrast, Dr. Bushnell's analysis concerns only the flow *through the capping stack*, which was installed for only the final few days before the well was shut in, and which Dr. Johnson's opinions do not address. The figure from Dr. Bushnell's rebuttal report cited by Drs. Griffiths and Pooladi-Darvish in their rebuttal reports is thus irrelevant to Dr. Johnson's criticisms.

Notably, while both Dr. Griffiths and Dr. Pooladi-Darvish were questioned at length in their depositions regarding their assumptions of constant discharge coefficients, neither referred to Dr. Bushnell in any discussion of the topic. *See, e.g.*, Ex. 3, Griffiths Expert Dep. at 405:18-408:14, 409:2-410:3, 412:2-417:8, 572:20-574:15, 589:19-594:8; Ex. 5, Pooladi-Darvish Dep. at 118:17-119:10; 126:7-134:18; 185:1-189:1. This omission further underscores that neither Dr. Griffiths nor Dr. Pooladi-Darvish have truly "relied upon" Dr. Bushnell in forming their respective opinions.

### Dr. Dykhuizen Formed His Capping Stack Flow Rate Opinions in 2010, Long Before Dr. Bushnell Began Work as an Expert.

The United States' argument that Dr. Dykhuizen "relied" on Dr. Bushnell also fails as a matter of simple chronology.

The executive summary of Dr. Dykhuizen's initial report states that his calculation of flow rate through the capping stack was first "presented" to BP by a DOE team in "late July 2010." Ex. 6, Dykhuizen Report at 2. *See also* United States Phase Two Expert Witness Disclosure (filed Mar. 22, 2013) at 3. The United States therefore cannot seriously contend that the basic conclusions Dr. Dykhuizen reached in 2010 were in any way informed by Dr. Bushnell. Dr. Bushnell did not begin work for the United States until February 2012, *see* Ex. 7, Bushnell Dep. at 44:1-44:6, over a year and a half after Dr. Dykhuizen performed the calculations forming the foundation of his Capping Stack flow rate opinion.

Nor do any of Dr. Dykhuizen's "updates" and "refinements" of his 2010 conclusions betray reliance on Dr. Bushnell's analysis. To the contrary, Dr. Dykhuizen cites Dr. Bushnell's work, not to explain the bases of his own work, but simply in an attempt to bolster his confidence after the fact. *See* Ex. 8, Dykhuizen June 19-20, 2013 Dep. at 48:21-49:2 ("Q. As — you're relying on Mr. Bushnell's computational fluid dynamics work, correct? A. *I don't need that, but it gives me greater confidence in my results* by using some of his work." (emphasis added)).

This dynamic characterizes every one of the examples the United States provided of Dr. Dykhuizen's purported "reliance" on Dr. Bushnell, whether taken from Dr. Dykhuizen's reports or his deposition testimony. For instance, Dr. Dykhuizen states that his calculations have always assumed that individual elements of the Capping Stack piping could be characterized with

**KIRKLAND & ELLIS LLP**

The Honorable Sally Shushan
September 9, 2013
Page 4

individual K factors.  Ex. 6, Dykhuizen Report at 7 ¶ 1.  He then states that the similarity of Dr. Bushnell's flow rate results to his earlier ones gave him "additional confidence that our approach *was correct.*"  *Id.* (emphasis added).  Note here that Dr. Dykhuizen did not rely on Dr. Bushnell to determine whether the Capping Stack could in fact be accurately modeled using K factors.  Dr. Dykhuizen had already determined that for himself and presented his flow rate opinions to BP and the public.  Instead, Dr. Dykhuizen gained more *confidence* in his original assumption upon reviewing Dr. Bushnell's work.

### BP's Position is Supported by Case Law.

Our initial letter cites supporting cases that establish a clear rule: mere corroboration of a testifying expert's opinion is not an adequate basis for admitting a non-testifying expert's opinion as "relied-upon" material.  *See Huffman v. Turner Industries Group, L.L.C.*, No. 12-1061, 2013 WL 2297206, at *4 (E.D. La. May 24, 2013); *United States v. Grey Bear,* 883 F.2d 1382, 1392–93 (8th Cir. 1989); *Merck Eprova AG v. Gnosis S.P.A.*, No. 07-5898, 2011 WL 10818492, at *2 (S.D.N.Y. June 8, 2011).

The United States' attempt to distinguish these cases as "inapposite" is easily dispensed with.  The United States argues that those cases do not apply here because the sponsoring parties "failed as a factual matter" to show reliance on the non-testifiers' opinions by testifying experts.  U.S. Letter at 7.  But, as discussed at length above, that is precisely the situation here:  the United States fails entirely, as a factual matter, to establish that Drs. Griffiths, Pooladi-Darvish, and Dykhuizen properly rely on Dr. Bushnell's opinions.  Rather, these three testifiers invoke Dr. Bushnell simply to corroborate their views.

Tellingly, the United States cites in affirmative support of its position only one, plainly inapposite, case: *United States Gypsum Company*.  In that case, the testifying expert's qualifications were challenged under *Daubert* on grounds that he had relied on a non-testifying expert's opinions but lacked individual expertise in the non-testifier's area.  *See United States Gypsum Company v. LaFarge North American, Inc.*, 670 F. Supp. 2d 748, 758 (N.D. Ill. 2009).  The court held that this did not require the exclusion of the testifier's opinions.  *Id.* ("That Morton considers information from others in forming his own conclusions does not necessitate the exclusion of his testimony.")  The question in *United States Gypsum Company* was therefore whether an expert's purported reliance on others would bar him from testifying *at all*.  Here, BP does not argue that United States experts may not testify *at all* because they relied on Dr. Bushnell.  We argue merely that United States experts may not testify as to their improper — because purely corroborative — reliance on Dr. Bushnell.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 9, 2013
Page 5

**The United States Will Not be Prejudiced.**

In the end, the United States pleads that it would be "manifestly unfair" for Drs. Griffiths, Pooladi-Darvish, and Dykhuizen to appear at trial without the ability to fall back on Dr. Bushnell's opinions. But none of those testifying experts' opinions would be impaired, let alone prejudiced, by the exclusion of Dr. Bushnell's merely corroborative opinions.

Indeed, BP/Anadarko and the United States have both recognized that their respective experts calculate very similar oil flow rates for the brief period of time when the oil was flowing through the Capping Stack — so long as Dr. Dykhuizen's 20% uncertainty with that rate is applied, Dykhuizen June 19-20, 2013 Dep. at 69:5-12, 70:7-13, and the amount of oil is expressed in terms of mass. *See* Letter from R. Gasaway to Judge Shushan, *United States Motion to Redact the Expert Reports of Drs. Gringarten and Johnson*, at 3 (Sept. 3, 2013); Letter from S. Himmelhoch to Judge Shushan, *Opposition to BP's Motion to Strike Designation of Dr. Nathan Bushnell from the Phase 2 Deposition Bundle List*, at 4-5 (Sept 3, 2013); *see also id.* at n. 8.

The remaining dispute between the parties thus pertains solely to converting an amount of oil, expressed in terms of mass, to an amount of oil, expressed in terms of a volume at stock tank conditions. *See* Letter from R. Gasaway to Judge Shushan, *United States Motion to Redact the Expert Reports of Drs. Gringarten and Johnson* ("BP Response to Motion to Redact Expert Reports"), at 3 (Sept. 3, 2013) (citing Dykhuizen Rebuttal Report at 7 ("No BP expert contradicts my calculation of flow rates through the Capping Stack with the exception of questioning my equation of state (EOS) which yields small changes in my flow rate estimate.").)

Dr. Bushnell admitted at his deposition that he was not offering expert testimony regarding the proper method to convert an amount of oil expressed in terms of mass into a volume of oil at surface or stock tank conditions. *See* Ex. 7, Bushnell Dep. at 91:20-92:2; 92:10-13; 92:19-22; 94:4-23; *see also id.* at 253:4-253:20 (admitting that if the Court decides BP's expert's method of conversion to surface conditions is correct, he would want it applied to his own CFD calculations). Dr. Bushnell further admitted that his flow rate analysis only pertains to the period when the Capping Stack was installed. *See id.* at 101:3-102:3.

Accordingly, even if it were appropriate to designate Dr. Bushnell as a "relied upon" expert, Dr. Bushnell's analysis is no longer probative to contested issues in the Phase 2 Quantification segment. As previously noted, "there is no reason to complicate the proceedings with another expert's analysis when the parties have essentially reached agreement on the factual issue of final day flow rate." BP Response to Motion to Redact Expert Reports at 3.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 9, 2013
Page 6

      Finally, the United States can hardly complain that it is "unfair" for Dr. Bushnell's voice not to be heard at trial. It is, after all, the United States that elected not to bring Dr. Bushnell to trial — a very understandable decision in view of the fact that Dr. Bushnell's opinions pertain to an issue no longer in serious dispute between the parties.

* * *

      For the foregoing reasons, BP respectfully requests that the Court strike Dr. Bushnell from the United States' Phase 2 deposition bundle list and make clear that no United States experts may reference Dr. Bushnell's reports or deposition testimony at trial.

      Respectfully Submitted,

*/s/ Robert R. Gasaway*

Robert R. Gasaway

Attachments

cc (via electronic mail):

United States' MDL Counsel
State and Local Government Liaison Counsel
Plaintiffs' Liaison Counsel
Defense Liaison Counsel