# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois 60654

Mark J. Nomellini
To Call Writer Directly:
(312) 862-2410
mark.nomellini@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

September 9, 2013

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

Re: MDL 2179 – BP's Letter Brief Regarding the Admissibility of TREX-11583

Dear Magistrate Judge Shushan:

Pursuant to this Court's August 29, 2013 Order Adopting a Revised Timeline for the Phase Two Trial, BP challenges Transocean's relevance objection to TREX 11583. Transocean has requested that TREX-11583 (described below) be excluded from evidence; although Transocean initially objected to TREX 11583 on relevance, hearsay, and FRE 404 grounds, Transocean has now limited its objection to relevance.[1] Transocean's relevance objection is without merit.

TREX-11583 (attached as Exhibit A) is a Transocean PowerPoint presentation describing the conclusions of its "Management Incident Review" of a loss of well control and blowout experienced overseas in 2004 by the Transocean semi-submersible *Jim Cunningham*.[2] The

---

[1] *See* Ex. B -- Email from Carter Williams to Peter Bartoszek, September 7, 2013 at 3:45 PM CST. The United States has withdrawn an earlier objection to the document

[2] The PowerPoint presentation bears the insignia of Transocean, and is an exact duplicate of the PowerPoint that was produced by Transocean during discovery in this case. *See* TRN-MDL-00653937. Transocean does not deny that this document is a company presentation in the September 6-7, 2013 email chain among Carter Williams, Peter Bartoszek and Erica Pencak. (Ex. B.)

Hong Kong    London    Los Angeles    Munich    New York    Palo Alto    San Francisco    Shanghai    Washington, D.C.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 9, 2013
Page 2

Transocean PowerPoint discusses in detail the "Loss of Well Control and Emergency Response" associated with the *Jim Cunningham* blowout.[3] (Exhibit A at 1.)

The Aligned Parties, and not BP, first raised issues concerning the *Jim Cunningham* incident in this action in connection with Phase 2. For example, Mr. Edward Ziegler, one of the Aligned Parties' Phase 2 experts, has based his opinion regarding BP's readiness to respond to a deepwater blowout in the Gulf of Mexico in part on his understanding of the response to the *Jim Cunningham* blowout. Mr. Ziegler has testified that the *Jim Cunningham* incident was the only deepwater blowout with which he was familiar, prior to the *Deepwater Horizon* incident.[4]

BP asks the Court to consider the following specific issues and the relevance of TREX-11583 to those issues:

- Some of the Aligned Parties are expected to claim, through Mr. Ziegler and other witnesses, that BP should have had a prebuilt capping stack to respond to the *Deepwater Horizon* blowout, or that BP should have tried to close the Macondo well with a second BOP to be installed on top of the *Deepwater Horizon* BOP. TREX-11583, however, provides evidence that the flow of oil from the *Jim Cunningham* blowout was stopped by other means, including by ROV intervention on the original BOP.[5] The fact that ROV intervention was used as part of the response strategy to

---

[3] See Ex. A at it is noteworthy that TREX-11583 states that the water depth of the *Jim Cunningham* blowout was 330 meters, or 1,082 feet. (Ex. A at 3). BP treats the *Jim Cunningham* incident as relevant here because the Aligned Parties have chosen to do so.

[4] Ex. C Ziegler Dep Tr. 65:20-66:5 July 24, 2013 (citing the *Jim Cunningham* blowout as the "factual basis" for his opinion that a pre-built deepwater capping stack existed in the industry prior to April 20, 2010); *id.* at 90:25-92:7 (basing in part his opinion that capping stacks have "long been established in the industry as a successful and viable method of source control" on his belief that a capping device was used to stop the *Jim Cunningham* blowout)(citing page 25 of his report); *id.* at 100:23-101:17 ("[I]t's my belief that based on at least the *Jim Cunningham* incident . . . that capping devices had been applied in deepwater . . . "); *id.* at 130:2-131:5 (noting his reliance on Robert Turlak's deposition for his understanding that a BOP-on-BOP procedure was used at the *Jim Cunningham* incident). *See also* Ex. D Turlak Dep. Tr. 194:17-195:9 Nov. 6, 2012 (stating that BOP-on-BOP had been done at the *Jim Cunningham* incident).

[5] *See* Ex. A at 4 ("Annulus apparently bridged off the flow of gas after +/- 3 hours."); Exhibit A at 5-6 ("Closed VBR via ROV intervention as insurance against possible additional flow up annulus on August 24. . . . Sheared DP via ROV intervention . . . on Sept. 9. . . . ROV reconnaissance after pipe shear shows minimal gas bubbling exiting from connector mandrel above shear rams.").

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 9, 2013
Page 3

      control the *Jim Cunningham* blowout is relevant to the position of some of the Aligned Parties that the use of ROVs to actuate a BOP was "known not to work on a flowing well," and should not be considered to be part of an effective plan to respond to a blowout.[6]

- The Transocean presentation confirms that the Operator retained a U.S.-based well control and blowout response specialist company, Wild Well Control, for the *Jim Cunningham* response, and that Wild Well Control "mobilized equipment from US." (Exhibit A at 5.) To the extent the Aligned Parties are asserting that the response to the *Jim Cunningham* blowout is indicative of what preparations BP should have made for a subsequent deepwater blowout, TREX-11583 is relevant to BP's position that it prudently prepared for a deepwater blowout by, among other actions, pre-contracting for blowout services with the same company employed after the *Jim Cunningham* blowout.[7]

- The Transocean presentation shows that the Operator in the *Jim Cunningham* blowout did not have pre-built blowout response equipment, but rather relied on the well control and blowout response specialists to provide that equipment. (Exhibit A at 5.) That fact belies an assertion that Operators other than BP had pre-built equipment for deepwater blowout response such as capping stacks before April 20, 2010.

      Transocean objects to this exhibit under FRE 401 because it "struggle[s] to see how the well control events described" are relevant to Phase 2. Specifically, Transocean suggests that the information provided by its presentation is limited to "emergency response measures taken by the crew before they abandoned the rig" and "does not discuss source control efforts undertaken after the rig was moved off location." (Exhibit B.) As support for this proposition, Transocean suggests that "the Key Events Summary ends 3 hours after the blowout with all crew successfully abandoning the rig." (Exhibit B.)

---

[6] *See* Aligned Parties Pre-Trial Statement at 22; *but see* Exhibit A at 19 (adverting to use of ROVs to actuate BOP)

[7] This fact similarly goes to establishing the industry standard for a response to a blowout when a drilling rig's subsea BOP has initially failed to close a well.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 9, 2013
Page 4


   Transocean's suggestion that its *Jim Cunningham* presentation is limited to actions taken by the crew before they abandoned the rig is incorrect.  The *Jim Cunningham* incident occurred on August 20, 2004.  (Exhibit A at 1.)   TREX-11583 discusses conduct from August 20 through at least September 9, long after the crew abandoned the rig.  (Exhibit A at 1, 5-6.)   And Transocean's argument that the presentation does not describe source control efforts undertaken after the rig was moved off location misses the point.  The presentation provides evidence that that the blowout was controlled by means other than a BOP-on-BOP (Exhibit A at 4-6), and that the Operator relied on well control and blowout response specialists to provide the personnel and equipment for well control and blowout response activities (Exhibit A at 5).

   For each of the foregoing reasons, TREX-11583  satisfies the standards of FRE 401, which requires only that the evidence have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  *See* F.R.E. 401; *see also U.S. v. Perez-Solis*; 709 F.3d 453, 464 (2013).


               Respectfully submitted,


               /s/ Mark Nomellini
               Mark Nomellini


cc (via electronic mail):

  Andrew Langan
  Don K. Haycraft
  R. Michael Underhill
  Steven O'Rourke
  Sarah D. Himmelhoch
  Steve Herman
  Anthony Irpino
  Defense Liaison Counsel
  Corey Maze

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 9, 2013
Page 5


      Luther Strange