IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * | MDL NO. 2179 |
| | * | SECTION: "J" |
| This document relates to No. 12-970 | * | Honorable Carl J. Barbier |
| | | Magistrate Judge Shushan |
| * | * * | |

**MEMORANDUM IN SUPPORT OF MOTION FOR PRODUCTION OF DOCUMENTS
AND TO EXTEND TIME TO RESPOND TO ORDER TO SHOW CAUSE**

**NOW INTO COURT**, through undersigned counsel, comes claimant The Andry Law Firm, LLC who files this *Memorandum in Support of its Motion for Production of Documents and to Extend Time to Respond* to the Court's *Order to Show Cause*. Due Process and fundamental fairness requires that claimant The Andry Law Firm be allowed to examine and refute the Special Master's alleged factual support for his suggestion that the Court disallow The Andry Law Firm's valid claim for over seven million dollars, which is currently due and owing, as all appeal delays have run. Accordingly, claimant The Andry Law Firm requests that the Court grant it access to the evidence referred to in Special Master Freeh's Report, and that the Court allow The Andry Law Firm to have 21 days from the date of production to make any objections.

## BACKGROUND

The Andry Law Firm, L.L.C. does not represent and has not ever represented clients making claims with the Deepwater Horizon Court Supervised Settlement Program ("CSSP"). Founded in 2000, The Andry Law Firm has two members, Gibby Andry and Jonathan Andry. After the Macondo explosion, The Andry Law Firm was damaged like every other business. However, neither Gibby Andry nor The Andry Law Firm, L.L.C. undertook to represent clients in the BP litigation. The Andry Law Firm is a claimant, only. Jonathan Andry filed BP claims and did so by forming The Andry Law Group, L.L.C., and later, Andry Lerner, L.L.C.

The Andry Law Firm's only involvement in the CSSP claims process has been its own, *pro se* claim. As explained in more detail in *The Andry Law Firm's Opposition to B.P. Exploration & Production, Inc. and B.P. America Production Company's Motion for an Emergency Preliminary Injunction*, the firm's claim has been evaluated and reevaluated, audited and re-audited, with the same result—the calculation has been upheld. *See* R. Doc. 10803. The Andry Law Firm's claim went through the same evaluation process as every other CSSP claim. In fact, BP was allowed to take an appeal of The Andry Law Firm's claim, on issues prohibited by this Honorable Court, and lost its appeal unanimously. BP then failed to request discretionary review within the 14 days allotted to do so and the firm's claim became exigible on June 18, 2013. It was nonetheless placed on "hold," because of allegations asserted by BP that Lionel Sutton influenced The Andry Law Firm's claim.

On July 2, 2013, the Court appointed Louis J. Freeh as Special Master pursuant to Federal Rule of Civil Procedure 53. *See* Rec. Doc. 10564. The Order appointing Mr. Freeh limited his mandate to: (a) performing an independent external investigation into the resignation of Lionel Sutton from the CSSP; (b) fact finding as to any other misconduct within the CSSP;

and (c) examining and evaluating the internal compliance program and anti-corruption controls within the CSSP, and making any necessary recommendation to design and to implement additional such controls, policies, procedures, and practices to ensure the integrity of the CSSP. *Id.* The mandate did not include re-adjudicating the claim by The Andry Law Firm.

After a sixty-six day investigation, Special Master Freeh issued his *Report of Special Master Louis J. Freeh* ("*Freeh Report*") on September 6, 2013. *See* Rec. Doc. 11287. The *Freeh Report* is ninety-six pages long and contains five hundred and fifty nine footnotes. According to the Special Master, during the course of his investigation, his office conducted over 80 interviews (many of which were transcribed), performed computer forensics, reviewed extensive emails and phone records, searched laptops and mobile device hardware, issued subpoenas, and examined numerous other documents. This evidence is referenced selectively throughout the *Freeh Report*, but is not a part of the record, and has not been provided to The Andry Law Firm. Indeed, at footnote 11, the Special Master states that he will not provide the documents underlying his report, absent Court intervention:

> All references herein to bank documents, phone logs, email communications, DHECC claims documents, and witness statements, transcribed or summarized, are part of the Special Master's investigative record and will be preserved by the Special Master to be provided to the United States Attorney's Office for the Eastern District of Louisiana if directed by the Court. Given the possibility of a criminal investigation, the Special Master is not permitting access to such underlying documents at this time, unless otherwise ordered by the Court.

*Id*. at 13, n.11. Nor is there any adverse party from which The Andry Law Firm could request these documents from.

In his Report, Special Master Freeh concedes that he "did not find any evidence that either Mr. Sutton or Ms. Reitano directly manipulated the valuation of claims by accessing the

3

DHECC database" and that he "did not find any evidence of such manipulation by other CAO officials" either.  Rec. Doc. 11287 at 4.  This is the same conclusion that the Claims Administrator reached in his evaluation of The Andry Law Firm's claim when he informed the Court that the Andry Law Firm's "file is properly documented with bank statements, etc."  July 2, 2013 Pat Juneau letter to the Court, Rec. Doc. 10761-6.  "As reported to the Court on July 2 and July 17, the BEL claim by Law Firm Y had not only been affirmed on appeal, but has since been re-reviewed twice ... . ...  The claim otherwise meets the Settlement Program's requirements for payment and is properly documented."  Rec. Doc. 10774 at 6-7.  Indeed, by all accounts it is impossible for CAO personnel to influence a claim.  Nothing about the Andry Law Firm's claim was inappropriate regarding calculation and time.

Despite the findings of the CAO, and despite concluding that there was no evidence of manipulation of the value of The Andry Law Firm claim,[1] because Lionel Sutton allegedly checked the status of The Andry Law Firm's claim and allegedly spoke to an accountant at the claims facility, the *Freeh Report* concluded that Mr. Sutton somehow expedited The Andry Law Firm's claim.  Based on these allegations, and without explaining how the claim was allegedly expedited (if it was expedited at all), and by incorrectly conflating The Andry Law Firm with AndryLerner, LLC, the Special Master asks the Court to consider disallowing The Andry Law Firm's claim under the so-called "unclean hands doctrine."  These incorrect conclusions were reached without an evidentiary hearing.

---

[1] The *Freeh Report* explicitly did not find manipulation of the value of claims:

> The Special Master did not find any evidence that either Mr. Sutton or Ms. Reitano directly manipulated the valuation of claims by accessing the DHECC database. The Special Master also did not find any evidence of such manipulation by other CAO officials.

*Freeh Report*, p. 4.

4

In response to the *Freeh Report*, the Court ordered Lionel Sutton, Christine Reitano, Jon Andry, Glen Lerner, and any associated law firms to show cause why the Court should not adopt the Special Master's findings and recommendations "[d]isallowing The Andry Law Firm's claim under the Unclean Hands Doctrine" and "[d]isqualifying Attorneys Lionel Sutton, Christine Reitano, Glen Lerner, and Jon Andry, as well as any associated law firms, from representing CSSP claimants (or collecting fees from such claimants) under the Unclean Hands Doctrine." Rec. Doc. 11288. The Court's Order gives these persons only fourteen days from September 6, 2013 to file any response, objection, or motion. *Id.*

The Andry Law Firm objects to the Special Master's recommendation that the Court disallow the firm's legitimate and fully adjudicated claim. However, The Andry Law Firm cannot even begin to prepare a meaningful response without access to the documents underlying the *Freeh Report*. Accordingly, The Andry Law Firm requests an opportunity to examine the evidence purportedly relied upon by the Master in making his recommendations, and additional time to file objections, motions and a response. Such an opportunity will allow The Andry Law Firm to establish that: (1) the "evidence" fails to establish the conclusory allegations against The Andry Law Firm; (2) The Andry Law Firm should not be conflated with AndryLerner, LLC; (3) the communications made regarding the claim of The Andry Law Firm were not nefarious nor unusual; and (4) the claim asserted by The Andry Law Firm was legitimate, exhaustively reviewed by independent accounting experts, and conclusively adjudicated. Access to the evidence will also allow The Andry Law Firm to defend itself with the due process guaranteed by the United States Constitution, but not afforded in the Special Master's investigation.

## **LAW AND ARGUMENT**

**I.   DUE PROCESS AND FUNDAMENTAL FAIRNESS REQUIRES THAT THE COURT ORDER SPECIAL MASTER FREEH TO PRODUCE THE EVIDENCE RELIED UPON IN HIS REPORT.**

Due Process requires that claimant The Andry Law Firm be given a meaningful opportunity to contest the alleged factual underpinnings of the Special Master's report. Traditional notions of due process apply to proceedings that take place before a Special Master. *Ruiz v. Estelle*, 679 F.2d 1115, 1162-63 *amended in part*, *vacated in part*, 688 F.2d 266 (5th Cir. 1982). Federal Rule of Civil Procedure 53(f), governing Masters, states this directly by requiring that the Court give the parties "notice and an opportunity to be heard" before acting on a Master's report or recommendation. FED. R. CIV. P. 53(f)(1). Accordingly, the Rules allow the parties to file objections to the Master's report within "21 days after a copy is served, unless the court sets a different time." FED. R. CIV. P. 53(f)(2). When reviewing the parties' objections, "[t]he court must decide de novo all objections to findings of fact made or recommended by a master," unless the parties stipulate otherwise. FED. R. CIV. P. 53(f)(3).

Implicit in these rules is the requirement that a party affected by a Master's report be given an opportunity to examine the evidence relied upon by the Master in making his recommendations. A party cannot meaningfully "file objections to—or a motion to adopt or modify—the Master's order, report, or recommendations," without being able to examine the underlying factual support for the Master's conclusions. Nor would this Court's "de novo" review of the Master's recommendations be as effective, or comprehensive, without subjecting the Master's report to full, adversarial scrutiny, which necessarily includes being able to examine and rebut the evidence collected in the Master's investigation.

6

To date, The Andry Law Firm has not been afforded the due process that would allow full, adversarial scrutiny of the *Freeh Report*. As explained below, the documents and testimony gathered by the Special Master have not been produced to The Andry Law Firm. The "proceedings" conducted by the Special Master were not conducted under the Federal Rules of Civil Procedure, or even the Federal Rules of Criminal Procedure. The Andry Law Firm was not allowed to gather evidence itself, either by interrogatory, request for production of documents, subpoena, or examining or cross-examining witnesses during depositions. The Andry Law Firm has not been provided any exculpatory evidence. The Andry Law Firm has not been provided the statements of its own principals. The Andry Law Firm has not been able to assert any objection to any "evidence" pursuant to the Federal Rules of Evidence. The Andry Law Firm was not allowed to intervene in these proceedings and was not afforded the opportunity to object to the appointment of Special Master Freeh. The Andry Law Firm has not been afforded a hearing of any sort. Instead, the Special Master has acted as judge and jury and recommended a drastic remedy without disclosing his full record.

Without access to the information gathered by the Special Master, without the ability to conduct discovery, and without a hearing, The Andry Law Firm is deprived of the "notice and opportunity to be heard" guaranteed it by Rule 53 and the Due Process Clause of the United States Constitution.

The Fifth Circuit addressed a similar deprivation of fundamental rights in *Ruiz v. Estelle,* 679 F.2d 1115, 1162-63 *amended in part, vacated in part*, 688 F.2d 266 (5th Cir. 1982). There, the Court reviewed a District Court's order appointing a Special Master under Rule 53 to oversee the implementation of remedial measures at a state prison. The Fifth Circuit held that "the order of reference" appointing the Special Master was "too sweeping" because it allowed "the special

7

master to submit to the district court 'reports based upon his own observations and investigations in the absence of a formal hearing before him.'" *Id.* at 1162. According to the Fifth Circuit, allowing the Special Master to issue reports based on his own investigation, without providing the parties with a hearing, "not only transcends the powers traditionally given masters by courts of equity, **but denies the parties due process**." *Id.* at 1163 (emphasis added). The Court therefore held that it was error to afford the Special Master's report any deference. *Id.*

Although not decided under Rule 53, cases reviewing the actions of Special Masters appointed under the National Vaccine Injury Compensation Program are also instructive. A number of these cases conclude that it is fundamentally unfair for a Special Master to rely on evidence uncovered in his own investigation without allowing the parties a chance to review and discredit that evidence. *See Davis v. Sec'y of Health & Human Servs.*, 94 Fed. Cl. 53, 65-66 (Fed. Cl. 2010) *aff'd*, 420 F. App'x 973 (Fed. Cir. 2011) ("Here, it was improper for the special master to draw support from the Nakayama & Onoda study to dismiss as inadequate the medical literature offered as support for Dr. Steel's medical theory of causation because the study was not in the record and the parties were not on notice that it would be considered"); *Campbell v. Secretary of Health & Human Servs.*, 69 Fed.Cl. 775, 776–77, 781–82 (2006) (finding the introduction into the record of medical articles obtained from the Internet by the special master, without providing a hearing, to be inconsistent with the "[s]pecial [m]aster's responsibility for conducting a proceeding consistent with the principles of fundamental fairness"); *cf. Hines v. Sec'y of Health & Human Servs.*, 940 F.2d 1518, 1526 (Fed. Cir. 1991) (finding the special master's failure to provide petitioner with advance notice that he intended to take judicial notice of a medical textbook which was not introduced at the hearing did not violate any principles of fundamental fairness because petitioner "did have a chance to discredit and rebut the information

contained in that textbook on review before the Claims Court" and chose not to do so); *Morris v. Secretary of Health & Human Servs.*, 57 Fed.Cl. 383, 390–91 (2003) (acknowledging petitioners' argument that " 'it is improper for a [s]pecial [m]aster to perform her own medical research and not allow the parties ... [an] opportunity to even comment upon what she has discovered' " but finding that "[w]here, as here, the [s]pecial [m]aster adequately substantiated her conclusion with the information in the record, performance of outside research ... is not an abuse of discretion").

The message of *Ruiz* and the vaccine cases is that due process and fundamental fairness require that the parties be allowed to examine the documents and interviews underlying the *Freeh Report*. The *Freeh Report* is based upon a plethora of emails, transcripts, and records that are not in the record, and to which The Andry Law Firm has no access. The sequestered documents include, *inter alia*, bank documents, phone logs, email communications, DHECC claims documents, witness statements (including interviews of Lionel Sutton, Jonathan Andry, and Glen Lerner), text message records, interview transcripts, documents memorializing the interviews conducted by David Welker of the DHECC, documents generated by the DHECC initial investigation, documents provided by counsel for BP or the Plaintiffs' Committee, and any documents obtained by subpoena.

Because the essential evidence has not been disclosed and because the Special Master has selectively quoted only the evidence that is favorable to his dubious conclusions, The Andry Law Firm has not been able to examine that evidence in context, point out any inconsistencies, or identify any favorable or exculpatory evidence. The Andry Law Firm cannot meaningfully object to the Special Master's report, and is deprived of notice and an opportunity to be heard, without being allowed to access, review, analyze and evaluate the evidence cited by *the Freeh Report* that may have lead to the suggestion that The Andry Law Firm's claim be voided.

## II. THE EVIDENCE UNDERYLING SPECIAL MASTER FREEH'S REPORT IS NOT PRIVILEGED AND SHOULD BE PRODUCED.

In his report, the Special Master points out that he filed a motion to compel the production of undersigned counsel's notes from their interview with Lionel Sutton. Rec. Doc. 11287 at 43, n.239. In seeking these notes, the Special Master argued that The Andry Law Firm could not quote Mr. Sutton's statement that he had no involvement with The Andry Law Firm's claim without disclosing the entire interview. The Special Master also took the position that it had a "substantial need" for any statement by Lionel Sutton and The Andry Law Firm's attorneys' notes, because this evidence was necessary to prepare its investigation.

Having taken these positions in its *Motion to Compel*, the Special Master cannot selectively quote from more than 80 interviews without providing them to The Andry Law Firm, especially when the Special Master is using these interviews to recommend the deprivation of a vested award of more than seven million dollars from the CSSP. Clearly, The Andry Law Firm needs the evidence underlying the Special Master's investigation in order to respond to the *Freeh Report*. Indeed, the *Freeh Report* is replete with the type of partial disclosures and selective quotations that the Special Master argued ***required*** the production of evidence uncovered in The Andry Law Firm's investigation. Fundamental fairness requires that The Andry Law Firm also have access to the evidence underlying the Special Master's investigation in order to respond to the substantial allegations against it.

## III. THE ANDRY LAW FIRM REQUESTS ADDITIONAL TIME TO RESPOND TO SPECIAL MASTER FREEH'S REPORT.

Finally, The Andry Law Firm respectfully requests more time to respond to the substantial allegations contained in the *Freeh Report*. The Court has allowed The Andry Law Firm only fourteen days to object to Special Master Freeh's ninety six page, heavily footnoted

report and recommendation. That is seven days less than the response time suggested by Federal Rule of Civil Procedure 53. Moreover, the twenty-one (21) day response time suggested in Rule 53 assumes that the respondent *already* has access to the documents and other evidence purportedly underlying a Special Master's report. Indeed, in most circumstances the evidence relied upon by the Special Master is provided to the Master by the parties through the adversarial process. Here, by contrast, The Andry Law Firm has had no access to the evidence underlying the *Freeh Report* and cannot possibly mount a defense to the allegations of unclean hands made by the Special Master in the time allowed.

In addition, the three attorneys retained by The Andry Law Firm will each be out of the country with limited access to computers and email during a majority of the fourteen day period set by the Court to respond.[2] Considering that the Special Master and his staff has had sixty-six days to complete his investigation and prepare his lengthy and extensive report, The Andry Law Firm requests an additional twenty-one (21) days from the date that it receives access to all of the evidence gathered by the Special Master in order to file motions, assert objections and respond.

## CONCLUSION

The Special Master has made serious allegations against The Andry Law Firm and recommended that the firm be denied its claim of more than seven million dollars. The Special Master and his staff have had over two months to conduct their investigation and prepare the ninety-six page report that lays out its allegations and insinuations. In that report, the Special Master selectively refers to documents and evidence that The Andry Law Firm has not had access to—documents and evidence that the firm needs to properly mount its defense.

---

[2] Kyle Schonekas has been out of the country since September 5 and will not return until September 17; William Gibbens will be out of the country from September 15 through September 24; and Ian Atkinson will be out of the country from September 14 to September 28.

The Court's Order requires The Andry Law Firm to respond to this Report within only fourteen (14) days of receipt without being able to examine any of the alleged evidence relied upon by Special Master Freeh. Whereas time may be of the essence in the investigation of the controls, policies, procedures, and practices of the DHECC, so that claims administration may continue without delay or obstruction, there is no time sensitivity as to whether The Andry Law Firm's claim should be voided because of alleged "unclean hands." The Andry Law Firm's claim, although finally adjudicated, has not been paid. Allowing for proper discovery and review of evidence regarding The Andry Law Firm claim will not delay the CSSP from proceeding.

Permitting The Andry Law Firm to discover the alleged evidence against it will further allow the firm to address at least two key factual issues that were not addressed in the Special Master's Report: (1) whether The Andry Law Firm claim was actually "expedited" in fact by those who evaluated the claim or in comparison to other claims; and (2) whether the alleged communications between persons associated with The Andry Law Firm and agents of the DHECC were out of the ordinary in quality or quantity compared to communications by other claimants and their counsel regarding the claims. Before any ultimate decision is rendered regarding the award received by The Andry Law Firm, the firm should be allowed to address these issues with full disclosure of the evidence developed in the Special Master's investigation, as well as additional appropriate discovery and an adversarial hearing. The Andry Law Firm therefore requests that the Court order the Special Master to turn over all evidence gathered during the course of his investigation, and that the Court grant The Andry Law Firm twenty-one

(21) days from the date of production to review the evidence gathered during the Special Master's investigation and assert objections, file motions and otherwise respond accordingly.

Respectfully submitted,

*/s/ William P. Gibbens*
Kyle D. Schonekas, 11817
William P. Gibbens, 27225
Ian Atkinson, 31605
SCHONEKAS, EVANS, MCGOEY
& MCEACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, Louisiana  70112
Telephone:  (504) 680-6050
Fax:  (504) 680-6051
kyle@semmlaw.com
billy@semmlaw.com
ian@semmlaw.com

Attorneys for The Andry Law Firm, L.L.C.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing motion has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 12th day of September, 2013.

*/s/ William P. Gibbens*
William P. Gibbens
