# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA      :

     v.                  :         **CRIMINAL NO.**

HALLIBURTON ENERGY SERVICES, INC.    :

## COOPERATION GUILTY PLEA AGREEMENT

Under Rule 11(c)(1)(A) and 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and in compliance with the holding of <u>Bryan v. United States</u>, 492 F.2d 775 (5th Cir. 1974), the government and Halliburton Energy Services, Inc., the defendant, by and through its counsel, enter into the following guilty plea agreement. Any reference to the United States or the government in this agreement shall mean the United States Department of Justice, including, but not limited to, the Deepwater Horizon Task Force, the Criminal Division and all of its sections, and of all the United States Attorney's Offices for each judicial district of the United States.

1.      The defendant agrees to plead guilty to Count One of an information charging it with a misdemeanor violation of 18 U.S.C. §1030(a)(5)(A), subject to 18 U.S.C. §1030(c)(4)(G)(i), arising from the deletion of records created after the explosion on board the *Deepwater Horizon* in the Gulf of Mexico. The defendant agrees to the factual allocution contained in Exhibit A to this plea agreement.

2.      The defendant, and all affiliates and successors and assigns thereof, agree to continue to cooperate fully and truthfully with the Deepwater Horizon Task Force in any criminal investigation related to or arising from the *Deepwater Horizon* blowout, explosion, oil spill and

1

TREX-26152.1

response, and further agree to cause any other present or future parent, affiliate, division or

subsidiary of the defendant (collectively, "any other Halliburton entity" or "the other Halliburton

entities") to continue to cooperate fully and truthfully as to the same matters. Cooperation shall

continue to include but not be limited to: (a) promptly disclosing any and all criminal or

potentially criminal conduct of which the defendant or any other Halliburton entity is currently

aware relating to or arising from the *Deepwater Horizon* blowout, explosion, oil spill and

response; (b) promptly producing documents to the Deepwater Horizon Task Force upon request;

(c) promptly making current employees and agents available, and promptly making best efforts to

make former employees and agents available, to the Deepwater Horizon Task Force upon request

for interview or for testimony in any proceeding and subject to those current and former

employees' and agents' own legal rights; and (d) making reasonable efforts to ensure that its

current and former employees and agents provide full and truthful information upon request of the

Deepwater Horizon Task Force and subject to those current and former employees' and agents'

own legal rights; provided, however, that compliance with this paragraph shall not be construed

as requiring or effecting a waiver of the attorney-client privilege or work product protections.

3.      The parties agree that this plea agreement is made pursuant to Fed. R. Crim. P.

11(c)(1)(A) and 11(c)(1)(C) and that the following specific sentence is the appropriate disposition

of this case. If the Court rejects this plea agreement, it is further agreed that the defendant may

withdraw its plea. The parties agree that because there is sufficient information in the record and

because restitution is inapplicable, in accordance with Fed. R. Crim. P. 32 (c)(1)(ii) and

32(c)(1)B), respectively, a presentence investigation and report are not required. Accordingly, if

acceptable to the Court, the parties agree to waive the presentence investigation and report

TREX-26152.2

pursuant to Fed. R. Crim. P. 32(c), and ask that defendant be sentenced at the time the guilty plea is entered. This agreed-upon sentence is as follows:

      (a)      Payment of the statutory maximum criminal fine of $200,000, to be paid within five calendar days after sentencing.

      (b)      A term of three years of probation. Probation shall include the following mandatory and discretionary special conditions, pursuant to 18 U.S.C. § 3563(a) and (b):

          (i)      The defendant shall not commit another federal, state, or local crime.

          (ii)      The defendant shall notify the probation officer within seventy-two hours of any criminal prosecution against the defendant.

          (iii)      The defendant shall answer truthfully all inquiries by the probation officer.

          (iv)      The defendant shall provide to the probation officer full access to any of the defendant's business operating locations upon reasonable notice.

          (v)      The defendant shall give reasonable notice to the probation officer of any change in its principal business location or mailing address.

4.      The defendant agrees to pay the Court-ordered special assessment in the amount of $125 immediately following sentencing and shall provide a receipt from the Clerk to the government following sentencing as proof of this payment.

TREX-26152.3

5.     The defendant hereby waives any right to a trial as to the payment of the statutory-maximum criminal fine of $200,000, pursuant to 18 U.S.C. § 3571(c)(5).

6.     The defendant will acknowledge acceptance of this plea agreement by the signature of its counsel and shall provide to the Department, as Exhibit B hereto, a certified resolution of the Board of Directors of the defendant, authorizing the defendant to enter a plea of guilty and authorizing an agent to execute this agreement.  The defendant will further provide a certified resolution of the Board of Directors of the defendant providing as follows:

a.     The defendant shall be bound by those specific terms of this agreement that expressly apply to the defendant, and any other Halliburton entity shall be bound by those specific terms that expressly apply to other Halliburton entities.  Any legal successor or assign of defendant shall remain liable for the defendant's obligations in this plea agreement, and an agreement to remain so liable shall be included by the defendant in the terms of any sale of the defendant, acquisition of the defendant by another entity, or merger of the defendant into another entity.

b.     The defendant and any other Halliburton entity waive any applicable federal criminal statute of limitations as of the date of this agreement through the conclusion of the defendant's term of probation, during which the defendant is required to have satisfied all of its obligations under this agreement, with regard to any conduct relating to or arising from the *Deepwater Horizon* blowout, explosion, oil spill and response.

7.     The government agrees that, subject to paragraph 2 of this agreement, the government shall not further prosecute the defendant or any other Halliburton entity, including any predecessor, successor or assign of the above, for any conduct relating to or arising from events in connection with the *Deepwater Horizon* blowout, explosion, oil spill or response.  In the

4

event that the court that accepts the guilty plea pursuant to this agreement determines that the defendant has breached this agreement, the defendant will not be entitled to withdraw its plea of guilty, and the Department may prosecute the defendant and any other Halliburton entity, or any predecessors, successors or assigns of any of the above, for any conduct relating to or arising from the Deepwater Horizon blowout, explosion, oil spill and response notwithstanding the expiration of any applicable statute of limitations following the signing of this plea agreement.  In the event of any such prosecution, the Department may use the defendant's statements in Exhibit A as admissible evidence against the defendant or any other Halliburton entity.

8.      The Department agrees that, if requested to do so, it will advise any appropriate suspension or debarment authorities that, in the Department's view, the defendant has accepted responsibility for the defendant's criminal conduct described in Exhibit A by virtue of this guilty plea, and that the defendant has provided significant and valuable cooperation during the course of the Deepwater Horizon Task Force's investigation and has agreed to continue to cooperate in any ongoing criminal investigation by the Department relating to the *Deepwater Horizon* blowout, explosion, oil spill and response.  The Department acknowledges the defendant's voluntary and unconditional contribution of a total of $55 million on July 25, 2013, to the National Fish and Wildlife Foundation. Such contribution is not conditioned in any way on the terms of this plea agreement, nor are the terms of this plea agreement conditioned in any way on the contribution.  Nothing in this agreement limits the rights and authority of the United States of America to initiate civil or administrative action against the defendant including but not limited to any listing or debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans and benefits from United States government agencies.

TREX-26152.5

9. In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.

10. The defendant waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney's fees and other litigation expenses arising from the investigation or prosecution of this matter.

11. The defendant waives all rights, whether asserted directly or by a representative, to request to receive from any department or agency of the United States any records pertaining to the criminal investigation or prosecution of this criminal case that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, and the United States reserves all rights and privileges it may have as to those records.

12. The defendant is satisfied with the legal representation provided by the defendant's lawyers; the defendant and its lawyers have fully discussed this plea agreement; and the defendant is agreeing to plead guilty because the defendant admits that it is guilty of a misdemeanor violation of 18 U.S.C. § 1030(a)(5)(A), subject to 18 U.S.C. § 1030(c)(4)(G)(i),

TREX-26152.6

13.     It is agreed that the parties' guilty plea agreement contains no additional promises,

agreements, or understandings other than those set forth in this written guilty plea

agreement, and that no additional promises, agreements, or understandings will be entered into

unless in writing and signed by all parties.


**JOHN D. BURETTA**
**Director, Deepwater Horizon Task Force**
**DEREK A. COHEN**
**Deputy Director, Deepwater Horizon Task Force**


**BRACEWELL & GIULIANI LLP**
**COUNSEL FOR HALLIBURTON ENERGY SERVICES, INC.**
**BY: MARC L. MUKASEY, ESQ.**

**Richard W. Beckler**
**Philip J. Bezanson**
**Kevin A. Ewing**
**Jonathan N. Halpern**
**Jason B. Hutt**
**OF COUNSEL**


Date:  July 25, 2013

TREX-26152.7

Exhibit A

Defendant Halliburton Energy Services, Inc. (hereinafter, "HESI") agrees that, if the case were to
proceed to trial, the government could establish beyond a reasonable doubt that:

1.  Defendant HESI employed hundreds of employees who worked throughout the Gulf of Mexico
    providing various services with respect to deepwater oil and natural gas drilling operations.
    Defendant HESI had offices in, and engaged in regular business throughout, the states bordering
    the Gulf of Mexico, including in the Eastern District of Louisiana, and maintained offices for
    Gulf operations in Houston, Texas.

2.  On or about May 2, 2008, BP Exploration and Production, Inc. ("BP") entered into a lease with
    the Minerals Management Service, granting BP the rights to oil and gas reservoirs at a site called
    Mississippi Canyon Prospect # 252 ("MC # 252") on the Outer Continental Shelf in the Gulf of
    Mexico.   A well drilled at MC # 252, which BP referred to as the Macondo well, lay
    approximately 48 miles from the Louisiana shoreline in approximately 5,000 feet of seawater.

3.  Defendant HESI was contracted to provide BP with cementing and other services with respect to
    BP's drilling plan for the Macondo well.

4.  On or about October 6, 2009, drilling commenced on the Macondo well using the *Marianas*
    drilling rig.   On or about November 9, 2009, work was halted due to Hurricane Ida.

5.  On or about January 31, 2010, the *Deepwater Horizon* drilling rig arrived at the Macondo well to
    resume drilling pursuant to BP's well design, drilling program, and instructions.   On or about
    April 9, 2010, drilling of the Macondo well was completed, at a total depth of approximately
    18,360 feet below sea level.

6.  During the evening of April 20, 2010, a blowout occurred on the *Deepwater Horizon*.   Natural
    gas and oil that had entered the well rushed up the riser and onto the rig floor.   The natural gas
    ignited, causing multiple explosions, killing eleven men onboard.   A fire onboard the
    Deepwater Horizon burned for two days, and resulted in the *Deepwater Horizon* sinking on or
    about April 22, 2010.   Beginning at the time of the blowout, oil and natural gas flowed into the
    Gulf of Mexico.

7.  On April 27, 2010, the United States Departments of the Interior and Homeland Security
    announced investigations of the incident.   In the weeks following the blowout, more
    government investigations were launched.   Investigating agencies required that HESI preserve

and produce information, documents and other materials related to HESI's work on the Macondo well. HESI was under a legal obligation to preserve documents relating to the Macondo well.

8. After the incident, HESI and others examined various technical aspects of the well's design and construction. On or about May 14, 2010, HESI's Cementing Technology Director directed a HESI Senior Program Manager for the Cement Product Line ("Program Manager") to run two computer simulations of the Macondo well cementing job using HESI's Displace 3D simulation program to compare alternative predictions of the cement job in the production casing, which included different numbers of centralizers. Displace 3D was a next-generation simulation program that was being developed to model fluid interfaces and their movement through the wellbore and annulus of a well.

9. As directed, the Program Manager ran the simulations, which took over an hour to complete. Program Manager then showed the results, contained on his HESI laptop, to defendant HESI's Cementing Technology Director and possibly one other HESI senior manager. HESI's Cementing Technology Director then directed Program Manager to delete the results even though the Cementing Technology Director and others had been instructed by another Halliburton executive to preserve material related to the Macondo well. Program Manager felt uncomfortable deleting the simulations but nonetheless followed the direction of defendant HESI's Cementing Technology Director to delete the simulations by (1) entering his HESI computer, locating the relevant files within the computer (which files contained a ".d3d" identifier) and deleting those files, and then (2) entering the computer's "Recycle Bin," accessible through the user interface of the computer, and erasing the deleted files from that location as well. Program Manager later acknowledged the deletion to another employee ("Employee 1") and stated, "I did what I was told."

10. In or about May and June 2010, HESI's Cementing Technology Director asked Employee 1, who was more experienced than Program Manager at running Displace 3D simulations, to also run two simulations, which included different numbers of centralizers. Employee 1 did so and then showed at least some of the results, contained on his HESI laptop, to defendant HESI's Cementing Technology Director and another manager. Employee 1 was then directed to delete the simulations. Because Employee 1 felt uncomfortable destroying the simulations, Employee 1 delayed destroying the simulations for some time but, ultimately, like Program Manager before him, deleted them from his HESI computer. Employee 1 was not authorized to delete this data.

11. During ensuing civil litigation and federal criminal investigation by the Deepwater Horizon Task Force, subsequent efforts to forensically recover the deleted Displace 3D computer simulations from May/June 2010 were unsuccessful.

12. The HESI computers upon which the materials were stored and later deleted were used in and affecting interstate and foreign commerce and communication.

13. The conduct of HESI's Cementing Technology Director, as described herein, was unauthorized but within the scope of the Cementing Technology Director's employment. Accordingly, HESI acknowledges criminal responsibility for such conduct.

14. The aforementioned conduct by defendant HESI includes the defendant's knowing transmission of a command and as a result of such conduct intentionally caused damage without authorization to a protected computer, to wit: the deletion on HESI computers of Displace 3D simulations conducted in May/June 2010, in violation of 18 U.S.C. § 1030(a)(5)(A), subject to 18 U.S.C. § (c)(4)(G)(1).

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 13-cr-165-JTM-KWR |
| v. | * | |
| | | SECTION: H |
| HALLIBURTON ENERGY SERVICES, INC. | * | |
| | * | VIOLATION: |
| * * * | | 18 U.S.C. §§ 1030(a)(5)(A) and (c)(4)(G)(i) |

## JOINT MEMORANDUM IN SUPPORT OF HALLIBURTON ENERGY SERVICES, INC.'S GUILTY PLEA PURSUANT TO COOPERATION GUILTY PLEA AGREEMENT

**NOW INTO COURT**, through the undersigned attorneys, come the United States of America and the defendant, Halliburton Energy Services, Inc. ("HESI"), which respectfully request that this Court accept the defendant's guilty plea pursuant to Rule 11(c)(1)(A) and Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure on the terms set forth in the Cooperation Guilty Plea Agreement submitted to the Court on July 26, 2013 ("Plea Agreement") (Rec. Doc. No. 4).

As demonstrated below, the proposed Cooperation Guilty Plea Agreement imposes fair, just, and appropriate corporate punishment for HESI's offense conduct described below and in the Cooperation Guilty Plea Agreement. The Cooperation Guilty Plea Agreement appropriately reflects the nature and circumstances of the charged offense, HESI's history and characteristics, and its full, truthful and ongoing cooperation, which has been significant and valuable in the Deepwater Horizon Task Force's investigation of the events surrounding the blowout of the Macondo well on April 20, 2010, and the ensuing oil spill. The Cooperation Guilty Plea

Agreement also serves to deter and prevent future misconduct and protects the public from future offense conduct by HESI and others, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment.

Pursuant to the Cooperation Guilty Plea Agreement, HESI is prepared to plead guilty to intentionally causing damage without authorization to a protected computer in or about May and June 2010, in violation of 18 U.S.C. § 1030(a)(5)(A), subject to 18 U.S.C. § 1030(c)(4)(G)(1). Also pursuant to the Cooperation Guilty Plea Agreement, HESI has agreed to pay the statutory maximum fine of $200,000, and is subject to a three-year term of probation.

The criminal penalty agreed upon by the United States and HESI fairly and reasonably balances the seriousness of the offense conduct with other important factors. HESI's Cementing Technology Director, acting without HESI's authorization, intentionally ordered the deletion of computer-generated Displace 3D models related to the Macondo well created in the weeks following the blowout on April 20, 2010, despite having previously been directed by a HESI executive to preserve material related to the Macondo well. As soon as it discovered the deletion, HESI notified the Task Force. HESI was able to recreate the Displace 3D models, but the original models have not been recovered, notwithstanding HESI's considerable efforts to do so. HESI issued legal hold notices and took other preservation measures in connection with its obligation to preserve documents and other information relating to the Macondo well. In light of the deletion of the Displace 3D models and the significance of the Task Force and other government investigations, the imposition of the statutory maximum fine, as required under the Cooperation Guilty Plea Agreement, is appropriate. At the same time, the Cooperation Guilty Plea Agreement appropriately reflects HESI's full, truthful, significant and valuable cooperation with the Deepwater Horizon Task Force in its investigation to date, including that HESI voluntarily and promptly disclosed the offense conduct to the Task Force.

In arriving at the agreed-upon charge and admission of guilt, as well as the fine and terms of probation, the United States has considered a vast amount of complex factual and legal information developed over more than three years.  From the United States' perspective, the fine and term of probation represent a just and appropriate negotiated resolution built on the work of numerous prosecutors, investigators, support staff members, and other personnel that began even before the oil well was capped.  The Task Force's and HESI's work, both cooperatively and independently over the past three years, developed their respective understandings of the complex factual and legal issues presented by this case; that hard-earned understanding served as a foundation for the negotiation of the Cooperation Guilty Plea Agreement presently before the Court.  The Task Force and HESI therefore respectfully request that the Court accept the Cooperation Guilty Plea Agreement as a fair and just application of the appropriate law to the charged conduct and as a reasonable product of vigorous arm's length negotiations and careful analysis of the relevant issues.  *See United States v. C.R. Bard, Inc*., 848 F. Supp. 287, 288 (D. Mass. 1994) ("When, as here, the joint sentencing recommendation is the result of arm's length negotiations between capable counsel, this court believes the agreement should be accepted if it is reasonable.")

## BACKGROUND AND TERMS OF THE COOPERATION GUILTY PLEA AGREEMENT

### I.     HESI'S FACTUAL ALLOCUTION

HESI's factual allocution, appended to the Cooperation Guilty Plea Agreement as Exhibit A, admits its offense conduct and provides the factual basis for the proposed plea.  (Rec. Doc. No. 3.)  In summary, the allocution states that HESI was contracted by BP to provide cementing and other services in connection with BP's drilling plan for the Macondo well.  (*Id*. at ¶ 3.)  As this Court knows, and as HESI acknowledges, the Macondo well blew out on April 20, 2010,

resulting in the deaths of eleven men on board the drilling rig *Deepwater Horizon*, and resulting in oil and natural gas flowing into the Gulf of Mexico. (*Id.* at ¶ 6.)

On April 27, 2010, the United States Departments of the Interior and Homeland Security announced investigations of the incident; thereafter, investigations by the Department of Justice and others were launched. (*Id.* at ¶ 7.) The agencies conducting these investigations required HESI to preserve and produce information, documents and other materials related to HESI's work on the Macondo well. (*Id.*)

Following the Macondo well blowout, HESI and others examined various technical aspects of the well's design and construction. (*Id.* at ¶ 8.) On or about May 14, 2010, HESI's Cementing Technology Director directed a HESI Senior Program Manager for the Cement Product Line ("Program Manager") to run two computer simulations of the Macondo well cementing job using a HESI computer simulation program named "Displace 3D." (*Id.*) Displace 3D was a next-generation simulation program that was being developed to model fluid interfaces and their movement through the wellbore and annulus of a well. (*Id.*) In this case, HESI's Cementing Technology Director instructed the Program Manager to run two models comparing alternative predictions of the Macondo cement job using different numbers of centralizers to keep the production casing centered within the wellbore. (*Id.*) Centralizers are metal devices that protrude from various intervals of the casing strings of a well, which can help keep the casing centered in the wellbore away from the surrounding walls as it is lowered and placed in the well. (*See* Rec. Doc. No. 1 ¶ 8.) Centralization can be significant to the quality of subsequent cementing around the casing. (*Id.*) Prior to the Macondo well blowout, HESI had recommended that BP use 21 centralizers in the well, based on a different simulation program, Opticem, which predicted the degree of channeling in a cement job associated with mud

TREX-26152.14

displacement. Notwithstanding HESI's recommendation, BP opted to use only six centralizers. (*Id.*)

As instructed by the Cementing Technology Director, HESI's Program Manager ran Displace 3D computer simulations and showed the results, contained on his HESI laptop, to the Cementing Technology Director and possibly one other HESI senior manager. (Rec. Doc. No. 3 at ¶ 9.) HESI's Cementing Technology Director then directed the Program Manager to delete the results even though the Cementing Technology Director and others had been instructed by a HESI executive to preserve material related to the Macondo well. (*Id.*) The Program Manager felt uncomfortable deleting the simulations but nonetheless followed the direction of defendant HESI's Cementing Technology Director to delete the simulations by (1) entering his HESI computer, locating the relevant files within the computer (which files contained a ".d3d" identifier) and deleting those files, and then (2) entering the computer's "Recycle Bin," accessible through the user interface of the computer, and erasing the deleted files from that location as well. (*Id.*) The Program Manager later acknowledged the deletion to another employee ("Employee 1") and stated, "I did what I was told." (*Id.*) The Cementing Technology Director was not authorized by HESI to delete these files or to instruct anyone else to do so.[1]

---

[1] The Task Force notes that, as indicated in the information in this matter, certain individuals conducting these simulations perceived that the simulations showed little difference between the use of 6 versus 21 centralizers. (*See* Rec. Doc. No. 1, ¶ ¶ 10 & 11; *see also* U.S.DOJ Office of Public Affairs, No. 130850, July 25, 2013, http://www.justice.gov/opa/pr/2013/July/13-crm-850.html (last visited 09/12/2013).) Whether their perceptions were objectively correct, whether the models they ran accurately represented the actual cementing job, and whether BP should have adopted HESI's original advice to use 21 centralizers (based on different computer modeling using a different program run prior to the blowout) is not a subject of the criminal resolution with HESI, and the Task Force has taken no position on those matters in connection with this resolution. (*Id.*)

TREX-26152.15

Moreover, in or about May or June 2010, HESI's Cementing Technology Director also asked Employee 1, who was more experienced than the Program Manager at running Displace 3D simulations, to run two Displace 3D simulations using the same inputs that were used by the Program Manager, which included different numbers of centralizers. (*Id.* at ¶ 10.) Employee 1 did so and then showed at least some of the results, contained on his HESI laptop, to defendant HESI's Cementing Technology Director and another manager. (*Id.*) Employee 1 was then directed by HESI's Cementing Technology Director to delete the simulations. (*Id.*) Because Employee 1 felt uncomfortable deleting the simulations, Employee 1 delayed deleting the simulations and retained the models for a period of time. Ultimately, however, like Program Manager before him, Employee 1 deleted them from his HESI computer. (*Id.*) The Cementing Technology Director was not authorized by HESI to instruct Employee 1 or anyone else to delete the data. (*Id.*)

During ensuing civil litigation and federal criminal investigation by the Deepwater Horizon Task Force, HESI undertook substantial efforts to forensically recover the deleted Displace 3D computer simulations, but the efforts to recover the deleted Displace 3D simulations ultimately were unsuccessful. (*Id.* at ¶ 11.) Nonetheless, pursuant to court order, a consulting company with technology expertise eventually recreated the Displace 3D models based on the same inputs that Employee 1 certified he believed were used in May/June 2010. Employee 1 certified that to his recollection the modeling output is a fair and accurate representation of the Displace 3D modeling that was produced in May and/or June 2010.

The HESI computers used by the Program Manager and Employee 1, upon which the materials were stored and later deleted, were used in and affecting interstate and foreign commerce and communication. (*Id.* at ¶ 12.) The conduct of HESI's Cementing Technology

TREX-26152.16

Director, in directing the deletion of the Displace 3D computer simulations created by the
Program Manager and Employee 1, was unauthorized by HESI but was within the scope of the
Cementing Technology Director's employment. (*Id.* at ¶ 13.)

## II.  HESI'S COOPERATION

HESI has provided full, truthful, substantial and valuable cooperation during the
Deepwater Horizon Task Force's investigation of the events at Macondo. HESI's cooperation
was forthright, extensive and ongoing since the outset of the investigation. Counsel for HESI
contacted the Task Force within days of its formation and provided continuous and meaningful
cooperation. Overall, it is the Task Force's view that HESI's cooperation was exceptional.
HESI promptly produced hundreds of thousands of documents to the Task Force and other
agencies and made dozens of witnesses available for interview on a wide variety of topics. HESI
proactively provided information, quickly responded to questions and made a team of lawyers
available to immediately address any inquiry by the Task Force. Notably, in the course of
providing this cooperation, HESI proactively disclosed the offense conduct giving rise to the
charge in this matter as soon as it learned about it. It also undertook considerable efforts to
attempt to recover and then recreate the Displace 3D models. As noted above, HESI, pursuant to
the Cooperation Guilty Plea Agreement, must continue to cooperate in the Task Force's
investigation.

## III.  HESI'S CRIMINAL HISTORY

HESI has not been subject to any criminal actions over the past ten years. HESI has also
not entered into any Deferred Prosecution Agreements or Non-Prosecution Agreements during
that period.

## IV.  THE COOPERATION GUILTY PLEA AGREEMENT

TREX-26152.17

The Cooperation Guilty Plea Agreement provides for HESI to pay the statutory-maximum fine of $200,000 and to be subject to a term of three years' probation. HESI's Board of Directors has provided a resolution guaranteeing that any legal successor or assign of HESI, shall remain liable for the defendant's obligations pursuant to the Cooperation Guilty Plea Agreement.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 11(c)(1)(C) authorizes the government to enter into plea agreements with defendants in which, *inter alia*, the parties agree that a particular sentence is the appropriate disposition of the case. *See* Fed. R. Crim. P. 11(c)(1)(C)*; see also United States v. BP Prods. N. Am., Inc.*, 610 F. Supp. 2d 655, 674-78 (S.D. Tex. 2009). In assessing a Rule 11(c)(1)(C) plea, the Court must make an "individualized assessment of the plea agreement," *BP Prods.*, 610 F. Supp. 2d at 674, to ensure that it constitutes a "reasonable disposition," taking into account, among other things, "'the exigencies of plea bargaining from the government's point of view,' including 'limited resources and uncertainty of result.'" *Id.* at 662 (quoting *United States v. Bundy*, 359 F.Supp.2d 535, 538 (W.D. Va. 2005)). In making this assessment, the Court should analyze the proposed plea agreement in light of 18 U.S.C. §§ 3553, 3563, and 3572, which govern the imposition of sentences, including fines and probation, in federal criminal cases. *See id.* at 727-28. Those statutory provisions require that all federal criminal sentences take into account a number of factors, including the nature and circumstances of the offense and the history and characteristics of the defendant; the need to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; the need to afford adequate specific and general deterrence to criminal conduct; and the need to protect the public. *See* 18 U.S.C. § 3553(a). Discretionary conditions of probation must be reasonably related to those same factors, and must "involve only such deprivations of liberty or property as

are reasonably necessary." 18 U.S.C. § 3563(b). Fines, meanwhile, must be imposed after

consideration of the Section 3553 factors mentioned above, as well as additional factors,

including the defendant's ability to pay, any burden imposed by the fine on third parties, and, in

the case of organizational defendants, the size of the organization and any measures taken by it

to discipline responsible employees and to prevent a recurrence.[2]  *See* 18 U.S.C. § 3572(a).

The advisory Sentencing Guidelines' policy statements provide that when the parties

agree to a specific sentence in a plea agreement under Rule 11(c)(1)(C), the district court may

accept the plea agreement if it is satisfied that the agreed sentence is either within the applicable

Guideline range or outside the Guideline range for justifiable reasons.  *See* U.S.S.G. § 6B1.2(c);

*see also Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (Kennedy, J., plurality op.)

(noting that district court must "give due consideration" to the Guidelines when considering a

binding plea agreement).  U.S.S.G. § 2B1.1 is the applicable Guidelines section to determine the

offense level for organizational defendants in connection with the offense of knowingly issuing a

command to intentionally cause the deletion of data involving a protected computer without

authorization. 18 U.S.C. § 1030(a)(5)(A), subject to the misdemeanor penalty provision of 18

U.S.C. § 1030(c)(4)(G)(i)).  *See* U.S.S.G. § 8C2.1.  The provisions of U.S.S.G. §§ 8C2.2 through

---

[2] As the Southern District of Texas has noted:

> A court may not reject a plea proposed under Rule 11(c)(1)(C) on
> the grounds that it fails to charge a sufficiently severe crime,
> provided that the government has not made its decision not to
> charge a higher offense contingent on the defendant's acceptance
> of the plea bargain. The government has wide prosecutorial
> discretion to bring appropriate charges, and the court must "defer
> to the government's position except under extraordinary
> circumstances."

*BP Prods.*, 610 F. Supp. 2d at 675 (quoting Thomas W. Hutchinson et al., Federal Sentencing
Law and Practice § 6B1.2 (2009)).

8C2.9 apply to the instant offense to assist the Court in determining the applicable fine under the
Guidelines. U.S.S.G. § 8C2.1. With respect to probation, the Guidelines' provision for
organizational defendants, Section 8D1.1, requires a term of probation in various circumstances,
none of which apply here. In this case, the government and HESI have agreed to a three-year
term of probation, subject to Rule 11(c)(1)(C), in consideration of the nature of the offense and
HESI's cooperation and remediation.[3]

**ANALYSIS**

The proposed sentence under the Cooperation Guilty Plea Agreement provides just
punishment, adequately deters both the defendant and others from engaging in similar offense
conduct in the future, protects the public, promotes respect for the law and appropriately
accounts for the nature and seriousness of the offense, and the history and characteristics of
HESI.

**I.      THE AGREED SENTENCE IS JUST, FAIR AND REASONABLE**

The proposed sentence in this matter, entailing the statutory-maximum fine and a three-
year period of probation, constitutes a fair, just and reasonable punishment for the charged
offense, when considered in light of the factors identified above.

In May and/or June 2010, the Cementing Technology Director instructed two employees
to create and then delete Displace 3D models from HESI's computer system despite the legal
obligation to preserve materials relating to the Macondo well and despite HESI's legal hold
notice and an executive's direction to preserve materials. The Cementing Technology Director's
instruction to delete the Displace 3D models constitutes a violation of 18 U.S.C. § 1030(a)(5)(A)
in the wake of a serious incident, and warrants imposition of the statutory maximum fine, as is

---

[3] Absent the Cooperation Guilty Plea Agreement, subject to Rule 11(c)(1)(C), the decision
whether to impose probation in this case would have been entirely within the Court's discretion.

provided in the Cooperation Guilty Plea Agreement. In the same vein, the proposed sentence will place HESI on probation for a significant period of time – three years – during which time it will be subject to this Court's supervision. Pursuant to this sentence of probation, HESI will be expressly prohibited from committing any further crimes. Should HESI violate the conditions of its probation, it will face the prospect of further punishment, including, potentially, an extension of the term of probation to the statutory maximum of five years, and the imposition of additional, specific conditions imposed by this Court, at its discretion. As such, the Cooperation Guilty Plea Agreement and proposed sentence will specifically deter HESI from committing further offenses, and will protect the public from future misconduct.

The circumstances of the case also demonstrate that the combination of a statutory-maximum fine and three years of probation appropriately reflect HESI's extensive, significant and valuable cooperation. As noted above, HESI promptly and voluntarily disclosed the offense conduct to the Task Force. Moreover, while the original files containing these models turned out to be unrecoverable following the deletions charged in the Information, HESI did have the ability to generate new versions of the modeling, it undertook considerable efforts to do so and produced them to the Task Force.

Further, HESI has cooperated with the Department of Justice since the inception of the criminal investigation of the Macondo well blowout, explosion, oil spill, and response, and has agreed to continue cooperating in any ongoing criminal investigation related to Macondo. Indeed, as noted above, the offense conduct in the instant case was brought to the attention of the Task Force through HESI's own affirmative disclosures.[4] These factors as well are worthy of consideration in assessing the appropriateness of the proposed sentence. *See* 18 U.S.C. §

---

[4] Moreover, the plea agreement does not prohibit the United States from prosecuting any individual HESI employees.

3553(a)(1), (2)(B)-(C); *United States v. Fernandez*, 443 F.3d 19, 33 (2d Cir. 2006) (defendant's

cooperation appropriately considered under 18 U.S.C. § 3553(a)(1) as part of defendant's

"history and characteristics").

Moreover, the reasonableness of the proposed sentence should be viewed in light of the

remedial and other measures that HESI has taken since the blowout of the Macondo well. For

example, in order to prevent the occurrence of similar conduct in the future, HESI has made its

legal hold policies and procedures more rigorous and extensive, with a particular focus on the

preservation of potentially relevant information and materials on its computers and electronic

networks relevant to the subject matter of the hold not only at the time the legal hold is initiated

but also in the future. Along with these efforts, HESI has invested in software that improves the

way legal hold notices are delivered to employees, and supplements its ability to collect and

preserve media on its information systems. Additional technology enhancements have been

added to improve HESI's ability to identify, collect and preserve physical materials that may

have no direct relation to the well involved in an incident but may nevertheless be viewed as

relevant to an inquiry about the incident. HESI has also transferred to the Law Department

certain IT Department duties regarding the external delivery of data collection, improved its

handling of any pre-existing preservation obligations in mergers and acquisitions and has hired

several employees who are responsible for overseeing compliance with its discovery and

preservation obligations. HESI also recently revised its Code of Business Conduct, of which all

employees are required to certify (and re-certify regularly) their understanding and acceptance,

and which, among other things, provides clear examples of employees' obligations to conduct

themselves ethically and in compliance with the Code. *See* 18 U.S.C. § 3572(a)(8) (in assessing

fine against organization, court should consider "any measure taken by the organization . . . to

prevent a recurrence of such an offense"); *see also BP Prods.*, 610 F. Supp. 2d at 677-78, 729 (in evaluating the reasonableness of the terms of plea agreement and fine, court may properly consider defendant's other expenditures and financial commitments).

Finally, in analyzing the adequacy of the fine under the Cooperation Guilty Plea Agreement, the Court may also "take into account ... 'uncertainty of result.'" *Id.* at 729-30 (quoting *Bundy*, 359 F. Supp. 2d at 538). The result of any negotiated compromise inherently incorporates the risk each side bears that it might not prevail if the case were to be fully litigated through trials and appeals. The outcome of any trial inherently involves some level of uncertainty, as all parties appreciate. That uncertainty supports the reasonableness of a Rule 11(c)(1)(C) plea negotiated at arm's length by active and vigorous litigants.

## II. ADDITIONAL OBSERVATIONS BY HESI[5]

HESI respectfully submits that the proposed Cooperation Guilty Plea Agreement is a fair, just and reasonable resolution of the Department of Justice's investigation into matters arising from the Deepwater Horizon incident.

---

[5] This Section II consists of statements by HESI alone.

## <u>CONCLUSION</u>

For the reasons set forth above, the parties respectfully and jointly request that the Court accept the proposed guilty plea by the defendant pursuant to Rule 11(c)(1)(A) and 11(c)(1)(C) of the Federal Rules of Criminal Procedure on the terms set forth in the Cooperation Guilty Plea Agreement submitted to the Court on July 26, 2013.

New Orleans, Louisiana, this 12th day of September, 2013.

JOHN BURETTA
Director
Deepwater Horizon Task Force

By: /s/ John D. Buretta
    /s/ William A. Pericak
    /s/ Scott M. Cullen
John D. Buretta, Director
William A. Pericak, Deputy Director
Richard R. Pickens, II, Trial Attorney
Colin L. Black, Trial Attorney
Rohan A. Virginkar, Trial Attorney
Scott M. Cullen, Trial Attorney
Deepwater Horizon Task Force

HALLIBURTON ENERGY SERVICES INC.


By: /s/ Marc L. Mukasey
Marc L. Mukasey, Esq.
Richard W. Beckler, Esq.
Jason B. Hutt, Esq.
BRACEWELL & GIULIANI LLP
Counsel for Halliburton Energy Services, Inc.

TREX-26152.24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 12, 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record.

/s/ Scott M. Cullen
SCOTT M. CULLEN
Trial Attorney, Deepwater Horizon Task Force

TREX-26152.25

MINUTE ENTRY
MILAZZO, J.
SEPTEMBER 19, 2013

JS-10: 00:25

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                          CRIMINAL ACTION

VERSUS                                            NO. 13-165

HALLIBURTON ENERGY SERVICES, INC.                 SECTION "H"


RE-ARRAIGNMENT AND SENTENCING HEARING


COURTROOM DEPUTY: ERIN MCNAMARA
COURT REPORTER: ARLENE MOVAHED
LAW CLERK: PHILIP DORE


APPEARANCES:        MARC MUKASEY, FOR DEFENDANT
                    JOHN BURETTA, ROHAN VIRGINKAR, COLIN BLACK, SCOTT CULLEN, WILLIAM
                    PERICAK, AUSA, FOR GOVERNMENT


Court begins at 10:00 a.m.
All present and ready.
Case is called and Counsel makes appearance for the record.
The Court gives instructions regarding courtroom conduct and rules.

TREX-26152.26

Corporate Resolution previously disclosed to the Court allowing Marc Mukasey to act as Representative of Halliburton Energy Services, Inc. (See Rec. Doc. 23)

Defendant Corporate Representative sworn in and questioned by the Court.

Defendant Corporate Representative is present to plea as to count 1 of the BILL OF INFORMATION and enters a plea of guilty as to same.

Reading of the BILL OF INFORMATION by the Court to the defendant is waived.

Defendant Corporate Representative is cautioned regarding possible prosecution for perjury or false statement if answers to the Court's questions are not truthful.

Defendant Corporate Representative is informed of rights to trial by jury or the Court and waives same.

Defendant Corporate Representative is informed of the maximum penalties and Sentencing Guidelines.

Defendant Corporate Representative enters a plea of Guilty.

Plea Agreement and Factual Basis summarized by U.S. Attorney and previously disclosed to the Court (See Rec. Doc. 3 & 4).

Court recessed at 10:15 a.m.

Court resumes at 10:20 a.m.

The Court finds there is a factual basis for the guilty plea in this matter and that the Defendant Corporation is fully competent to enter a plea of guilty and is pleading guilty knowingly and voluntarily.

The Defendant Corporation is ADJUDGED GUILTY on plea of Guilty for reasons stated on the record.

The Court accepts the Rule 11(c)(1)(C) plea agreement.

**PRETRIAL CONFERENCE AND TRIAL ARE HEREBY CANCELLED.**

Defendant Corporation Sentenced as to Count 1 of the Bill of Information in accordance with the 11(c)(1)(C) plea agreement.

**See Judgment and Probation Order.**

Court adjourned at 10:30 a.m**.**

TREX-26152.27