```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
                    NEW ORLEANS

UNITED STATES OF AMERICA      :    CRIMINAL ACTION 13-165
                              :    SECTION "H"
VERSUS                        :
                              :    New Orleans, Louisiana
HALLIBURTON ENERGY            :    September 19, 2013
SERVICES, INC.                :    10:00 a.m.
: : : : : : : : : : : : : : : : :
```

```
                REARRAIGNMENT AND SENTENCING
          TAKEN BEFORE THE HONORABLE JANE T. MILAZZO
                UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

```
For the Government:        U. S. Department of Justice (N.O.)
                           BY:  JOHN D.BURETTA
                                COLIN L. BLACK
                                ROHAN A. VIRGINKAR
                                SCOTT M. CULLEN
                                WILLIAM PERICAK
                           650 Poydras Street
                           New Orleans, Louisiana  70130
                           (504)  680-3000

                           U.S. Attorney's Office (New Orleans)
                           BY:  RICHARD ROWLAND PICKENS, II
                           650 Poydras Street, Suite 1600
                           New Orleans, Louisiana  70130

For the Defendant:         Bracewell & Giuliani (New York)
                           BY:  MARC L. MUKASEY
                           1251 Avenue of the Americas
                           49th Floor
                           New York, New York  10020-1104
                           (212)  508-6134

                           Bracewell & Giuliani (D.C.)
                           BY:  JASON B. HUTT
                                RICHARD W. BECKLER
                           2000 K Street NW, Suite 500
                           Washington, D.C.  20006
                           (202)  828-5800
```

APPEARANCES (CONTINUED):


Also Present:
Christopher J. Bellotti
Corporate Representative
For Halliburton Energy
Services, Inc.


Reported By:                Arlene Movahed, CCR
                            OFFICIAL COURT REPORTER
                            500 Poydras Street, Room 406
                            New Orleans, Louisiana  70130
                            (504)  589-7777


        Proceedings recorded by mechanical stenography;
transcript produced by dictation.

TREX-120231.2

1                    <u>P R O C E E D I N G S</u>

2                        **MORNING SESSION**

3                       **(September 19, 2013)**

4      (The following is a transcript of the Rearraignment and

5   Sentencing taken on September 19, 2013.)

6      (Open court.)

7          THE CLERK:   Criminal Docket No. 13-165, United States

8   of America versus Halliburton Energy Services, Inc.

9          Counsel, make your appearance for the record.

10         MR. BURETTA:   Good morning, Your Honor.   John Buretta

11   for the United States.

12         THE COURT:   Good morning.

13         MR. MUKASEY:   Good morning, Judge.   Marc Mukasey from

14   the law firm of Bracewell & Giuliani for the defendant,

15   Halliburton Energy Services, Inc.   With me are Richard Beckler

16   and Jason Hutt and the Corporate Representative Christopher

17   Bellotti.

18         THE COURT:   Good morning.   Ladies and gentlemen,

19   before we begin this proceeding, I want to review the ground

20   rules that everyone needs to follow in the courtroom.

21         All cell phones, Blackberries, iPhones, and the like

22   must be turned completely off.

23         The use of any audio or video recording devices is

24   strictly prohibited.

25         No one may use the Internet.

TREX-120231.3

1          Laptops will be permitted in the courtroom for
2  credentialed media only.  Members of the media must present
3  their credentials to court security upon entering the
4  courtroom.
5          Laptops may be used only for note-taking.  Any use of
6  the Internet in the courtroom is strictly prohibited.
7          Accessing any social media service from inside the
8  courtroom is also strictly prohibited.
9          Also, this hearing must be conducted in an orderly
10 fashion.  Therefore, unless you have been recognized by the
11 Court as a speaker, you should remain in your seats unless you
12 need to leave the courtroom.
13         This matter is a hearing on the guilty plea of
14 Halliburton Energy Services, Inc.  I'll refer to you as
15 Halliburton.  Halliburton has agreed with the government to
16 plead guilty to Count 1 of the Bill of Information in exchange
17 for a specific sentence.
18         The government and Halliburton have reached a plea
19 agreement, according to which Halliburton will plead guilty to
20 Count 1 of the Bill of Information in exchange for a specific
21 sentence.  The Court may accept or reject the plea agreement
22 and the specific sentence provided in the agreement.  If the
23 Court accepts the plea agreement, it must impose the sentence
24 to which the parties agreed.  If the Court rejects the
25 agreement, Halliburton must be allowed to withdraw from its

1 agreement to plead guilty.  Under federal law, the Court may

2 not become involved in plea negotiations.

3          In order to determine whether to accept the plea

4 agreement, I ordered the preparation of a Pre-Sentence

5 Investigation Report which I have reviewed.

6          I have also asked the government and Halliburton to

7 submit briefs explaining why they contend that the plea

8 agreement adequately reflects the seriousness of the offense

9 and that accepting the agreement satisfies the statutory

10 purposes of sentencing.  I have read and considered their

11 briefs.

12          I have also considered the law as it applies to the

13 charges at issue and these types of proceedings.

14          Before I determine whether to accept a plea of guilty,

15 I must determine whether the defendant is pleading guilty

16 knowingly and voluntarily.  I must therefore determine that

17 Halliburton Energy Services, Inc. (1) understands the nature of

18 the charges against it; (2) understands the nature of the

19 penalties it would be exposed to upon conviction of the offense

20 after trial; and (3) the nature of the rights that it waives by

21 pleading guilty.

22          When there is a plea agreement, I have to ascertain

23 that the defendant understands the terms and conditions of the

24 plea agreement and entered into the agreement knowingly and

25 voluntarily.

1          Finally, I have to determine that there is a factual

2  basis to conclude that the defendant committed the crime to

3  which it has agreed to plead guilty.

4          Once I have done so, we will take a brief recess and

5  when I come back I will announce whether or not I will accept

6  the plea agreement.

7          If I accept the plea agreement, we will proceed

8  immediately to sentencing.

9          With that background, we will proceed with the

10  hearing.

11          And we have on behalf of the government, if I could

12  have you please come forward.

13          MR. BURETTA:   Yes, Your Honor.

14          THE COURT:   Mr. Buretta?

15          MR. BURETTA:   Yes, Your Honor.

16          THE COURT:   And on behalf of the defendant, we have

17  Mr. Mukasey?

18          MR. MUKASEY:   Yes.

19          THE COURT:   I'll have you two gentlemen to stand.

20          Mr. Mukasey, is the Board of Directors of Halliburton

21  Energy Services, Inc. empowered to authorize a person to enter

22  a plea of guilty to a charge brought against the organization?

23          MR. MUKASEY:   They have so authorized my law firm,

24  Your Honor, and we filed that with the Court and delivered a

25  copy to Your Honor's chambers.

1          THE COURT:   Okay.  And that's a corporate resolution

2  and that was provided to chambers?

3          MR. MUKASEY:   Correct.

4          THE COURT:   Would the clerk please swear in Mr.

5  Mukasey.

6          DEPUTY CLERK:   Raise your right hand, please.

7                        **MARC L. MUKASEY, SWORN**

8          DEPUTY CLERK:   Thank you.

9          THE COURT:   Before entering the plea, Mr. Mukasey, do

10 you wish to have the Bill of Information read to you?

11         MR. MUKASEY:   No, we waive the reading, Judge.

12         THE COURT:   And how does Halliburton wish to plead to

13 Count 1 of the Bill of Information?

14         MR. MUKASEY:   We wish to withdraw the previously

15 entered plea of not guilty and enter a plea of guilty.

16         THE COURT:   Before accepting this plea, I am required

17 to ask you certain questions.  If you don't understand any

18 questions, please stop and I'll explain it to you.

19         I also wish to advise you that since you're under

20 oath, any answers you give me in this proceeding may later be

21 used against you in a prosecution for perjury or false

22 statement.

23         Mr. Mukasey, have you received a copy of the Bill of

24 Information?

25         MR. MUKASEY:   I have, Judge.

1          THE COURT:   And have you reviewed it?

2          MR. MUKASEY:   Yes.

3          THE COURT:   Count 1 of the Bill of Information

4    charges that the defendant committed a misdemeanor violation of

5    18 U.S.C., Section 1030(a)(5)(A), (c)(4)(G)(i) in that the

6    defendant caused the transmission of a command, and as a result

7    intentionally caused damage without authorization to a

8    protected computer.

9          This violation carries a maximum possible sentence of

10   a fine of $200,000, and five years probation.

11          Do you understand the charges against the company and

12   the maximum statutory penalties associated with it?

13          MR. MUKASEY:   Yes, Judge.

14          THE COURT:   Do you also understand that there are no

15   federal sentencing guidelines applicable to these charges and

16   that the Court would consult 18 U.S.C., Section 3553, 3571 and

17   3572 to fashion a sentence?

18          MR. MUKASEY:   Yes.

19          THE COURT:   Does the company understand that it has

20   the right to plead not guilty to the charges?

21          MR. MUKASEY:   It does.

22          THE COURT:   Do you fully understand that if I accept

23   Halliburton's plea of guilty, Halliburton would not be entitled

24   to a trial and the government would not be required to prove

25   that the company is guilty?

1          MR. MUKASEY:   Understood.

2          THE COURT:   Do you understand that if Halliburton

3 pleads not guilty, it will be entitled to a speedy and public

4 trial by a jury of 12 persons or by the Judge if a jury trial

5 is waived?

6          MR. MUKASEY:   Yes.

7          THE COURT:   You understand that it would have the

8 right to the assistance of counsel and to confront and cross-

9 examine the witnesses against the organization?

10          MR. MUKASEY:   Yes.

11          THE COURT:   You understand that before Halliburton

12 could be found guilty of Count 1, the government would be

13 required to prove beyond a reasonable doubt the following

14 facts:

15          (1) that Halliburton knowingly caused the transmission

16 of a command,

17          (2) to a computer used in or affecting interstate or

18 foreign commerce,

19          (3)  which intentionally causes impairment to the

20 integrity or availability of data,

21          (4) without authorization?  You understand those are

22 the elements?

23          MR. MUKASEY:   Yes, Judge.

24          THE COURT:   You understand that is what the

25 government would have to prove to obtain a conviction on Count

1  1?

2          MR. MUKASEY:   Yes.

3          THE COURT:   Do you understand that Halliburton would

4  be presumed innocent if it decided to go to trial?

5          MR. MUKASEY:   Yes.

6          THE COURT:   You understand that if Halliburton went

7  to trial, it would be entitled to present evidence, to subpoena

8  witnesses to testify in its defense?

9          MR. MUKASEY:   Yes.

10         THE COURT:   Do you understand that if Halliburton was

11  tried by a jury on a plea of not guilty, all 12 jurors must

12  agree on its guilt before it could be found guilty?

13         MR. MUKASEY:   Yes.

14         THE COURT:   Do you understand that if the guilty plea

15  to the -- you understand that the guilty plea to the charges in

16  the Bill of Information, you waive all of the rights that I

17  have just outlined?

18         MR. MUKASEY:   I understand.

19         THE COURT:   Does the company wish to plead guilty

20  because it is in fact guilty of the crime charged?

21         MR. MUKASEY:   Yes.

22         THE COURT:   Now you are here as corporate

23  representative and as defense counsel.  And have you explained

24  these charges to the Board of Directors of Halliburton?

25         MR. MUKASEY:   I have, Judge, and I have explained the

1 charges, the statutory maximum sentence, the Plea Agreement,

2 the Pre-Sentence Report and all the rights that are being

3 waived under Rule 11.

4        THE COURT:   Are you satisfied that the Board of

5 Directors of Halliburton understands the nature of the charges

6 that are brought against it?

7        MR. MUKASEY:   Absolutely.

8        THE COURT:   Have you had a full opportunity to

9 investigate the facts of and the law applicable to this case,

10 as well as any possible defenses that Halliburton may have had

11 and to advise the Board?

12        MR. MUKASEY:   Yes, we have.

13        THE COURT:   Are you satisfied that the decision to

14 plead guilty is knowingly and voluntarily made?

15        MR. MUKASEY:   Yes, I am.

16        THE COURT:   I now want to ask you certain questions

17 about the Plea Agreement.  Have you read the Plea Agreement?

18        MR. MUKASEY:   Yes, I have.

19        THE COURT:   Have you reviewed the Plea Agreement with

20 the Board of Directors?

21        MR. MUKASEY:   Yes.

22        THE COURT:   Do you understand the terms and the

23 conditions of the Plea Agreement?

24        MR. MUKASEY:   I do and they do.

25        THE COURT:   And they have been explained to the Board

1  of Directors?

2          MR. MUKASEY:   Yes.

3          THE COURT:   Are there any agreements between

4  Halliburton and the government concerning this plea other than

5  what is contained in the Plea Agreement?

6          MR. MUKASEY:   No.

7          THE COURT:   Has the company been influenced, induced,

8  or persuaded in any manner to plead guilty because of any

9  promises or threats made by anyone other than the promises in

10 the Plea Agreement?

11         MR. MUKASEY:   Absolutely not.

12         THE COURT:   Mr. Buretta, would you please advise the

13 Court of the government's understanding of the Plea Agreement

14 in this matter.

15         MR. BURETTA:   Yes, Your Honor.  Thank you.

16         The Plea Agreement is submitted pursuant to Rule 11

17 (c)(1)(C) of the Federal Rules of Criminal Procedure.

18             It is the only agreement between the parties.

19             It provides for Halliburton to waive its right to

20 trial and plead guilty to the one count specified under 18

21 U.S.C. 1030(a)(5)(A), and (c)(4)(G)(i).

22             It requires Halliburton to pay the statutory maximum

23 fine available for this offense of $200,000 and also requires

24 Transocean -- I'm sorry -- Halliburton to cooperate fully and

25 truthfully with the Task Force in its ongoing criminal

1  investigation.

2         It requires the condition of three years of probation
3  with several mandatory discretionary conditions of probation
4  imposed as specified in the Plea Agreement, including
5  requirements that the company not commit another crime, that it
6  notify the probation officer within 72 hours of any criminal
7  prosecution, that it answers truthfully all inquiries by the
8  probation officer and that it gives reasonable notice to the
9  probation officer of any change in its principal business
10 location or mailing address.

11         In addition, Halliburton, under the terms of the Plea
12 Agreement, waives its right to appeal or otherwise challenge
13 its conviction and sentence.

14         As noted, the Plea Agreement is subject to this
15 Court's approval and should the Court decline to accept the
16 guilty plea on the terms set forth in the Plea Agreement,
17 Halliburton is entitled to withdraw its guilty plea.

18         The government has further agreed in the Plea
19 Agreement that if Halliburton complies with the terms of the
20 Agreement, the government will not further prosecute
21 Halliburton with respect to the conduct specified.

22         THE COURT:   Mr. Mukasey, is that your understanding
23 of the Plea Agreement?

24         MR. MUKASEY:   It is.

25         THE COURT:   Does Halliburton understand that under

1    its Plea Agreement with the government, it expressly waives its

2    right to appeal or collaterally challenge its conviction and

3    sentence?

4          MR. MUKASEY:   It does.

5          THE COURT:   And have you explained to your client its

6    appeal rights and the effect of waiving those rights?

7          MR. MUKASEY:   Yes.

8          THE COURT:   Does Halliburton understand that although

9    the government has agreed that it will pay criminal fines, be

10   placed on probation for three years with certain conditions of

11   probation and that the government will not further prosecute

12   the defendant, Halliburton Energy Services, Inc., for any

13   conduct regarding any matters under investigation by the

14   DEEPWATER HORIZON Task Force relating to or arising out of the

15   DEEPWATER HORIZON blowout, explosion, oil spill and response, I

16   am not bound to accept the Plea Agreement?

17         MR. MUKASEY:   Yes.

18         THE COURT:   Does the company understand that if I

19   reject the Plea Agreement, it will be permitted to withdraw its

20   plea of guilty?

21         MR. MUKASEY:   Yes.

22         THE COURT:   Does the company also understand that if

23   I reject the Plea Agreement and it persists in pleading guilty

24   or is found guilty after trial, it could be treated less

25   favorably than would result in the Plea Agreement?

1            MR. MUKASEY:   Yes.

2            THE COURT:   Have you explained all of that to your

3  client?

4            MR. MUKASEY:   I have, Judge.

5            THE COURT:   Will counsel for the government please

6  describe the Factual Basis for the guilty plea.

7            MR. BURETTA:   Yes, Your Honor.  As set forth in

8  Exhibit A to the Plea Agreement, the company has adopted the

9  factual allocution that satisfies the elements of the charged

10 offense.

11           In summary, the allocution establishes that in or

12 about May and June of 2010, the company, acting through its

13 Cementing Technology Director twice directed other Halliburton

14 employees to transmit commands deleting and destroying the

15 results of computer simulations of the Macondo Well cementing

16 job.

17           The conduct of the defendant's Cementing Technology

18 Director was unauthorized but within the scope of his

19 employment. And the computers upon which the data described any

20 information was stored, from which they were deleted and

21 destroyed, were used in and affecting interstate or foreign

22 commerce communications.

23           THE COURT:   Mr. Mukasey, have you read the Factual

24 Basis?

25           MR. MUKASEY:   I have.

1            THE COURT:   Do you understand it?

2            MR. MUKASEY:   Yes.

3            THE COURT:   Are the statements in the Factual Basis

4  about Halliburton's conduct true?

5            MR. MUKASEY:   Yes.

6            THE COURT:   Did you sign it on behalf of Halliburton?

7            MR. MUKASEY:   It's statement -- the allocution is

8  actually not signed but I did sign the Plea Agreement which

9  adopts it on behalf of Halliburton.

10            THE COURT:   Thank you.  Finally, before deciding to

11  accept or reject this Plea Agreement, I would like to give

12  Halliburton an opportunity to address the Court.  Would they

13  like to make a statement?

14            MR. MUKASEY:   No, Judge.

15            THE COURT:   The Court is going to take a five-minute

16  recess.

17            MR. BURETTA:   Thank you, Your Honor.

18       (Recess.)

19       (Open court.)

20            THE COURT:   I am prepared to issue my ruling.

21            Before me is the Plea Agreement negotiated between

22  Halliburton Energy Services, Inc. and the United States

23  government, under which Halliburton pleaded guilty to a

24  misdemeanor violation of 18 U.S.C., Section 1030(a)(5)(A),

25  subject to 18 U.S.C., Section (c)(4)(G)(i), to wit;

1  intentionally causing damage without authorization to a

2  protected computer.  This violation arises out of the largest

3  environmental disaster in the history of the United States.

4  For the following reasons, the plea is accepted.

5          The parties have reached this Plea Agreement pursuant

6  to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.

7  Under this provision, the government and Halliburton have

8  reached a plea agreement that calls for a specific sentence;

9  the parties have determined and represented to the Court that

10  the sentence is the appropriate disposition for this case.

11  This Court may either accept or reject the Plea Agreement or

12  defer a decision until the Court has reviewed the Pre-Sentence

13  Report.  The Court may not modify the agreement, nor may the

14  Court participate in plea negotiations.

15          If the Court rejects this Plea Agreement, Halliburton

16  may withdraw its guilty plea and proceed to trial.  If the

17  Court accepts this Plea Agreement, it must sentence Halliburton

18  according to the terms of the agreement.

19          In determining whether to accept the Plea Agreement,

20  the Court must make an individualized assessment of the

21  stipulated sentence based on the facts and circumstances

22  specific to the case.  The Court may not reject a proposed plea

23  under Rule 11(c)(1)(C) based on broad policy grounds or on a

24  categorical basis.

25          The Court's discretion to reject a plea is also

1 limited by the constraints of the judicial, as opposed to the
2 prosecutorial, role.  In other words, a court may not reject a
3 proposed plea because it believes that additional crimes should
4 have been charged; such decisions are up to the prosecutor.
5 Nor may a court inject itself into the plea bargaining process
6 by modifying or rewriting the proposed plea and sentence.  A
7 court may only evaluate the plea that the parties have
8 proposed, not a hypothetical plea that the Court may prefer but
9 the parties have not presented.  Conversely, the defendant has
10 no right to have the guilty plea accepted.

11        In reviewing this Plea Agreement, the Court should
12 consider whether the agreed upon sentence satisfies the factors
13 enunciated in 18 U.S.C., Section 3553.  That is, whether the
14 sentence is sufficient, but not greater than necessary to
15 comply with the purposes of this Section.  Therefore, the Court
16 should consider:  the nature and circumstances of the offense
17 and the history and characteristics of the defendant; and the
18 need for the sentence imposed to reflect the seriousness of the
19 offense, to promote respect for the law, and to provide just
20 punishment for the offense.  Moreover, the sentence should
21 adequately deter criminal conduct and protect the public from
22 further crimes of the defendant.

23        In evaluating the seriousness of the offense and the
24 characteristics of the defendant, the Court finds that the
25 defendant, Halliburton, is charged with a one-count Bill of

1  Information with intentionally causing damage without

2  authorization to a protected computer in or about May and June

3  2010, a Class A misdemeanor.  The Court notes at the outset

4  that the conduct which resulted in this charge and this plea

5  occurred after the blowout of the Macondo Well on April 20,

6  2010.

7          As has been reported, Halliburton was contracted by BP

8  to provide cementing and other services in connection with its

9  drilling activities for the Macondo Well.  Following the

10 blowout of April 20th, the United States Departments of

11 Interior Homeland Security and ultimately the Department of

12 Justice began investigations of the explosion.  Halliburton was

13 required to preserve and produce information, documents and

14 other materials related to its work on the well.

15         Following the blowout, Halliburton's Cementing

16 Technology Director directed a Senior Program Manager of the

17 cement product lines to run two computer simulations of the

18 Macondo Well cementing job using a computer simulation program

19 named "Displaced 3D".  This simulation program was being

20 developed to model fluid interfaces and their movement through

21 the wellbore and annulus of a well.  Halliburton's Technology

22 Director instructed the program manager to run two models

23 comparing alterative predictions of the Macondo cement job

24 using different numbers of centralizers to keep the production

25 casing centered within the wellbore.  Centralizers can help

1 keep the casing center in the wellbore and can be significant

2 to the quality of the cementing around the casing.  After the

3 simulations were run and results reviewed, the Technology

4 Director directed the program manager to delete the results.

5 The program manager was aware of this impropriety, but

6 nonetheless followed the instruction of the Director.

7         Following this initial testing, the Technology

8 Director asked a more experienced program manager to repeat the

9 testing using the same input.  These results were shared with

10 the Director who directed the program manager to delete these

11 simulations as well.  This manager delayed deleting the

12 simulations, but ultimately followed the directions of the

13 Director and deleted the simulations from his Halliburton

14 computer.  The Cementing Technology Director was not authorized

15 to instruct either employee or anyone else to delete the data.

16         Halliburton self-reported this violation, and

17 undertook substantial efforts to forensically recover the

18 deleted "Displaced 3D" computer simulations.  As to its prior

19 history of misconduct, Halliburton Energy Services, Inc. has no

20 history of similar or other misconduct that has been reported

21 to this Court.

22         In determining whether this provides just punishment,

23 the Court notes that Halliburton has agreed to pay a total fine

24 of $200,000 and has agreed to a three-year term of probation.

25 This fine represents the statutory maximum.  The Court notes

1  that the offense was self-reported by Halliburton and that the

2  government has represented that the defendant has provided

3  full, truthful and substantial and valuable cooperation during

4  its investigation of the blowout.

5          The defendant and the government agree that a monetary

6  penalty of $200,000 adequately reflects the seriousness of the

7  offense, promotes respect for compliance with the law, and

8  serves to deter similar conduct by the defendant and others in

9  general.

10         This Court agrees.

11         This Court must also evaluated whether the agreed upon

12  sentence adequately deters future criminal conduct.  In

13  fulfilling this obligation, the Court again cites the

14  significant financial obligations imposed by the agreed

15  sentence.  The Court further believes that the imposition of

16  the three-year term of probation more than satisfies the need

17  to deter criminal conduct.

18         In sum, after considering all the evidence before me,

19  I believe the Plea Agreement is reasonable and accept it.

20         Based on the testimony received, I also find that

21  there is a factual basis for the guilty plea in this matter and

22  that the defendant, Halliburton Energy Services, Inc., is fully

23  competent to enter its plea of guilty and is pleading guilty

24  knowingly and voluntarily.

25         Therefore, I adjudge the defendant, Halliburton Energy

1  Services, guilty as to Count 1 of the Bill of Information.

2          Is there any reason why sentence should not be imposed

3  at this time?

4          MR. MUKASEY:   No, Judge.

5          MR. BURETTA:   No, Your Honor.

6          THE COURT:   I'm prepared to proceed with sentencing.

7          In preparation of this hearing, I have ordered a Pre-

8  Sentence Investigation Report.  I understand that the

9  government has no objections to the report.  The defendant has

10  filed 15 objections that have been included in the addendum to

11  the final Pre-Sentence Report.  Are there any other objections

12  to the report?

13          MR. MUKASEY:   No, Your Honor.

14          MR. BURETTA:   No, Your Honor.

15          THE COURT:   It is therefore appropriate for me to

16  state that there are no further errors or objections in the

17  report.

18          The Court thus orders that the report with the

19  addendum, except as to the probation officer's sentencing

20  recommendations, be made a part of the record in this matter

21  and filed under seal.

22          Halliburton Services, Inc. has pleaded guilty to one

23  misdemeanor charge of unauthorized deletion of data on a

24  protected computer in violation of 18 U.S.C., Sections

25  1030(a)(5)(A), subject to (c)(4)(G)(i), a Class A misdemeanor.

1          I have accepted the parties' Plea Agreement, which

2 contained a stipulated sentence to which I am bound.

3          Does Halliburton Services, Inc. have anything to say

4 or offer in mitigation of punishment before sentence is

5 imposed?

6          MR. MUKASEY:   No, beyond the fact that we appreciate

7 the careful and thorough attention of the Court to this matter.

8 Thank you.

9          THE COURT:   Does the government have anything to say

10 or offer before sentence is imposed?

11          MR. BURETTA:   We have set forth our comments, we

12 think, in full in our joint submission, Your Honor, and just

13 note that the Task Force continues its investigation with

14 alacrity.

15          Pursuant to the Sentencing Reform Act of 1984, and

16 considering the provisions found in 18 U.S.C., Section 3553 and

17 the Rule 11(c)(1)(C) Agreement, it is the judgment of the Court

18 that the defendant, Halliburton Energy Services, Inc., is

19 hereby placed on probation for a term of three years.

20          It is the finding of this Court that the defendant has

21 the ability to pay a fine.  Accordingly, the defendant is

22 ordered to pay to the United States a total fine of $200,000.

23 The Court will waive the interest requirement in this case.

24          Fine payments shall be made to the Clerk, United

25 States District Court, and are to be forwarded to the following

1 address:  United States Clerk's Office, Attention Financial

2 Section, 500 Poydras Street, Room C151, New Orleans, 70130.

3          The fine is payable within five calendar days of

4 sentencing.

5          During the term of probation, the organization shall

6 not commit any federal, state or local crime.

7          In addition, the following special conditions are

8 imposed:

9          (1)  The defendant shall pay any fine imposed by this

10 judgment.

11          (2)  The defendant shall make a full and complete

12 disclosure of its business/financial records.

13          (3)  The defendant shall submit to an unannounced

14 search and/or inspection of business records.

15          (4)  The defendant shall notify the United States

16 Probation Officer of any material adverse change in its

17 business or financial condition.

18          (5)  The defendant shall inform the United States

19 Probation Officer of any breach of compliance.

20          It is further ordered that the defendant immediately

21 pay to the United States a special assessment of $125.

22          Is there anything further?

23          MR. MUKASEY:   No, Your Honor.

24          MR. BURETTA:   No, Your Honor.  Thank you.

25          THE COURT:   Thank you.  Court stands adjoined.

1        (End of proceedings.)

2

3

4

**REPORTER'S CERTIFICATE**


        I, Arlene Movahed, Official Court Reporter, for the United

States District Court for the Eastern District of Louisiana,

appointed pursuant to the provisions of Title 28, United States

Code, Section 753, do hereby certify that the foregoing is a

full, true and correct transcript of proceedings had in the

within-entitled and numbered cause on the date herein before

set forth and I do further certify that the foregoing

transcript has been prepared by me or under my direction.


                        s/   Arlene Movahed
                        ARLENE MOVAHED, CCR
                        Official Court Reporter
                        United States District Court
                        Eastern District of Louisiana