**MDL 2179**
_____

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
_____

**IN RE: OIL SPILL BY THE OIL RIG DEEPWATER HORIZON IN THE GULF OF MEXICO ON APRIL 20, 2010**
_____

This document relates to: All Actions
(including Nos. 10-2771 and 10-4536)
_____

**THE PLAINTIFFS' AND STATES' SUPPLEMENTAL BRIEF REGARDING HALLIBURTON'S GUILTY PLEA CONVICTION AS EVIDENCE OF LIABILITY FOR PUNITIVE DAMAGES**
_____

LUTHER STRANGE
*Attorney General*

COREY L. MAZE
*Special Deputy Attorney General*

WINFIELD J. SINCLAIR
*Assistant Attorney General*

*Attorneys for the State of Alabama*

JAMES PARKERSON ROY
STEPHEN J. HERMAN
*Co-Liaison Counsel for Plaintiffs*

JAMES D. "BUDDY" CALDWELL
*Attorney General*

ALLAN KANNER
*Attorneys for the State of Louisiana*

## Table of Contents
I.  *Vicarious Liability*:  Admitting A Corporate Cover-Up Proves That The Corporation "Ratified or Approved" Jesse Gagliano's Reckless Cement Job. ...................................................................................................1

II. *Corporate-Level Misconduct*: HESI's Post-Incident Cover-Up Further Proves HESI's Pre-Incident Willful and Reckless State-of-Mind. ..................3

Conclusion ...................................................................................................5

Certificate of Service ..................................................................................6

## Table of Authorities

### Cases

*Ellis v. Simmons*, 11 F.2d 596 (5th Cir. 1926)..........................................................2

*Hundley v. Rite Aid*, 529 S.E. 2d 45 (S.C. App. 2000)..............................................4

*In re P&E Boat Rentals, Inc.*, 872 F.2d 642 (5th Cir 1989)............................. 1, 3, 5

### Other Authorities

Linda Schlueter and Kenneth Redden, *Punitive Damages*, §4.4(B)(2)(a) (3rd ed. 1995)...................................................................................................2

i

**SUPPLEMENTAL BRIEF REGARDING HALLIBURTON'S
GUILTY PLEA CONVICTION AS EVIDENCE OF LIABILITY FOR PUNITIVE DAMAGES**
_____

*P&E Boat Rentals'* restriction on corporate liability for punitive damages relies upon the corporation's innocence from wrongdoing:

> We hold simply that punitive damages may not be imposed against a corporation when one or more of its employees decides on his own to engage in malicious or outrageous conduct. In such a case, the corporation itself cannot be considered the wrongdoer.

*In re P&E Boat Rentals, Inc.*, 872 F.2d 642, 652 (5th Cir 1989). HESI is not innocent; it is a corporate "wrongdoer" that has been convicted of directing employees to destroy Macondo-related evidence. *Id.* Now that HESI's (alleged) veil of corporate innocence is gone, so too is any defense premised upon *P&E's* limitation on punitive damages.

Below, we detail how HESI's guilty plea conviction bolsters two of the Plaintiffs' distinct theories of punitive liability under *P&E Boat Rentals*: (1) vicarious liability for Jesse Gagliano's reckless cement job and (2) a willful and reckless corporate culture.

**I.   VICARIOUS LIABILITY: Admitting A Corporate Cover-Up Proves That The Corporation "Ratified or Approved" Jesse Gagliano's Reckless Cement Job.**

*P&E Boat Rentals* authorizes punitive damages when the corporation "ratified or approved the [reckless] act" of an employee. *Id.* at 650-53 (*quoting* Restatement (Second) of Torts §909(d)); HESI Post-Trial Br. 28 (acknowledging *P&E's* ratification rule).

Jesse Gagliano's reckless cement job was a cause of the blowout. *See* Plaintiffs' PFF/CL at 62, 174-78; PSC Post-Trial Reply Brief, at 6-8. This presented HESI with two choices: (1) repudiate Gagliano's cement job or (2) approve it, and attempt to lay blame elsewhere. As detailed in Alabama's reply brief (pages 2-4), HESI chose ratification, as

1

demonstrated by (a) the retention of Gagliano at HESI (without any demotion or reprimand), (b) hiding/destroying post-incident test results that proved the slurry's inadequacy, and (c) basing its trial defense on the appropriateness of Gagliano's slurry design and testing.[1] Specifically, HESI elected to take the position that Gagliano "properly designed and executed the cement job at the Macondo well," HESI PFF/CL at 168, and therefore someone else's mistake(s) caused the cement to fail to achieve zonal isolation—for example, BP's decision to use 6 centralizers instead of the recommended 21. HESI PFF/CL at 140-46.

HESI's corporate conviction for destroying post-incident modeling results bolsters our ratification argument, while destroying one of HESI's defenses to it.

1. *Proof of Ratification*: If HESI had *repudiated* Gagliano's cement job by admitting its failings, post-incident test results suggesting little or no difference in the use of 6 versus 21 centralizers would have caused HESI little heartburn. But since HESI decided to *ratify* Gagliano's cement job and blame others for the cement failure, such results posed a problem. A HESI corporate official dealt with this problem by directing subordinate employees to destroy the results of HESI's post-incident 3D modeling. In other words, the corporate-level ratification of Gagliano's failed cement job led to a corporate-level edict to destroy evidence potentially to the contrary.[2]

---

[1] *See Ellis v. Simmons*, 11 F.2d 596, 597 (5th Cir. 1926) ("the acts of an agent, even though unauthorized, may be subsequently ratified by the principal, and ratification may be presumed from the acts of the principal"); 1 Linda Schlueter and Kenneth Redden, *Punitive Damages*, §4.4(B)(2)(a), p. 182-83 (3rd ed. 1995) ("Because there may be little to no direct evidence of [ratification or approval], the plaintiff may have to show other facts which would raise an inference of ratification or approval…. [T]he employer may make certain statements, testify, or in some other manner communicate information that would give rise to the inference").

[2] The guilty plea agreement did not determine whether (a) the HESI employees' "perceptions were objectively correct" or (b) the destroyed 3D modeling "accurately represented the actual cementing job." TREX 26152 at 15. But regardless of the results, HESI's post-incident modeling cannot disprove BP's pre-incident state-of-mind/ corporate culture. The fact remains: To save time and money, BP willfully, wantonly, and recklessly chose to ignore pre-incident modeling that suggested the use of 7 or 10 (or less) centralizers would result in channeling and pressed forward with the use of only 6. *See* Plaintiff's PFF/CL 143-45.

2. *Contradicting HESI's Defense*:  In its post-trial reply brief, HESI claimed that Plaintiffs' ratification argument failed to satisfy *P&E Boat Rentals* because "the post-Incident activities that Plaintiffs point to are not activities of policymaking employees." HESI Reply Br. 16.  That defense is utterly belied by the guilty plea conviction.  Obviously, the Cementing Technology Director who ordered the destruction of the 3D modeling results possessed enough corporate policymaking authority to force the *corporation itself* to plead guilty to a federal crime.  Simply put, Halliburton, not an employee, destroyed the evidence.

## II.   CORPORATE-LEVEL MISCONDUCT: HESI's Post-Incident Cover-Up Further Proves HESI's Pre-Incident Willful and Reckless State-of-Mind.

*P&E Boat Rentals* is a vicarious liability case.  *P&E* poses no barrier to punitive damages if the corporation's *own* actions or inactions—as opposed to those of an individual employee—possess the requisite level of reckless or wanton conduct.

The Plaintiffs have argued and proved that HESI willfully and recklessly disregarded rules, safety, and the rights of others, and that willful and reckless corporate culture played a part in causing the blowout.  *See* Plaintiffs' PFF/CL 170-186.  Plaintiffs have also demonstrated, and provided authority for the proposition that, HESI's post-incident actions are a window into HESI's pre-incident state-of-mind. *See* PSC Br. 14-18.

Stretching from before the blowout through the Phase One trial, HESI's corporate mentality has been to cover-up its failings.[3]  This HESI state-of-mind manifested itself

---

[3] In addition to out-of-court conduct, at least one court has said that a corporation's conduct in litigation was relevant to the Plaintiffs' punitive argument that the corporation's pre-incident state of mind was "a conscious indifference to the safety of others."  *Hundley v. Rite Aid*, 529 S.E. 2d 45, 62 (S.C. App. 2000) (finding that Rite Aid's "abusive and obstructionist" trial conduct, including "missing records and the inconsistent answers to interrogatories," "indirectly add[ed] credibility to the argument that Rite-Aid's pre-incident approach to quality assurance reflected a conscious indifference to the safety of others").

before the incident when HESI personnel refused to disclose failed cement slurry test results, a failure that helped cause the blowout. *See* Plaintiffs' PFF/CL 177-78. The same corporate mentality led HESI personnel to destroy post-incident test results that proved Gagliano's slurry design was unstable. *See id.* at 63-71; 180-82.

HESI's new admission that corporate officials ordered employees to destroy 3D modeling results further proves the company's willful and wanton corporate mentality, a mentality that predated and contributed to the blowout. Thus, HESI's guilty plea conviction is both relevant and revealing, despite its post-incident nature.

HESI's conviction also repudiates two of its defenses against Plaintiffs' argument that HESI's post-incident misconduct is proof of HESI's pre-incident corporate culture.

1. *The alleged lack of evidence*: Among several items, Plaintiffs suggested that HESI had concealed or destroyed the "post-incident Displace 3D modeling" results as part of its "broken corporate culture." Plaintiffs' PFF/CL 63, 71; *see also* PSC Br. 57-59. In direct response, HESI boldly assured the Court that it had not destroyed any evidence:

> There is *no evidence* that HESI or its employees concealed or destroyed evidence. . . . Plaintiffs grasp at straws in an attempt to lengthen their list of HESI's alleged post-incident 'bad acts.' But Plaintiffs cite nothing suggesting that HESI's post-Incident conduct was inappropriate.

HESI Reply Br. 17 (emphasis in original). That's clearly false.

Worse yet, HESI surely knew it was false when HESI said it. HESI told this Court that there is "*no evidence* that HESI or its employees concealed or destroyed evidence" on July 12, 2013—a mere two weeks before HESI filed a guilty plea agreement that admitted to the destruction of evidence. TREX 26152.1. The joint US-HESI memo reveals that HESI

4

had been working with the Investigative Task Force for "the past three years," TREX 26152.13, and that "HESI proactively disclosed the offense conduct giving rise to the charge in this matter *as soon as it learned about it*." TREX 26152.17 (emphasis added).

HESI did not extend the same courtesy to Plaintiffs; thereby ensuring that Plaintiffs could not present evidence of the corporate-level cover-up during the Phase One trial or argue it in post-trial briefing. Such conduct further demonstrates HESI's corporate indifference to the rights of Plaintiffs.

2. *The alleged Lack of Corporate Involvement*: HESI also argued that any post-incident misconduct was committed by lower-level employees whose actions could not be imputed to the corporation. HESI Reply Br. 20-21. But the corporate conviction proves otherwise. Again, the Cementing Technology Director who ordered the destruction of the 3D modeling results possessed enough corporate policymaking authority to force the *corporation itself* to plead guilty to the destruction. *See* TREX-26152.9-10. In other words, Halliburton itself has admitted to destroying Macondo-related evidence.

## CONCLUSION

Halliburton is a corporate "wrongdoer" who may be held liable for punitive damages under *P&E Boat Rentals*. Plaintiffs respectfully ask the Court to find that Halliburton is liable for punitive damages for any or all of the reasons set forth in this brief and Plaintiffs' previous post-trial proposed findings and briefs.

LUTHER STRANGE
*Attorney General of Alabama*

 /s/ Corey L. Maze                              .
COREY L. MAZE
*Special Deputy Attorney General*

WINFIELD J. SINCLAIR
*Assistant Attorney General*
*Attorneys for the State of Alabama*

JAMES PARKERSON ROY
STEPHEN J. HERMAN
*Co-Liaison Counsel for Plaintiffs*

JAMES D. "BUDDY" CALDWELL
*Attorney General of Louisiana*

ALLAN KANNER
*Attorneys for the State of Louisiana*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Brief has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on **September 26, 2013**.

s/  Corey L. Maze                              .
