# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179  SECTION J |
| This document relates to all actions. | * * * * * | Honorable CARL J. BARBIER  Magistrate Judge SHUSHAN |
| Bon Secour Fisheries, Inc., *et al.*, individually and on behalf of themselves and all others similarly situated,  Plaintiffs,  v.  BP Exploration & Production Inc.; BP America Production Company; BP p.l.c.,  Defendants. | * * * * * * * * * * * | Civil Action No. 12-970  SECTION J  Honorable CARL J. BARBIER  Magistrate Judge SHUSHAN |

## BP'S SUR-REPLY IN OPPOSITION TO CLASS COUNSEL'S MOTION TO AUTHORIZE THE CLAIMS ADMINISTRATOR TO IMPLEMENT THE SETTLEMENT AGREEMENT WITH RESPECT TO OIL & GAS SUPPORT SERVICES INDUSTRY CLAIMS

**TABLE OF CONTENTS**

**Page**

I. CLASS COUNSEL SEEK TO IMPOSE A COMPENSATION METHOD FOR MORATORIA LOSS CLAIMS TO WHICH BP DOES NOT AGREE, AND DID NOT AGREE. ...................................................................................................................2

II. CLASS COUNSEL FAIL TO IDENTIFY ANY LEGAL BASIS THAT WOULD ALLOW THE COURT TO RE-WRITE THE EXPRESS TERMS OF EXHIBIT 16. ..................................................................................................................5

   A. The Court Should Reject Class Counsel's Attempt To Divert Attention From The Express Terms Of Exhibit 16, Which Allow Only BP and Class Counsel To Jointly Create Agreed Compensation Guidance For Moratoria Loss Claims. ...............................................................................................5

   B. Class Counsel Inaccurately Contend That There Exists Sufficient "Agreed Upon Guidance" From The Parties For The Claims Administrator To Apply In Making Compensation Determinations For Moratoria Loss Claims. .................................................................................................6

   C. There Is No Basis For Class Counsel's Claim That The Court Has Authority To Re-Write Or Remove Terms Of Exhibit 16. .......................................7

CONCLUSION ................................................................................................................11

Class Counsel's reply inaccurately portrays the discussions that took place between BP and Class Counsel to develop the "agreed upon guidance" that the Claims Administrator must apply to make compensation determinations for claims subject to Moratoria Loss review. Class Counsel's assertion of "delay" and suggestions of bad faith by BP also are incorrect, and turn on its head what is occurring here: Class Counsel is trying to impose a compensation method for Moratoria Loss claims in violation of express terms of the Settlement Agreement. Class Counsel fail to identify any legal basis for the Court to re-write the express terms of Exhibit 16.

The Settlement Agreement's requirement that only BP and Class Counsel may decide the guidance for compensation determinations of Moratoria Loss claims — not the Claims Administrator, the Court, or anyone else — is a bargained-for protection built into the Agreement to prevent precisely what Class Counsel seek to accomplish here. Absent this provision, BP could be forced to pay the cost of a compensation methodology for Moratoria Loss claims that over-compensates class members and wrongly compensates non-class members.

Unlike BP's proposals, the unilateral compensation guidance proposed by the Claims Administrator and Class Counsel violate the Settlement Agreement's express terms by (i) compensating claimants for Moratoria Losses and for economic losses unrelated to the Spill or unrelated to Moratoria Losses; (ii) overcompensating claimants for losses due to the Spill; and (iii) incorporating the BEL compensation method despite an express bar on doing so that is part of the Settlement Agreement itself. BP's concerns are genuine and are validated by the recent findings in Judge Freeh's Report, which Class Counsel ignore in their reply. Importantly, the Claims Administrator's proposed guidance would also violate the Settlement Agreement's terms because it is not "agreed upon guidance" as Exhibit 16 requires.

**I.     CLASS COUNSEL SEEK TO IMPOSE A COMPENSATION METHOD FOR MORATORIA LOSS CLAIMS TO WHICH BP DOES NOT AGREE, AND DID NOT AGREE.**

Class Counsel's Motion seeks to avoid consideration of BP's valid and reasonable objections to the Claims Administrator's compensation proposals and to impose a Moratoria Loss compensation method to which BP does not agree and which violates the Settlement Agreement's express terms.  Class Counsel seek to support their approach by making a number of unsubstantiated and/or inaccurate assertions about discussions between BP and Class Counsel.

*First*, Class Counsel's assertions of "delay" and suggestion of bad faith by BP, (CC Reply (Rec. Doc. 11470) at 1-2 [hereinafter "CC Reply"]), are both unsubstantiated and inaccurate.  Even before the Settlement Agreement was signed, BP attempted to engage Class Counsel to jointly develop agreed upon Moratoria Loss guidance for compensation determinations.  (Bloom Suppl. Decl. ¶ 4.)  It was Class Counsel who initially refused to engage in discussions to develop "agreed upon guidance," not BP.  (*See* Bloom Decl. (Rec. Doc 11300-1) ¶¶ 10, 15, 17, & Exs. J, N, O [hereinafter "Bloom Decl."].)  Then, after reluctantly agreeing to engage in discussions 13 months later, Class Counsel failed to respond to BP's proposed compensation guidance, not the other way around.  (Bloom Decl. ¶¶ 18-24; Bloom Supp. Decl. ¶ 4, 8.)  It is Class Counsel and the Claims Administrator who have proposed unreasonable compensation guidance that violates the Settlement Agreement terms, not BP.  (Bloom Decl. ¶ 20 & Ex. S; Benton Decl. ¶ 5 (Rec. Doc. 11300-29) [hereinafter "Benton Decl."].)

All the while, as Class Counsel discussed with BP possible "agreed upon guidance," they knew that the Claims Administrator had already proposed compensation guidance for Moratoria Loss claims.  (Bloom Supp. Decl. ¶ 14.)  In fact, prior to the parties' discussions, the Claims Administrator issued a draft compensation policy for Moratoria Loss claims that violated the Settlement Agreement terms by incorporating the BEL compensation method despite an explicit

2

ban on doing so in the Agreement, compensating for Moratoria Losses, compensating for losses unrelated to the DWH Spill or unrelated to Moratoria Losses, and overcompensating claimants for economic losses due to the Spill.  (*See generally* Benton Decl.; Bloom Decl. Ex. E.)  For Class Counsel's Reply to assert they are not aware of any current draft proposal by the Claims Administrator, (*see* CC Reply 10), ignores the fact that their discussions with BP occurred against the backdrop of the Claims Administrator's draft policy.  The Claims Administrator's erroneous proposed policy may have encouraged Class Counsel to make unreasonable demands such as ███████████ for all Moratoria Loss claimants well above the ████ provided in the Settlement Agreement.  (Bloom Decl. ¶ 20 & Exs. S, T; Bloom Suppl. Decl. ¶ 14.)

*Second*, of course, BP insisted in discussions with Class Counsel that any "agreed upon" Moratoria Loss guidance must not incorporate the BEL compensation methodology.  Class Counsel suggest that BP's position on this point justified their breaking off discussions with BP. (CC Reply at 2.)  But the Settlement Agreement expressly states, "In determination of Moratoria losses, ***the standard business economic loss framework shall not apply.***  Rather, the Claims Administrator's dedicated team shall be given parameters agreed upon by the parties that must be applied to distinguish among economic loss due to or resulting from (i) moratoria and (ii) non-moratoria economic loss." (Settlement Agreement Ex. 16 at 3, emphasis added.)  And, it was Class Counsel who proposed ████████████████████████████████████████████ ██████████████████████████████████, not BP.  (Bloom Decl. ¶ 22.)

*Third*, BP has never taken the position, as Class Counsel asserts, that the Claims Administrator is "[a]uthorized to [d]evelop and [i]mplement a Moratoria Loss [r]eview [p]olicy for the [i]mplementation of Exhibit 16 in the [a]bsence of an [a]greement between the Parties." (CC Reply at 9.)  BP objected to Claims Administrator's draft Moratoria Loss policy from the

outset. (Bloom Decl. ¶ 12 & Ex. E.) Class Counsel point to an email BP sent to the Settlement Program after Class Counsel refused to engage in discussions with BP to develop "agreed upon guidance." (CC Reply at 9.) But BP's email stated that the Claims Administrator ████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ (Bloom Decl. Ex. H, emphasis added.) Nowhere in that email or anywhere else did BP state that the Claims Administrator is authorized to implement compensation guidance for Moratoria Loss claims to which BP does not agree.

When Class Counsel unexpectedly broke off discussions in August of 2013, BP immediately notified the Claims Administrator and Class Counsel in writing that ████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████ (Bloom Decl. ¶¶ 24, 27 & Exs. V, ZA.) The Claims Administrator never responded to BP's email. Despite Class Counsel's recollection that this topic was discussed at "at least one, if not multiple" Panel Meetings, (CC Reply at 10), no Panel Meeting on this topic has occurred. (Bloom Decl. at ¶ 27; Bloom Suppl. Decl. ¶¶ 15-16.)

*Lastly*, before filing their Motion, Class Counsel had been fully apprised of BP's view that the Settlement Agreement does not authorize the Claims Administrator or the Court to implement a compensation method for Moratoria Loss claims to which BP does not agree. (Bloom Decl. ¶¶ 24, 27 & Exs. V, ZA.) Yet Class Counsel filed an *ex parte* motion seeking an Order to do just that, as if Class Counsel were making a *pro forma* request, even though their proposed Order would bypass the Panel process and impose on BP whatever Moratoria Loss policy the Claims Administrator devises. Class Counsel's proposed Order states: "***IT IS ORDERED that the Claims Administrator be and is hereby authorized and directed to interpret Exhibit 16 of the Settlement Agreement, and to implement such terms*** with respect to

4

the claims of businesses and employees within the Support Services to Oil & Gas Industry as defined by Section 5.10.3 and Exhibit 19." (CC Draft Order, emphasis added.) Class Counsel "respectfully apologize" for filing their motion *ex parte* (CC Reply 11) and now contend they did not intend to bypass the Panel process. (CC Reply 2, 6.) However, Class Counsel's reply leaves unchanged their draft Order that would authorize the Claims Administrator to first create and then impose his own guidance for making compensation determinations for Moratoria Loss claims even if BP does not agree with the terms of such guidance. (CC Reply 2, 6.) Indeed, by requesting that a new grant of authority be made, the requested order implicitly recognizes that the authority Class Counsel seeks the Court to confer on the Claims Administrator does not exist in the Settlement Agreement. Indeed, as described below, and in BP's Opposition, neither the Claims Administrator nor this Court has that authority.

**II.     CLASS COUNSEL FAIL TO IDENTIFY ANY LEGAL BASIS THAT WOULD ALLOW THE COURT TO RE-WRITE THE EXPRESS TERMS OF EXHIBIT 16.**

**A.     The Court Should Reject Class Counsel's Attempt To Divert Attention From The Express Terms Of Exhibit 16, Which Allow Only BP and Class Counsel To Jointly Create Agreed Compensation Guidance For Moratoria Loss Claims.**

Class Counsel's Reply highlights provisions in Exhibit 16 generally relating to causation assessments for Moratoria Loss claims. (CC Reply 4, 6.) But Class Counsel cannot avoid Exhibit 16's mandatory requirement that "***BP and PSC to develop agreed upon guidance that the Claims Administrator shall apply in making compensation determinations that adhere to the moratoria exclusion in the settlement agreement***." (Settlement Agreement Ex. 16 at 4, emphasis added.) The causation provisions in Exhibit 16 that Class Counsel cite are not at issue here.[1] Where, as here, the contract terms are clear and unambiguous, courts must enforce those

---

[1] Moreover, Class Counsel fail to reference key components of the causation analysis governing claims subject to Moratoria Loss review. (*See*, *e.g*, Settlement Agreement § 5.10.3.1.4 and Exhibit 16.)

5

terms, (BP Opp. (Rec. Doc. 11300) at 6-17.), and must "give effect to each contractual term so that none is rendered meaningless." *Cleere Drilling Co. v. Dominion Exploration & Prod., Inc.*, 351 F.3d 642, 651 (5th Cir. 2003). Thus, this Court should give effect to the provisions of Exhibit 16 that do require "agreed upon guidance" for compensation determinations.

> **B.     Class Counsel Inaccurately Contend That There Exists Sufficient "Agreed Upon Guidance" From The Parties For The Claims Administrator To Apply In Making Compensation Determinations For Moratoria Loss Claims.**

Class Counsel's reply asserts "[t]here is [s]ufficient '[a]greed [u]pon [g]uidance' for the Claims Administrator to [i]mplement the Settlement Agreement." (CC Reply 5-6.) The record conclusively refutes that assertion. As Class Counsel's own *ex parte* motion concedes, "Class Counsel and BP have been unable to agree on a proposed set of guidance or protocols." (CC Mot. (Rec. Doc. 11156) at III [hereinafter "CC Mot."].) Class Counsel also reported to the Claims Administrator, ███████████████████████████████████████ ███████████████████████████████████████████████████████ (Bloom Decl. ¶ 23 & Ex. W.) Likewise, the Claims Administrator staff issued repeated requests for ██ ████████████████████████████████████████████████████████ (Bloom Decl. ¶¶ 17, 26 & Exs. M, Y.) Nor does BP agree that there is any "agreed upon guidance." (Bloom Decl. ¶ 9; Bloom Suppl. Decl. 10.)

Class Counsel point to language in Exhibit 16 identifying "*one* of the parameters" for the Claims Administrator to apply in making compensation determinations for Moratoria Loss claims. (CC Reply 5, quoting Exhibit 16, emphasis added.) But this very language expressly contemplates there are more parameters to come.

Next, Class Counsel assert that there are "several principles" to which they and BP agree but fail to provide evidentiary support for such a claim. (CC Reply 5-6.) But "[s]tatements by counsel in briefs are not evidence." *Skyline Corp. v. NLRB*, 613 F.2d 1328, 1337 (5th Cir. 1980).

6

And their assertion is news to BP.  In fact, there is no written or oral agreement between the Parties concerning "agreed upon guidance" for the Claims Administrator to use in making compensation determinations for Moratoria claims.  (Bloom Decl. ¶ 9; CC Mot. ¶ III; Bloom Supp. Decl. 10.)  *See Knight v. Sharif*, 875 F.2d 516, 524 (5th Cir. 1989) ("Complex transactions involving substantial sums are virtually always put into a detailed, formal writing," and noting the "potential tyranny … in forcing contracts upon parties which they were not willing to make for themselves.") (citation omitted).

### C. There Is No Basis For Class Counsel's Claim That The Court Has Authority To Re-Write Or Remove Terms Of Exhibit 16.

Exhibit 16 explicitly states that only BP and Class Counsel are authorized to create mutually "agreed upon guidance" that must then be used by the Claims Administrator to make compensation determinations for Moratoria Loss claims.  Such authority was not reposed in the Court, the Claims Administrator, or anyone else.  None of Class Counsel's arguments provides any basis for the Court to re-write the unambiguous terms of Exhibit 16 to allow someone other than BP and Class Counsel to supply that guidance.

*First*, Class Counsel contend other Settlement Agreement provisions authorize the Court to override the express terms of Exhibit 16.  (CC Reply 7-9.)  But these provisions do nothing of the sort, and a court "may not rewrite a term of a contract by 'interpretation' when that term is clear and unambiguous."  *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 947 (5th Cir. 1981).  These provisions merely authorize the Court and Claims Administrator to implement, interpret, and administer the Settlement Agreement; nowhere do they permit the Court to re-write its terms.  *See* Agreement § 18.1 (Court to "enforce[e], implement[] or interpret[]" the Agreement); *id.* § 4.3.4 (Court to resolve "issues or disagreements that arise regarding the Claims Administrator's oversight responsibilities, Settlement administration, or any other issue

7

involving the Settlement Program," not modify unambiguous terms); *id*. § 4.3.1 (Administrator to "faithfully implement and administer the Settlement, according to its terms and procedures").

Absent a provision delegating to the Court authority to change the substance of the Settlement, the Court must give effect to and enforce the express terms of Exhibit 16. *Robin v. Sun Oil Co.*, 548 F.2d 554, 557 (5th Cir. 1977) ("We may not rewrite the contract except upon clear and convincing proof that there was an agreement which, by mutual mistake, was not carried into the written contract."). BP and Class Counsel reserved only to themselves the ability to set a compensation method for Moratoria Loss claims, so the Court has no authority to take that function upon itself. *Florida Ed. Ass'n, Inc. v. Atkinson*, 481 F.2d 662, 663 (5th Cir. 1973) ("A court may not add terms to a settlement … not in the contemplation of the parties.").

The *Lindsay* and *Brandt* cases Class Counsel cite reinforce BP's position. Those cases stand for the proposition that settlements will be enforced according to their express terms. Where a settlement includes an agreement to agree but expressly delegates to the Court authority to decide final terms, the court may enforce the plain terms of the settlement by devising its own terms. *See Brandt v. MIT Dev. Corp.*, 552 F. Supp. 2d 304 (D. Conn. 2008) *order clarified in irrelevant part on reconsideration*, No. 301CV1889SRU, 2008 WL 2230152 (D. Conn. May 29, 2008). But where (as here) a settlement that includes an agreement to agree does not expressly delegate authority to the Court to do so, neither the Court nor any third party may impose its own terms. *See Lindsay v. Lewandowski*, 139 Cal. App. 4th 1618 (4th Dist. 2006).

In *Lindsay*, the parties signed a settlement specifying they later would arrive at payment terms "'reasonably' agreeable to both parties," but subsequently proved unable to agree upon the terms. 139 Cal. App. 4th, at 1620. The court did not hold that it had authority to craft the payment terms, but instead held the agreement unenforceable because the parties "never agreed a

8

procedure to resolve the payment dispute." *Id*. at 1622. To the extent *Lindsay* is instructive, it precludes the relief Class Counsel seek here. In *Brandt*, the settlement provided that the parties would "negotiate the details of the settlement agreement as they relate to the stock" to reach agreement on how much of the settlement amount would be paid in cash versus stock. 552 F. Supp. 2d, at 313. In the end, they could not agree. The court rejected one party's argument that there was "no meeting of the minds regarding the terms of that settlement" only because the settlement at issue expressly provided that "in event the parties are unable to come to resolution on any issues related to this stock . . . both parties consent to Your Honor deciding what the final terms of the settlement will be." *Id*. at 321, 313. There is no comparable provision in the Settlement in this case.[2]

*Second*, Class Counsel invoke two rules of contract interpretation, but those two rules undermine Class Counsel's position rather than support it. (CC Reply 7-9.) Neither rule allows this Court to re-write the express terms of Exhibit 16 to remove or to modify the parties' bargained-for language, which allows only BP and Counsel to provide the compensation guidance for claims subject to Moratoria Loss review, not anyone else.

As the court noted in a case cited by Class Counsel, "Courts interpret maritime contracts as they do other contracts, ***by looking first to the intent of the parties as expressed by the terms***

---

[2] Unlike *Brandt* and *Lindsey*, the *F.W.F.* case cited in a footnote by Class Counsel is inapposite because at issue there was what to do when parties to a settlement "forgot to insert a provision." (CC Reply at 7 n.11, citing *F.W.F., Inc. v. Detroit Diesel Corp*., 494 F. Supp. 2d 1342, 1365 (S.D. Fla. 2007).) Here, BP and Class Counsel did not forget to provide compensation guidance for Moratoria Loss claims or unintentionally omit such guidance as in *F.W.F.*; rather, BP and Class Counsel explicitly agreed to supply the agreed-upon guidance themselves. Moreover, even if BP and Class Counsel had instead forgotten or unintentionally omitted compensations guidance for Moratoria Loss claims, the Court would lack authority to overtake the parties' role by supplying those essential terms in order to form a contract. *See Cashman Equip. Corp. v. Smith Marine Towing Corp.*, CIV.A. 12-945, 2013 WL 1587539, at *4 (E.D. La. Apr. 12, 2013) ("A charter is formed when the parties have a meeting of the minds on the essential terms of the charter."); *Marine Office of Am. Corp. v. M/V Vulcan*, 891 F. Supp. 278, 288 (E.D. La. 1995) *aff'd and dismissed sub nom. Marine Office of Am. Corp. v. Vulcan MV*, 101 F.3d 698 (5th Cir. 1996) ("The lack of an essential contract term in this letter and subsequent telephone arrangements is fatal to the formation of the contract."); *Reliable Salvage & Towing, Inc. v. 35' Sea Ray*, No. 2:09-CV-329-FTM, 2011 WL 1058863, at *11 (M.D. Fla. Mar. 21, 2011) ("The Court concludes that essential terms [costs of salvage operation] were missing from the contract and the salvage could not be considered a contract salvage.").

***of the agreement***." *Spectrum Commc'n Specialists v. KMJ Servs.*, No. 09-159, 2011 WL 5878048, at *5 (E.D. La. Nov. 23, 2011) (words "should be given 'their plain meaning unless the provision is ambiguous."), *appeal dismissed* (July 24, 2012) (emphasis added).[3]  Thus, while Class Counsel are correct that courts look to the parties' intent, (CC Reply 8), here the plain language of Exhibit 16 is explicit that *only* BP and Class Counsel may create the compensation guidance for Moratoria Loss claims, so the inquiry into the parties' intent ends there.  Class Counsel's desire to speed up claims processing or otherwise substitute its view of good policy to develop "agreed upon guidance" is irrelevant to determining the parties' intent.

Also, Class Counsel invoke the rule that "each provision of a contract must be given a meaning that renders it, along with all other provisions, effective rather than meaningless." (CC Reply 8-9, emphasis added, quoting *Wilson v. M/V B911*, No. 10-3320, 2012 WL 519585, at *2 (E.D. La. Feb. 16, 2012).)  But this rule does not support Class Counsel's position even if the Court were to apply it because Class Counsel's interpretation reads out of and would render a nullity Exhibit 16's requirement that the guidance must be "agreed upon" by the parties.  Also, Class Counsel's position that Sections 4.3.4, 4.3.1, and 18.1 authorize the Court to modify express terms of the Settlement leads to the absurd result that the Court could cut terms out of the Settlement or impose new obligations not contained in the Settlement Agreement any time the Parties have a dispute over the Settlement Agreement.

---

[3] *See Stephens v. Chevron Oil Co.*, 517 F.2d 1123, 1125 (5th Cir. 1975) ("When interpreting a written agreement . . . the intent of the parties is of paramount importance.  Such an agreement must be construed in accordance with the plain, ordinary and popular sense of the language."); *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, 888 F. Supp. 2d 780, 800 (E.D. La. 2012) ("When a contract is clear and explicit, no further interpretation may be made in search of the parties' intent.") (citation omitted); *Freeport-McMoran Energy, LLC v. Cedyco Corp.*, 2010-0367 (La. App. 4 Cir. 1/5/11), 54 So. 3d 813, 824, *reh'g denied* (Feb. 2, 2011), *writ denied*, 2011-0442 (La. 4/29/11), 62 So. 3d 111 ("The rules of strict construction do not authorize the creation of ambiguities where none exist, and do not permit courts to modify contractual obligations when the language used by the parties it is clear.") (emphasis added); *Robin v. Sun Oil Co.*, 548 F.2d 554, 557 (5th Cir. 1977) ("When a clause of a contract is clear and unambiguous the letter of it cannot be disregarded in an effort to pursue the spirit.").

**CONCLUSION**

For the foregoing reasons, as well as those in BP's opposition brief, BP respectfully requests that the Court deny Class Counsel's *Ex Parte* Motion.

Dated: September 27, 2013                                Respectfully submitted,

| | |
|---|---|
| James J. Neath | */s/ Richard C. Godfrey* |
| Mark Holstein | Richard C. Godfrey, P.C. |
| BP AMERICA INC. | J. Andrew Langan, P.C. |
| 501 Westlake Park Boulevard | Wendy L. Bloom |
| Houston, TX 77079 | KIRKLAND & ELLIS LLP |
| Telephone: (281) 366-2000 | 300 North LaSalle Street |
| Telefax: (312) 862-2200 | Chicago, IL 60654 |
| | Telephone: (312) 862-2000 |
| Daniel A. Cantor | Telefax: (312) 862-2200 |
| Andrew T. Karron | |
| ARNOLD & PORTER LLP | Jeffrey Bossert Clark |
| 555 Twelfth Street, NW | Steven A. Myers |
| Washington, DC 20004 | KIRKLAND & ELLIS LLP |
| Telephone: (202) 942-5000 | 655 Fifteenth Street, N.W. |
| Telefax: (202) 942-5999 | Washington, DC 20005 |
| | Telephone: (202) 879-5000 |
| Jeffrey Lennard | Telefax: (202) 879-5200 |
| Keith Moskowitz | |
| SNR DENTON US LLP | */s/ Don K. Haycraft* |
| 233 South Wacker Drive, Suite 7800 | Don K. Haycraft (Bar #14361) |
| Chicago, IL 60606 | R. Keith Jarrett (Bar #16984) |
| Telephone: (312) 876-8000 | LISKOW & LEWIS |
| Telefax: (312) 876-7934 | 701 Poydras Street, Suite 5000 |
| | New Orleans, LA 70139 |
| ***OF COUNSEL*** | Telephone: (504) 581-7979 |
| | Telefax: (504) 556-4108 |
| | |
| | Robert C. "Mike" Brock |
| | COVINGTON & BURLING LLP |
| | 1201 Pennsylvania Avenue, NW |
| | Washington, DC 20004 |
| | Telephone: (202) 662-5985 |
| | Telefax: (202) 662-6291 |

***ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.***
***AND BP AMERICA PRODUCTION COMPANY***

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 27th day of September 2013.

Dated:  September 27, 2013                      Respectfully submitted,

                                                   */s/ Don K. Haycraft*
                                                   Don K. Haycraft