IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by<br>  the Oil Rig "Deepwater Horizon"<br>  in the Gulf of Mexico, on April 20, 2010<br><br>This document relates to all actions. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | MDL NO. 2179<br><br>SECTION J<br><br><br>Honorable CARL J. BARBIER<br><br>Magistrate Judge SHUSHAN |
| Bon Secour Fisheries, Inc., *et al.*,<br>individually and on behalf of themselves<br>and all others similarly situated,<br>    Plaintiffs,<br>v.<br><br>BP Exploration & Production Inc.;<br>BP America Production Company;<br>BP p.l.c.,<br>    Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Action No. 12-970<br><br>SECTION J<br><br><br>Honorable CARL J. BARBIER<br><br>Magistrate Judge SHUSHAN |

SUPPLEMENTAL DECLARATION OF WENDY L. BLOOM

I, Wendy L. Bloom, declare as follows:

1. I am over twenty-one years of age and make this Declaration based on my own personal knowledge.

2. I am a partner of the law firm of Kirkland & Ellis LLP, and I am one of the counsel for BP Exploration & Production Inc., BP America Production Company, and BP p.l.c. in the above-captioned case. I have personally and directly participated in post-settlement communications and discussions with the Claims Administrator and Class Counsel regarding the Support Services to Oil & Gas Industry and seeking to reach agreed upon guidance for claims subject to automatic review for Moratoria Losses. I also personally and directly participated in negotiating the Economic and Property Damages Settlement Agreement, as amended, (Rec. Doc. 6430-1) [hereinafter "Settlement Agreement"], including the provisions related to the Support Services to Oil & Gas Industry and Exhibit 16 to the Settlement Agreement.[1]

3. Because Class Counsel's Reply (Rec. Doc. 11470) contains new assertions of fact unsupported by Class Counsel's Original Motion (Rec. Doc. 11156) or the record — and, in some cases, incomplete or contradicted by the record facts — I submit this Declaration in support of BP's Sur-Reply in Opposition to Class Counsel's Motion to Authorize the Claims Administrator to Implement the Settlement Agreement with Respect to Oil & Gas Support Services Industry Claims.

***BP Has Not Delayed Or Otherwise Acted In Bad Faith.***

4. BP first provided Class Counsel with a proposal for agreed upon guidance in early ▮▮▮ 2012. Class Counsel has never meaningfully responded to that proposal. And despite

---

[1] Unless otherwise defined, all capitalized terms have the definitions assigned to them in the Economic and Property Damages Settlement Agreement. (Rec. Doc. 6430-1.) All "Rec. Doc." numbers refer to MDL 2179. All citations to lettered exhibits *e.g.*, Exhibit A, refer to the exhibits attached to this Declaration.

2

repeated rebuffs from Class Counsel, BP has continually reached out to Class Counsel to develop agreed upon guidance. (Bloom Decl. (Rec. Doc. 11300-1) ¶¶ 10, 15, 17 & Exs. K, N [hereinafter "Bloom Decl."].)

5. At Class Counsel's request, BP even drafted a summary of the Claims Administrator's draft Moratoria Loss Analysis for Lead Class Counsel, who had been focused on Phase I of the Limitation Act trial, in order to allow them to become familiar with the Claims Administrator's draft proposal and BP's responses. Exhibit A.

6. BP also drafted and provided to Class Counsel 98 pages of proposals and comments during discussions over agreed upon guidance in June-July 2013. In those materials,



, (Bloom Decl. ¶ 22).

7. The alleged "delay" between Class Counsel's July 5th submission and July 31st when the Parties next met was the result of the Parties efforts related to OPA test cases, including calls and meetings with Class Counsel and Magistrate Judge Shushan. Moreover, during that time period, BP prepared (and ultimately produced to Class Counsel on July 31st), 34 pages of documents responding to Class Counsel's July 5th submission and detailing a revised set of BP's Individual Analysis Guidelines.

8. BP first proposed a set of Individual Analysis Guidelines on June 6, 2013, and proposed revisions to or examples using those proposed guidelines on June 11th, June 14th, and July 31st — in addition to dozens of pages of additional comments, proposals, and responses

related to agreed upon guidance from June 6 through July 31st. Class Counsel has never responded in writing to any version of BP's proposed Individual Analysis Guidelines.

9.  BP stands waiting, as it has since ▇ 2012, to receive good faith input from Class Counsel on BP's proposed guidance and to continue discussions to develop agreed upon guidance as the Settlement Agreement requires.

*The Parties Have Not Yet Agreed To Any Guidelines Not Already Expressed In Exhibit 16*

10. BP has never agreed to the "guidance" Class Counsel now claims exist, (*see* Rec. Doc. 11470 at 6). In particular, BP has not agreed to focus on May and July with extrapolation to subsequent months, and BP has not agreed to any "benchmark" or "compensation" periods as agreed upon guidance. Contrary to Class Counsel's use of capitalized terms for "benchmark" and "compensation" in its Reply, (Rec. Doc. 11470 at 6), those are not defined terms to which the Parties have agreed to apply under Exhibit 16.

11. BP repeatedly explained to Class Counsel during discussions in the summer of 2013 that BP will not adopt individual guidelines in a piecemeal or fragmented way. Yet the "agreed" guidance Class Counsel asserts on page six of its Reply, (Rec. Doc. 11470), are isolated parts of separate draft proposals to which the Parties have not agreed.[2]

*Class Counsel Is Fully Aware Of The Claims Administrator's Current Draft Proposal And Used That Draft Proposal As A Backstop During Discussions Over Agreed Upon Guidance*

12. The Claims Administrator presented to the Parties, including Class Counsel, a draft Moratoria Loss Analysis in March 2013. (Benton Decl. (Rec. Doc. 11300-29) ¶ 3 n.2 & Exs. 2A-2B (filed under seal).)

---

[2] Accordingly, it is understandable why Class Counsel have avoided attaching or even citing to the documents that purportedly support their naked assertions.

4

13. At Class Counsel's request, BP provided a summary of the Claims Administrator's draft Moratoria Loss Analysis for Lead Class Counsel in May 2013. Exhibit A.

14. Class Counsel repeatedly stated during discussion in the summer of 2013 that if ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████.

***The Authority Of The Claims Administrator To Dispense With The Settlement Agreement's Express Requirement That He Use Agreed Upon Guidance Was Not A Subject Of One Or More Panel Meetings.***

15. A Panel Meeting is the result of a formal process that BP, Lead Class Counsel, or the Claims Administrator must invoke to raise a dispute to the Claims Administration Panel. *See* Settlement Agreement § 4.3.4. Pursuant to that procedure, since the Claims Administrator proposed his draft Moratoria Loss Analysis, Panel Meetings were held March 15, 2013; August 21, 2013; and September 4, 2013. Despite Class Counsel's "distinct recollection," (Rec. Doc. 11470 at 10), none of these Panel Meetings addressed the authority of the Claims Administrator create and implement his own guidelines.

16. Lead Class Counsel has never requested a Panel Meeting related to the Claims Administrator's lack of authority to issue much less use his own guidance in place of agreed upon guidance from the Parties (or on any issue related to Moratoria Losses). But on August 14, 2013 ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████. (Bloom Decl. Ex. W (Rec. Doc. 11300-24) (filed under seal).) Because the Claims Administrator never responded by taking the position that he had authority to devise and implement his own guidelines without Party agreement, no such a Panel Meeting was scheduled.

17. Attached are what I believe to be true and correct copies of the documents I reference above and that were provided to the Court, counsel for the Parties, and/or the Claims

Administrator during BP's attempts to develop agreed upon guidance for the Claims Administrator to use in claims subject to automatic review for Moratoria Losses. The letter next to each document corresponds to the attachment tab:

| | |
|---|---|
| Exhibit A | E-mail from W. Bloom to Steve Herman and Jim Roy (May 15, 2013) |
| | Memo re: Request for Summary of Settlement Program Proposal and BP Response With Respect to the Settlement Agreement's Moratorium Claim Exclusion |
| | Appendix I (Claims Administrator's draft Moratoria Loss Analysis) |
| | Appendix II (BP's Submissions to Date re the Claims Administrator's draft Moratoria Loss Analysis) |

I declare under penalty of perjury that the foregoing is a true and correct.

_____
Wendy L. Bloom

Dated: September 27, 2013