### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

In re: Oil Spill by the Oil Rig        MDL NO. 2179
     "Deepwater Horizon" in the Gulf
     of Mexico, on April 20, 2010      SECTION J

Applies to: *All Cases*          JUDGE BARBIER
                              MAGISTRATE JUDGE SHUSHAN

## <u>ORDER</u>

**[Regarding BP's Objections to the Claims Administrator's Proposed
2013 Fourth Quarter Budget and Request for Evidentiary Hearing (Rec. doc. 11347)]**

Before the undersigned is the matter of the Claims Administrator's proposed fourth quarter budget ("Q4 budget").  BP originally raised objections to the proposed third quarter budget on August 3, 2013 as a result of which the undersigned issued a Rule to Show Cause why the proposed 2013 third quarter budget should not be funded.  Rec. doc. 10949.  After a hearing, BP was ordered to fund the third quarter budget in its entirety.  Rec. doc. 10953.  However, by order dated August 7, 2013, rec. doc. 10955, the undersigned ordered that: 1) the Claims Administrator was to submit its proposed Q4 budget to BP and Class Counsel; 2) BP and Class Counsel were to provide comments regarding  any proposed revision; 3) the Claims Administrator would then make any revisions; and 4)  thereafter, if there was not agreement, any one of the parties could request a three person Claims Administration Panel.  All of these steps took place but agreement was not reached. BP filed its objections to the proposed Q4 budget (rec. doc. 11347), and the Claims Administrator submitted its response (rec. doc. 11401) as did Class Counsel (rec. doc. 11402).

### The Claims Administrator's Position

After much correspondence and meetings between the Claims Administration staff and BP, the Claims Administrator submitted a proposed Q4 budget in the amount of $131.2 million.  After further discussion, BP submitted proposed cuts of approximately $45.6 million.  Rec. doc. 11401

at 6-7.  In response, the Claims Administrator's staff, through its Chief Executive Officer, David

Odom, wrote to Maria Travis, Director of Claims for BP America, on September 5, 2013.  In that

letter, Mr. Odom responded to the points raised previously by Ms. Travis[1] and offered to make

concessions of approximately $20 million.  Mr. Odom stated in summary that:

> It should also be noted that this represents a reduction of 19.16
> million from the Q3 2013 $130.32 million budget.  The remaining
> items [further cuts requested by BP]. . . will require further analysis,
> which could not be conducted in the timeframe allotted for the Q4
> 2013 budget revision process.

Id. at Exhibit B; Exhibit 21 to the declaration of Kurt Fisher at 7.  BP rejected the Claims

Administrator's proposal for revisions and filed formal objections.

The Claims Administrator argues that BP's proposed additional $25.5 million reduction in

the budget would immediately affect the Program's ability to timely and efficiently process claims.

Id. at 8.  To avoid that, the Claims Administrator has agreed to conduct an operational review to

determine how efficiencies in the Program can be obtained, but submits that BP does not have

sufficient support for the cuts it is demanding.  Id.

Finally, the Claims Administrator points out that Judge Barbier, in his Order of September

6, 2013 (rec. doc. 11288), directed that Special Master Freeh "examine and evaluate the internal

compliance program and anti-corruption controls within the CSSP,". . . and "recommend any

additional business process procedures designed to promptly and fairly adjudicate claims in an

efficient manner and assist the Claims Administrator in the implementation of same."  Id. at 10.

Thus, the Claims Administrator submits that its proposed Q4 budget is reasonable given current

circumstances.  Alternatively, the Claims Administrator requests adoption of the revised budget in

---

[1]  August 8, 2013 letter; Exhibit 5 to the declaration of Kurt Fisher.  Rec. doc. 11401 Exhibit B.

the amount of $111 million.  Id.

## BP's Position

BP asserts that the Q4 Budget is based on cost and productivity assumptions from the

Program's vendors without question by the Claims Administrator.  It states:

> Despite the Court's admonition regarding CSSP costs at the Q3
> budget hearing, the CAO initially proposed a $131.2 million budget
> for the fourth quarter.  This was even *higher* than the third quarter
> budget to which BP objected as excessive.  BP identified more than
> $45.5 million in excessive, unreasonable and unsupported costs in the
> Q4 budget.  The Claims Administrator quickly agreed to reduce the
> Q4 Budget by more than $20 million, leading to the current request
> of $111.2 million.  The Claims Administrator, however, has refused
> for now to make the 25.5 million in minimum additional cuts that BP
> has identified.

Rec. doc. 11347 at 2.  BP requests that an outside professional firm be retained to conduct

operational reviews and examinations that can begin immediately.  BP urges alternatively that

"Special Master Freeh perform the type of operational review and examination that BP believes is

immediately necessary." Id. at 3.

However, BP urges requests that pending such review, i.e., while it is ongoing, the budget

be reduced by at least an additional $25.5 million to no more than $85.6 million.  BP takes the

position that, unless there is objective evidence supporting an expenditure, the expenditure should

not be included in the budget.  Id. at 4.

## Class Counsel's Position

Class Counsel asserts that BP has failed to establish that any part of the Q4 budget is

"unreasonable" and BP is obligated to fund the budget subject to its "reasonable" approval.  Section

5.12.1.4 of the Settlement Agreement.  Rec. doc. 11402 at 2.  Instead, the Claims Administrator has

provided BP with a detailed "bottom up" Q4 budget.  The fact that BP may want additional or

different information does not make the budget submitted unreasonable.  Id. at 7.  Finally, Class Counsel asserts that BP's demand that the Q4 budget not exceed $85.6 million (a cut of one-third of the originally submitted budget) is an attempt by BP to slow down or stop the processing and payment of claims.  Id. at 8.

**Discussion**

It must be stated at the outset that, while BP has legitimate concerns about the Program and its expenses, I cannot allow the budget dispute to interfere with the operation of the Program.  As Judge Barbier has previously stated, this Court's goal is to pay promptly all legitimate claims.  Rec. doc. 10976; transcript of appeal August 7, 2013 at p. 28.  That being said, I find that an across the board cut to the Q4 budget of an additional $25 million  cannot currently be supported without further review and such a cut would indeed hamper the Program's operation.

Without any finger pointing or recrimination, I point out that the parties operated on an one page email budget for more than a year.  As I previously found, to move from a one page budget to a well prepared and analyzed budget takes time.  Since the August 7 hearing however, much has been accomplished: (1) preparation of a budget that is much more formal and largely in the format BP requested; (2) institution of an operational review and examination of all Program systems to determine appropriate productivity and efficiency metrics for the Program budget; and (3) a commitment from the Claims Administrator to seek all efficiencies in the Program and implement reductions as adequate information becomes available.

BP and the Claims Administrator welcome Special Master Freeh's involvement in conducting a system analysis. While BP contends that there has not been any efficient budgeting process and empirical justification for the Q4 budget, it agrees that an operational review and examination is necessary in order to determine what such a budget should look like.

Special Master Freeh and his staff have started their review and have met with the Claims Administrator's staff, BP representatives, Class Counsel and representatives of all vendors. I am going to let that process proceed unimpeded by draconian cuts that, at this point in time, are unsubstantiated. Thus, the Q4 budget will be revised to incorporate the changes proposed by Mr. Odom on September 5, 2013 in the approximate amount of $20 million. BP is ordered to fund the budget at the revised level of approximately $111 million within four (4) working days. Between now and the preparation of the 2014 Q1 budget, the parties are to fully cooperate with Special Master Freeh and his staff to review the operation of the Program to arrive at his recommendation on "any additional business process procedures designed to promptly and fairly adjudicate claims in an efficient manner." Rec. doc. 11288 at 3. As identified and recommended by Special Master Freeh and his staff, the Claims Administrator is to make those changes during 2013 Q4 and incorporate them in the 2014 Q1 budget.

As to BP's request for an evidentiary hearing, that request is denied. The record before the undersigned is clear that the further reductions sought by BP are not currently supported by sufficient evidence.

Finally, I would suggest that the parties should not want the Court to be involved in the Program's budgetary process. The parties have highly trained and sophisticated staff who are more than capable of working with Special Master Freeh's staff to formulate a budget that reflects all

efficiencies identified during the Program review.  They are urged to do so.  However, in the event that problems with the 2014 Q1 budget are identified and not resolved, they should be brought to my attention promptly and in sufficient time to resolve issues before commencement of the first quarter.[2]

**Any appeal of this order must be filed by Friday, October 4th at noon.  The effect of this order will not be suspended during the pendency of an appeal.**

New Orleans, Louisiana, this 30th day of September, 2013.

**SALLY SHUSHAN**
**United States Magistrate Judge**

---

[2] In that regard, the 2014 proposed budget must be prepared and submitted to all interested parties **no later than (and hopefully well before) noon on November 29, 2013**.  Thereafter:  1) **within 5 days** any interested party may provide comments for revisions; and 2) **within 5 days** thereafter the parties (including Special Master Freeh's staff) shall meet and attempt to resolve any outstanding issues.  Only the issues that cannot be resolved shall be brought to my attention in a brief not to exceed 10 pages to be filed **on or before noon on December 16, 2013**, with any replies (not to exceed 10 pages) being filed **on or before noon on December 20, 2013**.  There will be no further briefing.