# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill By The Oil Rig | * | MDL NO. 2179 |
| "Deepwater Horizon" In the Gulf of | * | |
| Mexico on April 20, 2010 | * | SECTION:  J |
| | * | |
| Applies to: All Cases | * | JUDGE BARBIER |
| | * | MAG. JUDGE SHUSHAN |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## HESI'S RESPONSE TO MOVANTS' SUPPLEMENTAL BRIEF REGARDING HALLIBURTON'S GUILTY PLEA CONVICTION AND MOTION FOR LEAVE TO SUPPLEMENT THE PHASE ONE TRIAL RECORD

Halliburton Energy Services, Inc. ("HESI") respectfully submits this Response to Plaintiffs' and States' (collectively, "Movants") Motion for Leave to Supplement the Phase One Trial Record with Evidence of Halliburton's Criminal Guilty Plea Conviction (Rec. doc. 11511) (the "Motion to Supplement the Record") and Supplemental Brief Regarding Halliburton's Guilty Plea Conviction as Evidence of Liability for Punitive Damages (Rec. doc. 11512) (the "Supplemental Brief"), and respectfully shows the Court the following:

## I.      SUMMARY OF THE ARGUMENT

The Court should deny Movants' Motion to Supplement the Record because HESI's Cooperation Guilty Plea Agreement (the "Plea Agreement") and the related factual Allocution, Joint Memorandum in Support of Plea Agreement, minute entry, and hearing transcript (collectively, the "Proposed Exhibits") contain no new information and have no bearing on Phase One factual or legal issues.[1]  Movants' in their Supplemental Brief attempt to use the Proposed

---

[1] HESI incorporates herein its Response to BP's Motion for Leave to Supplement Record and File Memorandum Regarding Halliburton's Post-Trial Guilty Plea Agreement (Rec. doc. 11571).

Exhibits as an end-run around established Fifth Circuit precedent that punitive damages may not be imposed against a corporation even if "one or more of its employees decides on his own to engage in malicious or outrageous conduct."  *In re P&E Boat Rentals, Inc.*, 872 F.2d 642, 652 (5th Cir. 1989).  Neither the Proposed Exhibits nor the D3D Modeling is relevant to Phase One issues.

Nevertheless, in order to tar HESI as a "corporate wrongdoer" that supposedly ratified allegedly wrongful Phase One acts, Movants distort the Allocution and ignore the facts that HESI's Cementing Technology Director was instructed to preserve documents related to the Macondo well and that the post-incident D3D Modeling was deleted *without the authorization* of HESI.  The unauthorized deletions are not related to HESI's pre-incident state of mind because there is no relationship, causal or otherwise, between the pre-incident cement design and the unauthorized post-incident deletion of the D3D Modeling.  The pre-incident and post-incident acts involved different actors, with different actions, at different locations, using different modeling software.  Accordingly, the Court should reject Movants' claim that the Proposed Exhibits provide any support for a finding of liability for punitive damages against HESI.

## II.  ARGUMENT

### A.    The Proposed Exhibits Are Irrelevant and Immaterial.

Movants' requests – that the Court take judicial notice of the Proposed Exhibits and for a finding that these documents relate to "material factual questions at issue in the Phase One Trial" – should be denied.  (Rec. doc. 11511 at 2).  While HESI does not object to the authenticity of the Proposed Exhibits, HESI objects to their inclusion in the Phase One trial record because they have no bearing on Phase One legal or factual issues.  In its contemporaneously filed Response to BP's Motion for Leave to Supplement Record and File Memorandum Regarding Halliburton's

Post-Trial Guilty Plea Agreement ("HESI's Response to BP's Motion") (Rec. doc. 11571), HESI demonstrates why, given the limitations of the early Displace 3D modeling program and the lack of appropriate inputs, the post-incident Displace 3D models at issue are not representative of the Macondo well foam cement job, nor do they undermine the pre-incident OptiCem prediction of channeling provided by HESI to BP.  HESI expressly incorporates herein the arguments and authorities set forth in HESI's Response to BP's Motion demonstrating that the Proposed Exhibits are irrelevant and immaterial to any Phase One issues of fact or law and do not constitute "evidence" relevant to the MDL-2179 proceedings.

**B.     Legal Standard for Vicarious Liability for Punitive Damages.**

Movants attempt to use the Proposed Exhibits to bolster their prior argument, which has been fully briefed, that post-incident conduct can support liability for punitive damages.  HESI will not repeat here its arguments in opposition to Movants' position, but incorporates by reference Rec. docs. 10469 and 10724.  The Proposed Exhibits provide no new bases to support Movants' arguments regarding post-incident conduct and punitive damages.  Indeed, the weight of the Phase One trial evidence regarding cement supports a finding that the foam cement slurry was appropriately designed.  *See* Rec. doc. 10469 at 14; Rec. doc. 10468 at Sections VI.A; IX.A, B; XI.A.1, 2; XV.A; XVII.A; XIX.A, 4, 5.

The issue of corporate liability for punitive damages based on an employee's actions is settled in the Fifth Circuit.  *See In re P&E Boat Rentals, Inc.*, 872 F.2d 642 (5th Cir. 1989). "[P]unitive damages may not be imposed against a corporation when one or more of its employees decides on his own to engage in malicious or outrageous conduct."  *P&E Boat Rentals, Inc.*, 872 F.2d at 652.  "If the corporation has formulated policies and directed its employees properly, no purpose would be served by imposing punitive damages against it except

to increase the amount of the judgment." *Id.*

A prerequisite to holding a corporation liable for punitive damages also requires sufficient evidence that the employee actor was a "corporate officer or policymaker." *Wilcox v. Kerr-McGee Corp.*, 706 F. Supp. 1258, 1266-67 (E.D. La. 1989) (declining to impose corporate liability based on approval or ratification of drilling superintendent who was not a corporate officer or policymaker). Policymaking authority requires an upper echelon employee. *P&E Boat Rentals*, 872 F.2d 652-53 (construction foreman held not to be a policymaker because he was a first level supervisor who supervised local crews and not on a company wide basis).

**C.     Movants Provide No Evidence that HESI's Cementing Technology Director Was a Corporate Officer or Policymaker.**

Movants claim with no proof that "the Cementing Technology Director who ordered the destruction of the 3D modeling results possessed enough corporate policymaking authority to force the corporation itself to plead guilty to the destruction." Rec. doc. 11512 at 7. Similarly, Movants declare, without any factual support, that HESI's Cementing Technology Director was a policymaking official whose actions could subject HESI to punitive damage liability. *See* Rec. doc. 11512 at 5 and 7. Furthermore, despite the clear pronouncement that the Cementing Technology Director (singular) ordered the *unauthorized* deletion of the D3D Modeling, Movants argue, without a scintilla of evidence, that "corporate officials" (plural) ordered employees to destroy D3D Modeling. Rec. doc. 11512 at 6. This is simply not true.

Movants provide no evidence that HESI's Cementing Technology Director was a corporate policymaker of HESI. The Allocution solely describes him as a "Cementing Technology Director," but does not suggest that he had policymaking authority, let alone authority to override the instruction to preserve documents. *See* Exhibit A, Allocution at ¶ 8. Movants cite no other support.

**D.     HESI Did Not Ratify the Cementing Technology Director's Acts.**

On April 26, 2010, days after the blowout and before the issuance of any preservation order, HESI took appropriate actions and began issuing expansive legal holds relating to the Macondo well.  Rec. doc. 4961 at 8.  In addition, the Cementing Technology Director was instructed to preserve documents related to the Macondo well.  *See* Exhibit B, Joint Memorandum in Support of Plea Agreement at 10.

Movants' claim that HESI was "convicted of directing employees to destroy Macondo-related evidence" is demonstrably wrong.  Rec. doc. 11512 at 3.  Post-incident, HESI's Cementing Technology Director instructed two employees to create and then delete Displace 3D models despite an instruction to him to preserve materials related to the Macondo well.  *See* Exhibit B, Joint Memorandum in Support of Plea Agreement at 10.  As such, HESI had proper policies in place and directed its employees appropriately.  *See P&E Boat Rentals*, 872 F.2d at 652.  HESI's Cementing Technology Director disregarded instructions to preserve documents in violation of HESI policies.  The Allocution clearly states that the deletion of the D3D Modeling was without Halliburton's authorization.  *See* Exhibit A, Allocution at ¶ 9.

Movants' claim of a "corporate-level cover up" is beyond ridiculous and clearly not supported by any evidence.  HESI proactively disclosed the Cementing Technology Director's conduct to the Department of Justice ("DOJ") as soon as it learned about it and provided exceptional cooperation throughout the DOJ's investigation.  *See* Exhibit B, Joint Memorandum in Support of Plea Agreement at 7; *see also* Rec. doc. 11512 at 6 - 7.  Further, On December 19, 2011, HESI disclosed to all parties both the circumstances surrounding the unauthorized deletion of the D3D Modeling and the fact that the modeling could be recreated:

> Sometime in May 2010, Anthony Badalamenti and Tommy Roth
> requested 3D-Modeling of the cement job on the production casing

in the Macondo well to be performed utilizing HESI's Displace 3D software ('the Modeling'). The Modeling was performed by David Bedford and Mark Savery using inputs from the OptiCem report prepared by Jesse Gagliano. The results were shown to Badalamenti and Roth. The models were deleted from Bedford and Savery's computers, but can be replicated by using the same inputs that were originally used by Gagliano in his OptiCem report.

*See* Rec. doc. 4961 at 14.

The Proposed Exhibits in no way establish that HESI ratified the acts of its Cementing Technology Director. Accordingly, the Proposed Exhibits do not provide a basis for a finding of liability for punitive damages as to HESI.

**E.      No Ratification By Defense.**

Movants essentially argue that by defending its cement job at trial, HESI is somehow *ipso facto* liable for punitive damages. Rec. doc. 11512 at 2. This is not the law. Movants rely *Ellis v. Simmons*, 11 F.2d 596, 597 (5th Cir. 1926), but *Ellis* does not even remotely support Movants' argument. *Ellis*, which is not even a tort case, simply holds that a principal can ratify a contract by failing to object to the contract after sufficient notice. Taking Movants' argument to its logical conclusion would result in a finding of liability for punitive damages for *any* company who defends itself at trial. If a fact finder determines that an employee performed work in a grossly negligent manner, the mere act of defending the company amounts to a company's "ratification" of the employee's gross negligence for purposes of punitive damages. Such a result would turn American jurisprudence on its head and should be rejected. *See generally Taylor v. the City of Bixby,* No. 12-CV-0066-CVE-FHM, 2012 U.S. Dist. LEXIS 174464, *45 (N.D. Okla. Dec. 10, 2012) (ratification through claims made in litigation is not ratification of an employee's action sufficient to subject the principal to liability).

**F.      Post-Incident Actions Do Not Bear on HESI's Pre-Incident State of Mind.**

Movants argue that "HESI's post-incident actions are a window into HESI's pre-incident state-of-mind," as if HESI is a monolith and not a dynamic, global energy services provider with more than 75,000 employees.  Rec. doc. 11512 at 5.  The post-incident actions of HESI's Cementing Technology Director have no bearing on whether Jesse Gagliano acted with gross negligence or willful misconduct in designing and testing the cement slurry prior to the incident. Gross negligence hinges on the actor's mental state at the time of the action to determine whether he was consciously indifferent of the risk, not some other actor at some other time and at some other place.  *See, e.g., Burke v. Deere & Co.*, No. 92-1990, 1993 U.S. App. LEXIS 21878, *20-27 (8th Cir. Aug. 27, 1993) (post-incident conduct could not be admitted as relevant to defendant's state of mind at the time of the incident for purposes of awarding punitive damages); *see also Pace v. N. Houston Pole Line Corp.*, No. 14-97-00140CV, 1999 Tex. App. LEXIS 3398, *44 (Tex. App.—Houston [14th Dist.] May 6, 1999, pet. denied) (subsequent accidents are not relevant to knowledge or intent for establishing gross negligence).  If there is no correlation between the unauthorized post-incident deletions and HESI's pre-incident state of mind, evidence of the post-incident deletions is not admissible.  *See Forquer v. Pinal Cnty.,* 526 P.2d 1064, 1067-68 (Ariz. App. 1974) ("in those cases allowing . . . after-occurring conduct to be admitted on the issue of punitive damages, the conduct has a reasonable relationship either to the state of mind of the tortfeasor at the time of the event itself or to the injured parties' actual damages").

Movants simply fail to explain how *any* specific instance of post-incident conduct is probative of the state of mind of *any* HESI employee at the time of the incident.  Movants rely on *Hundley v. Rite Aid of South Carolina, Inc.*, 529 S.E.2d 45, 62 (S.C. App. 2000), for the proposition that "abusive and obstructionist" post-incident conduct is relevant to show pre-

incident willful and reckless state of mind sufficient to support punitive damages.  This argument

must be rejected because federal law does not allow Movants to manufacture the necessary state

of mind by lumping together unrelated post-incident activities.  *See* FED. R. EVID. 404(b); *R.E.*

*Lindner Steel Erection Co., Inc. v. Wedemeyer, Cernik, Corrubia, Inc.*, 585 F. Supp. 1530, 1532

(D. Md. 1984) (Willful, wanton and reckless acts committed after incident were not admissible

to show pre-incident conduct was similarly willful, wanton, and reckless).  Nor can Movants

manufacture an improper pre-incident state of mind by collecting different and unrelated

employees' post-incident activities.  *See Saba v. Compagnie Nationale Air Fr.*, 78 F.3d 664, 670

n.6 (D.C. Cir. 1996) (noting that individual acts of negligence on the part of employees—without

more—cannot be combined to create a wrongful corporate intent).[2]

Movants additionally make broad, unsupported allegations that the unauthorized deletion

of the post-incident modeling evinces a "broken corporate culture."  *See* Rec. doc. 11512 at 6.

But a company with a broken corporate culture does not move quickly to preserve documents or

provide exceptional cooperation with investigative authorities.  In any case, Movants fail to

specify how any post-incident activity is probative of HESI's state of mind with respect to

anything that caused or contributed to the blowout.  *See Martin v. Texaco*, 726 F.2d 207, 211

(5th Cir. 1984) (Gross negligence inquiry does not involve an evaluation of defendant's "overall

conduct . . . . The question is not whether Texaco's general safety program reflected an attitude

of conscious indifference.  The relevant inquiry is whether Texaco was consciously indifferent as

to the dangers presented by the use of nitrogen in the refinery"); *Librado v. M.S. Carriers, Inc.*,

---

[2] *See also Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 241 (5th Cir. 2010) ("[W]e have declined to allow [a subjective state of mind] to be met by a corporation's collective knowledge, instead requiring that the state of mind 'actually exist' in at least one individual and not be imputed on the basis of general principles of agency").

**HESI'S RESPONSE TO MOVANTS' SUPPLEMENTAL BRIEF REGARDING**
**HALLIBURTON'S GUILTY PLEA CONVICTION AND MOTION FOR LEAVE**
**TO SUPPLEMENT THE PHASE ONE TRIAL RECORD**                    **Page 8**

No. 03:02-CV-2095, 2004 U.S. Dist. LEXIS 12203, at *17 n.9 (N.D. Tex. June 30, 2004) (court would not consider history of deficient safety control and enforcement independent from the acts that arguably caused the incident in its gross negligence determination).  Because the post-incident D3D Modeling was deleted without authority and contrary to an express instruction to preserve documents related to the Macondo well, the Proposed Exhibits provide no evidence of HESI's pre-incident state of mind or of a "broken corporate culture."

**G.     There Is No Causal Relationship between Jesse Gagliano's Cement Design and Testing and the Unauthorized Deletion of the Post-Incident D3D Modeling.**

In order to impose liability for punitive damages for post-incident conduct, such conduct must have proximately caused the injury.  *See Saucedo v. Salvation Army*, 24 P.3d 1274, 1278-80 (Ariz. Ct. App. 2001) (holding that a post-incident conduct, flight from the scene after the accident, that did not proximately cause the injury cannot demonstrate an entitlement to punitive damages).[3]  In *Cameron v. DaimlerChrysler Corp.*, post-sale conduct (including an investigation into an alleged latent defect) did not warrant an award of punitive damages because such conduct did not prove whether the defendant was grossly negligent at the time of the initial design process. No. 5:04-CV-24-JMH, 2005 U.S. Dist. LEXIS 24361, at *26 (E.D. Ky. Oct. 20, 2005). "To allow evidence of defendant's subsequent conduct presents the distinct opportunity for the imposition of punitive damages for conduct that may have *no connection* whatsoever with the

---

[3] *See also The Capital Times Co. v. Doyle*, 807 N.W.2d 666, 669 (Wis. Ct. App. 2011) (Movants "must allege the underlying cause of action, request and prove actual damages, and request punitive damages **based on the conduct that caused the actual damages**.") (emphasis added); *Bennett v. Greeley Gas Co.*, 969 P.2d 754, 761 (Colo. App. 1998) ("The purpose of the jury's award of punitive damages is to punish the wrongdoer for willful and wanton misconduct.  However, the conduct referred to is that causing the injuries.  It is the quality of that tortious act, not the character of the wrongdoer that justifies exemplary damages.  As a result, acts of the wrongdoer occurring after the event creating liability ordinarily are not material to the jury's award of exemplary damages.") (citations omitted); *Taylor v. Dyer*, 190 A.D.2d 902, 903-04 (N.Y. App. Div. 1993) (noting that a defendant's flight from the scene of accident might be considered reprehensible, but such conduct occurring after the accident did not proximately cause the plaintiff's injuries).

injured plaintiff, contrary to what we take be the settled law." *Thomas v. Am. Cystoscope Makers, Inc.,* 414 F. Supp. 255, 265 (E.D. Pa. 1976) (emphasis added).  There is no such connection between the unauthorized post-incident deletion of D3D Modeling and any alleged damages.  Any assertion by Movants that HESI should be subject to punitive damages based on the post-incident activities of HESI's Cementing Technology Director is an impermissible attempt to punish HESI for actions of an employee that are not causally related to the incident.  Because there is no connection between the cause of the blowout and the post-incident D3D Modeling, the Proposed Exhibits do not support, let alone establish liability for punitive damages.

### III.   <u>CONCLUSION</u>

The Court should deny Movants' Motion to Supplement the Record because the Proposed Exhibits contain no new information and have no bearing on Phase One factual and legal issues.  Because HESI's Cementing Technology Director deleted the post-incident D3D Modeling *without authorization* and after being instructed to preserve all materials related to the Macondo well, and for the other reasons stated herein, the Court should also reject Movants' Supplemental Brief and any attempt to use the Proposed Exhibits as an end-run around *P&E Boat Rentals, Inc.*

The unauthorized deletions are not related to HESI's pre-incident state of mind because there is no relationship between Jesse Gagliano's pre-incident cement design and the Cementing Technology Director's unauthorized post-incident deletion of the D3D Modeling.  Accordingly, the Court should reject Movants' claim that the Proposed Exhibits provide any support for a finding of liability for punitive damages against HESI.

Respectfully Submitted,

**GODWIN LEWIS PC**

**By:** _/s/ Donald E. Godwin_____
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
Don.Godwin@GodwinLewis.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
Bruce.Bowman@GodwinLewis.com
Jenny L. Martinez
State Bar No. 24013109
Jenny.Martinez@GodwinLewis.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
Floyd.Hartley@GodwinLewis.com
Gavin E. Hill
State Bar No. 00796756
Gavin.Hill@GodwinLewis.com

1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

R. Alan York
State Bar No. 22167500
Alan.York@GodwinLewis.com
Jerry C. von Sternberg
State Bar No. 20618150
Jerry.VonSternberg@GodwinLewis.com
Misty Hataway-Coné
State Bar No. 24032277
Misty.Cone@GodwinLewis.com

1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this on this 3rd day of October, 2013.

       */s/ Donald E. Godwin*
       Donald E. Godwin

**HESI'S RESPONSE TO MOVANTS' SUPPLEMENTAL BRIEF REGARDING HALLIBURTON'S GUILTY PLEA CONVICTION AND MOTION FOR LEAVE TO SUPPLEMENT THE PHASE ONE TRIAL RECORD**      **Page 12**

2299556 v4-24010/0002 PLEADINGS