# EXHIBIT A

## Exhibit A

Defendant Halliburton Energy Services, Inc. (hereinafter, "HESI") agrees that, if the case were to proceed to trial, the government could establish beyond a reasonable doubt that:

1. Defendant HESI employed hundreds of employees who worked throughout the Gulf of Mexico providing various services with respect to deepwater oil and natural gas drilling operations. Defendant HESI had offices in, and engaged in regular business throughout, the states bordering the Gulf of Mexico, including in the Eastern District of Louisiana, and maintained offices for Gulf operations in Houston, Texas.

2. On or about May 2, 2008, BP Exploration and Production, Inc. ("BP") entered into a lease with the Minerals Management Service, granting BP the rights to oil and gas reservoirs at a site called Mississippi Canyon Prospect # 252 ("MC # 252") on the Outer Continental Shelf in the Gulf of Mexico. A well drilled at MC # 252, which BP referred to as the Macondo well, lay approximately 48 miles from the Louisiana shoreline in approximately 5,000 feet of seawater.

3. Defendant HESI was contracted to provide BP with cementing and other services with respect to BP's drilling plan for the Macondo well.

4. On or about October 6, 2009, drilling commenced on the Macondo well using the *Marianas* drilling rig. On or about November 9, 2009, work was halted due to Hurricane Ida.

5. On or about January 31, 2010, the *Deepwater Horizon* drilling rig arrived at the Macondo well to resume drilling pursuant to BP's well design, drilling program, and instructions. On or about April 9, 2010, drilling of the Macondo well was completed, at a total depth of approximately 18,360 feet below sea level.

6. During the evening of April 20, 2010, a blowout occurred on the *Deepwater Horizon*. Natural gas and oil that had entered the well rushed up the riser and onto the rig floor. The natural gas ignited, causing multiple explosions, killing eleven men onboard. A fire onboard the Deepwater Horizon burned for two days, and resulted in the *Deepwater Horizon* sinking on or about April 22, 2010. Beginning at the time of the blowout, oil and natural gas flowed into the Gulf of Mexico.

7. On April 27, 2010, the United States Departments of the Interior and Homeland Security announced investigations of the incident. In the weeks following the blowout, more government investigations were launched. Investigating agencies required that HESI preserve

and produce information, documents and other materials related to HESI's work on the Macondo well. HESI was under a legal obligation to preserve documents relating to the Macondo well.

8. After the incident, HESI and others examined various technical aspects of the well's design and construction. On or about May 14, 2010, HESI's Cementing Technology Director directed a HESI Senior Program Manager for the Cement Product Line ("Program Manager") to run two computer simulations of the Macondo well cementing job using HESI's Displace 3D simulation program to compare alternative predictions of the cement job in the production casing, which included different numbers of centralizers. Displace 3D was a next-generation simulation program that was being developed to model fluid interfaces and their movement through the wellbore and annulus of a well.

9. As directed, the Program Manager ran the simulations, which took over an hour to complete. Program Manager then showed the results, contained on his HESI laptop, to defendant HESI's Cementing Technology Director and possibly one other HESI senior manager. HESI's Cementing Technology Director then directed Program Manager to delete the results even though the Cementing Technology Director and others had been instructed by another Halliburton executive to preserve material related to the Macondo well. Program Manager felt uncomfortable deleting the simulations but nonetheless followed the direction of defendant HESI's Cementing Technology Director to delete the simulations by (1) entering his HESI computer, locating the relevant files within the computer (which files contained a ".d3d" identifier) and deleting those files, and then (2) entering the computer's "Recycle Bin," accessible through the user interface of the computer, and erasing the deleted files from that location as well. Program Manager later acknowledged the deletion to another employee ("Employee 1") and stated, "I did what I was told."

10. In or about May and June 2010, HESI's Cementing Technology Director asked Employee 1, who was more experienced than Program Manager at running Displace 3D simulations, to also run two simulations, which included different numbers of centralizers. Employee 1 did so and then showed at least some of the results, contained on his HESI laptop, to defendant HESI's Cementing Technology Director and another manager. Employee 1 was then directed to delete the simulations. Because Employee 1 felt uncomfortable destroying the simulations, Employee 1 delayed destroying the simulations for some time but, ultimately, like Program Manager before him, deleted them from his HESI computer. Employee 1 was not authorized to delete this data.

11. During ensuing civil litigation and federal criminal investigation by the Deepwater Horizon Task Force, subsequent efforts to forensically recover the deleted Displace 3D computer simulations from May/June 2010 were unsuccessful.

12. The HESI computers upon which the materials were stored and later deleted were used in and affecting interstate and foreign commerce and communication.

13. The conduct of HESI's Cementing Technology Director, as described herein, was unauthorized but within the scope of the Cementing Technology Director's employment. Accordingly, HESI acknowledges criminal responsibility for such conduct.

14. The aforementioned conduct by defendant HESI includes the defendant's knowing transmission of a command and as a result of such conduct intentionally caused damage without authorization to a protected computer, to wit: the deletion on HESI computers of Displace 3D simulations conducted in May/June 2010, in violation of 18 U.S.C. § 1030(a)(5)(A), subject to 18 U.S.C. § (c)(4)(G)(1).