## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE: OIL SPILL by the OIL RIG** | § | **MDL NO. 2179** |
| "DEEPWATER HORIZON" IN THE | § | |
| GULF OF MEXICO, on April 20, 2010 | § | |
| | § | |
| **Related to:** | § | **JUDGE BARBIER** |
| **2:10-08888** | § | |
| | § | |
| **Document No. 87503** | § | |
| | § | **Mag. Judge SHUSHAN** |
| | § | |

### MEMORANDUM IN SUPPORT FOR EMERGENCY
### MOTION FOR RELIEF AND REQUEST FOR JUDICIAL REVIEW
### FROM THE APPEALS DENIAL OF THE BUSINESS ECONOMIC LOSS CLAIM

Claimant files this Motion for Leave to Request an Emergency Motion for Relief and Request for Judicial Review from the Appeals Denial of the Business Economic Loss claim because "*BP et. al.,*" failed to comply with the terms of the approved settlement agreement and failed to investigate, verify and consider relevant evidence in support of the claim that forms the basis of this motion.

### A.  INTRODUCTION

In accordance with § 1.1, § 1.2 §1.2.2, § 1.2.4;  Exhibit 3 Attachment A(2)(a)(b)(c) and (3)(a)(b)(c)(d); Exhibit 4B(I)(1)(3), 4B(II)(A)(B)(C)(D)(E) and 4B(III)(A)(B)(C)(D)(E)(F); Exhibit 5  § 5.3.2, § 5.3.3, § 5.3.4, § 5.3.5 and § 5.3.6.1 and all other provisions and amendments of the Court Approved settlement agreement, Van Tang d/b/a Cho Saigon, with its principle place of business located at 16203 Westheimer, Suite 106, Houston, Texas 77082, is a "multi-facility" business that operates, owns, does business and leases Real Property in the affected Zones A-D in the Gulf Coast area and operates as, but not limited to, operating as a retail Seafood Grocery store AND a Commercial Seafood Wholesale or Retail Dealer,  of which 75% or more of its 2008, 2009, 2010, 2011, 2012 and 2013 cost or weight in pounds of the product it purchases constituted Seafood  purchased directly from Commercial Fisherman and/or Landing Sites, to wit, it re-sells to local and non-local customers in bulk quantities, as well as, to retailers such as restaurants, fish shops, supermarkets, which establishes a reasonable presumption of causation for a compensation award for a Business and Individual Economic Loss compensation in accordance with the approved settlement agreement for the DWHCC Oil Spill that occurred on April 20, 2013. *Claimant attaches herein and incorporates by reference the DWHCC Claims Administrator's amended policies, specifically 1 thru 264 and Any/All exhibits that have been produced that may be relevant to the prosecution of this claim.*

1

## B. FACTS

1.    Claimant Van Tang d/b/a CHO SAIGON, hereinafter, "Cho Saigon," timely filed its claim and presentment for Business and Individual Economic Loss (BEL/IEL) compensation with the MDL 2179 on April 20, 2011 along with making its presentments of claims to *"BP" et. al.,* the "Gulf Coast Claims Facility" AND subsequently with the Deep Water Horizon Economic and Property Settlement Damages DWHCC claims center. *(See Exhibits 20, 53 & 61).*

2.    On June 7, 2012, Cho Saigon filed its Business Economic Loss Claim, Individual Economic Loss Claim, Failed Business Economic Loss and a Start-Up Business Economic Loss, along with the appropriate *"Hardship"* request and supporting documentation requirements with the Deep Water Horizon Economic and Property Claims Center, hereinafter DWHCC and included in its filings among other things, IRS 2008, 2009, 2010 Tax returns, business retail and wholesale licenses, utility bills, foreclosure notices, mechanic liens, vendor statements and/or cancelled commercial/consumer contracts, civil lawsuits and judgments, as well as, evidence of the pending criminal charges filed against the claimant in various affected Zones in and along the Gulf Coast, in support of the above referenced claim. *(See Contemporaneous Exhibits 1 - 19, 29, 30, 45, 55, & 60).*

3. On or about July 5, 2012, *"BP et. al.,"* argued that the Claimants claim's for Individual Economic Loss, Failed Business Economic Loss and a Start-Up Business Economic Loss should be consolidated with ANY/ALL claims under the Business Economic Loss with an industry designation as a Secondary Seafood Industry with the DWHCC claims administrator, to prevent the possibility of duplicate and additional payments for this claim and notified the claimant that ALL claims for Cho Saigon was being evaluated as a Business Economic Loss, including but not limited to, its Individual Economic Loss claim. *(See Exhibits 31, 56).*

4. On December 28, 2012, five (5) months later, without reason or explanation, a denial of claims for the BEL claim was issued and after numerous requests for a relevant reason for the denial, *"BP et. al.,"* failed to respond or dispute the Claimant's evidence being presented which clearly established affirmative links and met the causation requirement for the *"multi-facility"* business provisions of the settlement agreement, *"BP et. al.,"* did not request for any additional supporting documentation nor did they dispute or object to [A]ny of the supporting documents submitted by the Claimant that established a clear presumption that causation exists for the Claimant to be evaluated for compensation. The denial simply stated that "Claimant is not a member of the economic class under sections 1.1 and 1.2 of the approved settlement agreement." *(See Exhibit 23).*

5. On January 28, 2013, Claimant filed its Notice of Appeal and/or Request for Reconsideration from the denial and asserted that *"BP et. al.,"* failed to comply with the terms of settlement agreement and that it failed to consider relevant information, specifically, Claimant duplicated and re-produced and included, unrequested but *new additional* undisputed evidence that Van Tang is an "individual" and "natural person" d/b/a Cho Saigon, as well as, established that Cho Saigon is an "entity" that "does business" as a "multi-facility" business that  owned, operated, or leased a physical facility in the Gulf Coast Areas or Specified Gulf Waters and (A) sold products in the Gulf Coast Areas or Specified Gulf Waters (1) directly to CONSUMERS or

END USERS of those products or (2) to another Entity that sold those products directly to Consumers or End Users of those products, or (B) regularly purchased Seafood harvested from Specified Gulf Waters in order to produce goods for resale. Specifically, in Dickinson, Galveston County, Texas and including but not limited to St. Landry's Parish, Louisiana along the Gulf Coast area. *(See Exhibits 22, 34 -37, 43, 44, 47 - 50).*

6. On April 15, 2013, four (4) months later, without objection or dispute to the previously presented facts or evidence, *"BP et. al.,"* issued another denial of claims without reason, explanation or dispute simply stating that "Claimant is not a member of the economic class under sections 1.1 and 1.2 of the approved settlement agreement." Incidentally, *"BP et. al.,"* as of the present date has not made any requests for production, inspection and/or verification of documents for a *"multi-facility"* business, in the claim at bar, but has intentionally and consistently failed to investigate, verify and consider relevant evidence and failed to comply with the terms of the settlement agreement by denying the *prima facie* claim presented for compensation. *(See Exhibit 27).*

7. On May 15, 2013, Claimant filed its Notice of Appeal and expressly argued, asserted and produced undisputed *new* and *additional* evidence that Cho Saigon with its principle place of business located at 16203 Westheimer, Suite 106, Houston, Texas 77082, is a *"multi-facility"* business in accordance with § 38.94, and it operates, owns, does business and/or leases property in the affected zones, including but not limited to, "doing business" and leasing property from Vincent Mai Seafood, located at 825 25th Street, Dickinson, Galveston County, Texas 77539, located in Zone "D" of the affected Gulf Coast areas. Specifically, Claimant leased properties and hired employees to occupy, clean, store, prepare, process, and distribute Gulf Seafood including but not limited to, "Crabs, Crab Meat, Fish and Oysters." The Claimant argues that it purchases seafood directly from gulf seafood distributors in Galveston, Texas and throughout the State of Louisiana and directly from the landing sites of the crab and fishing vessels as defined in the terms and definitions of the approved settlement agreement. Claimant asserts that it has continually been *"doing business"* for more than twenty (20) years in the traditional and customary manner of conducting Sea Food Whole Sales in and along the Gulf Coast of Texas and Louisiana. *(See Exhibit 26).*

8. In addition to the above, on May 24, 2013, Claimant filed its Opening Memorandum and expressly argued, asserted and re-produced undisputed evidence of a contemporaneous profit & loss statement from 2010 and the corresponding IRS 2008 and 2009 tax returns, that establishes 75% or more of the 2008, 2009 and 2010 cost or weight in pounds of the product that Cho Saigon purchased constituted Seafood a n d t h a t i t w a s purchased directly from Whole Sale Distributors, Commercial Fisherman and Landing Sites for vessels in the gulf area, to wit, it re-sells to End Users and Consumers of seafood products, in accordance with Exhibit 4B(I)(1)(3), 4B(II)(A)(B)(C)(D)(E) and 4B(III)(A)(B)(C)(D)(E)(F), in the affected gulf coast areas. *(See Exhibits 16, 38, 39 & 40).*

9. In addition, Claimant established annual earnings from his seafood whole sale business in the amount of $3,148,219.00, as demonstrated by the IRS 2008 tax return. *(See Exhibit 5).* In 2009, Claimant's sea food whole sale had annual earnings of $2,820,693.00, as demonstrated by the IRS 2009 tax return. *(See Exhibit 6)* In January 2011, Claimant established with its

3

contemporaneous 2010 & 2011 profit and loss statements for Whole Sale/Retail Seafood business that its earned income had depleted to $1,192,767.00 thereby causing the Claimant to have suffered an annual loss of approximately 75% or more of Cho Saigon's annual earned income resulting in a *"total loss"* of earned income for Cho Saigon that resulted from the DWHCC oil spill that occurred on April 20, 2010, which  establishes that a presumption of causation exists and Claimant qualifies for an accounting evaluation for a compensation award in accordance with the V-Shaped and/or the Modified Revenue pattern and/or the Decline Revenue pattern. [*See* Exhibits 4B (I-III) of the approved settlement agreement which indicates that causation is presumed. *(See Exhibit 7).*]

10. On June 10, 2013, *"BP et. al.,"* filed its Opposition to Claimant's Appeal, and erroneously argues and arbitrarily designates Cho Saigon simply is a "Sea Food Grocery" and presumptively argues that Van Tang d/b/a Cho Saigon may only be qualified as an Individual Economic Loss claimant and does not qualify as a Business Loss claimant and admittedly states because "its principle place of business is in Houston, Texas and because the owner or its employees merely travels to the coastal areas in and along Louisiana and Texas to purchase wholesale seafood to sell,  it does not qualify for geographical situs under § 1.1 & 1.2," and *"BP et. al.,"* failed to consider or acknowledge the *"multi-facility"* business claimant provisions of the settlement agreement.  *(See Exhibit 28).*

11. In addition, *"BP et. al.,"* erroneously argues that the Claimant does not qualify as a Business Economic Loss Claimant because its earned income is filed and reported on its 2009 IRS 1040 Schedule C, and *erroneously* argues the requirements of Exhibit 8A(1) of the approved settlement agreement and completely disregards the remainder and all of the additional provisions under the settlement agreement that provides in part that [A]ny claimant, including but not limited to, a "multi-facility" claimant may qualify for compensation in accordance with the provisions of Exhibits § 1.1, 1.2 and 4B I-III, of the settlement agreement. *(See Exhibit 28).*

12. On July 2, 2013, the DWHCC Appeals Panel *erred* and upheld the decision denying the Claimants Business Economic Loss claim stating *in part* "that Cho Saigon's principle place of business is in Houston, Texas and for the first time an argument was presented and asserted that Cho Saigon has not provided documented evidence that it does not own, operate or lease a *"vessel"* involved in landing seafood in the gulf area as required by the settlement agreement."*(See Exhibit 24).* Claimant specifically objects to this arbitrary "designation" because Claimant has *never* argued *nor* asserted that it is a *"vessel"* of any kind, *to wit*, may create a presumption that the *"BP et. al.,"* has *not* reviewed, analyzed or considered the submitted evidentiary documents and/or ignored and disregarded the evidence being provided, and, therefore, lacks a *"good faith belief"* to make an arbitrary *"vessel"* argument in order to deny and delay this Claimant a compensation award under the settlement agreement.

13. On July 2, 2013, *"BP et. al.,"* failed to comply with the terms of the settlement agreement and failed to consider relevant evidence. Specifically, *"BP et. al.,"* disregarded Claimant's numerous arguments and presentation of evidence establishing the affirmative and causal links to the DWH Oil Spill and the approved Settlement Agreement, which, by it's plain language indicates that Cho Saigon is an individual and business economic loss claimant that

4

lived, resided, worked, operated,  leased, purchased or sold Real Property and/or  conducted business including, but not limited to, leasing properties and hiring employees to occupy, clean, store, prepare, process, and distribute "Crabs, Crab Meat, Fish and Oysters." in the Gulf Coast Areas or Specified Gulf Waters between April 20, 2010 and April 16, 2012 and bartered these products in the traditional and customary manner along the Gulf Coast Areas or Specified Waters. In addition, *"BP et. al.,"* erred by making an arbitrary legal conclusion that is not based or supported by the facts, the law or the evidence presented and is not supported by the terms of the settlement agreement and has failed to give a reasonable relevant response for denying the claim and for failing to investigate the claim in *"good faith"* causing an unnecessary delay and expense, which has caused the claimant to suffer additional economic harm.

14. On July 19, 2013, Claimant filed its Request for Reconsideration and/or Judicial Review and provided unsolicited *new* and *additional* undisputed evidence of an ownership interest in real property located in an affected zone. This evidence indicates via the affidavit from Vincent Mai Seafood the evidence of a real property ownership interest and a valid lease agreement in affected Zone - D in the Gulf Coast area. *(See Exhibits 22, 23, 41 & 42).*

15. *"BP et. al.,"* erroneously asserted that the Claimant never produced [A]ny information or documentation supporting the evidence being asserted. Claimant objected and indicated that the information and evidence has been previously produced and re-produced on and/or before February 2, 2013, and informed the appeal panelists via email to the corresponding document numbers uploaded into the DWHCC portal. Claimant was notified that copies of official court documents and proceedings were not acceptable evidence to support the claim. *(See Exhibits 32 -37).*

16. On August 8, 2013, Claimant had not received a response and subsequently filed a duplicate Request for Reconsideration and/or Judicial Review. *(See Exhibit 57, 58, 59, & 60).*

17. On September 19, 2013, the DWHCC Appeals Panel notified claimant thru DWH claimant representative Diana Dodson via email that its request for Reconsideration and/or Judicial Review was denied because the request was due on July 16, 2013, fourteen (14) days after the issuance of the denial notice. Claimant argued that the deadline for response was July 22, 2013, excluding the triggering date, weekends and holidays. This request was denied as untimely and the *new* and *additional* evidence was not going to be evaluated for a Business Economic loss claim and closed the claim. *(See Exhibit 57, 58, 59, & 60).*

18. For the above stated reasons, Claimant Van Tang d/b/a Cho Saigon files this Motion for Leave to Request for Emergency Relief and Judicial Review from the DWHCC Appeals Denial of the Business Economic Loss claim, in accordance the approved settlement agreement and the rules governing the appeals process for the Deep Water Horizon Oil Spill because the *"BP et. al.,"* failed to comply with the terms of the approved settlement agreement and failed to investigate and verify or consider relevant evidence in support of the claim that forms the basis of this complaint and failed to investigate in *"good faith,"* and participating in this courts broadly approved settlement agreement, in order to decide this case on the merits of the claim.

## A.  ARGUMENT AND AUTHORITIES

19.    On or about April 20, 2011, at or near the time of filing and presentment, as well as, contained in the Claimant's Appeal Memorandum, claimant argued, asserted and produced by a preponderance of the evidence that Cho Saigon with its principle place of business located at 16203 Westheimer, Suite 106, Houston, Texas 77082, is a *"multi-facility"* business *(See Exhibit 4B, DWH Settlement Agreement and Policy Amendments)*  that operates, owns, does business and/or leases real property in the affected Zones A - D and operates as, but not limited to, operating as a retail Seafood Grocery store AND a Commercial Seafood Wholesale or Retail Dealer, that purchases seafood directly from gulf seafood distributors, commercial fisherman and landing sites in Galveston, Texas and throughout the state of Louisiana and purchases "Crabs, Crab Meat, Oysters, Fish and Oysters" directly from the landing sites of the crab and fishing vessels in the gulf area in accordance with the approved settlement agreement as outlined in *Exhibit 3 Attachment A(2)(a)(b)(c)* and *(3)(a)(b)(c)(d) "Sea Food Chain"* definitions and that a presumption of causation is established under the provisions of the approved settlement agreement. *(See Economic and Property Settlement Agreement as Amended May 2, 2012 at pg 191-195).*

20. In addition, Claimant argued that its claim qualifies either under the V-Shaped Revenue Pattern with a decline of 15% and upturn increase of 10% in aggregate; or the Modified Revenue Shaped Pattern with a decline of 10% and upturn increase of 7% in aggregate or under the Decline Revenue Shape Pattern with a decline of 15% aggregate and the claimant has produced specific supporting contemporaneous profit and loss documentation that Claimant suffered a decline of a 10% aggregate economic income generated by non-local customers. In addition, the Claimant has demonstrated proof of a decline of 10%  in the share of total revenue generated by non-local customers over the same period of three consecutive months, thus a clear presumption of causation is established in favor of the claimant under the relevant provisions of the approved settlement agreement. *Id.([See Exhibit4B (I)(II)(III) at pg 202- 217]).*

21.    Even further, Claimant argued and asserted that in accordance with *§ 38.94 Multi-Facility Business* shall have the meaning set forth in *[Exhibit 5], to wit,* allocates provisions for the business claimant that has a principle place of *" doing business"* and *"does business and operates"* in more than one location. Claimant cited, *Ballard Shipping   Co.   v.   Beach Shellfish,* 32  F.3d  623, (1st Circuit 1994), the court reasoned, Congress intended to allow [A]ny claimant who does not own any damaged property to recover for purely economic losses stemming from an injury to natural resources if there is a causal connection between the damages sought  and the oil spill. This ruling is consistent with the approved settlement agreement which affirms and reiterates that *"[A]ny claimant"* that *"does business"* in the Gulf Coast Areas can recover economic losses so long as the claimant can show a causal link and nexus between the damages being asserted and the Oil Spill in order to recover for economic losses stemming from an injury to natural resources. This ruling is consistent with the language, intent and text of the Approved Settlement Agreement, OPA 1990 and general maritime law, therefore, BP's argument in opposition is unreasonable, unfair, unjust and could be reasonably misinterpreted by the public at large that may indicate "bad faith" negotiations in complying with the terms of the settlement agreement. Claimant Cho Saigon has presented and established by a preponderance of the evidence that a clear presumption of causation exists under the various provision of the broadly approved settlement agreement which has been completely

ignored and undisputed by *"BP et. al.,"* on the merits of this claim and should be remanded for to the DWHCC for further review, consideration and accounting.

22. On July 5, 2012, Claimant presented undisputed evidence that Claimant was arrested and prosecuted for criminal charges in the St. Landry's Parish District Attorney Office for "Worthless Checks" for whole sale seafood purchases in the amount of $87,484.48, in Lake Charles, Louisiana and Opelousas, Louisiana, respectively, for making payments for seafood whole sale purchases, with insufficient business/individual banking and credit monies to cover the seafood being purchased for business economic purposes. Van Tang is presently on bond and making monthly restitution payments to the St. Landry's Louisiana District Attorney's office to keep from having his bond revoked and going to jail in the State of Louisiana for whole sale seafood purchases. Ultimately, as a result of the DWH oil spill, Claimant has suffered a total loss of individual and business economic income. The current pending criminal charges, unmistakably, establishes *prima facie* evidence that causation exists and affirmative links are established by a preponderance of the evidence that Van Tang was *"doing business"* in the affected *Zones A – D* on or about April 20, 2010 thru the present date and that the required presumption of causation exists *to wit* indicates "bad faith" negotiations in complying with the terms of the settlement agreement and warrants an immediate "*Hardship*" award for compensation. *(See Exhibits 10, 11).*

23. On July 5, 2012, Claimant presented undisputed evidence of a contemporaneous vendor contract list that contained outstanding irreplaceable annual customer and vendor contracts for bulk seafood purchases in large quantities that establishes that the claimant sells to retailers such as restaurants, fish shop and supermarkets in the gulf area. In addition, claimant provided undisputed contemporaneous evidence of 25% or more of its total food costs for 2009, constituted seafood whole sales and purchases in and along the Gulf Coast in the amount of $1,204,268.54, which also establishes affirmative links and a clear presumption that Claimant was *"doing business"* in an affected *Zones A – D* on or about April 20, 2010 and that causation exists under the approved provisions of the settlement agreement to award compensation. *(See Exhibit 16).*

24. On July 5, 2012, Claimant presented undisputed evidence in accordance with *Exhibit 4B(I)(1)(3), 4B(II)(A)(B)(C)(D)(E)* and *4B(III)(A)(B)(C)(D)(E)(F)* that established that Claimant had annual earnings from his seafood whole sale business in the amount of $3,148,219.00, as demonstrated by the IRS 2008 tax return. In 2009, Claimant's sea food whole sale business had annual earnings of $2,820,693.00, as demonstrated by the IRS 2009 tax return. In January 2011, Claimant's  Whole Sale/Retail Seafood business earned $1,192,767.00 thereby causing the Claimant to suffer an annual loss of approximately 75% of Cho Saigon's annual earnings as a result of the DWH oil spill and  *indicates* that a clear presumption that causation exists and Claimant qualifies for an economic compensation claim evaluation in accordance with *Exhibit 4B analysis V-Shaped and/or the Modified Revenue pattern and/or the Decline Revenue pattern* in accordance with the referenced provisions of the approved settlement agreement. This evidence also establishes affirmative links and a presumption that Claimant was *"doing business"* in an affected *Zones A – D* and that causation exists under the approved provisions of the settlement agreement. *Id at 202.*

25. On or about July 5, 2012, Claimant presented undisputed evidence that Cho Saigon, attempted to supplement its earnings by creating a start-up "Crawfish" seafood whole sale/retail business, which generated a gross earnings of approximately $64,843.00, *to wit*, was insufficient to sustain business operations and with the declining earned income and loss profits, established a rebuttable presumption that causation and damages exists for a Start-up and a Failed Business Economic loss and also establishes affirmative links and a clear presumption that Van Tang was *"doing business"* in an affected *Zones A – D* on or about April 20, 2010 and that causation exists under the approved provisions of the settlement agreement for an award of compensation. *(See Exhibit 7).*

26. On or about August 15, 2011, as a result of the decline in Claimants Sea Food Whole Sales, Cho Saigon's principle place of business located at 16203 Westheimer, Suite 106, Houston, Texas 77082, owned by Vinh Quang Tang and Van Duc Tang, individually and collectively, valued at approximately $1,750,000.00, was foreclosed by MLT Westheimer Center LLC for a failure to make monthly mortgage payments and property taxes and currently the statute of limitations is expiring on his right of redemption to re-enter the property. *(See Exhibit 8, 9, &12).* Even further, Van Duc Tang, is currently being sued by various creditor's for outstanding whole sale seafood purchases, *to wit*, various civil judgments has been obtained, which also establishes a clear presumption that this Claimant is experiencing an economic *"Hardship," to wit* indicates "bad faith" negotiations in the *"Hardship"* and application request complying with the DWHCC amended rules and the terms of the settlement agreement. *(See Exhibit 45).[i]*

27. Claimant specifically argues and asserts that the settlement agreement indicates in its entirety and in accordance with *§ 38.177 Zone-D Exhibit 23* shall mean the *"residual"* portions of the Gulf Coast Areas outside of *Zones A-C* and *§ 38.136* Specified Gulf Waters shall mean the U.S. waters of the Gulf of Mexico and all adjacent bays, estuaries, straits, and other tidal or brackish waters within the Gulf Coast Areas, as specifically shown and described in *Exhibit 22 & 23* of the settlement agreement, *to wit*, is *navigable* waters less than 60 sq. miles from the coastal waters whose upward and/or downward water flows from the Gulf of Mexico to, among others, Galveston Bay and extends to the Houston Ship Channel and downtown thru the Port Of Houston and the Buffalo Bayou, thus in accordance with case law, OPA 1990 and general maritime law, includes the many parts of the metropolitan Houston, Texas area and is therefore included in the approved settlement agreement. *See Exhibit 62.*

28. Claimant specifically argues, that *"BP et. al.,"* has disregarded this courts Orders of December 12, 2012, and April 9, 2013, by denying this claim in "bad faith" without investigating and verifying basic facts of the claim in order to delay the compensation award and payment for this claim. Claimant asserts that *"BP et. al.,"* has been continuously advertising and misleading American's through their various public relations in the United States and abroad that they accepting there proportionate negligence and responsibility in the Deep Water Horizon Oil Spill that occurred on April 20, 2010, and accepting there negligence in the accidental destruction of natural and economic resources in and along the Gulf of Mexico and abiding by this Courts approved settlement agreement, in compensating claimants with *prima facie* evidence of a valid claim for damages. Even further *"BP et. al.,"* course of conduct may be misinterpreted as utilizing the settlement claims process for the improper purpose of

8

deterring Claimant's from filing and pursuing claims, causing an unnecessary expense and delay which would be a complete miscarriage of justice and a breach of this approved settlement process and agreement.

29. Claimant argues and asserts that at all times, the provisions of the settlement agreement indicates in its entirety that [A]ny Individual or Entity in the United States that lived, resided, worked,  owned, operated, or leased real or personal property and conducted business in the Gulf Coast Areas or Specified Gulf Waters between April 20, 2010 and April 16, 2012 and/or *"does business"* in the affected Gulf Coast Areas is a claimant, in accordance with [A]ny/All provision of the approved settlement agreement and [A]ny/All Claimants may have a good faith claim for a business and individual economic loss once *scintilla* of causation is established. *Id at 11*. Here, the Claimant Van Tang d/b/a Cho Saigon has affirmatively met its burden of causation by a preponderance of the evidence. Claimant asserts that its claim is being denied to harass, intimidate and delay compensation payments to an individual and business that has relied on the natural resources of the Gulf of Mexico for more than twenty (20) years.

30. This Claimant prays that in the interest of justice and on the merits of the claim at bar, this Court **REVERSE AND REMAND** the appeals denial's and **GRANT** Cho Saigon Business and Individual Economic claim status for the total loss of earned income; And ***recommend*** this claim for a fair and reasonable DWHCC accounting compensation and evaluation award; And, without an unnecessary delay, **award $3,800,000.00** as an **immediate** interim *"Hardship"* payment, this amount is based on its average 2008 and 2009 earned income, to be deducted from the total award, pending a final DWHCC accounting and compensation award; And attorney fees and expenses for prosecuting this claim and preparing this motion. This request is a fair and reasonable and in accordance with the DWHCC rules and as calculable under the terms of the settlement agreement for the actual, consequential and incidental economic damages suffered as a result of the Deep Water Horizon Oil Spill that occurred on April 20, 2010; Any such additional relief at law and/or equity as the Court deems just.

31. This motion is not being brought to harass or delay but so that this claim may be decided on the merits and that justice may be done.

## REQUEST FOR THREE COURT PANEL

32. Please take special notice that Claimant argues a specific question of fact and general maritime law as it relates to the *"navigable waters"* of the affected geographical Zones A – D and the *"residual"* portions of the Specified Gulf Waters of the United States of America, and [A]ll the provisions of the settlement agreement, which may require a three (3) Judge court for disposition. *Id at para 27*.

## PRAYER FOR RELIEF

WHEREFORE, VAN TANG d/b/a CHO SAIGON prays that this Court award Business and Individual Economic compensation status for the economic damages suffered as a result of the Deep Water Horizon Oil Spill that occurred on April 20, 2010 and in accordance with the approved settlement agreement and requests this Court to award the following additional relief:

1.      **REVERSE AND REMAND** the DWHCC denial and **GRANT** Cho Saigon Business and Individual Economic claim status for the total loss of earned income;

2.      Refer this claim for a DWHCC accounting compensation and evaluation award;

3.      Award **$3,800,000.00** as an immediate interim *"Hardship"* payment pending the final compensation award, *to wit,* may be deducted from the total award;

4.      Pre/Post Judgment claim interest at the aggregate rate of 10.5%;

5.      Attorney fees and expenses for prosecuting this claim and preparing this motion;

6.      Any such additional relief at law and/or equity as the Court deems just;

THIS PRAYER FOR RELIEF is fair and reasonable and in accordance with the terms of the settlement agreement

Respectfully Submitted,

/s/ Michael D. Antalan
MICHAEL D. ANTALAN
LAED Number: TX24039615
5425 Doolittle
Houston, Texas 77033
Office: (713) 738.3842
Direct: (713) 577.2864
Fax:     (713) 588.8948
Attorney for VAN TANG d/b/a CHO SAIGON

---

[1] **RELEVANT DEFINITIONS AND EXHIBITS**

§ 1.2, provides in part that "All entities doing business or operating in the Gulf Coast Areas or Specified waters that:

§ 1.2.1 at any time from April 20, 2010 to April 16, 2012, owned, operated, or leased a physical facility in the Gulf Coast Areas or Specified Gulf Waters and (A) sold products in the Gulf Coast Areas or Specified Gulf Waters (1) directly to CONSUMERS or END USERS of those products or (2) to another Entity that sold those products directly to Consumers or End Users of those products, or (B) regularly purchased Seafood harvested from Specified Gulf Waters in order to produce goods for resale.

§ 5.3.2.1, provides in part that the frame work and standard for evaluating Claims and determining compensation are set forth  is in Exhibit 4A – 7 to the Agreement. *cont.. Sections 5.3.2, 5.3.3, 5.3.4, 5.3.5* identify the exhibits containing those frameworks, which apply to businesses, or to self-employed individuals filing IRS 1040 Schedules C, E, or F for the calendar year or any part of a fiscal year in 2010.

§ 5.3.2.3, Causation requirements for Business Economic Loss Claims Generally. Business Economic Loss Claimants, unless causation is presumed, must establish their loss was due to OR resulting from the Deepwater Horizon Incident. The causation requirements for such claims are set forth in Exhibit 4B.

§ 5.3.6.2, The framework governing Individual Economic Loss Claims shall apply to Claims by all Natural Persons within the Economic Class Definition for Economic Damage due to or resulting from the Deepwater Horizon Incident, except for:  (i) self-employed individuals filing IRS Form 1040 Schedules C, E, or F for the 2010 calendar year or any part of a fiscal year in 2010, who are covered under the Business Economic Loss methodology;

§ 38.15 Business Claimant or Business Economic Loss Claimant shall mean an Entity, or a self-employed Natural Person who filed a Form 1040 Schedule C, E or F, which or who is an Economic Class Member claiming Economic Damage allegedly arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident.

§ 38.16 Business Economic Loss Claim shall mean the Claims brought by the Business Economic Loss Claimants described in Exhibits 4A-7.

§ 38.39 Corporate Headquarters or Headquarters shall mean a physical office in which the principal executive offices and direct support staff for senior management functions of a business Entity are located.

§ 38.57      Economic Damage shall mean loss of profits, income and/or earnings arising in the Gulf Coast Areas or Specified Gulf Waters allegedly arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident; provided, however, that Economic Damage does not include (1) loss of profits or earnings, or damages for injury relating to real property or personal property that constitutes any part of the Seafood Compensation Program, Coastal Real Property Damage, Real Property Sales Damage, Wetlands Real Property Damage, Vessel Physical Damage, or (2) VoO Charter Payment, or (3) damages for loss of Subsistence use of natural resources, which constitutes Subsistence Damage.

§ 38.59 Economic Damage Claim Frameworks shall mean the rules described in Exhibits 4A-8E.

§ 38.64 End User shall mean a Natural Person or Entity that buys any product for his, her or its individual use or consumption and not for manufacture or resale.

§ 38.80 Gulf Coast Areas shall mean the States of Louisiana, Mississippi, and Alabama; the counties of Chambers, Galveston, Jefferson and Orange in the State of Texas; and the counties of Bay, Calhoun, Charlotte, Citrus, Collier, Dixie, Escambia, Franklin, Gadsden, Gulf, Hernando, Hillsborough, Holmes, Jackson, Jefferson, Lee, Leon, Levy, Liberty, Manatee, Monroe, Okaloosa, Pasco, Pinellas, Santa Rosa, Sarasota, Taylor, Wakulla, Walton and Washington in the State of Florida, including all adjacent Gulf waters, bays, estuaries, straits, and other tidal or brackish waters within the States of Louisiana, Mississippi, Alabama or those described counties of Texas or Florida.   (Exhibit 22).

§ 38.84 Individual Claimant shall mean a Natural Person who is an Economic Class Member alleging Economic Damage arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deep water Horizon Incident with a Claim in addition to or other than a Claim for Economic Damage related to such Natural Person's sole proprietorship business or other self-employment as reflected on Schedule C, D or E of a federal income tax form.

§ 38.85 Individual Economic Loss Claims shall mean the Claims brought by individuals described in Exhibits 8A-8E.

§ 38.94 Multi-Facility Business shall have the meaning set forth in Exhibit 5.

§ 38.136 Specified Gulf Waters shall mean the U.S. waters of the Gulf of Mexico and all adjacent bays, estuaries, straits, and other tidal or brackish waters within the Gulf Coast Areas, as specifically shown and described in Exhibit 23.

§ 38.177 Zone D shall mean the residual portions of the Gulf Coast Areas outside of Zones A-C.

**Exhibit 3 PRIMARY SEAFOOD INDUSTRY**:  2. (b), provides in part that, a Commercial Wholesale or Retail Dealer A  shall be defined as an entity or Natural Person that holds a commercial wholesale or retail dealer license issued by the State(s) of Alabama, Florida, Louisiana, Mississippi and/or Texas for which 75% or more of the 2009 cost or weight in pounds of the product it purchases constitutes Seafood   purchased directly from Commercial Fisherman or Landing Site and re-sells to Primary Seafood Processors, Seafood Distributors, Seafood Wholesalers and Seafood Retailers.

**Exhibit 3 SECONDARY SEAFOOD INDUSTRY**: 3. (c) Seafood Wholesaler or Distributor shall be defined as an entity or Natural Person that purchases Seafood in bulk quantities and sells to retailers such as restaurants, fish shop and supermarkets; (d) Seafood Retailer shall be defined as an entity that is an end user of Seafood such as a restaurant, fish market or super market for which 25% or more of total food costs for 2009 constitute Seafood.

Exhibit 4A – 7 – Documentation Requirements For A Business Economic Loss

Exhibit 4B section I, provides in part causation requirements for individuals or entities doing business in Zone "A." If you are a "Landing Site," or "Commercial Wholesale or Retail Dealer A," or "Primary Seafood Processor," as set forth in "Seafood Distribution Chain Definitions," you are not required to provide any evidence of causation.

Exhibit 4B section II, Causation Requirements for Zone A claimants:  A. V Shaped Revenue Pattern: …a decline 8.5%; upturn increase 5% in aggregate;

Exhibit 4B section II, Causation Requirements for Zone B - C claimants:  B. Modified V Shaped Revenue Pattern: …a decline 5% or more; upturn increase 5% or more in aggregate;

Exhibit 4B section III, Causation Requirements for Zone D claimants:  A. V Shaped Revenue Pattern: …a decline 15%; upturn increase 10% in aggregate;

Exhibit 4B section III, Causation Requirements for Zone D claimants:  B. Modified V Shaped Revenue Pattern: …a decline 10%; upturn increase 7% in aggregate…. AND

Exhibit 4B section III, Causation Requirements for Zone D claimants:  The claimant demonstrates proof of a decline of 10%  in the share of total revenue generated by non-local customers over the same period of three consecutive months… OR

Exhibit 4B section III, Causation Requirements for Zone D claimants:  C. Decline Only Revenue Pattern:  decline of 15% aggregate AND specific supporting documentation AND a decline of 10% aggregate generated by non-local customers…

Exhibit 5 section I, Compensation for Multi-Facility Business: A Multi-Facility Business with its Headquarters located outside of the Gulf Coast Areas that did not maintain separate contemporaneous profit and loss statements for each Facility in the Gulf Coast Areas during the Benchmark Period and 2010, may submit a consolidated claim for all Facilities located within the Gulf Coast Areas.  The Additional Multi-Facility Business Documentation must be provided, and the Settlement Program shall apply the relevant Causation standard and RTP separately to each Facility located within the Gulf Coast Areas.

Exhibit 5 section I, Definitions: I. Multi-Facility Business:   A business entity that, during the period April 1, 2010 through December 31, 2010, maintained Facilities in more than one location and had at least one Facility within the Gulf Coast Areas. Facility:   A separate and distinct physical location of a Multi-Facility Business at which it performs or manages its operations.

Exhibit 5 section I, Definitions: III. 1.  Consolidating Financial Statements:  Consolidating financial statements are required for the Multi-Facility Business specifying profit and loss for all Facilities and detailing eliminating entries required.  In addition, the Multi-Facility Business will complete a Sworn Written Statement that separate profit and loss statements for each of the claiming Facilities do not exist, and individual Facility P&L statements prepared for the purpose of filing a claim are based on the business's books and records.

Exhibit 23

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing MEMORANDUM IN SUPPORT EMERGENCY MOTION FOR RELIEF AND REQUEST FOR JUDICIAL REVIEW FROM THE APPEALS DENIAL OF THE BUSINESS ECONOMIC LOSS CLAIM has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this on this 7th day of October, 2013.

/s/Michael D. Antalan
**MICHAEL D. ANTALAN**

12