IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * | MDL NO. 2179 |
| | * | SECTION: "J" |
| This document relates to No. 12-970 | * | Honorable Carl J. Barbier |
| | | Magistrate Judge Shushan |
| * | * | * |

MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PRODUCTION OF DOCUMENTS AND
TO EXTEND TIME TO RESPOND TO ORDER TO SHOW CAUSE

**NOW INTO COURT**, through undersigned counsel, comes claimant The Andry Law Firm, L.L.C. ("ALF"), who files this *Memorandum in Support of its Second Motion for Production of Documents and to Extend Time to Respond* to the Court's *Order to Show Cause*.[1] This is the second time that ALF has requested access to the documents underlying the *Report of Special Master Louis J. Freeh* (*"Freeh Report"*) and additional time to respond to the Special Master's recommendation that ALF's legitimate claim for more than seven million dollars should be denied.[2] In response to ALF's *First Motion to Compel*, this Court ordered the Special Master to provide ALF "access to information relevant to portions of the Special Master's Report concerning ALF." The Special Master's resulting production falls far short of what the Court ordered and what due process demands.[3] What ALF received is selective, one-sided, and incomplete. The Special Master remarkably did not produce the complete deposition transcripts

---

[1] In making this demand for additional discovery, ALF specifically objects to the appointment and authority of the Special Master, the Special Master's Report, and the Court's Order under Federal Rule of Civil Procedure 12(b), Federal Rule of Civil Procedure 53, and 28 U.S.C. § 455.  In addition, ALF specifically reserves its rights to make any and all further objections in its response to this Court's *Order to Show Cause*.

[2] ALF's claim has been due and payable since June 18, 2013.

[3] The Special Master's production to ALF is being filed under seal as Exhibit "1" to this Motion.

or witness statements for ALF's members, Jon Andry and Gibby Andry. Nor did he produce the complete deposition transcripts of key witnesses, such as Lionel Sutton and Patrick Juneau. The Special Master also heavily redacted memoranda memorializing the interviews of other key witnesses, such as Casey Thonn, David Duval, Michael Juneau, and Christina Mancuso. In some instances, upon information and belief, the Special Master excluded from the production favorable information demonstrating ALF's very clean hands, including the statements of several Andry Lerner, LLC employees who testified that that they did nothing to influence CSSP staff or ALF's claim. Without disclosure of such plainly relevant documentation ALF cannot reasonably respond to the Court's *Order to Show Cause*.

The Special Master has parsed the information discovered in his investigation in a manner that exceeds the scope of his authority under Rule 53. The Special Master is a judicial officer of the Court whose mandate did not include a reevaluation of ALF's claim. He is not an advocate or litigant. His proper role is not, as he has done here, to finely comb the record and to disclose to ALF and the other Show Cause parties only those snippets and excerpts of the record that allegedly support only the selected facts in his report. His proper role is to disclose the relevant record, in its entirety, to ALF.

The Special Master has submitted to this Court for its consideration *all* of the documents and information he collected in his investigation. ALF and the Show Cause parties are entitled to access nothing less: the relevant record in full and without redactions. For the reasons stated below, due process, the Federal Rules of Civil Procedure, and this Court's order require the Special Master to produce all documentation collected by the Special Master relevant to ALF, including the portions previously excluded and redacted by Special Master Freeh, or omitted by the Special Master entirely. ALF further requests an additional twenty-one days from the date of

any supplemental production to make its objections to the *Freeh Report*'s findings and recommendations.

## BACKGROUND

After a sixty-six day investigation, Special Master Freeh issued his *Report of Special Master Louis J. Freeh* on September 6, 2013. *See* Rec. Doc. 11287. As the Court is aware, the Special Master recommends that ALF's claim should not be paid under the so-called "unclean hands doctrine" and also recommends that the Court disqualify Lionel Sutton, Christine Reitano, Jon Andry, Glen Lerner and any associated law firms from representing or receiving payment from CSSP claimants. In response to the *Freeh Report*, the Court ordered ALF and the others to show cause why the Court should not adopt the Special Master's findings and recommendations. Rec. Doc. 11288.

According to the Special Master, his office conducted over 80 interviews (many of which were transcribed), performed computer forensics, reviewed extensive emails and phone records, searched laptops and mobile device hardware, issued subpoenas, and examined numerous other documents during the course of his investigation.[4] None of this evidence was published with the report. Indeed, the Special Master stated that he would not provide the documents underlying his report, absent Court intervention.[5]

---

[4]   All of this information was gathered and considered without any evidentiary hearing at which ALF could participate.

[5]   Footnote 11 of the report provides:

> All references herein to bank documents, phone logs, email communications, DHECC claims documents, and witness statements, transcribed or summarized, are part of the Special Master's investigative record and will be preserved by the Special Master to be provided to the United States Attorney's Office for the Eastern District of Louisiana if directed by the Court. Given the possibility of a criminal investigation, the Special Master is not permitting access to such underlying documents at this time, unless otherwise ordered by the Court.

3

Accordingly, ALF moved to produce the information discovered by Special Master Freeh relevant to his findings concerning ALF. The Court granted ALF's motion and ordered the Special Master to "provide The Andry Law Firm access to information relevant to portions of the Special Master's Report concerning The Andry Law Firm" and gave ALF until October 18, 2013 to file its response to the Court's *Order to Show Cause*. Rec. Doc. 11412. The Court also ordered the Special Master to provide Lionel Sutton, Christine Reitano, Jon Andry and Glen Lerner access to information relevant to portions of the Special Master's Report concerning each of them. *See* Rec. Doc. 11442. Both Court orders provided that, "[t]he Special Master shall redact portions of pertinent discovery provided that it is not relevant to a particular party, and shall maintain original and un-redacted versions of all documents for review and consideration by the Court." Rec. Doc. 11412, 11442.

Notwithstanding the Special Master's extensive, allegedly probing investigation, the Special Master produced to ALF a mere 500-plus pages of documents. The production included duplicate copies of emails, heavily redacted interview notes, and deposition transcripts that, on their face, omit almost 400 pages of text. For instance, the deposition transcript of ALF principal Jon Andry omits three hundred and sixty-nine pages of testimony; one hundred and seventeen pages are missing from Lionel Sutton's deposition; and Christine Reitano's deposition transcript is missing one hundred and forty-three pages. The interview statement from ALF's other principal Gibby Andry is omitted entirely.[6] ALF has no way of knowing what other materials were excluded and on what basis.[7]

---

[6] Notably, in Gibby Andry's interview, the Special Master's associate Gregory Paw admitted that the Special Master was not employed to consider or reconsider ALF's claim.

[7] The other persons subject to the Court's show cause order received documents that were produced in a similar fashion.

Many of Special Master Freeh's redactions omit information that is obviously fundamental to ALF's position that the "unclean hands doctrine" does not apply to ALF's claim. For example, the Special Master completely omits Lionel Sutton's answer to the question, "Do you remember speaking to [Mr. Andry] on the phone about the *Thonn* claim." SM-01-TALF00564. Patrick Juneau's deposition, to the extent that it is produced at all,[8] is abruptly cut-off after the Claims Administrator admits that the CSSP regularly receives extensive outside pressure from all sides during the claims process. Mr. Juneau states that "we get pushed all the time by people. Claimants push us, people – politicians push us, everybody pushes us." SM-01-TALF00553. The remainder of his deposition, and any follow-up, is omitted entirely. There can be no doubt that the omitted material is relevant to ALF and should have been produced by the Special Master.

ALF objects to this incomplete production and moves to compel the Special Master to produce all of the documents relevant to ALF. The Special Master's production is incomplete, selective, and fails to produce any documents that are favorable to ALF, or demonstrate ALF's very clean hands throughout the claims process. ALF cannot prepare a meaningful response to the Special Master's report without access to all of the documents obtained by Special Master Freeh during his investigation. Access to this material is necessary for ALF to respond to the Special Master's findings and is required by the Due Process Clause of the United States Constitution. Accordingly, ALF requests an opportunity to examine all of the documents relevant to those sections of Special Master Freeh's report concerning ALF, and additional time to prepare its objections.

---

[8] Only two pages of the Claims Administrator's deposition have been produced.

**LAW AND ARGUMENT**

**I.   DUE PROCESS REQUIRES THAT THE SPECIAL MASTER PRODUCE UN-REDACTED COPIES OF ALL DOCUMENTS RELEVANT TO ALF.**

Due process requires that the Special Master provide ALF with complete and un-redacted copies of all documents relevant to the sections of the Special Master's report concerning ALF. *See Ruiz v. Estelle*, 679 F.2d 1115, 1162-63 *amended in part, vacated in part*, 688 F.2d 266 (5th Cir. 1982) (traditional notions of due process apply to proceedings before a special master). ALF's *First Motion to Compel* cited the Fifth Circuit's decision in *Ruiz v. Estelle*, Rule 53, and other authority for the proposition that the Court could not, consistent with due process, accept the Special Master's recommendations, without allowing ALF to examine the documents and interviews underlying the *Freeh Report. See* Rec. Doc. 11287. In response, the Court ordered Special Master Freeh to produce all relevant documents to ALF. Rec. Doc. 11412. The Special Master's selective production of documents to ALF fails to comply with the fundamental requirement of due process and this Court's order.

**A.   ALL RELEVANT DOCUMENTS SHOULD HAVE BEEN PRODUCED IN FULL AND WITHOUT REDACTIONS.**

This Court ordered the Special Master to "provide The Andry Law Firm access to information *relevant to* portions of the Special Master's Report concerning The Andry Law Firm." Rec. Doc. 11412 (emphasis added). "[R]elevancy is broadly construed" and a document is relevant if there "is any possibility that the information sought may lead to the discovery of admissible evidence." *S. U.S. Trade Ass'n v. Unidentified Parties*, No. 10-1669, 2012 WL 262560, at *2 (E.D. La. Jan.30, 2013) (emphasis added). Accordingly, "discovery should be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *Id.* (citation omitted).

6

Special Master Freeh used an improperly narrow, selective standard of "relevance" in determining what to produce to ALF. The standard definition of "relevance" surely encompasses the entirety of the transcripts and interview statements for ALF's members, Jon and Gibby Andry, as well as key witnesses such as Lionel Sutton, Patrick Juneau, and Michael Juneau. "Relevant" evidence also must include full and complete interview memoranda of other key witnesses, such as Casey Thonn, David Duval, and Andry Lerner, LLC employees Christina Mancuso, Kailey LeBoeuf, Scott Stevenson, and Mary Rubio. Such information, without doubt, is discoverable in any federal civil case.[9] Without access to all "relevant" information, ALF cannot accurately and meaningfully respond to the Special Master's findings and recommendations. Each of the documents discovered by the Special Master is relevant to whether the report's recommendations should be upheld and should have already been produced to ALF pursuant to the Court's order granting ALF's *First Motion to Compel*.

**B.     NONE OF THE DOCUMENTS RELIED ON BY THE SPECIAL MASTER ARE PRIVILEGED.**

Many of the redacted interview memoranda produced by the Special Master are labeled "attorney-client privilege." It is not clear whether the Special Master redacted those interview memos based on privilege, because the Special Master has not produced a privilege log or otherwise indicated that it has withheld information based on privilege (presumably because no legitimate privilege exists). Nor has he sought a protective order from the Court to limit his production. *See* FED. R. CIV. P. 26(c)(1).

To the extent that the Special Master has relied on privilege, the assertion is invalid. Special Master Freeh is an officer of the Court. *See In re Gilbert,* 276 U.S. 6, 9 (1928) ("When

---

[9]     Such information also unquestionably would be discoverable under the more rigorous standards of the Federal Rule of Criminal Procedure 16. For instance, a defendant's statement in full is always discoverable. So, too, are the prior statements of material witnesses, and other exculpatory materials.

7

respondent accepted appointment as master he assumed duties and obligations of a judicial officer."). He and others who acted on his behalf were neither clients nor lawyers entitled to assert a privilege that is commonly understood to belong to a "client." Special Master Freeh's assertion of the privilege would put him in the shoes of a litigant or advocate, which he clearly is not. *See People Who Care v. Rockford Bd. Of Educ.*, 111 F.3d 528, 541 (7th Cir. 1997) (describing the special master as "an ad hoc judicial officer" and questioning his status as a "party or 'litigator'"); *Cobell v. Norton*, 334 F.3d 1128, 1142 (D.C. 2003) (criticizing special master who, "instead of resolving disputes brought to him by the parties, he became something like a party himself").

Furthermore, any privilege that the Special Master might be able to assert has been waived. First, to the extent that the Special Master has already disclosed *some* portion of a claimed privileged interview memorandum to ALF, that disclosure constitutes a subject matter waiver with respect to the remainder of the document. *See* FED. R. CIV. P. 502(a). Second, the only basis asserted by the Special Master for withholding or redacting the production of documents underlying his report is the Special Master's stated desire to refer the record to the U.S. Attorney's Office for the Eastern District of Louisiana. *See* Rec. Doc. 11408 at 2 ("Consistent with the referral to the U.S. Attorney's Office and footnote 11 of the Report, the Special Master proposes that it redact portions of pertinent discovery provided to the Andry Law Firm that is not relevant to The Andry Law Firm."). But disclosure of privileged material to third-parties, such as the U.S. Attorney's Office, also constitutes a privilege waiver. *See* FED. R. CIV. P. 502(a). Moreover, the Special Master's request that portions of this matter be referred to the U.S. Attorney's Office does not provide a basis to deny relevant discovery in a civil case. The Special Master provided no authority for the proposition that the referral of others to the

U.S. Attorney's Office is a basis for withholding the results of an investigation conducted during civil multi district litigation. Because the Special Master has no valid basis to withhold the documents relied upon in his report, each of these documents should be produced by the Special Master in full.

C. **THE SPECIAL MASTER EXCEEDED HIS AUTHORITY BY MAKING REDACTIONS AND RELEVANCY DETERMINATIONS.**

By extensively redacting documents and making relevancy determinations, the Special Master has exceeded his authority in this proceeding. Pursuant to Rule 53(a)(1), "[u]nless a statute provides otherwise, a court may appoint a master only to perform duties **consented to by the parties**" (emphasis added).[10] The statute further provides, "The appointing order must . . . state the master's duties, including any investigation or enforcement duties, and any limits on the master's authority under Rule 53(c)." FED.R.CIV.P. 53(b)(2)(A). The Advisory Committee Notes to Subdivision (b) of Rule 53 provide that, "The order appointing a pretrial master is vitally important in informing the master and the parties about the nature and extent of the master's duties and authority." FED.R.CIV.P. 53 advisory committee notes.

The Special Master's duties to which the parties consented is governed by the order of appointment and do not include the authority to make redactions and relevancy determinations. Indeed, the Court's Order appointing Special Master Freeh specifically states that "[t]he duties of this appointment **will not involve traditional special master roles involving** … **discovery.**" Rec. Doc. 10564 (emphasis added). Nothing in the Court's order grants the Special Master the

---

[10] Although the parties to this litigation consented to the appointment of Special Master Freeh, ALF was never given the opportunity to consent or object to the appointment. On July 18, 2013, ALF filed a *Motion to Intervene and File Opposition*, which was denied. *See* Rec. Doc. 10775, 10801. Since ALF was not allowed to intervene in the litigation, it was never provided "notice and an opportunity to be heard" regarding the order appointing Special Master Freeh. *See* FED.R.CIV.P. 53(b)(1). Nor did the Special Master disclose to the members of The Andry Law Firm relevant relationships and conflicts when the members of The Andry Law Firm were interviewed. As noted in footnote 1, ALF objects to Special Master Freeh's appointment and authority in this matter.

9

authority to determine the relevancy of any information discovered during the course of his investigation.

Moreover, by making redactions and excluding documents based on his own sense of what is "relevant," the Special Master exceeded his authority under Rule 53.[11] As noted, *supra*, a special master is an officer of the court. He is not a litigant or advocate. But by denying and limiting discovery that is precisely what the Special Master – improperly – has become. *See People Who Care*, 111 F.3d at 540-41 (questioning the propriety of a special master who "participated [in a hearing] with the aid of a lawyer and did party-like things like seeking and resisting discovery").

Nor is the Special Master in a position to judge what documents are relevant to defending against his findings and recommendations. Indeed, as demonstrated in Section II, *infra*, the Special Master has used his authority to determine relevancy in this proceeding to withhold documents that are favorable to ALF. ALF should therefore be granted full discovery of all the documents to respond to the Court's *Order to Show Cause*.

### D. ALLOWING THE SPECIAL MASTER TO RELY ON REDACTED AND UNPRODUCED DOCUMENTS DENIES ALF DUE PROCESS.

Allowing Special Master Freeh to produce only a selective and edited version of the documents he has relied upon and provided to the Court in full is inconsistent with the adversarial process and any notion of due process. As explained in ALF's *First Motion to*

---

[11] Courts have consistently held that without explicit authorization stating otherwise, only a court, after in camera review, may redact documents. For example, the court in *In re Vitamins Antitrust Litigations* held that redaction of Special Master documents would only be permitted after an in camera review determined which documents were subject to attorney work product privilege. 211 F.R.D. 1, 2 (D.C. Cir. 2002). In that case, discovery decisions such as what materials were subject to redaction and whether parties had the right to entire documents were made by the court, not the Special Master. *Id.* at 4. The court reasoned that while the Special Master could make recommendations on what documents should be made available, since discovery powers had not been granted to the Special Master, only the court could interpret and apply Fed. R. Civ. Pro. 26. *See id.* at 5; *see also Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1176 (9th Cir. 2006); *In re Intel Corp. Microprocessor Antitrust Litigation,* 258 F.R.D. 280, 300 (D. Del. 2008).

*Compel*, the Fifth Circuit faced a similar deprivation of due process by a Special Master in *Ruiz v. Estelle*. The *Ruiz* court held that an "order of reference" appointing a Special Master under Rule 53 was "too sweeping" when it allowed "the special master to submit to the district court 'reports based upon his own observations and investigations in the absence of a formal hearing before him.'" 688 F.2d at 1162. According to the Fifth Circuit, allowing a Special Master to issue reports based on his own investigation, without providing the parties with a hearing at which they could challenge the Special Master's evidence and observations, "not only transcends the powers traditionally given masters by courts of equity, **but denies the parties due process**." *Id*. at 1163 (emphasis added). The Court therefore held that it was error to afford the Special Master's report any deference. *Id.*

Permitting Special Master Freeh to redact and withhold the documents that ALF must use to respond to the *Freeh Report* leads to the same constitutionally infirm result. The documents relied upon by Special Master Freeh, and provided to the Court in full, constitute the record in this case upon which the Court will base its final decision whether ALF's vested claim for over seven million dollars should be paid. These documents are no different from the record on appeal of a District Court decision, to which an appellant is undeniably entitled to access in full. To deny a person the very materials provided to the Court as the basis for the Special Master's decision is unprecedented and a clear denial of ALF's constitutional rights.

## II. SPECIAL MASTER FREEH HAS WITHHELD FAVORABLE INFORMATION THAT IS RELEVANT TO ALF.

ALF has reason to believe that the documents redacted and withheld by the Special Master contain information that is favorable to ALF, and demonstrate ALF's very clean hands. While Special Master Freeh and his staff conducted some 80 interviews (many of which were

11

transcribed), performed computer forensics, reviewed extensive emails and phone records,[12] searched laptops and mobile device hardware, issued subpoenas, and examined numerous other documents, Special Master Freeh has provided almost no statements or documents that are favorable to ALF. And the materials that have been provided ALF strongly suggest that favorable information has been heavily redacted or omitted entirely.

The deposition transcripts produced by the Special Master, for example, contain several glaring omissions. In Jon Andry's deposition, for instance, he was asked whether he had any conversations with members of the claims facility, "calling to their attention the fact that things were slow." SM-01-TALF00531. The Special Master has produced the beginning of his answer: "Yes. I had those – as I said before, I had those conversations. Anytime I would see anybody, I was like, please…." But the Special Master has failed to produce the rest of Jon's response. *Id.* The next five pages of Jon Andry's transcript have not been produced. *See* SM-01-TALF00531-00532.

The Special Master has produced only two pages of Patrick Juneau's deposition and that brief excerpt is abruptly cut-off after Juneau admits that "we get pushed all the time by people. Claimants push us, people – politicians push us, everybody pushes us." SM-01-TALF00553. The remainder of Juneau's deposition, including any additional facts about how often the CSSP was "pushed" by claimants and their attorneys—the only allegation of wrongdoing alleged against ALF—has been withheld. Likewise, Lionel Sutton's answer to the question, "Do you remember speaking to [Mr. Andry] on the phone about the *Thonn* claim," was completely omitted by the Special Master. SM-01-TALF00564. Also omitted is email correspondence—

---

[12] Although referenced in the *Freeh Report*, none of the actual phone records and none of the records of Lionel Sutton accessing the claims database were produced to ALF. Instead, the Special Master produced what appears to be his own summaries of those records. *See* SM-01-TALK00476–507. The Special Master's summaries of the records, however, do not constitute evidence in this proceeding, any more than the *Freeh Report* itself.

12

known to ALF— between Mr. Sutton and Mr. Lerner that "Nothing" could be done to expedite claims before the CSSP.

Upon information and belief, the Special Master has also failed to produce or redacted several favorable interviews of Andry Lerner, LLC employees, including Christina Mancuso, Kailey LeBoeuf, Scott Stevenson, and Mary Rubio.  Each of these witnesses was represented at their interviews by James A. Cobb, Jr., Esq., attorney for Andry Lerner, LLC.  Counsel has spoken to Mr. Cobb, who confirmed that he asked each of these employees whether they attempted to influence any claims pending before the CSSP, and whether they had ever heard of any Andry Lerner, LLC employee attempting to influence any claims pending before the CSSP.  Each of these witnesses answered "no" to these questions, according to Mr. Cobb.  ALF has not received any transcripts, witness statements, or notes from these witnesses that reflect those responses.  Indeed, the only one of these witnesses that Special Master Freeh produced a witness statement for is Ms. Mancuso.  Her statement is heavily redacted and does not reflect Mr. Cobb's line of questioning.  *See* SM-01-TALF00386–388.  No witness statements or transcripts—redacted or otherwise—have been produced for Ms. LeBoeuf, Mr. Stevenson, or Ms. Rubio.

Mr. Cobb was present for Casey Thonn's interview as well and asked Mr. Thonn whether he was ever told or learned that Andry Lerner, LLC had any special influence at the CSSP.  Although Mr. Thonn denied ever being told that Andry Lerner LLC influenced his claim, this response is not reflected in his heavily redacted witness statement produced to ALF.  *See* SM-01-TALF00364–369.

Most incredibly, no transcript or witness statement for ALF principal Gibby Andry has been provided at all—not even in redacted form.  During Gibby's interview he was asked directly by counsel whether he ever asked Lionel Sutton to manipulate ALF's claim.  Mr. Andry

13

answered "no" to this question. Further, Gibby explained that he only called Lionel Sutton as a claimant for periodic updates on ALF's claim. Somehow the Special Master has determined that these response are in no way relevant to the Special Master's accusation that ALF has "unclean hands," and has completed omitted Mr. Andry's statement from ALF's production.[13]

These redactions and omissions substantially call into question the Special Master's ability to determine whether information from his investigation is relevant to ALF's defenses. The redacted and omitted information described above is highly relevant to ALF, and favorable to ALF's position that its BP claim is legitimate and should be paid. That these materials have been omitted by the Special Master indicates that the Special Master has either taken an overwhelmingly restrictive view of relevancy in this matter, or has purposefully withheld information that is favorable to ALF. In either event, all of the documents relied upon by the Special Master should be produced to ALF in their un-redacted form. Only then can ALF meaningfully respond to this Court's *Order to Show Cause.*

---

[13]  The Special Master has also failed to provide Special Master associate Gregory Paw's statement, at Gibby Andry's interview, that the Special Master was not tasked with evaluating or reevaluating ALF's BEL claim.

## **CONCLUSION**

The Special Master's report makes serious allegations against ALF and recommends that ALF's legitimate claim for more than seven million dollars, which has been due and owing since June 18, 2013, be denied. The Special Master and his staff had over two months to conduct their investigation and prepare the ninety-six page report that lays out its allegations and insinuations. In that report, the Special Master selectively refers to documents that ALF has not had full access to—documents that ALF needs to properly file objections to the *Freeh Report*.

Although the Special Master has produced some of the documents allegedly supporting the recommendations made in his report, large portions of these documents have been redacted by Special Master Freeh, because he concluded such information was not relevant. A review of the documents produced by Special Master Freeh strongly suggests that relevant and favorable information has been redacted or omitted entirely. The only way to ensure that ALF is provided with all relevant documents, and with due process of law, is for this Court to compel the Special Master to produce complete copies of all documents underlying his report. ALF therefore requests that the Court order the Special Master to turn over all information relevant to ALF gathered during the course of his investigation, including the redacted portions of the documents already produced.

Finally, because ALF has not been provided with all of the documents underlying the *Freeh Report*, it cannot fairly or informatively object to the Special Master's findings and recommendations by the October 18, 2013 deadline previously set by the Court. Accordingly, ALF respectfully requests an additional twenty-one days from the date that it receives access to all of the evidence gathered by the Special Master in order to file motions, assert objections and respond.

Respectfully submitted,

*/s/ Kyle D. Schonekas*
Kyle D. Schonekas, 11817
William P. Gibbens, 27225
Ian Atkinson, 31605
SCHONEKAS, EVANS, MCGOEY
& MCEACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, Louisiana  70112
Telephone:  (504) 680-6050
Fax:  (504) 680-6051
kyle@semmlaw.com
billy@semmlaw.com
ian@semmlaw.com

Attorneys for The Andry Law Firm, L.L.C.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing motion has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 8th day of October, 2013.

*/s/ Kyle D. Schonekas*
Kyle D. Schonekas