UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re:  Oil Spill by the Oil Rig
         "DEEPWATER HORIZON" in the Gulf          MDL No. 2179
         of Mexico, on April 20, 2010

                                                  SECTION: J
These Pleadings apply to:  *All Cases*

                                                  JUDGE BARBIER
(Including Nos. 10-2771 and 10-4536)              MAGISTRATE SHUSHAN

PLAINTIFFS' REPLY TO
HESI'S OPPOSITION TO PLAINTIFFS' MOTION TO SUPPLEMENT THE RECORD

The Plaintiffs and Claimants-in-Limitation, including the States of Alabama and Louisiana ("Plaintiffs"), reply to HESI's arguments against our Motion for Leave to Supplement and Supplemental Brief on pages 2-5.  But we start by noting what HESI *did not* say in response.

I.    HESI Fails to Explain Why It Withheld Evidence That Badalementi Ordered Subordinate Employees to Destroy Evidence Until After Phase One Closed.

Plaintiffs accused HESI of knowing that Badalementi ordered two subordinates to destroy the D3D modeling results when HESI told this Court in Phase One briefing that there is "*no evidence* that HESI or its employees concealed or destroyed evidence."  Doc. 11512 at 4. ("HESI surely knew it was false when HESI said it.").  Tellingly, HESI does not deny it.

To the contrary, HESI lauds itself for telling Federal Investigators about the destruction "as soon as it learned about it," Doc. 11573 at 5, and claims that the Parties should have figured it out in December 2011 when HESI disclosed the following: "The results were shown to Badalementi and Roth.  The models were deleted from Bedford and Savery's computers, but can be replicated by using the same inputs that were originally used by Gagliano in his OptiCem report."  *Id.* at 5-6 (quoting Doc. 4961 at 14).  But this alleged "disclosure" in 2011 fails for two

1

reasons. First, HESI withheld the detail that was relevant to Plaintiffs' punitive damage claim: A HESI director **ordered his subordinates** to delete the modeling.[1] Second, HESI denied the destruction of any evidence for the next 19 months—*i.e.* through the close of Phase One.

It is clear: HESI withheld this information for more than a year, and HESI's withholding prevented Plaintiffs from questioning Badalementi and others about the destruction orders in Phase One. HESI's withholding of this relevant evidence until Phase One closed is further proof of a broken corporate culture that stretches from before the incident through trial. *See Hundley v. Rite Aid*, 529 S.E. 2d 45, 62 (S.C. App. 2000) (finding that Rite Aid's "abusive and obstructionist" trial conduct "indirectly add[ed] credibility to the argument that Rite Aid's pre-incident approach to quality assurance reflected a conscious indifference to the safety of others").

**II.**     *Motion to Supplement*: **HESI's Admissibility Argument Is Non-Responsive to Plaintiffs' Use of the Conviction-Related Evidence.**

HESI spends most of its response attacking the weight of the conviction-related evidence in light of *P&E Boat Rentals* (Parts B-G), not attacking its admissibility under the Rules of Evidence (Part A). In its section regarding admissibility, HESI admits the conviction-related evidence is authentic. Doc. 11573 at 2. HESI then ignores Plaintiffs' argument that the conviction evidence is relevant to our maritime punitive damage claims, and instead rebuts BP's argument that the destroyed D3D modeling results were relevant to the '6 vs. 21 centralizer' issue, *Id.* at 2-3, a relevancy argument that Plaintiffs do not make. *See* Doc. 11512 at 4 n.2.

Because HESI does not challenge the Court's authority to re-open the record under FRE 201 or the relevancy of the evidence with regard to Plaintiffs' maritime claims under FRE 401,

---

[1] In its response to BP's motion to supplement, HESI acknowledges that "the Plea Agreement may provide more details relating to the deletion of the modeling than BP may have previously known." Doc. 11571 at 14.

the Court should grant Plaintiffs' motion for leave to supplement and focus its review on whether

the conviction-related evidence further proves HESI's liability for punitive damages.

III.   *Supplemental Brief*:  HESI's Various Attempts to Divorce Evidence of its Conviction from Its Punitive Liability Fail.

A.  HESI's Reliance on "Unauthorized" Fails Because HESI, not its Employee, Was Convicted of Destroying Evidence.

HESI tries to wash its hands of responsibility by claiming that its Cementing Technology

Director's (Badalementi) orders to destroy evidence were "unauthorized" by the company.  Doc.

11573 at 5-6.  But this defense is estopped because HESI the corporation, not Badalementi the

employee*,* was convicted of destroying the evidence.  Put another way, the evidence Plaintiffs

offer shows that HESI, not Badalementi (or at least through Badalementi), destroyed evidence.

In *Lake Shore v. Prentice*, upon which *P&E Boat Rentals* relies, *see* 872 F.2d 642, 651-

52 (5th Cir. 1989), the Supreme Court declared that

> No doubt, a corporation, like a natural person, may be held liable in exemplary or punitive damages for the act of an agent within the scope of his employment, ***provided the criminal intent***, necessary to warrant the imposition of such damages*, **is brought home to the corporation***.

147 U.S. 101, 111 (1893) (emphasis added).  Nothing brings criminal intent home to the

corporation like the corporation pleading guilty to the crime.  Thus, under *Lake Shore—*and by

extension *P&E Boat Rentals*—the HESI corporation is responsible for the criminal acts of its

Cementing Technology Director.

B.  Badalementi Is a Corporate Official under *P&E Boat Rentals*.

Along the same lines, HESI argues that the conviction evidence is irrelevant under *P&E*

*Boat Rentals* because Badalementi was not "a corporate officer or policymaker." Doc. 11573 at

4-5.  Again, the simple response is that Badalementi sat high enough up the corporate ladder to

force the corporation to plead guilty to his criminal actions. The Fifth Circuit's rationale in *P&E*

*Boat Rentals* supports this view:

> These objectives [of punitive damages] are not achieved when courts drop the punitive damage hammer on the principal for the wrongful acts of the simple agent or lower echelon employee. As McCormick states: "There would seem to be little justification for punishing the master for willfulness or wantonness of which the agent is alone guilty." C.T. McCormick, *Handbook on the Law of Damages* § 80 at 282 (1935).

872 F.2d at 652.   That HESI pleaded guilty shows that (a) Badalementi's orders to destroy

evidence were not a crime for "which the agent alone [was] guilty," and thus (b) Badalementi

was not merely a "simple agent or lower echelon employee," but a corporate official.  *Id.*

### C. Plaintiffs Do Not Have to Show that HESI's Destruction of Evidence Was a Cause of the Blowout for HESI's Conviction to Be Relevant to Punitive Liability.

HESI's argument that Plaintiffs fail to establish a causal link between the blowout and

HESI's destruction of the D3D modeling is a red herring.  *See* Doc. 11573 at 9-10.  Plaintiffs do

not argue that HESI's post-incident destruction of the D3D modeling, in isolation, establishes

liability for punitive damages under maritime law.  Plaintiffs argue that HESI's destruction of the

modeling is *additional proof* of two, independent punitive arguments that do have a causal link:

(1) After the incident, HESI ratified Gagliano's reckless cement job, which was a cause of the

blowout, and (2) HESI has a broken corporate culture, which was a cause of the blowout.

### D. HESI's Trial Defense is Proof of Ratification that Opens the Door to Punitive Liability.

Plaintiffs' ratification argument is as follows:  (1) Gagliano performed a reckless cement

job; (2) the cement job was a cause of the blowout; and, (3) HESI ratified Gagliano's cement job

after the blowout, thereby making HESI punitively liable for the cement job if the Court finds

that the cement job was reckless (grossly negligent, etc.). Contrary to HESI's claim, Doc. 11573

at 6, finding ratification in HESI's trial defense is a fundamental principle of agency law:

- *Restatement (3rd) of Agency § 4.01, comment (h)*:  "A position that the principal takes as a defendant in litigation will ratify an agent's unauthorized act when the position is justifiable only on the assumption that the principal consents to the agent's act."

- *3 Am. Jur. 2d Agency § 180*:  "[R]atification of an agent's unauthorized act can be shown by bringing an action or basing a defense on the unauthorized act with full knowledge of the material facts."

This rule has two bases.  First, a company's post-incident declaration that an employee's actions were correct and fell within company standards is the functional and legal equivalent of the company's pre-incident authorization of the actions.   Second, a company's response to an employee's gross negligence is a window into the corporate soul.  Responsible companies admit their employees' gross negligence and take corrective action *to prevent future incidents and protect the public*.  Irresponsible companies admit no error; take no corrective action; and defend their employees' gross negligence *to protect the company.*  So nothing changes.  This is the broken corporate culture that punitive damages are designed to correct; the broken culture that HESI demonstrates by claiming zero error and withholding/destroying evidence to the contrary.

HESI contends that "ratification by defense" would lead to a "finding of liability for punitive damages for *any* company that defends itself." Doc. 11573 at 6.  But the seminal Supreme Court cases prove that isn't true, when the defense is honest.  The Defendant in *The Amiable Nancy* admitted that its crew performed some "improper acts" and were "punished for their conduct" by the company. 16 U.S. 546, 550 (1818).  Similarly, the Defendant in *Lake Shore* "admitted in open court 'that the arrest of the plaintiff was wrongful, and that he was entitled to recover actual damages.'" 147 U.S. at 111.  Neither Defendant was found to be punitively liable.

HESI has chosen a different path; it has chosen to embrace and protect Gagliano's actions, rather than to admit and correct Gagliano's failings.  As a result, HESI has embraced Gagliano's gross negligence as HESI's own gross negligence, thereby opening the punitive door.

5

Respectfully submitted,

/s/   Stephen J. Herman

**Stephen J. Herman**, La. Bar No. 23129
**HERMAN HERMAN & KATZ LLC**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax. No. (504) 569-6024
Email: sherman@hhklawfirm.com
*Plaintiffs Liaison Counsel*

/s/ James Parkerson Roy

**James Parkerson Roy**, La. Bar No.11511
**DOMENGEAUX WRIGHT ROY
   & EDWARDS, LLC**
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233-3033
Fax No. (337) 233-2796
E-Mail: jimr@wrightroy.com
*Plaintiffs Liaison Counsel*

## THE STATE OF ALABAMA

**The Honorable Luther Strange**
*Attorney General*
/s/   Corey L. Maze                    .
**Corey L. Maze**
*Special Deputy Attorney General*
**Winfield J. Sinclair**
*Assistant Attorney General*
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, AL  36130
Phone: (334) 353-4336
E-Mail: cmaze@ago.state.al.us
*Counsel for the State of Alabama,*
*and Coordinating Counsel for the States*

## THE STATE OF LOUISIANA

The Honorable James D. "Buddy" Caldwell
*Attorney General*
P.O. Box 94005
Baton Rouge, LA 70804-9005
Telephone: (225) 326-6708

Allan Kanner
/s/   Allan Kanner             .
Douglas R. Kraus
KANNER & WHITELEY, LLC
701 Camp Street
New Orleans, LA 70130
Telephone: (504) 524-5777
*Counsel for the State of Louisiana, and*
*Co-Coordinating Counsel for the States*

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing Motion have been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on October 10, 2013.

s/  Corey L. Maze            .