UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * * * * | MDL NO. 2179<br><br>SECTION: J |
| THIS DOCUMENT RELATES TO ALL CASES | * | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

******************************************************************************

**BP'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO SUPPLEMENT THE RECORD REGARDING HALLIBURTON'S POST-TRIAL GUILTY PLEA AGREEMENT**

BP respectfully submits this reply in support of its motion for leave to supplement the record regarding Halliburton's post-trial guilty plea agreement (Rec. Doc. 11005). Halliburton's voluminous response to BP's five-page memorandum attempts to complicate, confuse, and distract from the issues raised by BP's straightforward motion. Rather than responding to each of Halliburton's irrelevant arguments, this reply brief focuses on the four basic points underlying BP's motion:

**I.   Information Revealed By The Plea Agreement Was Unavailable To BP Before Trial**

Halliburton's Plea Agreement revealed previously-unknown factual details of Halliburton's repeated and deliberate destruction of relevant modeling results. Among other things, Halliburton's plea revealed that the scope of Halliburton's spoliation was greater than previously disclosed; indeed, four simulations were deleted at different times pursuant to separate instructions by Halliburton managers. (Rec. Doc. 11005-1 at 4.) The plea further revealed that—contrary to Halliburton's representations to this Court—the spoliation was not isolated, accidental, or irrelevant; instead, the destruction was done deliberately and intentionally, pursuant to instructions by Halliburton's Technology Director, who was previously

warned of his preservation obligations, after he and other Halliburton managers reviewed the modeling results. (*Id.* at 5.)

Halliburton does not dispute that this information was unavailable before trial but argues that BP should have deduced it earlier or that it is irrelevant. Halliburton's argument fails.

*First*, the contention that BP should have known that four models were deleted is contrary to Halliburton's own representations to the Court. In its Order on BP's earlier motion for spoliation sanctions, the Court stated: "Halliburton and BP shall meet-and-confer on whether the modeling can be replicated." (Rec. Doc. 5307 at 3.) When BP then complained that the Halliburton-directed process recreated two models instead of one, Halliburton told the Court that the "process yielded *an exact duplicate* of the 3D modeling that was previously performed" and that "[a]lthough the May and/or June 2010 modeling could not be recovered, identical modeling was recreated <u>at BP's request</u>." (Rec. Doc. 11571-1 at 19, 23 (Ex. 4) (emphases in original).) Halliburton did not inform the Court or BP that only a portion of the modeling was recreated. Given Halliburton's representations regarding the two recreated models, BP could not have known that four models were deleted.

*Second*, Halliburton does not contest that information about the timing of the multiple deletions is new, but instead argues that it is immaterial. But multiple systematic deletions support a finding that the spoliation was not isolated or accidental: the plea shows that Halliburton's Technology Director repeatedly ordered the destruction of evidence with knowledge of its wrongfulness.

*Third*, Halliburton admits that "the Plea Agreement may provide more details relating to the deletion of the modeling than BP may have previously known" but argues this is not "new" information because BP "has consistently alleged that the unauthorized deletions constitute

'purposeful destruction' and 'malfeasance.'" (Rec. Doc. 11571 at 14.) But allegations do not constitute evidence, and the Plea Agreement now provides evidence to confirm BP's allegations. The plea reveals that Halliburton's Technology Director ordered modeling of the Macondo well cement job, reviewed the results, and "then directed Program Manager to delete the results *even though [he] had been instructed ... to preserve material related to the Macondo well*." (Rec. Doc. 11571-1 at 38 (Ex. 6 at ¶¶8-9).) The Program Manager deleted the models by taking deliberate actions: deleting the relevant files from his computer and then deleting them again from the computer's "Recycle Bin." (*Id.*) The modeling, review, order to delete and deletion was then *repeated* with a second, more-experienced Halliburton employee. (*Id.* at ¶10.) Until now, Halliburton has never acknowledged this purposeful course of action.

## II.     The Destroyed Modeling Was Highly Relevant

Halliburton's own actions establish that the Plea Agreement discloses new and material information. If all of the facts in the plea were already known and addressed in the Phase 1 record through trial, then Halliburton would not have felt the need to submit a six-page affidavit in an effort to explain away the deleted modeling. (Rec. Doc. 11571-1 at 41-46 (Ex. 7).) Further, Halliburton's relevance argument is belied by the fact that Halliburton's Cementing Technology Director requested the modeling as part of Halliburton's post-incident investigation, reviewed the results, and then directed that the results be destroyed, despite being on notice of the need to preserve this evidence.

## III.    The Government Press Release Is Not Hearsay As To The Government

Whether an indictment or information is inadmissible hearsay in civil litigation is not the issue here. The Government's press release, in which the Government describes the results of the destroyed modeling and confirms that the destroyed modeling "indicated that there was little

3

difference between using six and 21 centralizers," is not an information or indictment. (Rec. Doc. 11005-3 at 2.) Instead, the press release is a separate document that the Government issued publicly and, at minimum, is admissible and not hearsay when offered as an admission against the Government, which is a party in this proceeding. Fed. R. Evid. 801(d)(2). Halliburton's cases are inapposite as they address situations where the Government was not an opposing party and the courts did not analyze whether the Government statements were party admissions.

## IV.     The Requested Adverse Inferences Are Supported

The requested inferences are based on the totality of Halliburton's discovery misconduct, as outlined in BP's previous motions and further supported by the new facts revealed in the Plea Agreement. (*E.g.* Rec. Doc. 8977, 9041.) Halliburton's response fails to address the nexus between its previously-acknowledged misconduct and the newly revealed facts, and Halliburton's reliance on the trial record is misguided because the evidence in the Plea Agreement was not known until after the trial.

Likewise, Halliburton's argument that BP cannot complain about the deleted Displace 3D modeling because it did not introduce the recreated modeling at trial is misplaced. In its pre-trial briefing, BP explained how Halliburton improperly directed and influenced the recreation process through *ex parte* communications with the engineering firm doing the recreation. BP asked the Court to exclude the recreated modeling and to order Halliburton to pay BP's costs for the attempts to recover and recreate the deleted modeling. (Rec. Doc. 11571-1 at 13 (Ex. 1).) The Court granted both of BP's requests. (Rec. Doc. 7127.)

It is undisputed that the failed cement job was part of a causal chain that led to the blowout. As revealed by the Government's press release, the results of the deleted modeling confirm that the cement job failure occurred by a mechanism other than channeling due to the

4

number of centralizers. The only explanation consistent with the evidence and Halliburton's course of repeated evidence spoliation (including the spoliation of post-incident testing and cement blend from the *Deepwater Horizon*) is that Halliburton's cement design was unstable and caused the cement failure that allowed hydrocarbons to enter the well. As such, BP's requested adverse inferences are supported.

## Conclusion

Based on the foregoing reasons and those set forth in BP's opening brief, the Court should grant BP's motion (Rec. Doc. 11005), include Exhibit 1 (Guilty Plea Agreement) and Exhibit 2 (Government press release) in the evidentiary record, and issue an order consistent with the evidentiary findings requested in BP's motion.

October 10, 2013					Respectfully submitted,

                                         /s/ Don K. Haycraft
                                         Don K. Haycraft (Bar#14361)
R. Keith Jarrett (Bar#16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

J. Andrew Langan, P.C.
Matthew T. Regan, P.C.
Hariklia Karis, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-2000 (Tel)
312-862-2200 (Fax)

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

*Attorneys for Defendants BP Exploration & Production Inc. and BP America Production Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 10th day of October, 2013.

/s/  Don K. Haycraft