```
CC: "Cantor, Daniel A." <Daniel.Cantor@APORTER.COM>,
"jandry@andrylawgroup.com" <jandry@andrylawgroup.com>
Subject: BP's Initial Proposal - Claim No. 19691 - Casey Thonn
Date: Thu, 24 Jan 2013 20:18:56 -0500
To: "DDuval@dheclaims.com" <DDuval@dheclaims.com>, "jgoodwin@browngreer.com"
<jgoodwin@browngreer.com>,
"ClaimForms@deepwaterhorizoneconomicsettlement.com"
<ClaimForms@deepwaterhorizoneconomicsettlement.com>
From: "Warlick, Sarah E." <Sarah.Warlick@aporter.com>
Transaction Date (UTC): 2013-01-25 01:20:05
Original Requestor: Sarah.Warlick@aporter.com
```



Mr. Duval,

Please find enclosed BP's Initial Proposal with respect to the appeal of claim number 19691 - Casey Thonn.

Kind regards,
Sarah

Sarah E. Warlick
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004-1206
Telephone: +1 202.942.6409
sarah.warlick@aporter.com<mailto:sarah.warlick@aporter.com>
www.arnoldporter.com<http://www.arnoldporter.com>

---

U.S. Treasury Circular 230 Notice

Any U.S. federal tax advice included in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding U.S. federal tax-related penalties or (ii) promoting, marketing or recommending to another party any tax-related matter addressed herein.

---

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

---

For more information about Arnold & Porter LLP, click here :
http://www.arnoldporter.com



EXHIBIT F

## BP'S INITIAL PROPOSAL REGARDING CLAIM NO. 19691

### INTRODUCTION

BP Exploration & Production Inc. ("BP") respectfully submits this Memorandum in Support of Its Initial Proposal with regard to the appeal of Claim No. 19691 (Claimant Casey Thonn). The Settlement Program issued its original Eligibility Notice awarding the Claimant a Compensation Amount of $83.10 on November 6, 2010. Following the Claimant's Request for Reconsideration, the Settlement Program revised its calculation and issued a Compensation Amount of $22,932.00. The Claimant then filed this Appeal on January 7, 2013.

In his appeal, Claimant argues that (1) the Settlement Program incorrectly applied the Seafood Compensation Framework's Shrimp Compensation formula, (2) the Settlement Program deducted Claimant's prior seafood-related payment twice, and (3) the Settlement Program did not accurately calculate the Claimant's Accounting Support Reimbursement.

The Settlement Program properly calculated Claimant's Award Amount. BP, therefore, submits an Initial Proposal Compensation Amount of $22,932.00 and Initial Proposal Prior Payment Offset of $72,500. Although BP agrees that the Settlement Program miscalculated the Claimant's Accounting Support Reimbursement, the Claimant is only entitled to $1,000, not the more than $10,000 it is requesting.

### EXPLANATION OF BP's POSITION

The claim at issue is a Seafood Program shrimp boat captain claim for the vessel Boss Hoss (Hull ID LAZ62111E101). This claim is governed by the Seafood Compensation Framework's Shrimp Compensation Plan (the "Plan"). Settlement Agreement, Exhibit 10.

A.  The Settlement Program Correctly Calculated Claimant's Compensation Amount

1

The Plan requires a vessel owner seeking compensation under the Historical Revenue Method, like this Claimant, to provide evidence to demonstrate his or her commercial shrimping revenue during the selected Benchmark Period. Settlement Agreement, Ex. 10 at 18-19. The Settlement Agreement is clear that a claimant must substantiate its claimed losses by submitting, among other things, (a) "[t]rip tickets or their equivalents" or (b) "[f]ederal or state tax and financial information . . . to identify components of gross revenue derived from commercial shrimp harvesting by vessel for the Benchmark Period for each vessel for which the Claimant submits" a claim. *Id.* at 19. The Settlement Program uses this financial data to determine the claimant's Benchmark Shrimp Revenue, which is the basis for determining the Claimant's claimed losses resulting from the Spill. *Id.* at 21.

The Benchmark Shrimp Revenue can be based on either a Claimant's gross revenue or a Claimant's earnings. According to the Plan, "[t]he Claims Administrator may determine the *gross vessel revenue* or Boat Captain *earnings* from shrimp landings in the Gulf Coast areas based on the Claimant's tax returns...." *Id.* (emphasis added). The Benchmark Revenue figure is then inputted into a formula to arrive at a Total Adjusted Benchmark Shrimp Revenue. *Id.* at 21-22.

The Settlement Program must then determine the amount of costs, if any, to deduct from a claimant's revenue. If the Settlement Program used a claimant's *gross revenue* as its Benchmark Revenue, then it must calculate a Claimant's Benchmark Costs. *Id.* at 22. The Shrimp Cost Percentage is used to determine a Claimant's Benchmark Shrimp Cost. *Id.* According to the Plan, the Shrimp Cost Percentage is "expressed as a percentage of revenue and reflects standard industry non-labor variable costs." The resulting Benchmark Shrimp Cost is then subtracted from the Claimant's gross revenue. However, if a claimant's earnings are used

2

for Benchmark Revenue, the Program does not need calculate or subtract any additional costs. *Id.* This makes economic sense. Gross revenue is a claimant's revenue before any deductions for variable costs are applied. A claimant's earnings, on the other hand, already include deductions for these costs and do not need to have additional costs subtracted from them.

The Claimant is arguing that simply because he is a Boat Captain and he used tax returns for his financial data that the Shrimp Cost Percentage should not be used to calculate and then deduct Benchmark Costs for his claim. This is contrary to the plain language of the Settlement Agreement. The Settlement Agreement states that the Benchmark Cost calculation should only be skipped if, "the Claimant is a Boat Captain **and** Benchmark Revenue was calculated based upon his **earnings**, such as from tax return[s] or financial information." *Id.* (emphasis added). Here, the Settlement Program used Claimant's *gross revenue* of $156,000, indicated on his 2009 federal tax return as "Gross receipts," to calculate Claimant's Benchmark Revenue. Claimant's 2009 Form 1040, Schedule C, attached hereto as Exhibit 1. The Settlement Program, therefore, properly applied the Shrimp Cost Percentage to Claimant's Benchmark Revenue to determine and then subtract Claimant's Benchmark Costs from his gross revenue.[1]

B.  The Settlement Program Properly Deducted Claimant's Prior Seafood Spill-Related Payments

According to the Seafood Compensation Framework, "[c]ompensation received by an eligible Claimant under the Seafood Compensation Program will be reduced by the amount of prior Seafood Spill-Related Payments...." Settlement Agreement, Ex. 10 at 3. In order to apply this requirement, the Settlement Agreement instructs that "[t]he Claims Administrator shall offset any compensation under the Seafood Compensation Program by the total of the Seafood

---

[1] The accounting report submitted with Claimant's original claim is also in agreement with the Settlement Program's calculation. *See* Coastal Claims Group Report at 8, attached hereto as Exhibit 2.

3

Spill-Related Payment amount." *Id.* at 85. The Agreement defines Seafood Spill-Related Payments as "compensation paid to a claimant through the OPA Process, by BP, the GCCF, or through the Transition Facility for economic loss claims relating to Seafood." *Id.* at n. 3.

In his Appeal, the Claimant asserts that the Settlement Program applied his prior payment offset twice. Indeed, the Eligibility Notices for Claimant's Boat Captain Claim (No. 19691) and Vessel Owner Claim (No. 19690) both include a prior payment offset of $72,500. BP agrees that this offset should only apply once. BP notes that the Settlement Program has corrected this error in the Claimant's Post-Reconsideration Eligibility Notice for Claim 19691. According to the "Summary of All Eligible Seafood Compensation Program Claims," the prior payment offset has only been applied once.[2]

C. The Claimant is Only Entitled to Accounting Support Reimbursement of $1,000

The Settlement Agreement provides for Accounting Support Reimbursements to reimburse claimants for "reasonable and necessary accounting fees related to Claims preparation." Settlement Agreement § 4.4.13. The calculation of a Claimant's reimbursement depends on whether the Claimant is a business or an individual. *Id.* at §§ 4.4.13.7-8. A Business Claimant's reimbursement, "may not exceed 2% of the total Economic Damage Compensation Amount (excluding RTP) for business Claims over $50,000 with all other Claims limited to $1000." *Id.* at 4.4.13.8. A Business Claimant is defined as, "an Entity, or a self-employed Natural Person who filed a Form 1040 Schedule C, E or F, which or who is an Economic Class Member Claiming Economic Damage allegedly arising out of...the Deepwater Horizon Incident." *Id.* at § 38.15.

---

[2] If the offset of $72,500 has been applied to a prior Award received by the Claimant, BP agrees that it should not be applied here. However, if it has not been applied to any prior Award, BP submits that the offset should apply to this claim.

4

The Claimant asserts that he is a Business Claimant, because he filed a Form 1040 Schedule C for his shrimping business. The record evidence indicates that Claimant filed a Schedule C and is, therefore, entitled to accounting support reimbursement as a Business Claimant. According to the Claimant's Memorandum in Support of its Appeal, it is seeking reimbursement of $10,562.50 in fees for claim preparation work for Claimant's Boat Captain claim. *See* Coastal Claims Invoice, attached hereto as Exhibit 3. In its Post-Reconsideration Eligibility Notice, the Settlement Program identified $1,161.25 in reimbursable fees for this claim. As a Business Claimant with a pre-RTP Compensation Amount of less than $50,000, reimbursement is capped at $1,000. Therefore, BP submits that Claimant is eligible for an Accounting Support Reimbursement Payment of $1,000.

\*\*\*

In light of the above, BP agrees with the Settlement Program's calculation of Claimant's Compensation Amount. BP, therefore, submits an Initial Proposal Compensation Amount of $22,932.00, the amount the Claimant is entitled to according to the terms of the Settlement Agreement's Seafood Compensation Framework. Additionally, BP agrees that Claimant's Prior Seafood Spill-Related Payments should only be deducted once, but without evidence that these payments have been deducted from other Claims for which the Program has issued payment, BP submits an Initial Proposal Prior Payment Offset of $72,500. Finally, BP submits that Claimant is entitled to Accounting Support Reimbursement of $1,000.

5