IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * | MDL No. 2179 |
| | * | SECTION "J" |
| THIS DOCUMENT RELATES TO 12-970 | * | HONORABLE CARL J. BARBIER |
| | * | MAGISTRATE JUDGE SHUSHAN |

* * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF MOTION FOR INFORMATION TO DETERMINE POTENTIAL REQUEST FOR RECUSAL OF SPECIAL MASTER

Once Freeh started, then Jon Andry, Glen Lerner and Andry Lerner became involved entities and qualify as parties.  They had the right to know and Freeh the duty to provide full knowledge of conflicts.  Once a Special Master accepts appointment, then he assumes the duties and obligations of a judicial officer.  *Hoffman v. EMI Resorts*, 689 F.Supp. 2d 1361 (S.D., Fla.).

28 U.S.C. §455 applies.  The cases require an intensive level of disclosure.  *Easley v. University of Michigan*, 853 F.2d 1351, *Barksdale v. Emerick*, 853 F.2d 1359, *Potashnick v. Port City Construction*, 609 F.2d 1101.

> "A Judicial Officer must be disqualified from any proceeding in which his impartiality might reasonably be questioned by one fully apprised of the surrounding circumstances."  *Sao Paulo State v. American Tobacco, Inc.*, 535 U.S. 229

The same ethical restrictions apply to the Special Master.  *Cobell v. Norton*, 334 F.3d 1128 (D.C. Cir. 2003).  Code of Conduct for United States Judges, Federal Rules of Civil Procedure 53, Advisory Committee Notes '03 Amendments.

> "Special care must be taken to ensure that there is no actual or apparent conflict of interest involving a Master."

There are difficult but bright lines rules.  28 U.S.C. §455b(4) uses the term "shall also disqualify."

> "(4) He knows that he individually, or as a fiduciary, or his spouse, or minor child residing in his household, has a financial interest in the subject matter in controversy, or in a party to the proceeding, or **any other** interest that could be substantially affected by the outcome of the proceeding.

> "A judge should inform himself about his personal and fiduciary financial interest ... as has been said many times, justice must satisfy the appearance of justice." *In Re: Murchinson*, 349 US 133, 75 S.Ct. 623 (1955).

According to the Special Master, in his disclosures, he and his various economic interests have close ties to the principle BP law firm and to BP itself.  Kirkland & Ellis has appeared for BP throughout this case.

What is not disclosed is:

1. The prior number of cases Freeh Group or Pepper Hamilton has with Kirkland & Ellis.

2. The economic consequences to the Freeh Group or Pepper Hamilton of the past and current associations.

3. The current status of the ongoing cases.

4. The lines of authority in these cases, i.e. does Freeh / Pepper Hamilton report to Kirkland & Ellis or vice versa or are they equal.

5. The Freeh Group advertises for this type of work.  Does it currently have proposals to Kirkland & Ellis or clients of Kirkland & Ellis it knows will rely on Kirkland & Ellis for advise.

6. The pre-special master contacts between Freeh Group and Pepper Hamilton attorneys and Kirkland & Ellis attorneys.

7.      The amounts of money anticipated to be received by Freeh Group or Pepper Hamilton as a result of this appointment which ultimately must be approved and paid by BP.

8.      The exact and complete details on the relationship between Freeh and Judge Sporkin, the partner who serves as ombudsmen for BP.

This is an illustrative list.  A simple analogy is the type of disclosure a federal court requires of an expert witness.  Here the sparse information Freeh provides could not put the Andry interests on notice and they were not allowed to object on this issue because at that time they had no legal standing.

Now they surely do.

The **duty** was on the Freeh Group to advise the Andry interests of all these facts and any others that Freeh would know to be relevant.  The report Freeh writes says on page 86 citing Louisiana case law:

> "1)   the requirement of full disclosure serves to protect the client by putting him on notice of the attorney's financial interest in the case.  (This is in his reference to Rule 1.5, but is clearly applicable in spirit.)
>
> 2)     Truth is not a matter of convenience.  Sometimes lawyers may find it inconvenient, embarrassing, or even painful to tell the truth.  A material fact is one whose existence or non-existence is "essential" to a resolution of the matter."

Applying the Freeh rules to Freeh, he had a duty to the Andry interest to tell them all about the relationship that might appear to a reasonable person to require that he disqualify himself in "any proceeding in which his impartiality might reasonably be questioned."

Freeh's Affidavit does not contain the necessary detail or information needed to put one on notice of the serious conflicts.  Freeh Group International Solutions, which he is the

Chairman, is owned by Pepper Hamilton Law Firm.  He is the Chairman of the Executive

Committee of Pepper Hamilton.  Currently, Greg Paw, a member of Pepper Hamilton, is serving

as the Freeh Group's lawyer and making discretionary decisions involving payment of claims,

refusal to pay claims, referral agreements, etc.  The problems with Paw will be covered in

separate pleadings by Andry and Lerner.

Presently, we have The Freeh Group and Pepper Hamilton actively investigating Jon

Andry, while the Rule requires neutrality.  In the disclosure statement that is a part of the record,

Freeh admits that "BP is a co-defendant of a Pepper client in connection with three engagements,

including litigation and counseling matters."  There is one pending prospective search involving

BP, involving a part-time Pepper attorney, who has been proposed as a member of a team

seeking to serve as the monitor in connection with BP's criminal plea.  "If this team is selected, it

is anticipated that the Pepper attorney's role would involve ethics and compliance assessment,

training and review."  Analyzing the above, it is clear Pepper has financial relationships with BP

in at least three cases.  A Pepper lawyer may be consulting or is consulting with BP about their

criminal plea **in this case**.  The role of Kirkland & Ellis in helping select Pepper on the "team" is

a fair question as are all the details of who and how BP was referred this Pepper attorney, their

prior relationships (if any), and the potential role played by Freeh versus other Pepper lawyers in

that aspect of the case.

Kirkland & Ellis is the primary attorney for BP in this case.  According to Freeh,

Kirkland & Ellis is co-counsel of a Pepper client in one case, and the referring firm in "several

open matters."  Kirkland & Ellis, LLP also "regularly asks Pepper to prepare Pennsylvania

mortgage enforceability opinion letters for its clients in financing transactions and many of the referral engagements are the result of this relationship.

The ethical requirements of full disclosure rests with Freeh, not Andry. He is not required to investigate Freeh. Freeh is required to put him on notice of all potential conflicts.

The sparse information herein fails to follow either the spirit or the requirement of the law. A fair disclosure should include the following:

1. How many Kirkland & Ellis lawyers are working with Freeh Group or Pepper Hamilton lawyers currently? What is the extent of the financial relationships between the two firms? For example, are the referrals from Kirkland & Ellis dependent on cooperative endeavors, or fees shared, and is there an ongoing back and forth relationship, Pepper to Kirkland, Kirkland to Pepper, or Freeh to either one?

2. What are the economic consequences to the Freeh Group of past and current associations with Kirkland & Ellis?

3. What are the economic consequences to the Pepper Hamilton Group of past and current associations with Kirkland & Ellis? What is the actual status of the ongoing cases? Did these precede this appointment? What fees have been paid since this appointment? What fees are anticipated in the future in relationship to those cases while this appointment continues?

4. All of the pre-Special Master contacts between The Freeh Group, Pepper Hamilton attorneys and Kirkland & Ellis attorneys. The amounts of money received to date and anticipated to be received in the future by The Freeh Group or Pepper Hamilton as a result of this appointment, which ultimately must be approved and paid by BP.

5. What are the lines of authority, vis-a-vis, the co-defendant clients in relationship to the cooperation with BP versus Pepper, or in conjunction with Pepper on these litigation and counseling matters?

6. Are there currently under consideration future relationships between Kirkland & Ellis and Pepper, or Kirkland & Ellis and Freeh?

This motion comes with reason for concern.  Today, The Freeh Group International Solutions, LLC lists in its advertising website on the first page next to Freeh's picture, identifying him as a former federal judge, **this report**.  It also states in the first four side notes to The Freeh Group's advertisement the following: (Exhibit 1)

> "Judge taps ex-FBI director, Louis Freeh to probe alleged misconduct by BP Spill claim lawyers."

Under its news and event section, the report is itself contained.

The Freeh Group has succeeded in putting an embargo on legitimate claims with erroneous assumptions.  Simultaneously it is benefitting internally through its billing, and externally through its advertising, from its own findings.  It requires no imagination to understand the value to BP and by extension its law firm, Kirkland & Ellis, of the criticisms made by Freeh.  A simple look at the ad attached to this motion run by BP immediately after release of the Freeh Report satisfies the benefit.  (Exhibit 2)  A review of Exhibit 1 shows Freeh advertising his work that helps BP, and Exhibit 2 shows BP advertising the work of Freeh.  At the same time, Jon Andry's clients and referral attorneys are being denied claims already approved twice by the Claims Office.

The questions suggested above are an illustrative list.  A simple analogy to the type of disclosure a federal judge requires of an expert witness ends the inquiry.  The sparse information Freeh has provided could not possibly put the Andry interest on notice.  Additionally, Andry and his interests were not parties and had no opportunity to contest or question the appointment.  They should now.   The fact that they had no legal standing at the time cannot cure the appearance of impropriety that exists today.  It was the duty of The Freeh Group to advise the

Andry interests of all of these facts and any others that Freeh would know to be relevant.  Freeh

himself on page 86 cites Louisiana law.

1.      The requirement of full disclosure serves to protect the client by putting
him on notice of the attorney's financial interest in the case.  (This is his
reference to Rule 1.5, but clearly applicable in spirit to his financial
interest in the case.)

2.      Truth is not a matter of convenience.  Sometimes lawyers may find it
inconvenient, embarrassing or even painful to the tell the truth.  A material
fact is one whose existence or non-existence is essential to the resolution
of the matter.

Applying the Freeh rules to Freeh as well as the rules of judicial conduct and the

established case law, he had a duty to the Andry interests to tell them all about his various

financial and professional relationships with Kirkland & Ellis or BP so that any reasonable

person could make a thoughtful choice as to whether he should be disqualified.  Arguably, unless

this Court was given information independent of what is in the public record, he had a duty to the

Court to fully disclose and consider declining this appointment due to those potential conflicts.

As another example, paragraph 5 of Freeh's disclosure raises questions.  He relates that he was in

a law partnership with a federal judge, who "has served as an ombudsmen for BP America, Inc."

BP America, Inc., is one of the defendants in this case.  According to Freeh, he had not been paid

for any of the work done by that former judge.  However, the relationship is the question, not the

financial remuneration.  Full details as to what ombudsmen role Freeh's former law partner

plays, if any in this case, the Deep Water Horizon disaster, should have been disclosed to Andry.

It is not fatal to the role of a special master.  There had been a previous special master

proposed in this case and a far less egregious conflict than reflected herein, resulted in his

recusal.  Andry is entitled to delve into all of the issues raised herein so that the Court can make a

thoughtful choice as to the actual connections, financial, personal and professional, between The

Freeh Group, Freeh's law firm Pepper Hamilton and Kirkland & Ellis, chief counsel for BP, and

BP itself.

Finally, this Court has ordered Freeh to engage in "clawbacks."  Before he can continue

as Special Master, it must be determined:

1.      How will he be paid?

2.      Who will pay him?

3.      Who decides the criteria for a "clawback"?

4.      Did he use erroneous reporting about Andry and others to propel his firm into the clawback arena?

5.      Is his adversarial action towards Andry impacted by the financial opportunity the clawback opportunity creates?

WHEREFORE, Andry prays that this Honorable Court grant a hearing and require full

disclosure by Louis Freeh within a condensed time frame so that Andry can proceed, should it be

proper, with a motion to recuse.

By Attorneys:


/s/Lewis O. Unglesby
LEWIS O. UNGLESBY (#12498)
LANCE C. UNGLESBY (#29690)
UNGLESBY LAW FIRM
246 Napoleon Avenue
Baton Rouge, LA 70802
Telephone: (225) 387-0120
Facsimile: (225) 336-4355
Email: lisa@unglesbylaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 16th day of October, 2013, a copy of the foregoing Motion was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

*/s/Lewis O. Unglesby*

_____
LEWIS O. UNGLESBY