# Exhibit 1

## Excerpts from Transcript of the Deposition of Dr. Aaron Zick

## Taken June 29, 2013

## Page 271

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL       ) MDL NO. 2179
BY THE OIL RIG         )
"DEEPWATER HORIZON" IN ) SECTION "J"
THE GULF OF MEXICO, ON )
APRIL 20, 2010         ) JUDGE BARBIER
                       ) MAG. JUDGE SHUSHAN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
VOLUME 2
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

   Continuation of the deposition of Aaron A. Zick, Ph.D., taken at the Pan-American Building, 601 Poydras Street, 11th Floor, New Orleans, Louisiana, 70130, on the 29th day of June, 2013.

## Page 272

APPEARANCES

APPEARING FOR BP, INC:
  Mr Darin T Beffa
  KIRKLAND & ELLIS
  333 South Hope Street
  Los Angeles, California 90071
  Mr Devin C Reid
  LISKOW & LEWIS
  One Shell Square
  701 Poydras Street, Suite 5000
  New Orleans, Louisiana 70139-5099

APPEARING FOR TRANSOCEAN:
  Mr Benjamin E Friedman
  Mr Gregory D Phillips
  MUNGER TOLLES & OLSON
  355 South Grand Avenue, 35th Floor
  Los Angeles, California 90071-1560

APPEARING FOR ANADARKO PETROLEUM COMPANY:
  Ms Deborah D Kuchler
  Ms Sarah E Iiams
  KUCHLER POLK SCHELL WEINER & RICHESON
  1615 Poydras Street, Suite 1300
  New Orleans, Louisiana 70112

APPEARING FOR HALLIBURTON:
  Mr Floyd R Hartley, Jr
  Mr Prescott W Smith
  Ms Melissa A Lopez
  GODWIN LEWIS
  Renaissance Tower
  1201 Elm Street, Suite 1700
  Dallas, Texas 75270-2041

## Page 273

APPEARING FOR THE UNITED STATES:
  Ms. Anna E. Cross
  Mr. Thomas A. Benson
  U.S. DEPARTMENT OF JUSTICE
  ENVIRONMENT & NATURAL RESOURCES DIVISION
  Ben Franklin Station
  Post Office Box 7611
  Washington, D.C. 20044-7611
  601 D Street, N.W.
  Washington, D.C. 20004

APPEARING FOR THE STATE OF LOUISIANA:
  Mr. Grady J. Flattmann
  HENRY DART ATTORNEYS AT LAW
  510 North Jefferson Street
  Covington, Louisiana 70433

ALSO PRESENT:
  Mr. Peter Jennings, Videographer
  Mr. James Deel, Case Manager

## Page 274

INDEX
VIDEOTAPED ORAL DEPOSITION OF
AARON A. ZICK, PH D.
JUNE 29, 2013
VOLUME 2

Appearances.................................. 271

Continued Direct Examination-Mr. Beffa....... 276
Examination-Ms. Kuchler...................... 358
Examination-Mr. Friedman..................... 393
Examination-Mr. Hartley...................... 408
Examination-Ms. Cross........................ 426
Redirect Examination-Mr. Beffa............... 429

Changes and Signature........................ 446
Reporter's Certificate....................... 448

EXHIBIT INDEX

Ex. No.      Description           Marked

11494   Spreadsheets of modeling runs;
        Bates Nos. XAZX002-003506 -
        XAZX002-003552                 329

11495   Spreadsheet of summarization;
        Bates No. XAZX002-003773       342

11496   Expert Report of Curtis Hays
        Whitson, PhD, dated May 1, 2013,
        marked as CONFIDENTIAL; 188 pages   383

**Page 275**

PREVIOUS EXHIBITS REFERENCED

| Ex. No. | Description | Page |
|---|---|---|
| 11490 | Expert Report, U.S. v. BP Exploration & Production, Inc., et al, Equation-of-State Fluid Characterization and Analysis of the Macondo Reservoir Fluids, Prepared on Behalf of the United States, Prepared by: Aaron A. Zick, March 22, 2013, marked as CONFIDENTIAL; 64 pages | 346 |
| 11491 | Expert Rebuttal Report, U.S. v. BP Exploration & Production, Inc., et al, Prepared on Behalf of the United States, Prepared by: Aaron A. Zick, June 10, 2013, marked as CONFIDENTIAL; 37 pages | 286 |

**Page 276**

THE VIDEOGRAPHER: This is a continuation of the deposition of Dr. Aaron Zick. Today is June 29th, 2013.

The time is 8:35 a.m. We're on the record, beginning Tape 8.

THE COURT REPORTER: You're still under oath, Doctor.

AARON A. ZICK, PH.D., having been previously duly sworn, continued to testify upon his oath as follows:

DIRECT EXAMINATION (Continued)
QUESTIONS BY MR. BEFFA:

Q. Good morning, Dr. Zick.

A. Good morning.

Q. Do you believe that the ocean separator process that you presented in your Rebuttal Report is the most physically realistic process that's been presented in this case?

A. I -- yes, I do.

Q. Which process do you currently think should be used in this case?

MS. CROSS: Objection to form.

A. For what purpose?

Q. (By Mr. Beffa) For calculating stock tank oil.

**Page 277**

A. Well, as I stated in my Rebuttal Report, my opinion is that the -- the most efficient available process should be used, which would currently be the -- my ocean separation process.

Q. What does "most efficient available" mean?

A. It means the -- of the processes that are under consideration, the one that has the highest shrinkage factor.

Q. You created the ocean separator process that you've presented in your Rebuttal Report for purposes of this case, correct?

A. Yes.

Q. So you could have created any process that you wanted for purposes of this case?

MS. CROSS: Objection to form.

A. I would have had to have some sort of justification before I would have just created any arbitrary separation process.

Q. (By Mr. Beffa) And what's your justification for the ocean separator process that you've presented in your Rebuttal Report?

A. It was basically the idea promoted by Dr. Whitson, but with some of his faulty assumptions corrected.

**Page 278**

Q. And the idea presented by Dr. Whitson that you refer to is to model the path of the hydrocarbons from the exit point to the surface of the sea?

A. Yes, I think that was his -- the purpose of his proposed model.

Q. Now, I think you told me that, when you say "efficient," you mean having the highest shrinkage factor?

A. Yes.

Q. And that means that it yields the most amount of stock tank oil at surface conditions?

A. Yes.

Q. Why did you change your mind on the process that you recommended for use in this case between your original Report and your Expert -- and your Rebuttal Report?

MS. CROSS: Objection to form.

A. Well, as I just said, my opinion was that the most efficient available process should be -- should be used.

When I wrote my original Report, I chose not to try to propose a -- an ocean process, even though I considered one, because I thought that it was almost certainly to meet with more

Worldwide Court Reporters, Inc.
PURSUANT TO CONFIDENTIALITY ORDER

279

1  resistance than -- than I wanted to -- to try to
2  address in that original Report, and since my
3  original calculations showed only about one
4  percent higher of a shrinkage factor than the
5  four-stage process, I didn't see the need to
6  complicate the -- my arguments by proposing two
7  different separation processes with such similar
8  results.
9       But since Dr. Whitson sort of opened the
10  door to the idea of an ocean process, and I
11  didn't have to do that, I was able to also lend
12  my support behind that idea, as long as I thought
13  it was done in the most physically realistic way.
14       **Q. (By Mr. Beffa) You -- you said that you**
15  **didn't want to complicate your arguments by**
16  **proposing two different separation processes with**
17  **such similar results.**
18       **What -- what do you mean, you didn't want**
19  **to complicate?**
20       MS. CROSS:  Objection to form.
21       A.  The -- knowing that this -- that a
22  proposal that would show a -- a higher shrinkage
23  factor than the four-stage process, I just
24  assumed that -- that it would -- well, how do I
25  want to say this?

280

1       An ocean separation process, it -- it
2  requires a number of assumptions, and it could --
3  I felt that there were -- there would more likely
4  be objections from all the defense Parties to
5  an -- an ocean separation process, than to an
6  Industry Standard type of four-stage process.
7       Because the results of the two were quite
8  similar, I just didn't see the need to -- to
9  introduce two alternatives, one which might be
10  controversial, when the -- when either one would
11  give similar results.
12       **Q. (By Mr. Beffa) Did you reach the**
13  **conclusion to present the four-stage separator,**
14  **and only the four-stage separator, in your**
15  **original Report, on your own?**
16       MS. CROSS:  Objection to form.
17       I instruct you not to disclose
18  communications with Testifying Experts or with
19  Counsel.
20       MR. BEFFA:  Well, I think that I'm
21  entitled to ask if he put something in his Report
22  at the direction of anyone, including Counsel.
23       MS. CROSS:  No, I don't think you're
24  allowed to ask why he put something in.  You're
25  allowed to ask whether he relied on someone else

281

1  for it.
2       **Q. (By Mr. Beffa) Did you reach the**
3  **decision -- I -- I -- I think I'm entitled to ask**
4  **this question:  Did you reach the decision to**
5  **include the four-stage separator, and only the**
6  **four-stage separator, in your original Report, on**
7  **your own?**
8       A.  Yes.  I can safely answer that without
9  revealing privilege.
10       **Q. Did you reach the conclusion to present,**
11  **instead, an ocean separator process in your**
12  **Rebuttal Report on your own?**
13       MS. CROSS:  Again, without any
14  disclosure of communications with Counsel or
15  Testifying Experts.
16       A.  Yes.  Once I saw Dr. Whitson had included
17  an ocean process, then I wanted to present my
18  version of that process.
19       **Q. (By Mr. Beffa) Okay.  And so you think**
20  **that the process -- strike that.**
21       **You believe that the Court should look at**
22  **the menu of options of processes that have been**
23  **presented in this case and select the one that**
24  **yields the most stock tank oil at surface**
25  **conditions?**

282

1       A.  It's not for me to -- for -- for me to
2  tell the Court which option to choose, but what I
3  can say, from a scientific point of view, is
4  that -- is that this case is probably different
5  from the -- from the cases that were -- that
6  might have been envisioned when the Law was
7  enacted to protect the environment from the
8  spillage of stock tank oil.
9       In this case, the spillage is not of
10  stock tank oil, but of live oil, which is stock
11  tank oil plus the -- the evolved gases.
12       Now, if the Court decides that they would
13  like a stock -- a -- a measure of stock tank oil
14  that most closely reflects some measure of the
15  live oil, then I can say, scientifically, that
16  the best measure to give them that figure would
17  be to choose the most efficient of the logically
18  available options for separation processes.
19       And in this case, given the -- the
20  current menu of -- of separation processes, the
21  most efficient would be the ocean process that I
22  proposed.
23       The second-most efficient would be the
24  four-stage process.  Third -- the -- a close
25  third would be Dr. Whitson's ocean process,