UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | MDL 2179 |
| | SECTION: "J" |
| This Document Applies to: | JUDGE BARBIER |
| No. 12-970, Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production Inc., et al. | MAG. JUDGE SHUSHAN |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, LACK OF SERVICE, AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

**NOW INTO COURT**, through undersigned counsel, comes Christine Reitano, who, reserving all rights and defenses, appears solely for the purpose of filing this Memorandum in Support of Motions to Dismiss for Lack of Subject Matter Jurisdiction, Insufficient Service of Process, and Failure to State a Claim Upon Which Relief May Be Granted.

**I. BACKGROUND**

On July 2, 2013, this Court appointed Louis J. Freeh as a Special Master, pursuant to Rule 53 of the Federal Rules of Civil Procedure to perform an "independent" investigation into allegations of misconduct within the Court Supervised Settlement Program ("CSSP"). On September 6, 2013, Mr. Freeh submitted a 96 page Report, making conclusory allegations about Ms. Reitano and recommending that this Court, inter alia, apply the unclean hands doctrine to:

> (a) Prohibit Christine Reitano and others, as well as any law firms associated with her, from representing any claimants before the DHECC, or from receiving any related legal fees, based on her conduct as described in this report; and

> (b) Disallow The Andry Law Firm's pending $7,818,693.95 award based on the conduct of Messrs. Jon Andry and Gibby Andry in their dealings with the DHECC and Mr. Sutton while Mr. Sutton was employed at the CAO.

1

Rec. Doc. 11287 at 92.

      **A.    The Freeh Report Is Hearsay and Not Entitled to Any Presumption of Correctness**

Under Fifth Circuit precedent, a Special Masters report, findings and conclusions are entitled to absolutely no presumption of correctness where there has been no hearing on the record after proper notice. *Ruiz v. Estelle,* 679 F2d 1115, 1163, 1165, *amended in part, vacated in part*, 688 F.2d 266 (5th Cir. 1982). Accordingly, the findings and conclusions in the Special Master's Report are entitled to no presumption of correctness and thus, cannot serve as a legal basis for disqualifying Ms. Reitano, or any others, from representing CSSP clients.

      **B.    The Court's September 6, 2013 Rule to Show Cause Order**

Despite the fact that the Freeh Report is entitled to no deference, on the same day that the Special Master's Report was issued, this Court entered an Order stating in pertinent part:

> IT IS FURTHER ORDERED that Lionel Sutton, **Christine Reitano**, Jon Andry, Glen Lerner, and any associated law firms, show cause why the Court should not adopt the following findings and recommendation of the Special Master:
>
> a) Disallowing The Andry Law Firm's claim under the Unclean Hands Doctrine;
>
> (b) Disqualifying Attorneys Lionel Sutton, **Christine Reitano**, Glen Lerner, and Jon Andry, as well as any associated law firms, from representing CSSP claimants (or collecting fees from such claimants) under the Unclean Hands Doctrine. (Emphasis added).

Rec. Doc. 11288 at 3.

It appears that the Court, without an evidentiary hearing and based solely on the untested, selective, unsubstantiated hearsay Report of the Special Master, who acted as prosecutor, judge and executioner, is now seeking to summarily impose disciplinary sanctions of disqualification, and fee forfeiture, without regard to Ms. Reitano's Constitutional Due Process Rights of proper notice, meaningful discovery and an opportunity to confront witnesses. This is so even though

2

this Court lacks subject matter jurisdiction because there is no case or controversy pending before the Court regarding Ms. Reitano. That there is no case or controversy involving Ms. Reitano is highlighted by the fact that no Complaint has been filed or served upon Ms. Reitano.

Ms. Reitano was not notified of the Special Master's appointment, nor did she consent as required by Fed. R. Civ. Procedure 53(a)(1), as would have been necessary had she been a party to the captioned proceeding. Ms. Reitano has never been served with either the Special Master's Report or this Court's September 6, 2013 show cause Order. Ms. Reitano has not had the opportunity to confront, much less cross examine, any witnesses against her. Making matters worse, the theory advanced for obtaining relief, i.e., the "unclean hands" doctrine, is not even a viable cause of action. The maxim behind the unclean hands doctrine is that "he who comes into equity must come with clean hands." *New York Football Giants, Inc. v. Los Angeles Charges Football Club, Inc.*, 291 F.2d 471, 474 (5th Cir. 1961). Under the doctrine, a court can **refuse** to grant relief to a "party," i.e., the plaintiff, who comes to the court with unclean hands. Ms. Reitano has not asked this Court for any relief.

Given the lack of a case or controversy, the insufficiency of service, and the failure to state a cause of action upon which relief can be granted, Ms. Reitano should not be compelled to respond to this Court's September 6, 2013 Rule to Show Cause Order.[1]

## II. LAW AND ARGUMENT

    **A.    This Court lacks Subject Matter Jurisdiction Because There is No "Case or Controversy" And Certainly None Which Could Justify the Draconian Sentence Suggested by Mr. Freeh for Ms. Reitano**

---

[1] Although not constitutionally required to respond to the Order of the Court for the reasons stated herein, Ms. Reitano, reserving her rights, responded to the Court's Original Order within the time specified. (Document No. 11414). And, again reserving her rights, Ms. Reitano filed her Second Supplemental Response and Objection on October 17, 2013, before the extended deadline fixed by the court. (Document No. 11681).

Federal district courts may only decide those questions arising in a "case" or "controversy."[2] This constitutional principal limits federal courts to the exercise of "the power . . . to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision."[3] Simply, there is no "case of controversy" before this Court concerning Ms. Reitano.

Before the issuance of the Special Master's Report and to this day, no one has challenged the authority, validity or reasonableness of Ms. Reitano's representation of claimants in the future, now that she has been precipitously and unlawfully terminated from her employment in the CSSP. Nor has anyone presented evidence suggesting that Ms. Reitano's potential, future clients are incapable (legally or mentally) of contracting with the attorney of their choice and negotiating a fee for services.

Nevertheless, without the request of a single person, the Special Master asks this Court to take the draconian step of disqualifying Ms. Reitano from legally representing future client/claimants.[4] But, there has been no demonstration that a conflict of interest exists that would render *de facto* disqualification of Ms. Reitano appropriate for all potential CSSP clients. And, courts should be disinclined to "paternalistically [infringe] on a party's right to a lawyer of his choice absent compelling factors indicating that the attorney's loyalty to his client has been

---

[2] U.S. CONST. art. III, § 2.

[3] *Brown v. Watkins Motor Lines, Inc.*, 596 F.2d 129, 131 (5th Cir. 1979) (quoting *Muskrat v. United States*, 219 U.S. 346 (1911)).

[4] Ms. Reitano does not deny that this Court has the power to discipline or sanction an attorney <u>practicing before the Court</u>. Indeed, the United States District Court for the Eastern District of Louisiana has a detailed set of Rules for Lawyer Disciplinary Enforcement. http://www.laed.uscourts.gov/LocalRules/LAEDDisciplinaryRules.pdf. Likewise, this Court has inherent powers to sanction attorneys <u>practicing before it for contempt,</u> which can include disqualification. But, the process being applied here simply does not comport with **any** established procedure.

incontrovertibly compromised."[5] Given the lack of a pending case or controversy, this court lacks jurisdiction to interfere with the established or potential attorney-client relationships.[6]

In *Brown v. Watkins Motor Lines, Inc.*, 596 F.2d 129, 130 (5th Cir. 1979), the Fifth Circuit reversed a district court's decision "to adopt as the court's ward a minor represented by a duly qualified guardian, fix the compensation of the guardian's attorney, and direct his payment out of a tort judgment previously rendered by the court." The Fifth Circuit wrote: "The case or controversy in the federal forum ended with payment of the judgment into the registry of the court."[7] Importantly, in *Brown*, no party challenged the contingent fee agreement; instead, the district court acted on its own to force the parties to accept "a remedy that they did not seek."[8]

---

[5] *Vegetable Kingdom, Inc. v. Katzen*, 653 F.Supp. 917, 925 n.6 (N.D.N.Y. 1987).

[6] A client's choice of counsel should be inviolable except for extraordinary circumstances, which are not presented herein. In *Hart v. Gaioni*, a panel of the Ninth Circuit Court of Appeals relying upon Supreme Court precedent made clear that the client's choice of counsel is sacrosanct in the eyes of the law: "Civil litigants have a First Amendment right to be represented by counsel of choice free from unreasonable government interference with the attorney-client relationship."*See Hart v. Gaioni*, 261 Fed. Appx. 66, *1 (9th Cir. 2007) (not selected for publication) (citing *Bhd. of R.R. Trainmen v. Virginia*, 377 U.S. 1, 7-8 (1964)).This important preservation of the sanctity of the attorney-client relationship is precisely one reason why "motions to disqualify attorneys are generally disfavored." *In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2008 WL 3845228, *3 (E.D. La. Aug. 13, 2008) (quoting *Am. Mortgage Sec. Funding Corp. v. First La. Fed. Sav. Bank of Lafayette*, No. 87-5933, 1988 WL 92026, *2 (E.D. La. Aug. 26, 1988)). [6]

[7] *Brown*, 596 F.2d at 132.

[8] *Id.* Fifth Circuit cases distinguish *Brown* in those limited circumstances where district courts traditionally intervene, as in cases involving "wards" of the court: minors and seamen. *See Karim v. Finch Shipping Co.*, 374 F.3d 302, 304 (5th Cir. 2004); *Hoffert v. Gen. Motors Corp.*, 656 F.2d 161, 162 (5th Cir. 1981); *Rosquist v. Soo Line R.R.*, 692 F.2d 1107, 1109 (7th Cir. 1982). Yet, this case lacks those individuals typically afforded special protection; the fee contracts at issue here involved adults. And, "[a]n agreement between two freely consenting, competent adults will most often be controlling." *Rosquist*, 692 F.2d at 1111.

As the Fifth Circuit properly recognized, the "*sua sponte* invocation of its equitable power in an effort to protect the minor as its ward, was the assumption of a jurisdiction it lacked."[9]

Judge Posner, writing for the panel, reached a similar conclusion in *U.S. v. Vague*, 697 F.2d 805 (7th Cir. 1983). In that case, the district judge on his own initiative ordered a defendant's lawyer to return part of his fee because the judge considered it excessive. The Seventh Circuit reversed because the district judge had improperly assumed a prosecutor's role given that:

> [n]o one complained to him about [the attorney's] fee. The judge decided there might be a violation of the code of ethics, conducted the examination of [the attorney] and other witnesses, determined that a violation had in fact occurred, and prescribed the remedy. He assumed the role that the [defendant's] lawyer would have played had they sued for restitution of the excessive fee paid [the original attorney].[10]

Judge Posner wrote that federal courts may decide only those controversies presented by the parties in litigation:

> The judicial power is limited to deciding controversies. That has been its function historically; that is its function under the Constitution of the United States. No doubt a great deal goes on in the world which ought not to go on. If courts had general investigatory powers, they might discover some of these things and possibly right them. Whether they would do as well in this respect as officers or bodies expressly set up for that purpose may be doubted, but until the concept of judicial power is widened to something quite different from what it now is courts will better serve their public function in limiting themselves to the controversies presented by parties in litigation.[11]

---

[9] *Id.*

[10] *Vague*, 697 F.2d at 807.

[11] *Id*. at 807-808 (internal citation and quotation marks omitted).

6

For the reasons set forth by Judge Posner, in the absence of a case or controversy, this Court's jurisdiction is limited. In the case of Ms. Reitano, the absence of a case or controversy is even more evident: It has been recommended that she be disqualified from representing future potential claimants. Therefore, not only is there no current case or controversy, the presumed adversary exists only in the imagination.

As this Court is aware, the CSSP settlement program is a mathematical formula based on a pure revenue analysis. As stated by Mark Holstein, B.P.'s Counsel,

> One of the cornerstones of the Settlement Agreement is the use of transparent, objective, data-driven methodologies designed to apply clearly-defined standards to a claimant's contemporaneously-maintained financial data submitted in compliance with documentation requirements. These methodologies and requirements were carefully negotiated by the parties and are set forth in the Settlement as mandatory requirements. Among other reasons, these methodologies and requirements were negotiated in response to concerns voiced by some that the prior GCCF process was too dependent on accounting judgments that were not transparent.

The formula cannot be manipulated, is subject to several layers of review, and has been administered by the CSSP impartially and with the utmost integrity, as the Special Master acknowledges.

> "The Special Master did not find any evidence that either Mr. Sutton or Ms. Reitano directly manipulated the valuation of claims by accessing the DHECC database." (Freeh Report, p. 25).

Review of claims is not, in any event, subject to this Court's or the Special Master's review. Under the negotiated Settlement, appeals by BP of claims determined to be eligible, are reviewed by the CSSP Appeal Panel. Neither this Court, nor the Special Master should engage in second guessing the claims process and methodologies negotiated by BP and approved by this Court.

B.     **Ms. Reitano has Never Received Proper Notice of a Complaint Against Her**

Due process requires both adequate notice and an opportunity to be heard.[12] So fundamental are these requirements that a judgment rendered in violation of due process is void.[13] Under the Federal Rules of Civil Procedure a civil action is commenced by filing a complaint with the court. Fed. R. Civ. Proc. 3. To effect proper notice, a summons must be served with a copy of the complaint. Fed. R. Civ. Proc. 4(c)(1). In this case, there has been no complaint filed (no case or controversy exists) and there has been no service on Ms. Reitano of anything. Ms. Reitano was not served with notice of the appointment of the Special Master, she were not served with the Special Master's Report and she was not served with the Court's September 6, 2013 Rule to Show Cause Order. It was only happenstance (a call from a reporter with the Wall Street Journal) that Ms. Reitano learned of the Court's September 6, 2013 Order. Until proper service of a complaint is made, this Court lacks personal jurisdiction over Ms. Reitano.[14]

C.     **The Recommendation that Ms. Reitano be Disqualified from Representing Future Clients Fails to State a Cause of Action Upon Which Relief May be Granted.**

This Court has Ordered Ms. Reitano to "show cause why the Court should not adopt the following findings and recommendations of the Special Master:

> (a) Disallowing The Andry Law Firms claim under **the Unclean Hands Doctrine;**
>
> (b) Disqualifying Attorneys Lionel Sutton, **Christine Reitano**, Glen Lerner, and Jon Andry, as well as any associated law firms,

---

[12] *Worldwide Volkswagen Corp., v. Woodson*, 444 U.S. 286, 291 (1980).

[13] Id., see also, *New York Life v. Brown*, 84 F. 3d 137, 143 (5th Cir. 1996).

[14] *Omni Capital Int'l c. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of summons must be satisfied.").

8

> from representing CSSP claims and collecting fees from such claimants) under **the Unclean Hands Doctrine.** (Emphasis added).

Rec. Doc. 11288 at 3 (emphasis added). The unclean hands doctrine is not a legally cognizable cause of action. The unclean hands doctrine is an equitable defense that allows a defendant to defeat the plaintiff's claim against them. Under the unclean hands **defense,** the defendant would argue that the plaintiff is not entitled to relief because they have committed some sort of wrongdoing or are themselves liable for an offense. In other words, the plaintiff cannot obtain a remedy because their hands are "unclean". Simply put, the "unclean hands" doctrine is a mechanism by which a plaintiff is precluded from recovery as a result of plaintiff's own participation in wrongful conduct.[15] The Fifth Circuit holds the unclean hands doctrine is an affirmative defense to an equitable claim; it applies where a plaintiff's conduct "has been unconscientious, unjust, marked by a want of good faith or violates principles of equity and righteous doing."[16] "It is old hat that a court called upon to do equity should always consider whether the petitioning part has acted … with unclean hands" … "this consideration is rooted in the maxim that "he who comes into equity must come with clean hands."[17]

---

[15] *Cole v. Mitchell*, 46,546 (La. App. 2nd Cir. 09/21/11); citing *Wooley v. Lucksinger,* 09-0571 (La. 04/01/11), 61 So. 3d 507.

[16] *The Bank of Saipan v. CNG Financial Corp.* 380 F.3d 836, 849 (5th Cir. 2004)*see also*, *See Keystone Driller Co. v. Gen. Excavator Co.,* 290 U.S. 240, 245, (1933) (The doctrine of unclean hands applies "only where some unconscionable act **of one coming for relief** has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. [Courts of equity] do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit.") (emphasis added); *Worthington v. Anderson,* 386 F.3d 1314, 1320 (10th Cir. 2004) ("[T]he 'unclean hands' doctrine does not empower a court of equity to deny relief for any and all inequitable conduct on the part of the plaintiff. Instead, the inequitable conduct must be related to the plaintiff's cause of action.").

[17] *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 794 (5th Cir. 1999).

"It has also been said that the maxim has nothing to do with disapproval of the character or past behavior of the applicant but only with the effect of his present application."[18] "'Equity does not demand that its suitors shall have blameless lives.'"[19]  Thus, an important limitation of the clean hands doctrine is that the alleged misconduct must be connected with the transaction upon which the claimant seeks relief.

As is apparent, the unclean hands doctrine is not a cause of action upon which relief can be granted. It applies only when a plaintiff comes to court seeking affirmative relief and it is a mechanism by which a court can deny relief sought because of some inequitable conduct by the plaintiff. Where the doctrine applies, its import is to dismiss the plaintiff's claim, not grant relief. Here, Ms. Reitano has not come into Court seeking any relief and, more importantly, the true unvarnished and unredacted facts reveal that she has done nothing wrong. She is not a plaintiff. She does not even currently represent any claimants. Clearly, the unclean hands doctrine has no applicability to Ms. Reitano. The Special Master's reliance on the unclean hands doctrine for affirmative action on the part of the Court is completely misplaced and misguided.

## III. CONCLUSION

The process attempted to be employed in this case to disqualify Christine Reitano from representing potential CSSP claimants is completely foreign to anything seen before. There is no case or controversy pending before this Court for this Court's jurisdiction to attach. No Complaint has been filed against Christine Reitano, unless the court accepts the insupportable Report of Mr. Freeh and his unfounded conclusions about Ms. Reitano and does not allow a full

---

[18] *Niner v. Hanson,* 217 MD. 298, 309, 142 A.2d 798, 803 (1958).

[19] *Id.* (quoting *Loughran v. Loughran*, 292 U.S. 216, 229 (1934).

adversary hearing for Ms. Reitano to challenge the Report and cross examine the evidence collected by Mr. Freeh.

Moreover, there has been no service of anything. Nevertheless, Ms. Reitano is being hailed into Court without proper notice, to defend against an untested, obviously biased and slanted hearsay Report prepared only with evidence carefully selected by the Special Master, which, under Fifth Circuit law, is entitled to absolutely no weight. *Ruiz v. Estelle,* 679 F2d 1115, 1163, 1165, *amended in part, vacated in part*, 688 F.2d 266 (5th Cir. 1982). Although this Court Ordered the Special Master to produce evidence, the Special Master cherry picked the evidence produced, redacted or omitted evidence favorable to Ms. Reitano, and, to this date, continues to deprive Ms. Reitano of meaningful discovery which will lead to the discovery of admissible evidence of her defenses to the misguided claims of the Report.

Making matters even worse, as opposed to defending against a cognizable cause of action, Christine Reitano is being asked to defend against the inapplicable defense of unclean hands. While it is recognized that this Court has inherent powers, including the power of disciplinary enforcement, the process employed here violates constitutional principles regarding this Court's jurisdiction and fair notice and seeks to deny or severely limit Ms. Reitano's right to practice law and represent potential claimants, all without any semblance of due process.

WHEREFORE, CHRISTINE REITANO moves for dismissal of the Show Cause Order issued on September 6, 2013 as it relates to her and that the recommendations of Mr. Freeh in the Report be denied as they relate to Ms. Reitano.

        Respectfully submitted,

        **/s/ Mary Olive Pierson**
        Mary Olive Pierson (La. Bar #11004)
        8702 Jefferson Highway – Suite B (70809)
        Post Office Box 14647
        Baton Rouge, Louisiana 70898
        Telephone: (225) 927-6765
        Fax: (225) 927-6775
        mop@mopslaw.com

        *Attorney for Christine Reitano*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Motion has been served (hopefully) on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 17th day of October, 2013.

        **/s/ Mary Olive Pierson** .
        Mary Olive Pierson