# October 23, 2013
# Notice of Filing Exhibit I.2

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois 60654

Richard C. Godfrey
To Call Writer Directly:
(312) 862-2391
richard.godfrey@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

October 9, 2013

**By Electronic Mail**

The Honorable Carl Barbier
United States District Court
Eastern District of Louisiana
500 Poydras Street
New Orleans, LA 70130

*IN CAMERA* **SUBMISSION**

Re: Letter Brief Regarding Entry of Preliminary Injunction and Nature of Remand Proceedings

Dear Judge Barbier:

On behalf of BP, we submit this letter brief in accordance with your Order of October 3, 2013.[1] That Order asked the parties to address what steps the Court should take in light of the Fifth Circuit's reversal of the Claims Administrator's interpretation of the Deepwater Horizon Economic and Property Damages Settlement Agreement's ("Settlement") business economic loss ("BEL") framework. *In re Deepwater Horizon*, Nos. 13-30315, 13-30329 (5th Cir. Oct. 2, 2013) ("slip op."). The Fifth Circuit instructed the Court to "expeditiously craft" a "stay tailored so that those who experienced actual injury traceable to loss from the Deepwater Horizon accident continue to receive recovery but those who did not do not receive their payments until this case is fully heard and decided through the judicial process." *Id.* at 35. BP submits that there are two immediate questions: what injunction should the Court enter, and what proceedings should the Court conduct on remand?

**I.  A Tailored Injunction Capable Of Preventing Interim Harm From All Forms of Legal Error Identified By The Fifth Circuit Should Be Entered.**

 **A.  The Fifth Circuit Opinion Identified Specific Issues That Must Be Corrected On Remand.**

*First*, the Fifth Circuit held that the Settlement's BEL compensation framework, which is set forth in Exhibit 4C, "cannot be said to permit ignoring sufficiently matched data from

---

[1] In compliance with the Order, BP submits this letter brief *in camera*. *See* Rec. Doc. 11566 at 2. Given the importance of these proceedings to BP, the Class, and the public, however, as well as the need to make a record for the Court of Appeals, BP respectfully submits that the remand proceedings should be conducted in public, and that the *in camera* filings should be made part of the public record and docketed. *See* slip op. at 35.

accrual-basis claimants" and that the Claims Administrator cannot apply "the cash-in, cash-out interpretation to claims that are presented with matched revenues and expenses." Slip op. at 16. To match properly, the Settlement Program must process accrual-basis claims consistent with accounting principles, including recognizing revenue "when the entity becomes entitled to receive payment, as opposed to when the payment is actually received" and ensuring that "[e]xpenses that can be readily traced to the recognized revenues are themselves recognized at the same time as those revenues." *Id.* at 11.

*Second*, the Fifth Circuit remanded for a determination of whether matching should apply to all claims, including those using the cash-basis method. The Fifth Circuit held that BP's interpretation requiring matching for all claims was reasonable, *id.* at 18-20, and expressed strong doubt about the Claims Administrator's interpretation "due to the fact that only matching provides a realistic chance of achieving the ostensible goal of the settlement of compensating claimants for real losses," *id.* at 21; *see also id.* at 17, 21, 23.

*Third*, the Fifth Circuit concluded that the Settlement Program should not make awards to claimants suffering no losses. Judge Clement emphasized that interpreting the Settlement to include "businesses without colorable legal claims . . . could imperil a final approval of the settlement and can be considered in evaluating the correct interpretation of possible ambiguities." *Id.* at 33. Judge Southwick agreed that including claimants who had no losses would raise serious Rule 23 concerns. *Id.* at 39. Moreover, the Fifth Circuit opinion requires an injunction against claimants with no actual injuries. *Id.* at 35.

*Fourth*, this Court and the parties must address whether claimants whose loss was not caused by the incident are included in the class. Judge Clement stated that including such claimants "ignores the standing requirements of Article III," would imperil class certification, and would be contrary to fundamental notions of tort causation. *Id.* at 25-33. Judge Southwick did not rule on this issue but agreed that the Court and parties must consider the issue of causation on remand. *Id.* at 39-40. Both judges held that the Court should enter an injunction against claimants that cannot trace their losses to the *Deepwater Horizon* accident. *Id.* at 35.

### B. The Court Should Enjoin The Numerous Matching Problems Caused By The Settlement Program's Policies And Practices.

The failure to match permeates all aspects of the Settlement Program's BEL awards. Although the Claims Administrator submitted a declaration regarding the CSSP's policies, Rec. Dec. 11566, that declaration does not provide assurance that the Claims Administrator is not applying the cash-in, cash-out interpretation to claims that are presented with matched revenues and expenses, which the Fifth Circuit required. *See* slip op. at 16. Moreover, the facts demonstrate that the Settlement Program's practices and policies cause claimant's revenues and expenses to fail to match in various different ways, for both cash-basis and accrual-basis claims.[2]

---

[2] Furthermore, BP respectfully submits that it should have been given the opportunity to comment upon the Claims Administrator's declaration and present evidence showing that the declaration's statements are in error. This issue is discussed more fully in BP's Motion To Strike To The October 3, 2013 Declaration Of Patrick Juneau, which BP is submitting also *in camera* but via a separate email.

KIRKLAND & ELLIS LLP

*First*, under Policy 464 cited by the Claims Administrator, if a claimant submits both cash-basis and accrual-basis P&Ls, then the Settlement Program can use either one. Policy 464 at 4. Many claimants have elected to submit both types of P&Ls. Of 35 such illustrative cases, for example, the Settlement Program in 17 cases computed the compensation determination using the cash-basis statements. *See* Brents Decl. (Ex. C) ¶ 6.[3]

*Second*, significant numbers of both accrual and cash-basis claims are not "properly matched" as discussed in the Fifth Circuit's opinion. Analysis "indicates that these problems are not limited to claimants that rely on cash basis P&L data, but instead are widespread in offers in which claimants indicate that their P&L data were prepared on an accrual basis." Sider Decl. (Ex. E) ¶ 9; *see also* Gaspardo Decl. (Ex. D) ¶¶ 6-10. These "problems are widespread in offers to claimants in all industries." Sider Decl. (Ex. E) ¶ 9.

*Third*, many claimants have submitted financial statements that blend cash and accrual methods. "Inconsistently or idiosyncratically applied accrual-basis principles either on a temporal (month-to-month) or account-by-account basis create mismatching distortions similar to cash basis statements." Gaspardo Decl. (Ex. D) ¶ 10; *see also* Alexander Decl. (Ex. B) ¶ 13.

*Fourth*, inaccurate information can cause matching problems and result in awards to those with no actual losses. A "claimant's idiosyncratically-maintained records" should not "dictate the way Exhibit 4C is applied to a claim, especially if Exhibit 4C is supposed to be an objective formula." Slip op. at 21. One example of incorrect data involves financials containing year-end "true ups" and/or corrections. *See, e.g.* Rec. Doc. 8963-41 ¶¶ 10-13 (Supplemental Declaration of David A. Hall); *see also* Rec. Doc. 8963-36 ¶¶14-16 (Declaration of J. Lester Alexander, III); Rec. Doc. 8963-46 ¶ 40 (Declaration of Hal Sider); *see also* Gaspardo Decl. (Ex. D) ¶ 14. Adjustments made at year end — or any other time of the year — mean that figures for both the month of the adjustment and for the prior months being corrected will be inaccurate.

*Fifth*, "[m]ost of the time (96%) P&Ls are submitted by BEL claimants with no date (47% of the time) or a non-contemporaneous date (49% of the time)." Alexander Decl. (Ex. B) ¶ 15. "Although this presents significant concerns that the documentation may be either inaccurate or drafted specifically for purposes of the claim – which raises serious fraud risks – the CSSP fails even to follow up on this issue to request additional information approximately 85% of the time." *Id.* ¶ 15. Moreover, a majority of BEL claims reviewed by BP's experts show "a discrepancy between the annual revenue and net income amounts reported in P&Ls submitted by the claimant and the claimant's tax returns." *Id.* ¶ 16.

Because the Settlement Program has not addressed these issues, it has not properly matched revenues and expenses. Thus, the injunction's scope must be sufficient to prevent harm to BP from all the ways in which failure to match revenues and expenses is occurring while the Court and parties develop new procedures to implement a new BEL compensation policy. While that injunction is in effect, the Court and parties can develop procedures to properly match

---

[3] The Court's October 3, 2013 Order requesting letter briefs did not specify whether the parties could support those letter briefs using declarations or other evidence. Rec. Doc. 11566 at 2. BP respectfully submits that the declarations accompanying this letter brief should be considered in determining what injunction should be entered and the proper proceedings on remand.

revenues and expenses, a task that is routinely performed by accountants and can be implemented easily here.  *See* Rec. Doc. 8963-36 ¶ 32 (Declaration of J. Lester Alexander, III); Rec. Doc. 8963-37 ¶¶32-35 (Declaration of J. Richard Dietrich); Rec. Doc. 8963-47 at 9:341-11:389 (Declaration of Roman L. Weil); *see also* Gaspardo Decl. (Ex. D) ¶ 10.

### C. Actual-Injury Problems Permeate Both Cash- And Accrual-Basis Claims.

"[F]or a class to be certified, each member must have standing and show an injury in fact that is traceable to the defendant and likely to be redressed in a favorable decision."  *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013); *accord Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006).  A plaintiff cannot have standing absent an injury in fact causally connected to the defendant's conduct and redressable by a favorable court decision.  *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Thus, the Fifth Circuit instructed this Court to enter a "stay tailored so that those who experienced actual injury traceable to loss from the Deepwater Horizon accident continue to receive recovery but those who did not do not receive their payments."  Slip op. at 35.

Under current Settlement Program policies, "[e]rrors in matching monthly revenue and corresponding variable expenses can result in BEL offers to claimants that suffered no loss in variable profit between the Benchmark Period and 2010."  Sider Decl. (Ex. E) ¶ 13; *see also id.* ¶¶ 13-16.  As one indication of this problem, expert analysis reveals that "31% of claimants receiving BEL offers did not experience a loss in variable profit measured over the May-December or January-December periods in 2010 relative to the same months in the Benchmark Period."  *Id.* ¶ 16.  Another indicator that many BEL claimants suffered no injury is that they never filed a claim with the GCCF, even though the GCCF did not require signed releases before claimants could receive emergency or interim payments.  *See id.* ¶ 23.  Roughly 85% of BEL claimants since March 2013 did not participate in the GCCF.  *Id.*

In sum, current Settlement Program policies and practices that do not require matching and/or rely upon inaccurate or potentially erroneous data result in awards "completely disconnected from any reasonable understanding of calculation of damages."  Slip op. at 23.  By failing to accurately measure economic damages, the Settlement Program currently makes awards to, and includes in the class, claimants that have no actual losses.  Compliance with the Fifth Circuit's directions requires claims where the question of actual injury is at issue be enjoined as the Court and parties develop new policies that require actual loss.

### D. Causation Problems Permeate Both Cash- And Accrual-Basis Claims.

The Fifth Circuit's opinion recognizes that the payment of awards to claimants who have not suffered injuries causally related to the spill raises serious questions under Rule 23 and Article III of the Constitution.  Slip op. at 25-33, 37; *see also id.* at 37.  Large percentages of BEL claimants who were deemed eligible for compensation (i) only narrowly passed the V-test or (ii) would have failed the test had it been based on aggregate May-December information.  Sider Decl. (Ex. E) ¶¶25-30.  In either case, the "monthly revenue data that are the basis of claimant's eligibility must be carefully reviewed to ensure that eligibility is not due to errors in reported monthly revenue alone."  *Id.* ¶ 29.  Accordingly, the injunction should apply to BEL claimants who cannot establish causation using properly matched and determined revenues and

4

expenses or where the presence of an actual injury traceable to the *Deepwater Horizon* accident is at issue.

## II. BP's Proposed Process For Resolving The Possible Ambiguity Found In the Settlement Agreement.

The Fifth Circuit rejected Class Counsel's position that the Settlement Agreement does not require matching, notwithstanding the "significant parol evidence" that Class Counsel cited in support of its position. Slip op. at 21. The Fifth Circuit held that "Exhibit 4C is ambiguous as to whether claims that are not based on matched revenues and expenditures are to be matched for Exhibit 4C purposes" and remanded to this Court to resolve the ambiguity. *Id*. at 23-24.

BP submits that the remand proceedings should have three objectives: (1) to determine whether Class Counsel relies on any parol evidence other than that already considered and rejected by the Fifth Circuit and/or to receive BP's parol evidence, as necessary; (2) to devise a solution to the problem of fictitious claims and inflated losses; and (3) to determine what policy and documentary changes are necessary to solve the "causation" problems identified by the Fifth Circuit.

To develop a record that will achieve these objectives and enable this Court to make the findings contemplated by the Fifth Circuit, BP proposes the following schedule and proceedings:

*First*, if Class Counsel contends that the parties agreed that matching principles do not apply to all claims, then within fourteen days they shall submit a brief and all additional evidence on which Class Counsel rely to support that contention. If Class Counsel concedes that matching principles apply to all claims, their submission should focus on their proposals for having the Settlement Program comply with the Fifth Circuit's opinion. In either case, BP would then have fourteen days to respond to Class Counsel's submission. (Included as Exhibit F is a general description of a new BEL Compensation Policy and an outline of the procedures that should be undertaken to establish new policies as a result of the Fifth Circuit's remand.[4])

*Second*, following the exchange of these written submissions, the parties shall have ten days, or longer if appropriate, to meet and confer with Special Master Freeh to determine whether they can consensually resolve the issues raised in the respective submissions.

*Third*, if the parties cannot reach agreement, the Court shall hold an evidentiary hearing to resolve these issues and make the necessary findings. In advance of the hearing, the parties shall identify any witnesses they intend to call and any evidence they intend to present.

Respectfully submitted,

/s/ Richard C. Godfrey, P.C.

Richard C. Godfrey, P.C.

---

[4] Because other economic loss frameworks, including but not limited to the Multi-facility, Start-Up, and Failed Business Frameworks, require both proper determination and matching of revenues and expenses as well as causation, the new policy will also be applicable to these types of claims.

KIRKLAND & ELLIS LLP

cc (by electronic mail):
The Honorably Sally Shushan
Special Master Louis Freeh
Frank Piantidosi
Patrick Juneau
Richard Stanley
Phillip Wittmann
Stephen Herman
James Roy
Joe Rice