# October 23, 2013
# Notice of Filing Exhibit II.5

SUBMITTED *IN CAMERA*
PURSUANT TO BP'S 10/9/13 LETTER

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179<br><br>SECTION: J |
| This document relates to all actions. | * * * * * * | HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

**BP'S MEMORANDUM IN SUPPORT OF ITS MOTION
TO STRIKE THE OCTOBER 3, 2013 DECLARATION OF PATRICK JUNEAU**

On October 2, 2013, the United States Court of Appeals for the Fifth Circuit reversed this Court's denial of BP's motion for a preliminary injunction and its order affirming the Claims Administrator's interpretation of certain policies regarding business economic loss ("BEL") claims. *In re Deepwater Horizon*, No. 13-30315, Dkt. No. 00512394834, slip op. at 3. In its opinion, the Fifth Circuit questioned whether the Court Supervised Settlement Program ("CSSP") was converting claims that were submitted using accrual-basis accounting to cash-basis accounting for processing and payment. The Fifth Circuit instructed this Court on remand to "make certain this is not occurring" and to enter an injunction that "allows the time necessary for deliberate reconsideration" of this and other disputed BEL issues. *Id.* at 16, 35.

After the Fifth Circuit issued its opinion, this Court entered an order that attached a two-paragraph Declaration that was submitted *ex parte* to the Court by the Claims Administrator, Patrick Juneau, without prior notice to BP. Rec. Doc. 11566 (the "October 3 Order"). Mr. Juneau's Declaration stated unequivocally that the CSSP does not "convert [accrual-basis records] to a cash-basis" or "ignore accrual-basis records when submitted" in favor of evaluating

a claim from a cash-basis perspective. *Id.* at 3. The Court then relied on Mr. Juneau's Declaration to enter an injunction that "suspend[ed] the issuance of any final determination notices or any payments with respect to those BEL claims in which the Claims Administrator determines that the matching of revenues and expenses is an issue." *Id.* at 1. The Court also found that "claims based on an accrual accounting basis are <u>not</u> being converted to a cash accounting basis." *Id*.

BP respectfully submits that Mr. Juneau's Declaration should not have been used to resolve what appears to be a disputed factual issue without affording BP an opportunity on the public record to review, evaluate and challenge the Declaration's assertions. Indeed, the evidence BP has marshaled to date shows that Mr. Juneau was seriously mistaken in the statements he made in his Declaration. Contrary to his Declaration, the CSSP has ignored accrual-basis accounting records and instead used cash-basis records to process and pay claims. Moreover, the fact that the CSSP uses accrual-basis accounting records for a claim determination does not solve the problems identified by the Fifth Circuit because matching problems are not limited to claims that rely on cash-basis records. Because Mr. Juneau's Declaration was procedurally improper and, BP submits, factually inaccurate, it should be stricken and the Court therefore should not consider the Declaration in crafting an appropriate injunction.

## BACKGROUND

On October 2, the Fifth Circuit instructed this Court to enter an injunction to prevent "the potential loss to a company and its public shareholders of hundreds of millions of dollars of unrecoverable awards." Slip op. at 35. It explained that the Court should enter "[a] stay tailored so that those who experienced actual injury traceable to loss from the Deepwater Horizon accident continue to receive recovery but those who did not do not receive their payments until this case is fully heard and decided through the judicial process." *Id.*

On October 3, this Court entered an order that temporarily stayed the processing and payment of certain BEL claims.[1]  Rec. Doc. 11566.  The October 3 Order "immediately suspend[ed] the issuance of any final determination notices or any payments with respect to those BEL claims in which the Claims Administrator determines that the matching of revenues and expenses is an issue." *Id*. at 1.  While the October 3 Order did not explain how the Claims Administrator would identify those claims for which "matching of revenues and expenses is an issue," it expressly relied on Mr. Juneau's Declaration to find that "claims based on an accrual accounting basis are not being converted to a cash accounting basis." *Id*.  Thus, the October 3 Order might be read to suggest that claims presented on an accrual accounting basis do not present a "matching" issue and perhaps that they can continue to be processed and paid.

The Claims Administrator did not provide a copy of his Declaration to BP before the Court issued the limited injunction in the October 3 Order.  Accordingly, BP had no opportunity to challenge or rebut Mr. Juneau's assertions or submit contrary evidence prior to the issuance of the October 3 Order.

## **ARGUMENT**

The Claims Administrator's failure to provide BP with his Declaration prejudiced BP and violated its "[t]wo interrelated rights": "fair notice and an effective opportunity to controvert the facts."  *Marshall Durbin Farms, Inc. v. Nat'l Farmers Org., Inc.*, 446 F.2d 353, 356 (5th Cir. 1971).  Indeed, "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. B'hd of Teamsters*, 415 U.S. 423, 439, 94 S.Ct. 1113, 1124, 39 L.Ed.2d 435 (1974).  Even outside of the Rule 65 context, courts typically do not consider

---

[1]   This injunction is only an interim order until the Court can craft the injunction ordered by the Fifth Circuit. Rec. Doc. 11566, at 2.

3

evidence without notice to the parties and an opportunity to challenge it or respond to it.  *See, e.g., HS Res., Inc. v. Wingate*, 327 F.3d 432, 441 (5th Cir. 2003) (reversing *sua sponte* grant of summary judgment where there was "neither notice or an opportunity to present evidence before the district court" made its ruling); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("The essential requirements of due process . . . are notice and an opportunity to respond.").

*Marshall Durbin* is instructive.  In that case, the Fifth Circuit concluded that a party did not receive notice and an opportunity to respond where the party seeking preliminary relief presented dozens of new affidavits at the preliminary injunction hearing.  446 F.2d at 356−57.  The court stressed that there was no way that the party "could controvert [the late-filed evidence] with opposing affidavits or live testimony," and that it "had no opportunity even to determine if evidence existed that might contradict the new affidavits."  *Id.* at 357.  Here, the situation is worse.  BP obviously had no opportunity to challenge a Declaration it did not know about.  BP likewise did not have any opportunity to place contrary evidence before the Court or test the assertions made by the Claims Administrator.[2]  *See Scott v. Davis*, 404 F.2d 1373, 1375 (5th Cir. 1968).

Had BP been provided this opportunity, it would have presented specific evidence and examples to the Court that show Mr. Juneau is mistaken with respect to the core assertions in his Declaration.  For example, Mr. Juneau stated that the CSSP does not "ignore accrual-basis records when submitted and instead evaluate the claim from a cash-basis perspective."  Rec.

---

[2] While *Marshall Durbin* involved the rights of a party opposing injunctive relief, BP has a significant interest in ensuring that the injunctive relief entered by the Court, even on an interim basis, is consistent with the Fifth Circuit's instructions.  Among other things, the temporary relief needs to enjoin claimants who did not experience actual injury traceable to loss from the Deepwater Horizon accident from "receiv[ing] their payments until this case is fully heard and decided through the judicial process." Slip op. at 35.  Otherwise, BP would be exposed to the risk of a "potential loss … of hundreds of millions of dollars of unrecoverable awards" that the Fifth Circuit concluded BP should not face while the "judicial process takes its course." *Id.* at 34–35.

4

Doc. 11566, at 3. But the policy he attaches to his Declaration does not support that unequivocal statement. *See id.* at 4−9. Rather, Policy 464 provides that when a BEL claimant submits accrual-basis accounting records, the CSSP "typically" will use the accrual-basis records for calculating the amount of the claim and any applicable causation tests. *Id.* at 6. Significantly, the policy does not require the use of the accrual-basis records in all circumstances as Mr. Juneau now suggests. Policy 464 likewise does not prohibit the CSSP from using cash-basis accounting records in circumstances where a claimant submits both cash-basis and accrual-basis records. *See, e.g., id.* at 7 ("If the claimant submits both cash basis P&Ls and accrual basis P&Ls, the Claims Administrator ***typically*** will not use the cash basis P&Ls for any purpose.") (emphasis added); *id.* ("The Claims Administrator will not mix cash basis P&Ls … with accrual based P&Ls…. Instead, the Claims Administrator will ***use only cash basis P&Ls or accrual basis P&Ls*** consistently across all months….) (emphasis added); *id.* ("For claimants in Zones B, C or D that must establish Causation, the Claims Administrator will use the same set of P&Ls (***cash or accrual, but not both***) in determining the monthly revenue amounts to perform the Revenue Pattern Causation Tests and in performing the Compensation calculation.") (emphasis added).

In addition, contrary to Mr. Juneau's assurances, BP's review of claimant files shows that, in practice, the CSSP has favored cash-basis accounting records over accrual-basis records submitted by a claimant. BP's expert reviewed a sample of 35 claims in which both accrual- and cash-basis income statements were present in a claimant's file. Declaration of Todd Brents (attached as Exhibit C to Oct. 9, 2013 Godfrey Letter to the Court) ¶ 6. The CSSP calculated the compensation determination using the cash-basis records in 17 of those 35 cases. *Id*. On one claim, the CSSP reviewer noted that the claimant "provided two different versions of 2008, 2009 and 2010 P&Ls, cash and accrual," but nonetheless relied on the cash-basis records to make

calculations. *Id*. ¶ 7(d). A different claimant explained differences between the cash- and accrual-basis records by noting that, "until now," it had no "use for cash basis P&Ls." *Id*. ¶ 7(b). Nonetheless, the CSSP relied on the cash-basis records to make its compensation determination. *Id*. In other instances, a claimant submitted accrual-basis income statements to the GCCF and cash-basis income statements to the CSSP. *Id*. ¶ 7(a).

Moreover, even when the CSSP uses accrual-basis records, that does not solve the problems identified by the Fifth Circuit, because many of the accrual-basis records submitted have matching problems given the manner in which the records have been presented and/or used by the CSSP. BP's review of claimant files reveals that indicia of matching problems occur in accrual-basis claims at comparable rates to the general population of BEL claims. *See* Declaration of H. Sider (attached as Exhibit E to Oct. 9, 2013 Godfrey Letter to the Court) ¶¶ 31–34 & Table 5. This analysis shows that "matching problems are not limited to BEL claimants that rely on cash basis financial statements." *Id*. at 21.

## **CONCLUSION**

In sum, Mr. Juneau's Declaration was not only procedurally improper but, BP submits, also contrary to fact. Indeed, as set forth above, it is contrary to the expert declarations BP submitted to the Court. Therefore, it should be stricken and the Court should not consider the Declaration in crafting an appropriate injunction.

October 9, 2013

James J. Neath
Mark Holstein
BP AMERICA INC.
501 Westlake Park Boulevard
Houston, TX  77079
Telephone:  (281) 366-2000
Telefax:  (312) 862-2200

Daniel A. Cantor
Andrew T. Karron
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Telephone:  (202) 942-5000
Telefax:  (202) 942-5999

Jeffrey Lennard
Keith Moskowitz
DENTONS US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL  60606
Telephone:  (312) 876-8000
Telefax:  (312) 876-7934

*OF COUNSEL*

Respectfully submitted,

  /s/ Richard C. Godfrey, P.C.
Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
David J. Zott, P.C.
Jeffrey J. Zeiger
Wendy L. Bloom
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000
Telefax:  (312) 862-2200

Jeffrey Bossert Clark
Steven A. Myers
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 879-5000
Telefax:  (202) 879-5200

  /s/ Don K. Haycraft
S. Gene Fendler (Bar #05510)
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone:  (504) 581-7979
Telefax:  (504) 556-4108

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 662-5985
Telefax:  (202) 662-6291

***ATTORNEYS FOR BP EXPLORATION &
PRODUCTION INC.
AND BP AMERICA PRODUCTION COMPANY***