# October 23, 2013
# Notice of Filing Exhibit VI.2

Case 2:10-md-02179-CJB-DPC   Document 11726-25   Filed 10/23/13   Page 2 of 8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * * * * | MDL NO. 2179 |
| | | SECTION J |
| | | HONORABLE CARL J. BARBIER |
| This document relates to Civ. A. No. 12-970. | * * * | MAGISTRATE JUDGE SHUSHAN |

DECLARATION OF HAL SIDER

I, Hal Sider, hereby declare and state as follows:

1. I am over the age of 21 years and a resident of the State of Illinois. Unless otherwise stated, I have personal knowledge of the facts set forth herein and, if called to do so, could testify truthfully thereto.

2. I am an Executive Vice-President of Compass Lexecon, an economic consulting firm with its headquarters in Chicago, IL. I have been retained by BP and my responsibilities include monitoring the implementation of the BEL framework of the Settlement Agreement by the Court Supervised Settlement Program (CSSP). I previously submitted declarations in this matter on February 18, 2013, March 14, 2013, April 21, 2013, July 16, 2013, August 5, 2013, September 20, 2013, and October 9, 2013. My February 18 declaration summarizes my qualifications and includes my curriculum vitae.

1

## I.     Introduction and Overview

3.     Class Counsel has enumerated eight criteria for excluding claimants from the preliminary injunction order proposed in their October 15, 2013 submission which would enable these claims to be processed without further review for matching problems.  The first three exclusions proposed by Class Counsel are based on data derived from monthly profit and loss (P&L) statements submitted by BEL claimants to the CSSP.  The other five proposed exclusions reflect a variety of factors, including (i) whether accountants have reviewed or audited certain of BEL claimants' financial statements, (ii) the presence of reconciling items on schedule M-1 or M-3 on BEL claimants' federal tax returns, (iii) whether BEL claimants' financial statements consistently apply accrual-based accounting statements, and (iv) whether claims are submitted in accordance with Claims Administrator's Policy 466, which applies to certain small BEL claimants that maintain irregular financial records.  Class Counsel's proposals would enable BEL claimants that satisfy any one or more of the eight proposed criteria to be excluded from the injunction and have their BEL claims processed without further review for matching problems.

4.     I have been asked by counsel for BP to evaluate the frequency with which BEL claimants would be excluded from the preliminary injunction proposed by Class Counsel and would proceed without further review for matching problems.  My analysis relies on the monthly revenue and variable expense data recorded in P&L statements submitted by more than 11,500 BEL claimants.  These data have been extracted from BEL workbooks prepared by CSSP for claimants that have received BEL offers.

5.     My analysis indicates that 99.5% of BEL offers made to date would have been excluded from the preliminary injunction and would have been processed without further review for matching problems based on the three exclusions proposed by Class Counsel based on P&L

2

data alone. Yet, analysis presented in my October 9 declaration and earlier declarations, as well as analysis presented by other experts, indicates that a large share of BEL offers are based on P&L data that exhibit significant matching problems. Consideration of the additional exclusions proposed by Class Counsel would only expand the number of BEL claims that would not face a review for matching problems, since claimants that meet any one of the proposed criteria would be excluded from the preliminary injunction under their proposal.

6. In sum, the exclusions proposed by Class Counsel are flawed and are not effective in identifying BEL claims that suffer from potential matching problems.

## II. Evaluation of Class Counsel's Proposed Exclusions Based on P&L Data

7. Class Counsel has proposed three exclusions from the preliminary injunction based on P&L data submitted by BEL claimants.[1,2] Under Class Counsel's proposal, claimants that meet any of the following criteria would be excluded from the proposed injunction enabling these claims to be processed without further review for matching problems.

8. Each of these metrics can be evaluated using P&L data submitted by BEL claimants that have received offers to date. My analysis utilizes monthly "revenue" and "variable expenses" recorded in CSSP's BEL workbooks, and relies on the compensation months

---

1. These are the first three exclusions listed on p. 2 of Class Counsel's [Proposed] Order Modifying Temporary Injunction. Below, I refer to the first two proposed exclusions as (i) the "Variable Expense / Benchmark Period Test" which compares average monthly variable expenses in the compensation months of the benchmark period and average variable expenses in all months of the benchmark period; and (ii) the "Variable Expense / 2010 Test" which compares the average monthly variable expenses in the compensation months of 2010 and average monthly variable expense in all months of the benchmark period. Class Counsel's third proposed exclusion is the "Variable Margin Reasonability Test," a complex 2-prong calculation that compares the average variable margin defined in percentage terms (i) between the compensation months in 2010 and full year of 2010; and (ii) between the compensation months in the benchmark period and all months in the benchmark period.
2. Class Counsel cite page 8 of my October 9, 2013 declaration as the basis for setting the threshold in Variable Margin Reasonableness Test at 7.5 percentage points. However, Class Counsel's reliance on my declaration for establishing this threshold is incorrect. In effect, Class Counsel make an "apples and oranges" comparison, incorrectly asserting that a threshold for the metric identified in my declaration is an appropriate justification for defining a threshold for an altogether different metric. Specifically, my analysis compared (i) a given month's share of annual revenue and (ii) the same month's share of annual variable expenses. The VMR test, however, compares the difference in the variable margin percentage between different sets of months.

3

and benchmark years used as the basis of CSSP's offer to 11,573 BEL claimants.[3] As discussed in my prior declaration as well as those of other experts, the monthly "revenue" and monthly "variable expenses" recorded in these workbooks reflect amounts recorded by claimants, not monthly revenue earned and corresponding monthly variable expenses incurred, as these concepts are applied in economics and accounting.

9. As shown in Table 1, fully 99.5% of the 11,573 BEL claimants analyzed would be excluded from the injunction and would be processed without a matching review based on the three P&L-based exclusion criteria proposed by Class Counsel. That is, only 58 of the 11,573 BEL claimants that have received offers would have faced a matching review based on these three P&L-based exclusion criteria proposed by Class Counsel. Moreover, any of these 58 BEL claimants that met any of the other 5 exclusion criteria proposed by Class Counsel would be excluded under the injunction and would be processed without facing a matching review. As Table 1 indicates, fully 96% of BEL claimants would be excluded under Class Counsel's Proposed Exclusion 1 alone, 93% would be excluded under Proposed Exclusion 2 alone, and 73% would be excluded under the proposed Variable Margin Reasonability Test alone. Table 1 summarizes these results:[4]

---

3. This sample includes the vast majority of claimants that have received BEL offers to date. The number of offers analyzed here is larger than that used in my October 9, 2013 declaration because evaluation of Class Counsel's proposals requires only monthly information for "revenue" and "variable expenses" recorded in BEL workbooks and does not require line item detail from claimant P&Ls. My October 9 analysis required line-item detail, which is available only for roughly 9,800 BEL offers.

4. As noted above, Class Counsel's second proposed exclusion, which I refer to as the "Variable Expense / 2010 Test" compares the average monthly variable expenses in the compensation months of *2010* and average variable expense in all months of the *benchmark period*. Class Counsel does not explain why the test involves comparison between the benchmark period and 2010, while the other P&L-based tests they proposed involve comparisons only within 2010 or within the benchmark period. I have also evaluated this proposed exclusion comparing average monthly expenses in the compensation months of 2010 and average variable expense in all months of 2010 in case Class Counsel's description of this criterion is in error. This alternative specification would slightly raise the number of claimants excluded from the injunction and from a matching review.

4

Table 1
**Summary of BEL Offers Excluded From Injunction Under PSC Financial Criteria**

| | | Proposed Exclusions | | | |
| --- | --- | --- | --- | --- | --- |
| Sample | Claims | Variable Expense / Benchmark Period Test | Variable Expense / 2010 Test | Variable Margin Reasonability Test | Excluded Under Any Test |
| All Claims | 11,573 | 96.0% | 93.4% | 73.4% | 99.5% |
| Accrual Accounting Sample | 145 | 98.6% | 96.6% | 58.6% | 99.3% |
| Cash Accounting Sample | 74 | 91.9% | 93.2% | 64.9% | 98.6% |

Notes: 1. Average Variable Costs in the Step 1 months of the Benchmark Period are less than two times the average Variable Cost in the Benchmark Years
2. Average Variable Costs in the Step 1 months of 2010 are less than two times the average Variable Cost in the Benchmark Years

10. Class Counsel's P&L-based exclusion criteria would have required CSSP to perform a matching review for only a handful of BEL claimants that received offers despite evidence of widespread matching problems among these claimants. For example, among the BEL claimants analyzed in my October 9 declaration,[5] roughly 94% exhibited irregularities in the recorded P&L data with respect to one or more of the following measures: monthly revenue, monthly variable expenses, monthly variable margins; the presence of negative monthly values for revenue or variable expense items; or concentrated monthly bad debt expenses. Each of these metrics identifies irregularities in recorded P&L data which are indicative of potential matching problems. My analysis of these data has not been challenged by Class Counsel. Thus, Class Counsel's proposed P&L-based criteria would exclude from a matching review a large number of BEL claimants with financial data that indicate the presence of potential matching problems.

11. Reliable criteria for excluding claims from the injunction and from a matching review would not be expected to exclude claimants using cash-basis accounting. However, my analysis indicates that Class Counsel's proposed criteria would have excluded nearly all cash-

---

5. This sample includes all claimants which would have been excluded using Class Counsel's proposed financial exclusions for which line-item financial data are available.

5

basis claimants from such a matching review. As discussed in my October 9, 2013 declaration, 500 randomly selected BEL offers above $100,000 were reviewed under my direction and this review identified 74 claimants that used cash basis accounting and 145 that used accrual basis accounting. Application of Class Counsel's proposed exclusions based on P&L data to these sample claims would exclude from the injunction and a matching review 98.6% of the sample of cash-basis claimants identified. Similarly, application of the proposed financial criteria would exclude 99.3% of the sample of accrual-basis claimants from the injunction and a matching review. These results are reported in Table 1 above.

### III. Discussion and Conclusions

12. My analysis indicates that Class Counsel's proposed P&L based criteria are flawed, and would exclude nearly all claimants from a matching review despite evidence indicating the presence of potential matching problems for a large number of these BEL claimants.

13. There are a variety of flaws that render unreliable these proposed P&L-based exclusions. For example, the proposed tests fail to properly identify claims subject to matching problems because they only attempt to identify matching problems using comparisons between measures of "variable expenses" and "variable margins" recorded during the "optimal" compensation months and averages of these measures over longer annual periods. However, as noted in prior declarations and those of other experts, monthly "variable expenses" and monthly "variable margins" recorded in Claimants' P&L data outside of the "optimal" compensation months also can exhibit matching problems, and such problems distort measurement of "variable expenses" and "variable margins" both inside and outside of the "optimal" compensation months. To take only one often-discussed example, the presence of large variable expenses

6

(such as bad debt expenses) in December is indicative of a potential matching problem. If these large December expenses occurred in the benchmark years, the "optimal" set of compensation months would be unlikely to include December (since doing so would be likely to lower benchmark period variable profit and lower BEL compensation). In this example (which is one of many possible examples), the irregularity is most clearly identified outside of the optimal compensation months and thus would not necessarily be properly identified in Class Counsel's proposed P&L-based metrics, despite the potential for matching problems that distort the calculation.

       Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is a true and correct statement of my analysis and opinions.

Dated: October 18, 2013

_____
Hal Sider