# October 23, 2013
# Notice of Filing Exhibit VI.3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | * | **MDL NO. 2179** |
| "Deepwater Horizon" in the | * | |
| Gulf of Mexico, on April 20, 2010 | * | **SECTION: J** |
| | * | |
| | * | |
| This document relates to all actions. | * | **HONORABLE CARL J. BARBIER** |
| | * | **MAGISTRATE JUDGE SHUSHAN** |
| | * | |
| | * | |
| | * | |
| | * | |

## DECLARATION OF BRIAN L. GASPARDO

I, Brian L. Gaspardo, declare and state as follows:

1.      I am over the age of 18 and am a resident of the State of Illinois.   Unless otherwise stated, I have personal knowledge of the facts set forth herein, and, if called to do so, could testify truthfully thereto.

2.      I am the Managing Member of O'Neill & Gaspardo, LLC, a Consulting and CPA firm located in Mokena, Illinois.  I am a Certified Public Accountant and have over 20 years of professional experience performing audit, tax, accounting, business valuation, financial analysis, and consulting services for clients throughout the United States.  I received a B.A. in economics from Harvard University in 1991 and an M.B.A. from the University of Chicago in 2001.  I serve on the Boards of Old Plank Trail Bank and La Rabida Children's Hospital in Chicago.  I have testified and submitted reports as an expert witness on a variety of topics, including business performance, business valuation, accounting, and financial reporting.

3.      BP retained me to assist in the review of the accounting records and claim files for numerous BEL claims filed with the Court Supervised Settlement Program ("CSSP").  To

date, my firm has reviewed in excess of one thousand BEL offers made by the CSSP and the claim files associated with those claims.

4.      This declaration addresses the eight proposed exclusions from the Court's preliminary injunction order proposed by Class Counsel in their October 15, 2013 Submission. Section I below explains that accurate financial statements require the application of matching principles for both revenue recognition and expense recognition.   Section II below addresses Class Counsel's eight proposed exclusions which, if implemented, would allow claims that fail to correctly match revenues and corresponding variable expenses to avoid the injunction and receive compensation.  If these proposals are adopted, the CSSP will continue to produce BEL awards that are inconsistent with any reasonable understanding of the calculation of damages.

**I.      Accurate Matching Requires Both Revenue Recognition and Expense Recognition Principles**

5.      I understand that Class Counsel has explained that the CSSP should restrict matching to the re-allocation of certain variable expenses across months.  Such an approach would permit CSSP to continue to ignore irregularities and inconsistencies in monthly revenues reported by claimants. (Class Counsel In Camera Proposed Injunction, p.1)

6.      The temporal matching of revenues to the period when actual economic activity created those earnings, however, is central to the evaluation of a firm's performance and, importantly, to the measurement of the impact of the spill on a firm's profitability.  Properly matching earnings with the period where the goods or services were delivered is especially important in achieving a "realistic measurement of economic loss" (Fifth Circuit October 2, 2013 Opinion, "Opinion", p. 38) and to fairly "represent actual economic losses or lost 'variable profits'". (Opinion, p. 17)

7.      The Settlement Agreement's requirement that variable profit be determined as revenue minus corresponding variable expenses requires correctly (i) identifying when a claimant earns revenue and (ii) identifying the corresponding variable expenses incurred to generate that revenue.   This proper measurement and recognition of revenue and the identification and recognition of the related expense is a fundamental concept in financial reporting and analysis.  Under appropriate matching principles, the timing of the receipt of cash payment is *not* equivalent to the timing of when revenue is earned.  Mismeasurement of revenue in a month necessarily implies that variable profit for the month will be incorrectly measured, and, as a result, any BEL claim determination using that incorrect data will be distorted.

8.      Revenues must be recognized consistent with an entity's earning activity over time to yield an economically reasonable measure of performance.   Instead, Class Counsel proposes to maintain a fundamental element of the Claims Administrator's approach — that revenue is whatever was recorded in the claimant's records at the time — which the Fifth Circuit overturned.   Class Counsel's proposal would continue to allow BEL claims determinations disconnected from any reasonable understanding of the calculation of damages.

II.      **Comments on Exclusions Proposed by Class Counsel for Excluding BEL Claims From the Court's Injunction**

9.      Class Counsel has proposed eight exclusions from the Court's preliminary injunction order.  Any one exclusion alone would exempt a BEL claim from the injunction, so even where a claimant satisfies only a single exclusion-and none of the others- the claim would not be subject to the injunction.  Such an approach would allow BEL claims with improperly matched monthly financial data to be processed and paid.  Identification of matching problems in monthly data cannot be based on abstract criteria or annual filings, and instead requires a detailed review of the financial data submitted by BEL claimants.

3

10.     The proposed exclusions suffer from fundamental conceptual flaws. All eight ignore the importance of ensuring revenues are properly stated on a monthly basis. As a result, the Class Counsel exclusions allow all BEL claims to proceed with no review of whether revenue recognition is accurately stated in the claimant's monthly P&Ls. This means BEL claims with inaccurate revenue recognition will not be enjoined from processing and payment. Additionally, each of the eight exclusions would allow BEL claims to be processed instead of enjoined even where specific or systematic indicia of a failure to accurately match revenues and corresponding variable expenses exist in the BEL claimant's underlying monthly financial statements. That is, each exclusion would allow BEL claims to continue to be processed and paid even if they exhibit irregular monthly expense or revenue patterns.

11.     My prior declaration dated October 9, 2013 included Exhibit A listing 73 BEL claims in which the BEL claimants professed to follow the accrual basis but submitted monthly financial statements exhibiting indications of a failure to match revenues and corresponding expenses. Those examples do *not* include any of the thousands of cash basis claimants which, by definition, would not be attempting to match revenues and expenses. I have reviewed all 73 of those BEL claim files to determine whether under Class Counsel's preliminary injunction proposal the claim would be enjoined from payment or whether it would pass through one of Class Counsel's eight exclusions and not be reviewed for matching issues. Of those 73 BEL claimants exhibiting matching issues identified in my prior declaration, based on my specific examination of the BEL claim files, *none* would be subject to the preliminary injunction using Class Counsel's proposed exclusions as shown in Exhibit 1 and discussed below.

12.     The eight exclusions are inappropriate for the following specific reasons:

4

**Class Counsel Proposed Exclusions1 and 2**

- *The claimant's average monthly variable expenses during the benchmark months included in the BEL calculation do not exceed twice the average monthly variable expenses during the year.*

- *The claimant's average monthly variable expenses during 2010 months included in the BEL calculation do not exceed twice the average monthly variable expenses during the year.*

13.     These two exclusions both focus exclusively on expenses and do not address the matching requirement.  Both would allow claimants to evade the injunction without matching revenues and expenses that have been improperly recorded on a monthly basis.  That is, they ignore the claimant's monthly financial statements to focus on overall averages which may or may not detect the presence of matching distortions.  As such, these exclusions would not capture BEL claimants with improperly stated monthly revenues; indeed, the exclusions ignore revenue entirely and thus do not address whether expenses and revenues are properly matched.  Matching requires identifying both in what month revenue was earned as well as when the corresponding expenses were incurred.

14.     The expense criteria defined in these exclusions would mask wide swings in monthly expenses due to the exclusions' reliance on average expenses over the months included in the compensation calculation.  Even claimants with extremely large variable expense deviations may not be reviewed using Class Counsel's proposed thresholds.  The chart below depicts a situation where a claimant has a matching issue and improperly records $375,000 of expenses in a single month, July, while recording $75,000 per month in variable expenses in all other months.  Under Class Counsel's proposal, this claim would not be enjoined because the average monthly expense in the compensation period ($175,000) would be below the proposed threshold ($200,000) despite the presence of a matching issue.

**BEL Claims That Would Proceed to Processing Under Proposed Criteria 1 or 2**
Example Based on 3-Month Claimant Compensation Period: June-August



15.     Each of the 73 examples of BEL claims included with my October 9, 2013 declaration would meet one of these two requirements and not be subject to the injunction. In fact, 72 of the 73 examples would be excluded from the injunction under *both* Class Counsel's Proposed Exclusion 1 and Class Counsel's Proposed Exclusion 2.

### Class Counsel Proposed Exclusion 3

*   *Claims that pass Class Counsel's proposed "Variable Margin Reasonability" exclusion.*

16.     Exclusion 3 suggests four different measurements which would allow a claimant to be excluded under the Court's injunction. These measurements calculate variable profit percentage during the compensation months of 2010 and the benchmark period and compare

6

those results to annual variable profit percentages in those years. The limitations of the margin variability exclusion proposed by Class Counsel are similar to those discussed for Rules 1 and 2 above. Generally, month-to-month variation in variable margins is just one indicator of matching problems observed in claimant's financial data and a single criterion does not enable all types of matching problems to be identified. Further, attempts to identify irregular variable margins using all compensation months can mask large swings in any one month, so the proposed metric may not identify even large monthly swings in one month's variable profit which would be indicative of matching problems.

17.     While some of the examples included with my October 9 declaration would be excluded from the injunction under Class Counsel's proposed Exclusion 4, such exclusion would be irrelevant because each of those claimants had already fallen under one or both of the first two exclusions and would not be subject to the injunction despite clear indicia of matching errors.

**Class Counsel Proposed Exclusion 4**

• *Claimants covered under PSC Policy 466*

18.     Policy 466 describes a short-cut method or rule of expediency for certain claimants who have irregularities in their monthly profit and loss statements due to the absence of expenses, and the Policy also describes the methods the CSSP will apply in those situations. This policy does not, however, deal with the important question of how revenues will be matched to the monthly periods in which earnings activity took place. Without properly matching revenues temporally with the months of earning activity, any comparison between periods will be distorted and yield economically irrational results based on the idiosyncratic receipt of cash or invoicing rather than actual earnings activity.

19.     This exclusion could not be applied to the BEL claim examples from my October 9 declaration as none of the BEL claimants fell into this category.

7

**Class Counsel Proposed Exclusion 5 and 6**

- *The claimant submitted audited financials.*

- *The claimant has an accountant's "standard review" letter.*

20.     These two exclusions are closely related to each other since both an audit and an accountant's "standard review" involve varying degrees of professional examination and reporting on an entity's financial statements. As my October 9 declaration discussed, audited and/or accrual-basis financial statements relied on by the CSSP frequently reflect matching problems. Additionally, both audited and reviewed financial statements are conducted almost exclusively at year-end. Audit and review procedures do *not* confirm the accuracy or reliability of any monthly data, and do not apply corrections or modifications to any monthly financial data. An audit or review at year-end does not assure - or even consider - whether monthly financial data is accurately recorded or properly matched. As such, audited or reviewed financial statements provide no assurance that monthly data is properly matched or accurately reflects economic reality during the months used in the BEL framework.

21.     This exclusion could not be evaluated for the 73 BEL claimants included with my October 9 declaration as audited or reviewed statements are not currently part of the documentation requirements of Exhibit 4A. There are, however, examples of BEL claims in the population of more than 1,000 BEL claims that I have reviewed where BEL claimants submitted audited financial statements but had significant matching issues in the related monthly financial statements submitted.

**Class Counsel Proposed Exclusion 7**

- *Claimant's federal tax return lists Accrual as its method of accounting and there is no reconciling item on schedule M-1 or M-3 to the contrary.*

8

22. This exclusion suffers from the same shortcomings as the audited and reviewed financial statements exclusions described above, but with the added distortion that even the year-end data is less likely to be correct. Unlike audited or reviewed statements, tax returns undergo no testing or analytical review. Additionally, checking "accrual" on the tax return offers no assurance that accurate accrual basis financial statements were prepared on a monthly basis. My prior declaration addresses the many matching issues found even in claimants who profess to follow "accrual" accounting. This exclusion offers no assurance or indicia that a BEL claim is free of matching errors.

23. 51 of the 73 examples (70%) of BEL claims from my October 9 declaration would not be subject to the injunction using this proposed exclusion. However, as all BEL claimants already passed using the first proposed exclusion, this exclusion would be irrelevant.

### Class Counsel Proposed Exclusion 8

• *The claimant uses "consistently applied accrual-based accounting methods."*

24. Even consistently-applied methodologies can be subject to the kind of matching problems identified by the Fifth Circuit. For example, claims based on "consistently applied" monthly cash-basis financial statements necessarily suffer from the identified matching problems, and yield distorted results when the timing of cash flows do not coincide over time. Similarly, "consistently applied" monthly accrual-based financial statements frequently contain matching problems because, as explained in my prior declaration, monthly accrual based statements do not fully reflect corrections and adjustments that are incorporated into annual statements. For example, reporting corrections and adjustments at year-end imply that both data for both December and the prior month, subject to the correction, will fail to accurately reflect revenue and/or variable expenses. In short, "consistently-applied" does not mean—or even

9

imply—accurate, and these BEL claims are equally likely to contain matching errors and distortions.

25. 68 of the 73 examples of BEL claims (86%) from my October 9 declaration would not be subject to the injunction using this proposed exclusion. However, as all BEL claimants already passed using the first proposed exclusion, this exclusion would be irrelevant.

26. As described above, under these exclusions many BEL claims would not be subject to the injunction and would be paid despite obvious matching issues.


I declare under penalty of perjury that the foregoing is a true and correct statement of my opinions and analysis.

Executed this 18th day of October, 2013.


Brian L. Gaspardo
O'Neill & Gaspardo, LLC

**Exhibit 1:  Proposed Exclusion Provisions Relating to Examples Identified in October 9 Gaspardo Declaration**

| Claim | Business Name | Proposed Exclusion | | | | |
|-------|---------------|:---:|:---:|:---:|:---:|:---:|
| | | 1 | 2 | 3 | 7 | 8 |
| 18 | | X | X | | | X |
| 49 | | X | X | | | X |
| 45 | | X | X | | X | X |
| 56 | | X | X | X | X | X |
| 82 | | X | X | | | X |
| 14 | | X | X | | | X |
| 38 | | X | X | | X | X |
| 16 | | X | X | X | X | X |
| 00 | | X | X | | X | X |
| 21 | | | X | | | X |
| 11 | | X | X | | | X |
| 03 | | X | X | | | X |
| 15 | | X | X | X | | X |
| 14 | | X | X | X | | X |
| 19 | | X | X | X | X | X |
| 76 | | X | X | | X | X |
| 62 | | X | X | | X | X |
| 39 | | X | X | | X | X |
| 21 | | X | X | | X | X |
| 32 | | X | X | | X | X |
| 18 | | X | X | X | X | X |
| 03 | | X | X | | X | X |
| 11 | | X | X | X | | |
| 98 | | X | X | | X | X |
| 99 | | X | X | | X | X |
| 81 | | X | X | | | X |
| 89 | | X | X | | X | X |
| 35 | | X | X | | | |
| 58 | | X | X | | X | X |
| 07 | | X | X | X | X | X |
| 59 | | X | X | | X | X |
| 98 | | X | X | | X | X |
| 37 | | X | X | X | X | X |
| 50 | | X | X | X | X | X |
| 32 | | X | X | | X | X |
| 50 | | X | X | X | X | X |
| 69 | | X | X | | | X |
| 68 | | X | | | X | X |
| 26 | | X | X | | X | |
| 00 | | X | X | | X | X |

X - Denotes claim would fall under exclusion and *not* be subject to the injunction.

**NOTE:** Exclusions 4, 5 and 6 could not be specifically tested due to information limitations.

**Exhibit 1: Proposed Exclusion Provisions Relating to Examples Identified in October 9 Gaspardo Declaration**

| Claim | Business Name | Proposed Exclusion 1 | 2 | 3 | 7 | 8 |
|-------|---------------|---|---|---|---|---|
| 86 | | X | X | | | |
| 02 | | X | X | | X | X |
| 31 | | X | X | X | X | X |
| 91 | | X | X | | | X |
| 38 | | X | X | | | X |
| 23 | | X | X | | X | X |
| 38 | | X | X | | X | X |
| 78 | | X | X | | | X |
| 73 | | X | X | | | X |
| 55 | | X | X | | X | X |
| 02 | | X | X | | X | |
| 15 | | X | X | | X | X |
| 85 | | X | X | X | X | X |
| 88 | | X | X | X | X | X |
| 04 | | X | X | X | X | X |
| 62 | | X | X | | | X |
| 99 | | X | X | | X | X |
| 16 | | X | X | X | X | X |
| 75 | | X | X | | X | X |
| 08 | | X | X | | | X |
| 55 | | X | X | X | | X |
| 36 | | X | X | | X | X |
| 67 | | X | X | | X | X |
| 71 | | X | X | | X | X |
| 30 | | X | X | | X | X |
| 07 | | X | X | | X | X |
| 37 | | X | X | | | X |
| 55 | | X | X | X | X | X |
| 95 | | X | X | | X | X |
| 45 | | X | X | | X | X |
| 95 | | X | X | X | X | X |
| 28 | | X | X | X | X | X |
| 18 | | X | X | | X | X |

X - Denotes claim would fall under exclusion and *not* be subject to the injunction.

**NOTE**: Exclusions 4, 5 and 6 could not be specifically tested due to information limitations.