# IN CAMERA SUBMISSION

**To:** Judge Barbier

**From:** Class Counsel

**Re:** In re: *Deepwater Horizon*
    MDL No. 2179

**Subject:** Fifth Circuit Ruling on BEL Appeal

**Date:** October 9, 2013

In response to the Court's Order of October 3, 2013 [Doc 11566], Class Counsel respectfully submit the following letter brief regarding the interpretation and potential application of the decision of the U.S. Fifth Circuit Court of Appeals in No. 13-30315 dated October 2, 2013:

### The Fifth Circuit's Decision

Class Counsel interpret the Fifth Circuit's decision as follows:

- **Revenue is <u>not</u> to be "smoothed".** All three judges on the Panel rejected BP's argument that the Settlement Program should "smooth" occasional "spikes" in revenue that might occur within the claimants' "comparable" Benchmark and Compensation Periods. As noted by Judge Clement: "BP's primary concern seems to be the uneven cash flows of certain types of businesses. We accept this possibility, but we see nothing in the agreement that provides a basis for BP's interpretation. Despite the potential existence of this kind of distortion, the parties may not have considered it, agreed to ignore it, or failed for other reasons to provide clearly for this eventuality. The district court was correct that BP's proposed interpretation as not what the parties agreed." OPINION, p.25. This finding appears in Part I of Judge Clement's opinion, which was joined by Judge Southwick. And it is clear that Judge Dennis also agrees.[1]

- **Any further "matching" of Expenses that the Court might direct is <u>not</u> necessary where the claimant's financials were prepared and submitted on an Accrual Basis.** As the Claims Administrator has already addressed the issue of

---

[1] "This appellate court must uphold the district court's judgments affirming the Administrator's rejection of BP's actions to force him to modify, or to revise his interpretation of, the district court's consent decree incorporating the parties' settlement agreement." OPINION, p.41 (Dennis, concurring in part, and dissenting in part).

"Accrual-based Claimants" as referenced in Part I.B. of the opinion,[2] the only potential matching of expenses issue relates to "Cash-basis Claimants" as referenced in Part 1.C.[3]  The Court's remand, therefore, clearly does *not* apply to claimants who maintained and submitted their financials on an Accrual basis.  In addition to the headings, the Court specifically characterizes revenue and expenses from Accrual-based claimants as already "sufficiently matched" and makes clear that the Court's inquiry on remand is limited to a potential modification of the treatment of Cash-based claims. OPINION, p.18 ("The fact that Exhibit 4C requires processing of claims supported by sufficiently-matched, accrual-based accounting should inform but does not control how cash-basis claims are to be analyzed"); *see also,* OPINION, p.20 ("At least as to claims presented on an accrual basis, not only did BP not assent to ignoring the need for matching revenues with expenses, it clearly insisted on it"). Similarly, the Court characterizes BP's position as an argument that "Exhibit 4C represents an agreement on a specific accounting methodology, based loosely on *accrual* accounting revenue and expense recognition principles." OPINION, p.19 (emphasis supplied).  Along these lines, the Court notes that: "Because *cash* accounting does not inherently recognize relationships between cash flows and their underlying transactions, the term 'corresponding variable expenses' reasonably could imply an *accrual*-style framework inherent in Exhibit 4C." OPINION, pp.19-20 (emphasis supplied). Clearly, Judge Clement, joined by Judge Southwick, only found BP's matching of expenses arguments applicable to Cash-based claims.

- **The standards for Causation under Exhibit 4B were not before the Court, and have not been disturbed or affected.**  Despite the opinions expressed in Part II of Judge Clement's opinion, Judge Southwick writes that "I do not join in the broader Rule 23 analysis that appears in Part II" and "I would not make the pronouncements that appear in Part II." OPINION, p.37 (Southwick, concurring).  While Judge Southwick seems to suggest that the Court might give some attention to the issue on remand, it is worth noting that: **(i)** the propriety of class certification and settlement approval under Rule 23 is separately raised by Objectors in a different Fifth Circuit

---

[2]*See* JUNEAU DECLARATION (Oct. 3, 2013) [Doc 11566].

[3]*See* OPINION, p.16.

appeal scheduled for oral argument on November 4, 2013, in No. 13-30095;[4] and **(ii)** Judge Southwick, in his concurrence, correctly recognizes the fact that "Exhibit 4B of the Settlement Agreement allowed causation to be supported by loss calculations under Exhibit 4C rather than by requiring the claimant to prove that the loss had any factual relationship to BP's actions.  No one on appeal is challenging Exhibit 4B." OPINION, pp.38-39 (Southwick, concurring).  Class Counsel do not know whether BP intends to attempt to ask the Court to reconsider the causation issue, but, in that event, Class Counsel would suggest that: **(iii)** BP is judicially estopped from raising the issue on remand (or otherwise) based on the representations in BP's filings in support of Settlement Approval as well as the statements made by BP Counsel to the Court on December 12, 2012;[5] and **(iv)** the parol evidence in the record clearly and unambiguously establishes that the Settlement Agreement was intended to be applied in the way that the Claims Administrator has always interpreted and applied it.[6]

- **To the extent any additional "matching" of Expenses in Cash Basis Claims might be required, it should <u>not</u> require additional Documentation.** Addressing the argument that matching of expenses in Cash Basis claims was precluded by the Documentation provisions set forth in Exhibit 4A of the Settlement Agreement, which require claimants who prepared their financials on a Cash Basis to submit

---

[4]The Settlement Agreement, in this regard, is a contract between the Parties, which is valid and enforceable irrespective of whether the Court approves it as a Class Settlement under Rule 23. *See, e.g.,* SETTLEMENT AGREEMENT, Sections 4.1, 4.4, 5.12, 21.2, 21.3, 26.1 and Exhibit 26.  Even assuming *arguendo* that Rule 23 concerns might have implications for the continued certification of the class or enforceability of the class-wide release in favor of BP, (which is denied), there is no "Article III inquiry" into the validity or enforceability of a private settlement agreement or individual release.

[5]*See* Rec. Docs. 8963-60 (from 7114-1), 8963-73 (from 7945), and 8963-75.  BP's Appeal Counsel, Mr. Olsen, also represented to the Fifth Circuit Panel during oral argument that the alternative causation issue BP was complaining about in the press was not actually before the Court, and that BP disagreed with Judge Clement's implication that there might be no consideration with respect to some of the classmembers' claims. According to our unofficial transcript:

Q.   If you look at 4B, where is BB's consideration for agreeing to pay those claims without proving they were caused by the Oil Spill?

A.   This is a settlement, and with respect to the causation issue, that is not the issue that is before this court....   The settlement agreement, with respect to 4B as to causation, provided a mechanism which allowed someone to come through the door to be then entitled to prove the amount of actual lost profits.  It was a compromise, which every settlement agreement is, with respect to causation issues....

[6]*See, e.g.,* Rec. Docs. 8963-61, 8963-62, 8963-66, 8963-67, 8963-68, 8963-71, and 9087-1.

those Contemporaneous Cash Basis financials to the Settlement Program, the Court comments that: "The difference is between what claimants had to present – either cash-basis or accrual-basis claims – and what the Administrator thereafter was to do." OPINION, p.20. Hence, it is clear that whatever (if any) further matching of expenses the Claims Administrator might be called upon to make with respect to Cash-based claimants, the Settlement Program is to do it utilizing the existing Documentation.

**Temporary and Limited Injunction**

Class Counsel propose the following:

> The Settlement Program is enjoined from issuing or paying determinations on: **(i)** Business Economic Loss (BEL) claims, that are **(ii)** predicated on monthly profit and loss (P&L) statements that were prepared and submitted utilizing a Cash Basis accounting method; **(iii)** within the agriculture, construction, professional services, real estate, wholesale trade, manufacturing, and retail trade industries.
>
> The North American Industry Classification System ("NAICS") codes for these specified industries are all codes starting with 11 (except 114111, 114112, 114119, and 114210), 23, 31 (except 311711 and 311712), 32, 33, 42 (except 424460), 44, 45, 53, or 54.
>
> This injunction does not affect the Business Economic Loss (BEL) claims of Entities in other, non-specified industries.
>
> This injunction does not affect the Business Economic Loss (BEL) claims of any Entities who prepared and submitted monthly profit and loss (P&L) statements utilized an Accrual-based accounting method.
>
> This injunction does not affect claims submitted to the Settlement Program for: **(i)** Seafood Program Compensation, **(ii)** Individual Economic Loss, **(iii)** Subsistence, **(iv)** VoO Charter Payments, **(v)** Vessel Physical Damage, **(vi)** Coastal Real Property Damage, **(vii)** Wetlands Real Property Damage, or **(viii)** Real Property Sales Damage.

**Effect on Settlement Program Appeal Orders**

The Court's Orders of April 9, 2013 and April 24, 2013 [Rec. Docs. 9232 and 9538] should remain in effect with respect to (a) the "Contributions/Grant Revenue for Non-Profits issue" and (b) the "Alternative Causation issue".  Where BP has previously identified a (c) "Matching Revenue and Expenses issue", the appealed claim should be remanded to the Settlement Program for a prompt determination as to whether it is a Cash-based claim for which BP is complaining about the matching of expenses; in which case the claim should be held, and, in the event matching of expenses is ultimately directed by the Court, re-processed by the Settlement Program in accordance with the new policy (if any).  Where, however, the claim is based on Accrual financials, or where BP is complaining about the "smoothing" of revenue, such appeals should be summarily denied.

**Potential Policy for "Matching" of Expenses in Cash Basis Claims, (Should the Court Direct)**

As noted, the Court indicates in Part I of Judge Clement's opinion that it is the Settlement Program's responsibility to conduct any matching of expenses that might be necessary, (if any).[7] Therefore, while claimants should generally be given the option of converting their financial statements to accrual-based statements, at their own expense, (subject to a claim for reimbursement under Section 4.4.13), the burden should generally be on the Program to do any "matching" of expenses on Cash Basis financials from the existing Documentation.  And BP is required to reasonably fund any such additional accounting or other Administrative Expenses, pursuant to Section 5.12.1.4.

While Class Counsel believe that the Court could, consistent with Part I of the Fifth Circuit opinion, determine on remand that no matching of expenses in Cash Basis claims was ever intended, Class Counsel respectfully submit herewith a potential Policy which could be applied in the event that the Court determines that such matching of expenses should be undertaken by the Settlement Program.

Class Counsel note that their Draft Proposed Policy is easy to understand, can be mechanically accomplished with existing documentation, and is generally supported by existing Claims Administrator Policies which have not been challenged by BP.[8]

---

[7] *See* OPINION, p.20 ("The difference is between what claimants had to present – either cash-basis or accrual-basis claims – and what the Administrator thereafter was to do").  *See also,* SETTLEMENT AGREEMENT, Sections 4.3.7, 4.3.8 and 4.4.7.

[8] *See, e.g.,* Policy No. 466; (*see also, e.g.,* Policy Nos. 355).