IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010 | * * * * * | MDL NO. 2179 |
| | | SECTION J |
| This document relates to: | * * | HONORABLE CARL J. BARBIER |
| No. 12-970 | * * * * | MAGISTRATE JUDGE SHUSHAN |

**[PROPOSED] ORDER MODIFYING TEMPORARY INJUNCTION**

Upon consideration of the decision of the United States Court of Appeals for the Fifth Circuit's decision in *In re: Deepwater Horizon*, No. 13-30315, dated October 2, 2013, and, pending a Status Conference with the Parties that was held on October 11, 2013, this Court, on October 3, 2013, issued a temporary injunction enjoining the Claims Administrator from the issuance of any final determination notices or any payments with respect to those Business Economic Loss ("BEL") claims in which the Claims Administrator determined that the matching of expenses was an issue. The Claims Appeals process as detailed in Section 6 (filing of notices, briefs, and panel decisions) for similar BEL claims was also placed on hold. See Rec. Doc. 11566.

After consultation with the Parties, and in accordance with the Minute Entry issued on October 11, 2013 (Rec. Doc. 11635), the Court now MODIFIES its previous Order and LIFTS, in part, the previous Injunction, such that any BEL Claimants who satisfy ***any one*** of the below criteria shall continue to be processed according to the "Variable Profit" calculation contained

within the Compensation Framework set forth in Exhibit 4C to Business Economic Loss (BEL) Claims:

1. Claims submitted where the average monthly variable expense for the optimal benchmark period does not exceed two times the variable expense for the benchmark year or years divided by twelve; *or*

2. Claims submitted where the average monthly variable expense for the optimal compensation period does not exceed two times the variable expenses for the benchmark year or years divided by twelve; *or*

3. Claims that pass the Variable Margin Reasonability ("VMR") Test;[1] *or*

4. Claims submitted in accordance with existing Claims Administrator Policy 466; *or*

5. Claims submitted with Audited Financial Statements as evidenced by an accountant's "Audit Opinion;"[2] *or*

6. Claims submitted with Reviewed Financial Statements as evidenced by a "Review Report;"[3] *or*

7. Claims submitted where the federal tax return lists Accrual as its method of accounting and there is no reconciling item on schedule M-1 or M-3 to the contrary;[4] *or*

---

[1] The Variable Margin Reasonability Test ("VMR") is a two-prong test. Prong One determines the variance between the compensation period and the annual 2010 Variable Margin. Prong Two determines the variance between the benchmark period and the annual benchmark period variable margins. *See* EXHIBIT A.

[2] See AICPA Auditing and Standards Section AU-C 700.19.36, AU-C 700.39-41

[3] See *Statement of Standards for Accounting and Review Services* No. 19

[4] The claimants' Tax Return, whether it be Schedule C, Form 1065, Form 1120 or 1120S, requires the taxpayer to disclose its method of accounting, *i.e.,* "Cash," "Accrual," or "Other." Furthermore, in the case of all of the above, except Schedule C, Claimants are required on Schedule M-1 or M-3 to reconcile book to taxable income. If the books are kept on a method other than the tax return's accounting method there will be reconciling items identifying the book tax returns difference.

Additionally federal returns are signed as follows: "Under penalties of perjury. I declare that I have examined the return, including accompanying schedules and statements, and to the best of my

8. Claims submitted wherein the Benchmark Period and Compensation Period present consistently applied accrual-based accounting methods.[5]

Additionally the Fifth Circuit indicates in Part I of the aforementioned Opinion that it is the Settlement Program's responsibility to conduct any matching of expenses that might be necessary. *See* Opinion, p.20. The Court notes that under Section 4.3.7, 4.3.8, and 4.4.7 of the Settlement Agreement, the burden remains on the Settlement Program to do any "matching" of expenses on Contemporaneous profit and loss statements (P&Ls) and/or other financials from the existing Documentation. However, in order to expedite processing, every Claimant has the option of re-stating their financial statements to accrual-based statements, at their own expense, (subject to a claim for reimbursement under Section 4.4.13), and re-submitting in accordance with the options outlined above.

Accordingly,

The injunction as to the Claims meeting any of the above listed criteria is hereby LIFTED, and the Claims Administrator is hereby ORDERED to process and pay said Claims and Claimants under the terms of Exhibit 4C as outlined in the Settlement Agreement.

The Settlement Program remains ENJOINED from the issuance of any final determination notices or any payments with respect to those BEL claims in which the Claims Administrator determines that the matching of expenses is an issue and which is not otherwise submitted or re-submitted in accordance with the above. The Settlement Program is also ENJOINED from deciding any settlement program appeals in which matching is at issue, and such appeals shall continue be held in abeyance. However this abeyance shall be

---

knowledge and belief, it is true and correct and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge."

[5] See Opinion, p.16 fn.5; see also *Statement of Financial Accounting Concepts No. 6 ¶147*.

prospective only, and shall NOT apply to those appeals wherein the time to seek discretionary review has expired.

This injunction does not affect claims submitted to the Settlement Program for: **(i)** Seafood Program Compensation, **(ii)** Individual Economic Loss ("IEL"), **(iii)** Subsistence, **(iv)** VoO Charter Payments, **(v)** Vessel Physical Damage, **(vi)** Coastal Real Property Damage, **(vii)** Wetlands Real Property Damage, or **(viii)** Real Property Sales Damage. These claims and appeals are to be processed, and determinations, decisions and payments are to be made in the normal course of the Program's operation.

IT IS SO ORDERED.

New Orleans, Louisiana, this ____ day of <u>October</u>, <u>2013</u>.

_____
Hon. Carl J. Barbier

## Exhibit A [Proposed]
## Second Addendum to Exhibit 4C
## Variable Margin Reasonability ("VMR") Test

The term "Variable Profit" is defined as the sum of monthly revenues (over the Benchmark and/or Compensation Periods) less the "corresponding variable expenses from revenue over the same time period." (Page 2, Exhibit 4C)

The documentation requirements set forth in Exhibit 4A include the production of monthly and annual profit and loss statements and annual tax returns, however, the requirements do not state a specific basis of accounting for the required documentation. As such, it is possible for a Claimant to provide documentation sufficient to meet the requirements set forth in Exhibit 4A, however, the provided monthly profit and loss statements may not adequately reflect the Variable Profit (as defined in Exhibit 4C) on a monthly basis.

Accordingly, and regardless of accounting basis, it is necessary to determine if the monthly profit and loss data, provided by the Claimant in support of the claim, reasonably matches corresponding variable expenses to the recognition of revenues over the relevant periods or if further analysis of corresponding variable expenses will be required.

The following proposed Variable Margin Reasonability Test could be an indicator of which claims might need further variable profit analysis. Claims passing the Variable Margin Reasonability Test would be processed as presently described in the Settlement Agreement and should not be subject to further review regarding the timing of expenses relative to revenues. Claims failing the test will be subject to further analysis of the timing of certain variable expenses relative to the recognition of revenues as will be set forth in the Court's forthcoming policy decision on the matter.

**Variable Margin Reasonability Test** (2-prong test)

Prior to conducting the Variable Margin Reasonability Test, calculate the claim according to Exhibit 4C to determine the applicable Benchmark and Compensation Periods.

The first prong of the test is to determine the variance between the Compensation Period and Annual 2010 Variable Margins:
1. Calculate the Compensation Period Variable Margin Percentage ("Compensation Period VMP"):
    a. Sum Variable Profit (in dollars) for the consecutive months selected as the claim's Compensation Period for Step 1 of the calculation.
    b. Sum total revenue for the same Compensation Period as selected above (1a).
    c. Calculate the Variable Margin percentage for the Compensation Period by dividing Variable Profit calculated in (1a) by total revenue calculated in (1b). This will be the Compensation Period VMP.
2. Calculate the Annual 2010 Variable Margin Percentage ("Annual 2010 VMP"):
    a. Sum Variable Profit (in dollars) for all months in 2010, January through December.
    b. Sum total revenue for all months in 2010.
    c. Calculate Variable Margin percentage as Variable Profit calculated in (2a) divided by total revenue calculated in (2b). This will be the Annual 2010 VMP.
3. Calculate the variance between the Compensation Period VMP and the Annual 2010 VMP as a percentage of the Annual 2010 VMP.
4. Results:

    a. If the variance calculated in (3) is +/- 30.0% or less <u>or</u> the nominal difference between the Annual 2010 VMP and Compensation Period VMP is +/-7.5%[1] or less, the claim passes the first prong of the Variable Margin Reasonability Test and the claim should proceed to the second prong of the test (5).

    b. If the variance is greater than +/- 30.0% <u>and</u> the nominal difference between the Annual 2010 VMP and Compensation Period VMP is greater than +/-7.5%, the claim fails the Variable Margin Reasonability Test and will be subject to additional analysis as determined by the Court. (I.E. The claim will be subject to injunction until the Court-determined policy regarding corresponding expenses is in place.)

The second prong of the test determines the variance between the Benchmark Period and Annual Benchmark Period Variable Margins:

5. Perform steps (1) and (2) as described above, for the same months selected in (1) for the claim's Benchmark Period, to determine the Benchmark Period VMP and the Annual Benchmark Period VMP.
6. Calculate the variance between the Benchmark Period VMP and the Annual Benchmark Period VMP as a percentage of the Annual Benchmark Period VMP.
7. Results:
    a. If the variance calculated in (6) is +/- 30.0% or less <u>or</u> the nominal difference between the Annual Benchmark Period VMP and Benchmark Period VMP is +/-7.5% or less, the claim passes the second prong of the Variable Margin Reasonability Test and the claim should be processed as described in the Settlement Agreement and should not be subject to further review regarding the timing of expenses relative to revenues. (I.E. The claim will not be subject to injunction and should be processed as normal.)
    b. If the variance is greater than +/- 30.0% <u>and</u> the nominal difference between the Annual Benchmark Period VMP and Benchmark Period VMP is greater than +/-7.5%, the claim fails the Variable Margin Reasonability Test and will be subject to additional analysis as determined by the Court. (I.E. The claim will be subject to injunction until the Court-determined policy regarding corresponding expenses is in place.)

Note: While the methodology above is described in relation to regular BEL claims calculated under Exhibit 4C, the same principles should be applied to Multi-Facility Business claims (Exhibit 5) and Start-Up Business claims (Exhibit 7).

There are industries in which the determination of variable profit and the adequacy of the matching of variable costs to revenue should not be an issue. For instance, this should not be an issue for restaurants. Essentially, goods and services are paid at the time of delivery, payment terms to suppliers are within 30 days, and inventory is not material, and thus, not subject to large year-end adjustments resulting from a physical inventory count. Additionally, construction companies keeping their books on the percentage of completion method and several other industries could be identified. However, we are proposing this test as a solution as we recognize within every industry there may be exceptions. Therefore, this objective test can avoid the anticipated hesitancy to give any one industry a blanket exemption from further due diligence than is currently in place.

---

[1] 7.5 percentage points based on page 8 of the Declaration by Hal Sider dated October 9, 2013.

## Examples of Variable Margin Reasonability Test

**Example 1: Passing Result**

| **First Prong**: Variable Margins as calculated in Steps 1 and 2 ||
|---|---|
| Compensation Period VMP | 42% |
| Annual 2010 VMP | 50% |

Step 3: (Compensation Period VMP - Annual 2010 VMP) / Annual 2010 VMP =
(42% - 50%) / 50% =
-8% / 50% = -16% variance

Step 4 Result: The Claimant passes the first prong of the Variable Margin Reasonability Test as -16% is within +/- 30% threshold.

| **Second Prong**: Variable Margins as calculated in Step 5 ||
|---|---|
| Benchmark Period VMP | 58% |
| Annual Benchmark Period VMP | 55% |

Step 6: (Benchmark Period VMP - Annual Benchmark Period VMP) / Annual Benchmark Period VMP =
(58% - 55%) / 55% =
3% / 55% = 5.5% variance

Step 7 Result: The Claimant passes the second prong of the Variable Margin Reasonability Test as 5.5% is within +/- 30% threshold. The claim will not be subject to further variable expense analysis and should be processed in accordance with Exhibit 4C.

**Example 2: Fails First Prong**

| **First Prong**: Variable Margins as calculated in Steps 1 and 2 ||
|---|---|
| Compensation Period VMP | 30% |
| Annual 2010 VMP | 50% |

Step 3: (Compensation Period VMP - Annual 2010 VMP) / Annual 2010 VMP =
(30% - 50%) / 50% =
-20% / 50% = -40% variance

Step 4 Result: The Claimant fails the first prong of the Variable Margin Reasonability Test as -40% is outside of +/- 30% threshold <u>and</u> the -20% nominal difference is greater than +/-7.5%. The claim will be subject to further review of variable expenses.

**Example 3: Fails Second Prong**

| **First Prong**: Variable Margins as calculated in Steps 1 and 2 | |
|---|---|
| Compensation Period VMP | 42% |
| Annual 2010 VMP | 50% |

Step 3:         (Compensation Period VMP - Annual 2010 VMP) / Annual 2010 VMP =
(42% - 50%) / 50% =
-8% / 50% = -16% variance

Step 4 Result:   The Claimant passes the first prong of the Variable Margin Reasonability Test as -16% is within +/- 30% threshold.

| **Second Prong**: Variable Margins as calculated in Step 5 | |
|---|---|
| Benchmark Period VMP | 73% |
| Annual Benchmark Period VMP | 55% |

Step 6:         (Benchmark Period VMP - Annual Benchmark Period VMP) / Annual Benchmark Period VMP =
(73% - 55%) / 55% =
18% / 55% = 32.7% variance

Step 7 Result:   The Claimant fails the second prong of the Variable Margin Reasonability Test as 32.7% is outside of +/- 30% threshold <u>and</u> the 18% nominal difference is greater than +/-7.5%. The claim will be subject to further review of variable expenses.