**IN RE: DEEPWATER HORIZON LITIGATION**
**MDL NO. 2179**

| | |
|---|---|
| JAMES PARKERSON ROY | STEPHEN J. HERMAN |
| Domengeaux Wright Roy & Edwards LLC | Herman, Herman & Katz, LLC |
| 556 Jefferson St. Suite 500 | 820 O'Keefe Ave. |
| Lafayette, LA 70501 | New Orleans, LA 70113 |
| E-Mail: jimr@wrightroy.com | E-Mail: sherman@hhklawfirm.com |
| Telephone: (337) 233-3033 | Telephone: (504) 581-4892 |

October 18, 2013

*IN CAMERA* SUBMISSION

The Honorable Carl J. Barbier
United States District Court
500 Poydras Street, Room C-268
New Orleans, Louisiana 70130
E-Mail: Ben_Allums@laed.uscourts.gov

      Re: Scheduling Order:  BEL Remand

Dear Judge Barbier:

      The Fifth Circuit remanded this matter with respect to a very limited and narrow issue, namely:  Whether it was discussed, prior to the time the agreement was signed, that the expenses in Cash-basis Claims would be "matched" under Exhibit 4C, (similar to the way in which expenses are generally matched in Accrual-based Claims).

      While Class Counsel have endeavored to attempt to reach a potential compromise with BP for the "matching" of expenses in Cash-basis Claims to allow the Settlement Program to move forward in light of the Fifth Circuit's suggestion that expenses should likely be matched in some way,[1] as a factual matter, we do not believe or recall that such discussions ever took place, or that such matching of expenses in Cash-basis Claims was ever contemplated.  Rather, it is apparently BP's position that the parties discussed (and, BP would presumably argue, agreed that) Cash-basis Claims, (like Accrual-basis Claims), should have expenses matched in some way under Exhibit 4C.  Therefore, BP, we believe, should be compelled to come forward with any evidence that BP contends establishes that such matching of expenses was discussed prior to the time the agreement was signed.  *And,* to the extent that no such evidence exists, BP should be compelled to admit it.

---

[1] BP has refused to engage in such discussions, absent capitulation from the Class regarding the "smoothing" of revenue (to which BP Counsel now apparently refer as "revenue recognition"), which the BEL Panel clearly rejected, (*see* SLIP OPINION, pp.24-25), as well as departing from the objective Exhibit 4B Causation Framework (loosely referred to previously as "alternative causation") (to which BP Counsel now apparently refer as "actual injury"), which has been formally conceded by BP on numerous occasions and was not before the Fifth Circuit on the BEL Appeal, (*see* SLIP OPINION, pp.37-40 (Southwick, concurring)).

BP, based on our discussions and exchange of drafts regarding the Scheduling Order, appears to agree with the notion that both Parties, by a date certain, should be compelled to come forward with any additional evidence supporting their own respective interpretations. BP, however, does not seem willing to expressly or effectively admit that it has no evidence in support of BP's own position, if indeed that is the case.[2]

The other main point of disagreement is that Class Counsel believe that the evidence on remand should be limited to a factual inquiry regarding what was discussed and/or agreed to prior to the time that the Settlement Agreement was executed; BP, on the other hand, apparently wants to introduce new additional opinion testimony from experts, relating in particular to the issue of causation.

For the reasons further outlined below, Class Counsel respectfully suggest that the Class' enclosed Proposed Scheduling Order be adopted by the Court.

**Scope of Remand: Accrual-Basis Claims**

The Fifth Circuit directed that the Court confirm with the Claims Administrator that the Settlement Program "is not applying cash-in, cash-out interpretation to claims that are presented with matched revenues and expenses." OPINION, p.16.

While we understand the Court's obligation to ensure that Accrual-based Claims are sufficiently matched in this respect, the Fifth Circuit seems to suggest that, in most cases, the expenses presented in Accrual-based Claims will generally be sufficiently matched already.[3]

---

[2] Presumably, Class Counsel could accomplish the same thing by serving formal Requests for Admissions and associated Requests for Production of Documents, but were trying to focus and streamline the process within the Scheduling Order itself.

[3] *See, e.g.,* OPINION, p.16 fn.5 ("As to *accrual*-based claimants, matching is 'required' in the sense that claimants are not permitted to present statements which contain inconsistent methodologies"); OPINION, p.18 ("The fact that Exhibit 4C requires processing of claims supported by sufficiently-matched, *accrual*-based accounting should inform but does not control how cash-basis claims are to be analyzed"); OPINION, p.19 (BP argues that "Exhibit 4C represents an agreement on a specific accounting methodology, based loosely on *accrual* accounting revenue and expense recognition principles"); OPINION, pp.19-20 ("Because *cash* accounting does not inherently recognize relationships between cash flows and their underlying transactions, the term 'corresponding variable expenses' reasonably could imply an *accrual*-style framework inherent in Exhibit 4C"); OPINION, p.20 ("At least as to claims presented on an *accrual* basis, not only did BP not assent to ignoring the need for matching revenues with expenses, it clearly insisted on it"); OPINION, p.24 ("We remand because the district court did not … explain why it was interpreting the same Exhibit 4C language that leads to matching for *accrual*-based claims as not requiring the matching of cash-basis claims").

**Scope of Remand: Cash-Basis Claims**

As noted, the precise issue to be addressed by the Court on remand is whether it was discussed, prior to the time the agreement was signed, that the expenses in Cash-basis Claims would be "matched" under Exhibit 4C, (similar to the way in which expenses are generally matched in Accrual-based Claims).

Judge Clement, specifically, finds that:

> … we hold that Exhibit 4C is ambiguous as to whether claims that are not based on matched revenues and expenditures are to be matched for Exhibit 4C purposes. **We have not discovered whether, before the agreement was signed, the parties discussed the divergent effects of cash- and accrual-basis accounting records on the Exhibit 4C formula.**[4]

This is consistent with Judge Clement's previous comments that:

> We suggest a more consistent interpretation of Exhibit 4C, one that fits both accrual- and cash-basis claims, is as follows. Such parol evidence as would assist the district court in deciding if this is correct can be presented on remand.[5]

And:

> … Exhibit 4C cannot be interpreted so that it always means cash received and cash disbursed. We leave open for remand whether it ever has that meaning.[6]

Therefore, in conclusion, Judge Clement directs as follows:

> **We remand because the district court did not acknowledge the requirement of matching that is foundational for accrual-basis claims and it did not then explain why it was interpreting the same Exhibit 4C language that leads to matching for accrual-based claims as not requiring the matching of cash-basis claims.**[7]

---

[4] OPINION, p.23.

[5] OPINION, p.18.

[6] OPINION, p.10.

[7] OPINION, p.24.

Judge Southwick, likewise, identifies the central issue on remand as follows:

> Part I of the panel opinion identifies **the crucial question for remand: should matching be required for *all* claims when it is clearly required for many?** I agree to remand with instructions to reconsider the interpretation of Exhibit 4C for unmatched claims in light of the necessity of revenue and expense matching….[8]

**Both Parties Should Be Required to Produce Evidence – or Admit that None Exists – Relating to the Questions Presented on Remand**

BP, in its original proposal of October 9th, sought to place the burden on Class Counsel to submit a brief and all additional evidence on which Class Counsel rely to support the contention that the parties agreed that matching principles do not apply to all claims.[9]

Judge Clement, joined by Judge Southwick, however, posed a different question – *i.e.,* "whether, before the agreement was signed, the parties discussed the divergent effects of cash- and accrual-basis accounting records on the Exhibit 4C formula."[10]

Class Counsel do not recall or believe that any such discussions took place.

Therefore, BP's proposal would effectively ask the Class to prove a negative.

Class Counsel, accordingly, proposed a Scheduling Order essentially the same as the Proposed Order that is enclosed herewith, which would require each party to: **(i)** submit any evidence regarding such discussions (if any); **(ii)** submit any additional evidence that was not shared with the other party during negotiations but which supports the party's interpretation; and/or **(iii)** expressly (or at least effectively) admit that the party has no additional evidence on the subject, if indeed that is the case.

After conferring with BP, it appears that BP has generally embraced the Class' proposal, in part, but seems reluctant to potentially establish that no further evidence responsive to the Court's inquiry exists.

While the Class could presumably accomplish the same thing by serving formal Requests for Admissions and associated Requests for Production of Documents, Class Counsel were trying to focus and streamline the process within the Scheduling Order itself.

In any event, we respectfully suggest that the Court should be provided with a full evidentiary picture of the precise issues for which the case was remanded.

---

[8] OPINION, p.38, (Southwick, concurring).

[9] *See* LETTER FROM R. GODFREY TO J. BARBIER (Oct. 9, 2013), at p.5.

[10] OPINION, p.23.

**The Scope of the Court's Inquiry Should be Appropriately Limited**

As the Court would seem to be concerned on remand with additional *factual* evidence bearing on the issue of what the parties discussed or agreed to *before the agreement was signed,* the additional post hoc opinions of hired experts regarding what they believe to be a proper interpretation of the Settlement Agreement would not seem relevant to the Court's consideration.[11]

**Conclusion**

For the above and foregoing reasons, Class Counsel respectfully request that the Court enter the Proposed Scheduling Order submitted herewith.

Respectfully submitted,

JAMES PARKERSON ROY
STEPHEN J. HERMAN
*Co-Lead Class Counsel*

Enclosures

cc: Hon. Sally Shushan
    Patrick A. Juneau, Claims Administrator
    Special Master Louis J. Freeh
    Kevin Downey, Esq.
    James Neath, Esq.
    Mark Holstein, Esq.
    Richard Godfrey, Esq.
    Joseph F. Rice, Esq.
    Calvin C. Fayard, Jr., Esq.
    Robert T. Cunningham, Esq.

---

[11] While the notes, examples, analyses, or other materials prepared by experts or consultants during the negotiation process may be relevant, they would be relevant to the *factual* inquiry of what was discussed or agreed to at the time. Of course, this type of (and other) post-agreement parol evidence stemming from the Program's implementation of the Settlement Agreement is already in the record, and was already before the Court of Appeals.