# IN RE: DEEPWATER HORIZON LITIGATION
## MDL NO. 2179

JAMES PARKERSON ROY
Domengeaux Wright Roy & Edwards, LLC
556 Jefferson Street, Suite 500
Lafayette, LA  70501
E-Mail: jimr@wrightroy.com
Telephone: (337) 233-3033
Fax:  (337) 233-2796

STEPHEN J. HERMAN
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA  70113
E-Mail: sherman@hhklawfirm.com
Telephone: (504) 581-4892
Fax: (504) 561-6024

October 18, 2013

The Honorable Judges of the U.S. Fifth Circuit Court of Appeals
600 South Maestri Place
New Orleans, Louisiana  70130

  Re: In re: DEEPWATER HORIZON
    Economic and Property Damages Settlement
    **U.S. Fifth Cir. No. 13-30095**

May It Please the Court:

  The Economic & Property Damages Settlement Class respectfully submits this letter brief in response to the Court's Order directing the parties to address the October 2, 2013 decision in *In re: Deepwater Horizon,* No.13-30315 (5th Cir.) ("BEL Decision") and "the implications of that panel's decision for this case."[1]

  This appeal addresses one and only one issue: Did the District Court err in its order of December 21, 2012 certifying a settlement class and approving the proposed settlement as fair, reasonable and adequate?

  As described more fully herein, the BEL Decision concerns the calculation of damages under one of nine categories of recoveries covered by the settlement.  The modification to the calculation of damages for some claimants utilizing cash basis accounting is a matter of settlement administration that was raised by no objector at the time of the class settlement.  Accordingly, the BEL decision has no effect on the above-captioned appeal, and, as set forth in the Plaintiffs'-Appellees' prior briefing to this Honorable Court, the District Court's Order and Judgment approving the Economic & Property Damages Class Settlement should be affirmed.

  Efforts to infuse this appeal with BEL issues are procedurally improper.  BP was an active proponent of the settlement before the district court and filed no appeal from the December 21, 2012 Order and Judgment that is before this Court.  If BP believes that post-approval implementation renders the continued operation of the settlement inequitable or legally deficient, the correct procedural vehicle is a motion for relief from the judgment under Rule 60(b). Even in its current filing with this Court, BP can do no more than stake its position as

---

[1] Doc. 00512396640.

Case: 13-30095    Document: 00512413345    Page: 2    Date Filed: 10/18/2013
Case 2:10-md-02179-CJB-DPC   Document 11728-6   Filed 10/24/13   Page 2 of 10

2 | Page

contingent on ongoing proceedings before the district court. There is simply no basis for appellate review of the district court's class settlement approval order based on administrative matters that are still not yet ripe for review nearly one year later.

Nor should objectors be heard to now claim that the BEL Decision somehow validates unrelated issues raised below. For example, the Allpar appellants appear to have now made common cause with BP, raising the BEL appellate issues for the first time on appeal. Not only were these arguments not presented or preserved in the district court, but these appellants have no standing to raise these objections here. At no point in any pleading or brief do the Allpar appellants claim any injury to themselves from the way in which the BEL Compensation Framework was interpreted or applied. Their complaint below was that the settlement treated potential claimants on one side of the Sabine River differently from another. This is a given in any settlement that draws a geographic line – someone will always be on the other side of the line from someone else.[2] But under the no-injury rule that Allpar now professes to advocate, there was no basis in the record before the district court to afford them any relief.

The BEL remand order directed the district court "to expeditiously craft a narrowly-tailored injunction" in order to implement distinct procedures for the matching of expenses for certain categories of claimants. One would search in vain for any reference in the record at the time of settlement approval that even averted to this issue.

The Business Economic Loss ("BEL") Dispute

The subject of the BEL Decision in No. 13-30315 arose from BP's contention that the Court Supervised Settlement Program was misinterpreting the calculation of "Variable Profit" within the Compensation Framework for Business Economic Loss ("BEL") Claims, as set forth in Settlement Agreement Exhibit 4C.

BP took the position that the Compensation Framework required some "matching" of expenses with respect to Cash-basis Claimants. The majority of the BEL Panel agreed that Exhibit 4C was ambiguous on this point, and suggested that the District Court give consideration to the matching of expenses on remand. *See* SLIP OPINION, pp.16-24.[3] The Parties are currently working with the District Court and the Claims Administrator on remand to implement the Court's decision.[4] The Court, at the same time, rejected BP's argument that the Settlement

---

[2] BP's own expert on class certification and settlement approval, Geoffrey Miller, makes this point in his Supplemental Declaration [Rec. Doc. 7731-6] at ¶¶ 11-20.

[3] The section on "Cash-basis Claimants" appears in Part I of Judge Clement's opinion, which was joined by Judge Southwick. *See* OPINION, p.37 (Southwick, concurring).

[4] In particular, Judge Barbier expeditiously entered a stay on the processing and payment of affected BEL Claims, (*see* ORDER [Rec. Doc. 11566] (Oct. 3, 2013)), held a Status Conference with the Parties, and asked them to meet and confer further regarding any potential modifications to the injunction, as well as a potential policy for the matching of expenses in accord with the BEL Decision, and, to the extent necessary, a scheduling order regarding the development and submission of evidence that might be relevant to the remand issue, culminating in an evidentiary hearing, if necessary, on December 2, 2013. *See* MINUTE ENTRY [Rec. Doc. 11635] (Oct. 11, 2013).

Case: 13-30095    Document: 00512413345    Page: 3    Date Filed: 10/18/2013
Case 2:10-md-02179-CJB-DPC   Document 11728-6   Filed 10/24/13   Page 3 of 10

3 | Page

Program should "smooth" occasional "spikes" in revenue that might occur within the claimants' "comparable" Benchmark and Compensation Periods. *See* SLIP OPINION, pp.24-25.[5] The Causation Framework, which is found in Exhibit 4B to the Settlement Agreement, (and is discussed more fully *infra*), was not before the Court. *See* SLIP OPINION, pp.37-39.[6]

The BEL Decision has no effect on the other eight claims categories, namely: **(i)** Seafood Program Compensation, **(ii)** Individual Economic Loss, **(iii)** Subsistence, **(iv)** VoO Charter Payments, **(v)** Vessel Physical Damage, **(vi)** Coastal Real Property Damage, **(vii)** Wetlands Real Property Damage, or **(viii)** Real Property Sales Damage.

<u>The Settlement Agreement Includes a Mechanism by which Causation Is Established by Classmembers, According to the Objective Terms and Criteria Set Forth in Exhibit 4B</u>

The *Deepwater Horizon* Economic and Property Damages Settlement Agreement has two aspects: First, it is a contractual agreement, between BP and participating classmembers.[7] Secondly, it is, subject to Court approval, a proposed class settlement, which will be binding on absent classmembers, and will provide BP with a class-wide release.[8] The BEL appeal was a matter of contract interpretation as between the parties and resolved a contested issue as to the

---

[5] Is noted by Judge Clement: "BP's primary concern seems to be the uneven cash flows of certain types of businesses. We accept this possibility, but we see nothing in the agreement that provides a basis for BP's interpretation. Despite the potential existence of this kind of distortion, the parties may not have considered it, agreed to ignore it, or failed for other reasons to provide clearly for this eventuality. The district court was correct that BP's proposed interpretation as not what the parties agreed." OPINION, p.25.

[6] "Exhibit 4B of the Settlement Agreement allowed causation to be supported simply by loss calculations under Exhibit 4C rather than by requiring the claimant to prove that the loss had any factual relationship to BP's actions. *No one on appeal is challenging Exhibit 4B*." SLIP OPINION, pp.38-39 (Southwick, concurring) (emphasis supplied); *see also* SLIP OPINION, p.37 (Southwick, concurring) ("I do not join in the broader Rule 23 analysis that appears in Part II…. I am concerned that these observations imply…an invalidity to the Settlement Agreement's causation framework, *which no one challenges*. I would not make the pronouncements that appear in Part II") (emphasis supplied). *See also,* SLIP OPINION, pp.60-61 (Dennis, concurring, in part, dissenting, in part).

[7] *See, e.g.,* SETTLEMENT AGREEMENT, Section 4.1 (establishment of *Deepwater Horizon* Court Supervised Settlement Program); Section 4.4 (Process for Making Claims); Section 5.12 (establishment of Settlement Trust); Section 21.2 (severability of any provisions found to be invalid, illegal or unenforceable); Section 21.3 (the Claims Administrator will continue to process claims that have been submitted to the Program in the event the class settlement is not fully and finally approved); Section 26.1 (regarding the binding effect of the Agreement on the Parties); Exhibit 26 (Individual Release).

[8] *See* ORDER AND JUDGMENT [Doc 8139] (Dec. 21, 2012) ¶¶ 8-14. *See also, e.g., Ehrheart v. Verizon Wireless,* 609 F.3d 590, 592-593 (3d Cir. 2010) ("The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements").

Case: 13-30095    Document: 00512413345    Page: 4    Date Filed: 10/18/2013
Case 2:10-md-02179-CJB-DPC   Document 11728-6   Filed 10/24/13   Page 4 of 10

**4** | Page

calculation of losses for those parties included in the settlement. The present appeal relates to the second issue,[9] and asks whether the absent classmembers are well served by the settlement.

Unaffected by the BEL Decision is the basic causation mechanism for the definition of class membership, including for BEL Claimants.

Section 5.3.2.3 sets forth the "Causation Requirements For Business Economic Loss Claims" as follows:

> Business Economic Loss Claimants, unless causation is presumed, must establish that their loss was due to or resulting from the Deepwater Horizon Incident. The causation requirements for such Claims are set forth in Exhibit 4B.

Exhibit 4B, in turn, sets forth the transparent and objective methodologies by which the Parties agreed that BEL Claimants would "establish that their loss was due to or resulting from the *Deepwater Horizon* Incident." As explained by Judge Southwick:

> The Settlement Agreement resolved two separate issues by, in effect, combining them. One concerned loss *causation,* and the other loss *measurement.* If a BEL claimant could prove an economic loss, properly measured, that proof substituted for evidence of causation…. The agreement simplified the claims process by making proof of loss a substitute for proof of factual causation.[10]

Both Judge Clement and Judge Southwick note, in this regard, that "alternative causes of losses were irrelevant if the financial figures supported that a loss occurred." SLIP OPINION, p.21.[11]

Judge Southwick correctly observes that "Exhibit 4B of the Settlement Agreement allowed causation to be supported by loss calculations under Exhibit 4C rather than by requiring the claimant to prove that the loss had any factual relationship to BP's actions." SLIP OPINION, pp.38-39 (Southwick, concurring). "Because the Rule 23 problem BP raises is confined to the *measurement of loss* and not to *the questions of standing* of claimants who cannot show their losses were caused by BP's actions, I would not at this time suggest there is a fundamental Rule 23 defect in the Settlement Agreement." SLIP OPINION, p.39 (Southwick, concurring) (emphasis supplied).

---

[9] *Ehrheart, supra,* 609 F.3d at 593 ("The requirement that a district court review and approve a class action settlement before it binds all class members does not affect the binding nature of the parties' underlying agreement"); *citing, In re Syncor ERISA Litig.,* 516 F.3d 1095, 1100 (9th Cir.2008).

[10] SLIP OPINION, pp.37-38 (Southwick, concurring).

[11] *See also,* SLIP OPINION, pp.37-38 (Southwick, concurring) ("the parties agreed that Exhibit 4B's causation framework to ignore alternative explanations for actual losses that occurred to claimants during the proper time period").

Case: 13-30095   Document: 00512413345   Page: 5   Date Filed: 10/18/2013
Case 2:10-md-02179-CJB-DPC   Document 11728-6   Filed 10/24/13   Page 5 of 10

5 | Page

Article III Standing is Satisfied under the Settlement Agreement

The Third Circuit, in *Ehrheart v. Verizon,* discusses the "strong judicial policy in favor of class action settlement" which "ties into the strong policy favoring the finality of judgments and the termination of litigation."[12] In the BEL Decision, Judge Clement did not command a majority for the view that a class action settlement must be limited to class members with "colorable" claims to recovery. That position might have placed this Court in conflict with, for example, the Third Circuit ruling in *Ehrheart,* which found enforceable an agreement to settle ratified by the district court after a statutory amendment had eliminated the underlying cause of action.

Under the facts of this case, however, there is no conflict even were the Court to have adopted Judge Clement's more exacting standard. In this case, the Settlement Agreement itself provides a mechanical way to establish the existence and extent of traceable injury by objectively defining the loss that was "due to or resulting from the *Deepwater Horizon* Incident."[13] As Judge Southwick observed, the Settlement Agreement "simplified the claims process by making proof of loss a substitute for proof of factual causation."[14] In other words, the settlement provides an objective measure of which claimants have colorable causes of action. What no settlement can ever do is guarantee that each claimant would have prevailed were its individual claim to be tried to judgment, a process that would vitiate the long-established judicial policy of furtherance of settlement in favor of an endless series of individual trials.

Where class certification is contested by the defendant, and the merits are to be further litigated, an arguably over-inclusive class with members who may have suffered no injury might be a legitimate concern.[15] In this case, by contrast, BP agreed to the class definition and to the specific injuries and losses it agreed to be sufficiently related to the oil spill to be deserving of compensation. Indeed, this is why most courts have only examined Article III standing requirements as applied to the claims of the Class Representatives – which have never been seriously questioned in this case.

---

[12] *Ehrheart, supra,* 609 F.3d at 595.

[13] *See, e.g.,* SETTLEMENT AGREEMENT, Section 5.3.1 ("The Economic Damage Claim Process, Economic Damage Claim Frameworks, and other details for determining the Economic Damage Compensation Amounts are set forth in the Exhibits to this Agreement, which are incorporated herein by reference"); Section 5.3.2.1 ("The frameworks setting forth the documentation requirements governing Business Economic Loss Claims, and the standards for evaluating such Claims, are set forth in Exhibits 4A-7 to the Agreement"); Section 5.3.2.3 ("The causation requirements for such Claims are set forth in Exhibit 4B"). *See generally,* Exhibit 4B.

[14] SLIP OPINION, pp.37-38 (Southwick, concurring).

[15] This was the situation in *Comcast Corp. v. Behrend,* 133 S.Ct. 1426 (2013). Unlike BP, Comcast was opposing class certification, and the Court was concerned about the possibility of a judgment ultimately rendered in favor of some classmembers who had sustained no injury. BP, by contrast, who agreed to both the substantive terms of the settlement as well as the extent of the class, faces no similar Due Process concerns.

Case: 13-30095    Document: 00512413345    Page: 6    Date Filed: 10/18/2013
Case 2:10-md-02179-CJB-DPC   Document 11728-6   Filed 10/24/13   Page 6 of 10

**6** | Page

It should be noted, moreover, in this particular context, that the Oil Pollution Act of 1990 ("OPA") was specifically intended by Congress to be applied broadly and expansively, to afford compensation to businesses and individuals that were injured indirectly, as well as directly, in the wake of an oil spill.[16]

Yet, even assuming *arguendo* that Article III might enter into such a Rule 23 class certification analysis, the standard is, at most, that a litigant merely have a "colorable" claim. *See* SLIP OPINION, p.25; *citing, Richardson v. United States*, 468 U.S. 317, 326 n.6 (1984). The settling parties anticipated such a standard under the terms of the settlement itself.

BP, in this regard, while quoting from the definition of "Economic Damage" within the Settlement Agreement, ignores the word "allegedly": "Economic Damage shall mean loss of profits, income and/or earnings arising in the Gulf Coast Areas or Specified Gulf Waters *allegedly* arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the *Deepwater Horizon* Incident." SETTLEMENT AGREEMENT, Section 38.55 (emphasis supplied).

The following colloquy between BP's Counsel and the Court during the oral argument preceding the BEL Decision is instructive. Based on an unofficial transcript of the hearing:

| | |
|---|---|
| Judge Clement: | I have a question, sir. In your reply brief, you said the only issue in this appeal is the lost profits calculation and you were talking about how the variable profit is to be calculated…. My problem is I think the real issue in the case is causation and consideration. If you look at 4B where is BP's consideration for agreeing to pay those claims without proving they were caused by the Oil Spill? |
| BP Counsel: | This is a settlement, and with respect to the causation issue, that is not the issue that is before this court…. |
| | The settlement agreement with respect to 4B as to causation provided a mechanism which allowed someone to come through the door to be then entitled to prove the amount of actual lost |

---

[16] As reflected in the district court's opinion on motions to dismiss the economic class claims, 808 F.Supp.2d 943, 958-962, 965-966 (E.D.La. 2011), OPA governs all compensatory claims of economic loss and property damage alleged to flow from the spill; was intended to expand liability for economic loss well beyond the traditional limitations of maritime law; and embodies a unique statutory preference for the systematic compromise of such claims. *See* 33 U.S.C. ¶¶ 2702(a), 2702(b)(2)(E), 2705(a), and 2713; *see also, generally,* David W. Robertson, *The Oil Pollution Act's Provisions on Damages for Economic Loss,* 30 MISS.C.L.REV. 157, 158-160 (2011). As noted in prior submissions, OPA is a federal statutory claim that presents common questions of law. In this particular context, moreover, it is significant to note that the extent to which OPA expands a Responsible Party's liability for indirect economic losses is largely untested; which creates uncertainty, especially in a spill of the magnitude of the *Deepwater Horizon* Incident: a common legal conundrum that incentivized both sides to painstakingly negotiate a detailed, objective, self-contained causation and compensation system to discharge BP's OPA exposure, without thousands of individual trials. Indeed, OPA's "intent is to encourage settlement and reduce the need for litigation." 808 F.Supp.2d at 959.

Case: 13-30095    Document: 00512413345    Page: 7    Date Filed: 10/18/2013
Case 2:10-md-02179-CJB-DPC   Document 11728-6   Filed 10/24/13   Page 7 of 10

**7** | Page

|                  |                                                                                                                                                                                                                                                                                                                                                                                                         |
|------------------|---|
|                  | profits. It was a compromise, which every settlement agreement is, with respect to causation issues…. |
| Judge Clement:   | …. Where is the legal connexity between the damage or an injury and the ability to make BP pay? |
| BP Counsel:      | It was a part of a compromise. There's going to be tens of thousands – |
| Judge Clement:   | Where's the consideration? |
| BP Counsel:      | The consideration is the consideration of the settlement class as a whole…. |
| Judge Dennis:    | A major consideration is no one can bring suit against you on the oil spill outside of this class action which you have now settled. |
| BP Counsel:      | Exactly, your honor. |
| Judge Clement:   | They couldn't bring suit against you anyway if it wasn't caused by – |
| BP Counsel:      | They could bring suit. They'd have to prove causation. They could sue, and this is a compromise of tens of thousands of claims. But the important thing, and the issue that were' talking about here, is, assuming causation, assuming that a claimant gets through the door and is now entitled to prove lost profits; we then come to what everyone agrees in this case. The Appellees say this on page 27 of their brief: This appeal presents a straight forward question of contract interpretation. |

There may be many cases in which it is arguably unclear whether the plaintiff could establish an injury fairly traceable to the defendant's conduct. BP was free, within the context of Rule 23 or otherwise, to develop and apply a common and uniform set of criteria to resolve the question of whether the spill caused an economic injury. *See, e.g., In re AIG Securities Litigation,* 689 F.3d 229, 243 (2d Cir. 2012) ("Defendants in class action suits are entitled to settle claims pending against them on a class-wide basis even if a court believes that those claims may be meritless"); *Sullivan v. DB Investments,* 667 F.3d 273, 310 (3d Cir. 2011) (en banc), *cert. denied,* 132 S.Ct. 1876 (2012), *rehearing denied,* 132 S.Ct. 2451 (2012) ("were we to mandate that a class include only those alleging 'colorable' claims, we would effectively rule out the ability of a defendant to achieve 'global peace' by obtaining releases from all those who might wish to assert claims, meritorious or not. We need not take judicial notice of the fact that plaintiffs with non-viable claims do nonetheless commence legal action"); *Kohen v. Pacific Investment Management Co.,* 571 F.3d 672, 676 (7th Cir. 2009) (Posner, J.) ("as long as one member of a certified class has a plausible claim to have suffered damages, the requirement of

**8** | Page

standing is satisfied"); *Denney v. Deutsche Bank AG,* 443 F.3d 253, 263 (2d Cir. 2006) ("We do not require that each member of a class submit evidence of personal standing"); *see also, Ehrheart v. Verizon, supra* (class settlement did not become "moot" when legislation eliminated the statutory cause of action that formed the basis of the settlement).[17]

Indeed, BP's own class certification and settlement approval expert confirmed that "the parties' ability to compromise disputed claims does not cease with respect to claims to which the defendant believes it has a strong defense." SUPP. DECLARATION OF GEOFFREY MILLER [Rec. Doc. 7731-6] at ¶9; *citing, Sullivan, supra,* 667 F.3d at 305.[18]

<u>BP Should Be Estopped from Taking A Position Against the Full and Final Approval of the Settlement</u>

There is a single Settlement Agreement. The agreement has not changed and remains legally enforceable as against the contracting parties until and unless BP obtains an order of relief from judgment. To the extent that there may be a dispute between the Parties regarding the correct interpretation and application of the Settlement Agreement, the agreement includes a mechanism for resolving that dispute[19] – just as the "matching" of expenses dispute has been resolved by this Honorable Court and is now being put into place. The Settlement Agreement – as written, executed, supported, and approved – was either appropriate for certification and final approval under Rule 23 on December 21, 2012 when the district court ruled, or it wasn't.

BP submitted hundreds, if not thousands, of pages of pleadings, declarations, proposed findings and briefs in support of the approval of the class settlement. In particular, BP submitted a joint declaration from Professor Coffee and a separate declaration from its own class expert, Professor Miller, in support of class certification and settlement approval under Rule 23.

In addition to the statements of BP Counsel to the BEL Panel quoted *supra,* BP has submitted numerous filings and made other representations to the Court acknowledging valid consideration for the Settlement Agreement and supporting the causation framework as set forth in Exhibit 4B.[20]

---

[17] *See also, e.g., Butler v. Sears Roebuck & Co.,* 727 F.3d 796, 801 (7th Cir. 2013) (reaffirming certification following remand in light of *Comcast*) ("If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, *in settlement negotiations,* or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification") (emphasis supplied).

[18] *See also,* MILLER SUPP. DECLARATION, at ¶15; *citing, Sullivan, supra,* 667 F.3d at 305, *and, Kohen, supra,* 571 F.3d at 677 ("[A] class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable….").

[19] *See* SETTLEMENT AGREEMENT, Section 4.3.4; *see also,* Sections 6.6 and 18.1.

[20] *See, e.g.,* COMPLAINT, *BP v. Deepwater Horizon Court Supervised Settlement Program,* No.13-492 (March 15, 2013) ¶65 ("The Settlement Agreement is a valid contract meeting all required elements: offer, acceptance, and consideration"); BP'S MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL [Doc. 7114-1] (Aug. 13, 2012), p.33 ("[O]nce a business meets the causation requirements,

Case: 13-30095    Document: 00512413345    Page: 9    Date Filed: 10/18/2013
Case 2:10-md-02179-CJB-DPC   Document 11728-6   Filed 10/24/13   Page 9 of 10

**9** | Page

BP also has contractual obligations to support and defend the class settlement in the district court and on appeal, from inception to finality.[21]

Hence, BP should now be estopped from taking the position that the Settlement Agreement either includes some additional subjective causation analysis or does not comply with the requirements of Rule 23.

BP's Position Demonstrates the Central Fallacy in the Objector Appellants' Complaint

Because the settlement is uncapped, the inclusion of the types of claims that BP and/or the Objector Appellants are now complaining about cannot and do not affect the fairness, reasonableness or adequacy of the settlement with respect to the Objectors or other members of the class.

Indeed, the Objector Appellants' bald assertion that BP imposed some target limit or "cap" (even if unknown to Class Counsel during the negotiations) that somehow prevented Class

---

for purposes of quantifying compensation, all revenue and variable profit declines during the claimant-selected compensation period are presumed to be caused by the spill, with no analysis required to determine whether the declines might have been due, at least in part, to other causes."); JOINT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW [Doc. 7945] (Nov. 19, 2012), p.45 ¶126 ("Once the causation tests are satisfied, all revenue and variable profit declines during the Compensation Period are presumed to be caused entirely by the Spill, with no analysis of whether such declines were also traceable to other factors unrelated to the Spill"); E-MAIL RULING FROM JUDGE BARBIER [Doc 8963-75] (Dec. 12, 2012) (confirming, after BP Counsel appeared in Court on the issue, that "Counsel for BP and the PSC agree with the Claims Administrator's objective analysis of causation with respect to his evaluation of economic damage claims, as previously set forth by Mr. Juneau in paragraph 2 of his October 10, 2012 policy announcement"); *see also,* SLIP OPINION, p.21 ("BP did agree that alternative causes of losses were irrelevant if the financial figures supported that a loss occurred"); SLIP OPINION, pp.37-38 (Southwick, concurring) ("the parties agreed that Exhibit 4B's causation framework to ignore alternative explanations for actual losses that occurred to claimants during the proper time period").

[21] *See* SETTLEMENT AGREEMENT, Section 16.1 ("The Parties agree to take all actions necessary to obtain final approval of this Agreement and the entry of a Final Order and Judgment, and dismissing all Released Claims against Released Parties with prejudice"); Section 17.1 ("The Parties agree to support the final approval and implementation of this Agreement and defend it against objections, appeal, or collateral attack. Neither the Parties nor their Counsel, directly or indirectly, will encourage any person to object to the Economic and Property Damages Settlement"); *see also,* Section 9.1 ("Communications by or on behalf of the Parties and their respective Counsel regarding this Agreement with the public and the media shall be made in good faith, shall be consistent with the Parties' agreement to take all actions reasonably necessary for preliminary and final approval of the Settlement"); *see also, e.g.,* F.W.F. Inc. v. Detroit Diesel Corp., 494 F.Supp.2d 1342, 1359 (S.D.Fla. 2007), *aff'd,* 308 F.App'x 389 (11th Cir. 2009) ("Every maritime contract imposes an obligation of good faith and fair dealing between the parties in its performance and enforcement…. The duty embraces, among other things, an implied obligation that neither party shall do anything to injure or destroy the right of the other party to receive the benefits of the agreement").

**10** | Page

Counsel from adequately representing all classmembers in the negotiations is directly belied by BP's current position. BP is not suggesting that the Court reduce the compensation to BEL claimants and provide it to Objectors or other, more allegedly "deserving" classmembers. BP simply wants to keep the money for itself.

Regardless of the effect of the BEL remand on claims administration, the issue before this Court remains the same. The processing and payment of BEL claims has not in any way affected the fair, reasonable and adequate compensation paid under the Settlement Agreement's transparent and objective criteria to any Objector or any other member of the class.

The uncontradicted evidence in the record, and the history and experience of claims in the Settlement Program, establish the fact that each claim was advanced fully, at arms' length, by a broad representation of experienced and highly motivated counsel. There is absolutely no evidence of any "collusion" or trade-offs by Class Counsel.

The BEL Decision, if anything, supports further the District Court's findings on adequacy of representation under Rule 23(a), as well as the adequacy of the settlement to the classmembers under Rule 23(e).

## Conclusion

For the above and foregoing reasons, based on the evidence in the record, for the reasons stated by the District Court, and for the reasons stated in the Plaintiff-Appellees' Brief, the Judgment and Order approving the Economic & Property Damages Class Settlement should be affirmed.

Respectfully submitted,

James Parkerson Roy
Stephen J. Herman
*Co-Lead Class Counsel*

Samuel Issacharoff
*Lead Appeal Counsel for the Class*