UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179<br><br>SECTION J |
| Applies to: *All Cases* | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

**ORDER**

**[Regarding Motions to Compel Discovery from Special Master
(Rec. docs. 11610, 11619, 11643, 11644, 11666, 11414 and 11681)]**

**BACKGROUND**

On June 25, 2013, District Judge Barbier advised BP and the PSC of his intent to appoint Louis Freeh of the Louis Freeh Group International Solutions, LLC, as a Special Master in MDL 2179. The appointment was made pursuant to Fed. R. Civ. P. 53 and the inherent authority of the Court. District Judge Barbier described the circumstances giving rise to the appointment, including the following:

> Certain recent events have arisen that led to the resignation of a staff attorney at the CSSP. An internal investigation by the CSSP is underway. However, the Court has concluded that in order to ensure the integrity of the program for the benefit of the parties and the public, an independent, external investigation of this matter should be performed. This type of investigation cannot be effectively and timely addressed by an available district judge or magistrate judge of this district. Accordingly, the Court has decided to appoint Mr. Freeh as Special Master for this purpose.

Rec. doc. 10564 at 2.[1]  The appointment was limited to:

    a.    Performing the independent external investigation.

    b.    Fact finding as to any other possible ethical violations within the CSSP.

---

[1] CSSP refers to Court Supervised Settlement Program.

    c.    Examining and evaluating the internal compliance program and anti-corruption controls within the CSSP, and making any necessary recommendations to design and to implement additional such controls, policies, procedures, and practices to ensure the integrity of the CSSP.

On September 6, 2013, the Special Master completed the independent external investigation and submitted a report. Rec. doc. 11287. The Special Master: (1) completed over 80 interviews, some of which were transcribed by court reporters; (2) conducted forensic review of electronic equipment belonging to the Claims Administration Office ("CAO") for the CSSP; (3) reviewed documents from the CAO and vendors for the CSSP; and (4) issued subpoenas to certain parties, as well as to relevant financial institutions, telecommunication carriers and other entities. Id. at 14-15.

Lionel Sutton, Christine Reitano, Jon Andry, Glen Lerner, and any associated law firms, were ordered to show cause (the "Show Cause" parties) why the Court should not adopt the following findings and recommendations of the Special Master:

    a.    Disallowing the Andry Firm's claim under the Unclean Hands Doctrine (the "Disallowance" recommendation).

    b.    Disqualifying Attorneys Lionel Sutton, Christine Reitano, Glen Lerner, and Jon Andry, as well as any associated law firms, from representing CSSP claimants (or collecting fees from such claimants) under the Unclean Hands Doctrine (the "Disqualification" recommendation).

Rec. doc. 11288 at 3-4 ("Show Cause order").

On September 12, 2013, the Andry Firm filed a motion for production of the evidence and for an extension of time to object to the recommendations. Rec. doc. 11355. The Special Master

responded that:

> [He had no objection] to providing The Andry Law Firm access to discovery of information relevant to portions of the Special Master's Report of September 6, 2013 ("Report") concerning The Andry Law Firm.

Rec. doc. 11408 at 1.  The Special Master proposed that he redact information that is not relevant to the Andry Firm.  Id.

On September 18 and 19, 2013, the District Judge extended the deadline for the Show Cause parties until October 18, 2013 to respond to the Show Cause order.  The Special Master was ordered to provide them with access to information relevant to portions of the Special Master's Report concerning them by September 24, 2013.  Rec. doc. 11412 and 11442.  The Special Master was required to redact information that is not relevant to them.  Id.

On October 8, 2013, the Andry Firm filed a second motion for production of documents and extension to respond to the Show Cause order.  Rec. doc. 11610.  Lerner filed a similar motion.  Rec. doc. 11619.  The Special Master filed oppositions to the motions.  Rec. doc. 11627 and 11639.  Lerner and the Andry Firm filed replies.  Rec. docs. 11642 and 11648.

Jon Andry filed a motion for access to witnesses.  Rec. doc. 11643.  Sutton filed a motion for complete discovery.  Rec. doc. 11644. They seek relief similar to that sought by the Andry Firm and by Lerner.

On October 16, 2013, District Judge Barbier extended the deadline for the Show Cause parties to respond to the Show Cause order to November 15, 2013.  The Special Master was ordered to provide the Andry Firm and Lerner with "access to discovery of the responses of witnesses to questions asked by Mr. James A. Cobb during the course of interviews conducted by the Special Master which Mr. Cobb attended... ."  Rec. doc. 11664 at 2.  The remaining discovery issues were

3

referred to the undersigned. Id.

On October 16, 2013, Jon Andry filed a motion to obtain discovery from the Special Master. Rec. doc. 11666. It seeks relief similar to the motions listed above. It also was referred. Id.

Christine Reitano filed an initial and supplemental objections to the Report. Rec. docs. 11414 and 11681. The discovery matters raised by her also were referred to the undersigned. Rec. doc. 11695.

## **ANALYSIS**

The Show Cause parties contend that the Special Master did not produce the complete transcripts and interview notes for the Show Cause parties, key witnesses and others. They argue that information favorable to them was excluded. Rec. docs. 11610 (Memorandum at 1-2), 11619 (Memorandum at 2-3), 11644 (Memorandum at 2-3), and 11681 at 2. They make similar arguments regarding redacted documents and documents that were not produced. They seek all of the Special Master's documents relevant to the sections of the Report concerning them. Rec. docs. 11610 (Memorandum at 5) and 11681 at 2. Christine Reitano seeks all documents, notes, interviews, transcripts and other information in the possession of the Special Master. Rec. doc. 11414 at 4.

Glen Lerner identifies sixteen categories of documents to be produced without redactions. He seeks documents that are not relevant to the Special Master's Report concerning the Disallowance and Disqualification recommendations. For example, he seeks all documents relevant to the Special Master's investigation of any claim of a client of the Andry Lerner Firm that the Special Master has reviewed or intends to review as suspicious. The September 6, 2013 order required the Special Master to undertake further duties including the investigation of any past or pending claims submitted to the CSSP which are deemed suspicious. Rec. doc. 11288 at 2-3. The

scope of discovery is not determined by reference to the Special Master's obligation to undertake additional duties. Discovery will be limited to the Disallowance and Disqualification recommendation.

Lionel Sutton seeks information regarding the Special Master's criminal referral to the U.S. Attorney and the referral to the Louisiana State Bar Association concerning violation of disciplinary rules. Rec. doc. 11644. Sutton's request for discovery beyond the Disallowance and Disqualification recommendations is denied.

The Special Master responds that the Report provides the Show Cause parties with "a clear understanding of the analytical process by which ultimate findings were reached, including voluminous citations to supporting materials to assure that the Special Master took care in ascertaining the facts." Rec. doc. 11627 at 3.

**A.     Witness Interviews**.

The Report states:

From the period July 8, 2013, through August 27, 2013, the Special Master conducted over 80 interviews. . . . The majority of the interviews dealt with the facts and circumstances leading to Mr. Sutton's resignation, but there was also fact-finding about other ethical violations or misconduct within the CSSP. In addition to serving as a basis for this investigative report, the interviews had the dual purpose of identifying other potential ethical violations and misconduct regarding DHECC claimant attorneys and providing a framework for the design and implementation of additional CSSP compliance programs, and anti-fraud, anti-corruption and conflict of interest controls, policies, procedures, and practices.

Interviews were conducted of DHECC claimants, current and former employees of relevant law firms, employees and contractors of the DHECC Claims Administration Office, employees of businesses related to the investigation, BP attorneys, employees of DHECC court-appointed contract vendors, Mr. Sutton and Ms. Reitano.[2]

---

[2] DHECC refers to Deepwater Horizon Economic & Real Property Claims Center.

5

>The interviews were mostly conducted in person, except where telephonic interviews were necessary. Several interviews were recorded and transcribed by a court reporter from the USDC EDLa. . . . .

Rec. doc. 11287 at 14.

**Within seven (7) calendar days**, the Special Master shall produce the unredacted transcripts for Lionel Sutton, Christine Reitano, Glen Lerner, Jon Andry and any principal of the Andry Firm and Andry Lerner Firm.  If the interviews for any of these persons were not transcribed, the Special Master shall produce copies of the interview notes redacting all mental impressions within the same deadline.

The Special Master is not required to produce any unredacted transcripts or interview notes of persons employed by the Andry Firm and the Andry Lerner Firm as they are available to the Show Cause parties and exculpatory information can be obtained directly from them.

**Within seven (7) calendar days**, the Special Master shall make available for *in camera* review the unredacted and redacted transcripts and interview notes for all other persons interviewed by the Special Master in connection with the investigation of Sutton, Reitano, Lerner, Jon Andry, the Andry Firm and the Andry Lerner Firm.  The undersigned will review a sample of those interview transcripts and notes to determine whether any additional relevant information should be produced.  The undersigned will determine the interview transcripts and notes to be sampled.

Jon Andry contends that the Special Master has had full access and cooperation from the CAO.  He urges that he is entitled to the same right of access. Rec. doc. 11643.  Glen Lerner reports that he has been denied the ability to interview Pat Juneau. Rec. doc. 11642.  The requests by Jon Andry, Glen Lerner and other Show Cause parties for "access" and interviews of the representatives of the CAO are denied.

B.   **Computer Forensics**.

The Special Master received data from the CAO related to the investigation, the entire contents of DHECC's email compliance monitoring system, and a listing of all telephone calls placed by or received by the DHECC's phone system. This data was uploaded to a searchable data base application. Data and reports from the laptops and mobile devices belonging to the CAO and used by Mr. Sutton and Ms. Reitano were integrated into a searchable data base application. Rec. doc. 11287 at 14-15.

**Within seven calendar days of the entry of this order**, the Special Master shall make available for *in camera* review by the Court: (1) any of the data from these searchable data bases produced (whether in hard copy or digital form) to the Show Cause parties; and (2) the searchable data bases. A sample of the data will be reviewed by the undersigned to determine whether any additional relevant information should be produced. The undersigned will determine the data to be sampled.

C.   **Documents**.

During the period from July 8, 2013 through September 2, 2013, the Special Master reviewed documents from the CAO, vendors for DHECC, BP and Class Counsel. The Special Master was also granted read-only access to the DHECC claims database system. Rec. doc. 11287 at 15.

On July 26, 2013, the Special Master received approval from Judge Barbier to issue subpoenas for documents relevant to the investigation. Starting on July 29, 2013, the Special Master issued subpoenas to certain parties, as well as to relevant financial institutions, telecommunication carriers, and other entities. Rec. doc. 11287 at 15.

The Andry Firm and Christine Reitano contend that none of the documents relied upon by

7

the Special Master are privileged. The Andry Firm reports that "[m]any of the redacted interview memoranda produced by the Special Master are labeled 'attorney-client privilege.'" Rec. doc. 11610 (Memorandum at 7). It urges that "[t]o the extent the Special Master has relied on privilege, the assertion is invalid." Id. Christine Reitano contends that the Special Master cannot assert the privilege over materials which must be reviewed "de novo." Red. doc. 11681 at 4. The Special Master responds that "he has not withheld any documents on the basis of privilege. . . ." Rec. doc. 11627 at 5.[3] This resolves the privilege issue.

The Special Master is not required to produce to the Show Cause parties any documents produced by them to the Special Master.

**Within seven (7) calendar days of the entry of this order**, the Special Master shall make available for *in camera* review: (1) all redacted documents produced to the Show Cause parties; and (2) unredacted copies of those documents. The undersigned will review a sample of those documents to determine whether the redacted material is relevant under the Show Cause order. The undersigned will determine the documents to be sampled.

**Within seven (7) calendar days of the entry of this order**, the Special Master shall make available for *in camera* review all documents assembled during the course of the investigation and the preparation of the report that were not produced to the Show Cause parties. The undersigned will review a sample of those documents to determine whether they are relevant under the Show Cause order. The undersigned will determine the documents to be sampled.

**D.    Phone Records.**

The Andry Firm objects that the Special Master did not produce copies of the actual phone

---

[3] Although the Andry Firm submitted a reply, it is silent on the issue of the attorney-client privilege. Rec. doc. 11648.

records. Instead, the Special Master provided summaries of the records. Rec. doc. 11610 (Memorandum at 12, n. 12). The Special Master responds that for 6,000 pages of original phone records, a 19 page summary chart was provided. It captured all cell calls and text messages among several known numbers for the Show Cause parties.

Fed. R. Evid. 1006 permits the use of summaries to prove the contents of voluminous records. In such circumstances the records are made available for examination at a reasonable time and place. **Within seven (7) days of the entry of this order**, the Special Master shall make available for inspection the 6,000 pages of original phone records to the Show Cause parties.

IT IS ORDERED that the following motions and objections are GRANTED in PART and DENIED in PART as provided herein:

1. The Andry Firm's second motion for production of documents. Rec. doc. 11610.
2. Glen Lerner's motion for production. Rec. doc. 11619.
3. Jon Andry's motion for access to witnesses. Rec. doc. 11643.
4. Lionel Sutton's motion for complete discovery. Rec. doc. 11644.
5. Jon Andry's motion to obtain discovery. Rec. doc. 11666.
6. Christine Reitano's initial objection. Rec. doc. 11414.
7. Christine Reitano's supplemental objection. Rec. doc. 11681.

New Orleans, Louisiana, this 24th day of October, 2013.

**SALLY SHUSHAN**
**United States Magistrate Judge**