# Exhibit 1

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel 650.849.5300
www.gibsondunn.com

George H. Brown
Direct: +1 650.849.5339
Fax: +1 650.849.5039
GBrown@gibsondunn.com

Client: 12504-00006

October 23, 2013

Mr. Patrick Juneau
Claims Administrator
Court Supervised Settlement Program
935 Gravier Street, Suite 1905
New Orleans, LA 70112

Re:   *Development of Criteria for Sufficiently-Matched Accrual Basis Accounting for BEL Claims*

Dear Mr. Juneau:

We write to offer BP's views for your consideration with respect to the requirement in Judge Barbier's October 18, 2013 Preliminary Injunction Related to BEL Claims ("BEL PI Order") that the Claims Administrator provide a "declaration outlining the criteria that the Claims Administrator's Office will use to determine whether: (a) a claim is 'supported by sufficiently-matched, accrual-basis accounting,'… and (b) the matching of revenues and expense is or is not an issue with respect to a BEL and IEL claim…."

Implementing the BEL PI Order will require the adoption of criteria for attribution of revenue to relevant months in the Benchmark and Compensation Periods, and for the identification and matching of corresponding variable expenses. Our understanding is that the Settlement Program has received over 79,000 BEL claims to date, representing numerous different types of businesses and industries. Because business operations that vary by industry raise different issues in an accrual-style accounting framework, the Settlement Program must develop appropriate criteria that are industry specific.

Proper implementation will also require the development of procedures, systems and trained personnel for accurate processing of claims, in order to ensure that claims are determined based on sufficiently-matched, accrual-basis accounting. Furthermore, the Settlement Program will need to develop appropriate procedures, systems and trained personnel for the prevention and detection of material errors and irregularities in the BEL claims process.

**GIBSON DUNN**

Mr. Patrick Juneau
<October 23, 2013>
Page 2

The purpose of this letter is to provide our views on the general concepts that we believe should inform the development of the criteria to implement the accrual-accounting framework required by the Fifth Circuit's October 2, 2013 decision ("BEL Ruling"). To be consistent with the BEL Ruling, these criteria should be designed to create a practical and reasonable method of correctly implementing the BEL Compensation Framework consistent with the Fifth Circuit's guidance. Proper implementation of these criteria will allow for the payment of claims that do not have a matching issue and allow appropriate examination of those that do.

We also believe that it is appropriate that the Claims Administrator adopt policies and procedures which preclude those who were not injured by the Deepwater Horizon accident from recovering from the Settlement Program. However, we do not make suggestions on that subject in this letter because we understand that it is not a subject of Judge Barbier's injunction. We can provide such suggestions if you are interested in hearing them.

**Accrual-Accounting Framework General Principles**

Under accrual accounting a "fundamental principle" is that revenue is recognized "when the entity becomes entitled to receive payment, as opposed to when the payment is actually received," and in developing the "accrual-style framework" consideration must be given to how and when revenue is earned in order to "determine actual economic losses." *See* BEL Ruling, at 11, 20. "Expenses that can be readily traced to the recognized revenues are themselves recognized at the same time as those revenues." BEL Ruling at 11, *citing* Financial Accounting Standards Board (FASB) Statement of Financial Accounting Concepts (SFAC) No. 6, at ¶ 146. "This correlation gives business decision-makers a real-time view of the net economic value of a transaction in the period most relevant to its overall economic significance." *Id.* at 11-12 (citing SFAC No. 6 at ¶ 140). "This is sometimes referred to as "matching" revenues and expenses." *Id.* at 12 (citing SFAC No. 6 at ¶¶ 144, 146). Settlement Agreement Exhibit 4C uses language that requires matching using an accrual-style framework.

In light of the BEL Ruling's endorsement of an accrual-type framework as the standard that must be used to evaluate BEL claims, the following definitions should be used when calculating Variable Profit and evaluating claims under the BEL Claims Framework (and other business economic loss frameworks, including the Multi-Facility, Failed and Start-Up frameworks), and any policies or procedures that are adopted should be consistent with these definitions.

Mr. Patrick Juneau
<October 23, 2013>
Page 3

### Revenues

"Revenues" are actual or expected cash inflows (or the equivalent) that have occurred or will eventuate as a result of an entity's ongoing major or central operations.[1]

Revenues are attributable to the period in which the revenues are earned, based upon identifiable earnings activities and revenue drivers that are appropriate based on the industry and business cycle for major categories of claimants.

### Expenses

"Expenses" are actual or expected cash outflows (or the equivalent) that have occurred or will eventuate as a result of the entity's ongoing major or central operations.[2]

Expenses are generally recognized when an entity's economic benefits are used up in delivering or producing goods, rendering services, or other activities that constitute its ongoing major or central operations.

The concept of expenses under an accrual framework are further informed by the parties' agreement on corresponding variable expenses as defined in Exhibits 4D and 4C, and thus not all expenses recognized by a BEL claimant are used by the Settlement Program for calculating Variable Profit.

### Corresponding Variable Expenses

The term "Variable Expenses" is defined in Exhibit 4C in the language describing the Variable Profits calculation, and in Exhibit 4D.

The phrase "Corresponding Variable Expenses" means the Variable Expenses that are related to the revenue that has been attributed to the period under consideration. See BEL Ruling at 18. Only properly identified corresponding variable expenses should be used in computation of Variable Profit. Expenses that are not "variable" as defined by the parties should not be included in the calculation of Variable Profit, and expenses that do not relate to

---

[1] SFAC No. 6, paragraph 78, defines revenue as "inflows or other enhancements of assets of an entity or settlement of its liabilities (or a combination of both) from delivering or producing goods, rendering services, or other activities that constitute the entity's ongoing major or central activities."

[2] SFAC No. 6, paragraph 80, defines expenses as "outflows or other using up of assets or incurrences of liabilities (or a combination of both) from delivering or producing goods, rendering service or carrying out other activities that constitute the entity's ongoing major and central operations."

revenue earned in the relevant month should not be used to calculate Variable Profit for that month.

### Criteria for Attributing Revenue to Months Based on Earnings Activity

Because the "goal of the settlement" is to "compensat[e] claimants for real losses," BEL Ruling at 21, revenue attribution criteria should ensure that BEL claims are processed in a manner that measures a business's actual economic performance during the Compensation Period as compared to the Benchmark Period. BP believes that the *revenue attribution criteria should focus on the earning activities of a business* in most instances in order to most closely reflect the measurement of actual economic performance in the relevant periods. It is the actual business related activities performed by an entity to generate revenues that leads to the "enhancement of assets" referenced in the definition of revenues in SFAC No. 6, which the Fifth Circuit cited in its opinion. BEL Ruling at 11-12.

Asset enhancing or earning activities are the work a business does or the costs it incurs that give rise to the right to receive cash or other consideration. Those activities that constitute the business's major or central operations can be appropriately described as the business's revenue drivers. As noted, we believe the revenue attribution criteria should be developed with appropriate consideration of the business revenue drivers that cause the enhancement of assets for an entity.

The fundamental principle for revenue attribution criteria adopted by the Settlement Program is that the revenues that the Settlement Program claims evaluation process attributes to a month should reflect the actual earnings activities of that business in that month. The documentation provided by BEL claimants pursuant to Exhibit 4A must be used to properly calculate the Variable Profit under Exhibit 4C, using the Settlement Program criteria. For example, in circumstances where correcting or true-up entries concerning revenue are reflected in the claimants' records in a single month, but are attributable to one or more other months, the Settlement Program must take appropriate steps to attribute that revenue to the proper months in accordance with the Settlement Program criteria.

In addition, accurate measurement of asset enhancing activity within a particular period and attribution of revenue to particular months necessarily depends in part on the type of business and its earnings cycle. The Settlement Program should consult with the parties and develop revenue attribution criteria for each industry that implement the general principle that monthly revenue attribution accurately measure monthly economic activity.

BP has given some consideration to how the overarching concepts for revenue attribution discussed above would apply to BEL claimants from eleven different industries covering several general categories of earnings cycles. We would welcome the opportunity to discuss these concepts and other ideas with the Settlement Program accounting professionals prior to the issuance of criteria for revenue attribution.

### Determination of Corresponding Variable Expenses

The Settlement Program also needs to ensure that variable expenses that relate to the monthly revenue that has been attributed to particular Benchmark and Compensation Periods are identified and subtracted from that revenue for purposes of computing Variable Profit for that month. At the same time, any other expenditures or variable expenses that do not relate to the revenue for a month must not be subtracted during that month for purposes of computing Variable Profit for the month. To the extent that variable expenses attributable to several months are recorded in one month on a cumulative basis, to "true up" expenses over a longer reporting period, the Settlement Program must conduct sufficient analysis to assign the variable expenses contained in that cumulative amount to the months in which the revenue to which those expenses actually relate was earned.

Application of this general matching principle may require various types of matching treatments based upon the particular industry or business model in which the BEL claimant operates. For example, most construction industry BEL claimants should identify the direct costs associated with construction in progress and match those costs to the revenue that is properly attributed to a particular month. Assuming the construction claimant is using the percentage of completion method of revenue attribution, the Settlement Program should use the same direct costs that were used to estimate the percentage of completion of construction in progress to attribute corresponding variable expenses to the revenue earned during a particular month. The Settlement Program's professional accountants should use their professional training and use industry-specific criteria to evaluate each category of corresponding variable expense for a BEL claim when determining how to match those variable expenses to the months when the related revenue was earned and attributed. The Claims Administrator also should develop criteria for each industry to ensure the Settlement Program accountants accurately match variable expenses to revenue and accurately measure Variable Profit and actual economic performance on a monthly basis.

BP has evaluated the issues relating to eleven different industry categories covering several different earnings cycle categories and as noted above would welcome the opportunity to discuss them with the Settlement Program's professional accountants.

**GIBSON DUNN**

Mr. Patrick Juneau
<October 23, 2013>
Page 6

### Enhanced Procedures to Ensure BEL Claims are Processed Based Upon Sufficiently Matched Accrual-Accounting Principles

The Settlement Program must include in the criteria required by the BEL PI Order appropriate procedures to ensure that BEL claims are not paid except according to proper application of revenue and expense attribution criteria and proper matching of monthly revenues and corresponding variable expenses under the accrual-type framework outlined above. BP believes those procedures should include at least the following approaches and concepts.

1. The BEL claims evaluation and determination must be conducted by properly trained and supervised professional accountants, who will be readily able to apply the concepts described in this letter. The Settlement Program should ensure that there are supervisory level professionals with expertise in each of the major industry categories who are familiar with the Settlement Program revenue and expense criteria for that industry and with widely accepted accounting concepts for the underlying industry or business model. More junior accounting professionals should be provided with appropriate instructions and checklists to help them evaluate the BEL claims in a consistent and accurate manner.

2. The Settlement Program should develop procedures to evaluate whether monthly P&L statements that are submitted to support a BEL claim properly reflect the criteria for revenue and expense attribution. If they do not, then the Settlement Program must have procedures to accomplish this task. In addition, there should be procedures to ensure this process has been completed and that the Settlement Program criteria and procedures are being properly followed. Quality assurance procedures should be developed that include the regular use of internal auditors to evaluate compliance with the Settlement Program, and an external auditor should periodically conduct an independent audit of the BEL procedures.

3. The Settlement Program should develop procedures to identify information concerning adjusting and correcting entries and year-end "true up" entries to verify that they have been treated appropriately and taken into account in correcting monthly financial data so that it is consistent with the criteria for revenue and expense attribution that will be developed. Failure to make sure that known information that relates to monthly unadjusted records is properly reflected in the corrected monthly financial data is similar to treating an accrual basis claimant as if it were a cash basis claimant and would result in erroneous calculations.

4. The Settlement Program should develop procedures to ensure that the usual and customary records maintained by a particular industry type are identified and, where required for accurate determination of monthly revenues and corresponding variable expenses, develop procedures to ensure such records are collected from BEL claimants in the

**GIBSON DUNN**

Mr. Patrick Juneau
<October 23, 2013>
Page 7

respective industries. These records should then be used to ensure that proper matching (including proper attribution of revenue and expenses) has occurred. We have developed information about the types of usual and customary documents that exist and would be happy to share them with the Settlement Program.

5. The Settlement Program should develop procedures to ensure that appropriate data analytics are performed to search for potential errors and anomalies. For example, reconciliations of book to tax differences should be a routine part of the claims processing, and differences should be investigated and resolved in order to ensure proper matching has occurred.

### Conclusion

BP offers these suggestions in an effort to help the Settlement Program respond to the BEL PI Order, given the short amount of time allowed by the Court for that response. It is essential for an efficient and effective implementation of the BEL Ruling and the BEL PI Order that the parties have input into the development of new criteria and visibility concerning the procedures to be used, quality assurance efforts, and IT systems involved in the effort. BP is prepared to meet with the Claims Administrator and the Settlement Program accounting firms to continue to discuss the appropriate rules and criteria that should be developed for the industries and topics discussed above, and other matters. We are available Thursday, October 24 and could meet beginning at 10:00 a.m.

Please let us know if you are available for such a meeting.

Very truly yours,

*George Brown*

George H. Brown

GHB/knb

cc:     Class Counsel