# Exhibit 2

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel 650.849.5300
www.gibsondunn.com

George H. Brown
Direct: +1 650.849.5339
Fax: +1 650.849.5039
GBrown@gibsondunn.com

Client: 12504-00006

October 25, 2013

VIA ELECTRONIC MAIL

Mr. Patrick Juneau
Claims Administrator
Court Supervised Settlement Program
935 Gravier Street, Suite 1905
New Orleans, LA  70112

Re:   Response to Class Counsel's October 23 letter re BP's Suggestions to meet
      concerning BEL Criteria

Dear Mr. Juneau:

        We write in response to the Memorandum of Class Counsel dated October 23, 2013
("Class Counsel Memorandum") responding to BP's letter suggesting criteria for
sufficiently-matched accrual basis accounting for BEL claims.  Class Counsel's
Memorandum represents yet another attempt to relitigate the issues they lost in the Fifth
Circuit and assert that BEL claimants should be compensated based on the idiosyncratic
circumstances of how their financial records are kept, not on actual economic loss.[1]

        The Fifth Circuit rejected Class Counsel's position and ruled that "actual economic
losses" must be determined by the Settlement Program.  See BEL Ruling at 19.  And Judge
Barbier rejected Class Counsel's attempt to rewrite the Fifth Circuit ruling in issuing a
preliminary injunction order that put on hold BEL claims not "supported by sufficiently-
matched, accrual-basis accounting."  See BEL PI Order.

        By urging that the Claims Administrator ignore proper revenue attribution concepts,
Class Counsel now asks the Claims Administrator to violate a central tenet of the Fifth
Circuit ruling—that the calculation of Variable Profit under Exhibit 4C of the Settlement
must accord "with economic reality" and with a "reasonable understanding of calculation of
damages" that is consistent with what "damages recoverable in civil litigation actually are."
See BEL Ruling at 23, 24.  The Fifth Circuit made clear that an "accrual-style framework" is

---

[1]   Class Counsel also tried to avoid the implications of the Fifth Circuit ruling in their Preliminary Injunction
      proposal to the District Court, in which they asked the court to lift the temporary injunction for most claims
      and only apply matching to certain expenses.  The District Court, like the Fifth Circuit, rejected their
      arguments and assertions.

# GIBSON DUNN

Mr. Patrick Juneau
October 25, 2013
Page 2

necessary to "determin[e] actual economic losses," because cash-basis accounting does "not result in numbers that could fairly be said to represent actual economic losses or lost 'variable profits'" and creates a "risk of artificially-inflated or entirely fictitious losses." *Id.* at 17, 19, 20, 21.

The Fifth Circuit made equally clear that proper revenue attribution is a fundamental step in any accrual-style framework that accurately measures lost Variable Profit. The Court specifically observed that "the recognition of revenue" is "a fundamental principle" of "accrual accounting," *id.* at 11, which is irreconcilable with Class Counsel's attempt to ignore the need for proper revenue attribution methodologies. Moreover, the Court explicitly equated "the accrual accounting *recognition* and matching principles BP advances" with "'sufficiently match[ed]' revenue and expenses." *Id.* at 12 (emphasis added). Thus, in order to comply with the Fifth Circuit's decision, the Claims Administrator must develop criteria for proper accrual-style revenue recognition despite the protestations of Class Counsel.

It is also telling what Class Counsel's memorandum does not say: It does not offer any proposals to help the Claims Administrator or Settlement Program accountants develop an accrual-style accounting framework for calculation of actual economic loss under the Settlement Agreement, which is required by the Fifth Circuit ruling and by Judge Barbier's Preliminary Injunction Order.

Class Counsel criticizes BP's proposed criteria for revenue attribution, arguing that the criteria are unsupported by authority, allow for the use of professional judgment and discretion, and treat claimants differently. Memo. at 2, 4, 7. But Class Counsel offer no suggestions of their own for how the Claims Administrator should attribute revenues in order to measure actual economic loss, apparently hoping that, without any criteria, the Claims Administrator will accept financial statements as is. This attempt to undermine the Fifth Circuit ruling should be rejected.

Moreover, Class Counsel's criticisms of BP's proposed criteria lack merit. The issue at hand is not related to the issue of how the "comparable months" language is construed. The issue is what is the appropriate way to attribute revenue for purposes of matching under an accrual-style framework that accurately reflects economic reality. BP's suggested revenue attribution criteria are supported by widely accepted economic and accounting concepts, and are clearly defined objective standards that can fulfill the Fifth Circuit's requirement that Variable Profit be calculated consistent with the Settlement's goal – that class members be compensated for actual economic losses. Indeed, an alternative method would result in precisely what should be stayed: treatment of claimants differently based on how their books are maintained. Class Counsel, on the other hand, want the prior BEL

**GIBSON DUNN**

Mr. Patrick Juneau
October 25, 2013
Page 3

Policy to continue, a Policy that does not accord with economic reality, much less the terms of the Settlement Agreement—as the Fifth Circuit has now ruled.

Revenue attribution concepts are fundamental to an accrual-style accounting framework and to the proper measurement of actual economic losses suffered by claimants. The use of revenue drivers for attributing revenue will allow the CSSP to measure a business's actual economic performance. Although the specific criteria used by the Claims Administrator for attributing revenues may vary by industry to account for the different revenue drivers in those industries, the fundamental principle that a business's performance is best measured by reference to its revenue drivers applies across industries and will ensure that all class members are treated alike and compensated for their actual economic losses.

In addition to resisting procedures for revenue attribution, Class Counsel's memorandum provides no suggestions for how to match variable expenses to revenue. Indeed, Class Counsel argues that expenses *need not be matched* to revenues. This argument is at odds with the Fifth Circuit ruling as well as contrary to Judge Barbier's Preliminary Injunction Order, which ordered the Claims Administrator to provide a declaration outlining the criteria that would be used to determine whether a claim "is supported by sufficiently-matched, accrual-basis accounting . . . and . . . the matching of revenues and expense is or is not an issue with respect to a BEL and IEL claim."

Matching corresponding variable expenses to revenues is equally fundamental to an accrual-style framework that is used to determine the "actual economic losses" of a business. Such matching is a widely accepted accounting concept. In fact, one of the many problems with the failure to match prior to the Fifth Circuit's ruling involved the many examples of where claimants submitted financial information that, subsequently, they corrected. Unfortunately, the corrections and accurate data were not taken into account by the Settlement Program, with the result that the Program routinely used incorrect financial data to issue awards. Apparently, Class Counsel also want that use of incorrect financial data to continue – contrary to the Fifth Circuit's ruling.

We also assume that the Settlement Program's accountants will recognize that proper treatment of correcting and adjusting entries is essential to ensure accurate measurement of actual economic loss and calculation of lost Variable Profits. Class Counsel's arguments resisting this notion should be rejected, along with all of their other arguments.

Finally, we disagree with the improper characterizations and inaccuracies in Mr. Carroll's undated supplemental declaration submitted to the Claims Administrator yesterday. That declaration continues to omit any suggestions for implementing the Fifth Circuit's ruling and urges continuation of the status quo.

# GIBSON DUNN

Mr. Patrick Juneau
October 25, 2013
Page 4


Once again, we remain available to meet with the Claims Administrator and Settlement Program accountants to assist with the development of appropriate criteria to implement the Fifth Circuit ruling.

Very truly yours,

George H. Brown

GHB/knb

cc:    Class Counsel