# Compensation Framework for Business Claims[1]

### September 15, 2011

The framework outlined below applies to business claims.

Overview: Calculate 2010 damages by establishing the following elements:[2]

1. Calculate "expected variable profits" as (i) revenue expected in the absence of the DH spill multiplied by (ii) claimant's historical variable margin.

2. Calculate "actual variable profits" in 2010 as the difference between (i) actual revenue and (ii) actual variable costs for the period commencing on or after May 1 and any date up to December 31, 2010 ("claimed loss period").

3. Calculate profits lost as a result of the DH spill based on the difference between (i) "expected variable profits"; and (ii) "actual variable profits" earned during the claimed loss period.

4. Determine claimant compensation by deducting sums received in connection with the DH spill.

Detailed Explanation:

1. Determination of claimants' "expected variable profit"

    A. The "claimant benchmark period" is defined as the claimants' chosen period in which to supply financial data from one of the following three options: (i) 2007-2009, (ii) 2008-2009, or (iii) 2009.

    B. "Expected revenue" for the "claimed loss period" is calculated by multiplying claimants' actual revenue for corresponding months in the "claimant benchmark period" by two factors that attempt to account for conditions affecting post-spill revenue unrelated to the spill: (i) a "claimant-specific factor"; and (ii) an "industry factor".

    C. "Claimant-specific factor"

        i. The "claimant-specific factor" attempts to account for conditions that affected claimant's revenue in the pre-spill period (relative to the

---

[1] This Compensation Framework pertains only to claimants that generated revenue in 2009. Excluded businesses are (i) businesses engaged in commercial fishing, processing, and distribution; (ii) start-up businesses; (iii) businesses claiming to have ceased operations due to the spill; (iv) development and construction businesses; (v) gaming businesses; and (vi) banks [+ others subject to further discussion].

[2] All damages paid will be paid on a pre-tax basis.

1

HIGHLY CONFIDENTIAL
SUBJECT TO SETTLEMENT DISCUSSION CONFIDENTIALITY AGREEMENT

001430

corresponding months in the "claimant benchmark period") that also would be expected to affect revenue in the post-spill period (relative to corresponding months in the "claimant benchmark period"). Examples of such conditions might include the entry or exit of a competitor or changes in economy-wide conditions that would affect claimant revenue in both the pre-spill and post-spill period.

ii. The "claimant-specific factor" is calculated as the percentage change in the claimant's revenue in the relevant "pre-spill months" (defined in ii.a below) relative to the same months in the "claimant benchmark period".

    a. "Pre-spill months" shall be defined as January-April 2010.[3]

    b. If the claimant selects 2009 as the "claimant benchmark period", the "claimant-specific factor" is calculated as the claimant's percentage revenue growth between Jan-April 2010 and Jan-April 2009. If, as in the attached example, the "claimant-specific factor" is 10.4% (-10.4%), then the claimant's "expected revenue" for the "claimed loss period" is 10.4% higher (lower) than claimant's actual revenue in May-December 2009. Because the "claimant-specific factor" is applied to revenue earned for the months corresponding to "the claimed loss period" in the "claimant benchmark period", "expected revenue" is constructed to account for claimant-specific revenue growth prior to the spill.

    c. Alternatively, for example, if the claimant selects 2008-09 as the "claimant benchmark period", the "claimant-specific factor" is calculated as the claimant's percentage revenue growth between Jan-April 2010 and the claimant's average revenue in January-April 2008 and January-April 2009:

$$[Rev_{(Jan-April\ 2010)} / .5*[Rev_{(Jan-April\ 2008)} + Rev_{(Jan-April\ 2009)}]]-1$$

If this factor is 10% (-10%), then the claimant's "expected revenue" for the "claimed loss period" 2010 is 10% higher (lower) than the claimant's average revenue in May-December 2009 and May-December 2008.

D. "Industry Factor"

---

[3] For claimants for whom January-April revenue falls below <<XX%>> of annual revenue, an alternative calculation of the claimant-specific factor will be used.

2

HIGHLY CONFIDENTIAL
SUBJECT TO SETTLEMENT DISCUSSION CONFIDENTIALITY AGREEMENT

001431

i. The tourism "industry factor" accounts for factors that were likely to affect the performance of claimants in tourism industries in the "claimed loss period" in the absence of the spill unrelated to changes expected based on claimant-specific effects. The "industry factor" would capture, for example, an increase (decrease) in May-December 2010 tourism revenue relative to the same period in the "industry benchmark period" that is different than the increase (decrease) in "pre-spill months" tourism revenue relative to the same months in the "industry benchmark period".

ii. The "industry factor" is calculated by identifying benchmark regions likely unaffected by the DH spill, where tourism trends track with those in the Gulf areas, and then calculating the difference between (i) the percentage change in revenue between May-December 2010 and May-December in the "industry benchmark period", and (ii) the percentage change in revenue between the pre-spill months of 2010 and the same months in the "industry benchmark period".

   a. The "industry benchmark period" is defined as 2007-2009. Accordingly, the "industry factor" would be calculated as follows: If (i) Jan-April 2010 revenue is 3% above the average Jan-April revenue from 2007-2009 and (ii) May-December 2010 revenue is 6% above the average May-December revenue from 2007-2009, then the "industry factor" would be 3% (= 6%-3%).

   b. If the "industry factor" is 3% (-3%), then the claimant's "expected revenue" for May-December 2010 is 3% higher (lower) than claimant's actual revenue in May-December calculated as an average across 2007-2009 (assuming a "claimant-specific factor" of zero).

iii. Proposed estimation of the "industry factor"

   a. The DelMarVa areas (Sussex County DE and Worcester County MD) provide an economically appropriate benchmark area for calculating the "industry factor".

   b. Average revenue for 2007-2009 will be used as the baseline. Smith Travel Research ("STR") provides best available indicator for the tourism industry, specifically STR's Revenue per Available Room ("RevPAR").

3

HIGHLY CONFIDENTIAL
SUBJECT TO SETTLEMENT DISCUSSION CONFIDENTIALITY AGREEMENT

001432

E. Calculation of "expected revenue"

   i. The claimant's "expected revenue" for the post-spill is calculated based on (i) the claimant's revenue in May-December of the "claimant benchmark period"; (ii) the "claimant-specific factor"; and (iii) the "industry factor".

   ii. For example, if the claimant factor is +10.4% and the "industry factor" is +3%, and the claimant's revenue in May-December of the "claimant benchmark period" is X, then "expected revenue" is calculated as X + (X*10.4%) + (X*3%).

F. Calculation of "expected variable profit"

   i. The claimant's "expected variable profit" is calculated by multiplying the claimant's "expected revenue" in the "claimed loss period" by the claimant's "variable margin", defined as revenue minus variable costs, expressed as a percentage of revenue.

   ii. The "variable margin" is calculated, to the extent possible, as follows: Total average variable profit is divided by the total average revenue during the "claimant benchmark period".[4]

      a. The total average variable profit is calculated by subtracting the total average variable costs incurred during the "claimant benchmark period" from the total average revenue earned during the "claimant benchmark period".

      b. The claimant's variable costs are measured based on its pre-tax profits as adjusted for fixed costs, owners' compensation, and extraordinary items and fixed costs. Fixed costs are defined categorically for all claimants and would include: depreciation & amortization, rent, business insurance, fixed salaries, interest, licenses, dues and subscriptions, professional fees, utilities, and common-area maintenance expenses.

---

[4] To the extent that claimant documentation allows, variable margin may be calculated on a monthly basis rather than an annual basis.

4

HIGHLY CONFIDENTIAL
SUBJECT TO SETTLEMENT DISCUSSION CONFIDENTIALITY AGREEMENT

001433

2. Calculation of claimants' "actual variable profit"[5]

   A. "Actual variable profit" is calculated as actual revenue earned by the claimant less variable costs incurred during the "claimed loss period".

   B. The claimant's variable costs are measured based on its adjusted pre-tax profits as described herein.

   C. To the extent that claimant documentation provides evidence of additional one-time spill-related costs not otherwise accounted for herein, these costs will be included in calculating variable margin.

3. Calculation of claimants' lost profit.

   A. Lost profit is calculated as the difference between claimants' (i) "expected variable profit" and (ii) "actual variable profit" over the "claimed loss period".

4. Calculation of claimant compensation

   A. Claimants will be compensated for their lost profits less other income earned by claimants and any OPA payments received. This includes:

      i. OPA payments (from BP and/or the GCCF)
      ii. Business interruption income; and
      iii. Other income of the following types: (i) all income resulting from the incident; (ii) all income from alternative employment or business undertaken; and (iii) potential income from alternative employment or business not undertaken, but reasonably available.

---

[5] Claimants are required to use consistent accounting conventions in determining "expected variable profit" and "actual variable profit".

5

HIGHLY CONFIDENTIAL
SUBJECT TO SETTLEMENT DISCUSSION CONFIDENTIALITY AGREEMENT

001434