# KIRKLAND & ELLIS LLP
## MEMORANDUM

| | |
|---|---|
| **TO:** | Joe Rice<br>Calvin Fayard |
| **FROM** | James J. Neath<br>Richard C. Godfrey, P.C.<br>Wendy L. Bloom |
| **DATE** | December 13, 2011 |
| **SUBJECT:** | Business Economic Loss – Causation and Compensation |

As you know, there are several key issues where BP and the PSC are attempting to reach an accord in order to finalize the documentation, causation and compensation framework for business economic loss claims. On December 1, Joe described the PSC's most recent proposal for resolving these key issues in our discussions at the end of the day.

BP is now responding to Joe's proposal, and also bringing the causation and compensation documents current to reflect the parties discussions. Until today, the last business causation document was produced by PSC on 11/16/11, a redline of BP's document dated 11/10/11. Therefore, we attach a clean copy of BP's proposed revisions to Causation Requirements for Business Economic Loss Claims dated 12/13/11 and we will provide a red-line comparing it to the PSC's prior mark-up dated 11/16/11. Until today, the last business compensation document was produced by BP on 11/10/11. The PSC provided a response memo dated 11/16/11 but no corresponding mark-up. Therefore, we attach a clean copy of BP's proposed revisions to Compensation Framework for Business Economic Loss claims along with a red-line comparing it to BP's prior draft dated 11/10/11.

**Causation Requirements for Business Economic Loss Claims:**

The primary issue that we discussed on December 1 was the configuration and number of months used for the three revenue-based causation test options available for entities located within Zones B and C, the V-Shaped Revenue Pattern (Section II(A)), the Modified V-Shaped Revenue Patter (Section II(B)) and the Decline-Only Revenue Pattern (Section II(C)). PSC proposed that the configuration and number of months involved in each of these tests be as follows: (a) The claimant may select any three consecutive months from May to December 2010 which are then compared to the same months in 2009 and to the same months in 2011; (b) for two of those months the agreed upon percentage decline/upturn in 2010 revenues must occur; (c) for one of those months there would be no requirement of a percentage decline in 2010 revenues vs. 2009; rather, there could be an unlimited percentage increase in 2010 revenues vs. 2009.

**HIGHLY CONFIDENTIAL**
**SUBJECT TO SETTLEMENT DISCUSSION CONFIDENTIALITY AGREEMENT**

004567

# KIRKLAND & ELLIS LLP

BP is amenable to a modified version of what the PSC has proposed.  BP would accept a test for each of the three revenue pattern causation tests for Zones B and C in which for the one month of the three consecutive months selected by the claimant the percentage change in revenue does not exceed 5% and in which for the other two months there must be the percentage decline in 2010 revenue vs. 2009 that BP has proposed.   We provide more detail below along with a summary of additional responses to the PSC's 11/16/11 document:

- V-Shaped Revenue Pattern (Zones B/C) (Section IIA):

  o We modify our proposal so that causation can be established by a revenue downturn of 10% or more in 2 of 3 consecutive months provided the change in revenue not exceed a 5% increase in the third month.  The required upturn would be 5% in the two months with declines.

  o We do not accept the PSC's insertion that a showing of the later upturn can be avoided by "a written explanation of why the revenue did not increase in 2011," as an insufficient alternative to meeting a key prong of the proposed test.  Rather, Section (II)(C), Decline-Only Revenue Pattern, is the causation test applicable for claimants in Zones B/C whose revenue did not increase in 2011.

- Modified V-Shaped Revenue Pattern (Zones B/C) (Section IIB)

  o We modify our proposal so that causation can be established by a revenue downturn of 5% or more in 2 of 3 consecutive months provided the change in revenue not exceed a 5% increase in the third month.  The required upturn would be 3% in the two months with declines.

  o With respect to the customer mix prong of this test, we accept your proposal to use percentage declines instead of percentage point declines in the customer mix test, conditional on establishing a threshold of 15%.

- Decline-Only Revenue Pattern (Zones B/C) (Section IIC)

  o We modify our proposal so that causation can be established by a 10% revenue downturn in 2 of 3 consecutive months provided the change in revenue not exceed 5% in the third month.

  o The modifications to the customer mix test discussed above for the Modified V-Test (Zones B/C) are also incorporated here.

  o With respect to the specific documentation requirements under this test:

HIGHLY CONFIDENTIAL
SUBJECT TO SETTLEMENT DISCUSSION CONFIDENTIALITY AGREEMENT

004568

### KIRKLAND & ELLIS LLP

- ▪ We accept your proposal to include "loss of financing" as a factor that can be used to explain the absence of a recovery, but excluded the language "and/or reasonable terms of renewal" as being overly vague.

- ▪ We do not accept your proposal to include "Product/Service replacement by customer," because these do not identify special circumstances that explain why an otherwise healthy firm would fail to recover.

- • V-Shaped Revenue Pattern (Zone D) (Section IIIA)

  - o We do not accept your insertion that a showing of the later upturn can be avoided by "a written explanation of why the revenue did not increase in 2011," as an insufficient alternative to meeting a key prong of the proposed test. Rather, Section IIIC, Decline-Only Revenue Pattern, is the causation test applicable for claimants in Zone D whose revenue did not increase in 2011.

- • Seafood Retailer Test (Zone D) (Section IIIE)

  - o We do not accept your proposal to meet the second prong of the Seafood Retailer test by establishing a "5% decline in gross income" due in part to the undefined nature of the gross income standard (e.g., how would COGS be defined, what would happen to claimants that did not report COGS). We have clarified our proposal to use a net income standard based on standard GAAP rules.

- • Vicarious Causation Test (Zones B/C/D) (Section IIE and Section IIIF)

  - o BP is amenable to expanding the availability of this test to claimants with annual revenue of $60,000, so up from our prior proposal of $50,000. The threshold of $150,000 in annual revenue proposed by the PSC is inconsistent with the concept that PSC has proposed of an alternative vicarious causation test for small claimants.

**Compensation Framework for Business Economic Loss Claims**

On compensation, the parties discussed four key issues: (l) EBITDA vs. Variable Profit, (2) Fixed & Variable Payroll Expenses, (3) Claimant Specific Factor and (4) Tourism Factor / Industry Factor. Below we outline what we understand to be the PSC's proposal as of December 1, and BP's response.

- • EBITDA vs. Variable Profit and Fixed & Variable Payroll Expenses:

  - o In discussions prior to December, 1, BP had proposed that it was willing to accept PSC's position that Variable Profit be used provided that BP's proposal

HIGHLY CONFIDENTIAL
SUBJECT TO SETTLEMENT DISCUSSION CONFIDENTIALITY AGREEMENT

004569

## KIRKLAND & ELLIS LLP

for Fixed & Variable Payroll Expenses be utilized. As we explained, BP has proposed that Fixed and Variable Payroll Expenses would be calculated by defining Fixed Payroll Expenses as the average payroll expenses for the three months during 2009 through 2010 with the lowest Total Payroll Expenses. We explained that BP does not intend that months in which a seasonal business is shut down entirely be included among the three months used in the calculation. In addition, BP explained that its acceptance of utilizing Variable Profit over EBITDA was also contingent upon reaching resolutions acceptable to it with regard to the Claimant Specific Factor and the Tourism Industry Factor.

  o On December 1, PSC responded that it was amenable to this proposal; however, PSC provided a proposed definition of "dormant" in which it proposed that the term would mean (1) the gross revenue for the month is 5% or less of the annual gross revenue, or (2) the salary cost for the month is zero or (3) the salary cost for the month is negative.

- BP accepts with modification PSC's proposal for defining the "dormant" months to be excluded from the three month period used in BP's proposed approach for calculating Fixed and Variable Payroll Expenses. Specifically, we propose that dormant months include those in which the claimant (i) has salary costs that are zero or negative, and (ii) months that account for 1% or less (instead of the PSC-proposed 5% or less) of the claimant's annual revenue. PSC's proposal of 5% would vitiate the intent of the test.

- Claimant Specific Factor and Tourism Factor / Industry Factor

  o On December 1, the PSC proposed a cap on the Claimant Specific Factor of 10% and a floor of -3.75% and an Industry Factor of 3.75% that would be applied to all claimants EXCEPT those with a Claimant Specific Factor of less than -3.75%, which would receive no General Adjustment Factor.

  o BP is amenable to the PSC's proposal with one modification, the cap on the Claimant Specific Factor would be 7.5%. Also, BP proposes that the parties then replace their respective terminology of "Tourism Factor" and "Industry Factor" with the phrase "General Adjustment Factor" since the growth rate will be more broadly applied.

4

HIGHLY CONFIDENTIAL
SUBJECT TO SETTLEMENT DISCUSSION CONFIDENTIALITY AGREEMENT

004570