# Wallace, Benee

| | |
|---|---|
| **From:** | Wallace, Benee on behalf of Rice, Joe |
| **Sent:** | Sunday, April 15, 2012 9:14 PM |
| **To:** | charles.r.hacker@us.pwc.com |
| **Subject:** | Framework_Recommendations_4_4_20121.docx |
| **Attachments:** | Framework_Recommendations_4_4_20121.docx |

Mr. Hacker,

Joe asked that I send you his responses to your questions and observations emailed to him on April 4, 2012 at 10:10 pm....

His responses in blue follow each of the questions. Please let me know if you have any questions.

HIGHLY CONFIDENTIAL
SUBJECT TO SETTLEMENT DISCUSSIONS CONFIDENTIALITY AGREEMENT
4/4/12

# Business Economic Loss Framework Observations

**Appendix 4.A Business Documentation Framework**
*Note: We would like to comment further on the documentation appendix upon review of the claims form, when received.*

- Do the affidavits need to be signed by anyone more than the claimant (i.e. attorney, notary, etc.) if not specified otherwise?  No

- 4A.1 The specific criteria delineating a business claimant from an individual claimant should be added here.  This was not done

- 4A.8. Payments from Real Estate Fund should be added to the current list.   They were not added

- 4A.9  The year should be explicitly stated in this sentence (e.g., Additional documentation for claimants with annual revenue of $75,000 or less "***in 2009***" which seek to establish causation on the basis of a Causation Proxy Claimant.  [2007, 2008, or 2009]

**Appendix 4B Business Compensation Framework**
- Were alternative causes of losses not directly related to the Spill considered? Under the proposed Compensation Framework for Business Economic Loss Claims (the "Framework"), unless specifically addressed on a claim by claim basis, revenue fluctuations due to hurricanes, change in location of business, change in customer base, floor plan expansion, change in product/service offering, and any other alternative causes of losses not directly related to the Spill may or may not impact the loss calculation.   They are irrelevant if a Claimant meets the stated test

- Under the Framework, the results of using revenues as the only metric to measure losses for businesses that are driven primarily by volume (e.g., gas stations, utility companies, lodging) may be skewed by the impact of underlying non-loss related price fluctuations.  This was not agreed to so Revenue is the measure

- Claimants may select what they believe to be the most favorable Benchmark Period utilizing only revenues.  This may not result in the highest Business Economic Loss determination, as the impact of variable expenses must also be considered.  Is it the intent of the parties to let the accountants use a Benchmark Period, other than the one selected by the Claimant, if it results in a more favorable claim amount? This is unclear in the current version of the framework we have reviewed.  Yes

- Can the benchmark period for causation be different from the benchmark period for the compensation calculation?  The Months can be different but not the years

HIGHLY CONFIDENTIAL
SUBJECT TO SETTLEMENT DISCUSSIONS CONFIDENTIALITY AGREEMENT
4/4/12

- We recommend applying the Variable Margin percent calculated in Step 2 (see page 2) to revenue in order to calculate Variable Profit in Step 1 (see page 1), as opposed to deducting variable costs from revenue.  This will:

    1. Minimize the potential impact of non-representative variable expenses derived from using only a limited number of months;

    2. Have the potential of more accurately matching revenue with expenses by consistently using a longer base period; and

    3. Reduce the amount of work required to complete Step 1 (as the Variable Margin already needs to be calculated in Step 2) as well as the amount of work required for the claimant to calculate the highest Business Economic Loss.

    This is not agreed to

- In determining the Claimant-Specific Factor, a four month base period (January – April) may or may not be long enough to adequately project a trend for a potential eight-month loss period. Additionally, the months of January through April typically represent the off-peak season for most claimants, which may not reflect an adequate level of sales activity to accurately measure the anticipated growth of the peak season (e.g. May through October). The Framework should be expanded to include the consideration of longer base period(s) (e.g., 6-month; 8-month; and 12-month).  BP would not agree but we added a "Industry factor" in most cases

**Appendix 4C Business Causation Framework**
- 4C.II.E. and 4C.III.F.  The year should be explicitly stated in this sentence (e.g., Additional documentation for claimants with annual revenue of $75,000 or less "***in 2009***" which seek to establish causation on the basis of a Causation Proxy Claimant.  2009, or average if 2008-2009, or 2007-2009

- The concept of the Customer Mix test presents the following concerns and these concerns should be considered in the execution and efficiency of the test:
    o Difficulty for claimant in providing documentation (i.e. Cash transactions are considered in total revenue, but are unable to be identified by specific customer);
    o Verifying the completeness and accuracy of the documentation may prove difficult;
    o Not efficient for an accountant with "shoebox" method of handling receipts; and
    o Documentation for distance requirements (i.e. local vs. nonlocal) is not typically maintained in the ordinary course of business and may be difficult for the claimant (or accountant) to create.

    This is just an alternative and we understood Administrator would have to develop guidelines

- The following terms appear in the Framework and need further clarification/consideration:
    o <u>Urban Area vs. Urban Cluster</u>  (A Rural customer is one located in an area outside the Urban Area or Urban Cluster, as defined by the US Census Bureau's classification in Attachment 4C.II.E and 4C.III.F. Urban Areas or Urban Clusters need further explanation within the Framework.)

HIGHLY CONFIDENTIAL
SUBJECT TO SETTLEMENT DISCUSSIONS CONFIDENTIALITY AGREEMENT
4/4/12

- o <u>Wholesaler vs. Retailer</u> (Wholesaler and Retailer definitions are set forth in the "Seafood Distribution Chain Definition" document, which has not yet been provided to PwC/P&N. These were not defined in the framework.)

- The verbiage in the Framework presents, for example, a "Down" percentage of 8.5% and an "Up" percentage of 5%. However, Exhibit A on page 10 presents the reciprocal of an "Up" percentage of -8.5% and a "Down" percentage of 5%. Consider reversing the table headings from "Up" and "Down" to "Down" and "Up".  <u>Ex. A is wrong and being fixed.</u>

- If a claimant does not meet the revenue v-test, modified v-test, or decline only requirements, and does not provide documentation to establish causation on the basis of cancelled contracts/reservations, etc., is it the expectation of the parties the claim should be denied or marked deficient? <u>Deficient</u>

**Appendix 4D Attachment A – Fixed and Variable Costs**
- Many items such as repairs and maintenance and certain taxes are typically grouped together on P&L expense categories without further explanation or breakout. Of particular note on this appendix some items such as repairs and maintenance and taxes and licenses/property taxes/payroll taxes/unemployment taxes, etc. were listed having components of both a fixed and variable nature requiring a further breakout.
 If these items are not broken out on the P&Ls provided by the claimant, should the accountant use judgment to allocate to the expense categories or should the claim be put on hold to obtain more information from the claimant? Many claimants may not be able to provide a breakout to distinguish between certain items, and it may be difficult for them to create.
<u>Repair/Maintenance defaults to 50/50</u>

- Should expenses be considered if they do not appear on this list or is the list intended as an all-encompassing list of allowed costs for each claim? Adding verbiage to indicate the intent would provide additional clarity.
<u>These are variables that get deducted</u>

**Appendix 5 Multi-Facility Business Framework**
- *A "Multi-facility Business"…at its option, elect to file separate claims for each "Facility" as defined below, or may elect to file a consolidated claim for all Facilities. The claimant may not, however, elect to file a claim for any combination of Facilities comprising a subset of the claimant's Facilities".* According to footnote #1, this is still a point of contention between parties – has this been settled? <u>Was changed in final</u>

- Page 2: "*The damage methodology set forth in the Compensation Frameworks for Business Economic Loss Claims shall be applied to each Claiming Facility, subject to the following modification:  All direct expenses associated with the Claiming Facility in the contemporaneously-prepared P&L statements, and only such expenses, must be included in the calculation.*"  It appears that relevant variable expenses incurred at the corporate level may be excluded from the loss calculation.  Is that the intent here?
<u>All doubt goes to favor of the claimant</u>

HIGHLY CONFIDENTIAL
SUBJECT TO SETTLEMENT DISCUSSIONS CONFIDENTIALITY AGREEMENT
4/4/12

- It may be helpful to provide an example in the Framework to illustrate the above. (I.e. If a large grocery store has 200+ locations across the US and 20 locations across the Gulf are preparing to file a claim what combination of business/separate claims can be pursued according to the Framework?)

- As a point of interest, if the claimant chooses to file by separate locations, the opportunity to offset any gains is lost. True

**Appendix 6 Failed Business Framework**
- A failed-start up is defined as a business, which among other things, starts on or after 11/1/2008 (Appendix 6, page1). However, a start-up is defined as a business has less than 18 months of operating history prior to the spill, which if taken literally would mean October 19, 2008 – April 19, 2010 (Attachment 7, page 1). These dates are conflicting. Can some clarification of verbiage be applied to the definition of both types of start-up Frameworks?
- Footnote #1 in attachments 6 notes this appendix does not apply to property development and/or construction businesses. Will these types of businesses be considered in a compensation Framework yet to be determined or just excluded? The intent was 11/1/08 – Pre or Post

- This Framework makes mention for the need of projections/forecasts. Projections are based on a fixed set of assumptions whereas a forecast would be the best estimate of what should take place in the market considering external economic factors. Any and all references to "projections" should be replaced with "forecasts" if the intent would be to estimate what would reasonably take place under the given market conditions.

**Appendix 7 Start-Up Businesses Framework**
- Footnote #1 in attachment 7 notes this appendix does not apply to property development and/or construction businesses. Will these types of businesses be considered in a compensation Framework yet to be determined or just excluded?  Addressed in Final

- This Framework makes mention for the need of projections/forecasts. Projections are based on a fixed set of assumptions whereas a forecast would be the best estimate of what should take place in the market considering external economic factors. Any and all references to "projections" should be replaced with "forecasts" if the intent would be to estimate what would reasonably take place under the given market conditions.  Use either

*Note on Individual Frameworks: The last available copy is dated 2/28/2012. Is a more recent draft available?*

**Appendix 8B Addendum to Individuals Framework – Benefits Losses**
- Are disability income insurance benefits and/or long-term care insurance benefits covered? These benefits are not specifically addressed under "Health Insurance".
  If part of benefits offered, yes

**Appendix 8D Addendum to Individuals Framework - Interviews of Claimants Alleging Individual Economic Loss and Other Individuals Providing Sworn Statements in Support of Such a Claim**
- Our copy states "Still in Negotiation", is a more recent copy available?
  In Final

HIGHLY CONFIDENTIAL
SUBJECT TO SETTLEMENT DISCUSSIONS CONFIDENTIALITY AGREEMENT
4/4/12

**Other Comments**
- Class Counsel should coordinate directly with the relevant state agencies (i.e., Louisiana Department of Wildlife and Fisheries, Florida Fish and Wildlife Conservation Commission, etc.) to obtain historical Marine Fishery Trip Tickets on behalf of all claimants.  Obtaining this information has proven to be problematic for claimants in the past, as it requires the claimant to make a visit to the relevant state agency to make an in-person request for the documentation.  [We have done for LA.]{.underline}

- To the extent possible, leverage off work previously performed, including but not limited to review of the "pilot" claims used to test the compensation framework for business economic loss claims in an effort to develop training materials, which can be shared for both internal training of newly hired accounting staff and external training for professional claims preparers.