# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * * * * | MDL NO. 2179 |
| | | SECTION J |
| | | HONORABLE CARL J. BARBIER |
| This document relates to Civ. A. No. 12-970. | * * * | MAGISTRATE JUDGE SHUSHAN |

## DECLARATION OF HAL SIDER

I, Hal Sider, hereby declare and state as follows:

1. I am over the age of 21 years and a resident of the State of Illinois. Unless otherwise stated, I have personal knowledge of the facts set forth herein and, if called to do so, could testify truthfully thereto.

2. I am an Executive Vice-President of Compass Lexecon, an economic consulting firm with its headquarters in Chicago, IL. I have been retained by BP and my responsibilities include monitoring the implementation of the BEL framework of the Settlement Agreement by the Court Supervised Settlement Program (CSSP). I previously submitted declarations in this matter on February 18, 2013, March 14, 2013, April 21, 2013, July 16, 2013, August 5, 2013, September 20, 2013, October 9, 2013, and October 18, 2013. My February 18 declaration summarizes my qualifications and includes my curriculum vitae.

### I. Introduction and Overview

3. My prior declarations identified and evaluated metrics that can be used to identify claims for which CSSP offers are based on financial data that fail to properly match revenue and

1

corresponding variable expenses.  I have been asked by counsel for BP to evaluate the criteria proposed by the Claims Administrator for determining whether there is a substantial likelihood of insufficient matching so that a matching review is required.  (Declaration of Patrick A. Juneau, Claims Administrator, October 25, 2013).  The analysis presented here relies on monthly line-item specific P&L data submitted by 9,844 BEL claimants and compiled by CSSP.  This includes information from nearly all BEL offers made by CSSP since mid-November 2012, when CSSP first started to make available this P&L information in Excel form.[1]  My analysis applies Mr. Juneau proposed criteria, as I understand them, to financial data used by CSSP as the basis of BEL offers and then evaluates the presence of potential matching problems among BEL claimants not identified by Mr. Juneau's proposed criteria.

4. My review indicates that the criteria proposed by the Claims Administrator are useful for identifying financial data submitted by claimants in support of BEL claims that are likely to present issues of insufficient matching.  My review also identifies a narrow set of claims that are like to be subject to insufficient matching but would not be identified by Mr. Juneau's proposed criteria.  I suggest below some modest refinements of Mr. Juneau's criteria that would allow identification of such claims.

5. I note that my analysis of Mr. Juneau's proposed criteria is based on my interpretation of how these criteria would be implemented, which is detailed below.  However, if my interpretation is mistaken it may be necessary to revise or clarify aspects of my opinions.

II. **Review and Assessment of the Matching Review Criteria Proposed by Mr. Juneau**

6. Briefly summarized, Mr. Juneau identified seven criteria for identifying potential matching problems, with claims held for a matching review if their financial data meet any of the

---

[1] The 9,844 BEL claims included in the analysis are those for which the CSSP has provided the claimant's P&L data in spreadsheet form.  Prior to that, CSSP provided the claimant's P&L information only in PDF format.

seven criteria.  Mr. Juneau's seven proposed criteria all appear to be based on measures of monthly revenue and monthly variable expenses as recorded in claimants' financial data.[2,3]  In addition to these seven criteria, Mr. Juneau has also proposed that claims be subject to a matching review if "in the professional judgment of the CSSP accounting vendors, a claimant's financial records contain other significant indicators that the claim may not be 'sufficient matched'."

7. As a preliminary matter, I find certain aspects of Mr. Juneau's matching criteria (3) and (6) to be somewhat unclear and require clarification.  For the purposes of my analysis, I assume that the term "dormancy", which is used in proposed Criterion (3), is defined as when a claimant's financial data records both zero revenue and zero variable expenses in a given month.  Second, I assume that proposed Criterion (6) is calculated by identifying the maximum and minimum monthly variable margin percentages observed over the claimant's Benchmark and Compensation Years, and determining if the difference between these two measures is more than 50 percentage points.  If these interpretations are mistaken, it may be necessary to revise or clarify aspects of my opinions.

8. Together, the seven criteria proposed by Mr. Juneau identify the large majority of potential matching problems observed in financial data used by CSSP in making BEL offers to

---

2. The use here of the terms "revenue" and "expenses" references data recorded in claimants' financial statements and does not presume that the recorded data are accurate and satisfy the requirements of the Settlement Agreement.
3. The seven criteria proposed by Mr. Juneau are:   (1) negative total revenue is recorded for any month in the Benchmark Years, Compensation Year, or 2011; (2) total revenue recorded in any month in the Benchmark Years, Compensation Year, or 2011 exceeds 20% of the claimant's annual revenue for the year which includes that month; (3) the claimant's monthly P&L data shows that the claimant experienced a period of "dormancy" in the Benchmark Years, Compensation Year, or 2011; (4) total variable expenses when summed up are negative for any month within the Benchmark Years or Compensation Year; (5) total variable expenses for any month within the Benchmark Years or Compensation Year exceed 25% of the claimant's annual variable expenses for the year which includes that month; (6) variable margin percentages when compared between any two months included within the Benchmark Years and Compensation Year vary by more than 50 percentage points; and (7) in any given month within the Benchmark Years or Compensation Year, the variance between that month's percentage of annual revenues as compared to that same month's percentage of annual variable expenses exceeds 8 percentage points.  Data from claimants that meet any one of these criteria would be reviewed for potential matching problems.

date. However, I also find that the Mr. Juneau's proposed criteria would fail to capture a limited number of claims with potential matching problems. The remainder of this section proposes some narrow modifications to Mr. Juneau's criteria that would identify claims with potential matching problems that are not identified by Mr. Juneau's proposed criteria. Section III below identifies and reviews examples of such claims.

9. Mr. Juneau's proposed criteria rely on total revenue or total variable expenses as recorded in Claimant's profit and loss statements ("P&Ls") and do not appear to make use of line-item detail on variable expenses that are available in the P&L statements. However, irregular expense line items can indicate the presence of significant matching problems that would not be identified based on criteria that utilize measures of a claimant's total monthly revenue or total monthly variable expenses. Line-item information is captured in CSSP's BEL workbooks and is, therefore, readily available to CSSP for use in defining criteria for identifying potential matching problems. Two of the three proposed additional criteria described below make use of line-item expense information that is already included in CSSP's BEL evaluation. The third proposed criteria is based on a claimant's total monthly revenue or variable expenses.

### *Bad Debt*

10. Bad debt expenses are recorded as a standard line item entry in CSSP's BEL workbook. The presence of bad debt expenses often indicates the presence of matching problems because this expense item typically reflects a "true up" entry reported at year end (or at other potentially irregular intervals) to account for revenue reported in prior months that was not paid to the firm, and that the firm no longer expects to receive. Bad debt expenses signal potential matching problems because it reflects an accounting entry that corrects revenue that was overstated in prior periods. Recording cumulative bad debt expenses in a single month thus

overstates cost in one period as an offset to overstated revenue in other periods. My October 9, 2013 declaration identified a modest incremental number of potential matching problems based on a bad debt criterion that identified claimants with a monthly bad debt in Benchmark Years or the Compensation that which accounted for 50% or more of the claimant's annual bad debt expenses.[4]

*Material Negative Line Item Expenses*

11. As discussed in my prior declarations, negative line item expenses can indicate the presence of potential matching problems since such entries typically reflect adjustments or corrections to entries in prior periods. Entries of this type thus imply that expenses are misreported for at least two months -- the month with the negative line item and one or more prior months. My review of P&L data used by CSSP in evaluating BEL claims indicates that matching problems can be identified based the presence of negative monthly variable expenses in the Benchmark or Compensation years among variable expenses that account for a sizeable share of a claimant's overall variable expenses. Application of this proposed criterion would be limited to variable cost line items that account for 5% or more of a claimant's total variable expenses across Benchmark and Compensation Years.[5] Thus, negative monthly values for minor variable expenses line items would not trigger a review for potential matching problems. Analysis of P&L data used by CSSP in making BEL offers to date using this criterion identified a small incremental number of offers with potential matching problems.

---

4. The 50% criterion is used in order to avoid review of claims reporting bad debt that may not reflect write offs of such expenses occurring over longer periods. The large majority of P&Ls that report bad debt meet this supplemental criterion.

5. My October 9, 2013 declaration evaluated a similar criterion based on all line item expense categories (i.e., that analysis did not limit the review to expense categories that accounted for more than 5% of annual revenue).

*Material Monthly Negative Variable Profit*

12.    As discussed in my prior declarations, negative variable profit in a month can indicate the presence of potential matching problems. Because firms typically do not operate when variable expenses exceed revenue, the presence of negative variable profit recorded in a given month is a potential indicator of errors in reporting of revenue and/or corresponding variable expenses in prior periods. My review of P&L data used by CSSP in evaluating claims indicates that potential matching problems can be identified based on P&Ls with a material level of negative variable profits in a given month in the Benchmark Years or Compensation Years. The proposed additional criterion would identify claims supported by P&L information in which a claimant reports negative variable profits in a month exceeding 1% of the claimant's annual revenue.[6] Analysis of P&L data used to date by CSSP in making BEL offers based on this criterion identified a small incremental number of offers with potential matching problems.

**III.    Proper Matching Should not be Difficult to Implement**

13.    With claims that exhibit potential matching problems properly identified, I believe that matching can be implemented in a practical and efficient manner, using commonly accepted approaches used by economists and professional accountants in computing lost profits.

---

6. My October 9, 2013 declaration evaluated a similar criterion based on all months with negative variable profit (i.e., that analysis did not limit the review to months with variable profit that were above 1% of claimant's annual revenue). Review of claims identified using a threshold of negative variable profits that were less than 1% of annual revenue did not appear to identify significant potential matching problems.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is a true and correct statement of my analysis and opinions.

Dated:  November 7, 2013                               _____

                                                                           Hal Sider