UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | MDL 2179<br><br>SECTION: "J" |
| This Document Applies to:<br><br>No. 12-970, Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production Inc., et al. | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

**MEMORANDUM OF LAW IN SUPPORT OF JON ANDRY'S, GLENN J. LERNER'S, AND ANDRYLERNER, LLC'S OBJECTIONS TO, AND MOTION TO AMEND, THE <u>ORDER GRANTING THE SPECIAL MASTER ADDITIONAL POWERS</u>**

The Court appointed Louis J. Freeh as Special Master to investigate the circumstances of Lionel Sutton's resignation from the Court Supervised Settlement Program ("CSSP") and to make factual findings about any ethical or other misconduct at the CSSP. Rec. Doc. 10564.[1] With the filing of his Report, Rec. Doc. 11287, the Court concluded that the Special Master had "completed" those tasks. Rec. Doc. 11288. Mr. Freeh's work nevertheless has continued. Without giving Rule 53 notice to Jon Andry ("Andry"), Glenn J. Lerner ("Lerner"), and AndryLerner LLC ("AndryLerner") (collectively "The AndryLerner Interests") or an opportunity to be heard, the Court expanded Mr. Freeh's powers in an Order issued on September 6, 2013 (the "Order"). *Id.* These additional powers go beyond what is permitted by Rule 53, and Mr. Freeh is exercising them in a manner that exceeds what is allowable by rule. As a result the

---

[1] Jon Andry, Glen Lerner, and AndryLerner LLC appear solely to object to, and seek amendment of, the expanded powers granted to the Special Master in the Order. Andry, Lerner, and AndryLerner specifically reserve their rights to make any and all objections to the Special Master's Report and any other aspects of the Order not addressed herein, including those grounds for dismissal set forth in Federal Rule of Civil Procedure 12(b) and any other grounds relating to the scope of Mr. Freeh's authority under Rule 53.

AndryLerner Law Firm is in jeopardy of not being able to survive and its clients are being deprived of the rightful remedies for damages caused by the Deepwater Horizon oil spill.

Mr. Freeh is no longer acting as an officer of the Court appointed for a limited purpose. Instead, he has claimed the powers simultaneously of a judicial officer, civil litigant, special prosecutor, and claims administrator. He has withheld significant portions of the investigative record from the Court and filed papers opposing legitimate demands for access to the investigative record. He even has issued a public statement in response to a request from the movants here seeking additional information about his potential conflicts of interest.

Mr. Freeh also is seeking now to function essentially as the claims administrator. He has undertaken to review *every* one of the nearly 500 pending AndryLerner client claims, without any reason to believe they are fraudulent or disclosing the criteria for his review. He has, in effect, quarantined these claims even though neither his investigation nor the Claims Administration Office's ("CAO") own internal investigation has found any wrongdoing with respect to any claim (including Casey Thonn's). As a result, not a single AndryLerner client has been paid since the issuance of the Order and AndryLerner's clients are arbitrarily being denied the processing and payment of claims. The failure to process and pay these claims in due course has unfairly prejudiced AndryLerner's clients, who through no fault of their own have been denied compensation. It also is in direct contravention of the Court's mandate that Mr. Freeh's investigation "not delay or impede the payment of legitimate claims." Rec. Doc. 11288 at 3.

The freeze on payments is also pushing AndryLerner to the brink of financial ruin and threatens to impair the firm's ability to represent its clients. The AndryLerner Law Firm is a separate legal entity from Andry and Lerner. It has obligations and responsibilities to others

2

separate and apart from the obligations and duties of Andry and Lerner. The obligations include but are not limited to the following:

- Paying the ten full-time and part-time employees of the firm. These employees receive a check on a regular basis that provides food for their families, pays for their children's educations, pays medical bills and health and other insurance and pays the note on their home or rent.
- Payments to vendors who provide goods or services to the firm. The vendors range from Entergy to the phone company and vendors who have provided expert reports or services for the AndryLerner law firm.
- Payments to clients and referring attorneys.

The effect of the freeze on the payment of legitimate AndryLerner client claims makes it difficult for the firm to honor its obligations and service its clients on a going forward basis. The employees, vendors, and clients are not accused of any wrongdoing (in fact nobody has yet identified a single fraudulent claim that has been paid or is eligible for payment) yet are being asked to suffer as a result of the non-payment of the eligible AndryLerner client claims.

To remedy the foregoing, we ask the Court to amend the Order issued on September 6. We request the Court rescind the additional powers accorded the Special Master in the Order, because The AndryLerner Interests were not given notice and an opportunity to heard, as required under Rule 53. In addition, The AndryLerner Interests object to the additional powers granted to the Special Master as exceeding Rule 53 and request that the Court amend the Order in the following manner:

1. Strike the Special Master's authority to file a "reply to any response, objections or motions" filed with respect to his Report, Rec. Doc. 11288 at 4;

3

2.  Strike the Special Master's authority to "initiate legal action to 'clawback' the payment of any fraudulent claims," *id.* at 3; and

3.  Limit the Special Master's authority to "examine and investigate . . . any past or pending claims submitted to the CSSP which are deemed *suspicious*," *id.* (emphasis added), by

    a)  requiring either the Court or the Special Master to define the criteria that give rise to a "suspicious" claim;

    b)  requiring the Special Master to apply those criteria in a fair, objective manner and not to single out claims filed by AndryLerner clients;

    c)  requiring the Special Master to conclude, except for good cause shown, his review of any "suspicious" claim within 30 days;

    d)  requiring the Special Master, in the event he deems any claim "suspicious," to submit a report, and the evidence supporting the report, to the CAO. A copy of the report should be provided to counsel for the claimant, who shall be given an opportunity to be heard and to submit evidence to rebut the report; and

    e)  requiring the CAO to investigate the claim in question, based on information provided by the Special Master and the claimant and any other information deemed relevant, and make a determination as to whether the claim is eligible for payment.

The process described in paragraph 3 above will provide transparency with respect to the review and evaluation of "suspicious" claims, without adding an additional layer of professionals who would duplicate the work of existing CSSP claims professionals.

4

Additionally, we request that the Court fashion an order that allows AndryLerner to service its clients, pay its bills, and function without any money being paid to either Lerner or Andry. The procedures to be employed would be the same procedure that is employed in a Chapter 11 case where lenders have an interest in the debtor's cash but it is in the best interest of all to keep the entity functioning while the other issues in the case are going through the normal adversarial process. The suggested order would provide the following:

1. AndryLerner would provide to the Court or its designee an approved operating budget. The budget would allow AndryLerner's fees to be used to pay the expenditures set forth in the budget. The order would, however, prohibit any distribution from AndryLerner to Andry or Lerner pending further order of the Court; and

2. AndryLerner would provide on a monthly basis a report showing its expenditures during the prior month and a copy of bank statements and checks to insure that no payments were received by Andry or Lerner pending further order of the Court.

## BACKGROUND

A. *The Special Master's Appointment and the September 6, 2013 Order.*

On June 25, 2013, the Court notified counsel for BP and the Plaintiffs' Steering Committee ("PSC") of its intent to appoint the Special Master under Rule 53. Rec. Doc. 10564 at 1. The Court did not provide The AndryLerner Interests with notice of its intent to appoint Mr. Freeh. BP and the PSC did not object to Mr. Freeh's appointment, and on July 2, 2013, the Court entered an appointment order (the "Appointment Order"). *Id.* The Appointment Order stated that Mr. Freeh does not have the power to perform "traditional Special Master roles involving mediation, discovery, fact finding or substantive law." *Id.* at 2. Instead, it "limited" his appointment to the following three functions:

5

a) performing the aforementioned independent external investigation [concerning the resignation of Lionel Sutton from the CAO];

b) fact finding as to any other possible ethical violations or other misconduct within the CSSP; and

c) examining and evaluating the internal compliance program and anti-corruption controls within the CSSP, and making any necessary recommendations to design and to implement additional such controls, policies, procedures and practices to ensure the integrity of the CSSP.

*Id.*

On September 6, 2013, Mr. Freeh submitted a 96-page report to the Court that exceeded the scope of the Appointment Order (the "Report"). Rec. Doc. 11287. The Appointment Order did not grant authority to recommend sanctions against any party, attorney, or nonparty. Nevertheless, Mr. Freeh recommended that the Court apply the unclean hands doctrine to "[p]rohibit Mr. Lerner, Mr. Jon Andry, Lionel Sutton and Christine Reitano, as well as any law firms associated with them, from representing any claimants before the DHECC, or from receiving any related legal fees." *Id.* at 88. Likewise, although Mr. Freeh acknowledged that his "mandate . . . did not include a directive to review the accuracy and appropriateness of claims pending before the DHECC," he nonetheless found "that the Thonn claims before the DHECC evidence fraudulent characteristics." *Id.* at 58.

Following the public filing of the Report, on September 6, 2013, the Court entered the Order, though it was never served on The AndryLerner Interests. Among other things, the Court directed The AndryLerner Interests, Lionel Sutton, Christine Reitano, and The Andry Law Firm (the "Show Cause Parties") to show cause why the Court should not adopt Mr. Freeh's recommendations for sanctions. Rec. Doc. 11288 at 3. Additionally, without giving The AndryLerner Interests notice or an opportunity to be heard, the Court granted Mr. Freeh the power to undertake "duties *in addition* to those set forth in the July 2, 2013 Order of

Appointment." *Id.* at 2 (emphasis added). Those additional duties include (i) "examin[ing] and investigat[ing] . . . conflicts of interest by parties involved in the CSSP" and "any past or pending claims submitted to the CSSP which are deemed to be suspicious," and (ii) initiating "legal action to 'clawback' the payment of any fraudulent claims." *Id.* at 2-3. The Order also granted Mr. Freeh the opportunity to "file a reply to any response, objections or motions" filed by the Show Cause Parties and others with respect to his Report. *Id.* at 4.

B. *Special Master as Special Prosecutor or Civil Litigant*

Following the Order, the Show Cause Parties filed motions for access to the Special Master's investigative record. Acting as an advocate, Mr. Freeh forcefully opposed those motions and took the position that the Show Cause Parties are entitled to have only those materials that are cited in his Report. *See* Rec. Docs. 11627 & 11639. Mr. Freeh also has withheld portions of the investigative record from the Court. Mr. Freeh has turned over to the Court "only those documents referenced in the Report." Rec. Doc. 11639 at 2. That means the Court has received less of the investigative record than the United States Attorney's Office for the Eastern District of Louisiana. Rec. Doc. 11408 at 1 (stating that material from the Special Master's investigation is being provided to the United States Attorney's Office and that the Special Master has already communicated with the United States Attorney's Office on this issue).

Mr. Freeh, also as an advocate, has issued a public comment in response to one Show Cause Party's filing. In response to a motion filed by Andry seeking additional disclosures concerning possible conflicts of interest, Mr. Freeh not only opposed the request for disclosure, but he also issued a highly improper public statement criticizing the request and taking a position

7

on its merits: He stated, "Mr. Jon Andry's lawyers' belated and rambling motion to recuse the Special Master is without merit in law and fact."[2]

C. *Special Master as Claims Administrator*

Mr. Freeh also has acted expansively with respect to his authority to review "suspicious" claims – undertaking a review of every AndryLerner claim – even though there has been no finding by anyone that any AndryLerner claim is fraudulent or otherwise improper.

The CAO has concluded that, with limited, immaterial exceptions, all of AndryLerner's claims are "in order." Rec. Doc. 10774-5 at 2-3; *see* Ex. A (Supplemental Report on Review of Code of Conduct and Claims Processing Issues, July 17, 2103) at 2-3. After allegations of impropriety arose concerning Sutton's relationship to Andry and Lerner, the CAO placed on "hold" all pending AndryLerner client claims. Rec. Doc. 10761-6 at 3. On July 17, 2013, the CAO reported to the Court that it had completed a review of both previously processed claims receiving eligibility notices and in-process claims, totaling 635 claims. Of the 635 claims, 141 already had been processed and received eligibility notices. BrownGreer re-reviewed each of these claims and "found them all to be in order," with two immaterial exceptions. *See* Ex. A at 2-3. With regard to the 494 in-process claims, BrownGreer also conducted a re-review of each of these claims, and determined, with one immaterial exception, "all such claims to be in order." *Id.* at 3-4. At the preliminary injunction hearing held on July 19, 2013, counsel for the CAO made clear what the claims re-review demonstrated: "I am aware of no . . . such evidence, I've looked at the investigative reports, I've looked at the backup information. I have seen nothing to

---

[2] Associated Press, "BP Oil Spill Settlement Probe Target Lashes Out at Special Investigator" (Oct. 17, 2013), *available at* http://www.nola.com/news/gulf-oil-spill/index.ssf/2013/10/bp_oil_spill_settlement_probe.html (last visited Nov. 5, 2013).

8

support the idea that [Sutton or Reitano] had any influence over the calculation of claims to any claimant." Hr'g Tr., July 19, 2013, at 21;[3] *see also id.* at 22-23.

Mr. Freeh himself ultimately corroborated the CAO's finding of no undue influence as to any AndryLerner claim. His Report unequivocally stated: "The Special Master did not find any evidence that either Mr. Sutton or Ms. Reitano directly manipulated the valuation of claims by accessing the DHECC database." Rec. Doc. 11287 at 4. Mr. Freeh further noted that, "while certain conduct of Claims Administrative Office ("CAO") employees and DHECC vendors described in this report is problematic, this should not prevent the DHECC from fairly and efficiently processing and paying honest and legitimate claims in a timely manner." *Id.* at 2. In the two months since Mr. Freeh's Report was issued, he has not – at least not publicly or privately to AndryLerner counsel – identified any evidence to alter the Report's finding that no AndryLerner claims received any unfair advantage. Nor has he identified any AndryLerner claim as fraudulent.

Notwithstanding the lack of evidence of any wrongdoing and Mr. Freeh's assertion that claims processing should proceed in a "timely manner," the claims process with respect to AndryLerner clients has ground to a halt. Not a single AndryLerner client claim has been paid since the Report was issued. In late September, counsel for Andry, Lewis Unglesby, communicated directly with the Claims Administrator, Mr. Patrick Juneau, in an effort to get the AndryLerner clients claims processed and paid. *See* Ex. B (Sept. 27, 2013, Letter from L. Unglesby to P. Juneau). However, Mr. Freeh, through his representative Gregory Paw, interceded in those discussions. Mr. Paw informed counsel that Mr. Freeh intended to

---

[3] Counsel for the CAO explained: "The [claims processing] system as it is designed has excellent internal checks and balances. There are multiple layers of professional vendors working in different locations under different supervisors that have to look at each claim. The claims are calculated for causation in one location and then for amount, if they satisfy causation, in another." *Id.* at 22.

9

investigate *all* of the AndryLerner claims pending before the CAO. When pressed by counsel to disclose the grounds for reviewing every AndryLerner claim and the criteria by which such review will be conducted, Mr. Paw declined to make any disclosures. Further, as a condition to authorizing commencement of the processing and payment of AndryLerner client claims, the Special Master demanded that he be permitted to conduct interviews of all AndryLerner referral attorneys and forensic accountants employed by the firm. *See* Ex. C (Oct. 8, 2013, Email from G. Paw). Mr. Paw recently wrote counsel about the procedure for processing AndryLerner claims, a function that the Settlement Agreement grants only to the CAO. He has not yielded in his position that every AndryLerner claim must be reviewed. *See* Ex. D (Oct. 23, 2013, Email from G. Paw to L. Westmoland & J. Cobb).

## OBJECTIONS AND ARGUMENT

### I. THE ANDRYLERNER INTERESTS OBJECT TO THE EXPANDED POWERS GRANTED TO THE SPECIAL MASTER BECAUSE THEY DID NOT RECEIVE NOTICE OR AN OPPORTUNITY TO BE HEARD.

The Special Master's expanded powers must be revoked because the Court did not give The AndryLerner Interests notice or an opportunity to be heard. "Rule 53 permits the district court to expand the initial mandate of the special master, but only by amending the referral order and 'giving notice to the parties and an opportunity to be heard.'" *Shafer v. Army & Air Force Exchange Serv.*, 376 F.3d 386, 395 (5th Cir. 2004) (quoting Fed. R. Civ. P. 53(b)(4)). Though The AndryLerner Interests are not parties to this action, the Court in effect is attempting to make them parties by ordering them to show cause why the Court should not adopt Mr. Freeh's recommendation to sanction them. Rule 53 demands that The AndryLerner Interests should have received notice and an opportunity to be heard before Mr. Freeh's powers were expanded. Denial of these procedural safeguards requires striking the powers from the Order. *See Shafer*, 376 F.3d at 395 (reversing the district court's adoption of a special master's findings and

recommendations because "not only was the original referral not amended but the district court never notified the parties of its purported referral of [another issue] to the special master"). The Order, therefore, should be amended to revoke the expanded authority granted to Mr. Freeh in the Order, including his authority (i) to investigate "suspicious" claims, (ii) to initiate "clawback" actions, and (iii) to file a reply to any response, objections, or motions filed with respect to his Report.

## II. THE COURT SHOULD REVOKE THE SPECIAL MASTER'S POWER TO INITIATE "CLAWBACK" ACTIONS AND TO FILE REPLIES BECAUSE SUCH POWERS IMPERMISSIBLY ALLOW HIM TO ACT AS A PARTY AND AN ADVOCATE.

In the alternative, the Court should amend the Order to constrain Mr. Freeh to act within the strictures of Rule 53. Specifically, the Court should strike from the Order Mr. Freeh's authority to initiate "clawback" actions and file reply papers in the Show Cause Proceedings.

A special master is a judicial officer subject to the control and supervision of a court. *See In re Gilbert*, 276 U.S. 6, 9 (1928) ("When respondent accepted appointment as master he assumed duties and obligations of a judicial officer."); *Cobell v. Norton*, 334 F.3d 1128, 1139 (D.C. Cir. 2003) ("[A]fter his elevation to Special Master-Monitor status, Kieffer was serving as a judicial officer."); *Morgan v. Kerrigan*, 530 F.2d 401, 426 (1st Cir. 1976) ("[M]asters . . . are subject to the control of the court. . . ."); *Bridgeport Guardians v. Delmonte*, No. 5:78-cv-175, 2007 WL 108472, at *1 (D. Conn. Jan. 10, 2007) ("'[I]t is primarily up to the district court to control the master. . . .'") (citations omitted). It is well established that, as a judicial officer, a special master cannot act as a party or an advocate. For example, in *People Who Care v. Rockford Bd. of Educ.*, the special master "did party-like things like seeking and resisting discovery." 111 F.3d 528, 540 (7th Cir. 1997). The Seventh Circuit explained that because a special master "is an ad hoc judicial officer, his occupying the status of a party or 'litigator' . . .

11

may certainly be questioned." *Id.* The court further made clear that "[s]hould any appealable order be issued after a hearing in which the special master participated in an irregular manner, the appellant if he was prejudiced by the irregularity can ask us to reverse on that basis." *Id.* at 541. In *Cobell v. Norton*, a special master was appointed as an "internal investigator" to monitor and review the defendants' "trust reform activities." 334 F.3d 1128, 1141 (D.C. Cir. 2003). But "instead of resolving disputes brought to him by the parties," the special master "became something like a party himself." *Id.* at 1142. The D.C. Circuit held that the special master's appointment went "far beyond the practice that has grown up under Rule 53" in that the special master "was charged with an investigative, quasi-inquisitorial, quasi-prosecutorial role that is unknown to our adversarial legal system." *Id.*

The expanded authority granted to Mr. Freeh in this case give him a similarly unconventional role and impermissibly allow him to act as a party and an advocate. On the one hand, when it benefits him, Mr. Freeh has invoked the protections afforded to a "judicial officer." In opposing Andry's motion for discovery about potential conflicts, Mr. Freeh argued that that "[o]ral examination of a judicial or quasi-judicial officer as to matters within the scope of his adjudicative duties should be permitted only upon a strong showing of bad faith or improper behavior." Rec. Doc. 11720 at 5-6.[4]

On the other hand, in an effort to shield his investigative record from scrutiny, Mr. Freeh has improperly acted like a special prosecutor or civil litigant by filing responses to the Show Cause Parties' motions. Mr. Freeh's filing of responses is a quintessential "party-like thing[]." *People Who Care*, 111 F.3d at 540. But as the Fifth Circuit explained in *Ruiz v. Estelle*, because a special master "is the court's agent," he "should perform his duties objectively" and "not" like

---

[4] Additionally, when Mr. Freeh introduced himself to Lerner at the start of his transcribed interview, he stated: "Mr. Lerner, I'm working as a special master, which is an appointment by the Court, so I'm functioning as a quasi-judicial officer." Ex. E (Excerpt of Sworn Statement of G. Lerner, July 31, 2013).

12

an "advocate." 679 F.2d 1115, 1161-62 (5th Cir. 1982). Moreover, Mr. Freeh's public comment on Andry's motion for discovery relating to potential conflicts of interest was wholly improper. *See Ligon v. City of New York*, Case No. 13-3088, Order at 2-3 (2nd Cir. Oct. 31, 2013) (remanding case, in part, because "a series of media interviews and public statements purporting to respond to criticism of the District Court" created "the appearance of impartiality surrounding this litigation"), attached hereto as Ex. F.

To ensure that Mr. Freeh acts within the permissible scope of Rule 53, the Court must amend the Order in two respects. *First*, the Court should remove Mr. Freeh's authority to "file a reply to any response, objections or motions" filed by the Show Cause Parties and others with respect to his Report. Rec. Doc. 11288 at 4. When a party objects to a magistrate's report and recommendations to a judge, the magistrate does not have an opportunity to file a reply or make a comment to the media. The same should hold true for Mr. Freeh.[5]

*Second*, the Court should strike from the Order Mr. Freeh's power to "initiate legal action to 'clawback' the payment of any fraudulent claims." Rec. Doc. 11288 at 3. Initiating a lawsuit is quintessentially the province of a party, not a neutral judicial official. *See Ligon*, Case No. 13-3088, Order at 2 n.1 (remanding case, in part, because District Court's statements suggesting that she would accept filing of a new suit compromised the "appearance of impartiality"). Indeed, we have found no precedent that authorizes a Rule 53 special master to initiate litigation.[6] The

---

[5] While there may be instances in which Mr. Freeh has to provide *facts* so that the Court can decide an issue before it, he should not be granted license, as he has thus far taken, to make *argument* or take *positions* against a Show Cause Party.

[6] It is not clear from the Order if Mr. Freeh would bring a "clawback" action as counsel to the CAO or BP, or if he would bring the action in his own name. Whatever the case, it is difficult to understand how he would have standing to bring such a claim. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("[A] party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'") (citations omitted); *Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("[A] litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interest of third parties.").

13

y
z

Court, therefore, should amend the Order to remove the Special Master's power to initiate "clawback" actions.

### III. THE COURT SHOULD LIMIT THE SCOPE OF THE SPECIAL MASTER'S POWER TO INVESTIGATE AND DENY "SUSPICIOUS" CLAIMS.

Mr. Freeh is exercising his power to investigate "suspicious" claims with respect to AndryLerner clients that, in effect, has made him the equivalent of the CAO as to such claims. No AndryLerner claim has been found to be fraudulent or improper. Indeed, the CAO's re-review found all of the AndryLerner claims, both paid and pending, to be "in order." Ex. A at 2-3. Yet, Mr. Freeh has tagged *each and every* Andry Lerner claim as "suspicious" and held up processing of the firm's clients' claims. This embargo is causing harm to the AndryLerner clients who have already been harmed by the Deepwater Horizon accident and who deserve to be treated fairly and expeditiously. Moreover, the failure to make these payments is imperiling the operations of AndryLerner and the firm's capacity to represent its clients. The Court by its Order surely did not intend to harm claimants or the employees and vendors of AndryLerner, but that is precisely the effect it is having. The Order must be amended to clarify Mr. Freeh's powers to investigate "suspicious" claims and to provide AndryLerner some financial relief, so that it can continue to provide representation to its clients and operate the law firm.

Rule 53(b)(2)(A) provides in relevant part that an order appointing a special master "must state . . . the master's duties, including any investigation or enforcement duties, and any limits on the master's authority under Rule 53(c)." It "requires precise designation of the master's duties and authority" as well as "[c]lear identification of any investigating or enforcement duties." Fed. R. Civ. P. 53 advisory committee notes (2003). Clear identification is important because the order appointing a special master is the "source and the limit of the master's duties and powers," *United States v. Clifford Matley Family Trust*, 354 F.3d 1154, 1159 (9th Cir. 2004), and courts

do not adopt those aspects of a special master's findings or recommendations that exceed the scope of his authority. *See Datapoint Corp. v. Microsystems Corp.,* 31 F. App'x 685, 695 (Fed. Cir. 2002) (affirming the district court's holding that the special master's "findings are adopted by the court in their entirety, with the exception of what may be characterized as any suggestion of lack of infringement – an issue beyond the scope of the references and of the authority of the Special Master or magistrate judge"); *Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 328 F. Supp. 2d 865 (N.D. Ill. 2004) (reversing the decision of the special master because he exceeded his authority). In addition, Rule 53(b)(2)(D) requires that the order appointing a special master specify the "time limits" within which the master is to perform his assigned tasks.

Here, the Order does not in any way define Mr. Freeh's power to investigate "suspicious" claims. It does not address the criteria that Mr. Freeh is to apply in determining whether a claim is "suspicious," require him to apply those criteria equally to all claimants in an objective manner, or address the procedures that he is to follow in reviewing a "suspicious" claim. Nor does the Order set any time limits on Mr. Freeh's investigation of "suspicious" claims, requiring only that he conduct his investigation in a "manner which does not delay or impede the payment of legitimate claims." Rec. Doc. 11288 at 3. The Order also does not address how such suspicion is to be resolved.

In the absence of any parameters on his power to investigate "suspicious" claims, Mr. Freeh has attempted to exercise authority that he does not have and cannot be given. Mr. Freeh has advised counsel for Andry that he intends to investigate each and every one of the nearly 500 AndryLerner claims pending before the CAO. Not every AndryLerner client claim can be "suspicious," especially when the CAO's re-review demonstrated to the contrary. Moreover, Mr. Freeh has refused to disclose his criteria for identifying a "suspicious" claim and

15

has made unreasonable and burdensome demands on AndryLerner as pre-condition to authorizing the commencement of processing and payment of AndryLerner client claims. *See* Exs. C & D. These demands are in direct contravention of the Court's mandate that Mr. Freeh's investigation "not delay or impede the payment of legitimate claims." Rec. Doc. 11288 at 3. It is simply unfair to the many AndryLerner clients who have done nothing wrong that their claims have been held up based on the non-transparent, indiscriminate determinations of Mr. Freeh.

As required by Rule 53, the Court must restrict the scope of Mr. Freeh's powers to "examine and investigate" claims "which are deemed suspicious." *Id.* The Court should amend the Order (i) to require either the Court or the Special Master to define what criteria give rise to a "suspicious" claim; (ii) to require the Special Master to apply those criteria in a fair, objective manner and not to single out claims filed by AndryLerner clients; (iii) to require the Special Master to conclude, except for good cause shown, his review of any "suspicious" claim within 30 days; (iv) in the event the Special Master deems any claim "suspicious," require him to submit a report, and the evidence supporting the report, to CAO. A copy of the report should be provided to counsel for the claimant, who shall be given an opportunity to be heard and to submit evidence to rebut the report; and, (v) the CAO shall investigate the claim at issue, based on information provided by the Special Master and the claimant and any other information deemed relevant, and make a determination as to whether the claim is eligible for payment.

The Court also should fashion an order that allows AndryLerner to service its clients, pay its bills, and function without any money being paid to either Lerner or Andry. The procedures to be employed would be the same procedure that is employed in a Chapter 11 case where lenders have an interest in the debtor's cash but it is in the best interest of all to keep the entity

functioning while the other issues in the case are going through the normal adversarial process. The suggested order would provide the following:

1. AndryLerner would provide to the Court or its designee an approved operating budget. The budget would allow AndryLerner's fees to be used to pay the expenditures set forth in the budget. The order would, however, prohibit any distribution from AndryLerner to Andry or Lerner pending further order of the Court; and

2. AndryLerner would provide on a monthly basis a report showing its expenditures during the prior month and a copy of bank statements and checks to insure that no payments were received by Andry or Lerner pending further order of the Court.

## IV. CONCLUSION

For the foregoing reasons, Andry, Lerner and AndryLerner respectfully request that the Court grant this Motion.

Respectfully submitted,

/s/ Pauline F. Hardin
Pauline F. Hardin (La. Bar #6542)
James E. Wright, III (La. Bar #13700)
Virginia W. Gundlach (La. Bar #18493)
Jones Walker LLP
201 St. Charles Avenue
49th Floor
New Orleans, LA 70170
Telephone: (504) 582-8110
Fax: (504) 589-8110
phardin@joneswalker.com
jwright@joneswalker.com
ggundlach@joneswalker.com

AND

William W. Taylor, III (D.C. Bar #84194)
Amit P. Mehta (D.C. Bar #467231)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036-5802
Telephone: (202) 778-1865
Facsimile: (202) 822-8106
wtaylor@zuckerman.com
amehta@zuckerman.com

*Attorneys for Glen J. Lerner*

/s/Lewis O. Unglesby
Lewis O. Unglesby (#12498)
Lance C. Unglesby (#29690)
Unglesby Law Firm
246 Napoleon Avenue
Baton Rouge, LA 70802
Telephone: (225) 387-0120
Facsimile: (225) 336-4355

*Attorney for Jon Andry*

/s/Douglas S. Draper
Douglas S. Draper (La. Bar #5073)
Heller, Draper, Patrick & Horn, LLC
650 Poydras Street, Suite 2500
New Orleans, LA 70130
Telephone: (504) 299-3333
Fax: (504) 299-3399
ddraper@hellerdraper.com

*Attorney for AndryLerner, LLC*

18

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Memorandum has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 8 day of November, 2013.

/s/ *Pauline F. Hardin*
Pauline F. Hardin (La. Bar #6542)