UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re:   Oil Spill by the Oil Rig "Deepwater          MDL No. 2179
         Horizon" in the Gulf of Mexico, on
         April 20, 2010
                                                      SECTION: J
                                                      JUDGE BARBIER
                                                      MAGISTRATE JUDGE SHUSHAN

### DECLARATION OF MICHAEL ALLEN SCOTT, CPA, CFF

1. My name is Michael Allen Scott and I previously submitted a Declaration in this case on November 4, 2013, which is respectfully incorporated by reference herein.

2. I have reviewed each of the declarations of Wendy Bloom, Hal Sider and Brian Gaspardo (Declarants) submitted in this matter and state as follows:

3. During the months of October and November 2011, actual financial data from potential claimants was provided by the PSC for purposes of analyzing and testing various concepts being discussed by both Parties. As I recall, there was no one particular purpose for the exercise. In fact both sides tested data, reconciled results and were using these results to negotiate other items including EBITDA v Variable Profit, fixed and variable expenses, and the number of months to be included in the claim calculations, to name a few. This was not to be a limitation of but rather a facilitation of discussion points in deriving the agreed upon methodology for loss calculations.

4. As part of the production of financial data referenced above, BP representatives were provided actual business test case P&Ls which were used to apply aspects of the negotiated BEL methodology, including a Step -1 calculation. Along with the P&Ls, an industry designation or identification was included for approximately 75 of the 80 or so test cases. Also, on many of the test case P&Ls the basis of accounting used was identified (e.g. cash or accrual). Tax returns were not provided in these test cases because the returns are not used directly in the calculation of the monthly variable profit, but instead are used as a method for corroborating the yearly totals of contemporaneously prepared P&Ls.

5. The Declarants assert that "BP lacked the necessary information to determine whether the claimant data "properly matched revenues and expenses" and that accordingly, the calculations "performed as part of the exercise did not require or involve accuracy of the P&Ls or consideration of whether expenses and revenue were recorded in the appropriate months."

6. In order to perform a Step-1 BEL calculation, monthly revenues and variable expenses have to be compared over periods of time to arrive at a Step-1 result. Any calculation of variable profits would utilize some type of Excel or other accounting formatted spreadsheet for data input of revenues and expenses. Depending on the spreadsheet format, monthly revenues, expenses and variable profits could be analyzed side by side over periods of time. I am certain that BP's representatives, including Mr. Sider, would have utilized such spreadsheets in order to perform a Step 1 BEL calculation.

7. If not clear from analyzing the actual test case profit and loss statements themselves, it would have most certainly been clear to BP representatives from their own calculation spreadsheets that the matching triggers or thresholds (including monthly revenue spikes, negative variable profits, and/or wide variations in monthly variable profit), which BP now asserts necessitates the matching of revenues and expenses, were present in some of the test cases.

8. In essence, BP was provided with more than enough information to be able to calculate a claim for any of the test cases provided and had the opportunity to study and/or observe any monthly trends/triggers, including those now promulgated by BP, from this voluminous sample of potential claimants. Yet, there were no discussions by anyone regarding the reporting of revenue or the "matching of revenue and expenses."

9. Mr. Gaspardo states in paragraph 7 of his declaration that *"Mr. Scott, proposed that the test for whether a given expense qualified as a variable expense would be whether the expense changed as revenue changed – in other words, whether the expense varied with revenue."* Mr. Gaspardo also states he *"understood this definition of variable expense as a clear recognition by the PSC and its accounting advisors that a variable expense must inherently be tied to the revenue generated by that expense."*

10. Mr. Gaspardo has asserted *his* understanding of a variable expense in his Declaration. However, in the context of this discussion, I proposed a test for discussion purposes to aid in the determination of expenses being classified as fixed or variable during a brainstorming session attended by both Parties. The concept being that some expenses occur regardless of whether or not revenue is generated each month, while other expenses are driven by revenue. I did not state in this discussion or any other, that a variable expense must be tied to the revenue generated by that expense. My suggestion was merely mentioned for brainstorming purposes in the course of negotiations, but this idea was not pursued. **Instead,** the Parties agreed to Exhibit 4D of the Settlement Agreement (Attachment A – Fixed and Variable Cost) to determine whether an expense should be treated as fixed or variable. Furthermore, there are expenses included in Exhibit 4D that are not, by nature, tied to revenue generation. For example, Drug Testing and Repairs (excluding Maintenance) are expenses agreed upon by both Parties to be treated as variable expenses, but neither is driven by revenue.

11. Mr. Gaspardo further states in paragraph 8 of his declaration that *"[r]epresentatives of both parties also stated that they recognized that monthly financial statements from claimants would often be unreliable and that to ensure statements were relevant and reliable the Claims Administrator would be required to review the statements submitted by claimants, request additional documentation, and make adjustments."*

12. To my knowledge, I nor anyone I had discussions with stated that monthly financial statements from claimants would "often" be "unreliable" and the only adjustments discussed in the meetings I attended were those having to do with the classification of fixed vs. variable expenses within a month and other minor categorical issues. I certainly do not recall making any statement that the Claims Administrator would be "required" to make adjustments. In fact, I cannot find in the Settlement Agreement where it states that the Claims Administrator is "required" to make adjustments. Furthermore, there is no language in the Settlement Agreement pertaining to any of Mr. Gaspardo's "relevant" or "reliable" financial statement criteria referenced above.

I declare under penalty of perjury that the foregoing is a true and correct statement of my analysis and opinions.

_____
Michael Allen Scott, CPA, CFF

Dated: November 12, 2013