UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deep Water Horizon" in the Gulf of Mexico, on April 20, 2010 | * | CIVIL NO: |
| | * | SECTION: "J" (1) |
| This Document Applies to: No 12-970, Bon Secour Fisheries, Inc., et al v. BP Exploration & Production, Inc., et al | * | JUDGE BARBIER |
| | * | MAGISTRATE SUSHMAN |

---

### JON ANDRY'S REQUEST FOR STATUS CONFERENCE TO ESTABLISH PROCEDURES FOR ADJUDICATION OF CHARGES

I. **INTRODUCTION**

This Court has ordered that Respondent Jon Andry ("Andry") and others respond to the 89-page Report of Special Master Louis J. Freeh ("Report"), filed on September 6, 2013, and show cause why the Court should not adopt the Special Master's findings and recommendations: There are foundational issues that must be resolved.  (a) The lack of admissibility of the Special Master Report; (b) the de novo standard for the hearing; (c) the limited future role of the Special Master at the hearing; and (d) the burden of proof.

The response has been extended to December.  The Court has yet to inform the parties about the procedures that will be employed to determine the actual facts.

This Request for Status Conference to Establish Procedures for Adjudication of Charges by Respondent Jon Andry ("Andry") respectfully requests that the Court promptly inform the parties about its determination concerning the procedures for adjudication of the serious allegations against Andry.  Presently, other than a briefing schedule, no procedures how this Court plans to handle this matter have been established for the hearing.  Andry proposes a comprehensive set of procedures that affords him the due process protections guaranteed by the

U.S. Constitution, federal rules, and federal case law in light of the serious charges threatening to practice law, livelihood, reputation, and financial security.

Respondent respectfully requests that the Court, as soon as possible, set a status conference to settle the procedures for adjudication of the charges.

The threshold issue is the proper use and admissibility of the Report and particularly his findings, conclusions, and recommendations. Long established precedent holds that the Report has no evidentiary value and is inadmissible as hearsay. Its only utility is to assist the Court in understanding and framing the issues for the evidentiary hearing. Thus, as the trier of fact, the Court must begin the evidentiary hearing with an open mind with no preconceived ideas about the validity of the charges. On this *tabula rasa* the evidence at the hearing must be written. Independently, the Report is inadmissible double hearsay under Rules 801 (c) and 802 of the Federal Rules of Evidence.

Unfortunately, this critical point has been lost on the media and public. Since Mr. Freeh issued his Report, stories about his "findings" or about Mr. Freeh mentioning the Report have been broadcast all over the internet and have been published in nearly every newspaper in the nation. Indeed, Mr. Freeh advertises his Report on his firm's website. What has been lost in all this feeding frenzy—and the damage done to Andry—is that Mr. Freeh's "findings" are not admissible at the next stage of the proceedings and are not entitled to deference.

**(a) The Lack of Admissibility of the Special Master Report**

On its face, the Report is classic inadmissible hearsay under Rules 801 (c) and 802 of the Federal Rules of Evidence because Mr. Freeh's commentary constitutes out-of-court statements "being offered in evidence to prove the truth of the matter asserted." Indeed, much of the Report is inadmissible hearsay within hearsay because it purports to quote interviews with witnesses,

and neither Mr. Freeh nor the witnesses are in court to be cross examined and have their credibility assessed by the Court. *See* Rule 805, Federal Rules of Evidence.

The primary reason for the Report's inadmissibility is the defective procedures employed in compiling the Report, including the lack of any hearings preceding the formulation of the findings and conclusions.[1] *See* Advisory Committee Note, Rule 803 (8); *In re September 11 Litigation,* 621 F. Supp.2d 131, 154 (S.D.N.Y. 2009) (The 9/11 Commission Report held inadmissible). Public hearings are essential because they can be "the adequate equivalent of cross-examination in protecting litigants' rights." *Id.* at 156 (citing *Franklin v. Skelly Oil Co.,* 141 F.2d 568, 572 (10th Cir. 1944). Thus, statements in the Report attributed to witnesses in interviews—whether by depositions or summaries—are *per se* excluded as untrustworthy even though they are recorded in a public record. *See In re September 11 Litigation,* 621 F. Supp.2d at 157. These statements are hearsay-within-hearsay, and no other hearsay exception applies. *Id.; see also United States v. Taylor, 462* F.2d 1023, 1026 (8th Cir. 2006); *Parsons v. Honeywell, Inc.,* 929 F.2d 901, 907 (2d Cir. 1991). Thus, like the exclusion of statements attributed to two terrorists in the 9/11 Report, *all* the witness statements in the Report here "cannot quality as factual findings of the [Special Master]." *In re September 11 Litigation,* 621 F. Supp.2d at 157.

The findings are fatally flawed because they lack any of the badges of reliability. Andry's counsel was not allowed to ask him any questions in the deposition, much less cross-examine or interview any of the other 80 witnesses. Documents cited in the report have not been produced to Andry, and the Special Master never held a hearing. None of these findings were "fully tested and could not adequately be rebutted," and Andry was not afforded "the time-tested search for truth by examination and cross-examination." *Id.* at 158. The discovery to date done

---

[1] The Special Master's conclusions and recommendations are independently inadmissible under Rules 106 and 806 of the Federal Rules of Evidence.

by Andry and others reflects major errors in the report. For example, compare the Mancuso Affidavit, Document 11666-1, with page 26 of the Report.

Accordingly, the Report must be excluded as inadmissible hearsay.

Additionally, much of what is contained is interpreted by the Special Master on credibility calls. For example, the Special Master has to ignore the explanations by Reitano, Sutton, Lerner and Andry to reach his conclusions. He then substitutes the testimony and witness interviews with his interpretation of telephone records which are at best nothing more than circumstantial.

### (b) The *De Novo* Standard for the Hearing

Rule 53 (f) (3) mandates that "[t]he court must decide de novo all objections to findings of fact made or recommended by a master" unless the parties stipulate otherwise. *See, e.g., In re: Vioxx Prods. Liab. Litig.,* 501 F.Supp.2d 789, 813 (E.D. La. 2007). The same is true of the Special Master's conclusions of law. *See* Rule 53 (f) (4), Federal Rules of Civil Procedure. A *de novo* review means a clean slate independent of the Special Master's take on the evidence. As the Ninth Circuit has held:

> "The district court properly analyzed the [special master's] findings and objections *de novo.* The district court gave each of Sukumar's claimed discrepancies *a fresh look. See United States v. Silverman,* 861 F.2d 571, 576 (9th Cir.1988) ("Under the *de novo* standard of review, we do not defer to the ... ruling but *freely consider the matter anew, as if no decision had been rendered.*"). The district judge independently considered all of the evidence that the special master considered, including over 270 pages of exhibits and 25 pages of objections. We hold the district judge performed the necessary *de novo* review."

*Sukumar .v Direct Focus, Inc.* 349 Fed. Appx. 163, 165-66 (9th Cir. 2009).

A *de novo* evidentiary hearing, rather than a mere review of the record compiled by the Special Master, is especially warranted where, as here, the Special Master never made a record

4

based on an evidentiary hearing that allowed the parties to present and rebut evidence or comment on the proposed findings and conclusions. *See Commissariat á L'Energie Atomique v. Samsung Electronics Co.,* 345 F.R.D. 177, 179 (D. Del. 2007). The lack of evidentiary value of the Special Master's findings will prove especially pertinent in this case when the Court sees the seriously flawed procedures followed by the Special Master in violation of Rule 53 and basic due process principles. Not surprisingly, his *ad hoc* aberrational process—which is grounds alone to exonerate Andry under Rule 53 (f) (5)—led to his one-sided presentation of the facts that omits significant exculpatory evidence, misstates the evidence, and offers the most extreme, adverse interpretation possible. Mr. Freeh's report reads more like a BP opinion than a measured, objective evaluation of all the evidence. (Note: That on page 14, Freeh discusses interviews with BP attorneys, but nowhere does he cite them by name or reference what was said.)

Special Masters are judicial officers who are bound by the Constitution and the Federal Rules of Civil Procedure. *See In re Gilbert,* 276 U.S. 6, 9 (1928) ("When respondent accepted appointment as master he assumed duties and obligations of a judicial officer"); *People Who Care v. Rockford Bd. of Educ.,* 111 F.3d 528, 541 (7th Cir. 1997) (describing the special master as "ad hoc judicial officer"). This necessarily mandates strict observance of fundamental requirement of due process such as notice and a meaningful opportunity to be heard.

> "There is no greater objective in . . . any judicial proceeding [including those conducted by a special master] than to achieve fundamental fairness. *Plavin v. Sec'y of Health and Human Servs.,* 40 Fed.Cl. 609, 622 (1998) (The rules promulgated for use by the special masters 'are governed by principles of fundamental fairness.'); *See also Campbell,* 69 Fed. Cl. at 778, n. 3 (citing *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)) (stating that due process requires the opportunity to be heard 'at a meaningful time and in a meaningful manner.'); *Doty v. United States,* 53 F.3d 1244, 1251

5

> (Fed.Cir.1995)_('When procedural violations committed by the agency are egregiously removed from fairness, this constitutes an abuse of the agency's administrative discretion.')."

*Richardson v. Secretary of Health and Human Services,* 89 Fed. Cl. 657, 661 (Court of Fed. Claims 2009)

The proper procedure for a Rule 53 Special Master is demonstrated by the process used in *Turner v. Murphy Oil USA, Inc.*, 582 F.Supp.2d 797 (E.D. La. 2008) (Fallon J.)  There the Court appointed a Special Master to recommend the allocation of class action attorneys' fees. The attorneys filed affidavits and challenge affidavits, served written discovery on each other, depositions of each applicant were allowed and attended by the Special Master or his counsel, the Special Master prepared a Preliminary Report with his recommended attorneys' fees allocation, the attorneys were allowed to file objections with the Special Master, the Special Master held an evidentiary hearing on the objections, and a Final Report was submitted to the Court.

*Not a single one of these steps was followed by Mr. Freeh in this case.* The Special Master radically departed from the required procedures under Rule 53 that are designed to promote fairness.  He conducted a unilateral "investigation," took interviews which he has secreted, limited the participation of counsel for the parties or the witness, did not afford access to the evidence which purportedly supports his findings, did not issue proposed findings for comment by the parties, and did not hold an evidentiary hearing.  This unorthodox approach to his duties is a *per se* violation of due process and Rule 53 standards and nullifies all of his findings.  As the Fifth Circuit has held:

> "unless *based on hearings conducted on the record after proper notice*, the reports, findings, and conclusions of the special master are not to be accorded any presumption of correctness and the "clearly erroneous" rule will not apply to them."  *See Ruiz v.*

> *Estelle,* 679 F.2d 1115, 1162-63, *amended in part, vacated in part,* 688 F.2d 266 (5th Cir. 1982).

### (c) The limited future role of the Special Master in Relation to Andry

The advocate cannot be the Special Master who is a judicial officer under Rule 53 with the limited role of gathering the facts, making his findings, and submitting his recommendations to the Court. *See In re: Gilbert, supra*; *People Who Care v. Rockford Bd. of Educ., supra.* Mr. Freeh cannot serve in a dual capacity as a judicial officer and advocate. Allowing the Special Master to be the adversary promoting the correctness of his report violates Rule 53. This reasoning dictates that Freeh's role in this proceeding as it relates to Andry is finished and he should not be allowed to file a response to any of Andry's or the other Show Cause Parties filings because he would be serving the two roles of Judge and advocate.

First, it is settled that a special master is neutral whose mandate is "resolving disputes brought to him by the parties" who cannot "become something like a party himself." *Cobell v. Norton,* 334 F.3d 1128, 1142 (D.C. 2003). Nor can a special master behave like a litigant or advocate. *See People Who Care,* 111 F.3d at 540-41 (questioning the propriety of a special master who participated [in a hearing] with the aid of a lawyer and did party-like things seeking and resisting discovery")". Notwithstanding this clear prohibition against a special master advocating a position in a dispute, Mr. Freeh has filed oppositions to discovery of his files and depositions of himself and others. Somehow claims office personnel critical to certain fact findings are off limits to the affected parties, even through their counsel. Undersigned believes Freeh has full access to all these people.

Indeed, Mr. Freeh has so abandoned his mandated role of neutrality as to issue a press release criticizing Andry for seeking discovery concerning Mr. Freeh's possible conflicts of interest. *See* Associated Press, "BP Oil Spill Settlement Probe Target Lashes Out at Special

7

Investigator" (Oct. 17, 2013), available at http://www.nola.com/news/gulf-oil-spill/index.ssf/2013/10/bp_oil_spill_settlement_probe.html. Since when does a judicial officer's staff member state on behalf of his boss: "Mr. Jon Andry's lawyers' belated and rambling motion to recuse the Special Master is without merit in law and fact." While the recusal issue may have been too late for relief, the questions raised and answers are completely appropriate under the Rules of Evidence in evaluating the credibility and accuracy of any Freeh Group witness at a trial *de novo*. Federal Rules of Evidence 607.

Mr. Freeh has a glaring financial conflict of interest in seeking to have his proposed findings adopted by this Court. He has now assumed the role of serving as a prosecutor and money collector ferreting out "suspicious claims" without any standard of proof. Apparently the Freeh Group has unrestricted authority to redo the work of the claims office. A member of Mr. Freeh's staff—a partner at his law firm—has appointed himself the BP claims "Inspector General" who is making extraordinary demands as a condition to authorizing commencement of the processing and payment of Andry Lerner clients claims[2], including requiring invasive interviews of all Andry Lerner referral attorneys and forensic accountants employed by the firm.

Mr. Freeh has a disqualifying conflict of interest because his massive expansion of his roles in this case generates significant legal fees for his law firm Pepper Hamilton LLP where he is the managing partner in its New York office. See http://www.pepperlaw.com/ourlawyers.aspx Among members of his staff are numerous attorneys and support staff from his law firm who are reportedly generating millions of dollars in legal fees per month. These amounts are discoverable and/or fair gain for credibility and bias issues just like any other witness or expert.

---

[2] None of these claims have been paid or processed since June 2013.

It is axiomatic that a prosecutor cannot have a pecuniary interest potentially compromising his independence. *See Young v. U.S. ex rel. Vuitton et Fils, S.A.,* 481 U.S. 787, 805 (1987) (private party cannot prosecute criminal contempt and seek fines for violating injunction). "A scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision . . . ." *Marshall v. Jerrico, Inc.,* 449 U.S. 238, 249-50 (1980). Clearly, not only can Mr. Freeh not serve simultaneously as a neutral judicial officer and prosecutor, he has an irreconcilable financial conflict of interest in seeking to expand his role in this case to serve as a money collector and revenue generator for BP and his law firm. Freeh's work in relationship to his special master report in relationship to Andry is over. He cannot be the lawyer validating the report. He cannot be engaged in an adversarial process. His work stands or falls on its accuracy based on the under pinning requirement of neutrality. Whoever wants to come forward and support the report may do so but it cannot be the court's employee.

This is a critical issue. If BP who benefits from the denial of the Andry Law Firm claim and any other clawback claims or denials of Andry Lerner claims wants to assert a status regarding facts alleged in the Freeh Report, they must come forward likewise the Plaintiffs Steering Committee. The Claims Administrative Office and the Freeh Group were selected and work for the Judge. They can't advocate to the Judge and remain neutral and transparent.

**(d) The Burden of Proof**

Freeh acts like this is a quasi-criminal proceeding. The ramifications of an adverse determination are significant because Freeh's mischaracterization of the facts and evidence unfairly accuses Jon in civil and criminal context. Freeh uses his "referral" as an excuse to deny basic civil discovery. The full constellation of due process rights must be afforded to Andry.

*See Beauchamp v. De Abadia*, 779 F.2d 773 (5th Cir. 1995) (medical license); *In re: Ruffalo,* 390 U.S. 544 (1966) (law license).  His right to participate in the BP settlement process—both in terms of receiving 50% of the Andry Law Firm's $7.9 million award and millions of dollars of earned and future legal fees—is in jeopardy. (*See Peter Kiewet Sons' Co. v. U.S. Army Corps of Engineers,* 534 F.Supp. 1139 (D.D.C. 1982), *rev'd on other grounds,* 714 F.2d 163 (D.C. 1983) (a government directive to hold all the awards to a contractor "in abeyance" due to concerns about the contractor's integrity, without providing notice and an opportunity to be heard, constituted *de facto* debarment and deprived the contractor of procedural due process."); <u>*Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)</u> (loss of employment requires due process hearing).

The standard for proving the charges must be "clear and convincing" evidence.  The Supreme Court has held the clear and convincing evidence standard applies in

> "civil cases *involving allegations of fraud or some other quasi-criminal wrongdoing* by the defendant. The interests at stake in those cases are deemed to be more substantial than mere loss of money and some jurisdictions accordingly reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof."

*Addington v. Texas*, 441 U.S. 418, 424 (1979) (emphasis added).

The charges here are akin to fraud to the extent the Special Master is alleging a fraud on the Court as evidenced by his unclean hands argument.  "'Proof of civil fraud in general requires clear and convincing evidence.' *Shephard v. ABC*, 62 F.3d 1469, 1477 (D.C. Cir. 1995). *Shephard* involved a district court sanctioning attorneys for altering a document produced in discovery. The appellate court reversed the sanctions because the district court failed to make a finding of misconduct by 'clear and convincing' evidence. *Id* at 1480.  "A finding of bad faith requires heightened certainty." *Id* at 1477.  Citing *Addison*, the court found that the clear and

10

convincing standard of proof is appropriate because the predicate misconduct involves allegations of fraud or some other quasi-criminal wrongdoing by a party. *Id* at 1477.

*Shephard* cites *Barr Rubber Products, Co v. Sun Rubber Co.* for the proposition that civil fraud requires proof by clear and convincing evidence. *Barr* holds that "there is ample authority of long standing that to substantiate charges of fraud or of undue influence, at least in actions seeking the recovery of monies paid or the rescission or cancellation of contracts, a litigant must present "clear and convincing proof."" 425 F.2d 1114, 1120 (2nd Cir. 1970).

In *Barr*, the district court found by a preponderance of evidence that perjured testimony took place and such testimony influenced the outcome of a patent infringement case. In other words, a fraud had been perpetrated on the tribunal. With regard to the standard of proof required, The *Barr* court found the following reasoning persuasive:

> "when a person is charged with all the elements which constitute a heinous crime, although it be only on a civil issue, it shocks the judicial mind to refuse to give him the benefit of the usual presumption of innocence unless the adverse proofs are so far satisfactory as to be convincing."

*Barr* at 1120. *Quoting Troeder v. Lorsh*, 150 Fed 710, 714 (1st Cir. 1906). The *Barr* appellate court reversed the finding that perjury had been committed in the civil case and remanded to the district court to use the clear and convincing standard of proof.

In the instant case, the same reasoning applies. The Special Master has recommended the sanction that Andry forfeit millions of dollars in compensation award and legal fees. Why? Mr. Freeh alleges that the unclean hands doctrine justifies this harsh punishment because it "'preserve[s] the judicial process from contamination'" and promotes public confidence in the administration of justice." Report at 88 (quoting *Olmstead v. United States,* 277 U.S. 438, 484 (1928) (Brandeis, J., dissenting); *see* Report at 88 (Unclean hands doctrine makes a court off

11

limits "to one tainted by inequitable conduct relative to the matter in which he seeks relief.") (Citation omitted).

The Special Master cites no Louisiana law on the "unclean hands doctrine" and counsel does not agree it is applicable.

In an Internal Revenue proceeding, proof of an illegal bribe, kickback or other payment to a government official requires the Commissioner to prove the charge by clear and convincing evidence. 26 C.F.R. Section 1.162-18. Typically, serious charges in civil cases like fraud require proof by clear and convincing evidence. *See, e.g, Vogel v. Warranty Home Service Corp.,* 695 F.2d 877 (5th Cir. 1983); La. Civil Code Art. 1957; *Summers v. Summers Bros. Inc.*, 385 So.2d 489 (1980). Indeed, if this standard is required in a patent invalidity case, surely it applies here where the stakes are much higher. *See Price v. Sysmek,* 988 F.2d 1187 (Fed. Cir. 1993).

Accordingly, not only is the Report inadmissible as double hearsay, no summaries of testimony or documents should be allowed. Nor are any of the witness depositions or statements admissible because they are hearsay and Andry had no opportunity to examine the witnesses. The Special Master also made findings that Andry did not comply with the Louisiana Rules of Professional Conduct with respect to the handling of the attorney referral fee and his duty of candor, and he recommends referral of this matter to the Louisiana State Bar for investigation and possible disciplinary action. Report at 85-6, 87.

Attorney misconduct must be proved by the standard of clear and convincing evidence to warrant discipline. For example, Rule 2 of United States District Court for the Eastern District of Louisiana Rules for Disciplinary Enforcement states that the court can impose interim discipline only by making a finding of misconduct by clear and convincing evidence. The same is true for the disciplinary proceedings in Louisiana. *See Louisiana State Bar Association v. Dowd,* 445

So.2d 723 (La.1984). The higher standard rests in large part on the concern that disbarment means deprivation of livelihood. *See, e.g.*, *In re Fisher*, 179 F.2d 361, 369-70 (7th Cir.).

## II.  CONCLUSION

Federal jurisprudence mandates that fundamental due process protections be afforded a citizen faced with any official action that potentially jeopardizes his ability to practice a profession, reputation, or economic interests. A citizen is entitled to notice of the specific charges, an effective opportunity to gather evidence, defend the charges at a trial, and a reasoned decision specifying the record evidence supporting any determination. *See generally Goldberg v. Kelly*, 397 U.S. 254 (1970). These protections apply to a wide range of governmental actions, including quasi-criminal and civil proceedings such as license revocation or impairment, debarment from participating in government programs, damage to reputation, loss of employment, and loss of economic benefits. It is uncontested that traditional notions of due process apply to proceedings involving a Special Master. *See Ruiz v. Isabelle,* 679 F.2d 1115, 1162-63, *amended in part, vacated in part,* 688 F.2d 266 (5th Cir. 1982).

"A procedural rule that may satisfy due process in one context may not necessarily satisfy procedural due process in every case. Thus, procedures adequate to determine a welfare claim may not suffice to try a felony charge. *Compare* Goldberg v. Kelly, 397 U.S., at 270-271, 90 S.Ct., at 1021-1022, *with* Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)." *Bell v. Burson,* 535, 540 (1971). No matter what, however, the hearing required by the Due Process Clause must be "meaningful," *Armstrong* v. *Manzo,* 380 U. S. 545, 542*542 552 (1965), and "appropriate to the nature of the case." *Mullane* v. *Central Hanover Bank & Trust Co., supra,* at 313. In a case involving seizure of property interests and interference with the

attorney/client relationship and stigmatization of reputation, the law grants to Andry the maximum procedural rights.

The current situation represents irresponsible assumptions based on non-existent or poorly understood facts resulting in a tragedy of accusation. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341 (1974) (The individual's right to the protection of his own good name from unwarranted government actions "reflects no more than our basic concept of the essential dignity and worth of every human being a concept at the root of any decent system of ordered liberty.") For Andry, it is not an exaggeration to state that as long as this charge stands it reduces his value as an attorney and citizen who has been given no due process.

The law entitles Jon to the guarantee of procedural fairness. The required proceeding is a bench trial. A summary adjudication without an evidentiary hearing is inadequate. Where the conduct of a lawyer in judicial proceedings and the appropriate sanctions are at issue, due process must be respected. *See Taylor v. Hayes,* 418 U.S. 488 (1974) (trial court violated trial lawyer's due process rights to notice of the specific charges and a hearing by convicting him of criminal contempt for obstreperous conduct during a trial, sentencing him to four and one-half years, and barring him from practicing in that court).
Summary dispositions invariably offend due process.

> "*Sacher* noted that '[s]ummary punishment always, and rightly, is regarded with disfavor . . . .' 343 U.S., at 8. *'[W]e have stated time and again that reasonable notice of a charge and an opportunity to be heard in defense before punishment is imposed are "basic in our system of jurisprudence."' Groppi v. Leslie,* 404 U.S. 496, 502 (1972), quoting *In re Oliver,* 333 U.S. 257, 273 (1948). Even where summary punishment for contempt is imposed during trial, 'the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocation.' *Groppi v. Leslie, supra,* at 504 (and cases cited therein)."

*Taylor v. Hayes,* 418 U.S. at 498 (footnote omitted; emphasis added).

> "The provision of fundamental due process protections for [Andry] accords with our historic notions of elementary fairness. While we have no desire 'to imprison the discretion of judges within rigid mechanical rules,' *Offut v. United States,* 348 U.S., at 15, we remain un-persuaded that "the additional time and expense possibly involved . . . will seriously handicap the effective functioning of the courts.' *Bloom v. Illinois, supra,* at 208-209. *Due process cannot be measured in minutes and hours or dollars and cents."*

*Taylor v. Hayes,* 418 U.S. at 500 (emphasis added).

Andry requests a status conference to resolve these fundamental issues:

1) What is to be the use of the Freeh Report?

2) The Rules for the *de novo* hearing.

3) Who can participate in the hearing and in what capacity?

4) The burden of proof and the procedure to establish who must meet that burden and how.

        Respectfully submitted,

        By Attorneys:

        /s/Lewis O. Unglesby
        LEWIS O. UNGLESBY (#12498)
        UNGLESBY LAW FIRM
        246 Napoleon Avenue
        Baton Rouge, LA 70802
        Telephone: (225) 387-0120
        Facsimile: (225) 336-4355

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Motion has been served on all counsel via email to all counsel of record and/or by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 12th day of November, 2013. I hereby certify that on November 12, 2013.

               By Attorneys:

               /s/Lewis O. Unglesby
               LEWIS O. UNGLESBY (#12498)
               UNGLESBY LAW FIRM
               246 Napoleon Avenue
               Baton Rouge, LA 70802
               Telephone: (225) 387-0120
               Facsimile: (225) 336-4355