UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>This Document Relates to:<br><br>No. 12-970 | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

### SUR-REPLY IN OPPOSITION TO BP's MOTION TO AMEND SCHEDULING ORDER AND INJUNCTION

(RE CAUSATION)

Eligible Claimants in the Court-Supervised Settlement Program and the Economic & Property Damages Settlement Class respectfully submit the following Sur-Reply in Opposition to BP's Motion to Amend Scheduling Order and Injunction relating to BEL Claims:

**MAY IT PLEASE THE COURT:**

BP continues to ignore not only the plain and express terms of the agreement it negotiated, executed and supported, but numerous filings, statements and representations by experts and counsel confirming that the Settlement Agreement was intended to be interpreted and applied in a way that is contrary to the as-yet-to-be-defined interpretation that BP's new counsel suggest today. BP continues to distort and misquote the Class Definition. BP does not in any way refute the fact that the 64 "examples" of incomplete, unverified, self-serving characterizations by BP's Counsel *satisfied* the objective Causation Test that BP agreed would be used to determine whether a business had suffered a loss "as a result of" the Spill. In addition to the numerous filings, statements and representations outlined in Plaintiffs' original Opposition, BP's newfound argument that there is some additional unknown, uncertain,

subjective causation element to the Class Definition contradicts additional BP pleadings, statements and representations regarding the ascertainability of the Class. Finally, BP submits its own evidence which (i) further confirms that BP knowingly continued to support formal approval of the Settlement as originally and consistently interpreted, and (ii) when read in context, further demonstrates that BP formally confessed and conceded this issue in December of 2012, if not before. For these reasons, and for the reasons stated in Plaintiffs' original Opposition, BP's Motion should be denied.

**BP Continues to Misquote and Distort the Class Definition**

Plaintiffs' Opposition did ***not*** assert that "BP takes 'the Class Definition out of context and in isolation.'"[1]

BP, rather, takes *one sentence* out of the Class Definition in isolation, ignoring the rest of the Class Definition.

The relevant portion of the Class Definition provides that:

> 1.3.1.   The following are *summaries* of the Damage Categories, which are *fully described* in the attached *Exhibits 1A-15*:
>
> > 1.3.1.2.   Economic Damage Category. Loss of income, earnings or profits Suffered by Natural Persons or Entities as a result of the *Deepwater Horizon* Incident.

BP asks the Court to look only at the "summary" contained within Section 1.3.1.2, and to completely disregard the incorporation of Exhibit 4B as the "full description" of *Class Members,* as stated in Section 1.3.1.

---

[1] *See* BP REPLY BRIEF [Doc 11838-2], at p.2.

BP's proffered interpretation also asks the Court to disregard the definition of "Economic Damage" in Section 38.55, as well as the further incorporation of Exhibit 4B in Sections 5.3.1, 5.3.2.1, and 5.3.2.3.

**BP's Current Position is Inconsistent with its Previous Position regarding Class Ascertainability**

In addition to the numerous filings, statements and representations outlined in Plaintiffs' original Opposition,[2] BP also made numerous statements in pleadings and other filings regarding the ascertainability of the Class. For example, BP's expert on class certification and settlement approval told the Court in August of 2012 that the Class Definition "clearly and *objectively* defines the class in terms of time period, geographic region, and *type* of claim."[3] BP also submitted the testimony of Professor Coffee, who told the Court in August of 2012 that the net result of the Class Definition is "a list of easily identifiable categories of individuals and entities *who are permitted to show objective losses from that disaster.*"[4] In the Joint Proposed Findings in Support of Final Approval of the Class Settlement submitted by BP on November 19, 2012, the Class Definition "is *objective,* precise, and detailed, and *does not turn on the merits*."[5] Further:

> **Nothing in the class definition requires a determination on the merits or delves into any person's subjective mental state.** The definition is based on *objective criteria* such as where a person resided, worked, received an offer to work, or owned property; or

---

[2] *See* DOC 11826, at pp.9-18.

[3] MILLER DECLARATION [Doc 7114-16], p.6, ¶13, (emphasis supplied).

[4] COFFEE DECLARATION [Doc 7110-3], p.13, ¶19, (emphasis supplied).

[5] JOINT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL [Doc 7945], at p.87, ¶321, (emphasis supplied).

> **where an entity owned, operated, or leased a physical facility,
> or employed full time workers.**[6]

Now, by contrast, BP argues that an Entity's class membership should be determined based on a subjective characterization by BP Counsel.

### BP Has Not Established that Any Entity Did Not Suffer A Loss Caused by the Spill

Congress, in passing OPA;[7] BP, in establishing and administering the GCCF;[8] and BP, in agreeing to the Class Definition and BEL Framework contained within the Settlement Agreement,[9] all recognized that *indirect* damages would be suffered in the wake of the many ripple effects from widespread losses throughout a region's economy.

BP has not "proven" that any Entity did not suffer a loss that did not, at least in part, indirectly, arise from the Spill.

All BP has presented are inadmissible, non-evidentiary, self-serving and incomplete characterizations of claims by a BP attorney.

### BP Does Not Refute the Fact that All of Its "Examples" Demonstrated Indicia of Causation by Satisfying the Objective Causation Test that BP Agreed Would Demonstrate Injury "As a Result of" the Spill

As set forth in Plaintiffs' original Opposition, the Settlement Agreement imposes a separate and distinct requirement on Entities seeking compensation to prove that they suffered a

---

[6] JOINT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL [Doc 7945], at p.87, ¶322, (emphasis supplied).

[7] *See, e.g.,* LETTER BRIEF TO U.S. FIFTH CIRCUIT (Oct. 18, 2013) [Doc 11728-6] at p.6 fn.16; *citing,* 33 U.S.C. ¶¶ 2702(a), 2702(b)(2)(E), 2705(a), and 2713; In re: Deepwater Horizon, 808 F.Supp.2d 943, 958-962, 965-966 (E.D.La. 2011), David W. Robertson, *The Oil Pollution Act's Provisions on Damages for Economic Loss,* 30 MISS.C.L.REV. 157, 158-160 (2011).

[8] *See, e.g.,* GCCF Maps [Doc 11804-7 thru -11], which show significant payments by the GCCF for economic losses to businesses throughout the class geography north of I-10.

[9] *See* SETTLEMENT AGREEMENT, Sections 1.1, 1.2, and 38.78, and Exhibit 22.

loss "as a result of" the Spill.[10] These objective financial and other tests require indicia of causation. In all 64 "examples" described by BP Counsel, the Entity *satisfied* these objective requirements that BP negotiated, agreed and represented to the Court would – in addition to satisfying Class Membership – determine causation.

**Article III Standing, Rule 23 and the Rules Enabling Act are Irrelevant to Contractual Interpretation**

BP expressly agreed that the Settlement Agreement and Trust would not be conditioned upon formal and final certification and approval under Rule 23.[11]

Nevertheless, and in any event, neither Rule 23, the Rules Enabling Act, nor Article III can be used to re-write the terms of a contractual agreement.

If, as BP suggests, the Settlement Agreement which BP entered into has some defect under Rule 23 or Article III, (which is denied [12]), then the effect would be that the settlement would not be approved as a class settlement, and BP would not get a class-wide release.

Contrary to BP's suggestion, the Rules Enabling Act, invoked by BP, would actually prevent Rule 23 from altering the substantive rights of the Parties.

---

[10] *See* DOC 11826, at pp.4-6; *see also,* pp.9, 11, 15-16.

[11] *See* HERMAN DECLARATION (Nov. 11, 2013) [Doc 11833-1], ¶¶ 5-7; *citing,* SETTLEMENT AGREEMENT, Section 4 (establishing the *Deepwater Horizon* Court Supervised Settlement Program, a Transition Program, and a Process for Making Claims); Section 5.12 (establishment of a Settlement Trust); Section 21.2 (severability clause); Section 21.3 (in the event that final approval is rejected, the Program and Trust will continue to process and pay submitted claims); Section 26.1 (regarding the binding effect of the Agreement on the Parties); and Exhibit 26 (Individual Release). *See also,* COMPLAINT, *BP v. Deepwater Horizon Court Supervised Settlement Program,* No.13-492 (March 15, 2013) ¶65 ("The Settlement Agreement is a valid contract meeting all required elements: offer, acceptance, and consideration").

[12] *See* LETTER TO THE U.S. FIFTH CIRCUIT IN NO.13-30095 (Oct. 18, 2013) [Doc 11728-6], pp.5-8; *see also,* OPPOSITION [Doc 11826], at pp.6-7. (*See also, generally,* APPELLEE BRIEF ON THE MERITS, U.S. Fifth Cir. No. 13-30095 [5th Cir. Doc 00512361333] (Sept. 3, 2013).)

## BP's Evidence Further Establishes that BP Supported Final Approval of the Class Settlement, as Correctly Interpreted and Applied

BP submits with its Reply Brief a Letter to Judge Shushan regarding the Supplemental Information Program ("SIP") dated December 7, 2012.[13] In this letter, BP contended – for the first time, and contrary to all of the previous filings, statements and representations outlined in Plaintiffs' original Opposition[14] – that there was some additional, subjective, non-specific causation requirement imposed by the Class Settlement Agreement.

This letter was shocking to Class Counsel, the Claims Administrator, and apparently to the Court, in light of BP's numerous previous statements, filings and representations to the contrary.

Therefore, when the Parties appeared before the Court on an unrelated matter five days later, the Court asked BP to clarify its position.

BP Counsel, at that point, abandoned the suggestions in its December 7th Letter, and re-confirmed to Class Counsel, to the Claims Administrator, and to the Court, that BP *agrees* "with the Claims Administrator's objective analysis of causation with respect to his evaluation of economic damage claims, as previously set forth by Mr. Juneau in paragraph 2 of his October 10, 2012 policy announcement,"[15] which stated as follows:

> **The Settlement Agreement represents the Parties' negotiated agreement on the criteria to be used in establishing causation. The Settlement Agreement sets out specific criteria that must be satisfied in order for a claimant to establish causation.** Once causation is established, the Settlement Agreement further provides specific formulae by which compensation is to be measured. All such matters are negotiated terms that are an integral part of the Settlement Agreement. **The**

---

[13] *See* DOC 11838-3.

[14] *See* DOC 11826, at pp.9-18.

[15] E-MAIL FROM JUDGE BARBIER RE "MEETING TODAY RE NON-PROFITS AND SIP" (Dec. 12, 2012) [Doc 8963-75] (filed into the record by BP on March 20, 2013).

> **Settlement Agreement does not contemplate that the Claims Administrator will undertake additional analysis of causation issues beyond those criteria that are specifically set out in the Settlement Agreement. Both Class Counsel and BP have in response to the Claims Administrator's inquiry confirmed that this is in fact a correct statement of their intent and of the terms of the Settlement Agreement.** The Claims Administrator will thus compensate eligible Business Economic Loss and Individual Economic Loss claimants for all losses payable under the terms of the Economic Loss frameworks in the Settlement Agreement, **without regard to whether such losses resulted or may have resulted from a cause other than the Deepwater Horizon oil spill provided such claimants have satisfied the specific causation requirements set out in the Settlement Agreement.**[16]

Not only does the December 7, 2012 letter, when considered together with BP's representations to the Court on December 12, 2012, conclusively establish that BP formally waived, admitted, confessed and conceded the issue, but it also shows that BP was aware of the definitive interpretation and application of the Agreement when it continued to support the approval of said Class Settlement through the date of the Court's Order and Judgment on December 21, 2012.[17]

---

[16] *See* DOC 8963-71 (filed into the record by BP on March 20, 2013), (emphasis supplied).

[17] *See* ORDER AND JUDGMENT [Doc 8139] (Dec. 21, 2012).

**Conclusion**

For the above and foregoing reasons, for the reasons stated in Class Counsel's *In Camera* Submission of October 9, 2013 [Doc 11728-1], for the reasons stated in Class Counsel's Letter Brief to the U.S. Fifth Circuit in Case No. 13-30095 [Doc 11728-6], and for the reasons stated in Plaintiffs' original Opposition [Doc 11826], the Court should find that: **(i)** the Economic & Property Damages Settlement Agreement satisfies the requirements of the General Maritime Law, Article III, the Rules Enabling Act, and Rule 23; **(ii)** the BEL Causation requirements in Exhibit 4B have been interpreted and applied correctly by the Claims Administrator; and **(iii)** BP is estopped from taking any position to the contrary.

This 14th day of November, 2013.

Respectfully submitted,

| | |
|---|---|
| /s/   Stephen J. Herman | /s/ James Parkerson Roy |
| **Stephen J. Herman**, La. Bar No. 23129 | **James Parkerson Roy**, La. Bar No.11511 |
| **HERMAN HERMAN & KATZ LLC** | **DOMENGEAUX WRIGHT ROY EDWARDS LLC** |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhklawfirm.com | E-Mail: jimr@wrightroy.com |
| *Co-Lead Class Counsel* | *Co-Lead Class Counsel* |

**ECONOMIC & PROPERTY DAMAGES CLASS COUNSEL**

| | |
|---|---|
| Brian H. Barr | Robin L. Greenwald |
| LEVIN, PAPANTONIO | WEITZ & LUXENBERG, PC |
| 316 South Baylen St., Suite 600 | 700 Broadway |
| Pensacola, FL 32502-5996 | New York, NY  10003 |
| Office:  (850) 435-7045 | Office:  (212) 558-5802 |
| Telefax: (850) 436-6187 | Telefax: (212) 344-5461 |
| E-Mail: bbarr@levinlaw.com | E-Mail:  rgreenwald@weitzlux.com |

Jeffrey A. Breit
BREIT, DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office:  (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail: rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office:  (334) 269-2343
Telefax: (334) 954-7555
E-Mail:  rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER, HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW & ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP

519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail:  ervin@colson.com

435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

### CERTIFICATE OF SERVICE

　　　　WE HEREBY CERTIFY that the above and foregoing Sur-Reply will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of November, 2013.

　　　　　　　　　　　　　　　　　　　　　　　　/s/  Stephen J. Herman and James Parkerson Roy