IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179  SECTION J |
| This document relates to:<br>All Cases and No. 12-970 | * * * * * | Honorable CARL J. BARBIER<br><br>Magistrate Judge SHUSHAN |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION TO AMEND SCHEDULING ORDER RE BEL REMAND AND
PRELIMINARY INJUNCTION RELATING TO BEL CLAIMS**

Class Counsel's Opposition rests on a fundamental mischaracterization of the Settlement Agreement, because it confuses the threshold requirement of class membership with the separate, subsequent requirements imposed by Exhibit 4B.  In the simplest terms, the Opposition puts the cart before the horse.  A claimant must satisfy the class definition first.  Only if the claimant is a member of the class does he pass "Go" to reach Exhibit 4B.  Indeed, Exhibit 4B says just that, for the caption to the Exhibit is footnoted, and the footnote explains that "[t]h[ese] Causation Requirements for Business Economic Claims do[] *not* apply to  . . . Entities, Individuals or Claims *not included with the Economic Class definition* . . . ."[1]  That is, one should not read beyond the caption of Exhibit 4B unless the claimant meets the class definition.  The Opposition fails to consider, much less explain, this footnote, which makes clear that Exhibit 4B is subject to the class definition, not vice versa.

It is no answer for Class Counsel to invoke "judicial estoppel."  The class definition's requirement that members have suffered injury "as a result of" the Oil Spill is a requirement that arises from Article III and Rule 23.  Unless class membership involves injury with a causal

---

[1]   Settlement Agreement Ex. 4B n.1, May 3, 2012, Doc. No. 6430-9 (emphasis added).

nexus to the Spill, the class would lack standing and could not be certified in the first instance (or continue as certified).  Because standing is a constitutional and Rule 23 requirement, it cannot be waived.  The doctrine of judicial estoppel is just a variant of the doctrine of wavier, and is also inapplicable.  In any event, BP has said repeatedly that class membership is the threshold test in the claims process, as has Class Counsel.  The BP statements cited in the Opposition relate to Exhibit 4B, not the class definition and class membership.  It is plaintiffs who should be estopped from now disputing, contrary to their statements in the preliminary approval hearing, that determining a claimant's membership in the class is Step One in the claims process.

### I. CLASS COUNSEL'S INTERPRETATION OF THE AGREEMENT DEFIES COMMON SENSE AND IMPERILS THE SETTLEMENT

Class Counsel's construction of the Agreement cannot be reconciled with the plain terms of the class definition, nor can it be squared with any reasonable understanding of the Settlement's purpose.  It is unsupportable and, ultimately, jeopardizes the entire Settlement.

The Opposition asserts that BP takes "the Class Definition out of context and in isolation." Opp. 3, Nov. 7, 2013, Doc. No. 11826 .  On the contrary, BP showed that reference to the class definition's causal nexus requirement is pervasive—from the text of the Agreement to the class notice to the settlement website to the claims form to the release.  BP Br. 5-6, Nov. 7, 2013, Doc. No. 11819-1.  To state the obvious, this settlement—the "*Deepwater Horizon* Economic and Property Damages Settlement"—was about resolving claims resulting from the *Deepwater Horizon* Oil Spill.  Do plaintiffs really mean to dispute that the goal of this Settlement was, as the class definition (and all these provisions) say, to compensate for losses suffered "as a result of" the Spill?[2]

---

[2] Settlement Agreement ¶ 1.3.1.2, May 3, 2012, Doc. No. 6430-1.

Even though the Settlement Agreement as a whole repeats again and again the class definition's causal nexus requirement, it would not matter if the class definition did stand alone, because for certain purposes (such as standing and the ascertainability of who is and is not a member) Rule 23 focuses solely on the definition. It is the class definition that "identifies the persons who are entitled to relief." *Singer v. AT&T Corp.*, 185 F.R.D. 681, 685 (S.D. Fla. 1998); *see also, e.g.*, *In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 (5th Cir. 2004) ("A precise class definition is necessary to identify properly those entitled to relief, those bound by the judgment, and those entitled to notice." (internal quotation marks omitted)).

Thus, the class definition cannot be disregarded here or in any case. And there can be no mistaking the bounds of the definition here. One is not a member of the class because one lived or operated a business in the Gulf region at the time of the Spill, or visited the region then. And one is not a member because one happened to suffer economic losses in the aftermath. One is only a member of the class if the residency and other requirements are met *and* such losses occurred "as a result of" the Spill. Meeting the definition for class membership is the ticket of admission to the claims process.

The Opposition contends that any loss must only be "allegedly" due to the Oil Spill, as if the question at hand were whether the complaint states a claim. Opp. 3. The question, however, is whether the Administrator as a matter of policy or practice has excised the causal-nexus requirement from the class definition. BP provided $76 million of examples for which there is objective evidence that the Spill had nothing to do with the losses.[3] Tellingly, the Opposition does not attempt to articulate a colorable allegation of causation for even one of the 64 examples. And the Opposition has nothing to say about the Claims Administrator's frank assessment that he

---

[3] *See* Decl. of Allison B. Rumsey App. A, Nov. 7, 2013, Doc. No. 11819-2; BP Br. 12-13 & nn. 25-28.

3

has paid claims "for losses that a reasonable observer might conclude *were not in any way related to* the Oil Spill."[4]  In short, there is no dispute that many claimants now swept within the definition under the Administrator's interpretation are "without colorable legal claims."[5]

In any event, demonstrating Article III standing in the class context requires more than "alleg[ing] . . . a loss caused by the Spill." Opp. 6.  If all that a court were obligated to do was locate an assertion of causation in the class action complaint, class representatives could propose any class definition—no matter how many persons with wholly unrelated losses were then included in the class.  As the cases cited by BP explain, BP Br. 11—cases that go unaddressed in the Opposition—the class definition must set bounds that ensure the requirements of standing are met.  If "the definition is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad." *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009).  Here the class definition properly limited the class to those with losses incurred "as a result of" the Oil Spill.  The Claims Administrator cannot as a matter of policy or practice rewrite that definition to jettison the causal-nexus requirement and award claimants with no standing.

In the end, adopting Class Counsel's position imperils the Settlement.  If claimants who have not suffered losses resulting from the Oil Spill are systematically allowed to recover as if

---

[4]  Brief of Appellees Deepwater Horizon Court Supervised Settlement Program at 16, *In re Deepwater Horizon*, Nos. 13-30315 & 13-30329 (5th Cir. May 24, 2013) (emphasis added).

[5]  *In re Deepwater Horizon*, No. 13-30315, slip op. at 33 (Clement, J.) ("BEL Opinion"); *see also id.* at 25-28 ("[I]f a claimant has suffered a loss, but it has no colorable claim that the loss was caused by the spill, it lacks standing and cannot state a claim. . . .  Allowing recovery from the settlement fund by those who have no case and cannot state a claim, the court acts *ultra vires*.") (Clement, J.).

4

they were members of the class, the Agreement cannot stand under Rule 23 or Article III.[6] It is difficult to understand why the validity of the Court-approved class settlement should be put in jeopardy to allow claimants with no damages from the Spill to receive windfall recoveries. Why is the PSC risking the recovery of proper class members to protect those without legitimate claims who are outside the class? Enforcing the plain meaning of the class definition not only eliminates that risk, but stops baseless and inexplicable awards like the $76 million of examples described in BP's Brief and the Rumsey Declaration.

## II.     EXHIBIT 4B IS *SUBJECT TO* THE CLASS DEFINITION

The Opposition argues, in effect, that the class definition is subject to Exhibit 4B—in other words, that a claimant satisfies the class definition if he "satisfie[s] the objective Causation Requirements BP agreed to in Exhibit 4B." Opp. 6. This construction reads the class definition out of the Settlement Agreement, however, telling the Administrator that he has no reason or occasion to refer to or apply the class definition, but to go to straight to Exhibits 4A, 4B, and 4C.

Rule 23 is clear that class membership is its own, threshold requirement. In the words of Class Counsel, at the preliminary approval hearing: "I think sort of ***the general principles of the settlement is that one needs to determine if they've got class membership. Then*** they need to look at each of the damage categories . . . to determine if they have a claim in one or more of those categories."[7] And the Settlement Agreement itself is clear that class membership is the gateway through which any prospective claimant must pass ***before*** Exhibits 4B and 4C come into

---

[6] Class Counsel apparently recognize this risk, posturing that this class-wide deal could be transformed into a private "contractual agreement" between the BP and "participating class members." Opp. 1. But the classwide release is a material term of the agreement, and the agreement therefore would fail without it.

[7] Tr. of Hr'g on the Mots. for Conditional Certification of Rule 23(b)(3) Classes for Settlement Purposes at 20, Apr. 25, 2012, Doc. No. 6395 (emphasis added) ("Preliminary Approval Tr.").

play at all.  Exhibit 4B itself states that class membership is a prerequisite to the 4B calculation.  Footnote 1, which is appended to the Exhibit's caption, specifies:  "Th[ese] Causation Requirements for Business Economic Claims do[] *not* apply to . . . Entities, Individuals or Claims *not included with the Economic Class definition* . . . ."[8]  The Opposition fails to take any account of footnote 1.  It points to Section 5.3.2.3, which provides that "causation requirements" for "Business Economic Loss Claimants" are "set forth in Exhibit 4B."  Opp. 3.  Indeed so, but Exhibit 4B by its terms requires that the claimant first satisfy the class definition.  Thus, one literally does not read beyond the heading of Exhibit 4B unless class membership is established.  That a stranger to the class can mathematically satisfy Exhibit 4B criteria does not make him a member of the class.

Any other interpretation would effectively write footnote 1 out of the Agreement.  The rules of contractual construction, however, forbid reducing contractual language to surplusage.  *See Transco Exploration Co. v. Pac. Emp'rs Ins. Co.*, 869 F.2d 862, 864 n.3 (5th Cir. 1989) (court must, "where possible, construe the words so as to harmonize all while rendering none superfluous")

### III.   BP DID NOT AND COULD NOT WAIVE THE REQUIREMENT OF CLASS MEMBERSHIP

BP did not waive the requirement that claimants must be a member of the class of individuals whose losses occurred as a result of the Oil Spill.  Class Counsel's selective quotation of prior BP statements again conflates class membership with causation under Exhibit 4B.  Regardless, even if Class Counsel's claims were correct, it would be immaterial because BP cannot waive the requirements of Article III standing or compliance with Rule 23.

---

[8]   Settlement Agreement Ex. 4B n.1, May 3, 2012, Doc. No. 6430-9 (emphasis added).

Based on what BP has said in the past—statements which the Opposition claims are inconsistent with what BP says now—the Opposition argues that BP is judicially estopped from taking the position that the Administrator has redefined class membership. As we explain below, BP has not been inconsistent. In any event, what BP said or did not say before is irrelevant, because the causal-nexus issue goes to the Court's Article III jurisdiction and the Settlement's compliance with Rule 23. Even if the high bar of judicial estoppel was met, BP is not subject to estoppel, because Article III standing cannot be waived by a party. *See, e.g.*, *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 n.6 (5th Cir. 2002) ("[B]ecause 'standing is a jurisdictional requirement, [it] may always be addressed for the first time on appeal.'") (quoting *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001)); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("principles of estoppel do not apply" to questions of federal court subject-matter jurisdiction (citation omitted)). Similarly, the Court has an independent duty to evaluate compliance with Rule 23; those requirements, too, cannot be waived. *See, e.g.*, *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998); *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003).

BP has not been inconsistent, however. It has never conceded that a claimant may bypass the requirements of class membership to obtain compensation. Indeed, it has appealed awards under the Settlement on the ground that they lacked any apparent causal nexus to the Spill and that the claimants therefore were not class members. The Opposition points to BP's prior statements concerning Exhibit 4B but has not identified any contradictory BP statements about the threshold determination of class membership. About class membership, Class Counsel too has said that establishing a claimant's membership in the class is a threshold requirement:

- In arguing for preliminary approval, Class Counsel affirmed that "***the general principle[] of the settlement is that one needs to determine if they've got class***

*membership. Then* they need to look at each of the damage categories . . . to determine if they have a claim in one or more of those categories."[9]

This statement means that, if estoppel applies at all, it is **Class Counsel** that should be estopped to deny the centrality and independent nature of the test for class membership. BP's statements were entirely consistent with Class Counsel's own understanding:

- During the Final Fairness Hearing, BP again said—without contradiction—that the Settlement Agreement did not extend to individuals with no injury from the spill, but rather is "designed to fairly and generously compensate the *legitimate claims of those who were injured as a result of the oil spill*."[10]

- On December 7, 2012, before this Court issued its Order Granting Final Approval of the Settlement Agreement, BP objected to proposed advertising, which solicited claimants with no nexus to the Oil Spill. BP stated that the proposed ads were "contrary to Rule 23[] and at odds with the terms of the Settlement Agreement" because they invited individuals with no connection to the Oil Spill to make claims.[11] BP distinguished statements in prior advertising, which "reference a causal connection to the spill" from the new spots which impermissibly "omit any reference to the Class itself and fail to mention that the Settlement Agreement requires a connection to the spill."[12]

- Before Final Approval of the Settlement Agreement, BP began to challenge claims that did not have a causal link to the Oil Spill through the CSSP appeals process.[13]

Thus, Class Counsel fails to show that BP has taken an inconsistent position, let alone met the high bar of judicial estoppel, which requires *inter alia* that there have been "clearly inconsistent positions." *In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547, 552 (5th Cir. 2011).

---

[9]  Preliminary Approval Tr. at 20 (emphasis added).

[10] Tr. of Final Fairness Hr'g at 50, Nov. 8, 2012, Doc. No. 7892 (emphasis added).

[11] Letter from R. Godfrey to Hon. S. Shushan at 1, Dec. 7, 2012 (attached as Exhibit A).

[12] *Id.* at 3-4.

[13] *See, e.g.*, BP's Initial Proposal for Claim No. XXX38 at 1 (Dec. 3, 2012) ("BP reluctantly files this appeal because it appears that the Settlement Program erred by including in its assessment of causation and damages millions of dollars of earnings from two business lines that Claimant had dropped years before the spill.") (attached as Exhibit B, Decl. of Allison B. Rumsey, Attachment 1 (under seal)).

At worst, if the failure to distinguish between class membership and Exhibit 4B were found to be an "inconsistent" position, it is not a situation where BP allegedly took one position before final approval of the Settlement Agreement and a different position afterward; rather, the allegedly inconsistent position is one that **both** parties expressed **before** approval of the Settlement. And the Court was not misled, as it expressly found in granting final approval to the settlement that "persons with marginal or potentially worthless claims . . . were excluded from the proposed class."[14]

## CONCLUSION

For these reasons and those stated in BP's opening memorandum, the Motion to Amend should be granted. The Court should adopt what is not only the most reasonable interpretation of the Agreement, but also the only interpretation that avoids needlessly imperiling this Settlement.

November 12, 2013

James J. Neath
Mark Holstein
BP AMERICA INC.
501 Westlake Park Boulevard
Houston, TX 77079
Telephone: (281) 366-2000
Telefax: (312) 862-2200

Respectfully submitted,

　　/s/ Kevin M. Downey
Kevin M. Downey
F. Lane Heard, III
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Telefax: (202) 434-5029

---

[14] Order and Reasons Granting Final Approval of the Economic and Property Damages Settlement Agreement at 33, Dec. 21, 2012, Doc. No. 8138.

| | |
|---|---|
| Daniel A. Cantor<br>Andrew T. Karron<br>ARNOLD & PORTER LLP<br>555 Twelfth Street, NW<br>Washington, DC 20004<br>Telephone:  (202) 942-5000<br>Telefax:  (202) 942-5999<br><br>Robert C. "Mike" Brock<br>COVINGTON & BURLING LLP<br>1201 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>Telephone:  (202) 662-5985<br>Telefax:  (202) 662-6291<br><br>Jeffrey Lennard<br>Keith Moskowitz<br>DENTONS US LLP<br>233 South Wacker Drive<br>Suite 7800<br>Chicago, IL  60606<br>Telephone:  (312) 876-8000<br>Telefax:  (312) 876-7934<br><br>***OF COUNSEL*** | */s/ Don K. Haycraft*<br>S. Gene Fendler (Bar #05510)<br>Don K. Haycraft (Bar #14361)<br>R. Keith Jarrett (Bar #16984)<br>LISKOW & LEWIS<br>701 Poydras Street, Suite 5000<br>New Orleans, Louisiana 70139<br>Telephone:  (504) 581-7979<br>Telefax:  (504) 556-4108<br><br>Richard C. Godfrey, P.C.<br>J. Andrew Langan, P.C.<br>David J. Zott, P.C.<br>Jeffrey J. Zeiger<br>Wendy L. Bloom<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle Street<br>Chicago, IL 60654<br>Telephone:  (312) 862-2000<br>Telefax:  (312) 862-2200<br><br>Jeffrey Bossert Clark<br>Steven A. Myers<br>KIRKLAND & ELLIS LLP<br>655 Fifteenth Street, N.W.<br>Washington, D.C. 20005<br>Telephone:  (202) 879-5000<br>Telefax:  (202) 879-5200 |

***ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.***
***AND BP AMERICA PRODUCTION COMPANY***

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 12th day of November, 2013.

                                                               /s/ Don K. Haycraft
                                                              Don K. Haycraft