# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | * | **MDL NO. 2179** |
| "Deepwater Horizon" in the | * | |
| Gulf of Mexico, on April 20, 2010 | * | **SECTION: J** |
| | * | |
| This filing applies to: | * | |
| | * | **HONORABLE CARL J. BARBIER** |
| *Plaisance, et al v. BP,* No.12-968 | * | |
| | * | **MAGISTRATE JUDGE SHUSHAN** |
| *Bon Secour, et al v. BP,* No.12-970 | * | |
| | * | |
| | * | |

## SUBMISSION BY CLASS COUNSEL ON REMAND OF MEDICAL SETTLEMENT

### (with Incorporated Motion to Strike, Motion to Dismiss, and Motion for Sanctions)

In response to the Order of the U.S. Fifth Circuit Court of Appeals in No. 13-30221 dated September 30, 2013,[1] and the Court's Minute Entry of November 5, 2013,[2] the Medical Benefits Settlement Class respectfully submits the following memorandum high-lighting the evidence which calls into question the standing of the objectors and the authority of their counsel to assert their purported "objections" to the settlement at the District Court level as well as the arguments advanced by counsel on appeal.  Moreover, the conduct of the objectors and their counsel raise significant issues under Rule 11, Rule 30(d)(2), Federal Rule of Appellate Procedure 38, 28 U.S.C. §1927, and Professional Rules of Conduct 1.2, 3.3 and 3.4, with respect to the depositions that were conducted on remand as well as filings in, and representations to, both the District Court and the Court of Appeals, with respect to both the Economic & Property Damages Class Settlement and the Medical Benefits Class Settlement.[3]  As outlined further herein, the Court

---

[1] U.S. Fifth Cir. Doc. 00512391335.
[2] Rec. Doc. 11786.
[3] Plaintiffs respectfully amend, supplement, and fully incorporate the MOTION FOR SANCTIONS (with supporting Memorandum and Exhibits) against Joseph Darrell Palmer, Mike Sturdivant, Patricia Sturdivant, Susan Forsyth, and James Kirby IV, on October 9, 2013. [REC. DOC. 11623] (*See also,* HERMAN E-MAIL TO PALMER & FRANK, Nov. 5, 2013.)  (Apparently, Mr. Palmer has not even informed his clients that they are the subject of a sanctions motion in this Court. *See, e.g.,* KIRBY DEPO. TR. at 33:24-34:18.)

should strongly consider striking the Objections, dismissing the Appeal,[4] and imposing other sanctions on the Objectors-Appellants and their Counsel as the Court may deem just and appropriate.

**MAY IT PLEASE THE COURT:**

In summary, the Medical Benefits Class challenges the standing of Ms. Forsyth, Mr. & Mrs. Sturdivant, and Kirby IV, on the following bases:

- Objectors-Appellants clearly did not establish class membership prior to the deadline imposed by the Court in its Preliminary Approval Order;

- The supplemental evidence submitted by Objectors-Appellants following their appeal is so riddled with misrepresentations and inconsistencies as to call into question the credibility and reliability of purported class membership, even at this time;

- Objectors-Appellants purport to object to elements or effects of the settlement that do not, cannot and/or could not apply to them;

- The standing of these Objectors-Appellants is further called into question to the extent that they have filed, and are perfecting, Medical Settlement Program Claims, because they *want* the settlement benefits that they are objecting to;

- At the same time, and on the other hand, the standing of these Objectors-Appellants is called into question to the extent that they do not have any present intention to pursue any claims for relief against BP in the event that their appeal is "successful";

  > Indeed, none of these Objectors-Appellants filed any lawsuit, claim in the Transocean Limitation, or even any claim with the GCCF or BP, within the three-year limitations period, (or even prior to August 23, 2013, the original GCCF deadline), and therefore arguably might only have rights against BP by virtue of the very Settlements to which they object;  and,

- Counsel for the Objectors-Appellants have advanced "objections" to elements of the Settlements to which the Objectors-Appellants themselves do not object.

For these reasons, and for the reasons outlined further herein, the Court should find on remand that Objectors-Appellants lack standing to proceed with the present appeal.

---

[4] Objectors-Appellants filed a single Notice of Appeal on both the Medical Benefits and Economic Class Settlement Approval Orders. [Rec. Doc. 8271]  The appeal was severed by the Court of Appeals, with the economic component consolidated into Fifth Circuit No. 13-30095, and the medical into Fifth Circuit No. 13-30221.

**Background**

In the Medical Preliminary Approval Order, the Court directed each Objector to submit "written evidence establishing that the individual is a Medical Benefits Settlement Class Member" by August 31, 2012. [REC. DOC. 6419, at 25.[5]]  While the Objections filed by Mr. Palmer on behalf of the Sturdivants, Forsyth and Kirby IV superficially established residence in Medical "Zone A", they did not establish the additional requirements that said Objectors either (a) were Clean-Up Workers, or (b) developed specified symptoms within 72 hours of exposure.[6]

During the fairness hearing, the Court specifically inquired about Objectors' standing, and Mr. Palmer represented that his clients had already made claims in the Medical Settlement Class.[7]

When it turned out that the Palmer Objectors were the only individuals appealing the Final Approval of the Medical Benefits Settlement Class, undersigned counsel looked more closely at the standing issue, and filed a Motion to Dismiss with the Court of Appeals.[8]  In response, Mr. Palmer submitted purported Medical Benefits Claims Forms which he represented to the Court of Appeals had been submitted.[9]  The Objectors-Appellants also submitted Declarations attesting, under oath, to the authenticity and the submission of these purported

---

[5] *See also,* FINAL APPROVAL ORDER AND REASONS [Rec. Doc. 8217], at 5 (the Preliminary Approval Order required "that each objection include written evidence establishing that the individual was a Class Member" and "explained that Class Members who failed to comply with these requirements 'shall waive and forfeit any and all rights he or she may have to object'").

[6] *Compare* OBJECTIONS TO MEDICAL SETTLEMENT [Rec. Doc. 124 in No.10-7777], at p.2 and Exhibits A-D; *with* MEDICAL BENEFITS SETTLEMENT AGREEMENT [Rec. Doc. 6273-1] Section I(A) (Class Definition), Section II(QQQQ) (Specified Physical Condition), and EXHIBIT 8 [Rec. Doc. 6273-10, at pp.6-9] (requiring manifestation of specified conditions within 24, 48 or 72 hours).  [*Note* – As it turns out, even the facially deficient allegations in the Objections were inaccurate, as Mr. Kirby did <u>not</u> actually reside at the Fairway Avenue address, and Ms. Forsyth was <u>not</u> physically present on her Miramar Beach property continuously from 20 June – 20 August, 2010, (as set forth more fully *infra*).]

[7] *See* TRANSCRIPT (Nov. 8, 2012), p.227 [REC. DOC 11623-4 (Ex. C to Motion for Sanctions)].

[8] U.S. Fifth Cir. Doc. 00512334990  [REC. DOC. 11623-3 (Ex. B to Motion for Sanctions)].

[9] *See* OPPOSITION TO MOT TO DISMISS [Fifth Cir. Doc. 00512351532], at pp.7-8.

Claims Forms[10] – one of which was undated,[11] one of which was unsigned and undated,[12] and two of which were dated August 13, 2013.[13]

Recognizing that Claims Forms dated August 2013 could not have been filed at the time of the Fairness Hearing, in November of 2012, Class Counsel asked the Medical Benefits Settlement Administrator whether these Objectors-Appellants had ever filed claims, and Mr. Garretson confirmed that they had not.[14]

It was only then that Mr. Palmer admitted that his representations both to the District Court in November of 2012 and to the Court of Appeals in August of 2013 were untrue.[15]

Meanwhile, and in recognition of Mr. Palmer's long history of ill-founded and vexatious litigation tactics, this Court imposed an appeal bond, finding, as a matter of fact, that Mr. Palmer and his clients had acted in bad faith. [REC. DOC. 11174.]

On September 30, 2013, the Court of Appeals remanded Objectors' appeal for a determination on standing.[16]

In an attempt to supplement, amend or otherwise create a record of class membership, Mr. Palmer noticed his own clients' depositions for October 28-29, 2013. These depositions:

- Confirmed numerous factual contradictions, questions and inconsistencies between and among the original Objections filed in the District Court, the first set of purported Claims Forms submitted to the Court of Appeals in August 2013, and the second set of Claims Forms submitted to the Court of Appeals in September of 2013, as well as new evidence elicited by Mr. Palmer during the depositions;

---

[10] *See* Exhibits 1, 3, 5, 7 to OPPOSITION TO MOT TO DISMISS [Fifth Cir. Doc. 00512351532, at pp.18, 47, 73 and 99].
[11] *See* Exhibit 6 to OPPOSITION TO MOT TO DISMISS [Fifth Cir. Doc. 00512351532, at p.97].
[12] *See* Exhibit 8 to OPPOSITION TO MOT TO DISMISS [Fifth Cir. Doc. 00512351532, at p.122].
[13] *See* Exhibits 2, 4 to OPPOSITION TO MOT TO DISMISS [Fifth Cir. Doc. 00512351532, at pp.45,71].
[14] *See* GARRETSON DECLARATION (Aug. 18, 2013) [REC. DOC 11623-5 (Ex. D to Motion for Sanctions)].
[15] *See* PALMER DECLARATION (Sept. 10, 2013) [REC. DOC. 11623-2 (Ex. A to Motion for Sanctions)] [Fifth Cir. Doc. 00512371179], at ¶¶ 2, 3.
[16] U.S. Fifth Cir. Doc. 00512391335.

- Were frustrated by improper speaking objections and instructions not to answer, even after Mr. Palmer and his clients were ordered to answer Class Counsel's questions by Judge Shushan;

- Confirmed that the Sturdivants, Ms. Forsyth, and Mr. Kirby's father, who objected to and appealed the Economic & Property Damages Class Settlement, made misrepresentations regarding their (alleged) property damage claims;  and,

- Established that Counsel for Objectors-Appellants had advanced numerous arguments and objections, in both the Medical Benefits Class Settlement action and the Economic & Property Damages Class Settlement action, which were unknown to the Objectors, unauthorized by the Objectors, could not have affected the Objectors, and/or lacked factual basis.

*See generally,* Depositions of James Kirby IV, Susan Forsyth, Patricia Sturdivant and Mike Sturdivant.[17]

## Objectors Failed to Timely Establish Class Membership In Conformity with the Court's Orders

It is axiomatic that to object to a class settlement, one must be a member of the class. *Union Asset Mgmt. Holding A.G. v. Dell*, 669 F.3d 632, 638 (5th Cir. 2012); MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.643 at 326 (2004).   In *Devlin v. Scardelletti*, 536 U.S. 1 (2002), the Supreme Court made clear that the disaffected class member must properly raise objections in the district court. *Id.* at 8-9.   *Devlin* further makes clear that the right to appeal is not unbounded; as the Court explained, an objector "will only be allowed to appeal that aspect of the District Court's order that affects him." *Id.* at 9.

The Medical Class definition requires that a class member be either (a) a Clean-Up Worker, or (b) a resident of a defined coastal or low-lying zone for at least 60 consecutive days, and to have manifested a Specified Physical Condition within 72 hours of exposure.  Pursuant to

---

[17] The Objectors-Appellants also expressly denied, under oath, during the depositions, that their objections and appeal were lodged for the purpose of leveraging a potential "pay off" from either BP or Class Counsel. *See* KIRBY DEPO. TR. at pp.110-111; P. STURDIVANT DEPO. TR. at p.43. (*See also, See* KIRBY DEPO. TR. at pp.75-78 (instructed not to answer).)

this Court's order, Objectors were required to submit written evidence establishing class membership by August 31, 2012. [REC. DOC. 6419, at 25.]  The "written evidence" submitted by Objectors as of August 31, 2012 failed to establish that they were class members.

Mike and Patricia Sturdivant alleged that they lived in Medical Zone A during the class period, but failed to show that they suffered a Specified Physical Condition within 72 hours of exposure.  Susan Forsyth alleged that she lived in Zone A, but also failed to allege that she suffered a Specified Physical Condition within 72 hours. (Indeed, the Claim Form she submitted to the Court of Appeals attested that she did *not* suffer a physical condition within 72 hours,[18] and her deposition testimony establishes that she did *not* reside within Zone A for 60 days.[19]) James Kirby IV alleged that he lived in Medical Zone A and worked for the Coast Guard. But he did not allege or show that he was a Clean-Up Worker. Nor did he allege or show that he suffered a Specified Physical Condition.  (And, as discovery would reveal, the representations regarding his residency were incorrect.[20])

Because Objectors failed to comply with this Court's order and submit written evidence demonstrating that they were class members, their objections were improper and, thus, they do not constitute class members with a right to appeal under *Devlin* and its progeny. *See, e.g., In re Flonase Antitrust Lit.,* 291 F.R.D. 93, 99 (E.D.Pa. 2013) (striking objections to class action settlement because they did not contain proof that the objectors were members of the class);[21] *see also, In re Integra Realty Resources, Inc.*, 354 F.3d 1246, 1257-58 (10th Cir. 2004) (finding objector had not made proper objection and had no right to appeal where district court required

---

[18] *See* FORSYTH DEPO. TR. at p.35; FORSYTH CLAIM FORM (Sept. 7, 2013), p.9 [Fifth Cir. Doc. 00512371183, at 10].

[19] *See* FORSYTH DEPO. TR. at pp.11, 28, 55.

[20] *See* KIRBY DEPO. TR. at pp.68-69.

[21] Apparently, Mr. Palmer attempted to object to this settlement too, but his objection was filed past the deadline, and rejected as untimely. *In re Flonase,* 291 F.R.D. at 100 n.4.  Similarly, Mr. Palmer's objections were stricken in *City of Greenville v. Syngenta* for failure to comply with the filing requirements established by the District Court. *See* MEMORANDUM AND ORDER, No.10-188, Rec. Doc. 320 (S.D.Ill. Sept. 13, 2012).

all putative objectors to submit written evidence prior to fairness hearing but objector failed to do so); *Rosen v. Ingersoll-Rand Co.*, 372 Ill.App.3d 440, 446-47, 865 N.E.2d 451 (2007) (holding that objectors had not properly objected where they failed to comply with trial court's requirement that objectors "make a minimal showing that they are members of the class"); *see also In re UnitedHealth Group, Inc. Shareholder Derivative Litig.*, 631 F.3d 913, 917 (8th Cir. 2011) (explaining that an unnamed class member "must file a timely objection *pursuant to district court procedure*, or else he loses any right he would have otherwise had to appeal a settlement agreement" (emphasis added)); *In re Plastics Additives Antitrust Litig.*, No. 08-3358, 2009 WL 405522, at *1 (3d Cir. Feb. 19, 2009) ("For an unnamed class member to have standing to appeal a decision in a class action, he or she must have properly raised objections to that decision during the pendency of litigation").

## Factual Misrepresentations regarding Medical Class Membership

The length and location of one's residency are two key factors in determining membership in the Medical Class.  At the time that he filed his objection, the basis of James Kirby IV's class membership was not clearly stated.  He represented that he resided on Fairway Avenue in Ft. Walton Beach, Florida, "at all relevant times herein and was physically present." [No. 10-7777, REC. DOC. 124 at p.2.]  Kirby conceded during his deposition, however, that he never lived at this residence during the spill response. [KIRBY DEPO. TR. at 68:9-69:14.]

Susan Forsyth represented that she resided in Medical Zone A from June 20, 2010 through August 20, 2010.[22]  In the Court of Appeals, she represented that she lived in Zone A from June 20, 2010 through August 19, 2010.[23]  This is significant because the Class Definition requires claimants to have lived in Medical Zone A "on each of at least **sixty days** between April

---

[22] No. 10-7777, REC. DOC. 124 at 2, 5.
[23] Fifth Cir. Doc. 00512371183, at p.6.

20, 2010, and September 30, 2010."[24]  In her deposition, however, Ms. Forsyth testified that she actually stayed in Florida only thru <u>August 18th</u>.[25]

**<u>Factual Misrepresentations Regarding Economic & Property Damages Class Membership</u>**

In their Objections to the Economic & Property Damages Settlement, the Objectors-Appellants described themselves as real property owners who "suffered damage to that real property when oil and/or dispersants from the Spill landed on the property." [No. 10-7777, REC. DOC. 123, at 27.][26]  They identified their respective residences, and raised specific objections relating to Coastal Real Property Damage Claims.  [*Id.* at 8, 11-12.]

Similarly, Objectors-Appellants represented to the Court of Appeals that: "Class members Mike and Patricia Sturdivant, Susan Forsyth, and James H. Kirby III each owned Florida shore property during the relevant time period and suffered damage to that real property when oil and/or dispersants from the spill landed on the property."[27]

It became clear during the depositions, however, that at least three of the Objector-Appellants had no factual basis to support the fact that oil and/or dispersants actually touched their properties, or that their properties actually fell within the eligible Coastal Real Property Zone.  Both Sturdivants admitted that their property was not on the water. [P. STURDIVANT DEPO. TR. at 30:6 – 31:3; M. STURDIVANT DEPO. TR. at 28:16-17.[28]]  Ms. Forsyth's property was "a couple hundred yards" from the water; "across the street". [FORSYTH DEPO. TR. at 22:13 – 23:2.] When asked whether his father's Fairway Avenue property was on the water, Kirby IV answered "No." [KIRBY DEPO. TR. at 68:9-16 ("It depends what you refer to as actually on the water").]

---

[24] MEDICAL BENEFITS SETTLEMENT AGREEMENT, Section I(A).
[25] FORSYTH DEPO. TR. at pp.11, 28, 55.
[26] James Kirby IV is not an objector to the Economic & Property Damages Settlement.  Rather, his father, James Kirby III, objects to that settlement.
[27] *See* APPEAL BRIEF in No.13-30095 [DOC. 00512306888], at 9.
[28] Mr. Sturdivant hypothesizes that, although his property is not on the water, oil touched it "through the air." *See* KIRBY DEPO. TR. at 28:9-19.

Nor did they know, nor were they aware of any efforts to find out, whether their properties were actually within the eligible Coastal Real Property Zone. [*See* M. STURDIVANT DEPO. TR. at 28:20-24; P. STURDIVANT DEPO. TR. at 32:12-20; *see also,* FORSYTH DEPO. TR. at 57:11 – 58:3 (invoking privilege and professing not to remember the details).]

Since the depositions, the Settlement Program has confirmed that none of the four Objectors-Appellants to the Economic & Property Damages Settlement's properties fall within the eligible Coastal Zone.[29]  (Nor have any of the five Objectors-Appellants to both Settlements ever filed claims with the GCCF nor the Court-Supervised Settlement Program.[30])

**Standing (and Factual) Issues regarding Objection-Appeal Arguments relating to the GCCF**

Counsel for Objectors-Appellants have asserted baseless arguments in both the District Court and the Court of Appeals with respect to both the Medical and Economic Settlements which are not only factually inaccurate, but which the Objectors-Appellants themselves could not possibly have standing to make.

In particular, Mr. Palmer and Mr. Frank have asserted:

- On Page 6 of the Medical Appeal Brief [Doc 00512305170, at 22], that "the GCCF paid compensation to class members arising out of personal injury claims."

- On Page 43 of the Medical Appeal Brief [Doc 00512305170, at 59], that "the GCCF had served as an [sic] functioning voluntary settlement program for over a year."

- On Pages 6, 44-45 and 51 of their Objections [No.10-7777, Rec. Doc. 123, at 12, 50-51, 57], that Class Members would have received the same benefits under the GCCF.

- At Pages 30-33 of their Economic Appeal Brief [Doc 00512306888, at 48-51], allege "intra-class conflict regarding termination of the GCCF."

---

[29]  *See generally,* MOTION TO DISMISS APPEAL, No.13-30095 (Oct. 31, 2013) [Doc 00512426049]; *including,* DECLARATION OF LYNN GREER (Oct. 31, 2013) [Doc 00512426050], ¶6.
[30]  *See* DECLARATION OF LYNN GREER (Oct. 31, 2013) [Doc 00512426050], ¶5.

- At Footnote 10 on Page 31 of their Economic Appeal Brief [Doc 00512306888, at 49], that: "The GCCF entitled individuals and businesses to lump-sum 'Quick Payments' of $5,000 and $25,000 respectively without extensive documentation requirements."

- At Pages 32-33 of their Economic Appeal Brief [Doc 00512306888, at 50-51], that: "Class members could submit claims according to their own schedule rather than being compelled to submit claims under a regimented deadline…. Under the GCCF, claimants could obtain 'interim payments' from the GCCF once per quarter *without* signing any release…. After final approval of the settlement, however, seafood compensation claimants had only 30 days to make claims. Other claims have to file within a year and everyone is required to sign a full release. Class Members are deprived of the GCCF's temporal flexibility."

- At Page 34 of their Economic Appeal Brief [Doc 00512306888, at 52], refer to the GCCF as "governmentally overseen."

- At Page 2 of their Economic Appeal Reply Brief [Doc 00512381409, at 10], that "BP set up a $20 billion fund through the GCCF" and that "BP had approximately an unspent $13 billion committed to the GCCF." (Similarly, at Page 33 of the Appeal Brief [Doc 00512306888, at 51], that "the eradication of the GCCF – with $13 million [sic] of its $20 million endowment remaining – is a benefit to BP more than to the class.")

- At Page 3 of their Letter Brief to the Fifth Circuit in the Economic Appeal [Doc 00512405473], that class members are "worse off" under the Economic & Property Damages Settlement than under the GCCF.

First and foremost, these arguments are completely baseless, and made without any standing (or even, apparently, without any authority) when applied to these five specific Objectors-Appellants, who never filed any claim in the GCCF.[31]

As noted, the Supreme Court has indicated that an unnamed class member "will only be allowed to appeal that aspect of the District Court's order that affects him." *Devlin,* 536 U.S. at 9. In *Allapath Services, Inc. v. Exxon Corp.*, the district court for the Southern District of Florida

---

[31] *See* DECLARATION OF LYNN GREER (Oct. 31, 2013) [Doc 00512426050], ¶5; *see also,* KIRBY IV DEPO. TR. at 32:11-13; KIRBY III DECLARATION (Nov. 5, 2013), ¶9 [Fifth Cir. Doc. 00512438725, at 20]; M. STURDIVANT DECLARATION (Nov. 6, 2013), ¶10 [Fifth Cir. Doc. 00512438725, at 28]; P. STURDIVANT DECLARATION (Nov. 6, 2013), ¶8 [Fifth Cir. Doc. 00512438725, at 36]; FORSYTH DECLARATION (Nov. 7, 2013), ¶7 [Fifth Cir. Doc. 00512438725, at 42].

held that *Devlin* limited an unnamed class members' appellate rights to only those issues that, in fact, could detrimentally affect them. *Allapath*, No. 91-0986-CIV, 2006 WL 1132371, at *17 & n.13 (S.D. Fla. Apr. 7, 2006).  The court in *Allapath* relied on Eleventh Circuit case law denying class objectors the right to appeal where they were not seeking "to protect their own property, their own allotment from an award or settlement or any other cognizable legal right or interest." *Id.* at *17 n.13 (quoting and applying *AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1311 (11th Cir. 2004)).  Taken together, these authorities suggest that Objectors-Appellants have no standing to contest aspects of these settlements that do not affect them.

Even assuming *arguendo* that any of Objectors-Appellants' purported objections or arguments were valid, (which is denied, as discussed more fully *infra*), how can these individuals complain that they were adversely affected by BP's discontinuation of the GCCF?

Even had one or more of these Objectors-Appellants filed claims in the GCCF, they could not have obtained any relief, as the GCCF did **not** recognize or pay either Coastal Real Property Damage or Medical Settlement Benefits exposure-injury type claims.  There is absolutely nothing in the Economic Settlement record to contradict the fact that the Class Settlement was an objective *improvement* over the GCCF in this regard.[32]  And there is absolutely nothing in the Medical Settlement record to support the argument that the GCCF systematically accepted, reviewed or paid exposure injury claims.[33]  Unsurprisingly, none of the four Appellants-Objectors who were deposed had any personal knowledge, awareness or factual

---

[32] *See* REPLY BRIEF IN SUPPORT OF FINAL APPROVAL [Rec. Doc. 7727], pp.ii-iii, 15-16.

[33] *See, e.g.,* KLONOFF DECLARATION [Rec. Doc. 7116-2], ¶52 ("the GCCF did not even compensate for physical injuries, except in a small number of cases").  Those few cases, to undersigned counsel's knowledge, primarily, if not exclusively, involved the injuries or deaths of rig workers who were on the *Deepwater Horizon* on April 20, 2010; not exposure injuries.  The Objectors-Appellants also complain, along these lines, on Page 19 of their Medical Appeal Brief, [Doc. 00512305170, at 35], that: "Someone injured from the drilling platform accident has a completely different cause of action from someone suffering from the chemicals used in the cleanup."  But rig workers injured or killed on the drilling platform were specifically excluded from the Medical Benefits Class Settlement. *See* MEDICAL AGREEMENT, Section I(B)(4).

basis for the proposition that either Coastal Property Damage or Medical Benefits type claims had been paid.

Indeed, Susan Forsyth responded, when asked about the GCCF: "I don't think this has anything to do with my case. So I'm not going to talk about that…. Why are we talking about the GCCF?"[34]

As the Court is well aware:

- The GCCF *only* entitled individuals and businesses to lump-sum "Quick Payments" of $5,000 and $25,000 respectively where those claimants had previously received emergency or interim payments from the GCCF. Because Objectors-Appellants did not, they were not even eligible for such "Quick Payments".[35]

- The Settlement and Transition Order provided for a period of time – which was extended by the Parties and the Court – for eligible GCCF claimants to exercise their "Quick Pay" option.[36] Hence, *no* Economic Class Member was adversely affected.

- One of the chief complaints about the GCCF, not only by private claimants, but by the Attorneys General of several Gulf States, was that the GCCF did *not* routinely provide claimants with "interim payments" without signing a release.[37]

- As outlined more fully in the Economic Class' REPLY BRIEF [Rec. Doc. 7727], at pp.16-18, the Economic and Medical Class Settlements both _extended_ the time for filing beyond the three-year anniversary of the Spill, and even beyond the August 23, 2013 date that Mr. Fienberg had announced would be the deadline for GCCF claims.

- The GCCF was *not* "governmentally overseen".

- BP did _not_ dedicate or commit the $20 Billion "trust fund" to the payment of private parties through the GCCF. There was no "floor" with respect to GCCF payments, and the "trust fund" could be used to satisfy response and clean-up costs, natural resource

---

[34] FORSYTH DEPO. TR. at pp.65-68.

[35] Appellants-Objectors also state in their Economic Appeal Reply Brief at Page 4 [Doc. 00512381409, at 12] that "Non-tourism and seafood businesses in Zones C and D admittedly have a multiplier *lower* than the GCCF." Separate and apart from, and in addition to, what is pointed out in the Class' REPLY BRIEF [Rec. Doc. 7727], at pp.14-23, none of the four Economic Appellants-Objectors have asserted non-tourism Zone C or D Claims, (nor any Settlement Program Claims, nor any claim in the GCCF).

[36] *See* ORDER (May 2, 2012) [Rec. Doc. 6415].

[37] *See* REPLY BRIEF [Rec. Doc. 7727], at p.13 fn.53 (and filings cited therein). (Class Counsel also pointed out that BP established a separate BP OPA Claims Process, where claimants could have gone to receive further interim payments.)

damages, and other BP Spill-related liabilities.[38]  Indeed, BP can use the very same
"trust fund" to fund the Economic and Medical Settlement Trusts.[39]

Not one Objector-Appellant articulated in his or her deposition any actual objection to
BP's termination of the GCCF;  nor any way in which he or she would have allegedly been
"better off" in the GCCF;  nor any way in which he or she was, or even could have been,
adversely affected.

Given both the deposition testimony and the unsupported factual contentions, the Court
must seriously question not only the standing of these Objectors-Appellants to advance these
arguments, but also whether Counsel for the Objectors-Appellants had their clients' authority to
advance such "objections".

## Objectors-Appellants Lack Any Interest in the Outcome

In their objection to this Court, Objectors-Appellants argue that "the compensation
provided by the settlement is woefully inadequate." [No. 10-7777, REC. DOC. 124, at 24.]  Under
questioning, however, no Objector-Appellant articulated this complaint.  In fact, none of the
Objectors had any idea what remuneration, if any, he or she was entitled to receive under the
settlement. [*See* FORSYTH DEPO. TR. at 47:2-8; KIRBY DEPO. TR. at 49:6-16; P. STURDIVANT
DEPO. TR. at 16:22-17:2.]  Nor could any Objector-Appellant articulate what kind of award he or
she was likely to acquire through litigation, nor could they even guess whether they had any
likelihood to prevail outside the settlement. [FORSYTH DEPO. TR. at 32:9-12; KIRBY DEPO. TR. at
50:22-51:4, 98:13-15; P. STURDIVANT DEPO. TR. at 18:7-9.]  Objectors could not say how long
they expected to wait for a litigated outcome, how much it would cost, or how many experts
success might require. [FORSYTH DEPO. TR. at 48:25-50:1; P. STURDIVANT DEPO. TR. at 18:7-9;

---

[38] *See* DEEPWATER HORIZON OIL SPILL TRUST [Doc 912-8].
[39] *See* ECONOMIC SETTLEMENT AGREEMENT, Section 5.12.1.5.1; MEDICAL BENEFITS SETTLEMENT
AGREEMENT, Section XXII(A).

47:25-48:15.]   Indeed, all four Objectors echoed the sentiment of Patricia Sturdivant, who acknowledged that she had "no intention of pursuing BP in a separate lawsuit if the settlement gets scrapped." [P. STURDIVANT DEPO. TR. at 49:3-5; *see also* FORSYTH DEPO. TR. at 47:16-49:7 (has not thought about it); KIRBY DEPO. TR. at 111:19-112:16 (not sure); M. STURDIVANT DEPO. TR. at 29:7-30:4 (I don't know).]

This was echoed in the Economic Objectors-Appellants' recently filed Declarations, in which they attest to the fact that, while they haven't filed any lawsuits or settlement claims to date, they intend to attempt to file claims (assuming *arguendo* that they are eligible to) in the event that the Economic Settlement is approved over their objections.[40]

Indeed, the Objectors-Appellants have all submitted, and are perfecting, claims in the Medical Benefits Settlement, in order to claim the relief to which they are purportedly objecting. [P. STURDIVANT DEPO. TR. at 41:6-23; M. STURDIVANT DEPO. TR. at 22:16-23:17; KIRBY DEPO. TR. at 65:2-14; FORSYTH DEPO. TR. at 8:15-17.]

If the Objectors-Appellants "win" on appeal, they will get nothing.

They will only recover if they "lose".

How can this be said to satisfy the Article III requirement for redress?

At the height of this irony is the fact that the Objectors-Appellants actually complain (erroneously) that the Medical Benefits and Economic Settlement Classes "prematurely" cut off their rights to make claims.   In fact, none of the five Medical and Economic Objectors-Appellants filed a lawsuit, a claim in the Transocean Limitation, a Class Settlement Claim, or even a claim with BP or the GCCF within the three-year limitation period, (or even by the former GCCF August 2013 deadline).   Hence, the argument could be made that the only reason these

---

[40] *See* KIRBY III DECLARATION (Nov. 5, 2013), ¶10 [Fifth Cir. Doc. 00512438725, at 20]; M. STURDIVANT DECLARATION (Nov. 6, 2013), ¶11 [Fifth Cir. Doc. 00512438725, at 28]; P. STURDIVANT DECLARATION (Nov. 6, 2013), ¶9 [Fifth Cir. Doc. 00512438725, at 36].

individuals have any potential rights or claims against BP relating to the Spill is by virtue of the very Settlements to which they "object".[41]

While cognizant of the general rule under *Devlin* that a classmember will generally have Article III standing simply by virtue of his or her membership in the class,[42] it is hard to imagine, under these particular facts and circumstances, (even assuming *arguendo* class membership, which is denied), how these individuals have standing to advance these "objections" (?)

**Counsel for Objectors-Appellants Have Advanced "Objections" to Elements of the Settlements to Which the Objectors-Appellants Themselves Do Not Actually Object**

Susan Forsyth testified that the Periodic Medical Consultation Program ("PMCP") was "something good to do." [FORSYTH DEPO. TR. at 30:25-31:11.]  She then stated that she was "[n]ot necessarily" objecting to the program.  [*Id.* at 31:13-15.]  In a similar vein, James Kirby IV called the PMCP "an idea that has to happen." [KIRBY IV DEPO. TR. at 46:1-16.]  Patricia Sturdivant could not (or would not) say that the PMCP was a "bad idea".  [P. STURDIVANT DEPO. TR. at 27:13-29:3.]

Objectors' legal brief also assails the purported "unfairness" of the Back-End Litigation Option ("BELO").  [No. 10-7777, REC. DOC. 124, at 35-36.]  None of the Objectors raised this as a complaint during their depositions.  In fact, when asked to explain her objection to the settlement, Patricia Sturdivant seemed to state that her concern was that the agreement *failed to preserve* class members' back-end litigation rights:

---

[41] It is, of course, possible that one or more of the Objectors-Appellants could theoretically make a successful argument under *American Pipe* or some other theory of tolling, estoppel, accrual or the discovery rule.

[42] It is worth noting, in this regard, that *Devlin,* unlike the Medical Benefits and Economic Class Settlements, was a no-opt-out class, certified under Rule 23(b)(1). *See Devlin,* 536 U.S. at 11.  These Objectors-Appellants, by contrast, could have opted out of each Class Settlement and litigated their claims against BP separately.

> THE WITNESS:  I mean, we're objecting because we are part of Zone A.  So, we're—we live within a half a mile of the beach and were affected by the spill itself.
>
> BY MR. HERMAN:  And?
>
> THE WITNESS:  And we had, you know, and I had health consequences as a result, and have no idea in the future how they may manifest themselves.
>
> MR. HERMAN:  Okay.  Is it you understanding that if at some point a condition manifests itself in the future and it is related to the oil spill, that you will still be able to sue under the settlement, BP for that?
>
> THE WITNESS:  Well, it's my belief that we would not—I would not be able to.

[P. STURDIVANT DEPO. TR. at 26:14-27:3.]  Ms. Sturdivant, in other words, testified that her objection was based on the fact that the settlement did not contain a BELO.  The settlement, in fact, contains a favorable Back-End Litigation Option.  Thus, Ms. Sturdivant's view is not only an erroneous understanding of the settlement, but the exact opposite of the view expressed in the pleadings filed by her counsel.

In a similar vein, none of the Objectors voiced concern with the Gulf Regional Health Outreach Program ("GRHOP"), to which their Counsel, Mr. Palmer and Mr. Frank, have strenuously objected.[43]  Neither Patricia Sturdivant nor Kirby IV were clear as to whether or, if so, why they might object to this aspect of the settlement. [KIRBY DEPO. TR. at 104:10-108:13; P. STURDIVANT DEPO. TR. at 55:8-56:9.]  Ms. Forsyth, who testified that she did not want anything for herself, appeared to be objecting to the Medical Settlement primarily because she believes that the GRHOP should be even *larger*.  When asked about her initial conversation with Kirby III regarding her potential objections to the Medical Settlement, she testified as follows:

---

[43] *See, e.g.,* MEDICAL OBJECTIONS, pp.21-22 [No.10-7777, Rec. Doc. 124, at 27-28]; MEDICAL APPEAL BRIEF, pp.8, 44-51 [Doc. 00512305170, at 24, 60-67]; MEDICAL REPLY BRIEF, pp.16-18 [Doc. 00512389450, at 25-27].

THE WITNESS:  Yeah.  With a lot of the sickness that I've seen, I felt like there needs to be more addressed with that and taken care of, I guess.

Q.      More in terms of what?

A.      Funding.

Q.      For like community-based programs?

A.      Do we have to get into all of that?

MR. PALMER:  If you can answer the question, that's fine.

THE WITNESS:  Yeah.

MR. PALMER:  If you understand the question.

THE WITNESS:  It seemed lacking.  I will just put it that  way.

[FORSYTH DEPO. TR. at 46:10-24.]  And, further:

Q:      Now, there's $105 million that BP put into a fund or several funds.  It's being administered by independent schools and other medical facilities, to provide the community with essentially medical outreach and to create a library of all of the information that they find out about the spill.  Do you think that needs to be more robust and funded greater?

A:      Yes.

[FORSYTH DEPO. TR. at 50:12-20.][44]  Mr. Palmer and Mr. Frank object to the GRHOP as an

alleged "*cy pres*" which they contend – without any evidentiary support – allegedly reduced the

compensation for Specified Medical Conditions to the members of the class.[45]  Their client, Ms.

Forsyth, however, testified that she was objecting to the Medical Settlement because the GRHOP

funding should be *greater*.  Objectors-Appellants' sworn testimony thus begs the question: Did

Mr. Palmer and Mr. Frank have authority to make the arguments contained in their briefs?  Have

---

[44] Suspiciously, Ms. Forsyth seemed to equivocate on this, (referring to it as a "rash opinion"), after a recess in the deposition prompted by her counsel.  Ultimately, she confirmed that her opinion had not changed. *See* FORSYTH DEPO. TR. at 51:12 – 53:24.

[45] Similarly, on the Economic side, Mr. Palmer and Mr. Frank object to the Gulf Tourism and Seafood Promotional Fund. *See* Economic Objection, pp.19-21, 37-38 [No.10-7777, Rec. Doc. 123, at 25-27, 43-44]; APPEAL BRIEF, pp.42-47 [U.S. Fifth Cir. Doc. 00512306888, at 60-65]; REPLY BRIEF, pp.20-21 [U.S. Fifth Cir. Doc. 00512381409, at 28-29.] When asked whether they actually objected to or promoted this feature of the Economic Class Settlement, Mr. Palmer instructed the Objectors-Appellants not to answer. *See* FORSYTH DEPO. TR. at pp.60-61; P. STURDIVANT DEPO. TR. at pp.58-59.

they not created, at the very least, a conflict of interest with their own clients, who support a larger community-based program?

**Improper Conduct of Counsel during the Depositions**

Throughout the depositions of each of the four Objectors, Mr. Palmer repeatedly attempted to obstruct and subvert the truth-seeking function of discovery. This was evident from the beginning of the examination of James Kirby IV, the first Objector-Appellant to be deposed. Mere minutes into Mr. Kirby's examination, the following exchange occurred:

> Q:      So the spill happens, you're working for the Coast Guard, you get exposed, you get symptoms. Did you ever make a claim to the Gulf Coast claims facility, the GCCF?
>
> A:      I did not.
>
> Q:      Why not?
>
> MR. PALMER:      Well, I will object that it's irrelevant to the scope of this –
>
> MR. HERMAN:      It is?
>
> MR. PALMER:      Yes.
>
> MR. HERMAN:      Well, I don't think it's irrelevant.
>
> MR. PALMER:      Well, the mandate to the District Court was to determine whether or not he was a class member. So he answered that he did not make a claim.
>
> MR. HERMAN:      But there's also a question of whether you have authority to make the objections for this man that you're making, and I think we're entitled to explore whether he agrees with the objections you've made.
>
> MR. PALMER:      We're not going to go there today, just to let you know.
>
> MR. HERMAN:      Oh, we're not?
>
> MR. PALMER:      No.
>
> MR. HERMAN:      You're going to instruct him not to answer on that?

MR. PALMER:        I will.

[KIRBY DEPO. TR. at 31:7-32:9.]  Mr. Palmer's obstruction escalated from there.  He interjected, repeatedly made argumentative speaking objections, and instructed Mr. Kirby not to answer topics as varied as why he had not filed a lawsuit against BP; why he had not filed a claim in the Economic and Property Damages Settlement; whether he read the legal briefs filed in his name; whether he authorized his attorney to make arguments on his behalf; whether he objected to the PMCP; whether he objected to the GRHOP; whether he intended to pursue litigation outside the Medical Settlement; and whether he agreed with a declaration submitted under his signature to the Fifth Circuit. [*Id.* At 34:20-35:1; 35:13-20; 36:7-18; 39:21-40:7; 46:17-47:2; 67:16-68:5; 70:5-24; 72:18-24; 75:24-76:17.]

Because Mr. Palmer's conduct was so egregious, Class Counsel had no choice but to seek judicial intervention from Magistrate Judge Shushan.  Her instructions were clear (and consistent with those by which every other attorney in this MDL has complied): the examination should proceed on potentially relevant legal issues, (including those subject to Class Counsel's pending Rule 11 motion), and Mr. Palmer should only to instruct his client not to answer where the question sought privileged information. [*Id.* At 97:11-98:4.]  Despite this clear guideline, Mr. Palmer continued to coach the witnesses, interject answers on their behalf, interpose argumentative speaking objections, and repeatedly instructed his clients not to answer questions concerning potentially relevant topic areas.

Indeed, almost immediately after Judge Shushan's ruling was read into the record, Mr. Kirby was asked to state, in his own words, the basis of his objection to the settlement.  This question—clearly relevant to class standing and Mr. Kirby's and/or his counsel's potential bad faith litigation tactics—drew the following exchange:

MR. PALMER:      Well, wait.  The objection speaks for itself, so do the appellate briefs.  The question is overbroad.  Can you ask it more specifically?  Are you asking him in addition to what his objection says and what his appellate brief says, does he have any other objections?

MR. HERMAN:      No.  I'm asking him if he can say in his own words what objections, if any, to the settlement are.

MR. PALMER:      Well, that's why he hired a lawyer, so he wouldn't have to say it in his own words.  If you're asking about –

MR. HERMAN:      Well, we can debate what the Rules of Professional Conduct require.[46]   But I think it would be more efficient just to have him answer the question. . . .

Q:      Can you answer the question?

A:      Can you restate the question?

Q:      Can you say in your own words what, if any, objections you had to the settlement?

MR. PALMER:      If you can.

THE WITNESS:      I cannot.

[KIRBY DEPO TR. at 99:4-100:7.]

Allen Lindsay, an attorney representing medical benefits classmembers who attended Mr.

Kirby's deposition, explains that:

> …the objections made by Joseph Darrell Palmer were argumentative and suggestive…. Mr. Palmer made physical signs and motions which clearly telegraphed to the witness that the answer "I don't know" would be correct.  Furthermore, Mr. Palmer instructed his client not to answer questions even though there was no preservation of privilege issue.[47]

---

[46] Rule of Professional Conduct 1.2(a), for example, requires that: "a lawyer shall abide by a client's decisions concerning the objectives of representation, and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued."

[47] DECLARATION OF ALLEN LINDSAY (Nov. 18, 2012), ¶ 4.

The improper coaching is also obvious on the face of the record.  In Ms. Forsyth's deposition, Mr. Palmer repeatedly answered questions on his client's behalf, seemingly to derail or obstruct any inquiry into the creation of the potentially fraudulent "claims forms" that were delivered to the Fifth Circuit but never actually filed. [FORSYTH DEPO. TR. at 36:24-37:24.][48] Further, when Ms. Forsyth was asked for her opinion on the GRHOP, Mr. Palmer interjected and suggested responses, effectively preventing the witness from answering.  [*Id.* At 52:20-53:16.] Mr. Palmer's witness coaching continued throughout the depositions, but especially when his clients were asked to elaborate on the bases of the objections they had filed.  Because his clients clearly did not understand the bases (or sometimes even the existence) of the objections, Mr. Palmer's only resort was to obstruct and/or suggest an appropriate response.  [*See, e.g.*, FORSYTH DEPO. TR. at 65:10-66:9; M. STURDIVANT DEPO. TR. at 33:23-34:14; P. STURDIVANT DEPO. TR. at 53:4-15.]

Mr. Palmer also repeatedly (and in contravention of Judge Shushan's directive) interjected with argumentative speaking objections, which often had the effect of suggesting an answer to the witness.  At other times, Mr. Palmer would simply answer the question on the witness' behalf, before the deponent even had an opportunity to respond. [*See, e.g.*, FORSYTH DEPO. TR. at 47:16-48:8, 62:2-8; M. STURDIVANT DEPO. TR. at 26:24-27:10, 29:7-23, 39:11-40:5;

---

[48] Several inconsistencies between the original Objections, the purported Claims Forms that were filed with the Fifth Circuit in August of 2013, and the purported Claims Files that were filed with the Fifth Circuit in September of 2013, are noted throughout the depositions. Counsel point, in particular, to the signature on Ms. Forsyth's Sept. 7, 2013 Claim Form [U.S. Fifth Cir. Doc. 00512371183, at 22], which does not appear to be the same signature that appears on Forsyth's undated Claim Form [U.S. Fifth Cir. Doc. 00512351532, at 97]; and the signature on Mr. Sturdivant's Sept. 6, 2013 Claim Form [U.S. Fifth Cir. Doc. 00512371181, at 22], which does not appear to be the same signature that appears on Mr. Sturdivant's Aug. 13, 2013 Claim Form [U.S. Fifth Cir. Doc. 00512351532, at 45].

P. STURDIVANT DEPO. TR. at 25:15-26:8,[49] 27:24-28:3.]  Finally, and despite Judge Shushan's order to the contrary, Mr. Palmer instructed his clients not to answer potentially relevant inquiries that were clearly not privileged.  [*See, e.g.*, FORSYTH DEPO. TR. at 60:25-61:25; M. STURDIVANT DEPO. TR. at 30:5-13; P. STURDIVANT DEPO. TR. at 49:11-51:6, 56:22-64:1.]

Such conduct is inappropriate under Federal Rule of Civil Procedure 30(c)(2), as well as Professional Rules of Conduct 3.4(c) and 3.4(d),[50] and is sanctionable under Federal Rule of Civil Procedure 30(d)(2).  *See, e.g., Redwood v. Dobson*, 476 F.3d 462, 468 (7th Cir. 2007); *Woods v. Ramsey*, 199 F.3d 437 (5th Cir. 1999); *Lee v. Wal-Mart Stores, Inc.*, 2011 WL 796784 (E.D. Va. 2011); *Boyd v. Univ. of Md. Med. Sys.*, 173 F.R.D. 143, 147 (D. Md. 1997).  Indeed, the prevalence of Mr. Palmer's interjections further bolsters Class Counsels' request for sanctions because it demonstrates the pervasiveness of Mr. Palmer's misconduct and his willingness to repeatedly utilize bad faith tactics. *See, e.g.*, *Morales v. Zondo, Inc.*, 204 F.R.D. 50, 54 (S.D.N.Y. 2001) (finding that counsel's instructions not to and how to answer and repeated interruptions where in bad faith and "pervasive" when counsel's name appeared on more than 85 percent of the transcript pages); *Van Pilsum v. Iowa State Univ. of Sci. & Tech.*, 152 F.R.D. 179, 180-81 (S.D. Iowa 1993) (attorney sanctioned for "Rambo Litigation" where he monopolized 20 percent of deposition by constant interruption and objection).

---

[49] Undersigned counsel specifically pointed out that "Objection to form is sufficient. You don't need to say anything else. And in fact, I think you are prohibited from saying anything else." P. SYURDIVANT DEPO. TR. at 26:2-5.  Mr. Palmer disagreed, (apparently inviting undersigned counsel to disturb Judge Shushan a *second* time), and continued to make speaking objections for another deposition-and-a-half, undeterred.

[50] "A lawyer shall not … (c) knowingly disobey an obligation under the rules of a tribunal… (d) … fail to comply with a legally proper discovery request." RULE OF PROFESSIONAL CONDUCT 3.4.

**A Long History of Sanctionable Conduct**

Objectors-Appellants' Counsel, Mr. Palmer, has a significant track record of vexatious and bad faith litigation and appeals, as well as misrepresentations to the Court.  For example:

- In *In re: TFT-LCD (Flat Panel) Antitrust Litigation,* Judge Illston held Mr. Palmer in contempt and imposed monetary sanctions.[51]

- In *Gemelas v. Dannon Co.,* Judge Polster characterized Mr. Palmer's clients as "serial objectors" and found the appeal to be "frivolous, unreasonable and in bad faith."[52]

- At the 15th Annual National Institute on Class Actions, Mr. Palmer characterized objecting to class actions as his "hobby" and admitted to accepting "a lot" of money to "sell appeals" over the preceding decade.[53]

- In *In re: Uponor Inc. F1807 Plumbing Fittings,* Judge Montgomery found "that the Palmer Objectors have evidenced bad faith and vexatious conduct…. [T]he Palmer Objectors appear to be represented by an attorney who is not entered an appearance in this case and who is believed to be a serial objector to other class action settlements. This attorney, Darrell Palmer, paid the appellate filing fee on behalf of the Palmer Objectors, and the documents filed on their behalf bear his California mailing address rather than the Texas address of the Palmer Objectors….  The Palmer Objectors' objections and subsequent appeal appear little more than dilatory tactics of questionable motivation."[54]

- In *Herfert v. Crayola,* Judge Coughenour found that "Mr. Palmer falsely declared under penalty of perjury that he had not been disbarred or formally censured by a court of record or by a state bar association.  In fact, Mr. Palmer was temporarily suspended from the Colorado Bar Association, the State Bar of Arizona, and the State Bar of California as a result of a Colorado felony conviction. Mr. Palmer has submitted a letter to the Court attributing his failure to disclose these suspensions to an oversight on the part of his assistant."[55]

---

[51] *See* ORDER RE MOTION FOR AN ORDER TO SHOW CAUSE, No.07-1827, Rec. Doc. 8759 (N.D.Cal. Nov. 8, 2013).

[52] *Gemelas v. Dannon Co.,* No.08-236, 2010 WL 3703811, at pp.**1, 2 (N.D.Ohio Aug. 31, 2010).

[53] Paul Karlsgodt, *Notes From the 15th Annual National Institute on Class Actions* (Oct. 17, 2011) (found at http://classactionblawg.com/2011/10/17/notes-from-the-15th-annual-national-institute-on-class-actions/) (last visited on Nov. 18, 2013).

[54] *See* MEMORANDUM OPINION AND ORDER, No.11-2247, Rec. Doc. 132 (D.Minn. Sept. 11, 2012), pp.5-6 (submitted previously as an exhibit to Class Counsel's REPLY BRIEF [Rec. Doc. 7727-11, at 14-15]).

[55] *See* ORDER DENYING APPLICATION OF CLAIMANT'S COUNSEL DARRELL PALMER TO APPEAR PRO HAC VICE, No.11-1301, Rec. Doc. 74 (W.D.Wash. Aug. 17, 2012) (submitted previously as an exhibit to Class Counsel's REPLY BRIEF [Rec. Doc. 7727-11, at 8-9]).

- In *Esslinger v. HSBC Bank,* the U.S. Third Circuit Court of Appeals allowed the appellant who was represented by Mr. Palmer to withdraw her appeal, but directed the Clerk of Court "to forward a copy of the Appellees' motion for sanctions and this order to the Attorney Discipline System of the State Bar of California for review."[56]

- In *Arthur v. Sallie Mae,* Judge Robart noted that "many of their motions since the motion to intervene have been rejected by the court, suggesting that the actions were to disrupt and delay, which is consistent with the fact that Mr. Palmer is a, and I'll use the phrase 'professional' not in any favorable sense, objector."[57]  And found that: "Mr. Palmer improperly certified and declared under penalty of perjury that he did not have a disciplinary history. As such, he violated the standards of Professional Conduct set forth in the local rules and is subject to disciplinary action…. Mr. Palmer did not file an amended pro hac vice application until August 27, 2012, a full 17 days after being notified of the problem. This does not demonstrate candor with the court or that he took seriously the fact that he made a false statement under oath…. the false statement in the pro hac vice application is not the only misrepresentation Mr. Palmer has made to this court. It is impossible to reconcile a declaration submitted to this court under penalty of perjury, dated May 17, 2012, with the court record. And Mr. Palmer has now acknowledged that it is incorrect….  Mr. Palmer made several other misrepresentations in his motions for attorneys' fees."[58]

- In *In re GIB LLC Cases,* a previous objector who had been represented by Mr. Palmer withdrew her objection after she realized that Mr. Palmer had advanced objections that she did not authorize, agree with, or understand.[59]

Plaintiffs also submit an appendix that was recently submitted by counsel in the *In re: TFT-LCD (Flat Panel) Antitrust Litigation* which identifies "Examples of Cases in Which Darrell Palmer Has Filed Objections and Dismissed, Abandoned or Withdrawn the Objections or Appeal Without Attaining Settlement Changes or Additional Benefits for the Class."[60]

---

[56] *See* ORDER, No.12-4549 (3rd Cir. April 16, 2013) [Doc. 003111229677].

[57] *See* TRANSCRIPT OF MOTION HEARING, No.10-198 (W.D.Wash. Sept. 14, 2012), p.16 (submitted previously as an exhibit to Class Counsel's REPLY BRIEF [Rec. Doc. 7727-11, at 7]).

[58] *Id.* at pp.8, 10  [Rec. Doc. 7727-11, at 3, 5].

[59] *See* DECLARATION OF BETHANY CARACUZZO (Oct. 22, 2013) (with Letter from Donna Armani Pineda to Clerk of Court, Oct. 21, 2013).

[60] *See* APPENDIX A to INDIRECT-PURCHASER PLAINTIFFS' AND SETTLING STATES' RESPONSE TO OBJECTIONS, N.D.Cal. No.07-1827, Rec. Doc. 5601 (May 4, 2012), at pp.23-28.

**Sanctions Are Warranted Here**

In addition to its power under Rule 11 and 28 U.S.C. §1927, the district court has the inherent power to impose sanctions "for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). The Fifth Circuit has specifically recognized, in this regard, the independent and fundamental duty to supervise attorneys who come before the Court. *See Crowe v. Smith,* 151 F.3d 217, 230 (5th Cir. 1998); *citing, Cammer v. United States,* 350 U.S. 399, 408 (1956); *RTC v. Bright,* 6 F.3d 336, 340 (5th Cir.1993); *Howell v. State Bar of Texas,* 843 F.2d 205, 206 (5th Cir.1988) ("Since the early days of English common law, it has been widely recognized that courts possess the inherent power to regulate the conduct of attorneys who practice before them"). The conduct of Counsel for Objectors-Appellants raises significant issues, not only under Federal Rule of Civil Procedure 30(d)(2) and Federal Rule of Appellate Procedure 38, but also under Rule 11, 28 U.S.C. §1927, and Professional Rules of Conduct 1.2,[61] 3.3[62] and 3.4.[63] Based on the entirety of the record in these proceedings, (and particularly in light of Mr. Palmer's long track record of similar conduct in other cases), sanctions are appropriate.[64]

---

[61] "A lawyer shall abide by a client's decisions concerning the objectives of representation, and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued." RULE OF PROFESSIONAL CONDUCT 1.2(a).

[62] "A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law…. (3) offer evidence that the lawyer knows to be false." RULE OF PROFESSIONAL CONDUCT 3.3(a).

[63] "A lawyer shall not … (b) … counsel or assist a witness to testify falsely… (c) knowingly disobey an obligation under the rules of a tribunal… (d) … fail to comply with a legally proper discovery request." RULE OF PROFESSIONAL CONDUCT 3.4.

[64] *See, e.g.*, *In re Monteagudo*, --- F. App'x ---, 2013 WL 3753609, at *3 (5th Cir. July 18, 2013); *In re Girardi*, 611 F.3d 1027 (9th Cir. 2010).

## **EXHIBITS**

### **SUBMITTED UNDER SEAL**

A.  Deposition of James Kirby IV

B.  Deposition of Susan Forsyth

C.  Deposition of Patricia Strurdivant

D.  Deposition of Mike Sturdivant

### **FILED HEREWITH**

1.  Declaration of Allen Lindsay (Nov. 18, 2013)

2.  E-Mail to Palmer and Frank, Nov. 5, 2013

3.  Order from *In re TFT-LCD* (Nov. 8, 2013)

4.  *Notes from 15th Annual Institute on Class Actions* (Oct. 17, 2011)

5.  Order from *Esslinger v. HSBC Bank* (April 16, 2013)

6.  Declaration of Bethany Caracuzzo (Oct. 22, 2013)

    with Letter from Donna Armani Pineda to Clerk of Court, Oct. 21, 2013.

7.  Appendix A filed in *In re TFT-LCD* (May 4, 2012)

## Conclusion

For the above and foregoing reasons, and based on the entire record in these proceedings, the Medical Benefits Class and the Economic & Property Damages Class respectfully request that Objections No. 123 and No. 124 should be stricken, Appeal (Rec. Doc. No. 8271) should be dismissed, and the Court should impose such sanctions on the Objectors-Appellants and/or their Counsel as the Court deems reasonable and appropriate.

This 19th day of November, 2013.

Respectfully submitted,

| | |
|---|---|
| /s/   Stephen J. Herman | /s/ James Parkerson Roy |
| **Stephen J. Herman**, La. Bar No. 23129 | **James Parkerson Roy**, La. Bar No.11511 |
| **HERMAN HERMAN & KATZ LLC** | **DOMENGEAUX WRIGHT ROY & EDWARDS LLC** |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhklawfirm.com | E-Mail: jimr@wrightroy.com |
| *Co-Lead Class Counsel* | *Co-Lead Class Counsel* |

### MEDICAL BENEFITS SETTLEMENT CLASS COUNSEL
#### (AND ECONOMIC & PROPERTY DAMAGES SETTLEMENT CLASS COUNSEL)

| | |
|---|---|
| Robin L. Greenwald | Matthew E. Lundy |
| WEITZ & LUXENBERG, PC | LUNDY, LUNDY, SOILEAU & SOUTH LLP |
| 700 Broadway | 501 Broad Street |
| New York, NY  10003 | Lake Charles, LA  70601 |
| Office:  (212) 558-5802 | Office:  (337) 439-0707 |
| Telefax: (212) 344-5461 | Telefax: (337) 439-1029 |
| E-Mail:  rgreenwald@weitzlux.com | E-Mail:  mlundy@lundylawllp.com |
| | |
| Joseph F. Rice | Rhon E. Jones |
| MOTLEY RICE LLC | BEASLEY, ALLEN, CROW, METHVIN, |
| 28 Bridgeside Blvd. | PORTIS & MILES, P. C. |
| Mount Pleasant, SC 29464 | 218 Commerce St., P.O. Box 4160 |
| Office: (843) 216-9159 | Montgomery, AL 36104 |
| Fax No. (843) 216-9290 | Office:  (334) 269-2343 |

E-Mail: jrice@motleyrice.com

Brian H. Barr
LEVIN, PAPANTONIO
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office:  (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT, DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office:  (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Telefax: (334) 954-7555
E-Mail:  rhon.jones@beasleyallen.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail:  ervin@colson.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Memorandum will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pre-Trial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 19th day of November, 2013.

/s/ Stephen J. Herman and James Parkerson Roy