## DECLARATION
## Deepwater Horizon MDL 2179

1.  This Declaration is given to support any motion for sanctions which may be filed against attorney Joseph Darrell Palmer regarding Mr. Palmer's actions as counsel for appellants in that certain deposition taken on October 28, 2013.

2.  The undersigned attended, but did not participate in said deposition.

3.  The undersigned is an interested party in that my firm represents more than 400 beach cleanup workers who have or will file claims in the Deepwater Horizon Medical Benefit Settlement.

4.  The undersigned is familiar with FRCP, Rule 30, and during a break from or at the conclusion of the deposition volunteered to prepare and sign a Declaration that the objections made by Joseph Darrell Palmer were argumentative and suggestive. Further that Mr. Palmer made physical signs and motions which clearly telegraphed to the witness that the answer "I don't know" would be correct. Furthermore, Mr. Palmer instructed his client not to answer questions even though there was no preservation of privilege issue. It is the undersigned's opinion that Mr. Palmer's actions in this deposition impeded, delayed and frustrated the fair examination of James Henry Kirby.

5.  I personally attended the deposition of Mr. Kirby and the below summary comports with my independent recollection.

6.  Declarant has reviewed the "rough draft of James Kirby" deposition taken October 28, 2013.

7.  Attorney Steve Herman's cross-examination began on page 23 and on page 27 Mr. Palmer objects to a question because he believes it to be irrelevant and further states,

"Mandate to the District Court to determine whether or not he was a class member." And thereafter, "We are not going to go there today just to let you know." And on page 28, Mr. Palmer answers that he will instruct the deponent not to answer questions concerning claims made.

8. Steve Herman continued to ask the deponent questions about whether or not he had filed claims and Mr. Palmer continued his various objections stating such questions were irrelevant and argumentative, and instructing the deponent not to answer various questions.

9. On Page 36, Mr. Kirby was asked, "Do you recall filling this out?" Mr. Palmer stated, "Lacks foundation." On page 42, Mr. Palmer again instructs his client not to answer questions. On page 46, Mr. Palmer instructed the deponent attempting to assist deponent in formulating an answer, and when the deponent was further asked questions regarding an addition to a document, counsel Palmer instructed him not to answer. On page 48, the witness was asked, "What is Kirby 8?" Mr. Palmer stated, "Lacks foundation, go ahead." On page 50, counsel Herman asked the deponent questions concerning Kirby 8, as to whether or not it establishes the fact that the deponent was a cleanup worker. Mr. Palmer stated that was argumentative and that it did not say that it established the fact that he was a cleanup worker. Mr. Herman then asked the question a slightly different way regarding notification that the deponent received that he was a cleanup worker to which Mr. Palmer interjected that the document speaks for itself and then asked his client, "Did you mean anything else other than what it says, Jim." Mr. Herman objected to coaching the witness at that point. On page 52, the witness was asked what evidence he submitted by the deadline that established that he was cleanup worker to which Mr. Palmer objected that it lacks foundation and then instructed his client, "If you know." Mr. Palmer

instructed his client not to answer a question as to whether or not Kirby 10 established in and of itself that the deponent was a cleanup worker. Further on page 52, the question was asked regarding whether the deponent knew what objections Mr. Palmer had filed to the medical settlement and Mr. Palmer instructed his client not to answer. On page 53, Mr. Herman asked the witness whether he knew what arguments his counsel had made on the appeal and Mr. Palmer instructed him not to answer. On page 54, Mr. Herman asked the deponent, "Did you represent in one of those drafts or the final that a claim form had been submitted to the Claims Administrator?" and the deponent answered that he did not understand the question and then Mr. Palmer began to interfere with the questioning of his client by instructing Mr. Herman (page 55).

10. On page 56, Mr. Palmer asks Mr. Herman how he came into possession of a document marked as Exhibit 11 and indicated he would instruct his client not to answer any questions until that matter was cleared up and then asked for a break to confer with his client about that exhibit. On page 60, Mr. Herman asked about research and establishing a library to which Mr. Palmer objects as irrelevant and instructs his client not to offer any opinions about what BP should or shouldn't do. On page 62, Mr. Herman once again pursues a similar line of questioning to which Mr. Palmer intervenes and indicates he is going to instruct his client not to answer. Mr. Palmer continues to object to questions concerning the proposed settlement on the grounds that it is "outside the scope of discovery. This continues on pages 64, 65, and 66.

11. On pages 67 and 68, Mr. Herman asks the deponent regarding Kirby 13 (Declaration of Darrell Palmer) and on page 68, Mr. Palmer states, "He will be happy to take this home and read it at length but unless he has some familiarity with the document or seen it before, you need to move on unless you have other questions." During this time the deponent is

apparently reading the document and on page 68 and 69, Mr. Palmer once again instructs the deponent not to answer various questions, which continues on page 70 and 71. On page 71, Mr. Palmer intervenes and asks his client, "Do you understand the question." While Mr. Palmer is asking this question he has raised his palms and shrugged his shoulders in a classic "I don't know" signal. And on page 72 and 73, Mr. Palmer instructs his client not to answer questions.

12. After counsel for BP questioned Mr. Kirby, Mr. Herman read from a "string of emails" where Rule 11 sanctions were discussed as a subject which the objectors might be questioned about and Mr. Palmer did not object (in said email). Then on page 84, Mr. Palmer asserted that the Rule 11 motion "is not well placed" and on page 85, he once again instructed his client not to answer the question. It is at this point that a recess was taken and a conference with Magistrate Judge Shushan was held. Mr. Palmer was instructed that he could not direct hs client to refuse to answer except in matters relating to privileged communication.

13. On page 88, in response to a question by Mr. Herman of the deponent, Mr. Palmer states, "Argumentative. Harassing. Go ahead and answer that, go ahead and answer it" while gesticulating in classic palms up, shoulders shrugged, clearly telegraphing the question should be answered with "I don't know." The deponent stated, "I don't know." Mr. Herman then asked the deponent, "Can you say in your own words what your objection is to the settlement?" To which Mr. Palmer responded instructing his client to wait stating that the objection speaks for itself and when Mr. Herman restates the question, Mr. Palmer instructs him further, "If you can," while physically coaching the deponent. The witness responded, "I cannot." Immediately thereafter Mr. Herman asked the deponent questions regarding attorney fees for class counsel and Mr. Palmer intervened yet again, stating that the question was argumentative, harassing and calls

for a legal opinion. As to the very next question concerning fees, Mr. Palmer once again coached both verbally and physically and this conduct of Mr. Palmer objecting to every question with speaking objections continued as he coached his client regarding the community health program.

Dated this 18th day of November, 2013.

_____
ALLEN W. LINDSAY, JR.