# ClassActionBlawg.com

## class action news, commentary, and analysis

Feeds:   Posts   Comments

## Notes From the 15th Annual National Institute on Class Actions

October 17, 2011 by Paul Karlsgodt

*I was not able to attend the ABA National Institute on Class Actions (http://www2.americanbar.org/calendar/the-15th-annual-national-institute-on-class-actions/Documents/CEN1CAC_FinalBrochure.pdf) program in New York City last week, but class action notice expert and occasional **CAB** contributor, Dr. Shannon R. Wheatman, Vice President, Kinsella Media (swheatman@kinsellamedia.com (mailto:swheatman@kinsellamedia.com)), was there and she graciously agreed to send me her notes of what sounds like another great conference. Shannon was a fitting correspondent this year because three federal court judges talked about the need for plain language class action notice, which also happens to be the topic of Shannon's doctoral dissertation. Shannon's notes follow below. – PGK*

**Notes from the 15th Annual National Institute on Class Actions (New York City)**

Following an energetic introduction from Goldman Scarlato Karon & Penny partner Dan Karon, Columbia Law Professor John C. Coffee kicked things off with his annual review of developments in federal class action law. He focused on the U.S. Supreme Court's recent class action decisions. He noted, "The landscape has changed – and changed dramatically – this year."

Prof. Coffee began his discussion with the impact of *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). He noted three distinct messages in that decision: (1) a new standard for commonality, (2) individualized money damages are not available under 23(b)(2), and (3) affirmative defenses must receive individualized hearings. Prof. Coffee said the new commonality standard would have the greatest impact on 23(b)(2) classes including employment and environmental litigation. Affirmative defenses will be used by defendants to show that the class is unmanageable or that it fails the predominance requirement. Prof. Coffee provided some ways to get around affirmative defenses: (1) raise a *Twombly/Iqbal* challenge to affirmative defenses that are not pled with enough specificity to satisfy the "plausibility" standard, (2) seek only partial certification and leave affirmative defenses to be resolved in individual actions, and (3) concede that defendants can raise an affirmative defense, but deny that it can be raised to a jury.

Prof. Coffee discussed dueling class actions and the ruling in *Smith v. Bayer Corp.*, 131 S. Ct. 2368 (2011), which held that the relitigation exception did not permit a federal court to enjoin a class from seeking certification in a West Virginia state court. Basically, Prof. Coffee said, the Court ruled that the benefit of the doubt must go to the state court; a federal court lacks power to bind non-parties, such as absent class members.

The discussion turned to *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). The Supreme Court's majority found that state law rules are preempted when they obstruct the Federal Arbitration Agreement's objectives. Prof. Coffee believes mandatory arbitration clauses will be making their way into more employment contracts.

## Highlights of panel discussions

*"The Practice that Never Sleeps: Reexamining the Class Action Practice and Considering Where It – Indeed, We – Go from Here"*

This panel (Dan Karon, Judge Colleen McMahon, Judge Benita Y. Pearson, Professor Brian T. Fitzpatrick, J. Philip Cabrese, Derek G. Howard, and Peter M. Ryan) provided a discussion of the state of affairs in class actions. Dan Karon asked the panel "What's with all of the hostility?" Prof. Fitzpatrick believes it comes from a misperception based entirely upon the outliers that give class actions a bad name. Prof. Fitzpatrick conducted an empirical study of fee awards (filed from 2006-2007) in over 700 cases. He found the average fee award was 15%. So, the "perception that lawyers are getting everything and class members are getting nothing is not true."

Derrick Howard stated that it is fiction that most class actions are frivolous. The risk of bringing a class action on a contingent basis is substantial. Class action attorneys, he said, are acting as private attorneys general to correct wrongs. It was noted that the DOJ is closing half its antitrust field offices. How will that effect enforcement? Class action attorneys have to be the enforcers.

Judge McMahon, from the U.S. District Court for the Southern District of New York, said, "Don't endow us with superhuman powers." Most class actions are settled with little opposition, she said. Judges cannot "intuit" that something is wrong if no one speaks up. Judge Pearson, from the U.S. District Court for the Northern District of Ohio, said it is important to allow enough time for objectors and intervenors to know and respond in some way to proposed settlements.

This is where things got interesting. Larry Schonbrun, a self-proclaimed professional objector, stood up and told the panel that the court should appoint a class guardian to ensure a settlement is fair and reasonable. Judge McMahon replied, "Who pays for that?" The panel agreed that this would cause a substitution of judgment that was not necessary or even helpful. Schonbrun went on to say that the court has the power to find out if the settlement is unfair but the court chooses not to exercise that power.

Judge Pearson disagreed with Schonbrun and remarked that because a settlement is hard-fought does not mean it is fair and just. She requires the parties to walk her through the terms of the settlement. She also wants to talk with the class representatives.

The content and design of class action notices were discussed. Judge Pearson said she always wants to see what a notice will look like when printed to ensure it is readable. Judge McMahon went on to note that writing a notice is like crafting jury instructions. She told attorneys that they "have to work hard to make it readable" and they "have to work hard to make it comprehensible." One audience member remarked that there are plain language notice experts who can help attorneys.

Judge Pearson talked about proper deliverability of notice. She said debt collectors can find people and that it can be done without extraordinary costs and time. She seemed to be intimating that some class action notices remain undelivered and that there must be ways to get better addresses.

One attorney on the panel said that when *Twombly* was decided, everyone thought it was the death knell for class actions. Instead, there was a leveling effect as people adjusted. There is a temptation to interpret Supreme Court decisions as the final word but, as one attorney noted, "A 5-4 decision is not a death knell of anything." Lawyers are very creative and will find a way to deal with *Wal-Mart* and *Concepcion*.

"The Empire Cases – AT&T Mobility v. Concepcion and Wal-Mart Stores, Inc. v. Dukes from Those Who Made Them Happen"

This panel was comprised of the lawyers involved in *Concepcion* (F. Paul Bland, Jr. and Andrew J. Pincus) and *Wal-Mart* (Mark A. Perry and Joseph M. Sellers). Fred Burnside expertly moderated this session. Paul Bland would have liked to see a different case go up for review. There was no factual record in *Concepcion* because of the categorical rule of evidence set forth in the *Discover Bank* case.

The panel discussed the net effect of *Concepcion*. Basically, *Concepcion* does not require enforcement of a class action ban even when the evidence shows that the plaintiffs could not effectively vindicate their statutory rights in individual arbitration. Fred Burnside said that the American Arbitration Association ("AAA") has to post results. He found more than 100 instances where people arbitrated for less than $100. So, some people appear to be using arbitration to vindicate their rights. However, it was later revealed that there have only been 1,300 AAA claims in the past year.

Joe Sellers began the discussion on *Wal-Mart*. He remarked that he fielded 74 questions during oral argument and that the defense, led by Mark Perry, received far fewer. He was most surprised that Justices Ginsburg and Sotomayor were skeptical of the use of formulas for determining back pay even though they have been used for 35 years. The Court disregarded statistical evidence when it failed to find that a specific employment practice tied together 1.5 million class members. The question was raised whether *Daubert* applies to expert opinions offered at class certification. Sellers said, "The Court did not decide whether *Daubert* applies to class certification, although in dictum it suggested" it did.

"Melee in Manhattan! Class Action Objectors – Are They Protectors of Absent Class Members or Merely Gadflies?"

This was the most highly anticipated panel. Vincent J. Esades put together a panel that included Nancy F. Atlas, from the U.S. District Court for the Southern District of Texas and three professional (*Ed. Note-see Mr. Frank's comment below distinguishing his role from that of a "professional objector as that term is often used*) objectors (Ted Frank, Darrell Palmer, and Lawrence W. Schonbrun). The crowd followed Dan Karon's earlier admonition "to not throw chairs," but the discussion was heated at times.

Judge Atlas said that most judges care enormously about absent class members and protecting the process. She agreed that there are good objections that help fine-tune a settlement by pointing out substantive issues. However, she said, there are a lot of bad objections as well that do not serve to point

out any real issues with the settlement. Larry Schonbrun was the most vocal about blaming attorneys for excessive fees and judges for doing a "miserable job in approving fees" just to get the case off the docket. Schonbrun said he doesn't believe that courts want to hear objections. Darrell Palmer disagreed.

Ted Frank said that he goes after the worst settlements. Palmer said the system falls short because class counsel does not make sure class members know what is going on or how to file a claim. Frank, who often objects to attorneys' fees, said fees should be based on the amount actually distributed to class members.

Larry Schonbrun revealed that he had been an attorney in one class action but has offered over 150 objections. He fervently believes objections should be raised in every settlement. Darrell Palmer told the crowd that "objecting is a hobby for me."

Judge Atlas echoed Judges McMahon and Pearson by saying that class action notices need to be "legible and comprehensible to laypersons." She talked about having a good headline and writing in plain English.

The matter of *cy pres* awards was raised. Ted Frank said settlement monies should go to the class and not to favorite charities chosen by attorneys or judges.

An audience member asked the objectors how much each of them has accepted to sell appeals over the last decade. Ted Frank said "none," Darrell Palmer said "a lot," and Larry Schonbrun declined to answer. Darrell Palmer said the way to stop this practice is to stop paying off objectors. The professional objectors revealed that most objections address attorneys' fees and poorly written notices.

*"If I Can Make It There, I Can Make It Anywhere: Lessons Learned from Class Action Trials for the Rest of Us"*

This panel (Andrew J. McGuinness, Judge Jack Weinstein, James Donato, David Sanford, Edmund W. Searby, and Thomas M. Sobol) discussed preparing for a class action trial. There really are not many differences between a class action and a very complex individual trial. The rules of evidence are the same and Rule 23 does not deal with trials – only with the notice requirements for certification. The panel discussed that jury members may not even know what a class action means. Judge Weinstein, from the U.S. District Court for the Eastern District of New York, spoke of the importance of the charge to the jury. Judge Weinstein said he allows more leeway in jury *voir dire* in class action trials. If the evidence will involve a lot of statistics, he wants to have someone on the jury who will lead the other jurors to understand. Tom Sobol said he likes to come out first with the defense witnesses in order to tell the story to the jury. Jim Donato said the "victory is in the details." He allowed jurors in one of his cases to ask questions at any time during the trial. Judge Weinstein said he has never allowed unfiltered questions because the risk of mistrial "frightens me." Edmund Searby said it is best to get class representatives on and off the witness stand as quickly as possible to avoid any damage. The key, he said, is to have a class representative who is likable and credible.

*"New Kid on the Block – The Consumer Financial Protection Bureau: What Is It, How Will It Work, and How Will It Affect Us?"*

The final panel examined the Consumer Financial Protection Bureau ("CFPB"). This panel was moderated by Jeffrey A. Leon and included a representative from the CFPB (David M. Gossett); James D. Kole, who practices with the Illinois Attorney General's Office; defense attorney, Michael Thurman; and plaintiffs' attorney, Jonathan D. Selbin.

David Gossett provided an overview of the CFPB. The agency is in limbo until a director can be named. The CFPB will be working closely with the FTC on joint regulations. The CFPB will have broader rulemaking powers since it (unlike the FTC) can actually write regulations. Gossett asked any attorney trying to reach a settlement on the same claims as an enforcement action to reach out to the CFPB. He also talked about CAFA notice and how the CFPB will need to be noticed (specific guidelines will be set out in the future). A study on mandatory arbitration clauses will be undertaken before the CFPB considers the propriety of banning them.

Michael Thurman stated that defendants will be happy to learn that the FTC and CFPB will not initiate separate enforcement actions. He also thinks the CFPB's enhanced rulemaking power is good because it will lay out specific rules for businesses. James Kole said the Illinois Attorney General is viewing the CFPB as a positive force in the realm of consumer fraud protection. Jonathan Selbin asked some key questions on how the CFPB could impact class actions, including the possibility of preemption, exhaustion requirements, discovery and document production, and whether the CFPB can release class claims. He raised the concern that potential settlement with the CFPB could create a reverse auction atmosphere for defendants.

Save the date – 16th Annual National Institute on Class Actions – October 11, 2012 – Washington, DC

About these ads (http://en.wordpress.com/about-these-ads/)

- Who will your donation transform? http://bit.ly/150EeMx

- 

Copied To Clipboard

Who will your donation transform?

http://bit.ly/150EeMx

Paste Into Newsfeed(ctrl + v)

Posted in Class Action Trends, CLE Programs | Tagged at&t, AT&T Mobility, class action, class action notice, class action trial, class notice, concepcion, discover bank, dukes, empire cases, iqbal, kinsella, national institute, objector, plain language notice, professional objector, twombly, wal-mart, weinstein, wheatman | 1 Comment

# One Response

**Ted Frank**    on October 18, 2011 at 4:31 am | Reply
"Professional objectors" are those who sell their objections for a profit. Since I don't do that, I'm not a professional objector, as the Karlsgodt BNA paper acknowledges. Please correct, thanks.

Comments RSS