IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179<br><br>SECTION J |
| This document relates to:<br>All Cases and No. 12-970 | * * * * * * | Honorable CARL J. BARBIER<br><br>Magistrate Judge SHUSHAN |

## DECLARATION OF RICHARD C. GODFREY

I, Richard C. Godfrey, do hereby declare that the following statements made by me under oath are true and accurate to the best of my knowledge, information and belief:

1. My background and qualifications are set out in my declaration of November 7, 2013. *See* Rec. Doc. 11818-2. I make this Declaration based upon my own personal knowledge.

2. The *Deepwater Horizon* Economic & Property Damages Settlement Agreement (the "Settlement Agreement") provides that BP will fund a Supplemental Information Program ("SIP") that is "consistent with the goals of the Economic Class Action Settlement Notice Program," "approved by the Court," and "submitted in advance for review and comment by BP." Settlement Agreement (Rec. Doc. 6430-1) ¶ 4.4.15.

3. Class Counsel (Mr. Herman) submitted a proposed SIP to the Court on November 30, 2012. *See* Ex. A (Nov. 30, 2012 Herman E-Mail) (attachments omitted).  On December 7, 2012, I sent a letter to Magistrate Judge Shushan raising concerns and objections on BP's behalf to the proposed SIP.  *See* Rec. Doc. 11838-3. My letter stated that "BP cannot consent and the proposed program cannot be approved because in certain respects it is confusing and misleading,

1

contrary to Rule 23, and at odds with the terms of the Settlement Agreement as amended." *Id.* at 1. Among other things, I pointed out that:

- "The requirement that a loss for which a claim is made have been allegedly caused by the Deepwater Horizon Incident is unambiguously and expressly set forth in the Settlement Agreement." *Id.* at 2.

- "The Court-approved Notices, which are posted on the Settlement Program's website, accurately reflected this requirement of the Settlement Agreement." *Id.* at 3.

- "Because the spots omit any reference to the Class itself and fail to mention that the Settlement Agreement requires a connection to the spill, they will likely create unrealistic expectations among potential Class members." *Id.* at 3-4.

- In several cases "[n]o reference at all is made to the Deepwater Horizon Litigation . . . rather only to 'BP Money.'" *Id.* at 4.

    4.    I sent a follow-up letter to Magistrate Judge Shushan on December 11, 2012. *See* Ex. B (Dec. 11, 2012 Godfrey Letter). Among other things, my letter observed that:

- The proposed SIP "is not consistent with the original official Court-approved Notice Program, which specifies that the Settlement Program is designed to compensate for economic losses arising from the *Deepwater Horizon* spill." *Id.* at 1. "That inconsistency raises substantial risks of confusing and misleading both non-class members and potential class members, in violation of Rule 23 . . . ." *Id.*

- "[T]he proposed SIP is inconsistent with the provisions of the Settlement Agreement which expressly state that it provides compensation only for economic losses that were caused by the *Deepwater Horizon* incident." *Id.*

- "[T]he proposed SIP advertisements are misleading and confusing because they omit to mention that a claimant is only entitled to make a claim for damages caused by the DWH spill. That requirement is expressly provided for both in the Settlement Agreement and in the Court-approved Notice describing it, and by the sworn Claim Forms developed by the Settlement Program with the input and consent of the Parties." *Id.* at 2 (citation omitted).

- "The vice in the proposed SIP spots is that by omitting the requirement that the spill caused the loss, the spots would encourage viewers to submit claims for losses that have nothing to do with the oil spill and are not covered by the Settlement." *Id.* at 3.

    5.    On December 12, 2012, I attended an *in camera* status conference before Judge Barbier that had been scheduled to address BP's appeal of the Panel decision regarding the handling of Business Economic Loss claims by nonprofit organizations. I was present for BP, as

2

was Andrew T. Karron. Mark Holstein and Jeffrey Lennard appeared for BP by telephone. Jim Roy, Steve Herman, Calvin Fayard, and Joe Rice attended for the PSC. Also present were Magistrate Judge Shushan, Patrick Juneau, Mike Juneau, Orran Brown, and Judge Barbier's law clerk. No court reporter was present, and as far as I am aware no transcription was made.

6. The majority of the status conference focused on the nonprofits issue. After the Court expressed its views on that issue, there was a brief discussion of the proposed SIP. Judge Barbier indicated that he thought it was clear that, with respect to how causation is determined under the Settlement, everyone agreed that the Exhibit 4B tests were objective. I agreed on behalf of BP that the causation tests of Exhibit 4B are objective. The discussion, however, did not address the threshold question of class membership. For this reason, I believe it to be inaccurate for Class Counsel to argue in their surreply (as they do without evidentiary support) that at the December 12, 2012 closed-door hearing "BP Counsel, at that point, abandoned the suggestions in its December 7th Letter... ." Rec. Doc. 11848-1 at 6. Post-hearing correspondence and discussions between the parties confirm that Class Counsel's assertion is inaccurate.

7. Following the hearing, the Court sent an e-mail to the parties regarding the conference. Among other things, that e-mail explained: "There was further discussion regarding the proposed Supplemental Information Program. The Court advised the parties that it agreed with BP that there was no need for a new website, and that the Court would not approve the commencement of this supplemental program until it issues an order of final approval for the settlement. The Court further instructed the parties to meet and confer to attempt to resolve any remaining issues with respect to the SIP." Rec. Doc. 8963-75.

8. Later that week, the parties met and conferred by phone regarding the SIP. BP's view remained unchanged — only persons whose losses were caused by the spill were class members potentially eligible for compensation. Thus, on December 14, 2012, I sent an e-mail to Class Counsel suggesting that the SIP advertisement featuring Mr. Juneau must include a disclaimer indicating either (1) "If you had a loss as a result of the Spill, you may qualify under the Settlement" or (2) "If you were damaged as a result of the Spill, you may qualify under the Settlement." Ex. C (Dec. 14, 2012 Godfrey E-Mail). That same day, Class Counsel (Mr. Roy) responded with the following counterproposal: **"Damages must be as a result of the Deepwater Horizon Incident as provided in Deepwater Horizon Economic and Property Damages Settlement Agreement."** Ex. D (Dec. 14, 2012 Roy E-Mail). Mr. Roy explained that "This should capture your concern about 1.3.1.2,[1] yet not do violence to our belief that the BEL right to collect under the settlement is subject to causation test in the Settlement Agreement that are mechanical, objective, formulaic — not subject to alternate cause analysis, not subjective— state of mind or otherwise." *Id.*

9. On December 15, 2012, I responded that the proposed language[2] was "acceptable to us as a means of avoiding the burden and expense of requiring Mr. Juneau to retape the spot… ." Ex. E (Dec. 15, 2012 Godfrey E-Mail).

---

[1]     Paragraph 1.3.1.2, importantly, is the paragraph of the Class Definition upon which BP's objections were in part based. *See* Settlement Agreement (Rec. Doc. 6430-1) ¶ 1.3.1.2 ("Economic Damage Category. Loss of income, earnings or profits suffered by Natural Persons or Entities as a result of the **DEEPWATER HORIZON INCIDENT**, subject to certain Exclusions.").

[2]     The proposed language to which I was referring was as follows: **"Damages must be as a result of the Deepwater Horizon Incident as provided in Deepwater Horizon Economic and Property Damages Settlement Agreement."** This was the language contained in Mr. Roy's e-mail of December 14, 2012. *See* Ex. D (Dec. 14, 2012 Roy E-Mail).

10. On December 17, 2012, Class Counsel (Mr. Roy) wrote to Magistrate Judge Shushan to report the parties' agreement with respect to the disclaimer. Ex. F (Dec. 17, 2012 Roy E-Mail). Setting aside the Juneau disclaimer language, however, the parties did not resolve their differences regarding the timing and content of the proposed SIP as a whole.

11. On January 9, 2013, Class Counsel (Mr. Roy) sent the Court a proposed order approving a television advertisement featuring Mr. Juneau and containing the parties' agreed-upon disclaimer language. *See* Ex. G (Jan. 9, 2013 Roy E-Mail) (attachment omitted). That language was: **"Damages must be as a result of the Deepwater Horizon Incident as provided in Deepwater Horizon Economic and Property Damages Settlement Agreement."** Ex. D (Dec. 14, 2012 Roy E-Mail). The Court did not rule or enter the order approving the advertisement.

12. On January 30, 2013, Class Counsel (Mr. Barr) sent the Court its most recent revised proposed plan for the SIP. *See* Ex. H (Jan. 30 Barr E-mail) (attachments omitted). On February 15, 2013, I wrote to Judge Shushan concerning this draft and objecting on BP's behalf to the proposed SIP once again. Ex. I (Feb. 15, 2013 Godfrey Letter) at 1. As I explained, the SIP suffered from several fundamental problems:

- "*First*, the SIP deviates materially from the contents of the Class Notice. The SIP divorces, almost entirely, claimed damages from any causal nexus with the Deepwater Horizon Oil Spill. That is inappropriate, confusing and misleading — and also contrary to the express terms of the parties' Settlement Agreement." *Id.* at 1.

- "*Second*, the SIP targets individuals and businesses in certain specific areas — areas where there is low likelihood of any damages at all, much less causal damages arising from the oil spill." *Id.* at 2.

- "*Last*, the SIP improperly suggests that all listeners and recipients of SIP communications are members of the defined Class, regardless of the class definition and, in many instances, contrary to the class definition." *Id.*

5

- "Moreover, the invasive outreach proposed by Class Counsel is misguided, as it would inevitably create unrealistic expectations among those who are contacted and encouraged to file a claim. Claims only should be filed by those who believe and attest that they have suffered a loss caused by the oil spill. That is what the Registration Form and Claim Form provide. Encouraging people and businesses to file claims to see whether they can get money under inaccurate pretenses is not appropriate." *Id.* at 4.

- "One of the proposed print advertisements encourages viewers, 'When in doubt, file a claim.' This phrase improperly suggests, without basis, that the viewer most likely is eligible for compensation under the Settlement. It also ignores the requirement that any request for compensation under the Settlement must be causally related to the Deepwater Horizon incident. And, it improperly suggests that a claimant can sign the Registration Form and Claim Form without having a belief and making a sworn attestation that the claim is for losses caused by the Deepwater Horizon Oil Spill. Accordingly, this phrase should not be a part of the SIP." *Id.* at 8 (citation omitted).

13. Class Counsel responded by disagreeing with my February 15 letter on February 19. *See* Ex. J (Feb. 19, 2013 Class Counsel Letter). BP considered the matter already fully submitted and did not respond further.

14. Because the matter had been fully briefed, Class Counsel (Mr. Barr) wrote to the Court on March 6, 2013, to advise the Court that "the issue is ready for determination." Ex. K (Mar. 6, 2013 Barr E-Mail). To date, the Court has not approved the SIP.

_____
Richard C. Godfrey

Dated: November 20, 2013