# Exhibit J

TO:        Honorable Sally Shushan

FROM:      Class Counsel

Matter:    *In re: Deepwater Horizon*, MDL No. 2179

Subject:   **Supplemental Information Program**

Date:      **February 19, 2013**
_____

      Through this memorandum, Class Counsel provides its responses to BP's comments, concerns and objections to Class Counsel's proposed plan for the Supplemental Information Program.  Keeping in mind that BP does not have the right to approve the Program and is only allowed to review and comment, Class Counsel continues to believe that the proposed Supplemental Information Program is "consistent with the goals of the Economic Class Action Settlement Notice Program" and should be approved.

      BP's comments and objections completely ignore the fact that:

- The entire purpose and intent of the Supplemental Information Program was and is to motivate potentially eligible people and businesses to submit claims;
- There is nothing "misleading" about encouraging a business that may be eligible for payment to submit a claim;
- There is nothing "fraudulent" about a business who meets the objective criteria set forth in the Business Economic Loss Causation and Compensation Framework submitting a claim;
- The only reason Class Counsel agreed to the "disclaimer" on the television advisory which had been scripted by and recorded by Mr. Juneau was to expedite approval and to avoid having to potentially re-shoot the spot; Class Counsel never agreed with BP that the "disclaimer" was in any way necessary.

A.   **Supplemental Information Program Should Not Be Deferred**

    1. <u>BP's Comment</u>:  The Supplemental Information Program Should be Deferred until such Time as the BEL Framework Dispute is Resolved

    2. <u>Class Counsel's Response</u>:  The Supplemental Information Program and the BEL Framework Dispute are Not Related and the Supplemental Information Program Should Not be Deferred

The dispute surrounding the implementation of Exhibit 4C (which also impacts 4A and 4B) has no bearing on the Supplemental Information Program. While Class Counsel believes that BP is attempting to re-write the settlement agreement through its proposals, the dispute itself is not about the types of businesses eligible to file claims for compensation in the Settlement Program. That dispute pertains primarily to the methodology for making calculations under the settlement agreement. In contrast, each of the business types highlighted in the Supplemental Information Program is unquestionably eligible to file a claim. These are not excluded businesses. Whether these businesses meet the objective causation test and qualify for compensation will depend on the respective financial statements for that business and the manner of calculation; however, there is no question they are eligible to file and have that determination made by the Program. This is the exact message of the Supplemental Information Program: If in doubt, file a claim.

**B.   BP Overstates the Agreement with Class Counsel on the Script from Mr. Juneau**

1. BP Comment: The Disclaimer Agreed to for the Juneau Spot Should be Included in All Supplemental Information Program Spots

2. Class Counsel Response: Class Counsel Did Not Agree to Include the Disclaimer in All Supplemental Information Program Spots and Only Agreed to Include the Disclaimer in the Juneau Spot for specific and particularized reasons. Further, the disclaimer, as requested by BP, could mislead class members into believing they are not eligible to file claims.

BP overstates the agreement with Class Counsel pertaining to the advertisement recorded by Mr. Juneau. Class Counsel agreed that the ad would refer solely to the deepwaterhorizonsettlement.com website. As Class Counsel understands, the Court determined that the Supplemental Information Program should only reference the Program website, and Class Counsel has made that change in the advertisement. However, the agreement as to the superimposed text ("Damages must be a result of the Deepwater Horizon incident as provided in the Deepwater Horizon Economic and Property Damages Settlement Agreement") was only for the advertisement produced with Mr. Juneau. Class Counsel made such a concession given Mr. Juneau's role in the implementation of the settlement agreement pursuant to Court Order and to expedite approval of the Juneau advertisement without having to inconvenience Mr. Juneau any further. Class Counsel did not and does not agree that the language is necessary or that it "convey[s] the causation requirement for economic loss claims" as suggested by BP.

The causation requirement for economic loss claims is set out in Exhibit 4B and does not require a subjective view of the cause of any class member's loss. The causation requirement is intentionally objective. If a class member meets the objective financial test, that class member suffered damages as a result of the

incident.  Requiring this language in all other supplemental informational pieces could potentially cause eligible class members to believe they do not have claims as part of this settlement.  Given the Class Notice, Final Approval and that BP has gotten a class-wide release from all such businesses, such an impression should be avoided.

**C.    Tbe Proposed Content of Supplemental Information Program Spots and Communications are Accurate and Consistent with the purpose of the Class Notice Plan**

1. <u>BP's Comment</u>:  The Content of the Proposed Spots are Misleading and Could Cause Class Members Who Will Not Ultimately Qualify to File Claims

2. <u>Class Counsel Response</u>:  The Communications Proposed Are Accurate and Consistent with the Class Notice Program.  Further, All Class Members Should Be Informed that they are Eligible to File Claims.  Each Class Member has a Right to Have Its Claim Viewed in the Best Light by the Claims Administrator Based Upon its Financial Information.  Whether the Class Member Ultimately Qualifies for Payment is Not Relevant to the Supplemental Information Program

The proposed Supplemental Information Program is accurate and will not lead to confusion or create unrealistic expectations.  Each piece of the program sets out the basic premise of the settlement; eligibility for all class members is determined by an objective formula (or is presumed).  The Program does not allude to or state any compensation figures to even suggest the level of compensation to which each class member may be entitled.  Instead, the plan simply reinforces the Class Notice in that it informs each and every class member, including those in the furthest points of Zone D, a formula is in place that will determine their eligibility for compensation.  These statements are true and cannot be disputed.  While BP may prefer that these claimants not file claims, its argument that Class Counsel's proposal is inaccurate or confusing is misplaced.

*Written Script for the "Juneau" television spot*

An updated script as requested by BP is attached as Exhibit A.  However, Class Counsel would point out that BP and the Court were provided the actual video of the advertisement.  The requested changes were made in the video, and the video is the means of communication to class members – not the written script.  Still, to cure this harmless error, Class Counsel has attached the revised and updated script.

*The proposed television, radio, and print spots and scripts are accurate as written and do not require a "disclaimer"*

Again, Class Counsel did not agree to include the negotiated language for the Juneau spot into all other advertisements in the Supplemental Information Program. BP's argument to include such language is, in fact, counter to the purpose of the Supplemental Plan. Class Counsel's goal is to reinforce the Class Notice and further stress that causation is an objective requirement established by the standards and formulas of Exhibit 4B. BP now desires to insert a subjective causation requirement as to whether a class member believes their losses were subjectively caused by the incident. BP's suggestion is not consistent with the negotiated settlement and serves only to attempt to minimize the number of class members that file claims. This attempt is untenable in this objective class action settlement – particularly given the class-wide release.

In light of the above, Class Counsel does not believe BP's language should be added to any of the other advertisements. Further, it is not possible to add this language to the radio spots as each of these spots is timed to fit within a specific timeframe.

*All of the statements in the advertisements are accurate and consistent with the known facts and terms of the settlement agreement*

BP's comment as to the "tens of thousands of businesses and organizations may qualify" is without merit. Class Counsel is not required to submit empirical data proving tens of thousands of business may qualify. There is no question that tens of thousands (and more likely hundreds of thousands) of businesses are eligible to file and may qualify. In fact, as of February 11, 2013, over 125,000 claim forms on behalf of businesses and organizations have been submitted.[1] The fact that these claims have been submitted prior to any Supplemental Information Program implies that indeed, "tens of thousands of businesses and organizations may qualify." Thus, the statement at issue is true. Importantly, the statement <u>does not guarantee</u> that any of these businesses will actually qualify. That is not the point of the advertisement. The point is to further reinforce the Class Notice so that these businesses perform, or submit the claim to the Settlement Program so it can perform, the objective causation analysis prescribed in Exhibit 4B. Class Counsel's proposed language should be approved.

BP has also commented that the statement that "BP has agreed that businesses and organizations are eligible for payment from the billions in the Deepwater Horizon Economic Settlement fund" implies that the fund may be limited. Class Counsel proposes the following language to cure this concern as Class Counsel does not intend to imply a limited fund: "BP has agreed that businesses and organizations may be eligible for payment from the Deepwater Horizon Economic

---

[1] See Claims Administrator's Status Report #6, (Feb. 11, 2013).

Settlement Fund.  Even ones not directly on the Gulf.  Find out if you qualify for this uncapped settlement estimated to be worth billions at deepwaterhorizonsettlements.com" Further, Class Counsel is happy to refer to BP's own public estimates of the settlement value should BP wish.

*Class Members should be encouraged to file claims as a default as all class members, even those who do not qualify for payment, have provided BP with a class-wide release.*

BP has focused on the language "when in doubt, file a claim" to argue that class members should not, as a default, file claims with the Program and that such language ignores the causation requirement.  Again, the causation requirement is an objective standard (in a presumed zone with a presumed zone business) or formula.  There is not a subjective, mental impression requirement.  Representing that such a requirement exists misrepresents to class members their rights under the settlement agreement.  BP is attempting to hide the ball.  BP has a class-wide release but does not want class members to file a claim.  Further, the settlement agreement was negotiated and implemented for the exact purpose of allowing class members to file claims as a default.

One of the principal settlement benefits to class members was the requirement that the Program ensure that the maximum amount of recovery is provided to each class member.  A class member is not required to have a detailed knowledge of the intricacies of the causation requirement.  While it was intended that the causation requirement be a simple formula for a class member to understand and determine if he or she is eligible for payment, it is not required that they do so.  Instead, the Settlement Program will calculate the claim *de novo* and ensure that the best case is presented for a class member to be found eligible and to maximize compensation.  In fact, the Claim Form even allows a class member to choose "Claims Administrator Selected" as an option for the Benchmark and Compensation Period.  Thus, the idea that businesses should not default to filing a claim is simply wrong.  Rather, the opposite is true:  if a business is unsure of whether it meets the eligibility requirements, it should be encouraged, as a default, to file a claim.

*BP misunderstands the proposed use of Twitter "Tweets" and the proposed language is accurate and consistent with the purpose of the Class Notice*

BP's first comments as to the use of Twitter reflect a misunderstanding of how Twitter operates.  For that, Class Counsel accepts responsibility.  A Tweet is limited to 140 characters.  The website link referenced in a tweet counts against the 140 character limit.  Thus, displaying www.deepwaterhorizonsettlement.com would require a substantial portion of the 140 character limit.  To overcome this limit, software presently available on the internet, like that provided on tinyurl.com, can take a long website name like the name above and condense it to a much shorter name, like http:/bit.ly/TUuRup.  This allows a Tweet to focus more information on the content of the tweet rather than the website.  However, by clicking on the

website, a user will be directed to the Settlement Program site, www.deepwaterhorizonsettlement.com.  In short, the Settlement Program website is the site linked; however, the appearance on the link has been condensed to fit within the 140 character limit.

Given the 140 character limits, it is not possible to implement BP's suggestions.  Further, BP's suggestions are not necessary as the statements are consistent with the Class Notice and the Settlement Agreement.  Further, the website to which recipients are directed is the Settlement Program website.  It is inconceivable that a simple tweet that directs class members to the Settlement Program site could be misleading or confusing.

*Internet Banner Ads Are Accurate and Not Misleading*

Most of BP's comments and suggestions are repeats of its comments and objections on other portions of the Supplemental Information Program and are addressed above.  However, BP has pointed out that the Google banner ads state "qualify for a settlement from BP" and complains that this is factually misleading.  The intent with this language was to use plain English that all class members clearly comprehend.  While most class members may understand the term "compensation," the term "settlement" is certainly better understood and also implies the legal nature of this proceeding.  To satisfy BP's comment, Class Counsel could edit the "qualify for a settlement from BP" language to "qualify for payment from BP" or possibly "qualify for payment under the BP Settlement."  Nearly all of the other BP comments have been addressed in detail above or are not possible within the limited space of an internet banner ad.  Again, the ad clicks straight through to the Settlement Program website and is designed to capture attention in keeping with the primary purpose of the Supplemental Information Program.  Class Counsel's proposal satisfies that purpose and is consistent with the Class Notice program.

*Proposed Direct Call Program*

Most of BP's comments as to the proposed direct call program are, again, without merit.  For instance, BP questions how Class Counsel would identify which businesses are in the class.  Class Counsel has the ability, as BP is fully aware given the Class Notice and requirements of a class action, to determine which businesses are in the class.  Perhaps, BP intended something else but such a statement seems particularly odd in the present context of a finally approved settlement of an identifiable class.

Further, as set out above, the inaccuracies BP states regarding the script are meritless.  Still, Class Counsel understands BP's concerns and comments regarding the Direct Call Program and would like to attempt to resolve these issues with BP.  In that light, Class Counsel proposes that it be allowed to further work with BP to refine the Direct Call Program.  Notably, the entirety of the other components of the Supplemental Information Program can stand on their own and should be approved.

If BP and Class Counsel are able to reach agreement on the Direct Call Program, Class Counsel will submit such agreement to the Court for approval.

**D.     Class Counsel has Provided Sufficient Detail to BP to Meaningfully Comment on the Supplemental Information Program**

1. <u>BP's Comment</u>:  Class Counsel Has Not Provided Enough Detail to Meaningfully Comment on the Details of the Proposed Settlement Program

2. <u>Class Counsel Response</u>:  Class Counsel has Provided Sufficient Detail to Allow BP to Exercise its Rights Under the Settlement Agreement to Comment on the Proposed Supplemental Information Program.

BP has misunderstood some of the statements in Class Counsel's memo describing the Supplemental Information Plan.  As a further explanation, Class Counsel's comment on the radio scripts – particularly the language that sets out the scripts are "exemplars of the audio that would run" is not an indication that Class Counsel intends to change the scripts outside of the manner described in the settlement agreement.  The statement simply conveys that Class Counsel intends to have radio spots that highlight different businesses that may qualify.  The only edit would be to the business type.  No other language would change.  As the business types that are eligible to file a claim are readily ascertainable and not objectionable, BP's concern is baseless.  To be clear, there would be no wholesale re-write of the radio script without allowing BP to comment and submitting to the Court for approval.  Class Counsel fully understands its obligations under the settlement agreement.

As to social media, BP misunderstands Class Counsel's comment on a "customized web experience."  The banner ads, tweets and other social media set out in the plan would not change.  The "customized web experience" was simply a description of the everyday use of the internet.  Any user of the internet has a somewhat customized experience.  The banner ads seen on pages visited are different for different internet users based upon searches performed and websites visited as determined by cookies and other information.  This information is stored on each internet user's computer and internet banner ads that should interest the specific internet user based upon information on their computer will appear on pages visited.  This is all that was meant by the customized web experience.

Class Counsel is unsure of any other additional detail it can provide BP.  BP has been provided, for some time now, the scripts, actual spots, banner ads, print ads, budgets, buys, proposed tweets and all other components of the supplemental program.  BP's statement that it has not received enough information to allow a

meaningful review is without merit.[2]  Many of BP's suggestions are factually inaccurate and serve as an attempt to depress the number of claims filed.  Class Counsel's purpose is simple.  To reinforce the idea that all businesses and individuals, other than excluded businesses and individuals, may qualify for payment in all areas of the Class.  The Supplemental Information Plan proposed by Class Counsel meets that goal in a manner that accurately depicts the settlement agreement and is consistent with Class Notice.

       The proposed Supplemental Information Program is accurate and consistent with the purpose of the Class Notice Program.  As such, it should be approved as proposed by Class Counsel with the exception of the Direct Call Program – which Class Counsel is willing to discuss further with BP.

---

[2] For instance, in its memo BP parenthetically refers to the Juneau ad being shot prior to BP's review of the script.  See BP Memo at 3.  Any implication that Class Counsel somehow orchestrated anything underhanded in the production of this ad is incorrect.  As explained repeatedly by Class Counsel, the timing of the shoot was done at Mr. Juneau's request, out of courtesy to his schedule and availability, and the ad that was cut was entirely based upon a script Mr. Juneau personally helped write and approve.