UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION J |
| | * | |
| | * | JUDGE BARBIER |
| Applies To: | * | |
| All Cases and 12-970 | * | MAG. JUDGE SHUSHAN |

**ORDER**
[Amending and Clarifying the Court's Order of Nov. 15, 2013 (Rec. Doc. 11857), Denying BP's Motion to Amend Scheduling Order re BEL Remand and Preliminary Injunction Relating to BEL Claims]

Before the Court is BP's Motion to Amend Scheduling Order re BEL Remand and Preliminary Injunction Relating to BEL Claims [Rec. Doc. 11819], as well as the Court's Order of November 15, 2013 [Rec. Doc. 11857], which denied BP's motion. The Court hereby amends its November 15, 2013 Order to provide its reasons for denying BP's motion, which are set forth below.

**Background**

On October 2, 2013, in Docket No. 13-30315, a panel of the Fifth Circuit remanded to this Court for taking of additional evidence and reconsideration of what it found to be certain ambiguous provisions of the Settlement Agreement dealing with Business Economic Loss ("BEL") claims. The Fifth Circuit also directed this Court to issue a "narrowly tailored" preliminary injunction pending its deliberate reconsideration of the BEL issue. In response, on October 3, 2013, this Court issued an interim order staying certain BEL claims, and invited the parties to submit proposals for a formal preliminary injunction order. On October 18, 2013, the Court issued a preliminary injunction order enjoining the Claims Administrator from paying or processing certain BEL claims pending

1

resolution of the remand proceedings.  [Rec. Doc. 11697]  Despite the Court's October 18, 2013 Order confirming that "the issue of how causation is determined was not before the Fifth Circuit in the recent BEL appeal" and "Exhibit 4B of the Settlement Agreement is not before the undersigned on remand,"[1] BP nevertheless filed a Motion to Amend Scheduling Order re BEL Remand and Preliminary Injunction Relating to BEL Claims on November 7, 2013, requesting the Court to consider evidence regarding the "causal-nexus issue" and to amend the preliminary injunction to enjoin the Claims Administrator and the Settlement Program from paying any BEL claim unless the Claims Administrator has determined an "actual causal connection" between a claimant's loss and the Oil Spill.  [Rec. Doc. 11819 and 11819-1 at 2]  Class Counsel filed an opposition, followed by a reply by BP and a sur-reply by Class Counsel.  The Court issued a short order denying BP's attempt to inject the issue of causation into the pending remand proceedings.  [Rec. Doc. 11857]  Although the BEL issue is presently unresolved and pending before this Court following remand from the Fifth Circuit, BP has now filed a Notice of Appeal [Rec. Doc. 11879] seeking an "emergency appeal" to the Fifth Circuit, and asking that this new appeal be consolidated with the pending BEL appeal in Docket No. 13-30315.  At the same time, BP has made another document dump into the record of this case, without leave of court and apparently without consulting with opposing counsel.  [Rec. Doc. 11876]

While the Court has previously stated that the issue of causation is not before it on remand, certain of BP's assertions in its motion and supporting memoranda should be addressed.  In its filing, BP accuses the Claims Administrator of "rewrit[ing]" and "systematically disregard[ing]" the Settlement Agreement's class definition and "misreading Exhibit 4B" by paying claimants "for losses

---

[1] The Court repeated these statements when it issued the Scheduling Order Regarding the BEL Remand on October 25, 2013.  [Rec. Doc. 11735 at 1 n.1]

that a reasonable observer might conclude were not in any way related to the Oil Spill." [Rec. Doc. 11819-1 at 1-2, 11-12]  Indeed, in what is, frankly, a startling reversal of its prior submissions and statements to this Court, BP asserts that "when the Administrator is confronted with evidence that the loss is not traceable to the Spill, Exhibit 4B does not tell him to ignore that evidence." [Rec. Doc. 11819-1 at 18-19]  BP's new position, however, is at odds with the Settlement Agreement's language and BP's prior statements and submissions regarding the proper interpretation and implementation of Exhibit 4B.  Moreover, BP's accusations against Mr. Juneau and the Settlement Program are unwarranted.  With respect to the issue of alternative causation, Mr. Juneau and the Settlement Program have acted in accordance with the terms of the Settlement Agreement and the Claim Administrator's October 10, 2012 formal policy announcement [Rec. Doc. 9089-1, Ex. A-5], which policy was enacted *with the specific guidance* and *confirmation of BP* and later confirmed by the Court.

BP argues that the Settlement Agreement and Rule 23 require that only claims that are "traceable to the oil spill" be paid.  Of course, the whole point of the class settlement was to resolve claims of persons who allege they have suffered economic losses attributable to the oil spill. But, in a class settlement, the parties agreed on an objective and specific method of proving whether or not a loss was caused by the oil spill.  In the context of a class-wide settlement program, involving claims by tens of thousands of claimants, it would be infeasible to expect or require every claimant to prove actual, or factual, causation.  Doing so would require thousands of individual trials of causation, defeating the whole purpose and intent of a class settlement.[2]

---

[2] On a related note, the Oil Pollution Act of 1990 ("OPA") would apply to most, if not all, of these claims were they to be litigated, yet there is a dearth of jurisprudence interpreting causation under that Act. OPA broadened the scope of persons able to recover economic losses resulting from an oil spill, in part by removing the "physical injury" bright line that exists under general maritime law. [*See* Order of August 26, 2011, Rec. Doc. 3830 at 19-21, 32-33] This Court

Instead, pursuant to terms of the Settlement Agreement, BP and Class Counsel agreed that whether a claimant experienced an injury "due to or resulting from" the Oil Spill would be determined by a specific and stipulated method of proof, i.e., the objective criteria set forth in the Causation Framework contained in Exhibit 4B.[3]  For certain types of businesses located in certain areas, the parties agreed that there would be no causation requirement; losses for those businesses were presumed to be caused by the oil spill.[4]  For other businesses, the causation requirements vary depending upon the geographic zone (A thru D) and depending upon the ability to demonstrate a particular "V", modified "V", or "U" curve as evidence of a decline and recovery in revenue during a specified period immediately following the oil spill. A claimant must meet these causation requirements in order to have a viable claim.

### BP's Previous Statements and Admissions re Causation Requirements

On several occasions BP confirmed the Parties' mutual intent and understanding that alternative causes of a claimant's alleged damages *would not* be analyzed separately by the Claims Administrator.  For example, in its August 13, 2012 Memorandum in Support of its Motion for Final Settlement Approval, BP quoted its expert, Holly Sharp, who stated:

> once a business meets the causation requirements, for purposes of quantifying compensation, all revenue and variable profit declines during the claimant-selected

---

previously commented that OPA causation may lie somewhere between traditional "proximate cause" and simple "but for" causation. [*Id.* at 33]  The parties' negotiations occurred in the context of this uncertainty in the law.  As explained in the next paragraph, the Settlement Agreement reflects the parties' decision to resolve this issue through compromise, rather than litigation.

[3] Specifically, Section 5.3.2.3 sets forth the "Causation Requirements For Business Economic Loss Claims" as follows: "Business Economic Loss Claimants, unless causation is presumed, must establish that their loss was due to or resulting from the Deepwater Horizon Incident. The causation requirements for such Claims are set forth in Exhibit 4B."

[4] For example, Exhibit 4B(I)(4) provides, "If you are in Zone A or Zone B, and you meet the 'Tourism Definition,' you are not required to provide any evidence of causation."

> compensation period are presumed to be caused by the spill, *with no analysis required to determine whether the declines might have been due, at least in part, to other causes.*

[*See* Rec. Doc. 7114-1 at 33 (emphasis added)]  Moreover, after the Program's accountants began reviewing and evaluating actual claims in September of 2012, the Claims Administrator's Office approached both Parties (BP and Class Counsel) to clarify whether the Parties truly intended that the Program would apply only the purely objective formulae of Exhibits 4B and 4C to determine whether and how much a claimant could recover.  On September 25, 2012, the Claims Administrator's Office set forth the following query in an email sent to both Parties:

> As to BEL claims, once a claimant's financial records satisfy the causation standards set out in Exhibit 4B, does the Settlement Agreement mandate and/or allow the Claims Administrator to separate out losses attributable to the oil spill vs. those that are not?  Stated another way, once a claimant passes the causation threshold, is the claimant entitled to recovery of all losses as per the formula set out in Exhibit 4C, or is some consideration to be given so as to exclude those losses clearly unrelated to the spill?
>
> I will give a hypothetical situation to try to illustrate the question we are asking:
>
> Hypo:  A small accounting corporation / firm is located in Zone B.  They meet the "V-shaped curve" causation test.  The explanation for the drop in revenue is that one of the three partners went out on medical leave right around the time of the spill.  Their work output and corresponding income, thus went down by about a third.  The income went back up 6 months later when the missing partner returned from medical leave.  Applying the compensation formula under Exhibit 4C of the Settlement Agreement, the accounting firm can calculate a fairly substantial loss. Is that full loss recoverable?

[Rec. Doc. 9089-1, Ex. A-2]  BP's attorneys unambiguously confirmed BP's position that the claimant in the posed hypothetical would be entitled to full recovery.  A letter from Mark Holstein (Managing Counsel, Litigation for BP America, Inc.) dated September 28, 2012, stated:

> If the accurate financial data establish that the claimant satisfies the BEL causation requirement, then all losses calculated in accord with Exhibit 4C are presumed to be attributable to the Oil Spill.

5

> Nothing in the BEL Causation Framework (Ex. 4B) or Compensation Framework (Ex. 4C) provides for an offset where the claimant's firm's revenue decline (and recovery, if applicable) satisfies the causation test but extraneous non-financial data indicates that the decline was attributable to a factor wholly unrelated to the Oil Spill. Such "false positives" are an inevitable concomitant of an objective quantitative, data-based test.

[Rec. Doc. 9089-1, Ex. A-4, p.2-3] Relying on this response, the Claims Administrator issued a Policy Announcement on October 10, 2012, which stated in part:

> **2. No Analysis of Alternative Causes of Economic Losses.**
> The Settlement Agreement represents the Parties' negotiated agreement on the criteria to be used in establishing causation. The Settlement Agreement sets out specific criteria that must be satisfied in order for a claimant to establish causation. Once causation is established, the Settlement Agreement further provides specific formulae by which compensation is to be measured. All such matters are negotiated terms that are an integral part of the Settlement Agreement. The Settlement Agreement does not contemplate that the Claims Administrator will undertake additional analysis of causation issues beyond those criteria that are specifically set out in the Settlement Agreement. Both Class Counsel and BP have in response to the Claims Administrator's inquiry confirmed that this is in fact a correct statement of their intent and of the terms of the Settlement Agreement. The Claims Administrator will thus compensate eligible Business Economic Loss and Individual Economic Loss claimants for all losses payable under the terms of the Economic Loss frameworks in the Settlement Agreement, without regard to whether such losses resulted or may have resulted from a cause other than the Deepwater Horizon oil spill provided such claimants have satisfied the specific causation requirements set out in the Settlement Agreement. Further, the Claims Administrator will not evaluate potential alternative causes of the claimant's economic injury, other than the analysis required by Exhibit 8A of whether an Individual Economic Loss claimant was terminated from a Claiming Job for cause.

[Rec. Doc. 9089-1, Ex. A-5, p. 2-3] BP did not object to this Policy Announcement, and on December 12, 2012, the Parties appeared before the Court and directly confirmed their agreement with the Claims Administrator's Policy Announcement. That confirmation was memorialized in an email from the undersigned to the Parties on the same date.[5] [Rec. Doc. 9089-1, Ex. A-6]

---

[5] The Court's email to the Parties on December 12, 2012 stated: "Counsel for BP and the PSC agree with the Claims Administrator's objective analysis of causation with respect to his evaluation of economic damages Claims, as previously set forth by Mr. Juneau in paragraph 2 of his October 10,2012 policy announcement." [Rec. Doc. 9089-1, Ex.

During the Final Fairness Hearing before this Court on November 8, 2012, Richard Godfrey, the lead attorney and negotiator for BP, in advocating for the approval of the settlement, made the following comments regarding the causation requirements:

> We have presumed causation in Zone A. We've presumed causation. It's irrebuttable. You know as well as I do, Your Honor, how many people come in and think they have got a claim damage for economic loss; but, when the facts come out, they had a bad year because they lost their key manager, they had a bad year because the street was being repaired in front of them, whatever reason.
>
> We're presuming causation for whole sections of the settlement class depending on where you reside and the nature of your business. Our experts say, the joint experts, it exceeds the *Reed* factor."

[Rec. Doc. 7892 at 68]

BP's understanding of Exhibit 4B and its link to the Class Definition was again confirmed when the Parties appeared before the Fifth Circuit Court of Appeals in Case No. 13-30315 on July 8, 2013. During the oral argument, when asked about causation, Ted Olson on behalf of BP stated:

> This is a settlement, and with respect to the causation issue, that is not the issue that is before this court. . . . *The settlement agreement with respect to 4B as to causation provided a mechanism which allowed someone to come through the door to be then entitled to prove the amount of actual lost profits.* It was a compromise, which every settlement agreement is, with respect to causation issues. . . .

[*See* Unofficial Transcript of Hearing before U.S. Fifth Circuit Court of Appeals in Case No. 13-30315 at 11, Rec. Doc. 11826-2 (emphasis added)]

### The Fifth Circuit Recognized That BP's Appeal Was About Loss Measurement, Not Causation

The issue before the Fifth Circuit on appeal was how economic loss is measured under the provisions of Exhibit 4C. The primary question was whether there is a requirement that "variable

---

A-6]

7

expenses" be matched to the revenues produced by those expenses, in order to calculate "variable profit." Part I of the majority opinion by Judge Clement,[6] joined by Judge Southwick, was concerned that if, based on the manner in which the claimant maintained his or her financial records, this so-called "matching" inherently occurred for certain claims but not for others, then similarly-situated claimants would be treated differently and, moreover, some claimants might receive compensation without having an actual loss. While the calculation or measurement of economic loss is measured under Exhibit 4C, the separate causation requirements for BEL claimants are set forth in Exhibit 4B, discussed above. All BEL claimants must meet these requirements in order to be eligible for compensation.

However, the issue of how causation is determined under Exhibit 4B was not before the Fifth Circuit in the recent BEL appeal. This is evident from the following passages from the majority and concurring opinions.

In the Fifth Circuit opinion, Judge Clement states:

> BP did agree that alternative causes of losses were irrelevant if the financial figures supported that a loss occurred. The false positives BP criticizes *now* are based on loss calculations produced under the district court's cash-in, cash-out approach. . . . [T]he issue is whether it is permissible to allow the often economically meaningless temporal coinciding of cash received and paid to determine the value of a claim.

Slip op. at 21 (emphasis added). Judge Southwick also recognizes that causation was agreed to by the parties:

> If a BEL claimant could prove an economic loss, properly measured, that proof substituted for evidence of causation. Improper measurement of losses under Exhibit 4C might compensate claimants without actual losses. . . . Even so, the parties

---

[6]There are three separate opinions, including the partial majority opinion by Judge Clement, the concurring opinion by Judge Southwick, and the dissenting opinion by Judge Dennis. For purposes of the remand, the parties and the Court agreed that Judge Southwick's concurring opinion is controlling.

8

> agreed by Exhibit 4B's causation framework to ignore alternative explanations for actual losses that occurred to claimants during the proper time period. The agreement simplified the claims process by making proof of loss a substitute for proof of factual causation.

*Id.* at 37-38. Judge Southwick further points out that "[n]o one on appeal is challenging Exhibit 4B."

*Id.* at 39. Finally, Judge Southwick distinguishes causation from the measurement of a claimant's loss and makes clear the purpose of the remand to this Court:

> Part I of the panel opinion identifies the crucial question for remand: Should matching be required for *all* claims when it is clearly required for many? I agree to remand with instructions to reconsider the interpretation of Exhibit 4C for unmatched claims in light of the necessity of revenue and expense matching to realistic measurement of economic loss.

*Id.* at 38.

"Causation" was before the Fifth Circuit only in the very narrow sense that an improper calculation under Exhibit 4*C* might result in a claimant who suffered no loss receiving compensation. Per Judge Southwick:

> Improper measurement of losses under Exhibit 4C might compensate claimants without actual losses. That potential raises the causation question in the sense that a party who suffered no loss regardless of cause certainly did not have a loss caused by the oil spill.

*Id.* at 37.

Accordingly, the Court reiterates that, as the record reflects (and despite BP's recent filings), Exhibit 4B and the issue of causation was not before the Fifth Circuit in Docket No. 13-30315 and is not before the undersigned on remand. Rather, what is before the Court is the measurement of a claimant's loss under Exhibit 4C.

**Certification Under Rule 23 Was Not an Issue on This Appeal**

Part II of Judge Clement's panel opinion was not joined by either of the other two panelists. That part of the opinion, which discusses requirements for Article III standing and certification under Rule 23, is therefore not controlling as to the issues before this Court on remand. The questions of class certification and the approval of the settlement are the subjects of a separate pending appeal before a different panel of the Fifth Circuit (5th Cir. Dkt. no. 13-30095). It is unclear to the undersigned what standing BP has to raise arguments against class certification or the fairness of the class settlement. BP was a party to the settlement, helped to draft the Settlement Agreement, did not object to or appeal either class certification or approval of the settlement, and in fact strenuously advocated for approval of the settlement. Notably, the Settlement Agreement itself requires the parties to the Agreement, including BP, to "support the final approval and implementation of this Agreement and defend it against objections, appeal or collateral attack." [Settlement Agreement § 17.1, p.81, Rec. Doc. 6430-1] Nonetheless, and despite being only an appellee, BP has made written and oral arguments against its own Settlement Agreement.

**Conclusion**

BP accuses the Claims Administrator of "rewriting" and "systematically disregarding" the Settlement Agreement. To the contrary, when it talks about causation, if anyone is attempting to rewrite or disregard the unambiguous terms of the Settlement Agreement, it is counsel for BP.

Frankly, it is surprising that the same counsel who represented BP during the settlement negotiations, participated in drafting the final Settlement Agreement, and then strenuously advocated for approval of the settlement before this Court, now come to this Court and the Fifth Circuit and contradict everything they have previously done or said on this issue. Such actions are deeply

disappointing, especially considering that the Court has previously appreciated and complimented the excellent cooperation and professionalism exhibited by all counsel in this extremely complex and difficult litigation.  In any event, the undersigned is certain that causation is not an issue before this Court, and will not consider any pleadings requesting that it be made a subject of re-evaluation.

Accordingly, for these reasons, BP's Motion to Amend Scheduling Order re BEL Remand and Preliminary Injunction Relating to BEL Claims [Rec. Doc. 11819] is DENIED.

This Court will continue to complete the pending remand proceedings as expeditiously as possible.

Signed in New Orleans, Louisiana, this 22nd day of November, 2013.

_____
United States District Court