

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: Oil Spill by the Oil Rig        MDL NO. 2179
      "Deepwater Horizon" in the Gulf
      of Mexico, on April 20, 2010        SECTION J

Applies to: *All Cases*        JUDGE BARBIER
       MAGISTRATE JUDGE SHUSHAN

---

**REPORT BY THE CLAIMS ADMINISTRATOR OF THE DEEPWATER HORIZON ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT ON THE STATUS OF CLAIMS REVIEW**

| STATUS REPORT NO. | 15 | DATE | November 25, 2013 |
|---|---|---|---|

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In re:  **Oil Spill by the Oil Rig**                **MDL NO. 2179**
**"Deepwater Horizon" in the Gulf**
**of Mexico, on April 20, 2012**             **SECTION J**

Applies to: *All Cases*                        **JUDGE BARBIER**
**MAGISTRATE JUDGE SHUSHAN**

<u>**REPORT BY THE CLAIMS ADMINISTRATOR OF THE DEEPWATER HORIZON**
**ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT ON THE**
**STATUS OF CLAIMS REVIEW**</u>

<u>**STATUS REPORT NO. 15, DATED NOVEMBER 25, 2013**</u>

The Claims Administrator of the Deepwater Horizon Economic and Property Settlement

Agreement (the "Settlement Agreement") submits this Report to inform the Court of the status of

the implementation of the Settlement Agreement as of November 10, 2013.  The Claims

Administrator will provide any other information in addition to this Report as requested by the

Court.

I.      STATUS OF THE CLAIMS REVIEW PROCESSES AND CLAIM PAYMENTS

A.  <u>**Claim Submissions**</u>.

1.  **Registration and Claim Forms.**

The Claims Administrator opened the Settlement Program with needed functions staffed

and operating on June 4, 2012, just over 30 days after the Claims Administrator's appointment.

The Claims Administrator's Office has received 194,191 Registration Forms and 234,737 Claim

Forms since the Program opened, as shown in the Public Statistics for the Deepwater Horizon

Economic and Property Damages Settlement ("Public Report") attached as Exhibit A.

Additionally, claimants have begun but not fully completed and submitted 12,619 Claim Forms.

The Forms are available online, in hard copy, or at Claimant Assistance Centers located

throughout the Gulf.  Of the total Claim Forms submitted and Claim Forms begun but not fully completed and submitted, 10% of claimants filed or are filing within the Seafood Program, 17% filed or are filing Individual Economic Loss (IEL) Claims, and 37% filed or are filing Business Economic Loss (BEL) Claims (including Start-up and Failed BEL Claims).  *See* Ex. A, Table 2. Deepwater Horizon (DWH) staff at the Claimant Assistance Centers assisted in starting and/or completing 35,361 of these Claim Forms.  *See* Ex. A, Table 3.  The thirteen Claimant Assistance Centers[1] also provide other forms, including Personal Representative Forms, Subsistence Interview Forms, and Sworn Written Statements and Authorizations.

### 2.  Minors, Incompetents, and Deceased Claimants.

The table below describes the claims filed on behalf of minors, incompetents, and deceased claimants in the Settlement Program.

| | Table 1.  Minors, Incompetents, and Deceased Claimants | | | | | |
|---|---|---|---|---|---|---|
| | | Minor Claimants | | Incompetent Claimants | | Deceased Claimants | |
| | | Total | Change Since Last Report | Total | Change Since Last Report | Total | Change Since Last Report |
| 1. | Claims Filed | 56 | +2 | 84 | +2 | 324 | +24 |
| 2. | Claims Within GADL Review | 1 | -4 | 1 | -2 | N/A | N/A |
| 3. | Eligible for Payment | 10 | 0 | 47 | +2 | 164 | +12 |
| 4. | Approval Orders Filed | 8 | 0 | 41 | +2 | 137 | +10 |

### 3.  Third Party Claims.

The Claims Administrator's Office (CAO) receives, processes, and pays the claims and/or liens asserted by attorneys, creditors, governmental agencies, or other third parties against the payments to be made by the CAO to eligible claimants under the Settlement Agreement

---

[1] The Claims Administrator reduced the number of Claimant Assistance Center locations from eighteen to thirteen on October 15, 2013.

("Third Party Claims") in accordance with Court Approved Procedure Order No. 1 (as entered September 9, 2012, and amended March 11, 2013).

The CAO requires a third party claimant to submit enforcement documentation soon after the initial Third Party Claim assertion, and the CAO notifies the claimant about an Enforced Third Party Claim against a potential Settlement Payment as soon as the CAO receives sufficient documentation, regardless of where the underlying Settlement Program Claim is in the review process. The claimant may, but does not have to, object to the Third Party Claim at this time. After the CAO sends an Eligibility Notice to the affected Settlement Program Claimant against whom an Enforced Lien has been asserted (meaning that the underlying claim and the Third Party Claim are payable), the CAO sends the claimant/claimant's attorney and the third party claimant a Notice of Valid Third Party Claim and provide the claimant twenty (20) days to notify the CAO of any objection to the Third Party Claim. Any disputes over Third Party Claims must be resolved by agreement of the parties or through a dispute resolution process.

The CAO sends a Notice of Third Party Claim Dispute to all parties involved in a disputed Valid Third Party Claim. If the claimant and third party claimant are unable to resolve their dispute by agreement and if the dispute is over a Third Party Claim for attorney fees or fees associated with work performed in connection with a Settlement Program claim, the claimant and third party claimant may participate in the Third Party Claims Dispute Resolution Process and will receive a Request for Third Party Claim Dispute Resolution Form with the Notice of Third Party Claim Dispute. To date, the CAO has sent approximately 100 Notices of Third Party Claim Dispute to parties with eligible disputes to notify them that they may submit a Request Form if they are unable to resolve their dispute by agreement. Parties have submitted Request Forms for approximately one-third (1/3) of these eligible disputes.

The CAO continues to process and pay Third Party Claims as reflected in Table 2 below.

| | Table 2.  Third Party Claims | | | | | | |
|---|---|---|---|---|---|---|---|
| | Type of Third Party Claim ("TPC") | TPCs Asserted | TPCs Asserted Against Claimants With a DHCC ID | TPCs[2] Asserted Against Payable Claims | Valid TPCs Asserted Against Payable Claims | TPCs Paid/ Ready for Payment (TPClmt) | Claims with TPCs Paid/ Ready for Payment (Clmt) |
| 1. | Attorney's Fees | 2,019 | 1,823 | 397 | 230 | 149 | 493 |
| 2. | IRS Levies | 563 | 527 | 57 | 57 | 57 | 73 |
| 3. | Individual Domestic Support Obligations | 477 | 356 | 96 | 78 | 71 | 84 |
| 4. | Blanket State-Asserted Multiple Domestic Support Obligations | 4 states | N/A | N/A | N/A | 0 | 0 |
| 5. | 3rd Party Lien/Writ of Garnishment | 825 | 495 | 18 | 11 | 3 | 6 |
| 6. | Claims Preparation/ Accounting | 3,962 | 3,770 | 42 | 21 | 8 | 14 |
| 7. | TOTAL | 7,846 | 6,971 | 610 | 397 | 288 | 670[3] |

To date, the CAO has removed 1,442 lien holds due to parties releasing their claims or resolving disputes.[4]

**B.  Claims Review.**

The CAO completed its first reviews and issued its first outcome notices on July 15, 2012, and Payments on July 31, 2012.  There are many steps involved in reviewing a claim so that it is ready for a notice.

---

[2] Although the CAO will not know if a Valid TPC is asserted against a payable claim until the Eligibility Notice goes out, the streamlined enforcement requirements allow the CAO to assess validity earlier in the process.

[3] If the TPC amount is in dispute, the CAO pays the claimant the undisputed portion of the Settlement Payment.  A TPC can be asserted against one or more Settlement Program Claims.  For these reasons, this total may not be equal to the total of the two preceding columns.

[4]  This number may fluctuate due to reassertions of released or disallowed liens.

## 1.   Identity Verification.

The Tax Identity Number (TIN) verification review is the first step in the DWH claims review process.  The Claimant Identity Team has initiated verifications for 167,411 claimants. Of those, the CAO matched the TIN and claimant's name to public records databases and verified identity for 91,399 claimants from the initial query through LexisNexis and/or Dun & Bradstreet.  Initially, 71,721 claimants' information could not be matched to the public records databases.  The CAO reviewed these claims to determine if it could identify name changes or typographical errors and re-queried these claims through public searches to resolve 56,135 claimants' records and to verify their identities.

After this initial review, the CAO was still unable to match 15,586 claimants' data to public records databases and issued Notices to these claimants requesting official documentation from the Internal Revenue Service or Social Security Administration in order to confirm the claimant's TIN.  Of this remaining population, 13,444 claimants have submitted information/documents that helped confirm the claimants' information and verify the claimants' identity.

Of the remaining 2,142 claimants whose identity has not yet been verified, 557 are still within the time period to respond to the Notice.  Of the 557 still within this time period, 106 responded to the Notice and are under review to determine if the claimants' identities can be verified.  Of the remaining 1,585 claimants, 1,253 responded to the Notice (18 after the initial Notice and 1,235 after the follow up Notice) but the response did not help verify the identity, while 332 did not respond to the Notice prior to their deadline.

The table below contains information on the number of claimants that were verified during an initial Identity Verification review.  This table also provides the type and number of TIN Verification Notices issued when the CAO could not verify identity after the initial review.

| Table 3.  Identity Verification Review Activity. | | | | |
|---|---|---|---|---|
| Outcome | Claims Reviewed Since Last Report | Monthly Percentage | Total Claims Reviewed | Total Percentage |
| 1. Verified During Review | 1,221 | 66.8% | 56,135 | 78.1% |
| 2. SSN Notice Issued | 55 | 3.0% | 2,459 | 3.4% |
| 3. ITIN Notice Issued | 0 | 0.0% | 418 | 0.6% |
| 4. EIN Notice Issued | 553 | 30.2% | 12,900 | 17.9% |
| 5. Total Reviewed | 1,829 | 100% | 71,912 | 100% |

The table below contains information on the number of TIN Verification Notices issued, the number of Notices that have been cured after the claimant responded to the Notice, and the average time in days it took the claimant to cure the deficiency.

| Table 4.  Identity Incompleteness Activity. | | | | |
|---|---|---|---|---|
| Notice Type | Notices Issued | Number Cured | Percentage Cured | Days to Cure |
| 1. SSN Notice | 2,459 | 2,058 | 83.7% | 50 |
| 2. ITIN Notice | 418 | 360 | 86.1% | 30 |
| 3. EIN Notice | 12,900 | 11,176 | 86.6% | 32 |
| 4. Total Issued | 15,777 | 13,594 | 86.2% | 37 |

### 2.  Employer Verification Review ("EVR").

The EVR process ensures that all employees of the same business are treated uniformly and that each business is placed in the proper Zone.  The review also walks through the intricate analysis necessary to assign the proper NAICS code to a business. The EVR team has completed the EVR analysis for over 202,978 businesses and rental properties.

From October 11, 2013 through November 10, 2013, the team completed the EVR step for 3,671 businesses and properties.  The CAO identified an average of 171 new businesses and properties to review each day and completed the EVR review for an average of 118 businesses and properties each day.  The CAO continues to review new businesses and rental properties on a first-in, first-out basis.

### 3. Exclusions.

The Exclusions review process ensures that claims and claimants excluded under the Settlement Agreement are appropriately denied.  The Exclusions team guides the reviewers and the EVR team when questions arise during the Exclusion review.  Table 5 below shows the number of Denial Notices issued to date for each Exclusion Reason and the team responsible for making such a determination.

| Table 5.  Exclusions | | | | |
|---|---|---|---|---|
| | **Exclusion Reason** | **Team Responsible** | **Denial Notices Since Last Report** | **Total Denial Notices** |
| 1. | GCCF Release | Exclusions | 81 | 7,256 |
| 2. | BP/MDL 2179 Defendant | | 10 | 286 |
| 3. | US District Court for Eastern District of LA | | 0 | 23 |
| 4. | Not a Member of the Economic Class | Claims Reviewers | 0 | 225 |
| 5. | Bodily Injury | | 0 | 6 |
| 6. | BP Shareholder | | 0 | 8 |
| 7. | Transocean/Halliburton Claim | | 0 | 0 |
| 8. | Governmental Entity | Claims Reviewers/ EVR | 3 | 732 |
| 9. | Oil and Gas Industry | | 32 | 710 |
| 10. | BP-Branded Fuel Entity | | 0 | 40 |
| 11. | Menhaden Claim | EVR | 2 | 17 |
| 12. | Financial Institution | | 5 | 246 |
| 13. | Gaming Industry | | 8 | 685 |
| 14. | Insurance Industry | | 0 | 175 |
| 15. | Defense Contractor | | 2 | 340 |
| 16. | Real Estate Developer | | 1 | 194 |
| 17. | Trust, Fund, Financial Vehicle | | 0 | 14 |
| 18. | **Total Denial Notices from Exclusions** | | **144** | **10,957** |

### 4. Claimant Accounting Support Reviews.

A special team handles Claimant Accounting Support ("CAS") reviews.  CAS reimbursement is available under the Settlement Agreement for IEL, BEL, and Seafood claims.

After a claim is determined by the Accountants or BrownGreer reviewers to be payable and the Compensation Amount is calculated, the CAS team reviews accounting invoices and CAS Sworn Written Statements.  Table 6 includes information on the number of CAS reviews the CAO has completed to date, whether the Accounting Support documentation was complete or incomplete, and the dollar amounts reimbursed.

| | | CAS Review Result | | | | Total CAS Reviews | | CAS $ Amount Reimbursed | |
|---|---|---|---|---|---|---|---|---|---|
| | | Complete | | Incomplete | | | | | |
| | Claim Type | Since Last Report | Total to Date | Since Last Report | Total to Date | Since Last Report | Total to Date | Since Last Report | Total to Date |
| 1. | **BEL** | 7 | 10,024 | 0 | 968 | 7 | 10,992 | $3,679.25 | $15,610,438.78 |
| 2. | **IEL** | 161 | 2,093 | 23 | 346 | 184 | 2,439 | $15,764.00 | $277,814.48 |
| 3. | **Seafood** | 80 | 3,718 | 12 | 727 | 92 | 4,445 | $32,956.69 | $1,516,323.60 |
| 4. | **TOTAL** | **248** | **15,835** | **35** | **2,041** | **283** | **17,876** | **$52,399.94** | **$17,404,576.86** |

Table 6.  Claimant Accounting Support Reviews

5. **QA Review.**

The Quality Assurance ("QA") process addresses three fundamental needs of the Settlement Program: (a) to ensure that all claims are reviewed in accordance with the provisions of the Settlement Agreement by targeting anomalous claims results through data metrics analysis; (b) to provide a mechanism to monitor reviewer performance and the tools necessary to efficiently and effectively provide feedback to reviewers; and (c) to identify areas of review resulting in high error rates that require retraining or refined review procedures and data validations.

The CAO has implemented a reviewer follow-up process for all claim types.  The CAO provides daily follow-up to reviewers in the event a QA review of a particular claim of that reviewer produces a result different than that of the original review.  The CAO also has a report that identifies specific reviewers who require retraining and reveals whether there are issues that

warrant refresher training for all reviewers.  Table 7 shows, by Claim Type, the number of claims identified for QA review through the database QA process, as well as the number of QA reviews that have been completed, the number in progress, and the number awaiting review.

| | **Table 7.  Quality Assurance Reviews** | | | | | | |
|---|---|---|---|---|---|---|---|
| | **Claim Type** | **Total Claims Needing QA To Date** | **QA Reviews Completed** | **% of QAs Completed** | **QA Reviews in Progress** | **Claims Awaiting QA** | **QA Reviews Completed Since Last Report** |
| **1.** | Seafood | 24,680 | 24,419 | 99% | 224 | 37 | 551 |
| **2.** | IEL | 24,707 | 23,013 | 93% | 907 | 787 | 930 |
| **3.** | BEL | 21,577 | 20,929 | 97% | 335 | 313 | 3,107 |
| **4.** | Start-Up BEL | 1,728 | 1,681 | 97% | 28 | 19 | 215 |
| **5.** | Failed BEL | 1,904 | 1,875 | 98% | 11 | 18 | 149 |
| **6.** | Coastal Real Property | 19,092 | 19,074 | 100% | 2 | 16 | 333 |
| **7.** | Real Property Sales | 774 | 774 | 100% | 1 | 2 | 16 |
| **8.** | VoO Charter | 7,652 | 7,645 | 100% | 3 | 4 | 41 |
| **9.** | Subsistence | 27,567 | 17,162 | 62% | 1,133 | 9,272 | 193 |
| **10.** | Wetlands | 3,650 | 3,539 | 97% | 39 | 72 | 170 |
| **11.** | Vessel Physical Damage | 1,294 | 1,280 | 99% | 3 | 11 | 48 |
| **12.** | **TOTAL** | **134,628** | **121,391** | **90%** | **2,686** | **10,551** | **6,753** |

### 6.   Claim Type Review Details.

Table 8 provides information by claim type on the number of claims filed, the number of claims that have been reviewed to Notice, the number of claims remaining to be reviewed, and the number of claims reviewed to either a Notice or "Later Notice" to date.  Table 8 divides the claims reviewed to a "Later Notice" into separate sections: 1) claims receiving Notices after the CAO conducts a Reconsideration review and 2) claims reviewed following the submission of additional materials by a claimant in response to an Incompleteness Notice.

| Table 8.  Throughput Analysis of Claims Filed and Notices Issued | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **A. Claims Reviewed to First Notice** | | | | | | | | | |
| | Claim Type | Status of All Claims Filed | | | | | Productivity Since Last Report on 10/11/13 | | |
| | | Total Claims Filed To Date | Reviews Completed to Notice | | Claims Remaining to Review | | New Claims Filed | Avg. Daily Claims Filed | Reviews Completed to First Notice | Avg. Daily Reviews to First Notice |
| 1. | Seafood | 24,420 | 23,920 | 98% | 500 | 2% | 139 | 4 | 180 | 6 |
| 2. | IEL | 35,377 | 31,963 | 90% | 3,414 | 10% | 1,391 | 45 | 618 | 20 |
| 3. | IPV/FV | 264 | 250 | 95% | 14 | 5% | 1 | <1 | 6 | <1 |
| 4. | BEL | 80,929 | 41,030 | 51% | 39,899 | 49% | 9,164 | 296 | 303 | 10 |
| 5. | Start-Up BEL | 4,737 | 3,365 | 71% | 1,372 | 29% | 368 | 12 | 24 | <1 |
| 6. | Failed BEL | 3,180 | 2,568 | 81% | 612 | 19% | 155 | 5 | 16 | <1 |
| 7. | Coastal  RP | 31,156 | 30,181 | 97% | 975 | 3% | 1,135 | 37 | 719 | 23 |
| 8. | Wetlands RP | 12,536 | 4,767 | 38% | 7,769 | 62% | 3,701 | 119 | 146 | 5 |
| 9. | RPS | 1,399 | 1,373 | 98% | 26 | 2% | 33 | 1 | 35 | 1 |
| 10. | Subsistence | 30,758 | 10,583 | 34% | 20,175 | 66% | 1,578 | 51 | 783 | 25 |
| 11. | VoO | 8,607 | 8,534 | 99% | 73 | 1% | 31 | 1 | 23 | <1 |
| 12. | Vessel | 1,374 | 1,316 | 96% | 58 | 4% | 9 | <1 | 12 | <1 |
| 13. | **TOTAL** | **234,737** | **159,850** | **68%** | **74,887** | **32%** | **17,705** | **571** | **2,865** | **92** |

| **B. Claims Reviewed to Later Notice** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Claim Type | Initial or Preliminary Incompleteness Response | | | Follow-Up Incompleteness Responses | | | Requests for Reconsideration | | |
| | | Total Responses | Claims with Later Notice | Remaining Claims | Total Responses | Claims with Later Notice | Remaining Claims | Total Requests | Claims with Later Notice | Remaining Claims |
| 1. | Seafood | 5,801 | 5,132 | 669 | 2,670 | 2,262 | 408 | 3,288 | 2,776 | 512 |
| 2. | IEL | 15,028 | 12,538 | 2,490 | 6,953 | 5,104 | 1,849 | 3,965 | 3,006 | 959 |
| 3. | IPV/FV | 85 | 82 | 3 | 33 | 31 | 2 | 35 | 34 | 1 |
| 4. | BEL | 22,545 | 13,224 | 9,321 | 7,904 | 4,319 | 3,585 | 3,887 | 2,324 | 1,563 |
| 5. | Start-Up BEL | 1,955 | 1,329 | 626 | 1,024 | 570 | 454 | 407 | 203 | 204 |
| 6. | Failed BEL | 859 | 613 | 246 | 484 | 281 | 203 | 433 | 279 | 154 |
| 7. | Coastal  RP | 4,659 | 4,505 | 154 | 1,277 | 1,232 | 45 | 1,485 | 1,344 | 141 |
| 8. | Wetlands RP | 313 | 225 | 88 | 53 | 45 | 8 | 451 | 347 | 104 |
| 9. | RPS | 228 | 227 | 1 | 66 | 61 | 5 | 172 | 168 | 4 |
| 10. | Subsistence | 4,512 | 515 | 3,997 | 712 | 38 | 674 | 117 | 53 | 64 |
| 11. | VoO | 890 | 875 | 15 | 372 | 353 | 19 | 603 | 592 | 11 |
| 12. | Vessel | 731 | 693 | 38 | 320 | 296 | 24 | 195 | 178 | 17 |
| 13. | **TOTAL** | **57,606** | **39,958** | **17,648** | **21,868** | **14,592** | **7,276** | **15,038** | **11,304** | **3,734** |

C. **Claim Payments.**

1. **Notices and Payments.**

The CAO issued its first payments to claimants on July 31, 2012.  Tables 4 and 5 of the Public Report attached in Exhibit A provide detail on the notices and payments issued to date. As of November 10, 2013, the CAO has issued 60,007 Eligibility Notices with Payment Offers totaling over $4.93 billion.  As of that date, the CAO has made over $3.74 billion in payments on 51,866 claims.[5]

2. **Claimants in Bankruptcy.**

The CAO has issued Bankruptcy Notices to 300 claimants with active claims who indicated the existence of an open bankruptcy case on their Registration Forms.  The CAO continues to review these claim files to determine whether the claimants have submitted the documents necessary to remove the bankruptcy hold.  For claimants who have not submitted all of the requested documentation, the CAO continues to reach out to those claimants to inform them of the documents required to be submitted in order to receive payment on their claim.  To date, the CAO has removed 1,169 bankruptcy holds following a determination that the bankruptcy is closed and not subject to revocation or following the submission by a claimant of the documents required to receive payment.

Section E.1 of the Procedure for Disposition of Claims by Claimants in Bankruptcy (Proc-445) states that "[i]f the Debtor Claimant is represented by a bankruptcy trustee, the Claims Administrator will communicate solely with the trustee relating to the claim."  To enforce this provision, the CAO has developed a communication protocol.  The first step in this

---

[5] The Court-ordered Injunction Addressing Revenue and Expense Matching Issues has affected the number of Eligibility Notices with Payment Offers and payments issued.  See section I.E for additional information on the Injunction Addressing Revenue and Expense Matching Issues.

protocol is to apply a Trustee Communication Hold alerting all Claimant Communication Center and Firm Contacts that they may not communicate with the claimant regarding his or her claims.

The second step is to inform the claimant that the CAO may no longer be able to communicate with him or her unless the bankruptcy trustee authorizes such communication.  The CAO sends a Bankruptcy Trustee Communication Notice ("Communication Notice") to the claimant or the claimant's attorney to inform the claimant that the CAO will cease all communications within ten days of the notice unless the trustee completes and returns the attached Bankruptcy Trustee Authorization for Release of Claims Information Form ("BK-2").

The third step is to hold all Notices for that ten day period until the CAO determines whether the claimant or the trustee is to receive such Notices.  If the trustee does not return the BK-2 form within ten days, the fourth step is to change the claimant's representation in the system to reflect that the trustee is representing the claimant.   The CAO then sends the trustee a Bankruptcy Trustee Informational Notice ("Informational Notice"), which informs the trustee of the communication requirement.  The Informational Notice also contains the BK-2 form, which the trustee may return at that time.  Finally, the fifth step is to remove any holds on the claimant's Notices and mail all future Notices to the trustee.

Since implementing this communication protocol, the CAO has identified 80 claimants with active bankruptcies who have had trustees assigned by the Bankruptcy Court.  For three of those claimants, the CAO has confirmed that the authorized representative of the claimant in this Program is the bankruptcy trustee, so those claimants are not subject to this communication protocol, and therefore the Trustee Communication Hold has not been placed on these claims. The CAO has sent Communication Notices to 51 of the remaining 77 claimants.  Of those 51 claimants, three trustees have returned the BK-2 form to authorize communication with the claimant, and four claimants have submitted Orders from the Bankruptcy Court permitting the

claimant to settle his or her own claim.  The Trustee Communication Holds for those seven claimants have been removed as they are no longer subject to the communication protocol.  The CAO has sent 23 Informational Notices to trustees.  The remaining 21 claimants to whom the CAO has sent Communication Notices are still within the ten day time period to return the BK-2 form.

### D.  Re-Reviews, Reconsiderations, and Appeals.

#### 1.  Re-Reviews and Outcomes.

The CAO implemented a Re-Review process beginning on January 18, 2013, that provides claimants with the opportunity to request a Re-Review of their claim within 30 days of the issuance of an Eligibility or Denial Notice if the claimant has additional documentation not previously submitted to support their claim.  Following a Re-Review, claimants receive a Post Re-Review Notice, from which they may then request Reconsideration if they wish.  To date, there have been 60,263 Eligibility and Denial Notices issued from which claimants could or can seek Re-Review.  Of those, 1,180 are still within the 30 day window to seek Re-Review and have not yet done so, leaving 59,083 that have passed the deadline to request Re-Review.  Of those, claimants have requested Re-Review of 4,246 claims.  Thus, the rate of request for Re-Review from all final determinations is around 7.2%.  The rate of request for Re-Review of Eligibility Notices is around 4.4%, and the rate of request for Re-Review of Denial and Incompleteness Denial Notices is around 13.7%.

Table 9 summarizes the Re-Reviews the CAO has completed, the number of Post-Re-Review Notices the CAO has issued, and whether the outcome of the Re-Review resulted in an award that was higher than (↑), lower than (↓),or the same as (↔) the outcome previously issued. The table also includes information on whether an original Exclusion Denial was confirmed or overturned on Re-Review.  The number of Notices issued is fewer than the reviews completed

because there is a 36-hour lag between the time when the review is completed and the time when

the Notice is issued.

| Table 9.  Re-Reviews | | | | |
|---|---|---|---|---|
| **A.   Re-Review Requests and Reviews** | | | | |
| | **Claim Type** | **Requests Received To Date** | **Reviews Completed To Date** | | |
| | | | **Total** | **Completed Since Last Report** | **Average Weekly Reviews** |
| **1.** | **Seafood** | 753 | 672 | 63 | 17 |
| **2.** | **IEL** | 577 | 449 | 28 | 11 |
| **3.** | **IPV/FV** | 9 | 9 | 0 | <1 |
| **4.** | **BEL** | 1,515 | 1,265 | 87 | 32 |
| **5.** | **Start-Up BEL** | 115 | 83 | 11 | 2 |
| **6.** | **Failed BEL** | 145 | 98 | 8 | 2 |
| **7.** | **Coastal RP** | 644 | 641 | 87 | 16 |
| **8.** | **Wetlands RP** | 246 | 232 | 12 | 6 |
| **9.** | **Real Property Sales** | 78 | 78 | 41 | 2 |
| **10.** | **Subsistence** | 66 | 43 | 2 | 1 |
| **11.** | **VoO** | 55 | 53 | 5 | 1 |
| **12.** | **Vessel** | 43 | 41 | 0 | 1 |
| **13.** | **TOTAL** | **4,246** | **3,664** | **344** | **92** |

| | B. Re-Review Notices Issued | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | Notices Issued | | Outcome of Review | | | | |
| | Claim Type | Total Issued to Date | Weekly Average | Compensation Amount for Eligible Claims | | | Exclusions/Denials | |
| | | | | ↑ | ↓ | ↔ | Confirmed | Overturned |
| 1. | Seafood | 605 | 15 | 338 | 19 | 192 | 53 | 3 |
| 2. | IEL | 403 | 10 | 104 | 23 | 116 | 158 | 2 |
| 3. | IPV/FV | 9 | <1 | 0 | 0 | 0 | 9 | 0 |
| 4. | BEL | 1,002 | 25 | 253 | 43 | 82 | 614 | 10 |
| 5. | Start-Up BEL | 67 | 2 | 16 | 3 | 5 | 42 | 1 |
| 6. | Failed BEL | 85 | 2 | 1 | 2 | 0 | 82 | 0 |
| 7. | Coastal RP | 447 | 11 | 42 | 4 | 87 | 301 | 13 |
| 8. | Wetlands RP | 154 | 4 | 2 | 1 | 4 | 146 | 1 |
| 9. | RPS | 38 | 1 | 1 | 0 | 2 | 35 | 0 |
| 10. | Subsistence | 30 | <1 | 1 | 0 | 1 | 28 | 0 |
| 11. | VoO | 52 | 1 | 7 | 5 | 17 | 21 | 2 |
| 12 | Vessel | 39 | 1 | 19 | 0 | 11 | 8 | 1 |
| 13. | TOTAL | 2,931 | 74 | 784 | 100 | 517 | 1,497 | 33 |

### 2.  Reconsideration Reviews and Outcomes.

To date, there have been 118,463 Eligibility, Denial, and Incompleteness Denial Notices issued from which claimants could or can seek Reconsideration.  Of those, 2,680 claims are still within the 30-day window to seek Reconsideration and have not yet done so, leaving 115,783 that have passed the deadline to request Reconsideration.  Of those, claimants have requested Reconsideration of 15,038 claims.  Thus, the rate of request for Reconsideration from all final determinations is around 13.0%.  The rate of request of Reconsideration from Eligibility Notices is around 5.7%, and the rate of request for Reconsideration from Denial and Incompleteness Denial Notices is 21.8%.

Table 10 summarizes the Reconsiderations the CAO has completed, the number of Post-Reconsideration Notices the CAO has issued, and whether the outcome of the Reconsideration review resulted in an award that was higher than (↑), lower than (↓), or the same as (↔) the

outcome previously issued. The table also includes information on whether an original Exclusion Denial was confirmed or overturned on Reconsideration.  The number of Notices issued is fewer than the reviews completed because there is a 36-hour lag between the time when the review is completed and the time when the Notice is issued.

| Table 10.  Reconsideration | | | | | |
|---|---|---|---|---|---|
| **A.  Reconsideration Requests and Reviews** | | | | | |
| | **Claim Type** | **Requests Received To Date** | **Reviews Completed To Date** | | |
| | | | **Total** | **Completed Since Last Report** | **Average Weekly Reviews** |
| 1. | Seafood | 3,288 | 2,922 | 331 | 53 |
| 2. | IEL | 3,965 | 3,299 | 251 | 60 |
| 3. | IPV/FV | 35 | 34 | 3 | 1 |
| 4. | BEL | 3,887 | 2,457 | 19 | 45 |
| 5. | Start-Up BEL | 407 | 220 | 3 | 4 |
| 6. | Failed BEL | 433 | 321 | 13 | 6 |
| 7. | Coastal RP | 1,485 | 1,366 | 28 | 25 |
| 8. | Wetlands RP | 451 | 360 | 6 | 7 |
| 9. | Real Property Sales | 172 | 171 | 5 | 3 |
| 10. | Subsistence | 117 | 83 | 16 | 2 |
| 11. | VoO | 603 | 599 | 4 | 11 |
| 12. | Vessel | 195 | 186 | 27 | 3 |
| 13. | **TOTAL** | **15,038** | **12,018** | **703** | **220** |
| **B.  Reconsideration Notices Issued** | | | | | |

| | | Notices Issued | | Outcome of Review | | | | |
|---|---|---|---|---|---|---|---|---|
| | **Claim Type** | **Total Issued to Date** | **Weekly Average** | **Compensation Amount for Eligible Claims** | | | **Exclusions/Denials** | |
| | | | | ↑ | ↓ | ↔ | **Confirmed** | **Overturned** |
| 1. | Seafood | 2,776 | 51 | 688 | 114 | 426 | 1,544 | 4 |
| 2. | IEL | 3,006 | 54 | 103 | 226 | 90 | 2,582 | 5 |
| 3. | IPV/FV | 34 | 1 | 0 | 0 | 0 | 34 | 0 |
| 4. | BEL | 2,324 | 42 | 351 | 92 | 187 | 1,657 | 37 |
| 5. | Start-Up BEL | 203 | 4 | 11 | 9 | 13 | 167 | 3 |
| 6. | Failed BEL | 279 | 5 | 0 | 4 | 1 | 274 | 0 |
| 7. | Coastal RP | 1,344 | 24 | 93 | 23 | 355 | 858 | 15 |
| 8. | Wetlands RP | 347 | 6 | 20 | 1 | 26 | 287 | 13 |
| 9. | RPS | 168 | 3 | 1 | 0 | 3 | 162 | 2 |

16

| Table 10.  Reconsideration | | | | | | | |
|---|---|---|---|---|---|---|---|
| **10.** | **Subsistence** | 53 | 1 | 0 | 0 | 1 | 52 | 0 |
| **11.** | **VoO** | 592 | 11 | 59 | 5 | 120 | 366 | 42 |
| **12** | **Vessel** | 178 | 3 | 48 | 4 | 14 | 111 | 1 |
| **13.** | **TOTAL** | **11,304** | **206** | **1,374** | **478** | **1,236** | **8,094** | **122** |

### 3.   Appeals.[6]

#### (a) BP Appeals.

To date, the CAO has issued 18,049 Eligibility Notices that meet or exceed the threshold amount rendering them eligible for appeal by BP.  Of those, 79 Notices are still within the timeframe in which BP can file an appeal and BP has not yet filed an appeal, leaving 17,970 Notices that BP has either appealed or the deadline by which BP can file an appeal has passed.  Of those 17,970 Notices, BP has filed 3,848 appeals, or only 21.4%.  However, out of the 3,848 Notices BP has appealed, BP has subsequently withdrawn 266 of those appeals, while another 1,319 have been resolved for an amount the same as or greater than that in the Eligibility Notice (excluding the 5% compensation increase that a claimant who prevails upon appeal receives).  Thus, out of the 3,848 Notices BP has appealed, 1,585 have either been withdrawn or resolved for an amount the same as or greater than that in the Eligibility Notice.  If those 1,585 Notices are deducted from the 3,848 Notices BP has appealed to arrive at a more representative and indicative "rate of disagreement," that leaves 2,263 Notices out of 17,970, or a 12.6% "rate of disagreement."

---

[6] The DWH Settlement Program updated the analysis of appealed claims (excluding Incompleteness Appeals) used for this report to remove duplicate appeals and to redefine the timing of when certain appeals are designated as resolved.   In this month's report, the number of appealed claims is lower than it would have been if duplicate appeals had been included.  The numbers related to resolved claims are also affected because claims are now categorized as "Settled by Parties" and "Panel Decided" when the notices for those events are issued rather than on the date of the settlement or the date of the panel decision. For these reasons, a comparison of the figures contained in this report to the figures contained in the reports of previous months would not be instructive.  Tables 11 and 12 therefore do not list the appeals data from the CAO's last report or the change since the last report. The CAO will reinstate the reporting of that comparison in the next report.

Table 11 provides summary information on the status of BP's appeals.

| Table 11.  Status of BP Appeals | | |
|---|---|---|
| **A.   Appeal Filing/Resolution** | | |
| | **Status** | **Current Total** |
| **1.** | **BP Appeals Filed** | **3,848** |
| **2.** | **Appeals Resolved** | **2,326** |
| (a) | Withdrawn | 266 |
| (b) | Panel Decided | 1,498 |
| (c) | Settled by Parties | 386 |
| (d) | Remanded by Panel | 98 |
| (e) | Administratively Closed | 7 |
| (f) | Closed for Reconsideration Review | 71 |
| **B.  Pending Appeals** | | |
| **3.** | **In Pre-Panel Baseball Process** | **1,293** |
| **4.** | **Currently Before Panel** | **112** |
| **5.** | **Under Discretionary Review** | **117** |
| **6.** | **TOTAL PENDING** | **1,522** |

**(b) Claimant Appeals.**

Before a claimant may file an appeal, the claimant must request Reconsideration and receive a Post-Reconsideration Notice.  To date, the CAO has issued 10,013 Post-Reconsideration Notices (excluding Post-Reconsideration Incompleteness Denial Notices, which are covered in paragraph [d] below).  Of those, 702 Notices are still within the timeframe in which the claimant can file an appeal and the claimant has not yet filed an appealed, leaving 9,311 Notices that the claimant has either appealed or the deadline by which the claimant could file an appeal has passed.  Of those 9,311 Notices, claimants have filed 1,106 appeals, or 11.9%. Of the 1,106 claimant appeals, 675 are appeals of Post-Reconsideration Denial Notices, and 431 are appeals of Post-Reconsideration Eligibility Notices.

Table 12 provides summary information on the status of Claimant Appeals.

| Table 12.  Status of Claimant Appeals | | |
|---|---|---|
| **A. Appeal Filing/Resolution** | | |
| | **Status** | **Current Total** |
| 1. | **Claimant Appeals Filed** | **1,106** |
| 2. | **Appeals Resolved** | **586** |
| (a) | Panel Decided | 473 |
| (b) | Settled by Parties | 65 |
| (c) | Remanded by the Panel | 15 |
| (d) | Administratively Closed | 8 |
| (e) | Withdrawn | 25 |
| **B.  Pending Appeals** | | |
| 3. | **In Pre-Panel Baseball Process** | **128** |
| 4. | **In Pre-Panel Non-Baseball Process** | **257** |
| 5. | **Currently Before Panel** | **84** |
| 6. | **Under Discretionary Review** | **51** |
| 7. | **TOTAL PENDING** | **520** |

(c)  **Resolved Appeals.**

As reported in the tables above, 2,912 appeals have been resolved.  Table 13 provides a summary of these resolved appeals by Claim Type.  The comparison between the Post-Appeal award amount to the award amount within the original notice does not take into consideration the 5% increase in compensation that a claimant who prevails upon appeal receives.

| Table 13. Outcome After Appeal | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Claim Type** | **Appeals Settled or Decided by Panel** **Award Amount after Appeal Compared to Award Amount in Original Notice** | | | | | | **Withdrawn** | **Admin. Closed** | **Closed Following Claimant Request For Recon.** | **Total** |
| | **Higher** | **Lower** | **Same** | **Denial Upheld** | **Denial Over-turned** | **Remand** | | | | |
| 1. Seafood | 39 | 16 | 98 | 17 | 1 | 7 | 41 | 4 | 7 | 230 |
| 2. BEL | 65 | 449 | 1,145 | 115 | 27 | 81 | 201 | 5 | 48 | 2,136 |
| 3. Wetlands RP | 1 | 1 | 2 | 22 | 0 | 0 | 2 | 0 | 14 | 42 |
| 4. Coastal RP | 28 | 1 | 14 | 34 | 1 | 2 | 5 | 1 | 0 | 86 |

| Table 13. Outcome After Appeal | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Claim Type** | | **Appeals Settled or Decided by Panel** | | | | | | **Withdrawn** | **Admin. Closed** | **Closed Following Claimant Request For Recon.** | **Total** |
| | | **Award Amount after Appeal Compared to Award Amount in Original Notice** | | | | | | | | | |
| | | **Higher** | **Lower** | **Same** | **Denial Upheld** | **Denial Over-turned** | **Remand** | | | | |
| 5. | Real Property Sales | 0 | 1 | 7 | 25 | 1 | 0 | 2 | 0 | 0 | 36 |
| 6. | VoO Charter Payment | 16 | 30 | 34 | 49 | 29 | 5 | 26 | 3 | 0 | 192 |
| 7. | IEL | 7 | 25 | 33 | 36 | 4 | 10 | 6 | 2 | 2 | 125 |
| 8. | VPD | 0 | 24 | 24 | 1 | 0 | 8 | 8 | 0 | 0 | 65 |
| 9. | **TOTAL** | **156** | **547** | **1,357** | **299** | **63** | **113** | **291** | **15** | **71** | **2,912** |

**(d) Incompleteness Appeals.**

The Appeal for Insufficient Documentation ("Incompleteness Appeal") allows Economic Class Members to have their claims reviewed by a separate Documentation Reviewer when the CAO denies their claims because of insufficient documentation.  The Documentation Reviewer reviews the claimant's documentation to determine whether the Program correctly denied the claim.

Before sending the claim to the Documentation Reviewer, the CAO reviews the appeal request along with any newly submitted documents.  If the claimant has submitted the requested documentation and cured the incompleteness, the CAO issues the appropriate Notice.  If the claimant still has not submitted the requested documentation, the CAO sends the claim to the Documentation Reviewer for review.

Before a claimant may file an appeal of an Incompleteness Denial, the claimant must request Reconsideration and receive a Post-Reconsideration Incompleteness Denial Notice.  To date, the CAO has issued 2,804 Post-Reconsideration Incompleteness Denial Notices.  Of those,

208 Notices are still within the timeframe in which the claimant can file an appeal, leaving 2,596

Notices for which the claimant's appeal deadline has passed.  Of those 2,804 Notices eligible for

appeal, 1,220 (around 43.5%) appeal requests have been filed.

Table 14 provides summary information on the status of Incompleteness Appeals.

| | Table 14.  Incompleteness Appeals | | | |
|---|---|---|---|---|
| | **A.  Incompleteness Appeal Filing/Resolution** | | | |
| | **Status** | **Prior to 10/11/13** | **Since 10/11/13** | **Total** |
| **1.** | **Incompleteness Appeals Filed** | **1,032** | **188** | **1,220** |
| **2.** | **Appeals Resolved** | **551** | **336** | **887** |
| (a) | Withdrawn/Closed | 1 | 0 | 1 |
| (b) | Cured | 77 | 27 | 104 |
| (c) | Incompleteness Denial Affirmed | 461 | 302 | 763 |
| (d) | Incompleteness Denial Overturned | 12 | 7 | 19 |
| | **B.  Pending Incompleteness Appeals** | | | |
| **3.** | **In Pre-Documentation Reviewer Process** | 274 | | |
| **4.** | **Currently Before Documentation Reviewer** | 59 | | |
| **5.** | **TOTAL PENDING** | 333 | | |

As reported in Table 14 above, 887 Incompleteness Appeals have been resolved.

### E.  Court-Ordered BEL Claim Suspension.

BP appealed the District Court's order, issued on March 5, 2013, that affirmed the Claims

Administrator's interpretation of the Settlement Agreement that the Business Economic Loss

("BEL") framework does not require the matching of revenues and expenses within claimant-

submitted profit and loss.  On October 2, 2013, the Fifth Circuit Court of Appeals reversed the

District Court's ruling and remanded the case to the District Court for further consideration.  The

District Court immediately entered an order to suspend the issuance of any final determination

notices or payments on all BEL claims, including Start-Up and Failed BEL claims, until the

Court could create an appropriately narrowly-tailored preliminary injunction.  The CAO has

continued to complete the initial stages of claims evaluation but has not issued Incompleteness, Denial, or Eligibility Notices and has suspended all payments on BEL claims.

**1.  Preliminary Injunction Continuing BEL Claim Suspension.**

On October 18, 2013, the District Court issued a preliminary injunction that instructed the Claims Administrator to continue the temporary suspension on the issuance of final determination notices and payments for BEL claims that present an issue of revenue and expense matching and to Individual Economic Loss ("IEL") claims for which the claimant's economic loss is qualified solely upon his or her employer's satisfaction of the BEL requirements.  The District Court further instructed the Claims Administrator to process all BEL claims for which revenue and expense matching is not an issue.  The preliminary injunction ordered the Claims Administrator to provide the District Court and the Parties with a declaration outlining the criteria that the CAO will use to determine whether a BEL claim is supported by sufficiently-matched, accrual-basis accounting and whether the matching of revenues and expenses is or is not an issue, regardless of whether the claim is supported by accrual or cash-basis accounting records.

**2.  Processing of Affected Claims in the Claims Review Process.**

On October 28, 2013, the Claims Administrator provided the Court with the requested declaration.  The Claims Administrator's declaration set forth seven criteria that the CAO will use when reviewing a claimant's profit and loss statements to identify BEL claims that involve the issue of matching revenues and expenses.  The CAO Accounting Vendors will perform further matching reviews if the monthly profit and loss statements submitted by a claimant meet any one of the following criteria:

(a)  negative total revenue is recorded for any month included within the Benchmark Year(s), Compensation Year or 2011;

(b)  total revenue recorded in any month included in the Benchmark Year(s), Compensation Year or 2011 exceeds 20% of the claimant's annual revenue for the year which includes that month;

(c)  the monthly profit and loss statements or other documentation submitted shows that the claimant's business experienced a period of dormancy during the Benchmark Year(s), Compensation year or 2011;

(d)  total variable expenses when summed up are negative for any month within the Benchmark Year(s) or Compensation Year;

(e)  total variable expenses for any month within the Benchmark year(s) or Compensation Year exceed 25% of the claimant's annual variable expense for the year which includes that month;

(f)  variable margin percentages when compared between any two months included within the Benchmark Year(s) and Compensation Year vary by more than 50 percentage points; or

(g)  in any given month within the Benchmark Year(s) or Compensation Year, the variance between that month's percentage of annual revenues as compared to that same month's percentage of annual variable expenses exceeds 8 percentage points.

If a claim satisfies any one of the above criteria, then the CAO Accounting Vendors will perform further matching review on the claim.  Any claim, whether based on accrual or cash-basis records, that does not fall within one of the foregoing seven criteria shall be presumed to be "sufficiently matched" and proceed to determination and payment, provided, however, that in the professional judgment of the CAO Accounting Vendors, a claimant's financial records contain other significant indicia that the claim may not be "sufficiently matched", the CAO reserves the right to identify such claim for further matching review.

The CAO Accounting Vendors will establish procedures for implementing the matching review processes for evaluating all BEL claims under the aforementioned criteria.   In the immediate future, the CAO will resume issuing Incompleteness Notices and Denial Notices with Denial Reasons that do not relate to monthly revenues and/or expenses of BEL claims.   The CAO will add language to all BEL Incompleteness Notices to inform claimants that additional information regarding the issue of matching revenues and expenses may be required at a later point in the review process.

The CAO is processing all IEL claims that do not qualify solely on the basis of the employer's satisfaction of the BEL causation requirements.  The CAO has developed and applied measures within the system to stop all Notices and payments to IEL claimants specifically affected by the Court's preliminary injunction.  These claims remain on hold until the CAO Accounting Vendors evaluate the associated BEL claim for matching issues.

### 3.   Processing of Appealed Claims.

With respect to Appeals, the District Court's October 18, 2013 preliminary injunction instructed the CAO to review the BEL and IEL claims that were in the Claims Appeal Process as of October 18, 2013, to determine whether any party raised the matching of revenues and expenses as a basis for the appeal.  For all claims in which that review reveals that the matching of revenues and expenses was made a basis for the appeal, the Claims Appeal Process is to be temporarily suspended.  The preliminary injunction further provided that for all BEL and IEL claims in the Claims Appeal Process as of October 18, 2013, in which that review reveals that the matching of revenues and expenses was not made a basis for the appeal, the Claims Appeal Process is to proceed to determination and payment.

The preliminary injunction also instructed the CAO that for any timely-filed BEL or IEL appeal after October 18, 2013, in which the matching of revenues and expenses is a basis for the

appeal, the CAO is to review the claim.  If the CAO agrees that the claim presents an issue of whether revenues and expenses are sufficiently matched, the Claims Appeal Process is to be temporarily suspended.  For all other timely-filed BEL and IEL appeals after October 18, 2013, the Claims Appeal Process is to proceed to determination and payment.

On November 5, 2013, the District Court issued an Order Clarifying Preliminary Injunction Regarding Claims Currently in the Appeals Process ("Clarifying Order") that amended the preliminary injunction.  The Clarifying Order provides that the BEL and IEL claims that were in the Claims Appeal Process as of October 18, 2013, as referenced in the preliminary injunction, will be defined as those claims that as of October 18, 2013:

> (a)  had received a final determination notice;

> (b)  had an award of a sufficient dollar amount such that it was eligible to be appealed;

> (c)  had an appeal of the determination filed or the time period for filing an appeal had expired; and

> (d)  for which payment had not yet been issued.

The Clarifying Order further provided that to determine "whether any party raised the matching of revenues and expenses as a basis for appeal" as provided in the preliminary injunction, the CAO is to apply the following criteria:

> (a)  If no appeal was timely filed, the matching issue will be considered to have not been raised as a basis for appeal;

> (b)  If an appeal was filed and briefs in the form of an Initial Proposal, Final Proposal, or Request for Discretionary Court Review were filed, the Program will consider the matching issue to have been raised only if the issue was raised in any of those three submissions filed as of October 18, 2013;

(c)   If an appeal was filed and briefs in the form of an Initial Proposal, Final Proposal, or Request for Discretionary Court Review were filed, the Program will not consider the matching issue to have been raised if it was not included in any of those three submissions filed as of October 18, 2013; and

(d)   If an appeal was filed but the claim had not yet reached the point where any briefs were filed, the Program will look to the Notice of Appeal to determine whether the matching issue was raised as a basis for appeal.

The CAO has identified the BEL and IEL claims that were in the Claims Appeal Process as of October 18, 2013, according to the criteria set out in the Clarifying Order and are reviewing the Initial Proposal, Final Proposal, and Request for Discretionary Review briefs, as well as the Notices of Appeal, if applicable, as required by the Clarifying Order to determine whether any party raised the matching of revenues and expenses as a basis for appeal.  When the CAO determines that a party raised the matching issue in a BEL or IEL claim in the Claims Appeal Process as of October 18, 2013, the CAO will notify the parties that the Claims Appeal Process is temporarily suspended for that claim.  When the CAO determines that a party did not raise the matching issue in a BEL or IEL claim in the Claims Appeal Process as of October 18, 2013, the CAO will notify the parties that the Claims Appeal Process will resume and will set appeal deadlines as appropriate.

The CAO will identify the timely-filed BEL and IEL claims in the Claims Appeal Process after October 18, 2013, in which the matching of revenue and expenses is a basis for the appeal and will review those claims.  If the CAO agrees that the claim presents an issue as to whether revenues and expenses are "sufficiently matched", then the Claims Appeal Process as to that claim will be temporarily suspended.  Otherwise, the CAO will permit the claim to proceed through the Claims Appeal Process to determination and payment.

### 4.   12/2/13 Hearing Regarding Economic Loss Calculation.

The District Court has tentatively scheduled a hearing on December 2, 2013, to determine the intent of BP and the Plaintiffs' Steering Committee with regard to the economic loss calculation contained within Exhibit 4C of the Settlement Agreement.  This hearing may include clarification on the process to be used for the review of claims that contain potential revenue and expense matching issues.  At that time, the CAO may receive further clarification as to how claims that present an issue of revenue and expense matching should be processed.  The CAO will continue to adhere to the terms of the preliminary injunction and to the criteria set forth in the declaration until such time at which the Court, along with BP and the Plaintiffs' Steering Committee, provide further instructions as to how the CAO should process such claims under the Settlement Agreement.

## II.   CLAIMANT OUTREACH EFFORTS

The CAO has continued its Claimant Outreach efforts since the previous Court Status Report as detailed below:

### A.   Law Firm Contacts.

The Law Firm Contacts team has continued outreach efforts related to incompleteness reasons for all damage categories.  Over the past several weeks, Law Firm Contacts have focused outreach efforts on incomplete Seafood Compensation Program claims.  This outreach campaign has been highly successful at resolving the remaining incomplete Seafood Compensation Program claims.  Firm Contacts have assisted firms by continuing Incomplete Payment Documentation outreach as well as Release Incompleteness outreach.  Finally, Firm Contacts have continued to facilitate conference calls held in collaboration with the CAO Accountants to efficiently address documentation requirements and to resolve outstanding Program questions.

### B.  **Claimant Communications Center (CCC).**

CCC Agents contributed to Claimant Outreach by placing calls to claimants to provide information on how to comply with Bankruptcy and Disposable Monthly Income requirements, with Multi-Facility Business Claim filing requirements, and with Seafood Compensation Program untimely filing requirements.  Agents also contacted claimants to request additional information to supplement the processing of their claims, such as documentation verifying property ownership, forms updating claimant names and taxpayer identification numbers, documentation verifying claimants' identity, and death certificates and divorce decrees.  Lastly, the CCC's participation in Payment Documentation Incompleteness outreach has helped to resolve claimant payment issues and has led to over $20,000,000 in payments.

### C.  **Claimant Assistance Centers (CACs).**

The Claimant Outreach Program (COP) continues at the CACs.  To date, the COP has completed over 76,000 outreach calls.  The CACs have continued outreach efforts to claimants with incomplete claims across all damage categories and to claimants who previously started filling out claim forms on the Portal but have not yet submitted them.  The COP also continues outreach to claimants with incomplete Subsistence claims from the Bridge City CAC and Naples CAC.  The CAC comment card program has consistently shown that over 90% of visitors to CACs responded that they "Strongly Agree/Agree" that the service they received was thorough, prompt, and professional and that they would return to the same location for further information and assistance.

D. **Summary of Outreach Calls.**

The table below summarizes some of the Claimant Outreach Program efforts.

| | Table 15. Outreach Call Volume (As of 11/10/13) | | | | | | |
|---|---|---|---|---|---|---|---|
| **Row** | **Location** | **Calls Made** | **Incomplete Claims Affected** | **Claims With New Docs After Call** | **% of Claims With New Docs After Call** | **Claimants Visiting CAC After Call** | **% of Claimants Visiting CAC** |
| **1.** | BrownGreer | 76,248 | 27,466 | 21,272 | 77% | 9,871 | 36% |
| **2.** | Garden City Group | 65,582 | 8,374 | 6,120 | 73% | 648 | 8% |
| **3.** | P&N | 30,168 | 6,496 | 5,778 | 89% | 179 | 3% |
| **4.** | PwC | 806 | 350 | 337 | 96% | 9 | 3% |
| **5.** | **TOTAL** | **172,804** | **42,686** | **33,507** | **78%** | **10,707** | **25%** |

### III.  CONCLUSION

The Claims Administrator offers this Report to ensure that the Court is informed of the status of the Program to date.  If the Court would find additional information helpful, the Claims Administrator stands ready to provide it at the Court's convenience.

/s/ Patrick A. Juneau
PATRICK A. JUNEAU
CLAIMS ADMINISTRATOR

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/EDF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 25th day of November, 2013.

/s/ Patrick A. Juneau
PATRICK A. JUNEAU
CLAIMS ADMINISTRATOR