UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * | MDL 2179 |
| | * | SECTION: "J" (1) |
| Applies to: No 12-970, Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production, Inc., et al. | * | JUDGE BARBIER |
| | * | MAGISTRATE SHUSHAN |

## MEMORANDUM IN SUPPPORT OF JONATHAN ANDRY'S MOTION FOR MODIFICATION OF ORDER OF NOVEMBER 12, 2013 (REC. NO. 11837)

On November 12, 2013, the Court issued an Order overruling and denying the Andry Lerner Interests' Objections to, and Motion to Amend, the Order Granting the Special Master Additional Powers ("Objections"). (Rec. No. 11837). The Objections addressed the Court's Order, dated September 6, 2013, conferring on the Special Master additional powers to investigate "suspicious claims". In its November 12th Order, the Court stated:

> "In light of previous findings related to the conduct of the Andry Lerner law firm and its principals, and findings related to the claim of their client Casey Thonn, **the Court directed the Special Master to review claims submitted by the Andry Lerner firm."**

The Court also noted its understanding of the status of the Special Master's review and the processing of the Andry Lerner clients' claims by the Claims Administrator's Office ("CAO").

> "While movants mention 500 pending claims allegedly being held up for review by the Special Master, the Court understands that most of the pending claims are still in the normal claims processing stage by the Claims Administrator and no determinations has been issued. The Special Master is reviewing a much smaller number, approximately 60-70 claims at the present time."

To date neither Andry nor Andry Lerner has seen any order that singled out Andry Lerner's claims nor one that directed the Special Master to undertake such duties. To date, despite numerous requests, there remains **no guidelines** for how a claim is classified as "suspicious," nor any criteria for the Freeh Group to use. So far in an unprecedented grant of authority, the Court allows the Special Master to do whatever he wants with no corresponding opportunity for Andry to reply, to correct, nor cooperate. This is not law.

Andry does not possess the information reflected in this Order, does not have any reference point as to where the Court got there facts, and has been told **all** of the Andry Lerner cases are stayed.

Jon Andry seeks Modification of the November 12th Order in two respects:

1.  This Court has not made any findings related to the conduct of the Andry Lerner or its principals. In his Report of September 6, 2013, the Special Master has recommended that the Court make certain findings. However, those are merely **proposed findings** that have not been litigated and are based on a selective presentation of evidence and omission of evidence favorable to Andry. Andry is entitled to the full spectrum of due process rights—including discovery of all evidence underlying the Special Master's proposed findings and depositions of critical witnesses—before responding. So far, he has been denied this constitutionally-mandate discovery

2.  The Court must have been furnished with erroneous information from some unnamed source. As recently as today, the CAO has not resumed the processing of any Andry Lerner clients' claims or payment of final awards, all of which have been stayed

since the Court's order in June of this year.  Andry Lerner and their clients continue to suffer serious injury despite the total dearth of any evidence justifying the five-month freezing of their claims, awards, and attorneys' fees without affording them even a modicum of due process.   Jon Andry respectfully requests that Court order that (1) the Andry Lerner clients' awards be paid and its clients' claims resume being processed if they are not among those being reviewed as "suspicious claims" and (2) the Special Master inform Andry Lerner's counsel the identity of those "suspicious claims" that are still under review.

**I.   THE COURT SHOULD ORDER THAT ANDRY LERNER CLAIMS NOT UNDER SPECIAL MASTER REVIEW BE IMMEDIATELY RESTORED TO ACTIVE PROCESSING AND FINAL AWARDS BE PAID AND THE SPECIAL MASTER SHOULD DIVULGE THE CLAIMS UNDER REVIEW**

The Court has been misinformed about the status of Andry Lerner claims. As of today, there is a stay on the processing of those claims and payment of approved for payment. The CAO's office has informed Andry Lener staff working on the claims that they are frozen.  Andry Lerner's counsel has requested information about the processing status of those claims not under Special Master review as "suspicious claims," but there has been no response.  These cases remain in limbo.

The Special Master has identified only 60 of over 500 claims for review.  Andry Lerner's counsel understands that some of them have been already released from the "suspicious claims" list.  However, the Special Master will not divulge to Andry Lerner's counsel the identities of all claims released from review and/or, more importantly, those still being investigated.  This simple information is necessary for Andry Lerner's counsel to properly and timely notify its clients about the status of their respective claims. The

3

Special Master's continued unwillingness to provide this very basic information effectively prohibits Andry Lerner from representing its clients. It harms the innocent clients.

Based on a fully-developed record, no reason exits for not resuming the processing of the claims and paying the final awards not being evaluated as "suspicious claims." All the Andry Lerner claims have been reviewed at least three times, and with the exception of these unidentified claims singled out only by the Special Master, none of the claims have been found to be improper.[1] As explained by Mr. Juneau's counsel at the July 19th hearing:

> "There are multiple layers of professional vendors working in different locations under different supervisors that have to look at each claim. The claims are calculated for cause in one location and then for amount, if they qualify, in another.
>
> "Once the eligibility notice goes out, all of the backup documentation is submitted to both parties to review . . . . It is intended to be an open process.
>
> "And I think your Honor's observation is correct that in order to have that kind of impact on the calculation, you would literally need to have a conspiracy among professional vendors from PriceWaterhouse, Postlethwaite & Netterville, BrownGreer, in addition to others who are quality control checking all of this information. . . .

---

[1] The CAO conducted two independent reviews of Andry Lerner claims and with a few immaterial exceptions, there was no evidence of improper processing. *See* Initial Juneau Report, dated July 2, 2013, and attached as Exhibit 5 of the PSC's opposition to BP's emergency motion; Supplemental Juneau Report (Rec. Doc. 10774-5, filed July 18, 2013). Both Juneau Reports concluded that none of the Andry Lerner claims were improperly manipulated and/or enhanced. The Special Master "did not find any evidence that either Mr. Sutton or Ms. Reitano directly manipulated the valuation of claims by accessing the DHECC database [or] any evidence of such manipulation by other CAO officials." Special Master's Report at 4. Now, a number of claims have passed muster on a fourth review by the Special Master. The record is clear that based on the elaborate internal and external checks and balances in place, it is inconceivable that any CAO staff member could—or did— affect the processing of any claim or the amount of any award.

> "We think that it is highly unlikely that that occurred. . . . But we have not been able to find any evidence that your Honor has asked about, that there is any impact on any particular calculation."

Transcript of Proceedings, July 19, 2013, at 22:1-21, 24-25, 23: 1.

This Court's November 12, 2013 Order seems to indicate that the only claims that remain subject to this Court's hold are the 60 that are being investigated. Andry Lerner submits that there should be a specific order indicating that the hold has been lifted on the balance of the claims. Absent such an order, Andry Lerner and the CAO is left in a state of constant confusion regarding what claims are stayed and what claims are on a hold and what claims are being processed and what claims should be paid.

Andry Lerner submits that the time has come to end immediately this unwarranted five-month stay.  These clients are innocent of any wrongdoing, and no one has accused their counsel of any improper conduct as to their claims.  It is the alleged misconduct *relating to a single claim (Thonn)* that has been used to justify this unprecedented action done without any notice or opportunity to be heard. Such a result is repugnant to any notion of fair play and substantial justice which forms the cornerstone of our judicial system.  John Andry urges the Court to issue an order to the CAO  ordering that it begin processing again all of the Andry Lerner claims that have not tagged for additional review and that the Special Master identify the names of the claims that have been released from, and those that continue to be subject to, "suspicious" circumstances review.

The whole idea of the claims process is transparency.  That noble concept has been completely subverted by the current status, and the clients who hired Andry Lerner are now eventually represented by the whims of the Special Master.  These people

5

injured by BP's negligence did nothing to deserve this shoddy and unprofessional treatment, and the Court should no longer prolong the damage they suffer by not being timely compensated.

## II. NO FINDINGS HAVE BEEN ISSUED BY THE COURT

The Court appointed the Special Master pursuant to Rule 53 of the Federal Rules of Civil Procedure. In its Order, the Court directed the Special Master investigate "the facts and circumstances that led to the resignation of Lionel Sutton III, a staff attorney working for the CSSP . . . ." The Special Master's role is strictly circumscribed and subject to significant limitations, particularly when it comes to the effect of his report. Significantly, the Special Master gathers evidence and makes *proposed* findings to the Court. *See, e.g., Flournoy . Marshall,* 842 F.2d 875 (6th Cir. 1988) (District Court reviews *de novo* specified proposed findings or recommendations to which objection is made); *National Labor Relations Board v. Nesen,* 211 F.2d 559 (9th Cir. 1954) (same) *; cf. United States v. Raddatz,* 447 U.S. 667, 673 (1980) (District Court must review *de novo* magistrate's proposed findings and recommendations because "the magistrate has no authority to make a final and binding disposition.")

Rule 53 (f) (3) mandates that the Court "must decide de novo all objections to findings of fact made or recommended by a master . . . ." The same is true for conclusions of law. *See* Rule 53 (f) (4). Upon receiving the special master's report, the Court "must give the parties notice and an opportunity to be heard . . . ." Rule 53 (f) (1). Since none of these procedures have yet been followed, the Report before the Court is merely a *partial* summary of the evidence and *proposed* findings of fact, conclusions, and

6

recommendations.  If there have been "previous findings"  only one side got to create the evidence, and there findings "must be withdrawn".

At this point, the Report has no evidentiary value and is inadmissible as hearsay. Its only utility is to assist the Court in understanding and framing the issues for the evidentiary hearing.  Independently, the Report is inadmissible double hearsay under Rules 801 (c) and 802 of the Federal Rules of Evidence.

### A. The Court Must Undertake *De Novo* Review of the Report's Contents

Rule 53 (f) (3) mandates that "[t]he court must decide de novo all objections to findings of fact made or recommended by a master" unless the parties stipulate otherwise. *See, e.g., In re Vioxx Prods.Liab. Litig.,* 501 F.Supp.2d 789, 813 (E.D. La. 2007).  The same is true of the Special Master's conclusions of law.  *See* Rule 53 (f) (4), Federal Rules of Civil Procedure.  A *de novo* review means a clean slate independent of the Special Master's take on the evidence.

> "The district court properly analyzed the [special master's] findings and objections *de novo.* The district court gave each of Sukumar's claimed discrepancies *a fresh look*. *See United States v. Silverman,* 861 F.2d 571, 576 (9th Cir.1988) ("Under the *de novo* standard of review, we do not defer to the ... ruling but *freely consider the matter anew, as if no decision had been rendered.*"). The district judge independently considered all of the evidence that the special master considered, including over 270 pages of exhibits and 25 pages of objections. We hold the district judge performed the necessary *de novo* review."

*Sukumar .v Direct Focus, Inc.* 349 Fed. Appx. 163, 165-66 (9th Cir. 2009) (emphasis added).

A *de novo* evidentiary hearing, is required,.   The Special Master never made a record based on an evidentiary hearing that allowed the parties to present and rebut

evidence or comment on the proposed findings and conclusions. *See Commissariat á L'Energie Atomique v. Samsung Electronics Co.,* 345 F.R.D. 177, 179 (D. Del. 2007).

Special Masters are **judicial officers** who are bound by the Constitution and the Federal Rules of Civil Procedure. *See In re Gilbert,* 276 U.S. 6, 9 (1928) (**"When respondent accepted appointment as master he assumed duties and obligations of a judicial officer"**); *People Who Care v. Rockford Bd. of Educ.,* 111 F.3d 528, 541 (7th Cir. 1997) (describing the **special master as an "ad hoc judicial officer"**). This necessarily mandates strict observance of fundamental requirement of due process such as notice and a meaningful opportunity to be heard.

> "There is no greater objective in . . . any judicial proceeding [including those conducted by a special master] than to achieve fundamental fairness. *Plavin v. Sec'y of Health and Human Servs.,* 40 Fed.Cl. 609, 622 (1998) (The rules promulgated for use by the special masters 'are governed by principles of fundamental fairness.'); *See also Campbell,* 69 Fed. Cl. at 778, n. 3 (citing *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)) (stating that due process requires the opportunity to be heard 'at a meaningful time and in a meaningful manner.'); *Doty v. United States,* 53 F.3d 1244, 1251 (Fed.Cir.1995) ('When procedural violations committed by the agency are egregiously removed from fairness, this constitutes an abuse of the agency's administrative discretion.')."

*Richardson v. Secretary of Health and Human Services,* 89 Fed. Cl. 657, 661 (Court of Fed. Claims 2009)

. The Fifth Circuit Rule is:

> "unless *based on hearings conducted on the record after proper notice*, the reports, findings, and conclusions of the special master are not to be accorded any presumption of correctness and the "clearly erroneous" rule will not apply to them."

*Ruiz v. Isabelle,* 679 F.2d 1115, 1162 (5th Cir. 1982) (emphasis added).

### B.  The Report Must Be Excluded As Hearsay

On its face, the Report is classic inadmissible hearsay under Rules 801 (c) and 802 of the Federal Rules of Evidence because Mr. Freeh's commentary constitutes out-of-court statements "being offered in evidence to prove the truth of the matter asserted." Indeed, much of the Report is inadmissible hearsay within hearsay because it purports to quote interviews with witnesses, and neither Mr. Freeh nor the witnesses are in court to be cross-examined and have their credibility assessed by the Court.  *See* Rule 805, Federal Rules of Evidence.

Because of this fact of Law, the Court should not allow this request to justify harming innocent Andry Lerner clients.

The primary reason for the Report's inadmissibility is its untrustworthiness due to the defective procedures employed in compiling the Report, including the lack of any hearings preceding the formulation of the findings and conclusions.[2] *See* Advisory Committee Note, Rule 803 (8); *In re September 11 Litigation,* 621 F. Supp.2d 131, 154 (S.D.N.Y. 2009) (The 9/11 Commission Report held inadmissible).  Public hearings are essential because they can be "the adequate equivalent of cross-examination in protecting litigants' rights." *Id.* at 156 (citing *Franklin v. Skelly Oil Co.,* 141 F.2d 568, 572 (10th Cir. 1944).  Thus, statements in the Report attributed to witnesses in interviews—whether by depositions or summaries—are *per se* excluded as untrustworthy even though they are recorded in a public record.  *See In re September 11 Litigation,* 621 F. Supp.2d at 157. These statements are hearsay-within-hearsay, and no other hearsay exception applies. *Id.; see also United States v. Taylor, 462* F.2d 1023, 1026 (8th Cir. 2006); *Parsons v.*

---

[2] The Special Master's conclusions and recommendations are independently inadmissible under Rules 106 and 806 of the Federal Rules of Evidence.

9

*Honeywell, Inc.,* 929 F.2d 901, 907 (2d Cir. 1991). Thus, like the exclusion of statements attributed to two terrorists in the 9/11 Report, *all* the witness statements in the Report here "cannot quality as factual findings of the [Special Master]." *In re September 11 Litigation,* 621 F. Supp.2d at 157.

In addition, the findings are fatally flawed because they lack any of the badges of reliability. Andry's counsel was not allowed to ask him any questions in the deposition, much less cross-examine or interview any of the other 80 witnesses, documents cited in the report have not been produced to Andry, and there has never been a hearing. None of these findings were "fully tested" and Andry was not afforded "the time-tested search for truth by examination and cross-examination." *Id.* at 158. Accordingly, the Report is excluded as inadmissible hearsay.

In sum, the Court should not have referred to "the findings" because there can't be any. The Court is requested to modify its November 12, 2013 Order to reflect that there have been no findings regarding Andry Lerner and its principals. If there has been a predetermination by the Court to accept the Report as true, then Andry is clearly entitled to know that news.

Dated: December 5, 2013                                  Respectfully submitted,

                                                          By Attorneys:

                                                          /s/Lewis O. Unglesby
                                                          LEWIS O. UNGLESBY (#12498)
                                                          UNGLESBY LAW FIRM
                                                          246 Napoleon Avenue
                                                          Baton Rouge, LA 70802
                                                          Telephone: (225) 387-0120
                                                          Facsimile: (225) 336-4355

## CERTIFICATE OF SERVICE

I hereby certify that on ,December 5, 2013, I served the foregoing Memorandum in Support of Jonathan Andry's Motion for Modification of Order of November 12, 2013 (Rec. No. 11837) via email to all counsel of record.

                                               By Attorneys:

                                               /s/Lewis O. Unglesby
                                               LEWIS O. UNGLESBY (#12498)
                                               UNGLESBY LAW FIRM
                                               246 Napoleon Avenue
                                               Baton Rouge, LA 70802
                                               Telephone: (225) 387-0120
                                               Facsimile: (225) 336-4355