# EXHIBIT 4

1

```
                     UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA


*****************************************************************

IN RE:  OIL SPILL BY THE
OIL RIG DEEPWATER HORIZON
IN THE GULF OF MEXICO ON
APRIL 20, 2010
                                CIVIL ACTION NO. 10-MD-2179 "J"
                                NEW ORLEANS, LOUISIANA
                                TUESDAY, JULY 30, 2013, AT 8:00 A.M.

THIS RELATES TO ALL CASES

*****************************************************************


              SWORN STATEMENT OF JONATHAN ANDRY
         TAKEN BEFORE THE HONORABLE LOUIS J. FREEH
                         SPECIAL MASTER


APPEARANCES:


                                LOUIS J. FREEH, SPECIAL MASTER
                                MATTHEW DOLAN, ESQUIRE


                                AJUBITA LEFTWICH & SALZER
                                BY:  JAMES A. COBB, JR., ESQUIRE
                                SUITE 1500, ENERGY CENTRE
                                1100 POYDRAS STREET
                                NEW ORLEANS, LA  70163



OFFICIAL COURT REPORTER:        CATHY PEPPER, CRR, RMR, CCR
                                CERTIFIED REALTIME REPORTER
                                REGISTERED MERIT REPORTER
                                500 POYDRAS STREET, ROOM HB406
                                NEW ORLEANS, LA  70130
                                (504) 589-7779
                                Cathy_Pepper@laed.uscourts.gov

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
PRODUCED BY COMPUTER.
```

**C O N F I D E N T I A L**

SM-03-GL00622

Case 2:10-md-02179-CJB-DPC   Document 11988-5   Filed 12/16/13   Page 3 of 8

23

| | | |
|---|---|---|
| 08:35AM | 1 | attempt to reach out and say, what's going on; is there any way |
| 08:35AM | 2 | we can do something to kind of get all of this going; tell me |
| 08:36AM | 3 | who I need to talk to; what do I need to do. |
| 08:36AM | 4 | Q.    Was that the first time you had spoken to him directly |
| 08:36AM | 5 | about any of these claims? |
| 08:36AM | 6 | A.    Yes. |
| 08:36AM | 7 | Q.    And was the nature of your communication a complaint about |
| 08:36AM | 8 | the delays? |
| 08:36AM | 9 | A.    Yes. |
| 08:36AM | 10 | Q.    And did you ask for a meeting or an explanation? |
| 08:36AM | 11 | A.    No. |
| 08:36AM | 12 | Q.    Did you ask that someone look into it and report back to |
| 08:36AM | 13 | you or give you additional information? |
| 08:36AM | 14 | A.    I know I just asked if he could, you know, tell me who to |
| 08:36AM | 15 | talk to or something.  And he said, you know, he would let me |
| 08:36AM | 16 | know. |
| 08:36AM | 17 | Q.    Then how many days go past, then you accidentally run into |
| 08:36AM | 18 | them coming out of the building? |
| 08:36AM | 19 | A.    Yes.  You know, I've seen Mr. Juneau a bunch.  And I saw |
| 08:36AM | 20 | them that day.  It was probably about three days later, or four |
| 08:36AM | 21 | days later. |
| 08:36AM | 22 | Q.    In other words, it wasn't any plan or arrangement to meet |
| 08:36AM | 23 | them.  You just met them on the street -- |
| 08:36AM | 24 | A.    Correct. |
| 08:36AM | 25 | Q.    -- as you said? |

**C O N F I D E N T I A L**

SM-03-GL00644

| | | |
|---|---|---|
| 08:37AM | 1 | after Mother's with Mr. Sutton across the street from his |
| 08:38AM | 2 | building. Do you recall the name of the restaurant? |
| 08:38AM | 3 | A.   No.   If you're on the corner, it's like -- if you were on |
| 08:38AM | 4 | the corner where that building is, and I don't know the name of |
| 08:38AM | 5 | the building, I think it's the Commerce Building, and you walk |
| 08:38AM | 6 | directly across the street, it will be right there. |
| 08:38AM | 7 | Q.   And you said the meeting was approximately 45 minutes? |
| 08:38AM | 8 | A.   Yes. |
| 08:38AM | 9 | Q.   And no one else joined you during the meeting? |
| 08:38AM | 10 | A.   No. |
| 08:38AM | 11 | Q.   And could you tell us what you discussed, as best you |
| 08:38AM | 12 | recall? |
| 08:38AM | 13 | A.   Old times, and I tried to address our issue and we kind of |
| 08:38AM | 14 | talked about our issue and how we were friends and we aren't |
| 08:38AM | 15 | anymore. |
| 08:38AM | 16 | Q.   Then did you have a conversation about the pending *BP* |
| 08:38AM | 17 | claims? |
| 08:38AM | 18 | A.   Nothing more than what I would have told anybody, and that |
| 08:38AM | 19 | is, you know, whatever help you can give me, give me, I need to |
| 08:38AM | 20 | get my claims done.   They are sitting there and they are kind |
| 08:38AM | 21 | of languishing, and I don't know what's going on, but, you |
| 08:38AM | 22 | know, if you could help me out, help me out. |
| 08:38AM | 23 | Q.   What, if anything, did he say? |
| 08:38AM | 24 | A.   He said that he really didn't -- you know, he wasn't over |
| 08:38AM | 25 | any claims.   Didn't deal with any claims.   And he understood my |

**CONFIDENTIAL**

SM-03-GL00646

| | | |
|---|---|---|
| 08:38AM | 1 | concern and my complaint because that was happening a lot, but |
| 08:39AM | 2 | the facility was getting better, and that they were trying to |
| 08:39AM | 3 | process claims. |
| 08:39AM | 4 | Q.   Did he agree to get back to you or get you some more |
| 08:39AM | 5 | information after the meeting? |
| 08:39AM | 6 | A.   Yes.  But I mean, you know, it's one of those things where |
| 08:39AM | 7 | you say, I'll call you back, and he never did. |
| 08:39AM | 8 | Q.   Never called you back? |
| 08:39AM | 9 | A.   Correct. |
| 08:39AM | 10 | Q.   And then you mentioned the subsequent meeting that you had |
| 08:39AM | 11 | with him. |
| 08:39AM | 12 | A.   Yes. |
| 08:39AM | 13 | Q.   And approximately when was that again? |
| 08:39AM | 14 | A.   That was after all of this happened. |
| 08:39AM | 15 | Q.   And when you say *all this*, what do you mean? |
| 08:39AM | 16 | A.   Like after my name was in the paper and all that stuff. |
| 08:39AM | 17 | Actually, no, no, no. |
| 08:39AM | 18 | Q.   After the stories in the press? |
| 08:39AM | 19 | A.   Yes. |
| 08:39AM | 20 | Q.   And could you tell me where that meeting occurred? |
| 08:39AM | 21 | A.   At my office. |
| 08:39AM | 22 | Q.   And who initiated it? |
| 08:39AM | 23 | A.   Tiger. |
| 08:39AM | 24 | Q.   And how long did you meet together with him? |
| 08:39AM | 25 | A.   15 minutes, 20 minutes. |

**CONFIDENTIAL**

SM-03-GL00647

```
08:44AM   1    going on.  I have got my litigation in Andry Law Group, my
08:44AM   2    stuff with Andry Law Firm and other stuff kind of going on.
08:45AM   3             So when Glen and I would meet, it wasn't regularly
08:45AM   4    scheduled partnership meetings.  He would just be in town and I
08:45AM   5    would talk to him or I would just talk to him.
08:45AM   6             There are times that things like the referral fee on
08:45AM   7    Casey Thonn would bubble up.  I know that when we got the case,
08:45AM   8    there was a discussion about a referral fee.  Christine worked
08:45AM   9    for the facility, but Tiger did not.  And Glen had some
08:45AM  10    discussions with them about a 50/50 referral split on the fee.
08:45AM  11    Q.   Did Glen relay those conversations to you?
08:45AM  12    A.   Yes.  I never had any conversations, because at the time I
08:45AM  13    wasn't talking to Tiger, so I never had any conversation with
08:45AM  14    Tiger at all or Christina at all about the Casey Thonn matter.
08:45AM  15             But when I talked about it with Glen, it was about
08:45AM  16    the propriety of paying a referral feel.  And keep in mind, it
08:45AM  17    wasn't, from my perspective, that they weren't entitled to the
08:45AM  18    fee, because when we got the Casey Thonn matter, there was an
08:45AM  19    extensive body of work that Ms. Reitano did shepherding the
08:45AM  20    claim through the Gulf Coast Claims Facility.  So as a result
08:46AM  21    of that, I never thought they weren't entitled to the fee, but
08:46AM  22    it was just talked to me or explained to me, I guess, by Lerner
08:46AM  23    during the time that we talked about it that it wasn't proper
08:46AM  24    for them to receive a fee because they worked at the
08:46AM  25    facility -- or she worked at the facility.
```

**C O N F I D E N T I A L**

SM-03-GL00652

| | | |
|---|---|---|
| 09:10AM | 1 | A.   Payment of a referral fee to Mr. Sutton, that's correct. |
| 09:10AM | 2 | Q.   Payment of a referral fee.  And would it be fair to |
| 09:10AM | 3 | characterize that as a disagreement or an argument between the |
| 09:10AM | 4 | two of you and Mr. Lerner? |
| 09:10AM | 5 | A.   It was a discussion about how to handle the matter. |
| 09:10AM | 6 | Q.   Did you object to a fee being paid? |
| 09:10AM | 7 | A.   Yes. |
| 09:10AM | 8 | Q.   And did you make that clear to Mr. Lerner? |
| 09:10AM | 9 | A.   Yes. |
| 09:10AM | 10 | Q.   And what was the basis of your objection and what did you |
| 09:10AM | 11 | express to Mr. Lerner as the basis of your objection? |
| 09:10AM | 12 | A.   My understanding from Glen was that Tiger worked at the |
| 09:10AM | 13 | facility and it was primarily from, when Christina sent us the |
| 09:10AM | 14 | case, that if she sent us the case, then she can't work on it |
| 09:10AM | 15 | or get a fee.  And so I just presumed that Tiger was in the |
| 09:10AM | 16 | same position.  So if they couldn't receive a fee, I just |
| 09:10AM | 17 | assumed that they shouldn't receive a fee.  Excuse me, I |
| 09:10AM | 18 | assumed that if they couldn't receive a fee, that we shouldn't |
| 09:11AM | 19 | pay them one.  And so we didn't pay them one. |
| 09:11AM | 20 | Q.   So your objection -- and correct me if my question assumes |
| 09:11AM | 21 | the wrong fact, but it sounds to me that your objection was not |
| 09:11AM | 22 | whether it was a referral fee or something else, it was the |
| 09:11AM | 23 | fact that it was any payment at all? |
| 09:11AM | 24 | A.   It was a referral fee.  And not any payment at all.  In my |
| 09:11AM | 25 | plaintiff world in New Orleans, according to our custom and |

**C O N F I D E N T I A L**

SM-03-GL00669

| | |
|---|---|
| 09:19AM  1 | facility, I would say, can you help me out him get the claim |
| 09:19AM  2 | done, you know, all my claims are stuck. What do I need to do? |
| 09:19AM  3 | Q.    So on that particular claim, do you recall speaking to |
| 09:19AM  4 | Mr. Juneau about it at that time? |
| 09:19AM  5 | A.    I spoke with Pat about a bunch of claims at that time. |
| 09:19AM  6 | Q.    Do you recall talking to him, not complaining, but |
| 09:19AM  7 | pointing out to him that this particular claim seemed to be |
| 09:19AM  8 | stuck and it was a very important claim to you and the firm? |
| 09:19AM  9 | A.    I pointed out to him that that claim was stuck, as was |
| 09:19AM 10 | about six other claims. |
| 09:19AM 11 | Q.    And -- |
| 09:19AM 12 | A.    And I didn't single that one out in particular, because |
| 09:19AM 13 | that would not have been in any discussion I had because my |
| 09:20AM 14 | operation was to get every one of them done. |
| 09:20AM 15 | Q.    So is it your testimony you didn't specifically mention |
| 09:20AM 16 | that claim to him? |
| 09:20AM 17 | A.    No, it's not my testimony that I didn't specifically |
| 09:20AM 18 | mention it one way or the other. I may have, and I probably |
| 09:20AM 19 | did. As I sit here now, I don't really remember whether I |
| 09:20AM 20 | singled that one out and said, what about this one, as opposed |
| 09:20AM 21 | to all of the other ones. |
| 09:20AM 22 | Q.    Did you have a similar conversation with anyone else at |
| 09:20AM 23 | that time, March of this year, who worked at the facility? |
| 09:20AM 24 | A.    I may have, but I don't remember specific conversations. |
| 09:20AM 25 | Q.    Did Mr. Juneau or anyone get back to you after you had |

**CONFIDENTIAL**

SM-03-GL00676