## MARY OLIVE PIERSON

ATTORNEY AT LAW

POST OFFICE BOX 14647

BATON ROUGE, LOUISIANA 70898-4647

TELEPHONE: 225-927-6765
TELECOPIER: 225-927-6775
E-Mail: mop@mopslaw.com

PHYSICAL ADDRESS:
8702 JEFFERSON HWY.
SUITE B
BATON ROUGE, LA 70809

August 9, 2013

Louis J. Freeh, Chairman
Pepper Hamilton, LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, DC 20005-2004

Via Email: louisjfreeh@pepperlaw.com

Attention: Matthew Dolan

Via Email: dolan@freehgroup.com

Re:   Christine Reitano

Dear Mr. Freeh:

You will recall that during your interview with my client, Christine Reitano, you asked her several questions about whether she had the responsibility for checking out conflicts among the staff or the attorneys working for the Claims Administrator. If my memory serves me correctly, Ms. Reitano correctly informed you that it was not her responsibility and that she felt it was the responsibility of the Claims Administrator and the CEO of the Claims Administration office.

Recently, I have reviewed BP's Memorandum in Support of its Renewed Motion for a Preliminary Injunction in which they make allegations about conflicts which have arisen with certain members of the pool of Appeal Panelists. I am writing to inform you that, prior to her termination, Ms. Reitano was never made aware of any of the facts related to the alleged conflicts with the Appeal Panelists and continued to be unaware of those facts until we obtained BP's Memorandum in Support of its Renewed Motion. Ms. Reitano played no part in the discovery of the alleged conflicts or the determination of the resolution of those conflicts. This further validates Ms. Reitano's responses that she was not responsible for these matters.

In fact, I have now written to the Claims Administrator in an effort to determine just exactly why the Appeals Panelists, who apparently had actual conflicts while they continued working as Appeals Panelists, were treated extremely differently from Ms. Reitano, who was fired even though she had divested herself of any potential conflicts prior to going to work for the Claims Administrator. That disparity in treatment, however, is not the main purpose of this correspondence.

EXHIBIT

2

Mary Olive Pierson

Louis J. Freeh
August 9, 2013
Page 2

I am writing to you because I have had an opportunity to review in great detail the Declaration of Mr. Keith Moskowitz which was attached as Exhibit 4 to BP's Original Motion for Injunctive Relief.[1] This affidavit was one of the primary pieces of "evidence" used at the original injunction hearing and probably formed a substantial basis for all of the misinformed allegations about Ms. Reitano. I have taken the liberty of internally comparing the various components of Mr. Moskowitz's sworn affidavit and also comparing the "allegations" to the actual description of Ms. Reitano's job as set forth in Schedule 1 of her Employment Agreement. Upon this close examination, the intended gravitas of Mr. Moskowitz's affidavit disappears in relation to the allegations against Ms. Reitano.

Although I previously provided you with the contents of Schedule 1 which describe Ms. Reitano's job duties, I am providing them here and again for your convenience:

Description and Scope of Services for Christine Reitano (Document No. 10761-2)

Christine will serve as Claims Counsel for the Claims Administrators Office with the following responsibilities:

- Work with the Parties to identify any policy / legal issues and seek resolution at the direction of the Claims Administrator

- Assist the Claims Administrator with interpretation of the Settlement Agreement, Court Orders and other legal documents

- Work with the vendors and Contract Administrator's staff on legal issues and provide guidance as needed

---

[1]Document Number 10761-5, Case 2:10-md-02179

Mary Olive Pierson

Louis J. Freeh
August 9, 2013
Page 3

With that backdrop, I provide for you the following comparison and translation of Mr. Moskowitz's affidavit testimony:

Analysis of Moskowitz Affidavit
Document No. 10761-5

| | |
|---|---|
| Under the refined process, the Claims Administrator issues a written Request for Input from BP and Class Counsel regarding a question or issue identified by the Claims Administrator related to the implementation or administration of the Settlement. (Affidavit, Para. 5) | Ms. Reitano sent out the written requests for input described above. (Affidavit, Para. 6)<br><br>Translated: Ms. Reitano wrote letters to all parties at direction of Claims Administrator. (See Schedule 1 to Supplement to Reitano Undertaking) |
| Once BP and Class Counsel respond to the Request for input,... (Affidavit, Para. 5) | ...[Ms. Reitano] collected the parties' comments and input on policy issues. (Affidavit, Para. 6)<br><br>Translated: Ms. Reitano received letters from all parties. (See Schedule 1 to Supplement to Reitano Undertaking) |
| ...the Claims Administrator issues a written Policy Statement which constitutes the Claims Administrator's position on the question or issue. (Affidavit, Para. 5) | She also announced policy decisions made by the Settlement Program to the parties. (Affidavit, Para. 6)<br><br>Translated: Ms. Reitano informed the parties of the decisions of the Claim Administrator (See Schedule 1 to Supplement to Reitano Undertaking) |

Mary Olive Pierson

Louis J. Freeh
August 9, 2013
Page 4

| | |
|---|---|
| If both parties "agree" with the Policy Statement, the Claims Administrator will issue a Final Policy Announcement (sometimes referred to as a "policy decision"), and the policy decision will be implemented by the Claims Administrator. However, if the parties do not agree with the Policy Statement, the parties typically provide comments for the Claims Administrator's consideration, and either classify the policy as a "Claims Administrator Decision," which means that they are acknowledging the policy subject to a reservation of the right to object to the policy in the future, including, but not limited to, instances in which the policy is applied to specific claims. (Affidavit, Para. 5) | I have personally corresponded, or been included on correspondence, with Ms. Reitano regarding many of the Settlement Program's policy determinations. (Affidavit, Para. 6)<br><br>Translated: Ms. Reitano wrote letters to all parties about phases of the policy determination decision and Mr. Moskowitz was copied on the letters. Also, Mr. Moskowitz wrote to the Claim Administration office and he copied Ms. Reitano.<br>(See Schedule 1 to Supplement to Reitano Undertaking) |
| As described above, representatives of the Settlement Program, Plaintiffs' Steering Committee and BP have met for Panel Meetings contemplated by the Settlement Agreement. The Panel Meetings are intended to resolve issues or disputes related to settlement administration. (Affidavit, Para. 8) | From my personal experience, Ms. Reitano attended many of these Panel Meetings. From my personal experience, Mr. Sutton and Ms. Reitano also attended meetings between the Settlement Program, the PSC, and BP regarding policies that govern claim payments in a range of areas, including seafood compensation, subsistence claims, business economic loss claims, and claims for the moratorium placed on oil and gas exploration. (Affidavit, Para. 8).<br><br>Translated: Ms. Reitano attended meetings with representatives of all parties.<br>(See Schedule 1 to Supplement to Reitano Undertaking) |

As you can plainly see, even Mr. Moskowitz's allegations, on close scrutiny, only claim that Ms. Reitano was doing her job of keeping the parties informed (including Mr. Moskowitz), receiving their correspondence, sharing it with the Claim Administrator and informing the parties of his decisions. She also attended meetings by all of the parties, including Mr. Moskowitz. As I said to you in a prior letter, Ms. Reitano helped develop the collaborative process, which the parties approved, and she helped facilitate the working of the process.

Mary Olive Pierson

Louis J. Freeh
August 9, 2013
Page 5


I realize that when I volunteered to share information with you, you said you did not wish to hear or receive any information from me. However, as the attorney for Ms. Reitano, I would be remiss in my duties if I did not bring these things to your attention and the court's attention before the conclusion of your investigation. In my view, knowledge is power and I want you to have all the knowledge that I have.

Thank you for your time and attention.

Sincerely,

Mary Olive Pierson


cc:     Judge Carl Barbier (via federal express)
        Hale Boggs Federal Building
        500 Poydras St. Room C256
        New Orleans, LA 70130
        Telephone: 504-589-7525

        Steve Tidwell, Managing Director (via email: tidwell@freehgroup.com)
        Freeh Group International Solutions

        Mike McCall, Senior Consultant (via email: mccall@freehgroup.com)
        Freeh Group International Solutions, LLC

        Mark Holstein (via fax: (281) 366-5901)
        BP Legal

        James P. Roy (via email: Jimr@wrightroy.com)
        Domengeaux, Wright, Roy & Edwards

        Stephen J. Herman (via fax: (504) 561-6024)
        Herman, Herman & Katz, LLP

        Patrick Juneau (via email: pjuneau@dheclaims.com)
        the Deepwater Horizon Economic and Property Damages Trust

        Christine Reitano (via email)