UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL BY THE OIL RIG      MDL 2179
"DEEPWATER HORIZON" IN THE
GULF OF MEXICO, ON APRIL 20, 2010   SECTION: "J"

This Document Applies to:          JUDGE BARBIER
                                  MAG. JUDGE SHUSHAN

No. 12-970, Bon Secour Fisheries, Inc., et al.
v. BP Exploration & Production Inc., et al.

**ANDRY LERNER, LLC'S RESPONSE TO THE COURT'S SEPTEMBER 6, 2013
ORDER TO SHOW CAUSE AND OBJECTIONS TO SPECIAL MASTER'S REPORT**

Andry Lerner, LLC ("Andry Lerner") hereby submits its Response to this Court's rule to "show cause" why the Court should not adopt "Special Master Louis J. Freeh's Findings and Recommendations" Rec. Doc. 11287 ("Report") that the Andry Lerner law firm be disqualified "from representing [Court Supervised Settlement Program ("CSSP")] claimants (or collecting fees from such claimants) under the "Unclean Hands Doctrine," Rec. Doc. 11288 ("Order")[1].

Andry Lerner bases its response and objections on the following:

1.     The proposed sanctions divest Andry Lerner of vested property rights in client contracts without due process of law and based upon a Report that is not admissible as evidence;

2.     The proposed sanctions would have the effect of harming the employees and creditors of Andry Lerner who provided goods, services and money so that the Andry Lerner clients could file and pursue their claims under the CSSP;

3.     The proposed sanctions would have the effect of harming and divesting contractual rights of lawyers who referred cases to Andry Lerner without due process of law; and

---

[1] Andry Lerner adopts the Responses filed by Jonathan Andry and Glenn Lerner.  The issues raised by Andry Lerner in this brief address only legal issues involving Andry Lerner as opposed to its members.

{00338377-4}

1

4.      The proposed sanctions are punitive in nature and are not related to any harm allegedly caused by the Andry Lerner law firm to any party.

**ANDRY LERNER THE ENTITY**

Andry Lerner is a Louisiana law firm comprised of Jonathan Andry and Glen Lerner.  It was formed for the purpose of representing individuals and entities that were damaged by the BP Oil Spill.  The firm has operated since 2012.  It has full and part time employees, lease obligations, and bills outstanding for work performed by third party vendors whose work benefited the Andry Lerner clients.

The firm has filed in excess of 750 claims under the CSSP.  The firm's fee basis with its clients is pursuant to a written contingent fee contract executed by the client and the firm.  Under the contract, the client agrees to pay a percentage of the client's recovery to Andry Lerner.  In addition, out of the client's recovery, costs and expenses incurred in pursuing the claim are deducted from the recovery.  Andry Lerner, out of the fees it receives, pays its obligations to the lawyers who referred cases and its on-going operating costs and then, to the extent a profit exists, makes a distribution to its members.  The payments made by the firm to its employees, creditors and referring lawyers are significant.

**RIGHTS POSSESSED BY ANDRY LERNER AND ITS CLIENTS WILL BE ABROGATED IF THE FREEH RECOMMENDATIONS ARE ADOPTED**

A contingent fee contract provides for the retention of the attorney's services and provides for compensation of the attorney for the professional services rendered.  The attorney agrees to perform certain legal services.  In return, the client agrees that, if the attorney is successful in making a recovery, the attorney will receive a portion of that recovery.  If no recovery results, no compensation is received by the attorney.

Justice Tate in *Due v. Due*, 342, So. 2d 161, 165 (LA 1977) observed:

{00338377-4}

A contingent fee contract … involves a mandate or agency by which the client empowers the attorney to act for him.  Article 2985 of the La. CC et seq.  The contingent fee contract is, thus, subject to the rules of mandate, including revocation at the will of the client principal (Article 3028 and *Forster, Hall, Barret and Smith v. Haley*, 142 So. 251 (1932).

Louisiana case law and statute recognize that an attorney with a valid contingent fee contract has an "interest in the subject matter of the suit" and an enforceable right to share in the funds eventually recovered.  See La. R.S. 37:218.

The attorney's rights in the recoveries under the suit or claim filed on behalf of clients exist even if the attorney is discharged.  La. R.S. 9:5001 and La. R.S. 37.218 grant to the dismissed attorney a privilege in the funds eventually obtained in the lawsuit.  Under Louisiana law, the attorney who has a valid contingent fee contract possesses an interest in the subject matter of the suit that is protected under Louisiana law. As set forth below, that right cannot be dispossessed without due process of law.

## DUE PROCESS REQUIRES THAT ANDRY LERNER IS ENTITLED TO DE NOVO REVIEW OF THE SPECIAL MASTER'S FINDINGS AND RECOMMENDATIONS

Rule 53(f)(3) of the Rules of Civil Procedure requires that "[t]he court must decide de novo all objections to findings of fact made or recommended by a master" unless the parties stipulate otherwise. *See, e.g., In re Vioxx Prods.Liab. Litig.,* 501 F.Supp. 2d 789, 813 (E.D. La. 2007). The same is true of the Special Master's conclusions of law. *See* Rule 53(f)(4), Federal Rules of Civil Procedure. A *de novo* review means a new review.

The district court properly analyzed the [special master's] findings and objections *de novo.* The district court gave each of Sukumar's claimed discrepancies *a fresh look*. *See United States v. Silverman,* 861 F.2d 571, 576 (9th Cir.1988) ("Under the *de novo* standard of review, we do not defer to the ... ruling but *freely consider the matter anew, as if no decision had been rendered.*"). The district judge independently considered all of the evidence that the special master considered, including over 270 pages of exhibits and 25 pages of objections. We hold the district judge performed the necessary *de novo* review.

{00338377-4}

*Sukumar .v Direct Focus, Inc.* 349 Fed. Appx. 163, 165-66 (9th Cir. 2009) (emphasis added).

In *Ruiz v. Isabelle*, 679 F. 2d 1115, 1162 (5th Cir. 1982), the 5th Circuit recognized that the findings and recommendations of a special master are not to be accorded any presumption of correctness or receive the benefit of the clearly erroneous rule.

Andry Lerner recognizes that the Special Master has spent a significant amount of time in preparing his Report.  Our judicial system requires that the Report and its findings be viewed under both the Federal Rules of Civil Procedure and Federal Rules of Evidence with Andry Lerner provided the ability to cross-examine witnesses, exclude inadmissible evidence and produce its own evidence to this Court on the findings and recommendations raised in the Report.

**PROCESS EMPLOYED BY THE SPECIAL MASTER
HAS NOT BEEN FAIR AND REASONABLE**

The Special Master, in order to arrive at his Findings and Recommendations, interviewed a number of witnesses and reviewed documents.  While Andry Lerner was allowed to attend certain interviews, it did not receive notice or an opportunity to attend and participate in all interviews, and in most instances it was not allowed to question witnesses nor was it provided access to all documentation received by the Special Master.  The process employed by the Special Master has not afforded Andry Lerner an ability to defend itself as provided under the Federal Rules.

In *Richardson v. Secretary of Health and Human Services,* 89 Fed. Ct. 657, 661 (Court of Fed. Claim 2009), the Court stated:

> There is no greater objective in . . . any judicial proceeding [including those conducted by a special master] than to achieve fundamental fairness. *Plavin v. Sec'y of Health and Human Servs.,* 40 Fed.Cl. 609, 622 (1998) (The rules promulgated for use by the special masters 'are governed by principles of fundamental fairness.'); *See also Campbell,* 69 Fed. Cl. at 778, n. 3 (citing

{00338377-4}

*Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)) (stating that due process requires the opportunity to be heard 'at a meaningful time and in a meaningful manner.'); *Doty v. United States,* 53 F.3d 1244, 1251 (Fed.Cir.1995).

In addition, the report and the process are also flawed inasmuch as (1) this Court has only been given access to material that supports the Special Master's Findings and Recommendations as opposed to other exculpatory evidence that would be presented at a trial on the matter; and (2) the material supplied to the Court may not constitute admissible evidence.

## THE REPORT CANNOT BE USED AT ANY EVIDENTIARY HEARING

On its face, the Report is classic inadmissible hearsay under Rules 801(c) and 802 of the Federal Rules of Evidence because Mr. Freeh's rendition of a witness's testimony constitutes out-of-court statements "being offered in evidence to prove the truth of the matter asserted." Indeed, much of the Report is inadmissible hearsay-within-hearsay because it purports to quote interviews with witnesses that were not conducted by Mr. Freeh but, rather, his staff and secondly, neither Mr. Freeh nor the witnesses are in court to be cross-examined and have their credibility assessed by the Court. *See* Rule 805, Federal Rules of Evidence.  The Report does not fit within any exception to the hearsay rule.  No evidence that is admissible in Court has been submitted to this Court to warrant the relief requested in the Report.

The primary reason for the Report's inadmissibility is its untrustworthiness due to the defective procedures employed in compiling the Report, including the lack of any hearings preceding the formulation of the Findings and Recommendations.[2] *See* Advisory Committee Note, Rule 803 (8); *In re September 11 Litigation,* 621 F. Supp.2d 131, 154 (S.D.N.Y. 2009)

---

[2]  The Special Master's Findings and Recommendations are independently inadmissible under Rules 106 and 806 of the Federal Rules of Evidence.

{00338377-4}

(The 9/11 Commission Report held inadmissible). Public hearings are essential because they can be "the adequate equivalent of cross-examination in protecting litigants' rights." *Id.* at 156 (citing *Franklin v. Skelly Oil Co.,* 141 F.2d 568, 572 (10th Cir. 1944). Thus, statements in the Report attributed to witnesses in interviews—whether by depositions or summaries—are *per se* excluded as untrustworthy even though they are recorded in a public record. *See In re September 11 Litigation,* 621 F. Supp.2d at 157. These statements are hearsay-within-hearsay, and no hearsay exception applies. *Id.; see also United States v. Taylor, 462* F.2d 1023, 1026 (8th Cir. 2006); *Parsons v. Honeywell, Inc.,* 929 F.2d 901, 907 (2d Cir. 1991). Thus, like the exclusion of statements attributed to two terrorists in the 9/11 Report, *all* the witness statements in the Report here "cannot quality as factual findings of the [Special Master]." *In re September 11 Litigation,* 621 F. Supp.2d at 157.

In addition, the Findings are fatally flawed because they lack any of the badges of reliability. Counsel was not allowed to ask the witness any questions in the deposition, much less cross-examine or interview any of the other 80 witnesses, documents cited in the Report have not been produced to Andry Lerner, and there has never been a hearing. None of these Findings were "fully tested" and Andry Lerner was not afforded "the time-tested search for truth by examination and cross-examination." *Id.* at 158. Accordingly, the Report must be excluded as inadmissible hearsay.

### THE REQUESTED RELIEF HARMS THIRD PARTIES NOT MENTIONED OR IDENTIFIED IN THIS REPORT AS HAVING UNCLEAN HANDS

The relief requested by the Special Master based upon his "unclean hands doctrine" has the effect of harming Andry Lerner employees, its vendors and its lenders who have provided goods and services in support of an Andry Lerner client's claim. The Special Master's Report is devoid of any reference to any "questionable activity" by an Andry Lerner vendor whose sole

{00338377-4}

source of repayment would be the legal fees and costs paid to Andry Lerner under its "contingency fee" contract[3].

In addition to the Andry Lerner vendors, the impact of the relief requested by the Special Master would result in the lawyers who referred clients to Andry Lerner failing to receive the benefit of their contract. Other than the potential issue with Tiger Sutton, the Report is silent as to any wrongdoing done by any "referring attorney".

## THE PROPOSED SANCTION UNDER THE UNCLEAN HANDS DOCTRINE BEARS NO RELATIONSHIP TO THE ASSERTED VIOLATION

The only allegation raised in the Report concerning the Andry Lerner law firm relates solely to a $40,000 payment made to Tiger Sutton. Because of that alleged infraction, the Special Master recommends that this Court void over 675 contingent fee contracts, the contractual expectancy of the Andry Lerner creditors and referring attorneys.

The Doctrine of Unclean Hands cited in the Report is an "equitable remedy". Case law requires that a Court has an obligation to impose the least drastic sanction necessary to achieve the deterrent effect. See *Chenevert v. GC Contractors*, 2011 WL 1344248 (N.D. Miss April 8, 2011).

The proposed sanction suggested in the Report is not related to any alleged harm and would adversely impact third parties who have not been identified as undertaking any questionable activity. Andry Lerner would request that the Court take into account the following undisputed facts:

1. The Thonn referral fee was only $40,000.00. The payment to Sutton did not come from any Andry Lerner account;

---

[3] In fact, the Special Master Report does not identify a single payment made by the Andry Lerner law firm and Tiger Sutton or any third party that the Report identifies as questionable.

7

{00338377-4}

2.  Andry Lerner has at least 675 other claims where no questionable activity has been identified; and

3.  The requested relief adversely impacts people and entities that have no relationship to the Thonn matter.

## CONCLUSION

Based upon the foregoing and the Responses and Objections filed by Jonathan Andry and Glen Lerner, this Court should (1) deny the relief requested in the Report, and (2) set a *de novo* trial to hear evidence on the allegations contained in the Report.


December 16, 2013

RESPECTFULLY SUBMITTED:

BY: */s/Douglas S. Draper*
Douglas S. Draper (La. Bar #5073)
Heller, Draper, Patrick & Horn, LLC
650 Poydras Street, Suite 2500
New Orleans, LA  70130
Telephone: (504) 299-3300
Facsimile: (504)299-3399
ddraper@hellerdraper.com

8

{00338377-4}