# Exhibit I



**GULF COAST CLAIMS FACILITY**
**FINAL RULES GOVERNING**
**PAYMENT OPTIONS, ELIGIBILITY AND SUBSTANTIATION CRITERIA, AND**
**FINAL PAYMENT METHODOLOGY**

**February 18, 2011**

The Gulf Coast Claims Facility ("GCCF") hereby announces its Final Rules Governing Payment Options, Eligibility and Substantiation Criteria, and Final Payment Methodology ("Final Rules"). The GCCF is acting for and on behalf of BP in fulfilling its statutory obligations as a "responsible party" under the Oil Pollution Act of 1990. All claimants have the right to consult with an attorney of their own choosing prior to accepting any settlement or signing a release of legal rights.

## I. INTRODUCTION

This document describes: 1) the eligibility criteria required for all private, individual and business claimants to file a claim with the GCCF seeking a Final Payment or an Interim Payment from the GCCF; 2) the calculation methodology being used by the GCCF to determine compensation sought by the claimant; 3) the documentation requirements that need to be met as a prerequisite for compensation; and 4) new procedures designed to promote greater transparency and consistency in the GCCF claims process.

On February 2, 2011, the GCCF published a draft Announcement of Payment Options, Eligibility and Substantiation Criteria and Final Payment Methodology. In an effort to promote full disclosure and transparency, the GCCF's Announcement requested public comment during the period February 2 through February 16, 2011, from all claimants and other interested parties.

During the past two weeks the GCCF has received some 1,440 comments from claimants, businesses, experts, public officials and other interested parties expressing opinions concerning these and other related issues. These comments have been posted for public view on the GCCF website (www.gulfcoastclaimsfacility.com.). The GCCF has carefully considered all comments in the drafting of these Final Rules and, in response to the comments, has revised certain of its proposals to the draft Announcement published on February 2, 2011.

The GCCF continues to seek a comprehensive understanding of the impact caused by the Deepwater Horizon Incident (the "Oil Spill") and its aftermath. Experts retained by the GCCF have researched and studied various reports and data pertaining to the future of the Gulf, and have compiled an extensive list of references. All of these materials were posted on the GCCF website on February 2, 2011, and remain available for review at www.GulfCoastClaimsFacility.com. In adopting its Final Rules governing payment of Final and Interim Claims, the GCCF has gathered facts and opinions from various sources in an effort to develop a credible and fair payment program.

With the promulgation of the Final Rules, the GCCF will now commence the next phase of the Payment Program: the payment of Final and Interim Claims to those claimants who have been damaged as a result of the Oil Spill. All claimants should carefully consider three options:

1. A Final Payment: A Final Payment will provide compensation to the claimant for all documented past damage plus estimated future damage due to the Oil Spill and will resolve the claimant's entire claim against BP and all other potentially liable parties for any and all past and future damages. **To receive a Final Payment, a claimant will be required to sign a release precluding the claimant from seeking further compensation from the GCCF, the Coast Guard, or in court from either BP or any other defendant companies allegedly responsible for the Oil Spill.**

2. An Interim Payment: An Interim Payment will provide compensation to the claimant for all past documented damage due to the Oil Spill; the damage must be documented but **no release will be required.** Under this option, the claimant may return to the GCCF once each quarter of the calendar year seeking additional documented past damage. This Interim Payment option does not require that the claimant surrender any litigation rights.

3. A "Quick Payment:" A Quick Payment of $5,000 to an individual claimant or $25,000 to a business claimant. This option is available to any claimant who has received either an Emergency Advance Payment or an Interim Payment from the GCCF without any requirement that the claimant provide additional documentation. **This Quick Payment option will be accompanied by a full release, precluding the claimant from seeking further compensation from the GCCF, the Coast Guard, or in court from either BP or any other defendant companies allegedly responsible for the Oil Spill.**

## II. ELIGIBILITY CRITERIA

The GCCF adopts the following principles governing the eligibility criteria applicable to both Final and Interim Claims for individuals and businesses.

1. All individuals and businesses that incurred losses due to the Oil Spill are entitled to and are encouraged to file a Final or Interim Claim with the GCCF. Neither physical proximity to the Oil Spill nor a particular type of work or business engaged in by the claimant is a prerequisite to eligibility for payment of a claim. ***But adequate documentation of damage attributable to the Oil Spill is required***. Physical proximity to the Oil Spill, and the nature of the business or work engaged in by the claimant, are important factors when it comes to the proof needed to document a claim that the damage was caused by the Oil Spill. (See IV, below.) The ability of the claimant to link the alleged damage to the Oil Spill – as opposed to other factors such as a general downturn in the Gulf region economy or other financial uncertainty unrelated to the Oil Spill -- is required. (See Attachment A.)

2. The GCCF will evaluate each claim to determine whether a loss was caused by the Oil Spill. Each claim will stand on its own individual merits. In all cases, there must be an identifiable link between an actual loss and the Oil Spill. Evidence establishing this connection is required.

3. Claimants who were deemed ineligible for a GCCF Emergency Advance Payment are invited to resubmit a claim seeking a Final Payment or an Interim Payment, accompanied by documentation proving a connection to the Oil Spill.

4. Individuals who were physically injured or who represent decedents who suffered death due to the Oil Spill are eligible to receive compensation from the GCCF. Such claims must be documented, proving that the physical

injury or death is attributable to the Oil Spill and not some other cause. In cases where claimants assert a disability caused by the Oil Spill, evidence of partial or permanent disability (such as a Social Security or State Workers' Compensation determination of disability) will be required in order to determine the extent of any long term impact on the ability of the claimant to work in his/her chosen profession.

5. Individuals and businesses with claims for damage to real or personal property are eligible to receive compensation from the GCCF.

6. Individuals who use the natural resources that have been injured or destroyed as a result of the Oil Spill to obtain food, shelter, clothing, medicine or other subsistence use are eligible to receive compensation from the GCCF.

7. **Claims related to the moratorium on deepwater drilling, property damage claims for vessels used in the Vessels of Opportunity Program and claims by all Government entities are ineligible for compensation from the GCCF.**

## III. CALCULATION OF AWARDS FOR FINAL AND INTERIM PAYMENTS

The GCCF has retained scientific and economic experts to comprehensively research and review studies pertaining to the impact of the Oil Spill on Gulf resources. These experts reviewed numerous studies analyzing the economic recovery rates from other major catastrophic events affecting tourism. In addition, the GCCF consulted with numerous individuals and businesses located in the Gulf region in order to understand the possible impact to individuals and Gulf businesses due to the Oil Spill. Finally, the GCCF benefitted from input from claimants, experts and other interested parties during the recent two-week public comment period. The GCCF's goal is to determine the impact of the Oil Spill on seafood harvests, the tourism industry and any other effect on the general Gulf economy. An effort has been made by the GCCF to determine the estimated length of time to full economic recovery and the related pattern of gradual recovery over time.

The GCCF will base its calculation of awards for Interim Payments on actual documented losses incurred by a claimant during the period immediately following the Oil Spill on April 20, 2010 and the date the Interim Claim is filed. For Final Payments, the GCCF will base its calculation on two important factors: 1) actual documented losses incurred by the claimant from the date the losses began since the Oil Spill on April, 2010 and, 2) a recovery factor to value the risk of possible future losses as determined by the retained experts and other input received during the public comment period.

Having examined available expert opinions, studies, reports and public comments, the GCCF believes that based on the existing information available:

1. There is evidence of a strong economic recovery underway. However, the GCCF has concluded that it is reasonable to base its future payment calculations on the principle that a full economic recovery in the Gulf region is likely (but not certain) within two to three years from the date of the Oil Spill.

2. Prediction is not an exact science. In light of the uncertainty that remains, the GCCF believes that it is appropriate to provide claimants desiring finally to resolve their claim at this time with a payment that accounts for the inherent uncertainty concerning the future.

3. The GCCF conclusions are based on current data, the opinions of the experts and the comments submitted by claimants and other interested parties during the public comment period. The GCCF will undertake a renewed evaluation of available data every four months. If such reevaluation suggests a change in the relative

uncertainty concerning the future that warrants an adjustment to the payment for future risk, the GCCF will make the appropriate adjustment and will apply the adjustment to all claims submitted from that date forward. However, final claims previously submitted with complete documentation but not yet evaluated will be paid the higher of the Future Recovery Factor applicable at the time the claim submitted was completely documented, or the adjusted Future Recovery Factor.

4. Any claimant who disagrees with the GCCF's approach regarding future payment calculations or is not ready to accept it, is free to opt for Interim Payments based upon documented past damage, while awaiting further evidence of Gulf region economic recovery.

   a. Actual Documented Losses: Once claimants have demonstrated a direct connection linking the sustained losses for past and present damages to the Oil Spill, eligible claimants will be compensated for documented losses directly caused by the Oil Spill incurred during the period immediately following the Oil Spill on April 20, 2010 and the date of the filing of an Interim or Final Claim with the GCCF ("the loss period"). The calculation of these actual documented losses will be based on a comparison to income from prior years for the same months (for example a comparison of income earned in 2008-2009 or another appropriate historical comparison deemed most relevant to the claimant's experience). In these cases, the claimant's actual loss will be determined by taking the difference between the claimant's income during the loss period and the comparison period (in most cases years 2008-2009) to arrive at the claimant's actual loss.

      Each claim will be reviewed and evaluated on its own merits and specific circumstances, including but not limited to business trends leading up to the Oil Spill including January through April 2010. For example, business claims for "start-up" companies which anticipated generating income in 2010, will be subject to a different methodology. Start-up businesses present a unique forecasting challenge due to the limited available historical financial data. In measuring losses for startup businesses, the GCCF will consider business plans, market comparables, pre- and post-loss financial data, start-up costs, industry trends and other relevant information. Special attention will also be given to those businesses that closed as a direct result of the Oil Spill.

      Many comments were received regarding the Loss of Income ("LOI") percentage used for businesses. The LOI used for each business is usually calculated based on the financial information of that particular business. Typically, the LOI percentage calculated for each business is based on the business' own pre-loss (e.g., 2009) annual Profit and Loss statement or Tax Return, depending on documentation provided by the claimant. The LOI percentage adjusts the lost revenues to reflect the saved or discontinued expenses for that particular business. Expenses that are typically considered to be fully or partially saved or discontinued as a result of lost sales include, but are not limited to, costs of goods sold, commissions, payroll and utilities.

   b. Interim Payments: Claimants who are not ready to accept a Final Payment Offer may continue to file Interim Payment Claims for documented past damage. Interim Payment Claims may be filed once each calendar quarter. For many claimants, much of their documented loss has already been compensated by BP and the GCCF Emergency Advance Payment Program. The total amount previously received by a claimant for damages as a result of the Oil Spill from BP or the GCCF will be deducted from the Interim Payments.

   c. Calculation of Future Losses: The calculation of future losses will be based upon the actual losses incurred during the period immediately following the Oil Spill on April 20, 2010, through December 31, 2010. The GCCF will use these actual documented 2010 losses and a Future Recovery Factor that

anticipates the gradual economic recovery to estimate the anticipated future losses associated with the Oil Spill. Experience with other unanticipated and catastrophic events suggests that for all businesses other than oyster harvesting and oyster processing, recovery will continue in 2011, with full recovery reasonably expected in 2012. Recovery over this time period would result in a Final Payment Offer of two times the actual documented losses in 2010. During the public comment period, the GCCF received comments from various claimants, experts, public officials and other interested parties urging the GCCF to increase or decrease the Future Recovery Factor. After reviewing all received comments the GCCF continues to believe that a Future Recovery Factor of 1.0 (two times the actual documented losses) in 2010 is fair and reasonable. Claimants who disagree with this conclusion are urged to opt for an Interim Payment for past damage.

Many comments were received regarding the GCCF's proposed calculation of future losses based upon the actual losses incurred during the period immediately following the Oil Spill on April 20, 2010 through December 2010. These comments stated that the GCCF's proposed doubling of the 8 month loss period would only compensate claimants for 16 months' losses and that it would be more equitable to use the 12 month period instead. These comments misunderstand the proposed calculation of future losses for the following reasons:

- If a 12 month loss period was used to calculate future losses rather than an 8 month period, the total Final Offer amount would not change. This is because the Future Recovery Factor was constructed to provide payment to the claimant for the estimated actual losses in the "missing" four months.
- If the GCCF were using a full year of losses (May 2010 through April 2011) no Final Offers could be made until May 2011 at the earliest.

For a more detailed response to comments on the calculation of future losses, see the attached explanation of ARPC, an expert firm of economists retained by the GCCF. (See Attachment B for "Response to Comments on the Derivation and Calculation of Future Damages.")

d. Some experts anticipate that individuals and businesses engaged in harvesting and processing oysters destroyed as a result of the Oil Spill, or due to the diversion of fresh water into the Gulf in reaction to the Oil Spill, will likely require a longer recovery period than that experienced by other claimants, without the same degree of gradual recovery. Accordingly, the Final Payment Offer for those claimants will be equal to an amount four times the actual documented losses in 2010.

5. For claimants with actual documented losses in 2010 of $500,000 or more, the GCCF will not automatically apply the Future Recovery Factor to the claimant's actual 2010 total losses. The Final Payment calculation for these claimants will be determined on an individualized basis after analyzing input from the claimant as well as the experts. The Final Payment Offer will be the actual documented losses in 2010 and an additional amount to compensate for the recovery and risk of possible future losses.

6. In sum, claimants who have documented and proven a financial loss attributable to the Oil Spill will be paid two times actual documented 2010 losses due to the Oil Spill to compensate for all past and anticipated future losses (except, as described above, for claimants with 2010 losses of $500,000 or more). Oyster harvesters who have documented and proven a financial loss attributable to the Oil Spill will be paid four times actual documented 2010 losses due to the Spill to compensate for all past and anticipated future losses. After reviewing all received public comments, the GCCF has concluded that the Future Recovery Factor of four times actual documented 2010 losses will also be applied to actual documented 2010 losses for oyster processors. (For all claimants, the Final Payment Offer will be reduced by compensation already received in Emergency Advance Payments from

BP, Emergency Advance Payments and Interim Payments received from the GCCF and other offsets.) If any claimant believes that the future of the Gulf continues to be uncertain and is not yet prepared to file a Final Claim, that claimant may continue to file Interim Payment Claims demonstrating ongoing damages linked to the Oil Spill with the GCCF. Claimants filing Interim Claims will not be required to sign a release.

7. Final Payments or Interim Payments: The GCCF will pay eligible individuals or businesses either a Final Payment or an Interim Payment, as the claimant may request. The Future Recovery Factor, as determined by the GCCF, may be modified going forward as more information becomes available about the future of the Gulf Coast economy. It is, therefore, entirely possible that the Future Recovery Factor for determining the future impact of the Oil Spill in the Gulf will be increased or reduced as more information becomes available. Claimants should take this possibility into account in deciding whether to file an Interim Payment Claim or a Final Payment Claim.

8. **For claimants who have filed a Final Payment Claim with incomplete 2010 documentation, the GCCF will determine and calculate the claim based upon submitted documented actual 2010 losses**. Claimants will have the option to accept the Final Payment Offer based upon submitted 2010 documentation of actual loss that was available to the GCCF for determination and calculation, or request the re-evaluation of the Final Payment Claim after they have submitted additional documentation of 2010 losses.

**EACH CLAIMANT'S FINAL PAYMENT OFFER AMOUNT WILL BE THE LARGER OF:**

**(1) Two times each eligible claimant's 2010 Actual Documented Losses (except for claimants with 2010 losses in excess of $500,000); four times 2010 Actual Documented Losses for oyster harvester's and oyster processor's 2010 Actual Documented Losses, or**

**(2) The total actual documented losses through the date of the filing of the Final Claim.**

## IV. DOCUMENTATION/SUBSTANTIATION

Although much of the public comment period was devoted to issues concerning the calculation methodology for determining Final Payments, it is important that all claimants seeking Final Payments or Interim Payments focus their attention on the issues of documentation and the ability of each claimant to prove his/her alleged damage caused by the Oil Spill.

**It is imperative that all claimants prove their claims by providing the GCCF with adequate documentation that supports the claim for damages. (See Attachments A, C and D for information to assist all claimants with an understanding of the financial tests used by the GCCF to establish a loss, and the required documentation and the evidence required to establish a connection between the loss and the Oil Spill.)**

**The GCCF advises all claimants that the documentation of both Final Payment and Interim Payment Claims is lacking in most cases. This is particularly true for 2010 supporting documentation. As of the date of this Notice, less than 17% of claimants have submitted completed 2010 documentation. Incomplete records will delay a claim's review, affect the damages calculation and could result in denial of the claim.**

1. As expressly indicated from the very beginning of the Emergency Advance Payment Program, the documentation requirements for receiving either a Final Payment or an Interim Payment are more rigorous and exacting than the minimal documentation requirements that governed administration of the Emergency Advance Payment Program.  Each claimant is required to establish both actual financial loss and a connection between the loss and the Oil Spill.

2. Each claim stands on its own merits, and the GCCF will evaluate each submission to determine whether a loss was caused by the Oil Spill.  When evaluating each claim for compensation, the GCCF will make certain presumptions that losses were caused by the Oil Spill based on the claimant's proximity to the Gulf shore and the nature of the claimant's business activity.

3. The following blueprint for substantiation required by the GCCF to prove a compensable claim is based upon input from the retained experts who evaluated the likelihood of a link between the Oil Spill and a claim for damages.  The following blueprint is offered as guidance only.

    a. <u>Physical Proximity to the Oil Spill/Workers and Businesses Directly Dependent Upon Gulf Resources</u>:   A connection to the Oil Spill is easiest to demonstrate in cases involving workers and businesses that are heavily dependent on Gulf resources and tourism and are located in **the immediate vicinity of the Gulf shore as well as claimants that were already determined eligible for an Emergency Advance Payment from the GCCF.**  Examples are fishermen, shrimpers, oyster harvesters, boat captains, seafood processors, as well as heavily tourist-dependent business activities in the immediate vicinity such as marinas, hotels, restaurants and rental properties located on Gulf Coast beaches.  In these cases, as well as in cases where claimants have already submitted adequate documentation to receive an Emergency Advance Payment, the submission of adequate financial information and data contrasting wages and income before and after the Oil Spill will usually be deemed sufficient to document a claim.  **Nevertheless, even as to these types of claims, currently the GCCF has found that most filed claims are pervasively lacking documentation contrasting pre- and post-Oil Spill wages and income and complete 2010 financial documentation**.

    b. <u>Physical Distance From the Oil Spill/Workers and Businesses Less Dependent Upon Gulf Resources</u>:  For Businesses and individuals that are not in the immediate vicinity of the Gulf shore but are operated in Gulf Alliance counties that are less sensitive to an interruption to Gulf Coast tourism or seafood harvesting, more exacting documentation is required.  The GCCF bases this conclusion on the experts' opinion that additional substantiation is necessary to conclude that losses are due to the Oil Spill, the further a business is from the immediate vicinity of the Oil Spill, or the less dependent the business is on Gulf resources.  In such cases, the GCCF will adopt the experts' recommendations that the claimant prove that his/her "positive trend" of lost wages or profit  during the immediate period preceding the Oil Spill was interrupted by the Deepwater Horizon incident.  **Simply contrasting pre- and post-Oil Spill wages/income may not be sufficient. Claimants in this category will receive compensation by establishing loss and by the use of a financial test that analyzes relative financial performance in the immediate pre-Oil Spill and post-Oil Spill periods.**  Attachment C describes the Financial Test the GCCF will use to establish whether there was damage due to the Oil Spill and the required documentation.

    c. <u>All Other Claimants</u>:  The GCCF has received claims from claimants residing outside of the Gulf states, claims from businesses located many miles from the Oil Spill, and claims from businesses that do not appear directly dependent on Gulf resources such as dentists, veterinarians, and chiropractors.  Many of these claims comprise business activities that are more dependent on general economic conditions than on tourism or seafood harvesting on the Gulf Coast.  In these cases (numbering in the thousands), the most exacting type of proof demonstrating an identifiable link between the asserted damage and the Oil Spill will be required.  Claimants in this category may receive compensation by establishing loss, by passing the

financial test that analyzes relative financial performance in the immediate pre-Oil Spill and post-Oil Spill periods, and by providing evidence that establishes the link between losses and the Oil Spill. For example, the claimant might provide documentation of cancelled orders for goods or services sold to a Gulf business; consistent sales in the past two years or more to a Gulf business that failed to recur due to the Oil Spill; bad debt written off and associated with failure to pay by a Gulf business; failure of a contractual arrangement involving a Gulf business that results in demonstrable lost sales or income; higher expenses or cost of goods due to having to obtain them from another vendor other than the traditional Gulf business; a specific termination of employment or reduction in wages that an employer confirms was as a result of the Oil Spill, etc. Examples of the type of evidence that may link a claimant's loss to the Oil Spill are described in Attachment A. **Providing general financial information about losses sustained in 2010 after the Oil Spill will not be sufficient documentation for claimants in this category. Instead, proof will be required specifically linking the sustained loss to the Oil Spill.**

Claimants are reminded that, in the absence of necessary documentation proving their claim for a Final Payment Claim or an Interim Payment Claim, the "Quick Payment" option is available to any claimant who has already received an Emergency Advance Payment without the necessity of submitting any further documentation to the GCCF. Quick Payments of $5,000 will be made to individuals and $25,000 to businesses**. Quick Payments require a full release. Before accepting any settlement or signing a release of legal rights, claimants have a right to consult with an attorney of their own choosing. Free legal assistance is available for claimants who cannot afford an attorney.**

## V. GREATER TRANSPARENCY AND CONSISTENCY

In an effort to promote greater transparency and consistency in the GCCF claims process, the GCCF is initiating a series of measures designed to provide claimants with greater access to information about their individual claims, including the status of the claim and the reasons for determinations made by the GCCF (claim acceptances or denials; calculation of compensation and the reasons related thereto, etc.). (See Attachment E for Sample Payment Letters and Evaluation Calculations.) In conjunction with the beginning of the Final Payment and Interim Payment process, the GCCF reminds all claimants of the following:

1. Additional local personnel have been retained by the GCCF and are now in place in the claims site offices throughout the Gulf region to assist claimants in securing more information about the status of their claims and the underlying reasons for GCCF claim decisions. These local personnel are residents of the region, who are familiar with the nature of Gulf Coast businesses and occupations. They are present in the Gulf to assist claimants in the processing of their GCCF claims. All staff members at the claims site offices are subcontractors of the GCCF; BP provides the funding for the expenses of the administration of the GCCF, including compensation for GCCF subcontractors.

2. Claimants are also invited to seek the assistance of local accountants and accounting firms in the preparation and processing of their individual claims or for an evaluation of the GCCF's Interim or Final Payment Offer. These accounting firms are <u>not</u> subcontractors of the GCCF, are not retained by the GCCF and are not working for the GCCF; they are available to assist claimants in assessing their business losses. Reasonable costs associated with the work of these accounting firms can be added to the overall damage claim submitted by the claimant and will be paid by the GCCF as part of the compensation provided any claimant who shows a loss due to the Oil Spill.

3. In appropriate cases, the GCCF will resolve a group of claims submitted by a particular attorney or law firm, accounting firm, or specific localized region of the Gulf, by sending GCCF accountants and GCCF support staff to meet with the attorney, accounting firm, or claimants in a specific localized region in an effort to resolve claims quickly and efficiently at the local level.

4. For all claims other than those for physical injury, if a claimant disagrees with the GCCF's decision on the claim (either because it was denied or the claimant deems the compensation inadequate), or if the GCCF has not acted on the claim within 90 days of the date the claim was presented to BP or to the GCCF, the claimant may submit the claim to the National Pollution Funds Center ("NPFC"), the Coast Guard office responsible for evaluating and determining claims; as an alternative, the claimant may file a claim in court, including the multidistrict litigation pending before the United States District Court for the Eastern District of Louisiana, titled*, In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, MDL No. 2179.* The multidistrict litigation is a consolidated grouping of federal law suits arising out of the Spill. General information on the procedure for filing a claim with the NPFC may be obtained from the Director of the National Pollution Funds Center, NPFC MS 7100, U.S. Coast Guard, 4200 Wilson Blvd., Suite 1000, Arlington, VA 20598-7100, (800) 280-7118, or from the NPFC website at www.uscg.mil/npfc/claims. Information regarding the multidistrict litigation may be obtained from the court's website at www.laed.uscourts.gov.

5. As to all claims, including those for physical injury, under the GCCF Protocol governing Final Claims, the claimant may appeal a Final Claim determination of the GCCF if a total monetary award (including any Emergency, Interim or Final Payment made by BP or the GCCF) is in excess of $250,000. The appeal will be reviewed by a panel of three neutrals (not selected by the GCCF) who will make an independent determination of the claim's value. BP will have the right to appeal to this panel of three neutrals where the claimant receives compensation in excess of $500,000.

**THE GCCF WILL CONTINUE TO MONITOR AND REVISE THESE FINAL RULES GOVERNING PAYMENT OPTIONS, ELIGIBILITY AND SUBSTANTIATION CRITERIA, AND FINAL PAYMENT METHODOLOGY. THE GCCF WELCOMES ONGOING INPUT FROM CLAIMANTS AND OTHER INTERESTED PARTIES AS IT MOVES FORWARD WITH FINAL PAYMENTS, INTERIM PAYMENTS AND QUICK PAYMENTS**.