# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179<br><br>SECTION J |
| This document relates to:<br>All Cases and No. 12-970 | * * * * * * * | HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

### DECLARATION OF MARK HOLSTEIN

I, Mark Holstein, do hereby declare that the following statements made by me are true and accurate to the best of my knowledge and belief:

### Introduction

1. I am Managing Counsel for BP America, and was one of the in-house legal representatives overseeing negotiations of the Economic Loss and Property Damages Settlement ("Settlement Agreement"), as amended on May 2, 2012 (Rec. Doc. 6430-1).[1]  I make this Declaration based upon my own personal knowledge.

2. The Settlement was the result of many months of arm's-length negotiations between counsel representing the Plaintiffs' Steering Committee ("PSC" or "Class Counsel") and counsel for BP (collectively, the "Parties").  I personally participated in the settlement discussions and the negotiations on behalf of BP.  These negotiations first commenced in or about the first half of 2011 and concluded in April 2012.

---

[1] All "Rec. Doc." numbers refer to MDL 2179.

**Discussions with Class Counsel Relating to the Seafood Compensation Program**

3. The negotiations that led to an agreement in principle on the goals and basic approach for the Seafood Compensation Program occurred during a series of in-person meetings at a hotel in New Orleans in late February 2012.

4. While a number of individuals from or associated with the Plaintiffs' Steering Committee were involved from time to time, I principally discussed the goals and basic approach for the Seafood Compensation Program with Mr. Calvin Fayard of Fayard & Honeycutt and Mr. Joseph Rice of Motley Rice LLC.

5. The Seafood Compensation Program resulted from the concept of having a separate, capped fund for certain seafood related claims. But the parties differed on two issues – the amount of the cap and who would be included.

6. BP insisted in the negotiations that individuals, such as Watts' clients, be included in any capped seafood fund. This issue was critical to BP, not only because it risked punitive damages on these claims, but also because of the sheer number of the individual claims.

7. The PSC, on the other hand, took the position that Watts' 40,000 clients and other individuals should be excluded from the Program and settled under the more general Business Economic Loss program, which BP had agreed to fund without a cap.

8. BP never backed off its insistence that individuals be included in the Seafood Compensation Program. The negotiations progressed with BP steadily increasing the amount it was willing to pay into the Program, if it included individual plaintiffs, and the PSC countering with amounts that excluded individual plaintiffs.

9. The PSC representatives specifically invoked Watts' name and the fact that he represented 40,000 plus claimants in pushing BP to put a higher number on the table. At one

point during the back-and-forth, PSC attorney Joseph Rice explicitly told BP that if BP would raise its offer, he would "take care of Watts."

10. After several rounds of this back-and-forth, the parties agreed to a capped fund of $2.3 billion, including individuals.

11. This Declaration is being filed confidentially and under seal as an Exhibit to the Memorandum In Support of BP's Motion For A Preliminary Injunction Suspending the Second Distribution of the Seafood Compensation Program, as well as the Memorandum In Support of BP's Motion for Relief Pursuant to Rule 60(b)(3), in *BP Exploration & Production, Inc., et al v. Watts, et al.* This Declaration is intended to remain confidential unless unsealed by the Court through the appropriate process.

I make this Declaration under penalties of perjury pursuant to 28 U.S.C. § 1746, and I state that the facts set forth herein are true to the best of my knowledge, belief, and information.

                                                            Mark Holstein

Dated: December 16, 2013