UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG<br>"DEEPWATER HORIZON" in the<br>GULF OF MEXICO, on<br>APRIL 20, 2010 | *<br>*<br>*<br>*<br>* | MDL NO. 2179<br><br>SECTION J<br><br>JUDGE BARBIER |
| | *<br>* | MAG. JUDGE SUSHAN |
| THIS DOCUMENT APPLIES TO:<br>No. 12-00311 | *<br>* | **JURY TRIAL DEMANDED** |

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS'
MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL
SUMMARY JUDGMENT CONCERNING CAMERON
INTERNATIONAL CORPORATION'S TEXAS INSURANCE CODE CLAIMS**

This dispute arises from the *Deepwater Horizon* incident and Cameron International Corporation's related settlement with BP in December 2011. Cameron contends that Liberty Insurance Underwriters, Inc. ("LIU") was obligated to pay its $50 million policy limits to partially fund Cameron's settlement with BP and is liable for that amount and more for failing to do so. Cameron also alleges that LIU violated Texas' bad faith statutes, specifically Sections 541 and 542 of the Texas Insurance Code. This Memorandum addresses only these Texas Insurance Code claims.

## I.   SUMMARY OF ARGUMENTS

Cameron's Texas Insurance Code claims are not viable as a matter of law. First, Cameron has no "independent injury," a required element of a Section 541 claim. Specifically, a party asserting a Section 541 claim must show that the insurer's alleged misconduct caused an injury that is independent of the underlying contractual breach. Cameron's only alleged

1

"damages" are, first, the policy proceeds, which are not independent damages and, second, attorney fees incurred here and in the underlying MDL litigation.  Attorney's fees are not an independent injury because (1) with respect to attorney's fees incurred in the underlying MDL, LIU's alleged wrongful conduct did not cause Cameron to incur those fees and (2) with respect to attorney's fees associated with this action, controlling Texas law holds that attorney's fees are not damages for purposes of Section 541.

Second, Cameron cannot establish a Section 542 claim for failing to promptly pay defense costs in the underlying MDL because LIU is not obligated to pay those defense costs under its Policy.  The LIU Policy expressly negates any duty to defend and only provides indemnification of a covered "loss," defined as damages, which does not include attorney fees.

Accordingly, LIU's Motion for Partial Summary Judgment should be granted, and the Court should dismiss with prejudice Cameron's claims under Sections 541 and 542 of the Texas Insurance Code.

## II.   **BACKGROUND**

LIU issued to Cameron an excess insurance policy, no. LQ1-B71-198583-046, effective from July 1, 2009 to July 1, 2010 ("LIU Excess Policy" or the "Policy").  *See* LIU Excess Policy (LIU 1482), attached as Exh. A.  The Policy was part of Cameron's insurance tower and provides $50 million in limits above $103 million in underlying coverage, subject to all terms and conditions of the Policy.

On April 20, 2010, during the Policy period, a blowout of the Macondo well occurred, causing an explosion and fire aboard the *Deepwater Horizon*.  These events gave rise

2

to hundreds of lawsuits, naming Cameron, Transocean, BP and others as defendants and third-party defendants.  These lawsuits were consolidated in multi-district litigation.  In December 2011, over LIU's objection to certain terms, Cameron accepted a settlement in which BP agreed to indemnify Cameron for pollution-related claims in exchange for Cameron paying $250 million *and* transferring and releasing its indemnification rights against BP and Transocean to BP.  *See* Settlement, attached as Exh. H.  LIU declined to participate in the settlement for two reasons: (1) LIU objected to Cameron's release and transfer of its valuable indemnification rights which impaired LIU's valuable and viable subrogation rights; and (2) LIU's Policy had not attached pursuant to the Policy's Other Insurance Condition, providing the Policy is excess of other insurance which includes "any type of self-insurance, indemnification or other mechanism by which an insured arranges for funding of its legal liabilities."

Despite LIU's objections, Cameron settled.  Shortly thereafter, on January 30, 2012, Cameron filed this lawsuit against LIU, seeking a judgment that LIU owes its $50 million limits in connection with the Cameron/BP settlement plus defense costs in the underlying MDL litigation.  *See* E.D. La. No. 12-311, Rec. Doc. No. 1.  Subsequently, Cameron filed an Amended Complaint, adding Texas Insurance Code claims.  Rec. Doc. No. 6287.[1]  Specifically, Cameron alleges that LIU violated section 541 of the Texas Insurance Code by "engaging in unfair claim settlement practices," including misrepresenting when the LIU policy's limit attached, and failing to effect a settlement of the claims against Cameron although LIU's liability was reasonably clear.  *Id.* at ¶ 86.  As a result of these alleged violations, Cameron claims it

---

[1]     Cameron also added a claim under Louisiana's bad faith statute.  The Court dismissed that claim on August 16, 2012.  Rec. Doc. No. 7129, at p. 27.

"sustained substantial damages and is entitled to an award of treble damages and attorneys' fees." *Id.* at ¶ 88.

Cameron also alleges LIU violated section 542 of the Texas Insurance Code by failing to pay Cameron's defense costs in the underlying MDL. *Id.* at ¶¶ 89-93. Again, Cameron claims LIU's alleged violation caused Cameron to sustain "substantial damages[,]" entitling Cameron to recover "interest at 18 percent a year in addition to the amount of such damages, as well as the recovery of attorneys' fees." *Id.* at ¶ 93.

Despite these allegations of damages, discovery is closed and Cameron has never alleged or identified extra-contractual damages independent of the Policy benefits it seeks for breach of contract. Cameron initially identified as alleged compensatory damages $50 million of insurance proceeds and post settlement defense costs in the Oil Spill MDL and related proceedings. *See* Initial Disclosures of Cameron, attached as Exh. B, at p. 7; Cameron's Responses and Objections to Defendant's First Set of Requests for Admissions, Interrogatories, and Requests for Production of Documents, attached as Exh. C, at Response to Interrogatory No. 15.

On June 7, 2013, Cameron amended its Rule 26 disclosures, identifying for the first time as "compensatory damages": (1) "post-settlement defense costs incurred on an ongoing basis in connection with the Oil Spill MDL and related proceedings" and (2) "costs and fees incurred in connection with Cameron's claim for insurance coverage[.]" *See* Amended Initial Disclosures of Plaintiff Cameron, attached as Exh. D, at p. 10. The same day as the Court

entered an order granting LIU's Motion to Compel, Cameron amended its initial disclosures for the second time identifying as compensatory damages:

- "Compensatory damages for post-settlement defense costs since January 1, 2012 that are being incurred on an ongoing basis in connection with the Oil Spill MDL and related proceedings[;]" and

- "Compensatory damages for litigation-related costs and fees incurred in connection with Cameron's claim for insurance coverage against Liberty in this action since January 1, 2012 that are being incurred on an ongoing basis[.]"

Second Amended Initial Disclosures of Cameron, attached as Exh. E, at p. 10. In addition to its compensatory damage claims, Cameron disclosed that it seeks to recover "[a]ttorneys' fees and costs related to bringing this action as provided under Texas law." *Id.* Cameron amended its responses to LIU's written discovery requests to list the same categories of damages. *See* Supplemental Responses, attached as Exh. F, at Response to Interrogatory No. 15.

In this Motion, LIU asks the Court to dismiss Cameron's Texas Insurance Code claims as a matter of law. Specifically, LIU asks the Court to find that (1) Cameron cannot show that LIU's alleged wrongful actions in investigating Cameron's insurance claim caused an "independent injury" or damages as required to support a claim under Texas Insurance Code Section 541; and (2) the Policy does not obligate LIU to defend Cameron or to indemnify Cameron for its defense costs, and therefore LIU did not violate Texas Insurance Code Section 542 by failing to promptly pay Cameron's defense costs in the underlying MDL.

## III.    SUMMARY JUDGMENT EVIDENCE

LIU relies upon and incorporates the following summary judgment evidence:

- **Exhibit A**: LIU Policy no. LQ1-B71-198583-046;

- **Exhibit B:** Initial Disclosures of Plaintiff Cameron International Corporation Pursuant to Rule 26(a)(1);

- **Exhibit C:** Cameron International Corporation's Responses and Objections to Defendant's First Set of Requests for Admissions, Interrogatories, and Requests for Production of Documents;

- **Exhibit D:** Amended Initial Disclosures of Plaintiff Cameron International Corporation Pursuant to Rule 26(a)(1);

- **Exhibit E:** Second Amended Initial Disclosures of Plaintiff Cameron International Corporation Pursuant to Rule 26(a)(1);

- **Exhibit F:** Cameron International Corporation's Supplemental Responses and Objections to Defendant's First Set of Requests for Admissions, Interrogatories and Requests for Production of Documents;

- **Exhibit G:** Illinois National Insurance Company Policy no. 27471353; and

- **Exhibit H:** Confidential Settlement Agreement, Mutual Releases and Agreement to Indemnify.

## IV.   ARGUMENT AND AUTHORITIES

### A.   Summary Judgment Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. *See Cheverri v. Dole Food Co., Inc.*, 896 F. Supp. 2d 556, 566 (E.D. La. 2012) (Barbier, J.). Once the moving party carries its burden under Rule 56(c), the opposing party may not rest on the pleadings and must identify specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317,

925747_2

325 (1986)).  The opposing party must show more than merely "some metaphysical doubt as to the material facts" by "conclusory allegations," "unsubstantiated assertions," or by only a "scintilla" of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The facts relevant to this motion are undisputed and the issues are purely legal. Courts routinely have granted insurers' summary judgment motions where similar Texas Insurance Code claims are raised.  *See, e.g., Powell Elec. Sys., Inc. v. Nat'l Union Fire Ins. Co.*, No. H-10-993, 2011 WL 3813278, at *9 (S.D. Tex. 2011) (granting summary judgment for insurer where insured failed to allege damage independent damages arising from underlying breach of contract).

**B.** **Cameron Cannot Prevail as a Matter of Law on its Section 541 Claims, Because It Cannot Show That LIU's Alleged Violation Caused Any Independent Injury.**

Cameron has alleged in its Amended Complaint that LIU violated Texas Insurance Code section 541 by engaging in certain unfair claim settlement practices. Rec. Doc. No. 6287, at ¶ 86.  Regardless of the allegations, to prevail under section 541, an insured must show that "the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits." *Parkans Int'l v. LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002) (citing *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 198-99 (Tex. 1998)).  (holding for insurer because "there can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those resulting from wrongful denial of benefits.).[2]  Significantly,

---

[2]     *See also Maryland Ins. Co. v. Head Industrial Coatings & Services, Inc.*, 906 S.W.2d 218, 231-32 (Tex. App.-Texarkana 1995), *rev'd on other grounds*, 938 S.W.2d 27 (Tex. 1996) (to recover on a statutory bad faith claim, the insured must prove it sustained actual

"actual damages" do not include amounts owed under the insurance policy under settled Texas law. *See Castaneda*, 988 S.W.2d at 199; *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 665-67 (Tex. 1995). The recent decision in *Tracy v. Chubb Lloyds Ins. Co.*, No. 4:12-CV-042-A, 2012 WL 2477706 (N.D. Tex. 2012) illustrates these well settled principles.

In *Tracy*, insureds sued an insurer for failing to make payments under an insurance policy alleging breach of contract and Texas Insurance Code violations, including failing to effectuate a prompt, fair and equitable settlement and misrepresentation. Plaintiffs sought essentially the same damages for breach of contract and the Texas Insurance Code violations: $450,000 for their home's diminished value and repair costs. *Id.* at *4. The court granted the insurer's motion to dismiss the Texas Insurance Code violations, holding that a Texas Insurance Code claim is actionable only if the insured "has suffered damages beyond the damages claimed for, or resulting from, breach of the insurance policy contract". *Id.* at *5. The court further explained that without evidence that the insured was injured in a way other than the injury that always would occur when an insured is not properly paid its demand, the claim cannot stand. *Id.* at **5-6; *see also, Powell*, 2011 WL 3813278, at *9 (granting summary judgment for insurer where insured failed to allege damage independent of damages arising from underlying breach of contract).

---

damages resulting from the insurer's unfair or deceptive acts, beyond those damages resulting from the underlying injury that forms the basis of the insurance claim); *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 666-67 (Tex. 1995) (plaintiff must establish an independent injury when dealing with bad faith claims brought against an insurance carrier covered by the Workers' Compensation Act).

925747_2

*Castaneda* and the subsequent following long line of cases firmly establish that to recover under Section 541, Cameron must prove it sustained damages *independent* of the policy proceeds it seeks for breach of contract, which it has not and cannot do.  Other than the policy proceeds which cannot constitute an independent injury, Cameron only seeks attorney fees and costs incurred in the underlying MDL action or this coverage action, neither of which constitutes an independent injury under Texas law.

1.   **Cameron's Attorney Fees and Costs in this Coverage Case Do Not Constitute an "Independent Injury."**

Cameron cannot show that its costs and attorney fees in this coverage lawsuit constitute an independent injury, despite its casting of these fees as "compensatory damages." To establish the requisite independent injury, the insured must show that the alleged violations of the Texas Insurance Code caused an injury independent of those that merely resulted from a wrongful denial of policy benefits; that is, a distinct injury from the one that occurs when an insured is not properly paid its insurance benefit.  *Parkans,* 299 F.3d at 519; *Maryland Ins. Co.,* 906 S.W.2d at 231-32; *Tracy,* 2012 WL 2477706, at **5-6.  Here, Cameron claims its attorney's fees and costs incurred prosecuting this action to recover the policy benefits constitute its damages.  But Cameron would have incurred these attorney fees and costs seeking recovery of the policy proceeds regardless of whether LIU's conduct allegedly violated the Texas Insurance Code.  Indeed, Cameron's original Complaint alleged breach of contract only and sought recovery of the policy proceeds and its MDL defense costs without alleging violations of the Texas Insurance Code.  This establishes that this suit was brought regardless of whether LIU violated the Texas Insurance Code and that the attorney fees are not distinct from injury that

9

occurred when Cameron allegedly was not properly paid.  The attorney fees and costs incurred prosecuting the coverage case seeking policy benefits do not constitute independent injury as a matter of law.

More importantly, attorney's fees incurred pursuing policy benefits simply do not constitute "independent injury" damages, as established by settled Texas law and its statutory scheme.  Just months ago, in *In re Nalle Plastics Family Ltd P'ship*, 406 S.W.3d 168, 174 (Tex. 2013), the Texas Supreme Court specifically held that attorney fees incurred in the prosecution or defense of a claim are *not* compensatory damages under Texas law.  In reaching this conclusion, the court considered the dictionary definitions of "damages" and "attorney fees," a long history of precedents distinguishing attorney fees from damages, and various statutes suggesting that the two are distinct.  *Id.* at 171-74.  The court observed, "While attorney's fees for the prosecution or defense of a claim may be compensatory in that they help make a claimant whole, they are not, and have never been, damages." *Id.* at 173.[3]  Because the Texas Supreme Court has clearly held that attorney fees incurred in prosecuting a claim are not damages, Cameron's attorney fees in this matter are not compensatory damages and *cannot* serve as the "independent injury" required by Section 541. *See AAF-McQuay, Inc. v. Northbrook Prop. and Cas. Inc. Co.*, No. 5:96CV158, 1999 WL 33447052, at *2 (E.D. Tex. Jan. 8, 1999) (Texas Insurance Code provides "attorneys' fees may be awarded on top of actual damages, but it does

---

[3]     *See also Haden v. David J. Sacks, P.C.*, 222 S.W.3d 580, 597 (Tex. App. – Houston [1st Dist.] 2007) (opinion on rehearing) ("Attorneys fees are ordinarily not recoverable, therefore, *as* actual damages in and of themselves."), *rev'd, in part, on other grounds*, 266 S.W.3d 447, 448 (Tex. 2008); *Melson v. Stemma Exploration & Prod. Co.*, 801 S.W.2d 601, 603 (Tex. App. - Dallas 1990) ("Attorney's fees incurred in prosecuting a suit for or defending against a wrong are not ordinarily recoverable as actual damages.").

925747_2

not contemplate that such fees may themselves constitute actual damages") (citing *American Nat. Ins. Co. v. Paul*, 927 S.W.2d 239, 246 (Tex. App. – Austin 1996, writ denied) (damage and attorney fees as separate items of recovery; "to obtain an award of attorney's fees under [the Deceptive Trade Practices Act or Insurance Code], one must first recover actual damages")). As such, Cameron's claim for attorney fees and costs does not constitute an independent injury required to recover under Section 541.

Further, the Texas Insurance Code provides that attorney fees are not damages. Under section 541.152, "[a] plaintiff who prevails in an action under this subchapter may obtain . . . *the amount of actual damages*, plus court costs and *reasonable and necessary attorney's fees*." Tex. Ins. Code § 541.152(a)(1) (emphasis added). The statute specifically differentiates between "actual damages," on the one hand, and "attorney's fees" on the other. The Court must interpret this statute so as to give effect to all terms and "not treat any statutory language as surplusage[.]" *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000). If Cameron's attorney's fees in this case could constitute "actual damages," the terms of Section 541.152 separately providing recovery for attorney fees would be rendered "surplasage," contrary to this canon of statutory interpretation. *See, e.g., Nalle*, 406 S.W.3d at 173 (observing that supersedeas bond statute listed "costs" and "interest" separately from "compensatory damages," and thus these categories must be distinct). Allowing Cameron to transform its attorney fees in this matter into "damages" through clever pleading would be inconsistent with the Texas Insurance Code's provisions.

11

Finally, allowing attorney fees incurred in pursuing the insurer to constitute an "independent injury," produces the illogical and absurd result that punitive damages potentially could be awarded *every time* there is a coverage lawsuit. This would expand the availability of the extra-contractual remedy far beyond what the Texas legislature possibly could have intended. Thus, the Court should find that Cameron's attorney fees in this matter do not and cannot be an "independent injury" as required by Section 541.

2. **Cameron's Defense Costs in the Underlying MDL Do Not Constitute an "Independent Injury."**

Cameron likewise cannot show that its defense costs in the underlying MDL are an "independent injury." Under Texas law, a plaintiff must prove that the insurer's statutory violation is the producing cause of its damages. *See, e.g., Wellisch v. United Servs. Auto. Ass'n,* 75 S.W.3d 53, 59 (Tex. App. – San Antonio 2002, reh'g denied) ("To recover damages under . . . the Insurance Code and DTPA, the violations must be a 'producing cause' of the insured's damages.") (citing *Castaneda,* 988 S.W.2d at 198). That, is the injury must be one that would not have occurred but for the statutory violations. Producing cause requires proof of actual causation in fact, which is only shown where "'an act or omission was a substantial factor in bringing about injury which would not otherwise have occurred.'" *Great American Ins. Co. v. AFS/IBEX Fin. Servs., Inc.,* No. 3:07-CV-924-O, 2011 WL 3163605, at *5 (N.D. Tex. 2011) (quoting *Prudential Ins. Co. of Am. v. Jefferson Assoc., Ltd.,* 896 S.W.2d 156, 161 (Tex. 1995)).

For example, in *Great American,* 2011 WL 3163605, at **6-7 the district court refused to uphold an insured's recovery of attorney fees incurred in third-party litigation because those fees were not *caused by* the insurer's violation of Section 541. The court observed:

925747_2

> For the Court to find that GAIC's insurance code violations were a producing cause or bad faith was a proximate cause of AFS's attorney's fees, there must be evidence that without those violations, AFS would not have incurred the fees.

*Id.* at *7. Because the third-party case began months before the insurer denied coverage and thus could not have been caused by the insurer's denial of coverage, the associated attorney fees did not support the bad faith and insurance code violation claims.

As in *Great American*, Cameron cannot establish that LIU's alleged misconduct caused Cameron to incur defense costs in the underlying MDL, let alone that LIU's conduct was a "substantial factor" in bringing about these expenses. Cameron was named as a defendant, and began incurring defense costs in the MDL, more than a year *before* the Cameron/LIU dispute arose. No action of LIU caused these attorney fees. Nor did LIU's refusal to pay a portion of Cameron's settlement with BP cause Cameron to continue to incur MDL defense costs post-settlement. Even if LIU had paid its $50 million limits to fund the Cameron/BP settlement, Cameron still would have incurred defense costs in the MDL post settlement because the settlement indisputably did not require Cameron's dismissal from the MDL, and did not require BP to pay Cameron's defense costs. *See* Exh. H. Because LIU's alleged misconduct did not cause Cameron to incur defense costs in the MDL litigation, which pre-existed the Cameron/LIU dispute and continued after the settlement was consummated, as in *Great American*, Cameron's defense costs in the underlying MDL do not meet the required "independent injury."

As Cameron has failed to allege or prove an "independent injury" resulting from LIU's alleged statutory violation, the Court should grant LIU's motion for summary judgment and dismiss Cameron's Section 541 claims as a matter of law.

925747_2

**C.    Cameron's Section 542 Bad Faith Claim Should Be Dismissed Because the Policy Does Not Require LIU to Defend Cameron or to Indemnify it for Defense Costs.**

Cameron also contends LIU violated Texas Insurance Code § 542, the Prompt Payment of Claims Act, by delaying payment of Cameron's defense costs in the underlying MDL. *See* Rec. Doc. No. 6287, at ¶¶ 89-93. Texas Insurance Code § 548.058 provides:

> [I]f an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.05, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060."

Tex. Ins. Code § 542.058(a). To prevail on a claim under section 542, the insured must prove that the insurer is liable for its claim under the insurance policy. *See* Tex. Ins. Code § 542.060(a) ("If an insurer that is *liable for a claim under an insurance policy* is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy . . . in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees.") (Emphasis added).

Here, Cameron cannot show LIU is liable for its MDL defense costs under the Policy, and thus Cameron's section 542 claim fails as a matter of law. Texas law, which governs the interpretation of the Policy, applies the same rules to the interpretation of an insurance policy as to any other contract. *See ARM Props. Mgmt. Group v. RSUI Indem. Co.,* 400 Fed.Appx. 938 (5th Cir. 2010); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex. 2003). When the policy's language can be given a definite or certain legal meaning, it is not ambiguous and it is construed as a matter of law. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.,* 140 F.3d 622, 626 (5th Cir. 1998); *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex. 2003). Importantly, a court will "construe the policy to give effect to each term in the contract

and to avoid rendering any term a nullity." *Lynch Props., Inc.,* 140 F.3d 622 at 626.   Under

settled Texas law, "'the parties to an insurance contract may make it in any legal form they

desire and, in the absence of statutory prohibitions, insurers may limit their liability and impose

whatever conditions they please upon their obligations not inconsistent with public policy.'" *Fed.*

*Ins. Co. v. CompUSA, Inc.,* 319 F.3d 746, 753 (5th Cir. 2003) (quoting *Locomotive Eng'rs &*

*Conductors Mut. Protective Ass'n v. Bush,* 576 S.W.2d 887, 890 (Tex. Civ. App. - Tyler 1979,

no writ)).

Most liability insurance policies separately provide for the insurer's duties with

respect to a duty to defend and a duty to indemnify.   *See, e.g.,* 14 COUCH ON INS. § 200:3 (3d ed.

2013) ("An insurer's duty to defend a lawsuit against its insured is both separate and distinct

from the insurer's duty to indemnify its insured for liability that is imposed against the insured

after trial.").   The duty to defend gives the insurer the right to control the conduct of the

litigation, often select counsel, and pay for counsel and expenses.   *See Downhole Navigator,*

*L.L.C. v. Nautilus Ins. Co.,* 686 F.3d 325, 328 (5th Cir. 2012) ("[A]n insurer's right to conduct

the defense includes the authority to select the attorney who will defend the claim and to make

other decisions that would normally be vested in the insured as the named party in the case.'")

(quoting *Northern County Mut. Ins. Co. v. Davalos,* 140 S.W.3d 685, 688 (Tex. 2004)).   Where

the policy has no duty to defend, reimbursement of defense costs, if required, must be rooted in

the policy's indemnification obligation and its corresponding limits.   *Gabarick v. Laurin*

*Maritime (America), Inc.,* 650 F.3d 545 (5th Cir. 2011) ("With only a duty to pay covered claims

and no duty to defend, reimbursement of defense costs must be footed on the indemnification, which is limited to the agreed upon policy limit").

Like most policies, the LIU Policy distinguishes between a duty to defend and a duty to indemnify.  The Policy specifically provides that LIU does not owe a duty to defend:

**DEFENSE**

A.  We will not be required to assume charge of the investigation of any claim or defense of any suit against you.

B.  We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for "loss" under this policy.  If we exercise such right, we will do so at our own expense.

C.  If the limits of liability of the Underlying Insurance shown in Item 5. of the Declarations are exhausted solely by payment of "loss," we shall have the right but not the duty to investigate and settle any claim or assume the defense of any suit which, in our opinion, may give rise to a "loss" under this policy.  Such investigation or defense shall be at our own expense.

*Id.* at LIU 1499.  With regard to the duty to indemnify, the Policy provides:

**COVERAGE**

We will pay on behalf of the Insured "loss" that results from an occurrence during the "policy period."  We will pay "loss" in excess of the Underlying Insurance shown in Item 5 of the Declarations, but only up to an amount not exceeding our Limits of Liability as shown in Item 4. of the Declarations.  Except for any definitions, terms, conditions and exclusions of this policy, the coverage provided by this policy is subject to the terms and conditions of the First Underlying Insurance Policy, as shown in Item 5. of the Declarations.

*Id.* at LIU 01498.  The Policy defines "loss" as "those sums which you are legally obligated to pay as <u>damages</u>, after making proper deductions for all recoveries and salvage, which damages are covered by the First Underlying Insurance Policy."  *Id.* at LIU 01499 (emphasis added).

925747_2

The Policy further provides that LIU's "liability under this policy will not exceed … \$50,000,000 Each Occurrence". *Id.* at LIU 01483. Under the subsequent Insuring Agreement, the Policy states that the "occurrence limit shown in Item 4 of the Declarations [\$50,000,000] is the most we will pay for all 'loss' arising out of any one occurrence to which this Policy applies." *Id.* at LIU 01498.

### 1. LIU Has No Duty to Defend Cameron.

Following Texas' rules of contract interpretation and enforcing the Policy as written, the LIU Policy clearly and unambiguously *negates* any duty to defend, expressly providing that "[LIU] will not be required to assume charge of the investigation of any claim or defense of any suit against you." *Id.* at LIU 1499. Cameron has conceded that this language "disclaims a duty *to defend*[.]" Rec. Doc. No. 6697-2, at p. 30. Thus, as all parties agree, the Policy forecloses any duty to defend obligation by LIU, including the obligation to pay defense costs included within the duty to defend.

### 2. LIU Has No Duty to Indemnify Cameron for Defense Costs.

Where there is no duty to defend, the obligation to reimburse defense costs, if any, must be rooted in a policy's indemnification obligation. *Gabarick, supra.* Here, the Policy does not require LIU to *indemnify* Cameron for its defense costs in the underlying MDL. The Policy limits LIU's indemnification obligation to covered "loss" defined as "those sums which [the insured is] legally obligated to pay *as damages*, after making proper deductions for all recoveries and salvage[.]" Exh. A, at LIU 01499 (emphasis added). Because defense costs are not "damages," these costs do not qualify as covered "loss" under the Policy definition. *See,*

*e.g., Westchester Fire Ins. Co. v. Stewart & Stevenson Servs., Inc.*, 31 S.W. 3d 654, 659-60 (Tex. App. – Houston [1st Dist.] 2000, reh'g overruled) (insured's defense costs were not covered loss under excess policy requiring insurer to pay "sums that the 'insured' must legally pay as damages"). In contrast, where courts have held an insurer owed a duty to pay defense costs, the policy specifically includes defense costs within the indemnification obligation. For example, in *National Union Fire Ins. Co. of Pittsburgh, PA v. U.S. Liquids, Inc.*, No. 03-20542, 2004 WL 304084, at *6 (5th Cir. 2004) (unpublished), the insurance policy expressly defined "loss" to include "defense costs," meaning "reasonable and necessary fees, costs, and expenses . . . resulting solely from the investigation, defense and appeal of a Claim against the Insureds[.]" *See also Gabarick*, 650 F.3d 545 (5th Cir. 2011) (holding insurer owed duty to indemnify defense costs where policy included coverage for "costs, charges and expenses reasonably incurred and paid by assured in defense against any liabilities"); *Vesta Ins. Co. v. Amoco Prod. Co.*, 986 F.2d 981, 988-89 (5th Cir. 1993) (policy defining "ultimate net loss" to include "expenses for . . . lawyers . . . and for litigation, settlement, adjustment and investigation of claims and suits" required insurer to indemnify insured for defense costs); *Certain Underwriters at Lloyds v. Chicago Bridge & Iron Co.*, 406 S.W.3d 326, 337-38 (Tex. App. – Beaumont 2013) (same). The LIU Policy indisputably contains no such language and should not be interpreted in a strained manner to expand the limited obligation LIU undertook.

Ignoring the clear Policy language, Cameron claims LIU must indemnify Cameron for its defense costs because the LIU Policy follows-form to the underlying policy issued by Illinois National Insurance Company ("the INIC Policy") and, according to Cameron,

this policy requires indemnification of defense costs. This argument fails for at least two reasons. First, the LIU Policy specifically states that "*[e]xcept for any definitions, terms, conditions and exclusions of this policy*, the coverage provided by this policy is subject to the terms and conditions of the [INIC Policy.]*" Exh. A, at LIU 01498 (emphasis added). Because the Policy contains its own definitions, terms and conditions disclaiming a duty to defend and limiting LIU's indemnification obligation to one which does not include defense costs, the LIU Policy's definitions, terms, conditions and exclusions govern and the LIU Policy does not follow-form to the INIC Policy on the claim for attorney fees. *See Westchester*, 31 S.W.3d at 660 (where excess policy stated that its own terms applied if different from underlying policy, excess policy's definition of loss controlled, and court could not consider lower level policy terms).

Furthermore, even if the Court were to consider the INIC Policy to determine the scope of LIU's indemnification obligation, which it should not, the INIC Policy does not require indemnification of Cameron's defense costs.[4]   Rather, its indemnification obligation only requires INIC to pay sums Cameron is legally obligated to pay as "damages". *See* Exh. G, at Insuring Agreement, ¶ I(A). As discussed above, "damages" do not include attorney fees. Moreover, the INIC Policy's definition of the term "Loss" likewise does not include attorney fees. The INIC Policy provides, "[I]f the applicable Retained Limit is specifically designated in the Schedule of Retained Limits as including Defense Expenses, then Loss shall include such

---

[4]    The INIC Policy has a duty to defend obligation, which includes an obligation to provide counsel and pay expenses. *See* INIC Policy, attached as Exh. G, at Endorsement 29, ¶ 3. That provision is not applicable to the LIU Policy which expressly disclaimed a duty to defend obligation.

Defense Expenses." *Id.* at Endorsement 29, at ¶ 10.  The Policy's Schedule of Retained Limits *does not* include a designation stating that defense expenses are included.  *Id.* at Schedule of Retained Limits.  Applying this plain language, defense expenses are not included with in the INIC Policy's definition of "Loss".  Thus, the INIC Policy's "Loss" definition, like LIU's, does not include attorney fees.  Apart from the duty to defend obligation, which only INIC had, neither INIC nor any insurer following form to the INIC Policy was required to indemnify Cameron for defense expenses.  *See, e.g., TIG Ins. Co. v. North Am. Van Lines, Inc.*, 170 S.W.3d 264, 270-71 (Tex. App. - Dallas 2005, no pet.) (umbrella insurer was not obligated to pay insured's defense costs, which were excluded from policy's definition of "ultimate net loss").

      For these reasons, Cameron cannot show that LIU is liable under the Policy for its defense costs in the underlying MDL.  Cameron's section 542 claim thus fails as a matter of law.

**CONCLUSION**

      Cameron's only purported "compensatory damages" are attorney fees in this suit and the MDL.  Neither attorney fee claim constitutes an "independent injury" caused by LIU's alleged misconduct.  Therefore, Cameron's Section 541 claim must be dismissed as a matter of law.  And, because pursuant to the plain terms of the LIU Policy, LIU is not liable for Cameron's defense costs in the MDL under the LIU Policy, Cameron's Section 542 claim is similarly deficient.  For these reasons, the Court should grant LIU's motion for partial summary judgment and dismiss with prejudice Cameron's claims under Sections 541 and 542 of the Texas Insurance Code.

925747_2

Respectfully submitted,

*/s/ Judy Y. Barrasso*
Judy Y. Barrasso, 2814
Celeste Coco-Ewing, 25002
BARRASSO USDIN KUPPERMAN
   FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana  70112
504.589.9700 (Telephone)
504.589.9701 (Facsimile)

and

Christopher W. Martin, PRO HAC VICE
Federal I.D. 13515
Gary L. Pate, PRO HAC VICE
Federal I.D. 29713
808 Travis, Suite 1800
Houston, Texas 77002
713-632-1700 (Telephone)
713-222-0101 (Facsimile)

Attorneys for Liberty Insurance
   Underwriters, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 23rd day of December, 2013.

*/s/ Judy Y. Barrasso*

925747_2