## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

91222 (7/06)

**EXHIBIT G**

FORMS SCHEDULE

Named Insured:      CAMERON INTERNATIONAL CORPORATION

Policy Number:          27471353
Effective 12:01 AM:  July 1, 2009

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | UMB PRIME DEC | 80518 | (10/04) |
| | UMB PRIME JACKET | 80517 | (05/06) |
| | SCHEDULE OF UNDERLYING | UNDSCH | (05/99) |
| | POLICYHOLDER DISC - NOTICE OF TERRORISM INS COVG | 98556 | (01/08) |
| | TEXAS NOTICE | 94396 | (04/07) |
| | TEXAS POLICY DISCLOSURE NOTICE | 81911 | (01/05) |
| 1 | CRISISRESPONSE COVERAGE ENHANCEMENT ENDORSEMENT | 94621 | (05/07) |
| 2 | COVERAGE TERRITORY ENDT. | 89644 | (07/05) |
| 3 | VIOLATION OF ECONOMIC OR TRADE SANCTIONS  COND. AM | 99497 | (06/08) |
| 4 | DUTIES IN THE EVENT OF AN OCCURRENCE, CLAIM, OR SU | 83687 | (08/08) |
| 5 | TEXAS CANCELLATION NONRENEWAL END | 74802 | (10/01) |
| 6 | TEXAS NOTICE OF OCCURRENCE AMEND ENDT | 81913 | (04/03) |
| 7 | TEXAS AMENDATORY ENDT | 81914 | (04/03) |
| 8 | ACT OF TERRORISM SIR ENDORSEMENT | 83049 | (03/06) |
| 9 | CRISISRESPONSE COVERAGE ENHANCEMENT ENDT (W RECALL | 100669 | (11/08) |
| 10 | OTHER INSURANCE-CONTRACTUAL AGREEMENT | 80460 | (07/02) |
| 11 | MTBE AND OTHER FUEL OXYGENATES EXCLUSION ENDT | 80449 | (02/03) |
| 12 | POLYCHLORINATED BIPHENYL (PCB) EXCLUSION ENDT | 80461 | (02/03) |
| 13 | SILICA EXCLUSION ENDT | 80479 | (02/03) |
| 14 | FELLOW EMPLOYEE LIMITATION ENDT | 83074 | (09/03) |
| 15 | RADIOACTIVE MATTER EXCL | 83094 | (09/03) |
| 16 | FUNGUS EXCLUSION ENDT | 82449 | (06/03) |
| 17 | PROF.LIAB.EXC.END.W. LMT.EXC.FOR RESULT.BODILY INJ | 89475 | (06/05) |
| 18 | LEAD EXCLUSION ENDORSEMENT | 86471 | (02/06) |
| 19 | EMPLOYERS LIAB.COV.ENDORSEMENT | 87073 | (11/04) |
| 20 | KNOWLEDGE OF OCCURRENCE ENDT. | 87222 | (12/04) |
| 21 | DUTIES IN THE EVENT OF AN OCC. CLAIM OR SUIT | 86456 | (08/04) |
| 22 | INTELLECTUAL PROPERTY EXCL.END. AMEND OF EXCL. L A | 89464 | (06/05) |
| 23 | JOINT VENTURE LMT.END SCALED LMT.SCALED ATT.W FINA | 89467 | (06/05) |
| 24 | NAMED PERIL AND TIME ELEMENT POLL. SIR END. PCOH V | 89470 | (06/05) |
| 25 | EMPLOYEE BENEFITS LIABILITY ENDT. CLAIMS MADE | 89461 | (06/05) |
| 26 | EMP.LIAB.STOP-GAPLMT.ENDT | 82616 | (05/06) |
| 27 | MARINE LIABILITY LIMITATION ENDT. | 86413 | (08/04) |
| 28 | CANCELLATION CLAUSE AMENDED ENDT (CREDIT RATING TR | 100085 | (09/08) |
| 29 | RETAINED LIMIT AMENDATORY ENDT. | 81583 | (04/07) |
| 30 | UNINSURED/UNDERINSURED MOTORISTS COVERAGE ENDT | 82610 | (10/08) |
| 31 | ADDITIONAL NAMED INSD. END'T. | MNSCPT | (06/09) |
| 32 | PERSONAL LIABILITY COVERAGE END'T | MNSCPT | (06/09) |
| 33 | INDUSTRIAL AID AIRCRAFT LIMITATION END'T. | MNSCPT | (06/09) |
| 34 | DAMAGE TO YOUR PRODUCT END'T. | MNSCPT | (06/09) |
| 35 | FOREIGN LIABILITY LIMITATION ENDORSEMENT | MNSCPT | (06/09) |

CIFMSC
CI0226

## FORMS SCHEDULE

**Named Insured:**   CAMERON INTERNATIONAL CORPORATION

**Policy Number:**   27471353
**Effective 12:01 AM:**   July 1, 2009

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | UMB PRIME DEC | 80518 | (10/04) |
| | UMB PRIME JACKET | 80517 | (05/06) |
| | SCHEDULE OF UNDERLYING | UNDSCH | (05/99) |
| | POLICYHOLDER DISC - NOTICE OF TERRORISM INS COVG | 96556 | (01/08) |
| | TEXAS NOTICE | 94396 | (04/07) |
| | TEXAS POLICY DISCLOSURE NOTICE | 81911 | (01/05) |
| 1 | CRISISRESPONSE COVERAGE ENHANCEMENT ENDORSEMENT | 94621 | (05/07) |
| 2 | COVERAGE TERRITORY ENDT. | 89644 | (07/05) |
| 3 | VIOLATION OF ECONOMIC OR TRADE SANCTIONS  COND. AM | 99497 | (06/08) |
| 4 | DUTIES IN THE EVENT OF AN OCCURRENCE, CLAIM, OR SU | 83687 | (08/08) |
| 5 | TEXAS CANCELLATION NONRENEWAL END | 74802 | (10/01) |
| 6 | TEXAS NOTICE OF OCCURRENCE AMEND ENDT | 81913 | (04/03) |
| 7 | TEXAS AMENDATORY ENDT | 81914 | (04/03) |
| 8 | ACT OF TERRORISM SIR ENDORSEMENT | 83049 | (03/06) |
| 9 | CRISISRESPONSE COVERAGE ENHANCEMENT ENDT (W RECALL | 100669 | (11/08) |
| 10 | OTHER INSURANCE-CONTRACTUAL AGREEMENT | 80460 | (07/02) |
| 11 | MTBE AND OTHER FUEL OXYGENATES EXCLUSION ENDT | 80449 | (02/03) |
| 12 | POLYCHLORINATED BIPHENYL (PCB) EXCLUSION ENDT | 80461 | (02/03) |
| 13 | SILICA EXCLUSION ENDT | 80479 | (02/03) |
| 14 | FELLOW EMPLOYEE LIMITATION ENDT | 83074 | (09/03) |
| 15 | RADIOACTIVE MATTER EXCL | 83094 | (09/03) |
| 16 | FUNGUS EXCLUSION ENDT | 82449 | (06/03) |
| 17 | PROF.LIAB.EXC.END.W. LMT.EXC.FOR RESULT.BODILY INJ | 89475 | (06/05) |
| 18 | LEAD EXCLUSION ENDORSEMENT | 86471 | (02/06) |
| 19 | EMPLOYERS LIAB.COV.ENDORSEMENT | 87073 | (11/04) |
| 20 | KNOWLEDGE OF OCCURRENCE ENDT. | 87222 | (12/04) |
| 21 | DUTIES IN THE EVENT OF AN OCC. CLAIM OR SUIT | 86456 | (08/04) |
| 22 | INTELLECTUAL PROPERTY EXCL.END. AMEND OF EXCL. L A | 89464 | (06/05) |
| 23 | JOINT VENTURE LMT.END SCALED LMT.SCALED ATT.W FINA | 89467 | (06/05) |
| 24 | NAMED PERIL AND TIME ELEMENT POLL. SIR END. PCOH V | 89470 | (08/05) |
| 25 | EMPLOYEE BENEFITS LIABILITY ENDT. CLAIMS MADE | 89461 | (06/05) |
| 26 | EMP.LIAB.STOP-GAPLMT.ENDT | 82616 | (05/06) |
| 27 | MARINE LIABILITY LIMITATION ENDT. | 86413 | (08/04) |
| 28 | CANCELLATION CLAUSE AMENDED ENDT (CREDIT RATING TR | 100085 | (09/08) |
| 29 | RETAINED LIMIT AMENDATORY ENDT. | 81583 | (04/07) |
| 30 | UNINSURED/UNDERINSURED MOTORISTS COVERAGE ENDT | 82610 | (10/08) |
| 31 | ADDITIONAL NAMED INSD. END'T. | MNSCPT | (06/09) |
| 32 | PERSONAL LIABILITY COVERAGE END'T | MNSCPT | (06/09) |
| 33 | INDUSTRIAL AID AIRCRAFT LIMITATION END'T. | MNSCPT | (06/09) |
| 34 | DAMAGE TO YOUR PRODUCT END'T. | MNSCPT | (06/09) |
| 35 | FOREIGN LIABILITY LIMITATION ENDORSEMENT | MNSCPT | (06/09) |

**AIG** AMERICAN INTERNATIONAL COMPANIES®

## Umbrella Prime®
## Commercial Umbrella Liability Policy With CrisisResponse®

### DECLARATIONS

The company issuing this policy is indicated by an "X" in the box to the left of the company's name.

| | |
|---|---|
| ☐ AIG Casualty Company | ☐ Granite State Insurance Company |
| ☐ AIU Insurance Company | ☒ Illinois National Insurance Company |
| ☐ American Home Assurance Company | ☐ National Union Fire Insurance Company of Louisiana |
| ☐ American International Pacific Insurance Company | ☐ National Union Fire Insurance Company of Pittsburgh, Pa. |
| ☐ American International South Insurance Company | ☐ New Hampshire Insurance Company |
| ☐ Commerce & Industry Insurance Company | ☐ The Insurance Company of the State of Pennsylvania |

(each of the above being a capital stock company)

Executive Offices: 70 Pine Street, New York, NY 10270
Telephone No. 212-770-7000

---

POLICY NUMBER:     27471363                    RENEWAL OF:   5443281

ITEM 1. NAMED INSURED:    CAMERON INTERNATIONAL CORPORATION

MAILING ADDRESS:   1333 WEST LOOP S STE 1700
HOUSTON, TX 77027

ITEM 2. POLICY PERIOD: FROM:   July 1, 2009          TO:  July 1, 2010
(At 12:01 A.M., standard time, at the address of the Named Insured stated above.)

ITEM 3. LIMITS OF INSURANCE

The Limits of Insurance, subject to the terms of this policy, are:

A. $25,000,000     Each Occurrence
B. $25,000,000     General Aggregate (in accordance with Section IV, Limits of Insurance)
C. $25,000,000     Products-Completed Operations Aggregate (in accordance with Section IV, Limits of Insurance)
D. $250,000        CrisisResponse Sublimit of Insurance
E. $50,000         Excess Casualty CrisisFund Limit of Insurance

ITEM 4. SCHEDULED UNDERLYING INSURANCE - See Schedule of Underlying Insurance

ITEM 5. SELF-INSURED RETENTION - $10,000          Each Occurrence

ITEM 6. PREMIUM AND PREMIUM COMPUTATION
ESTIMATED TOTAL ANNUAL EXPOSURE        NOT APPLICABLE
RATES PER                              FLAT
MINIMUM PREMIUM                        $1,226,000.00
ADVANCE PREMIUM                        $1,226,000.00

ITEM 7. THIS POLICY INCLUDES THESE ENDORSEMENTS AT INCEPTION DATE: SEE ATTACHED SCHEDULE

PRODUCER NAME:  MARSH USA, INC.
ADDRESS:        1000 MAIN ST
                STE 3000
                HOUSTON, TX 77002-2606

_Vincent Catapano_

Authorized Representative or                    Date
Countersignature (Where Applicable)

80518 (10/04)
AH0876                                          Issue Date:  07/11/09

**Umbrella Prime®**
**Commercial Umbrella Liability Policy With CrisisResponse®**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the **Named Insured** shown in the Declarations and any other person or organization qualifying as a **Named Insured** under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word **Insured** means any person or organization qualifying as such under Section VII. Definitions.

Except for headings, words that appear in bold print have special meaning. See Section VII. Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, we agree to provide coverage as follows:

| I.   INSURING AGREEMENT – COMMERCIAL UMBRELLA LIABILITY |
| --- |

A.  We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury, Property Damage or Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury or Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.

The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

B.  This policy applies, only if:

1.  the **Bodily Injury or Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury or Property Damage** occurs during the **Policy Period**; and

2.  the **Personal Injury and Advertising Injury** is caused by an **Occurrence** that takes place anywhere arising out of your business, but only if the **Occurrence** was committed during the **Policy Period**.

C.  1.  This policy applies to **Bodily Injury or Property Damage**, only if prior to the **Policy Period**, no **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., no executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. and no employee authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury or Property Damage** had occurred, in whole or in part. If such an **Insured** or authorized employee knew, prior to the **Policy Period**, that the **Bodily Injury or Property Damage** had occurred, then any continuation, change or resumption of such **Bodily Injury or Property Damage** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**.

2.  **Bodily Injury or Property Damage** which occurs during the **Policy Period** and was not, prior to the **Policy Period**, known to have occurred by any **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee authorized by you to give or receive notice of an **Occurrence** or claim, includes any continuation, change or resumption of that **Bodily Injury or Property Damage** after the end of the **Policy Period**.

D.  **Bodily Injury or Property Damage** will be deemed to have been known to have occurred at the earliest time when any **Insured** listed under subparagraphs 2a., 2b., 2c. of Paragraph M. of Section VII, any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**:

1. reports all, or any part, of the **Bodily Injury** or **Property Damage** to us or any other insurer;

2. receives a written or verbal demand or claim for damages because of the **Bodily Injury** or **Property Damage**; or

3. becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur.

E. Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.

F. If we are prevented by law or statute from paying damages covered by this policy on behalf of the **Insured**, then we will indemnify the **Insured** for those sums in excess of the **Retained Limit**.

## II.  INSURING AGREEMENT-CRISISRESPONSE® AND EXCESS CASUALTY CRISISFUND®

A. CrisisResponse

We will advance **CrisisResponse Costs** directly to third parties on behalf of the **Named Insured**, regardless of fault, arising from a **Crisis Management Event** first commencing during the **Policy Period**, up to the amount of the **CrisisResponse Sublimit of Insurance**.

B. **Excess Casualty CrisisFund**

We will pay **Crisis Management Loss** on behalf of the **Named Insured** arising from a **Crisis Management Event** first commencing during the **Policy Period**, up to the amount of the **Excess Casualty CrisisFund Limit of Insurance**.

C. A **Crisis Management Event** will first commence at the time during the **Policy Period** when a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** and will end when we determine that a crisis no longer exists or when the **CrisisResponse Sublimit of Insurance** has been exhausted, whichever occurs first.

D. There will be no **Retained Limit** applicable to **CrisisResponse Costs** or **Crisis Management Loss**.

E. Any advancement of **CrisisResponse Costs** or payment of **Crisis Management Loss** that we make under the coverage provided by this Section II. will not be a determination of our obligations under this policy, nor create any duty to defend any **Suit** under any other part of this policy.

## III.  DEFENSE PROVISIONS

A. We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when:

1. the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss** to which this policy applies and the total applicable limits of **Other Insurance** have been exhausted; or

2. the damages sought because of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** would not be covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**, even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

B.  We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to which this insurance does not apply.

C.  When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

1.  investigate, negotiate and settle the **Suit** as we deem expedient; and

2.  pay the following supplementary payments to the extent that such payments are not covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**:

    a.  premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

    b.  premiums on appeal bonds required by law to appeal a judgment in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

    c.  all court costs taxed against the **Insured** in the **Suit**;

    d.  pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest accruing after we make such offer;

    e.  post-judgment interest that accrues after entry of judgment on that part of the judgment within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

    f.  the **Insured's** expenses incurred at our request or with our consent.

D.  Except as provided in Paragraph A. above, we will have no duty to defend any **Suit** against the **Insured**.  We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

E.  We will not defend any **Suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph C. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of **Loss** and we will have the right to withdraw from the further defense of such **Suit** by tendering control of said defense to the **Insured**.

## IV. LIMITS OF INSURANCE

A.  The Limits of Insurance shown in Item 3. of the Declarations and the rules below state the most we will pay for all damages under this policy regardless of the number of:

1.  **Insureds**;

2.  claims made or **Suits** brought;

3.  persons or organizations making claims or bringing **Suits**; or

4.  coverages provided under this policy.

B.  The General Aggregate Limit stated in Item 3. of the Declarations is the most we will pay for all damages under this policy, except for:

1.  damages included within the **Products-Completed Operations Hazard**; and

2.  damages because of **Bodily Injury** or **Property Damage** to which this policy applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto** covered under **Scheduled Underlying Insurance**.

C.  The Products-Completed Operations Aggregate Limit stated in Item 3C. of the Declarations is the most we will pay for all damages included in the **Products-Completed Operations Hazard.**

D.  Subject to Paragraphs B. and C. above, the Each Occurrence Limit stated in Item 3A. of the Declarations is the most we will pay for the sum of all damages arising out of any one **Occurrence.**

E.  Subject to Paragraphs B. and C. above, the most we will pay for damages under this policy on behalf of any person or organization to whom you are obligated by written **Insured Contract** to provide insurance such as is afforded by this policy is the lesser of the Limits of Insurance shown in Item 3. of the Declarations or the minimum Limits of Insurance you agreed to procure in such written **Insured Contract.**

F.  This policy applies only in excess of the **Retained Limit.** If however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

1.  greater than the amount shown in such schedule, this policy will apply in excess of the greater amount of valid and collectible insurance; or

2.  less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G.  If the total applicable limits of **Scheduled Underlying Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies and the total applicable limits of applicable **Other Insurance** are reduced or exhausted, we will:

1.  in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance;** and

2.  in the event of exhaustion, continue in force as underlying insurance.

H.  Expenses incurred to defend any **Suit** or to investigate any claim will be in addition to the applicable Limits of Insurance of this policy.  Provided, however, that if such expenses reduce the applicable limits of **Scheduled Underlying Insurance,** then such expenses will reduce the applicable Limits of Insurance of this policy.

I.  The **CrisisResponse Sublimit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period.** This **CrisisResponse Sublimit of Insurance** will be part of, not in addition to, the applicable Limit of Insurance.

J.  The **Excess Casualty CrisisFund Limit of Insurance** is the most we will pay for all **Crisis Management Loss** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period.** This **Excess Casualty CrisisFund Limit of Insurance** will be in addition to the applicable Limit of Insurance.

K.  We will have no obligation to advance **CrisisResponse Costs** when we determine that a **Crisis Management Event** has ended or when the **CrisisResponse Sublimit of Insurance** has been exhausted, whichever occurs first.

L.  The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the inception date of the **Policy Period** shown in the Declarations, unless the **Policy Period** is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance of this policy.

M.  We will not make any payment under this policy unless and until:

1.  the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss** to which this policy applies and any applicable, **Other Insurance** have been exhausted by the payment of **Loss;** or

2.  the total applicable **Self-Insured Retention** has been satisfied by the payment of **Loss** to which this policy applies.

When the amount of **Loss** has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy.  An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

| V.  EXCLUSIONS |
|---|

A.  **Aircraft and Watercraft**

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any **Insured**. Use includes operation and loading and unloading.

This exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the **Occurrence** which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any **Insured**.

This exclusion does not apply to a watercraft you do not own that is:

1.  less than 26 feet long; and

2.  not being used to carry persons or property for a charge.

B.  **Asbestos**

This insurance does not apply to any liability arising out of:

1.  the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos containing products or materials, asbestos fibers or asbestos dust;

2.  any obligation of the **Insured** to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3.  any obligation to defend any **Suit** or claim against the **Insured** that seeks damages if such **Suit** or claim arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

C.  **Contractual Liability**

This insurance does not apply to any liability for which the **Insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

1.  that the **Insured** would have in the absence of a contract or agreement; or

2.  assumed in an **Insured Contract**, provided **Bodily Injury** or **Property Damage** occurs subsequent to the execution of the **Insured Contract**. Solely for the purposes of liability assumed in an **Insured Contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **Bodily Injury** or **Property Damage** and included in the Limits of Insurance of this policy, provided:

    a.  liability to such party for, or for the cost of, that party's defense has also been assumed in the same **Insured Contract**; and

   b.  such attorney fees and litigation expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this policy applies are alleged.

D.  **Damage to Impaired Property or Property Not Physically Injured**

This insurance does not apply to **Property Damage to Impaired Property** or property that has not been physically injured, arising out of:

1.  a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2.  a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

E.  **Damage to Property**

This insurance does not apply to **Property Damage** to:

1.  property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2.  premises you sell, give away or abandon, if the **Property Damage** arises out of any part of those premises;

3.  property loaned to you;

4.  personal property in the care, custody or control of the **Insured**;

5.  that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the **Property Damage** arises out of those operations; or

6.  that particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

Paragraph 2. of this exclusion does not apply if the premises are **Your Work** and were never occupied, rented or held for rental by you.

Paragraphs 3., 4., 5. and 6. of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6. of this exclusion does not apply to **Property Damage** included in the **Products-Completed Operations Hazard.**

F.  **Damage to Your Product**

This insurance does not apply to **Property Damage to Your Product** arising out of it or any part of it.

G.  **Damage to Your Work**

This insurance does not apply to **Property Damage to Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard.**

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H.  **Electronic Chatrooms or Bulletin Boards and Electronic Data**

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of an electronic chatroom or bulletin board the **Insured** hosts, owns, or over which the **Insured** exercises control.  Additionally, this insurance does not apply to damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, "electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

I.   **Employees and Volunteers**

This insurance does not apply to liability of any employee or volunteer qualifying as an **Insured** under this policy arising out of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury:**

1.  to you, to your partners or members (if you are a partnership or joint venture), or to your members (if you are a limited liability company), or to an employee of yours while in the course of his or her employment or performing duties related to the conduct of your business, or to another volunteer of yours while performing duties related to the conduct of your business;

2.  to the spouse, child, parent, brother or sister of such injured employee or volunteer as a consequence of subparagraph 1. above;

3.  for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in subparagraphs 1. or 2. above; or

4.  arising out of his or her providing or failing to provide professional health care services.

Paragraphs 1., 2. and 3. shall not apply to any liability arising out of **Bodily Injury** or **Personal Injury and Advertising Injury** if such coverage is provided by **Scheduled Underlying Insurance.** Coverage under this policy for **Bodily Injury** or **Personal Injury and Advertising Injury** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance,** subject to the **Policy Period,** Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance.**

J.   **Employment Practices**

This insurance does not apply to any liability arising out of:

1.  failure to hire any prospective employee or any applicant for employment;

2.  dismissal, discharge or termination of any employee;

3.  failure to promote or advance any employee; or

4.  employment-related practices, policies, acts, omissions or misrepresentations directed at a present, past, future or prospective employee, including, but not limited to:

    a.  coercion, harassment, humiliation or discrimination;
    b.  demotion, evaluation, reassignment, discipline, or retaliation;
    c.  libel, slander, humiliation, defamation, or invasion of privacy; or
    d.  violation of civil rights.

This exclusion applies:

1.  whether the **Insured** may be liable as an employer or in any other capacity; and

2.  to any obligation to share damages with or repay someone else who must pay damages because of the injury.

K.  **Expected or Intended Injury**

This insurance does not apply to **Bodily Injury** and **Property Damage** expected or intended from the standpoint of the **Insured**. However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.

L.  **Infringement of Copyright, Patent, Trademark or Trade Secret**

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your **Advertisement**, of copyright, trade dress or slogan.

M.  **Liquor Liability**

This insurance does not apply to **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

1.  causing or contributing to the intoxication of any person;

2.  the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3.  any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, this exclusion will not apply if coverage is provided for such **Bodily Injury** or **Property Damage** by **Scheduled Underlying Insurance**.

Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

N.  **Media and Internet Type Businesses**

This insurance does not apply to **Personal Injury and Advertising Injury** committed by any **Insured** whose business is:

1.  advertising, broadcasting, publishing or telecasting;

2.  designing or determining content of web-sites for others; or

3.  an Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs U1., U2. and U3. of Section VII.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

O.  **"No-Fault, " "Uninsured Motorist" or "Underinsured Motorist" Laws**

This insurance does not apply to any obligation of the **Insured** under any "No-Fault," "Uninsured Motorist" or "Underinsured Motorist" law, or any similar law.

P.  **Nuclear Liability**

This insurance does not apply to:

1.  any liability:

a. with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability;

b. resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any amendment or revision thereto, or any similar law, (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization;

c. for **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material if:

   i) the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf or (2) has been discharged or dispensed therefrom;

   ii) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

   iii) the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

2. As used in this exclusion:

   a. "hazardous properties" includes radioactive, toxic or explosive properties;

   b. "nuclear material" means source material, special nuclear material or by-product material;

   c. "source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any amendment or revision thereto ;

   d. "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   e. "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

   f. "nuclear facility" means:

      i) any nuclear reactor;

      ii) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel or (3) handling, processing or packaging wastes;

      iii) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

      iv) any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and

   includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

g.  "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

h.  **Property Damage** includes all forms of radioactive contamination of property.

## Q.  Pollution

This insurance does not apply to:

1.  Any **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2.  Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

3.  Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of **Pollutants**.

However, Paragraph 1 of this exclusion will not apply if coverage for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) below is provided by **Scheduled Underlying Insurance**:

1)  **Products-Completed Operations Hazard**

    Paragraph 1. of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

    a)  discarded, dumped, abandoned, thrown away; or

    b)  transported, handled, stored, treated, disposed of or processed as waste;

    by anyone.

2)  **Hostile Fire**

    Paragraph 1. of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire**.

3)  **Equipment to Cool, Dehumidify, or Heat the Building and Contractor/Lessee Operations**

    Paragraph 1. of this exclusion does not apply to:

    a)  **Bodily Injury** sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment used to heat water for personal use, by the building's occupants or their guests;

    b)  **Bodily Injury** or **Property Damage** for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional **Insured** with respect to your ongoing operations performed for that additional **Insured** at such premises, site or location, and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **Insured**, other than the additional **Insured**.

4)  **Fuels, Lubricants and Other Operating Fluids - Mobile Equipment**

    Paragraph 1. of this exclusion does not apply to:

a) **Bodily Injury** or **Property Damage** arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of **Mobile Equipment** or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **Bodily Injury** or **Property Damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor; or

b) **Bodily Injury** or **Property Damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5) **Fuels, Lubricants, Fluids, etc. - Auto**

Paragraph 1. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar **Pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an **Auto** covered by **Scheduled Underlying Insurance** or its parts, if:

a) the **Pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **Auto** part designed by its manufacturer to hold, store, receive or dispose of such **Pollutants**; and

b) the **Bodily Injury** or **Property Damage** does not arise out of the operation of any equipment shown in Paragraphs 6b and 6c of the definition of **Mobile Equipment**.

6) **Upset, Overturn or Damage of an Auto**

Paragraph 1. of this exclusion does not apply to **Occurrences** that take place away from premises owned by or rented to an **Insured** with respect to **Pollutants** not in or upon an **Auto** covered by **Scheduled Underlying Insurance** if:

a) the **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **Auto** covered by **Scheduled Underlying Insurance**; and

b) the discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

Coverage under this policy for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) above will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

R. **Recall of Your Product, Your Work or Impaired Property**

This insurance does not apply to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. **Your Product;**

2. **Your Work; or**

3. **Impaired Property;**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

S. **Securities**

This insurance does not apply to any liability arising out of:

1. any violation of any securities law or similar law or any regulation promulgated thereunder;

2. the purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

3. any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

4. any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

T. **Unauthorized Use of Another's Name or Product**

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

U. **Various Personal Injury and Advertising Injury**

This insurance does not apply to **Personal Injury and Advertising Injury**:

1. caused by or at the direction of the **Insured** with the knowledge that the act would violate the rights of another and would inflict **Personal Injury and Advertising Injury**;

2. arising out of oral, written or electronic publication, in any manner, of material if done by or at the direction of any **Insured** with knowledge of its falsity;

3. arising out of oral, written or electronic publication, in any manner, of material whose first publication took place before the beginning of the **Policy Period**;

4. arising out of a criminal act committed by or at the direction of the **Insured**;

5. for which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement;

6. arising out of a breach of contract, except an implied contract to use another's advertising idea in your **Advertisement**;

7. arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your **Advertisement**; or

8. arising out of the wrong description of the price of goods, products or services stated in your **Advertisement**.

V. **Various Laws**

This insurance does not apply to any obligation of the **Insured** under any of the following:

1. the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), or any amendment or revision thereto, or any similar law; or

2. any workers' compensation, disability benefits or unemployment compensation law, or any similar law.

W. **Violation of Communication or Information Law**

This insurance does not apply to any liability arising out of any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that prohibits or limits the sending, transmitting or communicating of material or information.

X. War

This insurance does not apply to **Loss**, costs, injury, damage, claim, dispute and/or or suit arising therefrom, caused directly or indirectly, in whole or in part, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes:

1. Civil war; or

2. Armed conflict between two or more nations, armed conflict between military forces of any origin, or warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## VI. CONDITIONS

A. Appeals

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the total applicable limits of **Scheduled Underlying Insurance**, we may elect to do so. If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

B. Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three (3) years after the expiration or termination of this policy.

C. Bankruptcy or Insolvency

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this policy. But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation under **Scheduled Underlying Insurance**.

D. Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3. The **Policy Period** will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final Premium will not be less than the pro rata share of the Minimum Premium shown in Item 6. of the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium shown in Item 6 of the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium. Our check

or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first **Named Insured** in Item 1. of the Declarations will act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

## E. Change In Control

If during the **Policy Period**:

1. the first **Named Insured** designated in Item 1. of the Declarations consolidates with or merges into, or sells all or substantially all of its assets to any person or entity; or

2. any person or entity acquires an amount of the outstanding ownership interests representing more than 50% of the voting or designation power for the election of directors of the first **Named Insured** designated in Item 1. of the Declarations, or acquires the voting or designation rights of such an amount of ownership interests;

this policy will continue in full force and effect as to **Bodily Injury** and **Property Damage** that occur prior to the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place prior to the effective date of such transaction.

Coverage will be afforded by this policy for **Bodily Injury** or **Property Damage** that occurs on or after the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place on or after the effective date of such transaction if the **Named Insured** notifies us of the transaction no later than ninety (90) days after the effective date of the transaction.

If the **Named Insured** fails to notify us within ninety (90) days of the effective date of such transaction coverage afforded by this policy will cease on the ninetieth (90th) day after the effective date of such transaction at 12:01 am standard time of the address of the **Named Insured** shown in Item 1. of the Declarations or the end of the **Policy Period**, whichever is earlier.

The provisions of paragraph E. shall only apply to transactions with third parties not under control or ownership of the **Named Insured** on the inception date of this policy.

## F. Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy. This policy can be changed only by a written endorsement that we make to this policy.

## G. Duties In the Event of an Occurrence, Claim or Suit

1. You must see to it that we are notified as soon as practicable of an **Occurrence** that may result in a claim or **Suit** under this policy. To the extent possible, notice should include:

   a. how, when and where the **Occurrence** took place;

   b. the names and addresses of any injured persons and any witnesses; and

   c. the nature and location of any injury or damage arising out of the **Occurrence**.

2. If a claim is made or **Suit** is brought against any **Insured** which is reasonably likely to involve this policy, you must notify us in writing as soon as practicable.

   Written notice should be mailed, delivered, faxed or emailed to:

AIG Domestic Claims, Inc.
Excess Casualty Claims Department
Segmentation Unit
175 Water Street, 22nd Floor
New York, NY  10038
Fax:  (866) 743-4376
Email:  excessfnol@aig.com

3.  You and any other involved **Insured** must:

a.  immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **Suit**;

b.  authorize us to obtain records and other information;

c.  cooperate with us in the investigation, settlement or defense of the claim or **Suit**; and

d.  assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4.  No **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

H.  **Headings**

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

I.  **Inspection**

We have the right, but are not obligated, to inspect your premises and operations at any time.  Our inspections are not safety inspections.  They relate only to the insurability of your premises and operations and the premiums to be charged.  We may give you reports on the conditions that we find.  We may also recommend changes.  We do not, however, undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public.  We do not warrant the health and safety conditions of your premises or operations or represent that your premises or operations comply with laws, regulations, codes or standards.

J.  **Legal Actions Against Us**

No person or organization has a right under this policy:

1.  to join us as a party or otherwise bring us into a **Suit** asking for damages from an **Insured**; or

2.  to sue us under this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an **Insured**; but we will not be liable for damages that are not payable under this policy or that are in excess of the applicable Limits of Insurance of this policy.  An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

K.  **Maintenance of Scheduled Underlying Insurance**

You agree that during the **Policy Period**:

1.  you will keep **Scheduled Underlying Insurance** in full force and effect;

2.  the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance** will not materially change;

3. the total applicable limits of **Scheduled Underlying Insurance** will not decrease, except for any reduction or exhaustion of aggregate limits by payment of **Loss** to which this policy applies; and

4. any renewals or replacements of **Scheduled Underlying Insurance** will provide equivalent coverage to and afford limits of insurance equal to or greater than the policy being renewed or replaced.

If you fail to comply with these requirements, we will be liable only to the same extent that we would have, had you fully complied with these requirements.

L. **Other Insurance**

If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the **Other Insurance**. However, this provision will not apply if the **Other Insurance** is specifically written to be excess of this policy.

M. **Premium**

The first **Named Insured** designated in Item 1. of the Declarations will be responsible for payment of all premiums when due.

The premium for this policy will be computed on the basis set forth in Item 6. of the Declarations. At the beginning of the **Policy Period**, you must pay us the Advance Premium shown in Item 6. of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event, we will retain the Minimum Premium as shown in Item 6. of the Declarations for each twelve months of the **Policy Period**.

N. **Separation of Insureds**

Except with respect to the Limits of Insurance of this policy and rights or duties specifically assigned to the first **Named Insured** designated in Item 1. of the Declarations, this insurance applies:

1. as if each **Named Insured** were the only **Named Insured**; and

2. separately to each **Insured** against whom claim is made or **Suit** is brought.

O. **Transfer of Rights of Recovery**

1. If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

2. Any recoveries will be applied as follows:

   a. any person or organization, including the **Insured**, that has paid an amount in excess of the applicable Limits of Insurance of this policy will be reimbursed first;

   b. we then will be reimbursed up to the amount we have paid; and

   c. lastly, any person or organization, including the **Insured** that has paid an amount over which this policy is excess is entitled to claim the remainder.

   Expenses incurred in the exercise of rights of recovery will be apportioned among the persons or organizations, including the **Insured**, in the ratio of their respective recoveries as finally settled.

3. If, prior to the time of an **Occurrence**, you waive any right of recovery against a specific person or organization for injury or damage as required under an **Insured Contract**, we will also waive any rights we may have against such person or organization

P. **Transfer of Your Rights and Duties**

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

Q. **Unintentional Failure to Disclose**

Your failure to disclose all hazards existing as of the inception date of the policy will not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

R. **Violation of Economic or Trade Sanctions**

If coverage for a claim or **Suit** under this Policy is in violation of any United States of America economic or trade sanctions, including but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that claim or **Suit** will be null and void.

## VII. DEFINITIONS

A. **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1. notices that are published include material placed on the Internet or on similar electronic means of communication; and

2. regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

B. **Auto** means:

1. a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

2. any other land vehicle that is subject to a compulsory or financial responsibility law in the state where it is licensed or principally garaged.

However, **Auto** does not include **Mobile Equipment**.

C. **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time.

D. **Crisis Management Event** means an **Occurrence** that in the good faith opinion of a **Key Executive** of the **Named Insured**, in the absence of **Crisis Management Services**, has or may result in:

1. damages covered by this policy that are in excess of the total applicable limits of **Scheduled Underlying Insurance** or the **Self-Insured Retention**; and

2. significant adverse regional or national media coverage.

**Crisis Management Event** will include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals, provided that any damages arising out of any of the aforementioned must be covered under this policy.

E.  **Crisis Management Firm** means any firm that is shown in Schedule A, Approved Crisis Management Firms attached to and forming part of this policy, which is hired by you to perform **Crisis Management Services** in connection with a **Crisis Management Event.**

F.  **Crisis Management Loss** means the following amounts incurred during a **Crisis Management Event:**

  1.  amounts for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Named Insured** solely arising from a covered **Crisis Management Event;** and

  2.  amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Named Insured** or a **Crisis Management Firm** incurred at the direction of a **Crisis Management Firm,** solely arising from a covered **Crisis Management Event.**

G.  **Crisis Management Services** means those services performed by a **Crisis Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered **Crisis Management Event** by maintaining and restoring public confidence in the **Named Insured.**

H.  **CrisisResponse Costs** means the following reasonable and necessary expenses incurred during a **Crisis Management Event** directly caused by a **Crisis Management Event,** provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

  1.  medical expenses;

  2.  funeral expenses;

  3.  psychological counseling;

  4.  travel expenses;

  5.  temporary living expenses;

  6.  expenses to secure the scene of a **Crisis Management Event;** and

  7.  any other expenses pre-approved by the Company.

  **CrisisResponse Costs** does not include defense costs or **Crisis Management Loss.**

I.  **CrisisResponse Sublimit of Insurance** means the CrisisResponse Sublimit of Insurance shown in Item 3D. of the Declarations.

J.  **Excess Casualty CrisisFund Limit of Insurance** means the Excess Casualty CrisisFund Limit of Insurance shown in Item 3E of the Declarations.

K.  **Hostile Fire** means a fire that becomes uncontrollable or breaks out from where it was intended to be.

L.  **Impaired Property** means tangible property, other than **Your Product** or **Your Work,** that cannot be used or is less useful because:

  1.  it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

  2.  you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    1.  the repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

    2.  your fulfilling the terms of the contract or agreement.

M.  **Insured** means:

    1.  the **Named Insured**;

    2.  if you are designated in the declarations as:

        a.  an individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner;

        b.  a partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

        c.  a limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers;

        d.  an organization other than a partnership, joint venture or limited liability company, you are an insured.  Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders;

        e.  a trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees;

    3.  your employees other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;

    4.  your volunteer workers only while performing duties related to the conduct of your business;

    5.  any person (other than your employee or volunteer worker) or organization while acting as your real estate manager;

    6.  your legal representative if you die, but only with respect to duties as such.  That representative will have all your rights and duties under this policy;

    7.  any person or organization, other than the **Named Insured**, included as an additional insured under **Scheduled Underlying Insurance**, but not for broader coverage than would be afforded by such  **Scheduled Underlying Insurance.**

Notwithstanding any of the above:

        a.  no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations; and

        b.  no person or organization is an **Insured** under this policy who is not an **Insured** under applicable **Scheduled Underlying Insurance.** This provision shall not apply to any organization set forth in the definition of **Named Insured** in Paragraph R. 2 and 3.

N.  **Insured Contract** means that part of any contract or agreement pertaining to your business under which any **Insured** assumes the tort liability of another party to pay for **Bodily Injury** or **Property Damage** to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**Insured Contract** does not include that part of any contract or agreement:

1. that indemnifies a railroad for **Bodily Injury** or **Property Damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the **Insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **Insured's** rendering or failure to render professional services, including those shown in subparagraph 2. above and supervisory, inspection, architectural or engineering activities.

O. **Key Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the **Named Insured** is a partnership) of the **Named Insured** or sole proprietor (if the **Named Insured** is a sole proprietorship). A **Key Executive** also means any other person holding a title designated by you and approved by us, which title is shown in Schedule B, Additional Key Executives attached to and forming part of this policy.

P. **Loss** means those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a **Suit** or to investigate a claim reduce the applicable limits of **Scheduled Underlying Insurance**, then **Loss** shall include such expenses.

Q. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises you own or rent;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills; or

   b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. vehicles not described in Paragraph 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment**, but will be considered **Autos**:

a. equipment designed primarily for:

    i)  snow removal;

    ii)  road maintenance, but not construction or resurfacing; or

    iii)  street cleaning;

b.  cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, **Mobile Equipment** does not include any land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law are considered **Autos**.

R.  **Named Insured** means:

1.  any person or organization designated in Item 1. of the Declarations;

2.  as of the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy, provided that coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

3.  after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%), provided that:

    a.  coverage provided to such organization under this paragraph  does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

    b.  you give us prompt notice after you acquire or form such organization.

Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period**.

You agree that any organization to which paragraphs 2. and 3. above apply, will be required to be included as an **Insured** under applicable **Scheduled Underlying Insurance**. If you fail to comply with this requirement, coverage under this policy will apply as though the organization was included as an **Insured**, under the highest applicable limit of **Scheduled Underlying Insurance**.

S.  **Occurrence** means:

1.  as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence**.

2.  as respects **Personal Injury and Advertising Injury**, an offense arising out of your business that causes **Personal Injury and Advertising Injury**.  All damages that arise from the same, related or repeated injurious

material or act will be deemed to arise out of one **Occurrence,** regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

T. **Other Insurance** means a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, **Other Insurance** does not include **Scheduled Underlying Insurance,** the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

U. **Personal Injury and Advertising Injury** means injury arising out of your business, including consequential **Bodily Injury,** arising out of one or more of the following offenses:

1. false arrest, detention or imprisonment;

2. malicious prosecution;

3. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

4. oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

5. oral or written publication, in any manner, of material that violates a person's right of privacy;

6. the use of another's advertising idea in your **Advertisement;** or

7. infringement upon another's copyright, trade dress or slogan in your **Advertisement.**

V. **Policy Period** means the period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of termination of this policy.

W. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

X. **Products-Completed Operations Hazard** means all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

1. products that are still in your physical possession; or

2. work that has not yet been completed or abandoned. However, **Your Work** will be deemed completed at the earliest of the following times:

   a. when all of the work called for in your contract has been completed;

   b. when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

   c. when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   **Products-Completed Operations Hazard** does not include **Bodily Injury** or **Property Damage** arising out of:

1. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the loading or unloading of that vehicle by any **Insured;** or

2. the existence of tools, uninstalled equipment or abandoned or unused materials.

Y. **Property Damage** means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the **Occurrence** that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Z. **Retained Limit** means:

1. the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** providing coverage to the **Insured**; or

2. the **Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured**.

AA. **Scheduled Underlying Insurance** means:

1. the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

2. automatically any renewal or replacement of any policy in Paragraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

BB. **Self-Insured Retention** means the amount that is shown in Item 5. of the Declarations.

CC. **Suit** means a civil proceeding in which damages because of **Bodily Injury, Property Damage,** or **Personal Injury and Advertising Injury** to which this policy applies are alleged. **Suit** includes:

1. an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or

2. any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with our consent.

DD. **Your Product** means:

1. any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a. you;

   b. others trading under your name; or

   c. a person or organization whose business or assets you have acquired; and

2. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or

products.

**Your Product** includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

2. the providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

EE. **Your Work** means:

1 work or operations performed by you or on your behalf; and

2. materials, parts or equipment furnished in connection with such work or operations.

**Your Work** includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

2. the providing of or failure to provide warnings or instructions.

**IN WITNESS WHEREOF,** we have caused this policy to be executed and attested, but this policy will not be valid unless countersigned by one of our duly authorized representatives, where required by law.

By signing below, our President and Secretary agree on our behalf to all the terms of this policy.


_____
Secretary

_____
President

This policy shall not be valid unless signed at the time of issuance by our authorized representative, either below or on the Declarations page of the policy.


_____
**Authorized Representative**

**Commercial Umbrella Liability Policy with CrisisResponse[SM]**
**SCHEDULE OF UNDERLYING INSURANCE**

Issued to: CAMERON INTERNATIONAL CORPORATION                Policy Number:      27471353

By: ILLINOIS NATIONAL INSURANCE CO.

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| GENERAL LIABILITY | Liberty Mutual 07/01/09 07/01/10 | $3,000,000 EACH OCCURRENCE SIR - FRONTED PROGRAM |
| | | Defense Expenses are in addition to the limit |
| FOREIGN GENERAL LIAB | 07/01/09 07/01/10 | $1,000,000 EACH OCCURRENCE $4,000,000 MASTER CONTROL PROG AGG $2,000,000 PRODUCTS/C. OPS. AGGREGATE |
| | | Defense Expenses are in addition to the limit |
| GENERAL & PRODUCTS LIAB (CANADIAN) | Liberty Mutual 07/01/09 07/01/10 | $3,000,000 EACH OCCURRENCE SIR - FRONTED PROGRAM |
| | | Defense Expenses are in addition to the limit |
| AUTO LIABILITY | Liberty Mutual 07/01/09 07/01/10 | $3,000,000 COMBINED SINGLE LIMIT |
| | | Defense Expenses are in addition to the limit |

UNDSCH (5/99)
AH0006

**Commercial Umbrella Liability Policy with CrisisResponse[SM]**
<u>**SCHEDULE OF UNDERLYING INSURANCE**</u>

Issued to: CAMERON INTERNATIONAL CORPORATION          Policy Number:        27471353

By: ILLINOIS NATIONAL INSURANCE CO.

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| FOREIGN AUTO LIABILITY | 07/01/09 07/01/10 | $1,000,000 COMBINED SINGLE LIMIT |
| | | Defense Expenses are in addition to the limit |
| COMMERCIAL AUTO LIAB (CANADIAN-ONTARIO) (CANADIAN-ALL OTHER PROV) | Liberty Mutual 07/01/09 07/01/10 | $3,000,000 COMBINED SINGLE LIMIT |
| | | Defense Expenses are in addition to the limit |
| EMPLOYERS LIABILITY | 07/01/09 07/01/10 | $1,000,000 EACH ACCIDENT $1,000,000 DISEASE EACH EMPLOYEE $1,000,000 DISEASE POLICY LIMIT |
| | | Defense Expenses are in addition to the limit |
| FOREIGN EMPLOYERS LIABILITY | 07/01/09 07/01/10 | $1,000,000 EACH ACCIDENT |
| | | Defense Expenses are in addition to the limit |

UNDSCH (5/99)
AH0006

**Commercial Umbrella Liability Policy with CrisisResponse[SM]**
**SCHEDULE OF UNDERLYING INSURANCE**

Issued to: CAMERON INTERNATIONAL CORPORATION                    Policy Number:        27471353

By: ILLINOIS NATIONAL INSURANCE CO.

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| MARINE LIABILITY (TERMINAL OPERATORS LIAB) | 07/01/09 07/01/10 | $5,000,000 EACH OCCURRENCE |
| | | Limits are inclusive of Defense Expenses |
| AIRCRAFT LIABILITY (OWNED) | 07/01/09 07/01/10 | $300,000,000 EACH OCCURRENCE |
| | | Defense Expenses are in addition to the limit |
| AIRCRAFT LIABILITY (NON-OWNED) | 07/01/09 07/01/10 | $25,000,000 EACH OCCURRENCE |
| | | Defense Expenses are in addition to the limit |
| PERSONAL UMBRELLA LIAB | VARIOUS 07/01/09 07/01/10 | $5,000,000 EACH OCCURRENCE |
| | | Defense Expenses are in addition to the limit |

_Vincent Catapano_
AUTHORIZED REPRESENTATIVE

UNDSCH (5/99)
AH0006

### POLICYHOLDER DISCLOSURE
### NOTICE OF TERRORISM INSURANCE COVERAGE

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury--in concurrence with the Secretary of State, and the Attorney General of the United States--to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $12,139.00, and does not include any charges for the portion of losses covered by the United States government under the Act.

96556 (1/08)
© 2007 National Association of Insurance Commissioners

# TEXAS NOTICE

## IMPORTANT NOTICE

To obtain information or make a complaint:

You may call the Company's toll-free telephone number for information or to make a complaint at:

### 1-800-553-6938

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

### 1-800-252-3439

You may write the Texas Department of Insurance:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771

Web:   http://www.tdi.state.tx.us

E-mail:  ConsumerProtection@tdi.state.tx.us

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact the agent first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part of the attached document.

## AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de teléfono gratis de la compania para informacion o para someter una queja al:

### 1-800-553-6938

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

### 1-800-252-3439

Puede escribir al Departamento de Seguros de Texas:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771

Web:   http://www.tdi.state.tx.us

E-mail:  ConsumerProtection@tdi.state.tx.us

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU POLIZA:**
Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

94396 (4/07)
AH2090

COMMERCIAL UMBRELLA LIABILITY POLICY WITH CRISISRESPONSE®

TEXAS POLICY DISCLOSURE NOTICE

We acknowledge that the terms, conditions and coverages provided in this policy have been negotiated in good faith with you. You have agreed to accept such terms, conditions and coverages.

**PLEASE NOTE THAT THE FOLLOWING EXCLUSION, WHICH MAY NOT HAVE BEEN IN YOUR PREVIOUS POLICY, IS INCLUDED IN THIS POLICY:**

This insurance does not apply to any liability arising out of asbestos. Please refer to **Section V. EXCLUSIONS,** Paragraph B. **Asbestos,** of your policy for additional details about this exclusion.

**IN ADDITION, PLEASE NOTE THAT THE FOLLOWING ADDITIONAL EXCLUSIONS AND/OR LIMITATIONS, WHICH MAY NOT HAVE BEEN IN YOUR PREVIOUS POLICY, MAY BE INCLUDED WITH THIS POLICY BY ENDORSEMENT:**

(check as applicable)

- [ ] Chromated Copper Arsenate Exclusion
- [ ] Electromagnetic Fields Exclusion
- [ ] Formaldehyde Exclusion
- [X] Lead Exclusion
- [X] Silica Exclusion
- [X] Polychlorinated Biphenyl ("PCB") Exclusion

**PLEASE READ YOUR POLICY AND ENDORSEMENTS CAREFULLY.**

81911 (1/05)
AH1510

ENDORSEMENT No. 1

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no:          27471353

Issued to:   CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

### Commercial Umbrella Liability Policy with CrisisResponse®

### CrisisResponse Coverage Enhancement Endorsement

This policy is amended as follows:

It is understood and agreed that in every instance in which the phrase "CrisisResponse Sublimit of Insurance" is referenced in this policy and/or its endorsements, the phrase "CrisisResponse Limit of Insurance" shall be substituted.

**Section IV. LIMITS OF INSURANCE,** Paragraph I. is deleted in its entirety and replaced by the following:

I.   The **CrisisResponse Limit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period.**  This **CrisisResponse Limit of Insurance** will be in addition to the applicable Limit of Insurance.

All other terms, conditions, definitions and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

94621 (5/07)
AH2035

ENDORSEMENT No. 2

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no:          27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

### COVERAGE TERRITORY ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

Payment of loss under this policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

_____
Authorized Representative

89644 (7/05)
AH2421

ENDORSEMENT No. 3

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no:          27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

Commercial Umbrella Liability Policy With CrisisResponse®

Violation of Economic or Trade Sanctions Condition Amendment Endorsement

This policy is amended as follows:

Section VI. CONDITIONS, Paragraph R. Violation of Economic or Trade Sanctions is deleted in its entirety.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

99497 (6/08)
AH2423

ENDORSEMENT No. 4

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no:        27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

## Commercial Umbrella Liability Policy with CrisisResponse®

### Duties in the Event of an Occurrence, Claim or Suit and Schedule A - Approved Crisis Management Firms

Solely as respects coverage provided by Section II INSURING AGREEMENT - CRISISRESPONSE℠ AND EXCESS CASUALTY CRISIS FUND®, the following conditions are added to Section VI. Conditions, Paragraph G. Duties in the Event of an Occurrence, Claim or Suit:

You must report any **Crisis Management Event** to us within twenty-four (24) hours of the time that a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** or as soon as practicable to be eligible for the advancement of CrisisResponse Costs and the payment of **Crisis Management Loss.**

Notice of a **Crisis Management Event** may be given by calling 1-877-AIG-3100.  If notice is given by telephone, written notice will be given as soon as practicable thereafter.  Written notice should include:

1. how, when and where the **Crisis Management Event** is taking or took place;

2. the names and addresses of any injured persons and any witnesses; and

3. the nature and location of any injury or damage arising out of the **Crisis Management Event.**

Written notice should be mailed or delivered to:

> AIG Domestic Claims, Inc.
> Excess Casualty Claims Department
> Segmentation Unit
> 175 Water Street, 22nd Floor
> New York, NY  10038
> Fax: (866) 743-4376
> E-mail:  excessfncl@aig.com

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

Authorized Representative
or Countersignature (Where Applicable)

83687 (8/08)                    Page 1 of 6
AH2442

Schedule A

Approved Crisis Management Firms

The following firms are approved **Crisis Mangement Firms**:

| FIRM ADDRESS | CONTACT INFORMATION | EMERGENCY TELEPHONE | SERVICES OFFERED |
|---|---|---|---|
| **The Abernathy MacGregor Group** | | | |
| 501 Madison Avenue<br>New York, NY 10022 | James T. MacGregor<br>(212) 371-5999 Office<br>(646) 236-3271 Cell<br>(212) 762-0723 Fax<br>(212) 343-0818 Home<br>jtm@abmac.com<br><br>Rhonda Barnat<br>(212) 371-5999 Office<br>(917) 912-6378 Cell<br>(212) 762-0723 Fax<br>(646) 478-8740 Home<br>rb@abmac.com | (917) 449-9964 | Public Relations and Crisis Management |
| 611 West Sixth Street,<br>Suite 1880<br>Los Angeles, CA 90017 | Ian D. Campbell<br>(213) 630-6550 Office<br>(213) 489-3443 Cell<br>(213) 489-3443 Fax<br>(818) 957-5650 Home<br>(818) 541-0954 Home Fax<br>idc@abmac.com | (818) 750-4392<br>(917) 940-3476 | |
| **Bright Light Marketing Group** (Hawaii Only) | | | |
| 1001 Bishop Street,<br>Suite 900<br>Honolulu, Hawaii<br>96813-3429 | Charlene Lo Chan<br>(808) 275-3007 Direct<br>(808) 524-6441 Office<br>(808) 781-7733 Cell<br>(808) 524-8115 Fax<br>charlene@brightlightmarketing.com | | Public Relations and Crisis Management |
| **Edelman Public Relations Worldwide** | | | |
| 200 East Randolph<br>Street, 63rd Floor<br>Chicago, IL 60601 | Bill Keegan<br>(312) 240-2624 Direct<br>(312) 240-3000 Office<br>(312) 927-8424 Cell<br>(312) 240-2900 Fax<br>bill.keegan@edelman.com | | International Public Relations and Crisis Management |
| 1500 Broadway,<br>26th Floor<br>New York, NY | Chris Deri<br>(212) 704-4526 Office<br>(212) 391-6389 Fax<br>(917) 783-6771 Cell<br>chris.deri@edelman.com | | |

| Edward Howard and Company | | |
|---|---|---|
| 1100 Superior Avenue, Suite 1600 Cleveland, OH 44114-2518 | Wayne Hill (216) 781-2400 Office (216) 408-1211 Cell whill@edwardhoward.com | Public Relations and Crisis Management |

| Fleishman-Hilliard, Inc. | | |
|---|---|---|
| John Hancock Center 875 N. Michigan Avenue, Suite 3300 Chicago, IL 60611-1901 | David Saltz (312) 751-3530 Direct (312) 751-8878 Office (312) 203-2114 Cell (312) 751-8191 Fax david.saltz@fleishman.com | Public Relations and Crisis Management |
| 1615 L Street NW, Suite 1000 Washington, D.C. 20036-5610 | Benjamin (Ben) Kincannon (617) 692-0501 Office (508) 314-4154 Cell (617) 267-5905 Fax ben.kincannon@fleishman.com | |

| Hill and Knowlton, Inc. | | | |
|---|---|---|---|
| 909 Third Avenue New York, NY 10022 | Christopher R. Gidez (212) 885-0480 Direct (212) 885-0300 Office (914) 319-6582 Cell (212) 885-0524 Fax chris.gidez@hillandknowlton.com | (888) 264-5193 | Public Relations and Crisis Management |
| | Richard (Dick) C. Hyde (212) 885-0372 Direct (212) 885-0300 Office (917) 816-2208 Cell (212) 855-0570 Fax dhyde@hillandknowlton.com | | |
| 55 Metcalfe Street, Suite 1100 Ottawa, Canada K1P 6L5 | Jo-Anne Polak (613) 786-9954 Direct (613) 238-4371 Office (613) 761-2684 Cell (613) 238-8642 Fax jpolak@hillandknowlton.com | | |

| Lexicon Communications Corp. | | | |
|---|---|---|---|
| 520 Bellmore Way Pasadena, CA 91103 | Steven B. Fink (626) 683-9333 Direct (626) 683-9200 Ext. 226 Office (626) 253-1519 Cell (626) 449-7659 Fax sfink@lexiconcorp.com | (626) 683-9333 | Public Relations and Crisis Management |
| | Daryn Teague (661) 297-5292 Direct (805) 358-3058 Cell | | |

| Robinson Lerer & Montgomery | | | |
|---|---|---|---|
| 1345 Avenue of the Americas, 4th Floor New York, NY 10105 | Michael Gross (646) 805-2003 Direct (646) 805-2000 Office (917) 853-0620 Cell (646) 557-0002 Fax (718) 788-5281 Home mgross@rlmnet.com | (646) 805-2000 | Public Relations and Crisis Management |
| | Patrick S. Gallagher (646) 805-2007 Direct (646) 805-2000 Office (917) 328-9333 Cell (646) 805-2829 Fax (914) 232-4256 Home pgallagher@rlmnet.com | | |

| Sard Verbinnen & Co. | | | |
|---|---|---|---|
| 630 Third Avenue, 9th Floor New York, NY 10017 | George Sard (212) 687-8080 Office (212 687-8344 Fax gsard@sardverb.com | (917) 760-4392 | Public Relations and Crisis Management |
| | Paul Verbinnen (212) 687-8080 Office (212) 687-8344 Fax pv@sardverb.com | | |
| 190 S. LaSalle Street, Suite 1600 Chicago, IL 60603 | Brad Wilks (312) 895-4740 Direct (312) 895-4700 Office (312) 895-4747 Fax bwilks@sardverb.com | | |
| 275 Battery Street, Suite 480 San Francisco, CA 94111 | Paul Kranhold (415) 618-8750 Office (415) 568-9580 Fax pkranhold@sardverb.com | | |

| Sitrick and Company, Inc. | | | |
|---|---|---|---|
| 655 Third Avenue, 22nd Floor New York, NY 10017 | Jeffrey S. Lloyd (212) 660-6393 Direct (212) 573-6100 Office (310) 963-2850 Cell (212) 573-6165 Fax jeff_lloyd@sitrick.com | (310) 358-1011 | Public Relations and Crisis Management |
| 1840 Century Park East, Suite 800 Los Angeles, CA 90067 | Michael S. Sitrick (310) 788-2850 Direct (310) 788-2855 Fax mike_sitrick@sitrick.com | | |

| **The Torrenzano Group** | | |
|---|---|---|
| The Lincoln Building<br>60 East 42nd Street,<br>Suite 2112<br>New York, NY 10165-2112 | Richard Torrenzano<br>(212) 681-1700 Ext. 111 Direct<br>(212) 681-6961 Fax<br>richard@torrenzano.com<br><br>Edward A. Orgon<br>(212) 681-1700 Ext. 102 Direct<br>(917) 539-4000 Cell<br>(212) 681-6961 Fax<br>ed@torrenzano.com | Public Relation and<br>Crisis Management |

| **Zeno Group** | | |
|---|---|---|
| The Foundry Building<br>10555 Thomas Jefferson<br>Street NW<br>Washington, D.C.<br>20007 | Phillip Armstrong<br>(202) 965-7801 Direct<br>(202) 669-9926 Cell<br>phil.armstrong@zenogroup.com | Public Relations and<br>Crisis Management |

### THE FOLLOWING NON-PUBLIC RELATIONS FIRMS ARE APPROVED CRISIS RESPONSE FIRMS:

| FIRM ADDRESS | CONTACT INFORMATION | EMERGENCY TELEPHONE | SERVICES OFFERED |
|---|---|---|---|
| **Coventry Health Care, Inc.** | | | |
| 3200 Highland Avenue<br>Downers Grove, IL<br>60515 | Nicole Bennet-Denson<br>(212) 283-7183 Fax<br>(646) 284-8835 Cell<br>nxbennettden@cvty.com<br><br>Anthony Nastasi<br>(914) 874-4727 Cell<br>(845) 265-5086 Fax<br>atnastasi@cvty.com | (800) 652-5378<br>Crisis Response<br><br>(888) 736-3272<br>Case Management | Psychological Counseling, Medical Case Management, Medical Cost Projection and Containment. |
| **D.A.R., Inc.** | | | |
| 4 Iris Drive<br>Scarborough, Maine<br>04074 | David W. Hunt<br>(207) 415-0735 Direct<br>(207) 883-0493 Home<br>(207) 883-2436 Fax<br>dhunt12348@aol.com | | Crisis Management, Global Investigative Services, Access to Local, State and Federal Police Authorities, National & International Intelligence Agencies, Crisis Management Training, Threat and Vulnerability Assessment. |

| GAB Robbins North America, Inc. | | |
|---|---|---|
| 560 Peoples Plaza, Suite 215 Newark, Delaware 19702 | Gail Oliver (302) 838-1684 Direct (302) 521-4985 Cell (302) 838-1685 Fax olivarg@gabrobbins.com | Claims Investigative Services, Appraisal Services, Emergency Claims Services and Loss Call Center Operations. |

| Marsh, Inc. (Reputational Risk & Crisis Management Group) (Formerly Kroll Associates) | | |
|---|---|---|
| 1166 Avenue of the Americas New York, NY 10036 | Ilene Merdinger (212) 345-1690 Direct (914) 924-1040 Cell (212) 948-8638 Fax ilene.merdinger@marsh.com  Larry Walsh (212) 345-2765 Direct (917) 841-8839 Cell (212) 948-8638 Fax larry.walsh@marsh.com | Crisis Management and Investigative Services |
| 1255 23rd Street NW Washington, D.C. 20037 | Robert Wilkerson (202) 263-7920 Direct (202) 256-4931 Cell (202) 263-7900 Fax robert.wilkerson@marsh.com | |

ENDORSEMENT No. 5

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no.:       27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

### TEXAS LIABILITY INSURANCE AMENDATORY ENDORSEMENT
### CANCELLATION AND NONRENEWAL

Wherever used in this endorsement: 1) "Insurer" means the insurance company which issued this policy; and 2) "Insured" means the Named Corporation, Named Organization, Named Sponsor, or Named Insured stated in the declarations page; and 3) "Liability Insurance" means the following types of insurance: general liability, professional liability other than medical professional liability, commercial multi-peril coverage, and any other types of lines of liability insurance designated by the State Board of Insurance.

It is hereby agreed that the cancellation provision of this policy is deleted in its entirety and replaced by the following:

**CANCELLATION AND NONRENEWAL**

A.  Cancellation

1.  This policy may be canceled by the Insured by surrender thereof to the Insurer or any of its authorized agents or by mailing to the Insurer written notice stating when thereafter the cancellation shall be effective.

2.  Except as provided by subsection A.3. below, the Insurer may not cancel this policy if it is:

   a)  a policy of liability insurance that is a renewal or continuation policy; or

   b)  a policy of liability insurance that is in its initial policy period after the 60th day following the date on which the policy was issued.

3.  The Insurer may cancel this policy at any time during the term of the policy for the following reasons:

   a)  fraud in obtaining coverage;

   b)  failure to pay premiums when due;

   c)  an increase in hazard within the control of the Insured or  Other Insured(s) which would produce an increase in rate;

   d)  loss of the Insurer's reinsurance covering all or part of the risk covered by the  policy; or

   e)  the Insurer being placed in supervision, conservatorship, or receivership, if the cancellation or nonrenewal is approved or directed by the supervisor, conservator, or receiver.

4.  The Insurer shall deliver or mail to the Insured first named in the Declarations written notice of cancellation at the address shown on the policy not less than the 10th day before the date on which the cancellation takes effect.  Such written notice shall state the reasons(s) for cancellation.

5.  The Insurer may not cancel this policy based solely on the fact that the Insured is an elected official.

B.  Nonrenewal

1.  The Insurer may refuse to renew this policy by delivering or mailing to the Insured first named in the Declarations written notice of nonrenewal at the address shown on the policy.  Such written notice shall state the reason(s) for nonrenewal.  The notice must be delivered or mailed not later than the 60th day before the date on which the policy expires.  If the notice is delivered  or mailed later than the 60th day before the date on which the policy expires, the coverage shall remain in effect until the 61 day after the date on which the notice is delivered or mailed.  If notice is delivered or mailed, proof of delivery or mailing will be sufficient proof of notice.   Earned premium for any period of coverage that extends beyond the expiration date of the policy shall be computed pro rata based on the previous year's rates.

2.  The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

3.  The Insurer may not refuse to renew this policy based solely on the fact that the insured is an elected official.

All other terms, conditions and exclusions of the policy shall remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

74802 (10/01)                              Page 2 of 2
AH1133

ENDORSEMENT No. 6

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no:        27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

### Commercial Umbrella Liability Policy with CrisisResponse[SM]

### Texas Notice of Occurrence Amendatory Endorsement

This policy is amended as follows:

**Section VI. CONDITIONS,** Paragraph G. **Duties in the Event of an Occurrence, Claim or Suit** is amended to include the following provision:

5.   Your failure to give first report of a claim to us will not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer.  However, you will report any such **Occurrence** to us as soon as practicable once you become aware of such error.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

81913 (4/03)
AH1178

ENDORSEMENT No. 7

This endorsement, effective 12:01 AM:   July 1, 2009

Forms a part of policy no:        27471353

Issued to:   CAMERON INTERNATIONAL CORPORATION

By:   ILLINOIS NATIONAL INSURANCE CO.

### Commercial Umbrella Liability Policy with CrisisResponse[SM]

### Texas Amendatory Endorsement

This policy is amended as follows:

I.   **Section V. EXCLUSIONS**, Paragraph **P. Nuclear Liability**, subparagraph 2.e. is deleted in its entirety and replaced by the following:

   e.   "waste" means any waste material (1) containing by-product material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility below;

II.   **Section VI. CONDITIONS** is amended to include the following additional condition:

   **Notice of Settlement of Liability Claims**

   1.   We shall notify you in writing of an initial offer to compromise or settle a claim against you made under this policy.  The notice shall be given not later than the 10th day after the date on which the offer is made.

   2.   We shall notify you in writing of any settlement of a claim made against you under this policy.  The notice shall be given not later than the 30th day after the date of settlement.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____

Authorized Representative

81914 (4/03)
AH1179

ENDORSEMENT No. 8

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no:        27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

### Commercial Umbrella Policy with CrisisResponse®

### Act of Terrorism Self-Insured Retention Endorsement

Solely with respect to any **Act of Terrorism**, this policy is amended as follows:

The **DECLARATIONS, ITEM 5. SELF-INSURED RETENTION** is amended to include the following additional Self-Insured Retention:

> **ACT OF TERRORISM SELF-INSURED RETENTION - $3,000,000** Each Occurrence (As respects all liability covered under this policy arising out of any **Act of Terrorism**.)  The Act of Terrorism Self-Insured Retention will not be reduced or exhausted by **Defense Expenses**.

**ITEM 6. OF THE DECLARATIONS, PREMIUM AND PREMIUM COMPUTATION** is amended to include the following:

> **ACT OF TERRORISM PREMIUM          $12,139.00**

**Section IV. LIMITS OF INSURANCE**, is amended to include the following additional provision:

> The **Act of Terrorism Self-Insured Retention** applies whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured**.  If there is **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Act of Terrorism Self-Insured Retention**. However, in no event will amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for the payment of **Defense Expenses** reduce the **Act of Terrorism Self-Insured Retention**.

**Section III. DEFENSE PROVISIONS**, Paragraphs A. 1. and A. 2., and D. are deleted in their entireties, and Paragraph A. is replaced by the following:

> A.  We will have no duty to defend any **Suit** against the **Insured**.  We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

**Section VII. DEFINITIONS** is amended to include the following additional definition:

**Act of Terrorism means:**

1.  any act which is verified or recognized by the United States Government as an act of terrorism, including a certified "act of terrorism" defined by Section 102. Definitions., of the Terrorism Risk Insurance Act of 2002 and any revisions, amendments, or extensions thereto; or

2.  the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

**Defense Expenses** means any payment allocated to a specific loss, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

1.  Attorney's fees and all other investigation, loss adjustment and litigation expenses;

2.  Premiums on bonds to release attachments;

3.  Premiums on appeal bonds required by law to appeal any claim or **Suit;**

4.  Costs taxed against the **Insured** in any claim or **Suit;**

5.  Pre-judgment interest awarded against the **Insured;**

6.  Interest that accrues after entry of judgment.

It is understood and agreed that if any other endorsement to this policy excludes terrorism liability arising in one or more specified countries, the provisions of such exclusion shall supersede this endorsement.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

83049 (3/06)                        Page 2 of 2
AH1721

ENDORSEMENT No. 9

This endorsement, effective 12:01 AM:   July 1, 2009

Forms a part of policy no:           27471353

Issued to:   CAMERON INTERNATIONAL CORPORATION

By:   ILLINOIS NATIONAL INSURANCE CO.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**CrisisResponse Coverage Enhancement Endorsement**
**(With Recall Expense)**

This policy is amended as follows:

It is understood and agreed that in every instance in which the phrase "CrisisResponse Sublimit of Insurance " is referenced in this policy and/or its endorsements, the phrase "CrisisResponse Limit of Insurance" shall be substituted.

**Section IV. LIMITS OF INSURANCE,** Paragraph I. is deleted in its entirety and replaced by the following:

I.   The **CrisisResponse Limit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period.** This **CrisisResponse Limit of Insurance** will be in addition to the applicable Limit of Insurance.

**Section VII. DEFINITIONS,** Paragraph H. **CrisisResponse Costs,** is deleted in its entirety and replaced by the following:

H.   **CrisisResponse Costs** means the following reasonable and necessary expenses incurred during a **Crisis Management Event** directly caused by a **Crisis Management Event,** provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

1.   medical expenses;

2.   funeral expenses;

3.   psychological counseling;

4.   travel expenses;

5.   temporary living expenses;

6.   expenses to secure the scene of a **Crisis Management Event;**

7.   the cost or expense incurred by you or others for the withdrawal, recall, inspection, replacement, adjustment, removal or disposal of **Your Product, Your Work,** or **Impaired Property,** if such product, work or property is withdrawn or recalled from the market or from use by any person or organization, because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it that results in a **Crisis Management Event;** and

8.   any other expenses pre-approved by the Company.

**CrisisResponse Costs** do not include defense costs or **Crisis Management Loss.**

Section V. EXCLUSIONS, Paragraph R. Recall of Your Product, Your Work or Impaired Property is deleted in its entirety and replaced by the following:

R.  Recall of Your Product, Your Work or Impaired Property

This insurance does not apply to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.  Your Product;

2.  Your Work; or

3.  Impaired Property;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it. However, this exclusion shall not apply to recall expenses covered under Section II. INSURING AGREEMENT-CRISISRESPONSE ® AND EXCESS CASUALTY CRISISFUND®. The coverage provided for such withdrawal, recall, inspection, replacement, adjustment, removal or disposal of Your Product, Your Work, or Impaired Property shall be subject to the CrisisResponse Limit of Insurance of this policy.

All other terms, conditions, definitions and exclusions of this policy remain unchanged.

_Vincent Catapano_

_____
Authorized Representative
or Countersignature (Where Applicable)

ENDORSEMENT No. 10

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no:        27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

### Commercial Umbrella Liability Policy with CrisisResponse$^{SM}$

### Other Insurance - Contractual Agreement

This policy is amended as follows:

**Section VI. CONDITIONS,** Paragraph L. Other Insurance is deleted in its entirety and replaced with the following:

L.   **Other Insurance** If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the **Other Insurance.**  However, this provision will not apply if:

1.   the **Other Insurance** is specifically written to be excess of this policy; or

2.   you have agreed in a written contract or agreement that this policy will apply before any other valid and collectible insurance.  However, such agreement will be subject to the provisions of **Section IV. LIMITS OF INSURANCE,** paragraph H.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

80460 (07/02)
AH0943

ENDORSEMENT No. 11

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no:          27471353

Issued to:   CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**MTBE and Other Fuel Oxygenates Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

This insurance does not apply to:

Any liability arising out of methyl tertiary-butyl ether ("MTBE") and other fuel oxygenates including, but not limited to, the following:

1.  ether oxygenates, such as ethyl tertiary-butyl ether ("ETBE"), tertiary-amyl methyl ether ("TAME"), tertiary-amyl ethyl ether ("TAEE"), diisopropyl ether ("DIPE"), and dimethyl ether ("DME"); and

2.  alcohol oxygenates, such as ethanol (ethyl alcohol), methanol (methyl alcohol), and tertiary-butyl alcohol ("TBA").

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

80449 (02/03)
AH1040

ENDORSEMENT No. 12

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no:            27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Polychlorinated Biphenyl ("PCB") Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

This insurance does not apply to:

Any liability arising out of **Polychlorinated Biphenyl ("PCB")**.

**Section VII. DEFINITIONS** is amended to include the following additional definition:

**Polychlorinated Biphenyl ("PCB")** means:

1. The substance commonly known as **Polychlorinated Biphenyl ("PCB")**;

2. Any substance or product sold or distributed under any of **Polychlorinated Biphenyl's ("PCB")** trade names; and

3. Any substance or product which has the same or substantially similar chemical formulation, structure or function as **Polychlorinated Biphenyl ("PCB")**, by whatever name manufactured, formulated, structured, sold or distributed.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

*Vincent Catapano*

**Authorized Representative
or Countersignature (Where Applicable)**

80461 (02/03)
AH1060

ENDORSEMENT No. 13

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no:          27471353

Issued to:   CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Silica Exclusion Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

This insurance does not apply to:

Any liability arising out of **Silica**, **Silica** fiber(s) or **Silica Dust** or any product(s) containing **Silica**, **Silica** fiber(s) or **Silica Dust**.

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Silica** means:

1.  The substance commonly known as **Silica**; and

2.  Any substance or product which has the same or substantially similar chemical formulation, structure or function as **Silica**, by whatever name manufactured, formulated, structured, sold or distributed.

**Silica Dust** means:

1.  Dust comprising of **Silica** only; and

2.  Dust comprising of **Silica** mixed with other dust or fiber(s) including, but not limited to, asbestos fibers.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_Vincent Catapano_

_____

**Authorized Representative**
or Countersignature (Where Applicable)

80479 (02/03)
AH1061

ENDORSEMENT No. 14

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no.:          27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

Commercial Umbrella Liability Policy with CrisisResponse®

Fellow Employee Limitation Endorsement

This policy is amended as follows:

Section V. EXCLUSIONS, I. Employees and Volunteers is deleted in its entirety and replaced by the following:

I.  Employees and Volunteers

This insurance does not apply to liability of any employee or volunteer qualifying as an Insured under this policy arising out of Bodily Injury, Property Damage or Personal Injury and Advertising Injury:

1.  to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to an employee of yours while in the course of his or her employment or performing duties related to the conduct of your business, or to another volunteer of yours while performing duties related to the conduct of your business;

2.  to the spouse, child, parent, brother or sister of such injured employee or volunteer as a consequence of subparagraph 1 above;

3.  for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in subparagraphs 1 or 2 above; or

4.  arising out of his or her providing or failing to provide professional health care services.

However, if coverage is provided by Scheduled Underlying Insurance for the liability of any employee qualifying as an Insured under this policy arising out of Bodily Injury, Property Damage or Personal Injury and Advertising Injury to a fellow employee while in the course of his or her employment or performing duties related to the conduct of Your business:

1.  this exclusion shall not apply; and

2.  coverage under this policy for such Bodily Injury, Property Damage or Personal Injury and Advertising Injury will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period , Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by Scheduled Underlying Insurance.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_Vincent Catagano_

_____
Authorized Representative
or Countersignature (Where Applicable)

83074 (09/03)                    Page 1 of 1
AH1229

ENDORSEMENT No. 15

This endorsement, effective 12:01 AM:   July 1, 2009

Forms a part of policy no.:        27471353

Issued to:   CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

Commercial Umbrella Liability Policy with CrisisResponse®

Radioactive Matter Exclusion Endorsement

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

Radioactive Matter

This insurance does not apply to any liability arising out of radioactive matter or any form of radiation.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

83094 (09/03)
AH1247

ENDORSEMENT No. 16

This endorsement, effective 12:01 AM:   July 1, 2009

Forms a part of policy no.:        27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Fungus Exclusion Endorsement**

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

This insurance does not apply to:

**Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** or any other loss, injury, damage, cost or expense, including, but not limited to, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

    a.  Any **Fungus(i)**, **Molds(s)**, mildew or yeast, or

    b.  Any **Spore(s)** or toxins created or produced by or emanating from such **Fungus(i)**, **Mold(s)**, mildew or yeast, or

    c.  Any substance, vapor , gas, or other emission or organic or inorganic body or substance produced by or arising out of any **Fungus(i)**, **Mold(s)**, mildew or yeast, or

    d.  Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any **Fungus(i)**, **Mold(s)**, mildew, yeast, or **Spore(s)** or toxins emanating therefrom.

Paragraphs a., b., c. and d. above apply regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that loss, injury, damage, cost or expense.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.

Section VII. DEFINITIONS is amended to include the following additional definitions:

    **Fungus(i)** includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts and mushrooms.

    **Mold(s)** includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

    **Spore(s)** means any dormant or reproductive body produced by or arising or emanating out of any **Fungus(i)**, **Mold(s)**, mildew, plants, organisms or microorganisms.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

ENDORSEMENT No. 17

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no:        27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

### Commercial Umbrella Liability Policy with CrisisResponse©

### Professional Liability Exclusion Endorsement
### (With Limited Exception for Resultant Bodily Injury and Property Damage)

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

**Professional Liability**

This insurance does not apply to any liability arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the **Insured** or any person for whom the **Insured** is legally responsible.  It is understood this exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured.**

However, if coverage for resultant **Bodily Injury** or **Property Damage** arising out of professional services performed by or on behalf of the **Insured** is provided by **Scheduled Underlying Insurance:**

1.  This exclusion shall not apply to such resultant **Bodily Injury** or **Property Damage;** and

2.  Coverage under this policy for such resultant **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions, and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period,** Limits of Insurance, premium, and all other terms, definitions, conditions and exclusions of this policy, coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance.**

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

89475 (6/05)
AH1695

ENDORSEMENT No. 18

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no:          27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Lead Exclusion Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Lead**

This insurance does not apply to any liability arising out of lead or the lead content of products.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supersede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

86471 (2/06)
AH1891

ENDORSEMENT No. 19

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no:          27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Employer's Liability Coverage Endorsement

**IT IS UNDERSTOOD THAT TO THE EXTENT ANY COVERAGE MAY OTHERWISE BE PROVIDED UNDER THIS POLICY OR ANY OF ITS ENDORSEMENTS, THE PROVISIONS OF THIS ENDORSEMENT WILL SUPERCEDE.**

Solely with respect to the **Insured's** Employer's Liability, **Section I. INSURING AGREEMENT-COMMERCIAL UMBRELLA LIABILITY,** Paragraphs A. and B. are deleted in their entireties and replaced by the following:

A.  We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the **Insured** becomes legally obligated to pay by reason of liability imposed by law because of **Bodily Injury** by accident or by disease caused by an **Occurrence,** including resulting death, of your employee. The amount we will pay for damages is limited as described in **Insuring Agreement IV. Limits of Insurance.**

B.  This policy applies, only if all of the following conditions are met:

1.  The **Bodily Injury** by accident or by disease must arise out of and in the course of the injured employee's employment by you;

2.  The **Bodily Injury** by accident must occur during the **Policy Period;**

3.  The **Bodily Injury** by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such **Bodily Injury** by disease must occur during the **Policy Period;** and

4.  If you are sued, the original **Suit** and any related legal actions for damages for **Bodily Injury** by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

C.  The amount we will pay for damages covered under this endorsement, where recovery is permitted by law, include damages:

1.  for which you are liable to a third party by reason of a claim or **Suit** against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2.  for care and loss of services;

3.  for consequential **Bodily Injury** of a spouse, child, parent, brother or sister of the injured employee;

provided that the damages listed in C.1., C.2. and C.3. above are the direct consequence of **Bodily Injury** that arises out of and in the course of the injured employee's employment by you; and

4.  because of **Bodily Injury** to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

Section V. EXCLUSIONS is amended to include the following additional exclusions:

**Various Employer's Liability**

This insurance does not apply to:

a. **Property Damage, Personal Injury** or **Advertising Injury;**

b. liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

c. punitive or exemplary damages because of **Bodily Injury** to an employee employed in violation of law;

d. **Bodily Injury** to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

e. **Bodily Injury** intentionally caused or aggravated by you;

f. **Bodily Injury** occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to **Bodily Injury** to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

g. **Bodily Injury** to any person in work subject of the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an employee due to **Bodily Injury** arising out of or in the course of employment, or any amendments to those laws;

h. **Bodily Injury** to a master or member of the crew of any vessel;

i. Fines or penalties imposed for violation of federal or state law;

j. Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violations of those laws or regulations issued thereunder, and any amendments to those laws; and

k. Any liability arising out of **Bodily Injury** to an employee in the course of employment, where the obligation of any insurer or self-insurance mechanism providing employer's liability coverage for the **Insured** is by law unlimited.

Section V. EXCLUSIONS, Paragraph V2. is deleted in its entirety and replaced by the following:

This insurance does not apply to **Bodily Injury** to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws.

All other terms, definitions, conditions and exclusions remain unchanged.

_Vincent Catapano_

_____
Authorized Representative
or Countersignature (Where Applicable)

ENDORSEMENT No. 20

This endorsement, effective 12:01 AM:   July 1, 2009

Forms a part of policy no:          27471353

Issued to:   CAMERON INTERNATIONAL CORPORATION

By:   ILLINOIS NATIONAL INSURANCE CO.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Knowledge of Occurrence Endorsement**

This policy is amended as follows:

Notwithstanding any provision(s) in this Policy to the contrary, and solely as respects any loss reporting requirements under this Policy, it is understood that knowledge of **Occurrence** by the agent, servant or employee of the **Insured** or any other person shall not in itself constitute knowledge by the **Insured**, unless the Risk Manager or Risk Management Department received notice from said agent, servant, employee or any other person.

All other terms, definitions, conditions and exclusions remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

87222 (12/04)
AH1490

ENDORSEMENT No. 21

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no:          27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Duties in the Event of an Occurrence, Claim or Suit

This policy is amended as follows:

**Section VI. CONDITIONS, Paragraph G. Duties in the Event of an Occurrence, Claim or Suit,** subparagraph 1. is deleted in its entirety and replaced by the following:

1. You must see to it that we are notified as soon as practicable after your corporate officer receives notice from its agent, servant, employee or any other person, of an **Occurrence** that may result in a claim or **Suit** under this policy.  To the extent possible, notice should include:

   a.  how, when and where the **Occurrence** took place;

   b.  the names and addresses of any injured persons and any witnesses; and

   c.  the nature and location of any injury or damage arising out of the **Occurrence.**

However it is understood that the provisions of this endorsement will not supercede **Section I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY** of the policy.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

86456 (8/04)
AH1437

ENDORSEMENT No. 22

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no:        27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Intellectual Property Exclusion Endorsement
### (Amendment of Exclusion L. and Definition U.)

This policy is amended as follows:

**Section V. EXCLUSIONS, L. Infringement of Copyright, Patent, Trademark or Trade Secret** is deleted in its entirety and replaced by the following:

**L. Intellectual Property**

This insurance does not apply any liability arising out of or directly or indirectly related to the actual or alleged publication or utterance or oral or written statements which are claimed as an infringement, violation or defense of any of the following rights or laws:

1.  copyright;

2.  patent;

3.  trade secrets

4.  trade dress; or

5.  trademark, service mark, certification mark, collective mark or trade name.

For the purpose of this endorsement only, **Section VII. DEFINITIONS**, Paragraph U., subparagraphs 6. and 7. are deleted in their entireties.

IT IS UNDERSTOOD THAT TO THE EXTENT ANY COVERAGE OR EXCLUSION MAY OTHERWISE BE PROVIDED UNDER THIS POLICY OR ANY OF ITS ENDORSEMENTS, THE PROVISIONS OF THIS ENDORSEMENT WILL SUPERCEDE.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

89464 (6/05)
AH1684

ENDORSEMENT No. 23

This endorsement, effective 12:01 AM:   July 1, 2009

Forms a part of policy no:          27471353

Issued to:   CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Joint Venture Limitation Endorsement**
**(Scaled Limits/Scaled Attachment with Final Adjudication Adjustment)**

**TO THE EXTENT ANY PROVISION OF THIS ENDORSEMENT CONFLICTS WITH ANY PROVISION OF THE POLICY OR ANY OF ITS OTHER ENDORSEMENTS, THE PROVISIONS OF THIS ENDORSEMENT WILL SUPERCEDE.**

Solely as respects any joint venture, partnership, or limited liability company in which the **Named Insured** has an interest, and which is not otherwise covered by this policy as an **Insured**, this policy is amended as follows:

**Section IV. LIMITS OF INSURANCE**, Paragraphs F. and G. are deleted in their entireties and replaced by the following and new paragraphs N., O., P., and Q. are added:

F.   This policy applies only in excess of the **Retained Limit**. If however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

    1.   greater than the amount shown in such schedule, this policy will apply in excess of the greater amount of valid and collectible insurance; or

    2.   less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G.   If the **Retained Limit** is reduced or exhausted by the payment of **Loss** to which this policy applies, we will

    1.   in the event of reduction, pay excess of: the remaining applicable **Retained Limit**; or

    2.   in the event of exhaustion of the **Retained Limit** continue in force as underlying insurance.

N.   In the event of any **Occurrence** caused by or arising out of any joint venture, partnership, or limited liability company in which the **Named Insured** has an interest, our Limits of Insurance under this policy shall be limited to the **Named Insured's** percentage interest in the joint venture, partnership, or limited liability company multiplied by the total applicable Limits of Insurance afforded the **Named Insured** by this policy.

Where the percentage interest of the **Named Insured** in the joint venture, partnership, or limited liability company is not set forth in writing, the percentage to be applied shall be that which would be imposed by law at the inception of the joint venture, partnership, or limited liability company. Such percentage shall not be increased by the insolvency of others' interests in the joint venture, partnership, or limited liability company.

O.   However, upon final settlement or adjudication of the claim or **Suit**, Paragraphs F. and N. above shall no longer apply to the settled or adjudicated claim and our Limits of Insurance under this policy shall be limited to the amount of the **Named Insured's Loss** divided by the amount of the final settlement or adjudication of the claim and then multiplied by the total Limits of Insurance shown in Item 3. of the Declarations.

P.  It is further agreed that our Limits of Insurance as limited by Paragraph O. above shall be excess of the greater of:

   1.  Any Self Insured Retention applicable under the terms and conditions of this policy and its endorsements; or

   2.  Any valid and collectible insurance issued in the name of the joint venture, partnership, or limited liability company; or

   3.  The amount of the **Named Insured's Loss** divided by the amount of the final settlement or adjudication of the claim or **Suit** and then multiplied by the total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and any applicable **Other Insurance.**

Q.  If we indemnified the **Named Insured** for any amount based upon the terms set forth in Paragraphs F. and N. above, then:

   1.  If the amount payable under Paragraphs O. and P. on behalf of the **Named Insured's Loss** arising out of such joint venture, partnership, or limited liability company is more than the amount already paid under the requirements of Paragraphs F. and N., we will indemnify the **Named Insured** for the difference up to the amount payable under Paragraphs O. and P.

   2.  If the amount payable under Paragraphs O. and P. on behalf of the **Named Insured's Loss** arising out of such joint venture, partnership, or limited liability company is less than the amount already paid under the requirements of Paragraphs F. and N., the **Named Insured** shall reimburse us for the difference up to the amount payable under Paragraphs O. and P.

Solely for the purpose of this endorsement, **Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Joint Venture, Partnership, or Limited Liability Companies**

This insurance does not apply to any liability arising out of a joint venture, partnership, or limited liability company for any **Occurrence** that took place before the **Named Insured** acquired, joined or formed the joint venture, partnership, or limited liability company.

Solely for the purpose of this endorsement, **Section VII. DEFINITIONS,** Paragraph T. **Other Insurance,** is amended to include the following additional provision:

**Other Insurance** does not include insurance issued in the name of the joint venture, partnership, or limited liability company.

Solely for the purpose of this endorsement, **Section VII. DEFINITIONS,** Paragraph Z. **Retained Limit,** is deleted and replaced by the following:

Z.  **Retained Limit** means:

The greater of:

   1.  Any Self Insured Retention applicable under the terms and conditions of this policy and its endorsements; or

   2.  Any valid and collectible insurance issued in the name of the joint venture, partnership, or limited liability company; or

3.  The **Named Insured's** percentage interest in the joint venture, partnership, or limited liability company multiplied by the total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and any applicable **Other Insurance.**

The insurance afforded under this endorsement shall not be subject to any requirement of **Section VII.** Paragraph M. that a joint venture, partnership, or limited liability company be shown as a **Named Insured** in the Declarations.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

89467 (6/05)                                3 of 3
AH1687

ENDORSEMENT No. 24

**This endorsement, effective 12:01 AM:**  July 1, 2009

**Forms a part of policy no:**          27471353

**Issued to:**  CAMERON INTERNATIONAL CORPORATION

**By:**  ILLINOIS NATIONAL INSURANCE CO.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Named Peril and Time Element Pollution**
**Self-Insured Retention Endorsement**
**(Products-Completed Operations Hazard Version)**

This policy is amended as follows:

**Section V. EXCLUSIONS,** Paragraph Q. **Pollution** is deleted in its entirety and replaced by the following:

**Pollution**

This insurance does not apply to:

1. Any **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2. Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants;** or

3. Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants.**

However, Paragraph 1 of this exclusion will not apply to **Bodily Injury** or **Property Damage** arising out of:

   i. Any discharge, dispersal, seepage, migration, release or escape of **Pollutants** directly or indirectly caused by fire, explosion, lightning, windstorm, vandalism or malicious mischief, riot or civil commotion, flood, earthquake, automatic sprinkler leakage, collision or upset of an **Auto or Mobile Equipment** or aircraft; or

   ii. Any discharge, dispersal, seepage, migration, release or escape of **Pollutants** and included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

     (a) discarded, dumped, abandoned, thrown away; or

     (b) transported, handled, stored, treated, disposed of or processed as waste;

     by anyone; or

   iii. Any discharge, dispersal, seepage, migration, release or escape of **Pollutants** that meets all of the following conditions:

(a) It was accidental and neither expected nor intended by the **Insured**. This condition would not serve to deny coverage for a non-routine incident where such discharge, dispersal, seepage, migration, release or escape of pollutants was a result of an attempt by the **Insured** to mitigate or avoid a situation where substantial third party **Bodily Injury** or **Property Damage** could occur;

(b) It was demonstrable as having commenced on a specific date during the **Policy Period**;

(c) Its commencement became known to the **Insured** within (30) calendar days;

(d) Its commencement was reported in writing to us within (90) calendar days of becoming known to any officer of the **Insured**; any manager in your risk management, insurance or legal department; any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or Suit; or any **Insured** authorized or responsible to report the commencement; and

(e) Reasonable effort was expended by the **Insured** to terminate the discharge, dispersal, seepage, migration, release or escape of **Pollutants** as soon as conditions permitted.

However, nothing contained in this endorsement will operate to provide any coverage with respect to:

i. Any site or location principally used by the **Insured**, or by others on the **Insured's** behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material;

ii. Any fines or penalties;

iii. Any clean up loss, cost or expense arising out of any governmental request, demand, order or statutory or regulatory requirement. However, this provision iii will not apply to third party clean up loss, cost or expense otherwise covered by this endorsement that are also the subject of a governmental request, demand, order or statutory or regulatory requirement;

iv. Acid rain or acid runoff;

v. Clean-up, removal, containment, treatment, detoxification or neutralization of **Pollutants** situated on premises which the **Insured** owns, rents or occupies at the time of the actual discharge, dispersal, seepage, migration, release or escape of said **Pollutants**; or

vi. Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury**, or any loss, cost or expense arising out of any discharge, dispersal, seepage, migration, release or escape of **Pollutants** in knowing violation of or non compliance with governmental permits.

For the purpose of this endorsement only, the SELF-INSURED RETENTION in ITEM 5. of the DECLARATIONS, is amended to include the following additional provision:

$3,000,000 Each Occurrence (As respects all damages arising out of any discharge, dispersal, seepage, migration, release or escape of **Pollutants** covered under this endorsement). This Self-Insured Retention will not be reduced by **Defense Expenses**.

The above Self-Insured Retention applies whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance**. If there is **Scheduled Underlying Insurance** or **Other Insurance** applicable to a **Loss**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the above Self-Insured Retention if such policies were purchased by the **Named Insured** to specifically apply as underlying insurance to this policy. However, in no event will amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for the payment of **Defense Expenses** reduce the above Self-Insured Retention.

For the purpose of this endorsement only, **Section III. DEFENSE PROVISIONS** Paragraphs A. and D. are deleted in their entirety and  Paragraph A. is replaced by the following:

We will have no duty to defend any **Suit** against the **Insured** until the above **Self-Insured Retention** is exhausted by payment of **Loss**.  We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this endorsement may apply.  If we exercise this right, we will do so at our own expense.

For the purpose of this endorsement only, **Section VII. DEFINITIONS** is amended to include the following additional definition:

**Defense Expenses** means a payment allocated to defend a specific **Suit**, including but not limited to:

1.  Attorneys' fees and all other investigation, loss adjustment and litigation expenses;

2.  Premiums on bonds to release attachments;

3.  Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4.  Court costs taxed against the **Insured** in any **Suit**;

5.  Pre-judgment interest awarded against the **Insured**; and

6.  Interest that accrues after entry of judgment.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

89470 (6/05)                              Page 3 of 3
AH1690

ENDORSEMENT No. 25

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no:          27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Employee Benefits Liability Endorsement**
**(Claims Made)**

**The provisions of this Endorsement are Different From the Rest of the Policy**

NOTICE: THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.  COVERAGE IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO US WHILE THE COVERAGE IS IN FORCE.  PLEASE REVIEW THE ENDORSEMENT CAREFULLY AND DISCUSS THIS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

Solely for the purpose of coverage provided by this endorsement only, the policy is amended as follows:

The DECLARATIONS, ITEM 2. is amended to include the following:

    Item 2a.   RETROACTIVE DATE:   07/01/2005

    Item 2b.   CONTINUITY DATE:    07/01/2005

**ADDITIONAL DECLARATIONS**

ITEM 3. LIMITS OF INSURANCE of the DECLARATIONS is amended to include the following additional provision:

      $25,000,000          Each Wrongful Act or series of related Wrongful Acts

**INSURING AGREEMENT**

Section I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY is amended to include the following additional provision:

We will pay on behalf of the Insured those sums in excess of the Schedule of Retained Limits that the Insured becomes legally obligated to pay because of any Claim made against the Insured due to any Wrongful Act of the Insured, or any other person for whose acts the Insured is legally liable, in the Administration of the Insured's Employee Benefits Programs.  Such Wrongful Act must occur on or after the Retroactive Date and prior to the end of the Policy Period.  This insurance applies only if a Claim for damages covered by this Endorsement is first made against the Insured and reported to us during the Policy Period or Extended Reporting Period (if applicable).

## DEFINITIONS

Section VII. DEFINITIONS is amended to include the following additional definitions:

**Administration** means:

1. Giving counsel to employee with respect to the **Employee Benefits Programs;**

2. Interpreting the **Employee Benefits Programs;**

3. Handling of records in connection with the **Employee Benefits Programs;** or

4. Effecting enrollment, termination or cancellation of employees under the **Employee Benefits Programs,** provided all are acts are authorized by the Named **Insured.**

**Claim** means a demand for money or a **Suit.**

**Employee Benefits Programs** means:

1. Group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, provided that no one other than an employee may subscribe to such insurance or plans;

2. Workers' compensation, unemployment insurance, social benefits, disability benefits; and

3. Any other similar employee benefits instituted after the effective date of this endorsement provided we are notified within thirty (30) days after the institution of such benefits.

**Wrongful Act** means any act, error or omission in the **Administration** of the **Employee Benefits Program.**

## EXCLUSIONS

Section V. EXCLUSIONS is amended to include the following additional exclusions:

This insurance does not apply to  **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury.**

This insurance does not apply to any **Loss** arising out of any dishonest, fraudulent, criminal or malicious act or omission committed by any **Insured.**

This insurance does not apply to any **Loss** arising out of any discrimination or humiliation committed by any **Insured.**

This insurance does not apply to any **Loss** arising out of failure of performance of contract by an insurer.

This insurance does not apply to any **Claim** based upon:

1. failure of any investment(s), including but not limited to stock, to perform as represented by any **Insured;** or

2. advice given by an **Insured** to an employee to participate in any investment plan, including but not limited to stock subscription plans.

This insurance does not apply to any **Claim** made against the **Insured** based on or attributable to any failure or omission on the part of the **Insured** to effect and maintain insurance or bonding for any plan's property or assets.

89461 (6/05)                                    Page 2 of 4
AH1681

This insurance does not apply to any **Claim** based upon the **Insured's** failure to comply with any law concerning workers' compensation, unemployment insurance, social security, disability benefits or any similar laws.

This insurance does not apply to any loss for which the **Insured** is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974 (including, but not limited to, amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, the Health Insurance Portability and Accountability Act of 1996, the Newborns' and Mothers' Health Protection Act of 1996, the Mental Health Parity Act of 1996, and the Women's Health and Cancer Rights Act of 1998), and including any amendments or revisions thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world.

This insurance does not apply to any **Claim** alleging or arising out of an **Occurrence** committed on or after the Retroactive Date shown above, if any **Insured** listed  under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee authorized by you to give or receive notice of an **Occurrence**, knew as of the Continuity Date that such **Occurrence** could result in a **Claim**.

This insurance does not apply to any **Claim** alleging or arising out the same **Occurrence** or series of continuous, repeated or related **Occurrence** or alleging the same or similar facts, alleged or contained in any **Claim** which has been reported, or any **Occurrence** of which notice has been given, under any policy of which this policy is a renewal, replacement or succeeds in time.

This insurance does not apply to any **Claim** that is prior to or pending as of the Continuity Date, or any **Claim** arising out of or relating to any fact, circumstance, situation or **Occurrence** alleged in such prior or pending **Claim**.

## LIMITS OF INSURANCE

Section IV. LIMITS OF INSURANCE, Paragraph D. is amended to include the following additional provision:

Subject to the General Aggregate and the Products-Completed Operations Aggregate, whichever applies, the each **Wrongful Act** or series of related **Wrongful Acts** Limit of Insurance shown in the ADDITIONAL DECLARATIONS is the most we will pay for the sum of damages covered under this endorsement because of any act, error or omission in the **Administration** of the **Employee Benefits Program**.

## CONDITIONS

Section VI. CONDITIONS is amended to include the following additional condition:

**Optional Extended Reporting Endorsement**

The coverage under the Employee Benefits Liability Endorsement may end because one of us chooses to cancel it or not renew it.  If this is not the result of non-payment of the premium, you have the right to buy a reporting endorsement.  It extends the time to report covered **Claims**.  The **Claim** must first be made against an **Insured** and reported to us within three (3) years after the Employee Benefits Liability Endorsement ends and while the reporting endorsement is in effect.

To obtain this reporting endorsement you must request it in writing and pay the additional premium within thirty (30) days after this coverage ends.  If we do not receive written notice and payment within this period, you may not exercise this right at a later date. We will sell you this endorsement for the additional premium to be agreed. Once you pay the premium we can not cancel the endorsement.  We will determine the additional premium taking into account the following:

1.  The exposures insured;

2.  Previous types and amounts of insurance;

3.  Limits of Insurance available under the Employee Benefits Liability Endorsement for future payment of damages; and

4.  Other related factors.

The optional Extended Reporting Endorsement does not reinstate or increase the Limits of Insurance applicable to any **Claim** to which the Employee Benefits Liability Endorsement applies.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

ENDORSEMENT No. 26

**This endorsement, effective 12:01 AM:** July 1, 2009

**Forms a part of policy no:**       27471353

**Issued to:**   CAMERON INTERNATIONAL CORPORATION

**By:**  ILLINOIS NATIONAL INSURANCE CO.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Employers' Liability / Stop Gap Limitation Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Employers' Liability**

This insurance does not apply to **Bodily Injury** to any employee of the **Insured** arising out of and in the course of the employee's employment by the **Insured**.

However, if insurance for such **Bodily Injury** is provided by a policy listed in the **Scheduled Underlying Insurance:**

1.  The above exclusion shall not apply; and

2.  Coverage under this policy for such **Bodily Injury** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance.**

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

82616 (5/06)
AH1887

ENDORSEMENT No. 27

**This endorsement, effective 12:01 AM:**  July 1, 2009

**Forms a part of policy no:**          27471353

**Issued to:**  CAMERON INTERNATIONAL CORPORATION

**By:**  ILLINOIS NATIONAL INSURANCE CO.

**Commercial Umbrella Liability Policy With CrisisResponse®**

**Marine Liability Limitation Endorsement**

This policy is amended as follows:

A.  Solely as respects watercraft, **Section V. Exclusions, Paragraph A.** is deleted in its  entirety.

B.  **Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Marine**

This insurance does not apply to any marine liability which includes, but is not limited to, the following:

| | |
|---|---|
| Charterers Liability | Protection and Indemnity Liability |
| Safe Berth Legal Liability | Ship Builders Liability |
| Towers Liability | Stevedores Liability |
| Ship Repairers Legal Liability | Wharfingers Liability |
| Terminal Operation Liability | |

However, if insurance for marine liability is provided by **Scheduled Underlying Insurance:**

1.  This exclusion shall not apply to marine liability coverage for **Bodily Injury** or **Property Damage;** and

2.  Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the **Policy Period,** Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will not be broader than the coverage provided by  **Scheduled Underlying Insurance.**

Except, however, this insurance does not apply to, and nothing contained in this endorsement will operate to provide any coverage with respect to:

1.  **Property Damage** to any property in the **Insured's** care, custody or control;

2.  The cost or expense of, or incidental to, the removal of the wreck of any vessel; or

3.  Any liability arising out of any marine employers liability or workers compensation law including but not limited to the Jones Act or the Longshore and Harbor Workers' Compensation Act (including any amendments, revisions or extensions thereto and any rules or regulations promulgated thereunder);

even if such coverage is provided by **Scheduled Underlying Insurance.**

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

86413 (8/04)
AH1417

ENDORSEMENT No. 28

This endorsement, effective 12:01 AM:   July 1, 2009

Forms a part of policy no:          27471353

Issued to:   CAMERON INTERNATIONAL CORPORATION

By:   ILLINOIS NATIONAL INSURANCE CO.

### Cancellation Clause Amended Endorsement
### (Credit Rating Trigger)

**TO THE EXTENT ANY PROVISION OF THIS ENDORSEMENT CONFLICTS WITH ANY PROVISION OF THE POLICY OR ANY OF ITS OTHER ENDORSEMENTS, THE PROVISIONS OF THIS ENDORSEMENT WILL SUPERSEDE.**

In consideration of the premium charged, it is hereby understood and agreed the Cancellation Condition of this policy is amended by adding the following provision to the end thereof:

> Notwithstanding the foregoing, in the event that a financial strength rating is issued (1) below A- by A.M. Best Co., or (2) below BBB by Standard & Poor's Ratings Services, for the insurance company providing this insurance (hereinafter "Credit Rating Downgrade"), this policy may be canceled by the first Named Insured referenced in Item 1. of the Declarations by mailing written prior notice to us or by surrender of this policy to us or our authorized agent.   If this policy is canceled by the first Named Insured referenced in Item 1. of the Declarations within 30 days after such Credit Rating Downgrade, the insurance company providing this insurance shall retain the pro rata proportion of the premium herein.

All other terms, conditions, definitions, and exclusions of this policy remain unchanged.

_Vincent Catapano_

Authorized Representative
or Countersignature (Where Applicable)

100085 (9/08)
AH2463

ENDORSEMENT No. 29

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no:          27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Retained Limit Amendatory Endorsement

This policy is amended as follows:

Solely as respects coverages listed in the Schedule of Retained Limits, the following shall apply:

1. The **DECLARATIONS, ITEM 5. SELF INSURED RETENTION** is deleted in its entirety.

2. **Section IV. LIMITS OF INSURANCE**, Paragraphs **B., G., H.** and **M.** are deleted in their entireties and replaced by the following:

   B. The General Aggregate Limit is the most we will pay for all damages covered under this policy except:

      1. damages included within the **Products-Completed Operations Hazard;** and

      2. damages because of **Bodily Injury** or **Property Damage** to which this insurance applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto.**

   G. If the total applicable Retained Limit(s) listed in the Schedule of Retained Limits are reduced or exhausted by payment of **Loss** to which this policy applies, we will:

      1. in the event of reduction, pay in excess of the remaining underlying **Retained Limits;** or

      2. in the event of exhaustion of the underlying **Retained Limits,** continue in force as underlying insurance.

   H. **Defense Expenses** will be in addition to the applicable Limits of Insurance of this policy.  Provided, however, that if the amount of applicable **Retained Limit** over which this policy applies immediately in excess is specifically designated in the Schedule of Retained Limits as including **Defense Expenses,** then solely with respect to coverage afforded by this policy that is subject to such Retained Limit, such **Defense Expenses** will reduce the applicable Limits of Insurance of this policy.

   M. We will not make any payment under this policy unless and until the total applicable **Retained Limit(s)** have been exhausted by the payment of **Loss** to which this policy applies and any applicable **Other Insurance** have been exhausted.

   When the amount of **Loss** has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

3. **Section III. DEFENSE PROVISIONS**, Paragraph A. is deleted in its entirety and replaced by the following:

   ### III. DEFENSE PROVISIONS

   A. We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if

the **Suit** is groundless, false or fraudulent when the applicable limits listed in the Schedule of Retained Limits have been exhausted by payment of **Loss** to which this policy applies.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

4. **Section V. EXCLUSIONS**, Paragraphs I.1., I.2., I.3., and M. are deleted in their entireties.

5. **Section V. EXCLUSIONS**, Paragraph Q. is amended as follows:

The last two sentences of Paragraph Q. are deleted and the clause "However, Paragraph 1 of this exclusion will not apply if coverage for such Bodily Injury or Property Damage as is described in subparagraphs **1)** through **6)** below is provided by Scheduled Underlying Insurance:", is deleted in its entirety and replaced by the following:

However, this exclusion will not apply as described in subparagraphs **1)** through **6)** below.

provided, however, that the above amendments to **Section V. EXCLUSIONS**, Paragraph Q., do not apply if a separate endorsement attached to this policy deletes and replaces **Section V. EXCLUSIONS**, Paragraph Q.

6. **Section VII. DEFINITIONS** is amended to include the following additional definition:

**Defense Expenses** mean payment(s) allocated to the investigation, settlement or defense of a specific loss, claim or **Suit**, including but not limited to:

1. Attorney's fees and all other investigation, loss adjustment and litigation expenses;

2. Premiums on bonds to release attachments;

3. Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4. Costs taxed against the **Insured** in any claim or **Suit**;

5. Pre-judgment interest awarded against the **Insured**; and

6. Interest that accrues after entry of judgment.

7. **Section VII. DEFINITIONS**, Paragraph D., subparagraph 1. is deleted and replaced by the following:

1. damages covered by this policy that are in excess of the **Retained Limit**; and

8. **Section VII. DEFINITIONS**, Paragraph M. is amended to include the following additional subparagraph:

8. Any person or organization to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of your operations, including **Your Work** and **Your Product**, or premises owned by or rented to you. However, the insurance provided will not exceed the lesser of:

a. The coverages and Limits of Insurance of this policy, or

b. The coverage and Limits of Insurance required by said contract or agreement.

However, no such person or organization is an **Insured** by virtue of this provision 8. of this Paragraph M. of Section VII. if such person or organization is a partnership, joint venture or limited liability company of which the **Named Insured** is a partner or member, or is a partner or member of such partnership, joint venture or limited liability company.

9. **Section VII. DEFINITIONS**, the phrase "Notwithstanding any of the above:" and subparagraphs a. and b. thereunder appearing at the end of Paragraph M. are deleted in their entireties and replaced by the following:

Notwithstanding any of the above provisions 1. through 7. of this Paragraph M. of Section VII., no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations.

10. **Section VII. DEFINITIONS**, Paragraph P. is deleted in its entirety and replaced by the following:

P. **Loss** means those sums actually paid as judgments or settlements, provided, however, that if the applicable **Retained Limit** is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then **Loss** shall include such **Defense Expenses**.

11. **Section VII. DEFINITIONS**, Paragraph R. is deleted in its entirety and replaced by the following:

R. **Named Insured** means:

1. any person or organization designated in Item 1 of the Declarations;

2. as of the inception date of this policy, any organization in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy, provided that coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

3. after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%), provided that:

a. coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

b. you give us prompt notice after you acquire or form such organization.

Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period.**

12. **Section VII. DEFINITIONS**, Paragraph Z. is deleted in its entirety and replaced by the following:

Z. **Retained Limit** means the applicable limit(s) listed in the Schedule of Retained Limits.

The Retained Limit(s) listed in the Schedule of Retained Limits will apply whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance**. If there is **Scheduled Underlying Insurance** or **Other Insurance** applicable to a **Loss**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Retained Limit**. Furthermore:

a. If the applicable **Retained Limit** is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then amounts received through **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for the payment of **Defense Expenses** shall reduce the **Retained Limit.**

b. If the applicable **Retained Limit** is not specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then amounts received through **Scheduled**

**Underlying Insurance or Other Insurance** providing coverage to the **Insured** for the payment of **Defense Expenses** shall not reduce the **Retained Limit.**

13. **Section VI. CONDITIONS,** Paragraphs A. and C. are deleted in their entireties and replaced by the following:

A. **Appeals**

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the total applicable **Retained Limit(s)**, we may elect to do so. If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

C. **Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this policy. But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation within a **Retained Limit.**

14. If another endorsement attached to this policy states specifically that the provisions therein supercede any other terms, definitions, conditions, and exclusions of any language in this policy or its endorsements, then the provisions of such other endorsement apply irrespective of anything to the contrary in the provisions of this endorsement. In all other cases, the provisions of this endorsement apply notwithstanding anything to the contrary in the other terms, definitions, conditions, and exclusions terms and conditions of this policy.

All other terms, definitions, conditions and exclusions remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

### Schedule of Retained Limits

| Coverage(s) | Retained Limit(s) | |
|---|---|---|
| GENERAL LIABILITY | $3,000,000 | EACH OCCURRENCE |
| PRODUCTS COMPLETED OPERATIONS | $3,000,000 | EACH OCCURRENCE |

ENDORSEMENT No. 30

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no:           27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

### Commercial Umbrella Liability Policy with CrisisResponse®

Uninsured/Underinsured Motorists Coverage Endorsement

**THIS ENDORSEMENT APPLIES TO A COVERED AUTO REGISTERED OR PRINCIPALLY GARAGED IN THE FOLLOWING STATE(S) (where indicated by an "X")**

The Declarations ITEM 3. LIMITS OF INSURANCE is amended to include the following additional provisions:

Applicable Uninsured/Underinsured Each Occurrence Limit(s)

| X | VERMONT | $100,000 Bodily Injury and Property Damage Combined Single Limit |
|---|---------|------------------------------------------------------------------|

And, if Uninsured/Underinsured Motorist Coverage has been selected under this policy:

Applicable Uninsured/Underinsured Each Occurrence Limit(s)

| FLORIDA | Bodily Injury |
|---------|---------------|
| WEST VIRGINIA | Bodily Injury and Property Damage Combined Single Limit |

And, if Uninsured/Underinsured Motorist Coverage has not been rejected under this policy:

Applicable Uninsured/Underinsured Each Occurrence Limit(s)

| X | LOUISIANA | $25,000,000 Bodily Injury Limit |
|---|-----------|---------------------------------|
| X | NEW HAMPSHIRE | $25,000,000 Bodily Injury Limit |

Uninsured/Underinsured Motorists Retained Limit   $3,000,000

**INSURING AGREEMENT**

**Section I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY is amended to include the following additional provisions:**

1.  We will pay all sums in excess of the **Uninsured/Underinsured Motorists Retained Limit** the Insured is legally entitled to recover as compensatory damages from the owner or operator of:

    a.  An Uninsured Motor Vehicle as defined in Definition 4.a., 4.b. and 4.c. of this endorsement because of **Bodily Injury** sustained by the Insured, or Property Damage and caused by an **Occurrence,** and

    b.  An Uninsured Motor Vehicle as defined in Definition 4.d. of this endorsement because of **Bodily Injury** sustained by any **Insured,** or Property Damage.

The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the **Uninsured Motor Vehicle.**

2.  We will pay under this coverage only if a., b., or c. below applies:

   a.  The limits of any applicable liability bonds or policies of the **Uninsured Motor Vehicle** have been exhausted by judgments or payments **(Not applicable where the Uninsured/Underinsured Motorist laws of Louisiana apply);**

   b.  The submission of claims exceeds the limits of liability under any applicable **Bodily Injury** bonds or policies **(Applicable only where the Uninsured/Underinsured Motorists laws of Louisiana apply);** or

   c.  A tentative settlement has been made between an **Insured** and the insurer of the vehicle described in paragraph b. of the definition of **Uninsured Motor Vehicle** of this endorsement and we:

      1)  Have been given prompt written notice of such settlement; and

      2)  Advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days **(30 days where the Uninsured/Underinsured Motorist laws of Florida apply; 60 days where the Uninsured/Underinsured Motorist laws of West Virginia apply; as soon as practicable where the Uninsured/Underinsured Motorist laws of Louisiana apply)** after receipt of notification.

3.  Any judgment for damages arising out of a **Suit** brought without our written consent is not binding upon us **(Not applicable where the Uninsured/Underinsured Motorist laws of Louisiana apply).**

DEFENSE

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section III. DEFENSE PROVISIONS** is hereby deleted in its entirety and replaced by the following:

1.  We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury** or **Property Damage** covered by this policy, even if the **Suit** is groundless, false or fraudulent when the **Uninsured/Underinsured Motorists Retained Limit** has been exhausted by payment of **Loss** to which this policy applies.

   If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

2.  We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury** or **Property Damage** to which this insurance does not apply.

3.  When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

   a.  Investigate, negotiate and settle the **Suit** as we deem expedient; and

   b.  Pay the following supplementary payments:

      1)  premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply or furnish any such bond;

      2)  premiums on appeal bonds required by law to appeal a judgment in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

      3)  all court costs taxed against the **Insured** in the **Suit;**

    4) pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay. If we make a settlement offer, we will not pay any pre-judgment interest accruing after we make such offer;

    5) post-judgment interest that accrues after entry of judgment on that part of the judgement within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

    6) the **Insured's** expenses incurred at our request or with our consent.

4. Except as provided in Paragraph 1. above, we will have no duty to defend any **Suit** against the **Insured**. We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

5. We will not defend any **Suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph 3. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of **Loss** and we will have the right to withdraw from the further defense of such **Suit** by tendering control of said defense to the **Insured**.

## LIMITS OF INSURANCE

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section IV. LIMITS OF INSURANCE** is amended to include the following additional provisions:

1. Regardless of the number of covered **Autos, Insureds**, premiums paid, claims made or vehicles involved in the **Occurrence**, the most we will pay for all damages resulting from any one **Occurrence** are the Limits of Insurance shown in Item 3. of the Declarations (as amended in this endorsement).

2. With respect to coverage provided under Paragraph 4.b. of the definition of **Uninsured Motor Vehicle**, the Limit of Insurance shall be reduced by all sums paid for **Bodily Injury** or **Property Damage** by or on behalf of anyone who is legally responsible.

3. Uninsured/Underinsured Motorists Retained Limit

    This policy applies only in excess of an **Uninsured/Underinsured Motorists Retained Limit** and then up to an amount not exceeding the Uninsured/Underinsured Motorists Each Occurrence Limit as stated in the Declarations (as amended in this endorsement), subject to the provisions stated in 1. and 2. above.

    The **Uninsured/Underinsured Motorists Retained Limit** shall not be reduced or exhausted by **Defense Expenses**.

    Where the Uninsured/Underinsured laws of the state of West Virginia apply, this **Uninsured/Underinsured Motorists Retained Limit** applies excess of the statutory minimum amount of Uninsured Motorists Coverage provided by an underlying insurer.

## EXCLUSIONS

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section V. EXCLUSIONS**, Exclusion O. is deleted in its entirety and replaced by the following:

O. "No-Fault" Laws

    This insurance does not apply to any obligation of the **Insured** under any "No Fault" law.

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section V. EXCLUSIONS** is amended to include the following additional exclusions:

1. This insurance does not apply to any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle which is an **Uninsured Motor Vehicle.**

2. This insurance does not apply to the direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. This insurance does not apply to any **Insured** using a vehicle without the expressed or implied permission of the owner or lessee.

4. This insurance does not apply to **Bodily Injury** or **Property Damage** sustained by:

   a. An individual **Named Insured** while **Occupying** or when struck by any vehicle owned by that **Named Insured** that is not a covered **Auto** for Uninsured Motorists Coverage under this endorsement;

   b. Any **Family Member** while **Occupying** or when struck by any vehicle owned by that **Family Member** that is not a covered **Auto** for Uninsured Motorists Coverage under this endorsement; or

   c. Any **Family Member** while **Occupying** or when struck by any vehicle owned by the **Named Insured** that is insured for Uninsured Motorists Coverage under any other policy.

5. This insurance does not apply to punitive or exemplary damages.

6. This insurance does not apply to **Property Damage** to an **Auto** or to property contained in an **Auto** owned by the **Named Insured** which is not a covered **Auto.**

7. This insurance does not apply to **Property Damage** for which the **Insured** has been or is entitled to be compensated by other property or physical damage insurance.

**CONDITIONS**

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Condition L. **Other Insurance** under **Section VI. CONDITIONS** is deleted in its entirety and replaced by the following:

L. **Other Insurance**

   Any insurance we provide under this endorsement will be excess to the total limits of any **Other Insurance** paid or available for payment to an **Insured,** except other applicable Uninsured/Underinsured Motorist Coverage written to be excess of this policy.

   If there is other applicable Uninsured/Underinsured Motorist Coverage under any other policy issued to the **Named Insured** by us, the maximum recovery for damages may equal but not exceed the highest applicable limit of insurance under any one policy.

   If there is other applicable excess Uninsured/Underinsured Motorist Coverage available under more than one policy, then the following priorities of coverage apply:

   1. A policy covering as excess, umbrella, or similar insurance, a motor vehicle **Occupied** by the injured person or a policy covering, as excess, umbrella, or similar insurance, a pedestrian as a **Named Insured.**

   2. A policy covering as excess, umbrella, or similar insurance, a motor vehicle **Occupied** by the injured person or a policy covering, as excess, umbrella, or similar insurance, a pedestrian as an **Insured** other than as a **Named Insured.**

3.  A policy not covering a motor vehicle **Occupied** by the injured person but covering, as excess, umbrella, or similar insurance, the injured person as a **Named Insured**.

4.  A policy not covering a motor vehicle **Occupied** by the injured person but covering, as excess, umbrella, or similar insurance, the injured person as an **Insured** other than as a **Named Insured**.

We will pay only our share of the **Loss** that must be paid under insurance providing umbrella or excess coverage.  Our share is the proportion that our limit of liability bears to the total of all applicable limits of all the policies applicable on the same level of priority.

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Condition **G. Duties In the Event of an Occurrence, Claim Or Suit** under **Section VI. CONDITIONS** is amended to include the following additional provisions:

G.  Specifically as respects to any **Occurrence** which may result in a Uninsured/Underinsured Motorist claim for coverage under this policy:

a.  You must promptly notify the police if a hit-and-run driver is involved, and

b.  You must promptly send us copies of the legal papers if a **Suit** is brought.

c.  A person seeking Uninsured/Underinsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the **Insured** and the insurer of the vehicle described in Paragraph 4.b. of the definition of **Uninsured Motor Vehicle**  and allow us 90 days (30 days where the **Uninsured/ Underinsured Motorist laws of Florida apply; 60 days where the Uninsured/Underinsured Motorist laws of West Virginia apply; as soon as practicable where the Uninsured/Underinsured Motorist laws of Louisiana apply)** to advance payment to that **Insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in Paragraph 4.b. of the definition of **Uninsured Motor Vehicle.**

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Condition **P. Transfer of Your Rights and Duties** under **Section VI. CONDITIONS** is amended to include the following additional provisions:

P.  If we make any payment and the **Insured** recovers from another party, the **Insured** shall hold the proceeds in trust for us and pay us back the amount we have paid.

However, where the Uninsured/Underinsured laws of the state of Louisiana apply, if we make any payment under this policy and the person to or for whom payment is made has a right to recover damages from another, we shall be subrogated to that right.  However, our right to recover is subordinate to the right of the **Insured** to be fully compensated.

Our rights do not apply under this provision with respect to Uninsured/Underinsured Motorists Coverage if we:

a.  Have been given prompt written notice of a tentative settlement between an **Insured** and the insurer of a vehicle described in Paragraph 4.b. of the definition of **Uninsured Motor Vehicle;** and

b.  Fail to advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days **(30 days where the Uninsured/Underinsured Motorist laws of Florida apply; 60 days where the Uninsured/Underinsured Motorist laws of West Virginia apply; as soon as practicable where the Uninsured/Underinsured Motorist laws of Louisiana apply)** after receipt of notification.

If we advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days **(30 days where the Uninsured/Underinsured Motorist laws of Florida apply; 60 days where the Uninsured/Underinsured Motorist laws of West Virginia apply; as soon as practicable where the Uninsured/Underinsured Motorist laws of Louisiana apply)** after receipt of notification:

a. That payment will be separate from any amount the **Insured** is entitled to recover under the provisions of Uninsured/Underinsured Motorists Coverage; and

b. We also have a right to recover the advanced payment.

For the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section VI. CONDITIONS** is amended to include the following additional conditions:

**Arbitration (Not applicable where the Uninsured/Underinsured laws of West Virginia or Louisiana apply)**

1. If we and an **Insured** disagree whether the **Insured** is legally entitled to recover damages from the owner or driver of an **Uninsured Motor Vehicle** or do not agree as to the amount of damages that are recoverable by that **Insured**, then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to the arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

2. Unless both parties agree otherwise, arbitration will take place in the county in which the **Insured** lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**Conformance to "Uninsured Motorist" and/or "Underinsured Motorist" Law**

To the extent any term of this policy conflicts with any applicable Uninsured/Underinsured law, the term shall be deemed amended so as to conform to minimum requirements of that law. However, under no such circumstance shall any term be amended to be broader than the minimum requirements of that law.

**DEFINITIONS**

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Definition M. **Insured** under **Section VII. DEFINITIONS** is deleted in its entirety and replaced by the following:

M. **Insured** means:

If the **Named Insured** is designated in the Declarations as:

a. An individual, then only the following are **Insureds**:

1) The **Named Insured** and any **Family Members**.

2) Anyone else occupying a covered **Auto** or a temporary substitute for a covered **Auto**. The covered **Auto** must be out of service because of its breakdown, repair, servicing, **Loss** or destruction.

3) Anyone for damages he or she is entitled to recover because of **Bodily Injury** sustained by another **Insured**.

b. A partnership, limited liability company, corporation or any other form of organization, then the following are **Insureds**:

1) Anyone occupying a covered **Auto** or a temporary substitute for a covered **Auto**. The covered **Auto** must be out of service because of its breakdown, repair, servicing, **Loss** or destruction;

2) Anyone for damages he or she is entitled to recover because of **Bodily Injury** sustained by another **Insured**.

For the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Definition Y. **Property Damage** under **Section VII. DEFINITIONS** is deleted in its entirety and replaced by the following:

Y. **Property Damage** means:

Physical injury or destruction of:

a. A covered **Auto**; or

b. Property contained in the covered **Auto**.

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section VII. DEFINITIONS** is amended to include the following additional definitions:

1. **Defense Expenses** means a payment allocated to a specific **Loss**, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

   a. Attorneys' fees and all other investigation, **Loss** adjustment and litigation expenses;

   b. Premiums on bonds to release attachments;

   c. Premiums on appeal bonds required by law to appeal any claim or **Suit**;

   d. Costs taxed against the **Insured** in any claim or **Suit**;

   e. Pre-judgment interest awarded against the **Insured**; and

   f. Interest that accrues after entry of judgment.

2. **Family Member** means a person related to an individual **Named Insured** by blood, marriage **(including civil union where the Uninsured/Underinsured Motorists laws of New Hampshire and Vermont apply)** or adoption who is a resident of such **Named Insured's** household, including a ward or foster child.

3. **Occupying** and/or **Occupied** means in, upon, getting in, on, out or off.

4. **Uninsured Motor Vehicle** means a land motor vehicle or trailer:

   a. For which no liability bond or policy at the time of an **Occurrence** provides at least the amounts required by the applicable law where a covered **Auto** is principally garaged;

   b. Which is an **Underinsured Motor Vehicle**. An **Underinsured Motor Vehicle** means a land motor vehicle or trailer for which the sum of all liability bonds or policies applicable at the time of an **Occurrence** provides at least the amounts required by the applicable law where a covered **Auto** is principally garaged but their limits are less than the Limit of Insurance of this coverage **(Not Applicable where the Uninsured/Underinsured laws of West Virginia apply)**;

   c. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   d. That is a hit-and-run vehicle and neither the operator nor owner can be identified. The vehicle must either:

      1) Hit an **Insured**, a covered **Auto** or a vehicle an **Insured** is **Occupying**; or

      2) Cause **Bodily Injury** to an **Insured** without hitting an **Insured**, a covered **Auto** or a vehicle an **Insured** is **Occupying**.

The facts of the **Occurrence** or intentional act must be proved by independent corroborative evidence, other than the testimony of the **Insured** making a claim under this or similar coverage, unless such testimony is supported by additional evidence **(Not applicable where the Uninsured/Underinsured Motorists laws of Vermont apply).**

The facts from the **Occurrence** or intentional act must be supported by sworn statements from the **Insured** reporting to the police and proof of claim by the preponderance of the evidence **(Applicable only where the Uninsured/Underinsured Motorists laws of Vermont apply).**

However, **Uninsured Motor Vehicle** does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law. However, where the Uninsured/Underinsured laws of the state of Florida apply, Uninsured Motor Vehicle includes any vehicle owned or operated by a self-insurer under any applicable motor vehicle law;

b. Designed for use mainly off public roads while not on public roads;

c. Owned by or furnished or available for the **Named Insured's** regular use or that of any **Family Member**, if the **Named Insured** is an individual; or

d. Owned by any governmental unit or agency, unless the owner or operator of the **Uninsured Motor Vehicle** has:

   1) An immunity under applicable tort liability law; or

   2) A diplomatic immunity.

5. **Underinsured Motor Vehicle** means a land motor vehicle or trailer to which a liability bond or policy applies at the time of the **Occurrence** but the amount paid for **Bodily Injury** or **Property Damage** to an **Insured** under that bond or policy is not enough to pay the full amount the **Insured** is legally entitled to recover as damages.

However **Underinsured Motor Vehicle** does not include any vehicle or trailer:

a. Owned or operated by a self-insurer under any applicable motor vehicle law;

b. Owned by a governmental unit or agency; or

c. Designed for use mainly off public roads while not on public roads.

**(Definition 5, above only applicable where the Uninsured/Underinsured Motorist laws of West Virginia apply)**

6. **Uninsured/Underinsured Motorists Retained Limit**, as specified in the Declarations above, means either:

a. the **Auto** liability limit as provided by a policy listed in Scheduled Underlying Insurance; or

b. the **Auto** liability Retained Limit as listed in the Schedule of Retained Limits.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

AH2509         Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000

ENDORSEMENT NO. 31

This endorsement, effective 12:01 AM:   July 1, 2009

Forms a part of policy no.:        27471353

Issued to:   CAMERON INTERNATIONAL CORPORATION

By:   ILLINOIS NATIONAL INSURANCE CO.

Commercial Umbrella Liability Policy with CrisisResponseSM

Additional Named Insured(s)

This policy is amended as follows:

DECLARATIONS, Item 1 is amended by adding the following as Named Insured(s) under this policy:

Cameron Algerie *(1 share owned by CPEGI)*
Cameron Al Rushaid Limited Company
Cameron Argentina S.A.I.C. *(122,700 shares owned by CPEGI)*
Cameron Gabon, S.A. *(1 share owned by Chairman)*
Cameron/Curtiss-Wright EMD LLC
Cameron Offshore Systems Nigeria Limited
Cameron Services Middle East LLC *(Joint Venture - 51% owned by outsiders)*
Cameron Venezolana, S.A. - *(51% owned by CPEGI)*
Cameron Angola - Prestaçao de Serviços, Limitada - *(1 share owned by CPEGI)*
Compression Services Company
Cooper Cameron Foreign Sales Company Ltd.
Cameron International Holding Corp. (CESI has partial interest)
Cameron Holding (Cayman) Limited
Cameron Products Ltd.
Cameron Russia Ltd.
Cameron Services Russia Ltd.
Cameron Australasia Pty. Ltd.
Cooper Cameron Valves Australia Pty. Ltd.
Cameron Campex Limited
ShanDong Cooper Cameron Petroleum Equipment PTE LTD
Cameron do Brasil Ltda. *(1 share owned by Cameron (Lux) SARL)*
On/Off Manufatura e Comércio de Vávulas Ltda.
Cameron (Trinidad) Limited
Cameron International Malaysia Sdn Bhd
Cameron Holding (Luxembourg) SARL
Cameron (Luxembourg) SARL
Cameron Technologies UK Limited
Petreco International Limited
KCC Group Limited
Petreco International (Middle East) Limited

ENDORSEMENT NO. 31 (Continued)

KCC Process Equipment Limited
RJB Engineering (UK) Limited
KCC Resources (Jersey) Limited
Cameron GmbH
Cameron Italy S.R.L.
Cameron Ireland Limited
Cameron Systems (Ireland) Limited
Cameron International Malaysia Systems Sdn Bhd
Cameron Korea Limited
Cameron Valves - Trading and Industrial Services LDA
Cameron Valves & Measurement West Africa Limited
Cameron Netherlands B.V. (11-2004)
Cameron Euro Automation Center B.V.
Caméron România S.A.
Cameron Holding (Dutch) B.V.
Cameron Canada Corporation
Cooper Cameron Holding (U.K.) Limited
Cameron France, S.A.S.
Cameron Limited
Cooper Cameron (U.K.) Investments Limited
Cameron Manufacturing (India) Private Limited
Flow Control-Tati Production Sdn. Bhd.
Cameron Offshore Engineering Limited
Cooper Cameron Pensions Limited
Cameron Integrated Services Limited
D.E.S. Operations Limited
DES Operations, Inc.
International Valves Limited
Jiskoot Holdings Limited
Jiskoot Limited
Cameron International Holding B.V.
Cameron Energy Services B.V.
Cameron B.V.
Cooper Cameron Holding (Norway) AS
Cameron Norge AS
SBS Oilfield Equipment GmbH
SBS Immobilienentwicklung und -verwertungs GmbH *(0.1% owned by Cameron Limited)*
Cooper Cameron Libya Limited
Cameron (Singapore) Pte. Ltd.
Cameron Systems Shanghai Co., Ltd.
Riyan Cameron (B) Sendirian Berhad
PT Cameron Systems - *(Joint Venture - 8% owned by outsider)*
Cameron Equipment (Shanghai) Co., Ltd.
Cameron (Holding) Corp.
Cameron Technologies, Inc.
Cameron Flow Systems Ltd.
NuFlo Finance and Royalty Company
Cameron Technologies US, Inc.
Sequel Holding, Inc.
Petreco International Inc. *(partially owned by Sequel Holding, Inc.)*
Petreco-KCC Holding, Inc.

ENDORSEMENT NO. 31 (Continued)

Petreco-KCC Limited
Petreco Canada Inc.
Cooper Cameron Corporation Nigeria Limited
Cameron Systems Srl
Cameron Systems de Venezuela, S.A.
Cameron Energy Services International, Inc.
Canada Tiefbohrgeräte und Maschinenfabrik GmbH *(1 share owned by CPEGI)*
Cameron de Mexico S.A. de C.V. *(1 share owned by CPEGI)*
Cameron Petroleum Equipment Group, Inc. *(CPEGI)*
Cameron Wellhead Services, Inc.
Cameron (Malaysia) Sdn Bhd
Cooper Cameron Valves Singapore Pte. Ltd.
Cooper Cameron Corporation Sdn Bhd
PCC Bumi Flow Technologies Sdn. Bhd.
Angola Oilfield Equipment Limited (JV-50% owned by Mahina Servico)
Cameron Middle East Ltd.
Cam Macae Brasil Participacoes Ltda.
Cameron Beijing Commercial Co, Ltd.

All other terms, definitions, conditions, and exclusions of this policy remain
unchanged.

**Authorized Representative
or countersignature (where required by law)**

ENDORSEMENT NO.32

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no.:          27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

Commercial Umbrella Liability Policy With CrisisResponse®

Personal Liability Coverage Endorsement

This policy is amended as follows:

Section VII. DEFINITIONS, Paragraph M. is amended to include the following additional provision:

M.  Insured means:

any Director  or  Officer of  the  Insured with  respect  to  their non-business  activities,  but only  if
elected as a Director or Officer  of the Insured(s) and maintaining a  personal umbrella liability policy
with minimum  policy limits  of $5,000,000.   Coverage under  this policy for such  Insured(s)  will
follow the terms, definitions, conditions  and exclusions of these  personal umbrella liability policies,
subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions
and exclusions of this Policy.  Provided,  however, that coverage provided by this Policy  will not be
broader than the coverage provided by such personal umbrella liability policies.

It is understood that to the extent any provision  in this policy limits coverage to business activities,
the provisions  of this  endorsement shall  supercede  as respects  the aforementioned  individual(s),
subject to the limitations set forth herein.

All other terms, definitions, conditions, and exclusions of this policy remain
unchanged.

Authorized Representative
or countersignature (where required by law)

ENDORSEMENT NO.33

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no.:        27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

Commercial Umbrella Liability Policy with CrisisResponse®

Industrial Aid Aircraft Limitation Endorsement

This policy is amended as follows:

ITEM 3. LIMITS OF INSURANCE of the DECLARATIONS is amended to include the following additional Self-Insured Retention:

> $25,000,000 Non-Owned/$300,000,000 Owned Industrial Aid Aircraft Self-Insured Retention/Each Occurrence.  (As respects claims and Suits seeking damages for Bodily Injury or Property Damage arising out of the ownership, maintenance use, or entrustment to others of any Industrial Aid Aircraft owned or operated by or rented or loaned to any Insured. Use includes operation and loading and unloading).

For the purpose of this endorsement only, Section III. DEFENSE PROVISIONS, Paragraphs A. 1. and A. 2., and D. are deleted in their entirety, and paragraph A. is replaced by the following:

> We will have no  duty to defend any Suit against the Insured.   We will, however, have the right, but not the duty, to participate in the defense of any Suit  and the investigation of any claim to which this  policy may apply.  If we  exercise this right, we  will do so  at our own expense.

Section IV. LIMITS OF INSURANCE, is amended to include the following additional provision:

> The Industrial Aid Aircraft Self-Insured Retention applies whether or not there is any available Scheduled Underlying Insurance or Other Insurance.  If there is Scheduled Underlying Insurance or Other Insurance applicable to the Loss, amounts received through such Scheduled Underlying Insurance or Other Insurance for payment of the Loss may be applied to reduce or exhaust the Industrial Aid Aircraft Self-Insured Retention. However, in no event will amounts received through such Scheduled Underlying Insurance or Other Insurance for the payment of Defense Expenses reduce the Industrial Aid Aircraft Self-Insured Retention.

> The Industrial Aid Aircraft Self-Insured Retention will not be reduced by Defense Expenses.

ENDORSEMENT NO. 33 (Continued)

For the purpose of this endorsement only and solely with respect to any and all references to aircraft, **Section V. EXCLUSIONS**, Paragraph A. is deleted in its entirety and replaced by the following:

A.     **Aircraft**

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use, or entrustment to others of any aircraft owned or operated by or rented or loaned to any **Insured**. Use includes operation and loading and unloading.

This exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the **Occurrence** which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any aircraft that is owned or operated by or rented or loaned to any **Insured**.

This exclusion does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance use, or entrustment to others of any **Industrial Aid Aircraft** owned or operated by or rented or loaned to any **Insured**. Use includes operation and loading and unloading.

It is understood that any and all references to watercraft in **Section V. EXCLUSIONS**, Paragraph A. remains unchanged, unless amended by separate endorsement.

For the purpose of this endorsement only, **Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Defense Expenses** means any payment allocated to a specific **Loss**, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

1.   attorney's fees and all other investigation, loss adjustment and litigation expenses,

2.   premiums on bonds to release attachments,

3.   premiums on appeal bonds required by law to appeal any claim or **Suit**,

4.   costs taxed against the **Insured** in any claim or **Suit**,

5.   pre-judgment interest awarded against the **Insured**, and

6.   interest that accrues after entry of judgment.

**Industrial Aid Aircraft** means aircraft with a maximum passenger capacity of twenty (20) persons (including crew) used solely for business travel of employees and their non fee paying passenger guests.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or countersignature (where required by law)

ENDORSEMENT NO.34

This endorsement, effective 12:01 AM:   July 1, 2009

Forms a part of policy no.:          27471353

Issued to:   CAMERON INTERNATIONAL CORPORATION

By:   ILLINOIS NATIONAL INSURANCE CO.

Commercial Umbrella Liability Policy With CrisisResponse®

DAMAGE TO YOUR PRODUCT AMENDATORY ENDORSEMENT

This policy is amended as follows:

Section V. EXCLUSIONS, Paragraph F., " Damage to Your Product" of this policy is deleted in its entirety and replaced with the following:

F.     This insurance does not apply to Property Damage to that portion of Your Product out of which the Property Damage arises.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

Authorized Representative
or countersignature (where required by law)

ENDORSEMENT NO.35

This endorsement, effective 12:01 AM:  July 1, 2009

Forms a part of policy no.:        27471353

Issued to:  CAMERON INTERNATIONAL CORPORATION

By:  ILLINOIS NATIONAL INSURANCE CO.

**Foreign Liability Limitation Endorsement**
**(With Total Terrorism Exclusion Applicable To Specified Countries)**

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

Foreign Liability

This insurance does not apply to **Bodily Injury, Property Damage, or Personal Injury and Advertising Injury** that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such **Bodily Injury, Property Damage, or Personal Injury and Advertising Injury** is provided by a policy listed in the **Scheduled Underlying Insurance:**

1.  This exclusion shall not apply, and

2.  Coverage under this policy for such **Bodily Injury, Property Damage, or Personal Injury and Advertising Injury** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance.**

Notwithstanding 1. and 2. above, this insurance does not apply to **Loss**, injury, damage, claim or **Suit**, arising directly or indirectly as a result of or in connection with **Terrorism** that occurs in the following countries:

Afghanistan, Bahrain, Bangladesh, Bosnia/Herzegovina, Burundi, Central African Republic, Colombia, Comoros, Congo (DRC), Cote D'Ivoire, Georgia, Haiti, Iraq, Israel, Jordan, Kenya, Kyrgyzstan, Lebanon, Liberia, Macedonia, Morocco, Nepal, Niger, Palestinian Authority, Peru, Philippines, Qatar, Serbia, Solomon Islands, Somalia, Sri Lanka, Tajikistan, Thailand, Turkey, Uganda, Uzbekistan, Yemen, or Zimbabwe.

It is understood that to the extent any coverage may otherwise be provided for these above listed countries under this policy or any of its endorsements, the provisions of this exclusion

ENDORSEMENT NO. 35 (Continued)

will supercede.

**Section VII. DEFINITIONS** is a amended to include the following additional definition:

**Terrorism** means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

1. A government,

2. The civilian population of a country, state or community, or

3. To disrupt the economy of a country, state or community.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

**Authorized Representative**
**or countersignature (where required by law)**