**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: **Oil Spill by the Oil Rig** | * | |
| **"Deepwater Horizon"** | * | **MDL No. 2179** |
| **in the Gulf of Mexico,** | * | |
| **on April 20, 2010,** | * | **Section: J** |
| | * | |
| **This Document Relates to:** | * | **Judge Barbier** |
| **All Cases and No. 12-970** | * | |
| | * | **Magistrate Judge Shushan** |
| | * | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**MEMORANDUM IN OPPOSITION TO
CLASS COUNSEL'S MOTION TO STRIKE UNSUBSTANTIATED EXHIBITS
AND TO CONTEST MISSTATEMENTS CONCERNING SPECIFIC CLAIMS**

On December 2, 2013, the United States Court of Appeals for the Fifth Circuit ordered that "the issue of causation is once again remanded for expeditious consideration,"[1] and it explained that "[t]he panel opinion and concurrence . . . invited the parties to present arguments with respect to causation, Rule 23, the Rules Enabling Act, and Article III standing on remand.[2] Class Counsel's belated Motion to Strike seeks to thwart that process by preventing the Court from reconsidering evidence central to evaluation of whether the Settlement Program is paying claims that lack a causal nexus to the Oil Spill.

The Motion to Strike has no merit for three reasons. First, the Rumsey Declaration (and attached Appendices) fall squarely within and are permitted by Federal Rule of Evidence 1006. Ms. Rumsey, one of the BP attorneys who is responsible for handling appeals of Settlement Program awards on a day-to-day basis, personally supervised the compilation of summaries of the claims presented in the Appendices, and reviewed documents. Rule 1006 authorizes the

---

[1]     *In re Deepwater Horizon*, No. 13-30315, slip op. at 3 (5th Cir. Dec. 2, 2013).

[2]     *Id.*

admission of just such summaries of voluminous files.  Tellingly, the Motion to Strike ignores Rule 1006, except for a single misleading citation to one case in a footnote.

Second, the Rumsey Declaration, Appendix A, presents 64 examples of claims that appear to lack any causal nexus to the Oil Spill.  The Motion to Strike has nothing to say about 47 of the 64 examples (74 percent).  Even if Class Counsel were correct in faulting the other 17 examples (which it is not), that would not be reason to strike the 47 undisputed examples.  And it would not be reason to strike the hundreds of examples in Appendix B, which lack any identifiable connection to the Spill.  If Class Counsel contends that the Spill caused a soybean farmer located hundreds of miles from the Gulf to suffer actual economic loss, let Class Counsel explain that causal connection – and let the Court consider the credibility of that explanation and whether it satisfies the Supreme Court's requirement that causation "is not 'an ingenious academic exercise in the conceivable.'"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 566 (1992) (citation omitted).  It is Class Counsel's burden to explain how these examples square with a causal nexus requirement.  Moving to strike is only a maneuver to evade that burden of explanation.

Third, there is nothing misleading about the Rumsey Declaration, nor was the Court misled by it.[3]  The Claims Administrator has already admitted that the Settlement Program has awarded claims "for losses that a reasonable observer might conclude ***were not in any way related to*** the Oil Spill."[4]  The Rumsey Declaration simply provides specific examples.  That, as for certain of the examples, the Appeals Panel ruled against BP does not render the examples misleading.  The Panel ruled against BP, not because it found a causal nexus, but because it was

---

[3]   After all, the Court denied the motion in support of which BP submitted the Rumsey Declaration.

[4]   Brief of Appellees Deepwater Horizon Court Supervised Settlement Program at 16, *In re Deepwater Horizon*, Nos. 13-30315 & 13-30329 (5th Cir. May 24, 2013) (emphasis added).

proceeding pursuant to a prior Court order deeming evidence of causal nexus irrelevant.  The

relevance of a causal nexus is precisely the issue the Fifth Circuit has put before this Court on

remand.[5]

The Rumsey Declaration is both admissible and proper.  If Class Counsel disagrees with

what facts are relevant and/or important, it may argue its position and advocate why it believes

that the Rumsey Declaration should not be given great weight.  But what Class Counsel may not

do is block BP from using methods approved by the Federal Rules of Evidence to provide this

Court with factual information important to the task on remand ordered by the Fifth Circuit.

Accordingly, the Motion to Strike should be denied.

## I.    THE RUMSEY DECLARATION IS PROPERLY ADMISSIBLE IN EVIDENCE

### A.    The Rumsey Declaration Is Admissible Under Federal Rule of Evidence1006.

As a preliminary matter, the motion to strike is untimely.  BP filed the Rumsey

Declaration on November 7, 2013 in support of BP's Motion to Amend Scheduling Order and

Injunction [Rec. Doc. 11848].  Class Counsel filed an opposition and sur-reply without objecting

to the Declaration, and the Court then denied the motion.  If Class Counsel had a hearsay

objection, they should have made it a month ago.

The objection is without merit in any event, because Rule of Evidence 1006 authorizes

precisely the kind of summary of voluminous evidence contained in the Rumsey Declaration.

---

[5]      *In re Deepwater Horizon*, No. 13-30315, slip op. at 3 (5th Cir. Dec. 2, 2013) ("IT IS
ORDERED that the issue of causation is again remanded for expeditious consideration and
resolution in crafting '[a] stay tailored so that those who experienced actual injury traceable to
loss from the Deepwater Horizon accident continue to receive recovery but those who did not do
not receive their payments until this case is fully heard and decided through the judicial process,'
including by any other panel of this court that resolves these issues.").

The Declaration summarizes information contained in hundreds of voluminous claims files, which are evidence in the claims proceedings being conducted under the Court's supervision. Thus, it is admissible under Federal Rule of Evidence 1006, which states:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006. The Rumsey Declaration meets the criteria of Rule 1006. The Appendices are summaries of documentation and data from hundreds of voluminous claims files that could not be conveniently examined in court. In addition, the underlying claims files are available to both Class Counsel and the Court through the CSSP Portal, and Ms. Rumsey offered to produce the full claims files for the claims identified to the Court (and counsel) upon request.[6]

The Appendices attached to the Rumsey Declaration were admissible apart from the Declaration itself, because "Rule 1006 is 'a special exception to the hearsay rule,' and does not require an authenticating witness." *Right of Way Maintenance Co. v. Gyro-Trac Inc.*, 303 Fed. App'x 229, 230 (5th Cir. 2008) (quoting Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 1006.05[4] (Joseph M. McLaughlin ed., 2d ed. 2007)).

Class Counsel does not address Rule 1006 head on, and it ignores altogether the fact that the Fifth Circuit has held repeatedly that similar summaries of voluminous materials are admissible.[7] So has this Court.[8] Class Counsel's only mention of the Rule is in a footnote,

---

[6]    *See* Rumsey Decl. ¶ 3.

[7]    *See, e.g.*, *Irons v. Aircraft Service Intern., Inc.*, 392 Fed. App'x 305, 314-15 (5th Cir. 2010) (summaries of time records admissible where time records were also admitted into evidence); *Right of Way Maintenance Co. v. Gyro-Trac Inc.*, 303 Fed. App'x 229, 230-31 (5th Cir. 2008) (summary binder of information admissible where it accurately reflected the underlying records); *S.E.C. v. Seghers*, 298 Fed. App'x 319, 325-26 (5th Cir. 2008) (summary chart admissible where it was based on competent evidence already before the jury that was

Footnote continued on next page

4

which cites *United States v. Nguyen*, 504 F.3d 561 (5th Cir. 2007), for the proposition that "a testimonial summary of the content of records is not an appropriate summary under Rule of Evidence 1006 or Fifth Circuit case law."[9]  But that is not what the Fifth Circuit said in *Nguyen*. That case was a criminal case, and the Fifth Circuit faulted the testimony of the government's summary witness, not because of the summary chart describing her investigation, but because her testimony "inappropriately made conclusions as to [the defendant's] state of mind and improperly introduced evidence from out-of-court witnesses [i.e., what witnesses said to FBI agents]."  504 F.3d at 572.  The summary testimony in *Nguyen* is nothing like the Rumsey Declaration.

Accordingly, the Rumsey Declaration is admissible as a summary of materials under Rule 1006 and is not barred by the hearsay rule.

**B.      The Rumsey Declaration Is Not Barred by the Hearsay Rule.**

Even apart from Rule 1006, the Rumsey Declaration is admissible under the residual exception to the hearsay rule.[10]  Federal Rule of Evidence 807(a) provides that a hearsay statement is not excluded by the rule against hearsay if:

---

Footnote continued from previous page

available to the other side for comparison); *United States v. Stephens*, 779 F.2d 232, 238 (5th Cir. 1985) (no abuse of discretion in admitting summary charts where all of the records on which the charts were based were in evidence); *United States v. Jennings*, 724 F.2d 436, 441-42 (5th Cir. 1984) (affirming district court's admission of charts summarizing almost two hundred pages of material); *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir. 1982) (admission of summaries proper where appellant failed to identify any discrepancy between original records admitted into evidence and the representation of that data in the disputed summaries).

[8]      *See Ancar v. Murphy Oil, U.S.A., Inc.*, CIV.A. 06-3246, 2007 WL 4365436, at *2 (E.D. La. Dec. 11, 2007) (summary of insurance company's payments related to oil refinery fire admissible where invoices and evidence of payment were available for examination) (Barbier, J.).

[9]      Pl. Mem. at 3, n. 5.

[10]      Many of the underlying records are likely not hearsay (*e.g.*, an opposing party's statement) or fall under specific exemptions to the hearsay rule (*e.g.*, the business records and

Footnote continued on next page

> (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a).  Even if it did constitute hearsay (and it does not), the Rumsey Declaration satisfies these criteria.  The Declaration has significant indicia of trustworthiness because: (i) it was prepared through a transparent process that is outlined in the Declaration; (ii) it was created based on documentation in the underlying claims files that are readily available to Class Counsel and the Court; and (iii) the Plaintiffs are well equipped to test the veracity of the Declaration (and in fact, have attempted to do just that in this Motion).  Moreover, because this is a bench proceeding, the typical concerns about hearsay—such as reliability and improper weighting of hearsay evidence—are not present to the same degree.[11]  The Court is more than able to evaluate the accuracy and weight of the testimony in the Declaration, particularly where it has access to all of the relevant claims files.

Even if the Declaration was hearsay and did not satisfy the exception, BP submitted the Declaration in support of a motion to modify the Court's preliminary injunction, and the bar against hearsay evidence does not apply strictly in connection with such motions.  *See Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993) ("at the preliminary injunction stage, the procedures in the district court are less formal, *and the district court may rely on otherwise inadmissible evidence, including hearsay evidence*" (emphasis added)).

---

Footnote continued from previous page

public records exemptions under Fed. R. Evid. 803(6)-(9)).  Because Class Counsel have not identified which statements they claim are hearsay, it is not possible to evaluate Plaintiffs' assertions fully.

[11]    *See, e.g., Utah ex rel. Div. of Forestry, Fire and State Lands v. United States*, No. 2:97CV927DAK, 2009 WL 323206, at *4 n.20 (D. Utah Jan. 27, 2009) ("The hearsay rule is mainly concerned with the risk that jurors might give hearsay undue weight.  This danger is greatly reduced in bench trials conducted by an experienced trial judge.").

C.       **The Rumsey Declaration Fully Complies with Rule 1006**

Class Counsel asserts that the Declaration should be stricken because "Rumsey fails to state that the Declaration is based upon her personal knowledge."[12]  But Class Counsel ignores the substance of the Rumsey Declaration itself and misconstrues what Rule 1006 requires of the declarant.   Ms. Rumsey, who is one of the senior attorneys leading BP's appeals of CSSP awards, stated the basis of her Declaration as follows: "***I have reviewed and become familiar with*** the Economic and Property Damages Settlement, as amended, in the above-captioned case. ***I have reviewed*** numerous claims awards made by the Court-Supervised Settlement Program (CSSP) pursuant to that Settlement, the briefing of appeals of claims awards by BP or Claimants, and related claims files available through the Settlement Program portal. . . .  The summaries in the appendices are true and accurate representations of the data in the claims files to the best of my knowledge."[13]

Ms. Rumsey participated with and oversaw a team comprised of attorneys at Arnold & Porter LLP and experts operating under Ms. Rumsey's supervision.  The team reviewed the claims files and then created the Appendices summarizing their review of certain claims awards made by the Settlement Program.[14]  The approach followed by Ms. Rumsey -- utilizing both her own personal knowledge and the knowledge of others operating at her direction -- is entirely proper under the Rules of Evidence.  Rule 1006 does not require personal knowledge of each piece of evidence summarized for the court's convenience.  *F.T.C. v. Hughes*, 710 F. Supp. 1520, 1524 (N.D.Tex. 1989) (citing *Moore v. Johns–Manville Sales Corp.,* 781 F.2d 1061, 1066 (5th Cir. 1986)).  The Rule requires only that "the summary must be properly introduced through the

---

[12]       Pl. Mem. at 9.
[13]       Rumsey Decl. ¶ 2 (emphasis added).
[14]       *Id.* ¶ 3.

testimony of a witness who supervised its preparation." *United States v. Modena*, 302 F.3d 626, 633 (6th Cir. 2002).[15]

## II.   THE RUMSEY DECLARATION ACCURATELY SUMMARIZES THE CLAIMS FILES FOR THE CLAIMS IDENTIFIED IN APPENDICES A & B

### A.   Appendix A

Class Counsel is correct that "[t]he majority of claimants" listed in Appendix A "are silent on causation"[16] -- that is, their claims and appeals submissions did not even purport to have an actual injury traceable to the Spill.  More telling here is that Class Counsel themselves are silent as to 47 of those examples, for they challenge just 17 of the examples.  The challenge falls short, however, for (i) in many cases the purported grounds for objecting simply do not exist, and (ii) in those instances where Class Counsel purports to bring forward additional information, such additional information is irrelevant and does not rebut BP's point – namely, that the claimants received awards that cannot plausibly be causally connected to the Oil Spill.

---

[15]    *See also United States v. Quintana*, 466 F. App'x 533, 537 (6th Cir. 2012) ("Quintana claims that the phone summary lacked a proper foundation, since the officer who introduced the summary did not specifically testify that he supervised its preparation.  But the officer testified that he obtained Quintana's telephone records, that those records were computerized, and that he obtained the computerized summary.  If there was any error by the district court, it was not plain."); *United States v. Behrens*, 689 F.2d 154, 161 (10th Cir. 1982) (proper foundation for evidentiary summary can be laid through testimony of witness who supervised preparation of exhibit); *Duke v. Nationstar Mortg., L.L.C.*, 893 F. Supp. 2d 1238, 1244 (N.D. Ala. 2012) (sufficient for affiant to "attest that he had conducted or supervised the review of the documents"); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 n.9 (9th Cir. 1985) ("The district court did not abuse its discretion in admitting defendants' exhibit.  Plaintiffs also challenge admission of defendants' summary of costs on the ground that it was 'self-calculated' and 'unverified.'  Rule 1006 does not contemplate that summaries must be prepared by someone independent of the party offering the summary.  Plaintiffs had ample opportunity to cross-examine MGM Grand's Vice-President of Finance, under whose direction the summary was prepared.  Any inaccuracies in the cost estimates could have been brought out on this cross-examination.  The district court did not abuse its discretion.").

[16]    Pl. Mem. at 3.

Case 2:10-md-02179-CJB-DPC   Document 12058   Filed 12/26/13   Page 9 of 15

1.      For eight of the 17 claims (Nos. 3-6, 8-9,14 and 17 on the chart), Class Counsel says little more than that the Appeal Panel affirmed the award because the claimant satisfied the Exhibit 4B formula for showing loss.  That fact, however, is a given for all the paid claims.  The only relevant question is whether the claimed loss is actually traceable to the Spill.  As to Claim No. XXX65, for example, the claimant sold a nursing home facility in Central Louisiana and transferred the operating license a year before the Spill.  That nursing home operation constituted the claimant's largest source of revenue.  Class Counsel rejoins that the claimant continued to operate another, less lucrative line of service at the same location and that it "pass[ed] the V-shaped Pattern Revenue Test."  But nothing about that rejoinder shows that the Spill caused the closure of the nursing home operation a year earlier.  Quite clearly it did not.

Similarly, as to Claim No. XXX27 (No. 8 on the chart), the claimant car dealership dropped Pontiac before the Spill.  The Oil Spill did not cause the lost profits attributable to ending that line of business.  Class Counsel argues that BP failed to disclose that the claimant was also a Buick/GMC dealer.  BP never stated that the claimant was a Pontiac dealer. Moreover, the presence of additional brands does not establish any causal connection between the Spill and the loss of the Pontiac franchise.  The Appeal Panel conceded "the logic of [BP's] contention," and noted that the award "may be an example of a false positive," but proceeded regardless of the lack of causal nexus.

2.      For other claims (Nos. 1-2 on the chart), Class Counsel ignores the fact that the claimants by their own admission did not suffer losses attributable to the Spill.  As to Claim No. XXX08 (No. 1 on the chart), the claimant, a dentistry practice, lost revenue in late 2010 when water damage forced its office to close.  Class Counsel contends that BP failed to disclose that the claimant had two locations and that following the closure of one office all patients were

supposedly routed to the other office. But in a sworn statement to its insurance company, the claimant attributed more than $47,000 a month in lost business income in late 2010 to the water damage—not the Spill.

Likewise, as to Claim No. XXX20 (No. 2 on the chart), claimant lost revenue in November 2010 because its tugboat—its only source of revenue—was undergoing major repairs unrelated to the Spill. Class Counsel argues that the Appeal Panel found in the claimant's favor and said that BP's argument concerning vessel repairs was unsupported by the record. But the Rumsey Declaration quoted the claimant, who said that it "took [the tugboat] out of service, lowering revenues." The Appeal Panel found in the claimant's favor only because it ignored this evidence or failed to apply a causal nexus requirement.

3.    For two claims (Nos. 7 and 10 on the chart), Class Counsel attempts to create a factual dispute where none exists by paraphrasing what the Appendix says rather than paying attention to the actual words. As to Claim No. XXXX41 (No. 7 on the chart), for example, BP said that "Claimant's financial documentation demonstrates that it did not engage in farming operations in either 2009 or 2010" and, thus, could not have experienced an injury due to the Spill because it "opted not to plant crops in either 2009 or 2010." Class Counsel argues that the claimant planted wheat in the fall of 2010. But wheat planted at the end of 2010 would have been harvested in 2011. The Appendix is accurate that the claimant reported no crop revenue in 2009 or 2010, and reported only the variable cost of purchasing seeds and plants in December 2010. As for Class Counsel's assertion that the claimant had some income from equipment rental in 2009, that of course is not inconsistent with the Declaration's accurate assertion that the claimant was not engaged in farming in 2009. Moreover, where is the colorable evidence that

the Spill had anything to do with the loss of equipment rental income by this Zone D farm in Northern Mississippi?

With respect to Claim No. XXX58 (No. 10 on the chart), Class Counsel argues that the claimant, a catering service and restaurant, provides mass catering for occasions other than hurricanes.  But the Appendix does not say that the claimants only line of business was catering for emergency personnel; quite to the contrary, it said that "[a]*mong other services*, Claimant provides catering to emergency response clean-up personnel, particularly after hurricanes." (Emphasis added.)  The fact remains that the claimant had revenue spikes before the Spill by reason of the catering to emergency response personnel in the wake of Hurricanes Katrina and Gustav.  That there were not hurricanes in 2010 is not traceable to the Spill.

4.      Finally, for several claims (Nos. 4-6, 9, 11-13, 15 and 17 in the chart), the additional facts that Class Counsel offer are beside the point.  With respect to Claim No. XXX48 (No. 11 in the chart) the claimant, an emergency room physician's group, had a contractual relationship with a hospital pursuant to which it received certain subsidies.  The hospital began to cut back the subsidies before the Spill and continued those cutbacks in 2010.  The Spill had nothing to do with the cutbacks, and Class Counsel does not offer anything to the contrary.  It offers only the empty assertion that "the subsidy in question is hopelessly intertwined with all other revenue."

Similarly, with respect to Claim No. XXX40 (No. 13 on the chart), the claimant, an Alabama cancer diagnosis and treatment center, experienced a one-time lag in insurance reimbursements that resulted in a spike in revenue during the Benchmark Period when the reimbursement came through.  That anomaly masked the fact that the center had higher revenues in the two years after the Spill than before.  Class Counsel does not point to any evidence that

contradicts these facts; it offers only the claimant's unsubstantiated (and *non sequitur*) assertion that many patients lost insurance benefits.

And with respect to Claim No. XXX44 (No. 16 in the chart), claimant, a television broadcasting studio, suffered a decline in revenue in 2010 relative to the 2007-2009 Benchmark Period because revenues from political ads declined.  Class Counsel contends that political advertising in 2010 actually exceeded political advertising in 2009, but this fact is irrelevant. The point is that political ad revenue in 2007 and 2008, which were included in the Benchmark Period, significantly exceeded the political ad revenue in 2010 because they were major election years.

In sum, of the few examples to which Class Counsel objects, none contain "absurd statements" or "glaringly" misstated facts, or material omissions.  The most striking omission is not in the Rumsey Declaration, but in Class Counsel's Motion to Strike, which tacitly concedes that 47 of the examples are 100 percent accurate.

### B.    Appendix B Is Factually Accurate and Reliable

Class Counsel asserts that Appendix B to the Rumsey Declaration contains no indicia of reliability and is an "evidentiary nightmare."[17]  This broad attack on Appendix B's reliability is perplexing given that Appendix B is simply a list of awards to Zone D claimants that are located more than 100 miles from the Gulf in specified industries.[18]  Presumably, Class Counsel does not contest the basic facts set forth in Appendix B, which Class Counsel could readily verify itself using the unredacted version of Appendix B that was provided to Class Counsel.[19]  Appendix B

---

[17]    Pl. Mem. at 10-11.

[18]    *See* Rumsey Decl., App. B.

[19]    Class Counsel incorrectly asserts that BP "never provided unredacted copies of Appendix A or B to the Court or Class Counsel." Pl. Mem. at 11.  To the contrary, BP did, in fact, provide unredacted versions of Appendices A and B to Class Counsel by electronic mail on November

Footnote continued on next page

therefore is a straightforward summary of record evidence and is admissible pursuant to Federal Rule of Evidence 1006.

In reality, Class Counsel is not concerned with the simple factual summary in Appendix B, but rather with the observation in the Rumsey Declaration that "there is no apparent reason why these losses, so far from the Gulf coast and in industries that are unlikely to have been impacted by the Spill, would have any nexus to the Spill."[20]  That Class Counsel disagrees with Ms. Rumsey's observations is not grounds for deeming Appendix B unreliable, misleading, or inadmissible.  Class Counsel is welcome to offer its own conclusions based on the facts, and indeed BP welcomes Class Counsel's explanation of how, for example, a health care software programming company located hundreds of miles from the Gulf of Mexico could have been impacted by the Spill.

## CONCLUSION

For the reasons stated herein, the Court should deny Class Counsel's Motion to Strike Unsubstantiated Exhibits and to Contest Misstatements Concerning Specific Claims.

---

Footnote continued from previous page
14, 2013, for which Class Counsel thanked BP.  *See* Email from Steven Pyser, Williams & Connolly LLP, to Steve Herman dated November 14, 2013 (attached hereto as Exhibit A).  As shown in Exhibit A, Class Counsel acknowledged receipt of the unredacted Appendices.  *Id.*
[20]     Rumsey Decl. ¶ 5.

Dated: December 26, 2013

James J. Neath
Mark Holstein
BP AMERICA INC.
501 Westlake Park Boulevard
Houston, TX 77079
Telephone: (281) 366-2000
Facsimile: (312) 862-2g200

Daniel A. Cantor
Andrew T. Karron
Allison Rumsey
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004-1206
E-Mail: Allison.Rumsey@aporter.com
Telephone: 202-942-5000
Facsimile: 202-942-5999

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: 202-662-5985
Facsimile: 202-662-6291

Jeffrey Lennard
Keith Moskowitz
DENTONS US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

*OF COUNSEL*

Respectfully submitted,


/s/ *Kevin M. Downey*
Kevin M. Downey
F. Lane Heard, III
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

/s/ *Don K. Haycraft*
S. Gene Fendler (Bar #05510)
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139-5099
Telephone: 504-581-7979
Facsimile: 504-556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
David J. Zott, P.C.
Jeffrey J. Zeiger
Wendy L. Bloom
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: 312-862-2000
Facsimile: 312-862-2200

Jeffrey Bossert Clark
Steven A. Myers
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: 202-879-5000
Facsimile: 202-879-5200

*ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.*
*AND BP AMERICA PRODUCTION COMPANY*

14

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 26th day of December, 2013.

Respectfully submitted,

*/s/ Don K. Haycraft*
Don K. Haycraft