UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL BY THE OIL RIG      MDL 2179
"DEEPWATER HORIZON" IN THE
GULF OF MEXICO, ON APRIL 20, 2010     SECTION: "J"

This Document Applies to:            JUDGE BARBIER
                               MAG. JUDGE SHUSHAN
No. 12-970, Bon Secour Fisheries, Inc., et al.
v. BP Exploration & Production Inc., et al.

## OBJECTIONS TO MAGISTRATE JUDGE SHUSHAN'S RULINGS ON GLEN J. LERNER'S MOTIONS TO COMPEL DISCLOSURES AND INCORPORATED MEMORANDUM

Glen J. Lerner objects to certain aspects of Magistrate Judge Shushan's Order, dated December 19, 2013 ("Final Discovery Order"). Rec. Doc. 12026.[1] The Final Discovery Order grants in part and denies in part Lerner's motion for access to the Special Master's investigative record, Rec. Doc. 11619, and denies the related motion seeking an order permitting depositions or interviews of employees of the Claims Administration Office ("CAO"), Rec. Doc. 11643. Lerner's motions were based on the simple notion that, having been accused by the Special Master of possible criminal activity and professional misconduct, Lerner is entitled to disclosure of the same investigative record that the Special Master compiled and relied upon in making his accusations. Moreover, because this Court must review the investigative record *de novo*, fundamental fairness requires that Lerner have access to the same record as the Court. The Magistrate Judge's Final Discovery Order does not, however, provide Lerner full access to the relevant investigative record.

---

[1] Mr. Lerner appears solely to object to Magistrate Judge Shushan's rulings on Mr. Lerner's motions to complete the discovery the Court afforded in its discovery Order. Rec. Doc. 11442. Mr. Lerner specifically reserves his right to make any and all objections to the Special Master's Report and the Court's discovery Order, including those grounds for dismissal set forth in Federal Rule of Civil Procedure 12(b) and grounds relating to the scope of the Special Master's authority under Rule 53.

Five aspects of the Final Discovery Order warrant reversal or modification. *First*, the ordered production of electronic documents is fundamentally flawed, and the Final Discovery Order must be modified to ensure production of all "relevant" electronic documents, as this Court ordered. Rec. Doc. 11442 at 1. Without notice to or input from Lerner, Magistrate Judge Shushan ordered searches of two electronic databases maintained by the Special Master named "Intella" and "Box," Rec. Doc. 12026 at 4, which contain, among other things, the DHECC's email archive and the contents of Lionel Sutton's and Christine Reitano's laptops and mobile devices. Magistrate Judge Shushan ordered the Special Master to search these electronic databases only for documents whose "subject" field – that is, the "subject" line of an email – contained identifying information of an AndryLerner client or the AndryLerner law firm. Rec. Doc. 12026-1 at ¶ 5. These exceedingly narrow searches failed to identify plainly relevant emails and other documents for disclosure. For instance, the search parameters yielded only two of Sutton's internal CAO communications and not a single communication involving Sutton and Lerner or Jon Andry. It is fair to assume that the Special Master must have reviewed *every one* of Sutton's communications as part of his investigation. After all, the Special Master repeatedly relied on Sutton and Lerner's email communications, *see, e.g.,* Rec. Doc. at 11287 at 21, 30-32, 34,[2] some of which were stored on Sutton's laptop, to support his "finding" that Lerner, Andry, and Sutton conspired to corrupt the claims process.[3] Yet, because of the narrow search parameters, the Final Discovery Order does not compel production of *all* of the alleged co-conspirators' communications. Lerner has received from the Special Master some email

---

[2] Page references to the Special Master's Report are to the Report's page numbers, not the ECF page number.

[3] Sutton's communications with Lerner must reside in some form on Sutton's laptop. That much is evident from the fact that, before the appointment of the Special Master, David Welker uncovered communications between Sutton and Lerner on Sutton's laptop during the CAO's internal investigation of Sutton. Rec. Doc. 10761-3 at 4 (stating that Welker searched Sutton's DHECC computer, which included "personal e-mails stored on the DHECC computer used by Tiger Sutton").

communications between him and Sutton; he also produced such emails to the Special Master. However, because of the manner in which the Special Master produced emails to Lerner, he has no way of knowing whether there are communications between him and Sutton or Sutton and Jon Andry that have not been produced.[4]  Lerner is entitled to have all communications among the alleged co-conspirators to show that there was no conspiracy or effort to corrupt the claims process.

Lerner should not have to rely on the Court or the Special Master to obtain relevant electronic evidence, when modern-day discovery practice allows civil litigants to fashion their own searches. *See generally* Fed. R. Civ. P. 34.  To effectuate its Order, Rec. Doc. 11442, the Court should require the Special Master to produce to Lerner a mirror image of the Special Master's Intella and Box databases.  Alternatively, the Court should permit Lerner to submit search terms and parameters to the Special Master in order to capture all relevant electronic materials.

*Second*, the Final Discovery Order does not compel the Special Master to produce all relevant hard copy documents obtained in his investigation.  According to his Report, the Special Master obtained via subpoena documents from multiple "parties" and other sources.  Rec. Doc. 11287 at 15.  However, the Final Discovery Order does not require the Special Master to produce any hard copy documents other than those obtained from the CAO or through public sources. Rec. Doc. 12026 at 4-6.  Lerner, for example, has not received records from any financial institution, even though the Special Master's Report indicates that he subpoenaed records from "financial institutions . . . and other entities."  Rec. Doc. 11287 at 15.  The Court must order the

---

[4] Lerner cannot tell whether the emails he has received are from Sutton's laptop, Lerner's production, or some other source, because the Special Master has not produced an index sourcing the emails between Lerner and Sutton.  For example, it is possible that Sutton's laptop contained emails communications between Sutton and Lerner that Lerner did not possess.  Lerner has no way of knowing whether such emails were not produced to him or not.

production of all relevant hard copy documents obtained from the Show Cause parties and third-parties.

The Final Discovery Order reveals a larger problem -- Lerner has no means of determining what portions of the investigative record have been excluded from production. The Special Master's report describes a far-reaching investigation that collected evidence from many sources. *Id.* at 14-15. Lerner, however, has received no information whatsoever about the identities of these sources. As a result, Lerner is significantly handicapped in determining whether a document from any particular source has been produced or not. To address this problem, the Court should order the Special Master to produce an inventory identifying all of the sources from which the Special Master obtained documents that make up the investigative record and the volume of records obtained from the source. The Special Master also should be required to produce an inventory identifying the source of the materials produced to Lerner thus far. Only with such information can Lerner identify with particularity the portions of the investigative record that have been excluded from production.

*Third*, Lerner reasserts his objection to the Magistrate Judge's refusal to allow him to interview or depose any CAO official or employee. *See* Rec. Doc. 11773-3 at 5-7. Magistrate Judge Shushan offered no reason for her denial of access. Rec. Doc. 12026 at 4. The Special Master had the unfettered opportunity to interview CAO employees about subjects he deemed relevant. Lerner is entitled to the same opportunity, especially in view of the fact that the Special Master alleges Lerner corrupted the claims process, but no evidence of any such corruption has been produced. Lerner is entitled to ask questions and discover evidence that affirmatively supports the fact no corruption occurred, questions not asked by the Special Master. The Court should order the CAO to make its officials and employees available to Lerner.

4

*Fourth*, the Court should order the Special Master to produce any relevant materials that came into the Special Master's possession after September 6, 2013. The Declaration of Gregory A. Paw ("Paw Declaration") that accompanies that Final Discovery Order shows that the Special Master used a cut-off date of September 6, 2013 – the date of the Report's release – to search for relevant documents. Rec. Doc. 12026-1 at ¶¶ 2, 4-6, 8. Any relevant evidence obtained after September 6, 2013, should be produced.

*Finally*, Magistrate Judge Shushan has permitted the Special Master to redact portions of produced materials. Rec. Doc. 12026 at 4. She also has allowed him to withhold some documents on the ground that they reflected his "mental processes." *Id.* at 5. The documents and redactions were withheld and made without the production of any log, which would enable Lerner to challenge the privilege assertion or redaction. The Court should order the production of such log, consistent with Federal Rule of Civil Procedure 26(b)(5)(A)(ii).

## BACKGROUND

On October 16, 2013, this Court referred to Magistrate Judge Shushan all outstanding motions for discovery filed by the Show Cause Parties. Rec. Doc. 11664. These motions sought complete access to the Special Master's investigative record and an order directing officials and employees of the CAO to make themselves available for interviews by the Show Cause Parties. Rec. Docs. 11610, 11619, 11643, 11644, 11666, 11414, and 11681. On October 24, 2013, Magistrate Judge Shushan issued her initial ruling on the Show Cause Parties' motions ("Initial Discovery Order"). The Initial Discovery Order required disclosure of the Show Cause Parties' recorded interviews, but did not require production of any unredacted transcripts or interview notes of persons employed by AndryLerner LLC and The Andry Law Firm. Rec. Doc. 11729. Magistrate Judge Shushan also denied the Show Cause Parties' request to interview or depose

representatives of the CAO. *Id.* As for the balance of the investigative record, Magistrate Judge Shushan ordered it to be produced *in camera* for review. Magistrate Judge Shushan issued her Final Discovery Order on December 19, 2013. Rec. Doc. 12026.

*Electronic Documents*

One of the most significant parts of the Special Master's investigative record was his collection of electronic evidence. Rec. Doc. 11287 at 14-15. According to the Special Master's Report, "the entire contents of [the DHECC's] email system were exported to a Special Master's hard drive. This data was then processed and uploaded into a searchable database application for investigative research." *Id.* at 15. The Special Master also "obtained the laptop computers and mobile device hardware belonging to [the] CAO and used by Mr. Sutton and Ms. Reitano during their time at the office . . . Appropriate reports and exported data from the devices were transmitted to the Special Master for integration into a searchable database application." *Id.*

According to the Paw Declaration, the Special Master compiled two electronic searchable databases. Rec. Doc. 12026-1 at ¶ 3. One of the databases, referred to as "Intella," contains "electronic data obtained from the [DHECC]," *id.*, including data extracted from the DHECC's email system and Sutton's and Reitano's laptops and mobile phones. *Id.* at ¶ 4. The other database, referred to as "Box" contains "documents and work papers used by the Special Master and his staff." *Id.* at ¶ 3. The Paw Declaration did not define more precisely the contents of the "Box" database.

As part of her *in camera* review, Magistrate Judge Shushan ordered exceedingly narrow searches of the two databases. Magistrate Judge Shushan ordered the Special Master to search Intella and Box for data in which the "subject" field contained either (a) the name of an AndryLerner client; (b) the claim number of any AndryLerner client; or (c) the claimant number

6

of any AndryLerner client. She also ordered the "subject" field be searched for the terms "Andry" and "Lerner." *Id.* at ¶ 5.

Limiting the search to the "subject" field and limiting the search to Andry Lerner and its clients returned only 66 "unique" emails from the Intella database, consisting of less than 120 pages. *See* Ex. A (results of Intella database searches, filed under seal).[5] The majority of these emails concerned the transmittal of claims documents from AndryLerner to the DHECC or emails relating to appeals or eligibility of an AndryLerner client. With two exceptions,[6] none of the produced emails involved a communication involving Lionel Sutton, and not a single email involved any communication between Sutton and Lerner or Sutton and Andry. Consequently, the Final Discovery Order does not require the production of all email communications among the alleged co-conspirators, Lerner, Sutton, and Andry.

The same search parameters were run in the Special Master's second electronic database, "Box." Rec. Doc. 12026-1 at ¶ 8. However, according to the Final Discovery Order, because "[m]any of the documents identified by the application of the search terms in the Box database were produced previously to the Show Cause parties," the Special Master was not required to produce those search results. Rec. Doc. 12026 at 5.

*Hard Copy Documents*

The Special Master received permission from the Court to issue document subpoenas. Rec. Doc. 11287 at 15. Subpoenas were issued to "certain parties, as well as relevant financial institutions, telecommunication carriers, and other entities." *Id.* Such records were made available to Magistrate Judge Shushan for her *in camera* review. Rec. Doc. 12026-1 at ¶ 2

---

[5] The Special Master prepared and produced a spreadsheet summarizing the search results. *See* Ex. A at SM-04-GL000253-268. According to the spreadsheet, the searches of Intella produced a mere 66 "unique" emails. *Id.* at 268. The Special Master did not define what constituted a "unique" email, but from the production it appears that a "unique" email is a single copy of an email that is not a "read notice." Duplicates of emails were excluded.
[6] *See* SM-04-GL000344, 352.

(stating that "physical documents assembled during the course of the Special Master's review" were delivered to Magistrate Judge Shushan). The Final Discovery Order does not, however, compel the production of all such records. Rec. Doc. 12026 at 4-5. The Final Discovery Order requires the production of "Public Source," "DHECC Available," "CAO Investigation," and "CAO Process Review" documents. None of those documents presumably required issuance of a subpoena, because either they were available publicly or from the CAO. Lerner, therefore, appears not to have received all subpoenaed records from "certain parties" and other entities. Rec. Doc. at 11287 at 15. By way of illustration, Lerner has not received any records from any financial institution.

### CAO Employees

The Initial Discovery Order denied Lerner's request to interview or depose officials and employees of the CAO. Rec. Doc. 11729. The Final Discovery Order requires production of interview memos and transcripts of CAO officials and employees, Rec. Doc. 12026 at 3, but again, without explanation, denies Lerner access to those witnesses, *id.* at 4.

## STANDARD OF REVIEW

The Court must consider timely objections to a magistrate judge's order and modify or set aside any part of the order that is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

## ARGUMENT

## I.    THE COURT SHOULD MODIFY THE FINAL DISCOVERY ORDER TO PROVIDE LERNER FULL ACCESS TO ELECTRONIC DOCUMENTS IN THE INVESTIGATIVE RECORD.

The searches of the Special Master's databases failed to produce all electronic evidence "relevant to portions of the Special Master's Report concerning" Lerner. Rec. Doc. 11442 at 1. That much is obvious from the search results. The searches produced no communications between Sutton and Lerner or Andry, and produced only two internal CAO communications

8

involving Sutton. *See* Ex. A. Only 66 "unique" emails were produced from a database that, between the DHEEC email archive and Sutton's CAO-issued hardware, must contain thousands of Sutton's emails.

The reason for the paucity of documents is the unduly narrow search parameters ordered by Magistrate Judge Shushan. A meaningful search for relevant email cannot exclude the body of an email or be limited only to searches of "subject" lines. Nor can the search be limited to AndryLerner client identifiers and the firm's name. Such search parameters, by definition, exclude all communications between Sutton and Lerner or Andry that do not refer to an AndryLerner client or the firm name in the subject line. Since conspiracy is the gravamen of the corruption allegation, *see, e.g.,* Rec. Doc. at 11287 at 21, 30-32, 34, all communications between the alleged conspirators are relevant to prove whether there was a conspiracy. If there are many communications between the alleged conspirators and none support a conspiracy, as we suspect, that is powerful evidence for Lerner that he is now being denied. Also relevant are Sutton's communications with other CAO employees and vendors. Such emails would show whether Sutton provided any advantage to any AndryLerner claim. The only two internal communications produced show that he did not. *See* pg. 7, n. 6, *supra*. If, as we expect, Sutton regularly communicated with CAO employees and vendors about claims, but only twice about an AndryLerner claim, that would refute the allegation of an attempt to corrupt the claims process.

Equally important to Lerner's defense are Sutton's communications with non-AndryLerner lawyers and claimants. The Special Master has alleged that Lerner and Andry "utilized Mr. Sutton as their 'insider' at the CAO to track and to expedite their pending claims," Rec. Doc. 11287 at 21, and that Sutton "checked on their clients' claims, expedited the processing of the claims, and gave advice on how to remedy deficiencies in some claims," *id.* at

9

82. To rebut those allegations, Lerner is entitled to show through Sutton's communications that the kind of information and advice that Sutton provided him on one occasion, *see* Rec. Doc. 11287 at 40, was no different than the kind of information and advice that Sutton provided on a regular basis to non-AndryLerner counsel and claimants. Indeed, Sutton's CAO database access records show that he accessed dozens of non-AndryLerner client claims and, as he admitted to the Special Master, part of his job was to assist counsel and claimants in making, perfecting, and providing information about claims. We expect that Sutton's emails will show that the communications that the Special Master alleges demonstrate "insider" access are similar to dozens, if not hundreds, of communications Sutton had with non-AndryLerner counsel and claimants about the claims process.

The most straightforward way for Lerner to obtain access to all relevant electronic evidence is to provide him with a copy of the Special Master's electronic databases, Intella and Box, so that he may perform his own searches for relevant evidence. This type of full disclosure of electronically stored evidence is done routinely in criminal cases, and would avoid consuming substantial time and resources associated with crafting and running search queries. Alternatively, the Court should permit Lerner to submit to the Special Master search terms and parameters designed to identify relevant evidence. Obtaining discovery by search terms is contemplated by the Rule 34(b) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P 34(b)(1)(a) (demand for electronic records "must describe with reasonable particularity each item or category of items to be inspected").

## II.    THE COURT SHOULD MODIFY THE FINAL DISCOVERY ORDER TO REQUIRE THE PRODUCTION OF ALL RELEVANT HARD COPY DOCUMENTS AND DOCUMENT INVENTORIES.

As discussed, *supra,* the Final Discovery Order improperly excludes from the ordered production hard copy documents that the Special Master obtained from sources other than the

CAO and the public domain. Rec. Doc. 12026 at 5-6. According to his Report, the Special Master subpoenaed records from "certain parties" and "relevant financial institutions, telecommunication carriers, and other entities." Rec. Doc. at 11287 at 15. Not all of these records have been produced. As one example, Lerner has not received any records from any financial institution. The Court should order the production of all relevant hard copy documents.

The Court should also order the Special Master to produce two document inventories to assist Lerner in assuring that he has received all relevant evidence. One inventory should identify all sources of documents obtained during the Special Master's investigation and the volume of documents obtained from the source. The second inventory should identify the sources of the documents thus far produced to Lerner. Those inventories would enable Lerner, and the Court, to identify the relevant evidence that has been excluded from the Special Master's productions. Absent such inventories, Lerner must resort to educated guesses and speculation as to what he has not received.

## III.    THE COURT SHOULD PERMIT LERNER TO DEPOSE OR INTERVIEW REPRESENTATIVES OF THE CAO.

Magistrate Judge Shushan's summary denial of Lerner's request for access and interviews of representatives of the CAO is clearly erroneous and must be reversed. There is no legal justification whatsoever, and Magistrate Judge Shushan provided none, to deny access to witnesses who are plainly relevant to Lerner's defense. Witnesses do not belong to one party or the other. Especially in civil proceedings, a witness who possesses relevant testimony is available to all parties. *See* Fed. R. Civ. P. 30. The Special Master had full access to these witnesses, and he relied on their testimony in drafting his Report and making his recommendations. *See, e.g.*, Rec. Doc. 11287 at 19 (referencing statements made by David Odom, the CAO's CEO, Patrick Juneau, the Claims Administrator, and Michael Juneau, the

11

CAO's Special Counsel); *id.* at 33 n.160 (referencing handwritten notes of Michael Juneau); *id.* at 41 n.225 (referencing a memorandum from Michael Juneau to Patrick Juneau regarding Lionel Sutton). Lerner should be afforded the same access as the Special Master to these witnesses, so that he can develop evidence to assist in his defense. Among other issues, Lerner expects that CAO employees will possess relevant evidence that would demonstrate that (i) no AndryLerner claim (including Casey Thonn) was advantaged by payment of the Thonn referral fee to Sutton, (ii) the information that Sutton provided to Lerner about the status of AndryLerner claims was not confidential CAO information, (iii) Sutton and other CAO employees regularly communicated with counsel for claimants about the status of claims and, in fact, were encouraged to do so, and (iv) the multi-layer claims review and processing procedures were not vulnerable to influence by Sutton. Such evidence is critical to rebutting the Special Master's contention that Lerner, Andry, and Sutton "worked together to corrupt [the] settlement process." Rec. Doc. 11287 at 81.

The fact that CAO employees are operating under the Court's purview does not exempt them from questioning by Lerner. The applicable standard is whether a witness has relevant testimony, not his or her employment status. No heightened showing must be made simply because CAO employees are implementing a court-approved and enforced settlement agreement. Nor should Lerner have to rely solely on the Special Master's memorialization of CAO employee interviews to present his defense. Lerner's interests obviously differ from the Special Master's, and Lerner should be able to make the inquiries he believes are necessary to develop his defense. The CAO employees possess relevant evidence, and Lerner is entitled to obtain it. Even a cursory review of the interview notes that were provided demonstrates that the Special Master did not ask the employees of the CAO about the topics referenced above that are central

12

and critical to Lerner's defense.   Justice demands a level playing field.   Magistrate Judge

Shushan's ruling to the contrary is erroneous.

**IV.    THE SPECIAL MASTER SHOULD BE REQUIRED TO PRODUCE RELEVANT DOCUMENTS DEVELOPED OR OBTAINED AFTER SEPTEMBER 6, 2013.**

The Paw Declaration makes clear that the Special Master did not present to Magistrate

Judge Shushan any documents for her review that were developed or obtained after the Special

Master issued his Report on September 6, 2013.   We have reason to believe that the Special

Master continued his investigation, particularly of the Casey Thonn claims, after September 6,

2013.  Any materials relevant to the allegations against Lerner should be produced, including

those that came into the Special Master's possession after September 6, 2013.

**V.    THE COURT SHOULD ORDER THE SPECIAL MASTER TO PRODUCE A LOG REFLECTING THE WITHHELD AND REDACTED DOCUMENTS.**

Finally, the Final Discovery Order authorized the Special Master to withhold certain

documents based on the "mental process" privilege and to redact documents on grounds of

irrelevancy.  Rec. Doc. 12026 at 4-5.  The Court should require the Special Master to produce a

log, consistent with Federal Rule of Civil Procedure 26(b)(5)(A)(ii), that enables Lerner to

challenge the non-disclosure of the withheld materials.

**VI.    CONCLUSION**

For the foregoing reasons, Lerner respectfully requests that the Court order the Special

Master to (1) produce a mirror image of the Intella and Box databases or, in the alterative, permit

Lerner to submit search terms and parameters to the Special Master; (2) produce all relevant hard

copy documents; (3) produce all relevant materials developed or obtained after September 6,

2013; and (4) produce a log, consistent with Federal Rule of Civil Procedure 26(b)(5)(A)(ii), that

identifies documents withheld based on the "mental process" privilege and portions of

13

documents redacted as irrelevant; and (5) authorize Lerner to interview or depose officials or employees of the CAO.

Respectfully submitted,

*/s/ Pauline F. Hardin*

Pauline F. Hardin (La. Bar #6542)
JONES WALKER LLP
201 St. Charles Avenue
49th Floor
New Orleans, LA 70170
Telephone: (504) 582-8110
Fax: (504) 589-8110
phardin@joneswalker.com

AND

William W. Taylor, III (D.C. Bar #84194)
Amit P. Mehta (D.C. Bar #467231)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036-5802
Telephone: (202) 778-1865
Facsimile: (202) 822-8106
amehta@zuckerman.com

*Attorneys for Glen J. Lerner*

14

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Objections have been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 3rd day of January, 2014.

/s/ Pauline F. Hardin
Pauline F. Hardin (La. Bar #6542)