IN THE UNITED STATES DISTRICT COURT

FOR THE

EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | Oil Spill by the Oil Rig | ) | |
| | "Deepwater Horizon" | ) | MDL 2179 |
| | In the Gulf of Mexico. | ) | SECTION J |
| | On April 20, 2010 | ) | |
| This document relates to: | | ) | JUDGE BARBIER |
| No. 12-970, Bon Secour | | ) | |
| Fisheries, Inc., et al v. BP | | ) | MAG. JUDGE SHUSHAN |
| | | ) | |
| And All Actions | | ) | |

## ORAL ARGUMENT REQUESTED

## MEMORANDUM OF AUTHORITIES IN SUPPORT OF
## MOTION TO CONFIRM ARBITRATION AWARD

E. J. Saad  (AL861451)
Matthew Andrews  (AL167247)
ATTORNEYS FOR ROCON, INC.
E. J. SAAD LAW FIRM
6207 COTTAGE HILL ROAD, SUITE G
MOBILE, ALABAMA  366609
TELEPHONE: 251-660-0888
FAX:  251-660-0777
ejsaad@ejsaadlaw.com
mandrews@ejsaadlaw.com

Frederick T. Kuykendall, III
KUYKENDALL & ASSOCIATES, LLC
ATTORNEYS FOR ROCON, INC.
AL Bar No.: ASB4462A59F
Federal Bar No.: KUYKF4462
P.O. Box 2129
Fairhope, Alabama 36533
Telephone: (251) 928-4008
Facsimile: (251) 928-2151
ftkuykendall@yahoo.com

TABLE OF CONTENTS

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

I.      THE AGREEMENT'S APPEAL PROCESS, AS
        SET OUT IN SECTION 6, IS AN ARBITRATION
        AGREEMENT SUBJECT TO THE FEDERAL
        ARBITRATION ACT AND THE RESULTING
        AWARD IS BINDING ON THE PARTIES . . . . . . . . . . . . . . . .   6.

        A.      The Settlement Agreement Is Governed
                By Maritime Law And The Arbitration
                Agreement Contained Therein Is Subject
                To The Federal Arbitration Act, 9
                U.S.C.S. §1 et al . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

        B.      The Dispute Resolution Procedure Established
                By Section 6, CLAIMS APPEAL PROCESS,
                Is An Arbitration Agreement . . . . . . . . . . . . . . . . . . . . . . . .   7

II.     THE ARBITRATOR'S AWARD, AS ISSUED
        BY THE APPEAL PANEL ON SEPTEMBER
        29, 2013, IS FINAL AND DUE TO BE
        CONFIRMED UNDER THE FEDERAL
        ARBITRATION ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

III.    THE FIFTH CIRCUIT COURT OF APPEALS' OPINION'
        MUST BE APPLIED CONSISTENT WITH CONTROLLING
        FEDERAL LAW AND CANNOT DISRUPT AN ARBITRATION
        AWARD EXCEPT ON GROUNDS PERMITTED BY
        SECTIONS 10 AND 11 OF THE FEDERAL ARBITRATION
        ACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

IV.     THE CLAIMS ADMINISTRATOR HAS A MMINISTERIAL DUTY
        TO PAY ROCON'S CLAIM AND S HOULD BE DIRECTED TO
        DO SO BY THE COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

## TABLE OF AUTHORITIES

### Cases

ASW Allstate Painting & Constr. Co. v. Lexington Ins. Co.,
    188 F.3d 307 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6, 16

AT&T Tech., Inc. v. Comme'ns Workers of Am., 475 U.S. 643,
    106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) . . . . . . . . . . . . . . . . . . .    4, 15, 19

AT&T Mobility, LLC v. Vincent Concepcion, S.A., 131 S.Ct. 1740
    179 L.Ed.2d 742 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3, 13, 20

Alford v. Kuhlman Elec. Corp., 716 F.3d 909 (5th Cir. 2013) . . . . . . . . . .    3

Alsem Indus. V. M/V Nick, 1999 U.S. Dist LEXIS 20109 *5
    (E.D. La. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

American Almond Produ. Co. v. Consolidated Pecan S. Co.,
    144 F.2d 448 (2nd Cir. 1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

American Federation of State, County and Municipal Employees,
    Local 1902, AFL-CIO v. Metropolitan Water District of
    Southern California v. Bullard, 126 Cal. App. 4th 247,
    24 Cal. Rptr. 3d 285 (Cal. App. 2005) . . . . . . . . . . . . . . . . . . . . . .    8, 9,  12, 13

Am. Heritage Life Ins. Co. v. Lang, 321 F.3d 533 (5th Cir. 2003) . . . . . .    4

Apache Bohai Corp. LDC v. Texaco China BV, 480 F.3d 397
    (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

Armstrong v. Assocs. Int'l Holding Corp., 242 Fed. Appx. 955
    (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4, 15, 17, 19

Bain v. Bank, 2013 U. S. App. LEXIS 18180 (5th Cir. 2013) . . . . . . . . .    22

Banks v. Mitsubishi Motors Credit of Am., 156 Fed. Appx. 710
    (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3, 5, 15, 16

Beverly Enterprises-Mississippi v. Powell, 244 Fed. Appx. 577
    (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

Brook v. Peak Int'l, Ltd., 294 F3d 668 (5th Cir. 2002) . . . . . . . . . . . . . .    12

Bulko v. Morgan Stanley DW, Inc., 450 F.3d 622 (5th Cir. 2006) . . . . .    12

Cargill Ferrous International v. The M/V Anatoli, 935 F. Supp.
833 (E.D. La. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294
(5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5, 15, 16

Cheng-Canindin v. Renaissance Hotel Associates, 50 Cal. App. 4th 676,
57 Cal. Rptr. 2d 867 (Cal. App. 1996) . . . . . . . . . . . . . . . . . . . . .    9. 12, 13

Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302,
149 L.Ed.2d 234 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

Citigroup Global Markets, Inc. v. Bacon, 562 F.3d 349 (5th Cir. 2009) . . .    22

Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 2123 S.Ct. 2037,
156 L.Ed.2d 46 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

GMC v. Pamela Equities Corp., 146 F.3d 242 (5th Cir. 1998) . . . . . . . . .    8, 13

Grant v. Houser, 469 Fed. Appx. 310, 315 (5th Cir. 2012) . . . . . . . .    2, 5, 7, 14, 15, 16, 23, 25

Guidry v. Halliburton Geophysical Services, Inc., 976 F.2d 938
(5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co. 304 F.3d 476
(5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 128 S. Ct.
1396, 170 L. Ed. 2d 254 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . .    20, 21, 23

Hamel-Schwulst v. Country Place Mortg. Ltd., 406 Fed. Appx. 906
(5th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

Hooters of America, Inc. v. Phillips, 39 F. Supp. 2d 582
(D S.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9, 12, 13

In re: Oil Spill, 808 F.Supp.2d 943 (E.D. La. 2011) . . . . . . . . . . . . . . . .    6

In re Raymark Indus., Inc., 831 F.2d 550 (5th Cir. 1987) . . . . . . . . . . . .    3

In re Travelers Indem. Co., 2004 U.S. Dist LEXIS 30074
(D. Conn. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

Investment Partners v. Glamour Shots, 298 F.3d 314 (5th Cir. 2002). . . .    10

Kabia v. Koch, 713 N.Y.S. 2d 250 (Civ. Ct. N.Y. 2000) . . . . . . . . . . . .    9, 12, 13

Klein v. Nabors Drilling USA, LP, 710 F.3d 234 (5th Cir. 2013) . . . . . .    4, 15, 19

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
    460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). . . . . . . . . . .    2, 3, 5, 10, 13, 16

Nat'l Union Fire Ins. Co. v. Circle, Inc., 915 F.2d 986 (5th Cir. 1990) . . .    3

Nitro-Lift Techs., LLC v. Howard, 133 S. Ct. 500, 133 S.Ct. 500,
    184 L. Ed. 2d 328  (2012) . . . . . . . . . . . . . . . . . . . . . . .    3, 13

Noffke v. Bakke, 760 N.W.2d 156 (Wis. 2009) . . . . . . . . . . . . . . . .    25

QPro, Inc. v.  RTD Quality Servs. USA, 761 F.Supp.2d 492
    (S.D. Texas 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . .    5, 16

Prasad v. Bullard, 51 So.3d 35 (La. App., 5 Cir. 2010) . . . . . . . . . . .    9, 12

Robertson v. J.C. Penney Co., Inc., 484 F.Supp.2d 561 (S.D. Miss. 2007) .    18

Rogers v. KBR Technical Services, Inc., 2007 U. S. Dist.
    LEXIS 83070*9-*10 (S.D. Tex. 2007) . . . . . . . . . . . . . . . . . . .    22

Rolls Royce Industrial Power v. M.V. Fratzis M., 1995 U.S. Dist. LEXIS
    22219 *36 (S.D. N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . .    18

Sam Reisfeld & Son Import Co. v. Eteco, 530 F.2d 679 (5th Cir. 1976) . . . .    4

Shales v. Discover Card Servs., 2002 U.S. Dist. LEXIS
    16502 *6 (E.D. La. 2002) . . . . . . . . . . . . . . . . . . . . . . . .    10

Sheason/American Express, Inc. v. McMahon, 482 U.S. 220, 207
    S.Ct. 2332, 96 L.Ed.2d 185 (1987) . . . . . . . . . . . . . . . . . . .    5

Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852,
    79 L.Ed.2d 1 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . .    4, 15

Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574,
    80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960) . . . . . . . . . . . . . . . .    4, 15, 19

Swift Industries, Inc. v. Botany Industries, Inc., 466 F.2d 1125
    (3d Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

Tricon Energy Ltd. V. Vinmar Int'l, Ltd., 718 F.3d 448 (5th Cir. 2013) . . . . . .    6, 16

Tokura Constr. Co. v. Corporacion Raymond, S.A., 533 F.Supp. 1271

(S.D. Tex. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

Turner Marine Fleeting v. Quality Fab & Mech., 2002 U.S. Dist. LEXIS
      24258 (E.D. La. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

United States v. O'Keefe, 128 F.3d 885 (5th Cir 1997) . . . . . . . . . . . . . . . . .   24

United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 51 S.Ct 502,
      75 L.Ed. 1148 (1931) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc., 666
      F.3d 932 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3, 13

Washington Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260 (5th Cir. 2004) . . .   5

Watkins v. Fly, 136 F.2d 578 (5th Cir 1948) . . . . . . . . . . . . . . . . . . . . . . . . .   18

Webb v. Invertacorp., Inc., 89 F.3d 252 (5th Cir. 1996) . . . . . . . . . . . . . . . .   4, 15

Woods v. PAM Transp., Inc.-LU, 440 Fed. Appx. 265
      (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

## Statutes

Federal Arbitration Act, (FAA). 9 U.S.C. §§1-9 . .  2, - 7, 10, 12, 13, 15, 20,  21, 22, 23

9 U.S.C.S. §§1-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 7

9 U.S.C. §2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 7

9 U.S.C. §6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

9 U.S.C. §9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14, 23

9 U.S.C. §10-11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

## Miscellaneous:

Black's Law Dictionary, Ninth Ed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

## STATEMENT OF THE FACTS

The matter arises out of a settlement agreement, ("Settlement Agreement" or "Agreement"), reached by a class of parties with BP Exploration & Production, Inc. and BP America Production Company (jointly referred to as "BP") on April 18, 2012. (Doc. 6430-1 at 118). The Settlement Agreement was approved by the Court on May 3, 2012. (Doc. 8139).

Rocon, Inc., (Rocon) is a commercial contractor in Mobile County, Alabama and was open for business prior to and during April 20, 2010 to April 16, 2012. (Exs. 1, 7 at 83, 100). Rocon's physical location is at 7950 Zeigler Blvd., Mobile, Alabama, which is in Economic Loss Zone D. (Ex. 2). As such, Rocon is an Economic Class Member entitled to present a claim under the Agreement.

Rocon submitted its Settlement Registration Claim Form and Business Economic Loss Claim Form on June 4, 2012. (Exs. 1, 2). Rocon presented its supporting contemporaneous financial data, kept on an accrual basis of accounting, which was reviewed, reconciled and approved by the Claims Administrator. (Ex. 7 at 84). On April 12, 2013, the Claims Administrator issued an Eligibility Notice which determined that Rocon's claim qualified for payment and set the Award Amount at $150,049.87. (Exs. 3, 7 at 83). Rocon properly executed the Full and Final Release, Settlement, and Covenant Not to Sue and timely returned it to the Claims Administrator. (Ex. 13). On April 23, 2013, BP timely filed a Notice of Appeal requesting that Rocon's claim be submitted to the Appeal Panel as provided by the Agreement. (Ex. 4 at 62-64). BP and Rocon conducted the arbitration in the prescribed manner with each submitting their respective position to the single-member Panel. (Exs. 4, 5, 6, 7, 8. 9, 10). On September 19, 2013, the Panel's Decision was issued which established a Compensation Amount of $142,576.07 and a .25 Risk Transfer Premium Multiplier, (RTP). (Ex. 11). Based on the Panel's Decision, a Post-Appeal Eligibility Notice was issued by the Claims Administrator on September 20, 2013, which totaled $157,178.67 with the 5% Review Cost increase in the Post-Appeal Compensation Amount. (Ex. 12). BP did not make a Request for Discretionary Court

1

Review as allowed under the Agreement and governing Rules. (Sec. 6.6, Doc. 10185-1 at 3-4). Rocon now seeks confirmation of the Panel's Decision by the District Court.

On October 2, 2013, the United States Fifth Circuit Court of Appeals issued its opinion <u>In re: Deepwater Horizon</u>, 2013 US App. LEXIS 20188 (5th Cir. 2013), which reversed the District Court's ruling and "instruct[ed] the district court to expeditiously craft a narrowly-tailored injunction. . . ." <u>Id.</u> at *59. In keeping with the Fifth Circuit's instructions, the District Court issued a Preliminary Injunction Related to BEL Claims on October 18, 2013, which required the Claims Administrator to temporily suspend action on Business Economic Loss claims then pending at any stage in the Claims Appeal Process. (Docs. 11697 and 11790). In response to a subsequent order of the Fifth Circuit, the Court revised its preliminary injunction on December 5, 2013 and issued an order maintaining the December 5 Order on December 24, 2013. (Doc. 12055). Although Rocon's Post-Appeal Eligibility Notice had been issued prior to the Fifth Circuit's opinion, it had not been paid and payment is presently being withheld based on the subsequent Preliminary Injunction. (Docs. 11697, 11790, 12055). <u>See</u>, <u>also</u>, <u>In re: Deepwater Horizon</u>, 2013 US App. LEXIS 20188.

## STANDARD OF REVIEW

This motion seeks confirmation of an arbitration award issued by a single arbitrator under the authority provided in the Settlement Agreement between BP and the Economic Class Members, which includes the movant, Rocon, Inc., (Rocon).

There is a strong presumption in favor of arbitration under the Federal Arbitration Act, (FAA), which requires an expedited and summary hearing of motions to enforce arbitration and arbitration awards. <u>See</u>, <u>Grant v. Houser</u>, 469 Fed. Appx. 310, 315 (5th Cir. 2012), *citing*, <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). <u>See</u>, <u>also</u>, 9 U.S.C. §2. As stated in <u>Grant</u>:

> "[T]here is a strong presumption in favor of arbitration under the FAA. *See 9 U.S.C. § 2; see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983).* Accordingly, **for ruling**

2

> on a motion to compel arbitration, the FAA requires "an expeditious and summary hearing, with only restricted inquiry into factual issues". *Moses H. Cone Mem'l Hosp., 460 U.S. at 22.* The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence. *See Banks, 156 F. App'x at 712.* (emphasis added).

469 Fed Appx. at 315. Therefore, the Court's consideration of this motion should be expeditiously heard and subject to a restricted inquiry into the factual issues. Id.

An agreement to settle a claim, i.e., a settlement agreement, is a contract. See, e.g., Alford v. Kuhlman Elec. Corp., 716 F.3d 909, 912 (5th Cir. 2013)(settlement agreements are contracts); Guidry v. Halliburton Geophysical Services, Inc., 976 F.2d 938, 940 (5th Cir. 1992)(a settlement agreement is a contract); In re Raymark Indus., Inc., 831 F.2d 550, 553 (5th Cir. 1987)(settlements are contracts). Where a settlement agreement is clear and unambiguous, interpretation is a question of law and the contract's language is to be given its plain meaning. See, Alford, 716 F.3d at 712; Nat'l Union Fire Ins. Co. v. Circle, Inc., 915 F.2d 986, 989 (5th Cir. 1990); Turner Marine Fleeting v. Quality Fab & Mech., 2002 U.S. Dist. LEXIS 24258 (E.D. La. 2002). If the agreement is ambiguous, the court's interpretation is subject to review only for clear error and the court may consider extrinsic evidence as part of its interpretation. Id.

Courts should be mindful of the "national policy favoring arbitration" as embodied in the FAA. See, e.g., Nitro-Lift Techs., LLC v. Howard, 133 S. Ct. 500, 502, 133 S.Ct. 500, 501, 184 L. Ed. 2d 328, 331 (2012); AT&T Mobility, LLC v. Concepcion, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011); Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc., 666 F.3d 932, 936 (5th Cir. 2012). As stated in AT&T Mobility:

> "[T]he FAA was designed to promote arbitration. They have repeatedly described the Act as '**embod[ying] [a] national policy favoring arbitration**,' *Buckeye Check Cashing, 546 U.S., at 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038,* and 'a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary,' [citations omitted] Thus, in *Preston* v. *Ferrer,* holding preempted a state-law rule requiring exhaustion of administrative remedies before arbitration, we said: '**A prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results,'** which objective would be 'frustrated' by requiring a dispute to be heard by an agency first. *552 U.S., at 357-358, 128 S. Ct. 1396, 170 L. Ed. 2d 254.*

**Federal Arbitration Act is designed to promote arbitration.**" (emphasis added).

131 S.Ct. at 1749, 179 L.Ed.2d at 755.  Accordingly, if the Settlement Agreement contains a dispute resolution provision that constitutes an arbitration agreement, the Court should enforce it to the fullest, consistent with the national policy embodied in the FAA. Id.

The initial question of whether the parties have an agreement to arbitrate is one for the Court to decide. See, Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); Armstrong v. Assocs. Int'l Holding Corp., 242 Fed. Appx. 955, 957 (5th Cir. 2007); Klein v. Nabors Drilling USA, LP, 710 F.3d 234 (5th Cir. 2013).  As stated in Armstrong:

> "**To determine whether the parties agreed to arbitrate a dispute, the district court considers: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement.** *Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996).* **When a contract contains an arbitration clause, there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'**" (emphasis added).

242 Fed. Appx. 955, 957.  See, also, AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) (*quoting* Steelworkers v. Warrior & Gulf Navigation Co ., 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960).

When deciding whether the parties agreed to arbitrate the dispute, the Court must give due regard to the federal policy favoring arbitration. See, Webb v. Invertacorp., Inc., 89 F.3d 252, 258 (5th Cir. 1996).  Normally, arbitration agreements are contractual and parties who submit to such an agreement are bound by its terms. See, Am. Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 537 (5th Cir. 2003).  The enforceability of an arbitration clause is governed exclusively by the FAA. See, Beverly Enterprises-Mississippi v. Powell, 244 Fed. Appx. 577, 579 (5th Cir. 2012); Sam Reisfeld & Son Import Co. v. Eteco, 530 F.2d 679, 681 (5th Cir. 1976). The FAA creates a body of federal substantive law establishing and regulating the duty to honor

an agreement to arbitrate. See, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 942, 74 L.Ed.2d 765, 786 fn. 32 (1983).

Under the mandate of the Federal Arbitration Act, the party seeking to compel or enforce arbitration need only prove the existence of the agreement to arbitrate by a preponderance of the evidence. See, Grant, 469 Fed. Appx. at, 315; Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 297 (5th Cir. 2004); Banks v. Mitsubishi Motors Credit of Am., 156 Fed. Appx. 710, 712 (5th Cir. 2005)(arbitration agreement proven by preponderance of the evidence). Once the preponderance bar is crested, "the burden shifts to the party opposing arbitration to demonstrate either that the agreement is invalid or, at a minimum, to allege the dispute is outside of the agreement's scope." See, Grant, 469 Fed. Appx. at, 315, citing, Carter, 362 F.3d at 297.  The party seeking to avoid arbitration must prove that the arbitration clause was the product of fraud, coercion or such ground as exists at law or in equity for revocation of contracts. Id.  As stated in Washington Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260 (5th Cir. 2004):

> "The FAA expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). **Courts conduct a bifurcated inquiry to determine whether parties should be compelled to arbitrate a dispute.** *Id.* **First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable.** *Id.*" (emphasis added).

364 F.3d at 263. "Underlying an evaluation of the existence and validity of any such agreement is a strong federal policy favoring the enforcement of arbitration agreements in commercial and maritime matters." See, Alsem Indus. v. M/V Nick, 1999 U.S. Dist LEXIS 20109 *5 (E.D. La. 1999); Cargill Ferrous International v. The M/V Anatoli, 935 F. Supp. 833, 837 (E.D. La. 1996), citing, Sheason/American Express, Inc. v. McMahon, 482 U.S. 220, 226, 207 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987).

If there is any ambiguity regarding the scope of arbitration, courts must apply a presumption in favor of arbitration. See, QPro, Inc. v.  RTD Quality Servs. USA, 761 F.Supp.2d

492, 497 496-97 (S.D. Texas 2011). In determining whether a particular issue is to be arbitrated, courts should construe the parties' intentions "generously". See, Tricon Energy Ltd. v. Vinmar Int'l, Ltd., 718 F.3d 448, 458 (5th Cir. 2013). It is this standard of review that applies in deciding whether the Settlement Agreement contains an arbitration provision and whether the panel's decision in favor of Rocon is an arbitration award which is entitled to be confirmed under the provisions of the Federal Arbitration Act.

## ARGUMENT

### I.   THE AGREEMENT'S APPEAL PROCESS, AS SET OUT IN SECTION 6, IS AN ARBITRATION AGREEMENT SUBJECT TO THE FEDERAL ARBITRATION ACT AND THE RESULTING AWARD IS BINDING ON THE PARTIES.

By this motion, Rocon seeks confirmation of the Panel's Decision as an arbitration award that is subject to the Federal Arbitration Act, (FAA). 9 U.S.C. §§1-9. If the Panel Decision is an arbitration award, Rocon submits that it must be confirmed and enforced under the FAA.

### A.   The Settlement Agreement Is Governed By Maritime Law And The Arbitration Agreement Contained Therein Is Subject To The Federal Arbitration Act, 9 U.S.C.S. §1 *et al.*

The underlying dispute arises out of a blowout, explosion and fire that occurred aboard the *Deepwater Horizon* semi-submersible offshore drilling rig on April 20, 2010, while the rig was engaged in drilling activities on the "Macondo Well" on the Outer Continental Shelf off the coast of Louisiana. (Doc. 8138 at 1). The parties to the Settlement Agreement agreed that General Maritime Law would be applied to interpretation of the Agreement. (Settlement Agreement at Sec. 36.1). The parties to an agreement may agree to a choice-of-law provision, which will be upheld as long as the selected law does not undermine the goals and policies of the FAA. See, ASW Allstate Painting & Constr. Co. v. Lexington Ins. Co., 188 F.3d 307, 310 (5th Cir. 1999). The Settlement Agreement resolved disputes arising out of a controversy that is subject to the admiralty jurisdiction of the Court. See, In re: Oil Spill, 808 F.Supp.2d 943, 951 (E.D. La. 2011). Section 1 of the FAA provides, in part:

> "'**Maritime transaction**s', as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, **collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction;**" (emphasis added).

9 U.S.C. §1.   The facts giving rise to the underlying controversy and the written agreement of the parties both support a finding that the Settlement Agreement is a "maritime transaction" as defined by the FAA.

Under §2 FAA, a written arbitration clause in a contract to settle a controversy arising out of a maritime transaction is valid and enforceable.   Section 2 of the FAA provides:

> "**A written provision in any maritime transaction** or a contract evidencing a transaction involving commerce **to settle by arbitration a controversy thereafter arising out of such contract or transaction,** or the refusal to perform the whole or any part thereof, **or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable,** save upon such grounds as exist at law or in equity for the revocation of any contract." (emphasis added).

9 U.S.C. §2.   Such arbitration provisions are governed by the FAA. <u>See</u>, 9 U.S.C.S. §§1-2.   <u>See, also</u>, <u>Citizens Bank v. Alafabco, Inc.</u>, 539 U.S. 52, 56, 2123 S.Ct. 2037, 156 L.Ed.2d 46 (2003); <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 121 S.Ct. 1302, 1307, 149 L.Ed.2d 234 (2001); <u>Grant v. Houser</u>, 469 Fed. Appx. at 313.   Therefore, the Settlement Agreement, with its dispute resolution clauses, should be enforced by the Court under the provisions of the FAA. <u>Id.</u>

## B. The Dispute Resolution Procedure Established By Section 6, CLAIMS APPEAL PROCESS, Is An Arbitration Agreement.

Section 6 of the Settlement Agreement contains a written agreement of the parties for the final resolution of certain disputes arising under the Agreement with the resolution to be made by impartial panelists. (Settlement Sec. 6 at 55-61).   As stated in Section 5.11.4:

> "**Claimants shall have the right to appeal the determination related to the denial or award of a Total Compensation Amount pursuant to the Appeal Process as more fully set forth in Section 6 below**." (emphasis added).

(Settlement Sec. 5.11.4).  In like manner, if BP is dissatisfied with an award, BP can appeal to an Appeal Panel.[1] (Settlement Sec. 6.1.2.4).  Section 6.1.2.4 provides:

> **"The BP Parties may Appeal a final compensation award determination only where the Compensation Amount determined by the Settlement Program is in excess of $25,000.  The BP Parties shall receive notice of an award on the same date that notice is provided to the Economic Class Member and shall have the following time periods within which to exercise their Appeal right for Claims** in the following monetary ranges: (a) for awards of $25,000 to $250,000 the BP Parties shall have ten days from the date of notice of the award to Appeal; (b) for awards of $250,001 to $500,000 the BP Parties shall have fifteen days from the date of notice of the award to Appeal; and (c) for awards of greater than $500,001 the BP Parties shall have twenty days from the date of the notice of the award to Appeal."

(Settlement Sec. 6.1.2.4).  In either case, once the Claims Administrator issues an Eligibility Notice, the only dispute resolution procedure available to either party is by an Appeal Panel. (Settlement Sec. 6).  Rocon submits the process set out in Section 6 is an arbitration agreement.

Arbitration is a "method of dispute resolution involving one or more neutral third parties who are usually agreed to by the disputing parties and whose decision is binding." Black's Law Dictionary, 119 (9th ed. 2009). As stated in <u>GMC v. Pamela Equities Corp.</u>, 146 F.3d 242, 246 (5th Cir. 1998):

> **"Arbitration is the reference of a particular dispute to an impartial third person chosen by the parties to a dispute who agree, in advance, to abide by the arbitrator's award issued after a hearing at which both parties have an opportunity to be heard."** (emphasis added).

146 F.3d at 246. <u>See, also</u>, <u>American Federation of State, County and Municipal Employees, Local 1902, AFL-CIO v. Metropolitan Water District of Southern California</u>, 126 Cal. App. 4th 247, 257-58, 24 Cal. Rptr. 3d 285, 291 (Cal. App. 2005).  As stated in <u>American Federation</u>:

> "One appellate court surveyed the various definitions of arbitration and quoted from Black's Law Dictionary that arbitration is ' **"[a] process of dispute resolution in which a neutral third party (arbitrator) renders a decision after a hearing at which both parties have an opportunity to be heard.** Where

---

[1]    Under the Agreement, BP waived its right to challenge any award that does not exceed $25,000. (Settlement Sec. 6.1.2.4).

8

arbitration is voluntary, the disputing parties select the arbitrator who has the power to render a binding decision." [Citation.]' [Citations.] ... '[A]lthough [an] **arbitration can take many procedural forms, a dispute resolution procedure is not an arbitration unless there is [1] a third party decision maker, [2] a final and binding decision, and [3] a mechanism to assure a minimum level of impartiality with respect to the rendering of that decision.'** (emphasis added).

126 Cal. App. 4th at 257-58, 24 Cal. Rptr. 3d at 291.  See, also, Hooters of America, Inc. v. Phillips, 39 F. Supp. 2d 582, 618-19 (D S.C. 1998); Prasad v. Bullard, 51 So.3d 35, 38 (La. App., 5 Cir. 2010); Kabia v. Koch, 713 N.Y.S. 2d 250, 254 (Civ. Ct. N.Y. 2000); Cheng-Canindin v. Renaissance Hotel Associates, 50 Cal. App. 4th 676, 684, 57 Cal. Rptr. 2d 867, 872 (Cal. App. 1996).  Given the thousands of awards envisioned by the parties, it was prudent that a method be agreed upon to address dissatisfaction by the Claimant or BP.  It was and is impractical that each dispute be presented to the Court for resolution.  Hence the parties agreed, in writing, to a dispute resolution method to address each separate award or denial of an award with the resolution to be by a neutral panel and binding on the parties.  See, Section 6 of the Settlement Agreement.

Section 6 does not use the word "arbitration", but such particularity is not needed.  No particular language is necessary to create an arbitration agreement.  See, American Federation, 126 Cal. App. 4th at 257-58, 24 Cal. Rptr. 3d at 291.  As stated in American Federation:

> "The MOU section 6.7 **does not mention the words arbitration, arbitrate, or arbitrator. However, the absence of this terminology is not a determining factor in deciding whether the agreement is one for arbitration.** (*Cheng-Canindin v. Renaissance Hotel Associates (1996) 50 Cal.App.4th 676, 683-684 [57 Cal. Rptr. 2d 867]*, quoting *Painters Dist. Council No. 33 v. Moen (1982) 128 Cal. App. 3d 1032, 1036 [181 Cal. Rptr. 17]*.) '**More important is the nature and intended effect of the proceeding.**'" (emphasis added).

126 Cal. App. 4th at 257-58, 24 Cal. Rptr. 3d at 291.  It is not required that an agreement contain the word "arbitration" nor any specific terminology to create a valid arbitration agreement.  Id.

If the agreement creates an arbitration process, regardless of the terminology, the agreement should be acknowledged as an arbitration agreement.  Id. See, also, Cheng-Canindin, 50 Cal. App. 4th at 684, 57 Cal. Rptr. 2d at 872.  Arbitration proceedings are not held to the same technical rules of pleading and evidence as lawsuits in federal courts. See, e.g., Swift Industries,

Inc. v. Botany Industries, Inc., 466 F.2d 1125, 1129 n.10 (3d Cir. 1972); American Almond Produ. Co. v. Consolidated Pecan S. Co., 144 F.2d 448 (2nd Cir. 1944); Tokura Constr. Co. v. Corporacion Raymond, S.A., 533 F.Supp. 1271, 1278 (S.D. Tex. 1982). When considering an agreement, the Court must be mindful of the federal policy under the FAA, which "requires a liberal reading of arbitration agreements." See, Moses H. Cone Mem'l Hosp., 460 U.S. 1, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785. "The Fifth Circuit is resoundingly clear that all doubts concerning arbitration are resolved in favor of arbitration, so strong is the presumption in favor of it." See, Shales v. Discover Card Servs., 2002 U.S. Dist. LEXIS 16502 *6 (E.D. La. 2002), citing, Investment Partners v. Glamour Shots, 298 F.3d 314, 316 (5th Cir. 2002).

Sections 5.11.4 and 6.1.2.4 of the Settlement Agreement allow BP or the Claimant to invoke the dispute resolution process if either is dissatisfied with a decision of the Claims Administrator.[2] See, Sections 5.11.4 and 6.1.2.4. Section 6.1.2.2 allows an aggrieved Claimant to dispute the Claims Administrator's determination by appealing to a neutral single-member panel or a three-member panel, who has the authority to consider the evidence, weigh arguments and make a final decision. See, Section 6.1.2.2.1. The Settlement Agreement provides:

> "Appeals shall be heard by either a single-member **APPEAL PANEL** or a three-member Appeal Panel depending on the value of the Claim being appealed." (emphasis in original).

Section 6.1.2.2.1. If the Claim amount is under $1,000,000, the parties agreed the dispute would be resolved by a single person denominated as the "single-member Appeal Panel". See, Section 6.1.2.2.5.1. Where the amount of the Claim is $1,000,000 or more, the parties agreed the dispute would be resolved by a three-member Appeal Panel. See, Section 6.1.2.2.5.2.

---

[2]      Section 6.1.1.1 allows a Claimant to seek review of a decision to deny a claim based on insufficient documentation. The review is by a separate Documentation Reviewer, assigned by the Claims Administrator for that purpose. This review is without prejudice to the Claimant's right to resubmit the claim prior to termination of the Settlement Agreement. Because this review of documentation is still within the Claims Administrator's claims handling process, it is not final or binding on the Claimant. Therefore, it is not part of the arbitration process. (Sec. 6.1.1.1).

The Settlement allows the Claimant to seek review of any denial or award by the Claims Administrator within 30 days of the issuance of a final written notice from the Settlement Program of a determination. See, Section 6.1.2.3. In like manner, BP may dispute any award in excess of $25,000 that is made to a Claimant by the Claims Administrator by timely filing a notice of appeal; thereby invoking arbitration. See, Section 6.1.2.4. The arbitrator or arbitrators considers the dispute *de novo*. See, Section 6.4. The mechanism for considering a dispute is specified and provides for neutrality in the decision making; to-wit:

> "6.2 Appeals Compensation Method. **All Appeals where the issue is the Compensation Amount shall be conducted using a baseball process** in which the Claimant and the BP Parties exchange and submit in writing to the Appeal Panelist or Appeal Panel their respective proposals ("Initial Proposal") for the base Compensation Amount they propose the Claimant should receive. **The Appeal Panelists or Appeal Panel may consider only the following documentation: the Initial and Final Proposal and any memorandum in support thereof; the complete record of the Claimant in the Settlement Program; the Agreement and all of its attachments; Court rulings on similar issues; and prior Appeal rulings on similar issues.** . . . . The Claimant and the BP Parties may choose to reach a compromise at any point up to the time the Appeal Panelist or Appeal Panel issues its decision. **Once the Appeal Panelist or Appeal Panel issues a decision, it shall be final. The base compensation amount will then be presented to the Claims Administrator to further process the Claim as appropriate.**" (emphasis added).

Section 6.2. The Settlement Agreement further requires neutral and impartial procedures to be applied to the dispute resolution process as set out in Exhibit 25 to the Agreement. See, Section 6.3. The Exhibit 25 procedures may be supplemented by additional procedures as necessary by the Settlement Program so long as the additions are not inconsistent with Exhibit 25. Id. The Claims Administrator issued extensive procedures and rules for the filing and briefing of appeals to the panels, which assure neutrality and uniformity in the arbitration process. See, Doc. 6430-44 at 126-127; Rules Governing the Appeals Process, DWH 128-142; Order Establishing Rules Governing Discretionary Court Review of Appeal Determinations, Doc. 10185 at DWH 143-148. Whether the Claimant or BP initiates the dispute resolution process, the requirement that

the parties follow uniform procedures assures a measure of impartiality in the rendering of decisions. See, Section 6.3. This mechanism assures impartiality with respect to the rendering of arbitral decisions. See, Hooters of America, 39 F. Supp. 2d at 618-19; Prasad, 51 So.3d at 38; Kabia, 713 N.Y.S. 2d at 254; American Federation, 126 Cal. App. 4th at 257-58, 24 Cal. Rptr. 3d at 291; Cheng-Canindin, 50 Cal. App. 4th at 684, 57 Cal. Rptr. 2d at 872.

The Settlement Agreement provides that the decision makers, whether comprised of a single-member or a three-member panel, are drawn from a pool of between 10 to 20 persons from a list of at least 30 individuals who were jointly selected by the parties for their experience and qualifications. See, Section 6.1.2.2.3. If there are vacancies, the parties to the Agreement nominate additional candidates. Id. If one panelist is to decide the disputed claim, the individual is selected randomly from the list of approved decision makers. See, 6.1.2.2.5.1. If a three-member panel is to decide the dispute, one of the members is randomly selected from a sub-list of panelists from the Claimant's home state and the other two members are randomly selected from the remaining pool of decision makers. Id. Where the parties have agreed to a method for selecting the arbitrator(s), that method should be honored by the court so long as the parties abide by its terms of the selection process. See, Bulko v. Morgan Stanley DW, Inc., 450 F.3d 622, 625 (5th Cir. 2006)(arbitrators must be selected pursuant to the method provided in the agreement); Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co. 304 F.3d 476, 489-90 (5th Cir. 2002)(FAA provides that parties may determine the method of selecting arbitrators); Brook v. Peak Int'l, Ltd., 294 F3d 668, 673 (5th Cir. 2002)(courts generally enforce arbitrator selection clauses strictly allowing for 'trivial departures'). If agreed in the arbitration agreement, the Court can be directly involved in naming the arbitrator(s) and can even name one or more of the arbitrators. See, e.g., In re Travelers Indem. Co., 2004 U.S. Dist LEXIS 30074 (D. Conn. 2004)(arbitrator agreement was honored by the court that directed that an arbitrator be named by the judge of the federal district court having jurisdiction). This process assures disputes are decided by neutral and competent panelists that are selected in a manner agreed by the parties.

Valid arbitration agreements must provide that the decision of the arbitrator(s) is final and binding on the parties.  See, e.g, Hooters of America, 39 F. Supp. 2d at 618-19; American Federation, 126 Cal. App. 4th at 257-58, 24 Cal. Rptr. 3d at 291; Kabia, 713 N.Y.S. 2d at 254; Cheng-Canindin, 50 Cal. App. 4th at 684, 57 Cal. Rptr. 2d at 872.   This requirement is specifically addressed in Section 6.2, which states, in pertinent part:

> "The Claimant and the BP Parties may choose to reach a compromise at any point up to the time the Appeal Panelist or Appeal Panel issues its decision. **Once the Appeal Panelist or Appeal Panel issues a decision, it shall be final.** The base compensation amount will then be presented to the Claims Administrator to further process the Claim as appropriate." (emphasis added).

Section 6.2.   Under the Settlement Agreement, once the Claims Administrator issues an Award or Denial of a claim, BP or the Claimant, in this case Rocon, can challenge the Claims Administrator's decision before a neutral panel of arbitrators, who are empowered to make a final and binding decision on the issues. Id.

This process is a form of arbitration. See, GMC, 146 F.3d at 246.  In accordance with FAA requirements and the federal policy favoring arbitration, the arbitration provisions of the Settlement Agreement are due to be enforced and the Panel's Decision should be confirmed as an arbitration award. See, e.g., Nitro-Lift Techs., 133 S. Ct. 500, 133 S.Ct. 500, 184 L. Ed. 2d 328; AT&T Mobility, 131 S.Ct. 1740, 179 L.Ed.2d 742; Moses H. Cone Mem'l Hosp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765; Volvo Trucks N. Am., 666 F.3d 932.

## II.   THE ARBITRATOR'S AWARD, AS ISSUED BY THE APPEAL PANEL ON SEPTEMBER 29, 2013, IS FINAL AND DUE TO BE CONFIRMED UNDER THE FEDERAL ARBITRATION ACT.

Rocon submitted its Settlement Registration Claim Form and Business Economic Loss Claim Form on June 4, 2013. (Exs. 1, 2).  Rocon presented its supporting contemporaneous financial data, kept on an accrual basis of accounting, which was reviewed, reconciled and approved by the Claims Administrator. (Ex. 7 at 84).   On April 12, 2013, the Claims Administrator issued an Eligibility Notice which determined that Rocon's claim qualified for

payment and set the Award Amount at $150,049.87. (Ex. 3, 7 at 83). Rocon properly executed the Full and Final Release, Settlement, and Covenant Not to Sue and timely returned it to the Claims Administrator. (Ex. 13).  On April 23, 2013, BP timely filed a Notice of Appeal requiring Rocon to submit to arbitration by the Appeal Panel as provided by the Agreement. (Ex. 4).

BP initiated the arbitration and both parties participated in the prescribed manner with each party submitting its position to the single-member arbitration panel. (Exs. 5, 6, 7, 8, 9, 10). Rocon prevailed in arbitration and a Panel's Decision or arbitrator's award was issued September 19, 2013 by the arbitrator. (Ex. 11).  In accordance with Rule 17 (e) of the Rules Governing the Appeals Process, the Claims Administrator issued a Post-Appeal Eligibility Notice on September 20, 2013, which totaled $157,178.67. (Ex. 12). See, R. G. App. Pro. Rule 17(e).

Pursuant to Rule 14 of the Rules Governing Discretionary Court Review of Appeal Determinations, BP was allowed to request discretionary review by the Court by submitting its request within fourteen (14) days of notice of the Panel's Decision. See, R.G. Dis. Ct. Rev. Rules 13 and 15.  BP did not seek discretionary review by the Court.  At this point, the arbitration process is ended and the resulting award should be confirmed by the Court.

Section 9 of the Federal Arbitration Act provides for confirmation of arbitration awards, in part, as follows:

> **"If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitrate  on may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this *title [9 USCS §§ 10, 11]*."** (emphasis added).

9 U.S.C. §9.  A motion or application to confirm an arbitration award is timely made if made within one year of the date of the award. Id.  Under Section 18.1, the United States District Court for the Eastern District of Louisiana has jurisdiction to enforce the Settlement Agreement, including the arbitration provisions of Section 9. See, Section 18.1.  Therefore, this motion to confirm is properly brought before this Court seeking to enforce the arbitration award of

14

September 19, 2013. <u>See</u>, 9 U.S.C. §6 (motion or application to court under FAA shall be made and heard in the manner provided for motions).

The question of whether the parties have an agreement to arbitrate is one for the Court to decide. <u>See</u>, <u>Southland Corp.</u>, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1; <u>Armstrong</u>, 242 Fed. Appx. at 957; <u>Klein</u>, 710 F.3d 234.  As stated in <u>Armstrong</u>:

> **"To determine whether the parties agreed to arbitrate a dispute, the district court considers: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement.** *Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996).*  **When a contract contains an arbitration clause, there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"** (emphasis added).

242 Fed. Appx. 955, 957.  <u>See</u>, <u>also</u>, <u>AT&T Tech.</u>, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648, *citing*, <u>Steelworkers</u>, 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409.

When a contract contains an arbitration provision, "there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute.'" <u>See</u>, <u>Armstrong</u>, 242 Fed. Appx. at 957.  In the instant matter, the Settlement Agreement is signed by and binding upon BP. (Doc. 6430 at 118).  The evidence presented, including BP's initiating and then actively engaging in the arbitration process, is more than sufficient to establish that the parties entered into a binding arbitration agreement regarding Rocon's claim. <u>See</u>, Settlement Agreement, Doc. 6430. <u>See</u>, <u>also</u>, <u>Grant</u>, 469 Fed. Appx. at, 315; <u>Carter</u>, 362 F.3d at 297; <u>Banks</u>, 156 Fed. Appx. at 712.  Section 6 of the Settlement Agreement is an arbitration agreement.  As such, the first question in <u>Armstrong</u> of whether a valid arbitration agreement exists is answered in the affirmative. <u>See</u>, <u>Armstrong,</u> 242 Fed. Appx. at 957.

The remaining question is whether the dispute between Rocon and BP falls within the scope of the arbitration provision of the Settlement Agreement. <u>Id.</u>  While it is true that the Court

is charged to apply liberality in favor of arbitration and to "generously" construe the parties' intention in favor of arbitration, in the instant matter, it is not difficult to divine the parties' intent to resolve disputes by submission to one or more neutral third-parties who renders a binding and final resolution. See, Moses H. Cone Mem'l Hosp., 460 U.S. 1, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785; Tricon Energy, 718 F.3d at 458; QPro, 761 F.Supp.2d at 496-97. Once the two questions have been answered in the affirmative, the proponent of arbitration has met the burden. See, Grant, 469 Fed. Appx. at, 315, *citing*, Carter, 362 F.3d at 297.  As stated in Grant:

> "The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence. *See Banks, 156 F. App'x at 712.*"
>
> *          *          *          *
>
> **"Because of the strong presumption in favor of arbitration, the burden shifts to the party opposing arbitration to demonstrate either that the agreement is invalid or, at a minimum, to allege the dispute is outside of the agreement's scope."** (emphasis added).

469 Fed. Appx. at, 315.  The burden is on BP to prove the Agreement is invalid or the Claims Administrator's determination for Rocon is outside the scope of the arbitration agreement. See, 469 Fed. Appx. at, 315, *citing*, Carter, 362 F.3d at 297; ASW Allstate Painting & Constr. Co. v. Lexington Ins. Co., 188 F.3d 307, 311 (5th Cir. 1999)(if party opposes arbitration and denies validity of agreement, the burden is on said party to prove invalidity).  This BP cannot do.

The Settlement Agreement allows BP or the Claimant to challenge the Claims Administrator's Award to Rocon. See, Section 5.11.4 and Section 6.1.2.4.  BP elected to participate in the arbitration process when it entered the Settlement Agreement and again when it filed a Notice of Appeal requesting Rocon's claim be submitted to an Appeal Panel. (Doc. 6430; Rocon at 62-64).  Under Section 6.1.2.4, the scope of the arbitration is described as:

> **"The BP Parties may Appeal a final compensation award determination only where the Compensation Amount determined by the Settlement Program is in excess of $25,000."** (emphasis added).

Section 6.1.2.4 Doc. 6430-1 at 62.   Rocon's Award exceeded $25,000. (Ex. 3).   BP elected to invoke arbitration and gave as its grounds that the Claims Administrator's Award for Rocon was improper and should be rejected by the arbitrator. (Exs. 4, 5, 8).   Without question, the scope of the arbitration was precisely within the scope set out in Section 6.1.2.4 and R. G. App. Pro. Rule 7 (b). <u>Compare</u>, Section 6.1.2.4 and R. G. App. Pro. Rule 7 (b) with BP's Notice of Appeal.   (Ex. 4).   There can be no doubt that the scope of the arbitration was within the scope permitted by the Settlement Agreement and the second question in <u>Armstrong</u> is also answered in the affirmative. <u>See</u>, <u>Armstrong</u>, 242 Fed. Appx. at 957.   Hence, it is clear that the parties have an agreement to arbitrate certain disputes that may arise under the Settlement Agreement and that the arbitration of such a dispute (i.e. Rocon's Award) was conducted within the scope of said agreement.

BP cannot contend the Settlement Agreement is invalid.   BP induced Rocon and thousands of other businesses to join the settlement and enter into releases in favor of BP.   BP did this by contracting to honor and be bound by the terms of the Settlement Agreement. (Doc. 6430-1 at DWH-123).   One of the contractual commitments made by BP is in Section 17.1, which states:

> **"The Parties agree to support the final approval and implementation of this Agreement and defend it against objections, appeal, or collateral attack.** Neither the Parties nor their Counsel, directly or indirectly, will encourage any person to object to the Economic and Property Damages Settlement. Nothing in this Agreement shall impair BP's right to take any action to defend itself in any trial where BP is a party." (emphasis added).

Section 17.1.  BP's only reservation to this promise was that BP would be allowed to defend itself in trials where BP was a party. <u>Id</u>.  Any objection or attack by BP on the validity of this Agreement is a breach of contract and a denial of Rocon's benefit of the bargain as promised by the Settlement Agreement.[3]

---

[3]   Rocon submitted its Settlement Registration Claim Form on June 4, 2012. (Ex. 1).   At that time, Rocon could have opted out of the Settlement, but chose to participate based on the terms of the Agreement and the contractual promises made by BP.   Every action taken by BP

BP's covenant not to object, appeal or collaterally attack was made after extensive negotiations and with full knowledge of the rights being surrendered.  As stated in Recitals D and F of the Settlement Agreement:

> "D.    Plaintiffs contend they would prevail in litigation. **BP disputes and denies the Plaintiffs' claims, has raised various affirmative and legal and other defenses, and contends that it would prevail in litigation.**
>
> \*            \*            \*            \*
>
> F.    **BP has concluded that, in light of the costs, risks, burden, and delay of litigation, Settlement in this complex litigation is appropriate.  In this regard, BP and BP's Counsel agree that this Agreement is fair, reasonable, and an adequate resolution of the Deepwater Horizon Economic Litigation."** (emphasis added)

Recitals D & F.  BP had full knowledge that it had affirmative defenses to Plaintiffs' claims and further believed it would prevail in the litigation. (Recital D).  BP was aware of its rights to defend against the Plaintiffs' claims.

BP freely and voluntarily entered into the Settlement Agreement, by which it gained the enormous benefit of resolution of the subject disputes with the Economic Loss Class. (Settlement Agreement).  In consideration of the benefits received, BP voluntarily surrendered certain rights; for example, the right to defend the underlying dispute and to "prevail in litigation".  Another right BP voluntarily surrendered was the right to "objection, appeal, or collateral attack" the Settlement Agreement. (Section 17.1).  Such a knowing, intelligent and voluntary surrender of rights constitutes a waiver of those rights under the law. <u>See</u>, e.g.,<u>v. Fly</u>, 136 F.2d 578, 580 (5th Cir 1948)(Waiver is intentional relinquishment of known right); <u>Robertson v. J.C. Penney Co., Inc.</u>, 484 F.Supp.2d 561, 567 (S.D. Miss. 2007)(voluntary waiver made with knowledge of the rights waived is binding on party); <u>Rolls Royce Industrial Power v. M.V. Fratzis M.</u>, 1995 U.S. Dist. LEXIS 22219 *36 (S.D. N.Y. 1995)(voluntary and explicit surrender of known right is wavier and is enforceable).  When this promise was made, both BP and Plaintiffs knew there

---

to object, appeal and attack the settlement is in violation of BP's promises and a breach of contract.  BP is contractually forbidden to object, appeal or attack its obligations under the Settlement – it should honor its agreement.

were risks associated with the settlement.   BP admits this knowledge and voluntarily went forward with the settlement.   As part of the Agreement, BP agreed to defend the settlement against "objections, appeal, or collateral attack" and, by extension, not to participate in the making of such "objections, appeal, or collateral attack". (Section 17.1).   BP's agreement is a knowing, intelligent and intentional waiver of its right to object, appeal or collaterally attack the Settlement Agreement and BP should be bound by its contract.

BP expressly agreed that the terms of the Agreement, including all Recitals and the dispute resolution provisions of Sections 6 and 17.1, are contractual and not mere recitals. See, Section 26.1. As stated in Section 26.1:

> Plaintiffs, the Economic Class, and each Economic Class Member and the **BP Parties expressly agree and each agree that the terms of this Agreement, and all provisions hereof, including all representations, promises, agreements, covenants and warranties, and including the Exhibits thereto, are contractual and not a mere recital and shall survive the execution of this Agreement.** (emphasis added).

Section 26.1.  BP is contractually obligated to support the validity of the Agreement and part of that obligation is to support and abide by the arbitration clause set out in the Settlement.  By its contractual consent, BP has waived any right to object, appeal or collaterally attack the validity of the Settlement Agreement.  Therefore, BP cannot establish that the Settlement Agreement is invalid as a grounds for resisting arbitration. See, Armstrong, 242 Fed. Appx. at 957; Klein, 710 F.3d 234  See, also, AT&T Tech., 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648, *citing*, Steelworkers, 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409.

Even if BP were not prohibited from attacking its validity as a defense to arbitration, however, it could not do so because the Agreement, including its arbitration provision, is entirely valid.  BP sought peace and reached a settlement with the Economic Loss Class Members after extensive negotiations.   As part of the resulting Settlement Agreement, BP accepted the arbitration provisions set out in Section 6.  BP exercised its rights to invoke arbitration and vigorously arbitrated the Claims Administrator's award to Rocon. (Exs. 4, 5, 6, 7, 8, 9, 10).  The

arbitrator's decision upheld the Claims Administrator's Award to Rocon. (Ex. 11). BP went no further in challenging the Award. The arbitrator's decision awarding Rocon $157,178.67 should be confirmed by order of this Court.

**III.   THE FIFTH CIRCUIT COURT OF APPEALS' OPINION MUST BE APPLIED CONSISTENT WITH CONTROLLING FEDERAL LAW AND CANNOT DISRUPT AN ARBITRATION AWARD EXCEPT ON GROUNDS PERMITTED BY SECTIONS 10 AND 11 OF THE FEDERAL ARBITRATION ACT.**

On October 2, 2013, the United States Fifth Circuit Court of Appeals issued its divided opinion In re: Deepwater Horizon, 2013 US App. LEXIS 20188 (5th Cir. 2013), which reversed the District Court's ruling and "instruct[ed] the district court to expeditiously craft a narrowly-tailored injunction. . . ." Id. at *59. The Fifth Circuit's opinion gave more instruction than direction. Id. However, the Fifth Circuit is restrained by both federal statutory law and controlling opinions of the United States Supreme Court from directing action affecting arbitration awards beyond the scope of judicial review allowed by the Federal Arbitration Act. See, AT&T Mobility, 131 S.Ct. at 1752, 179 L.Ed.2d at 758 (parties may not contractually expand the grounds or nature of judicial review of arbitration agreement); Hall Street, 552 U.S. at 584, 128 S. Ct. at 1403, 170 L. Ed. 2d at 263 (only grounds for judicial review of arbitration provided in §§10 and 11 of FAA). No action by the Fifth Circuit can adversely affect an arbitration award unless that action is consistent with the mandate of Hall Street. Id.

In the instant matter, the arbitration between Rocon and BP had reached its final resolution with an arbitrator's award issued and the amount payable calculated. (Exs. 11, 12). If interpreted to apply to Rocon's arbitration award, the Fifth Circuit's opinion would directly violate the law as set out in Hall Street. Id. In Hall Street, the United States Supreme Court rejected a contractual provision in an arbitration agreement that allowed judicial review of the arbitrator's award on grounds different from those allowed by the FAA. Id. This contractual provision stated, in part:

> "[t]he United States District Court for the District of Oregon may enter judgment upon any award, either by confirming the award or by vacating, modifying or

correcting the award.  The Court shall vacate, modify or correct any award:  (i) where **the arbitrator's findings of facts are not supported by substantial evidence, or (ii) where the arbitrator's conclusions of law are erroneous.**" App. to Pet. for Cert. 16a." (emphasis added).

552 U.S. at 579, 128 S. Ct. at 1400-01, 170 L. Ed. 2d at 260.  The <u>Hall Street</u> Court held the lower court could only vacate, modify or correct an arbitrator's decision and, even then, only on the specific grounds allowed by FAA §§10 and 11. <u>Id.</u> The Supreme Court also rejected "manifest disregard" as grounds for vacating, altering or amending an arbitrator's decision. 552 U.S. at 584, 128 S. Ct. at 1403, 170 L. Ed. 2d at 263. <u>See</u>, <u>also</u>, <u>The Householder Group v. Caughran</u>, 354 Fed. Appx. 848, 850 (5th Cir. 2009)(<u>Hall Street</u> prohibits consideration of whether arbitrators erred in questions of law or fact).  As stated in <u>Hall Street</u>:

> "**We now hold that *§§ 10 and 11* respectively provide the FAA's exclusive grounds for expedited vacatur and modification.**"
>
> \*             \*             \*             \*
>
> "Hall Street is certainly right that the FAA lets parties tailor some, even many features of arbitration by contract, including the way arbitrators are chosen, what their qualifications should be, which issues are arbitrable, along with procedure and choice of substantive law.  But to rest this case on the general policy of treating arbitration agreements as enforceable as such would be to beg the question, which is **whether the FAA has textual features at odds with enforcing a contract to expand judicial review following the arbitration.**
>
> **To that particular question we think the answer is yes, that the text compels a reading of the *§§ 10 and 11* categories as exclusive.**" (emphasis added).

552 U.S. at 584 and 586, 128 S. Ct. at 1403 and 1404, 170 L. Ed. 2d at 263 and 264.

As set out by the Fifth Circuit in <u>Martel v. Ensco Offshore Co.</u>, 449 Fed. Appx. 351 353-54 (5th Cir. 2011):

> "**Under the Federal Arbitration Act ("FAA"), there are four statutory bases upon which an arbitration award may be vacated:**
> **(1) where the award was procured by corruption, fraud, or undue means;**
>
> **(2) where there was evident partiality or corruption in the arbitrators, or either of them;**

**(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or**

**(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award [*354] upon the subject matter submitted was not made.**

*9 U.S.C. § 10(a).* **These are the exclusive grounds according to which a district court may vacate an arbitration award.** *Hall St. Assoc., L.L.C. v. Mattel, Inc., 552 U.S. 576, 584, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008)*." (emphasis added).

449 Fed. Appx. at 353-54. See, e.g., Bain v. Bank, 2013 U.S. App. LEXIS 18180 (5ᵗʰ Cir. 2013)("manifest disregard of the law" not basis for vacatur or modification); Woods v. PAM Transp., Inc.-LU, 440 Fed. Appx. 265, 269 (5ᵗʰ Cir. 2012)("manifest disregard of the law" not grounds for vacatur or modification); Citigroup Global Markets, Inc. v. Bacon, 562 F.3d 349, 358 (5ᵗʰ Cir. 2009)(judicial review of arbitration award strictly limited to grounds in FAA §§10 and 11).  A mistake of law or fact by the arbitrator is not grounds for vacating an arbitration award. See, Hamel-Schwulst v. Country Place Mortg. Ltd., 406 Fed. Appx. 906, 914 (5ᵗʰ Cir. 2010)(court cannot vacate arbitration award based on merits of party's claim or defense); Apache Bohai Corp. LDC v. Texaco China BV, 480 F.3d 397, 409-10 (5ᵗʰ Cir. 2007)(arbitrator's findings of facts must be accepted as true); Rogers v. KBR Technical Services, Inc., 2007 U.S. Dist. LEXIS 83070 *9-*10 (S.D. Tex. 2007)(mere mistake of law or fact insufficient to vacate award).

Judicial review of an arbitration award is strictly limited to the grounds permitted by the FAA, §§10 and 11.  Id.  The arbitration between Rocon and BP had been fully resolved before any of the operative Fifth Circuit opinions were issued. (Exs. 11, 12).  BP did not make a motion to vacate, alter or amend as required by the FAA.  Given the facts, no valid motion could be made by BP.  The Fifth Circuit's decision does not explicitly direct that any completed arbitration award be set aside or re-examined. See, In re: Deepwater Horizon, 2013 US App. LEXIS 20188.  While the Fifth Circuit's opinion may affect claims that have not been submitted

to and/or resolved by arbitration, it cannot expand judicial review to set aside or direct reconsideration of an arbitrator's award without running afoul of the FAA and Supreme Court's mandate in Hall Street. See, Hall Street, 552 U.S. at 584, 128 S. Ct. at 1403, 170 L. Ed. 2d at 263. See, also, Martel, 449 Fed. Appx. at 353-54; The Householder Group, 354 Fed. Appx. at 850.   The District Court should not extend the instructions of the Fifth Circuit beyond the permissible limits set out in Hall Street and the arbitrator's award should be confirmed consistent with the FAA and controlling law. Id.

## IV. THE CLAIMS ADMINISTRATOR HAS A MINISTERIAL DUTY TO PAY ROCON'S CLAIM AND SHOULD BE DIRECTED TO DO SO BY THE COURT.

Section 9 of the FAA mandates that the Court "grant an order confirming the arbitrator's award unless the award is vacated, modified or corrected as prescribed in sections 10 and 11 of this *title [9 USC §§10, 11]*." See, 9 U.S.C. §9. See, also, Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 128 S. Ct. 1396, 1402, 170 L. Ed. 2d 254 (2008).   In the instant matter, the mandate of Section 9 is further supported by the contractual provisions of the Settlement Agreement and the Court's approved Rules Governing Discretionary Court Review of Appeal Determinations.   Rule 18 of the Rules Governing Discretionary Court Review of Appeal Determinations states:

> "**If no Request has been submitted to the Appeals Coordinator on or before the 15th day following service of the Notice of Appeal Panel Decision, the Claims Administrator shall proceed with payment of the claim in accordance with the Appeal Panel decision**, or if the Appeal Panel denied the claim, the Claims Administrator shall close the claim." (emphasis added).

R. G. Dis. Ct. Rev. Rule 18.   The Panel's Decision set Rocon's Compensation Amount of $142,576.07 and the Risk Transfer Premium was a .25 Multiplier. (Ex. 11).   The Claims Administrator's duty was then to "proceed with payment". R. G. Dis. Ct. Rev. Rule 18.   To calculate the amount owed to Rocon, the Claims Administrator followed Rule 17 (e)(4) of the Rules Governing Appeals Procedure, which states:

"(e) Post-Appeal Eligibility Notice:  **The Claims Administrator will apply the decision of the Appeal Panel in a Post-Appeal Eligibility Notice.  As applicable the Post-Appeal Eligibility Notice will reflect the following:**

           \*              \*              \*

(4)  Assessment of 5% Review Cost for BP Appeals:  **If the Appeal Panel awards the same amount as the claimant's Eligibility Notice or the amount of the claimant's Final Proposal, the Claims Administrator shall add 5% of the total pre-RTP Compensation Amount listed in the Eligibility Notice to the Award Amount.**  The 5% Review Cost Assessment shall not be applied if the appeal is withdrawn, settled, or administratively closed prior to the Appeal Panel issuing an award." (emphasis added).

R. G. Dis. Ct. Rev. Rule 17(e)(4).  The Claims Administrator's mandatory duty to pay is set out in Rule 18 and the formula to calculate the exact amount to be paid is set out in Rule 17(e)(4).

In the instant matter, Rocon's claim has proceeded through the full path set out in the Settlement Agreement.  Rocon submitted its claim to the Claims Administrator. (Ex. 1, 2).  The Claims Administrator subjected Rocon's claim to a thorough review and analysis; resulting in an Award of $150,049.87. (Exs. 3, 7 at 83).  The Claims Administrator's determination was disputed by BP and a demand for arbitration (denominated an "Appeal") was filed. (Ex. 4).  The arbitration was conducted without objection by BP and the arbitrator issued his award (denominated as the Panel's Decision). (Ex. 11).  When BP did not seek discretionary review, the Claims Administrator's duty became ministerial and consists only of "proceed[ing] with payment of the claim in accordance with the Appeal Panel decision. . . ." R. G. Dis. Ct. Rev. Rule 18.  Pursuant to Rule 17(e)(4), the Claims Administrator was required to multiply the pre-RTP Compensation Amount ($142,576.07) by the RTP of .25 to determine the 5% Review Cost ($7,128.80) and add the RTP Amount ($36,644.02).  This amount was then reduced by the Prior Spill Related Payment of $28,700.52; yielding a Total Compensation Amount of $157,178.67. (Ex. 12).  The Claims Administrator's payment process is clerical and requires no discretion.

At that point in time, the arbitration process is fully complete, final and binding and all that remains is the Claims Administrator's completion of his duty to "proceed with payment. . . ." R. G. Dis. Ct. Rev. Rule 18.  As stated in <u>United States v. O'Keefe</u>, 128 F.3d 885, 890 (5th Cir

1997), defines a "ministerial act" as "an act that is essentially clerical and does not involve the exercise of discretion or judgment." Id. at 890.  See, also, United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 420, 51 S.Ct 502, 504, 75 L.Ed. 1148 (1931)("ministerial duty" is a duty in which "the obligation to act [is] peremptory, and plainly defined").  In Noffke v. Bakke, 760 N.W.2d 156, 168 (Wis. 2009), the Wisconsin Supreme Court defined "ministerial duty" as:

> **"A ministerial duty is one that 'is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.'"** (emphasis added).

760 N.W.2d at 168.   Payment of the Post-Appeal Award to Rocon is a ministerial duty of the Claims Administrator under the law and the Settlement Agreement.

## CONCLUSION

Under the terms of the Settlement Agreement, the Federal Arbitration Act and applicable law, Rocon, Inc., prays the Court to grant the order confirming the arbitrator's award, (Panel Decision), in favor of Rocon, Inc.  Further, Rocon prays the Court to direct the Claims Administrator to perform his ministerial duty by calculating the Total Compensation Amount based on the Panel Decision and to proceed with payment in the amount of $157,178.67.

RESPECTFULLY SUBMITTED,

s/E. J. Saad
E. J. SAAD (AL861451)
ejsaad@ejsaadlaw.com

s/ Matthew Andrews
MATTHEW ANDREWS (AL167247)
mandrews@ejsaadlaw.com

ATTORNEYS FOR ROCON, INC.

OF COUNSEL:
E. J. SAAD LAW FIRM
6207 COTTAGE HILL ROAD, SUITE G
MOBILE, ALABAMA  366609
PHONE: 251-660-0888
Fax:  251-660-0777

/s/ Frederick T. Kuykendall, III
S/Frederick T. Kuykendall, III
ftkuykendall@yahoo.com

OF COUNSEL:
KUYKENDALL & ASSOCIATES, LLC
AL Bar No.: ASB4462A59F
Federal Bar No.: KUYKF4462
P.O. Box 2129
Fairhope, Alabama 36533
Phone: (251) 928-4008
Fax: (251) 928-2151