UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | : : : | MDL 2179 Section J |
| | : | |
| This Document Applies to: | : | Judge Barbier |
| | : | |
| *No. 12-970, Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production Inc., et al.* | : : | Mag. Judge Shushan |

MEMORANDUM IN SUPPORT OF MOTION OF THE SPECIAL MASTER
FOR RETURN OF PAYMENTS MADE TO CASEY C. THONN AND OTHERS

Special Master Louis J. Freeh seeks to have Casey C. Thonn return $357,002.35 in payments made by the Deepwater Horizon Economic Claims Center ("DHECC") under the Seafood Compensation Program. In filing claims with the DHECC, Mr. Thonn presented false information and documents, including tax "returns" that in fact had never been filed with the Internal Revenue Service. The DHECC paid Mr. Thonn $357,002.35 based upon these false documents and Mr. Thonn's misrepresentation of his 2009 shrimping income. In fact, a 2009 tax return actually filed by Mr. Thonn -- but concealed by Mr. Thonn from the DHECC -- showed that Mr. Thonn was "unemployed" with no income that year.

The Court should enter a judgment requiring Mr. Thonn to return all money paid by DHECC and requiring all professionals who assisted Mr. Thonn and benefitted from this unjustified payment from DHECC to similarly return such payments.

A. *Background*

By Order dated September 6, 2013, the Court directed the Special Master to examine and investigate any past or pending claims submitted to the Court Supervised Settlement Program ("CSSP") which are deemed to be suspicious and initiate clawback proceedings for fraudulent claims. The Court retains continuing and exclusive jurisdiction over the parties

and their counsel for enforcing the Deepwater Horizon Economic and Property Damages Settlement Agreement as amended on May 2, 2012 (the "Settlement Agreement"). *See* Settlement Agreement at ¶ 18.1. Any disputes arising out of or related to the interpretation, enforcement or implementation of the Settlement Agreement shall be made by motion to the Court. *Id.*

The Seafood Compensation Program under the Settlement Agreement covers and compensates commercial fishermen, seafood boat captains, other seafood crew, and seafood vessel owners for economic loss claims relating to damages suffered by such claimants that owned, operated, leased or worked on a vessel that: (a) was home ported in the Gulf Coast Areas at any time from April 20, 2010 to April 16, 2012, or (b) landed seafood in the Gulf Coast Areas at any time from April 20, 2009 to April 16, 2012. Claimants can file a single Seafood Compensation Program Sworn Claim Form with the DHECC, seeking compensation for multiple compensable claims.

### B. *Mr. Thonn's Seafood Compensation Claims*

On June 24, 2012, Mr. Thonn filed claims, through legal counsel, with the DHECC for compensation under the Seafood Compensation Program as a vessel owner (Claim 19690) and vessel captain (Claim 19691), among others. *See* Exhibit A. The DHECC claim form submitted by Mr. Thonn provided:

> I certify and declare under penalty pursuant to 28 U.S.C. Section 1746 that the information provided in this Claim Form is true and accurate to the best of my knowledge, and that supporting documents attached to or submitted in connection with this form and the information contained therein are true, accurate, and complete to the best of my knowledge, and I understand that false statements or claims made in connection with this Claim Form may result in fines, imprisonment, and/or any other remedy available by law to the Federal Government, and that suspicious claims will be forwarded to federal, state, and local law enforcement agencies for possible investigation and prosecution.

In support of his claim, Mr. Thonn submitted to the DHECC several documents, including a "Forensic Analysis and Report" dated June 19, 2012 from the Coastal Claims Group, LLC, an accounting firm that provides claim support accounting (hereafter "Report," attached as Exhibit B). The Report stated that, "[a]fter review of the financial documentation for Mr. Thonn's commercial fishing business, it has been determined that the claimant has suffered an economic loss of income relating to the BP DWH Oil Spill as outlined in the DWH Court Supervised Settlement Program Agreement under the Seafood Compensation Program." *Id.* at 2.

The report calculated Mr. Thonn's claim using "[g]ross vessel revenue based on [Mr. Thonn's] tax return, monthly profit and loss statements as provided by Mr. Thonn is $156,000." Exhibit B at 6. Attached to the report as supporting documents were "Federal Tax Returns 2009 and 2010" and "Federal Schedule C 2009 and 2010." *Id.* at 9. The supporting documents also included "[a]ffidavits from the local purchasers of Mr. Thonn's shrimp." *Id.* The 2009 "tax return" was a Form 1040 for Mr. Thonn, with an attached Schedule C indicating $156,000 in business income for Mr. Thonn as a fisherman. *Id.* Also attached was a Form 1040X, Amended U.S. Individual Income Tax Return, for Mr. Thonn amending the 2009 return in ways that did not affect his shrimping income but increased his tax liability. *Id.*

On or about February 28, 2013, the DHECC paid Mr. Thonn and his counsel $166,652.10 for Claim 19690 as a vessel owner under the Seafood Compensation Program. On or about April 29, 2013, the DHECC paid Mr. Thonn and his counsel $190,350.25 for Claim 19691 as a vessel captain under the Seafood Compensation Program.

Upon information and belief, Mr. Thonn's counsel, the AndryLerner LLC law firm and its partners Jonathan Andry and Glen Lerner, received attorney's fees for Mr. Thonn's seafood claims. Approximately $35,700.23 of these fees was transferred as a referral fee to Lionel Sutton, III, a former DHECC staff member.

Coastal Claims Group, LLC submitted an invoice for $20,182.50 for its accounting work preparing the Report supporting Mr. Thonn's seafood claims. *See* Exhibit B.

### C. *Evidence of Mr. Thonn's Fraudulent Claim*

On November 6, 2013, after investigating Mr. Thonn's claims, the Special Master applied for an order to show cause directed to Mr. Thonn. On November 7, 2013, the Court issued a show cause order requiring Mr. Thonn to sign a release to authorize the Internal Revenue Service ("IRS") to provide the Special Master with Mr. Thonn's tax records for 2009 and 2010. The order also required Mr. Thonn to produce the documentation that a claimant is to provide to support a claim under the Settlement Agreement's Seafood Compensation Program. *See* Settlement Agreement at Exhibit 10 IV.B.1(b) & (d) and IV.B.2(b) & (d).

Mr. Thonn produced no records responsive to the show cause order, but he did sign an IRS form agreeing to release his income tax records to the Special Master.

IRS records released to the Special Master with Mr. Thonn's consent indicate that the 2009 tax documents presented to the DHECC by Mr. Thonn were never filed with the IRS. *See* Exhibit C (Mr. Thonn's 2009 IRS Record of Account & Wage and Income Transcript). Mr. Thonn never paid the 2009 tax liability shown in the documents he presented to the DHECC. *Id.*

The IRS records released to the Special Master by the IRS show that the only 2009 tax filing presented by Mr. Thonn to the IRS was a Form 1040A that represented that Mr. Thonn had *no* income for 2009 and was "unemployed" for that year.  *See* Exhibits C and D (2009 Form 1040A).  Mr. Thonn never presented or mentioned this 2009 tax return to the DHECC, and Coastal Claims Group Report similarly made no mention of this 2009 filing.

The IRS records also indicate that the 2010 tax form presented by Mr. Thonn with his claim indicating that the form was dated September 15, 2011, in fact had not been filed with the IRS when Mr. Thonn presented the document to the DHECC on June 24, 2012.  *See* Exhibit E (Mr. Thonn's 2010 IRS Record of Account & Wage and Income Transcript).  This 2010 tax document was filed with the IRS, but not until September 17, 2012, after the IRS sent Mr. Thonn a warning about failure to file a tax return for 2010.  *Id.*

The IRS records are consistent with records provided by Mr. Thonn's tax preparer, who produced to the Special Master's investigators income tax forms for 2009 indicating that Mr. Thonn had no 2009 income.  *See* Exhibit D; Exhibit F at ¶ 4 (affidavit of Special Master investigator).  The tax preparer could provide no information to explain the contradictory information on Mr. Thonn's income for 2009, nor did the preparer know which, if any, of the forms had been filed with the IRS.  *See* Exhibit F at ¶ 4.

The IRS records also are consistent with a statement that Mr. Thonn's now-former spouse made to the Special Master's investigators.  Mr. Thonn's now-former spouse stated that the 2009 tax form indicating that Mr. Thonn had no 2009 income was the form she filed with the IRS.  *See* Exhibit D; Exhibit F at ¶ 5.  Mr. Thonn's former spouse further stated that Mr. Thonn was unemployed in 2009.  *See* Exhibit F at ¶ 5.  She said she was not aware of the filing of any amended tax returns for 2009.  *Id.*

The IRS records also are consistent with a statement by another of Mr. Thonn's tax preparers, who recalled preparing the 2009 tax return for Mr. Thonn and his now-former spouse.  *See* Exhibit F at ¶ 6.  This tax preparer recalled Mr. Thonn's spouse affirming that Mr. Thonn was unemployed in 2009 and had no income for that year.  *Id.*

Other evidence shows additional inconsistencies in Mr. Thonn's claim.  For example, Mr. Thonn presented affidavits from several persons who allegedly purchased shrimp from Mr. Thonn for cash in 2009.  *See* Exhibit B.  When interviewed by Special Master investigators, however, several of these alleged purchasers gave contradictory statements and did not produce any records of purchases from Mr. Thonn.  *See* Exhibit F at ¶ 8.

For example, one person who allegedly bought shrimp from Mr. Thonn before the Deepwater Horizon spill was his uncle, Charles "Sonny" Nuccio.  Nuccio had operated a restaurant and seafood store in Picayune, Mississippi, and said he purchased shrimp weekly from Mr. Thonn.  *See* Exhibit F at ¶ 8.  Mr. Nuccio advised he is having "trouble with the IRS" because of failure to pay past business taxes and incorrectly reported business income.  *Id.*  Mr. Nuccio said he was unable to locate any of his business records, even when presented with a subpoena from the Special Master for production of the records.  *Id.*

Mr. Nuccio also contradicted himself on the quantity of shrimp he allegedly purchased from Mr. Thonn.  *Id.* at ¶¶ 9-10.  In an interview with the Special Master's investigators on November 12, 2013, Mr. Nuccio said the restaurant probably purchased a box of shrimp a week from Mr. Thonn, and paid between $3.29 per pound to $4.99 per pound for shrimp depending on the size.  *Id.* at 9.  A good box of shrimp was $500.  But in an interview with CAO investigators on August 21, 2013, Mr. Nuccio said he would

purchase between "one and ten boxes" of shrimp from Mr. Thonn a week, costing between $2.75 and $4.00 per pound. *Id.* at ¶ 10.

The anti-fraud controls previously utilized by DHECC did not detect the false information in Mr. Thonn's claim when it was paid or audited, even when the claim was re-reviewed in July 2013. In coordination with the DHECC, the Special Master and other professionals have been working to enhance and upgrade the DHECC anti-fraud controls to design and implement such additional controls, policies, procedures, and practices to ensure the integrity of the claims process.

Based on these facts which demonstrate that Mr. Thonn presented false documents to the DHECC and fraudulent evidence to meet the requirements of the Settlement Agreement, the Special Master now brings this motion for return of payments.

### D. *Legal Analysis*

1. The Court should order Mr. Thonn to return all funds he received from the DHECC because Mr. Thonn's claim was fraudulent.

It is well settled that the Court has the power to enter restitution where, as is the case here, fraud is present. *See Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 246 (1944) (affirming judicial power to set aside fraudulently begotten judgments as such cases present "a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.") The rationale for this broad discretionary power is to allow courts to fashion an appropriate equitable remedy to prevent a wrongdoer from retaining an unjust windfall. *SEC v. Huffman*, 996 F.2d 800, 803 (5th Cir. 1993) (disgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment); *Valeant Pharm. Int'l v. Jerney*, 921 A.2d 732, 753 (Del. Ch. 2007) (restitution is appropriate remedy to prevent an

unjust windfall; "disgorgement obligation stems from [defendant's] receipt of the company's money, not from his participation in the decision to authorize the payment.").

Here, the record unquestionably reveals that Mr. Thonn knowingly presented false information to the Court-supervised DHECC to obtain $357,002.35 from the Deepwater Horizon Trust.  Specifically, in support of his claim submitted to the DHECC, Mr. Thonn provided 2009 tax returns that were fraudulent.  *See* Exhibits B, C & E.  Mr. Thonn also submitted fraudulent evidence of alleged shrimp sales in the form of false affidavits that could not be verified or confirmed.  *See* Exhibit B; Exhibit F at ¶¶ 8-10.

In light of the undisputed evidence of fraud and in accordance with Section 18.1 of the Settlement Agreement, the Court should enter an Order compelling Mr. Thonn to return all funds paid to him by the DHECC.  An Order requiring Mr. Thonn to make restitution will make the trust fund whole for its loss, deprive Mr. Thonn of an unjust enrichment and deter others from engaging in similar misconduct.  *See SEC v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989); *Fletcher v. Sec. Pac. Nat'l Bank*, 23 Cal. 3d 442, 449 (1979) (in case of unfair trade practices, equitable principles arm trial courts with cleansing power to order restitution to effect complete justice, deter future violations and foreclose retention of ill-gotten gains).

    2.    The Court should order the return all funds received
           by professionals who assisted Mr. Thonn submit his false claims.

The professionals who helped Mr. Thonn submit his false claims, and who failed to detect the fact that Mr. Thonn was submitting false documents to the DHECC, also should be required to return any payment received based on Mr. Thonn's claims.  *See SEC v. Blatt*, 583 F.2d 1325, 1335-36 (5th Cir. 1978) (broad power empowers courts to order disgorgement of legal and other professional fees "realized by each defendant for his

assistance in executing the fraud" up to the amount of the fee realized). Whether these professionals knew of the falsity of Mr. Thonn's claim is immaterial to their duty to make restitution of sums that have been received as a result of this improper claim. *See Schock v. Nash*, 732 A.2d 217, 232-33 (Del. 1999) ("Restitution is permitted even when the defendant retaining the benefit is not a wrongdoer. Restitution serves to deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses.").

### E. *Conclusion*

For the reasons stated in this memorandum, the Court should enter a judgment requiring Mr. Thonn to make restitution to the DHECC for $357,002.35, paid by the DHECC in reliance on Mr. Thonn's false representations. All professionals who assisted Mr. Thonn and benefitted from this unjustified payment from DHECC similarly should be required to return these payments.

Respectfully submitted,

\_\_\_\_/s/ Louis J. Freeh_____
Louis J. Freeh
Special Master

Dated: January 8, 2014