IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * | MDL NO. 2179 SECTION "J" |
| THIS DOCUMENT RELATES TO 12-970 | * | HONORABLE CARL J. BARBIER |
| | * | MAGISTRATE JUDGE SHUSHAN |

* * * * * * * * * * * * * * * * * * * * * * * *

## RESPONSE OF JON ANDRY TO THE SPECIAL MASTER'S REPORT

Introduction

The question before the Court boils down to two issues: (1) did Jon Andry (Jon) attempt to in any way improperly or illegally influence the Andry Law Firm claim (AL); (2) did Jon attempt to or gain any advantage for Andry Lerner cases as a result of Glen Lerner's payment to Tiger Sutton ("Sutton") of a referral fee?

The answer to the question is no and no.

In August of 2013, David Welcker investigated these issues and reached the correct result. In his report and interview, he evaluated the relationship between Andry, Lerner, and Sutton and concluded:

"It didn't appear to be a quid pro quo."

This response was not shown to Andry and presumably the Court until the ordered December 24th production.

In July of 2013, in open court, the Claims Administration Office advised that all Andry Lerner claims had been reviewed and determined to be properly filed, properly calculated, and

properly handled.  In September of 2013, the Special Master's report acknowledges that Sutton never manipulated any Andry Lerner or the Andry Law Firm claim.  Today, the same facts exist.  No witness has, nor ever will, testify differently.  There is no witness revealed through any discovery that has said Jon Andry was involved in any misconduct, attempted misconduct, or improper effort to influence any claim.

Accepting claims is the function of the claims office.  It is not an adversarial proceeding.  There is no "ex parte" advantage available to a claimant.  The formula that sets the value of the claims was determined in a negotiated settlement between BP, the Plaintiffs' Steering Committee and approved by the Court.  The formula is calculated by a combination of accountants, who apply policies over which Jon Andry had no control nor input.

There is no policy over which Tiger Sutton had any input that effected an Andry Law Firm or Andry Lerner claim.  No such allegation is made, nor can it be.

No witness, no document, and no email, reflect misconduct.

The crux of the allegations is the idea that Sutton "acted with the purpose and effect of giving their claims special advantage."  The special advantage is never defined in the report and none appears in the discovery.  On December 24th, statements from Pat Juneau, Mike Juneau, Mark Staley, Chris Renaldi, David Duvall, Christine Reitano, David Walker, Tracy Stielberg, Rebecca Godwin, Jordan Wilkinson, Lionel Sutton, and Marea Harrington from the Claims Office were provided to Andry.  From Andry Lerner, Christine Mancuso, Kailey LeBoeuf, Mary Rubio, Lerner and the Andry's interviews and depositions were taken.  A complete set of emails relevant to Andry was provided between 2012 and 2013.

Previously, the Special Master admitted he only gave the Court the discovery that supported his opinion (Record #11639, par.6).  With the December 24th discovery, Andry and the Court now possess the statements and documents compiled in the investigation.  This evidence proves Andry's innocence.

I.      The Attempt to Influence Andry Law Firm claims.

The Andry Law Firm claim was filed by Jon's brother, Gibby, in accordance with the standard formulas and procedures published in the settlement agreement.  At the time the claim was received at the DHECC, Chris Renaldi was assigned as the accountant.  He began review of the ALF claim December 2012.  At that time, Renaldi thought there were missing documents.  He thinks he issued an incompleteness for specific documents.  He thinks he sent an incomplete notice based on his "individual judgment".  This request froze the claim.  No Andry is aware of this notice. Nonetheless From December until Renaldi is contacted in March by Mark Staley, his supervisor, the ALF claim lies dormant.

This was a mistake.  The necessary documentation had been filed.  The claim should not have been in a four month freeze.  When Sutton asked Staley to look into it, Staley asked Renaldi.  At that time, Renaldi realizes his error and assumes that the attorneys, who filed the claim, are irritated because he mistakenly froze the claim.  Upon realizing his mistake, Renaldi asked Staley what to do with the claim, and Staley replied "give it to a regular analyst on his team and work on it as you would any other claim." (p. SM-04-TLAF000743).  Pursuant to Mr. Staley's instructions, Renaldi passed the claim to Jordan Wilkinson.  No special treatment, no expediting.  Marea Harrington was Renaldi's direct supervisor.  Renaldi advises Staley, once the audit is completed and the file is properly catalogued.  At no time does Renaldi talk to Sutton.  At no time does Harrington talk to

Sutton.  The only time Sutton communicates to Staley is through an email referenced in the Special Master's Report.

Staley testifies that accountants talk to claimants, so either he or Renaldi could have talked to either Andry.  Staley said its common for both Juneaus, Mike and Pat, to ask about a claim as well as the various claimant's lawyers.  Because of the confusion over the Renaldi mishandling of the ALF claim, Postlewaite and Netterville implemented a new procedure that requires a team to review the status of information. (See discovery interviews of Marea Harrington, Chris Renaldi, Mark Staley, and David Welker's July 1, 2013 report.)  Wilkinson told David Welker on June 20, 2013, that once he obtained bank statements and income documents, "that the subsequent analysis then went pretty quickly because there was **so little** needed to complete the review of the claim.  (Welker Report of July 1, 2013, SM-04-TALF000785.)  Neither Wilkinson, nor Renaldi, ever talked to Sutton about the claim.  Staley never instructed Renaldi, or Wilkinson, to do anything special about this claim.  Marea Harrington, interviewed July 30th, testified she didn't know anything about the Andry Law Firm claim.  She is aware that there is a procedure for inquiries and that she "receives inquiries from Mr. Staley about the status of particular claims practically every day."  The people that re-analyzed and reviewed the claim all testified that the ALF claim was not expedited and did not receive any special treatment.

The Special Master misinterprets this process.  Lifting the improper four month freeze is not improperly expediting the Andry Law Firm claim.  Not only does that not occur, it is never requested.  All Andry does, according to the case facts, is inquire about the status of the claim.  Andry has every right to do so and it is a good thing he did because Renaldi had improperly delayed the claim for four months.

Every witness identifies Jon's questions as the daily bread of the claims office, like all lawyers and claimants asking questions.  Section 4.3 of the Settlement Agreement requires that the Claims Office be transparent and responsive to any request about claims or the process.  This is a claims office.  Nothing is done to advantage the Andry Law claim.  The time line of the communications and the claim itself reflects the opposite. Nothing is done to disadvantage B.P.

The fact is that the claims administration office and its employees could, when required, expedite certain claims.  As an example, on September 12, 2012, Matt Lundy's claims are filed under the subject "expedited claims" by Brown Greer.  Apparently as of September 12th, there were methods in place to selectively move claims forward (Exhibit A).  The Postlewaite & Netterville (hereinafter P&N) procedures required Renaldi to handle ALF claim on a priority basis given Renaldi's mistake.  Almost a year later, June 4, 2013, Katherine Torres at P&N is responding about the Sher Gardner claim and states:

> "The claim entered a QC queue around Mid-May, and we are working QC claims on a FIFO basis.  The claim was awaiting allocation to a QC reviewer, so I went ahead and asked the team to prioritize the QC review." (Exhibit B)

These emails were produced but never addressed during the Reitano deposition.  They prove that there was a designation of "expedited claims" and that when errors were found, claims could be resubmitted and prioritized.  These two emails are examples of the procedures in the claims office.  The letter email clearly indicates that under the FIFO procedure that Postlewaite and Netterville should have prioritized the ALF claim upon learning that the incompleteness notice had been improperly filed for four months.  Upon learning of their mistake, P&N should have, under their procedures, prioritized the ALF claim like Ms. Torres did with the Sher Garner claim.  If the

Andry Law Firm claim actually was "expedited" and/or prioritized after it had been improperly frozen by error, that would be in accordance with the rules and procedures of the claims administration office.

If it was not, as appears to be the case, reinstated to its proper spot in the line (absent the Renaldi four month freeze), then the Andry Law Firm claim was mishandled and received negative treatment.  Renaldi, Staley, and Wilkinson all testified that the ALF claim was worked in the "ordinary course" of business.  Their testimony (which was omitted by Freeh), states they did not expedite the ALF claim.  This is a variance from the P&N procedures employed by Brown Greer and P&N for Sher Garner and Lundy.  It is **not** an advantage to Andry.  Either way, the Special Master's conclusion that the ALF claim was expedited is directly contrary to and contradicted by the testimony of all of the individuals that actually handled the claim.  None of their statements regarding their interactions with Jon Andry or the Andry Law Firm claim reflect any pressure from anyone to do anything improper or special for Jon or the claim.  (See Testimony of Staley, Renaldi, Stielberg, and the Welker Report of July 1, 2013 and interview of Jordan Wilkinson.)

The Special Master also alleges that there was an improper effort by Andry to "influence the appeal."  He claims that having lunch with David Duvall and Tracy Stielberg was not "necessary or appropriate" and violated an internal Claims Office rule. Twice Andry eats lunch with Duvall and Stielberg at the Palace Café. The lunches cost around $20.00 each at most. No business is conducted at the first lunch, at the second Jon asks about the rules and procedures for appeals. Neither Duvall nor Stielberg felt Andry asked anything out of the ordinary. Both told the Special Master his questions were the same they get every day from attorneys and he got the same answers.

Stielberg said she had no dealing with Sutton on Andry issues. She said she regularly takes calls from claimants with questions and helps them as much as she can. She told the investigators she never did anything to influence any Andry claim, nor did Jon ever ask her to. Duvall gave the same information. Andry's questions were common, and Andry never asked Duvall to influence anything. LeBoeuf, who handled the ALF appeal told the Special Master she had no help on the appeal, no insider knowledge, and was never directed by Jon to do any thing but follow the normal process.

Not one witness, nor document, nor email shows Jon doing anything outside the ordinary work of an attorney with a claim pending. (See discovery interviews of Stielberg, Duvall, LeBoeuf and LeBoeuf affidavit.)

The contacts between Andry and Duvall or Sutton are consistent with the policies and the procedure intended by the Claims Office. Document No. 11646, 10/15/13, for example, is a report by the Claims Administrator about the settlements. Section A "Law Firm Contacts" reads:

> "The law firm contacts team continued outreach efforts for all damage categories related to incompleteness reasons. On the past several weeks, law firm contacts focused outreach efforts on incomplete seafood compensation program claims. This outreach campaign has been highly successful ..."

This document reiterates the policy of the Claims Administration Office to consistently educate and interact with the claimants and their counsel. Any questions Andry is asking Sutton or Duvall or Stielberg about anything are legitimate and permissible. There is no "insider" advantage nor contact.

David Duvall is like the intake clerk at the Appellate Court. He does not control the issues on appeal, the manner in which appeals are filed, the scheduling of appeals, the panel to whom an

appeal is assigned, the schedule of that panel, nor have any input into the result.  He states in his interviews with the Special Master that Andry asked him <u>no</u> improper questions.  Duvall advised that what Andry wanted to know is how long does an appeal take, and how long it takes to get paid if you are successful on appeal.  These are questions asked every day by every lawyer who had an appeal. Duvall also testified that the general rules of the appeals process, which he went over with Andry, are published on the Deep Water Horizon website.  His first lunch with Jon Andry in approximately April involved no discussion about the appeals.  Later Andry called and asked about the time frame for an appeal.  Additionally, Duvall advised that he also has had eaten with BP employees.  Duvall also reminded the Special Master that he was constantly inundated with similar questions by the multiple lawyers handling BP claims and appeals.  Andry's questions were the same generic questions.  Nowhere does Duvall suggest any improper effort to influence, or receive special treatment.  Andry is acting as an interested party wanting to know how the process works.  Given the initial mistake by Renaldi and the four month delay while the case sat dormant, such questions were necessary.

Tracy Stielberg testified "in the course of her duties in the settlement program, she has done nothing to influence or impact the Andry claim or Thonn claim.  When these claims came up for appeal, she handled them as she would any other appeal.  David Duvall would typically communicate when an appeal needed to go to a panelist." (Stielberg interview 6/24/13.)

Stielberg also testified that Andry and she were good friends and that she had at his request through email checked on several claims.  She also stated "that many claimants would call up all the time and she would field the request they made regarding status as they would come in to her."  She confirmed with Duvall's statement that at the lunch with Mr. Andry, he ask about the deadline for

assigning appeals and what were the general time frames.  She had no concern over the fact that Andry paid for lunch and again the bills were far below what she believed were the agreed upon limit ($50.00).  Duvall thought the limit was $100.00.  Everyone agrees the lunch Andry paid for was $20.00 for Stielberg and $20.00 for Duvall, at most.

Rebecca Foreman/Jenkins, Pat Juneau's assistant, was interviewed July 17th.  She advised that "people are constantly calling in to check in on claims.  When she would receive these calls, she would then email Jennifer Godwin at Brown Greer to determine the status of the claim and then inform the <u>claimant</u> and Mr. Sutton or Patrick Juneau."

It is self-evident from her testimony as well as the rules that the claimant, Andry Law Firm or Jon Andry as the attorney for any of his clients, is a person to whom Rebecca Godwin could respond.

The statements and documents prove:

1. The formula sets the value of the Andry Law Firm claim.

2. The Andry Law Firm claim was not expedited, it was stuck in the freezer due to an error by the accountant Renaldi.

3. When it was unfrozen, it was handled "just like any other claim".

4. Andry's inquiry was perfectly permissible and resulted in the discovery of the mistaken frozen status.

5. No one expedited the claim.  If anything, it was behind those filed from the previous fall due to Renaldi.

6. Andry never ask anybody for any "advantage".

7. Andry's questions were the same questions asked by other lawyers on appeal, and asked to the right people who know the answers.

8.     Andry never asked Duvall, Stielberg, or Sutton to do anything to benefit his appeal, he asked about procedures, timing, and rules.

Both the Casey Thonn appeal and the Andry Law Firm appeal are handled through normal channels. Kailey LeBoeuf writes both appeals. Mrs. LeBoeuf's affidavit is attached as Exhibit C. When interviewed, she advised that "she did not hear anyone at the Firm attempt to influence his claim. She did not know or hear of anyone at the Firm wired into the DHECC or any other involved vendor or entity." She does not know and had never met Lionel Sutton. Her contacts are consistently with Naketa Ash and deal with process and procedure. By appealing the Thonn case, she opened up Thonn to scrutiny to BP, but it was her decision with Andry's approval based on the calculations. In both the ALF and Thonn appeals, anonymous judges made the review and made their decisions based on the evidence in the record of each claim.

Applying common sense to the documents now available, it appears the Special Master missed or ignored the Renaldi interviews. The Report seems to begin with Andry's inquiries of Duvall and Sutton's inquiries of Staley. The Report did not recognize the months the Andry Law Firm claim was out of order. The Report assumed the Andry Law Firm claim was "expedited" and that such expedited efforts were the result of some influence, because within a short time after the first inquiry, an eligibility notice is granted. Such a conclusion is contrary to the testimony of the individuals that actually handled the claim. It was not expedited or prioritized, and was handled "like any other claim."

Looking at all of the evidence, the "expedited" charge is unfounded. The file was finally properly worked once it was brought to the accountant's attention that by error the claim was "incomplete". All Andry asked to happen was that his claim be handled in accordance with the

Rules.  ALF was entitled to an eligibility notice months before once was actually issued.  Once it was, the appeal went forward and ALF won.  Fair and square, no insider special treatment whatsoever.

Logic dictates this result.  The evidence dictates this result.  Common sense dictates this result.  Glen Lerner, who has no stake in the Andry Law Firm claim, is not going to pay Tiger Sutton his portion of the Casey Thonn fee so that Tiger Sutton can help Gibby Andry and Jon Andry obtain some unfair advantage on their personal law firm claim in which Glen Lerner has no interest.  This makes no sense and never happened.

In light of the fact that the ALF claim was not expedited or prioritized, Jon Andry requests that this Court dismiss the Rule to Show Cause and that this Court strike from the record the portions of the Special Master's Report describing and depicting such a finding.  In the event that this Court chooses not to dismiss the Show Cause Order, Jon Andry requests a hearing de novo before this Court as early as possible.

II.     The Lerner Payment to Sutton

Andry adopts the previous responses by Glen Lerner and Lionel Sutton.  The Special Master's accusation is that Lerner pays Sutton:

> "With the purpose and effect of giving their claims special advantage." (pg 10, Special Master Report)

The term "special advantage" is never defined.

Importantly,  no claim at Andry Lerner is identified as receiving such treatment.

Exhibit D, reflects the states of payments of all DHECC claims versus Andry Law Firm claims. The charts show Andry Lerner claims were on par or slightly below the mass of cases at DHECC.

The affidavits of the Andry Lerner employees show no "insider" advantages. Kailey LeBoeuf worked as an attorney at Andry Lerner. She handled the appeals including Thonn and the Andry Law Firm. She interfaced with claims office personnel on a daily basis. She has sworn:

> "At no time did Jon Andry ask me to handle a claim in a manner that was contrary to the rules and procedures prescribed by the CSSP."

When interviewed by the Special Master, she advised that "she did not hear anyone at the Firm attempt to influence his claim. She did not hear of anyone at the Firm that was wired into the DHECC or any other involved vendor or entity." She does not know and had never met Lionel Sutton. Her contacts are with Nakita Ash and deal with process and procedure.

Andry and Lerner disagreed about paying a referral fee to Sutton. Andry refused to pay it. Andry barely knew who Jeff Cahill was, did not know the Lerner/Sutton/Crown Business Plan, and did not know how much Sutton eventually received. At no time did Andry request any advantage from Lerner's payments to Sutton, nor did Andry ever ask anyone to do anything outside the rules of the Claims Office. (See LeBoeuf Affidavit, Exhibit C, Leslie Tate Affidavit, Exhibit E, Duval discovery received December 24th, DeSantis Affidavit, Exhibit F, Response by Lerner and Sutton to the Special Master's Report.) No Andry Lerner claims received any special treatment, nor did anyone ask for such. Given that Andry had no involvement with and/or knowledge of the workings or business of Crown, it was a grossly improper error for the Special Master to lump him into some assumed scenario whereby Crown payments between Lerner and Sutton were to help Andry.

From the beginning the Lerner payment to Sutton is misinterpreted. The Special Master believes Reitano wanted a referral fee. The Mancuso affidavit[1] proves their error.  They discussed the retainer percentage (20%) not a referral percentage nor fee.

The Special Master ignores the actual email evidence from 2012-2013. It is clear in their communications between Lerner and Sutton that Andry is specifically to be kept out of their loop.

In March of 2012, seven or eight months before Sutton goes to the Claims Office, Sutton writes Lerner "keep Jon out of it" (GLL 001337).

This string of emails revolves around Sutton's desire to send Lerner two cases.  This is clarified on March 29, 2012 at 2:46 when Sutton rejects Lerner's idea to let Jon call the new clients and writes:

> "I don't want Jon stealing my clients for other cases."

Everyone testified to the truth which was that Sutton and Andry had a falling out after the Bell South case in 2009.  Everyone also testified that as a result of a disagreement about fees in that case, that Sutton has a grave mistrust for Andry.

These early examples of distrust track all the way through to the actual payments by Lerner to Sutton.  By March of 2013 when Sutton works at CAO, his efforts to find out about Thonn and his money from Lerner always bypass Andry.  The string of March '13 emails demonstrate numerous Sutton/Lerner communications about their shared business "Crown" and Sutton's questions to DeSantis (Lerner's employee) and Cahill (Lerner's financial officer) about the *Thonn* fees. The emails of March 15th reflect some confusion by Lerner over the fee and answers from DeSantis and Cahill

---

[1]    The Mancuso Affidavit is in Record Document No. 11666-1, filed 10/16/13, and again used in the Reitano response.

on March 20th and March 21st.  As late as March 15, 2013, Lerner is having to ask Sutton what is "our end."  Nobody is asking Jon, nor his associate attorneys, Mancuso and LeBoeuf, both working the Thonn file and appeal.

The Special Master without evidence assumes Sutton is helping Jon improperly.

The contemporaneous record defeats that assumption.  On May 9, 2013, Tiger Sutton sends Glen Lerner information on the standing of Andry Lerner cases and tells Lerner "just between you and me".  Factually nothing Sutton tells Lerner is secret, the Andry Lerner firm has exactly the same information on its portal.  What is relevant is Andry's exclusion.  On May 22nd, Sutton is asking Cahill about "Thonn fee sent to you by Jon."  On June 3rd, again Sutton ask Cahill about the fee.  These emails are supported by Tiger and Glen's testimony to the Special Master.  If Andry had an agreement to pay Sutton to be the "inside man" (Freeh Report page 6), why is Sutton having so much trouble collecting?  Why is Sutton having to ask DeSantis to monitor payments?  Why is Sutton checking on Thonn's case at Thonn's request when all he has to do is ask Andry?  Why is Andry Lerner not processing the Thonn case expeditiously to be sure Sutton's happy?  Why are Sutton and Lerner discussing Andry's inability to run an office and failure to process claims?

In the emails of February 15, 2013, Lerner describes Jon to Sutton:

> "Such a good lawyer, but can't get out of his own way running a business."

It is clear that:

1.    Sutton does not trust Andry as a referral source.

2.    Sutton does not communicate with any Andry Law Office personnel.

3.    Sutton gets all of his information from Lerner, Cahill, and DeSantis.

4.      No one at Andry's law office, including Andry, believes Sutton can help them.

5.      Sutton never helps, nor attempts to help, Andry Lerner or Jon Andry.

6.      Sutton's interest in Thonn is his own curiosity, not anything Andry request.

The Special Master must have failed to read all of the emails between Andry's office and Nikeita at the Claims Office. Amy Catalanotto, Kailey LeBoeuf, Leslie Tate, and Christina Mancuso are constantly asking the assigned claims office personnel about rules, prescription dates, appeal procedures, medical claims, and the status of the payments. A claims review found no special treatment only the legitimate inquiries expected in an evolving process. There is nothing here to reflect any special access nor insider knowledge, and none existed.

This is a **Claims Office**, not a court case.

Pat Juneau's assistant is Rebecca Jenkins whose email address is Rebecca Foreman. She receives emails from Pat about a set of Andry Lerner cases and refers the question of status to Jennifer Godwin, her contact at Brown Greer, who she describes as someone she knows to be effecient. Nowhere does Mrs. Jenkins reflect any concern over the Juneau inquiries, stating to the Freeh people:

> "People are constantly calling to check on claims. When she would receive these calls, she would then email Jennifer Godwin at Brown Greer to determine the status of the claim, and then inform the claimant and Mr. Sutton or Pat Juneau." (Interview Foreman/Jenkins on 7/17/13.)

So again on pages 48 and forward, the Special Master takes a common daily occurrence at the claims office and mistakes it for conspiracy.

Ignoring what Staley, Renaldi, Juneau, Stielberg, Sutton, and Andry said, and the corroboration from Foreman, the Special Master concludes misconduct based on the absence of evidence.

1.    Rule 4.3 of the Settlement requires the CAO to help claimants.  The Andry Lerner Firm and the Andry Law Firm are not excluded from that Rule.

2.    Sutton can look up anything he wants to about Andry.  Andry has no control over Sutton's curiosity and no control over Sutton.

3.    Staley and Renaldi act in accordance with their duties.

4.    Foreman, Godwin and Juneau act in accordance with their duties.

5.    The Andry Law Firm case was misfiled from the beginning by Renaldi and all the Andry questions to Juneau and Sutton apparently result in a recognition of that original error.

6.    Nothing is done by anyone to improperly advance the Andry Law Firm case, and it is not advanced.

7.    A/L has over 650 claims and only one (Thonn) has any relationship to Sutton. Nowhere is there any proof Sutton influences any claim, including Thonn.

Discovery proves:

On March 6th, Jon is talking to Pat Juneau, not Sutton.  At the same time, March 7th and March 8th, Sutton is complaining to Cahill (Lerner's employee) about his share of Thonn.  If Jon Andry has Sutton's ear, he doesn't need Juneau and Duvall, and he should be making sure Sutton is paid.  The emails of March 15th between Sutton, Lerner and Cahill, one week later, reflect confusion not insider information.  Importantly, no one is asking Jon nor his employees any questions.

In April after Sutton has been paid by Lerner, Andry is communicating with Juneau and Duvall, not Sutton.  LeBoeuf is still asking Nikeita (CAO) about the Thonn appeal.

In May, Mike Juneau is writing BP's attorney Warlick about Gibby Andry's questions on the firms appeal and how to expedite it.  On May 7th and May 10th, Travis Johnson with accounting is explaining to Jon about the status and confusion on the Talen's Marine claim.  Sutton is nowhere.

It is undisputed that Jon Andry and the law firm in which he worked, Andry Lerner, never paid a dollar to Tiger Sutton.  The Andry Lerner Firm paid Lerner his share of the Thonn fee.  Glen decided to pay Sutton based on Sutton's assurances that it had been allowed by Pat Juneau, the Claims Administrator.  The Special Master concludes that Jon made false and misleading statements in his testimony.  These findings are contradicted by the full record.  Moreover, Mr. Andry's testimony to the Special Master was consistent with the testimony of Lerner, Sutton, Desantis, Tate, LeBoeuf, Cahill, Staley, Renaldi, Welker, and everyone else the Special Master's group questioned.  The only way to explain the Special Master's error in making this charge is that he personally did not review the other testimony or know of its import.

No effort was made to conceal this fee.  The case was appealed by Andry Lerner.  AL appealed the case because there was a dispute over whether Thonn should be charged a shrimp boat overhead cost.  Thonn was both a boat owner and vessel owner.  The attorneys at AL believed that it was improper to penalize Thonn's claim with an overhead reduction because he fell into both categories.  The answer to that question at the time of the appeal was unknown.  By filing the appeal, AL opened up the entire Thonn case to scrutiny by BP as well as the appellate judge and the appellate process at the claims office.  The Thonn claim had previously been received and investigated by the GCCF before A/L ever knew of it.

The Special Master makes many assumptions.  One, he omits that appeals draw attention.  If that is the case that is being used to funnel money improperly to an employee in the claims office, appealing is bad strategy.  That is the opposite of secrecy, the opposite of misconduct, and the antithesis of a clandestine motive.

The Special Master either never reviewed or misunderstood the testimony regarding the entire Thonn process.  The attached affidavits of Christine Mancuso (Record Document No. 11666-1), and Kailey LeBoeuf, Exhibit C, make clear how the appeal was taken, why the appeal was taken, the validity of the appeal, the propriety of their reliance on income tax returns, and the AL legal arguments associated with the *Thonn* appeal.  The fact that now there are new issues about the Thonn claim is not attributable to A/L or the attorneys who processed the claim and appeal.  The facts then as known to A/L must control this inquiry.  (The file itself contained an affidavit from Thonn's accountant attesting to the tax return.)

The Special Master misunderstood language in finding that Reitano expected a referral fee for the *Thonn* case.  Mancuso makes clear her conversation with Christine Reitano was to insure that the attorney agreement of 20%, the **retainer agreement**, "not referral" agreement, was maintained.  Mixing up these two terms set the report off on a false foundation.  Reitano should never have been brought into this matter had a simple investigation of her role been accomplished.

Lionel "Tiger" Sutton testified that he never assisted A/L in the *Thonn* case.  The testimony under oath of Sutton is as follows:

"Question:     Did Jon ask you to check on the *Thonn* claim at some point?

Answer:       No.  I don't think so.

Question:     Did Lerner?

Answer:       No.

Question:     Did anyone else?

Answer:       Casey Thonn.

| | |
|---|---|
| Question: | You keep speaking to Casey Thonn even after your wife recused herself and had the case assigned to Andry, correct? |
| Answer: | I had him as a personal injury claimant." |

Sutton goes on to explain that he continued to represent Thonn. A review of the declaration, Exhibit E, of Leslie Butler Tate confirms the continued interest of Sutton in Thonn's claim at Thonn's request. None of this has anything to do with Jon or A/L.

Andry knows nothing about any ethical situation facing Sutton, nor does he know what type of contract Sutton had with the CAO. The Freeh Report assumes Andry is governed by a set of rules in the Claims Administrator's Office. There rules are not known by the private attorneys who had claims. Andry is not overseen by Juneau, and has no duty to Juneau.

Jon Andry has testified.

| | |
|---|---|
| "Question: | Payment or referral fee. It wouldn't be fair to characterize that as a disagreement or an argument between the two of you and Mr. Lerner. |
| Answer: | It was a discussion about how to handle the matter. |
| Question: | Did you object to the fee being paid? |
| Answer: | Yes. |
| Question: | Did you make that clear to Mr. Lerner? |
| Answer: | Yes. |
| Question: | What was the basis of your objection and what did you express to Mr. Lerner as the basis of your objection? |
| Answer: | My understanding that Glen, from Glen, was that Tiger worked at the facility and it was primarily from, when Christina sent us the case, that if she sent us the case then she can't work on it or get a fee. And so I just presumed that Tiger was in the same position. I assumed that if they couldn't receive a fee that we shouldn't pay them one and so we didn't pay them one." |

Exhibit F, the affidavit of Susie DeSantis states that when the first payment came in and she made inquiries in accordance with her job description for Glen Lerner, Mr. Andry was adamant that no fee should be paid.[2]

Where is the "conspiracy".  This is all being written down, discussed, argued about, and debated.  Andry is in the camp of don't pay.  Lerner, a partner in Andry Lerner with equal authority, believes he has given his word to Sutton.  Lerner believes Sutton's assurances that the payment has been cleared by the Claims Administrator Officer.  Sutton, under oath, has said that that claim was cleared by the Claims Administrative Officer.  That is a dispute between Sutton and Juneau.  It is not a dispute with Andry.  He is not a party to that issue and has no reason to disbelieve his partner, Lerner's statements about what Sutton has told him.  To accuse Andry of actual misconduct in this confusion is factual error.

Rule 1.5

The Court is aware that the Louisiana Supreme Court retains exclusive jurisdiction over the practice of law.  The declaration by the ethics expert, Geoffrey C. Hazard, Jr., Exhibit G, resolves that issue.  There is evidence Andry's firm executed a contract with Thonn, and sent Sutton information at Thonn's request.  There is no ethics issue as to Jon.

The Process Going Forward.

Trusting and knowing that the law eventually arcs towards fairness, Jon is entitled to his day in court.

---

[2]     A close review shows the first Sutton payment should have been made when he was a private attorney.  The value was set before Sutton went to the DHECC and the money earned before he went to the DHECC in November of 2012.

The standard to uphold the report is clear and convincing evidence.  The burden must be on the accuser.  Because of the unique process the Court has employed, it will have to decide who has to carry that burden.  There are more than enough facts in the responses to eliminate the assumptions in the report, clarify the errors, and recall the recommendations.

The applicable law was briefed in Record document 11842, 11/13/13, "Request for Status Conference".  The Court denied the motion "at this time."  Now is the time.

If there is a hearing, the Special Master cannot be the advocate.  He and his team work for the Court.  They are required to be impartial.  If there is a party who wants to support the Special Master's report and bring forth evidence, it can't be The Freeh Group, nor his law firm.  It must be the other parties, BP, or court administrative office, or the PSC.

The burden has to be on the accuser, the standard is clear and convincing, the report itself has no factual value as it is hearsay within hearsay created without due process, and the work of the Special Master and he and his investigators needs to be available for examination by Andry. Presumably before a hearing, the unjustified order preventing Andry access to claims office employees will be lifted.  However, the discovery provided has proven:

1.    There was no special treatment given to any Andry Lerner client nor claim.

2.    There were no Andry Lerner clients whose cases were handled outside of the established protocol and time frames.

3.    At no time did Jon Andry do or say anything to anyone in the claims office beyond the requirements of his duty to represent his clients.

4.    The actual cases filed by Andry Lerner were not given any special consideration.  The claims office statistics show Andry Lerner cases were on par or slightly below the average time for processing.

5.      There is nothing to allege any suspicious activity by Jon Andry in eating sandwiches in public with witnesses across from the claims office.

6.      Jon Andry like all of the lawyers involved in this case has a duty to his clients.  **This is a claims office**.  (Emphasis supplied)  It is built on transparency with rules set up by BP.  It is not a judicial adversarial process.  Ex parte communication is required, accepted and encouraged.

Ultimately the facts and law will prevail and Andry will receive fair process and vindication.

It is necessary that happen soon.

<u>Conclusion</u>

1.      No witness has said Jon did anything wrong.

2.      Andry never ask nor received help from Sutton as an "insider".

3.      Andry never ask anybody to do anything outside the normal claims office rules.

4.      The ALF claim revolves around the Renaldi mistake, not any special influence from Andry or Sutton.

5.      Andry never agreed to pay Sutton.

6.      There was no conspiracy.

7.      Andry does nothing to influence the ALF claim nor appeal.

8.      There is no corruption in the claims office that involves Andry, Lerner, A/L or ALF.  No one supports that accusation.

9.      There was no effort by Andry to faster or request any special treatment due to any relationship with Sutton or Reitano.

10.     This matter has been grossly overblown by inflammatory accusations without factual substance.  Andry has paid an unfair price for these misinterpretations.  BP has gained significant benefits.  It is time for a public due process hearing to end the wrongs done to Jon.

The original opinion of David Welker was correct, there is "no quid pro quo."  The original opinion from the re-review of Andry Lerner cases reported to the Court was correct.  Andry Lerner

claims were in order, properly submitted and properly calculated in accordance with the Rules. No claim received any special treatment. The original opinion of the Special Master that no Andry Lerner claims perfected by Reitano and Sutton has been proved to be true.

Andry did nothing wrong. He never requested nor received any special consideration for any case. The ALF claim was not expedited and Andry's inquiries about Andry Lerner cases and the ALF claims to individuals in the Claims Office were welcomed and encouraged by DHECC policies. The Lerner payments to Sutton through their personal business account (Crown) does not involve Andry. Andry has no knowledge, ownership, nor interest in Crown and he was excluded from their business arrangements and their communications.

Andry reiterates and reasserts his positions staked out in the Request for Status Conference regarding the burden of proof, the standard of proof, and that the Special Master may not serve as an advocate to justify his conclusions.

In reviewing all of the fact based responses from the individuals and Andry Law Firm, it would be appropriate for the Court to recall the original order and return everyone to their initial status. The internal dealings at the Claims Office between Sutton and Reitano are employment related and outside the concerns of the Court. Jon Andry, Lerner, Andry Lerner, and Andry Law Firm claim should all be allowed to return to their original status and proceed in accordance with the rules and policies going forward.

If the Court cannot dismiss the Special Master's report on the papers, a trial de novo is required and should be held within 30 days of this pleading. Andry is anxious to clear his name and ready to do so.

Yesterday BP publicized all over the United States a large ad "Another law firm hits the jackpot" and included:

1.     The issues BP raised and lost to the three appellate claims panel on the ALF appeal.

2.     Freeh's accusations in the report.  (See Exhibit H.)

BP's negligence killed people.  BP's negligence created a great environmental catastrophe. Now the Special Master Report has become BP's battle cry and shifted the focus from their **proven** wrongs to these unproven and erroneous allegations.  A hearing must be set.

By Attorneys:


*/s/Lewis O. Unglesby*
Lewis O. Unglesby (#12498)
Unglesby Law Firm
246 Napoleon Street
Baton Rouge, LA   70802
Telephone: (225) 387-0120
Facsimile: (225) 336-4355




**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on 17th day of January, 2014, a copy of the foregoing Motion was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.


*/s/Lewis O. Unglesby*
_____
LEWIS O. UNGLESBY