Leslie Butler Tate, under penalty of perjury, states as follows:

1. My name is Leslie Butler Tate. I worked for Jon Andry from November 2010 until I left in early November, 2012.

2. I did some intake, but not primarily. I would know about all of the cases because I kept a master spread sheet on behalf of the firm wherein we would estimate costs and potential values and chart the progress of the cases. Christina Mancuso and I worked together on referrals. If there was a claim that came in from an attorney, I would inquire from her as to whether the referral contract had been negotiated.

3. At no time while I worked at the claims office did I ever see any preferential treatment from the claims center; at no time was I ever told that anyone would help us beyond their normal duties; and at no time was it ever intimated or suggested to me that we send our claims to any particular person.

4. I was interviewed by The Freeh Group. They asked me about an email to Tiger Sutton regarding the expert report of Coastal Claims on behalf of our client, Casey Thonn. I sent this email to Tiger Sutton's personal email. At that time, Tiger Sutton, to my knowledge, did not work at the claims center.

5. I was asked if I could remember who told me to send that report to Tiger Sutton. I could not. However, I have racked my mind since then and I distinctly remember that it was Casey Thonn who asked me to send Tiger the report. I called Casey to get his approval to the expert values so that we could process the claim. He asked me to do him a favor and send it to Tiger because he wanted his opinion. I know that Tiger was not at the claims office when I sent this email.

6. The report references Jon and I discussing the Thonn referral. This was in a joking



EXHIBIT E

manner as we had a running competition in the office amongst the staff and Jon as to who could bring in the most cases. I remember learning that we got Thonn because Tiger's wife was working at the claims center.

7. I never used the term "troubled" as reflected in the report, nor was I troubled about the absence of a referral agreement. I explained that we had none that I was aware of. However that wasn't unusual. Given the time crunch, we would start working on claims with no written referral agreements in hand and often they would come in later. I sent an email to Jon and ask him when we received the first payment from the claims center for Thonn and asked him if there would be a referral agreement and he said no.

8. The 40% reference in the Freeh report is misleading. That meant 40% was the split between attorneys under normal circumstances depending on what work they had done or planned to do in the future. We would split 60% of the 20% or 25% attorneys fees to Andry Lerner and 40% of the 20% or 25% of the attorneys fees to the referring attorney. We did ask that the referring attorneys maintain their relationships with the clients they referred because it made it much easier in dealing with the claims center and the clients themselves if they were kept fully informed. That process would be the reason I would send the expert report to Tiger when asked by Casey to do so. It was not an issue for me because at that time Sutton did not work at the claims center. It seemed to me that interviewer from The Freeh Group did not understand the claims process or how the system worked.

9. As for the last sentence, it is partly true. I remember that Jon and I were having a meeting and he had received some type of communication from Sutton. He said "Can you believe Tiger's trying to get me to pay him a fee?" At that time I said "I didn't think

we could" and there was no more discussion. I assume that must have been at the beginning of Tiger's work at the claims center for me to make that comment. I know nothing about whether Sutton ever received any funds.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 13, 2013, in Mandeville, Louisiana.

_____
Leslie Butler Tate