UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL 2179<br><br>SECTION: "J" |
| Applies to: | JUDGE BARBIER |
| No. 13-6674 | MAGISTRATE SHUSHAN |

# MEMORANDUM IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING PARALLEL CRIMINAL INVESTIGATION

MAY IT PLEASE THE COURT:

Defendants Mikal C. Watts and Watts Guerra LLP (hereinafter "Watts Defendants"), respectfully submit that this matter should be stayed pending the conclusion of an ongoing federal criminal investigation which arises out of and addresses the same conduct which is made the subject of this action. Specifically, the gravamen of the plaintiff BP's civil action is that, somehow, BP was caused to make too large a payment in the now-approved class settlement arising out of the April 20, 2010 Deepwater Horizon oil spill, because it was relying on the accuracy of information about the number of the Watts Defendants' clients who would seek economic loss compensation in the settlement.  Pretermitting what eventually will be demonstrated as causation fallacy in these allegations, the fact is that an ongoing federal criminal investigation of Mr. Watts and a number of others addresses the same conduct and activities which underlie BP's civil action.  In fact, by express reference to this investigation, BP's complaint virtually acknowledges as much. *See* BP Complaint, ¶48 (E.D. La. 13-6674, Rec. Doc. 1).

As discussed *infra*, the weight of jurisprudential authority warrants a stay of BP's civil action pending the outcome of such a parallel, ongoing criminal investigation. Otherwise, Mr. Watts would impermissibly be obliged to choose between the fulfillment of civil discovery obligations and the exercise of every citizen's right to assert the constitutional privileges made available in criminal proceedings.[1]

Attached as "Exhibit A" is the Affidavit of Mr. Watts' criminal defense counsel, Robert McDuff. *See* Affidavit of Robert McDuff, Esq. [Exhibit A]. As a predicate to this stay request, this affidavit confirms that: (1) a number of individuals, including Mr. Watts, are under federal criminal investigation; (2) BP's complaint "refers to and arises out of the same activities" which are the subject of this investigation; (3) file materials from the Watts Guerra law offices have been seized and are in the custody of federal law enforcement officials, in connection with this investigation; (4) the potential for a criminal indictment of a number of individuals under investigation is "real, appreciable, and non-speculative;" (5) he, as counsel, would advise Mr. Watts to invoke his constitutional privilege and decline to testify or respond to discovery in the civil case, absent a stay; and (6) absent a stay, "any testimony by [Mr. Watts] in the civil matter would improperly reveal strategies and defenses to be utilized on his behalf should a criminal prosecution ensue." *See* Exhibit A, ¶¶2-6

## I.   THE DISTRICT COURT'S AUTHORITY TO STAY

It is well-settled that this Court has inherent "authority to regulate its flow of cases," which authority specifically includes the granting of stays in civil matters pending the resolution of parallel criminal proceedings. *See Grant v. Houser,* 799 F. Supp. 2d 673, 675 (E.D. La. 2011), (citing *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.,* 761 F.2d 198, 204 n. 6 (5th Cir. 1985)

---

[1] BP itself should be well-aware of – and supportive – of preserving such privileges. A number of its own employees asserted the Fifth Amendment privilege against self-incrimination by declining to respond to deposition questions during the discovery activity preceding the Phase One trial in this litigation.

(citations omitted)). Even to the extent stay orders should be entered with caution, the case law unequivocally warrants a stay of civil proceedings, a postponement of discovery, and/or the imposition of appropriate protective orders and conditions, when justice so requires. *See Landis v. N. Am. Co.*, 299 U.S. 248, 57 S. Ct. 163, 81 L. Ed. 153 (1936) (citing *United States v. Kordel,* 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970); *Mayo v. Tri–Bell Indus.,* 787 F.2d 1007, 1012 (5th Cir. 1986)). *Waste Mgmt. of Louisiana, LLC v. River Birch, Inc.,* No. 11-2405, 2012 WL 520660 (E.D. La. Feb. 15, 2012) *reconsideration denied,* No. 11-2405, 2012 WL 876717 (E.D. La. Mar. 14, 2012). This Court in particular has recognized (in a case arising out of the Deepwater Horizon spill) the Fifth Circuit's instruction, that, when civil and criminal proceedings are in parallel, the "judicial discretion and procedural flexibility [available to a district judge] should be used to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other." *Southeast Recovery Group, LLC v. BP America, Inc.,* 278 F.R.D. 162, 165 (E.D. La. 2012) (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962)).[2]

In the final analysis, the jurisprudence supports a civil action stay in matters such as this when "special circumstances" are demonstrated by the movant. *See Lodge v. Boyd*, No. 11-1257, 2011 WL 4727863, *2 (E.D. La. Oct. 6, 2011) (citing *LeBouef v. Global X–Ray,* Civil Action No. 07–5755, 2008 WL 239752, at *2 (E.D. La. Jan. 29, 2008) (citing *S.E.C. v. First Financial Group,* 659 F.2d 660, 668 (5th Cir. 1981)). Whether such special circumstances exist in turn depends on a balancing of the following considerations or factors: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the

---

[2] In a well-reasoned opinion by Magistrate Judge Wilkinson on a case related to the Deepwater Horizon incident, a stay was entered in the *Southeast Recovery Group* case upon a motion by the federal government to intervene and stay the case. The stay was entered even though one of the jurisprudential factors described herein weighed slightly against a stay.

criminal case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously, weighed against the prejudice to the plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest. *Id*. at 166-167.

## II. THE JURSIPRUDENTIAL FACTORS WEIGH IN FAVOR OF THE REQUESTED STAY

### A. Factor One: The Extent to Which the Issues in the Criminal Case Overlap With Those Presented in the Civil Case.

When both civil and criminal matters are contemporaneously proceeding, district courts generally grant a stay of the civil case where there exists "great overlap" between the civil and criminal matters. *Waste Mgmt. of Louisiana, LLC v. River Birch, Inc.,* No. 11-2405, 2012 WL 520660 (E.D. La. Feb. 15, 2012) *reconsideration denied,* No. 11-2405, 2012 WL 876717 (E.D. La. Mar. 14, 2012) (citing *Astoria Entm't, Inc. v. Edwards,* No. 98–3359, 1999 U.S. Dist. LEXIS 6040, at *3 (E.D. La. Apr. 22, 1999) (Duval, J.)). This factor has been referred to by some courts as "the most important threshold issue in determining whether to stay." *Id*. (citing *Dominguez v. Hartford Fin. Servs. Grp., Inc.,* 530 F. Supp. 2d 902, 906–07 (S.D. Tex. 2008)*; LeBouef,* 2008 U.S. Dist. LEXIS 6470, at *4, 2008 WL 239752).

Where, as here, the civil action involves the same conduct or underlying circumstances as that which forms the basis of a criminal investigation, any information provided in the civil case can be used as "highly probative and unfairly prejudicial information" in the criminal proceeding. *Lodge*, 2011 WL 4727863 at *3. Likewise, when the same witnesses are expected to testify in both proceedings and the evidence involved in the two is substantially similar, there exists significant overlap between the two so as to warrant a stay under the first factor. *Waste Mgmt.,* 2012 WL 520660 at *4.

Here, there is extensive overlap of the alleged facts, activities and conduct underlying both the civil complaint against the Watts Defendants and the ongoing criminal investigation by the federal government. Regarding the key questions of Mr. Watts' representations and communications about his client inventory in the BP oil spill litigation, logic would dictate that the evidence and witnesses in both matters will, in fact, be the same, since BP's civil action requires that it prove the very inaccuracies and misrepresentations which are the subject of the ongoing criminal investigation. Mr. McDuff's affidavit establishes this critical fact, and BP's complaint indicates the same. Thus, this first-consideration weighs in favor of a stay of this civil matter.

### B. Factor Two: The Status of the Criminal Case.

Although district courts have generally held that stays in civil cases are most appropriate where a party in the civil case has already been indicted for the same conduct, this formality is not considered a prerequisite to entry of a stay. *Southeast Recovery Grp.*, 278 F.R.D. at 167. On the contrary, the fact that formal criminal charges have not yet been filed has not been viewed as militating against the granting of a stay in the civil proceedings. *Id.* at 167; *See also Waste Mgmt*; 2012 WL 520660 at *4. Where the defendant can provide evidence that a criminal investigation is active and/or imminent, a stay of the civil case is justified, even without a formal indictment having been issued. In *Southeast Recovery Group*, the court stayed the civil case, which grew out of the BP oil spill, even though no indictment had been issued and the investigation was ongoing. *See Southeast Recovery Grp.*, 278 F.R.D. at 169.

In the case of *Waste Mgmt. of Louisiana, LLC v. River Birch, Inc.*, two of the four defendants named in the civil action had not yet been indicted on criminal charges for the same alleged conduct when they sought a stay of the civil proceedings. Nonetheless, another judge in

this Court concluded that the evidence presented by the defendants in support of their stay request demonstrated that the parallel criminal investigation was "extremely active," rather than speculative. *See Waste Mgmt.*, 2012 WL 520660 at *4. The focus of the analysis, then, was the potential disruption of or interference with an active criminal investigation, independent of whether the investigation had yet ripened into a formal indictment. The Court in the *River Birch* case ordered that the civil litigation in that matter be completely stayed, including all discovery, "until the federal criminal investigation […] [was] resolved or until the statutes of limitations for any criminal actions arising out of those events had expired, whichever occur[red] first." *Id*. at *6.

In *Wheling v. Columbia Broadcasting Sys., Inc.*, the Fifth Circuit reversed a District Court that had allowed discovery to proceed against a civil plaintiff who was under federal investigation but had not been indicted. *Wheling v. Columbia Broadcasting Sys., Inc.*, 611 F.2d 1084 (5th Cir. 1979), *reh'g denied*, 611 F.2d 1026 (5th Cir. 1980). The Fifth Circuit's decision made it clear that even though no indictment had been issued, a party should not be put in a position of having to invoke his constitutional rights in a civil case during the pendency of a federal criminal investigation. *Id*. at 1089.

Here, as plaintiffs themselves acknowledge, a federal criminal investigation into the conduct which forms the gravamen of their action has been instituted, the Watts Defendants' offices having been raided by the Secret Service as a part of that investigation. Further, according to the personal knowledge of counsel representing Mr. Watts in that same investigation, the prospect of an indictment of a number of individually under investigation, is "real, appreciable and non-speculative." *See* Exhibit A, ¶4. Given the fact that an overlapping criminal investigation is active, and given the concern that broad-ranging discovery in this civil

matter would likely disrupt or even undermine the criminal investigation, the status of that investigation is a consideration which weighs heavily in favor of a civil action stay.

### C. Factor Three: The Private Interests of, and Prejudice to, the Plaintiff.

The private interest of the plaintiffs in proceeding with their civil case expeditiously is not absolute but relative in matters such as this; and where plaintiffs will not suffer demonstrable and irreparable harm during the stay, and especially having themselves acknowledged the existence of a parallel criminal proceeding or investigation, this consideration weighs in favor of granting a stay.[3] *Shell Offshore, Inc. v. Courtney*, No. 05-1956, 2006 WL 1968926, *1 (E.D. La. July 12, 2006.

The Court's consideration of this private interest/prejudice factor includes a determination whether there is a risk that evidence important to the civil case plaintiffs will be compromised or lost in the event of a stay. This concern does not exist herein, as demonstrated by the similar circumstances in the *Waste Management* case, where the court noted, and relied on the fact in granting a stay, that the federal government already had seized countless documents belonging to the defendants as part of their criminal investigation. *See Waste Mgmt*; 2012 WL 520660 at *4. Similarly, federal authorities in this case already have seized and secured numerous documents from the Watts Defendants' Texas offices. *See* Exhibit A, ¶3. Therefore, any concern that the plaintiffs might have regarding lost or disappearing documentary evidence during the pendency of a stay, should be seen as alleviated. Indeed, as articulated by the court in *Waste Management*, the plaintiffs here might actually <u>benefit</u> from a stay of the civil

---

[3] In this regard, it should be noted that the BP Plaintiffs have sought an injunctive order as part of their civil action against the Watts Defendants and others, by which they seek to prevent the further distribution of settlement proceeds which they allege should be returned to them. The request has been opposed by the defendant class of settlement claimants named in this action, and the Court presumably will address and rule on this injunctive request in the near future. Any prejudice to the BP Plaintiffs by virtue of a delay in these proceedings thus appears to be a question which will be adjudicated by this Court, at least in part, independent of the instant motion.

proceedings, in that they could become privy to the documents gathered during the criminal investigation. *See Waste Mgmt*; 2012 WL 520660 at *4.

Finally, this Court has authority to order the parties to regularly report to and update it regarding the status of the criminal proceedings, as was done in the *Waste Management* case. *Id.* at *4. This would remedy any alleged harm or prejudice to plaintiffs during a stay by assuring that the stay is maintained solely and strictly in order to allow an active criminal investigation to proceed. If at any point the criminal investigation appears to be stalled, the Court likewise might consider entertaining a motion to vacate the stay. *See Id.*

### D. Factor Four: The Private Interest and Burden on the Defendant.

The burden on a defendant is self-evidently great where he may be forced to choose between his civil discovery obligations and his right to assert a Fifth Amendment privilege against self-incrimination. *Waste Mgmt*, 2012 WL 520660 at *5. Hence, this Court must determine whether there is a real threat of self-incrimination if the civil matter is allowed to proceed. *See Shell Offshore, Inc. v. Courtney*, No. 05-1956, 2006 WL 1968926, *1 (E.D. La. July 12, 2006); *see also Waste Mgmt*; 2012 WL 520660 at *5. Courts properly place great importance on a defendant's Fifth Amendment right against self-incrimination in matters such as this; and, where this right is in danger of being compromised, a stay is generally warranted. *See Shell Offshore*, 2006 WL 1968926 at *1 (holding that where the defendant's consequences of incriminating himself were real and significant, a stay was warranted); *see also Waste Mgmt*, 2012 WL 520660 at *5 (holding that a stay was proper where the defendants would face a real risk of self-incrimination should they be forced to defend themselves in the civil matter).

Here, as confirmed by the attached affidavit of his attorney in the criminal investigation, the risk of self-incrimination clearly exists if Mr. Watts is forced to respond to allegations and

discovery requests by and from plaintiffs. Moreover, upon the invocation of a Fifth Amendment privilege by Mr. Watts, the other defendants named in the civil action obviously will be impaired in their own ability to defend themselves. A classic tension therefore exists between the constitutional protection afforded Mikal Watts in the criminal proceedings, and the need for civil case discovery and disclosure in order for all parties' interests to be protected in the civil litigation. This tension becomes more than theoretical, but instead an onerous burden on Mr. Watts, absent a stay of the civil action. Indeed, Mr. Watts' criminal defense counsel has confirmed he will advise Mr. Watts to exercise his right to not respond to discovery questions and will further advise him that "any testimony by him in the civil matter would reveal strategies and defenses to be utilized on his behalf should a criminal prosecution ensue." Exhibit A, ¶5-6. The invocation of the privilege against testifying in the civil case, therefore, is both justified and to be expected; and Mr. Watts assuredly should not have to choose between civil discovery obligations and his right to assert constitutionally-conferred privileges. The Court should weigh such a burden on Mr. Watts against the civil plaintiffs' interests in proceeding, and conclude that a stay is in order pursuant to this jurisprudential factor in the analysis.

Such a conclusion will be in accord with the overwhelming precedent set forth in reported case law; for district courts consistently have held that a civil case stay is warranted where the defendant "would be burdened by civil discovery on the same issues as a pending criminal case." *Waste Mgmt.*, 2012 WL 520660 at *5 (citing *Doe v. Morris,* No. 11–1532, 2012 U.S. Dist. LEXIS 12454, at *4 (E.D. La. Feb. 2, 2012) (Vance, C.J.) (Quoting *Whitney Nat'l Bank v. Air Ambulance by B & C Flight Mgmt., Inc.,* No. H–04–2220, U.S. Dist. LEXIS 36654, at *3 (S.D. Tex. May 18, 2007)). In doing so, the courts essentially are giving weight to the burden on a defendant in the event active civil litigation requires that defendant to waive a Fifth

Amendment right when responding to civil discovery requests. *See Waste Mgmt.*, 2012 WL 520660 at *5. In the absence of a stay, the necessity of properly defending himself and responding to discovery in the civil action brought by BP would place great pressure on Mr. Watts to waive his right not to testify. *See* Exhibit A, ¶5. The burden and dilemma thereby placed upon Mr. Watts and the other co-defendants in the civil action are significant, having constitutional dimension in Mr. Watts' case, and a stay ordered in this Court's discretion is the only proper resolution.

### E.  Factor Five: The Interests of the Court.

Courts have an interest in judicial economy and expediency in the handling of their dockets, so that any grant of a stay must not undermine these interests. In this regard, it is submitted that a resolution of the criminal investigation of the conduct placed at issue in BP's action, ultimately will serve the docket-management interests of the Court. *Waste Mgmt*; 2012 WL 520660 at *5; *Offill,* 2008 WL 958072, at *3. Staying a civil matter pending the resolution of a parallel criminal proceeding has the obvious advantage of avoiding unnecessary and duplicative discovery. Here, any discovery obtained in the instant case may need to be updated, and witnesses may need to be re-deposed, once privileged information and testimony is obtainable upon completion of the criminal investigation. Such duplicative discovery does not serve the interests of this Court in cost-efficient case management.

Likewise, any subsequent resolution of the parallel criminal matter may well have the advantage of streamlining the civil matter, given the possibility of "collateral estoppel or res judicata [affecting] some of all of the overlapping issues." *Waste Mgmt*; 2012 WL 520660 at *5. Hence, just as there is a substantial likelihood that significant judicial resources will be unnecessarily expended if the civil and criminal matters proceed simultaneously, these same

resources may be preserved if this matter is deferred until such time as the criminal investigation has run its course. Due consideration of this factor also weighs in favor of a stay.

### F. Factor Six: The Public Interest.

Of all the considerations articulated, several courts have identified the public interest as "perhaps the most important factor." *Offill,* 2008 WL 958072, at *3 (citing *Securities & Exchange Commission,* 2008 WL 958072 at *4 (quoting M. Pollack, *Parallel Civil and Criminal Proceedings,* 129 F.R.D. 201, 205 (1990)). The public's interest in law enforcement efforts through criminal investigation and the prosecution of allegedly fraudulent conduct is of course, a significant one, whatever the outcome of these efforts. As the Fifth Circuit has noted:

> The very fact that there is clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried [or proceed] first. *Administrative policy gives priority to the public interest in law enforcement.* This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.

*Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir.1962) (emphasis added).

Moreover, it is appropriate for this Court to consider whether, if the civil matter were to proceed, broad-ranging discovery therein would disrupt or perhaps even undermine the criminal investigation. *Southeast Recovery Grp.,* 278 F.R.D. at 169.

BP has brought into this civil forum serious allegations of misconduct on the part of the Watts Defendants. But BP is not the government (indeed, it is far from it in these proceedings). Thus, the public's interest would be best served by allowing the government's criminal investigation into Watts' allegedly unlawful conduct to be resolved fully and fairly as a priority, before BP's civil claims as a private litigant proceed, and potentially disrupt an ongoing investigation.

### III.  CONCLUSION

Upon consideration of the jurisprudential factors articulated above, the balance weighs heavily in favor of granting the Watts Defendants' Motion to Stay in the instant matter, pending the resolution of parallel criminal proceedings.  The requisite "special circumstances" clearly prevail herein to warrant such a stay.  The alleged conduct and factual circumstances forming the bases of both this matter and the ongoing criminal investigation overlap significantly; and, absent a stay, Mikal Watts faces the pressure of having to waive a constitutional right of protection against self-incrimination in order to properly respond to the civil case allegations.  Moreover, a stay of the instant matter before any significant discovery has been conducted, serves both the interests of the parties and this Court as well as the interests of the public.  Conversely, any discovery conducted as part of the civil case will likely disrupt, and perhaps even undermine, the ongoing criminal investigation.

Should concern arise regarding the length of delay in the instant matter resulting from the requested stay, the Court may require that regular updates be provided concerning the status of the parallel criminal investigation.  Since, based on Mr. McDuff's affidavit, the government's decision whether to indict those under investigation is expected within two months, a provision for updates in this same time frame would be logical and appropriate.

This Court accordingly should exercise its authority to grant a stay of the instant matter; and the Watts Defendants respectfully submit that this stay be maintained pending the conclusion of the parallel federal criminal investigation and any criminal proceedings pertinent to the activities of Mikal Watts or his firm which are alleged by BP as a basis for liability in this civil action.  Provision for a time-specific report to the Court and counsel concerning the status of the criminal investigation is included in the Order submitted herewith.

Respectfully submitted:

GAINSBURGH, BENJAMIN, DAVID, MEUNIER & WARSHAUER, L.L.C.

BY:  */s/Gerald E. Meunier*
GERALD E. MEUNIER, #9471
M. PALMER LAMBERT, #33228
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:     504/528-9973
gmeunier@gainsben.com
plambert@gainsben.com

*Counsel for Mikal C. Watts and Watts Guerra LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2014, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

/s/ *Gerald E. Meunier*
GERALD E. MEUNIER, #9471