UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL 2179 |
| "DEEPWATER HORIZON" IN THE | : | |
| GULF OF MEXICO, ON APRIL 20, 2010 | : | Section J |
| | : | |
| This Document Applies to: | : | Judge Barbier |
| | : | |
| *No. 12-970, Bon Secour Fisheries, Inc., et* | : | Mag. Judge Shushan |
| *al. v. BP Exploration & Production Inc., et al.* | : | |

JANUARY 17, 2014
<u>REPORT OF SPECIAL MASTER LOUIS J. FREEH</u>

On July 2, 2013, the Honorable Carl J. Barbier, United States District Judge for the Eastern District of Louisiana, appointed Louis J. Freeh as Special Master in this matter. The appointment, made pursuant to Federal Rule of Civil Procedure 53 and the Court's inherent authority, directed the Special Master to conduct fact-finding as to possible ethical violations or other misconduct within the Court Supervised Settlement Program ("CSSP"), among other mandates. On September 6, 2013, Judge Barbier issued additional mandates, including examining and investigating conflicts of interest by parties involved in the CSSP and assisting the Claim's Administrator with implementation of conflict of interest policies.

On October 7, 2013, the Special Master began a review of a potential conflict of interest and breach of confidentiality by David H. Duval, the Appeals Coordinator at the Claims Administration Office ("CAO") from May 1, 2012 until his resignation that day. The allegation concerned Mr. Duval's handling of an October 2, 2013 email from an appeals panelist regarding a claimant represented by Duval, Funderburk, Sundbery, Lovell & Watkins, APLC ("Duval Funderburk"), a law firm where Mr. Duval's uncle and cousin are partners. Earlier in his legal career, Mr. Duval also worked at the firm.

The evidence shows that David Duval's conduct regarding the October 2, 2013 email violated the Court's June 29, 2012 Confidentiality Order and the CAO's Conflict of Interest and Recusal Policy.  The violations are mitigated by the facts that Mr. Duval did not receive any financial benefit from his actions and did not conceal his misconduct.

## I. Methodology

From October 7, 2013 to December 10, 2013, the Special Master interviewed more than 12 CAO employees.  The Special Master also met with U.S. Magistrate Judge Sally Shushan, as well as CAO vendor employees and an attorney for BP.  The Special Master took sworn statements of David Duval and two partners at Duval Funderburk:  David Duval's uncle, C. Berwick Duval, and cousin, Stanwood "Stan" Duval.

In addition to information obtained for a report issued by the Special Master on September 6, 2013, the Special Master gathered and updated the email archive from the Deepwater Horizon Economic Claims Center ("DHECC") email compliance system, data from David Duval's DHECC-provided laptop, and CAO claims lookup data.  Witnesses provided various files and electronic records.  The Special Master also issued subpoenas to several parties, financial institutions, telecommunication carriers, and other entities.

## II. Analysis

All CAO employees agree to abide by a policy concerning conflicts of interest.  Mr. Duval signed these policies on May 1, 2012 and July 17, 2012, and agreed to "take appropriate steps to avoid even the appearance of a conflict of interest or loss of impartiality with respect to the performance of [his] official duties as part of the Court Supervised Claims Program."  Mr. Duval also agreed not to perform official duties relating

to any former employer, close family member, or close personal friend without the Claims Administrator's prior approval.

On July 16, 2012, Mr. Duval signed a confidentiality certification, agreeing to use claims information solely for his CAO work and to not disclose the information to any party not necessary for his authorized work or as required by law.  Mr. Duval understood the confidentiality rules to apply to the CAO's internal working documents.

Because potential conflicts of interest for Mr. Duval were discussed in the Special Master's September 6, 2013 Report, in the aftermath of that Report, the Special Master team and the Claims Administrator also reminded Mr. Duval in September 2013 of the importance of avoiding conflicts of interest.

A. <u>The October 2, 2013 Email and Subsequent Events</u>.

David Duval was copied on an October 2, 2013 email from an appeals panelist which discussed an issue relevant to a claimant represented by Duval Funderburk.  On Thursday, October 3, 2013 at 11:37 a.m. David Duval forwarded a revised version of the October 2, 2013 email from his official DHECC email account to a private Hotmail account he maintained.  Before forwarding the email, Mr. Duval redacted the email addresses and the names of the sender and recipients.  An hour later, at 12:38 p.m., David Duval forwarded the redacted email from his Hotmail account to Stan Duval's email account at Duval Funderburk.

By passing the October 2, 2013 email to Stan Duval, David Duval disclosed "Claims Information" provided to him in his official position for a purpose not necessary for the performance of his official duty or required by law.  Mr. Duval knew the email contained "the thoughts of a panelist," that he had never sent a panelist's email to any other claimant,

and that the Court's confidentiality order covered "[a]ny documents or information that was related to the Deepwater Horizon Claims Center."

    B. <u>Duval Funderburk Reports Receipt of the Email</u>.

On October 4, 2013, Berwick Duval self-reported to Judge Shushan that the firm had received the forwarded October 2, 2013 email from David Duval. Judge Shushan instructed Berwick Duval to treat the email as an inadvertent disclosure, and instructed him to make no use of the information or reveal the receipt of the email. On October 10, 2013, Judge Barbier entered an order under seal confirming this direction. Berwick Duval's report to the Court was prompt and proper.

### III. <u>Financial Review Concerning David Duval</u>

The Special Master reviewed whether David Duval obtained any financial benefit from providing assistance to family members at the Duval Funderburk firm. No financial benefit from Duval Funderburk or its partners or its clients was indicated in the review of financial records.

### IV. <u>Other Information Learned During Investigation</u>

During the financial review, the Special Master found three checks deposited into David Duval's bank account in 2013 from a company owned by Kirk Fisher, the CAO's former Director of the Business Processes and Reporting. Mr. Fisher said the checks were repayments for charges on Mr. Duval's bank card while the two men and others from the CAO were at a New Orleans bar. Mr. Duval, Mr. Fisher and David Odom visited the bar together, and on more than one occasion were accompanied by CAO subordinates. One CAO employee said he was "not comfortable" engaging in this activity with his supervisors,

and stayed only long enough to fulfill a sense of obligation.  Significant expenses were incurred at the bar.

The bar is a DHECC claimant, and received more than $500,000 in August 2013 for its business economic loss claim.  The Special Master reviewed the claim file and saw no unusual activity by Mr. Duval, Mr. Fisher, Mr. Odom or other DHECC employees relative to the claim.

The Special Master conducted a limited review of the CAO senior staff expense vouchers.  No expense reimbursements attributable to charges at the bar (or the trade name the bar uses on bank charges) have been identified to date.  A full audit is scheduled by an outside accounting firm.

Involvement of senior CAO staff in these activities raises several concerns.  The actions are inconsistent with development of a proper ethical tone from senior staff of an organization performing an important function for the Court, and also set an inappropriate tone for interaction with subordinate staff.  The actions further create risks for an office entrusted to administer a multi-billion dollar settlement fund, as financial distress can lead to susceptibility to bribery and other vulnerabilities.  Senior CAO staff participating in these events did not adequately consider these points.[1]

On December 20, 2013, David Odom and Kirk Fisher resigned from the CAO.

---

[1] While reviewing this issue, the Special Master's staff asked Kirk Fisher to have no contact with David Duval after a December 3, 2013 interview.  Mr. Fisher nonetheless had contact with Mr. Duval in the next days, including receiving a text message on December 5, 2013 from Mr. Duval advising Mr. Fisher, "Be careful of mentioning anything about talking to me."  Mr. Fisher deleted text messages with Mr. Duval after the December 3 interview.  Mr. Fisher provided the Special Master access to his text message account, which allowed the Special Master to recover deleted text messages.

## V. <u>Recommendations</u>

1. *The Special Master recommends that the CAO should continue to educate its staff on the high ethical expectations concerning confidential information, conflicts of interest and recusal*

Since the Special Master's September 6, 2013 Report, the CAO has held training on the high ethical standards expected from all staff. This effort should continue, with particular emphasis on setting a strong tone from management on ethical issues and ensuring vendor awareness of ethical obligations. Consideration should be given to providing in-house resources for addressing questions and providing guidance on compliance policies and procedures, including when needed on an urgent basis.

The CAO also should evaluate, audit and test its compliance efforts, including effective procedures to ensure that where misconduct may be discovered, reasonable steps will be taken to prevent further similar misconduct. The CAO should periodically review its compliance procedures to evaluate and improve the program's effectiveness.

2. *The Special Master recommends that the CAO should develop appropriate staff positions dedicated to fielding claim status questions*

In an effort to be "claimant friendly" as directed by the Settlement Agreement, the CAO has encouraged staff to provide claim status information to the public. This approach presents a risk that apparent or actual conflicts of interest can develop. As shown in the Special Master's Report of September 6, 2013, the CAO's well-intentioned direction to assist claimants also can be manipulated by persons intent on personally benefiting from their access at the CAO. Neither result is acceptable.

The CAO should consider having staff members designated to respond to all calls for claim information. All other staff should be directed to forward inquiries to these designated staff. Calls, inquiries and resolutions should be tracked, monitored and audited.

Consistent response protocols should be developed.  No prioritization of claims other than as provided in CAO protocols should be permitted.

    3.    *The Special Master recommends that the CAO should develop an appropriate communication policy, including requiring usage of official email*

The CAO should have a complete record of communications by its staff so that the archive of work performed and communications made is fully available.  This is important for many policy reasons, as well as for protection of the CAO program and its staff.  The CAO staff, the Special Master staff and outside counsel recently have drafted a policy addressing this issue.  The Special Master recommends that the Court direct the CAO to implement this policy.  Monitoring and auditing for compliance should be performed.

    4.    *The Special Master recommends that the CAO should involve the Fraud, Waste and Abuse Coordinator at the start and at each phase of investigations*

The CAO is fortunate to have a former federal law enforcement officer, experienced in conducting investigations, who is available to guide the CAO through internal issues that arise.  The senior CAO staff must draw on this resource, and involve this important part of the office immediately when a potential ethical or misconduct issue is discovered.

    Respectfully submitted,

      /s/  Louis J. Freeh
    Louis J. Freeh
    Special Master

Dated:  January 17, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Report has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, and that a copy of the foregoing has been served this  17th  day of     January    , 2014, by electronic mail, on the following:

>Harry Rosenberg
>Phelps Dunbar LLP
>Canal Place - 365 Canal Street, Suite 2000
>New Orleans, LA 70130
>*Attorney for David H. Duval*
>
>Kyle Schonekas
>Billy Gibbens
>Schonekas, Evans, McGoey & McEachin, L.L.C.
>909 Poydras Street, Suite 1600
>New Orleans, LA  70112
>*Attorneys for Duval, Funderburk, Sundbery, Lovell & Watkins, APLC, C. Berwick Duval and Stanwood Duval*

>/s/Louis J. Freeh
>Louis J. Freeh