IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 |
| | | SECTION J |
| This document relates to all actions. | * * * * * * * | Honorable CARL J. BARBIER |
| | | Magistrate Judge SHUSHAN |

BP'S RESPONSE TO
CLASS COUNSEL'S COMMENTS
ON THE SPECIAL MASTER'S REPORT

On September 6, 2013, Special Master Freeh issued a Report demonstrating that conflicts of interest, inadequate anti-fraud controls, and resistance to reform are plaguing the Court Supervised Settlement Program.  *See* Rec. Doc. 11287 ("Special Master Report").  Both BP and Class Counsel filed responses to the Report.  *See* Rec. Docs. 11463 (Class Counsel), 11471 (BP).  BP is tendering this short response to Class Counsel's comments because Class Counsel have misstated the record and the law in certain respects and because correction of those misstatements will materially assist the Court's consideration of the issues before it.  Moreover, Class Counsel's filing was made before the Fifth Circuit's decisions in *In re Deepwater Horizon*, 732 F.3d 326 (5th Cir. 2013) ("BEL Decision"); *In re Deepwater Horizon*, Nos. 13-30315 & 13-30329, Doc. 00512457612 (5th Cir. Dec. 2, 2013) ("BEL Causation Order"); and *In re Deepwater Horizon*, No. 13-30095, Doc. 00512496788 (5th Cir. Jan. 10, 2014) ("Certification Decision").  Those decisions preclude numerous of Class Counsel's assertions.

Specifically, BP responds to Class Counsel's statements as follows:

1

1.      BP did not waive the $75 million liability cap that applies under the Oil Pollution Act, *see* 33 U.S.C. § 2704(a)(3), for the reasons that Class Counsel asserts, *i.e.*, because BP allegedly engaged in gross negligence or willful misconduct or because it violated federal safety or operating regulations.  *See* Rec. Doc. 11463 ("Cmts.") ¶ 1.  As the Court is aware, BP denies all allegations that it engaged in such conduct. *See generally* Rec. Docs. 10466 (BP's Phase One Post-Trial Brief), 10467 (BP's Phase One Proposed Findings of Fact and Conclusions of Law), 10734 (BP's Phase One Post-Trial Reply), 11268 (BP's Phase Two Pre-Trial Memorandum (Source Control)), 11349 (BP's Phase Two Pre-Trial Reply (Source Control)), 12045 (BP's Phase Two Post-Trial Brief (Source Control)).  Moreover, the Court has previously found that the regulations that the United States claimed BP violated are "not the type that would remove OPA's liability cap." Rec. Doc. 5809 (February 2012 Summary Judgment Ruling) at 13.  As BP explained in its October 2010 statement waiving the cap, "BP and its affiliates are not admitting anything about their conduct and, indeed, specifically deny that they have engaged in any gross negligence in connection with the *Deepwater Horizon* incident and the resulting oil spill."  Rec. Doc. 559 at 1-2.  Rather, as Special Master Freeh recognized, BP waived the cap "in an effort to begin to fulfill its obligations under the Oil Pollution Act of 1990," Special Master Report at 1, *i.e.*, because it decided immediately in the wake of the spill to do the right thing and pay all legitimate claims for legally compensable losses caused by the spill.

2.      Class Counsel's comments regarding the Gulf Coast Claims Facility ("GCCF") are irrelevant. *See* Cmts. ¶ 2.  As Class Counsel admit, the GCCF accepted and paid a wide variety of types of claims, including lost profits, lost wages, removal and cleanup costs, damage to real or personal property, loss of use of subsistence resources, and physical injury or death.

2

*Id.* Whether any particular claim before the GCCF merited payment turned on the specific facts of the claim and is not susceptible to generalizations.

   **3.**  Class Counsel note that Louisiana Rule of Professional Conduct 1.5(e) does not specify the time when the client's written consent to a fee-sharing arrangement must be obtained. *See* Cmts. ¶ 3. Yet a practice of obtaining client consent to a shared representation "at different times" after the commencement of the representation would defeat the purpose of Rule 1.5(e) and thus should be strongly discouraged. The obvious aim of Rule 1.5(e) is to protect the client's right to select counsel of his choosing before legal services are provided. The practice of obtaining consent to shared representation at later or different times lends itself to abuse, as the client may not know who is handling his case until well after services have already been provided. In *In re Fewell*, cited by Class Counsel (Cmts. ¶ 3 n.11), the Louisiana Attorney Disciplinary Board stated that "[o]bviously, it is prudent for such writings to occur at the commencement of the representation." No. 12-DB-048 (La. Discip. Bd. Aug. 7, 2013) at 8, *available at* http://www.ladb.org/new/DR/handler.document.aspx?DocID=8027. The Disciplinary Board further found that the client had been informed in advance of all lawyers who would represent him and consented to the shared representation. Written consent to the representation by all lawyers in a fee-sharing agreement should be obtained at the outset of the representation and before legal services are provided.

  Class Counsel further suggest that express client consent to the share of the fee that each lawyer will receive in a fee-sharing agreement may not be required. *See* Cmts. ¶ 3 n.11. Louisiana Rule 1.5(e)(1), however, provides that fee division is permissible only if "the client agrees in writing to the representation by all of the lawyers involved, and is advised in writing as to the share of the fee that each lawyer will receive." Since the choice of lawyers at all times

rests in the hands of the client, this rule clearly intends that clients be (a) informed beforehand about representation by multiple lawyers; and (b) informed of proposed fee divisions, precisely so that the client can use the information about the identity of the multiple lawyers and the nature of the fee division to decide whether he or she wants to be represented by those lawyers using that particular fee division. Nothing on the face of the Rule indicates that it deprives clients of their right to use the information concerning the fee division to decide whether they wish to agree to be represented by the lawyers proposing such a fee division.

4. Class Counsel challenge the Special Master's observation that a Business Economic Loss Claimant alleges that "economic harm had been caused to the business as a result of the *Deepwater Horizon* spill." Cmts. ¶ 4 (quoting Special Master Report at 46). But under the terms of the Settlement Agreement, that is precisely what Business Economic Loss Claimant must allege and attest to. *See* Settlement Agreement ¶ 38.60 ("Economic Damage Claimant shall mean an Individual Claimant or Business Claimant who or that claims to have suffered Economic Damage."); *id.* ¶ 38.57 ("Economic Damage shall mean loss of profits, income, and/or earnings . . . allegedly arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident . . . ."). BP's position with respect to this issue is set forth in detail in its recent Fifth Circuit filings, and BP incorporates those filings by reference as though fully set forth herein. *See, e.g.*, Renewed Motion of Defendants-Appellants for an Injunction, Fifth Cir. No. 13-30315, Doc. 00512454163 (5th Cir. Dec. 30, 2013); Letter from Ted Olson to Lyle W. Cayce, Fifth Cir. No. 13-30315, Doc. 00512493887 (5th Cir. Jan. 8, 2014); Reply In Supp. of Renewed Motion of Defendants-Appellants For An Injunction, Fifth Cir. No. 13-30315, Doc. 00512496800 (5th Cir. Jan. 10, 2014); *see also* Certification Decision at 16-17 (Settlement Agreement "explicitly limits claims to those based on '[l]oss of income,

earnings, or profits suffered by Natural Persons or Entities *as a result of* the DEEPWATER HORIZON INCIDENT' . . . .") (alteration and emphasis in original).

**5.** Class Counsel's allegations regarding BP's appeals of claims awards are demonstrably inaccurate. *See* Cmts. ¶ 5. The large majority of BP's appeals have challenged, among other things, the Settlement Program's failure to match revenues and corresponding variable expenses. The United States Court of Appeals for the Fifth Circuit and this Court have confirmed that the Claims Administrator erred and reversed the Claims Administrator's January 15, 2013 policy. *See* BEL Decision. In addition, with regard to other issues, the Appeals Panel has remanded or reversed substantial numbers of the Claims Administrator's awards appealed by BP. Still further, hundreds of claimants have admitted on appeal that the Claims Administrator erred and have accepted in whole or part BP's position on appeal.

In addition, the Claims Administrator's matching ruling was reversed and the causation issue was remanded for further consideration. *See* BEL Decision, 732 F.3d at 345 (Clement, J.) (instructing district court to create a "stay tailored so that those who experienced actual injury traceable to loss from the Deepwater Horizon accident continue to receive recovery but those who did not do not receive their payments."); *id.* at 346 (Southwick, J.) (Judge Clement's analysis is "logical" and causation issue should receive "the attention it deserves" on remand); *see also* BEL Causation Order at 3 ("[T]he issue of causation is once again remanded for expeditious consideration . . . .").

This Court responded to the Fifth Circuit's remand of the matching issue on December 24, 2013. "After fully reviewing the additional materials submitted by the parties and the definition of 'Variable Profit,' the Court reverses its earlier ruling and the Claims Administrator's interpretation as set forth in the January 15, 2013 Announcement of Policy

5

Decisions Regarding Claims Administration."  Rec. Doc. 12055 at 4 (Order & Reasons Responding to Remand of Business Economic Loss Issues); *see also id.* at 5 ("Thus, the Court finds that the provision for subtracting corresponding variable expenses requires that revenue must be matched with the variable expenses incurred by a claimant in conducting its business . . .").  However, the Court found as to the causation issue that

> BP is judicially estopped from arguing (1) that Exhibit 4B is not the exclusive means of determining whether a business economic loss is "as a result of" of the Deepwater Horizon Incident for purposes of the Settlement, including the Class Definition; (2) or that the Settlement contains, implicitly or explicitly, a causation requirement other than Exhibit 4B; (3) or that satisfying Exhibit 4B does not establish under the Settlement an irrebuttable presumption that a business' economic loss was "as a result of" the Deepwater Horizon Incident; (4) or making similar arguments.  As a corollary to this ruling, the Court finds that whether a business economic loss is "as a result of" the Deepwater Horizon Incident for purposes of the Settlement is determined exclusively by Exhibit 4B.

*Id.* at 37.  BP has filed a motion to the Fifth Circuit panel retaining jurisdiction over the remand seeking reversal of this causation ruling, *see* Renewed Motion of Defendants-Appellants for an Injunction, Fifth Cir. No. 13-30315, Doc. 00512454163 (5th Cir. Dec. 30, 2013), and out of an abundance of caution an appeal of this ruling as well, *see In re Deepwater Horizon*, No. 13-31316 (5th Cir.) (pending).[1]

      **6.**    Class Counsel's position regarding the data underlying the Seafood Program is not supported by the evidence in this case, or by the Settlement Agreement.  *See* Cmts. ¶ 6.  Read properly, the Special Master's Report's criticisms of the Seafood Program awards focused on the Settlement Program's failure to properly reconcile inconsistent statements by claimants, such as situations where the trip tickets reflected different catch data than those reported in the tax documents or vice versa.  There was no criticism generally regarding the reliability of data under the trip ticket database.  In any event, the Louisiana Department of Wildlife and Fisheries

---

[1] For the same reasons underlying BP's position on the causation issue and based on the recent resolution of the matching issue, the orders of April 9 and April 24, 2013, *see* Rec. Docs. 9232, 9538, require modification.

Database is an independent and reliable data source for the actual catches of Louisiana commercial fishermen and has been in operation since 1999. Louisiana commercial fishermen are required, by law, to accurately report their catches on their trip tickets. *See e.g.*, Louisiana Department of Wildlife & Fisheries, Trip Ticket Procedures Manual (Aug. 27, 2010), *available at* http://www.wlf.louisiana.gov/sites/default/files/pdf/page_licenses/32450-Trip%20Tickets/ttmanual10_august2010.pdf. Class Counsel and BP recognized the value of the independent fisheries database when they specifically included "trip tickets" as appropriate documentation required for all types of Seafood claims. Class Counsel's position also ignores the fact that under the Settlement Agreement, a party cannot rely on tax documents alone to adequately document a claim; they must have additional documents supporting the claimed revenue for each specific claim type. *See* Settlement Agreement Ex. 10; *see also* Policy No. 262, *available* at https://www2.deepwaterhorizoneconomicsettlement.com/un-secure/pkpolicysearch.aspx (search for Policy 262).

7. Class Counsel quibble with the Special Master's reference to "moratorium claim[s]." *See* Cmts. ¶ 7. Class Counsel's statement that there is "no such thing as a 'Moratoria Loss' or a 'Moratoria Claim,'" *id.*, is puzzling in light of Class Counsel's repeated demand that BP pay damages to persons asserting such claims. *See, e.g.*, Rec. Doc. 1128 (PSC Amended B1 Complaint) ¶¶ 28(l) (purporting to bring claims on behalf of persons "who have lost income, profits and/or earning capacity as a direct result of . . . the Moratorium issued by the United States Department of Interior [sic]"); *id.* 209(l) (same); Rec. Doc. 1821 (PSC B1 Opposition) at 68 n.35 (contending that case law "supports the viability of the ***Moratorium claims***") (emphasis added). To the extent Class Counsel agrees that claims for such losses are not compensable under the Settlement Agreement, BP certainly also agrees. *See* Settlement Agreement

7

¶¶ 1.3.1.10, 1.3.1.12, 3.3, 5.10, 10.2, 38.67.  And BP further asserts, as the Court is aware, that OPA does not authorize the payment of damages to such claimants.  *See, e.g.*, Rec. Doc. 2312 (BP B1 Reply) at 19-25.  That question, however, is not presently before the Court.

## **CONCLUSION**

The incorrect statements of fact and law made by Class Counsel should be disregarded by the Court.

January 17, 2014                                    Respectfully submitted,

                                                      */s/ Kevin M. Downey*

                                                      Kevin M. Downey

James J. Neath                                       F. Lane Heard III
Mark Holstein                                        WILLIAMS & CONNOLLY LLP
BP AMERICA INC.                                      725 Twelfth Street, N.W.
501 Westlake Park Boulevard                          Washington, D.C. 20005
Houston, TX  77079                                   Telephone:  (202) 434-5000
Telephone:  (281) 366-2000                           Telefax:  (202) 434-5029
Telefax:  (312) 862-2200

                                                     */s/ Don K. Haycraft*

Daniel A. Cantor                                     S. Gene Fendler (Bar #05510)
Andrew T. Karron                                     Don K. Haycraft (Bar #14361)
ARNOLD & PORTER LLP                                  R. Keith Jarrett (Bar #16984)
555 Twelfth Street, NW                               LISKOW & LEWIS
Washington, DC 20004                                 701 Poydras Street, Suite 5000
Telephone:  (202) 942-5000                           New Orleans, Louisiana 70139
Telefax:  (202) 942-5999                             Telephone:  (504) 581-7979
                                                     Telefax:  (504) 556-4108

Robert C. "Mike" Brock
COVINGTON & BURLING LLP                              Richard C. Godfrey, P.C.
1201 Pennsylvania Avenue, NW                         J. Andrew Langan, P.C.
Washington, DC 20004                                 Wendy L. Bloom
Telephone:  (202) 662-5985                           KIRKLAND & ELLIS LLP
Telefax:  (202) 662-6291                             300 North LaSalle Street
                                                     Chicago, IL 60654
Jeffrey Lennard                                      Telephone:  (312) 862-2000
Keith Moskowitz                                      Telefax:  (312) 862-2200
DENTONS US LLP
233 South Wacker Drive                               Jeffrey Bossert Clark
Suite 7800                                           Steven A. Myers
Chicago, IL  60606                                   KIRKLAND & ELLIS LLP
Telephone:  (312) 876-8000                           655 Fifteenth Street, N.W.
Telefax:  (312) 876-7934                             Washington, D.C. 20005
                                                     Telephone:  (202) 879-5000
*OF COUNSEL*                                         Telefax:  (202) 879-5200

                        *ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.*
                             *AND BP AMERICA PRODUCTION COMPANY*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of January, 2014.

/s/ Don K. Haycraft
Don K. Haycraft