# DECLARATION OF CHRISTINA E. MANCUSO

1) I am an attorney employed by Andry Lerner L.L.C. law firm ("AL") in New Orleans, Louisiana. I make this Declaration. The statements contained in this Declaration are within my personal knowledge, and, if called upon to testify, I could and would testify competently thereto.

2) I attended Baylor University in Waco, Texas (B.A. 1982) and Baylor University School of Law (J.D. 1984) I was admitted to the State Bar of Texas in 1984 and practiced at several firms from 1984 – 1990. I worked at Baron & Budd P.C. from 1990 until 2007 in Mass-Tort/ Multi-Party Toxic Tort litigation. I hold an AV Preeminent Rating by Martindale-Hubbell.

3) I am the senior AL staff attorney handling claims for property and economic damages resulting from the BP "Deepwater Horizon" Oil Spill in the Gulf of Mexico on April 20, 2010 ("Oil Spill.") I am knowledgeable about AL's Oil Spill client files.

4) The Deepwater Horizon Economic & Property Damage Claims Center ("DHECC") assigned a law firm liaison to AL upon the opening of the DWHCC. AL was then notified via email on January 2, 2013 of a law firm liaison change. AL's liaison Nikeita Ashe is part of a specialized DWHCC team devoted solely to law firm contact, outreach and help in navigating the DWHCC review process and resolving DWHCC claim issues. AL was instructed to contact the firm liaison if there were any questions or concerns regarding the status and issues of AL's claims. AL was told that the appointed firm liaison was familiar with the status of AL claims and any outstanding claim questions or issues that had occurred as of that date and such was the case.

5) The submission of claims and responses to any DWHCC issued Notices are downloaded directly into the DWHCC database system. BP is not a listed entity to be notified by Claimant or Claimant's counsel in the submission of DWHCC claims and /or any Responses to DWHCC Notices.

6) The DWHCC claim flow process does not permit communication between claimants and/or their attorneys and BP with the exception of the entry of a claim out of the DWHCC flow process and into the appeal adversarial process detailed in the Rules Governing The Appeal Process ("Appeal Rules") , a procedure established by the DWHCC to govern the process and resolution of an Appeal filed by BP or an Appeal filed by the claimant. Counsel is to be served by opposing counsel any applicable Initial and/or Final Proposals detailed in the DWHCC appeal "baseball process" as well as the Opening, Opposition, and Reply Memoranda in the DWHCC appeal "non-baseball process." Exhibit 1.

7) At times, AL was contacted for additional information, documents and explanations by the AL firm liaison and other DWHCC staff members, financial experts, analysts and accountants from DWHCC or various accounting firms hired by the DWHCC in order to aid the claim(s) progress in the DWHCC review process. AL routinely discussed the status of claims, information still required and questions regarding relevant Policies or procedures for such claims. To my knowledge, AL's firm liaison, other DWHCC staff members, financial experts, analysts and accountants did not include BP in AL's emails, correspondence, phone calls or discussions with DWHCC regarding the internal review process of AL's claim(s).

8) AL, BP and Class Counsel had access to claim status on the DWHCC website via the "Last Review" screen as part of the Incompleteness Notice for a claim. However, after July 17, 2013 this DWHCC website view was deleted on a claim with an Incompleteness Notice until the issuance of an Eligibility Notice or a Denial Notice in light of the Court's Order regarding confidentiality of DWHCC claims.

9) The settling Parties agreed to the Economic and Property Damages Settlement Agreement as Amended on May 2, 2012 ("Settlement Agreement") and the establishment of the Court–Supervised Settlement Program in part to "to facilitate the expeditious resolution of **CLAIMS** for the benefit of the Economic Class..." (Settlement Agreement – Recital G.)

10) The Settlement Agreement (Section 4.3.7) provides that the settlement program "shall use its best efforts to provide Economic Class members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payments to which the Economic Class member is entitled under the terms of the Agreement."

11) By a variety of methods, the Claims Administer has improved the transparency and the exchange of information and claim status between the DWHCC and the Claimants and Claimant's attorneys and continues to do so.

12) The DWHCC claims review is multi-faceted process which in reality does resolve certain claims in a shorter time frame while holding other claims longer in the review process due to certain components. The progression of a claim through the established DWHCC review process can be affected by a number of variables as the claim flows down the different DWHCC queues. These factors include, but are not limited to, the type of claim, the potential for Moratoria Review, the pertinence and application of any Policy that might then currently be contested or is in the process of being established or altered, the completeness of the claim submitted, whether or not

the claim has to go to an accountant for review, the requirement for mapping, the competency of the reviewers or analysts, forensic accounting calls and issues regarding documents and explanations , the necessity or lack of necessity of financial calculations, the issuance of Incompleteness Notice(s), Requests for Re-Consideration, Requests for Re-Review, Denial Notices, Appeals, Circuit Decisions and the number of and complexity of required documentation. Thus, claims submitted at the same time can take different routes and varied time frames in order to reach settlement. Claims which require little or no calculation are resolved in a much shorter time frame than different and/ or more complex claim types submitted at the same time.

13) AL frequently contacted the AL firm liaison to obtain the most recent status of the progression of claims to update AL clients who contacted AL on a consistent basis and were not satisfied with the general claim status as listed on the DWHCC website. AL clients wanted to track their claim(s) moving through the DWHCC review and sought explanations for the review time frame for their claim(s).  As attorney and advocate for its clients, AL sought to provide these clients with as detailed claim status information as possible and attempted to cure any issues which prevented these claims from moving forward. AL also confirmed with the liaison that specific DWHCC issues were affecting the flow of certain AL claims. Per Claims Administrator policies, the liaison see her job to be responsive to the status inquires which are common among all counsel representing claimants.

14) It is not possible to predict the length of time involved for a filed DWHCC claim to be reviewed and settled in part due to the continued evolution of the DWHCC review process. This process includes the consistent issuance of new DWHCC interpretive Approved Policies or Procedures rendered by Claims Administrator Decision, Court Decisions or Agreed to by the Parties. Clarifications of previous Policies as well as the flow of Appeal Panel Decisions and En Banc Determinations on varied DWHCC claim issues all affect the time frame in which claims are reviewed to completion.

15) The Seafood Compensation Program Overview specifically states "Claims will be processed and paid as expeditiously as possible by the Claims Administrator. (Settlement Agreement, Rec. Doc 6430-22, Page 4 of 96).

16) Claimant Casey Thonn ("Thonn") signed an Attorney Client contract with AL on April 12, 2012. Exhibit 2.

17) I set forth here below the time frame for the DWHCC's processing of each of the three Thonn claims – the  Boat Captain Claim, the Vessel Owner claim and the Vessel of Opportunity claim:

3

18) **June 24, 2012**:  The *Thonn Seafood Compensation Boat Captain Claim # 19691* was filed on June 24, 2012 indicates pursuant to the Thonn Expert Economic Report that the settlement sum should be in the amount of $259,459.00.

19) **November 6, 2012**:  An Eligibility Notice dated November 6, 2012 was issued by the DWHCC in the amount of amount of $885.58 based on trip tickets.  This Notice was received by AL on November 7, 2012. Exhibit 3.

20) **December 3, 2012**:  AL filed a Request for Reconsideration on December 3, 2012, requesting the DWHCC to use Tax Returns instead of trip tickets in the DWHCC calculation pursuant to the terms of the Settlement Agreement.

21) **December 7, 2012**:  A Post-Reconsideration Eligibility Notice dated December 7, 2012 was issued by the DWHCC for $189,647.64 per terms of the Settlement Agreement. It was determined that the Eligibility Notice sum was *incorrect in that the DWHCC should not have deducted Shrimp Cost Percentage from his Boat Captain claim in the calculation loss,* that such a deduction in the loss calculation is only done on the Vessel Owner claim per the terms of the Settlement Agreement.  This Notice was received by AL on December 7, 2012.

22) **January 7, 2013**:  AL filed a Request For Appeal Form regarding the error that we believe was made in calculation with formula and filed an Appeal on January 7, 2013 on the Post – Reconsideration Eligibility Notice due to the manner in which the Settlement Agreement was written regarding the Shrimp Cost Percentage deduction, and requested the amount of $648,648.00 per the language in the Settlement Agreement and DWHCC Policies as of that date.   *Please see Settlement Agreement Shrimp Compensation Plan*[1] *which states:*

> "*If the Claimant is a Boat Captain and Benchmark Revenue was calculated based upon his earnings, such as from tax return or financial information, then no Shrimp Cost Percentage is applied, skip to step 5.*"

The Appeal was filed based on "The Settlement Program committed a calculation error", "Error in reviewing submitted documentation" and "Error in Prior Payment Offset."[2]  It was also seen that this Boat Captain Post Reconsideration Eligibility Notice and the Vessel Owner Post–Reconsideration

---

[1] Exhibit 4
[2] See Exhibit 5, Coastal Claims Group Letter, Dated January 7, 2013

Eligibility Notice had both deducted and offset the total prior payment settlement funds amount in each claim. The total prior settlement funds amount deduction and offset is to have been taken off of only one claim, not on each claim. The filing of this Appeal then opened up to BP the entire DWHCC claim file to oversight review by an appellant Judge with the possibility of such Appeal eventually going to Judge Barbier.

23) **January 24, 2013**:  BP's Initial Proposal Regarding Claim No. 19691[3] filed January 24, 2013 attached a copy of Thonn's 2009 Tax Return and Economic Expert Report BP and states on Page 1:

*"BP agrees with the Settlement Programs calculation of Claimant's Compensation Amount. BP therefore, submits an Initial Proposal Compensation Amount $22,932.00, the amount Claimant is entitled to according to the terms of the Settlement Agreement Seafood Compensation Framework."*

24) **January 24, 2013**:  AL filed its Initial Proposal Form on January 24, 2013 with an Initial Proposal amount of $ 78,624.00 with an Initial Proposal RTP Multiplier of 7.25 plus accounting fees that being a compensation amount of $648,648.00.

25) **January 29, 2013**:  Notice of Initial Proposals was issued by the DWHCC on January 29, 2013 with BP's Initial Proposal Compensation amount of $189,189.00 and Claimant's Initial Proposal Compensation Amount of $648,648.00.

26) **February  4, 2013**:  AL received BP's Final Proposal filed February  4, 2012[4] which states:

*"As BP explained in its Initial Proposal, the Settlement program correctly calculated both Claimant's Compensation Amount and the Claimant's prior payment offset"* and  *"BP, therefore, submits a Final Proposal Compensation Amount of $22,932.00 and Final Proposal Prior Offset Payment of $72,500.00."*

27) **February 4, 2013**:  AL filed its Final Proposal Form on February 4, 2013. With a Final Proposal Compensation Amount of $ 31,449.60 with a Final Proposal Risk Transfer Premium of 7.25 that being a compensation amount of $259,459.00.

28) **February 7, 2013**: The DWHCC issues a Notice of EIN Verification

---

[3] See Exhibit 6
[4] See Exhibit 7

29) **February 8, 2013:** A Notice of Final Proposals was issued by the DWHCC on February 8, 2013 with BP's Final Proposal Compensation amount of $189,189.00 and Claimant's Final Proposal Compensation Amount of $259,459.00.

30) **February 8, 2013**: During the Appeal process, a new DWHCC Policy, No. 342, was issued on February 8, 2013, which interpreted and clarified the Agreement as written and addressed this very issue of shrimp cost percentage deduction for an individual who is both a Vessel Owner and a Boat Captain.[5]

31) **February 28, 2013**: The Response to the DWHCC Notice of EIN Verification is submitted.

32) **March 28, 2013:** The Notice of Appeal Panel Decision dated March 28, 2013[6] awarded claimant $189,189.00, the amount of BP's Final Proposal. The Appeal and the appeal fee were lost by Thonn.  The Appeal Panel stated:

   *"The Appeal Panel's decision will stand as the Settlement Program's final determination on this claim."*

33) The Appeal Rules strictly govern all Appeal time frames. The Rules provide that a single randomly assigned Appeal Panelist shall determine the appeal where the Compensation Amount sought by the claimant is less than $1,000,000.00. The name of the Appeal Judge is not listed on the Notice of Appeal Panel Decision.

34) **April 9, 2013:**  The Post-Appeal Eligibility Notice dated April 9, 2013 was issued by the DWHCC in the amount of $189,189.00 plus accounting fees. Exhibit 10.

35) AL did not seek judicial review of the Appellate Panel's decision which is permitted under the terms of the DWHCC Appeal process.

36) **April 29, 2013**:  The DWHCC issued a settlement payment check to Thonn and his counsel dated April 29, 2013 in the amount of $190,350.25.

37) **June 24, 2012**: The *Thonn Seafood Compensation Vessel Owner claim # 19690* was filed with the DWHCC on June 24, 2012 with a proposed settlement sum of $327,272 pursuant to the Expert Economic Report.

---

5 See Exhibit 8
6 See Exhibit 9

38) **November 1, 2012:** A DWHCC Eligibility Notice for Thonn's Vessel Owner Claim dated November 1, 2012 was issued in the amount of $864.78 based on trip tickets. This Notice was received by AL on November 2, 2012. Exhibit 11.

39) **December 3, 2012:** AL filed a Request for Reconsideration on December 3, 2012, requesting the DWHCC to use Tax Returns instead of trip tickets in the claim calculation pursuant to the terms of the Settlement Agreement.

40) **December 7, 2012:** The DWHCC issued a Post-Reconsideration Eligibility Notice dated December 7, 2012 in the amount of $238,636 ($166,136.13 after the offset of prior seafood payments). However, the Notice inadvertently omitted accounting fee reimbursement pursuant to the Settlement Agreement.

41) It was determined that the Eligibility Notice sum was correct in that the Thonn Vessel Owner Economic Expert Report was in error, as the *calculations omitted to subtract the Shrimp Cost Percentage* in the loss calculation.

42) **January 7, 2013**: AL filed an Appeal on this Post-Reconsideration Eligibility Notice on January 7, 2013 to obtain the allowed reimbursement for accounting fees *only*.

43) Working through our DWHCC firm liaison, pursuant to DWHCC procedure, the issue was resolved; the accounting fees reimbursement was added to the Claim.

44) **January 21, 2013:** AL then withdrew the Appeal.

45) **January 24, 2013:** AL filed an Initial Proposal Form on January 24, 2013 with an Initial Proposal amount of $78,624.00 plus accounting fees with an Initial Proposal RTP Multiplier of 7.25.

46) **January 28, 2013**: A Post-Reconsideration Eligibility Notice dated January 28, 2013 was issued listing $515.97 as reimbursement for accounting fees. Exhibit 12.

47) **January 30, 2013**: The Vessel Owner claim was accepted online.

48) **February 28, 2013**: The DWHCC issued a settlement payment check to Thonn and his counsel dated February 28, 2013 in the amount of $166,652.00.

49) **June 24, 2012**: AL filed a *Thonn Vessel of Opportunity ("VoO") claim # 20741* on June 24, 2012 in the amount of $49,400.00, a sum certain per the Settlement

Agreement Vessels of Opportunity Chart A regarding Working VoO Participants (Rec. Doc 6430-1, Page 35 of 123) due to "Boat Size" size of the Thonn Vessel which participated in the VOO BP Oil Spill Clean Up program. No calculation was required for payment of this claim, only an inspection and verification of the required documentation.

50) **July 18, 2012**: A Payment Notice was issued on July 18, 2012 in the amount of $49,400.00. Exhibit 13.

51) **July 30, 2012:** The Release was received. Thonn signed the Release and it was sent to the DWHCC.

52) **October 10, 2012**: The DWHCC issued a settlement payment to Thonn and his counsel dated October 10, 2012 in the amount of $49,400.00.

53) An initial Eligibility Notice commences the timed resolution sequence of a claim regulated by Notice deadlines. The progression of these three claims through the established DWHCC claims processing system revolved around dated Notices with specific deadlines intrinsic in the processing of these claims.(For example, a Claimant has thirty (30) days to file a Request for Reconsideration.) From the time of the initial Eligibility Notices through any Appeal process, the three Thonn claims followed the usual DWHCC claim processing framework triggered by Notices dates and Notice deadlines for submission of acceptances, Responses and Appeals. To my knowledge, none of the three Thonn claims were ever accelerated or given special treatment.

54) To my knowledge, by the time that Mr. Lionel Sutton went to work at the CAO in early November of 2012, the Thonn VoO claim had been paid, an Eligibility Notice for the Vessel Owner had been issued on November 1, 2012 and a Boat Captain Eligibility Notice was issued on November 6, 2012.

55) To my knowledge and experience, the time frame processing flow for the Thonn seafood claims are typical of seafood claims - that being the longest inactive period of time involved in the claim processing is the period from the initial filing of the seafood claim to the date in which an Eligibility Notice is first received.

56) The Independent External Investigation of The Deepwater Horizon Court Supervised Settlement Program – Report of Special Master Louis J. Freeh September 6, 2013 ("Freeh Report") is attached hereto as Exhibit 14.

57) Attached hereto are the following Special Master Interview Transcripts: Mr. Jonathan Andry - Exhibit 15; Mr. Patrick Juneau - Exhibit 16; Mr. Glen Lerner – Exhibit 17; Ms. Christina Reitano – Exhibit 18; and Mr. Lionel Sutton - Exhibit 19.

58) Attached hereto are the Witness Interview Notes produced by the Special Master, (Bates Nos. SM-03-JA000001- 105) Exhibit 20.

59) The CAO Internal Investigation Witness Interview Summaries produced by the Special Master are attached hereto as Exhibit 21.

60) The Transcript of the Motion Proceedings Heard Before The Honorable Carl J. Barbier, dated July 19, 2013, is attached here to as Exhibit 22.

61) An email chain between Ms. Christine Reitano and Mr. Matt Lundy dated September 17, 2012 (Bates No. SM-02-JA00914 – 915) is attached hereto as Exhibit 23.

62) The Declaration of Susan DeSantis filed December 16, 2013 (Rec. Doc 11988-3) is attached hereto as Exhibit 24.

63) An email from Mr. Glen Lerner to Mr. Lionel Sutton dated January 29, 2013 (Rec. Doc 11988-24) is attached hereto as Exhibit 25.

64) The Interview Report of David Welker is attached hereto as Exhibit 26.

65) Michael ("Mike") Juneau's notes are attached hereto as Exhibit 27.

66) The David Welker Investigative Report is attached hereto to as Exhibit 28.

67) BP's full page advertisement in the New York Times dated January 16, 2014 entitled "Another law firm hits the jackpot:" is attached hereto to as Exhibit 29.


I declare that the foregoing is true and accurate.

Executed on January 17, 2014, in New Orleans, Louisiana.

Christina E. Mancuso