SM-02-JA00883

On June 20, 2013, Christine Reitano was interviewed at 935 Gravier Street, Suite 1905, New Orleans, Louisiana by Michael Juneau, Patrick Juneau and David Welker, regarding allegations of misconduct against her husband, Lionel H. Sutton III, aka Tiger.

At the onset of the interview, Ms. Reitano was advised there had been allegations of misconduct by Tiger Sutton, in that he had a financial interest in at least one claim. After being read several e-mails which were attachments to a report detailing the misconduct, Ms. Reitano provided the following information: she was not aware of the content of the e-mails read to her. She had never talked to Tiger Sutton about it. Tiger Sutton is involved in a business, Crown LLC, with Glen Lerner and Glen Lerner is a business partner with Jonathon Andry. She believes Lerner funded all Andry advertisements for the BP oil spill. She was aware that they were working together on Crown LLC for years. She was aware that Tiger gave up shares in Crown LLC to Glen Lerner in exchange for cash. She has no financial interest in any claim. The Thonn claim was their only claim before the court ordered settlement program that filed again in the court ordered settlement. She received no money from the Thonn claim. She recalled that they also represented a claimant named Bakkes or Backes in the GCCF but doesn't think they filed a claim in the court ordered settlement program. If Bakkes or Backes filed a claim, it would be for Tallulah's Bar in Slidell, Louisiana.

She stated that Tiger must always ask Glen Lerner for his salary from Crown, LLC. She knows that Lerner put up capital to buy the machine for the Crown, LLC business. They used a friend of hers as the public relations firm and Lerner was the only one putting up money. She never handled any Crown, LLC money, and Tiger has always maintained the checkbook.

She thinks that Tiger is stupid as hell. She felt that Tiger's falling out with his father really hurt him. She thinks he is really smart and it appeared to her he was just wasting his time on small accident cases and such. She saw an opportunity for Tiger in this program. She knows he has taken things so seriously in the program. She indicated that the accountants came up to him because they respect his judgment and integrity. She felt that Tiger working in the program would get him away from Lerner. The program has been good for him. She doesn't believe he will take it to any other level. She believes Tiger has a good compass and this was out of character for him. She thought this might be Tiger's way of getting Lerner to do what he was supposed to do. She asked that we get past perception to his true character.



EXHIBIT
R-1

TAB 6

SM-02-JA00884

SM-02-JA00885

t 14 11 08:48a     Halli Gallery Slidell      9856906038                    p.1

# GCCF    Gulf Coast Claims Facility

## CLIENT AUTHORIZATION FORM

### A. CLAIMANT INFORMATION

| Name | First Casey | MI | Last Thonn |
|---|---|---|---|

**Address**

Street/P.O. Box: 3836 Kent Street

City: Slidell     State: LA     Zip: 70458

| Claimant ID | 1060469 | SSN | 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 |
|---|---|---|---|

### B. ATTORNEY INFORMATION

| Attorney Name | First Name Christine | MI | Last Name Reitano |
|---|---|---|---|

**Law Firm Name**     Sutton & Reitano Law

**Law Firm Address**     Street/P.O. Box: 935 Gravier St., Ste. 600

City: New Orleans     State: LA     Zip: 70112

### C. SIGNATURE

By my signature below, I advise the Gulf Coast Claims Facility (the "GCCF") that the Attorney identified in Section B hereof, "Attorney Information," is authorized by me to act on my behalf concerning my claim(s) with the GCCF, and is authorized by me to receive from the GCCF, either via wire to the Attorney's IOLTA or other similar trust account or via check made payable to me and sent in care of the Attorney, any payments that may be issued to me in connection with my claim(s).

| Signature | | Date 10/14/11 | 10 / 11 / 11 (month) (day) (year) |
|---|---|---|---|

*Doc File is #*
*686162*

04/05/2011



EXHIBIT
R-2

**SM-02-JA00886**

686184



# SUTTON & REITANO

935 Gravier Street, Suite 600, New Orleans, LA 70112
Telephone (504) 592-3230 · Facsimile (504) 525-5079
Toll Free 1-888-480-5560

Lionel H. Sutton, III +
Christine Reitano *

+ Also Admitted in Texas
* Also Admitted in New York

March 30, 2012

Gulf Coast Claims Facility
P.O. Box 9658
Dublin, OH 43017-4958

RE:   *GCCF Claim No.: 1060469*

Dear GCCF:

Please allow this letter to confirm that we will no longer be representing Casey Thonn in connection
with his GCCF Claim.

With kindest personal regards, I remain

Sincerely,

SUTTON & REITANO

Christine Reitano

Christine Reitano

EXHIBIT
R-2A



THE GARDEN CITY GROUP, INC.

APR -6 2012

SUTTON & REITANO
935 GRAVIER ST., STE. 600
NEW ORLEANS, LA 70112

Gulf Coast Claims Facility
PO Box 9658
Dublin OH 43017-4958

$0.450
US POSTAGE
FIRST-CLASS
FROM 70112
MAR 29 2012
stamps
.com

SM-02-JA00888

## UNDERTAKING OF CHRISTINE REITANO IN FURTHERANCE OF COURT'S ORDER APPOINTING CLAIMS ADMINISTRATOR

This Undertaking is entered into on April 16, 2012 by and between Christine Reitano ("Reitano") and BP Exploration & Production Inc. ("BP") in furtherance of the Court's March 8, 2012 First Amended Order Creating Transition Process appointing Mr. Patrick Juneau ("Juneau") as the Claims Administrator of the Transition Process and the proposed Court Supervised Claims Program  (Doc. 6995) (the "Transition Order") by the Honorable Carl Barbier of the United States District Court of the Eastern District of Louisiana in *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010, MDL No. 2179* ("MDL 2179") (the "Court"). Interim Class Counsel has reviewed this Undertaking and has concluded that the retention of Reitano is in furtherance of the Transition Order and will assist Juneau in carrying out the responsibilities of the Claims Administrator of the Transition Process and the proposed Court Supervised Claims Program.

### RECITALS

A.   The Court in MDL 2179 issued the Transition Order which appoints Juneau as the Claims Administrator of the Transition Process and the proposed Court Supervised Claims Program;

B.   Reitano will assist Mr. Juneau in carrying out the responsibilities of the Claims Administrator of the Transition Process and the proposed Court Supervised Claims Program; and

C.   Pursuant to the Agreement-in-Principle Regarding "*Deepwater Horizon*" Economic Loss and Property Damages Settlement, BP shall be solely responsible for all costs of the claims administration including the fees of agreed upon staff retained by the Claims Administrator to assist the Claims Administrator in carrying out the Claims Administrator Services as defined in Paragraph 1 below.

D.   A settlement trust (the "Settlement Trust") shall be established for the purpose of, amongst other things, paying the costs of administering the proposed Court Supervised Claims Program.  The Settlement Trust shall be established pursuant to the order of the Court.  The Settlement Trust shall be structured and operated in a manner so that it qualifies as a "qualified settlement fund" under Section 468B(d)(2) of the Internal Revenue Code and Treasury Regulation §1.468B-1.

### UNDERTAKING PURSUANT TO TRANSITION ORDER

NOW THEREFORE, in consideration of the recitals and undertakings contained herein, Reitano and BP agree as follows:

1.   Claims Administrator Services.

a.   Reitano shall work at the direction of the Claims Administrator to assist with the Claims Administrator's responsibilities as set forth in: (a) the Transition Order (and any amendments or modifications thereof); (b) the Agreement-in-Principle Regarding "*Deepwater Horizon*" Economic Loss and Property Damages Settlement; (c) a final settlement agreement among the parties, should such agreement be finalized and filed and approved by the Court; and (d) as otherwise specified or ordered by the Court ("Claims Administrator Services").  Reitano

EXHIBIT
R-2B

☑0021/0025

shall perform such services in a professional manner and strictly in accordance with the foregoing Agreement-in-Principle, the final settlement agreement, should one be finalized and approved by the Court, and otherwise in accordance with the Court's orders. Reitano further agrees that she will comply with all legal and ethical obligations related to assisting Juneau in his Court-appointed role as the Claims Administrator. Reitano shall comply with the foregoing obligations and duties. Reitano shall devote substantially all of her time to the assistance of the Claims Administrator in connection with the Claims Administrator's responsibilities as set forth above.

    b.     Upon the establishment of the Settlement Trust, this Agreement shall be amended to reflect that Reitano is retained as an independent contractor by the Settlement Trust and that the Settlement Trust shall become responsible for the Compensation obligations set forth in Paragraph 2 below.

2.    Compensation.

    a.    Reitano shall be compensated in the amount of $20,833 per month to provide assistance to the Claims Administrator in carrying out Claims Administrator Services (the "Compensation"). Such Compensation shall be paid on a month-to-month basis, starting on April 1, 2012 through and including the date which is the earlier of: (i) the Court denies the parties' motion for preliminary approval; (ii) the Court denies the parties' motion for final approval; (iii) the reversal on appeal of a Court order granting final approval; (iv) the Court enters an Order closing the proposed Court-Supervised Claims Program; (v) Juneau resigns, can no longer serve or is removed by the Court as the Claims Administrator; or (vi) Reitano is terminated by the Claims Administrator for Cause (collectively, "Termination Events"). As used herein, "Cause" shall mean any of the following: (1) the failure of Reitano to perform the services in accordance with the requirements of Paragraph 1, which failure is not cured within ten (10) days after written notice thereof, (2) the breach by Reitano of any other obligations under this Undertaking, which breach is not cured within ten (10) days of written notice thereof, (3) the commission of any act or any omission involving gross negligence, fraud, or other intentional or willful misconduct by Reitano, and (4) any other violation of a statute, regulation, order, decree or court requirement by Reitano.

    b.    The first twenty-four (24) months of Reitano's Compensation, effective as of April 1, 2012, is guaranteed by BP regardless of whether a Termination Event in Paragraphs 2(a)(i) through and 2(a)(v) occurs prior to the expiration of that twenty-four (24) month period. In the event that Reitano's service is terminated by virtue of one of the Termination Events in Paragraphs 2(a)(i) through 2(a)(v) prior to the first twenty-four (24) month period, Reitano shall be paid the balance of the guaranteed monthly payments within ninety (90) days of the termination date. However, in the event that a Termination Event in Paragraph 2(a)(vi) occurs, any unpaid Compensation under this Paragraph 2(b) shall not be paid to Reitano.

    c.    In addition to the Compensation, Reitano shall be reimbursed on a monthly basis the reasonable and necessary expenses incurred by Reitano in order to assist the Claims Administrator in carrying out the Claims Administrator Services (the "Expenses"). Such reimbursable Expenses shall include travel and travel-related expenses (mileage, lodging, parking, meals, etc.) when such expenses are incurred in the course of assisting the Claims Administrator in carrying out the Claims Administrator Services.

SM-02-JA00890

3.   Funding Mechanism for Payment of Compensation and Expenses.

   a.   The Compensation and Expenses shall be paid to Reitano (Tax EIN 093548102) via wire transfer out of an account to be agreed upon by BP and Interim Class Counsel on a monthly basis on the 15th day of each month (the "Claims Administration Account").

   b.   Reitano shall submit invoices and supporting documentation for all Expenses for payment from the Claims Administration Account at least fifteen (15) calendar days prior to the payment date described in Paragraph 3(a) above. Copies of all invoices and supporting documentation shall be provided to BP and Interim Class Counsel at the same time when such invoices and supporting documentation are submitted for payment from the Claims Administration Account.

   c.   BP has the right to audit and challenge the payment of any Expenses on the grounds that such amounts are not reasonable and necessary for Reitano to assist the Claims Administrator in carrying out the Claims Administrator Services. If Reitano contests BP's rejection of any Expenses, Reitano may present the dispute to the Court for resolution.

4.   Indemnification. BP shall indemnify, defend and hold Reitano harmless, to the full extent lawful, from and against any losses, liabilities, expenses, claims, suits, investigations or proceedings related to or arising out of Reitano's assistance to the Claims Administrator in carrying out of the Claims Administrator Services or any other services performed by Reitano under this Undertaking (collectively, "Losses"), including but not limited to Losses resulting from Reitano's negligence, except that Reitano will not be indemnified or held harmless with respect to any Losses that are finally judicially determined to have resulted solely from Reitano's gross negligence or intentional or willful misconduct, including fraud. BP further agrees that Reitano shall not have any liability to BP in connection with Reitano's appointment to assist the Claims Administrator or any services performed by Reitano under this Undertaking, except for Losses incurred that are finally judicially determined to have resulted solely from the gross negligence or intentional or willful misconduct of Reitano. If any claim, suit, investigation or proceeding is threatened or commenced as to which Reitano proposes to demand indemnification under this Paragraph 4, Reitano will notify BP with reasonable promptness, but failure to do so shall not relieve BP of any of its obligations under this Paragraph 4 unless BP can establish that the delay in receiving such notice actually prejudiced BP and then only to the extent of such prejudice.

5.   Term and Termination.

   This Undertaking shall be effective as of April 18, 2012 and shall terminate upon the happening of a Termination Event. The audit right of BP under Paragraph 3(c) shall survive any termination or expiration of this Undertaking.

6.   Notices. All notices and correspondence required to be given by this Undertaking shall be delivered by hand or certified mail, return receipt requested and postage pre-paid, or by a nationally recognized courier service, or by facsimile transmission, and be addressed as follows:

If to Christine Reitano:

   Christine Reitano
   Sutton and Reitano
   935 Gravier St., Ste 1910
   New Orleans, LA 70112
   Phone 504 592 3230
   Fax 504 585 1789.

-3-

S4

If to BP:

    Mark Holstein
    BP Legal
    501 Westlake Park Boulevard
    Houston, Texas 77079
    Tel.: 281-366-8695
    FAX: 281-366-5901

If to Interim Class Counsel:

    James P. Roy
    DOMENGEAUX WRIGHT ROY & EDWARDS LLC
    556 Jefferson Street, Suite 500
    Lafayette, Louisiana 70501
    Telephone: (337) 233-3033
    Fax No: (337) 233-2796

      and

    Stephen J. Herman
    HERMAN HERMAN KATZ & COLTAR LLP
    820 O'Keefe Avenue
    New Orleans, LA 70113
    Telephone: (504) 581-4892
    Fax No. (504) 569-6024

    7.    __Review and Consent of Interim Class Counsel__. Interim Class Counsel has reviewed this Undertaking and has concluded that the retention of Reitano is in furtherance of the Transition Order and will assist Juneau in carrying out the responsibilities of the Claims Administrator of the Transition Process and the proposed Court Supervised Claims Program. Reitano shall perform services hereunder under the direct supervision, direction and control of Juneau, and other than the foregoing conclusion of Interim Class Counsel, Interim Class Counsel shall have no role in the supervision, direction or control of Reitano whatsoever. Nothing in this Undertaking shall establish or be construed to establish a relationship between Reitano, on the one hand, and Interim Class Counsel, Class Counsel, Lead Class Counsel, Co-Liaison Counsel or PSC, on the other hand, of any nature, kind or type, including, but not limited to an employment or independent contractor relationship. None of Interim Class Counsel, Class Counsel, Lead Class Counsel, Co-Liaison Counsel and PSC shall have any financial responsibility for, or obligation to fulfill or satisfy the payment of, any compensation, wages, benefits or expenses hereunder.

    8.    __Independent Contractor__. The parties hereto intend that Reitano is and shall continue to be an independent contractor throughout the term of this Undertaking. Reitano is not to be considered an employee or agent of any party for any purpose in connection with her role assisting Juneau in carrying out the responsibilities of the Claims Administrator of the Transition Process and the proposed Court Supervised Claims Program, including, but not limited to, for purposes of the Federal Insurance Contribution Act, the Social Security Act, the Federal Unemployment Tax Act, income tax withholding (federal, state and local) and any and all state taxes. Reitano agrees to timely file any necessary federal and state income tax returns, whether quarterly, annual or otherwise.

-4-

SM-02-JA00892

9.    Conflict of Interest and Recusal.  Reitano represents, warrants and covenants that she will assist Juneau in carrying out the responsibilities of the Claims Administrator of the Transition Process and the proposed Court-Supervised Claims Program in a professional manner and that she will do so at all times during the term of this Undertaking free of any conflict of interest as an independent contractor not affiliated with any other person or entity other than the Claims Administrator. Reitano shall have no authority to hire any sub-contractor or other person or entity to perform any Claims Administration Services or other services related to the Transition Process and/or the proposed Court-Supervised Claims Program. Reitano will take appropriate steps to avoid even the appearance of a conflict of interest or loss of impartiality with respect to the performance of her official duties as part of the Transition Process and the proposed Court-Supervised Claims Program. Reitano shall not participate, without prior written approval from the Claims Administrator, in any activity that presents or would appear to present to a reasonable person who is knowledgeable of the relevant facts, a conflict of interest with the Transition Process or the proposed Court-Supervised Claims Program. However, merely being acquainted with an individual who, or entity that, has made a claim with the Transition Process and/or the proposed Court-Supervised Claims Program does not by itself require Reitano to be recused from official activities that relate to the Transition Process and/or the proposed Court-Supervised Claims Program. Reitano is not allowed to perform any official duties in the Transition Process and/or the Court-Supervised Claims Program that relate to any former employer of Reitano with respect to the Transition Process and/or the proposed Court-Supervised Claims Program without prior written approval of the Claims Administrator.

10.    Miscellaneous.  The terms and conditions of this Undertaking constitute the entire agreement between Reitano and BP relating to the subject matter of this Undertaking and shall supersede all previous agreements and understandings between Reitano and BP with respect to the subject matter of this Undertaking. Each party represents and warrants to the other that the individual executing this Undertaking on behalf of each party has the power and authority to do so, and that this Undertaking constitutes a legal, valid and binding obligation of such party enforceable against such party in accordance with its terms. This Undertaking shall inure to the benefit of and be binding upon Reitano and BP and shall not be assigned by either party without the prior written consent of the other party. This Undertaking shall be governed by and construed in accordance with the laws of the State of Louisiana without giving effect to its principles of conflict of laws. The terms of this Undertaking may be amended only upon the written consent of Reitano and BP.

IN WITNESS WHEREOF, the parties have executed this Undertaking as of the date first set forth above.

Christine Reitano

BP Exploration & Production Inc.

Bob Talbott

-5-

SM-02-JA00893

Interim Class Counsel

_____
James P. Roy

_____
Stephen J. Herman

- 6 -

SM-02-JA00894

Revised Execution Version

## SUPPLEMENT AND AMENDMENT TO UNDERTAKING OF
## CHRISTINE REITANO IN FURTHERANCE OF
## THE COURT'S ORDER APPOINTING CLAIMS ADMINISTRATOR

This Supplement and Amendment (this "Amendment") to the Undertaking of Christine Reitano in Furtherance of the Court's Order Appointing Claims Administrator (the "Undertaking") is made and entered into by and among **Christine Reitano** ("Reitano"); BP Exploration and Production, Inc. ("BP"), solely for the purposes of the Indemnification provisions of Paragraph 4 below; and Patrick Juneau ("Juneau"), as Claims Administrator of the Court Supervised Claims Program, and as Trustee of the *Deepwater Horizon* Economic and Property Damages Trust (the "Settlement Trust"); and, for the purpose of taking cognizance of and approving the terms of this Amendment as provided in paragraph II below, the "Lead Class Counsel" (formerly the "Interim Class Counsel" as identified in the Undertaking) as of the 4th day of May, 2012 (the "Amendment Effective Date"). All of the parties identified above and appearing herein are identified collectively as the "Parties". Any terms not defined in this Amendment shall have the meanings ascribed to them in the Undertaking.

## RECITALS:

A. The Undertaking was made and entered into by and among Reitano, BP and Interim Class Counsel on April 18, 2012.

B. Paragraph 1(b) of the Undertaking provides that "[u]pon the establishment of the Settlement Trust, this Agreement [*sic*, the Undertaking] shall be amended to reflect that Reitano is retained as an independent contractor by the Settlement Trust and that the Settlement Trust shall become responsible for the Compensation obligations set forth in Paragraph 2 below".

C. The Settlement Trust has been established as of May 4, 2012, Juneau has been named as Trustee, and the creation and establishment of the Settlement Trust has been approved by the Court.

D. In addition, the "Agreement in Principle" (as identified in the Undertaking) has been formalized, its terms embodied in, and has been superseded by the "*Deepwater Horizon* Economic and Property Damages Settlement Agreement (the "Settlement Agreement") dated as of April 18, 2012, which has been approved on an interim basis by the Court.

E. Accordingly, the Parties desire to and do hereby enter into this Amendment in order to implement the terms of Paragraph 1(b) of the Undertaking and to bring the status of the Undertaking current with the developments which have occurred after its date.

{00179013-2}

EXHIBIT
R-2C

**SM-02-JA00895**

### SUPPLEMENT AND AMENDMENT TO UNDERTAKING:

NOW THEREFORE, in consideration of the recitals and undertakings contained herein, the Parties agree as follows:

I. The Undertaking be and is hereby supplemented and amended as of the Amendment Effective Date in the following respects:

1. By replacing the word "Undertaking" with the word "Agreement" wherever it appears.

2. By amending Paragraph 1(a), <u>Claims Administrator Services</u>, to: (i) replace, wherever they appear, the words "final settlement agreement among the parties, should such agreement by finalized and filed and approved by the Court" (or any variation thereof), with the words "the Settlement Agreement"; and (ii) precede the current text with the following sentence: "The description and scope of the services to be performed by Reitano are as set forth on attached Schedule 1."

3. By amending Paragraph 2, <u>Compensation</u>, to: (i) insert the words "by the Settlement Trust", after the words "shall be compensated" on the first line of subparagraph (a) and again after the words "shall be reimbursed" on the first line of subparagraph (b); (ii) replace the figure "$20,833" with the figure "$25,000" on the first line; (iii) replace the date "April 1, 2012" with the words "the Effective Date" on the fourth line; and (iv) add at the end the following:  "Any single expenditure of more than $2,000, or expenditures exceeding $5,000 in the aggregate in any individual calendar month, shall require advance written approval by the Claims Administrator or his Chief Financial Officer."

4. By amending Paragraph 3, <u>Funding Mechanism for Payment of Compensation and Expenses</u>, to: (i) insert the words "by the Settlement Trust", after the words "shall be paid", on the first line of subparagraph (a); (ii) insert the words "to the Settlement Trust", after the words "shall submit", on the first line of subparagraph (b); (iii) delete the words "and Interim Class Counsel" after the term "BP" on the fourth – fifth lines of subparagraph (b); and (iv)  substitute the words "the Settlement Trust", for the term "BP", wherever it appears in subparagraph (c).

5. By deleting Paragraph 4, <u>Indemnification</u>, in its entirety (to be replaced by a separate agreement).

6. By amending Paragraph 5, <u>Term and Termination</u>, to: (i) replace the date "April 18, 2012" with the words "the Amendment Effective Date"; and (ii) substitute the words "the Settlement Trust" for the term "BP" after the words "the audit right of".

7. By amending Paragraph 6, <u>Notices</u>, to add:

"if to the Settlement Trust or to the Claims Administrator:

SM-02-JA00896

Mr. Patrick Juneau
The *Deepwater Horizon* Economic and Property Damages Trust
935 Gravier Street, Suite 1905
New Orleans, LA 70112
Telephone: (504) 264-9740
Fax:        (504) 264-9746
Email: mjj@dheclaims.com

8.  By amending Paragraph 10, <u>Miscellaneous</u>, to replace, wherever they appear, the words "Reitano, and BP" with the words "Reitano, BP and the Settlement Trust".

II. Lead Class Counsel has reviewed this Amendment, takes cognizance of its terms and consents hereto, subject to the same terms, conditions and qualifications as contained in Paragraph 7 of the Undertaking.

III. As supplemented and amended hereby, the Undertaking remains and shall remain in full force and effect in accordance with its terms.

IN WITNESS WHEREOF, the Parties have executed this Amendment as of the Effective Date.

**Christine Reitano**

**BP Exploration & Production, Inc.**

By: _____

Its: _____

Patrick Juneau,
Claims Administrator of the
Court Supervised Claims Program,

and

Trustee of the *Deepwater Horizon* Economic and
Property Damages Trust

Lead Class Counsel
_____    8-1-12
James P. Roy

[00179013-2]

**SM-02-JA00897**

APPENDIX B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: **Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, On April 20, 2010** | * **MDL No. 2179** |
| | * **Section: J** |
| **This filing relates to:** *All Cases* | * **Honorable Carl J. Barbier** |
| (Including Civil Action No. 12-970) | * **Magistrate Judge Shushan** |

### CERTIFICATION REGARDING CONFIDENTIALITY OF CLAIMS INFORMATION

I hereby certify as follows:

1. I have read the Order Regarding the Confidentiality of Claims Information of the Claims Administrator of the Deepwater Horizon Economic and Property Damages Settlement Agreement (the "Confidentiality Order") entered by this Court in the above-captioned action.

2. I understand the terms of the Confidentiality Order.

3. I agree to be bound by the Confidentiality Order.

4. I agree to submit to the jurisdiction of this Court for purposes of enforcing the Confidentiality Order.

5. I agree to use any Claims Information provided to me by the Claims Administrator solely for the purpose for which I was permitted access to such information and to keep the Claims Information confidential and not disclose it to any party not necessary for the performance of such authorized purpose or as required by law.

6. Before I disclose Claims Information to any member of my staff or any expert, consultant or other advisor, I shall provide such person with a copy of the Confidentiality Order and shall take such steps as are necessary to secure compliance by such person with the Confidentiality Order.

| Signature | *Christy Reitano* | Date | 7 / 18 / 12 (Month/Day/Year) |
|---|---|---|---|
| **Name** | Last Name: Reitano | First Name: Christine | Middle Initial |
| **Organization** | DWH Claims Administration Economic Settlement Program | | |



**SM-02-JA00898**

*CHRISTINE KOSTANO*

**DEEPWATER HORIZON**
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

### CONFIDENTIALITY/NON-DISCLOSURE AGREEMENT

In consideration of your status as a Contractor and the compensation that will be paid, I agree as follows:

### CONFIDENTIAL INFORMATION:

I acknowledge that I will be exposed to Confidential Information in the performance of my duties on behalf of Claims Administrator.  "Confidential Information" is information in any format, whether oral, written or electronic, and includes but not limited to:

(a) information submitted to the Claims Administrator by any Claimant in support of his/her/its alleged Claim(s), including but not limited to any Claimant's personal, financial and/or business information;

(b) information pertaining to the Court Supervised Claims Program and the Claims Administration Services, including but not limited to negotiations, settlement terms, settlement payment amounts, claims guidelines and claims analyses;

(c) information prepared by any contractor, consultant or attorney in connection with his/her/its duties on behalf of the Claims Administrator and/or the Claims Administration Services;

(d) information contained in or made part of any Claims File;

(e) any other information not generally known to the public which, if misused or disclosed, could reasonably be expected to adversely affect any Claimant, Claims Administrator, Claims Administration Services and/or the Court Supervised Claims Program; and

(f) any information of any kind in any way relating to any aspect of the work or activities of Claims Administrator and his staff.

### NON-DISCLOSURE:

I agree to keep all Confidential Information in the strictest confidence.



EXHIBIT
R-2D1

**SM-02-JA00899**

I agree that, except as authorized by Court Supervised Claims Program or pursuant to this Agreement, I will not use, copy or take any Confidential Information or distribute, disclose, or give, directly or indirectly, any Confidential Information to any persons, without the prior written consent from the Claims Administrator. I will not make use of any Confidential Information for my own purposes or for any benefit not associated with my duties as a contractor of the Claims Administrator.

I agree to take all reasonable steps to protect from improper disclosure Confidential Information. If instructed by Claims Administrator or as a result of performing my duties I disclose or allow access to Confidential Information to other employees, consultants and/or contractors of the Claims Administrator, I will limit such disclosure or access only to the extent reasonably necessary for such employee, consultant and/or contractor to carry out his/her duties on behalf of the Claims Administrator. Any of the persons mentioned above who are given access to the Confidential Information shall be informed of this Agreement in advance, and I shall use all reasonable efforts to cause such persons to comply with provisions set forth in this Agreement.

RETURN OF CONFIDENTIAL INFORMATION:

When my work for the Claims Administrator ends, for whatever reason, or at the request of the Claims Administrator, I will promptly deliver to Claims Administrator all originals and copies of all written and electronic files, records, documents, software, storage media and other materials containing any Confidential Information. I will also return to Claims Administrator all equipment, files, software, hardware and other property belonging to Claims Administrator.

ENFORCEMENT OF AGREEMENT:

I understand and agree that because of the unique nature of the Confidential Information, Claims Administrator will suffer irreparable harm in the event that I fail to comply with any and all of my obligations under this Agreement and monetary damages will be inadequate to compensate Claims Administrator for any breach of my obligations. Accordingly, I agree that Claims Administrator shall, in addition to any other remedies available to it at law or in equity, be entitled to injunctive relief to enforce the terms of this Agreement. If an injunction is sought, Claims Administrator shall not be required to post any bond to ensure my compliance or with this Agreement.

In the event Claims Administrator commences any action or proceeding against me for any breach or claimed breach in the performance of this Agreement, or seeks a judicial declaration of rights hereunder, Claims Administrator shall be entitled to recover reasonable attorneys' fees and costs.

**SM-02-JA00900**

**MISCELLANEOUS:**

· This Agreement is to be made under and shall be construed in accordance with the laws of the State of Louisiana.

This Agreement may not be superseded, amended or modified except by written agreement between the parties hereto.

No waiver of any provision of this Agreement shall be deemed a waiver of any other provision, or constitute a continuing waiver.   No partial invalidity of this Agreement shall affect the remainder.

I acknowledge that I have read, understand and agree to comply with the above-stated policy.

_____          / 7 - 17 - 12
Contractor                                      Date

**SM-02-JA00901**



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

### CONFLICT OF INTEREST AND RECUSAL

Contractor represents, warrants and covenants that he/she will assist the Claims Administrator in carrying out his/her responsibilities for the Court Supervised Claims Program in a professional manner and that he/she will do so at all times during the term of this Agreement free of any conflict of interest as an independent contractor.

Contractor will not conduct any outside work or business other than his/her work in support of the Claims Administrator except as disclosed to and approved by the Claims Administrator. Such disclosure of any outside work or business shall be made to the Claims Administrator in writing.

Contractor will take appropriate steps to avoid even the appearance of a conflict of interest or loss of impartiality with respect to the performance of his/her official duties as part of the Court Supervised Claims Program. Contractor shall not participate, without prior written approval from the Claims Administrator, in any activity that presents or would appear to present to a reasonable person who is knowledgeable of the relevant facts, a conflict of interest with the Court Supervised Claims Program. However, merely being acquainted with an individual who, or entity that has made a claim with the Transition Process and/or the Court Supervised Claims Program does not by itself require Contractor to be recused from official activities that relate to the Court Supervised Claims Program.

Contractor is not allowed to perform any official duties in the Court Supervised Claims Program that relate to any former employer, close family member or close personal friend of Contractor with respect to the Court Supervised Claims Program, without the prior written approval of the Claims Administrator. Contractor affirms that neither he/she nor any immediate family member is an employee of BP Exploration & Production Inc. (BP) or any affiliated entity of BP. Contractor further affirms that neither he/she nor any immediate family member has submitted a claim to the Court Supervised Claims Program, and if any such claim is intended to be filed or is actually filed after the date of the signing of this document, Contractor shall immediately notify the Claims Administrator in writing so that a determination may be made as to whether Contractor may continue to provide service to the Court Supervised Claims Program under the circumstances.

Other than in the performance of his/her duties on behalf of Claims Administrator, Contractor agrees that he/she does not have and will not have any personal interest in the

**SM-02-JA00902**

Transition Process, the Court Supervised Claims Program or the Claims Administration Services, nor will he/she take any action that will conflict with or contravene this policy as it applies to the Transition Process, the Court Supervised Claims Program or the Claims Administration Services.

Contractor further acknowledges that, to the best of Contractor's knowledge, no close family member or close personal friend has or will have any interest in the Transition Process, the Court Supervised Claims Program or the Claims Administration Services, or will take any action that will contravene this policy as it applies to the Claim Process, the Court Supervised Claims Program or the Claims Administration Services.

Contractor also agrees to report immediately to David F. Odom or Michael J. Juneau if he/she suspects that any other Contractor may have violated of this policy.

Contractor acknowledges that he/she has read, understands and agrees to comply with the above-stated policy.

_Christy Retano_  /  7/17/12
CONTRACTOR                    Date

SM-02-JA00903



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

### GIFTS, ENTERTAINMENT AND GRATUITIES

To avoid even the appearance of a conflict of interest or loss of impartiality with respect to the performance of his/her official duties as part of the Court Supervised Claims Program, Contractor is prohibited from soliciting or accepting any gifts or gratuities from any person or entity that may be associated with the Court Supervised Claims Program or Claims Administration Services, including but not limited to any Claimant, party, attorney, vendor or other contractor.

Gifts and gratuities include but are not limited to: cash, gift certificates, tickets to events, liquor, food, vacations, entertainment, services, discounts, the use of property or facilities or other favors of value extended to Contractor or his/her family. Reasonable business meals may, on occasion, be necessary and appropriate. Such meals are acceptable, if they are not lavish or frequent.

Contractor also agrees to report immediately to David F. Odom or Michael J. Juneau if he /she suspects that any other contractor may have violated of this policy.

Contractor acknowledges that he/she has read and understands the above-stated policy and agrees to abide by this policy.

_____   /   7-17-12
CONTRACTOR                        Date

SM-02-JA00904



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

<u>DEFINITIONS FOR CONTRACTOR POLICIES</u>

The following defined words and phrases apply to the Confidentiality/Non-Disclosure Agreement, Conflict of Interest and Recusal Policy and Gifts, Entertainment and Gratuities Policy  Terms used in the singular shall be deemed to include the plural and vice versa.  Other words and phrases appearing in capital letters throughout the referenced documents shall have the meanings they are given with their first operative use.

<u>Claim</u>:  means any demand or request for compensation together with any accompanying documentation submitted by any Claimant in connection with the Deepwater Horizon Incident.

<u>Claimant</u>:  means any natural person or entity that submits a Claim to the Deepwater Horizon Court Supervised Settlement Program seeking compensation in connection with the Deepwater Horizon Incident.

<u>Claims Administration Services</u>:  means services mutually agreed to in writing by Contractor and Claims Administrator or as otherwise reasonably requested by the Claims Administrator from time to time pursuant to the Settlement Agreement and or Transition Order (and any amendments or modifications thereof) and further orders of the Court. The Claims Administration Services shall be provided in strict accordance with the terms of the Deepwater Horizon Economic and Property Damages Settlement Agreement, the Court's Preliminary Approval Order, the Transition Order (and any amendments or modifications thereof) and in compliance with applicable law.

<u>Claims Administrator</u>:  means that person or entity selected or appointed or designated by the Court who shall administer economic and property damages settlements under the supervision of the Court.

<u>Claims File</u>:  means any information, content or material regarding a Claim in electronic, paper or other form.

<u>Confidential Information</u>:  has the meaning as ascribed in the Confidentiality/Non-Disclosure Agreement

<u>Contractor</u>:  means an independent contractor, or employee or agent of an independent contractor, working at the request of the Claims Administrator engaged to assist with the Claims Administrator's responsibilities.  Contractor is not to be considered an employee of the Claims Administrator for any purpose including, but not limited to, for purposes of the Federal Insurance Contribution Act, the Social Security Act, the Federal Unemployment Tax Act, income tax withholding (federal, state and local), worker's

SM-02-JA00905

compensation insurance premiums, and any and all state taxes.  Contractor agrees to comply with all legal and ethical obligations related to assisting the Claims Administrator in his Court-appointed role as the Claims Administrator.  Contractor shall devote substantially all of its time to the assistance of the Claims Administrator in connection with the Claims Administrator's responsibilities.

Court:  means the United States District Court for the Eastern District of Louisiana, Judge Carl Barbier, presiding, in *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179.

Court Supervised Claims Program:  means all activities and obligations of the Claims Administrator or those under his supervision necessary to implement the Deepwater Horizon Economic and Property Damages Settlement Agreement.

Deepwater Horizon Incident:  means the events, actions, inactions and omissions leading up to and including (i) the blowout of the MC252 WELL; (ii) the explosions and fire on board the *Deepwater Horizon* on or about April 20, 2010; (iii) the sinking of the *Deepwater Horizon* on or about April 22, 2010; (iv) the release of oil, other hydrocarbons and other substances from the MC252 Well and/or the *Deepwater Horizon* and its appurtenances; (v) the efforts to contain the MC252 Well; (vi) RESPONSE ACTIVITIES, including the VoO Program; (vii) the operation of the GCCF; and (viii) BP public statements relating to all of the foregoing.

Deepwater Horizon Economic and Property Damages Settlement Agreement:  means the settlement agreement entered by the Court on April 18, 2012 and any amendments or modifications thereto.

Transition Order:  means the order entered by the Court on March 8, 2012 and any amendments or modifications thereto.

Transition Process:  has the meaning as ascribed in the Court's March 8, 2012 First Amended Order Creating Transition Process and any amendments or modifications thereto.

    Contractor acknowledges that he/she has received a copy of the Definitions for Contractor Policies.


_Chuck Ruth_____  / 7-17-12
CONTRACTOR                Date


SM-02-JA00906



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

**Patrick A. Juneau**
*Claims Administrator*

June 26, 2013

Ms. Christine Reitano
935 Gravier Street, Suite 1910
New Orleans, LA   70112

Dear Ms. Reitano:

Pursuant to the 4/18/12 Undertaking of Christine Reitano in Furtherance of Court's Order Appointing Claims Administrator and the supplement (the "Agreement"), your status as an independent contractor under the Agreement is terminated for cause. Your termination date is June 26, 2013. Please note that, notwithstanding your termination, the investigation into all issues involved continues.

Please ensure that you abide by all on-going confidentiality obligations and return immediately any information or materials you have regarding your responsibilities. Please also respond to this notice, in writing, that you have returned all information and materials.

Sincerely,

PATRICK A. JUNEAU



935 Gravier St., Suite 1905  I  New Orleans, LA 70112  I  TEL 504.934.4999  I  FAX 504.934.4998
www.deepwaterhorizoneconomicsettlement.com

#02E

**SM-02-JA00907**

SM-02-JA00908

From:            Christine Reitano <creitano@dheclaims.com>
Sent:            Sunday, July 1, 2012 9:59 AM
To:              Jennifer Keough
Subject:         Re: Sarasota

Sent from my iPhone

On Jul 1, 2012, at 1:55 PM, "Jennifer Keough"
<jennifer.keough@gardencitygroup.com> wrote:

> Christine - I spoke to Neil. He thinks it would be a good idea if
> Tiger
called him before calling Mr. Juneau on Monday. Neil's direct line is 631-470-5154. Hope your having a great time.
>
> Jennifer M. Keough
> Chief Operating Officer
> GCG
> 1531 Utah Ave S Suite 600
> Seattle, WA 98134
> Phone: (206) 876-5276
> Email: jennifer_keough@gcginc.com
> www.gcginc.com
>
> ----- Original Message -----
> From: Christine Reitano
> Sent: Friday, June 29, 2012 10:50 PM
> To: Jennifer Keough
> Subject: Re: Sarasota
>
> Jennifer - thank you - the visit was great - I love seeing the various
moving parts of this epic program!
>
> Have to tell you that an email from Orran today confirmed your
> sentiments
about the GCG/BG meeting yesterday, wholeheartedly. I am so encouraged and optimistic that we will all be able to
work together in a very complimentary fashion, maximizing the talents and efforts of all, and ultimately maximizing the
benefit to claimants.
>
> Spoke to Tiger - he's interested! He, like the rest of us, is
> somewhat
burned out on the traditional practice of law. He's followed everything I have been doing so far (he's had no choice - I
consult with him constantly!) and also, really feels he could work well with you and Neil. He is going to call Pat on
Monday to get his thoughts.
>
> Otherwise, I do have a few other people in mind, not sure of their
> availability or willingness to make a move - but I will inquire.
>
> Great seeing you, always a perfect hostess, safe trip back, I'll

1



SM-02-JA00909

> follow
up with you soon,
>
Christine
Sent from my iPhone
>
> On Jun 29, 2012, at 1:57 PM, "Jennifer Keough"
<jennifer.keough@gardencitygroup.com> wrote:
>
>> Christine - Thanks much for taking the time to visit today.  If I
>> don't
talk to you have a great weekend.  I'll have shirts (for you and Mr. Juneau) and the pamphlets sent to you so they will be
there when you return to NOLA.
>>
>> When you can, talk to Tiger about that other issue and the referral
>> and
see what he thinks.
>>
>> Best, Jen
>>
>> Jennifer M. Keough
>> Chief Operating Officer
>> GCG
>> 1531 Utah Ave S Suite 600
>> Seattle, WA 98134
>> Phone: (206) 876-5276
>> Email: jennifer_keough@gcginc.com
> www.gcginc.com
>>
>> _____
>>
>> This communication (including any attachments) is intended for the
>> use
of the intended recipient(s) only and may contain information that is confidential, privileged or legally protected. Any
unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication
in error, please immediately notify the sender by return e-mail message and delete all copies of the original
communication. Thank you for your cooperation.
>>
>
>
> This email (and any attachments) is confidential and is intended for
> use
solely by the properly named addressee. If you are not the intended recipient, any use, dissemination, forwarding,
copying or printing of this email without the consent of the originator is strictly prohibited. Although this email (and any
attachments) are believed to be free of any virus or other defect, it is the responsibility of the recipient to ensure that it
is virus free, and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you
have received this email in error, please immediately notify the sender by reply email or by telephone at 504-934-4999.
>
>

2

SM-02-JA00910

SM-02-JA00911

| | |
|---|---|
| From: | Lynn Greer <LGreer@browngreer.com> |
| Sent: | Monday, September 17, 2012 2:40 PM |
| To: | creitano@dheclaims.com; jennifer.keough@gardencitygroup.com |
| Subject: | RE: Expedited Claims |
| Attachments: | No Claims Left Behind (3.00 KB); No_Claims_Left_Behind_7-7-12.xlsx |

Christine: Jen can speak to the timing of the wires, but I think the wires do not go out until the end of the day, which may be why they have not yet been received by the Firm.

I am not sure how we can explain the timing of the payment of Mr. Cramer's claims. Perhaps we can discuss the best message to give him after you review the following chronology and explanation:

We and Garden City had received everything we needed from the Firm as of 8/31/12. Garden City accepted the Release two weeks later, on 9/14/12. It is my understanding from emails we received from Garden City last night that they put this Release at the back of the line for their review and approval because they were waiting on an indication from us that we had received all of the required Payment Documents. Jen had mentioned in her email to us on Friday that we did not post certain of the payment documents until Friday, 9/14/12. However, what we did on Friday was to *repost* the same documents we had posted on 9/5/12. On 9/5/12, we also posted a spreadsheet on Garden City's FTP site indicating that we had received all required payment documents. We also posted on the FTP site on 9/7/12 a "No Claim Left Behind Report, which included the claim that was ready for payment. This report includes all of the claims we think are ready for payment, for which we have no information that payment has been made.

Before a payment can be made, we and GCG require the following documents:

1. Payment Election Form (the Firm provides this only once to cover payments for all of its claimants);
2. Firm's W-9 (the Firm provides this only once, and it covers payments for all of its claimants);
3. Attorney Fee Acknowledgement Form (required for each claimant);
4. Claimant's W-9 (required for each claimant); and
5. Signed Release (required for each claimant).

Documents 1 and 2 are what we call "Firm-level documents." Documents 3 – 5 are what we call "Claimant-level documents."

The chronology for this claim is as follows:

1. Firm submitted the Claimant's W-9: 6/26/12
2. System established for Garden City to retrieve directly from the system all Claimant-level documents: first week of August
3. Claimant received Eligibility Payment Notice(s): 8/13/12 for Seafood Claim ID 22627 and 8/21/12 for Seafood Claim ID 22626
4. Firm submitted the Firm's W-9: 8/20/12
5. Firm submitted the Firm's Payment Election Form: 8/20/12
6. Firm submitted the Attorney Fee Acknowledgement Form: 8/31/12
7. Firm submitted the Claimant's signed Release: 8/31/12. (8/31/12 was the Friday before Labor Day)
8. We posted the Firm-level documents to Garden City's FTP site: 9/5/12

1



**SM-02-JA00912**

9. We posted a spreadsheet alerting Garden City that all required Payment documents had been received, by putting a "Y" in each relevant column: 9/5/12 for claim ID 22627, and 9/12/12 for claim ID 22626. (The excerpt from this spreadsheet appears below.)

10. We posted to Garden City's FTP site a "No Claim Left Behind" report to address claims we showed as having received all of the payment documents where we had no record that they had been paid. Randall Cramer's Seafood Claim No. 22627 was on that spreadsheet at row 1402. See the attached email from our payment team alerting Garden City that the report had been posted, along with the report itself.

11. Garden City approved the Claimant's Release: 9/14/12.

12. We reposted the Firm-level documents to Garden City's FTP site: 9/14/12.

| Row | Claimant ID | Claim ID | Claimant Name | Claim Type | Name of Firm/Pro. Se. | Payment Amount | Release Submitted (Y or N) |
|------|------------|----------|---------------|-----------|-----------------------|----------------|----------------------------|
| 1407. | 100002520 | 22627 | RANDALL CRAMER | Seafood Compensation Program | Lundy, Lundy, Soileau & South, L.L.P. | $28,176.18 | Y |
| 2251. | 100002520 | 22626 | RANDALL CRAMER | Seafood Compensation Program | Lundy, Lundy, Soileau & South, L.L.P. | $59,996.14 | Y |

-----Original Message-----
From: Christine Reitano [mailto:creitano@dheclaims.com]
Sent: Monday, September 17, 2012 2:44 PM
To: Lynn Greer; jennifer.keough@gardencitygroup.com
Subject: FW: Expedited Claims

Please follow up on this, it could be that the monies have just not been wired yet. And please provide the explanation for the delay in payment. Mr. Lundy has stated that he sent the election form and W-9 in 1 month ago.

Thank you

Christine

On 9/17/12 1:33 PM, "Matt Lundy" <mlundy@lundylawllp.com> wrote:

>We have not received a wire today from the Trust.

>  ---Original Message-----
>From: Christine Reitano [mailto:creitano@dheclaims.com]
>Sent: Monday, September 17, 2012 9:36 AM

2

SM-02-JA00913

>To: Matt Lundy
>Subject: Re: Expedited Claims
>
>Thanks.  I am told the payment will be wired today, the payment election
>form and firm W-9 had to be loaded into the system which was done on
>Friday.  Please let me know if you do not receive the wire today.
>
>Thanks
>
>Christine
>
>Sent from my iPhone
>
>On Sep 17, 2012, at 9:27 AM, "Matt Lundy" <mlundy@lundylawllp.com> wrote:
>
>> Will send shortly. Did you make any headway with the claim that hasn't
>>been paid?
>>
>> Thanks for your help.
>>
>> -----Original Message-----
>> From: Christine Reitano [mailto:creitano@dheclaims.com]
>> Sent: Monday, September 17, 2012 9:26 AM
>> To: Matt Lundy
>> Cc: Lynn Greer
>> Subject: Expedited Claims
>>
>> Matt
>>
>> I had forwarded your email designating the claims you wished to be
>>expedited to BrownGreer but there was no attachment.  Could you please
>>resend with attachments if there are any?
>>
>> Thank you
>>
>> Christine
>>
>> Sent from my iPhone
>>
>>
>> This email (and any attachments) is confidential and is intended for
>>use solely by the properly named addressee. If you are not the intended
>>recipient, any use, dissemination, forwarding, copying or printing of
>>this email without the consent of the originator is strictly prohibited.
>>Although this email (and any attachments) are believed to be free of any
>>virus or other defect, it is the responsibility of the recipient to
>>ensure that it is virus free, and no responsibility is accepted by the
>>sender for any loss or damage arising in any way from its use. If you
>>have received this email in error, please immediately notify the sender
>>by reply email or by telephone at 504-934-4999.
>>
>>
>
>
>This email (and any attachments) is confidential and is intended for use
>solely by the properly named addressee. If you are not the intended

3

SM-02-JA00914

>recipient, any use, dissemination, forwarding, copying or printing of
>this email without the consent of the originator is strictly prohibited.
>Although this email (and any attachments) are believed to be free of any
>virus or other defect, it is the responsibility of the recipient to
>ensure that it is virus free, and no responsibility is accepted by the
>sender for any loss or damage arising in any way from its use. If you
>have received this email in error, please immediately notify the sender
>by reply email or by telephone at 504-934-4999.
>
>

This email (and any attachments) is confidential and is intended for use solely by the
properly named addressee. If you are not the intended recipient, any use, dissemination,
forwarding, copying or printing of this email without the consent of the originator is
strictly prohibited. Although this email (and any attachments) are believed to be free of any
virus or other defect, it is the responsibility of the recipient to ensure that it is virus
free, and no responsibility is accepted by the sender for any loss or damage arising in any
way from its use. If you have received this email in error, please immediately notify the
sender by reply email or by telephone at 504-934-4999.

4

SM-02-JA00915

| DWH 8945.B Row | Claimant ID | Claim ID | Claimant Name |
|---|---|---|---|
| 755. | 100051739 | 20741 | Casey Thonn |
| 757. | 100080267 | 33505 | George Bertucci |
| 758. | 100052419 | 18884 | Anh Nguyet Lam |
| 759. | 100044555 | 13578 | Tommy O'Brien |
| 765. | 100030409 | 23862 | Hung Huynh |
| 767. | 100046714 | 17416 | Hullon Futch |
| 769. | 100036464 | 9527 | Allen Lee |
| 770. | 100048749 | 23708 | Jessie Roberson |

SM-02-JA00916

| Claim Type | Name of Firm/Pro Se | |
|---|---|---|
| VoO Charter Payment | Andry Law Group | |
| Coastal Real Property | Pajares & Schexnaydre, LLC | |
| VoO Charter Payment | David Krause, Law-Dog | |
| VoO Charter Payment | David Krause, Law-Dog | |
| VoO Charter Payment | Cao Law Firm | |
| VoO Charter Payment | Cunningham Bounds, LLC | |
| VoO Charter Payment | Jackson, Foster & Richardson, LLC | |
| VoO Charter Payment | Cunningham Bounds, LLC | |

SM-02-JA00917

| Compensation Amount | Payment Amount | Mail to Portal | Eligibility Notice Accepted (Y or N) | BG Firm Contact |
|---|---|---|---|---|
| $49,400.00 | $49,400.00 | Portal | Y | Harvey, Bryan |
| $1,491.52 | $5,220.32 | Portal | Y | Moncrieffe, Stephen |
| $41,600.00 | $41,600.00 | Portal | Y | McCutcheon, John |
| $41,600.00 | $41,600.00 | Portal | Y | McCutcheon, John |
| $62,400.00 | $62,400.00 | Portal | Y | Pope, Devin |
| $41,600.00 | $41,600.00 | Portal | Y | Marlies, David |
| $49,400.00 | $49,400.00 | Portal | Y | Avery, Sydney |
| $41,600.00 | $41,600.00 | Portal | Y | Marlies, David |

SM-02-JA00918

| Release Submitted (Y or N) | Release Approved by GCG | Firm W-9 Submitted (Y or N) | Firm W-9 Approved by GCG | Claimant W-9 Submitted (Y or N) | Claimant W-9 Approved by GCG |
|---|---|---|---|---|---|
| Y | | Y | | Y | |
| Y | | Y | | Y | |
| Y | | Y | | Y | |
| Y | | Y | | Y | |
| Y | | Y | | Y | |
| Y | | Y | | Y | |
| Y | | Y | | Y | |

SM-02-JA00919

| Attorney Fee Acknowledgement Form Submitted (Y or N) | Attorney Fee Acknowledgement Form Approved by GCG | Firm Payment Election Form Submitted (Y or N) | Firm Payment Election Form Approved by GCG | Firm Only Payment Option (Y or N) |
|---|---|---|---|---|
| Y | | Y | | N |
| Y | | Y | | N |
| Y | | Y | | Yes |
| Y | | Y | | No |
| Y | | Y | | Yes |
| Y | | Y | | Yes |
| Y | | Y | | Yes |
| | | | | Yes |

DEE

SM-02-JA00920

**DWATER HORIZON Claims with Accepted Eligibility Notices Payment Report Template (As of 9/16/12)**

| Payment Method (Check, Check (Joint) or Wire) | Language | Stub | GCG Account |
|---|---|---|---|
| Check | English | Regular | General |
| Check | English | Regular | General |
| Wire | English | Regular | General |
| Wire | English | Regular | General |
| Check | English | Regular | General |
| Check | English | Regular | General |
| Wire | English | Regular | General |
| Check | English | Regular | General |
| Check | English | Regular | General |

SM-02-JA00921

| Payee Name | FBO |
|---|---|
| Casey Thonn and Andry Lerner, LLC | |
| George Bertucci and Pajares & Schexnaydre, LLC | |
| David Krause, Law-Dog | Anh Nguyet Lam |
| David Krause, Law-Dog | Tommy O'Brien |
| Hung Huynh and Cao Law Firm | |
| Cunningham Bounds, LLC | Hullon Futch |
| Jackson, Foster & Richardson, LLC | Allen Lee |
| Cunningham Bounds, LLC | Jessie Roberson |

SM-02-JA00922

| Street Address | Street Address (2) |
|---|---|
| 610 Baronne Street | |
| 68031 Capital Trace Row | |
| 1211 Government Street | |
| 1211 Government Street | |
| 2439 Manhattan Blvd, Suite 302 | |
| 1601 Dauphin Street | |
| N/A | N/A |
| 1601 Dauphin Street | |

SM-02-JA00923

| Name | Claim Type | Claimant ID | Claim ID | Signed Release Submitted to CA | Payment Received | Payment Mailed to Client |
|---|---|---|---|---|---|---|
| Barnett, Janice | Property | 100056366 | 22551 | 8/21/2012 | | |
| Bohannon, Robert | Property | 100056611 | 22779 | 8/29/2012 | | |
| Coakley, Chris | VoO | 100109411 | 60992 | 9/10/2012 | | |
| Cramer, Randall | Crab Capt | 100002520 | 22627 | 8/28/2012 | | |
| DeJean, Felix | Property | 100100908 | 51783 | 9/4/2012 | | |
| Garrett, Bud | Property | 100029805 | 5853 | 9/10/2012 | | |
| LaRouere, Michael | Property | 100030839 | 6497 | 9/6/2012 | | |
| Nelson, Jane | Property | 100109653 | 59677 | 9/12/2012 | | |
| Patterson, Andrew | VoO | 100095717 | 46662 | 9/7/2012 | | |
| Philip Dellenger Sheetmetal | BEL | 100066792 | 30812 | 9/12/2012 | | |
| Phillips, Joe | VoO | 100002521 | 41166 | 9/7/2012 | | |
| Shea, Raymond | Property | 100048334 | 16090 | 9/8/2012 | | |
| Strong, Bruce | Property | 100044692 | 22110 | 9/5/2012 | | |



SM-02-JA00924

SM-02-JA00925

**From:** Stephen Cirami <Stephen.Cirami@gardencitygroup.com>
**Sent:** Tuesday, June 11, 2013 5:32 PM
**To:** 'Lionel Sutton'; Christine Reitano
**Subject:** RE: Wire payment

Tiger, we can certainly still wire payment, as long as it's to his IOLTA account. We would need him to complete the PEF I forwarded earlier. Please have it filled out and sent to me asap and I will get it processed.

-Steve

Stephen J. Cirami
Senior Vice President, Operations
GCG
1985 Marcus Ave Suite 200
Lake Success, New York 11042
Phone: 631-470-6838
Fax: 631-940-6555
scirami@gcginc.com
www.gcginc.com

==================================================
This communication (including any attachments) is intended for the use of the intended recipient(s) only and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

**From:** Lionel Sutton [mailto:lsutton@dheclaims.com]
**Sent:** Tuesday, June 11, 2013 4:50 PM
**To:** Stephen Cirami; Christine Reitano
**Subject:** RE: Wire payment

Stephen, the attorney is the claimant. Does that make a difference? And can he do it now when we are only 5 days from payment?

# Lionel H. Sutton, III

*Claims Counsel*

DEEPWATER HORIZON
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

## 504-957-4689

**From:** Stephen Cirami [mailto:Stephen.Cirami@gardencitygroup.com]
**Sent:** Tuesday, June 11, 2013 3:47 PM
**To:** Christine Reitano
**c:** Lionel Sutton
**Subject:** RE: Wire payment

Hi Christine.

1



**SM-02-JA00926**

First, he needs to check the box on the claim form itself that allows payment to be made directly to counsel, instead of jointly.   Second, the attorney and claimant must indicate the request for a wire on the Payment Election Form that gets submitted after the offer is accepted.  I assume it would be going to the attorney's IOLTA account, right?

Attached is a PEF, for your reference.

-Steve

Stephen J. Cirami
Senior Vice President, Operations
GCG
1985 Marcus Ave Suite 200
Lake Success, New York 11042
Phone: 631-470-6838
Fax: 631-940-6555
scirami@gcginc.com
www.gcginc.com

===========================================================
This communication (including any attachments) is intended for the use of the intended recipient(s) only and may contain information that is confidential, privileged or legally protected.  Any unauthorized use or dissemination of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication.  Thank you for your cooperation.

**From:** Christine Reitano
**Sent:** Tuesday, June 11, 2013 4:28 PM
**To:** Stephen Cirami
**Cc:** Lionel Sutton
**Subject:** Wire payment

Steve

Tiger has an attorney friend with a claimant in the Program who wants to be paid by wire – how and when does he make that request?

Thanks!

Christine


This email (and any attachments) is confidential and is intended for use solely by the properly named addressee. If you are not the intended recipient, any use, dissemination, forwarding, copying or printing of this email without the consent of the originator is strictly prohibited. Although this email (and any attachments) are believed to be free of any virus or other defect, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this email in error, please immediately notify the sender by reply email or by telephone at 504-934-4999.


This email (and any attachments) is confidential and is intended for use solely by the properly named addressee. If you are not the intended recipient, any use, dissemination, forwarding, copying or printing of this email without the consent of the originator is strictly prohibited. Although this email (and any attachments) are believed to be free of any virus or other defect, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If

2

**SM-02-JA00927**

you have received this email in error, please immediately notify the sender by reply email or by telephone at 504-934-4999.

3

SM-02-JA00928

| | |
|---|---|
| From: | Stephen Cirami <Stephen.Cirami@gardencitygroup.com> |
| Sent: | Tuesday, June 11, 2013 6:21 PM |
| To: | 'Lionel Sutton' |
| Subject: | RE: Wire payment |

We have had situations where lawyers have represented themselves, and had their funds sent to the IOLTA and then they transferred it out.  Unfortunately, Mr. Juneau early on in the program directed that the only wires to go out would be those to IOLTA accounts.  Perhaps he would make an exception if you discussed it with him, but we have not been authorized to make an exception to date.

-Steve

Stephen J. Cirami
Senior Vice President, Operations
GCG
1985 Marcus Ave Suite 200
Lake Success, New York 11042
Phone: 631-470-6838
Fax: 631-940-6555
scirami@gcginc.com
www.gcginc.com

===================================================
This communication (including any attachments) is intended for the use of the intended recipient(s) only and may contain information that is confidential, privileged or legally protected.  Any unauthorized use or dissemination of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication.  Thank you for your cooperation.

**From:** Lionel Sutton [mailto:lsutton@dheclaims.com]
**Sent:** Tuesday, June 11, 2013 7:11 PM
**To:** Stephen Cirami
**Subject:** RE: Wire payment

It is a law firm that filed their own claim pro se so it can't go to IOLTA account because its not client money.

Sent via the Samsung Galaxy Note® II, an AT&T 4G LTE smartphone

-------- Original message --------
From: Stephen Cirami <Stephen.Cirami@gardencitygroup.com>
Date: 06/11/2013 5:31 PM (GMT-06:00)
To: Lionel Sutton <lsutton@dheclaims.com>,Christine Reitano <creitano@dheclaims.com>
Subject: RE: Wire payment

'iger, we can certainly still wire payment, as long as it's to his IOLTA account.  We would need him to complete the PEF I forwarded earlier.  Please have it filled out and sent to me asap and I will get it processed.

1

EXHIBIT
R-5A

SM-02-JA00929

-Steve

Stephen J. Cirami
Senior Vice President, Operations
GCG
1985 Marcus Ave Suite 200
Lake Success, New York 11042
Phone: 631-470-6838
Fax: 631-940-6555
scirami@gcginc.com
www.gcginc.com

===========================================================
This communication (including any attachments) is intended for the use of the intended recipient(s) only and may contain information that is confidential, privileged or legally protected.  Any unauthorized use or dissemination of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication.  Thank you for your cooperation.

**From:** Lionel Sutton [mailto:lsutton@dheclaims.com]
**Sent:** Tuesday, June 11, 2013 4:50 PM
**To:** Stephen Cirami; Christine Reitano
**Subject:** RE: Wire payment

Stephen, the attorney is the claimant. Does that make a difference? And can he do it now when we are only 5 days from payment?

## Lionel H. Sutton, III

*Claims Counsel*

 DEEPWATER HORIZON
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

**504-957-4689**

**From:** Stephen Cirami [mailto:Stephen.Cirami@gardencitygroup.com]
**Sent:** Tuesday, June 11, 2013 3:47 PM
**To:** Christine Reitano
**Cc:** Lionel Sutton
**Subject:** RE: Wire payment

Hi Christine.

First, he needs to check the box on the claim form itself that allows payment to be made directly to counsel, instead of jointly.  Second, the attorney and claimant must indicate the request for a wire on the Payment Election Form that gets submitted after the offer is accepted.  I assume it would be going to the attorney's IOLTA account, right?

Attached is a PEF, for your reference.

-Steve

Stephen J. Cirami
Senior Vice President, Operations
GCG

2

**SM-02-JA00930**

1985 Marcus Ave Suite 200
Lake Success, New York 11042
Phone: 631-470-6838
Fax: 631-940-6555
lcirami@gcginc.com
www.gcginc.com

=========================================================

This communication (including any attachments) is intended for the use of the intended recipient(s) only and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

**From:** Christine Reitano
**Sent:** Tuesday, June 11, 2013 4:28 PM
**To:** Stephen Cirami
**Cc:** Lionel Sutton
**Subject:** Wire payment

Steve

Tiger has an attorney friend with a claimant in the Program who wants to be paid by wire – how and when does he make that request?

Thanks!

Christine

This email (and any attachments) is confidential and is intended for use solely by the properly named addressee. If you are not the intended recipient, any use, dissemination, forwarding, copying or printing of this email without the consent of the originator is strictly prohibited. Although this email (and any attachments) are believed to be free of any virus or other defect, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this email in error, please immediately notify the sender by reply email or by telephone at 504-934-4999.

This email (and any attachments) is confidential and is intended for use solely by the properly named addressee. If you are not the intended recipient, any use, dissemination, forwarding, copying or printing of this email without the consent of the originator is strictly prohibited. Although this email (and any attachments) are believed to be free of any virus or other defect, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this email in error, please immediately notify the sender by reply email or by telephone at 504-934-4999.

This email (and any attachments) is confidential and is intended for use solely by the properly named addressee. If you are not the intended recipient, any use, dissemination, forwarding, copying or printing of this email without the consent of the originator is strictly prohibited. Although this email (and any attachments) are believed to be free of any virus or other defect, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this email in error, please immediately notify the sender by reply email or by telephone at 504-934-4999.

3

SM-02-JA00931

**From:** Christine Reitano <creitano@dheclaims.com>
**Sent:** Monday, January 28, 2013 1:10 PM
**To:** Stephen Cirami
**Subject:** Re: Wire Transfers

Thanks, Steve.

---

**From:** Stephen Cirami <Stephen.Cirami@gardencitygroup.com>
**Date:** Monday, January 28, 2013 12:04 PM
**To:** Christine Reitano <creitano@dheclaims.com>
**Subject:** Re: Wire Transfers

That is correct.  Attorney IOLTA accounts only.

-Steve

Stephen J. Cirami
Senior Vice President, Operations
GCG
1985 Marcus Ave Suite 200
Lake Success, New York 11042
Phone: 631-470-6838
Fax: 631-940-6555
.irami@gcginc.com
www.gcginc.com

=========================================================
This communication (including any attachments) is intended for the use of the intended recipient(s) only and may contain
information that is confidential, privileged or legally protected.  Any unauthorized use or dissemination of this communication
is strictly prohibited.  If you have received this communication in error, please immediately notify the sender by return e-mail
message and delete all copies of the original communication.  Thank you for your cooperation.

On Jan 28, 2013, at 5:35 PM, "Christine Reitano" <creitano@dheclaims.com> wrote:

> Steve
>
> Please see below, just want to verify that this is correct, we are doing wire transfers to attorneys.
>
> Thanks
>
> Christine
>
> ---
>
> **From:** <Moskowitz>, "'keith. com'" <keith.moskowitz@snrdenton.com>
> **Date:** Monday, January 28, 2013 10:14 AM
> **To:** Christine Reitano <creitano@dheclaims.com>
> **Subject:** Wire Transfers
>
> Christine,

1



**SM-02-JA00932**

Is the Settlement Program doing wire transfers (of settlement awards) directly to attorney's representing claimants? The Medical Settlement claims administrator has raised the question and we want to understand whether this is occurring in the Economic settlement.

Best,

Keith

Keith Moskowitz
SNR Denton US LLP
D +1 312 876 8220
M +1 312 758 9732
F +1 312 876 7934
keith.moskowitz@snrdenton.com
snrdenton.com

233 South Wacker Drive
Suite 7800
Chicago, IL 60606-6306

For more information on our pending combination, please visit www.dentonscombination.com

SNR Denton is the collective trade name for an international legal practice. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see snrdenton.com for Legal Notices, including IRS Circular 230 Notice.

This email (and any attachments) is confidential and is intended for use solely by the properly named addressee. If you are not the intended recipient, any use, dissemination, forwarding, copying or printing of this email without the consent of the originator is strictly prohibited. Although this email (and any attachments) are believed to be free of any virus or other defect, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this email in error, please immediately notify the sender by reply email or by telephone at 504-934-4999.

This email (and any attachments) is confidential and is intended for use solely by the properly named addressee. If you are not the intended recipient, any use, dissemination, forwarding, copying or printing of this email without the consent of the originator is strictly prohibited. Although this email (and any attachments) are believed to be free of any virus or other defect, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this email in error, please immediately notify the sender by reply email or by telephone at 504-934-4999.

2

SM-02-JA00933

SM-02-JA00934

| | |
|---|---|
| om: | Lionel Sutton <lsutton@dheclaims.com> |
| Sent: | Tuesday, June 4, 2013 6:13 PM |
| To: | Katherine Torres |
| Subject: | RE: Sher Garner Claim |

Thanks. Can you also check the Center for Restorative Breast Surgery.

Sent via the Samsung Galaxy Note® II, an AT&T 4G LTE smartphone

-------- Original message --------
From: Katherine Torres <ktorres@pncpa.com>
Date: 06/04/2013 4:20 PM (GMT-06:00)
To: Lionel Sutton <lsutton@dheclaims.com>
Cc: Mark Staley <mstaley@pncpa.com>
Subject: Sher Garner Claim

Hi Tiger-
Per our meeting this morning, you had asked me to follow up on the Sher Garner claim QC status.

The claim entered a QC queue around Mid-May, and we are working QC claims on a FIFO basis. The claim was awaiting allocation to a QC reviewer, so I went ahead and asked the team to prioritize the QC review.

Thanks,
Katherine

Katherine Torres, CIA

**P&N** Postlethwaite & Netterville
935 Gravier Street, Suite 900 ▪ New Orleans, LA 70112
Main 504.335.1584 ▪ Direct 504.335.1580 ▪ Fax 504.335.1645

-----------------------------------------------------------------------------------------------
--------------------
Pursuant to IRS Circular 230 and IRS regulations we inform you that any federal tax advice
contained in this communication is not intended or written to be used, and cannot be used,
for the purpose of avoiding penalties imposed under the Internal Revenue Code.

-----------------------------------------------------------------------------------------------
--------------------
Email Encryption

Confidentiality is a hallmark of the accounting profession and it is of the utmost
importance to our client
relationships.  At P&N, we are committed to keeping your data confidential which is why
we use email encryption software.  This software inspects all outbound emails from our
firm.  Emails that

1

EXHIBIT
R-6

**SM-02-JA00935**

contain attachments will require you to enter a password to download the file.  This ensures that your
confidential data cannot be read by anyone other than the intended recipient.

 ails with attachments will include a link to a secure web server.  Click on the link to
 .ownload the attachment.
The first time you receive a secure email from the firm you will be required to setup a password.  This will
be your password to access future attachments.  For our clients and others, there will be a small step to
download the encrypted files; however, we believe the added confidentiality benefits far outweigh the few
seconds that are required to access the attachment.

If you have questions regarding this new process or if you forget your password, please contact helpdesk@pncpa.com or call 225.922.4600.

This email (and any attachments) is confidential and is intended for use solely by the properly named addressee. If you are not the intended recipient, any use, dissemination, forwarding, copying or printing of this email without the consent of the originator is strictly prohibited. Although this email (and any attachments) are believed to be free of any virus or other defect, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this email in error, please immediately notify the sender by reply email or by telephone at 504-934-4999.

2

**SM-02-JA00936**

| | |
|---|---|
| From: | Katherine Torres <ktorres@pncpa.com> |
| Sent: | Thursday, June 20, 2013 10:36 AM |
| To: | Lionel Sutton |
| Cc: | charles.r.hacker@us.pwc.com |
| Subject: | Sher Garner |

Hi Tiger-

Chuck had mentioned you were asking about this claim, and we are at the finish line. We had concluded on this claim, and it is on today's BG payment list. Pending there are no system/workbook issues with the notice generation, this one should be good to go. If you have any other questions, call my cell 225-505-5799.

Thanks,
Katherine

Katherine Torres, CIA

**P&N** Postlethwaite
& Netterville

935 Gravier Street, Suite 900 ▪ New Orleans, LA 70112
Main 504.335.1584 ▪ Direct 504.335.1580 ▪ Fax 504.335.1645

---------------------------------------------------------------------------------
---------------
Pursuant to IRS Circular 230 and IRS regulations we inform you that any federal tax advice
contained in this communication is not intended or written to be used, and cannot be
used,
for the purpose of avoiding penalties imposed under the Internal Revenue Code.

---------------------------------------------------------------------------------
---------------------------------
Email Encryption

Confidentiality is a hallmark of the accounting profession and it is of the utmost importance to our client
relationships. At P&N, we are committed to keeping your data confidential which is why we use email encryption software. This software inspects all outbound emails from our firm. Emails that
contain attachments will require you to enter a password to download the file. This ensures that your
confidential data cannot be read by anyone other than the intended recipient.

Emails with attachments will include a link to a secure web server. Click on the link to download the attachment.
The first time you receive a secure email from the firm you will be required to setup a password. This will
be your password to access future attachments. For our clients and others, there will be a small step to
download the encrypted files; however, we believe the added confidentiality benefits far outweigh the few
seconds that are required to access the attachment.

If you have questions regarding this new process or if you forget your password, please contact helpdesk@pncpa.com or call 225.922.4600.

1



**SM-02-JA00937**

SM-02-JA00938

*164.574-20*



# ANDRY LERNER LLC
### A T T O R N E Y S   A T   L A W

610 Baronne Street · New Orleans, LA 70113
Office:  504-525-5535
Toll Free:  866-404-7777

Jonathan B. Andry*
Glen Lerner**

*Licensed Louisiana Attorney
**Licensed Nevada Attorney

August 14, 2012

**Via Federal Express**
Deepwater Horizon Economic Claims Center
c/o Claims Administrator
42548 Happy Woods Road
Hammond, LA 70403

RE:    Claimant ID No. 100051739, Casey Thonn
VOO Charter Payment, Claim ID NO. 20741
Attorney Fee Acknowledgement and Payment Election Form

Dear Mr. Juneau:

Enclosed please find the Executed Attorney Fee Acknowledgement and Payment Election Form for the above referenced VOO Charter Payment Claim.  If you have any questions, please let me know.

With kindest personal regards, I remain

Very truly yours,

Leslie B. Tate
BP Claims Coordinator/Paralegal

/lbt
Enclosure

**EXHIBIT**
**R-7**

*TAB6*

SM-02-JA00939



**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

## Payment Election Form

### A. Instructions

Unless otherwise requested by the claimant in the Payment section of the Claim Form, we will make all Settlement Payments ("Payments") by check, made payable jointly to the claimant and the claimant's attorney. If your firm will be receiving all Payments by check, made payable jointly to the claimant and your firm, you do not need to complete Section B or C of this form, but you must complete Section D.

Where claimants have requested that we make Payments payable only to their attorney, counsel may elect to receive such Payments either by hard copy checks or wire transfers ("Wires"). This Election will control the manner of payment unless counsel provides us with different instructions at any time. We will not issue Payments until both the law firm and the applicable claimant have completed, signed, and returned a W-9 Form. To obtain a copy of that form, go to www.deepwaterhorizonsettlements.com, or request one at a Claimant Assistance Center or by calling 1-800-353-1262.

### B. Election to Receive Payments by Check

Complete this section if you want to receive all Payments from us in the form of checks payable only to your law firm. We will issue and send checks to the claimant's counsel of record. Provide the following information on how you wish the name and address of your law firm to appear on the check. This Election is only applicable to Payments for claimants who have indicated on their Claim Form that we should issue Payments payable only to the claimants' attorney.

| Law Firm Name and Address to Appear on Checks: | Law Firm Name ANDRY LERNER, LLC |  |  |  |
|---|---|---|---|---|
|  | Street 610 BARONNE STREET |  |  |  |
|  | City NEW ORLEANS | State LA | Zip 70113 | Country USA. |

### C. Election to Receive Payments by Wire Transfer

Complete this section if you want to receive Payments to your law firm from us in the form of Wires. This Election is only applicable to Payments for claimants who have indicated on their Claim Form that we should issue Payments payable only to the claimants' attorney.

| Bank Name to Which Wires Are to be Sent: | Bank Name |  |  |  |
|---|---|---|---|---|
|  | Street |  |  |  |
|  | City | State | Zip | Country |
| Bank Telephone Number: | ( __ __ __ ) __ __ __ - __ __ __ __ |  |  |  |
| Bank ABA Wire Transfer Number: | __ __ __ __ __ __ __ __ __ |  |  |  |
| Account Name: |  |  |  |  |
| Account Number: |  |  |  |  |

SM-02-JA00940

## D. Certification by Counsel

By my signature below, I represent and warrant, on behalf of the law firm identified below, that:

(1) We will comply with all laws and ethical rules and obligations under applicable law as to any payment received in the DWH Settlement Program, including without limitation those regarding the handling and disposition of client funds;

(2) The account or fund into which the proceeds of a check will be placed or payments will be received by wire is an appropriate escrow, trust or other such account required by applicable law and ethical rules for the receipt of client funds and/or a payment on the settlement of a claim;

(3) For any claim involving a deceased, Minor, or Incompetent claimant, we will comply with any provisions of the law applicable to the claim regarding the compromise and distribution of the proceeds of the settlement of a claim of a deceased, Minor, or Incompetent person;

(4) We shall indemnify and hold harmless the DWH Settlement Program, and the agents and representatives of the foregoing, from any and all claims, demands, or expenses of any kind arising from any breach of the representations and warranties set forth in this Certification; and,

(5) We will comply with the U.S. District Court for the Eastern District of Louisiana's June 15, 2012 Order limiting contingent fee arrangements to 25% plus reasonable costs by expressly and irrevocably waiving any claim to attorneys' fees in an amount greater than 25%, plus reasonable costs, of the gross amount awarded to our clients through the Deepwater Horizon Settlement Program.

| Signature: | | Date: | 8 / 14 / 2013 (Month/Day/Year) |
|---|---|---|---|
| Name: | Last Name ANDRY | First Name JONATHAN | Middle Initial B |
| Law Firm Name: | ANDRY LERNER, LLC | | |

## E. How to Contact us with Questions

If you have any questions about this Notice or the status of your claim(s), contact the Claimant Communications Center at 1-800-353-1262 or send an email to Questions@dhecc.com. You also may visit a Claimant Assistance Center for help. For a complete list of Claimant Assistance Centers, go to www.deepwaterhorizoneconomicsettlement.com.

## F. How to Submit This Form

Submit this Payment Election Form online by uploading it to your DWH Portal. If you are unable to access the DWH Portal, you may submit the form in any of the following ways:

| By Mail: | Deepwater Horizon Economic Claims Center PO Box 1439 Hammond, LA 70404-1439 |
|---|---|
| By Overnight, Certified or Registered Mail: | Deepwater Horizon Economic Claims Center c/o Claims Administrator 42548 Happy Woods Road Hammond, LA 70403 |
| By Facsimile: | (888) 524-1583 |
| By Email: | ClaimForms@deepwaterhorizoneconomicsettlement.com |
| Visit a Claimant Assistance Center: | You may take the required information or documents to a Claimant Assistance Center. |

PAY-3
v.1

2

SM-02-JA00941



**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

## Attorney Fee Acknowledgment

Pursuant to Paragraph 8 of Exhibit 27 to the Settlement Agreement, both the claimant and the claimant's attorney must sign this Attorney Fee Acknowledgment before receiving any Settlement Payment.

### A. Claimant Information

| | | | |
|---|---|---|---|
| **Name:** | Last Name or Full Name of Business  *THONN* | First Name  *CASEY* | Middle Initial |

| | |
|---|---|
| **Deepwater Horizon Settlement Program Claimant Number:** | 1 0 0 0 5 1 7 3 9 |
| **Deepwater Horizon Settlement Program Claim Number:** | |

| | |
|---|---|
| **Attorney:** | Law Firm Name  *ANDRY LERNER, LLC*<br>Attorney Last Name  *ANDRY*   Attorney First Name  *JONATHAN* |

### B. Acknowledgment of Satisfaction of Attorney Fees and Expenses

The claimant and claimant's designated counsel hereby acknowledge and agree that the Settlement Payment(s) to be paid to the claimant pursuant to the Deepwater Horizon Economic and Property Damages Settlement Agreement, as administered by the Claims Administrator, include(s) monies that fully and finally satisfy any and all fees and costs in respect to representation of the claimant by any counsel, whether current or former, (including but not limited to any fees and costs asserted by lien or privilege) in connection with the claim(s) and rights of such counsel to them that are being released by the signed Full and Final Release, Settlement, and Covenant Not to Sue. This Attorney Fee Acknowledgment does not limit or waive: (1) the recovery of any potential Common Benefit Fee and Costs Award to the Economic Class Counsel and/or other common benefit attorneys who may submit time and costs in compliance with Pretrial Order 9 or Section 5.16 or Exhibit 27 of the Settlement Agreement; or (2) the claimant or attorney's right to dispute or object to an allocation of attorneys' fees and costs as among attorneys or between claimant and attorney.

### C. Signature

By my signature below, I certify and declare pursuant to 28 U.S.C. Section 1746 that the information provided in this Attorney Fee Acknowledgment is true and accurate to the best of my knowledge.

| | | | |
|---|---|---|---|
| **Claimant Signature:** | | **Date:** | 8 14 2012 *(Month/Day/Year)* |
| **Printed Name:** | Last Name  *Casey Thonn* | First Name | Middle Initial |
| **Title (if a Business):** | | | |
| **Attorney Signature:** | | **Date:** | 8 14 2012 *(Month/Day/Year)* |
| **Printed Name:** | Last Name  *ANDRY* | First Name  *JONATHAN* | Middle Initial  *B* |

ATTY-10v.1

SM-02-JA00942

| D. How to Return this Form | |
|---|---|
| Submit the original, hard copy signed **Attorney Fee Acknowledgment** in one of these ways: | |
| **By Mail** | Deepwater Horizon Economic Claims Center<br>PO Box 1439<br>Hammond, LA 70404-1439 |
| **By Overnight Delivery or Certified or Registered Mail** | Deepwater Horizon Economic Claims Center<br>c/o Claims Administrator<br>42548 Happy Woods Road<br>Hammond, LA 70403 |
| **Visit a Claimant Assistance Center** | You may take this signed Form to a Claimant Assistance Center. |

ATTY-10v.1

SM-02-JA00943



SM-02-JA00944

Andry Lerner, L.L.C. – Louisiana Company Profile (People Search and Company Search)   Page 1 of 1



60,842,700 Companies
53,791,211 Principals

🔍 Add My Company   🏢 Business Services   🔒 Login

*search...*   GO

354   Tweet ⟨189⟩   Like ⟨2.5k

0   Tweet ⟨0⟩   Like ⟨0⟩

Information current as of Mar 11, 2012.

Ads By Google

**ANDRY LERNER, L.L.C.**

| | |
|---|---|
| Company Name: | ANDRY LERNER, L.L.C. |
| Status: | Active |
| Filing Date: | 02/06/2012 |
| Entity Type: | Limited-Liability Company |
| File Number: | 40740455K |
| Filing State: | Louisiana (LA) |
| Company Age: | 1 Year 4 Months |
| Mailing Address: | C/O Jonathan B. Andry 🔍 New Orleans, LA 70113 |

**Company Information**
www.hoovers.com/company_information
65MM+ companies. Financials, execs, industry info,
& more. Free Trial.

[ ➡ ]

AdChoices ▷

Registered Agent:   Jonathan B. Andry
610 Baronne Street
New Orleans, LA 70113 🔍

**Business Registration**
InfoTaxSquare.com/Register_Business
Business Registration-Corp/LLC/DBA Partnership/Non-Profit.Done 24-48hr

[ ➡ ]

AdChoices ▷

MANAGER
Glen J. Lerner 🔍
4795 South Durango Dr.
Las Vegas, NV 89137

MANAGER
Jonathan B. Andry 🔍
610 Baronne Street
New Orleans, LA 70113

Previous    Next    Search

Order Business Services For Andry Lerner, L.L.C.

Bizapedia.com is not affiliated with the Louisiana Secretary of State.

Copyright © 2012-2013 · Bizapedia.com · All rights reserved.    Terms of Use · Privacy Policy · Sitemap

Bizapedia



EXHIBIT
R-1A

TAB 12

**SM-02-JA00945**

SM-02-JA00946

*16319022*

# ANDRY LERNER LLC
### ATTORNEYS AT LAW
.610 Baronne Street · New Orleans, LA 70113
Office:  504-525-5535
Toll Free:  866-404-7777

Jonathan B. Andry·                                                    *Licensed Louisiana Attorney
Glen Lerner··                                                        **Licensed Nevada Attorney

July 30, 2012

**Via Federal Express**
Deepwater Horizon Economic Claims Center
c/o Claims Administrator
42548 Happy Woods Road
Hammond, LA 70403

> RE:   Claimant ID No. 100051739, Casey Thonn
>        VOO Charter Payment, Claim ID NO. 20741
>        Executed Release and Covenant Not to Sue

Dear Mr. Juneau:

Enclosed please find the Executed Release & Covenant Not Sue executed by our client for the above referenced VOO Charter Payment Claim, for the amount of $49,400.  If you have any questions, please let me know.

With kindest personal regards, I remain

Very truly yours,

Leslie B. Tate
BP Claims Coordinator/Paralegal

/lbt
Enclosure



EXHIBIT
R-8

TAB 7

**SM-02-JA00947**

Page 1 of 2

From: (504) 525-5535
Jonathan Andry
The Andry Law Group
610 Baronne Street

New Orleans, LA 70113

Origin ID: NEWA



Ship Date: 30JUL12
ActWgt: 0.3 LB
CAD: 101982934/INET3300

Delivery Address Bar Code

J1220120718032S

BILL SENDER

Ref #        Thenn Voo Release
Invoice #
PO #
Dept #

SHIP TO: (866) 992-6147
**Claims Administrator**
**Deepwater Horizon Economic Claims C**
**42548 HAPPYWOODS RD**

**HAMMOND, LA 70403**

TRK# 7986 7807 3784
0231

TUE - 31 JUL   A4
STANDARD OVERNIGHT

70403
LA-US
MSY

# 42 BTRA



5150UX0ZGUVA4

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**SM-02-JA00948**

## RELEASE COVER SHEET

### I.  INDIVIDUAL CLAIMANT INFORMATION

| Name | Last<br>THONN | First<br>CASEY | Middle Initial |
|---|---|---|---|
| Spouse Name | Last | First | Middle Initial |

### II.  BUSINESS CLAIMANT INFORMATION

| Name of Business: | | | |
|---|---|---|---|
| Authorized Business Representative | Last | First | Middle Initial |
| | Title | | |
| Spouse Name: | Last | First | Middle Initial |

### III.  INFORMATION ABOUT THE CLAIMANT REPRESENTATION

If the claimant is: (1) deceased; (2) a minor; or (3) incompetent and legally unable to sign for himself or herself, you must submit documentation to the Claims Administrator showing your authority to act on behalf of the claimant, if you have not already done so.  See Section 4 of the Registration Form Instructions Booklet for a description of the required documentation.

| Representative Name: | Last | First | Middle Initial |
|---|---|---|---|
| The claimant is: | ☐ Deceased  ☐ A Minor | ☐ Incompetent  ☐ A Dissolved Business | ☐ Declared Bankrupt (or currently undergoing Bankruptcy Proceedings) |
| Source of your authority to act as Representative for the claimant: | ☐ Court Order  ☐ Tutorship | ☐ Power of Attorney  ☐ Conservatorship | ☐ Letters of Administration  ☐ Guardianship  ☐  Other (specify): _____ |

### IV.  PAYMENT INFORMATION

| Claimant ID: | 100051739 | Claim Type: | VoO Charter Payment |
|---|---|---|---|
| Claim ID: | 20741 | Payment Amount: | $49,400.00 |



RECEIVED · HAMMOND
JUL 3 1 2012
GARDEN CITY GROUP

**SM-02-JA00949**

## IMPORTANT INFORMATION ABOUT THE ATTACHED FULL AND FINAL RELEASE, SETTLEMENT, AND COVENANT NOT TO SUE

*All claimants have the right to consult with an attorney of their own choosing prior to accepting any settlement payment or signing a release of legal rights. If you are represented by an attorney in connection with your claim, confer with your attorney before signing this document.*

The attached Full and Final Release, Settlement, and Covenant Not to Sue ("Individual Release") is a binding legal document. By signing this document, you are forever waiving and releasing all claims that you may have against BP or any other party in connection with the Deepwater Horizon Incident (as defined in the Individual Release) except for Expressly Reserved Claims (as defined in the Individual Release).

**By signing the attached Individual Release, you are forever giving up and discharging any rights that you may have for any costs, damages, causes of actions, claims, or other relief related to or arising from the Deepwater Horizon Incident except for Expressly Reserved Claims even if you are not currently aware of such costs or damages and even if such costs or damages arise in the future (i.e., additional oil impacts) or do not manifest themselves until the future.**

By signing the attached Individual Release, you acknowledge that you have read and understand the terms of the Individual Release, and that you execute the Individual Release voluntarily and without being pressured or influenced by, and without relying upon, any statement or representation made by any person acting on behalf of BP or any other released party.

The settlement payment you have been offered arises under the auspices of the federal District Court in New Orleans presiding over the multidistrict litigation titled *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (MDL No. 2179). A class action settlement has been proposed in that case, but the Court has not yet given final approval of that proposed settlement. If the Court does approve the proposed class action settlement, an appellate court could reverse the approval. In addition, it is possible that the terms of the proposed settlement may change in the future—for better or for worse—as a result of further legal proceedings. However, if you sign this Individual Release, none of those uncertain future events will affect you. **By signing this Individual Release you are forever waiving and releasing all claims that you may have against BP (except for Expressly Reserved Claims) in exchange for the compensation being provided.** In fact, even if the Court does not approve the proposed class action settlement agreement or the approval is reversed by an appellate court, you shall continue to be bound by this Individual Release.

For a Business Claimant, if the business is a sole proprietorship and you are the owner and you are married, or if the business is jointly owned by you and your spouse, both you and your spouse must sign the Individual Release. For an Individual Claimant, if you are married, both you and your spouse must sign the Individual Release. You and your spouse should not sign the Individual Release unless you both intend to release and give up all of your claims.

By signing below, you acknowledge that you have read and understand the information above. You elect to accept the payment as a final settlement of all claims against any party in connection with the Deepwater Horizon Incident except for Expressly Reserved Claims. You consent to the use and disclosure by the Claims Administrator and those assisting the Claims Administrator of any information that the Claims Administrator believes necessary and/or helpful to process your claim for compensation and payment and to any legitimate business purposes associated with administering the settlement facility. Finally, you consent to the Claims Administrator providing documentation and information to Lead Class Counsel, BP, and the Court as provided for in the Settlement Agreement.

**SM-02-JA00950**

## ACKNOWLEDGEMENT

I/We acknowledge that I/we have read and understand the information above. I/We consent to the claimant's election to accept the payment as a final settlement of all claims of claimant against any party in connection with the Deepwater Horizon Incident except for Expressly Reserved Claims.

_____     Date _7/30/12_____
Signature of Claimant

_____     Date _____
Signature of Claimant's Spouse

REL-1                          Deepwater Horizon Settlement Release and Covenant Not to Sue          Claimant ID: 100051739
                                          Page 3 of 20                                              Claim ID: 20741

**SM-02-JA00951**

# FULL AND FINAL RELEASE, SETTLEMENT, AND COVENANT NOT TO SUE

1. **Definitions.** For purposes of this **Individual Release**, the following definitions shall apply, and in the case of defined nouns, the singular shall include the plural and vice versa:

   (a) **"Affiliate"** means with respect to any **Natural Person** or **Entity**, any other **Natural Person** or **Entity** that directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, such **Natural Person** or **Entity**.

   (b) **"Assigned Claims"** means the claims defined in Exhibit 21 to the **Settlement Agreement**.

   (c) **"Bodily Injury Claims"** means claims and damages, including lost wages, for or resulting from personal injury, latent injury, future injury, progression of existing injury, damage, disease, death, fear of disease or injury or death, mental or physical pain or suffering, or emotional or mental harm, anguish or loss of enjoyment of life, including any claim for mental health injury, arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident.**

   (d) **"BP"** means BP Exploration & Production Inc., BP America Production Company, BP America Inc., BP Company North America Inc., BP Corporation North America Inc., BP Corporation North America Inc. Savings Plan Investment Oversight Committee, BP Energy Company, BP Exploration (Alaska) Inc., BP Global Special Products (America) Inc., BP Holdings North America Limited, BP p.l.c., BP Products North America Inc., and each of their respective direct or indirect parents, subsidiaries and subsidiary undertakings (as those terms are defined in the U.K. Companies Act 2006), **Affiliates**, divisions, and business units.

   (e) **"Claim"** means any demand or request for compensation (other than **Bodily Injury Claims** or **Expressly Reserved Claims**), together with any properly completed forms and accompanying required documentation, submitted by a **Claimant** to the **Settlement Program.**

   (f) **"Claimant"** means any **Natural Person** or **Entity** that submits a **Claim** to the **Settlement Program** seeking compensation as a member of the **Economic Class.**

   (g) **"Coastal Real Property"** means property in the **Coastal Real Property Claim Zone.**

   (h) **"Coastal Real Property Claim Framework"** means that process described in the document captioned Coastal Real Property Claim Framework, attached as Exhibit 11A to the **Settlement Agreement.**

   (i) **"Coastal Real Property Claim Zone"** means the areas identified on the Coastal Real Property Compensation Zone Map included with the **Coastal Real Property Claim Framework.**

   (j) **"Coastal Real Property Damage"** means a loss to **Real Property** claimed to have been suffered by a **Coastal Real Property** owner or lessee in the **Coastal Real Property Claim Zone** allegedly arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident** that is separate from **Seafood Compensation Program, Economic Damage, Real Property Sales Damage, Wetlands Real Property Damage, VoO Charter Payment, Vessel Physical Damage** and **Subsistence Damage**, and is more fully described in Exhibit 11A to the **Settlement Agreement.**

   (k) **"Compensatory Damages"** means any and all forms of damages, known or unknown, intended to or having the effect of satisfying, compensating, or reimbursing **Claimant's** claims for actual economic or pecuniary costs, expenses, damages, liability, or other losses or injuries arising out of,

SM-02-JA00952

due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**, regardless of what such damages are designated, called or labeled. **Compensatory Damages** do not include and may not be interpreted to have any overlap with punitive, exemplary, multiple, or non-compensatory damages. **Bodily Injury Claims** (including wrongful death) are not included in **Compensatory Damages**. Claims of BP shareholders in any derivative or direct action solely in their capacity as BP shareholders are not included in **Compensatory Damages**. **BP** and **Claimant** acknowledge and agree that the term **Compensatory Damages** as defined and used herein does not limit the amounts to be used for the calculation of punitive or other non-compensatory damages in any current or future litigation pursued by **Claimant**. Nothing herein shall be deemed to limit **Claimant's** rights to pursue Moratoria Losses or other claims expressly reserved against BP under Section 3 of the **Settlement Agreement**.

(l)   **"Damages"** means all forms of damages defined as broadly as possible without exception, including losses, costs, expenses, taxes, requests, royalties, rents, fees, profits, profit shares, earning capacity, loss of subsistence, damages to real or personal property, diminution in property value, punitive damages, exemplary damages, multiple damages, non-compensatory damages, **Compensatory Damages**, economic damages, injuries, liens, remedies, debts, claims, causes of action, or liabilities.

(m)   **"Deepwater Horizon Economic Litigation"** means all **Claims** brought by **Claimant** or any **Economic Class Member** for damage covered by the **Seafood Compensation Program, Coastal Real Property Damage, Economic Damage, Real Property Sales Damage, Subsistence Damage, VoO Charter Payment, Vessel Physical Damage** or **Wetlands Real Property Damage** allegedly arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**, in the **MDL Action**.

(n)   **"Deepwater Horizon Incident"** means the events, actions, inactions and omissions leading up to and including: (i) the blowout of the **MC252 Well**; (ii) the explosions and fire on board the *Deepwater Horizon* on or about April 20, 2010; (iii) the sinking of the *Deepwater Horizon* on or about April 22, 2010; (iv) the release of oil, other hydrocarbons and other substances from the MC252 Well and/or the *Deepwater Horizon* and its appurtenances; (v) the efforts to contain the **MC252 Well**; (vi) **Response Activities**, including the **VoO Program**; (vii) the operation of the GCCF; and (viii) BP public statements relating to all of the foregoing.

(o)   **"DHOST"** means the Deepwater Horizon Oil Spill Trust, which is the irrevocable common law trust established under Delaware law in accordance with the trust agreement titled "Deepwater Horizon Oil Spill Trust" dated August 6, 2010, and entered into among BP Exploration & Production Inc.; John S. Martin, Jr. and Kent D. Syverud, as individual trustees; and Citigroup Trust- Delaware, N.A., as corporate trustee.

(p)   **"Economic Class"** means the Economic and Property Damages Settlement Class.

(q)   **"Economic Damage"** means loss of profits, income, and/or earnings arising in the **Gulf Coast Areas** or **Specified Gulf Waters** allegedly arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**; provided, however, that **Economic Damage** does not include: (1) loss of profits or earnings, or damages for injury relating to **Real Property** or personal property that constitutes any part of the **Seafood Compensation Program, Coastal Real Property Damage, Real Property Sales Damage, Wetlands Real Property Damage, Vessel Physical Damage;** (2) **VoO Charter Payment;** or (3) damages for loss of Subsistence use of natural resources, which constitutes **Subsistence Damage.**

(r)   **"Entity"** means an organization or entity, other than a **Governmental Organization**, operating or having operated for profit or not-for-profit, including a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture or an unincorporated association of any kind or description.

SM-02-JA00953

(s)   **"Expressly Reserved Claims"** means the following **Claims** that are not recognized or released under this **Individual Release**, and are reserved to **Claimant**: (1) **Bodily Injury Claims**; (2) claims of **BP** shareholders in any derivative or direct action solely in their capacity as **BP** shareholders; (3) claims of **Natural Persons** and **Entities** for **Moratoria Losses**; (4) claims relating to menhaden (or "pogy") fishing, processing, selling, catching, or harvesting; (5) claims for **Economic Damage** suffered by **Entities** or employees (to the extent they allege **Economic Damage** based on their employment by such an **Entity** during the **Class Period**) in the Banking, Gaming, Financial, Insurance, Oil and Gas, Real Estate Development, and Defense Contractor Industries, and entities selling or marketing BP-branded fuel, including jobbers and branded retailers, as defined in the **Settlement Agreement**; (6) claims for punitive or exemplary damages against **Halliburton** and **Transocean** subject to the provisions of Section 11 of the **Settlement Agreement**; and (7) the rights of the **Claimant** to recover additional benefits from the **Economic Class** secured by virtue of the efforts of the **Economic Class** to pursue **Assigned Claims**, again subject to the provisions of Section 11 of the **Settlement Agreement**.

(t)   **"Finfish"** means fish other than shellfish and octopuses.

(u)   **"Game"** includes nutria, mink, otters, raccoons, muskrats, alligators, and other wildlife.

(v)   **"GCCF"** means the Gulf Coast Claims Facility.

(w)   **"Governmental Organization"** means: (a) the government of the United States of America; (b) any state or local government; (c) any agency, branch, commission, department, or unit of the government of the United States of America or of any state or local government; or (d) any **Affiliate** of, or any business or organization of any type that is owned in whole or in part to the extent of at least 51% by the government of the United States of America or any state or local government, or any of their agencies, branches, commissions, departments, or units.

(x)   **"Gulf Coast Areas"** means the States of Louisiana, Mississippi, and Alabama; the counties of Chambers, Galveston, Jefferson and Orange in the State of Texas; and the counties of Bay, Calhoun, Charlotte, Citrus, Collier, Dixie, Escambia, Franklin, Gadsden, Gulf, Hernando, Hillsborough, Holmes, Jackson, Jefferson, Lee, Leon, Levy, Liberty, Manatee, Monroe, Okaloosa, Pasco, Pinellas, Santa Rosa, Sarasota, Taylor, Wakulla, Walton and Washington in the State of Florida, including all adjacent Gulf waters, bays, estuaries, straits, and other tidal or brackish waters within the States of Louisiana, Mississippi, Alabama or those described counties of Texas or Florida.

(y)   **"Halliburton"** means Halliburton Energy Services, Inc. and all and any of its **Affiliates**, other than any **Natural Person** or **Entity** that is also an **Affiliate** of any of the **Released Parties** as of April 16, 2012.

(z)   **"Halliburton Parties"** shall mean **Halliburton** (including all persons, entities, subsidiaries, divisions and business units comprised thereby); each of **Halliburton's** respective past, present and future directors, officers, employees, general or limited partners, members, joint venturers, and shareholders, and past, present and future spouses, heirs, beneficiaries, estates, executors, administrators, personal representatives, attorneys, agents, trustees, insurers, reinsurers, predecessors, successors, indemnitees, assigns, **Affiliates**; any natural, legal or juridical person or entity acting on behalf of or having liability in respect of **Halliburton**, in their respective capacities as such; and the federal Oil Spill Liability Trust Fund and any state or local fund, and each of their respective **Affiliates** including their officers, directors, shareholders, employees, and agents.

(aa)   **"Incompetent Claimant"** means a **Natural Person** who lacks the capacity to enter into a contract on his or her behalf at the time this **Individual Release** is executed, in accordance with the state laws of that person's domicile as applied to adult capacity issues, whether through power of attorney agency documents, guardianship, conservatorship, tutorship, or otherwise.

(bb)   **"Individual Release"** means this Full and Final Release, Settlement, and Covenant Not to Sue.

SM-02-JA00954

(cc) **"MC252 Well"** means the exploratory well named "Macondo" that was being drilled by the Transocean *Marianas* and *Deepwater Horizon* rigs in Mississippi Canyon, Block 252 on the outer continental shelf in the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

(dd) **"MDL Action"** means the federal multidistrict litigation pending before the United States District Court for the Eastern District of Louisiana, titled, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, on April 20, 2010 (MDL No. 2179).

(ee) **"Minor Claimant"** means a **Natural Person** whose age is below that of the majority rule for the State in which the minor resides at the time this **Individual Release** is executed.

(ff) **"Moratoria Loss"** means any loss whatsoever caused by or resulting from federal regulatory action or inaction directed at offshore oil industry activity — including shallow water and deepwater activity — that occurred after May 28, 2010, including the federal moratoria on offshore permitting and drilling activities imposed on May 28, 2010 and July 12, 2010 and new or revised safety rules, regulations, inspections, or permitting practices.

(gg) **"Natural Person"** means a human being, and includes the estate of a human being who died on or after April 20, 2010.  For purposes of this **Individual Release**, a **Natural Person** that is the estate of a human being who died on or after April 20, 2010, a **Minor Claimant** or **Incompetent Claimant**, shall be deemed to act through his, her or its Representative.

(hh) **"OPA"** means the Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et seq.*

(ii) **"Other Party"** means every person, entity, or party other than the **Released Parties**.

(jj) **"Other Released Parties"** means **Released Parties** other than **BP**.

(kk) **"Real Property"** means land, including improvements thereon, and property of any nature appurtenant or affixed thereto.

(ll) **"Real Property Sales Compensation Zone"** shall be defined as **Residential Parcels** identified in the **Real Property Compensation Zone Map**.

(mm) **"Real Property Compensation Zone Map"** means the map(s) attached as Exhibit 13B to the **Settlement Agreement**.

(nn) **"Real Property Sales Damage"** means damages for realized damage on the sale of **Residential Parcels** arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**.

(oo) **"Released Claims"** means all claims arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**, including any and all actions, claims, costs, expenses, taxes, rents, fees, profit shares, liens, remedies, debts, demands, liabilities, obligations, or promises of any kind or nature whatsoever, in both law or in equity, past or present, whether known or unknown, including claims for any and all **Unknown Claims** or damages, future injuries, damages or losses not currently known, but which may later develop, provided they arise out of, are due to, result from, or relate in any way to, directly or indirectly, the **Deepwater Horizon Incident**, and regardless of the legal or equitable theory, arising under any source of law whether international, federal, state, or local, and regardless of whether pursuant to statutory law, codal law, adjudication, quasi-adjudication, regulation, or ordinance, including common law, maritime or admiralty, statutory and non-statutory attorneys' fees, breach of contract, breach of any covenant of good faith and/or fair dealing, fraud, misrepresentation, fraudulent concealment, deception, consumer fraud, antitrust, defamation, tortious interference with contract or business expectations, loss of business expectations or opportunities, loss of employment or earning capacity, diminution of property value, violation of the federal Racketeer Influenced and Corrupt Organizations Act or any similar state law,

**SM-02-JA00955**

violations of any consumer protection act, punitive damages, exemplary damages, multiple damages, non-compensatory damages, **Compensatory Damages**, pain and suffering, interest, injunctive relief, declaratory judgment, costs, deceptive practices, unfair business practices, regulation, strict liability, negligence, gross negligence, willful misconduct, nuisance, trespass, fraudulent concealment, statutory violations, including **OPA** or other statutory claims, unfair business practices, breach of fiduciary duty, and all other theories whether existing now or arising in the future, arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident. Released Claims** shall not include **Expressly Reserved Claims.**

(pp)  **"Released Parties,"** for purposes of the **Released Claims**, means: (i) **BP** (including all persons, entities, subsidiaries, divisions and business units comprised thereby); together with (ii) **DHOST**; (iii) the persons, entities, divisions, and business units listed on Attachment A; (iv) each of **BP's** and the **Other Released Parties'** respective past, present and future directors, officers, employees, general or limited partners, members, joint venturers, and shareholders, and their past, present and future spouses, heirs, beneficiaries, estates, executors, administrators, personal representatives, attorneys, agents, trustees, insurers, reinsurers, predecessors, successors, indemnitees, assigns; (v) any natural, legal or juridical person or **Entity** acting on behalf of or having liability in respect of **BP** or the **Other Released Parties**, in their respective capacities as such; and (vi) the federal Oil Spill Liability Trust Fund and any state or local fund, and, as to i-vi above, each of their respective **Affiliates** including their **Affiliates'** officers, directors, shareholders, employees, and agents. **Released Parties** will also include any vessels owned or chartered by any **Released Party** (except for the Deepwater Horizon itself). Notwithstanding anything herein to the contrary, in no event shall any of the following be deemed to be a **Released Party: Transocean** or **Halliburton**. **Claimant** specifically reserves its rights for punitive and exemplary damages against **Transocean** and **Halliburton** subject to the provisions of Paragraph 11 of the **Settlement Agreement**. Furthermore, nothing herein shall impair the rights of the **Claimant** to recover additional benefits from the **Economic Class** secured by virtue of the efforts of the **Economic Class** to pursue **Assigned Claims**, again subject to the provisions of Paragraph 11 of the **Settlement Agreement.**

(qq)  **"Residential Parcels"** means those parcels within the **Real Property Sales Compensation Zone** for which the county where the parcel is located has designated the parcel as a residential classification.

(rr)  **"Response Activities"** means the clean up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the releases of oil, other hydrocarbons and other pollutants from the MC252 Well and/or the Deepwater Horizon and its appurtenances and the **Deepwater Horizon Incident.**

(ss)  **"Seafood"** means fish and shellfish, including shrimp, oysters, crab, and **Finfish**, caught in the **Specified Gulf Waters. Seafood** shall exclude menhaden.

(tt)  **"Seafood Compensation Program"** means the program defined in Section 5.2 of the **Settlement Agreement.**

(uu)  **"Settlement Agreement"** means the Economic and Property Damages Settlement Agreement.

(vv)  **"Settlement Program"** means the *Deepwater Horizon* Court Supervised Settlement Program created pursuant to the **Settlement Agreement**.

(ww)  **"Specified Gulf Waters"** means the U.S. waters of the Gulf of Mexico and all adjacent bays, estuaries, straits, and other tidal or brackish waters within the Gulf Coast Areas, as specifically shown and described in Exhibit 23 to the **Settlement Agreement.**

(xx)  **"Subsistence"** means fishing or hunting to harvest, catch, barter, consume or trade Gulf of Mexico natural resources (including **Seafood** and **Game**), in a traditional or customary manner, to sustain basic personal or family dietary, economic security, shelter, tool, or clothing needs.

SM-02-JA00956

(yy)  **"Subsistence Damage"** means a loss of value of **Subsistence** use of natural resources alleged to arise out of, result from or relate in any way to, directly or indirectly, the **Deepwater Horizon Incident**.

(zz)  **"Transocean"** means Transocean Ltd., Transocean, Inc., Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, Triton Asset Leasing GmbH and all and any of their **Affiliates**, other than any **Natural Person** or **Entity** that is also an **Affiliate** of any of the **Released Parties**.

(aaa)  **"Transocean Parties"** means **Transocean** (including all persons, entities, subsidiaries, divisions and business units comprised thereby); each of **Transocean's** respective past, present and future directors, officers, employees, general or limited partners, members, joint venturers, and shareholders, and past, present and future spouses, heirs, beneficiaries, estates, executors, administrators, personal representatives, attorneys, agents, trustees, insurers, reinsurers, predecessors, successors, indemnitees, assigns, **Affiliates**; any natural, legal or juridical person or entity acting on behalf of or having liability in respect of **Transocean**, in their respective capacities as such; and the federal Oil Spill Liability Trust Fund and any state or local fund, and each of their respective **Affiliates** including their officers, directors, shareholders, employees, and agents.

(bbb)  **"Unknown Claims"** and damages or not currently known claims and damages (whether or not capitalized) means all past, present, and future claims and damages arising out of facts, including new facts or facts found hereafter to be other than or different from the facts now believed to be true, arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident** covered by this **Individual Release** that **Claimant** does not, in whole or in part, know or suspect to exist and which, if known by them, might have affected their decision to provide such **Individual Release**, including all claims arising out of new facts or facts found hereafter to be other than or different from the facts now believed to be true.

(ccc)  **"Vessel Physical Damage"** means physical damage that was sustained by an eligible **Claimant's** eligible vessel due to or resulting from the **Deepwater Horizon Incident** or the Deepwater Horizon Incident response cleanup operations, including the **VoO Program**, that were consistent with the National Contingency Plan or specifically ordered by the Federal On-Scene Coordinator or delegates thereof.

(ddd)  **"VoO Charter Payment"** means a loss alleged by a **VoO Charter Payment Claimant** for any payment or compensation related to participation in the **VoO Program** that satisfies the requirements set forth in Section 5.5 of the **Settlement Agreement**.

(eee)  **"VoO Charter Payment Claimant"** means an **Economic Class** Member claiming to have suffered a **VoO Charter Payment** loss.

(fff)  **"VoO Master Vessel Charter Agreement"** means the standard agreements utilized by BP and its agents or subcontractors to charter the vessels available for work or service in connection with the **VoO Program**.

(ggg)  **"VoO Program"** means the program through which vessel owners performed work for BP or BP's authorized agents pursuant to the terms of the **VoO Master Vessel Charter Agreement**.

(hhh)  **"Wetlands Real Property Claim Framework"** means the rules described in the document captioned Wetlands Real Property Claim Framework, attached to the **Settlement Agreement** as Exhibits 12A-12B.

(iii)  **"Wetlands Real Property Claimant"** means an **Economic Class** Member claiming to have suffered **Wetlands Real Property Damage**.

(jjj)  **"Wetlands Real Property Damage"** means a loss alleged by a **Wetlands Real Property Claimant** that satisfies the requirements set forth in the **Wetlands Real Property Claim Framework**.

**SM-02-JA00957**

2. **Release.** In consideration of payment in the amount of **$49,400.00**, previous payments for **Claims** referenced and released herein, and the right to receive additional Settlement Payment(s) for any additional **Claims**, if any, pursuant to the terms of Section 4.4.8 of the Settlement Agreement, which **Claimant** accepts as sufficient and adequate consideration for any and all **Released Claims**, **Claimant**, on behalf of **Claimant** and **Claimant's** heirs, beneficiaries, estates, executors, administrators, personal representatives, agents, trustees, insurers, reinsurers, subsidiaries, corporate parents, predecessors, successors, indemnitors, subrogees, assigns, and any natural, legal or juridical person or entity entitled to assert any claim on behalf of or in respect of any **Claimant**, hereby releases and forever discharges with prejudice, and covenants not to sue, the **Released Parties** for any and all **Released Claims**; provided however that this **Individual Release** does not apply to, and the term **Released Claims** does not include, **Expressly Reserved Claims**. In the event a **Released Party** is sold or otherwise transferred to or purchases or otherwise acquires, or enters into a partnership or joint venture with, a **Natural Person or Entity** that is not otherwise a **Released Party** immediately prior to giving effect to such transaction, then the non-**Released Party** shall as a result of such transaction obtain a benefit under this **Individual Release** only with respect to any liability of the **Released Party** that it, or any such partnership or joint venture, has acquired or assumed or otherwise become liable for, and not in its own right.

3. **Release Is Comprehensive.** **Claimant** agrees and acknowledges that the consideration granted in Paragraph 2 above constitutes full, complete, and total satisfaction of all of the **Released Claims** against the **Released Parties**. In addition, **Claimant** agrees and acknowledges that the consideration granted in Paragraph 2 above also constitutes full, complete, and total satisfaction of all of **Claimant's Compensatory Damage Claims** against the **Transocean Parties** and the **Halliburton Parties**.

4. **Non-General Release.** **Claimant** expressly waives and releases with prejudice, and shall be deemed to have waived and released with prejudice, any and all rights that it may have under any law, codal law, statute, regulation, adjudication, quasi-adjudication, decision, administrative decision, or common law principle that would otherwise limit the effect of the **Individual Release** to those claims or matters actually known or suspected to exist at the time of execution of the **Individual Release**. California law is not applicable to this **Individual Release**, but purely for illustrative purposes the **Released Claims** include, but are not limited to the release of claims provided for in Section 1542 of the California Civil Code, which provides as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor. "

5. **Contribution, Subrogation, Indemnity.** This **Individual Release** is not intended to prevent BP from exercising its rights of contribution, subrogation, or indemnity under **OPA** or any other law, including its rights of assignment regarding **Assigned Claims** as set forth in Exhibit 21 to the **Settlement Agreement**. **BP** is hereby subrogated to any and all rights that the **Economic Class** Members, or any of them, may have had or have arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident** under OPA. All such rights of BP to contribution, indemnity, and subrogation, and BP's subrogation to the rights of **Economic Class** Members, are subject to the provisions regarding **Assigned Claims** in Exhibit 21 to the **Settlement Agreement**.

6. **Consideration.** Claimant agrees that this **Individual Release** is entered into in consideration of the agreements, promises, and mutual covenants set forth in this **Individual Release** and for such other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged.

7. **No Further Action.** **Claimant** agrees not to file federal or state judicial or administrative proceedings concerning cleanup, removal, spill response or remediation of **Coastal Real Property Damages** and **Wetlands Real Property Damages**, or the underlying **Real Property**, as a means to seek the redress of **Released Claims**.

SM-02-JA00958

8. **Dismissal of All Claims.**

   (a)   In consideration of the benefits provided under this **Individual Release**, all **Released Claims** by or on behalf of **Claimant** against any and all **Released Parties** shall be dismissed with prejudice in any lawsuit in which the **Claimant** is a party.

   (b)   This **Individual Release** shall be the exclusive remedy for any and all **Released Claims** by or on behalf of **Claimant** against any and all **Released Parties**, and **Claimant** shall not recover, directly or indirectly, any sums from any **Released Parties** for any **Released Claims** other than those received for the **Released Claims** under the terms of this **Individual Release**.

   (c)   **Claimant** agrees that **Claimant**, and all other **Natural Persons** and **Entities** claiming by, through, or on behalf of **Claimant** will be forever barred and enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any judicial, arbitral, or regulatory action against the **Released Parties** with respect to the **Released Claims**.

   (d)   If **Claimant** commences, files, initiates, or institutes any new action or other proceeding for any **Released Claims** against the **Released Parties** in any federal or state court, arbitration tribunal, or administrative or other forum, such action or other proceeding shall be dismissed with prejudice and at **Claimant**'s cost; provided, however, before any costs may be assessed, counsel for such **Claimant**, or, if not represented, such **Claimant** shall be given reasonable notice and an opportunity voluntarily to dismiss such new action or proceeding with prejudice. Furthermore, if **Claimant** brings any legal action before any Court, arbitration panel, regulatory agency, or other tribunal to enforce its rights under this **Individual Release**, such **Released Party** shall be entitled to recover any and all related costs and expenses (including attorneys' fees) from any **Claimant** in violation or breach of its obligations under this **Individual Release**.

9. **No Admission of Liability or Wrongdoing by BP.**  The Paragraph 2 payment to **Claimant** is made without any admission of liability or wrongdoing by **BP** or any other **Released Party** and is made purely by way of compromise and settlement.

10. **Claimant Warranty.**  **Claimant** represents and warrants that **Claimant** or **Claimant's** undersigned representative in the case of a business entity has authority to execute this **Individual Release** on behalf of **Claimant**.

11. **Additional Protections for Released Parties.**  **Claimant** promises, agrees, acknowledges, represents, warrants, and covenants as follows:

   (a)   **No Assignment of Claims.**  **Claimant** shall not assign or reassign, or attempt to assign or reassign, to any person or entity other than **BP** any rights or claims arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**. Any such assignment or reassignment, or attempt to assign or reassign, to any **Natural Person** or **Entity** other than **BP** any rights or claims arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident** shall be void, invalid, and of no force and effect.

   (b)   **No Recovery of Additional Compensatory Damages.**  **Claimant** shall not accept or attempt to recover, through insurance, reinsurance, indemnification, contribution, subrogation, litigation, settlement, or otherwise, any **Compensatory Damages** from the **Transocean Parties** and/or the **Halliburton Parties**. Nothing in this Paragraph 11(b) shall impair or impact **Claimant's** rights to pursue **Transocean** and **Halliburton** for exemplary and punitive damages individually or through the **Economic Class**.

SM-02-JA00959

(c) **Non-Execution and Non-Collection for Compensatory Damages.** In the event that **Claimant** is or becomes the beneficiary of any judgment, decision, award, or settlement arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**, **Claimant** shall not accept, execute on, attempt to collect, or otherwise seek recovery of any **Compensatory Damages** from the **Transocean Parties** and/or the **Halliburton Parties**. Nothing in this Paragraph 11(c) shall impair or impact **Claimant's** rights to pursue **Transocean** and **Halliburton** for exemplary and punitive damages individually or through the Economic Class.

(d) **Conditional Collection of Damages.** In the event that **Claimant** is or becomes the beneficiary of any judgment, decision, award, or settlement arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**, including from **Assigned Claims** and/or **Expressly Reserved Claims**, **Claimant** shall not accept, execute on, attempt to collect, or otherwise seek recovery of any **Damages**, to the extent that any **Other Party** is seeking or may seek to recover such **Damages** from any **Released Party**, whether through indemnity, contribution, subrogation, assignment, or any other theory of recovery, by contract, pursuant to applicable law or regulation, or otherwise, directly or indirectly. **Claimant** may, however, accept, execute on, attempt to collect, or otherwise seek recovery of **Damages** if and when a court or tribunal of competent jurisdiction has finally determined that **Other Parties** cannot recover such **Damages**, whether through indemnity, contribution, subrogation, assignment or any other theory of recovery, by contract, pursuant to applicable law or regulation, or otherwise, directly or indirectly, from any **Released Party**. For purposes of this Paragraph 11(d), "finally determined" shall mean the conclusion of any applicable appeals or other rights to seek review by certiorari or otherwise, or the lapse of any and all such rights, or the lapse of any and all applicable limitations or repose periods.

(e) **Conditions on Future Settlements.** **Claimant** may settle or compromise any rights, demands, or claims with the **Transocean Parties**, the **Halliburton Parties**, and/or any **Other Parties** arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**, if, but only if, the **Transocean Parties**, the **Halliburton Parties**, and/or such **Other Party**, as the case may be, agrees as part of that settlement or compromise to a full and final release of, dismissal of, and covenant not to sue for any and all rights to recover, directly or indirectly, from the **Released Parties** (whether through indemnity, contribution, subrogation, assignment or any other theory of recovery, by contract, pursuant to applicable law or regulation, or otherwise) for any **Damages** or other relief or consideration provided under or relating to such settlement or compromise (whether the settlement is of a class, of individual claims, or otherwise), including from **Expressly Reserved Claims**, and further represents and warrants that it has not assigned and will not assign any rights to recover for such **Damages** or other relief or consideration (whether through indemnity, contribution, subrogation, or otherwise). As part of this commitment and without limitation, **Claimant** shall not settle or compromise with the **Transocean Parties**, the **Halliburton Parties**, and/or any **Other Parties** on terms that might allow any insurers, reinsurers, or indemnitors thereof to claim against any **Released Parties** for indemnification, subrogation, contribution, assignment or under any other theory of recovery. **Claimant** agrees that, before any such settlement or compromise is executed, **BP** shall have the right to approve language in any such settlement or compromise memorializing the representation and warranty set forth in this Paragraph 11(e), which approval shall not be unreasonably withheld.

(f) **Indemnity to Released Parties.** Notwithstanding any provision in this **Individual Release** to the contrary, if any **Other Party** recovers or seeks to recover from any **Released Party** (under any theory of recovery, including indemnity, contribution, or subrogation, and including from **Assigned Claims** and/or **Expressly Reserved Claims**) any **Damages** either (a) paid to **Claimant**, or (b) by, through, under, or on account of **Claimant**; then **Claimant** shall indemnify (not defend) the **Released Parties**, but only to the extent of the consideration received in Paragraph 2 above (by way of example, if **Claimant** has received $100.00 pursuant to Paragraph 2 above, its indemnity obligation would be capped at this amount). This indemnity obligation owed by **Claimant** includes any and all claims made or other actions taken by that **Claimant** in breach of this **Individual Release**.

SM-02-JA00960

(g) **Notice Regarding Indemnity.** **Claimant** expressly acknowledges that, to the fullest extent allowed by law, the indemnity obligations contained in Paragraph 11(f) above apply to claims against **Released Parties** predicated on negligence, gross negligence, willful misconduct, strict liability, intentional torts, liability based on contractual indemnity, and any and all other theories of liability, and any and all awards of attorneys' fees or other costs or expenses. **Claimant** acknowledges that this indemnity is for conduct occurring before the date of this **Individual Release** and therefore is not affected by public policies or other law prohibiting agreements to indemnify in advance of certain conduct. **CLAIMANT ACKNOWLEDGES THAT THIS PARAGRAPH 11(g) COMPLIES WITH ANY REQUIREMENT TO EXPRESSLY STATE THAT LIABILITY FOR SUCH CLAIMS IS INDEMNIFIED AND THAT THIS PARAGRAPH 11(g) IS CONSPICUOUS AND AFFORDS FAIR AND ADEQUATE NOTICE.**

12. **Claimant Signature Requirements.** **Claimant** must personally sign the **Individual Release**, rather than through an attorney or otherwise. An electronic signature is insufficient. In addition to signing and accepting the overall **Individual Release** immediately below, **Claimant** agrees to separately sign and vouch for the accuracy of the certifications contained in Attachment "B."

13. **Spouse's Signature.** If the **Claimant** has a living spouse, the **Claimant's** spouse must also personally sign below. An electronic signature is insufficient. The **Claimant** and his or her spouse should not sign the **Individual Release** unless they both intend to release all **Released Claims**.

14. **Choice of Law.** Notwithstanding the law applicable to the underlying claims, which is a disputed issue not resolved by this **Individual Release**, this **Individual Release** and all questions with respect to the construction and enforcement thereof and the rights and liabilities hereto shall be interpreted in accord with General Maritime Law, as well as in a manner intended to comply with **OPA**.

15. **Superseding Nature of Agreement.** This **Individual Release** constitutes the final, complete, and exclusive agreement and understanding between **BP** and **Claimant** and supersedes any and all other agreements, written or oral, between **BP** and **Claimant** with respect to such subject matter of this **Individual Release** in settlement of **Claims** arising out of or related to the **Deepwater Horizon Incident.**

16. **Continuing Effectiveness of Agreement.** This **Individual Release** shall remain effective regardless of any appeals or court decisions relating in any way to the liability of the **Released Parties** in any current or future litigation. **This Individual Release shall also remain effective regardless of whether the Settlement Agreement resolving the Claims of the Economic Class is approved.**

17. **Choice of Federal Forum and Waiver of State Forums.** Any and all disputes, cases, or controversies concerning this **Individual Release**, including without limitation disputes concerning the interpretation or enforceability of this **Individual Release**, shall be filed only in the United States District Court for the Eastern District of Louisiana, accompanied by a legal request made on behalf of any complainant party (whether one of the **Released Parties** or the **Claimant**) for such dispute to be made part of the **MDL Action** if the **MDL Action** has not yet been terminated. No actions to enforce this **Individual Release** shall be filed in any state court, arbitration tribunal, or administrative agency and **Claimant** represents and warrants that it shall not file such an action in any state court, arbitration tribunal, or administrative agency. **Claimant** agrees not to contest the existence of federal jurisdiction in the **MDL Action** or the United States District Court for the Eastern District of Louisiana.

18. **Reservation of Rights.** Notwithstanding the above and foregoing **Individual Release**, **Claimant** hereby reserves: (i) the right to additional settlement payments for any additional **Claims**, if any, pursuant to the terms of Section 4.4.8 of the **Settlement Agreement**; (ii) any and all rights or claims to which **Claimant** may be entitled for additional distributions from and funds held in reserve or trust (including, but not limited to, the **Seafood Compensation Program**, **Assigned Claims** and/or Transocean Personnel Insurance Proceeds) according to the terms of the **Settlement Agreement**; and (iii) **Expressly Reserved Claims**.

19. **Claimant's Responsibility for Attorneys' Fees.** To the extent that **Claimant** has retained or engaged a private attorney to represent him or her or it in connection with the **Deepwater Horizon Incident**, **Claimant** acknowledges and agrees that he or she or it, and not the **BP Parties**, is solely responsible for any attorneys' fees or costs owed to such attorney by the **Claimant**.

SM-02-JA00961

| SIGNATURES | | |
|---|---|---|

Casey Thoma

_____
**Claimant's** Name

*(signature)*

_____
**Claimant's** Signature & Title,
if Business Entity Claimant

7/30/12

_____
Date

_____
**Claimant's** Spouse's Name

_____
**Claimant's** Spouse's Signature,
if applicable

_____
Date

SM-02-JA00962

## ATTACHMENT A: OTHER RELEASED PARTIES

Abdon Callais Offshore, Inc.
Admiral Robert J Papp Jr.
Admiral Thad Allen
Admiral Towing, LLC
Aerotek, Inc.
Airborne Support, Inc.
Airborne Support International, Inc.
Alford Safety Services Inc.
Alford Services Inc.
Ameri-Force, Inc.
Ameri-Force Craft Services, Inc.
American Pollution Control Corporation
Anadarko Petroleum Company
Anadarko Petroleum Corporation
Anadarko E&P Company LP
Apex Environmental Services, LLC
Art Catering, Inc.
Ashland Services, LLC
B&B Environmental Services, Inc.
Belle Chasse Marine Transportation, Inc.
BJ Services Company, USA
Blue Marlin Services of Acadiana, LLC
Bobby Lynn's Marina, Inc.
BP America Inc.
BP America Production Company
BP Company North America Inc.
BP Corporation North America Inc.
BP Energy Company
BP Exploration (Alaska) Inc.
BP Global Special Products (Americas) Inc.
BP Holdings North America Limited
BP Exploration & Production Inc.
BP p.l.c.
BP Products North America Inc.
BP International Ltd.
BP Corporation North America Inc. Savings Plan Investment Oversight Committee
Brett Cocales
Brian Morel
Cabildo Services, LLC
Cabildo Staffing, LLC
Cahaba Disaster Recovery LLC
Cal Dive International, Inc.
Cameron Corporation

SM-02-JA00963

Cameron International Corporation
Cameron International Corporation f/k/a Cooper Cameron Corporation
Cameron International Corporation d/b/a/ Cameron Systems Corporation
Center for Toxicology and Environmental Health L.L.C.
Chill Boats L.L.C.
Chouest Shorebase Services, LLC
Clean Harbors, Inc.
Clean Tank LLC
Clean Tank Inc.
Core Industries, Inc.
Core 4 Kebawk, LLC
Crossmar, Inc.
Crowder/Gulf Joint Venture
Crowder Gulf Disaster Recovery
Danos and Curole Marine Contractors, LLC
Danos & Curole Staffing, L.L.C.
David Sims
Deepwater Horizon Oil Spill Trust
Diamond Offshore Company
DOF Subsea USA, Inc.
Don J. Vidrine
DRC Emergency Services, LLC
DRC Marine, LLC
DRC Recovery Services, LLC
Dril-Quip, Inc.
Dynamic Aviation Group, Inc.
Eastern Research Group, Inc.
Environmental Standards, Inc.
Environmental Safety & Health Consulting Services
Environmental Safety & Health Environmental Services
ES&H, Inc.
ESIS, Inc.
Exponent, Inc.
Faucheaux Brothers Airboat Services, Inc.
Global Diving & Salvage, Inc.
Global Employment Services, Inc.
Global Fabrication, LLC
Global Marine International, Inc.
Graham Gulf Inc.
Grand Isle Shipyard Inc.
Gregg Walz
Guilbeau Marine, Inc.
Guilbeau Boat Rentals, LLC
Gulfmark Offshore, Inc.
Gulf Offshore Logistics, LLC
Gulf Offshore Logistics International, LLC

SM-02-JA00964

Gulf Services Industrial, LLC
HEPACO, Inc.
Hilcorp Energy Company
Hyundai Heavy Industries Co. Ltd, Inc.
Hyundai Motor Company
I-Transit Response, L.L.C.
International Air Response, Inc.
Island Ventures II, LLC
JMN Specialties, Inc.
JNB Operating LLC
John Guide
K & K Marine, LLC
LaBorde Marine Services, LLC
Lane Aviation
Lawson Environmental Service LLC
Lawson Environmental Service & Response Company
Lee Lambert
Lord Edmund John Browne
Lynden Air Cargo, LLC
Lynden, Inc.
Maco of Louisiana, LLC
Maco Services, Inc.
Marine Spill Response Corporation
Mark Bly
Mark Hafle
M-I L.L.C.
M-I Drilling Fluids L.L.C.
M-I Swaco
Miller Environmental Group, Inc.
Mitchell Marine
Mitsui & Co. (USA), Inc.
Mitsui & Co. Ltd.
Mitsui Oil Exploration Co. Ltd.
ModuSpec USA, Inc.
Monica Ann LLC
Moran Environmental Recovery, LLC
MOEX Offshore 2007 LLC
MOEX USA Corporation
M/V Monica Ann
M/V Pat Tilman
M/V Damon B. Bankston
M/V Max Chouest
M/V Ocean Interventions
M/V C. Express
M/V Capt. David
M/V Joe Griffin

SM-02-JA00965

M/V Mr. Sidney
M/V Hilda Lab
M/V Premier Explorer
M/V Sailfish
M/V Seacor Washington
M/V Emerald Coast
M/V Admiral Lee
M/V Seacor Vanguard.
M/V Whuppa Snappa
Nalco Energy Services, LP
Nalco Holding Company
Nalco Finance Holdings LLC
Nalco Finance Holdings Inc.
Nalco Holdings LLC
Nalco Company
National Response Corporation
Nature's Way Marine, LLC
Nautical Ventures, LLC
Nautical Solutions, LLC
O'Brien's Response Management, Inc
Ocean Runner, Inc.
Ocean Therapy Solutions, LLC
Oceaneering International, Inc.
Odyssea Marine, Inc.
Offshore Cleaning Systems L.L.C.
Offshore Service Vessels, LLC
Offshore Inland Marine & Oilfield Services, Inc.
Oil Recovery Company, Inc. of Alabama
Oilfield Marine Contractors, LLC
Parsons Commercial Services Inc.
Parsons Services Company
Parsons Facility Services Company
Parsons Corporation
Patriot Environmental Services Incorporated
Peneton Company
Perennial Contractors, LLC
Peneton Corporation
Production Services Network U.S., Inc.
Quality Container, Inc.
Quality Energy Services, Inc.
Ranger Offshore, Inc.
Reel Pipe, LLC
Resolve Marine Services, Inc.
Robert Kaluza
Ronald W. Sepulvado

SM-02-JA00966

Schlumberger, Ltd.
Seacor Holdings Inc.
Seacor Marine, LLC
Seacor Marine, Inc.
Seacor Marine International, Inc.
Seacor Offshore LLC
Seacor Worldwide, Inc.
Sealion Shipping LTD
Sea Support Services, L.L.C.
Sea Tow of South Miss, Inc.
Seafairer Boat, LLC
Shamrock Management LLC et al.
Shoreline Services, LLC
Siemens Financial, Inc.
Shoreline Construction, LLC
Smith Marine, Inc.
Southern Cat, Inc.
Southern Environmental of Louisiana, LLC
Stallion Offshore Quarters, Inc.
Subsea 7 LLC
Tamara's Group, LLC
Team Labor Force, LLC
Technical Marine Maintenance Services, L.L.C.
The Modern Group, Ltd.
The Modern Group GP-SUB, Inc.
The O'Brien Group, LLC
The Response Group, Inc.
Tiburon Divers, Inc.
Tidewater, Inc.
Tidewater Marine LLC
Tiger Rentals, Ltd.
Tiger Safety, LLC
Toisa Limited
Total Safety U.S., Inc.
Twenty Grand Offshore, LLC
Twenty Grand Marine Service, LLC
Twenty Grand Offshore Inc.
USES/Construct Corps
United States Environmental Services, LLC
United States Maritime Services, Inc.
Viscardi Industrial Services, LLC
Weatherford International Ltd.
Weatherford U.S. L.P.
Wood Group Production Services, Inc.
Worley Catastrophe Services, LLC
Worley Catastrophe Response, LLC

SM-02-JA00967

## ATTACHMENT B: CERTIFICATIONS

**Claimant** hereby signs to attest to and vouch for the accuracy of the certification below:

I certify that I understand and acknowledge that, (subject to my right to additional Settlement Payments, if any, pursuant to Section 4.4.8 of the Settlement Agreement), I am forever giving up with prejudice and discharging, without any right of legal recourse whatsoever, any and all rights I have or may have to the **Released Claims** against the **Released Parties**.  I acknowledge that by having executed the **Individual Release** and signing below neither I nor the entity I represent has been pressured or influenced by, or is relying on any statement or representation made by any person acting on behalf of **BP** or any other **Released Party**.  I certify that I understand that I have the right to consult with an attorney of my choosing before signing this **Individual Release**.

## CERTIFICATION FOR INDIVIDUAL CLAIMS

I certify that either:

(1)  I have not made a claim for unemployment insurance benefits arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident; OR**

(2)  If I have made or do make a claim for unemployment insurance benefits arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**, I will indemnify **BP** for any liability and defense costs it incurs for a subrogation **Claim** made against **BP** arising out of such insurance proceeds provided that the subrogation **Claim** is brought by an entity seeking payment of insurance proceeds to me for any business or property **Claim** arising out, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**; and the amount that I indemnify BP shall not exceed the amount of insurance proceeds that I received for the unemployment insurance benefits **Claim** at issue.

**CLAIMANT ACKNOWLEDGES THAT THIS CERTIFICATION COMPLIES WITH ANY REQUIREMENT TO EXPRESSLY STATE THAT LIABILITY FOR SUCH CLAIMS IS INDEMNIFIED AND THAT THIS CERTIFICATION IS CONSPICUOUS AND AFFORDS FAIR AND ADEQUATE NOTICE.**

## SIGNATURES

| | | |
|---|---|---|
| *Casey Thom* | *(signature)* | 7/30/10 |
| **Claimant's Name** | **Claimant's Signature & Title,**<br>if Business Entity Claimant | Date |
| | | |
| **Claimant's Spouse's Name** | **Claimant's Spouse's Signature,**<br>if applicable | Date |

SM-02-JA00968

***Submission of Original Signed Release.***  Submit the entire original signed Release and any required documentation in one of the following ways:

**By Mail:**
Deepwater Horizon Economic Claims Center
PO Box 1439
Hammond, LA 70404-1439

7.   **By Overnight Delivery, Certified or Registered Mail**
Deepwater Horizon Economic Claims Center
c/o Claims Administrator
42548 Happy Woods Road
Hammond, LA 70403

**Visit a Claimant Assistance Center:**
You may take the signed Release to a Claimant Assistance Center.
Visit **www.deepwaterhorizoneconomicsettlement.com** for a list of Claimant Assistance Centers
or call 1-866-992-6174.

**SM-02-JA00969**

SM-02-JA00970

:BG Claimant Details




**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Home |
| Results Search |
| Law Firm Search |
| Reporting |
| Change Password / Email |
| Log Off |

## Claimant Details

<< Back

### Claimant Information

Claimant ID: 100051739
GCCF Claimant ID: 1060469
Taxpayer Type: Individual With Business
SSN/EIN: *****7555
Represented By: Andry Law Group/Andry Lerner, LLC
Portal User: N/A

Name: THONN, CASEY
Business: CASEY CHARLES THONN
Address: 332 JACOB ST
SLIDELL LA 70458
Preferred Language: English

View Documents | Global Notes | Data Capture Summary | Claimant Review History
Payments | Holds & Metrics

### View Documents

Filter Documents likely associated with: ALL     □ Show Excel Files only

| Doc ID | Document Type | Create Date | Page From | Page To | Doc File ID | |
|---|---|---|---|---|---|---|
| 2408822 | Driver's License/Birth Certificate/Passport (Duplicate) | 07/17/2012 | 1 | | 686143 | View |
| 1248493 | License - Fishing (Commercial or Recreational) | 06/21/2012 | 1 | 1 | 686143 | View |
| 2408809 | License - Boat/Vessel License or Registration | 07/17/2012 | 1 | 1 | 686143 | View |
| 2408834 | License - Fishing (Commercial or Recreational) | 07/17/2012 | 1 | 1 | 686143 | View |
| 2408852 | License - Boat/Vessel License or Registration | 07/17/2012 | 1 | 1 | 686143 | View |
| 4769140 | License - Fishing (Commercial or Recreational) | 09/25/2012 | 1 | 1 | 686143 | View |
| 5903074 | License - Boat/Vessel License or Registration | 10/31/2012 | 1 | 1 | 686143 | View |
| 5903093 | License - Fishing (Commercial or Recreational) | 10/31/2012 | 1 | 1 | 686143 | View |
| 5903116 | License - Fishing (Commercial or Recreational) | 10/31/2012 | 1 | 1 | 686143 | View |
| 5903157 | License - Fishing (Commercial or Recreational) | 10/31/2012 | 1 | 1 | 686143 | View |
| 1248531 | GCCF No Documents Submitted Letter | 06/21/2012 | 1 | 2 | 686144 | View |
| 1248496 | GCCF Deficiency Letter | 06/21/2012 | 1 | 2 | 686145 | View |
| 1248466 | GCCF Other Processing Document | 06/21/2012 | 1 | 2 | 686146 | View |
| 7995996 | Other | 01/30/2013 | 3 | 3 | 686146 | View |
| 1248467 | Envelope or Other Packaging Only | 06/21/2012 | 4 | 5 | 686146 | View |
| 7995717 | GCCF Other Processing Document | 01/30/2013 | 1 | 1 | 686147 | View |
| 1248473 | License - Boat/Vessel License or Registration (Duplicate) | 06/21/2012 | 2 | 2 | 686147 | View |
| 1248474 | License - Fishing (Commercial or Recreational) (Duplicate) | 06/21/2012 | 2 | 2 | 686147 | View |
| 1248475 | License - Gear (Duplicate) | 06/21/2012 | 2 | 2 | 686147 | View |
| 4530209 | License - Gear (Duplicate) | 09/18/2012 | 2 | 2 | 686147 | View |
| 1248477 | 2009 Federal Income Return Form 1040 (Individually Filed) (Duplicate) | 06/21/2012 | 3 | 8 | 686147 | View |
| 1248476 | 2009 Federal Income Return Form 1040, Schedule C (Duplicate) | 06/21/2012 | 7 | 8 | 686147 | View |
| 1248478 | Envelope or Other Packaging Only | 06/21/2012 | 9 | 10 | 686147 | View |
| 1248545 | Correspondence from Claimant | 06/21/2012 | 1 | 2 | 686148 | View |
| 7995625 | Insurance - Payments | 01/30/2013 | 3 | 4 | 686148 | View |
| 1248502 | GCCF Interim Payment Claim Form | 06/21/2012 | 1 | 15 | 686149 | View |
| 1248503 | Envelope or Other Packaging Only | 06/21/2012 | 16 | 16 | 686149 | View |

EXHIBIT R-9   TAB 8

BG Claimant Details

| 1248479 | Correspondence from Claimant's Counsel | 06/21/2012 | 1 | 2 | 686150 | View |
| 1248505 | GCCF Interim/Final Payment Claim Deficiency Notice | 06/21/2012 | 1 | 3 | 686151 | View |
| 1248480 | Correspondence from Claimant's Counsel | 06/21/2012 | 1 | 1 | 686152 | View |
| 1248481 | Correspondence from Claimant's Counsel (Duplicate) | 06/21/2012 | 1 | 1 | 686153 | View |
| 1248485 | Affidavit/Sworn Statement (Duplicate) | 06/21/2012 | 2 | 12 | 686153 | View |
| 1248506 | GCCF Interim/Final Payment Claim Deficiency Notice | 06/21/2012 | 1 | 3 | 686154 | View |
| 1248523 | Correspondence from Claimant's Counsel | 06/21/2012 | 1 | 1 | 686155 | View |
| 1248529 | 2010 State Tax Return (Duplicate) | 06/21/2012 | 2 | 7 | 686155 | View |
| 1248530 | 2010 Federal Income Return Form 1040 (Jointly Filed) (Duplicate) | 06/21/2012 | 8 | 24 | 686155 | View |
| 1248525 | 2010 Federal Income Return Form 1040, Schedule C (Duplicate) | 06/21/2012 | 11 | 11 | 686155 | View |
| 1248526 | 2010 Federal Income Return Form 1040, Schedule C (Duplicate) | 06/21/2012 | 12 | 13 | 686155 | View |
| 1248527 | 2010 Federal Income Return Form 1040, Schedule C (Duplicate) | 06/21/2012 | 14 | 15 | 686155 | View |
| 7985614 | 2010 Federal Income Return Form 1040, Schedule C (Duplicate) | 01/30/2013 | 16 | 17 | 686155 | View |
| 7985662 | 2010 Federal Income Return Form 1040, Schedule C (Duplicate) | 01/30/2013 | 18 | 19 | 686155 | View |
| 1248518 | 2010 Financial - Income Statements / Profit & Loss (Duplicate) | 06/21/2012 | 25 | 25 | 686155 | View |
| 1248519 | Hardship Request for expedited Treatment | 06/21/2012 | 26 | 28 | 686155 | View |
| 1248520 | License - Boat/Vessel License or Registration (Duplicate) | 06/21/2012 | 29 | 29 | 686155 | View |
| 1248521 | License - Fishing (Commercial or Recreational) (Duplicate) | 06/21/2012 | 29 | 29 | 686155 | View |
| 1248522 | License - Gear | 06/21/2012 | 29 | 29 | 686155 | View |
| 4530895 | License - Gear | 09/18/2012 | 29 | 29 | 686155 | View |
| 1248482 | Correspondence from Claimant's Counsel | 06/21/2012 | 1 | 3 | 686156 | View |
| 1248494 | Correspondence from Claimant's Counsel | 06/21/2012 | 1 | 2 | 686157 | View |
| 1248483 | Correspondence from Claimant's Counsel | 06/21/2012 | 1 | 3 | 686158 | View |
| 1248488 | Correspondence from Claimant's Counsel | 06/21/2012 | 1 | 3 | 686159 | View |
| 1248495 | Correspondence from Claimant's Counsel | 06/21/2012 | 1 | 3 | 686160 | View |
| 1248547 | GCCF Other Processing Document | 06/21/2012 | 1 | 2 | 686161 | View |
| 2409819 | Education Records Received from Third Party | 07/17/2012 | 3 | 3 | 686161 | View |
| 1248546 | Envelope or Other Packaging Only | 06/21/2012 | 4 | 5 | 686161 | View |
| 1248468 | Power of Attorney or Other Authorization for Lawyer to Sign for Claimant (Duplicate) | 06/21/2012 | 1 | 1 | 686162 | View |
| 1248489 | Correspondence from Claimant's Counsel | 06/21/2012 | 1 | 2 | 686163 | View |
| 1248492 | Power of Attorney or Other Authorization for Lawyer to Sign for Claimant | 06/21/2012 | 3 | 3 | 686163 | View |
| 1248507 | GCCF Interim/Final Payment Claim Deficiency Notice | 06/21/2012 | 1 | 3 | 686164 | View |
| 1248490 | Correspondence from Claimant's Counsel | 06/21/2012 | 1 | 2 | 686165 | View |
| 1248508 | GCCF Interim/Final Payment Claim Deficiency Notice | 06/21/2012 | 1 | 3 | 686166 | View |
| 7981867 | GCCF Other Processing Document | 01/30/2013 | 1 | 1 | 686167 | View |
| 1248513 | Worley Subsistence Claimant Verification Form | 06/21/2012 | 2 | 36 | 686167 | View |
| 1248511 | Correspondence from Expert | 06/21/2012 | 10 | 12 | 686167 | View |
| 1248514 | Subsistence Claimant Sworn Written Statement | 06/21/2012 | 13 | 24 | 686167 | View |
| 1248510 | Supplemental Request Form | 06/21/2012 | 26 | 27 | 686167 | View |
| 1248512 | | 06/21/2012 | 38 | 38 | 686167 | |

SM-02-JA00972

.BG Claimant Details

Page 3 of 7

| | | | | | | |
|---|---|---|---|---|---|---|
| | License – Fishing (Commercial or Recreational) (Duplicate) | | | | | View |
| 4607469 | License – Gear (Duplicate) | 09/20/2012 | 38 | 38 | 686167 | View |
| 4607682 | License – Boat/Vessel License or Registration (Duplicate) | 09/20/2012 | 38 | 38 | 686167 | View |
| 4607802 | License – Gear (Duplicate) | 09/20/2012 | 38 | 38 | 686167 | View |
| 4607817 | Education Records Received from Third Party (Duplicate) | 09/20/2012 | 39 | 39 | 686167 | View |
| 4607956 | Envelope or Other Packaging Only | 09/20/2012 | 40 | 42 | 686167 | View |
| 1248491 | Correspondence from Claimant's Counsel (Duplicate) | 06/21/2012 | 1 | 3 | 686168 | View |
| 4603593 | Correspondence from Claimant's Counsel | 09/20/2012 | 1 | 3 | 686169 | View |
| 1248470 | Hardship Request for expedited Treatment | 06/21/2012 | 4 | 6 | 686169 | View |
| 1248469 | Correspondence from Claimant (Duplicate) | 06/21/2012 | 1 | 1 | 686170 | View |
| 1248497 | Media - Video | 06/21/2012 | 1 | 1 | 686171 | View |
| 1248498 | Media - Video | 06/21/2012 | 1 | 1 | 686172 | View |
| 1248460 | Financial –Income Statements / Profit & Loss - Non-Monthly (Duplicate) | 06/21/2012 | 1 | 1 | 686173 | View |
| 1248515 | 2010 State Tax Return (Duplicate) | 06/21/2012 | 1 | 6 | 686174 | View |
| 1248501 | 2010 Federal Income Return Form 1040 (Individually Filed) (Duplicate) | 06/21/2012 | 1 | 17 | 686175 | View |
| 2411804 | 2010 Federal Income Return Form 1040, Schedule C (Duplicate) | 07/17/2012 | 4 | 4 | 686175 | View |
| 7965669 | 2010 Federal Income Return Form 1040, Schedule C (Duplicate) | 01/29/2013 | 5 | 6 | 686175 | View |
| 7965688 | 2010 Federal Income Return Form 1040, Schedule C (Duplicate) | 01/29/2013 | 7 | 8 | 686175 | View |
| 7965723 | 2010 Federal Income Return Form 1040, Schedule C (Duplicate) | 01/29/2013 | 9 | 10 | 686175 | View |
| 7965748 | 2010 Federal Income Return Form 1040, Schedule C (Duplicate) | 01/29/2013 | 11 | 12 | 686175 | View |
| 1248516 | 2009 Federal Income Return Form 1040 (Jointly Filed) (Duplicate) | 06/21/2012 | 1 | 22 | 686176 | View |
| 2411662 | 2009 Federal Income Return Form 1040, Schedule C (Duplicate) | 07/17/2012 | 7 | 8 | 686176 | View |
| 2411720 | 2009 State Tax Return (Duplicate) | 07/17/2012 | 18 | 22 | 686176 | View |
| 1248536 | Correspondence from Claimant's Counsel | 06/21/2012 | 1 | 1 | 686177 | View |
| 1248541 | Other Correspondence | 06/21/2012 | 2 | 4 | 686177 | View |
| 1248535 | Correspondence from Claimant | 06/21/2012 | 5 | 5 | 686177 | View |
| 1248537 | Other Tax Document | 06/21/2012 | 6 | 7 | 686177 | View |
| 7962631 | 2009 Federal Income Return Form 1040 (Jointly Filed) | 01/29/2013 | 8 | 27 | 686177 | View |
| 7962709 | 2009 Federal Income Return Form 1040, Schedule C | 01/29/2013 | 12 | 13 | 686177 | View |
| 7963280 | 2009 State Tax Return | 01/29/2013 | 23 | 25 | 686177 | View |
| 1248538 | 2010 Federal Income Return Form 1040 (Individually Filed) | 06/21/2012 | 28 | 50 | 686177 | View |
| 7963389 | 2010 Federal Income Return Form 1040, Schedule C | 01/29/2013 | 31 | 31 | 686177 | View |
| 7963407 | 2010 Federal Income Return Form 1040, Schedule C | 01/29/2013 | 32 | 33 | 686177 | View |
| 7963447 | 2010 Federal Income Return Form 1040, Schedule C | 01/29/2013 | 34 | 35 | 686177 | View |
| 7963488 | 2010 Federal Income Return Form 1040, Schedule C | 01/29/2013 | 36 | 37 | 686177 | View |
| 7963514 | 2010 Federal Income Return Form 1040, Schedule C | 01/29/2013 | 38 | 39 | 686177 | View |
| 7963592 | 2010 State Tax Return | 01/29/2013 | 45 | 48 | 686177 | View |
| 1248542 | Financial –Income Statements / Profit & Loss - Non-Monthly (Duplicate) | 06/21/2012 | 51 | 51 | 686177 | View |
| 1248509 | GCCF Interim/Final Payment Claim Deficiency Notice | 06/21/2012 | 1 | 3 | 686178 | View |
| 1248472 | Other Correspondence | 06/21/2012 | 1 | 1 | 686179 | View |
| 1248471 | Correspondence from Claimant | 06/21/2012 | 2 | 2 | 686179 | View |
| 1248517 | Transition Process Quick Payment Letter | 06/21/2012 | 1 | 2 | 686180 | View |

SM-02-JA00973

BG Claimant Details

| | | | | | | |
|---|---|---|---|---|---|---|
| 7955179 | Correspondence from Claimant's Counsel | 01/29/2013 | 1 | 1 | 686181 | View |
| 1248461 | 2009 Financial – Income Statements / Profit & Loss | 06/21/2012 | 2 | 3 | 686181 | View |
| 1248464 | Correspondence from Claimant's Counsel | 06/21/2012 | 4 | 5 | 686181 | View |
| 1248463 | Other Correspondence | 06/21/2012 | 6 | 7 | 686181 | View |
| 1248465 | Affidavit/Sworn Statement | 06/21/2012 | 8 | 18 | 686181 | View |
| 1248462 | 2009 Financial – Annual Income Statements / Profit & Loss | 06/21/2012 | 19 | 19 | 686181 | View |
| 4617175 | Financial –Income Statements / Profit & Loss - Non-Monthly | 09/20/2012 | 20 | 20 | 686181 | View |
| 4617689 | 2011 Financial – Annual Income Statements / Profit & Loss | 09/20/2012 | 21 | 21 | 686181 | View |
| 1248500 | Change of Address Request (Not Claimant) | 06/21/2012 | 1 | 1 | 686182 | View |
| 1248484 | Correspondence from Claimant's Counsel | 06/21/2012 | 1 | 17 | 686183 | View |
| 1248487 | Correspondence from Claimant's Counsel | 06/21/2012 | 1 | 1 | 686184 | View |
| 1248486 | Envelope or Other Packaging Only | 06/21/2012 | 2 | 2 | 686184 | View |
| 1248499 | Other Correspondence | 06/21/2012 | 1 | 1 | 686185 | View |
| 1248532 | Transition Process Pending Claim Letter | 06/21/2012 | 1 | 2 | 686186 | View |
| 7954418 | Correspondence from Claimant's Counsel | 01/29/2013 | 3 | 3 | 686186 | View |
| 1248504 | GCCF Interim Payment Claim Determination Notice | 06/21/2012 | 1 | | 686187 | View |
| 1248533 | Transition Process Pending Offer Letter | 06/21/2012 | 1 | 2 | 686188 | View |
| 1248534 | Transition Process Pending Claim Letter | 06/21/2012 | 1 | 2 | 686189 | View |
| 1249475 | Power of Attorney or Other Authorization for Lawyer to Sign for Claimant | 06/21/2012 | 1 | 1 | 686704 | View |
| 1249486 | Registration Form | 06/21/2012 | 1 | 12 | 686715 | View |
| 1307169 | Claimant Accounting Support Invoice | 06/24/2012 | 1 | 2 | 721361 | View |
| 2407031 | Correspondence from Expert | 06/24/2012 | 3 | 18 | 721361 | View |
| 8009008 | SWS-38 – Claimant Accounting Support Sworn Written Statement (Duplicate) | 06/24/2012 | 12 | 14 | 721361 | View |
| 2407066 | Other Correspondence | 06/24/2012 | 19 | 29 | 721361 | View |
| 2407096 | 2010 Federal Income Return Form 1040 (Individually Filed) (Duplicate) | 06/24/2012 | 30 | 48 | 721361 | View |
| 2407151 | 2010 Federal Income Return Form 1040, Schedule C (Duplicate) | 06/24/2012 | 33 | 33 | 721361 | View |
| 8009133 | 2010 Federal Income Return Form 1040, Schedule C (Duplicate) | 06/24/2012 | 34 | 35 | 721361 | View |
| 8009142 | 2010 Federal Income Return Form 1040, Schedule C (Duplicate) | 06/24/2012 | 36 | 37 | 721361 | View |
| 8009177 | 2010 Federal Income Return Form 1040, Schedule C (Duplicate) | 06/24/2012 | 38 | 39 | 721361 | View |
| 8009200 | 2010 Federal Income Return Form 1040, Schedule C (Duplicate) | 06/24/2012 | 40 | 41 | 721361 | View |
| 8009283 | 2009 Federal Income Return Form 1040 (Jointly Filed) (Duplicate) | 06/24/2012 | 49 | 63 | 721361 | View |
| 8009335 | 2009 Federal Income Return Form 1040, Schedule C (Duplicate) | 06/24/2012 | 53 | 54 | 721361 | View |
| 8009426 | 2009 State Tax Return (Duplicate) | 06/24/2012 | 64 | 68 | 721361 | View |
| 2407436 | 2011 Financial – Annual Income Statements / Profit & Loss (Duplicate) | 06/24/2012 | 69 | 69 | 721361 | View |
| 8009520 | Financial –Income Statements / Profit & Loss - Non-Monthly (Duplicate) | 06/24/2012 | 70 | 70 | 721361 | View |
| 2407465 | License - Boat/Vessel License or Registration (Duplicate) | 06/24/2012 | 71 | 71 | 721361 | View |
| 2407528 | License - Fishing (Commercial or Recreational) (Duplicate) | 06/24/2012 | 71 | 71 | 721361 | View |
| 2407605 | License - Fishing (Commercial or Recreational) (Duplicate) | 06/24/2012 | 71 | 71 | 721361 | View |
| 2407616 | License - Boat/Vessel License or Registration (Duplicate) | 06/24/2012 | 71 | 71 | 721361 | View |
| 2407637 | License - Fishing (Commercial or Recreational) (Duplicate) | 06/24/2012 | 71 | 71 | 721361 | View |
| 2407716 | License - Gear (Duplicate) | 06/24/2012 | 72 | 72 | 721361 | View |
| 2407733 | | 06/24/2012 | 72 | 72 | 721361 | |

SM-02-JA00974

BG Claimant Details

| | License - Fishing (Commercial or Recreational) (Duplicate) | | | | | |
|---|---|---|---|---|---|---|
| 2407755 | License - Gear (Duplicate) | 06/24/2012 | 72 | 72 | 721361 | View |
| 2407773 | License - Boat/Vessel License or Registration (Duplicate) | 06/24/2012 | 72 | 72 | 721361 | View |
| 2407788 | Driver's License/Birth Certificate/Passport | 06/24/2012 | 73 | 73 | 721361 | View |
| 2407875 | Bank Statements (Not Claimant) | 06/24/2012 | 74 | 87 | 721361 | View |
| 4759474 | Bank Statements (Duplicate) | 06/24/2012 | 88 | 95 | 721361 | View |
| 4760406 | Bank Statements (Duplicate) | 06/24/2012 | 96 | 103 | 721361 | View |
| 2407897 | Form W-9 (Duplicate) | 06/24/2012 | 104 | 104 | 721361 | View |
| 1307224 | Seafood Compensation Program Claim Form (Yellow Form) (Claim ID 19690) | 06/24/2012 | 1 | | 721393 | View |
| 1307225 | Seafood Compensation Program Claim Form (Yellow Form) (Claim ID 19691) | 06/24/2012 | 1 | | 721394 | View |
| 2408154 | Claimant Accounting Support Invoice | 06/24/2012 | 1 | 2 | 721429 | View |
| 6056755 | Correspondence from Expert | 06/24/2012 | 3 | 6 | 721429 | View |
| 6056805 | SWS-38 - Claimant Accounting Support Sworn Written Statement | 06/24/2012 | 7 | 8 | 721429 | View |
| 1307285 | License - Boat/Vessel License or Registration (Duplicate) | 06/24/2012 | 9 | 9 | 721429 | View |
| 2408199 | License - Boat/Vessel License or Registration (Duplicate) | 06/24/2012 | 9 | 9 | 721429 | View |
| 2408220 | License - Gear (Duplicate) | 06/24/2012 | 9 | 9 | 721429 | View |
| 2408271 | License - Gear (Duplicate) | 06/24/2012 | 9 | 9 | 721429 | View |
| 2408297 | License - Fishing (Commercial or Recreational) (Duplicate) | 06/24/2012 | 9 | 9 | 721429 | View |
| 2408349 | Vessels of Opportunity Training Document | 06/24/2012 | 10 | 12 | 721429 | View |
| 2408524 | Vessels of Opportunity Work or Charter Dispatch Log | 06/24/2012 | 13 | 44 | 721429 | View |
| 2408629 | Vessels of Opportunity Training Document | 06/24/2012 | 16 | 16 | 721429 | View |
| 2408593 | Vessels of Opportunity Invoice for Work Performed | 06/24/2012 | 19 | 19 | 721429 | View |
| 2408569 | Vessels of Opportunity Invoice for Work Performed | 06/24/2012 | 43 | 43 | 721429 | View |
| 2408658 | Driver's License/Birth Certificate/Passport (Duplicate) | 06/24/2012 | 45 | 45 | 721429 | View |
| 2408694 | Bank Statements | 06/24/2012 | 46 | 53 | 721429 | View |
| 8016725 | Bank Statements | 06/24/2012 | 54 | 61 | 721429 | View |
| 2408711 | Form W-9 | 06/24/2012 | 62 | 62 | 721429 | View |
| 1307286 | Vessels of Opportunity (VoO)/Charter Claim Form (Pink Form) (Claim ID 20741) | 06/24/2012 | 1 | | 721430 | View |
| 2464851 | Eligibility Notice (Claim ID 20741) | 07/18/2012 | 1 | 9 | 16161437 | View |
| 2799529 | Release (Claim ID 20741) | 07/29/2012 | 1 | 22 | 16263115 | View |
| 2959638 | DWH Release Received - Hard Copy | 08/02/2012 | 1 | 20 | 16319022 | View |
| 3058103 | Correspondence from Claimant's Counsel | 08/04/2012 | 21 | 21 | 16319022 | View |
| 3058119 | Other | 08/04/2012 | 22 | 23 | 16319022 | View |
| 3058138 | Envelope or Other Packaging Only | 08/04/2012 | 24 | 24 | 16319022 | View |
| 3478205 | Correspondence from Claimant's Counsel | 08/16/2012 | 1 | 1 | 16457470 | View |
| 3487618 | Payment Election Form | 08/16/2012 | 2 | 3 | 16457470 | View |
| 3487633 | Attorney Fee Acknowledgment Form | 08/16/2012 | 4 | 5 | 16457470 | View |
| 3487644 | Envelope or Other Packaging Only | 08/16/2012 | 6 | 6 | 16457470 | View |
| 5769778 | Subsistence Claim Form (Teal Form) (Claim ID 97550) | 10/26/2012 | 1 | | 17064841 | View |
| 5970681 | Eligibility Notice (Claim ID 19690) | 11/01/2012 | 1 | | 17115313 | View |
| 6129024 | Eligibility Notice (Claim ID 19691) | 11/06/2012 | 1 | | 17171861 | View |
| 6778064 | Request for Reconsideration Form (from Eligibility Notice) (Duplicate) | 12/03/2012 | 1 | 4 | 17357800 | View |
| 6778411 | Eligibility Notice (Duplicate) | 12/03/2012 | 5 | 10 | 17357800 | View |
| 6778475 | | 12/03/2012 | 11 | 13 | 17357800 | |

SM-02-JA00975

BG Claimant Details

| | | | | | | |
|---|---|---|---|---|---|---|
| | SWS-1 Seafood Sworn Written Statement for Sufficient Documentation (Duplicate) | | | | | View |
| 6778171 | Request for Reconsideration Form (from Eligibility Notice) | 12/03/2012 | 1 | 2 | 17357849 | View |
| 8010084 | Supporting Document | 12/03/2012 | 3 | 4 | 17357849 | View |
| 6778578 | Eligibility Notice | 12/03/2012 | 5 | 11 | 17357849 | View |
| 6778608 | SWS-1 Seafood Sworn Written Statement for Sufficient Documentation | 12/03/2012 | 12 | 14 | 17357849 | View |
| 6876445 | Post-Reconsideration Eligibility Notice (Claim ID 19690) | 12/07/2012 | 1 | | 17391539 | View |
| 6876457 | Post-Reconsideration Eligibility Notice (Claim ID 19691) | 12/07/2012 | 1 | | 17391543 | View |
| 6923661 | Post-Reconsideration Eligibility Notice (Claim ID 19690) | 12/10/2012 | 1 | | 17403744 | View |
| 6923945 | Post-Reconsideration Eligibility Notice (Claim ID 19691) | 12/10/2012 | 1 | | 17403839 | View |
| 7454871 | Claims Preparation--Invoices to Claimant | 01/07/2013 | 1 | 1 | 17557401 | View |
| 7468048 | Claims Preparation--Supporting Detail | 01/07/2013 | 1 | 2 | 17562379 | View |
| 7467855 | Request for Reconsideration Form (from Eligibility Notice) | 01/07/2013 | 3 | 9 | 17562379 | View |
| 7468018 | SWS-1 Seafood Sworn Written Statement for Sufficient Documentation | 01/07/2013 | 10 | 12 | 17562379 | View |
| 7468026 | Post-Reconsideration Eligibility Notice | 01/07/2013 | 13 | 20 | 17562379 | View |
| 7468055 | Claims Preparation--Supporting Detail | 01/07/2013 | 21 | 23 | 17562379 | View |
| 7468038 | Correspondence from Claimant's Counsel | 01/07/2013 | 24 | 24 | 17562379 | View |
| 7468057 | Claims Preparation--Supporting Detail | 01/07/2013 | 25 | 25 | 17562379 | View |
| 7468046 | Post-Reconsideration Eligibility Notice | 01/07/2013 | 26 | 26 | 17562379 | View |
| 7467860 | Other Correspondence | 01/07/2013 | 1 | 1 | 17562382 | View |
| 7498287 | Appeal- Notice of Claimant Appeal of Eligible Claim | 01/09/2013 | 1 | | 17573998 | View |
| 7501153 | Appeal- Notice of Claimant Appeal of Eligible Claim | 01/09/2013 | 1 | | 17575344 | View |
| 7501218 | Appeal- Notice of Claimant Appeal of Eligible Claim | 01/09/2013 | 1 | | 17575369 | View |
| 7510765 | Appeal- Notice of Claimant Appeal of Eligible Claim (Claim ID 19690) | 01/09/2013 | 1 | | 17579250 | View |
| 7864536 | Appeal- Notice of Claimant Appeal of Eligible Claim | 01/24/2013 | 1 | | 17726956 | View |
| 7868558 | Appeal- Notice of Claimant Appeal of Eligible Claim | 01/24/2013 | 1 | | 17728837 | View |
| 7868702 | Appeal- Notice of Claimant Appeal of Eligible Claim | 01/24/2013 | 1 | | 17728893 | View |
| 7868707 | Appeal- Notice of Claimant Appeal of Eligible Claim | 01/24/2013 | 1 | | 17728897 | View |
| 7869175 | Other Correspondence | 01/24/2013 | 1 | 2 | 17729072 | View |
| 7912579 | Appeal- Opposition Memorandum | 01/24/2013 | 3 | 4 | 17729072 | View |
| 7912597 | Eligibility Notice | 01/24/2013 | 5 | 11 | 17729072 | View |
| 7912641 | SWS-1 Seafood Sworn Written Statement for Sufficient Documentation | 01/24/2013 | 12 | 14 | 17729072 | View |
| 7912724 | Post-Reconsideration Eligibility Notice | 01/24/2013 | 15 | 22 | 17729072 | View |
| 7912783 | Supporting Document | 01/24/2013 | 23 | 25 | 17729072 | View |
| 7913056 | Correspondence from Claimant's Counsel (Duplicate) | 01/24/2013 | 26 | 26 | 17729072 | View |
| 7913078 | Post-Reconsideration Eligibility Notice | 01/24/2013 | 27 | 27 | 17729072 | View |
| 7948741 | Post-Reconsideration Eligibility Notice (Claim ID 19690) | 01/29/2013 | 1 | | 17756196 | View |
| 7961164 | Appeal- Appeal Correspondence | 01/24/2013 | 1 | 1 | 17761146 | View |
| 8047866 | Appeal- Opening Memorandum | 01/24/2013 | 2 | 6 | 17761146 | View |
| 8047915 | 2009 Federal Income Return Form 1040, Schedule C | 01/24/2013 | 7 | 9 | 17761146 | View |
| 8048263 | Claims Preparation--Invoices to Claimant | 01/24/2013 | 10 | 12 | 17761146 | View |
| 8051625 | Claims Preparation--Supporting Detail | 01/24/2013 | 13 | 21 | 17761146 | View |
| 8051644 | Claims Preparation--Invoices to Claimant | 01/24/2013 | 22 | 23 | 17761146 | View |

SM-02-JA00976

BG Claimant Details

| | | | | | | |
|---|---|---|---|---|---|---|
| 8051681 | Appeal- Initial Proposal Form | 01/24/2013 | 24 | 25 | 17761146 | View |
| 7970827 | Appeal- Notice of Initial Proposals (Claim ID 19691) | 01/29/2013 | 1 | | 17765798 | View |
| 7979068 | Appeal- Notice of Claimant Appeal of Eligible Claim (Claim ID 19691) | 01/30/2013 | 1 | | 17768875 | View |
| 8118686 | Correspondence from Claimant's Counsel | 02/04/2013 | 1 | 1 | 17819814 | View |
| 8182074 | Appeal- Final Proposal Form | 02/04/2013 | 2 | 2 | 17819814 | View |
| 8182084 | Appeal- Supporting Memoranda | 02/04/2013 | 3 | 5 | 17819814 | View |
| 8141489 | Appeal- Appeal Correspondence | 02/04/2013 | 1 | 1 | 17828565 | View |
| 8201474 | Appeal- Supporting Memoranda | 02/04/2013 | 2 | 5 | 17828565 | View |
| 8201480 | Appeal- Final Proposal Form | 02/04/2013 | 6 | 7 | 17828565 | View |
| 8186237 | Employer Identification Number Verification Notice | 02/08/2013 | 1 | | 17847184 | View |
| 8211714 | Appeal- Notice of Final Proposals (Claim ID 19691) | 02/08/2013 | 1 | | 17854957 | View |
| 8646281 | Employer Identification Number Verification Notice | 02/28/2013 | 1 | 2 | 18023235 | View |
| 8646573 | Social Security Card | 02/28/2013 | 3 | 4 | 18023235 | View |
| 9320044 | Appeal- Notice of Appeal Panel Decision (Claim ID 19691) | 03/28/2013 | 1 | | 18258963 | View |
| 9472425 | Vessel Physical-Damage Claim Form (Blank Form) (Claim ID 179170) | 04/05/2013 | 1 | | 18315318 | View |
| 9547031 | Appeal- Post-Appeal Eligibility Notice (Claim ID 19691) | 04/10/2013 | 1 | | 18341322 | View |
| 9581262 | Geographic Location Material - Maps | 04/11/2013 | 1 | 1 | 18353087 | View |
| 9581332 | Fishing or Hunting Area Closures Report | 04/11/2013 | 2 | 3 | 18353087 | View |
| 10167910 | Incompleteness Notice (Claim ID 179170) | 05/14/2013 | 1 | | 18572150 | View |

### Claimant Activity

| Status | Event Date | Response Deadline | Notice | Events/Notices |
|---|---|---|---|---|
| Claimant Review Steps | 02/26/2013 | | | Events / Notices |

### Claim Activity

| Claim ID | Claim Type | Details | Status | Status Date | Response Deadline | Notice | Events/Notices | Current/Last Review |
|---|---|---|---|---|---|---|---|---|
| 19690 | Seafood Compensation Program | Shrimp Boss Hoss | Payment Received | 2/28/2013 12:00:00 AM | | | Events / Notices | View |
| 19691 | Seafood Compensation Program | Shrimp | Payment Received | 5/7/2013 12:00:00 AM | | | Events / Notices | View |
| 20741 | VoO Charter Payment | | Payment Received | 10/10/2012 12:00:00 AM | | | Events / Notices | View |
| 97550 | Subsistence | | In Claims Review | 4/11/2013 11:29:45 AM | | | Events / Notices | View |
| 179170 | Vessel Physical Damage | | Notice Issued After Claims Review: Claim Incomplete | 5/13/2013 5:51:01 PM | 6/12/2013 12:00:00 AM | | Events / Notices | View |

SM-02-JA00977

SM-02-JA00978

Commercial - Search                                                                 Page 1 of 1

| Buy Certificates and Certified Copies | Print Reinstatement/Annual Report for Filing | Subscribe to Electronic Notification | Print Detailed Record |

| Name | Type | City | Status |
|------|------|------|--------|
| MONSTER DEMOLITION, L.L.C. | Limited Liability Company | NEW ORLEANS | Inactive |

**Previous Names**

| | |
|---|---|
| Business: | MONSTER DEMOLITION, L.L.C. |
| Charter Number: | 36019972K |
| Registration Date: | 9/23/2005 |

**Domicile Address**

610 BARONNE STREET
NEW ORLEANS, LA 70113

**Mailing Address**

C/O LIONEL H. SUTTON, III
610 BARONNE STREET
NEW ORLEANS, LA 70113

**Status**

| | |
|---|---|
| Status: | Inactive |
| Inactive Reason: | Action by Secretary of State |
| File Date: | 9/23/2005 |
| Last Report Filed: | N/A |
| Type: | Limited Liability Company |

**Registered Agent(s)**

| | |
|---|---|
| Agent: | LIONEL H. SUTTON, III |
| Address 1: | 610 BARONNE STREET |
| City, State, Zip: | NEW ORLEANS, LA 70113 |
| Appointment Date: | 9/23/2005 |

**Officer(s)**                                                      Additional Officers: Yes

| | |
|---|---|
| Officer: | LIONEL H. SUTTON III |
| Title: | Member |
| Address 1: | 610 BARONNE STREET |
| City, State, Zip: | NEW ORLEANS, LA 70113 |

| | |
|---|---|
| Officer: | CEDRIC PATIN |
| Title: | Member |
| Address 1: | 610 BARONNE STREET |
| City, State, Zip: | NEW ORLEANS, LA 70113 |

| | |
|---|---|
| Officer: | JONATHAN B. ANDRY |
| Title: | Member |
| Address 1: | 610 BARONNE STREET |
| City, State, Zip: | NEW ORLEANS, LA 70113 |

**Amendments on File (1)**

| Description | Date |
|-------------|------|
| Revoked | 11/21/2009 |

| Back to Search Results | New Search | View Shopping Cart |



SM-02-JA00979

SM-02-JA00980

Commercial – Search                                                      Page 1 of 2

**Tom Schedler**
Secretary of State

State of Louisiana
Secretary of State



**COMMERCIAL DIVISION**
**225.925.4704**

Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

| Name | Type | City | Status |
|------|------|------|--------|
| CROWN, LLC | Limited Liability Company | NEW ORLEANS | Active |

**Business:**            CROWN, LLC
**Charter Number:**      40182208K
**Registration Date:**   4/16/2010
**State Of Origin:**
**Domicile Address**
            935 GRAVIER STREET
            STE. 600
            NEW ORLEANS, LA 70112
**Mailing Address**
            C/O LIONEL SUTTON III
            935 GRAVIER STREET, STE. 600
            NEW ORLEANS, LA 70112

## Status

**Status:**                 **Active**
**Annual Report Status:**   **Not In Good Standing for failure to file Annual Report**
**File Date:**              4/16/2010
**Last Report Filed:**      3/23/2012
**Type:**                   Limited Liability Company

## Registered Agent(s)

| Agent: | LIONEL SUTTON, III |
|--------|--------------------|
| Address 1: | 935 GRAVIER STREET |
| Address 2: | STE. 600 |
| City, State, Zip: | NEW ORLEANS, LA 70112 |
| Appointment Date: | 4/16/2010 |

## Officer(s)                                            Additional Officers: No

| Officer: | LIONEL SUTTON, III |
|----------|--------------------|
| Title: | Manager |
| Address 1: | 935 GRAVIER STREET |
| Address 2: | STE. 600 |
| City, State, Zip: | NEW ORLEANS, LA 70112 |

| Officer: | JOEY DARTEZ |
|----------|-------------|
| Title: | Member |
| Address 1: | 118 N. RICHELIEU CIRCLE |
| City, State, Zip: | NEW IBERIA, LA 70560 |

| Officer: | TIM ELMHURST |
|----------|--------------|

EXHIBIT
R-11

TAB 10

SM-02-JA00981

| Title: | Member |
|--------|--------|
| Address 1: | 2704 BRISTOL ROAD |
| City, State, Zip: | COLUMBUS, OH 43221 |
| Officer: | GLEN LERNER |
| Title: | Member |
| Address 1: | 7801 CALLE CABELLEROS |
| City, State, Zip: | PARADISE VALLEY, AZ 85253 |

## Amendments on File

**No Amendments on file**

Print

**SM-02-JA00982**

SM-02-JA00983

Commercial - Search                                                    Page 2 of 2

Revoked                                          8/18/2009

Print

**SM-02-JA00985**

Commercial – Search                                                    Page 1 of 2

Tom Schedler                     State of Louisiana                 **COMMERCIAL DIVISION**
Secretary of State               Secretary of State                     **225.925.4704**



                                                                   Fax Numbers
                                                                   225.932.5317 (Admin. Services)
                                                                   225.932.5314 (Corporations)
                                                                   225.932.5318 (UCC)

| Name | Type | City | Status |
|---|---|---|---|
| CAN U HEAR ME NOW, L.L.C. | Limited Liability Company | NEW ORLEANS | Inactive |

**Business:**            CAN U HEAR ME NOW, L.L.C.
**Charter Number:**      35268395K
**Registration Date:**   5/13/2002
**State Of Origin:**
**Domicile Address**
                         610 BARONNE STREET
                         NEW ORLEANS, LA 70113
**Mailing Address**
                         C/O LIONEL H. SUTTON, III
                         610 BARONNE STREET
                         NEW ORLEANS, LA 70113

## Status

**Status:**              **Inactive**
**Inactive Reason:**     **Action by Secretary of State**
**File Date:**           5/13/2002
**Last Report Filed:**   N/A
**Type:**                Limited Liability Company

## Registered Agent(s)

| Agent: | LIONEL H. SUTTON, III |
|---|---|
| Address 1: | 610 BARONNE STREET |
| City, State, Zip: | NEW ORLEANS, LA 70113 |
| Appointment Date: | 5/13/2002 |

## Officer(s)

Additional Officers: Yes

| Officer: | LIONEL H. SUTTON, III |
|---|---|
| Title: | Member |
| Address 1: | 610 BARONNE STREET |
| City, State, Zip: | NEW ORLEANS, LA 70113 |

| Officer: | MARK CORCORAN |
|---|---|
| Title: | Member |
| Address 1: | 58 ZINNIA DR. |
| City, State, Zip: | COVINGTON, LA 70433 |

| Officer: | CHARLES LABORDE JR. |
|---|---|
| Title: | Member |
| Address 1: | 38 MURFIELD DR. |
| City, State, Zip: | LAPLACE, LA 70068 |

**SM-02-JA00986**

## Amendments on File (1)

| Description | Date |
|---|---|
| Revoked | 8/15/2006 |

Print

SM-02-JA00987

<table>
<tr><td><b>Tom Schedler</b><br><b>Secretary of State</b></td><td><b>State of Louisiana</b><br><b>Secretary of State</b></td><td><b><u>COMMERCIAL DIVISION</u></b><br><b>225.925.4704</b></td></tr>
</table>



<u>Fax Numbers</u>
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

| Name | Type | City | Status |
|------|------|------|--------|
| NAVAJO PARTNERS, L.L.C. | Limited Liability Company | LAFAYETTE | Inactive |

**Business:** NAVAJO PARTNERS, L.L.C.
**Charter Number:** 35458472K
**Registration Date:** 4/3/2003
**State Of Origin:**
**Domicile Address**
    111 PINE PARK
    LAFAYETTE, LA 70508
**Mailing Address**
    P.O. BOX 82097
    LAFAYETTE, LA 70598-2097

## Status

| | |
|---|---|
| **Status:** | **Inactive** |
| **Inactive Reason:** | **Voluntary Action** |
| **File Date:** | 4/3/2003 |
| **Last Report Filed:** | 3/9/2004 |
| **Type:** | Limited Liability Company |

## Registered Agent(s)

| Agent: | LIONEL H. SUTTON, III |
|---|---|
| Address 1: | 610 BARONNE STREET |
| City, State, Zip: | NEW ORLEANS, LA 70113 |
| Appointment Date: | 4/3/2003 |

## Officer(s)                                               Additional Officers: No

| Officer: | LIONEL H. SUTTON, III |
|---|---|
| Title: | Member |
| Address 1: | 610 BARONNE STREET |
| City, State, Zip: | NEW ORLEANS, LA 70113 |

| Officer: | JOHNNY T. WALKER |
|---|---|
| Title: | Member |
| Address 1: | 205 E LONG PLANTATION |
| City, State, Zip: | LAFAYETTE, LA 70508 |

## Amendments on File (1)

| Description | Date |
|---|---|
| Affidavit to Dissolve | 2/11/2005 |

**SM-02-JA00988**

Print

SM-02-JA00989

Commercial - Search                                                    Page 1 of 1

| | | | |
|---|---|---|---|
| **Tom Schedler**<br>Secretary of State | **State of Louisiana**<br>Secretary of State | **COMMERCIAL DIVISION**<br>225.925.4704 | |



Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

| **Name** | **Type** | **City** | **Status** |
|---|---|---|---|
| FULL DIMENSION TRADING CO., LLC | Limited Liability Company | NEW IBERIA | Inactive |

**Business:** FULL DIMENSION TRADING CO., LLC
**Charter Number:** 36462897K
**Registration Date:** 6/1/2007
**State Of Origin:**
**Domicile Address**
   110 EAST PERSHING STREET
   NEW IBERIA, LA 70560
**Mailing Address**
   110 EAST PERSHING STREET
   NEW IBERIA, LA 70560

## Status

**Status:** Inactive
**Inactive Reason:** Action by Secretary of State
**File Date:** 6/1/2007
**Last Report Filed:** N/A
**Type:** Limited Liability Company

## Registered Agent(s)

| | |
|---|---|
| **Agent:** | LIONEL H. SUTTON, III |
| **Address 1:** | 610 BARONNE STREET |
| **City, State, Zip:** | NEW ORLEANS, LA 70113 |
| **Appointment Date:** | 6/1/2007 |

## Officer(s)                                            Additional Officers: No

| | |
|---|---|
| **Officer:** | LIONEL H. SUTTON, III |
| **Title:** | Member |
| **Address 1:** | 610 BARONNE STREET |
| **City, State, Zip:** | NEW ORLEANS, LA 70113 |

## Amendments on File (1)

| Description | Date |
|---|---|
| Revoked | 8/15/2010 |

Print

SM-02-JA00990

| Tom Schedler<br>Secretary of State | State of Louisiana<br>Secretary of State | COMMERCIAL DIVISION<br>225.925.4704 |
|---|---|---|
| |  | Fax Numbers<br>225.932.5317 (Admin. Services)<br>225.932.5314 (Corporations)<br>225.932.5318 (UCC) |

| Name | Type | City | Status |
|---|---|---|---|
| 4-K PARTNERS, L.L.C. | Limited Liability Company | NEW IBERIA | Inactive |

| | |
|---|---|
| **Business:** | 4-K PARTNERS, L.L.C. |
| **Charter Number:** | 36463276K |
| **Registration Date:** | 6/1/2007 |
| **State Of Origin:** | |
| **Domicile Address** | |
| | 110 E. PESHING STREET |
| | NEW IBERIA, LA 70560 |
| **Mailing Address** | |
| | 110 E. PESHING STREET |
| | NEW IBERIA, LA 70560 |

## Status

| | |
|---|---|
| **Status:** | Inactive |
| **Inactive Reason:** | Action by Secretary of State |
| **File Date:** | 6/1/2007 |
| **Last Report Filed:** | 5/6/2008 |
| **Type:** | Limited Liability Company |

## Registered Agent(s)

| | |
|---|---|
| **Agent:** | LIONEL H. SUTTON, III |
| **Address 1:** | 610 BARONNE STREET |
| **City, State, Zip:** | NEW ORLEANS, LA 70113 |
| **Appointment Date:** | 6/1/2007 |

## Officer(s)                                                              Additional Officers: No

| | |
|---|---|
| **Officer:** | LIONEL H. SUTTON, III |
| **Title:** | Member |
| **Address 1:** | 6037 LAUREL STREET |
| **City, State, Zip:** | NEW ORLEANS, LA 70115 |

| | |
|---|---|
| **Officer:** | MICHAEL D. SUTTON |
| **Title:** | Member |
| **Address 1:** | 613 TERRELL COURT |
| **City, State, Zip:** | NEW IBERIA, LA 70560 |

## Amendments on File (1)

| Description | Date |
|---|---|
| Revoked | 8/19/2011 |

**SM-02-JA00991**

Commercial - Search                                             Page 2 of 2

Print

SM-02-JA00992

Commercial - Search                                                  Page 1 of 1

| Tom Schedler | State of Louisiana | COMMERCIAL DIVISION |
| Secretary of State | Secretary of State | 225.925.4704 |



Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

| Name | Type | City | Status |
|------|------|------|--------|
| SUTTON AND REITANO, (A PROFESSIONAL LAW CORPORATION) | Business Corporation | NEW ORLEANS | Inactive |

**Business:** SUTTON AND REITANO, (A PROFESSIONAL LAW CORPORATION)
**Charter Number:** 36675489D
**Registration Date:** 2/25/2008
**State Of Origin:**
**Domicile Address**
610 BARONNE STREET
NEW ORLEANS, LA 70113
**Mailing Address**
C/O LIONEL H. SUTTON, III
610 BARONNE STREET
NEW ORLEANS, LA 70113

## Status

| Status: | Inactive |
|---------|----------|
| Inactive Reason: | Voluntary Action |
| File Date: | 2/25/2008 |
| Last Report Filed: | 2/11/2010 |
| Type: | Business Corporation |

## Registered Agent(s)

| Agent: | LIONEL H. SUTTON, III |
|--------|------------------------|
| Address 1: | 610 BARONNE STREET |
| City, State, Zip: | NEW ORLEANS, LA 70113 |
| Appointment Date: | 2/25/2008 |

## Officer(s)                                    Additional Officers: No

| Officer: | LIONEL H. SUTTON, III |
|----------|------------------------|
| Title: | Director |
| Address 1: | 610 BARONNE STREET |
| City, State, Zip: | NEW ORLEANS, LA 70113 |

## Amendments on File (1)

| Description | Date |
|-------------|------|
| Affidavit to Dissolve | 3/11/2013 |

Print

Commercial - Search                                                                              Page 1 of 2

**Tom Schedler**
**Secretary of State**

**State of Louisiana**
**Secretary of State**



**COMMERCIAL DIVISION**
**225.925.4704**

Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

| Name | Type | City | Status |
|------|------|------|--------|
| MISS ASHLEY, L.L.C. | Limited Liability Company | NEW ORLEANS | Inactive |

**Business:** MISS ASHLEY, L.L.C.
**Charter Number:** 35086696K
**Registration Date:** 5/10/2001
**State Of Origin:**
**Domicile Address**
    610 BARONNE ST.
    NEW ORLEANS, LA 70113
**Mailing Address**
    C/O LIONEL H. SUTTON, III
    610 BARONNE ST.
    NEW ORLEANS, LA 70113

## Status

**Status:** Inactive
**Inactive Reason:** Voluntary Action
**File Date:** 5/10/2001
**Last Report Filed:** 4/5/2006
**Type:** Limited Liability Company

## Registered Agent(s)

| | |
|---|---|
| **Agent:** | LIONEL H. SUTTON, III |
| **Address 1:** | 610 BARONNE ST. |
| **City, State, Zip:** | NEW ORLEANS, LA 70113 |
| **Appointment Date:** | 5/10/2001 |

## Officer(s)                                                    Additional Officers: No

| | |
|---|---|
| **Officer:** | T-BLUE, L.L.C. |
| **Title:** | Member |
| **Address 1:** | 5494 SHORELINE DR. |
| **City, State, Zip:** | NEW IBERIA, LA 70560 |

| | |
|---|---|
| **Officer:** | MARTIN LELAND BELDEN |
| **Title:** | Member |
| **Address 1:** | 19532 HWY. 182 |
| **City, State, Zip:** | JEANERETTE, LA 70544 |

## Amendments on File (1)

| Description | Date |
|-------------|------|
|  |  |

**SM-02-JA00994**

Commercial - Search                                                                 Page 2 of 2

Affidavit to Dissolve                                     12/13/2006

| Print |

SM-02-JA00995



| | | | |
|---|---|---|---|
| **Tom Schedler**<br>**Secretary of State** | **State of Louisiana**<br>**Secretary of State** | **COMMERCIAL DIVISION**<br>**225.925.4704**<br><br>Fax Numbers<br>225.932.5317 (Admin. Services)<br>225.932.5314 (Corporations)<br>225.932.5318 (UCC) | |

| **Name** | **Type** | **City** | **Status** |
|---|---|---|---|
| T-BLUE, L.L.C. | Limited Liability Company | NEW ORLEANS | Active |

**Business:** T-BLUE, L.L.C.
**Charter Number:** 35125163K
**Registration Date:** 8/8/2001
**State Of Origin:**
**Domicile Address**
  610 BARONNE ST
  NEW ORLEANS, LA 70113
**Mailing Address**
  C/O LIONEL H. SUTTON, III
  610 BARONNE ST
  NEW ORLEANS, LA 70113

## Status

**Status:** Active
**Annual Report Status:** Not In Good Standing for failure to file Annual Report
**File Date:** 8/8/2001
**Last Report Filed:** 9/23/2010
**Type:** Limited Liability Company

## Registered Agent(s)

| | |
|---|---|
| **Agent:** | LIONEL H. SUTTON, III |
| **Address 1:** | 610 BARONNE ST |
| **City, State, Zip:** | NEW ORLEANS, LA 70113 |
| **Appointment Date:** | 9/23/2010 |

## Officer(s)
Additional Officers: No

| | |
|---|---|
| **Officer:** | LIONEL H. SUTTON, III |
| **Title:** | Manager, Member |
| **Address 1:** | 610 BARONNE ST |
| **City, State, Zip:** | NEW ORLEANS, LA 70113 |

## Amendments on File
No Amendments on file

Print

**SM-02-JA00996**

Commercial - Search                                                    Page 1 of 2

| | | | |
|---|---|---|---|
| **Tom Schedler**<br>Secretary of State | **State of Louisiana**<br>Secretary of State | **COMMERCIAL DIVISION**<br>225.925.4704 | |



Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

| Name | Type | City | Status |
|---|---|---|---|
| SECRETARIAT, L.L.C. | Limited Liability Company | NEW IBERIA | Inactive |

| | |
|---|---|
| **Business:** | SECRETARIAT, L.L.C. |
| **Charter Number:** | 36310694K |
| **Registration Date:** | 11/14/2006 |
| **State Of Origin:** | |
| **Domicile Address** | |
| | 5494 SHORELINE DRIVE |
| | NEW IBERIA, LA 70560 |
| **Mailing Address** | |
| | 5494 SHORELINE DRIVE |
| | NEW IBERIA, LA 70560 |

## Status

| | |
|---|---|
| **Status:** | **Inactive** |
| **Inactive Reason:** | **Voluntary Action** |
| **File Date:** | 11/14/2006 |
| **Last Report Filed:** | 10/25/2007 |
| **Type:** | Limited Liability Company |

## Registered Agent(s)

| | |
|---|---|
| Agent: | LIONEL H. SUTTON, III |
| Address 1: | 610 BARONNE STREET |
| City, State, Zip: | NEW ORLEANS, LA 70113 |
| Appointment Date: | 11/14/2006 |

## Officer(s)

Additional Officers: No

| | |
|---|---|
| Officer: | T-BLUE, L.L.C. |
| Title: | Member |
| Address 1: | 5494 SHORELINE DRIVE |
| City, State, Zip: | NEW IBERIA, LA 70560 |

| | |
|---|---|
| Officer: | ROBERT PEREZ |
| Title: | Member |
| Address 1: | 313 SAFETY ROAD |
| City, State, Zip: | HOUMA, LA 70363 |

## Amendments on File (1)

| Description | Date |
|---|---|
| Affidavit to Dissolve | 12/29/2008 |

http://coraweb.sos.la.gov/commercialsearch/CommercialSearchDetails_Print.aspx?Charter...   6/10/2013

**SM-02-JA00997**

Print

SM-02-JA00998

Commercial - Search

Page 1 of 2

| Tom Schedler<br>Secretary of State | State of Louisiana<br>Secretary of State | COMMERCIAL DIVISION<br>225.925.4704 |
|---|---|---|



Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

| Name | Type | City | Status |
|---|---|---|---|
| TAMPA SEAHORSE, L.L.C. | Limited Liability Company | NEW IBERIA | Inactive |

**Business:** TAMPA SEAHORSE, L.L.C.
**Charter Number:** 35890965K
**Registration Date:** 3/4/2005
**State Of Origin:**
**Domicile Address**
   5494 SHORELINE DRIVE
   NEW IBERIA, LA 70560
**Mailing Address**
   5494 SHORELINE DRIVE
   NEW IBERIA, LA 70560

## Status

| Status: | Inactive |
|---|---|
| Inactive Reason: | Voluntary Action |
| File Date: | 3/4/2005 |
| Last Report Filed: | 3/10/2008 |
| Type: | Limited Liability Company |

## Registered Agent(s)

| Agent: | LIONEL H. SUTTON, III |
|---|---|
| Address 1: | 610 BARONNE STREET |
| City, State, Zip: | NEW ORLEANS, LA 70113 |
| Appointment Date: | 3/4/2005 |

## Officer(s)

Additional Officers: No

| Officer: | ROBERT PEREZ |
|---|---|
| Title: | Member |
| Address 1: | 313 SAFETY ROAD |
| City, State, Zip: | HOUMA, LA 70363 |

| Officer: | T-BLUE, L.L.C. |
|---|---|
| Title: | Member |
| Address 1: | 5494 SHORELINE DR. |
| City, State, Zip: | NEW IBERIA, LA 70560 |

## Amendments on File (2)

| Description | Date |
|---|---|
| Supplemental Initial Report | 11/14/2006 |

http://coraweb.sos.la.gov/commercialsearch/CommercialSearchDetails_Print.aspx?Charter...   6/10/2013

**SM-02-JA00999**

Commercial - Search                                                  Page 2 of 2

| Affidavit to Dissolve | 12/29/2008 |
|---|---|

Print

SM-02-JA01000

SM-02-JA01001

*13*

March 30, 2012

Casey Thonn
3836 Kent Street
Slidell, LA 70458

     RE:   *GCCF Claim No.: 1060469*

Dear Casey:

Please allow this letter to confirm that we will no longer be representing you regarding your GCCF Claim.

My new position as Counsel to the Special Master in the Court Supervised Claims Program for the BP Settlement Fund prevents me from representing any claims or interests made upon the fund.

I wish you the best of luck in the pursuit of your claim and a happy and prosperous future.

With kindest personal regards, I remain

Sincerely,

**SUTTON & REITANO**


Christine Reitano



**SM-02-JA01002**

SM-02-JA01003

*14*

**CHRISTINE REITANO**
ATTORNEY AT LAW
935 Gravier Street, Ste. 500
New Orleans, LA 70112

## RETAINER AGREEMENT

I, the undersigned, do hereby employ and retain CHRISTINE REITANO, Attorney at Law, to render legal services on behalf of _____ Casey Thonn _____ against any person, firm or corporation liable in damages for personal injuries and/or for any other claim or claims of any kind whatsoever sustained by _ Casey Thonn _ on or about the _28th_ day of _ April _____ 2010, as a result of _the BP Oil Spill._

In addition to furnishing said legal services, said Attorney agrees to advance all costs and expenses necessary to prosecute said claim (other than a bond for appeal or payment of assessed court costs) through the initial appellate stage if the parties both agree that said appeal is warranted.

In addition to furnishing said legal services and advancing the aforesaid costs and expenses, said Attorney shall have the right to retain the services of any experts, including but not limited to medical doctors, investigators, court reporters, and others whose services said Attorney deems necessary to prosecute said claim to a proper conclusion, and the cost thereof shall be recoverable by said Attorney in addition to any fee or fees that said Attorney shall become entitled to hereunder.

In consideration of said Attorney performing said legal services and advancing the necessary costs and expenses required to prosecute said claim to a proper conclusion, I do hereby agree to pay said Attorney 20% of any sums recovered in settlement if the matter is settled at any time prior to the filing of suit; 40% of any sums recovered in settlement made, judgment rendered or verdict obtained after the filing of suit; and 40% of any sums recovered in settlement made, judgment rendered or verdict obtained in the event said action is appealed, whether said appeal is perfected or not. Said fee will be calculated on the gross amount recovered, prior to the deduction of any costs, advances, expenses, etc.

I hereby agree that said Attorney shall receive and recover in addition to any fee earned by said Attorney hereunder, the amount of all costs, disbursements (including advances), and expenses made and incurred by said Attorney in prosecuting my case.

I hereby agree with said Attorney not to make any settlement unless he is present and receives his share in accordance with this agreement, and it is further agreed that the claim shall not be compromised or settled without the consent of all parties, and in no event without the written consent of said Attorney.

I further hereby agree with said Attorney not to discontinue or dismiss any suit filed on my behalf by said Attorney, nor discontinue or dismiss any appeal, application for writs, or any other proceedings, legal or quasi-legal, of any type whatsoever arising out of the subject matter of this contract without the written consent of said Attorney.

I do hereby bind my heirs, executors and legal representatives to the terms and conditions set forth herein.

**I HAVE READ AND FULLY UNDERSTAND THE ABOVE CONTRACT.**

Dated at Slidell, Louisiana this _16_ day of March, 2011.

Client (signature): _____

Client (print): _Casey Thonn_

Telephone: _(985) 788-0032_

Address: _@ 332 James St_

SS #: _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_

D.O.B.: _9-10-78_

Children
_Baba Thonn_
_Blake Thonn_

CHRISTINE REITANO, ESQ
610 Baronne Street
New Orleans, LA 70113
Telephone: (504) 252-5230

BY: _Christe Reitano_



EXHIBIT R-14

**SM-02-JA01004**

SM-02-JA01005



15

# SUTTON & REITANO

935 Gravier Street, Suite 1910, New Orleans, LA 70112
Telephone (504) 592-3230   Facsimile (504) 585-1789
Toll Free 1-888-480-5560



Lionel H. Sutton, III +
Christine Reitano *

+ Also Admitted in Texas
* Also Admitted in New York

March 30, 2012

Tim Gonzales
1941 Francis Carrol Dr.
St. Bernard, LA 70085

        RE:    *GCCF Claim No.: 1125455*

Dear Tim:

Please allow this letter to confirm that we will no longer be representing you regarding your GCCF Claim.

My new position as Counsel to the Special Master in the Court Supervised Claims Program for the BP Settlement Fund prevents me from representing any claims or interests made upon the fund.

I wish you the best of luck in the pursuit of your claim and a happy and prosperous future.

With kindest personal regards, I remain

Sincerely,

SUTTON & REITANO

Christine Reitano

EXHIBIT
R-15

SM-02-JA01006

SM-02-JA01007

CONFIDENTIAL/ATTORNEY-CLIENT PRIVILEGED COMMUNICATION/ATTORNEY WORK PRODUCT
FOR SOLE USE OF THE EASTERN DISTRICT COURT OF LOUISIANA *IN RE: OIL SPILL BY THE OIL RIG*
*"DEEPWATER HORIZON" IN THE GULF OF MEXICO ON APRIL 20, 2010,* 10-MD-2179 ("MDL-2179")

Deepwater Horizon Court Supervised Settlement Program ("CSSP")
Special Master – Independent External Investigation
Interview Report of Freeh Group

Interviewee: Gibby Andry
Title:    Owner
Office:  Andry Law Firm LLC and Gibby Andry, Andry Law Firm, LLC
Date/Time: August 1, 2013 9:00 am
Attendees: Gibby Andry, Kyle Schonekas, Attorney; Billy Gibbons
Location: 935 Gravitas St. New Orleans

These notes are prepared as part of an Independent External Investigation for the Eastern District Court of Louisiana *IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO ON APRIL 20, 2010,* 10-MD-2179 ("MDL-2179"). Our role as Special Master is limited to performing an independent external investigation related to ensuring the integrity of the CSSP program for the benefit of the parties and the public and to perform fact finding as to possible ethical violations or other misconduct within the CSSP. We are also examining and evaluating the internal compliance program and anti-corruption controls within the CSSP, and making any necessary recommendations to design and to implement additional such controls, policies, procedures, and practices to ensure the integrity of the CSSP. We do not represent you, Mr. Andry.

On the above date and time Gibby Andry was interviewed with his attorney present. We explained that information provided in this interview would become part of the investigation record and could be reported to the District Court, the Plaintiff Steering Committee, British Petroleum, and potentially to third parties.

Finally, we explained that the meeting should be kept in confidence and not discussed with anyone else (except legal counsel), including other employees or anyone outside of the CSSP. Attorney Schonekas advised that Andry will not discuss this matter with anyone other than counsel.

Gibby Andry was interviewed by Greg Paw and Tim Flynn, and provided the following information:

Mr. Andry attended law school at Tulane University and graduated in 1989. Upon graduation he became an independent contractor for his father, then became a prosecutor and for the last 14 years has been a catastrophic injury attorney. He and his brother, Jonathan Andry, started the Andry Law Firm LLC in approximately 1999-2000 and he started the Gibby Andry, Andry Law Firm, LLC in 2011. The two firms are distinctly different firms with Gibby Andry as the owner of the Gibby Andry Firm without brother, Jonathan. There are no other full time attorneys in the Gibby Andry Law Firm and the staff consists of Penny Riley (phonetic), Kelly LNU (Andry could not remember her last name) and Mandy Rankin. Michael Winsberg is an independent contractor who receives a stipend salary and he has no other people working full time. Andry utilizes independent contractors and other lawyers for 20 to 30 cases. The attorney contractors usually get a percentage of each case.

Mr. Andry stated he has no involvement in the Andry Lerner Law Firm. Mr. Andry did not know about the Andry Lerner Law Firm until he read about it in reference to the BP appeal. Neither Gibby Andry Law Firm nor Gibby Andry represents any BP claimants. Jonathan Andry represented clients relative to BP claims but Gibby Andry did not have anything to do with that portion of the business. Gibby Andry told

1

**SM-02-JA01008**

CONFIDENTIAL/ATTORNEY-CLIENT PRIVILEGED COMMUNICATION/ATTORNEY WORK PRODUCT
FOR SOLE USE OF THE EASTERN DISTRICT COURT OF LOUISIANA *IN RE: OIL SPILL BY THE OIL RIG*
*"DEEPWATER HORIZON" IN THE GULF OF MEXICO ON APRIL 20, 2010*, 10-MD-2179 ("MDL-2179")

Jonathan he did not want anything to do with the BP claims. Mr. Andry stated there is too much money in overhead costs but has no idea how much. Mr. Andry liked his business model and those [BP] cases need a lot of staff to do the claims. Mr. Andry has cases, not claims.

Mr. Andry has known Glenn Lerner since law school at Tulane. Mr. Lerner was in Mr. Andry's brother, Jonathan's class at Tulane. Mr. Andry did not socialize with Mr. Lerner and did not know if he practiced law in Louisiana. Mr. Andry knew that Mr. Lerner is an advertising attorney in Las Vegas, Nevada but was not sure from whom he had heard that. Mr. Andry advertises but he advertises differently. Mr. Andry tells the public that he does certain types of cases and Mr. Lerner is looking more for volume verse the specific areas. Mr. Andry stated he focuses on personal injury claims. Mr. Andry was unaware Jonathan and Mr. Lerner was starting their own firm together until he saw the BP filing between August 2012 and June 2013. Mr. Andry does not have any involvement in the Andry Lerner Law Firm.

Mr. Andry stated he does not know Mary Rubio and had no idea who she is. The Gibby Andry and Andry Law Firms have nothing to do with any BP claims.

Mr. Andry said Lionel Sutton was Jonathan's classmate at Tulane Law School. Mr. Sutton was friends with his brother, Jonathan. Mr. Andry did not know specifically what Mr. Sutton was doing recently but had conducted some business with Mr. Sutton in the early 2000's. They were in a joint business together in the ownership of a building at 610 Baronne Street. Mr. Sutton eventually left the building and forfeited his shares of the building.

Mr. Andry knew Christine Reitano from Tulane Law School and knew Ms. Reitano was married to Mr. Sutton but did not know if they were working together.

Mr. Andry said, "I have never worked on any cases with Mr. Sutton, however, my brother, Jonathan, has worked on a cell phone case together with Mr. Sutton." Mr. Andry did not recall the reason for a disagreement between Jonathan and Mr. Sutton. Mr. Andry related he did not know what Mr. Sutton was doing until he saw him at a high school football game as both had sons on the team. Mr. Sutton told me Mr. Andry that he was working at BP on Moratoria and Mr. Andry did not ask anything further. Mr. Sutton told Mr. Andry he was not involved in the claims process, only in the Moratoria. Mr. Andry also heard Ms. Reitano was at the claims center but he was not sure where he heard that information.

Mr. Andry was sure there were times between when the claims were filed and the time BP rejected the claim. Mr. Andry called Mr. Sutton repeatedly about the status of a claim. Mr. Sutton would say the claim was "under review, in accounting, in review" or something else, whatever the status was at the time. Over a period of 9 to 10 months, Mr. Andry called Mr. Sutton more than a few times. Mr. Andry knew Mr. Sutton was working at the claims center. Mr. Andry did not know Ms. Reitano well enough to call her. At no time was Mr. Andry trying to expedite or influence anything other than check the status of the claim.

Mr. Andry did not use email or computers so he would only telephone Mr. Sutton if he inquired about the status of the claim. Mr. Andry did not ask his secretary to call to check on the claim.

Mr. Andry knows Pat Juneau as he was the Special Master of previous cases where Mr. Andry did mass torts. Mr. Andry never asked Mr. Juneau about his claim. The only correspondence was a letter sent to Mr. Juneau after the initial claim was appealed.

SM-02-JA01009

CONFIDENTIAL/ATTORNEY-CLIENT PRIVILEGED COMMUNICATION/ATTORNEY WORK PRODUCT
FOR SOLE USE OF THE EASTERN DISTRICT COURT OF LOUISIANA *IN RE: OIL SPILL BY THE OIL RIG
"DEEPWATER HORIZON" IN THE GULF OF MEXICO ON APRIL 20, 2010,* 10-MD-2179 ("MDL-2179")

Mr. Andry does not know Casey Thonn.

Mr. Andry does not know David Duval and only had correspondence by letter when he was informed Mr. Duval was handling the appeal process.

Mr. Andry does not know anyone at BrownGreer or PricewaterhouseCoopers (PwC).

Mr. Andry was not familiar with Crown LLC or Romeo Papa.  Mr. Andry knew Robert Perez as he was from the same Parrish but does not know what he does.


*The notes are not intended as a verbatim transcription of the meeting, but rather as a summary of major matters discussed.  Quotes reflect an effort to capture exact words or phrases used during the meeting but are not intended as a verbatim transcription.  These notes also contain mental impressions and observations and relay how the discussion during the meeting may impact other open legal issues for the Special Master Investigative Team.  These notes also may be shared with the members of the Special Master Investigative Team to aid in execution of their functions and responsibilities, and as such are a communication between legal counsel and client.  These notes are privileged as both an attorney-client communication and as attorney work product.

SM-02-JA01010