UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL BY THE OIL RIG      MDL 2179
"DEEPWATER HORIZON" IN THE      SECTION: "J"
GULF OF MEXICO, ON APRIL 20, 2010      JUDGE BARBIER
     MAG. JUDGE SHUSHAN

This Document Applies to:

No. 12-970, Bon Secour Fisheries, Inc., et al.
v. BP Exploration & Production Inc., et al.

## DECLARATION OF SUSAN DESANTIS

     I, Susan DeSantis, hereby attest that the following is true and correct to the best of my

recollection:

     1.      I have been employed by Glen J. Lerner since May 2012. I have a Master's

Degree in Finance from Bryant College. I am Six Sigma Black Belt certified from Villanova

University, which means that I am trained to have expertise in process improvement strategies

and implementation.

     2.      When I began working for Mr. Lerner, my responsibilities included process

development and implementation for two of Mr. Lerner's interests, Crown, LLC ("Crown") and

AndryLerner, LLC ("AndryLerner"), both located in New Orleans, Louisiana. When in

New Orleans, I worked primarily out of the AndryLerner offices. The majority of my time was

devoted to providing process administration and support for AndryLerner's representation of

clients before the Deepwater Horizon Economic Claims Center ("DHECC"). My work included

reviewing AndryLerner's processes and staffing to ensure the appropriate personnel were in

place and establishing procedures to effectively process claims. Sometime during fall 2012,



EXHIBIT
94

Error! Unknown document property name.

1

when Leslie Tate resigned as Process Manager, I assumed some of Ms. Tate's duties and responsibilities with respect to BP-related matters.

3.     I also was responsible for overseeing Mr. Lerner's financial interest in AndryLerner. In that capacity, I monitored when DHECC payments for client claims came into the AndryLerner office, and I would ensure that Mr. Lerner was apportioned his pertinent share of attorneys' fees, per the AndryLerner operating agreement. During this time, my primary mode of communication with Mr. Lerner was e-mail or telephone.

4.     As a result of my work with Crown, I came in contact with Lionel "Tiger" Sutton. I learned that Mr. Sutton and Mr. Lerner attended law school together and that Mr. Sutton had a law practice while he worked at Crown.

5.     I first heard of Casey Thonn during late summer or early fall 2012. I understood that Mr. Sutton had referred Mr. Thonn as a client to AndryLerner. In or about December 2012 or January 2013, after the first check for Mr. Thonn's claim came into AndryLerner, I recall a discussion ensued within AndryLener about the payment of a referral fee to Mr. Sutton. Mr. Sutton inquired about Mr. Thonn's claim and his fee. My understanding at the time was that, because Mr. Sutton had referred Mr. Thonn to AndryLerner, Mr. Sutton expected to receive a referral fee.

6.     I then recall hearing from (seeing email exchanges is probably more accurate) Mr. Andry about the referral fee payment to Mr. Sutton. Mr. Andry was adamant that he would not allow AndryLerner to issue a referral fee payment to Mr. Sutton. At this time, I was not aware that Mr. Sutton had commenced work with the claims facility.

7.     Following the conversation with Mr. Andry, I recall asking Kay Perkins, AndryLerner's office manager, to issue an AndryLerner check for half (50%) of the attorneys'

Error! Unknown document property name.

fee to Glen Lerner & Associates (Mr. Lerner's law firm in Las Vegas, Nevada). I do not specifically recall who authorized payment in this manner but it was not my decision to process the payment in this manner.  In directing 50% of the attorneys' fee be sent to Glen Lerner & Associates, I was not attempting to conceal a referral fee payment to Mr. Sutton.

8.     After the initial conversation regarding the processing of checks received for Mr. Thonn's claims, I do not recall any additional conversations regarding how disbursements for Mr. Thonn's claims should be handled.  Once the disbursement process was set up, any other checks related to Mr. Thonn's claims would have been handled in the same manner.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed: December 2, 2013

SUSAN DESANTIS

NOTARY PUBLIC
MONTGOMERY COUNTY
MY COMMISSION EXP
AUGUST 25

3

Error! Unknown document property name.