

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re: Oil Spill by the Oil Rig            MDL NO. 2179
  "Deepwater Horizon" in the Gulf
  of Mexico, on April 20, 2010            SECTION J


Applies to: *All Cases*            JUDGE BARBIER
            MAGISTRATE JUDGE SHUSHAN

---

**REPORT BY THE CLAIMS ADMINISTRATOR OF THE DEEPWATER HORIZON ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT ON THE STATUS OF CLAIMS REVIEW**

| STATUS REPORT NO. | 17 | DATE | January 21, 2014 |
|---|---|---|---|

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In re:  Oil Spill by the Oil Rig           MDL NO. 2179
       "Deepwater Horizon" in the Gulf
       of Mexico, on April 20, 2012         SECTION J

Applies to: *All Cases*              JUDGE BARBIER
                               MAGISTRATE JUDGE SHUSHAN

<u>**REPORT BY THE CLAIMS ADMINISTRATOR OF THE DEEPWATER HORIZON
ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT ON THE
STATUS OF CLAIMS REVIEW**</u>

<u>**STATUS REPORT NO. 17, DATED JANUARY 21, 2014**</u>

The Claims Administrator of the Deepwater Horizon Economic and Property Settlement

Agreement (Settlement Agreement) submits this Report to inform the Court of the status of the

implementation of the Settlement Agreement as of January 10, 2014.  The Claims Administrator

will provide any other information in addition to this Report as requested by the Court.

I.        STATUS OF THE CLAIMS REVIEW PROCESSES AND CLAIM PAYMENTS

A.  **Claim Submissions.**

1.  **Registration and Claim Forms.**

The Claims Administrator opened the Settlement Program with needed functions staffed

and operating on June 4, 2012, just over 30 days after the Claims Administrator's appointment.

The Claims Administrator's Office (CAO) has received 203,670 Registration Forms and 249,944

Claim Forms since the Program opened, as shown in the Public Statistics for the Deepwater

Horizon Economic and Property Damages Settlement (Public Report) attached as Exhibit A.

Additionally, claimants have begun, but not fully completed and submitted, 12,610 Claim Forms.

The Forms are available online, in hard copy, or at Claimant Assistance Centers located

throughout the Gulf.  Of the total Claim Forms submitted and Claim Forms begun but not fully

completed and submitted, 10% of Claim Forms have been filed or are being filed within the Seafood Program, 17% have been filed or are being filed within the Individual Economic Loss (IEL) framework, and 39% have been filed or are being filed within the Business Economic Loss (BEL) framework (including Start-Up and Failed BEL Claims).  *See* Ex. A, Table 2.  Deepwater Horizon (DWH) staff at the Claimant Assistance Centers assisted in starting and/or completing 36,021 of these Claim Forms.  *See* Ex. A, Table 3.  The thirteen Claimant Assistance Centers also provide other forms, including Personal Representative Forms, Subsistence Interview Forms, and Sworn Written Statements and Authorizations.

**2.  Minors, Incompetents, and Deceased Claimants.**

The table below describes the claims filed on behalf of minors, incompetents, and deceased claimants in the Settlement Program.

| Table 1.  Minors, Incompetents, and Deceased Claimants. | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | Minor Claimants | | Incompetent Claimants | | Deceased Claimants | |
| | | Total | Change Since Last Report | Total | Change Since Last Report | Total | Change Since Last Report |
| 1. | Claims Filed | 58 | 0 | 90 | +3 | 389 | +45 |
| 2. | Claims Within GADL Review | 1 | 0 | 2 | +1 | N/A | N/A |
| 3. | Eligible for Payment | 10 | 0 | 50 | +2 | 175 | +6 |
| 4. | Approval Orders Filed | 8 | 0 | 46 | +3 | 151 | +9 |

**3.  Third Party Claims.**

The CAO receives, processes, and pays the claims and/or liens asserted by attorneys, creditors, governmental agencies, or other third parties against the payments to be made by the CAO to eligible claimants under the Settlement Agreement (Third Party Claims) in accordance with Court Approved Procedure Order No. 1 (as entered September 9, 2012, and amended March 11, 2013).

The CAO requires a third party claimant to submit enforcement documentation soon after the initial Third Party Claim assertion, and the CAO notifies the claimant of an Enforced Third Party Claim against a potential Settlement Payment as soon as the CAO receives sufficient documentation of such an assertion, regardless of where the underlying Settlement Program Claim is in the review process.  The claimant may, but is not required to, object to the Third Party Claim at this time.  After the CAO sends an Eligibility Notice to the affected Settlement Program Claimant against whom an Enforced Lien has been asserted (meaning that both the underlying claim and the Third Party Claim are payable), the CAO sends the claimant/claimant's attorney and the third party claimant a Notice of Valid Third Party Claim, and the claimant has twenty (20) days to notify the CAO of any objection to the Third Party Claim.

The CAO continues to process and pay Third Party Claims as reflected in Table 2 below.

| Table 2.  Third Party Claims. | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Type of Third Party Claim ("TPC") | TPCs Asserted | TPCs Asserted Against Claimants With a DHCC ID | TPCs[1] Asserted Against Payable Claims | Valid TPCs Asserted Against Payable Claims | TPCs Paid/ Ready for Payment (TPClmt) | Claims with TPCs Paid/ Ready for Payment (Clmt) |
| 1. | Attorney's Fees | 2,040 | 1,844 | 406 | 239 | 209 | 527 |
| 2. | IRS Levies | 607 | 566 | 58 | 58 | 49 | 82 |
| 3. | Individual Domestic Support Obligations | 418 | 279 | 102 | 84 | 73 | 96 |
| 4. | Blanket State-Asserted Multiple Domestic Support Obligations | 4 states | N/A | N/A | N/A | 0 | 0 |
| 5. | 3rd Party Lien/Writ of Garnishment | 803 | 473 | 21 | 14 | 7 | 7 |

---

[1] Although the CAO will not know whether a Valid TPC is asserted against a payable claim until the Eligibility Notice is issued, the streamlined enforcement requirements allow the CAO to assess validity earlier in the process.

| | Type of Third Party Claim ("TPC") | TPCs Asserted | TPCs Asserted Against Claimants With a DHCC ID | TPCs[1] Asserted Against Payable Claims | Valid TPCs Asserted Against Payable Claims | TPCs Paid/ Ready for Payment (TPClmt) | Claims with TPCs Paid/ Ready for Payment (Clmt) |
|---|---|---|---|---|---|---|---|
| | **Table 2.  Third Party Claims.** | | | | | | |
| 6. | **Claims Preparation/ Accounting** | 4,015 | 3,823 | 42 | 21 | 22 | 31 |
| 7. | **TOTAL** | **7,883** | **6,985** | **629** | **416** | **360** | **743**[2] |

Any disputes over Third Party Claims must be resolved by agreement of the parties or through a dispute resolution process.  The CAO sends a Notice of Third Party Claim Dispute to all parties involved in a disputed Valid Third Party Claim.  If the claimant and third party claimant are unable to resolve their dispute by agreement and if the dispute is over a Third Party Claim for attorney's fees or fees associated with work performed in connection with a Settlement Program claim, the claimant and third party claimant may participate in the Third Party Claims Dispute Resolution Process and will receive a Request for Third Party Claim Dispute Resolution Form with the Notice of Third Party Claim Dispute.  To date, the CAO has sent approximately 100 Notices of Third Party Claim Dispute to notify parties with eligible disputes that they may submit a Request Form if they are unable to resolve their dispute by agreement.

Table 3 provides additional information about participation in the Third Party Claims Dispute Resolution Process.

---

[2] If the TPC amount is in dispute, the CAO pays the claimant the undisputed portion of the Settlement Payment.  A TPC can also be asserted against one or more Settlement Program Claims.  For these reasons, the total number of Claims with TPCs paid or ready for payment may not be equal to the total of the two preceding columns in Table 2.

| Table 3.  Third Party Claims Dispute Resolution Process. | | | |
|---|---|---|---|
| Request Forms Received for Eligible Disputes | Records Provided to Adjudicator | Disputes Withdrawn | Final Decisions[3] |
| 75 | 51 | 27 | 7 |

To date, the CAO has removed 1,457 lien holds due to parties releasing their claims or resolving disputes.[4]

**B.  Claims Review.**

The CAO completed its first claim reviews and issued its first outcome notices on July 15, 2012, and its first payments on July 31, 2012.  There are many steps involved in reviewing a claim so that it is ready for a notice.

**1.  Identity Verification.**

The Claimant Identity Verification review is the first step in the DWH claims review process.  The Claimant Identity Team has initiated verifications for 177,309 claimants.  Of those, the CAO matched the Taxpayer Identity Number (TIN) and the claimant's name to public records databases and verified identity for 93,834 claimants from the initial query through LexisNexis and/or Dun & Bradstreet.  The CAO reviewed the remaining 83,475 claimants to determine whether claimant identity could be verified after searching for typographical errors and name changes or after reviewing official documentation from the Internal Revenue Service or Social Security Administration.  Of the 83,475 claimants, the CAO was able to verify the identity of 73,827.

---

[3] Several factors impact when a Dispute is ripe for the Adjudicator to issue a Final Decision, including whether the Adjudicator has requested additional documentation or has granted a Telephonic Hearing.
[4] This number may fluctuate because of reassertions of released or disallowed liens.

The table below contains information on the number of claimants that the CAO verified during an initial Identity Verification review and the type and number of TIN Verification Notices issued when the CAO could not verify identity after the initial review.

| | Table 4.  Identity Verification Review Activity. | | | |
|---|---|---|---|---|
| | **Outcome** | **Claimants Reviewed Since Last Report** | **Monthly Percentage** | **Total Claimants Reviewed** | **Total Percentage** |
| 1. | **Verified During Review** | 1,424 | 54.1% | 59,318 | 77.4% |
| 2. | **SSN Notice Issued** | 159 | 6.0% | 2,538 | 3.3% |
| 3. | **ITIN Notice Issued** | 22 | 0.8% | 422 | 0.6% |
| 4. | **EIN Notice Issued** | 1,029 | 39.1% | 14,363 | 18.7% |
| 5. | **Total Reviewed** | **2,634** | **100%** | **76,641** | **100%** |

If the CAO cannot verify a claimant's identity after review, but it appears that additional documentation may allow the CAO to verify a claimant's identity, the CAO issues a Verification Notice.  The Verification Notice types include the SSN Notice, ITIN Notice, and EIN Notice.  The table below contains information on the number of TIN Verification Notices issued, the number of Notices that have been cured after the claimant responded to the Notice, and the average time, in days, it took the claimant to cure the deficiency.

| | Table 5.  Identity Incompleteness Activity. | | | |
|---|---|---|---|---|
| | **Notice Type** | **Notices Issued** | **Number Cured** | **Percentage Cured** | **Days to Cure** |
| 1. | **SSN Notice** | 2,538 | 2,006 | 79.0% | 51 |
| 2. | **ITIN Notice** | 422 | 350 | 82.9% | 30 |
| 3. | **EIN Notice** | 14,363 | 12,025 | 83.7% | 32 |
| 4. | **Total Issued** | **17,323** | **14,381** | **83.0%** | **37** |

## 2.  Employer Verification Review (EVR).

The EVR process ensures that all employees of the same business are treated uniformly and that each business is placed in the proper Zone.  The review also walks through the intricate analysis necessary to assign the proper NAICS code to a business.  The EVR team has completed the EVR analysis for 208,944 businesses and rental properties.

From December 11, 2013 through January 10, 2014, the team completed the EVR process for 3,167 businesses and rental properties.  The CAO identified an average of 103 new businesses and rental properties to review each day and completed the EVR review for an average of 102 businesses and rental properties each day.  The CAO continues to review new businesses and rental properties on a first-in, first-out basis.

### 3.  Exclusions.

The Exclusions review process ensures that claims and claimants excluded under the Settlement Agreement are appropriately denied.  The Exclusions team guides the reviewers and the EVR team when questions arise during the Exclusion review.  Table 6 below shows the number of Denial Notices issued to date for each Exclusion Reason and the team responsible for making such a determination.

| Table 6.  Exclusions. | | | | |
|---|---|---|---|---|
| | **Exclusion Reason** | **Team Responsible** | **Denial Notices Since Last Report** | **Total Denial Notices** |
| 1. | GCCF Release | Exclusions | 20 | 7,323 |
| 2. | BP/MDL 2179 Defendant | | 9 | 303 |
| 3. | US District Court for Eastern District of LA | | 0 | 22 |
| 4. | Not a Member of the Economic Class | Claims Reviewers | 4 | 230 |
| 5. | Bodily Injury | | 0 | 6 |
| 6. | BP Shareholder | | 0 | 8 |
| 7. | Transocean/Halliburton Claim | | 0 | 0 |
| 8. | Governmental Entity | Claims Reviewers/ EVR | 7 | 742 |
| 9. | Oil and Gas Industry | | 55 | 820 |
| 10. | BP-Branded Fuel Entity | | 0 | 41 |
| 11. | Menhaden Claim | EVR | 0 | 18 |
| 12. | Financial Institution | | 1 | 249 |
| 13. | Gaming Industry | | 3 | 692 |
| 14. | Insurance Industry | | 0 | 176 |
| 15. | Defense Contractor | | 3 | 348 |

| | Table 6.  Exclusions. | | | |
|---|---|---|---|---|
| | **Exclusion Reason** | **Team Responsible** | **Denial Notices Since Last Report** | **Total Denial Notices** |
| **16.** | **Real Estate Developer** | | 5 | 201 |
| **17.** | **Trust, Fund, Financial Vehicle** | | 0 | 14 |
| **18.** | **Total Denial Notices from Exclusions** | | **107** | **11,193** |

### 4.   Claimant Accounting Support Reviews.

A special team handles Claimant Accounting Support (CAS) reviews.  CAS reimbursement is available under the Settlement Agreement for IEL, BEL, and Seafood claims. After a claim has been determined to be payable and the Compensation Amount has been calculated, the CAS team reviews accounting invoices and CAS Sworn Written Statements submitted by the claimant.  Table 7 includes information on the number of CAS reviews the CAO has completed to date, whether the Accounting Support documentation was complete or incomplete, and the dollar amounts reimbursed for each Claim Type.

| | Table 7.  Claimant Accounting Support Reviews. | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | **Claim Type** | **CAS Review Result** | | | | **Total CAS Reviews** | | **CAS $ Amount Reimbursed** | |
| | | **Complete** | | **Incomplete** | | | | | |
| | | **Since Last Report** | **Total to Date** | **Since Last Report** | **Total to Date** | **Since Last Report** | **Total to Date** | **Since Last Report** | **Total to Date** |
| **1.** | **BEL** | 63 | 10,120 | 15 | 985 | 78 | 11,105 | $0.00 | $15,628,756.96 |
| **2.** | **IEL** | 160 | 2,416 | 18 | 385 | 178 | 2,801 | $25,389.56 | $321,241.90 |
| **3.** | **Seafood** | 26 | 3,806 | 22 | 772 | 48 | 4,578 | $6,322.66 | $1,549,899.85 |
| **4.** | **TOTAL** | **249** | **16,342** | **55** | **2,142** | **304** | **18,484** | **$31,712.22** | **$17,499,898.71** |

### 5.   Quality Assurance Review.

The Quality Assurance (QA) process addresses three fundamental needs of the Settlement Program: (a) to ensure that all claims are reviewed in accordance with the provisions of the Settlement Agreement by targeting anomalous claim results through data metrics analysis;

(b) to provide a mechanism to monitor reviewer performance and the tools necessary to efficiently and effectively provide feedback to reviewers; and (c) to identify areas of review resulting in high error rates that require retraining or refined review procedures and data validations.

      The CAO has implemented a reviewer follow-up process for all claim types. The CAO provides daily follow-up to reviewers in the event a QA review of a particular claim produces a result different than that of the original review. The CAO also has a report that identifies specific reviewers who require retraining and reveals whether there are issues that warrant refresher training for all reviewers. Table 8 shows, by Claim Type, the number of claims identified for QA review through the database QA process, as well as the number of QA reviews that have been completed, the number in progress, and the number awaiting review.

| | Table 8. Quality Assurance Reviews. | | | | | | |
|---|---|---|---|---|---|---|---|
| | Claim Type | Total Claims Needing QA To Date | QA Reviews Completed | % of QA Reviews Completed | QA Reviews in Progress | Claims Awaiting QA Review | QA Reviews Completed Since Last Report |
| 1. | Seafood | 25,019 | 24,826 | 99% | 158 | 35 | 136 |
| 2. | IEL | 26,412 | 24,977 | 95% | 946 | 489 | 951 |
| 3. | BEL | 23,317 | 22,976 | 99% | 185 | 156 | 833 |
| 4. | Start-Up BEL | 1,882 | 1,851 | 98% | 15 | 16 | 82 |
| 5. | Failed BEL | 2,002 | 1,976 | 99% | 5 | 21 | 54 |
| 6. | Coastal Real Property | 19,780 | 19,763 | 100% | 14 | 3 | 294 |
| 7. | Real Property Sales | 804 | 804 | 100% | 0 | 0 | 13 |
| 8. | VoO Charter | 7,741 | 7,738 | 100% | 1 | 2 | 46 |
| 9. | Subsistence | 30,204 | 19,604 | 65% | 1,096 | 9,504 | 865 |
| 10. | Wetlands | 3,889 | 3,673 | 94% | 32 | 184 | 52 |
| 11. | Vessel Physical Damage | 1,369 | 1,355 | 99% | 9 | 5 | 33 |

| | Table 8.  Quality Assurance Reviews. | | | | | | |
|---|---|---|---|---|---|---|---|
| | **Claim Type** | **Total Claims Needing QA To Date** | **QA Reviews Completed** | **% of QA Reviews Completed** | **QA Reviews in Progress** | **Claims Awaiting QA Review** | **QA Reviews Completed Since Last Report** |
| **12.** | **TOTAL** | **142,419** | **129,543** | **91%** | **2,461** | **10,415** | **3,359** |

### 6.  Claim Type Review Details.

Table 9 provides information, by Claim Type, on the number of claims filed, the number of claims that have been reviewed to Notice, the number of claims remaining to be reviewed, and the number of claims reviewed to either a Notice or "Later Notice" to date.  Table 9 divides the claims reviewed to a "Later Notice" into separate sections: 1) claims receiving Notices after the CAO conducts a Reconsideration review and 2) claims reviewed following the submission of additional materials by a claimant in response to an Incompleteness Notice.

| | Table 9.  Throughput Analysis of Claims Filed and Notices Issued. | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | **A. Claims Reviewed to First Notice** | | | | | | | | |
| | | **Status of All Claims Filed** | | | | | **Productivity From 12/11/13 Through 1/10/14** | | |
| | **Claim Type** | **Total Claims Filed To Date** | **Reviews Completed to Notice or Closed** | | **Claims Remaining to Review** | | **New Claims Filed** | **Avg. Daily Claims Filed** | **Reviews Completed to First Notice** | **Avg. Daily Reviews to First Notice** |
| **1.** | Seafood | 24,551 | 24,158 | 98% | 393 | 2% | 37 | 1 | 67 | 2 |
| **2.** | IEL | 36,752 | 33,064 | 90% | 3,688 | 10% | 596 | 19 | 520 | 17 |
| **3.** | IPV/FV | 267 | 254 | 95% | 13 | 5% | 0 | 0 | 0 | 0 |
| **4.** | BEL | 89,583 | 44,278 | 49% | 45,305 | 51% | 4,110 | 133 | 876 | 28 |
| **5.** | Start-Up BEL | 4,999 | 3,553 | 71% | 1,446 | 29% | 110 | 4 | 36 | 1 |
| **6.** | Failed BEL | 3,382 | 2,705 | 80% | 677 | 20% | 132 | 4 | 50 | 2 |
| **7.** | Coastal  RP | 32,696 | 31,680 | 97% | 1,016 | 3% | 614 | 20 | 636 | 21 |
| **8.** | Wetlands RP | 13,069 | 4,989 | 38% | 8,080 | 62% | 187 | 6 | 153 | 5 |
| **9.** | RPS | 1,472 | 1,410 | 96% | 62 | 4% | 23 | <1 | 18 | <1 |
| **10.** | Subsistence | 33,090 | 11,184 | 34% | 21,906 | 66% | 1,096 | 35 | 304 | 10 |
| **11.** | VoO | 8,676 | 8,598 | 99% | 78 | 1% | 27 | <1 | 36 | 1 |
| **12.** | Vessel | 1,407 | 1,342 | 95% | 65 | 5% | 11 | <1 | 9 | <1 |
| **13.** | **TOTAL** | **249,944** | **167,215** | **67%** | **82,729** | **33%** | **6,943** | **224** | **2,705** | **87** |

| Table 9.  Throughput Analysis of Claims Filed and Notices Issued. | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **B. Claims Reviewed to Later Notice** | | | | | | | | | |
| | **Claim Type** | **Initial or Preliminary Incompleteness Response** | | | **Follow-Up Incompleteness Responses** | | | **Requests for Reconsideration** | | |
| | | **Total Responses** | **Claims with Later Notice** | **Remaining Claims** | **Total Responses** | **Claims with Later Notice** | **Remaining Claims** | **Total Requests** | **Claims with Later Notice** | **Remaining Claims** |
| 1. | Seafood | 5,864 | 5,289 | 575 | 2,759 | 2,457 | 302 | 3,544 | 3,151 | 393 |
| 2. | IEL | 15,462 | 13,199 | 2,263 | 7,335 | 5,767 | 1,568 | 4,422 | 3,354 | 1,068 |
| 3. | IPV/FV | 89 | 84 | 5 | 34 | 32 | 2 | 36 | 34 | 2 |
| 4. | BEL | 24,531 | 15,056 | 9,475 | 9,232 | 4,437 | 4,795 | 3,916 | 2,389 | 1,527 |
| 5. | Start-Up BEL | 2,069 | 1,510 | 559 | 1,141 | 589 | 552 | 414 | 215 | 199 |
| 6. | Failed BEL | 917 | 697 | 220 | 520 | 294 | 226 | 435 | 283 | 152 |
| 7. | Coastal  RP | 4,914 | 4,758 | 156 | 1,335 | 1,290 | 45 | 1,600 | 1,450 | 150 |
| 8. | Wetlands RP | 332 | 240 | 92 | 68 | 56 | 12 | 464 | 365 | 99 |
| 9. | RPS | 241 | 231 | 10 | 68 | 68 | 0 | 176 | 170 | 6 |
| 10. | Subsistence | 4,821 | 682 | 4,139 | 890 | 69 | 821 | 151 | 64 | 87 |
| 11. | VoO | 905 | 891 | 14 | 382 | 368 | 14 | 616 | 605 | 11 |
| 12. | Vessel | 743 | 703 | 40 | 334 | 312 | 22 | 224 | 204 | 20 |
| 13. | **TOTAL** | **60,888** | **43,340** | **17,548** | **24,098** | **15,739** | **8,359** | **15,998** | **12,284** | **3,714** |

## C.  **Claim Payments.**

### 1.  **Notices and Payments.**

The CAO issued its first payments to claimants on July 31, 2012.  Tables 4 and 5 of the Public Report attached in Exhibit A provide detail on the notices and payments issued to date. As of January 10, 2014, the CAO has issued 62,133 Eligibility Notices to unique claims with Payment Offers totaling over $4.96 billion.  As of that date, the CAO has made over $3.82 billion in payments on 54,780 claims.[5]

---

[5] The Court-ordered Injunction Addressing Revenue and Expense Matching and Causation Issues has affected the number of Eligibility Notices with Payment Offers and Payments Issued.  See section I.E for additional information on the Injunction Addressing Revenue and Expense Matching and Causation Issues.

## 2. Claimants in Bankruptcy.

The CAO reviews each claimant who indicates an open bankruptcy on the Registration Form (debtor claimant) to determine whether the claimant has submitted sufficient documentation from the applicable bankruptcy court to issue payment.  If the CAO determines that the claimant is not a debtor claimant per the Procedure for Disposition of Claims by Claimants in Bankruptcy (Proc-445), or if the claimant submits sufficient documentation for the CAO to issue payment on all active claims, the CAO will remove the Bankruptcy Hold.  Table 10 provides information about the status of claimants identified as debtor claimants, including information on notices issued to those claimants.

| Table 10.  Claimants in Bankruptcy. | | | |
|---|---|---|---|
| **1.** | **Identified Claimants in Bankruptcy** | **Total** | **Change Since Last Report** |
| (a) | **Claimants with Active Bankruptcy Hold** | 1,746 | +521 |
| (b) | **Claimants with Removed Bankruptcy Hold** | 846 | -477 |
| **2.** | **Bankruptcy Notices Issued** | **Total** | **Change Since Last Report** |
| (a) | **Representative of Claimant in Bankruptcy Notices** | 312 | +5 |
| (b) | **Bankruptcy Trustee Communication Notices** | 55 | +2 |
| (c) | **Bankruptcy Trustee Informational Notices** | 41 | 0 |

On December 5, 2013, the CAO re-issued the Procedure for Disposition of Claims by Claimants in Bankruptcy (Proc-445) to Class Counsel and BP for comment.  The revised version of the Procedure changes the procedures for Chapter 12 and 13 debtors with regard to who must sign the appropriate Release and whether the CAO's office may communicate with the debtor when a trustee has been appointed.  Version 2 of Proc-445 states that Chapter 7 and 11 debtors must provide the CAO with an Approval Order that states who must sign the Release, but Chapter 12 and 13 debtors are assumed to be the debtors-in-possession of their own bankruptcy estates and, thus, are permitted to sign the Release on their own behalf unless the submitted

Court Order states otherwise.  Version 2 of Proc-445 also states that the CAO's office may communicate with Chapter 12 and 13 debtors directly, even when the Court has appointed a bankruptcy trustee to oversee the debtor's case.  On December 5, 2013, Class Counsel deferred to the CAO's decision regarding this change.  On December 17, 2013, BP submitted proposed modifications to the revised version of the Procedure. The CAO is currently reviewing BP's proposed modifications.

    **D.  <u>Re-Reviews, Reconsiderations, and Appeals</u>.**

        **1.  Re-Reviews and Outcomes.**

The CAO implemented a Re-Review process beginning on January 18, 2013, that provides claimants with the opportunity to request a Re-Review of their claim within 30 days of the issuance of an Eligibility or Denial Notice if the claimant has additional documentation not previously submitted to support their claim.  Following a Re-Review, claimants receive a Post Re-Review Notice, from which they may then request Reconsideration if they wish.  To date, there have been 63,242 Eligibility and Denial Notices issued from which claimants can seek Re-Review.  Of those, 911 are still within the 30 day window to seek Re-Review and Re-Review has not yet been requested, leaving 62,331 claims that have passed the window for seeking Re-Review.  Of those, claimants have asked for Re-Review of 4,483 claims.  Thus, the rate of Re-Review from all final determinations is 7.2%.  The rate of Re-Review from Eligibility Notices is 4.4%, and the rate of Re-Review from Denial and Incompleteness Denial Notices is 13.8%.

Table 11 summarizes the Re-Reviews the CAO has completed, the number of Post-Re-Review Notices the CAO has issued, and whether the outcome of the Re-Review resulted in an award that was higher than (↑), lower than (↓),or the same as (↔) the outcome previously issued. The table also includes information on whether an original Exclusion Denial was confirmed or overturned on Re-Review.  The number of Notices issued is fewer than the number of reviews

completed because there is a 36-hour lag between the time when the review is completed and the time when the Notice is issued.

| | Table 11.  Re-Reviews. | | | | |
|---|---|---|---|---|---|
| | **A.   Re-Review Requests and Reviews** | | | | |
| | | | **Reviews Completed To Date** | | |
| | **Claim Type** | **Requests Received To Date** | **Total** | **Completed Since Last Report** | **Average Weekly Reviews** |
| **1.** | **Seafood** | 800 | 769 | 45 | 16 |
| **2.** | **IEL** | 647 | 598 | 122 | 12 |
| **3.** | **IPV/FV** | 11 | 9 | 0 | <1 |
| **4.** | **BEL** | 1,525 | 1,329 | 68 | 27 |
| **5.** | **Start-Up BEL** | 116 | 86 | 7 | 2 |
| **6.** | **Failed BEL** | 149 | 121 | 22 | 2 |
| **7.** | **Coastal RP** | 729 | 706 | 31 | 15 |
| **8.** | **Wetlands RP** | 255 | 240 | 7 | 5 |
| **9.** | **Real Property Sales** | 79 | 79 | 1 | 2 |
| **10.** | **Subsistence** | 72 | 46 | 2 | <1 |
| **11.** | **VoO** | 56 | 56 | 3 | 1 |
| **12.** | **Vessel** | 44 | 41 | 0 | <1 |
| **13.** | **TOTAL** | **4,483** | **4,080** | **308** | **84** |

| | **B.   Re-Review Notices Issued** | | | | | | |
|---|---|---|---|---|---|---|---|
| | | **Notices Issued** | | **Outcome of Re-Review Notice** | | | |
| | **Claim Type** | **Total Issued to Date** | **Weekly Average** | **Compensation Amount for Eligible Claims** | | **Exclusions/Denials** | |
| | | | | ↑ | ↓ | ↔ | **Confirmed** | **Overturned** |
| **1.** | **Seafood** | 699 | 14 | 378 | 26 | 210 | 82 | 3 |
| **2.** | **IEL** | 523 | 11 | 134 | 33 | 177 | 176 | 3 |
| **3.** | **IPV/FV** | 9 | <1 | 0 | 0 | 0 | 9 | 0 |
| **4.** | **BEL** | 1,012 | 21 | 253 | 42 | 82 | 626 | 9 |
| **5.** | **Start-Up BEL** | 68 | 1 | 16 | 3 | 5 | 43 | 1 |
| **6.** | **Failed BEL** | 92 | 2 | 1 | 2 | 0 | 89 | 0 |
| **7.** | **Coastal RP** | 612 | 13 | 42 | 5 | 94 | 457 | 14 |
| **8.** | **Wetlands RP** | 182 | 4 | 5 | 1 | 9 | 166 | 1 |
| **9.** | **RPS** | 40 | <1 | 1 | 0 | 2 | 37 | 0 |
| **10.** | **Subsistence** | 31 | <1 | 1 | 1 | 1 | 28 | 0 |
| **11.** | **VoO** | 55 | 1 | 7 | 5 | 17 | 24 | 2 |
| **12** | **Vessel** | 39 | <1 | 19 | 0 | 11 | 8 | 1 |
| **13.** | **TOTAL** | **3,362** | **70** | **857** | **118** | **608** | **1,745** | **34** |

## 2.  Reconsideration Reviews and Outcomes.

To date, there have been 123,698 Eligibility, Denial, and Incompleteness Denial Notices issued from which claimants can or could seek Reconsideration.  Of those, 1,980 are still within the 30 day window to seek Reconsideration and Reconsideration has not yet been requested, leaving 121,718 claims that have passed the window for seeking Reconsideration.  Of those, claimants have requested Reconsideration of 15,998 claims.  Thus, the rate of Reconsideration from all final determinations is 13.1%.  The rate of Reconsideration from Eligibility Notices is 5.7%, and the rate of Reconsideration from Denial and Incompleteness Denial Notices is 22.0%.

Table 12 summarizes the Reconsiderations the CAO has completed, the number of Post-Reconsideration Notices the CAO has issued, and whether the outcome of the Reconsideration review resulted in an award that was higher than (↑), lower than (↓), or the same as (↔) the outcome previously issued. The table also includes information on whether an original Exclusion Denial was confirmed or overturned on Reconsideration.  The number of Notices issued is fewer than the number of reviews completed because there is a 36-hour lag between the time when the review is completed and the time when the Notice is issued.

| Table 12.  Reconsideration. | | | | | |
|---|---|---|---|---|---|
| A.  Reconsideration Requests and Reviews | | | | | |
| | Claim Type | Requests Received To Date | Reviews Completed To Date | | |
| | | | Total | Completed Since Last Report | Average Weekly Reviews |
| 1. | Seafood | 3,544 | 3,255 | 117 | 51 |
| 2. | IEL | 4,422 | 3,709 | 267 | 58 |
| 3. | IPV/FV | 36 | 34 | 0 | <1 |
| 4. | BEL | 3,916 | 2,569 | 115 | 41 |
| 5. | Start-Up BEL | 414 | 234 | 13 | 4 |
| 6. | Failed BEL | 435 | 342 | 15 | 5 |
| 7. | Coastal RP | 1,600 | 1,500 | 48 | 24 |
| 8. | Wetlands RP | 464 | 381 | 11 | 6 |
| 9. | Real Property Sales | 176 | 174 | 1 | 3 |

| Table 12.  Reconsideration. | | | | | |
|---|---|---|---|---|---|
| 10. | Subsistence | 151 | 108 | 15 | 2 |
| 11. | VoO | 616 | 612 | 9 | 10 |
| 12. | Vessel | 224 | 218 | 19 | 3 |
| 13. | TOTAL | **15,998** | **13,136** | **630** | **207** |

| B. Reconsideration Notices Issued | | | | | | | |
|---|---|---|---|---|---|---|---|
| | **Claim Type** | **Notices Issued** | | **Outcome of Reconsideration Notice** | | | |
| | | **Total Issued to Date** | **Weekly Average** | **Compensation Amount for Eligible Claims** | | | **Exclusions/Denials** | |
| | | | | ↑ | ↓ | ↔ | **Confirmed** | **Overturned** |
| 1. | Seafood | 3,151 | 49 | 731 | 127 | 453 | 1,836 | 4 |
| 2. | IEL | 3,354 | 53 | 114 | 246 | 94 | 2,895 | 5 |
| 3. | IPV/FV | 34 | <1 | 0 | 0 | 0 | 34 | 0 |
| 4. | BEL | 2,389 | 37 | 351 | 93 | 187 | 1,721 | 37 |
| 5. | Start-Up BEL | 215 | 3 | 11 | 9 | 13 | 179 | 3 |
| 6. | Failed BEL | 283 | 4 | 0 | 4 | 1 | 278 | 0 |
| 7. | Coastal RP | 1,450 | 23 | 93 | 23 | 365 | 954 | 15 |
| 8. | Wetlands RP | 365 | 6 | 20 | 1 | 30 | 301 | 13 |
| 9. | RPS | 170 | 3 | 1 | 0 | 3 | 164 | 2 |
| 10. | Subsistence | 64 | 1 | 0 | 0 | 1 | 63 | 0 |
| 11. | VoO | 605 | 9 | 59 | 5 | 120 | 379 | 42 |
| 12 | Vessel | 204 | 3 | 49 | 4 | 14 | 136 | 1 |
| 13. | TOTAL | **12,284** | **193** | **1,429** | **512** | **1,281** | **8,940** | **122** |

**3.  Appeals.**

**(a) BP Appeals.**

To date, the CAO has issued 18,763 Eligibility Notices that meet or exceed the threshold amount rendering them eligible for appeal by BP.  Of those, 38 Notices are still within the timeframe in which BP can file an appeal and BP has not yet filed an appeal, leaving 18,725 Notices that BP has either appealed or for which the deadline for BP to file an appeal has passed.  Of those 18,725 Notices, BP has filed 3,903 appeals (20.8% appeal rate).  However, out of the 3,903 Notices BP has appealed, BP has subsequently withdrawn 267 of those appeals, while another 1,307 have been resolved for a compensation amount the same as or greater than that in the Eligibility Notice (excluding the 5% compensation increase that a claimant who

16

prevails upon appeal receives).  Thus, out of the 3,903 Notices BP has appealed, 1,574 have either been withdrawn or resolved for a compensation amount the same as or greater than that in the Eligibility Notice.  When those 1,574 Notices are deducted from the 3,903 Notices BP has appealed to arrive at a more representative and indicative "rate of disagreement", that leaves 2,329 out of 18,725 Notices, or a 12.4% "rate of disagreement."

Table 13 provides summary information on the status of BP appeals.

| Table 13.  Status of BP Appeals. | | | | |
|---|---|---|---|---|
| A.   Appeal Filing/Resolution | | | | |
| | Status | As of Last Report | Since Last Report | Total |
| **1.** | **BP Appeals Filed** | **3,881** | **22** | **3,903** |
| **2.** | **Appeals Resolved** | **2,366** | **12** | **2,378** |
| (a) | Withdrawn | 264 | 3 | 267 |
| (b) | Panel Decided | 1,477 | 6 | 1,483 |
| (c) | Settled by Parties | 382 | 1 | 383 |
| (d) | Remanded by Panel | 102 | 2 | 104 |
| (e) | Administratively Closed | 8 | 0 | 8 |
| (f) | Closed for Reconsideration Review | 133 | 0 | 133 |
| B.   Pending Appeals | | | | |
| **3.** | **In Pre-Panel Baseball Process** | 1,291 | | |
| **4.** | **Currently Before Panel** | 111 | | |
| **5.** | **Under Discretionary Review** | 123 | | |
| **6.** | **TOTAL PENDING** | **1,525** | | |

**(b) Claimant Appeals.**

Before a claimant may file an appeal, the claimant must request Reconsideration and receive a Post-Reconsideration Eligibility or Denial Notice.  To date, the CAO has issued 6,920 Post-Reconsideration Eligibility and Denial Notices. Of those, 94 Notices are still within the timeframe in which the claimant can file an appeal and the claimant has not yet filed an appeal, leaving 6,826 Notices that the claimant has either appealed or for which the deadline for the claimant to file an appeal has passed.  Of those 6,826 Notices, claimants have filed 1,193 appeals

(17.5% appeal rate).  Of the 1,193 claimant appeals, 725 are appeals of Post-Reconsideration

Denial Notices, and 468 are appeals of Post-Reconsideration Eligibility Notices.

Table 14 provides summary information on the status of Claimant Appeals.

| | **Table 14.  Status of Claimant Appeals.** | | | |
|---|---|---|---|---|
| | **A. Appeal Filing/Resolution** | | | |
| | **Status** | **As of Last Report** | **Since Last Report** | **Total** |
| **1.** | **Claimant Appeals Filed** | **1,162** | **31** | **1,193** |
| **2.** | **Appeals Resolved** | **601** | **66** | **667** |
| (a) | Panel Decided | 504 | 40 | 544 |
| (b) | Settled by Parties | 47 | 22 | 69 |
| (c) | Remanded by the Panel | 14 | 3 | 17 |
| (d) | Administratively Closed | 8 | 0 | 8 |
| (e) | Withdrawn | 28 | 1 | 29 |
| | **B.  Pending Appeals** | | | |
| **3.** | **In Pre-Panel Baseball Process** | 101 | | |
| **4.** | **In Pre-Panel Non-Baseball Process** | 245 | | |
| **5.** | **Currently Before Panel** | 120 | | |
| **6.** | **Under Discretionary Review** | 60 | | |
| **7.** | **TOTAL PENDING** | **526** | | |

**(c)  Resolved Appeals.**

As reported in the tables above, 3,045 appeals have been resolved.  Table 15 provides a

summary of these resolved appeals by Claim Type.  The comparison between the Post-Appeal

award amount and the award amount within the original notice does not take into consideration

the 5% increase in compensation that a claimant who prevails upon appeal receives.

| | | Appeals Settled or Decided by Panel | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Claim Type** | | **Award Amount after Appeal Compared to Original Notice** | | | | | | **Withdrawn** | **Admin. Closed** | **Closed Because Claimant Asked For Recon.** | **Total** |
| | | **Higher** | **Lower** | **Same** | **Denial Upheld** | **Denial Over-turned** | **Remand** | | | | |
| **1.** | Seafood | 51 | 16 | 121 | 24 | 2 | 10 | 46 | 4 | 8 | 282 |
| **2.** | BEL | 56 | 463 | 1,149 | 102 | 27 | 81 | 197 | 6 | 104 | 2,185 |
| **3.** | Wetlands | 2 | 1 | 2 | 26 | 0 | 0 | 3 | 0 | 16 | 50 |
| **4.** | Coastal | 33 | 1 | 14 | 46 | 1 | 1 | 6 | 1 | 0 | 103 |
| **5.** | RPS | 0 | 3 | 7 | 31 | 0 | 0 | 2 | 0 | 0 | 43 |
| **6.** | VoO | 16 | 30 | 36 | 29 | 18 | 5 | 26 | 3 | 0 | 163 |
| **7.** | IEL | 12 | 25 | 36 | 36 | 6 | 14 | 7 | 2 | 5 | 143 |
| **8.** | IPV | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 2 |
| **9.** | VPD | 0 | 24 | 28 | 3 | 0 | 11 | 8 | 0 | 0 | 74 |
| **10.** | **Total** | **170** | **563** | **1,393** | **298** | **55** | **122** | **295** | **16** | **133** | **3,045** |

**Table 15.  Outcome After Appeal.**

**(d) Incompleteness Appeals.**

The Appeal for Insufficient Documentation (Incompleteness Appeal) allows Economic Class Members to have their claims reviewed by a separate Documentation Reviewer when the CAO denies their claims because of insufficient documentation.  The Documentation Reviewer reviews the claimant's documentation to determine whether the Program correctly denied the claim.

Before sending the claim to the Documentation Reviewer, the CAO reviews the appeal request along with any newly submitted documents.  If the claimant has submitted the requested documentation and cured the incompleteness, the CAO issues the appropriate Notice.  If the claimant still has not submitted the requested documentation, the CAO sends the claim to the Documentation Reviewer for review.

Before a claimant may file an appeal of an Incompleteness Denial, the claimant must request Reconsideration and receive a Post-Reconsideration Incompleteness Denial Notice.  To

date, the CAO has issued 3,235 Post-Reconsideration Incompleteness Denial Notices.  Of those,

169 Notices are still within the timeframe in which the claimant can file an appeal, leaving 3,066

Notices for which the claimant's appeal deadline has passed.  Of those 3,235 Notices eligible for

appeal, 1,468 (45.4%) appeal requests have been filed.

Table 16 provides summary information on the status of Incompleteness Appeals.

| Table 16.  Incompleteness Appeals. | | | | |
|---|---|---|---|---|
| A.  Incompleteness Appeal Filing/Resolution | | | | |
| | Status | Prior to 12/11/13 | Since 12/11/13 | Total |
| 1. | Incompleteness Appeals Filed | 1,366 | 102 | 1,468 |
| 2. | Appeals Resolved | 1,013 | 134 | 1,147 |
| (a) | Withdrawn/Closed | 3 | 0 | 3 |
| (b) | Cured | 121 | 29 | 150 |
| (c) | Incompleteness Denial Affirmed | 870 | 103 | 973 |
| (d) | Incompleteness Denial Overturned | 19 | 2 | 21 |
| B.  Pending Incompleteness Appeals | | | | |
| 3. | In Pre-Documentation Reviewer Process | 290 | | |
| 4. | Currently Before Documentation Reviewer | 31 | | |
| 5. | TOTAL PENDING | 321 | | |

As reported in Table 16 above, 1,147 Incompleteness Appeals have been resolved.

### E.  Court-Ordered BEL Claim Suspension.

BP appealed the District Court's order, issued on March 5, 2013, that affirmed the Claims

Administrator's interpretation of the Settlement Agreement that the BEL framework does not

require the matching of revenues and expenses within claimant-submitted profit and loss

statements.  On October 2, 2013, the Fifth Circuit Court of Appeals reversed the District Court's

ruling and remanded the case to the District Court for further consideration.  The District Court

immediately entered an order to suspend the issuance of any final determination notices or

payments on all BEL claims, including Start-Up and Failed BEL claims, until the Court could

create an appropriately narrowly-tailored preliminary injunction.  The CAO continued to

complete the initial stages of claims evaluation but immediately ceased issuing Incompleteness,

Denial, and Eligibility Notices and suspended all payments on BEL claims.

### 1.   Preliminary Injunction Continuing BEL Claim Suspension.

On October 18, 2013, the District Court issued a preliminary injunction that instructed

the Claims Administrator to continue the temporary suspension of the issuance of final

determination notices and payments for BEL claims that present an issue of revenue and expense

matching and for IEL claims for which the claimant's economic loss is qualified solely upon his

or her employer's satisfaction of the BEL requirements.  The District Court further instructed the

Claims Administrator to process all BEL claims for which revenue and expense matching is not

an issue.  The preliminary injunction ordered the Claims Administrator to provide the District

Court and the Parties with a declaration outlining the criteria that the CAO would use to

determine whether a BEL claim is supported by sufficiently-matched, accrual-basis accounting

and whether the matching of revenues and expenses is or is not an issue, regardless of whether

the claim is supported by accrual or cash-basis accounting records.

### 2.   Processing of Affected Claims in the Claims Review Process.

On October 28, 2013, the Claims Administrator provided the Court with the requested

declaration.  The Claims Administrator's declaration set forth seven criteria that the CAO would

use when reviewing a claimant's profit and loss statements to identify BEL claims that involve

the issue of matching revenues and expenses.  The declaration set forth that the CAO Accounting

Vendors would perform further matching reviews if the monthly profit and loss statements

submitted by a claimant meet any one of the following criteria:

> (a)  negative total revenue is recorded for any month included within the Benchmark
>
> Year(s), Compensation Year, or 2011;

(b) total revenue recorded in any month included in the Benchmark Year(s), Compensation Year, or 2011 exceeds 20% of the claimant's annual revenue for the year which includes that month;

(c) the monthly profit and loss statements or other documentation submitted shows that the claimant's business experienced a period of dormancy during the Benchmark Year(s), Compensation year, or 2011;

(d) total variable expenses when summed up are negative for any month within the Benchmark Year(s) or Compensation Year;

(e) total variable expenses for any month within the Benchmark year(s) or Compensation Year exceed 25% of the claimant's annual variable expense for the year which includes that month;

(f) variable margin percentages when compared between any two months included within the Benchmark Year(s) and Compensation Year vary by more than 50 percentage points; or

(g) in any given month within the Benchmark Year(s) or Compensation Year, the variance between that month's percentage of annual revenues as compared to that same month's percentage of annual variable expenses exceeds 8 percentage points.

If a claim satisfies any one of the above criteria, then the CAO Accounting Vendors will perform further matching review on the claim.  Any claim, whether based on accrual or cash-basis records, that does not fall within one of the foregoing seven criteria shall be presumed to be "sufficiently matched", provided, however, that if, in the professional judgment of the CAO Accounting Vendors, a claimant's financial records contain other significant indicia that the claim may not be "sufficiently matched", the CAO reserves the right to identify such a claim for further matching review.

The CAO Accounting Vendors established procedures for implementing the matching review processes for evaluating all BEL claims under the aforementioned criteria.  On November 12, 2013, the CAO resumed issuing Incompleteness Notices to BEL claims.  The CAO added language to all BEL Incompleteness Notices to inform claimants that additional information regarding the issue of matching revenues and expenses may be required at a later point in the review process.  On November 22, 2013, the CAO resumed issuing Eligibility Notices for BEL claims which the CAO Accounting Vendors confirmed did not involve the issue of matching revenues and expenses.

The CAO is processing all IEL claims that do not qualify for eligibility solely on the basis of the employer's satisfaction of the BEL causation requirements.  The CAO has developed and applied measures within the system to stop all Notices and payments to IEL claimants specifically affected by the Court's preliminary injunction.  These claims remain on hold until the CAO Accounting Vendors evaluate the associated BEL claim for matching issues.

### 3.   Amended Preliminary Injunction Related to BEL Claims.

After the District Court issued its preliminary injunction, BP filed an emergency motion objecting to the District Court's holding that causation was not an issue that the Court would address on remand.  On December 2, 2013, the Fifth Circuit remanded the issue of causation and ordered that the District Court must address causation in its preliminary injunction.  It ordered the District Court to issue a "stay tailored so that those who experienced actual injury traceable to loss from the Deepwater Horizon accident continue to receive recovery but those who did not do not receive their payments until this case is fully heard and decided through the judicial process".   Upon receiving this order, the CAO immediately ceased issuing Eligibility and Denial Notices and payments for all claim types pending additional instructions from the District Court.

On December 5, 2013, the District Court issued an amended preliminary injunction that ordered the CAO to temporarily suspend the issuance of final determination notices and payments to BEL claims until the Court resolves the BEL issues that are the subject of the pending remand.   In response to this order, the CAO resumed issuing Eligibility and Denial Notices and payments for all claim types with the exception of BEL.  Further, the CAO continues to accept and process BEL claims and to issue Incompleteness Notices for BEL claims but is not issuing Denial or Eligibility Notices for any BEL claims.  In addition, the CAO has suspended payments to all BEL claims until it receives further guidance from the District Court.

**4.  District Court's Response to Remand of Business Economic Loss Issues.**

On December 24, 2013, the District Court addressed the issues that the Fifth Circuit had placed on remand.  The District Court first addressed issues concerning the calculation of "Variable Profit" as found in Exhibit 4C.  The District Court confirmed 1) that the CAO is not converting accrual-basis accounting records into cash-basis accounting records and 2) that, while the Parties did not have any specific discussions in regard to the intended meaning of Exhibit 4C (i.e., whether or not Exhibit 4C requires that revenues and expenses be matched for all claims, or only some claims) prior to the implementation of the Settlement Agreement, the Parties did discuss and were in agreement that similarly situated claimants must be treated alike.

The District Court also examined why it interpreted Exhibit 4C in such a way that leads to matching for accrual-based claims and not for cash-basis claims.  In reviewing this issue, the District Court reversed its earlier ruling and the CAO's interpretation as set forth in the January 15, 2013 Announcement of Policy Decisions Regarding Claims Administration.  Consequently, the District Court remanded the matter to the CAO with instructions to adopt and implement an appropriate protocol or policy for handling BEL claims in which the claimant's financial records do not match revenue with corresponding variable expenses.

24

The District Court next addressed the issue of causation.  The Court found that BP is judicially estopped from arguing (1) that Exhibit 4B is not the exclusive means of determining whether a business economic loss is "as a result of" of the Deepwater Horizon Incident for purposes of the Settlement, including the Class Definition; (2) or that the Settlement contains, implicitly or explicitly, a causation requirement other than Exhibit 4B; (3) or that satisfying Exhibit 4B does not establish under the Settlement an irrebuttable presumption that a business' economic loss was "as a result of" the Deepwater Horizon Incident; (4) or making similar arguments.  Additionally, the District Court found that whether a business economic loss is "as a result of" the Deepwater Horizon Incident for purposes of the Settlement is determined exclusively by Exhibit 4B.

The CAO continues to adhere to the December 5, 2013 preliminary injunction by processing BEL claims and issuing Incompleteness Notices for BEL claims but not issuing any final determination notices or payments for any BEL claims.

### 5.  Processing of Appealed Claims.

With respect to Appeals, the District Court's October 18, 2013 preliminary injunction instructed the CAO to review the BEL and IEL claims that were in the Claims Appeals Process as of October 18, 2013, to determine whether any party raised the matching of revenues and expenses as a basis for the appeal.  For all claims in which that review reveals that the matching of revenues and expenses was raised as a basis for the appeal, the Appeals Process is to be temporarily suspended.  The preliminary injunction further provided that for all BEL and IEL claims in the Appeals Process as of October 18, 2013, in which a review reveals that the matching of revenues and expenses was not raised as a basis for the appeal, the Appeals Process is to proceed.

The preliminary injunction also instructed the CAO that for any BEL or IEL appeals timely filed after October 18, 2013, in which the matching of revenues and expenses is raised as a basis for the appeal, the CAO is to review the claim.  If the CAO agrees that the claim presents an issue of whether revenues and expenses are sufficiently matched, the Appeals Process is to be temporarily suspended.  For all other timely-filed BEL and IEL appeals after October 18, 2013, the Appeals Process is to proceed.

On November 5, 2013, the District Court issued an Order Clarifying Preliminary Injunction Regarding Claims Currently in the Appeals Process ("Clarifying Order") that amended the preliminary injunction.  The Clarifying Order provides that the BEL and IEL claims that were in the Appeals Process as of October 18, 2013, as referenced in the preliminary injunction, will be defined as those claims that as of October 18, 2013:

> (a)  had received a final determination notice;

> (b)  had an award of a sufficient dollar amount such that it was eligible to be appealed;

> (c)  had an appeal of the determination filed or the time period for filing an appeal had expired; and

> (d)  for which payment had not yet been issued.

The Clarifying Order further provided that to determine "whether any party raised the matching of revenues and expenses as a basis for appeal" as provided in the preliminary injunction, the CAO is to apply the following criteria:

> (a)  If no appeal was timely filed, the matching issue will be considered to have not been raised as a basis for appeal;

> (b)  If an appeal was filed and briefs in the form of an Initial Proposal, Final Proposal, or Request for Discretionary Court Review were filed, the Program will consider the

matching issue to have been raised only if the issue was raised in any of those three submissions filed as of October 18, 2013;

(c)   If an appeal was filed and briefs in the form of an Initial Proposal, Final Proposal, or Request for Discretionary Court Review were filed, the Program will not consider the matching issue to have been raised if it was not included in any of those three submissions filed as of October 18, 2013; and

(d)   If an appeal was filed but the claim had not yet reached the point where any briefs were filed, the Program will look to the Notice of Appeal to determine whether the matching issue was raised as a basis for appeal.

The CAO has identified the BEL and IEL claims that were in the Appeals Process as of October 18, 2013, according to the criteria set out in the Clarifying Order and are reviewing the Initial Proposal, Final Proposal, and Request for Discretionary Review briefs, as well as the Notices of Appeal, if applicable, to determine whether any party raised the matching of revenues and expenses as a basis for appeal.  When the CAO determines that a matching issue in a BEL or IEL claim was raised in the Appeals Process as of October 18, 2013, the CAO will notify the parties that the Appeals Process is temporarily suspended for that claim.  When the CAO determines that a matching issue in a BEL or IEL claim was not raised in the Appeal Process as of October 18, 2013, the CAO will notify the parties that the Appeals Process will resume and will set appeal deadlines as appropriate.

The CAO will identify the BEL and IEL claims timely filed in the Appeals Process after October 18, 2013, in which the matching of revenue and expenses is raised as a basis for the appeal and will review those claims.  If the CAO agrees that the claim presents an issue as to whether revenues and expenses are "sufficiently matched", then the Appeals Process as to that

claim will be temporarily suspended.  Otherwise, the CAO will permit the claim to proceed through the Appeals Process.

However, the December 5, 2013 amendment to the October 18, 2013 preliminary injunction also applies to all claims currently in the claims appeal process.  In response to this Order, the CAO has temporarily suspended the Appeals Process for all BEL claims in the "baseball" process, which includes all BEL claims with Eligibility Notices.  The CAO will continue the Appeals Process as it relates 1) to non-BEL claims and 2) to BEL claims in the "non-baseball" process, including all BEL claims issued Denial Notices, for which the CAO has determined that neither revenue and expense matching nor causation, as addressed in the Fifth Circuit's ruling, are issues raised as a basis for appeal.

## II.    CLAIMANT OUTREACH EFFORTS

The CAO has continued its Claimant Outreach efforts since the previous Court Status Report as detailed below:

### A.  Law Firm Contacts.

The Law Firm Contact Team continued to service firms by providing statuses, answering questions about notices, and acting as liaisons between reviewers and firms to request additional documentation pertinent to claims review. The team participated in SCP and Identity Verification outreach campaigns for the purpose of obtaining missing or incomplete documentation from claimants.  Additionally, the team conducted training to develop a more efficient and effective process for addressing questions or issues frequently presented to the Law Firm Contact Team.

### B.  **Claimant Communications Center (CCC).**

The CCC continues to participate in ongoing claimant outreach including SWS-12A research calls to employers, calls confirming Deadline Relief Request approvals, and calls to confirm changes in claimant representation status.  The team performed outreach to claimants with incomplete ownership documentation for their Coastal and Wetlands Real Property Claims. The team also contacted claimants who improperly completed their 4506-T forms for submission to the IRS for tax return transcripts.  Finally, the CCC continues to request additional documentation from claimants who are eligible for payment but have not yet provided the required payment documents.

### C.  **Claimant Assistance Centers (CACs).**

The CACs continued Claimant Outreach Program calls to contact claimants who have incomplete claims and who began claim forms but did not complete them.  In addition to CAC staff completing outreach assignments as a secondary task, CAC staff members also meet with claimants to answer DWH related questions.  The CAC staff members receive outreach assignments on a bi-weekly basis and additionally as requested upon completion of their initial assignment list.  The CACs have completed over 11,400 calls since they resumed calls for the Claimant Outreach Program.

### D.  **Summary of Outreach Calls.**

The table below summarizes some of the Claimant Outreach Program efforts as of January 10, 2014.

| | Table 17.  Outreach Call Volume. | | | | | | |
|---|---|---|---|---|---|---|---|
| **Row** | **Location** | **Calls Made** | **Incomplete Claims Affected** | **Claims With New Docs After Call** | **% of Claims With New Docs After Call** | **Claimants Visiting CAC After Call** | **% of Claimants Visiting CAC** |
| **1.** | BrownGreer | 88,083 | 28,770 | 22,668 | 79% | 10,340 | 36% |
| **2.** | Garden City Group | 69,822 | 8,471 | 6,271 | 74% | 651 | 8% |
| **3.** | P&N | 31,845 | 7,040 | 6,294 | 89% | 182 | 3% |
| **4.** | PwC | 807 | 355 | 342 | 96% | 9 | 3% |
| **5.** | **TOTAL** | **190,557** | **44,636** | **35,575** | **80%** | **11,182** | **25%** |

### III.   CONCLUSION

The Claims Administrator offers this Report to ensure that the Court is informed of the status of the Program to date.  If the Court would find additional information helpful, the Claims Administrator stands ready to provide it at the Court's convenience.

 _/s/ Patrick A. Juneau_____
PATRICK A. JUNEAU
CLAIMS ADMINISTRATOR

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/EDF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 21[th] day of January, 2014.


  /s/ Patrick A. Juneau      
PATRICK A. JUNEAU
CLAIMS ADMINISTRATOR