LAW OFFICES
## WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

KEVIN M. DOWNEY
(202) 434-5460
kdowney@wc.com

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

January 21, 2014

**By Electronic Mail and Express Delivery**

Honorable Louis J. Freeh, Esq.
Office of the Special Master
935 Gravier Street, Suite 1160
New Orleans, Louisiana 70112

Re:   *In re: Deepwater Horizon*, MDL 10-2179 and Case No. 12-970

Dear Special Master Freeh:

This law firm, among others, represents BP Exploration & Production, Inc., BP America Production Company, and BP p.l.c. ("BP") in the above-captioned matter.

We have reviewed your report dated January 17, 2014, your earlier report dated September 6, 2013, and your Motion for Return of Payments Made To Casey Thonn and Others. We write to request the opportunity to review certain of the materials that you examined as part of your work leading to those filings, including the materials already available to other parties. A full list of materials requested is set forth in the attachment. Our proposed review is for the purpose of determining whether BP will file to seek a future modification pursuant to Federal Rule of Civil Procedure 53 of any of the January 17, 2014 report's factual findings or recommendations. If this request for documents should instead be addressed by the Court, we ask that you please let us know so that we may prepare the appropriate motion.

BP is appreciative of the tremendous effort that you and your staff have invested in investigating the facts set forth in your reports and motion. Those facts are enormously troubling, particularly viewed in combination.

As you know, BP devoted substantial resources to ensure that the operation of the Court Supervised Settlement Program ("CSSP") would be ethical, efficient, and fair. It continues to do


EXHIBIT 2

WILLIAMS & CONNOLLY LLP

Honorable Louis J. Freeh, Esq.
January 21, 2014
Page 2

so. BP finds itself, in return, a target of mail and wire fraud (First Freeh Report at 82-84, 87), money laundering schemes (*id.* at 84-87), and conspiracy (*id.* at 86-87), all advanced by multiple acts of perjury (*id.*) and possible obstruction of justice (Second Freeh Report at 5, n.1). Favoritism in claim processing has been found on multiple occasions (First Freeh Report at 21-25, 45-57, 62-65), and, such acts seem to continue (Second Freeh Report at 1-4). Those within the CSSP who were charged with setting a tone for ethics and fair play instead engaged in highly problematic conduct at an establishment that was a BEL claimant, soliciting their fellow CSSP employees (some willing, some not) to witness their misconduct, all the while exposing the multi-billion dollar facility (funded by BP) to the risks of bribery and presumably extortion. (Second Freeh Report at 5).

Sadly, the misconduct seems to have no limit and no end. Just last month, in an act unimaginable to most, a current and former senior CSSP employee communicated with each other in an effort that appears to have been aimed (unsuccessfully) at concealing evidence from you and your team. (*Id.* at 5, n.1).

The continued misconduct confirms that the facility continues to require the ongoing oversight of the Freeh Group. More than eighteen months after operations began and despite significant guidance and suggestions from the Special Master over the past six months, basic elements of compliance and control, which are elementary in entities a fraction the CSSP's size, apparently still exceed the abilities of the CSSP leadership and staff.

Reading your recommendations sheds light on how the CSSP got here. A strong tone on ethical issues from top management is lacking; appropriate evaluations and audits of compliance are still missing; the basic procedures governing the CSSP's communication with claimants are so underdeveloped that conflicts and manipulation can result – and do. Although your earlier report, issued four months ago, directed some stern measures, the report of Friday finds it necessary to set forth some of the *very same recommendations*, because the CSSP has obviously failed to implement those recommendations despite being given ample time and resources to do so.

The report's recommendations will not draw dispute from BP. But we believe that the facts in the report suggest that the deficiencies identified have had and will continue to have a significant impact on BP's interests and thus may merit more drastic action.

BP cannot be expected to stand by while the facility continues to operate slowly, inefficiently, exposed to the risk of fraud, and in a fashion that is error-prone and tone-deaf to ethical concerns. Hence, we are evaluating whether the facts set forth in your reports merit recommendations in addition to those set forth in those reports. We are hopeful that our review of the documents requested will advance that evaluation.

WILLIAMS & CONNOLLY LLP

Honorable Louis J. Freeh, Esq.
January 21, 2014
Page 3

    BP appreciates the work of the Special Master and the Freeh Group. As you know, BP has substantial interests at stake, and BP is the entity that will almost surely suffer most from the lapses that you have identified.

    We are simultaneously apprising the Court and the other parties of this request.

Respectfully submitted,

Kevin M. Downey

Attachment

cc:    The Honorable Carl J. Barbier
    The Honorable Sally Shushan
    Patrick A. Juneau, Esq.
    Stephen J. Herman, Esq.*
    James P. Roy, Esq.*
    Michael S. Walsh, Esq.*
    Mary Olive Pierson, Esq.*
    Lewis O. Unglesby, Esq.*
    Pauline F. Hardin, Esq.*
    William W. Taylor, III, Esq.*
    William P. Gibbens, Esq.*
    Stephen M. Gelé, Esq.*
    Douglas S. Draper, Esq.*
    Harry Rosenberg, Esq.*
    Kyle Schonekas, Esq.*

\*    Transmitted via electronic mail only.

## Attachment A
### (BP's Request to Review Certain Materials)

1. All documents provided by the Special Master to Lionel Sutton, Christine Reitano, Jon Andry, Glen Lerner, and any associated law firms, including, but not limited to, those documents provided pursuant to the Court's Sept. 19, 2013 Order, Rec. Doc. 11442; October 16, 2013 Order, Rec. Doc. 11664; Oct. 24, 2013 Order, Rec. Doc. 11729; or Dec. 19, 2013 Order, Rec. Doc. 12026.

2. Documents that provide the factual basis for the disclosures in the January 17, 2014 Report of the Special Master concerning the "October 2, 2013 Email and Subsequent Events," including:

    a. The October 2, 2013 email from "an appeals panelist regarding a claimant represented by Duval, Funderburk, Sundbery, Lovell & Watkins APLC."

    b. Documents related to David H. Duval's handling of the October 2, 2013 email, including the email Mr. Duval forwarded to his private Hotmail account on October 3, 2013 at 11:37 a.m. and the email Mr. Duval forwarded from his Hotmail account to Stanwood Duval on October 3, 2013 at 12:28 p.m.

    c. Any witness statements related to the October 2, 2013 email identified in the Special Master's January 17, 2014 Report.

    d. Documents related to Duval, Funderburk, Sundbery, Lovell & Watkins APLC's October 4, 2013 report to Judge Shushan.

    e. David Duval's signed conflict of interest policies dated May 1, 2012 and July 17, 2012.

    f. David Duval's signed confidentiality certification dated July 16, 2012.

3. Sworn statement of David Duval taken by the Special Master and any documents appended to or exhibits to that statement.

4. Sworn statement of C. Berwick Duval taken by the Special Master and any documents appended to or exhibits to that statement.

5. Sworn statement of Stanwood "Stan" Duval taken by the Special Master and any documents appended to or exhibits to that statement.

6. Other witness statements related to the facts recited in the January 17, 2014 Report of the Special Master, including, but not limited to, statements or transcripts of David Odom and Kirk Fisher.

7. Documents that provide the factual basis for the disclosures in the January 17, 2014 Report of the Special Master concerning the "Other Information Learned During Investigation," including:

    a. Documents, transcripts, or witness statements related to the statement by a CAO employee that he was "not comfortable" engaging in the activity described on pages four and five of the January 17, 2014 Report of the Special Master.

   b. Financial records of David Duval reviewed by the Special Master, including but not limited to:
      i. three checks from a company owned by Kirk Fisher; and
      ii. evidence of payments by David Odom to David Duval.
   c. Records of expenses at the "bar" identified in the January 17, 2014 Report of the Special Master.
   d. Records of the text message from Mr. Duval to Mr. Fisher, including records demonstrating the deletion of such messages, which are referenced on page five of the January 17, 2014 Report of the Special Master.
   e. Documents related to the results of the "full audit" that page five of the January 17, 2014 Report of the Special Master states "is scheduled by an outside accounting firm."
8. Documents that led (in whole or in part) to the "Recommendations" in the January 17, 2014 Report of the Special Master, including such documents:
   a. concerning training;
   b. concerning the evaluation, audit and testing of compliance efforts;
   c. bearing on the "risk" in the CSSP's "claimant friendly ... approach";
   d. concerning the communications policy; and
   e. concerning the involvement of the Fraud, Waste and Abuse Coordinator.
9. Transcripts or other witness statements reflecting statements by Patrick Juneau, Michael Juneau, David Odom, Kirk Fisher, or other senior CAO staff concerning the settlement program's controls, including but not limited to concerning:
   a. compliance and standards of conduct;
   b. fraud prevention;
   c. claims processing;
   d. controls relating to vendors and budgeting; and
   e. information technology.
10. Documents related to the knowledge of Patrick Juneau concerning any of the facts identified in either the January 17, 2014, or September 6, 2013 Report of the Special Master.
11. All documents referenced in the September 6, 2013 Report of the Special Master.
12. Transcripts of interviews by the Special Master of CAO employees and any documents appended to or exhibits to the transcripts of such interviews.
13. Documents provided by CAO employees to the Special Master as part of, or in advance of, interviews.