IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * | MDL NO. 2179 SECTION "J" |
| THIS DOCUMENT RELATES TO 12-970 | * | HONORABLE CARL J. BARBIER |
| * * * * * * * * * * * * * | | MAGISTRATE JUDGE SHUSHAN |

**MEMORANDUM IN SUPPORT OF OBJECTION TO CONTINUATION OF SPECIAL MASTER**

Jon Andry under Federal Rule of Civil Procedure 53(A)(2) and 28 U.S.C. §455 does not consent to the continued appointment of the Special Master Louis Freeh.

On January 8, 2014, Freeh as "Special Master" wrote to the Court the attached Exhibit 1. He advises that on December 17, 2013, Williams & Connolly, one of the defense attorneys for the defendant BP had filed pleadings in the case. He fails to advise that Williams & Connolly had filed pleadings in this case as early as October 15, 2013 (Document #11726, 10/23/13). The letter reflects a joint representation between Williams & Connolly and The Freeh Group International Solutions to provide advisory functions in an ongoing civil litigation engagement.

This now places Freeh and his firms as actively working on other litigation with the two chief defense counsel for BP, Williams & Connolly and Kirkland Ellis.

Freeh references December 17th as when Williams & Connolly first appears in this case. The Freeh Group International Solutions must have been hired since that date. Regardless, there can be no disputing that whoever the client is, Williams & Connolly knew that Freeh was the Special Master in this case. If there is any confusion about that fact, Freeh's own website

identifies his appointment and directs people to the Special Master's Report as a basis to hire him (Exhibit 1).

This letter is insufficient on its face.  Rule 53 requires an affidavit.  A letter signed by Freeh with it's self interested determination that there are no "grounds for disqualification" does not meet the standard.

The law on this is very clear.  The federal statute has always been:

> "A judge should be recused when a reasonable and objective person knowing all of the facts would harbor doubts concerning the Judge's impartiality."  *Patterson v. Mobil Oil*, 335 F.3d 476, 484 (5th Cir. 2003).

The Fifth Circuit is also quoted with approval *Caperton v. A.T. Massey Cole*, 556 U.S. 868 (2009), where the Supreme Court stated:

> "The failure to consider objective standards requiring recusal is not consistent with the imperatives of due process."

Here we have the Special Master in this case acting in the role of semi-prosecutor or court advisor simultaneously receiving financial benefits through other law cases handled and perhaps controlled by counsel for the primary defendant in this case - BP.

BP has taken full advantage of Freeh's work.  As recently as Tuesday, January 21st, BP ran again in the national media an ad referring readers to The Freeh opinion and specifically championing Freeh's findings as a "former FBI director and federal judge."  These ads state:

> "Based on the evidence of serious wrong doing, Judge Freeh recommended that the conduct be referred to the U.S. Attorney's Office for further investigation under criminal statutes.  BP will continue to shine a light on and fight to stop all abuses of the settlement ..."

Independent of the "media ads" by BP, Williams & Connolly is now enlisting Freeh's help as Special Master to undermine the Claims Office (see Exhibit 2 to Objection to Continuation of Special Master).  This web of economic and professional relationships that Freeh's entities have established with BP's attorneys outstrips anything Freeh has found to be questionable at the Claims Office or in Andry's comportment.

If Freeh lives by the Code he wants to enforce on others, he should recuse himself.  His business connections to BP's attorneys meet the requirement of the "appearance of impropriety."

Today, Freeh is paid by BP in this case as a "cost", by clients using Kirkland Ellis on "related cases", and receives funds for Freeh Group International Solutions work with Williams & Connolly on this new case.  The appearance of objectivity is long gone.

Federal Rule of Civil Procedure 53(A)(2) states:

> "A master must not have a relationship to the parties, **attorneys**, action, or court that would require disqualification of a judge under 28 U.S.C. §455, unless the parties, with the court's approval, consent to the appointment after the master discloses any potential grounds for disqualification."

Andry refuses to consent.  Rule 53(B)(3) provides that the Court may appoint such a master after an affidavit disclosing all grounds for disqualification under §455.

No such affidavit exists in the Freeh January letter.  No details of any kind exist.  Freeh has an obligation as a Special Master to file such an affidavit and has failed to do so.  That affidavit must have sufficient detail to allow a thoughtful decision about "potential grounds for disqualification."  Clearly by Freeh's own admission, he does have a relationship with the "attorneys" that might otherwise require disqualification.

The Rules reflect that the burden is on the master to disclose any conflicts; not on the parties to guess whether and to what extent a conflict exist.  The same rule applies to judges and the same case law is applicable.  *In Re: Kensington International Ltd.*, 368 F.3d 289, 313-314 (3rd Cir. 2004):

> "If there is a burden of disclosure that burden is to be placed on the judge to disclose possible grounds for disqualification."

*Kensington* held that it is error for the trial court to force the burden on the petitioners to uncover a potential conflict and placing such a requirement does not further the purpose of §455(a), which "mandates at a minimum the appearance of neutrality and impartiality in the administration of justice."  The most compelling public policy consideration for this principle is that the judge is in the best position to know of the circumstances supporting a recusal motion. Andry was not allowed to waive the conflict when Freeh was first appointed because he was not considered a party.  His later complaint asking for discovery (Document #11666), was denied by this Court (Order #11729).  While no reasons were given, Freeh's objection focused on timing, Andry's failure to challenge the appointment at the outset.  That may have been true then, not now.  The details of this conflict are only known to Freeh and Williams & Connolly and probably BP.  Instructive is *Potashnick v. Port City Construction*, 609 F.2d 1101, 1114-1115 (5th Cir 1980).  The case held there is no waiver of disqualification where the judge had disclosed his relationships but failed to disclose the degree of the business dealings with the plaintiff's attorney.  In *Barksdale v. Emmerick*, 853 F.2d 1359, 1361-1362 (6th Cir. 1988), the court held a properly obtained waiver requires full disclosure on the record.  The subsections rule for disclosure and waiver must be "strictly construed."

As *Barksdale* points out, the party, in this case Andry, is given by law a full opportunity to develop a record for the basis of disqualification and is able to do so only after detailed facts are made available. Numerous issues that require specific answers are self-evident. These would include, for example:

1. When did Williams & Connolly first contact The Freeh Group International Solutions regarding the client referenced in the January letter?

2. When did the client first contact The Freeh Group International Solutions and was that done at the advice or in consultation with Williams & Connolly?

3. Exactly what work is The Freeh Group International Solutions doing that requires its efforts and is that work overseen by Williams & Connolly, or coextensively done with cooperation from Williams & Connolly?

4. What supervision does Freeh exercise over these cases?

5. Does the working relationship with this client involve cooperative endeavors and communications between The Freeh Group International Solutions and Williams & Connolly?

6. Who recommended whom Was Williams & Connolly hired and then they recommended The Freeh Group International Solutions or vice-versa?

7. Was the client advised that Freeh was the Special Master in the BP case?

8. Was BP advised by Williams & Connolly of their intention to recommend The Freeh Group International Solutions or work with The Freeh Group International Solutions?

9. Did The Freeh Group International Solutions or Freeh advise the client of his role as Special Master in the BP and Williams & Connolly representation of BP?

10. Did Williams & Connolly have any input into the client's decision to hire Freeh?

11. Did BP have to agree to this arrangement or be so advised because of the potential existence of a conflict and Freeh's continued duties as Special Master?

12. All of the financial agreements on cases where the law firms with whom Freeh is working at Williams & Connolly and Kirkland Ellis are co-counsel.

13. Andry is entitled to know what is the financial stake Freeh and his group have in these relationships while serving simultaneously as the Special Master paid through the Court's fund by BP.

14. The discovery provided to the plaintiff on December 24th included various letters between The Deepwater Horizon Group, the Court and BP. BP pushed for the appointment of someone like Freeh. They pushed that specific authority be given to that individual. The Court invited all parties to suggest names and plaintiff is entitled to know whether Freeh's name came from BP and whether or not Williams & Connolly and The Freeh Group International Solutions were already in an association at that time.

These are serious issues. Right now, the Special Master, required by law to be completely impartial and employed under the auspices of the court, is simultaneously receiving financial benefits from the two primary law firms representing the defendant BP. This is an inherent conflict and requires a serious effort to identify all of the problems. The questions cited above are illustrative. Freeh, the Special Master, knows better than anyone the kind of detail he should have provided.

A judicial officer need not even have personal knowledge of facts that would create such an appearance "so long as the public might reasonably believe that he or she knew of such facts." *Liljeberg v. Health Services Acquisition*, 486 U.S. 847, 865. The footnotes to U.S.C. Rule 53, subdivision (a)(2) and(3) state:

> "Masters are subject to the Code of Conduct for United States judges, with exceptions spelled out in the Code. Special care must be taken to insure that there is no actual or apparent conflict of interest involving a master. The Standard of Disqualification is established by 28 U.S.C. §455. The affidavit required by Rule 53(b)(3) provides an important source of information about possible grounds for disqualification but careful inquiry should be made at the time of making the initial appointment. The disqualification standards established by §455 are strict. "

The agreement in the settlement leading to the existence of the Deepwater Horizon Claims Office is based on the foundation of fairness and transparency in all financial dealings. This same standard should apply to the Special Master.  Just as those employed by the Deepwater Horizon Claims Office are required to strictly follow and observe a written code of conduct and avoid even the appearance of conflicts, the Special Master overseeing that office and lawyers filings claims before that office (Andry) must have the same transparency requirements.  The litigant Andry is entitled to discovery.  The law requires an affidavit.  On its face, Andry's objection should be granted and the work of the Special Master stopped as relates to any Andry matter.

WHEREFORE, Andry requests that the Court order the Special Master to provide an affidavit with the requirements of the federal law and specifically and in detail provide the basis for his financial arrangements with law firms and attorneys directly engaged in the defense of the primary defendant in this same litigation and the other appropriate details regarding the timing, consultation, supervision, and other matters that the Special Master, the Court, and Andry feel relevant and necessary before the appointment can be continued.  Under the current circumstances, Freeh should not be allowed to continue as Special Master and Andry is entitled to a hearing on his objections after the proper affidavit is executed.

By Attorneys:

/s/Lewis O. Unglesby
Lewis O. Unglesby (#12498)
Unglesby Law Firm
246 Napoleon Street
Baton Rouge, LA   70802
Telephone: (225) 387-0120
Facsimile: (225) 336-4355

**CERTIFICATE OF SERVICE**

   I hereby certify that on 22nd day of January, 2014, a copy of the foregoing Motion was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

            */s/Lewis O. Unglesby*
       _____
            LEWIS O. UNGLESBY