UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "DEEPWATER HORIZON" in the Gulf of Mexico, on April 20, 2010<br><br>These Pleadings apply to: *All Cases*<br><br>(Including Nos. 10-2771 and 10-4536) | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

POST-TRIAL REPLY BRIEF

Submitted by Plaintiffs and Claimants-in-Limitation
For the Phase Two Limitation and Liability Trial

Plaintiffs and Claimants-in-Limitation, including the State of Alabama and the State of Louisiana, through Plaintiffs' Co-Liaison Counsel, Coordinating Counsel for the States, the Plaintiffs' Steering Committee, and the PSC Phase Two Trial Team, respectfully submit the following Post-Trial Reply Brief, in accordance with the Court's Order of October 21, 2013 [Doc 11706], to respond to BP's Phase Two Proposed Findings and Brief,[1] and to further address specific legal and factual issues raised by the Court and by the Parties based on the evidence admitted during the Phase One and Phase Two Limitation and Liability Trial:[2]

MAY IT PLEASE THE COURT:

---

[1] *See* Docs. 12045 and 12047.

[2] For the Court's reference, Plaintiffs respectfully note their previous submissions in conjunction with the Phase One and Phase Two Limitation and Liability Trial: Plaintiffs' Phase One PROPOSED FINDINGS AND CONCLUSIONS [Doc 10459]; Plaintiffs' Phase One POST-TRIAL BRIEF [Doc 10458]; Plaintiffs' Phase One Post-Trial REPLY BRIEF [Doc 10714]; Plaintiffs' Supplemental Submissions regarding the Halliburton Guilty Plea [Docs 11511, 11512, 11625]; PLAINTIFFS' OPPOSITION TO BP'S MOTION FOR PARTIAL JUDGMENT [Doc 11604]; ALIGNED PARTIES' PROPOSED PHASE TWO FINDINGS OF FACT [Doc 12043]; Plaintiffs' Phase Two Supplemental and Amended PROPOSED FINDINGS AND CONCLUSIONS [Doc 12039]; and Plaintiffs' Phase Two POST-TRIAL BRIEF [Doc 12038].

Page | 1

**TABLE OF CONTENTS**

| | Page |
|---|---|
| Table of Contents . . . . . . . . . | 2 |
| BP Does Not Dispute that a Finding of Willful, Wanton or Reckless Conduct Should Be Made on the Series and Accumulation of Acts and Omissions Established by the Collective Evidence Admitted in Phase One and Phase Two . | 3 |
| Government Direction is Limited to the Post-Spill *Response*.  BP's Evidence on this Point Has Nothing to Do with Its Refusal to Prepare for a Blowout in Advance . | 4 |
| The Responsible Party Remains Legally Responsible, Irrespective of Government Action or Inaction . . . . . . . . . | 4 |
| There is No Evidence to Support the Notion that MMS Determined Prior to the Spill that Having a Capping Stack Available Would Not Have Been Economically Feasible . . . . . . . . | 5 |
| The Federal Regulations, by BP's Own Admission, Allow the On-Site Coordinator to Authorize the Responsible Party to Take Its Own Voluntary Actions . . | 6 |
| "Unprecedented" Does Not Mean "Unanticipated" . . . . . | 6 |
| The Propriety of Drilling Relief Wells is a Red Herring;  No One Ever Suggested That It Was "Negligent" or Improper . . . . . . . | 7 |
| BP's *Response* Plan Was Approved by MMS;  BP Did Not Submit, Nor Did MMS Ever Approve, a Source Control Plan. . . . . . . | 7 |
| BP's Egregious Conduct Relative to Phase Two is Not an "Intervening" or "Superseding" Cause . . . . . . . . . | 8 |
| Plaintiffs Agree with BP that Transocean's Phase One Conduct – Combined with BP's Own Phase One (and Phase Two) Conduct – Contributed to the Scope and Extent of the Spill . . . . . . . . . | 8 |
| BP p.l.c. is Directly Liable With, and For, the BP Responsible Parties . . | 8 |
| The Court's Jurisdiction is Founded in Admiralty . . . . . | 9 |
| Conclusion . . . . . . . . . . | 10 |
| Certificate of Service . . . . . . . . . | 14 |

**BP Does Not Dispute that a Finding of Willful, Wanton or Reckless Conduct Should Be Made on the Series and Accumulation of Acts and Omissions Established by the Collective Evidence Admitted in Phase One and Phase Two**

While BP suggests, throughout its Phase Two post-trial submissions, that BP's refusal to prepare was not wanton and reckless or that its admittedly intentional misconduct following the spill caused no damage,[3] BP does not refute the notion that the accumulation of reckless and negligent acts and omissions can and should be viewed together in order to determine whether the BP Defendants acted out of a willful or wanton conscious disregard.

Indeed, in response to the question posed by the Court at the conclusion of Phase One, BP expressly acknowledged that "a court need not, and may not, consider a particular act or omission in isolation"; rather, "a court may consider a series of related culpable acts or omissions by the defendant."[4]  This notion is echoed by BP in Phase Two.[5]

Hence, the Court can and should conclude that BP's **(i)** pre-spill refusal to plan, *combined with* BP's **(ii)** post-spill intentional misrepresentations and concealment – *combined with* BP's **(iii)** fast and reckless drilling, with little or no regard for the safe kick margin, despite multiple kicks, and in violation of the MMS Regulations requiring a safe drilling margin; **(iv)** creating, maintaining and largely ignoring a dangerously dysfunctional leadership team, which embraced the corporate culture of cutting costs and maximizing profits; **(v)** proceeding with the cement job without a set of reliable test results confirming the slurry's stability; **(vi)** proceeding with the displacement despite a failed negative pressure test; **(vii)** selecting, configuring, sequencing, modifying, and refusing to upgrade the safety critical BOP, which was not sufficient or appropriate for the Macondo well; and **(viii)** knowingly refusing to correct the persistent

---

[3] Plaintiffs, of course, strongly disagree with both of these contentions.

[4] BP PHASE ONE POST-TRIAL BRIEF [Doc 10466], p.13.

[5] *See, e.g.,* BP PHASE TWO PROPOSED FINDINGS [Doc 12047], p.445, ¶1900 ("…looking at BP's conduct as a whole…").

maintenance failures of safety critical equipment on the DEEPWATER HORIZON – evidence a willful and reckless disregard for the environment, the property rights of others, and public health and safety.[6]

**Government Direction is Limited to the Post-Spill *Response*.  BP's Evidence on this Point Has Nothing to Do with Its Refusal to Prepare for a Blowout in Advance.**

Putting aside the dispute over the U.S. Government's legal or factual responsibility for BP's actions and inactions after the blowout, it is undisputed that the Government had no supervision, authority or direction over BP with respect to the company's refusal to prepare for a deepwater blowout in the decades leading up to the Macondo disaster.  The Federal Regulations and other evidence cited by the BP Defendants on this point are contingent upon the occurrence of an oil spill event, and relate to the subsequent response.[7]

**The Responsible Party Remains Legally Responsible, Irrespective of Government Action**

Not only is the Responsible Party strictly liable for defined economic losses under OPA, but the Clean Water Act specifically provides that BP remains legally responsible for all post-spill activities, even if it disagrees with or objects to the directives or decisions of Incident Command.  *See* 33 U.S.C. §1321(c)(4)(B)(i) (exemption from liability in connection with acts and omissions performed in conjunction with National Contingency Plan does *not* apply to the

---

[6] *See* PLAINTIFFS' PHASE TWO POST-TRIAL BRIEF, pp.1-2, 5-6; (*see also,* PLAINTIFFS' OPPOSITION TO BP'S MOTION FOR PARTIAL JUDGMENT, pp.1-2, 5-6).

[7] *See, e.g.,* BP'S PHASE TWO PROPOSED FINDINGS [Doc 12047] p.10 ¶49 ("*In the event of an oil spill,* federal regulations require a participant in removal actions to implement the MMS-approved response plan under federal supervision") (emphasis supplied); p.10 ¶50 ("*After the Deepwater Horizon blowout,* the response to the Macondo oil spill was governed by the National Oil and hazardous Substances Pollution Contingency Plan") (emphasis supplied); p.48 ¶252 ("*Beginning the night of April 20, 2010,* response efforts were under the direction and control of the FOSC, and under the direction and control of Unified Area Command *from its establishment on April 23, 2010*") (emphasis supplied).

Responsible Party).[8]  As noted in Plaintiffs previously filed Motion *in Limine* on the issue, the United States cannot be at "fault" under either OPA, the Clean Water Act, or General Maritime Law in connection with the blowout or the response.  *See, e.g.,* 33 U.S.C. §1321(j)(8) ("The United States Government is not liable for any damages arising from its actions or omissions relating to any response plan required by this section"); *see also, generally,* MEMO IN SUPPORT OF MOT *IN LIMINE* TO EXCLUDE EVIDENCE REGARDING THE ALLEGED FAULT OF NON-PARTIES AND/OR IMMUNE PARTIES (INCLUDING THE UNITED STATES) [Doc 4158-1], pp.2-8.[9]  Whether the U.S. Government had legal authority or responsibility to supervise or direct the response effort is therefore irrelevant to the question of whether BP acted willfully, wantonly or recklessly in connection with the blowout, the explosion, the fire, and/or the post-spill response.

**There is No Evidence to Support the Notion that MMS Determined Prior to the Spill that Having a Capping Stack Available Would Not Have Been Economically Feasible**

Despite BP's implications to the contrary,[10] there is absolutely no evidence in the record to suggest that the MMS Director ever considered the issue of whether a deepwater capping stack was the Best Available and Safest Technology prior to the blowout and determined that it would not be economically feasible.  Indeed, BP's corporate representative admitted at trial that "building a capping stack wouldn't be a significant amount of money considering the amount of money that we spent in the deepwater."[11]

---

[8] *See also,* 33 U.S.C. §1321(c)(4)(B)(iv) (exemption from liability not available to party where there is gross negligence or willful misconduct); *and,* 33 U.S.C. §1321(c)(4)(B)(iii) (exemption does not apply to claims for personal injury).

[9] As a factual matter, moreover, the evidence is unequivocal that BP was in control of the post-spill decision-making process; the Government's role was limited to approval of BP's proposals. *See* ALIGNED PARTIES' PHASE TWO PROPOSED FINDINGS OF FACT, pp.6-11 ¶¶23-36.

[10] *See* BP'S PHASE TWO POST-TRIAL BRIEF (SOURCE CONTROL) [Doc 12045], pp.8-9.

[11] Dupree Testimony (Phase Two), 694:1-5.  Mr. Dupree further described capping device technology as feasible, well proven, and not novel prior to Macondo. *Id.,* 693:10-25.

**The Federal Regulations, by BP's Own Admission, Allow the On-Site Coordinator to Authorize the Responsible Party to Take Its Own Voluntary Actions**

BP, ignoring the significant factual record of its own independent conduct and knowledge and influence on the Government's decisions following the blowout,[12] seems to suggest that everything BP did or did not do after the spill was at the express order and direction of the U.S. However, by BP's own admission, the Responsible Party "must be included in the Unified Command structure in order to 'achieve an effective and efficient response'" and "the OSC may 'allow the Responsible Party to voluntarily and promptly perform removal actions'" – as was clearly done in this case. *See* BP PHASE TWO PROPOSED FINDINGS [Doc 12047] p.12 ¶54; *citing,* 40 C.F.R. ¶300.305.[13]

**"Unprecedented" Does Not Mean "Unanticipated"**

The fact that the scope and extent of the Macondo spill was "unprecedented" does not mean that a deepwater blowout of that nature was unpredictable, unanticipated or unforeseen. In addition to the evidence previously set forth establishing BP's conscious disregard of the known risks and likely consequences of a deepwater blowout on a well like Macondo,[14] BP itself acknowledges the foreseeability of such an event in discussing the liability of Halliburton and Transocean, who "should have realized that … the blowout would be difficult to control and require BP to undertake a variety of well control alternatives."[15] Further, BP acknowledges that:

---

[12] *See generally,* ALIGNED PARTIES PHASE TWO PROPOSED FINDINGS OF FACT, pp.6-11 ¶¶23-36, 84-92 ¶¶300-332; PLAINTIFFS PHASE TWO POST-TRIAL BRIEF, pp.11-13; TRANSOCEAN AND HALLIBURTON'S PHASE TWO POST-TRIAL BRIEF [Doc 12040] pp.2-17.

[13] With respect to source control efforts in particular, every witness who offered testimony, including Admiral Allen, Admiral Landry, MMS Representative Lars Herbst, BP Representative Earnest Bush, and BP America President Lamar McKay, agreed that BP – not the United States – was responsible for identifying, developing and implementing source control technologies. *See* ALIGNED PARTIES PHASE TWO PROPOSED FINDINGS OF FACT, pp.6-8 ¶¶24-26.

[14] *See* ALIGNED PARTIES' PHASE TWO PROPOSED FINDINGS OF FACT, pp.11-16 ¶¶37-54; PLAINTIFFS PHASE TWO PROPOSED FINDINGS AND CONCLUSIONS, pp.5-7 ¶¶3-6; PLAINTIFFS' PHASE TWO POST-TRIAL BRIEF, pp.6-7.

[15] BP PHASE TWO PROPOSED FINDINGS, p.465 ¶1969.

"Every blowout is different, and controlling a deepwater blowout is likely to be difficult."[16] Transocean and Halliburton should have realized this, but BP never did?

### The Propriety of Drilling Relief Wells is a Red Herring;  No One Ever Suggested that it Was "Negligent" or Improper

BP's evidence that drilling relief wells was standard practice in the industry is a red herring.[17] No one ever suggested that BP should *not* have drilled relief wells. The question is *what else* should BP have done?  Indeed, the relief wells did not finally seal the well until September 2010.[18] If it had been acceptable to make no source control efforts other than the drilling of the relief wells, the spill would have lasted an additional two months.

### BP's *Response* Plan Was Approved by MMS;  BP Did Not Submit, Nor Did MMS Ever Approve, a Source Control Plan.

Putting aside the legal and factual irrelevance of the Government's approval of BP's Oil Spill Response Plan,[19] it is clear that the OSRP is a *response* plan, and not a Source Control Plan.[20] Indeed, BP admits in its post-trial submissions that "**The Response Placed Focus on the Collection of Oil.**"[21]  A Source Control Plan was never submitted to, considered by, nor approved by the MMS, the Coast Guard, or any other agency of the U.S. Government prior to the Macondo disaster.

---

[16] BP PHASE TWO PROPOSED FINDINGS, p.465 ¶1970.

[17] *See, e.g.,* BP PHASE TWO PROPOSED FINDINGS, pp.15-17 ¶¶72-80.

[18] *See* BP PHASE TWO PROPOSED FINDINGS, p.7 ¶33.

[19] *See generally,* PLAINTIFFS' PHASE TWO POST TRIAL BRIEF, pp.11-13; PSC PHASE ONE POST-TRIAL BRIEF, pp.21-23; PLAINTIFFS' OPPOSITION TO BP'S MOTION FOR PARTIAL JUDGMENT, pp.15-18.

[20] *See* ALIGNED PARTIES' PHASE TWO PROPOSED FINDINGS OF FACT, pp.21-24 ¶¶74-85.

[21] BP PHASE TWO PROPOSED FINDINGS, p.46 (*see generally* pp.46-47 ¶¶238-248).

**BP's Egregious Conduct Relative to Phase Two is Not an "Intervening" or "Superseding" Cause**

BP's willful, wanton and reckless conduct relative to Phase Two does not constitute a "superseding" or "intervening" factor with respect to the fault of Transocean and/or Halliburton.[22]

**Plaintiffs Agree with BP that Transocean's Phase One Conduct – Combined with BP's Own Phase One (and Phase Two) Conduct – Contributed to the Scope and Extent of the Spill**

As set forth in Plaintiffs' Phase One Post-Trial Submissions, both BP and Transocean were wanton and reckless in the selection, configuration, modification, and refusal to upgrade and properly maintain the blowout preventer (BOP) on the DEEPWATER HORIZON.[23] Plaintiffs generally agree with BP that Transocean's conduct[24] – as well as BP's own Phase One conduct – in this regard combined with BP's post-blowout and Phase Two misconduct to extend the duration and scope of the spill.

**BP p.l.c. is Directly Liable With, and For, the BP Responsible Parties**

As set forth in Plaintiffs' Phase Two PROPOSED FINDINGS AND CONCLUSIONS at ¶¶1-22, as well as the PHASE ONE PROPOSED FINDINGS at pp.158-169, and the PHASE ONE REPLY BRIEF at pp.4-6, BP p.l.c. and its officers participated in, were responsible for the policies that contributed to, and/or otherwise knew about, approved and/or subsequently ratified the willful, wanton and reckless conduct that caused and/or contributed to the blowout, the explosion, the fire, the initial discharge of oil, and to the duration and extent of the spill.

---

[22] *See generally,* PSC PHASE ONE POST-TRIAL REPLY BRIEF, pp.6-8; PLAINTIFFS' OPPOSITION TO BP'S MOTION FOR PARTIAL JUDGMENT, p.19; BP PHASE TWO POST-TRIAL BRIEF, pp.38-40; BP PHASE TWO PROPOSED FINDINGS, pp.463-468 ¶¶1964-1979.

[23] *See generally* PLAINTIFFS' PHASE ONE PROPOSED FINDINGS AND CONCLUSIONS, pp.75-90, 155-158 (*see also* pp.36-37, 38-39, 92-103); PSC PHASE ONE POST-TRIAL REPLY BRIEF, pp.15-17 (*see also* pp.9-11).

[24] *See, e.g.,* BP'S PHASE TWO PROPOSED FINDINGS, pp.69-72 ¶¶360-378; (*see also* pp.130-136 ¶¶660-693).

**The Court's Jurisdiction is Founded in Admiralty**

Plaintiffs note that BP proposes a jurisdictional statement that is founded upon the Outer Continental Shelf Lands Act, Federal Question, and in some cases Diversity.[25]  Clearly, this Court's jurisdiction over the Transocean Limitation Action (and other actions in the MDL) rests primarily on the Court's jurisdiction in Admiralty.

---

[25] *See* BP'S PROPOSED PHASE TWO FINDINGS, p.8 ¶41.

**Conclusion**

For the above and foregoing reasons, based on the complete trial record, for the reasons set forth in Plaintiffs' Phase One POST-TRIAL BRIEF [Doc 10458], for the reasons set forth in Plaintiffs' Phase One PROPOSED FINDINGS AND CONCLUSIONS [Doc 10459], for the reasons set forth in Plaintiffs' Phase One POST-TRIAL REPLY BRIEF [Doc 10714], for the reasons set fort in Plaintiffs' Phase Two POST-TRIAL BRIEF [Doc 12038], and for the reasons set forth in the Aligned Parties' Phase Two PROPOSED FINDINGS OF FACT [Doc 12043], Plaintiffs respectfully pray that the Court enter Final Judgment and Reasons against the BP Defendants as set forth in the Plaintiffs' supplemental and amended PROPOSED FINDINGS AND CONCLUSIONS [Doc 12039].

This 24th day of January, 2014.

Respectfully submitted,

| | |
|---|---|
| /s/   Stephen J. Herman | /s/ James Parkerson Roy |
| **Stephen J. Herman**, La. Bar No. 23129 | **James Parkerson Roy**, La. Bar No.11511 |
| HERMAN HERMAN & KATZ LLC | DOMENGEAUX WRIGHT ROY |
| 820 O'Keefe Avenue | & EDWARDS, LLC |
| New Orleans, Louisiana 70113 | 556 Jefferson Street, Suite 500 |
| Telephone: (504) 581-4892 | Lafayette, Louisiana 70501 |
| Fax. No. (504) 569-6024 | Telephone: (337) 233-3033 |
| Email: sherman@hhklawfirm.com | Fax No. (337) 233-2796 |
| *Plaintiffs Liaison Counsel* | E-Mail: jimr@wrightroy.com |
| | *Plaintiffs Liaison Counsel* |

**PLAINTIFFS' STEERING COMMITTEE**

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office:  (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY  10003
Office:  (212) 558-5802
Telefax: (212) 344-5461
E-Mail:  rgreenwald@weitzlux.com

Jeffrey A. Breit
BREIT, DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office:  (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail: pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail: rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail: mike@mikespy.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office:  (334) 269-2343
Telefax: (334) 954-7555
E-Mail: rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER, HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW & ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA 70726
Office: (225) 664-4193
Telefax: (225) 664-6925
E-Mail: calvinfayard@fayardlaw.

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail: ervin@colson.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

### ADDITIONAL PSC PHASE TWO TRIAL TEAM MEMBER

Frank Petosa
MORGAN & MORGAN, P.A.
600 N. Pine Island Road, Suite 400
Plantation, Florida 33324
(954) 318-0268
E-Mail: fpetosa@forthepeople.com

### THE STATE OF ALABAMA

The Honorable Luther Strange
*Attorney General*
Corey L. Maze
*Special Deputy Attorney General*
Winfield J. Sinclair
*Assistant Attorney General*
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, AL 36130
Phone: (334) 353-4336
E-Mail: cmaze@ago.state.al.us

*Counsel for the State of Alabama, and Coordinating Counsel for the States*

## **THE STATE OF LOUISIANA**

The Honorable James D. "Buddy" Caldwell
*Attorney General*
James Trey Phillips
*First Assistant Attorney General*
Megan K. Terrell
*Assistant Attorney General*
*Section Chief –Environmental*
P.O. Box 94005
Baton Rouge, LA 70804-9005
Telephone: (225) 326-6708

Allan Kanner
Elizabeth B. Petersen
Douglas R. Kraus
Allison M. Shipp
KANNER & WHITELEY, LLC
701 Camp Street
New Orleans, LA 70130
Telephone: (504) 524-5777

T. Allen Usry
USRY, WEEKS, & MATTHEWS, APLC
1615 Poydras St., Suite 12
New Orleans, LA 70112
Telephone: (504) 592-4641

Henry T. Dart
Grady J. Flattmann
HENRY DART, ATTORNEYS AT LAW P.C.
510 N. Jefferson St.
Covington, LA 70433
Telephone: (985) 809-8093

*Counsel for the State of Louisiana, and*
*Co-Coordinating Counsel for the States*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Reply Brief has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of January, 2014.

/s/  Stephen J. Herman and James Parkerson Roy