**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | * | **MDL NO. 2179** |
| "Deepwater Horizon" in the | * | |
| Gulf of Mexico, on April 20, 2010 | * | **SECTION: J** |
| | * | |
| | * | |
| This document relates to: | * | **HONORABLE CARL J. BARBIER** |
| No. 13-6674 | * | |
| | * | **MAGISTRATE JUDGE SHUSHAN** |
| | * | |
| | * | |
| | * | |

**OPPOSITION TO MOTION TO STAY PROCEEDINGS
PENDING PARALLEL CRIMINAL INVESTIGATION**

      Mikal C. Watts and Watts Guerra LLP (collectively, "Watts") defrauded both BP and this Court by representing that they had more than 40,000 clients in MDL 2179.  Their conduct has provoked a federal investigation.  Now, they seek to use that investigation as a shield to defend against and delay BP, the party they defrauded and injured, by asking this Court to stay BP's civil lawsuit against them on the grounds of Mr. Watts' Fifth Amendment rights.  First, Watts Guerra has no right against self-incrimination under the Fifth Amendment, and thus the case against it should not be stayed.  Second, since Mikal Watts has failed to establish any extraordinary circumstances that would justify a delay that could easily last several years, this Court should deny the Motion To Stay Proceedings Pending Parallel Criminal Investigation.[1]

---

[1]    Doc. Nos. 12171 & 12171-1.  BP does not oppose this Court granting expedited consideration to Watts' motion.  *See* Mot. for Expedited Consideration, Jan. 17, 2014, Doc. No. 12173.

**ARGUMENT**

Parallel civil and criminal proceedings happen all the time.  Indeed, "[i]t is the rule, rather than the exception that civil and criminal cases proceed together."[2]  This is hardly a once-in-a-lifetime event, though this lawsuit concerns a fraud the likes of which this Court may well never encounter again.  Despite the unremarkable procedural posture of this case, however, Watts has requested "an extraordinary remedy, one which should "not . . . be granted lightly" – a stay of this civil suit.[3]  Moreover, Watts has requested this stay before he has been indicted, before he has even asserted his Fifth Amendment privilege, and before BP has been able to secure the assets it seeks to freeze via a preliminary injunction.  For these reasons, the factors identified by Watts' Motion To Stay Proceedings weigh against a stay, and this Court should not permit this obvious delaying tactic to succeed.[4]

**I.      Watts Guerra Has No Fifth Amendment Rights.**

Watts Guerra LLP – a corporate entity – has no right against self-incrimination under the Fifth Amendment.  It is well-established "that the privilege against compulsory self-

---

[2]   *Alcala v. Tex. Webb Cnty.*, 625 F. Supp. 2d 391, 397 (S.D. Tex. 2009) (internal quotation marks omitted); *see United States v. Kordel*, 397 U.S. 1, 11 (1970).

[3]   *United States v. Simcho*, 326 F. App'x 791, 792-93 (5th Cir. 2009) (internal quotation marks omitted); *see also Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012); *Weil v. Markowitz*, 829 F.2d 166, 174 n.17 (D.C. Cir. 1987).

[4]   The relevant factors are:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by a delay; (4) the private interests of and burden on the defendant; (5) the interests of the courts; and (6) the public interest.

*Alcala*, 625 F. Supp. 2d at 398-99.

incrimination should be limited to its historic function of protecting only the natural individual."[5] Indeed, this rule's origins are more than a century old,[6] and have been repeatedly reaffirmed by the Supreme Court in a variety of contexts.[7]  The Supreme Court has held that a dissolved law partnership had no Fifth Amendment right against self-incrimination as long as it possessed "an established institutional identity independent of its individual partners."[8]  Here, Watts Guerra LLP – which boasts that it employs over 140 persons in cities across Texas[9] – certainly maintains an institutional identity independent of its individual partners.  Thus, none of the arguments raised by the Motion To Stay justify a stay of BP's suit against the law firm – or, for that matter, against the Class Defendants.

## II.    The Court Should Deny the Stay Because Watts Has Not Been Indicted.

As for Mikal Watts, "the bulk of judicial authority . . . holds that stays are generally not granted before indictments have issued."[10]  And for good reason:

> A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment

---

[5]    *Bellis v. United States*, 417 U.S. 85, 89 (1974) (internal quotation mark omitted).

[6]    *See Hale v. Henkel*, 201 U.S. 43, 74-75 (1906).

[7]    *See, e.g.*, *Braswell v. United States*, 487 U.S. 99, 102 (1988) (for corporations, "it is well established that such artificial entities are not protected by the Fifth Amendment"); *United States v. White*, 322 U.S. 694 (1944) (same for labor union).

[8]    *Bellis*, 417 U.S. at 95; *see also United States v. Greenleaf*, 546 F.2d 123, 126-27 (5th Cir. 1977) (applying *Bellis* to a partnership).

[9]    *See* http://www.wattsguerra.com.

[10]   *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 380 (4th Cir. 2013); *see SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980) ("[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party ***under indictment*** for a serious offense is required to defend a civil or administrative action involving the same matter." (emphasis added)).

has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations.[11]

*Universal Elections* is instructive.  There, the district court denied the defendants' motion to stay a civil proceeding pending a possible criminal indictment concerning the same conduct.  *See* 729 F.3d at 374-75.   As the Fourth Circuit saw it, "[t]he district court's denial of defendant's motion to stay is in keeping with the bulk of judicial authority, which holds that stays are generally not granted before indictments have issued."  *Id.* at 380.  The defendants had alleged that two grand juries had been convened, that they were the targets, and that the parallel proceedings raised "substantial Fifth Amendment issues."  *Id.*  Yet the defendants "did not identify any particular Fifth Amendment conflict that had arisen," and the Fourth Circuit commended the district court for "delay[ing] ruling on any Fifth Amendment issues until those issues had been properly identified and fully briefed," *id.* – in other words, until an indictment had issued, and civil discovery had proceeded to the point where the defendants had invoked their Fifth Amendment privilege with specificity.

Similarly, in *Dresser Industries*, both the SEC and the Department of Justice were investigating suspicious foreign payments made by Dresser.  628 F.2d at 1371-72.  The SEC issued a civil subpoena seeking documents from Dresser, which it sought to quash in part based on the possibility that the Department of Justice might seek an indictment.  *Id.* at 1373-74.  The D.C. Circuit began by explaining that "[t]he civil and regulatory laws of the United States frequently overlap with the criminal laws, creating the possibility of parallel civil and criminal

---

[11]   *Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995).  Indeed, even when a defendant has been indicted, he is not necessarily entitled to a stay.  "[T]he fact that a man is indicted cannot give him a blank check to block all civil litigation on the same or related underlying subject matter." *Gordon v. F.D.I.C.*, 427 F.2d 578, 580 (D.C. Cir. 1970).

proceedings," *id.* at 1374, but that "[t]he Constitution . . . does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings," *id.* at 1375. After canvassing cases in which a stay was justified, the *Dresser* Court characterized Dresser's case as "a far weaker one" because, among other things, "[n]o indictment has been returned [and] no Fifth Amendment privilege is threatened." *Id.* at 1376. Examples of similar denials are legion.[12]

Here, Watts has shown at most "the prospect of an indictment of a number of individual[s] under investigation."[13] Thus, as in *Universal Elections* and *Dresser Industries*, Watts has presented a far weaker case for a stay than an indicted defendant would. This is especially true because Watts has not actually asserted his Fifth Amendment privilege. The affidavit of Watts' counsel states only that he "would advise Mr. Watts to invoke his constitutional privilege and decline to testify" in this case.[14]

Indeed, this case bears a strong similarity to *SEC v. First Financial Group of Texas, Inc.*, 659 F.2d 660 (5th Cir. 1981). There, the defendants in an SEC civil enforcement action sought a stay because of a Department of Justice criminal investigation that had not yet resulted in indictments. *See id.* at 666. Their primary rationale was a blanket refusal, purportedly based on the Fifth Amendment, to respond to SEC discovery requests. *Id.* at 668. The Fifth Circuit criticized the defendants' failure to "object[] to specific information sought by the SEC," explained that "a blanket assertion of the privilege is insufficient to relieve a party of the duty to

---

[12]   *E.g., Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 79 (1st Cir. 2004); *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902-03 (9th Cir. 1989); *see also Universal Elections*, 729 F.3d at 379-80 (collecting cases); *United States v. Dist. Council of N.Y.C.*, 782 F. Supp. 920, 925 (S.D.N.Y. 1992) (same).

[13]   Mot. To Stay at 6; Affidavit of Robert McDuff ¶ 4 ("[N]o indictment has been issued in connection with this ongoing investigation . . . ."), Jan. 17, 2014, Doc. No. 12171-2.

[14]   McDuff Aff. ¶ 5.

respond to questions put to him," and required the defendant to "present himself . . . for questioning, and as to each question and each record elect to raise or not to raise the defense." *Id.* (internal quotation marks omitted).[15]  "Requiring a party to object with specificity to the information sought from him permits the district court to rule on the validity of his claim of privilege." *First Fin. Grp. of Tex.*, 659 F.2d at 668.  At present, the Court cannot conduct this inquiry.

Finally, the cases which Watts cites on this point are wholly inapposite.  His reliance on *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084 (5th Cir. 1979), is misplaced for several reasons.  In *Wehling*, the **plaintiff** in the civil lawsuit believed that he was under criminal investigation and therefore sought to stay discovery of a case that he had instituted.  *See id.* at 1087.  The fact that the request came from the plaintiff, not the defendant, puts the analysis on completely different footing.  The *Wehling* Court did not need to concern itself, as this Court does, with compromising the plaintiff's right to recovery, because the plaintiff himself asked for the stay.  *Wehling* is also distinguishable because the plaintiff actually asserted his Fifth Amendment privilege in response to specific deposition questions.  *Id.* at 1085.  Here, in contrast, Watts has not even answered the Complaint, much less pled the Fifth.  Finally, *Wehling* expressly contradicts Watts' assertion that "a party should not be put in a position of having to invoke his constitutional rights in a civil case during the pendency of a federal criminal investigation."[16]  *See id.* at 1088 ("[W]e emphasize that a civil plaintiff has no absolute right to

---

[15]  *See also Universal Elections*, 729 F.3d. at 380 (no stay warranted when defendants "did not identify any particular Fifth Amendment conflict that had arisen").

[16]  Mot. To Stay at 6.

both his silence and his lawsuit.").  Other cases – not cited by Watts – also confirm that his

assertion is flatly wrong.[17]

As for *Se. Recovery Grp., LLC v. BP America, Inc.*, 278 F.R.D. 162 (E.D. La. 2012), that

case too supports BP's position.  As the opinion acknowledges, a "stay of a civil case is most

appropriate where a party to the civil case has already been indicted for the same conduct."  *Id.* at

167 (internal quotation marks omitted).  The case goes on to note, as an exception to this

ordinary rule, "***when the government seeks a stay of civil discovery***, the justification for

obtaining a stay is often ***strongest before an indictment is handed down***."  *Id.* (emphasis in

original).  The emphasis on the fact that the government was the one seeking a stay is no

accident.  Unlike a private party that can speculate only about when and whether an indictment

will come down, the government's request for a stay sends a far clearer signal to the Court.

Thus, the lack of an indictment strongly favors allowing BP's civil suit to move forward.

### III.   BP Would Be Prejudiced by a Stay.

In addition, an indefinite stay of this civil proceeding would cause BP irreparable harm.

In this action, BP seeks the return of a substantial sum of money and, in the interim, a stay of a

second distribution totaling approximately $1.3 billion.  The plan for distributing those

remaining funds, according to a declaration filed by a member of the Plaintiffs' Steering

Committee in MDL 2179, is expected to be completed by February 2014.[18]  Recognizing that

those funds, once disbursed, will never be fully recovered, BP has asked this Court to issue a

---

[17]  *See First Fin. Grp. of Tex.*, 659 F.2d at 666 ("There is no general federal constitutional,
statutory, or common law rule barring the simultaneous prosecution of separate civil and
criminal actions . . . against the same defendant involving the same transactions."); *Universal
Elections*, 729 F.3d at 379; *Molinaro*, 889 F.2d at 902; *Dresser Indus.*, 628 F.2d at 1375.

[18]  *See* Opp. to Mot. for a Prelim. Inj. at 31, Jan. 17, 2014, Doc. No. 12164; Declaration of
Joseph F. Rice ¶ 20, Jan. 16, 2014, Doc. No. 12164-4 (filed under seal).

preliminary injunction freezing those assets.[19]  If BP cannot continue pursuing its rights

vigorously, and particularly if this Court does not decide its motion for a preliminary injunction

and instead stays this case, then BP will suffer severe prejudice.

   As a practical matter, once the distribution of the remaining settlement funds occurs, BP

almost certainly will never recover those assets – a fact already recognized by the Fifth Circuit

with respect to another provision of the settlement agreement.  *In re Deepwater Horizon*, 732

F.3d 326, 345 (5th Cir. 2013).[20]  Indeed, granting a stay now – and allowing those funds out the

door – would eviscerate "the court's ability to render a meaningful decision on the merits."[21]

   Thus, this factor too favors denying a stay.[22]

## IV.   The Harm to BP Outweighs Any Harm to Watts.

   The central burden Watts identifies is that "he may be forced to choose between his civil

discovery obligations and his right to assert a Fifth Amendment privilege."[23]  As discussed in

greater detail *supra*, this showing is insufficient to justify denying BP's right to pursue its case.

The fact is that Watts has not actually invoked his right not to testify under the Fifth Amendment

– and it is not clear that he will and, if so, on what subjects.  Thus, neither BP nor the Court can

---

[19]   BP's Mot. for a Prelim. Inj., *BP Exploration & Production Inc. et al. v. Watts et al.*, No. Civ. 13-6674, Doc. No. 2-3 (E.D. La. Dec. 17, 2013).

[20]   *See also Janvey v. Alguire*, 647 F.3d 585, 599-600 (5th Cir. 2011); *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 561 (5th Cir. 1987).

[21]   *Dixon*, 835 F.2d at 562.

[22]   *See Microfinancial, Inc.*, 385 F.3d at 78 (plaintiff "had an obvious interest in proceeding expeditiously" because its "prospects of recovery were ebbing"); *Molinaro*, 889 F.2d at 903 (plaintiff would be prejudiced by delay because defendant "continued to attempt to dispose of his assets"); *Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 5 (1st Cir. 1983) (upholding denial of a stay when plaintiff would have to wait an indefinite period of time before being able to collect any judgment from financially strapped defendants).

[23]   Mot. To Stay at 8.

determine what allegations or questions he is willing to answer, and which he contends would implicate his Fifth Amendment rights.  But "[a] party is not entitled to decide for himself whether he is protected by the fifth amendment privilege."  *First Fin. Grp. of Tex.*, 659 F.2d at 668.  And this Court has no basis on which to decide the extent to which Watts has validly asserted the privilege.[24]

This Court should recognize Watts' gamesmanship for what it is:  an attempt to obtain a stay of this civil proceeding based on a Fifth Amendment privilege without actually invoking that privilege and assuming its negative consequences.  As this Court well knows, the assertion of Fifth Amendment privilege supports an adverse inference against the party claiming the privilege in civil litigation.[25]  Just like the plaintiff in *Wehling* had "no absolute right to both his silence and his lawsuit," 608 F.2d at 1088, Watts has no right to enjoy the benefits of the Fifth Amendment privilege without absorbing its downside.

## V.      The Court's Interests and the Public Interest Disfavor a Stay.

Watts perpetrated a fraud not just on BP, but also on this Court.  Thus, this Court has a powerful interest in discerning the full extent of Watts' fraud, and how it affected the Seafood Compensation Program – a settlement program that proceeds under this Court's supervision.  In addition, there is a strong public interest in preventing all forms of fraud.[26]  Notably, the government has not moved to intervene in this case to ask for a stay of these proceedings – a

---

[24]   *See First Fin. Grp. of Tex.*, 659 F.2d at 668; *Universal Elections*, 729 F.3d at 380.

[25]   *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *F.D.I.C. v. Fid. & Deposit Co. of Md.*, 45 F.3d 969, 977 (5th Cir. 1995).

[26]   *See, e.g.*, *SEC v. First Fin. Grp. of Tex.*, 645 F.2d 429, 435 (5th Cir. Unit A 1981) ("significant public interest in . . . preventing future securities frauds"); *In re Crawford*, 194 F.3d 954, 959-60 (9th Cir. 1999) (public interest in preventing bankruptcy fraud).

strong indication that the public interest is best served in this case by "prompt investigation of both civil and criminal claims." *Dresser Indus.*, 628 F.2d at 1375.[27]

## VI.   Watts Himself Admits that His Primary Defense in This Case Will Not Overlap with His Criminal Defense.

Nor does the final factor – the overlap between this civil case and any future criminal action – favor granting a stay, for two reasons.

First, as the cases already cited establish, the fact that a civil case and a possible criminal proceeding concern the same underlying event or transaction does not support a stay when the defendant has not made a strong showing of prejudice – particularly when a defendant ties its assertions of prejudice to a generic invocation of the Fifth Amendment privilege.[28]

Second, Watts himself has asserted that his defense will be to show a "causation fallacy in these allegations."[29]   In other words, Watts' primary defense to BP's civil lawsuit seems to be denying that any of his misrepresentations caused harm to BP.  There is a good chance there will not be significant overlap between the proofs on this contested fact and the elements the government will have to establish in any criminal prosecution of Watts.  For example, if Watts is indicted under the federal wire fraud statute, the government would need to prove only that Watts "devised or intend[ed] to devise any scheme or artifice to defraud" and, in connection with that scheme, used "wire, radio or television communication in interstate or foreign commerce."[30]

---

[27]   In contrast, Watts relies on *Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962), and *Southeast Recovery Group*, 278 F.R.D. 162 – both cases where the **government** sought a stay.  *See Campbell*, 307 F.2d at 480; *Se. Recovery Grp.*, 278 F.R.D. at 165.

[28]   *See Universal Elections*, 729 F.3d at 380; *Microfinancial, Inc.*, 385 F.3d at 78-79; *Molinaro*, 889 F.2d at 902-03; *First Fin. Grp. of Tex.*, 659 F.2d at 668; *Dresser Indus., Inc.*, 628 F.2d at 1375-76.

[29]   Mot. To Stay at 1.

[30]   18 U.S.C. § 1343.

10

Crucially, the government would not need to prove "[t]he common-law requirements of 'justifiable reliance' and 'damages,'" which "have no place in the federal fraud statutes." *Neder v. United States*, 527 U.S. 1, 24-25 (1999).[31]

## CONCLUSION

For the reasons explained above, the six-factor test strongly supports allowing BP to move forward with this lawsuit.  Thus, the Court should deny Watts' Motion To Stay Proceedings Pending Parallel Criminal Investigation.

January 24, 2014                                        Respectfully submitted,

James J. Neath                                          */s/ Kevin M. Downey*
Mark Holstein                                           Kevin M. Downey
BP AMERICA INC.                                         F. Lane Heard III
501 Westlake Park Boulevard                             Margaret A. Keeley
Houston, TX  77079                                      WILLIAMS & CONNOLLY LLP
Telephone:  (281) 366-2000                              725 Twelfth Street, N.W.
Telefax:  (312) 862-2200                                Washington, DC  20005
                                                        Telephone:  (202) 434-5000
                                                        Telefax:  (202) 434-5029

---

[31]   *See also United States v. Reifler*, 446 F.3d 65, 96 (2d Cir. 2006) (wire fraud does not require that "the defendant . . . completed or succeeded in his scheme to defraud, and the scheme need not have resulted in actual injury to the scheme's victims").

Daniel A. Cantor
Andrew T. Karron
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Telephone:  (202) 942-5000
Telefax:  (202) 942-5999

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 662-5985
Telefax:  (202) 662-6291

Jeffrey Lennard
Keith Moskowitz
DENTONS US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL  60606
Telephone:  (312) 876-8000
Telefax:  (312) 876-7934

**OF COUNSEL**

    _/s/ Don K. Haycraft_
S. Gene Fendler (Bar #05510)
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone:  (504) 581-7979
Telefax:  (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000
Telefax:  (312) 862-2200

Jeffrey Bossert Clark
Steven A. Myers
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 879-5000
Telefax:  (202) 879-5200

**ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.**
**AND BP AMERICA PRODUCTION COMPANY**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, on this 24th day of January, 2014.

<u>/s/ Don K. Haycraft</u>
Don K. Haycraft