**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | * | **MDL NO. 2179** |
| "Deepwater Horizon" in the | * | |
| Gulf of Mexico, on April 20, 2010 | * | **SECTION: J** |
| | * | |
| | * | |
| This document relates to all actions. | * | **HONORABLE CARL J. BARBIER** |
| | * | |
| | * | **MAGISTRATE JUDGE SHUSHAN** |
| | * | |
| | * | |
| | * | |

**MEMORANDUM IN SUPPORT OF
MOTION TO ORDER PRODUCTION OF CERTAIN DOCUMENTS
BY SPECIAL MASTER FREEH AND TO SET SCHEDULE**

The Court has now filed on the docket a second report by Special Master Louis Freeh, which details additional misconduct in the Court-Supervised Settlement Program ("CSSP"), including improprieties that occurred even after the release of his first report.  This second report also provides a series of recommendations showing that—nearly 22 months after the Claims Administrator was appointed—the CSSP continues to lack basic controls and requires the daily supervision of the Special Master.

Taken together, the disclosures in Special Master Freeh's two reports are stunning.  They no doubt are of concern to members of the class and the public at large, and they are especially alarming to BP,[1] which bears the cost for the CSSP's waste, inefficiency, errors, and corrupt practices.

Pursuant to Federal Rule of Civil Procedure 53, all parties have the right to file objections or to seek to "modify" Special Master Freeh's latest report.  Accordingly, on January 21, BP

---

[1]    We refer to BP Exploration & Production, Inc., BP America Production Company, and BP p.l.c. as "BP."

wrote to Special Master Freeh, requesting that he provide certain documents to assist BP's evaluation in whether to make such a filing and, if so, its appropriate content.[2]  Special Master Freeh's team advised BP that it should direct its request to the Court.[3]  BP, therefore, respectfully moves this Court for an order (1) directing Special Master Freeh to produce the documents requested in BP's letter (including, by way of example, documents cited in his reports, documents already disclosed to others, and documents related to his findings and recommendations) and (2) ensuring an appropriate schedule to permit Special Master Freeh the time in which to produce responsive materials and to permit BP to a make an appropriate filing thereafter.

## BACKGROUND

The Court appointed Special Master Freeh to conduct "an independent, external investigation" of the events that led to the resignation of Lionel Sutton, because "[t]his type of investigation cannot be effectively and timely addressed by an available district judge or magistrate judge of this district."[4]  The Court made the appointment pursuant to Federal Rule of Civil Procedure 53.  The Court gave Special Master Freeh three mandates:  to perform the independent investigation relating to Lionel Sutton's resignation, to find facts "as to any other possible ethical violations or other misconduct within the CSSP," and to "examin[e] and evaluat[e] the internal compliance program and anti-corruption controls within the CSSP, and

---

[2]   Rec. Doc. 12193-1, attached hereto as Exhibit 1.

[3]   Jan. 22, 2014 Letter, attached hereto as Exhibit 2.

[4]   Order, July 2, 2013, Rec. Doc. 10564.

mak[e] any necessary recommendations to design and to implement additional such controls, policies, procedures, and practices to ensure the integrity of the CSSP."[5]

Special Master Freeh's September 6, 2013 report ("First Report") addressed the first and second mandates.[6]  In light of the misconduct, conflicts, and inefficiencies identified, BP responded to the First Report by requesting that the Court temporarily suspend the payment of claims until the Special Master could recommend and implement necessary reforms pursuant to his third mandate.[7]  The Court had responded to the First Report by instructing Special Master Freeh to continue his work, "including examining and investigating conflicts of interest by parties involved in the CSSP and assisting the Claim's Administrator with implementation of conflict of interest policies."[8]  On January 17, 2014, Special Master Freeh issued a second report, which makes additional factual findings and four recommendations.[9]

The disclosures in this latest report are deeply troubling.  The report reveals that more misconduct has been unearthed at the top levels of the CSSP, and that misconduct continued after release of the First Report.[10]  The Second Report describes conduct by senior CSSP officials at a New Orleans "bar" that was not only "inconsistent with development of a proper ethical tone from senior staff of an organization performing an important function for the Court,"

---

[5]   *Id.*

[6]   Report of Special Master Louis J. Freeh at 89, Sept. 6, 2013, Rec. Doc. 11287; Order, Sept. 6, 2013, Rec. Doc. 11288.

[7]   BP Response to the Report of Special Master Freeh, Sept. 23, 2013, Rec. Doc. 11471.

[8]   Jan. 17, 2014 Report of Special Master Louis J. Freeh ("Second Report"), Rec. Doc. 12174, at 1; *see also* Rec. Doc. 11288.

[9]   Second Report at 6-7.

[10]   *Id.* at 3-4.

but also "create[d] risks for an office entrusted to administer a multi-billion dollar settlement fund."[11]  And the "bar" was not just any bar, but one that was a CSSP claimant, which received more than $500,000 in August 2013.[12]  The Second Report also implies that senior CSSP staff attempted to interfere with Special Master Freeh's investigation, communicating with one another after being instructed not to, with one top official telling the other, "[b]e careful of mentioning anything about talking to me."[13]

The Second Report's recommendations indicate that the CSSP staff are still not adequately and properly trained in the ethical standards that should guide their conduct; that the CSSP's "compliance efforts" are still not sufficiently "evaluate[d], audit[ed], and test[ed]"; and that basic procedures governing the CSSP's communication with claimants are still deficient.[14]  These are fundamental weaknesses that go to the heart of the CSSP's operations.

The findings and recommendations in the Second Report, of course, come on top of the First Report's findings of serious deficiencies—not only deficiencies in procedures and controls, but also conflicts of interest and outright corruption at the top levels of the CSSP.[15]  The misconduct identified in that report was so serious that Special Master Freeh recommended a criminal investigation, concluding that the conduct of two of the settlement program's in-house counsel "may have violated the federal criminal statutes regarding fraud, money laundering,

---

[11]   *Id.* at 4-5.

[12]   *Id.* at 5.

[13]   *Id.* at 5, n.1.

[14]   *Id.* at 6-7.

[15]   *See generally* First Report.

conspiracy or perjury."[16]  The report further made factual findings that, among other things, "raise[d] serious questions" about the policies and procedures used by the settlement program in evaluating claims for fraud.[17]

Upon receipt of the Second Report, counsel for BP on January 21, 2014, requested certain documents from Special Master Freeh related to his findings and recommendations.  BP agrees with the Special Master's recommendations as far as they go; however, as BP explained to him, the "facts in the report suggest that the deficiencies identified have had and will continue to have a significant impact on BP's interests and thus may merit more drastic action."[18]  BP further explained that it was "evaluating whether the facts set forth in your reports merit recommendations in addition to those set forth in those reports."[19]  BP requested then, and requests now, the following documents:

1.      The documents cited in Special Master Freeh's First Report.[20]

2.      The documents already provided by the Special Master to Lionel Sutton, Christine Reitano, Jon Andry, Glen Lerner, and related entities pursuant to Orders of this Court that directed the production of a number of categories of "relevant" documents.[21]

---

[16]  *Id.* at 2.

[17]  *Id.* at 58.

[18]  Ex. 1 at 2.

[19]  *Id.*

[20]  Ex. 1, Attach. A(11).

[21]  Ex. 1, Attach. A(1); *see* Order, Sept. 19, 2013, Rec. Doc. 11442; Order, October 16, 2013, Rec. Doc. 11664; Order, Oct. 24, 2013, Rec. Doc. 11729; Order, Dec. 19, 2013, Rec. Doc. 12026.

3.     The documents relating to the factual basis for the disclosures and

recommendations in Special Master Freeh's Second Report.[22]

4.     Certain other key transcripts, witness statements, and additional documents

relevant to the Special Master's findings as to misconduct, conflicts of interest,

and deficiencies in internal controls.[23]

Special Master Freeh's office responded, "[T]he Special Master works at the direction of

Judge Barbier in this matter, we respectfully suggest that you bring your request to the Court for

review and consideration."[24]  Accordingly, BP files this motion with the Court.

## ARGUMENT

### A.     BP Has a Compelling Need to Evaluate the Requested Documents

Federal Rule of Civil Procedure 53 permits any "party" to file a "motion . . . to modify" a

special master's report.[25]  BP is not only a "party" here, but is owed fiduciary and contractual

obligations by the Claims Administrator and Trustee of the Settlement Fund.  BP is the entity

that funds the CSSP, and its rights are implicated by the Special Master's report and

recommendations.  When the CSSP allows fraudulent claims to be paid or vendor costs to soar, it

is BP that must pick up the check and that suffers injury.  When Special Master Freeh reports

gross misconduct by senior CSSP staff and pervasive failures in controls, it is BP that suffers the

harm.  BP has a unique and particularly compelling interest in ensuring the proper administration

of the settlement program.

---

[22]   Ex. 1, Attach. A(2)-(8).

[23]   Ex. 1, Attach. A(9)-(10), (12)-(13).

[24]   Ex. 2.

[25]   Fed. R. Civ. P. 53(f)(2).

The recommendations in the Second Report are prudent, but even more actions may be necessary.  The persistent misconduct and control deficiencies identified in the Special Master's First and Second Reports are shocking.  That would be true for any program established to administer settlement funds, but even more so for the CSSP, which is a court-supervised program charged with implementing one of the most significant settlements in recent history, affecting individuals and businesses across the entire Gulf region.  Almost two years after the program's creation, the Second Report points to continuing and fundamental institutional weaknesses in the CSSP's management—weaknesses that may explain why ethical improprieties at the highest level of management continue, and continue to be uncovered.

As the party with perhaps the greatest interest in ensuring that the operation of the settlement program is ethical, efficient, and fair, BP is evaluating whether more comprehensive measures must now be taken.  Access to the underlying documents is important to that evaluation.  It is not only warranted by the particular circumstances here, but required under Rule 53 and other governing law.

### B.   Rule 53 and Due Process Require Disclosure of the Requested Documents

Traditional notions of due process apply to the reports of special masters.  *Ruiz v. Estelle*, 679 F.2d 1115, 1162-63, *amended in part, vacated in part*, 688 F.2d 266 (5th Cir. 1982).  Rule 53 thus requires a court, acting on a special master's report or recommendations, to "give the parties notice and an opportunity to be heard," and permits a party to file objections to, or motions to adopt or modify the report.  Fed. R. Civ. P. 53(f).  A court reviews "de novo" a special master's factual findings and recommendations, and may affirm, modify, reject, or resubmit the report to the master with instructions.  *Id.*

To facilitate the review of a special master's report and recommendations, there is a strong presumption that the materials underlying a special master's report will be provided to the

parties, absent compelling circumstances to the contrary.  The Advisory Committee's Notes to

the 2003 Amendment to Rule 53 explains:

> ***A basic requirement . . . is that the master must make and file a complete record of the evidence considered in making or recommending findings of fact on the basis of evidence***.  . . .   [T]he master should provide all portions of the record preserved . . . that the master deems relevant to the report.  The parties may designate additional materials from the record, and may seek permission to supplement the record with evidence.   The court may direct that additional materials from the record be provided and filed. . . .

Fed. R. Civ. P. 53 Advisory Committee's Notes (2003 Amendment) (emphasis added).[26]   The

court may withhold the underlying documents from the parties, but the Advisory Committee

states that "this step should be taken only for the most compelling reasons."  *Id*.  The

presumption in favor of disclosure follows logically from the source of the special master's

authority, which is the court.  When a special master conducts a fact-finding investigation, it

---

[26]   *See United States v. City of New York*, 2013 WL 2477182 at *5 (E.D.N.Y. June 7, 2013) (describing process for review of special master's report and recommendation, including submission of "the evidence upon which the Special Masters relied in making their determinations" for each objecting claimant). Although not decided under Rule 53, cases reviewing the actions of special masters appointed under the National Vaccine Injury Compensation Program, pursuant to 42 U.S.C. § 300aa-12, conclude that a party should be permitted to review and rebut evidence not in the record but uncovered and relied upon by the special master.  *See Hines v. Sec'y of Health & Human Servs.*, 940 F.2d 1518, 1526 (Fed. Cir. 1991) (holding that "fundamental fairness" requires "an opportunity to discredit and rebut" evidence relied upon by special master); *Davis v. Sec'y of Health & Human Servs.*, 94 Fed. Cl. 53, 65-66 (Fed. Cl. 2010) *aff'd*, 420 F. App'x 973 (Fed. Cir. 2011) (finding that it was improper for special master to rely on study that was not in the record where the parties were not on notice that it would be considered, and noting that "core concepts of due process" apply to proceedings before a special master); *Snyder ex rel. Snyder v. Sec'y of Health & Human Servs.*, 2009 WL 332044 at n.8 (Fed. Cl. Feb. 12, 2009) ("[S]pecial masters advise the parties when they intend to consider evidence derived from their own efforts . . . and permit the parties to comment on such evidence"); *Campbell v. Sec'y of Health & Human Servs.*, 69 Fed. Cl. 775, 776–77, 781–82 (2006) (finding that it was "fundamentally unfair" for special master to introduce evidence not on the record without providing a hearing).

stands in the shoes of the court.  Were the court to conduct the investigation itself, of course, it would have to do so in court and on the record.[27]

      This Court already has recognized the need for certain non-parties to obtain access to relevant documents from Special Master Freeh's investigation.  *See* Order, Sept. 18, 2013, Rec. Doc. 11412 (granting The Andry Law Firm "access to information relevant to portions of the Special Master's Report concerning The Andry Law Firm"); Order, Sept. 19, 2013, Rec. Doc. 11442 (granting Lionel Sutton, Christine Reitano, Jon Andry, and Glen Lerner "access to information relevant to portions of the Special Master's Report concerning each of them").  Magistrate Judge Shushan has similarly granted "access to all records relevant to" the individuals and entities objecting to the findings in the First Report.  Order, Dec. 19, 2013, Rec. Doc. 12026.

      Special Master Freeh has not objected to providing these *non*-parties with discovery "relevant" to his findings concerning them.[28]  He has acknowledged that due process requires such discovery.  *See* Rec. Doc. 11627 (noting that the procedures outlined by the Court, allowing limited discovery to enable informed objections to Special Master Freeh's findings and recommendations, "fully comply with any notion of due process").  Non-party individuals and entities objecting to the findings of the First Report have been given access to those portions of the record relevant to them.[29]  BP—which is actually a party in this case, and the party with

---

[27]  *See* 28 U.S.C. § 753(b)(3) (requiring court proceedings to be recorded when requested by "any party to the proceeding"); *see also SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993) (discussing the common law presumption of public access to judicial proceedings and records, which "serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness" (internal quotations mark omitted)).

[28]  *See* Response of Special Master, Sept. 18, 2013, Rec. Doc. 11408; Opposition of the Special Master, Oct. 10, 2013, Rec. Doc. 11627; Opposition of the Special Master, Oct. 14, 2013, Rec. Doc. 11639.

[29]  Rec. Docs. 11442, 11664, 11729, 12026.

perhaps the greatest stake in the ethical and efficient operation of the CSSP—is similarly entitled

to access the evidence supporting Special Master Freeh's findings and recommendations of

concern to it, under Rule 53 and principles of due process.  Providing BP with access is the only

proper and fair course.

### C.    BP's Requests Concern Relevant Evidence

BP's requests are targeted to documents relevant to the Special Master's factual findings

and recommendations that are of particular concern to BP.  There is no "compelling reason[]" to

withhold this information from BP at this point.  Fed. R. Civ. P. 53 Advisory Committee's Notes

(2003 Amendment).

First, BP is entitled to the documents cited in Special Master Freeh's First Report,[30]

which are already before the Court and which underlie all the Special Master's

recommendations.[31]  The First Report contained more than 500 footnotes specifying the evidence

that supported Special Master Freeh's factual findings.  BP should be permitted to review not

only Special Master' Freeh's summary, but the underlying evidence itself.  BP has a direct,

compelling interest in understanding the precise contours of the misconduct, conflicts of interest,

and other improprieties described in the report.  This evidence clearly informed both the

additional fact disclosures and the specific recommendations made by the Special Master in his

latest report.  BP is entitled to those materials to assess Special Master Freeh's recommendations

and determine whether the facts warrant more drastic steps.

Second, there is no reason to withhold from BP the same documents already provided by

the Special Master to Lionel Sutton, Christine Reitano, Jon Andry, Glen Lerner, and related

---

[30]    *See* Ex. 1, Attach. A(11).

[31]    *See* Rec. Doc. 11639 (noting that "those documents referenced in the Report" are "before the
Court").

entities.[32]  This Court has previously found that those materials were "relevant" to the findings in the First Report concerning unethical and potentially criminal conduct.  The interview transcripts, interview notes, and documents that this Court has ordered disclosed again clearly inform Special Master Freeh's recommendations with respect to conflicts of interest and appropriate communications between the CSSP and claimants.  Access to these relevant materials would similarly inform BP's assessment of whether further recommendations are required.

Third, for similar reasons, the documents underlying the disclosures and recommendations in Special Master Freeh's Second Report should be disclosed to BP.[33] Because it alone bears and is injured by the costs of fraud, favoritism, and other improprieties in the CSSP, BP should be permitted to object to the Second Report (in the form of additional recommendations) on an informed basis.  Of special importance are the documents underlying Special Master Freeh's four recommendations as to controls.  BP agrees with the thrust of the Special Master's recommendations and welcomes efforts to establish controls and efficiencies that have been consistently lacking.  But the question is whether additional action is also required. Access to the evidence underlying these recommendations would provide BP with the "full picture" of the "analytical process by which [Special Master Freeh's] ultimate findings were reached."[34]  It would significantly advance BP's evaluation of whether Special Master Freeh's current recommendations are adequate to ensure the integrity of the CSSP or whether BP must exercise its rights under Rule 53 to file a motion to modify the Special Master's report.

---

[32]   *See* Ex. 1, Attach. A(1); *see* Rec. Docs. 11442, 11664, 11729, 12026.

[33]   *See* Ex. 1, Attach. A(2)-(8).

[34]   Rec. Doc. 11639.

Fourth, BP should additionally receive the other requested transcripts, witness statements, and documents relevant to the Special Master's findings as to misconduct, conflicts of interest, and deficiencies in internal controls.[35]  These transcripts and witnesses statements from CSSP staff, as well as the other requested documents, are directly relevant to BP's evaluation of whether more action is now required.  These documents relate both to the specific misconduct and the fundamental deficiencies in controls and other policies and procedures that have been revealed.  The First Report explained, for instance, that Special Master Freeh's interviews "had the dual purpose of identifying other potential ethical violations and misconduct . . . and providing a framework for the design and implementation of additional CSSP compliance programs, and anti-fraud, anti-corruption and conflict of interest controls, policies, procedures, and practices."[36]  BP's evaluation of whether greater action is now required hinges both on the persistent misconduct and the absence of adequate controls, policies, procedures, and practices.  These are precisely the documents that will assist in BP's determination.

## D.   The Court Should Extend the Time to Seek Modification of the Special Master's Report

Under Rule 53, a party is provided 21 days to move to modify the Special Master's report, "unless the court sets a different time."  Fed. R. Civ. P. 53(f)(2).  Because BP is directing its request to the Court in the first instance, it can make no representations as to what the Special Master believes is a reasonable schedule for production of materials (although BP assumes that most of the requested documents are readily available and exist in producible form).

---

[35]   *See* Ex. 1, Attach. A(9)-(10), (12)-(13).

[36]   First Report at 14.

The Court should enter an appropriate schedule so that the Special Master can produce the documents, and BP can review and take the production of documents into consideration before any filing is made.

**CONCLUSION**

BP respectfully requests that the Court (1) direct Special Master Freeh to produce the requested documents and (2) that the Court enter an appropriate schedule allowing the Special Master to make production, BP to review the same, and BP to make any filing in response to the Second Report based upon its review of the underlying evidence.

January 29, 2014

James J. Neath
Mark Holstein
BP AMERICA INC.
501 Westlake Park Boulevard
Houston, TX  77079
Telephone:  (281) 366-2000
Telefax:  (312) 862-2200

Respectfully submitted,

  _/s/ Kevin M. Downey_
Kevin M. Downey
F. Lane Heard III
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000
Telefax:  (202) 434-5029

Daniel A. Cantor
Andrew T. Karron
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Telephone:  (202) 942-5000
Telefax:  (202) 942-5999


Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 662-5985
Telefax:  (202) 662-6291


Jeffrey Lennard
Keith Moskowitz
DENTONS US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL  60606
Telephone:  (312) 876-8000
Telefax:  (312) 876-7934


*OF COUNSEL*

    */s/ Don K. Haycraft*
S. Gene Fendler (Bar #05510)
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone:  (504) 581-7979
Telefax:  (504) 556-4108


Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000
Telefax:  (312) 862-2200


Jeffrey Bossert Clark
Steven A. Myers
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 879-5000
Telefax:  (202) 879-5200


**ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.
AND BP AMERICA PRODUCTION COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 29th day of January, 2014.

/s/ Don K. Haycraft
Don K. Haycraft