## STONE PIGMAN WALTHER WITTMANN L.L.C.

### COUNSELLORS AT LAW

546 CARONDELET STREET
NEW ORLEANS, LOUISIANA 70130-3588
(504) 581-3200
FAX (504) 581-3361
www.stonepigman.com

OUR FILE NUMBER

PHILLIP A. WITTMANN

64,271

January 29, 2014

**BY E-MAIL AND EXPRESS DELIVERY**

Kevin M. Downey
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

Re:    In re Deepwater Horizon, MDL 10-2179

Dear Mr. Downey:

We represent Mr. Patrick A. Juneau and, on his behalf, write in response to your letter to Special Master Freeh dated January 21, 2014. Although Mr. Juneau takes no position regarding your request to review materials in the Special Master's files, which was the ostensible purpose of your letter, we feel compelled to respond to the spurious and gratuitous allegations you have asserted against the Court Supervised Settlement Program ("CSSP") and the Claims Administrator Office ("CAO").

Before addressing each of your individual allegations in more detail, we offer the following general observations:

*First*, each of the incidents on which your allegations are based is isolated from and unrelated to the others. Your attempt to conflate them into a pattern of conduct or conspiracy is misleading to say the least.

*Second*, the CAO has promptly and effectively addressed each of the incidents as they came to light. Your contrary insinuations are unfounded.

*Third*, the CAO has worked closely with the Freeh Group to identify and address issues affecting the performance of the CSSP. Your allegation that the CSSP and the CAO have failed to implement recommendations of the Freeh Group is uninformed.

*Fourth*, your allegation that "[a]" strong tone on ethical issues from top management is lacking" is directly contradicted by the First Freeh Report's finding that Mr. Juneau established a "clear ethical 'tone at the top' and sound written policies" (First Freeh Report at 8)

1149161v1

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE
    2

January 29, 2014


*Finally*, your expressed concern about the CSSP operating "slowly [and] inefficiently" lacks any credibility given the efforts BP has undertaken to completely stop the processing and payment of claims.

We now will address your allegations in more detail.

### BP is "a target of mail and wire fraud."

You cite pages 82-84, 87 of the First Freeh Report as the basis for this allegation. Pages 82-84 simply contain a discussion of the law relating to mail and wire fraud. The only reference to mail and wire fraud on page 87 is a recommendation that the District Court refer the Casey Thonn claims to the United States Attorney "to determine whether Mr. Thonn violated the federal mail fraud and wire fraud statutes in connection with the submission of his Seafood Compensation Program claims: Shrimp Boat Captain and Shrimp Vessel Owner." The basis for this recommendation appears to be the Special Master's observation that Mr. Thonn's claims displayed "fraudulent characteristics" that should have been detected and investigated during the processing of the claims. (First Freeh Report at 10-11).

Notably, the Special Master has never suggested that his suspicions of fraud relating to Mr. Thonn's claims, or the fact that the fraudulent characteristics were not detected and investigated, have any connection to any perceived wrongdoing by anyone within the CSSP or the CAO, including Mr. Sutton and Ms. Reitano. His report simply suggests that the "fraudulent characteristics" of the claims, which were filed through Mr. Thonn's legal counsel, should have been detected and investigated "as part of BG's initial eligibility process"[1] and, later, during a CSSP internal audit of the claims. (*Id.*) We do not know whether Mr. Thonn's claims ultimately will be determined to have been fraudulent.[2] We do know, however, that these claims are two of tens of thousands of the claims received and processed by the CSSP.

---

[1]    BrownGreer was appointed by the Court on the recommendation of BP and the Plaintiffs Steering Committee ("PSC").

[2]    We have no information as to whether the Court made the recommended referral or whether Mr. Thonn's claims are being investigated by the United States Attorney. We note that Mr. Freeh's recent motion to require Mr. Thonn to disgorge the payments made to him is based on Mr. Freeh's discovery that tax returns submitted by Mr. Thonn in support of his claims were not filed with the IRS, which discovery occurred only after Mr. Freeh obtained a Court order compelling Mr. Thonn to sign a release authorizing the IRS to provide Mr. Thonn's tax records to Mr. Freeh.

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

3

January 29, 2014

### *BP is a target of "money laundering schemes."*

You cite pages 84-87 of the First Freeh Report as the basis for this allegation. Pages 84-86 of the report simply contain a discussion of the law relating to money laundering and certain provisions of the Louisiana and Nevada Rules of Professional Conduct. Pages 86-87 of the report include a recommendation that the Court provide a copy of the report to the United States Attorney "to determine whether Mr. Sutton, Ms. Reitano, Mr Lerner, and Mr. Jon Andry violated the federal criminal statutes regarding fraud, money laundering, and conspiracy in connection with the attorney referral fee payments to Mr. Sutton while he was working at the CAO."

As you know, the Special Master reported no evidence that anyone else was involved in the payments of referral fees to Mr. Sutton. We note that the Special Master expressly opined that "Mr. Sutton deliberately concealed the nature and receipt of the Thonn referral fee from Mr. Patrick Juneau and the CAO when he had a clear obligation to disclose them" and that he "set up an elaborate and circuitous channel" to receive the fee as a means to in furtherance of this concealment. (*Id.* at 5). As you also know, on learning about the referral fees, Mr. Juneau promptly notified the Court, obtained Mr. Sutton's resignation and terminated Ms. Reitano. Notably,"[t]he Special Master did not find any evidence that either Mr. Sutton or Ms. Reitano directly manipulated the valuation of claims by accessing the DHECC database." (*Id.* at 4) Moreover, the Special Master has not cited any evidence that BP, or anyone else, was harmed by Mr. Sutton's alleged money laundering.

### *BP is a target of "conspiracy."*

You cite pages 86-87 of the First Freeh Report as the basis for this allegation. The only reference to conspiracy on these pages is the same recommendation, discussed above, that the Court provide the First Freeh Report to the United States Attorney for investigation. As noted above, the Special Master reported no evidence that anyone else at the CSSP or the CAO was involved in the payment of referral fees to M. Sutton. Moreover, the Special Master has not cited any evidence that BP, or anyone else, was harmed by the alleged payment of the referral fees to Mr. Sutton.

### *There have been" multiple acts of perjury."*

You cite pages 84-87 of the First Freeh Report as the basis for this allegation. The only reference to perjury on these pages is the same recommendation at page 87 that the United States Attorney "should also examine whether any of these attorneys [Sutton, Reitano, Lerner and Jon Andry] have committed perjury, or have made any materially false statements or omissions to the CAO, Special Master, and/or the Court." To the extent that acts of perjury occurred, the CSSP and the CAO were their victims, not their perpetrators. Moreover, as noted above, there has been no indication that BP, or anyone else, was harmed by any alleged act of perjury.

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

4

January 29, 2014

### *There has been a "possible obstruction of justice."*

You cite footnote 1 at page 5 of the Second Freeh Report as the basis for this allegation. This footnote describes text communications between Mr. Fisher and Mr. Duval after the Special Master's staff had asked Mr. Fisher to avoid contact with Mr. Duval. Apparently, Mr. Fisher deleted the text messages but then promptly provided the Special Master access to his text account so that the deleted messages could be recovered. It is regrettable that Mr. Fisher, who resigned from the CSSP on December 18, 2013, failed to follow the request of the Special Master's staff. Nevertheless, there has been no indication by the Special Master that Mr. Fisher's actions were intended to obstruct the Special Master's investigation or that they in fact did obstruct the investigation. Nor is there any evidence to suggest that Mr. Juneau or anyone else at the CSSP and the CAO had anything to do with Mr. Fisher's actions.

### *Senior CAO staff "engaged in highly problematic conduct."*

You cite page 5 of the Second Freeh Report as the basis for this allegation. This and the preceding page of the report describe David Duval, Kirk Fisher and David Odom visiting and incurring "significant expenses" at a New Orleans bar while accompanied by CAO subordinates. The report noted that the bar received more than $500,000 for a business economic loss claim, and expressed concern that Messrs. Duval, Fisher and Odom "did not adequately consider" that their actions "were inconsistent with development of a proper ethical tone . . ., set an inappropriate tone for interaction with subordinate staff . . . .[and] created risks of financial distress, [which could] lead to susceptibility to bribery and other vulnerabilities."

There has been no suggestion by the Special Master or anyone else that this alleged behavior resulted in any loss to the CSSP or to BP, or that it led to any attempted bribery or similar vulnerability. Nevertheless, as you know, Mr. Duval resigned from the CAO on October 7, 2013 and Messrs. Fisher and Odom resigned from the CAO on December 18, 2013.

### *A current and former CSSP employee attempted to conceal evidence from the Special Master.*

You cite footnote I at page 5 of the Second Freeh Report as the basis for this allegation, which simply duplicates your "possible obstruction of justice" allegation addressed above. There has been no indication by the Special Master that the text communications in question, or their deletion by Mr. Fisher, were intended to conceal evidence from the Special Master.

### *The CSSP has failed to implement the Special Master's recommendations.*

As the basis for this allegation, you cite the fact that the Second Freeh Report contains some of the same recommendations as the First Freeh Report. As noted above, your allegation is uninformed. In fact the CAO has worked closely with the Special Master to implement a number of his recommendations. Examples include:

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

5

January 29, 2014

- Expanding the Fraud Program and increasing the fraud prevention and detection staff within the CAO to over 60 people;

- Instituting independent evaluation of processes and auditing the accuracy of claim determinations;

- Undertaking additional mandatory staff training regarding potential misconduct and conflict of interest issues;

- Establishing a confidential hotline for the anonymous reporting of possible conflicts, ethical violations or misconduct by staff or vendors; and

- Identifying staff to respond to calls for claims information and to develop a mechanism to document and memorialize communications.

In closing, we would remind you that Mr. Juneau does not work for BP, the PSC or the Special Master. He works for the Court and he will continue to honor his obligations to implement the parties' settlement as fairly, objectively and efficiently as possible. We are copying the Court and the same parties copied on your letter.

Very truly yours,

Phillip A. Wittmann

Of Stone Pigman Walther Wittmann L.L.C.

cc:   The Honorable Carl J. Barbier
      The Honorable Sally Shushan
      The Honorable Louis J. Freeh
      Patrick A. Juneau
      Stephen J. Herman *
      James P. Roy *
      Michael S. Walshe *

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE
6

January 29, 2014


      Mary Olive Pierson *
      Lewis O. Unglesby *
      Pauline F. Hardin *
      William W. Taylor, III *
      William P. Gibbens *
      Stephen M. Gele *
      Douglas S. Draper *
      Harry Rosenberg *
      Kyle Schonekas *


*      Transmitted by e-mail only.