IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 |
| | | SECTION: "J" |
| This document relates to No. 12-970 | * * * | Honorable Carl J. Barbier |
| | * | Magistrate Judge Shushan |

*********************************************************************

**MEMORANDUM IN SUPPORT OF MOTION TO VACATE THE ORDER APPOINTING LOUIS FREEH AS SPECIAL MASTER AND TO DISQUALIFY SPECIAL MASTER LOUIS FREEH**

**MAY IT PLEASE THE COURT:**

Claimant The Andry Law Firm, LLC respectfully submits this *Memorandum in Support of Motion to Vacate the Order Appointing Louis Freeh as Special Master and To Disqualify Special Master Louis Freeh*. First, this Court should vacate its *Order* appointing Mr. Freeh as special master pursuant to Rule 60, as the newly discovered evidence of a conflict of interest just disclosed by Mr. Freeh constitutes material and controlling evidence that clearly would have produced a different result if it were presented before the original *Order* was signed appointing Mr. Freeh as Special Master. Second, because Special Master Freeh has a clear conflict of interest which causes his impartiality to reasonably be questioned, this Court must disqualify Mr. Freeh pursuant to Federal Rule of Civil Procedure 53(A)(2) and 28 U.S.C. § 455.

## INTRODUCTION

On June 21, 2013, Mark Holstein, counsel for BP, delivered to the court via e-mail a letter requesting the appointment of a Special Master. R. Doc. No. 10761-7. In his letter, Mr. Holstein stated that "the cost of such an investigation will be borne by BP as part of the administrative costs

1

associated with the settlement agreement." R. Doc. No. 10761-1, at 2. The court notified the parties of its intent to appoint Louis Freeh of Freeh Group International Solutions, L.L.C. ("FGIS") as Special Master on June 25, 2013. R. Doc. No. 10564, at 1. The court then ordered Mr. Freeh's appointment on July 2, 2013. R. Doc. No. 10564, at 1. Notably absent from this order is express mention that any of the Show Cause parties, including The Andry Law Firm, consented to the appointment of Mr. Freeh, as required by Fed. R. Civ. P. 53. *See* R. Doc. No. 10564. In fact, The Andry Law Firm has consistently objected to the appointment of Special Master Freeh, most recently in its *Initial Objections and Response to the Freeh Report. See* R. Doc. No. 12172.

That same day, Mr. Freeh submitted an affidavit "for the purpose of whether FGIS has any conflicts related to the parties and counsel in the case." R. Doc. No. 10564, at 9. In that affidavit, Mr. Freeh admitted:

1. FGIS was "working with" Kirkland & Ellis, the law firm representing BP, "on behalf of a client on matters which are wholly unrelated to the case";

2. FGIS ran a "prospective search" in June 2013 to undertake work on behalf of Stone Pigman, another firm representing the defendant, BP;

3. Pepper Hamilton, L.L.P., the law firm of which Mr. Freeh is a partner and chair of the Executive Committee, is co-counsel with Kirkland & Ellis "in one engagement." Kirkland & Ellis also has a regular business relationship with Pepper Hamilton in which Pepper Hamilton prepares mortgage enforceability opinion letters; and,

4. Mr. Freeh's former law partner at Freeh, Sporkin & Sullivan, L.L.P., Judge Stanley Sporkin, served as Ombudsman for BP America, Inc. R. Doc. No.

2

10564, at 9-11.

Based on this disclosure, Mr. Freeh concluded that "there are no grounds for disqualification under 28 U.S.C. § 455 "that would prevent me from serving as Special Master in this matter." R. Doc. No. 10564, at 12. Absent from Mr. Freeh's conclusion is any analysis or reasoning as to how he reached such conclusion. *See* R. Doc. No. 10564.

On January 8, 2014, Mr. Freeh addressed a letter to the court disclosing another potential source of conflict. R. Doc. No. 12116, at 1. In that letter, Mr. Freeh discussed how, on December 17, 2013, Williams & Connolly L.L.P. filed a motion on behalf of BP Explorations & Production, Inc. R. Doc. No. 12116, at 1. Mr. Freeh admitted that Williams & Connolly "represents a client which has engaged [FGIS] to provide advisory functions in an on-going engagement unrelated to Case [*sic*] and not involving any of the parties to this Case." R. Doc. No. 12116, at 1. Without discussing any factual basis for how the cases were unrelated, and without disclosing the amounts paid to FGIS by Williams & Connolly L.L.P., Mr. Freeh again summarily concluded that there are "no grounds for disqualification ... that would prevent [him] from serving as Special Master in this matter." Mr. Freeh proclaims this conclusion, despite the fact that Williams & Connolly L.L.P. is contemporaneously representing BP in this matter, and in fact, sent a letter to Special Master Freeh requesting documents without seeking an order from this Court. R. Doc. 12193.1. This Court should note that his disclosure was made in a letter filed into the record of this matter rather than by affidavit, as required by Fed. R. Civ. P. 53. More disturbing is that Mr. Freeh seeks to usurp this Court's constitutional duty to determine whether Mr. Freeh's multiple business relationships with BP's attorneys present an appearance of impropriety that would demand his disqualification pursuant to 28 U.S.C. § 455.

As this Court can see, there are now four potential sources of conflict related to Special

Master Louis Freeh serving as Special Master in this case. Yet, Mr. Freeh continues to assert that there are no grounds for disqualification that would prevent him from serving as Special Master in this matter. It is high time for this Court to intervene. As Loyola University New Orleans College of Law Professor Blaine LeCesne noted in a recent WWLTV news article, it should not be Mr. Freeh's place to conclude that his and his firm's overlapping agendas with BP's attorneys do not present grounds for disqualification that would prevent him from serving as Special Master in this matter. *See* David Hammer, "More alleged misconduct in BP oilspill settlement program," WWLTV News, (Jan. 17, 2014, 10:32 pm, updated Jan. 20, 2014, 10:17 am), http://www.wwltv.com/news/More-alleged-misconduct-in-BP-settlement--240960591.html. Professor LeCesne further stated, "I think that there's at least a specter of a potential conflict and I hope something is done rather than to simply accept Mr. Freeh's unilateral conclusion, without explanation, that he's not biased." *Id.* Although the business relationship of Special Master Freeh to B.P. has been questioned, only a cursory affidavit and letter have been produced to date. The Andry Law Firm respectfully submits that "something" should be done now.

## LAW AND ARGUMENT

As the United States Supreme Court has stated, "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). Fairness, of course, requires the absence of actual bias in the trial of cases. *Id.* But also, our system of law has always endeavored to prevent even the probability of unfairness. *Id.*

**I. Because Mr. Freeh Chose Not to Disclose Relevant Material Grounds for Disqualification that Would Have Changed the Result of His Qualification Hearing, this Court's *Order* Appointing Mr. Freeh Must Be Vacated.**

Pursuant to Federal Rule of Procedure 60(b)(2), a court "may relieve a party . . . from a final judgment, order, or proceeding for . . . newly discovered evidence which by due diligence could not

4

have been discovered in time to move for a new trial under Rule 59(b)." To prevail on a motion to vacate based on newly discovered evidence under Rule 60(b)(2), the movant must show that it exercised due diligence in obtaining the information, and that the evidence is material and controlling and clearly would have produced a different result if present before the original judgment. *Goldstein v. MCI WorldCom*, 340 F.3d 238, 257 (5th Cir. 2003). Here, Mr. Freeh did not disclose his conflict until January 8, 2014, over six (6) months after this Court issued its July 2, 2013 *Order* appointing him as Special Master, and over four (4) months after Mr. Freeh issued the *Report of Special Master Louis J. Freeh*, which made recommendations that serious sanctions be applied to the Show Cause Parties. The Andry Law Firm would not have had any way of obtaining this information prior to the appointment of Special Master Freeh, as the newly discovered evidence was all under the control of Mr. Freeh. Furthermore, such information is clearly material and controlling, sufficient to produce a different result if presented before the original judgment, as this conflict would have substantially impacted Liaison Counsel's or the Plaintiffs' Steering Committee's decision to consent to the appointment of Mr. Freeh. As such, this Court should vacate its *Order* appointing Special Master Freeh and permit a new special master to be proposed and/or objected to as necessary.

After vacating its *Order*, this Court should hold a hearing under Fed. R. Civ. P. 53 to offer the Plaintiffs' Steering Committee and the Show Cause Parties an opportunity to consent or object to the appointment of Louis Freeh as Special Master in this case.

## II. Federal Rule of Civil Procedure 53(a)(2) and 28 U.S.C. § 455(a) Require Mr. Freeh's Disqualification as Special Master.

As pointed out in The Andry Law Firm's *Initial Objection and Response to the Freeh Report*, The Andry Law Firm never consented to the appointment of the Special Master in the first

place, as required by Federal Rule of Procedure 53(a)(1).[1] This objection becomes only more adamant upon Mr. Freeh's recent disclosure of his conflict of interest manifested by his business relationship with Williams & Connolly, L.L.P. Federal Rule of Civil Procedure 53(a)(2) provides that, absent the parties' consent and the court's approval, a special master must not have a relationship to the parties, attorneys, action, or court, that would require disqualification of a judge under 28 U.S.C. § 455 . . . ."[2] Under that statute, a special master is subject to disqualification where he "has personal bias or prejudice concerning a party," or "in any proceeding in which his impartiality might reasonably be questioned" 28 U.S.C. § 455(a); (b)(1).

As the Fifth Circuit has noted, "the protection of the integrity and dignity of the judicial process from any hint or appearance of bias is the palladium of our judicial system." *United States v. Columbia Broadcasting System, Inc.*, 497 F.2d 107, 109 (5th Cir. 1974). Thus, Section 455(a) requires neither a showing of subjective bias nor a showing of actual bias. Rather, its purpose is "to promote public confidence in the integrity of the judicial process" and "to promote confidence in the judiciary by avoiding even the <u>appearance</u> of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988) (emphasis added); *see also Liteky v. United States*, 510 U.S. 540, 548 (1994) (describing § 455(a) as a "catchall" recusal provision covering more than the specific illustrations of 28 U.S.C. § 144). The standard for disqualification under § 455(a) is an objective one: the question is whether a reasonable and objective person,

---

[1]Consent is an essential requirement under Fed. R. Civ. P. 53, as consent is the method by which a special master is permitted to perform the functions of a federal judge without being nominated by the President and approved by the Senate, as required by Article III of the United States Constitution.

[2]Consistent with the explicit language of Fed. R. Civ. P. 53, courts have held that special masters are subject to the same strict standard as judges under 28 U.S.C. § 455(a). *See, e.g., Lister v. Commissioners Court, Navarro County*, 566 F.2d 490, 493 (5th Cir. 1978); *Jenkins v. Sterlacci*, 849 F.2d 627, 630-32 (D.C. Cir. 1988).

knowing all of the facts, would harbor doubts concerning the judge's credibility. *Patterson v. Mobil Oil*, 335 F.3d 476, 484 (5th Cir. 2003). As such, a judge (or in this case a special master) faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street.

Here, a reasonable person with the knowledge of the business relations between Mr. Freeh and Williams & Connolly, L.L.P., as well as the parallel relationship between Mr. Freeh and Kirkland Ellis would certainly question Mr. Freeh's impartiality in a multi-district litigation involving those firms as chief counsel for a litigant, thus mandating Mr. Freeh's disqualification pursuant to Section 455(a). Mr. Freeh has benefitted and continues to benefit financially from his business relationships with the two chief defense counsel for BP, Williams & Connolly and Kirkland Ellis. Therefore, Mr. Freeh has a strong incentive to maintain that relationship in good standing, perhaps to the detriment of the fairness and impartiality of Mr. Freeh's reference in this case.

It is obvious that Mr. Freeh's continuing participation in a case where his business partners are counsel for one of the parties gives rise to at least an appearance of partiality. It is well-settled that where, as here, a special master has an interest—particularly a financial interest—in a matter in which he is to serve as a neutral, public confidence in the integrity of the judicial system is already eroded. *See, e.g., Potashnick v. Port City Const. Co.*, 609 F.2d 1101 (5th Cir. 1980) (ruling that trial judge's failure to disqualify himself constituted an abuse of sound judicial discretion where the judge had a business relationship with counsel for the plaintiff regarding investments that were unconnected to the litigation); *Jenkins*, 849 F.2d at 631-32 (where the special master was involved in a different case in which he represented a party that had interests adverse to those of another party that was represented by the same law firm as a party to the suit in which he served as special master, such scenario raised a substantial question as to whether the special master should have been

disqualified, although in that case, the objection had been waived); *Smith v. Sikorsky Aircraft*, 420 F.Supp. 661 (C.D. Cal. 1976) (judge disqualified despite the absence of any personal bias or prejudice because the plaintiff's law firm was associated with an attorney who in the past had acted as attorney and counsel for the judge); *Isidor Paiewonsky Assocs., Inc. v. Sharp Properties, Inc.*, 1990 WL 303427, at *6 (D.V.I. April 6, 1990) (disqualifying special master based on his financial interest gained from representing a party to the proceeding in another matter).

The appearance of partiality is compounded by recent events, filings, and correspondence. On January 21, 2014, Kevin M. Downey, an attorney at Williams & Connolly, drafted a letter to Mr. Freeh requesting the disclosure of documents related to Mr. Freeh's investigation. R. Doc. No. 12193-1. The Mr. Freeh quickly responded and advised Mr. Downey to file a motion with the Court requesting production. (Letter from Gregory Paw to Kevin M. Downey, Esq., Jan. 22, 2014). BP, through Mr. Downey and Williams & Connolly, filed its *Motion to Order Production of Certain Documents by Special Master Freeh and to Set Schedule* on January 29, 2014. R. Doc. No. 12254. Thus, Mr. Freeh, in his capacity as Special Master in this litigation, who has a business relationship with Williams & Connolly, is corresponding with Williams & Connolly, in their capacity as counsel for BP in this litigation. Clearly, this creates an appearance of partiality.

The appearance of partiality is further compounded here by the fact that BP is paying Mr. Freeh to serve as Special Master in this case. Furthermore, the payments to Mr. Freeh as Special Master are anything but transparent. It is unknown how many millions of dollars have been received by FGIS, as nothing has been filed into the record, nor have any public hearings been held, regarding the payments. In addition to these conflicts, both FGIS and Pepper Hamilton receive revenue from BP's law firms. Mr. Freeh has not even suggested, and has certainly not established, that he is not directly or indirectly receiving personal benefits from these payments by BP's attorneys.

Lastly, The Andry Law Firm's *Motion* is undoubtedly timely. The Andry Law Firm did not remain silent after becoming aware of all relevant facts, nor did it waive its right to seek recusal by consenting to the appointment of Mr. Freeh at the time he was appointed. Under Section 455(e), counsel may waive the right to recusal only after a full disclosure on the record of the basis for disqualification. In this case, Mr. Freeh did not mention his connection to Williams & Connolly L.L.P. until January 8, 2014, thus failing to fully disclose the basis on which a reasonable person might "harbor doubts about the magistrate's partiality." *Potashnick*, 609 F.2d at 1111. Therefore, The Andry Law Firm did not waive its right to seek recusal of Special Master Freeh, or to refuse to consent to the appointment of Special Master Freeh based on his relationship with Williams & Connolly L.L.P.

## CONCLUSION

For the foregoing reasons, The Andry Law Firm respectfully requests that this Honorable Court grant its *Motion to Vacate the Order Appointing Louis Freeh as Special Master and To Disqualify Special Master Freeh* and vacate the *Order* appointing Mr. Freeh as Special Master and order that a hearing be held as to whether Louis Freeh should be reappointed as Special Master under Fed. R. Civ. P. 53, with the Plaintiffs Steering Committee and Show Cause Parties offered the opportunity to consent or object, and/or whether Louis Freeh should be disqualified as Special Master in the above-captioned matter. At the very least, Mr. Freeh must be ordered to satisfy the dictates of Fed. R. Civ. P. 53 so that this Court, not Mr. Freeh, can adjudicate whether Mr. Freeh should remain as Special Master in this case.

Respectfully submitted,

/s/ Stephen M. Gelé
**RANDALL A. SMITH, T.A. (#2117)**
**STEPHEN M. GELÉ (#22385)**
**SARA E. PORTER (#34190)**
-OF-
**SMITH & FAWER, L.L.C.**
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Telecopy: (504) 525-2205

*Counsel for Claimant*
*The Andry Law Firm, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing motion has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 31st day of January, 2014.

/s/ Stephen M. Gelé