IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * | MDL NO. 2179 |
| | * | SECTION: "J" |
| This document relates to No. 12-970 | * | Honorable Carl J. Barbier |
| | | Magistrate Judge Shushan |
| | * * * | |

MEMORANDUM IN SUPPORT OF
MOTION TO RELEASE HOLD ON PAYMENT TO THE ANDRY LAW FIRM

**MAY IT PLEASE THE COURT:**

The claim filed by the Andry Law Firm, L.L.C. ("The Andry Law Firm") has been adjudicated and has been due and owing for months. The hold on payment of the claim, which was placed without hearing, should be released.

**I.      The Claim of The Andry Law Firm Has Been Fully Adjudicated**

The Andry Law Firm filed its claim *pro se* with the Deepwater Horizon Court Supervised Settlement Program ("CSSP") in August of 2012.  The accounting firm of Kushner LaGraize, L.L.C., using The Andry Law Firm's financial documents, including monthly financial statements, annual tax returns, and payroll documentation, had independently determined the claim to be $7,908,460.75.  On March 20, 2013, more than eight (8) months after the filing of the claim, the DHECC issued an Eligibility Notice, finding that The Andry Law Firm was entitled to an award in the amount of $7,648,722.34.

The DHECC accounting experts, which included the accounting firms of Postlethwaite & Netterville and PriceWaterhouse Coopers, calculated the claim to be $7,648,722.34.  The Andry Law Firm agreed to the DHECC's calculation.  BP appealed that award, arguing that the claim

should be re-evaluated due to a "calculation error."   In reality, BP appealed based upon "alternative causation" and "smoothing."  This Honorable Court had issued orders on March 5, 2013, April 9, 2013, and April 24, 2013, forbidding BP those grounds for appeal.[1]

On June 4, 2013, the DHECC Appeal Panel upheld the initial compensation finding and awarded The Andry Law Firm $7,818,693.95.  The panel stated that it had: "independently reviewed the file material submitted in connection with this appeal and after conferences have unanimously determined that the award should be upheld."

BP had fourteen (14) days from the date of the panel decision of June 4, 2013 to request discretionary review.  BP failed to do so.  The *Notice Of Filing Of The Economic And Property Damages Settlement Agreement As Amended On May 2, 2012, And As Preliminarily Approved By The Court On May 2, 2012* clearly states that "Once the Appeal Panelist or Appeal Panel issues a decision, it shall be final."  Rec. Doc. 6430.  The settlement between BP and The Andry Law Firm became perfected.  The Andry Law Firm's claim therefore became due and payable on June 18, 2013.

Demand for payment was made by The Andry Law Firm that day in an email stating:

---

[1] *See* Section 5 of *Class Counsel's Comments on the Freeh Report* (Rec. Doc. 11463); *see also* Rec. Docs. 9232 and 9538.  As a fully adjudicated claim the award should not be adversely affected by later rulings or stay orders of this Court or the United States Fifth Circuit Court of Appeal touching upon "alternative causation" and "smoothing," which address claims in process and on appeal.  However, The Andry Law Firm acknowledges that this Honorable Court, in response to a ruling of the United States Fifth Circuit Court of Appeal, issued an Order stating:

> The Claims Administrator … shall temporarily suspend the issuance of final determination notices and payments of BEL claims, pending resolution of the BEL issues that are the subject of the pending remand. This suspension shall also apply to claims currently in the claims appeal process.

Rec. Doc. 11928; *see also* R. Doc. 12055.

If this Court interprets this stay order to apply to a claim, like the claim of The Andry Law Firm, which reached final determination and was upheld through the appeals process, but was put on "hold" by the Claims Administrator, then The Andry Law Firm requests that the "hold" be lifted such that the only impediment to payment would be the temporary stay order.

> BP had fourteen days from the date of the panel decision dated June 4, 2013 to ask for discretionary review. BP failed to do so. Therefore, the Andry Law Firm claim is due and payable. Accordingly, The Andry Law Firm respectfully requests that the Claims Administrator pay to The Andry Law Firm $7,818,693.95 without delay.[2]

The CSSP's investigation of The Andry Law Firm's claim was exhaustive. The extensive, redundant, and independent review of The Andry Law Firm's claim was described by Patrick A. Juneau, Claims Administrator, in his July 2, 2013 letter to the Court, attached as Exhibit "5" to BP's Memorandum in Support. *See* Rec. Doc. 10761-6.[3] The Andry Law Firm's claim first underwent the standard review process that applies to all claims. The numbers prepared by Kushner LaGraize, L.L.C. were reviewed by the CSSP's independent accounting experts at Postlethwaite & Netterville and PriceWaterhouse Coopers. After that, the CSSP issued an Eligibility Notice, finding that The Andry Law Firm was entitled to an award. *Id.* at 3.[4] BP appealed that award, over The Andry Law Firm's objection. However, the CSSP Appeal Panel unanimously upheld the initial calculation on June 4, 2013. *Id.*

---

[2] *See* email from Gibby Andry to Pat Juneau issued June 18, 2013, R. Doc. 12172-2.
[3] This Court has also commented on the quality control imposed by the Claims Center:

> Because we know there are multiple layers of review in this program, as I appreciate it. I mean, I am not over there every day looking at what they're doing, but I have a general understanding of the way it works. The claims come in, somebody goes through the paperwork ... it goes to an analyst of some sort, and then it ultimately goes to an accounting team, it's randomly allotted to an account ....
> And beyond all of that, as I understand it, if someone is awarded a claim, the letter goes out, the determination letter goes out, you, BP, your client has a right to object, to appeal to an appeal panel, ultimately to appeal, seek discretionary review of the Court ...
> So with that being the case, it's hard for me to fathom how any single person over there, or two person over there could – I mean, we would have to imagine some grand conspiracy hwere there were dozens of people over there engaged to influence a single claim. It just seems not very likely at all.

Transcript of Hearing at 9-10, In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010, Docket No. MDL-2179.
[4] Although the CSSP's amount was lower than the amount calculated by Mr. Kushner, The Andry Law Firm agreed to the CSSP's calculation.

Nonetheless, because of allegations lodged against Lionel Sutton, The Andry Law Firm's claim was singled out for additional scrutiny. PriceWaterHouse Coopers performed a second review, and "[t]he Claims Administor's Quality Control Team … conducted its own review." *See* Rec. Doc. 10761-6 at 4. In Mr. Juneau's words, "[a] few 'non-material exceptions' were noted," as a result of this additional review, "but nothing that affected the final award calculation." *Id.* Indeed, Mr. Juneau confirmed that The Andry Law Firm's "file is properly documented with bank statements, etc." that properly verify The Andry Law Firm's claim. *Id.*

Further establishing that the adjudication of the claim by The Andry Law Firm is final, The Andry Law Firm formally signed the acceptance of the claim on or about July 18, 2013. *See* September 20, 2013 Production, at SM-01-TALF000123-000134, R. Doc. 12172-1.

However, since June 18, 2013, the claim by The Andry Law Firm has not been in the claims or appeal process. Therefore, the claim is a perfected settlement pursuant to the terms of the master settlement agreement.[5] The claim is *res judicata*.

The doctrine of *res judicata* requires that the equitable defense of unclean hands must be dismissed by this Court. In *CIBC Mellon Trust Co. v. HSBC Guyerzeller Bank AG*, 56 A.D.3d 307 (N.Y. App. 1st 2008), the court held that the defendant's affirmative defense of unclean hands was barred by *res judicata* because the parties had already litigated the issue before the New York court in an English court. *Id.* at 308. The court reasoned that, just because the defendants chose to default on the issue rather than litigate, it did not prevent the court from barring the defendants' unclean hands doctrine. A later case, *Avicenna Overseas*, cited *CIBC* and held that "a defense need not have actually been raised in the earlier proceeding to be subject to

---

[5] *See* footnote 1, *supra*.

*res judicata*, so long as it could have been raised." *RA Global Services, Inc. v. Avicenna Overseas Corp.*, 843 F.Supp. 2d 386, 389 (S.D.N.Y. 2012), *citing CIBC*, 56 A.D.3d at 308.

Thus, courts have held that the affirmative defense of unclean hands was barred by *res judicata* because judgment had already been entered. The same result should apply here, where application of the unclean hands doctrine should be foreclosed by *res judicata*, as the claim has been fully adjudicated and unclean hands could have been raised during the claim adjudication process, but was not. *See* ftnt. 2, *supra*, and related discussion.

## II.    Due Process Was Denied In The Seizure Of The Adjudicated Award.

Despite the final adjudication of the claim, Appeals Liaison Michael Juneau held payment of the award to The Andry Law Firm at the request of Claims Administrator Pat Juneau. Rec. Docs. 10761-1 at 16-18, 10761-6 at 3. Apparently, the claim was held based upon the false conflation of The Andry Law Firm with AndryLerner, L.L.C. propounded by BP. Further, the payment of the award was held without any presentation of evidence or any evidentiary hearing. In fact, no order has been issued halting the payment of the fully adjudicated claim of The Andry Law Firm. Rather, to date, The Andry Law Firm has been denied due process, as it has not been permitted to respond to the allegations against it through any sort of an evidentiary hearing.[6]

The United States Constitution guarantees that government shall not "deprive any person

---

[6] After the seizure by "hold" of the fully adjudicated award, the appointed Special Master attempted to justify the seizure of the amounts owed The Andry Law Firm through innuendo in the *Report of Special Master Louis J. Freeh* ("*Freeh Report*"), R. Doc. 11287. However, the contentions of the *Freeh Report* fail to meet the standards of the Federal Rules of Evidence. *See Initial Objections and Response of The Andry Law Firm to the Freeh Report*, R. Doc. 12172. The statements in the *Freeh Report* are hearsay, or hearsay within hearsay, or even hearsay within hearsay to multiple degrees. *Id.* The Special Master failed to conduct any form of an evidentiary hearing. *Id.* Further, even the inadmissible contentions of the *Freeh Report* fail to prove that The Andry Law Firm has "unclean hands." *Id.* The *Freeh Report* wrongfully assumes that there was some impropriety in a *pro se* claimant calling the Claim Center to query about the status of a claim. *Id.* The *Freeh Report* further attempted to justify the hold of The Andry Law Firm's adjudicated claim by concluding, without any proper evidence, that "Mr. Sutton's direct intervention to expedite The Andry Law Firm claim was related to the DHECC issuing the notice of eligibility on March 20, 2013." *Id.; see Freeh Report*, R. Doc. 11287, p. 6.

of life, liberty, or property without due process of law." U.S. CONST., amend. XIV.  Evidentiary hearings as an avenue of ensuring due process have consistently been guaranteed when an individual's property rights are at stake.  For example, in *Goldberg*, the Supreme Court of the United States held that evidentiary hearings are required when the state is terminating monetary payments to a citizen.  *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970).  In *Goldberg*, the state attempted to terminate the plaintiff's welfare benefits without granting the plaintiff an oral evidentiary hearing in which he could examine witnesses and cross-examine opposition witnesses.  *Id.* at 261.  The court reasoned that under the U.S. Constitution and its guaranteed due process, the plaintiff was able to show that the government had no real interest in denying the plaintiff at least a hearing when denying him "important rights."  *Id.* at 266.

Although *Goldberg* has been distinguished in other cases where an individual's rights are not as important, the Andry Law Firm's right to its claim easily meet the "importance" threshold set forth by the court in *Goldberg*.  *Id.* at 262.  The Andry Law Firm's claim was legitimate from the outset, followed the correct procedure set forth by both the Court and the CSSP, and even received a second round of scrutiny after allegations of impropriety emerged.  Rec. Doc. No. 10761-1, at 10 (e-mail from Pricwaterhouse Coopers stating that the accounting firm has "gone back and reviewed the Andry Law Firm Claim in light of last week's events," including reviews of "source P&L's, Tax Returns, Bank Statements, the account calculation template, the claimant's Eligibility Notice and other relevant documentation.  After our review we have concluded that *we do not believe that any adjustments need to be made to the calculation*") (emphasis added).  The Andry Law Firm accepted its payment and at that point payment was due; the "hold" placed on the payment was made beyond any procedural basis in the *Settlement*

6

*Agreement* and without any regard to The Andry Law Firm's right to due process. Thus, at the very least, this Court should grant the Andry Law Firm an evidentiary hearing to *restore* its due process rights.

## III.   No Factual Basis Has Been Presented For Denying The Andry Law Firm Payment

Since June 18, 2013, when The Andry Law Firm's claim became perfected, no evidence has been produced establishing wrongdoing by or on behalf of The Andry Law Firm. The only actions taken by or on behalf of The Andry Law Firm that have even been posited as problematic are the contacting of the CSSP by The Andry Law Firm. However, there is no impropriety in a *pro se* claimant calling the CSSP to query about the status of a claim. There was no rule prohibiting a *pro se* claimant from calling the CSSP. There was no rule prohibiting employees of the CSSP from responding to calls by *pro se* claimants. There was no rule limiting the number of times a *pro se* claimant could call the CSSP. There was no rule against a *pro se* claimant calling the CSSP checking on the status of a claim. In fact, Rule 4.3.7 required Claim Center employees to assist claimants with their claims.[7] It was expected that *pro se* claimants

---

[7] R. Doc. 6430-1, at 18. Section 4.3.7 of the Settlement Agreement provides:

> The Settlement Program, including the Claims Administrator and Claims Administration Vendors, shall work with Economic Class Members (including individual Economic Class Members' counsel ...) to facilitate Economic Class Members' assembly and submission of Claims Forms, including all supporting documentation necessary to process Claim Forms under the applicable Claims Processes. The Settlement Program, including the Claims Administrator and Claims Administration Vendors, shall use its best efforts to provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of the Agreement.
>
> ***
>
> C. Claimant Outreach. On 10/8/12, the Claims Administrator began to reach out by phone and email to Pro Se claimants who had been issued Incompleteness Notices. In addition, the Claims Administrator works with Law Firms each day through assigned Law Firm Contacts to help those firms submit complete claims and track the status of their claimants. The Settlement Program also has reached

would call the CSSP and that the employees of the CSSP would respond to their calls. Thus, because there was no rule violated when *pro se* claimant The Andry Law Firm called to check the status of its claim, the calls to the CSSP on behalf of The Andry Law Firm were not improper.

Furthermore, there is no evidence that anyone on behalf of The Andry Law Firm called Lionel Sutton or any other CSSP employee demanding the expediting of its claim. The only evidence is that a member of the firm called seeking the status of the claim, which was not improper.[8] The information referenced in the *Freeh Report* merely establishes that The Andry Law Firm made calls inquiring as to the status of its claim, which is clearly not improper. Special Master Freeh has never produced any testimony by anyone involved in handling the claim suggesting anyone was asked by anyone associated with The Andry Law Firm to expedite the claim. Lionel Sutton did not testify that he asked anyone to expedite that claim.[9] Instead, Lionel Sutton has sworn under oath that he never attempted to expedite, never asked anyone to expedite, and never did anything improper regarding, the claim.[10]

---

out to Law Firms with large numbers of incomplete claims to ensure those firms fully understand the requirements of the Settlement Agreement. These Outreach efforts are ongoing and occur in conjunction with the formal Incompleteness Notices described above.

[8] The Freeh Report itself admits that:

The Special Master did not find any evidence that either Mr. Sutton or Ms. Reitano directly manipulated the valuation of claims by accessing the DHECC database. The Special Master also did not find any evidence of such manipulation by other CAO officials.

*Freeh Report*, R. Doc. 11287, p. 4.

[9] Emails between Lionel Sutton and Glen Lerner establish that Mr. Sutton could not expedite claims. R. Doc. 11666.13. Sutton explicitly stated "You can't" in response when asked to get claims "in some sort of priority."

[10] Sworn Statement of Lionel Sutton, R. Doc. 12172-7. Lionel Sutton further swore that he never attempted to affect the value of the claim, could not affect the payment of any claim, and did not even know the valuation of the claim until shortly before the eligibility notice was issued. *Id.* Furthermore, Lionel Sutton's testimony is corroborated by Mark Staley's statement in which he explains that he treated Lionel Sutton's email inquiry as nothing more than a status report.

Moreover, there is no information to suggest that the claim was in fact expedited. The *Freeh Report* provides no analysis as to the speed at which The Andry Law Firm's claim was processed in comparison to other similar claims. Instead, the information belatedly produced by the Special Master on Christmas Eve establishes that the claim was actually delayed by clerical error, not expedited. Accountant Chris Rinaldi began overseeing the claim in December, 2012.[11] At that time, Mr. Rinaldi requested profit and loss statements. *Id.* When the requested statements had not arrived within two (2) weeks, Mr. Rinaldi exercised his "individual judgment" and sent an incomplete notice to Jon Andry and heard nothing further regarding The Andry Law Firm's claim until March, 2013. *Id.*

In March of 2013, apparently after an inquiry from Gibby Andry to Lionel Sutton,[12] and subsequent email from Lionel Sutton to Mark Staley,[13] Mark Staley emailed Mr. Rinaldi inquiring as to the status of the claim. *Id.* at 89-90. When Mr. Rinaldi looked into it, he noticed that the "missing" documents he had requested had actually been submitted before Mr. Rinaldi issued the incomplete notice, which served to stay or freeze the claim. *Id.* at 90. Mr. Rinaldi believes that he missed these documents by not checking the claimant portal. *Id.* Mr. Rinaldi sent an email back to Mr. Staley informing him that the claim was "live again" and asked Mr. Staley if the claim should receive special treatment. *Id.* at 743. Mr. Staley told Mr. Rinaldi to give the claim to a regular analyst on his team and work it as he would any other claim. *Id.*

---

[11] Xmas Eve Production, R. Doc. 12172-9, SM-04-TALF000087.

[12] Lionel Sutton swore under oath that when Gibby Andry called about The Andry Law Firm claim, he was calling about the status of the claim. Sworn Statement of Lionel Sutton, R. Doc. 12172-7.

[13] The *Freeh Report* suggests that the inquiry from Lionel Sutton to Mark Staley was extraordinary and therefore nefarious. *Freeh Report*, R. Doc. 11287, pp. 49-50. However, Lionel Sutton has sworn under oath that he would regularly contact Mark Staley to check on the status of claims in response to inquiries by claimants or by counsel for claimants. He further explained that he would communicate with the accountants because details of the status of a claim were not always posted in the computer portal. He additionally, specifically swore that he never instructed Mark Staley, Christopher Rinaldi or anyone else to expedite the claim. Sworn Statement of Lionel Sutton, R. Doc. 12172-7.

Following that email, Mr. Rinaldi passed the claim onto his "best Junior Analyst," Jordan Wilkinson, directing Mr. Wilkinson to "keep an eye on the Andry claim." *Id.* at 90. Once Mr. Wilkinson was assigned the claim, he requested bank statements from The Andry Law Firm's accountant, but stated that "[t]he subsequent analysis then went pretty quickly because there was so little needed to complete review of the claim." *Id.* at 785-86. Within approximately two (2) weeks, Mr. Rinaldi was happy to report to Mr. Staley that the audit of the claim was finally, belatedly, complete. *Id.* at 90. It is clear from this chronology that **the claim was never expedited, but in fact was delayed by several months.**

This Honorable Court correctly characterized the original allegations of BP as regarding the impropriety of a referral fee being paid.[14] There is no allegation that the Andry Law Firm paid a referral fee. Even the *Freeh Report* establishes that The Andry Law Firm paid no referral fee. R. Doc. 11287. There is simply no evidence of impropriety by The Andry Law Firm. The Andry Law Firm has very clean hands.

Half a year has passed since the CSSP decided, without an evidentiary hearing or order, to hold payment of a fully adjudicated claim, apparently premised upon allegations by BP that falsely conflated The Andry Law Firm with AndryLerner, L.L.C.[15] During this time, no

---

[14] At the hearing of July 19, 2013, this Court succinctly summarized the allegations of B.P.:

> The two staff attorneys had previously represented claimants before their employment by the settlement program, that upon becoming employed the attorneys referred, withdrew and referred their cases to a certain law firm which in turn later paid referral fees to them during the time they were employed with the program.

Transcript of Hearing at 49. These allegations do not involve The Andry Law Firm.

[15] *See, e.g.,* R. Doc. 10761-7 (Letter from Holstein to this Court dated June 21, 2013); June 21, 2013 Associated Press Report, *Administrator Opens Probe of Spill Claims Lawyer*, attached to *The Andry Law Firm's Opposition to BP's Motion for an Emergency Preliminary Injunction to Suspend Payment from the Court Supervised Settlement Fund*; Huffington Post Article (citing Letter from Holstein to this Court dated June 21, 2013); R. Doc. 10761-8 at 3 (correspondence from Patrick Juneau to this Court explaining that the claim of The Andry Law Firm was placed on hold in response to inquiries by BP dated July 1, 2013); R. Doc. 10761-1 (BP's *Memorandum in Support of its*

evidentiary hearing has been held, or even set, and no evidence has been presented that The Andry Law Firm acted improperly.  The Andry Law Firm should be paid its fully adjudicated claim expeditiously.

In the alternative, at the very least, this Court should grant The Andry Law Firm an evidentiary hearing to *restore* its due process rights. The Andry Law Firm should be granted an evidentiary hearing wherein BP should have the burden of proving why the perfected claim of The Andry Law Firm should not be paid.

**IV.      Conclusion**

This Honorable Court should: find that The Andry Law Firm and AndryLerner, L.L.C. are separate and distinct entities; find that no evidence has been presented that The Andry Law Firm has acted improperly; grant this *Motion to Release Hold on Payment to The Andry Law Firm;* and order that the claim of The Andry Law Firm be paid expeditiously consistent with the orders of this Court; or in the alternative, this Honorable Court should set an evidentiary hearing at which BP should be called upon to prove why the perfected claim of The Andry Law Firm should not be paid.

---

*Motion for Emergency Preliminary Injunction*); *BP Advertisement*, NEW YORK TIMES, September 11, 2013, referenced by Mark Schleifstein in his article: *BP Ad in New York Times Repeats Allegations of Misconduct in Oil Spill Claims Office*, Nola.com (Sept. 17, 2013, 2:54 P.M.) http://www.nola.com/news/gulf-oil-spill/index.ssf/2013/09/bp_ad_in_new_york_times_repeat.html (including link to PDF version of the actual advertisement).

Respectfully submitted,

*/s/ Stephen M. Gelé*
**RANDALL A. SMITH, T.A. (#2117)**
**STEPHEN M. GELÉ (#22385)**
     OF
**SMITH & FAWER, L.L.C.**
201 St. Charles Avenue, Suite 3702
New Orleans, LA 70170
Tel:   (504) 525-2200
Fax:   (504) 525-2205
sgele@smithfawer.com

**Attorneys for The Andry Law Firm, L.L.C.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing motion has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 31st day of January, 2014.

*/s/ Stephen M. Gelé*
Stephen M. Gelé