UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL 2179 |
| | SECTION: "J" |
| Applies to: | JUDGE BARBIER |
| No. 13-6674 | MAGISTRATE SHUSHAN |

### REPLY TO BP OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING PARALLEL CRIMINAL INVESTIGATION

MAY IT PLEASE THE COURT:

    Resorting to unfounded prejudgment and assertions of unproven facts, BP has failed to offer persuasive authority for its opposition to Defendant's Motion to Stay. Instead, staking its principal argument to the fact that Mr. Watts has not yet been indicted, BP has chosen to overlook well-established and binding case precedent wherein stays have been granted pending active criminal investigations, even absent an indictment. More strikingly, BP completely omits reference in its opposition to *Waste Management of La., LLC v. River Birch, Inc.*, an important and relevant decision handed down by this same District Court, and cited prominently in Plaintiff's Motion to Stay.

    In *Waste Management,* the Court stayed the civil case at the request of the civil defendants even though no indictments had been issued against the two relevant defendants. The *Waste Management* case, as well as the other case law discussed by the parties, makes it clear that a district court has the discretion to issue a stay in light of the relevant facts in an individual case. In *Waste Management*, it appeared a decision would be made soon about whether to indict

the two individuals at issue, and the same is true in the present case, where Mr. Watts' counsel has stated that he anticipates a decision regarding indictment to be made within the next two months.  In *Waste Management*, the criminal investigation was clearly focused on the defendants, as it is in the present case, where the government executed a search warrant on Mr. Watts' offices and the investigation is ongoing.  In *Waste Management*, the Court ordered the parties to make periodic reports regarding the status of the criminal investigation, and the Court can do so here as well. *See Waste Management of La., LLC v. River Birch, Inc.,* No. 11-2405, 2012 WL 520660 (E.D. La. Feb. 15, 2012) *reconsideration denied,* No. 11-2405, 2012 WL 876717 (E.D. La. Mar. 14, 2012).

Both Plaintiff and the Watts Defendants acknowledge the six (6) factors considered by courts in determining whether a stay should be granted in a civil case in light of a parallel criminal investigation or proceeding. *See* Opp. to Mot. to Stay, 2 n. 4. Defendants will limit this reply to only the opposition arguments by BP which pertain to these factors.

I.   **LAW AND ARGUMENT**

   **A. Fifth Amendment Considerations**

Relevant to the factor which weighs and considers the interests of, and burden upon, a civil case defendant, the Watts Defendants have noted the dilemma which Mr. Watts would face in having to preserve his Fifth Amendment protections in a civil action proceeding in parallel with the criminal investigation. Defendants have not suggested that Watts Guerra, LLP has a Fifth Amendment privilege against self-incrimination, as is suggested by BP in its opposition. *See* Opp. Mot. to Stay, 3.  But surely it is self-evident that a stay as to Mr. Watts alone would be meaningless without a stay as to the firm; for otherwise BP would be permitted to conduct discovery into the very activity of Mr. Watts which is the focus of the criminal investigation.

Moreover, assuming *arguendo* that the civil matter were allowed to proceed and Mr. Watts invoked his Fifth Amendment privilege against self-incrimination, Watts Guerra would be substantially impaired, if not disabled, in its ability to successfully defend itself. The entity, as a practical matter, would be unable to fulfill its civil discovery obligation without the benefit of the testimony of Mr. Watts, since that testimony is subject to being shielded from disclosure based upon the Fifth Amendment and pending criminal investigation. This precise situation, as articulated by the court *Waste Mgmt. of Louisiana, LLC v. River Birch, Inc*., would leave both Watts Guerra and Mr. Watts "no real way to defend themselves, short of [Mr. Watts] forgoing [his] Fifth Amendment right[]." *Waste Mgmt. of La.,* 2012 WL 520660 at *5. Thus, the Court in that case stayed proceedings as to all parties—including the individual defendants and the entities with which they were associated—even though the entities themselves had no Fifth Amendment rights.

### B. Stays Are Proper Even in the Absence of an Indictment

The crux of BP's argument pertains to consideration of the status of the criminal proceeding, for it appears to treat as dispositive the fact that no formal indictment of Mr. Watts has issued at this time. This argument, however, is both premised on a mischaracterization of the applicable case law and unsupported by binding precedent.

BP refers the court to decisions from the First, Fourth, and Ninth Circuit U.S. Courts of Appeal, the D.C. Circuit, and the Southern District of New York, none of which jurisprudence constitutes binding authority for this Court. *See* Opp. to Mot. to Stay, 3-5. Even more to the point, the conclusions of law that BP extracts from these cases are overstated. Citing *Maryland v. Universal Elections, Inc*, 729 F.3d 370 (4th Cir. 2013), for example, BP asserts that a stay is improper "until an indictment ha[s] issued, and civil discovery ha[s] proceeded to the point

where the defendants ha[ve] invoked their Fifth Amendment privilege with specificity." *See* Opp. to Mot. to Stay, 4. But the Fourth Circuit in *Universal Elections* did not deny a stay based on the absence of a formal indictment. The stay was denied in that case because the motion to stay was "devoid of any facts or legal argument," merely stated that movants "believed" grand juries had convened for which they were targets, and failed to identify the nature of a Fifth Amendment conflict. *See Universal Elections, Inc.*, 729 F.3d at 380. Here, of course, the affidavit of Mr. Watts' criminal defense counsel, Robert McDuff, makes it clear that the Fifth Amendment privilege of Mr. Watts will be an issue if BP's civil action proceeds with discovery into the same conduct by Mr. Watts which is the subject of an actual and ongoing, not presumed, criminal investigation.

The sole Fifth Circuit authority cited by BP for the proposition that an indictment is a prerequisite to granting a stay, *SEC v. First Financial Group of Texas, Inc.,* does not stand for the proposition that the absence of an indictment is *per se* determinative; and it is important to emphasize that the facts of that case are distinguishable in a critically important way. Not mentioned in BP's opposition memorandum is that in *SEC v.First Finan. Grp. of Tx.*, discovery had already commenced in the civil case when the defendant invoked his Fifth Amendment privilege in response thereto. Specifically, corporate officers of the defendant corporation persistently refused to comply with district court discovery orders over a period of almost one year, and on that basis, a default judgment was entered on behalf of the plaintiffs, from which the defendants appealed. *See Id*. at 664. The case at hand, of course, stands in a markedly different posture since Defendants appropriately have sought a stay before civil discovery initiated by BP is allowed to both interfere with an ongoing criminal investigation and implicate Mr. Watts' constitutional protections against testimony as guaranteed by the Fifth Amendment. The holding

in the *SEC* case provides no authority for the denial of a stay request in a pre-discovery context, and cannot reasonably be construed as authority for BP's argument that a stay should not be available until after a formal indictment issues.

In *Waste Management,* the Fifth Circuit case most on point which BP wishes not to address, the Court granted the stay even though no indictment had been issued against the two relevant defendants, and the Court cited as precedent *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084 (5th Cir. 1979), where the Fifth Circuit ordered a district court to stay all further civil proceedings even though no indictment had been issued. Notably, the Court in *Waste Management* stayed proceedings without requiring the parties to spend time and money going through the formalities of a deposition and requiring the defendant to repeatedly invoke his Fifth Amendment right. *See Waste Mgmt. of La.,* 2012 WL 520660.

BP's assertion that *Wehling v. Columbia Broadcasting System*, is "inapposite" to the situation at bar is without merit; and BP, again, has misstated the import of this Fifth Circuit precedent. In *Wehling*, first of all, it was the civil case <u>plaintiff</u> who sought a stay, which is what prompted the court to note "that a civil plaintiff ha[d] no absolute right to both his silence and his lawsuit." *See Wehling*, 608 F.2d at 1088. But the Fifth Circuit in that matter then proceeded to actually grant the plaintiff such a right to both his silence in the criminal proceeding and the maintenance of his civil action, because it overturned the district court's dismissal of the civil case and ordered it to stay all further proceedings. *See Id.* Indeed, the court's rationale for this outcome was that "permitting such inconvenience [to the court and the defendant] seem[ed] preferable […] to requiring plaintiff to choose between his silence and a lawsuit." *Wehling*, 608 F.2d at 1089. Perhaps most relevant for present purposes, the Fifth Circuit in *Wehling* found that a stay was warranted in order to "protect the party exercising a constitutional privilege from

*unnecessary* adverse consequences." *Id.* (Emphasis in original). The same rationale warrants a stay herein.

      C. **BP's Assertions of Prejudice are Self-Serving and Unsupported by the Evidence Contained within the Record**.

In regard to the factor which addresses the interest of the civil plaintiff, it will be recalled that Mr. McDuff's affidavit contains his statement that a decision whether to indict Mr. Watts is one he anticipates being made by the government within two months. It is thus inaccurate for BP to characterize the motion at hand as one seeking an "indefinite" stay. But this is not the full extent of BP's mischaracterizations in its opposition. More troubling is that BP claims prejudice in the event of a stay because its settlement payment of $1.3 billion will be at inevitably lost upon the second distribution of class settlement funds. *See* Opp. to Mot. to Stay, 7. BP itself knows, however, that the funds in the civil action which it has placed at issue in this case against Mr. Watts cannot be in the total amount of $1.3 billion, because the settlement agreement capped at $50 million the amount paid to the category of claimants which Mr. Watts represented as his clients. *See* Mem. in Opp. to Mot. Prelim. Inj., 6 [Rec. Doc. 12164].

Moreover, BP relies upon a declaration filed by Joseph F. Rice on behalf of the Plaintiffs' Steering Committee, which is discussed in detail within the Opposition to BP Motion for a Preliminary Injunction filed by James B. Irwin on behalf of the Class representatives. *See* Opp. to Mot. for a Prelim. Inj. [Rec. Doc. 12164]; and referring this Court to Mr. Irwin's memorandum, BP asserts that "[t]he plan for distributing those remaining funds [under the Seafood Compensation Program] is expected to be <u>completed</u> by February 2014." *See* Opp. to Mot. to Stay, 4. (Emphasis added). Mr. Irwin explains in his memorandum that "**<u>the Court-appointed neutral's recommendation on the second SCP distribution is not expected to be presented to this Court prior to late February 2014</u>**, and this Court ultimately controls the

- 5 -

timing of the second distribution in accordance with its Rule 23 supervisory obligations." *See* Opp. to Mot. for Prelim. Inj., 31. (Emphasis added). For BP to suggest in its opposition that an approved plan of distribution will be "completed" this month is, at best, a questionable assertion factually.

Defendants note that BP has averred prejudice regarding the second round of seafood compensation payments not only in its opposition to the Motion to Stay, but also in its earlier filing of a motion for preliminary injunction. That motion has been fully briefed and is before the Court. Hence, to the extent BP claims that it will be prejudiced by second round payments, this Court has the discretion to address and resolve BP's preliminary injunction motion based on the papers filed by BP and the class defendants in opposition, while staying all other proceedings in the civil action.

**D. The Harm Mr. Watts Faces is Both Real and Significant**

Relevant to the factor which considers the prejudice or harm to the civil defendants absent a stay, BP's purported uncertainty as to whether and in what specific context Mr. Watts would invoke his right under the Fifth Amendment if the civil case proceeds, is entitled to little, if any, weight. First, as Mr. McDuff's affidavit indicates, Mr. Watts' invocation of his Fifth Amendment rights is by no means speculative, given that the prospect of indictments of those under investigation is itself not speculative. Second, there is simply no logic or justification for postponing a stay of the civil case in order to know more details about either the pending investigation or discovery in the civil action. From either the Court's or the Watts' Defendants' viewpoints, only an unnecessary investment of resources can ensue by inviting civil discovery so that Mr. Watts then may assert his constitutional privilege with specificity; and, even from BP's standpoint, it would seem prudent that as a civil plaintiff it incur the costs of litigation which can

truly advance through discovery, rather than lead to testimonial issues and a potential repeat of discovery efforts after the criminal matter is concluded.

Perhaps one of the most striking and ironic statements in BP's opposition is its characterization that Mr. Watts' right to seek constitutional protection through a well-founded stay request, is mere "gamesmanship." *See* Opp. Mot. to Stay, 9. In response, it is sufficient to note the obvious: First, it is absurd to suggest that anyone would engineer a parallel criminal investigation of himself in order to avoid answering allegations or discovery in a civil action. Second, before instituting this civil action BP was fully engaged in a strategy to either revise or withdraw from a class settlement agreement it negotiated and then promoted, one that spared the company the defense of thousands of claims arising out of the worst environmental disaster in U.S. history. It is difficult not to see this lawsuit, which requires one to ignore the reality that specific concerns about the Watts case inventory were made known to BP long before it entered into the class settlement, as nothing more than another phase of BP's ongoing strategy in this regard. This is a company which should be more circumspect before leveling the charge of "gamesmanship" thorough litigation.

### E.  The Court's Interest and Public Interest are Best Served by Granting a Stay

Aside from rhetoric, BP in opposition sets forth no availing authority as to why the Court's and public's interests would not be best served by a stay; but, worse, BP's rhetoric reduces to the level of unwarranted prejudgment when it asserts that Mr. Watts has "perpetrated fraud" upon BP and the Court. *See* Opp. to Mot. to Stay, 9.

It is a fundamental principle of American justice that every citizen charged with such wrongdoing (including Mr. Watts) is considered innocent until proven guilty.  BP is entitled to its self-satisfied prejudice; but the interests of the Court and public are well-served by allowing

the criminal investigation to proceed without BP's interference, and with the presumption of innocence honored, not ignored.

Finally, BP's argument that the government's failure to intervene herein is a "strong indication that the public interest is best served" by denying the stay, is neither based on law nor, in the present posture of the action, entitled to factual weight. Stays often are granted at the request of the defendants, not the government, as shown in the *Waste Management* case. The absence of a request for intervention from a United States Attorney's office in another district (the Southern District of Mississippi) is no basis for denying the stay in this case. Neither is the authority BP cites for its "no government intervention" argument actual support for the company's position.[1]

### F.  The Extent of Overlap Between Issues in the Criminal Case and the Civil Case

The extent to which the issues in the criminal case overlap with those present in the civil case includes consideration of the alleged facts, activities, and conduct underlying both as well as the witnesses and evidence to be used. BP in opposition simply ignores the obvious overlap between the two matters here, by suggesting that, despite the overlap, the Watts Defendants could emphasize their causation defense against BP's civil allegations, and somehow make it unnecessary to implicate the issues of misconduct alleged by BP. Aside from seeking to direct how the Watts Defendants will choose to defend the civil action, however, the obvious and practical truth is that  there would be no way to separate causation from conduct issues if discovery were to proceed in the civil action. BP's effort to sidestep the "overlap" factor in this

---

[1] The court in *SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1375 (D.C. Cir. 1980), citing to a decision of the Supreme Court noted that there will be times when the public interest will in fact be best served by prompt investigation of both civil and criminal claims. The *Dresser* court quoted the *U.S. v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970) court's explanation that "the public interest in protecting consumers throughout the Nation from misbranded drugs require[d] prompt action by the agency [responsible for food and drug law administration]."

way is nothing more than mental gymnastics, with no consideration of the inevitable collision between this civil case and the criminal investigation absent a stay.[2]

## II.     CONCLUSION

Defendants respectfully submit that the opposition to their Motion to Stay lacks substantial support, both factually and as a matter of law. The well-settled jurisprudential factors justify a stay, and a stay order by this Court is in conformity with the established precedent of this District and the Fifth Circuit. The Court should enter such order, as proposed by Defendants' motion.

Respectfully submitted:

GAINSBURGH, BENJAMIN, DAVID, MEUNIER &
   WARSHAUER, L.L.C.

BY:  */s/Gerald E. Meunier*
     GERALD E. MEUNIER, #9471
     M. PALMER LAMBERT, #33228
     2800 Energy Centre, 1100 Poydras Street
     New Orleans, Louisiana 70163
     Telephone:   504/522-2304
     Facsimile:   504/528-9973
     gmeunier@gainsben.com
     plambert@gainsben.com

*Counsel for Mikal C. Watts and Watts Guerra LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2014, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be

---

[2] To the extent the Court believes it appropriate to address BP's motion for preliminary injunction on the issue of the papers filed by BP and the class defendants on causation, it has the discretion to do so.  But it should stay all other proceedings because of the extent of overlap between the criminal investigation and the civil case.

- 9 -

- 10 -

sent to all counsel of record by operation of the court's electronic filing system.

                /s/ *Gerald E. Meunier*
                GERALD E. MEUNIER, #9471