UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL BY THE OIL RIG
"DEEPWATER HORIZON" IN THE
GULF OF MEXICO, ON APRIL 20, 2010

This Document Applies to:

No. 12-970, Bon Secour Fisheries, Inc., et al.
v. BP Exploration & Production Inc., et al.

MDL 2179

SECTION: "J"

JUDGE BARBIER

MAG. JUDGE SHUSHAN

**GLEN J. LERNER'S OPPOSITION TO BP'S MOTION FOR PRODUCTION OF
CERTAIN DOCUMENTS BY SPECIAL MASTER FREEH AND TO SET SCHEDULE**

Glen J. Lerner respectfully submits this opposition to BP's motion for production of
"certain" records from the Special Master (hereafter "BP's Motion").  Rec. Doc. 12254.
BP's Motion is a fishing expedition, a demand for unfettered access to the Special Master's
complete investigative record.  It should be denied.

As the Court well knows from its *in camera* review, Rec Doc. 12026, among the
documents that BP seeks are thousands of hard copy and electronic pages of interview transcripts
and notes, personal emails, individual bank and telephone records, claimant files, and other
materials that the Special Master collected as part of his investigation into the facts and
circumstances surrounding the resignation of Lionel Sutton from the Claims Administration
Office ("CAO").  By and large, these materials have nothing to do with the operations, policies
or procedures of the CAO.  They are evidentiary materials that the Special Master relied upon to

4349725.1

make allegations of wrongdoing and that the Show Cause Parties, such as Lerner, demanded to respond to the Court's Order to Show Cause, Rec. Doc. 11288.  BP has no genuine interest in these materials.  They do not concern BP's conduct.  The Court has not ordered BP to respond to the Special Master's reports.  And, nothing in Federal Rule of Civil Procedure 53 or the Special Master's appointment order, Rec. Doc. 10564, authorizes BP to re-investigate Sutton's resignation or to quality control the Special Master's work.

BP's claimed need for access is "to assist [its] evaluation in whether to make [a motion to modify the Special Master's report of January 17, 2014] and, if so, its appropriate content." BP's Mot. at 2.  BP's mere status as a party to this litigation does not entitle it to record access for such an inchoate purpose.  BP has no due process right to the investigative materials, because, unlike the Show Cause Parties, no court action threatens to take away any of BP's property rights or interests.  Furthermore, BP nowhere articulates how the thousands of pages of the Special Master's investigative record will put it in any better position to seek to modify the Special Master's recommendations about the operations of the CAO.  The Special Master issued two reports totaling nearly 100 pages.  BP has identified no deficiency in either report that impairs its ability to decide now whether to seek to modify the Special Master's recommendations.

As the Court is aware, BP has engaged in a national advertising campaign to capitalize on the mere allegations made in the Special Master's reports.  *See* Ex. A.  BP's Motion appears to be an effort to gather more information for its campaign.  If the Court were to permit BP access to any portion of the investigative record, it should be strictly limited.  Any disclosure to BP must be subject to a protective order, approved by both the Special Master and the Show Cause

4349725.1

Parties, to ensure that no email, bank record, or any other investigative material ends up in a full-page advertisement in the *The New York Times* or *The Washington Post*.

## BACKGROUND

On July 2, 2013, the Court appointed Louis J. Freeh as Special Master pursuant to Rule 53 to, among other things, conduct an investigation into the circumstances of Sutton's resignation from the CAO, to identify other possible ethical violations, and to examine and make recommendations about the CAO's compliance programs and internal controls. Rec. Doc. 10564. BP consented to the Special Master and the scope of his appointment. *Id.*

The Special Master issued his first report on September 6, 2013, addressing, among other things, the facts and circumstances of Sutton's resignation. Rec. Doc. 11287 (hereafter "First Report"). According to the First Report, the Special Master's investigation consisted of over 80 witness interviews and the collection of thousands of hard copy and electronic documents from the CAO and a host of other sources. *Id.* at 14-15. Following the First Report, the Court issued an Order stating that the Special Master had "completed his investigation" as it pertained to Sutton's resignation and ordered that certain entities and persons, including Lerner, show cause why they should not be subjected to sanctions recommended by the Special Master. Rec. Doc. 11288 at 1. Thereafter, Lerner and the other Show Cause Parties, through a series of motions, some opposed by the Special Master, sought access to the investigative record in order to be apprised of the evidence against them and to prepare their responses to the Show Cause Order. *See, e.g.,* Rec. Docs. 11619, 11663. The Court granted the Show Cause Parties access to some, but not all, portions of the investigative record. *See* Rec. Docs. 11442, 11664, 11729, 12026.[1]

---

[1] Objections to certain of Magistrate Judge Shushan's discovery rulings, Rec. Doc. 12026, remain pending before Judge Barbier, Rec. Doc. 12082.

4349725.1

Months passed before the Special Master issued his second report on January 17, 2014. Rec. Doc. 12174 (hereafter "Second Report"). During this four-month period, BP did not file a motion seeking access to the investigative record underlying the First Report. The Special Master's Second Report focused on a potential conflict of interest and an alleged breach of confidentiality by an employee of the CAO. It also made four recommendations to improve the operations and controls of the CAO. *Id.* at 6-7.

Following a misguided attempt to secure the investigative record directly from the Special Master, BP now asks this Court for production of, among other things:

- "All documents provided by the Special Master to Lionel Sutton, Christine Reitano, Jon Andry, Glen Lerner, and any associated law firms, including, but not limited to, those documents provided pursuant" to various court orders;

- "All documents referenced in the September 6, 2013 Report of the Special Master";

- "Transcripts of interviews by the Special Master of CAO employees and any documents appended to or exhibits to the transcripts of such interviews";

- "Documents provided by CAO employees to the Special Master as part of, or in advance of interviews."

BP's Mot., Ex. 1, Attach. A, ¶¶ 1, 11-13.

## ARGUMENT

**I.    Neither Rule 53 Nor Due Process Entitles BP to Full and Complete Disclosure of the Special Master's Investigative Record.**

BP asserts that both Rule 53 and due process afford it unfettered access to the investigative record. Neither ground supports BP's demand.

Rule 53 does not grant a party, like BP, access to a special master's record merely because it is a party to the litigation in which the special master is appointed. The text of

4349725.1

Rule 53 does not address to whom the special master's record may be disclosed, other than the court. *See* Fed. R. Civ. P. 53(b)(2)(C) & (D).  However, Rule 53's Advisory Committee Notes do address the issue, at least implicitly.  The Advisory Committee Notes state that "[t]he parties may designate additional materials from the [Special Master's] record, and may seek permission to supplement the record with evidence."  Fed. R. Civ. P. 53 Advisory Committee's Notes (2003 Amendment, subdivision f).  The only purpose for which a party would seek to enlarge the evidentiary record is to provide the court with additional evidence to evaluate the special master's factual findings.  Unless the parties have consented otherwise, such findings of fact are reviewed *de novo*.  Fed. R. Civ. P. 53(f)(3).  Thus, Rule 53 contemplates that a party is entitled to record access when it is challenging or defending the special master's findings before the court.

On the other hand, a party, like BP, as to whom the special master has made no factual findings or recommended adjudication, does not enjoy a right to access the special master's record.  BP has no right to the Special Master's record in this case because it is not seeking to challenge or modify any of his factual findings.[2]  The Special Master made factual findings only against entities and individuals who originally were not named litigants in this matter.  It is only because of the Special Master's findings and recommendations that individuals like Lerner have become "parties" – BP misleadingly calls them "non-parties," BP's Motion at 9 – who are entitled to record access.  Because BP is not the subject the Special Master's investigation, it is not entitled to production of the investigative record.[3]

---

[2] To the contrary, BP plainly is satisfied with the work of the Special Master.  In its January 21, 2014, letter to the Special Master BP wrote that "BP is appreciative of the tremendous effort that you and your staff have invested in investigating the facts set forth in your reports and motion."  Rec. Doc. 12193.  BP also has made the Special Master's allegations the centerpiece of its national advertising campaign.  *See* Ex. A.

[3] On page eight of its motion, BP quotes from the Advisory Committee Notes ("A basic requirement . . . is that a [sic] master must make and file a complete record of the evidence considered in making or recommending findings of fact on the basis of evidence") to support its argument that "there is a strong presumption that the materials underlying a special master's report will be provided to the parties."  BP's Mot. at 7-8.  BP's use of that quotation is misleading.  Read in context, that quote refers to disclosure of the record *to the court*, not the parties.

4349725.1

Due process likewise does not afford BP record access merely because it is a named party.  "Due process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  Under the Supreme Court's decision in *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976), in determining what process is due, courts are instructed to consider as one of three factors, "the risk of an erroneous deprivation of [a private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."  Here, BP is owned no process with respect to the Special Master's investigation because his findings and recommendations do not subject BP to deprivation of any private interest.  The Special Masters' reports and the subsequent Order to Show Cause target the rights and interests of Lerner and the other Show Cause Parties.  Accordingly, only they are entitled to the full panoply of due process rights, including record access.  BP is not.

The sole case that BP cites, *Ruiz v. Estelle*, 679 F.2d 1115*, amended in part*, *vacated in part*, 688 F.2d 266 (5th Cir. 1982), confirms this result.  In *Ruiz*, the Fifth Circuit rejected a Rule 53 appointment order that permitted "the special master to submit to the district court 'reports based upon his own observations and investigations in the absence of a formal hearing before him'" concerning the defendant's compliance with a consent decree.  *Id.* at 1162-63 (citation omitted).  The Court held that the order "not only transcends the powers traditionally given masters by courts of equity, but denies the parties due process."  *Id.* at 1163.  Thus, *Ruiz* confirms that due process protections are afforded to a party only when a special master's work has the potential to deprive a party of a property interest.

BP contends that its right to the full investigative record arises from its "compelling interest" in "ensuring the proper administration of the settlement program."  BP's Mot. at 6.  But,

4349725.1

as *Mathews* makes clear, that is not the kind of property or liberty interest that triggers due process protections. *See Mathews*, 424 U.S. at 334-35; *cf. Hannah v. Larche*, 363 U.S. 420, 442 (1960) (due process afforded when a government agency "adjudicate[s] or make[s] binding determinations which directly affect the legal rights of individuals"). Nor does BP explain how access to the full record will assist it in "evaluating whether more comprehensive measures must now be taken." BP's Mot. at 7. BP simply states, without more, that disclosure of the entire record is "important." *Id.* Such a conclusory claim of need does not justify disclosure of a special master's investigative record that does not address any BP conduct or subject BP to the adjudication of its rights or interest.

## II.      Any Disclosure to BP Must Be Made Pursuant to a Protective Order.

Should the Court determine that BP is entitled to any document in the Special Master's investigative record, the Court should impose a rigorous protective order under Rule 26(c) to prevent the document's appearance in BP's public relations campaign. If, as BP claims, it requires access to the investigative record to determine whether to suggest improvements to the CAO's operations, then BP should not object to a protective order that circumscribes its use of disclosed material solely for that stated purpose. A protective order is essential to prevent BP from using the investigative record to embarrass and harass Lerner and other Show Cause Parties.

### CONCLUSION

For the foregoing reasons, Glen J. Lerner respectfully requests that the Court deny BP's Motion. Alternatively, the Court should issue a protective order that circumscribes BP's use of the investigative record to evaluating whether to suggest modifications to the Special Master's recommendations to improve the CAO's operations.

4349725.1

8

Date:  February 10, 2014                                    Respectfully submitted,


                                                           */s/ William W. Taylor*_____

Pauline F. Hardin (La. Bar #6542)                          William W. Taylor, III (D.C. Bar #84194)
James E. Wright, III (La. Bar #13700)                      Amit P. Mehta (D.C. Bar #467231)
Virginia W. Gundlach (La. Bar #18493)                      **ZUCKERMAN SPAEDER LLP**
**JONES WALKER LLP**                                       1800 M. Street, NW – Suite 1000
201 St. Charles Ave. – 49th Floor                          Washington, D.C. 20036-5807
New Orleans, Louisiana 70170                               Telephone: (202) 778-1800
Telephone: (504) 582-8110                                  Fax: (202) 822-8106
Fax: (504) 589-8110                                        wtaylor@zuckerman.com
phardin@joneswalker.com                                    amehta@zuckerman.com
jwright@joneswalker.com
ggundlach@joneswalker.com                                  *Attorneys for Glen J. Lerner*

4349725.1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Opposition to BP's Motion for Production of Certain Documents by Special Master Freeh and to Set Schedule has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 10th day of February, 2014.


*/s/ William W. Taylor*
William W. Taylor, III

4349725.1