UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL 2179 |
| "DEEPWATER HORIZON" IN THE | : | |
| GULF OF MEXICO, ON APRIL 20, 2010 | : | Section J |
| | : | |
| This Document Applies to: | : | Judge Barbier |
| | : | |
| *No. 12-970, Bon Secour Fisheries, Inc., et* | : | Mag. Judge Shushan |
| *al. v. BP Exploration & Production Inc., et al.* | : | |

RESPONSE OF THE SPECIAL MASTER TO BP'S MOTION
TO ORDER PRODUCTION OF CERTAIN DOCUMENTS

COMES NOW Special Master, Louis J. Freeh, in response to Defendants BP Exploration & Production Inc., BP America Production Company, and BP p.l.c.'s (collectively "BP") Motion to Order Production of Certain Documents By Special Master Freeh and To Set Schedule. For the following reasons, the Special Master respectfully requests that the Court deny BP's Motion to Order Production of Certain Documents.

A. *Background*

1. On July 2, 2013, the Court appointed Louis J. Freeh as Special Master to perform duties consented to by the parties in connection with the Court Supervised Settlement Program ("CSSP") established by the Deepwater Horizon Economic and Property Damages Settlement Agreement as amended on May 2, 2012 (the "Settlement Agreement"). The appointment, made pursuant to Federal Rule of Civil Procedure 53 and the Court's inherent authority, directed the Special Master to conduct an independent investigation into possible ethical violations and other misconduct within the CSSP, as well as evaluate the internal compliance program and anti-corruption controls within the CSSP.

2. On September 6, 2013, the Special Master filed a Report on the investigation into certain allegations of misconduct ("September Report"). The September Report

contained findings of fact concerning two former CSSP employees and several attorneys and law firms representing claimants before the CSSP.  The Special Master also recommended sanctions against these parties (collectively the "Show Cause Parties").

3. The same day, the Court issued an Order pursuant to Federal Rule of Civil Procedure 53(f) giving the Show Cause Parties an opportunity to file responses showing why the Court should not adopt the September Report.  The Court gave other interested parties an opportunity to respond to the September Report within fourteen days.

4. The Court's September 6, 2013 Order also directed the Special Master to continue with investigations into certain CSSP operations, among other mandates, and provide status updates to the Court, the CSSP, BP, and the plaintiffs' steering committee ("PSC") every thirty days.

5. On January 17, 2014, consistent with the Court's mandates, the Special Master issued a second Report ("January Report") detailing an investigation into an alleged conflict of interest and breach of confidentiality by David Duval, former CSSP Appeals Coordinator.  The January Report addressed Mr. Duval's handling of an October 2, 2013 email from an appeals panelist regarding a claimant represented by a law firm where Mr. Duval's uncle and cousin are partners, as well as other issues concerning other CSSP staff encountered during this portion of the investigation.

6. In the January Report, the Special Master concluded that Mr. Duval had violated the Court's June 29, 2012 Confidentiality Order and the CSSP's Conflict of Interest and Recusal Policy, although Mr. Duval did not financially benefit from his actions or conceal his conduct.  Mr. Duval resigned from the CSSP on October 7, 2013.

7. The January Report also criticized two other CSSP employees who had been involved in the other issues encountered during this portion of the investigation. Both of these employees resigned from the CSSP in December 2013.

8. Based on this portion of the investigation, the Special Master's January Report included four recommendations, all of which dealt with improvements to the CSSP's policies and procedures regarding conflicts of interest and other potential ethical issues. No sanctions were recommended against any individuals or entities.

9. Following litigation on the permissible scope of access to the investigative record, the Court issued several orders directing the Special Master to provide discovery materials to the Show Cause Parties who were subject to adverse proposed findings in the September Report.

10. On January 29, 2014, BP filed a motion seeking access to much of the supporting documentation underlying the Special Master's findings and recommendations in both the September and January Reports.

11. BP is not requesting these documents for purposes of filing objections to the Special Master's findings or recommendations. Rather, BP explains:

> [It] agrees with the thrust of the Special Master's recommendations [made in the January Report] and welcomes efforts to establish controls and efficiencies that have been consistently lacking. But the question is whether additional action is also required. Access to the evidence underlying these recommendations would provide BP with the "full picture" of the "analytical process by which [Special Master Freeh's] ultimate findings were reached." It would significantly advance BP's evaluation of whether Special Master Freeh's current recommendations are adequate to ensure the integrity of the CSSP or whether BP must exercise its rights under Rule 53 to file a motion to modify the Special Master's report.

Doc. No. 12254-1 at 11 (citation omitted).

B. *Analysis*

12. The Court should not require the Special Master to disclose the requested documents to BP because disclosure is not necessary or relevant under Rule 53(f), and because there are compelling reasons for denying BP access to the information sought.[1]

13. First, Rule 53(f), which governs the process for courts receiving reports from a special master, does not impose specific discovery obligations on a special master. Rule 53(f) instructs courts to "give the parties notice and an opportunity to be heard" prior to taking "act[ion] on a master's order, report, or recommendations." Fed. R. Civ. P. 53(f). This process requires parties be given an opportunity to "file objections to . . . or a motion to adopt or modify" the Special Master's report. *Id*.

14. Moreover, although Rule 53(f) permits motions to "modify" a special master's report, discussions of the rule's procedural protections consistently arise in circumstances where the moving party *objects* to a finding or recommendation made by the special master. *See, e.g.*, *Qcue, Inc. v. Digonex Techs., Inc.*, No. 12-484, 2013 U.S. Dist. LEXIS 127109, at *3 (W.D. Tex. Sept. 5, 2013) ("To the extent the parties have made specific objections to the Special Master's factual findings or legal conclusions, they are entitled to de novo review of those findings and conclusions."); *Turner v. Murphy Oil USA, Inc.*, 582 F. Supp. 2d 797, 808 (E.D. La. 2008) (citing *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 813 (E.D. La. 2007)) ("[T]he Rules demand that the Court review de novo the Special

---

[1] Additionally, BP's request for documents related to the September Report — which was not made until January 2014 — should be denied as untimely. *See* Fed. R. Civ. P. 53(f)(2) ("A party may file objections to — or a motion to adopt or modify — the master's order, report, or recommendations no later than 21 days after a copy is served, unless the court sets a different time."); Doc. No. 11288 at 3-4 ("[A]ny other interested party, may file their response, or any objection or motion, with supporting memorandum . . . to the Special Master's Report, no later than 14 days from the date of this Order [September 6, 2013].").

Master's suggestions in light of the fact that various counsel have filed objections to the Special Master's Final Report.").

15. Here, the Special Master's Reports, which describe his investigative methodology and provide ample detail to support the findings and recommendations, have both been provided to BP. Unlike the Show Cause Parties, the Special Master has not made any adverse findings or recommendations concerning BP. The Court has given BP the "opportunity to be heard" on the content of the Reports.

16. Further, pursuant to the Court's order, since issuance of the September Report, the Special Master has been providing the Court, the CSSP, BP and the PSC with monthly status updates that outline additional details of the Special Master's work, findings and planning. BP earlier had rejected an opportunity to receive additional informational briefings on the Special Master's investigation leading to the January Report, as BP would not agree to confidentiality conditions for receiving such updates while the Special Master's work progressed.

17. The Court has complied with all the procedural requirements of Rule 53(f), and no further disclosure of information by the Special Master is relevant or required.

18. BP cites several cases "reviewing the actions of special masters appointed under the National Vaccine Injury Compensation Program," which, "[a]though not decided under Rule 53," BP suggests support the proposition that "a party should be permitted to review and rebut evidence not in the record but uncovered and relied upon by the special master." Doc. No. 12254-1 at 8 n. 26. But the cited cases, like those listed above, all involved parties who were objecting to a Special Master's adverse ruling against them. *See, e.g.*, *Campbell v. Sec'y of Health & Human Servs.*, 69 Fed. Cl. 775, 776 (2006) (remanding

matter for further proceedings after special master denied plaintiffs' vaccine injury claims). Here, the Special Master has made no adverse findings or recommendations against BP, and BP has been given the opportunity to comment on the Special Master's Reports.

19. Even assuming Rule 53(f) required the Special Master to provide access to his full investigative record supporting the Reports, there are compelling reasons in this case not to disclose the information to BP. The Advisory Committee's Notes on Rule 53 contemplate such situations:

> The report is the master's primary means of communication with the court. *The materials to be provided to support review of the report will depend on the nature of the report. . . .* Given the wide array of tasks that may be assigned to a pretrial master, there may be circumstances that justify sealing a report or review record against public access — a report on continuing or failed settlement efforts is the most likely example. A post-trial master may be assigned duties in formulating a decree that deserve similar protection. *Such circumstances may even justify denying access to the report or review materials by the parties*, although this step should be taken only for the most compelling reasons.

Fed. R. Civ. P. 53 Advisory Committee's Notes (2003 Amendment) (emphasis added).

20. Here, protection of the agreed-upon roles and responsibilities concerning the CSSP, as well as the scope of information available to BP under the Settlement Agreement, support a finding that BP need not have full access to information gathered by the Special Master, some of which would otherwise be restricted under the Settlement Agreement.

21. The Court has ongoing supervisory authority over the CSSP and the Claims Administrator. *See* Settlement Agreement at ¶¶ 4.3.1, 4.3.2 & 4.4.7. The Court has been regularly updated on the Special Master's work, and has had full access to the investigative record created by the Special Master. Indeed, because of reviews required to be made to determine discovery motions filed by the Show Cause Parties, the Court has made

extensive reviews of the Special Master's work papers. The Court thus has a high familiarity with the Special Master's work and investigations.

22.     Moreover, the parties have agreed to keep confidential certain DHECC information, including information concerning aspects of the claims appeal process and information concerning in-process claims that have not yet been resolved in the settlement program. *See* Settlement Agreement at ¶ 4.4.14; Rule 5(f), Rules Governing the Appeals Process (May 20, 2013). BP's requests would extend to such information that otherwise is unavailable to the parties.

23.     For example, BP has made requests for information concerning an October 2, 2013 email discussed in the January Report. Rule 5(f) of the CSSP's Rules Governing the Appeals Process states that "[a]t no time during or after an appeal shall the identity of the Appeal Panelist(s) reviewing or deciding the claim be disclosed to the claimant, BP, or Class Counsel." Rule 5(f), Rules Governing the Appeals Process (May 20, 2013). BP's request for access to the October 2, 2013 email would reveal information that the parties have agreed is to remain confidential.

24.     Finally, some material sought by BP would require disclosure of the mental process behind the Special Master's September and January Reports. The Court previously has held that the Special Master need not produce such mental process documents to the Show Cause Parties based on the Fifth Circuit authority instructing that a special master properly appointed under Federal Rule of Civil Procedure 53 is not required to disclose information that would reveal the mental process behind his recommendations. *See Gary W. v. La., Dep't of Health & Human Res.*, 861 F.2d 1366, 1369 (5th Cir. 1988) (finding special master was "performing a quasi-judicial function" when submitting her recommendation

and an "examination of her mental processes in making that recommendation would have been inappropriate"); *Sanders v. Agnew*, 306 F. App'x 844, 850 (5th Cir. 2009).

25. Collectively, these compelling reasons further support the denial of BP's request for investigative information from the Special Master.

### C. *Conclusion*

For these reasons, the Special Master respectfully requests that the Court deny BP's Motion to Order Production of Certain Documents.

Respectfully submitted,

/s/ Louis J. Freeh
Louis J. Freeh
Special Master

Dated: February 10, 2014

CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing response has been served on all counsel electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 10 day of February, 2014.

                                              /s/ Louis J. Freeh
                                              Louis J. Freeh
                                              Special Master