**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | * * * * | **MDL NO. 2179** |
| | | **SECTION J** |
| **This document relates to all actions.** | * * | |
| | * | **Honorable CARL J. BARBIER** |
| | * | |
| | * | **Magistrate Judge SHUSHAN** |
| | * | |
| | * | |
| | * | |

**BP'S OPPOSITION TO CLASS COUNSEL'S MOTION FOR LEAVE TO FILE A
REPLY IN FURTHER SUPPORT OF THEIR OBJECTION TO ADMINISTRATIVE
RULING REGARDING THE ADMISSION OF NEW EVIDENCE BY BP IN
<u>CONNECTION WITH SETTLEMENT PROGRAM APPEALS</u>**

On December 13, 2013, Class Counsel filed a submission objecting to the Settlement Program's Appeal Panel's acceptance, consistent with Rule 7 of the Appeal Panel Procedures, of certain evidence submitted by BP.  *See* Rec. Doc. 11973.  That evidence, which had been withheld by the Wetlands claimant at issue, unambiguously demonstrated that the claimant is not eligible for payment because it is an oil and gas company excluded from the class definition.  *See* Settlement Agreement §§ 2.2.4, 2.2.4.5.  But for BP's submission, this crucial information would have been omitted from the Appeal Panel's consideration.

Class Counsel argue that the rules of the Appeal Panel should be set aside and that only select information chosen by the claimant should be considered.  BP's response of December 26, 2013, explained that (1) the Appeal Panel is charged with "enforc[ing] compliance with this Agreement" (emphasis omitted); (2) the Appeal Panel's Rule 7 provides (as a general matter and not in any way peculiar to wetlands claims) that "exhibits or documents attached to memoranda on appeal are a part of the record, ***whether or not those exhibits or documents had been***

*previously introduced in the claim process*" (emphasis added); and (3) accepting Class Counsel's position would make it impossible to enforce the class definition and thus comply with Rule 23, and so would invite fraud.  *See* Rec. Doc. 12062 at 1, 4, 8-9.

More than a month after the submission of BP's response, Class Counsel have now filed a belated motion for leave to file a reply brief.  For the reasons below, BP respectfully requests that the Court deny the motion.  In the alternative, if leave is granted, BP requests that the Court disregard the misstatements of law and arguments in favor of flawed internal appeals policy contained in Class Counsel's reply.

## ARGUMENT

### I.    The Court Should Deny Class Counsel's Motion, As The Proposed Reply Is Untimely, Is Not Responsive To BP's Arguments, And Will Not Materially Assist The Court.

The Court should deny leave to file the proposed reply.  *First*, the proposed reply is untimely, coming well over a month after BP submitted its opposition.  *See* Rec. Doc. 12283-1 ("Proposed Reply").

*Second*, and also reflecting the fact that the proposed reply appears to be a kind of afterthought, the proposed reply makes entirely new arguments that the Court should apply far-afield analogies to Social Security or other administrative law systems instead of responding to BP's points.  Such arguments, which were not raised in Class Counsel's opening brief, are improper on reply and waived.  *See, e.g.*, *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010).

*Finally*, the proposed reply will not assist the Court's consideration of the issues before it.  The proposed reply is largely tangential, insofar as it fails to address either Section 6.1.2.2.5.4 of the Settlement Agreement, which provides that the Appeal Panel may "establish its own procedural rules regarding the review of appeals," or Rule 7 of the Appeal Procedures, specifically, which is dispositive of the question before the Court (in the absence of a fully

developed and well-taken challenge to its validity, which Class Counsel did not undertake and certainly could not be mounted for the first time in a reply brief). The proposed reply also does not address the obvious fact that forcing the Appeal Panel to disregard documents demonstrating that class membership does not exist (or that other prerequisites to securing a lawful claim award are not present) amounts to an open invitation for claimants to commit fraud.

Because the proposed reply brief was untimely filed and will not assist the Court's consideration of the issues before it, BP submits that leave to file should be denied. *See, e.g.*, *Precision Holdings, LLC v. Bourque*, No. 08-1474, 2010 WL 1142061, at *3 (W.D. La. Mar. 23, 2010) (denying leave to file reply brief because "the proposed reply is unhelpful in answering any of the foregoing questions raised by the briefing"); *Mayne & Mertz, Inc. v. Quest Exploration LLC*, No. 06-800, 2009 WL 3678253, at *19 (W.D. La. Nov. 4, 2009) (denying leave to file reply brief because it is "unhelpful to the issues at hand"), *aff'd*, 401 F. App'x 871 (5th Cir. 2010) (per curiam). If leave to file is granted, however, BP respectfully requests that the Court consider Section II, *infra*, which explains why Class Counsel's new arguments are demonstrably incorrect.

## II.    If The Court Considers Class Counsel's Proposed Reply, It Should Disregard Class Counsel's Misstatements Of Fact And Law.

If the Court does consider Class Counsel's proposed reply, it should disregard the misstatements of fact and law contained therein. This is particularly important because Class Counsel inaccurately describe certain adjudicative systems for the first time in their reply brief.

### A.    The Settlement Program's Appeal Process Requires *De Novo* Review And Is Not "Non-Adversarial," And The Administrative Law Systems Identified By Class Counsel Do Not Require Adjudicators To Ignore Evidence Of Fraud.

Class Counsel's proposed reply compares the Appeal Process to certain "non-adversarial" proceedings in which an independent arbiter, administrator or trustee will review and make

determinations based on information provided by the plaintiff — *e.g.* claims for ERISA benefits, affirmative applications for asylum, or Social Security disability determinations."   Proposed Reply at 2.  In those cases, Class Counsel contend, "an appeal to the District Court is generally constrained to the administrative record that the plaintiff submitted to the administrative law judge, administrator or trustee."   *Id.*   Thus, Class Counsel suggest, the Appeal Panel should similarly refuse to consider evidence demonstrating ineligibility for payment if it was not voluntarily submitted by the claimant.

This argument cannot withstand scrutiny.  Most importantly, the relevant question is not how unrelated federal benefits programs work, but what the Settlement Agreement and Rule 23 require.  None of the administrative law systems identified by Class Counsel was used as a model for the Settlement Agreement, and Class Counsel cite no textual or other evidence to the contrary.  Here, the Settlement Agreement speaks for itself:  The Appeal Panel is required to conduct a *de novo* review to enforce compliance with terms of the Settlement Agreement.  *See* Settlement Agreement § 6.4.  The Panel cannot conduct such a review without determining whether a claimant is a member of the class, as Rule 23 requires.  Moreover, the system created by the Settlement Program is not "non-adversarial."  Instead, it provides a role for two opposing parties — the claimant and BP.  *See, e.g.*, Settlement Agreement § 6.1.2.4 (describing BP's appellate rights); *id.* § 6.2 (describing submission of briefs by BP).

Even if the comparisons offered by Class Counsel were relevant, none of the systems that they identify permits a claimant to make an unfounded claim of eligibility and omit facts establishing that the claimant is ineligible, while denying adversely affected parties the opportunity to submit documents demonstrating as much.

***Social Security***.  In evaluating an application for disability benefits, the "state agency is charged with the responsibility of gathering from the claimant ***or other sources any evidence it needs*** to make the disability determination.  The SSA will also secure from the claimant, ***or other sources***, any evidence they can attain more readily than the state agency."  RICHARD C. RUSKELL, SOCIAL SECURITY DISABILITY CLAIMS HANDBOOK § 2:6 (2013) (emphasis added).  If the case proceeds before an administrative law judge ("ALJ"), the ALJ may "call his own witnesses who often include the independent vocational expert."  *Id.* § 3:14.  After the ALJ issues a decision, a "determination may be reopened at any time if it was obtained by fraud or similar fault."  *Id.* § 3:16; *see also* 20 C.F.R. § 404.988(c)(1).

If the matter proceeds to federal district court, the case may be remanded to the Social Security Administration if there is a showing that new material evidence exists.  *See* 42 U.S.C. § 405(g) ("The court may, on motion of the Commissioner of Social Security made for good cause shown . . . remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security . . . ."); *see also* RUSKELL § 3:25 ("The court is also authorized at any time to order additional evidence to be taken before the Commissioner, but only upon a showing by ***either party*** that there is new evidence which is material and that there is good cause for the failure to incorporate that evidence into the record in a prior proceeding.") (emphasis modified).  As the very case cited by Class Counsel recognizes, "[w]hile a district court cannot consider new evidence in determining whether substantial evidence supported the ALJ's decision, ***it may nonetheless review new evidence to determine if a remand to the***

*Commissioner is appropriate*."  *Powers v. Astrue*, No. 12-448, 2013 WL 5522679, at *2 (M.D. La. Oct. 3, 2013) (emphasis added).[1]

*Asylum***.**  In asylum proceedings, the asylum officer is not limited to reviewing the materials submitted by the applicant, as Class Counsel proposes.  *See* 8 C.F.R. § 1208.12(a) ("In deciding an asylum application, or in deciding whether the alien has a credible fear of persecution or torture pursuant to § 1208.30 of this part, or a reasonable fear of persecution or torture pursuant to § 1208.31, the asylum officer may rely on material provided by the Department of State, the Office of International Affairs, other Service offices, or other credible sources, such as international organizations, private voluntary agencies, news organizations, or academic institutions."); *see also, e.g.*, *Reyes-Mercado v. Holder*, 486 F. App'x 415, 416 (5th Cir. 2012) (per curiam) (denying asylum; "To the extent Reyes-Mercado contends that the IJ and BIA should not have relied upon the Department of State Country Report in assessing his claims, he is wrong.") (citing *Rojas v. INS*, 937 F.2d 186, 190 n.1 (5th Cir. 1991)).  While the Board of Immigration Appeals "does not consider new evidence on appeal" from an immigration judge, new evidence "may be deemed a motion to remand proceedings to the Immigration Judge for consideration of that evidence."  U.S. DEPARTMENT OF JUSTICE, BOARD OF IMMIGRATION APPEALS PRACTICE MANUAL § 4.8(b) (2013), *available at* http://www.justice.gov/eoir/vll/ qapracmanual/BIAPracticeManual.pdf; *see also, e.g.*, *In re Anca Gabriela Danciu*, No. A078-

---

[1] Of course, even with these safeguards in place, the disability insurance program has been consistently assailed by fraudulent claims.  *See, e.g.*, U.S. GOV'T ACCOUNTABILITY OFFICE, GAO-13-635, DISABILITY INSURANCE: WORK ACTIVITY INDICATES CERTAIN SOCIAL SECURITY DISABILITY INSURANCE PAYMENTS WERE POTENTIALLY IMPROPER (2013), *available at* http://www.gao.gov/assets/660/656964.pdf (identifying $1.29 billion in improper payments); *see also* D. Randall Frye, *Fixing Disability Courts*, N.Y. TIMES, Jan. 19, 2014, *available at* http://www.nytimes.com/2014/01/20/opinion/fixing-disability-courts.html (describing a recent fraud by 1,000 retired New York City police officers and firefighters that cost the government $400 million, perhaps the single largest fraud loss the system has experienced from any one source).  In other words, if the Social Security system were statutorily designed to be as entirely one-sided as Class Counsel imagine — and it is not — there would hardly be reason for the Settlement Program to emulate it.  Nor, as noted above, is there any evidence that the Parties to the Settlement Agreement ever sought to adopt a system resembling the Social Security system in any way.

866-024, 2013 WL 6921675 (BIA Dec. 13, 2013).  While the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 provides that a court of appeals "may not order the taking of additional evidence," *see* 8 U.S.C. § 1252(a)(1), that prohibition is a unique feature of immigration law with no parallel in the Settlement Agreement.

*ERISA*:  Finally, Class Counsel cite *Anderson v. Cyctec Indus., Inc.*, No. 07-5518, 2009 WL 911296 (E.D. La. Mar. 27, 2009), for the proposition that in an ERISA case "'the district court is constrained to the evidence before the plan administrator.'"  *Id.* at *7 (quoting *Vega v. Nat'l Life Ins. Servs.*, 188 F.3d 287, 300 (5th Cir. 1999) (en banc)).  Again, however, the ERISA regime permits the plan administrator to introduce evidence in the first instance.  *See, e.g.*, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 827 (2003) (holding that a plan administrator is not required to give any special weight to a claimant's treating physician and recognizing that it is proper for the administrator to refer a patient to a Plan doctor for an "independent examination").

In short, despite their contrary protestations, Class Counsel identify no regime (even if they were proper analogues to a negotiated Rule 23 class settlement) in which a claimant is allowed to seek benefits or other relief without any opportunity for other parties to demonstrate that the claimant's application omits critical documents.  The Appeal Panel correctly determined that the Settlement Agreement does not create such a lopsided system either, as Rule 7 reflects.

**B.  BP's Right To Introduce Documents Demonstrating Ineligibility For Payment Is Not Limited To Wetlands Claims.**

As a fallback position, Class Counsel suggest that if BP is allowed to submit documents demonstrating that Wetlands claimants are ineligible for payment, "this certainly should not bleed over into BEL or other claims."  Proposed Reply at 4.  In making this argument, Class Counsel misleadingly suggest that BP's right to submit evidence was only recognized by a

limited group of "Appeal Panelists'" and was limited to "the particular context of a Wetlands Claim." *See id.* at 3.  Despite BP's prior Opposition, Class Counsel still fail to acknowledge that the Appeal Panel unanimously passed Rule 7 pursuant to their powers under Section 6.1.2.2.5.4 of the Settlement Agreement.  Class Counsel implicitly seek to overturn this properly established rule without ever actually mentioning its existence.

Class Counsel's logic is that BEL claimants "will be required to submit documents reflecting the business structure and ownership; Federal Tax Returns; existing business or occupational licenses; and other documents under Exhibit 4A from which the Program can certainly make an independent and reliable determination of not only Class Membership, but also Causation and Compensation."  *Id.* at 5.  This logic does not withstand scrutiny:  the same appellate procedural rules apply to all types of claims, and the same concerns that require BP to be able to submit evidence apply to all types of claims, not just Wetlands claims.

As just one example, one claimant submitted a Business Economic Loss claim to the Settlement Program even though its main business consists of cleaning refinery tanks, which excludes it from the class definition.  *See* Settlement Agreement Ex. 17 at 4 (identifying such activity as falling within the oil-and-gas exclusion). The Settlement Program awarded the claimant more than $1 million.  On appeal, BP demonstrated to the Panel that the Claimant's own website acknowledges facts confirming its excluded status.  The Appeal Panel reversed and held that claimant is not a class member.  Under the imbalanced rule that Class Counsel ask this Court to adopt, however, a stranger to the Class would have received a seven-figure payout.  *See generally* Appeal Panel Decision 2013-1446, *available at* http://www.deepwaterhorizon economicsettlement.com/docs/Appeal_Panel_Decision_VI.PDF (page 262).

8

Ultimately, while the documentation requirements for BEL claims are different from the requirements for Wetlands claims, the underlying concern is the same:  if critical documents are omitted, it will be possible for claimants who are ineligible for payment to mislead the Settlement Program into believing that they are eligible.  In light of Special Master Freeh's conclusion that the Settlement Program "needs to apply closer scrutiny and sound anti-fraud and business practices review," Rec. Doc. 11287 at 10, it is difficult to imagine why anyone — let alone the counsel charged with representing actual class members — would object to BP's submission of documents demonstrating that certain claimants are not members of the Class certified pursuant to Rule 23 or are otherwise ineligible for the payment that they seek.

## CONCLUSION

The Settlement Agreement contains detailed conditions that claimants must satisfy before they are eligible for payment, including specific tests for class membership.  Where evidence demonstrating that a claimant is ineligible for payment is withheld by the claimant and not discovered *sua sponte* by the Settlement Program, there is no provision of the Settlement Agreement, no binding or fitting analogue in administrative law (and certainly none the Parties agreed to consult), and no principle of procedural fairness that prevents BP from bringing it to the Appeal Panel's attention.

February 10, 2014

Respectfully submitted,

_/s/ Kevin M. Downey_

Kevin M. Downey
F. Lane Heard III
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 434-5000
Telefax:  (202) 434-5029

James J. Neath
Mark Holstein
BP AMERICA INC.
501 Westlake Park Boulevard
Houston, TX  77079
Telephone:  (281) 366-2000
Telefax:  (312) 862-2200

_/s/ Don K. Haycraft_

S. Gene Fendler (Bar #05510)
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone:  (504) 581-7979
Telefax:  (504) 556-4108

Daniel A. Cantor
Andrew T. Karron
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Telephone:  (202) 942-5000
Telefax:  (202) 942-5999

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 662-5985
Telefax:  (202) 662-6291

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000
Telefax:  (312) 862-2200

Jeffrey Lennard
Keith Moskowitz
DENTONS US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL  60606
Telephone:  (312) 876-8000
Telefax:  (312) 876-7934

Jeffrey Bossert Clark
Steven A. Myers
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 879-5000
Telefax:  (202) 879-5200

*OF COUNSEL*

**ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.
AND BP AMERICA PRODUCTION COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 10th day of February, 2014.

/s/ Don K. Haycraft
Don K. Haycraft