IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * | MDL NO. 2179 |
| | * | SECTION: "J" |
| This document relates to No. 12-970 | * | Honorable Carl J. Barbier |
| | | Magistrate Judge Shushan |
| | * * * | |

MEMORANDUM IN RESPONSE TO
BP'S MOTION TO ORDER PRODUCTION OF
CERTAIN DOCUMENTS BY SPECIAL MASTER FREEH

**MAY IT PLEASE THE COURT:**

The Andry Law Firm, L.L.C. ("The Andry Law Firm")[1] respectfully submits this memo regarding BP's *Motion to Order Production of Certain Documents by Special Master Freeh*.  R. Doc. 12254.

**I.      Introduction.**

On January 21, 2014, Williams & Connolly, L.L.P. ("Williams & Connolly"), as counsel for BP in this action, delivered a letter to Special Master Louis Freeh requesting the production

---

[1] The Andry Law Firm hereby objects and reserves its rights to continue to make any and all objections to the *Freeh Report* and the Special Master's appointment and authority in this matter, as set forth in prior filings, including the *Initial Objections and Response of The Andry Law Firm to the Freeh Report*, R. Doc. 12712,  including, but not limited to, any objections under the United States Constitution, 28 U.S.C. § 455, Rules for Lawyer Disciplinary Enforcement, the Federal Rules of Evidence, and the Federal Rules of Civil Procedure 4, 12(b)(1), 12(b)(5), 12(b)(6), and 53, including, but not limited to, lack of notice of and consent to the appointment of the Special Master, lack of notice of conflicts of interest and bases for disqualification of the Special Master, lack of waiver of objection to conflicts of interest and bases for disqualification of the Special Master, lack of notice of and consent to the scope of the mandate of the Special Master, the Special Master acting beyond the scope of his mandate and the scope permitted by law, violation of procedural and substantive due process, lack of opportunity to confront witnesses, hearsay, lack of meaningful opportunity to be heard, lack of evidentiary hearing, lack of opportunity to object to evidence, lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, lack of notice of complaint, orders and proceedings, lack of service of complaint, summons, appointment of Special Master, orders and proceedings, lack of personal jurisdiction, collateral estoppel, and *res judicata*.

of documents related to the Special Master's First[2] and Second Reports.  R. Doc. 12193-1.  Just

one day later,[3] on January 22, 2014, Gregory Paw, counsel for the Special Master, responded by

instructing Williams & Connolly to bring its "request to the Court for review and consideration."

R. Doc. 12254-3.  On January 29, 2014, Williams & Connolly and BP's in-house counsel filed a

*Motion to Order Production of Certain Documents by Special Master Freeh.*  R. Doc. 12554.  In

its proposed order, BP incorporated by reference all of the documents requested in its original

letter, including:

    1.    The documents cited in Special Master Freeh's First Report

    2.    The documents provided by the Special Master to Lionel Sutton, Christine
Reitano, Jon Andry, Glen Lerner, and related entities pursuant to Orders of this
Court that directed the production of a number of categories of "relevant"
documents.

    3.    The documents relating to the factual basis for the disclosures and
recommendations in Special Master Freeh's Second Report.

    4.    Certain other key transcripts, witness, statements, and additional documents
relevant to the Special Master's findings as to misconduct, conflicts of interest,
and deficiencies in internal controls.

    R. Doc. 12254-4; R. Doc. 12254-1.

    BP's motion closely mirrors the language contained in The Andry Law Firm's Motions

---

[2] *Independent External Investigation of the Deepwater Horizon Court Supervised Settlement Program* (the "Freeh Report"). R. Doc. 11287.
[3] The Special Master's response to BP is notably faster than it has ever been to any of the Andry Law Firm's requests for production.  For example, in the Andry Law Firm's first *Motion for Production of Documents*, the Special Master allowed six days to pass before responding.  R. Doc. 11355; R. Doc. 11408.  It is also curious that the Special Master provided advice to BP's counsel, as the Special Master provided BP with both the appropriate remedy to its issue and an avenue for follow-up questions for the Special Master.  R. Doc. 12254-3.

for Production of Documents. *See* R. Doc. 12172, at 1-3.  The Andry Law Firm was compelled to file a series of discovery motions because, as the Special Master specifically stated in his report, he would not "permit[] access to . . . underlying documents [of the report] at this time, unless otherwise directed by the Court." R. Doc. 11287, at 18.  First, in The Andry Law Firm's first motion to compel production of documents, filed September 19, 2013, just six days after the Special Master filed his first report, The Andry Law Firm noted that the Special Master's investigation was conducted over sixty-six days and included allegations based on more than 80 interviews, computer forensics, email and phone records, and, *inter alia*, other documents.  R. Doc. 11355-1, at 3.  The Special Master refused to disclose any investigatory materials.  R. Doc. 11408, at 2.  Citing due process and the federal rules of civil procedure – which require the production of any and all information reasonably calculated to lead to admissible evidence – The Andry Law Firm moved this Court for an order requiring the Special Master to provide to the appropriate parties the information upon which he based the *Freeh Report*.

On October 8, 2013, the Andry Law Firm again demanded that this Court order Special Master Freeh to produce documents related to the *Freeh Report,* stating that the Special Master's first production "falls short of what the Court ordered and what due process demands." R. Doc. 11610, at 1.[4]  The Special Master again opposed this motion, arguing that he had already provided hundreds of pages (though never discussing how many pages in total existed), that interviewees were accompanied by attorneys that should have taken notes of the sworn statements conducted by his minion, and that The Andry Law Firm's further requests were "misplaced" because the *Freeh Report* alone should have "provided The Andry Law Firm [with]

---

[4] The Court granted this motion on October 24, 2013.  R. Doc. 11719.

a clear understanding of the analytical process by which ultimate findings were reached, including voluminous citations to supporting materials . . ." R. Doc. 11627, at 2-3.  Of course, the Special Master failed to mention that he had provided almost none of the source materials referenced in the citations.

Simply put, BP's request – filed almost six months after the Special Master filed his initial report – encompasses the exact same documents that The Andry Law Firm has respectfully been requesting since just six days after the Special Master's initial report.  R. Docs. 12254-1, 11355.   Furthermore, the law supporting BP's motion for production has many similarities to the law cited by the Andry Law Firm five (5) months earlier.[5]  *Id.*

## II.     The Andry Law Firm is Entitled to Review the Same Documents that BP, if the Court Grants its Order, is Entitled to Review.

Special Masters are required to construct and disclose a record of all the "evidence considered or recommending findings of fact."  FED. R. CIV. PRO. 53, advisory committee notes. Withholding evidence upon which factual findings were made should only be permitted for "compelling reasons."  *Id.*

In *United States v. City of New York*, the court held that, pursuant to its order, a special master must submit to objecting claimants a copy of the evidence upon which he based his factfinding.   *United States v. City of New York*, No. 07-CV-2067 (NGG)(RLM), 2013 WL 2477182, at *5 (E.D.N.Y. June 7, 2013).   A special master could conduct investigations and make recommendations for each claimant, but the court, which would conduct a *de novo* review of the findings, and the claimant, if objecting to the special master's recommendation, would be

---

[5] For example, both BP and The Andry Law Firm cite *Ruiz v. Estelle*, in which the court held that traditional notions of due process and the production of relevant evidence apply to the reports of special masters. *Ruiz v. Estelle*, 670 F.2d 1115, 1162-63 (5th Cir. 1982).

entitled to a complete record of relevant evidence. *See id.* The court reasoned that relevant claimants were entitled to the information used in a finding about them. *See id.*

The Andry Law Firm is entitled to equal access to relevant documents in the *Freeh Report*. Much like the objecting claimants who were entitled to a full record of relevant evidence in *New York*, The Andry Law Firm is entitled to the entirety of evidence – including interview notes, phone and email records, transcripts, and other documents, *inter alia* – being used to "hold"[6] its claim. *Id; see Motion to Review, And/Or Objections To, Magistrate Judge Shushan's Rulings on The Andry Law Firm's Motions for Production*, R. Doc. 12085, *Motion for Extension of Time to File Response*, R. Doc. 11957, and all record documents referenced therein.

## III.   BP's Motives in Requesting the Basis for the *Freeh Report's* Conclusions this Late Are Highly Suspect.

This Court should address the curious question as to why BP is only now – nearly five (5) months after the Special Master filed the *Freeh Report* – requesting the production of investigative materials, while The Andry Law Firm and The Show Cause Parties have been demanding production of investigative material since only days after the report was filed.[7]

A timeline of BP's doings when compared with The Andry Law Firm's legal filings is especially helpful in understanding how suspect BP's sudden curiosity appears:

The Special Master filed the *Freeh Report* on September 6, 2013. R. Doc. 11287. Just six days later, on September 12, 2013, the Andry Law Firm filed a *Motion for Production of Documents* as well as a motion to expedite a hearing on that motion. R. Docs. 11355, 11356.

---

[6] The July 1, 2013 correspondence issued by Patrick A. Juneau to this Court explains that the claim of The Andry Law Firm was placed on hold in response to inquiries by BP *See* Rec. Doc. 10761-8; *see also* Rec. Doc. 10761-6 at 3.

[7] It could be argued, although the Andry Law Firm does not allege, that BP should be estopped from requesting a production that it should have requested more than five months ago.

Special Master Freeh filed a response in opposition to this motion on September 18, 2013; nevertheless, the Court granted The Andry Law Firm's motion for production of "relevant" information on September 18, 2013. R. Doc. 11412.

BP, without receiving any of the underlying materials allegedly supporting the *Freeh Report's* conclusions, embarked on an outrageous and baseless advertising campaign against The Andry Law Firm and other Business Economic Loss (BEL) claimants. BP chose not to plea before this Court, but instead to the media. On September 17, 2013, eleven (11) days after the *Freeh Report* was filed, and five (5) days after The Andry Law Firm filed its first *Motion for Production*, BP filed a full-page advertisement in the New York Times.[8] BP, misleading the public, made it appear that the courts had actually come to the findings of the *Freeh Report*. BP alleged that "[f]raud and misconduct in the Gulf settlement claims process has been confirmed."[9] *See Motion to Hold BP in Contempt of Court*, R. Doc. 12278.

Meanwhile, the Special Master, on The Andry Law Firm's motion and this Court's order, disclosed his first production of investigative material to the "Show Cause"[10] parties on September 30, 2013. This production was grossly inadequate and included hundreds of missing pages, and, on the pages that were produced, massive redactions that essentially rendered the production useless. Special Master Freeh further only produced selective summaries of phone

---

[8] BP Advertisement, THE NEW YORK TIMES (Sept. 17, 2013), http://media.nola.com/environment/other/BP%20Ad%209%2017%2013.pdf.
[9] Mark Schleifstein, *BP ad in New York Times repeats allegations of misconduct in oil spill claims office*, NOLA.COM (Sept. 17, 2013), http://www.nola.com/news/gulf-oil-spill/index.ssf/2013/09/bp_ad_in_new_york_times_repeat.html (including link to PDF version of the actual advertisement); *see also The Andry Law Firm's Opposition to BP's Motion for an Emergency Preliminary Injunction to Suspend Payments from the Court Supervised Settlement Fund* filed under seal in July of 2013 predicting the "multi-faceted legal and public relations campaign challenging the settlement agreement and this Court's interpretation of it."
[10] The "Show Cause" parties (AndryLerner, Andry Law Firm, Glen Lerner, Lionel Sutton, Christine Reitano, Gibby Andry, and Jonathan Andry) were ordered by this Court to show cause as to why the Special Master's report should not be adopted. R. Doc. 11288.

and text message records, as well as clearly not producing all "relevant" information as the court ordered. *See* R. Doc. 11412.

Instead of litigating in the media like BP did, the Andry Law Firm followed the proper avenue in protesting Special Master Freeh's first inadequate production and filed a second *Motion for Production of Documents* on October 8, 2013. R. Doc. 11610. Again, the Andry Law Firm filed a motion to expedite its motion. R. Doc. 11611. In support of its motion The Andry Law Firm filed under seal eleven separate exhibits expressly demonstrating to the court how the Special Master's first production excluded hundreds of pages of what could reasonably be interpreted as relevant investigatory materials.[11] R. Doc. 11618.

Again, the Special Master opposed The Andry Law Firm's second motion, and again The Andry Law Firm did not take its fight to the media, instead successfully moving for leave to file a memorandum in response. R. Docs. 11627, 11638, 11647. The same day that The Andry Law Firm's motion for leave was granted, The Andry Law Firm filed its objection and reply to the Special Master's second opposition to producing documents related to the *Freeh Report*. R. Doc. 11648. After granting The Andry Law Firm's motion, a second production was disclosed on October 31, 2013. Incredibly, this second production was still completely insufficient, and, after further motions and an *in camera* review, a third production was disclosed late on Christmas Eve, December 24, 2013. Still incomplete in terms of providing *all* the relevant information to the *Freeh Report*, The Andry Law Firm filed an appeal of Magistrate Judge's order regarding what evidence should and should not be produced on January 3, 2014. R. Doc.

---

[11] Other Show Cause parties, of course, also followed the proper avenues in seeking materials related to the *Freeh Report*. For example, Glen Lerner filed a similar *Motion for Complete Discovery* on October 9, 2013. R. Doc. 11619. Lerner filed a similar *Objections to Magistrate Shushan's Rulings* on January 10, 2014. Jonathan Andry filed a *Motion to Modify Order* on December 5, 2013. R. Doc. 11929. No Show Cause party ever ran to the media rather than pleading before this Court.

12085.  That motion is still pending.

Meanwhile, BP filed no motions with the Court requesting the production of documents. Instead, BP elected to continue its media assault on both the settlement and settlement claimants. On November 29, 2013, BP placed a full-page advertisement alleging that "thousands" of claimants with "non-existent, exaggerated" or unrelated claims were getting "windfall payments."[12] *See Motion to Hold BP in Contempt of Court*, R. Doc. 12278.    On December 10 and 11, 2013, BP went so far as to print the digits of a claim number in alleging that its loss "could not possibly have been affected by spill."[13]  On December 16, 2013, BP attacked a claim apparently filed by celebrity chef Emeril Lagasse's company Emeril's Homebase.  *See Emeril's Homebase, L.L.C.'s Motion and Incorporated Memorandum in Support to File Motion, Memorandum and Exhibits Under Seal.*  R. Doc. 12053.  Respected Loyola law professor Blaine LaCesne characterized the advertisement as "highly misleading and unfairly disparaging."[14]  On December 24, 2013, BP took out a full-page ad claiming that the claims office was committing "fraud."[15]   Malicious ads continued to appear on January 8, 2014 (alleging "fraud to corruption"), January 14, 2014 (maligning law firms that had filed claims), and January 28, 2014 (mischaracterizing a claim as "outrageous").[16]  There is no end in sight to BP's massive public

---

[12] http://www.thestateofthegulf.com/?tab=Advertisements&page=2
[13] http://www.thestateofthegulf.com/?tab=Advertisements&page=2
[14] Katherine Sayre, *Celebrity chef Emeril Lagasse targeted by BP in fight over oil spill payments*, NOLA.COM (Dec. 13, 2013), http://www.nola.com/business/index.ssf/2013/12/celebrity_chef_emeril_lagasse.html; **Error!  Main Document Only.***see also* http://theadvocate.com/news/7840199-123/bp-ad-blasts-celebrity-chef; http://www.wwltv.com/news/eyewitness/davidhammer/BP-uses-Emeril-as-example-of-abuses-in-oil-spill-settlement-235798801.html.
[15] BP Advertisement, THE NEW YORK TIMES (Dec. 24, 2013), http://fuelfix.com/wp-content/blogs.dir/731/files/2013/12/BPad122313_edit.jpg.
[16] *See* R. Doc.12172-4; *see also* 12182.33; http://www.thestateofthegulf.com/, http://www.thestateofthegulf.com/media/44952/BP-Ad-1-16-14.pdf, http://www.thestateofthegulf.com/?tab=Advertisements&page=2 ; *Motion to Hold BP in Contempt of Court*, R. Doc. 12278.

media campaign.

Perhaps even more contemptible is BP continuing its media blitz even after the Show Cause Parties, including The Andry Law Firm, had submitted their respective objections to the Special Master's report. *See, e.g.*, R. Docs. 12169, *Initial Objections and Response of The Andry Law Firm to the Freeh Report*, R. Doc. 12172. These Objections were filed attached with a myriad of investigatory material that the Special Master had been ordered to disclose, all of which absolved the Show Cause Parties, especially The Andry Law Firm.

For example, Exhibit "I" to The Andry Law Firm's *Initial Objections and Response of The Andry Law Firm to the Freeh Report* contained interview notes from the interview of claim handler Christopher Rinaldi by the minion of the Special Master. R. Doc. 12172-9. Those notes clearly contain exculpatory information to which BP had access. Further, Mr. Rinaldi stated that the reason why The Andry Law Firm's claim was processed within weeks of inquiry was because Mr. Rinaldi already had the documents he needed – documents he incorrectly had earlier thought were missing for months. R. Doc. 12172-9, at 2, 3. He thereby unduly delayed the claim for months, instead of expediting the claim as alleged in the *Freeh Report*. Additionally, Exhibit "H" indicates that it was in fact Katherine Torres from accounting firm Postlethwaite & Netterville who "went ahead and asked the team to prioritize the QC [quality control] review [of The Andry Law Firm's claim]." R. Doc. 12172-8, at 1; *see also Motion to Release Hold on Payment to the Andry Law Firm*, R. Doc. 12277, especially footnotes 9 through 13 and related discussion.

BP, in clear bad faith, ignored all this exculpatory evidence on the record and continued placing false advertisements in the national media. Most importantly to the Andry Law Firm, on

January 22, 2014, five (5) days after the Andry Law Firm filed its *Initial Objections and Response of The Andry Law Firm to the Freeh Report* and exhibits containing exculpatory information, BP broke numerous settlement confidentiality rules by running an advertisement naming The Andry Law Firm as a claimant and disclosing purported facts related to its claim as well as the amount The Andry Law Firm was supposed to receive. *See Motion to Hold BP in Contempt of Court*, R. Doc. 12278. That advertisement began with the highly pejorative phrase "Another law firm hits the jackpot."[17] Had BP genuinely cared about the truth of the *Freeh Report*, as it now alleges, BP would have reviewed the material obtained in the course of the investigation preceding the *Freeh Report*, which The Andry Law Firm itself filed into the court record, before continuing to make false allegations in national newspapers.

   **During this entire period of time – September 6, 2013 to January 29, 2014 – BP did not ask for a single piece of investigatory material related to the *Freeh Report*.** Instead, BP waged a vicious and full-scale attack in the national media in an attempt to dismantle the claims program, smear the courts, and vilify claimants. *See* Rec. Docs. 11819 and 11890. Meanwhile, The Andry Law Firm and the other Show Cause Parties successfully litigated through the proper avenue – the Court – to receive investigatory materials that should have been produced to them as soon as the *Freeh Report* was released.

   BP's intent in publishing attack advertisements instead of filing motions is certainly clear. BP hoped that the advertisements would change public discourse enough for the courts to derail the settlement. *See* Rec. Doc. 11890, p.10; *see also B.P.'s Mem. Supp*, Rec. Doc. 10761-1. Unfortunately for BP, the courts have yet to succumb to BP's extrajudicial tactics. *See* R. Doc.

---

[17] http://www.thestateofthegulf.com/?tab=Advertisements&page=2

12055.

Since BP's attempt to dismantle the settlement program failed, BP is now launching its next attack on the Deepwater Horizon Economic Claims Center itself, including its eminent Claims Administrator, Patrick Juneau. Such intent is evident in BP's motion, which states that Freeh's "Second Report points to continuing and fundamental institutional weaknesses in the CSSP's management – weaknesses that may explain why ethical improprieties *at the highest level of management* continue, and continue to be uncovered." R. Doc. 12254-1, at 7 (emphasis added).

Yet, this Court should not now allow BP to turn its attack from the settlement itself, to the claims office and its administrators, which is exactly what BP is intending to do in filing its request for documents related to the Special Master's reports. R. Doc. 12254. Had BP actually cared about the truth of the allegations made in the *Freeh Report* – or genuinely cared about maintaining the CSSP's fiduciary duties to BP – this request would have been filed long ago, just after the *Freeh Report* was issued. This was the avenue that The Andry Law Firm and other Show Cause Parties took; this Honorable Court should read between the lines in gathering why BP did not similarly do so until now.

## IV.    Conclusion.

Should this court grant, in whole or in part, BP's *Motion to Order Production of Certain Documents by Special Master Freeh*, then this Honorable Court should also disclose the exact same documents to The Andry Law Firm for its own review as well. Furthermore, this Court should take into consideration BP's questionable motives in only now requesting a production of

11

investigatory materials more than five (5) months after Special Master Freeh filed the *Freeh Report*.

Finally, The Andry Law Firm would like to reiterate that from the very date the Special Master issued the *Freeh Report*, The Andry Law Firm has advocated for a complete and unredacted production of all relevant investigatory materials underlying the *Freeh Report*. The Andry Law Firm has no reason to fear any such production because The Andry Law Firm never acted improperly. However, BP should not be allowed to belatedly demand production of documents in bad faith, and receive documents not received by The Andry Law Firm, especially when The Andry Law Firm has fought for months for such documents while BP ignored the truth and instead conducted a smear campaign.

Respectfully submitted,

*/s/ Stephen M. Gelé*
RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. GELÉ (#22385)
           OF
SMITH & FAWER, L.L.C.
201 St. Charles Avenue, Suite 3702
New Orleans, LA 70170
Tel:    (504) 525-2200
Fax:    (504) 525-2205
sgele@smithfawer.com

Attorneys for The Andry Law Firm, L.L.C.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing motion has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 10th day of February, 2014.


/s/ Stephen M. Gelé
Stephen M. Gelé

13