UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO ON APRIL 20, 2010 | MDL 2179 <br><br> SECTION "J" |
| This Document Applies to: | JUDGE BARBIER |
| No. 12-970. Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production Inc., et al. | MAGISTRATE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

MAY IT PLEASE THE COURT:

Lionel H. Sutton III, appearing in proper person, respectfully submits this Memorandum in support of his Motion to dismiss the Motion sought to be filed against him by the Special Master.

### INTRODUCTION

Special Master Louis Freeh filed a Motion of the Special Master for Return of Payments Made to Casey C. Thonn and Others. The Special Master's Motion is based on his unsupported allegations that Casey Thonn should not have received $357,002.35 from the DHECC in settlement of his seafood claims.

The Special Master's Motion does not name Mover, does not state a claim against Mover and does not seek relief from Mover. The Special Master filed his claim as a Motion, as opposed to an initial Complaint. The Special Master failed to serve a Summons and copy of a Complaint on Mover. Instead, the Special Master provided an electronic copy to counsel representing Mover in another matter before this Court.

In sum, the Special Master's Motion fails to name Lionel Sutton, much less set forth

sufficient facts to give rise to a viable claim against him. It fails to comply with Rules 3, 4, 8 and 10 of the Federal Rules of Civil Procedure. Even if this Court were to assist the Special Master by converting his Motion to a Complaint, these violations would remain.

## LAW AND ARGUMENT

### I. Rule 12(b)(6) Failure to State a Claim

A complaint must set forth sufficient facts to support the alleged grounds for relief. Lormand v. US Unwired Inc., 565 F.3d 228 (5th Cir. 2009). Dismissal is appropriate if the allegations in a complaint could not raise a claim of entitlement to relief. Cuvillier v. Taylor, 503 F.3d 397 (5th Cir. 2007. The Special Master's Motion does not make any claim of entitlement to relief from Mover.

The Special Master's Motion does not name Lionel Sutton at all. The only reference to Sutton is in one line on page 4 of the accompanying Memorandum wherein the Special Master asserts upon "information and belief" that "Mr. Thonn's counsel" received attorney's fees for Mr. Thonn's seafood claims and that approximately $35,700.23 was "transferred as a referral fee to Lionel Sutton....."

One, there is no pleading, prayer or any other request in the Motion or accompanying Memorandum that Lionel Sutton pay $35,700.23 to the DHECC. Two, the Special Master only seeks the return of fees from "The professionals who helped Mr. Thonn submit his false claims, **and** who failed to detect the fact that Mr. Thonn was submitting false documents to the DHECC......" (emphasis added). Three, the Special Master is claiming entitlement to over $91,000 more than the DHECC paid.

### A. The Special Master's Motion and/or Memorandum fail to state any claim against Lionel Sutton.

Under the federal standard of notice pleading, a plaintiff is required to allege in the complaint

2

all of the elements supporting their right to recover against a defendant. Tuchman v. DSC Communications Corp., 14 F.3d 1061 (5th Cir. 1994). Not only does the Special Master's Motion not allege any elements supporting his right to recover from Sutton, the Motion does not even allege a right to recover from Sutton. Sutton is not named in the Motion at all.

If this Court somehow converted the Special Master's Motion **and** Memorandum into one complaint, there is still no allegation that the DHECC has any right to recover from Sutton. At best, the Motion and Memorandum can only be read as seeking the return of fees from the professionals that assisted Thonn in submitting his claims to the DHECC.

### B. Lionel Sutton and/or Sutton's law firm did not assist Casey Thonn in submitting his claims to the DHECC.

On March 6, 2011, Casey Thonn retained Sutton's firm to represent him in his claim for damages caused by the "BP Oil Spill". This was almost a year before the formation of the DHECC and at a time when claims were only being presented to the GCCF. By letter dated July 20, 2011, the GCCF acknowledged Thonn's representation by the firm and issued the first of several deficiency letters. (See GCCF letter dated July 20, 2011 attached as Exhibit A). On March 30, 2012, the firm sent a discharge letter to Thonn advising him that the firm could no longer represent him. (See firm discharge letter attached as Exhibit B). On that same date, the firm also notified the GCCF. (See firm letter to GCCF attached as Exhibit C). Christine Reitano terminated her employment with Sutton's firm on that same day, March 30, 2012, and began her employment at the Claims Office on April 1, 2012. From then on, neither Lionel Sutton or any other attorney with his firm represented Thonn for any damages related to the oil spill. As the DHECC had not even been opened yet, it would have been impossible for the firm to assist Thonn in submitting his claims to the DHECC during the year that he was represented. Notably, the Special Master made no allegation in his

3

Motion, Memorandum or any other pleadings that Sutton's firm ever represented Thonn subsequent to the formation of the DHECC. Furthermore, the Special Master has never alleged that Sutton or his firm helped Thonn "submit" his claims to the DHECC

Following payment to Thonn on his seafood claims, Sutton requested that Thonn's current attorneys pay him for the work his firm did in submitting Thonn's claim to the GCCF. As evidenced by previous submissions from the show cause parties, there was never a request for a "referral" fee and no referral fee agreement was signed. After Thonn was notified that Sutton's firm could no longer represent him, he was provided with the names of two law firms known to be handling BP cases. Thonn was free to seek any representation he desired, or none at all.

The only evidence ever produced by the Special Master shows that no matter what the payment was called, Sutton was only paid for the work his firm did for Thonn prior to the existence of the DHECC. (See deposition of Lionel Sutton, pp.68 & 69 attached as Exhibit D). It is well settled that when an attorney representing a client under a contingency fee contract is discharged and the client retains another attorney under a contingency fee contract, the fee is divided between the two attorneys on a "quantum meruit" basis. Saucier v. Hayes Dairy Products Inc., 373 So.2d 102 (La. 1978). In the instant case, Sutton and Thonn's subsequent attorneys agreed that the work Sutton's firm did for Thonn in presenting his claims to the GCCF was worth an amount equal to 50% of the fee recovered from the DHECC.[1] No one has suggested that it was not.

Even when the previous attorney is **legally prevented** from continuing to represent the client, **a fee is still owed.** Cooper v. Texaco Inc., 961 F.2d 71 (5th Cir. 1992). On January 30, 2012, the LSBA Rules of Professional Conduct Committee released PUBLIC Opinion 12-RPCC-018 which

---

[1] Ms. Reitano played no part in these discussions and agreement. She was unaware of the discussions, agreement and payment until the day she was deposed by the Special Master.

4

concluded that a subsequent lawyer "can - and may even have an obligation to - pay" a suspended or disbarred lawyer fees earned prior to the suspension or disbarment. Furthermore, the committee found that where the lawyers never worked together simultaneously on the case, but, instead, represented the client at different times, the requirements of Rule 1.5 of the Louisiana Rules of Professional Conduct "would not apply." PUBLIC Opinion 12-RPCC-018 f 3. As this Court may recall, the Special Master based his conclusions in the "Freeh Report" that Sutton violated the LA Rules of Professional Conduct, and his resulting recommendation for sanctions, on his mistaken belief that Rule 1.5 was applicable to the case at hand.

Unlike the subject of PUBLIC Opinion 12-RPCC-018 and the attorney in Cooper, Sutton was not suspended or disbarred. He was not prevented from continuing the practice of law and he continued to maintain a private practice during the pendency of his part time contract with the DHECC with the full knowledge of the CA. Just as Pat Juneau, Mike Juneau and their law firm, Juneau David, continued to represent clients, so did Sutton and his firm. Given the magnitude of the Economic Class, it is not unreasonable to assume that both firms could have had clients that were also claimants, knowingly or not. The representation of claimants in matters prior to the existence of the DHECC does not equate in any way to assisting clients in submitting claims to the DHECC. It does not for the Juneau's and it should not for Sutton.

Sutton was never told that he could not get paid for work his firm did on cases prior to the DHECC. His employment agreement did not state that he could not get paid for work his firm did on cases prior to the DHECC. Sutton was never told that his firm could not represent claimants in other matters. Sutton was never presented with any written policy that neither he nor his firm could represent claimants in other matters. Juneau only told Sutton that he "can't represent anybody in this thing, today or tomorrow, in the future." (Deposition of Pat Juneau p.48 lines 21,22 attached as

5

Exhibit E). Given <u>Saucier</u>, <u>Cooper</u> and <u>PUBLIC Opinion 12-RPCC-018</u>, Sutton's entitlement to a fee for the work his firm did on Thonn's case prior to the DHECC is well established.

The Special Master's Motion and Memorandum allege only that "The professionals who helped Mr. Thonn submit his false claims, and who failed to detect the fact that Mr. Thonn was submitting false documents to the DHECC" be required to return any payment received. The Special Master's Motion makes no allegation that Sutton was one of those professionals. The Special Master's Memorandum contains no facts to establish that Sutton was one of those professionals. At best, the Special Master's Memorandum alleges that one of those professional may have paid Sutton a fee that they were obligated to pay. <u>PUBLIC Opinion 12-RPCC-018.</u> Without such allegations and facts, there is no entitlement to relief and dismissal is appropriate as a matter of law. <u>Cuvillier v. Taylor</u>, 503 F.3d 397 (5th Cir. 2007.

### C.     The Special Master has no right to recover more than the DHECC paid.

The Special Master alleges that the DHECC paid Casey Thonn $357,002.35 on his seafood claims. Pursuant to the Motion filed with this Court, the Special Master seeks recovery of that amount from Casey Thonn. Yet, the Special Master also seeks the return of any professional fees Thonn may have paid to those assisting him in submitting those claims to the DHECC.

When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must accept all well-pleaded facts as true. <u>Campbell v. Wells Fargo Bank</u>, 322 F.3d 371 (5th Cir. 2003). Putting aside whether the Motion contains any well-pleaded facts, if the Court were to accept the Special Master's allegations as true, the DHECC would receive a windfall of over $91,000. There is no jurisprudence, and the Special Master has failed to provide any reason that there should be, which would allow such an award. Disgorgement of proceeds can only be remedial relief, not a penalty assessment. <u>SEC v. Manor Nursing Centers, Inc.</u>, 458 F.2d 1082 (2nd Cir. 1972).

6

## II.    Rule 12(b)(2) Lack of Personal Jurisdiction

Although the Special Master's Motion does not contain a statement of the grounds of jurisdiction as required by Rule 8(a)(1), he attempts to comply by alleging in his Memorandum that the Court already has jurisdiction over " the Parties and their Counsel" pursuant to Section 18.1 of the Amended Settlement Agreement. While Section 18.1 does provide that the "Court shall retain continuing and exclusive jurisdiction over the Parties and their Counsel", Casey Thonn is not, and never was, a Party. Section 38.103 defines parties as Plaintiffs and the BP Parties. Section 38.106 defines Plaintiffs as the named plaintiffs and the proposed class representatives. Thonn is neither. Mover feels compelled to point out that this is one more example of the Special Master's continuing misunderstanding and/or misstatement of the Settlement Agreement and its contents.

Admittedly, Section 18.1 also provides that each member of the Economic Class and their Counsel are deemed to have submitted to the jurisdiction of this Court for any "suit, action, proceeding or dispute" arising out of or relating to the Settlement Agreement. However, the Special Master's Motion does not allege jurisdiction over Thonn as an Economic Class member. Furthermore, even if this Court were to assist the Special Master by correcting his mistake, there is no allegation that Sutton was ever Thonn's counsel while Thonn was an Economic Class member. As stated above, Sutton and/or his firm never represented Thonn under the Settlement Agreement. Sutton's firm discharged Thonn from any further representation on March 30, 2012, long before the Economic Class was certified and long before any submissions were made to the DHECC. (See Exhibit B).

Sutton does not claim that he would never be subject to the jurisdiction of this Court. Sutton only claims that since he was never Counsel for an Economic Class Member in any matter relating to the Settlement Agreement, he could not have submitted to jurisdiction pursuant to that agreement.

7

Accordingly, even if the Motion practice allowed by Section 18.1 were applicable to Economic Class Members and their Counsel (which is not clear from a reading of Section 18.1 alone), it is certainly not applicable to Sutton.

If this Court finds that 18.1 is applicable, Mover respectfully submits that the Special Master failed to comply with the requirements of Section 18.2 before filing his Motion, thereby rendering his Motion premature.

Anticipating that the Special Master will argue that Mover has already submitted to the jurisdiction of this Court by responding to the Rule to Show Cause, Mover respectfully submits that the Special Master cannot be both the prosecutor and the judge in the same proceeding. Fed. R. Civ. Proc. 53. Either this Motion should be treated as the separate action that it is or the Special Master and his employees should withdraw.

### III. Rule 12(b)(4) Insufficient Process

Fed. R. Civ. Proc. 3 requires that all actions be commenced by filing a complaint with the Court. It is clear that by filing a Motion, as opposed to a complaint, the Special Master failed to comply with Rule 3 as it pertains to Sutton. Fed. R. Civ. Proc. 4 requires that a Summons be issued. It is clear that by filing a Motion, the Special Master failed to comply with Rule 4 as it pertains to Sutton. Because the Special Master's Motion does not comply with Rules 3 & 4 of the Federal Rules of Civil Procedure, the same must be dismissed for insufficient process as to Sutton.

Fed. R. Civ. Proc. 10(a) requires that the title of an initial complaint must name all of the Parties. The Special Master's Motion does not name Lionel Sutton in the title or anywhere else in the Motion. Rule 10(b) requires that a party must state its claims in numbered paragraphs. The Special Master's Motion does not state any claims against Lionel Sutton in any paragraphs, much less numbered paragraphs. Because the Special Master's Motion does not comply with Rule 10 of

the Federal Rules of Civil Procedure, the same must be dismissed for insufficient process as to Sutton.

### IV.   Rule 12(b)(5) Insufficient Service of Process

When service of process is challenged, the serving party bears the burden of proving good cause for failing to properly effect service. Sys. Signs Supplies v. U.S. Department of Justice, 903 F.2d 1011 (5th Cir. 1990).

Fed. R. Civ. Proc. 4© requires that a Defendant be served with the Summons and a copy of the Complaint unless waived. Rule 4(e) requires that a Defendant within a Judicial District be served personally, or by leaving a copy with someone at his dwelling, or by delivering a copy to an authorized agent. The record shows that Sutton was not served with a Summons and a copy of a Complaint either personally, at his abode or with an authorized agent. The record shows that the Special Master did not request a waiver of service from Sutton. Because the Special Master's Motion does not comply with the service requirements of Rule 4© and 4(e) of the Federal Rules of Civil Procedure, the same must be dismissed for insufficient service of process as to Sutton.

### CONCLUSION

The Special Master has failed to assert any claims against Sutton. The Special Master has failed to assert grounds for jurisdiction over Sutton. The Special Master has failed to assert the basis for filing this action as a Motion. The Motion violates Rules 3, 4, 8 and 10 of the Federal Rules of Civil Procedure.

For all of the above and forgoing reasons, the Motion, if it was filed against Sutton, should be dismissed, and any relief that is purported to be claimed from Sutton should be denied.

Respectfully submitted,

Lionel H. Sutton, III *in proper person*
Bar No. 20386

935 Gravier St., Ste. 1910
New Orleans, LA 70112
Ph. (504) 592-3230
Fx. (504) 585-1789

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has been forwarded to all counsel of record by electronic means, including the CM/ECF system.

NEW ORLEANS, LOUISIANA this 14 day of February, 2014.

Lionel H. Sutton, III