IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179<br><br>SECTION J |
| This Document Relates To:  10-4536 | * * * * | Honorable CARL J. BARBIER<br><br>Magistrate Judge SHUSHAN |

**[PROPOSED] CASE MANAGEMENT ORDER REGARDING ENVIRONMENTAL ISSUES RELATING TO THE CLEAN WATER ACT PENALTY PHASE**

The potential environmental impacts associated with the Oil Spill involving the Oil Rig *"Deepwater Horizon"* in the Gulf of Mexico, that began on or about April 20, 2010 ("*Deepwater Horizon* Incident") are being separately investigated in a Natural Resource Damages Assessment ("NRDA") pursuant to Section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations, 15 C.F.R. §§ 990 *et. seq*.  In order to continue to organize and manage this complex litigation as efficiently as possible, and upon consideration of the briefs filed by certain parties regarding this matter, certain categories of potential environmental impacts shall be addressed in this Clean Water Act matter under Section 311(b) of the Clean Water Act, 33 U.S.C. § 1321(b) ("this CWA Matter"), and other topics and categories of potential environmental impacts shall not be addressed in any way in this CWA Matter, and instead shall be addressed as part of the NRDA process, including any litigation involving the NRDA.

**IT IS ORDERED** that the scope of the environmental Penalty Phase shall be limited as follows:

1. Except as otherwise provided herein, in the Penalty Phase of this matter, the Parties shall not present, assert, rely upon, refer to, recite, suggest, or mention, directly or indirectly, any evidence, documents, demonstratives, testimony, argument, or other information relating to:

a) The presence or movement (also called "fate and transport") of any Oil-Related Materials and/or Dispersants in the Gulf of Mexico;

b) Any "plume" or aggregation of Oil-Related Materials and/or Dispersants in the Gulf of Mexico;

c) The chemical concentration, chemical or biological transformation, or bioavailability of any Oil-Related Material and/or Dispersants in the Gulf of Mexico;

d) The presence, chemical concentration, chemical or biological transformation, or bioavailability of any Oil-Related Materials and/or Dispersants in, on, above, or below the seafloor;

e) Any injury on Marine Organisms arising out of or resulting from any Oil-Related Materials and/or Dispersants;

f) Any pathways through which any Oil-Related Materials and/or Dispersants may, either directly or indirectly, impact Marine Organisms;

g) The health, distribution, or abundance of any Marine Organisms during or after the *Deepwater Horizon* Incident;

h) Any injury or Indirect Effects on Marine Organisms arising out of or resulting from the operation of freshwater diversion structures during the *Deepwater Horizon* Incident;

i) Any injury or Indirect Effects on Marine Organisms arising out of or resulting from any *Deepwater Horizon* Incident response-related operations;

j) Marine mammals, including, but not limited to, any cetaceans and manatees, and the current ongoing declared Unusual Mortality Event ("UME") related to cetaceans in the Gulf of Mexico;

k) Sea turtles, including, but not limited, to Kemp's ridley (*Lepidocheyls kempii*), leatherback (*Dermocheyls coriacea*), hawksbill (*Eretmochelys imbricata*), green (*Chelonia mydas*), and loggerhead (*Caretta caretta*) sea turtles;

l) Any Indirect Effects to any natural resource, wildlife, ecosystem, habitat, ecological niche, or Marine Organisms, arising out of or resulting from the *Deepwater Horizon* Incident;

m) Any future harm, future injury or future Indirect Effect to any natural resource, wildlife, ecosystem, habitat, wildlife population, ecological niche, or Marine Organism arising out of or resulting from the *Deepwater Horizon* Incident;

n) Any injury or Indirect Effect on commercial fisheries or commercial fishing operations arising out of or resulting from the *Deepwater Horizon* Incident; and

o)  Any injury or Indirect Effect on recreational fishing arising out of or resulting from the *Deepwater Horizon* Incident.

2. Notwithstanding any of the factors set forth in 33 U.S.C. § 1321(b)(8) or otherwise, the Court will not consider the matters enumerated in Paragraph 1 as relevant to the CWA Matter and the Court will not consider these items in the determination of any penalty imposed in this CWA Matter.

3. Nothing herein shall be construed to limit the evidence, testimony, argument or other information the Parties may present regarding:

   a) Efforts to minimize or mitigate the potential effects of Oil-Related Material potentially arising out of the *Deepwater Horizon* Incident, including cleanup, mitigation, restoration, early restoration, remediation, and other efforts to prevent, contain, or mitigate the presence or effects of Oil-Related Materials or Dispersants such as through the use of booms, skimming, *in situ* burning, dispersants, and other measures, projects, or initiatives;

   b) The source, origin, physical or chemical characteristics of Oil-Related Materials on any shoreline, wetlands, marshes or beaches; or

   c) Claims, payments and contributions that BPXP has made in connection with the *Deepwater Horizon* Incident.

4. For all matters relevant to the environmental impact and recovery resulting from the *Deepwater Horizon* Incident that are not hereby excluded from the scope of this CWA Matter, the parties are entitled to full discovery subject to the Federal Rules of Civil Procedure and any other applicable rules and orders of this Court.

5. In the event of any future administrative or judicial proceeding related to natural resource damages resulting from the *Deepwater Horizon* Incident, any determination of the Court made in this CWA Matter related to the environmental impact resulting from the *Deepwater Horizon* Incident shall not be binding on any party for any purpose other than this CWA Matter.

6. For purposes of this order, the following terms shall be defined as follows:

   a) The "Parties" are the United States, BP Exploration & Production Inc. ("BPXP") and Anadarko Petroleum Corporation ("Anadarko");

   b) "Oil-Related Materials" shall be defined as any of the following to the extent resulting from the *Deepwater Horizon* Incident: (i) oil, (ii) polycyclic aromatic hydrocarbons ("PAHs"), (iii) hydrocarbons, (iv) other oil or gas constituents, (v) derivatives of any of the foregoing from biological, chemical, photochemical or other processes, (vi) any aggregation, mixture or combination of any of the foregoing with any other material including, without limitation, organic matter, inorganic matter, sediments, biological

exudates, sand, and water; or (vii) any combination of the foregoing;

c) "Dispersants" shall be defined as any of the following to the extent resulting from the *Deepwater Horizon* Incident: (i) dispersants, (ii) dispersant constituents, (iii) derivatives of any of the foregoing from biological, chemical, photochemical or other processes, or (iv) any aggregation, mixture or combination of any of the foregoing with any other material including, without limitation, organic matter, inorganic matter, sediments, biological exudates, sand, and water; and

d) "Marine Organisms" shall be defined to include: aquatic, pelagic, benthic, demersal, neustonic, surface, or subsurface organisms, except that marsh, beach, and other shoreline vegetation shall not be included in the definition of "Marine Organisms."

e) "Indirect Effect(s)" shall be defined to include: latent, sublethal, reproductive, genetic, genomic, pharmacologic, enzymatic, physiological, multigenerational, phototoxic, food web, food chain, trophic, cascading, predator-prey or biodiversity effects.

New Orleans, Louisiana, this __th day of February, 2014.

_____

**CARL J. BARBIER**

**UNITED STATES DISTRICT JUDGE**