UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * | MDL NO. 2179 SECTION J JUDGE BARBIER |
| **THIS PLEADING APPLIES TO:** No. 12-311 | * * * | MAG. JUDGE SHUSHAN **JURY TRIAL DEMANDED** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF CAMERON INTERNATIONAL CORPORATION'S
MEMORANDUM IN OPPOSITION TO DEFENDANT
LIBERTY INSURANCE UNDERWRITERS, INC.'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
<u>CONCERNING TEXAS INSURANCE CODE CLAIMS</u>**

1150962v1

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ................................................................................................................. i

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................5

I.  CAMERON'S ACTUAL DAMAGES FOR LIBERTY'S VIOLATION OF CHAPTER 541 OF THE TEXAS INSURANCE CODE ARE AT LEAST THE POLICY LIMITS THAT LIBERTY WRONGFULLY DENIED TO CAMERON. ...........5

    A.  Cameron Suffered "Actual Damages" In The Amount Of Liberty's Wrongfully Withheld $50 Million Policy Limit As A Matter Of Law ....................6

    B.  Liberty's Violation Of Chapter 541 Caused Cameron To Incur Legal Fees And Expenses, Which Also Constitute "Actual Damages." ..................................10

II.  CAMERON IS ENTITLED TO DEFENSE EXPENSES AND BAD FAITH DAMAGES UNDER CHAPTER 542 OF THE TEXAS INSURANCE CODE. .............12

    A.  Insurance Policy Construction Under Texas Law. ................................................12

    B.  The INIC Policy Contains An Independent Duty To Pay Defense Expenses. .................................................................................................................13

    C.  The Liberty Policy Incorporates The Duty To Pay Defense Expenses And Does Not Expressly Disclaim That Duty. ..............................................................15

CONCLUSION ..............................................................................................................................17

1150962v1

Plaintiff Cameron International Corporation ("Cameron") respectfully submits this memorandum of law in opposition to the Motion for Partial Summary Judgment Concerning Cameron's Texas Insurance Code Claims ("Motion for Partial Summary Judgment" or "Motion") filed by defendant Liberty Insurance Underwriters, Inc. ("Liberty").

## INTRODUCTION

Cameron commenced this action to seek redress for Liberty's blatant and bad faith breach of its contractual obligations to pay Cameron $50 million in insurance limits for the loss it suffered as a result of the Macondo Well blowout, even as all of Cameron's other insurers, including those above Liberty in Cameron's tower, resolved the claim.

When Cameron purchased insurance from Liberty, Cameron made clear to Liberty's underwriters that it was seeking coverage for catastrophic losses of the size and nature that could arise in a blowout. As the manufacturer of blowout preventers, this was the biggest risk that Cameron faced. Liberty fully understood this risk and sold the Liberty Policy, in exchange for a substantial premium, so that Cameron would have insurance for it.

When the Macondo Well blowout occurred in April 2010—the precise risk for which Liberty sold insurance to Cameron—Cameron promptly gave notice of its claim under the Liberty Policy. This blowout, as the Court is aware, was one of the largest in history and Cameron's potential exposure was astronomical. At first, Liberty did not reject Cameron's claim, nor did it identify the policy defense on which it would later rely. Cameron thus spent the next eighteen months answering Liberty's questions, providing millions of pages of documents to Liberty, and meeting with Liberty to discuss litigation status and defense strategy.

Things changed in November 2011. Shortly after Cameron entered into settlement negotiations with BP, Liberty told Cameron for the first time that it had no obligation to contribute to any settlement with BP based on an "Other Insurance" provision in its policy.

- 1 -

1150962v1

The so-called "other insurance," however, was nothing more than a contested claim by Cameron for contractual indemnity that Cameron was litigating at the time with Transocean and BP. Cameron did not have any actual other "insurance," much less any other insurance that Cameron could use to fill the hole in its tower left by Liberty.  Undeterred by these facts, Liberty told Cameron that, if it wanted the insurance for which it had paid, it had to forgo settling and continue to litigate in the MDL, betting its entire company and tens of thousands of jobs.  Only if the Court rejected Cameron's claim for indemnity from Transocean would Liberty pay a dime, even if that meant Cameron had to be put into bankruptcy first.

Cameron decided it would settle with BP to avoid the catastrophic risk Liberty would have imposed on Cameron.  On December 16, 2011, following a mediation before Magistrate Judge Shushan, Cameron and BP announced that they had entered into a settlement in which, in exchange for a payment of $250 million to BP, Cameron received a full release and an agreement by BP to indemnify Cameron against most of its future losses arising from the Macondo Well blowout (the "BP-Cameron Settlement").  All of Cameron's insurers contributed to the settlement, even insurers that could have taken the exact same "other insurance" position as Liberty.  Liberty refused.  Liberty also did so despite the fact that Cameron negotiated, at risk of the settlement, specific provisions in the BP-Cameron Settlement to preserve Liberty's right (if any) to pursue recovery from Transocean if Liberty paid Cameron.

Liberty's excuses, of course, were plainly pretextual.  Nothing under the Liberty Policy permitted Liberty to refuse to contribute to the settlement based on the possibility that Cameron might ultimately have obtained a final judgment affirmed on appeal against Transocean, which Cameron might or might not have been able to collect years later.  Rather, Liberty was trying to use a creative (but wrong) argument to negotiate a substantial discount off

policy limits owed to Cameron, with the BP-Cameron Settlement as leverage. James Engel, Liberty's Chief Claims Officer, admitted this was his strategy when he met with Cameron's Chief Financial Officer, Charles Sledge. Reporting on one of their conversations, Mr. Sledge testified:

> So you're saying that Cameron has to put itself at risk of a judgment pre getting the indemnity ruled on. That would bankrupt the company. And then ultimately if we're successful in getting an indemnity in bankruptcy, you pay 50 million bucks. Is that really what – the policy you intended to write to Cameron? And [Mr. Engel] just totally said, "Well, you know, I'm just saying I deserve more money." That was his response.[1]

In short, and as will be demonstrated at trial, Liberty knowingly engaged in unfair claims settlement practices in contravention of Chapter 541 of the Texas Insurance Code. Liberty does not—and cannot—deny that this presents a triable issue for the jury. Liberty's only argument on this motion is that Cameron's bad faith claims under Chapter 541 should be dismissed because Cameron suffered no "independent injury."

Apart from the gross unfairness of not allowing Cameron to present its claims of plainly inappropriate conduct to a jury, Liberty has the law wrong. Contrary to Liberty's argument, "independent injury" is not an essential element of a Chapter 541 claim. (*See, e.g.*, Liberty Br. at 1, 9.) All that Chapter 541 (formerly Article 21.21)[2] requires a policyholder to show is that it suffered "actual damages" caused by the insurer's unfair or deceptive conduct. Tex. Ins. Code § 541.151 (Vernon 2013). The Supreme Court of Texas has squarely held that "an insurer's unfair refusal to pay the insured's claim causes damages as a matter of law in *at least the amount of the policy benefits wrongfully withheld.*" *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 136 (Tex. 1988) (emphasis added). Indeed, as Liberty's own Texas

---

[1] (Sledge Dep. at 94, attached as Ex. 1.) Mr. Sledge also testified that, when he and Mr. Engel met, Mr. Engel "was never disputing at the end in our meeting in January in my office that they owed under the policy. Never disputed that at that meeting face to face. He wanted a bigger discount." (*Id.* at 161; *see also id.* at 162 ("What Jim told me is he knows he owes under the policy. That's what Jim told me.").)

[2] Although the statute has been renumbered, the substantive provisions of the statute remain the same in all relevant respects.

counsel explains in his treatise on Texas insurance law, "[t]he most common damages under the unfair insurance practices statute are the policy benefits." MARK KINCAID & CHRISTOPHER MARTIN, TEXAS PRACTICE GUIDE INSURANCE LITIGATION § 16:27, at 264 (2013-2014 ed.), attached as Ex. 2. Only by ignoring *Vail*—which Liberty's counsel describes as "the leading case" on this issue, *id.*—can Liberty even assert otherwise. The legal premise of Liberty's entire argument is thus fatally flawed. Accordingly, Cameron's actual damages for Liberty's violation of Chapter 541 are the $50 million policy limits plus the legal fees and expenses it has had to expend as a consequence of Liberty's bad faith breach.

Liberty is also wrong that Cameron cannot establish a Chapter 542 (formerly Article 21.55) claim based on Liberty's failure promptly to pay Cameron's defense expenses in the underlying Oil Spill MDL. Cameron's defense expenses are covered by provisions in the first underlying policy in Cameron's tower, which Liberty's Policy expressly incorporated by following form, as Liberty's underwriters testified. The Liberty Policy disavows only a duty to defend, not the independent duty to indemnify defense expenses. (Liberty Policy Art. III(A), Ex. A to Liberty Br.) Liberty must therefore pay those expenses. And, given that Liberty has failed to do so for over two years despite Cameron's demands, a penalty of 18% per annum under Texas law must be assessed.

## ARGUMENT

### I. CAMERON'S ACTUAL DAMAGES FOR LIBERTY'S VIOLATION OF CHAPTER 541 OF THE TEXAS INSURANCE CODE ARE AT LEAST THE POLICY LIMITS THAT LIBERTY WRONGFULLY DENIED TO CAMERON.

Chapter 541 of the Texas Insurance Code prohibits insurers from engaging in "an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." Tex. Ins. Code § 541.003; *see also Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 260 (Tex. 2002) (stating that Chapter 541 was enacted "to protect insurance consumers by prohibiting unfair or deceptive practices in the business of insurance."). To promote that remedial purpose, the Texas Legislature has directed that the statute is to be "liberally construed and applied." Tex. Ins. Code § 541.008.

For violations of Chapter 541, the Insurance Code provides a private cause of action for a policyholder to recover "actual damages" caused by an insurer's unfair or deceptive conduct. Tex. Ins. Code § 541.151. Where the insurer engages in such conduct "knowingly," the Code also permits the policyholder to recover "three times" those "actual damages." Tex. Ins. Code § 541.152(b).

Contrary to Liberty's suggestion, the Texas Supreme Court has long held that "an insurer's unfair refusal to pay the insured's claim causes damages as a matter of law in at least the amount of the policy benefits wrongfully withheld." *Vail*, 754 S.W.2d at 136. Liberty's motion is thus premised on a fundamental misunderstanding of the law, and should be denied.

### A. Cameron Suffered "Actual Damages" In The Amount Of Liberty's Wrongfully Withheld $50 Million Policy Limit As A Matter Of Law.

Liberty asserts that a "required element of a Section 541 claim" is that "the insurer's alleged misconduct caused an injury that is independent of the underlying contractual breach." (Liberty Br. at 1.) That is not the law.

The Texas Supreme Court squarely addressed this exact issue 25 years ago and rejected the insurer's argument that actual damages for its unfair settlement practices had to be something more than the amount due under the policy. In *Vail*, insureds sued their insurer for breach of contract and under the Texas Insurance Code for unfair claims settlement practices after the insurer refused to provide insurance when their house and its contents were lost in a fire. *Vail*, 754 S.W.2d at 130. In that action, the Vails sought the full amount of the policy ($35,000) and damages in the same amount under the Texas Insurance Code. *Id*. at 130-31. After trial, a jury awarded the Vails treble the amount of their policy limit, even though they had not suffered any independent injury. *Id*. at 131.

On appeal to the Texas Supreme Court, the insurer, as Liberty does here, argued that the amount due under the policy solely represents damages for breach of contract and cannot constitute actual damages for a claim of unfair claims settlement practices. *Id*. at 136. The Texas Supreme Court expressly rejected that argument and held instead that an "insured's claim causes damages as a matter of law in at least the amount of the policy benefits wrongfully withheld." *Id*. As the Supreme Court explained:

> The fact that the Vails have a breach of contract action against Texas Farm does not preclude a cause of action under the DTPA and Article 21.21 of the Insurance Code. Both the DTPA and the Insurance Code provide that the statutory remedies are cumulative of other remedies . . . . It is well settled that persons without insurance are allowed to recover based on false representations of coverage, . . . and that an insurer may be liable for damages to the insured for its refusal or failure to settle third-party claims . . . . It would be incongruous to bar an insured—who has paid premiums

- 6 -

and is entitled to protection under the policy—from recovering damages when the insurer wrongfully refuses to pay a valid claim. Such a result would be in contravention of the remedial purposes of the DTPA and the Insurance Code.

*Id.* The Court therefore concluded that the Vails "sustained $35,000"—*i.e.*, policy limits—"as actual damages as a result of [the insurer's] unfair claims settlement practices." *Id.* at 136. No independent injury was required.[3]

Liberty's motion completely ignores this controlling precedent. This is interesting because Liberty's own Texas counsel in this action devotes an entire section to this issue in his treatise on Texas insurance litigation and reaches the opposite conclusion Liberty asserts here. Mr. Martin's treatise cites *Vail* as "the leading case" on this issue and correctly states: "Two decades ago, the Texas Supreme Court held that when an insurer wrongfully withholds policy benefits, those benefits may be contract damages *and may also be damages for the unfair insurance practice.*" TEXAS PRAC. GUIDE INS. LITIG. § 16:27, at 264, attached as Ex. 2 (emphasis added).

Rather than cite *Vail*, Liberty relies on authorities—*Parkans* and *Castaneda*—that are readily distinguishable. In both cases, the courts concluded the insured was not entitled to bad faith damages because the insured's loss was caused by its lack of coverage under the policy's terms, not by the insurer's bad faith refusal to pay. *See Parkans Int'l LLC v. Zurich Ins. Co.,* 299 F.3d 514, 518-19 (5th Cir. 2002); *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 197-98 (Tex. 1998). Those cases therefore stand only for the unremarkable proposition (irrelevant here) that an insured must identify an independent injury caused by the insurer's bad faith conduct where the insurer does not otherwise have to pay the claim. They do not support the proposition that an insured must always prove it suffered, as an element of the claim, "an

---

[3] *Vail* applies with equal force in the first and third-party claims context. *See Rocor*, 77 S.W.3d at 260.

injury independent of those that merely resulted from a wrongful denial of policy benefits." (Liberty Br. at 9.)  Notably, Liberty's own counsel distinguishes *Parkans* and *Castaneda* on that very basis.  TEX. PRACT. GUIDE INS. LITIG. § 16:27, at 266, attached as Ex. 2 ("In other words, the insurer was not liable because it had committed no violation, and not because the benefits wouldn't be damages if the insurer had committed a violation.").

*Maryland Insurance Company v. Head Industrial Coatings & Services, Inc.* is not to the contrary.  906 S.W.2d 218 (Tex. App. 1995), *rev'd on other grounds*, 538 S.W.2d 27 (Tex. 1996) (superseded by statute).  In that case, the court vacated an award of bad faith damages measured by the judgment entered against the insured in the underlying personal injury litigation, as opposed to policy limits, because they were not "damages resulting from an insurer's misconduct."  *See id*. at 231-32.  By contrast, the court concluded that the proper measure of damages for the insurer's misconduct was $500,000—*i.e.*, the limit of the insurance policy—which the insurer withheld in violation of the Texas Insurance Code.  *See id*.  *Maryland Insurance*, consistent with *Vail*, simply confirms that an insured such as Cameron is permitted to recover policy limits as actual damages under the Texas Insurance Code.[4]

*Vail* and *Maryland Insurance* are not alone.  Other Texas courts have similarly awarded damages for violations of Chapter 541 measured by policy limits, without requiring "independent injury."  *See, e.g.*, *Brown & Brown of Texas, Inc. v. Omni Metals, Inc.,* 317 S.W.3d 361, 396-98 (Tex. App. 2010) (affirming award of treble policy limits against insurer and broker); *Stumph v. Dallas Fire Ins. Co.*, 24 S.W.3d 722, 732-33 (Tex. App. 2000) (same);

---

[4] Liberty's reliance on *Twin City Fire Insurance Company v. Davis*, 904 S.W.2d 663 (Tex. 1995), is equally misplaced.  That case pertained to bad faith claims governed by the Workers' Compensation Act ("WCA"), not the Insurance Code.  *See id.* at 666-67.  The court concluded that under the WCA the insured had to prove she suffered an independent injury due to an exclusivity provision in the WCA.  *Id.*  In doing so, the court expressly distinguished the Insurance Code, which is cumulative of other remedies, and reaffirmed its holding in *Vail*. *Id.* at 666-67 & n.3.

*Allstate Indem. Co. v. Hyman*, No. 06-05-00064-cv, 2006 WL 694014, at *11-12 (Tex. App. Mar. 21, 2006) (affirming award of treble policy benefits for knowingly failing to settle when insurer's liability was reasonably clear); *State Farm Lloyds v. Johns*, No. 05-96-01039, 1998 WL 548887, at *5-8 (Tex. App. Apr. 31, 1998) (same); *S. Life & Health Ins. Co. v. Alfaro*, 875 S.W.2d 740, 748 (Tex. App. 1994) (same).

By contrast, *Powell Electrical Systems, Inc. v. National Union Fire Insurance Company of Pittsburgh*, No. H-10, 993, 2011 WL 3813278 (S.D. Tex. Aug. 29, 2011), and *Tracy v. Chubb Lloyds Insurance Company of Texas*, Nos. 4:12-cv-042-A, 4:12-cv-174-A, 2012 WL 2477706 (N.D. Tex. June 28, 2012), are the only cases cited by Liberty where an allegation of independent injury was required despite the fact the insured was wrongfully denied policy benefits. Those cases, however, reached that conclusion only by extending, without analysis, the "independent injury" requirement articulated in *Castaneda* and *Parkans* to a situation where it does not belong. *See Powell*, 2011 WL 3813278, at *9 (relying on *Parkans*); *Tracy*, 2012 WL 2477706, at *5-6. In light of the Texas Supreme Court's decision in *Vail*—which was not addressed in either case—these district court cases are wrongly decided and should not be followed here.[5]

Binding Texas Supreme Court precedent makes clear that Cameron is not required to show an independent injury to prevail on its Chapter 541 claim. Cameron suffered "actual damages" in the amount of $50 million caused by Liberty's wrongful refusal to pay. The entire premise of Liberty's motion is just wrong.

---

[5] The same error was made in non-binding *dicta* in a footnote in *Great American Insurance Co. v. AFS/IBEX Financial Services, Inc.*, 612 F.3d 800, 808 n.16 (5th Cir. 2010). As Liberty's counsel notes in his treatise, however, that decision cannot be squared with the Texas Supreme Court's opinion in *Vail*. *See* TEX. PRACT. GUIDE INS. LITIG. § 16:27, at 266, attached as Ex. 2. In any event, the Fifth Circuit reversed and remanded on the grounds that attorney's fees may provide a basis for independent injury and thus did not address the issue presented by this motion. *See Great Am.*, 612 F.3d at 808.

### B.  Liberty's Violation Of Chapter 541 Caused Cameron To Incur Legal Fees And Expenses, Which Also Constitute "Actual Damages."

In addition to policy limits, Cameron is entitled to treble its legal fees and expenses that it was forced to incur because Liberty engaged in unfair claims settlement practices when it wrongfully refused to pay.[6]  Nothing Liberty says to the contrary has any merit.

*First*, Liberty contends that Cameron cannot recover the costs of this litigation because its Insurance Code violations did not proximately cause Cameron to incur fees and expenses in this case.  (Liberty Br. at 9.)  That is wrong.  But for Liberty's baseless denial of insurance, in violation of the Insurance Code, Cameron would not have had to file this lawsuit in the first place.  Cameron's legal fees and expenses thus flow directly from Liberty's Insurance Code violations.  *See* Tex. Ins. Code § 542.003 (Vernon 2013) (prohibiting an insurer from "compelling a policyholder to institute a suit to recover an amount due under a policy by offering substantially less than the amount ultimately recovered").  That Cameron initially filed a breach of contract claim, while it waited the 60 days necessary to give Liberty notice of its intention to file bad faith claims, *see* Tex. Ins. Code § 541.154(a), does not change the fact that Cameron was forced to pursue those claims as a direct result of Liberty's unfair claims settlement practices.

*Second*, Liberty also asserts that "attorney's fees incurred pursuing policy benefits" are not compensatory damages as a matter of law.  (Liberty Br. at 10.)  Here, too, Liberty overstates its case.  Under binding Fifth Circuit precedent, and consistent with the language of the statute, when an insurer's Insurance Code violations "caused" an insured to incur legal expenses, the insured may recover those expenses as "actual damages" under the Insurance Code.  Tex. Ins. Code § 541.152(a); *see Northwinds Abatement, Inc. v. Emp'r Ins. of Wausau*,

---

[6]  Cameron has never asserted that its defense expenses in the underlying Oil Spill MDL litigation were caused by Liberty's bad faith misconduct under Chapter 541.  Instead, Liberty is obligated to pay those fees under the terms and conditions of the Liberty Policy.  *See* Section II, *infra*.

258 F.3d 345, 353-55 (5th Cir. 2001) (affirming award of treble damages under the Insurance Code in the amount of costs the insured expended to defend itself against a lawsuit brought by its insurer in bad faith); *Snydergeneral Corp. v. Century Indemn. Co.*, 907 F. Supp. 991, 1006 (N.D. Tex. 1995), *aff'd in part, vacated in part on other grounds*, 113 F.3d 536 (5th Cir. 1997) (denying summary judgment for insurer that argued insured suffered no bad faith damages because insured "would not have incurred expenses inquiring into the status of its claim had [the insurer] fulfilled its duty to investigate").

Nothing in the Texas Supreme Court's recent decision in *In re Nalle Plastics Family Ltd. Partnership* abrogates the statute or alters the result. 406 S.W.3d 168, 174 (Tex. 2013). In that case, the Court addressed only whether attorney's fees should be included in the computation of compensatory damages for purposes of calculating amounts due to post a *supersedeas* bond. *Id*. The Court did not address whether attorney's fees may be considered compensatory damages under the Insurance Code. To the contrary, the Court expressly "reject[ed] the idea that attorney's fees can never be considered compensatory damages," as Liberty suggests. *Id.*[7]

As noted above, the Texas Insurance Code is to "be liberally construed and applied to promote the underlying purposes [of regulating trade in the insurance business]." Tex. Ins. Code § 541.008. Awarding Cameron the costs of this litigation, in addition to policy limits, is consistent with that purpose and necessary to make Cameron whole as a result of Liberty's bad faith. *See Northwinds Abatement, Inc.*, 258 F.3d at 353.

---

[7] Liberty's citation to *Melson v. Stemma Exploration & Production Co.*, 801 S.W.2d 601 (Tex. App. 1990), is similarly inapposite. In that case, attorney's fees incurred by lessees in pursuing a claim for breach of a lease agreement did not qualify as "actual damages" resulting from the breach. *Id.* at 603-04. No Insurance Code claim was at issue.

## II. CAMERON IS ENTITLED TO DEFENSE EXPENSES AND BAD FAITH DAMAGES UNDER CHAPTER 542 OF THE TEXAS INSURANCE CODE.

Chapter 542 prohibits an insurer from delaying payment of a claim for more than 60 days after receiving all information reasonably requested from the insured. Tex. Ins. Code § 542.058. An insurer that fails to promptly pay must, in addition to the amount of the claim, pay the insured "interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees." Tex. Ins. Code § 542.060(a). Like Chapter 541, the Prompt Payment of Claims statute is to be liberally construed to achieve its remedial purpose. *See* Tex. Ins. Code § 542.054.

Liberty seeks summary judgment on Cameron's claim that Liberty improperly delayed payment of Cameron's defense costs in the underlying Oil Spill MDL. (*See* Liberty Br. at 14.) Liberty does not dispute, nor can it, that Cameron provided Liberty with proof of its loss and that Liberty delayed more than 60 days in paying Cameron's claim. Liberty's sole argument is that its policy does not cover Cameron's defense expenses. That is wrong as a matter of contract construction. And, the fact that Liberty's head of underwriting testified that defense expenses are covered under the Liberty Policy shows that the policy can be interpreted two ways. That ambiguity must be resolved in Cameron's favor under Texas law.

### A. Insurance Policy Construction Under Texas Law.

Under Texas law, a contract of insurance is subject to the same rules of construction applicable to other contracts. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). The court must "give meaning to every sentence, clause, and word to avoid rendering any portion inoperative." *Lynd Co. v RSUI Indem. Co.*, 399 S.W.3d 197, 199 (Tex. App. 2012). "To the extent of any conflict, specific

- 12 -

1150962v1

provisions control over more general ones." *Haynes v. Baylor Univ.*, No. 10-09-00004, 2010 WL 5418998, at *4 (Tex. App. Dec. 22, 2010).

"If the written instrument is worded so that it can be given only one reasonable construction, it will be enforced as written." *Hudson Energy*, 811 S.W.2d at 555. "However, if a contract of insurance is susceptible of more than one reasonable interpretation, we must resolve the uncertainty by adopting the construction that most favors the insured." *Id*. The court must adopt the interpretation "urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Id*. Thus, the "inquiry is whether the construction advanced by [Cameron] is a reasonable interpretation." *Id*.; *see also Assicurazioni Generali, S.p.A. v. Ranger Ins. Co.*, 64 F.3d 979, 983 (5th Cir. 1995); Order & Reasons, p. 20, Aug. 16, 2012, Dkt. 7129 ("[I]f an ambiguity exists—*i.e.*, if the term is susceptible to two or more reasonable interpretations—the term is interpreted in favor of coverage.").

The Liberty Policy expressly provides that "[e]xcept for any definitions, terms, conditions and exclusions of this policy, the coverage provided by this policy is subject to the terms and conditions of the [INIC Policy]." (Liberty Policy Art. I, Decl. Item 5, Ex. A to Liberty Br.) The Court must therefore look first to the terms of the INIC Policy and then to the terms of the Liberty Policy. *See Stewart Enter., Inc. v. RSUI Indemn. Co*., 614 F.3d 117, 119-20 (5th Cir. 2010) (where excess policy followed form to a primary policy, the court must look first to the terms of the primary policy and then the excess policy to determine the insurer's duty to pay).

### B. The INIC Policy Contains An Independent Duty To Pay Defense Expenses.

The INIC Policy imposes three separate obligations on the insurer.

*First*, pursuant to the Insuring Agreement section, INIC had a duty to indemnify Cameron for damages it paid to a third-party claimant. (*See* INIC Policy § I(A), Ex. G to Liberty

- 13 -

Br. ("We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law . . . to which this insurance applies . . . .").)

*Second*, pursuant to the Defense Provisions section, INIC had "the right and duty to defend any Suit against the Insured that seeks damages . . . covered by this policy . . . when the applicable limits listed in the Schedule of Retained Limits have been exhausted by payment of Loss to which this Policy applies." (INIC Policy End. 29 ¶ 3 § III(A).)

*Third*, pursuant to the Limits of Insurance section, INIC had an independent duty to pay "Defense Expenses . . . in addition to the applicable Limits of Insurance of this policy." (INIC Policy End. 29 ¶ 2 § IV(H).) That provision—which is conspicuously absent from Liberty's Motion—is separate and distinct from INIC's duty to defend and duty to indemnify damages, which appear in different sections of the Policy. (*See id*. § I(A) (duty to indemnify); *id*. End. 29 ¶ 2 § IV(H) (duty to pay Defense Expenses); *id*. End. 29 ¶ 3 § III(A) (duty to defend).) The provisions regarding the duty to defend make no mention of Defense Expenses. (*See id.* End. 29 ¶ 3 § III(A).) In fact, the provision imposing the independent obligation to pay Defense Expenses explicitly replaced a provision limiting that obligation to expenses incurred by the insurer "to defend any Suit or investigate any claim." (*Compare id*. § IV(H) with *id*. End. 29 ¶ 2 § IV(H).)

Liberty contends that INIC's obligation to pay defense expenses must be rooted in either the duty to defend or the duty to indemnify "loss." (Liberty Br. at 19-20.) However, the terms of the policies in the cases upon which Liberty relies imposed only a duty to indemnify damages such that coverage for defense expenses depended upon whether litigation costs were included in the definition of "loss." *See Gabarick v. Laurin Mar. (Am.), Inc*., 650 F.3d 545, 553-

- 14 -

54 (5th Cir. 2011); *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. U.S. Liquids, Inc.,* 88 Fed. Appx. 725, 731 (5th Cir. 2004) (unpublished) (interpreting maritime and Louisiana law); *Vesta Ins. Co. v. Amoco Prod. Co.,* 986 F.2d 981, 989 (5th Cir. 1993); *Certain Underwriters at Lloyds v. Chicago Bridge & Iron Co.*, 406 S.W.3d 326, 337-38 (Tex. App. 2013) (interpreting Illinois law). But the Fifth Circuit has explicitly recognized that under Texas law, the obligation to pay defense expenses can be rooted in the duty to indemnify, the duty to defend, or in a "separate covenant on the part of the . . . underwriters to pay court costs and attorneys' fees." *Vesta*, 986 F.2d at 989.

### C. The Liberty Policy Incorporates The Duty To Pay Defense Expenses And Does Not Expressly Disclaim That Duty.

The terms of the Liberty Policy govern only where its "definitions, terms, conditions and exclusions" differ from or are in addition to those in the INIC Policy. (Liberty Policy Art. I, Decl. Item 5, Ex. A to Liberty Br.) Otherwise the terms of the INIC Policy control.

The Liberty Policy addresses the duty to indemnify Cameron for damages and disclaims a duty to defend. (Liberty Policy Art. I ("We will pay 'loss' in excess of the Underlying Insurance . . . , but only up to an amount not exceeding our Limits of Liability."); *id.* Art. III(A) ("We will not be required to assume charge of the investigation of any claim or defense of any suit against you.").)[8]

Beyond that, Liberty's Policy is silent—it makes no mention of the Defense Expenses provisions of Endorsement 29, nor does it vary their terms. Had Liberty intended to

---

[8] By its terms, the Liberty Policy, like the INIC Policy, caps only its obligation to pay "loss," defined as damages, at policy limits. (*See* Liberty Policy Art. I, Decl. Item 4, Ex. A to Liberty Br. ("Our liability under this policy will not exceed the following limit: 100.00% of 'loss' excess of the Underlying Insurance . . . but for no greater than: $50,000,000 – Each Occurrence"); INIC Policy § IV(D), Ex. G to Liberty Br. ("[T]he Each Occurrence Limit [$25,000,000] is the most we will pay for the sum of all damages arising out of any one Occurrence.").) As discussed below, defense expenses under both policies are outside limits—*i.e.*, in addition to the obligation to indemnify loss.

- 15 -

exclude the coverage for Defense Expenses afforded by Endorsement 29, it was required to do so "in clear and unambiguous language." *See Hudson Energy*, 811 S.W.2d at 555.

Notably, Liberty's witnesses agreed that this is how the Liberty Policy and the INIC Policy should be read together. Alan Mandel, the underwriter who issued the Liberty Policy to Cameron, testified that Endorsement 29 of the INIC Policy "makes clear that defense expenses are covered" and are "outside the limits" (*i.e.*, in addition to the basic indemnity obligation) of insurance. (Mandel Dep. at 69-70, attached as Ex. 3.) Liberty's former head of underwriting, Denise Morris, further explained that, if defense costs are outside limits and covered by the followed policy, as they are here, then they would also be outside limits and covered by the Liberty Policy. (Morris Dep. at 124, attached as Ex. 4 ("Q: And under these terms and conditions, if defense costs were outside limits in the underlying layer, you follow form and would cover defense costs once the – your layer was hit? A: Yes."); *see also id.* at 123 ("But if their defense costs are outside the limit, then so are ours."); *id.* at 132.)

Liberty's witnesses likewise agreed that Liberty's obligations to pay defense expenses are not altered by the defense provisions of the Liberty Policy. (Rogin Dep. at 136-38, attached as Ex. 5 (testifying that Liberty's defense provisions do not address defense costs; coverage for defense costs is determined by the underlying policy to which Liberty follows form); Morris Dep. at 123-24, 132, attached as Ex. 4 (testifying that once Cameron exhausted its underlying insurance, Liberty was obligated to cover defense costs by following INIC's form even though Liberty had no duty to defend).

Cameron's interpretation, accordingly, is at least reasonable. Where a contract of insurance is susceptible of more than one reasonable interpretation, under Texas law, the insured's interpretation governs. *Hudson Energy*, 811 S.W.2d at 555.

Therefore, Liberty is obligated to reimburse Cameron's defense expenses in the Oil Spill MDL, plus pay 18% interest for failing to pay within 60 days of Cameron's demands. Liberty's motion for summary judgment on Cameron's Chapter 542 claim should be denied.[9]

## CONCLUSION

For the reasons discussed above, Liberty's Motion for Partial Summary Judgment should be denied in its entirety.

Respectfully submitted,

*/s/ Phillip A. Wittmann*
Phillip A. Wittmann, 13625
 pwittmann@stonepigman.com
Carmelite M. Bertaut, 3054
 cbertaut@stonepigman.com

STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
504-581-3200
504-581-3361 (fax)

WILLKIE FARR & GALLAGHER LLP
Mitchell J. Auslander
Jeffrey B. Korn
787 Seventh Avenue
New York, New York  10019
(212) 728-8000
(212) 728-8111

*Attorneys for Cameron International Corporation*

---

[9] Liberty's obligation to reimburse Cameron for its defense expenses will also be the subject of Cameron's separate motion for partial summary judgment on its contract claims.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiff Cameron International Corporation's Memorandum In Opposition to Defendant Liberty Insurance Underwriters' Motion for Partial Summary Judgment Concerning Texas Insurance Code Claims been served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of February, 2014.

*/s/ Phillip A. Wittmann*