## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| Nos. 10-2179; 10-4536; 10-2771 | * | |
| | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE*
### TO EXCLUDE ALL EVIDENCE REGARDING ANADARKO'S CULPABILITY

BINGHAM McCUTCHEN LLP

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com
Thomas Lotterman
tom.lotterman@bingham.com
David B. Salmons
david.salmons@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, N.W.
Washington, D.C. 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street
Suite 1300
New Orleans, LA 70112
Telephone (504) 592-0691
Facsimile (504) 592-0696

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ......................................................................................................... 1

II.     RELEVANT PROCEDURAL BACKGROUND.......................................................... 1

III.    ARGUMENT ................................................................................................................ 2

    A.   The Court's Prior Rulings on Anadarko's Lack of Duty, Negligence, or
        Fault Are Binding on All Parties, Including the Government ............................... 3

    B.   Even If the Government Were Not Bound by the Law of the Case, Its
        Allegations Are the Same as Those the Court Has Already Rejected .................. 6

    C.   The "Degree of Culpability" Penalty Factor Measures a Person's "Fault"
        or "Negligence" for a Prohibited Discharge ...................................................... 6

        1.   The ordinary meaning of the word "culpability" is "fault," or a
            breach of a duty of care, equal to or greater than ordinary
            negligence ................................................................................................ 8

        2.   Admiralty courts use the words "culpability," "fault," and
            "negligence" interchangeably .................................................................. 9

        3.   Courts and agencies confirm that "degree of culpability" has its
            ordinary meaning in the CWA context .................................................... 10

        4.   Canons of construction prohibit the extension of "degree of
            culpability" beyond its ordinary meaning to non-negligent conduct....... 12

    D.   The Government Cannot Seek To Punish Anadarko As An Operator ............... 13

    E.   The Government's Purported "Culpability" Evidence is not Admissible
        Under Any Other Penalty Factor ...................................................................... 14

IV.     CONCLUSION............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

### CASES

*Ali v. Jeng*,
  86 F.3d 1148, 1996 WL 293181 (4th Cir. 1996) (per curiam) ................................................. 4

*Am. River Trans Co. v. Kavo Kaliakra SS*,
  148 F.3d 446 (5th Cir. 1998) .......................................................................................................... 10

*Asgrow Seed Co. v. Winterboer*,
  513 U.S. 179 (1995) ........................................................................................................................... 7

*Braud v. Painter*,
  730 F. Supp. 1 (M.D. La. 1990) ..................................................................................................... 9

*Cont'l Ins. Co. v. Sabine Towing Co.*,
  117 F.2d 694 (5th Cir. 1941) .......................................................................................................... 9

*Duzon v. Stallworth*,
  866 So.2d 837 (La. Ct. App. 2002) ............................................................................................... 5

*East River S.S. Corp. v. Transamerica Delaval, Inc.*,
  476 U.S. 858 (1986) ........................................................................................................................... 9

*Gele v. Wilson*,
  616 F.2d 146 (5th Cir. 1980) .......................................................................................................... 10

*Hatfried, Inc. v. Comm'r of Internal Revenue*,
  162 F.2d 628 (3d Cir. 1947) ........................................................................................................... 13

*In re Integra Realty Res., Inc.*,
  354 F.3d 1246 (10th Cir. 2004) ..................................................................................................... 4

*In re Omega Protein, Inc.*,
  548 F.3d 361 (5th Cir. 2008) .......................................................................................................... 10

*Inter-Cities Navigation Corp. v. United States*,
  608 F.2d 1079 (5th Cir. 1979) ....................................................................................................... 10

*Johnson v. Prudential Ins. Co. of Am.*,
  No. H-06-0130, 2008 WL 901526 (S.D. Tex. Mar. 31, 2008) ................................................. 8

*McDermott, Inc. v. AmClyde*,
  511 U.S. 202 .......................................................................................................................................... 10

*McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.*,
  33 F.3d 253 (3d Cir. 1994) .............................................................................................................. 8

# TABLE OF AUTHORITIES
## (continued)

                                                                    Page

*Morrow v. Dillard,*
    580 F.2d 1284 (5th Cir. 1978) ........................................................3, 4, 6

*Otal Invs. Ltd. v. M.V. Clary,*
    494 F.3d 40 (2d Cir. 2007)..................................................................10

*Phoenix Constr. Servs., Inc.,*
    11 E.A.D. 379, 2004 WL 1059751 (EAB 2004) ..................................11

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,*
    507 U.S. 380 (1993).............................................................................7

*Regan v. Starcraft Marine LLC,*
    No. 06-1257, 2010 WL 4117184 (W.D. La. Oct. 12, 2010)...................5

*Smith Farm Enters., LLC,*
    CWA Appeal No. 08-02, 2011 WL 946993 (EAB Mar. 16, 2011)...............11, 12

*Tedford v. Benchmark Ins. Co.,*
    45 Fed. App'x 318, 2002 WL 1860276 (5th Cir. 2002) (per curiam) ......................8

*United States v. Adderly,*
    529 F.2d 1178 (5th Cir. 1976) ...........................................................11

*United States v. General Motors Corp.,*
    403 F. Supp. 1151 (D. Conn. 1975).................................................7, 11

*United States v. M/V Big Sam,*
    681 F.2d 432 (5th Cir. 1982) .............................................................10

*United States v. Marathon Pipe Line Co.,*
    589 F.2d 1305 (7th Cir. 1978) ...........................................................11

*Werner v. Upjohn Co.,*
    628 F.2d 848 (4th Cir. 1980) ..............................................................8

*World Ins. Co. of Omaha, Neb. v. Pipes,*
    255 F.2d 464 (5th Cir. 1958) .............................................................12

**STATUTES**

33 U.S.C. § 1321(b)(8) .......................................................................2, 14

## I.     INTRODUCTION

Anadarko Petroleum Corporation[1] presents this Motion *in Limine* to preclude the Government from offering evidence to prove Anadarko's "culpability" in the Clean Water Act ("CWA") Penalty Phase.  This Court has repeatedly ruled that Anadarko, as a non-operating investor, had no operational control over the *Deepwater Horizon* or the post-spill response efforts, and therefore owed no duty to intercede, did not cause or contribute to the oil spill, was not negligent, and bears no fault for the incident.  The Court's holdings are law of the case, and are binding on the Government in the CWA Penalty Phase, because the CWA's "degree of culpability" penalty factor measures a party's relative level of fault or negligence for causing a prohibited discharge.  Under the Court's prior holdings, Anadarko's "degree of culpability" for the discharge is as a matter of law zero, and the Government should be precluded from presenting any evidence to re-litigate this decided issue.

## II.    RELEVANT PROCEDURAL BACKGROUND

In their Amended B1 Master Complaint, the private Plaintiffs asserted that, because Anadarko invested in the Macondo drilling operation and had a right to access certain information transmitted by the rig, Anadarko owed a duty to intercede to prevent the blowout and oil spill.  Am. B1 Master Complaint, Rec. Doc. 1128, at ¶¶ 281–85; 573–74.  Plaintiffs also alleged that Anadarko was liable in connection with the post-spill source control efforts.  *Id.* at ¶ 486.  The Court rejected both theories, holding that because "BP was solely responsible for the drilling operations[,] … [a]ny access to information that Anadarko . . . may have had did not give rise to a duty to intercede in an independent contractor's operations . . . ."  B1 Order, Rec. Doc.

---

[1]     The Government has stipulated that it will not pursue CWA liability against Anadarko E&P Company LP. Stipulated Order Regarding Anadarko Entities, Rec. Doc. 5930.  Anadarko E&P joins in this motion insofar as the Government nonetheless intends to argue or introduce evidence for the ostensible purpose of proving Anadarko E&P's "culpability."

3830, at 28.  All other plaintiffs have been bound by the Court's holding, and all claims against Anadarko based on a fault or negligence theory have been dismissed.  Rec. Doc. 4159 at 6 (B3 Plaintiffs); Rec. Doc. 4578 at 25–26 (Louisiana and Alabama); Rec. Doc. 4845 at 6, 11–12 (Local Government Entities and Mexican States).

The B1 holding also was dispositive of all cross-claims against Anadarko for contribution and indemnity.  Minute Order, Rec. Doc. 4642, at 3.  Anadarko moved to dismiss those cross-claims—including Transocean's cross-claims filed in the Government's case—because the B1 ruling means that as a matter of law Anadarko has "zero percent" comparative fault.  Rec. Doc. 2479-1; Rec. Doc. 2924-1; Rec. Doc. 2927-1.  Anadarko's motions were granted, including the motion filed in the Government's case.  Minute Order, Rec. Doc. 4642, at 3.[2]

## III.   ARGUMENT

CWA Section 311(b)(8) outlines eight factors that the Court must consider in assessing a civil penalty, including a party's "degree of culpability" for a prohibited discharge.  33 U.S.C. § 1321(b)(8).  This Court has already considered issues of comparative fault and negligence for the causes of the *Deepwater Horizon* incident.  It is law of the case that Anadarko had no right of operational control over the *Deepwater Horizon's* operations on the Macondo Prospect or the post-spill efforts, owed no duty to intercede in BP's or its contractors' operations, and therefore Anadarko was not negligent and bears no fault for the blowout, explosion, oil spill, or any conduct during the source control efforts.  B1 Order, Rec. Doc. 3830, at 28; Minute Order, Rec. Doc. 11367 at 2 (granting Anadarko's Motion *in Limine* to exclude evidence of Anadarko's

---

[2]     This Court ruled on summary judgment that Anadarko is strictly liable for CWA penalties under Section 311 as an "owner" of the Macondo Well, which the Court concluded was the "offshore facility" from which oil was discharged.  That ruling is pending on appeal in the Fifth Circuit, which heard oral argument on December 4, 2013.  The Government has stipulated that it will not pursue any theory of liability under the CWA that alleges Anadarko acted as an "operator" or "person in charge" of either a vessel or a facility.  Stipulated Order Regarding Anadarko Entities, Rec. Doc. 5930.

"culpability" from Phase Two).   The Court's B1 ruling has been dispositive of all parties' attempts to prove that Anadarko was negligent or at fault.   The ruling also is dispositive of the Government's assertion that Anadarko has some "degree of culpability" for the spill for purposes of the CWA penalty assessment analysis.

The Government has steadfastly resisted the notion that the Court's prior rulings apply to the Government's claims, and has stated its intent to introduce evidence against Anadarko in the Penalty Phase for the ostensible purpose of proving Anadarko's "culpability." *See, e.g.*, H'g Tr., Nov. 18, 2011 (excerpts attached as Ex. A hereto) (Government counsel arguing that evidence of Anadarko's knowledge/access to information is relevant to Phase One trial issues); Rec. Doc. 4543 (arguing that Anadarko's contractual dealings with BP are relevant to "culpability"); E-mail from Steven O'Rourke, counsel for the Government, re: Phase Two Trial Planning, dated June 20, 2013 (Ex. B hereto) (stating Government position that the B1 order "is inapplicable to the claims of the United States against Anadarko"); Hr'g. Tr., Sept. 11, 2013 at 52:22-25; 53:1-25; 54:1-3 (Government counsel arguing in opposition to motion to exclude "culpability" evidence from Phase Two) (excerpts attached as Ex. C).   This Court has consistently rejected the Government's efforts, and should do so again here.   The Court has already expressed some skepticism about the need for evidence to be introduced for the purpose of proving Anadarko's culpability.   *See* Ex. C.   Thus, Anadarko asks the Court to rule once and for all that Anadarko's lack of fault, negligence, or culpability is a decided issue and that no evidence or argument will be permitted in the CWA Penalty Phase.

### A.   The Court's Prior Rulings on Anadarko's Lack of Duty, Negligence, or Fault Are Binding on All Parties, Including the Government.

The "law of the case" doctrine prevents parties from collaterally challenging a court's prior orders in the midst of litigation, and is "'based upon sound policy that when an issue is

once litigated and decided, that should be the end of the matter.'" *Morrow v. Dillard*, 580 F.2d 1284, 1290 (5th Cir. 1978) (quoting *United States v. U.S. Smelting Refining & Mining Co.*, 339 U.S. 186, 198 (1950)).  The "law of the case" doctrine applies not only to the court's express rulings, but also to the court's "duty" to "follow what has been decided at an earlier stage of the case . . . by necessary implication as well as those decided explicitly." *Id.* (citation and internal quotation marks omitted).  A party to a case is generally bound by "all factual findings and rulings made in that case," even if directed at another party. *Ali v. Jeng*, 86 F.3d 1148, 1996 WL 293181, at *2 (4th Cir. 1996) (per curiam) (plaintiff bound by rulings "directed at a co-plaintiff"); *see In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1259 (10th Cir. 2004) ("[W]hen a rule of law has been decided adversely to one or more codefendants, the law of the case doctrine precludes all other codefendants from re-litigating the legal issue.") (citation and internal quotation marks omitted).

The Government is a party to, and an active participant in, the multi-district litigation.  It cannot complain that it was unaware of the Court's B1 ruling on Anadarko's lack of duty or negligence and its implications, or the many times the Court has applied the reasoning of the B1 ruling to dismiss other parties' claims against Anadarko.  Even if the Government could plausibly contend that it is not bound by the B1 ruling, the Court has extended its reasoning to the Government's case.

Transocean filed cross-claims against Anadarko *in the Government's case*, seeking indemnity and contribution from Anadarko on the Government's Oil Pollution Act and CWA claims.  Rec. Doc. 2574.  Anadarko moved to dismiss Transocean's cross-claims, arguing that the B1 ruling that Anadarko owed no duty and was not negligent means as a matter of law that Anadarko has no "percentage of fault" for the incident.  Rec. Doc. 2924-2 at 2.  The Court

granted the motion and dismissed Transocean's cross-claims against Anadarko in the Government's case.  Rec. Doc. 4642.  One consequence of the dismissal is that the Court ruled by necessary implication that Anadarko has no "culpability" in the Government's case, because—as the Government has ably stated—"indemnity apportions between the parties based on their relative level of *culpability*."  Rec. Doc. 4840 at 16 (emphasis added).

The Court also excluded all evidence of Anadarko's knowledge of or access to information about operations on the Macondo prospect from the Phase One trial on causation and allocation of fault.  Anadarko argued in a similar motion *in limine* that, because the Court had ruled that Anadarko was not negligent, Anadarko could "not be considered in the allocation of fault," and therefore "subsequent evidence may not be admitted to establish [Anadarko's] fault."  Rec. Doc. 4319-1 at 8, *quoting Regan v. Starcraft Marine LLC*, No. 06-1257, 2010 WL 4117184, at *1 (W.D. La. Oct. 12, 2010) (granting motion *in limine* to exclude evidence of fault of party already found not negligent) (quoting *Bowie v. Young*, 813 So.2d 562, 570 (La. Ct. App. 2002)); *Duzon v. Stallworth*, 866 So.2d 837, 854 (La. Ct. App. 2002).

In opposition, the Government invoked the CWA's "degree of culpability" penalty factor, and argued that evidence of Anadarko's knowledge, investment, or access to information was relevant to the Phase One issues of causation and fault, including "the extent to which Anadarko conducted due diligence prior to partnering with BP" and evidence that Anadarko "continued to contribute financially towards operations at the Well with the expectation of profit . . . .  Rec. Doc. 4543 at 5, 8; Nov. 18, 2011 H'g Tr. at 68:3–7 (Ex. A).  The Court granted Anadarko's motion, holding that "[e]vidence of Anadarko's knowledge of or access to information about Macondo Well design and/or operations is irrelevant to any issue in the Phase I trial."  Rec. Doc. 5836.  Accordingly, it is the law of the case that Anadarko's due diligence before "partnering

with BP," its financial investment in the Macondo Well, and its purported knowledge of or access to information, are not evidence of culpability for the *Deepwater Horizon* oil spill.

**B.      Even If the Government Were Not Bound by the Law of the Case, Its Allegations Are the Same as Those the Court Has Already Rejected.**

The "law of the case" doctrine is subject to three exceptions: "(1) where a subsequent trial produces substantially different evidence; (2) where controlling authority has made a contrary decision of the law applicable to such issues; and (3) where the prior decision was clearly erroneous and would work manifest injustice." *Morrow v. Dillard*, 580 F.2d 1284, 1292 (5th Cir. 1978) (citations omitted). None is applicable here. Indeed, the Government's recycled theories that Anadarko's investment in the well and knowledge of and access to certain information about operations are relevant to issues of "fault" or "culpability" are not new or different, and have already been rejected.

Like all other plaintiffs, the Government alleges that Anadarko had a right to approve certain of BP's requests for expenditures, and that Anadarko would have had a right to share in profits from any oil and gas discovered on the leasehold. Complaint, Case No. 2:10-cv-04536, Rec. Doc. 1, at ¶ 35. The Government also alleges, just as the PSC and other Bundle C plaintiffs did, that BP was contractually obligated to provide Anadarko access to certain information from the rig, including periodic reports about some of BP's operations, and certain forms of "real-time data." *Id.* at ¶ 36. These are precisely the same contentions the Court considered and rejected in the B1 ruling. Therefore, the Court's holding that Anadarko was not negligent or at fault applies equally to the Government's CWA claim.

**C.      The "Degree of Culpability" Penalty Factor Measures a Person's "Fault" or "Negligence" for a Prohibited Discharge.**

There is nothing special about the CWA's "degree of culpability" penalty factor that makes the previously excluded evidence of Anadarko's purported access to information and

investment in Macondo somehow relevant to the Penalty Phase when it was irrelevant before. The Government's apparent (though never fully articulated) position is that the Court should consider evidence of Anadarko's "degree of culpability" for the *Deepwater Horizon* oil spill, even if Anadarko's conduct was not "negligent," and not a contributing factor to the spill. The Government also apparently believes the Court's prior rulings on Anadarko's lack of fault or negligence apply only to general maritime negligence claims, not to the CWA, and therefore the Government is free to re-litigate the issue. E-mail from Steven O'Rourke, counsel for the Government, re: Phase Two Trial Planning, dated June 20, 2013 (Ex. B); Rec. Doc. 5216 at 5; Hr'g Tr., 53:1-25; 54:1-8 (Sept. 11, 2013) (excerpt attached as Ex. C). The Government is wrong on both counts.

The issue turns on the meaning of "degree of culpability" in the CWA. "Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry 'their ordinary, contemporary, common meaning.'" *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) (citation omitted). The CWA does not define the phrase "degree of culpability," so the Court should apply its "ordinary meaning." *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995) (citation omitted). As explained below, the ordinary meaning of "degree of culpability" refers to a measurement of a person's level of negligence or fault for causing a prohibited discharge. *See, e.g.*, *United States v. General Motors Corp.*, 403 F. Supp. 1151, 1164–65 (D. Conn. 1975) (assessing a $1 nominal penalty because "the defendant was not *negligent* or *at fault* in any way for this discharge of oil. In other words, its *culpability* was zero . . . .") (emphases added). Therefore, only conduct that was negligent or faulty is relevant to the "degree of culpability" penalty factor.

**1.    The ordinary meaning of the word "culpability" is "fault," or a breach of a duty of care, equal to or greater than ordinary negligence.**

The ordinary definition of "culpability" is "blameworthiness," and "culpable conduct" involves the "breach of a legal duty."  BLACK'S LAW DICTIONARY 379 (6th ed. 1990); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 552 (1993) (defining "culpability" as "the quality or state of being culpable; blameworthiness").  Courts therefore hold that "culpable conduct includes conduct that is blameworthy, censurable, careless, at fault, or involves the breach of a legal duty . . . ." *Johnson v. Prudential Ins. Co. of Am.*, No. H-06-0130, 2008 WL 901526, at *8 (S.D. Tex. Mar. 31, 2008); *see also Werner v. Upjohn Co.*, 628 F.2d 848, 856–57 (4th Cir. 1980) (culpable conduct is the "'breach of a legal duty or the commission of a fault . . .'") (quoting BLACK'S LAW DICTIONARY (4th ed. 1968)).

While "culpability" refers to a "breach of duty," it refers only to breaches of *certain kinds* of legal duties: those imposing a duty to meet an applicable standard of care. *See U.S. v. Pruett*, 681 F.3d 232 (5th Cir. 2012) (construing the CWA and holding that "[n]egligence is not an ambiguous term, and is understood to mean '[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation.'") (quoting BLACK'S LAW DICTIONARY 1061 (8th ed. 2004)).  The applicable standard of care may vary from context to context, and so the term culpability may in some instances refer to simple negligence and in others a higher duty of care.  *See McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.*, 33 F.3d 253, 256–57 (3d Cir. 1994) ("holding that "[i]n a civil context, culpable conduct . . . 'normally involves something more than simple negligence . . . .'") (quoting BLACK'S LAW DICTIONARY (6th ed. 1990)); *Tedford v. Benchmark Ins. Co.*, 45 Fed. App'x 318, 2002 WL 1860276, at *3 (5th Cir. 2002) (per curiam) (holding that "culpability" may sometimes be used

synonymously with "bad faith").  But in all circumstances "culpability" refers to a violation of an applicable legal duty of due care.

"Culpability" must also be construed in relation to the word "degree," which ordinarily means "the extent, measure, or scope" or "relative intensity" of a thing.  MERRIAM WEBSTER ONLINE ENGLISH DICTIONARY (2013), *available at* http://www.merriam-webster.com/dictionary/degree.  The phrase "degree of culpability" also refers in some contexts (as in the criminal law) to a defendant's mental state when committing a prohibited act—such as whether an act was committed "purposely," "knowingly," "recklessly," or "negligently," with a negligent mental state being the lowest form of "culpability."  *See* Model Penal Code § 2.02 (defining "kinds of culpability").  Thus, the ordinary meaning of the phrase "degree of culpability," as used in the CWA, refers to the extent to which a person has breached a legal duty of care resulting in a prohibited discharge, or, put another way, the extent to which a person is to blame, negligent, or at fault for a prohibited discharge.

### 2.    Admiralty courts use the words "culpability," "fault," and "negligence" interchangeably.

Like "culpability," the words "fault" and "negligence" also mean a breach of a legal duty of due care.  *Cont'l Ins. Co. v. Sabine Towing Co.*, 117 F.2d 694, 697 (5th Cir. 1941) ("It is the settled rule that fault in legal literature is the equivalent of negligence . . . ."); *Braud v. Painter*, 730 F. Supp. 1, 9 (M.D. La. 1990) ("Fault is a breach of duty owed by one party to another. . . .") (citation and internal quotation marks omitted).  In admiralty cases,[3] "degree of culpability,"

---

[3]      The Government has invoked the Court's admiralty jurisdiction under Federal Rule 9(h). Complaint, Case No. 2:10-cv-04536, Rec. Doc. 1, at 1 & ¶ 6.  Therefore, federal admiralty law and maritime standards of conduct apply in the absence of an on-point federal statute defining "degree of culpability."  *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986) ("With admiralty jurisdiction comes the application of substantive admiralty law.  Absent a relevant statute, the general maritime law, as developed by the judiciary, applies.") (citations

"degree of fault," and "degree of negligence" are thus used synonymously. *See McDermott, Inc. v. AmClyde*, 511 U.S. 202, 207–08; 216–17 (1994) (using "relative fault," "degrees of negligence," and "relative culpability" interchangeably); *In re Omega Protein, Inc*., 548 F.3d 361, 370 (5th Cir. 2008) (referring to "degrees of fault" as a "calibration of culpability") (citation and internal quotation marks omitted); *Gele v. Wilson*, 616 F.2d 146, 148 (5th Cir. 1980) (same); *Otal Invs. Ltd. v. M.V. Clary*, 494 F.3d 40, 62–63 (2d Cir. 2007) (finding phrase "degree of fault" synonymous with "degree of . . . culpability or blameworthiness" and "depart[ure] from a proper standard of care" in apportionment stage of maritime collision case).

Admiralty precedents provide further limitation on the meaning of "culpability," and to the types of conduct that qualify as "culpable."   In the Fifth Circuit, "fault which produces liability must be a contributory and proximate cause of the [injury], and not merely fault in the abstract."  *Inter-Cities Navigation Corp. v. United States*, 608 F.2d 1079, 1081 (5th Cir. 1979) (citation and internal quotation marks omitted).  In other words, a party cannot be "culpable" or at "fault," unless its conduct proximately contributes to or causes actionable harm.  *Am. River Trans Co. v. Kavo Kaliakra SS*, 148 F.3d 446, 450 (5th Cir. 1998) (holding that "[t]o give rise to liability, a culpable act or omission must have been a substantial and material factor in causing the collision") (citation and internal quotation marks omitted).

### 3.    Courts and agencies confirm that "degree of culpability" has its ordinary meaning in the CWA context.

As noted, not all breaches of a legal duty are "culpable."  Only a breach of a duty *of due care* is a negligent, faulty, or "culpable" act.  *See Otal Invs. Ltd. v. M.V. Clary*, 494 F.3d 40, 62–63 (2d Cir. 2007) (finding "degree of . . . culpability or blameworthiness" means a "depart[ure] from a proper standard of care").  Vicarious liability theories (like agency) and strict liability

omitted); *see also United States v. M/V Big Sam*, 681 F.2d 432, 439–40 (5th Cir. 1982) (applying general maritime law of negligence to CWA cost recovery action).

statutes (like the CWA) impose liability without regard to culpability, because a person can be strictly or vicariously liable without having breached a duty of due care or being otherwise personally blameworthy.  *United States v. Adderly*, 529 F.2d 1178, 1181 (5th Cir. 1976) (strict liability is not predicated on any "degree of culpability, either knowledge, intent, recklessness or willfulness"); 74 Am. Jur. 2d Torts § 60 ("Vicarious liability means that the act or omission of one person is imputed by operation of law to another *without regard to fault*.  [V]icarious liability assigns legal liability to a party who is *blameless* in fact. . . .") (emphases added).

The CWA is a strict liability statute.  But in CWA cases, once strict liability is established, courts use the "degree of culpability" factor in the ordinary way to measure a violator's degree of "fault" or "negligence" with respect to the discharge.  *See United States v. Marathon Pipe Line Co.*, 589 F.2d 1305, 1308 (7th Cir. 1978) (equating "degree of culpability" with "degree of fault"); *United States v. Gen. Motors Corp.*, 403 F. Supp. 1151, 1164–65 (D. Conn. 1975) (using "fault," "negligence," and "culpability" interchangeably).

Furthermore, though not binding on this Court, the Environmental Protection Agency also defines the "degree of culpability" penalty factor in terms of relative "fault," "blameworthiness," and "negligence" in administrative penalty assessments under the CWA.  *See Phoenix Constr. Servs., Inc.*, 11 E.A.D. 379, 2004 WL 1059751, at *28 (EAB 2004) ("The culpability statutory factor generally measures the level of the violator's fault or 'blameworthiness' and . . . the violator's willfulness and/or negligence."); *see id.* at *28 n.87 ("'the lack of any culpability may . . . indicate that no penalty action is appropriate'") (quoting EPA General Enforcement Policy # GM-22, *A Framework for Statute-Specific Approaches to Penalty Assessments: Implementing EPA's Policy on Civil Penalties* (Feb. 16, 1984) ("Penalty Framework"), at 18); *see also Smith Farm Enters., LLC*, CWA Appeal No. 08-02, 2011 WL

946993, at *52 (EAB Mar. 16, 2011) ("Notwithstanding the fact that most environmental statutes are strict liability statutes, the EPA recognizes that the violator's level of culpability, or degree of willfulness or negligence is not irrelevant.").[4]

With the proper scope and meaning of the "degree of culpability" penalty factor in mind, it is clear that only conduct that is negligent, faulty, or in breach of a legal duty of due care, and that also is a proximate and contributing cause of the discharge, is relevant to the "degree of culpability" analysis.  It follows that where a court has found a person strictly liable under the CWA, but not negligent or otherwise at fault for a prohibited discharge, by definition that person has no "degree of culpability" for purposes of the penalty assessment.  This is the case here: Anadarko breached no duty of due care; Anadarko's conduct did not cause or contribute to the discharge; Anadarko was not negligent; and, Anadarko bears no fault.  Anadarko therefore cannot be "culpable" for the incident in any measure or degree.

### 4.   Canons of construction prohibit the extension of "degree of culpability" beyond its ordinary meaning to non-negligent conduct.

Any doubt about the ordinary meaning of "degree of culpability" (and there is none) must be construed against the Government.  "Penalties in civil actions are not favored by the courts, and should not be imposed except in cases that are clear and free from doubt."  *World Ins. Co. of Omaha, Neb. v. Pipes*, 255 F.2d 464, 472 (5th Cir. 1958) (citation and internal quotation marks omitted); *Baca v. C.I.R.,* 326 F.2d 189 (5th Cir. 1964) ("The law does not lightly impose

---

[4]      On this point, the Government has acknowledged that "'[c]ivil penalties under the Clean Water Act are intended to punish *culpable individuals* and deter future violations . . . .'"  Rec. Doc. 4840 at 7 (quoting *Kelly v. EPA*, 203 F.3d 519, 523 (7th Cir. 2000)) (emphasis added). Therefore, according to the Government, penalties are specifically tailored according to individual assessments of the "degree of culpability," because the "degree of culpability" factor is designed to protect "relatively blameless violators from a penalty that is disproportionate to their . . . culpability."  *Id.* at 7, 17 (arguing that in assessing CWA penalty the Court "will weigh . . . the culpability of the parties and their degree of fault . . . .").

penalties and courts look with disfavor on forfeitures."). Thus "it is well-settled that in the application of penalties 'all questions in doubt must be resolved in favor of those from whom the penalty is sought.'" *Hatfried, Inc. v. Comm'r of Internal Revenue*, 162 F.2d 628, 633 (3d Cir. 1947) (citation omitted); *see also* 70 C.J.S. Penalties § 4 ("Statutory provisions for penalties must be strictly construed, and may not be extended by construction to acts that are not within the intention of the legislature to penalize."). This rule of strict construction necessarily includes questions in assessing the amount of a penalty, as well as whether to impose liability at all.

At a minimum, Anadarko had no prior notice that its investment in Macondo as a non-operator could somehow make it "culpable" for other parties' faulty operations, and therefore liable for enhanced CWA penalties as a "culpable" party. *See Diamond Roofing Co., Inc. v. OSHA*, 528 F.2d 645 (5th Cir. 1976) ("[S]tatutes and regulations which allow monetary penalties … must give [] fair warning of the conduct it prohibits or requires, *and it must provide a reasonably clear standard of culpability*. . . .") (emphasis added). No law or regulation provides that investing in oil and gas development, having a contractual right of access to information, or a contractual right to review and approve AFEs, constitute "culpable" or "blameworthy" conduct. And the United States has not shown even one example in which it has ever imposed CWA penalties on a non-operating investor like Anadarko for such activity—let alone taken the position it takes now that investing in oil production by itself is a "culpable" act.

To hold non-operating investors to be "culpable" for the operators' failures for the first time in the midst of penalty litigation would violate principles of "elementary fairness" and the Government's effort must fail. *Radio Athens, Inc. v. FCC*, 401 F.2d 398, 404 (D.C. Cir. 1968).

### D.     The Government Cannot Seek To Punish Anadarko As An Operator.

The Government's theory of culpability thus far is murky at best. But the Government should not be heard to argue that Anadarko somehow acted as an operator of the *Deepwater*

*Horizon* or the Macondo well—or that Anadarko *should have* acted as an operator—whether as a matter of fact or by operation of law.  The Government has stipulated that it will not pursue *any* theory of operator liability against Anadarko under the CWA.  Stipulated Order Regarding Anadarko Entities, Rec. Doc. 5930.  In order to be meaningful, that stipulation should preclude the Government from arguing that Anadarko, either as a matter of fact or because of duties imposed by the Macondo lease or other regulations, shares responsibility for BP's and it's contractors' operations as if Anadarko were an operator.

> **E.    The Government's Purported "Culpability" Evidence is not Admissible Under Any Other Penalty Factor.**

Finally, the Government cannot attempt to introduce the same purported "culpability" evidence—Anadarko's access to certain information, investment in the operation, or "due diligence"—under any of the other CWA penalty factors.  In particular, the Government is prohibited from re-litigating Anadarko's "culpability" under the CWA penalty factor permitting the Court to consider "other matters as justice may require."  33 U.S.C. § 1321(b)(8).

By its plain text, the "justice" factor under Section 311(b)(8) is designed to permit consideration only of facts not covered by the other factors.  The Court must give effect to the statute's use of the words "other matters" to create a clear distinction between the "justice" factor and the other statutory factors, including the "culpability" factor.  It is for this reason that courts generally reject litigants' efforts to use a catch-all provision like the "justice" factor to address matters that are directly covered by other provisions.  *See, e.g., Hess v. Cockrell,* 281 F.3d 212, 215 (5th Cir. 2002) (noting that relief under the "catch-all clause of Rule 60(b)(6)" is mutually exclusive from any basis of relief for other provisions of Rule 60(b)).  Because the Court has already considered and ruled on Anadarko's lack of "culpability," the "justice" factor does not

permit the Government to introduce the same evidence anyway.  Otherwise, the "justice" factor would swallow up the other statutory factors and render them meaningless.

Moreover, the "justice" factor is generally used to introduce evidence to *mitigate* a potential penalty, not by the Government to *enhance* a penalty.  *See, e.g.*, *U.S. ex rel. Administrator of E.P.A. v. CITGO Petroleum Corp.*, 723 F.3d 547, 553-54 (5th Cir. 2013) (affirming under justice factor district court's consideration of the defendant's role as a major employer and positive economic impact on the region to decrease penalty); *Catalina Yachts v. U.S. E.P.A.*, 112 F. Supp. 2d 965, 970 (C.D. Cal. 2000) ("[T]he 'justice' factor should only be applied when not giving someone credit would be a manifest injustice, and … this factor should be far from routine because the application of the other adjustments normally produces a penalty that is fair and just.").  The Government should be precluded from using the "justice" factor as a back door to reargue Anadarko's culpability.

## IV.   CONCLUSION

For all of the foregoing reasons, Anadarko respectfully requests that the Court grant its Motion *in Limine* to exclude all evidence or argument presented for the purpose of proving Anadarko's "degree of culpability" from the CWA penalty phase, and any other phase or trial in MDL 2179, and for such other and further relief as the Court deems just and proper.

~      ~      ~

Respectfully submitted,

DATED: February 14, 2014

**BINGHAM McCUTCHEN LLP**

/s/ *James J. Dragna*
James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com
Thomas Lotterman
tom.lotterman@bingham.com
David B. Salmons
david.salmons@bingham.com
Randall M. Levine
randall.levine@bingham.com
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

**KUCHLER POLK SCHELL
WEINER & RICHESON, LLC**

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA 70112
Telephone (504) 592-0691
Facsimile (504) 592-0696

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on December ___, 2013.

_____ /s/ <i>James J. Dragna</i> _____

James J. Dragna
