**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | **MDL NO. 2179**<br><br>**SECTION J** |
| **This document relates to:** | * * | **Judge Barbier** |
| **Case Nos. 10-2771, 10-4182, 10-4183, 13-02645, 13-cv-02646, 13-cv-02647, 13-cv-02813** | * * * | **Magistrate Judge Shushan** |

_____

**BP'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE
THE STATE OF ALABAMA'S JURY DEMAND**

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Paul D. Collier
R. Chris Heck
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
F. Chad Morriss
Maureen F. Browne
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

Joel M. Gross
Lawrence A. Schneider
Arnold & Porter LLP
555 12th Street, N.W.
Washington, DC 20004
Telephone: (202) 942-5705
Facsimile: (202) 942-5999

*Attorneys for BP p.l.c., BP Exploration & Production Inc.,
and BP America Production Company*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

I.  THERE IS NO JURY TRIAL RIGHT UNDER OPA. ..............................................3

  A.  Because OPA Is Based On Admiralty, There Is No Right To A Jury Under
      The Statute. ...................................................................................................3

  B.  *South Port* Is Unpersuasive And Contradicts Established Legal Principles. ..........5

  C.  Even If A Historical Analysis Is Used, It Shows That Alabama Has No
      Right To a Jury Trial For Its Claims Against BP. ..................................11

II.  ALABAMA IS NOT ENTITLED TO A JURY FOR CLAIMS ARISING OUT
     OF A LIMITATION ACTION. ..........................................................................13

III.  ALABAMA'S CLAIMS LACK ANY JURY TRIAL RIGHT FOR
      ADDITIONAL, INDIVIDUAL REASONS. .....................................................18

  A.  Alabama Brings Its Claims For Tax Revenues And Public Expenditures In
      A Sovereign Capacity And Thus Has No Right To A Jury. ................................18

  B.  Alabama Has No Jury Trial Right For Its NRD Claims. .......................................21

  C.  Claims For Removal Costs Are Equitable In Nature And Thus Do Not
      Carry A Jury Trial Right. ...............................................................................24

  D.  Alabama's Punitive Damage Claims Is Based Solely On Maritime Law
      And Thus Lacks Any Jury Trial Right. ...............................................................25

CONCLUSION ....................................................................................................................25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acacia Vera Nav. Co. v. Kezia, Ltd.*,
   78 F.3d 211 (5th Cir. 1996) ...................................................................................15

*Alabama v. Blue Bird Body Co.*,
   573 F.2d 309 (5th Cir. 1978) .................................................................................24

*Alaska v. BP Exploration (Alaska) Inc.*,
   2010 WL 5433874 (Ak. 3d Jud. Dist., Sup. Ct. Dec. 10, 2010) .............................19

*Am. Dredging Co. v. Lambert*,
   153 F.3d 1292 (11th Cir. 1998) .............................................................................16

*Apex Oil Co. v. United States*,
   208 F. Supp. 2d 642 (E.D. La. 2002) .......................................................................3

*Ashland Oil, Inc. v. Third Nat'l Bank of Ashland, Ky.*,
   557 F. Supp. 862 (E.D. Ky. 1983) ...........................................................................7

*Askew v. Am. Waterways Operators, Inc.*,
   411 U.S. 325 (1973) ................................................................................................7

*Atlas Roofing Co., Inc. v. Occupational Safety & Health Review Com'n*,
   430 U.S. 442 (1977) ....................................................................................9, 19, 20

*Badalamenti v. Chevron Chem. Co.*,
   1995 WL 386868 (E.D. La. June 27, 1995) ............................................................25

*Becker v. Tidewater, Inc.*,
   405 F.3d 257 (5th Cir. 2005) .........................................................................4, 8, 13

*Beiswenger Enters. Corp. v. Carletta*,
   86 F. 3d 1032 (11th Cir. 1996) ..............................................................................13

*Biagas v. Hornbeck Offshore Servs., LLC*,
   2006 WL 2228952 (E.D. La. Aug. 3, 2006) .............................................................4

*Billing v. Ravin, Greenberg & Zackin, P.A.*,
   22 F.3d 1242 (3d Cir. 1994) ..................................................................................21

*Borst v. Chevron Corp.*,
   36 F.3d 1308 (5th Cir. 1994) ...........................................................................20, 22

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Bowmech Marine Inc., for Exoneration From or Limitation of Liab.*,
   1993 WL 8335 (E.D. La. Jan. 7, 1993) *aff'd sub nom.*
   *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500 (5th Cir. 1994) ...............................................16

*British Transp. Comm'n v. United States*,
   354 U.S. 129 (1957)....................................................................................................14, 15

*Callahan v. Cheramie Boats, Inc.*,
   383 F. Supp. 1217 (E.D. La. 1974) ..........................................................................................7

*Castano v. American Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) ...................................................................................................24

*Chauffeurs, Teamsters, and Helpers, Local No. 391 v. Terry*,
   494 U.S. 558 (1990)..............................................................................................................22

*Clausen v. M/V NEW CARISSA*,
   171 F. Supp. 2d 1127 (D. Or. 2001) .........................................................................................5

*Craig v. Atlantic Richfield Co.*,
   19 F.3d 472 (9th Cir. 1994) .....................................................................................................5

*Crowell v. Benson*,
   285 U.S. 22 (1932).................................................................................................4, 6, 8, 17

*Curtis v. Loether*,
   415 U.S. 189 (1974)................................................................................................................9

*Efferson v. Kaiser Aluminum & Chem. Corp.*,
   816 F. Supp. 1103 (E.D. La. 1993)..........................................................................................7

*Executive Jet Aviation v. City of Cleveland*,
   409 U.S. 249 (1972)...........................................................................................7, 10, 11, 12

*Exxon Co., U.S.A. v. Sofec, Inc.*,
   517 U.S. 830 (1996)................................................................................................................4

*Gabarick v. Laurin Mar. (Am.) Inc.*,
   2009 WL 102549 (E.D. La. Jan. 12, 2009)..............................................................................17

*Granfinanciera, S.A. v. Nordberg*,
   492 U.S. 33 (1989).............................................................................................3, 6, 21, 25

*Gutierrez v. Waterman S.S. Corp.*,
   373 U.S. 206 (1963)................................................................................................................7

### TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Hartford Accident & Indem. Co. v. S. Pac. Co.*,
   273 U.S. 207 (1927) ................................................................................ 14

*Hatco Corp. v. W.R. Grace & Co. Conn.*,
   59 F.3d 400 (3d Cir. 1995) ................................................................ 23, 25

*In re Acushnet River & New Bedford Harbor Proceedings*
   *re Alleged PCB Pollution*,
   712 F. Supp. 994 (D. Mass. 1989) ............................................................ 23

*In re Clearsky Shipping Corp.*,
   1998 WL 308011 (E.D. La. 1998) ............................................................ 16

*In re Crescent Ship Serv., Inc.*, 2005 WL 221562 (E.D. La. Jan. 27, 2005)
   *aff'd sub nom. Mays v. JP & Sons Inc.*, 178 F. App'x 378 (5th Cir. 2006) .............................. 16

*In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*,
   836 F.2d 750 (2d Cir. 1988) .................................................................... 14

*In re Endeavor Marine Inc.*,
   234 F.3d 287 (5th Cir. 2000) .................................................................. 14

*In re Great Lakes Dredge & Dock Co.*,
   1996 WL 210081 (N.D. Ill. Apr. 26, 1996) .............................................. 7

*In re Japanese Elec. Prods. Antitrust Litig.*,
   631 F.2d 1069 (3d Cir. 1980) .................................................................. 21

*In re Oil Spill by Amoco Cadiz*,
   699 F.2d 909 (7th Cir. 1983) .................................................................... 3

*In re Rhone-Poulenc Rorer, Inc.*,
   51 F.3d 1293 (7th Cir. 1995) .................................................................. 24

*In re Waterman S.S. Corp.*,
   1992 WL 41714 (E.D. La. Feb. 27, 1992) .............................................. 16

*Int'l Marine Carriers v. Oil Spill Liab. Trust Fund*,
   903 F. Supp. 1097 (S.D. Tex. 1994) ........................................................ 23

*Iowa ex rel. Miller v. Block*,
   771 F.2d 347 (8th Cir. 1985) .................................................................. 19

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
   513 U.S. 527 (1995) ...................................................................... 3, 7, 10

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Just v. Chambers*,
   312 U.S. 383 (1941)...........................................................................................16

*Karim v. Finch Shipping Co., Ltd.*,
   265 F.3d 258 (5th Cir. 2001) .......................................................................passim

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
   523 U.S. 26 (1998)...........................................................................................15

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996).........................................................................................20

*Minnie v. Port Huron Terminal Co.*,
   295 U.S. 647 (1935)....................................................................................11, 12

*New Orleans Depot Servs., Inc. v. Director, Office of Worker's Comp. Programs*,
   718 F.3d 384 (5th Cir. 2013) .............................................................................8

*NLRB v. Jones & Laughlin Steel Corp.*,
   301 U.S. 1 (1937).............................................................................................19

*Parsons v. Bedford, Breedlove & Robeson*,
   28 U.S. 433 (1830)............................................................................................9

*Pennsylvania v. Kleppe*,
   533 F.2d 668 (D.C. Cir. 1976) .........................................................................19

*People ex rel. Hartigan v. Cheney*,
   726 F. Supp. 219 (C.D. Ill. 1989) ...................................................................19

*Pershing Auto Rentals, Inc. v. Gaffney*,
   279 F.2d 546 (5th Cir. 1960) ...........................................................................16

*Porter v. Warner Holding Co.*,
   328 U.S. 395 (1946).........................................................................................22

*Pure Oil Co. v. Snipes*,
   293 F.2d 60 (5th Cir. 1961) ...............................................................................7

*Rachal v. Ingram Corp.*,
   795 F.2d 1210 (5th Cir. 1986) .......................................................................5, 6

*Rex v. Cia. Pervana de Vapores, S.A.*,
   660 F.2d 61 (3d Cir. 1981)...............................................................................20

*Rice v. Harken Exploration Co.*,
   250 F.3d 264 (5th Cir. 2001) .............................................................................3

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Richardson v. Harmon*,
　222 U.S. 96 (1911) ............................................................................................9

*Riverway Co. v. Trumbull River Servs.*,
　674 F.2d 1146 (7th Cir. 1982) ..........................................................................14

*Romero v. Int'l Terminal Operating Co.*,
　358 U.S. 354 (1959) ..........................................................................................9

*Sea-Land Service, Inc. v. Director, Office of Workers' Comp. Programs*,
　540 F.2d 629 (3d Cir. 1976) .............................................................................8

*Smith & Son v. Taylor*,
　276 U.S. 179 (1928) ..........................................................................................11

*South Port Marine vs. Gulf Oil Ltd. P'ship*,
　234 F.3d 58 (1st Cir. 2000), *aff'g*, 56 F. Supp. 2d 104 (D. Me. 1999) .............passim

*State Farm Fire & Cas. Co. v. Tashire*,
　386 U.S. 523 (1967) ..........................................................................................10

*Strawbridge v. Curtiss*,
　3 Cranch 267 (1806) ........................................................................................10

*Subaru Distribs. Corp. v. Gen. Ship Corp.*,
　167 F.R.D. 342 (D. Mass. 1996) .......................................................................7

*Superior Const. Co., Inc. v. Brock*,
　445 F.3d 1334 (11th Cir. 2006) .......................................................................16

*Tagliere v. Harrah's Ill. Corp.*,
　445 F.3d 1012 (7th Cir. 2006) .........................................................................7

*Tallentire v. Offshore Logistics, Inc.*,
　800 F.2d 1390 (5th Cir. 1986) ........................................................................4, 6

*The Admiral Peoples*,
　295 U.S. 649 (1935) ..........................................................................................11, 12

*The Blackheath*,
　195 U.S. 361 (1904) ..........................................................................................11

*The Genesee Chief*,
　53 U.S. 443 (1851) ............................................................................................3

*The Plymouth*,
　70 U.S. 20 (1866) ..............................................................................................9, 10, 11, 12

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Tug Allie-B, Inc. v. United States,*
   273 F.3d 936 (11th Cir. 2001) ........................................................................3

*Tull v. United States,*
   481 U.S. 412 (1987) ...........................................................................19, 21, 22

*United States v. M/V MANDAN,*
   1993 WL 17622 (E.D. La. Jan. 19, 1993) .........................................................16

*United States v. Matson Nav. Co.,*
   201 F.2d 610 (9th Cir. 1953) ......................................................................7, 9

*United States v. Ne. Pharm. & Chem. Co.,*
   810 F.2d 726 (8th Cir. 1986) ....................................................................23, 25

*United States v. Viking Res., Inc.,*
   607 F. Supp. 2d 808 (S.D. Tex. 2009) .....................................................5, 23, 24

*United States v. Wade,*
   653 F. Supp. 11 (E.D. Pa. 1984) ...............................................................23, 24

*Vatican Shrimp Co., Inc. v. Solis,*
   820 F.2d 674 (5th Cir. 1987) ......................................................................17

*Waring v. Clarke,*
   46 U.S. 441 (1847)..........................................................................3, 6, 17, 25

*White v. Sabatino,*
   526 F. Supp. 2d 1143 (D. Hawaii, 2007) .........................................................7

**Statutes**

28 U.S.C. § 1407 .................................................................................................15

33 U.S.C. § 2701(30) ..........................................................................................25

33 U.S.C. § 2701(31) ..........................................................................................25

33 U.S.C. § 2702(a) ..............................................................................................3

33 U.S.C. § 2702(b)(2)(A) ..............................................................................21, 22

33 U.S.C. § 2706(c) .......................................................................................22, 24

33 U.S.C. § 2706(d)(1) ........................................................................................22

33 U.S.C. § 2706(f) .......................................................................................22, 24

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

33 U.S.C. § 903(a) ...................................................................................................8

42 U.S.C. § 9607 ....................................................................................................22

46 U.S.C. § 30101(a) ...............................................................................................7

46 U.S.C. § 30104 ....................................................................................................4

46 U.S.C. §§ 30501 ..................................................................................................2

**Other Authorities**

1 Thomas J. Schoenbaum, Admiralty & Maritime Law § 3-4 (5th ed.) ............7, 11

James Oldham, *On The Question Of A Complexity Exception To The Seventh Amendment
Guarantee Of Trial By Jury*, 71 Ohio St. L.J. 1031 (2010) ......................................21

**Rules**

Fed. R. Civ. P. 9(h) ..................................................................................................2

Fed. R. Civ. P. Suppl. F(9) .....................................................................................15

**Constitutional Provisions**

U.S. Const. amend. VII ...........................................................................................24

U.S. Const. art. III, § 2 .........................................................................................8, 9

## INTRODUCTION

Alabama's request for a jury trial should be stricken as its claims do not carry any jury trial right for multiple reasons.  As Alabama's state law claims have been dismissed, its remaining claims are under maritime law and OPA.  Maritime law does not provide for a jury trial right.  Thus, Alabama's demand for a jury trial depends solely on its claims under the Oil Pollution Act of 1990 ("OPA"), which are claims for lost tax revenues, increased public service costs, property damages, removal costs, and natural resource damages ("NRD").  But Alabama is not entitled to a jury trial based on its OPA claims for two overarching reasons as well as additional, specific reasons applying to individual claims.

**First**, OPA does not provide a jury trial right.  OPA's statutory language is devoid of any right to a jury trial.  Nor is there any constitutional right to a jury trial under OPA.  OPA concerns discharges of oil into navigable waters, which falls into the quintessential admiralty jurisdiction of the courts.  Courts have consistently held that other statutes based in admiralty lack a jury trial right, and the same conclusion applies to OPA.  Imposing a jury trial right under OPA would contradict hundreds of years of jurisprudence.

**Second**, Alabama has brought claims as part of, and participated in, the Limitation Action pending before this Court.  That Limitation Action properly encompasses actions between plaintiffs such as Alabama and co-defendants of the limitation petitioners such as BP. There is no jury trial right in a limitation action.  Moreover, if the Court denies limitation, the Court has discretion to retain jurisdiction over claims such as Alabama's.  Given the number of claims, importance of uniformity, and complexity of the litigation, this Court should determine Alabama's damages without a jury as part of the Limitation Action.

**Third**, Alabama lacks a jury trial right on various claims for additional, independent reasons.  Alabama's claims for lost tax revenues and increased public expenditures under OPA

were not recognized at common law and functional concerns weigh against creating a jury trial right for them.  Alabama's claims for removal costs and NRD are based on equitable restitution and thus do not provide a jury trial right.  Finally, under this Court's rulings Alabama's claim for punitive damages is based solely on maritime law, which does not provide a right to a jury trial.

## BACKGROUND

Alabama filed complaints against BP, Transocean, and Halliburton, including claims under OPA, maritime law, and state law.  Case No. 2:13-cv-00252-MEF-TFM, Rec. Doc. 5 ("BP"); Case No. 2:13-cv-00250-MEF-TFM, Rec. Doc. 1 ("Transocean"); Case No. 2:13-cv-00251-MEF-SRW, Rec. Doc. 1 ("Halliburton").  The Court dismissed Alabama's state law claims.  Rec. Doc. 4578.  Alabama's complaints purport to reserve its right to seek a jury trial.  *E.g.*, Case No. 2:13-cv-00252-MEF-TFM, Rec. Doc. 5 ¶¶ 236-38.

Four Transocean entities sought to limit their liability under 46 U.S.C. §§ 30501 *et seq.* (the "Limitation Action").  Case No. 2:10-cv-02771-CJB-SS, Rec. Doc. 1.  Alabama filed a claim in limitation against Transocean.  Case No. 2:10-cv-02771-CJB-SS, Rec. Doc. 323.  Alabama's claim stated that it "intends to be—and upon information and belief, will be—a participant in the MDL Court's February 27, 2012 limitation trial under Rule 9(h) of the Federal Rules of Civil Procedure."  *Id.* ¶ 109.  This limitation trial has been tried to the bench without a jury.  Alabama has actively participated in the trial.  *See, e.g.*, February 2, 2013 Trial Tr. at 100:22; March 19, 2013 Trial Tr. at 4642; March 21, 2013 Trial Tr. at 5244:16.

Alabama seeks various categories of alleged damages.  Case No. 2:13-cv-00252-MEF-TFM, Rec. Doc. 5 ¶¶ 63-72.  Alabama's OPA claim seeks lost tax revenues, increased public service costs, property damages, and removal costs.  Alabama also seeks to recover alleged NRD under OPA, asserting that it is the trustee for certain allegedly damaged resources.  Alabama further seeks punitive damages.

2

## I.        THERE IS NO JURY TRIAL RIGHT UNDER OPA.

### A.        Because OPA Is Based On Admiralty, There Is No Right To A Jury Under The Statute.

By its nature and plain language, OPA does not provide a jury trial right.   A jury trial right can come from statutory language or the Constitution's Seventh Amendment.   Nothing in OPA's text itself provides a jury trial right.   Thus, any such right must derive from the Seventh Amendment, which does not provide a right to a jury in admiralty suits.   *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 55 n.10 (1989); *Waring v. Clarke*, 46 U.S. 441, 460 (1847).   Because OPA is based on admiralty, there is no constitutional right to a jury.

OPA is an admiralty statute.   *See Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 847 (11th Cir. 2001) (describing OPA as a "primarily maritime statute[]").   A relationship to "navigable waters" is the essence of admiralty.   *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 532 (1995); *The Genesee Chief*, 53 U.S. 443, 454 (1851).   OPA imposes liability for the discharge or substantial threat of discharge of oil "into or upon the **navigable waters** or adjoining shorelines or the exclusive economic zone."   33 U.S.C. § 2702(a) (emphasis added).   As the Fifth Circuit has explained, "OPA thus concerns facilities which discharge (or pose a substantial threat to discharge) oil 'into or upon ... navigable waters,' and liability under the OPA is therefore governed by the impact of such a discharge on 'navigable waters.'"   *Rice v. Harken Exploration Co.*, 250 F.3d 264, 266-67 (5th Cir. 2001); *see also Apex Oil Co. v. United States*, 208 F. Supp. 2d 642, 651 n.11 (E.D. La. 2002) (noting that the purposes of OPA include adding to body of "significant marine environmental protection laws" and attempting to ensure that "waterways are free from the ravages of oil").   Even before OPA was enacted, oil spills that began at sea and caused damage to land were within admiralty jurisdiction.   *See In re Oil Spill by Amoco Cadiz*, 699 F.2d 909, 913 (7th Cir. 1983); *Exxon Co.,*

*U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 83435 (1996).

Statutory actions founded in admiralty, like OPA, do not provide a jury trial right.  For example, the Supreme Court has held that there is no Seventh Amendment jury trial right for claims under the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA") because they "are governed by the maritime law as established by the Congress and are within the admiralty jurisdiction."  *Crowell v. Benson*, 285 U.S. 22, 45 (1932).  The Fifth Circuit and this Court have likewise held that there is no jury trial right for LHWCA claims because that statute creates claims that sound in admiralty.  *E.g.*, *Becker v. Tidewater, Inc.*, 405 F.3d 257, 259-260 (5th Cir. 2005) ("Becker's post-*Becker I* LHWCA and negligence claims do not alter the historical exclusion of jury trials for admiralty suits."); *Biagas v. Hornbeck Offshore Servs., LLC*, 2006 WL 2228952, at *4 (E.D. La. Aug. 3, 2006) (Barbier, J.) ("Federal jurisdiction of 905(b) [under the LHWCA] claims is based on general maritime law and, accordingly, assertion of a 905(b) claim confers no more right to a jury trial than does any other claim within the court's admiralty jurisdiction.").

Since *Crowell*, the Fifth Circuit and other courts have applied similar reasoning to the Limitation Act, the Death on the High Seas Act ("DOHSA"), and other admiralty statutes to conclude that they do not provide a constitutional jury right.  *E.g.*, *Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 264 (5th Cir. 2001) (no right to jury in Limitation Act proceedings); *Tallentire v. Offshore Logistics, Inc.*, 800 F.2d 1390, 1391 (5th Cir. 1986) (holding that action under DOHSA "is cognizable only in admiralty and [plaintiff] is not entitled to a jury trial").

Indeed, the Jones Act shows that any jury trial for a maritime action must be based in the statutory text.  *See* 46 U.S.C. § 30104 ("such seaman may maintain an action for damages at law, with the right of trial by jury").  Without this statutory language, there would be no jury trial

right as the Constitution does not provide one for a maritime statutory claim such as the Jones

Act. *See Craig v. Atlantic Richfield Co.*, 19 F.3d 472, 475 (9th Cir. 1994) (holding that because

of its admiralty nature the Jones Act not provide a constitutional right to a jury, and so

defendants cannot seek a jury trial); *Rachal v. Ingram Corp.*, 795 F.2d 1210, 1213-14 (5th Cir.

1986) (holding that there is no constitutional right to a jury trial in a Jones Act case). In an

admiralty statute, like OPA, where a statutory jury trial right is lacking, as in OPA, a party has no

right to a jury trial.

### B.    *South Port* Is Unpersuasive And Contradicts Established Legal Principles.

In *South Port Marine vs. Gulf Oil Ltd. P'ship*, 234 F.3d 58 (1st Cir. 2000), *aff'g*, 56 F.

Supp. 2d 104 (D. Me. 1999), the First Circuit considered an OPA claim brought by a marina

owner whose docks had been damaged by a gasoline spill from a barge in the harbor. The First

Circuit acknowledged that this claim fell within admiralty jurisdiction, *id.* at 64 n.1, but

nevertheless found that the parties were entitled to a jury trial based on the misapprehension that,

for purposes of assessing a jury trial right under OPA, a court should look to the scope of English

admiralty jurisdiction as it existed in 1791 and that such jurisdiction encompassed only injuries

"'wholly' sustained on navigable waters," *id.* at 62. *South Port* thus failed to apply the proper

analysis for admiralty statutes as described in Section I.A. *South Port's* conclusion also is

erroneous for several additional reasons.[1]

**First**, *South Port's* notion that courts should look to 18th century English law to evaluate

the jury trial right for an admiralty case is incorrect. Neither the Supreme Court nor other courts

---

[1] Since *South Port*, two district court cases have found a jury trial right under OPA. *See United States v. Viking Res., Inc.*, 607 F. Supp. 2d 808 (S.D. Tex. 2009), *Clausen v. M/V NEW CARISSA*, 171 F. Supp. 2d 1127 (D. Or. 2001). But neither case expands on *South Port's* analysis, addresses OPA's nature as an admiralty statute, or rebuts the flaws in *South Port's* holding. Thus, those cases are incorrect for the same reasons as *South Port*.

have looked at practice in 1791 to determine whether an admiralty claim carries a jury trial right. Venerable Supreme Court precedent specifically **rejects** the argument that maritime jurisdiction depends on 18th century English law: "We therefore conclude, that the grant of admiralty power to the courts of the United States was not intended to be limited or to be interpreted by what were cases of admiralty jurisdiction in England when the constitution was adopted." *Waring v. Clarke*, 46 U.S. 441, 458-59 (1847). Moreover, *Waring* expressly held that there was no jury trial right in an action encompassed by American admiralty jurisdiction even though that action would not have been recognized as maritime in 18th century England. *Id.* at 459-60. *Waring* has never been overruled and continues to be cited as precedent by the modern Supreme Court. *E.g.*, *Granfinanciera*, 492 U.S. at 55 n.10.

Indeed, *Waring's* methodology is followed by current decisions determining whether a statutory action sounds in admiralty without a jury trial right. Unlike *South Port*, those decisions do not purport to analyze maritime jurisdiction in 18th century England. Instead, they determine whether the statutory actions are based on admiralty jurisdiction, and when they are, hold there is no jury trial right.[2] *E.g.*, *Crowell*, 285 U.S. at 45; *Rachal*, 795 F.2d at 1213-14; *Karim*, 265 F.3d at 264; *Tallentire*, 800 F.2d at 1391. Notably, *South Port* does not cite a single case where a court held that there was admiralty jurisdiction but concluded based on a historical analysis that the parties were constitutionally entitled to a jury. Because OPA creates claims that sound in admiralty, there is no right to a jury trial regardless of the practice in 18th century England.

---

[2] While Alabama may argue that there are Supreme Court cases suggesting that courts should look to 18th century English admiralty law as a factor in determining whether there is a jury trial right, *e.g.*, *Granfinanciera*, 492 U.S. at 41-42, such language is *dicta* as those cases did not concern the right to a jury trial under admiralty jurisdiction. Indeed, the test set forth in cases such as *Granfinanciera* considers whether an action should be considered either legal or equitable, and thus is inapplicable when the court is considering whether an action is maritime. *Id.* at 42 (setting forth tests comparing the action to those brought "prior to the merger of the courts of law and equity" and examining whether the remedy is "legal or equitable in nature").

**Second**, *South Port's* reasoning leads to results contrary to the overwhelming body of admiralty cases. Congress passed the Admiralty Extension Act ("AEA") in 1948 to resolve confusion over when sea-to-land incidents fall within admiralty jurisdiction. 46 U.S.C. § 30101(a); *Jerome B. Grubart*, 513 U.S. at 532; 1 THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW § 3-4 (5th ed.). The AEA makes clear that sea-to-land damages fall within admiralty jurisdiction. 46 U.S.C. § 30101(a). Courts have repeatedly upheld the AEA as constitutional. *See Askew v. Am. Waterways Operators, Inc.*, 411 U.S. 325, 341 (1973); *Pure Oil Co. v. Snipes*, 293 F.2d 60, 65 (5th Cir. 1961); *United States v. Matson Nav. Co.*, 201 F.2d 610, 615-16 (9th Cir. 1953).

Courts regularly hold or assume there is no right to a jury in AEA cases. *E.g.*, *Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206, 207, 209-10 (1963); *Tagliere v. Harrah's Ill. Corp.*, 445 F.3d 1012, 1013-15 (7th Cir. 2006).[3] *South Port* would cast this settled law into confusion. It would contradict centuries of jurisprudence and abrogate the uniform rule that admiralty claims do not have a constitutional jury trial right. Instead, determining when admiralty actions carry a jury trial right would depend on the court conducting a historical analysis of maritime law in each case. As discussed subsequently, that analysis is far more complicated than portrayed by *South Port* — indeed, the Supreme Court moved away from a test that supposedly focused purely on the locality of an incident precisely because of its "perverse and casuistic" results. *See Executive Jet Aviation v. City of Cleveland*, 409 U.S. 249, 255 (1972). Given these consequences, the reasoning of *South Port* cannot be correct or persuasive.

---

[3] *See also Efferson v. Kaiser Aluminum & Chem. Corp.*, 816 F. Supp. 1103, 1115 & n.26, 1122 (E.D. La. 1993); *Callahan v. Cheramie Boats, Inc.*, 383 F. Supp. 1217, 1221, 1223 (E.D. La. 1974); *White v. Sabatino*, 526 F. Supp. 2d 1143, 1147, 1153-56, 1163-64 (D. Hawaii, 2007); *In re Great Lakes Dredge & Dock Co.*, 1996 WL 210081, at *1, 3-4 (N.D. Ill. Apr. 26, 1996); *Subaru Distribs. Corp. v. Gen. Ship Corp.*, 167 F.R.D. 342, 343 (D. Mass. 1996); *Ashland Oil, Inc. v. Third Nat'l Bank of Ashland, Ky.*, 557 F. Supp. 862, 868-69, 872 (E.D. Ky. 1983).

**Third**, *South Port* contradicts controlling Supreme Court and Fifth Circuit law regarding the LHWCA.  The LHWCA's protections are not limited to injuries occurring wholly on navigable waters, but also include certain employees injured on "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel."  33 U.S.C. § 903(a); *see generally New Orleans Depot Servs., Inc. v. Director, Office of Worker's Comp. Programs*, 718 F.3d 384 (5th Cir. 2013).  Courts have specifically held that the LHWCA's inclusion of workers on adjoining areas falls within admiralty.  *See Sea-Land Service, Inc. v. Director, Office of Workers' Comp. Programs,* 540 F.2d 629, 635-36 (3d Cir. 1976).  But under *South Port's* reasoning such areas would be land, and actions for injury to employees on piers, docks, and other such areas would carry a constitutional jury trial right.  That result directly contradicts Supreme Court and Fifth Circuit precedent holding that no jury trial right exists under the LHWCA.  *See Crowell*, 285 U.S. at 45; *Becker*, 405 F.3d at 260.  Because *South Port's* reasoning contradicts Supreme Court and Fifth Circuit precedent regarding the LHWCA, the First Circuit's decision should not be adopted.

**Fourth**, *South Port* confuses a **statutory interpretation** of an early law granting admiralty jurisdiction for a **constitutional limitation** on admiralty jurisdiction.  So long as a category of cases falls within the constitutional limits of "all cases of admiralty and maritime jurisdiction," Congress can provide the federal courts with admiralty jurisdiction over those cases.  U.S. CONST. art. III, § 2.  "What constituted an 'admiralty' or 'maritime' case, the founding fathers did not say, but they must have intended those words as embracing the broad subject matter of maritime law according to the general practices relating to it and at all times subject to definite provision by Congress and judicial decision within the reasonable scope of the

terms used." *Matson*, 201 F.2d at 612.   Interpreting some of the earliest Supreme Court decisions on admiralty jurisdiction, the Ninth Circuit in *Matson* concluded that the constitutional grant of admiralty jurisdiction encompassed damage to land caused by a vessel.   *Id.* at 615. Congress is free to restrict or expand the federal courts' admiralty jurisdiction within those constitutional bounds.   *See Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 361 (1959).[4]

This is precisely what Congress did in passing the AEA:   the AEA "merely specifically directs the courts to exercise the admiralty and maritime jurisdiction of the United States already conferred by article III, section 2 of the Constitution and already authorized by the Judiciary acts." Ex. 2, H.R. Rep. No. 80-1523, at 3 (1948).   Moreover, the AEA was not the first time that Congress acted to increase the statutory scope of admiralty jurisdiction over sea-to-land incidents.   A century ago, the Supreme Court held that an 1884 Act of Congress brought the collision of a barge with a drawbridge within admiralty jurisdiction, without finding any constitutional difficulties.   *See Richardson v. Harmon*, 222 U.S. 96, 106 (1911).   Courts have upheld the AEA and earlier statutes expanding admiralty because they grant jurisdiction within the constitutional limits.

This distinction between constitutional and statutory admiralty jurisdiction is crucial to understanding the Supreme Court's decisions in cases such as *The Plymouth*, 70 U.S. 20 (1866), which *South Port* relies upon.   Such cases should be interpreted as construing jurisdictional **statutes**, not the limits of **constitutional** jurisdiction.   Thus, *The Plymouth* is to admiralty

---

[4]  *See also, e.g.*, *Atlas Roofing Co., Inc. v. Occupational Safety & Health Review Com'n*, 430 U.S. 442, 450, 459 (1977) (explaining that the Seventh Amendment "did not purport to require a jury trial where none was required before" and did not seek to freeze admiralty jurisdiction as it existed in 1789); *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. 433, 446-47 (1830) (holding that the Seventh Amendment does not apply "where, as in the admiralty, a mixture of public law, and of maritime law and equity was often found in the same suit"); *see also Curtis v. Loether*, 415 U.S. 189, 193 (1974) (explaining that the Seventh Amendment embraces "suits which are not of equity and admiralty jurisdiction.").

jurisdiction what *Strawbridge v. Curtiss*, 3 Cranch 267 (1806) is to diversity jurisdiction — a case that narrowly interprets a statutory grant of jurisdiction that Congress is free to expand within broader constitutional limits. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530-31 (1967). Thus, *The Plymouth* was never a constitutional limit on admiralty jurisdiction and is not a basis for restricting Congress's ability to expand that jurisdiction, including admiralty's doctrines such as the absence of any right to a jury trial.

**Fifth**, *South Port* inaccurately describes the historical course of admiralty jurisdiction jurisprudence and the pre-AEA test for admiralty jurisdiction, which were both more confusing and more flexible than portrayed by the First Circuit. *South Port* cites language from *Jerome B. Grubart*, 513 U.S. at 532, that "the injury had to be 'wholly' sustained on navigable waters" for traditional admiralty jurisdiction. 234 F.3d at 63. But *Jerome B. Grubart* did not purport to catalogue the history of admiralty jurisdiction, and other Supreme Court cases more thoroughly describe its development. "Despite the broad language of cases like *The Plymouth*, … the fact is that this Court has never explicitly held that a maritime locality is the sole test of admiralty tort jurisdiction." *Executive Jet*, 409 U.S. at 258 (citations omitted). *Executive Jet* explains that throughout history there were a "number of times the federal courts and the Congress, in the interests of justice, have had to create exceptions to" expand the supposed locality test "when the tort has no maritime locality, but does bear a relationship to maritime services, commerce, or navigation." *Id.* at 259.

Examples from the Supreme Court's own jurisprudence illustrate the capriciousness of the supposed locality test. Under that test, admiralty jurisdiction was absent over a longshoreman standing on the pier who was struck by a sling and knocked into the water, but present where a longshoreman working on the deck of a vessel was struck by a hoist and

knocked onto the pier.  *Id.* at 255 (discussing *Smith & Son v. Taylor*, 276 U.S. 179 (1928) and *Minnie v. Port Huron Terminal Co.*, 295 U.S. 647 (1935)).  Similarly, admiralty jurisdiction existed where a crew member fell off the gangplank and onto the dock, even though hitting the dock is what caused the injury.  *See The Admiral Peoples*, 295 U.S. 649 (1935).  As a leading treatise explains, the "*Plymouth-Peoples* rule for determining the place of the wrong is unworkable in many cases, however, because the search to pinpoint the precise locus of the wrong produced legalistic solutions without adequate policy foundation."  1 SCHOENBAUM, ADMIRALTY & MARITIME LAW § 3-4; *see also The Blackheath*, 195 U.S. 361, 365 (1904) ("Hence, the precise scope of admiralty jurisdiction is not a matter of obvious principle or of very accurate history.").

The difficulty in applying the "locality" test provides yet another reason to reject *South Port's* reasoning.  The purpose of the AEA and modern Supreme Court admiralty jurisprudence has been to develop a more consistent and predictable scope of admiralty jurisdiction.  The practical effect of *South Port* would be to reject these advances and send courts and practitioners back to cases such as *Plymouth* and *Peoples* where the identity of the factfinder would turn on slight factual differences and be inconsistently decided from case to case.

### C.  Even If A Historical Analysis Is Used, It Shows That Alabama Has No Right To a Jury Trial For Its Claims Against BP.

*South Port's* historical framework for determining whether there is a constitutional jury trial right for claims in admiralty should be rejected for the reasons described in Section I.B.  But even a historical analysis demonstrates that Alabama has no right to a jury trial.  Such an analysis can proceed in two ways, one looking at earlier American precedent and one looking at 18th century English cases.  Under either method, Alabama is not entitled to a jury trial.

**First**, as cases such as *Minnie* and *Peoples* show, American admiralty jurisdiction was

11

never limited to injuries that occurred "wholly" upon navigable waters as *South Port* claims. Indeed, even *The Plymouth* itself stated that for admiralty jurisdiction "the wrong and injury complained of must have been committed wholly upon the high seas or navigable waters, **or, at least, the substance and consummation of the same** must have taken place upon these waters." *The Plymouth*, 70 U.S. at 34-35 (emphasis added).  Even when courts applied the supposed locality test they looked to the "substance and consummation of the occurrence which gave rise to the cause of action."  *Executive Jet*, 409 U.S. at 255.

Here, the "substance and consummation of the occurrence" took place in navigable waters.  The incident began with explosions on and the sinking of the *Deepwater Horizon*, which this Court has previously found to be a vessel.  Rec. Doc. 3830 at 4-7.  The *Deepwater Horizon* was located in the Gulf of Mexico approximately 50 miles from the coast, clearly in navigable waters.  Oil flowed through the appurtenances of the *Deepwater Horizon* into the navigable waters of the Gulf.  To the extent the oil spill injured Alabama, the injuries alleged by Alabama would have occurred at least in part from oil being in navigable waters by, for example, allegedly affecting fishermen and tourism.  Notably, this distinguishes Alabama's claims from the facts in *South Port*, where damage did not occur until the gasoline touched the docks, which *South Port* considered part of the land.  234 F.3d at 61.  That some alleged damage for Alabama's claims may have occurred on land as well is not determinative of admiralty jurisdiction under cases such as *Minnie* and *Peoples*.  Thus, under the supposed locality test, Alabama's OPA claims sound at admiralty and Alabama is not entitled to a jury trial.

**Second**, under 18th century English law, admiralty jurisdiction encompassed actions occurring partly on land.[5]  As a contemporary treatise stated, "[i]f the original cause arises upon

---

[5]  Even though the *South Port* courts state that one should look to English law in 1791 to determine the right to a jury trial, the district court in *South Port* candidly admitted that it was not familiar with pre-

the sea, and other matters happen upon the land depending thereupon, yet the trial shall be in the Court of Admiralty." Ex. 1, Declaration of James Oldham ("Oldham Decl.") ¶ 17.  For example, cases in the early 1780's held that if a ship was taken as a prize at sea, and the crew and goods were held on the land, then an action of the crew for false imprisonment and damages for the goods was within admiralty jurisdiction even though the injury occurred partly on land.  *Id.* ¶¶ 19-26.

Accordingly, Alabama's claims would have sounded in admiralty under 18th century English law.  Where an occurrence began at sea but had consequences on land, it fell within English admiralty jurisdiction.  This precisely describes the *Deepwater Horizon* incident, which began in navigable waters in the Gulf of Mexico but allegedly had effects on Alabama that occurred on land.  Because the action began in navigable waters, the English admiralty courts would have had jurisdiction over the original cause, and thus should have jurisdiction over the consequences on land as well.  Thus, even if historical tests are applied to Alabama's claims, those claims sound in admiralty and lack any jury trial right.

## II.   ALABAMA IS NOT ENTITLED TO A JURY FOR CLAIMS ARISING OUT OF A LIMITATION ACTION.

The Court also should strike Alabama's jury demand because Alabama is a willing participant in the Limitation Action.  **All** claims in a limitation action can be resolved in a bench trial "without a jury."  *See, e.g.*, *Karim v. Finch Shipping Co.*, 265 F.3d 258, 264 (5th Cir. 2001).  Because a limitation action is maritime in nature, there is no jury trial right even as to claims carrying that right outside of limitation actions.  *See Becker v. Tidewater, Inc.*, 405 F.3d 257, 259 (5th Cir. 2005); *Beiswenger Enters. Corp. v. Carletta*, 86 F. 3d 1032, 1037 (11th Cir. 1996).  As

---

1791 cases in England, 56 F. Supp. 2d at 108, and the First Circuit similarly did not discuss 18th century English law, 234 F.3d 58.

the Fifth Circuit explained in *Karim*, a limitation action "'is the administration of equity in an admiralty court ... .   [The proceeding] looks to a complete and just disposition of a many cornered controversy.'"   265 F.3d at 264 (quoting *Hartford Accident & Indem. Co. v. S. Pac. Co.*, 273 U.S. 207, 216-17 (1927)).   "In exercising this equitable power, of course, the admiralty court must necessarily deny the claimants their right to pursue common law claims before a jury."   *In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 755 (2d Cir. 1988).

The Court's jurisdiction in a limitation action extends to "all cross-claims that arise out of the limitation proceeding."   *In re Endeavor Marine Inc.*, 234 F.3d 287, 290 n.2 (5th Cir. 2000).   This jurisdiction includes claims made by claimants against a co-defendant of the limitation petitioner.   *See British Transp. Comm'n v. United States*, 354 U.S. 129, 138 (1957) (holding that "a necessary concomitant of jurisdiction in a factual situation such as this one [is] that the Court have power to adjudicate all of the demands made and arising out of the same disaster"); *see also Riverway Co. v. Trumbull River Servs.*, 674 F.2d 1146, 1154 (7th Cir. 1982).

A district court's jurisdiction in a limitation action includes determining and apportioning damages, against both the limitation petitioner and its co-defendants.   In *British Transport*, the Supreme Court held that the district court could adjudicate damages against the co-defendant of a limitation petitioner even if the co-defendant were not a petitioner itself.   *Id.* at 137-39.   "Logic and efficient judicial administration require **that recovery against all parties at fault is as necessary to the claimants as is the fund** which limited the liability of the initial petitioner."   *Id.* at 138 (emphasis added).   As the Supreme Court further explained, where the limitation petitioner's liability had been adjudicated:

> Why does it not follow that the claimants, scattered as they are in eight countries of the world but all present in this proceeding, **should recover judgment for their damages**?

14

> Why should each be required to file a secondary action in the courts of another country merely **to prove the amount of his due** when the same evidence is already before the admiralty court here?

*Id.* at 137 (emphasis added); *see also Acacia Vera Nav. Co. v. Kezia, Ltd.*, 78 F.3d 211, 218 (5th Cir. 1996).

Alabama is a claimant in the Limitation Action and has actively participated in the Limitation Action trial.[6]  BP is a co-defendant in the Limitation Action here and thus is in the same position as the co-defendant in *British Transport*.  Thus, the jurisdiction of the Limitation Action extends to determining the damages, if any, that claimants such as Alabama have against BP.  Such determinations made as part of the Limitation Action are done by the bench sitting without a jury.

In fact, Alabama supported using a bench trial to determine liability in the Limitation Action.  Alabama argued to the Fifth Circuit that OPA expressly allows general maritime claims for compensatory damages and thus a "district court may properly try the claims without a jury under its admiralty jurisdiction." Ex. 3, *In re Deepwater Horizon*, Case No. 11-30987, Rec. Doc. 00511658535 (5th Cir.) ("The State of Alabama's Answer in Support of the District Court") at 4, 15-23.  Indeed, Alabama explained that "the district court's plan to try the common issues of limitation and liability to the bench is legally sound; it tracks similar complex litigation plans from this Circuit; and frankly, it's the best option for moving this complex MDL forward in an expeditious manner."  *Id.* at 29.

Moreover, this Court has discretion to decide Alabama's claims even if it denies

---

[6]  The Limitation Action has been transferred to this Court for all purposes under Federal Rule of Civil Procedure Supplemental Rule F(9), not simply for pretrial coordination under 28 U.S.C. § 1407.  Case 2:10-cv-02771, Rec. Doc. 207.  As the Limitation Action was transferred for all purposes, *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) does not present any concerns with the Court retaining jurisdiction over all claims made within the Limitation Action.

Transocean's limitation petition.  "When the jurisdiction of the court in admiralty has attached through a petition for limitation, the jurisdiction to determine claims is not lost merely because the shipowner fails to establish his right to limitation."  *Just v. Chambers*, 312 U.S. 383, 386 (1941).  Instead, the court has "jurisdiction to fulfill the obligation to do equity to claimants by furnishing them a complete remedy although limitation is refused."  *Id.* at 387.  "Where limitation is denied, it is discretionary with the court to retain jurisdiction and adjudicate the claims or to remit the claimants to another forum."  *In re Clearsky Shipping Corp.*, 1998 WL 308011, at *2 (E.D. La. 1998); *see also In re Waterman S.S. Corp.*, 1992 WL 41714, at *6 (E.D. La. Feb. 27, 1992) ("In conclusion, it is in my discretion whether to adjudicate the case in its entirety or whether to allow the claimants to return to state court if limitation is denied.").[7]

Limitation courts often try all issues to the bench, including damages, where limitation has been denied.  *See, e.g.*, *Superior Const. Co., Inc. v. Brock*, 445 F.3d 1334, 1346 (11th Cir. 2006) (damages assessed at bench trial after limitation had been denied); *Am. Dredging Co. v. Lambert*, 153 F.3d 1292, 1294 (11th Cir. 1998); *Bowmech Marine Inc., for Exoneration From or Limitation of Liab.*, 1993 WL 8335 (E.D. La. Jan. 7, 1993) *aff'd sub nom. Brunet v. United Gas Pipeline Co.*, 15 F.3d 500 (5th Cir. 1994); *see also In re Crescent Ship Serv., Inc.*, 2005 WL 221562 (E.D. La. Jan. 27, 2005) *aff'd sub nom. Mays v. JP & Sons Inc.*, 178 F. App'x 378 (5th Cir. 2006); *United States v. M/V MANDAN*, 1993 WL 17622 (E.D. La. Jan. 19, 1993).

The history behind the Limitation Act also supports trying damages to the bench.  As explained in Section I.B., historical analysis should not be used to limit admiralty jurisdiction

---

[7]  Alabama may cite language in *Pershing Auto Rentals, Inc. v. Gaffney*, 279 F.2d 546, 552 (5th Cir. 1960) regarding the options of claimants after denial of limitation, but *Clearsky* and *Waterman* clarify that the district court has the discretion on whether to retain the claims for adjudication.  Similarly, *Clearsky* suggests that "it **may** be appropriate to impanel a jury" to decide issues where claimants would otherwise be entitled to a jury, but a jury would be inappropriate here for the reasons explained in the body of the text.  1998 WL 308011, at *2 (emphasis added).

under the Supreme Court's precedents in *Waring* and *Crowell*, as the constitutional bounds of admiralty jurisdiction are broader than the English law in 1791.  But historical analysis can be used to show that a cause of action or statute fell within the historical boundaries of admiralty, and thus should continue to do so today.  Here, the Limitation "Act was primarily patterned after the English limitation act, 26 Geo. 3, ch. 86 (1786)."  *Vatican Shrimp Co., Inc. v. Solis*, 820 F.2d 674, 677 (5th Cir. 1987).  The English Act expressly provided that judges would decide damages according to the rules of equity, that is, without a jury.  *See* Ex. 4, 26 Geo. 3, ch. 86(IV) ("[A]nd in every such case, it shall and may be lawful to ... **exhibit a bill in any court of equity for a discovery of the total amount of such losses or damages**, and also of the value of such ship or vessel, appurtenances, and freight ... **according to the rules of equity** ... .") (emphasis added).  The English Act's foreclosure of these issues from courts of law, and thus juries, lends further support to denying Alabama's jury demand.[8]

Allowing a jury trial for damages would also ignore the limitation action's built-in concern for judicial efficiency.  As the *Karim* court noted, "the purpose behind such a proceeding in federal court is to permit all actions against the shipowner to be consolidated into a single case **so that all claims may be disposed of simultaneously** ... ."  265 F.3d at 264 (emphasis added).  Similarly, the OPA claims process adopts several procedures designed to encourage the efficient resolution of disputes.  *See Gabarick v. Laurin Mar. (Am.) Inc.*, 2009 WL 102549, at *3 (E.D. La. Jan. 12, 2009).

Holding a jury trial for Alabama — and all other limitation claimants who seek damages trials — would present an incredible burden on this Court and the judiciary.  Potentially

---

[8] In addition, in 18th century English law, admiralty courts had jurisdiction over actions flowing from prize cases even if the court found that a ship was not a proper prize.  Oldham Decl. ¶¶ 21-24.  This provides another historical analogue to modern courts sitting in admiralty retaining jurisdiction to decide damages in Limitation Actions even if the court denies limitation.

hundreds or thousands of jury trials would be held. Under the circumstances of this litigation, including its public coverage and the sheer number of claims that have been filed, empanelling an impartial jury for each damages trial would take considerable time and could necessitate transferring cases away from the Gulf region.

Moreover, the verdicts rendered by these juries likely will result in disparate awards to similar claimants. Such jury decisions will offer little guidance on how to treat the damages of other claimants, hampering efficient resolution of the claims. By contrast, having the Court decide these cases consistent with the discretion provided under the Limitation Act should result in clearer standards for determining damages in other cases, facilitating settlements and more rapid payments to legitimate claimants.

Furthermore, circumstances where cases are remanded for jury trials typically involve state law claims, where legal questions and damages determinations will be governed by the peculiarity of each State's law. By contrast, this Court has held that claimants have only federal and maritime law claims. Rec. Doc. 3830 at 8-18. The Court also expressly recognized the need for uniformity in applying such law, which again argues in favor of the Court exercising its discretion to adjudicate claimants' damages to provide uniform standards. *Id.* at 11-14. Given the size and issues of this litigation and the built-in preference for judicial economy under the Limitation Act and OPA, the Court should try the damages of limitation claimants such as Alabama to the bench.

## III.   ALABAMA'S CLAIMS LACK ANY JURY TRIAL RIGHT FOR ADDITIONAL, INDIVIDUAL REASONS.

### A.   Alabama Brings Its Claims For Tax Revenues And Public Expenditures In A Sovereign Capacity And Thus Has No Right To A Jury.

Alabama has no jury trial right for its lost tax revenues and increased public expenditure claims because they are made under OPA and thus are based on admiralty. But even if

Alabama's OPA claims were not based in admiralty, the State would not have a right to a jury on its claims for allegedly lost tax revenues or increased public expenditures.   The Seventh Amendment "require[s] a jury trial on the merits in those actions that are analogous" to actions brought in 18th century English law courts.  *Tull v. United States*, 481 U.S. 412, 417 (1987). The Supreme Court applies a two-part test to determine whether an action is a suit at common law under the Seventh Amendment:

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.  Second, we examine the remedy sought and determine whether it is legal or equitable in nature.

*Id.* at 417-18 (citations omitted).

Applying the first part of this test shows that claims for recovery of lost tax revenues were not tried in English law courts.  Even today, the common law does not recognize causes of action for lost tax revenues or public expenditures.  *See, e.g.*, *Iowa ex rel. Miller v. Block*, 771 F.2d 347, 353 (8th Cir. 1985); *Pennsylvania v. Kleppe*, 533 F.2d 668, 672-73 (D.C. Cir. 1976); *People ex rel. Hartigan v. Cheney*, 726 F. Supp. 219, 225 (C.D. Ill. 1989); *Alaska v. BP Exploration (Alaska) Inc.*, 2010 WL 5433874 (Ak. 3d Jud. Dist., Sup. Ct. Dec. 10, 2010). Similarly, BP has not found any evidence that such rights existed at English common law. Oldham Decl. ¶¶ 31-33.  To be sure, the Seventh Amendment extends to statutory actions that are "analogous" to common law rights of action.  *Tull*, 481 U.S. at 417.  But BP has not located any actions analogous to a sovereign seeking lost taxes based on a private party defendant injuring a private party plaintiff.   Oldham Decl. ¶¶ 31-33.   New causes of action without analogues in historical jurisprudence do not carry a jury trial right.  *See NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48-49 (1937) (holding that there was no Seventh Amendment jury trial right where the "instant case is not a suit at common law or in the nature of such a suit. The proceeding is one unknown to the common law."); *see also Atlas Roofing Co. v. Occupat'l*

19

*Safety & Health Review Comm'n*, 430 U.S. 442, 453 (1977).

As for the second part of the test, although the State seeks monetary damages, such damages do not establish a legal right. The Supreme Court has held that a variety of claims for monetary damages do not carry a right to a jury trial. *See Atlas*, 430 U.S. at 449-50 (rejecting argument that a suit for money judgment is a suit at common law and therefore must carry a jury trial right); *see also Borst v. Chevron Corp.*, 36 F.3d 1308, 1324 (5th Cir. 1994) ("Plaintiffs' requests for monetary recovery on other claims, traditionally the form of relief offered in courts of law, do not mandate a conclusion that their action is legal in nature."); *Rex v. Cia. Pervana de Vapores, S.A.*, 660 F.2d 61, 67 (3d Cir. 1981) ("Thus, the proper inquiry is not whether a plaintiff seeks money damages, but whether his action is in the nature of a legal remedy similar to a suit at common law."). These claims include at least some types of tax collection and assessment actions. *See Atlas*, 430 U.S. at 450-51. Many of these claims seeking money damages where there is no jury trial right involve a government suing to enforce rights that are peculiar to its nature as sovereign. *Id.* at 450. Under this precedent, claims for lost tax revenues and increased public expenditures are not legal rights for which there is a jury trial entitlement.

Furthermore, where the history or nature of the determination to be made is not clear, courts rely on functional concerns to determine whether issues should be decided by the bench or jury. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388 (1996). Functional concerns weigh heavily in favor of a bench trial here. Cases involving lost tax revenues and public expenditures will depend heavily, and indeed almost solely, on complex expert evidence. This evidence will include highly technical economic models, the results of those models, and criticisms of those models. Furthermore, this will be true of all cases under OPA with claims for lost tax revenues or public expenditures. Such functional considerations further confirm that a

Seventh Amendment jury trial right does not exist for claims for lost tax revenues and increased

public expenditures.  *Cf. In re Japanese Elec. Prods. Antitrust Litig.*, 631 F.2d 1069, 1079, 1084-

86 (3d Cir. 1980); James Oldham, *On The Question Of A Complexity Exception To The Seventh*

*Amendment Guarantee Of Trial By Jury*, 71 OHIO ST. L.J. 1031 (2010).

> **B.      Alabama Has No Jury Trial Right For Its NRD Claims.**

Neither statute nor the Seventh Amendment provides a jury trial right for Alabama's

NRD claims.  Alabama's NRD claims arise from OPA, 33 U.S.C. § 2702(b)(2)(A), but OPA

does not provide a statutory right to a jury trial, *see* Section I.  Therefore, Alabama must look

solely to the Seventh Amendment to find such a right.

The Seventh Amendment does not, however, provide a jury trial for Alabama's NRD

claims for three reasons.  **First**, these claims arise from OPA, which is founded in admiralty,

and, as discussed above, the Seventh Amendment does not provide a right to a jury in suits

founded in admiralty.  *See* Section I.  **Second**, the NRD claims asserted by Alabama as a public

trustee of natural resources, like Alabama's claims for lost tax revenues and public expenditures,

find no analog "to 18th-century actions brought in the courts of England prior to the merger of

the courts of law and equity," *Tull*, 481 U.S. at 417, and therefore are not afforded a jury trial

under the Seventh Amendment.

**Third**, even if the Court were to find that Alabama's claims for lost tax revenue and

added expenses did not sound in admiralty and were subject to a jury trial right, Alabama would

still not be entitled to a jury trial on its NRD claims, because the NRD claims are equitable in

nature.  *E.g.*, *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1245 (3d Cir. 1994)

("[N]o jury right attaches to equitable claims.") (citing *Granfinanciera, S.A. v. Nordberg*, 492

U.S. 33, 41 (1989)); *Granfinanciera*, 492 U.S. at 91 ("If the claim and the relief are deemed

equitable, we need go no further: the Seventh Amendment's jury-trial right applies only to

actions at law.") (Blackmun, J., dissenting).  Alabama's NRD claims are equitable because they are restitutionary — *i.e.*, they are "limited to 'restoring the status quo ... .'"  *Tull*, 481 U.S. at 424 (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946)); *Borst*, 36 F.3d at 1324 ("In *Terry*, the [Supreme] Court made clear that a request for monetary recovery sounds in equity, and thus does not guarantee a jury trial, when it is restitutionary in nature ... .") (citing *Chauffeurs, Teamsters, and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570-71 (1990)).

OPA explicitly limits NRD claims to restoring natural resources to the status quo, and therefore NRD claims are restitutionary.  33 U.S.C. § 2702(b)(2)(A) (permitting NRD claims to recover for "injury to, destruction of, loss of, or loss of use of, natural resources, including reasonable costs of assessing the damage.").  OPA's prescribed three-part method for calculating NRD further demonstrates their restitutionary nature:  "(A) the cost of restoring, rehabilitating, replacing, or acquiring the equivalent of, the damaged natural resources; (B) the diminution in value of those natural resources pending restoration; plus (C) the reasonable cost of assessing those damages."  *Id.* § 2706(d)(1).  Unlike a common law damages award, OPA even restricts the use of NRD ultimately recovered to assessing and restoring the injured natural resources.  *See id.* § 2706(f) (restricting NRD "for use only to reimburse or pay costs incurred by the trustee under [Section 2706(c)]").  Collectively, OPA's explicit limitations on the scope of NRD claims and on the use of any NRD recovery indicate that such claims are intended to restore the status quo, and therefore are restitutionary.

The United States consistently has advanced the same conclusion:  NRD claims are equitable, regardless of whether they arise under OPA or the comparable provisions of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607.  *See, e.g.*, *In re Acushnet River & New Bedford Harbor Proceedings re Alleged*

*PCB Pollution*, 712 F. Supp. 994, 1000 (D. Mass. 1989) (United States moved to strike jury demand on NRD claims); *United States v. Wade*, 653 F. Supp. 11, 13 (E.D. Pa. 1984) (same). The United States recently advanced this position once again in *United States v. Viking Resources*, contending that NRD claims are "fundamentally restitutionary and equitable in nature" because their purpose "is to recover funds that a trustee has used for the assessment of [NRD] and will continue to use exclusively for the restoration, rehabilitation, replacement, or acquisition of equivalent, of natural resources."  Ex. 5, Pl. United States' Mem. in Supp. of Mot. to Strike Jury Demand of Defs. at 12, 2009 WL 956005, *United States v. Viking Res., Inc.*, 607 F. Supp. 2d 808 (S.D. Tex. 2009).

Further support for the conclusion that NRD claims are restitutionary, equitable, and not entitled to a jury trial derives from their similarity to claims under CERCLA and OPA to recover costs incurred in responding to a release or a spill.  Courts have long and consistently held that CERCLA "response cost" claims are restitutionary and do not confer a jury trial right because they are "in effect seeking equitable relief in the form of restitution or reimbursement of the costs ... expended in order to respond to the health and environmental danger presented."  *United States v. Ne. Pharm. & Chem. Co.*, 810 F.2d 726, 749 (8th Cir. 1986); *see also Hatco Corp. v. W.R. Grace & Co. Conn.*, 59 F.3d 400, 411-12, 414 (3d Cir. 1995).  Analogizing to CERCLA, courts also have concluded that OPA claims for recovery of removal costs are similarly equitable in nature.  *Viking*, 607 F. Supp. 2d at 829-830; *Int'l Marine Carriers v. Oil Spill Liab. Trust Fund*, 903 F. Supp. 1097, 1102 (S.D. Tex. 1994).

These courts' reasoning applies with equal force to NRD claims that also seek equitable relief related to assessing, rehabilitating, and restoring injuries to natural resources.  *See, e.g.*, *Wade*, 653 F. Supp. at 13 (providing that CERCLA NRD claims "would properly be

23

characterized as equitable for the same reasons that recovery of [CERCLA] response costs is considered equitable relief").

No appellate courts have opined on this issue, and although some district courts have reached a different conclusion, their justification for doing so is unpersuasive. For example, the *Viking* court found that NRD claims constituted a legal remedy entitled to a jury trial in part because "[i]t amounts to compensating the plaintiff for injury to its property, much like damages recovered in nuisance or trespass." *Id.* at 832. But this analysis fails to consider how, unlike nuisance or trespass damage recoveries, which may be spent freely, OPA limits the use of funds recovered under an NRD claim to assessing and restoring the injured natural resources. *See* 33 U.S.C. §§ 2706(c), (f). Such constraints on NRD claims reveal their true restitutionary and equitable nature, undermining the contrary conclusions of some district courts. *E.g.*, *Wade*, 653 F. Supp. at 13.

For these reasons, the Court should conclude that Alabama is not entitled to a jury trial for its NRD claims.[9]

### C. Claims For Removal Costs Are Equitable In Nature And Thus Do Not Carry A Jury Trial Right.

Even if Alabama's claim for removal costs was not within admiralty jurisdiction, Alabama still would not have a jury trial right for such alleged damages. Under OPA "remove" is defined as "containment and removal of oil or a hazardous substance from water and

---

[9] Furthermore, to the extent that Alabama seeks to have its NRD claims (or any other claims) decided at a later time and by a different jury than any jury for its OPA claims, Alabama's position would run afoul of the Seventh Amendment. The Seventh Amendment states that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. CONST. amend. VII. "The Seventh Amendment entitles parties to have fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues." *Castano v. American Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996); *see also Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995).

shorelines or the taking of other actions as may be necessary to minimize or mitigate damage to the public health or welfare." 33 U.S.C. § 2701(30). Removal costs include "the costs of removal that are incurred after a discharge of oil has occurred." 33 U.S.C. § 2701(31).

Courts have consistently held that claims for environmental response or removal of pollution seek restitution of amounts expended by the government. Such restitution is a form of equitable relief. Thus, there is no right to a jury trial for environmental removal or response costs. *E.g.*, *Hatco*, 59 F.3d at 411-12; *Ne. Pharm. & Chem.*, 810 F.2d at 749; *Badalamenti v. Chevron Chem. Co.*, 1995 WL 386868, at *4 (E.D. La. June 27, 1995).

**D.     Alabama's Punitive Damage Claims Is Based Solely On Maritime Law And Thus Lacks Any Jury Trial Right.**

This Court has held that OPA's language does not provide for punitive damages, and that any claims for punitive damages must be based on maritime law.[10]  Rec. Doc. 3830 at 26-27. There is no jury trial right to claims brought under maritime law, *Granfinanciera*, 492 U.S. at 55 n.10; *Waring*, 46 U.S. at 460, and thus no such right for Alabama's punitive damages claims.

## CONCLUSION

Conducting a bench trial for Alabama's damages is consistent with admiralty law, OPA, rules governing limitation actions, and the Seventh Amendment. The Court should strike Alabama's demand for trial by jury and order that Alabama's alleged damages be tried to the bench.

---

[10]  BP reserves all arguments that OPA displaces general maritime law claims.

Date:  February 14, 2014                    Respectfully submitted,


                                           /s/ Don K. Haycraft
                                           Don K. Haycraft (Bar #14361)
                                           R. Keith Jarrett (Bar #I6984)
                                           Liskow & Lewis
                                           701 Poydras Street, Suite 5000
                                           New Orleans, Louisiana 70139-5099
                                           Telephone: (504) 581-7979
                                           Facsimile: (504) 556-4108

                                           and

                                           Richard C. Godfrey, P.C.
                                           J. Andrew Langan, P.C.
                                           Paul D. Collier
                                           R. Chris Heck
                                           Kirkland & Ellis LLP
                                           300 North LaSalle Street
                                           Chicago, IL 60654
                                           Telephone: (312) 862-2000
                                           Facsimile: (312) 862-2200


                                           Robert C. "Mike" Brock
                                           F. Chad Morriss
                                           Maureen F. Browne
                                           Covington & Burling LLP
                                           1201 Pennsylvania Avenue, NW
                                           Washington, DC 20004-2401
                                           Telephone: (202) 662-5985


                                           Joel M. Gross
                                           Lawrence A. Schneider
                                           Arnold & Porter, LLP
                                           555 12th Street N.W.
                                           Washington, DC 20004
                                           Telephone: (202) 942-5705
                                           Facsimile: (202) 942-5999


                                           *Attorneys for BP p.l.c., BP Exploration &*
                                           *Production Inc., and BP America Production*
                                           *Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of February, 2014.

/s/ Don K. Haycraft
Don K. Haycraft