# Exhibit 2

| 80TH CONGRESS | HOUSE OF REPRESENTATIVES | REPORT |
| 2d Session | | No. 1523 |

## EXTENSION OF ADMIRALTY JURISDICTION

MARCH 8, 1948.—Referred to the House Calendar and ordered to be printed

Mr. FOOTE, from the Committee on the Judiciary, submitted the following

# REPORT

[To accompany H. R. 238]

The Committee on the Judiciary, to whom was referred the bill (H. R. 238) for the extension of admiralty jurisdiction, having considered the same, report favorably thereon with an amendment and recommend that the bill do pass.

The amendment is as follows:

Page 1, line 11, change the period at the end of the line to a comma and add the following proviso:

*Provided*, That as to any suit against the United States for damage or injury done or consummated on land by a vessel on navigable waters, the Public Vessels Act or Suits in Admiralty Act, as appropriate, shall constitute the exclusive remedy for all causes of action arising after the date of the passage of this Act and for all causes of action where suit has not been hitherto filed under the Federal Tort Claims Act: *Provided further*, That no suit shall be filed against the United States until there shall have expired a period of six months after the claim has been presented in writing to the Federal agency owning or operating the vessel causing the injury or damage.

### PURPOSE OF THE BILL

Under existing law, admiralty and maritime jurisdiction in respect of claims arising out of maritime torts is extended by the United States courts to only those cases where injury is done upon navigable waters, and not to those where injury is done to persons or property situated upon land, even though the injury is caused by a vessel situated on navigable waters. For example, if a bridge or pier, or any person or property situated thereon, is injured by a vessel, the admiralty courts of the United States do not entertain the claim for the damages thus caused. *Cleveland Terminal & Valley R. R. Co.* v. *Cleveland S. S. Co.* (208 U. S. 316); *The Troy* (208 U. S. 321) *Martin* v. *West* (222 U. S. 191). The bill under consideration would provide for the exercise of admiralty and maritime jurisdiction in all cases of the type above indicated.

As a result of the denial of admiralty jurisdiction in cases where injury is done on land, when a vessel collides with a bridge through mutual fault and both are damaged, under existing law the owner of the bridge, being denied a remedy in admiralty, is barred by contributory negligence from any recovery in an action at law. But the owner of the vessel may by a suit in admiralty recover half damages from the bridge, contributory negligence operating merely to reduce the recovery. Further, where a collision between a vessel and a land structure is caused by the fault of a compulsory pilot, the owner of the land structure is without remedy for his injuries since at law a compulsory pilot is not deemed the servant of the vessel's master or owner. *Homer Ramsdell Transportation Co.* v. *Compagnie Generale Transatlantique* (182 U. S. 406, 416). But if the vessel sheers off the land structure to collide with another vessel in the vicinity, the owner of the second vessel, by an in rem proceeding in admiralty, may recover full damages, for the wrong is viewed as that of the vessel itself and compulsory pilotage is no defense. *The China* (74 U. S. 53, 68). The bill under consideration would correct these inequities as a result of providing that the admiralty courts shall take cognizance of all of them.

The bill will bring United States practice respecting maritime torts into accord with that followed by the British, who by a series of statutes, beginning in 1840, have restored admiralty jurisdiction in situations of this character and brought the British law into harmony with that of most European countries. For a number of years the American Bar Association and the Maritime Law Association of the United States have pressed for legislation of this character. Bills similar to H. R. 238 have been introduced in each Congress since the Seventh-fifth. Such bills have heretofore been approved in principle by the Maritime Commission, War Shipping Administration, and the Navy Department but not by this Department.

Congress has failed on several occasions to pass legislation of this kind. For example, it was thought undesirable, while the United States was at war and operating many vessels, both through the War Shipping Administration and in the military and naval service, to impose additional liabilities on the United States for injuries caused by its vessels. Courts have held jurisdiction under the Public Vessels Act, 1925, to be confined to cases where a private admiralty proceeding could be maintained. *State of Maine* v. *United States* (45 F. Supp. 35, affirmed 134 F. 2d 574, cert. denied 319 U. S. 772). Since the act (46 U. S. Code 781) covers, without exception, all "damages caused by a public vessel" a contrary result appears justified by its plain language as well as its purpose (see. 66 Congressional Record, 3560) and the construction given the similar language of the British statutes. See especially *The Uhla* (19 L. T. R. (n. s.) 89, 90). But the Department formerly thought it wise to oppose alteration of the rule.

Now that the Tort Claims Act, 1946, has been enacted, however, jurisdiction of any claims for injuries excluded by interpretation from the Public Vessels Act will clearly fall within the Tort Claims Act. Moreover, in peacetime Government vessels are seldom in charge of a compulsory pilot. It therefore seems unlikely that the bill can materially increase the liability of the United States for injuries caused by its vessels. On the other hand, so far as regards the right of the United States to recover for injuries done to Government-owned sub-

marine cables and shore installations through the negligence of compulsory pilots in charge of private vessels, the enactment of the bill will be of substantial advantage to the United States.

Adoption of the bill will not create new causes of action. It merely specifically directs the courts to exercise the admiralty and maritime jurisdiction of the United States already conferred by article III, section 2 of the Constitution and already authorized by the Judiciary acts. Moreover there will still remain available the right to a common-law remedy which the Judiciary Acts (28 U. S. Code 41 (3)) have expressly saved to claimants. In the case of claims against the United States, however, as a result of section 421 (d) of the Tort Claims Act, 1946, which makes the remedy in admiralty under the Suits in Admiralty and Public Vessels acts exclusive where available, the right of claimants to proceed against the United States by civil action will be abolished. To avoid the possibility of confusion in this respect, the committee has adopted certain amendments to the bill which will, among other things, impose a 6-month waiting period before suit can be filed against the United States.

The bill is endorsed by the American Bar Association and the Maritime Law Association of the United States. The Bureau of the Budget has indicated no objection to the bill.

The following letters have been received by the committee from the Secretary of the Navy, the Chairman of the Maritime Commission, and the Attorney General:

THE SECRETARY OF THE NAVY,
*Washington, July 8, 1947.*

Hon. EARL C. MICHENER,
*Chairman of the Committee of the Judiciary, House of Representatives.*

MY DEAR MR. CHAIRMAN: The bill H. R. 238 for the extension of admiralty jurisdiction has been referred by your committee to the Navy Department with request for a report thereon.

H. R. 238 would extend the traditional admiralty jurisdiction to include damage occasioned by a vessel to land structures. At the present time such causes of action have to be maintained on the common-law side. Under the English law the admiralty jurisdiction includes damage caused to land structures. Various bills to accomplish this extension of the admiralty jurisdiction have been sponsored in the United States for many years by the Maritime Law Association.

Suits for damage caused by naval vessels are brought under the Public Vessels Act (act of March 3, 1925, ch. 428, 43 Stat. 1112; 46 U. S. C. A., sec. 781 et seq.). Since the admiralty jurisdiction does not include damage to land structures, the United States has not been subject to suit for injuries of this character under the Public Vessels Act (*State of Maine* v. *U. S.*, 45 Fed. Supp. 35 and 134 Fed. (2d) 574). The Navy Department, however, since July 1944 (act of July 3, 1944, 58 Stat. 726; 46 U. S. C. 797), has had authority, up to the amount of $1,000,000, to effect settlement and make direct payment of claims for damage caused by naval vessels. This settlement authorization includes damage to land structures and such claims have been disposed of administratively.

Any question as to the advisability of further waiving sovereign immunity and extending the field for suit against the United States in this matter has now become academic with the passage of the Federal Tort Claims Act (Public Law 601, 79th Cong.). Under that act the United States is subject to a suit at law for damage caused by its vessels to land structures. As far as its effect on the Navy Department is concerned, the proposed bill would transfer the forum of such litigation from the common law side to the admiralty side. A further possible difference would lie in the fact that, in cases of mutual fault, the admiralty courts would apply the rule of divided damages. Under the Federal Tort Claims Act the rule to be applied is "the law of the place where the act or omission occurred." An example of this difference would arise in a jurisdiction where contributory negligence constitutes a bar and where a damaged bridge might constitute an illegal structure which contributed to the injury. In this instance there would be no recovery for the damage to the shore structure as contrasted with the divided-damages result in admiralty.

4                EXTENSION OF ADMIRALTY JURISDICTION

The operation of the Federal Tort Claims Act extends back to January 1, 1945. The Public Vessels Act has a 2-year limitation. The situation, therefore, does not present any matter of opening up causes of action which could not otherwise be maintained.

It is, however, thought advisable to suggest that consideration be given to the matter of the exclusiveness of the proposed remedy in admiralty. Presumably, with the enactment of H. R. 238, the right to sue the United States at law for damage caused by public vessels to land structures would terminate. Section 421 of the Federal Tort Claims Act excludes: "(d) Any claim for which a remedy is provided by the Act of March 9, 1920 (U. S. C., title 46, secs. 741–752, inclusive), or the Act of March 3, 1925 (U. S. C., title 46, secs. 781–790, inclusive), relating to claims or suits in admiralty against the United States."

Both under the Suits in Admiralty Act and under the Public Vessels Act, passage of the pending bill would create a cause of action in admiralty not hitherto existing. The resulting situation may raise an issue as to whether the cause of action, previously authorized under the Federal Tort Claims Act, continues, or whether the remedy under the extended admiralty jurisdiction would relate only to causes of action arising subsequent to the passage of the proposed bill. The situation may also raise the issue of whether there would still continue the alternative remedy against the United States for damage to land structures. These alternative remedies would be at law under the Federal Tort Claims Act and in admiralty under the Suits in Admiralty Act or Public Vessels Act, respectively. To avoid any of these issues which may arise and eliminate potential litigation, it is thought advisable to have an express provision as to exclusiveness of the admiralty remedy and its prospective effect.

It is further thought advisable to suggest that the committee may wish to give consideration to the retention of the provision of the Federal Tort Claims Act, which afford the Federal agency an opportunity to adjust the claim prior to the filing of any suit. In the usual case of damage to land structures, there is no question of liability and the situation makes very desirable the availability of an opportunity for settlement and adjustment without litigation. In connection with suit under the Federal Tort Claims Act, section 410 provides: "No suit shall be instituted pursuant to this section upon a claim presented to any Federal agency pursuant to part 2 of this title unless such Federal agency has made a final disposition of the claim." Since the Public Vessels Act has a 2-year period of limitation within which suit shall be brought, it is thought that this objective of affording the Federal agency an opportunity to dispose of the matter by settlement could be accomplished by the use of the following language:

"*Provided*, That as to any suit against the United States for damage or injury done or consummated on land by a vessel on navigable waters, the Public Vessels Act or Suits in Admiralty Act, as appropriate, shall constitute the exclusive remedy for all causes of action arising after the date of the passage of this Act and for all causes of action where suit has not been hitherto filed under the Federal Tort Claims Act: *Provided further*, That no suit shall be filed against the United States until there shall have expired a period of six months after the claim has been presented in writing to the Federal agency owning or operating the vessel causing the injury or damage."

It is thought that such a provision would be salutary in avoiding unnecessary litigation and would constitute a financial saving both to the claimant and to the United States. This language will also eliminate any possible issue as to the exclusiveness of the Suits in Admiralty Act.

If amended as suggested above the Navy Department recommends enactment of H. R. 238.

The Navy Department has been advised by the Bureau of the Budget that there is no objection to the submission of this report to the Congress.

Sincerely yours,

W. JOHN KENNEY,
*Acting Secretary of the Navy.*

---

UNITED STATES MARITIME COMMISSION,
*Washington 25, D. C. July 7, 1947.*

Hon. EARL C. MICHENER,
  *Chairman Committee on the Judiciary,*
    *House of Representatives.*

MY DEAR MR. MICHENER: On January 16, 1947, you requested the views of the Maritime Commission on H. R. 238, a bill for the extension of admiralty jurisdiction.

EXTENSION OF ADMIRALTY JURISDICTION 5

The bill would extend the admiralty jurisdiction to include all cases of damage or injury to person or property caused by a vessel on navigable water notwithstanding that such damage or injury be done or consummated on land.

Similar bills have been introduced in each session of Congress since the Seventy-fifth Congress. The Maritime Commission reported favorably on S. 680, Seventy-fifth Congress. The War Shipping Administration similarly reported on S. 554, Seventy-eighth Congress. Both the Maritime Commission and the War Shipping Administration reported favorably on S. 1030, Seventy-ninth Congress.

The present admiralty jurisdiction over torts is limited to such as occur upon navigable waters. The test of whether a tort occurs upon navigable waters is determined by the place where the damage is done and not by the place where the negligence occurs. Hence there is no admiralty jurisdiction over claims for damage or injury to land structures, or to persons thereon, caused by vessels. However, there is admiralty jurisdiction over claims for damage or injury to vessels caused by land structures or by persons thereon. One occurrence may therefore give rise to two actions, one in admiralty and the other at common law. The result is duplicity of suits and anomalous situations, as is demonstrated by the examples which follow:

In collisions between vessels and land structures the vessel owner may bring an action to recover his damages in an admiralty court. The owner of the land structures cannot file a cross action for recovery of the damages to the land structure but must institute a separate action at law. If the collision was caused by the mutual fault of vessel and land structure, the vessel owner, having the advantage of the admiralty half-damage rule, recovers one-half of his damages, but the contributory-negligence rule precludes the owner of the land structure from any recovery in the law action.

When a collision between vessel and land structure has been caused by the fault of a compulsory pilot, the owner of the land structure is without remedy because, at law, the compulsory pilot is not considered the servant of the master or owner and the maxim qui facit per alium facit per se does not apply. However, should the vessel sheer off the land structure and collide further with another vessel moored thereto, the owner of the second vessel can proceed in admiralty, in rem, and recover full damages, for compulsory pilotage is no defense in such an action.

Enactment of the proposed bill would simplify litigation, save legal expenses, eliminate the anomalies mentioned, and equalize justice.

The Navy Department has suggested two amendments to the bill. The first amendment would make it clear that the permission to sue provided for in the bill, insofar as applicable to suits against the United States, would apply to claims arising after enactment of the bill only, and that suits arising prior to enactment would remain under the Federal Tort Claims Act.

The Maritime Commission favors this amendment for the reasons suggested by the Navy Department.

The second amendment suggested by the Navy Department would provide 6 months waiting period before commencement of suit of the type of claim covered by the proposed legislation. There is no similar waiting period provided either in the Federal Tort Claims Act (sec. 410), or in the Suits in Admiralty Act or Public Vessels Act. If such amendment is thought desirable, it is believed that the limitation might be more appropriately accomplished by amendment of the Suits in Admiralty Act and Public Vessels Act, rather than in the bill under consideration, which is limited in its scope to particular types of admiralty claims only.

For the foregoing reasons, the Maritime Commission recommends favorable consideration of the bill, amended as suggested.

The Director of the Bureau of the Budget has advised that there is no objection to the submission of this report to your committee.

Sincerely yours,

W. W. SMITH, *Chairman.*

---

DEPARTMENT OF JUSTICE,
OFFICE OF THE ASSISTANT TO THE ATTORNEY GENERAL,
*Washington, July 1, 1947.*

Hon. EARL C. MICHENER,
*Chairman, Committee on the Judiciary,*
*House of Representatives, Washington, D. C.*

MY DEAR MR. CHAIRMAN: This is in response to your request for the views of this Department relative to a bill (H. R. 238) for the extension of admiralty jurisdiction.

The bill would provide for the extension of admiralty and maritime jurisdiction to all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land. In addition, the bill would permit suits to be brought in rem or in personam according to the principles of law and the rules of practice obtaining in cases where the injury or damage has been done and consummated on navigable water.

Under existing law, admiralty and maritime jurisdiction in respect of claims arising out of maritime torts is extended by the United States courts to only those cases where injury is done upon navigable waters, and not to those where injury is done to persons or property situated upon land, even though the injury is caused by a vessel situated on navigable waters. For example, if a bridge or pier, or any person or property situated thereon, is injured by a vessel, the admiralty courts of the United States do not entertain the claim for damages thus caused. *Cleveland Terminal & Valley R. R. Co.* v. *Cleveland S. S. Co.* (208 U. S. 316); *The Troy* (208 U. S. 321); *Martin* v. *West* (222 U. S. 191). As a result of the denial of admiralty jurisdiction in cases where injury is done on land, when a vessel collides with a bridge through mutual fault and both are damaged, under existing law the owner of the bridge being denied a remedy in admiralty, is barred by contributory negligence in an action at law. But the owner of the vessel may, by a suit in admiralty, recover half damages from the owner of the bridge, contributory negligence operating merely to reduce the amount of recovery. Further, when a collision between a vessel and a land structure is caused by the fault of a compulsory pilot the owner of the land structure is without remedy for his injuries since, at law, a compulsory pilot is not deemed the servant of the vessel's master or owner. *Homer Ramsdell Transportation Co.* v. *Compagnie Generale Transatlantique* (182 U. S. 406, 416). However, when a vessel is damaged through the fault of a compulsory pilot operating another vessel, the owner of the vessel which has been struck may recover full damage by an in rem proceeding in admiralty for the wrong is viewed as that of the vessel itself and compulsory pilotage is no defense. *The China* (74 U. S. 53). This bill would correct these inequities as a result of providing that the admiralty courts shall take cognizance of all of them.

It seems unlikely that the bill would materially increase the liability of the United States for injuries caused by its vessels. At the present time the Tort Claims Act provides relief for claimants who would be benefited by this bill. Moreover, in peacetime Government vessels are seldom in charge of a compulsory pilot. On the other hand, the bill would appear to be of substantial advantage to the United States in permitting recovery for injuries done to Government-owned submarine cables and shore installations through the negligence of compulsory pilots in charge of private vessels.

The bill would not create new causes of action but merely direct the courts to exercise the admiralty and maritime jurisdiction of the United States already conferred by article III, section 2 of the Constitution, and by the Judicial Code. Moreover, as to claims between private litigants, there will still remain available the right to a common-law remedy which is expressly saved to claimants under section 24 of the Judicial Code (title 28 U. S. C., sec. 41 (3)).

In extending the remedy in admiralty, the right of claimants to proceed against the United States by civil action will be abolished as a result of section 421 (d) of the Tort Claims Act of 1946. In order to avoid conflict or uncertainty, it is suggested that the bill be amended to indicate that it is to apply only to suits instituted after its adoption. This may be accomplished by the insertion, after the word "That" in line 3, of the words "hereafter the exercise of."

The Department finds no objection to the enactment of the bill.

The Director of the Bureau of the Budget has advised that there is no objection to the submission of this report.

Sincerely yours,

DOUGLAS W. MCGREGOR,
*The Assistant to the Attorney General.*